DMJ:CNC
F.#2013R00948

**FILED**
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★ OCT 29 2013 ★

**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

PHILLIP A. KENNER and
TOMMY C. CONSTANTINE,
   also known as
   "Tommy C. Hormovitis,"

          Defendants.

- - - - - - - - - - - - - - X

<u>I N D I C T M E N T</u>

Cr. No. **CR 13 607**
(T. 18, U.S.C., §§
981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1349,
1956(h), 2 and 3551
<u>et seq</u>.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

BIANCO, J,

WALL, M.J.

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

     At all times relevant to this Indictment, unless otherwise indicated:

I.  <u>The Defendants and the Companies</u>

     1.   The defendant PHILLIP A. KENNER was a financial advisor whose clients included, among other individuals, current and former professional hockey players of the National Hockey League ("NHL") (hereinafter, the "player-clients"). Since approximately the mid-1990s, KENNER advised the player-clients on their financial affairs, managed their accounts at various financial institutions, and recommended various investments to them, including investments in real estate development projects and small, privately held companies. KENNER was a licensed financial advisor between

approximately July 1994 and November 2004.  Between approximately August 2002 and 2007, KENNER held the position of Secretary at Eufora, LLC ("Eufora"), an Arizona-registered limited liability company that held itself out to be a seller of prepaid consumer debit cards.

2.   The defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," was a former professional race car driver and business partner of the defendant PHILLIP A. KENNER.  CONSTANTINE was the founder and Chief Executive Officer of Eufora.  CONSTANTINE also operated and controlled Constantine Management Group, LTD ("CMG"), an Illinois Corporation, and Urban Expansion, LLC ("Urban Expansion"), a limited liability company with its principal place of business in Phoenix, Arizona.  Both CMG and Urban Expansion held themselves out to be engaged in the management and development of real property for both commercial and leisure purposes.

3.   Between 2003 and 2005, the defendant PHILLIP A. KENNER created a series of Delaware limited liability companies for the purpose of purchasing real property in Hawaii.  KENNER was the Managing Member of each entity, which included Little Isle IV, LLC ("Little Isle IV"), Big Isle IV Ventures, LLC ("Big Isle IV"), Big Isle V Ventures, LLC ("Big Isle V"), Big Isle VI Ventures, LLC ("Big Isle VI"), Kau Holding Company, LLC ("Kau Holding") and Ula Makika, LLC ("Ula Makika"), collectively referred to herein as the "Holding Companies." More than twenty of KENNER's investment clients, including the

player-clients, were "Members" of Little Isle IV and invested money in Little Isle IV to be used to purchase real property.

## II. The Victims

4. Between approximately 2002 and 2009, at the direction of the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," the player-clients and other individuals (collectively the "Investors") invested over $20 million to fund entities that KENNER and CONSTANTINE controlled. KENNER and CONSTANTINE represented to the Investors that their investments were to be used to purchase and develop various real estate projects, to fund small privately held companies, and to establish a legal defense fund on behalf of the Investors. As discussed in more detail below, KENNER also persuaded certain of his player-clients to establish lines of credit in their names, from which KENNER withdrew approximately $10 million. As a result of KENNER and CONSTANTINE's fraudulent conduct, between approximately 2002 and 2013, the Investors sustained actual losses exceeding $15 million.

5. John Doe 1, a resident of Rhode Island and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses and real estate projects at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

6.    John Doe 2, a resident of New York and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

7.    John Doe 3, a resident of California and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

8.    John Doe 4, a resident of Minnesota and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

9.    John Doe 5, a resident of California and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

10.   John Doe 6, a resident of Texas and professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

11.   John Doe 7, a resident of Sweden and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

12.   John Doe 8, a resident of California and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses and real estate projects at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

13.   John Doe 9, a resident of Canada and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses and real estate projects at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

14.   John Doe 10, a resident of Canada and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

15.   John Doe 11, a resident of New York and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

16.   John Doe 12, a resident of Canada and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses, real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

17.   John Doe 13, a resident of Arizona and former professional hockey player, whose identity is known to the Grand Jury, used the defendant PHILLIP A. KENNER as a financial advisor and invested in various businesses and real estate projects and a legal defense fund at the direction of KENNER and the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

18.   John Doe 14, a resident of the Eastern District of New York, whose identity is known to the Grand Jury, invested in various real estate projects with the defendant PHILLIP A. KENNER and invested in businesses at the suggestion and direction of KENNER and defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

19.   John Doe 15, a resident of the Eastern District of New York, whose identity is known to the Grand Jury, invested in a real estate project with the defendant PHILLIP A. KENNER and invested in a business at the suggestion and direction of KENNER and defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

20.   Jane Doe 1, a resident of New York, whose identity is known to the Grand Jury, invested in real estate projects and businesses with the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."

III.   The Scheme To Defraud

21.   In or about and between August 2002 and April 2013, the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," devised, implemented, supervised and executed a scheme to fraudulently induce the Investors, including John Does 1 through 15 and Jane Doe 1, to invest money with entities and deposit money into accounts that KENNER and CONSTANTINE controlled by falsely stating that the funds would be invested in real estate, small, privately held companies and a legal defense fund

for the benefit of the Investors when, in truth and in fact, as KENNER and CONSTANTINE then and there well knew and believed, a substantial portion of the money would be improperly diverted to bank accounts controlled by KENNER and CONSTANTINE and used for their personal benefit, for unrelated business ventures and to conceal their scheme to defraud.

A.    The Hawaii Land Developments

22.    It was a part of the scheme to defraud that the defendant PHILLIP A. KENNER, as the Managing Member of the Holding Companies, induced certain of the Investors to wire large amounts of money to one or more bank accounts controlled by KENNER.   KENNER represented to the Investors that, in return for their investment, they would receive an ownership interest in Little Isle IV, which would purchase and own a percentage of each of the acquired land parcels.   KENNER represented to those Investors that the goal of these investments was to develop the acquired land parcels for housing and recreational use and later sell the developed parcels for a significant profit, which would, in turn, result in a significant monetary return for each Investor.   Based on KENNER's representations concerning the Hawaii real estate investments, the Investors collectively wired millions of dollars to accounts that KENNER identified and controlled.

23.    The defendant PHILLIP A. KENNER additionally persuaded certain of the Investors, including John Does 1 through

9, to each establish lines of credit at Northern Trust Bank, a financial institution with its principal place of business in Chicago, Illinois (the "lines of credit"). Each line of credit was insured by bonds and other equity held in each of the Investors' names, which KENNER directed each Investor to transfer to Northern Trust Bank. For almost every line of credit, a letter purportedly signed by the respective Investor authorized Northern Trust Bank to allow KENNER to access the line of credit to make direct deposits of money to the Little Isle IV account at Northern Trust Bank. KENNER made a variety of misrepresentations to the Investors regarding each Investor's line of credit. KENNER falsely represented to some Investors that the line of credit would not be drawn upon and would serve solely as collateral in connection with the Little Isle IV land development project. KENNER also falsely represented to other Investors that the line of credit would be used exclusively for the Little Isle IV land development project in Hawaii, that KENNER would seek the Investor's permission prior to drawing upon the line of credit, and that KENNER – not the Investors - would be responsible for any and all payments due on the lines of credit. To some of these Investors, KENNER falsely represented that he, too, had pledged collateral to Northern Trust Bank to secure a line of credit. To prevent Investors from learning the balance of their lines of credit on a month-to-month basis, KENNER arranged to have Northern Trust

Bank mail the statements for each of the lines of credit only to KENNER, at his home in Scottsdale, Arizona.

24. Between approximately December 2003 and September 2005, the defendant PHILLIP A. KENNER, using the Holding Companies and other entities and individuals, orchestrated the purchase of a series of parcels of land in Hawaii, purportedly in furtherance of the real estate investment plan that he had discussed with the Investors. KENNER represented to the Investors that he organized and consummated the majority of these land acquisitions for their collective benefit. To pay for certain of the land acquisitions, KENNER withdrew hundreds of thousands of dollars from the lines of credit of John Does 1 through 9 without their knowledge or consent.

25. Between approximately January 2005 and July 2005, the defendant PHILLIP A. KENNER surreptitiously withdrew hundreds of thousands of dollars from the lines of credit of John Doe 1, John Doe 2, John Doe 4 and John Doe 7 to purchase parcels of land in Hawaii solely for KENNER's own benefit. Subsequently, including in April 2013, KENNER sold some of those properties for tens of thousands of dollars of profit, and deposited the proceeds of the sales into bank accounts that he controlled, including at Wells Fargo Bank and JP Morgan Chase Bank in Arizona. John Doe 1, John Doe 2, John Doe 4 and John Doe 7 were not aware that KENNER used their lines of credit to purchase property for himself and received no compensation from KENNER's sale of these properties.

26.   The defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," unlawfully diverted approximately $3 million of Investor money — both from money that the Investors invested for the purchase of real property in Hawaii for development and from the lines of credit - to various bank accounts that they controlled, and used the money for their personal benefit.   In other instances, KENNER obtained mortgage loans on properties purchased with the Investors' money and subsequently diverted the loan proceeds to entities unrelated to the Hawaii land development project, as well as to bank accounts that KENNER and CONSTANTINE controlled.

27.   In or about August 2006, Lehman Brothers Holdings, Inc. ("Lehman") agreed to finance the development of the Hawaii parcels that were purchased using the Investors' money.   As part of the financing agreement, Lehman made a $6.8 million payment to a company that the defendant PHILLIP A. KENNER controlled and a $6.9 million payment to a company that the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," and another individual, whose identity is known to the Grand Jury, controlled.   KENNER and CONSTANTINE unlawfully diverted more than $2.5 million of the approximately $13.7 million Lehman loan proceeds to bank accounts that they controlled and used that money for purposes unrelated to the Hawaii developments, including to pay mortgages on personal real

property and credit card bills, to make a down payment on a home in Arizona and to make payments on personal loans.

28. To conceal a portion of the scheme, until approximately January 2009, the defendant PHILLIP A. KENNER continued to make sporadic interest payments, including late payments, that were owed on money that KENNER withdrew from the lines of credit of John Does 1 through 7. In or about late March 2009, Northern Trust Bank closed John Doe 1 through John Doe 7's lines of credit for failure to pay interest and principal and liquidated the equity that had secured each of the lines, resulting in more than $7 million in losses to John Does 1 through 7.

B.   The Eufora Investments

29. It was a further part of the scheme to defraud that between February 2008 and May 2009, the defendant PHILLIP A. KENNER convinced John Does 2 through 7, John Doe 10, John Doe 12 and John Doe 13 to invest collectively a total of $1,425,000 in Eufora by representing to each of them that Eufora was a promising company with great potential for growth.

30. At the defendant PHILLIP A. KENNER's direction, between February 29, 2008 and July 7, 2008, John Doe 2, John Doe 4, John Doe 6, John Doe 7, John Doe 10, John Doe 12 and John Doe 13 directed wire transfers that totaled $725,000 from bank accounts that they controlled to an account at Bank of America in Arizona, which was held in the name of CMG. Subsequently, the defendant TOMMY C.

CONSTANTINE, also known as "Tommy C. Hormovitis," transferred approximately $170,000 of the $725,000 to a bank account that KENNER controlled at Wells Fargo Bank in Arizona.  In fact, none of the $725,000 was invested in Eufora; instead, the money was improperly diverted to bank accounts controlled by KENNER and CONSTANTINE and used for their personal benefit, including to pay personal mortgages, make automobile and credit card payments, and to pay for hotels, airplane tickets, meals and jewelry.

      31.  It was a further part of the scheme to defraud that, at the defendant PHILLIP A. KENNER's direction, between December 29, 2008 and May 4, 2009, John Doe 3, John Doe 5, John Doe 10 and John Doe 12 directed wire transfers that totaled $700,000, collectively, from their personal bank accounts to an account at Johnson Bank, a financial institution in Arizona, held in the name of Eufora.  KENNER did not disclose to John Doe 3, John Doe 5, John Doe 10 and John Doe 12 that he had previously purchased an ownership interest in Eufora in 2002 and that he, their financial advisor, was in fact selling his own interest in Eufora to John Doe 3, John Doe 5, John Doe 10 and John Doe 12 in exchange for the fraudulently obtained $700,000. In fact, KENNER had acquired his ownership interest in Eufora using $250,000 that KENNER had fraudulently obtained from John Doe 8 by falsely representing to John Doe 8 that the $250,000 would be used to invest in a real estate project in Mexico on John Doe 8's behalf.

32.   Within days of each of the wire transfers from John Doe 3, John Doe 5, John Doe 10 and John Doe 12, the defendant PHILLIP A. KENNER directed that the $700,000 be wired to an account at Wachovia Bank in New Jersey, which was held in the name of Co-Conspirator 1, a friend of KENNER whose identity is known to the Grand Jury ("Co-Conspirator 1").   At KENNER's direction, Co-conspirator 1 subsequently transferred approximately $351,000 of the $700,000 to bank accounts that KENNER controlled. Co-Conspirator 1 sent additional money to KENNER's then wife and to a series of financial institutions as payment for KENNER's mortgage and credit card bills and personal expenses of the defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis."  KENNER further directed Co-Conspirator 1 to make two wire transfers totaling $70,300 from Co-Conspirator 1's account to a Commerce Bank (now TD Bank) account in the Eastern District of New York held in the name of John Doe 14.   KENNER later directed John Doe 14 to immediately wire the $70,300 back to accounts KENNER controlled at Bank of America, which KENNER used to make mortgage payments on his personal real property and to pay credit card bills.   In addition, KENNER paid Co-Conspirator 1 a total of approximately $65,000 for this conduct from a portion of the $700,000 invested by John Doe 3, John Doe 5, John Doe 10 and John Doe 12.

33.   In or about and between November 2009 and early December 2009, the defendants PHILLIP A. KENNER and TOMMY C.

CONSTANTINE, also known as "Tommy C. Hormovitis," convinced John Doe 15 to invest in Eufora by representing to John Doe 15 that Eufora was a highly valued company and was poised to enter into potentially lucrative licensing agreements that would result in profits to Eufora.  At CONSTANTINE's direction, on or about December 7, 2009, John Doe 15 transferred a total of $200,000 from bank accounts in the Eastern District of New York that John Doe 15 controlled to an escrow account held at First Century Bank in Los Angeles, California in the name of John Doe 16, an attorney whose identity is known to the Grand Jury, to be invested in Eufora.  On the same day, CONSTANTINE directed that $155,000 of John Doe 15's investment be transferred to a bank account held in the name of AZ Falcon Partners, LLC, an entity controlled by CONSTANTINE and unrelated to Eufora.

     C.   The Global Settlement Fund

     34.   It was a further part of the scheme to defraud that between May 2009 and February 2010, the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," solicited many of the Investors to invest in what KENNER and CONSTANTINE represented to be a legal defense fund known as the "Global Settlement Fund" (hereinafter "GSF").  According to KENNER and CONSTANTINE, the GSF would be used primarily to litigate civil claims in connection with the Investors' real estate development investments in Mexico, which had failed.

35.  Beginning in early 2009, the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," met individually with some of the Investors and informed them that the Mexico real estate development projects in which they had invested had failed because the developer of those projects, John Doe 17, whose identity is known to the Grand Jury, had misused the Investors' money.  CONSTANTINE and KENNER then asked certain of the Investors, including John Does 1 through 7 and John Does 10 through 12, to deposit $250,000 each into the GSF.  KENNER and CONSTANTINE falsely represented to John Does 1 through 7 and John Does 10 through 12 that the vast majority of the money deposited into the GSF would be used to fund legal proceedings against John Doe 17 with the goal of recovering the Investors' money that KENNER and CONSTANTINE claimed was lost in the failed Mexico real estate investments.

36.  Based on the false representations made by the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," between approximately May 2009 and February 2010 certain of the Investors, including John Does 2 through 7 and John Does 10 through 12, deposited between $15,000 and $300,000 each into an escrow account held at First Century Bank in Los Angeles, California in the name of John Doe 16, whom KENNER and CONSTANTINE told the Investors would represent them in the civil action against John Doe 17 (hereinafter, the "GSF Escrow Account").  The total amount of money transferred by wire from John Does 2 through 7 and John Does

10 through 12 to the GSF Escrow Account was approximately $4.1 million.

37.   Of the $4.1 million contributed by John Does 2 through 7 and John Does 10 through 12 to the GSF Escrow Account, only a small fraction was used in connection with legal proceedings against John Doe 17.  The defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," transferred the balance of the $4.1 million to personal bank accounts held in their names or to companies that CONSTANTINE controlled, and used significant portions of the money for purposes unrelated to the Mexico litigation or the other purported purposes of the GSF, including to pay attorneys' fees in a legal matter involving a race car company that CONSTANTINE owned, to invest in a tequila company in Mexico, and to arrange for an associate of CONSTANTINE to purchase CONSTANTINE's home in Arizona, which was going into foreclosure.

<u>COUNT ONE</u>

(Conspiracy to Commit Wire Fraud)

38.   The allegations contained in paragraphs 1 through 37 are realleged and incorporated as if fully set forth in this paragraph.

39.   In or about and between August 2002 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis,"

together with others, did knowingly and willfully conspire to devise a scheme and artifice to defraud the Investors, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH SEVEN
### (Wire Fraud)

40.   The allegations contained in paragraphs 1 through 37 are realleged and incorporated as if fully set forth in this paragraph.

41.   On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Investors, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted writings, signs, signals, pictures and sounds by

means of wire communication in interstate and foreign commerce, as set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|-------|---------------------------------------|----------------------------------|
| TWO | February 12, 2009 | $30,000 wire transfer from Co-Conspirator 1's account at Wachovia Bank in Closter, New Jersey to John Doe 14's Commerce Bank account in the Eastern District of New York. |
| THREE | February 26, 2009 | $40,300 wire transfer from John Doe 14's account at Commerce Bank in the Eastern District of New York to an account in the name of KENNER at Bank of America in Scottsdale, Arizona. |
| FOUR | May 20, 2009 | $85,000 wire transfer from Co-Conspirator 1's account at Wachovia Bank in Closter, New Jersey to a Bank of America account in the name of KENNER in Scottsdale, Arizona. |
| FIVE | May 22, 2009 | $25,000 wire transfer from KENNER's account at Bank of America in Scottsdale, Arizona to John Doe 14's Commerce Bank account in the Eastern District of New York. |
| SIX | December 7, 2009 | $150,000 wire transfer from John Doe 15's account at Fidelity Investments in the Eastern District of New York to John Doe 16's account at First Century Bank in Los Angeles, California. |
| SEVEN | December 7, 2009 | $50,000 wire transfer from John Doe 15's account at Citizens Bank in the Eastern District of New York to John Doe 16's account at First Century Bank in Los Angeles, California. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS EIGHT AND NINE
(Wire Fraud)

42.   The allegations contained in paragraphs 1, 5, 6, 18 and 23 are realleged and incorporated as if fully set forth in this paragraph.

IV.   The Led Better Fraud Scheme

43.   In or about and between October 2006 and May 2012, the defendant PHILLIP A. KENNER, devised, implemented, supervised and executed a scheme to defraud John Doe 1 and John Doe 2 of money and property through the purchase of real property located in Sag Harbor, New York (the "Sag Harbor Property").   John Doe 14 and John Doe 18, individuals whose identities are known to the Grand Jury, had owned the Sag Harbor Property with John Doe 19, an individual whose identity is known to the Grand Jury, since 2005.

44.   It was a part of the scheme to defraud that in or about October 2006, the defendant PHILLIP A. KENNER created Led Better Development Company, LLC ("Led Better"), a Delaware limited liability company, for the purpose of purchasing the Sag Harbor Property for approximately $750,000.   Thereafter, KENNER created an operating agreement stating that KENNER, John Doe 1, John Doe 14 and John Doe 18 were each to be 25% owners of Led Better.   KENNER did not disclose the operating agreement to John Doe 1, John Doe 14 and John Doe 18 prior to or at the time of the purchase of the Sag Harbor property.

45. It was a part of the scheme to defraud that, at the time that the defendant PHILLIP A. KENNER created the Led Better operating agreement, KENNER falsely represented to John Doe 14 and John Doe 18 that he would purchase the Sag Harbor Property from them, and that thereafter John Doe 14 and John Doe 18 would re-invest approximately $190,000 each in the Sag Harbor Property, representing a 25% ownership interest each in the Sag Harbor Property for John Doe 14 and John Doe 18. KENNER also falsely represented to Doe 14 and John Doe 18 that he would purchase a 50% interest in the property.

46. It was a further part of the scheme to defraud that, in order to fund the $750,000 purchase price for the Sag Harbor Property, on or about October 19, 2006, the defendant PHILLIP A. KENNER transferred, without the permission, consent and knowledge of John Doe 2, $395,000 from John Doe 2's line of credit at Northern Trust Bank to a bank account that KENNER controlled in the name of Led Better Development Company at Wells Fargo Bank. KENNER transferred the $395,000 through two other bank accounts that KENNER controlled before transferring it to KENNER's Wells Fargo Bank account. KENNER falsely represented to John Doe 1 that John Doe 1 would be a 50% owner of the Sag Harbor Property and instructed John Doe 1 to wire approximately $375,000 to the Led Better account at Wells Fargo Bank, which John Doe 1 did.

47. Using money that John Doe 1 invested and that KENNER stole from John Doe 2's line of credit, Led Better purchased the Sag

Harbor Property on October 25, 2006.  The defendant PHILLIP A. KENNER subsequently instructed John Doe 14 and John Doe 18 to each wire approximately $190,000 to an account controlled by KENNER at Northern Trust Bank in Arizona, to secure what KENNER represented to be their respective 25% interests in the Sag Harbor Property.  Of the money contributed by John Doe 14 and John Doe 18, $200,000 eventually was wired into KENNER's personal bank account at Wells Fargo Bank in Arizona.  KENNER diverted another $95,000 to CMG's account at Bank of America, which the defendant TOMMY C. CONSTANTINE, also known as "Tommy Hormovitis," controlled.

48.  In order to conceal his use of John Doe 2's line of credit to purchase the Sag Harbor property, the defendant PHILLIP A. KENNER continued to make interest payments on John Doe 2's line of credit until approximately January 2009.  After KENNER ceased making such payments, Northern Trust Bank closed John Doe 2's line of credit and liquidated the equity that secured the account, causing a substantial loss to John Doe 2.

49.  On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant PHILLIP A. KENNER, did knowingly and intentionally devise a scheme and artifice to defraud John Doe 1 and John Doe 2, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmit and cause to be

transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce, as set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|-------|----------------------------------------|----------------------------------|
| EIGHT | November 20, 2008 | $43,000 wire transfer from KENNER's account at Wells Fargo Bank in Scottsdale, Arizona to the Ula Makika account at Northern Trust Bank in Scottsdale, Arizona. |
| NINE | December 31, 2008 | $35,000 wire transfer from KENNER's account at Wells Fargo Bank in Scottsdale, Arizona to the Little Isle IV account at Northern Trust Bank in Scottsdale, Arizona. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT TEN
(Money Laundering Conspiracy)

50.   The allegations contained in paragraphs 1 through 37 and 43 through 48 are realleged and incorporated as if fully set forth in this paragraph.

51.   In or about and between August 2002 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, defendants PHILLIP A. KENNER and TOMMY C. CONSTANTINE, also known as "Tommy Hormovitis," together with others, did knowingly and intentionally conspire to conduct one or

more financial transactions in and effecting interstate commerce, to wit: wire transfers of money, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349, respectively, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH NINE

52.    The United States hereby gives notice to the defendants charged in Counts One through Nine of this Indictment that, upon their conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of such offenses, or a conspiracy to commit such offenses, including but not limited to the following:

## Money Judgment

53.   A sum of money equal to at least approximately $30,000,000.00 in United States currency; and

## Specific Property

a.   all right, title and interest in the real property and premises located at 95-4928 Hawaii Belt Road, Hawaii, parcel number 3-9-5-014-046, also known as the Sugar Mill property, and all proceeds traceable thereto;

b.   all right, title and interest in the real property and premises located at Lot 469, Discovery Harbor, Unit 1, Naalehu, Hawaii, parcel number 3-9-4-17-20, and all proceeds traceable thereto;

c.   one 1976 Falcon 10 airplane, Aircraft Serial Number 69, Engine Type Garrett TFE731-2, Serial Numbers P73202, P73222 and FAA Registration Mark N530TC; and

d.   all right, title and interest in the real property and premises located at 10705 East Cactus Road, Scottsdale, Arizona.

54.   If any of the above-described forfeitable property, as a result of any act or omission of a defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title, 28 United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants, up to the value of the forfeitable property described in this forfeiture allegation.

     (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TEN

     55.    The United States hereby gives notice to the defendants charged in Count Ten of this Indictment that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the following:

### Money Judgment

56.  A sum of money equal to at least approximately $30,000,000.00 in United States currency; and

### Specific Property

a.  all right, title and interest in the real property and premises located at 95-4928 Hawaii Belt Road, Hawaii, parcel number 3-9-5-014-046, also known as the Sugar Mill property, and all proceeds traceable thereto;

b.  all right, title and interest in the real property and premises located at Lot 469, Discovery Harbor, Unit 1, Naalehu, Hawaii, parcel number 3-9-4-17-20, and all proceeds traceable thereto;

c.  one 1976 Falcon 10 airplane, Aircraft Serial Number: 69, Engine Type: Garrett TFE731-2, Serial Numbers P73202, P73222 and FAA Registration Mark N530TC; and

d.  all right, title and interest in the real property and premises located at 10705 East Cactus Road, Scottsdale, Arizona.

57.  If any of the above-described forfeitable property, as a result of any act or omission of a defendant:

a.  cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p)).


A TRUE BILL


FOREPERSON


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34

JUN 85

*No. 2013R00948*

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs*

PHILLIP A. KENNER

TOMMY C. CONSTANTINE,
also known as "Tommy C. Hormovitis,"

Defendants:

## I N D I C T M E N T

T. 18, U.S.C., §§ 981 (a) (1) (C), 982 (a) (1), 1343, 1349, 1956 (h),
2 and 3551 et seq.; T. 21 U.S.C. § 853 (p); T. 28, U.S.C. § 2461 (c))

*A true bill.*

_____
*Foreman*

*Filed in open court this* _____

*of* _____ *A.D. 20* _____ *day,*

_____
*Clerk*

*Bail $* _____

CARRIE CAPWELL, (631) 715-7900