1

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2

3      ------------------------------X
       UNITED STATES OF AMERICA,
4                              :    CR-13-607
                                    (JFB)
5          -against-           :    United States Courthouse
                                    Central Islip, New York
6      TOMMY CONSTANTINE,
                               :    December 18, 2013
7                 Defendant.        2:45 p.m.
       ------------------------------X
8
                    TRANSCRIPT OF ARRAIGNMENT/BAIL APPLICATION
9              BEFORE THE HONORABLE JOSEPH F. BIANCO
               UNITED STATES DISTRICT COURT JUDGE
10

11     APPEARANCES:

12     For the Government:      LORETTA E. LYNCH, ESQ.
                                UNITED STATES ATTORNEY
13                                 BY: CARRIE CAPWELL, AUSA
                                       DEMETRI JONES, AUSA
14                                     DIANE LEONARDO, AUSA
                                One Pierrepont Plaza
15                              Brooklyn, New York 11201

16

17     For the Defendant:       EDWARD LITTLE, ESQ.

18

19

20
       Official Court Reporter:   Paul J. Lombardi, RMR, FCRR
21     Ph. (631) 712-6106         100 Federal Plaza - Suite 1180
       Fax (631) 712-6122         Central Islip, New York 11722
22

23

24
                    Proceedings recorded by mechanical stenography.
25                      Transcript produced by CAT.

1          THE CLERK:  Calling case USA v Tommy

2    Constantine.

3          Please state your appearance for the record.

4          MS. CAPWELL:  Carrie Capwell, Demetri Jones and

5    Diane Leonardo for the government.

6          Good afternoon.

7          THE COURT:  Good afternoon.

8          MR. LITTLE:  Good afternoon, your Honor.

9          Ed Little for Mr. Constantine.

10          THE COURT:  Good afternoon, Mr. Little.

11   Mr. Constantine is present.

12          This is his initial appearance in the district.

13   I assume he arrived yesterday?

14          MS. CAPWELL:  Yes, your Honor.

15          I was informed yesterday by the marshals he

16   arrived.

17          THE COURT:  I'm going to give Mr. Constantine

18   his Rule 5 rights.  He probably received them in Arizona,

19   but I will give them to him again in an abundance of

20   caution.

21          You have the right to have the charges that have

22   been filed against you presented to you.  You have the

23   right to retain counsel or request that counsel be

24   appointed.  If you cannot afford counsel, you have the

25   right to have the circumstances if any under which you may

1   be released on bail be considered by the court.  You have

2   the right not to make a statement.  Any statement you make

3   may be used against you.

4            You understand that, Mr. Constantine?

5            THE DEFENDANT:  I do.

6            THE COURT:  Mr. Little, you have been retained

7   to represent Mr. Constantine?

8            MR. LITTLE:  Yes, for this purpose, your Honor.

9            THE COURT:  Is your client prepared to be

10  arraigned on the indictment?

11           MR. LITTLE:  He is, your Honor.

12           THE COURT:  Mr. Constantine, have you received a

13  copy of indictment 13-607?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Have you had sufficient time to

16  review it and discuss it with your attorney for purposes

17  of your arraignment?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Do you waive or give up the public

20  reading of the entire indictment?

21           THE DEFENDANT:  Yes.

22           THE COURT:  How do you plead, guilty or not

23  guilty?

24           THE DEFENDANT:  Not guilty.

25           THE COURT:  A not guilty plea has been entered.

4

1          I'll now hear first from the lawyers in terms of

2     how they want to proceed with respect to the case and we

3     can discuss the issue of bail.

4          MR. LITTLE:  Your Honor, since we last met we

5     have been able to put together a much more substantial

6     bail package.

7          THE COURT:  Why don't we deal with the case

8     proceeding forward and then discuss the bail.

9          MR. LITTLE:  Sure.

10          THE COURT:  Let me ask the government first to

11     tell me in terms of discovery what you are providing and

12     how we should proceed with respect to the scheduling of

13     the case.

14          MS. CAPWELL:  Yes, your Honor.

15          We do have another date in this case which is

16     January 22nd, 2 p.m. for the codefendant Phillip Kenner,

17     who appeared before your Honor already in this district

18     and that date was set.

19          So the government would propose that we now make

20     that the next date as well for this defendant, and what

21     the government will do between now and that date is to

22     produce discovery to the defendants.  We started the

23     process of gathering material.

24          We are going to do it on a rolling production of

25     discovery, probably beginning with a lot of the financial

5

1    records that we have amassed during this investigation.

2    We are in the process of collecting those, getting them

3    Bates numbered, scanned.  Hopefully we'll get them mostly

4    on disk to give to defense counsel.

5            To the extent we have statements of the

6    defendants, we will also turn those over, including any

7    prior testimony or affidavits that were submitted by these

8    defendants.  It is a voluminous amount of discovery, your

9    Honor.  So we do anticipate that it will take quite a

10   while to produce everything, but we will endeavor to begin

11   that production as soon as possible and prior to our

12   January 22nd date.

13           So for those reasons we would ask your Honor to

14   enter an order of excludable delay until January 22nd, for

15   the purposes of allowing the government to begin to

16   provide discovery and for defense counsel to begin its

17   process of reviewing that discovery and certainly we will

18   also put together a proposed plea agreement to turn over

19   to the defendant.

20           MR. LITTLE:  The date is fine, your Honor, and

21   we agree to the exclusion for speedy trial purposes.

22           THE COURT:  I have the waiver before me.  Let me

23   confirm that with Mr. Constantine.

24           Mr. Constantine, you heard your lawyer ask me to

25   adjourn the case until January 22nd so that you and your

6

1    attorney can continue to receive discovery from the

2    government, review it and decide how you want to proceed

3    with respect to the case.

4           By signing this waiver you are agreeing to

5    exclude the time under the Speedy Trial Act until January

6    22nd to allow you to do that.

7           Is that your wish?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  I will grant that application.

10          Your appearance is adjourned to the date we had

11   previously scheduled for Mr. Kenner on January 22nd at 1

12   o'clock.

13          THE COURT:  I had already excluded the time for

14   the case as a whole until that date because there was only

15   one speedy trial clock per case, but I will make the

16   adjournment again in this defendant's presence.

17          I exclude the time until January 22nd under

18   3161(H)(7)(a).  In order to allow the defendant and his

19   counsel to review the discovery and decide how they want

20   to proceed with respect to the case as well as the

21   codefendant, I find the ends of justice served by granting

22   the continuance outweigh the best interests of both the

23   public and the two defendants in a speedier trial and I

24   have so ordered the waiver.

25          MS. CAPWELL:  Your Honor, before we get to the

1   issue of bail, I think it's probably also worth addressing

2   and I raised this before your Honor came out with

3   Mr. Little that I noticed when Mr. Little filed his notice

4   of appearance he wrote in it was for arraignment purposes

5   only and I wanted to make sure the court was aware of

6   that.

7          I don't think that's typical in this district to

8   appear only for arraignment purposes.  I wanted the court

9   to be aware of that.

10         THE COURT:  I caught that when I asked you if

11  you were retained.

12         You are just retained for purposes of

13  arraignment and the issue of bail, is that accurate?

14         MR. LITTLE:  That's correct, your Honor.

15         I don't know that that's the government's

16  concern, but, at any rate, as Ms. Capwell knows, the

17  defendant's in bankruptcy right now.  So obviously

18  something has to be done.

19         We haven't worked that out yet.

20         THE COURT:  Okay.

21         I will allow Mr. Little to appear for purposes

22  of the arraignment and bail.  Obviously if

23  Mr. Constantine, you are unable to afford counsel, you can

24  always request that counsel be appointed.

25         You understand that?

8

1          THE DEFENDANT:  I do.

2          THE COURT:  Why don't we proceed to the issue of

3     bail.

4          Because Mr. Constantine was not present when I

5     heard argument from the lawyers and issued the stay of the

6     magistrate judge's decision in Arizona, I'm going to treat

7     this as a new bail hearing.  I'm going to consider it

8     de novo.

9          So I'll have the government go first and I have

10    heard a lot of the arguments, but because Mr. Constantine

11    wasn't present I'll consider it to be a full bail hearing

12    because it is a de novo review in any event.

13         Go ahead, Ms. Capwell.

14         MS. CAPWELL:  Thank you, your Honor.

15         I'll also place on the record in terms of what

16    we filed on the detention issue on November 13th the

17    government filed a detention letter with your Honor and

18    it's also provided to defense counsel and also on November

19    21st we filed our motion to stay the release order from

20    the district of Arizona and we were also asked in that

21    letter that the defendant's release be revoked.

22         So some of the grounds for arguments were there,

23    but our position has been from the get-go, and it remains,

24    that a permanent order of detention should be entered here

25    because the defendant poses a serious risk of flight and

9

1    that no condition or combination of conditions would be

2    sufficient to reasonably assure the court that this

3    defendant would appear at future court appearances.

4         Some of the factors that we have considered and

5    that go toward his risk of flight are one which is the

6    potential sentence that he faces in this case, based on

7    the charges which are serious, conspiracy to commit wire

8    fraud, substantive wire fraud charges as well as a

9    conspiracy to launder money, and those charges and as we

10   allege in the indictment the losses to the victims are at

11   least $15 million between both the defendant and his

12   codefendant, Mr. Kenner and this defendant is easily

13   responsible for at least half of those losses, so at least

14   $7 million of those losses.

15        There are several victims in this case, more

16   than 15 victims, probably more than 20 victims in this

17   case.  Not all of them listed as John Does in the

18   indictment, there are additional victims as well.  Because

19   of the loss amount and because of the number of victims

20   and the sophisticated means that were used in this case to

21   perpetrate a fraud over a number of years, the guideline

22   range that the government is calculating is approximately

23   151 to 188 months for this defendant, which is about 12 to

24   15 years, clearly a significant amount of time that this

25   defendant is facing, and a very serious reason that the

10

1    defendant would have to flee prosecution, leave the

2    country, and avoid the potential of spending more than ten

3    years in jail.

4            The defendant is in a criminal history category

5    II based on a 1996 drug narcotics conviction out of

6    Illinois.  The evidence in this case is strong.  The

7    indictment is a speaking indictment and is very detailed,

8    but the evidence here includes financial records,

9    voluminous financial records that track the money from the

10   victims giving the money to Mr. Kenner, and at times also

11   to Mr. Constantine, and tracking the money flow, the

12   various accounts it went through.  It was a very

13   sophisticated fraud.

14           So there are multiple accounts with different

15   names, holding companies, shell companies.  So tracking

16   the money is quite an endeavor, but the financial records

17   do show that a large portion of the money that the

18   investors invested believed they were investing in

19   property, start-up companies, actually ended up being used

20   by the defendants just for their personal needs, paying

21   mortgage payments on their own properties, getting homes

22   out of foreclosure, traveling, credit card bills, all

23   kinds just to fund their lifestyle, and also the moneys

24   were used just for purposes that weren't authorized or

25   even known to the victims.

1          In addition to the financial records, we do have

2     several victims who would come to testify about the

3     representations that were made to them, the moneys that

4     they invested, and ultimately what happened to their money

5     and the loss of their money.

6          We also have e-mail and text message

7     communications, many of those are between the victims and

8     the defendants.  Some are between Mr. Kenner and

9     Mr. Constantine.  We have some text messages regarding

10    where some of the money that the victims invested in

11    Euphora went.  We also have a recording, an audio

12    recording between defendant Kenner and Mr. Constantine, in

13    which basically Mr. Constantine describes himself as a

14    get-away driver.  Mr. Kenner's the robber, Mr. Constantine

15    is the get-away driver.  And we would certainly argue at

16    trial that that was an admission of his culpability and

17    his perception of his role in this scheme.

18          In addition, we are -- that's a summary of our

19    evidence at this point.  We also believe that

20    Mr. Constantine poses a risk of flight --

21          THE COURT:  Before you get to the other factors,

22    I saw in your letter you talked about forged signatures

23    and fictitious documents as well.

24          Does that involve Mr. Constantine?  Do you have

25    evidence of him forging signatures or creating fictitious

1    documents or does that relate to Mr. Kenner?

2            MS. CAPWELL:  Your Honor, may I have a moment to

3    check with the case agents?

4            THE COURT:  Yes.

5            (Whereupon, there was a pause in the

6    proceedings.)

7

8            MS. CAPWELL:  Yes, your Honor.

9            There are some instances related particularly to

10   the investments in Hawaii where there are documents that

11   were fictitious that were created later, backdated to

12   appear as if they were created earlier in time and also

13   had a forged signature of one of the victims in this case.

14           So there are examples that also apply to

15   Mr. Constantine.

16           THE COURT:  You are moving to the other factors.

17           MS. CAPWELL:  Your Honor, there also is evidence

18   that Mr. Constantine has recent and substantial

19   international travel, including the Bahamas in March,

20   April and June of this year.

21           The records indicate that he traveled to Mexico

22   in March of this year, as well as August of 2012, Zurich

23   in December of 2012, and also he's been to Mexico at least

24   12 times, based on our travel records, between 2007 and

25   2009.  He's no stranger to Mexico, and he also traveled to

13

1   Greece quite some time ago in 1998, which is another

2   point, is that the defendant does have connections to

3   Greece.

4           We have a witness who advised the government I

5   think it's actually a victim that advised the government

6   that at one point Constantine stated that he had family in

7   Greece and if necessary he could move there.  We have

8   evidence that the defendant speaks Greek and speaks Greek

9   to his family members.  So he certainly knows the language

10  and can survive in Greece.

11          We also have evidence that his family I believe

12  it was his mother sold property in Greece within the last

13  two years and I believe part of that was to fund the

14  purchase of the home in Scottsdale, which is one of the

15  properties that I believe the defendant proposes to use to

16  request bail in this case.

17          So there certainly are ties to Greece that would

18  corroborate what the victim told us.  In addition, the

19  defendant worked prior to his arrest in the aircraft

20  industry.  He was the founder of a company called Set Jet,

21  which is in Scottsdale-Phoenix area, which offers private

22  VIP flights to a few cities, Los Angeles and a few other

23  cities.

24          In addition, he's worked for many years and this

25  was in his pretrial services report, for AZ Falcon

14

1  Partners, also in Scottsdale, which also owns aircraft.
2  So he also would have access, both through his prior
3  employment and through all of his contacts in that
4  industry which is very well documented simply through the
5  internet.  There are many postings, even on his own Tommy
6  Constantine Web site, he kind of boasts about the fact
7  that he, himself, is a helicopter pilot and there are news
8  articles of him being the founder of Set Jet.
9         So he clearly would have access, both through
10  his contacts in his prior employment to private aircraft,
11  and he, himself, knows how to pilot a helicopter.
12         I think very importantly is the fact that he
13  lives in Scottsdale Arizona.  It's not a far drive to the
14  Mexican border.  It's through our travel records, it's
15  clear that in order for somebody to leave the
16  United States and go to Mexico, they are not necessarily
17  stopped at the border.  You can drive through.  There's
18  not any immigration checks at that point.  It's when
19  somebody tries to enter into the United States that
20  there's the immigration check.
21         So it would be very easy for the defendant from
22  his home in Scottsdale to jump in the car and be in Mexico
23  in a matter of hours, so even if the defendant were on an
24  ankle bracelet as the magistrate judge ordered as part of
25  the release package, that would not be sufficient to deter

1  or prevent him from traveling to Mexico if that was his

2  plan.  By the time the pretrial services officer had an

3  indication that Mr. Constantine was outside the limit of

4  where he was supposed to be, it would be too late at that

5  point to prevent him from traveling into Mexico, and then

6  after that, certainly there have been cases where people

7  have been once they get to where they are going are able

8  to remove the ankle bracelet.

9       So we certainly think it would be easy enough

10  for him to get to Mexico and then travel to wherever else,

11  including Greece, if he wanted to go to after that.

12       Also, your Honor, just in terms of the

13  statements he made to pretrial services that are in the

14  pretrial services report, as well as some of the testimony

15  he gave at his own detention hearing in Arizona and

16  compared to statements that he made in his bankruptcy

17  petition in the district of Arizona, there are a number of

18  inconsistencies there, touching on his income.

19       For example, in the pretrial services report, it

20  reports that he makes $5,000 a month, I believe working at

21  the AZ Falcon Partners, versus in the bankruptcy petition

22  he reported no income for the last two years and there are

23  a few examples of that.

24       Another example of what brings the government

25  some concern in terms of his, that he would return to

16

1    court and is able to follow the issue of being able to

2    follow the judge's instructions and rules and to respect

3    the court's orders, when we see some of these

4    inconsistencies, that's what concerns us and in the

5    pretrial services report, from Arizona, on page two toward

6    the bottom it says Mr. Constantine self-disclosed his home

7    was foreclosed in 2006, however could not recall the

8    address to his residence.

9            The government finds that to be suspect, and

10   from our investigation and our research, there was a home

11   in Scottsdale on North 93rd Place that Mr. Constantine

12   purchased in March of 2006 for approximately $768,000, and

13   in March of 2009 that property went into foreclosure, not

14   clear that's the property he's referring to, but $450,000

15   that the victims invested into the global settlement fund

16   in this case were transferred in June of 2009 to an

17   associate of Mr. Constantine, and then two days after that

18   transfer, that $450,000 was transferred to a title company

19   and by June 16th of '09, Constantine's friend or associate

20   then owned that property on North 93rd Place in

21   Scottsdale.

22           In the bankruptcy petition, the defendant

23   reported that he was at that address until August of 2009.

24   So it's just of some concern that through the pretrial

25   services reports that he said that one of his homes was

1    foreclosed in 2006, but he couldn't remember the address,

2    and it seems like that address has a relationship to this

3    case here and that funds that were taken from the global

4    settlement fund, which were supposed to be used primarily

5    for legal defense in connection with investments, real

6    estate investments, was then transferred to an associate

7    of Mr. Constantine and used to purchase the home that was

8    in foreclosure.  That's just one example of some of the

9    inconsistencies and concerns from the pretrial services.

10            In the pretrial services report as well there

11   was some discussion of this in the hearings in Arizona,

12   the defendant reported his home as being the 2555 North

13   Windy Walk Drive address in Scottsdale, Arizona, which is,

14   again, the home that was offered for bail purposes in

15   Arizona, and that's the home where his mother lives.  The

16   defendant was actually living with his girlfriend at a

17   second address which is at the top of page two of the

18   pretrial services report at 103rd Street in Scottsdale.

19            But, again, he just disclosed to pretrial

20   services that he resided at the girlfriend's address at

21   times, based on surveillance in this case, the arrest in

22   this case, he was living at that other address, the 103rd

23   Street address, not at his mother's address.  Those are

24   just a few of the things that in addition made the

25   government pause about the defendant's representations.

1          So, your Honor, I think that primarily sums it

2    up.  I may have some other things to add after Mr. Little

3    speaks, but based on all of those reasons, we believe he

4    poses a risk of flight in this case.  It would be too easy

5    for him to flee, especially looking at the sentence,

6    potential sentence he's looking at, which is greater than

7    ten years in this case.

8          Thank you.

9          THE COURT:  Thank you, Ms. Capwell.

10         Go ahead, Mr. Little.

11         MR. LITTLE:  It's a minor thing, but I want to

12   correct it right away.

13         This thing about the house, he gave his mother's

14   residence because his partner, her lease was up.  She was

15   moving out.  So he gave the mother's address as the

16   address he would be living since the lease was up.  So

17   that's a gross exaggeration.

18         Your Honor, since the last time we met we have

19   been able to substantially increase the bail package.

20   Pretrial services, by the way, despite what counsel

21   characterized as their concerns about some minor points

22   and I can address those later, recommended release on the

23   $500,000 bail secured by real estate.  Obviously we

24   understand the court has stayed that and it's a de novo

25   hearing now.

1          But despite those minor points, pretrial

2    services still recommended he be released on bail.  The

3    $5,000 item where he said he was making $5,000 a month,

4    what he said was he expected to make $5,000 a month once

5    the Falcon partners aircraft business was up and running

6    and they said we shouldn't talk about that because that's

7    a subjected case and the discussion ended there.  That was

8    explained as counsel knows during the hearing and it's in

9    the transcript.

10          Let me go back to the bail package we are

11    proposing, your Honor.  Mr. Constantine's mother,

12    Mrs. Kehey Constantine, has pledged her house and there is

13    an appraisal in the record of $500,000.  The original bail

14    was approved by the court there.  She lives there.  It's

15    her home and her primary asset.

16          In addition, Tommy's brother, who is a severe

17    epileptic, who is unemployable, lives there as well.  It's

18    beyond belief that he would flee and render them homeless.

19          But, in addition, we have two other sureties,

20    Sue Ellen Ferguson who lives in Delray, Florida, has

21    agreed to pledge her home which can easily cover another

22    $500,000 on a personal recognizance bond and we can get

23    the papers to establish that.  Mrs. Ferguson is the mother

24    of Tommy's best friend who died from leukemia, and even

25    though Mr. Constantine has his mother, in addition

1    Mrs. Ferguson is almost a surrogate mother to him and is

2    happy to sign bail and pledge her own home, so that's a

3    million dollars.

4            In addition, Dr. Kip Lassiter, who is a highly

5    respected doctor and a very successful businessman in the

6    Phoenix area has agreed to pledge an additional million

7    dollars which he can secure with real estate.

8    Mr. Lassiter is the owner of the Set Jet company.  It's

9    not Mr. Constantine, as counsel suggested.  That

10   Mr. Lassiter is a very prominent businessman and he agreed

11   to increase the bail.

12           So we have a total package of $2 million.

13   Obviously it will take time to obtain appraisals and

14   necessary paperwork to secure the properties, but we are

15   proposing that as a package.  We submit it's just not

16   believable that Mr. Constantine would abandon his mother,

17   his brother, Mrs. Ferguson, who's a second mother to him,

18   as well as his business partner, Mr. Lassiter, and deprive

19   them of $2 million in bail by fleeing.

20           In addition, he has already surrendered his

21   passport, and despite the urban myth Mexico is a safe

22   place to flee, it's not true.  You cannot go to Mexico

23   without his passport.  His passport has been surrendered.

24   It's a gross exaggeration to suggest he's familiar with

25   Mexico and goes there a lot.  The trips he made were back

1   in 2007 to 2009 in connection with a business venture

2   involving a golf course, the Diamanté Resort.  These were

3   all business trips of I guess three or four years ago now.

4   Since then he went there once on vacation, but the fact of

5   giving over the passport would make it impossible for him

6   to even enter Mexico.

7           I'd like to address this business about the

8   airplanes, which is another gross exaggeration.  He has

9   been relieved, once he was arrested, the owners of AZ

10  Falcon Partners, a partnership that owns three aircraft,

11  relieved him of all of his responsibilities.  In addition,

12  none of those aircraft can be used, as counsel should

13  know.  They seized the Falcon 10, the other two aircraft,

14  the Falcon 20 and a Falcon 50 are grounded.  They are

15  going through a six-year renovation.  They are not flight

16  worthy.  But, in any event, the owners of that business

17  will not permit him to have access to the property.

18          With respect to Set Jets, it's true that

19  Mr. Constantine helped organize that company years ago,

20  but Mr. -- Dr. Lassiter, who's pledging a million dollars

21  from his own assets to secure his bail, is the primary

22  shareholder there and there is no way that he would

23  jeopardize his million dollars of exposure by giving

24  Mr. Constantine access to the jets, and he's showing his

25  support for his bail by subjecting himself to a million

1    dollars worth of liability.

2              There was reference to Greece.  This is probably

3    the grossest exaggeration so far.  Mr. Constantine was

4    born and raised and lived here his entire life.  He speaks

5    Greek because his parents speak Greek.  He went to Greece

6    once where he visited his aunt who has since died.  He was

7    on a business trip to Turkey and he stopped in Greece to

8    visit her.

9              He hasn't been there since he was a young boy.

10   It's ridiculous to suggest that somehow he would depart

11   for Greece.  It makes no sense.  In addition, Greece has

12   extradition treaty with the United States.

13             THE COURT:  Your position is the victim made

14   that statement up?

15             MR. LITTLE:  Yes, I do.

16             There has been vicious civil litigation and

17   arbitration between and among various hockey players and a

18   person named Ken Cowdy who frankly is surprising hadn't

19   been named in this indictment since he's the one that ran

20   the Mexican resort known as Diamanté and that's where the

21   hockey players' money is lost.  For some reason Mr. Cowdy

22   has not been charged here.

23             That brings me to the charges, your Honor,

24   because again they have been grossly exaggerated.  First

25   of all, $90 million of the alleged losses are attributed

1    to the Hawaii project.  The Hawaii project began long

2    before Mr. Constantine even met Mr. Kenner.  Kenner put

3    hockey players' money apparently in that project at the

4    time he met Mr. Constantine, he purported to be the owner

5    of that prong.

6             Mr. Constantine had no involvement with hockey

7    players in connection with that investment, and didn't

8    know that the hockey players were involved in that until

9    much later when there was a civil arbitration and he was

10   shocked to find out that Kenner lied to him and actually

11   put the hockey players' money in it.  We think the

12   government's evidence with respect to his involvement as

13   far as the Hawaii case is concerned will be insufficient

14   to get any kind of a conviction.

15             There is reference in there to $3.5 million.

16   That is money that Mr. Constantine raised with a man named

17   James Gardina and the government knows about this, who is

18   an investor who put forward $3.5 million as part of bridge

19   financing before Lehman Brothers came into the picture to

20   finance the Hawaii project to completion.  There is the

21   reason Mr. Constantine was compensated by Mr. Kenner

22   during the tail end of the Hawaii project.  But to suggest

23   somehow he's a coconspirator of the Hawaii project will

24   not be borne out by the evidence.

25             No. 2, there are a lot of allegations about this

1   so-called global settlement fund.  It is true that the

2   hockey players were asked to put money in a fund in Ron

3   Richards account.  Ron Richards is a lawyer who is

4   handling litigation.  He had an escrow account and money

5   called the global settlement fund was put in that escrow

6   account.

7            In addition, and completely separate from that,

8   other money was deposited by Mr. Constantine in that

9   account, and the withdrawals for his personal benefit came

10  from his funds, not from the global settlement fund, the

11  escrow account and the global settlement fund had been

12  conflated into one thing.  They are entirely separate.

13           That escrow fund is an attorney's escrow fund

14  that has different funds within it.  And the money that

15  the government claims was released to Mr. Constantine

16  which he used for personal expenses came from deposits

17  that he made and his investors made in that, not from

18  hockey players' money.

19           Finally, there are two paragraphs in the letter

20  submitted by counsel on the Eastern District case, and

21  admittedly the government actually comes out and says

22  that's a separate fraud not involving Mr. Constantine.  So

23  to say this is a $15 million fraud is to grossly

24  exaggerate it, and his exposure, therefore, is not the 12

25  years that counsel talks about.  It's probably less than

1    half that.

2            If Mr. Constantine were to flee, he knows that

3    in addition to being prosecuted on the substantive

4    charges, he faces an additional five years for flight.  It

5    would be insane for him to flee, to in effect double his

6    potential exposure, which I believe is more like five

7    years to ten years, but, more importantly, to abandon his

8    own mother, his epileptic brother, Mrs. Ferguson, who's a

9    second mother to him, and his business partners exposing

10   himself to $1 million in exposure to so-called flee to

11   some unknown destination.

12           There's no reason in a white collar case like

13   this that he should not be given bail with an amount of $2

14   million and all this security and we would agree to a very

15   strict pretrial reporting.

16           May I have a moment, your Honor.

17           (Whereupon, there was a pause in the

18   proceedings.)

19

20           MR. LITTLE:  Most importantly, your Honor, and

21   this is personal, but I think this is the strongest thing

22   we can say, his partner, Sara Bauers, is six months

23   pregnant with his first child, a son, who is to be born in

24   March.  It's inconceivable that he would bolt with that

25   circumstance, in addition to betraying his family and

26

1    friends.

2            Finally, your Honor, I made mention to this the

3    last time we were here.  I have represented

4    Mr. Constantine for the past three years, and during that

5    time we had repeated meetings with the Southern District

6    of New York's US Attorney's Office, Arlo Devnon Brown was

7    the assistant, and as recently in this last year we went

8    in and had an extended proffer with Mr. Devnon Brown and

9    he was to contact us for a second proffer.

10           It is highly unlikely in white collar cases,

11   your Honor knows this from your Honor's own experience, in

12   a white collar case where a defendant knows about an

13   investigation for years, where he's retained counsel,

14   where counsel is going in to make proffers and

15   presentations where he himself is going in, where he would

16   have had the opportunity to flee for a long time before

17   the charges were brought, would flee now.  It makes no

18   sense at all.

19           So for all these reasons, your Honor, we ask

20   that the court approve a bail package of $2 million.

21   Obviously we'll need time to secure for the government's

22   consideration appraisals and whatever else needs to be

23   done to secure the real estate securing all these bonds.

24   So we recognize there will be some delay here, but we will

25   move quickly and we believe this is the only just result.

27

1          Thank you.

2          THE COURT:  Thank you, Mr. Little.

3          You want to respond, Ms. Capwell?

4          MS. CAPWELL:  Just briefly and I'll address the

5    last point that Mr. Little raised again about the

6    investigation in the Southern District.

7          It's my understanding there was only one meeting

8    where the defendant was present, December of 2012.  I

9    wanted the record to be clear there weren't multiple

10   meetings where the defendant and Mr. Little met with the

11   Southern District.

12         And obviously there is a change in circumstances

13   here, your Honor noted that when we were in court on

14   November 21st.  It's different when somebody thinks they

15   are meeting with a US Attorney's Office just to discuss

16   and answer questions versus once there is an indictment

17   and an arrest warrant for that individual and they are

18   looking at charges that could bring them more than ten

19   years in jail.  Certainly there is a change of

20   circumstances here from just voluntarily going in to speak

21   to the government.

22         And then just some issues on the properties that

23   the defense counsel spoke about.  One was the home of the

24   defendant's mother in Scottsdale.  We received a title

25   search on that property and it indicates that there are

1    three liens on that property.  That would be of concern as

2    to that property.  It appears that there is a $3,900 lien,

3    an $80,000 lien and it appears there is a $250,000

4    mechanics lien on that property.

5            As to Sue Ellen Ferguson, the second individual

6    defense counsel listed as being willing to post a home in

7    Florida, from our investigation it is our understanding

8    that the defendant owes her $9 million at this point.  She

9    advised the agents that that is the case, she corroborated

10   that that is the case that the defendant does owe her $9

11   million.

12           THE COURT:  From what?

13           From investment money?  What is the $9 million

14   from?  Hold on, Mr. Little.  I'll give you a chance.

15           MS. CAPWELL:  Your Honor, it's not clear what

16   that money was from, but she did say that with interest he

17   owes her $9 million.  I believe this goes back quite a few

18   years as well.

19           From our investigation we also know that she's

20   somebody who lives well.  She's comfortable, and so

21   another $500,000 on top of the $9 million that he owes her

22   in the scheme of things is really not that much.  If he

23   already owes her $9 million, what's another $500,000?

24           And, finally, as to defense counsel's statements

25   about Mr. Constantine and his connections to Set Jet and

1    AZ Falcon Partners, we do have an e-mail that's dated

2    January of 2012 from Mr. Constantine to a number of it

3    says undisclosed recipients forwarding Set Jet membership

4    preregistration confirmation and at the bottom on the

5    signature block it's Tommy Constantine, chairman and

6    cofounder, Set Jet, LLC.  So up until early last year he

7    was still representing himself as the chairman and

8    cofounder of that company.

9            And, in addition, in his bankruptcy filings

10   under schedule B of personal property, AZ Falcon partners,

11   LLC is listed as an aircraft management company and the

12   debtor's interest is 50, 5-0, percent, so he owns an

13   airplane needing extensive repairs and worth less than the

14   lien, but he does state he has a 50 percent interest in

15   that and this is from April of 2012.

16            THE COURT:  Let me ask you two questions in

17   response to Mr. Little.

18            He suggested to the court that the diversion of

19   the victims' money was not, in fact, a diversion that

20   there was a separate attorney escrow account, and that was

21   the money that Mr. Constantine was using for mortgage,

22   whatever personal items that you are arguing that he

23   diverted victims' money.

24            What's your response to that?

25            MS. CAPWELL:  Your Honor, I know of at least one

30

1    example where a victim who believed he was investing in

2    Euphora sent I believe $200,000, and I believe that full

3    amount went into the GSF fund -- I'm looking at my agent

4    to get confirmation.

5              Your Honor, in terms of our allegations to the

6    GSF funds, our allegations pertain strictly to money that

7    was invested by the players as their GSF contribution.  So

8    those monies were supposed to be going to help with the

9    legal fight against Ken Jowdy, et cetera, as it was

10   represented to the players by Mr. Kenner and

11   Mr. Constantine.

12             There are instances where money that the

13   defendant Constantine recruited from at least one

14   individual I know off the top of my head as an investment

15   in Euphora, ended up going into Ron Richards escrow

16   account and then got moved out of there into another

17   account and told by the defendant, then ended up going

18   into Euphora and then ended up being used by the defendant

19   for personal uses.

20             As to the GSF fund and the losses we are

21   alleging there, they pertain to moneys that the hockey

22   players invested for legal defense and for some other

23   purposes that were outlined by the defendants.

24             THE COURT:  Then on the loss amount, Mr. Little

25   suggested it's a fraction of the $15 million.

1          I thought I heard you say Mr. Constantine's

2  responsible for at least half, is that correct?

3          MS. CAPWELL:  Yes, your Honor, and that is still

4  our position.

5          We have evidence that as to the Hawaii

6  investments, even prior to the loan that Mr. Gardina and

7  Mr. Constantine purportedly made to the Hawaii investment,

8  even before that Mr. Constantine was receiving large

9  amounts of money from the Hawaii investments.

10          In addition, in terms of the backdating and

11  forged document that I mentioned earlier in response to

12  your Honor's question, a couple of those documents were

13  consulting agreements in connection with the Hawaii

14  project, and the government's position is that those

15  consulting agreements were created well after the fact and

16  backdated to try to justify why Mr. Constantine was

17  receiving funds that were supposed to be going to the

18  Hawaii investments.

19          And, in addition, with the whole issue with the

20  $3.5 million loan that Mr. Little mentioned, it's the

21  government's position that a large chunk of the money that

22  Mr. Constantine ultimately received back from the Hawaii

23  project due to that loan was actually part of the fraud,

24  in the nutshell without going into too much detail,

25  basically Mr. Kenner and Mr. Constantine conspired to

1    basically pay back the loan before they had to and there

2    was a prepayment penalty that was built into the loan

3    agreement.

4            And even though Lehman Brothers and another

5    entity told Mr. Kenner that he should avoid that

6    prepayment penalty by paying back almost the entire loan,

7    but holding back a little bit of it, Mr. Kenner insisted

8    he wanted to pay back the loan in full early, despite this

9    penalty which was egregious, I think it was $2 million, it

10   was a $2 million prepayment penalty which could have been

11   avoided.

12           And one of the conditions that Lehman Brothers

13   and one of the other entities involved put into an

14   agreement was that Mr. Kenner was to receive absolutely no

15   moneys from the prepayment penalty, indirectly, directly,

16   in any form if they were going to, in fact, have to pay

17   this prepayment penalty and as our investigation reveals,

18   the moneys that went to Mr. Constantine, about $700,000,

19   then flowed from accounts that Mr. Constantine then

20   controlled to Mr. Kenner of the money that he was not

21   supposed to receive.

22           So even with that $3.5 million loan, it's our

23   argument that that is part of the fraud in this case.

24           THE COURT:  Mr. Little.

25           MR. LITTLE:  May I respond briefly, that was a

33

1    lot of information and they are trying their case now.

2            But the government didn't quite respond to the

3    court's question about the money that came out of the

4    global settlement fund or more properly the escrow

5    account. Sergei Gonchar is a hockey player. He had a

6    forensic accountant review Ron Davis's -- the attorney's

7    escrow account, Ron Richards, and determined to his

8    satisfaction that all of the money that Constantine got

9    out of the escrow account did not come from the global

10   settlement fund, but came from funds that were deposited

11   from other sources.

12           With respect to the so-called $9 million that he

13   supposedly owes to Sue Ellen Ferguson, first of all it's

14   not $9 million, it was $6 million, and he doesn't owe it

15   to her. That's her investment in Euphora. She she's the

16   primary investor in this credit card company and the fact

17   she's willing to post her home in addition shows she is

18   not a defrauded investor they are suggesting and it

19   boggles the imagination to assume since she's in it for $6

20   or $9 million, she might as well be in it for another

21   $500,000. People don't think that way. If she thought

22   she was being defrauded or abused, she wouldn't give him

23   another dime.

24           The suggestion that he's really an owner of AZ

25   Falcon Partners is another conflation the government did.

He's 50 percent of the management company.  They don't own

the jets.  The jets are owned by a partnership called AZ

Falcon Partners.  These are investors who used to have him

manage, but now he no longer will.  He's been relieved of

his responsibilities.

As far as his being chairman, he was chairman

before the business was funded.  He's no longer chairman

of anything.

Let me see if there is anything else here.

The so-called forgery is not accurate, your

Honor.  We expect if this case goes ahead to trial as I

think it will, that the so-called forgery was not the

person whose signature was supposedly forged actually

signed that document in front of a number of witnesses in

Hawaii, and still counsel cannot respond to the whole

point that the Hawaii part of this so-called fraud

conspiracy occurred before Mr. Constantine was involved.

He had no knowledge of the hockey players'

involvement.  He thought it was Kenner's financing, and he

was paid money as a consultant at the rate of $20 or

$30,000 a month to find new investors and James Gardina

actually did invest.  There was a real $3.5 million that

was invested as bridge financing.

The only point, your Honor, because I know we

can't try the case, but there are answers to these things.

35

1   This is not a slam dunk case.

2           THE COURT:  What's your answer to the audio

3   regarding where he apparently refers to him as the

4   get-away driver for Mr. Kenner?

5           MR. LITTLE:  He was not talking about himself.

6   He was talking about Ken Jowdy.

7           When you read the whole transcript this context,

8   he's accusing when Kenner was trying to suggest that he'd

9   be liable for all these things even though Kenner is the

10  real malefactor in this he said no, you are wrong.  You

11  are the real bank robber and the other guy is the get-away

12  driver, it's Jowdy.

13          Jowdy is the one that defrauded the hockey

14  players with a Mexican golf resort that Mr. Constantine

15  had nothing to do with this indictment.  And again one

16  wonders why Mr. Jowdy was not charged in this indictment

17  since most of the hockey players' money was lost as a

18  result of the resort in Mexico.

19          THE COURT:  What's your answer to the lien on

20  the mother's house?

21          MR. LITTLE:  We don't know anything about it,

22  but we'll look into it.

23          We thought the title search was clear.

24  Obviously if it's not clear we'll come up with other

25  security and fix that.  It's the first I heard of it.

36

1          THE COURT:   Thank you, Mr. Little.

2          The court has reviewed the bail issue de novo,

3    both from the submissions and arguments of counsel and I

4    believe the government has met its burden of proof by a

5    preponderance of the evidence that there are no conditions

6    that can reasonably assure the defendant's appearance in

7    court.

8          I will state the reasons for that decision now,

9    but going through the various 3142 G factors, first the

10   nature and circumstances of the offense, this is obviously

11   an extremely serious offense involving millions of dollars

12   in alleged fraud.  Whether or not Mr. Constantine is

13   responsible for the $15 million that the government says

14   is the entire scope of the fraud or several million of

15   that amount, it's still a serious offense, and the

16   defendant is facing substantial jail time based upon the

17   nature of the alleged fraud in this case.

18          With respect to the weight of the evidence, the

19   government has proffered, which the court can accept for

20   purposes of a bail argument, that a number of victims

21   would testify as to Mr. Constantine's role in the alleged

22   fraud.  Obviously there's been a grand jury determination

23   that there is probable cause to believe that

24   Mr. Constantine was involved in the fraud, and the

25   government has proffered that they have financial records,

1   e-mail, text, that will corroborate the defendant's

2   involvement in the fraud, as well as the diversion of at

3   least some portion of the money that the victims believed

4   was going to be investment.

5          The next factor in terms of the history and

6   characteristics of the defendant, the defendant certainly

7   has the ability, whether it was for purposes of the

8   investment or not, the defendant certainly has the ability

9   to leave the country through Mexico and flee the

10  United States.  He has had substantial international

11  travel to Mexico.  He does have some ties to Greece,

12  whether or not he's visited there, he certainly has ties

13  there and the government has proffered, again, that the

14  victim will testify that he stated that he had family in

15  Greece.  He could move there.

16         The issue of the aircraft industry, whether or

17  not he has access to aircraft in the court's view is not a

18  critical determination for purposes of the bail.  With or

19  without aircraft it's the court's belief he could easily

20  leave the United States if he wanted to flee.

21         I'm not sure, Mr. Little, what urban myth you

22  are referring to.  I think if the defendant wants to leave

23  the United States, even if his passport has been

24  confiscated, it certainly would not be difficult for the

25  defendant to leave the United States from Mexico or some

38

1    other means if he wished to, with or without his

2    United States passport.

3            I think cases are littered with individuals who

4    are able to do that despite their passports being

5    surrendered to the government.  You have the defendant who

6    is asserting he is essentially bankrupt at this point.  He

7    has no job.  He's not married although he does have

8    obviously ties to the community in terms of his mother,

9    siblings, and his pregnant girlfriend, I do not believe,

10   there is no basis to believe that is going to be

11   sufficient moral suasion for him to remain in the

12   United States when faced with substantial jail time and

13   the strong case that the government has proffered.

14           It creates an enormous risk of flight that I

15   don't believe that there are any conditions or combination

16   of conditions that can reasonably assure his presence in

17   court.  The fact that the defendant knew of the

18   Southern District investigation, I agree with the

19   government, that the fact that the defendant comes in to

20   try to explain his involvement with what the government

21   believes is a fraud, and the fact he did not flee at that

22   point does not necessarily mean he wouldn't flee once he's

23   been indicted.  The stakes have not changed.

24           He now has to face these charges and the

25   calculous and the extent of the flee is magnified

1   enormously at that juncture as opposed to just trying to

2   explain to the government what your involvement or lack of

3   involvement was with respect to a fraud prior to the

4   indictment.

5          With respect to conditions that the court could

6   impose in terms of electronic monitoring and the GPS

7   locational device as I noted at the time I issued the stay

8   and I'll reiterate here, Ms. Capwell and the government

9   pointed this out, the defendant has the ability to flee.

10  Whether or not he's wearing one of those bracelets, he has

11  an enormous head start if he decides to leave whatever

12  residence that bracelet is triggered to because by the

13  time the government is able to respond to that alarm, the

14  defendant is gone.  He's gone.

15         He could cut off the bracelet, and be on his

16  way.  So that does not provide sufficient assurance, at

17  least to this court, that he will not flee if the

18  government were able to track him if he wanted to flee.

19         With respect to the bail package, again, I would

20  just note that it's unclear what moral suasion the mother

21  of his best friend and this businessman that are willing

22  to post property would have over him in terms of his

23  mother's house as well.  It's my belief there are no

24  conditions, I'm not determining that this particular bail

25  package is insufficient, although I believe it is, but I

40

1    also believe that no conditions can reasonably assure his

2    presence in court or combination of conditions, given the

3    combination of factors and circumstances that have

4    presented to this court in this particular case.

5           So for those reasons I'm going to detain the

6    defendant pending trial.  Obviously, Mr. Little, although

7    this is a case that has a substantial amount of discovery,

8    I understand the deprivation of liberty that is associated

9    with pretrial detention, and I can assure you and your

10   client that as soon as he's ready to go to trial, I will

11   schedule a trial date.  The government will have to be

12   ready, and I'll schedule that as quickly as he and his

13   counsel are able to prepare a proper defense in the case.

14          So for those reasons, the defendant is detained.

15   Is there anything else from the government?

16          MS. CAPWELL:  Your Honor, the only issue, and I

17   guess Mr. Little and I can discuss this, in terms of

18   providing discovery, I guess I would need to know whether

19   Mr. Little is going to stay on beyond today before I start

20   turning over discovery.

21          THE COURT:  Just keep in communication with the

22   government in terms of what your status is going to be,

23   Mr. Little.

24          Okay?

25          MR. LITTLE:  Of course.

PAUL J. LOMBARDI, CERTIFIED REALTIME REPORTER
Official Court Reporter

41

1          THE COURT:  Thank you.

2          Anything else, Mr. Little?

3          MR. LITTLE:  The government ought to produce and

4    not delay because of that.

5          THE COURT:  Don't wait until that issue is

6    resolved.

7          Obviously, Mr. Little, as an officer of the

8    court whatever you produce to him he will produce to the

9    next counsel should he be relieved.

10          MS. CAPWELL:  Yes, your Honor.

11          MR. LITTLE:  Thank you.

12          THE COURT:  Okay.

13          Thank you.

14          (The matter concluded.)

15

16

17

18

19

20

21

22

23

24

25

## $

$15 [4] - 9:11, 24:23, 30:25, 36:13
$20 [1] - 34:20
$200,000 [1] - 30:2
$250,000 [1] - 28:3
$3,900 [1] - 28:2
$30,000 [1] - 34:21
$450,000 [2] - 16:14, 16:18
$5,000 [4] - 15:20, 19:3, 19:4
$500,000 [6] - 18:23, 19:13, 19:22, 28:21, 28:23, 33:21
$700,000 [1] - 32:18
$768,000 [1] - 16:12
$80,000 [1] - 28:3
$90 [1] - 22:25

## '

'09 [1] - 16:19

## 1

1 [2] - 6:11, 25:10
10 [1] - 21:13
100 [1] - 1:21
103rd [2] - 17:18, 17:22
11201 [1] - 1:15
11722 [1] - 1:21
1180 [1] - 1:21
12 [3] - 9:23, 12:24, 24:24
13-607 [1] - 3:13
13th [1] - 8:16
15 [2] - 9:16, 9:24
151 [1] - 9:23
16th [1] - 16:19
18 [1] - 1:6
188 [1] - 9:23
1996 [1] - 10:5
1998 [1] - 13:1

## 2

2 [8] - 4:16, 20:12, 20:19, 23:25, 25:13, 26:20, 32:9, 32:10
20 [2] - 9:16, 21:14
2006 [3] - 16:7, 16:12, 17:1
2007 [2] - 12:24, 21:1
2009 [5] - 12:25, 16:13, 16:16, 16:23, 21:1
2012 [5] - 12:22, 12:23, 27:8, 29:2, 29:15
2013 [1] - 1:6
21st [2] - 8:19, 27:14
22nd [7] - 4:16, 5:12, 5:14, 5:25, 6:6, 6:11, 6:17
2555 [1] - 17:12
2:45 [1] - 1:7

## 3

3.5 [5] - 23:15, 23:18, 31:20, 32:22, 34:22
3142 [1] - 36:9
3161(H)(7)(a) [1] - 6:18

## 5

5 [1] - 2:18
5-0 [1] - 29:12
50 [4] - 21:14, 29:12, 29:14, 34:1

## 6

6 [2] - 33:14, 33:19
631 [2] - 1:21, 1:21

## 7

7 [1] - 9:14
712-6106 [1] - 1:21
712-6122 [1] - 1:21

## 9

9 [9] - 28:8, 28:10, 28:13, 28:17, 28:21, 28:23, 33:12, 33:14, 33:20
93rd [2] - 16:11, 16:20

## A

abandon [2] - 20:16, 25:7
ability [3] - 37:7, 37:8, 39:9
able [9] - 4:5, 15:7, 16:1, 18:19, 38:4, 39:13, 39:18, 40:13
absolutely [1] - 32:14
abundance [1] - 2:19
abused [1] - 33:22
accept [1] - 36:19
access [5] - 14:2, 14:9, 21:17, 21:24, 37:17
account [11] - 24:3, 24:4, 24:6, 24:9, 24:11, 29:20, 30:16, 30:17, 33:5, 33:7, 33:9
accountant [1] - 33:6
accounts [3] - 10:12, 10:14, 32:19
accurate [2] - 7:13, 34:10
accusing [1] - 35:8
Act [1] - 6:5
add [1] - 18:2
addition [19] - 11:1, 11:18, 13:18, 13:24, 17:24, 19:16, 19:19, 19:25, 20:4, 20:20, 21:11, 22:11, 24:7, 25:3, 25:25, 29:9, 31:10, 31:19, 33:17

additional [3] - 9:18, 20:6, 25:4
address [16] - 16:8, 16:23, 17:1, 17:2, 17:13, 17:17, 17:20, 17:22, 17:23, 18:15, 18:16, 18:22, 21:7, 27:4
addressing [1] - 7:1
adjourn [1] - 5:25
adjourned [1] - 6:10
adjournment [1] - 6:16
admission [1] - 11:16
admittedly [1] - 24:21
advised [3] - 13:4, 13:5, 28:9
affidavits [1] - 5:7
afford [2] - 2:24, 7:23
afternoon [4] - 2:6, 2:7, 2:8, 2:10
agent [1] - 30:3
agents [2] - 12:3, 28:9
ago [3] - 13:1, 21:3, 21:19
agree [5] - 5:21, 25:14, 38:18
agreed [3] - 19:21, 20:6, 20:10
agreeing [1] - 6:4
agreement [3] - 5:18, 32:3, 32:14
agreements [2] - 31:13, 31:15
ahead [3] - 8:13, 18:10, 34:11
aircraft [11] - 13:19, 14:1, 14:10, 19:5, 21:10, 21:12, 21:13, 29:11, 37:16, 37:17, 37:19
airplane [1] - 29:13
airplanes [1] - 21:8
alarm [1] - 39:13
allegations [3] - 23:25, 30:5, 30:6
allege [1] - 9:10
alleged [4] - 22:25, 36:12, 36:17, 36:21
alleging [1] - 30:21
allow [3] - 6:6, 6:18, 7:21
allowing [1] - 5:15
almost [2] - 20:1, 32:6
amassed [1] - 5:1
AMERICA [1] - 1:3
amount [8] - 5:8, 9:19, 9:24, 25:13, 30:3, 30:24, 36:15, 40:7
amounts [1] - 31:9
Angeles [1] - 13:22
ankle [2] - 14:24, 15:8
answer [3] - 27:16, 35:2, 35:19
answers [1] - 34:25
anticipate [1] - 5:9
appear [4] - 7:8, 7:21, 9:3,

12:12
appearance [5] - 2:3, 2:12, 6:10, 7:4, 36:6
appearances [1] - 9:3
APPEARANCES [1] - 1:11
appeared [1] - 4:17
application [1] - 6:9
APPLICATION [1] - 1:8
apply [1] - 12:14
appointed [2] - 2:24, 7:24
appraisal [1] - 19:13
appraisals [2] - 20:13, 26:22
approve [1] - 26:20
approved [1] - 19:14
April [2] - 12:20, 29:15
arbitration [2] - 22:17, 23:9
area [2] - 13:21, 20:6
argue [1] - 11:15
arguing [1] - 29:22
argument [3] - 8:5, 32:23, 36:20
arguments [3] - 8:10, 8:22, 36:3
Arizona [10] - 2:18, 8:6, 8:20, 14:13, 15:15, 15:17, 16:5, 17:11, 17:13, 17:15
Arlo [1] - 26:6
arraigned [1] - 3:10
arraignment [5] - 3:17, 7:4, 7:8, 7:13, 7:22
ARRAIGNMENT/BAIL [1] - 1:8
arrest [3] - 13:19, 17:21, 27:17
arrested [1] - 21:9
arrived [2] - 2:13, 2:16
articles [1] - 14:8
asserting [1] - 38:6
asset [1] - 19:15
assets [1] - 21:21
assistant [1] - 26:7
associate [3] - 16:17, 16:19, 17:6
associated [1] - 40:8
assume [2] - 2:13, 33:19
assurance [1] - 39:16
assure [5] - 9:2, 36:6, 38:16, 40:1, 40:9
attorney [3] - 3:16, 6:1, 29:20
ATTORNEY [1] - 1:12
Attorney's [2] - 26:6, 27:15
attorney's [2] - 24:13, 33:6
attributed [1] - 22:25
audio [2] - 11:11, 35:2
August [2] - 12:22, 16:23
aunt [1] - 22:6
AUSA [3] - 1:13, 1:13, 1:14
authorized [1] - 10:24
avoid [2] - 10:2, 32:5

avoided [1] - 32:11
aware [2] - 7:5, 7:9
AZ [7] - 13:25, 15:21, 21:9, 29:1, 29:10, 33:24, 34:2

**B**

backdated [2] - 12:11, 31:16
backdating [1] - 31:10
Bahamas [1] - 12:19
bail [29] - 3:1, 4:3, 4:6, 4:8, 7:1, 7:13, 7:22, 8:3, 8:7, 8:11, 13:16, 17:14, 18:19, 18:23, 19:2, 19:10, 19:13, 20:2, 20:11, 20:19, 21:21, 21:25, 25:13, 26:20, 36:2, 36:20, 37:18, 39:19, 39:24
bank [1] - 35:11
bankrupt [1] - 38:6
bankruptcy [5] - 7:17, 15:16, 15:21, 16:22, 29:9
based [6] - 9:6, 10:5, 12:24, 17:21, 18:3, 36:16
basis [1] - 38:10
Bates [1] - 5:3
Bauers [1] - 25:22
BEFORE [1] - 1:9
began [1] - 23:1
begin [3] - 5:10, 5:15, 5:16
beginning [1] - 4:25
belief [3] - 19:18, 37:19, 39:23
believable [1] - 20:16
believes [1] - 38:21
benefit [1] - 24:9
best [3] - 6:22, 19:24, 39:24
betraying [1] - 25:25
between [7] - 4:21, 9:11, 11:7, 11:8, 11:12, 12:24, 22:17
beyond [2] - 19:18, 40:19
BIANCO [1] - 1:9
bills [1] - 10:22
bit [1] - 32:7
block [1] - 29:5
boasts [1] - 14:6
boggles [1] - 33:19
bolt [1] - 25:24
bond [1] - 19:22
bonds [1] - 26:23
border [2] - 14:14, 14:17
born [2] - 22:4, 25:23
borne [1] - 23:24
bottom [2] - 16:6, 29:4
boy [1] - 22:9
bracelet [4] - 14:24, 15:8, 39:12, 39:15
bracelets [1] - 39:10
bridge [2] - 23:18, 34:23
briefly [1] - 27:4, 32:25

bring [1] - 27:18
brings [2] - 15:24, 22:23
Brooklyn [1] - 1:15
brother [3] - 19:16, 20:17, 25:8
Brothers [3] - 23:19, 32:4, 32:12
brought [1] - 26:17
Brown [2] - 26:6, 26:8
built [1] - 32:2
burden [1] - 36:4
business [9] - 19:5, 20:18, 21:1, 21:3, 21:7, 21:16, 22:7, 25:9, 34:7
businessman [3] - 20:5, 20:10, 39:21
BY [1] - 1:13

**C**

calculating [1] - 9:22
calculous [1] - 38:25
cannot [3] - 2:24, 20:22, 34:15
capwell [3] - 8:13, 27:3, 39:8
Capwell [3] - 2:4, 7:16, 18:9
CAPWELL [15] - 1:13, 2:4, 2:14, 4:14, 6:25, 8:14, 12:2, 12:8, 12:17, 27:4, 28:15, 29:25, 31:3, 40:16, 41:10
car [1] - 14:22
card [2] - 10:22, 33:16
CARRIE [1] - 1:13
Carrie [1] - 2:4
case [41] - 2:1, 4:2, 4:7, 4:13, 4:15, 5:25, 6:3, 6:14, 6:15, 6:20, 9:6, 9:15, 9:17, 9:20, 10:6, 12:3, 12:13, 13:16, 16:16, 17:3, 17:21, 17:22, 18:4, 18:7, 19:7, 23:13, 24:20, 25:12, 26:12, 28:9, 28:10, 32:23, 33:1, 34:11, 34:25, 35:1, 36:17, 38:13, 40:4, 40:7, 40:13
cases [3] - 15:6, 26:10, 38:3
CAT [1] - 1:25
category [1] - 10:4
caught [1] - 7:10
caution [1] - 2:20
Central [2] - 1:5, 1:21
certainly [11] - 5:17, 11:15, 13:9, 13:17, 15:6, 15:9, 27:19, 37:6, 37:8, 37:12, 37:24
cetera [1] - 30:9
chairman [5] - 29:5, 29:7, 34:6, 34:7
chance [1] - 28:14
change [2] - 27:12, 27:19

changed [1] - 38:23
characteristics [1] - 37:6
characterized [1] - 18:21
charged [2] - 22:22, 35:16
charges [9] - 2:21, 9:7, 9:8, 9:9, 22:23, 25:4, 26:17, 27:18, 38:24
check [2] - 12:3, 14:20
checks [1] - 14:18
child [1] - 25:23
chunk [1] - 31:21
circumstance [1] - 25:25
circumstances [5] - 2:25, 27:12, 27:20, 36:10, 40:3
cities [2] - 13:22, 13:23
civil [2] - 22:16, 23:9
claims [1] - 24:15
clear [6] - 14:15, 16:14, 27:9, 28:15, 35:23, 35:24
clearly [2] - 9:24, 14.9
CLERK [1] - 2:1
client [2] - 3:9, 40:10
clock [1] - 6:15
coconspirator [1] - 23:23
codefendant [3] - 4:16, 6:21, 9:12
cofounder [2] - 29:6, 29:8
collar [2] - 25:12, 26:10, 26:12
collecting [1] - 5:2
combination [4] - 9:1, 38:15, 40:2, 40:3
comfortable [1] - 28:20
commit [1] - 9:7
communication [1] - 40:21
communications [1] - 11:7
community [1] - 38:8
companies [3] - 10:15, 10:19
company [8] - 13:20, 16:18, 20:8, 21:19, 29:8, 29:11, 33:16, 34:1
compared [1] - 15:16
compensated [1] - 23:21
completely [1] - 24:7
completion [1] - 23:20
concern [4] - 7:16, 15:25, 16:24, 28:1
concerned [1] - 23:13
concerns [3] - 16:4, 17:9, 18:21
concluded [1] - 41:14
condition [1] - 9:1
conditions [9] - 9:1, 32:12, 36:5, 38:15, 38:16, 39:5, 39:24, 40:1, 40:2
confirm [1] - 5:23
confirmation [2] - 29:4, 30:4
confiscated [1] - 37:24
conflated [1] - 24:12

conflation [1] - 33:25
connection [4] - 17:5, 21:1, 23:7, 31:13
connections [2] - 13:2, 28:25
consider [2] - 8:7, 8:11
consideration [1] - 26:22
considered [2] - 3:1, 9.4
conspiracy [3] - 9:7, 9:9, 34:17
conspired [1] - 31:25
Constantine [63] - 2:2, 2:9, 2:11, 2:17, 3:4, 3:7, 3:12, 5:23, 5:24, 7:23, 8:4, 8:10, 10:11, 11:9, 11:12, 11:13, 11:14, 11:20, 11:24, 12:15, 12:18, 13:6, 14:6, 15:3, 16:6, 16:11, 16:17, 17:7, 19:12, 19:25, 20:9, 20:16, 21:19, 21:24, 22:3, 23:2, 23:4, 23:6, 23:16, 23:21, 24:8, 24:15, 24:22, 25:2, 26:4, 28:25, 29:2, 29:5, 29:21, 30:11, 30:13, 31:7, 31:8, 31:16, 31:22, 31:25, 32:18, 32:19, 33:8, 34:17, 35:14, 36:12, 36:24
CONSTANTINE [1] - 1:6
Constantine's [4] - 16:19, 19:11, 31:1, 36:21
consultant [1] - 34:20
consulting [2] - 31:13, 31:15
contact [1] - 26:9
contacts [2] - 14:3, 14.10
context [1] - 35:7
continuance [1] - 6:22
continue [1] - 6:1
contribution [1] - 30:7
controlled [1] - 32:20
conviction [2] - 10:5, 23:14
copy [1] - 3:13
correct [3] - 7:14, 18:12, 31:2
corroborate [2] - 13:18, 37:1
corroborated [1] - 28:9
counsel [23] - 2:23, 2:24, 5:4, 5:16, 6:19, 7:23, 7:24, 8:18, 18:20, 19:8, 20:9, 21:12, 24:20, 24:25, 26:13, 26:14, 27:23, 28:6, 34:15, 36:3, 40:13, 41:9
counsel's [1] - 28:24
country [2] - 10:2, 37:9
couple [1] - 31:12
course [2] - 21:2, 40:25
COURT [37] - 1:1, 1:9, 2:7, 2:10, 2:17, 3:6, 3:9, 3:12, 3:15, 3:19, 3:22, 3:25, 4:7, 4:10, 5:22, 6:9, 6:13, 7:10, 7:20, 8:2, 11:21, 12:4,

12:16, 18:9, 22:13, 27:2, 28:12, 29:16, 30:24, 32:24, 35:2, 35:19, 36:1, 40:21, 41:1, 41:5, 41:12
**court** [20] - 3:1, 7:5, 7:8, 9:2, 9:3, 16:1, 18:24, 19:14, 26:20, 27:13, 29:18, 36:2, 36:7, 36:19, 38:17, 39:5, 39:17, 40:2, 40:4, 41:8
**Court** [1] - 1:20
**court's** [4] - 16:3, 33:3, 37:17, 37:19
**Courthouse** [1] - 1:5
**cover** [1] - 19:21
**Cowdy** [2] - 22:18, 22:21
**CR-13-607** [1] - 1:4
**created** [2] - 12:11, 12:12, 31:15
**creates** [1] - 38:14
**creating** [1] - 11:25
**credit** [2] - 10:22, 33:16
**criminal** [1] - 10:4
**critical** [1] - 37:18
**culpability** [1] - 11:16
**cut** [1] - 39:15

**D**

**date** [9] - 4:15, 4:18, 4:20, 4:21, 5:12, 5:20, 6:10, 6:14, 40:11
**dated** [1] - 29:1
**Davis's** [1] - 33:6
**days** [1] - 16:17
**de** [4] - 8:8, 8:12, 18:24, 36:2
**deal** [1] - 4:7
**debtor's** [1] - 29:12
**December** [3] - 1:6, 12:23, 27:8
**decide** [2] - 6:2, 6:19
**decides** [1] - 39:11
**decision** [2] - 8:6, 36:8
**Defendant** [2] - 1:7, 1:17
**DEFENDANT** [7] - 3:5, 3:14, 3:18, 3:21, 3:24, 6:8, 8:17
**defendant** [42] - 4:20, 5:19, 6:18, 8:25, 9:3, 9:11, 9:12, 9:23, 9:25, 10:1, 10:4, 11:12, 13:2, 13:8, 13:15, 13:19, 14:21, 14:23, 16:22, 17:12, 17:16, 26:12, 27:8, 27:10, 28:8, 28:10, 30:13, 30:17, 30:18, 36:16, 37:6, 37:8, 37:22, 37:25, 38:5, 38:17, 38:19, 39:9, 39:14, 40:6, 40:14
**defendant's** [7] - 6:16, 7:17, 8:21, 17:25, 27:24, 36:6, 37:1
**defendants** [7] - 4:22, 5:6,

**5**:8, 6:23, 10:20, 11:8, 30:23
**defense** [9] - 5:4, 5:16, 8:18, 17:5, 27:23, 28:6, 28:24, 30:22, 40:13
**defrauded** [3] - 33:18, 33:22, 35:13
**delay** [3] - 5:14, 26:24, 41:4
**Delray** [1] - 19:20
**Demetri** [1] - 2:4
**DEMETRI** [1] - 1:13
**depart** [1] - 22:10
**deposited** [2] - 24:8, 33:10
**deposits** [1] - 24:16
**deprivation** [1] - 40:8
**deprive** [1] - 20:18
**describes** [1] - 11:13
**despite** [5] - 18:20, 19:1, 20:21, 32:8, 38:4
**destination** [1] - 25:11
**detail** [1] - 31:24
**detailed** [1] - 10:7
**detain** [1] - 40:5
**detained** [1] - 40:14
**detention** [5] - 8:16, 8:17, 8:24, 15:15, 40:9
**deter** [1] - 14:25
**determination** [2] - 36:22, 37:18
**determined** [1] - 33:7
**determining** [1] - 39:24
**device** [1] - 39:7
**Devnon** [2] - 26:6, 26:8
**Diamanté** [2] - 21:2, 22:20
**DIANE** [1] - 1:14
**Diane** [1] - 2:5
**died** [2] - 19:24, 22:6
**different** [3] - 10:14, 24:14, 27:14
**difficult** [1] - 37:24
**dime** [1] - 33:23
**directly** [1] - 32:15
**disclosed** [2] - 16:6, 17:19
**discovery** [1] - 4:11, 4:22, 4:25, 5:8, 5:16, 5:17, 6:1, 6:19, 40:7, 40:18, 40:20
**discuss** [3] - 3:16, 4:3, 4:8, 27:15, 40:17
**discussion** [2] - 17:11, 19:7
**disk** [1] - 5:4
**district** [5] - 2:12, 4:17, 7:7, 8:20, 15:17
**District** [5] - 24:20, 26:5, 27:6, 27:11, 38:18
**DISTRICT** [3] - 1:1, 1:1, 1:9
**diversion** [3] - 29:18, 29:19, 37:2
**diverted** [1] - 29:23
**doctor** [1] - 20:5

**document** [2] - 31:11, 34:14
**documented** [1] - 14:4
**documents** [4] - 11:23, 12:1, 12:10, 31:12
**dollars** [6] - 20:3, 20:7, 21:20, 21:23, 22:1, 36:11
**done** [2] - 7:18, 26:23
**double** [1] - 25:5
**Dr** [2] - 20:4, 21:20
**Drive** [1] - 17:13
**drive** [2] - 14:13, 14:17
**driver** [4] - 11:14, 11:15, 35:4, 35:12
**drug** [1] - 10:5
**due** [1] - 31:23
**dunk** [1] - 35:1
**during** [4] - 5:1, 19:8, 23:22, 26:4

**E**

**e-mail** [3] - 11:6, 29:1, 37:1
**early** [2] - 29:6, 32:8
**easily** [3] - 9:12, 19:21, 37:19
**Eastern** [1] - 24:20
**EASTERN** [1] - 1:1
**easy** [3] - 14:21, 15:9, 18:4
**Ed** [1] - 2:9
**EDWARD** [1] - 1:17
**effect** [1] - 25:5
**egregious** [1] - 32:9
**electronic** [1] - 39:6
**Ellen** [3] - 19:20, 28:5, 33:13
**employment** [2] - 14:3, 14:10
**end** [1] - 23:22
**endeavor** [2] - 5:10, 10:16
**ended** [5] - 10:19, 19:7, 30:15, 30:17, 30:18
**ends** [1] - 6:21
**enormous** [2] - 38:14, 39:11
**enormously** [1] - 39:1
**enter** [3] - 5:14, 14:19, 21:6
**entered** [2] - 3:25, 8:24
**entire** [4] - 3:20, 22:4, 32:6, 36:14
**entirely** [1] - 24:12
**entities** [1] - 32:13
**entity** [1] - 32:5
**epileptic** [2] - 19:17, 25:8
**escrow** [10] - 24:4, 24:5, 24:11, 24:13, 29:20, 30:15, 33:4, 33:7, 33:9
**especially** [1] - 18:5
**ESQ** [2] - 1:12, 1:17
**essentially** [1] - 38:6
**establish** [1] - 19:23
**estate** [4] - 17:6, 18:23, 20:7, 26:23
**et** [1] - 30:9
**Euphora** [5] - 11:11, 30:2,

30:15, 30:18, 33:15
**event** [2] - 8:12, 21:16
**evidence** [12] - 10:6, 10:8, 11:19, 11:25, 12:17, 13:8, 13:11, 23:12, 23:24, 31:5, 36:5, 36:18
**exaggerate** [1] - 24:24
**exaggerated** [1] - 22:24
**exaggeration** [4] - 18:17, 20:24, 21:8, 22:3
**example** [4] - 15:19, 15:24, 17:8, 30:1
**examples** [2] - 12:14, 15:23
**excludable** [1] - 5:14
**exclude** [2] - 6:5, 6:17
**excluded** [1] - 6:13
**exclusion** [1] - 5:21
**expect** [1] - 34:11
**expected** [1] - 19:4
**expenses** [1] - 24:16
**experience** [1] - 26:11
**explain** [2] - 38:20, 39:2
**explained** [1] - 19:8
**exposing** [1] - 25:9
**exposure** [4] - 21:23, 24:24, 25:6, 25:10
**extended** [1] - 26:8
**extensive** [1] - 33:12
**extent** [2] - 5:5, 38:25
**extradition** [1] - 22:12
**extremely** [1] - 36:11

**F**

**face** [1] - 38:24
**faced** [1] - 38:12
**faces** [2] - 9:6, 25:4
**facing** [2] - 9:25, 36:16
**fact** [10] - 14:6, 14:12, 21:4, 29:19, 31:15, 32:16, 33:16, 38:17, 38:19, 38:21
**factor** [1] - 37:5
**factors** [5] - 9:4, 11:21, 12:16, 36:9, 40:3
**Falcon** [11] - 13:25, 15:21, 19:5, 21:10, 21:13, 21:14, 29:1, 29:10, 33:25, 34:3
**familiar** [1] - 20:24
**family** [5] - 13:6, 13:9, 13:11, 25:25, 37:14
**far** [4] - 14:13, 22:3, 23:13, 34:6
**Fax** [1] - 1:21
**FCRR** [1] - 1:20
**Federal** [1] - 1:21
**Ferguson** [7] - 19:20, 19:23, 20:1, 20:17, 25:8, 28:5, 33:13
**few** [5] - 13:22, 15:23, 17:24, 28:17

fictitious [3] - 11:23, 11:25, 12:11
fight [1] - 30:9
filed [5] - 2:22, 7:3, 8:16, 8:17, 8:19
filings [1] - 29:9
finally [3] - 24:19, 26:2, 28:24
finance [1] - 23:20
financial [6] - 4:25, 10:8, 10:9, 10:16, 11:1, 36:25
financing [3] - 23:19, 34:19, 34:23
fine [1] - 5:20
first [8] - 4:1, 4:10, 8:9, 22:24, 25:23, 33:13, 35:25, 36:9
five [2] - 25:4, 25:6
fix [1] - 35:25
flee [17] - 10:1, 18:5, 19:18, 20:22, 25:2, 25:5, 25:10, 26:16, 26:17, 37:9, 37:20, 38:21, 38:22, 38:25, 39:9, 39:17, 39:18
fleeing [1] - 20:19
flight [7] - 8:25, 9:5, 11:20, 18:4, 21:15, 25:4, 38:14
flights [1] - 13:22
Florida [2] - 19:20, 28:7
flow [1] - 10:11
flowed [1] - 32:19
follow [2] - 16:1, 16:2
foreclosed [2] - 16:7, 17:1
foreclosure [3] - 10:22, 16:13, 17:8
forensic [1] - 33:6
forged [4] - 11:22, 12:13, 31:11, 34:13
forgery [2] - 34:10, 34:12
forging [1] - 11:25
form [1] - 32:16
forward [2] - 4:8, 23:18
forwarding [1] - 29:3
founder [2] - 13:20, 14:8
four [1] - 21:3
fraction [1] - 30:25
frankly [1] - 22:18
fraud [17] - 9:8, 9:21, 10:13, 24:22, 24:23, 31:23, 32:23, 34:16, 36:12, 36:14, 36:17, 36:22, 36:24, 37:2, 38:21, 39:3
friend [3] - 16:19, 19:24, 39:21
friends [1] - 26:1
front [1] - 34:14
full [3] - 8:11, 30:2, 32:8
fund [15] - 10:23, 13:13, 16:15, 17:4, 24:1, 24:2, 24:5, 24:10, 24:11, 24:13,

fictitious [3] - 11:23, 11:25, 12:11
funded [1] - 34:7
funds [6] - 17:3, 24:10, 24:14, 30:6, 31:17, 33:10
future [1] - 9:3

**G**

Gardina [3] - 23:17, 31:6, 34:21
gathering [1] - 4:23
get-away [4] - 11:14, 11:15, 35:4, 35:11
get-go [1] - 8:23
girlfriend [2] - 17:16, 38:9
girlfriend's [1] - 17:20
given [2] - 25:13, 40:2
global [6] - 16:15, 17:3, 24:1, 24:5, 24:10, 24:11, 33:4, 33:9
golf [2] - 21:2, 35:14
Gonchar [1] - 33:5
government [37] - 2:5, 4:10, 4:19, 4:21, 5:15, 6:2, 8:9, 8:17, 9:22, 13:4, 13:5, 15:24, 16:9, 17:25, 23:17, 24:15, 24:21, 27:21, 33:2, 33:25, 36:4, 36:13, 36:19, 36:25, 37:13, 38:5, 38:13, 38:19, 38:20, 39:2, 39:8, 39:13, 39:18, 40:11, 40:15, 40:22, 41:3
Government [1] - 1:12
government's [5] - 7:15, 23:12, 26:21, 31:14, 31:21
GPS [1] - 39:6
grand [1] - 36:22
grant [1] - 6:9
granting [1] - 6:21
greater [1] - 18:6
Greece [14] - 13:1, 13:3, 13:7, 13:10, 13:12, 13:17, 15:11, 22:2, 22:5, 22:7, 22:11, 37:11, 37:15
Greek [4] - 13:8, 22:5
gross [3] - 18:17, 20:24, 21:8
grossest [1] - 22:3
grossly [2] - 22:24, 24:23
grounded [1] - 21:14
grounds [1] - 8:22
GSF [4] - 30:3, 30:6, 30:7, 30:20
guess [3] - 21:3, 40:17, 40:18
guideline [1] - 9:21
guilty [4] - 3:22, 3:23, 3:24, 3:25
guy [1] - 35:11

**H**

half [3] - 9:13, 25:1, 31:2
handling [1] - 24:4
happy [1] - 20:2
Hawaii [15] - 12:10, 23:1, 23:13, 23:20, 23:22, 23:23, 31:5, 31:7, 31:9, 31:13, 31:18, 31:22, 34:15, 34:16
head [2] - 30:14, 39:11
hear [1] - 4:1
heard [5] - 5:24, 8:5, 8:10, 31:1, 35:25
hearing [5] - 8:7, 8:11, 15:15, 18:25, 19:8
hearings [1] - 17:11
helicopter [2] - 14:7, 14:11
help [1] - 30:8
helped [1] - 21:19
highly [2] - 20:4, 26:10
himself [8] - 11:13, 14:7, 14:11, 21:25, 25:10, 26:15, 29:7, 35:5
history [2] - 10:4, 37:5
hockey [13] - 22:17, 22:21, 23:3, 23:6, 23:8, 23:11, 24:2, 24:18, 30:21, 33:5, 34:18, 35:13, 35:17
hold [1] - 28:14
holding [2] - 10:15, 32:7
home [14] - 13:14, 14:22, 16:6, 16:10, 17:7, 17:12, 17:14, 17:15, 19:15, 19:21, 20:2, 27:23, 28:6, 33:17
homeless [1] - 19:18
homes [2] - 10:21, 16:25
Honor [39] - 2:8, 2:14, 3:8, 3:11, 3:18, 4:4, 4:14, 4:17, 5:9, 5:13, 5:20, 6:8, 6:25, 7:2, 7:14, 8:14, 8:17, 12:2, 12:8, 12:17, 15:12, 18:1, 18:18, 19:11, 22:23, 25:16, 25:20, 26:2, 26:11, 26:19, 27:13, 28:15, 29:25, 30:5, 31:3, 34:11, 34:24, 40:16, 41:10
Honor's [2] - 26:11, 31:12
HONORABLE [1] - 1:9
hopefully [1] - 5:3
hours [1] - 14:23
house [4] - 18:13, 19:12, 35:20, 39:23

**I**

II [1] - 10:5
Illinois [1] - 10:6
imagination [1] - 33:19
immigration [2] - 14:18, 14:20

importantly [3] - 14:12, 25:7, 25:20
impose [1] - 39:6
impossible [1] - 21:5
includes [1] - 10:8
including [3] - 5:6, 12:19, 15:11
income [2] - 15:18, 15:22
inconceivable [1] - 25:24
inconsistencies [3] - 15:18, 16:4, 17:9
increase [2] - 18:19, 20:11
indicate [1] - 12:21
indicates [1] - 27:25
indication [1] - 15:3
indicted [1] - 38:23
indictment [12] - 3:10, 3:13, 3:20, 9:10, 9:18, 10:7, 22:19, 27:16, 35:15, 35:16, 39:4
indirectly [1] - 32:15
individual [3] - 27:17, 28:5, 30:14
individuals [1] - 38:3
industry [3] - 13:20, 14:4, 37:16
information [1] - 33:1
informed [1] - 2:15
initial [1] - 2.12
insane [1] - 25:5
insisted [1] - 32:7
instances [2] - 12:9, 30:12
instructions [1] - 16:2
insufficient [2] - 23:13, 39:25
interest [3] - 28:16, 29:12, 29:14
interests [1] - 6:22
international [2] - 12:19, 37:10
internet [1] - 14:5
invest [1] - 34:22
invested [7] - 10:18, 11:4, 11:10, 16:15, 30:7, 30:22, 34:23
investigation [8] - 5:1, 16:10, 26:13, 27:6, 28:7, 28:19, 32:17, 38:18
investing [2] - 10:18, 30:1
investment [7] - 23:7, 28:13, 30:14, 31:7, 33:15, 37:4, 37:8
investments [6] - 12:10, 17:5, 17:6, 31:6, 31:9, 31.18
investor [3] - 23:18, 33:16, 33:18
investors [4] - 10:18, 24:17, 34:3, 34:21
involve [1] - 11:24

**involved** [4] - 23:8, 32:13, 34:17, 36:24
**involvement** [7] - 23:6, 23:12, 34:19, 37:2, 38:20, 39:2, 39:3
**involving** [3] - 21:2, 24:22, 36:11
**Islip** [2] - 1:5, 1:21
**issue** [11] - 4:3, 7:1, 7:13, 8:2, 8:16, 16:1, 31:19, 36:2, 37:16, 40:16, 41:5
**issued** [2] - 8:5, 39:7
**issues** [1] - 27:22
**item** [1] - 19:3
**items** [1] - 29:22

## J

**jail** [4] - 10:3, 27:19, 36:16, 38:12
**James** [2] - 23:17, 34:21
**January** [8] - 4:16, 5:12, 5:14, 5:25, 6:5, 6:11, 6:17, 29:2
**jeopardize** [1] - 21:23
**Jet** [6] - 13:20, 14:8, 20:8, 28:25, 29:3, 29:6
**Jets** [1] - 21:18
**jets** [3] - 21:24, 34:2
**JFB** [1] - 1:4
**job** [1] - 38:7
**John** [1] - 9:17
**Jones** [1] - 2:4
**JONES** [1] - 1:13
**JOSEPH** [1] - 1:9
**Jowdy** [5] - 30:9, 35:6, 35:12, 35:13, 35:16
**judge** [1] - 14:24
**JUDGE** [1] - 1:9
**judge's** [2] - 8:6, 16:2
**jump** [1] - 14:22
**juncture** [1] - 39:1
**June** [3] - 12:20, 16:16, 16:19
**jury** [1] - 36:22
**justice** [1] - 6:21
**justify** [1] - 31:16

## K

**keep** [1] - 40:21
**Kehey** [1] - 19:12
**Ken** [3] - 22:18, 30:9, 35:6
**Kenner** [20] - 4:16, 6:11, 9:12, 10:10, 11:8, 11:12, 12:1, 23:2, 23:10, 23:21, 30:10, 31:25, 32:5, 32:7, 32:14, 32:20, 35:4, 35:8, 35:9
**Kenner's** [2] - 11:14, 34:19

**kind** [1] - 14:6, 23:14
**kinds** [1] - 10:23
**Kip** [1] - 20:4
**knowledge** [1] - 34:18
**known** [2] - 10:25, 22:20
**knows** [8] - 7:16, 13:9, 14:11, 19:8, 23:17, 25:2, 26:11, 26:12

## L

**lack** [1] - 39:2
**language** [1] - 13:9
**large** [3] - 10:17, 31:8, 31:21
**Lassiter** [5] - 20:4, 20:8, 20:10, 20:18, 21:20
**last** [8] - 4:4, 13:12, 15:22, 18:18, 26:3, 26:7, 27:5, 29:6
**late** [1] - 15:4
**launder** [1] - 9:9
**lawyer** [1] - 5:24, 24:3
**lawyers** [2] - 4:1, 8:5
**lease** [2] - 18:14, 18:16
**least** [9] - 9:11, 9:13, 12:23, 29:25, 30:13, 31:2, 37:3, 39:17
**leave** [7] - 10:1, 14:15, 37:9, 37:20, 37:22, 37:25, 39:11
**legal** [3] - 17:5, 30:9, 30:22
**Lehman** [3] - 23:19, 32:4, 32:12
**Leonardo** [1] - 2:5
**LEONARDO** [1] - 1:14
**less** [2] - 24:25, 29:13
**letter** [3] - 8:17, 8:21, 11:22, 24:19
**leukemia** [1] - 19:24
**liability** [1] - 22:1
**liable** [1] - 35:9
**liberty** [1] - 40:8
**lied** [1] - 23:10
**lien** [5] - 28:2, 28:3, 28:4, 29:14, 35:19
**liens** [1] - 28:1
**life** [1] - 22:4
**lifestyle** [1] - 10:23
**limit** [1] - 15:3
**listed** [3] - 9:17, 28:6, 29:11
**litigation** [2] - 22:16, 24:4
**littered** [1] - 38:3
**LITTLE** [17] - 1:17, 2:8, 3:8, 3:11, 4:4, 4:9, 5:20, 7:14, 18:11, 22:15, 25:20, 32:25, 35:5, 35:21, 40:25, 41:3, 41:11
**lived** [1] - 23:16
**lives** [6] - 14:13, 17:15, 19:14, 19:17, 19:20, 28:20
**living** [3] - 17:16, 17:22,

18:16
**LLC** [2] - 29:6, 29:11
**loan** [8] - 31:6, 31:20, 31:23, 32:1, 32:2, 32:6, 32:8, 32:22
**locational** [1] - 39:7
**Lombardi** [1] - 1:20
**look** [1] - 35:22
**looking** [4] - 18:5, 18:6, 27:18, 30:3
**LORETTA** [1] - 1:12
**Los** [3] - 9:19, 11:5, 30:24
**loss** [3] - 9:10, 9:13, 9:14, 22:25, 30:20
**lost** [2] - 22:21, 35:17
**LYNCH** [1] - 1:12

## M

**magistrate** [2] - 8:6, 14:24
**magnified** [1] - 38:25
**mail** [3] - 11:6, 29:1, 37:1
**malefactor** [1] - 35:10
**man** [2] - 23:16
**manage** [1] - 34:4
**management** [2] - 29:11, 34:1
**March** [5] - 12:19, 12:22, 16:12, 16:13, 25:24
**married** [1] - 38:7
**marshals** [1] - 2:15
**material** [1] - 4:23
**matter** [2] - 14:23, 41:14
**mean** [1] - 38:22
**means** [2] - 9:20, 38:1
**mechanical** [1] - 1:24
**mechanics** [1] - 28:4
**meeting** [2] - 27:7, 27:15
**meetings** [2] - 26:5, 27:10
**members** [1] - 13:9
**membership** [1] - 29:3
**mention** [1] - 26:2
**mentioned** [2] - 31:11, 31:20
**message** [1] - 11:6
**messages** [1] - 11:9
**met** [6] - 4:4, 18:18, 23:2, 23:4, 27:10, 36:4
**Mexican** [1] - 14:14, 22:20, 35:14
**Mexico** [16] - 12:21, 12:23, 12:25, 14:16, 14:22, 15:1, 15:5, 15:10, 20:21, 20:22, 20:25, 21:6, 35:18, 37:9, 37:11, 37:25
**might** [1] - 33:20
**million** [34] - 9:11, 9:14, 20:3, 20:6, 20:12, 20:19, 21:20, 21:23, 21:25, 22:25, 23:15, 23:18, 24:23, 25:10,

25:14, 26:20, 28:8, 28:11, 28:13, 28:17, 28:21, 28:23, 30:25, 31:20, 32:9, 32:10, 32:22, 33:12, 33:14, 33:20, 34:22, 36:13, 36:14
**millions** [1] - 36:11
**minor** [3] - 18:11, 18:21, 19:1
**moment** [2] - 12:2, 25:16
**money** [33] - 9:9, 10:9, 10:10, 10:11, 10:16, 10:17, 11:4, 11:5, 11:10, 22:21, 23:3, 23:11, 23:16, 24:2, 24:4, 24:8, 24:14, 24:18, 28:13, 28:16, 29:19, 29:21, 29:23, 30:6, 30:12, 31:9, 31:21, 32:20, 33:3, 33:8, 34:20, 35:17, 37:3
**moneys** [5] - 10:23, 11:3, 30:21, 32:15, 32:18
**monies** [1] - 30:8
**monitoring** [1] - 39:6
**month** [4] - 15:20, 19:3, 19:4, 34:21
**months** [2] - 9:23, 25:22
**moral** [2] - 38:11, 39:20
**mortgage** [2] - 10:21, 29:21
**most** [2] - 25:20, 35:17
**mostly** [1] - 5:3
**mother** [13] - 13:12, 17:15, 19:11, 19:23, 19:25, 20:1, 20:16, 20:17, 25:8, 25:9, 27:24, 38:8, 39:20
**mother's** [5] - 17:23, 18:13, 18:15, 35:20, 39:23
**motion** [1] - 8:19
**move** [3] - 13:7, 26:25, 37:15
**moved** [1] - 30:16
**moving** [2] - 12:16, 18:15
**MR** [16] - 2:8, 3:8, 3:11, 4:4, 4:9, 5:20, 7:14, 18:11, 22:15, 25:20, 32:25, 35:5, 35:21, 40:25, 41:3, 41:11
**MS** [14] - 2:4, 2:14, 4:14, 6:25, 8:14, 12:2, 12:8, 12:17, 27:4, 28:15, 29:25, 31:3, 40:16, 41:10
**multiple** [2] - 10:14, 27:9
**myth** [2] - 20:21, 37:21

## N

**named** [3] - 22:18, 22:19, 23:16
**names** [1] - 10:15
**narcotics** [1] - 10:5
**nature** [2] - 36:10, 36:17
**necessarily** [2] - 14:16, 38:22
**necessary** [2] - 13:7, 20:14
**need** [2] - 26:21, 40:18

needing [1] - 29:13
needs [2] - 10:20, 26:22
new [2] - 8:7, 34:21
NEW [1] - 1:1
New [4] - 1:5, 1:15, 1:21, 26:6
news [1] - 14:7
next [3] - 4:20, 37:5, 41:9
none [1] - 21:12
North [3] - 16:11, 16:20, 17:12
note [1] - 39:20
noted [2] - 27:13, 39:7
nothing [1] - 35:15
notice [1] - 7:3
noticed [1] - 7:3
November [3] - 8:16, 8:18, 27:14
novo [4] - 8:8, 8:12, 18:24, 36:2
number [6] - 9:19, 9:21, 15:17, 29:2, 34:14, 36:20
numbered [1] - 5:3
nutshell [1] - 31:24

## O

o'clock [1] - 6:12
obtain [1] - 20:13
obviously [12] - 7:17, 7:22, 18:23, 20:13, 26:21, 27:12, 35:24, 36:10, 36:22, 38:8, 40:6, 41:7
occurred [1] - 34:17
OF [3] - 1:1, 1:3, 1:8
offense [3] - 36:10, 36:11, 36:15
offered [1] - 17:14
offers [1] - 13:21
Office [2] - 26:6, 27:15
officer [2] - 15:2, 41:7
Official [1] - 1:20
once [7] - 15:7, 19:4, 21:4, 21:9, 22:6, 27:16, 38:22
One [1] - 1:14
one [18] - 6:15, 9:5, 12:13, 13:6, 13:14, 16:25, 17:8, 22:19, 24:12, 27:7, 27:23, 29:25, 30:13, 32:12, 32:13, 35:13, 35:15, 39:10
opportunity [1] - 26:16
opposed [1] - 39:1
order [5] - 5:14, 6:18, 8:19, 8:24, 14:15
ordered [2] - 4:19, 14:24
orders [1] - 16:3
organize [1] - 21:19
original [1] - 19:13
ought [1] - 41:3
outlined [1] - 30:23

outside [1] - 15:3
outweigh [1] - 6:22
owe [2] - 28:10, 33:14
owes [5] - 28:8, 28:17, 28:21, 28:23, 33:13
own [8] - 10:21, 14:5, 15:15, 20:2, 21:21, 25:8, 26:11, 34:1
owned [2] - 16:20, 34:2
owner [2] - 20:8, 23:4, 33:24
owners [2] - 21:9, 21:16
owns [3] - 14:1, 21:10, 29:12

## P

p.m [2] - 1:7, 4:16
package [9] - 4:6, 14:25, 18:19, 19:10, 20:12, 20:15, 26:20, 39:19, 39:25
page [2] - 16:5, 17:17
paid [1] - 34:20
papers [1] - 19:23
paperwork [1] - 20:14
paragraphs [1] - 24:19
parents [1] - 22:5
part [6] - 13:13, 14:24, 23:18, 31:23, 32:23, 34:16
particular [2] - 39:24, 40:4
particularly [1] - 12:9
partner [3] - 18:14, 20:18, 25:22
Partners [5] - 14:1, 15:21, 21:10, 29:1, 33:25, 34:3
partners [3] - 19:5, 25:9, 29:10
partnership [2] - 21:10, 34:2
passport [6] - 20:21, 20:23, 21:5, 37:23, 38:2
passports [1] - 38:4
past [1] - 26:4
Paul [1] - 1:20
pause [3] - 12:5, 17:25, 25:17
pay [3] - 32:1, 32:8, 32:16
paying [2] - 10:20, 32:6
payments [1] - 10:21
penalty [6] - 32:2, 32:6, 32:9, 32:10, 32:15, 32:17
pending [1] - 40:6
people [2] - 15:6, 33:21
per [1] - 6:15
percent [3] - 29:12, 29:14, 34:1
perception [1] - 11:17
permanent [1] - 8:24
permit [1] - 21:17
perpetrate [1] - 9:21
person [2] - 22:18, 34:13
personal [6] - 10:20, 19:22, 24:9, 24:16, 25:21, 29:10,

29:22, 30:19
pertain [2] - 30:6, 30:21
petition [3] - 15:17, 15:21, 16:22
Ph [1] - 1:21
Phillip [1] - 4:16
Phoenix [3] - 13:21, 20:6
picture [1] - 23:19
Pierrepont [1] - 1:14
pilot [2] - 14:7, 14:11
Place [2] - 16:11, 16:20
place [2] - 8:15, 20:22
plan [1] - 15:2
player [1] - 33:5
players [8] - 22:17, 23:7, 23:8, 24:2, 30:7, 30:10, 30:22, 35:14
players' [5] - 22:21, 23:3, 23:11, 24:18, 34:18, 35:17
Plaza [2] - 1:14, 1:21
plea [2] - 3:25, 5:18
plead [1] - 3:22
pledge [3] - 19:21, 20:2, 20:6
pledged [1] - 19:12
pledging [1] - 21:20
point [11] - 11:19, 13:2, 13:6, 14:18, 15:5, 27:5, 28:8, 34:16, 34:24, 38:6, 38:22
pointed [1] - 39:9
points [2] - 18:21, 19:1
portion [2] - 10:17, 37:3
poses [3] - 8:25, 11:20, 18:4
position [5] - 8:23, 22:13, 31:4, 31:14, 31:21
possible [1] - 5:11
post [3] - 28:6, 33:17, 39:22
postings [1] - 14:5
potential [4] - 9:6, 10:2, 18:6, 25:6
pregnant [2] - 25:23, 38:9
prepare [1] - 40:13
prepared [1] - 3:9
prepayment [5] - 32:2, 32:6, 32:10, 32:15, 32:17
preponderance [1] - 36:5
preregistration [1] - 29:4
presence [3] - 6:16, 38:16, 40:2
present [4] - 2:11, 8:4, 8:11, 27:8
presentations [1] - 26:15
presented [2] - 2:22, 40:4
pretrial [15] - 13:25, 15:2, 15:13, 15:14, 15:19, 16:5, 16:24, 17:9, 17:10, 17:18, 17:19, 18:20, 19:1, 25:15, 40:9
prevent [2] - 15:1, 15:5
previously [1] - 6:11

primarily [2] - 17:4, 18:1
primary [3] - 19:15, 21:21, 33:16
private [2] - 13:21, 14:10
probable [1] - 36:23
proceed [5] - 4:2, 4:12, 6:2, 6:20, 8:2
proceeding [1] - 4:8
Proceedings [1] - 1:24
proceedings [2] - 12:6, 25:18
process [3] - 4:23, 5:2, 5:17
produce [5] - 4:22, 5:10, 41:3, 41:8
produced [1] - 1:25
production [2] - 4:24, 5:11
proffer [2] - 26:8, 26:9
proffered [4] - 36:19, 36:25, 37:13, 38:13
proffers [1] - 26:14
project [8] - 23:1, 23:3, 23:20, 23:22, 23:23, 31:14, 31:23
prominent [1] - 20:10
prong [1] - 23:5
proof [1] - 36:4
proper [1] - 40:13
properly [1] - 33:4
properties [4] - 10:21, 13:15, 20:14, 27:22
property [12] - 10:19, 13:12, 16:13, 16:14, 16:20, 21:17, 27:25, 28:1, 28:2, 28:4, 29:10, 39:22
propose [1] - 4:19
proposed [1] - 5:18
proposes [1] - 13:15
proposing [2] - 19:11, 20:15
prosecuted [1] - 25:3
prosecution [1] - 10:1
provide [2] - 5:16, 39:16
provided [1] - 8:18
providing [2] - 4:11, 40:18
public [2] - 3:19, 6:23
purchase [2] - 13:14, 17:7
purchased [1] - 16:12
purported [1] - 23:4
purportedly [1] - 31:7
purpose [1] - 3:8
purposes [13] - 3:16, 5:15, 5:21, 7:4, 7:8, 7:12, 7:21, 10:24, 17:14, 30:23, 36:20, 37:7, 37:18
put [8] - 4:5, 5:18, 23:2, 23:11, 23:18, 24:2, 24:5, 32:13

## Q

questions [2] - 27:16, 29:16

**quickly** [2] - 26:25, 40:12
**quite** [5] - 5:9, 10:16, 13:1, 28:17, 33:2

# R

**raised** [4] - 7:2, 22:4, 23:16, 27:5
**ran** [1] - 22:19
**range** [1] - 9:22
**rate** [2] - 7:16, 34:20
**read** [1] - 35:7
**reading** [1] - 3:20
**ready** [2] - 40:10, 40:12
**real** [7] - 17:5, 18:23, 20:7, 26:23, 34:22, 35:10, 35:11
**really** [2] - 28:22, 33:24
**reason** [4] - 9:25, 22:21, 23:21, 25:12
**reasonably** [4] - 9:2, 36:6, 38:16, 40:1
**reasons** [6] - 5:13, 18:3, 26:19, 36:8, 40:5, 40:14
**receive** [3] - 6:1, 32:14, 32:21
**received** [4] - 2:18, 3:12, 27:24, 31:22
**receiving** [2] - 31:8, 31:17
**recent** [1] - 12:18
**recently** [1] - 26:7
**recipients** [1] - 29:3
**recognizance** [1] - 19:22
**recognize** [1] - 26:24
**recommended** [2] - 18:22, 19:2
**record** [4] - 2:3, 8:15, 19:13, 27:9
**recorded** [1] - 1:24
**recording** [2] - 11:11, 11:12
**records** [9] - 5:1, 10:8, 10:9, 10:16, 11:1, 12:21, 12:24, 14:14, 36:25
**recruited** [1] - 30:13
**reference** [2] - 22:2, 23:15
**referring** [2] - 16:14, 37:22
**refers** [1] - 35:3
**regarding** [2] - 11:9, 35:3
**reiterate** [1] - 39:8
**relate** [1] - 12:1
**related** [1] - 12:9
**relationship** [1] - 17:2
**release** [4] - 8:19, 8:21, 14:25, 18:22
**released** [3] - 3:1, 19:2, 24:15
**relieved** [4] - 21:9, 21:11, 34:4, 41:9
**remain** [1] - 38:11
**remains** [1] - 8:23
**remember** [1] - 17:1

**remove** [1] - 15:8
**render** [1] - 19:18
**renovation** [1] - 21:15
**repairs** [1] - 29:13
**repeated** [1] - 26:5
**report** [6] - 13:25, 15:14, 15:19, 16:5, 17:10, 17:18
**reported** [3] - 15:22, 16:23, 17:12
**Reporter** [1] - 1:20
**reporting** [1] - 25:15
**reports** [2] - 15:20, 16:25
**represent** [1] - 3:7
**representations** [2] - 11:3, 17:25
**represented** [2] - 26:3, 30:10
**representing** [1] - 29:7
**request** [3] - 2:23, 7:24, 13:16
**research** [1] - 16:10
**resided** [1] - 17:20
**residence** [3] - 16:8, 18:14, 39:12
**resolved** [1] - 41:6
**Resort** [1] - 21:2
**resort** [3] - 22:20, 35:14, 35:18
**respect** [12] - 4:2, 4:12, 6:3, 6:20, 16:2, 21:18, 23:12, 33:12, 36:18, 39:3, 39:5, 39:19
**respected** [1] - 20:5
**respond** [5] - 27:3, 32:25, 33:2, 34:15, 39:13
**response** [3] - 29:17, 29:24, 31:11
**responsibilities** [2] - 21:11, 34:5
**responsible** [3] - 9:13, 31:2, 36:13
**result** [2] - 26:25, 35:18
**retain** [1] - 2:23
**retained** [4] - 3:6, 7:11, 7:12, 26:13
**return** [1] - 15:25
**reveals** [1] - 32:17
**review** [5] - 3:16, 6:2, 6:19, 8:12, 33:6
**reviewed** [1] - 36:2
**reviewing** [1] - 5:17
**revoked** [1] - 8:21
**Richards** [4] - 24:3, 30:15, 33:7
**ridiculous** [1] - 22:10
**rights** [1] - 2:18
**risk** [5] - 8:25, 9:5, 11:20, 18:4, 38:14
**RMR** [1] - 1:20
**robber** [2] - 11:14, 35:11

**role** [2] - 11:17, 36:21
**rolling** [1] - 4:24
**Ron** [5] - 24:2, 24:3, 30:15, 33:6, 33:7
**Rule** [1] - 2:18
**rules** [1] - 16:2
**running** [1] - 19:5

# S

**safe** [1] - 20:21
**Sara** [1] - 25:22
**satisfaction** [1] - 33:8
**saw** [1] - 11:22
**scanned** [1] - 5:3
**schedule** [3] - 29:10, 40:11, 40:12
**scheduled** [1] - 6:11
**scheduling** [1] - 4:12
**scheme** [2] - 11:17, 28:22
**scope** [1] - 36:14
**Scottsdale** [10] - 13:14, 13:21, 14:1, 14:13, 14:22, 16:11, 16:21, 17:13, 17:18, 27:24
**Scottsdale-Phoenix** [1] - 13:21
**search** [2] - 27:25, 35:23
**second** [5] - 17:17, 20:17, 25:9, 26:9, 28:5
**secure** [5] - 20:7, 20:14, 21:21, 26:21, 26:23
**secured** [1] - 18:23
**securing** [1] - 26:23
**security** [2] - 25:14, 35:25
**see** [2] - 16:3, 34:9
**seized** [1] - 21:13
**self** [1] - 16:6
**self-disclosed** [1] - 16:6
**sense** [2] - 22:11, 26:18
**sent** [1] - 30:2
**sentence** [3] - 9:6, 18:5, 18:6
**separate** [4] - 24:7, 24:12, 24:22, 29:20
**Sergei** [1] - 33:5
**serious** [5] - 8:25, 9:7, 9:25, 36:11, 36:15
**served** [1] - 6:21
**services** [13] - 13:25, 15:2, 15:13, 15:14, 15:19, 16:5, 16:25, 17:9, 17:10, 17:18, 17:20, 18:20, 19:2
**set** [1] - 4:18
**Set** [7] - 13:20, 14:8, 20:8, 21:18, 28:25, 29:3, 29:6
**settlement** [6] - 16:15, 17:4, 24:1, 24:5, 24:10, 24:11, 33:4, 33:10
**several** [3] - 9:15, 11:2, 36:14

**severe** [1] - 19:16
**shareholder** [1] - 21:22
**shell** [1] - 10:15
**shocked** [1] - 23:10
**show** [1] - 10:17
**showing** [1] - 21:24
**shows** [1] - 33:17
**siblings** [1] - 38:9
**sign** [1] - 20:2
**signature** [3] - 12:13, 29:5, 34:13
**signatures** [2] - 11:22, 11:25
**signed** [1] - 34:14
**significant** [1] - 9:24
**signing** [1] - 6:4
**simply** [1] - 14:4
**site** [1] - 14:6
**six** [2] - 21:15, 25:22
**six-year** [1] - 21:15
**slam** [1] - 35:1
**so-called** [6] - 24:1, 25:10, 33:12, 34:10, 34:12, 34:16
**sold** [1] - 13:12
**son** [1] - 25:23
**soon** [2] - 5:11, 40:10
**sophisticated** [2] - 9:20, 10:13
**sources** [1] - 33:11
**Southern** [4] - 26:5, 27:6, 27:11, 38:18
**speaking** [1] - 10:7
**speaks** [4] - 13:8, 18:3, 22:4
**speedier** [1] - 6:23
**speedy** [2] - 5:21, 6:15
**Speedy** [1] - 6:5
**spending** [1] - 10:2
**stakes** [1] - 38:23
**start** [3] - 10:19, 39:11, 40:19
**start-up** [1] - 10:19
**started** [1] - 4:22
**state** [3] - 2:3, 29:14, 36:8
**statement** [3] - 3:2, 22:14
**statements** [4] - 5:5, 15:13, 15:16, 28:24
**STATES** [4] - 1:1, 1:3, 1:9, 1:12
**States** [10] - 1:5, 14:16, 14:19, 22:12, 37:10, 37:20, 37:23, 37:25, 38:2, 38:12
**status** [1] - 40:22
**stay** [4] - 8:5, 8:19, 39:7, 40:19
**stayed** [1] - 18:24
**stenography** [1] - 1:24
**still** [5] - 19:2, 29:7, 31:3, 34:15, 36:15
**stopped** [2] - 14:17, 22:7
**stranger** [1] - 12:25
**Street** [2] - 17:18, 17:23

strict [1] - 25:15
strictly [1] - 30:6
strong [2] - 10:6, 38:13
strongest [1] - 25:21
suasion [2] - 38:11, 39:20
subjected [1] - 19:7
subjecting [1] - 21:25
submissions [1] - 36:3
submit [1] - 20:15
submitted [2] - 5:7, 24:20
substantial [6] - 4:5, 12:18, 36:16, 37:10, 38:12, 40:7
substantially [1] - 18:19
substantive [2] - 9:8, 25:3
successful [1] - 20:5
Sue [3] - 19:20, 28:5, 33:13
sufficient [5] - 3:15, 9:2, 14:25, 38:11, 39:16
suggest [4] - 20:24, 22:10, 23:22, 35:8
suggested [3] - 20:9, 29:18, 30:25
suggesting [1] - 33:18
suggestion [1] - 33:24
Suite [1] - 1:21
summary [1] - 11:18
sums [1] - 18:1
support [1] - 21:25
supposed [6] - 15:4, 17:4, 30:8, 31:17, 32:21
supposedly [2] - 33:13, 34:13
sureties [1] - 19:19
surprising [1] - 22:18
surrendered [3] - 20:20, 20:23, 38:5
surrogate [1] - 20:1
surveillance [1] - 17:21
survive [1] - 13:10
suspect [1] - 16:9

**T**

tail [1] - 23:22
talks [1] - 24:25
ten [4] - 10:2, 18:7, 25:7, 27:18
terms [13] - 4:1, 4:11, 8:15, 15:12, 15:25, 30:5, 31:10, 37:5, 38:8, 39:6, 39:22, 40:17, 40:22
testify [3] - 11:2, 36:21, 37:14
testimony [2] - 5:7, 15:14
text [3] - 11:6, 11:9, 37:1
THE [44] - 1:9, 2:1, 2:7, 2:10, 2:17, 3:5, 3:6, 3:9, 3:12, 3:14, 3:15, 3:18, 3:19, 3:21, 3:22, 3:24, 3:25, 4:7, 4:10, 5:22, 6:8, 6:9, 6:13,

7:10, 7:20, 8:1, 8:2, 11:21, 12:4, 12:16, 18:9, 22:13, 27:2, 28:12, 29:16, 30:24, 32:24, 35:2, 35:19, 36:1, 40:21, 41:1, 41:5, 41:12
therefore [1] - 24:24
thinks [1] - 27:14
three [4] - 21:3, 21:10, 26:4, 28:1
ties [4] - 13:17, 37:11, 37:12, 38:8
title [3] - 16:18, 27:24, 35:23
today [1] - 40:19
together [2] - 4:5, 5:18
TOMMY [1] - 1:6
Tommy [3] - 2:1, 14:5, 29:5
Tommy's [2] - 19:16, 19:24
top [3] - 17:17, 28:21, 30:14
total [1] - 20:12
touching [1] - 15:18
toward [1] - 9:5, 16:5
track [2] - 10:9, 39:18
tracking [2] - 10:11, 10:15
TRANSCRIPT [1] - 1:8
transcript [2] - 19:9, 35:7
Transcript [1] - 1:25
transfer [1] - 16:18
transferred [3] - 16:16, 16:18, 17:6
travel [6] - 12:19, 12:24, 14:14, 15:10, 37:11
traveled [2] - 12:21, 12:25
traveling [3] - 10:22, 15:1, 15:5
treat [1] - 8:6
treaty [1] - 22:12
trial [8] - 5:21, 6:15, 6:23, 11:16, 34:11, 40:6, 40:10, 40:11
Trial [1] - 6:5
tries [1] - 14:19
triggered [1] - 39:12
trip [1] - 22:7
trips [2] - 20:25, 21:3
true [3] - 20:22, 21:18, 24:1
try [3] - 31:16, 34:25, 38:20
trying [3] - 33:1, 35:8, 39:1
Turkey [1] - 22:7
turn [2] - 5:6, 5:18
turning [1] - 40:20
two [10] - 6:23, 13:13, 15:22, 16:5, 16:17, 17:17, 19:19, 21:13, 24:19, 29:16
typical [1] - 7:7

**U**

ultimately [2] - 11:4, 31:22
unable [1] - 7:23
unclear [1] - 39:20

under [4] - 2:25, 6:5, 6:17, 29:10
undisclosed [1] - 29:3
unemployable [1] - 19:17
unemployed [1] - 19:17
UNITED [4] - 1:1, 1:3, 1:9, 1:12
United [10] - 1:5, 14:16, 14:19, 22:12, 37:10, 37:20, 37:23, 37:25, 38:2, 38:12
unknown [1] - 25:11
unlikely [1] - 26:10
up [13] - 3:19, 10:19, 18:2, 18:14, 18:16, 19:5, 22:14, 29:6, 30:15, 30:17, 30:18, 35:24
urban [2] - 20:21, 37:21
US [2] - 26:6, 27:15
USA [1] - 2:1
uses [1] - 30:19

**V**

vacation [1] - 21:4
various [3] - 10:12, 22:17, 36:9
venture [1] - 21:1
versus [2] - 15:21, 27:16
vicious [1] - 22:16
victim [5] - 13:5, 13:18, 22:13, 30:1, 37:14
victims [15] - 9:10, 9:15, 9:16, 9:18, 9:19, 10:10, 10:25, 11:2, 11:7, 11:10, 12:13, 16:15, 36:20, 37:3
victims' [2] - 29:19, 29:23
view [1] - 37:17
VIP [1] - 13:22
visit [1] - 22:8
visited [2] - 22:6, 37:12
voluminous [2] - 5:8, 10:9
voluntarily [1] - 27:20

**W**

wait [1] - 41:5
waive [1] - 3:19
waiver [3] - 5:22, 6:4, 6:24
Walk [1] - 17:13
wants [1] - 37:22
warrant [1] - 27:17
wearing [1] - 39:10
Web [1] - 14:6
weight [1] - 36:18
white [3] - 25:12, 26:10, 26:12
whole [4] - 6:14, 31:19, 34:15, 35:7
willing [3] - 28:6, 33:17, 39:21
Windy [1] - 17:13

wire [2] - 9:7, 9:8
wish [1] - 6:7
wished [1] - 38:1
withdrawals [1] - 24:9
witness [1] - 13:4
witnesses [1] - 34:14
wonders [1] - 35:16
worth [3] - 7:1, 22:1, 29:13
worthy [1] - 21:16
wrote [1] - 7:4

**Y**

year [5] - 12:20, 12:22, 21:15, 26:7, 29:6
years [17] - 9:21, 9:24, 10:3, 13:13, 13:24, 15:22, 18:7, 21:3, 21:19, 24:25, 25:4, 25:7, 26:4, 26:13, 27:19, 28:18
yesterday [2] - 2:13, 2:15
YORK [1] - 1:1
York [3] - 1:5, 1:15, 1:21
York's [1] - 26:6
young [1] - 22:9

**Z**

Zurich [1] - 12:22