

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMM:SK
F.#2013R00948

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 29, 2014

<u>By Hand and ECF</u>

The Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York  11722

        Re:    United States v. Philip Kenner & Tommy C. Constantine
                  <u>Criminal Docket No. 13-607 (JFB)</u>

Dear Judge Bianco:

        The government respectfully submits this letter in advance of the status conference scheduled in the above-captioned matter for September 2, 2014, to provide an update to the Court and note issues requiring resolution.

        Since the last status conference on June 6, 2014, the government has continued to provide discovery pursuant to Federal Rule of Criminal Procedure 16.  During that time, the defendant Kenner has made several discovery demands.  Several of these demands have been resolved.  Specifically:

- On June 25, 2014, Kenner requested copies of grand jury exhibits from grand jury proceedings in the Southern District of New York.  The government obtained the foregoing exhibits from the U.S. Attorney's Office for the Southern District of New York and, on July 9, 2014, provided them to the defense.

- Also on June 25, 2014, Kenner requested that the government identify documents created by the defendants which contained forged signatures.  On August 29, 2014, the government identified such documents and provided them to the defense.

- On July 10, 2014, Kenner requested the exhibits introduced into evidence during the course of Kenner's testimony in 2011 before the Securities and Exchange Commission ("SEC"). The government obtained the foregoing exhibits from the SEC and, on August 15, 2014, provided them to the defense.

- On August 13, 2014, Kenner requested a copy of documents produced by Kenneth Jowdy or his representatives to the U.S. Attorney's Office for the Southern District of New York. While the government objects to the characterization of these documents as Brady material, on August 22, 2014, the government provided the defense with copies of such documents.

Two issues remain unresolved.

    A.    <u>Return of MacBook</u>

On November 13, 2013, law enforcement agents executed a search warrant on Kenner's home in Scottsdale, Arizona and seized an Apple MacBook laptop computer (the "MacBook"). On March 24, 2014, the government provided Kenner with two one-terabyte portable hard drives containing, among other things, an imaged copy of the MacBook. Kenner now requests that the government return the MacBook to him, claiming that he has encountered difficulties in accessing the information contained on the imaged copy. ECF No. 73 at 1.

The government opposes the return of the MacBook to Kenner. Law enforcement agents lawfully seized the MacBook during their execution of the search warrant. The defendant does not claim otherwise. See ECF No. 73 at 2 ("it is not claimed that the Apple laptop was unlawfully searched and seized"). In order to effect the return of the MacBook, the defendant must follow the procedures set forth in Federal Rule of Criminal Procedure 41(g) -- that is, the defendant must file a motion "in the district where the property was seized" (here, the District of Arizona) and provide evidence on factual issues necessary to decide the motion. Fed. R. Crim. P. 41(g). Kenner has not met these requirements.

Moreover, a "defendant's right to the return of lawfully seized property is subject to the Government's legitimate continuing interest in that property." Lavin v. United States, 299 F.3d 123, 128 (2d Cir. 2002). Here, the government has a legitimate continuing interest in the MacBook. As a preliminary matter, the contents of the MacBook are currently undergoing privilege review by a separate review team. As a result, the prosecution team has been walled off from the full contents of the MacBook and is unable to fully assess the potential impact and consequences of its return. In addition, the MacBook constitutes evidence of the crimes charged and may be necessary to authenticate electronically stored information that the government may introduce at trial. See id. at 127-28 (caveating

2

defendant's return of property as applying "once [the property] is no longer needed as evidence"); In the Matter of a Warrant, No. 14-M-309, 2014 WL 3583529, at *10 (S.D.N.Y. July 18, 2014) (recognizing that "it may be necessary for the Government to maintain a complete copy of the electronic information to authenticate evidence responsive to the warrant for purposes of trial"); United States v. Ganias, 755 F.3d 125, 139 (2d Cir. 2014) (allowing for the possibility that it may be "necessary to maintain a complete copy of the hard drive solely to authenticate evidence responsive to the original warrant").[1]

As an alternative to the return of the MacBook, Kenner has suggested that he could purchase a comparable laptop computer through the National Litigation Support Office for CJA counsel if provided with the MacBook's model number and technical assistance. ECF No. 73 at 2. Accordingly, the government has provided Kenner with the MacBook's model number and made available technical personnel at the Federal Bureau of Investigations to facilitate Kenner's access to the information on the imaged copy. Therefore, the defendant has no basis to claim that he is aggrieved by the government's retention of the MacBook.

### B. Identification of Victims

The indictment in this case alleges sixteen victims identified variously as "John Does 1-15" and "Jane Doe 1." Kenner now requests the identity and current address of each of the victims listed in the indictment for the purpose of preparing subpoenas under Federal Rule of Criminal Procedure 17(c), and asks that his request be considered "a demand for a bill of particulars." ECF No. 74.

The government opposes this demand.[2] A bill of particulars is not warranted unless the indictment is too vague "to inform a defendant of the charges with sufficient precision to allow preparation of a defense, to avoid unfair surprise, and to preclude double jeopardy." United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). "A defendant may not use a bill of particulars as a general investigative tool." United States v. Sindone, No. 1-CR-517, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) (Mukasey, J.) (citing United States v. Salazar, 485 F.2d 1272, 1277-78 (2d Cir. 1973)); see also United States v. Barrera,

---

[1] The government does not seek to retain the MacBook for purposes of searching for or seizing information beyond the scope of the warrant.

[2] Notably, Kenner's demand is untimely: it was not made "before or within 14 days after arraignment," which was on December 4, 2013, and Kenner did not obtain the Court's permission to file it "at a later time." Fed. R. Crim. P. 7(f); see also United States v. Taylor, 25 F.R.D. 225, 226 (E.D.N.Y. 1960). The Court should not permit it now, as the defendant must show "factual circumstances to indicate good cause for extending the [time] limit of Rule 7(f)" and Kenner has not done so. United States v. McKay, 70 F. Supp. 2d 208 (E.D.N.Y. 1999).

950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013) ("a bill of particulars is not a discovery device and should not function . . . as a general investigative tool for the defense" (internal quotation marks omitted)).  Rather, the defendant must show why he needs each of the particulars demanded; the ultimate test is whether the information is necessary, not merely whether it is helpful to the defendant.  See United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994); United States v. Weinberg, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987) (abrogated on other grounds).

      Here, the indictment is sufficiently precise to provide Kenner with notice of the charges against him.  Each of the victims is described by where they reside, their relationship to the defendants, and the nature of their investments.  Several of the victims are further described by their profession.  Indeed, Kenner indicates that he has already "identified each 'John Doe'" named in the indictment.  ECF No. 74.  In such circumstances, there is no basis for requiring further specification of the alleged victims.  See United States v. Perryman, No. 12-CR-123, 2013 WL 4039374, at *7 (E.D.N.Y. Aug. 7, 2013) (denying request for bill of particulars that sought, among other things, the identity of alleged victim "John Doe 1" where the indictment and other pretrial materials adequately informed the defendant); Barrera, 950 F. Supp. 2d at 478-79 (denying request for bill of particulars that sought, among other things, the identities of unnamed victims where the indictment explained that the victims were members of the rival gang); United States v. Antico, No. 08-CR-559, 2010 WL 2425991, at *1-2 (E.D.N.Y. June 11, 2010) (denying demand for bill of particulars that sought the identities of "John Doe" victims where the indictment provided other information describing the victims such that the nature of the offenses was sufficiently clear).

      These limitations exist for good reason.  "The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present."  Sindone, 2002 WL 48604, at *1 (denying request for bill of particulars that sought, among other things, the names of the alleged victims).  Indeed, the Court is already familiar with Kenner's capacity and propensity for threatening and intimidating witnesses.  As the government previously noted, see ECF No. 5 at 13, in April 2011, Kenner left a voicemail for one of John Doe 14's family members (hereinafter "MI #1").  Kenner learned that MI #1 had warned Jane Doe 1, John Doe 14 and others to stay away from Kenner because he could not be trusted.  In the voicemail, Kenner identified himself as "Phil Kenner" and, using vulgar language, told MI #1 to "bring your son [who was approximately eight years old at the time] out to Arizona so he can see what it looks like when his dad gets an ass beating."  Kenner went on to accuse MI #1 of "talking shit about things you don't know."  At the end of the voicemail message, Kenner stated, in sum and substance, that he was going to add MI #1 to "the list with the other scum bags."

      Kenner cites two cases -- United States v. Stringer and United States v. Davidoff -- in support of his demand.  Both are inapposite because, unlike here, they involved indictments that did not describe the victims with sufficient specificity to provide

4

notice of the acts for which the defendants were being prosecuted.  See United States v. Stringer, 730 F.3d 120 (2d Cir. 2013) (noting utility of bill of particulars where the government superseded against a defendant who committed identity theft and replaced its prior allegation that the defendant used the name of "Victim-1" with a broader allegation that the defendant used "one or more names"); United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988) (requiring bill of particulars where the government indicted a RICO defendant for extortionate schemes directed at one company and, at trial, presented evidence of extortions aimed at entirely different companies).  The indictment in this case, by contrast, describes each victim and the defendants' associated acts with sufficient specificity to provide Kenner with proper notice.

Moreover, Kenner's stated reason for requesting the names and addresses of each victim runs afoul of Federal Rule of Criminal Procedure 17.  The use of Rule 17 subpoenas in criminal cases is governed by the Supreme Court's decision in United States v. Nixon, 418 U.S. 683 (1974).  The Nixon Court principally recognized that the Rule 17 subpoena "was not intended to provide a means of discovery for criminal cases." Nixon, 418 U.S. at 698.  It therefore held that, in order to require production of materials prior to trial, the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700 (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)).  The Court specified that, "[a]gainst this background," the subpoena proponent must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700 (emphasis added).  "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive.'" Id. at 698.  Moreover, a Rule 17 subpoena generally may not be used for the sole purpose of obtaining impeachment materials, or to circumvent the normal discovery requirements.  Id. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").  Kenner has not met the requirements for issuing a Rule 17 subpoena.

5

For the foregoing reasons, the government opposes Kenner's remaining requests.

                                          Respectfully submitted,

                                          LORETTA E. LYNCH
                                          United States Attorney

By:   /s/Saritha Komatireddy
       Saritha Komatireddy
       James M. Miskiewicz
       Assistant U.S. Attorneys
       (631) 715-7825/7841

cc:    Richard D. Haley, Esq. (by ECF)
        Joseph Conway, Esq. (by ECF)