***HALEY WEINBLATT & CALCAGNI, LLP***
1601 Veterans Memorial Highway, Suite 425
Islandia, New York 11749
631-582-5151


October 23, 2014


Hon. Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

RE: <u>United States v. Phillip Kenner</u>
Docket Number: 13-607 (JFB)

Dear Judge Bianco:

      This letter motion is submitted on behalf of the defendant to address the defendant's demand that the government allow him to inspect original files/documents/date contained on his MacBook computer and i-Phone seized pursuant to a search warrant executed on November 13, 2013.  The instant letter motion is also submitted to request that the court authorize the issuance of subpoenas to compel the appearance of Kenneth Jowdy and John Kaiser at a detention hearing after directing the government to disclose all documents claimed by the government's witnesses to be forged by the defendant or are otherwise fictitious.  By order of the court, the instant letter motion is to be filed on or before October 23, 2014; the government's response is to be filed on or before November 3, 2014; and any reply is to be filed by the defendant on or before November 7, 2014.

<h3 align="center">Background</h3>

      On April 3, 2014, I was appointed as CJA counsel to represent the defendant in connection with pending indictment, as substitute counsel for Randi Chavis of the Federal Public Defenders office.  Shortly thereafter, I obtained the defendant's file from Ms. Chavis which reflected that twenty (20) CD/DVD disks had been delivered to Ms. Chavis and forwarded to the defendant pursuant to the government's voluntary F.R.Crim. P. 16 disclosure ("Rule 16 disks") as of March 11, 2014 (Docket Entries # 26, 36 & 40).  On March 24, 2014, the government provided two (2) one-terabyte portable hard drives which contained "...imaged copies of the electronic devices that were recovered from Phillip Kenner's home in Scottsdale, Arizona on November 13, 2013 pursuant to a search warrant" according to the government's letter (Docket Entry # 48).  On April 11, 2014, May 21, 2014 and June 6, 2014, I received an additional six (6) Rule 16 disks and, accordingly, a total of twenty six (26) Rule 16 disks as well as the two portable hard drives had been received by me and, after review, forwarded to the defendant by the time of the status conference before the

court on June  6, 2014.

On June 6, 2014, the defendant conceded that the case was a "complex case" for purposes of speedy trial and agreed to a lengthy adjournment to September 2, 2014 in order to review and analyze the Rule 16 disclosure provided to the defendant by the government  as of that date and in order for the government to complete its Rule 16 disclosure  obligation.  When the court inquired as to the amount of Rule 16 disclosure outstanding, the government responded "about 15%", to which statement the court quipped "50%?" and the government replied "No 15%".  Thus, the defendant was satisfied that the lengthy adjournment would provide sufficient time for him to complete his review and  analysis of Rule 16 material  with the view that the September 2nd status conference would result in the setting of a trial date to be preceded by a pre-trial motion schedule–a suggestion made by the court at the time.

At the time of the September 2nd status conference, the government had provided an additional forty-five (45) Rule 16 disks  in the following installments: five (5) Rule 16 disks on 8/6/14 (Docket  # 76), one (1) Rule 16 disk on 8/15/14 (Docket # 79 ), six (6) Rule 16 disks on 8/20/14 (Docket  # 80 ), nine (9) Rule 16 disks on 8/22/14 (Docket # 81), two (2) Rule 16 disks on 8/28/14 (Docket  # 84 ), eleven (11) Rule 16  disks on 8/29/14 (Docket # 86 ) and eleven (11) Rule 16 disks by letter dated September 2, 2014 (Docket # 89) but not received by the defendant until September 4, 2014.   When compared with the twenty-six (26) Rule 16 disks provided in advance of the June 6th status conference, the forty-five (45) Rule 16 disks provided between August 6, 2014 and September 2, 2014 suggests that the government grossly underestimated the amount of Rule 16 disclosure to be completed between the June 6th status conference and the September 2nd status conference.  More disturbing, however, is the fact that the government did not begin the process of providing the bulk of outstanding Rule 16 disclosure until two (2) months after the June 6th conference date, *i.e. Supplemental Discovery Letter*, dated 8/6/14, Docket # 76.

Between the June 6th conference date and August 6, 2014, the government did provide disclosure of what the defense regards as *Brady* material in the form of three  grand jury transcripts, dated March 29, 2011 (Docket  #'s 67 & 68).   The grand jury transcripts consist of the testimony of Michael Peca ("John Doe 2"), Darryl Sydor ("John Doe 4") and Turner Stevenson before a grand jury impaneled in the United States District Court for the Southern District of New York ("Southern District Grand Jury").   Because the government's disclosure of the grand jury testimony did not include  the grand jury exhibits, the government  provide a copy of  the exhibits on July 9, 2014 (Docket  # 71) in response to the defendant's request for the grand jury exhibits by letter dated June 25, 2014 (Docket  # 70 ).  In addition to requesting copies of the grand jury exhibits, the defendant's June 25th letter also requested that the government disclose and identify the documents allegedly created by the defendant containing "forged signatures or were otherwise fictitious as claimed in Ms. Capwell's letter, dated November 13, 2013, to Judge Bianco requesting pre-trial detention" (hereinafter "detention letter", Docket # 5).

Between the June 6th status conference date and August 6, 2014, the government also provided copies of the exhibits used during the course of the defendant's testimony before the SEC in 2011  in response to the defendant's request (Docket # 72 ).   The government, however, did not respond to the defendant's letter of July 16, 2014 advising the government of the defendant's

inability to access the files on the two (2) one-terabyte portable hard drives previously provided to the defendant by the government (Docket # 73) or the defendant's letter of July 22, 2014 requesting the name and address of each "John Doe/Jane Doe" referenced in the indictment (Docket # 74 ). Instead, the defendant's requests remained unanswered until, on the eve of the status conference scheduled for September 2nd, the government responded to the defendant's letters of July 16, 2014 and July 22, 2014 by letter dated August 29, 2014 (Docket # 87).

As noted above, the defendant demanded the production of the documents containing forged signatures allegedly created by the defendant by letter, dated June 25, 2014. Presumably, the government possessed these documents as far back as November 23, 2013 when it submitted its detention letter to the court. On August 29, 2014, the government wrote:

> "In response to your letter dated June 25, 2014, the government
> encloses several documents that, **among others**, are documents
> containing forged signatures (bates-numbered DOC 1-14)
> *emphasis added* (Docket # 86)

For purposes of the instant motion, the defendant is attaching as an exhibit "bates-numbered DOC 1-14" which consist of the following four (4) documents identified as Exhibits A-D, respectively: (1) Revolving Line of Credit, dated 12-7-2004 (2) Funding Consulting Agreement, dated December 15, 2004 (3) Funding Consulting Agreement, dated June 1, 2005 and (4) document entitled "Procuraduria General De Justicia Del Estado De Baja California Sur" (hereinafter "alleged forgeries"). It is anticipated that materials provided under 18 U.S.C. § 3500 will reveal that Kenneth Jowdy ("Jowdy") claims that his signature on the Revolving Line of Credit, dated 12-7-2004 (Exhibit A) is a forged by the defendant and John Kaiser ("Kaiser") claims his signature on the remaining three (3) documents (Exhibits B-D) is likewise forged by the defendant. Thus, of the nineteen (19) "John Does" and one (1) "Jane Doe" who are characterized as the defendant's victims in the government's detention letter and the tens of thousands of financial documents produced by way of Rule 16 disclosure, only Jowdy (John Doe 17) and Kaiser (John Doe # 14) assert that the foregoing four (4) documents contain their forged signatures (Exhibits A-D).

On September 3, 2014, the defendant requested the opportunity to review the original alleged forgeries in the government's possession, in addition to demanding the disclosure of any expert witness report regarding the alleged forgeries (Docket # 92). On September 18, 2014, the defendant renewed his request to examine the original alleged forgeries and, at this time, also requested that the government "...make available my client's MacBook computer in an operational condition in order that I as well as my client may review select documents contained on the computer" (Docket # 100 ). On October 1, 2014, the defendant renewed his request to examine his MacBook computer and suggested that the defendant's presence at the October 7, 2014 status conference would be an opportune time for the examination of the MacBook computer to take place (Docket # 104). The letter concluded as follows:

> "As you are aware, subdivision (a)(1)(E) of Rule 16 provides
> that upon a defendant's request the government must permit
> the defendant to inspect, among other things, papers, documents,

> data and tangible objects within the government's possession,
> custody or control. I trust that the instant request will not
> require by way of pre-trial motion a court order to obtain
> this most fundamental form of Rule 16 discovery available
> to a defendant.

Given the government's letter of August 29, 2014 in which it asserted that the four (4) alleged forgeries were only part of a larger group of forgeries, *i.e.* "among others", the defendant demanded the disclosure of all documents claimed to be forged by the defendant by letter dated October 3, 2014. In this regard, the defendant wrote in part:

> "...I request that both John Doe # 17 and John Doe # 14 be shown
> all other documents in the government's possession bearing their
> signatures in order to expedite the Rule 16 disclosure process
> and move the matter to trial. Presumably, John Doe # 17, who
> is represented by counsel, and John Doe # 14, a former law
> enforcement *(sic)* are aware of the provisions of 18 U.S.C. § 1001
> in responding to questions in connection with the government's
> investigation.

On October 7, 2014, I arrived at the courthouse in Central Islip at 10:00 a.m, to meet with my client in advance of the 1:00 p.m. status conference and to inspect his MacBook computer as well as the "duplicate" alleged forgeries in the government's possession (Docket # 106 ) at the United States Attorney's Office located at the courthouse (Docket # 106). The previous evening I wrote to the government again requesting that my client's MacBook computer be made available for inspection either before or after the status conference. The government advised the court and the defendant at the 1:00 p.m. status conference that it would not make the original contents of the defendant's MacBook computer available for inspection due to proffered spoliation of evidence consisting of the modification of computer files/document/data should the MacBook computer be turned on and its contents viewed by the defendant and counsel (*Note:* As I am awaiting the transcript of the proceedings of October 7, 2014, I am unable to directly quote the government's argument and rely upon my memory).

### Defendant's Request to Inspect his MacBook Computer and i-Phone in the Government's Possession, Custody and Control

The defendant will not recite the provisions of Rule 16 which are well known to the court and the government. Here, the defendant requests the opportunity to inspect the original contents of his MacBook computer which was seized by the government pursuant to a search warrant executed on November 13, 2013. By way of the instant motion, the defendant requests that the original contents of his i-Phone, also seized pursuant to the same search warrant, be made available for inspection. Consistent with the government's letter of September 12, 2014 (Docket # 97), the inspection of the original files/documents/data contained on the defendant's MacBook computer and i-Phone may take place at the United States Attorney's office in Central Islip. The defendant would

consent to the inspection under the supervision of either Mr. Miskiewicz or Ms. Komatireddy, or both and in the presence of one or more agents of the Federal Bureau of Investigation, including a government computer technician who may open the files/documents/data contained on the MacBook computer to be inspected by the defendant and counsel and record the files/documents/data viewed during each inspection.

The government's proffered reason to the court for refusing to allow the defendant to inspect the original contents of his MacBook computer is premised upon computer technicians in the government's employ who advise against the inspection of the MacBook computer by the defendant or his expert. It is clear that the government has already obtained a forensic mirror of the contents of the MacBook computer which, upon information and belief, not only preserves the contents of the MacBook computer but also the date and times computer files/data were created and accessed as of the date of the mirror image. Insofar as the government claims that computer files/documents/data will be corrupted or internal date/time entries will be altered so as render the files/data inadmissible at trial should the defendant or his expert be allowed to inspect (and copy) original files/documents/data, the defendant requests that the court conduct an evidentiary hearing on the issue.

The technical expertise to create a forensic mirror image of a computer hard drive and the admissibility at trial of the mirror image computer files is well established. In United States v. Ganias, 755 F.3d 125 (2nd Cir. 2014), government law enforcement agents elected to make "identical copies", or forensic mirror images, of the hard drives of all three of Gania's computers" even though the search warrant allowed the seizure upon its execution of "(A)ll books records, documents, materials, computer hardware and software and computer associated data related to IPM and American Boiler..." Id. at 128. When the government failed to purge Ganias' personal computer records on the "mirror image" hard drive for two-and-one half years, the Court determined that the retention of Ganias' personal computer records for such a lengthy period of time was unreasonable within the meaning of the Fourth Amendment. Id. at 137. In rendering its determination, the Court wrote:

> "It would be impracticable for agents to occupy an individual's home or office, or seize an individual's computer, for such long periods of time. It is now also unnecessary. **Today, advancements in technology enable the Government to create a mirror image of an individual's hard drive, which can be searched as if it were the actual hard but without interfering with the individual's use of his home, computer, or files.**" *emphasis added. Id.* at 135.

Where an item was obtained from or belongs to a defendant, the Rule 16 mandate to allow the defendant "to inspect and to copy or photograph...documents, data...tangible objects...within the government's possession, custody and control..." is unqualified. Here, the defendant seeks nothing more than to view the original files/documents/data contained on his MacBook computer and i-Phone. Upon failure to comply with a Rule 16 obligation, the court may "order that party to permit the discovery or inspection; specify its time, place, and manner ; and prescribe such other just terms and conditions." F.R.Crim.P. 16(d)(2)(A). Accordingly, the defendant requests that the court enter

an order directing the government to permit the defendant to inspect the original contents of his MacBook computer and i-Phone at the United States Attorney's office in Central Islip once a week for a period of two-three hours in the presence of government attorneys/agents until such time that the inspection is complete.

### Rule 16 Disclosure of All of the Alleged Forgeries

The government has a statutory obligation under Rule 16 to allow, upon the defendant's request, the inspection of all documents the government intends to use in its case-in-chief at trial. As the central provision for documentary discovery under the Federal Rules of Criminal Procedure, Rule 16 is designed to allow the defendant to inspect such documents in advance of trial. Here, the government's investigation of the defendant commenced as far back as 2011 when the Southern District Grand Jury was impaneled to investigate "fraud offenses" allegedly committed by the defendant (*See* accompanying grand jury transcripts of Michael Peca, Darryl Sydor and Turner Stevenson, dated March 29, 2011). Furthermore, the government has maintained continuous contact with Kaiser who, with the exception of the last status conference on October 3, 2014, attended the status conference on June 6, 2014 and September 2, 2014. Notably, Thomas Harvey, Esq., attorney for Jowdy, has also attended one or more status conferences and presumably would pass along any request of the government of Jowdy for all documents he alleges contain a forged signature of his name.

At the September 2nd status conference, the court inquired of the government after the defendant had complained about the pace of the Rule 16 disclosure particularly with respect to the delay in disclosing recorded conversations of the defendant and the delay in identifying the forged documents the government intended to introduce at trial. The transcript reads as follows:

> THE COURT: So basically you think that any remaining Rule 16
> would be completed by the end of next week.
> MS. KOMATIREDDY: Yes, your Honor.
> THE COURT: All right, Other than privileged.
> MS. KOMATIREDDY: Yes, other than privileged.

On October 2, 2014, the government provide its most recent Rule 16 disclosure by including a Rule 16 disk labeled "bates numbered ED-2617-3237" (Docket #106). In this regard, the government wrote:

> "Finally, enclosed please find supplemental discovery provided
>  by the government in accordance with Rule 16 of the Federal
>  Rules of Criminal Procedure consisting of documents provided
>  by Kenner to John Doe 14."

As noted herein, Kaiser is John Doe 14 but the government's disclosure of documents "bates numbered ED 2617-3237" under its cover letter does not specify any particular documents as being one of the "among others" of alleged forgeries yet to be provided in Rule 16 disclosure. The Rule 16 disclosure by Kaiser, who was present in court on September 2, 2014, was made thirty (30) days after the government had represented that the remaining Rule 16 disclosure "would be completed

by the end of next week."  Ostensibly, Kaiser has little desire to provide the government with timely Rule 16 disclosure of documents in his possession so as to move the matter forward for trial or adhere to the court's directive that Rule 16 disclosure, *i.e.* documents the government intends to use in its case-in-chief at trial, be completed.

Because a document purporting to contain a forged signature is subject to expert handwriting analysis, the defendant requested by letter, dated September 3, 2014, that the government disclose any expert witness report in its possession pursuant to subdivision (a)(1)(G) of Rule 16 (Docket # 92).  On October 2, 2014, the government advised that defendant that "(A)t this time, the government does not have any such report...(and) expects to establish that the foregoing documents contain forged signatures through witness testimony of the purported signatories" (Docket # 106).  Although the government may chose not to avail itself of expert witness analysis, the defendant is entitled to retain an expert witness to examine the alleged forgeries and, accordingly, it is imperative that timely Rule 16 disclosure of all alleged forgeries be made in advance of trial (Docket # 106) in order for the defendant to address the allegation as part of his defense.

### Issuance of Subpoenas for Testimony of Kenneth Jowdy and John Kaiser in Advance of Detention Hearing

On December 4, 2013, the court signed an order of detention pending trial and wrote "on consent, without prejudice to a future bail application" under "Part II-Written Statement of Reasons for Detention" of the Order (Docket # 20).   Here, the defendant is not charged with any of the offenses  enumerated under "Part I-Findings of Fact" of the Order and, therefore, is not subject to the rebuttable presumption of  pre-trial detention embodied in 18 U.S.C. § 3142 (e)(2).   Although the statutory presumption embodied in Section3142(e)(2) is inapplicable in the instant case, the government nevertheless submitted its detention letter arguing that the defendant "should be held without bail pending trial" (Docket # 5).

Notwithstanding the presumption of innocence as repeated in subdivision (j) of 18 U.S.C. § 3142 and the defendant's determination to exercise his constitutional right to a jury trial, the government argues on page 9 of its detention letter that "(A)s a threshold matter, a grand jury has already found that probable cause supports the charges against KENNER and CONSTANTINE ("Eastern District Grand Jury").   Conspicuously absent from the government's detention letter, however, is notification to the court that the Southern District Grand Jury did not return an indictment for "securities fraud, bank fraud and other fraud offenses" against the defendant (Peca transcript, pg. 2, lines 17-20; Sydor transcript, pg. 2, lines 14-16; Stevenson transcript, pg. 2, lines 15-18).   It is unknown by the defense at this point whether Peca, Sydor and Stevenson testified before Eastern District Grand Jury but it is anticipated that only hearsay (inadmissible at trial) was presented to the Eastern District Grand Jury in support of the instant indictment.

In his testimony before the Southern District Grand Jury, Peca was shown a number of documents related to the managing of his finances by the defendant and acknowledged that he (Peca) signed the documents (Peca transcript, pg. 35, line 22 - pg. 40, line 16).   As an example, Peca testified as follows:

Q   Let me show you Grand Jury Exhibit 107, starting with your
    signature. Is that your signature?

A.   It is.

Q.   This letter is dated March 11, 2005, "Gentlemen, this letter is
    your authorization to allow Phillip A. Kenner to access my above
    referenced line of credit for direct deposit to Little Island IV
    account at Northern Trust, he is authorized to sign for the release
    of funds related to the line."  Do you remember signing this?

A   I do.

Similarly, Sydor acknowledged his signature on various financial documents in his testimony before the Southern District Grand Jury (Sydor transcript, pg. 9, line 2 - pg. 21, line 19), although his testimony was equivocal due to lack of memory when questioned about his signature on Grand Jury Exhibit 115 (Sydor transcript, pg. 23, line 5 - pg. 24, line 6).  More important, however, is Sydor's acknowledgment that he signed the same line of credit (LOC) authorization at Northern Trust authorizing the release of LOC funds to the defendant, specifically for the Hawaii real estate investment known a Little Island IV (Sydor transcript, pg. 20, line 15 - pg. 21, line 2).  And finally, all three witnesses before the Southern District Grand Jury (Peca, Sydor and Stevenson) admitted that they were aware of the defendant's plan to utilize their respective  Northern Trust LOC to transfer some of the funds to Jowdy in the form of a loan to develop a golf course for professional athletes in Cabo San Lucas, Mexico (Stevenson transcript, pg.17, line 23 - pg. 18, line 10).

In the section of the indictment titled "The Hawaii Land Developments", it is alleged that "(F)or almost every line of credit, a letter **purportedly signed by the respective Investor** authorized Northern Trust Bank to allow KENNER to access the line of credit to make direct deposits of money to the Little Island IV account at Northern Trust" (*emphasis added*) and that "KENNER falsely represented to some Investors that the line of credit would not be drawn upon and would serve solely as collateral in connection with the Little Island IV land development project" (Indictment ¶ 23). As noted above, Peca and Sydor admitted to signing the LOC authorization and, upon the trial of the matter, it is anticipated that documentary evidence will be adduced demonstrating that each Investor ("John Does") had given the defendant the same level of authority concerning their respective account at Northern Trust  with knowledge of the intended use of their LOC funds.   As far as the remaining allegations in the indictment  regarding misuse of LOC funds are concerned, the defendant's not guilty plea and the prevailing presumption of his innocence obviate the need to address each such allegation for purposes of the instant motion.

When addressing the "weight of the evidence" under subdivision (g)(2) of Section 3142, the government writes in its detention letter that "(T)his factor weighs strongly in favor of detention." Of course, the government must emphasize this factor because the defendant's lack of a prior record and corresponding lack of a warrant history coupled with the non-violent nature of the alleged criminal conduct suggests that he is not a flight risk or a danger to the community when considering the "history and characteristics of the person" under subdivision (g)(3) of Section 3142.  When the government writes  to the court that  "(M)uliple victims will testify about false representations made by KENNER and CONSTANTINE regarding the Hawaii project, the lines of credit, Eufora, GSF and the Sag Harbor property", the defendant answers with the grand jury testimony of Peca and Sydor, in addition to his not guilty plea and rejection of the government's Rule 11 plea offer. Thus,

the government merely proffers, as it is permitted to do so, but presents no evidence, documentary or otherwise, to the court to justify the continued pre-trial detention of the defendant.

The concluding sentence of the government's "weight of the evidence" argumentative reads "(T)he government will also introduce at trial evidence that KENNER and CONSTANTINE forged signatures and created fictitious documents in furtherance of and to conceal their scheme to defraud." It is conceded that forging one's signature or creating a fictitious document is compelling evidence of criminal intent and may be weighed by the court in assessing the strength of the evidence in support of the indictment.   As set forth in his affidavit, the defendant did not forge the signature of Jowdy or Kaiser, nor did the defendant create fictitious documents (Exhibits A-D).   Accordingly, the defendant requests the opportunity to question Jowdy and Kaiser through the issuance of a subpoena to compel their appearance at a detention hearing to be set by the court pursuant to subdivision (f) of Section 3142.

The defendant's denial of the forgery allegations made by Jowdy and Kaiser is not without corroboration.   For example, during the course of hearing conducted by the American Arbitration Hearing in Arizona in May 2009,  Robert Gaudet, whose signature appears on Exhibit A as "witness", testified as follows:

> Q.  BY MR. RICHARDS: Are you familiar with the credit line agreement that you witnesses between Mr. Kenner and Mr. Jowdy"
> A.  Help me with that question a little bit better, please.
>> MR. RICHARDS: Do you know the exhibit Counsel.
>> MR. BAKER:  79
> Q.  BY MR. RICHARDS: Can you turn to 79 in that.
> A.  Yes, I am familiar.
> Q.  Can you turn to the second page.  Do you recognize that signature?
> A.  Which one"
> Q.   The one at the top under witnessed.
> A.   Yes
> Q.   Who signature is that"
> A.   It's mine.
> A.   Were your present when Mr. Jowdy signed this credit line agreement, this agreement, forget the title with Mr. Kenner.
> A.   Yes, I was.

(*See* Transcript pg. 100, testimony of Robert Gaudet, Diana Nolan, an individual, and Owen Nolan, an individual v. Phillip Kenner, an individual, Standard Advisers, Inc., a Delaware Corporation and Standard Advisors, LLC, a Delaware Limited Liability Company, American Arbitration Association, No. 76 148 Y 00223 08 DEAR attached hereto).

Finally, as noted in his affidavit, the defendant has no motive to forge the signature of Kaiser on Exhibit D inasmuch as he was not a party to the Stumpel-Jowdy litigation in Mexico or have a financial interest in its outcome.   The defendant concludes his sworn statement by affirming that

"(A)t no time did I forge another person's signature or create fictitious documents a alleged in the government's detention letter to the court. (See Kenner affidavit, ¶ 8).

**Conclusion**

While the government was diligent in preparing its letter for submission to the court seeking the defendant's pre-trial detention, the government has not exhibited the same level of alacrity in fulfilling its Rule 16 obligation in order to move the matter in a timely manner to trial.  Accordingly, the defendant requests by way of the instant motion that the court order: (1) absent a motion by the government showing good cause for further Rule 16 disclosure by the government, the defendant may rely upon the government's Rule 16 disclosure as of the date of this motion  to prepare his pre-trial motions and prepare for trial; (2) and evidentiary hearing be scheduled to address the government's argument in opposition to the defendant's request that he be permitted to inspect the original contents of his MacBook computer and i-Phone; (3) all alleged forgeries and fictitious documents that the government intends to introduce in its case-in-chief at trial be disclosed by the government forthwith; and (3) a date for a detention hearing be set by the court upon the return date of this motion and status conference scheduled for November 7, 2014,  upon the issuance and service of subpoenas for John Kaiser and Kenneth Jowdy to attend and testify at such hearing.

Very truly yours,

***Richard D. Haley***

RICHARD D. HALEY

cc: AUSA James M. Miskiewicz via ECF
    AUSA Saritha Komatireddy via ECF