FILED
CLERK
11/25/2014
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 13-cr-00607-JFB
                             :
     - versus -             : U.S. Courthouse
                             : Central Islip, New York
                             :
KENNER, et al.,             : October 7, 2014
            Defendant       :
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government:**          **Loretta E. Lynch, Esq.**
                                United States Attorney

                          BY:  **James M. Miskiewicz, Esq.**
                                Assistant U.S. Attorney
                                100 Federal Plaza
                                Central Islip, NY 11722

**For Defendant Kenner:**        **Richard D. Haley, Jr., Esq.**
                                Haley Weinblatt &
                                Calgagni, LLP
                                One Suffolk Square
                                1601 Veterans Memorial Hwy
                                Islandia, NY 11749

**For Defendant Constantine:** **Joseph Conway, Esq.**
                                Conway & LaRusso
                                300 Old Country Road
                                Mineola, NY 11501

**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                740 Sharon Road
                                Copiague, New York 11726
                                Transcriptions2@verizon.net

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 13-cr-607, USA v.
2   Kenner and Constantine.
3          Counsel, please state your appearance for the
4   record.
5          MR. MISKIEWICZ:  Good afternoon, your Honor.
6          James Miskiewicz for the United States.
7          THE COURT:  Good afternoon, Mr. Miskiewicz.
8          MR. HALEY:  Good afternoon, Judge.
9          THE COURT:  Just stay seated.
10         MR. HALEY:  Richard D. Haley, pursuant to a CJA
11  appointment for the defendant Phillip Kenner.
12         MR. CONWAY:  Good afternoon.
13         It's Joseph Conway on behalf of Thomas
14  Constantine.  Per the Court's order, Mr. Constantine is
15  appearing by telephone.
16         THE COURT:  Okay.  Mr. Constantine are you on
17  the line?
18         DEFENDANT CONSTANTINE:  Yes, your Honor, I am.
19         THE COURT:  Can you hear everybody okay?
20         DEFENDANT CONSTANTINE:  I can.
21         THE COURT:  Okay.  If at any point, you can't
22  hear just let me know, okay?
23         DEFENDANT CONSTANTINE:  Okay.  Thank you.
24         THE COURT:  Okay.  As you know, this is a
25  status conference.  I'll hear first from Mr. Miskiewicz.

3

Proceedings

1          MR. MISKIEWICZ:  Your Honor, the --

2          THE COURT:  just stay seated so we can hear

3 you.

4          MR. MISKIEWICZ:  Sorry.

5          THE COURT:  That's okay.

6          MR. MISKIEWICZ:  It's just a habit.  We have

7 completed Rule 16 discovery.  We -- I would indicate that

8 if there is anything else that comes into our possession,

9 we would turn it over immediately to counsel but where we

10 were last time we were here was to try to complete that

11 process and I believe we have.

12          What we have not completed unfortunately, is

13 the taint review is still working on completing their

14 task regarding the privilege review of the material taken

15 during the search warrant of Mr. Kenner's -- during Mr.

16 Kenner's arrest.

17          So I have been told by the Assistant who is

18 heading that privilege up that she is very close to

19 completing but she's still a couple of weeks ago and that

20 was not what I represented the last time and I'm not

21 particularly happy about the delay but I think the

22 assistant is just doing a very thorough job and there's a

23 great volume of material.  So there is that, as far as

24 the status is concerned.

25          Beyond that, I believe counsel will have a

4

Proceedings

1    number of applications to make to the Court.  We've

2    conferred prior to this.  We both -- both parties believe

3    that the matter should be put over for approximately

4    another thirty days for a status conference on November

5    7th, at which time in addition to whatever other

6    applications counsel may make, I think we'll be in a

7    position to have this matter scheduled for motions and

8    trial.

9              THE COURT:  Okay.  Mr. Haley?

10             MR. HALEY:  Your Honor, may I get my notes?

11             THE COURT:  Sure.

12             MR. HALEY:  Your Honor, the last time we

13   appeared before your Honor on September 2nd, 2014, the

14   Court --

15             THE COURT:  If you could just stay seated, sir.

16   Thanks.

17             MR. HALEY:  Sure.  The Court may recall that

18   that the Court directed the government to try to submit a

19   letter explaining reasons why they should not reveal the

20   identities of the John Does or reveal the identities of

21   the John Does.  The government responded by identifying

22   the John Does.

23             I don't know if your Honor's had an opportunity

24   -- not that I would expect the Court to do this -- to see

25   what's transpired in terms of Rule 16 demands since the

5

Proceedings

1  last court appearance.  And it wasn't by way of motion,

2  Judge.  So I wouldn't expect the Court would necessarily

3  be reviewing that correspondence.

4          THE COURT:  No, I mean I've seen the letters

5  but I haven't followed the details of it, so just --

6          MR. HALEY:  Then let me just give a summary,

7  Judge, because I do think it's important from my client's

8  perspective.  So we did receive by way of letter dated

9  9/8/14, the identity of John Does.  The Court may recall

10  I filed a Rule 16 discovery letter demanding specific

11  Rule 16 material, as well as Federal Rule of Evidence

12  404(b) material, as well as 807 material, Brady, Giglio,

13  Bagley material, which had remained unanswered.

14          The Court directed that the government respond

15  to that letter, paragraph by paragraph by September 12th,

16  2014.  The government did respond by September 12th of

17  2014.  The adequacy of their response, Judge, will be

18  part and parcel of the motion practice, so I need not

19  address that at this point in time.

20          I might add, Judge, that I did request the

21  disclosure of statements made by the indicted co-

22  conspirators, specifically Tommy Constantine, by way of

23  that demand.  The discovery I've received from the

24  government does not provide statements made by Tommy

25  Constantine.  Their view is that United States v.

6

Proceedings

1   Percival gives them the basis upon which not to disclose

2   that.  I disagree, Judge.  He's an indicted co-

3   conspirators.  Those statements will serve as a basis for

4   a motion to sever pursuant to antagonistic defenses but I

5   may have to address that by way of motion, Judge, if

6   we're unable to resolve that.

7            We have been, Judge, unable to resolve the

8   issue regarding access to the digitally stored

9   information contained on the two terabyte-size hard

10  drives.  Your Honor directed that the government inquire

11  and conduct an investigation of that issue.  Mr.

12  Miskiewicz did report to the government by letter -- a

13  two-page letter the follow day, detailing the nature of

14  his investigation, and his determination that there is

15  really no problem -- and I paraphrase in terms of my

16  client's ability to access the information on the

17  terabyte hard drives.

18           I responded the following the day in a three-

19  page letter, Judge, and unfortunately the matter remains

20  unresolved though I think the matter is somewhat academic

21  for the reasons I'm about to state.

22           I indicated previously to your Honor that my

23  view given the most recent decision of the Second Circuit

24  in United States v. Ganias, 755 F.3d 125, that my client

25  was entitled to the return of his laptop computer once

7

Proceedings

1    the government has obtained a forensic mirror drive of

2    its contents.  I believe the decision is crystal clear in

3    that regard.  The government's in possession of what they

4    need by way of that mirror hard drive.  It's like taking

5    the DNA out of a person, Judge.  They have the DNA of

6    that laptop computer that can be replicated and re-

7    replicated time and time again.  So there's no need for

8    the government to retain the original laptop computer.

9           As far as the admissibility of that is

10   concerned, Judge, I would respectfully suggest to the

11   Court that upon a hearing, any technician, reputable

12   technician would be able to establish to the Court's

13   satisfaction that the information contained on a forensic

14   mirror hard drive is just that, a forensic mirror hard

15   drive of the computer and accordingly, there would be no

16   issues in terms of the authenticity.  In an effort to

17   even remove that issue, Judge, I agreed to a stipulation

18   in that regard.  I know at that point in time, attorney

19   for Mr. Constantine was not prepared to stipulate to that

20   but, Judge, from my perspective, it's academic because I

21   believe he's entitled to the return of his hard drive but

22   I'll address that by way of motion.

23          Your Honor, since the last appearance before

24   the Court by letters that go back several weeks now, I

25   have demanded by way of Rule 16, that my client, as well

8

Proceedings

1   as myself, be given the opportunity to inspect the

2   Macbook Laptop computer which is in the possession of the

3   government.  It is an item that belongs to my client.  It

4   is a tangible object within the meaning of Rule 16 and it

5   contains data and documents on that tangible object.

6          We've made the demand.  Rule 16 is not

7   discretionary.  It says that upon demand, the government

8   must make available for inspection, any tangible object

9   that belongs to the defendant.  I, by two letters, Judge,

10  have requested that that laptop computer be made

11  available at the Offices of the United States Attorney

12  for the Eastern District of New York, specifically in

13  this courthouse.  I arrived at 10 a.m. today.  My client

14  was here at 10 a.m. today in anticipation that we could

15  use the next two-and-a-half hours or the two-and-a-half

16  hours preceding this court appearance to review the

17  laptop computer in the presence of as many United States

18  Attorneys or government agents as the government deems

19  appropriate, Judge.

20         There's been no response to that request but

21  it's my view, Judge, that this a fundamental Rule 16

22  demand that I'm entitled to see, not what the government

23  says they want to give me, perhaps a copy of it which we

24  can't access or not.  I'm entitled to see the original

25  item.

9

Proceedings

1      Judge, by analogy, if there was a Hobbs Act

2  robbery and there was a murder weapon, I'm entitled to

3  visually inspect the murder weapon.  A photograph of it

4  or a replica of it would not be sufficient and Rule 16

5  doesn't say unless it's inconvenient to the government.

6  It's quite mandatory in that regard and my letters of

7  October 2nd and October 3rd have been unanswered as far

8  as that's concerned.

9      Judge, since we have conducted the discovery

10  and I'll address whether or not the government has abided

11  by your Honor's deadline in connection with completing

12  that discovery because by my memory, your Honor in

13  substance, directed the government with the agent present

14  to interview all their witnesses, to make sure that Rule

15  16 discovery had been completed and delivered to the

16  defendant, I believe by September 12th.

17      Just yesterday, I -- excuse me -- on October

18  3rd, Judge, I received a disc of discovery which was

19  purportedly provided by John Kaiser (ph.) to the federal

20  agent that contained multiple documents.  Judge, John

21  Kaiser has been a primary witness of the government for

22  the last five years and on October 3rd he gets around to

23  providing the government this discovery beyond the date

24  as set forth by your Honor?

25      John Kaiser -- is he present in court today,

10

Proceedings

1   Judge?  He's been present for the last several court

2   appearances -- is aware that this information is needed

3   by the government and is needed by the defense and we

4   only recently received that information.

5           But, Judge, what's more important in terms of

6   what I've received since the last status conference is

7   the long-awaited identification of documents contained

8   alleged forged signatures, has been provided.  And what

9   we have, Judge, we have four documents:  one known as a

10  loan credit -- revolving loan credit agreement signed by

11  Ken Jowdy.  He claims it's a forgery.

12          Another actually, Judge, is a document

13  generated by the courts in Mexico bearing the Mexican

14  stamp, as I understand it, placed on a document when it's

15  signed by the applicant much like an affidavit, Judge,

16  containing as well as the document itself, a copy of the

17  passport for John Kaiser which bears his signature.  John

18  Kaiser claims that's not his signature.  so we have two

19  documents, one by Ken Jowdy where he claims it's not his

20  signature, another by John Kaiser where he claims it's

21  not his signature.

22          The information I have, Judge, is both

23  documents were witnessed by a third-party and that's

24  particularly important, Judge, because I will have an

25  application in a moment that relates to a detention

11

Proceedings

1  hearing.

2         The other two documents are known as funding

3  agreements: one's dated in 2004, the other's dated in

4  2005 which again purportedly are documents containing the

5  forged signature of John Kaiser.

6         Of the hundreds, if not thousands of documents

7  that have been produced thus far, Judge, that involved

8  wire transfers, liens, contracts, mortgages -- of the

9  thousands of documents, many of which bear John Kaiser's

10 signature, these are the four documents that the

11 government claims are forged documents.  And I said at

12 least on two of them, we have a person who by previous

13 testimony, Judge, at least by way of the alleged forged

14 document concerning the revolving line of credit

15 agreement said, "I witnessed," in substance, "I was there

16 when Ken Jowdy signed that document."

17        Why is that relevant, Judge?  It's relevant in

18 terms of (a) the strength of the government's case as it

19 relates to those allegations but it's also relevant,

20 Judge, because back in November of 2013 in its bail

21 application to your Honor seeking the continued and

22 seeking the detention of my client, representations were

23 made that the case would be bolstered by forged

24 documents.  It's only recently now, Judge, that we've

25 seen these forged documents, alleged forged documents.

12

Proceedings

1    It is my claim that they are not forged.  It is my claim

2    that upon a hearing, this court would make a

3    determination that they are not forged documents.

4              And to the extent that allegation or

5    representation to the Court played a role in the Court's

6    determination as to the detention of my client pending

7    trial, I am respectfully requesting a detention hearing

8    as far as that's concerned.  As it relates to that

9    detention hearing, Judge, I would be submitting to your

10   Honor three subpoenas to be so ordered by your Honor.  As

11   you know, I'm CJA counsel.  It would require that your

12   Honor sign the subpoenas for delivery to the U.S.

13   Marshal's Service for service upon those three witnesses.

14   The three witnesses would be Ken Jowdy, John Kaiser and

15   the witness to two of those documents, are Robert Gaudet

16   (ph.).  So I am request that your Honor set this matter

17   down for an evidential hearing at which point I will call

18   those witnesses on my client's behalf in order to address

19   the issue as it relates to my client's continued

20   detention in connection with this matter.

21             Judge, I might add, as I said those are the

22   forged documents that we've been provided five years

23   after this event has taken place and, you know, Mr.

24   Kaiser previously gave an interview to the Daily News,

25   coincidentally, his interview to the Daily News was given

13

Proceedings

1   the same day the FBI was issuing its press release in

2   connection with this case.

3          THE COURT:  Again, I just want to stop you, Mr.

4   Daly.  You've been talking for like twenty minutes and I

5   do have a trial going on today.

6          MR. HALEY:  I know, your Honor and I tried to

7   alert the Court Clerk that I had an extended application.

8          THE COURT:  I'm happy to have you -- obviously

9   I want to know what's going on in the case but we're not

10  going to have a bail hearing today.  So I don't --

11         MR. HALEY:  Okay.

12         THE COURT:  You don't need to sort of preview

13  to me what your arguments are going to be.  If you want

14  to have a bail hearing -- first of all, I'm not ordering

15  an evidentiary hearing on the forged signatures at this

16  point.  If you want me to revisit the bail issue and

17  that's the primary thrust of your argument, I'm happy to

18  review that but that obviously was not the only reason

19  that I have detained your client.  That was something

20  that the government proffered in connection with the

21  strength of the case but it was not the sole basis of the

22  decision and as I sit here now, I'm not persuaded that

23  that issue needs to be resolved in order to readdress the

24  issue of bail.

25         But if you want to have another bail hearing to

14

Proceedings

1   reopen it, I'm happy to do that.  I would just ask that

2   you put in a letter requesting it, explain to me why you

3   believe that their proffer of the forged signatures is

4   incorrect.  I'll give Mr. Miskiewicz a chance to respond

5   to that first in a letter and then we'll have a bail

6   hearing where we can discuss it.  And if after reading

7   those letters and hearing from both sides, I think that

8   that issue is going to be dispositive on the issue of

9   bail, then we'll have a hearing on that but let's not do

10  that today.

11          But I do want to give Mr. LaRusso (sic) a

12  chance.  Is there anything else?  And I'm happy to set

13  all these other issues, as I think I said to you

14  previously, as soon as you put in a motion, I'm happy to

15  address them.  I understand why you're raising them,

16  although I do want to ask Mr. Miskiewicz about the

17  inspection of the laptop because I think at a minimum,

18  hopefully we can resolve that issue.  But is there

19  anything else before I hear from Mr. LaRusso, Mr. Haley?

20          MR. HALEY:  No, sir.

21          THE COURT:  Okay.  Mr. LaRusso -- I said, Mr.

22  LaRusso -- I didn't look up -- Mr. Conway?

23          MR. CONWAY:  I'm a lot shorter than he is.

24          THE COURT:  Sorry about that.

25          MR. CONWAY:  In the sake of brevity, I don't

15

Proceedings

1   have any discovery issues to raise, given the

2   representations by Mr. Miskiewicz today that discovery

3   is --

4           DEFENDANT CONSTANTINE:  I'm sorry to interrupt,

5   your Honor.  I cannot hear Joe.  I cannot hear Mr.

6   Conway.  Sorry to interrupt.

7           THE COURT:  Mr. Conway, if you would just pull

8   that mic over and just stay seated, Mr. Conway.

9           MR. CONWAY:  Thank you.

10          THE COURT:  Pull the mic over and stay seated.

11          MR. CONWAY:  Your Honor, in the sake of

12   brevity, I --

13          THE COURT:  Hold on.  Can you hear now?  Can

14   you hear now, Mr. Constantine?

15          DEFENDANT CONSTANTINE:  Yes, your Honor.  Thank

16   you.

17          THE COURT:  Okay.

18          MR. CONWAY:  I don't have any specific

19   discovery issues to raise.  You know, I join in some of

20   the applications that Mr. Haley has made in terms of

21   inspection of the computer but based on the government's

22   representation that the discovery is basically complete,

23   I think a thirty-day adjournment to continue and

24   hopefully finish reviewing all the discovery will allow

25   us to come back and set a motion date and if the Court

16

Proceedings

1   deems appropriate, a trial date, as well.

2              THE COURT:  Okay.  All right.

3              Mr. Miskiewicz, can you just address the

4   inspection of the laptop computer?  Is there any reason

5   why Mr. Haley and his client with the agents present

6   can't inspect the computer?

7              MR. MISKIEWICZ:  Yes, your Honor.  And I have

8   been chomping at the bit to respond to the motion.  I've

9   been waiting for a motion.  There hasn't been one filed.

10  There been last minute letters demanding inspection

11  within a matter of hours.

12             In essence though, I've both spent a

13  considerable amount of time researching both the factual

14  issue, as well as the law on this and holding aside -- I

15  stand on what I said last time here about Ganias and I

16  don't believe Ganias applies at all.

17             THE COURT:  Well, no, I don't want to go back.

18             MR. MISKIEWICZ:  I know.

19             THE COURT:  That issue he'll brief.  That's

20  whether it should be returned to him.  My question right

21  now is why his client shouldn't be able to inspect it?

22             MR. MISKIEWICZ:  Because every computer expert

23  that I've spoken to has spun for me a series of issues

24  that arise every time a computer -- the actual computer

25  is turned on or turned off and files are accessed.  There

17

Proceedings

1   are various forms of metadata that are going to change.

2   The internal clocks change.  Documents will suddenly no

3   longer be identical to the mirror image that counsel

4   claims, you know, is all that's necessary.

5           This is an analogous to a piece of fragile

6   evidence like in the old days when there were wiretaps

7   and the wiretaps were on actual reel-to-reel tape or

8   cassettes and the case law in this circuit under United

9   States v. Terry, 702 F.2d 299 (1983) and other more

10  recent application of Terry in this district and

11  elsewhere, I think stands for the proposition that where

12  you have a piece of fragile evidence that is going to

13  just by virtue of turning it on and off, be changed and

14  where as I understand counsel, there is going to be

15  authenticity challenges to a whole host of things, Rule

16  16 does not say you get to manipulate or alter the

17  evidence.  You can inspect it.

18          And under Terry and other cases, I submit that

19  inspection does not mean unless you can somehow establish

20  that what has been provided to counsel is inauthentic,

21  has been somehow rigged by the government, absent some

22  sort of basis for making that argument, you don't get to

23  monkey around with the original weapon or piece of

24  evidence.  Essentially, he doesn't want to just inspect,

25  that is look at, a piece of evidence.  He wants to change

Proceedings

1   it by accessing the files and there is simply, I'm told,

2   no way that merely accessing and trolling around in a

3   large data base will not change the metadata and

4   therefore, create this disagreement among what is for

5   right now, a mirror image and the original.

6           We can go back to the original if and when it

7   ever becomes necessary that a copy is printed and there's

8   some authenticity challenge but simply looking at the

9   document where there's no reason to believe that there's

10  anything wrong with the mirror image creates an issue.

11  Last --

12          THE COURT:  I guess I don't understand --

13          MR. MISKIEWICZ:  My other point going back to

14  what I said earlier or last time is, we still -- that is

15  to say, the trial team, hasn't -- we don't even have

16  access to this laptop.  So we're not in a position to

17  simply have one of the trial team members sit here and

18  look over the shoulder during inspection because we

19  shouldn't be looking at what's on the laptop until the

20  privilege review has been done.

21          MR. HALEY:  May I be heard briefly, Judge?

22          THE COURT:  Yes.

23          MR. HALEY:  Your Honor, please, this is really

24  a simply protocol.  We all have laptop computers.  You

25  open up the screen.  The government can have its own

19

Proceedings

1   technician present.  They can have their own technician

2   access the file.  I can sit there with my client.  Their

3   technician can open up the laptop.  We can look at

4   various files in the presence of the technician.  Mr.

5   Miskiewicz, the United States Attorney herself -- and I

6   don't mean to be facetious.  My client can say would you

7   please go to this file.  They can access that file.  We

8   all can look at it at the same time.

9        To suggest that somehow -- and by the way, with

10  all due respect to Mr. Miskiewicz, I have a lot of

11  respect for him, he's not a computer expert.  If there's

12  going to be a determination by this Court that by turning

13  on a laptop computer files are destroyed or changed or

14  things of that nature, then I at least request there be

15  an evidentiary hearing on that score.

16       And indeed, in Ganias, Judge, if you read the

17  decision, the Second Circuit made note of the fact as a

18  technical matter, a forensic mirror image is just that, a

19  forensic mirror image.  None of these issues were even

20  considered by the Second Circuit, just as a matter of

21  common sense.  The technology is crystal clear.

22       So what I am proposing, Judge, is a Rule 16

23  demand.  You're correct.  It's not a Ganias.  I'll

24  address that.  It is crystal clear by way of the

25  mandatory nature of Rule 16 and counsel's remarks in

20

Proceedings

1  terms of how we're intent on changing the character of

2  the computer itself is simply nonsensical.

3          THE COURT:  Okay.  I have never heard of the

4  government taking this position before and obviously, I

5  have cases all the time that involve computers with child

6  pornography and other evidence on them.  I've never heard

7  the government take the position that the defense or

8  defense expert cannot examine the original computer

9  because it's going to alter the metadata of the computer.

10  I have never heard that position taken before.  It sounds

11  extreme to me that the government through their own

12  technician can't ensure that whatever changes on a

13  computer every time you access it, they can't explain

14  that if necessary to a jury, if they had to explain why a

15  file showed being opened on a certain date because it was

16  being inspected and wasn't the date, you know, that it

17  was created or something of that nature.  And, in fact,

18  if you have a mirror image, I'm not sure why the mirror

19  image wouldn't be able to show that, as well.

20          So if the government is taking this unusual

21  position that a defendant cannot examine his own original

22  laptop, it's going to have to be briefed along with the

23  numerous other issues that Mr. Haley wants to raise with

24  the Court, okay?  But we're not going to -- I'm not going

25  to decide it today.

Transcriptions Plus II, Inc.

Proceedings

1      Mr. Haley, you can obviously include that in

2  your request.  Although I suggest the government

3  reconsider that because I'm very skeptical that you'll

4  find any case where a court has precluded a defendant

5  from examining or a defendant's expert from examining his

6  own computer.  I don't think it's the same as some of the

7  other cases that deal with something that is so fragile

8  that it can't be examined.

9      So I just want -- Mr. Miskiewicz, do you want

10  to address the -- I know I got that letter regarding the

11  prison -- in terms of the defendant being able to access

12  the materials in the prison.  It's still your position

13  that there's no impediment to that in the jail?  Is that

14  your position?

15      MR. MISKIEWICZ:  That's -- your Honor, that is

16  the representation from the warden that there's been no

17  impediment and when I reported that out, and I know there

18  was a response, I don't believe that counsel's response

19  -- it took great exception to my reporting it but it does

20  not change the fact that whatever the -- there seems to

21  be an inability to articulate what problem there is and

22  if there is a problem, the facility is really willing and

23  able to work with counsel and the defendant to expand

24  access, so --

25      THE COURT:  Okay.  Well, again, Mr. Haley, if

22

Proceedings

1   you want to explain -- I'm not sure I continue to -- I

2   don't think I understand what the impediment is, if there

3   is an impediment in the jail given what has been reported

4   back by the government through the warden but you'll have

5   to put that in a motion.  Okay?

6          MR. HALEY:  Your Honor, I -- first of all,

7   thank you, Judge.  It was explained in my letter that

8   followed Mr. Miskiewicz's letter.  Actually there were

9   letters that even preceded that that explained the

10  problem in writing.

11         I would be more than pleased to answer any of

12  your Honor's questions.  Just so I understand, Judge, as

13  it relates to the Rule 16 request, the direction of the

14  Court is that I brief that.

15         THE COURT:  Just make a motion to inspect the

16  computer under Rule 16.

17         MR. HALEY:  Very well.

18         THE COURT:  Mr. Miskiewicz, you'll have to put

19  in an opposition explaining --

20         MR. MISKIEWICZ:  Okay.

21         THE COURT:  -- why you should not be able to do

22  that and obviously, you can put in the motion regarding

23  the return of the laptop with the same application.  I

24  guess it will be in the alternative, right?

25         MR. HALEY:  If I may, Judge?

23

Proceedings

1        THE COURT:  Yes.

2        MR. HALEY:  Because this may expedite matters.

3   My ultimate motion is going to be extensive as it relates

4   to a myriad of issues but if I may, Judge, we have a date

5   now thirty days from today as a status conference.  My

6   request that it be marked status conference/detention

7   hearing pending written application by myself as relates

8   to the need for that detention hearing and my request

9   that your Honor issue subpoenas to compel the production

10  of witnesses and I will do that within two weeks.

11        In connection with that application, I will

12  also, Judge, at that time set forth my position in terms

13  of my request that my client be permitted to view the

14  computer under Rule 16 because I would like to move this

15  matter forward, rather than leave those motions in a

16  rather more extended motion schedule that will be set

17  some time after that thirty day period.

18        THE COURT:  That's fine.

19        MR. HALEY:  That would be my request, Judge.

20        THE COURT:  That's fine.

21        MR. HALEY:  Okay.

22        THE COURT:  Again, I  just want to make clear

23  that my -- you can submit subpoenas to subpoena people

24  for that hearing but the way I am going to handle it, I'm

25  going to receive your letter on what grounds you think I

24

Proceedings

1    should reopen the bail, whether it's on that or other

2    grounds.  I'm going to give the government a chance to

3    respond and I'll -- we can argue that all on the 7th but

4    that's not going to be -- if the hearing with respect to

5    whether or not there's a forged signature or not, if I

6    deem it necessary, that would follow November 7th, okay?

7              MR. HALEY:  Fine.  Thank you, Judge.

8              THE COURT:  Okay.  So I don't know, do you want

9    to set a date for your submission and then a response by

10   the government so that we can be ready by November 7th.

11   Do you want to do that?

12             MR. HALEY:  Sure, Judge.  If the hearing is not

13   going to take place on November 7th, why don't -- if I

14   may, Judge, let me just -- Judge perhaps I could submit

15   no later than October 23rd that would give the government

16   easily ten days to respond before the 7th or --

17             THE COURT:  And this -- I just want to

18   understand, this is going to deal with the computer and

19   the bail issue?

20             MR. HALEY:  Yes, sir.

21             THE COURT:  Okay.  I think that's reasonable.

22   Okay, Mr. Miskiewicz?

23             MR. MISKIEWICZ:  Yes, your Honor.  Could I have

24   until November 3rd to file a response?

25             THE COURT:  Sure.

Proceedings

1          MR. MISKIEWICZ:  Thank you.

2          THE COURT:  And then if you want to try to put

3     in a reply before the hearing, you can or you can just

4     respond to it orally, okay?

5          MR. HALEY:  Thank you, Judge.

6          THE COURT:  And then on this issue of the team

7     -- the taint team doing the review, we have to get -- it

8     hasn't gotten the point, obviously because we've had

9     other voluminous discovery that the defense has had to

10    digest and review but we are getting to the point now

11    where it's holding up the case.  So you need to convey to

12    this AUSA -- did you get a date or you didn't get a date?

13    A couple of week, is that what I heard you say or --

14         MR. MISKIEWICZ:  That's what I got and I will

15    press and ensure that there's a final date.

16         THE COURT:  Yes, I'm going to give a final

17    date.  I think two weeks -- it has to be produced in two

18    weeks and even if there's not -- there's some earth-

19    shattering reason that it can't be done in two weeks,

20    then I am going to ask that what's already been reviewed

21    be copied and put on a disc and reviewed -- and then, you

22    know, the government would have to explain to me in a

23    letter that this would be from the other AUSA, obviously,

24    why the remainder of it hasn't been completed.

25              This case -- I mean I think the search was at

26

Proceedings

1   the time of the arrest, right?  So  it's been a year -- a

2   year the government has had this, so I can't understand

3   why it's not done at this point and it's now holding up

4   the case.  So it should all be produced in two weeks from

5   today.  If it's not all produced in two weeks, then

6   whatever has been reviewed and cleared should be produced

7   on a disc to defense counsel and the AUSA should submit

8   to me a letter indicating why the rest of it has not been

9   done within a year and tell me when the rest is going to

10  be done because we have to move forward at this point.

11  Okay?

12          MR. MISKIEWICZ:  Yes, your Honor.

13          THE COURT:  Okay.  Is there any -- let me just

14  deal with the next -- so are both of your clients willing

15  to exclude the time then till November 7th, Mr. Haley?

16          MR. HALEY:  Yes, sir.

17          THE COURT:  And Mr. Conway?

18          MR. CONWAY:  Yes, your Honor.

19          THE COURT:  Okay.  Mr. Kenner and Mr.

20  Constantine, you heard the lawyers.  We're adjourning the

21  case till November  7th so that you and your lawyers can

22  continue to review the discovery and Mr. Kenner, you

23  heard your lawyer has some other motions that he's going

24  to brief in the interim until November including the bail

25  issue.

27

Proceedings

1          By signing this waiver, you're agreeing to

2     exclude the time under Speedy Trial Act until November

3     7th.  Is that what you wish to do, Mr. Kenner?

4          DEFENDANT KENNER:  Yes, your Honor.

5          THE COURT:  And Mr. Constantine?

6          DEFENDANT CONSTANTINE:  Yes, your Honor.

7          THE COURT:  Okay.  There was nothing checked

8     off in terms of reason.  I'll just write in defense

9     review of discovery as the reason for the adjournment?

10          MR. HALEY:  Yes, sir.

11          THE COURT:  Okay.  So I just wrote in as the

12    grounds, defense review of discovery.  So I'm setting

13    this down for November 7th for another status conference

14    at 11 a.m. and we'll also allot some time for a bail

15    argument by Mr. Haley and I exclude the time from today

16    until November 7th under Title 18 U.S.C. Section

17    3161(h)(7)(A) in order to allow defense counsel

18    additional time to review the voluminous discovery and to

19    resolve some of the other issues related to the discovery

20    that we discussed today.  I find that the ends of justice

21    served by granting this continuance outweigh the best

22    interests of both the public and the defendants in a

23    speedier trial and I have so-ordered the waiver.  Okay?

24          But it is my intention also at that November

25    7th, as was indicated, to set a motion schedule and to

28

Proceedings

1    set a trial date, as well.  Okay.

2         Is there anything else from the government?

3         MR. MISKIEWICZ:  No, your Honor.

4         THE COURT:  Anything else for the defense?

5         MR. HALEY:  No, sir.

6         MR. CONWAY:  No, your Honor.

7         THE COURT:  Okay.  Have a good day.

8         MR. HALEY:  Thank you.

9         DEFENDANT CONSTANTINE:  Thank you.

10             (Matter concluded)

11                  -o0o-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcriptions Plus II, Inc.

29

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **24th** day of **November**, 2014.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.