1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA     :  13-CR-607

     -against-                    US District Court
                             Central Islip, NY
PHILLIP KENNER and
TOMMY CONSTANTINE,           September 2, 2014
                             1:50 pm
                 Defendants.:
- - - - - - - - - - - - - - X

       TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE JOSEPH F. BIANCO
       UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:

                      LORETTA E. LYNCH
                      United States Attorney
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                      By:  JAMES MISKIEWICZ, ESQ.
                          SARITHA KOMATIREDDY, ESQ.
                      Assistant US Attorneys

For the Defense:          RICHARD D. HALEY, ESQ.
                      For Defendant Kenner

                      JOSEPH CONWAY, ESQ.
                      For Defendant Constantine

Court Reporter:           Dominick M. Tursi, CM, CSR
                      US District Courthouse
                      1180 Federal Plaza
                      Central Islip, New York 11722
                      (631) 712-6108  Fax:  712-6124
                      DomTursi@email.com

       Proceedings recorded by mechanical stenography.
            Transcript produced by CAT.

2

1          (Call to Order of the Court.  Appearances noted

2     as indicated above.)

3          THE COURT:  Both Mr. Kenner and Mr. Constantine

4     are present.

5          As you know, we scheduled this as a status

6     conference.  And, in addition to being cc'd on various

7     discovery letters, I did receive the government's August

8     29 letter raising at least two outstanding discovery

9     issues.  So we can address those and any other issues that

10    anyone wants to bring up.

11         Why don't we start with the two issues raised in

12    the letters.  I don't know if Mr. Conway or Mr. Haley

13    wants to explain what the issue is.

14         MR. HALEY:  I would be happy to, your Honor.

15         When you say the two issues, are you speaking of

16    the issue regarding the desire that my client have

17    returned to him his laptop computer?

18         THE COURT:  That is one.  And the other one is

19    seeking the identification of the victims who were named

20    in the indictment.  Those are the two that the government

21    highlighted.

22         MR. HALEY:  Yes, judge.

23         By way of, I guess, background, your Honor, I

24    know your Honor makes a point of staying on top of every

25    case.  If your Honor has reviewed the docket sheet since

3

1    our last appearance in court, because there are a number

2    of Rule 16 demands on my part that I will address in a

3    moment because I know that is not the focus of your

4    Honor's current question, there was, as indicated in this

5    correspondence between myself and the government, an issue

6    we were trying to resolve as related to the information

7    contained on my client's laptop computer which was seized

8    pursuant to a search warrant.

9           As reflected in that correspondence, I had

10   proposed a solution by which the laptop would be returned

11   to my client:  I would agree to a broadly based

12   stipulation to resolve any issues that may arise in

13   connection with the evidentiary use of the information

14   contained on that laptop.

15          I suggested that early on, after our last court

16   appearance, because, as I recall, when I brought the issue

17   to the attention of your Honor, your Honor suggested that

18   we work cooperatively with the government to try to

19   resolve the issue.

20          As set forth in one of my letters, I did make

21   efforts to try to come up with a solution by which the

22   government retain the laptop computer and I would be able

23   to then, through the use of an expert witness, obtain a

24   model laptop computer, the same model number, the same

25   software program, to try to take the burden on, judge, if

4

1   you will.  When I say take the burden on:  for the defense

2   to solve the problem if we are not going to be given the

3   laptop computer.

4          Judge, really that is academic from my

5   standpoint because I believe the issue has changed.  I

6   believe the issue has changed as a result of a decision

7   rendered by the Second Circuit in June of this year.  That

8   decision is entitled *United States v Ganias*, 755 F.3d 125.

9   And it was actually a decision which I believe, judge,

10  really addresses this issue.

11         It was not based upon a Rule 16 discovery

12  request for return of an original laptop computer or, if

13  you will, the information contained on the original laptop

14  computer by way of a Rule 16 discovery demand, but by way

15  of a Fourth Amendment analysis.

16         The point is simply this, Judge.  If the court

17  takes a look at *Ganias*, what we have is a circumstance

18  where the agents went into the location with the

19  authority, pursuant to a search warrant, to seize

20  information contained on a computer.

21         What they did at the location, judge, is, they

22  mirror-copied the hard drive of that particular computer;

23  left the computer with the defendant, it was his computer,

24  but mirror hard-copied the information contained on the

25  computer, which contained information arguably relevant to

5

1    the prosecution but also contained a great deal of

2    personal information.

3          The government held on to that information for

4    an extended period of time though there were requests that

5    information of a personal nature be returned to the

6    defendant.  The government didn't do so.

7          It went up to the Circuit, and the Circuit found

8    that under those circumstances there was a Fourth

9    Amendment deprivation; that the government had no

10   authority, by way of constitutional law or by way of

11   statutory law, to retain all that information in its

12   possession.

13         Judge, what I think is salient in that decision,

14   because there absolutely has been a dispute between myself

15   and the government as to whether or not they are really

16   prejudiced; if they return the laptop computer to my

17   client, I respectfully submit to your Honor I'm not a

18   computer expert but they have made a mirror copy of this

19   hard drive.

20         They have all the information already in their

21   possession by virtue of making that mirror hard copy of

22   the hard drive.  As a matter of fact, some Rule 16

23   material we received to date has come off of that hard

24   drive from that laptop computer.

25         What the Circuit had to say is as follows.

6

1   *"Today, advancements in technology enable the government*

2   *to create a mirror image of an individual's hard drive,*

3   *which can be searched as if it were the actual hard drive*

4   *but without interviewing with the individual's use of his*

5   *own computer or files."*

6          So the current application, Judge, from my

7   position, is really quite simple.  This computer, laptop

8   computer, contains the information arguably relevant to

9   the prosecution of the case.  There is no question it also

10  contains personal information, a great deal of personal

11  information, as relates to my client.  That item, the

12  laptop itself, in view of the fact that the government has

13  already obtained the information they need by way of the

14  hard drive, ought to be returned to my client.

15         I might add, judge, it is also our position that

16  not only should his laptop be returned but his iPhone

17  should be returned.

18         Through the Rule 16 discovery we have received

19  snippets of emails that the government has provided to us

20  that have come off of the iPhones.  The iPhone also

21  contains significant amounts of personal information.

22  They are obviously able to copy electronically the

23  information contained on those documents.

24         Judge, I might add we are talking about the

25  Federal Bureau of Investigation.  We are talking about a

7

1   law enforcement agency that has the technical wherewithal

2   as well as the financial wherewithal to engage the experts

3   to get a mirror hard drive of that laptop, which they have

4   already obtained.

5           THE COURT:  Okay.  I understand that issue.

6           I want to ask the government to speak to that.

7   But do you want to cover the second issue as well, the

8   victim-identification issue?

9           MR. HALEY:  Yes, sir.

10          I cited in an earlier email to the government

11  two cases, Second Circuit cases, wherein the Circuit by

12  way of a demand for a bill of particulars deemed it

13  appropriate to identify the names and addresses of --

14  excuse me.  Yes, actually it was the names and addresses,

15  I believe, of the victims in a particular case.

16          Those two cases indicated that the vehicle by

17  which such a demand could be made was a demand for a bill

18  of particulars.  I stylized my letter in terms of that

19  type of demand, the demand for a bill of particulars.

20  Judge, because there is a reality here, and I understand

21  that reality.  I mentioned it in my letter.  We may have

22  already identified each of the John Does.

23          For purposes of the record, judge, from our

24  perspective, judge, Brian Berard is John Doe One.

25          Michael Pecca is John Doe Two.

8

1          Owen Nolan is John Doe Three.

2          Darrell Sidor is John Doe Four.

3          Glen Murray is John Doe Five.

4          Sergei Gonchar is John Doe Six.

5          Mattias Norstrom is John Doe Seven.

6          Steven Rucchin is John Doe Eight.

7          Joe Juneau is John Doe Nine.

8          Greg DeVires, John Doe Ten.

9          Jay McKee is John Doe Eleven.

10          Ethan Moreau is John Doe Twelve.

11          Tyshon Nash is John Doe Thirteen.

12          John Kaiser, who is present in court, Judge, he

13   is seated in the second row, has been here for each court

14   appearance, he is certainly entitled to be so, he is here,

15   he is John Doe Fourteen.

16          Nick Privitelo is John Doe Fifteen.

17          Kenneth Jowdy is John Doe Seventeen (sic).

18          Vincent Tesorio is John Doe Eighteen.

19          Now, to the extent that the government is

20   prepared to acknowledge that we have correctly identified

21   the John Does for purposes of my representation as to who

22   we believe the John Does is to be, if they can make that

23   representation to the court, this becomes less of an issue

24   but not entirely, and I will get to that in a moment.

25          Judge, there is going to be a point in time when

9

1    I am going to have to open up to a jury.  I will be using

2    allegations that are contained in that indictment when I

3    speak to that jury, and I want to be able to say to the

4    jury and identify each of these John Does so the jury is

5    not left with some shell game in their mind as to who

6    specifically alleged what on what occasion with respect to

7    the multiple counts obtained in that indictment.

8            I might add, Judge, the reason I mention these

9    names to your Honor is, we have been in possession of

10   those names for some period of time.  If there is any

11   allegation whatsoever that there has been an effort on my

12   part, on the part of an investigator employed by us, on

13   the part of my client, to in any way intimidate these

14   witnesses such that we are looking for them to suborn

15   perjury or anything of that nature at trial:  Absolutely

16   not.

17           And I would like to say, Judge, this is not an

18   organized crime case.  This is not an MS-13 case.  But it

19   has relevance and materiality that the defendant be

20   allowed to know specifically who his, if you will,

21   accusers are as relates to each John Doe as listed in that

22   indictment.

23           I might add, judge, that certainly as far as Mr.

24   Kaiser is concerned, he is not worried about his personal

25   safety.  He has given interviews to the news media, both

10

1    he as well as Brian Berard, alleging my client stole money

2    from them, making all sorts of allegations.  So they bask

3    in the spotlight of the press, and yet can it truly be

4    argued that somehow revealing the names or confirming the

5    names to the defense in this action is somehow put them in

6    jeopardy?

7              The final reason, Judge, it is important to me,

8    and it will become an issue, judge, it is our intent at

9    the appropriate time to serve Rule 17 subpoenas.  As I

10   indicated in one of my letters to the government, it

11   strikes me we don't need the address of all those John

12   Does.  We have pared down the list as to who we would be

13   interested in serving Rule 17 subpoenas on.

14             As your Honor is well aware, I'm CJA counsel.

15   These subpoenas would be presented to your Honor for

16   review.  They are presented to the marshals service for

17   service.  In an effort to move this case along, judge, it

18   strikes me that it is only appropriate that we have

19   accurate addresses so we don't waste time and these

20   subpoenas get served to have marshals service come back to

21   your Honor and then ultimately me say:  Look.  He is no

22   longer at that address.

23             So this has relevance and materiality, judge, in

24   connection with the preparation of the defense in terms of

25   the Rule 17 material.

1          I believe those are the two issues, your Honor.

2          THE COURT:  All right.  Let me deal with those

3    and then I will address any other ones.

4          Do you want to add anything to that?

5          MR. CONWAY:  No, judge.  Just that in terms of

6    the computer, I am not joining in that motion.

7          But in terms of the John Does, we join in Mr.

8    Haley's motion.

9          THE COURT:  Does anyone want to address those

10   two issues?

11         MR. MISKIEWICZ:  Yes, your Honor.

12         Your Honor, as to the issue of returning the

13   laptop at this time.  I will just, in summary, say that

14   this is not the *Ganias* case.  In that case the government

15   was in possession of a laptop for two and a half years.

16   It was in the process of or actually sought a second

17   search warrant that expanded what it was able to view in

18   that receptacle of data.  And that is really the narrow

19   issue that the Second Circuit had to address, is whether

20   or not the seizure arguably took place at a later time as

21   opposed to an earlier tame.

22         Here the laptop has been in our possession for a

23   number of months.  More importantly to the government's

24   prosecution team, we haven't even gotten possession of it.

25   We have not even begun the Rule 41E search of documents

12

1    because the Sixth Amendment concern that there are

2    privileged documents on that receptacle of data, if you

3    will, that box full of documents, may contain privileged

4    information that frankly we shouldn't be able to see and

5    maybe even the codefendant Mr. Constantine shouldn't be

6    able to see.

7          We have been working through that as

8    expeditiously as possible.  There is a walled-off group of

9    agents and an AUSA supervising that, and I'm advised that

10   that review has found something like 60,000 files

11   totalling something like 300,000 pages of documents, and

12   they are working as quickly and in as good faith as

13   possible, as expeditiously as possible, to finish that

14   review.  But that never was an issue in the *Ganias* case,

15   and here it is.

16         Secondly, we don't have one defendant, as in the

17   *Ganias* case.  We have two.  So although it may be the case

18   that Mr. Haley and his client are prepared to offer some

19   broad stipulation, I don't know how Mr. Conway and his

20   client can offer the same stipulation as to authenticity

21   and maybe even waive objections to foundation arguments

22   when they, like the prosecution team, haven't even been

23   able to see what it is that we purport is relevant and

24   seized pursuant to that search warrant.

25         Finally, and I think this is critical, many of

13

1   the issues that Mr. Haley is complaining about, overbreath

2   or personal documents, et cetera, I submit will probably

3   get resolved as a part of this privilege review.

4          In other words, the privilege team will submit

5   to Mr. Haley, and I believe to the court simultaneously, a

6   list of files that they believe are not privileged and

7   therefore discoverable to the prosecution and discoverable

8   to Mr. Constantine.  There may be other documents where

9   there will have to be some differences of opinion, and

10  ultimately the court will have to decide.  And I think

11  that that will be the appropriate time for Mr. Haley to

12  say the government should under no circumstances view the

13  following.  And that will forever more resolve the issues

14  in *Ganias* about overbreath of the warrant.

15         THE COURT:  In terms of solving this issue about

16  his access to it, in your letter there is reference to him

17  getting a computer through the national litigation support

18  office.  Is that your proposal for what the solution

19  should be?

20         Even if they don't give him back the original

21  hard drive, obviously Mr. Haley and his client want to

22  have access to what is on there and are having issues I

23  guess with what is being provided to them.

24         MR. MISKIEWICZ:  That issue seems to have

25  morphed, if you will, over the last several days and, to

14

1    my knowledge, since the last status conference.

2              First of all, it was our understanding that Mr.

3    Haley would be unable to view the documents that we turned

4    over in the mirror-imaged format because they were created

5    on an Apple system and they only have access to a

6    Microsoft system.  Apparently, that is not the case.

7              Also, apparently he has the ability to view that

8    material.  In fact, I'm advised that our privilege-review

9    team is reviewing all of this material on a Microsoft

10   system.  We don't have Apple in the government.

11             So there doesn't seem to be this inability to

12   cross over platforms.  If that were simply the case, that

13   would certainly be a problem and I would understand his

14   need to see the original.  But apparently, I have

15   confirmed with Mr. Haley, he was able to finally locate

16   whatever software it was that was necessary to review

17   certain documents.  Some of the documents, I'm told again

18   from the privilege review, are PDF files and Microsoft

19   Word files.

20             So if it is a matter of actually seeing the

21   documents, giving back the original evidence is not

22   necessarily the only solution.  If it is a matter of

23   preserving the evidence, however, I submit that there is a

24   process of going through it deliberately, and maybe we

25   will get to a point where we can turn over the original

1  back to Mr. Haley.

2         But I submit, your Honor, we are not there now.

3  And once we turn it over, I don't know how your Honor

4  enters a protective order that says Mr. Kenner cannot

5  touch it, or at least one that is enforceable.  And if

6  that is the case, we may have a situation, and this is

7  also principally our reason for being hesitant about

8  merely turning over an original piece of evidence; there

9  may be items there that cannot be reconstructed through

10  the image copy.  I'm told, for instance, the mirror copy

11  does not have the application software that is in the

12  original, and there may come a time when that application

13  software, particularly having to do with forged documents

14  and forged texts, might become critical.

15         It is also the case that, and I have had this

16  experience in lots of complex litigations where documents,

17  once copied and recopied, become corrupt.  And although it

18  is easy at this stage for Mr. Haley to say just give it

19  back and we will deal with the problems as they arise

20  later on with some all-encompassing stipulation, again

21  cocounsel and codefendant may not agree, and if there is a

22  document on that hard drive that Mr. Constantine recalls

23  that doesn't turn up on a mirror image, we no longer have

24  the original to look at and now we are into an issue of

25  spoliation and Sixth Amendment concerns of destruction of

16

1    Brady evidence.

2            So for all those reasons, your Honor, I simply

3    ask the court's indulgence again to allow us to go through

4    this process.

5            THE COURT:  How much longer is the privilege

6    review process?  Do you know?

7            MR. MISKIEWICZ:  I'm advised that they should

8    have, if not by the end of the month certainly by October

9    15, a list to counsel about what they deem to be

10   privileged or not privileged.

11           THE COURT:  Okay.  Can you move now to the

12   victim-identification issue.

13           MR. MISKIEWICZ:  Just very briefly.  We are

14   unsure as to whether or not this is a bill of particulars,

15   and if it is, clearly counsel has articulated a number of

16   names which would suggest he doesn't need a bill of

17   particulars.  He claims he knows who those individuals

18   are.  So therefore the next question is whether or not

19   this is something that would be, or additional

20   documentation that would be, discoverable under Rule 17C,

21   and the Bowman Dairy and Nixon standards would have to

22   come into play.  And at that point we would like to be

23   able to, at the very least, be able to put in that counsel

24   is seeking to subpoena from individuals that he believes

25   to be witnesses in this case.

17

1        There is no question at some point the John Does
2   are going to be identified to the jury and to cocounsel
3   and to the court.  There will be 3500 material that will
4   make it plain.  But we are a long ways away from that.
5   And putting, just contending that I need this because of,
6   on the grounds of a bill of particulars, without even
7   arguing or filing a motion or application to the court
8   which we would have an opportunity to respond to and then
9   saying:  *Well, what we really want is a Rule 17 subpoena,*
10  makes it impossible for us then to really respond I think
11  in any meaningful way.

12        THE COURT:  Let me say --

13        MR. MISKIEWICZ:  I would suggest that if he
14  wants to file a bill of particulars, he should be given a
15  filing schedule to do so.  Or if there is a subpoena that
16  he seeks documentary evidence from various individuals,
17  that also be given the opportunity to join the issues
18  after seeing if it is discoverable.

19        THE COURT:  There are two issues here.

20        To the extent that he is seeing a Rule 17
21  subpoena for additional documents from any of the victims,
22  I agree with you, obviously he would have to do that by
23  formal motion and I would have to see exactly what he is
24  seeking.

25        But to the extent he is seeking a more basic

18

1    list of the names of the victims, forget about their

2    addresses for now because that would be contingent upon

3    whether or not there is any basis to subpoena for

4    anything, or whether or not they would not accept service

5    absent being given their addresses.

6         But just a list of names, I guess I don't

7    understand.  I can make them file a motion for a bill of

8    particulars on that.  But it is clear to me that he would

9    be entitled to those names prior to the trial and that the

10   only basis for withholding them even at this juncture

11   would be if there was a safety reason to do that, at which

12   time I would set a date by which he would have to

13   disclose, 30 days before we go to trial, 60 days before

14   the trial; I don't know that what date would be.

15        But I don't know that this is one of those

16   cases, for the reasons that I think Mr. Haley indicated,

17   which are twofold.  One is, part of your argument is they

18   don't need the names because they have them already.  So

19   even if they have them already, then whatever safety issue

20   you may be concerned about is moot.

21        But the second issue is that I don't know of any

22   particular safety issues.  I know you have summarized some

23   conversations that the government said took place between

24   Mr. Kenner and one or more of the victims, but I'm not

25   sure that you have made a sufficient showing at this

19

1    juncture, with Mr. Kenner incarcerated, that that is a

2    sufficient reason for me to delay disclosure of just the

3    names so that they can begin preparing for the trial.

4                I don't want them to, if, say, you disclose this

5    30 days before trial and they say Judge, that is not

6    enough time, we need an adjournment of the trial because

7    until we know who the victims are it is difficult for us

8    to prepare.  So this is the way I am looking at it.  And

9    to the extent they just want a list of names of the

10   victims, unless the government is going to try to

11   articulate to me a compelling basis for delaying that, I'm

12   going to tell you that you should turn over that list now

13   or confirm that the list that he just read off is

14   accurate.  If you want to, do that today in court.  But

15   you can't do this through a letter to him.

16               But to the extent that he is seeking their

17   addresses or seeking any documentation from them, that he

18   should do by formal motion.  So I will leave the option

19   of, if you want to argue that I should delay the

20   disclosure of the names, you should submit a letter within

21   one week of today explaining to me why we should do that.

22   Otherwise, within one week of today the names should be

23   turned over to counsel.  Okay?

24               MR. MISKIEWICZ:  Understood.

25               THE COURT:  On the first issue, Mr. Haley.

20

1   First let me ask Mr. Conway.

2          You are being drawn into the motion in terms of

3   whether or not you and your client would stipulate.  I'm

4   not sure this is dispositive of the motion, but at this

5   point are you willing to stipulate to the authenticity of

6   anything the government recovers from the mirror image of

7   the hard drive?

8          MR. CONWAY:  I can't at this time, your Honor,

9   because I'm in the dark.  I don't know what is on there.

10  Obviously, I haven't had an opportunity to see anything.

11  And until their review is done and I can see what is on

12  there, I can make certain decisions and make certain

13  challenges at that time, but at this time I can't make any

14  representation whatsoever.

15         THE COURT:  So Mr. Haley, I don't want to spend

16  too much time on this, but if you want to make a motion

17  for return of property, or however you want to style it,

18  you can do that.  But I will say to you right now it seems

19  to me that, in light of the absence of a full stipulation

20  from everybody who potentially would be involved in the

21  documents that are recovered, and in light of the fact

22  that they are still doing a privilege review, that any

23  attempt to get a return of that computer would be

24  premature.

25         I would being shocked if you can find any case

21

1   where, under those type of circumstances, the government

2   has been required to return the original computer when

3   there is not a full stipulation about the authenticity of

4   it and they are still undergoing a privilege review.  It

5   seems very premature.

6           But let me ask you because now I'm confused.

7   Are you having issues accessing the mirror image or not?

8           MR. HALEY:  Yes, your Honor.

9           If I may, and I will be brief.  The issue, your

10  Honor, and I anticipated your Honor may want it, and I

11  would invite your Honor because it will be probably the

12  only case I cite in my brief to the court, to take a look

13  at that *Ganias* case that I cite, your Honor, on the record

14  because I believe that clearly addresses the issue.

15          Judge, we are really just mixing apples and, I

16  won't say oranges; we are mixing apples and PC-based

17  computers here.  The issue is this.  We were delivered two

18  terabyte hard drives which the government claims is a

19  mirror image of the hard drives on my client's computer.

20  It is those two terabyte hard drives that have been

21  delivered to my client that, when he tries to access the

22  information on the PC-based computers at the Queens

23  Private Correctional facility, where he is incarcerated,

24  he is unable to fully access that material.  He can access

25  some, I'm told, but a very small amount of it, probably

22

1    related to those PDF files which typically can be accessed

2    whether you have an Apple or a PC-based computer.

3            THE COURT:  So you are not having any trouble.

4    In other words, you can review them.  But it is a jail

5    issue?

6            MR. HALEY:  No, Judge.  I do not physically have

7    the two terabyte hard drive devices.  I turned them over

8    to my client.  Why?  Because they contain two terabytes of

9    information.

10           He is actively involved in his defense.  He

11   reviews the material.  Then we meet.  I can take a look at

12   what is relevant material.  So he is the starting point

13   for this Rule 16 material.  And I do want to address that

14   a moment, judge.  That is the issue.  The return of the

15   laptop, not only do I believe is warranted under the

16   Second Circuit case I sent to you; and, with all due

17   respect to your Honor, I don't believe that the arguments

18   that the government has advanced in any way undermine the

19   principle as set forth, and I believe it is the clear

20   direction that is set forth in the *Ganias* case, as to how

21   a defendant, when the government's able to acquire, as

22   they have here, mirror hard drives of the computer, under

23   what circumstances must they return that computer, laptop,

24   original laptop, to the defendant.  And I believe it

25   clearly sets that forth.

23

1          I don't want to belabor the point, judge.  You

2    want a brief filed?  I would absolutely give your Honor

3    the brief.  I would respectfully suggest your Honor take a

4    look at that decision.

5          So from my perspective, judge, the issue at this

6    juncture is not whether or not the defense can or should

7    engage in further efforts to obtain a computer that may or

8    may not be able to access the terabyte hard drive.  That

9    is not the issue.  He is entitled to his laptop back.

10   *Ganias* says he is entitled to his laptop back.  The

11   government is protected because they have the mirror hard

12   drive.  The mirror hard drive in their possession allows

13   them to conduct the privilege review, do everything they

14   need to do, Judge, to address those issues because it is

15   just that, a mirror hard drive.  It is the same

16   information.

17          So I made that point, your Honor.  I believe I

18   have perhaps made that point ad nauseam, judge, and I

19   apologize to the court for doing that.

20          THE COURT:  So you can file it at your

21   convenience and I will look at it whenever it comes in.

22   In the meantime, particularly in case Mr. Haley turns out

23   to be incorrect, because I'm somewhat skeptical that it

24   would be appropriate to return the computer at this

25   juncture given what I have already outlined, I want the

24

1   government to look into it.

2           It seems to me that, given the critical role

3   Mr. Kenner is playing in the review of the information,

4   that Mr. Haley would be able to do that from his office.

5   It doesn't assist him if Mr. Kenner can't do it from the

6   jail.

7           So I don't know if you want to look into that

8   issue or not, but I would ask that you find out why in

9   that facility Mr. Kenner can't access and look at that

10  that.

11          MR. MISKIEWICZ:  No, your Honor.

12          THE COURT:  Obviously, I have no reason to

13  believe that what Mr. Kenner is telling his lawyer is

14  inaccurate.  The government should try to find out how

15  they can address that within the jail by maybe bringing in

16  additional equipment or a computer program, because that

17  has to be addressed.

18          MR. MISKIEWICZ:  Yes, your Honor.

19          THE COURT:  Okay.  So are there any other

20  outstanding issues the defense wants to raise before we

21  select another date?

22          MR. HALEY:  Yes, your Honor.  May I approach a

23  moment, judge?

24          THE COURT:  Yes.

25          MR. HALEY:  Your Honor, in April of this year I

25

1   was appointed as substitute counsel for Mr. Kenner,

2   Mr. Kenner having previously been represented by Randi

3   Chavis of the Federal Public Defenders.

4          Now, on my representation or appointment to

5   represent Mr. Kenner, I did in relatively short order

6   obtain the file from Miss Chavis; I think the same day,

7   actually.  I think before I appeared, I obtained her file

8   because I was aware I was going to be appointed to

9   represent Mr. Kenner.

10          At that point in time, judge, the government had

11   delivered 20 disks of Rule 16 material.  And these are

12   computer disks, judge, the CD-ROM disks, that contain

13   videos that contain recorded telephone calls, that contain

14   bank documents, a myriad of Rule 16 material.  I have a

15   list of what they had provided by that date.

16          And indeed, Judge, it was on March 24, by way of

17   letter to Miss Chavis, that they supplemented that with

18   delivery of the two terabyte portable hard drives.  That

19   was in April, judge.  Since that time the government has

20   delivered to us 52 additional disks of Rule 16 material.

21          Now, in April and I believe in June, we had an

22   April court appearance and we had a June court appearance.

23   June 5, I believe, judge, the court made inquiry, given

24   the fact that my client was arraigned on the indictment in

25   November of 2013, as to the status of the Rule 16

26

1    disclosure.  And the government advised the court, at that

2    time Miss Capwell was representing the government, and I

3    have every reason to believe it was a good-faith

4    representation to the court, that there was about 15

5    percent of the Rule 16 material that had yet to be

6    delivered to the defendant.

7         Your Honor, as I recall, said:  *50 percent*?

8    Struck by the fact that perhaps it was that much discovery

9    still outstanding.  And the response was:  *No, your Honor.*

10   *15 percent.*  And in June, specifically June 5, when we

11   were talking about the next date for purposes of a status

12   conference, a suggestion was made, actually by myself,

13   Judge, that rather than putting it in a shorter time

14   period where we simply report back to the court that we

15   are still engaged in the discovery process, that we get a

16   longer date, specifically today's date, from June 5 to

17   September 2, in order that these discovery disputes, to

18   the extent we were able to resolve it, could get resolved

19   after the government completes the Rule 16 disclosure.

20        At that point I thought:  15 percent remaining?

21   I get that 15 percent in relatively short order.  That

22   gives me three months to absorb this material by way of

23   conversation with my client.

24        And by the way, Judge, just so you can

25   appreciate, and I know you are sensitive to this.

27

1    Whenever you have a client who is in prison, it
2    necessarily inhibits the ability of the defendant to
3    adequately prepare for trial, particularly in a case so
4    heavily laden with documents as this case is.

5            So, at least from my perspective, 15 percent
6    remaining, I get it within that three-month period and
7    then within that three-month period I have an opportunity
8    to review the material with my client.

9            What occurs, Judge, on a timeline is, when I
10   receive the Rule 16 material, the disks, from the
11   government, I review it, I download it to a standalone
12   hard drive that I have in my office, and then I forward it
13   along to my client through the US mail.

14           I cannot, pursuant to the rules of the Queens
15   Private Correctional Facility, physically bring the disk
16   to my client when I see him.  I have to send them to him
17   in advance.  He then has to have the opportunity to be in
18   the law library to view them.  Once he views them, I meet
19   with him and we go over the Rule 16 material.

20           What has transpired, Judge, is not 15 percent
21   and not 50 percent, but based upon what I have been
22   provided, and a great deal of which was only provided
23   Friday of last week, Rule 16 material has not been
24   delivered in a timely fashion.  It has been delivered in a
25   dilatory manner, Judge, from our perspective.

28

1          It is absolutely critical that the defendant be

2     given sufficient time to absorb this material.  Let me

3     give you a specific example, judge, so you have some sense

4     as to what is involved here.

5          By letter dated August 22, and I received the

6     file on August 25, what occurs is, the government files

7     its ECF letter.  That is filed the same date.  They then

8     mail out the hard copy with a disk because, of course, the

9     disks are not downloaded onto ECF.  I get that a few days

10    later.  I review it and send it off to my client.

11         So they send us, August 22, Judge, 11 disks.

12    Eleven.  One of the disks in particular had 620 megabytes

13    of information on it.  It took 11 minutes for me to

14    download that disk onto my hard drive, separate hard

15    drive, so that I have a copy of that Rule 16 discovery.

16    There are 911 items on that one disk, alone.

17         A week, less than a week, almost a week before

18    today's court appearance, we get 11 disks.  I won't go

19    through the whole list, judge, but let me say one of the

20    disks delivered specifically and, Judge, for purpose of

21    the record BNK-FR-00000001 says:  *Copy of CI Romanowski*

22    *wire*, and then as I queue it up, it says *Enter Data*

23    *Password*.  So I can't access that Rule 16 discovery

24    information until they provide the password.

25         It appears to me, Judge, what the government did

29

1    is saw the deadline approaching; we need to dump a lot of

2    Rule 16 information on the defense.  And they didn't

3    bother, judge, apparently to say:  Wait a minute, we ought

4    to review this before we send it to the defense in order

5    that they at least have a password to access that

6    particular disk.

7              On one of the disks, judge, there are 28 items,

8    4.11 megabytes of information.  The first entry records,

9    some of it is readable, yet file IPROOCR says:  *Select*

10   *the encoding that makes your document readable,"* and it

11   gives a whole list of selections.

12             Perhaps the government, as they fulfill their

13   Rule 16 obligations, Judge, when they send that kind of

14   material to the defense, would at least give the identity

15   of the program that you need to have in order to open up

16   that particular document.

17             Judge, what occurs as well is, on August 29 I

18   received a letter.  August 29 is Friday, judge.  I'm sure

19   your Honor will recall, the Friday before Labor Day.  I

20   was not in my office that day but the ECF appeared and

21   that discovery contains 11 more disks.  I know that letter

22   because it is on ECF.  I was in my office this morning at

23   7 o'clock.  I'm still awaiting those 11 disks to come in,

24   which I have yet to receive.  I will have to go through

25   the process of downloading, and I have explained the

30

1    process by which my client obtains that information.

2              There is, Judge, a very significant issue from

3    my perspective as relates to the government's delay in

4    delivering Rule 16 material notwithstanding the extensive

5    period of time within which the court gave them to

6    complete this task, and that specifically, judge, has to

7    deal with recorded conversations of my client as well as

8    that of his codefendant, Tommy Constantine.

9              Subdivision A1A of Rule 16, the very first

10   paragraph in Rule 16, directs the government to deliver

11   recorded statements of the defendants.  The first time

12   after my client's arraignment in November of 2013 that we

13   received the first recorded statement of my client on Rule

14   16 discovery is by letter dated August of 6, 2014.  And

15   those are recorded telephone calls between my client and

16   Mr. Constantine.

17             There is also, Judge, on that disclosure,

18   recorded conversations between my client and Timothy

19   Garren, who we believe to be the, as they allege,

20   unindicted coconspirator in the indictment.  There is also

21   recorded conversations between Mr. Constantine and Nick

22   Privitelo, who we believe to be John Doe No. 15.

23             In view of the fact, judge, that it took them

24   from November to August to deliver the first recorded

25   statements, and I will get to the fact that only recently

31

1   have we received additional recorded conversations, in

2   view of the fact it took the government that long to

3   deliver recorded statements which are critical to the

4   defense -- by the way, Judge, very critical in terms of a

5   motion that I believe is merited to be filed in this case

6   for a Rule 14 severance due to antagonistic defenses; but

7   in view of the fact it took so long, I filed a discovery

8   demand, judge, that same day.  And it is a rather detailed

9   discovery demand.  I would invite your Honor to take a

10  look at it.

11          I would invite your Honor to make a

12  determination in terms of what I ask in that discovery

13  demand whether it is outside the statute or whether it is

14  consistent with the statute.  I am requesting 404B

15  material be delivered.  I'm requesting 807 notice be

16  given.  I'm requesting Brady material be given.

17          And I say that to your Honor because in other

18  cases where I have filed that demand, it is routinely

19  ignored by the government and I receive the Rule 16

20  discovery in due course, I have an opportunity to review

21  the Rule 16 discovery, I'm able to do my due diligence in

22  accordance with Fry and Laufler and make a recommendation

23  as to my client which lots of times results in a plea.

24          So it doesn't become an issue in that kind of

25  scenario, judge.  It is here because this case is going to

32

1    trial.  It is an issue here because Mr. Kenner will not be

2    entering a plea of guilty at any point in time to any part

3    of the indictment.

4            What we have had occur since then, judge, is, we

5    have had additional disclosure of telephone calls from the

6    prison, recorded by Mr. Constantine, by letter dated

7    August 28.  I have yet to receive that.  I did receive, as

8    I went to my office this morning, the agent notes

9    reflecting statements made by Mr. Constantine and calls,

10   emails made by Mr. Constantine August 27, August 28,

11   Judge.  I received the agent's notes reflecting statements

12   made by Kenner during the interview on June 24, 2009.

13   Calls obtained from prison facilities based under PK calls

14   1 through 7 and related records.

15           Judge, how does it take the government from

16   November 2013 to August of 2014 to deliver recorded

17   statements that were clearly in their possession as far

18   back as 2009?

19           Judge, why do I bring that to your Honor's

20   attention?  Because my position, judge, in terms of

21   ongoing discovery, is this.  The government has in its

22   possession my letter dated August 14, 2014, wherein I make

23   specific requests for Rule 16 material.  I asked the

24   government respond paragraph by paragraph to each request.

25   To the extent that they have already provided all the

33

1    recordings, then they simply may answer that August 14,

2    2014, discovery demand by way of that response.  And here

3    is why it is critical, judge.

4         Based upon the recordings that I have received

5    to date, I don't even know if they are complete at this

6    point, Judge.  Based upon the recordings that I have

7    received to date and the statements I have received from

8    my client, purportedly from my client, as well as

9    Mr. Constantine, there is from my perspective, judge, an

10   antagonistic defense such that severance has to be

11   warranted because in these calls what you hear is, you

12   hear Mr. Kenner accusing Mr. Constantine of misdeeds; you

13   hear Mr. Constantine accusing Mr. Kenner of misdeeds.  It

14   is that type of antagonistic defense, Judge, that exists.

15   And indeed, in my opening statement to the jury I may very

16   well, and likely will be adverse to the interests of

17   Mr. Constantine, stepping in the shoes of the prosecutor

18   during my opening statement.  So that is why it is

19   critical.

20        But Judge, how do we begin to even address,

21   let's say, filing a date for motions until the Rule 16

22   disclosure has been complete?  For one of those very

23   reasons.

24        You know, Judge, while I hope I still have your

25   Honor's attention.  As far as the subpoenas are concerned,

34

1   let me at least state on the record my position.  Rule 17

2   allows my client the right to seek subpoenas of third

3   parties for purposes of obtaining information material to

4   his defense.  And that is how the statute reads.

5          I'm familiar with *United States v Nixon*.  *United*

6   *States v Nixon* is clearly distinguishable from this case,

7   judge.

8          *United States v Nixon* involves an instance where

9   the federal government served subpoenas on Richard M.

10  Nixon --

11         THE COURT:  I don't want to go through the Nixon

12  case.  I'm familiar with it.

13         But Rule 17, whatever subpoenas, whatever motion

14  you want to make, I have already told you you can file

15  that whenever you are ready.  So I don't want to go back

16  to that.

17         MR. HALEY:  Very well.

18         THE COURT:  Mr. Conway, do you have any Rule 16

19  issues?

20         MR. CONWAY:  The issue I have, your Honor, is

21  the fact that, and Mr. Haley covered it, in the last

22  roughly three weeks, it might be three and a half weeks, I

23  have gotten seven different discovery letters and my

24  estimation is about 60,000 pages of documents and about 30

25  hours of phone calls.

35

1          I don't have a specific motion to make on them

2     but that is going to take some time to go through.  So I

3     think we are going to need again a lengthy period, judge,

4     before we can set a motion schedule.

5          And I think Mr. Haley is correct, from what I

6     have heard so far, and I have only scratched the surface,

7     it seems to be a very real and legitimate set of motions

8     that are going to be made here.

9          THE COURT:  Let me hear from the government.  I

10    want to understand a little more why the volume of

11    discovery is so high at this point versus, I guess, what

12    Miss Capwell had thought previously.

13         MS. KOMATIREDDY:  I'm happy to address that,

14    your Honor.  Let me just go back to the timeline a little

15    bit.

16         I understand the last status conference in this

17    case was in June of this year.  At that time AUSA Capwell,

18    defense counsel is correct, estimated that there was

19    approximately 15 percent of discovery remaining.

20         Also at that time the government received a

21    number of additional documents.  We received a number of

22    additional boxes from the Southern District of New York

23    more recently.  In an effort to review all documents that

24    we believed were relevant and carry out our discovery

25    obligations in a diligent manner, we received documents,

36

1   requested to receive documents, from the Securities and

2   Exchange Commission.

3           Given that additional volume, that was not taken

4   into consideration in AUSA Capwell's estimate at that time

5   when she may have given only the documents before her at

6   that time.  Since June, when AUSA Miskiewicz and I have

7   taken over this case, we have done our best to conduct our

8   discovery review in a diligent manner, at the same time

9   reading up on this case.

10          There are a couple of specific items that I do

11  want to address from Mr. Haley's argument.  First, the

12  frequency of discovery letters is simply a product of our

13  trying to review and get out discovery as soon as we are

14  believe to review it.  So that there is no delay in

15  actually handing discovery over from the government to the

16  defense.

17          I'm the not sure the number of disks is as

18  relevant as just the amount of material.  A huge amount of

19  material, specifically the August 22 letter that Mr. Haley

20  references which included a production of four disks that

21  contained approximately 60,000 pages of documents, was

22  material that was produced in response to Mr. Haley's

23  request.

24          Mr. Haley specifically requested documents that

25  had been produced to the Southern District of New York by

1    counsel for Kenneth Jowdy.  We obtained those documents.

2    Although we do not agree with Mr. Haley's representation

3    of those documents as Brady material, out of an abundance

4    of caution and in order not to unreasonably delay Rule 16

5    discovery, we simply turned them over.

6          In that same vein, Mr. Haley complains that

7    there was a password missing in these letters.  I think

8    your Honor will notice if you review the letters, whenever

9    there is a password required, the government does provide

10   a password.  In fact the very password that Mr. Haley

11   complained of in the August 22 letter it states:  *For FR1*

12   *the password is*, and it lists the password, which I won't

13   put on the record.  But it is in the ECF filing.  So I'm

14   not sure.

15         THE COURT:  All right, let me ask two questions.

16         First, why did it take so long to produce the

17   recorded conversations?  I would think that they would

18   have been prioritized.

19         Why did they take so long?

20         MS. KOMATIREDDY:  Your Honor, I turned them over

21   as soon as I received them.

22         There are some recorded conversations that we

23   are receiving from victims.  There are some -- and I will

24   say that we are, I still have a few that I have to turn

25   over later today.

1    We ran into our own issues in terms of age of
2  computers having had data deleted and having to reacquire
3  those recorded conversations.  We acquired other data and
4  emails that had been sent to us.  As soon as we got those
5  the last few weeks, we pulled out those recorded calls and
6  sent them over.

7    We are still awaiting some jail calls from the
8  jail facility, which we will turn over as soon as we
9  receive them.

10    And, as I said, we are attempting to meet these
11  obligations as diligently as possible.  As a first pass,
12  we are attempting to review the material, and to the
13  extent that there is a number of material that is Rule 16
14  and not Rule 16, early 3500, we have decided, in order not
15  to hold up Rule 16 discovery, to simply turn over that
16  material wholesale since the defense at the end will get
17  it anyway.

18    So we are doing our best, your Honor.  As a
19  good-faith estimate, I can state that, just to correct the
20  record, Mr. Haley said that the first recorded
21  conversation received was August 6.  That is actually not
22  true.  Miss Capwell turned over a recorded conversation
23  between these two defendants on February 10 of this year.
24  That is reflected in the record and is in the discovery
25  letter.

39

1          So the recorded conversation that she had, she

2     turned over.  And as I have continued to receive them, I

3     have turned it over.  Our expectation at this point is to

4     hand over additional discovery later today.  And we are

5     still awaiting some documents from the SEC.  We are

6     awaiting some documents, as I said some jail calls, from

7     BO.  And we are currently processing the review of a

8     number of emails that require redaction.  We expect to

9     have all of that out within the next week.

10          THE COURT:  So basically you think that any

11     remaining Rule 16 would be completed by the end of next

12     week.

13          MS. KOMATIREDDY:  Yes, your Honor.

14          THE COURT:  All right.  Other than privileged.

15          MS. KOMATIREDDY:  Yes, other than privileged.

16          THE COURT:  I understand that.

17          Go ahead, Mr. Haley.

18          MR. HALEY:  As relates to the government's

19     explanation as to the difficulties that they have

20     encountered in providing from my perspective Rule 16

21     disclosure.

22          Agent Galiano, who is present in the courtroom,

23     has been the special agent in charge of this investigation

24     for some period of time.  He was in charge of the

25     investigation, I should say participated in the

1    investigation, when my client was first investigated by

2    the Securities and Exchange Commission.

3            He was, as best I know, the Special Agent in

4    charge who participated in the investigation when it was

5    first investigated by the US Attorneys office for the

6    Southern District of New York presumably, judge, which was

7    then presented to a grand jury in 2011.

8            Having listened to two of the witnesses who will

9    be testifying in this case, two John Does, Mr. Berard and

10   Mr. Sidor, definitively decided that they would not

11   proceed any further with either the investigation or

12   indictment of my client, Mr. Galiano picked up his file

13   and came here to the Eastern District and presented his

14   file to the Eastern District.  That is why we are here

15   today.

16           So to suggest that somehow there has been this

17   difficulty in obtaining this information, from my

18   perspective, Judge, based upon what I know, this body of

19   information has been in the possession of the government

20   for some period of time.

21           When the government says we encountered a

22   difficulty in terms of the agent's laptop computer, some

23   files were deleted and we have to reconstitute those

24   files, judge, that doesn't give me great assurance that my

25   client's laptop will be handled in any better fashion.

41

1    I'm sure it will be, Judge.  Let me explain, judge.  One

2    final comment.

3           In the August 29 letter, the first page, as they

4    explain to your Honor how from their perspective they have

5    abided by, I think it was at your Honor's direction, that

6    discovery proceed in an expeditious fashion.  They write

7    in the first page, also on June 25, 2014, generally

8    reflected that the government identify documents created

9    by the defendants which contained forged signatures.

10          On August 29, 2014, the government identified

11   such documents and provided them to the defense.  Again,

12   Judge, this is the August 29 letter.

13          Why are the forged documents relevant?  I think

14   your Honor knows why forged documents are relevant.  If

15   they exist, they exist.  If they don't exist, that's

16   relevant to the defense, judge.

17          As a matter of fact, whether or not they are

18   forged or not, the defendant has a right to take a look at

19   the documents, perhaps conduct additional discovery by way

20   of Rule 16 subpoenas to get all the records that surround

21   the creation of those documents to address the forgery.

22   The defendants may, Judge, want to engage an expert

23   witness to take a look at the alleged forged documents to

24   address that by way of expert testimony.

25          But on June 25 I made a demand, and on August

42

1    29, last Friday, they finally identify it?  When, in a

2    bail application letter to your Honor in November they

3    cite the forged document as one of the reasons why your

4    Honor ought to detain my client.  They had been in

5    possession of it since November and they provided them

6    last Friday?

7            Judge, you know, I have yet to receive them

8    because, once again, this letter is dated August 29.  I

9    have yet to receive the hard copy.  I have yet to receive

10   the disk.  Once I receive the disk, I will be able to take

11   a look at these alleged forged documents.  It is going to

12   be some period of time before I'm going to be able to

13   significantly investigate the allegations as relate to the

14   forged documents, given late disclosure.

15           Thank you, judge.

16           THE COURT:  Okay.  Obviously for this

17   conference, although I have seen back and forth in the

18   discovery, this is the first time these issues are being

19   raised with the court.  And I'm prepared obviously to have

20   more strict supervision of the discovery process if the

21   defense has any issues with the government's timeliness or

22   their responsiveness in terms of the scope of what is

23   being asked for.

24           But prior to this time, I just assumed that all

25   the lawyers were working out those differences amongst

43

1   themselves, and that is why I set it down, as you

2   requested, for a long period of time for the remaining

3   discovery to be produced.

4          I don't believe anything that I have heard is

5   any indication that the government has operated in bad

6   faith or is withholding discovery or delaying discovery

7   for any strategic reason.  Obviously, this is a complex

8   case.  There are a lot of documents, a lot of discovery,

9   and the government is producing it on an ongoing basis.

10          In terms of moving forward, the government has

11  represented that the Rule 16 discovery is going to be

12  completed by the end of next week.  And I'm going to ask

13  the government to respond to Mr. Haley's letter, whatever

14  he is requesting in that letter, whether they have already

15  produced it or they don't believe that they need to

16  produce at this time, so that Mr. Haley, to the extent

17  that he believes that your response is inadequate, can

18  then file a motion with the court.

19          Again, typically the lawyers work out the timing

20  of any Rule 404(b) disclosures by the government, but if

21  you cannot reach agreement on those types of issues, then

22  Mr. Haley can make a motion with the court.

23          So the government is going the produce any

24  remaining discovery in its possession by September 12,

25  Rule 16 discovery that is, and respond to Mr. Haley's

44

1    letter by the 19th of September.

2              I will be guided by the defense in terms of how

3    you want me to -- obviously, Mr. Haley, once you get that

4    letter, I can set a schedule for a motion.  But in terms

5    of discovery motion, if you want, I can put it down for

6    another conference in 30 days, and you and Mr. Conway can

7    decide how you want to proceed in light of what has

8    transpired today and what dates I have set.

9              What would you like to do?

10             MR. HALEY:  Thank you.

11             My request would be that we set a status

12   conference date and report on these issues 30 days from

13   today.  Keep it on a tight line.

14             THE COURT:  Fine.

15             MR. HALEY:  Thank you, sir.

16             THE COURT:  Thursday, October 2, at 1 o'clock.

17             MR. MISKIEWICZ:  Your Honor, I have to appear

18   before the Second Circuit that morning.  I would like to

19   be here on that date.

20             THE COURT:  Do you want a different date, then?

21             MR. MISKIEWICZ:  I would ask for a different

22   day.

23             THE COURT:  October 3?

24             MR. CONWAY:  I'm going to be out of town on the

25   third.

45

1          THE COURT:  October 6.  Monday.

2          MR. CONWAY:  I am gone that Friday and Monday,

3    judge.  I can do the 7th.

4          THE COURT:  The 7th at 1 o'clock.

5          MR. MISKIEWICZ:  Thank you, your Honor.

6          MR. HALEY:  That works, judge.

7          THE COURT:  If you can, have your client execute

8    the speedy trial waiver to that date.

9          MR. HALEY:  Yes, sir.

10          THE COURT:  For grounds, just put review of

11    discovery.

12          MR. CONWAY:  Judge, both counsel and defendants

13    have executed the waiver and I'm providing it to

14    Mr. Miskiewicz.

15          THE COURT:  Okay.  Mr. Kenner and Mr.

16    Constantine, you have heard what we have discussed today.

17    The government is going to complete the Rule 16 discovery

18    by the end of next week and is going to respond to

19    Mr. Haley's discovery letter.  And we are going to have

20    another conference October 7 to discuss hopefully a trial

21    date and a date for any motions that your lawyers want to

22    make on your behalf.

23          By signing this waiver, you are agreeing to

24    exclude the time under the Speedy Trial Act until August 7

25    for that purpose.

46

1          Is that what you want to do, Mr. Kenner?

2          MR. KENNER:  October 7, your Honor?

3          THE COURT:  Yes.

4          MR. KENNER:  Yes, your Honor.

5          MR. CONSTANTINE:  Yes, your Honor.

6          THE COURT:  Any objection to me inserting as

7    grounds the review of discovery?

8          MR. HALEY:  No, sir.

9          MR. CONWAY:  No objection, your Honor.

10          THE COURT:  I am inserting *review of*

11    *discovery.*"  No objection?

12          MR. HALEY:  No, sir.

13          MR. CONWAY:  No, sir.

14          THE COURT:  Pursuant to that request, we will

15    calendar the case for October 7, at 1 pm, for a status

16    conference.

17          I'm excluding the time from today until October

18    7 in the interests of justice under Title 18, United

19    States Code, Section 3161H7A, in order to allow the

20    defendants and their counsel to continue to review the

21    voluminous discovery, both that they have received and the

22    additional discovery they are going to receive over the

23    next two weeks, and for them to decide what motions they

24    want to make and how they want to proceed with respect to

25    the defense of the case.

47

1          I find that the interests of justice served by

2    granting the continuance outweigh the best interests of

3    both the public and the defendants in a speedier trial,

4    and I so order the waiver.

5          Obviously, if any additional issues come up

6    between now and then, you can always write the court

7    before that date.  But I assume if there are any remaining

8    issues regarding passwords or things of that nature, the

9    government will provide them.

10          And obviously the government, within a week from

11    today, could just send me a letter on the computer issue

12    at the jail, telling me whether or not they found a way to

13    deal with that issue.  I don't want to wait until the next

14    conference to deal with that.  Okay?

15          MR. MISKIEWICZ:  Yes, your Honor.

16          MR. HALEY:  Judge, a final issue, as relates to

17    the Rule 17 subpoenas.

18          From my reading of the statute, it appears to me

19    the defendant in this instance has an opportunity to make

20    an ex parte application to the court.  Is your Honor

21    directing that it be done by way of motion, which

22    obviously is not ex parte, then has disclosure to the

23    government?

24          THE COURT:  No.  It can be by way of a motion.

25    An ex parte motion.

48

1          MR. HALEY:  I am sorry, judge?

2          THE COURT:  An ex parte motion to me as to why

3  it is appropriate.  And within that you would justify why,

4  even though it is ex parte, but explain why I shouldn't

5  give notice to the government.  Okay?

6          MR. HALEY:  In that regard, and I think your

7  Honor will appreciate it, the difference between Rule 16

8  and Rule 17, it speaks for itself.  But to the extent that

9  I receive Rule 16 material, and hopefully now we have some

10  sort of deadline, I'm not going to request, by way of Rule

11  17 subpoenas, what I have already received.  Then the

12  government clearly has the standing to address that Rule

13  17 subpoena.

14          But I want the court to understand my position

15  now.  It is not my intention to get what I have already

16  received from Rule 17.

17          THE COURT:  No.  I understand that.  I assume

18  you wouldn't ask for similar material again.  But often

19  they are submitted ex parte and I decide them ex parte,

20  depending upon what is being requested.

21          So in the first instance you can submit them ex

22  parte, and if I believe it is an appropriate response from

23  the government, I will let you know before I do that so

24  that you can be heard.

25          MR. HALEY:  Thank you, your Honor.

49

1        THE COURT:  Any other issues that anyone wants

2   to address?

3        I would ask the government, so we don't have

4   problems later on, to make sure that if you haven't done

5   so already, that you canvass all the victims that you are

6   relying on in this case to make sure they have no

7   additional recorded conversations or other Rule 16

8   materials in their possession, because I don't want to

9   have a situation where a victim shows up with some box of

10  recordings or other items three months from now.  So, if

11  you could, canvass the victims on that.

12        MS. KOMATIREDDY:  Yes, your Honor.

13        THE COURT:  Anything else from the defense?

14        Thank you.  Have a good day.

15        (Proceedings adjourned at 3 pm.)

16

17             CERTIFICATE OF COURT REPORTER

18  I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

19

20

21             _____
                 Dominick M. Tursi, CM, CSR

22

23

24

25