1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

UNITED STATES OF AMERICA,            :      13 CR 0607

      v.                             :      U.S. Courthouse
                                    Central Islip, N.Y.
PHILIP KENNER and                    :
TOMMY C. CONSTANTINE,
                             : TRANSCRIPT OF PROCEEDINGS
              Defendants.
                           :   November 7, 2014
-------------------------------X   11:40 a.m.

BEFORE:

      HONORABLE JOSEPH F.  BIANCO, U.S.D.J.


APPEARANCES:

For the Government:  LORETTA E. LYNCH
                    United States Attorney
                    100 Federal Plaza
                    Central Islip, New York 11722
                    By:  JAMES M. MISKIEWICZ, ESQ.
                          SARITHA KOMATIREDDY, ESQ.
                          Assistants, U.S. Attorney


For the Defendants:  RICHARD D. HALEY, ESQ.
                    For Defendant Kenner

                    ROBERT LaRUSSO, ESQ.
                    ANDREW OLIVERAS, ESQ.
                    For Defendant Constantine

Court Reporter:      HARRY RAPAPORT, C.S.R.
                    United States District Court
                    100 Federal Plaza
                    Central Islip, New York 11722
                    (631) 712-6105


Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

2

1           THE CLERK:  Calls case 13 CR 607, United States

2    v. Kenner and Constantine.

3           Counsel, please state appearance for the record.

4           MR. MISKIEWICZ:  James Miskiewicz for the United

5    States.

6           Good morning, your Honor.

7           MS. KOMATIREDDY:  Saritha Komatireddy.

8           Good morning.

9           MR. LaRUSSO:  Robert LaRusso for

10   Mr. Constantine.  And Mr. Andrew Oliveras is also here.

11          THE COURT:  Good morning.

12          MR. HALEY:  Richard Haley for Mr. Kenner, who is

13   seated to my right.

14          THE COURT:  Good morning.

15          I see both defendants are here.

16          I have received a series of letters that have

17   come back and forth since the last conference, some of

18   them between counsel that I was cc'd on, as well as ones

19   we have discussed and which were directed to me.  I want

20   to speak to those issues.

21          Before we get to the issue of Mr. Kenner's

22   computer, as well as the issue of bail, I do want to

23   address the case overall, and discuss the case going

24   forward and then we can deal with those issues.

25          I know it is reflected in the letters, but why

3

1   doesn't the government indicate how we are doing with the

2   discovery and where it stands?

3          The privileged review is completed I saw from

4   the letter.  Is that correct?

5          MR. MISKIEWICZ:  Yes, your Honor.

6          Also, the privileged team provided counsel

7   another duplicate set of material that was in the imaged

8   copy in PDF format.  So it is another format to review all

9   that material to hopefully resolve the issues previously

10  raised by not being able to have one type of machinery

11  over the other.

12         So, the privileged review I think is on its way

13  to completion.  I would imagine at some point Mr. Haley

14  will have discussion with the privileged AUSA, and

15  resolve -- or there may be a dispute about what he views

16  not privileged and what he views as privileged.  And that

17  will take place as part of that discussion.

18         As far as Rule 16 discovery, and that came up in

19  some of the back and forth letters, and I feel confident

20  saying Rule 16 is completed, and frankly, completed a long

21  time ago, with respect to material under indictment now.

22  And not to sort of head off Mr. Haley's criticism, but the

23  bottom line is we have provided open file discovery in

24  this case.  We provided voluminous materials arising from

25  the civil litigation that follows the defendant in this

4

1   case.

2          And rather than put the burden on Mr. Haley to

3   apply for CJA funds to obtain material that is a matter of

4   public record in other districts and elsewhere, we have

5   voluntarily provided that.  Some of that has not come to

6   us easily, but we provided it in a rolling type fashion.

7          But the material he complained of is for the

8   most part material he was not indicted on under the

9   indictment.

10          As far as Rule 16 is concerned, this is a

11  continuing investigation.  There may be other witnesses we

12  eventually need to speak to.  There may be other matters

13  or items that we may seek search warrants for and other

14  subpoenaed material may be coming forward either on the

15  existing counts or new counts in the future.  But I have

16  no problem representing to the Court that not only have we

17  completed Rule 16, we completed it a long, long time ago.

18          THE COURT:  Okay.

19          I will hear from defense counsel in terms of --

20  I did want to address something.

21          I saw the back and forth about inspecting I

22  guess the physical computer.  And I don't want to get into

23  a back and forth.  But the bottom line is that Mr. Haley

24  just called Mr. Miskiewicz, and arrange a time where you

25  and your client can be present.  The marshals will produce

5

1    your client, and the government will have the computer

2    brought out to Long Island.

3            I don't think it is appropriate -- "appropriate"

4    is the wrong word.  But I don't think it is reasonable to

5    send a letter the day before saying I will be at your

6    office tomorrow at 1:00 o'clock and I expect the computer

7    to be there.

8            Call them up and arrange a time available to

9    everybody, and I'm sure it will be done.

10           Let me hear from counsel how you want to

11   schedule the case.  Do you wish to set up a pretrial

12   motion schedule?  How do you wish to proceed?

13           MR. LaRUSSO:  Mr. Conway couldn't be here today

14   and I'm standing in.  I have familiarity with the case,

15   but not to the extent he has.

16           I do know we are still reviewing discovery which

17   Mr. Miskiewicz indicated is quite voluminous.

18           My client reminded me that we have been unable

19   to access some of the information on the discovery,

20   particularly some of the emails.  In addition, there are

21   some audio tracks that contain nothing audible.

22           So, until I make a complete analysis and compare

23   notes with Mr. Conway, I can't address where we are in

24   view of the discovery.

25           I know there are a number of issues raised both

6

1    by Mr. Haley and Mr. Miskiewicz, which the Court will be

2    addressing in a few moments.

3         I'm supposed to be down before Judge Spatt for

4    sentencing, and what I will do is impose upon the Court if

5    it is not a problem, to just address two brief matters,

6    and if the Court and counsel can set an adjourned date,

7    and Mr. Oliveras is an attorney who can continue in my

8    absence.

9         Two issues, Judge.

10        As you probably know Mr. Constantine is under

11   very strict conditions of release, the GPS and the home

12   confinement.

13        Quite candidly, his Pretrial Services Officer in

14   his home state has actually asked him to try and leave his

15   home.  He has been following scrupulously the Court's

16   directions where they are concerned that he should be

17   getting some diversion from that kind of environment.

18   and what they have done is communicated with Christina

19   Borg (ph) here in the Eastern District, and told them that

20   they would not impose or request to make this kind -- they

21   would not oppose to make this request to your Honor.  And

22   it is to let him out of his house within a 100 yard area

23   so he can go across the street to the park with his two

24   children.  That is it.  But it would be subject to the

25   pretrial officer's approval.  There will be no movement

7

1    out of the house without his knowledge.

2             THE COURT:  That is fine.

3             MR. LaRUSSO:  I will have an order submitted to

4    the Court with respect to that?

5             THE COURT:  Yes.

6             MR. LaRUSSO:  I know we have had a number of

7    appearances here, and occasionally the Court would allow

8    Mr. Constantine to waive his appearance.

9             We have agreed on December 9th for adjourned

10   date, and if you could allow us to waive his appearance

11   unless something happens between now and then and he needs

12   to appear and then he can be produced if necessary. He

13   will be on telephone call if necessary, of course.

14            THE COURT:  I would not want him to waive his

15   appearance completely.  The only thing I would ever allow

16   in this situation if someone is living out of state to

17   occasionally be present on the phone.

18            Let me confirm that with him.

19            Mr. Constantine, your lawyer indicated that at

20   the next conference you wish to listen in on the phone

21   rather than to be in court.

22            Isn't what you wish?

23            DEFENDANT CONSTANTINE:  Yes, your Honor, just

24   due to the cost of travel.  If it is something simple we

25   can do it over the phone.

8

1          THE COURT:  The only problem is -- I'm willing

2   to grant that application.  But the only problem is we

3   don't know exactly what is going to come up at a

4   conference.  It may seem to be just a very short

5   conference, and it can turn out to be a much longer

6   discussion.

7          I will allow you to appear by phone.  But

8   obviously you should contact Mr. Conway or Mr. LaRusso.

9   If it turns out that another issue would be raised, either

10  you want to be here or they want you to be here, then you

11  can make arrangements to be here in person.

12          THE DEFENDANT CONSTANTINE:  I understand.  Thank

13  you.

14          THE COURT:  So, I have a waiver before me.  You

15  are proposing December 9th?

16          MR. LaRUSSO:  Yes, your Honor.

17          THE COURT:  Your client is willing to exclude

18  the time?

19          MR. LaRUSSO:  Yes.  I went over it with him and

20  he understands and has signed the form.

21          THE COURT:  Mr. Haley, in terms of moving

22  forward right now, is this what you and clear client would

23  like to do, and not set a motion for a conference?

24          MR. HALEY:  There will be an application to

25  appear before this Court before December 9th for purposes

9

1    of a bail hearing.

2          With respect to the December 9th date we are

3    willing to waive speedy trial to continue this.  On

4    December 9th I think we will be in a position to move

5    forward, with not only the supplemental trial schedule but

6    to set a trial date.

7          THE COURT:  I was hoping to do that today but

8    I'm fine given all the discovery to wait another month to

9    set the motion schedule and trial date.

10         Let me confirm it with your clients, there was

11   no reason written in on the waiver.  Can I just write

12   review discovery by the defense?

13         MR. LaRUSSO:  Absolutely, your Honor.

14         MR. HALEY:  Absolutely, your Honor.

15         THE COURT:  I will write that in.  Review of

16   discovery by defendant.

17         Mr. Constantine and Mr. Kenner, you heard the

18   attorneys, they are asking to adjourn this case until

19   December 9th so that they can continue to review the

20   voluminous discovery in this case, and obviously you can

21   continue to review it as well, and discuss with them so

22   you can decide what motions you wish to make prior to the

23   trial, and obviously be prepared for the trial itself.

24         By signing this waiver you are agreeing to

25   exclude the time under the Speedy Trial Act until December

10

1   9th for those reasons.

2           Is that what you want to do Mr. Mr. Constantine?

3           THE DEFENDANT CONSTANTINE:  Yes, your Honor.

4           THE COURT:  Mr. Kenner?

5           THE DEFENDANT KENNER:  Yes, your Honor.

6           THE COURT:  I will grant that request.

7           As Mr. Haley pointed out, I'm always available

8   to the extent issues come up, bail or anything else, you

9   can come in before this date.  Other than that the next

10  conference date is December 9th at 1:00 p.m.

11          I exclude the time from today to December 9th

12  under Title 18, United States Code, Section 3161(h)(7)(A),

13  in order to allow the defendants and counsel to review the

14  enormous discovery, and decide how to proceed with respect

15  to the motions and prepare for trial.  I find the ends of

16  justice are served by granting a continuance which

17  outweighs the interest of both the defendants and the

18  public in a speedier trial, and I have so ordered the

19  waiver.

20          So, you can go to Judge Spatt.

21          MR. LaRUSSO:  Thank for your indulgence.

22          THE COURT:  I will deal with the inspection of

23  the content of the computer requested by Mr. Kenner and

24  his counsel.  I have reviewed the letters, including the

25  government's declarations, and I received Mr. Haley's

1   response to that.  And I just want to focus both sides in

2   terms of my questions at this point.

3           Mr. Haley, I guess you want to have a hearing to

4   question the government experts who put in those

5   declarations.

6           I don't think that is necessary at this point

7   because they articulated in these declarations their

8   concern about any time you turn on a computer and start

9   accessing files, which I also think is self-evident, to me

10  at least, that when anyone goes on the computer and starts

11  accessing the files, that the metadata -- things can be

12  altered.  So, that is self-evident to me that that is a

13  concern at any time.

14          That obviously doesn't mean that the defendant

15  shouldn't ever be able to access the computer.  But that

16  is the issue.

17          The reason I offered you -- I don't believe a

18  hearing is necessary at this juncture is you and your

19  client haven't put anything in to dispute that.  In other

20  words, you don't have an expert declaration that says what

21  the government expert is saying isn't true, that nothing

22  happens when you access a computer, is that there is no

23  problem in terms of altering information, creating new

24  metadata.

25          So, you have not put in anything to dispute the

12

1    basics of what they are saying. So, I don't think there is

2    an evidentiary hearing necessary to call them in.

3         My further concern is not only have you not

4    disputed what they said about that, but you haven't really

5    explained to me as to why your client thinks he needs to

6    access the original computer at this juncture.

7         So, they put in something which I think

8    demonstrates good cause for why the computer shouldn't

9    just be accessed for no reason.

10        I think in most cases the defense doesn't access

11   the original computer, they get the image, whether in

12   child pornography cases or other cases there is no need or

13   request to access the original.

14        In light of the issues they raised, which I

15   believe are valid, and in light of the fact that I don't

16   think I have anything from a computer expert from your

17   side, or your client or yourself, explaining why you need

18   access to the original at this point, my concern is in

19   your letter you request not just access to a computer,

20   which I will clearly give you -- if you want an expert to

21   make their own mirror image and you don't want to rely on

22   the government's image, I think that is certainly

23   permissible for the defendant to do, to create their own

24   mirror images and they have concern about the government

25   doing that.  But that is not your request.

1          Your client hasn't indicated that he has

2    reviewed what the government has provided and believes

3    that there are additional materials on the computer and

4    not on the mirror image hard drive, or if they are

5    claiming they are on the mirror image, he doesn't belabor

6    on the original, giving a reason to examine the computer

7    directory to see if something happened.  We are not having

8    that situation here either.

9          It appears to me based on your letter that your

10   client would prefer every week to go to the U.S.

11   Attorney's Office for a few hours and review the documents

12   on the original computer.  That is not a reasonable

13   request.

14         It is the equivalent of the government producing

15   copies like in the old days, where they make photocopies

16   of all the documents and produce it to the defense, and

17   the defense saying we don't like the photocopies.  We

18   would like to sit in the conference room all day and have

19   the defendant excused from jail to review the originals.

20         Or another analogy would be if there was a

21   weapon in an evidence bag and it was a case involving

22   fingerprints, and the defendant says I want to open the

23   bag and handle the weapon.  And the question would be what

24   would be the reason to do that?  You are potentially

25   altering the item.  And it should stay in the evidence bag

**14**

1   unless the defendant has a reason for opening up the bag

2   and inspecting it physically.

3          That is my concern.  And you have not explained

4   to me why you believe at this point there is something

5   wrong with the mirror image the government has given you.

6          MR. HALEY:  Judge, perhaps I can allay the

7   Court's concerns in that regard.

8          Some time ago we were provided two stand alone

9   terabit hard drive of my client's Macbook computer.  It is

10  an Apple based operating system.

11         And I believe this issue has been indeed

12  explored before not only on the record, but by the way of

13  some letters to me.

14         I know your Honor is exceedingly busy but you

15  are always on trial when I pass this courtroom and that is

16  to the Court's credit.  And I don't think the Court had an

17  opportunity to look at those letters, nor should your

18  Honor look at those letters

19         Let me say, your Honor, what we have encountered

20  from day one is an instance where we were provided the two

21  terabit hard drive, and I have no doubt that they are

22  image copies of my client's Macbook computer. However, it

23  is an Apple based operating system, dumped into two hard

24  drives.

25         My client is incarcerated in the Queens

1    Correctional Facility.

2             The only computer there for his use is a PC

3    Microsoft based software computer.  Essentially when he

4    mates the terabit hard drive to the PC Microsoft based

5    computer he gets what he describes as Egyptian

6    hieroglyphics.  And I take him at his word as far as that

7    is concerned.

8             We have been unable to utilize the information

9    contained on that image hard drive and, therefore, the

10   dispute.

11            There are two letters, Judge, that I would like

12   your Honor to at least read before your Honor makes a

13   final determination on the issue.  And that is the

14   September 4th letter of Mr. Miskiewicz, when your Honor

15   asked Mr. Miskiewicz to explore this issue and my response

16   the following day.

17            So, rather than belabor the record with those

18   arguments, I respectfully, and I mean respectfully, ask

19   your Honor to look at those two letters so your Honor

20   would have a better understanding as to the problem we

21   encountered.  So that your Honor may have a better

22   understanding that this issue was a bona fide issue from

23   the defendant's perspective.  It is not a subterfuge and

24   not some sort of back doorway, as the government accuses,

25   to modify or adjust the original files on the data or

1    files contained on the original Macbook computer.

2             The letter addresses the problems I encountered

3    trying to resolve the matter myself without the

4    government's assistance.

5             All they said is here they are.  Here are the

6    hard drives.  If you can't access it, your problem.

7    Figure it out.

8             I'm paraphrasing it, your Honor.

9             If your Honor takes a look at those two letters

10   you will have a better idea of the issue.

11            THE COURT:  And I'm looking through my file

12   here, and I remember from my memory that I had

13   Mr. Miskiewicz check with the facility and make sure there

14   is no ongoing technical problem.

15            Is my memory correct on that?

16            MR. MISKIEWICZ:  Yes, your Honor.

17            And what the warden reported to me, although he

18   had frequent or daily contact with Mr. Kenner and he was

19   well aware of this issue.  He was never advised by

20   Mr. Kenner or Mr. Haley the results of that contact that

21   there was any technical issue.  And if there was a

22   technical issue he would be more than willing to resolve

23   it through whatever other technical means that would be

24   appropriate.

25            That is what they reported to me and that is

1  what I said in my letter.

2          MR. HALEY:  May I respond. Warden Cirello (ph)

3  has been a prince.  As a matter of fact, he has been so

4  cooperative I repeatedly told this Court my appreciation.

5  And with a different warden in place in a different

6  facility this case would have been consumed with discovery

7  disputes.

8          Every time I contacted him he was there for me.

9  Every time I ask for additional library time for my client

10  he gives it.  He has been extremely cooperative.

11          If you look carefully what the issue is, when

12  Mr. Miskiewicz contacted Warden Cirello (ph) he actively

13  reported he has been cooperative.  I have not even engaged

14  the government in that process.  It is the warden and

15  myself who resolved all those issues without government or

16  court intervention.

17          The problem is you are correct.  I have not said

18  Warden Cirello (ph), I need the Queens private

19  correctional facility to purchase a computer to put in

20  your facility that is an Apple based operating system

21  computer in order that my client might access those files

22  given to me by the United States Government.  I haven't

23  done that because I don't believe it is his

24  responsibility.

25          So, when Warden Cirello (ph) reports no

**18**

1    technical issues in this perspective.  He is right I have

2    not raised the issue with the warden.

3            He is aware my client had the two terabit hard

4    drive.

5            In my letter I was encouraged the last time we

6    were in court because when you asked the government to

7    look into the issue, and I also read the government's

8    previous submissions.  As I recall one of the submissions

9    said we, the government, will make a technician available

10   to help resolve this.

11           I thought that what might occur is there is to

12   be some discussion with the government's expert and the

13   Queens Correctional Facility to straighten this house.

14           To the extent you are raising it as a stalking

15   horse, have your technician come to the facility and

16   access the terabyte and put it in the computer and if this

17   comes up the way we say Mr. Miskiewicz can stand here and

18   say we have misled the Court, and I don't think that has

19   happened.

20           THE COURT:  I don't think your client is making

21   up the fact that he can't access the information.  I'm

22   just concerned that this has gone on for so long.

23           The bottom line is the following:  If the jail

24   does not have the equipment to process that hard drive,

25   then the equipment will be provided.  If it has to come

1   out of CJA funds it will.  And I will authorize you to

2   purchase a computer; and I will tell the jail it has to be

3   kept somewhere in the jail so he can review that hard

4   drive, unless the government has some alternative

5   suggestion or you have some alternative suggestion.

6           I think that is the answer, that the equipment

7   to read that particular hard drive has to be put into the

8   jail.  Unless you tell me there is another solution, that

9   is what I will do.  That is my solution.  My solution is I

10  will ask Mr. Miskiewicz to confirm with the warden if he

11  doesn't have the equipment to read that hard drive, and I

12  will do it in the -- you can do it in the next couple

13  days; and if the answer is yes, you can purchase then

14  under CJA funds the equipment necessary to have that at

15  the jail.

16          MR. HALEY:  Thank you, your Honor.

17          I am not an expert, if you look at Macbook

18  computers or Amazon dot com.  You can Google it.  There

19  are various models and various Mac type computers.  My

20  concern is I would purchase a Macbook computer and because

21  it has an old operating system that is not compatible with

22  the operating system of my client's current Mac

23  computer --

24          THE COURT:  Mr. Miskiewicz, by a week from today

25  I want you to confirm with the jail that that disk cannot

**20**

1    be reviewed -- someone should physically take that disk,

2    if they believe there is equipment there, and put it in so

3    someone can confirm that they have accessed that disk and

4    they have gotten the information that Mr. Kenner says he

5    can't get.  If they can't do that we will have another

6    conference to figure out the issue.

7            If they are saying we just don't have the

8    equipment to do that, then I will ask that you consult

9    with one of the government's forensic computer people to

10   describe what particular computer Mr. Haley would need to

11   obtain, what particular version he needs to acquire.  I

12   don't want him to go out and purchase the wrong version.

13           MR. HALEY:  Thank you.

14           I believe the simplest solution, assuming the

15   expert confirms what we are telling the Court, whether CJA

16   funds or funds of the government, it is coming out of same

17   taxpayer's pocket, can't they simply give us a compatible

18   computer?

19           I know from Warden Cirello (ph), based on

20   letters I have already sent to him, that people allow such

21   computers to come into the facility is.

22           THE COURT:  That would be better.

23           Mr. Miskiewicz, if there is some computer that

24   is already out there that the government has and can just

25   be loaned to the jail for the duration of this case that

1    would be preferable.  I don't know if it is possible.

2              MR. MISKIEWICZ:  I will make inquiry, your

3    Honor.  I don't want to speak for the office.  I have

4    never seen the government purchase a Macintosh operating

5    system.

6              THE COURT:  I don't mean purchase.  There may be

7    a used one not utilized sitting somewhere.

8              MR. MISKIEWICZ:  I will look into it.

9              THE COURT:  The government will get back to me

10   on that within a week.

11             On the issue of the request to inspect the

12   internal contents of the computer, my ruling is that the

13   request is denied without prejudice to renewal by the

14   defense once Mr. Kenner and his lawyer got an opportunity

15   to review the mirror image, and or expert to review the

16   mirror image.

17             And the expert that they retain, if they want to

18   do their own mirror image for any reason I will permit

19   that.  Or if Mr. Kenner's counsel after reviewing the

20   mirror image believes there is some aspect to that that is

21   inaccurate, or created some type of issue with respect to

22   examining the original I will consider it at that time.

23             Otherwise the government will have to show good

24   cause that -- because of the frustration which is

25   legitimate on Mr. Haley and Mr. Kenner's part to review

22

1  the documents, so not to rely on the original as a

2  discovery tool.

3          Now, let's move to the bail issue.

4          MR. HALEY:  Your Honor, may I make a final

5  comment as relates to my request for an evidentiary

6  hearing with respect to the computer?

7          THE COURT:  Yes.

8          MR. HALEY:  And I reviewed that issue in my

9  letter, Judge, some time ago.

10          Now, rightly or wrongly, and your Honor

11  ultimately will make that determination, I mentioned a

12  case decided by the Second Circuit United States v.

13  Ganias.

14          My reading of the case, Judge, is I believe that

15  my client is entitled to the return of his original

16  Macbook computer.  And once the government has obtained an

17  imaged forensic copy of the hard drives of both

18  instruments, and indeed, I quoted what the Second Circuit

19  had to say in commenting upon today's technology.

20          When your Honor mentions, and correctly so, that

21  I have not submitted expert affidavits as relates to the

22  issue, you are correct.

23          However, I look at what the Second Circuit had

24  to say.  It is in my letter and I don't mean to quote it

25  to delay the record.  But I respectfully ask your Honor

1  before your Honor makes a final determination on that

2  issue, to just read all of my arguments as set forth in my

3  letters.  Because, Judge, it is not my intention to speak

4  at great length and further burden this Court.

5      THE COURT:  Again, I understand the Ganias

6  decision.  I don't think it stands for a proposition that

7  the defendant is entitled to his computer back.  It was a

8  very particular situation involved in that case.

9      On the issue of the return of the computer, you

10  have not made a motion on that.  But I don't want to

11  burden you with another motion.  My view on that is:  We

12  talked about the possibility of having a stipulation,

13  although we have the issue that Mr. Constantine and his

14  lawyer have to agree to that stipulation, too.

15      Certainly, under the circumstances we have now,

16  it is a kind of chicken and the egg situation where you

17  are asking me for access to the original and at the same

18  time you are saying you need to have it returned.

19      As long as your client is able to review the

20  mirror image it is fine.  I'm certainly concerned on

21  returning the computer to him when he has not had a chance

22  to see the mirror image.  If there is a discrepancy later

23  to what is on the mirror image, it can be returned.

24      Certainly, at this juncture it is not

25  appropriate to return the computer when there is still a

1    dispute with regard to the mirror images and whether or

2    not someone gets access to the computer.

3            If we get to that point where you or your client

4    says you have reviewed the mirror image and contests what

5    is contained on the mirror image, and Mr. Constantine's

6    lawyer has a similar view, we are in a different posture.

7            There is no basis at this point in this case

8    where we are still fighting over access to the mirror

9    image or ability of your client to review it or of

10   returning the computer back to him.

11           MR. HALEY:  I will make one further comment.

12           The argument is not addressed to the mirror

13   image at this point because your Honor I believe has come

14   up with a solution.  I think that will be resolved

15   shortly.

16           The issue with respect to Ganias is an issue of

17   a computer having arguably relevant information for the

18   prosecution and highly personal information that this

19   computer contains.  It is ten years of my client's life on

20   that computer.  A lot of information on that computer.

21           Assume an expert gets on the stand and says to

22   this court once on day one we physically have this

23   computer and we turn it on and we have the imaged hard

24   drive, that the image hard drive freezes what is on the

25   computer from that day forward.  Whatever data entry or

1    files there are or documents there are on that it is

2    frozen in time.  We have cloned that item.

3           I respectfully submit to the Court if you

4    receive that kind of testimony at trial, and let's assume

5    a circumstance provides some cataclysmic event, the

6    original computer was destroyed, not on the part of the

7    government, no fault on the part of the government, the

8    Court will likely rule based on that testimony this is

9    authenticated.  I have expert testimony.

10          So that the original computer, there is no need

11   for that original computer to stay in the hands of the

12   United States Government once you have cloned it.  It

13   either becomes a second issue, as I read Ganias, and they

14   have an obligation within a reasonable period of time to

15   purge the personal information even on the imaged hard

16   drive.

17          THE COURT:  Again, I understand what you are

18   saying.  We are definitely not at that point in the case.

19   If there is a point that you and your client reviewed the

20   imaged computer and Mr. Constantine and his lawyers agree

21   to it, I believe the government expert will probably say

22   that is what they believe when they make the mirror image.

23   Unless it is undisputed, we are not to that situation.

24          MR. HALEY:  Thank you.

25          I will move on, Judge.

1           THE COURT:  On the issue of bail -- just a

2    second, we will take a two minute break and I will be

3    right back.

4           MR. HALEY:  Yes, your Honor.

5

6           (Whereupon, a recess was taken.)

7

8           THE COURT:  So, on the bail issue, again, I have

9    read your papers.  It is in detail.  You don't have to

10   read everything in the letters.  I will give you a chance

11   to highlight whatever you wish to highlight at this point.

12          Does the government wish to highlight anything

13   from your letters?

14          MR. MISKIEWICZ:  No, your Honor, unless you have

15   questions.

16          THE COURT:  I have no questions.

17          Mr. Haley.

18          MR. HALEY:  I think most critical is the Court's

19   order of detention pending trial on December 4th, 2013.

20          It is clear from that order of detention pending

21   trial that the Court says, on consent, without prejudice

22   to a future bail application.

23          I did not represent my client on that day back

24   on December 4th.  I did speak with Ms. Chavis, and my

25   understanding is what transpired is that the government

27

1    previously submitted detention letters.

2            As an aside the government always has an

3    advantage, because before the indictment is filed and they

4    go before the grand jury, they conducted in this case at

5    least four or five years of investigation.

6            So, the detention letter is actually often

7    written even before the defendant appears in court, so

8    they have the opportunity to marshal the evidence and

9    present argument and submit the detention letter on the

10   day of the defendant's arraignment.

11           Ms. Chavis, like myself often, look to provide

12   ourselves with sufficient time to marshal our arguments --

13           THE COURT:  So you don't spend a lot of time on

14   things I will look at it de novo.  I did say without

15   prejudice.  I will not look at it under the changed

16   circumstances issue.  I'm looking at it fresh.  Because I

17   agree with you that there was no substantive argument at

18   that time.

19           I didn't see in your letter that you are

20   actually proposing a particular package.

21           MR. HALEY:  No, your Honor.

22           What I propose to do is I propose is we set this

23   down on November 14th for a detention hearing, two weeks

24   from today -- excuse me, the 21st, Judge, two weeks from

25   today if it meets with the Court's schedule for purposes

1    of a detention hearing.

2         THE COURT:  That is fine.  And I will hear from

3    you on this issue.  But to the extent you are requesting

4    it be an evidentiary hearing where you get to issue

5    subpoenas with respect to the issue of the documents that

6    the government had identified as forged, I don't believe

7    that that is necessary at this juncture.

8         I certainly did reference that in one of the

9    bail hearings as part of the government's proof.  But I

10   went back and looked at their original detention letter.

11   It is literally one sentence of a single spaced, very

12   lengthy letter.  And although I did reference that when I

13   was talking about the government's evidence and the weight

14   of the government's evidence, it was certainly not a

15   despondent aspect of this case.

16        The government in its most recent letter has

17   explained a little bit more how some of the issues may be

18   collateral to the main proof they are relying on here.

19        I think it is something I don't want to rush

20   into it today, so we can set it down for another day.  But

21   I don't believe at this juncture an evidentiary hearing on

22   those forged documents or alleged forged documents are

23   necessary.

24        I saw your client's declaration or affidavit,

25   and I understand he disputes that.  But for purposes of a

**29**

1    bail hearing, unless it is going to be a dispositive

2    issue, it is unusual for a judge to have a mini-trial on

3    some aspect of the case.

4              MR. HALEY:  I agree, Judge.

5              THE COURT:  So, on November 14th we will have an

6    argument.

7              Again, at that time you should have some

8    proposal as to what you are proposing, if I were to agree

9    with you, as to exactly what your client is proposing to

10   address which are the extremely serious concerns based on

11   what I have reviewed here.

12             What were you suggesting, November 14th?  Do you

13   have a time?

14             MR. HALEY:  Your Honor, I would suggest 10:00

15   o'clock because it may very well be an evidentiary

16   hearing.

17             I want to alert the Court as follows -- excuse

18   me, November 21.

19             THE COURT:  I just told you it is not going to

20   be an evidentiary hearing.  Right now it is argument on

21   the issue of bail.  I do not expect any witnesses on that

22   day.

23             MR. HALEY:  Your Honor, is the Court's ruling I

24   cannot call my client as a witness on that day?

25             THE COURT:  I thought you were talking about the

30

1    government.

2            No, if you want to call your client, that is

3    fine.  I will certainly give you permission to call your

4    client on that date.  I thought you wanted the government

5    to have to put on witnesses.

6            THE CLERK:  You are not here on November 21.

7            MR. MISKIEWICZ:  Your Honor, can I be heard on

8    the proposed date?

9            THE COURT:  Yes.

10           MR. MISKIEWICZ:  I'm not sure if it is November

11   14th or 21st or December 21st.

12           I'm available on November 14th.

13           I'm beginning a trial before Judge Wexler on the

14   17th, and I'm advised he will sit on Fridays, so I will be

15   on trial all that day.  I will not be available on the

16   21st.

17           THE COURT:  Since the 14th is not a great date

18   for you, so how about the 13th next week, on Thursday?

19   Mr. Haley, are you around that day?

20           MR. MISKIEWICZ:  I can be available, your Honor.

21           MR. HALEY:  Yes, your Honor.

22           THE COURT:  11:00 a.m. on next Thursday,

23   November 13th for a bail argument.  And if the defense

24   wishes to present any evidence, fine.

25           But I don't want Mr. Kenner to testify

31

1    unnecessarily.  If he wants to testify about what he put

2    in his declaration for purposes of the bail, I'm accepting

3    as true that there is a dispute about those forged

4    documents, and I'm not considering that as part of the

5    strength of the case.  I understand he is disputing that.

6    I understand what he wants to testify about, but if he

7    wants to testify about the forged documents I am assuming

8    what he is saying is true.  And it is not dispositive

9    because the government on that particular issue outlined

10   other things that they believe warrants his detention.

11           MR. HALEY:  Judge, I got it and I appreciate

12   your Honor's comment.  I can assure you that will not be

13   addressed for purposes of the evidentiary hearing.

14           I must alert, and it is out of the ordinary --

15           THE COURT:  It is out of the ordinary for a

16   defendant wanting to testify on detention at an

17   evidentiary hearing.  And nine years as a judge, and a

18   prosecutor for a long time I never heard it.  But he is

19   entitled to it if he wants.

20           MR. HALEY:  Your Honor, there is a certainly

21   reality.  The reality is when your Honor speaks in terms

22   of a bail package.  My client doesn't have the financial

23   wherewithal to post a bail package here.

24           The issue for this Court's ultimate

25   determination is whether or not the government can rely on

1    wholly proffered statements when they argue weight of the

2    evidence, and when they argue risk of flight, to justify

3    the continued pretrial detention of my client.

4         We have a right, as I understand the statute, to

5    proceed by way of proffer.  We also have a right, as I

6    understand the statute, to proceed by way of evidence.

7         We have presented evidence with respect to the

8    forged documents, and your Honor accepted that.  So it is

9    not eliminated as a factor in your Honor making the

10   determination as to whether my client should be released

11   on an unsecured appearance bond with as much secured

12   conditions as this Court feels appropriate, including an

13   ankle bracelet as the case with Mr. Constantine.

14        The only way I can address what we maintain as

15   false statements when they talk about my client secreting

16   money in safe deposit boxes, when they tell your Honor my

17   client has a Mexican passport, which is simply false, and

18   when they give you a recitation of the facts in a proffer

19   that is coming from witnesses who have given presumably

20   statements to the government, not under oath, is to

21   present evidence to the Court so the Court might weigh a

22   government's proffer against sworn testimony.

23        Now, whether it is Mr. Kenner or whether it is

24   some other witness I choose to call to address those

25   issues, other than the forged document issues, is

1   something I'm entitled to do as I read the statute, your

2   Honor.

3           I don't want to mislead the Court, Judge.  Our

4   final position at the conclusion of the hearing will be

5   one that my client ought to be released on an unsecured

6   appearance bond.  He has no prior criminal record.  This

7   is a non-violent crime.  The presumption does not apply.

8   The statute clearly sets forth that this Court shall

9   impose no financial condition that shall result in the

10  pretrial detention of the defendant.

11          The statute goes on to remind the Court -- I

12  will not lecture the Court -- that the presumption of

13  innocence still prevails.  And sometimes we lose sight of

14  that in detention hearings.  And then the default is what

15  do you have to offer in terms of property or cash or

16  surety to justify the bail?

17          This bail application, Judge, is addressed to

18  your Honor in an effort to persuade this Court that my

19  client is not a danger to the community; he does not pose a

20  risk of flight; and we are prepared to present evidence to

21  refute the proffered evidence presented by the government.

22          Thank you.

23          THE COURT:  I will see you next week.  Okay?

24          MR. MISKIEWICZ:  Thank you, your Honor.

25                  (End of proceedings.)