```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
===========================================X    Cr. No. 13-607 (JFB)
UNITED STATES OF AMERICA,

        - against -
                                                 DECLARATION IN SUPPORT
PHILLIP KENNER and                               OF PRETRIAL MOTION OF
TOMMY CONSTANTINE, also known                    DEFENDANT, PHILIP KENNER
as "Tommy C. Hormovitis"

                                    Defendants.
===========================================X
```

RICHARD D. HALEY, an attorney duly admitted to practice law before this Court, states as follows under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am the court appointed attorney for the defendant, Philip Kenner ("Kenner"), and I submit this declaration in support of the defendant's pretrial motion for the relief requested in the accompanying notice of motion. The instant motion is supported by the exhibits submitted herewith, the affidavit of Philip Kenner, sworn to on January 12, 2015, and the accompanying memorandum of law. As previously established by the parties with the approval of the court, the instant motion is submitted on or before January 20, 2015 (later extended to January 27, 2015); the government's response is due on or before February 20, 2015; and the defendant's reply is due on or before February 27, 2015.

2. The contents of this declaration are submitted, in part, upon information and belief, the source of the information and basis for the belief being information provided to me by various individuals, as well as my review of the F.R.Crim.P 16 materials provided to me through pretrial discovery as of the date of this declaration.

## Motion to Suppress Evidence

3. On November 13, 2013, the Honorable Bridget S. Bade, United States Magistrate Judge

for the District of Arizona, signed a warrant authorizing the seizure of "computers or storage media that contain records or information" regarding a specific category records or information as set forth in paragraphs 1-2 of "Attachment B" to the application for a search warrant, sworn to by special agent Joshua Wayne of the Internal Revenue Service the same day ("Exhibit A"). The warrant authorized the seizure of such records or information from any "COMPUTER" found at 10705 East Cactus Road, Scottsdale, Arizona, Kenner's residence. Although F.R.Crim.P 41(e)(2)(B) permits the "on-site copying" of computer records, the warrant application requested the physical seizure, rather than on-site "mirror imaging" (see paragraph 9 below), of any computer hard drive or storage media found on the premises. The definition of "COMPUTER" as set forth in the body of the application for search warrant clearly encompassed the seizure of the Kenner's laptop computer ("Macbook computer") and mobile phone ("i-Phone") (Exhibit A, pg. 4).

4. The rationale for seeking the authorization for off-site review of the electronically stored information ("computer files") contained on Kenner's Macbook computer and i-Phone is found in paragraph 42-a of special agent Wayne's affidavit in which he wrote "(G)iven the ever expanding data storage capabilities of computers and storage media, **reviewing such evidence to identify the items described in the warrant can take weeks or months**, depending on the volume of data stored, and would be impracticable and invasive to attempt on-site" (*emphasis added*). Thus, special agent Wayne recognized that Kenner's Macbook computer and i-Phone likely contained computer files beyond the scope of the records or information defined in paragraphs 1-2 of "Attachment B" ("non-responsive computer files") when he applied for the warrant.

5. As set forth in the accompanying affidavit of Kenner, his Macbook computer and i-Phone contain a vast amount of non-responsive computer files. Most of these non-responsive computer files are easily identifiable by the folder name on the Macbook computer, *i.e.* "kid pics", or i-Phone

which identifies a particular person's name and telephone number, *i.e.* "Darren Burke" followed by a series of text messages. Kenner avers in his affidavit that little time and effort is required to determine and isolate the non-responsive computer files when viewing the contents of his Macbook computer or i-Phone.

6. Pursuant to the warrant, Kenner's Macbook computer, i-Phone and assorted documents were seized by agents of the Federal Bureau of Investigation on November 13, 2013. On March 24, 2014, the government provided two (2) one-terabyte portable hard drives to defense counsel which were purported to "contain imaged copies of the electronic devices that were recovered from defendant Phillip Kenner's home in Scottsdale Arizona on November 13, 2013." Presumably, the government did not provide Kenner with "imaged copies of the electronic devices" belonging to Kenner without first obtaining an identical imaged copy for its own use by the government's "privilege review team" (Exhibit A, pgs. 7-8).

7. On July 16, 2014, Kenner requested the return of his Apple Macbook computer. In this regard, I wrote to the government as follows:

> "Given the technical resources of the Federal Bureau of Investigation, I imagine that the Bureau if fully capable of producing a mirror image of the Macbook computer for its use and has already done so as evidenced by the Rule 16 disclosure and creation of the two hard drives. Indeed, I envision that upon the trial of the matter information contained on the Apple laptop will be presented to the court and jury without its actual use but the use of a mirror hard drive for indexing and display" (Docket Entry # 73)

8. My July 16, 2014 proposal for the return of Kenner's Macbook computer was accompanied by an offer to "execute on behalf of my client a broad based stipulation waiving any and all objections to the admissibility of information contained on the Apple laptop as recreated on the mirror hard drives maintained by the government, subject to objections to relevance, materiality

and/or undue prejudice" (Docket Entry # 73). At a status conference before the court on September 2, 2014, however, Kenner argued in substance that the decision of the Second Circuit in <u>United States v. Ganias</u>, required, as a matter of Fourth Amendment analysis, that the government return Kenner's Macbook computer and i-Phone which contain "a great deal of personal information", *i.e.* non-responsive computer files, without the need for a "broad based stipulation" which Tommy Constantine, through counsel, declined to execute. The argument was premised on the fact that the government had already obtained "mirror images" of Kenner's computer files for use at trial, as previously expressed in my letter of July 16, 2014. (See relevant portions of transcript of proceedings held on September 2, 2014 attached hereto as "Exhibit B").

9. The technology associated with obtaining a mirror image of a computer was the subject of an evidentiary hearing in <u>United States of America v. Stavros M. Ganias</u>, 2011 U.S.Dist. LEXIS, 67806 (D. Conn 2011). After crediting the testimony of experts employed by the Computer Crimes Investigative Unit of the United States Army who testified at the hearing, the District Court wrote that "(A) 'mirror image' of a computer is an exact copy of the data contained in a particularized digital storage unit, such as a computer hard drive", (Opinion, *Footnote* 1). Presumably, the Second Circuit in the appeal which followed Ganias's conviction relied upon this finding in writing "(T)oday, advancements in technology enable the Government to create a mirror image of any individual's hard drive, which can be searched as if it were the actual hard drive but without interfering with the individual's use of his home, computer, or files" <u>United States v. Ganias</u>, 755 F.3d 125, 129 (2nd Cir. 2014).

10. In response to Kenner's request for the return of his Macbook computer and i-Phone, the government argued that, at a bare minium, Kenner's request must await the completion of the "privilege review" by the government's privilege review team before the Court should make any

determination of the issue (Exhibit B, pgs. 11-13). When the court inquired "(H)ow much longer is the privilege review process?" the government responded: MR. MISKIEWICZ: "I am advised the should have, if not by the end of the month certainly by October 15, a list to counsel about what they deem to be privileged or not privileged" (Exhibit B, pg. 16, lines 5-10). Ultimately, the court addressed the issue by stating "So Mr. Haley, I don't want to spend too much time on this, but if you want to make a motion for return of property, or however you want to style it, you can do that" (Exhibit B, pg. 20, lines15-18).

11. On November 3, 2014, Assistant United States Attorney Catherine M. Mirabile completed the government's "privilege review" and provided under her cover letter "one portable hard drive and four CD's containing copies of the electronic materials seized on November 13, 2013 during the execution of the search warrant at the defendant Phillip Kenner's home in Scottsdale, Arizona" (Docket Entry # 114). On November 25, 2014, Ms. Mirabile provided replacement CD's with passwords after the computer files on the first set of CD's as well as the portable hard drive could not be accessed because the files were "password protected" (Docket Entry # 128). At the direction of Ms. Mirabile, the portable hard drive was returned to her (see attached letter), and on December 2, 2014 (Docket Entry # 133) and December 4, 2014 (Docket Entry # 135), Ms. Mirabile was advised that the computer files contained on replacement CD's, as well as the re-circulated portable hard drive, could not be accessed due to an "error code" screen on the computer which prevented the use of the passwords provided by her.

12. The December 2, 2014 letter to Ms. Mirabile advised her that the officials at the Queens Private Correctional Center, where Kenner is incarcerated, will not allow CD's containing computer files to be provided to an inmate if the content of the CD's cannot be viewed by such officials prior to release of the inmate (Docket Entry # 133). In this regard, telephone number of Kenner's

counselor at the Queens Private Correctional Center was provided to Ms. Mirabile to verify that he encountered the same "error code" message preventing the use of the passwords to open the computer files. As of the date of this declaration, no further communication has been received from Ms. Mirabile concerning the defendant's inability to access the computer files provided by her.

13. To date, the non-responsive computer files belonging to Kenner have not, upon information and belief, been purged by the government's privilege review team from the mirror imaged hard drives and/or CD disks in the government's possession, even though such files are readily identifiable. Accordingly, Kenner moves for suppression of the evidence contained on and copied from his Macbook computer and i-Phone pursuant to F.R.Crim.P. 41(h) based on the legal analysis set forth in the accompanying memorandum of law. Once the suppression of such evidence is granted, Kenner will move pursuant to F.R.Crim.P. 41(g) for the return of his Macbook computer and i-Phone in the District of Arizona where his property was seized.

## Motion for Issuance of F.R.Crim.P. 17(c) Subpoenas

14. Attached hereto as "Exhibit C" is a copy of the "Schedule A" to be served on several third-party witness and banking institutions as part of a subpoena *duces tecum* pursuant to F.R.Crim.P. 17(c) ("Rule 17)"). If approved for service by the Court, Kenner will seek from the government the most current address of the third-party witness for service of the subpoena *duces tecum* by the United States Marshall pursuant to subdivision (d) of Rule 17 (*See also* Docket Entry # 74). Because it is clear that the matter will proceed to trial, presently scheduled to commence on March 23, 2015, the instant request for the issuance of Rule 17 subpoenas is neither premature or unnecessary.

15. As argued in the attached memorandum of law, Kenner is entitled to the issuance of Rule 17 subpoenas calling for the production of the documents described in "Schedule A" of each

subpoena because compliance by each third-party witness/banking institution would not be unreasonable or oppressive. Although subdivision (b) of Rule 17 permits the *ex parte* application for issuance of a subpoena by an indigent defendant, Kenner makes the instant motion on notice to the government. In so doing, Kenner does not concede that the government has standing to object to the issuance and service of the Rule 17 subpoenas requested by Kenner.

Motion for Supplemental Brady/Giglio/Bradley Material

16. Inasmuch as the government acknowledged its continuing duty to disclose exculpatory information in paragraph 21 of its September 12, 2014 letter, Kenner does not repeat his request for the disclosure of Brady/Giglio/Bradley material by way of the instant motion. Kenner notes, however, that prospective witnesses have been contacted by the investigating law enforcement agents since September 12, 2014 and requests that their statements be analyzed for exculpatory information within the ambit of Brady/Giglio/Bradley.

17. Without conceding that the grand jury testimony of Michael Peca ("John Doe # 2"), Darryl Sydor ("John Doe # 4) and Turner Stevenson constituted *Brady* material, the government provided transcripts of their grand jury testimony to defense counsel under cover of letter, dated June 18, 2014, with the comment "You might deem some of the material in the transcripts to be helpful to the defense" (Docket Entry # 67). On June 23, 2014, I responded, in part, to Ms. Capwell's letter as follows:

> "In reply to your letter of June 18, 2014, I was sensitive to the potential *Brady* material originating in the grand jury proceedings in the Southern District of New York and intended to incorporate a request for such material as part of my pre-trial motion. Your usual professionalism and integrity has obviated the need for such a request by way of motion. Thank you" (A. 6, Docket # 68).

Thereafter, on July 9, 2014, the government provided a copy the grand jury exhibits shown to Peca,

Sydor and Stevenson (Docket Entry # 71) in response to my request (Docket Entry # 70).

18. In the event that Peca, Sydor and Stevenson gave written statements concerning the subject matter of their grand jury testimony to the government, or notes were taken by the government of interviews of Peca, Sydor and Stevenson concerning their grand jury testimony, the defendant requests that the government disclose such statements in response to the instant motion. In this regard, defendant maintains that such statements fall within the ambit of Brady/Giglio/Bradley and should be disclosed (See Docket Entry # 112, Exhibits # 3, 4 & 5).

*Richard D. Haley*
Richard D. Haley

## HALEY WEINBLATT & CALCAGNI, LLP

JOHN R. CALCAGNI
RICHARD D. HALEY*
RICHARD A. WEINBLATT
*ADMITTED NY AND MA

CINDY RASKIN ROCCO

ATTORNEYS AT LAW

* ONE SUFFOLK SQUARE
1601 VETERANS MEMORIAL HIGHWAY
SUITE 425
ISLANDIA, NEW YORK 11749
(631) 582-5151 FAX: (631) 234-7108

OF COUNSEL
ROBERT K. HOWARD**
**ADMITTED NY AND CT

SUSAN E. COZZOLINO
Medicaid Benefits
Administrator

November 24, 2014

United States Attorney's Office
271 Cadman Plaza
Brooklyn, New York 11201
Megan Hynes, Public Integrity

RE: United States v. Philip Kenner & Tommy C. Constantine
Docket Number: 13-CR-607 (JFB)

Dear Ms. Hynes:

I have been instructed by Catherine Mirabile to return the enclosed hard drive to you in order that IT can re-set the password to as to access the documents/files on the hard drive. Ms. Mirable directed that I forward the hard drive to you because she will be out of the office the remainder of the week.

Very truly yours,

RICHARD D. HALEY

RDH/jm