1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA    :   13-CR-607

        -against-                  US District Court
                                   Central Islip, NY

PHILLIP KENNER and
TOMMY CONSTANTINE,                 September 2, 2014
                                   1:50 pm

                Defendants.:
- - - - - - - - - - - - - - X

        TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JOSEPH F. BIANCO
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:
                          LORETTA E. LYNCH
                          United States Attorney
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                          By:  JAMES MISKIEWICZ, ESQ.
                               SARITHA KOMATIREDDY, ESQ.
                          Assistant US Attorneys

For the Defense:          RICHARD D. HALEY, ESQ.
                          For Defendant Kenner

                          JOSEPH CONWAY, ESQ.
                          For Defendant Constantine

Court Reporter:           Dominick M. Tursi, CM, CSR
                          US District Courthouse
                          1180 Federal Plaza
                          Central Islip, New York 11722
                          (631) 712-6108  Fax:  712-6124
                          DomTursi@email.com

        Proceedings recorded by mechanical stenography.
                Transcript produced by CAT.

2

1          (Call to Order of the Court.  Appearances noted

2     as indicated above.)

3          THE COURT:  Both Mr. Kenner and Mr. Constantine

4     are present.

5          As you know, we scheduled this as a status

6     conference.  And, in addition to being cc'd on various

7     discovery letters, I did receive the government's August

8     29 letter raising at least two outstanding discovery

9     issues.  So we can address those and any other issues that

10    anyone wants to bring up.

11         Why don't we start with the two issues raised in

12    the letters.  I don't know if Mr. Conway or Mr. Haley

13    wants to explain what the issue is.

14         MR. HALEY:  I would be happy to, your Honor.

15         When you say the two issues, are you speaking of

16    the issue regarding the desire that my client have

17    returned to him his laptop computer?

18         THE COURT:  That is one.  And the other one is

19    seeking the identification of the victims who were named

20    in the indictment.  Those are the two that the government

21    highlighted.

22         MR. HALEY:  Yes, judge.

23         By way of, I guess, background, your Honor, I

24    know your Honor makes a point of staying on top of every

25    case.  If your Honor has reviewed the docket sheet since

3

1    our last appearance in court, because there are a number

2    of Rule 16 demands on my part that I will address in a

3    moment because I know that is not the focus of your

4    Honor's current question, there was, as indicated in this

5    correspondence between myself and the government, an issue

6    we were trying to resolve as related to the information

7    contained on my client's laptop computer which was seized

8    pursuant to a search warrant.

9           As reflected in that correspondence, I had

10   proposed a solution by which the laptop would be returned

11   to my client:  I would agree to a broadly based

12   stipulation to resolve any issues that may arise in

13   connection with the evidentiary use of the information

14   contained on that laptop.

15          I suggested that early on, after our last court

16   appearance, because, as I recall, when I brought the issue

17   to the attention of your Honor, your Honor suggested that

18   we work cooperatively with the government to try to

19   resolve the issue.

20          As set forth in one of my letters, I did make

21   efforts to try to come up with a solution by which the

22   government retain the laptop computer and I would be able

23   to then, through the use of an expert witness, obtain a

24   model laptop computer, the same model number, the same

25   software program, to try to take the burden on, judge, if

4

1   you will.  When I say take the burden on:  for the defense
2   to solve the problem if we are not going to be given the
3   laptop computer.
4          Judge, really that is academic from my
5   standpoint because I believe the issue has changed.  I
6   believe the issue has changed as a result of a decision
7   rendered by the Second Circuit in June of this year.  That
8   decision is entitled *United States v Ganias*, 755 F.3d 125.
9   And it was actually a decision which I believe, judge,
10  really addresses this issue.
11         It was not based upon a Rule 16 discovery
12  request for return of an original laptop computer or, if
13  you will, the information contained on the original laptop
14  computer by way of a Rule 16 discovery demand, but by way
15  of a Fourth Amendment analysis.
16         The point is simply this, Judge.  If the court
17  takes a look at *Ganias*, what we have is a circumstance
18  where the agents went into the location with the
19  authority, pursuant to a search warrant, to seize
20  information contained on a computer.
21         What they did at the location, judge, is, they
22  mirror-copied the hard drive of that particular computer;
23  left the computer with the defendant, it was his computer,
24  but mirror hard-copied the information contained on the
25  computer, which contained information arguably relevant to

1    the prosecution but also contained a great deal of

2    personal information.

3             The government held on to that information for

4    an extended period of time though there were requests that

5    information of a personal nature be returned to the

6    defendant.  The government didn't do so.

7             It went up to the Circuit, and the Circuit found

8    that under those circumstances there was a Fourth

9    Amendment deprivation; that the government had no

10   authority, by way of constitutional law or by way of

11   statutory law, to retain all that information in its

12   possession.

13            Judge, what I think is salient in that decision,

14   because there absolutely has been a dispute between myself

15   and the government as to whether or not they are really

16   prejudiced; if they return the laptop computer to my

17   client, I respectfully submit to your Honor I'm not a

18   computer expert but they have made a mirror copy of this

19   hard drive.

20            They have all the information already in their

21   possession by virtue of making that mirror hard copy of

22   the hard drive.  As a matter of fact, some Rule 16

23   material we received to date has come off of that hard

24   drive from that laptop computer.

25            What the Circuit had to say is as follows.

6

1    *"Today, advancements in technology enable the government*

2    *to create a mirror image of an individual's hard drive,*

3    *which can be searched as if it were the actual hard drive*

4    *but without interviewing with the individual's use of his*

5    *own computer or files."*

6              So the current application, Judge, from my

7    position, is really quite simple.  This computer, laptop

8    computer, contains the information arguably relevant to

9    the prosecution of the case.  There is no question it also

10   contains personal information, a great deal of personal

11   information, as relates to my client.  That item, the

12   laptop itself, in view of the fact that the government has

13   already obtained the information they need by way of the

14   hard drive, ought to be returned to my client.

15             I might add, judge, it is also our position that

16   not only should his laptop be returned but his iPhone

17   should be returned.

18             Through the Rule 16 discovery we have received

19   snippets of emails that the government has provided to us

20   that have come off of the iPhones.  The iPhone also

21   contains significant amounts of personal information.

22   They are obviously able to copy electronically the

23   information contained on those documents.

24             Judge, I might add we are talking about the

25   Federal Bureau of Investigation.  We are talking about a

7

 1    law enforcement agency that has the technical wherewithal

 2    as well as the financial wherewithal to engage the experts

 3    to get a mirror hard drive of that laptop, which they have

 4    already obtained.

 5            THE COURT:  Okay.  I understand that issue.

 6            I want to ask the government to speak to that.

 7    But do you want to cover the second issue as well, the

 8    victim-identification issue?

 9            MR. HALEY:  Yes, sir.

10            I cited in an earlier email to the government

11    two cases, Second Circuit cases, wherein the Circuit by

12    way of a demand for a bill of particulars deemed it

13    appropriate to identify the names and addresses of --

14    excuse me.  Yes, actually it was the names and addresses,

15    I believe, of the victims in a particular case.

16            Those two cases indicated that the vehicle by

17    which such a demand could be made was a demand for a bill

18    of particulars.  I stylized my letter in terms of that

19    type of demand, the demand for a bill of particulars.

20    Judge, because there is a reality here, and I understand

21    that reality.  I mentioned it in my letter.  We may have

22    already identified each of the John Does.

23            For purposes of the record, judge, from our

24    perspective, judge, Brian Berard is John Doe One.

25            Michael Pecca is John Doe Two.

8

1       Owen Nolan is John Doe Three.

2       Darrell Sidor is John Doe Four.

3       Glen Murray is John Doe Five.

4       Sergei Gonchar is John Doe Six.

5       Mattias Norstrom is John Doe Seven.

6       Steven Rucchin is John Doe Eight.

7       Joe Juneau is John Doe Nine.

8       Greg DeVires, John Doe Ten.

9       Jay McKee is John Doe Eleven.

10      Ethan Moreau is John Doe Twelve.

11      Tyshon Nash is John Doe Thirteen.

12      John Kaiser, who is present in court, Judge, he

13  is seated in the second row, has been here for each court

14  appearance, he is certainly entitled to be so, he is here,

15  he is John Doe Fourteen.

16      Nick Privitelo is John Doe Fifteen.

17      Kenneth Jowdy is John Doe Seventeen (sic).

18      Vincent Tesorio is John Doe Eighteen.

19      Now, to the extent that the government is

20  prepared to acknowledge that we have correctly identified

21  the John Does for purposes of my representation as to who

22  we believe the John Does is to be, if they can make that

23  representation to the court, this becomes less of an issue

24  but not entirely, and I will get to that in a moment.

25      Judge, there is going to be a point in time when

9

1    I am going to have to open up to a jury.  I will be using

2    allegations that are contained in that indictment when I

3    speak to that jury, and I want to be able to say to the

4    jury and identify each of these John Does so the jury is

5    not left with some shell game in their mind as to who

6    specifically alleged what on what occasion with respect to

7    the multiple counts obtained in that indictment.

8            I might add, Judge, the reason I mention these

9    names to your Honor is, we have been in possession of

10   those names for some period of time.  If there is any

11   allegation whatsoever that there has been an effort on my

12   part, on the part of an investigator employed by us, on

13   the part of my client, to in any way intimidate these

14   witnesses such that we are looking for them to suborn

15   perjury or anything of that nature at trial:  Absolutely

16   not.

17           And I would like to say, Judge, this is not an

18   organized crime case.  This is not an MS-13 case.  But it

19   has relevance and materiality that the defendant be

20   allowed to know specifically who his, if you will,

21   accusers are as relates to each John Doe as listed in that

22   indictment.

23           I might add, judge, that certainly as far as Mr.

24   Kaiser is concerned, he is not worried about his personal

25   safety.  He has given interviews to the news media, both

10

1    he as well as Brian Berard, alleging my client stole money

2    from them, making all sorts of allegations.  So they bask

3    in the spotlight of the press, and yet can it truly be

4    argued that somehow revealing the names or confirming the

5    names to the defense in this action is somehow put them in

6    jeopardy?

7         The final reason, Judge, it is important to me,

8    and it will become an issue, judge, it is our intent at

9    the appropriate time to serve Rule 17 subpoenas.  As I

10   indicated in one of my letters to the government, it

11   strikes me we don't need the address of all those John

12   Does.  We have pared down the list as to who we would be

13   interested in serving Rule 17 subpoenas on.

14        As your Honor is well aware, I'm CJA counsel.

15   These subpoenas would be presented to your Honor for

16   review.  They are presented to the marshals service for

17   service.  In an effort to move this case along, judge, it

18   strikes me that it is only appropriate that we have

19   accurate addresses so we don't waste time and these

20   subpoenas get served to have marshals service come back to

21   your Honor and then ultimately me say:  Look.  He is no

22   longer at that address.

23        So this has relevance and materiality, judge, in

24   connection with the preparation of the defense in terms of

25   the Rule 17 material.

11

1          I believe those are the two issues, your Honor.

2          THE COURT:  All right.  Let me deal with those

3     and then I will address any other ones.

4          Do you want to add anything to that?

5          MR. CONWAY:  No, judge.  Just that in terms of

6     the computer, I am not joining in that motion.

7          But in terms of the John Does, we join in Mr.

8     Haley's motion.

9          THE COURT:  Does anyone want to address those

10    two issues?

11         MR. MISKIEWICZ:  Yes, your Honor.

12         Your Honor, as to the issue of returning the

13    laptop at this time.  I will just, in summary, say that

14    this is not the *Ganias* case.  In that case the government

15    was in possession of a laptop for two and a half years.

16    It was in the process of or actually sought a second

17    search warrant that expanded what it was able to view in

18    that receptacle of data.  And that is really the narrow

19    issue that the Second Circuit had to address, is whether

20    or not the seizure arguably took place at a later time as

21    opposed to an earlier tame.

22         Here the laptop has been in our possession for a

23    number of months.  More importantly to the government's

24    prosecution team, we haven't even gotten possession of it.

25    We have not even begun the Rule 41E search of documents

1    because the Sixth Amendment concern that there are

2    privileged documents on that receptacle of data, if you

3    will, that box full of documents, may contain privileged

4    information that frankly we shouldn't be able to see and

5    maybe even the codefendant Mr. Constantine shouldn't be

6    able to see.

7          We have been working through that as

8    expeditiously as possible.  There is a walled-off group of

9    agents and an AUSA supervising that, and I'm advised that

10   that review has found something like 60,000 files

11   totalling something like 300,000 pages of documents, and

12   they are working as quickly and in as good faith as

13   possible, as expeditiously as possible, to finish that

14   review.  But that never was an issue in the *Ganias* case,

15   and here it is.

16         Secondly, we don't have one defendant, as in the

17   *Ganias* case.  We have two.  So although it may be the case

18   that Mr. Haley and his client are prepared to offer some

19   broad stipulation, I don't know how Mr. Conway and his

20   client can offer the same stipulation as to authenticity

21   and maybe even waive objections to foundation arguments

22   when they, like the prosecution team, haven't even been

23   able to see what it is that we purport is relevant and

24   seized pursuant to that search warrant.

25         Finally, and I think this is critical, many of

1   the issues that Mr. Haley is complaining about, overbreath

2   or personal documents, et cetera, I submit will probably

3   get resolved as a part of this privilege review.

4           In other words, the privilege team will submit

5   to Mr. Haley, and I believe to the court simultaneously, a

6   list of files that they believe are not privileged and

7   therefore discoverable to the prosecution and discoverable

8   to Mr. Constantine.  There may be other documents where

9   there will have to be some differences of opinion, and

10  ultimately the court will have to decide.  And I think

11  that that will be the appropriate time for Mr. Haley to

12  say the government should under no circumstances view the

13  following.  And that will forever more resolve the issues

14  in *Ganias* about overbreath of the warrant.

15          THE COURT:  In terms of solving this issue about

16  his access to it, in your letter there is reference to him

17  getting a computer through the national litigation support

18  office.  Is that your proposal for what the solution

19  should be?

20          Even if they don't give him back the original

21  hard drive, obviously Mr. Haley and his client want to

22  have access to what is on there and are having issues I

23  guess with what is being provided to them.

24          MR. MISKIEWICZ:  That issue seems to have

25  morphed, if you will, over the last several days and, to

14

1   my knowledge, since the last status conference.

2           First of all, it was our understanding that Mr.
3   Haley would be unable to view the documents that we turned
4   over in the mirror-imaged format because they were created
5   on an Apple system and they only have access to a
6   Microsoft system.  Apparently, that is not the case.

7           Also, apparently he has the ability to view that
8   material.  In fact, I'm advised that our privilege-review
9   team is reviewing all of this material on a Microsoft
10  system.  We don't have Apple in the government.

11          So there doesn't seem to be this inability to
12  cross over platforms.  If that were simply the case, that
13  would certainly be a problem and I would understand his
14  need to see the original.  But apparently, I have
15  confirmed with Mr. Haley, he was able to finally locate
16  whatever software it was that was necessary to review
17  certain documents.  Some of the documents, I'm told again
18  from the privilege review, are PDF files and Microsoft
19  Word files.

20          So if it is a matter of actually seeing the
21  documents, giving back the original evidence is not
22  necessarily the only solution.  If it is a matter of
23  preserving the evidence, however, I submit that there is a
24  process of going through it deliberately, and maybe we
25  will get to a point where we can turn over the original

15

1    back to Mr. Haley.

2          But I submit, your Honor, we are not there now.

3    And once we turn it over, I don't know how your Honor

4    enters a protective order that says Mr. Kenner cannot

5    touch it, or at least one that is enforceable.  And if

6    that is the case, we may have a situation, and this is

7    also principally our reason for being hesitant about

8    merely turning over an original piece of evidence; there

9    may be items there that cannot be reconstructed through

10   the image copy.  I'm told, for instance, the mirror copy

11   does not have the application software that is in the

12   original, and there may come a time when that application

13   software, particularly having to do with forged documents

14   and forged texts, might become critical.

15         It is also the case that, and I have had this

16   experience in lots of complex litigations where documents,

17   once copied and recopied, become corrupt.  And although it

18   is easy at this stage for Mr. Haley to say just give it

19   back and we will deal with the problems as they arise

20   later on with some all-encompassing stipulation, again

21   cocounsel and codefendant may not agree, and if there is a

22   document on that hard drive that Mr. Constantine recalls

23   that doesn't turn up on a mirror image, we no longer have

24   the original to look at and now we are into an issue of

25   spoliation and Sixth Amendment concerns of destruction of

16

1    Brady evidence.

2            So for all those reasons, your Honor, I simply

3    ask the court's indulgence again to allow us to go through

4    this process.

5            THE COURT:  How much longer is the privilege

6    review process?  Do you know?

7            MR. MISKIEWICZ:  I'm advised that they should

8    have, if not by the end of the month certainly by October

9    15, a list to counsel about what they deem to be

10   privileged or not privileged.

11           THE COURT:  Okay.  Can you move now to the

12   victim-identification issue.

13           MR. MISKIEWICZ:  Just very briefly.  We are

14   unsure as to whether or not this is a bill of particulars,

15   and if it is, clearly counsel has articulated a number of

16   names which would suggest he doesn't need a bill of

17   particulars.  He claims he knows who those individuals

18   are.  So therefore the next question is whether or not

19   this is something that would be, or additional

20   documentation that would be, discoverable under Rule 17C,

21   and the Bowman Dairy and Nixon standards would have to

22   come into play.  And at that point we would like to be

23   able to, at the very least, be able to put in that counsel

24   is seeking to subpoena from individuals that he believes

25   to be witnesses in this case.

17

1        There is no question at some point the John Does

2   are going to be identified to the jury and to cocounsel

3   and to the court.  There will be 3500 material that will

4   make it plain.  But we are a long ways away from that.

5   And putting, just contending that I need this because of,

6   on the grounds of a bill of particulars, without even

7   arguing or filing a motion or application to the court

8   which we would have an opportunity to respond to and then

9   saying:  *Well, what we really want is a Rule 17 subpoena,*

10  makes it impossible for us then to really respond I think

11  in any meaningful way.

12        THE COURT:  Let me say --

13        MR. MISKIEWICZ:  I would suggest that if he

14  wants to file a bill of particulars, he should be given a

15  filing schedule to do so.  Or if there is a subpoena that

16  he seeks documentary evidence from various individuals,

17  that also be given the opportunity to join the issues

18  after seeing if it is discoverable.

19        THE COURT:  There are two issues here.

20        To the extent that he is seeing a Rule 17

21  subpoena for additional documents from any of the victims,

22  I agree with you, obviously he would have to do that by

23  formal motion and I would have to see exactly what he is

24  seeking.

25        But to the extent he is seeking a more basic

18

1    list of the names of the victims, forget about their

2    addresses for now because that would be contingent upon

3    whether or not there is any basis to subpoena for

4    anything, or whether or not they would not accept service

5    absent being given their addresses.

6         But just a list of names, I guess I don't

7    understand.  I can make them file a motion for a bill of

8    particulars on that.  But it is clear to me that he would

9    be entitled to those names prior to the trial and that the

10   only basis for withholding them even at this juncture

11   would be if there was a safety reason to do that, at which

12   time I would set a date by which he would have to

13   disclose, 30 days before we go to trial, 60 days before

14   the trial; I don't know that what date would be.

15        But I don't know that this is one of those

16   cases, for the reasons that I think Mr. Haley indicated,

17   which are twofold.  One is, part of your argument is they

18   don't need the names because they have them already.  So

19   even if they have them already, then whatever safety issue

20   you may be concerned about is moot.

21        But the second issue is that I don't know of any

22   particular safety issues.  I know you have summarized some

23   conversations that the government said took place between

24   Mr. Kenner and one or more of the victims, but I'm not

25   sure that you have made a sufficient showing at this

19

1 juncture, with Mr. Kenner incarcerated, that that is a

2 sufficient reason for me to delay disclosure of just the

3 names so that they can begin preparing for the trial.

4 I don't want them to, if, say, you disclose this

5 30 days before trial and they say Judge, that is not

6 enough time, we need an adjournment of the trial because

7 until we know who the victims are it is difficult for us

8 to prepare. So this is the way I am looking at it. And

9 to the extent they just want a list of names of the

10 victims, unless the government is going to try to

11 articulate to me a compelling basis for delaying that, I'm

12 going to tell you that you should turn over that list now

13 or confirm that the list that he just read off is

14 accurate. If you want to, do that today in court. But

15 you can't do this through a letter to him.

16 But to the extent that he is seeking their

17 addresses or seeking any documentation from them, that he

18 should do by formal motion. So I will leave the option

19 of, if you want to argue that I should delay the

20 disclosure of the names, you should submit a letter within

21 one week of today explaining to me why we should do that.

22 Otherwise, within one week of today the names should be

23 turned over to counsel. Okay?

24 MR. MISKIEWICZ: Understood.

25 THE COURT: On the first issue, Mr. Haley.

20

1    First let me ask Mr. Conway.

2            You are being drawn into the motion in terms of

3    whether or not you and your client would stipulate.  I'm

4    not sure this is dispositive of the motion, but at this

5    point are you willing to stipulate to the authenticity of

6    anything the government recovers from the mirror image of

7    the hard drive?

8            MR. CONWAY:  I can't at this time, your Honor,

9    because I'm in the dark.  I don't know what is on there.

10   Obviously, I haven't had an opportunity to see anything.

11   And until their review is done and I can see what is on

12   there, I can make certain decisions and make certain

13   challenges at that time, but at this time I can't make any

14   representation whatsoever.

15           THE COURT:  .So Mr. Haley, I don't want to spend

16   too much time on this, but if you want to make a motion

17   for return of property, or however you want to style it,

18   you can do that.  But I will say to you right now it seems

19   to me that, in light of the absence of a full stipulation

20   from everybody who potentially would be involved in the

21   documents that are recovered, and in light of the fact

22   that they are still doing a privilege review, that any

23   attempt to get a return of that computer would be

24   premature.

25           I would being shocked if you can find any case

21

1    where, under those type of circumstances, the government

2    has been required to return the original computer when

3    there is not a full stipulation about the authenticity of

4    it and they are still undergoing a privilege review. It

5    seems very premature.

6         But let me ask you because now I'm confused.

7    Are you having issues accessing the mirror image or not?

8         MR. HALEY: Yes, your Honor.

9         If I may, and I will be brief. The issue, your

10   Honor, and I anticipated your Honor may want it, and I

11   would invite your Honor because it will be probably the

12   only case I cite in my brief to the court, to take a look

13   at that *Ganias* case that I cite, your Honor, on the record

14   because I believe that clearly addresses the issue.

15        Judge, we are really just mixing apples and, I

16   won't say oranges; we are mixing apples and PC-based

17   computers here. The issue is this. We were delivered two

18   terabyte hard drives which the government claims is a

19   mirror image of the hard drives on my client's computer.

20   It is those two terabyte hard drives that have been

21   delivered to my client that, when he tries to access the

22   information on the PC-based computers at the Queens

23   Private Correctional facility, where he is incarcerated,

24   he is unable to fully access that material. He can access

25   some, I'm told, but a very small amount of it, probably