UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

   - against-

PHILLIP A. KENNER and
TOMMY C. CONSTANTINE,
    also known as
    "Tommy C. Hormovitis,"

         Defendants.

-----------------------------------------------------------X

Docket No. 13-cr-607 (JFB)

**AFFIDAVIT OF TOMMY C. CONSTANTINE IN SUPPORT OF HIS MOTION
TO DISMISS
OR IN THE ALTERNATIVE OTHER RELIEF**

    TOMMY CONSTANTINE, being duly sworn, deposes and states under penalty of perjury as follows:

1. I am a defendant in the above captioned case and I submit this affidavit in support of my motion seeking an order (1) to dismiss the Indictment in its entirety for Government misconduct or in the alternative, for an evidentiary hearing; (2) to dismiss Count Four of the Indictment for lack of venue; (3) to sever my trial from codefendant Phillip Kenner; and (4) to suppress an audio recording of a conversation between the defendants, or in the alternative, for a hearing on its authenticity and the production of the original recording on its original storage device for inspection and forensic examination.

2. The government's misconduct justifies dismissal of the Indictment, or, at a minimum, a hearing on the issues raised herein. Such misconduct includes but is not limited to: i) improper interference with the judicial process by FBI Agent Matt

Galioto; ii) deliberately withholding and/or ignoring exculpatory evidence from the grand jury that was in its possession; and iii) intentionally ignoring exculpatory material within its possession that contradicted the claims it made in the Indictment.

3. At the outset, it is worth noting that Agent Galioto spent over two years trying for an Indictment in the Southern District, and when he could not get one, and when a number of investors and I contradicted the Agent's presentation of the facts, he went forum shopping until he could find a prosecuting office that would proceed.

4. At the same time, I believe that Agent Galioto has wrongfully interfered with judicial process on multiple occasions. Upon information and belief, two of the John Doe hockey players, Tyson Nash (John Doe 13) and Bill Ranford (John Doe 12) were contacted by Agent Galioto and he encouraged them to dismiss their existing lawsuit which adversely affects the Government's case and to file a new lawsuit against Phil Kenner, which supports the Government's version of the events.

5. Specifically, Bryan Berard and John Kaiser (John Does 1 and 14), are currently being sued in Arizona for, among other things, fraudulent inducement and fraudulent transfer, by at least three of the John Doe NHL Players, including Darryl Sydor (John Doe 4), William Ranford (John Doe 12) and Tyson Nash (John Doe 13). (Amended Complaint and Motion to Intervene annexed as **Exhibit A**) Upon information and belief, I am aware that on more than one occasion, Nash and Ranford have been contacted by Galioto and asked to dismiss their lawsuit against Berard and Kaiser and to instead initiate litigation against Kenner. Upon information and belief, Nash has refused, maintaining that it was Berard and Kaiser who have lied and have attempted to defraud him out of his and the others hockey players' money. The significance of Galioto's conduct is that Galioto is protecting government witnesses. The Government

has been working closely with Berard and Kaiser, both of whom are former clients and/or friends of Kenner's, who have been instrumental, along with Ken Jowdy (John Doe 17) and Jowdy's attorneys, (former FBI Director Louis Freeh and Thomas Harvey), in diverting the investigation away from Jowdy and towards myself and Kenner. As I explain in more detail later, I believe that Jowdy, a real estate developer who has received approximately twenty-five million dollars of the NHL players' alleged thirty million dollars in losses, is an integral figure in at least one of the schemes to defraud alleged in the Indictment. He has managed to manipulate the landscape through his alliance with Louis Freeh, and through Thomas Harvey's close personal relationship with certain reporters at the New York Daily News. Interestingly, Berard and Kaiser were at one time strongly aligned with Kenner against Jowdy, but later defected. Both have since been employed by Jowdy and, to my knowledge, they are the only related investors that have received any sort of compensation or return on their investment from Jowdy over the past 13 years.

6. I am also aware of instances where Agent Galioto has directed a deposed witness to withhold information related to the Global Settlement Fund and other matters related to the Indictment. For example, at the deposition of Berard on October 9, 2014, in Interveners v Kaiser et al, Index No. CV 2012-055576, Berard, on dozens of occasions, stated that the FBI had instructed him not to answer questions relating to the Global Settlement Fund, a central part of the Indictment as laid out in its paragraphs 34-37, as well as details about Berard's employment with Jowdy and his general involvement with Jowdy and Kenner. Although Berard refused to state the name of the Agent who gave him that direction, the plaintiffs filed a motion to compel and Berard later

3

disclosed that it was Galioto who had instructed him not to answer. (See Excerpts of deposition transcript, annexed as **Exhibit B**)

7. The other major piece of misconduct relates to the Government consistently withholding and/or ignoring subpoenaed information within its possession and control. It has overlooked copious documentary proof that either exonerates me or at least directly contradicts what is alleged in the Indictment. At the same time, I believe Galioto intentionally withheld exculpatory evidence from the Grand Jury, as set out below.

8. Also, Steve Main ("Main") is a Florida civil attorney who is currently representing eight of the NHL players who invested in the Global Settlement Fund, six of whom are listed as John Doe victims in the Indictment. It is unclear why certain NHL Players who invested in the Global Settlement Fund are not listed as John Doe victims in the Indictment. Upon information and belief, Main and his clients are strongly contemplating bringing a derivative suit against Jowdy personally, in part, for the same allegations previously brought against him as part of the Global Settlement Fund.[1] Main has informed me that his clients believe that the government is wrongfully protecting Jowdy and that they do not believe that I defrauded them. He has himself told me that he believes that I am being "railroaded by Galioto" and that

---

[1] Those hockey players, including Greg Devries (John Doe 10) and eight others, currently have two "books and records" actions before the Court of Chancery of the State of Delaware against Jowdy's Diamante Del Mar and Diamante Cabo San Lucas entities, which involve a request for records made by or on behalf of a number of the hockey players regarding their investments in the real estate developments located in Baja, Mexico. These projects have been managed by Jowdy and the hockey players maintain that he has grossly mismanaged their investments and failed to keep them apprised of the ongoing activities of this entity. See **Exhibit C**, motion papers in this litigation that summarizes much of the facts involved therein.

4

"every time Galioto contacts [his] clients, they are uncomfortable and do not want to speak with him or participate in the government's case."

### Misconduct relating to Counts Six and Seven

9. Perhaps the most blatant example of improper Government conduct throughout its investigation and in this prosecution was its lack of attention to the records in its possession that led to Counts Six and Seven.

10. Paragraph 33 of the Indictment alleges that, "at Constantine's direction, that John Doe 15 transferred $200,000 from bank accounts to an escrow account in Los Angeles, in the name of John Doe 16, an attorney, to be invested in Eufora." The Indictment then states that "Constantine, on the same day of that transfer, directed that $155,000 of John Doe 15's investment be transferred to a bank account held in the name of AZ Falcon Partners, LLC, an entity controlled by Constantine and unrelated to Eufora."[2]

11. In essence, Counts Six and Seven represent the two wire transfer payments for $150,000 and $50,000 respectively, that comprise the $200,000 mentioned above.

12. The facts as laid out by the Government were simply not true, and the Government knew or should have known that those facts are false. Before my indictment, I voluntarily met with the Assistant United States Attorney ("AUSA") Arlo Devlin-Brown in the Southern District as well as Agent Galioto and explained the nature of those transactions.

13. The $155,000 of John Doe 15's investment was in fact not wired to AZ Falcon Partners ("AZ Falcon") as alleged in the Indictment, but rather was inadvertently wired to the account of an entity named AZ Avalon Partners ("AZ Avalon"), then

---

[2] A Falcon 10 jet was wrongly seized on the basis of this false information.

"every time Galioto contacts [his] clients, they are uncomfortable and do not want to speak with him or participate in the government's case."

### Misconduct relating to Counts Six and Seven

9. Perhaps the most blatant example of improper Government conduct throughout its investigation and in this prosecution was its lack of attention to the records in its possession that led to Counts Six and Seven.

10. Paragraph 33 of the Indictment alleges that, "at Constantine's direction, that John Doe 15 transferred $200,000 from bank accounts to an escrow account in Los Angeles, in the name of John Doe 16, an attorney, to be invested in Eufora." The Indictment then states that "Constantine, on the same day of that transfer, directed that $155,000 of John Doe 15's investment be transferred to a bank account held in the name of AZ Falcon Partners, LLC, an entity controlled by Constantine and unrelated to Eufora."[2]

11. In essence, Counts Six and Seven represent the two wire transfer payments for $150,000 and $50,000 respectively, that comprise the $200,000 mentioned above.

12. The facts as laid out by the Government were simply not true, and the Government knew or should have known that those facts are false. Before my indictment, I voluntarily met with the Assistant United States Attorney ("AUSA") Arlo Devlin-Brown in the Southern District as well as Agent Galioto and explained the nature of those transactions.

13. The $155,000 of John Doe 15's investment was in fact not wired to AZ Falcon Partners ("AZ Falcon") as alleged in the Indictment, but rather was inadvertently wired to the account of an entity named AZ Avalon Partners ("AZ Avalon"), then

---

[2] A Falcon 10 jet was wrongly seized on the basis of this false information.

immediately redirected to Eufora and Bancorp (the issuing bank of the Eufora Prepaid Card) and used as intended and as the investors were advised.

14. The $155,000 was inadvertently wired to AZ Avalon's account on December 7, 2009. It was intended that the $155,000 be wired to Eufora, $5,000 of which was to be used for Eufora's rent and other administrative expenses, an appropriate use of funds from the investment and the remaining $150,000 was to be wired to Bancorp for an outstanding invoice, also an appropriate use of invested funds.

15. Unfortunately the $155,000 inadvertently went to AZ Avalon's account, and the moment I discovered the error, I immediately requested redirection of $150,000 to Bancorp and $5000 to Eufora's operating account.

16. **Exhibit D** is a true and correct copy of a 12/8/2009 email I sent immediately upon discovering the error with the initial transfer; **Exhibit E** is a true and correct copy of another 12/8/2009 email sent to the intended recipient Bancorp, providing the federal reference number for the wire and advising them that the funds were redirected to the proper intended recipient. These emails were not provided to Defendants, even though they are exculpatory and have been in the possession of the government since they were filed in 2011, as part of a Declaration that I submitted in the civil case brought against me by the same John Doe for the exact same allegations. The Government knew the above facts and had access to the emails referenced above, yet it still went ahead with Counts Six and Seven of the Indictment.

17. In discovery, the Government has produced copious documents that show that Counts Six and Seven lack a good faith basis. Including, but not limited to:

a) Subpoenaed AZ Avalon bank statements from Bank of Arizona were produced by the Government in discovery but <u>ignored</u>. They clearly show that $155,000 came from Attorney Ron Richards' (John Doe 16) Client Trust Account and that an outgoing transfer of $150,000 went to Bancorp the next day. See **Exhibit F** (BNK-AZ-00000037)

b) Subpoenaed bank statements from Attorney Ron Richards' Client Trust Account from First Century Bank were produced by the Government in discovery but <u>ignored</u>. They clearly show an outgoing wire transfer of $155,000 to AZ Avalon Partners, not AZ Falcon Partners. See **Exhibit G** (BNK-1ST-00000449)

c) Subpoenaed AZ Falcon bank statements from Bank of Arizona were produced by the Government in discovery but some of these statements were <u>withheld</u>. In spite of the fact that the Government subpoenaed and had in its possession all of the AZ Falcon Bank Statements from Bank of Arizona for the relevant time period, it has withheld the Bank Statements for AZ Falcon for the very month the alleged transaction occurred (December 2009). To be clear, this is the specific month the Government alleges that I unlawfully diverted $155,000 of Nick Privitello's (John Doe 15) $200,000 from Ron Richard's Trust Account at First Century Bank to the AZ Falcon Partners account. Had it not been withheld, this statement would clearly show that AZ Falcon did NOT receive any of Privitello's money, and would therefore show that Counts Six and Seven of the Indictment are false.

d) Forensic Accountant Robert Semple's Report was produced by the Government in discovery (SMC00001-45) but <u>ignored</u>. Semple was hired by Sergei Gonchar (John Doe 6) to perform a forensic accounting on all of the funds deposited in Ron Richards' Client Trust account, including Privitello's and those related to the

Global Settlement Fund. Semple's report showed that the $155,000 from John Doe 15's investment was not wired to AZ Falcon as alleged in the Indictment, but rather was inadvertently wired to AZ Avalon's account and then immediately redirected to Eufora and Bancorp and used for its intended purpose. See **Exhibit H**.

e) In sum, Galioto ignored the overwhelming evidence that shows that the $155,000 wire did not go to AZ Falcon but rather to AZ Avalon in error and that it was immediately rectified and sent to Eufora and Bancorp for the appropriate use as represented to the investors. This was on the record and in the hands of the Government at least 18 months prior to the Indictment.

f) Also, I believe that part of the reason the Government has incorrectly alleged that the $155,000 was diverted to AZ Falcon, was because they based their allegations entirely on a single erroneous and incomplete Excel spread sheet which was provided by Attorney Ron Richards to Kenner and others after the activities related to the Global Settlement Fund had ceased. This is another instance of improper conduct, as the most rudimentary independent verification of any of the multiple primary documents the Government had in its possession, would have shown that the allegations being made against me were not true. See **Exhibit H** at pg. SMC0000008.

18. Incidentally, Semple had offered his forensic report and testimony to Agent Galioto and the AUSA in the Southern District during a phone conversation that took place over a year before the bringing of the Indictment. During that call, Agent Galioto told Semple and the Attorney for Sergei Gonchar (John Doe 6) that he "wanted to hear nothing that Semple had to say."

8

### Misconduct relating to Counts Two through Five

19. The Government has intentionally withheld from the Defense and we believe the grand jury, evidence that implicates their own witnesses in the $700k fraud.

20. As set out later, in civil litigation involving many of the parties in the Indictment, I have previously articulated Kenner's fraudulent schemes. I have attached as Exhibit I an excerpt of my counterclaim in <u>AZ Eufora Partners I LLC et al v Constantine et al,</u> CV 2010-028333, in the Superior Court of the State of Arizona, County of Maricopa, where I detailed the nature of the fraud that Kenner and others committed that relates to the Government's allegations in the Indictment.

21. The Indictment claims that as part of the Eufora investments, $700K was transferred from various John Does to accounts held in the name of Eufora, and traces where that $700K went. (See Indictment Paragraphs 31-32).

22. Paragraph 32 claims that Kenner directed that the $700K be wired to an account in the name of Tim Gaarn (Co-Conspirator 1) and that at Kenner's direction, Gaarn then transferred approximately $351K to accounts that Kenner controlled.

23. The only allegation in paragraph 32 that pertains to me is the part that states "Co-Conspirator 1 sent additional money to a series of financial institutions as payment for Kenner's mortgage and credit card bills and personal expenses of the defendant Tommy C. Constantine…" There is no further description of such personal expenses.

24. In fact, Government witness Kaiser received significantly more money from this fraud than the Government admits in the Indictment, and the supporting proof was withheld from the Grand Jury and the defense. The significance of this is that the Government is portraying Kaiser as a victim, when their own records show that he was an active participant and significant beneficiary of the fraud. The Indictment

9

suggests that Kaiser received $70,300 but then wired it back to Kenner at his behest. But that is not the whole story. Examining the records produced by the Government, it is evident that Kaiser received and kept an additional approximately $105,000 that the Government does not mention in the Indictment. More importantly, I believe the Government did not disclose certain bank records that would have shown that Kaiser received such funds above and beyond the $70,300 referenced in the Indictment. It is reasonable to assume that this exculpatory evidence was never presented to the Grand Jury.

25. There are two supporting documents that have not been disclosed. One, Kenner's Bank of America statements, is somehow missing one single page, the one page that would show that Kaiser received additional funds from the proceeds of the alleged fraud. See annexed Exhibit J. This is significant because Count Two alleges that Gaarn transferred $30,000 to Kaiser, but the Indictment states, correctly, that Kaiser then transferred it back to Kenner (actually, to Standard Advisors, Kenner's company) that same day. But, in a transparent attempt to sanitize Kaiser's role, the Government doesn't follow through the rest of the story to show that Kaiser received additional funds from the fraud. On the next day, 2/13/09, Standard Advisors transferred the $30,000 to what, on information and belief, is one of Kenner's personal accounts. This can be seen on the first page of Exhibit J, which is a Standard Advisors bank statement. The rest of Exhibit J is Kenner's personal bank statement. (BNK-BOA-00001283 through BOA-00001285). It shows two $3000 payments made from Kenner to Kaiser. This is money the Indictment does not mention Kaiser receiving. It is clear that a page is missing, and that is the single page that would show Kenner's personal account receiving the $30,000 from Standard

Advisors. Essentially, by obscuring the depiction of the flow of funds from the fraud, the Government is able to paint its witness, John Kaiser, in a false light.

26. The other supporting piece of this argument is that Kaiser's disclosed bank statements are limited only to the $70,300 mentioned in the Indictment, and to older accounts from unrelated banks. The Government has failed to produce any of Kaiser's Wells Fargo bank statements, which is the account that received the additional approximately $105K of the proceeds from the fraudulent scheme that Kaiser kept.

27. Similarly, the records indicate that Michael Peca (John Doe 2), received over $40,000 from the proceeds of this fraud. Though I am confident that Peca was not aware that the funds he was receiving from Gaarn and Kenner were fraudulently obtained, I believe this illustrates that many people were receiving money from Kenner with no knowledge of its fraudulent roots. This is also significant because Peca is working very closely with Kaiser, Berard, Jowdy and the Government. This is another example of the Government obscuring the details of financial transactions to be able to present its witnesses in a clean light.

28. Paragraph 31 also states that Kenner acquired an ownership interest in Eufora using $250,000 that he had fraudulently obtained from John Doe 8 by falsely representing that the $250,000 would be used to invest in a real estate project in Mexico on John Doe 8's behalf.

29. What the Government fails to note is that the entity which received that $250,000 investment was an entity which was wholly owned and controlled by Jowdy. Again, the Government has not produced various bank records associated with Jowdy that would support the fact that he was involved in that original $250,000 fraud. In fact,

the entire scheme originated with funds invested by the hockey players in Jowdy's failed Diamante Del Mar golf development. LMJ Management LLC, a Jowdy wholly owned and controlled company, was the Diamante Del Mar related entity that wired the initial $250,000 to Eufora as described in the Indictment.

30. While the Government has produced some bank statements for LMJ and other Diamante Del Mar related accounts from December 31, 2002 going forward, they failed to produce or intentionally withheld bank statements from August 2002, the relevant period of the alleged fraud, which would have again implicated their own witness. There are also no bank records provided to show that the funds were in fact invested by Owen Nolan (John Doe 8) as alleged in paragraph 32 of the Indictment; by my review of other information provided by the Government and other records, I believe that the $250,000 was actually provided by a different NHL player who is mysteriously missing from the Indictment as a John Doe victim.

31. The Government's failure to provide such documentation allows the Government to falsely portray Jowdy as either a victim or a neutral conduit through which additional fraud was committed. In its response to Kenner's application to reconsider bail, the Government wrote: "Kenner and Constantine have sought, long before the current indictment, to shift blame for the losses sustained by the victims to their former associate Jowdy." It further states: "[t]he defendants used Jowdy to "further victimize some of the same investors they had previously defrauded," and goes on to state: "It is clear that a major component of the defense at trial will be to continue to shift blame entirely to Jowdy." (See ECF Document 115 p.8) Simply put, I believe that the Government was only able to take this false position because of Agent Galioto's failure to provide the necessary documents in his possession that

12

rebuts it. Moreover, several of the NHL John Doe investors, the supposed victims of my alleged frauds, know this is a fallacy, as four of them, as well as several others who in spite of their participation in the Global Settlement Fund, Eufora and the Diamante projects, are inexplicably missing from the Indictment, are currently considering bringing a new lawsuit against Jowdy, charging him with fraud and other wrongdoing. In fact, the vast majority of the NHL investors disagree with the Government's case and believe Jowdy is the one who has stolen from them and that the Government is wrongfully protecting Jowdy. In effect, by Galioto's failure to provide the necessary documents in his possession, the Government is able to portray the victim of the alleged $250,000 fraud as being Nolan (John Doe 8), who previously sued Kenner and is clearly adversarial, as opposed to one of the NHL investors who does not believe he was defrauded or agree with the Government's case.

32. Therefore the withholding of the documents showing Jowdy's involvement and whether or not it was in fact Nolan's money involved in the fraud, is further evidence of the Government's misconduct.

## SEVERANCE

33. I also submit this affidavit in support of my motion for severance.
34. I do not believe that I could get a fair trial by being prosecuted with Phil Kenner.
35. I believe our defenses would be mutually antagonistic as that phrase is explained to me by my attorneys.
36. It is my understanding that Kenner's defense includes placing the blame on me as one of the fraudulent parties.

13

37. For example, I understand that in a Government application for a Search Warrant, that a supporting affidavit contains sworn admissions that Kenner has and will continue to try to implicate me. An excerpt from the supporting affidavit is annexed as Exhibit K. In the affidavit, Special Agent Joshua Wayne references an email that Kenner sent to Kaiser (John Doe 14) and others on April 19, 2011. In that email, Kenner wrote "[a]s you are all aware, Constantine has misappropriated the lion share of the GSF (Global Settlement) funds, that would have been a great assistance to us in the Mexican pursuit of Jowdy [John Doe 17], for his own benefit." Clearly, this email shows that Kenner's defense strategy will be to inculpate me.

38. Moreover, Kenner and I have been on the opposite sides of several litigations, and his court filings in those litigations also shows that he will attempt to blame me for many of the frauds alleged in the Indictment.

39. For example, we were on opposite sides of litigation after I filed for Chapter 11 bankruptcy in Arizona, and Kenner filed an adversary proceeding, claiming in part that I had defrauded him. A copy of a declaration that Kenner submitted in support of a motion for reconsideration in that proceeding is annexed as **Exhibit L**. Kenner also filed (pro se) several similar adversarial complaints in my bankruptcy on behalf of several of his clients. At one point it became necessary for me to file a Protective Order against Kenner due to his actions surrounding all of the litigation between us. See Protective Order annexed as **Exhibit M**.

40. I have already laid out in court filings my belief that Kenner has engineered a fraudulent scheme with the assistance of others. For example, in a 2010 lawsuit filed against me in Superior Court of Arizona (CV2010-028333) which was brought against me by the hockey players and the other investors in Eufora at the direction of

14

Kenner, Gaarn, Gentry, Kaiser and Berard, I counterclaimed against, amongst others, Kenner, Gaarn, Gentry, Berard, and Kaiser.

41. In my Counterclaim, I articulated the nature of the fraud that Kenner and others committed, that relates to many of the Government's allegations in the Indictment. As previously noted, I have attached an excerpt of my Counterclaims as Exhibit I.

42. In fact, not only did I not participate in the fraud, but I was the one who brought this fraud to the Government's and others' attention.

43. I compiled all of the supporting evidence and reported what I had uncovered first to Lt. Dave Letourneau and later to Lt. Jeff Gentry of the Special Investigations Unit at the Maricopa County Sheriff's Office. Also, I later informed Scott Romonowski with the SEC, who at the time was investigating Jowdy and Kenner with the AUSA Arlo Delvin-Brown and Agent Galioto in the Southern District. I also reported it to many of the John Doe investors in this action and their respective attorneys including Michael Meeks, who represented Owen Nolan (John Doe 8) in the lawsuit brought by Nolan against Kenner. In fact, I initiated a meeting with Meeks and gave him all of the evidence that I had found and he asked if he could give it to the FBI. I said yes and to my knowledge he gave it to the FBI. That is when Romonowski contacted me via telephone.

44. Additionally, in support of my motion for severance, I note that there is a great disparity in both the proof and the nature of the allegations against Kenner and I.

45. Kenner is alleged to have induced the hockey player investor John Does to make investments. For instance, in a 11/3/2014 letter opposing a motion by Kenner seeking a hearing to reargue pretrial detention, the Government wrote the following about Kenner:

15

> "At trial, the evidence will show that Kenner induced over two dozen investors...to contribute between $50,000 to $100,000.....Kenner also persuaded nine victims to establish lines of credit at Northern Trust bank, a financial institution picked by Kenner." (ECF Doc 115 p.6)

46. In contrast, the Indictment does not allege that I ever spoke with any of Kenner's clients prior to them making their investment in Eufora, and my alleged role in any fraud relating to lines of credit is minuscule compared to my co-defendant.

47. In fact, the bulk of the evidence against me appears to be a digitally recorded conversation between Kenner and I (the authenticity of which I vehemently deny, as set out below) and certain documentary proof of funds transferred into accounts under my control.

48. With respect to any such purported transfers, I never knew there was anything improper about the source of the funds. I never knowingly accepted any funds whose source was of questionable derivation.

## SUPPRESSION OF THE AUDIO DIGITAL RECORDING

49. I also seek to suppress the digital recording made of a conversation between Kenner and I that Kenner secretly recorded on his iPhone.

50. I have listened to the recording and it is not a fair and accurate representation of the conversation as I remember it.

51. I believe that parts of the recording have been selectively edited. In the presence of others while in the court's holding cell, Kenner admitted to me that he altered the recording. Also, I am aware of other instances in previous civil proceedings where Kenner has manipulated evidence and witness testimony.

16

52. It is also clear to me that the end of the conversation is missing. As I recall our conversation, near its end, the subject shifted to Kenner's culpability and my innocence. Perhaps unsurprisingly, that portion is completely missing from the tape.

CONCLUSION

53. Therefore, for all the reasons set out above, I respectfully ask this court for an order (1) dismissing the Indictment in its entirety for Government misconduct or in the alternative, for an evidentiary hearing; (2) dismissing Count Four of the Indictment for lack of venue; (3) severing my trial from codefendant Phillip Kenner; and (4) suppressing an audio recording of a conversation between the defendants, or in the alternative, for a hearing on its authenticity and the production of the original recording on its original storage device for inspection and forensic examination (5) any other and further relief this court deems just and proper.

Dated:     Scottsdale, Arizona
           January 29, 2015

By: _____
    Tommy Constantine

NOTARY PUBLIC

STACEY THIBODEAU
Notary Public - Arizona
Maricopa County
Expires 08/10/2018

17