# Exhibit I

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810       Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
Attorneys for Defendants Constantine, D'Ambrosio and the Edrozos

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
Two Renaissance Square
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
Co-Counsel for Defendants

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| AZ EUFORA PARTNERS I, LLC, a Delaware limited liability company, THEODORE R. HUGHES and ROBERT J. RIZZI, derivatively on behalf of and for the benefit of EUFORA, LLC, an Arizona limited liability company, | Case No. CV2010-028333 |
| | AMENDED ANSWER AND COUNTERCLAIM |
| **Plaintiffs,** | |
| v. | |
| TOMMY CONSTANTINE, an individual, MARK D'AMBROSIO, an individual, MIA EDROZO and MANNY EDROZO, husband and wife, BRENT NERGUIZIAN and JACQUELINE NERGUIZIAN, husband and wife, and EUFORA CAPITAL III, LLC, a Delaware limited liability company, | (Assigned to the Honorable J. Richard Gama) |

| | |
|---|---|
| **Defendants.** | |
| **TOMMY CONSTANTINE, an individual, MARK D' AMBROSIO, an individual, MIA EDROZO and MANNY EDROZO, husband and wife.** | **Case No. CV2010-028333** |
| **Counterclaimant,** | |
| **v.** | |
| **AZ EUFORA PARTNERS I, LLC, a Delaware limited liability company, STANDARD VENTURES, LLC, a New Jersey limited liability company, GUIDE DOG, LLC, a Delaware limited liability company, PHILIP A. KENNER, an individual, MICHAEL STOLPER, an individual, CARLTON R. GENTRY, an individual, JOHN R. KAISER, an individual, TIMOTHY R. GAARN, , ERIC HATZIMEMOS, an individual, THEODORE R. HUGHES, an individual, ROBERT J. RIZZI, an individual, BRYAN BERARD, an individual, DOES 1-50,** | |
| **Counterdefendants.** | |

Defendants Tommy Constantine, Mark D'Ambrosio, Mia Edrozo and Manny Edrozo ("Defendants"), by and through undersigned counsel, and for their First Amended Answer to Plaintiffs' Complaint and Counterclaim, do hereby admit, deny and affirmatively allege as follows:

### ANSWER

1.    Defendants deny that Plaintiffs are members of Eufora, LLC ("Eufora").

2.    Defendants deny the allegations contained therein.  Defendants affirmatively allege that Plaintiff has no standing to bring such claims either as a derivative action or on

2

## **GENERAL ALLEGATIONS**

13.     Eufora was formed in 2001 by Constantine, D'Ambrosio, Matt Cottrell and C9 Consulting, LLC.  In 2002, Eric S. Edenholm and LMJ Management, LLC invested in and became Members of Eufora.

14.     AZ Eufora Partners, Standard Ventures and Gentry entered into Eufora's Amended and Restated Operating Agreement on February 23, 2009 ("Amended Operating Agreement"), signing as purported Members of Eufora.

15.     The current Members of Eufora, according to Schedule A of the Amended Operating Agreement, are Mark D'Ambrosio, Carlton R. Gentry, Tommy Constantine, C9 Consulting, LLC, Michael Andretti, Mia Edrozo, Standard Ventures and AZ Eufora Partners.

16.     Eufora's primary business is the issuance of credit cards and prepaid cards.

17.     Eufora utilizes certain patents, owned by Constantine, one of which allows Eufora's prepaid cardholders to build or rebuild their personal credit scores with the major reporting agencies ("Patents").

18.     Eufora has had to raise capital from time to time since its inception as a startup company.

## **MEMBERSHIP INTERESTS AND TRANSFERS**

19.     Kenner received and continues to receive fees from a group of hockey players to identify, procure and manage their various investments, including but not limited to their investments in Eufora.

20.     Kenner also took millions of dollars from the hockey players to invest in two golf course developments in Mexico and other real estate ventures with Mr. Ken Jowdy ("Jowdy").

21.     Upon information and belief, Kenner secretly skimmed $250,000 of the money he invested on behalf of his clients into one of Jowdy's Mexico developments in order to invest in Eufora on behalf of himself and Jowdy.

22.     On or about August 16 to 20, 2002, Kenner purchased a 5% interest in Eufora in the name of LMJ Management, Jowdy's company.

23.     On April 30, 2003, LMJ Management then transferred that interest to PKJ Management, which upon information and belief, was co-owned by Kenner and Jowdy.

24.     PKJ Management later transferred the interest to GDM 33, LLC which ultimately became Guide Dog, LLC ("Guide Dog"). Guide Dog is wholly owned and controlled by Kenner and is the primary entity used by Kenner to identify, procure and manage the hockey players' various investments.  Prior to Guide Dog being used in this capacity, Kenner used another of his wholly owned and controlled entities named Standard Advisors, LLC ("Standard Advisors").

25.     Upon information and belief, in a subsequent transaction, an existing Member of Eufora sold his 10% interest in the company to Kenner's clients through Kenner's solicitation of such clients in his role as their advisor.  In fact, the hockey players received only an 8.4% interest, while Kenner secretly skimmed the remaining 1.5% for himself in the name of Guide Dog, as well as a 0.1% interest for Gaarn, in the name of Standard Ventures.  Upon information and belief, Standard Ventures was formed by Kenner and Gaarn, and was the sister company for Standard Advisors, Kenner's previous investment management company.

26.     Gaarn became a *de facto* Manager of AZ Eufora Partners at the time Standard Ventures received his 0.1 % interest in Eufora.

27.     In another similar, subsequent transaction, Kenner's clients purchased an additional 5% interest in Eufora from another existing Member of Eufora, but only 4.2% of the 5% interest actually went to the hockey players, while Guide Dog again secretly received the remaining 0.8%, unbeknownst to Kenner's hockey player clients who paid for 100% of such interests.

28.     Upon information and belief, Kenner, Gentry and Gaarn later conspired together to (a) fraudulently convey all of the interests held by Guide Dog to Standard Ventures, and (b) subsequently sell those interests back to some of the same hockey players that had unknowingly funded their purchase in the first place.

29.     Gaarn took and held Guide Dog's interest in Eufora via Standard Ventures and acted as a "straw man" on behalf of Kenner.

30.     Gentry, who at the time was acting as the President and CEO of Eufora and was one its five Board Managers, was paid by Kenner to secretly facilitate this fraudulent conveyance to Gaarn, who was also a *de facto* Board Manager of Eufora as well as the *de facto* Manager of AZ Eufora Partners.

31.     These membership transfers were all done to hide Kenner's secret interests in Eufora from various third parties (certain former hockey player clients of Kenner's) who were suing Kenner in 2008 and 2009 for this specific allegation among others.

32.     Guide Dog transferred its interest in Eufora to Standard Ventures in late 2008 in the midst of these lawsuits and their related discovery periods.

33.     Gentry, who was aiding and abetting Kenner and Gaarn, altered Eufora's books and records to make it appear as though the transactions took place three years earlier, in 2005, through Gentry's and Kenner's creation of several fictitious supporting documents.  Gentry also directed Eufora's accountant to amend tax returns for 2005 and each subsequent year exclusively to legitimize the fraudulent transactions.  The purpose was to hide the time-sensitive transactions between Kenner and Guide Dog on the one hand and Gaarn and Standard Ventures on the other, from Kenner's litigation opponents in 2008, so Kenner could testify under oath that he held no such secret interest in Eufora.

34.     When these facts were discovered, as well as other inappropriate activities conducted by Gentry and Gaarn, Gentry was terminated as an employee of Eufora and both Gaarn and Gentry were terminated as Board Managers.  They were not terminated because of their so-called "whistleblowing" activities regarding the false allegations made against Constantine and others.

35.     Gentry became the President and CEO of Eufora in May of 2008 and acted as the *de facto* CFO, and became a Board Manager in February of 2009.

36.     As part of his participation in the scheme, Gentry helped Kenner fraudulently sell his interest, which was then being held by Standard Ventures, back to some of the hockey players who had originally funded that investment.

16

37.     In early 2009, after the lawsuits against Kenner had ended, Gentry arranged for Eufora to take in $700,000 of new money from the hockey players, who thought they were buying new interests in Eufora.

38.     Kenner solicited the new investment money from his existing clients who already held an interest in Eufora, claiming that Eufora's patents had finally been issued and the company was now very valuable and on the verge of being profitable.

39.     Upon information and belief, he advised his clients that they should increase their current interest in Eufora and "double down".  Kenner and Gentry used Eufora's bank account as the clearing account to receive this new investment money so it did not appear to Kenner's clients as though an existing Member was selling its interest.

40.     Gentry had Eufora receive the $700,000, then immediately pay it back out to Gaarn's personal bank account.

41.     Upon information and belief, these funds ultimately ended up, in whole or in part, in the hands of Kenner, one of his entities, or yet another close associate of Kenner's acting as a straw man.

42.     The original $250,000 taken from the hockey players' investment in the Mexico real estate project funded the 5% stake owned by LMJ, then PKJ, then Guide Dog, then Standard Ventures, as well as the subsequent additional interests secretly skimmed and amassed by Kenner, which were then bought back by the hockey players for $700,000.

43.     One of the three plaintiffs against Kenner in the 2008-2009 litigation, former hockey player and Kenner client Owen Nolan ("Nolan"), was awarded a $2.8 million judgment.

Gentry and Gaarn ultimately helped Kenner circumvent a judgment and garnishment of Kenner's income, and helped hide these assets from court ordered debtor's exams.

44.     Upon information and belief, because Nolan has been unable to collect any money with respect to the $2.8 million judgment, the remaining two plaintiffs against Kenner, hockey players Joe Juneau and Ethan Moreau, have dismissed their lawsuits.

45.     Kaiser, also a co-conspirator along with Kenner, Gaarn and Gentry, previously invested millions of dollars in various failed real estate deals with Kenner and other investments/entities not related to Eufora.

46.     Upon information and belief, when it became evident that these investments had failed, Kenner told Kaiser he would receive an interest in Eufora in consideration of those failed investments.

47.     When Kenner no longer had his own interests to convey to Kaiser, both Kenner and Kaiser, with the assistance of Gentry and Gaarn, conspired to attempt to extort a 20% interest from Constantine.

48.     When that effort failed, they instead focused on a hostile takeover of the entire company through manipulation of the hockey player investors.

## THE NERGUIZIAN LOAN

49.     Nerguizian, through Neptune Company Asset Holdings, LLC, provided a loan for up to $5 million, and ultimately loaned Eufora approximately $2.5 million on or about February 23, 2009 ("Nerguizian Loan"), through Eufora Capital II, LLC ("Eufora Capital II").   The

18