JMM:SK
F.#2013R00948

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

LONG ISLAND OFFICE

UNITED STATES OF AMERICA

     - against -

PHILLIP A. KENNER,
    also known as
       "Philip A. Kenner," and
TOMMY C. CONSTANTINE,
    also known as
       "Tommy C. Hormovitis,"

       Defendants.

- - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 13-607 (S-1) (JFB)
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
  982(b)(1), 1343, 1349, 1956(h), 2 and 3551
  et seq.; T. 21, U.S.C., § 853(p);
  T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

      At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and the Companies

      1.    The defendant PHILLIP A. KENNER, also known as "Philip A.

Kenner," was a financial advisor whose clients included, among other individuals, current and

former professional hockey players of the National Hockey League ("NHL") (hereinafter, the

"player-clients").   Since approximately the mid-1990s, KENNER advised the player-clients

on their financial affairs, managed their accounts at various financial institutions, and

recommended various investments to them, including investments in real estate development

projects and small, privately held companies.   KENNER was a licensed financial advisor

between approximately July 1994 and November 2004.   Between approximately August

2002 and 2007, KENNER held the position of Secretary at Eufora, LLC ("Eufora"), an Arizona-registered limited liability company that held itself out to be a seller of prepaid consumer debit cards.

  2. The defendant TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," was a former professional race car driver and business partner of the defendant KENNER. CONSTANTINE was the founder and Chief Executive Officer of Eufora. CONSTANTINE also operated and controlled Constantine Management Group, LTD ("CMG"), an Illinois Corporation, and Urban Expansion, LLC ("Urban Expansion"), a limited liability company with its principal place of business in Phoenix, Arizona. Both CMG and Urban Expansion held themselves out to be engaged in the management and development of real property for both commercial and leisure purposes.

  3. Between 2003 and 2005, the defendant KENNER created a series of Delaware limited liability companies for the purpose of purchasing real property in Hawaii. KENNER was the Managing Member of each entity, which included Little Isle IV, LLC ("Little Isle IV"), Big Isle IV Ventures, LLC ("Big Isle IV"), Big Isle V Ventures, LLC ("Big Isle V"), Big Isle VI Ventures, LLC ("Big Isle VI"), Kau Holding Company, LLC ("Kau Holding") and Ula Makika, LLC ("Ula Makika"), collectively referred to herein as the "Holding Companies." Several of KENNER's investment clients, including several of the player-clients, were "Members" of Little Isle IV and invested money in Little Isle IV to be used to purchase real property.

II. The Victims

  4. John Does 1 through 9, whose identities are known to the Grand Jury, used KENNER as a financial advisor and invested money at the suggestion and direction of

KENNER and CONSTANTINE. John Does 10 and 11 and Jane Doe 1, whose identities are known to the Grand Jury, also invested money based on representations from KENNER and CONSTANTINE.

III.    The Scheme to Defraud

5.    In or about and between August 2002 and April 2013, the defendants KENNER and CONSTANTINE devised, implemented, supervised and executed a scheme to fraudulently induce the player-clients and other individuals (collectively, the "Investors"), including John Does 1 through 11 and Jane Doe 1, to invest money by falsely stating that the funds would be invested in real estate in Hawaii, Eufora and an entity known as the "Global Defense Fund" (hereinafter "GSF") for the benefit of the Investors when, in truth and in fact, as KENNER and CONSTANTINE then and there well knew and believed, a substantial portion of the money would be improperly diverted to bank accounts controlled by KENNER and CONSTANTINE and used for their personal benefit, for unrelated business ventures and to conceal their scheme to defraud.

A.    The Hawaii Land Developments

6.    It was a part of the scheme to defraud that the defendant KENNER, as the Managing Member of the Holding Companies, induced certain of the Investors to wire large amounts of money to one or more bank accounts controlled by KENNER. KENNER represented to the Investors that, in return for their investment, they would receive an ownership interest in Little Isle IV, which would purchase and own a percentage of each of the acquired land parcels.

7.    The defendant KENNER additionally persuaded certain of the Investors, including John Does 1 through 6, to transfer bonds and equities to Northern Trust Bank, a

4

financial institution with its principal place of business in Chicago, Illinois, and to establish lines of credit (the "lines of credit"). Each line of credit was insured by bonds and equities held in the Investors' names. KENNER made a variety of misrepresentations to the Investors regarding the lines of credit and their use.

8.     It was further part of the scheme to defraud that the defendants KENNER and CONSTANTINE unlawfully diverted Investor money for their personal benefit, used money from Investors' lines of credit for unauthorized purposes, including for their personal benefit, and thereby dissipated the Investors' money, bonds and equities.

9.     It was further part of the scheme to defraud that the defendant KENNER obtained mortgage loans on properties purchased with the Investors' money and subsequently diverted the loan proceeds to entities unrelated to the Hawaii land development project, as well as to bank accounts that KENNER and CONSTANTINE controlled.

10.     In or about August 2006, Lehman Brothers Holdings, Inc. ("Lehman") agreed to finance the development of the Hawaii parcels that were purchased using the Investors' money. As part of the financing agreement, Lehman made a $6.8 million payment to a company that the defendant KENNER controlled and a $6.9 million payment to a company that the defendant CONSTANTINE and another individual, whose identity is known to the Grand Jury, controlled. KENNER and CONSTANTINE unlawfully diverted certain money from the Lehman loan proceeds for unauthorized purposes, including for their personal benefit.

11.     To conceal a portion of the scheme, until approximately January 2009, the defendant KENNER continued to make sporadic interest payments, including late payments, that were owed on money that KENNER withdrew from the lines of credit of John

5

Does 1 through 4.  In or about late March 2009, Northern Trust Bank closed John Doe 1 through John Doe 4's lines of credit for failure to pay interest and principal and liquidated the equity that had secured each of the lines, resulting in millions of dollars in losses to John Does 1 through 4.

B.    The Eufora Investments

12.    It was a further part of the scheme to defraud that between February 2008 and May 2009, the defendant KENNER convinced John Does 2 through 4, John Doe 8 and John Doe 9 to invest money in Eufora, in exchange for an ownership interest in the company, by representing to each of them that Eufora was a promising company with great potential for growth.  The defendants KENNER and CONSTANTINE then unlawfully diverted certain money for unauthorized purposes, including for their personal benefit.

13.    It was a further part of the scheme to defraud that between December 2008 and May 2009, the defendant KENNER convinced John Doe 4 and John Doe 8 to invest money in Eufora, in exchange for an ownership interest in the company.   The defendants KENNER and CONSTANTINE then unlawfully diverted certain money for unauthorized purposes, including for their personal benefit.

14.    It was a further part of the scheme to defraud that between November 2009 and December 2009, the defendants KENNER and CONSTANTINE convinced John Doe 11 to invest money in Eufora, in exchange for an ownership interest in the company.   The defendant CONSTANTINE then unlawfully diverted certain money for unauthorized purposes, including for his personal benefit, and disavowed John Doe 11's ownership interest in Eufora.

6

C.    The Global Settlement Fund

15.    It was a further part of the scheme to defraud that between May 2009 and February 2010, the defendants KENNER and CONSTANTINE defrauded certain of the Investors to contribute to an entity known as the GSF, which KENNER and CONSTANTINE represented to be a legal defense fund.   The defendants KENNER and CONSTANTINE then unlawfully diverted certain money for unauthorized purposes, including for their personal benefit.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

16.    The allegations contained in paragraphs 1 through 15 are realleged and incorporated as though fully set forth in this paragraph.

17.    In or about and between August 2002 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PHILLIP A. KENNER, also known as "Philip A. Kenner," and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Investors, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH SIX
### (Wire Fraud)

18.     The allegations contained in paragraphs 1 through 15 are realleged and incorporated as though fully set forth in this paragraph.

19.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants PHILLIP A. KENNER, also known as "Philip A. Kenner," and TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Investors, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce, as set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| TWO | February 12, 2009 | $30,000 wire transfer from Co-Conspirator 1's account at Wachovia Bank in Closter, New Jersey to John Doe 10's Commerce Bank account in the Eastern District of New York. |
| THREE | February 26, 2009 | $40,300 wire transfer from John Doe 10's account at Commerce Bank in the Eastern District of New York to an account in the name of KENNER at Bank of America in Scottsdale, Arizona. |
| FOUR | May 22, 2009 | $25,000 wire transfer from KENNER's account at Bank of America in Scottsdale, Arizona to John Doe 10's Commerce Bank account in the Eastern District of New York. |

| FIVE | December 7, 2009 | $150,000 wire transfer from John Doe 11's account at Fidelity Investments in the Eastern District of New York to an account at First Century Bank in Los Angeles, California. |
| SIX | December 7, 2009 | $50,000 wire transfer from John Doe 11's account at Citizens Bank in the Eastern District of New York to an account at First Century Bank in Los Angeles, California. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

<u>COUNTS SEVEN AND EIGHT</u>
(Wire Fraud)

20.     The allegations contained in paragraphs 1, 2, 4 and 7 are realleged and incorporated as though fully set forth in this paragraph.

IV.     <u>The Led Better Fraud Scheme</u>

21.     In or about and between October 2006 and May 2012, the defendant PHILLIP A. KENNER, also known as "Philip A. Kenner," devised, supervised and executed a scheme to defraud certain of the Investors of money and property through the purchase of real property located in Sag Harbor, New York (the "Sag Harbor Property"). John Doe 10 and others had owned the Sag Harbor Property since 2005.

22.     It was a part of the scheme to defraud that in or about October 2006, the defendant KENNER created Led Better Development Company, LLC ("Led Better"), a Delaware limited liability company, for the purpose of purchasing the Sag Harbor Property. Thereafter, KENNER created an operating agreement stating that KENNER, John Doe 1, John Doe 10 and another individual, whose identity is known to the Grand Jury, were each to be 25% owners of Led Better. KENNER did not disclose the operating agreement to John Doe 1 and John Doe 14 prior to or at the time of the purchase of the Sag Harbor property.

23.   It was a part of the scheme to defraud that, at the time that the defendant KENNER created the Led Better operating agreement, KENNER falsely represented to John Doe 10 and others that he would purchase the Sag Harbor Property from them, and that thereafter KENNER, John Doe 10 and others would invest in the Sag Harbor Property such that KENNER would purchase a 50% interest in the property.

24.   It was a further part of the scheme to defraud that, on or about October 19, 2006, the defendant KENNER transferred, without the permission, consent and knowledge of John Doe 2, $395,000 from John Doe 2's line of credit at Northern Trust Bank to a bank account that KENNER controlled in the name of Led Better Development Company at Wells Fargo Bank.   KENNER transferred the $395,000 through two other bank accounts that KENNER controlled before transferring it to KENNER's Wells Fargo Bank account.

25.   It was a further part of the scheme to defraud that KENNER falsely represented to John Doe 1 that John Doe 1 would be a 50% owner of the Sag Harbor Property and instructed John Doe 1 to wire approximately $375,000 to the Led Better account at Wells Fargo Bank, which John Doe 1 did.

26.   It was a further part of the scheme to defraud that KENNER unlawfully diverted money contributed for the Sag Harbor Property for unauthorized purposes, including for his personal benefit and the benefit of CONSTANTINE.

27.   In order to conceal his use of John Doe 2's line of credit to purchase the Sag Harbor property, the defendant KENNER continued to make interest payments on John Doe 2's line of credit until approximately January 2009.   After KENNER ceased making such payments, Northern Trust Bank closed John Doe 2's line of credit and liquidated the equity that secured the account, causing a substantial loss to John Doe 2.

10

28.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant PHILLIP A. KENNER, also known as "Philip A. Kenner," did knowingly and intentionally devise a scheme and artifice to defraud John Doe 1 and John Doe 2, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce, as set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|-------|---------------------------------------|----------------------------------|
| SEVEN | November 20, 2008 | $43,000 wire transfer from KENNER's account at Wells Fargo Bank in Scottsdale, Arizona to the Ula Makika account at Northern Trust Bank in Scottsdale, Arizona. |
| EIGHT | December 31, 2008 | $35,000 wire transfer from KENNER's account at Wells Fargo Bank in Scottsdale, Arizona to the Little Isle IV account at Northern Trust Bank in Scottsdale, Arizona. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT NINE
(Money Laundering Conspiracy)

29.     The allegations contained in paragraphs 1 through 15 and 21 through 27 are realleged and incorporated as though fully set forth in this paragraph.

30.     In or about and between August 2002 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, defendants PHILLIP A. KENNER, also known as "Philip A. Kenner," and TOMMY C.

11

CONSTANTINE, also known as "Tommy C. Hormovitis," together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: wire transfers of money, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349, respectively, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH EIGHT

31.     The United States hereby gives notice to the defendants charged in Counts One through Eight of this Indictment that, upon their conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of such offenses, or a conspiracy to commit such offenses, including but not limited to the following:

Money Judgment

32.     A sum of money equal to at least approximately $30,000,000.00 in United States currency; and

Specific Property

        a.     all right, title and interest in the real property and premises located at 95-4928 Hawaii Belt Road, Naalehu, Hawaii, parcel number 3-9-5-014-046, also known as the Sugar Mill property, and all proceeds traceable thereto;

        b.     all right, title and interest in the real property and premises located at Lot 469, Discovery Harbor, Unit 1, Naalehu, Hawaii, parcel number 3-9-4-17-20, and all proceeds traceable thereto;

        c.     one 1976 Falcon 10 airplane, Aircraft Serial Number 69, Engine Type Garrett TFE731-2, Serial Numbers P73202, P73222 and FAA Registration Mark N530TC; and

        d.     all right, title and interest in the real property and premises located at 10705 East Cactus Road, Scottsdale, Arizona.

        33.     If any of the above-described forfeitable property, as a result of any act or omission of a defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title, 28 United States Code, Section 2461(c), to seek forfeiture of any other

13

property of the defendants, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT NINE

34.    The United States hereby gives notice to the defendants charged in Count Nine of this Indictment that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the following:

### Money Judgment

35.    A sum of money equal to at least approximately $30,000,000.00 in United States currency; and

### Specific Property

a.    all right, title and interest in the real property and premises located at 95-4928 Hawaii Belt Road, Naalehu, Hawaii, parcel number 3-9-5-014-046, also known as the Sugar Mill property, and all proceeds traceable thereto;

b.    all right, title and interest in the real property and premises located at Lot 469, Discovery Harbor, Unit 1, Naalehu, Hawaii, parcel number 3-9-4-17-20, and all proceeds traceable thereto;

14

   c.  one 1976 Falcon 10 airplane, Aircraft Serial Number: 69, Engine
Type: Garrett TFE731-2, Serial Numbers P73202, P73222 and FAA Registration Mark
N530TC; and

   d.  all right, title and interest in the real property and premises
located at 10705 East Cactus Road, Scottsdale, Arizona.

   36.  If any of the above-described forfeitable property, as a result of any act
or omission of a defendant:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property, which cannot be
divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as
incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

15

property of the defendants, up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21,

United States Code, Section 853(p)).

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2013R00948

FORM DBD-34
JUN. 85

No. 13-607 (S-1)

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*PHILLIP A. KENNER, also known as "Philip A. Kenner," and*
*TOMMY C. CONSTANTINE, also known as "Tommy C. Hormovitis,"*

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
                                                                                *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                                                *Clerk*

*Bail, $* _____

*James Miskiewicz, Assistant U.S. Attorney (631) 715-7841*