

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMM/SK
F.#2013R00948

*610 Federal Plaza*
*Central Islip, New York 11722*

April 26, 2015

By ECF

The Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Tommy Constantine
              Criminal Docket No. 13-607 (S-2) (JFB)

Dear Judge Bianco:

      The government respectfully submits this letter brief in opposition to the April 26, 2015 motion by defendant Tommy Constantine ("Constantine" or "the defendant") requesting that his former name and alias "Tommy C. Hormovitis" be stricken from the superseding indictment. The government also moves in limine for permission to elicit from its witnesses testimony regarding how the defendant discussed his former name and prior drug conviction with victims of the fraud and with recipients of the fraud's proceeds.

      The defendant states that his former name "in no way relates him to the alleged crime." ECF No. 220 at 1. That is not true. The defendant himself made his former name and prior drug conviction part of his fraud in at least two ways. First, the defendant actively discussed his former name and prior drug conviction with prospective investors in an effort to establish credibility with those investors, preempt investors' suspicion in the event they conducted their own research into his past, give investors the impression that he was straightforward and honest, and thereby gain investors' trust. To this end, the defendant explained to investors that, since his drug conviction, he had changed his name and "turned his life around."[1] The government's witnesses will testify that these statements were part of -- and interwoven into -- a broader discussion with the defendant regarding investment opportunities and that the statements were important to the investors' decisions to entrust the defendant with their savings.

---

[1] Notably, the defendant changed his name on March 11, 1998, ECF No. 220-1, after his drug conviction in 1993.

Second, the defendant directly applied proceeds of the fraud towards combating his former name and prior drug conviction (a personal use not authorized by the investors). Specifically, the defendant unlawfully diverted money from the Global Settlement Fund -- money the investors gave to fund legal action to recoup their investment losses -- to hire a New York public relations firm to boost his reputation. The defendant specifically referred the firm to a newspaper article that had mentioned the defendant's former name and prior drug conviction (see GX-3309) and asked the firm to respond.

The government seeks to introduce evidence of the foregoing aspects of the defendant's fraud in its case-in-chief. The government may introduce evidence of a defendant's alias or nickname if the evidence "directly relates to the proof of the acts charged in the indictment." United States v. Mitchell, 328 F.3d 77, 83 (2d Cir. 2003); see United States v. Kolesova, 208 F.3d 204, at *2 (2d Cir. 2000) (concluding that it was proper to permit the use of the defendant's five aliases where the use of each name was explained and properly admitted evidence contained each of the names). Moreover, it is well-established that evidence that is "inextricably intertwined" with the crimes charged or "necessary to complete the story" is admissible. United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); see, e.g., United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997).

The defendant's statements regarding his former name and prior drug conviction are direct evidence of the scheme to defraud. They demonstrate that he held himself out to be a trustworthy individual and explain how the relationship between the defendant and investors formed. They also underscore the importance of statements made by co-defendant Philip Kenner to the investors -- in which Kenner vouched for Constantine's trustworthiness -- and explain why the partnership between the defendant and Kenner formed. The defendant's statements regarding his former name and prior drug conviction are therefore highly relevant and admissible. See United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985) (evidence of prior drug activity was inextricably bound to witness's account of circumstances of charged offense); cf. United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (admitting evidence of prior crimes to explain how relationship between defendant and co-conspirator formed); United States v. Dworken, 855 F.2d 12, 26-27 (1st Cir. 1988) (admitting defendant's statements regarding prior drug transactions to explain how relationship between defendant and undercover agent formed); United States v. Mejia-Valez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994) (admitting accomplices' testimony that defendant told them about prior crimes to explain how relationship between defendant and accomplices formed). Excising those statements would artificially alter the witnesses' stories and undermine the "evidentiary richness and narrative integrity" of the government's case. Old Chief v. United States, 519 U.S. 172, 183 (1997); see also United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) (noting relevance of evidence that "adds context and dimension"). Likewise, the defendant's use of investors' money to combat his former name and prior drug conviction is also direct evidence of the scheme to defraud. It shows that the defendant used investors' money for his own personal benefit. See United States v. Stovall, 825 F.2d 817, 825 (5th Cir. 1987) (where defendant improperly received benefit from a loan, evidence detailing the nature of the improper benefit "was a legitimate and necessary part of the government's case" and admissible). Altogether, the evidence is "inextricably

intertwined" with the defendant's solicitation of investors and his unlawful diversion of investor money, and is "necessary to complete the story" of the fraudulent scheme. Carboni, 204 F.3d at 44.

The government's limited presentation of this evidence will not unduly prejudice the defendant. The government does not seek to prove the truth of the defendant's name change or prior drug conviction or the facts underlying them. The government merely seeks to introduce evidence of the defendant's own use of his former name and prior drug conviction in the fraud, to the extent that he put them at issue through his own statements and actions. The government will not ask the jury to draw any propensity inference from the defendant's past and any prejudice could be cured by an appropriate limiting instruction.[2]

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to strike his former name from the superseding indictment and grant the government's motion to introduce evidence that the defendant involved his former name and prior drug conviction in the fraud.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:   _/s/_____
      James Miskiewicz
      Saritha Komatireddy
      Assistant U.S. Attorneys
      (631) 715-7841/7085

cc:    All counsel of record (by ECF)

---

[2] The defendant's citation to United States v. Farmer is inapposite because, unlike in Farmer, the defendant's former name carries no inherent prejudice. See United States v. Farmer, 583 F.3d 131, 135 (2d Cir. 2009) (finding the defendant's nickname "Murder" to be "strongly suggestive of a criminal disposition and a propensity to commit particularly heinous crimes, including the very offenses charged in the indictment" and noting that the nickname "had no legitimate relationship to the crimes charged").