

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMM/SK
F.#2013R00948

*610 Federal Plaza*
*Central Islip, New York 11722*

June 8, 2015

By ECF

The Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    United States v. Philip Kenner and Tommy Constantine
              Criminal Docket No. 13-607 (S-2) (JFB)

Dear Judge Bianco:

        The government respectfully submits this letter in response to Ronald Richards' motion to quash the trial subpoena served upon him.

        Mr. Richards argues that the government's questioning would "force [him] to assert the attorney-client privilege." Ltr. at 2. He is wrong: The government is not seeking privileged information.

        The government seeks to call Mr. Richards as a witness at trial for two main purposes. First, the government seeks to call Mr. Richards to identify the transactions constituting the Global Settlement Fund and explain the Fund's administration. At present, the trial record includes bank records showing all of the transactions that occurred in Mr. Richards' client trust account from May 2009 through March 2010. However, the Global Settlement Fund consisted of only a subset of those transactions. Mr. Richards' accounting of those transactions is relevant to identifying the parameters of the Fund -- that is, to separating out the money controlled by the defendants from other money present in the same account but entirely unrelated to this case. Second, the government seeks to call Mr. Richards to identify the amounts and purposes of the fees he received from the Fund. During the relevant time period, Mr. Richards represented the defendants Kenner and Constantine on multiple personal matters separate and apart from any lawsuit against Ken Jowdy. Mr. Richards' testimony identifying the amounts and purposes of the fees he received is relevant to identifying unauthorized diversions from the Fund.

The Second Circuit has consistently held that, absent special circumstances, client identity and fee information are not privileged. See In re Shargel, 742 F.2d 61, 62 (2d Cir. 1984); Colton v. United States, 306 F.2d 633, 637-38 (2d Cir. 1962); United States v. Pape, 144 F.2d 778, 782 (2d Cir. 1944). While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously. For this reason, absent special circumstances not present here, disclosure of fee information and client identity is not privileged even though it might incriminate the client. In re Shargel, 742 F.2d at 63; In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 250 (2d Cir. 1984) (fees and client identity ordered disclosed; evidence relevant to determination of target's position in enterprise). Moreover, underlying facts known to the attorney are also not privileged because "the attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that the disclosure would reveal confidential communications." In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d Cir. 1984).

The information the government intends to elicit from Mr. Richards falls into these categories of non-privileged information. Indeed, the government simply seeks to establish at trial facts that Mr. Richards has already publicly disclosed in statements he has made to the State Bar of California, the victims in this case, and the press:

- **Mr. Richards tracked and disbursed GSF money as Constantine's money.**
    - In an email to the New York Daily News on May 7, 2015, Mr. Richards stated, referring to the GSF: "Those funds were deposited into my client trust account and I am obligated by law to disburse those funds upon the client's request, which I did." N.Y. Daily News, Michael Peca stunned by alleged con men who defrauded NHL players (May 7, 2015); see also Letter from R. Richards to D. Sermos, Investigator, State Bar of California, regarding McKee, Peca, and Norstrom, at 1 (May 3, 2012) (hereinafter "Ltr. to CA Bar") (GSF funds "were properly transmitted to my former client, Tommy Constantine").
    - See Ltr. to CA Bar at 2 ("I was informed by Constantine to expect the wire transfers so that my office could track the complainants' respective capital contributions. Once the funds were received into my client trust account, Constantine was going to direct me to wire the funds, at his discretion, to the various accounts that would benefit himself, the complainants and Kenner. . . . After receiving the various wire transfers from [McKee, Peca, and Norstrom], pursuant to instructions from my client (Constantine), I immediately forwarded the full amount of the wire transfers to him.").
    - See Ltr. to CA Bar at 3 ("I did not have any relationship whatsoever with [McKee, Peca, and Norstrom] when they wired the funds and my only obligation was to wire those funds as instructed by my client (Constantine). . . . Constantine concluded that it would be more efficient to give instructions to me on where the funds should be wired rather than to have

me wire the funds to him (Constantine) and then wire them again to the intended recipient. Moreover, Constantine felt that this procedure would avoid having to wait for the several days that it sometimes took for banks to post and credit wired funds. I simply followed Constantine's instructions with respect to the wiring of the funds.").
    - See Ltr. to CA Bar at 4 ("In August 2010, complainant McKee asked me if he still had funds in my client trust account. I told McKee that I had disbursed all of the funds pursuant to Constantine's instructions.").
    - See Letter from R. Richards to D. Sermos, Investigator, State Bar of California, regarding Kaiser and Privitello, at 1 (May 3, 2012) (hereinafter "Ltr. to CA Bar II") ("I forwarded the wire transfers from Mr. Privitello and Mr. Kaiser to my client, Tommy Constantine, as Mr. Constantine instructed.").
- **Mr. Richards did not speak with the victims about the disbursement of GSF money.**
    - See Ltr. to CA Bar at 1 ("I never met any of the complainants [McKee, Peca, and Norstrom], never spoke to them on the telephone and never had their e-mail addresses.").
- **GSF money was not used for the purpose of paying Mr. Richards legal fees to fight Ken Jowdy.**
    - See Ltr. to CA Bar at 1 ("At the time the funds were wired to my client trust account, none of the complainants were my clients. The funds that were transmitted to my client trust account were continuing capital contributions to various limited partnership agreements in which each of the complainants had an interest, as well as capital to fund various projects between the complainants, Philip Kenner and Mr. Constantine."); Ltr. to CA Bar at 2 ("Kenner and his clients had joint investments with Constantine at the time, consisting of membership interests in various limited liability companies. I was not involved in these investments nor did I represent or incorporate any of the entities, which were incorporated in Arizona. These limited liability corporations (LLCs), or the vendors affiliated with the LLCs, were the entities that received all of the funds that were wired into my client trust account, as explained more fully below."); Ltr. to CA Bar at 3 ("I was never a party or advisor to any of those transactions and I never received any funds or compensation from any of those transactions.").
    - Ltr. to CA Bar at 3 ("The funds that had previously been wired to my client trust account were not my legal fees in the Jowdy case. . . . The amounts wired by the complainants were far in excess of what I charged for one civil action.").
- **During the relevant time period, Mr. Richards represented the defendants Kenner and Constantine on personal matters unrelated to suing Ken Jowdy.**
    - See Ltr. to CA Bar at 2 ("Prior to May 2009, I represented Tommy Constantine ('Constantine') in a civil action in federal court in Los

3

> > Angeles. I was successful in getting the action dismissed. Because of that success, Constantine asked me to continue serving as his attorney. I later represented Philip Kenner ('Kenner') in an arbitration in Arizona.")
> > - Ltr. to CA Bar at 3 (in June 2009, "I was also representing Constantine and Kenner at the time in other actions" unrelated to suing Ken Jowdy (enclosing conflict waivers indicating the same)).
>
> - **Mr. Richards was not engaged to initiate a lawsuit against Ken Jowdy until June 2009.**
>   - See Ltr. to CA Bar at 3 ("Constantine retained me [in June 2009] to file an action against Jowdy. The nineteen (19) plaintiffs in this action included complainants McKee, Peca and Norstrom.").
> - **Mr. Richards separately billed Mr. Peca for legal fees, specifically in connection with a 2011 representation of Mr. Peca before a New York grand jury.**
>   - See Ltr. to CA Bar at 2 ("Mr. Peca and Mr. Norstrom paid attorney fees to my firm for new legal services that I provided to them well after the wired funds had been disbursed.");
>   - Ltr. to CA Bar at 4 ("On March 24, 2011, complainant Michael Peca retained me to provide additional legal services to him in the Southern District of New York. I flew to New York, met with complainant Peca for eight hours and then represented him for a full day the following day before the grand jury in federal court. As consideration for these legal services, complainant Peca wired $8,000 to me from his wife Kristin's account" (attaching copy of wire receipt)).
> - **Mr. Richards kept and is able to provide an accounting of GSF money.**
>   - See Ltr. to CA Bar at 3 ("I would have provided documentation regarding money they [McKee, Peca, and Norstrom] were wiring to Constantine through my client trust account if I had been requested to do so."); Ltr. to CA Bar at 4 ("I provided evidence to the complainants that the funds were disbursed to various attorneys and entities at Constantine's direction.").
>   - Ltr. to CA Bar II at 1 ("I provided Mr. Stolper and Mr. Kenner with all the evidence and confirmation they requested as to the transmittal of the funds to Mr. Constantine.").

Mr. Richards' remaining arguments are unavailing. Mr. Richards argues that testifying against his former client would violate the attorney-client privilege and California ethical rules. Ltr. at 2. However, the attorney-client privilege is a communications privilege, not a privilege against adverse testimony, see In re Grand Jury Subpoena Duces Tecum, 731 F.2d at 1037, and state ethical rules must give way to federal courts' abilities to enforce validly issued subpoenas. See, e.g., Pineboard Holdings, Inc. v. Parmar, 555 F. App'x 92, 93 (3d Cir. 2014) (noting no ethical impropriety where California district court ordered attorney to testify against former client). Indeed, the government notes that it has already called a California attorney to testify at trial against her former client on similar matters of client identity and accounting and the testimony was without incident.

4

Mr. Richards also notes that he is "a busy litigator with an active trial and appellate practice." Ltr. at 1. However, Mr. Richards, like any other person, has a public duty to give testimony when properly summoned to do so. See Blair v. United States, 250 U.S. 273, 281 (1919) ("it is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned."). Mr. Richards cannot show that his compliance with a trial subpoena would be any more oppressive or unreasonable than any other live witness. Indeed, as the Court is well-aware, multiple attorneys have already appeared to testify at this trial (including one attorney who was on the eve of beginning his own trial). As the government has done with these previous witnesses, the government will seek to minimize the imposition on Mr. Richards by making travel arrangements that accommodate his schedule and requesting permission to take witnesses out of turn if necessary.

For the foregoing reasons, the government respectfully submits that Mr. Richards' motion to quash should be denied.

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney

By: _/s/_____
James Miskiewicz
Saritha Komatireddy
Assistant U.S. Attorneys
(631) 715-7841/7085

cc: All counsel of record (by ECF)