## REYNOLDS, CARONIA, GIANELLI & LA PINTA, P.C.
ATTORNEYS AT LAW
200 VANDERBILT MOTOR PARKWAY, SUITE C-17
HAUPPAUGE, NEW YORK 11788

JAMES T. REYNOLDS
PETER R. CARONIA, LLC.
PAUL GIANELLI
ANTHONY M. LA PINTA

TEL: 631.231.1199
FAX: 631.300.4380
www.rcgllaw.com

OF COUNSEL:

JOHN T. CATTERSON
CATHERINE E. MILLER
CHRISTOPHER J. PURCELL

MICHAEL E. FEHRINGER
BRETT J. BENNETT

**VIA ECF**

June 10, 2015

The Honorable Joseph F. Bianco
United States District Court, EDNY
Alphonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, New York 11722

    Re:    United States v. Kenner and Constantine
               13 CR 607 (JFB)

Dear Judge Bianco:

    Kindly accept this letter reply to the Government's opposition to Ronald Richards' (hereinafter, Richards) motion to quash his subpoena. At the Court's request, this reply is limited to the following issues: The crime-fraud exception to the attorney-client privilege and the applicability of *In re Shargel,* 742 F.2d 61, 62 (2d Cir.1984).

    Richards' Anticipated Testimony

    Despite the Government's contention that they intend to illicit only non-privileged testimony from Richards, their opposition papers indicate a wider scope of inquiry. They state, "[T]he government seeks to call Mr. Richards to identify the amounts *and purposes* of the fees he received from the Fund. (AUSA James Miskiewicz letter of June 8, 2015, at 1) (emphasis added). Therefore, it is clear that Richards' testimony will involve privileged attorney-client communications. While the parties have referred to " the Fund", the relevant inquiry here involves various unsolicited wire deposits and withdrawals from Richards general attorney escrow account.

    There has been no showing by the government that Richards actually had communications about the relevant withdrawals with his client(s). The Government is assuming such communications took place. Assuming that they did, inquiring as to the purpose of each

expenditure would require Richards to reveal the particulars about his attorney relationship with his clients, and information he obtained after their relationship ended. The proffered testimony would reveal client motives, communications, and confidences. Richards was also retained by at least six different NHL hockey players for collateral matters to the Fund. Richards achieved a dismissal of civil suits by Jowdy, a million-dollar judgment against Jowdy, and appeared at related grand jury proceedings on behalf of three players. He also participated in numerous interviews with the SEC and other law enforcement entities regarding the investigation of the alleged fraud. Due to his representation of multiple clients, Richards runs the great risk of revealing other confidential communications with other clients involved in this case.

Additionally, Richards' relevant legal fees were audited by an accountant for witness Sergei Gonchar. The accountant found Richards' disbursements from the Fund were not improper. The transactions of the Fund took place over six years ago. Richards no longer possesses billing statements, if they existed, relating to his representation of all of his prior clients involved herein. Therefore, his proposed testimony will be from his best recollection.

### The Crime-Fraud Exception

"The crime-fraud exception removes the privilege from those attorney-client communications that are 'relate[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (alteration in original) (quoting *In re John Doe Inc.*, 13 F.3d 633, 636 (2d Cir. 1994)). The exception also abrogates the work-product doctrine. *See In re Richard Roe Inc.*, 168 F.3d 69, 71-72 (2d Cir. 1999). But for the exception to apply, there must be "probable cause to believe that a [crime] ha[s] been committed . . . and that the communications . . . were in furtherance of the [crime]." *Jacobs*, 117 F.3d at 87. The burden of demonstrating probable cause rests on the party invoking the exception. *See In re John Doe*, 13 F.3d at 637.

The probable cause standard is "not an overly demanding" one. *A.I.A. Holdings v. Lehman Brothers*, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999). But it "is not satisfied by a showing that the material in question 'might provide evidence of a crime or fraud.'" *In re Fresh Del Monte Pineapple*, 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007) (quoting *In re Richard Roe Inc.*, 168 F.3d at 71), *aff'd sub nom. American Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010). Rather, the evidence must give "'a prudent person a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984)). "The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the communication." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d, at 1039. In determining whether the crime-fraud exception applies, "the pertinent intent is that of the client, not the attorney." *In re Omnicom Group Securities Litigation*, 233 F.R.D. 400, 404 (S.D.N.Y. 2006).

The crime-fraud exception applies only if there is probable cause to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity. *In re Richard Roe Inc.*, 68 F.3d, 40-41 (2d Cir. 1995). The act of wiring funds into the escrow account was lawful. The outbound wires were to legitimate entities, including title companies, vendors, and respected law firms. There is also no

allegation or evidence that Richards' communications with his client(s) involved fraudulent or relevant information. It is undisputed that Richards had no other role than transferring unsolicited funds from his account shortly after the funds were deposited.

In *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997), the Sixth Circuit stated that the government must establish some relationship between the communication at issue and a prima facie showing of a crime or fraud. There has been no proffer of evidence that the government is aware of such communication, beyond sheer speculation. In *United States v. De La Jara*, 973 F.2d 746, 748 (9th Cir. 1992), the Ninth Circuit held that the opponent of the privilege must show that the attorney was retained "in order to promote intended or continuing criminal or fraudulent activity." Here, Richards was retained by six different alleged victims of the investment fraud. There is no factual basis in the record that the hiring of Richards by his client(s) had any nexus to the alleged fraud. If a fraud occurred, it occurred, if at all, after the funds were withdrawn from the account. Richards is skilled attorney who was repeatedly hired by many trial witnesses who continue to seek his representation to this day. Richards has obtained remarkable legal results for numerous clients involved in this case, including many dismissals of lawsuits and a one million dollar verdict and judgment against Ken Jowdy in favor of Glen Murray for the misappropriation of Murray's money.

Finally, the Third Circuit has ruled that a client must have requisite intent at the time of consultation. *In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012). Richards was providing legal services <u>before</u> any of the first Fund money was deposited, and he provided additional legal services after the withdrawals were made. Therefore, a finding of probable cause that a fraud was committed should not be based on a latent claim of fraud. No alleged victim in this prosecution has ever filed a civil suit or claim regarding the improper administration of the Fund.

### Client Identity and Fee Information:

The government also intends to elicit the identity of Richards' client and fee and billing information and to rely on *In re Shargel*, 742 F.2d 61, 62 (2d Cir.1984), to support their position. Generally, the Second Circuit has determined that in the absence of special circumstances, client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice. *See In re Grand Jury Subpoena*, 781 F.2d 238, 247 (2d Cir.1986) (en banc).

In *Shargel*, a criminal defense attorney was forced to disclose several clients' names even though counsel's affidavit volunteered that a connection existed between six of his clients whose identities he sought to protect. The Second Circuit rejected the proposition that a confidential communication concerning criminal activity may be drawn from the fact that a person consults with a member of the criminal defense bar. *Id* at 64 & n. 4. In other words, the consultation with an attorney does not draw a negative inference. Thus, the government's reliance on *Shargel* is misplaced. *Shargel* does not stand for the proposition that an attorney can be compelled to testify about the particular terms of his retainer agreement and his billing records.

Richards is also precluded by California law from discussing his fee agreement. It is deemed a confidential communication. Bus. & Prof. Code Sec. 6149 states: A written fee contract shall be deemed to be a confidential communication within the meaning of subdivision (e) of Section 6068 and of Section 952 of the Evidence Code." Both of these state laws afford a complete privilege to the contents of a fee contract.

In *Vingelli v. U.S. Drug Enforcement Agency*, 992 F.2d 449, 452-54 (2d Cir. 1993), the Court acknowledged that the rule governing the unprivileged nature of client identification implicitly accepts the fact that a client might retain or consult an attorney for numerous reasons. It does not expand into the particulars of an attorney's representation. The Court opined that the unknown client may not have consulted the attorney regarding any legal questions. He or she may have sought only to shield his or her identity from discovery while assisting a friend, relative, or associate with the payment of legal fees, or the client may have been enmeshed in a complex of legal problems. The rationale that the *Vingelli* Court employed was that the "fact is that identifying the admittedly long-term client does not clarify the reason the client sought counsel. As evidenced by our present inability to divide the client's motive for seeking counsel, the purpose of the client's communication with the attorney would not become apparent merely upon disclosure of his or her identity."

The government's proposed inquiry of Richards is more akin to fee statements and billing, which further reveal client privilege. The Second Circuit has repeatedly ruled that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *see also Baker v. Dorfman*, 2001 WL 55437 (S.D.N.Y. 2001) ("The attorney-client privilege protects confidential client information that is contained in legal bills, but fee statements that do not contain detailed accounts of the legal services rendered are not protected from disclosure.") (internal quotation omitted).

In *Bria v. U.S.*, 2002 WL 663862, at *5 (D. Conn. Mar. 26, 2002), the district court rejected the government's attempt to have the attorney explain why he was terminated to ask about the nature of the fee dispute that he was involved in. As the court explained, information about fees and billing records are generally not covered by the attorney-client privilege. However, where the reason for the termination and the resulting dispute could invite responses that refer to the attorney's legal advice to the client, their strategy, and the client's motive in seeking representation in the first place, they may be privileged.

There is no proffer that Richards' retainer agreement with his client(s) or his billing records are at all relevant to the Fund's alleged fraud.

Conclusion

Richards' proposed testimony risks violating privileged attorney-client communications. For all of the reasons stated, we request that Richards' subpoena be quashed. In the alternative, in consultation with counsel for Constantine and Kenner, all parties are willing to stipulate to

4

information we believe the government is looking to illicit from Richards. This would be the most expeditious, probative and cautious way to address this matter. If the government refuses to stipulate, I request a hearing be conducted outside of the presence of the jury to define the scope and parameters of Richards' trial testimony in an attempt to avoid a confrontational and disruptive faceoff before the jury.

Respectfully submitted,

ANTHONY M. LA PINTA

AML/mef

cc: AUSA James M. Miskiewicz (Via ECF)
    Robert P. LaRusso, Esq. (Via ECF)
    Richard Haley, Esq. (Via ECF)