3130

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA

                                        CR-13-607


              -against-          :

                                        United States Courthouse
                                        Central Islip, New York

PHILLIP A. KENNER and
TOMMY C. CONSTANTINE,

       Defendants.               :
                                        June 9, 2015
- - - - - - - - - - - - - - - X   9:30 a.m.

              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE JOSEPH F. BIANCO
       UNITED STATES DISTRICT JUDGE, and a jury


APPEARANCES:

For the Government:        KELLY T. CURRIE
                           Acting United States Attorney
                           100 Federal Plaza
                           Central Islip, New York 11722
                           BY:  JAMES MISKIEWICZ, ESQ.
                                SARITHA KOMATIREDDY, ESQ.
                           Assistant United States Attorney




For the Defendants:        HALEY, WEINBLATT & CALCAGNI
                           One Suffolk Square
                           1601 Veterans Memorial Highway
                           Islandia, NY  11749
                           BY: RICHARD HALEY, ESQ.
                           For Mr. Kenner

3131

For the Defendants:

LARUSSO & CONWAY
300 Old Country Road
Mineola, NY  11501
BY: ROBERT LARUSSO, ESQ.
For Mr. Constantine


ANDREW L. OLIVERAS, ESQ.
26 Strangford Court
Oceanside, NY  11572
For Mr. Constantine


Court Reporter:                Mary Ann Steiger
                               100 Federal Plaza
                               Central Islip, New York 11722
                               (631) 712-6101


Proceedings recorded by mechanical stenography.
Transcript produced by computer.

3132

THE CLERK:  All rise.

THE COURT:  Please be seated.

(Case called, appearances noted.)

THE COURT:  Everybody is here.  Are we ready to
proceed?

MR. MISKIEWICZ:  We're ready.

THE COURT:  Yes.

MR. LARUSSO:  We are, your Honor.

MR. HALEY:  Yes, sir.

THE COURT:  Okay.  Bring in Mr. Berard.

MR. MISKIEWICZ:  Your Honor, to hopefully have
another record of no sidebars, I would like to hand up
C-100-A from the defense and we're going to be making an
objection to this document.

It's fairly lengthy.  It would be hearsay on the
grounds it was not contemporaneous with any of the frauds,
it's largely exculpatory, and is not admissible.

THE COURT:  Was this the one you told me about
yesterday?

MR. HALEY:  Your Honor, I'm not sure what the
Government showed you.  No, I don't believe it is, Judge.

(Pause in proceedings.)

THE CLERK:  All rise.

(The jury is present.)

THE COURT:  Please be seated.

3133

Good morning, members of the jury.

ALL JURORS:  Good morning.

THE COURT:  Good to see everyone back again this morning.

So, as you'll recall, yesterday, when we ended, Mr. Berard was on cross-examination by Mr. LaRusso.  We will continue from that point.

Mr. Berard, I remind you that you're still under oath; do you understand?

THE WITNESS:  Yes, I do.


BRYAN BERARD,

        called as a witness, having been previously

        duly sworn, was examined and testified further

        as follows:


THE COURT:  Go ahead, Mr. LaRusso.

MR. LARUSSO:  Thank you, your Honor.


CROSS-EXAMINATION

BY MR. LARUSSO:

Q.   Good morning, Mr. Berard.

A.   Good morning.

Q.   I want to clarify one point in the portion of your testimony regarding Mr. Privitello, where we mentioned the

Berard  -  Cross/LaRusso

3134

$250,000 mechanic's lien.

Do you recall that testimony?

A.   Yes, I do.

Q.   At that time, you knew Mr. Privitello was an associate, friend of Mr. Kaiser as well; is that right?

A.   That's correct.

Q.   And he was, that is Mr. Kaiser, was also part of the Paradise Valley investment?

A.   That's correct.

Q.   Do you remember, at or about that time in your conversations with Mr. Kaiser or through your observations, believing that Mr. Kaiser was a very wealthy person?

A.   I don't recall.

Q.   Do you remember testifying on October 9, 2014, in the case of Phil Kenner vs. John Kaiser and yourself, and mentioning the fact that you believed that Mr. Kaiser was a very wealthy man?

A.   I do not.

Q.   I'm going to show you what's been marked for identification as C 186.

And you can look at all of it, but I'll direct your attention to a number of the pages to refresh your recollection.

A.   Yes.

Berard  -  Cross/LaRusso

3135

Q.    Does that refresh your recollection that during that deposition on October 9, 2014, you testified:

        I knew John Kaiser.  At the time I believed that he was wealthy.

A.    Okay.

Q.    Do you remember that testimony?

A.    I remember that testimony, yes.

Q.    And when you made that comment in 2014, upon what did you base the fact that Mr. Kaiser was a very wealthy man?

        MR. MISKIEWICZ:  Objection, relevance.

        THE COURT:  I'll allow it.  Go ahead.  You can answer, Mr. Berard.

A.    I've seen John's house, but I knew the financial troubles he was in.

Q.    But at the time that you were involved in the Paradise Valley investments, you, under oath, testified that you believed him to be a wealthy man; is that correct?

A.    At that time, yes.

Q.    I'm going to discuss with you the Global Settlement Fund, if I may.

        You returned around March of 2009, I believe, and you had a number of conversations with Mr. Kenner and Mr. Constantine regarding the Global Settlement Fund; is that correct?

Berard  -  Cross/LaRusso

3136

A.    That would be correct.

Q.    I believe it's your testimony that from your point of view, there were several purposes that were discussed with you for the contributions of monies to the Global Settlement Fund; is that right?

A.    That's correct.

Q.    One of them was that the money was needed to pursue Jowdy legally; is that correct?

A.    Correct.

Q.    And was it your understanding, at the time of those conversations, that this was an effort to sue Mr. Jowdy to recover your investments in the Mexican project as well as the investments of the other hockey players; is that right?

A.    That's correct.

Q.    And bringing us up to date, your investment was I believe $500,000 in Del Mar and 200,000 in Cabo San Lucas; is that right?

A.    Yes.

Q.    Now, the other purpose you described, and correct me if I'm wrong, was that there was going to be an effort to buyout disgruntled investors or other hockey players, particularly Ethan Moreau, Owen Nolan and Joe Juneau; is that correct?

A.    Those are the three I remember, correct.

Berard  -  Cross/LaRusso

3137

Q.    And am I also correct that when you testified that the reason the monies for the Global Settlement Fund were going to be used to buyout those two individuals was to settle their investment in Eufora --

A.    I don't know.

Q.    -- as well?

A.    I don't recall.

Q.    Well, do you have any recollection of what assets were going to be acquired from those three hockey players?

A.    I do not.

Q.    You do agree there was going to be an effort to acquire whatever assets they had?

A.    I believe it was to stop the litigation and stop the lawsuits.

Q.    You knew the lawsuits were an effort to recover their monies they invested in Eufora, as well as a hangar and a place that's been known as the air park; do you recall that?

A.    I'm familiar with the hangar, the Eufora offices. The air park I wasn't familiar with, no.

Q.    My point is that when you talked with Mr. Constantine about contributing to the Global Settlement Fund, you were aware that there was a part of the money being spent to acquire shares that these individuals had in Eufora and assets that they were part of; is that correct?

3138

MR. MISKIEWICZ: Objection, asked and answered.

THE COURT: You can answer it. Go ahead.

A.   I don't remember, sir.

Q.   Well, let me ask you to backup a minute.

Do you remember that one of the purposes for the Global Settlement Fund was not only to pursue legal action against Mr. Jowdy, but to pursue other lawsuits that could hurt you and the other investors against Jowdy; do you remember that?

A.   I guess, but what I thought was to basically end the litigation that they were going after Phil Kenner for.

Q.   When you guess, Mr. Berard, the question was, do you remember that one of the purposes was not just to pursue the suit against Mr. Jowdy, but to pursue other lawsuits that could hurt you and the other investors against Jowdy?

A.   I don't recall.

Q.   Well, do you have any recollection, Mr. Berard, that among the discussions you had with Mr. Constantine were the lawsuits against or with Myrick as well as the lawsuits against Juneau, Moreau and Nolan?

A.   I'm familiar with the lawsuits. That's all I can remember, sir.

Q.   Well, my question though is in regards to the Global Settlement Fund.

Isn't it a fact that you knew that the monies

Berard  -  Cross/LaRusso

3139

were going to be used, not just for the lawsuits against

Mr. Jowdy, but to handle and settle the lawsuits with

Myrick, Nolan, Juneau and Moreau?

A.    Yes, I would say so.

Q.    Now, I'll go back to the other purpose that we

discussed a few moments ago.

        You have some recollection in regards to

acquiring assets from Juneau, Moreau and Nolan, but you

don't have any further recollection other than what you

testified to; is that correct?

        MR. MISKIEWICZ:  Objection, form.

        MR. LARUSSO:  I'll withdraw that, Judge.  I'll

rephrase it.

BY MR. LARUSSO:

Q.    Do you remember, do you have a recollection being

told that those three hockey players' shares in Eufora

were going to be bought out and that those shares were

going to be split up and shared amongst the Global

Settlement Fund contributors; do you remember that?

A.    I don't recall.

Q.    I'm going to show you what's been marked for

identification as C 183.

        Do you recognize that as an e-mail you sent on

March 4, 2011, to Phil Kenner, Michael Stolper and John

Kaiser?

3140

A.    Yes.

          MR. LARUSSO:  Your Honor, I'd asked this be received at this time, Defendant's Exhibit C 183.

          I'll leave a copy up here if you need to look at a hard copy, Mr. Berard.

          THE WITNESS:  Thank you.

          THE COURT:  Any objection?

          MR. MISKIEWICZ:  From the government, no.

          MR. HALEY:  Well, your Honor, may I have a few seconds with my client?

          THE COURT:  Sure.

          (Pause in proceedings.)

          MR. HALEY:  Your Honor, thank you.  No objection.

          THE COURT:  C 183 is admitted.

          (Defense Exhibit C 183 in evidence.)

BY MR. LARUSSO:

Q.    Mr. Berard, I'm going to try as best I can before we look at this e-mail to kind of, with your help, try and describe the time frame we're talking about.

          This is March 4, 2011; is that correct?

A.    That's correct.

Q.    The Global Settlement Fund was 2009; is that right?

A.    That's correct.

Q.    And sometime later in 2010, you went to Mr. Stolper

**Berard - Cross/LaRusso**

3141

with a group of individuals, and would it be fair to say that at that point the target or the subject of your investigation was Mr. Constantine?

A.   Yes.

Q.   At this point in time you're now communicating with another group of individuals in 2011 for the similar purpose; is that right?

A.   I don't understand that.

Q.   This is information you're imparting in regards to the approach you made to Mr. Stolper in the investigation of Mr. Constantine and his activities at Eufora; is that correct?

A.   Yes.

Q.   Now, with that, I'm going to display this to the jury.  This is your e-mail.

A.   I didn't write this e-mail.  That's the problem.

Q.   Okay.  You sent the e-mail?

A.   I sent the e-mail, yes.

Q.   So that the information that you put in here was sent because you intended that it be sent to these individuals; is that correct?

A.   That's correct.

Q.   And it relates to information that you had with regard to the purposes of the Global Settlement Fund in part?

Berard  -  Cross/LaRusso

3142

A.   Yes.

Q.   It's from you dated March 4, 2011, to Mr. Phil Kenner, Michael Stolper's e-mail address, John Kaiser and the subject is GSF, which stands for Global Settlement Fund, as of how it was explained to me.

My understanding of the GSF as what was explained to me by Tommy Constantine over many phone calls.

1.   The money would be strictly used for lawyers' fees for us against Jowdy and other lawsuits.

Do you see that, Mr. Berard?

A.   Yes, I do.

Q.   You agree with me other lawsuits were involved in the expenditure of money from the Global Settlement Fund?

A.   Correct.

Q.   That could hurt us against the Jowdy case.

For example, Myrick, Juneau, Moreau and Nolan cases as well.

Then it brackets it says, which I don't think any of the Global Settlement Fund money was used for any of those lawsuits besides the beginning of Jowdy case which got dismissed.

Do you see that?

A.   Yes.

Q.   Would it surprise you to know that money was spent on

Berard  -  Cross/LaRusso

3143

the Myrick case?

A.    I don't recall.

Q.    The second purpose or the second part.

        Number 2.  Most important, the Global Settlement Fund was gonna be used to buyout Juneau, Moreau and Nolan from there shares, and there is spelled T H E R E shares in our investments.  The shares would be split up and shared amongst the GSF.

        Does that refresh your recollection that there was going to be an effort to buy the shares of those hockey players, and that you and the other investors would be the beneficiaries of those shares?

A.    No, because I wasn't in the GSF.  I did not get into details with this.  I apologize.

Q.    I know you weren't involved in the GSF because you didn't contribute, but you certainly were conveying information about your knowledge of the GSF; is that correct?

A.    Correct.

Q.    We will go into it a little bit later.

        You continued to play a role in the GSF in part making quotes to the media regarding the actions against Jowdy; is that correct?

A.    That's correct.

Q.    So though you may not have contributed, you still

3144

played some part of a role in pursuing Mr. Jowdy though you didn't contribute to the GSF at this time?

A.   Yes.

Q.   At this time?

A.   Yes.

Q.   So my point is that at the time that you were associated with the GSF, you were aware that you would be benefiting as a member of Eufora even though you didn't contribute by the actions of the monies that were being spent on GSF?

A.   I don't recall.

Q.   I'm going to read the next paragraph.

To my knowledge, this is all the GSF was going to be used for.

I know this in fact because I have had numerous conversations with Tommy because I do -- and it says N O Y, but I assume it meant not, hav, spelled H A V, any money in the GSF at this time.

I was playing hockey in Russia and wasn't in a financial situation to do so as well as with Chris Simon. We were waiting to collect money so we could put towards this fund.

Your testimony is you were hoping, at some point, to get the monies to be able to become part of the GSF; is that right?

3145

A.    Correct.

Q.    So that your association, even though you hadn't contributed, would be important because you were hoping at some point to become part of it?

A.    I was.

Q.    Now, I'm going to complete the entire section.

        Tommy called me often looking for this money and to see what I could contribute.

        It actually made me feel awful that I couldn't contribute and everyone else was except me and Simon.

        Tommy even went so far to tell me I should send money to Ronald Richards' account or him directly, not Phil.  His excuse was Phil was unhappy settling with Myrick, and a lawyer bill needed to be paid that Phil did not want to pay.

        Now that I look back, it all makes sense why Tommy needed this money so badly.

        I was never able to put money into this fund because as time went by we found out that Tommy was spending the money as fast as it was coming in.

        This is exactly how I recall how all my conversations went with Tommy Constantine.

        Did I read that correctly?

A.    You did.

Q.    At the time you wrote this, you were no longer

3146

aligned with Mr. Constantine, were you?

A.    I don't recall.

Q.    Well, let's take a look at the people you wrote the e-mail to; Mr. Kenner, Mr. Stolper and Mr. Kaiser.

         Do you recall, at this point in time, a suit had been filed against Mr. Constantine in October 2010 by you and the other hockey players?

A.    I remember that, yes.

Q.    So at the time that you're writing this, you were aligned with these individuals especially in regards to your allegation against Mr. Constantine; is that fair?

A.    Yes.

Q.    Around the time, and we're talking about 2009, would it be fair to say that not only did you have any telephone conversations with Mr. Constantine, you also received e-mails from him?

A.    I would say so, yes.

Q.    Would it also be fair to say that during this period of time Mr. Constantine was updating you and the other hockey players regarding the progress of the Global Settlement Fund and the monies that were being spent?

A.    I don't recall that.

Q.    Let me show you what's been received in evidence.  I believe it's 31.  I'm going to point here.  Do you see that?

Berard  -  Cross/LaRusso

3147

A.    Yes.

Q.    That was your e-mail address at or about the time of the Global Settlement Fund?

A.    Correct.

Q.    This is in evidence.  It's an e-mail that was sent by Mr. Constantine on July 27, 2009, to -- and take a look at the e-mail addresses.

        Do you recognize not only your own, but the other e-mail addresses?

A.    I do.

Q.    Those are, for all intents and purposes, most of the hockey players that were investing in the Global Settlement Fund and had made investments in Hawaii, Mexico and other ventures; is that correct?

A.    Correct.

Q.    These were the same individuals that were looking to be -- to recover their monies against Mr. Jowdy and that was one of the purposes of the Global Settlement Fund, correct?

A.    As I remember, correct.

Q.    I'm going to read a few portions of this and see if it refreshes your recollection, Mr. Berard, in regards to being updated on the Global Settlement Fund, the activities that were taking place.  You can read it with me.  I'm going to read portions of it.

Berard  -  Cross/LaRusso

3148

As you may recall through our discussions, one of the issues that was recently resolved as part of our global settlement effort was Diamante Air which involved several airplanes and a lawsuit which was filed by the bank against Phil and those of you who invested in the company.

Do you know what the company name Diamante Air is?

A.    I did not invest in Diamante Air, but I'm familiar with the name, yes.

Q.    That's a company Mr. Jowdy was associated with; is that correct?

A.    I believe so, yes.

Q.    They had a number of airplanes as part of their assets?

A.    I believe so.

Q.    And those airplanes were used for many purposes, including taking potential investors down to the Mexican projects?

A.    Yes.

Q.    Did you ever have an opportunity to utilize those airplanes?

A.    I've been on them, yes.

Q.    So you were aware that Diamante Air was a company or an entity that was principally controlled by Mr. Jowdy?

Berard  -  Cross/LaRusso

3149

A.    Controlled?  I didn't know who controlled it.  That I did not know.

Q.    But does this refresh your recollection that the Global Settlement Fund had many other purposes in addition to what we described, and one of them was to deal with Diamante Air.

      Do you remember receiving this e-mail?

A.    I don't remember reading this e-mail, but I remember seeing it, yes.

Q.    So could you agree with me at this point Mr. Constantine is telling you that the Global Settlement Fund goes beyond just the lawsuit against Mr. Jowdy, but it also has to deal with the assets that he had, one of them would be the airplanes and Diamante Air?

A.    Okay.

Q.    Do you agree with that?

A.    I guess.

Q.    You guess?

A.    Again, I'm not familiar with it.  I wasn't invested in AZ Falcon Partners and the planes, so I don't have knowledge to it.

Q.    You received e-mails like this you said?

A.    Yes.

Q.    You read them?

A.    Yes.

**Berard  -  Cross/LaRusso**

3150

Q.   You may not know the facts behind them, and just to be fair to you, you may not be aware as to the facts behind them but you're at least being apprised of information which you cannot verify because you don't know about; is that correct?

A.   Correct.

        MR. MISKIEWICZ:  Your Honor, that would be hearsay and we object.

        MR. LARUSSO:  Maybe I can break it down, Judge, and make it a little more simpler.

        THE COURT:  I think he already testified he doesn't remember the details of the e-mail, so I'm not sure why you need to break down the e-mail.

        MR. LARUSSO:  He does remember, Judge, and that's what I think he said.  There are some aspects of it.

        What I'm trying to elicit, if I could, is the fact he didn't know the facts behind it.  I'm looking for the communication.  That's what I'm asking.

        THE COURT:  Go ahead.

BY MR. LARUSSO:

Q.   Do you understand the question, Mr. Berard?

A.   No, I don't.

Q.   I asked you questions about Diamante Air.  You knew some aspects of it and others you didn't, correct?

3151

A.    Correct.

Q.    My question is, you were told about it by

Mr. Constantine.  He was keeping you apprised of the

activities that he was involved in and in spending money

by the Global Settlement Fund.  That's my question.

          MR. MISKIEWICZ:  Objection, asked and answered.

          THE COURT:  You can answer it again.

A.    I received this e-mail, but I wouldn't have read this

e-mail.  I didn't invest in AZ Falcon Partners.

Q.    How do you know what's in it if you didn't read it?

A.    I'm reading it now.

Q.    You got an e-mail and you didn't read it, is that

what you're telling this jury?

A.    Yes, absolutely.

          I wouldn't have read this e-mail.  Again, I did

not invest in the AZ Falcon Partners, I did not invest in

the airplanes.

Q.    You do that often, Mr. Berard, get e-mails and decide

not to read them?

A.    Yes.

          MR. MISKIEWICZ:  Objection.

          THE COURT:  Let's move on, Mr. LaRusso.  You

asked him three times now.

BY MR. LARUSSO:

Q.    Just one other question in regards to this.

Berard  -  Cross/LaRusso

3152

           Mr. Berard, down in this last section --

           MR. MISKIEWICZ:  Your Honor --

BY MR. LARUSSO:

Q.    There's a phrase bad guys.

           MR. MISKIEWICZ:  We object.

BY MR. LARUSSO:

Q.    Have you ever heard that phrase used to describe
Mr. Nolan, Mr. Moreau and Mr. Juneau?

A.    No.

Q.    Now, we know the Global Settlement Fund had a purpose
of -- withdrawn.

           In regards to your knowledge of the Global
Settlement Fund, you are aware that two lawsuits were
filed against Mr. Jowdy; is that correct?

A.    Two?  I'm familiar with one.

Q.    You were a party to that lawsuit?

A.    That one, yes.

Q.    You were a plaintiff in that lawsuit?

A.    Yes.

Q.    Let me show you what's been marked for identification
at this point, Mr. Berard.

           Take a look at 104 A for identification and 104
B.

           Again, to help move along, I'm going to ask you
to take a look at the pages I point to.  Again, you can

**Berard  -  Cross/LaRusso**

3153

read all of it if you want.  I'm going to turn to page 3 and see if maybe it helps you.  Take a look at each of these and I'm going to ask you, do you remember that actually two suits were filed?

A.    I do not.  I thought only one was filed.

Q.    Do you have any recollection that a consolidation took place of two separate suits?  Do you have any recollection of that?

A.    I do not.

Q.    Now, this particular complaint was brought by you and I'm not going to list all the other hockey players.  These are the people that had invested with Mr. Jowdy; is that right?

A.    It looks like that, yes.

Q.    You're familiar with this complaint, are you not, Mr. Berard?

A.    It's been a while.

Q.    Okay.  If you need to look at any of the paragraphs, please do so.

        But isn't it a fact that at this point in time you were party to a suit that was suing Mr. Jowdy in regards to your investments in Del Mar and your investments in Cabo San Lucas?

A.    That's correct.

Q.    And that you also were alleging that in addition to

Berard  -  Cross/LaRusso

3154

those investments, Mr. Jowdy had taken out a loan of $3

million on Del Mar and had misappropriated the money?

A.   At this time I wasn't familiar with the $3 million

loan.  I'm sorry.

Q.   I'm sorry?

A.   At this time I was not familiar with the $3 million

loan.  I learned that afterwards.

Q.   If you take a look at 104 A, paragraph 8, does it

refresh your recollection that part of the suit alleged

over $10 million -- withdraw that if I may.

          Paragraph 10.

A.   What page are you on?

Q.   104 A.  It's just paragraphs, not page numbers.

          The question is, does that refresh your

recollection?

          THE COURT:  Mr. Berard, it's document 104 A,

paragraph 10.

          MR. LARUSSO:  Judge, I'm sorry.  I was trying to

do it from back here.

BY MR. LARUSSO:

Q.   I apologize.  Right here.

          Does it refresh your recollection?

          Again, if I interrupt you while reading it, let

me know and I'll let you complete it.

          Does that refresh your recollection that part of

3155

the complaint was the loan that Mr. Jowdy had taken out on the property without the investors' knowledge?

A.    Again, this would be the first time I read this so it's the first time.

Q.    Are you telling us you never read the complaint?

A.    Correct.

Q.    You participated in a civil suit against Mr. Jowdy and at no time discussed what was going to be part of the suit against Mr. Jowdy?

A.    No.

Q.    This was filed by a man named Ron Richards; is that correct?

A.    Could you ask that again, please?

Q.    This suit was filed on behalf of you and the other hockey players by Mr. Ron Richards; is that correct?

A.    That's correct.

Q.    Did you have any conversations with Mr. Richards or any e-mail communications with him regarding your participation in the filing of this complaint?

A.    Yes.

Q.    Do you remember discussing with Mr. Richards that the suit was going to be against Mr. Jowdy, accusing him of wrongdoing, particularly the last comment that I made, the misappropriation of $3 million loan without the investors' knowledge?

3156

A.    We never got into details.

Q.    So you were going to participate in a suit without any specific information of what the allegations that were being made against Mr. Jowdy; is that your testimony?

A.    Yes, it is.

Q.    Do you have a habit of making accusations without knowing what the basis for those accusations are, Mr. Berard?

        MR. MISKIEWICZ:  Objection.

        THE COURT:  Sustained.

BY MR. LARUSSO:

Q.    By the way, do you remember, in the suits that you filed against Mr. Jowdy, and I'll direct your attention to 104 B, if you need to look at it, paragraph 18.

        Do you remember discussing with Mr. Richards, and it becoming part of the suit against Mr. Jowdy, that he had filed a financial loan application with Lehman to acquire a loan, and that a man by the name of Masood Bahti, B A H T I, became friends with Mr. Jowdy or worked closely with Mr. Jowdy, and that as a result he obtained a secret equity interest in Cabo from Mr. Jowdy?

        MR. MISKIEWICZ:  Objection, relevance.

        THE COURT:  I'll allow it.  You can answer it if you can.

Berard  -  Cross/LaRusso

3157

BY MR. LARUSSO:

Q.    Plead read it to yourself.

A.    I'm not familiar with it.

Q.    You don't recall any conversations with Mr. Richards, or any one of his associates, regarding that allegation against Mr. Jowdy?

A.    No.

Q.    Did you ever receive copies of the complaints?

A.    I think I did, yes.

Q.    And from whom did you receive copies of the complaints?

A.    I would say Phil Kenner or Ron Richards.

Q.    I guess the question then would be having received the copies of the complaints, did you look at them?

A.    I said before I did not read them, no.

Q.    Did you keep copies of them?

        MR. MISKIEWICZ:  Objection, asked and answered.
Withdrawn.  I'm sorry.

        THE COURT:  You can answer.

A.    I don't have hard copies, no, just an e-mail.

Q.    Well, when you say e-mail, you have a recollection of receiving e-mails from either Mr. Kenner or Mr. Constantine or even Mr. Richards where they enclosed copies of the complaints that were filed against Mr. Jowdy?

**Berard - Cross/LaRusso**

3158

A.   Yes.

Q.   And it's your testimony, just to be fair to you, you didn't read any of them?

A.   I did not.

Q.   Did you discuss or ask them what's in here, what suit am I becoming a party to?

A.   I did not.

At that time I trusted Phil Kenner.   He was my manager and I trusted him.

Q.   So it's your testimony from the time that you got back from Russia in March 2009, to the time of the filing of the suit, which was around October 2009, you were never told what you were going to sue Mr. Jowdy for; is that it?

A.   I'm not familiar with it, no.

Q.   Would it be fair to say, before this suit was filed, you knew that the lawyer, or anyone associated with him, would speak to the people who were filing the suit to find out what the allegations are going to be?

A.   Again, I don't recall.   I was playing hockey.   That's what I was concentrating on.

Q.   You weren't playing hockey after March of 2009, were you?

A.   I still considered myself still trying to play, yes.

Q.   I've been there and done that in other sports and I can appreciate that very much.

3159

MR. MISKIEWICZ:  Objection, move to strike.

THE COURT:  Sustained.  Just ask the questions.

BY MR. LARUSSO:

Q.    My question is that you had concluded your playing in Russia around March of 2006 and you were not --

A.    2009.

Q.    I'm sorry.  Thank you.  2009.

So for the rest of the year you were not playing hockey?

A.    I was not, no.

Q.    I'm going to try and show you a group of e-mails at once to move this along quickly.

This is 54, C 54, C 55, and C 56.

Do you recognize those as e-mails you received from Mr. Richards?

A.    I would say yes.

MR. LARUSSO:  Your Honor, may I move these in evidence, C 54, 55 and 56.

MR. MISKIEWICZ:  I'm just looking at them, your Honor.

(Pause in proceedings.)

MR. MISKIEWICZ:  No objection.

(Pause in proceedings.)

THE COURT:  Mr. Haley, any objection?

MR. LARUSSO:  I just gave them to him yesterday.

**Berard  -  Cross/LaRusso**

3160

He just wants to verify what they are.

        MR. HALEY:  No objection, Judge.  Thank you.

        THE COURT:  Those exhibits are admitted.

        (Defense Exhibits C 54, 55 and 56 in evidence.)

BY MR. LARUSSO:

Q.    These e-mails, if I may, these are e-mails from
Mr. Richards; is that correct?

A.    They are, yes.

Q.    And it's basically giving you information, an update
on the lawsuit; is that correct?

A.    It looks like it, yes.

Q.    That's the one C 56.  The caption on C 55 is attached
complaint?

A.    Yes.

Q.    Does that refresh your recollection that a copy of
the complaint was sent by Mr. Richards to you for review?

A.    I remember that, yes.

Q.    C 54 talks about a first amended consolidated
complaint.

        Does it refresh your recollection there were two
complaints and they were ultimately consolidated around
October 16, 2009?

A.    I only thought there was one lawsuit, so I wouldn't
remember that.

Q.    So it doesn't refresh your recollection?

Berard  -  Cross/LaRusso

3161

A.    No.

MR. LARUSSO:  Your Honor, just to quickly display on the screen if I may, this is 54.  This is dated October 16, 2009, from Mr. Richards, a group e-mail including Mr. Berard, and it says:

Please find enclosed a first amended consolidated complaint which makes Jowdy personally liable for the funds he stole.  They have 30 days to respond to the complaint.

Q.    Mr. Berard, does this refresh your recollection that one of the allegations against Mr. Jowdy in the complaint was that he stole your money?

A.    Yes.

Q.    C 56, November 6, 2009, another group e-mail from Mr. Richards to you, Mr. Berard, and the other hockey players and others; is that correct?

A.    Correct.

Q.    It has more information regarding his action in handling the suit against Mr. Jowdy; is that right?

A.    Yes.

Q.    He uses some words that some of us may not be familiar with such as demurrer, do you know what that is?

A.    No, I do not.

I wouldn't even know what a first amended complaint is at this time.

Berard  -  Cross/LaRusso

3162

MR. LARUSSO:  I join you in that.

MR. MISKIEWICZ:  Objection, move to strike.

THE COURT:  Sustained.  Just ask questions.

BY MR. LARUSSO:

Q.   C 55, and this is October 16, again from Mr. Richards to you, and at the bottom it talks about the consolidated complaint as an attachment, right?

A.   Correct.

Q.   I show you another document and ask if this is an e-mail from Mr. Kenner to you regarding the suit against Mr. Jowdy?

A.   Looks familiar.

MR. LARUSSO:  Your Honor, I'd ask this be received C 52.

(Pause in proceedings.)

MR. MISKIEWICZ:  No objection.

MR. HALEY:  No objection.

THE COURT:  C 52 is admitted.

(Defense Exhibit C 52 in evidence.)

BY MR. LARUSSO:

Q.   Displaying C 52 at this time, and it's an e-mail dated November 26, 2009.

This is from Mr. Kenner to you, to Mr. Richards and Mr. Constantine; is that right?

A.   Say that one more time?

Berard  -  Cross/LaRusso

3163

Q.    This is an e-mail from Mr. Kenner to the three people
I just mentioned?

A.    Yes.

Q.    At this time you were working with the individuals
that are in this e-mail; is that right, regarding the suit
against Mr. Jowdy?

A.    Correct.

Q.    It states:

        Bryan, can you please check your records
immediately to confirm whatever wire transfers you have
made to Ken Jowdy for Diamante Del Mar and Diamante Cabo
San Lucas?

        The 500,000 for Del Mar would have been made in
2003 or 2004.  The Cabo San Lucas wire would have been
made in late 2005 or early 2006.

        Ron is working on another filing for the CA --
maybe California -- courts?

A.    Correct.

Q.    That's where the suits were filed; is that correct,
Mr. Berard?

A.    That's correct.

Q.    In the next week to show Jowdy's misappropriations
for the initial receipt of funds.

        You were asked to actually assist in gathering
evidence regarding the misappropriations that were alleged

Berard  -  Cross/LaRusso

3164

against Mr. Jowdy; is that correct?

A.    My wiring info, correct.

Q.    You remember this?

A.    Yes.

Q.    Were you asked for additional information that you recall?

A.    I don't recall.

Q.    Did there come a point in time, and again we're talking about 2009 and I understand you didn't make any contributions to the Global Settlement Fund, but did you agree at any point to be the upfront person for the Global Settlement Fund with the media?

A.    No.

Q.    Do you recall at any point in time agreeing to provide a press release in regards to your efforts to recover money from Mr. Jowdy?

A.    I don't recall.

Q.    And, again, I'm not going to -- do you recall if any members of the Global Settlement Fund agreed to come forward and provide information to the media regarding your position against Mr. Jowdy?

A.    I don't recall.

Q.    I'm going to show you three exhibits marked 53, C 53, C 194.  I apologize for them being out of order, and C 51.

        Do you recognize these as e-mail communications

Berard  -  Cross/LaRusso

3165

between you and Mr. Constantine regarding your role in

agreeing to issue a press release or provide information

to the media regarding the role the Global Settlement Fund

was playing?

A.    I believe talking to a reporter, yes.

Q.    Take a look at those three e-mails.

         Do you recognize those e-mails, Mr. Berard?

A.    I do.

Q.    Some of them are sent by you to Mr. Constantine and

one is sent by Mr. Constantine to you?

A.    Correct.

Q.    The subjects are approved quotes, send me e-mail with

those quotes so it comes from your e-mail.

         MR. MISKIEWICZ:  Objection, reading from an

un-admitted exhibit.

BY MR. LARUSSO:

Q.    You recognize those as e-mail communications between

you and Mr. Constantine?

A.    I do, yes.

         MR. LARUSSO:  I'd ask they be received, your

Honor.

         MR. MISKIEWICZ:  Objection, hearsay and

relevance.

         THE COURT:  Mr. Haley?

         MR. HALEY:  No objection, Judge.

Berard  -  Cross/LaRusso

3166

THE COURT:  Overruled.  Those exhibits are admitted.

(Defense Exhibits C 53, C 194 and C 51 in evidence.)

BY MR. LARUSSO:

Q.   Mr. Berard, the first one is C 53 dated June 16, 2009, sometimes we -- withdraw that.

I'm going to turn to the second page so we see there's no other attached e-mail to this, okay, and direct your attention to the middle of the page which is from Mr. Constantine dated June 16, 2009, at 13:33, which is I guess 1:33 in the afternoon, and talks about approved quotes.

This says B.  That would be you, Mr. Berard?

A.   That's correct.

Q.   You can either volunteer these statements or apply them in the form of an answer to a question that the reporter asks you.

In any case, do not say anything more or less than what is written below regardless of what the question is or how hard they push you in a particular direction.

If you start to feel uncomfortable, or feel like these answers don't apply say -- and then there is in highlighted form -- the following:

Beyond what I have told you, I am not

3167

comfortable going into great detail at this time.

It's an unfortunate situation for all of us, but we have to protect our investment.

There were specific promises made by Jowdy in terms of the development plan and the timeline to accomplish them, and he has broken those promises.

Can you make it out on the screen in front of you, Mr. Berard?

A.   Yes, I can read it.

Q.   He has had our money for almost seven years and has produced literally zero results.

We now also have very serious concerns about the use of our funds.  One of the projects he has not even broken ground, and to the best of your knowledge our money is all gone.

It appears he may have even borrowed several million dollars using our property as collateral and has used the money for something else, again without our knowledge.

It appears he has used the money for his own personal use and to benefit his friends and family.

This lawsuit isn't about the success or failure of the projects under normal circumstances.  It's about Jowdy taking our money and not delivering on the basic promise that there would even be a development at some

3168

point.

He has had our money for many years and it seems clear he has used it for things other than our project without even telling us.

That's what Mr. Constantine is writing to you in regards to what he proposes you provide to the media; is that correct?

A.   That's correct.

Tommy set up basically a reporter to give me a call.

THE COURT:  Let me give an instruction to the jury regarding that e-mail, Mr. LaRusso.

The Government objected on hearsay grounds.  I overruled the objection.

I admitted that e-mail with respect to Mr. Constantine not for the truth of what is in that e-mail, but as to the state of mind of Mr. Constantine when he sent it.

In other words, that particular e-mail from him can't be considered for the truth of the statements that he made with respect to the e-mail, but only on the issue of what his state of mind was in 2009 when he sent that e-mail.

Go ahead.

MR. LARUSSO:  Thank you, your Honor.

Berard   -   Cross/LaRusso

3169

BY MR. LARUSSO:

Q.    Mr. Berard, Mr. Constantine is sending to you approved quotes.

        Did you prepare these quotes?

A.    No.

Q.    It's your testimony that it was Mr. Constantine that provided these to you to give to the media, that's your testimony?

A.    Yes.

Q.    By the way, when you respond, you respond here, got it, thanks.  That's you; is that correct?

A.    That's correct.

Q.    And then Mr. Constantine replies:

        We will definitely need to talk before you speak to them.  In the meantime, learn that shit; is that correct?

A.    That's correct.

Q.    By the way, just to complete the group of e-mails, this is C 194.  This is dated June 18, 2009.  It starts off -- it's an e-mail from Mr. Constantine to you.  It says, subject, send me an e-mail with those quotes so it comes from your e-mail.

        Do you see that?

A.    Correct.

        (Continued on next page.)

Berard - Cross/LaRusso

3170

Q    And then there is a second response from you in the middle from Mr. Constantine.  Okay, will when get back 2 apartment 2 hours.  That okay?

A    Get back to the apartment, about two hours.

Q    What e-mail address you want me to send.

          And then there's a response from Mr. Constantine, this one.  Do you see that?

A    Yes.

Q    And finally it is you to him saying I got it, right?

A    That's correct.

Q    When you say got it, that was the bullet points for the press release or press information you would communicate?

A    I believe so.

Q    Lastly C 51 which is June 18, 2009.  This is you to Mr. Constantine and it is a repeat of the information that Mr. Constantine has alluded to in that first e-mail?

A    Tommy's quotes.

Q    Would you agree with me, Mr. Berard -- withdraw that.

          Did you subsequently have an opportunity to meet with the press and provide this information?

A    I spoke with a reporter on the phone.

Q    And gave the information we're looking at at this time?

A    I don't remember what information.

Berard - Cross/LaRusso

3171

Q    You would agree you wouldn't give any false information knowingly at that time?

A    At that time, correct.

Q    By the way during this period of time when you were working with Mr. Kenner and Mr. Constantine and Mr. Richards, did you have an opportunity to testify in the Nolan arbitration which was a suit brought against Mr. Kenner?

A    I did.  I believe so, yes.

Q    And would it be fair to say that during that period of time -- it was a deposition?

A    I believe it was an arbitration hearing.

Q    You testified a number of time before there were a number of arbiters?

A    Yes.

Q    Do you recall testifying in fact favorably for Mr. Kenner?

        MR. MISKIEWICZ:  Objection.

        THE COURT:  Overruled.

Q    I'm sorry?

A    Ask the question again.

Q    Did you testify favorably for Mr. Kenner in regards to that, that arbitration?

A    Yes.

Q    And as matter of fact, isn't it true that you

3172

testified that when Phil Kenner recommended investments to you, it was something that you yourself wanted to be involved in?

        MR. MISKIEWICZ:  Objection.

        THE COURT:  Overruled.  You may answer.

A    Yes.

Q    And you also testified under oath that Phil Kenner didn't pressure you to sign any documents relating to any of the property in either Hawaii or Mexico?

A    That's correct.

Q    As a matter of fact -- you were asked was everything transparent and relaxed and you said something I wanted to do, I saw the property in person.  I was very interested.

        Do you remember testifying to that?

A    That's correct.

Q    And at the time you were also asked did Mr. Kenner and other people showing you properties like Mr. Jowdy, promise you some sort of return on your investment.  Your answer was no, they did not?

A    That's correct.

Q    And you were also asked at any time did somebody tell you that you would be able to get your money back at a specific date.  And your answer was not at all.  Do you remember testifying to that?

A    Yes.

Berard - Cross/LaRusso

3173

Q    And you were asked did you understand that investing in a transaction like this, that your money could be tied up for awhile.  And you answered yes, I understand how that works?

A    Correct.

Q    Mr. Berard, we've mentioned the name Michael Stolper.

        Would it be fair to say, and again I hope I'm not repeating myself, but at the time you met Michael Stolper you were with a group of people which included Mr. Kenner, Mr. Kaiser, Mr. Gaarn and Mr. CR Gentry?

A    Yes.

Q    And for the sake of brevity, that group was looking into misconduct by Mr. Constantine with regards to his activities at Eufora.  Is that a fair statement?

A    That's fair.

Q    Do you recall that a lawsuit was actually brought against Mr. Constantine as a result of your contacting and meeting with that group of people?

A    I believe Mr. Stolper filed one, yes.

Q    Did you have a chance to discuss with Mr. Stolper the suit that was filed against Mr. Constantine?

A    Not in detail.

Q    Well, you were going to be a plaintiff in that suit; is that correct?

A    Yes.

Berard - Cross/LaRusso

3174

Q    And you knew that the suit was going to be you and
the other hockey players that had invested in Eufora; is
that correct?

A    That's correct.

Q    Did you ask for any specific information as to what
was supposed to be the allegations in the complaint
against Mr. Constantine?

A    I did not.

Q    Did anyone tell you what they were going to be?

A    No.

Q    You were -- it's your testimony that again you just
signed off in a complaint making accusations without
knowing what the accusations were?

          MR. MISKIEWICZ:  Objection.

          THE COURT:  Overruled.

A    I didn't know in detail what the lawsuit was,
correct.

Q    I will show you what has been marked for
identification as C 90.  Do you recall seeing a document
like this?

A    I don't recall.

Q    Do you remember, one, you were a plaintiff in a suit
brought against Mr. Constantine; is that correct?

A    That's correct.

Q    And that you and the other hockey players were suing

Berard - Cross/LaRusso

3175

as members of AZ Eufora -- that you and the other hockey players were suing Mr. Constantine under the LLC known as AZ Eufora Partners?

A    Yes.

Q    And at the time that this suit was discussed and at the time the suit was filed, you were aware that your interests in Eufora was held through a company known as AZ Eufora Partners; is that correct?

A    That's correct.

Q    You did not hold -- withdrawn.

        Do you know who the member of that entity was that held your interest?

A    My guess would be Tommy.

Q    You don't know for a fact?

A    I don't.

Q    Do you have here the name Tim Gaarn?

A    Yes.

Q    Did you ever associate Mr. Tim Gaarn with being a managing member of AZ Eufora Partners?

A    I did not know that, no.

Q    By the way, there were other plaintiffs in this lawsuit in addition to you and the other hockey players?

A    I believe so.

Q    Mr. Hughes and a Mr. Rizzi?

A    Names are familiar, yes.

**Berard - Cross/LaRusso**

3176

Q     You knew them to be friends of Mr. Kaiser?

A     Yes.

Q     You knew at the time they made an investment or claimed to make an investment in Eufora?

A     They made an investment.

Q     Well, that's what you were told?

A     I know they did, yes.

Q     You don't know that from your own personal knowledge. Somebody told you that?

A     Yes.

Q     Okay.

        In addition to Mr. Hughes and Mr. Rizzi, you were also told that Ethel Kaiser and Nick Privitello made an investment in Eufora?

A     Privitello.  I don't know about Mr. Hughes.

Q     Do you know why Mr. Privitello wasn't listed in this suit?

A     I have no idea.

Q     By the way, do you have any recollection of participating in efforts to properly fund AZ Eufora Partners so that it could sue?

A     I don't understand the question.  Ask it one more time, please.

Q     I'll try to break it down.

        Do you recall any discussions about the fact

3177

that AZ Eufora Partners couldn't sue because they hadn't

paid their fees to the state of Delaware, the existing

corporation.

      Do you have any recollection of that?

A    I have not.

Q    Do you have any recollection being asked to pay those

fees so that AZ Partners could become an LLC in good

standing to be able to sue?

A    I don't recall.

Q    I'll show you two e-mails.

      Please take a look at 164 and 165.  And what

I'll do in 164, pay particular attention to the second

page.  And in 165, the first page just before the middle

of the page, are some highlighted sections that are not

highlighted.

      Did you have a chance to review it?

A    Yes.

Q    Does it refresh your recollection, Mr. Berard, that

your credit card as a member of AZ Eufora Partners was

used to pay the state fees so that AZ Eufora Partners

could once again become an LLC in good standing?

A    Yes, it does.  This is my credit card.

Q    Do you have a recollection of your credit card being

used to allow the company to become --

A    I did not remember this, I'm sorry.

Berard - Cross/LaRusso

3178

Q    You have no recollection?

A    I don't.

Q    You have no dispute you may have authorized this?

A    Absolutely not.  It was my credit card.

Q    Do you dispute the fact that you gave anybody

permission to use this credit card for this purpose?

A    No, it was me.  I used it.

Q    I'll show this to you and I'll ask you some questions

regarding it, if I may.

        Have you ever seen that document before?

A    I can't recall.

        MR. LARUSSO:  Your Honor, I'll have to do it up

there.  I apologize.  I thought I had an extra copy.

        I'm sorry, Mr. Berard.

Q    I'll ask you to take a look at a few pages for me,

and again I'm not going to -- this is marked separately as

C 37-1.

        MR. MISKIEWICZ:  May I approach, your Honor?

        Okay.  Thank you.

Q    I ask you to take a look at these and see if any of

these refresh your recollection if you've seen a document

similar to this.

        And if I'm going too fast, let me know?

A    I remember the signature pages look familiar but this

I don't remember.

Berard - Cross/LaRusso

3179

That looks familiar, yes.

Q    When you say it looks familiar, it's a document that you may have received.  You don't recall the other pages, I understand that, listing the members of AZ Eufora Partners, you being one of them; is that right?

A    Yes.

Q    Do you remember at least authorizing Mr. Stolper to represent you in regards to the suit against Mr. Constantine?

A    Yes.

Q    And does this, looking at this document, indicate to you that you signed an authorization so that Mr. Stolper could in fact represent you in regards to that litigation?

A    That's correct.

Q    All right.  And one of the documents that you were authorizing is what is known as a written consent of members of AZ Eufora.

Do you remember that?

A    Yes.

Q    Okay.  I just want to direct your attention to one aspect of this, the first page.

Do you remember, just read the highlighted portion, do you remember at any point in time receiving communications from Mr. Stolper that one of the purposes around July 16th of 2010 was to buy a loan, a Eufora loan?

Berard - Cross/LaRusso

3180

A     I'm not familiar with a Eufora loan.

Q     At this point in time?

A     At this point in time, the Eufora loan, no.

Q     To be fair you remember a man by name of Volpe who bought the Eufora loan?

A     No Eufora loan.  I thought it was a Tommy Constantine loan.

Q     You thought it was a personal loan?

A     Correct.

Q     I don't know if I asked you, do you know what a personal loan had to do with the operation of Eufora?

A     I thought he backed it up with the patents from Eufora.

Q     Do you recall at this time discussing the fact that Mr. Gaarn and Mr. Gentry had been removed from their roles in Eufora and had been taken off the board of directors?

A     Familiar, yes.

Q     That's part of the discussion amongst the group?

A     We knew there was a falling out, yes.

Q     The falling out actually entailed Mr. Constantine removing both of them from their responsibilities at Eufora, correct?

A     If Tommy did, yes.

Q     And the purpose of this lawsuit was or the purpose of this representation was to address the fact that you

3181

believed two whistleblowers were being unfairly treated;
is that correct.  I'm referring to page 4 of 5 of the
first five pages.

A    Whistleblower.  No, I don't understand.

Q    By the way, do you remember around this time that
Mr. Constantine was publicly accusing both Gaarn and
Gentry of improperly moving money out of Eufora to a
personal account belonging to Mr. Gaarn?

A    I do not.

Q    Do you have any recollection, Mr. Berard, of
discussions of hockey players' money invested in Eufora
being diverted to a private account owned by or controlled
by Mr. Gaarn?

A    I do not.

Q    And I'm going to show you one document, simple
question, look at it and see if it refreshes your
recollection to any kind of discussion that
Mr. Constantine had been publicly accusing them of taking
money from Eufora.

          It is marked C 44, Judge.  There may be a
problem with the number.  We may have mismarked it, so I'm
marking it just for identification now, and if there is a
problem I'll address it at a later time with the Court's
permission.

          THE COURT:  Okay.

3182

          MR. MISKIEWICZ:  May I approach?

          MR. HALEY:  May I join?

Q    The question was:  Does the document refresh your

recollection at all regarding the accusation that

Mr. Constantine was making regarding the wrongful

activities of Mr. Gaarn and Mr. Gentry?

A    I'm not familiar with this document at all.

Q    But does it refresh your recollection having looked

at it.  That's my only question?

A    No.

Q    That was the question.

A    And I answered it.

Q    Now, in regards to the suit against Mr. Constantine

which we know is around October of 2009, do you remember

in any of the public documents that were filed in

connection with that suit, particularly in an answer and

counterclaim made by Mr. Constantine, where the accusation

we've been talking about was publicly made known.  Do you

remember that?

          MR. MISKIEWICZ:  Objection to form.  Which

lawsuit and also October 2009?  I'm not sure I understand

it.

          MR. LARUSSO:  C 190, Judge.  Withdraw that.

Q    Do you remember the suit was filed around the end --

the end of 2009 against Mr. Constantine?

Berard - Cross/LaRusso

3183

A    I don't recall when it was filed.

Q    I'm sorry, in 2010.

A    I still don't recall when the suit was filed.

Q    Let me ask you in regards to the suit, you told us what you remember about the complaint.  I'm asking you do you remember discussing with anyone that there were public accusations made in documents filed in connection with that suit regarding Mr. Constantine's claim against Mr. Gaarn and Mr. Gentry?

        MR. MISKIEWICZ:  Objection, asked and answered.

        THE COURT:  Sustained.  He already testified he had no recollection of that.

        MR. LARUSSO:  Judge, I will not argue the Court's ruling.  I'm not showing the complaint.  I'm showing him the document.

        THE COURT:  Show him.

Q    Showing you what is marked as C 191.

        THE COURT:  The only question is whether that document refreshes your recollection at all.

        MR. LARUSSO:  That's the question.  Thank you, your Honor.

A    No, it does not.

Q    You didn't even read it?

A    I don't remember anything about the suit or anything about it.

3184

Q    Well, there are occasions when something is shown to you and it does refresh your recollection?

        MR. MISKIEWICZ:  Objection.  Move to strike.

        THE COURT:  Don't address the witness with other than a question.

        MR. LARUSSO:  Thank you.

A    No.

        MR. LARUSSO:  All right.

Q    Do you recall attending a Eufora shareholders' meeting?

A    Yes.

Q    Using -- withdrawn.

        Do you remember when you attended the shareholders' meeting?

A    Summer.  I don't know the year.

Q    Would it have been before the suit was filed?

A    I don't recall.

Q    And you attended a meeting in person?

A    Yes.

Q    Who else was there in person?

A    What I remember myself and another hockey player Tyson Nash, and then John Kaiser was there, was not let in.

        I believe Nick Privitello might have been there as well.  That's what I recall.

3185

Q    You arrived with Mr. Kenner and Mr. Kaiser; is that correct?

A    Phil might have been there.  We were staying at his house but I don't know if he showed up.  And I believe one other person, I don't remember if it was Nick Privitello or Bob Rizzi.

Q    And do you recall Mr. Kaiser not being permitted in the meeting; is that correct?

A    And somebody else as well, correct.

Q    Who was that other person.  Do you remember?

A    Either Privitello or Rizzi.  I can't remember.

Q    Could it have been a court reporter?

A    No.

Q    Somebody who transcribes the proceedings?

A    Somebody who invested in Eufora.

Q    You went into the meeting.  Where was it held?

A    In Eufora's office.

Q    Who was there at the time you arrived?

A    Tommy, and Tommy had a security guard at the front door.

Q    Who else was at of the meeting other than yourself and Mr. Constantine?

A    A few members of Eufora.  What I can remember is a hockey player, Tyson Nash.

Q    There were other people participating by telephone?

Berard - Cross/LaRusso

3186

A    Conference, yes.

Q    After you were admitted you were told why Mr. Kaiser was not being allowed in the meeting.  Do you recall that?

A    Yes.

Q    You were told specifically because it was alleged he was not a shareholder of Eufora?

        MR. MISKIEWICZ:  Objection, hearsay.

        THE COURT:  Overruled.

A    Yes.

Q    Do you remember during the course of that conference -- by the way you knew it was being recorded; is that correct?

A    Yes.

Q    You played a fairly active role in asking questions?

A    I would say so, yes.

Q    And one of the questions that came up was the question of the Eufora loan that we talked about, correct?

A    I'm not familiar with the Eufora loan, no.

Q    "The loan," I guess, that would be a better phrase as you describe it; is that correct?

A    That's fine, yes.

Q    And isn't it a fact that during the course of that meeting, you actually asked Mr. Constantine why he did not allow the other hockey players and yourself to buy the loan.  Do you recall that?

3187

A     I don't.

Q     I will show you what has been marked for identification as C 89-B.  Again, these are parts of a larger document.  If you need to view the entire document please feel free.  I'm going to move along and kind of indicate certain portions of this.

        Do you see where I'm pointing to?

A     Yes.

Q     And now I'm jumping ahead.  Just read that portion to yourself.

A     Okay.

Q     I'll ask you to read the others because it is all part of the same questions that will be asked.

        Does that refresh your recollection, Mr. Berard, that there was a discussion with Mr. Constantine about why he did not allow you and others to purchase the loan?

A     Correct.

Q     Okay.  And would it be fair to say is that Mr. Constantine's reply to you in part was that he did not want you to take any further risks in possibly expending $3 million to secure the loan.

        Do you recall that?

A     That's what it says.  That's correct.

Q     What is your reply.  Do you remember what you said to him.  You have to take chances.

3188

Do you remember that?

That's an investment?

A    That's what it says, yes.

Q    He was trying to tell you that it was a risky venture, but you said otherwise.  You were making clear to him that you knew the risks that would be taken if you were able to invest this additional money; is that right?

A    Looks like it, yes.

Q    Not looks like it, that's what happened; isn't that correct, Mr. Berard?

A    Yes.

Q    And I'm not going to go through all of it.  I'll just ask you one other question.

Do you remember at any point during that meeting where Mr. Constantine offered Mr. Privitello his money back?

A    I do not.

Q    I will show you what has been marked for identification as C 89-A.  Again it is just portions of a larger document which you can see.

I just want you to see a couple of portions and I'll jump to this page and ask you just to read the highlighted portion.

A    Okay.

Q    Does it refresh your recollection, Mr. Berard, during

3189

this meeting Mr. Constantine offered Mr. Privitello his

money back for the investment that he allegedly made in

Eufora?

A    No.

Q    This doesn't refresh your recollection?

A    No, because this is Bob Rizzi, not Mr. Privitello.

Q    Thank you very much.

        Do you remember Mr. Constantine saying he would

offer Mr. Rizzi his money back?

A    I do not, no.

Q    That doesn't refresh your recollection?

A    It didn't.  It does not.

Q    Do you remember at any point in time yourself taking

an active part in trying to get Mr. Privitello his money

back?

A    No.

Q    Do you remember at any point in time talking with

Mr. Constantine or receiving communications where you

learned that Mr. Privitello and others had been offered

their money back?

A    I don't recall, no.

Q    I'll show you what has been marked only for

identification as C 100-A, and I ask you to take a look at

the entire document so that you can answer the next few

questions.

3190

THE COURT:  This is the document you referred to before, Mr. Miskiewicz.

MR. MISKIEWICZ:  Yes, your Honor.

THE COURT:  Why don't we take our morning break. Don't discuss the case.

(Whereupon, at this time the jury exits the courtroom.)

THE COURT:  Be seated.  You can take a break, Mr. Berard.

(Out of the presence of the jury.)

THE COURT:  Mr. LaRusso, he's now been on the stand for an hour-and-a-half.  Once again we're refreshing his recollection, attempting, not refreshing his recollection, attempting with respect to documents that he testified.  He testifies he didn't have any discussions about this lawsuit.  I didn't know any of the details about the lawsuit, and yet you are showing him documents related to the lawsuit that he says he never reviewed and are asking if it refreshes his recollection.

I fail to see how documents that he's already testified to the jury that he never read would refresh his recollection regarding a lawsuit, but even as it may you've already had an hour-and-a-half of that.  100 A is now an e-mail.  In 2012 from Mr. Constantine who is communicating efforts to settle the case in a civil

3191

lawsuit and attaches a letter that says Rule 48 settlement
material, so now you are questioning him regarding efforts
to settle civil lawsuits in 2012 in which Mr. Constantine
quotes in the e-mail double hearsay of what lawyers --
actually he says what the judge was asking, what the
lawyers were saying, and I want you to explain to me how
first of all this is not hearsay and second of all what
relevance an e-mail in 2012 has to the issues before this
jury.

I'm listening.

MR. LARUSSO:  Your Honor, there are two parts
here.  We're not accepting Mr. Berard's recollection of
the events, okay.  What we're saying is that he was
aligned with both Mr. Privitello and Mr. Kaiser in regards
to taking over the company.

THE COURT:  Okay.  You've established that
through I don't know how many witnesses.  We've had hours
of questioning about Mr. Stolper, about the lawsuit and
believe me if you have any question in your mind that this
jury doesn't know that there was a lawsuit where the
hockey players were aligned against Mr. Constantine, I
don't understand how you can think the jury can't
understand this when you've done this for hours and hours.

So if that's the point of this e-mail, we know
there's a lawsuit where the hockey players were aligned

3192

against Mr. Constantine.  Everybody knows that in this courtroom.

          MR. LARUSSO:  Judge, it's not just the lawsuit. It's the fact that Mr. Privitello has testified that no offer was ever made to him, number one, if you recall his testimony, Judge.

          This particular witness was aligned with these individuals and he himself was making an overture to Mr. Constantine on behalf of Mr. Privitello.  It shows that association they were trying to take over the company.

          I know the Court might think it is only a small point in the overall proof we're trying to establish but in order to prove to the jury that Mr. Constantine was acting properly in fighting off a hostile take over, the efforts in this case that Mr. Berard made, he's denied at this point, but to be honest with you, I've had an opportunity to go over documents, and finally to get him to say things that he hadn't said before.

          THE COURT:  I haven't heard anything he didn't say on direct.  I listened carefully for an hour-and-a-half and you got a couple e-mails in and I'm sure the Government would have stipulated.  I'm very confident that your batting average in an hour-and-a-half on refreshing his recollection might be zero with respect

Berard - Cross/LaRusso

3193

to this witness.

        If you are trying to impeach him, whatever importance it is in this case there is to your belief and your client's belief that there was an effort to take over the company and to exclude him from the operation of the company, I don't really understand why that is such a big deal in the case.

        I'm happy to defer you on that if you think it is an important thing to establish, fine, but you've asked the witness that.  We've been through that at least one time if not multiple times.

        This e-mail, if you had an e-mail where Mr. Berard brought to Mr. Constantine or Mr. Stolper that we're going to take over the company to take it over. This is an e-mail from your client.  It's from your client explaining to him all the settlement efforts going on with respect to a civil litigation.

        It has nothing do with this case.  What settlement efforts there were in 2012 to try to resolve a civil lawsuit?  What possible relevance does that have to this case?  How does that show Mr. Constantine is not guilty of the charges, that there was an effort to resolve a civil lawsuit in 2012?

        MR. LARUSSO:  One of the arguments, you have a group of people making accusations against my client of

3194

stealing money from you.  We're trying to establish their

association with each other to take over the company from

Mr. Constantine and there is a motive to lie own their

behalf and one of the motives --

THE COURT:  I understand that, but that would

take three seconds to establish, not three days to

establish they have a motive to lie because they were

suing him and that's fine.  I understand that.  That's

pretty basic, but that would take about three seconds to

establish.  We're going into now -- do you see how much

detail there is about percentages, attorney's fees?

Actually Rule 408 settlement discussions in

civil suits are inadmissible except for very limited

purposes.  I'm still waiting to hear what the purpose of

this e-mail is.  You keep telling me that it is to align

the players.  We're established minutia what

Mr. Constantine is trying to do to deal with the civil

cases against him in 2012.

If he had e-mailed this yesterday, should I

allow that in too?  I'm still waiting.  What is the

relevance of the detail of the settlement discussion?

MR. LARUSSO:  I already told you, Judge, about

what we claimed the alliance was between the group and

what we were hoping to prove.

In addition, Mr. Privitello said he never

offered anything back.  I don't remember if the Court remembers that.

THE COURT:  Mr. Privitello already testified that.  You questioned him regarding that.

MR. LARUSSO:  And it was clear he never was offered any money.  What we have here is an individual who is acting on behalf, we're alleging, on behalf of Mr. Privitello to get the money back.  I know it may be in the Court's mind a very small point, but it adds up when you look at all the rest of the testimony.

THE COURT:  Where is an e-mail from Mr. Berard saying I want Mr. Privitello's money back?

Show me that.

MR. LARUSSO:  It doesn't say that.

THE COURT:  Not only that, but it's an e-mail from your client saying what he's trying to do, and Mr. Berard's response is all I can say you and your order definitely have big balls.  That's what his response is. What does that tell us about Mr. Berard's efforts to get him back?

MR. LARUSSO:  If you read the entire document, what it says --

THE COURT:  I've read it.

MR. LARUSSO:  That there was an initial 200,000 investment made, what the offer now was being made was for

3196

175,000.  Mr. Berard's answer showed that he comprehended
what was going on, that Mr. Privitello was not being
offered 200 at this point, he was being offered 175.  Why
is Mr. Berard involved at this point, because like in many
parts of his testimony he's doing things he has no
interest in but here it is again.  Like the Global
Settlement Fund, he never contributed but he was a front
run player with regard to this.  This shows Mr. Berard
acting on behalf of one of the individuals --

        THE COURT:  Mr. LaRusso.

        MR. LARUSSO:  Judge, that's the relevance.

        THE COURT:  Here's my ruling.  I will let you
show him this document, okay, you can refer to it what it
is, you can say to him, read the e-mail, C 100-A.

        Does that refresh his recollection that you were
acting on the behalf of Mr. Privitello to try to cover his
money.  Okay.  I'll let you ask that question.

        In terms of any other question with regard to
this e-mail, you will try to admit this e-mail?

        MR. LARUSSO:  Depends on the answer.  I have no
intention of doing that, but --

        THE COURT:  Well, I don't want to have a sidebar
on this.  This e-mail is inadmissible, hearsay,
Mr. Constantine in 2012 describing what other people are
doing with respect to a civil lawsuit.  It contained a

Berard - Cross/LaRusso

3197

letter of a settlement offer in connection with the civil lawsuit.  The settlement descriptions are inadmissible under 408.  This is entirely irrelevant to the charges in the case.  Any relevance is substantially outweighed, by the confusion of issues by a jury who are hearing details of 2012 efforts to resolve a civil lawsuit in a case they are trying to resolve whether or not money was taken from the hockey players in an earlier time frame.  So we'll not have a sidebar.

This e-mail is inadmissible.  You can ask him if it refreshes his recollection that he's acting on behalf of Mr. Privitello and then move on.

How much longer do you have?

MR. LARUSSO:  I have two more points, Judge. Five minutes on that, probably five minimums on that, and there's one other section that I may not do, but it could be about 15 minutes, and I'll let you know if I intend to go through.

MR. MISKIEWICZ:  May we have the witness read that so we can save some time.

THE COURT:  Yes.

MR. MISKIEWICZ:  Thank you.

(Whereupon, a recess was taken.).

THE COURT:  I want to get this letter to the juror with respect to Chipotle.  This is marked as Court

3198

Exhibit E.  The letter from Chipotle we'll mark as Court

Exhibit D as in David.

          Any issues with the letter?

          MR. LARUSSO:  No, your Honor.

          MR. HALEY:  No, your Honor.

          MR. MISKIEWICZ:  No, your Honor.

          MR. HALEY:  Thank you, Judge.

          THE COURT:  A juror provided she has a flight on

July 12th.  So this is what they are worrying about.

          MR. HALEY:  She'll make that flight, Judge.

          THE COURT:  Let's bring in Mr. Berard and the

jury.

          By the way, Mr. LaRusso will be here one clock.

          MR. LARUSSO:  Judge, I'll withdraw that question

and move on.  I just have two points and one of them I

think we discussed earlier, some very short clips.  I'll

see if I can lay the background for it and it shouldn't

take long.

          THE COURT:  All right.  Thank you.

          (Whereupon, the jury at this time enters the

courtroom.)

          MR. LARUSSO:  Your Honor, I'll withdraw the

question with regard to C 100-A, I believe this is the

exhibit.

          THE COURT:  All right.

Berard - Cross/LaRusso

3199

Q    Mr. Berard, just a few more questions.

You testified earlier that you appeared at a deposition October 9, 2014, in the suit against -- brought by Mr. Kenner against Mr. Kaiser and yourself.

Do you recall being asked questions about the Global Settlement Fund, Little Isle IV and Led Better?

A    State the question again, please.

Q    Do you recall questions about the Global Settlement Fund, Little Isle IV and Led Better?

A    When was this again?

Q    October 2014.

A    Okay, yes.

Q    Do you recall testifying in that deposition that you were not going to answer any questions because you were instructed by the FBI?

A    I said that, yes.

Q    And as a matter of fact, you said that on a number of occasions to questions that were asked of you during that deposition; is that correct?

A    On the Global Settlement Fund, yes.

Q    Were you in communication with any FBI agent at that time?

A    No.

Q    Was your lawyer in communication with any FBI agents at that time, if you knew?

3200

A    No.

Q    How did you under oath testify that you were instructed by the FBI not to answer any questions regarding those aspects we talked about?

A    Just a miscommunication.  I thought because I didn't contribute to the Global Settlement Fund that I should not answer any questions about the Global Settlement Fund.

Q    So you took it because you didn't contribute to the Global Settlement Fund that the FBI would not want you to answer any questions regarding it, is that your testimony?

A    Yes, it was irrelevant to the case, at the Paradise Valley home in Arizona.  Yes.

Q    You testified very clearly that I was instructed by the FBI, are those the words you used:  "I was instructed by the FBI"?

A    Yes.

Q    And that was wrong?

A    It was wrong, yes.

Q    It was false?

         MR. MISKIEWICZ:  Objection.

         THE COURT:  Overruled.  You can answer that.

A    It was a miscommunication, yes.

Q    Do you remember a man by the name of Bob Gaudet?

A    Yes.

Q    Who is Bob Gaudet?

**Berard - Cross/LaRusso**

3201

A    I met Bob down in Cabo San Lucas, he was a golf pro, taught lessons and was involved in Diamonte.

Q    Do you recall participating in a recorded conversation with Mr. Gaudet?

A    Yes, I do.

Q    Do you know who recorded the conversation?

A    I did.

Q    Did you do that at the request of anybody?

A    No.

Q    Did you do that on your own; is that correct?

A    That's correct.

Q    You've had a chance to review that conversation, I assume, since the time that you recorded it?

A    Yes.

Q    And do you remember at any point during your conversation with Mr. Gaudet telling him that you and Mr. Kaiser had done an investigation into the alleged wrongdoings against Mr. Jowdy and others.

     Do you remember discussing that with him?

A    Could have happened, yes.

Q    Well, do you remember specifically telling Mr. Gaudet that you and Kaiser hadn't seen "very much criminal that Jowdy had done."  Do you remember telling him that?

A    That's correct.

Q    When you say "very much criminal," what did you mean

3202

when you told Mr. Gaudet --

A    I met with Mr. Jowdy many a times and he turned over what we really asked for.  He was cooperating.

Q    Is there anything that he turned over that led you to conclude that quote, he had not done very much criminal?

A    No.

Q    You understand, isn't it true, by that comment you were telling Mr. Gaudet you found some criminal activity but it wasn't very much?

A    No.

Q    But you do admit in that conversation those are the words you used when you spoke with Mr. Gaudet?

A    I don't recall.

Q    I will show you what has been marked for identification only at this time as C 190-T.  I direct your attention to this point.  Do you remember saying in the conversation, we haven't seen very much criminal or anything that Jowdy has ever done?

        MR. MISKIEWICZ:  Government stipulates to its admission.

        MR. LARUSSO:  Thank you.

        THE COURT:  What is the exhibit?

        MR. LARUSSO:  It is C 190-T.

        THE COURT:  C 190-T is admitted.

        (Whereupon, Defendant's Exhibit 190-T was

Berard - Cross/LaRusso

3203

received in evidence.)

            THE COURT:  Mr. Haley, you do not have an

objection.

            MR. HALEY:  I do not.  Thank you, sir.

            THE COURT:  All right.

Q    One other, if I may.

            Were you aware of a man by the name of Rem

Murray?

A    Yes.

Q    Were you also aware that Mr. Murray had invested or

given approximately $800,000 to Mr. Jowdy?

A    I don't know the dollar amount, no.

Q    Would it be somewhere in the neighborhood of over

half a million dollars?

A    I thought it was close to about a half million

dollars, yes.

Q    Let me ask you, do you recall or do you have

knowledge that Mr. Jowdy actually diverted some of

Mr. Murray's money without his consent to other entities

under Jowdy's control, including Diamonte Cabo San Lucas?

            MR. HALEY:  Objection.

            THE COURT:  Yes, sustained.

Q    Well, do you remember discussing this with

Mr. Gaudet?

            MR. MISKIEWICZ:  Objection.

Berard - Cross/LaRusso

3204

          MR. HALEY:  Objection.

          THE COURT:  Hearsay.

Q    To your knowledge, has Mr. Murray ever recovered his
money?

          MR. MISKIEWICZ:  Objection.

          MR. HALEY:  I would join in the objection.

          THE COURT:  Yes, Mr. Murray will testify later
today.  Why don't we hear from him.

          MR. LARUSSO:  That's correct.

          Your Honor, may we have a moment.

          (Counsel confers with defendant.)

          May I take another moment, your Honor.

          Your Honor, a few more questions to Mr. Berard.

Q    In your deposition you gave back in October, do you
remember questions also being asked of you about Mr. Phil
Kenner as well?

          Just yes or no?

A    No.

Q    Do you have any recollection at all telling the
questioner that you weren't going to answer any questions
about Mr. Phil Kenner.  Do you have a recollection of
that?

A    No.

          MR. LARUSSO:  Your Honor, no further questions.

          THE COURT:  Redirect.

Berard - Redirect/Miskiewicz

3205

REDIRECT EXAMINATION

BY MR. MISKIEWICZ:

Q    Mr. Berard, let's try to do it chronologically.
Starting from yesterday, you were asked a series of
questions yesterday by Mr. Haley regarding a document
known as Kenner 88, I believe.

          Mr. Haley, may I see the document, please?

          MR. HALEY:  Yes.

          MR. MISKIEWICZ:  Thank you.

          MR. HALEY:  You're welcome.

Q    Showing you what is in evidence as Kenner 88, and
this is the first page so you know what we're talking
about.

          This is an agreement or the formation of a
Limited Liability Company of Little Isle IV LLC, and I
believe your testimony was that you had not seen this
prior to your testimony?

A    That's correct.

Q    Other than what you've testified to yesterday --
withdrawn.

          With the exception of yesterday, have you ever
seen this before?

A    No.

Q    There's a page here listed as page 9, it's kind of
fuzzy.  Does that appear to be your signature?

Berard - Redirect/Miskiewicz

3206

A     Yes, it does.

Q     So if you saw anything regarding this document, I assume you would have seen the signature page, correct?

            MR. HALEY:  Judge, I would object to the leading nature.  I object as to what the Government would assume.

            THE COURT:  Sustained as to form.

Q     Do you have any independent recollection of actually seeing the signature page?

A     No.

Q     But you are not saying that that is not your signature?

A     It looks like my signature, yes.

Q     Okay.  Now, you currently as Haley elicited from you, you currently work essentially selling subscriptions to Diamonte Cabo San Lucas?

A     Basically my second job, yes.

Q     What is your first job?

A     I work at a wealth management firm in Providence, Rhode Island.

Q     And with respect to selling subscriptions, that is investments and/or time share or property in Cabo San Lucas, who is the person running that operation, I mean financially managing that?

A     In Cabo?

Q     Yes.

Berard - Redirect/Miskiewicz

3207

A     Ken Jowdy.

Q     Now, both Mr. LaRusso and Mr. Haley asked you a bunch of questions about things you had said about Ken Jowdy over a number of years, correct?

A     Yes.

Q     Is it fair to say a lot of those things you said were not nice?

A     Yes, that is correct.

Q     In fact it was elicited to you earlier today there were accusations made in a lawsuit, a complaint against Mr. Jowdy, correct?

A     Correct.

Q     And I show you what Mr. LaRusso showed you, C 104-A and C 104-B, and I'll ask you to take a look at both of those.

        And with respect to C 104 A, or as to both of those, would you look at pages 3 and 4 of both documents and then I'll ask some questions.

A     Okay.

Q     Now, do you know whether or not any of the money that Mr. Richards was paid to prepare those documents came out of the Global Settlement Fund?

A     Yes, he got paid out of the Global Settlement Fund.

Q     Do you know how much he got paid out of the Global Settlement Fund for that Ken Jowdy lawsuit?

3208

A     I believe it was 400,000.

Q     But do you know?

A     I do not know.

Q     Did you ever get -- I know you didn't contribute to the Global Settlement Fund, but Mr. LaRusso elicited from you, you did participate in things that were going on. Did you get an accounting?

A     I did not.

Q     So who told you 400,000 was spent on the Jowdy lawsuit?

A     I believe John Kaiser.

Q     Okay.  Do you know where he got that information from?

A     I do not.

Q     So do you know if it's true or accurate?

A     I do not.

Q     And having looked at pages 3 and 4, does anything in that lawsuit, does anything in that lawsuit make any reference to the 100,000 that you invested in Hawaii?

A     No.

Q     Is there anything in that lawsuit that says anything about your money, your line of credit, anything you invested in Hawaii, did you say in any fashion in that lawsuit, if you recall, and look at the lawsuit complaint, if you don't recall, that somehow you were aware that

3209

Mr. Jowdy borrowed your Hawaii money?

A    Absolutely not.

Q    Is there anything, again, look at that, and I'll ask you, do you recall whether or not you made any allegation in that lawsuit in your capacity as a plaintiff, about your money being used to buy Phil Kenner a piece of property in Discovery Harbour?

A    No.

Q    Anything in that lawsuit, if you can recall, and in which you made any kind of allegations about knowing Phil Kenner bought into the Sag Harbor property using --

            MR. HALEY:  Objection.

            THE COURT:  Sustained as to form.

Q    Did you make any allegations along the lines of saying you knew where the money came from that Phil Kenner put into the Sag Harbor property?

            MR. HALEY:  Objection.

            THE COURT:  Overruled.  You can answer that.

A    No.

Q    Did the lawsuit have anything to do with that?

A    No.

Q    You were asked a bunch of questions regarding your understanding of what the Global Settlement Fund money was spent for.

            You said you heard that approximately $400,000

3210

was paid to Mr. Richards to bring this lawsuit, the

complaints that are in front of you, right?

        (Continued.)

Berard - redirect/Miskiewicz

3211

BY MR. MISKIEWICZ:

Q    Do you know how much was raised by the defendants in the Global Settlement Fund?

A    Roughly, I think it was close to $6 million.

Q    Where did that money go?

A    I have no idea.

Q    Well, Mr. LaRusso asked you about your understanding that the Global Settlement Fund could be used for other things.  Did Mr. Constantine tell you that one of the things that he was going to use the Global Settlement Fund for was to hire lawyers to keep his air park, Avalon Air Park, out of bankruptcy?

A    Absolutely not.

Q    Did he tell you that part of the Global Settlement Fund was going to be used to fix and renovate a jet plane known as a Falcon 10 that was in disrepair?

A    No.

Q    Did he tell you that part of the Global Settlement Fund was going to be used to defend a lawsuit against Mr. Constantine having to do with his race car sponsorship?

A    Absolutely not.

Q    Did he tell you that part of the Global Settlement Fund was going to be used to pay Mr. Constantine's rent?

A    No.

Q    How about buying and renovating race cars?

Berard - redirect/Miskiewicz

3212

A    No.

Q    Did he tell you that -- you did testify you were aware of an effort to buy Playboy?

A    Yes.

Q    Did you contribute to or give any money to Mr. Constantine regarding that effort?

A    Yes, lawyer fees.

Q    How much?

A    I thought it was 38,000.  It ended up being 32,500.

Q    Do you know ultimately how much the lawyer fees were actually for that?

A    I do not.

Q    Well, did Mr. Constantine tell you that the Global Settlement Fund was going to be used, some of that money was going to be used to attempt to buy Playboy?

A    Absolutely not.

Q    Now, Mr. LaRusso also asked you a series of questions about your understanding that the players settle lawsuits against other players through the Global Settlement Fund that that would benefit shareholders in Eufora?

A    Yes.

Q    Did you benefit from any of that?

A    Absolutely not.

Q    I know you didn't contribute to the Global Settlement Fund, but if -- do you know, as you sit here today,

Berard - redirect/Miskiewicz

3213

whether or not -- when Nolan, Ethan Moreau and a third name Mr. LaRusso asked you about, do you know whether they were bought out of Eufora, then stocks were then sent your way, or a additional percentage of stocks were sent your way to give you a bigger ownership share of Eufora?

A    No.

Q    Did you, in fact, get anything from Eufora?

A    No.

Q    You were asked by Mr. LaRusso about this document, C-183.  The subject line here, GSF, as of how it was explained to me.

         This was in or about 2011, correct?

A    Correct.

Q    So by this time, you had already been involved in a lawsuit against Mr. Constantine over the operation of Eufora?

A    I believe so, yes.

Q    Now, you said on -- in answer to Mr. LaRusso's question that you recognize this, you sent this e-mail but you didn't write it?

A    Yes.  There is one paragraph that I wrote but the rest was written by Phil Kenner.

Q    Which is the paragraph you wrote, if you can see it?

A    More at the bottom of the page, that part that says, "Tommy called me" -- that paragraph I did.

Berard - redirect/Miskiewicz

3214

Q    The part that begins:  Tommy called me, often looking for this money, etcetera, you wrote that?

A    Yes.

Q    What about -- so number 1 and number 2, you are saying that was written by Mr. Kenner?

A    Correct.

Q    Do you know why you were asked to send this, not Mr. Kenner, since he is the author?

A    I don't recall.

Q    And this is where it says, under number 2:  Most important, the GSF was gonna be used to buy out Juneau and Moreau and Nolan from their shares in our investments. The shares would be split up and shared amongst the GSF.

         Even though you didn't write it, you know Mr. Kenner wrote that, was that, in fact, your understanding based on what you had been told?

A    Yes.

Q    By the defendants?

A    Yes.

Q    And my question to you is:  Since the time that -- when were you first approached by the Global Settlement Fund approximately?

A    I don't recall.

Q    A year, do you remember the year?

A    I would say 2009.

Berard - redirect/Miskiewicz

3215

Q     Is that when you were in Russia?

A     Yes.

Q     And between 2009 and today, how much do you own in Eufora?

A     I don't know the percentage, I do not.

Q     Have you seen anything suggesting you have been given, as a result of these lawsuits against these other people, a bigger share of Eufora?

A     I have not.

          MR. HALEY:  I would object.  This is redirect. I would object.

          THE COURT:  No, it's okay.  Redirect.  I thought he answered that question a few minutes ago.  I think we can move on.

          MR. MISKIEWICZ:  Thank you, your Honor.

Q     Now, you were asked -- very quickly, you were asked a question about Mr. Bob Gaudet?

A     Yes.

Q     Who is that?

A     Bob Gaudet I met down in Cabo.  Then Bob and I got involved with an investment down called Los Frailes.

Q     So you invested in a piece of property called Los Frailes in Mexico?

A     Yes, that's correct.

Q     Mr. Gaudet, what does he do down there for Los

Berard - redirect/Miskiewicz

3216

Frailes?

A    Basically, I believe Bob found the property and then had dealings with Phil Kenner and I invested 500,000 towards a land deal in Los Frailes.

Q    Have you ever been to Los Frailes?

A    I have one time.

Q    What does it look like?

        MR. HALEY:  I would object.

        THE COURT:  Sustained.

Q    Does Mr. Jowdy have anything to do with Los Frailes?

A    No.

Q    Now, you were also shown now in evidence very briefly C 190 T, for Thomas.  I apologize about the squiggly mark there.  You were asked by Mr. LaRusso about that phrase: We haven't seen very much criminal or anything that Jowdy's ever done.  Remember that?

A    Yes.

Q    My question to you is, have you seen anything criminal with respect to the disposition of your investments in Mexico by Mr. Jowdy?

A    No.

Q    Have you -- what did you do to investigate that?

A    I have been at the property many times now, and I'm satisfied my investment went toward where it should have.

Q    Is it an operational investment?

3217

A    It is, it's operating.

Q    So when you say we haven't seen very much, was that you suggesting:  Well, we saw some things that are illegal, but, you know, something like that?

A    No.

Q    And you are currently working essentially for that man, Mr. Jowdy?

A    Yes.

Q    As you sit here today, do you have any expectation what is going to happen to the investment you made in Cabo San Lucas?  Is your money still there, is it gone, do you know?

A    My money is there.  I hope it's lucrative.

Q    You were asked by Mr. LaRusso, I don't remember the question, something about you understood that land deals take a lot of time, right?

A    They do; yes.

Q    Sometimes they have risk, right?

A    Yes.

Q    And so are you today of the -- do you have any concern eventually you are going to have a rate of return from Cabo San Lucas?

A    I hope so.  I'm optimistic.

Q    Now, did you ever look to see, or were you shown any records, suggesting that you authorized your money to go

Berard - redirect/Miskiewicz

3218

from Hawaii to Cabo San Lucas to Mr. Jowdy?

A    No.

Q    If there was anything that you saw suggesting your
money going from Hawaii to Cabo San Lucas when you
invested in Hawaii through Mr. Kenner, was that part of
what you were intending to invest in?

A    Not at all.

Q    You were asked by Mr. LaRusso and Mr. Haley a series
of questions about prior statements you had made in other
lawsuits.  And if I may consult with counsel, I want to
make sure this is in evidence.

         Yesterday Mr. Haley asked you if you recalled
testifying, as follows, regarding Ken Jowdy:

         Question:   And later on, were you aware that
Mr. Kenner started lending this money to another principal
in the Cabo project named Ken Jowdy?

         Answer:   Yes.

         Do you remember those questions yesterday?

A    Yes.

Q    So who told you, and when did you find out, that
Hawaii money was loaned to Ken Jowdy?

A    Phil Kenner.

Q    When did he tell you that?

A    Right around the Nolan Owen arbitration.

Q    When was that?

3219

A      That would have been around 2009.

Q      Before or after you invested in Hawaii?

A      After I was invested.

Q      Did Mr. Kenner ever ask your permission to do that?

           MR. HALEY:  Objection, Judge.

           THE COURT:  Over objection, I will allow one more question.  Go ahead.

A      No.

           MR. MISKIEWICZ:  Your Honor, one issue I don't think was raised.

Q      Mr. Haley asked you yesterday whether or not it was true that you learned that a loan had been made to Mr. Jowdy, some amount of money, at some sort of interest rate.  Do you remember that question?

A      Yes.

Q      I think you said you did?

A      Yes.

Q      And again, did you know that at the time the loan was made?

A      I did not know.

Q      Do you even know whether or not any of that is true?

A      I do not know.

Q      Who told you that?

A      Phil Kenner.

Q      Other than that, have you seen any documentation

Berard - redirect/Miskiewicz

3220

supporting that?

A    No.

Q    Now, is it true, sir, that this loan to Mr. Jowdy convinced you that had you had the money, you would have contributed to the Global Settlement Fund?

A    Can you rephrase that question?

Q    Well, the allegations that you were being told and the ones that you made in your lawsuit eventually against Mr. Jowdy, did that have something to do with you kind of wishing you could have contributed to the Global Settlement Fund?

A    At that time, yes.

Q    And other than what you were told, either by Mr. Kenner or Mr. Constantine at that time, do you know whether any of that stuff was true?

A    No.

Q    In fact, now that you work for the guy, do you have any idea whether or not any of that material was true?

        MR. HALEY:  Objection.

        THE COURT:  Sustained.  Asked and answered.

Q    You were asked by Mr. LaRusso about things to tell the media, do you remember, earlier today?

A    Yes.

Q    In fact, you were shown Defense Exhibit C-53.  Mr. LaRusso said you wouldn't have knowingly said anything to

Berard - redirect/Miskiewicz

3221

the media that you thought was false, correct?

A    Correct.

Q    And you didn't, right?

A    I did not.

Q    And my question is back when you were sent this e-mail, C-53, Mr. Constantine telling you what to say, did you believe any of this to be true?

A    I did believe it, yes.

Q    Why did you believe it to be true?

A    I listened to Phil Kenner and Tommy Constantine.

Q    Today, if you were asked to say these things, do you think any of this is true?

A    No, not even close.

Q    Now, Mr. LaRusso read a lot from this.  I'm not going to do that.  But my question is here, he did ask you about -- part of what C-53 says is, quote:  If you start to feel uncomfortable or feel like these answers don't apply. Said:  Beyond what I have told you, I am not comfortable going into greater detail at this time.

         Were you in a position, or did anybody in the media, ask you any questions about your $265,000 going to buy Discovery Harbour in Hawaii?

A    No.

Q    Did anybody know that?

A    No.

Berard - redirect/Miskiewicz

3222

Q    Other than potentially federal investigators, you were not aware of that, were you?

A    I never heard of Discovery; no.

        MR. HALEY:  Objection.

        THE COURT:  Sustained as to leading.

Q    Well, prior to your testimony yesterday on direct about that wire transfer, when you looked at that wire transfer, did you know?

A    No.

Q    So when you were given this set of bullet points or talking points to utter to the press, did you know that was happening?

A    Absolutely not.

Q    And I don't have to go through the whole list, but when you were given these talking points by Mr. Constantine, did you know that he had already testified that Eufora was worthless in a civil deposition?

A    No.

Q    Did you know that he was using Global Settlement Fund -- withdrawn.

        MR. MISKIEWICZ:  Asked and answered.

Q    You were asked a bunch of questions about this shareholder's meeting.  Do you remember Mr. LaRusso asking you?

A    Yes.

Berard - redirect/Miskiewicz

3223

Q    Did you know that the building you met in that day in August of 2010 was a hangar building, correct?

A    Correct.

Q    That's where the offices of Eufora were?

A    Correct.

Q    And the supposed air park was?

A    Correct.

Q    Did you know that Mr. Constantine didn't even own it anymore?

A    I did not, no.

Q    Had you known this, would you have said all of these wonderful things?

A    No.

Q    To the media or anybody?

A    No.

Q    What about the lawsuit that you signed on to, would you have agreed to say whatever you said in the lawsuit?

A    No.

Q    Particularly against Mr. Jowdy?

A    No.

Q    And this came in briefly from Mr. LaRusso, but I want to ask you, do you remember you were asked about C-51? This is essentially the talking points that we were just going over in the prior Exhibit, correct?

A    Correct.

**Berard - redirect/Miskiewicz**

3224

Q    And then Mr. LaRusso showed you C-194 and asked you

what does it mean, okay, we will get back to apt B, abt.

Remember those questions?

A    Yes.

Q    Read the header on this g-mail.

A    Send me an e-mail with those quotes so it comes from

your e-mail.

Q    Who sent you that?

A    Tommy Constantine.

Q    Why did he send you that?  Do you know?

A    I do not know, no.

Q    Did he at any prior time basically give you words,

say send it back to me?

A    No.

Q    But he did on this?

A    Yes.

Q    Do you know what he did with this e-mail when you

basically reformatted it into your e-mail?

A    I have no idea.

Q    Mr. Haley, sort of continuing for a moment, I want to

make sure we cover this --

          MR. HALEY:  Judge, is that a question?

          THE COURT:  Sustained.  Just ask the questions.

          MR. MISKIEWICZ:  Sorry.

Q    You were asked about K-93 yesterday by Mr. Haley.

Berard - redirect/Miskiewicz

3225

Now, he asked you whether or not this letter was part of
the documentation that was at least available to you when
you invested in Hawaii.  Page 1 of that refers to the
various parcels of land and the companies that are part of
this Hawaii venture, right?

A    Yes.

          MR. HALEY:  I was going to object to form,
Judge, but I didn't get up quick enough, so I'm going to
sit down.

Q    You were asked about the response form at the very
end.  Again, you don't doubt that that is your signature,
right?

A    That's my signature, yes.

Q    Now, on page 1 of that document, does it say anywhere
that you have some percentage, you and/or other investors
in the Hawaii project have some percentage in acreage,
parcel and acreage called Discovery Harbour lots?

          MR. HALEY:  I would object.  The document speaks
for itself.  It's in evidence.  To have this witness
testify --

          THE COURT:  That's okay.  He can answer that.

A    No.

Q    What about Mark Twain?

A    No.

Q    Estates?

3226

A    No.

Q    You were asked a series of questions about money being offered back to the various investors in Eufora.  Do you recall any of that?

A    I do not.

Q    Do you have any information as to whether or not aside -- in addition to the offer, whether or not people were made whole?

A    No.

Q    Lastly, I want to show you what I have marked for identification as Government's Exhibit BB 1, as in Bryan Berard.

         Take a moment to look at that.  Do you recognize any of that?

A    I do not.

         MR. MISKIEWICZ:  No further questions.

         THE COURT:  Any recross?

         MR. HALEY:  May I see Kenner Exhibit 39 and I believe 88.

RECROSS-EXAMINATION

BY MR. HALEY:

Q    Mr. Berard, yesterday when you were asked on direct as to whether or not you received Kenner Exhibit 93, do you recall what your testimony was?  Did you say yes, I received it; or did you say I don't recall receiving this?

3227

A     I don't recall receiving this, no.

Q     I see.

        But Mr. Miskiewicz just asked you specific questions about the content of this document, and you were able, without hesitation, to answer those questions by saying:  No, it did not mention this, it did not mention this, it did not mention this.  Do you recall that series of questions a moment ago?

A     Yes.

Q     You were able to answer those questions of Mr. Miskiewicz a moment ago, I take it, because yesterday when you saw this document, you don't remember receiving it, you absorbed all one, two, three, four, five, six pages of it?

A     No.

Q     Well, when Mr. Miskiewicz asked you questions about Mr. Jowdy and your knowledge of whether or not he had at any point misappropriated funds or acted in a criminal or non-criminal sense, you testified today you have no reason to believe any of that is true.  Didn't you say that a short while ago?

A     Yes.

Q     You invested 500,000 in Diamante Del Mar, did you not?

A     That's correct.

Berard - recross/Haley

3228

Q    That involved Mr. Jowdy, did it not?

A    Yes, it did.

Q    Did you ever receive any portion of that 500,000 back from Mr. Jowdy, yes or no?

A    No.

Q    As a matter of fact, sir, isn't it true the reason you haven't received any of that $500,000 back from Mr. Jowdy is because the property was foreclosed upon when he obtained a loan against the property in default?  Isn't that true?

A    Yes.

Q    Did you ever have a conversation with Mr. Jowdy about that event?

A    I did not.

Q    So I understand, it's clear by your direct testimony that you have had an opportunity on more than one occasion, since you became associated with Diamante Cabo San Lucas, to speak to Mr. Jowdy, correct?

A    Yes.

Q    And during the course of those conversations with Mr. Jowdy, did you ever say, in words or substance:  Hey, Ken, you know, $500,000, half a million bucks, that's a lot of money, can you tell me what happened?

        Did you have that conversation with Ken Jowdy; yes or no?

3229

A     Not yet, no -- I have not yet, no.

Q     So your answer is you have not yet had that conversation?

A     That is correct.

Q     I take it from your testimony, after today, when you see Ken Jowdy, you will ask him about that $500,000? Would that be your intent?

          MR. MISKIEWICZ:  Objection.

          THE COURT:  Sustained.

Q     Mr. Berard, you testified, I believe, on direct, perhaps during cross, on redirect, that you did not authorize any of your money that was committed to the Hawaiian project to be loaned to Ken Jowdy.  Do you recall that testimony?

A     That's correct.  I absolutely did not.

Q     And I know that has been your words repeatedly:  I absolutely did not.  Correct?

A     Correct.

Q     Now, we know there came a point in time where you did learn from Phil Kenner that your money that was devoted to the Hawaiian project, Phil is telling you had been loaned to Ken Jowdy.  You came to learn that from Phil?

A     No; not my money.  No.

Q     Well, whose money did you believe it to be?

A     I didn't ask.

3230

Q    So when you testified, sir, when you testified the Hawaiian money was loaned to Ken Jowdy and you were told that by Phil Kenner, it was not your impression that any portion of your money was part of that loan?

A    Absolutely.

Q    That was not your impression?

A    It was not my money, no.

Q    Did you ask Phil Kenner as to whether or not any part of that was your money; yes or no?

A    No.

Q    Well, you were asked a lot of questions by the government about:  Had you known, what you would have done.  My question to you is simply this, sir:  If indeed your money was part and parcel of a loan that went to Ken Jowdy at 15 percent interest and he had honored that loan to see to it that your money was repaid, perhaps beyond your contribution, would you say:  Look, I don't want that because I didn't authorize it in the first instance? Would you have rejected that return on your investment; yes or no?

             MR. MISKIEWICZ:  Objection.

             THE COURT:  Overruled.  You can answer that.

A    No.

Q    You indicated that you currently work at a wealth management firm; is that true, sir?

Berard - recross/Haley

3231

A    Yes.

Q    Can you give us some idea as to the type of work that you are engaged in?

A    Basically business development, so I bring in new clients, I set up meetings for the managing partners. It's a small family office.  I bring in clients, and that's basically, it's business development, marketing.

Q    In connection with your work at the wealth management firm, if you receive a document from a client that requires your review and your signature, would you review the document, read it before you affixed your signature?

A    That's not my role, that's not my position in the company.

Q    So that type of occurrence, you haven't had to contend with, correct?

A    No.

Q    By the way, as relates to Kenner Exhibit 93 in evidence, would you acknowledge that your signature appears on the document?  We can agree, sir, that at least the first paragraph reads as follows?

          MR. HALEY:  Judge, just for purposes of the record.

Q    I acknowledge receipt of the letter of July 21, 2006 of Phillip A. Kenner (the letter) to each of the members of Little Isle IV, LLC (the company) regarding proposed

3232

joint venture and financing transactions involving my

investments in Hawaii real estate through the company (the

transactions).

         And then italicized but it reads as follows:    I

have signed and dated this response form where indicated

below to indicate that I consent to the transaction

described in the letter and to make the following

representations and warranties to Mr. Kenner.

         Does it say that?

A    That says that, yes.  I already know I did not sign

this document.

Q    Sorry?

A    I did not sign this document.

Q    I thought you said that is your signature?

A    Next to it, print name.  That's not my handwriting

that says Bryan Berard.

Q    My recollection of your testimony yesterday, I

pointed that out to you, that you did not handwrite the

Bryan Berard and Bryan Berard as appears up here.

         But this is your signature?

A    That's my signature.  Yes, that's my signature.

Q    You testified that you appeared in a matter where

Phil Kenner was bringing suit, a lawsuit against John

Kaiser and had given sworn testimony as relates to that

lawsuit in October of 2014, correct?

3233

A    That sounds correct, yes.

Q    And I believe you testified that when you answered that you were instructed by the FBI not to respond to questions concerning GSF, that that was a miscommunication.  That was your testimony?

A    Yes.

Q    Miscommunication between whom, sir?

A    Myself and Matt Galioto.

Q    Well, was there any miscommunication between yourself and Matt Galioto when you were asked this question:

             Question:   When did you first meet Phil Kenner?

             Answer:   I don't recall.  I don't recall.

             Your attorney:  Mr. Berard has been instructed not to answer that question by the FBI.

             The Witness:  Correct.

             Mr. Baker:  The FBI has instructed him not to answer the question when he first met Phil Kenner.

             Answer:   Yes.

             That was also the result of some miscommunication between yourself and Agent Matt Galioto?

A    Yes.

Q    Can we agree, sir, on this simple point, that in October of 2014, based upon your interaction with Phil Kenner, you at least knew the answer to that question, didn't you?

3234

A     Yes.

Q     And indeed, I believe during your testimony during this proceeding, you were able to answer that question, did you not?

A     Correct.

Q     The miscommunication that you say you had between yourself and Special Agent Galioto, was that miscommunication as a result of a telephone call, an in-person meeting, correspondence exchange between the two of you?  What was the basis of that miscommunication you characterized?

A     I don't know at all.

Q     After this miscommunication you say occurred between yourself and Special Agent Galioto, did that topic again come up between you and he or the government after October of 2014?

A     No.

Q     Is it your testimony, sir, that after you gave that answer in October of 2014, you were never questioned by either federal agent, or agent Matt Galioto, or someone else associated with the FBI or U.S. Attorney's Office in connection with how you ended up giving that answer under oath?

A     No.

Q     The government in its redirect used the words, to my

3235

memory, sir:  Do you recall being asked a bunch of
questions about the lawsuits.  Do you remember the
government asking you whether or not Mr. LaRusso asked a
bunch of questions about the lawsuits.  Do you remember
that question?

A    Yes.

Q    And isn't it fair to state, sir, that when you were
asked a bunch of questions about the lawsuits by Mr.
LaRusso, you would look at the document and repeatedly
say:  It did not refresh my recollection.  Isn't that --
wasn't that a response to those bunch of questions?

A    Yes.

Q    But, sir, do you recall when Mr. Miskiewicz asked you
specific questions about whether those lawsuits contained
specific allegations, you were able, at least at that
point to recall, in rapid succession:  No, it didn't say
that; no, it didn't say that; no, it didn't say that.

        Do you recall that series of questions?

A    Yes.

Q    Do you have a sense, sir, when Mr. Miskiewicz asked
you a question that called for a "yes" or "no" answer,
given his demeanor or the intonation in his voice, he was
looking for a particular answer?  Did you have any sense
of that, yes or no?

A    No.

3236

Q    Now, with reference to the e-mail that is marked as
-- the e-mail from you to Phil Kenner that I believe is an
Exhibit utilized by Mr. LaRusso, C-193, I believe on
redirect you said in response to a question from Mr.
Miskiewicz, that the only part of this e-mail that was
written by you is the last paragraph that begins:  Tommy
called me often looking for this money?

A    That paragraph I wrote, correct.

Q    Well, as relates to, say, paragraph 1, though you say
Phil Kenner wrote it, it was, in fact, true that you were
aware that the Global Settlement Fund was to be used for
litigation involving Phil Kenner and Kristen Myrick.  You
were told that, weren't you?

A    I don't recall.

Q    The record will speak for itself, sir.

        But during the course of your testimony before
the redirect, you didn't give that testimony that said no,
I was aware part of the Global Settlement Fund described
to me by Phil Kenner and or Tommy Constantine would be
used for purposes of litigation concerning Phil Kenner and
Kristen Myrick?  You don't recall that?

A    I don't recall Kristen Myrick; no.

Q    With reference again to the Jowdy loan, I admit I'm
jumping around a little bit, you said you never saw any
documentation as relates to that loan, correct?

Berard - recross/Haley

3237

A    I have not, no.

Q    Have you requested any documentation with reference to that lien?

A    I requested documents from Phil, yes.

Q    Let me ask the question again, sir.

        Have you requested any documentation from Phil Kenner with reference to the Hawaii loan we are speaking of?

A    I don't recall.

Q    When you say you requested documents from Phil Kenner, I believe your testimony was you would make a request and it wouldn't be received, is that your testimony?

A    Absolutely, yes.

Q    And how often would you pursue him when he said: Look, I don't have the documents, or words to that effect? What would you say in response?

A    I just kept asking; please produce the documents.

Q    Well, there did come a point in time when you reviewed a large package of documents with John Kaiser, when you and he were making inquiry of Phil Kenner, as to what occurred with reference to the investments that occurred, did it not?

A    Yes, it did.

Q    And it occurred, to your knowledge, because John

3238

Kaiser had requested the documents, Phil gave him the documents, and you and John Kaiser sat down one day and reviewed those documents, isn't that true?

A    At John's house, yes.

Q    So at least by way of that occurrence, as best you know, when John Kaiser asked Phil Kenner for documents, at least Phil would provide them to John, but by your testimony, not to you?

A    That's correct.

Q    Sir, I'm going to ask you to take a look at a document marked Kenner Exhibit 96.  If you could read the whole document, but I would ask you to read to yourself the very first paragraph of this document.  You don't have to read the whole document.

Having read the first paragraph of that document, kindly take a look at the cc section of the last page.

A    Yes.

Q    Sir, isn't it true, on or about September 23, 2009, you received this document in copy form as a cc recipient?

A    I don't recall.

Q    Again, sir, when you say you don't recall, I know we are going back again to 2009, by that answer, as you sit here under oath, sir, you may have received that document, you just don't have a recollection of it today, is that

3239

your testimony?

A     That would be fair to say.

Q     Sir, we are talking about, by your testimony, a
series of events involving your investments, Phil Kenner,
a series of investments concerning Ken Jowdy, multiple
lawsuits, even though you were engaged, sir, in your
profession, again to your credit playing hockey, if you
received a document through the mail or via, let's say, by
the mail, meaning U.S. Mail, or e-mail or text message,
would you discard that document because you were playing
hockey, would you simply receive it and discard it, or
would it be your practice to retain it for review at some
future point?

A     Depends.  Sometimes if I wasn't involved, I would
discard it at that time.

Q     Well, before you discard it, would you read it?

A     Sometimes no.

Q     Incidentally, would you agree that you would
oftentimes sign text messages between yourself and Phil
Kenner, or e-mail messages, by using either B, capital
letter B, or BB, would that occur?

A     Sign?  E-mails or texts?  I don't understand.

Q     I will rephrase.  When you acknowledged the receipt,
let's say, of an e-mail or text message, would you
sometimes, or always, if you will, end the e-mail by way

3240

of designating the fact that you received it by putting B
or BB?

A    I think my g-mail.  I know my g-mail says "thanks,
BB."

Q    That would be something you would do?  You wouldn't
put Bryan Berard, BB?

A    It's already in there.  I don't have to do it.  I
don't have to sign it.

Q    What about text messages?

A    No.

Q    By the way, we can agree, sir, can we not, that over
the period of time that you knew Phil Kenner there were
occasions where you and he would exchange text messages?
That's true, is it not?

A    Yes, of course.

Q    As relates to the text messages, would you sometimes
respond at the end B, just the letter B, or BB?

A    I could've.

Q    You were asked questions by Mr. LaRusso actually with
reference to Diamante Air, and my recollection, sir, of
your testimony is that your response was in, sum and
substance:  I knew that Ken Jowdy was involved with
Diamante Air.  Do you recall that?

A    To be honest with you, I don't remember what I said.

Q    Well, I'm not the stenographer, not going to ask a

Berard - recross/Haley

3241

read back, if I were to suggest your answer was, in

substance:  I was aware that Ken Jowdy was associated with

Diamante Air, would that refresh your recollection?

A     That's correct.

Q     And as relates to your awareness of Ken Jowdy's

association with Diamante Air, did you become aware that

Mr. Jowdy misappropriated approximately $430,000 in cash

from that corporate entity, aware of that?

A     I don't recall that, no.

Q     Well, did you become aware that Phil Kenner, as well

as Sergei Gonchar had to defend a lawsuit as relates to

Diamante Air because they had personally guaranteed a loan

with respect to that entity, and Ken Jowdy subsequently

defaulted on that loan, are you aware of that?

A     Sounds familiar; yes.

Q     Did you ever talk to Ken Jowdy about that particular

instance where he defaulted on the Diamante Air loan?

A     No.

Q     After today, would it be your intent to talk to him

about that as well?

          MR. MISKIEWICZ:  Objection.

          THE COURT:  Sustained.

          MR. HALEY:  Judge, I have no further questions

of this witness.

          THE COURT:  Mr. LaRusso, do you have anything

3242

further?

           MR. LaRUSSO:  Yes, I do.

RECROSS-EXAMINATION

BY MR. LaRUSSO:

Q    Mr. Berard, in regards to your testimony during your
deposition back in October of 2014, you have now, on a
number of occasions, indicated there was a
misunderstanding when you testified that you weren't going
to answer questions because you were, quote, instructed by
the FBI.  I will direct your attention to that.

           MR. MISKIEWICZ:  Objection.  Beyond the scope of
the redirect and the cross-examination.

           MR. LaRUSSO:  Judge, totally separate.

           THE COURT:  Go ahead quickly.

Q    Mr. Berard, do you remember the lawyer who asked you
those questions, Mr. Thomas Baker?

A    I do, yes.

Q    Do you remember after that deposition you spoke with
him again about your refusal to answer questions?

A    I had two depositions.

Q    Do you remember speaking with him over a telephone
after the deposition, where you said you were instructed
not to answer questions by the FBI?  Do you remember a
telephone conferring?

A    With Mr. Baker?

Berard - recross/LaRusso

3243

Q    With Mr. Baker?

A    Absolutely no.

Q    Let me show you what's marked C-196 for
identification.  I will show you and ask you to read page
7 and ask if it refreshes your recollection, in a
conversation with Mr. Baker, after your deposition, he
asked you about this and you told him, quote --

        MR. MISKIEWICZ:  Objection.

        THE COURT:  Mr. LaRusso, Mr. LaRusso improper --

        MR. LaRUSSO:  I withdraw.

        THE COURT:  Improper use of the document,
refreshing recollections.  Put the document down.  Ask if
it refreshes his recollection, any conversations he had on
that topic with Mr. Baker.  That's the way you do it.

Q    Mr. Berard, do you remember ever telling Mr. Baker in
a telephone conversation after your deposition that it was
Mr. Galioto from the FBI that had told you not to answer
those questions?

A    No.

        MR. MISKIEWICZ:  Asked and answered.

Q    Taking a look at C-196, would you read paragraph 7 to
yourself?

        MR. MISKIEWICZ:  May I approach and look at the
document?

        Standing objection, your Honor.

3244

Q    Did you read it?

A    Yes, I read it.

Q    Does that refresh your recollection?

A    This is my second deposition.  It's not a telephone
conversation.  It was taken over the phone, was a
conference call, not a conversation over the phone.  This
was my second deposition.

Q    It refreshes your recollection, number 1, there was a
second deposition?

A    I said that, yes, yes.

Q    Number 2, does it refresh your recollection you told
Mr. Baker in the second deposition that it was Agent
Galioto who instructed you not to answer the questions in
the first deposition?

A    No.

Q    By the way, in regards to the Global Settlement Fund,
you testified that there came a point in time you went
down to Cabo San Lucas and you were determined, or you
determined and were satisfied that your money was used as
intended by Mr. Jowdy, something to that effect, is that
correct?

A    That's correct.

Q    Isn't it true, back in 2009 and 2010, during the
period of the Global Settlement Fund, there was nothing on
Cabo San Lucas but a water plant, after six years and over

3245

$50 million having been invested?

A     It was a golf course.

Q     How about the water plant, was that there, too?

A     That was there, too.

THE COURT:  Mr. LaRusso, it's 1:10.  I don't want to make --

MR. LaRUSSO:  Judge, I have 10 or 15 more minutes based upon what happened.  I apologize to the Court.

THE COURT:  Take the lunch break.  See you at 2:10.  Don't discuss the case.

(The jury leaves the courtroom.)

THE COURT:  Mr. LaPinta, are you ready to go?

MR. LaPINTA:  Yes, sir, I am.

Before we begin, may we have just a very quick sidebar please?

THE COURT:  Sure.

(Continued on the next page.)

**Sidebar**

3246

(Sidebar under seal of the Court.)

MR. LaPINTA:  This is Michael Soroka, attorney from Garden City, helping with this issue.

There is a reporter from the Daily News in the courtroom.  This application now includes disciplinary records that were obtained by the government regarding a complaint filed against Ron Richards.  The complaint was dismissed.  There were no findings adverse to Mr. Richards at all.  And there is clear law, California law, that those records are privileged records.

I'm loathe to discuss that complaint in open court when there is a reporter there that's going to write about it.  I don't think it's right.  I think it's something that falls under this privilege of that statute. And I would ask if you want to hear argument on this issue, we do it in chambers or have a protective order of some sort so this sensitive information that was found to be dismissed not be out there in the public.

THE COURT:  I don't think that that complaint is critical to the legal issues we are going to discuss.  I know the government had it in there.

To the extent there is any reference to that, just make general reference.  I know it's in there based on the government's submission.

MR. LaPINTA:  The mere mentioning of the

**Sidebar**

3247

complaint is a problem for the client.

          MS. KOMATIREDDY:  I can avoid mentioning it.
What his expected testimony is here --

          THE COURT:  I don't think it's a critical issue.

          MR. LaPINTA:  Interwoven with what his testimony
is going to be, much of the facts are gleaned and learned
from that complaint.

          THE COURT:  Whether gleaned and learned from
that complaint, to the extent the government is arguing
that it's waived because of that complaint, that would
then be implicated.  I think there is a more general
ground the government has asserted which is these aren't
privileged.  They are going to ask -- there is also a
crime fraud exception.  So whether or not it's been waived
by what is in the complaint or not is a sub, sub issue.  I
don't think -- I wasn't intending on questioning him on.

          MR. LaPINTA:  Okay.  It takes up two pages of
their...

          MS. KOMATIREDDY:  We won't make that argument.
The purpose of setting forth those things in the letter is
to make clear to everyone because Mr. Richards indicated
he would not meet with us, what the nature of the
questioning would be, what we expect the answers to be.

          THE COURT:  Let's deal with that, the bigger
legal issue.  If it gets to that, it gets to that.

**Sidebar**

3248

MR. SAROKA:  Michael Saroka.  I got retained Friday night.  I'm the last person to this proceeding.

The very nature of using it in their opposition papers, references to these confidential proceedings that are protected by law, is we think a breach of statute and a breach of my client's -- Mr. Richards' rights with respect to the proceedings where there was no disciplinary action taken whatsoever.  To now put all of these questions or purported answers on the record, I respectfully suggest is inappropriate and requires --

THE COURT:  Maybe you don't understand what I'm saying.  I don't intend to ask questions regarding that. I'm proceeding as if it didn't happen.

The question is whether he should testify or not, testify about these things, what was in the complaint, what the receipt -- if there was no ethics complaint, we wouldn't be standing here trying to decide if it's privileged or not.

I don't think it needs to come up at this point. The government did make an argument in its letter.  If you want the government to redact that information in the letter --

MR. LaPINTA:  It's out there.  There is a story in today's Daily News about it.

THE COURT:  I didn't know that.

**Sidebar**

3249

         I don't intend to make any additional reference.

The government said they would not make reference about it

in today's proceeding.  I can't do anything more than

that.

         MR. LaPINTA:  We can do it in chambers.

         THE COURT:  The question whether or not he is

going to testify and whether or not there is a privilege

associated with that independent of the ethics complaint

is not under seal.  The public has a right to know, the

Daily News has a right to know, whether there is a legal

basis for him not to testify.

         MR. LaPINTA:  Let me frame one more question.

         Are you claiming this attorney-client privilege

was shattered by his response to the debriefing?

         MS. KOMATIREDDY:  The nature of our argument is

very simple.  The questions we are asking do not elicit

privileged information.  We are asking for billing

information, client identity information and accounting,

all of which is pretty much administrative.  Clients'

management information that numerous lawyers have already

testified about in this case and we expect to be testified

by Mr. Richards.

         THE COURT:  Mr. LaPinta, I know you put in a

lengthy letter response and the government responded.  I

think the key question, at least from my review of the

**Sidebar**

3250

letter, to the extent Mr. Richards asserted a privilege
with respect to the question the government is going to
ask with respect to the account, it's the government's
position that if the question is limited to the account in
terms of transactions, financial information, what did
this relate to, what did that relate to, that that
information is not -- doesn't represent a confidential
communication, it's not privileged.  And they cite a
number of cases.  I think they accurately cite the cases.
Absent some exceptional circumstance where a financial
transaction would reveal something about a communication,
that those aren't privileged, that would be what I want
you to focus on unless you can go on to something else but
that's the issue with regard to Mr. Richards' testimony.

MR. LaPINTA:  First and foremost I think it's
much more complicated than just making reference to a
banking ledger here.  The cases they cite have to do with
explaining a deposit, when it happened, explaining a
withdrawal, when it happened.  I will refer to the exact
language in the government's opposition papers that frames
the issue and poses grave concern to me that in my opinion
violates the attorney-client privilege.

The government writes on page 1 of their
submission that they need Richards to "identify the
amounts and purposes of the fees he received from the

**Sidebar**

3251

funds."  I agree with you, the amounts are clearly not privileged.  In fact, they are part of the record already and contained in the bank records of the escrow account. However, the purposes of the funds now steps into privileged communications because what he was told were that the purposes of the funds was from clients of his that fall under a clear privilege.  It is much more, your Honor, than just explaining a bank ledger and explaining deposits and withdrawals.  These facts that they are looking to elicit are inextricably interwoven with ledger information, numerical ledger information, and facts told by a defendant at a criminal trial to his lawyer on a related matter he was representing him on.

So I don't think it's as easy to say they are bank records that need explanations.

(Sidebar concluded.)

(Continued on the next page.)

3252

(In open court.)

THE COURT:  I don't want to cut you off.

Again, because we have witnesses we have to get through today, I appreciate you coming during the lunch break.

I want the government to respond to that.  I understand that point.  I will let you cover everything.

To the extent Mr. Richards is on the stand, you ask him what was the purpose of that expenditure and the response to that question would be along the lines of Tommy Constantine told me the purpose of that expenditure is X or X, doesn't that reveal privileged communication?

MS. KOMATIREDDY:  We can ask a question in a way it doesn't do so.  We have examples of this in the record already.  The question would be what engagement does that relate to.  Already in the record we have attorney engagement letters setting forth what specific clients they represent during a time period and what fees they take with respect to that engagement.  That's the line we would like to draw.

The global settlement fund has various transfers to Mr. Richards during the relevant time period.  Some of those transfers are to defend Mr. Kenner in the Nolan arbitration, not to sue Mr. Jowdy.  Some of those transfers we believe are to identify the specific matter

3253

that is being paid for even when Mr. Richards is the recipient.

THE COURT:  What the government views as a diversion of the money.  You can ask Mr. Richards is it for a lawsuit, to the Playboy Enterprisers, to whatever it might be.  Why wouldn't that implicate a privileged communication then presumably if he has some knowledge of that from what Mr. Constantine told him?

MS. KOMATIREDDY:  First of all, we don't really need to go through it in terms of asking anything of this witness, to say all the other things not for Jowdy.  We can do it in an efficient way saying what are the transfers here made to you, what matters do they relate to; probably the most efficient way to do it, careful way to do it.  Second, there is not really -- I think there is the broader question here.  Mr. Richards account was clearly used to facilitate the fraud in this case.  There is no prejudice.  Even if we do go into that zone, the record already clearly shows that the crime fraud exception applies.

(Continued on the next page.)

3254

            THE COURT:  Okay.

            MR. LAPINTA:  First off, my client's not charged
with any crime.  My client --

            THE COURT:  The crime fraud exception doesn't
mean your client did anything wrong.

            MR. LAPINTA:  I understand.

            You're dealing here with the subjective
understandings of an attorney that learned information
from a client.  It's not a objective analysis here.  It's
not a black and white thing.

            He's told from his client what certain things
are going to be used for in terms of disbursements out of
that account.

            I can't see how -- I see it, with all due
respect, being quite clear to that extent it's clearly
privileged information.  It's not just explanation of
deposits and when they're made and withdrawals and when
they're made.

            The other issue is I think it's a little more
complicated perhaps than we would like it to be here.  I
would like an opportunity to make a submission on this as
quick as I can, because if you're going to mandate him to
be here, it's not going to be an easy question and answer
process.  I really want to be able to address with the
government what they're going to ask him, perhaps even

entertain some type of stipulation that could satisfy everybody here and not further burden your trial and the expected cumbersome testimony that my client is going to be faced to deal with, because he's taking the attorney/client privilege very seriously, as he should.

So, I would like an opportunity to make a submission.  I'm not asking for very much time.  I don't mean to belabor or prolong this.  I know you want to move this thing forward.  We have an important issue here that my client is gravely concerned about breaching ethics and this rule.

THE COURT:  I know you told my clerk that you wanted to put in another written submission, and I told her to convey to you that I'll allow you to do that.

The reason I brought you in is I was concerned, based upon your letter about Mr. Richards' availability, I didn't want to have more days go by without making sure he's going to be available.

The government, at least when we started, said they would rest this week.  I had my doubts given with respect to this witness and how long he has been on the stand.

What's his availability to come and testify?  He needs to make himself available.  That's my concern.  If he's not available, he's flying all over the country, he

3256

needs to make himself available for this trial.  So I'll give you time to do that, but I have to make sure that means he will be available.

        MR. LAPINTA:  I've spoken to him this morning. He said he can make himself available on Monday.  That would give me adequate time, because now I have to learn about this global settlement situation, I have to dive into all of these communications that were made back and forth, the client, the grievance thing, and quite candidly I need time to prepare him to be a witness in this case only because I don't think it's as simple a cut and dry as the government is saying.

        THE COURT:  That's fine.  What we will do is this.  We will put it on for Thursday, is that okay?

        MR. LAPINTA:  Okay for me, or okay for my client?

        THE COURT:  No.  Your client doesn't need to be here, but your client will testify.  He will testify on Monday.  I'm okay with that.  But I want to give you a day to put in something tomorrow and then we will have argument on Thursday.

        MR. LAPINTA:  That's perfect.

        THE COURT:  Is everybody okay with that?

        MS. KOMATIREDDY:  Yes, your Honor.  Thank you.

        MR. MISKIEWICZ:  Your Honor, subject to the

3257

possibility that your Honor may decide that there is a privilege here, and just to speed things up and since Mr. LaPinta is here, we would request that the Court order him to be here Monday so that we would then have a subsequent application to be made should he fail to appear.

THE COURT:  Okay.  I don't know that this is necessary.  I'm ordering Mr. Richards to be here Monday morning at 9:30.  Will you convey that to him?

MR. LAPINTA:  I will.

THE COURT:  Thank you.  Is everybody okay with that schedule?  Mr. LaRusso?

MR. LARUSSO:  Yes, your Honor.

THE COURT:  Mr. Haley?

MR. HALEY:  Yes, sir.

THE COURT:  Okay.  So put in the letter by the end of the day tomorrow.  The government didn't focus on this in the letter, but I did the research.  They invoked the crime fraud exception as well.  I don't want to have two rounds of briefing.  The government is invoking the crime fraud exception?

MS. KOMATIREDDY:  Your Honor, I think there's two bases here.  One, that there's not privileged information and even if we cross that line there's the crime fraud exception line.

3258

THE COURT:  To the extent you want to address that in writing, Mr. LaPinta.  Again, it may or may not be as simple as I think.  I'm not suggesting it's simple, but I do think on the legal issues there's two questions.

One is whether these types of communications are privileged at all.  And if, as you indicate, there's some concern that some portion of questioning regarding a financial transaction might reveal a privileged communication with Mr. Constantine, whether the crime fraud exception would then cover that situation.

And there are cases out there that I'm aware of just from prior cases but also after doing research on this issue that indicate obviously, and I'm sure you're aware of this, that just because a client runs a transaction through a lawyer's account, gives directions to a lawyer, does not create a blanket shield that there could be no questioning regarding that account.

That's exactly what the crime fraud exception is designed to prevent, using a lawyer's account to facilitate a fraud and using the privilege to prevent any type of evidence coming out with respect to that account.

And you may not be familiar with the trial, but there's been a lot of evidence and as the government pointed out, a lot of witnesses testified about this account, other lawyers, as to what the government is

3259

alleging are diversions of money from that account to unauthorized uses.

So I want you to focus on that as well.  I don't want you to spend all your time on whether it is privileged or not privileged in and of itself because it relates to a financial transaction, but why the crime fraud exception wouldn't cover questioning regarding that account and the uses of that money.

MR. LAPINTA:  I understand.

I see as a separate issue the fees that he was paid for various legal services that were rendered.

They cite the Shargel case, a Second Circuit case.  I have a lot to say about that as well and I would like to brief that issue as well.

THE COURT:  Okay.  That's fine.

What time do you want to do it on Thursday, lunchtime or at the end of the day?  It might be better to do it at the end of the day.

MR. LAPINTA:  I could do it at the end of your trial, that is fine.

THE COURT:  Let's make it 4:00, is that okay?

MR. MISKIEWICZ:  The government is always here.

THE COURT:  Okay.

MR. LAPINTA:  Thank you, sir.

THE COURT:  Thank you.

3260

          For the lawyers on the Kenner case, can you take

a half hour lunch break so we could be back at two?

          MR. LARUSSO:  Yes, sir.

          MS. KOMATIREDDY:  We have a couple of brief

issues that we could do after lunch.

          THE COURT:  Okay.

          (A lunch recess is taken.)

A F T E R N O O N   S E S S I O N


THE CLERK:  All rise.

THE COURT:  Please be seated.

MR. LARUSSO:  Your Honor, I would ask to play two portions of the conversations we had with Mr. Gaudet on the tape, and then I'm done.

THE COURT:  You have it queued up?

MR. LARUSSO:  Yes.

MS. KOMATIREDDY:  May I raise a brief issue?

We're discussing with defense stipulations to various race car related expense witnesses.

For some reason they won't stipulate to a number of business records.  We're going to ask we move them in. We have certifications for your inspection.  They pertain to invoices and receipts, typical business records of four different race companies and then goes from there to the Hawaii and Eufora frauds.

The defense is willing to stipulate to a bank record related to Mr. Constantine's mortgage, but they have an objection as to relevance so I want to proffer on the record.

THE COURT:  Let's get Mr. Berard out of here.

MS. KOMATIREDDY:  Absolutely.

THE COURT:  We can do this later.

3262

MS. KOMATIREDDY:  Thank you.

THE COURT:  Let's bring in the jury.

MR. LAPINTA:  Just one quick thing.

I spoke to the government.  We have a joint application if we could seal that portion of the record that we discussed at sidebar.

THE COURT:  Yes.

MR. MISKIEWICZ:  No objection.

THE COURT:  Any objection?

MR. HALEY:  No, sir.

MR. LARUSSO:  No, your Honor.

THE COURT:  The sidebar conversation is sealed.

MR. MISKIEWICZ:  Your Honor, we're going to have an objection regarding the playing of tapes.  We would stipulate to the transcripts coming in.

THE CLERK:  All rise.

(The jury is present.)

THE COURT:  Please be seated.


RECROSS-EXAMINATION

BY MR. LARUSSO:

Q.   Mr. Berard, directing your attention back to the taped conversation you made with Mr. Gaudet, I'm going to show you two documents.

Are these portions of the conversations you had

3263

with Mr. Gaudet?

One is marked C 192 T and C 191 T.

A.    Okay.

Q.    Do you agree with me those are portions of the taped

conversation you had with Mr. Gaudet?

A.    They look like it, yes.

MR. LARUSSO:  Your Honor, at this time, I'd ask

that this these be received as aids and we're going to be

playing the tapes at this point.

MR. MISKIEWICZ:  We object.

THE COURT:  Overruled.

MR. LARUSSO:  Your Honor, the tapes are marked

separately.  The first one is C 191.  We will call it clip

two.

THE COURT:  C 191 is admitted and what are the

transcripts, C 191 T?

MR. OLIVERAS:  Yes.

THE COURT:  C 191 T is admitted as an aid.

The same instruction I gave you previously

applies.

(Defense Exhibit C 191 and C 191 T in evidence.)

(Tape played.)

(Tape concluded.)

MR. MISKIEWICZ:  Your Honor, could we have a

point of reference as to when these recordings are made?

3264

THE COURT:  Yes.  Can you ask him when this was made.

BY MR. LARUSSO:

Q.    Mr. Berard, when did you make these recordings, do you recall?

A.    I don't recall, no.

(Tape played.)

(Tape concluded.)

Q.    Mr. Berard, when you talk about El Rosario, what are you referring to?

A.    That's Diamante Del Mar.

Q.    I noticed you also mentioned the north project. That's El Rosario as well?

A.    That's the same, correct.

Q.    I'm going to play another clip.  This is what we call clip three and I'll show you the transcript?

THE COURT:  191-3?

MR. LARUSSO:  192 is the transcript and C 192 T.

THE COURT:  C 192 is admitted and C 192 T is admitted only as an aid with the same instructions.

(Defense Exhibit C 192 and C 192 T in evidence.)

(Tape played.)

(Tape concluded.)

BY MR. LARUSSO:

Q.    Mr. Berard, just a few questions in regards to the

3265

tape we just heard.

The person named Ken, that's Ken Jowdy; is that correct?

A.   That's correct.

Q.   And the individual Johnny, that's Johnny Kaiser?

A.   That's correct.

Q.   Mr. Glen Murray, he's a hockey player?

A.   Yes.

Q.   When you say I can't say that for sure, you're responding to Mr. Gaudet's question about you're sure that Johnny has done nothing wrong, and you replied no, I'm not, I can't say that for sure.

That's in response to Mr. Gaudet's question?

A.   Yes.

Q.   Lastly, talking about Mr. Glen Murray's money that had been provided and it was diverted to two different locations, one was the Mexican project and one was a house in Vegas?

A.   That's what I know, yes.

Q.   You mentioned the fact that Glen needs $500,000 worth of equity, do you see that, down in Diamante?

A.   That's correct.

Q.   Are you saying that that's what Jowdy should give him in exchange for the monies that were diverted?

A.   Yes.

3266

           MR. LARUSSO:  I have no further questions, your

Honor.

           THE COURT:  You can step down, Mr. Berard.

Thank you.

           (The witness steps down.)

           THE COURT:  The next witness.

           MS. KOMATIREDDY:  The government calls Rick

Rozenboom.

           THE COURT:  Mr. Rozenboom, if you would come up

to the witness stand and remain standing for the oath.


RICHARD ROZENBOOM,

                called as a witness, having been first

                duly sworn, was examined and testified

                as follows:


           THE CLERK:  Please state your full name and

spell it for the record.

           THE WITNESS:  Richard Rozenboom,

R-O-Z-E-N-B-O-O-M.

           THE COURT:  Be seated, and just pull the mike up

and keep your voice up, okay?

           THE WITNESS:  Yes.

3267

DIRECT EXAMINATION

BY MS. KOMATIREDDY:

Q.    Good afternoon, Mr. Rozenboom.

         Where do you live, sir?

A.    South Bend, Indiana.

Q.    Where do you work?

A.    First Source Bank.

Q.    What is your title there?

A.    I'm a senior workout officer and a vice president.

Q.    What does it mean to be a workout officer, what do you do?

A.    Well, there's a lot of different things there.

         But when some of our borrowers have difficulty repaying their loans, they get assigned to me and we work with that borrower to establish a repayment arrangement or evaluate what our course might be which might be taking collateral back and filing any lawsuits against the borrower to get the loan repaid.

Q.    Did there come a time when you were involved in a workout that involved two individuals named Phillip Kenner and Tommy Constantine?

A.    There was a workout.  A loan relationship was with -- the primary loan relationship there was Diamante Air loan relationship.

Q.    Thank you for correcting me.

Rozenboom - Direct/Komatireddy

3268

Let's start with Diamante Air.

First, tell us about the nature of the loan?

A.   Well, my involvement in that was that there were two loans, approximate balance of 500,000 and 700,000, secured by a Fairchild Metro and a Falcon 10 aircraft.

The Falcon 10 had a balance of approximately 700,000, and the Metro ballpark was half a million dollars.

Q.   I'm going to hand you what's been marked as Government's Exhibit 4237, and tell me if you recognize that?

A.   Yes, I do recognize this.

Q.   What is it?

A.   These are the loan documents surrounding the Diamante Air loans.

Q.   Just looking at the signature page -- first of all, for the loan document itself, who is the customer for Diamante Air, who is the signatory?

A.   The signor is Ken Jowdy under the loan and security agreement dated November 14, 2005.

Q.   Then there are two guarantees also; is that right?

A.   There are.

Q.   Who are the guarantors on this loan?

A.   The guarantors are Phil Kenner and Sergei Gonchar.

Q.   You see both signatures there on the document?

3269

A.    I do.

Q.    Is this a true and accurate copy of a loan and security agreement with First Source Bank?

A.    Yes, it is.

        MS. KOMATIREDDY:  The government moves 4237 into evidence.

        MR. LARUSSO:  No objection, your Honor.

        MR. HALEY:  No objection, Judge.

        THE COURT:  4237 is admitted.

        (Government Exhibit 4237 in evidence.)

BY MS. KOMATIREDDY:

Q.    Looking at this loan, you mentioned that basically it covers two airplanes?

A.    Yes.

Q.    What is the type of airplane it covers?

A.    A Fairchild, I refer to it as a Metro, and the other aircraft was a Falcon 10.

Q.    I hand you what's been marked as Government's Exhibits 7202 and 948.

        Do you recognize those?

A.    I do.

Q.    Looking at 948, can you describe what's depicted there?

A.    That is a picture of the Fairchild Metro.

Q.    Is that a true and accurate copy of a photograph of

Rozenboom  -  Direct/Komatireddy

3270

the Fairchild Metro covered by this loan?

A.    To the best of my knowledge, yes.

Q.    Do you want to compare the tail numbers?

A.    I'll do that.

        MR. LARUSSO:  We will stipulate.

        MR. HALEY:  We will stipulate.

        MS. KOMATIREDDY:  The government moves 7202 and

948 into evidence.

        THE COURT:  Any objection?

        MR. LARUSSO:  No, sir.

        MR. HALEY:  No, sir.

        THE COURT:  They're admitted.

        (Government Exhibit 7202 and 948 in evidence.)

BY MS. KOMATIREDDY:

Q.    Looking at 948, so the jury can see it, so that is

the Fairchild Metro you described?

A.    Yes.

Q.    And it's one of the planes that's the collateral for

this loan?

A.    Yes.

Q.    And 7202, what are we looking at here?

A.    That's a Falcon 10.

Q.    That's the other plane that's collateral for this

loan?

A.    Yes.  There were two loans.

3271

Q.   You're right.  Two loans, two planes, all part of one agreement, right?

A.   Yes.

Q.   So with respect to the two loans, what happens, what is the state of the payments on the loans when they get to your desk?

A.   Well, in this specific case, this matter was brought to me because it had been tardy with payments and I was asked to get involved with this, identify where our collateral was because we had lost contact with the party that we had prior arrangements with, a Mr. Jowdy, and he directed us to Phil Kenner to get the payments from him.

Q.   What did Mr. Kenner say about the payments?

A.   Well, I had some difficulty locating and, more importantly, I had phone numbers and talking with Ken. This was early in -- my memory I think is 2009 as I recall.

     It spanned a whole bunch of different things but, more importantly, I'll try and get you the money, working on arrangements to sell one of the airplanes, and that as I recall the Metro was lost.  They believed that Mr. Jowdy or it was reported to me that Mr. Jowdy had ran off with that airplane.

Q.   Who reported that to you?

A.   I think that I may have got from Phil.

3272

Q.    And then in terms of in early 2009, what was the status of the actual loaning?

A.    They were past due in payments.

Q.    I'm going to hand you what's been marked as Government's Exhibit 4209 and 4210 and tell me if you recognize those.

          Can you describe what you're looking at?

A.    Exhibit 4209 and exhibit 4210 I recognize both of these documents as loan history for the Fairchild Metro loan as well as the other one, 4210 as the -- I'm sorry -- the 4210 as the Metro loan and the 4209 as the loan of the Falcon 10.

Q.    Are these are true and accurate copies of loan histories that are kept at First Source Bank?

A.    Yes, they are.

Q.    For the record, the entries in this loan history, the actual dates of payments and the amounts, are those records created in the ordinary course of the bank's business?  The information?

A.    Ask that question again please.

Q.    Is the information in these documents, the dates, the amounts of payments, is that information created and kept in the ordinary course of the bank's business?

A.    Yes, it is.

Q.    Is it created at or near the time the payments are

3273

actually happening?

A.    Yes, it is.

        MS. KOMATIREDDY:  The government moves 4209 and
4210 into evidence.

        MR. LARUSSO:  No objection.

        MR. HALEY:  No objection.

        THE COURT:  Those are admitted.

        (Government Exhibit 4209 and 4210 in evidence.)

BY MS. KOMATIREDDY:

Q.    Looking at 4209, this is a loan history for one the
planes.  I'm going to focus in on the second page and the
year 2009.

        Looking at 2009, there appear to be a series of
missed payments there in early 2009; is that fair?

A.    Yes.

Q.    What is the amount due on this loan at the time that
the payments stopped?

A.    The best I can give you an answer on that is
$512,379.37.

Q.    You're looking at 4210?

A.    4210.

Q.    Which plane is this for?

A.    The Metro.

Q.    So for the Metro, looking at 4210 in 2009, there's a
series of late fee assessments?

3274

A.    Yes.

Q.    And you said the outstanding amount of the loan is around 512,000 and change, right?

A.    That is correct.

Q.    Now, go over to the loan history for the Falcon, 4209.

      For the Falcon 10 in 2009, what is the outstanding balance of the loan as of May 2009?

A.    $708,602.08.

Q.    Did you discuss with Mr. Kenner a plan forward in terms of resolving the outstanding loans?

A.    We had a few conversations around that.

Q.    Tell us what those conversations consisted of?

A.    He was having difficulty making payments.

      It had been reported to me by the collection department at the bank that there was a party who was interested in acquiring one of the aircraft.

Q.    Who was that party?

A.    It wasn't disclosed originally to me.  Later on, and I want to say maybe February or March of 2009, I got a phone call from Phil.

      I tried to make several arrangements to get whoever this buyer was on the phone so I could talk with him and see if there was a way that we could -- if he was interested in acquiring the aircraft, that we could move

3275

forward and get the aircraft sold and I can get paid out

on my loan.

Q.    Did you end up talking to this person?

A.    I did.

Q.    Who was it?

A.    Tommy Constantine.

Q.    The conversation here, you're on the phone with Phil

Kenner and Tommy Constantine at the same time?

A.    I was on my cell phone because we were having trouble

in making a connection so I had actually forwarded my

office phone to my cell phone and I took the call.  If you

will, it came in eastern time at my home past suppertime

is what I remember, but Tommy was on the line with Phil.

Q.    What did you discuss in that call?

A.    At that time Tommy expressed that he was interested

in acquiring the Falcon 10 and wanted to explore how we

could go about doing that.

      He had -- I will characterize it as having

inspected the aircraft and had learned that -- was

concerned about its condition and some of the prior work

that had been done on the aircraft.

Q.    What was its condition?

A.    Well, it was, as I recall, it was at an interior --

it may have been at a place where some interior work was

being done on the aircraft.

Q.    Was it in good condition?

A.    It was being repaired as I understood it or the interior was being repaired at the time.

      It may have been actually at an airport, but some of the parts as I understood had been with somebody else, either new equipment being put on, because after the inspections Tommy had learned that some things had been done to the aircraft that were not up to snuff on what should have been done with the airplane.

Q.    So you're discussing the condition of the Falcon 10.

      What do you discuss in terms of moving forward?

A.    Well, at that time, I was of the understanding that Tommy was interested in acquiring, up until that meeting, at a number of about $750,000 for that aircraft.

      During that discussion, as a result of its state and some of his findings, he was no longer interested in acquiring it at that price and wanted to explore what would it take for the bank to release its interest in that aircraft.

Q.    What happened next in your discussions?

A.    Well, we tried to evaluate what could happen.

      My main focus was I didn't have control of the airplane, I didn't have control of the log book.  I had another airplane that I didn't know where it was.

      I wanted to solve this loan transaction, but I

3277

wanted to solve it in total and that included -- it had to
include something along the line of having the Metro
surrender to the bank the Fairchild Metro and anything we
would do on the Falcon would be also have to be addressed
within an agreement if he wants to buy it, but the lien on
that aircraft needs to be satisfied.

Q.    You mentioned the log books.

          Can you tell us the significance of the log
books of an airplane?

A.    Yes.

          The log books are basically a written record of
what has been done to the aircraft.

          There are certain parts and pieces of equipment
in the aircraft that need to be inspected via the
frequency of some times, calendar time and others
depending on frequency of usage, how many cycles that
aircraft ran, started up and landed.

          And as a result of that, having those log books
will tell you what parts and pieces need to be replaced
and/or worked on and, if you will, the schedule of that
and it can significantly impact the value of the aircraft
if you don't have all the log books.

Q.    How does it significantly impact the value of the
aircraft?

A.    If you don't know what has been done on the aircraft,

3278

when it was last inspected, what was last repaired, you may have to start all over and it could render the aircraft pretty close to salvage value.

Q.    Did you have the log books for the Falcon 10?

A.    I never got a log book for the Falcon 10.

Q.    Did you ask for them?

A.    Yes.

Q.    Who did you ask?

A.    Well, I recall asking Tommy Constantine because when he started to look for the log books, the log books that he had, we learned that they were the Fairchild Metro log books that were in his possession, which we did need for the Metro, and we did get those from him.

        To this day I can't tell you where the log books for the Falcon 10 are and/or were.  It had been reported to me that -- by Tommy that another gentleman, Mr. Jowdy, may have had those, but I don't have any confirmation of that.

Q.    So your only source for that was Tommy Constantine?

A.    Yes.

Q.    So looking at these discussions, did something actually happen in terms of an agreement?

A.    Yes, there was, primarily with Tommy being the -- I'll use the word construct of the arrangement, the two aircraft were agreed to be surrendered to the bank and

3279

that the bank would then, with the agreement of the two
guarantors, we would agree to release our lien -- let me
start back over on that.

We agreed to sell the Falcon 10 to a company
called AZ Falcon Partners.  I would have to take a look at
the agreement, but something to that effect.

And then in that provision there were some other
components of cash that would have to make up the
difference between the price that Tommy was willing to pay
for the airplane and the rest of the money had to make up
the deficiency on that airplane in order to clear the
balance.

Q.   So let's go through some of the documents detailing
that transaction.

I'm going to hand you a stack of documents.  The
one on top is marked 4231.

During this negotiation process, does the bank
collect information about borrowers and guarantors?

A.   Sometimes we are successful in collecting information
along that line, yes.

Q.   Fair enough.

Looking at Government's Exhibit 4231, can you
tell us what that is in general terms?

A.   This is a financial statement that was provided to
the bank on Phil Kenner.

3280

Q.    By Phil Kenner?

A.    I'm not sure I can answer if it was provided to the bank by Phil directly.

        I could tell you that this was in our loan file. It could have come from his assistant or something like that, but this was in our loan file.

Q.    Is it a true and accurate copy of a financial statement in your loan file?

A.    Yes, it is.

        MS. KOMATIREDDY:  The government moves 4231 into evidence.

        MR. LARUSSO:  No objection.

        MR. HALEY:  May I have a moment only because of the testimony.

        THE COURT:  Yes.

        (Pause in proceedings.)

        MR. HALEY:  Your Honor, we have no objection.

        THE COURT:  4231 is admitted.

        (Government Exhibit 4231 in evidence.)

BY MS. KOMATIREDDY:

Q.    Then I'll ask you to turn to the documents marked 4241, 4239, 4240, 4238, 4204.

        Have you had a chance to review them before coming to court today?

A.    I did.

**Rozenboom  -  Voir Dire/Haley**

3281

Q.    Are these true and accurate copies of e-mail communications with you and either Mr. Kenner or Mr. Constantine as parties on that e-mail?

A.    Yes, they are.

Q.    Just looking at 4241, so we have it for the record, is that an e-mail from Mr. Kenner to you?

A.    It is.

Q.    4239 is an e-mail from Mr. Constantine to you?

A.    It is.

Q.    4240, 4238 and 4204 also e-mails from Mr. Constantine to you?

A.    They are.

Q.    Are those true and accurate copies of e-mail communications you had with one or the other defendant?

A.    Yes, they are.

        MS. KOMATIREDDY:  The government moves 4241, 4239 and 4240 and 4238 and 4204 into evidence.

        MR. LARUSSO:  No objection, your Honor.

        MR. HALEY:  Your Honor, just a brief voir dire.


VOIR DIRE EXAMINATION

BY MR. HALEY:

Q.    Sir, as relates to these e-mails, would these e-mails be part and parcel of the loan documentation file?

A.    No, they would not be directly in the loan file.

3282

They would be on our electronic record mailing system at the bank.

Q.   And the government, you provided these documents to the government pursuant to their request I take it, correct, for all e-mail communications?

A.   Yes.

Q.   I see.

Did you personally provide these documents to the government, or did some other person who maintains the books and records?

A.   It was a combination of that information.

I did -- somebody got the information together and I did look at that information, but it did go through our accounting and our legal group to comply with the request for documentation.

Q.   My only question is, sir, when you identified these documents as being e-mails between yourself and Phil Kenner and Tommy Constantine, do you have an independent recollection of receiving these e-mails, or you're relying upon the fact that they were maintained by someone in your office who maintains the books and records?

A.   I actually reviewed these documents last night and I do have a recollection of each one of them.

MR. HALEY:  I have no objection, Judge.

Thank you.

Rozenboom  -  Voir Dire/Haley

3283

THE COURT:  Those documents are admitted.

(Government Exhibits 4238, 4239, 4240, 4241 and 4204 in evidence.)

BY MS. KOMATIREDDY:

Q.    You testified that you had various conversations with Mr. Kenner and Mr. Constantine.

I'm going to walk us through a couple of e-mails.

Let us know how they fit into the story you told us already.

So this is an e-mail dated February 25, 2009; is that right?

A.    You're talking about 4241?

Q.    Yes, sir, 4241, at the top, we have an e-mail from Mr. Kenner to you dated February 25, 2009; is that right?

A.    Yes, it is.

Q.    Is this around the time when you began discussing how to workout the loan?

A.    Yes, it was.

Q.    For the record, just reading the e-mail into the record, it says Rick, I looked through my entire office and couldn't find the log books you asked about.  I think they might still be with Jowdy or Constantine.  I just don't know.  I would like the sale to Constantine to go through.  Thanks, Phil.

3284

Did I read that correctly?

A.    Yes.

Q.    Turning to Government's Exhibit 4239, this is an
e-mail from Mr. Constantine to you on March 13, 2009,
correct?

A.    Yes.

Q.    Again, reading the e-mail into the record.

Rick, I apologize for the delay in responding to
your calls and e-mails.

I am out of the country and will be back
mid-next week.

In all candor, I am now also struggling a bit
with my partner on the acquisition of the Falcon.

In spite of his previous commitment and my
investment thus far, with all of the available aircraft
that have either been repossessed or reduced in price, he
is pushing back on me.

I hope to be able to get this all sorted out by
mid-next week and I will advise ASAP.

Seriously, Tommy Constantine.

Did I read that correctly?

A.    Yes, you did.

Q.    I want to turn to Government's Exhibit 4240.

This appears to be an e-mail from
Mr. Constantine to you dated April 14, 2009, and the

3285

subject line is Cessna 414 for trade.

        Do you see that?

A.   Yes.

Q.   We talked about two airplanes, is the Cessna 414 one of them?

A.   It was never an airplane that the bank had an interest in or had a loan on.

Q.   Can you explain -- did you discuss the Cessna 414 with Mr. Constantine?

A.   Yes.

Q.   Can you explain to us the nature of that discussion?

A.   He wanted to augment the transaction that we were trying to workout with either getting money out of the aircraft and/or pledging it to the bank as additional support for a loan on or a loan on the Falcon.

        This went nowhere, so nothing ever happened.  It went nowhere.  I did not think it was -- it would have created a convoluted transaction and it was already as complex as I wanted it to be, and I wanted to keep it as simple as possible.

Q.   Okay.

        You testified that he wanted to get money out of this airplane.

        What does that mean?

A.   Well --

3286

Q.    In summary terms, what are you talking about?

A.    I would think that would mean a loan transaction, but there was never really a request for a loan.

Q.    What's the purpose of this e-mail, the Cessna 414 for trade?

A.    I think there was an issue in taking the Falcon 10 out and putting this in and trade in the collateral and maybe he was going to hock the Falcon 10 to somebody else.

      I don't know what his motivation was, but we never went forward with this.  This was something that we never forward with.

Q.    Okay.

      Moving on to the next e-mail, Government's Exhibit 4238, this is an e-mail from Mr. Constantine to you, June 1st, 2009, subject line action items, correct?

A.    Yes.

Q.    There's a couple of different parts to this e-mail.

      Fair to say this is a rough outline of the terms and conditions of the agreement that you ended up entering into with Mr. Constantine?

A.    It would be a very rough.  There were a lot of specifics that went in here.  This was more who was going to be responsible for drafting of the documents and that sort of thing.

Q.    Who was also going to be responsible for the money,

right?

A.    Well, that was something, yes, that is spelled out in this rough outline, yes.

Q.    Just looking at subsection F, who was going to be responsible for bringing the money to this transaction?

A.    TC is Tommy would wire monies to the escrow to make this transaction happen.

Q.    Finally, looking at Government's Exhibit 4204, this is an e-mail from Mr. Constantine to you on June 1st, 2009, correct?

A.    Well, it's actually to Kellie, but I was copied on that.

Q.    Who is Kellie?

A.    I believe Kellie Price -- let me pause for just a second because as I recall I think she was an escrow agent.

Q.    I think at the bottom it says that.

A.    Thank you.

Q.    There you go.

A.    She was an escrow agent at Aerospace Reports.

      Aerospace Reports is an escrow company where we put all of our documents in and the money goes into a completed transaction.

Q.    So Aerospace Reports is an escrow company, so it's like a closing for a house that you use an escrow company

3288

for a closing for transactions?

A.    That's a simplified explanation, yes.

Q.    Let's go to the actual agreement.

I'm going to hand you what's been marked as Government's Exhibit 4212.

Do you recognize that?

A.    I do.

Q.    What is it?

A.    It's a forbearance agreement and partial settlement agreement.

Q.    Looking at the signature page, can you tell us who signs on page 8 of this document, at page 8, both of them?

A.    For Diamante Air, LLC, the borrower is Phil Kenner as well as him being a guarantor, and on page 8 Tommy signed as a party to this agreement as well.  Sergei Gonchar signed on.  We eventually got all of the signatures on a page and that's the following page 8 also referenced.

Q.    Do you also sign this agreement?

A.    I did as well as Greg Halsey.  He's a vice president at the bank.  He's currently the president of the aircraft division.

Q.    Is this a true and accurate copy of a forbearance and partial settlement agreement that First Source Bank entered into with the defendants Phil Kenner and Tommy Constantine?

3289

A.    Among other parties, yes.

          MS. KOMATIREDDY:  The government moves 4212 into

evidence.

          MR. LARUSSO:  No objection, your Honor.

          MR. HALEY:  In view of his qualifications among

the parties, Judge, no objection.

          THE COURT:  4212 is admitted.

          (Government Exhibit 2412 in evidence.)

BY MS. KOMATIREDDY:

Q.    Publishing it for the jury, I want you to walk us

through this agreement, Mr. Rozenboom.

          On the first page it says definitions.  It

outlines the parties that you just mentioned, correct,

Diamante Air, Phil Kenner, Sergei Gonchar, Kenner and

Gonchar in 1 through 4?

A.    Yes.

Q.    And looking at the actual -- the section entitled

acknowledgment of default, demand and acceleration, could

you explain what this goes over?

A.    The defendants in this agreement acknowledge that

they were in default of their loan transactions specified

on A 10 under those loan agreements, that they were in

default and we had demanded and accelerated that the debt

be paid to the bank.

Q.    When you say there were loans in default, that was

3290

the loan on the Metro and the Falcon, correct?

A.   Both loans, yes.

Q.   And the next section is entitled forbearance on page 3, section D.

What was the forbearance provision of this agreement about?

A.   We were going to forbear from taking -- moving forward.

We had actually filed a lawsuit and we were basically putting that lawsuit -- I'm going to check to be sure.  I can't remember if we agreed to set it aside or cancel it.  We may have agreed to cancel it.  I have to wait to read the rest of the document.

We would stop pursuing people when they entered into this agreement if everybody cooperated under the terms of the agreement.

Q.   Okay.

A.   And those would be the defendants.

Q.   When you say the defendants, who are you talking about?

A.   The defendants are defined in A 5 on the first page.

Q.   Okay.  Let's go back there.

A 5 on the first page, defendants shall mean borrower, which is Diamante Air, Kenner and Gonchar, right?

Rozenboom  -  Direct/Komatireddy

A.    That is correct.

        We had filed a lawsuit against them.

        (Continued on next page.)

Rozenboom - Direct/Komatireddy

3292

Q    So in the forbearance section it also indicates the total debt as 1.1, is that right?

A    Well, yes.

Q    And what is the total amount owed by Diamante, Kenner and Gonchar at the time before you entered into this agreement?

A    $1,341,046.86.

Q    Turn to the next page, surrender of aircraft collateral.  What is that?

A    The agreement was that the defendants would surrender the aircraft to the bank, both aircrafts, that being the Fairchild Metro and the Falcon 10.

Q    Under the section F on page 5, entitled the sale of the Falcon.  Under this agreement what is supposed to happen to the Falcon?

A    That is --

        MR. LARUSSO:  I apologize for interrupting.  I believe the word in the earlier question was defendants. Are we talking about the defendants in the lawsuit involving these defendants or the defendants in this case?

        I'm sorry.  I apologize.

        THE WITNESS:  Do you want me to answer that?

        THE COURT:  Yes.

        THE WITNESS:  The defendants as referenced in this document 4212.

3293

MR. LARUSSO:  Thank you very much.  Sorry.

Q    So the Falcon, what are the terms of the sale of the Falcon, the key terms?

A    The key terms were that it was going to be acquired and the guarantors as well as the borrower, Diamante Air, agreeing to the bank selling that, and I want to get the name right.  I think it was --

Q    Well, let me help you.  The first paragraph it says shall sell the 1976 Falcon to Arizona Falcon on or before June 5, 2009, right?

A    Yes, I think after this there was another agreement or arrangement that was reached where Arizona Falcon was being formed and an actual different name was obtained at that point in time, so we didn't actually -- we agreed to it but I think it was AZ Falcon Partners or something like that.

Q    I'll hand you Government's 4218.  Do you recognize that?

A    I do.

Q    What is it?

A    It's an operating agreement of AZ Falcon Partners LLC, a Delaware Limited Liability Company.

Q    And is that operating agreement signed on a signature page by Mr. Constantine, on the last page.  I'm sorry, the second to the last page, page 14?

3294

A    It is.

Q    And is this a true and accurate copy of an operating agreement AZ Falcon Partners kept in the bank's file in connection with this transaction?

A    It is.

          MS. KOMATIREDDY:  We move 4218 in evidence.

          MR. LARUSSO:  No objection.

          MR. HALEY:  No objection.

          THE COURT:  1418 is admitted.

          (Whereupon, Government Exhibit 4218 was received in evidence.)

Q    An operating agreement of AZ Falcon Partners, heading on page 1, this exhibit.  It says in the first paragraph, that this operating agreement is entered into and shall be effective as of May 29, 2009, by and among the members of the company, executing this limited liability company agreement.

          Do you see that?

A    I do.

Q    Looking at the signatories, I will go to 4218, page 14.  Who are the signatories on this operating agreement?

A    Sue Ellen Fergusson, Trustee.

          Looks like an Eric Edenholm and Tommy Constantine.

Rozenboom - Direct/Komatireddy

3295

Q    Anyone else?

A    No.

Q    Let's go back to your forbearance agreement, 4142, page 5.  So in the sale of the Falcon, you testified who it was being sold to.  What was the sale, the purchase price?

A    $525,000.

Q    How did that money actually come into the bank?

A    Well, it was going to be submitted to Aero-Space Reports and we were going to close in escrow.

Q    A couple figures here, $425,000, Arizona Falcon loan; 100,000 Falcon sale escrow account, and $262,000 Falcon deficiency.

      Explain to us what those figures represent?

A    There was a difference between the price that Tommy, or in this case, Arizona Falcon agreed to acquire the Falcon 10 at and the loan balance that we had to Diamante Air.

      So they had to come up with these moneys, another $363,000 ballpark in order to satisfy the loan on the Falcon 10 and that's what we were trying to achieve here.

Q    Okay.  And then the next section of this agreement is entitled disposition of the Fairchild.

      So under this agreement what is supposed to

3296

happen to the other plane, the Fairchild Metro?

A     The other airplane, we were to acquire that other
airplane, that it be surrendered to the bank and it would
be sold.

          We were concerned, I was concerned that the loan
balance on that aircraft and the value we might get from
that aircraft might be a potential where we would be
short.  So as a way to address that, there was $50,000
that was agreed to be put into an escrow agreement that
would be held to offset any potential shortfall, should we
not be able to realize a payoff on that Diamante Air
Fairchild Metro loan.

Q     Who was responsible for putting in that $50,000 to
make this agreement complete?

A     Tommy Constantine.  That was part of the arrangement
that we agreed on.

Q     I will go through a couple more agreements for the
record.

          Handing you 4207 and 4221, Government's
exhibits.  Describe what each one is for the record?

A     4207 is an aircraft purchase agreement for the
purchase of the Falcon 10 for $525,000.

Q     And is that an agreement that is signed by
Mr. Constantine?

A     The buyer is AZ Falcon Partners LLC with Tommy

Constantine being the manager.

Q    And 4221, describe what that is in general terms?

A    As part of the partial settlement agreement, Exhibit 4212 and the purchase agreement, we had made arrangements to make a loan to AZ Falcon Partners LLC for $425,000 and there was going to be approximately 100,000 of equity when that loan was made in that aircraft or believed to be.

Q    Okay.  Is 4221 also signed by Mr. Constantine?

A    It is signed by AZ Falcon Partners LLC, Tommy being the manager of that company.

Q    Are these true and accurate copies of agreements that are in the file of 1st Bank?

A    They are.

        MS. KOMATIREDDY:  Government moves 4207 and 4221 in evidence.

        MR. LARUSSO:  No objection.

        MR. HALEY:  Your Honor.

        MR. HALEY:  No objection.

        THE COURT:  4207 and 4221 are admitted.

        (Whereupon, Government Exhibit 4207 and 4221 were received in evidence.)

Q    Taking a look at 4207.  You described this is the purchase agreement for the Falcon.  I want to turn your attention to the second page.  There's a section at the

3298

top of the second page, entitled existing liens, 1.2.

                Can you describe what that is?

A    We sold the aircraft, subject to these two liens.
One being a mechanic's lien and I think this is the
earlier I spoke of interior work, and then reportedly
Tommy Constantine had a lien on the aircraft via some
inputs that he had contributed toward the aircraft.  I
have no confirmation of what those inputs were but I did
not have any objection to putting that in because I was
going to sell it subject to those liens anyway.

Q    When you said "reportedly," who reported that to you?

A    Tommy reported that to me.

Q    After this aircraft purchase agreement was executed,
after the sale goes through, who is responsible for paying
those liens?

A    Well, it would be the responsibility of AZ Falcon
Partners LLC.

Q    Does this transaction ultimately go through?  Is
there a closing?

A    Yes.

Q    And I will hand you what has been marked as
Government's Exhibit 4222.

                Do you recognize that?

A    I do.

Q    What is it?

3299

A     It's an Aero-Space Reports closing statement.

Q     For the transaction we were discussing?

A     Yes.

Q     Is that a true and accurate copy of a closing statement for this transaction?

A     Yes.

Q     And --

          MS. KOMATIREDDY:  The Government moves 4222 in evidence.

          MR. LARUSSO:  No objection.

          MR. HALEY:  No objection, Judge.

          THE COURT:  4222 is admitted.

          (Whereupon, Government Exhibit 4222 was received in evidence.)

Q     So at closing, tell us what money comes in and what money goes out?

A     We received $415,000 was received via the loan that we made -- I'm sorry.

Q     Okay.  Start again.

A     I'm looking at this just to make sure (perusing.)

          Yes, we received $415,000 on the Diamante Air loan --

Q     Let me back up for a second.

A     Okay.

Q     Looking at this statement, it's the statement of

3300

Aero-Space Reports?

A    Yes.

Q    That's a closing company?

A    Yes.

Q    In terms of what the closing company says, start at the top.  It says funds received from.  Is that money that goes into the closing company's escrow?

A    It is money that came in and the moneys that came in came from AZ Falcon Partners LLC.  And the monies came in and those monies were released to take care of the deficiency -- they are actually down at the bottom there if you want me to go through them.

Q    Yes.

A    I alluded to earlier that there was a concern for the Metro loan, that there would potentially be a shortfall of $50,000.  So there was 50 grand that would be held at the escrow company for one year and that was the first line item there.

        And --

Q    The first line item, the $50,000, for satisfying in part the Fairchild Metro loan?

A    I'll call it an escrow for a potential deficiency.

Q    Okay.  Got it.

        All right.  Look the rest of the funds you get.

A    There was a requirement in the agreement that

3301

363,000, that would be needed to clear the lien on the Falcon 10, and that was moneys that came to the bank to satisfy that differential between the purchase price and the loan that was in Diamante Air's at the bank.

Q    Okay.  And the other line items, closing fees.  Is that fair?

A    Those are fees that Aero-Space earned as part of the transaction.

        MS. KOMATIREDDY:  I'll hand you what is stipulated to as 4203 and move for its submission at this time, the bank records.

        MR. LARUSSO:  No objection, your Honor.

        MR. HALEY:  I'm sure I don't object, Judge.  I have no objection.

        THE COURT:  4203 admitted.

        (Whereupon, Government Exhibit 4203 was received in evidence.)

Q    On June 4, 2009, I just want you to look at the bank record, it says Dear Aero-Space Reports, Inc., escrow at the top?

A    It does.

Q    Incoming fed funds transfer information, correct?

A    It does.

Q    And the sender is First Century Bank, Law Offices of Ronald Richards?

3302

A     I see that.

Q     The receiver BOK, actually is a beneficiary
Aero-Space Reports, Inc., escrow.

        Do you see that?

A     I do.

Q     And the amount here is $415,000 on June 4, 2009.  Did
I read that correctly?

A     You did.

Q     That's the money that came in for this closing
transaction?

A     It appears that that is correct because the
description makes reference to the Falcon 10 and the
Fairchild Metro in the beneficiary line toward -- almost
three-quarters of the way down.

Q     Okay.

A     That's the serial number and the tail number for the
Fairchild's and the Metro, or the Fairchild and the
Falcon.

Q     After this transaction, what, if anything, happened
to the tail number of the Falcon?

A     It actually changed and I think -- that happens
often.  The owners want to put their, if you will, brand
sometimes on the aircraft to signify it is for them.  And
I do recall about the time of the closing there was
correspondence that on the Falcon 10, that the N number

3303

that is printed on the back of the aircraft was going to change to something ending with a TC.

Q    Okay.  I'll hand you what has been marked as Government's Exhibit 4206 and Government's Exhibit 947. Tell me if you first recognize 4206.

A    I do recognize that e-mail.

Q    Is that a true and accurate copy of an e-mail communication from Mr. Constantine with you cc'd?

A    Yes.

Q    And 947, is that a true and accurate copy of a photograph of a Falcon?

A    It is a photograph of a Falcon with that N530GC end registry on the engine.  The side of the engine.

        MS. KOMATIREDDY:  I offer 4206 and 947 in evidence.

        MR. LARUSSO:  No objection.

        MR. HALEY:  No objection.

        THE COURT:  Those two exhibits are admitted.

        (Whereupon, Government Exhibit 4206 and 947 were received in evidence.)

Q    So June 3, 2009, was around the time of the closing. Is that accurate?

A    Yes.

Q    And Mr. Constantine writes we will be changing the registration number from N711JC to N530TC, the first line?

3304

A    Yes.

Q    And turning to Government's Exhibit 947, that's the Falcon with the new number?

A    Ask that question again, I'm sorry.

Q    That's the Falcon you sold to Mr. Constantine with the new tail number?

A    It is.

Q    Now, after this transaction goes through, you mentioned that the bank would now have a loan to AZ Falcon Partners.  Were there payments made on that loan?

A    Yes, there were.

Q    I will hand you what has been marked as Government's Exhibit 4208.

         Do you recognize that?

A    I do.

Q    What is it?

A    That is a loan history for the AZ Falcon Partners loan on the Falcon 10.

Q    Is that a true and accurate copy of the loan history that you just described?

A    It is.

Q    The entries in that loan history are made and kept in the ordinary course of the bank's business?

A    Yes.

Q    And created at or near the time the payments are

3305

actually made?

A     Yes.

Q     Or not made, as it might be.

A     Yes.

          MS. KOMATIREDDY:  Government moves 4208 in evidence.

          MR. LARUSSO:  No objection.

          MR. HALEY:  No objection, your Honor.

          THE COURT:  4208 is admitted.

          (Whereupon, Government Exhibit 4208 was received in evidence.)

Q     Looking at this loan history, I want to focus your attention on this exhibit, 4208 on the months between July of 2009 and December of 2009.  Were payments made on this loan during that time period?

A     Yes, there were.

Q     And can you tell us in terms of the dates and I'll read them into the record, July 6th of '09.

          August 6th of '09, September 8th of '09. October 6, '09.  November 6, '09.  And December 9th of '09.

          On or about those dates, what were the amounts of each payment that the bank received on this loan?

A     $4,065.

Q     Who was responsible for sending you that money?

A    AZ Falcon Partners LLC.

Q    Government's Exhibit 1102, page 9, I'll draw your attention.

On July 6, 2009, first for the record, this is a bank statement for an account in the name of Law Offices of Ronald Richards.  Do you see that?

A    I do.

Q    On July 6, 2009, do you see a payment?  It says wire transfer to Richard Rozenboom in the amount of $4,065?

A    I do see that.

Q    Would that be, although it says your name, is that the payment on the AZ Falcon loan?

A    That was a payment on the AZ Falcon loan.  That was not a payment to Richard Rozenboom.

Q    Turning to Government's Exhibit 1102, page 12. Looking at August 6, 2009, do you see another payment of $4,065 here?  The description is wire transfer to AZ Falcon Partners?

A    I do.

Q    Was that a payment on the AZ Falcon loan?

A    It does correspond to that dollar amount and date.

Q    Just to be sure, I'll turn to Government's Exhibit 1105 which is in evidence, page 44.  This is a wire transfer request for the same date, August 6, 2009. It says beneficiary AZ Falcon Partners, reference for

3307

receiver.  Attention: Richard Rozenboom.  That is you?

A    Yes.

Q    And it says beneficiary name, 1st Source Bank, South Bend, Indiana, that's the bank you work for?

A    Yes.

Q    That corresponds to the loan made on or about that date?

A    Yes.

Q    1102, page 16.  On September 8, 2009, wire transfer to AZ Falcon Partner of 4,065.  Do you see that?

A    I do.

Q    Looking at Government's Exhibit 1102, page 22.

        On November 6th, there's another payment out of this account, wire transfer to AZ Falcon Partners, $4,065, do you see that?

A    Yes.

Q    And on December 8, 2009, there is another wire transfer.  It says to Richard Rozenboom, December 8, 2009. The amount is $4,065.  Do you see that?

A    I do see that but again I did not receive that money in my name.  I would have received it for the bank and the payment history on that shows that the wire must have came in after hours because we applied it on December 9th.

Q    Okay.  Just for the record each of the payments we just went through, those were payments on the AZ Falcon

3308

loan?

A     It was.

          THE COURT:  Do you want to take a break?

          MS. KOMATIREDDY:  Sure.

          THE COURT:  Juror no. 7, remain.  I need to talk
to you about your employer.

          (Whereupon, at this time the jury exits the
courtroom.)

          (Juror no. 7 remains.)

          THE COURT:  So I'm giving you a copy of a
letter.  You have a copy for yourself.

          JUROR NO.7:  Thank you.

          THE COURT:  The only address we have is the
Manhattan corporate address.  It may take a while to get
back to this individual.  If you have a fax number where
you want me to fax it directly to him or shall we mail it
to Manhattan.

          JUROR NO. 7:  He lives somewhere else.  I really
don't care.

          THE COURT:  So I'll mail it to the Manhattan
address and obviously if he contacts you you can tell him
the letter was sent and supply him with a company if you
want to.

          JUROR NO. 7:  Thank you.

          THE COURT:  If you have any other issues with

3309

him, let me know.

JUROR NO.7:  I definitely will.

THE COURT:  Thank you.

(Whereupon, a recess was taken.)

THE COURT:  Please be seated.

All right.  Bring in the jury.

(Continued.)

3310

(The jury enters the courtroom.)

THE COURT:  Please be seated.

Go ahead.

BY MS. KOMATIREDDY:

Q    You testified about two aircraft, a Metro and a Falcon.  Looking at the Metro here now in 948.

A    Yes.

Q    What happens to the Metro?

A    We recovered it, and then about a year later, a little over a year, we sold it.

Q    I'm going to hand you what's been marked Government Exhibit 4233.  Do you recognize that?

A    I do.

Q    What is that?

A    It's a purchase agreement for the Fairchild Metro.

Q    Is that a true and accurate copy of the purchase agreement as found in the bank's files?

A    Yes.

        MS. KOMATIREDDY:  The Government moves 4233 in evidence.

        MR. LaRUSSO:  No objection.

        MR. HALEY:  No objection.

        THE COURT:  Admitted.

        (Government Exhibit 4233 received in evidence.)

Q    Looking at this purchase agreement, it says this

3311

agreement is made this 8th day of July 2010 by and between

SFG Commercial Aircraft Leasing, Inc.  Who is SFG

Commercial Aircraft Leasing, Inc.?

A     That is an affiliate subsidiary company of 1st Source

Bank that we hold our repossession aircraft in typically,

one of them.

Q     Then it goes on to identify the SFG as the seller,

and I will spell this, B.E.M.I.D.J.I., Aviation Services

as the purchaser.  Is that fair?

A     That is.

Q     What was -- how much did you sell the plane for?

A     $370,000.

Q     In terms of the purchaser, the person behind that

company, Bemidji Aviation Services, is that someone who is

a professional hockey player?

A     Not to my knowledge, no.

Q     Who was it?

A     He was just an aircraft user that wanted to acquire

this aircraft.

Q     I'm going to hand you what's been marked Government

Exhibits 4227, 4234 and 4235.  Take a look at those.

          Starting with 4227, can you tell us what that

is?

A     It's an e-mail that I sent Helen, Helen Ackerson, in

our documentation area, to direct Aerospace Report to

3312

release the monies, the Fairchild Metro escrow monies, the

$50,000 to the bank, because we hadn't been paid off and

were relying on that deficiency money in the escrow, and

that document was authorized by Tommy Constantine.

Q    4234 looks like a closing statement from the

aerospace reports; is that fair?

A    Yes.

Q    For the sale of the Fairchild Metro in 2010?

A    Yes.

Q    Can you describe, generally, what is 4235?

A    Ask the question again.

Q    Can you describe generally Government Exhibit 4235?

A    It's a closing statement that shows that monies came

from -- I would slaughter the pronunciation of Bemidji

Aviation Services of $371,667.50, then the rest of the

monies going, for the most part, 368 of it to 1st Source

Bank, and the rest of the money then for the respective

escrow companies.

          MS. KOMATIREDDY:  Before we get to the details,

let me move to admit Government's Exhibits 4227 and 4234.

          THE COURT:  4235 as well?

          MS. KOMATIREDDY:  Also 4235.

          THE COURT:  Any objection?

          MR. HALEY:  No objection, Judge.

          MR. LaRUSSO:  No objection.

3313

THE COURT:  Those exhibits are admitted.

(Government Exhibits 4227, 4234 and 4235 received in evidence.)

Q    Publishing them for the jury, looking at 4227, you describe this as an e-mail, and at the bottom of the e-mail -- you appear to be forwarding an e-mail to Mr. Constantine; is that right?

A    Correct.

Q    On the second page is an authorization to release escrow funds.  Remind us, where is this money coming from?

A    This money is coming from monies that were held in an escrow for the Fairchild Falcon that was established in June of 2009.  And it was basically if we don't get our whole -- strike that -- on the Metro loan, that we could draw this $50,000 out of escrow upon signing of the release documents, and that's what Aerospace Report required.  And I had trouble getting ahold of Tommy.  But we eventually got the monies released.

Q    Turning to 4235, which is in evidence, just tell us what we are looking at here in terms of 4235?

A    This is an aircraft bill of sale that I executed on behalf of SFG Commercial Leasing Inc., which is the bank's holding company subsidiary, and I'm selling that to the party referenced before it in the purchase agreement, and the next document that was attached to that is the release

3314

of our lien on that Fairchild Metro aircraft.

Q    What happens to the Falcon aircraft?

A    We made a loan, and that loan paid up until December

of 2011 and we stopped getting payments.

Q    What happened when you stopped getting payments?

A    I do what I do.  I try to make contacts with the

parties.  In this case, Tommy was my point of contact,

Tommy Constantine and I attempted to either recover the

aircraft or get paid off.  We -- I believe I also

implemented a lawsuit here because it wasn't promptly paid

off as demanded.

Q    Did you enter into any agreements in connection with

that final payoff?

A    We did.  We agreed to settle, after looking at the

transaction, that was one of those things where we thought

it was best we could get a certain amount of dollars.

That amount was determined amongst the bank, management.

If I could get $400,000 out of this loan, we would release

our lien on that aircraft.

Q    Directing your attention to Government Exhibit 4211,

can you describe generally what that is?

A    That is the settlement agreement for $400,000 that we

entered into with AZ Falcon Partners.

Q    At page 4, the last page, is that your signature?

A    It is.

3315

Q    Then Mr. Constantine's signature to the right?

A    It is.

Q    Is this a true and accurate copy of the settlement agreement in the bank's files?

A    It is.

         MS. KOMATIREDDY:  Government moves 4211 in evidence.

         MR. LaRUSSO:  No objection.

         MR. HALEY:  No objection.

         THE COURT:  4211 is admitted.

         (Government Exhibit 4211 received in evidence.)

Q    Looking at the settlement agreement, it says:  This agreement is made by and among; 1, SFG Commercial Aircraft Leasing.  Again, are you the representative of SFG?

A    I am.

Q    2, AZ Falcon Partners; and 3, Sue Ellen Ferguson states AZ Falcon and Ferguson shall be collectively referred to as the defendants, at least in this agreement, right?

A    Yes.

Q    And the reason for that was the lawsuit you just mentioned?

A    That is correct.

Q    As part of this agreement and the terms and conditions, B 1 says:  Upon SFG's receipt of the sum of

Rozenboom - cross/Komatireddy

3316

$400,000 from Falcon 10 Partners LLC, by September 24, 2012, by wire transfer, SFG shall:  A, assign, grant and convey to Falcon 10 Partners LLC all of SFG's rights, title and interest in the Falcon aircraft and the loan contracts and guarantee.

          Did I read that correctly?

A     You did.

Q     Did you, in fact, receive $400,000?

A     We did.

Q     As part of the settlement agreement?

A     We did.

Q     Did you convey all of your interest in the Falcon 10 to Falcon 10 Partners LLC?

A     We did.

          MS. KOMATIREDDY:  At this time, move in stipulation marked Stip 40 and Government Exhibits 1311 through 1318, which are bank records.

          THE COURT:  Any objection?

          MR. HALEY:  No objection.

          MR. LaRUSSO:  No objection.

          THE COURT:  Stipulation, Stip 40, and Exhibits 1311 through 1318 are admitted.

          (Stip 40 and Government Exhibits 1311 through 1318 received in evidence.)

Q     Turning your attention to Government Exhibit 1318,

3317

there is a bank statement for Falcon 10 Partners LLC for the period of September 2012.  Do you see that?

A    I do.

Q    There is a transfer to you, again it says Richard Rozenboom, September 24th, 400,000?

A    Everybody is going to get a laugh out of this.  It actually says 1st Source, although we don't spell out first, it's a 1st.  It was sent to my attention here. That was -- you guys are having fun with me today.  That was, I believe, the monies that correspond to the bank, what we received or was received as part of the closing transaction.

Q    Now I'm going to turn your attention to Government Exhibit 1317.  Let me go back.  Before that $400,000 comes in, there is a transfer in the same day of 400,000.  Says transfer from, looks like checking, right?

A    Yes, it references a checking number there.  You can see that the money came in and went out the same day on September 24th.

Q    So I'm going to go to 1317, which is the bank statement for AZ Falcon Partners for September of 2012. Turning to page 6, do you see there on September 24th a transfer out of $400,000?

A    I do see that.

Q    Looking to page 2, the deposits this month, there are

Rozenboom - cross/Komatireddy

3318

deposits here in the amount of $310,000 from Comprehensive Care Solutions a few days before.  Do you see that?

A    I do see that.

Q    Do you know who that is?

A    I do not.

Q    And another deposit from Orlean Investments Limited Partners on September 24th.  Do you see that?

A    I do.

Q    Do you know who that is?

A    I do not.

Q    You said that you ended up transferring the interest in the Falcon 10 to Falcon 10 Partners.  I'm going to hand you Government Exhibits 4214, 4244 and 4245.  Do you recognize those?

A    I do.

Q    What are 4214 and -- what is 4214?

A    4214?

Q    Yes.

A    That is the assignment of SFG Commercial Aircraft Leasing's interest in the Falcon 10 airplane to a company named in the settlement agreement, known as Falcon 10 Partners LLC.

Q    Is that a true and accurate copy of that assignment of security interest?

A    It is.

3319

MS. KOMATIREDDY:  Government moves 4214 in evidence.

MR. LARUSSO:  No objection.

MR. HALEY:  No objection.

THE COURT:  4214 is admitted.

(Government Exhibit 4214 received in evidence.)

Q    Fair to say this is the document by which you transferred that interest to Falcon 10 Partners, I think that's what you just testified?

A    Correct.  Our security -- all interest in the aircraft to Falcon 10 Partners LLC.

Q    Looking at 4244 and 4245, can you describe for us what those are?

A    It's correspondence from Tommy to Helen regarding the international registry being set up so that we could do the reassignment.  There is another -- besides the FAA, there is an international registry for aircraft as well. And that was -- we preferred to have a transfer done also to the international registry.

Q    Is 4244 and 4245, are those true and accurate copies of correspondence between Mr. Constantine and the bank, including you as a cc?

A    Yes, I was aware of both of these.

MS. KOMATIREDDY:  We have stipulated to the admission of 4246 an Amended and Restated Operating

Rozenboom - cross/Komatireddy

3320

Agreement of Falcon 10 Partners LLC.

          THE COURT:  Any objection to 4244, 4245 or 4246?

          MR. LaRUSSO:  No, your Honor.

          MR. HALEY:  No, Judge.

          THE COURT:  Those 3 are admitted.

          (Government Exhibits 4244, 4245 and 4246

received in evidence.)

Q    I'm going to go to this operating agreement, 4246.

Do you have a copy up there?

A    I do not have a copy of that.

Q    Looking at this operating agreement, what is the

effective date?

A    March 15, 2011.

Q    Are you familiar with this agreement at all?

A    No.

Q    Going to the last page, who is listed as the managing

member on page 22?

A    Management -- the managing member is Tommy

Constantine, and then there is a non-managing member, and

I can't make out that name.

Q    Just one?

A    Yeah, just one managing member.

Q    Just one non-managing member?

A    Correct.

          MS. KOMATIREDDY:  No further questions.

Rozenboom - cross/Haley

3321

THE COURT:  Cross-examination?

MR. HALEY:  Yes, sir.

CROSS-EXAMINATION

BY MR. HALEY:

Q    Mr. Rosenbaum, my name is Rick Haley.

A    It's Richard Rozenboom.

Q    Sorry; my name gets mispronounced on occasion.

I promise you, sir, I will not ask you to repeat your direct testimony, but I do have a few questions.

A    All right.

Q    With reference to a number of exhibits that were shown to you by the government where you recognized them as being documents maintained in the bank file, I'm just giving you a selection here, all of these yellow-tagged exhibits, we can agree, sir, as relates to each one of those exhibits, we see BNK-SOURCE and then a series of numbers, correct?

A    Yes.

Q    Now, were these documents delivered to the government pursuant to a subpoena, if you recall?

A    That is what I understand.

Q    I see.

Well, as relates to this document, Exhibit 97, would you compare this document and specifically the designation down there with the designations here.

3322

A    Yes.

Q    Based upon that comparison, sir, does this appear to be a true and accurate copy of a document maintained in the bank file with reference to the transactions?

A    Based upon that reference number, I would agree with that comment.

Q    Thank you, sir.

        MR. HALEY:  Your Honor, we offer this as Kenner Exhibit 97 in evidence.

            MS. KOMATIREDDY:  No objection.

            MR. LaRUSSO:  No objection, your Honor.

            THE COURT:  K-97 is admitted.

            (Kenner Exhibit 97 received in evidence.)

Q    Now, in a similar vein, sir, I'm going to ask you to take a look at Kenner Exhibit 98.  In a similar vein, sir, can we agree Kenner Exhibit 98 also bears the same BNK-SOURCE, then a series of numbers, is that correct?

A    That is correct.

Q    Based upon your analysis of these documents already in evidence, is it fair to state, sir, this is a true and accurate copy of a document in the bank's file, to the best of your knowledge?

A    Best of my knowledge.

Q    Thank you.

        MR. HALEY:  Your Honor, I offer that as Kenner

3323

Exhibit 98.

          MS. KOMATIREDDY:  No objection.  This is in as

Government Exhibit 4209.

          THE COURT:  I will admit it again.

          THE WITNESS:  You only have page 1 of 2.

          MS. KOMATIREDDY:  Only page 1 of 2 then.

          THE COURT:  Any objection?

          MR. LaRUSSO:  No.

          THE COURT:  K-98 is admitted.

          (Kenner Exhibit 98 received in evidence.)

          MR. HALEY:  Really page 1 we are interested in,

Judge, but thank you.

Q     Now, at the beginning of your testimony, sir,

admittedly some time ago, you did identify this document,

4237, as being part and parcel of the bank documents

maintained in your file, correct?

A     I did.

Q     And the person who was obtaining the loan in that

regard was Ken Jowdy, is that correct?

A     The person who signed the promissory note was Ken

Jowdy.

Q     Now, with reference to this document, as we look at

the top document, the top left of the document admitted

into evidence, kindly interpret that for us.  How do you

interpret that?  What was Mr. Jowdy doing at this time?

**Rozenboom - cross/Haley**

3324

A    There were references of disbursements -- this being a loan for $650,000, and there was -- you actually -- you had 209,000 highlighted.

Q    Yes.

A    That indicates on there Diamante Air LLC got $290,000 of the $650,000 disbursement.

Q    Mr. Jowdy, as the managing member of Diamante LLC, would have at least been receiving that money, correct, to your knowledge?

A    Diamante Air would have received the money.

Q    But he was the managing member of the Diamante Air, correct?

A    He is a managing member of Diamante Air, yes.

Q    With reference to Kenner Exhibit 98, what does this line indicate, sir?  I'm going down the fourth line for purpose of the government, what does that indicate?

A    This is on -- I have to compare the notes here.

Q    Not to interrupt you, I may be able to assist.

A    You showed me the history, Richard, on the Falcon 10, and you showed me the promissory note with that disbursement on the Metro.  So I will answer your question, but we have apples and oranges.

Q    Thank you for that distinction.  I think I understand it.

        But if I can simply ask a question in this

3325

sense, sir, as relates to this $140,000, do you know what person, what individual would have requested that disbursement?

A    I do not know firsthand, so I don't know firsthand who requested that.

Q    If I was to suggest to you it was Mr. Ken Jowdy, would that refresh your recollection or not?

A    Well, that may be the case, but I personally do not know that.  I would have to check.  What you showed me doesn't provide me enough information to make that conclusion right now.

Q    Fair enough.

Sir, we can agree, can we not, as you testified on direct, it's not my objective to make you repeat what was said, it is important both Phil Kenner and Sergei Gonchar gave personal guarantees with respect to the loan, isn't that true?

A    That is correct.

Q    And there came a point in time when the loan went into default, true?

A    Say it again.

Q    There came a time when the loan went into default; is that true?

A    That is correct.

Q    And because Phil Kenner and Sergei Gonchar signed as

Rozenboom - cross/Haley

3326

guarantors, you then commenced a lawsuit as a result of
the default; isn't that true?

A    That is true.

Q    Incidentally, was Mr. Jowdy named in that lawsuit as
a defendant, responding party?

A    He was not.

Q    At least at that point in time, the people on the
hook were Phil Kenner and Sergei Gonchar due to the
default, true?

A    Individual guarantors and the debtor Diamante Air as
well.

Q    As the LLC in its capacity?

A    Yes, as the LLC.

Q    And the forbearance agreement that was identified by
the government as an Exhibit, that forbearance agreement
was identified as Government Exhibit 4212, that
forbearance agreement was the result of discussions
between, I assume, bank attorneys and attorneys for Mr.
Kenner, Mr. Gonchar as relates to trying to resolve that
lawsuit, is that true?

A    This -- yes, the agreement was negotiated with all of
the parties' input, the defendants' input and Tommy
Constantine.

Q    Thank you, sir.

        Finally, these events go back to 2009 as

3327

reflected in the paperwork, correct?

A    Yes.

Q    You have a pretty good memory of these events; do you

not, sir?

A    I do.

Q    It's refreshing.  Thank you.

          THE COURT:  Go ahead, Mr. LaRusso.

          MR. LaRUSSO:  Thank you.

CROSS-EXAMINATION

BY MR. LaRUSSO:

Q    Mr. Rozenboom, how are you?

A    I'm doing fine.  Thank you.

Q    You never met Mr. Constantine, did you, in person?

A    I have never -- until today, I have only spoken with

him on the telephone.

Q    Mr. Constantine is to my right.

          THE WITNESS:  Hello, Tom.

Q    Mr. Rozenboom, I'm going to try to pick up some of

the topics we talked about a few moments ago.  One of them

was the assignment of security interest, and I believe

settlement agreement with AZ Falcon that you were talking

about a few moments ago.  Let me show you the exhibits.

This is 4214.  Do you recall the assignment of interest?

A    I do recall that, yes.

Q    This is the settlement agreement, 4211 that you

3328

testified to, is that correct?

A    Yes.

Q    This assignment of security interest is in reference to this settlement agreement that you discussed a few moments ago, is that correct?

A    Yes.

Q    Did the bank, at this time, I believe we are talking about 2012, that correct?

A    September, late September 2012, yes.

Q    You do have a good memory.  Thank you.

        Did the bank actually convey the Falcon 10, meaning the airplane itself, to Falcon 10 Partners, or convey the loan for the Falcon 10?

A    We conveyed, as the agreement says, whatever interest we had in that including our security interest to Falcon 10 Partners LLC.

Q    What was that interest?  Was that the loan?

A    That was a security interest in an aircraft and a loan that surrounds that, yes.

Q    In other words, did AZ Falcon Partners transfer ownership of the aircraft to Falcon 10 Partners at the time the bank was paid the $400,000?

A    They may have, but...

Q    Do you know?

A    No, I don't know.

3329

Q     To your --

A     The only thing that the bank did there was whatever interest we had, we assigned that to Falcon 10 Partners LLC.

Q     Again, the interest that the bank had was what?

A     A security interest in an airplane.

Q     A loan?

A     We had a loan.  I have to check the documents on that, because normally when we sell a loan, we actually sell our -- the note, that instrument and that sort of thing.  I don't recall selling -- it escapes me right now, but there is an assignment of a note interest that we would do, and I don't recall doing that in this transaction.

Q     I don't want to do this, is it possible, to your knowledge, you don't remember whether or not there was a transfer of title of the airplane?

          MS. KOMATIREDDY:  Objection.  Asked and answered.

          THE COURT:  Overruled.  You can answer that.

A     There was a transfer.

Q     Let me put it another way.  This transaction wasn't a sale of the aircraft as far as the bank was concerned, is that correct?

A     That is correct.

3330

Q    We can leave it with that.  Okay?

A    All right.

Q    Introduced through Mr. Haley, did I get right, was K-97.  Do you know what this document, it's the operating --

A    Operating agreement of Diamante Air LLC.

Q    That's the company that took the loans out on the two aircraft, is that correct?

A    Yes.

Q    I believe you testified this document was part of your loan file when you finally got an opportunity to examine it, is that correct?

A    It is a document in our loan file, yes.

Q    And this operating agreement lists the members of who Diamante Air is, is that correct?

A    It should, yes.

Q    And if I turn to page 2, it talks about dividend rights, liquidation rights, voting rights.  On the next page has the voting rights, as well listing various individuals.  Are these the members, as you understood it, from the operating agreement in Diamante Air?

A    Yes.

Q    When we see Mr. Ken Jowdy, we see GuideDog.  Did you know GuideDog to be Mr. Kenner?

A    I personally did not know that.

3331

Q    The other, Sergei Gonchar, Darryl Sydor, Jozef Stumpel and Mattias Norstrom.  Those are all members of Diamante Air?

A    Yes.

Q    According to the agreement?

A    According to the agreement.

Q    When you got the file, I think you testified there was default on the two loans Diamante Air had taken out with your company, correct?  That was said many times during your examination?

A    Yes.

Q    Before you ever spoke to Mr. Constantine, Mr. Constantine and I -- Mr. Constantine had no connection, as far as you were aware, with Diamante Air and the members we listed in the operating agreement?

A    I have no information to that, no.

Q    There came a point in time when Mr. Constantine became involved with you over the telephone and through e-mails in negotiating a settlement on these two loans and the lawsuit pending, is that correct?

A    Yes, there was a time I did get to know him.

Q    You have a good recollection.  Can you tell us what role Mr. Constantine played in settling this or settling these two loans in default?

A    The first conversation, as I recall, was a call that

**Rozenboom - cross/LaRusso**

3332

I took at my home with the introduction of Phil Kenner,
that Tommy was the prospective buyer for the Falcon 10,
and with that, he wanted to acquire the Falcon 10 and
assist in resolving the difficulties and the defaulted
loan, and if that is helping to recover the aircraft,
specifically the Fairchild Metro, and with that he did
want to acquire the Falcon 10.

Q    To try and save some time, if I can, I think you can
better explain it than I, from the time you first spoke
with Mr. Constantine to the time that you reached the
settlement, which I believe was around June of 2009, just
describe for the jury what role Mr. Constantine played
with you in finally reaching that result.

A    I would say that Tommy drove the deal in an effort to
resolve the problem that the bank was having with Phil and
assisted in recovering and resolving payments to the bank
as a result of those efforts.

Q    How would you describe those efforts from your point
of view?

A    He wanted that Falcon 10 pretty bad, is what I would
characterize it, but he -- I'm not sure of the answer,
other than he was cooperative in assisting and getting the
deal put together.

Q    You mentioned, I believe, in Exhibit 4233 the
purchase agreement regarding the Metro, Fairchild Metro

3333

ultimately sold?

A     For $370,000, yes.

Q     I believe we talked about the purchaser being Bemidji Aviation Services?

A     Yes.

Q     We got to the back page and looked at the signatures, couldn't make out the second one.

A     Yes.

Q     What role did Mr. Constantine play in securing the buyer and resulting in this agreement?

A     That part, I'm not that clear on, as to what direct role he played in that.  There were a number of parties that he had maybe directed to the aircraft, and he was free to try to assist the bank in selling or jointly market that aircraft.

          But as pertains to specifically finding that person, I don't recall if he did or didn't.  I know he did bring me names of people that had an interest, some of those people I knew or the bank knew of, but ultimately we didn't do anything with those folks.

Q     Did Mr. Constantine play any role in advertising the plane for sale?

A     He did do that on the Metro, the Fairchild Metro he did.

Q     Fair to say this particular airplane, there was some

3334

difficulty in securing a buyer?

A     Yes, there was.

Q     And Mr. Constantine took the time and effort to go out and elicit newspapers, place ads to secure a buyer, you just don't remember in this particular case what role he played?

A     I am in agreement, he did run ads to try to sell the aircraft, yes.

Q     Let me show you what's been marked as Defendant's Exhibit C-198.  I ask if you recognize that as a string of e-mails you had with Mr. Constantine in regards to his role in resolving the two open loans?

A     There is a whole lot of stuff here.  What is your question?

Q     What I would like you to do, does that appear to be a string of e-mails between you and Mr. Constantine in regards to the loans that we have been discussing here today?

A     It is part of the exchange in May that would ultimately formulate a strategy on how to move forward, which was part of the foundation for a resolution that was ultimately entered in late, or agreed to in late and actually inked in June of 2009.

Q     Thank you very much.  I won't go through every aspect.

3335

MR. LARUSSO:  May I ask it be received as Defendant's Exhibit C-198?

MS. KOMATIREDDY:  No objection.  We ask for the same limiting instruction as before.

THE COURT:  Yes.

Any objection?

MR. HALEY:  No, sir.

THE COURT:  C-198 is admitted.

(Defendant's Exhibit C-198 received in evidence.)

THE COURT:  Any statements by Mr. Constantine in those e-mails are not admissible for the truth of those statements, only admissible as to his state of mind as to when he was sending those e-mails.

Why don't we -- can you do it quickly?  Let's break until tomorrow.

Don't read or listen to anything regarding the case.  Don't discuss the case.  Have a safe trip home and good night.

(The jury leaves the courtroom.)

THE COURT:  Mr. Rozenboom, you can step down.

You can all be seated.

What's the lineup for tomorrow?

MR. MISKIEWICZ:  After the completion of Mr. --

THE COURT:  It's my practice if a staff member

3336

recognizes a witness, to put it on the record.

        Michelle mentioned to me before coming out when she was an intern at a college, at the Nassau Coliseum, she did a meet and greet with Bryan Berard, who would not remember her, but she did interact with him.

        In connection with that, I don't think it creates an issue.

        Does anyone wish to be heard?

        MR. LaRUSSO:  No.

        MR. HALEY:  No.

        MR. MISKIEWICZ:  No.

        THE COURT:  I didn't realize she had such an interesting internship.

        Who is on for tomorrow?

        MR. MISKIEWICZ:  Lanie Donlan.  Glen Murray. Lynn LaGuard.  Randi Nusbaum -- we may have a stipulation for Ms. Nusbaum.

        THE COURT:  You are going to take Ms. LaGuard first thing?

        MR. MISKIEWICZ:  Yes; accommodate her quickly. I don't know when she is arriving.  I think she is arriving tomorrow.

        MR. OLIVERAS:  She told us she is coming in tonight.

        THE COURT:  How much more do you have with him?

3337

MR. LaRUSSO:  I said 15; maybe a little bit longer.

THE COURT:  Let's finish him.  She will go on right after him.

MR. MISKIEWICZ:  Jackson Stewart.  And then we have an FBI agent who will testify about the forensic copying of electronic material off of, among other things, a laptop.  That's Special Agent Morshinski from Arizona.

Then, on Thursday, we are projecting, I think we will have some carryover from Wednesday, but on Thursday John Osborn, Chris Petrolies, FBI accounting analyst, Blake Rosser and Elena Diaz from Cabin Crafters regarding all the work that had to be done on one of the airplanes. And that's it for now.

THE COURT:  What about the handwriting expert?

MR. MISKIEWICZ:  John Osborn.  We will get him on probably as early as we can on Thursday.  He is due to testify in other proceedings.

MR. HALEY:  As relates to the expert that's coming in apparently to testify as to the imaging of the computer, I assume you are referring to my client's MacBook computer?

MR. MISKIEWICZ:  Yes.

MR. HALEY:  We may be able to reach a stipulation on that.

3338

Could I ask the government for an offer of proof as relates to that?

MR. MISKIEWICZ:  Sorry; I was getting stereo.

THE COURT:  They might be willing to stipulate.

What's the purpose of calling him.

MR. MISKIEWICZ:  If we work out a stipulation, we will talk to Mr. Haley after the end of court today, see if we can work something out.  There is a lot of testimony, not just about certain documents, but also the functionality of the laptop, the fact it was working, where it was found, things like that, in counterpoint to some things, other witnesses, particularly Mr. Ranford was told a couple of weeks earlier the laptop is broken.  I don't know if we can reach a stipulation.  We may.

MR. HALEY:  Perhaps a stipulation will take more time than having the witness testify.  I don't think.

MR. MISKIEWICZ:  We will try and work it out.

THE COURT:  That's fine.  You can give it a shot.  If it sounds too complicated...

Let's go back to Ms. Komatireddy.  You were raising an issue earlier today.

MS. KOMATIREDDY:  Two things.  Some records defendant Constantine was not willing to stipulate to.  I want to move them in through a business record certification, which the Court is not sure of the normal

3339

process.

THE COURT:  I would like to review it, and while I'm reviewing it, if there is a particular objection what I'm looking for.

MR. LaRUSSO:  The problem, we don't know.  They are third parties.  We don't understand the relevancy of these documents, and quite candidly haven't had a complete review of them.

I apologize for not having done it sooner.

I am losing track of time here, Judge.  We are at the stage, we just don't see how it's relevant, third-party documents can't attest to them factually.

MS. KOMATIREDDY:  These are expenses that are diversions from the Hawaii fraud and Eufora frauds from 2006 and 2008.  Money goes out of the Constantine Management Group account to these various line items.  We didn't want to have huge numbers of witnesses.  Some of these records, we want to put them in later, summarize them in closing.  That's the purpose of that.  There is --

THE COURT:  These are records that show expenses from those monies being made?

MS. KOMATIREDDY:  Payment receipts showing the money out, transfer out around the same time from Constantine Management Group came into this company. Sometimes it's not obvious what the company does payment

3340

receipt, payment receipt shows the invoices it went to pay.

THE COURT: The Government's position, it's unauthorized?

MS. KOMATIREDDY: Yes, and all business records, typical receipts and invoices of the company. One stipulation we did reach as to authenticity with respect to loan documents, Tamalpais Bank, which is a bank where the defendant Constantine had a mortgage in 2008, there was a mortgage payment made for proceeds in the Eufora fraud, specifically Mr. Ranford's money that went, supposed to go -- denominated to go into Eufora, went to CMG, one of the payments out to this mortgage. Again, the only objection was relevancy. I wanted to proffer in relevancy.

MR. LaRUSSO: I haven't actually seen the transfer of monies from Mr. Ranford into the account. All I'm seeing is money going out from Mr. Constantine's management group. If I had an opportunity to examine that might be able to give the Court --

THE COURT: Can you point to him the document? You don't have to do it right now. Take another look at them, and it sounds relevant to me. If there is a break in the chain of relevance from the government's proffer, you can bring it to my attention.

3341

MS. KOMATIREDDY:  Want me to hand up the certificates?

THE COURT:  You are not -- I'm not contesting the declaration.

I will hear any further relevancy.

MR. LaRUSSO:  I think relevancy is the point.

MS. KOMATIREDDY:  Thank you.

THE COURT:  All right.

(The trial was adjourned to June 10, 2015.)

3342

WITNESSES

| | |
|---|---|
| BRYAN BERARD | 3133 |
| CROSS-EXAMINATION | 3133 |
| BY MR. LARUSSO | |
| REDIRECT EXAMINATION | 3205 |
| BY MR. MISKIEWICZ | |
| RECROSS-EXAMINATION | 3226 |
| BY MR. HALEY | |
| RECROSS-EXAMINATION | 3242 |
| BY MR. LaRUSSO | |
| RECROSS-EXAMINATION | 3262 |
| BY MR. LARUSSO | |
| RICHARD ROZENBOOM | 3266 |
| DIRECT EXAMINATION | 3266 |
| BY MS. KOMATIREDDY | |
| VOIR DIRE EXAMINATION | 3281 |
| BY MR. HALEY | |
| CROSS-EXAMINATION | 3321 |
| BY MR. HALEY | |
| CROSS-EXAMINATION | 3327 |
| BY MR. LaRUSSO | |

EXHIBITS

| | |
|---|---|
| Government Exhibit 4237 in evidence | 3269 |

3343

```
Government Exhibit 7202 and 948 in evidence      3270

Government Exhibit 4209 and 4210 in evidence     3273

Government Exhibit 4231 in evidence              3280

Government Exhibits 4238, 4239, 4240, 4241       3283
and  4204 in evidence

Government Exhibit 2412 in evidence              3289



Defense Exhibit C 183 in evidence               3140

Defense Exhibits C 54, 55 and 56 in evidence    3160

Defense Exhibit C 52 in evidence                3162

Defense Exhibits C 53, C 194 and C 51 in        3166
evidence

Defendant's Exhibit 190-T was received in       3202
evidence

Defense Exhibit C 191 and C 191 T in evidence   3263

Defense Exhibit C 192 and C 192 T in evidence   3264



Government Exhibit 4218 was received in         3294
evidence

Government Exhibit 4207 and 4221 were           3297
received in evidence

Government Exhibit 4222 was received in         3299
evidence
```

3344

Government Exhibit 4203 was received in            3301
evidence

Government Exhibit 4206 and 947 were received      3303
in evidence

Government Exhibit 4208 was received in            3305
evidence

Government Exhibit 4233 received in evidence       3310

Government Exhibits 4227, 4234 and 4235            3313
received in evidence

Government Exhibit 4211 received in evidence       3315

Stip 40 and Government Exhibits 1311 through       3316
1318 received in evidence

Government Exhibit 4214 received in evidence       3319

Government Exhibits 4244, 4245 and 4246            3320
received in evidence

Kenner Exhibit 97 received in evidence             3322

Kenner Exhibit 98 received in evidence             3323

Defendant's Exhibit C-198 received in              3335
evidence

1

**$**

**$1,341,046.86** [1] - 3292:7
**$10** [1] - 3154:10
**$140,000** [1] - 3325:1
**$250,000** [1] - 3134:1
**$262,000** [1] - 3295:12
**$265,000** [1] - 3221:21
**$290,000** [1] - 3324:5
**$310,000** [1] - 3318:1
**$363,000** [1] - 3295:20
**$370,000** [2] - 3311:12, 3333:2
**$371,667.50** [1] - 3312:15
**$4,065** [1] - 3305:24, 3306:9, 3306:17, 3307:14, 3307:19
**$400,000** [8] - 3209:25, 3314:18, 3314:22, 3316:1, 3316:8, 3317:14, 3317:23, 3328:22
**$415,000** [3] - 3299:17, 3299:21, 3302:6
**$425,000** [2] - 3295:11, 3297:6
**$430,000** [1] - 3241:7
**$50** [1] - 3245:1
**$50,000** [6] - 3296:8, 3296:13, 3300:16, 3300:20, 3312:2, 3313:15
**$500,000** [5] - 3136:17, 3228:7, 3228:22, 3229:6, 3265:20
**$512,379.37** [1] - 3273:19
**$525,000** [2] - 3295:7, 3296:22
**$650,000** [2] - 3324:2, 3324:6
**$708,602.08** [1] - 3274:9
**$750,000** [1] - 3276:14
**$800,000** [1] - 3203:11

**'**

**'09** [6] - 3305:18, 3305:19, 3305:20, 3305:21

**1**

**1** [15] - 3142:9, 3214:4, 3225:3, 3225:14, 3226:11, 3236:9, 3244:8, 3250:23, 3289:15, 3294:13, 3315:13, 3315:25, 3323:5, 3323:6, 3323:11
**1.1** [1] - 3292:2
**1.2** [1] - 3298:1
**10** [51] - 3154:11, 3154:17,

3211:16, 3245:7, 3268:5, 3268:6, 3269:17, 3270:22, 3272:12, 3274:7, 3275:16, 3276:10, 3278:4, 3278:5, 3278:15, 3279:4, 3286:6, 3286:8, 3289:22, 3292:12, 3295:17, 3295:21, 3296:22, 3301:2, 3302:12, 3302:25, 3304:18, 3316:1, 3316:3, 3316:12, 3316:13, 3317:1, 3318:12, 3318:20, 3318:21, 3319:8, 3319:11, 3320:1, 3324:19, 3328:11, 3328:12, 3328:13, 3328:16, 3328:21, 3329:3, 3332:2, 3332:3, 3332:7, 3332:20, 3341:9
**100** [3] - 3130:15, 3131:20, 3190:23
**100,000** [3] - 3208:19, 3295:12, 3297:6
**100-A** [3] - 3189:23, 3196:14, 3198:23
**104** [7] - 3152:22, 3154:8, 3154:13, 3154:16, 3156:14, 3207:16
**104-A** [1] - 3207:13
**104-B** [1] - 3207:14
**1102** [4] - 3306:2, 3306:15, 3307:9, 3307:12
**1105** [1] - 3306:23
**11501** [1] - 3131:3
**11572** [1] - 3131:7
**11722** [2] - 3130:15, 3131:21
**11749** [1] - 3130:22
**12** [1] - 3306:15
**12th** [1] - 3198:9
**13** [1] - 3284:4
**1311** [4] - 3316:16, 3316:22, 3316:23, 3344:11
**1317** [2] - 3317:14, 3317:20
**1318** [5] - 3316:17, 3316:22, 3316:24, 3316:25, 3344:12
**13:33** [1] - 3166:11
**14** [4] - 3268:20, 3284:25, 3293:25, 3294:21
**1418** [1] - 3294:9
**15** [5] - 3197:17, 3230:15, 3245:7, 3320:13, 3337:1
**16** [6] - 3160:22, 3161:4, 3162:5, 3166:6, 3166:11, 3307:9
**1601** [1] - 3130:21
**164** [2] - 3177:11, 3177:12
**165** [2] - 3177:11, 3177:13
**16th** [1] - 3179:25
**175** [1] - 3196:3
**175,000** [1] - 3196:1

**18** [3] - 3156:14, 3169:19, 3170:15
**183** [5] - 3139:22, 3140:3, 3140:15, 3140:16, 3343:9
**186** [1] - 3134:21
**190** [2] - 3182:23, 3216:13
**190-T** [5] - 3202:15, 3202:23, 3202:24, 3202:25, 3343:14
**191** [10] - 3183:17, 3263:2, 3263:13, 3263:15, 3263:16, 3263:18, 3263:21, 3343:16
**191-3** [1] - 3264:17
**192** [9] - 3263:2, 3264:18, 3264:19, 3264:21, 3343:17
**194** [4] - 3164:24, 3166:3, 3169:19, 3343:12
**1976** [1] - 3293:9
**1:10** [1] - 3245:5
**1:33** [1] - 3166:12
**1st** [8] - 3286:15, 3287:9, 3297:13, 3307:3, 3311:4, 3312:16, 3317:7, 3317:8

**2**

**2** [11] - 3143:4, 3170:2, 3170:3, 3214:4, 3214:10, 3244:11, 3315:16, 3317:25, 3323:5, 3323:6, 3330:17
**200** [1] - 3196:3
**200,000** [2] - 3136:17, 3195:24
**2003** [1] - 3163:14
**2004** [1] - 3163:14
**2005** [2] - 3163:15, 3268:20
**2006** [4] - 3159:5, 3163:15, 3231:23, 3339:15
**2008** [2] - 3339:15, 3340:9
**2009** [61] - 3135:22, 3140:23, 3146:13, 3147:6, 3158:11, 3158:12, 3158:21, 3159:6, 3159:7, 3160:22, 3161:4, 3161:14, 3162:22, 3164:9, 3166:7, 3166:11, 3168:22, 3169:19, 3170:15, 3182:14, 3182:21, 3182:25, 3214:25, 3215:3, 3219:1, 3238:19, 3238:23, 3244:23, 3271:16, 3272:1, 3273:12, 3273:13, 3273:14, 3273:24, 3274:7, 3274:8, 3274:20, 3283:11, 3283:15, 3284:4, 3284:25, 3286:15, 3287:10, 3293:10, 3294:15,

3301:18, 3302:6, 3303:21, 3305:14, 3306:4, 3306:8, 3306:16, 3306:24, 3307:9, 3307:17, 3307:18, 3313:13, 3326:25, 3332:11, 3334:23
**2010** [8] - 3140:25, 3146:6, 3179:25, 3183:2, 3223:2, 3244:23, 3311:1, 3312:8
**2011** [7] - 3139:24, 3140:21, 3141:6, 3142:2, 3213:12, 3314:4, 3320:13
**2012** [13] - 3190:24, 3191:3, 3191:8, 3193:19, 3193:23, 3194:18, 3196:24, 3197:6, 3316:2, 3317:2, 3317:21, 3328:8, 3328:9
**2014** [10] - 3134:15, 3135:2, 3135:8, 3199:3, 3199:11, 3232:25, 3233:23, 3234:16, 3234:19, 3242:6
**2015** [2] - 3130:9, 3341:9
**209,000** [1] - 3324:3
**21** [1] - 3231:23
**22** [2] - 3307:12, 3320:17
**23** [1] - 3238:19
**24** [1] - 3316:1
**2412** [2] - 3289:8, 3343:6
**24th** [4] - 3317:5, 3317:19, 3317:22, 3318:7
**25** [2] - 3283:11, 3283:15
**26** [2] - 3131:7, 3162:22
**27** [1] - 3147:6
**29** [1] - 3294:15
**2:10** [1] - 3245:11

**3**

**3** [12] - 3153:1, 3154:1, 3154:3, 3154:6, 3155:24, 3187:21, 3207:17, 3208:17, 3290:4, 3303:21, 3315:16, 3320:5
**30** [1] - 3161:8
**300** [1] - 3131:3
**31** [1] - 3146:24
**3133** [2] - 3342:3, 3342:4
**3140** [1] - 3343:9
**3160** [1] - 3343:10
**3162** [1] - 3343:11
**3166** [1] - 3343:12
**32,500** [1] - 3212:9
**3202** [1] - 3343:14
**3205** [1] - 3342:6
**3226** [1] - 3342:8
**3242** [1] - 3342:10
**3262** [1] - 3342:12

2

**3263** [1] - 3343:16
**3264** [1] - 3343:17
**3266** [2] - 3342:14, 3342:15
**3269** [1] - 3342:25
**3270** [1] - 3343:1
**3273** [1] - 3343:2
**3280** [1] - 3343:3
**3281** [1] - 3342:17
**3283** [1] - 3343:4
**3289** [1] - 3343:6
**3294** [1] - 3343:20
**3297** [1] - 3343:22
**3299** [1] - 3343:24
**3301** [1] - 3344:1
**3303** [1] - 3344:3
**3305** [1] - 3344:5
**3310** [1] - 3344:7
**3313** [1] - 3344:8
**3315** [1] - 3344:10
**3316** [1] - 3344:11
**3319** [1] - 3344:13
**3320** [1] - 3344:14
**3321** [1] - 3342:19
**3322** [1] - 3344:16
**3323** [1] - 3344:17
**3327** [1] - 3342:21
**3335** [1] - 3344:18
**363,000** [1] - 3301:1
**368** [1] - 3312:16
**37-1** [1] - 3178:17
**38,000** [1] - 3212:9
**39** [1] - 3226:18

## 4

**4** [10] - 3139:24, 3140:21, 3142:2, 3181:2, 3207:17, 3208:17, 3289:15, 3301:18, 3302:6, 3314:24
**4,065** [1] - 3307:10
**40** [4] - 3316:16, 3316:21, 3316:23, 3344:11
**400,000** [4] - 3208:1, 3208:9, 3317:5, 3317:15
**408** [2] - 3194:12, 3197:3
**414** [4] - 3285:1, 3285:4, 3285:8, 3286:4
**4142** [1] - 3295:3
**4203** [4] - 3301:10, 3301:15, 3301:16, 3344:1
**4204** [6] - 3280:22, 3281:10, 3281:17, 3283:3, 3287:8, 3343:5
**4206** [5] - 3303:4, 3303:5, 3303:14, 3303:19, 3344:3
**4207** [7] - 3296:19, 3296:21, 3297:15, 3297:20, 3297:21, 3297:23, 3343:22

**4208** [6] - 3304:13, 3305:5, 3305:9, 3305:10, 3305:13, 3344:5
**4209** [6] - 3272:5, 3272:8, 3272:11, 3273:3, 3273:8, 3273:10, 3274:6, 3323:3, 3343:2
**4210** [10] - 3272:5, 3272:8, 3272:10, 3272:11, 3273:4, 3273:8, 3273:20, 3273:21, 3273:24, 3343:2
**4211** [6] - 3314:20, 3315:6, 3315:10, 3315:11, 3327:25, 3344:10
**4212** [6] - 3288:5, 3289:2, 3289:7, 3292:25, 3297:4, 3326:16
**4214** [9] - 3318:13, 3318:16, 3318:17, 3319:1, 3319:5, 3319:6, 3327:23, 3344:13
**4218** [5] - 3293:17, 3294:6, 3294:10, 3294:20, 3343:20
**4221** [7] - 3296:19, 3297:2, 3297:9, 3297:15, 3297:20, 3297:21, 3343:22
**4222** [5] - 3298:22, 3299:8, 3299:12, 3299:13, 3343:24
**4227** [6] - 3311:21, 3311:22, 3312:20, 3313:2, 3313:4, 3344:8
**4231** [5] - 3279:16, 3279:22, 3280:10, 3280:18, 3280:19, 3343:3
**4233** [5] - 3310:12, 3310:19, 3310:24, 3332:24, 3344:7
**4234** [5] - 3311:21, 3312:5, 3312:20, 3313:2, 3344:8
**4235** [9] - 3311:21, 3312:10, 3312:12, 3312:21, 3312:22, 3313:2, 3313:19, 3313:20, 3344:8
**4237** [6] - 3268:10, 3269:5, 3269:9, 3269:10, 3323:15, 3342:25
**4238** [6] - 3280:22, 3281:10, 3281:17, 3283:2, 3286:14, 3343:4
**4239** [6] - 3280:22, 3281:8, 3281:17, 3283:2, 3284:3, 3343:4
**4240** [6] - 3280:22, 3281:10, 3281:17, 3283:2, 3284:23, 3343:4
**4241** [7] - 3280:22, 3281:5, 3281:16, 3283:2, 3283:13, 3283:14, 3343:4
**4244** [6] - 3318:13, 3319:12, 3319:20, 3320:2,

3320:6, 3344:14
**4245** [6] - 3318:13, 3319:12, 3319:20, 3320:2, 3320:6, 3344:14
**4246** [5] - 3319:25, 3320:2, 3320:6, 3320:8, 3344:14
**44** [2] - 3181:20, 3306:23
**48** [1] - 3191:1
**4:00** [1] - 3259:21

## 5

**5** [6] - 3181:2, 3290:21, 3290:23, 3292:13, 3293:10, 3295:4
**50** [1] - 3300:16
**500,000** [5] - 3163:13, 3216:3, 3227:23, 3228:3, 3268:4
**51** [4] - 3164:24, 3166:3, 3170:15, 3343:12
**512,000** [1] - 3274:3
**52** [5] - 3162:14, 3162:18, 3162:19, 3162:21, 3343:11
**53** [5] - 3164:23, 3166:3, 3166:6, 3343:12
**54** [7] - 3159:13, 3159:18, 3160:4, 3160:18, 3161:3, 3343:10
**55** [6] - 3159:13, 3159:18, 3160:4, 3160:12, 3162:5, 3343:10
**56** [7] - 3159:13, 3159:18, 3160:4, 3160:12, 3161:14, 3343:10

## 6

**6** [9] - 3161:14, 3211:4, 3305:20, 3306:4, 3306:8, 3306:16, 3306:24, 3317:22
**631** [1] - 3131:21
**6th** [2] - 3305:18, 3305:19, 3307:13

## 7

**7** [6] - 3243:5, 3243:21, 3308:5, 3308:9, 3308:18, 3308:24
**700,000** [2] - 3268:4, 3268:7
**712-6101** [1] - 3131:21
**7202** [5] - 3269:19, 3270:7, 3270:13, 3270:21, 3343:1

## 8

**8** [8] - 3154:8, 3288:12, 3288:14, 3288:17, 3307:9, 3307:17, 3307:18
**88** [3] - 3205:6, 3205:11, 3226:19
**89-A** [1] - 3188:19
**89-B** [1] - 3187:3
**8th** [2] - 3305:19, 3311:1

## 9

**9** [6] - 3130:9, 3134:15, 3135:2, 3199:3, 3205:24, 3306:2
**90** [1] - 3174:19
**93** [2] - 3226:23, 3231:17
**947** [6] - 3303:4, 3303:10, 3303:14, 3303:19, 3304:2, 3344:3
**948** [7] - 3269:19, 3269:22, 3270:8, 3270:13, 3270:15, 3310:6, 3343:1
**96** [1] - 3238:11
**97** [4] - 3321:23, 3322:9, 3322:13, 3344:16
**98** [6] - 3322:15, 3322:16, 3323:1, 3323:10, 3324:14, 3344:17
**9:30** [2] - 3130:9, 3257:9
**9th** [2] - 3305:20, 3307:23

## A

**a.m** [1] - 3130:9
**able** [15] - 3144:24, 3145:18, 3172:22, 3177:8, 3188:7, 3227:5, 3227:10, 3234:3, 3235:15, 3254:24, 3284:18, 3296:11, 3324:18, 3337:24, 3340:20
**absent** [1] - 3250:10
**absolutely** [14] - 3151:14, 3178:4, 3209:2, 3211:13, 3211:21, 3212:16, 3212:23, 3222:13, 3229:15, 3229:17, 3230:5, 3237:14, 3243:2, 3261:24
**absorbed** [1] - 3227:13
**abt** [1] - 3224:2
**accelerated** [1] - 3289:23
**acceleration** [1] - 3289:18
**accepting** [1] - 3191:12
**accommodate** [1] - 3336:20
**accomplish** [1] - 3167:6
**according** [2] - 3331:5,

3

3331:6

**account** [20] - 3145:12, 3181:8, 3181:12, 3250:3, 3250:4, 3251:3, 3253:16, 3254:13, 3258:15, 3258:17, 3258:19, 3258:21, 3258:25, 3259:1, 3259:8, 3295:12, 3306:5, 3307:14, 3339:16, 3340:17

**accounting** [4] - 3208:7, 3249:18, 3282:14, 3337:11

**accurate** [21] - 3208:15, 3269:2, 3269:25, 3272:13, 3280:7, 3281:1, 3281:13, 3288:22, 3294:2, 3297:12, 3299:4, 3303:7, 3303:10, 3303:22, 3304:19, 3310:16, 3315:3, 3318:23, 3319:20, 3322:3, 3322:21

**accurately** [1] - 3250:9

**accusation** [2] - 3182:4, 3182:17

**accusations** [7] - 3156:6, 3156:7, 3174:12, 3174:13, 3183:7, 3193:25, 3207:10

**accusing** [3] - 3155:22, 3181:6, 3181:18

**achieve** [1] - 3295:21

**Ackerson** [1] - 3311:24

**acknowledge** [3] - 3231:18, 3231:23, 3289:20

**acknowledged** [1] - 3239:23

**acknowledgment** [1] - 3289:18

**acquire** [8] - 3137:12, 3137:24, 3156:18, 3295:16, 3296:2, 3311:18, 3332:3, 3332:7

**acquired** [2] - 3137:9, 3293:4

**acquiring** [6] - 3139:8, 3274:17, 3274:25, 3275:16, 3276:13, 3276:17

**acquisition** [1] - 3284:13

**acreage** [2] - 3225:16, 3225:17

**acted** [1] - 3227:18

**acting** [5] - 3192:15, 3195:7, 3196:9, 3196:16, 3197:11

**Acting** [1] - 3130:14

**action** [4] - 3138:6, 3161:18, 3248:8, 3286:15

**actions** [2] - 3143:22, 3144:9

**active** [2] - 3186:14, 3189:14

**activities** [5] - 3141:11, 3147:24, 3151:4, 3173:14,

3182:6

**activity** [1] - 3202:8

**actual** [5] - 3272:2, 3272:17, 3288:3, 3289:17, 3293:13

**addition** [6] - 3149:4, 3153:25, 3175:22, 3176:12, 3194:25, 3226:7

**additional** [5] - 3164:5, 3188:7, 3213:4, 3249:1, 3285:14

**address** [12] - 3142:3, 3147:2, 3170:5, 3180:25, 3181:23, 3184:4, 3254:24, 3258:1, 3296:8, 3308:13, 3308:14, 3308:21

**addressed** [1] - 3277:4

**addresses** [2] - 3147:7, 3147:9

**adds** [1] - 3195:9

**adequate** [1] - 3256:6

**adjourned** [1] - 3341:9

**administrative** [1] - 3249:19

**admissible** [3] - 3132:17, 3335:12, 3335:13

**admission** [2] - 3202:20, 3319:25

**admit** [5] - 3196:19, 3202:11, 3236:23, 3312:20, 3323:4

**admitted** [34] - 3140:15, 3160:3, 3162:18, 3165:15, 3166:2, 3168:15, 3186:2, 3202:24, 3263:15, 3263:18, 3264:19, 3264:20, 3269:9, 3270:12, 3273:7, 3280:18, 3283:1, 3289:7, 3294:9, 3297:20, 3299:12, 3301:15, 3303:18, 3305:9, 3310:23, 3313:1, 3315:10, 3316:22, 3319:5, 3320:5, 3322:12, 3323:9, 3323:23, 3335:8

**admittedly** [1] - 3323:14

**ads** [2] - 3334:4, 3334:7

**adverse** [1] - 3246:8

**advertising** [1] - 3333:21

**advise** [1] - 3284:19

**Aero** [6] - 3295:9, 3299:1, 3300:1, 3301:7, 3301:19, 3302:3

**Aero-Space** [6] - 3295:9, 3299:1, 3300:1, 3301:7, 3301:19, 3302:3

**aerospace** [1] - 3312:6

**Aerospace** [5] - 3287:20, 3287:21, 3287:24, 3311:25, 3313:16

**affiliate** [1] - 3311:4

**affixed** [1] - 3231:11

**afternoon** [2] - 3166:12, 3267:3

**afterwards** [1] - 3154:7

**agent** [8] - 3199:21, 3233:20, 3234:20, 3244:12, 3287:16, 3287:20, 3337:6

**Agent** [3] - 3234:7, 3234:14, 3337:8

**agents** [1] - 3199:24

**ago** [9] - 3139:6, 3215:13, 3227:8, 3227:11, 3227:21, 3323:14, 3327:19, 3327:22, 3328:5

**agree** [18] - 3137:11, 3142:13, 3149:10, 3149:16, 3164:11, 3170:19, 3171:1, 3231:19, 3233:22, 3239:18, 3240:11, 3251:1, 3263:4, 3279:2, 3321:15, 3322:5, 3322:16, 3325:13

**agreed** [12] - 3164:19, 3223:17, 3278:25, 3279:4, 3290:11, 3290:12, 3293:14, 3295:16, 3296:9, 3296:16, 3314:14, 3334:22

**agreeing** [3] - 3164:14, 3165:2, 3293:6

**agreement** [77] - 3205:14, 3268:20, 3269:3, 3271:2, 3277:5, 3278:22, 3279:1, 3279:6, 3286:19, 3288:3, 3288:9, 3288:10, 3288:15, 3288:18, 3288:23, 3289:11, 3289:20, 3290:6, 3290:15, 3290:16, 3292:6, 3292:10, 3292:14, 3293:11, 3293:21, 3293:23, 3294:3, 3294:12, 3294:14, 3294:17, 3294:22, 3295:3, 3295:23, 3295:25, 3296:9, 3296:14, 3296:21, 3296:23, 3297:3, 3297:4, 3297:24, 3298:13, 3300:25, 3310:15, 3310:17, 3310:25, 3311:1, 3313:24, 3314:22, 3315:4, 3315:12, 3315:13, 3315:18, 3315:24, 3316:10, 3318:21, 3320:1, 3320:8, 3320:11, 3320:14, 3326:14, 3326:15, 3326:17, 3326:21, 3327:21, 3327:25, 3328:4, 3328:14, 3330:6, 3330:14, 3330:21, 3331:5, 3331:6, 3331:15, 3332:25, 3333:10, 3334:7

**agreements** [4] - 3289:22, 3296:17, 3297:12, 3314:12

**ahead** [10] - 3133:17, 3135:11, 3138:2, 3150:20, 3168:24, 3187:9, 3219:7, 3242:14, 3310:3, 3327:7

**ahold** [1] - 3313:17

**aid** [2] - 3263:18, 3264:20

**aids** [1] - 3263:8

**Air** [27] - 3148:3, 3148:7, 3148:9, 3148:24, 3149:6, 3149:14, 3150:24, 3211:11, 3267:23, 3268:1, 3268:15, 3268:18, 3288:13, 3289:14, 3290:24, 3293:5, 3295:18, 3296:11, 3299:21, 3324:13, 3326:10, 3330:6, 3330:15, 3330:21, 3331:3, 3331:8, 3331:14

**air** [13] - 3137:17, 3137:20, 3211:11, 3223:6, 3240:20, 3240:23, 3241:3, 3241:6, 3241:12, 3241:17, 3324:5, 3324:10, 3324:11

**Air's** [1] - 3301:4

**aircraft** [59] - 3268:5, 3269:17, 3274:17, 3274:25, 3275:1, 3275:19, 3275:21, 3275:25, 3276:8, 3276:14, 3276:19, 3277:6, 3277:12, 3277:14, 3277:17, 3277:21, 3277:24, 3277:25, 3278:3, 3278:25, 3284:15, 3285:14, 3288:20, 3292:8, 3292:11, 3296:6, 3296:7, 3296:21, 3297:7, 3298:3, 3298:6, 3298:7, 3298:13, 3302:23, 3303:1, 3310:5, 3311:2, 3311:3, 3311:5, 3311:18, 3311:19, 3313:21, 3314:1, 3314:2, 3314:9, 3314:19, 3315:13, 3316:4, 3318:19, 3319:11, 3319:17, 3328:18, 3328:21, 3329:23, 3330:8, 3332:5, 3333:13, 3333:15, 3334:8

**aircrafts** [1] - 3292:11

**airplane** [17] - 3269:15, 3271:23, 3276:9, 3276:23, 3276:24, 3277:9, 3279:10, 3279:11, 3285:6, 3285:23, 3296:2, 3296:3, 3318:20, 3328:12, 3329:6, 3329:17, 3333:25

**airplanes** [10] - 3148:4, 3148:14, 3148:17, 3148:22, 3149:14,

4

3151:17, 3269:13, 3271:20, 3285:4, 3337:13
**airport** [1] - 3276:4
**align** [1] - 3194:15
**aligned** [6] - 3146:1, 3146:10, 3191:14, 3191:21, 3191:25, 3192:7
**ALL** [1] - 3133:2
**allegation** [3] - 3146:11, 3157:5, 3209:4
**allegations** [8] - 3156:3, 3158:18, 3161:11, 3174:6, 3209:10, 3209:14, 3220:7, 3235:15
**alleged** [4] - 3154:9, 3163:25, 3186:5, 3201:17
**allegedly** [1] - 3189:2
**alleging** [3] - 3153:25, 3195:7, 3259:1
**alliance** [1] - 3194:23
**allow** [8] - 3135:11, 3156:23, 3177:24, 3186:24, 3187:16, 3194:20, 3219:6, 3255:14
**allowed** [1] - 3186:3
**alluded** [2] - 3170:17, 3300:14
**almost** [2] - 3167:10, 3302:13
**amended** [4] - 3160:18, 3161:6, 3161:24, 3319:25
**AMERICA** [1] - 3130:3
**amount** [12] - 3203:12, 3219:13, 3273:16, 3274:2, 3292:4, 3302:6, 3306:9, 3306:21, 3307:19, 3314:16, 3314:17, 3318:1
**amounts** [5] - 3242:25, 3251:1, 3272:17, 3272:22, 3305:22
**analysis** [2] - 3254:9, 3322:19
**analyst** [1] - 3337:11
**ANDREW** [1] - 3131:6
**Ann** [1] - 3131:20
**answer** [48] - 3135:12, 3138:2, 3151:7, 3156:23, 3157:19, 3166:17, 3172:5, 3172:19, 3172:23, 3182:16, 3189:24, 3196:1, 3196:20, 3199:14, 3200:3, 3200:7, 3200:10, 3200:21, 3204:20, 3209:18, 3213:18, 3225:21, 3227:5, 3227:10, 3229:2, 3230:22, 3233:14, 3233:17, 3233:24, 3234:3, 3234:19, 3234:22, 3235:21, 3235:23, 3238:23, 3241:1, 3242:9, 3242:19, 3242:23,

3243:17, 3244:13, 3254:23, 3273:18, 3280:2, 3292:22, 3324:21, 3329:20, 3332:21
**Answer** [3] - 3218:17, 3233:12, 3233:18
**answered** [12] - 3138:1, 3151:6, 3157:17, 3173:3, 3182:12, 3183:10, 3215:13, 3220:20, 3222:21, 3233:2, 3243:20, 3329:19
**answers** [4] - 3166:23, 3221:17, 3247:23, 3248:9
**anyway** [1] - 3298:10
**apartment** [2] - 3170:3, 3170:4
**apologize** [10] - 3143:14, 3154:21, 3164:24, 3178:13, 3216:13, 3245:8, 3284:8, 3292:17, 3292:21, 3339:9
**appear** [6] - 3205:25, 3257:6, 3273:13, 3313:6, 3322:2, 3334:15
**APPEARANCES** [1] - 3130:13
**appearances** [1] - 3132:3
**appeared** [2] - 3199:2, 3232:22
**apples** [1] - 3324:22
**application** [4] - 3156:17, 3246:5, 3257:5, 3262:5
**applied** [1] - 3307:23
**applies** [2] - 3253:20, 3263:20
**apply** [3] - 3166:16, 3166:23, 3221:17
**appreciate** [2] - 3158:25, 3252:4
**apprised** [2] - 3150:3, 3151:3
**approach** [4] - 3141:10, 3178:18, 3182:1, 3243:23
**approached** [1] - 3214:21
**approved** [3] - 3165:12, 3166:12, 3169:3
**approximate** [1] - 3268:4
**April** [1] - 3284:25
**apt** [1] - 3224:2
**arbiters** [1] - 3171:14
**arbitration** [5] - 3171:7, 3171:12, 3171:23, 3218:24, 3252:24
**area** [1] - 3311:25
**argue** [1] - 3183:13
**arguing** [1] - 3247:9
**argument** [5] - 3246:15, 3247:19, 3248:20, 3249:15, 3256:21

**arguments** [1] - 3193:24
**Arizona** [6] - 3200:12, 3293:9, 3293:12, 3295:11, 3295:16, 3337:8
**arrangement** [4] - 3267:15, 3278:24, 3293:12, 3296:15
**arrangements** [4] - 3271:11, 3271:20, 3274:22, 3297:5
**arrived** [2] - 3185:1, 3185:18
**arriving** [2] - 3336:21, 3336:22
**ASAP** [1] - 3284:19
**aside** [2] - 3226:7, 3290:11
**aspect** [2] - 3179:21, 3334:25
**aspects** [3] - 3150:15, 3150:25, 3200:4
**asserted** [2] - 3247:12, 3250:1
**assessments** [1] - 3273:25
**assets** [5] - 3137:8, 3137:12, 3137:25, 3139:8, 3148:15, 3149:13
**assign** [1] - 3316:2
**assigned** [2] - 3267:14, 3329:3
**assignment** [6] - 3318:19, 3318:23, 3327:20, 3327:23, 3328:3, 3329:12
**assist** [3] - 3163:24, 3324:18, 3332:4, 3333:14
**Assistant** [1] - 3130:17
**assistant** [1] - 3280:5
**assisted** [1] - 3332:16
**assisting** [1] - 3332:22
**associate** [2] - 3134:5, 3175:18
**associated** [7] - 3144:7, 3148:11, 3158:16, 3228:17, 3234:21, 3241:2, 3249:8
**associates** [1] - 3157:5
**association** [4] - 3145:2, 3192:10, 3194:2, 3241:6
**assume** [3] - 3144:17, 3201:13, 3206:3, 3206:5, 3326:18, 3337:21
**attached** [3] - 3160:12, 3166:9, 3313:25
**attaches** [1] - 3191:1
**attachment** [1] - 3162:7
**attempt** [1] - 3212:15
**attempted** [1] - 3314:8
**attempting** [2] - 3190:13, 3190:14
**attended** [2] - 3184:13, 3184:18
**attending** [1] - 3184:9

**attention** [17] - 3134:23, 3156:13, 3166:10, 3177:12, 3179:20, 3202:16, 3242:10, 3262:22, 3297:25, 3305:13, 3306:3, 3307:1, 3314:20, 3316:25, 3317:8, 3317:13, 3340:25
**attest** [1] - 3339:12
**attorney** [6] - 3233:13, 3246:2, 3249:13, 3250:22, 3252:16, 3254:8
**Attorney** [2] - 3130:14, 3130:17
**Attorney's** [1] - 3234:21
**attorney's** [1] - 3194:11
**attorney-client** [2] - 3249:13, 3250:22
**attorney/client** [1] - 3255:5
**attorneys** [1] - 3326:18
**augment** [1] - 3285:12
**August** [4] - 3223:2, 3305:19, 3306:16, 3306:24
**authenticity** [1] - 3340:7
**author** [1] - 3214:8
**authorization** [2] - 3179:12, 3313:9
**authorize** [2] - 3229:12, 3230:18
**authorized** [3] - 3178:3, 3217:25, 3312:4
**authorizing** [2] - 3179:7, 3179:16
**availability** [2] - 3255:16, 3255:23
**available** [8] - 3225:2, 3255:18, 3255:24, 3255:25, 3256:1, 3256:3, 3256:5, 3284:15
**Avalon** [1] - 3211:11
**average** [1] - 3192:24
**aviation** [4] - 3311:8, 3311:14, 3312:15, 3333:4
**avoid** [1] - 3247:2
**aware** [23] - 3137:23, 3144:7, 3148:24, 3150:2, 3152:13, 3175:6, 3203:7, 3203:10, 3208:25, 3212:3, 3218:14, 3222:2, 3236:11, 3236:18, 3241:2, 3241:6, 3241:8, 3241:10, 3241:14, 3258:11, 3258:14, 3319:23, 3331:14
**awareness** [1] - 3241:5
**awful** [1] - 3145:9
**awhile** [1] - 3173:3
**AZ** [41] - 3149:20, 3151:9, 3151:16, 3175:1, 3175:3, 3175:7, 3175:19, 3176:20, 3177:1, 3177:7, 3177:19,

5

3177:20, 3179:4, 3179:17, 3279:5, 3293:15, 3293:21, 3294:3, 3294:12, 3296:25, 3297:5, 3297:10, 3298:16, 3300:9, 3304:9, 3304:17, 3306:1, 3306:12, 3306:13, 3306:17, 3306:20, 3306:25, 3307:10, 3307:14, 3307:25, 3314:23, 3315:16, 3315:17, 3317:21, 3327:21, 3328:20

# B

**B.E.M.I.D.J.I** [1] - 3311:8
**backed** [1] - 3180:12
**background** [1] - 3198:17
**backup** [1] - 3138:4
**bad** [2] - 3152:4, 3332:20
**badly** [1] - 3145:17
**Bahti** [1] - 3156:19
**baker** [7] - 3233:16, 3242:16, 3243:1, 3243:6, 3243:14, 3243:15, 3244:12
**Baker** [1] - 3242:25
**balance** [6] - 3268:4, 3268:6, 3274:8, 3279:12, 3295:17, 3296:6
**ballpark** [2] - 3268:7, 3295:20
**balls** [1] - 3195:18
**Bank** [7] - 3267:7, 3269:3, 3272:14, 3288:23, 3297:13, 3301:24, 3307:3
**bank** [56] - 3148:5, 3251:3, 3251:8, 3251:15, 3261:19, 3274:16, 3276:18, 3277:3, 3278:25, 3279:1, 3279:17, 3279:25, 3280:3, 3282:2, 3285:6, 3285:14, 3288:20, 3289:24, 3292:11, 3293:6, 3295:8, 3296:3, 3301:2, 3301:4, 3301:11, 3301:18, 3304:9, 3305:23, 3306:5, 3307:4, 3307:21, 3311:5, 3312:2, 3312:17, 3314:17, 3316:17, 3317:1, 3317:10, 3317:20, 3319:21, 3321:13, 3322:4, 3323:15, 3326:18, 3328:7, 3328:11, 3328:22, 3329:2, 3329:5, 3329:23, 3332:15, 3332:16, 3333:14, 3333:19, 3340:8
**bank's** [8] - 3272:18, 3272:23, 3294:3, 3304:23, 3310:17, 3313:22, 3315:4, 3322:21
**banking** [1] - 3250:17

**bankruptcy** [1] - 3211:12
**base** [1] - 3135:9
**based** [8] - 3214:16, 3233:23, 3245:8, 3246:23, 3255:16, 3322:2, 3322:5, 3322:19
**bases** [1] - 3257:23
**basic** [2] - 3167:24, 3194:9
**basis** [3] - 3156:7, 3234:10, 3249:11
**batting** [1] - 3192:24
**BB** [6] - 3226:11, 3239:21, 3240:2, 3240:4, 3240:6, 3240:17
**bears** [1] - 3322:16
**became** [3] - 3156:19, 3228:17, 3331:18
**become** [7] - 3144:24, 3145:4, 3177:7, 3177:21, 3177:24, 3241:6, 3241:10
**becoming** [2] - 3156:16, 3158:6
**BEFORE** [1] - 3130:11
**began** [1] - 3283:17
**begin** [1] - 3245:15
**beginning** [2] - 3142:21, 3323:13
**begins** [2] - 3214:1, 3236:6
**behalf** [9] - 3155:14, 3192:9, 3194:4, 3195:7, 3196:9, 3196:16, 3197:11, 3313:22
**behind** [4] - 3150:1, 3150:3, 3150:18, 3311:13
**belabor** [1] - 3255:8
**belief** [2] - 3193:3, 3193:4
**belonging** [1] - 3181:8
**below** [2] - 3166:20, 3232:6
**Bemidji** [3] - 3311:14, 3312:14, 3333:3
**Bend** [2] - 3267:5, 3307:4
**beneficiaries** [1] - 3143:12
**beneficiary** [4] - 3302:2, 3302:13, 3306:25, 3307:3
**benefit** [3] - 3167:21, 3212:20, 3212:22
**benefiting** [1] - 3144:8
**BERARD** [2] - 3133:12, 3342:3
**berard** [1] - 3153:16
**Berard** [62] - 3132:10, 3133:6, 3133:8, 3133:22, 3135:12, 3138:12, 3138:17, 3140:5, 3140:18, 3142:11, 3147:22, 3150:22, 3151:18, 3152:1, 3152:21, 3154:16, 3156:8, 3161:5, 3161:10, 3161:15, 3163:20, 3165:7, 3166:6,

3166:14, 3167:8, 3169:2, 3170:19, 3173:6, 3177:18, 3178:14, 3181:10, 3187:14, 3188:10, 3188:25, 3190:9, 3192:16, 3193:13, 3195:11, 3196:4, 3196:8, 3198:11, 3199:1, 3204:13, 3205:3, 3226:12, 3226:22, 3229:10, 3232:16, 3232:19, 3233:13, 3240:6, 3242:5, 3242:15, 3243:15, 3261:23, 3262:22, 3264:4, 3264:9, 3264:25, 3266:3, 3336:4
**Berard's** [4] - 3191:12, 3195:17, 3195:19, 3196:1
**best** [8] - 3140:18, 3167:14, 3238:5, 3270:2, 3273:18, 3314:16, 3322:22, 3322:23
**better** [3] - 3186:19, 3259:17, 3332:9
**Better** [2] - 3199:6, 3199:9
**between** [21] - 3165:1, 3165:17, 3194:23, 3215:3, 3233:7, 3233:9, 3233:20, 3234:6, 3234:9, 3234:13, 3234:15, 3239:19, 3279:9, 3282:17, 3295:15, 3301:3, 3305:13, 3311:1, 3319:21, 3326:18, 3334:16
**beyond** [5] - 3149:12, 3166:25, 3221:18, 3230:16, 3242:11
**BIANCO** [1] - 3130:11
**big** [2] - 3193:6, 3195:18
**bigger** [3] - 3213:5, 3215:8, 3247:24
**bill** [2] - 3145:14, 3313:21
**billing** [1] - 3249:17
**bit** [4] - 3143:20, 3236:24, 3284:12, 3337:1
**black** [1] - 3254:10
**Blake** [1] - 3337:12
**blanket** [1] - 3258:16
**BNK** [2] - 3321:16, 3322:17
**BNK-SOURCE** [2] - 3321:16, 3322:17
**board** [1] - 3180:16
**Bob** [9] - 3185:6, 3189:6, 3200:23, 3200:25, 3201:1, 3215:17, 3215:20, 3216:2
**BOK** [1] - 3302:2
**book** [2] - 3276:23, 3278:5
**books** [13] - 3277:7, 3277:9, 3277:11, 3277:18, 3277:22, 3278:4, 3278:10, 3278:12, 3278:14, 3282:10, 3282:21, 3283:22

**borrowed** [2] - 3167:16, 3209:1
**borrower** [5] - 3267:15, 3267:18, 3288:13, 3290:24, 3293:5
**borrowers** [2] - 3267:13, 3279:18
**bottom** [5] - 3162:6, 3213:24, 3287:17, 3300:11, 3313:5
**bought** [4] - 3139:17, 3180:5, 3209:11, 3213:3
**brackets** [1] - 3142:19
**brand** [1] - 3302:22
**breach** [2] - 3248:5, 3248:6
**breaching** [1] - 3255:10
**break** [11] - 3150:9, 3150:13, 3176:24, 3190:4, 3190:8, 3245:10, 3252:5, 3260:2, 3308:3, 3335:16, 3340:23
**brevity** [1] - 3173:12
**brief** [4] - 3259:14, 3260:4, 3261:10, 3281:19
**briefing** [1] - 3257:20
**briefly** [2] - 3216:12, 3223:21
**bring** [9] - 3132:10, 3198:11, 3210:1, 3231:4, 3231:6, 3262:2, 3309:6, 3333:18, 3340:25
**bringing** [3] - 3136:16, 3232:23, 3287:5
**broader** [1] - 3253:16
**broken** [3] - 3167:6, 3167:14, 3338:13
**brought** [8] - 3153:10, 3171:7, 3173:16, 3174:23, 3193:13, 3199:3, 3255:15, 3271:7
**BRYAN** [2] - 3133:12, 3342:3
**Bryan** [7] - 3163:9, 3226:11, 3232:16, 3232:19, 3240:6, 3336:4
**bucks** [1] - 3228:22
**building** [3] - 3223:1, 3223:2
**bullet** [2] - 3170:11, 3222:10
**bunch** [8] - 3207:2, 3209:22, 3222:22, 3235:1, 3235:4, 3235:8, 3235:11, 3271:18
**burden** [1] - 3255:2
**business** [9] - 3231:4, 3231:7, 3261:14, 3261:16, 3272:19, 3272:23, 3304:23, 3338:24, 3340:5
**but..** [1] - 3328:23

6

**buy** [9] - 3143:10, 3179:25, 3186:24, 3209:6, 3212:3, 3212:15, 3214:11, 3221:22, 3277:5
**buyer** [6] - 3274:23, 3296:25, 3332:2, 3333:10, 3334:1, 3334:4
**buying** [1] - 3211:25
**buyout** [3] - 3136:22, 3137:3, 3143:5
**BY** [47] - 3130:16, 3130:22, 3131:4, 3133:21, 3139:14, 3140:17, 3150:21, 3151:24, 3152:3, 3152:6, 3154:20, 3156:11, 3157:1, 3159:3, 3160:5, 3162:4, 3162:20, 3165:16, 3166:5, 3169:1, 3205:2, 3211:1, 3226:21, 3242:4, 3262:21, 3264:3, 3264:24, 3267:2, 3269:11, 3270:14, 3273:9, 3280:20, 3281:22, 3283:4, 3289:9, 3310:4, 3324:4, 3327:10, 3342:5, 3342:7, 3342:9, 3342:11, 3342:13, 3342:16, 3342:18, 3342:20, 3342:22

## C

**C-100-A** [1] - 3132:13
**C-183** [1] - 3213:10
**C-193** [1] - 3236:3
**C-194** [1] - 3224:1
**C-196** [2] - 3243:3, 3243:21
**C-198** [5] - 3334:10, 3335:2, 3335:8, 3335:9, 3344:18
**C-51** [1] - 3223:22
**C-53** [3] - 3220:24, 3221:6, 3221:16
**CA** [1] - 3163:16
**cabin** [1] - 3337:12
**Cabo** [19] - 3136:17, 3153:23, 3156:21, 3163:11, 3163:14, 3201:1, 3203:20, 3206:15, 3206:21, 3206:24, 3215:20, 3217:10, 3217:22, 3218:1, 3218:4, 3218:16, 3228:17, 3244:18, 3244:25
**CALCAGNI** [1] - 3130:20
**calendar** [1] - 3277:15
**California** [2] - 3163:17, 3246:9
**cancel** [2] - 3290:12
**candidly** [2] - 3256:9, 3339:7

**candor** [1] - 3284:12
**cannot** [1] - 3150:4
**capacity** [2] - 3209:5, 3326:12
**capital** [1] - 3239:20
**caption** [1] - 3160:12
**car** [2] - 3211:20, 3261:12
**card** [5] - 3177:19, 3177:22, 3177:23, 3178:4, 3178:6
**care** [3] - 3300:10, 3308:19, 3318:2
**careful** [1] - 3253:14
**carefully** [1] - 3192:21
**carryover** [1] - 3337:10
**cars** [1] - 3211:25
**case** [31] - 3132:3, 3134:16, 3142:16, 3142:21, 3143:1, 3166:19, 3190:5, 3190:25, 3192:16, 3193:3, 3193:7, 3193:18, 3193:21, 3197:4, 3197:6, 3200:11, 3245:11, 3249:21, 3253:17, 3256:10, 3259:12, 3259:13, 3260:1, 3271:7, 3292:20, 3295:16, 3314:7, 3325:8, 3334:5, 3335:18
**cases** [7] - 3142:18, 3194:18, 3250:9, 3250:17, 3258:11, 3258:12
**cash** [2] - 3241:7, 3279:8
**cc** [3] - 3238:16, 3238:20, 3319:22
**cc'd** [1] - 3303:8
**cell** [2] - 3275:9, 3275:11
**Central** [3] - 3130:6, 3130:15, 3131:21
**Century** [1] - 3301:24
**certain** [5] - 3187:6, 3254:11, 3277:13, 3314:16, 3338:9
**certainly** [1] - 3143:16
**certificates** [1] - 3341:2
**certification** [1] - 3338:25
**certifications** [1] - 3261:15
**Cessna** [4] - 3285:1, 3285:4, 3285:8, 3286:4
**chain** [1] - 3340:24
**chambers** [2] - 3246:16, 3249:5
**chance** [4] - 3173:20, 3177:16, 3201:12, 3280:23
**chances** [1] - 3187:25
**change** [2] - 3274:3, 3303:2
**changed** [1] - 3302:21
**changing** [1] - 3303:24
**characterize** [2] - 3275:18, 3332:21

**characterized** [1] - 3234:11
**charged** [1] - 3254:2
**charges** [2] - 3193:22, 3197:3
**check** [4] - 3163:9, 3290:10, 3325:9, 3329:8
**checking** [2] - 3317:16, 3317:17
**Chipotle** [2] - 3197:25, 3198:1
**Chris** [2] - 3144:20, 3337:11
**chronologically** [1] - 3205:3
**Circuit** [1] - 3259:12
**circumstance** [1] - 3250:10
**circumstances** [1] - 3167:23
**cite** [4] - 3250:8, 3250:9, 3250:17, 3259:12
**City** [1] - 3246:3
**civil** [12] - 3155:7, 3190:25, 3191:3, 3193:17, 3193:20, 3193:23, 3194:13, 3194:17, 3196:25, 3197:1, 3197:6, 3222:17
**claim** [1] - 3183:8
**claimed** [2] - 3176:4, 3194:23
**claiming** [1] - 3249:13
**clarify** [1] - 3133:24
**clear** [11] - 3168:3, 3188:5, 3195:5, 3228:15, 3246:9, 3247:21, 3251:7, 3254:15, 3279:11, 3301:1, 3333:11
**clearly** [4] - 3200:13, 3251:1, 3253:17, 3253:19, 3254:15
**CLERK** [5] - 3132:1, 3132:23, 3261:3, 3262:16, 3266:17
**clerk** [1] - 3255:12
**client** [21] - 3140:10, 3193:15, 3193:25, 3195:16, 3231:9, 3247:1, 3249:13, 3249:18, 3250:22, 3254:3, 3254:5, 3254:9, 3254:11, 3255:3, 3255:10, 3256:9, 3256:16, 3256:17, 3256:18, 3258:14
**client's** [4] - 3193:4, 3248:6, 3254:2, 3337:21
**clients** [4] - 3231:5, 3231:6, 3251:6, 3252:17
**clients'** [1] - 3249:19
**clip** [3] - 3263:13, 3264:15, 3264:16
**clips** [1] - 3198:16
**clock** [1] - 3198:13
**close** [5] - 3203:15,

3211:4, 3221:13, 3278:3, 3295:10
**closely** [1] - 3156:20
**closing** [17] - 3287:25, 3288:1, 3298:19, 3299:1, 3299:4, 3299:15, 3300:3, 3300:5, 3300:7, 3301:5, 3302:9, 3302:24, 3303:21, 3312:5, 3312:13, 3317:11, 3339:19
**CMG** [1] - 3340:13
**coliseum** [1] - 3336:3
**collateral** [7] - 3167:17, 3267:17, 3270:18, 3270:23, 3271:10, 3286:7, 3292:9
**collect** [2] - 3144:21, 3279:18
**collecting** [1] - 3279:19
**collection** [1] - 3274:15
**collectively** [1] - 3315:17
**college** [1] - 3336:3
**combination** [1] - 3282:11
**comfortable** [2] - 3167:1, 3221:18
**coming** [10] - 3145:20, 3252:4, 3258:21, 3262:15, 3280:24, 3313:10, 3313:11, 3336:2, 3336:23, 3337:20
**commenced** [1] - 3326:1
**comment** [4] - 3135:8, 3155:23, 3202:7, 3322:6
**commercial** [5] - 3311:2, 3311:3, 3313:22, 3315:13, 3318:19
**commitment** [1] - 3284:14
**committed** [1] - 3229:12
**communicate** [1] - 3170:13
**communicating** [2] - 3141:5, 3190:25
**communication** [9] - 3150:19, 3199:21, 3199:24, 3250:8, 3250:11, 3252:12, 3253:7, 3258:9, 3303:8
**communications** [11] - 3155:18, 3164:25, 3165:17, 3179:24, 3189:18, 3251:5, 3256:8, 3258:5, 3281:2, 3281:14, 3282:5
**companies** [3] - 3225:4, 3261:17, 3312:18
**Company** [3] - 3205:15, 3293:22
**company** [35] - 3148:6, 3148:7, 3148:11, 3148:24, 3175:7, 3177:24, 3191:15, 3192:11, 3193:5, 3193:6,

3193:14, 3194:2, 3231:13, 3231:25, 3232:2, 3279:4, 3287:21, 3287:24, 3287:25, 3294:16, 3297:11, 3300:3, 3300:5, 3300:17, 3308:22, 3311:4, 3311:14, 3313:23, 3318:20, 3330:7, 3331:9, 3339:24, 3339:25, 3340:6
**company's** [1] - 3300:7
**compare** [3] - 3270:3, 3321:24, 3324:17
**comparison** [1] - 3322:2
**complaint** [31] - 3153:10, 3153:15, 3155:1, 3155:5, 3155:19, 3160:13, 3160:16, 3160:19, 3161:7, 3161:9, 3161:11, 3161:25, 3162:7, 3174:6, 3174:12, 3183:5, 3183:14, 3207:10, 3208:24, 3246:7, 3246:11, 3246:19, 3247:1, 3247:7, 3247:9, 3247:10, 3247:15, 3248:16, 3248:17, 3249:8
**complaints** [6] - 3157:8, 3157:11, 3157:14, 3157:24, 3160:21, 3210:2
**complete** [5] - 3145:6, 3154:24, 3169:18, 3296:14, 3339:7
**completed** [1] - 3287:23
**completion** [1] - 3335:24
**complex** [1] - 3285:19
**complicated** [2] - 3250:16, 3254:20
**complicated..** [1] - 3338:19
**comply** [1] - 3282:14
**components** [1] - 3279:8
**comprehended** [1] - 3196:1
**comprehensive** [1] - 3318:1
**computer** [3] - 3131:25, 3337:21, 3337:22
**concentrating** [1] - 3158:20
**concern** [5] - 3217:21, 3250:21, 3255:24, 3258:7, 3300:14
**concerned** [6] - 3255:10, 3255:15, 3275:20, 3296:5, 3329:23
**concerning** [3] - 3233:4, 3236:20, 3239:5
**concerns** [1] - 3167:12
**conclude** [1] - 3202:5
**concluded** [5] - 3159:4, 3251:16, 3263:23, 3264:8, 3264:23
**conclusion** [1] - 3325:11

**condition** [4] - 3275:20, 3275:22, 3276:1, 3276:10
**conditions** [2] - 3286:19, 3315:25
**conference** [3] - 3186:1, 3186:10, 3244:6
**conferring** [1] - 3242:24
**confers** [1] - 3204:11
**confident** [1] - 3192:24
**confidential** [2] - 3248:4, 3250:7
**confirm** [1] - 3163:10
**confirmation** [2] - 3278:17, 3298:8
**confusion** [1] - 3197:5
**connection** [10] - 3182:16, 3183:7, 3197:1, 3231:8, 3234:22, 3275:10, 3294:4, 3314:12, 3331:13, 3336:6
**consent** [3] - 3179:16, 3203:19, 3232:6
**considered** [2] - 3158:23, 3168:20
**consisted** [1] - 3274:13
**consolidated** [4] - 3160:18, 3160:21, 3161:7, 3162:6
**consolidation** [1] - 3153:6
**Constantine** [139] - 3131:4, 3131:8, 3135:24, 3137:21, 3138:18, 3141:3, 3141:11, 3142:7, 3145:22, 3146:1, 3146:6, 3146:11, 3146:15, 3146:19, 3147:6, 3149:11, 3151:3, 3157:23, 3162:24, 3165:1, 3165:9, 3165:10, 3165:18, 3166:11, 3168:5, 3168:16, 3168:17, 3169:2, 3169:6, 3169:13, 3169:20, 3170:2, 3170:7, 3170:16, 3170:17, 3171:5, 3173:13, 3173:17, 3173:21, 3174:7, 3174:23, 3175:2, 3179:9, 3180:6, 3180:20, 3181:6, 3181:18, 3182:5, 3182:13, 3182:17, 3182:25, 3185:22, 3186:23, 3187:15, 3188:15, 3189:1, 3189:8, 3189:18, 3190:24, 3191:3, 3191:21, 3192:1, 3192:9, 3192:14, 3193:13, 3193:21, 3194:3, 3194:17, 3196:24, 3211:9, 3211:20, 3212:6, 3212:13, 3213:15, 3220:14, 3221:6, 3221:10, 3222:16, 3223:8, 3224:9, 3236:19, 3252:11, 3253:8, 3258:9, 3267:21, 3275:6, 3275:8, 3278:9, 3278:19, 3281:3, 3281:8, 3281:10,

3282:18, 3283:6, 3283:23, 3283:24, 3284:4, 3284:20, 3284:25, 3285:9, 3286:14, 3286:20, 3287:9, 3288:25, 3293:24, 3294:25, 3296:15, 3296:24, 3297:1, 3297:9, 3298:6, 3303:8, 3303:24, 3304:5, 3312:4, 3313:7, 3314:8, 3319:21, 3320:19, 3326:23, 3327:13, 3327:16, 3331:12, 3331:13, 3331:17, 3331:23, 3332:10, 3332:12, 3333:9, 3333:21, 3334:3, 3334:11, 3334:16, 3335:11, 3338:23, 3339:15, 3339:24, 3340:9
**CONSTANTINE** [1] - 3130:7
**Constantine's** [6] - 3183:8, 3187:19, 3211:23, 3261:20, 3315:1, 3340:18
**construct** [1] - 3278:24
**consult** [1] - 3218:10
**contact** [2] - 3271:10, 3314:7
**contacting** [1] - 3173:17
**contacts** [2] - 3308:21, 3314:6
**contained** [2] - 3196:25, 3235:14, 3251:3
**contemporaneous** [1] - 3132:16
**contend** [1] - 3231:15
**content** [1] - 3227:4
**contesting** [1] - 3341:3
**continue** [1] - 3133:7
**continued** [4] - 3143:21, 3169:25, 3291:3, 3309:7
**Continued** [4] - 3210:3, 3245:18, 3251:17, 3253:21
**continuing** [1] - 3224:20
**contracts** [1] - 3316:5
**contribute** [1] - 3143:16, 3144:2, 3144:9, 3145:8, 3145:10, 3200:6, 3200:8, 3208:4, 3212:5, 3212:24
**contributed** [6] - 3143:25, 3145:3, 3196:7, 3220:5, 3220:10, 3298:7
**contributing** [1] - 3137:22
**contribution** [1] - 3230:17
**contributions** [2] - 3136:4, 3164:10
**contributors** [1] - 3139:19
**control** [3] - 3203:20, 3276:22, 3276:23
**controlled** [4] - 3148:25, 3149:1, 3181:12

**conversation** [18] - 3201:4, 3201:6, 3201:12, 3201:16, 3202:11, 3202:17, 3228:12, 3228:24, 3229:3, 3243:6, 3243:16, 3244:5, 3244:6, 3262:12, 3262:23, 3263:5, 3275:7, 3331:25
**conversations** [15] - 3134:11, 3135:23, 3136:11, 3144:16, 3145:22, 3146:15, 3155:17, 3157:4, 3228:20, 3243:13, 3261:6, 3262:25, 3274:12, 3274:13, 3283:5
**convey** [6] - 3255:14, 3257:9, 3316:3, 3316:12, 3328:11, 3328:13
**conveyed** [1] - 3328:14
**conveying** [1] - 3143:16
**convinced** [1] - 3220:4
**convoluted** [1] - 3285:18
**CONWAY** [1] - 3131:2
**cooperated** [1] - 3290:15
**cooperating** [1] - 3202:3
**cooperative** [1] - 3332:22
**copied** [1] - 3287:11
**copies** [11] - 3157:8, 3157:10, 3157:14, 3157:16, 3157:20, 3157:24, 3272:13, 3281:1, 3281:13, 3297:12, 3319:20
**copy** [23] - 3140:4, 3140:5, 3160:15, 3178:13, 3238:20, 3269:2, 3269:25, 3280:7, 3288:22, 3294:2, 3299:4, 3303:7, 3303:10, 3304:19, 3308:10, 3308:11, 3310:16, 3315:3, 3318:23, 3320:9, 3320:10, 3322:3, 3322:21
**copying** [1] - 3337:7
**corporate** [2] - 3241:8, 3308:14
**corporation** [1] - 3177:3
**correct** [169] - 3134:6, 3134:9, 3135:18, 3135:25, 3136:1, 3136:6, 3136:8, 3136:9, 3136:15, 3136:20, 3136:24, 3136:25, 3137:1, 3137:25, 3139:10, 3140:21, 3140:22, 3140:24, 3141:12, 3141:21, 3141:22, 3142:15, 3143:18, 3143:19, 3143:23, 3143:24, 3145:1, 3147:4, 3147:14, 3147:15, 3147:19, 3147:20, 3148:12, 3150:5, 3150:6, 3150:25, 3151:1, 3152:14,

**8**

3153:24, 3155:6, 3155:12, 3155:15, 3155:16, 3160:7, 3160:10, 3161:16, 3161:17, 3162:8, 3163:7, 3163:18, 3163:19, 3163:21, 3164:1, 3164:2, 3165:11, 3166:15, 3168:7, 3168:8, 3169:11, 3169:12, 3169:16, 3169:17, 3169:24, 3170:10, 3171:3, 3172:10, 3172:15, 3172:20, 3173:5, 3173:24, 3174:3, 3174:4, 3174:17, 3174:23, 3174:24, 3175:8, 3175:9, 3179:14, 3180:9, 3180:22, 3181:2, 3185:2, 3185:8, 3185:9, 3186:12, 3186:17, 3186:20, 3187:17, 3187:23, 3188:10, 3199:19, 3201:10, 3201:11, 3201:24, 3204:9, 3205:18, 3206:3, 3207:4, 3207:8, 3207:11, 3207:12, 3213:12, 3213:13, 3214:6, 3215:24, 3221:1, 3221:2, 3223:2, 3223:3, 3223:5, 3223:7, 3223:24, 3223:25, 3227:25, 3228:18, 3229:4, 3229:15, 3229:17, 3229:18, 3231:15, 3232:25, 3233:1, 3233:15, 3234:5, 3236:8, 3236:25, 3238:9, 3241:4, 3244:21, 3244:22, 3264:14, 3265:3, 3265:4, 3265:6, 3265:22, 3274:4, 3282:5, 3284:5, 3286:15, 3287:10, 3289:13, 3290:1, 3291:1, 3301:22, 3302:11, 3313:8, 3315:23, 3319:10, 3320:24, 3321:17, 3322:17, 3322:18, 3323:16, 3323:19, 3324:8, 3324:12, 3325:18, 3325:24, 3327:1, 3328:1, 3328:5, 3328:8, 3329:24, 3329:25, 3330:8, 3330:12, 3330:15, 3331:9, 3331:20
**correcting** [1] - 3267:25
**correctly** [5] - 3145:23, 3284:1, 3284:21, 3302:7, 3316:6
**correspond** [2] - 3306:21, 3317:10
**correspondence** [4] - 3234:9, 3302:25, 3319:14, 3319:21
**corresponds** [1] - 3307:6
**could've** [1] - 3240:18

**counsel** [2] - 3204:11, 3218:10
**counterclaim** [1] - 3182:17
**counterpoint** [1] - 3338:11
**country** [2] - 3255:25, 3284:10
**Country** [1] - 3131:3
**couple** [8] - 3188:21, 3192:22, 3260:4, 3283:7, 3286:17, 3295:11, 3296:17, 3338:13
**course** [10] - 3186:10, 3186:22, 3228:20, 3236:16, 3240:15, 3245:2, 3267:16, 3272:18, 3272:23, 3304:23
**COURT** [194] - 3130:1, 3132:2, 3132:4, 3132:7, 3132:10, 3132:18, 3132:25, 3133:3, 3133:17, 3135:11, 3138:2, 3140:7, 3140:11, 3140:15, 3150:11, 3150:20, 3151:7, 3151:22, 3154:16, 3156:10, 3156:23, 3157:19, 3159:2, 3159:24, 3160:3, 3162:3, 3162:18, 3165:24, 3166:1, 3168:11, 3171:19, 3172:5, 3174:15, 3181:25, 3183:11, 3183:16, 3183:18, 3184:4, 3186:8, 3190:1, 3190:4, 3190:8, 3190:11, 3191:16, 3192:20, 3194:5, 3195:3, 3195:11, 3195:15, 3195:23, 3196:10, 3196:12, 3196:22, 3197:21, 3197:24, 3198:8, 3198:11, 3198:19, 3198:25, 3200:21, 3202:22, 3202:24, 3203:2, 3203:5, 3203:22, 3204:2, 3204:7, 3204:25, 3206:6, 3209:13, 3209:18, 3215:12, 3216:9, 3219:6, 3220:20, 3222:5, 3224:23, 3225:21, 3226:17, 3229:9, 3230:22, 3241:22, 3241:25, 3242:14, 3243:9, 3243:11, 3245:5, 3245:10, 3245:13, 3245:17, 3246:19, 3247:4, 3247:8, 3247:24, 3248:11, 3248:25, 3249:6, 3249:23, 3252:2, 3253:3, 3254:1, 3254:4, 3255:12, 3256:13, 3256:17, 3256:23, 3257:7, 3257:11, 3257:14, 3257:16, 3258:1, 3259:15, 3259:21, 3259:23,

3259:25, 3260:6, 3261:4, 3261:8, 3261:23, 3261:25, 3262:2, 3262:7, 3262:9, 3262:12, 3262:18, 3263:11, 3263:15, 3263:18, 3264:1, 3264:17, 3264:19, 3266:3, 3266:6, 3266:9, 3266:21, 3269:9, 3270:9, 3270:12, 3273:7, 3280:15, 3280:18, 3283:1, 3289:7, 3292:23, 3294:9, 3297:20, 3299:12, 3301:15, 3303:18, 3305:9, 3308:3, 3308:5, 3308:10, 3308:13, 3308:20, 3308:25, 3309:3, 3309:5, 3310:2, 3310:23, 3312:21, 3312:23, 3313:1, 3315:10, 3316:18, 3316:21, 3319:5, 3320:2, 3320:5, 3321:1, 3322:12, 3323:4, 3323:7, 3323:9, 3327:7, 3329:20, 3335:5, 3335:8, 3335:11, 3335:21, 3335:25, 3336:12, 3336:18, 3336:25, 3337:3, 3337:15, 3338:4, 3338:18, 3339:2, 3339:20, 3340:3, 3340:21, 3341:3, 3341:8
**court** [5] - 3185:12, 3246:12, 3252:1, 3280:24, 3338:7
**Court** [11] - 3131:7, 3131:20, 3192:12, 3195:1, 3197:25, 3198:1, 3245:9, 3246:1, 3257:3, 3338:25, 3340:20
**Court's** [3] - 3181:23, 3183:14, 3195:9
**Courthouse** [1] - 3130:6
**courtroom** [8] - 3190:7, 3192:2, 3198:21, 3245:12, 3246:5, 3308:8, 3310:1, 3335:20
**courts** [1] - 3163:17
**cover** [3] - 3196:16, 3224:21, 3252:7, 3258:10, 3259:7
**covered** [1] - 3270:1
**covers** [2] - 3269:13, 3269:15
**CR** [1] - 3173:10
**CR-13-607** [1] - 3130:4
**crafters** [1] - 3337:12
**create** [1] - 3258:16
**created** [5] - 3272:18, 3272:22, 3272:25, 3285:18, 3304:25
**creates** [1] - 3336:7
**credit** [7] - 3177:19,

3177:22, 3177:23, 3178:4, 3178:6, 3208:22, 3239:7
**crime** [10] - 3247:14, 3253:19, 3254:3, 3254:4, 3257:19, 3257:21, 3257:25, 3258:9, 3258:18, 3259:6
**criminal** [10] - 3201:22, 3201:25, 3202:5, 3202:8, 3202:17, 3216:15, 3216:19, 3227:18, 3227:19, 3251:12
**critical** [2] - 3246:20, 3247:4
**cross** [5] - 3133:6, 3229:11, 3242:12, 3257:24, 3321:1
**CROSS** [6] - 3133:20, 3321:3, 3327:9, 3342:4, 3342:19, 3342:21
**cross-examination** [3] - 3133:6, 3242:12, 3321:1
**CROSS-EXAMINATION** [6] - 3133:20, 3321:3, 3327:9, 3342:4, 3342:19, 3342:21
**cumbersome** [1] - 3255:3
**CURRIE** [1] - 3130:14
**customer** [1] - 3268:17
**cut** [2] - 3252:2, 3256:11
**cycles** [1] - 3277:16

**D**

**Daily** [3] - 3246:4, 3248:24, 3249:10
**Darryl** [1] - 3331:1
**date** [6] - 3136:16, 3172:23, 3306:21, 3306:24, 3307:7, 3320:12
**dated** [11] - 3142:2, 3161:3, 3162:22, 3166:6, 3166:11, 3169:19, 3232:5, 3268:20, 3283:11, 3283:15, 3284:25
**dates** [4] - 3272:17, 3272:21, 3305:17, 3305:22
**David** [1] - 3198:2
**days** [4] - 3161:8, 3194:6, 3255:17, 3318:2
**deal** [9] - 3149:5, 3149:13, 3193:7, 3194:17, 3216:4, 3247:24, 3255:4, 3332:14, 3332:23
**dealing** [1] - 3254:7
**dealings** [1] - 3216:3
**deals** [1] - 3217:15
**Dear** [1] - 3301:19
**debriefing** [1] - 3249:14
**debt** [2] - 3289:23, 3292:2
**debtor** [1] - 3326:10

**December** [6] - 3305:14, 3305:20, 3307:17, 3307:18, 3307:23, 3314:3
**decide** [3] - 3151:18, 3248:17, 3257:1
**declaration** [1] - 3341:4
**default** [11] - 3228:9, 3289:18, 3289:21, 3289:23, 3289:25, 3325:20, 3325:22, 3326:2, 3326:9, 3331:8, 3331:24
**defaulted** [3] - 3241:14, 3241:17, 3332:4
**defend** [3] - 3211:19, 3241:11, 3252:23
**defendant** [6] - 3204:11, 3251:12, 3281:14, 3326:5, 3338:23, 3340:9
**Defendant's** [7] - 3140:3, 3202:25, 3334:9, 3335:2, 3335:9, 3343:14, 3344:18
**defendants** [15] - 3211:2, 3214:18, 3288:24, 3289:20, 3290:18, 3290:19, 3290:21, 3290:23, 3292:10, 3292:18, 3292:19, 3292:20, 3292:24, 3315:18
**Defendants** [3] - 3130:8, 3130:20, 3131:1
**defendants'** [1] - 3326:22
**defense** [4] - 3132:13, 3220:24, 3261:11, 3261:19
**Defense** [12] - 3140:16, 3160:4, 3162:19, 3166:3, 3263:21, 3264:21, 3343:9, 3343:10, 3343:11, 3343:12, 3343:16, 3343:17
**defer** [1] - 3193:8
**deficiency** [5] - 3279:11, 3295:13, 3300:11, 3300:22, 3312:3
**defined** [1] - 3290:21
**definitely** [3] - 3169:14, 3195:18, 3309:2
**definitions** [1] - 3289:12
**Del** [7] - 3136:17, 3153:22, 3154:2, 3163:11, 3163:13, 3227:23, 3264:11
**Delaware** [3] - 3177:2, 3293:22
**delay** [1] - 3284:8
**delivered** [1] - 3321:19
**delivering** [1] - 3167:24
**demand** [1] - 3289:18
**demanded** [2] - 3289:23, 3314:11
**demeanor** [1] - 3235:22
**demurrer** [1] - 3161:22
**denied** [1] - 3192:16

**denominated** [1] - 3340:12
**department** [1] - 3274:16
**depicted** [1] - 3269:22
**deposit** [2] - 3250:18, 3318:6
**deposition** [17] - 3135:2, 3171:11, 3199:3, 3199:13, 3199:19, 3204:14, 3222:17, 3242:6, 3242:18, 3242:22, 3243:6, 3243:16, 3244:4, 3244:7, 3244:9, 3244:12, 3244:14
**depositions** [1] - 3242:20
**deposits** [4] - 3251:9, 3254:17, 3317:25, 3318:1
**describe** [5] - 3140:20, 3152:7, 3186:20, 3269:22, 3272:7, 3296:20, 3297:2, 3298:2, 3312:10, 3312:12, 3313:5, 3314:21, 3319:12, 3332:12, 3332:18
**described** [7] - 3136:20, 3149:5, 3232:7, 3236:18, 3270:16, 3297:23, 3304:20
**describing** [1] - 3196:24
**description** [2] - 3302:12, 3306:17
**descriptions** [1] - 3197:2
**designating** [1] - 3240:1
**designation** [1] - 3321:25
**designations** [1] - 3321:25
**designed** [1] - 3258:19
**desk** [1] - 3271:6
**detail** [6] - 3167:1, 3173:22, 3174:16, 3194:11, 3194:21, 3221:19
**detailing** [1] - 3279:13
**details** [6] - 3143:14, 3150:12, 3156:1, 3190:16, 3197:5, 3312:19
**determined** [3] - 3244:18, 3244:19, 3314:17
**development** [4] - 3167:5, 3167:25, 3231:4, 3231:7
**devoted** [1] - 3229:20
**Diamante** [44] - 3148:3, 3148:7, 3148:9, 3148:24, 3149:6, 3149:14, 3150:24, 3163:11, 3227:23, 3228:17, 3240:20, 3240:23, 3241:3, 3241:6, 3241:12, 3241:17, 3264:11, 3265:21, 3267:23, 3268:1, 3268:14, 3268:18, 3288:13, 3289:14, 3290:24, 3292:4, 3293:5, 3295:17, 3296:11, 3299:21, 3301:4, 3324:5, 3324:7, 3324:10, 3324:11, 3324:13, 3326:10, 3330:6,

3330:15, 3330:21, 3331:3, 3331:8, 3331:14
**Diamonte** [3] - 3201:2, 3203:20, 3206:15
**Diaz** [1] - 3337:12
**difference** [2] - 3279:9, 3295:15
**different** [6] - 3261:17, 3265:16, 3267:12, 3271:18, 3286:17, 3293:13
**differential** [1] - 3301:3
**difficulties** [1] - 3332:4
**difficulty** [4] - 3267:13, 3271:14, 3274:14, 3334:1
**dire** [1] - 3281:19
**DIRE** [2] - 3281:21, 3342:17
**DIRECT** [2] - 3267:1, 3342:15
**direct** [15] - 3134:22, 3156:13, 3166:9, 3179:20, 3192:21, 3202:15, 3222:6, 3226:22, 3228:15, 3229:10, 3242:10, 3311:25, 3321:9, 3325:14, 3333:11
**directed** [2] - 3271:12, 3333:13
**directing** [2] - 3262:22, 3314:20
**direction** [1] - 3166:21
**directions** [1] - 3258:15
**directly** [4] - 3145:12, 3280:3, 3281:25, 3308:16
**directors** [1] - 3180:16
**disbursement** [3] - 3324:6, 3324:21, 3325:3
**disbursements** [2] - 3254:12, 3324:1
**discard** [4] - 3239:10, 3239:11, 3239:15, 3239:16
**disciplinary** [2] - 3246:5, 3248:7
**disclosed** [1] - 3274:19
**discovery** [1] - 3222:3
**Discovery** [3] - 3209:7, 3221:22, 3225:17
**discuss** [12] - 3135:20, 3158:5, 3173:20, 3190:5, 3245:11, 3246:11, 3246:20, 3274:10, 3275:14, 3276:11, 3285:8, 3335:18
**discussed** [7] - 3136:3, 3139:6, 3155:8, 3175:5, 3198:16, 3262:6, 3328:4
**discussing** [11] - 3155:21, 3156:15, 3180:14, 3183:6, 3201:19, 3203:23, 3261:11, 3276:10,

3283:17, 3299:2, 3334:17
**discussion** [6] - 3180:18, 3181:17, 3187:15, 3194:21, 3276:15, 3285:11
**discussions** [9] - 3138:18, 3148:1, 3176:25, 3181:11, 3190:15, 3194:12, 3276:20, 3278:21, 3326:17
**disgruntled** [1] - 3136:22
**dismissed** [3] - 3142:22, 3246:8, 3246:18
**display** [2] - 3141:14, 3161:3
**displaying** [1] - 3162:21
**disposition** [2] - 3216:19, 3295:24
**dispute** [2] - 3178:3, 3178:5
**disrepair** [1] - 3211:16
**distinction** [1] - 3324:23
**DISTRICT** [3] - 3130:1, 3130:1, 3130:11
**dive** [1] - 3256:7
**diversion** [1] - 3253:4
**diversions** [2] - 3259:1, 3339:14
**diverted** [4] - 3181:12, 3203:18, 3265:16, 3265:24
**dividend** [1] - 3330:17
**division** [1] - 3288:21
**document** [66] - 3132:14, 3154:16, 3162:9, 3174:19, 3178:10, 3178:21, 3179:2, 3179:11, 3181:15, 3182:3, 3182:7, 3183:15, 3183:19, 3187:4, 3188:20, 3189:24, 3190:1, 3195:21, 3196:13, 3205:5, 3205:7, 3206:2, 3213:9, 3225:14, 3225:18, 3227:4, 3227:12, 3231:9, 3231:11, 3231:19, 3232:11, 3232:13, 3235:9, 3238:11, 3238:12, 3238:13, 3238:14, 3238:16, 3238:20, 3238:24, 3239:8, 3239:10, 3243:11, 3243:12, 3243:24, 3268:17, 3268:25, 3288:12, 3290:13, 3292:25, 3312:4, 3313:25, 3319:7, 3321:23, 3321:24, 3322:3, 3322:21, 3323:14, 3323:22, 3323:23, 3330:4, 3330:10, 3330:13, 3340:21
**documentation** [8] - 3219:25, 3225:2, 3236:25, 3237:2, 3237:6, 3281:24, 3282:15, 3311:25
**documents** [43] - 3172:8,

**10**

# E

3179:15, 3182:15, 3183:7, 3190:14, 3190:17, 3190:20, 3192:18, 3207:17, 3207:21, 3237:4, 3237:10, 3237:16, 3237:18, 3237:20, 3238:1, 3238:2, 3238:3, 3238:6, 3262:24, 3268:14, 3272:9, 3272:21, 3279:13, 3279:15, 3280:21, 3282:3, 3282:8, 3282:17, 3282:22, 3283:1, 3286:23, 3287:22, 3313:16, 3321:13, 3321:19, 3322:19, 3323:15, 3329:8, 3338:9, 3339:7, 3339:12, 3340:8
**dollar** [2] - 3203:12, 3306:21
**dollars** [5] - 3167:17, 3203:14, 3203:16, 3268:8, 3314:16
**done** [19] - 3158:24, 3191:23, 3201:17, 3201:23, 3202:5, 3202:18, 3216:16, 3230:13, 3261:7, 3265:11, 3275:21, 3275:25, 3276:8, 3276:9, 3277:12, 3277:25, 3319:18, 3337:13, 3339:9
**Donlan** [1] - 3336:15
**door** [1] - 3185:20
**double** [1] - 3191:4
**doubt** [1] - 3225:11
**doubts** [1] - 3255:20
**down** [21] - 3148:18, 3150:9, 3150:13, 3152:1, 3176:24, 3201:1, 3215:20, 3215:21, 3215:25, 3225:9, 3238:2, 3243:12, 3244:18, 3265:21, 3266:3, 3266:5, 3300:11, 3302:14, 3321:25, 3324:15, 3335:21
**drafting** [1] - 3286:23
**draw** [3] - 3252:20, 3306:2, 3313:15
**drove** [1] - 3332:14
**dry** [1] - 3256:11
**due** [5] - 3254:14, 3272:3, 3273:16, 3326:8, 3337:17
**duly** [2] - 3133:14, 3266:14
**during** [24] - 3135:1, 3146:18, 3171:4, 3171:10, 3186:10, 3186:22, 3188:14, 3188:25, 3199:18, 3201:15, 3228:20, 3229:11, 3234:2, 3236:16, 3242:5, 3244:23, 3252:4, 3252:18, 3252:22, 3276:15, 3279:17, 3305:15, 3331:10

**e-mail** [96] - 3139:23, 3140:19, 3141:15, 3141:16, 3141:17, 3141:18, 3142:3, 3146:4, 3147:2, 3147:5, 3147:7, 3147:9, 3149:7, 3149:8, 3150:12, 3150:13, 3151:8, 3151:9, 3151:12, 3151:15, 3155:18, 3157:20, 3157:21, 3161:4, 3161:14, 3162:10, 3162:21, 3163:1, 3163:5, 3164:25, 3165:12, 3165:13, 3165:17, 3166:9, 3168:12, 3168:15, 3168:17, 3168:19, 3168:21, 3168:23, 3169:20, 3169:21, 3169:22, 3170:5, 3170:17, 3190:24, 3191:4, 3191:8, 3191:24, 3193:12, 3193:15, 3194:15, 3195:11, 3195:15, 3196:14, 3196:19, 3196:23, 3197:10, 3213:19, 3221:6, 3224:6, 3224:7, 3224:17, 3224:18, 3236:1, 3236:2, 3236:5, 3239:9, 3239:20, 3239:24, 3239:25, 3281:1, 3281:3, 3281:6, 3281:8, 3281:13, 3282:5, 3283:11, 3283:14, 3283:20, 3284:4, 3284:7, 3284:24, 3286:4, 3286:13, 3286:14, 3286:17, 3287:9, 3303:6, 3303:7, 3311:24, 3313:5, 3313:6
**e-mailed** [1] - 3194:19
**e-mails** [26] - 3146:16, 3149:22, 3151:18, 3157:22, 3159:11, 3159:14, 3160:6, 3165:6, 3165:7, 3169:18, 3177:10, 3192:22, 3239:22, 3281:10, 3281:23, 3282:17, 3282:19, 3283:8, 3284:9, 3331:19, 3334:11, 3334:16, 3335:12, 3335:14
**early** [5] - 3163:15, 3271:16, 3272:1, 3273:14, 3337:17
**earned** [1] - 3301:7
**eastern** [1] - 3275:12
**EASTERN** [1] - 3130:1
**easy** [2] - 3251:14, 3254:23
**Edenholm** [1] - 3294:24
**effect** [3] - 3237:16, 3244:20, 3279:6

**effective** [2] - 3294:15, 3320:12
**efficient** [2] - 3253:12, 3253:14
**effort** [12] - 3136:11, 3136:21, 3137:11, 3137:15, 3143:10, 3148:3, 3193:4, 3193:22, 3212:3, 3212:6, 3332:14, 3334:3
**efforts** [11] - 3164:15, 3176:20, 3190:25, 3191:2, 3192:16, 3193:16, 3193:19, 3195:19, 3197:6, 3332:17, 3332:18
**either** [12] - 3157:22, 3166:16, 3172:9, 3185:11, 3220:13, 3234:20, 3239:20, 3276:6, 3281:2, 3284:16, 3285:13, 3314:8
**El** [2] - 3264:9, 3264:13
**electronic** [2] - 3282:1, 3337:7
**Elena** [1] - 3337:12
**elicit** [4] - 3150:17, 3249:16, 3251:10, 3334:4
**elicited** [3] - 3206:13, 3207:9, 3208:5
**Ellen** [2] - 3294:23, 3315:16
**employer** [1] - 3308:6
**enclosed** [2] - 3157:23, 3161:6
**end** [2] - 3138:10, 3182:24, 3182:25, 3225:11, 3239:25, 3240:17, 3257:17, 3259:17, 3259:18, 3259:19, 3275:3, 3303:12, 3338:7
**ended** [5] - 3133:5, 3212:9, 3234:22, 3286:19, 3318:11
**ending** [1] - 3303:2
**engaged** [2] - 3231:3, 3239:6
**engagement** [3] - 3252:15, 3252:17, 3252:19
**engine** [2] - 3303:13
**entailed** [1] - 3180:20
**enter** [1] - 3314:12
**entered** [6] - 3288:24, 3290:14, 3292:5, 3294:14, 3314:23, 3334:22
**entering** [1] - 3286:19
**Enterprisers** [1] - 3253:5
**enters** [2] - 3198:20, 3310:1
**entertain** [1] - 3255:1
**entire** [5] - 3145:6, 3187:4, 3189:24, 3195:21, 3283:21
**entirely** [1] - 3197:3

**entities** [1] - 3203:19
**entitled** [5] - 3289:17, 3290:3, 3292:13, 3295:24, 3298:1
**entity** [4] - 3148:25, 3175:11, 3241:8, 3241:13
**entries** [2] - 3272:16, 3304:22
**equipment** [2] - 3276:6, 3277:13
**equity** [3] - 3156:21, 3265:21, 3297:7
**Eric** [1] - 3294:24
**escapes** [1] - 3329:11
**escrow** [21] - 3251:3, 3287:6, 3287:15, 3287:20, 3287:21, 3287:24, 3287:25, 3295:10, 3295:12, 3296:9, 3300:7, 3300:17, 3300:22, 3301:19, 3302:3, 3312:1, 3312:3, 3312:18, 3313:10, 3313:12, 3313:15
**especially** [1] - 3146:10
**ESQ** [5] - 3130:16, 3130:16, 3130:22, 3131:4, 3131:6
**essentially** [3] - 3206:14, 3217:6, 3223:23
**establish** [7] - 3192:13, 3193:9, 3194:1, 3194:6, 3194:7, 3194:10, 3267:15
**established** [3] - 3191:16, 3194:16, 3313:12
**estate** [1] - 3232:2
**estates** [1] - 3225:25
**etcetera** [1] - 3214:2
**Ethan** [2] - 3136:23, 3213:1
**Ethel** [1] - 3176:13
**ethics** [3] - 3248:16, 3249:8, 3255:10
**Eufora** [55] - 3137:4, 3137:16, 3137:19, 3137:24, 3139:16, 3141:11, 3144:8, 3173:14, 3174:2, 3175:1, 3175:3, 3175:7, 3175:8, 3175:19, 3176:4, 3176:14, 3176:20, 3177:1, 3177:19, 3177:20, 3179:4, 3179:17, 3179:25, 3180:1, 3180:3, 3180:5, 3180:6, 3180:11, 3180:13, 3180:16, 3180:22, 3181:7, 3181:11, 3181:19, 3184:9, 3185:15, 3185:23, 3186:6, 3186:17, 3186:18, 3189:3, 3212:20, 3213:3, 3213:5, 3213:7, 3213:16, 3215:4, 3215:8, 3222:17, 3223:4, 3226:3, 3261:18, 3339:14,

**11**

3340:10, 3340:12
**Eufora's** [1] - 3185:17
**evaluate** [2] - 3267:16, 3276:21
**event** [1] - 3228:13
**events** [4] - 3191:13, 3239:4, 3326:25, 3327:3
**eventually** [4] - 3217:21, 3220:8, 3288:16, 3313:18
**evidence** [86] - 3140:16, 3146:23, 3147:5, 3159:18, 3160:4, 3162:19, 3163:25, 3166:4, 3203:1, 3205:11, 3216:12, 3218:11, 3225:19, 3231:18, 3258:21, 3258:23, 3263:21, 3264:21, 3269:6, 3269:10, 3270:8, 3270:13, 3273:4, 3273:8, 3280:11, 3280:19, 3281:17, 3283:3, 3289:3, 3289:8, 3294:6, 3294:11, 3297:16, 3297:22, 3299:9, 3299:14, 3301:17, 3303:15, 3303:20, 3305:6, 3305:11, 3306:23, 3310:20, 3310:24, 3313:3, 3313:19, 3315:7, 3315:11, 3316:24, 3319:2, 3319:6, 3320:7, 3322:9, 3322:13, 3322:20, 3323:10, 3323:24, 3335:10, 3342:25, 3343:1, 3343:2, 3343:3, 3343:5, 3343:6, 3343:9, 3343:10, 3343:11, 3343:13, 3343:15, 3343:16, 3343:17, 3343:21, 3343:23, 3343:25, 3344:2, 3344:4, 3344:6, 3344:7, 3344:9, 3344:10, 3344:12, 3344:13, 3344:15, 3344:16, 3344:17, 3344:19
**exact** [1] - 3250:19
**exactly** [2] - 3145:21, 3258:18
**examination** [4] - 3133:6, 3242:12, 3321:1, 3331:10
**EXAMINATION** [18] - 3133:20, 3205:1, 3226:20, 3242:3, 3262:20, 3267:1, 3281:21, 3321:3, 3327:9, 3342:4, 3342:6, 3342:8, 3342:10, 3342:12, 3342:15, 3342:17, 3342:19, 3342:21
**examine** [2] - 3330:12, 3340:19
**examined** [3] - 3133:14, 3266:14
**example** [1] - 3142:17

**examples** [1] - 3252:14
**except** [2] - 3145:10, 3194:13
**exception** [10] - 3205:21, 3247:14, 3253:20, 3254:4, 3257:19, 3257:21, 3257:25, 3258:10, 3258:18, 3259:7
**exceptional** [1] - 3250:10
**exchange** [4] - 3234:9, 3240:13, 3265:24, 3334:19
**exclude** [1] - 3193:5
**exculpatory** [1] - 3132:17
**excuse** [1] - 3145:13
**executed** [2] - 3298:13, 3313:21
**executing** [1] - 3294:16
**exhibit** [7] - 3165:15, 3198:24, 3202:22, 3272:8, 3294:13, 3305:13
**Exhibit** [90] - 3140:3, 3140:16, 3162:19, 3198:1, 3198:2, 3202:25, 3220:24, 3223:24, 3226:11, 3226:18, 3226:23, 3231:17, 3236:3, 3238:11, 3263:21, 3264:21, 3268:10, 3269:10, 3270:13, 3272:5, 3273:8, 3279:22, 3280:19, 3284:3, 3284:23, 3286:14, 3287:8, 3288:5, 3289:8, 3294:10, 3297:4, 3297:21, 3298:22, 3299:13, 3301:16, 3303:4, 3303:19, 3304:2, 3304:13, 3305:10, 3306:2, 3306:15, 3306:23, 3307:12, 3310:12, 3310:24, 3312:12, 3314:20, 3315:11, 3316:25, 3317:14, 3319:6, 3321:23, 3322:9, 3322:13, 3322:15, 3322:16, 3323:1, 3323:3, 3323:10, 3324:14, 3326:15, 3326:16, 3332:24, 3334:10, 3335:2, 3335:9, 3342:25, 3343:1, 3343:2, 3343:3, 3343:6, 3343:9, 3343:11, 3343:14, 3343:16, 3343:17, 3343:20, 3343:22, 3343:24, 3344:1, 3344:3, 3344:5, 3344:7, 3344:10, 3344:13, 3344:16, 3344:17, 3344:18
**EXHIBITS** [1] - 3342:24
**exhibits** [12] - 3160:3, 3164:23, 3166:1, 3296:20, 3303:18, 3313:1, 3316:16, 3318:13, 3321:11,

3321:15, 3321:16, 3327:22
**Exhibits** [16] - 3160:4, 3166:3, 3269:19, 3283:2, 3311:21, 3312:20, 3313:2, 3316:21, 3316:23, 3320:6, 3343:4, 3343:10, 3343:12, 3344:8, 3344:11, 3344:14
**existing** [2] - 3177:2, 3298:1
**exits** [2] - 3190:6, 3308:7
**expect** [2] - 3247:23, 3249:21
**expectation** [1] - 3217:9
**expected** [2] - 3247:3, 3255:3
**expending** [1] - 3187:20
**expenditure** [3] - 3142:14, 3252:9, 3252:11
**expense** [1] - 3261:12
**expenses** [2] - 3339:13, 3339:20
**expert** [2] - 3337:15, 3337:19
**explain** [6] - 3191:6, 3285:8, 3285:11, 3289:19, 3295:14, 3332:9
**explained** [3] - 3142:5, 3142:7, 3213:11
**explaining** [5] - 3193:16, 3250:18, 3251:8
**explanation** [2] - 3254:16, 3288:2
**explanations** [1] - 3251:15
**explore** [2] - 3275:16, 3276:17
**expressed** [1] - 3275:15
**extent** [6] - 3246:22, 3247:9, 3250:1, 3252:8, 3254:15, 3258:1
**extra** [1] - 3178:13

**F**

**FAA** [1] - 3319:16
**faced** [1] - 3255:4
**facilitate** [2] - 3253:17, 3258:20
**fact** [31] - 3134:17, 3135:9, 3138:25, 3144:15, 3150:18, 3153:20, 3171:16, 3171:25, 3172:11, 3175:14, 3176:25, 3178:5, 3179:13, 3180:14, 3180:25, 3186:22, 3192:4, 3199:17, 3207:9, 3213:7, 3214:15, 3220:17, 3220:24, 3228:6, 3236:10, 3240:1, 3251:2, 3265:20, 3282:20, 3316:8,

3338:10
**facts** [6] - 3150:1, 3150:2, 3150:18, 3247:6, 3251:9, 3251:11
**factually** [1] - 3339:12
**fail** [2] - 3190:20, 3257:5
**failure** [1] - 3167:22
**fair** [26] - 3141:1, 3146:11, 3146:14, 3146:18, 3150:2, 3158:2, 3158:15, 3171:10, 3173:7, 3173:14, 3173:15, 3180:4, 3187:18, 3207:6, 3235:7, 3239:2, 3273:14, 3279:21, 3286:18, 3301:6, 3311:9, 3312:6, 3319:7, 3322:20, 3325:12, 3333:25
**fairchild** [1] - 3310:15
**Fairchild** [22] - 3268:5, 3269:16, 3269:24, 3270:1, 3270:16, 3272:9, 3277:3, 3278:11, 3292:12, 3295:24, 3296:1, 3296:12, 3300:21, 3302:13, 3302:17, 3312:1, 3312:8, 3313:12, 3314:1, 3332:6, 3332:25, 3333:23
**Fairchild's** [1] - 3302:17
**fairly** [2] - 3132:15, 3186:14
**Falcon** [104] - 3149:20, 3151:9, 3151:16, 3211:16, 3268:5, 3268:6, 3269:17, 3270:22, 3272:12, 3274:5, 3274:7, 3275:16, 3276:10, 3277:4, 3278:4, 3278:5, 3278:15, 3279:4, 3279:5, 3284:13, 3285:15, 3286:6, 3286:8, 3290:1, 3292:12, 3292:14, 3292:15, 3293:2, 3293:3, 3293:9, 3293:12, 3293:15, 3293:21, 3294:3, 3294:12, 3295:4, 3295:11, 3295:12, 3295:16, 3295:17, 3295:21, 3296:22, 3296:25, 3297:5, 3297:10, 3297:24, 3298:16, 3300:9, 3301:2, 3302:12, 3302:18, 3302:20, 3302:25, 3303:11, 3303:12, 3304:3, 3304:5, 3304:9, 3304:17, 3304:18, 3306:1, 3306:12, 3306:13, 3306:18, 3306:20, 3306:25, 3307:10, 3307:14, 3307:25, 3310:6, 3313:12, 3314:2, 3314:23, 3315:16, 3315:17, 3316:1, 3316:3, 3316:4, 3316:12, 3316:13, 3317:1, 3317:21, 3318:12,

12

3318:20, 3318:21, 3319:8, 3319:11, 3320:1, 3324:19, 3327:21, 3328:11, 3328:12, 3328:13, 3328:15, 3328:20, 3328:21, 3329:3, 3332:2, 3332:3, 3332:7, 3332:20
**fall** [1] - 3251:7
**falling** [2] - 3180:19, 3180:20
**falls** [1] - 3246:14
**false** [3] - 3171:1, 3200:19, 3221:1
**familiar** [24] - 3137:19, 3137:20, 3138:21, 3148:9, 3149:19, 3152:15, 3153:15, 3154:3, 3154:6, 3157:3, 3158:14, 3161:22, 3162:12, 3175:25, 3178:24, 3179:1, 3179:2, 3180:1, 3180:17, 3182:7, 3186:18, 3241:15, 3258:22, 3320:14
**family** [2] - 3167:21, 3231:6
**far** [4] - 3145:11, 3284:15, 3329:23, 3331:14
**fashion** [1] - 3208:23
**fast** [2] - 3145:20, 3178:23
**favorably** [2] - 3171:16, 3171:22
**fax** [2] - 3308:15, 3308:16
**FBI** [16] - 3199:15, 3199:21, 3199:24, 3200:3, 3200:9, 3200:14, 3200:15, 3233:3, 3233:14, 3233:16, 3234:21, 3242:10, 3242:23, 3243:17, 3337:6, 3337:11
**February** [3] - 3274:20, 3283:11, 3283:15
**fed** [1] - 3301:22
**Federal** [2] - 3130:15, 3131:20
**federal** [2] - 3222:1, 3234:20
**fee** [1] - 3273:25
**fees** [12] - 3142:10, 3177:2, 3177:7, 3177:20, 3194:11, 3212:7, 3212:10, 3250:25, 3252:18, 3259:10, 3301:5, 3301:7
**Ferguson** [2] - 3315:16, 3315:17
**Fergusson** [1] - 3294:23
**few** [16] - 3139:6, 3140:9, 3147:21, 3178:15, 3185:23, 3189:24, 3199:1, 3204:13, 3215:13, 3264:25, 3274:12, 3318:2,

3321:9, 3327:19, 3327:22, 3328:4
**fighting** [1] - 3192:15
**figures** [2] - 3295:11, 3295:14
**file** [14] - 3280:4, 3280:6, 3280:8, 3281:24, 3281:25, 3294:3, 3297:13, 3321:13, 3322:4, 3322:21, 3323:16, 3330:11, 3330:13, 3331:7
**filed** [24] - 3146:6, 3148:4, 3152:14, 3153:4, 3153:5, 3155:11, 3155:14, 3156:13, 3156:17, 3157:24, 3158:15, 3163:19, 3173:19, 3173:21, 3175:6, 3182:15, 3182:24, 3183:1, 3183:3, 3183:7, 3184:16, 3246:7, 3290:9, 3291:2
**files** [2] - 3310:17, 3315:4
**filing** [5] - 3155:19, 3158:11, 3158:17, 3163:16, 3267:17
**final** [1] - 3314:13
**finally** [6] - 3170:9, 3192:18, 3287:8, 3326:25, 3330:11, 3332:13
**financial** [7] - 3135:13, 3144:20, 3156:17, 3250:5, 3250:10, 3258:8, 3259:6, 3279:24, 3280:7
**financially** [1] - 3206:23
**financing** [1] - 3232:1
**findings** [2] - 3246:8, 3276:16
**fine** [8] - 3186:21, 3193:9, 3194:8, 3256:13, 3259:15, 3259:20, 3327:12, 3338:18
**finish** [1] - 3337:3
**firm** [3] - 3206:18, 3230:25, 3231:9
**first** [42] - 3155:3, 3155:4, 3160:18, 3161:6, 3161:24, 3166:6, 3170:17, 3177:13, 3179:21, 3181:3, 3191:7, 3205:12, 3206:17, 3214:21, 3230:18, 3231:20, 3233:11, 3233:17, 3238:13, 3238:15, 3244:14, 3250:15, 3253:9, 3254:2, 3263:13, 3266:13, 3268:2, 3268:16, 3289:12, 3290:21, 3290:23, 3293:8, 3294:13, 3300:17, 3300:20, 3303:5, 3303:25, 3306:4, 3317:8, 3331:25, 3332:9, 3336:19
**First** [5] - 3267:7, 3269:3,

3272:14, 3288:23, 3301:24
**firsthand** [2] - 3325:4
**fit** [1] - 3283:9
**five** [4] - 3181:3, 3197:15, 3227:13
**fix** [1] - 3211:15
**flight** [2] - 3198:8, 3198:10
**flying** [1] - 3255:25
**focus** [6] - 3250:13, 3257:17, 3259:3, 3273:11, 3276:22, 3305:12
**folks** [1] - 3333:20
**following** [3] - 3166:24, 3232:7, 3288:17
**follows** [5] - 3133:15, 3218:13, 3231:20, 3232:4, 3266:15
**forbear** [1] - 3290:7
**forbearance** [9] - 3288:9, 3288:22, 3290:3, 3290:5, 3292:1, 3295:3, 3326:14, 3326:15, 3326:17
**foreclosed** [1] - 3228:8
**foremost** [1] - 3250:15
**forensic** [1] - 3337:6
**form** [12] - 3139:11, 3166:17, 3166:24, 3182:20, 3206:6, 3209:13, 3225:7, 3225:10, 3232:5, 3238:20
**formation** [1] - 3205:14
**formed** [1] - 3293:13
**formulate** [1] - 3334:20
**forth** [3] - 3247:20, 3252:17, 3256:9
**forward** [9] - 3164:20, 3255:9, 3274:10, 3275:1, 3276:11, 3286:10, 3286:11, 3290:8, 3334:20
**forwarded** [1] - 3275:10
**forwarding** [1] - 3313:6
**foundation** [1] - 3334:21
**four** [2] - 3227:13, 3261:16
**fourth** [1] - 3324:15
**Frailes** [6] - 3215:21, 3215:23, 3216:1, 3216:4, 3216:5, 3216:10
**frame** [2] - 3140:20, 3197:8, 3249:12
**frames** [1] - 3250:20
**fraud** [13] - 3247:14, 3253:17, 3253:19, 3254:4, 3257:19, 3257:21, 3257:25, 3258:10, 3258:18, 3258:20, 3259:7, 3339:14, 3340:11
**frauds** [3] - 3132:16, 3261:18, 3339:14
**free** [2] - 3187:5, 3333:14
**frequency** [2] - 3277:15,

3277:16
**Friday** [1] - 3248:2
**friend** [1] - 3134:5
**friends** [3] - 3156:19, 3167:21, 3176:1
**front** [4] - 3167:7, 3185:19, 3196:7, 3210:2
**full** [1] - 3266:17
**fun** [1] - 3317:9
**functionality** [1] - 3338:10
**fund** [4] - 3144:22, 3145:18, 3176:20, 3252:21
**Fund** [57] - 3135:21, 3135:24, 3136:5, 3137:2, 3137:22, 3138:6, 3138:24, 3139:19, 3140:23, 3141:24, 3142:5, 3142:14, 3142:20, 3143:5, 3146:21, 3147:3, 3147:13, 3147:18, 3147:23, 3149:4, 3149:12, 3151:5, 3152:10, 3152:13, 3164:10, 3164:12, 3164:19, 3165:3, 3196:7, 3199:6, 3199:9, 3199:20, 3200:6, 3200:7, 3200:9, 3207:22, 3207:23, 3207:25, 3208:5, 3209:23, 3211:3, 3211:8, 3211:10, 3211:15, 3211:19, 3211:23, 3212:14, 3212:19, 3212:25, 3214:22, 3220:5, 3220:11, 3222:19, 3236:11, 3236:18, 3244:16, 3244:24
**funds** [11] - 3161:8, 3163:23, 3167:13, 3227:18, 3251:1, 3251:4, 3251:6, 3300:6, 3300:24, 3301:22, 3313:10
**future** [1] - 3239:13
**fuzzy** [1] - 3205:25

---

**G**

---

**g-mail** [3] - 3224:5, 3240:3
**Gaarn** [9] - 3173:10, 3175:16, 3175:18, 3180:15, 3181:6, 3181:8, 3181:13, 3182:6, 3183:9
**Galioto** [8] - 3233:8, 3233:10, 3233:20, 3234:7, 3234:14, 3234:20, 3243:17, 3244:13
**Garden** [1] - 3246:3
**gathering** [1] - 3163:24
**Gaudet** [9] - 3200:23, 3200:25, 3201:4, 3201:16, 3201:21, 3202:1, 3202:8, 3202:12, 3203:24,

13

3215:17, 3215:20, 3215:25, 3261:6, 3262:23, 3263:1, 3263:5
**Gaudet's** [1] - 3265:10, 3265:13
**general** [4] - 3246:23, 3247:11, 3279:23, 3297:2
**generally** [3] - 3312:10, 3312:12, 3314:21
**gentleman** [1] - 3278:16
**Gentry** [5] - 3173:10, 3180:15, 3181:7, 3182:6, 3183:9
**given** [7] - 3203:11, 3215:7, 3222:10, 3222:15, 3232:24, 3235:22, 3255:20
**gleaned** [2] - 3247:6, 3247:8
**glen** [2] - 3265:7, 3265:15
**Glen** [2] - 3265:20, 3336:15
**global** [3] - 3148:3, 3252:21, 3256:7
**Global** [57] - 3135:20, 3135:24, 3136:4, 3137:2, 3137:22, 3138:6, 3138:23, 3139:18, 3140:23, 3141:24, 3142:4, 3142:14, 3142:20, 3143:4, 3146:20, 3147:3, 3147:12, 3147:18, 3147:23, 3149:4, 3149:11, 3151:5, 3152:10, 3152:12, 3164:10, 3164:11, 3164:19, 3165:3, 3196:6, 3199:6, 3199:8, 3199:20, 3200:6, 3200:7, 3200:9, 3207:22, 3207:23, 3207:24, 3208:5, 3209:23, 3211:3, 3211:8, 3211:10, 3211:14, 3211:18, 3211:22, 3212:13, 3212:19, 3212:24, 3214:21, 3220:5, 3220:10, 3222:19, 3236:11, 3236:18, 3244:16, 3244:24
**golf** [2] - 3201:1, 3245:2
**Gonchar** [12] - 3241:11, 3268:24, 3288:15, 3289:14, 3289:15, 3290:24, 3292:5, 3325:16, 3325:25, 3326:8, 3326:19, 3331:1
**gonna** [2] - 3143:5, 3214:11
**government** [57] - 3140:8, 3202:19, 3230:12, 3234:15, 3234:25, 3235:3, 3246:6, 3246:21, 3247:9, 3247:12, 3248:20, 3248:21, 3249:2, 3249:24, 3250:2, 3250:23, 3252:6,

3253:3, 3254:25, 3255:19, 3256:12, 3257:17, 3257:20, 3258:23, 3258:25, 3259:22, 3262:4, 3266:7, 3269:5, 3270:7, 3273:3, 3280:10, 3281:16, 3282:3, 3282:4, 3282:9, 3289:2, 3297:15, 3305:5, 3310:11, 3310:19, 3311:20, 3312:12, 3314:20, 3315:6, 3316:16, 3316:25, 3317:13, 3318:13, 3319:1, 3321:12, 3321:19, 3323:3, 3324:16, 3326:15, 3326:16, 3338:1
**Government** [42] - 3130:14, 3132:21, 3168:13, 3192:23, 3206:5, 3269:10, 3270:13, 3273:8, 3280:19, 3283:2, 3289:8, 3294:10, 3297:21, 3299:8, 3299:13, 3301:16, 3303:19, 3305:10, 3310:24, 3313:2, 3315:11, 3316:23, 3319:6, 3320:6, 3342:25, 3343:1, 3343:2, 3343:3, 3343:4, 3343:6, 3343:20, 3343:22, 3343:24, 3344:1, 3344:3, 3344:5, 3344:7, 3344:8, 3344:10, 3344:11, 3344:13, 3344:14
**Government's** [20] - 3268:10, 3269:18, 3272:5, 3279:22, 3284:3, 3284:23, 3286:13, 3287:8, 3288:5, 3293:17, 3296:19, 3298:22, 3303:4, 3304:2, 3304:12, 3306:2, 3306:15, 3306:22, 3307:12
**government's** [7] - 3226:11, 3246:24, 3250:3, 3250:20, 3312:20, 3340:3, 3340:24
**grand** [1] - 3300:16
**grant** [1] - 3316:2
**grave** [1] - 3250:21
**gravely** [1] - 3255:10
**great** [1] - 3167:1
**greater** [1] - 3221:19
**greet** [1] - 3336:4
**Greg** [1] - 3288:19
**grievance** [1] - 3256:9
**ground** [2] - 3167:14, 3247:12
**grounds** [2] - 3132:16, 3168:13
**group** [16] - 3141:1, 3141:6, 3159:11, 3161:4, 3161:14, 3169:18, 3173:9,

3173:12, 3173:18, 3180:18, 3193:25, 3194:23, 3282:14, 3339:16, 3339:24, 3340:19
**GSF** [17] - 3142:4, 3142:6, 3143:8, 3143:13, 3143:15, 3143:17, 3143:21, 3144:2, 3144:7, 3144:10, 3144:13, 3144:18, 3144:25, 3213:10, 3214:11, 3214:13, 3233:4
**guarantee** [1] - 3316:5
**guaranteed** [1] - 3241:12
**guarantees** [2] - 3268:21, 3325:16
**guarantor** [1] - 3288:14
**guarantors** [7] - 3268:23, 3268:24, 3279:2, 3279:18, 3293:5, 3326:1, 3326:10
**guard** [1] - 3185:19
**guess** [8] - 3138:10, 3138:12, 3149:17, 3149:18, 3157:13, 3166:12, 3157:13, 3186:19
**guidedog** [1] - 3330:23, 3330:24
**guilty** [1] - 3193:22
**guy** [1] - 3220:17
**guys** [2] - 3152:4, 3317:9

---

# H

**habit** [1] - 3156:6
**HALEY** [72] - 3130:20, 3130:22, 3132:9, 3132:20, 3140:9, 3140:13, 3160:2, 3162:17, 3165:25, 3182:2, 3198:5, 3198:7, 3198:10, 3203:4, 3203:21, 3204:1, 3204:6, 3205:8, 3205:10, 3206:4, 3209:12, 3209:17, 3215:10, 3216:8, 3219:5, 3220:19, 3222:4, 3224:22, 3225:7, 3225:18, 3226:18, 3226:21, 3231:21, 3241:23, 3257:15, 3262:10, 3269:8, 3270:6, 3270:11, 3273:6, 3280:13, 3280:17, 3281:19, 3281:22, 3282:24, 3289:5, 3294:8, 3297:18, 3297:19, 3299:11, 3301:13, 3303:17, 3305:8, 3310:22, 3312:24, 3315:9, 3316:19, 3319:4, 3320:4, 3321:2, 3321:4, 3322:8, 3322:25, 3323:11, 3335:7, 3336:10, 3337:19, 3337:24, 3338:15, 3342:9, 3342:18, 3342:20

**Haley** [16] - 3159:24, 3165:24, 3203:2, 3205:5, 3205:7, 3206:13, 3207:2, 3218:8, 3218:12, 3219:11, 3224:20, 3224:25, 3257:14, 3321:5, 3330:3, 3338:7
**half** [9] - 3190:12, 3190:23, 3192:22, 3192:24, 3203:14, 3203:15, 3228:22, 3260:2, 3268:7
**Halsey** [1] - 3288:19
**hand** [15] - 3132:12, 3268:9, 3269:18, 3272:4, 3279:15, 3288:4, 3293:17, 3298:21, 3301:9, 3303:3, 3304:12, 3310:11, 3311:20, 3318:12, 3341:1
**handing** [1] - 3296:19
**handle** [1] - 3139:2
**handling** [1] - 3161:19
**handwrite** [1] - 3232:18
**handwriting** [2] - 3232:15, 3337:15
**hangar** [3] - 3137:16, 3137:19, 3223:2
**happy** [1] - 3193:8
**Harbor** [3] - 3209:11, 3209:16
**Harbour** [3] - 3209:7, 3221:22, 3225:17
**hard** [3] - 3140:5, 3157:20, 3166:21
**hav** [1] - 3144:17
**Hawaii** [18] - 3147:13, 3172:9, 3208:19, 3208:23, 3209:1, 3218:1, 3218:4, 3218:5, 3218:21, 3219:2, 3221:22, 3225:3, 3225:5, 3225:16, 3232:2, 3237:7, 3261:18, 3339:14
**Hawaiian** [3] - 3229:13, 3229:21, 3230:2
**header** [1] - 3224:5
**heading** [1] - 3294:12
**hear** [4] - 3194:14, 3204:8, 3246:15, 3341:5
**heard** [6] - 3152:7, 3192:20, 3209:25, 3222:3, 3265:1, 3336:8
**hearing** [2] - 3171:12, 3197:5
**hearsay** [9] - 3132:15, 3150:8, 3165:22, 3168:13, 3186:7, 3191:4, 3191:7, 3196:23, 3204:2
**held** [6] - 3175:7, 3175:12, 3185:16, 3296:10, 3300:16, 3313:11
**Helen** [3] - 3311:24,

**14**

3319:14

**hello** [1] - 3327:17

**help** [3] - 3140:19, 3152:24, 3293:8

**helping** [2] - 3246:3, 3332:5

**helps** [1] - 3153:2

**hesitation** [1] - 3227:5

**highlighted** [6] - 3166:24, 3177:14, 3177:15, 3179:22, 3188:23, 3324:3

**Highway** [1] - 3130:21

**himself** [4] - 3192:8, 3255:24, 3256:1, 3256:5

**hire** [1] - 3211:11

**histories** [1] - 3272:14

**history** [10] - 3272:9, 3272:16, 3273:10, 3274:5, 3304:17, 3304:19, 3304:22, 3305:12, 3307:22, 3324:19

**hock** [1] - 3286:8

**hockey** [30] - 3136:13, 3136:22, 3137:9, 3139:16, 3143:11, 3144:19, 3146:7, 3146:20, 3147:12, 3153:11, 3155:15, 3158:19, 3158:21, 3159:9, 3161:15, 3174:2, 3174:25, 3175:1, 3175:22, 3181:11, 3184:21, 3185:24, 3186:24, 3191:21, 3191:25, 3197:8, 3239:7, 3239:11, 3265:7, 3311:15

**hold** [2] - 3175:10, 3311:5

**holding** [1] - 3313:23

**home** [4] - 3200:12, 3275:12, 3332:1, 3335:18

**honest** [2] - 3192:17, 3240:24

**Honor** [56] - 3132:8, 3132:11, 3132:20, 3133:18, 3140:2, 3140:9, 3140:13, 3150:7, 3152:2, 3159:17, 3159:20, 3161:2, 3162:13, 3165:21, 3168:25, 3178:12, 3178:18, 3183:21, 3190:3, 3191:11, 3198:4, 3198:5, 3198:6, 3198:22, 3204:10, 3204:12, 3204:13, 3204:24, 3215:15, 3219:9, 3243:25, 3251:8, 3256:24, 3256:25, 3257:1, 3257:13, 3257:22, 3261:5, 3262:11, 3262:13, 3263:7, 3263:12, 3263:24, 3266:2, 3269:7, 3280:17, 3281:18, 3281:19, 3289:4, 3297:18, 3301:12, 3305:8, 3320:3,

3322:8, 3322:11, 3322:25

**HONORABLE** [1] - 3130:11

**honored** [1] - 3230:15

**hook** [1] - 3326:8

**hope** [4] - 3173:7, 3217:13, 3217:23, 3284:18

**hopefully** [1] - 3132:11

**hoping** [3] - 3144:23, 3145:3, 3194:24

**hostile** [1] - 3192:15

**hour** [5] - 3190:12, 3190:23, 3192:22, 3192:24, 3260:2

**hour-and-a-half** [4] - 3190:12, 3190:23, 3192:22, 3192:24

**hours** [6] - 3170:3, 3170:4, 3191:17, 3191:23, 3307:23

**house** [5] - 3135:13, 3185:4, 3238:4, 3265:17, 3287:25

**huge** [1] - 3339:17

**Hughes** [3] - 3175:24, 3176:12, 3176:15

**hurt** [3] - 3138:8, 3138:15, 3142:16

---

**I**

**idea** [5] - 3176:18, 3211:6, 3220:18, 3224:19, 3231:2

**identification** [12] - 3134:21, 3139:22, 3152:20, 3152:22, 3174:19, 3181:22, 3187:3, 3188:19, 3189:23, 3202:15, 3226:11, 3243:4

**identified** [3] - 3282:16, 3326:14, 3326:16

**identify** [5] - 3250:24, 3252:25, 3271:9, 3311:7, 3323:14

**identity** [1] - 3249:18

**illegal** [1] - 3217:4

**imaging** [1] - 3337:20

**immediately** [1] - 3163:10

**impact** [2] - 3277:21, 3277:23

**imparting** [1] - 3141:9

**impeach** [1] - 3193:2

**implemented** [1] - 3314:10

**implicate** [1] - 3253:6

**implicated** [1] - 3247:11

**importance** [1] - 3193:3

**important** [6] - 3143:4, 3145:3, 3193:9, 3214:11, 3255:9, 3325:15

**importantly** [2] - 3271:15, 3271:19

**impression** [2] - 3230:3, 3230:6

**improper** [2] - 3243:9, 3243:11

**improperly** [1] - 3181:7

**in-person** [1] - 3234:9

**inadmissible** [4] - 3194:13, 3196:23, 3197:2, 3197:10

**inappropriate** [1] - 3248:10

**Inc** [5] - 3301:19, 3302:3, 3311:2, 3311:3, 3313:22

**incidentally** [2] - 3239:18, 3326:4

**include** [1] - 3277:2

**included** [2] - 3173:9, 3277:1

**includes** [1] - 3246:5

**including** [5] - 3148:18, 3161:5, 3203:20, 3319:22, 3328:15

**incoming** [1] - 3301:22

**indeed** [2] - 3230:13, 3234:2

**independent** [3] - 3206:7, 3249:8, 3282:18

**Indiana** [2] - 3267:5, 3307:4

**indicate** [7] - 3179:11, 3187:6, 3232:6, 3258:6, 3258:13, 3324:15, 3324:16

**indicated** [4] - 3230:24, 3232:5, 3242:7, 3247:21

**indicates** [2] - 3292:1, 3324:5

**individual** [5] - 3195:6, 3265:5, 3308:15, 3325:2, 3326:10

**individuals** [12] - 3137:3, 3137:24, 3141:1, 3141:6, 3141:20, 3146:10, 3147:16, 3163:4, 3192:8, 3196:9, 3267:20, 3330:20

**inextricably** [1] - 3251:10

**info** [1] - 3164:2

**information** [44] - 3141:9, 3141:19, 3141:23, 3143:17, 3150:4, 3156:3, 3160:9, 3161:18, 3164:5, 3164:20, 3165:2, 3170:12, 3170:16, 3170:21, 3170:23, 3170:25, 3171:2, 3174:5, 3208:12, 3226:6, 3246:17, 3248:21, 3249:17, 3249:18, 3249:20, 3250:5, 3250:7, 3251:11, 3254:8, 3254:16, 3257:24, 3272:19, 3272:21, 3272:22, 3279:18, 3279:19, 3282:11, 3282:12,

3282:13, 3301:22, 3325:10, 3331:16

**initial** [2] - 3163:23, 3195:24

**inked** [1] - 3334:23

**input** [2] - 3326:22

**inputs** [2] - 3298:7, 3298:8

**inquiry** [1] - 3237:21

**inspected** [3] - 3275:19, 3277:14, 3278:1

**inspection** [1] - 3261:15

**inspections** [1] - 3276:7

**instance** [3] - 3230:18, 3241:17

**instructed** [10] - 3199:15, 3200:3, 3200:13, 3200:14, 3233:3, 3233:13, 3233:16, 3242:9, 3242:22, 3244:13

**instruction** [3] - 3168:11, 3263:19, 3335:4

**instructions** [1] - 3264:20

**instrument** [1] - 3329:10

**intend** [3] - 3197:17, 3248:12, 3249:1

**intended** [2] - 3141:20, 3244:20

**intending** [2] - 3218:6, 3247:16

**intent** [2] - 3229:7, 3241:19

**intention** [1] - 3196:21

**intents** [1] - 3147:11

**interact** [1] - 3336:5

**interaction** [1] - 3233:23

**interest** [26] - 3156:21, 3175:12, 3196:6, 3219:13, 3230:15, 3276:18, 3285:7, 3316:4, 3316:12, 3318:11, 3318:20, 3318:24, 3319:8, 3319:10, 3327:20, 3327:23, 3328:3, 3328:14, 3328:15, 3328:17, 3328:18, 3329:3, 3329:5, 3329:6, 3329:12, 3333:18

**interested** [7] - 3172:13, 3274:17, 3274:25, 3275:15, 3276:13, 3276:16, 3323:11

**interesting** [1] - 3336:13

**interests** [1] - 3175:7

**interior** [4] - 3275:23, 3275:24, 3276:3, 3298:5

**intern** [1] - 3336:3

**international** [3] - 3319:15, 3319:17, 3319:19

**internship** [1] - 3336:13

**interpret** [2] - 3323:24, 3323:25

**interrupt** [2] - 3154:23, 3324:18

**interrupting** [1] - 3292:17

**15**

interwoven [2] - 3247:5, 3251:10
intonation [1] - 3235:22
introduced [1] - 3330:3
introduction [1] - 3332:1
invest [6] - 3148:9, 3151:9, 3151:16, 3188:7, 3218:6
invested [18] - 3137:16, 3148:5, 3149:19, 3153:12, 3174:2, 3181:11, 3185:15, 3203:10, 3208:19, 3208:23, 3215:22, 3216:3, 3218:5, 3219:2, 3219:3, 3225:3, 3227:23, 3245:1
investigate [1] - 3216:22
investigation [3] - 3141:3, 3141:10, 3201:17
investigators [1] - 3222:1
investing [2] - 3147:12, 3173:1
investment [18] - 3134:8, 3136:16, 3137:4, 3167:3, 3172:18, 3176:3, 3176:4, 3176:5, 3176:14, 3188:2, 3189:2, 3195:25, 3215:21, 3216:24, 3216:25, 3217:10, 3230:19, 3284:15
investments [17] - 3135:16, 3136:12, 3136:13, 3143:7, 3147:13, 3153:22, 3153:23, 3154:1, 3172:1, 3206:21, 3214:12, 3216:20, 3232:2, 3237:22, 3239:4, 3239:5, 3318:6
investors [7] - 3136:22, 3138:8, 3138:15, 3143:11, 3148:18, 3225:15, 3226:3
investors' [2] - 3155:2, 3155:24
invoices [3] - 3261:16, 3340:1, 3340:6
invoked [1] - 3257:18
invoking [1] - 3257:20
involved [17] - 3135:15, 3142:13, 3143:15, 3148:3, 3151:4, 3172:3, 3196:4, 3201:2, 3213:14, 3215:21, 3228:1, 3239:14, 3240:22, 3267:19, 3267:20, 3271:9, 3331:18
involvement [1] - 3268:3
involving [4] - 3232:1, 3236:12, 3239:4, 3292:20
irrelevant [2] - 3197:3, 3200:11
Island [1] - 3206:19
Islandia [1] - 3130:22
Isle [4] - 3199:6, 3199:9, 3205:15, 3231:25
Islip [3] - 3130:6, 3130:15, 3131:21

issue [19] - 3165:2, 3168:21, 3219:9, 3246:3, 3246:16, 3247:4, 3247:15, 3247:25, 3250:14, 3250:21, 3254:19, 3255:9, 3258:13, 3259:10, 3259:14, 3261:10, 3286:6, 3336:7, 3338:21
issues [8] - 3148:2, 3191:8, 3197:5, 3198:3, 3246:20, 3258:4, 3260:5, 3308:25
italicized [1] - 3232:4
item [2] - 3300:18, 3300:20
items [3] - 3286:15, 3301:5, 3339:16
itself [5] - 3225:19, 3236:15, 3259:5, 3268:17, 3328:12
IV [4] - 3199:6, 3199:9, 3205:15, 3231:25

**J**

Jackson [1] - 3337:5
JAMES [1] - 3130:16
jet [1] - 3211:15
job [2] - 3206:16, 3206:17
Joe [1] - 3136:23
John [14] - 3134:16, 3135:3, 3139:24, 3142:3, 3184:22, 3208:11, 3232:23, 3237:20, 3237:25, 3238:2, 3238:6, 3238:7, 3337:11, 3337:16
John's [2] - 3135:13, 3238:4
Johnny [2] - 3265:5, 3265:11
join [3] - 3162:1, 3182:2, 3204:6
joint [2] - 3232:1, 3262:4
jointly [1] - 3333:14
JOSEPH [1] - 3130:11
Jowdy [106] - 3136:8, 3136:11, 3138:7, 3138:8, 3138:14, 3138:15, 3139:2, 3142:10, 3142:16, 3142:21, 3143:23, 3144:1, 3147:17, 3148:11, 3148:25, 3149:12, 3152:14, 3153:12, 3153:21, 3154:1, 3155:1, 3155:7, 3155:9, 3155:22, 3156:4, 3156:13, 3156:16, 3156:19, 3156:20, 3156:21, 3157:6, 3157:25, 3158:13, 3161:7, 3161:11,

3161:19, 3162:11, 3163:6, 3163:11, 3164:1, 3164:16, 3164:21, 3167:4, 3167:24, 3172:17, 3201:18, 3201:23, 3202:2, 3202:18, 3203:11, 3203:18, 3207:1, 3207:3, 3207:11, 3207:25, 3208:9, 3209:1, 3216:10, 3216:20, 3217:7, 3218:1, 3218:13, 3218:16, 3218:21, 3219:13, 3220:3, 3220:9, 3223:19, 3227:17, 3228:1, 3228:4, 3228:8, 3228:12, 3228:18, 3228:21, 3228:24, 3229:6, 3229:13, 3229:22, 3230:2, 3230:15, 3236:23, 3239:5, 3240:22, 3241:2, 3241:7, 3241:13, 3241:16, 3244:20, 3252:24, 3253:11, 3265:2, 3265:23, 3268:19, 3271:11, 3271:22, 3278:16, 3283:23, 3323:19, 3323:21, 3323:25, 3324:7, 3325:6, 3326:4, 3330:23
Jowdy's [4] - 3163:22, 3203:20, 3216:16, 3241:5
Jozef [1] - 3331:1
judge [10] - 3154:18, 3191:5, 3219:5, 3224:22, 3225:8, 3231:21, 3241:23, 3242:13, 3245:7, 3339:10
Judge [26] - 3132:21, 3139:12, 3150:9, 3150:14, 3160:2, 3165:25, 3181:20, 3182:23, 3183:13, 3192:3, 3192:6, 3194:22, 3196:11, 3197:14, 3198:7, 3198:10, 3198:14, 3206:4, 3269:8, 3282:24, 3289:6, 3299:11, 3301:13, 3312:24, 3320:4, 3323:12
JUDGE [1] - 3130:11
July [9] - 3147:6, 3179:25, 3198:9, 3231:23, 3305:13, 3305:18, 3306:4, 3306:8, 3311:1
jump [1] - 3188:22
jumping [2] - 3187:9, 3236:24
June [15] - 3130:9, 3166:6, 3166:11, 3169:19, 3170:15, 3286:15, 3287:9, 3293:10, 3301:18, 3302:6, 3303:21, 3313:13, 3332:11, 3334:23, 3341:9
Juneau [8] - 3136:23, 3138:20, 3139:3, 3139:8, 3142:17, 3143:5, 3152:8,

3214:11
JUROR [4] - 3308:12, 3308:18, 3308:24, 3309:2
juror [4] - 3197:25, 3198:8, 3308:5, 3308:9
JURORS [1] - 3133:2
jury [27] - 3130:11, 3132:24, 3133:1, 3141:15, 3151:13, 3168:12, 3190:6, 3190:10, 3190:21, 3191:9, 3191:20, 3191:22, 3192:14, 3197:5, 3198:12, 3198:20, 3245:12, 3262:2, 3262:17, 3270:15, 3289:10, 3308:7, 3309:6, 3310:1, 3313:4, 3332:12, 3335:20

**K**

K-93 [1] - 3224:25
K-97 [2] - 3322:12, 3330:4
K-98 [1] - 3323:9
Kaiser [29] - 3134:5, 3134:7, 3134:11, 3134:12, 3134:16, 3134:17, 3135:3, 3135:9, 3139:25, 3142:3, 3146:4, 3173:10, 3176:1, 3176:13, 3184:22, 3185:1, 3185:7, 3186:2, 3191:14, 3199:4, 3201:17, 3201:22, 3208:11, 3232:24, 3237:20, 3238:1, 3238:2, 3238:6, 3265:5
keep [5] - 3157:16, 3194:15, 3211:11, 3266:22, 3285:19
keeping [1] - 3151:3
Kellie [3] - 3287:11, 3287:13, 3287:14
KELLY [1] - 3130:14
Ken [28] - 3163:11, 3207:1, 3207:3, 3207:25, 3218:13, 3218:16, 3218:21, 3228:21, 3228:24, 3229:6, 3229:13, 3229:22, 3230:2, 3230:14, 3239:5, 3240:22, 3241:2, 3241:5, 3241:13, 3241:16, 3265:2, 3268:19, 3271:15, 3323:19, 3323:20, 3325:6, 3330:23
Kenner [104] - 3130:23, 3134:16, 3135:23, 3138:11, 3139:24, 3142:3, 3146:4, 3157:12, 3157:22, 3158:8, 3162:10, 3162:23, 3163:1, 3171:5, 3171:8, 3171:17, 3171:22, 3172:1, 3172:7, 3172:16, 3173:10, 3185:1, 3199:4, 3204:16,

3204:21, 3205:6, 3205:11,
3209:6, 3209:11, 3209:15,
3213:22, 3214:5, 3214:8,
3214:15, 3216:3, 3218:5,
3218:15, 3218:22, 3219:4,
3219:24, 3220:14,
3221:10, 3226:18,
3226:23, 3229:20, 3230:3,
3230:8, 3231:17, 3231:24,
3232:8, 3232:23, 3233:11,
3233:17, 3233:24, 3236:2,
3236:10, 3236:12,
3236:19, 3236:20, 3237:7,
3237:11, 3237:21, 3238:6,
3238:11, 3239:4, 3239:20,
3240:12, 3241:10,
3252:23, 3260:1, 3267:20,
3268:24, 3271:12,
3271:13, 3274:10, 3275:8,
3279:25, 3280:1, 3281:2,
3281:6, 3282:18, 3283:6,
3283:15, 3288:13,
3288:24, 3289:14,
3290:24, 3292:4, 3322:8,
3322:13, 3322:15,
3322:16, 3322:25,
3323:10, 3324:14,
3325:15, 3325:25, 3326:8,
3326:19, 3330:24, 3332:1,
3344:16, 3344:17
**KENNER** [1] - 3130:7
**kept** [5] - 3237:18,
3272:14, 3272:22, 3294:3,
3304:22
**key** [3] - 3249:25, 3293:3,
3293:4
**kind** [6] - 3140:19,
3181:17, 3187:5, 3205:24,
3209:10, 3220:9
**kindly** [2] - 3238:16,
3323:24
**knowing** [3] - 3156:7,
3174:13, 3209:10
**knowingly** [2] - 3171:2,
3220:25
**knowledge** [20] - 3143:17,
3144:13, 3149:21,
3152:12, 3155:2, 3155:25,
3167:14, 3167:19, 3176:8,
3203:18, 3204:3, 3227:17,
3237:25, 3253:7, 3270:2,
3311:16, 3322:22,
3322:23, 3324:9, 3329:16
**known** [10] - 3137:17,
3175:2, 3175:7, 3179:16,
3182:18, 3205:6, 3211:16,
3223:11, 3230:12, 3318:21
**knows** [1] - 3192:1
**Komatireddy** [1] - 3338:20
**KOMATIREDDY** [54] -

3130:16, 3247:2, 3247:19,
3249:15, 3252:13, 3253:9,
3256:24, 3257:22, 3260:4,
3261:10, 3261:24, 3262:1,
3266:7, 3267:2, 3269:5,
3269:11, 3270:7, 3270:14,
3273:3, 3273:9, 3280:10,
3280:20, 3281:16, 3283:4,
3289:2, 3289:9, 3294:6,
3297:15, 3299:8, 3301:9,
3303:14, 3305:5, 3308:4,
3310:4, 3310:19, 3312:19,
3312:22, 3315:6, 3316:15,
3319:1, 3319:24, 3320:25,
3322:10, 3323:2, 3323:6,
3329:18, 3335:3, 3338:22,
3339:13, 3339:22, 3340:5,
3341:1, 3341:7, 3342:16
**Kristen** [3] - 3236:12,
3236:21, 3236:22

# L

**LaGuard** [2] - 3336:16,
3336:18
**land** [3] - 3216:4, 3217:15,
3225:4
**landed** [1] - 3277:17
**language** [1] - 3250:20
**Lanie** [1] - 3336:15
**LaPinta** [13] - 3245:13,
3245:14, 3246:2, 3246:25,
3247:5, 3247:17, 3248:23,
3249:5, 3249:12, 3249:23,
3250:15, 3257:3, 3258:2
**LAPINTA** [10] - 3254:2,
3254:6, 3256:4, 3256:15,
3256:22, 3257:10, 3259:9,
3259:19, 3259:24, 3262:3
**laptop** [3] - 3337:8,
3338:10, 3338:13
**large** [1] - 3237:20
**largely** [1] - 3132:17
**larger** [2] - 3187:4, 3188:20
**LaRusso** [54] - 3133:6,
3133:17, 3151:22,
3168:12, 3190:11,
3196:10, 3198:13, 3207:2,
3207:13, 3208:5, 3211:7,
3212:17, 3213:2, 3213:9,
3216:14, 3217:14, 3218:8,
3220:21, 3220:25,
3221:14, 3222:23,
3223:21, 3224:1, 3235:3,
3235:9, 3236:3, 3240:19,
3241:25, 3242:2, 3242:4,
3242:13, 3243:9, 3243:10,
3245:5, 3245:7, 3257:12,
3310:21, 3312:25, 3315:8,
3316:20, 3320:3, 3322:11,

3323:8, 3327:7, 3327:8,
3327:10, 3336:9, 3337:1,
3339:5, 3340:16, 3341:6,
3342:11, 3342:22
**LARUSSO** [88] - 3131:2,
3131:4, 3132:8, 3133:18,
3133:21, 3139:12,
3139:14, 3140:2, 3140:17,
3150:9, 3150:14, 3150:21,
3151:24, 3152:3, 3152:6,
3154:18, 3154:20,
3156:11, 3157:1, 3159:3,
3159:17, 3159:25, 3160:5,
3161:2, 3162:1, 3162:4,
3162:13, 3162:20,
3165:16, 3165:20, 3166:5,
3168:25, 3169:1, 3178:12,
3182:23, 3183:13,
3183:20, 3184:6, 3184:8,
3191:11, 3192:3, 3193:24,
3194:22, 3195:5, 3195:14,
3195:21, 3195:24,
3196:11, 3196:20,
3197:14, 3198:4, 3198:14,
3198:22, 3202:21,
3202:23, 3204:9, 3204:24,
3257:13, 3260:3, 3261:5,
3261:9, 3262:11, 3262:21,
3263:7, 3263:12, 3264:3,
3264:18, 3264:24, 3266:1,
3269:7, 3270:5, 3270:10,
3273:5, 3280:12, 3281:18,
3289:4, 3292:17, 3293:1,
3294:7, 3297:17, 3299:10,
3301:12, 3303:16, 3305:7,
3319:3, 3335:1, 3342:5,
3342:13
**LaRusso's** [1] - 3213:18
**last** [12] - 3152:1, 3155:23,
3236:6, 3238:16, 3248:2,
3278:1, 3282:22, 3293:24,
3293:25, 3314:24, 3320:16
**lastly** [3] - 3170:15,
3226:10, 3265:15
**late** [5] - 3163:15, 3273:25,
3328:9, 3334:22
**laugh** [1] - 3317:6
**Law** [2] - 3301:24, 3306:5
**law** [3] - 3246:9, 3248:5
**lawsuit** [57] - 3148:4,
3149:12, 3152:16,
3152:18, 3160:10,
3160:23, 3167:22,
3173:16, 3174:16,
3175:22, 3180:24,
3182:21, 3190:16,
3190:17, 3190:18,
3190:22, 3191:1, 3191:18,
3191:20, 3191:25, 3192:3,
3193:20, 3193:23,

3196:25, 3197:2, 3197:6,
3207:10, 3207:25,
3208:10, 3208:18,
3208:21, 3208:24, 3209:5,
3209:9, 3209:20, 3210:1,
3211:19, 3213:15, 3220:8,
3223:16, 3223:17,
3232:23, 3232:25,
3241:11, 3253:5, 3290:9,
3290:10, 3291:2, 3292:19,
3314:10, 3315:21, 3326:1,
3326:4, 3326:20, 3331:20
**lawsuits** [23] - 3137:14,
3137:15, 3138:7, 3138:14,
3138:19, 3138:20,
3138:21, 3139:1, 3139:2,
3142:10, 3142:13,
3142:21, 3152:13, 3191:3,
3212:18, 3215:7, 3218:10,
3235:2, 3235:4, 3235:8,
3235:14, 3239:6, 3267:17
**lawyer** [8] - 3145:14,
3158:16, 3199:24, 3212:7,
3212:10, 3242:15,
3251:12, 3258:16
**lawyer's** [2] - 3258:15,
3258:19
**lawyers** [6] - 3191:4,
3191:6, 3211:11, 3249:20,
3258:25, 3260:1
**lawyers'** [1] - 3142:10
**lay** [1] - 3198:17
**leading** [2] - 3206:4,
3222:5
**learn** [4] - 3169:15,
3229:20, 3229:22, 3256:6
**learned** [9] - 3154:7,
3189:19, 3219:12, 3247:6,
3247:8, 3254:8, 3275:19,
3276:7, 3278:11
**leasing** [4] - 3311:2,
3311:3, 3313:22, 3315:14
**leasing's** [1] - 3318:20
**least** [14] - 3150:3, 3179:7,
3193:10, 3225:2, 3231:19,
3233:24, 3235:15, 3238:5,
3238:7, 3249:25, 3255:19,
3315:18, 3324:8, 3326:7
**leave** [2] - 3140:4, 3330:1
**leaves** [2] - 3245:12,
3335:20
**Led** [2] - 3199:6, 3199:9
**led** [1] - 3202:4
**ledger** [4] - 3250:17,
3251:8, 3251:10, 3251:11
**left** [1] - 3323:23
**legal** [7] - 3138:6, 3246:20,
3247:25, 3249:10, 3258:4,
3259:11, 3282:14
**legally** [1] - 3136:8

**Lehman** [1] - 3156:17
**lending** [1] - 3218:15
**lengthy** [2] - 3132:15, 3249:24
**less** [1] - 3166:19
**lessons** [1] - 3201:2
**letter** [21] - 3191:1, 3197:1, 3197:24, 3198:1, 3198:3, 3225:1, 3231:23, 3231:24, 3232:7, 3239:21, 3240:17, 3247:20, 3248:20, 3248:22, 3249:24, 3250:1, 3255:16, 3257:16, 3257:18, 3308:11, 3308:22
**letters** [1] - 3252:17
**Liability** [2] - 3205:15, 3293:22
**liability** [1] - 3294:16
**liable** [1] - 3161:7
**lie** [2] - 3194:3, 3194:7
**lien** [9] - 3134:1, 3237:3, 3277:5, 3279:2, 3298:4, 3298:6, 3301:1, 3314:1, 3314:19
**liens** [4] - 3298:1, 3298:3, 3298:10, 3298:15
**limited** [4] - 3194:13, 3250:4, 3294:16, 3318:6
**Limited** [2] - 3205:15, 3293:22
**limiting** [1] - 3335:4
**line** [18] - 3208:22, 3213:10, 3252:19, 3257:24, 3257:25, 3275:13, 3277:2, 3279:20, 3285:1, 3286:15, 3300:17, 3300:20, 3301:5, 3302:13, 3303:25, 3324:15, 3339:16
**lines** [2] - 3209:14, 3252:10
**lineup** [1] - 3335:23
**liquidation** [1] - 3330:18
**list** [2] - 3153:11, 3222:14
**listed** [4] - 3176:16, 3205:24, 3320:16, 3331:15
**listen** [1] - 3335:17
**listened** [2] - 3192:21, 3221:10
**listening** [1] - 3191:10
**listing** [2] - 3179:4, 3330:19
**lists** [1] - 3330:14
**literally** [1] - 3167:11
**litigation** [6] - 3137:13, 3138:11, 3179:13, 3193:17, 3236:12, 3236:20
**live** [1] - 3267:4
**lives** [1] - 3308:18
**LLC** [27] - 3175:2, 3177:7, 3177:21, 3205:15,

3231:25, 3288:13, 3293:22, 3296:25, 3297:5, 3297:10, 3298:17, 3300:9, 3306:1, 3316:1, 3316:3, 3316:13, 3317:1, 3318:22, 3319:11, 3320:1, 3324:5, 3324:7, 3326:12, 3326:13, 3328:16, 3329:4, 3330:6
**loan** [122] - 3154:1, 3154:4, 3154:7, 3155:1, 3155:24, 3156:17, 3156:18, 3179:25, 3180:1, 3180:3, 3180:5, 3180:6, 3180:7, 3180:8, 3180:11, 3186:17, 3186:18, 3186:19, 3186:25, 3187:16, 3187:21, 3219:12, 3219:18, 3220:3, 3228:9, 3230:4, 3230:14, 3230:15, 3236:23, 3236:25, 3237:7, 3241:12, 3241:14, 3241:17, 3267:18, 3267:22, 3267:23, 3268:2, 3268:14, 3268:17, 3268:19, 3268:23, 3269:2, 3269:12, 3270:1, 3270:19, 3270:24, 3272:9, 3272:10, 3272:11, 3272:13, 3272:16, 3273:10, 3273:16, 3274:2, 3274:5, 3274:8, 3275:2, 3276:25, 3280:4, 3280:6, 3280:8, 3281:24, 3281:25, 3283:18, 3285:7, 3285:15, 3286:2, 3286:3, 3289:21, 3289:22, 3290:1, 3295:11, 3295:17, 3295:20, 3296:5, 3296:12, 3297:5, 3297:7, 3299:17, 3299:22, 3300:15, 3300:21, 3301:4, 3304:9, 3304:10, 3304:17, 3304:18, 3304:19, 3304:22, 3305:12, 3305:15, 3305:23, 3306:12, 3306:13, 3306:20, 3307:6, 3308:1, 3313:14, 3314:3, 3314:18, 3316:4, 3323:18, 3324:2, 3325:16, 3325:19, 3325:22, 3328:13, 3328:17, 3328:19, 3329:7, 3329:8, 3329:9, 3330:11, 3330:13, 3332:5, 3340:8
**loaned** [4] - 3218:21, 3229:13, 3229:21, 3230:2
**loaning** [1] - 3272:2
**loans** [16] - 3267:14, 3268:4, 3268:15, 3270:25, 3271:1, 3271:4, 3271:5, 3274:11, 3289:25, 3290:2, 3330:7, 3331:8, 3331:19,

3331:24, 3334:12, 3334:17
**loathe** [1] - 3246:11
**locating** [1] - 3271:14
**locations** [1] - 3265:17
**log** [13] - 3276:23, 3277:7, 3277:8, 3277:11, 3277:18, 3277:22, 3278:4, 3278:5, 3278:10, 3278:11, 3278:14, 3283:22
**look** [46] - 3134:22, 3140:4, 3140:19, 3145:16, 3146:3, 3147:6, 3152:22, 3152:25, 3153:2, 3153:18, 3154:8, 3156:14, 3157:14, 3165:6, 3177:11, 3178:15, 3178:20, 3178:24, 3181:16, 3189:23, 3195:10, 3207:14, 3207:17, 3208:24, 3209:3, 3216:7, 3217:24, 3226:13, 3230:17, 3235:9, 3237:16, 3238:10, 3238:16, 3243:21, 3243:23, 3263:6, 3278:10, 3279:5, 3282:13, 3297:23, 3300:24, 3301:18, 3311:21, 3322:15, 3323:22, 3340:22
**looked** [5] - 3182:8, 3208:17, 3222:7, 3283:21, 3333:6
**looking** [44] - 3145:7, 3147:16, 3150:18, 3159:19, 3170:23, 3173:12, 3179:11, 3214:1, 3235:23, 3236:7, 3251:10, 3268:16, 3269:12, 3269:22, 3270:15, 3270:21, 3272:7, 3273:10, 3273:13, 3273:20, 3273:24, 3278:21, 3279:22, 3281:5, 3287:4, 3287:8, 3288:11, 3289:17, 3294:20, 3299:20, 3299:25, 3305:12, 3306:16, 3307:12, 3310:6, 3310:25, 3313:4, 3313:20, 3314:14, 3315:12, 3317:25, 3319:12, 3320:11, 3339:4
**looks** [11] - 3153:14, 3160:11, 3162:12, 3179:1, 3179:2, 3188:8, 3188:9, 3206:12, 3294:24, 3312:5, 3317:16
**Los** [6] - 3215:21, 3215:22, 3215:25, 3216:4, 3216:5, 3216:10
**losing** [1] - 3339:10
**lost** [2] - 3271:10, 3271:21
**Lucas** [15] - 3136:17,

3153:23, 3163:12, 3163:14, 3201:1, 3203:20, 3206:15, 3206:22, 3217:11, 3217:22, 3218:1, 3218:4, 3228:18, 3244:18, 3244:25
**lucrative** [1] - 3217:13
**lunch** [5] - 3245:10, 3252:4, 3260:2, 3260:5, 3260:7
**lunchtime** [1] - 3259:17
**Lynn** [1] - 3336:16

---

**M**

---

**MacBook** [1] - 3337:22
**mail** [104] - 3139:23, 3140:19, 3141:15, 3141:16, 3141:17, 3141:18, 3142:3, 3146:4, 3147:2, 3147:5, 3147:7, 3147:9, 3149:7, 3149:8, 3150:12, 3150:13, 3151:8, 3151:9, 3151:12, 3151:15, 3155:18, 3157:20, 3157:21, 3161:4, 3161:14, 3162:10, 3162:21, 3163:1, 3163:5, 3164:25, 3165:12, 3165:13, 3165:17, 3166:9, 3168:12, 3168:15, 3168:17, 3168:19, 3168:21, 3168:23, 3169:20, 3169:21, 3169:22, 3170:5, 3170:17, 3190:24, 3191:4, 3191:8, 3191:24, 3193:12, 3193:15, 3194:15, 3195:11, 3195:15, 3196:14, 3196:19, 3196:23, 3197:10, 3213:19, 3221:6, 3224:5, 3224:6, 3224:7, 3224:17, 3224:18, 3236:1, 3236:2, 3236:5, 3239:8, 3239:9, 3239:20, 3239:24, 3239:25, 3240:3, 3281:1, 3281:3, 3281:6, 3281:8, 3281:13, 3282:5, 3283:11, 3283:14, 3283:20, 3284:4, 3284:7, 3284:24, 3286:4, 3286:13, 3286:14, 3286:17, 3287:9, 3303:6, 3303:7, 3308:16, 3308:20, 3311:24, 3313:5, 3313:6
**mailed** [1] - 3194:19
**mailing** [1] - 3282:1
**mails** [26] - 3146:16, 3149:22, 3151:18, 3157:22, 3159:11, 3159:14, 3160:6, 3165:6,

3165:7, 3169:18, 3177:10, 3192:22, 3239:22, 3281:10, 3281:23, 3282:17, 3282:19, 3283:8, 3284:9, 3331:19, 3334:11, 3334:16, 3335:12, 3335:14
**main** [1] - 3276:22
**maintained** [4] - 3282:20, 3321:13, 3322:3, 3323:16
**maintains** [2] - 3282:9, 3282:21
**man** [9] - 3134:18, 3135:9, 3135:17, 3155:11, 3156:18, 3180:4, 3200:23, 3203:7, 3217:7
**management** [9] - 3206:18, 3230:25, 3231:8, 3249:20, 3314:17, 3320:18, 3339:16, 3339:24, 3340:19
**manager** [3] - 3158:9, 3297:1, 3297:11
**managing** [11] - 3175:19, 3206:23, 3231:5, 3320:16, 3320:18, 3320:19, 3320:22, 3320:23, 3324:7, 3324:11, 3324:13
**mandate** [1] - 3254:22
**Manhattan** [3] - 3308:14, 3308:17, 3308:20
**Mar** [7] - 3136:17, 3153:22, 3154:2, 3163:11, 3163:13, 3227:23, 3264:11
**March** [10] - 3135:22, 3139:24, 3140:21, 3142:2, 3158:11, 3158:21, 3159:5, 3274:20, 3284:4, 3320:13
**mark** [2] - 3198:1, 3216:13
**Mark** [1] - 3225:23
**marked** [32] - 3134:20, 3139:21, 3152:20, 3164:23, 3174:18, 3178:16, 3181:20, 3183:17, 3187:2, 3188:18, 3189:22, 3197:25, 3202:14, 3226:10, 3236:1, 3238:11, 3243:3, 3263:2, 3263:12, 3268:9, 3269:18, 3272:4, 3279:16, 3280:21, 3288:4, 3298:21, 3303:3, 3304:12, 3310:11, 3311:20, 3316:16, 3334:9
**market** [1] - 3333:15
**marketing** [1] - 3231:7
**marking** [1] - 3181:22
**Mary** [1] - 3131:20
**Masood** [1] - 3156:18
**material** [3] - 3191:2, 3220:18, 3337:7
**Matt** [4] - 3233:8, 3233:10, 3233:20, 3234:20

**matter** [8] - 3171:25, 3172:11, 3199:17, 3228:6, 3232:22, 3251:13, 3252:25, 3271:7
**matters** [1] - 3253:13
**Mattias** [1] - 3331:2
**mean** [9] - 3201:25, 3206:22, 3224:2, 3254:5, 3255:8, 3267:10, 3285:24, 3286:2, 3290:23
**meaning** [2] - 3239:9, 3328:12
**means** [1] - 3256:3
**meant** [1] - 3144:17
**meantime** [1] - 3169:15
**mechanic's** [2] - 3134:1, 3298:4
**mechanical** [1] - 3131:25
**media** [10] - 3143:22, 3164:12, 3164:20, 3165:3, 3168:6, 3169:7, 3220:22, 3221:1, 3221:21, 3223:14
**meet** [4] - 3170:20, 3233:11, 3247:22, 3336:4
**meeting** [14] - 3173:18, 3184:10, 3184:14, 3184:18, 3185:8, 3185:16, 3185:21, 3186:3, 3186:23, 3188:14, 3189:1, 3222:23, 3234:9, 3276:13
**meetings** [1] - 3231:5
**member** [13] - 3144:8, 3175:11, 3175:19, 3177:19, 3320:17, 3320:18, 3320:19, 3320:22, 3320:23, 3324:7, 3324:11, 3324:13, 3335:25
**members** [12] - 3133:1, 3164:19, 3175:1, 3179:4, 3179:17, 3185:23, 3231:24, 3294:15, 3330:14, 3330:20, 3331:2, 3331:14
**Memorial** [1] - 3130:21
**memory** [4] - 3235:1, 3271:16, 3327:3, 3328:10
**mention** [3] - 3227:6, 3227:7
**mentioned** [12] - 3133:25, 3163:2, 3173:6, 3264:12, 3265:20, 3269:12, 3277:7, 3289:13, 3304:9, 3315:22, 3332:24, 3336:2
**mentioning** [3] - 3134:17, 3246:25, 3247:2
**mere** [1] - 3246:25
**message** [2] - 3239:9, 3239:24
**messages** [5] - 3239:19, 3239:24, 3240:9, 3240:13,

3240:16
**met** [7] - 3173:8, 3201:1, 3202:2, 3215:20, 3223:1, 3233:17, 3327:13
**Metro** [29] - 3268:5, 3268:7, 3269:16, 3269:24, 3270:1, 3270:16, 3271:21, 3272:9, 3272:11, 3273:23, 3273:24, 3277:2, 3277:3, 3278:11, 3278:13, 3290:1, 3292:12, 3296:1, 3296:12, 3300:15, 3300:21, 3302:13, 3302:17, 3312:1, 3312:8, 3314:1, 3332:6, 3332:25, 3333:23
**metro** [8] - 3310:5, 3310:6, 3310:8, 3310:15, 3313:14, 3324:21, 3332:25, 3333:23
**Mexican** [3] - 3136:12, 3148:18, 3265:17
**Mexico** [4] - 3147:13, 3172:9, 3215:23, 3216:20
**Michael** [6] - 3139:24, 3142:3, 3173:6, 3173:8, 3246:2, 3248:1
**Michelle** [1] - 3336:2
**mid** [2] - 3284:11, 3284:19
**mid-next** [2] - 3284:11, 3284:19
**middle** [3] - 3166:10, 3170:2, 3177:13
**might** [15] - 3184:24, 3185:3, 3192:12, 3192:25, 3253:6, 3258:8, 3259:17, 3267:16, 3283:23, 3296:6, 3296:7, 3305:3, 3338:4, 3340:20
**mike** [1] - 3266:21
**million** [13] - 3154:2, 3154:3, 3154:6, 3154:10, 3155:24, 3167:17, 3187:21, 3203:14, 3203:15, 3211:4, 3228:22, 3245:1, 3268:7
**mind** [5] - 3168:17, 3168:22, 3191:19, 3195:9, 3335:13
**Mineola** [1] - 3131:3
**minimums** [1] - 3197:15
**minute** [1] - 3138:4
**minutes** [4] - 3197:15, 3197:17, 3215:13, 3245:8
**minutia** [1] - 3194:16
**misappropriated** [3] - 3154:2, 3227:18, 3241:7
**misappropriation** [1] - 3155:24
**misappropriations** [2] - 3163:22, 3163:25
**miscommunication** [10] -

3200:5, 3200:22, 3233:5, 3233:7, 3233:9, 3233:20, 3234:6, 3234:8, 3234:10, 3234:13
**misconduct** [1] - 3173:13
**MISKIEWICZ** [71] - 3130:16, 3132:6, 3132:11, 3135:10, 3138:1, 3139:11, 3140:8, 3150:7, 3151:6, 3151:21, 3152:2, 3152:5, 3156:9, 3156:22, 3157:17, 3159:1, 3159:19, 3159:22, 3162:2, 3162:16, 3165:14, 3165:22, 3171:18, 3172:4, 3174:14, 3178:18, 3182:1, 3182:20, 3183:10, 3184:3, 3186:7, 3190:3, 3197:19, 3197:22, 3198:6, 3200:20, 3202:19, 3203:25, 3204:5, 3205:2, 3205:9, 3211:1, 3215:15, 3219:9, 3222:21, 3224:24, 3226:16, 3229:8, 3230:21, 3241:21, 3242:11, 3243:8, 3243:20, 3243:23, 3256:25, 3259:22, 3262:8, 3262:13, 3263:10, 3263:24, 3335:24, 3336:11, 3336:15, 3336:20, 3337:5, 3337:16, 3337:23, 3338:3, 3338:6, 3338:17, 3342:7
**Miskiewicz** [7] - 3190:2, 3227:3, 3227:11, 3227:16, 3235:13, 3235:20, 3236:5
**mismarked** [1] - 3181:21
**mispronounced** [1] - 3321:7
**missed** [1] - 3273:14
**misunderstanding** [1] - 3242:8
**moment** [7] - 3204:10, 3204:12, 3224:20, 3226:13, 3227:8, 3227:11, 3280:13
**moments** [4] - 3139:6, 3327:19, 3327:22, 3328:5
**Monday** [4] - 3256:5, 3256:19, 3257:4, 3257:8
**money** [104] - 3136:7, 3137:23, 3142:9, 3142:14, 3142:20, 3142:25, 3144:18, 3144:21, 3145:7, 3145:12, 3145:17, 3145:18, 3145:20, 3151:4, 3154:2, 3161:12, 3164:16, 3167:10, 3167:14, 3167:18, 3167:20, 3167:24, 3168:2, 3172:22, 3173:2, 3181:7, 3181:11, 3181:19, 3188:7, 3188:15,

3189:2, 3189:9, 3189:14, 3189:20, 3194:1, 3195:6, 3195:8, 3195:12, 3196:17, 3197:7, 3203:19, 3204:4, 3207:20, 3208:22, 3209:1, 3209:6, 3209:15, 3209:23, 3211:5, 3212:5, 3212:14, 3214:2, 3217:11, 3217:13, 3217:25, 3218:4, 3218:15, 3218:21, 3219:13, 3220:4, 3226:2, 3228:23, 3229:12, 3229:20, 3229:23, 3229:24, 3230:2, 3230:4, 3230:7, 3230:9, 3230:14, 3230:16, 3236:7, 3244:19, 3253:4, 3259:1, 3259:8, 3265:15, 3271:19, 3279:10, 3285:13, 3285:22, 3286:25, 3287:5, 3287:22, 3295:8, 3299:15, 3299:16, 3300:6, 3300:8, 3302:9, 3305:25, 3307:20, 3312:3, 3312:17, 3313:10, 3313:11, 3317:18, 3324:8, 3324:10, 3339:15, 3339:23, 3340:11, 3340:18

**moneys** [3] - 3295:19, 3300:8, 3301:2

**monies** [21] - 3136:4, 3137:2, 3137:16, 3138:25, 3144:9, 3144:24, 3146:21, 3147:17, 3265:24, 3287:6, 3300:9, 3300:10, 3312:1, 3312:13, 3312:16, 3313:11, 3313:18, 3317:10, 3339:21, 3340:17

**month** [1] - 3317:25

**months** [1] - 3305:13

**Moreau** [9] - 3136:23, 3138:20, 3139:3, 3139:8, 3142:17, 3143:5, 3152:8, 3213:1, 3214:12

**morning** [8] - 3133:1, 3133:2, 3133:4, 3133:22, 3133:23, 3190:4, 3256:4, 3257:9

**Morshinski** [1] - 3337:8

**mortgage** [4] - 3261:20, 3340:9, 3340:10, 3340:13

**most** [5] - 3143:4, 3147:11, 3214:10, 3253:14, 3312:16

**motivation** [1] - 3286:9

**motive** [2] - 3194:3, 3194:7

**motives** [1] - 3194:4

**move** [20] - 3151:22, 3152:24, 3159:1, 3159:12, 3159:17, 3162:2, 3184:3, 3187:5, 3197:12, 3198:15, 3215:14, 3255:8, 3261:14, 3274:25, 3294:6, 3301:10,

3312:20, 3316:15, 3334:20, 3338:24

**moves** [12] - 3269:5, 3270:7, 3273:3, 3280:10, 3281:16, 3289:2, 3297:15, 3299:8, 3305:5, 3310:19, 3315:6, 3319:1

**moving** [4] - 3181:7, 3276:11, 3286:13, 3290:7

**MR** [269] - 3132:6, 3132:8, 3132:9, 3132:11, 3132:20, 3133:18, 3133:21, 3135:10, 3138:1, 3139:11, 3139:12, 3139:14, 3140:2, 3140:8, 3140:9, 3140:13, 3140:17, 3150:7, 3150:9, 3150:14, 3150:21, 3151:6, 3151:21, 3151:24, 3152:2, 3152:3, 3152:5, 3152:6, 3154:18, 3154:20, 3156:9, 3156:11, 3156:22, 3157:1, 3157:17, 3159:1, 3159:3, 3159:17, 3159:19, 3159:22, 3159:25, 3160:2, 3160:5, 3161:2, 3162:1, 3162:2, 3162:4, 3162:13, 3162:16, 3162:17, 3162:20, 3165:14, 3165:16, 3165:20, 3165:22, 3165:25, 3166:5, 3168:25, 3169:1, 3171:18, 3172:4, 3174:14, 3178:12, 3178:18, 3182:1, 3182:2, 3182:20, 3182:23, 3183:10, 3183:13, 3183:20, 3184:3, 3184:6, 3184:8, 3186:7, 3190:3, 3191:11, 3192:3, 3193:24, 3194:22, 3195:5, 3195:14, 3195:21, 3195:24, 3196:11, 3196:20, 3197:14, 3197:19, 3197:22, 3198:4, 3198:5, 3198:6, 3198:7, 3198:10, 3198:14, 3198:22, 3200:20, 3202:19, 3202:21, 3202:23, 3203:4, 3203:21, 3203:25, 3204:1, 3204:5, 3204:6, 3204:9, 3204:24, 3205:2, 3205:8, 3205:9, 3205:10, 3206:4, 3209:12, 3209:17, 3211:1, 3215:10, 3215:15, 3216:8, 3219:5, 3219:9, 3220:19, 3222:4, 3222:21, 3224:22, 3224:24, 3225:7, 3225:18, 3226:16, 3226:18, 3226:21, 3229:8, 3230:21, 3231:21, 3241:21, 3241:23, 3242:2, 3242:4, 3242:11, 3242:13, 3243:8,

3243:10, 3243:20, 3243:23, 3245:7, 3245:14, 3246:2, 3246:25, 3247:5, 3247:17, 3248:1, 3248:23, 3249:5, 3249:12, 3250:15, 3254:2, 3254:6, 3256:4, 3256:15, 3256:22, 3256:25, 3257:10, 3257:13, 3257:15, 3259:9, 3259:19, 3259:22, 3259:24, 3260:3, 3261:5, 3261:9, 3262:3, 3262:8, 3262:10, 3262:11, 3262:13, 3262:21, 3263:7, 3263:10, 3263:12, 3263:17, 3263:24, 3264:3, 3264:18, 3264:24, 3266:1, 3269:7, 3269:8, 3270:5, 3270:6, 3270:10, 3270:11, 3273:5, 3273:6, 3280:12, 3280:13, 3280:17, 3281:18, 3281:19, 3281:22, 3282:24, 3289:4, 3289:5, 3292:17, 3293:1, 3294:7, 3294:8, 3297:17, 3297:18, 3297:19, 3299:10, 3299:11, 3301:12, 3301:13, 3303:16, 3303:17, 3305:7, 3305:8, 3310:21, 3310:22, 3312:24, 3312:25, 3315:8, 3315:9, 3316:19, 3316:20, 3319:3, 3319:4, 3320:3, 3320:4, 3321:2, 3321:4, 3322:8, 3322:11, 3322:25, 3323:8, 3323:11, 3327:8, 3327:10, 3335:1, 3335:7, 3335:24, 3336:9, 3336:10, 3336:11, 3336:15, 3336:20, 3336:23, 3337:1, 3337:5, 3337:16, 3337:19, 3337:23, 3337:24, 3338:3, 3338:6, 3338:15, 3338:17, 3339:5, 3340:16, 3341:6, 3342:5, 3342:7, 3342:9, 3342:11, 3342:13, 3342:18, 3342:20, 3342:22

**MS** [53] - 3247:2, 3247:19, 3249:15, 3252:13, 3253:9, 3256:24, 3257:22, 3260:4, 3261:10, 3261:24, 3262:1, 3266:7, 3267:2, 3269:5, 3269:11, 3270:7, 3270:14, 3273:3, 3273:9, 3280:10, 3280:20, 3281:16, 3283:4, 3289:2, 3289:9, 3294:6, 3297:15, 3299:8, 3301:9, 3303:14, 3305:5, 3308:4, 3310:4, 3310:19, 3312:19, 3312:22, 3315:6, 3316:15, 3319:1, 3319:24, 3320:25,

3322:10, 3323:2, 3323:6, 3329:18, 3335:3, 3338:22, 3339:13, 3339:22, 3340:5, 3341:1, 3341:7, 3342:16

**multiple** [2] - 3193:11, 3239:5

**Murray** [6] - 3203:8, 3203:10, 3204:3, 3204:7, 3265:7, 3336:15

**Murray's** [2] - 3203:19, 3265:15

**must** [1] - 3307:22

**Myrick** [8] - 3138:19, 3139:3, 3142:17, 3143:1, 3145:14, 3236:12, 3236:21, 3236:22

## N

**N530GC** [1] - 3303:12

**N530TC** [1] - 3303:25

**N711JC** [1] - 3303:25

**name** [20] - 3148:7, 3148:10, 3156:18, 3173:6, 3175:16, 3180:4, 3200:23, 3203:7, 3213:2, 3232:15, 3266:17, 3293:7, 3293:13, 3306:5, 3306:11, 3307:3, 3307:21, 3320:20, 3321:5, 3321:7

**named** [6] - 3155:11, 3218:16, 3265:2, 3267:20, 3318:21, 3326:4

**names** [2] - 3175:25, 3333:18

**Nash** [2] - 3184:22, 3185:24

**Nassau** [1] - 3336:3

**nature** [6] - 3206:5, 3247:22, 3248:3, 3249:15, 3268:2, 3285:11

**near** [2] - 3272:25, 3304:25

**necessary** [1] - 3257:8

**need** [15] - 3140:4, 3150:13, 3153:18, 3156:14, 3169:14, 3187:4, 3250:24, 3251:15, 3253:10, 3256:10, 3256:17, 3277:14, 3277:19, 3278:12, 3308:5

**needed** [4] - 3136:7, 3145:14, 3145:17, 3301:1

**needs** [5] - 3248:19, 3255:24, 3256:1, 3265:20, 3277:6

**negotiated** [1] - 3326:21

**negotiating** [1] - 3331:19

**negotiation** [1] - 3279:17

**neighborhood** [1] -

3203:13

**never** [19] - 3145:18, 3155:5, 3156:1, 3158:12, 3190:18, 3190:21, 3194:25, 3195:5, 3196:7, 3222:3, 3234:19, 3236:24, 3278:5, 3285:6, 3286:3, 3286:10, 3286:11, 3327:13, 3327:14

**new** [4] - 3231:4, 3276:6, 3304:3, 3304:6

**NEW** [1] - 3130:1

**New** [3] - 3130:6, 3130:15, 3131:21

**News** [3] - 3246:4, 3248:24, 3249:10

**newspapers** [1] - 3334:4

**next** [19] - 3144:12, 3163:22, 3169:25, 3189:24, 3232:15, 3245:18, 3251:17, 3253:21, 3266:6, 3276:20, 3284:11, 3284:19, 3286:13, 3290:3, 3291:3, 3292:8, 3295:23, 3313:25, 3330:18

**nice** [1] - 3207:7

**Nick** [3] - 3176:13, 3184:24, 3185:5

**night** [3] - 3248:2, 3282:22, 3335:19

**NO** [2] - 3308:18, 3308:24

**NO.7** [2] - 3308:12, 3309:2

**Nolan** [12] - 3136:23, 3138:20, 3139:3, 3139:8, 3142:17, 3143:5, 3152:8, 3171:7, 3213:1, 3214:12, 3218:24, 3252:23

**non** [3] - 3227:19, 3320:19, 3320:23

**non-criminal** [1] - 3227:19

**non-managing** [2] - 3320:19, 3320:23

**normal** [2] - 3167:23, 3338:25

**normally** [1] - 3329:9

**Norstrom** [1] - 3331:2

**north** [1] - 3264:12

**note** [4] - 3323:20, 3324:20, 3329:10, 3329:12

**noted** [1] - 3132:3

**notes** [1] - 3324:17

**nothing** [4] - 3193:18, 3244:24, 3265:11, 3285:16

**noticed** [1] - 3264:12

**November** [5] - 3161:14, 3162:22, 3268:20, 3305:20, 3307:13

**nowhere** [2] - 3285:16, 3285:17

**number** [31] - 3134:23, 3135:23, 3143:4, 3148:14, 3171:13, 3171:14, 3181:21, 3192:5, 3199:17, 3207:4, 3214:4, 3214:10, 3242:7, 3244:8, 3244:1, 3250:9, 3261:13, 3276:14, 3302:16, 3302:20, 3302:25, 3303:25, 3304:3, 3304:6, 3308:15, 3317:17, 3321:11, 3322:5, 3333:12

**numbers** [6] - 3154:13, 3270:3, 3271:15, 3321:17, 3322:17, 3339:17

**numerical** [1] - 3251:11

**numerous** [2] - 3144:15, 3249:20

**Nusbaum** [2] - 3336:16, 3336:17

**NY** [3] - 3130:22, 3131:3, 3131:7

## O

**oath** [7] - 3133:9, 3135:16, 3172:7, 3200:2, 3234:23, 3238:24, 3266:10

**object** [11] - 3150:8, 3152:5, 3206:4, 3206:5, 3215:10, 3215:11, 3216:8, 3225:7, 3225:18, 3263:10, 3301:13

**objected** [1] - 3168:13

**Objection** [1] - 3329:18

**objection** [97] - 3132:14, 3135:10, 3138:1, 3139:11, 3140:7, 3140:14, 3151:6, 3151:21, 3156:9, 3156:22, 3157:17, 3159:1, 3159:22, 3159:24, 3160:2, 3162:2, 3162:16, 3162:17, 3165:14, 3165:22, 3165:25, 3168:14, 3171:18, 3172:4, 3174:14, 3182:20, 3183:10, 3184:3, 3186:7, 3200:20, 3203:3, 3203:21, 3203:25, 3204:1, 3204:5, 3204:6, 3209:12, 3209:17, 3219:5, 3219:6, 3220:19, 3222:4, 3229:8, 3230:21, 3241:21, 3242:11, 3243:8, 3243:25, 3261:21, 3262:8, 3262:9, 3262:14, 3269:7, 3269:8, 3270:9, 3273:5, 3273:6, 3280:12, 3280:17, 3281:18, 3282:24, 3289:4, 3289:6, 3294:7, 3294:8, 3297:17, 3297:19, 3298:9, 3299:10, 3299:11,

3301:12, 3301:14, 3303:16, 3303:17, 3305:7, 3305:8, 3310:21, 3310:22, 3312:23, 3312:24, 3312:25, 3315:8, 3315:9, 3316:18, 3316:19, 3316:20, 3319:3, 3319:4, 3320:2, 3322:10, 3322:11, 3323:2, 3323:7, 3335:3, 3335:6, 3339:3, 3340:14

**objective** [2] - 3254:9, 3325:14

**observations** [1] - 3134:12

**obtained** [4] - 3156:20, 3228:9, 3246:6, 3293:13

**obtaining** [1] - 3323:18

**obvious** [1] - 3339:25

**obviously** [2] - 3258:13, 3308:21

**occasion** [2] - 3228:17, 3321:7

**occasions** [4] - 3184:1, 3199:18, 3240:13, 3242:7

**occur** [1] - 3239:21

**occurred** [4] - 3234:13, 3237:22, 3237:23, 3237:25

**occurrence** [2] - 3231:14, 3238:5

**Oceanside** [1] - 3131:7

**October** [18] - 3134:15, 3135:2, 3146:6, 3158:12, 3160:22, 3161:4, 3162:5, 3182:14, 3182:21, 3199:3, 3199:11, 3204:14, 3232:25, 3233:23, 3234:15, 3234:19, 3242:6, 3305:20

**OF** [3] - 3130:1, 3130:3, 3130:10

**offer** [9] - 3189:9, 3192:5, 3195:25, 3197:1, 3226:7, 3303:14, 3322:8, 3322:25, 3338:1

**offered** [8] - 3188:15, 3189:1, 3189:19, 3195:1, 3195:6, 3196:3, 3226:3

**office** [6] - 3185:17, 3231:6, 3234:21, 3275:11, 3282:21, 3283:21

**officer** [2] - 3267:9, 3267:10

**Offices** [2] - 3301:24, 3306:5

**offices** [2] - 3137:19, 3223:4

**offset** [1] - 3296:10

**often** [6] - 3145:7, 3151:18, 3214:1, 3236:7, 3237:15, 3302:22

**oftentimes** [1] - 3239:19

**Old** [1] - 3131:3

**OLIVERAS** [3] - 3131:6, 3263:17, 3336:23

**once** [3] - 3159:12, 3177:21, 3190:12

**one** [82] - 3132:18, 3133:24, 3136:7, 3138:5, 3138:13, 3147:18, 3148:1, 3149:5, 3149:13, 3151:25, 3152:15, 3152:17, 3153:5, 3157:5, 3160:12, 3160:23, 3161:11, 3162:25, 3165:10, 3166:6, 3167:13, 3170:7, 3173:19, 3174:22, 3176:22, 3179:5, 3179:15, 3179:20, 3179:24, 3181:15, 3185:4, 3186:16, 3188:13, 3192:5, 3193:10, 3193:24, 3194:4, 3196:9, 3198:15, 3203:6, 3211:9, 3213:21, 3216:6, 3219:6, 3219:9, 3227:13, 3228:16, 3238:2, 3249:12, 3257:23, 3258:5, 3262:3, 3263:2, 3263:13, 3265:17, 3270:18, 3271:1, 3271:20, 3272:10, 3273:10, 3274:17, 3279:16, 3281:14, 3282:23, 3285:4, 3296:20, 3298:4, 3300:17, 3311:6, 3314:15, 3320:21, 3320:22, 3320:23, 3321:15, 3327:19, 3333:7, 3337:13, 3340:6, 3340:13

**One** [1] - 3130:21

**ones** [1] - 3220:8

**open** [3] - 3246:11, 3252:1, 3334:12

**operating** [15] - 3217:1, 3293:21, 3293:23, 3294:2, 3294:12, 3294:14, 3294:21, 3319:25, 3320:8, 3320:11, 3330:5, 3330:6, 3330:14, 3330:21, 3331:15

**operation** [4] - 3180:11, 3193:5, 3206:22, 3213:15

**operational** [1] - 3216:25

**opinion** [1] - 3250:21

**opportunity** [9] - 3148:21, 3170:20, 3171:6, 3192:18, 3228:16, 3254:21, 3255:6, 3330:11, 3340:19

**opposition** [2] - 3248:3, 3250:20

**optimistic** [1] - 3217:23

**oranges** [1] - 3324:22

**order** [7] - 3164:24, 3192:14, 3195:17, 3246:16, 3257:3, 3279:11,

**21**

3295:20
**ordering** [1] - 3257:8
**ordinary** [3] - 3272:18, 3272:23, 3304:23
**originally** [1] - 3274:19
**Orlean** [1] - 3318:6
**Osborn** [2] - 3337:11, 3337:16
**otherwise** [1] - 3188:5
**outline** [2] - 3286:18, 3287:3
**outlines** [1] - 3289:13
**outstanding** [3] - 3274:2, 3274:8, 3274:11
**outweighed** [1] - 3197:4
**overall** [1] - 3192:13
**Overruled** [1] - 3174:15
**overruled** [5] - 3166:1, 3168:14, 3171:19, 3172:5, 3186:8, 3200:21, 3209:18, 3230:22, 3263:11, 3329:20
**overture** [1] - 3192:8
**owed** [1] - 3292:4
**Owen** [2] - 3136:23, 3218:24
**own** [7] - 3147:8, 3167:20, 3176:8, 3194:3, 3201:10, 3215:3, 3223:8
**owned** [1] - 3181:12
**owners** [1] - 3302:22
**ownership** [2] - 3213:5, 3328:21

**P**

**package** [1] - 3237:20
**page** [68] - 3153:1, 3154:12, 3154:13, 3166:8, 3166:10, 3169:25, 3177:13, 3177:14, 3179:21, 3181:2, 3188:22, 3205:12, 3205:24, 3206:3, 3206:8, 3213:24, 3225:3, 3225:14, 3238:17, 3243:4, 3245:18, 3250:23, 3251:17, 3253:21, 3268:16, 3273:11, 3288:11, 3288:12, 3288:14, 3288:17, 3289:12, 3290:3, 3290:21, 3290:23, 3291:3, 3292:8, 3292:13, 3293:24, 3293:25, 3294:13, 3294:21, 3295:4, 3297:25, 3298:1, 3306:2, 3306:15, 3306:23, 3307:9, 3307:12, 3313:9, 3314:24, 3317:22, 3317:25, 3320:16, 3320:17, 3323:5, 3323:6,
3323:11, 3330:17, 3330:19, 3333:6
**pages** [10] - 3134:23, 3152:25, 3178:15, 3178:24, 3179:3, 3181:3, 3207:17, 3208:17, 3227:13, 3247:17
**paid** [15] - 3145:14, 3177:2, 3207:21, 3207:23, 3207:24, 3210:1, 3253:1, 3259:11, 3275:1, 3289:24, 3312:2, 3314:3, 3314:9, 3314:10, 3328:22
**papers** [2] - 3248:4, 3250:20
**paperwork** [1] - 3327:1
**Paradise** [3] - 3134:8, 3135:16, 3200:11
**paragraph** [17] - 3144:12, 3154:8, 3154:11, 3154:17, 3156:14, 3213:21, 3213:23, 3213:25, 3231:20, 3236:6, 3236:8, 3236:9, 3238:13, 3238:15, 3243:21, 3293:8, 3294:13
**paragraphs** [2] - 3153:18, 3154:13
**parcel** [4] - 3225:17, 3230:14, 3281:24, 3323:15
**parcels** [1] - 3225:4
**Park** [1] - 3211:12
**park** [4] - 3137:17, 3137:20, 3211:11, 3223:6
**part** [49] - 3134:7, 3137:23, 3137:25, 3141:25, 3143:3, 3143:21, 3144:1, 3144:24, 3145:4, 3148:2, 3148:14, 3154:9, 3154:25, 3155:8, 3156:16, 3180:18, 3187:13, 3187:19, 3189:14, 3211:14, 3211:18, 3211:22, 3213:24, 3214:1, 3218:5, 3221:16, 3225:1, 3225:4, 3230:4, 3230:8, 3230:14, 3236:5, 3236:18, 3251:2, 3271:1, 3281:24, 3296:15, 3297:3, 3300:21, 3301:7, 3312:16, 3315:24, 3316:10, 3317:11, 3323:15, 3330:10, 3333:11, 3334:19, 3334:21
**partial** [3] - 3288:9, 3288:23, 3297:3
**participate** [2] - 3156:2, 3208:6
**participated** [1] - 3155:7
**participating** [3] - 3176:20, 3185:25, 3201:3
**participation** [1] - 3155:19
**particular** [10] - 3153:10, 3166:21, 3168:19, 3177:12, 3192:7, 3235:23, 3241:16, 3333:25, 3334:5, 3339:3
**particularly** [5] - 3136:23, 3155:23, 3182:16, 3223:19, 3338:12
**parties** [7] - 3281:3, 3289:1, 3289:6, 3289:13, 3314:7, 3333:12, 3339:6
**parties'** [1] - 3326:22
**Partner** [1] - 3307:10
**partner** [1] - 3284:13
**partners** [17] - 3231:5, 3314:23, 3315:16, 3316:1, 3316:3, 3316:13, 3317:1, 3318:7, 3318:12, 3318:22, 3319:8, 3319:11, 3320:1, 3328:12, 3328:16, 3328:21, 3329:3
**Partners** [30] - 3149:20, 3151:9, 3151:16, 3175:3, 3175:8, 3175:19, 3176:21, 3177:1, 3177:7, 3177:19, 3177:20, 3179:5, 3279:5, 3293:15, 3293:21, 3294:3, 3294:12, 3296:25, 3297:5, 3297:10, 3298:17, 3300:9, 3304:10, 3304:17, 3306:1, 3306:18, 3306:25, 3307:14, 3317:21, 3328:20
**parts** [7] - 3187:3, 3191:11, 3196:5, 3276:5, 3277:13, 3277:19, 3286:17
**party** [10] - 3152:16, 3153:21, 3158:6, 3271:10, 3274:16, 3274:18, 3288:15, 3313:24, 3326:5, 3339:12
**past** [2] - 3272:3, 3275:12
**patents** [1] - 3180:12
**Pause** [2] - 3140:12, 3159:21, 3162:15, 3280:16
**pause** [3] - 3132:22, 3159:23, 3287:14
**pay** [7] - 3145:15, 3177:6, 3177:12, 3177:20, 3211:23, 3279:9, 3340:2
**paying** [1] - 3298:14
**payment** [13] - 3305:23, 3306:8, 3306:12, 3306:13, 3306:14, 3306:16, 3306:20, 3307:13, 3307:22, 3339:22, 3339:25, 3340:1, 3340:10
**payments** [20] - 3271:5, 3271:8, 3271:12, 3271:13, 3272:3, 3272:17, 3272:22, 3272:25, 3273:14,
3273:17, 3274:14, 3304:10, 3304:25, 3305:14, 3307:24, 3307:25, 3314:4, 3314:5, 3332:16, 3340:13
**payoff** [2] - 3296:11, 3314:13
**pending** [1] - 3331:20
**people** [16] - 3146:3, 3153:12, 3158:17, 3163:1, 3172:17, 3173:9, 3173:18, 3185:25, 3193:25, 3196:24, 3215:8, 3226:7, 3290:14, 3326:7, 3333:18, 3333:19
**percent** [1] - 3230:15
**percentage** [4] - 3213:4, 3215:5, 3225:15, 3225:16
**percentages** [1] - 3194:11
**perfect** [1] - 3256:22
**perhaps** [5] - 3229:11, 3230:16, 3254:20, 3254:25, 3338:15
**period** [9] - 3146:18, 3171:4, 3171:10, 3240:12, 3244:24, 3252:18, 3252:22, 3305:15, 3317:2
**permission** [3] - 3178:6, 3181:24, 3219:4
**permitted** [1] - 3185:7
**person** [19] - 3134:13, 3164:11, 3172:13, 3184:18, 3184:20, 3185:5, 3185:10, 3206:22, 3234:9, 3248:2, 3265:2, 3275:3, 3282:9, 3311:13, 3323:18, 3323:20, 3325:2, 3327:13, 3333:17
**personal** [6] - 3167:21, 3176:8, 3180:8, 3180:11, 3181:8, 3325:16
**personally** [5] - 3161:7, 3241:12, 3282:8, 3325:8, 3330:25
**pertain** [1] - 3261:15
**pertains** [1] - 3333:16
**perusing** [1] - 3299:20
**Petrolies** [1] - 3337:11
**Phil** [67] - 3134:16, 3138:11, 3139:24, 3142:2, 3145:13, 3145:14, 3148:5, 3157:12, 3158:8, 3172:1, 3172:7, 3185:3, 3204:15, 3204:21, 3209:6, 3209:10, 3209:15, 3213:22, 3216:3, 3218:22, 3219:24, 3221:10, 3229:20, 3229:21, 3229:22, 3230:3, 3230:8, 3232:23, 3233:11, 3233:17, 3233:23, 3236:2,

3236:10, 3236:12, 3236:19, 3236:20, 3237:4, 3237:6, 3237:10, 3237:21, 3238:1, 3238:6, 3238:7, 3239:4, 3239:19, 3240:12, 3241:10, 3268:24, 3271:12, 3271:25, 3274:21, 3275:7, 3275:13, 3279:25, 3280:1, 3280:3, 3282:17, 3283:25, 3288:13, 3288:24, 3289:14, 3325:15, 3325:25, 3326:8, 3332:1, 3332:15

**Phillip** [2] - 3231:24, 3267:20

**PHILLIP** [1] - 3130:7

**phone** [11] - 3142:7, 3170:22, 3244:5, 3244:6, 3271:15, 3274:21, 3274:23, 3275:7, 3275:9, 3275:11

**photograph** [3] - 3269:25, 3303:11, 3303:12

**phrase** [4] - 3152:4, 3152:7, 3186:19, 3216:14

**pick** [1] - 3327:18

**picture** [1] - 3269:24

**piece** [2] - 3209:6, 3215:22

**pieces** [2] - 3277:13, 3277:19

**place** [5] - 3137:17, 3147:24, 3153:7, 3275:24, 3334:4

**plaintiff** [4] - 3152:18, 3173:23, 3174:22, 3209:5

**plaintiffs** [1] - 3175:21

**plan** [2] - 3167:5, 3274:10

**plane** [6] - 3211:15, 3270:23, 3273:22, 3296:1, 3311:11, 3333:22

**planes** [4] - 3149:20, 3270:18, 3271:1, 3273:11

**plant** [2] - 3244:25, 3245:3

**play** [6] - 3143:21, 3158:23, 3261:5, 3264:15, 3333:9, 3333:21

**Playboy** [1] - 3253:5

**playboy** [2] - 3212:3, 3212:15

**played** [9] - 3144:1, 3186:14, 3263:22, 3264:7, 3264:22, 3331:23, 3332:12, 3333:12, 3334:6

**player** [5] - 3184:21, 3185:24, 3196:8, 3265:7, 3311:15

**players** [21] - 3136:13, 3136:22, 3137:9, 3143:11, 3146:7, 3146:20, 3147:12,

3153:11, 3155:15, 3161:16, 3174:2, 3174:25, 3175:2, 3175:22, 3186:24, 3191:21, 3191:25, 3194:16, 3197:8, 3212:18, 3212:19

**players'** [2] - 3139:16, 3181:11

**playing** [10] - 3144:19, 3158:19, 3158:21, 3159:4, 3159:8, 3165:4, 3239:7, 3239:10, 3262:14, 3263:9

**Plaza** [2] - 3130:15, 3131:20

**plead** [1] - 3157:2

**pledging** [1] - 3285:14

**point** [52] - 3133:7, 3133:24, 3136:2, 3137:21, 3141:2, 3141:5, 3144:6, 3144:24, 3145:4, 3146:5, 3146:24, 3149:10, 3152:21, 3152:25, 3153:20, 3164:8, 3164:11, 3164:14, 3168:1, 3179:23, 3180:2, 3180:3, 3188:14, 3189:13, 3189:17, 3191:24, 3192:13, 3192:17, 3195:9, 3196:3, 3196:4, 3201:15, 3202:16, 3227:18, 3229:19, 3233:22, 3235:16, 3237:19, 3239:13, 3244:17, 3248:19, 3252:7, 3263:9, 3263:25, 3293:14, 3314:7, 3325:19, 3326:7, 3331:17, 3332:18, 3340:21, 3341:6

**pointed** [2] - 3232:18, 3258:24

**pointing** [1] - 3187:7

**points** [7] - 3170:11, 3197:14, 3198:15, 3222:10, 3222:11, 3222:15, 3223:23

**portion** [8] - 3133:24, 3179:23, 3187:9, 3188:23, 3228:3, 3230:4, 3258:7, 3262:5

**portions** [8] - 3147:21, 3147:25, 3187:6, 3188:19, 3188:21, 3261:6, 3262:25, 3263:4

**poses** [1] - 3250:21

**position** [5] - 3164:21, 3221:20, 3231:12, 3250:4, 3340:3

**possession** [1] - 3278:12

**possibility** [1] - 3257:1

**possible** [3] - 3193:20, 3285:20, 3329:15

**possibly** [1] - 3187:20

**potential** [4] - 3148:18, 3296:7, 3296:10, 3300:22

**potentially** [2] - 3222:1, 3300:15

**practice** [2] - 3239:12, 3335:25

**preferred** [1] - 3319:18

**prejudice** [1] - 3253:18

**prepare** [3] - 3169:4, 3207:21, 3256:10

**presence** [1] - 3190:10

**present** [2] - 3132:24, 3262:17

**president** [3] - 3267:9, 3288:19, 3288:20

**press** [6] - 3164:15, 3165:2, 3170:12, 3170:21, 3222:11

**pressure** [1] - 3172:8

**presumably** [1] - 3253:7

**pretty** [5] - 3194:9, 3249:19, 3278:3, 3327:3, 3332:20

**prevent** [2] - 3258:19, 3258:20

**previous** [1] - 3284:14

**previously** [2] - 3133:13, 3263:19

**price** [6] - 3276:17, 3279:9, 3284:16, 3295:6, 3295:15, 3301:3

**Price** [1] - 3287:14

**primarily** [1] - 3278:23

**primary** [1] - 3267:23

**principal** [1] - 3218:15

**principally** [1] - 3148:25

**print** [1] - 3232:15

**printed** [1] - 3303:1

**private** [1] - 3181:12

**privilege** [9] - 3246:14, 3249:7, 3249:13, 3250:1, 3250:22, 3251:7, 3255:5, 3257:2, 3258:20

**privileged** [16] - 3246:10, 3247:13, 3248:18, 3249:17, 3250:8, 3250:12, 3251:2, 3251:5, 3252:12, 3253:6, 3254:16, 3257:23, 3258:6, 3258:8, 3259:5

**Privitello** [22] - 3133:25, 3134:4, 3176:13, 3176:15, 3176:16, 3184:24, 3185:5, 3185:11, 3188:15, 3189:1, 3189:6, 3189:14, 3189:19, 3191:14, 3192:4, 3192:9, 3194:25, 3195:3, 3195:8, 3196:2, 3196:16, 3197:12

**Privitello's** [1] - 3195:12

**pro** [1] - 3201:1

**problem** [6] - 3141:16, 3181:21, 3181:23, 3247:1, 3332:15, 3339:5

**proceed** [1] - 3132:5

**proceeding** [4] - 3234:3, 3248:2, 3248:13, 3249:3

**PROCEEDINGS** [1] - 3130:10

**proceedings** [10] - 3132:22, 3140:12, 3159:21, 3159:23, 3162:15, 3185:14, 3248:4, 3248:7, 3280:16, 3337:18

**Proceedings** [1] - 3131:25

**proceeds** [1] - 3340:10

**process** [3] - 3254:24, 3279:17, 3339:1

**produce** [1] - 3237:18

**produced** [2] - 3131:25, 3167:11

**profession** [1] - 3239:7

**professional** [1] - 3311:15

**proffer** [3] - 3261:21, 3340:14, 3340:24

**progress** [1] - 3146:20

**project** [8] - 3136:12, 3168:3, 3218:16, 3225:16, 3229:13, 3229:21, 3264:12, 3265:17

**projecting** [1] - 3337:9

**projects** [3] - 3148:19, 3167:13, 3167:23

**prolong** [1] - 3255:8

**promise** [3] - 3167:25, 3172:18, 3321:8

**promises** [2] - 3167:4, 3167:6

**promissory** [2] - 3323:20, 3324:20

**promptly** [1] - 3314:10

**pronunciation** [1] - 3312:14

**proof** [2] - 3192:13, 3338:1

**properly** [2] - 3176:20, 3192:15

**properties** [1] - 3172:17

**property** [13] - 3155:2, 3167:17, 3172:9, 3172:13, 3206:21, 3209:7, 3209:11, 3209:16, 3215:22, 3216:2, 3216:23, 3228:8, 3228:9

**proposed** [1] - 3231:25

**proposes** [1] - 3168:6

**prospective** [1] - 3332:2

**protect** [1] - 3167:3

**protected** [1] - 3248:5

**protective** [1] - 3246:16

**prove** [2] - 3192:14, 3194:24

**provide** [8] - 3164:15,

23

3164:20, 3165:2, 3168:6, 3170:21, 3238:7, 3282:8, 3325:10

**provided** [6] - 3169:7, 3198:8, 3265:16, 3279:24, 3280:2, 3282:3

**Providence** [1] - 3206:18

**provision** [2] - 3279:7, 3290:5

**public** [4] - 3182:15, 3183:6, 3246:18, 3249:9

**publicly** [3] - 3181:6, 3181:18, 3182:18

**publishing** [2] - 3289:10, 3313:4

**pull** [1] - 3266:21

**purchase** [13] - 3187:16, 3295:5, 3296:21, 3296:22, 3297:4, 3297:24, 3298:13, 3301:3, 3310:15, 3310:16, 3310:25, 3313:24, 3332:25

**purchaser** [3] - 3311:9, 3311:13, 3333:3

**purported** [1] - 3248:9

**purpose** [16] - 3136:20, 3139:5, 3141:7, 3143:3, 3152:10, 3178:6, 3180:24, 3194:14, 3247:20, 3252:9, 3252:11, 3286:4, 3324:16, 3338:5, 3339:19

**purposes** [15] - 3136:3, 3138:5, 3138:13, 3141:24, 3147:11, 3147:18, 3148:17, 3149:4, 3179:24, 3194:14, 3231:21, 3236:20, 3250:25, 3251:4, 3251:6

**pursuant** [2] - 3282:4, 3321:20

**pursue** [6] - 3136:7, 3138:6, 3138:7, 3138:13, 3138:14, 3237:15

**pursuing** [2] - 3144:1, 3290:14

**push** [1] - 3166:21

**pushing** [1] - 3284:17

**put** [20] - 3141:19, 3144:21, 3145:18, 3209:16, 3240:6, 3243:12, 3248:8, 3249:23, 3255:13, 3256:14, 3256:20, 3257:16, 3276:6, 3287:22, 3296:9, 3302:22, 3329:22, 3332:23, 3336:1, 3339:18

**putting** [5] - 3240:1, 3286:7, 3290:10, 3296:13, 3298:9

## Q

**qualifications** [1] - 3289:5

**quarters** [1] - 3302:14

**questioned** [2] - 3195:4, 3234:19

**questioner** [1] - 3204:20

**questioning** [7] - 3191:2, 3191:18, 3247:16, 3247:23, 3258:7, 3258:17, 3259:7

**questions** [62] - 3150:24, 3159:2, 3162:3, 3178:8, 3186:14, 3186:16, 3187:13, 3189:25, 3199:1, 3199:5, 3199:8, 3199:14, 3199:18, 3200:3, 3200:7, 3200:10, 3204:13, 3204:15, 3204:20, 3204:24, 3205:5, 3207:3, 3207:18, 3209:22, 3212:17, 3218:9, 3218:18, 3221:21, 3222:22, 3224:3, 3224:23, 3226:2, 3226:16, 3227:4, 3227:5, 3227:8, 3227:10, 3227:16, 3230:11, 3233:4, 3235:2, 3235:4, 3235:8, 3235:11, 3235:14, 3235:18, 3240:19, 3241:23, 3242:9, 3242:16, 3242:19, 3242:23, 3243:18, 3244:13, 3248:9, 3248:12, 3249:16, 3258:4, 3264:25, 3266:1, 3320:25, 3321:9

**queued** [1] - 3261:8

**quick** [4] - 3225:8, 3245:15, 3254:22, 3262:3

**quickly** [6] - 3159:12, 3161:2, 3215:16, 3242:14, 3335:15, 3336:20

**quite** [3] - 3254:15, 3256:9, 3339:7

**quote** [4] - 3202:5, 3221:16, 3242:9, 3243:7

**quotes** [10] - 3143:22, 3165:12, 3165:13, 3166:13, 3169:3, 3169:4, 3169:21, 3170:18, 3191:4, 3224:15

## R

**R-O-Z-E-N-B-O-O-M** [1] - 3266:20

**race** [4] - 3211:20, 3211:25, 3261:12, 3261:17

**raise** [1] - 3261:10

**raised** [2] - 3211:2,

3219:10

**raising** [1] - 3338:21

**ran** [2] - 3271:22, 3277:17

**Randi** [1] - 3336:16

**Ranford** [2] - 3338:12, 3340:17

**Ranford's** [1] - 3340:11

**rapid** [1] - 3235:16

**rate** [2] - 3217:21, 3219:14

**reach** [3] - 3337:24, 3338:14, 3340:7

**reached** [2] - 3293:12, 3332:10

**reaching** [1] - 3332:13

**read** [48] - 3144:12, 3145:23, 3147:21, 3147:24, 3147:25, 3149:24, 3151:8, 3151:10, 3151:12, 3151:15, 3151:19, 3153:1, 3155:3, 3155:5, 3157:2, 3157:15, 3158:3, 3167:9, 3179:22, 3183:23, 3187:9, 3187:12, 3188:22, 3190:21, 3195:21, 3195:23, 3196:14, 3197:19, 3221:14, 3224:5, 3231:11, 3238:11, 3238:12, 3238:14, 3238:15, 3239:16, 3241:1, 3243:4, 3243:21, 3244:1, 3244:2, 3284:1, 3284:21, 3290:13, 3302:7, 3305:18, 3316:6, 3335:17

**reading** [6] - 3149:8, 3151:11, 3154:23, 3165:14, 3283:20, 3284:7

**reads** [2] - 3231:20, 3232:4

**ready** [3] - 3132:4, 3132:6, 3245:13

**real** [1] - 3232:2

**realize** [2] - 3296:11, 3336:12

**really** [8] - 3193:6, 3202:3, 3253:9, 3253:15, 3254:24, 3286:3, 3308:18, 3323:11

**reason** [6] - 3137:2, 3227:19, 3228:6, 3255:15, 3261:13, 3315:21

**reassignment** [1] - 3319:16

**recalled** [1] - 3218:12

**receipt** [7] - 3163:23, 3231:23, 3239:23, 3248:16, 3315:25, 3340:1

**receipts** [2] - 3261:16, 3339:22, 3340:6

**receive** [7] - 3157:8, 3157:10, 3228:3, 3231:9, 3239:11, 3307:20, 3316:8

**received** [62] - 3140:3, 3146:15, 3146:23, 3149:22, 3151:8, 3157:13, 3159:14, 3162:14, 3165:20, 3179:3, 3203:1, 3226:23, 3226:25, 3228:7, 3237:12, 3238:20, 3238:24, 3239:8, 3240:1, 3250:25, 3263:8, 3294:10, 3297:22, 3299:13, 3299:17, 3299:21, 3300:6, 3301:16, 3303:20, 3305:10, 3305:23, 3307:21, 3310:24, 3313:3, 3315:11, 3316:24, 3317:11, 3319:6, 3320:7, 3322:13, 3323:10, 3324:10, 3335:1, 3335:9, 3343:14, 3343:20, 3343:23, 3343:24, 3344:1, 3344:3, 3344:5, 3344:7, 3344:9, 3344:10, 3344:12, 3344:13, 3344:15, 3344:16, 3344:17, 3344:18

**receiver** [2] - 3302:2, 3307:1

**receiving** [9] - 3149:7, 3157:22, 3179:23, 3189:18, 3226:25, 3227:1, 3227:12, 3282:19, 3324:8

**recently** [1] - 3148:2

**recess** [3] - 3197:23, 3260:7, 3309:4

**recipient** [2] - 3238:20, 3253:2

**recognize** [22] - 3139:23, 3147:8, 3159:14, 3164:25, 3165:7, 3165:17, 3213:19, 3226:13, 3268:10, 3268:12, 3269:20, 3272:6, 3272:8, 3288:6, 3293:17, 3298:23, 3303:5, 3303:6, 3304:14, 3310:12, 3318:14, 3334:10

**recognized** [1] - 3321:12

**recognizes** [1] - 3336:1

**recollection** [64] - 3134:24, 3135:1, 3137:8, 3138:17, 3139:7, 3139:9, 3139:15, 3143:9, 3147:22, 3149:3, 3153:6, 3153:8, 3154:9, 3154:15, 3154:22, 3154:25, 3157:21, 3160:15, 3160:20, 3160:25, 3161:10, 3176:19, 3177:4, 3177:6, 3177:18, 3177:23, 3178:1, 3178:21, 3181:10, 3181:17, 3182:4, 3182:8, 3183:12, 3183:19, 3184:2,

3187:14, 3188:25, 3189:5, 3189:11, 3190:13, 3190:14, 3190:19, 3190:22, 3191:12, 3192:25, 3196:15, 3197:11, 3204:19, 3204:21, 3206:7, 3232:17, 3235:10, 3238:25, 3240:20, 3241:3, 3243:5, 3243:13, 3244:3, 3244:8, 3244:11, 3282:19, 3282:23, 3325:7, 3331:22

**recollections** [1] - 3243:12

**recommended** [1] - 3172:1

**record** [27] - 3132:12, 3231:22, 3236:15, 3248:9, 3251:2, 3252:14, 3252:16, 3253:19, 3261:20, 3261:22, 3262:5, 3266:18, 3272:16, 3277:11, 3281:5, 3282:1, 3283:20, 3283:21, 3284:7, 3296:18, 3296:20, 3301:19, 3305:18, 3306:4, 3307:24, 3336:1, 3338:24

**recorded** [5] - 3131:25, 3186:11, 3201:3, 3201:6, 3201:13

**recordings** [2] - 3263:25, 3264:4

**records** [18] - 3163:9, 3217:25, 3246:6, 3246:10, 3251:3, 3251:15, 3261:14, 3261:16, 3272:18, 3282:10, 3282:21, 3301:11, 3316:17, 3338:22, 3339:18, 3339:20, 3340:5

**recover** [6] - 3136:12, 3137:15, 3147:17, 3164:16, 3314:8, 3332:5

**recovered** [2] - 3204:3, 3310:9

**recovering** [1] - 3332:16

**recross** [1] - 3226:17

**RECROSS** [6] - 3226:20, 3242:3, 3262:20, 3342:8, 3342:10, 3342:12

**RECROSS-EXAMINATION** [6] - 3226:20, 3242:3, 3262:20, 3342:8, 3342:10, 3342:12

**redact** [1] - 3248:21

**redirect** [8] - 3204:25, 3215:10, 3215:12, 3229:11, 3234:25, 3236:4, 3236:17, 3242:12

**REDIRECT** [2] - 3205:1, 3342:6

**reduced** [1] - 3284:16

**refer** [3] - 3196:13,

3250:19, 3269:16

**reference** [21] - 3208:19, 3236:1, 3236:23, 3237:2, 3237:7, 3237:22, 3240:20, 3246:22, 3246:23, 3249:1, 3249:2, 3250:16, 3263:25, 3302:12, 3306:25, 3321:11, 3322:4, 3322:5, 3323:22, 3324:14, 3328:3

**referenced** [3] - 3288:17, 3292:24, 3313:24

**references** [3] - 3248:4, 3317:17, 3324:1

**referred** [2] - 3190:1, 3315:18

**referring** [3] - 3181:2, 3264:10, 3337:21

**refers** [1] - 3225:3

**reflected** [1] - 3327:1

**reformatted** [1] - 3224:18

**refresh** [28] - 3134:23, 3135:1, 3143:9, 3149:3, 3154:9, 3154:14, 3154:22, 3154:25, 3160:15, 3160:20, 3160:25, 3161:10, 3177:18, 3178:21, 3182:3, 3182:8, 3184:2, 3187:14, 3188:25, 3189:5, 3189:11, 3190:21, 3196:15, 3235:10, 3241:3, 3244:3, 3244:11, 3325:7

**refreshes** [8] - 3147:22, 3181:16, 3183:19, 3190:19, 3197:11, 3243:5, 3243:13, 3244:8

**refreshing** [5] - 3190:12, 3190:13, 3192:25, 3243:12, 3327:6

**refusal** [1] - 3242:19

**regard** [5] - 3141:24, 3196:8, 3196:18, 3198:23, 3250:14, 3323:19

**regarding** [39] - 3133:25, 3135:24, 3143:22, 3146:20, 3155:18, 3157:5, 3161:18, 3162:10, 3163:5, 3163:25, 3164:20, 3165:1, 3165:3, 3168:12, 3178:9, 3182:4, 3182:5, 3183:8, 3190:22, 3191:2, 3195:4, 3200:4, 3200:10, 3205:5, 3206:2, 3209:22, 3212:6, 3218:13, 3231:25, 3246:6, 3248:12, 3258:7, 3258:17, 3259:7, 3262:14, 3319:14, 3332:25, 3335:17, 3337:12

**regardless** [1] - 3166:20

**regards** [2] - 3138:23, 3139:7, 3141:9, 3146:10, 3147:22, 3151:25,

3152:12, 3153:22, 3164:15, 3168:6, 3171:22, 3173:13, 3179:8, 3179:13, 3182:13, 3183:4, 3191:14, 3242:5, 3244:16, 3264:25, 3334:11, 3334:17

**registration** [1] - 3303:25

**registry** [4] - 3303:13, 3319:15, 3319:17, 3319:19

**rejected** [1] - 3230:19

**relate** [4] - 3250:6, 3252:16, 3253:13

**related** [4] - 3190:18, 3251:13, 3261:12, 3261:20

**relates** [16] - 3141:23, 3231:17, 3232:24, 3236:9, 3236:25, 3240:16, 3241:5, 3241:11, 3259:6, 3281:23, 3321:15, 3321:23, 3325:1, 3326:19, 3337:19, 3338:2

**relating** [1] - 3172:8

**relationship** [3] - 3267:22, 3267:23, 3267:24

**relaxed** [1] - 3172:12

**release** [10] - 3164:15, 3165:2, 3170:12, 3276:18, 3279:2, 3312:1, 3313:9, 3313:16, 3313:25, 3314:18

**released** [2] - 3300:10, 3313:18

**relevance** [10] - 3135:10, 3156:22, 3165:23, 3191:8, 3193:20, 3194:21, 3196:11, 3197:4, 3261:21, 3340:24

**relevancy** [5] - 3339:6, 3340:14, 3340:15, 3341:5, 3341:6

**relevant** [3] - 3252:22, 3339:11, 3340:23

**relying** [2] - 3282:19, 3312:3

**Rem** [1] - 3203:7

**remain** [2] - 3266:10, 3308:5

**remains** [1] - 3308:9

**remember** [90] - 3134:10, 3134:15, 3135:6, 3135:7, 3136:25, 3138:3, 3138:5, 3138:9, 3138:13, 3138:22, 3139:15, 3139:19, 3146:8, 3147:20, 3149:7, 3149:8, 3150:12, 3150:14, 3153:3, 3155:21, 3156:12, 3156:15, 3160:17, 3160:24, 3164:3, 3170:25, 3172:14, 3172:24, 3174:22, 3177:25, 3178:24, 3178:25, 3179:7, 3179:18, 3179:22,

3179:23, 3180:4, 3181:5, 3182:14, 3182:19, 3182:24, 3183:5, 3183:6, 3183:24, 3184:13, 3184:21, 3185:5, 3185:10, 3185:11, 3185:23, 3186:10, 3187:24, 3188:1, 3188:14, 3189:8, 3189:13, 3189:17, 3195:1, 3200:23, 3201:15, 3201:19, 3201:21, 3201:23, 3202:16, 3203:23, 3204:15, 3214:24, 3216:16, 3217:14, 3218:18, 3219:14, 3220:22, 3222:23, 3223:22, 3224:3, 3227:12, 3235:2, 3235:4, 3240:24, 3242:15, 3242:18, 3242:21, 3242:23, 3243:15, 3275:13, 3290:11, 3329:16, 3334:5, 3336:5

**remembers** [1] - 3195:2

**remind** [2] - 3133:8, 3313:10

**removed** [1] - 3180:15

**removing** [1] - 3180:21

**render** [1] - 3278:2

**rendered** [1] - 3259:11

**renovate** [1] - 3211:15

**renovating** [1] - 3211:25

**rent** [1] - 3211:23

**repaid** [2] - 3230:16, 3267:18

**repaired** [3] - 3276:2, 3276:3, 3278:1

**repaying** [1] - 3267:14

**repayment** [1] - 3267:15

**repeat** [3] - 3170:16, 3321:8, 3325:14

**repeatedly** [2] - 3229:16, 3235:9

**repeating** [1] - 3173:8

**rephrase** [3] - 3139:13, 3220:6, 3239:23

**replaced** [1] - 3277:19

**replied** [1] - 3265:11

**replies** [1] - 3169:13

**reply** [2] - 3187:19, 3187:24

**Report** [2] - 3311:25, 3313:16

**reported** [6] - 3271:22, 3271:24, 3274:15, 3278:15, 3298:11, 3298:12

**reportedly** [2] - 3298:5, 3298:11

**reporter** [7] - 3165:5, 3166:18, 3168:9, 3170:22,

3185:12, 3246:4, 3246:12
**Reporter** [1] - 3131:20
**Reports** [8] - 3287:20, 3287:21, 3287:24, 3295:10, 3299:1, 3300:1, 3301:19, 3302:3
**reports** [1] - 3312:6
**repossessed** [1] - 3284:16
**repossession** [1] - 3311:5
**represent** [5] - 3179:8, 3179:13, 3250:7, 3252:18, 3295:14
**representation** [1] - 3180:25
**representations** [1] - 3232:8
**representative** [1] - 3315:14
**representing** [1] - 3251:13
**request** [7] - 3201:8, 3237:12, 3257:3, 3282:4, 3282:15, 3286:3, 3306:24
**requested** [7] - 3237:2, 3237:4, 3237:6, 3237:10, 3238:1, 3325:2, 3325:5
**required** [1] - 3313:17
**requirement** [1] - 3300:25
**requires** [2] - 3231:10, 3248:10
**research** [2] - 3257:18, 3258:12
**resolution** [1] - 3334:21
**resolve** [6] - 3193:19, 3193:22, 3197:6, 3197:7, 3326:19, 3332:15
**resolved** [1] - 3148:2
**resolving** [4] - 3274:11, 3332:4, 3332:16, 3334:12
**respect** [21] - 3168:15, 3168:21, 3190:14, 3192:25, 3193:17, 3196:25, 3197:25, 3206:20, 3207:16, 3216:19, 3241:13, 3248:7, 3250:2, 3250:3, 3252:19, 3254:15, 3255:21, 3258:21, 3271:4, 3325:16, 3340:7
**respectfully** [1] - 3248:10
**respective** [1] - 3312:17
**respond** [6] - 3161:8, 3169:10, 3233:3, 3240:17, 3252:6
**responded** [1] - 3249:24
**responding** [3] - 3265:10, 3284:8, 3326:5
**response** [14] - 3170:1, 3170:6, 3195:17, 3195:18, 3225:10, 3232:5, 3235:11, 3236:4, 3237:17, 3240:21,

3249:14, 3249:24, 3252:10, 3265:13
**responsibilities** [1] - 3180:21
**responsibility** [1] - 3298:16
**responsible** [6] - 3286:23, 3286:25, 3287:5, 3296:13, 3298:14, 3305:25
**rest** [9] - 3159:8, 3195:10, 3213:22, 3255:20, 3279:10, 3290:13, 3300:24, 3312:15, 3312:17
**restated** [1] - 3319:25
**result** [11] - 3156:20, 3173:17, 3215:7, 3233:19, 3234:8, 3276:15, 3277:18, 3326:1, 3326:17, 3332:13, 3332:17
**resulting** [1] - 3333:10
**results** [1] - 3167:11
**retain** [1] - 3239:12
**retained** [1] - 3248:1
**return** [3] - 3172:18, 3217:21, 3230:19
**returned** [1] - 3135:22
**reveal** [3] - 3250:11, 3252:12, 3258:8
**review** [10] - 3160:16, 3177:16, 3201:12, 3231:10, 3239:12, 3249:25, 3280:23, 3339:2, 3339:8
**reviewed** [4] - 3190:18, 3237:20, 3238:3, 3282:22
**reviewing** [1] - 3339:3
**Rhode** [1] - 3206:19
**Richard** [8] - 3266:19, 3306:9, 3306:14, 3307:1, 3307:18, 3317:4, 3321:6, 3324:19
**RICHARD** [3] - 3130:22, 3266:12, 3342:14
**Richards** [30] - 3155:11, 3155:15, 3155:17, 3155:21, 3156:15, 3157:12, 3157:23, 3159:15, 3160:7, 3160:16, 3161:4, 3161:15, 3162:5, 3162:23, 3171:6, 3207:21, 3210:1, 3246:7, 3246:8, 3247:21, 3249:22, 3250:1, 3250:24, 3252:8, 3252:22, 3253:1, 3253:4, 3253:16, 3301:25, 3306:6
**richards** [1] - 3157:4, 3257:8
**Richards'** [4] - 3145:12, 3248:6, 3250:14, 3255:16
**rick** [1] - 3284:8

**Rick** [3] - 3266:7, 3283:21, 3321:5
**rights** [6] - 3248:6, 3316:3, 3330:18, 3330:19
**rise** [4] - 3132:1, 3132:23, 3261:3, 3262:16
**risk** [1] - 3217:18
**risks** [2] - 3187:20, 3188:6
**risky** [1] - 3188:4
**Rizzi** [6] - 3175:24, 3176:12, 3185:6, 3185:11, 3189:6, 3189:9
**Road** [1] - 3131:3
**ROBERT** [1] - 3131:4
**role** [13] - 3143:21, 3144:1, 3165:1, 3165:3, 3186:14, 3231:12, 3331:23, 3332:12, 3333:9, 3333:12, 3333:21, 3334:5, 3334:12
**roles** [1] - 3180:15
**Ron** [5] - 3155:11, 3155:15, 3157:12, 3163:16, 3246:7
**Ronald** [3] - 3145:12, 3301:25, 3306:6
**Rosario** [2] - 3264:9, 3264:13
**Rosenbaum** [1] - 3321:5
**Rosser** [1] - 3337:12
**rough** [3] - 3286:18, 3286:21, 3287:3
**roughly** [1] - 3211:4
**rounds** [1] - 3257:20
**Rozenboom** [14] - 3266:8, 3266:9, 3266:19, 3267:3, 3289:11, 3306:9, 3306:14, 3307:1, 3307:18, 3317:5, 3321:6, 3327:11, 3327:18, 3335:21
**ROZENBOOM** [2] - 3266:12, 3342:14
**rule** [1] - 3255:11
**Rule** [2] - 3191:1, 3194:12
**ruling** [3] - 3183:14, 3196:12
**run** [2] - 3196:8, 3334:7
**running** [1] - 3206:22
**runs** [1] - 3258:14
**Russia** [4] - 3144:19, 3158:11, 3159:5, 3215:1

**S**

**safe** [1] - 3335:18
**Sag** [2] - 3209:11, 3209:16
**sake** [1] - 3173:12
**sale** [11] - 3283:24, 3292:13, 3292:3, 3295:4, 3295:5, 3295:12, 3298:14, 3312:8, 3313:21, 3329:23,

3333:22
**salvage** [1] - 3278:3
**San** [15] - 3136:17, 3153:23, 3163:12, 3163:14, 3201:1, 3203:20, 3206:15, 3206:21, 3217:11, 3217:22, 3218:1, 3218:4, 3228:18, 3244:18, 3244:25
**SARITHA** [1] - 3130:16
**SAROKA** [1] - 3248:1
**Saroka** [1] - 3248:1
**sat** [1] - 3238:2
**satisfied** [3] - 3216:24, 3244:19, 3277:6
**satisfy** [3] - 3255:1, 3295:20, 3301:3
**satisfying** [1] - 3300:20
**save** [2] - 3197:20, 3332:8
**saw** [6] - 3172:13, 3206:2, 3217:3, 3218:3, 3227:12, 3236:24
**schedule** [2] - 3257:12, 3277:20
**scope** [1] - 3242:11
**screen** [2] - 3161:3, 3167:7
**seal** [3] - 3246:1, 3249:9, 3262:5
**sealed** [1] - 3262:12
**seated** [9] - 3132:2, 3132:25, 3190:8, 3261:4, 3262:18, 3266:21, 3309:5, 3310:2, 3335:22
**second** [20] - 3143:3, 3166:8, 3170:1, 3177:12, 3191:7, 3206:16, 3244:4, 3244:7, 3244:9, 3244:12, 3253:15, 3273:11, 3287:15, 3293:25, 3297:25, 3298:1, 3299:23, 3313:9, 3333:7
**Second** [1] - 3259:12
**seconds** [3] - 3140:10, 3194:6, 3194:9
**secret** [1] - 3156:21
**section** [11] - 3145:6, 3152:1, 3197:16, 3238:16, 3289:17, 3290:3, 3290:4, 3292:1, 3292:13, 3295:23, 3297:25
**sections** [1] - 3177:14
**secure** [2] - 3187:21, 3334:4
**secured** [1] - 3268:4
**securing** [2] - 3333:9, 3334:1
**security** [10] - 3185:19, 3268:19, 3269:3, 3318:24, 3319:10, 3327:20, 3328:3, 3328:15, 3328:18, 3329:6

**see** [59] - 3133:3, 3142:11, 3142:23, 3145:8, 3146:24, 3147:21, 3153:2, 3166:8, 3169:23, 3170:7, 3178:20, 3181:16, 3187:7, 3188:20, 3188:21, 3190:20, 3194:10, 3198:17, 3205:7, 3213:23, 3217:24, 3226:18, 3227:2, 3229:6, 3230:16, 3245:10, 3254:14, 3259:10, 3265:21, 3268:25, 3270:15, 3274:24, 3282:7, 3285:2, 3294:18, 3302:1, 3302:4, 3306:6, 3306:8, 3306:10, 3306:16, 3307:10, 3307:15, 3307:19, 3307:20, 3317:2, 3317:18, 3317:22, 3317:24, 3318:2, 3318:3, 3318:7, 3321:16, 3321:22, 3330:23, 3338:8, 3339:11
**seeing** [4] - 3149:9, 3174:19, 3206:8, 3340:18
**selection** [1] - 3321:14
**sell** [8] - 3271:20, 3279:4, 3293:9, 3298:10, 3311:11, 3329:9, 3329:10, 3334:7
**seller** [1] - 3311:7
**selling** [6] - 3206:14, 3206:20, 3293:6, 3313:23, 3329:11, 3333:14
**send** [8] - 3145:11, 3165:12, 3169:21, 3170:5, 3214:7, 3224:6, 3224:10, 3224:13
**sender** [1] - 3301:24
**sending** [3] - 3169:2, 3305:25, 3335:14
**senior** [1] - 3267:9
**sense** [5] - 3145:16, 3227:19, 3235:20, 3235:23, 3325:1
**sensitive** [1] - 3246:17
**sent** [19] - 3139:23, 3141:17, 3141:18, 3141:19, 3141:20, 3147:5, 3160:16, 3165:9, 3165:10, 3168:18, 3168:22, 3213:3, 3213:4, 3213:19, 3221:5, 3224:8, 3308:22, 3311:24, 3317:8
**separate** [3] - 3153:7, 3242:13, 3259:10
**separately** [2] - 3178:16, 3263:13
**September** [12] - 3238:19, 3305:19, 3307:9, 3316:1, 3317:2, 3317:5, 3317:19, 3317:21, 3317:22, 3318:7,

3328:9
**Sergei** [8] - 3241:11, 3268:24, 3288:15, 3289:14, 3325:15, 3325:25, 3326:8, 3331:1
**serial** [1] - 3302:16
**series** [12] - 3205:4, 3212:17, 3218:8, 3226:2, 3227:7, 3235:18, 3239:4, 3239:5, 3273:13, 3273:25, 3321:16, 3322:17
**serious** [1] - 3167:12
**seriously** [2] - 3255:5, 3284:20
**services** [5] - 3259:11, 3311:8, 3311:14, 3312:15, 3333:4
**set** [5] - 3168:9, 3222:10, 3231:5, 3290:11, 3319:15
**setting** [2] - 3247:20, 3252:17
**settle** [6] - 3137:4, 3139:2, 3190:25, 3191:3, 3212:18, 3314:14
**Settlement** [57] - 3135:20, 3135:24, 3136:5, 3137:2, 3137:22, 3138:6, 3138:24, 3139:19, 3140:23, 3141:24, 3142:4, 3142:14, 3142:20, 3143:4, 3146:21, 3147:3, 3147:13, 3147:18, 3147:23, 3149:4, 3149:11, 3151:5, 3152:10, 3152:13, 3164:10, 3164:12, 3164:19, 3165:3, 3196:7, 3199:6, 3199:8, 3199:20, 3200:6, 3200:7, 3200:9, 3207:22, 3207:23, 3207:25, 3208:5, 3209:23, 3211:3, 3211:8, 3211:10, 3211:14, 3211:18, 3211:22, 3212:14, 3212:19, 3212:24, 3214:21, 3220:5, 3220:11, 3222:19, 3236:11, 3236:18, 3244:16, 3244:24
**settlement** [23] - 3148:3, 3191:1, 3193:16, 3193:19, 3194:12, 3194:21, 3197:1, 3197:2, 3252:21, 3256:7, 3288:9, 3288:23, 3297:3, 3314:22, 3315:3, 3315:12, 3316:10, 3318:21, 3327:21, 3327:25, 3328:4, 3331:19, 3332:11
**settling** [3] - 3145:13, 3331:23
**seven** [1] - 3167:10
**several** [4] - 3136:3, 3148:4, 3167:16, 3274:22

**SFG** [8] - 3311:2, 3311:7, 3313:22, 3315:13, 3315:14, 3316:2, 3318:19
**SFG's** [2] - 3315:25, 3316:3
**shall** [6] - 3290:23, 3293:9, 3294:14, 3308:16, 3315:17, 3316:2
**share** [3] - 3206:21, 3213:5, 3215:8
**shared** [3] - 3139:18, 3143:8, 3214:13
**shareholder** [1] - 3186:6
**shareholder's** [1] - 3222:23
**shareholders** [1] - 3212:20
**shareholders'** [2] - 3184:9, 3184:14
**shares** [10] - 3137:24, 3139:16, 3139:17, 3143:6, 3143:7, 3143:10, 3143:12, 3214:12, 3214:13
**Shargel** [1] - 3259:12
**shattered** [1] - 3249:14
**shield** [1] - 3258:16
**shit** [1] - 3169:15
**short** [3] - 3198:16, 3227:21, 3296:8
**shortfall** [2] - 3296:10, 3300:15
**shot** [1] - 3338:19
**show** [29] - 3134:20, 3139:21, 3146:23, 3152:20, 3159:11, 3162:9, 3163:22, 3164:23, 3174:18, 3177:10, 3178:8, 3181:15, 3183:16, 3187:2, 3188:18, 3189:22, 3193:21, 3195:13, 3196:13, 3202:14, 3207:13, 3226:10, 3243:3, 3243:4, 3262:24, 3264:16, 3327:22, 3334:9, 3339:20
**showed** [3] - 3132:21, 3185:4, 3196:1, 3207:13, 3224:1, 3324:19, 3324:20, 3325:9
**showing** [7] - 3172:17, 3183:14, 3183:15, 3183:17, 3190:17, 3205:11, 3339:22
**shown** [5] - 3184:1, 3216:12, 3217:24, 3220:24, 3321:12
**shows** [6] - 3192:9, 3196:8, 3253:19, 3307:22, 3312:13, 3340:1
**side** [1] - 3303:13
**sidebar** [5] - 3196:22, 3197:9, 3245:16, 3262:6,

3262:12
**Sidebar** [2] - 3246:1, 3251:16
**sidebars** [1] - 3132:12
**sign** [7] - 3172:8, 3232:10, 3232:13, 3239:19, 3239:22, 3240:8, 3288:18
**signatories** [2] - 3294:20, 3294:21
**signatory** [1] - 3268:18
**signature** [20] - 3178:24, 3205:25, 3206:3, 3206:8, 3206:11, 3206:12, 3225:11, 3225:13, 3231:10, 3231:11, 3231:18, 3232:14, 3232:20, 3232:21, 3268:16, 3288:11, 3293:23, 3314:24, 3315:1
**signatures** [3] - 3268:25, 3288:16, 3333:6
**signed** [12] - 3174:12, 3179:12, 3223:16, 3232:5, 3288:14, 3288:16, 3293:23, 3296:23, 3297:9, 3297:10, 3323:20, 3325:25
**significance** [1] - 3277:8
**significantly** [2] - 3277:21, 3277:23
**signify** [1] - 3302:23
**signing** [1] - 3313:15
**signor** [1] - 3268:19
**signs** [1] - 3288:12
**similar** [4] - 3141:6, 3178:22, 3322:14, 3322:15
**Simon** [2] - 3144:20, 3145:10
**simple** [7] - 3181:15, 3233:22, 3249:16, 3256:11, 3258:3, 3285:20
**simpler** [1] - 3150:10
**simplified** [1] - 3288:2
**simply** [3] - 3230:13, 3239:11, 3324:25
**sit** [4] - 3212:25, 3217:9, 3225:9, 3236:23
**situation** [4] - 3144:20, 3167:2, 3256:7, 3258:10
**six** [2] - 3227:13, 3244:25
**slaughter** [1] - 3312:14
**small** [3] - 3192:12, 3195:9, 3231:6
**snuff** [1] - 3276:8
**sold** [7] - 3275:1, 3295:5, 3296:4, 3298:3, 3304:5, 3310:10, 3333:1
**solutions** [1] - 3318:2
**solve** [2] - 3276:25, 3277:1
**someone** [3] - 3234:20, 3282:20, 3311:14

**sometime** [1] - 3140:25
**sometimes** [9] - 3166:7, 3217:18, 3239:14, 3239:17, 3239:25, 3240:16, 3279:19, 3302:23, 3339:25
**somewhere** [2] - 3203:13, 3308:18
**sooner** [1] - 3339:9
**Soroka** [1] - 3246:2
**sorry** [19] - 3154:4, 3154:5, 3154:18, 3157:18, 3159:7, 3171:20, 3177:25, 3178:14, 3183:2, 3224:24, 3232:12, 3272:10, 3292:21, 3293:1, 3293:24, 3299:18, 3304:4, 3321:7, 3338:3
**sort** [6] - 3172:18, 3219:13, 3224:20, 3246:17, 3286:24, 3329:10
**sorted** [1] - 3284:18
**sounds** [4] - 3233:1, 3241:15, 3338:19, 3340:23
**Source** [8] - 3267:7, 3269:3, 3272:14, 3288:23, 3307:3, 3311:4, 3312:16, 3317:7
**source** [1] - 3278:19
**SOURCE** [2] - 3321:16, 3322:17
**South** [2] - 3267:5, 3307:3
**Space** [6] - 3295:9, 3299:1, 3300:1, 3301:7, 3301:19, 3302:3
**spanned** [1] - 3271:18
**speaking** [2] - 3237:7, 3242:21
**speaks** [1] - 3225:18
**Special** [3] - 3234:7, 3234:14, 3337:8
**specific** [10] - 3156:3, 3167:4, 3172:23, 3174:5, 3227:3, 3235:14, 3235:15, 3252:17, 3252:25, 3271:7
**specifically** [6] - 3186:5, 3201:21, 3321:24, 3332:6, 3333:16, 3340:11
**specifics** [1] - 3286:22
**specified** [1] - 3289:21
**speed** [1] - 3257:2
**spell** [3] - 3266:18, 3311:8, 3317:7
**spelled** [3] - 3143:6, 3144:17, 3287:2
**spend** [1] - 3259:4
**spending** [2] - 3145:20, 3151:4
**spent** [6] - 3137:23, 3142:25, 3144:10,

**spite** [1] - 3284:14
**split** [3] - 3139:18, 3143:7, 3214:13
**spoken** [2] - 3256:4, 3327:14
**sponsorship** [1] - 3211:20
**sports** [1] - 3158:24
**Square** [1] - 3130:21
**squiggly** [1] - 3216:13
**stack** [1] - 3279:15
**staff** [1] - 3335:25
**stage** [1] - 3339:11
**stand** [4] - 3190:12, 3252:8, 3255:22, 3266:10
**standing** [5] - 3177:8, 3177:21, 3243:25, 3248:17, 3266:10
**stands** [1] - 3142:4
**start** [7] - 3166:22, 3221:16, 3268:1, 3278:2, 3279:3, 3299:19, 3300:5
**started** [4] - 3218:15, 3255:19, 3277:17, 3278:10
**starting** [2] - 3205:4, 3311:22
**starts** [1] - 3169:19
**state** [11] - 3168:17, 3168:22, 3177:2, 3177:20, 3199:7, 3235:7, 3266:17, 3271:5, 3276:15, 3322:20, 3335:13
**statement** [12] - 3173:14, 3279:24, 3280:8, 3299:1, 3299:5, 3299:25, 3306:5, 3312:5, 3312:13, 3317:1, 3317:21
**statements** [5] - 3166:16, 3168:20, 3218:9, 3335:11, 3335:13
**STATES** [3] - 3130:1, 3130:3, 3130:11
**states** [2] - 3163:8, 3315:17
**States** [3] - 3130:6, 3130:14, 3130:17
**status** [1] - 3272:2
**statute** [2] - 3246:14, 3248:5
**staying** [1] - 3185:3
**stealing** [1] - 3194:1
**Steiger** [1] - 3131:20
**stenographer** [1] - 3240:25
**stenography** [1] - 3131:25
**step** [2] - 3266:3, 3335:21
**steps** [2] - 3251:4, 3266:5
**stereo** [1] - 3338:3
**Stewart** [1] - 3337:5
**still** [9] - 3133:8, 3143:25, 3158:23, 3183:3, 3194:14,

3146:21, 3208:9, 3209:24
3194:20, 3217:11, 3283:23
**stip** [1] - 3316:16
**Stip** [3] - 3316:21, 3316:23, 3344:11
**stipulate** [7] - 3261:13, 3261:19, 3262:15, 3270:5, 3270:6, 3338:4, 3338:23
**stipulated** [3] - 3192:23, 3301:10, 3319:24
**stipulates** [1] - 3202:19
**stipulation** [9] - 3255:1, 3316:16, 3316:21, 3336:16, 3337:25, 3338:6, 3338:14, 3338:15, 3340:7
**stipulations** [1] - 3261:11
**stocks** [2] - 3213:3, 3213:4
**stole** [2] - 3161:8, 3161:12
**Stolper** [13] - 3139:24, 3140:25, 3141:10, 3146:4, 3173:6, 3173:9, 3173:19, 3173:20, 3179:7, 3179:12, 3179:24, 3191:18, 3193:13
**Stolper's** [1] - 3142:3
**stop** [2] - 3137:13, 3290:14
**stopped** [3] - 3273:17, 3314:4, 3314:5
**story** [2] - 3248:23, 3283:9
**Strangford** [1] - 3131:7
**strategy** [1] - 3334:20
**strictly** [1] - 3142:9
**strike** [4] - 3159:1, 3162:2, 3184:3, 3313:14
**string** [2] - 3334:10, 3334:16
**struggling** [1] - 3284:12
**stuff** [2] - 3220:15, 3334:13
**Stumpel** [1] - 3331:2
**sub** [2] - 3247:15
**subject** [9] - 3141:2, 3142:4, 3169:21, 3213:10, 3256:25, 3285:1, 3286:15, 3298:3, 3298:10
**subjective** [1] - 3254:7
**subjects** [1] - 3165:12
**submission** [6] - 3246:24, 3250:24, 3254:21, 3255:7, 3255:13, 3301:10
**submitted** [1] - 3295:9
**subpoena** [1] - 3321:20
**subscriptions** [2] - 3206:14, 3206:20
**subsection** [1] - 3287:4
**subsequent** [1] - 3257:5
**subsequently** [2] - 3170:20, 3241:13
**subsidiary** [2] - 3311:4, 3313:23
**substance** [3] - 3228:21, 3240:22, 3241:2
**substantially** [1] - 3197:4

**success** [1] - 3167:22
**successful** [1] - 3279:19
**succession** [1] - 3235:16
**sue** [8] - 3136:11, 3158:13, 3176:21, 3177:1, 3177:8, 3252:24, 3294:23, 3315:16
**Suffolk** [1] - 3130:21
**suggest** [3] - 3241:1, 3248:10, 3325:6
**suggesting** [5] - 3215:6, 3217:3, 3217:25, 3218:3, 3258:3
**suing** [4] - 3153:21, 3174:25, 3175:2, 3194:8
**suit** [36] - 3138:14, 3146:5, 3153:21, 3154:9, 3155:7, 3155:9, 3155:14, 3155:22, 3156:2, 3156:16, 3158:5, 3158:12, 3158:15, 3158:17, 3161:19, 3162:10, 3163:5, 3171:7, 3173:21, 3173:23, 3174:1, 3174:22, 3175:5, 3175:6, 3176:17, 3179:8, 3182:13, 3182:16, 3182:24, 3183:3, 3183:4, 3183:8, 3183:24, 3184:16, 3199:3, 3232:23
**suits** [5] - 3153:4, 3153:7, 3156:12, 3163:19, 3194:13
**sum** [2] - 3240:21, 3315:25
**summarize** [1] - 3339:18
**summary** [1] - 3286:1
**summer** [1] - 3184:15
**suppertime** [1] - 3275:12
**supply** [1] - 3308:22
**support** [1] - 3285:15
**supporting** [1] - 3220:1
**supposed** [5] - 3174:6, 3223:6, 3292:14, 3295:25, 3340:12
**surprise** [1] - 3142:25
**surrender** [3] - 3277:3, 3292:8, 3292:10
**surrendered** [2] - 3278:25, 3296:3
**surrounding** [1] - 3268:14
**surrounds** [1] - 3328:19
**sustained** [13] - 3156:10, 3159:2, 3162:3, 3183:11, 3203:22, 3206:6, 3209:13, 3216:9, 3220:20, 3222:5, 3224:23, 3229:9, 3241:22
**sworn** [3] - 3133:14, 3232:24, 3266:14
**Sydor** [1] - 3331:1
**system** [1] - 3282:2

# T

**tagged** [1] - 3321:14
**tail** [4] - 3270:3, 3302:16, 3302:20, 3304:6
**taken.)** [1] - 3197:23
**talks** [4] - 3160:18, 3162:6, 3166:12, 3330:17
**Tamalpais** - 3340:8
**Tape** [3] - 3263:22, 3264:7, 3264:22
**tape** [5] - 3261:7, 3263:23, 3264:8, 3264:23, 3265:1
**taped** [2] - 3262:23, 3263:4
**tapes** [3] - 3262:14, 3263:9, 3263:12
**tardy** [1] - 3271:8
**target** [1] - 3141:2
**taught** [1] - 3201:2
**TC** [2] - 3287:6, 3303:2
**telephone** [9] - 3146:14, 3185:25, 3234:8, 3242:21, 3242:24, 3243:16, 3244:4, 3327:15, 3331:18
**terms** [22] - 3167:5, 3196:18, 3250:5, 3253:10, 3254:12, 3272:1, 3274:11, 3276:11, 3278:22, 3279:23, 3286:1, 3286:18, 3290:16, 3293:2, 3293:3, 3293:4, 3297:2, 3300:5, 3305:17, 3311:13, 3313:20, 3315:24
**testified** [39] - 3133:14, 3135:2, 3135:16, 3137:1, 3139:10, 3150:11, 3171:13, 3172:1, 3172:7, 3183:11, 3190:15, 3190:21, 3192:4, 3195:3, 3199:2, 3200:13, 3205:19, 3222:16, 3227:19, 3229:10, 3230:1, 3232:22, 3233:2, 3242:8, 3244:17, 3249:21, 3258:24, 3266:14, 3283:5, 3285:22, 3295:4, 3310:5, 3319:9, 3325:13, 3328:1, 3330:10, 3331:7
**testifies** [1] - 3190:15
**testify** [17] - 3171:6, 3171:22, 3200:2, 3204:7, 3212:2, 3225:20, 3248:14, 3248:15, 3249:7, 3249:11, 3255:23, 3256:18, 3337:6, 3337:18, 3337:20, 3338:16
**testifying** [6] - 3134:15, 3171:16, 3172:14, 3172:24, 3199:13, 3218:13
**testimony** [45] - 3133:25,

3134:2, 3135:6, 3135:7, 3136:2, 3144:23, 3156:4, 3158:2, 3158:10, 3169:6, 3169:8, 3174:11, 3192:6, 3195:10, 3196:5, 3200:10, 3205:16, 3205:17, 3222:6, 3226:24, 3228:15, 3229:5, 3229:14, 3232:17, 3232:24, 3233:5, 3234:2, 3234:18, 3236:16, 3236:17, 3237:11, 3237:13, 3238:8, 3239:1, 3239:3, 3240:21, 3242:5, 3247:3, 3247:5, 3250:14, 3255:3, 3280:14, 3321:9, 3323:13, 3338:9
**text** [6] - 3239:9, 3239:19, 3239:24, 3240:9, 3240:13, 3240:16
**texts** [1] - 3239:22
**THE** [207] - 3130:11, 3132:1, 3132:2, 3132:4, 3132:7, 3132:10, 3132:18, 3132:23, 3132:25, 3133:3, 3133:10, 3133:17, 3135:11, 3138:2, 3140:6, 3140:7, 3140:11, 3140:15, 3150:11, 3150:20, 3151:7, 3151:22, 3154:16, 3156:10, 3156:23, 3157:19, 3159:2, 3159:24, 3160:3, 3162:3, 3162:18, 3165:24, 3166:1, 3168:11, 3171:19, 3172:5, 3174:15, 3181:25, 3183:11, 3183:16, 3183:18, 3184:4, 3186:8, 3190:1, 3190:4, 3190:8, 3190:11, 3191:16, 3192:20, 3194:5, 3195:3, 3195:11, 3195:15, 3195:23, 3196:10, 3196:12, 3196:22, 3197:21, 3197:24, 3198:8, 3198:11, 3198:19, 3198:25, 3200:21, 3202:22, 3202:24, 3203:2, 3203:5, 3203:22, 3204:2, 3204:7, 3204:25, 3206:6, 3209:13, 3209:18, 3215:12, 3216:9, 3219:6, 3220:20, 3222:5, 3224:23, 3225:21, 3226:17, 3229:9, 3230:22, 3241:22, 3241:25, 3242:14, 3243:9, 3243:11, 3245:5, 3245:10, 3245:13, 3245:17, 3246:19, 3247:4, 3247:8, 3247:24, 3248:11, 3248:25, 3249:6, 3249:23, 3252:2, 3253:3, 3254:1, 3254:4, 3255:12, 3256:13,

3256:17, 3256:23, 3257:7, 3257:11, 3257:14, 3257:16, 3258:1, 3259:15, 3259:21, 3259:23, 3259:25, 3260:6, 3261:3, 3261:4, 3261:8, 3261:23, 3261:25, 3262:2, 3262:7, 3262:9, 3262:12, 3262:16, 3262:18, 3263:11, 3263:15, 3263:18, 3264:1, 3264:17, 3264:19, 3266:3, 3266:6, 3266:9, 3266:17, 3266:19, 3266:21, 3266:23, 3266:9, 3270:9, 3270:12, 3273:7, 3280:15, 3280:18, 3283:1, 3289:7, 3292:22, 3292:23, 3292:24, 3294:9, 3297:20, 3299:12, 3301:15, 3303:18, 3305:9, 3308:3, 3308:5, 3308:10, 3308:13, 3308:20, 3308:25, 3309:3, 3309:5, 3310:2, 3310:23, 3312:21, 3312:23, 3313:1, 3315:10, 3316:18, 3316:21, 3319:5, 3320:2, 3320:5, 3321:1, 3322:12, 3323:4, 3323:5, 3323:7, 3323:9, 3327:7, 3327:17, 3329:20, 3335:5, 3335:8, 3335:11, 3335:21, 3335:25, 3336:12, 3336:18, 3336:25, 3337:3, 3337:15, 3338:4, 3338:18, 3339:2, 3339:20, 3340:3, 3340:21, 3341:3, 3341:8
**their..** [1] - 3247:18
**third** [3] - 3213:1, 3339:6, 3339:12
**third-party** [1] - 3339:12
**Thomas** [2] - 3216:13, 3242:16
**three** [13] - 3136:25, 3137:9, 3139:16, 3151:23, 3163:1, 3164:23, 3165:6, 3194:6, 3194:9, 3227:13, 3264:16, 3302:14
**three-quarters** [1] - 3302:14
**Thursday** [6] - 3256:14, 3256:21, 3259:16, 3337:9, 3337:10, 3337:17
**tied** [1] - 3173:2
**Tim** [2] - 3175:16, 3175:18
**timeline** [1] - 3167:5
**title** [3] - 3267:8, 3316:4, 3329:17
**today** [19] - 3204:8, 3207:9, 3212:25, 3215:3, 3217:9, 3217:20, 3220:22,

3221:11, 3227:19, 3229:5, 3238:25, 3241:19, 3252:4, 3280:24, 3317:9, 3327:14, 3334:18, 3338:7, 3338:21
**today's** [2] - 3248:24, 3249:3
**together** [2] - 3282:12, 3332:23
**Tom** [1] - 3327:17
**TOMMY** [1] - 3130:7
**Tommy** [53] - 3142:7, 3144:16, 3145:7, 3145:11, 3145:17, 3145:19, 3145:22, 3168:9, 3175:13, 3180:6, 3180:23, 3185:19, 3213:25, 3214:1, 3221:10, 3224:9, 3236:6, 3236:19, 3252:11, 3267:21, 3275:6, 3275:8, 3275:13, 3275:15, 3276:7, 3276:13, 3278:9, 3278:16, 3278:19, 3278:23, 3279:9, 3282:18, 3284:20, 3287:6, 3288:14, 3288:24, 3294:24, 3295:15, 3296:15, 3296:25, 3297:10, 3298:6, 3298:12, 3312:4, 3313:17, 3314:7, 3314:8, 3319:14, 3320:18, 3326:22, 3332:2, 3332:14
**Tommy's** [1] - 3170:18
**tomorrow** [6] - 3256:20, 3257:17, 3335:16, 3335:23, 3336:14, 3336:22
**tonight** [1] - 3336:24
**took** [6] - 3153:7, 3200:8, 3275:11, 3330:7, 3332:1, 3334:3
**top** [7] - 3279:16, 3283:14, 3298:1, 3300:6, 3301:20, 3323:23
**topic** [2] - 3234:14, 3243:14
**topics** [1] - 3327:19
**total** [3] - 3277:1, 3292:2, 3292:4
**totally** [1] - 3242:13
**toward** [3] - 3216:24, 3298:7, 3302:13
**towards** [2] - 3144:21, 3216:4
**track** [1] - 3339:10
**trade** [3] - 3285:1, 3286:5, 3286:7
**transaction** [26] - 3173:2, 3232:6, 3250:11, 3258:8, 3258:15, 3259:6, 3276:25, 3279:14, 3285:12, 3285:18, 3286:2, 3287:5, 3287:7, 3287:23, 3294:4,

3298:18, 3299:2, 3299:5, 3301:8, 3302:10, 3302:19, 3304:8, 3314:15, 3317:12, 3329:14, 3329:22
**transactions** [5] - 3232:1, 3250:5, 3288:1, 3289:21, 3322:4
**transactions)** [1] - 3232:3
**transcribes** [1] - 3185:14
**transcript** [3] - 3131:25, 3264:16, 3264:18
**TRANSCRIPT** [1] - 3130:10
**transcripts** [2] - 3262:15, 3263:16
**transfer** [20] - 3222:7, 3222:8, 3301:22, 3306:9, 3306:17, 3306:24, 3307:9, 3307:14, 3307:18, 3316:2, 3317:4, 3317:15, 3317:16, 3317:23, 3319:18, 3328:20, 3329:17, 3329:21, 3339:23, 3340:17
**transferred** [1] - 3319:8
**transferring** [1] - 3318:11
**transfers** [5] - 3163:10, 3252:21, 3252:23, 3252:25, 3253:13
**transparent** [1] - 3172:12
**treated** [1] - 3181:1
**trial** [6] - 3251:12, 3255:2, 3256:1, 3258:22, 3259:20, 3341:9
**tried** [2] - 3274:22, 3276:21
**trip** [1] - 3335:18
**trouble** [2] - 3275:9, 3313:17
**troubles** [1] - 3135:14
**true** [46] - 3171:25, 3202:7, 3208:15, 3219:12, 3219:21, 3220:3, 3220:15, 3220:18, 3221:7, 3221:9, 3221:12, 3227:20, 3228:6, 3228:10, 3230:25, 3236:10, 3238:3, 3238:19, 3240:14, 3244:23, 3269:2, 3269:25, 3272:13, 3280:7, 3281:1, 3281:13, 3288:22, 3294:2, 3297:12, 3299:4, 3303:7, 3303:10, 3304:19, 3310:16, 3315:3, 3318:23, 3319:20, 3322:3, 3322:20, 3325:17, 3325:20, 3325:23, 3326:2, 3326:3, 3326:9, 3326:20
**trusted** [2] - 3158:8, 3158:9
**Trustee** [1] - 3294:23
**truth** [3] - 3168:16, 3168:20, 3335:12
**try** [15] - 3140:18, 3140:19, 3159:11, 3176:24,

3193:19, 3196:16, 3196:19, 3205:3, 3271:19, 3314:6, 3327:18, 3332:8, 3333:14, 3334:7, 3338:17
**trying** [16] - 3150:17, 3154:18, 3158:23, 3188:4, 3189:14, 3192:10, 3192:13, 3193:2, 3194:1, 3194:17, 3195:16, 3197:7, 3248:17, 3285:13, 3295:21, 3326:19
**turn** [9] - 3153:1, 3166:8, 3280:21, 3284:23, 3292:8, 3297:24, 3306:22, 3317:13, 3330:17
**turned** [2] - 3202:2, 3202:4
**turning** [6] - 3284:3, 3304:2, 3306:15, 3313:19, 3316:25, 3317:22
**Twain** [1] - 3225:23
**two** [44] - 3137:3, 3152:13, 3152:15, 3153:4, 3153:7, 3160:20, 3170:4, 3177:10, 3181:1, 3191:11, 3197:14, 3198:15, 3227:13, 3234:9, 3242:20, 3247:17, 3257:20, 3257:23, 3258:4, 3260:2, 3261:6, 3262:24, 3263:14, 3265:16, 3267:20, 3268:3, 3268:21, 3269:13, 3270:25, 3271:1, 3271:4, 3278:24, 3279:1, 3285:4, 3298:3, 3303:18, 3310:5, 3330:7, 3331:8, 3331:19, 3331:24, 3334:12, 3338:22
**type** [5] - 3231:2, 3231:14, 3255:1, 3258:21, 3269:15
**types** [1] - 3258:5
**typical** [2] - 3261:16, 3340:6
**typically** [1] - 3311:5
**Tyson** [2] - 3184:22, 3185:24

### U

**U.S** [2] - 3234:21, 3239:9
**ultimately** [7] - 3160:21, 3212:10, 3298:18, 3333:1, 3333:19, 3334:20, 3334:22
**un-admitted** [1] - 3165:15
**unauthorized** [2] - 3259:2, 3340:4
**uncomfortable** [2] - 3166:22, 3221:17
**under** [21] - 3133:8, 3135:16, 3167:23, 3172:7, 3175:2, 3197:3, 3200:2,

3203:20, 3214:10, 3234:22, 3238:24, 3246:1, 3246:14, 3249:9, 3251:7, 3268:19, 3289:22, 3290:15, 3292:13, 3292:14, 3295:25
**understandings** [1] - 3254:8
**understood** [4] - 3217:15, 3276:2, 3276:5, 3330:20
**unfairly** [1] - 3181:1
**unfortunate** [1] - 3167:2
**unhappy** [1] - 3145:13
**UNITED** [3] - 3130:1, 3130:3, 3130:11
**United** [3] - 3130:6, 3130:14, 3130:17
**unless** [1] - 3250:13
**up** [41] - 3132:12, 3136:16, 3139:18, 3140:4, 3143:7, 3168:9, 3173:3, 3178:12, 3180:12, 3185:4, 3186:16, 3195:9, 3212:9, 3214:13, 3225:8, 3231:5, 3232:19, 3234:15, 3234:22, 3247:17, 3248:19, 3257:2, 3261:8, 3266:9, 3266:21, 3266:22, 3275:3, 3276:8, 3276:13, 3277:17, 3279:8, 3279:10, 3286:19, 3295:19, 3299:23, 3314:3, 3318:11, 3319:15, 3320:9, 3327:18, 3341:1
**update** [1] - 3160:9
**updated** [1] - 3147:23
**updating** [1] - 3146:19
**upfront** [1] - 3164:11
**usage** [1] - 3277:16
**user** [1] - 3311:18
**uses** [3] - 3161:21, 3259:2, 3259:8
**utilize** [1] - 3148:21
**utilized** [1] - 3236:3
**utter** [1] - 3222:11

### V

**Valley** [3] - 3134:8, 3135:16, 3200:12
**value** [4] - 3277:21, 3277:23, 3278:3, 3296:6
**various** [6] - 3225:4, 3226:3, 3252:21, 3259:11, 3261:12, 3283:5, 3330:19, 3339:16
**Vegas** [1] - 3265:18
**vein** [2] - 3322:14, 3322:15
**venture** [3] - 3188:5, 3225:5, 3232:1

**ventures** [1] - 3147:14
**verify** [2] - 3150:4, 3160:1
**Veterans** [1] - 3130:21
**via** [4] - 3239:8, 3277:14, 3298:6, 3299:17
**vice** [2] - 3267:9, 3288:19
**view** [4] - 3136:3, 3187:4, 3289:5, 3332:19
**views** [1] - 3253:3
**violates** [1] - 3250:22
**voice** [2] - 3235:22, 3266:22
**voir** [1] - 3281:19
**VOIR** [2] - 3281:21, 3342:17
**Volpe** [1] - 3180:4
**volunteer** [1] - 3166:16
**voting** [2] - 3330:18, 3330:19
**vs** [1] - 3134:16

### W

**wait** [1] - 3290:13
**waiting** [3] - 3144:21, 3194:14, 3194:20
**waived** [2] - 3247:10, 3247:14
**walk** [2] - 3283:7, 3289:10
**wants** [2] - 3160:1, 3277:5
**warranties** [1] - 3232:8
**water** [2] - 3244:25, 3245:3
**wealth** [3] - 3206:18, 3230:24, 3231:8
**wealthy** [5] - 3134:12, 3134:18, 3135:4, 3135:9, 3135:17
**Wednesday** [1] - 3337:10
**week** [4] - 3163:22, 3255:20, 3284:11, 3284:19
**weeks** [1] - 3338:13
**WEINBLATT** [1] - 3130:20
**welcome** [1] - 3205:10
**whatsoever** [1] - 3248:8
**whistleblower** [1] - 3181:4
**whistleblowers** [1] - 3181:1
**white** [1] - 3254:10
**whole** [7] - 3222:14, 3226:8, 3238:12, 3238:14, 3271:18, 3313:14, 3334:13
**willing** [4] - 3261:19, 3279:9, 3338:4, 3338:23
**wire** [13] - 3163:10, 3163:14, 3222:7, 3287:6, 3306:8, 3306:17, 3306:24, 3307:9, 3307:14, 3307:17, 3307:22, 3316:2
**wiring** [1] - 3164:2

30

wish [1] - 3336:8
wishing [1] - 3220:10
withdraw [8] - 3139:12,
3154:10, 3166:7, 3170:19,
3182:23, 3198:14,
3198:22, 3243:10
withdrawal [1] - 3250:19
withdrawals [2] - 3251:9,
3254:17
withdrawn [6] - 3152:11,
3157:18, 3175:10,
3184:12, 3205:20, 3222:20
WITNESS [8] - 3133:10,
3140:6, 3266:19, 3266:23,
3292:22, 3292:24, 3323:5,
3327:17
witness [18] - 3133:13,
3184:4, 3192:7, 3193:1,
3193:10, 3197:19,
3225:19, 3233:15,
3241:24, 3253:11,
3255:21, 3256:10, 3266:5,
3266:6, 3266:10, 3266:13,
3336:1, 3338:16
witnesses [6] - 3191:17,
3252:3, 3258:24, 3261:12,
3338:12, 3339:17
WITNESSES [1] - 3342:1
wonderful [1] - 3223:12
word [2] - 3278:24,
3292:18
words [10] - 3161:21,
3168:19, 3200:14,
3202:12, 3224:12,
3228:21, 3229:16,
3234:25, 3237:16, 3328:20
workout [6] - 3267:9,
3267:10, 3267:20,
3267:22, 3283:18, 3285:13
works [1] - 3173:4
worrying [1] - 3198:9
worth [1] - 3265:20
worthless [1] - 3222:17
write [4] - 3141:16,
3213:20, 3214:14, 3246:12
writes [2] - 3250:23,
3303:24
writing [3] - 3146:9,
3168:5, 3258:2
written [7] - 3166:20,
3179:16, 3213:22, 3214:5,
3236:6, 3255:13, 3277:11
wrongdoing [1] - 3155:23
wrongdoings [1] - 3201:18
wrongful [1] - 3182:5
wrote [8] - 3145:25,
3146:3, 3213:21, 3213:23,
3214:2, 3214:15, 3236:8,
3236:10

## Y

year [8] - 3159:8, 3184:15,
3214:24, 3273:12,
3300:17, 3310:9, 3310:10
years [4] - 3167:10,
3168:2, 3207:4, 3244:25
yellow [1] - 3321:14
yellow-tagged [1] -
3321:14
yesterday [16] - 3132:19,
3133:5, 3159:25, 3194:19,
3205:4, 3205:5, 3205:19,
3205:21, 3218:12,
3218:18, 3219:11, 3222:6,
3224:25, 3226:22,
3227:11, 3232:17
YORK [1] - 3130:1
York [3] - 3130:6, 3130:15,
3131:21
yourself [17] - 3134:16,
3157:2, 3172:2, 3185:21,
3186:24, 3187:10,
3189:13, 3199:4, 3233:9,
3233:20, 3234:7, 3234:14,
3238:12, 3239:19,
3243:22, 3282:17, 3308:11

## Z

zero [2] - 3167:11, 3192:25
zone [1] - 3253:18