3894

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA
                                    CR-13-607


            -against-          :
                                    United States Courthouse
                                    Central Islip, New York

PHILLIP A. KENNER and
TOMMY C. CONSTANTINE,

     Defendants.             :
                                    June 16, 2015
- - - - - - - - - - - - - - - X    9:30 a.m.

              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JOSEPH F. BIANCO
        UNITED STATES DISTRICT JUDGE, and a jury


APPEARANCES:

For the Government:        KELLY T. CURRIE
                           Acting United States Attorney
                           100 Federal Plaza
                           Central Islip, New York 11722
                           BY:  JAMES MISKIEWICZ, ESQ.
                                SARITHA KOMATIREDDY, ESQ.
                           Assistant United States Attorney




For the Defendants:        HALEY, WEINBLATT & CALCAGNI
                           One Suffolk Square
                           1601 Veterans Memorial Highway
                           Islandia, NY  11749
                           BY: RICHARD HALEY, ESQ.
                           For Mr. Kenner

3895

For the Defendants:

```
                              LARUSSO & CONWAY
                              300 Old Country Road
                              Mineola, NY  11501
                              BY: ROBERT LARUSSO, ESQ.
                              For Mr. Constantine


                              ANDREW L. OLIVERAS, ESQ.
                              26 Strangford Court
                              Oceanside, NY  11572
                              For Mr. Constantine
```

```
Court Reporter:               Mary Ann Steiger
                              100 Federal Plaza
                              Central Islip, New York 11722
                              (631) 712-6101
```

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

3896

1      THE CLERK:  All rise.

2      THE COURT:  Please be seated.

3      (Case called, appearances noted.)

4      THE COURT:  Two things.  The first issue is

5  yesterday, when my deputy went to the jury room at the end

6  of the day, she saw that the jurors had apparently put

7  post-its on the wall that had some frequently used phrases

8  from the trial; like things along the lines can't we agree

9  that, isn't it true, I don't recall.

10      It looks like during the many hours that they

11  were back there, that they were thinking of the many

12  phrases that they have heard over and over again.

13      MR. HALEY:  Is one of those phrase between now

14  and then?  Between now and today?  Excuse me.

15      THE COURT:  I don't know.  They're all along

16  those lines.

17      My deputy told me that there was nothing

18  substantive about the notes, so I don't have any concern

19  that they were discussing the merits of the case or the

20  strength of the case or anything substantive about the

21  case.

22      But I was thinking about it this morning and I

23  think, even though it's harmless, I don't want them to

24  continue to do that.

25      I'm concerned that if I don't say anything, that

3897

1    it might be a running joke for the rest of the trial and

2    they might add to it.  It could theoretically turn into a

3    substantive comment about the case.  A juror can put

4    something up there that's substantive and it can lead to a

5    discussion.

6         So I think I will say that I understand they did

7    this, I'll ask that they take it down.  And although it's

8    harmless and in good fun, I don't want it to lead to

9    anything substantive about the case, and that's why they

10   shouldn't do it.

11        Any objection or anything else you want me to do

12   on that?

13        MR. MISKIEWICZ:  No.  I think that's fine.

14        MR. LARUSSO:  That's fine, your Honor.

15        MR. HALEY:  Thank you, Judge.

16        THE COURT:  Okay.  On the objection to the text

17   messages, I spent some time looking at both the law and

18   the actual text messages and I do believe they are

19   admissible as coconspirator statements.

20        First, with respect to the standard for

21   coconspirator statements, under Rule 801(d)(2)(e), the

22   government must prove by a preponderance of the evidence

23   that, 1, a conspiracy existed; 2, the conspiracy included

24   the defendant -- excuse me -- included the declarant and

25   the defendant against whom the statement is offered; and,

3898

1    3, the statement was made during the course of and in

2    furtherance of the conspiracy.

3         I believe the government has satisfied all of

4    those requirements based upon -- independent obviously of

5    the text messages, there's been substantial testimony and

6    documents establishing a conspiracy between Mr. Kenner and

7    Mr. Constantine with respect to taking investor money and

8    utilizing it to for matters unrelated to the investment

9    themselves.

10        The time frame of these text messages are

11   certainly within the time frame of the conspiracy and

12   certainly would be in furtherance of the conspiracy

13   because it's a back and forth between Mr. Constantine and

14   Mr. Kenner regarding Mr. Constantine's need for money and

15   money being wired out at the request of Mr. Constantine

16   because of his desperate financial situation, and

17   obviously includes the declarants and defendant by

18   Mr. Constantine and Mr. Kenner.

19        I believe the requirements for a coconspirator

20   statement are met by a preponderance of the evidence based

21   upon the other evidence in the case.

22        In terms of the issue of authentication, because

23   Mr. LaRusso didn't really raise that particular objection,

24   in terms of the requirement for coconspirator statement,

25   his objection was more along the lines of authentication

3899

1      that because the text messages weren't on the phone

2      themselves, but were screen shots that were e-mailed to or

3      downloaded to Mr. Kenner's computer, that they should not

4      be admitted because that's capable of being altered.

5              I conclude that obviously the government wanted

6      to lay a foundation for them being on Mr. Kenner's

7      computer.  But assuming they lay the foundation that they

8      were found on Mr. Kenner's computer, I believe that where

9      they were found, what it says on the messages themselves,

10     in terms of they appear to come from Mr. Constantine back

11     and forth to Mr. Kenner.

12             And, most importantly, and I emphasize this,

13     these are extremely detailed text messages and the

14     government's ability to authenticate them is coming from

15     Mr. Constantine and Mr. Kenner as opposed to some other

16     people who are pretending to be Mr. Constantine and

17     Mr. Kenner.  The issue on whether they were fabricated or

18     not, I went through them and the text messages relate in

19     great detail to all the other evidence that the government

20     has put on in the case.

21             For example, it discusses Rozenboom, the Palms,

22     the Falcon, the Dixileta loan, Playboy, Playmates, sending

23     particular amounts of money on particular days to certain

24     account numbers.  There's discussion of Mr. Kenner's

25     fights, where he is at a particular time.  There's

3900

1    discussions about Mr. Constantine's foreclosure and his

2    desperate need for money.

3           So authenticity of these text messages, the

4    government can rely on other evidence in the case to

5    establish at least for purposes of the rules of evidence

6    that they are sufficiently authenticated.

7           The fact that they could be altered goes to the

8    weight of these text messages, and certainly Mr. LaRusso

9    can point that out, but I don't believe the fact that they

10   could be altered, it's my understanding that even if you

11   had them on the phone, that a text message on a phone

12   could be altered.  You could change who the message is

13   from.  Even if they're found on the phone, there's the

14   possibility they could have been altered at least in some

15   respects on someone's phone.

16          So the fact that someone could take a screen

17   shot and somehow alter the message is not sufficient.

18   There is no evidence that that happened here, again, given

19   the amount of detail.

20          I also note, to the extent the theory is

21   Mr. Kenner fabricated these text messages at a later time

22   outside the conspiracy is belied by the fact that these

23   are exculpatory texts from Mr. Kenner.  These fully

24   implicate Mr. Kenner in getting the money to

25   Mr. Constantine.

3901

1          So if the idea is that Mr. Kenner was covering

2     his tracks and creating text messages to blame

3     Mr. Constantine, there's none of that in the text message.

4     There's no attempt to blame.  These appear to be

5     contemporaneous discussions of money going in and out, the

6     reasons for it, the need for it, the desperation for it.

7     So there is no indication of fabrication.  And, in fact, I

8     think it's belied by the substance of the text itself.

9          In terms of cases that will support that, these

10     cases don't just stand for the general proposition that

11     obviously text messages are admissible if the standards

12     are met for coconspirator statements; U.S. v. Carson, 11th

13     Circuit case, 447 Fed. Appx. 925, 11th Circuit 2011;

14     United States vs. Giles, 518, Fed. Appx. 181, Fourth

15     Circuit 2013.

16          And although this is a civil case, I was looking

17     for the issue about screen shots.  This is a case where

18     screen shot of a text -- this was a screen shot of an

19     internet site, Forward Magazine vs. Overdrive, Inc., 2011

20     Westlaw 5169384, Western District of Michigan, October

21     31st, 2011, which makes clear that computer-based evidence

22     operates in the same way under Rule 901 as non-computer

23     evidence.

24          And Duke v. Garcia, 2014 Westlaw 1318647,

25     District of New Mexico, February 28, 2014, where the

3902

1    plaintiff introduced a screen shot of a text message

2    saying it was sufficiently authenticated.

3            And, finally, this isn't a text message or

4    screen shot case, but as I noted yesterday, there are

5    other situations when handwritten notes are found in a

6    person's house and are admissible under the rules of

7    evidence even though again there's the possibility someone

8    could have fabricated a handwritten note.

9            If there's sufficient indicia of reliability and

10   authenticity, and this one, I want to point out, it was an

11   anonymous handwritten letter admitted.

12           And the First Circuit said that was permissible

13   again because it could be sufficiently authenticated even

14   though it was anonymous, U.S. vs. Thompson, 449 F.3d 267.

15           Finally, on the confrontation clause issue,

16   these are not testimonial in nature and, therefore, there

17   is not a confrontation clause issue.  But, in any event, I

18   expect Mr. Kenner is going to testify, and certainly

19   Mr. LaRusso and the government can do this too, but

20   certainly Mr. LaRusso would have the opportunity to

21   question Mr. Kenner regarding the creation of these text

22   messages and to try to put forth any evidence that

23   Mr. Kenner could have or did fabricate text messages so he

24   will have an opportunity to confront him on that.

25           Okay.  That's the Court's ruling.  Again, I

3903

1    don't expect the government to go through everyone of

2    these text messages.  You can save it for summation, okay?

3              MS. KOMATIREDDY:  Yes, Judge.

4              THE COURT:  Any other issue before the jury

5    comes out?

6              MR. HALEY:  Your Honor, briefly.

7              I did manage, after we left yesterday actually

8    relatively late, returned to my office and I provided the

9    government with a disk containing material that we may or

10   may not offer during the course of the defense aspect of

11   the case.

12             I was not able, Judge, to pre-mark those

13   exhibits.  And I might say, Judge, it's always been my

14   practice, when I'm introducing exhibits, to have obviously

15   exhibits for the Court, exhibits for co-counsel, whoever

16   that may be.  I don't have those copies.  Many of the

17   exhibits I'll be utilizing are exhibits introduced in

18   evidence and some previously marked for identification.

19             The government has been very accommodating.  I

20   lost the 72 hours over the weekend to make this happen.  I

21   bring it to the Court's attention because Mr. LaRusso

22   doesn't have that packet of material yet.  I say that

23   because perhaps after the government's case this morning,

24   I could have my client create another disk and maybe even

25   print out that information for Mr. LaRusso.  That's the

3904

1    best I can come up with, Judge, under these circumstance.

2                THE COURT:  That's fine.  I don't want to take

3    the time during the day.  If it could be done during a

4    break or lunch, that's fine with me.

5                MR. LARUSSO:  The way I envision, Judge, is

6    probably I'm going to cross Mr. Kenner last so I'll have

7    time over lunch to review whatever the documents are that

8    are being produced.

9                THE COURT:  Okay.

10               MS. KOMATIREDDY:  Before we begin with our first

11   witness, I've gone over with counsel a couple of loose

12   ends before we rest our case.  I need to move a few

13   exhibits in and I'll read them out and then go forward.

14               THE COURT:  Okay.  Let's bring the jury in.

15               THE CLERK:  All rise.

16               (The jury is present.)

17               THE COURT:  Please be seated.

18               Good morning, members of the jury.

19               ALL JURORS:  Good morning.

20               THE COURT:  It's good to see everyone this

21   morning.

22               Before we continue, there is one thing I wanted

23   to raise with you.

24               I learned last night that there were some

25   post-its on the wall that reflected tag lines or phrases

3905

1  that were heard over and over again during the course of

2  the trial.

3          I know you have had a lot of downtime yesterday

4  in the jury room, and I know it's innocent and harmless

5  and it was just in good fun, but I will ask that you take

6  them down and not do that.

7          Although it is innocent, harmless and good fun,

8  and you didn't do anything wrong, it could lead to someone

9  making a substantive comment about the case or about a

10  witness.  I don't want anything like that to happen and

11  you can't discuss the case so I'll ask that you not do

12  that.

13          Hopefully we won't have three hours of downtime

14  where you have nothing to do.  You guys have been an

15  unbelievably great jury, probably the best jury I ever had

16  in nine-and-a-half years.  You have been patient,

17  understanding, conscientious and I really do appreciate it

18  and I hope we have a full day today and we make effective

19  use of your time.

20          We will continue now and I'll ask the government

21  to call their next witness.

22          MS. KOMATIREDDY:  We would like to move in some

23  exhibits by stipulation of the parties.  I'll read several

24  exhibit numbers and the exhibits will be presented in due

25  course.

3906

1     Exhibit 4014 C, which is a certified copy of a

2    deed, Exhibit 2021, a wire transfer, Exhibit 3321 R, 946

3    and 6529, which were previously presented but I don't

4    think the transcript reflected it, Exhibit 504 T which is

5    a transcript of a video, portions of a video, Exhibits

6    8001 C through 8005 C which are certified copies of

7    bankruptcy court documents, and that's it.  The government

8    moves those exhibits into evidence.

9          THE COURT:  Any objection?

10         MR. LARUSSO:  No, your Honor.

11         MR. HALEY:  No, sir.

12         THE COURT:  Those exhibits are admitted into

13   evidence.

14         (Government Exhibits 4114 C, 2021, 3321 R, 946,

15   6529, 504 T, 8001 C through 8005 C in evidence.)

16         MS. KOMATIREDDY:  We also would like to move in

17   and read stip 47.

18         THE COURT:  Any objection to stip 47?

19         MR. LARUSSO:  I'm bad with numbers.  No

20   objection, Judge.

21         MR. HALEY:  I'm sorry, which documents?

22         MS. KOMATIREDDY:  The home documents.

23         MR. HALEY:  No objection.

24         THE COURT:  Stip 47 is admitted and can be read

25   to the jury.

3907

1          (Government Exhibit 47 in evidence.)

2          MS. KOMATIREDDY:  Stip 47 reads, in relevant

3    part:

4          On November 13, 2013, federal law enforcement

5    agents executed a search warrant on the residence of

6    defendant Kenner located at 10705 East Texas Road,

7    Scottsdale, Arizona, 85259.

8          Government's Exhibits 5001 through 5019 are true

9    and accurate copies of documents seized by federal law

10   enforcement agents from defendant Kenner's residence on

11   November 13, 2013.

12         Government's Exhibits 5103 L through 5106 L and

13   709 L are original documents seized by federal law

14   enforcement agents from defendant Kenner's residence on

15   November 13, 2013, and are in substantially the same

16   condition as they were when they were seized.

17         This stipulation and the foregoing Government's

18   Exhibits are admissible as evidence at trial.

19         At this time we move those exhibits into

20   evidence as well.

21         THE COURT:  Any objection?

22         MR. LARUSSO:  No, your Honor.

23         MR. HALEY:  No, sir.

24         THE COURT:  The exhibits referred to in that

25   stipulation are admitted into evidence.

```
                                                              3908
 1              (Government Exhibits 5001-5019, 5103 L-5106 L

 2    and 709 L in evidence.)

 3              MS. KOMATIREDDY:  Thank you, Judge.

 4              At this time we call Christopher Petrellese.

 5              THE COURT:  Come over to the witness stand, sir,

 6    and remain standing for the oath.

 7

 8    CHRISTOPHER PETRELLESE,

 9                 called as a witness, having been first

10                 duly sworn, was examined and testified

11                 as follows:

12

13              THE CLERK:  Please state your name and spell it

14    for the record.

15              THE WITNESS:  Chris Petrellese,

16    P-E-T-R-E-L-L-E-S-E.

17              THE COURT:  You can be seated.

18              If you could pull the mike up and keep your

19    voice up, okay?

20              THE WITNESS:  Thank you.

21              THE COURT:  Go ahead, Ms. Komatireddy.

22

23    DIRECT EXAMINATION

24    BY MS. KOMATIREDDY:

25    Q.   Mr. Petrellese, where do you work?
```

Petrellese  -  Direct/Komatireddy

3909

1   A.    For the FBI.

2   Q.    What is your title there?

3   A.    Forensic accountant.

4   Q.    How long have you worked as a forensic accountant for

5   the FBI?

6   A.    I started there February of '98 as a file clerk, and

7   in October of '99 changed positions to a financial

8   assistant, and then since that time I have had two

9   different title changes, financial analyst and forensic

10  accountant, so since October of '99.

11  Q.    Can you describe your duties and responsibilities as

12  a forensic accountant?

13  A.    The majority of my time is the analysis of bank

14  records.

15        I also review credit card records, the financial

16  records, serve subpoenas, track their return, public

17  records searches on individuals and businesses.

18  Q.    Did you review bank records in connection with this

19  case?

20  A.    Yes, I did.

21  Q.    Can you describe in general the nature of your

22  review?

23  A.    I received the records and enter the statement

24  information into a spreadsheet.

25        The spreadsheet consists of the date of the

Petrellese  -  Direct/Komatireddy

3910

1    transaction, a description of the transaction, dollar

2    amounts, the transaction, if it's a check or wire would be

3    noted, and then also a running balance.

4    Q.   And you made various -- did you create any summaries

5    as a result of all that review?

6    A.   Yes.

7    Q.   I'm going to hand you a few documents.

8         First, I'm handing you what's been marked as

9    Government's Exhibits 1 through 10 and 14 through 16.

10        Can you describe and identify for us what those

11   are?

12   A.   Sure.

13        I was provided with certain individuals' names

14   and asked to review bank accounts and make summary sheets

15   for each.

16   Q.   What bank accounts did you review?

17   A.   Standard Advisors operating account 8102558338, as

18   well as Wells Fargo Bank.

19   Q.   Mr. Petrellese, are the bank accounts that you

20   reviewed reflected on those spreadsheets?

21   A.   They are.

22   Q.   In general, just tell us the names of the bank

23   accounts that you reviewed.

24   A.   Sure.

25        Standard Advisors Incorporated operating

Petrellese  -  Direct/Komatireddy

3911

1   account, Standard Advisors, LLC, and GuideDog, LLC.

2   Q.   And who was the signatory on those various accounts?

3   A.   Mr. Kenner.

4   Q.   And in reviewing those accounts, what did you create

5   in terms of Government's Exhibits 1 through 10 and 14

6   through 16?

7   A.   A summary for each player of how much money went into

8   these particular accounts from a particular player.

9            MS. KOMATIREDDY:  The government moves 1 through

10  10 and 14 through 16 into evidence.

11           MR. HALEY:  Judge, may I correlate them with

12  what I have?

13           (Pause in proceedings.)

14           MR. HALEY:  Judge, thank you.  No objection.

15           MR. LARUSSO:  No objection, your Honor.

16           THE COURT:  Those exhibits, 1 through 10 and 14

17  through 16 are admitted.

18           (Government Exhibits 1-10 and 14-16 in

19  evidence.)

20  BY MS. KOMATIREDDY:

21  Q.   I'm going to publish for the jury what's marked as

22  government's exhibit 2.

23           And just zooming in here as an example of one of

24  these spreadsheets, what is it that we're seeing?

25  A.   This is money that Michael Peca would have sent to

3912

1   these three accounts.

2   Q.   Looking at the amounts and the dates of the payments,

3   would it be fair to say that these are approximately

4   quarterly payments?

5   A.   Yes.

6   Q.   And over the course of the years that you reviewed,

7   2003 to 2009, how much did Michael Peca send in payments

8   to the GuideDog Standard Advisor account?

9   A.   $251,646.00.

10  Q.   And then you created spreadsheets for each of the

11  players; is that correct?

12  A.   Yes.

13  Q.   And they look like this?

14  A.   Yes.

15  Q.   Now, turning to accounts at Northern Trust bank, did

16  you review accounts at Northern Trust bank?

17  A.   Yes.

18  Q.   What did you do in terms of bank accounts, what did

19  you do in terms of your review?

20  A.   Same thing, multiple accounts in Northern Trust for

21  different entities.

22          I took the information from the spreadsheet --

23  from the statements, and also the backup documents that

24  were received and put them into a spreadsheet.

25  Q.   I'm going to hand you what's been marked as

Petrellese  -  Direct/Komatireddy

3913

1    Government's Exhibits 63 A through 70 A.

2             And just beginning with 63 A, can you identify

3    this for the record?

4    A.   Yes.

5             This is an account at Northern Trust bank called

6    Little Isle IV Ventures, LLC, also known as Little Isle

7    IV, LLC.

8             The account number was 1411012916, and this is

9    at Northern Trust bank.

10   Q.   And is that a true and accurate summary of the bank

11   records for Little Isle IV and Little Isle IV account at

12   Northern Trust bank for the period that you reviewed?

13   A.   Yes.

14            MS. KOMATIREDDY:  The government moves 63 A into

15   evidence.

16            MR. LARUSSO:  No objection, your Honor.

17            MR. HALEY:  No objection.

18            THE COURT:  63 A is admitted.

19            (Government Exhibit 63 A in evidence.)

20            MS. KOMATIREDDY:  If we could please publish

21   copies to the jury at this time.

22            THE COURT:  Sure.

23            (Exhibit published to the jury.)

24   BY MS. KOMATIREDDY:

25   Q.   Mr. Petrellese, if you could walk us through the

Petrellese  -  Direct/Komatireddy

3914

1    columns on this chart and explain the information, the

2    format of the spreadsheets that you used.

3          Starting at the top left, tell us what

4    information you put into your spreadsheet?

5    A.   The first line is the case title, name.  The second

6    line is the case number, which is the terminal number

7    within our FBI system.  The account name is the account

8    name that's on the statement, the account number that's

9    related to this, the bank, the account, the date the

10   account got opened, the analyzed period and the signature

11   card.

12   Q.   The analyzed period and the signature card, the

13   analyzed period is all of the account statements, the

14   monthly account statements that you looked at?

15   A.   Yes.

16   Q.   And the signature card is the identity of the person

17   who signed on the actual signature card from the bank for

18   that account?

19   A.   Yes.

20   Q.   Looking at account totals and total additions and

21   total disbursements, what does that represent?

22   A.   The total that went through the account and the total

23   that got disbursed.

24   Q.   For that entire period of the analyzed period?

25   A.   Yes.

3915

1   Q.   Could you just walk us through the columns of the

2   actual spreadsheet from left to right?

3   A.   Sure.

4        The first column is the date of the transaction

5   which comes off the statement, the description is a

6   description of the transaction and either comes off the

7   statement or backup document that's received.

8        The next column is either a check or a wire.

9   The next column is any additions that were made to the

10  account.   The next column is any disbursements to the

11  account.   And notes, you can put anything in there related

12  to if there's something on a memo line on a check or if

13  it's a transfer.

14       And the last one is the balance.   So as the

15  stuff from the statement gets entered at the end of that

16  statement, you could check that the numbers that are

17  entered in are correct.

18  Q.   Now, with respect to the balance, when there are

19  multiple transactions on the same day, how do you

20  determine the balance?

21  A.   I would just look at the balance the day before.   You

22  know, if this transaction on the first page here, 217,

23  this shows an addition from Big Isle IV Ventures, LLC, and

24  a disbursement to Little Isle IV, LLC, it's sort of the

25  way it is on the spreadsheet.   I don't know which

3916

1    transaction occurred on that day in particular order, but

2    it happened on that day.

3    Q.    They're in alphabetical order within the same day?

4    A.    I'm not sure.  You sort the spreadsheet by date and

5    that's what happens.

6    Q.    I'm going to hand you what's been marked as

7    Government's Exhibits 64 A through 70 A.

8             If you could identify the account that each

9    spreadsheet captures and the account period?

10   A.    Sure.

11            64 A, account name is Ula Makika, LLC, account

12   number 1411026189, and Northern Trust bank, analyzed

13   period April 28, '05, through August 31st, 2009.

14   Q.    Can you identify 65 A?

15   A.    65 A, account Kau Holding Company, LLC, Northern

16   Trust bank, account number 1411025821, analyzed period

17   August 5, 2005, through September 30, 2006.

18   Q.    66 A?

19   A.    66 A, Big Isle Ventures, LLC, Northern Trust bank,

20   account number 1411014858, analyzed period June 24, '04,

21   through November 30th, 2008.

22   Q.    67 A.

23   A.    67 A, Big Isle IV Ventures, LLC, Northern Trust bank,

24   account number 14113249, account period December 15, 2003,

25   through October 31st, 2006.

Petrellese  -  Direct/Komatireddy

3917

1   Q.    68 A, and you can just tell us the account,

2   understanding the account number is on that spreadsheet.

3   A.    Big Isle V Ventures, LLC.

4   Q.    What was the period for that?

5   A.    May 4, 2004, through September 30, 2006.

6   Q.    69 A.

7   A.    Big Isle VI Ventures, LLC, analyzed period May 4,

8   '04, through 12/31/2008.

9   Q.    And finally 70 A?

10  A.    Na'alehu Ventures 2006, LLC, analyzed period August

11  9, 2006, through March 31st, 2011.

12  Q.    Did you create each one of those spreadsheets?

13  A.    Yes.

14  Q.    Are those true and accurate summaries of each of

15  those accounts for the analyzed periods that you referred

16  to?

17  A.    Yes.

18  Q.    For each of the accounts, who was the signatory on

19  the account?

20  A.    Mr. Kenner.

21        MS. KOMATIREDDY: The government moves 64 A

22  through 70 A into evidence.

23        MR. LARUSSO:  No objection, your Honor.

24        MR. HALEY:  Brief voir dire, Judge?

25        THE COURT:  Sure.

3918

1    VOIR DIRE EXAMINATION

2    BY MR. HALEY:

3    Q.    Sir, could you kindly look at Government's Exhibit 65

4    A.

5         Look at the first page of that document, sir,

6    and we have an entry second to the last, do you see that?

7    A.    Yes.

8    Q.    Now, you testified just a moment ago for purposes of

9    laying the foundation, that these charts are based upon

10   detailed analysis of bank records; is that correct?

11   A.    Yes.

12   Q.    Now, as relates to that exhibit, 8/23/2005, excuse

13   me, that entry, it says wire, wire, $150,000, do you see

14   that?

15   A.    Yep.

16   Q.    Who sent that wire in, sir?

17   A.    I don't know.

18   Q.    So at least as far as the first page of this document

19   is concerned, we're left to, for lack of a better term,

20   guess as to the source of that wire; is that correct?

21   A.    I put in the statement information in the back that

22   it's received.  If it's not received, then that's how it's

23   noted it was a wire that went into the account.

24   Q.    Well, every other entry, sir, as I see it, and

25   correct me if I'm wrong, based upon your forensic analysis

Petrellese  -  Voir Dire/Haley

3919

1    and examination, you were able to determine, for example,

2    description, let's say the first one, August 5, 2005,

3    based upon your forensic examination and forensic analysis

4    and examination of bank records, you were able to

5    determine that description that says Ethel Kaiser, Ethel

6    Delores Kaiser, wire, 400,000, correct?

7    A.    Correct.

8    Q.    And then balance 400,000, correct?

9    A.    Yes.

10   Q.    We can agree, sir, at least insofar as your

11   examination was concerned, your forensic examination, your

12   accounting examination, at least that particular entry,

13   $150,000, we just don't know the source of that; is that

14   correct?

15   A.    That is true.

16           There are other deposits on the second page that

17   just says deposit also.

18   Q.    Thank you, sir.  You're correct.

19   A.    The banks give you the statements and give you the

20   backup and that's what's get entered in.

21           Occasionally you can go to the bank and ask them

22   for the missing documents.

23           In this case I don't know if we did or not, we

24   just had them on the statement.

25   Q.    I'm not blaming you, sir.  I'm trying to understand

Petrellese - Voir Dire/Haley

3920

1    that your report is necessarily a function of what you can

2    obtain from banks; is that true?

3    A.   Yes.

4              MR. HALEY:  Your Honor, I have no objection to

5    this summary chart as it exists in that form.

6              Thank you.

7              THE COURT:  Okay.  The whole group of them?

8              MR. HALEY:  Yes.

9              THE COURT:  64 A through 70 A are admitted.

10             (Government Exhibits 64 A through 70 A in

11   evidence.)

12             MS. KOMATIREDDY:  Thank you, Judge.

13   BY MS. KOMATIREDDY:

14   Q.   With respect to each of the accounts we discussed,

15   those charts are in the same format as the Little Isle IV

16   account that you reviewed?

17   A.   It is.

18   Q.   I'm going to hand you what's been marked as

19   Government's Exhibits 71 through 79.

20             And before we get into these, let me ask, you

21   testified that you reviewed the accounts at Northern Trust

22   bank, did you also review statements or transaction

23   histories for lines of credit at Northern Trust bank?

24   A.   I did.

25   Q.   Just as an example, I'm going to put up on the screen

Petrellese  -  Direct/Komatireddy

3921

1    what's in evidence as Government's Exhibit 2001.

2            Do you recognize that?

3    A.    Yes.

4    Q.    Is that one of the transaction histories that you

5    reviewed?

6    A.    Yes, for Michael Peca.

7    Q.    When you reviewed these, what did you do in terms of

8    creating your own work product?

9    A.    Created a spreadsheet to track any draws that were

10   made on the account, and any payments that were made on

11   the line of correct.

12   Q.    Did you do any further review of other accounts at

13   Northern Trust bank to understand where these draws and

14   payments were coming from?

15   A.    Yes.

16          I matched up the payments to some of those

17   accounts that we just mentioned at Northern Trust bank.

18   Q.    What did you create?

19   A.    Same thing, a spreadsheet, little bit different

20   format because this was a line of correct.

21   Q.    I'm going to turn your attention to what I handed you

22   as Government's Exhibits 71 through 79.

23          Are those the spreadsheets you're referring to?

24   A.    Yes.

25   Q.    Those, each one of those spreadsheets matches to a

Petrellese  -  Direct/Komatireddy

3922

1   specific line of credit at Northern Trust bank; is that

2   fair?

3   A.   Yes.

4   Q.   And the specific line of credit is identified on the

5   spreadsheet by the account number; is that fair?

6   A.   Account number, yes, and name.

7   Q.   Are those true and accurate summaries of your review

8   of these transaction histories in conjunction with your

9   review of other accounts at Northern Trust bank?

10  A.   Yes.

11           MS. KOMATIREDDY:   The government moves 71

12  through 79 into evidence.

13           MR. LARUSSO:   No objection, your Honor.

14           MR. HALEY:   No objection, Judge.

15           THE COURT:   71 through 79 are admitted.

16           (Government Exhibits 71 through 79 in evidence.)

17  BY MS. KOMATIREDDY:

18  Q.   As an example, we will publish 72 to the jury.  We're

19  going to keep 2001 on the screen for comparison.

20           So looking at Government's Exhibit 72 and

21  comparing it with what's on the screen as 2001, could you

22  just explain the first couple of entries and the

23  information that Government's Exhibit 72 has, where it

24  came from?

25  A.   Sure.

3923

1        It came from the account statement prepared

2    spreadsheet.

3        First column says date, second is a description,

4    the third column is a draw amount which would be the

5    drawdown from the line of credit.

6        The next column is the principal payment column.

7    After that was an interest payment and the balance of the

8    line of credit on that particular day.

9    Q.   For example, just looking at the second entry in

10   Government's Exhibit 72 which is dated 4/4/2005, if you

11   look at the transaction history from the bank, it simply

12   says note increase, $125,000.  On your spreadsheet it says

13   description, Little Isle IV Ventures, LLC, draw amount

14   125 -- I'm sorry -- $1.25 million.  I apologize.

15       So the difference is this description here that

16   says Little Isle IV Ventures, can you explain what that

17   means?

18   A.   Yes.

19       I reviewed the bank records and there was a

20   transfer into the Little Isle IV Ventures account ending

21   in 2916, on that particular day for that amount.

22   Q.   So you reviewed the other bank records at Northern

23   Trust and tied these various transactions back to those

24   bank records?

25   A.   Yes.

Petrellese - Direct/Komatireddy

3924

1   Q.   And that information is captured here in this

2   spreadsheet 72?

3   A.   Yes.

4   Q.   So, for example, on 4/12 when there's a note increase

5   of $350,000, you reviewed the Little Isle IV account and

6   saw the note increase, the $350,000, was put into the

7   Little Isle IV account that day; is that fair?

8   A.   Yes.

9   Q.   On 5/26, when an interest payment is made of

10  $7,888.89, that particular transaction is taken out of the

11  Little Isle IV account; is that fair?

12  A.   Yes, it is.

13  Q.   Now, I'm going to turn your attention to Government's

14  Exhibit 21 which is not yet in evidence.

15       Going back to Michael Peca's line of credit

16  transaction history on October 19, 2006, there's a note

17  increase that's noted of $395,000; do you see that?

18  A.   Yes.

19  Q.   There are interest payments after that; is that

20  right?

21  A.   Yes.

22  Q.   Did you review where those interest payments came

23  from from the next interest payment on 10/19/2006 through

24  to the end of Michael Peca's line of credit?

25  A.   I did.

Petrellese  -  Direct/Komatireddy

3925

1  Q.    What did you create in your review?

2  A.    A graphical chart to show the transaction history.

3  Q.    Looking at Government's Exhibit 21, is that one of

4  the graphical charts that you reviewed to capture these

5  interest payments?

6  A.    Yes, I did.

7  Q.    Is that a true and accurate graphical summary of some

8  of the interest payments that were made on Michael Peca's

9  account after this $395,000 draw?

10  A.    Yes.

11        MS. KOMATIREDDY:  The government moves GX 21

12  into evidence.

13        MR. LARUSSO:  No objection, your Honor.

14        MR. HALEY:  No objection, Judge.

15        THE COURT:  21 is admitted.

16        (Government Exhibit 21 in evidence.)

17  BY MS. KOMATIREDDY:

18  Q.    Publishing it for the jury.

19        In the meantime, let's look at Government's

20  Exhibit 22 in evidence.

21        These graphical charts, can you just explain

22  what it is that they capture?

23  A.    This is 21?

24  Q.    This is 21.

25  A.    It follows the money flow into the Na'alehu Ventures

Petrellese  -  Direct/Komatireddy

3926

1    account.

2            And then from there particular transactions we

3    made a graphic of the lines of credit that were paid

4    during that particular period.

5            There were other disbursements also made during

6    that period from the Na'alehu Ventures 2006 which is

7    captured on the right-hand side there.

8    Q.    Zooming in on some of the data on the left side it

9    has a box.

10           Is that the -- is that all of the information

11   that you verified against the actual bank accounts?

12   A.    Yes, it is.

13   Q.    It says during this period.  What is it referring to

14   what money and period is it referring to?

15   A.    The top of the chart. August 14, '06.  I'm sorry.

16   August 9, '06, through March 16, 2007.

17   Q.    So this graphical chart then captures each interest

18   payment made on Michael Peca's line of credit during that

19   period?

20   A.    Yes, from Na'alehu Ventures.

21   Q.    It indicates those interest payments were made from

22   Na'alehu Ventures; is that right?

23   A.    Yes.

24   Q.    Did you create a series of graphical charts?

25   A.    Yes.

3927

1   Q.   They have been admitted as Government's Exhibits 22

2   through 40 and 20, and each one of these, and I'll flip

3   through them, each one of these charts can you describe

4   what the series represents?

5   A.   On this particular one the transaction period was

6   7/12/07, there was a draw from Sergei Gonchar's Northern

7   Trust line of credit account, 75,000 that went to Little

8   Isle IV Ventures, LLC, account ending in 2916, and from

9   there there were payments made to these lines of credit on

10  the right-hand side.

11  Q.   So in totality these charts taken together,

12  Government's Exhibits 20 through 40, do they together

13  capture all of the interest payments made on Michael

14  Peca's line of credit after the $395,000 draw all the way

15  to the end of that line of credit?

16  A.   Yes.

17       There were other payments made to the line of

18  credit after March 2007 that were from different accounts.

19  Q.   I'm going to hand you what's been marked as

20  Government's Exhibit 41.

21       Did you review accounts other than the Northern

22  Trust accounts in this case?

23  A.   I did.

24  Q.   What is Government's Exhibit 41?

25  A.   This is a pivot table for the Constantine Management

3928

1   Group Limited bank account at Bank of America, time period

2   December 1st, 2004, through 3/31/2006.

3   Q.   When you say it's a pivot table, what does that mean?

4   A.   It's a summary of the transactions that occurred by

5   description during that time period.

6   Q.   I'm going to hand you what's been marked as

7   Government's Exhibits 41 A and 41 B.

8            Can you identify these for the record?

9   A.   41 A is the actual spreadsheet for the Constantine

10  Management Group Limited account at Bank of America, same

11  time period, December 1st, 2004, through March 31st, 2006.

12           Once that was created then the pivot table was

13  run to create that, Government's Exhibit 41.

14  Q.   This Constantine Management Group account, is

15  Government's Exhibit 41 a true and accurate summary of

16  transactions in that account for the time period you

17  reviewed it?

18  A.   Yes.

19  Q.   Who was the signatory on that account?

20  A.   Mr. Constantine.

21  Q.   Is Government's Exhibit 41 A a true and accurate

22  summary of each of the transactions laid out in

23  chronological order?

24  A.   Yes.

25  Q.   What is 41 B?

Petrellese  -  Direct/Komatireddy

3929

1    A.    41 B is just a separate spreadsheet to show

2    transactions between Constantine Management Group and

3    Little Isle IV Ventures and Ula Makika during this time

4    frame.

5            MS. KOMATIREDDY:  The government moves exhibits

6    41, 41 A and 41 B into evidence.

7            MR. LARUSSO:  Just one moment, please.

8            (Pause in proceedings.)

9            MR. LARUSSO:  Your Honor, can I have a brief

10   sidebar.

11           THE COURT:  Yes.

12           (Continued on next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Petrellese  -  Direct/Komatireddy

3930

1       (The following takes place at sidebar.)

2       MR. LARUSSO:  We never had the opportunity to do

3   this kind of analysis between yesterday and today.

4       My client just said to me this is wrong.  I

5   said, we don't know that for a fact.  That's one entry on

6   this document.  I think it's -- he pointed it out to me --

7   a $250,000 one.

8       While he's getting that, I indicated to my

9   client, I know we haven't been able to go over everything,

10  he said this is wrong.  I said, this is not one

11  transaction.  This is four transactions totaling the

12  amount of money.  I said I went through these.  This is my

13  analysis.  He says how do I know that's accurate.

14      I do apologize to the Court.  We worked until

15  11:30 last night on these charts.  I could not get through

16  it completely.

17      However, we should go forward with it.  I will

18  stipulate to them at this point.  I would ask the court if

19  let's say between now the next couple of days if we find

20  substantial errors, give me an opportunity to go back into

21  it one way or another.  I don't want to delay the trial.

22  Would that be okay with the Court?

23      THE COURT:  That's fine.  Did the government

24  refer to exhibits 20 through 40?

25      MS. KOMATIREDDY:  They're in evidence.

Petrellese  -  Direct/Komatireddy

3931

1           MR. LARUSSO:  I was referring to number 41,

2    second page.  My client points to $247,500 and he said

3    that didn't happen.

4           I then pointed out the number four.  He didn't

5    know what that meant.  I assume it's a combination of

6    three other transactions, and then he said okay.  That's

7    the problem I have.

8           MS. KOMATIREDDY:  We will explain it.

9           THE COURT:  If you determine anything to be

10   inaccurate, I'll give you a chance to go back into it.

11          MR. LARUSSO:  I appreciate that, Judge.

12          (Continued on next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Petrellese  -  Direct/Komatireddy

3932

1        (The following takes place in open court.)

2        THE COURT:  41, 41 A and 41 B are admitted.

3        (Government Exhibits 41, 41 A and 41 B in

4   evidence.)

5   BY MS. KOMATIREDDY:

6   Q.   Turning your attention to 41, you mentioned a pivot

7   table. The format of this table is different from what you

8   showed us before, right?

9   A.   Yes.

10  Q.   Could you explain how does this schedule differ?

11  A.   It's the same information that's generated from the

12  spreadsheet.

13        The first column would be the description

14  column.  The second column is the number of additions.  So

15  if it was a deposit, it would summarize those numbers and

16  then give you a total in the third column.

17        The fourth column would be the percentage of the

18  total amount that went through that account during that

19  period.

20        The next column, if there was any disbursements

21  to that same entity, the number of transactions, and then

22  it would be disbursement total.

23        And the same thing on that last column,

24  percentage of total disbursements would give you a

25  percentage of what was disbursed.

Petrellese  -  Direct/Komatireddy

3933

1    For example, the 75,000 during that time period,

2    based upon the full amount that went through the account

3    during that period.

4         And then the last column has a net amount.  For

5    example, 82nd Street Hangar, LLC.  It was an extra

6    $55,630.67 extra disbursed based upon the one addition

7    that was received in the account from that entity.

8    Q.   For example, turning to the entry, to take a step

9    back, is it fair to say that this, whereas the other

10   spreadsheet you discussed has every transaction in date

11   order, this groups it by entity?

12   A.   Entity and also alphabetical order.

13   Q.   So let's look at the entity Little Isle Ventures,

14   LLC.

15   A.   Yes.

16   Q.   Is that the Little Isle Ventures account you reviewed

17   earlier at Northern Trust bank?

18   A.   Yes.

19   Q.   In the time period that you reviewed the Constantine

20   Management Group account, how many disbursements -- how

21   many additions were there from the Little Isle IV

22   Ventures, LLC, account to Constantine Management Group?

23   A.   There were four.

24   Q.   What was the total amount?

25   A.   247,500.

Petrellese  -  Direct/Komatireddy

3934

1    Q.    Were there any transfers from Constantine Management

2    Group back to Little Isle IV Ventures, LLC?

3    A.    No.

4    Q.    That's why on this chart the number total additions

5    is blank; is that right?

6    A.    Yes, correct.

7    Q.    And so when you look at the net amount for Little

8    Isle IV Ventures, LLC's transaction with Constantine

9    Management Group, the net amount is listed here as

10   $247,500; is that right?

11   A.    Yes.

12   Q.    Now, you also prepared Government's Exhibit 41 B

13   which I'm putting on the screen for the jury and I'll put

14   it on the ELMO here.

15           Looking at Government's Exhibit 41 B, what does

16   this simplified chart represent?

17   A.    This is the transaction that occurred between Little

18   Isle IV, Ula Makika and Constantine Management Group

19   during December 2004 through September 2005.

20   Q.    From December 2004 up until September 2005, how much

21   money did the Constantine Management Group account get

22   from Little Isle IV and Ula Makika?

23   A.    The net amount is $1,000,900.

24   Q.    I'm now going to hand you Government's Exhibits 60

25   and 60 B and 61 and 61 B.

Petrellese  -  Direct/Komatireddy

3935

1        Can you identify for us what those are?

2   A.   Government's Exhibits 60 is a pivot table of the

3   Urban Expansion, LLC, account at Washington Mutual Bank.

4        Government's Exhibit 60 B is the spreadsheet for

5   that same account, Urban Expansion, LLC, at Washington

6   Mutual Bank.

7   Q.   In terms of both the pivot table and spreadsheet as

8   you described them to us before, are those true and

9   accurate summaries of the transactions in the Urban

10  Expansion account for the period indicated on those

11  sheets?

12  A.   Yes.

13  Q.   What are Government's Exhibits 61 and 61 B?

14  A.   Government's Exhibit 61 is a pivot table for the

15  Constantine Management Group Limited account at Bank of

16  America.

17       The time period is August 1st, 2006, through

18  November 30, 2006.

19       And Government's Exhibit 61 B is the spreadsheet

20  version of the same Constantine Management Group Limited

21  account at Bank of America.

22  Q.   Are those true and accurate summaries of the

23  Constantine Management Group account during the time

24  period that you described in the spreadsheet?

25  A.   Yes.

Petrellese  -  Voir Dire/Haley

3936

1          MS. KOMATIREDDY:  The Government moves 60 and 60

2     B and 61 and 61 B into evidence.

3          MR. LARUSSO:  Your Honor, no objection, subject

4     to our discussion.

5          MR. HALEY:  Brief voir dire, Judge?

6          THE COURT:  Sure.

7

8     VOIR DIRE EXAMINATION

9     BY MR. HALEY:

10    Q.   Hello again.

11    A.   Yes.

12    Q.   With reference to exhibits 61 and 61 B, to make sure

13    there's no confusion, I noticed each exhibit has the

14    heading Phil Kenner/Tommy Constantine; is that correct?

15    A.   Yes.

16    Q.   Yet, for clarity of the record, the only signatory on

17    that account is Tommy Constantine; is that true?

18    A.   The first line is the title of the case.

19    Q.   I understand that.  But I just want to make sure.

20    A.   Yes.

21    Q.   In other words, as relates to these documents though,

22    you see Phil Kenner and Tommy Constantine, the name of the

23    case?

24    A.   Right.

25    Q.   When we look at the signature card, name and title,

Petrellese - Direct/Komatireddy

3937

1   based upon your analysis, at least my understanding, Phil

2   Kenner had no authority to withdraw funds from that

3   account; is that correct?

4   A.   Correct.

5          MR. HALEY:  Your Honor, with that understanding,

6   I have no objection.

7          THE COURT:  Okay.  Those exhibits are admitted

8   into evidence.

9          (Government Exhibits 60, 60 B, 61 and 61 B in

10  evidence.)

11  BY MS. KOMATIREDDY:

12  Q.   Handing out 61 B to the jury, Special Agent

13  Petrellese, I'm going to turn your attention to the second

14  page of 61 B.

15          This Excel spreadsheet has highlighting on it,

16  right?

17  A.   Yes.

18  Q.   What does the highlighting represent?

19  A.   The yellow is the money coming in, and the red is

20  disbursements from the account for the majority.

21  Q.   Here, the yellow indicates money coming into the

22  Constantine Management Group account from Urban Expansion

23  in August 2006, correct?

24  A.   Correct.

25  Q.   It's a little over $2 million?

Petrellese  -  Direct/Komatireddy

3938

1    A.    Yes.

2    Q.    In terms of the red, is it fair to say that the red

3    represents the expenditure of that money until that money

4    runs out?

5    A.    Yes.

6    Q.    So it goes on for a few pages tracking the ban

7    account until that money runs out; is that fair?

8    A.    Yes.

9    Q.    I'm going to hand you what's been marked as

10   Government's Exhibits 62 and 62 B.

11           Can you identify those for the record?

12   A.    Yes.

13           Government's Exhibit 62 is the Constantine

14   Management Group account at Bank of America, time period

15   April 1st, 2008, through July 31st, 2008, and Government's

16   Exhibit 62 is the pivot table.

17           Government's Exhibit 62 B is the same account,

18   Constantine Management Group Limited, same time period,

19   which is the spreadsheet version.

20   Q.    Okay.

21           Are those for -- what is the time period of this

22   spreadsheet?

23   A.    April 1st, 2008, through July 31st, 2008.

24   Q.    At the same time I'm going to hand you what's been

25   marked as Government's Exhibits 44 B through 49 B.

Petrellese  -  Direct/Komatireddy

3939

1          Do you recognize those?

2    A.    44 B is a spreadsheet for the law offices of Ronald

3    Richards and Associates, a professional corporation, first

4    entry, bank account number 2100017561, for the period of

5    December 1st, 2009, through December 31st, 2009.

6          Government's Exhibit 45 B is an account, Eufora,

7    LLC, operating account at Alliance Bank of Arizona,

8    account number 8010205246, the time period also is

9    December 1st, 2009, through 12/31/2009.

10         Government's Exhibit 46 B is a spreadsheet for

11   the Eufora operating account at Johnson Bank, account

12   number 6030820074 at Johnson Bank.  The time period is

13   December 1st, 2008, through May 31st, 2009.

14         Government's Exhibit 47 B is a spreadsheet of

15   the Phillip Kenner account at Wells Fargo, account number

16   1251497473, time period is December 30, 2008, through

17   January 31st, 2009.

18         Exhibit 48 B is also an account for Mr. Kenner

19   at Bank of America, account number 002918483678, and the

20   time period is January 13, 2009, through June 22nd, 2009.

21         Government's Exhibit 49 B is a spreadsheet.

22   It's for the accounts of Timothy Gaarn.

23         This was a checking account and a savings

24   account.  The first account number is 1010208659666.  The

25   second account number is 1010221709786, and the bank was

Petrellese - Direct/Komatireddy

3940

1    Wachovia/Wells Fargo.

2    Q.   I'm handing you what's marked Government's Exhibits

3    46 through 49.

4         Are those pivot tables that correspond to each

5    of the accounts you just mentioned?

6    A.   Yes.

7    Q.   Are those true and accurate summaries both in

8    chronological form and alphabetical form of the bank

9    accounts you just mentioned for the time periods indicated

10   on the spreadsheets?

11   A.   Yes.

12        For the information we received from the banks,

13   yes.

14        MS. KOMATIREDDY:  The government moves 44 B

15   through 49 B, 46 through 49, 62 and 62 B into evidence.

16        (Pause in proceedings.)

17        MR. LARUSSO:  No objection, your Honor.

18        MR. HALEY:  Judge, again.

19

20   VOIR DIRE EXAMINATION

21   BY MR. HALEY:

22   Q.   Sir, kindly take a look at 46.

23   A.   Sure.

24   Q.   As relates to 46, I know it says Phil Kenner/Tommy

25   Constantine; is that correct?

**Petrellese  -  Voir Dire/Haley**

3941

1   A.    Yes.

2   Q.    But it's clear that the person who actually has

3   access to that account by way of deposits and withdrawals

4   would be a Mark D'Ambrosio/Mia D'Ambrosio; is that

5   correct?

6   A.    Yes.

7   Q.    Do you know who Mark D'Ambrosio is?

8   A.    No.

9   Q.    Do you know who Mis D'Ambrosio is?

10  A.    No.

11              MR. HALEY:  Thank you, Judge.

12              I have no objection, just with that

13  clarification, your Honor.

14              THE COURT:  Those exhibits are admitted.

15              (Government Exhibits 44 B through 49 B, 46

16  through 49, 62 and 62 B in evidence.)

17              THE COURT:  So Mr. Haley doesn't have to do this

18  with respect to all the charts, on these charts where you

19  see the name Phil Kenner/Tommy Constantine on the top of

20  the charts shaded in gray, that's not reflecting any

21  information from the bank accounts statement.

22              MR. HALEY:  Thank you, your Honor.

23  BY MS. KOMATIREDDY:

24  Q.    I'm going to put on the screen 62 B.

25              Looking at the CMG account, the Constantine

Petrellese  -  Direct/Komatireddy

3942

1   Management Group account, this spreadsheet has highlights,

2   right?

3   A.   Yes.

4   Q.   The yellow is coming in and the red is money going

5   out?

6   A.   Yes.

7   Q.   So on the first page on April 7, 2008, there's money

8   coming in and out?

9   A.   Yes.

10  Q.   It says wire in Michael Peca, $100,000; out, Phil

11  Kenner?

12  A.   Yes.

13  Q.   $100,000, correct?

14  A.   Yes.

15  Q.   Going through this spreadsheet, further pages in the

16  spreadsheet track the same sort of information, right,

17  money coming in and money going out?

18  A.   Yes.

19  Q.   Turning your attention to Government's Exhibit 46 B,

20  this is a summary of the Eufora account; is that right,

21  Eufora operating account?

22  A.   46 B is the Eufora operating account, yes.

23  Q.   Looking at the Eufora operating account in December

24  2008, can you tell us what you highlighted in terms of

25  money going in and money going out?

Petrellese  -  Direct/Komatireddy

3943

1    A.    Yes.

2          I was asked to look for particular players who

3    sent money into this account and where it went to.

4    Q.    What happened?

5    A.    It appears mostly that the amounts that came in that

6    day, it either went out that day or in the following

7    couple of days.

8    Q.    Looking at Glen Murray in December 2008, do you see

9    money coming in December 29, 2008, and going out two days

10   later to Tim Gaarn; is that right?

11   A.    Yes.

12   Q.    When you look at the amounts, the same amount?

13   A.    Yes.

14   Q.    As you go through this account, do you see the same

15   pattern with every player's money?

16   A.    Yes.

17   Q.    February 2009, you have an individual named Greg and

18   Suzy DeVries, 100,000 comes in and 100,000 goes out,

19   right?

20   A.    Yes.

21   Q.    February 2009, you have an individual named William

22   Ranford, 100,000 goes in and 100,000 goes out, right?

23   A.    Yes, on the 6th it comes in and goes out on the 9th.

24   Q.    Again, in February '09, from Steven Rucchin, 100,000

25   goes in and 100,000 goes out, right?

Petrellese  -  Direct/Komatireddy

3944

1    A.    Yes.

2    Q.    Looking at Glen Murray again in March, do you see

3    100,000 go in and the next day 100,000 goes out, right?

4    A.    Yes.

5    Q.    And it happens again with Murray and Ranford?

6            MR. HALEY:  Judge --

7    BY MS. KOMATIREDDY:

8    Q.    Just speeding through this --

9            MR. HALEY:  I withdraw the objection.

10   BY MS. KOMATIREDDY:

11   Q.    It happens again and again in that account; is that

12   fair?

13   A.    Yes.

14           MR. HALEY:  Well...

15           MS. KOMATIREDDY:  I'll move on.

16           MR. HALEY:  Fine.

17   BY MS. KOMATIREDDY:

18   Q.    This money went out to what account?

19   A.    Timothy Gaarn.

20   Q.    Did you do an analysis of Timothy Gaarn's account?

21   A.    Yes.

22   Q.    Turning to 49 B, how many accounts did Timothy Gaarn

23   have at Wachovia bank?

24   A.    He had two, a checking and savings.

25   Q.    How did you account for those two accounts?

Petrellese  -  Direct/Komatireddy

3945

1  A.    My analysis is the same for every account that I did.

2  I took everything that came in and out.

3        This particular account we did something

4  slightly different.  There were transfers between the

5  checking and the savings account, so I removed those

6  transfers to give a more accurate amount that would have

7  went through this account, these two accounts, during the

8  time period.  You would be accounting the same money over

9  and over.

10  Q.    Okay.

11        So if I got it correctly, Mr. Gaarn had a

12  checking and savings and you treated those accounts

13  basically as one to make this spreadsheet?

14  A.    Yes.

15        THE COURT:  Hold on.

16        MS. KOMATIREDDY:  Publishing 49 B to the jury.

17  BY MS. KOMATIREDDY:

18  Q.    Now, this account spreadsheet that you created also

19  has a notes column, right?

20  A.    Yes.

21  Q.    For the highlighted portions there's some notes, can

22  you explain what those notes indicate?

23  A.    This would show what money came in and what player,

24  and then went to this Timothy Gaarn account.

25  Q.    So looking at 49 B, as you go through again the

Petrellese - Direct/Komatireddy

3946

1    yellow is the money coming in and the red is the money

2    going out?

3    A.    Yes.

4    Q.    You highlighted selected transactions; is that right?

5    A.    Yes.

6          I was asked to highlight certain transactions in

7    red in this account.

8    Q.    In terms of whether -- in this account does the red

9    capture all of the money going out that was disbursed from

10   the money coming in?

11   A.    No.

12   Q.    So in terms of when $100,000 comes in, for example,

13   on February 6, 2009, there's two deposits, what's the

14   balance of the account before that money comes in?

15   A.    $216.57.

16   Q.    So in terms of in this account when you see money

17   coming in, fair to say all of the money then being sent

18   out of it comes from the money coming in?

19   A.    Particularly with this transaction, yes, definitely.

20   Q.    Turning to what's in evidence as Government's Exhibit

21   49, which was the alphabetical organization of this

22   account, looking at the Gaarn account and the total money

23   coming in from Eufora operating during this time period,

24   what is the percentage of money that comes into the

25   account?

3947

1   A.   Approximately 98 percent.

2   Q.   So most of the money in this account came from the

3   Eufora operating account?

4   A.   Yes.

5   Q.   And when you look at the entries for Phillip Kenner

6   Bank of America and Wells Fargo bank, what are the shares

7   of money that went out to those two accounts from this

8   Gaarn account?

9   A.   To the Bank of America account, approximately

10  300,000, which accounts for almost 43 percent during this

11  time period, and then $81,127 to the Wells Fargo bank

12  account which accounts for approximately 12 percent total

13  on this account.

14  Q.   Did you prepare summaries of those Wells Fargo and

15  Bank of America accounts?

16  A.   Yes.

17  Q.   Are those the summaries you described earlier and are

18  already admitted and you described earlier?

19  A.   Yes.

20  Q.   Going to Government's Exhibit 44 B and 45 B, 44 B is

21  an analysis of the Eufora operating account?

22  A.   45 B, yes.

23  Q.   44 B?

24  A.   44 B is the law offices of Ronald Richards.

25  Q.   I'm focusing us on 45 B.

Petrellese  -  Direct/Komatireddy

3948

1            45 B is an analysis of Eufora, right?

2    A.    Yes.

3    Q.    This is December 2009?

4    A.    Yes.

5    Q.    If you look at 45 B, do you see money coming in from

6    the law offices of Ronald Richards?

7    A.    Yes.

8    Q.    How much comes in?

9    A.    50,000.

10   Q.    Did you go back to the law office of Ron Richards'

11   account for that same time period?

12   A.    Yes.

13   Q.    I turn to 44 B for that time period.

14          Where does that 50,000 come from?

15   A.    It's a deposit from Nicholas Privitello.

16   Q.    And how can you tell that it's his money that goes to

17   the Eufora operating account during that time period?

18   A.    There was a beginning balance of 133,000 in the

19   Ronald Richards' account.

20          With the two hundred that came in during that

21   period there was a disbursement of 155,000, so part of

22   that money had to go to the Eufora, LLC, account.

23   Q.    After it went to the Eufora, LLC, account, going back

24   to 45 B, there's various expenditures you highlighted in

25   red?

Petrellese  -  Direct/Komatireddy

3949

1    A.    Yes.

2    Q.    One of those expenditures is Carey Rodriguez

3    Greenberg, right?

4    A.    Yes.

5    Q.    How can you tell it's that money that goes to Carey

6    Rodriguez Greenberg?

7    A.    These particular transactions for the dates of 12/10

8    and 12/15, there were disbursements that totaled more than

9    what the balance was in the account at that time.

10   Q.    So it had to be that money?

11   A.    Yes.

12   Q.    Finally, I'm handing you Government's Exhibits 43 A

13   and 43.

14          Did you look at the Eufora bank account in the

15   months leading up to this Privitello transfer?

16   A.    Which exhibit?

17          THE COURT:  43 and 43 A.

18   BY MS. KOMATIREDDY:

19   Q.    43 and 43 A.

20   A.    Yes.

21   Q.    Are those true and accurate summaries of the Eufora

22   operating account in the months from September to December

23   2009?

24   A.    Yes.

25          MS. KOMATIREDDY:  The government moves 43 and 43

Petrellese  -  Direct/Komatireddy

3950

1   A into evidence.

2            MR. LARUSSO:  I have no objection, your Honor,

3   again subject to what we discussed.

4            MR. HALEY:  Your Honor, nor do I.

5            May I just see the exhibit?  The copies we get

6   are black.  I need to verify it.

7            (Pause in proceedings.)

8            MR. HALEY:  No objection, Judge.

9            Thank you.

10           THE COURT:  43 and 43 A are admitted.

11           (Government Exhibits 43 and 43 A in evidence.)

12           MS. KOMATIREDDY:  No further questions, your

13   Honor.

14           THE COURT:  Cross-examination.

15           MR. HALEY:  Yes, sir.

16

17  CROSS-EXAMINATION

18  BY MR. HALEY:

19  Q.   Good morning, sir.

20  A.   Good morning.

21  Q.   Is it Special Agent Petrellese?

22  A.   Forensic accountant.

23  Q.   Employed by the Federal Bureau of Investigation as a

24  forensic accountant?

25  A.   Yes.

3951

1  Q.    How long have you been employed with the FBI, Agent

2  Petrellese?

3  A.    Since February of '98.

4  Q.    Is it appropriate to call you Agent Petrellese?

5  A.    I'm not an agent, I'm a forensic accountant.

6  Q.    Mr. Petrellese, again, my name is Rick Haley.  I

7  represent Phil Kenner.

8         Shortly after before you concluded your

9  testimony, you mentioned $81,127 payment going out of

10  Mr. Gaarn's account; do you recall that testimony?

11  A.    Yes.

12  Q.    Do you know what exhibit that was, sir, where you saw

13  that 81,127 going out of his account?

14  A.    47 B shows the money going in.  Yes.  49 B.

15  Q.    So $81,127 comes into Mr. Gaarn's account, correct,

16  at some point on one of the exhibits?

17  A.    Yes.

18  Q.    Did your forensic analysis reveal whether that money

19  was then sent out of that account?

20  A.    I'm sorry?

21  Q.    Did your forensic accounting analysis reveal whether

22  that 81,127 that came into Gaarn's account was sent out of

23  his account?

24  A.    It was sent out to Mr. Kenner's account.

25  Q.    Now, that sum, $81,127, as a forensic accountant,

3952

1   would that sum of that type suggest to you, sir, that it

2   may constitute repayment of a loan involving principal and

3   interest?

4   A.   It could be anything.

5   Q.   Your testimony here today, sir, is based upon your

6   analysis of bank records, correct?

7   A.   Yes.

8   Q.   You're not able to offer, of your own personal

9   knowledge, any evidence to this Court and jury as relates

10  to the agreement, circumstance or conversations

11  surrounding that instance where $81,127 was paid out of

12  Mr. Gaarn's account and Mr. Kenner's account, correct?

13  A.   That's true.

14  Q.   And I take it, sir, with reference to every aspect of

15  your testimony concerning your analysis of the bank

16  accounts, you don't have any personal knowledge of the

17  circumstances under which those monies came to be paid in

18  terms of contractual obligation or conversations, whether

19  they were loaning, whether they were gifts, anything of

20  that nature; is that true?

21  A.   That's true.

22       I just reviewed the bank records.

23  Q.   The bank records you reviewed, they were given to

24  each one of the jurors, correct?

25  A.   I think some of the spreadsheets were.

Petrellese  -  Cross/Haley

3953

1   Q.   Would you take a look at 47 B.  This is my copy.  If

2   you could find 47 B.

3          What occurs on my copy, it's no one's fault,

4   when it's highlighted in red, it's black so I can't see

5   it.  So if you could pull 47 B if you have it.  41 B.  I

6   apologize.

7          THE COURT:  Ms. Komatireddy, did you take that

8   one back?

9          MR. HALEY:  Mine is blacked out.

10          MS. KOMATIREDDY:  Here's another copy.

11   BY MR. HALEY:

12   Q.   Here we go.

13          41 B in the red has a figure of $1,900,000; is

14   that correct?

15   A.   Yes.

16   Q.   Now, as relates to the fifth line above that, we have

17   $290,000 in brackets; is that correct?

18   A.   Yes.

19   Q.   What does that mean from a forensic accounting

20   standpoint, that bracket?

21   A.   That $290,000 was sent back to Ula Makika from

22   Mr. Constantine's Management Group account, and then a net

23   amount total.

24   Q.   Would you tell the Court and jury why that was done?

25   A.   I don't know.

3954

1   Q.   No idea?

2   A.   No idea.

3   Q.   Sir, exhibit 1 reflects payments that -- can you tell

4   us again what exhibit 1 represents?

5   A.   I was asked to review three particular accounts for

6   money that was either received or sent from particular

7   players.

8   Q.   And exhibit 1 is Mr. Peca's exhibit?

9   A.   Mr. Berard.

10  Q.   Excuse me.

11  A.   Number one is Bryan Berard.

12  Q.   Who is Mr. Peca?

13  A.   He's number two.

14  Q.   With reference to number two, they indicate payments

15  from Mr. Peca to Standard Advisors as you indicated in the

16  amount of 251,646, correct?

17  A.   Yes.

18  Q.   Your chart stops at March 30, 2009; is that true?

19  A.   Yes.

20  Q.   So I take it you have no information as to whether or

21  not Michael Peca, after March 30, 2009, continued to make

22  payments to Standard Advisors and GuideDog under this

23  particular account.

24       That's true, correct?

25  A.   True.

3955

1   Q.   And your forensic analysis, sir, did not include, did

2   it, disbursements out of this account by Phil Kenner, a

3   signatory for Standard Advisors and GuideDog, does it show

4   where the money went?

5   A.   In the bank account?

6   Q.   Yes, sir.

7   A.   Yes.

8   Q.   What exhibit is that?

9   A.   I was just asked to look up particular players who

10  sent money to these accounts or if the money went back to

11  them.

12  Q.   So it was limited to money that came into this

13  account, Mr. Peca's account, and then went back to the

14  players; is that correct?

15  A.   From Mr. Peca or back to him from these accounts,

16  yes.

17  Q.   But you have no information to offer I take it then,

18  sir, as to money that came into this account and other

19  than the money went back to Mr. Peca, what was done with

20  that other money; is that true?

21  A.   That's true.

22  Q.   Do you have any personal knowledge that the money

23  that was deposited into that account as reflected in those

24  bank statements was not money that Phil Kenner was

25  entitled to pursuant to an arrangement with any of the

Petrellese  -  Cross/Haley

3956

1    hockey players wherein they paid him a certain fee based

2    upon a percentage of the portfolio?

3    A.    I do not have knowledge of that.

4              MR. HALEY:  Thank you, Mr. Petrellese.

5              THE WITNESS:  Thank you, sir.

6              THE COURT:  Let's take the morning break.  Don't

7    discuss the case.

8              (The jury is excused.)

9              (Recess taken.)

10              (Continued on next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3957

1           (After recess the following occurred.)

2           MR. LaRUSSO:  Your Honor, thank you for the

3     extra time. I was trying handle a matter that came up

4     during direct that we hadn't anticipated.  With your

5     permission I'll try to deal with it.  I may ask for a

6     little extra time some other time, but I'm going try to

7     close out cross if I can within ten or 15 minutes.

8           THE COURT:  You can recall the witness.

9           MR. LaRUSSO:  I was going to try to do it on

10    cross.  And if I can't, I will do that.

11          THE COURT:  Bring in the jurors.

12          (The jury entered the courtroom.)

13          THE COURT:  Be seated.

14          Okay, Mr. LaRusso.

15          MR. LaRUSSO:  Your Honor, I have shown the

16    Government a number of selected documents.  I just ask

17    that for the sake of expediting this, to verify that they

18    are on a certain account so we can hopefully move it as

19    quickly as possible.

20          Your Honor, we're looking for a document just to

21    verify here.  May I approach the witness briefly?  Maybe

22    it will go a little faster, if I could.

23          THE COURT:  Yes.

24          MR. LaRUSSO:  But I'm hoping not to have to go

25    through all of these.

Petrellese - Cross/Mr. LaRusso

3958

1    The one we may be looking at is 61B.

2    CROSS-EXAMINATION

3    BY MR. LaRUSSO:

4    Q    Can you find that one and we'll push all of the

5    others to the side?

6    A    Yes.

7              MR. LaRUSSO:  Your Honor, at this time I'm going

8    to move into evidence what is marked C251.  These are

9    pages from Constantine Management Group bank statements

10   from a period September of 2005 through September of 2007.

11   And I'm only pages from selected statements during that

12   period.

13             THE COURT:  The Government, all statements, now

14   separating out pages?

15             MR. LaRUSSO:  That's correct.

16             THE COURT:  Any objection?

17             MS. KOMATIREDDY:  I understand there is a

18   selection, Your Honor.

19             No objection.

20             THE COURT:  Any objection?

21             MR. HALEY:  No, sir.

22             THE COURT:  250 which is a selection of pages

23   from bank exhibits from other exhibits is admitted.

24             MR. LaRUSSO:  Thank you, your Honor.

25             (Defense Exhibit 250 in evidence.)

Petrellese - Cross/Mr. LaRusso

3959

1    BY MR. LaRUSSO:

2    Q    Mr. Petrellese, I'm going to just ask you a number of

3    questions relative to that statement and ask you to just

4    verify for me the -- either the withdrawals or deposits

5    into the account?

6    A    Sure.

7    Q    Looking at these documents, can you tell me if there

8    is a transaction from the Constantine Management Group for

9    September 20th, of $75,000 to an account GDM 33?

10   A    Yes, there was.

11   Q    And was that a wire transaction?

12   A    A wire transfer.

13   Q    Do you know who was the signatory on the GDM 33

14   account?

15        Is that part of your analysis?

16   A    I believe I did review a document and it was him,

17   Mr. Kenner.

18   Q    What I'm going to do is, I'm going to just put down

19   some of these transactions.  So rather than have you go

20   back and add them up later, you can verify with me as I am

21   writing on this sheet of paper?

22   A    Sure.

23   Q    Could you also verify for us whether there is a

24   transaction the same day for $550,000?

25   A    Yes.

3960

1   Q    September 20, 2005?

2   A    Yes.  Also a wire out to GDM 33, LLC.

3   Q    Now, I'm going to jump ahead to May 15th of 2007.

4        Do you see a transaction for $192,000?

5   A    Yes.

6   Q    Can you describe that transaction for us, please?

7   A    $192,000 wire out to Philip Kenner's account at Wells

8   Fargo Bank.

9   Q    Now, I have a tough question for you.

10        Is my handwriting legible enough so you can read

11   it?

12   A    Yes.

13   Q    Now, on May 15th, the same day, of 2007, do you see a

14   $60,000 --

15   A    Yes.

16   Q    -- transaction?

17   A    Yes, $60,000 wire out, May 15, 2007, at this time to

18   Guard Dog, LLC., at Wells Fargo bank.

19        MR. LaRUSSO:  Just a moment, your Honor.

20        May I have that group of documents, please?

21   Thank you.

22        Your Honor, the Government will stipulate, I

23   assume, at this point to C251.

24        THE COURT:  You already used C251.  Wasn't that

25   the group hard copy?

Petrellese - Cross/Mr. LaRusso

3961

1              MR. HALEY:  This one is 250.

2              MR. LaRUSSO:  That's 250, correct?

3         The first one was C250.

4              THE COURT:  So the first one is 250 and this

5    one --

6              MR. LaRUSSO:  This becomes 251.

7              THE COURT:  Any objection?

8              MS. KOMATIREDDY:  No.

9              MR. HALEY:  No, sir.

10             THE COURT:  All right, 251 is admitted.

11             (Defense Exhibit 251 in evidence.)

12   BY MR. LaRUSSO:

13   Q    The stipulation, this is a trust account for Ula

14   Makika, the account that you looked at?

15   A    Yes.

16   Q    For transactions in 2006.

17        Do you see a transaction for a little over

18   $121,000 from a Kim and Lowman, L-O-W-M-A-N, to Ula

19   Makika?

20   A    You want the first page of this, just to confirm

21   that -- I'm not seeing that.

22             MR. LaRUSSO:  If we stipulated to it --

23             THE WITNESS:  I'm sorry.

24             MR. LaRUSSO:  No, that's quite all right.

25

Petrellese - Cross/Mr. LaRusso

3962

1   BY MR. LaRUSSO:

2   Q    This is part of the work you do in terms of

3   verification, correct?

4   A    Yes.

5        Yes, there is a wire from Kim and Lowman for

6   $121,129.40 into the Ula Makika account at Northern Trust

7   on 7/31/07.

8   Q    Now, going back to the -- we'll continue to deal with

9   that 121,000-plus transaction.

10       Could you look and verify on August 1st of '06

11  if there is a $120,000 transaction from Ula Makika to

12  Constantine Management Group?

13  A    There is.

14  Q    So we know that this Transaction 121 came from Ula

15  Makika to Constantine Management Group of $120,000.

16       Is that right?

17  A    Can you repeat that?

18  Q    I'll rephrase and we'll do the question again.

19       We looked at Ula Makika, and on that trust

20  account and we saw 121,000-plus going to Constantine

21  Management Group.

22       Is that right?

23  A    Yes.

24  Q    On August 1st we have that deposit into Constantine

25  Management Group, right?

Petrellese - Cross/Mr. LaRusso

3963

1   A    Yes.

2   Q    Now, there is a difference between the Ula Makika 121

3   and the $121,000.

4           Is that correct?

5   A    Yes.

6   Q    By about a thousand.

7   A    Yes.

8   Q    What I would like you to do, can you add up these

9   five numbers and tell us what those five are?  That is the

10  money that we know is going into the Constantine

11  Management Group.

12          I'm a bad mathematician so I'm going to rely on

13  you.

14          The Ula Makika 121 turned into 120 going into

15  Constantine Management Group.

16  A    Right.

17  Q    And what is that total, approximately?

18  A    Approximately $897,000.

19  Q    I caught him, Judge.

20          It's actually my mistake.  I had put down 192

21  but too close to the dollar sign, so we're going to have

22  to correct it a come up with a total figure of?

23  A    $997,000.

24  Q    Okay.  Going to 61B.

25          Can you tell us again what 61B reflects?

Petrellese - Cross/Mr. LaRusso

3964

1   A    The analysis of the Constantine Management Group

2   account, August 1, 2006 through 11/30/2006.

3   Q    And I believe on the second page and thereafter there

4   are in red, on your chart, a number of disbursements.

5        Is that correct, coming out of that account?

6   A    Yes.

7   Q    I'm going to direct your attention to the first one

8   on August 15, 2006.

9        You never heard of the Lehman loan, have you?

10  A    I just know Lehman -- Herman.

11  Q    So you know a little bit about it.

12       Do you know when the Lehman loan occurred?

13  A    I don't know the exact loan, but --

14  Q    At or about this time?

15  A    Yes.

16  Q    On August 15, 2006, how much money do you see going

17  out on the first disbursements in that red box on Page 2?

18  A    250,000.

19  Q    Do you know where that went to?

20  A    First American Title.

21  Q    Do you know why that went to the First American

22  Title?

23  A    Do you want me to use my judgment?

24  Q    No.  Do you have any evidence, firsthand knowledge,

25  any documents provided to you as to why that payment was

Petrellese - Cross/Mr. LaRusso

3965

1   made to First American Title?

2   A    I do not know.

3   Q    Do you have any idea whether that had something to do

4   with Mr. Phil Kenner?

5   A    I do not know.

6   Q    I'm going to direct your attention to the next page.

7        On August 22nd there is a wire transfer of

8   169,000.

9        Do you see that?

10  A    Yes.

11  Q    And right after that on the same day there is

12  $150,000 transaction.

13       Is that correct?

14  A    Yes.

15  Q    Can you read those numbers I wrote there?

16  A    Yeah.

17  Q    And then on the next page, the last one --

18       By the way, who received those monies, do you

19  know?

20  A    Loan Servicing Center.

21  Q    Do you have any idea who was the beneficiary of those

22  latter two?

23  A    I don't know.

24  Q    And then the last one on the next page is also

25  August 22, 2006.  I see that is to Wells Fargo, 100,000?

Petrellese - Cross/Mr. LaRusso

3966

1   A     Yes.

2   Q     Do you know who was the beneficiary of that?

3   A     I don't.

4   Q     The last four -- if I can ask you to add up those

5   four wire transfers out of the Constantine Management

6   Group account.

7         What is the total on that?

8   A     It's 669,000.

9         MR. LaRUSSO:  I just want to check my math for a

10  second.

11        (There was a pause in the proceedings.)

12  BY MR. LaRUSSO:

13  Q     I think I might have misled you a little bit.  So we

14  can correct this.

15        When we had the Ula Makika money going from 121

16  and then the 120, there is a difference between the two.

17  That's the beneficiary.  We're adding 120,000 and it

18  should really be the difference between.

19        Do you see that?

20  A     Right.

21  Q     Now, can you add these first deposits that we talked

22  about, not the last ones?

23  A     778,000.

24        MR. LaRUSSO:  One second, Judge.

25        (There was a pause in the proceedings.)

Petrellese - Cross/Mr. LaRusso

3967

1    BY MR. LaRUSSO:

2    Q    I'm going to try do this again, if I could, with you.

3            And I apologize to the Court and jury.

4            In regards to the first five transactions, we

5    have 75,000, 550 -- 550,000, 192,000, and 60,000.  What

6    does that add up to?

7            (There was a pause in the proceedings.)

8    BY MR. LaRUSSO:

9    Q    And that's for what, $877,000.

10           Is that correct?

11   A    Right.

12   Q    Plus the dollars that we talked about?

13   A    Yes.

14   Q    The last four transactions that came out in August of

15   2006 totalled how much?

16   A    $669,000.

17   Q    Can you add those two together, the 877 and the 69?

18   A    $1,546,000.

19   Q    I'll ask you to look at just one more transaction, if

20   I could, on the Constantine Management Group Exhibit.

21           Don't forget we have to add the 1,000 too.  So

22   $1,547,000.  I apologize.

23           Do you agree with me?

24   A    Yes.

25   Q    And this may be the last question in regards to it.

3968

1  The Constantine Management Group document which is C250,

2  can you verify a transaction on September 27th of '07 for

3  $47,000?

4  A    Yes, there is a deposit of $47,000 which is a wire

5  from Phil Kenner, bank account at Wells Fargo.

6  Q    So if you took the $47,000 that we just talked about

7  and subtracted it from the $1.5 million $47,000, what do

8  you get?

9  A    1 million 5.

10         MR. LaRUSSO:  Be glad to know, Judge, I have no

11  further questions.

12         THE COURT:  Redirect?

13         MR. LaRUSSO:  Thank you very much for your help.

14  I appreciate it.

15         MS. KOMATIREDDY:  I have no questions.

16         THE COURT:  You can step down, sir.  Thank you.

17         Next witness.

18         MS. KOMATIREDDY:  The Government calls Robert

19  Crisalli.

20         THE COURT:  Do you want to clear the table?

21         MR. HALEY:  Can the government spell the last

22  name, please?

23         MS. KOMATIREDDY:  C-R-I-S-A-L-L-I.

24         THE COURT:  Sir, if you could come up to the

25  witness stand here.

Crisalli - Direct/Ms. Komatireddy

3969

1          Please raise your right hand.

2     **ROBERT CRISALLI**

3          called as a witness, having been first duly sworn,

4          was examined and testified as follows:

5               THE COURT:  Please be seated.

6               Please state your name and spell your last name

7     for the record.

8               THE WITNESS:  Robert Crisalli, C-R-I-S-A-L-L-I.

9               THE COURT:  Okay.  Please stay close to the mic,

10    all right?

11    DIRECT EXAMINATION

12    BY MS. KOMATIREDDY:

13    Q    Special Agent Crisalli, where do you work?

14    A    For the Federal Bureau of Investigation.

15    Q    How long have you worked for the FBI?

16    A    19 years.

17    Q    What is your title there?

18    A    I'm a special agent.

19    Q    Are you on any particular duty?

20    A    I'm assigned to the Computer Analysis Response Team.

21    Q    Is that abbreviated CART?

22    A    Yes.

23    Q    And what are your duties in responsibilities as part

24    of the CART team?

25    A    The responsibilities are to assist in collecting

Crisalli - Direct/Ms. Komatireddy

3970

1    digital evidence, processing that digital evidence and

2    making that evidence available for review by case agents.

3    Q    Approximately how many times have you processed and

4    reviewed digital evidence in connection with Federal

5    cases?

6    A    Easily a couple of hundred times.

7    Q    Did you receive a hard drive with image copies of

8    various computers in connection with this case?

9    A    Yes, I did.

10   Q    Did you review those copies, image copies?

11   A    Yes, I did.

12   Q    I'm going to hand you what is in evidence as

13   Government Exhibit Device 1.

14            Did you review the image copies of Device 1?

15   A    Yes, I did.

16   Q    I'm now going to hand you Government Exhibits 7401

17   through 7456.

18            Have you reviewed those before you came into

19   court today?

20   A    Yes, I did.

21   Q    Can you identify them for us for the record?

22   A    These are pictures of text messages that were

23   contained in the hard drive on the laptop.

24   Q    And you say they were pictures contained in the hard

25   drive of the laptop that was in your view of the image

Crisalli - Direct/Ms. Komatireddy

3971

1    copies of the that laptop, right?

2    A    That's correct.

3    Q    Where were they in the laptop?

4    A    They were in different places.

5    Q    Are those true and accurate -- 7401 through 7456, are

6    those true and accurate copies of images found on the

7    image copies of Device 1.

8    A    Yes, they are.

9              MS. KOMATIREDDY:  Government moves 7401 through

10   7456 that --

11             THE COURT:  Other than the issue previously

12   discussed, are there any objections?

13             MR. LaRUSSO:  No, your Honor, but I can do my

14   cross now or wait until after she is finished and then I

15   can do both issues that we discussed.

16             THE COURT:  All right.

17             MR. LaRUSSO:  Is that all right with the Court?

18             THE COURT:  Yes.  Why don't you do it on cross.

19             MR. LaRUSSO:  Yes, I can do it on cross just to

20   save us some time.

21             THE COURT:  Yes.

22             Any objection to that?

23             MR. HALEY:  I reserve my right until cross, as

24   well.

25             THE COURT:  So 7401 through 7456 are admitted.

Crisalli - Cross/Mr. Haley

3972

1          (Government Exhibits 7401 through 7456 in

2     evidence.)

3     BY MS. KOMATIREDDY:

4     Q    Just so you understand what we're talking about here,

5     I'm going to put up on the screen 7444.

6          You said they were images of text messages is

7     what you're talking about?

8     A    Yes, it is.

9     Q    And all of the exhibits, 7401 through 7456, are they

10    all in this same format with gray and green bubbles?

11    A    They're not all depicted with both of the colors, but

12    there are gray bubbles and green bubbles, yes.

13          MS. KOMATIREDDY:  All right.  No further

14    questions.

15          THE COURT:  Cross?

16          MR. HALEY:  Thank you, Judge.

17    CROSS-EXAMINATION

18    BY MR. HALEY:

19    Q    Special Agent Crisalli, good afternoon, sir.

20    A    Yes.

21    Q    Special agent Crisalli, as it relates to Government

22    Device Number 1, do you know when and how that came into

23    the possession of the Federal Government?

24    A    I do not.

25    Q    When you testified a moment ago that the image copy

Crisalli - Cross/Mr.  Haley

3973

1  of that device was something you reviewed, what do you

2  mean by image copy?

3  A    An image copy of a hard drive is an exact duplicate

4  of the hard drive in a different format.

5  Q    And as a result of reviewing that image copy of the

6  hard drive, you were able to obtain from that image copy,

7  the document that is currently up on the screen, as well

8  as other documents, correct?

9  A    I was.

10  Q    Do you recall, approximately, when and where that

11  occurred, the result of that examination to obtain those

12  image copies?

13  A    You mean a specific date and time?

14  Q    Yes, sir.

15  A    I do not have that information.

16  Q    Well, are you employed in the New York office, the

17  Arizona office, or you have like a special secret office?

18  A    I am employed in the New York office.  I work out of

19  the Long Island residence.

20  Q    Did you have any difficulty, sir, when you examined

21  that image copy of Device Number 1, from accessing those

22  documents that you now see on the screen?

23  A    No, I didn't have any issues processing the hard

24  drive image.

25  Q    I take it, sir, they weren't then, let's say,

Crisalli - Cross/Mr.  Haley

3974

1    encrypted, where you have to engage in some sort of

2    specialized process by which you could then remove the

3    encryption in order to access that, that didn't happen,

4    did it?

5    A    No, there was no encryption.

6    Q    Do you know if there was even a password, you had to,

7    let's say, enter ten or 1, 2, 3 in order to access the

8    information on that image hard drive?

9    A    No.  The software that I use would ignore any

10   passwords that would be required to gain access to the

11   operating system.

12   Q    Do you know, sir, whether a password was even in

13   place, if you know?

14   A    I do not know.

15   Q    The document that is on the screen and the documents

16   that the Government is offering into evidence, you

17   reviewed them before today for your testimony today.

18         Isn't that correct?

19   A    I did.

20   Q    Did you first retrieve any other -- personally

21   retrieve any other documents off that hard drive other

22   than the ones that are now being introduced into evidence?

23   A    Yes, I did.

24   Q    Did they consist of bank records?

25   A    I do not recall the content of those files.

Crisalli - Cross/Mr.  Haley

3975

1   Q    Do you recall, at least in terms of what you did to

2   -- those files?

3   A    Do you want me to give you a number?

4   Q    Yes, sir.

5   A    I would say around 1,000.

6   Q    And contained within that 1,000 documents that you

7   reviewed, were there other image copies of this nature?

8   Yes or no.

9   A    Yes.

10  Q    Can you give us some idea as to the percentage

11  between the number of image copies of this type that you

12  have reviewed and the amount or the quantity that's being

13  introduced into evidence by the Government; ten percent,

14  half of it, one percent?  Do you have some idea?

15  A    There were approximately 400 of these images out of a

16  thousand.  You can do the math.

17  Q    I'll let you do the math.

18        So we can agree, sir -- and perhaps the point

19  has been made -- we can agree, can we not, that what is

20  being offered by way of your testimony in connection with

21  the exhibits presented by the Government are a select

22  portion of what you saw, correct?

23  A    That's correct.

24  Q    It has been my pleasure, Special Agent Crisalli.

25  Thank you.

Crisalli - Cross/Mr. LaRusso

3976

1

2    CROSS-EXAMINATION

3    BY MR. LaRUSSO:

4    Q    Good afternoon.

5    A    Afternoon.

6    Q    You used the phrase, the pictures of images.  That is

7    what these documents are behind you that you have

8    identified as coming off a computer?

9    A    Yes, they are identified as a picture from the hard

10   drive.

11   Q    Would you classify this, these exhibits, as screen

12   shots of text messages that were then transferred on to

13   the computer?

14   A    I would.

15   Q    They are not actual text messages themselves.

16        Is that correct?

17   A    No, they're not.

18   Q    Can you just explain to us how you were able to save

19   or transfer a text message, I assume from a phone, onto

20   the computer?  How does that happen?

21   A    It can happen in a number of ways.  As an example,

22   these text messages came from an iPhone.

23        The iPhone allows you to grab a screen capture

24   of the screen itself and save that as a picture on the

25   phone.  If that phone was connected to the cloud, the

Crisalli - Cross/Mr.  LaRusso

3977

1    pictures can automatically be transferred to your hard

2    drive of the image that is also connected to the cloud.

3    Wirelessly, in some instances, you can also attach those

4    pictures to e-mails, and e-mail those pictures to another

5    account that you retrieve from the laptop.

6    Q    So on either method, these text messages, and I

7    believe we used the word screen shot, they're actually

8    pictures of the text that are then forwarded or saved onto

9    the computer?

10   A    That's correct.

11   Q    The actual text message itself would be inside the

12   iPhone.

13        Is that right?

14   A    Yes.

15   Q    Can you tell from looking at these screen shots when

16   the texts were actually made?  I know some of them have

17   dates and times, but can you tell from looking at these

18   screen shots when they were actually put into the

19   computer?

20   A    Not from looking at the screen shots.  The files

21   themselves would have dates and times.

22   Q    Did you do that in the examination, make that

23   determination when?

24   A    No, I wasn't asked to do that.

25   Q    The text messages that are on the phone, they're

Crisalli - Cross/Mr.  LaRusso

3978

1    preserved on the phone?  In other words, you did not erase

2    it, it would be inside the phone for an expert like

3    yourself to retrieve.

4            Is that correct?

5    A    Yes.

6    Q    And, in addition, you would be able to determine the

7    actual text message by contacting the service provider, is

8    that correct, and asking for the text messages that were

9    created at or about the time that we see in these screen

10   shots.

11           Is that right?

12   A    No, that is not correct.  Text messages are what you

13   call point to point.  They go from telephone to telephone.

14   They don't go through any intermediary server as your

15   phone service, so it would have no repository for you to

16   extract that information from, like an e-mail you can, but

17   text messages you cannot.

18   Q    Is there any kind of record made by the provider

19   regarding texts between telephone calls.  I'm sorry,

20   between telephones?

21   A    I'm not an expert on cellular communications between

22   providers.  However, it has been my experience there is no

23   way that we have been able to get text information from

24   service providers.

25   Q    Have you been able to not get the text messages

Crisalli - Cross/Mr.  LaRusso

3979

1    themselves, get information about when, length of the text

2    and the parties to the text communication as opposed to

3    the text itself?

4    A    Again, there isn't any central database for that to

5    reside on because it's point to point.  It originates on

6    my phone and goes directly to your phone.  There is no in

7    between database for that.

8    Q    So you have never seen documents from service

9    providers where they list just the text information by

10   date, telephone and duration without the message itself?

11   A    That's correct, I have not seen that.

12   Q    Do you know if Phil Kenners' iPhone was recovered in

13   this case?

14   A    I do not know.  I do have two phones, but I don't

15   know who they belong to though.

16   Q    Where did you get those two phones?

17   A    When I was given the other items in this case.  All

18   at the same time.

19   Q    Do you know what kind of phones they were?

20   A    They were both iPhones.

21   Q    And again, did you perform any kind of examination of

22   those iPhones?

23   A    Yes.

24   Q    What type of examination did you perform?

25   A    A cell phone examination.

Crisalli - Cross/Mr.  LaRusso

3980

1   Q     And what is that?

2   A     It's just, you know, trying to extract whatever

3   information we can using the software that we have to

4   gather user-created information on those two iPhones.

5   Q     In checking those two phones, did you check for text

6   messages such as the ones that are appearing in the

7   exhibits that were introduced?

8   A     We were able to extract text messages from one phone.

9   The other phone, I recall, had an encrypted backup

10  password on it which would not allow us to get certain

11  information.

12  Q     And do you have the capacity to break that encryption

13  code?

14  A     No, I do not.

15  Q     Does the FBI have any experts that can get through

16  that encryption code and get the information on that

17  phone?

18  A     Not that I'm aware of.

19  Q     These particular screen shots, they did not come from

20  the cell phone that you were able to examine.

21        Is that correct?

22  A     That is correct.

23  Q     So you have no independent verification from the two

24  cell phones that were recovered that these, in fact, came

25  from that, those cell phones.

Crisalli - Cross/Mr.  LaRusso

3981

1            Is that right?

2    A    Yes.

3    Q    Do you have any data or information from a, let's

4    say, a relevant mobile carrier that could verify that

5    these text messages actually occurred?

6    A    No.

7    Q    You would agree with me that it's relatively easy for

8    a person to manipulate the appearance of a text message or

9    a series of text messages, particularly on the iPhone

10   itself?

11   A    Who do you mean by manipulate?

12   Q    Erase, delete, add?

13   A    You can delete the entire text message, you can

14   delete individual messages within a text message, but you

15   cannot edit the contents of a text message.

16   Q    Can you move portions of a text from one portion of

17   the text message to another?

18   A    No.

19   Q    So the only deletion that you know of is the fact

20   that they can actually delete portions of the message

21   itself.

22            Is that right?

23   A    That is correct.

24   Q    Now, is there any way to detect from your analysis of

25   these exhibits whether or not before they were screen

Crisalli - Cross/Mr.  LaRusso

3982

1    shots on to the computer, that any kind of manipulation,

2    as you described it, occurred before they were screen

3    shots?

4    A    No.

5    Q    So you can't say one way or another whether these

6    e-mails have been doctored or manipulated, as you have

7    described?

8          THE COURT:  You said e-mail.

9    BY MR. LaRUSSO:

10   Q    I meant text messages.  I apologize.

11   A    Yes, there is no way I can tell from these pictures

12   what happened before the picture was taken.

13   Q    Can, for example, can somebody remove -- you used the

14   word bubble.  I'm not familiar with.  That what is that?

15   A    It's sort of a text string, it contained in a bubble.

16          THE COURT:  You turned off the screen.

17          MR. LaRUSSO:  I'm sorry.

18   BY MR. LaRUSSO:

19   Q    When you say bubble, what does that mean?

20   A    Well, take the top one on the left there, it looks

21   like what a cartoon character would be saying.  They call

22   those bubbles.

23   Q    Do you agree with me that -- can one remove a bubble?

24   A    Yes, you can remove individual bubbles.

25   Q    How do you do that?

Crisalli - Cross/Mr.  LaRusso

3983

1   A    If I'm not mistaken, there is -- you don't see it on

2   the picture, but there is -- in the top right corner of

3   the screen, you click on that and it gives you more

4   options, at which point you click on that, you can then

5   highlight a little bubble or a little circle that comes up

6   on the opposite side of the text message and you can click

7   that and delete it.

8   Q    So by manipulating or removing portions of the text,

9   I can actually can change the nature of the conversation.

10          Is that correct?

11  A    I suppose so, yes.

12  Q    And is it fair to say that, that text messages or

13  screen shots that you're identifying would have been after

14  the text message was somehow, by the author, photographed

15  or sent to the computer.

16          Is that correct?

17  A    Right.  By the nature of -- you can change the

18  picture --

19  Q    So if somebody wanted to doctor an e-mail --

20  A    Text message.

21  Q    Text message.  I keep saying e-mail.  Text message,

22  thank you.

23          They can do so before they take the screen

24  shots, is that correct, and then transfer to the computer?

25  A    Yes.

Crisalli - Cross/Mr. LaRusso

3984

1    Q    And you don't know whether that happened or not.

2         Is that correct?

3    A    I do not.

4         MR. LaRUSSO:  One moment, your Honor.

5         (There was a pause in the proceedings.)

6    BY MR. LaRUSSO:

7    Q    Just a few more questions.

8         Would you agree with me or is it true that if

9    one had access to two phones, one of them being an iPhone,

10   one can create an entire conversation that appears to be

11   between two people that never actually occurred?

12   A    That is possible.

13   Q    Now, this can actually be done by simply storing ones

14   name in the address book of the phone in question in

15   connection with the phone number of that phone.

16        Is that correct?

17   A    Yes.

18   Q    Is there any way to verify who or what was actually

19   being stated in those purported text messages or if they

20   even occurred?

21   A    Would you repeat the question.

22   Q    Is there any way to verify who or what was actually

23   being stated in those purported text messages or if they

24   even occurred?

25   A    Not from these photographs, no.

Wayne - Direct/Ms. Komatireddy

3985

1   Q    Thank you very much.

2   A    You're welcome.

3            THE COURT:  Anything further?

4            MS. KOMATIREDDY:  No.

5            THE COURT:  Thank you very much.  You can step

6   down.

7            Okay.  Next witness.

8            MS. KOMATIREDDY:  Government calls Joshua Wayne.

9   **JOSHUA WAYNE**

10            called as a witness, having been first duly sworn,

11            was examined and testified as follows:

12            THE COURT:  Be seated.  Please state your name

13   and spell your last name for the record.

14            THE WITNESS:  Joshua Wayne, W-A-Y-N-E.

15   DIRECT EXAMINATION

16   BY MS. KOMATIREDDY:

17   Q    Mr. Wayne, where do you work?

18   A    The IRS.

19   Q    What is your title there?

20   A    Special agent.

21   Q    How long have you been a special agent with the IRS?

22   A    About 13 and-a-half years.

23   Q    And can you generally describe your duties and

24   responsibilities as a special agent?

25   A    I investigate financial crimes.

Wayne - Direct/Ms. Komatireddy

3986

1    Q    As part of your investigation, can you tell me what

2    you do on day-to-day basis?

3    A    I look at bank records, I do interviews.

4    Q    Did you review bank records and other records in

5    connection with this case?

6    A    Yes.

7    Q    I'm going to hand you what has been marked Government

8    Exhibit Chart 1 through Chart 20.  I'm also going to hand

9    you Government Exhibit 80.

10            Now, in your review of records in this case, did

11   you create summary charts?

12   A    Yes.

13   Q    And looking at Chart 1 through Chart 20, are those

14   charts that you created?

15   A    Yes.

16   Q    Can you generally describe the nature of these

17   records that those charts summarize?

18   A    Bank records, business records, title records.

19   Q    And looking at Government Exhibit 80, can you

20   identify that for the record?

21   A    It's selected transactions from the Ronald Richards

22   account.

23   Q    And does that exhibit number, Government Exhibit 80,

24   contain a true and accurate list of transactions, dates,

25   amounts, beneficiaries from the Ronald Richards account?

Wayne - Direct/Ms. Komatireddy

3987

1    A    Yes.

2    Q    What is the time period for that exhibit?

3    A    May 1, 2009 to March 31, 2010.

4    Q    And referring to the chart, Chart 1 through Chart 20,

5    are those true and accurate records or depictions, flow

6    charts summarizing various bank records in evidence?

7    A    Yes.

8         MS. KOMATIREDDY:  The government moves Charts 1

9    through Chart 20 and Government Exhibit 80 into evidence.

10         MR. HALEY:  Judge, can I see 80?  I have 1

11    through 20.

12         Did Mr. LaRusso answer?

13         No objection.

14         MR. LaRUSSO:  No objection.

15         THE COURT:  1 through 20 and 80 in evidence.

16         (Government Exhibits Chart 1 through Chart 20

17    and 80 in evidence.)

18    BY MS. KOMATIREDDY:

19    Q    I'm now going to refer to what is marked as Binder 1

20    through 11.

21         Do you see those binders, 1 through 11?

22    A    Yes.

23    Q    Have you had a chance to review those before you came

24    into court today?

25    A    Yes.

Wayne - Direct/Ms. Komatireddy

3988

1    Q    What is in Binders 1 through 11?

2    A    All of the backup documents for all of my flow carts.

3         MS. KOMATIREDDY:  The Government moves Binders 1

4    through 11 into evidence.

5         MR. LaRUSSO:  No objection.

6         MR. HALEY:  I will not conduct a voir dire.

7         No objection.

8         THE COURT:  Binders 1 through 11 are admitted.

9         (Government Exhibits Binder 1 through Binder 11

10   in evidence.)

11   BY MS. KOMATIREDDY:

12   Q    Special Agent, do you have a copy of those?

13        I'll get you a copy again.  Let's just use the

14   chart.

15        So first looking at Chart 1.  In this case we

16   refer to various transactions involving real estate in

17   Hawaii.  Did you look at some transactions involving real

18   estate in Hawaii?

19   A    Yes.

20   Q    I'm going to refer to Chart 1.

21        Tell us what this depicts.

22   A    This depicts Bryan Berard's Northern Trust's line of

23   credit account, $265,000 which transferred to Big Isle VI

24   account on March 24, 2005 --

25        MR. HALEY:  If the witness finished his answer

Wayne - Direct/Ms. Komatireddy

3989

1   before the next question, Judge I --

2   BY MS. KOMATIREDDY:

3   Q    I'm sorry, go ahead.

4   A    From the Big Isle VI account.  On that same day, that

5   same amount of money was transferred over for the purchase

6   of four Discovery Harbour lots, which is a location in

7   Hawaii.

8   Q    And just explain how you came up with this.  What

9   documents did you refer to when -- I'll give you a copy of

10  Binder 1.

11          What documents did you refer to in creating that

12  geographical depiction?

13  A    I reviewed Bryan Bernard's line of credit at Northern

14  Trust.  I reviewed the title records and I reviewed the

15  bank accounts for Big Isle VI -- Big Isle VI, right.

16  Q    When you say you reviewed Bryan Bernard's line of

17  credit, I'm referring you to Government Exhibit 2135.

18          Is that what you're referring to?

19  A    Yes.

20  Q    I'm sorry, 2134.

21          Is that what you're referring to?

22  A    Yes.

23  Q    And then you said you looked at bank records.

24          Looking at Government Exhibit 2020, is this one

25  of the bank records that you received?

Wayne - Direct/Ms. Komatireddy

3990

1   A    Yes.

2   Q    Looking at Government Exhibit 2017, this is a

3   Northern Trust account in that time period, right?

4   A    That's correct.

5   Q    Is this one another one of the exhibits you reviewed?

6   A    Yes.

7   Q    It shows $265,000 coming in and no proceeds, right?

8   A    That's correct.

9   Q    And out to Fidelity National Title?

10  A    That's correct.

11  Q    Referring to Government Exhibit 2053A, is a Fidelity

12  National Title document, right?

13  A    That's correct.

14  Q    It shows the prior closing statement.

15       Is that right?

16  A    Yes.

17  Q    And it shows a deposit of to $265,000 on the behalf

18  of Big Isle VI Ventures?

19  A    That's correct.

20  Q    And let's go back to the chart.

21       So after you look at the purchase side, can you

22  explain what happened with the sale of the property?

23  A    The property was then sold on April 8, 2013 and money

24  from the proceeds of the sale went to a Blake Kenner and

25  Phil Kenner account.  And then cash was then withdrawn by

Wayne - Direct/Ms. Komatireddy

3991

1   Phil Kenner.  And then that day or soon after there was a

2   car payment, a cash car payment.

3   Q    Let's go back to the records for a minute.  '

4        Referring to Government Exhibit 4003, is that

5   First American Title handled the sale of this property?

6        Is that right?

7   A    Yes.

8   Q    Did you review records of First American?

9   A    I did.

10  Q    Going to 4,003, First American Title, sellers' final

11  settlement statement, correct?

12  A    Yes.

13  Q    And it indicates that it's a sale -- you have a paper

14  copy of Big Isle VI Ventures.

15       Is that right?

16  A    Yes.

17  Q    And when you compare the tax mapping or the property

18  identifiers for this settlement statement and the one you

19  saw before, are they the same?

20  A    Yes.

21  Q    So they refer to the same property?

22  A    Yes.

23  Q    And looking at the sale proceeds at the bottom, what

24  is the amount of the sale proceeds?  Do you have it in

25  your version of 4,003?

Wayne - Direct/Ms. Komatireddy

3992

1    A    $31,528.

2    Q    And turning your attention to what is in evidence as

3    Government Exhibit 101.

4         It appears to be an e-mail from Phil Kenner to

5    Kristie Lee, correct?

6    A    Yes.

7    Q    And looking at the signature at the bottom, Kristie

8    Lee is identified as an escrow assist at First American

9    Title?

10   A    Yes.

11   Q    And the contents of the Kenner email says, Please

12   send them to, and it identifies Chase Bank.

13        Is that right?

14   A    That's correct.

15   Q    The subject of this e-mail is re: proceeds, right?

16   A    Yes.

17   Q    Did you review the bank records in that Chase Bank

18   account?

19   A    I did.

20   Q    Looking at Government Exhibit 3202.  This is a Chase

21   Bank account.

22        Is this bank account number the same one we saw

23   in the previous e-mail?

24   A    It is.

25   Q    And this is going back to that e-mail dated April 8,

Wayne - Direct/Ms. Komatireddy

3993

1   2013, right?

2   A    That's correct.

3   Q    So on April 8, 2013, what happens to this account?

4   A    31 -- over $31,000 is deposited into this account.

5   Q    And when you say over $31,000 is deposited into the

6   account, what was the balance of the account before that

7   deposit?

8   A    The beginning balance was $1,400 and then there was a

9   withdrawal of $1,400.  So it would be --

10  Q    $30?

11  A    $30.

12  Q    And then in your chart depicts that there are various

13  withdrawals from that account afterwards, right?

14  A    That's correct.

15  Q    And we see there is a cash withdrawal to Phil Kenner.

16        How do you know that it went to Phil Kenner?

17  A    I reviewed the withdrawal slip.

18  Q    And when you reviewed the withdrawal slips, what did

19  they indicate?

20  A    It indicated that Phil Kenner had withdrawn that

21  cash.

22  Q    Going back to 3202 and the withdrawal slips, the

23  actual withdrawal slips have a customer's name on them,

24  right?

25  A    That's correct.

Wayne - Direct/Ms. Komatireddy

3994

1    Q    And it says Phillip Kenner?

2    A    That's correct.

3    Q    And there is a signature there?

4    A    Yes.

5    Q    Returning to Chart 1, you indicated again that those

6    are car payments.

7             How did you determine that?

8    A    I reviewed car payments in the name of Phillip Kenner

9    at that time.

10   Q    What did they show?

11   A    They communicated that there was a 900 -- sorry.

12   $877 car payment.

13   Q    For a Hummer?

14   A    That's correct.

15   Q    Now, I'm going to turn your attention to Chart 2.

16            Can you tell us what is going on with Chart 2?

17   A    From Darryl Sydor's Northern Trust line of credit, on

18   February 7, 2005, $200,000 was transferred to Little Isle

19   IV, Phil Kenner's account.

20            On that same day, $86,000 is transferred to Big

21   Isle VI, and on that same day, $86,000 is transferred over

22   to Fidelity National Title for the purchase of one

23   Discovery Harbour lot.

24   Q    And what happens when this property was then sold?

25   A    The proceeds of the sale then go to the Blake Kenner

Wayne - Direct/Ms. Komatireddy

3995

1   and Phil Kenner's account.  And then similar to the other

2   flow chart, $80,000 in cash was taken out and another

3   $80,000 in cash is taken out.

4   Q    And who takes that cash out?

5   A    Phil Kenner.

6   Q    And then I draw your attention to Chart 3.

7        Did you review Mr. Kenners line of credit?

8   A    I did.

9   Q    What happened in July of 2005?

10  A    July 7, 20005 from Michael Peca's Northern Trust line

11  of credit, $120,000 is transferred to Little Isle IV and

12  then $25,000 goes on that same day to a title guarantee

13  escrow.

14  Q    When you say, escrow, what is an escrow account?

15  A    It's an account that where a third party keeps the

16  money, holds the money.

17  Q    What happens to that money afterwards?

18  A    On December 28, 2007, $25,000 was then transferred to

19  a Phil Kenner account.

20  Q    When you say a Phil Kenner account, what account are

21  you talking about?

22  A    I would have to see the binder.  The Wells Fargo

23  account.

24  Q    And whose name is that account in?

25  A    Phil Kenner.

Wayne - Direct/Ms. Komatireddy

3996

```
1   Q    I'm going to turn your attention to Chart 4.
2             Did you review transactions related to a loan
3   for Centrum Financial Services?
4   A    I did.
5   Q    To begin, tell us what is depicted on Chart 4.
6   A    From Glen Murray, Darryl Sydor, Steve Rucchin and
7   Owen Nolan, line of credit, $3,480,000 transferred to
8   purchase Honuapo.
9   Q    And is Honuapo?
10  A    It's land in Hawaii.
11  Q    Did this land end up being mortgaged out?
12  A    Yes.
13  Q    I'm going to turn your attention to Chart 5.
14            What happened to the proceeds of the mortgage?
15  A    The proceeds of the mortgage is transferred to Little
16  Isle IV's account.
17  Q    And what happened to the money after that?
18  A    $1.5 million on the same date a transfer goes to
19  Propiedades DDM S DE R.L. DE.  An overnight of $950,000 is
20  also transferred to Ula Makika
21  Q    And what happened to it from there?
22  A    From there it's transferred to Baja Development Corp.
23  Q    And did you review the accounts in Northern Trust
24  Bank for -- Phil Kenner?
25  A    Yes.
```

Wayne - Direct/Ms. Komatireddy

3997

1   Q    And is there a transfer back from Baja Development

2   Corp?

3   A    I don't believe so, but I would have to review the

4   accounts.

5   Q    All right, from Ula Makika is there other money out?

6   A    Yes.

7   Q    Where does it go?

8   A    $650,000 is then transferred to CMG Constantine

9   account.

10          And then checks are written on that on July 22,

11  2005 towards the purchase of Palms Condos.

12  Q    And you say the purchase of Palms Condos, will you

13  describe what that is?

14  A    There are condos at the Palms that the money was used

15  to purchase for a further, I think it's a second deposit.

16  Q    And you reviewed records, business records of Palms

17  Place?

18  A    Yes, I did.

19  Q    And made that determination?

20  A    Yes, I did.

21  Q    Did you review mortgage settlements related to the

22  Centrum loan?

23  A    Yes, I did.

24  Q    I'm going to turn your attention to 3703.

25          Could you read for us the highlighted portion?

Wayne - Direct/Ms. Komatireddy

3998

1    A    That the proceeds of the above described loan will be

2    used exclusively for business and commercial purposes, and

3    not for consumer purposes, and, more specifically, shall

4    be used in connection with the development of the property

5    being pledged as collateral for the above described loan.

6    Q    And in your chart we're seeing there are checks

7    written to the title for the purchase of condos.

8         Can you tell which Palms condos that money went

9    to?

10   A    Yes.

11   Q    Turning your attention to Government Exhibit 4408.

12   Is this one of the records you reviewed?

13   A    Yes, it is.

14   Q    What is it?

15   A    It's a schedule provided by the Palms which depicts

16   the amounts paid.

17   Q    And sir, on the left are those the identifiers for

18   the specific conference unites that the money went to?

19   A    That's correct.

20   Q    Now at the time of this loan being made, July 2005,

21   did you review the bank accounts and lines of credit at

22   Northern Trust at that time?

23   A    I did.

24   Q    Can you turn your attention to Chart 6.

25        What does this depict?

Wayne - Direct/Ms. Komatireddy

3999

```
1    A    This depicts the balances of certain accounts,

2    certain Hawaii bank accounts and lines of credit.

3    Q    So what on the left Hawaii bank accounts, what

4    accounts are those?

5    A    Those are bank accounts that Phil Kenner had control

6    of.

7    Q    And the numbers that you listed there, that is the

8    balance in that account on July 18, 2005?

9    A    That's correct.

10   Q    And did you review the lines of credit transactions

11   with respect to each line of credit in those bank accounts

12   at the time?

13   A    I did.

14   Q    And the numbers depicted there, what are those?

15   A    Those are what is owed on those lines of credit.

16   Q    The amount of the loans?

17   A    That's correct.

18   Q    Can you turn your attention to chart 6.  What does

19   this depict?

20   A    This depicts the balances of certain accounts,

21   certain Hawaii bank accounts and lines of credit.

22   Q    So what on the left Hawaii bank accounts, what

23   accounts are those?

24   A    Those are bank accounts that Phil Kenner had control

25   of.
```

4000

1   Q    And the numbers that you listed there that is the

2   balance in that account on July 18, 2005?

3   A    That's correct.

4   Q    And did you review the line of credit chance actions

5   with respect to each line of credit in those bank accounts

6   at the time?

7   A    I did.

8   Q    And the numbers depicted there, what are those?

9   A    Those are what is owed on those lines of credit.

10  Q    The amount of the loans?

11  A    That's correct.

12  Q    I'm going to turn your attention to Chart 7.  If you

13  look at transactions related to the Urban Expansion Loan?

14  A    I did.

15  Q    Can you tell us about the payoffs of these Urban

16  Expansion Loan?

17  A    There was as part of the agreement, a settlement with

18  Lehman.  There was a 6.9 or $6.9 million payment to Urban

19  Expansion.

20  Q    What happened to that loan?

21  A    The money, part of that money is then transferred to

22  CMG, Tommy Constantine, a little over $2 million.

23  Q    What happens to the money after it gets to the CMG

24  account?

25  A    $250,000 goes to First American Title for the

Wayne - Direct/Ms. Komatireddy

4001

1    purchase of Tracy Kenner's house.

2    Q    How were you able to tell that it was for the

3    purchase of Tracy Kenner's house?

4    A    I reviewed records.

5    Q    And where else did the money go?

6    A    The money goes to Phil Kenner for the payment of a

7    personal loan.

8    Q    And how were you able to tell that there was a

9    payment of a personal loan for Mr. Kenner?

10   A    His debit account statement.

11   Q    And where else did the money go?

12   A    Money goes to certain expenses for Mr. Constantine,

13   $130,000 to Unitech Racing; there's $100,000 to cash

14   withdrawal; $26,000 goes to Pacific Coast Motorsports.

15   Q    I'm going stop you for a moment.

16        When saw there was a cash withdrawal, did you

17   actually look at the withdrawal slip?

18   A    I did.

19   Q    And what did it indicate?

20   A    That Tommy Constantine had taken out $100,000 cash

21   withdrawal.

22   Q    And the rest of those expenses there -- let's turn to

23   that withdrawal.

24        This is what you're referring to?

25   A    Yes.

Wayne - Direct/Ms. Komatireddy

4002

1   Q     And it says, Constantine Management Group, 8/16/2006?

2   A     Yes.

3   Q     $100,000?

4   A     That's correct.

5   Q     Per customer request, right?

6   A     Yes.

7   Q     And the rest of those expenses, those other expenses

8   that you saw coming out of the Constantine Management

9   Group account?

10  A     That's correct.

11  Q     And did you review invoices related to Michael Shank

12  Racing, Vegas Marketing Promotions and Unique Auto Sports?

13  A     Yes.

14  Q     As well as Unitech Racing?

15  A     Yes, that's correct.

16  Q     And can you describe generally what that money went

17  to pay for?

18  A     Car racing, and cars.

19  Q     Turning your attention to what is in evidence 3824, a

20  settlement agreement between Kau Holding and Urban

21  Expansion.

22        And turning to page 3 of this exhibit.  Can you

23  read for us the highlighted forges?

24  A     Neither Kenner nor any related party of Kenner has

25  any direct or indirect interest in Urban or any related

Wayne - Direct/Ms. Komatireddy

4003

1    party thereof, and neither Kenner nor any related party of

2    Kenner shall receive, directly or indirectly, any portion

3    of the settlement payment or any other monetary or other

4    compensation in connection with the execution of this

5    agreement.

6    Q    Drawing your attention to chart 8.

7         Did you review Mr. Peca's line of credit and

8    transactions from that line of credit in October 2006?

9    A    Yes.

10   Q    Can you describe what happened?

11   A    From Michael Peca's line of credit at Northern Trust,

12   $395,000 was transferred to Little Isle IV.

13        On that same day $395 is transferred Ula Makika.

14   Q    $395,000 thousand?

15   A    That's correct.

16   Q    What happened next?

17   A    On that same day, $395,000 dollars is then

18   transferred to Led Better which is a Kenner controlled

19   account.

20   Q    And how do you know that?

21   A    I reviewed the bank account.

22   Q    And the signature card?

23   A    Yes.

24   Q    And that signature card said, Phil Kenner?

25   A    Right.

4004

1    Q    And where does that money go?

2    A    Well, Bryan Berard also contributes $375,000.  And

3    then the money is then transferred for the purchase of a

4    property in Sag Harbor.

5    Q    Turning your attention to Chart 9.  Is there

6    additional money that you reviewed at the same time for

7    Mr. Kaiser?

8    A    That's correct.

9    Q    Where does that money go?

10   A    $380,000 on November 1, 2006 is transferred to Ula

11   Makika.

12          Money is then transferred over to CMG Tommy

13   Constantine.

14          Also from Ula Makika $200,000 is transferred to

15   Phil Kenner.

16          And then $200,000 is transferred to the Hermosa

17   Ventures account.

18   Q    I'm going to now turn your attention to series of

19   other charts.  Before I do, have you reviewed various

20   transactions related to Eufora?

21   A    I did.

22   Q    And did you review money that was sent for Eufora?

23   A    Yes.

24   Q    I'm going to turn your attention to Chart 10.  .

25          What happened to the money that Mr. Peca sent

4005

1   for Eufora?

2   A    It goes to CMG, Tommy Constantine account.

3   Q    And what happened that same day?

4   A    The same amount is then transferred over on that same

5   day to Phil Kenner.

6   Q    What's the amount?

7   A    $100,000.

8   Q    Turning to Chart 11.

9        What happens to the money that Mr. Nash sent?

10  A    It goes to CMG, Tommy Constantine account.

11  Q    And what happens to the money after that?

12  A    It goes to Wampler, Buchanan law firm, Kinetic Speed

13  Shop, and Phil Kenner.

14  Q    Did you review invoices for Wampler and Kinetic Speed

15  Shop?

16  A    I did.

17  Q    Can you describe generally what those expenses are

18  for?

19  A    Wampler was for, related to a lawsuit involving Tommy

20  Constantine and -- in Florida and Kinetic Speed Shop, has

21  to do with cars.

22  Q    I'm going to direct your attention to what is in

23  evidence as government Exhibit 203A.

24       Looking at this conversation, do you see on the

25  right it says, I'm sending CMG 100K today.  Please send

4006

1   the extra 25K back to me?

2   A    Yes.

3   Q    And on the left it says 25K question mark?  I need

4   40K for lawyers and 40K for G T car.  Is that Eufora

5   money, question mark.

6            Do you see that?

7   A    Yes.

8   Q    Yes on the right side?

9   A    Yes.

10  Q    On the left side it says, Are you cool if I just sent

11  the 17K?  I'm sorry to nickel and dime you, but I have to

12  lay out 80 straight away and I don't even have enough to

13  afford a -- I don't even have enough to get to the meeting

14  in Cabo.

15           Do you see that?

16  A    Yes.

17  Q    On the right it says, No problem?

18  A    Yes.

19  Q    On the left, check email?

20  A    Yes.

21  Q    On the right there's a bank account information

22  including an account number, Philip A Kenner, correct?

23  A    Yes.

24  Q    Turning back to Chart 11.

25           Did you review that account number, the account

Wayne - Direct/Ms. Komatireddy

4007

1   statement for that account number

2   A    I did.

3   Q    Did it get $17,000 --

4   A    It did.

5   Q    On April 28, 2008.

6   A    It did.

7   Q    And the other numbers there, $40,000 to the lawyers,

8   Wampler, Buchanan; and approximately $40,000 to the

9   Kinetic Speed Shop?

10  A    That's correct.

11  Q    And does it match up with the numbers on 203A?

12  A    Yes.

13  Q    I'm going to turn your attention to Chart 12.

14        What happened to Mr. Sydor's money in July of

15  2008?

16  A    Darryl Sydor sends $50,000 from Darryl Sydor's

17  account on July 8, 2008 CMG, Tommy Constantine.  On that

18  same day $28,000 goes to Playboy.

19  Q    Turning your attention to Chart 13.

20        What happens to Mr. Ranford's money in July

21  2008?

22  A    $200,000 goes to CMG, and then the money is disbursed

23  to Playboy, Phil Kenner, to I Got To Go Racing, and to

24  Eufora.

25  Q    How much money goes to Eufora out of the $200,000?

Wayne - Direct/Ms. Komatireddy

4008

1    A    $8500.

2    Q    Did you also review transactions for Eufora in late

3    2008 and 2009?

4    A    I did.

5    Q    I'm going to turn your attention to government

6    exhibit, Chart 14.

7            What happens to the money that Mr. Murray sent

8    to the Eufora account in December of 2008?

9    A    $100,000 goes to Eufora.

10   Q    What happens next?

11   A    A couple of days later $100,000 is then transferred

12   over to Tim Gaarn's account.  And then $81,127 is

13   transferred to Phil Kenner.

14           From there $1,000 goes to CMG, and to Kenner's

15   account.  Kenner pays his mortgage, $15,000 to

16   International Bank and a credit card payment.

17   Q    You said it pays his mortgage.  What loan was that

18   mortgage for?

19   A    His house in Scottsdale, Arizona.

20   Q    How do you know that?

21   A    I reviewed the mortgage records.

22   Q    And is that what's in evidence, Government Exhibit

23   922.

24           Have you been to that house?

25   A    I have.

Wayne - Direct/Ms. Komatireddy

4009

1  Q    Is Government Exhibit 922 that house that the

2  mortgage payment is going to?

3  A    It is.

4  Q    And is that 10705 East Cactus Road in Scottsdale,

5  Arizona?

6  A    It is.

7  Q    You said there was also a payment that went to

8  International Bank.

9         What was that for?

10 A    Payment for a mortgage on a house in Cabo Saint

11 Lucas.

12 Q    How do you know that?

13 A    I reviewed the mortgage records.

14 Q    Have you been to that home?

15 A    I have.

16 Q    I'm going to hand you what has been marked as

17 Government Exhibit 944.

18         Do you recognize this?

19 A    Yes.

20 Q    What is it?

21 A    It's a picture of a house for the mortgage in Cabo

22 Saint Lucas.

23 Q    And who took that picture?

24 A    I did.

25 Q    Is that a fair and accurate photograph of the house

Wayne - Direct/Ms. Komatireddy

4010

1   that is related to the International Bank mortgage that

2   you took -- when did you say you took it?

3   A    It was probably around April of 2014.

4   Q    Is this a fair and accurate photograph of the house

5   referred to in the International Bank records from April

6   2014?

7   A    Yes.

8            MS. KOMATIREDDY:  The government moves 944 into

9   evidence.

10            MR. LaRUSSO:  I have no objection, your Honor.

11            MR. HALEY:  No objection, judge.

12            THE COURT:  944 is in evidence.

13            (Government Exhibit 944 in evidence.)

14   BY MS. KOMATIREDDY:

15   Q    All right, I'm going to turn your attention to what

16   is in evidence as Chart 15.

17            What happens to the money that Mr. Ranford sent

18   to Eufora in February 2009?

19   A    Well Mr. Ranford and Mr. DeVries both sent $100,000

20   to Eufora.

21   Q    What happened to the money after that?

22   A    It goes to Tim Gaarn.

23   Q    What happened next?

24   A    From there it goes to pay certain expenses including

25   Gilmartin, Magence & Ross, a Tracy Kevner, and credit card

4011

1    payments.

2    Q    And have you reviewed the records pertaining to

3    Gilmartin, Magence & Ross?

4    A    Yes.

5    Q    Can you generally describe what that payment was for?

6    A    It was for a loan repayment of, having to do with

7    Palm condos.

8    Q    Whose name was that loan in?

9    A    Tommy Constantine.

10   Q    Who was the guarantor of that loan?

11   A    Phil Kenner.

12   Q    Is there other money that ends up in the Kenner

13   account?

14   A    Yes.

15   Q    How did it get there?

16   A    $30,000 is transferred to John Kaiser.  On that same

17   day John Kaiser sends $30,000 to Standard Advisors, a Phil

18   Kenner account.  And on that same day $30,000 enters Phil

19   Kenner's account?

20   Q    How is that money spent?

21   A    On a mortgage payment on a house in Scottsdale,

22   Arizona, and a credit card payment.

23   Q    Turning your attention to chart 16.

24         With respect to the money that goes from Steve

25   Rucchin to the Eufora account in 2009, specifically

4012

1    February of 2009.  What happens to that money?

2    A    $100,000 is transferred to Eufora.  On that same day

3    $100,000 is then transferred to Tim Gaarn's account.

4    Q    Where does it go from the Gaarn account?

5    A    It goes to pay the mortgage for International Bank.

6    And there was an expense for Tom Baker and Tommy, it says

7    reference Tommy Constantine.

8    Q    And International Bank, that's the Mexico house that

9    we just looked at?

10   A    That's correct.

11   Q    And then does money end up in Kenner accounts for

12   other things?

13   A    Yes.  $40,000, over $40,000 is sent to John Kaiser's

14   account.  And then $40,000, a little over $40,000 that

15   same amount sent to Phil Kenner's account.

16   Q    How is that money spent?

17   A    Well, Tim Gaarn sends money, $30,000 to Phil Kenner's

18   account as well.

19   Q    Directly?

20   A    Directly.

21        And then the payments are then spent on credit

22   cards; the same mortgage in Scottsdale, Arizona; and a

23   Chase auto loan.

24   Q    Now turning your attention no chart 17.

25        What happens to the money that goes from

Wayne - Direct/Ms. Komatireddy

4013

1    Mr. Murray's account to the Eufora account in March 2009?

2    A    It goes from Eufora to Tim Gaarn; and then $90,000 is

3    then transferred to Phil Kenner's account; a $9,000 cash

4    withdrawal; and a credit cart payment; and a mortgage

5    payment.

6    Q    And to be clear, how much money goes from Murray to

7    Eufora in March of '09?

8    A    $100,000.

9    Q    And how much money goes from Eufora to Gaarn?

10   A    $100,000.

11   Q    How much goes from Gaarn to Kenner?

12   A    $90,000.

13   Q    Turning your attention to chart 18?

14        What happened to the money that goes from

15   Mr. Rucchin and Mr. Murray in April of 2009 to Eufora?

16   A    Together, $100,000 goes to Eufora; and then $100,000

17   is then transferred over to Tim Gaarn's account; $95,000

18   is then transferred over to Phil Kenner's account.

19   Q    And how was that money spent?

20   A    A cash withdrawal; mortgage payment; and a chase auto

21   loan.

22   Q    And credit card bills?

23   A    That's correct.

24   Q    Turning your attention to Chart 19.

25        What happened to the money that goes from

Wayne - Direct/Ms. Komatireddy

4014

1    Mr. Ranford's account to Eufora in May of 2009?

2    A    Again $100,000 goes to the Eufora account; and then

3    $100,000 then transfers over to the Gaarn account; and

4    then from Tim Gaarn's account $85,000 goes to Phil Kenner;

5    and then go to John Kaiser, American Express, a credit

6    card, and car payments.

7    Q    How did you determine the car payments?

8    A    I reviewed the car statements.

9    Q    Finally, I draw your attention to chart 20.

10          What happens to the money that Mr. Privitello

11   sent in December of 2009 to the Ronald Richards' account?

12   A    $200,000 goes to the Ron Richards' account; $50,000

13   goes to Eufora; and then $15,000 goes to Carey Rodriguez,

14   Greenberg & Paul.

15   Q    Have you reviewed the invoices related to that

16   payment to Rodriguez?

17   A    Yes.

18   Q    What was that money paid for?

19   A    It was in connection with a lawsuit regarding Tommy

20   Constantine Racing.

21   Q    And where does the rest of the money go?

22   A    $155,000 goes to the AZ Avalon; and then $150,000 is

23   handed over to Bancorp.

24   Q    Now you testified that you prepared Government

25   Exhibit 80.

Wayne - Direct/Ms. Komatireddy

4015

1    MS. KOMATIREDDY:  May I publish that to the

2  jury?

3    THE COURT:  How much longer do you have?

4    MS. KOMATIREDDY:  This is the last piece, your

5  Honor, five minutes.

6    THE COURT:  Okay.

7  BY MS. KOMATIREDDY:

8  Q    You testified that this was a list of transactions

9  going out of the Ronald Richards account?

10  A    That's right.

11  Q    Now I'm not going to ask you to go through every

12  single expenditure, but I am going to ask you a few.

13    Now looking at the expenditures under Aero-Space

14  Reports, AZ Falcon Partners, Cabin Crafters; generally

15  speaking did you review records from those companies

16  including invoices and other records that list those

17  expenses reports?

18  A    Yes.

19  Q    And generally what are they for?

20  A    For the Falcon 10 and the Metro

21  Q    And when you say the Falcon 10 and the Metro, that's

22  an airplane?

23  A    That's right.

24  Q    There is an entry on here for Arizona Bar Foundation.

25  How much money did the Arizona Bar Foundation get during

Wayne - Direct/Ms. Komatireddy

4016

1    this time period?

2    A    $55,000.

3    Q    Did you review what is in evidence is 8021, an

4    excerpt from the deposition of Tommy Constantine?

5    A    I would have to look at it.

6              Yes, I reviewed that.

7    Q    Can you read for us the highlighted portion?

8    A    The screen is not working.

9    Q    Do you see it up there?

10   A    I have a tax attorney who's handling a lot of the tax

11   issues for me at the moment.  Steve Silver.

12   Q    And when you look at the entry in Government Exhibit

13   1102, it lists the Ron Richards' account on the backup.

14   Is there any indication of a wire transfer where that

15   Arizona Bar Foundation money went?

16   A    To Silver Law.

17   Q    There are also entries on here for -- Motor Sports.

18   Can you tell us what those payments were for?

19             MR. LaRUSSO:  Your Honor, I object.

20             THE COURT:  Yes.

21             MS. KOMATIREDDY:  That's fine.  I understand.

22             I just have one last line of questioning, your

23   Honor.

24   BY MS. KOMATIREDDY:

25   Q    Is there is an entry here for Ruben Israel Palos

Wayne - Direct/Ms. Komatireddy

4017

1    Carillo.

2              Do you see that?

3    A    Yes.

4    Q    How much money did they get from the Ronald Richards

5    account in this time period?

6    A    $85,000.

7    Q    And did you review records from the Mexican Institute

8    of Industrial Properties related to the Ruben Israel Palos

9    Carillo?

10   A    Yes.

11   Q    And turning your attention to what is in evidence as

12   Government Exhibit 305.

13             Do you see that record?

14   A    Yes.

15   Q    It's from the Mexican Institute of Industrial

16   Properties?

17   A    Yes.

18   Q    And you have reviewed the translation of this as

19   well?

20   A    Yes.

21   Q    What does this record indicate?

22   A    It indicates an agent in Mexico who was

23   registering Mosquito Rojo

24   Q    And what was he registering Mosquito Rojo as?

25   A    I would have to look at the translation.

Wayne - Direct/Ms. Komatireddy

4018

1    Q    Fair enough.  It says (reading in Spanish), right?

2    A    Right.

3    Q    Okay.  Now you referred to a search team for

4    Mr. Kenner's home?

5    A    Yes.

6    Q    I'm going to hand you Government Exhibit 5106L.

7         Can you describe for us what this is in

8    evidence?

9    A    It's a business card for Mosquito Rojo with Phil

10   Kenner as the chairman.

11   Q    And this business card, did you seize this?

12   A    Yes.

13   Q    From Mr. Kenner's home?

14   A    That's correct.

15        MS. KOMATIREDDY:  No further questions.

16        THE COURT:  We'll take a lunch break.  We'll

17   reconvene at 2:15.

18        Don't discuss the case.

19        Leave the exhibits here.

20        Enjoy your lunch.

21        (The jury left the courtroom.)

22        MR. HALEY:  Your Honor, once again I ask the

23   Court's indulgence to go through the exhibits.  We still

24   need to create a disk of materials to give to Mr. LaRusso

25   and his client with reference to defense exhibits.  We

Wayne - Direct/Ms. Komatireddy

4019

1   have the opportunity and there is someone here to do that.

2   And we have a printer that will work, but it will require

3   we remain in the courtroom.

4            THE MARSHAL:  We do not have the manpower to

5   allow us to stay in the courtroom.

6            MR. HALEY:  Well -- we wouldn't be able to bring

7   the computer and the printer.

8            MR. LaRUSSO:  To be honest with you, we're

9   probably not going to be able to start cross with

10  Mr. Kenner tomorrow.  So we can work on the documents.

11           (A luncheon recess was taken.)

12           (Continued on the following page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

4020

1      A F T E R N O O N   S E S S I O N

2

3              THE CLERK:  All rise.

4              THE COURT:  Please be seated.

5              Are we ready?

6              MR. HALEY:  Yes.

7              MR. LARUSSO:  Yes, your Honor.

8              THE COURT:  Let's bring in the jury.

9              (The witness resumes the stand.)

10             THE CLERK:  All rise.

11             (The jury is present.)

12             THE COURT:  Please be seated.

13             Cross-examination.

14

15     CROSS-EXAMINATION

16     BY MR. HALEY:

17     Q.    Good afternoon.

18     A.    Good afternoon.

19     Q.    Is it Special Agent Wayne?

20     A.    Yes.

21     Q.    Special Agent Wayne --

22             MR. HALEY: May I see chart 11, Ms. Komatireddy.

23             Thank you.

24     BY MR. HALEY:

25     Q.    I'm going to ask you to take a look at Eufora chart

4021

1    11 if we could.

2           Do you recall this particular exhibit?  Can you

3    see it on your screen?

4    A.   Yes.

5    Q.   Now we have of course pursuant to the chart

6    introduced into evidence based on your analysis of banking

7    records, what's clearly a transaction flowing from Tyson

8    Nash to Constantine Management Group on 4/24/2008 in the

9    amount of 100,000, correct?

10   A.   Yes.

11   Q.   And then pursuant to your chart we have on part of

12   that chart 4/28/09, $17,000 going out to Phil Kenner,

13   correct?

14   A.   That's correct.

15   Q.   Now your analysis was based on various banking

16   records that you had acquired throughout the

17   investigation; is that true?

18   A.   That's correct.

19   Q.   And I take it you had full and fair opportunity to

20   analyze those banking records in great detail in order to

21   create these charts for the jury; is that true?

22   A.   Yes.

23   Q.   Now, I'm going to ask you to take a look at a

24   document that's marked Kenner Exhibit 104 for

25   identification, but I believe, and I'm almost certain, it

Wayne - Cross/Haley

4022

1  was previously introduced into evidence as a Government

2  Exhibit. I can't recall the exhibit number.

3            If you could take a look at the entire document.

4  Let me approach you because I want you to have an

5  opportunity to look at the entire document before I put it

6  up on the screen.

7            (Exhibit handed.)

8            Are you familiar with that document, sir?

9  A.   It appears to be the schedule that Chris Petrellese

10  created.

11  Q.   I see.

12            Do you have any reason to doubt the accuracy of

13  that schedule?

14  A.   No.

15  Q.   Well, as relates to this schedule, it appears to be a

16  schedule or is it not, sir, a schedule of the account of

17  Constantine Management Group that reflects at least on

18  4/24/2008, $100,000 wire regarding the Nash transfer; is

19  that correct?

20  A.   That's correct.

21  Q.   Well, we can agree, sir, can we not, that that

22  statement begins on 4/17 --

23            MS. KOMATIREDDY: This document is not in

24  evidence. It says grand jury material. I would ask it

25  not be published to the jury.

Wayne  -  Cross/Haley

4023

1    THE COURT:  Just take it down until you figure

2    out what's going on.

3    MR. HALEY:  I will.  I think I can do it this

4    way, Judge.  Thank you.

5    BY MR. HALEY:

6    Q.   Sir, I'm going to ask you to take a look at 62 B, the

7    second page of that.

8    Can we agree, sir, that as relates to that we

9    can see --

10    THE COURT:  Mr. Miskiewicz, just help him make

11    it further out so he doesn't have to move the document

12    around.

13    MR. HALEY:  Thank you, Judge.  Thank you,

14    Mr. Miskiewicz.

15    BY MR. HALEY:

16    Q.   Sir, as relates to that, do you see a deposit on

17    4/17/2008, Phil Kenner wire in the amount of $25,000?

18    A.   I see a deposit from Phil Kenner in the amount of

19    $25,000.

20    Q.   Now, that deposit, as we sure would agree, is not

21    reflected on chart 11, is it?

22    A.   It is not.

23    Q.   We then see of course the deposit of $100,000 on 4/28

24    in the yellow, correct?

25    A.   Yes.

4024

1    Q.   And that's where your chart 11 begins, true?

2    A.   That's correct.

3    Q.   And the balance at that point in time as we can see

4    is $164,860.72, correct?

5    A.   You would have to move it over a little bit.

6         Yes, over 164,000.

7    Q.   Now, we see, of course, 4/28, the $17,000 that you

8    referred to in your exhibit going out to Phil Kenner,

9    true?

10   A.   Yes.

11   Q.   But at that point in time, sir, the balance in that

12   account as we can see is 107,686.60; is that correct?

13   A.   That's correct.

14   Q.   Well, your chart however, sir, suggests that the

15   $17,000 that was paid out to Phil Kenner derived from that

16   $100,000 deposit on 4/28, isn't that what your chart

17   suggests?

18   A.   Yes.

19   Q.   Well, money is, and I'm going to use the word

20   fungible; isn't that true, sir?

21   A.   It is.

22   Q.   So is it fair to state, sir, that a full and complete

23   examination of Kenner Exhibit 62 B could lend itself as

24   easily to an interpretation that the $17,000 that Phil

25   Kenner is receiving on 4/28, may well stem from the

Wayne  -  Cross/Haley

4025

1  $25,000 that he previously deposited as reflected on that

2  $25,000 deposit on 4/17/2008; is that a fair statement?

3  A.   Well, if you look at the balance, if you bring the

4  chart over a little bit, the balance, it gets down to

5  4,000 and then there's $65,000 addition from Tommy

6  Constantine.

7  Q.   Yes.  Okay.

8        Do you know the source of that $60,000 deposit

9  from Tommy Constantine?

10  A.   I would have to look at the Tommy Constantine

11  personal account.

12  Q.   But it's not your position, sir, that -- you're not

13  here to state that that $60,000 was money that he obtained

14  from Tyson Nash, correct?  You don't know one way or

15  another, do you?

16  A.   I would have to look at the Tommy Constantine account

17  to determine where that money came from.

18  Q.   For whatever reason when you created this chart for

19  the jury's consideration, you didn't make that inquiry as

20  relates to where that $60,000 came from?

21        You just, as set forth in the exhibit, told the

22  Court and jury that $100,000 from Tyson Nash on 4/28 goes

23  into Constantine Management and 17,000 goes out on

24  4/28/2008; that's how the chart reads, correct?

25  A.   Yes.

Wayne   -   Cross/Haley

4026

1    Q.    Were you in receipt of the entire Government's

2    Exhibit 62 B before you created your summary chart 11, yes

3    or no?

4    A.    Yes.

5    Q.    With reference to chart 10, do you have that chart in

6    front of you?

7    A.    I do.

8    Q.    That's also based upon an analysis of bank records as

9    relates to the Constantine Management Group account; is

10   that true?

11   A.    That's correct.

12   Q.    And you had full and complete access to those account

13   statements; is that true?

14   A.    That's correct.

15   Q.    Prior to the deposit on 4/7/2008 of $100,000 into

16   that account, did you see a deposit from Phil Kenner in

17   the amount of $100,000?

18   A.    I did.

19   Q.    That's not included as part of the chart, is it, sir?

20   A.    It's not.

21   Q.    Incidentally, the pictures of the various hockey

22   players, just so we're clear, those pictures, were they

23   obtained during an interview of the hockey players where

24   you asked them to pose for a picture, or how do you

25   acquire those pictures?

Wayne  -  Cross/Haley

4027

1   A.    The pictures were -- I had originally drew out the

2   charts and someone else in the office took the picture

3   from the internet.  I'm not exactly sure where they got it

4   from, and posted it onto the chart.

5   Q.    So someone else in the office, you mean the U.S.

6   Attorney's Office?

7   A.    That's correct.

8   Q.    Made the decision to use a picture taken off the

9   internet rather than use the silhouette as we have in

10  other instances; is that true?

11  A.    Well, they made the decision and then they showed it

12  to me and I said okay.  So I guess I'm the one who made

13  the decision.

14  Q.    That's fine.

15        As a matter of curiosity, do the players know

16  that their pictures are appearing in these documents that

17  are being introduced into evidence in this case?

18  A.    I don't know.

19  Q.    You testified on direct, sir, that part of your

20  responsibility as an IRS special agent is either look at

21  bank record and do interviews, correct?

22  A.    I conduct interviews I should have said.

23  Q.    That's okay.  I think you did say I conduct

24  interviews.  I wrote I do interviews.  That's my writing,

25  sir.

Wayne - Cross/Haley

4028

1     What do you mean by you conduct interviews?

2   A.   During the course of investigations you speak to

3   potential witnesses about the investigation, what you need

4   to ask them.

5   Q.   And as a Special Agent with the Internal Revenue

6   Service is, or is there not, a protocol that you follow

7   when you speak with potential witnesses either in person

8   or telephonically?

9   A.   I'm not aware of the protocol you're speaking of.

10  Q.   Well, at any point in time during your career as a

11  Special Agent with the Internal Revenue Service when you

12  interviewed a witness, had you taken notes with respect to

13  what they are telling you?

14  A.   If I typically go with another agent and one or the

15  other agent usually takes notes.  Not all the time.

16  Q.   When you say one or the other agents, you work

17  jointly with other agencies; is that true?

18  A.   That's correct.

19  Q.   As a matter of fact, in this particular case you're

20  working jointly with the Federal Bureau of Investigation;

21  is that correct?

22  A.   That's correct.

23  Q.   Did you work at some point in time with a criminal

24  investigator named Scott Romanowski assigned to the United

25  States Attorney's office for the Southern District of New

Wayne  -  Cross/Haley

4029

1    York?

2    A.   I did not.

3    Q.   With reference to the agent of the FBI that you may

4    have worked or did work with in connection with this case,

5    who would that be primarily?

6    A.   Matthew Galioto.

7    Q.   Were you present, sir, on occasions when Matthew

8    Galioto would interview witnesses, prospective government

9    witnesses, in connection with this case?

10   A.   Yes.

11   Q.   Were you present in instances, sir, when you would

12   interview witnesses either telephonically or in person and

13   he took notes of the interview?

14   A.   I don't remember him taking notes every time, but he

15   typically would take notes or it would require him to take

16   notes or I would take notes.

17   Q.   Well, do you have any understanding, sir, you

18   testified that as far as -- withdrawn.

19          As relates to your responsibilities as a Special

20   Agent with the Internal Revenue Service is, or is there

21   not, a protocol or procedure or directive that exists with

22   reference to interviews that you take with perspective

23   government witnesses concerning taking notes by way of

24   what they tell you?

25   A.   There is no protocol that requires me, that I'm aware

Wayne  -  Cross/Haley

4030

1    of, that I have to take notes.

2    Q.    But you have in this case, correct?

3    A.    There are times when I did take notes.

4    Q.    As a matter of fact, there are times where you would

5    take the notes of the interview and then utilized in your

6    handwritten notes reduce that to a typed written document;

7    isn't that true?

8    A.    That's correct.

9    Q.    Does that document have a specific designation within

10   the Internal Revenue Service by way of a 302 or 609 or

11   anything of that nature?

12   A.    I call it a memorandum of interview or the IRS calls

13   it a memorandum of interview, MOI.

14   Q.    In connection with the memorandum of interview, does

15   the Internal Revenue Service -- what, if any, protocols or

16   rules exists with reference to the memorandum of interview

17   in terms of whether you take it or not, is it

18   discretionary, are you required to take it, does it depend

19   upon where you physically are located?  What, if any rules

20   exist as relates to that?

21   A.    I'm not aware of any rules requiring me to take notes

22   during an interview.

23   Q.    You testified a moment ago you worked with Special

24   Agent Matthew Galioto of the FBI in this case; is that

25   correct?

4031

1   A.    That's correct.

2   Q.    How often, prior to your involvement in working with

3   Special Agent Matt Galioto, have you worked with agents of

4   the Federal Bureau of Investigation in the past regarding

5   let's say joint investigations, give us an idea?

6   A.    Almost all of my investigations have been with the

7   FBI.

8   Q.    Do you know what a 302 is?  Does that mean anything

9   to you?

10  A.    Yes.

11  Q.    What is a 302?

12  A.    It's similar to my MOI.  It's a report of an

13  interview.

14  Q.    Were there instances, sir, in connection with this

15  investigation, where you were present and Special Agent

16  Matt Galioto where he created a 302?

17  A.    Yes.

18  Q.    And would those 302's get created as a result of an

19  interview he would have either in person or telephonically

20  with the perspective government witness?

21  A.    Could be both.

22  Q.    As a matter of fact in this case it happened in both

23  instances, did it not, where Special Agent Galioto created

24  302's based upon an in-person interview and Special Agent

25  Galioto created 302's based upon telephonic interviews?

Wayne  -  Cross/Haley

4032

1  A.   I can't recall telephonic.  I am aware of in-person

2  interviews.  I'm sure there were times where he took notes

3  on the phone.

4  Q.   Incidentally, in instances where you're either

5  working individually as an agent with the Internal Revenue

6  Service, or working jointly with a Special Agent of the

7  Federal Bureau of Investigation, do you advise the

8  witness, perspective government witness, either prior to,

9  during or at some point during the interview that they're

10  obligated to be truthful with you in answering your

11  questions?

12  A.   I don't advise every time, but there have been times

13  where I have advised.

14  Q.   Sir, we can agree, can we not, that the deliberate

15  decision to be untruthful in providing information to a

16  federal agent is indeed a criminal offense; isn't that

17  true?

18        MS. KOMATIREDDY:  Objection.

19        THE COURT:  Overruled.  You can answer that.

20  A.   That's correct.

21  Q.   Going back to chart 11, sir, all the charts you

22  introduced reflecting your analysis of bank transfers,

23  transfers of monies in and out of various accounts, did

24  you look, as a federal agent with the Internal Revenue

25  Service, beyond those statements to determine whether or

Wayne  -  Cross/Haley

4033

1    not there was any document in the possession of the

2    government that would explain the reason and purpose of

3    that transfer?

4    A.    I'm not sure of what documents you're referring to.

5    Q.    Well, you are familiar, are you not, sir, with a

6    document called the funding consulting agreement?

7          It's been subject to introduction in this

8    courtroom as a government document.  It's been published

9    to the jury -- withdrawn.

10          There's been expert testimony regarding an

11    alleged forged signature of John Kaiser.

12          You recall that happening; is that correct?

13    A.    That's correct.

14    Q.    That's the funding consulting agreement I'm talking

15    about.  Are you familiar with that document?

16    A.    Yes.

17    Q.    Are you familiar with the terms of that document,

18    what's contained within the four corners of the document?

19    A.    I would have to review it.

20    Q.    I'm somewhat familiar, but I would have to review it.

21    Q.    Well, when you created these flowcharts that have

22    been introduced into evidence, did or did you not take a

23    look at a particular transaction and see if it had any

24    relevance or materiality let's say to another document in

25    the possession of the government or your investigative

Wayne  -  Cross/Haley

4034

1   file that would explain the purpose of that transfer by

2   way of a contractual obligation, a promissory note, a

3   loan, something of that nature?

4   A.   In creating these documents I didn't review that

5   document.

6   Q.   Did you review any documents, sir, that would have

7   relevance and materiality to the purpose of the transfer

8   in creating these charts, yes or no?

9   A.   You would have to refer me to the specific document.

10  Q.   Well --

11  A.   I reviewed several documents when I created these

12  so...

13  Q.   When you say you reviewed several documents, are you

14  talking about bank records or are you talking about

15  something like a funding consulting agreement?

16        Did you review that, yes or no?

17  A.   Did I review -- I may have looked at the funding

18  consulting agreement along the course of the

19  investigation, but my flowcharts pertain to business

20  records, title records.

21  Q.   I understand that, sir.

22        So do you recall looking at a document called an

23  environmental indemnity agreement?

24  A.   No.

25  Q.   Do you recall looking at a document called an equity

Wayne  -  Cross/Haley

4035

1    transfer agreement?

2    A.    You would have to show me the document.

3    Q.    Did or did you not, sir, in connection with your

4    investigation when you rendered and created these charts,

5    review a document known as the Urban Expansion loan

6    agreement?

7    A.    Yes.

8    Q.    As relates to that particular document, when you

9    created your chart by way of monetary transfers, did you

10   seek to correlate that particular document with any of the

11   bank transfers contained in your charts; yes or no?

12   A.    It depends on which Urban.  The Urban settlement

13   agreement?

14   Q.    You're correct, sir.  There's a few of them.

15   A.    I can take a look at them and see if there's any.

16   Q.    Very well.

17              (Continued on next page.)

18

19

20

21

22

23

24

25

4036

1   CROSS-EXAMINATION (Cont'd)

2   BY MR. HALEY:

3   Q    Sir, my question simply is this --

4   A    Sure.

5   Q    -- Was or was it not your protocol when you created

6   these charts to take a look at the bank records in the

7   creation of the chart itself showing the transfer, and

8   then scour the Government's file, your file, to see if

9   that particular transfer had a relation to a particular

10  document in your possession.

11        Did that happen in ever instance?  Yes or no?

12  A    In these instances for Urban Expansion the money came

13  out.  I reviewed the Urban Expansion bank accounts and the

14  settlement agreement between Lehman and Urban and the the

15  Urban agreement.

16  Q    Apart from that document, did you do a similar or did

17  you adopt a similar protocol procedure with reference to

18  other transfers where you looked for documents that might

19  underlie that transfer?  Apart from Urban Expansion, did

20  you do that with any others?

21  A    Which one?

22        Do you want me to go through the list.

23  Q    Did the list include the environmental indemnity

24  agreement?

25  A    In looking at my charts.  I didn't look the a the

1    environmental indemnity agreement.

2    Q    Or the equity transfer agreement?  That doesn't mean

3    anything to you?

4    A    That might mean something if you show it to me.

5    Q    We can agree, can we not, Special Agent Wayne, that

6    as it relates to the circumstances under which any one of

7    the hockey players had interaction or conversations with

8    Phil Kenner concerning the deposit of those monies into an

9    account that is reflected on your charts, you weren't

10   privy to any of those conversations, true?

11   A    That's correct.

12   Q    As a result of that, sir, to state the obvious, you

13   cannot offer any personal knowledge as to what was said or

14   what was not said during the course of that conversation,

15   isn't that true?

16   A    Yes.

17        MR. HALEY:  May I have a moment, Judge?

18   Q    Special Agent Wayne, various hockey players have

19   testified here in court in your presence -- you've been

20   present throughout the trial, is that correct, sir?

21   A    That's correct.

22   Q    And before each one of them testified, were you

23   present when they were interviewed by one or more of the

24   Assistant U.S. Attorneys in this case?

25   A    Not every time but I was present for some of them.

4038

1  Q    And during those times when you were present during

2  those interviews, did you have access to your

3  investigative file, and by that I mean not only the file

4  you maintained but actually the file that also the FBI

5  maintained.

6        Did you have access to that?

7  A    I didn't have files from the FBI's file.  I had files

8  what I gathered.

9  Q    Were you present when John Kaiser was interviewed

10  before he testified, and when I say "interview," was

11  interviewed by the Assistant United States attorneys in

12  this case, if you recall?

13  A    It depends on which time.  I had been present.

14  Q    How many times was John Kaiser interviewed by the

15  Assistant District Attorneys in this case in your presence

16  before he testified, approximately?

17  A    Maybe five to six, maybe more.  I don't recall

18  exactly.

19  Q    And in those five or six or more times, did you or

20  someone else in your presence take notes of that

21  conversation?

22  A    Not every time, but there were times notes were

23  taken.

24  Q    During those times where notes were taken of the

25  interview, did either you or Special Agent Galioto or the

Wayne - Cross/Haley

4039

1   U.S. Attorney's Office discussed with Mr. Kaiser what he

2   was relating to you and what was then contained in a

3   document that you had available to you specifically, let's

4   say, a 302 consisting of a prior statement he had given?

5               THE WITNESS:  Can you repeat the question?

6               MR. HALEY:  Sure.

7   Q    You testified, as I recall, it may have been five or

8   six or more times when you were present, when John Kaiser

9   was interviewed by the Assistant United States attorneys

10  in this case; is that correct?

11  A    That's correct.

12  Q    And you testified that there may or may not have been

13  -- withdrawn.

14              As relates to note taking, you believe there

15  were instances where notes were taken; is that correct?

16  A    That's correct.

17  Q    And as it relates to those conversations with John

18  Kaiser where he was asked questions by the U.S. Attorneys

19  in this case and he gave answers to those questions, was

20  there ever a point in time when John Kaiser gave an answer

21  to a question and someone, either yourself, a special

22  agent or the U.S. Attorneys, asked John Kaiser about the

23  statement he had given as relates to a prior statement he

24  had given in a 302?

25  A    I don't recall that.

Wayne - Cross/LaRusso

4040

1    MR. HALEY:  Thank you.

2    No further questions.

3    THE COURT:  Mr. LaRusso.

4    MR. LARUSSO:  Thank you, your Honor.

5    CROSS-EXAMINATION

6    BY MR. LARUSSO:

7    Q    Good afternoon, Agent Wayne.

8    A    Good afternoon.

9    Q    I want to show you what I received, I believe this is

10   Government's Exhibit 1753.

11        Do you recall your testimony with regards to

12   this 100,000 withdrawal?

13   A    Yes.

14   Q    I believe it was your testimony that in regards to

15   this, this was a cash withdrawal; is that correct?

16   A    That was my testimony.

17   Q    And is it usual in withdrawing cash from a bank for

18   the person seeking withdrawal to sign their name on a bank

19   document authorizing that withdrawal?

20   A    I'm not familiar.

21   Q    In this particular case, did you consult with the

22   Bank of America to determine their practice or policy with

23   regards to cash withdrawals?

24   A    I did not.

25   Q    You do see in the section where it talks about a

4041

1   customer's signature, it says "per customer request."  Do

2   you see that?

3   A    Yes.

4   Q    Would you agree with me having looked at the document

5   that the bank official who put that down was in

6   communication with the person seeking withdrawal by way of

7   telephone or e-mail?

8   A    I don't know that.

9   Q    Let me show you -- do you know what the word counter

10  debit means?

11  A    To take out at the counter.  To debit the account at

12  the counter.

13  Q    Do you know for a fact how Bank of America uses that

14  word in their bank records?

15  A    I don't.

16  Q    Let me show you what has been marked for

17  identification and stipulated.

18       MR. LARUSSO:  And I apologize to the Government

19  and Mr. Haley, as C 254.

20       THE COURT:  Any objection from the Government?

21       MS. KOMATIREDDY:  No objection.

22       MR. HALEY:  Thank you.  No, sir.

23       THE COURT:  Any objection?

24       MR. HALEY:  No, your Honor.

25       THE COURT:  C 254 is admitted.

Wayne - Cross/LaRusso

4042

1              (Whereupon, Defendant's Exhibit C 254 was

2     received in evidence.)

3     Q    Is that the Bank of America records for Constantine

4     Management reflecting the $100,000 withdrawal we were

5     talking about?

6     A    Yes.

7     Q    And I highlighted it; is that correct?

8     A    Yes.

9     Q    It says counter debit?

10    A    Yes.

11    Q    As you are testifying today you don't know what that

12    means.  You had to contact the Bank of America.

13    A    I did not contact them.

14    Q    But we can agree it does not say cash withdrawal?

15    A    That's right.

16    Q    I will just briefly -- can we look at charts, I

17    believe it is 10 through 13.  Do you have them in front of

18    you?

19    A    Yes.

20              MR. LARUSSO:  If you would permit me, I'm just

21    going to show them to the jury.  We have copies so they

22    will know what we're talking about.

23    Q    Chart 10, that's the 100,000 from Mr. Peca to

24    Constantine Management on April 7th of 2008; is that

25    correct?

Wayne - Cross/LaRusso

4043

1    A    Yes.

2    Q    And Chart 11 is Tyson Nash to the Constantine

3    Management account?

4    A    Yes.

5    Q    And Chart 12 is Mr. Sydor to Constantine Management

6    of 50,000 on July 8th of 2008, if I read that right?

7    A    Yes.

8              MR. LARUSSO:  I saw you squint.  I wanted to

9    make sure you saw that.  I've been known to do that.

10   Q    The last one is Chart 13 and that is 200,000 from

11   Mr. Ranford to Constantine Management Group; is that

12   correct?

13   A    Yes.

14   Q    During your investigation did you learn that

15   Mr. Constantine owned the shares of Eufora that he was

16   selling to those three individuals -- I'll call them

17   shares but they are really interest in Eufora.

18   A    I have no personal knowledge of that.

19   Q    So you don't know if Mr. Constantine was selling his

20   own personal shares or somebody else's shares; is that

21   right?

22   A    I have no personal knowledge.

23   Q    Do you know a person by the name of Daniel Kennedy?

24   A    I don't.

25   Q    How long were you actually involved in the

Wayne - Cross/LaRusso

4044

1   investigation of this case?

2   A    Since June -- around June of 2013.

3   Q    Would it be fair to say from that time to the present

4   you've been working with Agent Galioto, is that right?

5   A    That's correct.

6   Q    Is it also fair to say that as part of the

7   investigative team you would share information?

8   A    That's correct.

9   Q    And during the course of your participation in the

10  investigation, did you learn that Daniel Kennedy --

11  withdrawn.

12           Have you ever heard the name Daniel Kennedy?

13  A    Have I heard the name?  I've heard the name before.

14  Q    In association with Eufora; is that correct?

15  A    Recently I think I saw a document.

16  Q    That he owns interest an interest in Eufora as well.

17  A    I would have to review the document.

18  Q    In your investigation, either from your own personal

19  participation or from learning it from Agent Galioto and

20  others, you learned that Mr. Kennedy had given an interest

21  in Eufora to Mr. Constantine around the time that these

22  shares were sold to the hockey players?

23  A    I have no knowledge.

24  Q    Do you have any knowledge that Mr. Constantine was

25  selling his own personal shares or interest in Eufora to

4045

1   these hockey players at this time?

2   A    I have no personal knowledge of that.

3            MR. LARUSSO:  I'll try to keep the charts in

4   order because they'll go all over the place, so bear with

5   me on that.

6   Q    May I talk to you, if I could, for a few minutes

7   about chart number -- the numbers are small, I apologize,

8   Chart no. 5.  I may have to reduce that a little bit.

9            Six weeks, I've finally figured it out.  Okay.

10           This is the chart you referenced in your

11  testimony this morning.  Just a couple of questions in

12  regards to this.

13           There is 1.5 million going on July 19, 2005, to

14  a company called, and I'll mispronounce it, Propiedades.

15  Do you see that?

16  A    Yes.

17  Q    I assume you examined the records of that account to

18  be able to ascertain that?

19  A    I examined the Little Isle bank records.

20  Q    Were you ever given the accounts for that entity that

21  received $1.5 million?

22  A    No.

23  Q    Did you ever seek to acquire those accounts?

24  A    No.

25  Q    Do you know who owned the company or the principal?

Wayne - Cross/LaRusso

4046

1    A    I don't.

2    Q    Ever hear a man by the name of Kenneth Jowdy?

3    A    Yes.

4    Q    Have you spoken with Mr. Jowdy?

5    A    I have spoken with Mr. Jowdy.

6    Q    In person on the phone?

7    A    In person.

8    Q    Did you ask Mr. Jowdy to produce all the records of

9    these entities that received money from Mr. Kenner and/or

10   the Hawaiian entities?

11   A    I did not.

12   Q    Do you know of somebody in the investigative team

13   that did?

14   A    I don't know.

15   Q    The Baja Development Corporation --

16   A    Yes.

17   Q    Do you know who the principal of the Baja Development

18   Corporation is?

19   A    I don't.

20   Q    They did receive 726,000 -- I'm sorry.  They received

21   $95,000 on July 26th of 2005; is that correct?

22   A    That's correct.

23   Q    And we know on many occasions when you were tracing

24   the moneys, you subpoenaed the parties that received it

25   and got documents to determine its purpose; is that

Wayne - Cross/LaRusso

4047

1   correct?

2   A    That's correct.

3   Q    Did you ascertain who the principal of Baja

4   Development was during your investigation?

5   A    I did not.

6   Q    Did you or and/or any of the agents try to determine

7   who the principal was at Baja Development and why they

8   were getting $95,000 on July 26th of 2005?

9   A    I can speak for myself.  I did not.

10  Q    So there's a possibility someone else in your

11  investigative mean might have done it or the prosecutive

12  team may have done?

13  A    I can only speak for myself and I can say I did not.

14  Q    Going over to the moneys that are coming from Ula

15  Makika to Mr. Constantine on July 25th of '05 and

16  July 22nd of '05, I'm directing your attention to that

17  portion.

18  A    Yes.

19  Q    Do you know if any other moneys were sent out of

20  Constantine Management Group, let's say to Mr. Kenner,

21  around that period of time?

22  A    I would have to look at the bank statements.

23       MR. LARUSSO:  Your Honor, I believe there is a

24  stipulation with regards to C 252, that this is a portion

25  of the Constantine Management Group bank records for July

Wayne - Cross/LaRusso

4048

1   of 2005.

2           I'm sure Mr. Wayne can recognize it as well.

3   Q    Do you see that highlighted portion?

4   A    Yes.

5           THE COURT:  Any objections, Mr. Haley?

6           MR. HALEY:  No, sir.

7           THE COURT:  C 252 is admitted.

8           (Whereupon, Defendant's Exhibit C 252 was

9   received in evidence.)

10  Q    What is the date, amount, and recipient?

11  A    July 27, 290,000, and it's Ula Makika.

12  Q    And we know from this trial Ula Makika was one of the

13  entities that Mr. Kenner was a principal of; is that

14  correct?

15  A    Yes.

16  Q    As a matter of fact utilizing this chart, this is

17  money going five days after the transfer to

18  Mr. Constantine's account at GMC [sic] back to Ula Makika?

19  A    CMG.  Yes.

20  Q    And that doesn't appear on your chart, does it?

21  A    No.

22  Q    Would it be fair to say Defendant's Exhibit exhibit

23  for identification Chart 5 C reflects that $290,000 back

24  to Kenner and Ula Makika?

25  A    It does say 290 from CMG to Ula Makika.

Wayne - Cross/LaRusso

4049

1      MR. LARUSSO:  I would ask that this chart be

2   received.

3      THE COURT:  What is that?

4      MR. LARUSSO:  Chart 5 C.

5      MS. KOMATIREDDY:  No objection, your Honor.

6      THE COURT:  Mr. Haley, any objection?

7      MR. HALEY:  No, sir.

8      THE COURT:  5 C is admitted.

9      (Whereupon, Defendant's Exhibit 5 C was received

10   in evidence.)

11      MR. LARUSSO:  Judge, let me just show the jury

12   what we did.  I should have done that first.  I apologize.

13   Q    This diagram just shows the entries on the chart with

14   respect to the monies we just talked about; is that right?

15   A    Yes.

16   Q    Chart 7, if I may.  This is, I believe, another one

17   of the charts that we discussed.

18   A    Right.

19   Q    Actually that is that 100,000 withdrawal we talked

20   about a few minutes ago, right?

21   A    Right.

22   Q    This is the chart referencing moneys coming out of

23   the Lehman loan on August 14, 2006, actually part of the

24   monies are coming out of the Lehman loan; is that correct?

25   A    Yes.

Wayne - Cross/LaRusso

4050

1    Q    And it reflects that 669,000, on August 15th and

2    August 26th of '06, are directed from CMG to the two

3    entities, one being permanent loans to Mr. Kenner and the

4    other being 1st American Title for purchase of Tracey

5    Kenner's house?

6    Q    Not to take too long a time because I believe we've

7    already gone through some of this already, but would you

8    agree with me that in evidence is C 250, these are pages

9    from Mr. Constantine's management account.  You've seen

10   them before, have you not?

11   A    Yes.

12   Q    And not to go through all of them, but on

13   September 20, 2005, there is a $500,000 -- I'm sorry,

14   $550,000 going out of Constantine Management Group; is

15   that correct?

16   A    Yes.

17   Q    And who is receiving that?

18   A    GDM.

19   Q    You know who GDM is, correct?

20   A    Yes.

21   Q    Who is that?

22   A    That is Phil Kenner controlled account, he cross

23   that.

24   Q    And on the same day there is a $75,000 amount of

25   money being wired to the same entity?

Wayne - Cross/LaRusso

4051

1    A    That's correct.

2    Q    And then lastly, I'll not go through anymore, but

3    just on May 15, '07, which I believe is towards the end,

4    there is likewise a $192,000 going to whom?

5    A    Phil Kenner?

6    Q    And $60,000 on the same day.  Who is getting that?

7    A    Guide-dog.

8    Q    I'll show you for identification purposes what is

9    marked Defendant's Exhibit Chart 7 C, does this reflect

10   those four transactions that we just discussed?

11   A    Yes.

12          MR. LARUSSO:  I'd ask Defendant's Exhibit Chart

13   7 C be received at this time.

14          THE COURT:  Is there any objection?

15          MR. HALEY:  No, sir.

16          MS. KOMATIREDDY:  No objection, your Honor.

17          THE COURT:  7 C is admitted.

18          (Whereupon, Defendant's Exhibit 7 C was received

19   in evidence.)

20          MR. LARUSSO:  And just briefly, Judge, I'll not

21   read it, I'll just publish it for the jury.

22   Q    I believe, you may have mentioned this or you may

23   not, this is one of the charts done by the forensic

24   accountant?

25          THE WITNESS:  If you could just focus it.

4052

1    A    Yes.

2    Q    And this relates to moneys that are coming out of the

3    Eufora operation account; is that right?

4             THE WITNESS:  I need for you to focus it a

5    little better.

6             MR. LARUSSO:  May I approach.  This is 45 B.  I

7    want to make sure we're identifying it properly.

8    Q    This is an analysis done by the forensic accountant

9    of Eufora's operating account; is that right?

10   A    Yes.

11   Q    For what time period?

12   A    December 1, 2009 to December 31, 2009.

13   Q    And I know, I will direct your attention to one of

14   the entries in the red square.

15   A    Right.

16   Q    There is a name here.  Can you make that name out

17   here on December 14, 2009?

18   A    Josephine Lemon.

19   Q    And is that a disbursement or is that an addition to

20   the account?

21   A    Disbursement.

22   Q    Do you know who that individual is?

23   A    I do not.

24   Q    Did you conduct an investigation of the employees of

25   Eufora while you were participating with Mr. Galioto?

Wayne - Cross/LaRusso

4053

1   A   Current?

2   Q   Current and past employees?

3   A   I spoke to some.

4   Q   Do you remember speaking to this individual that you

5   just mentioned?

6   A   No.

7   Q   Let me just turn the page and ask you about the entry

8   December 15, 2009, and can you make that out.

9           I'm having trouble who that party is, the one

10  right up here?

11  A   Monjus Solutions, LLC.

12  Q   And this is also a disbursement?

13  A   Yes.

14  Q   You recognize that company name?

15  A   No.

16  Q   Do you recognize the name of Aaron Porter?

17  A   No.

18  Q   Do you know who the IT person was for Eufora, 2008

19  through 2010?

20  A   No.

21  Q   Do you know if the IT person for Eufora was ever

22  charactered by either you or any other agent the of FBI,

23  if you know?

24  A   I'm familiar with one person from Eufora.

25  Q   Who is that?

Wayne - Cross/LaRusso

4054

```
1    A    Jeff Dorchester.

2    Q    And when was he the IT person for Eufora as far as

3    you know?

4    A    I believe early on.

5    Q    These deposits -- sorry, these transactions take

6    place around December of 2009; is that right?

7    A    Yes.

8    Q    Let me just jump to Chart 14.

9              Do you have that in front of you?

10   A    Yes.

11   Q    This chart reflects -- I'll do this for the record --

12   there are two dates mentioned, January 23rd of 2009 and

13   January 26th of 2009, $1,000.  And that's coming from

14   Mr. Kenner's account to CMG; is that correct?

15   A    Yes.

16   Q    Those are two $500 transactions; is that correct?

17   A    Yes.

18   Q    On the two dates that I just mentioned?

19   A    Right.

20   Q    Do you have any evidence or knowledge to show that

21   Mr. Constantine knew where these two $500 payments had

22   come from?

23   A    I don't have any personal knowledge of that, but he

24   is the CMG -- he's on the CMG account.

25   Q    On that account Mr. Constantine received two $500
```

Wayne - Cross/LaRusso

4055

1   transactions from Mr. Kenner.

2           Do you have any other evidence other than that

3   documentary evidence that Mr. Constantine knew that Murray

4   had deposited 100,000 on 12/29/2008, it went to Eufora,

5   then it went to Gaarn, then to Kenner, and then it goes to

6   Mr. Constantine.

7           Do you have any documentary evidence to show

8   where Mr. Constantine knew where the money was originating

9   from?

10  A    I have no personal knowledge of that.

11  Q    I'd like you to just look at 16, if I could, with

12  you.  Again, we're in that category of Eufora via Gaarn.

13          Do you have that in front of you?

14  A    Yes.

15  Q    This is the $500,000 -- I'm sorry, $5,000 that was

16  sent from Mr. Gaarn's account to Mr. Constantine on

17  February 25th of 2009 -- I'm sorry -- I think I misspoke.

18          The money going to Constantine expense, that

19  didn't go to Constantine Management Group, did it?

20  A    No.

21  Q    That money went from the Gaarn account to a man by

22  the name of Mr. Baker; is that correct?

23  A    That's correct.

24  Q    Do you know who authorized that transaction from

25  Mr. Gaarn's account to pay Mr. Baker?

4056

1    A    No.

2    Q    Do you have any knowledge, firsthand knowledge or

3    documentary evidence that my client knew where the money

4    was coming from that was received by Mr. Baker as

5    reflected in this chart?

6    A    No.

7    Q    You are aware of the fact that Mr. Kenner was paying

8    not only expenses and obligations of hockey players, did

9    you also know he was paying expenses for other individuals

10   other than the hockey players?

11   A    I have no personal knowledge.

12   Q    I'll take you to chart 15, if I could.

13        MR. LARUSSO:  I'm afraid these documents may

14   fall.  Just bear with me for a second.

15   Q    In regards to chart 15, directing your attention to

16   the $15,000 that went to Gilmartin Magence and Ross.  Do

17   you have any documentary evidence or knowledge that my

18   client knew where the money was coming from?

19   A    I have no personal knowledge of that.

20   Q    Do you have any personal knowledge or evidence that

21   my client knew that payment was being made at all?

22   A    No.

23   Q    By the way, in regards to Gilmartin, Magence and

24   Ross, they were a lender, were they not, on a loan that

25   Mr. Constantine had signed for; is that correct?

Wayne - Cross/LaRusso

4057

1    A    He was the borrower.

2    Q    The borrower, correct.

3         Do you know who was making the payments on that

4    loan?

5    A    Who was making the payments on that loan?

6    Q    Yes.

7    A    I can review the records and figure it out.

8    Q    Do you know as you sit here today that it was

9    Mr. Kenner that was making the payments on that loan after

10   it had been obtained?

11   A    I would have to review the bank records.

12   Q    Let me show you -- bear with me one moment -- and

13   that would be Kenner's records, would that be correct?

14   A    Actually thinking about it I believe there were

15   payments made from the Global Settlement Fund, the Ron

16   Richards account to Gilmartin, Magence, and I can look

17   through those records if you would like.

18   Q    That's in 2009.

19        Do you know that the loan was in 2008; is that

20   correct?

21   A    Excuse me?

22   Q    The loan was actually taken out in 2008.

23   A    I would have to review the loan records to be

24   certain, but --

25   Q    You did at one point, did you not?

Wayne - Cross/LaRusso

4058

1    A    Yes.

2    Q    And there were payments made between the time the

3    loan was taken out and the time of the Global Settlement

4    Fund; is that correct?

5         Do you recall that?

6    A    I can review the records, if you would like.

7         MR. LARUSSO:  Please, I don't want to take too

8    much time.  If you can do it quickly, otherwise I can move

9    on.

10        THE WITNESS:  Sorry, what was your question?

11   Q    We are trying to determine before the Global

12   Settlement Fund who was making the payments on that loan.

13   A    There was a payment.  I have the accounting from

14   Gilmartin.  There was a payment of $15,000.  I'm not sure

15   where it came from on December 12, 2008.  After that it

16   would have been around the time of the Global Settlement

17   Fund.

18   Q    Let me show you a document, and I don't know if

19   you'll be able to identify it, it's only a single page,

20   it's marked for identification as 236.

21        Do you see that?

22   A    Yes.

23   Q    Do you recognize that?  Just the single page.

24   A    I would have to see who the account holder is on

25   this.

Wayne - Cross/LaRusso

4059

1   Q    Do you know where we can quickly find the full

2   document to make that determination of who made that

3   payment back in December of 2008?

4   A    Not quickly.

5   Q    Okay.

6        MR. LARUSSO:  Your Honor, I don't know if you

7   want to take an afternoon recess.  We can find the

8   document and resume.

9        THE COURT:  How much longer do you have?

10       MR. LARUSSO:  I have at least another half hour,

11  Judge.

12       THE COURT:  We'll take an afternoon break.

13       Don't discuss the case.

14       (Jury exits.)

15       MR. HALEY:  Your Honor, I have a witness who has

16  been here since 11:00 a.m.

17       THE COURT:  I understand that.

18       MR. HALEY:  Your Honor, that's not a complaint.

19       THE COURT:  I was told these were two brief

20  witnesses this morning, as you were told that, so will

21  they be available tomorrow?

22       MR. HALEY:  I believe he is, but I'd rather have

23  him stay.  I don't see us getting to him before the

24  conclusion today.

25       THE COURT:  How long a witness is he?

Wayne - Cross/LaRusso

4060

1    MR. HALEY:  He's not a long witness.

2    15 minutes.

3    MR. LARUSSO:  Judge, can we do it today.

4    MR. HALEY:  I'll keep him.  I just wanted to

5    know.

6    MR. LARUSSO:  I have no problem breaking up

7    cross and put him on.  Mr. Wayne has to stay here.  He is

8    kind of a captive audience.

9    THE COURT:  Does the Government have any

10   objection to taking this one witness?

11   MR. MISKIEWICZ:  No objection.

12   MR. HALEY:  May I check with the witness first.

13   It may be six of one or a half-dozen of another if he has

14   to come back to court.

15   THE COURT:  It's only 3:30 right now but by the

16   time we take the break --

17   MR. MISKIEWICZ:  Your Honor -- sorry.

18   (Whereupon, a recess was taken.)

19   MR. LARUSSO:  Your Honor, I've spoken with

20   Mr. Haley and Mr. Miskiewicz.  The witness will come back

21   tomorrow.  I want to try and get done before the end of

22   the day.  I promise I'll try as quickly as I can.

23   I don't have the same energy level I had this

24   morning to be quite honest with you but I'll do the best I

25   can.

Wayne - Cross/LaRusso

4061

1    (Whereupon, the jury at this time enters the

2  courtroom.)

3        MR. LARUSSO:  May I, your Honor?

4        THE COURT:  Yes.

5  Q    Agent Wayne, I believe we were talking about the

6  December 12, 2008 payment.  We were looking to determine

7  the account where that came from.

8        Were you able to do that during the break?

9  A    Yes, from Phil Kenner's Wells Fargo account.

10        MR. LARUSSO:  Thank you for looking that up.  I

11  appreciate it.

12  Q    Let me show you Chart 10 which is the 100,000 payment

13  from Mr. Peca on April 7th of '08, CMG.

14        Were you aware that there was an earlier payment

15  from Mr. Kenner of 100,000 to the Constantine Management

16  account at that time?

17  A    Yes.

18  Q    And this is for identification as C 241, I believe --

19        MS. KOMATIREDDY:  No objection, your Honor.

20        MR. HALEY:  No objection, your Honor.

21        THE COURT:  C 241 is admitted.

22        (Whereupon, Defendant's Exhibit C 241 was

23  received in evidence.)

24  Q    Do you see that payment on there on April 2, 2008,

25  for 100,000?

Wayne - Cross/LaRusso

4062

1   A    Yes.

2   Q    That was five days before Mr. Peca had actually made

3   his deposit that was placed in the Constantine Management

4   account; is that correct?

5   A    Yes.

6   Q    And again, I should have stayed up there, but does

7   this chart, Defendant's Exhibit 10 C reflect that 100,000

8   transaction into Mr. Constantine's management account?

9   A    It shows the 100,000 from Phil Kenner.

10        MR. LARUSSO:  May this be received as

11   Defendant's Exhibit Chart 10 C.

12        MS. KOMATIREDDY:  No objection.

13        THE COURT:  Any objection?

14        MR. HALEY:  No objection.

15        THE COURT:  10 C is admitted.

16        (Whereupon, Defendant's Exhibit 10 C was

17   received in evidence.)

18   Q    Now, I will show you what has been received in

19   evidence as Government's Exhibit 767.  You've seen that

20   before, haven't you?

21   A    Yes.

22   Q    During your investigation you've had an opportunity

23   to review this?

24   A    I had an opportunity, yes.

25   Q    Do you know if this particular document was provided

Wayne - Cross/LaRusso

4063

1  by any of the hockey players to you and/or any other law

2  enforcement agents?

3  A    I don't know.  I didn't take receipt of this

4  document.

5  Q    Directing your attention to the third page, do you

6  see the highlighted entries on the left column, the last

7  two, December 7, 2009 and December 7 of 2009, Maureen

8  Privitello for 150 and another for 50?

9  Q    Those are the wire transfers that Mr. Nicholas

10  Privitello had sent to the Ron Richards trust account; is

11  that correct?

12  A    Yes.

13  Q    And this particular document was provided to law

14  enforcement sometime during the course of the

15  investigation, is that right?

16  A    I'm not the one who took possession of it, so I don't

17  know.

18  Q    Who did?

19  A    I don't know.

20  Q    Did you see it and discuss it with Agent Galioto?

21  A    I may have.

22  Q    Well, do you see the entry immediately after Maureen

23  Privitello, two entries on December 7, 2009, AZ Falcon

24  Partners.  Do you see that for $155,000?

25  A    Yes.

Wayne - Cross/LaRusso

4064

1    Q    And you know as you are testifying here today, that

2    didn't happen, did it, from your analysis of the bank

3    records?

4    A    I would have to look the bank records.

5    Q    Let me ask you this:  When you reviewed this record,

6    when you examined it, did you take from this that

7    Mr. Privitello's money, 155,000 of it, was sent to AZ

8    Falcon Partners?

9    A    I didn't review this document when I created this

10   spreadsheet.

11   Q    You are aware, are you not, that an indictment was

12   returned on October 29, 2013?

13           MS. KOMATIREDDY:  Objection, your Honor.  You've

14   already ruled on that.

15           THE COURT:  I've already ruled on this and it

16   has nothing to do with the chart that he has created.

17   I'll give you as much time to go through the exhibits but

18   this has nothing do with the charts that he created.

19   We'll not do that.

20           You can ask him questions about the charts he

21   created and what he did or did not put into them, but

22   these are other things that has nothing to do with his

23   charts.  We'll not do that.

24           MR. LARUSSO:  Will the Court give me an

25   opportunity at the end of the day to give me reasons why?

Wayne - Cross/LaRusso

4065

1    That's all I ask.

2            THE COURT:  Yes, but if he didn't do anything

3    with respect to this exhibit, you are pointing to him that

4    you just want to show him, so we can talk about it, but

5    that's all that is going on as far as I can see.

6            MR. LARUSSO:  May I make a brief sidebar offer

7    of proof?

8            (Whereupon, at this time the following took

9    place at the sidebar.)

10           (Continued.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Wayne - Cross/LaRusso

4066

1          MR. LARUSSO:  This is the indictment.  This is a

2     document used during the investigation.

3          THE COURT:  This is the prior indictment, right?

4          MR. LARUSSO:  This is incorrect.

5          THE COURT:  It's a prior indictment.  We've

6     already talked about how I don't think from the

7     allegations in the indictment that is not before the jury,

8     having relevance or admissibility.  You are trying to

9     contradict something not in evidence and not before the

10    jury and has nothing to do with the charts he testified to

11    on direct.  So we need to finish this witness.  I'm being

12    patient, but now you are going into all different areas

13    and has nothing do with the charts he created.  If you

14    want to call him on the defense case again.  You have to

15    contradict the allegations of the prior indictment but

16    I'll limit you now to the scope of his direct because you

17    are going well beyond that.  You can convince me to recall

18    him, that's fine, but only cover things that relates to

19    the charts which is the only purpose the Government can

20    call him for.

21         MR. LARUSSO:  Very good.

22         (End of sidebar conference.)

23         (Continued.)

24

25

Wayne - Cross/LaRusso

4067

1           (Open court.)

2    Q    By the way, did you review the personal accounts of

3    Mr. Constantine as part of your analysis in preparing the

4    charts?

5    A    As part of the charts, no.

6    Q    Well, do you remember -- withdraw that.

7    Q    Let me show you what has been marked for

8    identification as C 249.  Have you ever seen these

9    documents before?

10   A    I may have.

11   Q    Do you recognize what they are?

12   A    Do I recognize what they are?  They are checks from

13   Tommy Constantine.

14   Q    Do you know what account they came from?

15   A    Tommy Constantine's account, according to the check.

16   Q    Well, take a look at the first one, I believe we're

17   talking about May of 2006 through and including what time

18   period?

19           Take a look at the last check.

20   A    I think it is March of 2006.

21           MS. KOMATUREDDY:  We'll stipulate to the fact

22   that they are bank records.

23           THE COURT:  Any objection, Mr. Haley?

24           MR. HALEY:  No, sir.

25           THE COURT:  C 249 is admitted.

4068

1        (Whereupon, Defendant's Exhibit C 249 was

2   received in evidence.)

3        MR. LARUSSO:  Thank you.

4   Q    Look at those and tell us, briefly, do those checks

5   reflect moneys that were written on Mr. Constantine's

6   account to Eufora?

7   A    Yes.

8   Q    And would it surprise you -- withdrawn.

9        During the time that you examined those accounts

10  of Mr. Constantine's, did you learn that over $1 million

11  of money from his personal account went into Eufora?

12  A    I would have to review all the bank records.

13  Q    Well, based upon the analysis you did, do you have

14  any dispute that there was a substantial amount of money

15  that was actually written out of Mr. Constantine's account

16  to Eufora during the time period that those checks were

17  written?

18  A    I would have to review it.

19  Q    Okay.

20       I'll not ask you to add them up.  We'll not

21  waste time on that.

22       Do you know in your analysis of any of

23  Mr. Constantine's bank account records how much money was

24  deposited from racing sponsors during the period '06 to

25  '08?

Wayne - Cross/LaRusso

4069

1   A    I would have to review the bank records.

2   Q    You do remember looking at the bank records and

3   seeing that, correct?

4   A    I would have to review the bank records.

5        MR. LARUSSO:  Bear with me for one moment.

6   Q    Let me show you what has been marked for

7   identification as C 247 -- unless there is no objection.

8        MS. KOMATIREDDY:  No objection, your Honor.

9        THE COURT:  Any objection, Mr. Haley?

10       MR. HALEY:  No, sir.

11       THE COURT:  247 is admitted.

12       (Whereupon, Defendant's Exhibit C 247 was

13  received in evidence.)

14  Q    Showing you what has been received as 247, I direct

15  your attention to the first highlighted entry.  Would you

16  tell us what that says?

17  A    $500,000, Vonage Marketing.

18  Q    Do you know that Vonage was one of the racing

19  sponsors for Mr. Constantine?

20  A    I don't know.

21  Q    And that entry was made and the wire received on

22  January 9th of 2006; is that correct?

23  A    I didn't see the year, but --

24       MR. LARUSSO:  Well, it's in evidence.  Let me

25  put it up here.

Wayne - Cross/LaRusso

4070

1          THE WITNESS:  Yes.

2          MR. LARUSSO:  Okay.

3          (Continued.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Wayne  -  Cross/LaRusso

4071

1   BY MR. LARUSSO:

2   Q.   Now I'm going to show you a number of checks that

3   were written on this account.

4           What I should do is show you the actual

5   statement where it talks about a check for $35,000, check

6   1139; do you see that?

7   A.   Yes.

8   Q.   As to the statement, there's a check 1139 to Eufora

9   for 39,000; is that correct?

10  A.   Yes.

11  Q.   There's a check for $4,000, 1141, do you see that?

12  A.   Yes.

13  Q.   And again it's a Eufora check?

14  A.   Right.

15  Q.   1141 for 4,000.

16          There's a check down here, 1144, 1/23, for

17  5,000?

18  A.   Right.

19  Q.   And again a check 1144 for 5,000 to Eufora?

20  A.   Right.

21  Q.   And lastly there's a check, 1147, for 5,000 again to

22  Eufora from Mr. Constantine's personal account; is that

23  correct?

24  A.   Yes.

25  Q.   I'm just going to show you one more statement.  I'm

Wayne  -  Cross/LaRusso

4072

1    not going to show you anymore.

2                  But the statement on the following month,

3    February 2006 --

4                  MS. KOMATIREDDY:  No objection to its admission,

5    your Honor.

6                  THE COURT:  What exhibit number is it?

7                  MR. LARUSSO:  C 248, your Honor.

8                  THE COURT:  Any objection, Mr. Haley?

9                  MR. LARUSSO:  For the record --

10                 MR. HALEY:  No objection, Judge.

11                 THE COURT:  C 248 is admitted.

12                 (Defense Exhibit C 248 in evidence.)

13   BY MR. LARUSSO:

14   Q.   This is Mr. Constantine's account with Bank of

15   America for the period February '06 through February 4th,

16   '06, to March 9, '06, correct?

17   A.   Yes.

18   Q.   It has a number of checks?

19   A.   Yep.

20   Q.   Could you just briefly describe the checks that are

21   attached to the statement by giving us the date, the

22   amount and to whom the checks were made out to?

23   A.   January 1, 2006, Eufora, 50,000; February 15, 2006,

24   Eufora, 5,000; March 6, 2006, Eufora, 5,000; March 6,

25   2006, Eufora, 5,000.

Wayne  -  Cross/LaRusso

4073

1          The last two are the same check.

2     Q.   Mr. Wayne, let me ask you this.

3          Without going through all of those, do you

4     recall, in your analysis of Mr. Constantine's statements,

5     additional checks which were part of the original package

6     that I showed you being written by Mr. Constantine to

7     Eufora?

8     A.   I would have to review the bank statements.

9     Q.   Yes.  I'm sorry.

10         You heard testimony about Mr. Constantine's

11    helicopter, do you recall that?

12    A.   Yes.

13    Q.   You as an IRS agent have access to individuals' tax

14    returns?

15              MS. KOMATIREDDY:  Objection, scope.

16              THE COURT:  Sustained.  It doesn't relate to the

17    charts.  It has to be related to his charts.  It's beyond

18    the scope of his direct examination.

19    BY MR. LARUSSO:

20    Q.   Earlier today I believe you testified, Mr. Haley

21    asked you about a $17,000 payment that was made by

22    Constantine Management Group to Mr. Kenner on April 28 of

23    '04; do you recall that?

24    A.   April 28 of '08.

25    Q.   That's correct.

Wayne  -  Cross/LaRusso

4074

1        I believe you were shown exhibit 62 B.  Do you

2    have that up there in front of you?

3    A.    No.

4    Q.    If you need it, we will produce it.

5        Do you recall Mr. Haley asking you if you

6    considered, as part of your investigation and analysis, a

7    $25,000 deposit which was previously made by Mr. Kenner

8    into Constantine Management Group account; do you remember

9    that?

10   A.    Yes.

11   Q.    In sum and substance, you answered you did not

12   consider that information and it's not included in the

13   chart, correct?

14   A.    I don't know if I said I didn't consider it.  I

15   probably looked at it, saw that Tyson Nash put money in on

16   April 24, 2008, and soon thereafter the money was sent to

17   Phil Kenner.

18   Q.    But you didn't include it in the chart?

19   A.    I did not.

20   Q.    Mr. Wayne, as part of your investigation and

21   analysis, did you look at other related bank statements

22   for any relevant transactions?

23   A.    I looked at a lot of bank statements.

24   Q.    For example, did you look in Mr. Kenner's Wells Fargo

25   bank account for the relevant time period for any

Wayne  -  Cross/LaRusso

4075

1   transactions that may be related?

2   A.   I may have.

3   Q.   You don't recall as you're testifying here today?

4   A.   I don't.

5   Q.   Agent Wayne, would you take a look at that.

6        Do you see the highlighted transaction?

7   A.   Yes.

8   Q.   Could you read that for us, please?

9   A.   82nd Street Hangar.

10  Q.   Can you talk a look at page 4 of 7 and tell me what

11  you see happening on April 21st, 2008, that may be

12  related?

13  A.   The account statement says withdrawal $17,000.

14       THE COURT:  Hold on a second.  Are you

15  introducing this exhibit?

16       MS. KOMATIREDDY:  It's in evidence, Judge.

17       THE COURT:  I didn't get the number.

18  BY MR. LARUSSO:

19  Q.   Agent Wayne, would you give us the number?

20  A.   C 255.

21       THE COURT:  Okay.

22       MS. KOMATIREDDY:  We don't object.  It's in

23  evidence as a Government's Exhibit.

24       THE COURT:  Any objection?

25       MR. HALEY:  No.

Wayne   -   Cross/LaRusso

4076

1        THE COURT:  255 is admitted.

2        (Defense Exhibit 255 in evidence.)

3   BY MR. LARUSSO:

4   Q.   Could you read that entry on April?

5   A.   April 21st, 2008, 82nd Street Hangar, $17,000

6   withdrawal.

7   Q.   Is that part of the Avalon project that you know of?

8   A.   I don't.

9   Q.   Do you know the address 82nd Street?

10  A.   No.

11  Q.   In your investigation did you come to learn that's

12  where the Avalon hangars were?

13  A.   No.

14  Q.   Well, as you sit here today looking at these

15  documents, do you believe that the $17,000 payment to 82nd

16  Street by Mr. Kenner a week before Constantine Management

17  Group sends the 17,000 to Mr. Kenner, may have been

18  relevant in your investigation and analysis?

19  A.   As I stated before, I looked at Tyson Nash's money

20  coming in and the money going out.

21  Q.   And you did not consider that account I just showed

22  you?

23  A.   It's not included in my chart.

24        MR. LARUSSO:  One moment, your Honor.

25        (Pause in proceedings.)

Wayne   -   Cross/LaRusso

4077

1    BY MR. LARUSSO:

2    Q.    You also testified earlier today about a $55,000

3    payment that was made to the Bar Association of Arizona I

4    believe; is that correct?

5    A.    Yes.

6    Q.    I believe you referred to it as the Silver law; do

7    you remember that?

8    A.    Yes.

9    Q.    Are you aware that the Silver law was also the tax

10   attorneys for Eufora?

11   A.    I'm not aware of that.

12   Q.    In your investigation did you interview anybody at

13   the Bar Association of America a/k/a Silver law to

14   determine the nature of this particular transaction?

15   A.    I did not.

16   Q.    In regards to the Jowdy settlement that we heard a

17   number of witnesses testify, did you learn, during your

18   investigation, that this firm actually handled all the

19   contract work for the proposed Jowdy settlement?

20   A.    I did not.

21   Q.    Again, during your investigation particularly on the

22   Hawaiian projects, did you or the other agents involved

23   learn that they handled various aspects of the Hawaii

24   transactions?

25   A.    I don't know that.

4078

1    Q.    During this trial we had a number of

2    Mr. Constantine's lawyers appear here to testify about the

3    various purposes of his engagements with them; do you

4    remember their testimony?

5    A.    Sorry, repeat that?

6    Q.    There were a number of Mr. Constantine's lawyers that

7    appeared here to testify about various purposes of his

8    engagement with them; do you recall that?

9    A.    Yes.

10   Q.    Besides the single sentence expert that was in that

11   deposition transcript that was shown to you on your direct

12   examination, wherein Mr. Constantine is saying that the

13   Silver law was his tax attorney, do you have any evidence

14   to support that the $55,000 transaction was in reference

15   to his personal tax matter with the firm or not?

16   A.    I have no personal knowledge.

17          I would want to review the deposition.

18   Q.    As you're testifying here today, you can't say yes or

19   no; is that correct?

20   A.    I can't say yes or no.  I would have to review page

21   16 to see the previous questions.

22          MR. LARUSSO:  Thank you, your Honor.

23          THE COURT:  Redirect?

24          MS. KOMATIREDDY:  None, your Honor.

25          THE COURT:  Okay.  You can step down.  Thank

4079

1   you.

2           (The witness steps down.)

3           MS. KOMATIREDDY:  At this time, your Honor, the

4   government rests.

5           THE COURT:  Members of the jury, the government

6   has rested its case.

7           As I said yesterday, what that means is the

8   government has completed its presentation of the evidence.

9           Under the law, the burden of proof to prove the

10  case, all elements of the crimes beyond a reasonable doubt

11  is always on the government.  It never shifts to the

12  defendant at any point.  That burden rests with the

13  government at all times.

14          Therefore, a defendant in a criminal case has no

15  obligation to present any evidence or call any witnesses

16  or present any evidence.

17          However, they have a right to do so if they wish

18  and Mr. LaRusso and Mr. Haley both indicated to me they do

19  intend to present evidence to you and they decided that

20  Mr. Haley is going to go first.

21          So he will begin his presentation of the

22  evidence tomorrow morning.

23          Tomorrow morning we're going to start at 10:30

24  instead of 9:30 tomorrow morning.  We will start at 10:30.

25          Don't read or listen to anything regarding the

4080

1   case, don't discuss the case, and have a good night.

2          (The jury is excused.)

3          THE COURT:  Do the defense lawyers want to make

4   a motion?

5          MR. HALEY:  Your Honor, if I may, I believe

6   under the rules I would have the opportunity to reserve

7   until the completion of the defense case and I would like

8   to do so here, sir.

9          MR. LARUSSO:  We talked about that and I would

10  join in that.

11         THE COURT:  Under the rule you can do it at the

12  end of the close of the evidence as a whole, so okay.

13         MR. HALEY:  Thank you, sir.

14         THE COURT:  So your first witness is tomorrow

15  morning.

16         MR. HALEY:  In listening to the Court, we're

17  starting at 10:30?

18         THE COURT:  Can you get a hold of him?

19         MR. HALEY:  I can.  I'll be ready to go.

20         THE COURT:  Okay.  Mr. Kenner is next?

21         MR. HALEY:  Yes, sir.

22         THE COURT:  How long do you anticipate his

23  direct examination at least?

24         MR. HALEY:  I would envision, Judge, we would

25  complete his direct certainly by the end of tomorrow.  I

4081

1   don't envision I will spillover on the direct into a

2   second day. It's conceivable we could complete him

3   tomorrow.

4           THE COURT: I'll leave that alone.

5           MR. HALEY: Judge, I didn't use highly probable.

6   I used the word conceivable.

7           THE COURT: Where do we stand with respect to

8   Mr. Jowdy?

9           Have you made a decision whether you're calling

10  him or not?

11          MR. LARUSSO: Your Honor, as I indicated, the

12  likelihood is that we're not, but depending upon some of

13  the evidence that we're able to elicit, we may not call

14  him, but we may have to.

15          I would like to be able to do that, Judge, and

16  tell you definitively but I'm not in a position right now.

17          I would like to advise the Court that Mr. Conway

18  and I have been trying to -- he more than I -- contact

19  witnesses. We reduced our list from 13 to maybe 10 to

20  make sure we're able to finish our case by next week.

21          We're having a little bit of a problem because

22  Father's Day is Sunday and a lot of our witnesses are

23  flying in on Monday to testify on Tuesday. We've got

24  Tuesday, Wednesday and Thursday clearly covered if we have

25  to.

4082

1       The problem is Thursday.  I have a witness.  He

2  could fly in from Phoenix, Arizona, but if we spillover

3  into Thursday, I have a feeling he's going to be a long

4  witness both on direct and cross, and if we have to call

5  him back and I'm trying to figure out how to avoid

6  inconveniencing him.

7       THE COURT:  So right now you have him flying in

8  when?

9       MR. LARUSSO:  Wednesday night to be available

10  Thursday.  If he goes on Thursday morning and we go the

11  whole day, we will complete him.  He's Mr. D'Ambrosio.  He

12  was at Eufora from the beginning up until maybe about a

13  year ago.

14       THE COURT:  What are you worried about?

15       MR. LARUSSO:  I'm trying not to inconvenience

16  him by coming in on Thursday and having to go home and

17  then coming back for Monday.

18       THE COURT:  Hopefully he will be the last

19  witness.  If he's not, you can break up whoever you have

20  and take him out of turn.  If you're confident if he gets

21  on the stand first thing Thursday morning, wherever you

22  are in your case next Wednesday, we will interrupt so he

23  can get on the stand and get out of the here.

24       MR. LARUSSO:  I'll have to talk to Mr. Conway,

25  Judge, because the other witnesses are set for next week.

4083

1    He was the first witness up.  I'm trying to avoid bringing

2    him back on Monday.

3              THE COURT:  When you say he's the first witness

4    up --

5              MR. LARUSSO:  For example, if we go through

6    Thursday with Mr. Kenner and I put Mr. D'Ambrosio on in

7    the afternoon, we're not going to finish him, he will have

8    to fly home and then return for Monday.

9              THE COURT:  You're talking about two days from

10   now?

11             MR. LARUSSO:  Yes.

12             THE COURT:  I thought you said next week.

13             MR. LARUSSO:  I'm talking about Thursday when

14   Mr. Haley has finished his case.  I'm trying to figure out

15   what to do on Thursday with this witness.

16             THE COURT:  I understand what you're saying.

17   You don't have other witnesses you can put on beforehand?

18             MR. LARUSSO:  We tried.  Mr. Gonchar is coming

19   in on Tuesday.

20             THE COURT:  How long do you think your cross of

21   Mr. Kenner will be?

22             MR. MISKIEWICZ:  A few hours.

23             MR. LARUSSO:  And I'll have a few hours.

24             THE COURT:  That's fine.  So plan on first thing

25   Monday morning.

4084

1          MR. LARUSSO:  I appreciate it.

2          Thank you, Judge.

3          THE COURT:  Any issues with respect to

4    Mr. Kenner, either things that Mr. Haley is intending on

5    offering or things that you want to do on cross that you

6    think we should discuss?  I want to avoid sidebars if

7    possible.

8          MR. MISKIEWICZ:  Thank you.

9          Yes, there is one issue I anticipate will come

10   up.  It has to do with the Home Depot tape.  I don't know

11   if counsel is going to offer it through Mr. Kenner.  If he

12   doesn't, it's our intent to have him listen to the tape I

13   think to lay the foundation for its authenticity as well

14   as identification of voices and go through where it came

15   from, how it was made, etcetera.

16         I anticipate, it seems to me, that at least the

17   foundation part of that should be done outside the

18   presence of the jury in the event that counsel for

19   Mr. Constantine may have objections.

20         Also, I don't believe that this now runs afoul

21   of Bruton once Mr. Kenner is on the stand and he's

22   confronted by co-counsel, but obviously I want to raise

23   this with the Court to indicate that is our intent to move

24   in that tape through Mr. Kenner's cross-examination and

25   I'll leave it at that.

4085

1          MR. HALEY:  Mr. Miskiewicz and I have had

2     preliminary discussions on that very issue.

3          It is not my intention to introduce that tape

4     through the direct examination of Mr. Kenner.

5          I, however, recognize that indeed the

6     government, during cross-examination of my client, would

7     have the opportunity at that point in time to question

8     Mr. Kenner regarding the tape, authenticity, things of

9     that nature for purposes of laying a foundation with the

10    goal that the government might then seek to introduce it.

11         My memory of the tape though, Judge, having

12    heard it twice and it may be the copy we received, there

13    may be an audibility issue.  Maybe I'm incorrect on that.

14    Mr. Miskiewicz is shaking his head no, so maybe it was my

15    copy I had.  And there's a transcript I know that went

16    with the tape.  There were parts of the transcript.

17         MR. MISKIEWICZ:  We never prepared a transcript.

18         MR. HALEY:  I don't know what case I'm trying,

19    Judge.

20         THE COURT:  Let me hear from Mr. LaRusso.

21         I know I thought you said to me at one point you

22    were going to hire an expert to examine the tape.

23         MR. LARUSSO:  We were, Judge, but we were under

24    the impression Mr. Haley wasn't going to use it.  I know

25    Mr. Miskiewicz said he wasn't using it on his direct case.

4086

1   Now that he's looking to do that, my client wrote me about

2   we need to verify it's authenticity.

3          THE COURT:  Why would you wait until now?

4   Unless the government said they're not introducing it, why

5   would you wait until now.

6          If my memory is correct, you asked me for a week

7   adjournment of the trial because you wanted to do that.

8   Isn't that one of the reasons you asked for a one week

9   adjournment of the trial?

10          MR. LARUSSO:  You have a better memory than I,

11   Judge.  I'm not going to dispute you.

12          THE COURT:  I thought you listed that as one of

13   the things that you wanted to do.  I assumed that six or

14   seven weeks later that that would be done, not waiting to

15   actually see what was going to happen.

16          Obviously, do you have an expert that you have

17   available to you to look at the tape?

18          MR. LARUSSO:  I contacted a former FBI agent and

19   have somebody available.  I'll see if I can do it

20   post-haste.

21          Judge, as my client has indicated, when I asked

22   for the recess I think it was more to do with the

23   handwriting.

24          THE COURT:  I may be confusing experts.

25          MR. LARUSSO:  I wasn't sure of that.  I think it

4087

1  was the handwriting expert which, by the way, we decided

2  not to do that for other that I don't want to discuss on

3  the record.

4       THE COURT:  I know you mentioned -- the only

5  reason I asked you about the authenticity is that you

6  raised the issue about the tape whether it was the basis

7  for the adjournment.  You better contact that expert

8  quickly and see if you can review the tape.

9       MR. LARUSSO:  I'm thinking, Judge -- I'll do it

10  right away.

11       MR. HALEY:  Your Honor, on that issue, if indeed

12  the government is going to offer the tape, is it that it's

13  going to be offered without a transcript to aid the jury?

14       THE COURT:  Are you preparing a transcript?

15       MR. MISKIEWICZ:  It's very audible.  We're going

16  to play it.  It's 26 minutes long.  We would play the

17  entire tape so there's no issue about completeness.  I

18  never prepared a transcript and we're not offering one.  I

19  don't think it's necessary.

20       MR. HALEY:  My memory goes back to some

21  conversation where I thought there was an audibility

22  issue.  I want to make sure we don't run into that issue.

23       Secondarily, your Honor, if the government is

24  going to be utilizing tape recorded conversations of my

25  client during the course of cross-examination, the Court

4088

1  may recall there were hours of surreptitiously recorded

2  conversations and I would request if that's the case, are

3  there transcripts that are going with those?

4          THE COURT:  Are you going to cross Mr. Kenner on

5  other tapes that come in?

6          MR. MISKIEWICZ:  There may be a few portions of

7  a recording made by Kristen Peca we will que up and play

8  for counsel and it would be seconds worth of a recording,

9  nothing more than that.

10          MR. HALEY:  If it's that truncated, I don't

11  think we need a transcript for that.

12          MR. MISKIEWICZ:  I would ask counsel, I think we

13  can work this out, but what I would suggest is perhaps

14  after Court today I can give Mr. Haley a DVD version of

15  the recording.  Short of that, we will play it right off

16  of the iPhone but maybe we can just have it identified and

17  move through the identification of the DVD when we get to

18  that point of the cross-examination just to move things

19  along.

20          MR. HALEY:  You're talking about the DVD of the

21  Home Depot recording?

22          MR. MISKIEWICZ:  Yes.

23          MR. HALEY:  The representation being it's

24  recorded off my client's iPhone and I have no opposition.

25  I'm not going to look for the production of the original

4089

1   iPhone for purposes of any objection I might have,

2   although I don't want to speak for Mr. Constantine.

3          THE COURT:  Let's try to start promptly at 10:30

4   tomorrow.

5          Thank you.

6          (Proceedings in this matter are recessed until

7   Wednesday, June 17, 2015, at 10:30 a.m.)

4090

1                          WITNESSES

2

3      CHRISTOPHER PETRELLESE                    3908

4      DIRECT EXAMINATION                        3908

5      BY MS. KOMATIREDDY

6      VOIR DIRE EXAMINATION                     3918

7      BY MR. HALEY

8      VOIR DIRE EXAMINATION                     3936

9      BY MR. HALEY:

10     VOIR DIRE EXAMINATION                     3940

11     BY MR. HALEY

12     CROSS-EXAMINATION                         3950

13     BY MR. HALEY

14     CROSS-EXAMINATION                         3958

15     BY MR. LaRUSSO:

16     ROBERT CRISALLI                           3969

17     DIRECT EXAMINATION                        3969

18     BY MS. KOMATIREDDY

19     CROSS-EXAMINATION                         3972

20     BY MR. HALEY

21     CROSS-EXAMINATION                         3976

22     BY MR. LaRUSSO

23     JOSHUA WAYNE                              3985

24     DIRECT EXAMINATION                        3985

25     BY MS. KOMATIREDDY

```
                                                      4091
1    DIRECT EXAMINATION                          3985

2    BY MS. KOMATIREDDY

3    CROSS-EXAMINATION                           4020

4    BY MR. HALEY

5    CROSS-EXAMINATION                           4040

6    BY MR. LARUSSO

7

8                      EXHIBITS

9    Government Exhibits 4114 C, 2021, 3321 R,   3906

10   946, 6529, 504 T, 8001 C through 8005 C in

11   evidence

12   Government Exhibit 47 in evidence           3907

13   Government Exhibits 5001-5019, 5103 L-5106 L 3908

14   and 709 L in evidence

15   Government Exhibits 1-10 and 14-16 in        3911

16   evidence

17   Government Exhibit 63 A in evidence          3913

18   Government Exhibits 64 A through 70 A in      3920

19   evidence

20   Government Exhibits 71 through 79 in evidence 3922

21   Government Exhibit 21 in evidence            3925

22   Government Exhibits 41, 41 A and 41 B in      3932

23   evidence

24   Government Exhibits 60, 60 B, 61 and 61 B in  3937

25   evidence
```

4092

| | | |
|---|---|---|
| 1 | Government Exhibits 44 B through 49 B, 46 | 3941 |
| 2 | through 49, 62 and 62 B in evidence | |
| 3 | Government Exhibits 43 and 43 A in evidence | 3950 |
| 4 | Defense Exhibit 250 in evidence. | 3958 |
| 5 | Defense Exhibit 251 in evidence. | 3961 |
| 6 | Government Exhibits 7401 through 7456 in | 3972 |
| 7 | evidence. | |
| 8 | Government Exhibits Chart 1 through Chart 20 | 3987 |
| 9 | and 80 in evidence. | |
| 10 | Government Exhibits Binder 1 through Binder | 3988 |
| 11 | 11 in evidence. | |
| 12 | Government Exhibit 944 in evidence. | 4010 |
| 13 | | |
| 14 | | |
| 15 | Defendant's Exhibit C 254 was received in | 4042 |
| 16 | evidence | |
| 17 | Defendant's Exhibit C 252 was received in | 4048 |
| 18 | evidence | |
| 19 | Defendant's Exhibit 5 C was received in | 4049 |
| 20 | evidence | |
| 21 | Defendant's Exhibit 7 C was received in | 4051 |
| 22 | evidence | |
| 23 | Defendant's Exhibit C 241 was received in | 4061 |
| 24 | evidence | |
| 25 | Defendant's Exhibit 10 C was received in | 4062 |

4093

1    evidence

2    Defendant's Exhibit C 249 was received in        4068

3    evidence

4    Defendant's Exhibit C 247 was received in        4069

5    evidence

6    Defense Exhibit C 248 in evidence               4072

7    Defense Exhibit 255 in evidence                 4076

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**$**

**$1,000** [2] - 4008:14, 4054:13
**$1,000,900** [1] - 3934:23
**$1,400** [2] - 3993:8, 3993:9
**$1,546,000** [1] - 3967:18
**$1,547,000** [1] - 3967:22
**$1,900,000** [1] - 3953:13
**$1.25** [1] - 3923:14
**$100,000** [25] - 3942:10, 3942:13, 3946:12, 4001:13, 4001:20, 4002:3, 4005:7, 4008:9, 4008:11, 4010:19, 4012:2, 4012:3, 4013:8, 4013:10, 4013:16, 4014:2, 4014:3, 4022:18, 4023:23, 4024:16, 4025:22, 4026:15, 4026:17, 4042:4
**$120,000** [3] - 3962:11, 3962:15, 3995:11
**$121,000** [2] - 3961:18, 3963:3
**$121,129.40** [1] - 3962:6
**$125,000** [1] - 3923:12
**$130,000** [1] - 4001:13
**$15,000** [4] - 4008:15, 4014:13, 4056:16, 4058:14
**$150,000** [4] - 3918:13, 3919:13, 3965:12, 4014:22
**$155,000** [2] - 4014:22, 4063:24
**$164,860.72** [1] - 4024:4
**$17,000** [9] - 4007:3, 4021:12, 4024:7, 4024:15, 4024:24, 4073:21, 4075:13, 4076:5, 4076:15
**$192,000** [3] - 3960:4, 3960:7, 4051:4
**$200,000** [6] - 3994:18, 4004:14, 4004:16, 4007:22, 4007:25, 4014:12
**$216.57** [1] - 3946:15
**$247,500** [2] - 3931:2, 3934:10
**$25,000** [7] - 3995:12, 3995:18, 4023:17, 4023:19, 4025:1, 4025:2, 4074:7
**$250,000** [2] - 3930:7, 4000:25
**$251,646.00** [1] - 3912:9
**$26,000** [1] - 4001:14
**$265,000** [3] - 3988:23, 3990:7, 3990:17
**$28,000** [1] - 4007:18
**$290,000** [3] - 3953:17, 3953:21, 4048:23

**$3,480,000** [1] - 3996:7
**$30** [2] - 3993:10, 3993:11
**$30,000** [4] - 4011:16, 4011:17, 4011:18, 4012:17
**$31,000** [2] - 3993:4, 3993:5
**$31,528** [1] - 3992:1
**$35,000** [1] - 4071:5
**$350,000** [2] - 3924:5, 3924:6
**$375,000** [1] - 4004:2
**$380,000** [1] - 4004:10
**$395** [1] - 4003:13
**$395,000** [6] - 3924:17, 3925:9, 3927:14, 4003:12, 4003:14, 4003:17
**$4,000** [1] - 4071:11
**$40,000** [6] - 4007:7, 4007:8, 4012:13, 4012:14
**$47,000** [4] - 3968:3, 3968:4, 3968:6, 3968:7
**$5,000** [1] - 4055:15
**$50,000** [2] - 4007:16, 4014:12
**$500** [3] - 4054:16, 4054:21, 4054:25
**$500,000** [3] - 4050:13, 4055:15, 4069:17
**$55,000** [3] - 4016:2, 4077:2, 4078:14
**$55,630.67** [1] - 3933:6
**$550,000** [2] - 3959:24, 4050:14
**$60,000** [6] - 3960:14, 3960:17, 4025:8, 4025:13, 4025:20, 4051:6
**$65,000** [1] - 4025:5
**$650,000** [1] - 3997:8
**$669,000** [1] - 3967:16
**$7,888.89** [1] - 3924:10
**$75,000** [2] - 3959:9, 4050:24
**$80,000** [2] - 3995:2, 3995:3
**$81,127** [6] - 3947:11, 3951:9, 3951:15, 3951:25, 3952:11, 4008:12
**$85,000** [2] - 4014:4, 4017:6
**$8500** [1] - 4008:1
**$86,000** [2] - 3994:20, 3994:21
**$877** [1] - 3994:12
**$877,000** [1] - 3967:9
**$897,000** [1] - 3963:18
**$9,000** [1] - 4013:3
**$90,000** [2] - 4013:2, 4013:12
**$95,000** [3] - 4013:17, 4046:21, 4047:8

**$950,000** [1] - 3996:19
**$997,000** [1] - 3963:23

**'**

**'04** [1] - 4073:23
**'05** [2] - 4047:15, 4047:16
**'06** [4] - 3962:10, 4050:2, 4068:24, 4072:15
**'07** [3] - 3968:2, 4051:3
**'08** [3] - 4061:13, 4068:25, 4073:24
**'09** [1] - 4013:7
**'98** [2] - 3909:6, 3951:3
**'99** [2] - 3909:7, 3909:10
**'O4** [2] - 3916:20, 3917:8
**'O5** [1] - 3916:13
**'O6** [4] - 3926:15, 3926:16, 4072:16
**'O9** [1] - 3943:24

**0**

**002918483678** [1] - 3939:19

**1**

**1** [40] - 3897:23, 3910:9, 3911:5, 3911:9, 3911:16, 3954:3, 3954:4, 3954:8, 3964:2, 3968:9, 3970:13, 3970:14, 3971:7, 3972:22, 3973:21, 3974:7, 3986:8, 3986:13, 3987:3, 3987:4, 3987:8, 3987:10, 3987:15, 3987:16, 3987:19, 3987:21, 3988:1, 3988:3, 3988:8, 3988:9, 3988:15, 3988:20, 3989:10, 3994:5, 4004:10, 4052:12, 4068:10, 4072:23, 4092:8, 4092:10
**1,000** [3] - 3967:21, 3975:5, 3975:6
**1-10** [2] - 3911:18, 4091:15
**1.5** [4] - 3968:7, 3996:18, 4045:13, 4045:21
**1/23** [1] - 4071:16
**10** [17] - 3910:9, 3911:5, 3911:10, 3911:16, 4004:24, 4015:20, 4015:21, 4026:5, 4042:17, 4042:23, 4061:12, 4062:7, 4062:11, 4062:15, 4062:16, 4081:19, 4092:25
**10/19/2006** [1] - 3924:23
**100** [2] - 3894:15, 3895:20

**100,000** [19] - 3943:18, 3943:22, 3943:24, 3943:25, 3944:3, 3965:25, 4021:9, 4040:12, 4042:23, 4049:19, 4055:4, 4061:12, 4061:15, 4061:25, 4062:7, 4062:9
**100K** [1] - 4005:25
**101** [1] - 3992:3
**1010208659666** [1] - 3939:24
**1010221709786** [1] - 3939:25
**104** [1] - 4021:24
**107,686.60** [1] - 4024:12
**10705** [2] - 3907:6, 4009:4
**10:30** [5] - 4079:23, 4079:24, 4080:17, 4089:3, 4089:7
**11** [16] - 3987:20, 3987:21, 3988:1, 3988:4, 3988:8, 3988:9, 4005:8, 4006:24, 4020:22, 4021:1, 4023:21, 4024:1, 4026:2, 4032:21, 4043:2, 4092:11
**11/30/2006** [1] - 3964:2
**1102** [1] - 4016:13
**1139** [2] - 4071:6, 4071:8
**1141** [2] - 4071:11, 4071:15
**1144** [2] - 4071:16, 4071:19
**1147** [1] - 4071:21
**11501** [1] - 3895:3
**11572** [1] - 3895:7
**11722** [2] - 3894:15, 3895:21
**11749** [1] - 3894:22
**11:00** [1] - 4059:16
**11:30** [1] - 3930:15
**11th** [2] - 3901:12, 3901:13
**12** [5] - 3947:12, 4007:13, 4043:5, 4058:15, 4061:6
**12/10** [1] - 3949:7
**12/15** [1] - 3949:8
**12/29/2008** [1] - 4055:4
**12/31/2008** [1] - 3917:8
**12/31/2009** [1] - 3939:9
**120** [2] - 3963:14, 3966:16
**120,000** [1] - 3966:17
**121** [4] - 3962:14, 3963:2, 3963:14, 3966:15
**121,000-plus** [2] - 3962:9, 3962:20
**125** [1] - 3923:14
**1251497473** [1] - 3939:16
**13** [9] - 3907:4, 3907:11, 3907:15, 3939:20, 3985:22, 4007:19, 4042:17, 4043:10, 4081:19
**1318647** [1] - 3901:24
**133,000** [1] - 3948:18

2

**14** [9] - 3910:9, 3911:5, 3911:10, 3911:16, 3926:15, 4008:6, 4049:23, 4052:17, 4054:8
**14-16** [2] - 3911:18, 4091:15
**1411012916** [1] - 3913:8
**1411014858** [1] - 3916:20
**1411025821** [1] - 3916:16
**1411026189** [1] - 3916:12
**14113249** [1] - 3916:24
**15** [12] - 3916:24, 3957:7, 3960:17, 3964:8, 3964:16, 4010:16, 4051:3, 4053:8, 4056:12, 4056:15, 4060:2, 4072:23
**150** [1] - 4063:8
**155,000** [2] - 3948:21, 4064:7
**15th** [3] - 3960:3, 3960:13, 4050:1
**16** [9] - 3894:9, 3910:9, 3911:6, 3911:10, 3911:17, 3926:16, 4011:23, 4055:11, 4078:21
**1601** [1] - 3894:21
**164,000** [1] - 4024:6
**169,000** [1] - 3965:8
**17** [2] - 4012:24, 4089:7
**17,000** [2] - 4025:23, 4076:17
**1753** [1] - 4040:10
**17K** [1] - 4006:11
**18** [3] - 3999:8, 4000:2, 4013:13
**181** [1] - 3901:14
**19** [4] - 3924:16, 3969:16, 4013:24, 4045:13
**192** [1] - 3963:20
**192,000** [1] - 3967:5
**1st** [11] - 3928:2, 3928:11, 3935:17, 3938:15, 3938:23, 3939:5, 3939:9, 3939:13, 3962:10, 3962:24, 4050:4

2

**2** [9] - 3897:23, 3911:22, 3937:25, 3964:17, 3974:7, 3994:15, 3994:16, 4000:22, 4061:24
**20** [14] - 3927:2, 3927:12, 3930:24, 3960:1, 3986:8, 3986:13, 3987:4, 3987:9, 3987:11, 3987:15, 3987:16, 4014:9, 4050:13, 4092:8
**200,000** [1] - 4043:10

**20005** [1] - 3995:10
**2001** [3] - 3921:1, 3922:19, 3922:21
**2003** [2] - 3912:7, 3916:24
**2004** [5] - 3917:5, 3928:2, 3928:11, 3934:19, 3934:20
**2005** [18] - 3916:17, 3919:2, 3934:19, 3934:20, 3958:10, 3960:1, 3988:24, 3994:18, 3995:9, 3997:11, 3998:20, 3999:8, 4000:2, 4045:13, 4046:21, 4047:8, 4048:1, 4050:13
**2006** [28] - 3916:17, 3916:25, 3917:5, 3917:10, 3917:11, 3924:16, 3926:6, 3928:11, 3935:17, 3935:18, 3937:23, 3961:16, 3964:2, 3964:8, 3964:16, 3965:25, 3967:15, 4003:8, 4004:10, 4049:23, 4067:17, 4067:20, 4069:22, 4072:3, 4072:23, 4072:24, 4072:25
**2007** [7] - 3926:16, 3927:18, 3958:10, 3960:3, 3960:13, 3960:17, 3995:18
**2008** [29] - 3916:21, 3938:15, 3938:23, 3939:13, 3939:16, 3942:7, 3942:24, 3943:8, 3943:9, 4007:5, 4007:15, 4007:17, 4007:21, 4008:3, 4008:8, 4042:24, 4043:6, 4053:18, 4057:19, 4057:22, 4058:15, 4059:3, 4061:6, 4061:24, 4074:16, 4075:11, 4076:5
**2009** [37] - 3912:7, 3916:13, 3939:5, 3939:9, 3939:13, 3939:17, 3939:20, 3943:17, 3943:21, 3946:13, 3948:3, 3949:23, 3954:18, 3954:21, 3987:3, 4008:3, 4010:18, 4011:25, 4012:1, 4013:1, 4013:15, 4014:1, 4014:11, 4052:12, 4052:17, 4053:8, 4054:6, 4054:12, 4054:13, 4055:17, 4057:18, 4063:7, 4063:23
**2010** [2] - 3987:3, 4053:19
**2011** [4] - 3901:13, 3901:19, 3901:21, 3917:11
**2013** [3] - 3901:15, 3907:4, 3907:11, 3907:15, 3990:23, 3993:1, 3993:3, 4044:2, 4064:12
**2014** [4] - 3901:24,

3901:25, 4010:3, 4010:6
**2015** [2] - 3894:9, 4089:7
**2017** [1] - 3990:2
**2020** [1] - 3989:24
**2021** [3] - 3906:2, 3906:14, 4091:9
**203A** [2] - 4005:23, 4007:11
**2053A** [1] - 3990:11
**20th** [1] - 3959:9
**21** [8] - 3924:14, 3925:3, 3925:11, 3925:15, 3925:16, 3925:23, 3925:24, 4091:21
**2100017561** [1] - 3939:4
**2134** [1] - 3989:20
**2135** [1] - 3989:17
**217** [1] - 3915:22
**21st** [2] - 4075:11, 4076:5
**22** [4] - 3925:20, 3927:1, 3965:25, 3997:10
**22nd** [2] - 3939:20, 3965:7, 4047:16
**236** [1] - 4058:20
**23rd** [1] - 4054:12
**24** [3] - 3916:20, 3988:24, 4074:16
**241** [4] - 4061:18, 4061:21, 4061:22, 4092:23
**247** [5] - 4069:7, 4069:11, 4069:12, 4069:14, 4093:4
**247,500** [1] - 3933:25
**248** [4] - 4072:7, 4072:11, 4072:12, 4093:6
**249** [4] - 4067:8, 4067:25, 4068:1, 4093:2
**250** [7] - 3958:22, 3958:25, 3961:1, 3961:2, 3961:4, 4050:8, 4092:4
**250,000** [1] - 3964:18
**251** [4] - 3961:6, 3961:10, 3961:11, 4092:5
**251,646** [1] - 3954:16
**252** [4] - 4047:24, 4048:7, 4048:8, 4092:17
**254** [4] - 4041:19, 4041:25, 4042:1, 4092:15
**255** [4] - 4075:20, 4076:1, 4076:2, 4093:7
**25K** [2] - 4006:1, 4006:3
**25th** [2] - 4047:15, 4055:17
**26** [2] - 3895:7, 4087:16
**267** [1] - 3902:14
**26th** [4] - 4046:21, 4047:8, 4050:2, 4054:13
**27** [1] - 4048:11
**27th** [1] - 3968:2
**28** [6] - 3901:25, 3916:13, 3995:18, 4007:5, 4073:22, 4073:24

**29** [2] - 3943:9, 4064:12
**290** [1] - 4048:25
**290,000** [1] - 4048:11
**2916** [2] - 3923:21, 3927:8
**2:15** [1] - 4018:17

3

**3** [4] - 3898:1, 3974:7, 3995:6, 4002:22
**3/31/2006** [1] - 3928:2
**30** [6] - 3916:17, 3917:5, 3935:18, 3939:16, 3954:18, 3954:21
**300** [1] - 3895:3
**300,000** [1] - 3947:10
**302** [6] - 4030:10, 4031:8, 4031:11, 4031:16, 4039:4, 4039:24
**302's** [3] - 4031:18, 4031:24, 4031:25
**305** [1] - 4017:12
**30th** [1] - 3916:21
**31** [3] - 3987:3, 3993:4, 4052:12
**31st** [10] - 3901:21, 3916:13, 3916:25, 3917:11, 3928:11, 3938:15, 3938:23, 3939:5, 3939:13, 3939:17
**3202** [1] - 3992:20
**32O2** [1] - 3993:22
**33** [3] - 3959:9, 3959:13, 3960:2
**3321** [3] - 3906:2, 3906:14, 4091:9
**3703** [1] - 3997:24
**3824** [1] - 4002:19
**39,000** [1] - 4071:9
**3906** [1] - 4091:9
**3907** [1] - 4091:12
**3908** [3] - 4090:3, 4090:4, 4091:13
**3911** [1] - 4091:15
**3913** [1] - 4091:17
**3918** [1] - 4090:6
**3920** [1] - 4091:18
**3922** [1] - 4091:20
**3925** [1] - 4091:21
**3932** [1] - 4091:22
**3936** [1] - 4090:8
**3937** [1] - 4091:24
**3940** [1] - 4090:10
**3941** [1] - 4092:1
**3950** [2] - 4090:12, 4092:3
**3958** [2] - 4090:14, 4092:4
**3961** [1] - 4092:5
**3969** [2] - 4090:16, 4090:17
**3972** [2] - 4090:19, 4092:6

3

**3976** [1] - 4090:21
**3985** [1] - 4090:23, 4090:24, 4091:1
**3987** [1] - 4092:8
**3988** [1] - 4092:10
**3:30** [1] - 4060:15

## 4

**4** [5] - 3917:5, 3917:7, 3996:1, 3996:5, 4075:10
**4,000** [2] - 4025:5, 4071:15
**4,003** [2] - 3991:10, 3991:25
**4/12** [1] - 3924:4
**4/17** [1] - 4022:22
**4/17/2008** [2] - 4023:17, 4025:2
**4/24/2008** [2] - 4021:8, 4022:18
**4/28** [5] - 4023:23, 4024:7, 4024:16, 4024:24, 4025:22
**4/28/09** [1] - 4021:12
**4/28/2008** [1] - 4025:24
**4/4/2005** [1] - 3923:10
**4/7/2008** [1] - 4026:15
**40** [3] - 3927:2, 3927:12, 3930:24
**400** [1] - 3975:15
**400,000** [2] - 3919:6, 3919:8
**4003** [1] - 3991:4
**4010** [1] - 4092:12
**4014** [1] - 3906:1
**4020** [1] - 4091:3
**4040** [1] - 4091:5
**4042** [1] - 4092:15
**4048** [1] - 4092:17
**4049** [1] - 4092:19
**4051** [1] - 4092:21
**4061** [1] - 4092:23
**4062** [1] - 4092:25
**4068** [1] - 4093:2
**4069** [1] - 4093:4
**4072** [1] - 4093:6
**4076** [1] - 4093:7
**40K** [2] - 4006:4
**41** [28] - 3927:20, 3927:24, 3928:7, 3928:9, 3928:13, 3928:15, 3928:21, 3928:25, 3929:1, 3929:6, 3931:1, 3932:2, 3932:3, 3932:6, 3934:12, 3934:15, 3953:5, 3953:13, 4091:22
**4114** [2] - 3906:14, 4091:9
**43** [15] - 3947:10, 3949:12, 3949:13, 3949:17, 3949:19, 3949:25, 3950:10, 3950:11, 4092:3

**44** [10] - 3938:25, 3939:2, 3940:14, 3941:15, 3947:20, 3947:23, 3947:24, 3948:13, 4092:1
**4408** [1] - 3998:11
**447** [1] - 3901:13
**449** [1] - 3902:14
**45** [8] - 3939:6, 3947:20, 3947:22, 3947:25, 3948:1, 3948:5, 3948:24, 4052:6
**46** [9] - 3939:10, 3940:3, 3940:15, 3940:22, 3940:24, 3941:15, 3942:19, 3942:22, 4092:1
**47** [11] - 3906:17, 3906:18, 3906:24, 3907:1, 3907:2, 3939:14, 3951:14, 3953:1, 3953:2, 3953:5, 4091:12
**48** [1] - 3939:18
**49** [14] - 3938:25, 3939:21, 3940:3, 3940:15, 3941:15, 3941:16, 3944:22, 3945:16, 3945:25, 3946:21, 3951:14, 4092:1, 4092:2
**4th** [1] - 4072:15

## 5

**5** [10] - 3916:17, 3919:2, 3968:9, 3996:13, 4045:8, 4048:23, 4049:4, 4049:8, 4049:9, 4092:19
**5,000** [5] - 4071:17, 4071:19, 4071:21, 4072:24, 4072:25
**5/26** [1] - 3924:9
**50** [1] - 4063:8
**50,000** [4] - 3948:9, 3948:14, 4043:6, 4072:23
**5001** [1] - 3907:8
**5001-5019** [2] - 3908:1, 4091:13
**5019** [1] - 3907:8
**504** [3] - 3906:4, 3906:15, 4091:10
**5103** [3] - 3907:12, 3908:1, 4091:13
**5106** [1] - 3907:12
**5106L** [1] - 4018:6
**5169384** [1] - 3901:20
**518** [1] - 3901:14
**550** [1] - 3967:5
**550,000** [1] - 3967:5

## 6

**6** [5] - 3946:13, 3998:24, 3999:18, 4072:24

**6.9** [2] - 4000:18
**60** [10] - 3934:24, 3934:25, 3935:2, 3935:4, 3936:1, 3937:9, 4091:24
**60,000** [1] - 3967:5
**6030820074** [1] - 3939:12
**609** [1] - 4030:10
**61** [16] - 3934:25, 3935:13, 3935:14, 3935:19, 3936:2, 3936:12, 3937:9, 3937:12, 3937:14, 4091:24
**61B** [3] - 3958:1, 3963:24, 3963:25
**62** [16] - 3938:10, 3938:13, 3938:16, 3938:17, 3940:15, 3941:16, 3941:24, 4023:6, 4024:23, 4026:2, 4074:1, 4092:2
**63** [6] - 3913:1, 3913:2, 3913:14, 3913:18, 3913:19, 4091:17
**631** [1] - 3895:21
**64** [6] - 3916:7, 3916:11, 3917:21, 3920:9, 3920:10, 4091:18
**65** [3] - 3916:14, 3916:15, 3918:3
**6529** [3] - 3906:3, 3906:15, 4091:10
**66** [2] - 3916:18, 3916:19
**669,000** [2] - 3966:8, 4050:1
**67** [2] - 3916:22, 3916:23
**68** [1] - 3917:1
**69** [2] - 3917:6, 3967:17
**6th** [1] - 3943:23

## 7

**7** [14] - 3942:7, 3994:18, 3995:10, 4000:12, 4049:16, 4051:9, 4051:13, 4051:17, 4051:18, 4063:7, 4063:23, 4075:10, 4092:21
**7/12/07** [1] - 3927:6
**7/31/07** [1] - 3962:7
**70** [7] - 3913:1, 3916:7, 3917:9, 3917:22, 3920:9, 3920:10, 4091:18
**709** [3] - 3907:13, 3908:2, 4091:14
**71** [6] - 3920:19, 3921:22, 3922:11, 3922:15, 3922:16, 4091:20
**712-6101** [1] - 3895:21
**72** [6] - 3903:20, 3922:18, 3922:20, 3922:23, 3923:10, 3924:2
**726,000** [1] - 4046:20

**7401** [7] - 3970:16, 3971:5, 3971:9, 3971:25, 3972:1, 3972:9, 4092:6
**7444** [1] - 3972:5
**7456** [7] - 3970:17, 3971:5, 3971:10, 3971:25, 3972:1, 3972:9, 4092:6
**75,000** [3] - 3927:7, 3933:1, 3967:5
**767** [1] - 4062:19
**778,000** [1] - 3966:23
**79** [4] - 3920:19, 3921:22, 3922:12, 3922:15, 3922:16, 4091:20
**7th** [2] - 4042:24, 4061:13

## 8

**8** [5] - 3990:23, 3992:25, 3993:3, 4003:6, 4007:17
**8/16/2006** [1] - 4002:1
**8/23/2005** [1] - 3918:12
**80** [10] - 3986:9, 3986:19, 3986:23, 3987:9, 3987:10, 3987:15, 3987:17, 4006:12, 4014:25, 4092:9
**8001** [3] - 3906:6, 3906:15, 4091:10
**8005** [3] - 3906:6, 3906:15, 4091:10
**801(d)(2)(e** [1] - 3897:21
**8010205246** [1] - 3939:8
**81,127** [2] - 3951:13, 3951:22
**8102558338** [1] - 3910:17
**82nd** [5] - 3933:5, 4075:9, 4076:5, 4076:9, 4076:15
**85259** [1] - 3907:7
**877** [1] - 3967:17
**8O21** [1] - 4016:3
**8th** [1] - 4043:6

## 9

**9** [4] - 3917:11, 3926:16, 4004:5, 4072:16
**900** [1] - 3994:11
**901** [1] - 3901:22
**922** [2] - 4008:23, 4009:1
**925** [1] - 3901:13
**944** [5] - 4009:17, 4010:8, 4010:12, 4010:13, 4092:12
**946** [3] - 3906:2, 3906:14, 4091:10
**98** [1] - 3947:1
**9:30** [2] - 3894:9, 4079:24
**9th** [2] - 3943:23, 4069:22

4

# A

**a.m** [3] - 3894:9, 4059:16, 4089:7
**a/k/a** [1] - 4077:13
**Aaron** [1] - 4053:16
**abbreviated** [1] - 3969:21
**ability** [1] - 3899:14
**able** [22] - 3903:12, 3919:1, 3919:4, 3930:9, 3952:8, 3973:6, 3976:18, 3978:6, 3978:23, 3978:25, 3980:8, 3980:20, 4001:2, 4001:8, 4019:6, 4019:9, 4045:18, 4058:19, 4061:8, 4081:13, 4081:15, 4081:20
**access** [9] - 3941:3, 3974:3, 3974:7, 3974:10, 3984:9, 4026:12, 4038:2, 4038:6, 4073:13
**accessing** [1] - 3973:21
**accommodating** [1] - 3903:19
**according** [1] - 4067:15
**account** [268] - 3899:24, 3910:17, 3911:1, 3912:8, 3913:5, 3913:8, 3913:11, 3914:7, 3914:8, 3914:9, 3914:10, 3914:13, 3914:14, 3914:18, 3914:20, 3914:22, 3915:10, 3915:11, 3916:8, 3916:9, 3916:11, 3916:15, 3916:16, 3916:20, 3916:24, 3917:1, 3917:2, 3917:19, 3918:23, 3920:16, 3921:10, 3922:5, 3922:6, 3923:1, 3923:20, 3924:5, 3924:7, 3924:11, 3925:9, 3926:1, 3927:7, 3927:8, 3928:1, 3928:10, 3928:14, 3928:16, 3928:19, 3932:18, 3933:2, 3933:7, 3933:16, 3933:20, 3933:22, 3934:21, 3935:3, 3935:5, 3935:10, 3935:15, 3935:21, 3935:23, 3936:17, 3937:3, 3937:20, 3937:22, 3938:7, 3938:14, 3938:17, 3939:4, 3939:6, 3939:7, 3939:8, 3939:11, 3939:15, 3939:18, 3939:19, 3939:23, 3939:24, 3939:25, 3941:3, 3941:25, 3942:1, 3942:20, 3942:21, 3942:22, 3942:23, 3943:3, 3943:14, 3944:11, 3944:18, 3944:20, 3944:25, 3945:1,

3945:3, 3945:5, 3945:7, 3945:18, 3945:24, 3946:7, 3946:8, 3946:14, 3946:16, 3946:22, 3946:25, 3947:2, 3947:3, 3947:8, 3947:9, 3947:12, 3947:13, 3947:21, 3948:11, 3948:17, 3948:19, 3948:22, 3948:23, 3949:9, 3949:14, 3949:22, 3951:10, 3951:13, 3951:15, 3951:19, 3951:22, 3951:23, 3951:24, 3952:12, 3953:22, 3954:23, 3955:2, 3955:5, 3955:13, 3955:18, 3955:23, 3957:18, 3959:5, 3959:9, 3959:14, 3960:7, 3961:13, 3961:14, 3962:6, 3962:20, 3964:2, 3964:5, 3966:6, 3968:5, 3977:5, 3986:22, 3986:25, 3988:23, 3988:24, 3989:4, 3990:3, 3990:25, 3992:18, 3992:21, 3992:22, 3993:3, 3993:4, 3993:6, 3993:13, 3994:19, 3995:1, 3995:14, 3995:15, 3995:19, 3995:20, 3995:23, 3995:24, 3996:16, 3997:9, 3999:8, 4000:2, 4000:24, 4001:10, 4002:9, 4003:19, 4003:21, 4004:17, 4005:2, 4005:10, 4006:21, 4006:22, 4006:25, 4007:1, 4007:17, 4008:8, 4008:12, 4008:15, 4011:13, 4011:18, 4011:19, 4011:25, 4012:3, 4012:4, 4012:14, 4012:15, 4012:18, 4013:1, 4013:3, 4013:17, 4013:18, 4014:1, 4014:2, 4014:3, 4014:4, 4014:11, 4014:12, 4015:9, 4016:13, 4017:5, 4022:16, 4024:12, 4025:11, 4025:16, 4026:9, 4026:12, 4026:16, 4037:9, 4041:11, 4043:3, 4045:17, 4048:18, 4050:9, 4050:22, 4052:3, 4052:9, 4052:20, 4054:14, 4054:24, 4054:25, 4055:16, 4055:21, 4055:25, 4057:16, 4058:24, 4061:7, 4061:9, 4061:16, 4062:4, 4062:8, 4063:10, 4067:14, 4067:15, 4068:6, 4068:11, 4068:15, 4068:23, 4071:3, 4071:22, 4072:14, 4074:8, 4074:25, 4075:13, 4076:21

**accountant** [10] - 3909:3, 3909:4, 3909:10, 3909:12, 3950:22, 3950:24, 3951:5, 3951:25, 4051:24, 4052:8
**accounting** [5] - 3919:12, 3945:8, 3951:21, 3953:19, 4058:13
**accounts** [62] - 3910:14, 3910:16, 3910:19, 3910:23, 3911:2, 3911:4, 3911:8, 3912:1, 3912:15, 3912:16, 3912:18, 3912:20, 3917:15, 3917:18, 3920:14, 3920:21, 3921:12, 3921:17, 3922:9, 3926:11, 3927:18, 3927:21, 3927:22, 3939:22, 3940:5, 3940:9, 3941:21, 3944:22, 3944:25, 3945:7, 3945:12, 3947:7, 3947:10, 3947:12, 3947:15, 3952:16, 3954:5, 3955:10, 3955:15, 3989:15, 3996:23, 3997:4, 3998:21, 3999:1, 3999:2, 3999:3, 3999:4, 3999:5, 3999:11, 3999:20, 3999:21, 3999:22, 3999:23, 3999:24, 4000:5, 4012:11, 4032:23, 4036:13, 4045:20, 4045:23, 4067:2, 4068:9
**accuracy** [1] - 4022:12
**accurate** [19] - 3907:9, 3913:10, 3917:14, 3922:7, 3925:7, 3928:15, 3928:21, 3930:13, 3935:9, 3935:22, 3940:7, 3945:6, 3949:21, 3971:5, 3971:6, 3986:24, 3987:5, 4009:25, 4010:4
**acquire** [2] - 4026:25, 4045:23
**acquired** [1] - 4021:16
**Acting** [1] - 3894:14
**actions** [1] - 4000:4
**actual** [10] - 3897:18, 3914:17, 3915:2, 3926:11, 3928:9, 3976:15, 3977:11, 3978:7, 3993:23, 4071:4
**add** [10] - 3897:2, 3959:20, 3963:8, 3966:4, 3966:21, 3967:6, 3967:17, 3967:21, 3981:12, 4068:20
**adding** [1] - 3966:17
**addition** [5] - 3915:23, 3933:6, 3978:6, 4025:5, 4052:19
**additional** [2] - 4004:6, 4073:5
**additions** [5] - 3914:20,

3915:9, 3932:14, 3933:21, 3934:4
**address** [2] - 3984:14, 4076:9
**adjournment** [3] - 4086:7, 4086:9, 4087:7
**admissibility** [1] - 4066:8
**admissible** [4] - 3897:19, 3901:11, 3902:6, 3907:18
**admission** [1] - 4072:4
**admitted** [30] - 3899:4, 3902:11, 3906:12, 3906:24, 3907:25, 3911:17, 3913:18, 3920:9, 3922:15, 3925:15, 3927:1, 3932:2, 3937:7, 3941:14, 3947:18, 3950:10, 3958:23, 3961:10, 3971:25, 3988:8, 4041:25, 4048:7, 4049:8, 4051:17, 4061:21, 4062:15, 4067:25, 4069:11, 4072:11, 4076:1
**adopt** [1] - 4036:17
**advise** [3] - 4032:7, 4032:12, 4081:17
**advised** [1] - 4032:13
**Advisor** [1] - 3912:8
**Advisors** [7] - 3910:17, 3910:25, 3911:1, 3954:15, 3954:22, 3955:3, 4011:17
**Aero** [1] - 4015:13
**Aero-Space** [1] - 4015:13
**afford** [1] - 4006:13
**afoul** [1] - 4084:20
**afraid** [1] - 4056:13
**afternoon** [10] - 3972:19, 3976:4, 3976:5, 4020:17, 4020:18, 4040:7, 4040:8, 4059:7, 4059:12, 4083:7
**afterwards** [2] - 3993:13, 3995:17
**agencies** [1] - 4028:17
**Agent** [25] - 3937:12, 3950:21, 3951:1, 3951:4, 3969:13, 3975:24, 4020:19, 4020:21, 4028:5, 4028:11, 4029:20, 4030:24, 4031:3, 4031:15, 4031:23, 4031:24, 4032:6, 4037:5, 4037:18, 4038:25, 4040:7, 4044:4, 4044:19, 4063:20, 4075:5
**agent** [22] - 3951:5, 3969:18, 3972:19, 3972:21, 3985:20, 3985:21, 3985:24, 3988:12, 4017:22, 4027:20, 4028:14, 4028:15, 4029:3, 4032:5,

5

4032:16, 4032:24, 4039:22, 4053:22, 4061:5, 4073:13, 4075:19, 4086:18
**agents** [9] - 3907:5, 3907:10, 3907:14, 3970:2, 4028:16, 4031:3, 4047:6, 4063:2, 4077:22
**ago** [5] - 3918:8, 3972:25, 4030:23, 4049:20, 4082:13
**agree** [16] - 3896:8, 3919:10, 3967:23, 3975:18, 3975:19, 3981:7, 3982:23, 3984:8, 4022:21, 4023:8, 4023:20, 4032:14, 4037:5, 4041:4, 4042:14, 4050:8
**agreement** [17] - 3952:10, 4000:17, 4002:20, 4003:5, 4033:6, 4033:14, 4034:15, 4034:18, 4034:23, 4035:1, 4035:6, 4035:13, 4036:14, 4036:15, 4036:24, 4037:1, 4037:2
**ahead** [3] - 3908:21, 3960:3, 3989:3
**aid** [1] - 4087:13
**airplane** [1] - 4015:22
**ALL** [1] - 3904:19
**allegations** [2] - 4066:7, 4066:15
**alleged** [1] - 4033:11
**Alliance** [1] - 3939:7
**allow** [2] - 3980:10, 4019:5
**allows** [1] - 3976:23
**almost** [3] - 3947:10, 4021:25, 4031:6
**alone** [1] - 4081:4
**alphabetical** [4] - 3916:3, 3933:12, 3940:8, 3946:21
**alter** [1] - 3900:17
**altered** [5] - 3899:4, 3900:7, 3900:10, 3900:12, 3900:14
**AMERICA** [1] - 3894:3
**America** [15] - 3928:1, 3928:10, 3935:16, 3935:21, 3938:14, 3939:19, 3947:6, 3947:9, 3947:15, 4040:22, 4041:13, 4042:3, 4042:12, 4072:15, 4077:13
**American** [10] - 3964:20, 3964:21, 3965:1, 3991:5, 3991:8, 3991:10, 3992:8, 4000:25, 4014:5, 4050:4
**amount** [32] - 3900:19, 3923:4, 3923:13, 3923:21, 3930:12, 3932:18, 3933:2, 3933:4, 3933:24, 3934:7, 3934:9, 3934:23, 3943:12,

3945:6, 3953:23, 3954:16, 3975:12, 3989:5, 3991:24, 3999:16, 4000:10, 4005:4, 4005:6, 4012:15, 4021:9, 4023:17, 4023:18, 4026:17, 4048:10, 4050:24, 4068:14, 4072:22
**amounts** [7] - 3899:23, 3910:2, 3912:2, 3943:5, 3943:12, 3986:25, 3998:16
**analysis** [32] - 3909:13, 3918:10, 3918:25, 3919:3, 3930:3, 3930:13, 3937:1, 3944:20, 3945:1, 3947:21, 3948:1, 3951:18, 3951:21, 3952:6, 3952:15, 3955:1, 3959:15, 3964:1, 3981:24, 4021:6, 4021:15, 4026:8, 4032:22, 4052:8, 4064:2, 4067:3, 4068:13, 4068:22, 4073:4, 4074:6, 4074:21, 4076:18
**Analysis** [1] - 3969:20
**analyst** [1] - 3909:9
**analyze** [1] - 4021:20
**analyzed** [14] - 3914:10, 3914:12, 3914:13, 3914:24, 3916:12, 3916:16, 3916:20, 3917:7, 3917:10, 3917:15
**and-a-half** [1] - 3985:22
**ANDREW** [1] - 3895:6
**Ann** [1] - 3895:20
**anonymous** [2] - 3902:11, 3902:14
**answer** [4] - 3987:12, 3988:25, 4032:19, 4039:20
**answered** [1] - 4074:11
**answering** [1] - 4032:10
**answers** [1] - 4039:19
**anticipate** [2] - 4080:22, 4084:9, 4084:16
**anticipated** [1] - 3957:4
**apart** [2] - 4036:16, 4036:19
**apologize** [9] - 3923:14, 3930:14, 3953:6, 3967:3, 3967:22, 3982:10, 4041:18, 4045:7, 4049:12
**appear** [4] - 3899:10, 3901:4, 4048:20, 4078:2
**appearance** [1] - 3981:8
**APPEARANCES** [1] - 3894:13
**appearances** [1] - 3896:3
**appeared** [1] - 4078:7
**appearing** [2] - 3980:6, 4027:16
**appreciate** [5] - 3905:17, 3931:11, 3968:14,

4061:11, 4084:1
**approach** [3] - 3957:21, 4022:4, 4052:6
**appropriate** [1] - 3951:4
**Appx** [2] - 3901:13, 3901:14
**April** [20] - 3916:13, 3938:15, 3938:23, 3942:7, 3990:23, 3992:25, 3993:3, 4007:5, 4010:3, 4010:5, 4013:15, 4042:24, 4061:13, 4061:24, 4073:22, 4073:24, 4074:16, 4075:11, 4076:4, 4076:5
**areas** [1] - 4066:12
**Arizona** [12] - 3907:7, 3939:7, 3973:17, 4008:19, 4009:5, 4011:22, 4012:22, 4015:24, 4015:25, 4016:15, 4077:3, 4082:2
**arrangement** [2] - 3955:25
**ascertain** [2] - 4045:18, 4047:3
**aspect** [2] - 3903:10, 3952:14
**aspects** [2] - 4077:23
**assigned** [2] - 3969:20, 4028:24
**assist** [2] - 3969:25, 3992:8
**Assistant** [5] - 3894:17, 4037:24, 4038:11, 4038:15, 4039:9
**assistant** [1] - 3909:8
**Associates** [1] - 3939:3
**Association** [2] - 4077:3, 4077:13
**association** [1] - 4044:14
**assume** [4] - 3931:5, 3960:23, 3976:19, 4045:17
**assumed** [1] - 4086:13
**assuming** [1] - 3899:7
**attach** [1] - 3977:3
**attached** [1] - 4072:21
**attempt** [1] - 3901:4
**attention** [39] - 3903:21, 3921:21, 3924:13, 3932:6, 3937:13, 3942:19, 3964:7, 3965:6, 3992:2, 3994:15, 3995:6, 3996:1, 3996:13, 3997:24, 3998:11, 3998:24, 3999:18, 4000:12, 4002:19, 4003:6, 4004:5, 4004:18, 4004:24, 4005:22, 4007:13, 4007:19, 4008:5, 4010:15, 4011:23, 4012:24, 4013:13, 4013:24, 4014:9, 4017:11, 4047:16, 4052:13, 4056:15, 4063:5,

4069:15
**attorney** [2] - 4016:10, 4078:13
**Attorney** [2] - 3894:14, 3894:17
**Attorney's** [3] - 4027:6, 4028:25, 4039:1
**Attorneys** [4] - 4037:24, 4038:15, 4039:18, 4039:22
**attorneys** [3] - 4038:11, 4039:9, 4077:10
**audibility** [2] - 4085:13, 4087:21
**audible** [1] - 4087:15
**audience** [1] - 4060:8
**August** [19] - 3916:13, 3916:17, 3917:10, 3919:2, 3926:15, 3926:16, 3935:17, 3937:23, 3962:10, 3962:24, 3964:2, 3964:8, 3964:16, 3965:7, 3965:25, 3967:14, 4049:23, 4050:1, 4050:2
**authenticate** [1] - 3899:14
**authenticated** [3] - 3900:6, 3902:2, 3902:13
**authentication** [2] - 3898:22, 3898:25
**authenticity** [6] - 3900:3, 3902:10, 4084:13, 4085:8, 4086:2, 4087:5
**author** [1] - 3983:14
**authority** [1] - 3937:2
**authorized** [1] - 4055:24
**authorizing** [1] - 4040:19
**auto** [2] - 4012:23, 4013:20
**Auto** [1] - 4002:12
**automatically** [1] - 3977:1
**available** [6] - 3970:2, 4039:3, 4059:21, 4082:9, 4086:17, 4086:19
**Avalon** [3] - 4014:22, 4076:7, 4076:12
**avoid** [3] - 4082:5, 4083:1, 4084:6
**aware** [10] - 3980:18, 4028:9, 4029:25, 4030:21, 4032:1, 4056:7, 4061:14, 4064:11, 4077:9, 4077:11
**AZ** [4] - 4014:22, 4015:14, 4063:23, 4064:7

## B

**backup** [6] - 3912:23, 3915:7, 3919:20, 3980:9, 3982:8, 4016:13
**bad** [2] - 3906:19, 3963:12
**Baja** [6] - 3996:22, 3997:1,

6

4046:15, 4046:17, 4047:3, 4047:7
**baker** [3] - 4055:22, 4055:25, 4056:4
**Baker** [1] - 4012:6
**balance** [18] - 3910:3, 3915:14, 3915:18, 3915:20, 3915:21, 3919:8, 3923:7, 3946:14, 3948:18, 3949:9, 3993:6, 3993:8, 3999:8, 4000:2, 4024:3, 4024:11, 4025:3, 4025:4
**balances** [2] - 3999:1, 3999:20
**ban** [1] - 3938:6
**Bancorp** [1] - 4014:23
**Bank** [31] - 3910:18, 3928:1, 3928:10, 3935:3, 3935:6, 3935:15, 3935:21, 3938:14, 3939:7, 3939:11, 3939:12, 3939:19, 3947:6, 3947:9, 3947:15, 3960:8, 3992:12, 3992:17, 3992:21, 3996:24, 4008:16, 4009:8, 4010:1, 4010:5, 4012:5, 4012:8, 4040:22, 4041:13, 4042:3, 4042:12, 4072:14
**bank** [101] - 3909:13, 3909:18, 3910:14, 3910:16, 3910:19, 3910:22, 3912:15, 3912:16, 3912:18, 3913:5, 3913:9, 3913:10, 3913:12, 3914:9, 3914:17, 3916:12, 3916:16, 3916:19, 3916:23, 3918:10, 3919:4, 3919:21, 3920:22, 3920:23, 3921:13, 3921:17, 3922:1, 3922:9, 3923:11, 3923:19, 3923:22, 3923:24, 3926:11, 3928:1, 3933:17, 3939:4, 3939:25, 3940:8, 3941:21, 3944:23, 3947:6, 3947:11, 3949:14, 3952:6, 3952:15, 3952:22, 3952:23, 3955:5, 3955:24, 3958:9, 3958:23, 3960:18, 3968:5, 3974:24, 3986:3, 3986:4, 3986:18, 3987:6, 3989:15, 3989:23, 3989:25, 3992:17, 3992:22, 3998:21, 3999:2, 3999:3, 3999:5, 3999:11, 3999:21, 3999:22, 3999:24, 4000:5, 4003:21, 4006:21, 4026:8, 4027:21, 4032:22, 4034:14, 4035:11, 4036:6, 4036:13,

4040:17, 4040:18, 4041:5, 4041:14, 4045:19, 4047:22, 4047:25, 4057:11, 4064:2, 4064:4, 4067:22, 4068:12, 4068:23, 4069:1, 4069:2, 4069:4, 4073:8, 4074:21, 4074:23, 4074:25
**banking** [4] - 4021:6, 4021:15, 4021:20
**bankruptcy** [1] - 3906:7
**banks** [3] - 3919:19, 3920:2, 3940:12
**Bar** [5] - 4015:24, 4015:25, 4016:15, 4077:3, 4077:13
**based** [17] - 3898:4, 3898:20, 3901:21, 3918:9, 3918:25, 3919:3, 3933:2, 3933:6, 3937:1, 3952:5, 3956:1, 4021:6, 4021:15, 4026:8, 4031:24, 4031:25, 4068:13
**basis** [2] - 3986:2, 4087:6
**bear** [4] - 4045:4, 4056:14, 4057:12, 4069:5
**becomes** [1] - 3961:6
**BEFORE** [1] - 3894:11
**beforehand** [1] - 4083:17
**begin** [3] - 3904:10, 3996:5, 4079:21
**beginning** [4] - 3913:2, 3948:18, 3993:8, 4082:12
**begins** [2] - 4022:22, 4024:1
**behalf** [1] - 3990:17
**behind** [1] - 3976:7
**belied** [2] - 3900:22, 3901:8
**belong** [1] - 3979:15
**beneficiaries** [1] - 3986:25
**beneficiary** [3] - 3965:21, 3966:2, 3966:17
**Berard** [3] - 3954:9, 3954:11, 4004:2
**Berard's** [1] - 3988:22
**Bernard's** [2] - 3989:13, 3989:16
**best** [3] - 3904:1, 3905:15, 4060:24
**better** [4] - 3918:19, 4052:5, 4086:10, 4087:7
**Better** [1] - 4003:18
**between** [21] - 3896:13, 3896:14, 3898:6, 3898:13, 3929:2, 3930:3, 3930:19, 3934:17, 3945:4, 3963:2, 3966:16, 3966:18, 3975:11, 3978:19, 3978:20, 3978:21, 3979:7, 3984:11, 4002:20,

4036:14, 4058:2
**beyond** [4] - 4032:25, 4066:17, 4073:17, 4079:10
**BIANCO** [1] - 3894:11
**big** [1] - 3991:14
**Big** [11] - 3915:23, 3916:19, 3916:23, 3917:3, 3917:7, 3988:23, 3989:4, 3989:15, 3990:18, 3994:20
**bills** [1] - 4013:22
**binder** [3] - 3987:19, 3989:10, 3995:22
**Binder** [4] - 3988:9, 4092:10
**binders** [4] - 3987:21, 3988:1, 3988:3, 3988:8
**bit** [7] - 3921:19, 3964:11, 3966:13, 4024:5, 4025:4, 4045:8, 4081:21
**black** [2] - 3950:6, 3953:4
**blacked** [1] - 3953:9
**Blake** [2] - 3990:24, 3994:25
**blame** [2] - 3901:2, 3901:4
**blaming** [1] - 3919:25
**blank** [1] - 3934:5
**book** [1] - 3984:14
**borrower** [2] - 4057:1, 4057:2
**bottom** [2] - 3991:23, 3992:7
**box** [2] - 3926:9, 3964:17
**bracket** [1] - 3953:20
**brackets** [1] - 3953:17
**break** [8] - 3904:4, 3956:6, 3980:12, 4018:16, 4059:12, 4060:16, 4061:8, 4082:19
**breaking** [1] - 4060:6
**brief** [5] - 3917:24, 3929:9, 3936:5, 4059:19, 4065:6
**briefly** [3] - 3903:6, 3957:21, 4042:16, 4051:20, 4068:4, 4072:20
**bring** [6] - 3903:21, 3904:14, 3957:11, 4019:6, 4020:8, 4025:3
**bringing** [1] - 4083:1
**Bruton** [1] - 4084:21
**Bryan** [5] - 3954:11, 3988:22, 3989:13, 3989:16, 4004:2
**bubble** [2] - 3982:14, 3982:15, 3982:19, 3982:23, 3983:5
**bubbles** [5] - 3972:10, 3972:12, 3982:22, 3982:24
**Buchanan** [2] - 4005:12, 4007:8
**burden** [2] - 4079:9,

4079:12
**Bureau** [5] - 3950:23, 3969:14, 4028:20, 4031:4, 4032:7
**business** [6] - 3986:18, 3997:16, 3998:2, 4018:9, 4018:11, 4034:19
**businesses** [1] - 3909:17
**BY** [68] - 3894:16, 3894:22, 3895:4, 3908:24, 3911:20, 3913:24, 3918:2, 3920:13, 3922:17, 3925:17, 3932:5, 3936:9, 3937:11, 3940:21, 3941:23, 3944:7, 3944:10, 3944:17, 3945:17, 3949:18, 3950:18, 3953:11, 3958:3, 3959:1, 3961:12, 3962:1, 3966:12, 3967:1, 3967:8, 3969:12, 3972:3, 3972:18, 3976:3, 3982:9, 3982:18, 3984:6, 3985:16, 3987:18, 3988:11, 3989:2, 4010:14, 4015:7, 4016:24, 4020:16, 4020:24, 4023:5, 4023:15, 4036:2, 4040:6, 4071:1, 4072:13, 4073:19, 4075:18, 4076:3, 4077:1, 4090:5, 4090:7, 4090:9, 4090:11, 4090:13, 4090:15, 4090:18, 4090:20, 4090:22, 4090:25, 4091:2, 4091:4, 4091:6

**C**

C-R-I-S-A-L-L-I [2] - 3968:23, 3969:8
**C250** [2] - 3961:3, 3968:1
**C251** [2] - 3958:8, 3960:23, 3960:24
**Cabin** [1] - 4015:14
**Cabo** [3] - 4006:14, 4009:10, 4009:21
**Cactus** [1] - 4009:4
**CALCAGNI** [1] - 3894:20
**cannot** [3] - 3978:17, 3981:15, 4037:13
**capable** [1] - 3899:4
**capacity** [1] - 3980:12
**captive** [1] - 4060:8
**capture** [5] - 3925:4, 3925:22, 3927:13, 3946:9, 3976:23
**captured** [2] - 3924:1, 3926:7
**captures** [2] - 3916:9, 3926:17

7

**car** [10] - 3991:2, 3994:6, 3994:8, 3994:12, 4002:18, 4006:4, 4014:6, 4014:7, 4014:8
**card** [15] - 3909:15, 3914:11, 3914:12, 3914:16, 3914:17, 3936:25, 4003:22, 4003:24, 4008:16, 4010:25, 4011:22, 4013:22, 4014:6, 4018:9, 4018:11
**cards** [1] - 4012:22
**career** [1] - 4028:10
**Carey** [3] - 3949:2, 3949:5, 4014:13
**Carillo** [2] - 4017:1, 4017:9
**carrier** [1] - 3981:4
**cars** [2] - 4002:18, 4005:21
**carson** [1] - 3901:12
**cart** [1] - 4013:4
**CART** [2] - 3969:21, 3969:24
**cartoon** [1] - 3982:21
**carts** [1] - 3988:2
**case** [62] - 3896:3, 3896:19, 3896:20, 3896:21, 3897:3, 3897:9, 3898:21, 3899:20, 3900:4, 3901:13, 3901:16, 3901:17, 3902:4, 3903:11, 3903:23, 3904:12, 3905:9, 3905:11, 3909:19, 3914:5, 3914:6, 3919:23, 3927:22, 3936:18, 3936:23, 3956:7, 3970:2, 3970:8, 3979:13, 3979:17, 3986:5, 3986:10, 3988:15, 4018:18, 4027:17, 4028:19, 4029:4, 4029:9, 4030:2, 4030:24, 4031:22, 4037:24, 4038:12, 4038:15, 4039:10, 4039:19, 4040:21, 4044:1, 4059:13, 4066:14, 4079:6, 4079:10, 4079:14, 4080:1, 4080:7, 4081:20, 4082:22, 4083:14, 4085:18, 4085:25, 4088:2
**cases** [3] - 3901:9, 3901:10, 3970:5
**cash** [16] - 3990:25, 3991:2, 3993:15, 3993:21, 3995:2, 3995:3, 3995:4, 4001:13, 4001:16, 4001:20, 4013:3, 4013:20, 4040:15, 4040:17, 4040:23, 4042:14
**category** [1] - 4055:12
**caught** [1] - 3963:19

**cell** [4] - 3979:25, 3980:20, 3980:24, 3980:25
**cellular** [1] - 3978:21
**Center** [1] - 3965:20
**central** [1] - 3979:4
**Central** [3] - 3894:6, 3894:15, 3895:21
**Centrum** [2] - 3996:3, 3997:22
**certain** [14] - 3899:23, 3910:13, 3946:6, 3956:1, 3957:18, 3980:10, 3999:1, 3999:2, 3999:20, 3999:21, 4001:12, 4010:24, 4021:25, 4057:24
**certainly** [1] - 3898:11, 3898:12, 3900:8, 3902:18, 3902:20, 4080:25
**certified** [2] - 3906:1, 3906:6
**chairman** [1] - 4018:10
**chance** [3] - 3931:10, 3987:23, 4000:4
**change** [2] - 3900:12, 3983:9, 3983:17
**changed** [1] - 3909:7
**changes** [1] - 3909:9
**character** [1] - 3982:21
**charactered** [1] - 4053:22
**Chart** [29] - 3987:16, 3995:6, 3996:1, 3996:5, 3996:13, 3998:24, 4000:12, 4004:5, 4004:24, 4005:8, 4006:24, 4007:13, 4007:19, 4008:6, 4010:16, 4013:24, 4043:2, 4043:5, 4043:10, 4045:8, 4048:23, 4051:9, 4051:12, 4054:8, 4061:12, 4062:11, 4092:8
**chart** [72] - 3914:1, 3920:5, 3925:2, 3926:15, 3926:17, 3934:4, 3934:16, 3954:18, 3964:4, 3986:8, 3986:13, 3987:4, 3987:9, 3988:14, 3988:15, 3988:20, 3990:20, 3993:12, 3994:5, 3994:15, 3994:16, 3995:2, 3998:6, 3999:18, 4003:6, 4011:23, 4012:24, 4013:13, 4014:9, 4020:22, 4020:25, 4021:5, 4021:11, 4021:12, 4023:21, 4024:1, 4024:14, 4024:16, 4025:4, 4025:18, 4025:24, 4026:2, 4026:5, 4026:19, 4027:4, 4032:21, 4035:9, 4036:7, 4042:23, 4045:7, 4045:10, 4048:16, 4048:20, 4049:1, 4049:4, 4049:13, 4049:16, 4049:22, 4054:11, 4056:5,

4056:12, 4056:15, 4062:7, 4064:16, 4074:13, 4074:18, 4076:23
**charts** [39] - 3918:9, 3920:15, 3925:4, 3925:21, 3926:24, 3927:3, 3927:11, 3930:15, 3941:18, 3941:20, 3986:11, 3986:14, 3986:17, 3987:6, 4004:19, 4021:21, 4027:2, 4032:21, 4034:8, 4035:4, 4035:11, 4036:6, 4036:25, 4037:9, 4042:16, 4045:3, 4049:17, 4051:23, 4064:18, 4064:20, 4064:23, 4066:10, 4066:13, 4066:19, 4067:4, 4067:5, 4073:17
**Charts** [1] - 3987:8
**Chase** [4] - 3992:12, 3992:17, 3992:20, 4012:23
**chase** [1] - 4013:20
**check** [19] - 3910:2, 3915:8, 3915:12, 3915:16, 3966:9, 3980:5, 4006:19, 4060:12, 4067:15, 4067:19, 4071:5, 4071:8, 4071:11, 4071:13, 4071:16, 4071:19, 4071:21, 4073:1
**checking** [5] - 3939:23, 3944:24, 3945:5, 3945:12, 3980:5
**checks** [10] - 3997:10, 3998:6, 4067:12, 4068:4, 4068:16, 4071:2, 4072:18, 4072:20, 4072:22, 4073:5
**Chris** [2] - 3908:15, 4022:9
**Christopher** [1] - 3908:4
**CHRISTOPHER** [2] - 3908:8, 4090:3
**chronological** [2] - 3928:23, 3940:8
**circle** [1] - 3983:5
**Circuit** [4] - 3901:13, 3901:15, 3902:12
**circumstance** [2] - 3904:1, 3952:10
**circumstances** [2] - 3952:17, 4037:6
**civil** [1] - 3901:16
**clarification** [1] - 3941:13
**clarity** [1] - 3936:16
**classify** [1] - 3976:11
**clause** [2] - 3902:15, 3902:17
**clear** [5] - 3901:21, 3941:2, 3968:20, 4013:6, 4026:22
**clearly** [2] - 4021:7, 4081:24

**CLERK** [5] - 3896:1, 3904:15, 3908:13, 4020:3, 4020:10
**clerk** [1] - 3909:6
**click** [3] - 3983:3, 3983:4, 3983:6
**client** [12] - 3903:24, 3930:4, 3930:9, 3931:2, 4018:25, 4056:3, 4056:18, 4056:21, 4085:6, 4086:1, 4086:21, 4087:25
**client's** [1] - 4088:24
**close** [4] - 3957:7, 3963:21, 3969:9, 4080:12
**closing** [1] - 3990:14
**cloud** [2] - 3976:25, 3977:2
**CMG** [18] - 3941:25, 3997:8, 4000:22, 4000:23, 4004:12, 4005:2, 4005:10, 4007:22, 4008:14, 4048:19, 4048:25, 4050:2, 4054:14, 4054:24, 4061:13
**co** [2] - 3903:15, 4084:22
**co-counsel** [2] - 3903:15, 4084:22
**Coast** [1] - 4001:14
**coconspirator** [5] - 3897:19, 3897:21, 3898:19, 3898:24, 3901:12
**code** [2] - 3980:13, 3980:16
**collateral** [1] - 3998:5
**collecting** [1] - 3969:25
**colors** [1] - 3972:11
**column** [18] - 3915:4, 3915:8, 3915:9, 3915:10, 3923:3, 3923:4, 3923:6, 3932:13, 3932:14, 3932:16, 3932:17, 3932:20, 3932:23, 3933:4, 3945:19, 4063:6
**columns** [2] - 3914:1, 3915:1
**combination** [1] - 3931:5
**coming** [29] - 3899:14, 3921:14, 3937:19, 3937:21, 3942:4, 3942:8, 3942:17, 3943:9, 3946:1, 3946:10, 3946:17, 3946:18, 3946:23, 3948:5, 3964:5, 3976:8, 3990:7, 4002:8, 4047:14, 4049:22, 4049:24, 4052:2, 4054:13, 4056:4, 4056:18, 4076:20, 4082:16, 4082:17, 4083:18
**comment** [2] - 3897:3, 3905:9
**commercial** [1] - 3998:2
**communicated** [1] -

3994:11
**communication** [2] - 3979:2, 4041:6
**communications** [1] - 3978:21
**companies** [1] - 4015:15
**company** [3] - 4045:14, 4045:25, 4053:14
**Company** [1] - 3916:15
**compare** [1] - 3991:17
**comparing** [1] - 3922:21
**comparison** [1] - 3922:19
**compensation** [1] - 4003:4
**complaint** [1] - 4059:18
**complete** [5] - 4024:22, 4026:12, 4080:25, 4081:2, 4082:11
**completed** [1] - 4079:8
**completely** [1] - 3930:16
**completeness** [1] - 4087:17
**completion** [1] - 4080:7
**Computer** [1] - 3969:20
**computer** [15] - 3895:25, 3899:3, 3899:7, 3899:8, 3901:21, 3901:22, 3976:8, 3976:13, 3976:20, 3977:9, 3977:19, 3982:1, 3983:15, 3983:24, 4019:7
**computer-based** [1] - 3901:21
**computers** [1] - 3970:8
**conceivable** [2] - 4081:2, 4081:6
**concern** [1] - 3896:18
**concerned** [3] - 3896:25, 3918:19, 3919:11
**concerning** [3] - 3952:15, 4029:23, 4037:8
**conclude** [1] - 3899:5
**concluded** [1] - 3951:8
**conclusion** [1] - 4059:24
**condition** [1] - 3907:16
**Condos** [2] - 3997:11, 3997:12
**condos** [4] - 3997:14, 3998:7, 3998:8, 4011:7
**conduct** [5] - 3988:6, 4027:22, 4027:23, 4028:1, 4052:24
**conference** [2] - 3998:18, 4066:22
**confident** [1] - 4082:20
**confirm** [1] - 3961:20
**confront** [1] - 3902:24
**confrontation** [2] - 3902:15, 3902:17
**confronted** [1] - 4084:22
**confusing** [1] - 4086:24
**confusion** [1] - 3936:13

**conjunction** [1] - 3922:8
**connected** [2] - 3976:25, 3977:2
**connection** [14] - 3909:18, 3970:4, 3970:8, 3975:20, 3984:15, 3986:5, 3998:4, 4003:4, 4014:19, 4029:4, 4029:9, 4030:14, 4031:14, 4035:3
**conscientious** [1] - 3905:17
**consider** [3] - 4074:12, 4074:14, 4076:21
**consideration** [1] - 4025:19
**considered** [1] - 4074:6
**consist** [1] - 3974:24
**consisting** [1] - 4039:4
**consists** [1] - 3909:25
**conspiracy** [7] - 3897:23, 3898:2, 3898:6, 3898:11, 3898:12, 3900:22
**CONSTANTINE** [1] - 3894:7
**Constantine** [103] - 3895:4, 3895:8, 3898:7, 3898:13, 3898:15, 3898:18, 3899:10, 3899:15, 3899:16, 3900:25, 3901:3, 3927:25, 3928:9, 3928:14, 3928:20, 3929:2, 3933:19, 3933:22, 3934:1, 3934:8, 3934:18, 3934:21, 3935:15, 3935:20, 3935:23, 3936:14, 3936:17, 3936:22, 3937:22, 3938:13, 3938:18, 3940:25, 3941:19, 3941:25, 3958:9, 3959:8, 3962:12, 3962:15, 3962:20, 3962:24, 3963:10, 3963:15, 3964:1, 3966:5, 3967:20, 3968:1, 3997:8, 4000:22, 4001:12, 4001:20, 4002:1, 4002:8, 4004:13, 4005:2, 4005:10, 4005:20, 4007:17, 4011:9, 4012:7, 4014:20, 4016:4, 4021:8, 4022:17, 4025:6, 4025:9, 4025:10, 4025:16, 4025:23, 4026:9, 4042:3, 4042:24, 4043:2, 4043:5, 4043:11, 4043:15, 4043:19, 4044:21, 4044:24, 4047:15, 4047:20, 4047:25, 4050:14, 4054:21, 4054:25, 4055:3, 4055:6, 4055:8, 4055:16, 4055:18, 4055:19, 4056:25,

4061:15, 4062:3, 4067:3, 4067:13, 4069:19, 4073:6, 4073:22, 4074:8, 4076:16, 4078:12, 4084:19, 4089:2
**Constantine's** [17] - 3898:14, 3900:1, 3953:22, 4048:18, 4050:9, 4062:8, 4067:15, 4068:5, 4068:10, 4068:15, 4068:23, 4071:22, 4072:14, 4073:4, 4073:10, 4078:2, 4078:6
**constitute** [1] - 3952:2
**consult** [1] - 4040:21
**consulting** [4] - 4033:6, 4033:14, 4034:15, 4034:18
**consumer** [1] - 3998:3
**Cont'd** [1] - 4036:1
**contact** [4] - 4042:12, 4042:13, 4081:18, 4087:7
**contacted** [1] - 4086:18
**contacting** [1] - 3978:7
**contain** [1] - 3986:24
**contained** [7] - 3970:23, 3970:24, 3975:6, 3982:15, 4033:18, 4035:11, 4039:2
**containing** [1] - 3903:9
**contemporaneous** [1] - 3901:5
**content** [1] - 3974:25
**contents** [2] - 3981:15, 3992:11
**continue** [4] - 3896:24, 3904:22, 3905:20, 3962:8
**Continued** [6] - 3929:12, 3931:12, 3956:10, 4019:12, 4065:10, 4066:23
**continued** [3] - 3954:21, 4035:17, 4070:3
**contract** [1] - 4077:19
**contractual** [2] - 3952:18, 4034:2
**contradict** [1] - 4066:9, 4066:15
**contributes** [1] - 4004:2
**control** [2] - 3999:5, 3999:24
**controlled** [2] - 4003:18, 4050:22
**conversation** [6] - 3983:9, 3984:10, 4005:24, 4037:14, 4038:21, 4087:21
**conversations** [7] - 3952:10, 3952:18, 4037:7, 4037:10, 4039:17, 4087:24, 4088:2
**convince** [1] - 4066:17
**Conway** [2] - 4081:17, 4082:24
**CONWAY** [1] - 3895:2
**cool** [1] - 4006:10

**copies** [16] - 3903:16, 3906:6, 3907:9, 3913:21, 3950:5, 3970:7, 3970:10, 3970:14, 3971:1, 3971:6, 3971:7, 3973:12, 3975:7, 3975:11, 4042:21
**copy** [17] - 3906:1, 3953:1, 3953:3, 3953:10, 3960:25, 3972:25, 3973:2, 3973:3, 3973:5, 3973:6, 3973:21, 3988:12, 3988:13, 3989:9, 3991:14, 4085:12, 4085:15
**corner** [1] - 3983:2
**corners** [1] - 4033:18
**Corp** [2] - 3996:22, 3997:2
**Corporation** [2] - 4046:15, 4046:18
**corporation** [1] - 3939:3
**correct** [158] - 3912:11, 3915:17, 3918:10, 3918:20, 3918:25, 3919:6, 3919:7, 3919:8, 3919:14, 3919:18, 3921:11, 3921:20, 3934:6, 3936:14, 3937:3, 3937:4, 3937:23, 3937:24, 3940:25, 3941:5, 3942:13, 3951:15, 3952:6, 3952:12, 3952:24, 3953:14, 3953:17, 3954:16, 3954:24, 3955:14, 3958:15, 3961:2, 3962:3, 3963:4, 3963:22, 3964:5, 3965:13, 3966:14, 3967:10, 3971:2, 3973:8, 3974:18, 3975:22, 3975:23, 3976:16, 3977:10, 3978:4, 3978:8, 3978:12, 3979:11, 3980:21, 3980:22, 3981:23, 3983:10, 3983:16, 3983:24, 3984:2, 3984:16, 3990:4, 3990:8, 3990:10, 3990:13, 3990:19, 3991:11, 3992:5, 3992:14, 3993:2, 3993:14, 3993:25, 3994:2, 3994:14, 3998:19, 3999:9, 3999:17, 4000:3, 4000:11, 4002:4, 4002:10, 4002:15, 4003:15, 4004:8, 4006:22, 4007:10, 4012:10, 4013:23, 4018:14, 4021:9, 4021:13, 4021:14, 4021:18, 4022:19, 4022:20, 4023:24, 4024:2, 4024:4, 4024:12, 4024:13, 4025:14, 4025:24, 4026:11, 4026:14, 4027:7, 4027:21, 4028:18, 4028:21, 4028:22, 4030:2,

4030:8, 4030:25, 4031:1, 4032:20, 4033:12, 4033:13, 4035:14, 4037:11, 4037:20, 4037:21, 4039:10, 4039:11, 4039:15, 4039:16, 4040:15, 4042:7, 4042:25, 4043:12, 4044:5, 4044:8, 4044:14, 4046:21, 4046:22, 4047:1, 4047:2, 4048:14, 4049:24, 4050:15, 4050:19, 4051:1, 4054:14, 4054:16, 4055:22, 4055:23, 4056:25, 4057:2, 4057:13, 4057:20, 4058:4, 4062:4, 4063:11, 4069:3, 4069:22, 4071:9, 4071:23, 4072:16, 4073:25, 4074:13, 4077:4, 4078:19, 4086:6

**correctly** [1] - 3945:11
**correlate** [2] - 3911:11, 4035:10
**correspond** [1] - 3940:4
**counsel** [7] - 3903:15, 3904:11, 4084:11, 4084:18, 4084:22, 4088:8, 4088:12
**counter** [4] - 4041:9, 4041:11, 4041:12, 4042:9
**Country** [1] - 3895:3
**couple** [7] - 3904:11, 3922:22, 3930:19, 3943:7, 3970:6, 4008:11, 4045:11
**course** [14] - 3898:1, 3903:10, 3905:1, 3905:25, 3912:6, 4021:5, 4023:23, 4024:7, 4028:2, 4034:18, 4037:14, 4044:9, 4063:14, 4087:25
**court** [9] - 3906:7, 3930:18, 3932:1, 3967:3, 3970:19, 3987:24, 4037:19, 4060:14, 4067:1
**COURT** [152] - 3894:1, 3896:2, 3896:4, 3896:15, 3897:16, 3903:4, 3904:2, 3904:9, 3904:14, 3904:17, 3904:20, 3906:9, 3906:12, 3906:18, 3906:24, 3907:21, 3907:24, 3908:5, 3908:17, 3908:21, 3911:16, 3913:18, 3913:22, 3917:25, 3920:7, 3920:9, 3922:15, 3925:15, 3929:11, 3930:23, 3931:9, 3932:2, 3936:6, 3937:7, 3941:14, 3941:17, 3945:15, 3949:17, 3950:10, 3950:14, 3953:7,

3956:6, 3957:8, 3957:11, 3957:13, 3957:23, 3958:13, 3958:16, 3958:20, 3958:22, 3960:24, 3961:4, 3961:7, 3961:10, 3968:12, 3968:16, 3968:20, 3968:24, 3969:5, 3969:9, 3971:11, 3971:16, 3971:18, 3971:21, 3971:25, 3972:15, 3982:8, 3982:16, 3985:3, 3985:5, 3985:12, 3987:15, 3988:8, 4010:12, 4015:3, 4015:6, 4016:20, 4018:16, 4020:4, 4020:8, 4020:12, 4023:1, 4023:10, 4032:19, 4040:3, 4041:20, 4041:23, 4041:25, 4048:5, 4048:7, 4049:3, 4049:6, 4049:8, 4051:14, 4051:17, 4059:9, 4059:12, 4059:17, 4059:19, 4059:25, 4060:9, 4060:15, 4061:4, 4061:21, 4062:13, 4062:15, 4064:15, 4065:2, 4066:3, 4066:5, 4067:23, 4067:25, 4069:9, 4069:11, 4072:6, 4072:8, 4072:11, 4073:16, 4075:14, 4075:17, 4075:21, 4075:24, 4076:1, 4078:23, 4078:25, 4079:5, 4080:3, 4080:11, 4080:14, 4080:18, 4080:20, 4080:22, 4081:4, 4081:7, 4082:7, 4082:14, 4082:18, 4083:3, 4083:9, 4083:12, 4083:16, 4083:20, 4083:24, 4084:3, 4085:20, 4086:3, 4086:12, 4086:24, 4087:4, 4087:14, 4088:4, 4089:3
**Court** [15] - 3895:7, 3895:20, 3903:15, 3930:14, 3930:22, 3952:9, 3953:24, 3971:17, 4025:22, 4064:24, 4080:16, 4081:17, 4084:23, 4087:25, 4088:14
**Court's** [3] - 3902:25, 3903:21, 4018:23
**Courthouse** [1] - 3894:6
**courtroom** [6] - 3957:12, 4018:21, 4019:3, 4019:5, 4033:8, 4061:2
**cover** [1] - 4066:18
**covered** [1] - 4081:24
**covering** [1] - 3901:1
**CR-13-607** [1] - 3894:4
**Crafters** [1] - 4015:14

**create** [12] - 3903:24, 3910:4, 3911:4, 3917:12, 3921:18, 3925:1, 3926:24, 3928:13, 3984:10, 3986:11, 4018:24, 4021:21
**created** [24] - 3912:10, 3921:9, 3928:12, 3945:18, 3978:9, 3980:4, 3986:14, 4022:10, 4025:18, 4026:2, 4031:16, 4031:18, 4031:23, 4031:25, 4033:21, 4034:11, 4035:4, 4035:9, 4036:5, 4064:9, 4064:16, 4064:18, 4064:21, 4066:13
**creating** [5] - 3901:2, 3921:8, 3989:11, 4034:4, 4034:8
**creation** [2] - 3902:21, 4036:7
**credit** [41] - 3909:15, 3920:23, 3922:1, 3922:4, 3923:5, 3923:8, 3924:15, 3924:24, 3926:3, 3926:18, 3927:7, 3927:9, 3927:14, 3927:15, 3927:18, 3988:23, 3989:13, 3989:17, 3994:17, 3995:7, 3995:11, 3996:7, 3998:21, 3999:2, 3999:10, 3999:11, 3999:15, 3999:21, 4000:4, 4000:5, 4000:9, 4003:7, 4003:8, 4003:11, 4008:16, 4010:25, 4011:22, 4012:21, 4013:4, 4013:22, 4014:5
**crimes** [2] - 3985:25, 4079:10
**criminal** [3] - 4028:23, 4032:16, 4079:14
**Crisalli** [6] - 3968:19, 3969:8, 3969:13, 3972:19, 3972:21, 3975:24
**CRISALLI** [2] - 3969:2, 4090:16
**cross** [21] - 3904:6, 3950:14, 3957:7, 3957:10, 3971:14, 3971:18, 3971:19, 3971:23, 3972:15, 4019:9, 4020:13, 4050:22, 4060:7, 4082:4, 4083:20, 4084:5, 4084:24, 4085:6, 4087:25, 4088:4, 4088:18
**CROSS** [13] - 3950:17, 3958:2, 3972:17, 3976:2, 4020:15, 4036:1, 4040:5, 4090:12, 4090:14, 4090:19, 4090:21, 4091:3, 4091:5

**cross-examination** [6] - 3950:14, 4020:13, 4084:24, 4085:6, 4087:25, 4088:18
**CROSS-EXAMINATION** [13] - 3950:17, 3958:2, 3972:17, 3976:2, 4020:15, 4036:1, 4040:5, 4090:12, 4090:14, 4090:19, 4090:21, 4091:3, 4091:5
**curiosity** [1] - 4027:15
**current** [2] - 4053:1, 4053:2
**CURRIE** [1] - 3894:14
**customer** [2] - 4002:5, 4041:1
**customer's** [2] - 3993:23, 4041:1

## D

**D'Ambrosio** [5] - 3941:4, 3941:7, 3941:9, 4082:11, 4083:6
**D'Ambrosio/Mia** [1] - 3941:4
**Daniel** [3] - 4043:23, 4044:10, 4044:12
**Darryl** [4] - 3994:17, 3996:6, 4007:16
**data** [2] - 3926:8, 3981:3
**database** [2] - 3979:4, 3979:7
**date** [11] - 3909:25, 3914:9, 3915:4, 3916:4, 3923:3, 3933:10, 3973:13, 3979:10, 3996:18, 4048:10, 4072:21
**dated** [2] - 3923:10, 3992:25
**dates** [7] - 3912:2, 3949:7, 3977:17, 3977:21, 3986:24, 4054:12, 4054:18
**day-to-day** [1] - 3986:2
**days** [8] - 3899:23, 3930:19, 3943:7, 3943:9, 4008:11, 4048:17, 4062:2, 4083:9
**DDM** [1] - 3996:19
**DE** [2] - 3996:19
**deal** [4] - 3957:5, 3962:8
**debit** [4] - 4001:10, 4041:10, 4041:11, 4042:9
**December** [29] - 3916:24, 3928:2, 3928:11, 3934:19, 3934:20, 3939:5, 3939:9, 3939:13, 3939:16, 3942:23, 3943:8, 3943:9, 3948:3, 3949:22, 3995:18,

4008:8, 4014:11, 4052:12, 4052:17, 4053:8, 4054:6, 4058:15, 4059:3, 4061:6, 4063:7, 4063:23
**decided** [2] - 4079:19, 4087:1
**decision** [5] - 4027:8, 4027:11, 4027:13, 4032:15, 4081:9
**declarant** [1] - 3897:24
**declarants** [1] - 3898:17
**deed** [1] - 3906:2
**defendant** [8] - 3897:24, 3897:25, 3898:17, 3907:6, 3907:10, 3907:14, 4079:12, 4079:14
**Defendant's** [21] - 4042:1, 4048:8, 4048:22, 4049:9, 4051:9, 4051:12, 4051:18, 4061:22, 4062:7, 4062:11, 4062:16, 4068:1, 4069:12, 4092:15, 4092:17, 4092:19, 4092:21, 4092:23, 4092:25, 4093:2, 4093:4
**Defendants** [3] - 3894:8, 3894:20, 3895:1
**Defense** [8] - 3958:25, 3961:11, 4072:12, 4076:2, 4092:4, 4092:5, 4093:6, 4093:7
**defense** [5] - 3903:10, 4018:25, 4066:14, 4080:3, 4080:7
**definitely** [1] - 3946:19
**definitively** [1] - 4081:16
**delay** [1] - 3930:21
**delete** [5] - 3981:12, 3981:13, 3981:14, 3981:20, 3983:7
**deletion** [1] - 3981:19
**deliberate** [1] - 4032:14
**Delores** [1] - 3919:6
**depict** [2] - 3998:25, 3999:19
**depicted** [4] - 3972:11, 3996:5, 3999:14, 4000:8
**depiction** [1] - 3989:12
**depictions** [1] - 3987:5
**depicts** [6] - 3988:21, 3988:22, 3993:12, 3998:15, 3999:1, 3999:20
**deposit** [20] - 3919:17, 3932:15, 3948:15, 3962:24, 3968:4, 3990:17, 3993:7, 3997:15, 4023:16, 4023:18, 4023:20, 4023:23, 4024:16, 4025:2, 4025:8, 4026:15, 4026:16, 4037:8, 4062:3, 4074:7

**deposited** [6] - 3955:23, 3993:4, 3993:5, 4025:1, 4055:4, 4068:24
**deposition** [3] - 4016:4, 4078:11, 4078:17
**deposits** [6] - 3919:16, 3941:3, 3946:13, 3959:4, 3966:21, 4054:5
**Depot** [2] - 4084:10, 4088:21
**deputy** [2] - 3896:5, 3896:17
**derived** [1] - 4024:15
**describe** [14] - 3909:11, 3909:21, 3910:10, 3927:3, 3960:6, 3985:23, 3986:16, 3997:13, 4002:16, 4003:10, 4005:17, 4011:5, 4018:7, 4072:20
**described** [8] - 3935:8, 3935:24, 3947:17, 3947:18, 3982:2, 3982:7, 3998:1, 3998:5
**description** [10] - 3910:1, 3915:3, 3915:6, 3919:2, 3919:5, 3923:3, 3923:13, 3923:15, 3928:5, 3932:13
**designation** [1] - 4030:9
**desperate** [2] - 3898:16, 3900:2
**desperation** [1] - 3901:6
**detail** [3] - 3899:19, 3900:19, 4021:20
**detailed** [2] - 3899:13, 3918:10
**detect** [1] - 3981:24
**determination** [3] - 3977:23, 3997:19, 4059:2
**determine** [15] - 3915:20, 3919:1, 3919:5, 3931:9, 3978:6, 3994:7, 4014:7, 4025:17, 4032:25, 4040:22, 4046:25, 4047:6, 4058:11, 4061:6, 4077:14
**Development** [6] - 3996:22, 3997:1, 4046:15, 4046:17, 4047:4, 4047:7
**development** [1] - 3998:4
**Device** [5] - 3970:13, 3970:14, 3971:7, 3972:22, 3973:21
**device** [1] - 3973:1
**DeVries** [2] - 3943:18, 4010:19
**diagram** [1] - 4049:13
**differ** [1] - 3932:10
**difference** [4] - 3923:15, 3963:2, 3966:16, 3966:18
**different** [9] - 3909:9, 3912:21, 3921:19,

3927:18, 3932:7, 3945:4, 3971:4, 3973:4, 4066:12
**difficulty** [1] - 3973:20
**digital** [3] - 3970:1, 3970:4
**dime** [1] - 4006:11
**dire** [3] - 3917:24, 3936:5, 3988:6
**DIRE** [6] - 3918:1, 3936:8, 3940:20, 4090:6, 4090:8, 4090:10
**direct** [18] - 3957:4, 3964:7, 3965:6, 4002:25, 4005:22, 4027:19, 4052:13, 4066:11, 4066:16, 4069:14, 4073:18, 4078:11, 4080:23, 4080:25, 4081:1, 4082:4, 4085:4, 4085:25
**DIRECT** [7] - 3908:23, 3969:11, 3985:15, 4090:4, 4090:17, 4090:24, 4091:1
**directed** [1] - 4050:2
**directing** [3] - 4047:16, 4056:15, 4063:5
**directive** [1] - 4029:21
**directly** [4] - 3979:6, 4003:2, 4012:19, 4012:20
**disbursed** [5] - 3914:23, 3932:25, 3933:6, 3946:9, 4007:22
**disbursement** [6] - 3915:24, 3932:22, 3948:21, 4052:19, 4052:21, 4053:12
**disbursements** [11] - 3914:21, 3915:10, 3926:5, 3932:20, 3932:24, 3933:20, 3937:20, 3949:8, 3955:2, 3964:4, 3964:17
**Discovery** [2] - 3989:6, 3994:23
**discretionary** [1] - 4030:18
**discuss** [8] - 3905:11, 3956:7, 4018:18, 4059:13, 4063:20, 4080:1, 4084:6, 4087:2
**discussed** [8] - 3920:14, 3933:10, 3950:3, 3971:12, 3971:15, 4039:1, 4049:17, 4051:10
**discusses** [1] - 3899:21
**discussing** [1] - 3896:19
**discussion** [3] - 3897:5, 3899:24, 3936:4
**discussions** [3] - 3900:1, 3901:5, 4085:2
**disk** [3] - 3903:9, 3903:24, 4018:24
**dispute** [2] - 4068:14, 4086:11

**District** [4] - 3901:20, 3901:25, 4028:25, 4038:15
**DISTRICT** [3] - 3894:1, 3894:1, 3894:11
**Dixileta** [1] - 3899:22
**doctor** [1] - 3983:19
**doctored** [1] - 3982:6
**document** [48] - 3915:7, 3918:5, 3918:18, 3930:6, 3957:20, 3959:16, 3968:1, 3973:7, 3974:15, 3990:12, 4021:24, 4022:3, 4022:5, 4022:8, 4022:23, 4023:11, 4030:6, 4030:9, 4033:1, 4033:6, 4033:8, 4033:15, 4033:17, 4033:18, 4033:24, 4034:5, 4034:9, 4034:22, 4034:25, 4035:2, 4035:5, 4035:8, 4035:10, 4036:10, 4036:16, 4039:3, 4040:19, 4041:4, 4044:15, 4044:17, 4058:18, 4059:2, 4059:8, 4062:25, 4063:4, 4063:13, 4064:9, 4066:2
**documentary** [4] - 4055:3, 4055:7, 4056:3, 4056:17
**documents** [37] - 3898:6, 3904:7, 3906:7, 3906:21, 3906:22, 3907:9, 3907:13, 3910:7, 3912:23, 3919:22, 3936:21, 3957:16, 3959:7, 3960:20, 3964:25, 3973:8, 3973:22, 3974:15, 3974:21, 3975:6, 3976:7, 3979:8, 3988:2, 3989:9, 3989:11, 4019:10, 4027:16, 4033:4, 4034:4, 4034:6, 4034:11, 4034:13, 4036:18, 4046:25, 4056:13, 4067:9, 4076:15
**Dog** [1] - 3960:18
**dog** [1] - 4051:7
**dollar** [2] - 3910:1, 3963:21
**dollars** [2] - 3967:12, 4003:17
**done** [12] - 3904:3, 3953:24, 3955:19, 3984:13, 4047:11, 4047:12, 4049:12, 4051:23, 4052:8, 4060:21, 4084:17, 4086:14
**Dorchester** [1] - 4054:1
**doubt** [2] - 4022:12, 4079:10
**down** [12] - 3897:7, 3905:6, 3959:18, 3963:20, 3968:16, 3985:6, 4023:1, 4025:4, 4041:5, 4071:16, 4078:25, 4079:2
**downloaded** [1] - 3899:3

**downtime** [2] - 3905:3, 3905:13
**dozen** [1] - 4060:13
**draw** [7] - 3923:4, 3923:13, 3925:9, 3927:6, 3927:14, 3995:6, 4014:9
**drawdown** [1] - 3923:5
**drawing** [1] - 4003:6
**draws** [2] - 3921:9, 3921:13
**drew** [1] - 4027:1
**drive** [1] - 3970:7, 3970:23, 3970:25, 3973:3, 3973:4, 3973:6, 3973:24, 3974:8, 3974:21, 3976:10, 3977:2
**due** [1] - 3905:24
**Duke** [1] - 3901:24
**duly** [3] - 3908:10, 3969:3, 3985:10
**duplicate** [1] - 3973:3
**duration** [1] - 3979:10
**during** [50] - 3896:10, 3898:1, 3903:10, 3904:3, 3905:1, 3926:4, 3926:5, 3926:13, 3926:18, 3928:5, 3929:3, 3932:18, 3933:1, 3933:3, 3934:19, 3935:23, 3945:7, 3946:23, 3947:10, 3948:17, 3948:20, 3957:4, 3958:11, 4015:25, 4026:23, 4028:2, 4028:10, 4030:22, 4032:9, 4037:14, 4038:1, 4038:24, 4043:14, 4044:9, 4047:4, 4061:8, 4062:22, 4063:14, 4066:2, 4068:9, 4068:16, 4068:24, 4077:17, 4077:21, 4078:1, 4085:6, 4087:25
**duties** [3] - 3909:11, 3969:23, 3985:23
**duty** [1] - 3969:19
**DVD** [3] - 4088:14, 4088:17, 4088:20

---

**E**

**e-mail** [10] - 3977:4, 3978:16, 3982:8, 3983:19, 3983:21, 3992:4, 3992:15, 3992:23, 3992:25, 4041:7
**e-mailed** [1] - 3899:2
**e-mails** [2] - 3977:4, 3982:6
**early** [1] - 4054:4
**easily** [2] - 3970:6, 4024:24
**East** [2] - 3907:6, 4009:4
**EASTERN** [1] - 3894:1
**easy** [1] - 3981:7

**edit** [1] - 3981:15
**effective** [1] - 3905:18
**either** [17] - 3915:6, 3915:8, 3943:6, 3954:6, 3959:4, 3977:6, 4027:20, 4028:7, 4029:12, 4031:19, 4032:4, 4032:8, 4038:25, 4039:21, 4044:18, 4053:22, 4084:4
**elements** [1] - 4079:10
**elicit** [1] - 4081:13
**ELMO** [1] - 3934:14
**email** [2] - 3992:11, 4006:19
**emphasize** [1] - 3899:12
**employed** [4] - 3950:23, 3951:1, 3973:16, 3973:18
**employees** [2] - 4052:24, 4053:2
**encrypted** [2] - 3974:1, 3980:9
**encryption** [4] - 3974:3, 3974:5, 3980:12, 3980:16
**End** [1] - 4066:22
**end** [11] - 3896:5, 3915:15, 3924:24, 3927:15, 3996:11, 4012:11, 4051:3, 4060:21, 4064:25, 4080:12, 4080:25
**ending** [2] - 3923:20, 3927:8
**ends** [2] - 3904:12, 4011:12
**energy** [1] - 4060:23
**enforcement** [5] - 3907:4, 3907:10, 3907:14, 4063:2, 4063:14
**engage** [1] - 3974:1
**engagement** [1] - 4078:8
**engagements** [1] - 4078:3
**enjoy** [1] - 4018:20
**enter** [2] - 3909:23, 3974:7
**entered** [4] - 3915:15, 3915:17, 3919:20, 3957:12
**enters** [2] - 4011:18, 4061:1
**entire** [7] - 3914:24, 3981:13, 3984:10, 4022:3, 4022:5, 4026:1, 4087:17
**entities** [5] - 3912:21, 4046:9, 4046:10, 4048:13, 4050:3
**entitled** [1] - 3955:25
**entity** [7] - 3932:21, 3933:7, 3933:11, 3933:12, 3933:13, 4045:20, 4050:25
**entries** [7] - 3922:22, 3947:5, 4016:17, 4049:13, 4052:14, 4063:6, 4063:23
**entry** [16] - 3918:6,

3918:13, 3918:24, 3919:12, 3923:9, 3930:5, 3933:8, 3939:4, 4015:24, 4016:12, 4016:25, 4053:7, 4063:22, 4069:15, 4069:21, 4076:4
**environmental** [3] - 4034:23, 4036:23, 4037:1
**envision** [3] - 3904:5, 4080:24, 4081:1
**equity** [2] - 4034:25, 4037:2
**erase** [2] - 3978:1, 3981:12
**errors** [1] - 3930:20
**escrow** [4] - 3992:8, 3995:13, 3995:14
**ESQ** [5] - 3894:16, 3894:16, 3894:22, 3895:4, 3895:6
**establish** [1] - 3900:5
**establishing** [1] - 3898:6
**estate** [2] - 3988:16, 3988:18
**etcetera** [1] - 4084:15
**Ethel** [1] - 3919:5
**Eufora** [66] - 3939:6, 3939:11, 3942:20, 3942:21, 3942:22, 3942:23, 3946:23, 3947:3, 3947:21, 3948:1, 3948:17, 3948:22, 3948:23, 3949:14, 3949:21, 4004:20, 4004:22, 4005:1, 4006:4, 4007:24, 4007:25, 4008:2, 4008:8, 4008:9, 4010:18, 4010:20, 4011:25, 4012:2, 4013:1, 4013:2, 4013:7, 4013:9, 4013:15, 4013:16, 4014:1, 4014:2, 4014:13, 4020:25, 4043:15, 4043:17, 4044:14, 4044:16, 4044:21, 4044:25, 4052:3, 4052:25, 4053:18, 4053:21, 4053:24, 4054:2, 4055:4, 4055:12, 4068:6, 4068:11, 4068:16, 4071:8, 4071:13, 4071:19, 4071:22, 4072:23, 4072:24, 4072:25, 4073:7, 4077:10, 4082:12
**Eufora's** [1] - 4052:9
**event** [2] - 3902:17, 4084:18
**evidence** [139] - 3897:22, 3898:20, 3898:21, 3899:19, 3900:4, 3900:5, 3900:18, 3901:1, 3901:23, 3902:7, 3902:22, 3903:18, 3906:8, 3906:13,

3906:15, 3907:1, 3907:18, 3907:20, 3907:25, 3908:2, 3911:10, 3911:19, 3913:15, 3913:19, 3917:22, 3920:11, 3921:1, 3922:12, 3922:16, 3924:14, 3925:12, 3925:16, 3925:20, 3929:6, 3930:25, 3932:4, 3936:2, 3937:8, 3937:10, 3940:15, 3941:16, 3946:20, 3950:1, 3950:11, 3952:9, 3958:8, 3958:25, 3961:11, 3964:24, 3970:1, 3970:2, 3970:4, 3970:12, 3972:2, 3974:16, 3974:22, 3975:13, 3987:6, 3987:9, 3987:15, 3987:17, 3988:4, 3988:10, 3992:2, 4002:19, 4005:23, 4008:22, 4010:9, 4010:12, 4010:13, 4010:16, 4016:3, 4017:11, 4018:8, 4021:6, 4022:1, 4022:24, 4027:17, 4033:22, 4042:2, 4048:9, 4049:10, 4050:8, 4051:19, 4054:20, 4055:2, 4055:3, 4055:7, 4056:3, 4056:17, 4056:20, 4061:23, 4062:17, 4062:19, 4066:9, 4068:2, 4069:13, 4069:24, 4072:12, 4075:16, 4075:23, 4076:2, 4078:13, 4079:8, 4079:15, 4079:16, 4079:19, 4079:22, 4080:12, 4081:13, 4091:11, 4091:12, 4091:14, 4091:16, 4091:17, 4091:19, 4091:20, 4091:21, 4091:23, 4091:25, 4092:2, 4092:3, 4092:4, 4092:5, 4092:7, 4092:9, 4092:11, 4092:12, 4092:16, 4092:18, 4092:20, 4092:22, 4092:24, 4093:1, 4093:3, 4093:5, 4093:6, 4093:7
**exact** [2] - 3964:13, 3973:3
**exactly** [2] - 4027:3, 4038:18
**EXAMINATION** [26] - 3908:23, 3918:1, 3936:8, 3940:20, 3950:17, 3958:2, 3969:11, 3972:17, 3976:2, 3985:15, 4020:15, 4036:1, 4040:5, 4090:4, 4090:6, 4090:8, 4090:10, 4090:12, 4090:14, 4090:17, 4090:19, 4090:21, 4090:24, 4091:1, 4091:3,

4091:5
**examination** [22] - 3919:1, 3919:3, 3919:4, 3919:11, 3919:12, 3950:14, 3973:11, 3977:22, 3979:21, 3979:24, 3979:25, 4020:13, 4024:23, 4073:18, 4078:12, 4080:23, 4084:24, 4085:4, 4085:6, 4087:25, 4088:18
**examine** [2] - 3980:20, 4085:22
**examined** [8] - 3908:10, 3969:4, 3973:20, 3985:11, 4045:17, 4045:19, 4064:6, 4068:9
**example** [15] - 3899:21, 3911:23, 3919:1, 3920:25, 3922:18, 3923:9, 3924:4, 3933:1, 3933:5, 3933:8, 3946:12, 3976:21, 3982:13, 4074:24, 4083:5
**Excel** [1] - 3937:15
**excerpt** [1] - 4016:4
**exclusively** [1] - 3998:2
**exculpatory** [1] - 3900:23
**excuse** [5] - 3896:14, 3897:24, 3918:12, 3954:10, 4057:21
**excused** [2] - 3956:8, 4080:2
**executed** [1] - 3907:5
**execution** [1] - 4003:4
**exhibit** [29] - 3905:24, 3906:1, 3911:22, 3913:23, 3918:12, 3936:13, 3939:18, 3949:16, 3950:5, 3951:12, 3954:3, 3954:4, 3954:8, 3955:8, 3986:23, 3987:2, 3992:20, 4002:22, 4008:6, 4021:2, 4022:2, 4024:8, 4025:21, 4048:22, 4065:3, 4072:6, 4074:1, 4075:15
**Exhibit** [98] - 3906:2, 3906:4, 3907:1, 3913:19, 3918:3, 3921:1, 3922:20, 3922:23, 3923:10, 3924:14, 3925:3, 3925:16, 3925:20, 3927:20, 3927:24, 3928:13, 3928:15, 3928:21, 3934:12, 3934:15, 3935:4, 3935:14, 3935:19, 3938:13, 3938:16, 3938:17, 3939:6, 3939:10, 3939:14, 3939:21, 3942:19, 3946:20, 3947:20, 3958:25,

3961:11, 3967:20, 3970:13, 3986:8, 3986:9, 3986:19, 3986:23, 3987:9, 3989:17, 3989:24, 3990:2, 3990:11, 3991:4, 3992:3, 3998:11, 4005:23, 4008:22, 4009:1, 4009:17, 4010:13, 4014:25, 4016:12, 4017:12, 4018:6, 4021:24, 4022:2, 4022:7, 4024:23, 4026:2, 4040:10, 4042:1, 4048:8, 4048:22, 4049:9, 4051:9, 4051:12, 4051:18, 4061:22, 4062:7, 4062:11, 4062:16, 4062:19, 4068:1, 4069:12, 4072:12, 4075:23, 4076:2, 4091:12, 4091:17, 4091:21, 4092:4, 4092:5, 4092:12, 4092:15, 4092:17, 4092:19, 4092:21, 4092:23, 4092:25, 4093:2, 4093:4, 4093:6, 4093:7
**EXHIBITS** [1] - 4091:8
**exhibits** [32] - 3903:13, 3903:14, 3903:15, 3903:17, 3904:13, 3905:23, 3905:24, 3906:8, 3906:12, 3907:19, 3907:24, 3911:16, 3929:5, 3930:24, 3936:12, 3937:7, 3941:14, 3951:16, 3958:23, 3972:9, 3975:21, 3976:11, 3980:7, 3981:25, 3990:5, 4018:19, 4018:23, 4018:25, 4064:17
**Exhibits** [45] - 3906:5, 3906:14, 3907:8, 3907:12, 3907:18, 3908:1, 3910:9, 3911:5, 3911:18, 3913:1, 3916:7, 3920:10, 3920:19, 3921:22, 3922:16, 3927:1, 3927:12, 3928:7, 3932:3, 3934:24, 3935:2, 3935:13, 3937:9, 3938:10, 3938:25, 3940:2, 3941:15, 3949:12, 3950:11, 3970:16, 3972:1, 3987:16, 3988:9, 4091:9, 4091:13, 4091:15, 4091:18, 4091:20, 4091:22, 4091:24, 4092:1, 4092:3, 4092:6, 4092:8, 4092:10
**exist** [1] - 4030:20
**existed** [1] - 3897:23
**exists** [3] - 3920:5, 4029:21, 4030:16
**exits** [1] - 4059:14
**Expansion** [12] - 3935:3,

3935:5, 3935:10, 3937:22, 4000:13, 4000:16, 4000:19, 4002:21, 4035:5, 4036:12, 4036:13, 4036:19
**expect** [2] - 3902:18, 3903:1
**expediting** [1] - 3957:17
**expenditure** [2] - 3938:3, 4015:12
**expenditures** [3] - 3948:24, 3949:2, 4015:13
**expense** [2] - 4012:6, 4055:18
**expenses** [9] - 4001:12, 4001:22, 4002:7, 4005:17, 4010:24, 4015:17, 4056:8, 4056:9
**experience** [1] - 3978:22
**expert** [8] - 3978:2, 3978:21, 4033:10, 4078:10, 4085:22, 4086:16, 4087:1, 4087:7
**experts** [2] - 3980:15, 4086:24
**explain** [12] - 3914:1, 3922:22, 3923:16, 3925:21, 3931:8, 3932:10, 3945:22, 3976:18, 3989:8, 3990:22, 4033:2, 4034:1
**Express** [1] - 4014:5
**extent** [1] - 3900:20
**extra** [5] - 3933:5, 3933:6, 3957:3, 3957:6, 4006:1
**extract** [3] - 3978:16, 3980:2, 3980:8
**extremely** [1] - 3899:13

## F

**F.3d** [1] - 3902:14
**fabricate** [1] - 3902:23
**fabricated** [3] - 3899:17, 3900:21, 3902:8
**fabrication** [1] - 3901:7
**fact** [15] - 3900:7, 3900:9, 3900:16, 3900:22, 3901:7, 3930:5, 3980:24, 3981:19, 4028:19, 4030:4, 4031:22, 4041:13, 4048:16, 4056:7, 4067:21
**fair** [20] - 3912:3, 3922:2, 3922:5, 3924:7, 3924:11, 3933:9, 3938:2, 3938:7, 3944:12, 3946:17, 3983:12, 4009:25, 4010:4, 4018:1, 4021:19, 4024:22, 4025:2, 4044:3, 4044:6, 4048:22
**Falcon** [6] - 3899:22,

4015:14, 4015:20, 4015:21, 4063:23, 4064:8
**fall** [1] - 4056:14
**familiar** [8] - 3982:14, 4022:8, 4033:5, 4033:15, 4033:17, 4033:20, 4040:20, 4053:24
**far** [4] - 3918:18, 4029:18, 4054:2, 4065:5
**Fargo** [13] - 3910:18, 3939:15, 3940:1, 3947:6, 3947:11, 3947:14, 3960:8, 3960:18, 3965:25, 3968:5, 3995:22, 4061:9, 4074:24
**faster** [1] - 3957:22
**Father's** [1] - 4081:22
**fault** [1] - 3953:3
**FBI** [12] - 3909:1, 3909:5, 3914:7, 3951:1, 3969:15, 3980:15, 4029:3, 4030:24, 4031:7, 4038:4, 4053:22, 4086:18
**FBI's** [1] - 4038:7
**February** [15] - 3901:25, 3909:6, 3943:17, 3943:21, 3943:24, 3946:13, 3951:3, 3994:18, 4010:18, 4012:1, 4055:17, 4072:3, 4072:15, 4072:23
**Fed** [2] - 3901:13, 3901:14
**Federal** [8] - 3894:15, 3895:20, 3950:23, 3969:14, 3972:23, 4028:20, 4031:4, 4032:7
**federal** [6] - 3907:4, 3907:9, 3907:13, 3970:4, 4032:16, 4032:24
**fee** [1] - 3956:1
**few** [11] - 3904:12, 3910:7, 3938:6, 3984:7, 4015:12, 4035:14, 4045:6, 4049:20, 4083:22, 4083:23, 4088:6
**Fidelity** [3] - 3990:9, 3990:11, 3994:22
**fifth** [1] - 3953:16
**fights** [1] - 3899:25
**figure** [6] - 3953:13, 3963:22, 4023:1, 4057:7, 4082:5, 4083:14
**figured** [1] - 4045:9
**file** [8] - 3909:6, 4034:1, 4036:8, 4038:3, 4038:4, 4038:7
**files** [5] - 3974:25, 3975:2, 3977:20, 4038:7
**final** [1] - 3991:10
**finally** [6] - 3902:3, 3902:15, 3917:9, 3949:12, 4014:9, 4045:9
**Financial** [1] - 3996:3

13

**financial** [5] - 3898:16, 3909:7, 3909:9, 3909:15, 3985:25
**fine** [10] - 3897:13, 3897:14, 3904:2, 3904:4, 3930:23, 3944:16, 4016:21, 4027:14, 4066:18, 4083:24
**finish** [3] - 4066:11, 4081:20, 4083:7
**finished** [3] - 3971:14, 3988:25, 4083:14
**firm** [3] - 4005:12, 4077:18, 4078:15
**First** [7] - 3902:12, 3964:21, 3965:1, 3991:5, 3991:8, 3992:8, 4000:25
**first** [41] - 3896:4, 3897:20, 3904:10, 3908:9, 3910:8, 3914:5, 3915:4, 3915:22, 3918:5, 3918:18, 3919:2, 3922:22, 3923:3, 3932:13, 3936:18, 3939:3, 3939:24, 3942:7, 3961:3, 3961:4, 3961:20, 3964:7, 3964:17, 3964:20, 3966:21, 3967:4, 3969:3, 3974:20, 3985:10, 3988:15, 3991:10, 4049:12, 4060:12, 4067:16, 4069:15, 4079:20, 4080:14, 4082:21, 4083:1, 4083:3, 4083:24
**firsthand** [2] - 3964:24, 4056:2
**five** [9] - 3963:9, 3967:4, 4015:5, 4038:17, 4038:19, 4039:7, 4048:17, 4062:2
**flip** [1] - 3927:2
**Florida** [1] - 4005:20
**flow** [4] - 3925:25, 3987:5, 3988:2, 3995:2
**flowcharts** [2] - 4033:21, 4034:19
**flowing** [1] - 4021:7
**fly** [2] - 4082:2, 4083:8
**flying** [2] - 4081:23, 4082:7
**focus** [2] - 4051:25, 4052:4
**focusing** [1] - 3947:25
**follow** [1] - 4028:6
**following** [7] - 3930:1, 3932:1, 3943:6, 3957:1, 4019:12, 4065:8, 4072:2
**follows** [4] - 3908:11, 3925:25, 3969:4, 3985:11
**foreclosure** [1] - 3900:1
**foregoing** [1] - 3907:17
**forensic** [18] - 3909:3, 3909:4, 3909:9, 3909:12, 3918:25, 3919:3, 3919:11,

3950:22, 3950:24, 3951:5, 3951:18, 3951:21, 3951:25, 3953:19, 3955:1, 4051:23, 4052:8
**forged** [1] - 4033:11
**forges** [1] - 4002:23
**forget** [1] - 3967:21
**form** [3] - 3920:5, 3940:8
**format** [6] - 3914:2, 3920:15, 3921:20, 3932:7, 3972:10, 3973:4
**former** [1] - 4086:18
**forth** [4] - 3818:13, 3899:11, 3902:22, 4025:21
**Forward** [1] - 3901:19
**forward** [2] - 3904:13, 3930:17
**forwarded** [1] - 3977:8
**Foundation** [3] - 4015:24, 4015:25, 4016:15
**foundation** [6] - 3899:6, 3899:7, 3918:9, 4084:13, 4084:17, 4085:9
**four** [9] - 3930:11, 3931:4, 3933:23, 3966:4, 3966:5, 3967:14, 3989:6, 4033:18, 4051:10
**Fourth** [1] - 3901:14
**fourth** [1] - 3932:17
**frame** [3] - 3898:10, 3898:11, 3929:4
**frequently** [1] - 3896:7
**front** [5] - 4026:6, 4042:17, 4054:9, 4055:13, 4074:2
**full** [6] - 3905:18, 3933:2, 4021:19, 4024:22, 4026:12, 4059:1
**fully** [1] - 3900:23
**fun** [3] - 3897:8, 3905:5, 3905:7
**function** [1] - 3920:1
**Fund** [4] - 4057:15, 4058:4, 4058:12, 4058:17
**funding** [4] - 4033:6, 4033:14, 4034:15, 4034:17
**funds** [1] - 3937:2
**fungible** [1] - 4024:20
**furtherance** [2] - 3898:2, 3898:12

## G

**Gaarn** [18] - 3939:22, 3943:10, 3944:19, 3944:22, 3945:11, 3945:24, 3946:22, 3947:8, 4010:22, 4012:4, 4012:17, 4013:2, 4013:9, 4013:11, 4014:3, 4055:5, 4055:12,

4055:21
**Gaarn's** [11] - 3944:20, 3951:10, 3951:15, 3951:22, 3952:12, 4008:12, 4012:3, 4013:17, 4014:4, 4055:16, 4055:25
**gain** [1] - 3974:10
**Galioto** [12] - 4029:6, 4029:8, 4030:24, 4031:3, 4031:16, 4031:23, 4031:25, 4038:25, 4044:4, 4044:19, 4052:25, 4063:20
**Garcia** [1] - 3901:24
**gather** [1] - 3980:4
**gathered** [1] - 4038:8
**GDM** [5] - 3959:9, 3959:13, 3960:2, 4050:18, 4050:19
**general** [3] - 3901:10, 3909:21, 3910:22
**generally** [7] - 3985:23, 3986:16, 4002:16, 4005:17, 4011:5, 4015:14, 4015:19
**generated** [1] - 3932:11
**geographical** [1] - 3989:12
**gifts** [1] - 3952:19
**Giles** [1] - 3901:14
**Gilmartin** [6] - 4010:25, 4011:3, 4056:16, 4056:23, 4057:16, 4058:14
**given** [8] - 3900:18, 3952:23, 3979:17, 4039:4, 4039:23, 4039:24, 4044:20, 4045:20
**glad** [1] - 3968:10
**Glen** [3] - 3943:8, 3944:2, 3996:6
**Global** [4] - 4057:15, 4058:3, 4058:11, 4058:16
**GMC** [1] - 4048:18
**goal** [1] - 4085:10
**Gonchar** [1] - 4083:18
**Gonchar's** [1] - 3927:6
**Government** [63] - 3894:14, 3906:14, 3907:1, 3908:1, 3911:18, 3913:19, 3920:10, 3922:16, 3925:16, 3932:3, 3936:1, 3937:9, 3941:15, 3950:11, 3970:13, 3970:16, 3972:1, 3972:21, 3972:23, 3986:7, 3986:9, 3986:19, 3986:23, 3987:9, 3987:16, 3988:9, 3989:17, 3989:24, 3990:2, 3990:11, 3991:4, 3992:3, 3992:20, 3998:11, 4008:22, 4009:1, 4009:17, 4010:13, 4014:24, 4016:12, 4017:12, 4018:6, 4022:1, 4041:18, 4041:20,

4060:9, 4066:19, 4091:9, 4091:12, 4091:13, 4091:15, 4091:17, 4091:18, 4091:20, 4091:21, 4091:22, 4091:24, 4092:1, 4092:3, 4092:6, 4092:8, 4092:10, 4092:12
**government** [52] - 3897:22, 3898:3, 3899:5, 3899:19, 3900:4, 3902:19, 3903:1, 3903:9, 3903:19, 3905:20, 3906:7, 3911:9, 3913:14, 3917:21, 3922:11, 3925:11, 3929:5, 3930:23, 3940:14, 3949:25, 3957:16, 3958:13, 3960:22, 3968:18, 3968:21, 3971:9, 3974:16, 3975:13, 3975:21, 3985:8, 3987:8, 3988:3, 4005:23, 4008:5, 4010:8, 4029:8, 4029:23, 4031:20, 4032:8, 4033:2, 4033:8, 4033:25, 4079:4, 4079:5, 4079:8, 4079:11, 4079:13, 4085:6, 4085:10, 4086:4, 4087:12, 4087:23
**Government's** [51] - 3907:12, 3907:17, 3910:9, 3911:5, 3913:1, 3916:7, 3918:3, 3920:19, 3921:1, 3921:22, 3922:20, 3922:23, 3923:10, 3924:13, 3925:3, 3925:19, 3927:1, 3927:12, 3927:20, 3927:24, 3928:7, 3928:13, 3928:15, 3928:21, 3934:12, 3934:15, 3934:24, 3935:2, 3935:4, 3935:13, 3935:14, 3935:19, 3938:10, 3938:13, 3938:15, 3938:17, 3938:25, 3939:6, 3939:10, 3939:14, 3939:21, 3940:2, 3942:19, 3946:20, 3947:20, 3949:12, 4026:1, 4036:8, 4040:10, 4062:19, 4075:23
**government's** [4] - 3899:14, 3903:23, 3907:8, 3911:22
**grab** [1] - 3976:23
**grand** [1] - 4022:24
**graphic** [1] - 3926:3
**graphical** [6] - 3925:2, 3925:4, 3925:7, 3925:21, 3926:17, 3926:24
**gray** [3] - 3941:20, 3972:10, 3972:12

14

**great** [3] - 3899:19, 3905:15, 4021:20
**green** [2] - 3972:10, 3972:12
**Greenberg** [3] - 3949:3, 3949:6, 4014:14
**Greg** [1] - 3943:17
**group** [4] - 3920:7, 3960:20, 3960:25, 3962:12
**Group** [42] - 3928:1, 3928:10, 3928:14, 3929:2, 3933:20, 3933:22, 3934:2, 3934:9, 3934:18, 3934:21, 3935:15, 3935:20, 3935:23, 3937:22, 3938:14, 3938:18, 3942:1, 3953:22, 3958:9, 3959:8, 3962:15, 3962:21, 3962:25, 3963:11, 3963:15, 3964:1, 3966:6, 3967:20, 3968:1, 4002:1, 4002:9, 4021:8, 4022:17, 4026:9, 4043:11, 4047:20, 4047:25, 4050:14, 4055:19, 4073:22, 4074:8, 4076:17
**groups** [1] - 3933:11
**guarantee** [1] - 3995:12
**guarantor** [1] - 4011:10
**Guard** [1] - 3960:18
**guess** [2] - 3918:20, 4027:12
**guide** [1] - 4051:7
**guide-dog** [1] - 4051:7
**GuideDog** [4] - 3911:1, 3912:8, 3954:22, 3955:3
**guys** [1] - 3905:14
**GX** [1] - 3925:11

## H

**Haley** [16] - 3941:17, 3951:6, 4041:19, 4048:5, 4049:6, 4060:20, 4067:23, 4069:9, 4072:8, 4073:20, 4074:5, 4079:18, 4079:20, 4083:14, 4085:24, 4088:14
**haley** [1] - 4084:4
**HALEY** [98] - 3894:20, 3894:22, 3896:13, 3897:15, 3903:6, 3906:11, 3906:21, 3906:23, 3907:23, 3911:11, 3911:14, 3913:17, 3917:24, 3918:2, 3920:4, 3920:8, 3922:14, 3925:14, 3936:5, 3936:9, 3937:5, 3940:18, 3940:21, 3941:11, 3941:22, 3944:6,

3944:9, 3944:14, 3944:16, 3950:4, 3950:8, 3950:15, 3950:18, 3953:9, 3953:11, 3956:4, 3958:21, 3961:1, 3961:9, 3968:21, 3971:23, 3972:16, 3972:18, 3987:10, 3988:6, 3988:25, 4010:11, 4018:22, 4019:6, 4020:6, 4020:16, 4020:22, 4020:24, 4023:3, 4023:5, 4023:13, 4023:15, 4036:2, 4037:17, 4039:6, 4040:1, 4041:22, 4041:24, 4048:6, 4049:7, 4051:15, 4059:15, 4059:18, 4059:22, 4060:1, 4060:4, 4060:12, 4061:20, 4062:14, 4067:24, 4070:10, 4072:10, 4075:25, 4080:5, 4080:13, 4080:16, 4080:19, 4080:21, 4080:24, 4081:5, 4085:1, 4085:18, 4087:11, 4087:20, 4088:10, 4088:23, 4090:7, 4090:9, 4090:11, 4090:13, 4090:20, 4091:4
**half** [5] - 3905:16, 3975:14, 3985:22, 4059:10, 4060:13
**half-dozen** [1] - 4060:13
**hand** [18] - 3910:7, 3912:25, 3916:6, 3920:18, 3926:7, 3927:10, 3927:19, 3928:6, 3934:24, 3938:9, 3938:24, 3969:1, 3970:12, 3970:16, 3986:7, 3986:8, 4009:16, 4018:6
**handed** [3] - 3921:21, 4014:23, 4022:7
**handing** [4] - 3910:8, 3937:12, 3940:2, 3949:12
**handle** [1] - 3957:3
**handled** [3] - 3991:5, 4077:18, 4077:23
**handling** [1] - 4016:10
**handwriting** [1] - 3960:10, 4086:23, 4087:1
**handwritten** [4] - 3902:5, 3902:8, 3902:11, 4030:6
**Hangar** [3] - 3933:5, 4075:9, 4076:5
**hangars** [1] - 4076:12
**Harbor** [1] - 4004:4
**Harbour** [2] - 3989:6, 3994:23
**hard** [12] - 3960:25, 3970:7, 3970:23, 3970:24, 3973:3, 3973:4, 3973:6, 3973:23, 3974:8, 3974:21, 3976:9, 3977:1
**harmless** [1] - 3896:23,

3897:8, 3905:4, 3905:7
**haste** [1] - 4086:20
**Hawaii** [9] - 3988:17, 3988:18, 3989:7, 3996:10, 3999:2, 3999:3, 3999:21, 3999:22, 4077:23
**Hawaiian** [2] - 4046:10, 4077:22
**head** [1] - 4085:14
**heading** [1] - 3936:14
**hear** [2] - 4046:2, 4085:20
**heard** [9] - 3896:12, 3905:1, 3964:9, 4044:12, 4044:13, 4073:10, 4077:16, 4085:12
**helicopter** [1] - 4073:11
**hello** [1] - 3936:10
**help** [2] - 3968:13, 4023:10
**Herman** [1] - 3964:10
**Hermosa** [1] - 4004:16
**highlight** [2] - 3946:6, 3983:5
**highlighted** [13] - 3942:24, 3945:21, 3946:4, 3948:24, 3953:4, 3997:25, 4002:23, 4016:7, 4042:7, 4048:3, 4063:6, 4069:15, 4075:6
**highlighting** [2] - 3937:15, 3937:18
**highlights** [1] - 3942:1
**highly** [1] - 4081:5
**Highway** [1] - 3894:21
**hire** [1] - 4085:22
**histories** [3] - 3920:23, 3921:4, 3922:8
**history** [3] - 3923:11, 3924:16, 3925:2
**hockey** [10] - 3956:1, 4026:21, 4026:23, 4037:7, 4037:18, 4044:22, 4045:1, 4056:8, 4056:10, 4063:1
**hold** [3] - 3945:15, 4075:14, 4080:18
**holder** [1] - 4058:24
**Holding** [2] - 3916:15, 4002:20
**holds** [1] - 3995:16
**Home** [2] - 4084:10, 4088:21
**home** [6] - 3906:22, 4009:14, 4018:4, 4018:13, 4082:16, 4083:8
**honest** [2] - 4019:8, 4060:24
**Honor** [60] - 3897:14, 3903:6, 3906:10, 3907:22, 3911:15, 3913:16, 3917:23, 3920:4, 3922:13, 3925:13, 3929:9, 3936:3, 3937:5, 3940:17, 3941:13,

3941:22, 3950:2, 3950:4, 3950:13, 3957:2, 3957:15, 3957:20, 3958:7, 3958:18, 3958:24, 3960:19, 3960:22, 3971:13, 3984:4, 4010:10, 4015:5, 4016:19, 4016:23, 4018:22, 4020:7, 4040:4, 4041:24, 4047:23, 4049:5, 4051:16, 4059:6, 4059:15, 4059:18, 4060:17, 4060:19, 4061:3, 4061:19, 4061:20, 4064:13, 4069:8, 4072:5, 4072:7, 4076:24, 4078:22, 4078:24, 4079:3, 4080:5, 4081:11, 4087:11, 4087:23
**HONORABLE** [1] - 3894:11
**Honuapo** [2] - 3996:8, 3996:9
**hope** [1] - 3905:18
**hopefully** [3] - 3905:13, 3957:18, 4082:18
**hoping** [1] - 3957:24
**hour** [1] - 4059:10
**hours** [6] - 3896:10, 3903:20, 3905:13, 4083:22, 4083:23, 4088:1
**house** [3] - 3902:6, 4001:1, 4001:3, 4008:19, 4008:24, 4009:1, 4009:10, 4009:21, 4009:25, 4010:4, 4011:21, 4012:8, 4050:5
**Hummer** [1] - 3994:13
**hundred** [2] - 3948:20, 3970:6

## I

**idea** [8] - 3901:1, 3954:1, 3954:2, 3965:3, 3965:21, 3975:10, 3975:14, 4031:5
**identification** [11] - 3903:18, 4021:25, 4041:17, 4048:23, 4051:8, 4058:20, 4061:18, 4067:8, 4069:7, 4084:14, 4088:17
**identified** [5] - 3922:4, 3976:8, 3976:9, 3992:8, 4088:16
**identifiers** [2] - 3991:18, 3998:17
**identifies** [1] - 3992:12
**identify** [10] - 3910:10, 3913:2, 3916:8, 3916:14, 3928:8, 3935:1, 3938:11, 3970:21, 3986:20, 4058:19
**identifying** [2] - 3983:13, 4052:7
**identity** [1] - 3914:16

**ignore** [1] - 3974:9
**image** [17] - 3970:7, 3970:10, 3970:14, 3970:25, 3971:7, 3972:25, 3973:2, 3973:3, 3973:5, 3973:6, 3973:12, 3973:21, 3973:24, 3974:8, 3975:7, 3975:11, 3977:2
**images** [4] - 3971:6, 3972:6, 3975:15, 3976:6
**immediately** [1] - 4063:22
**implicate** [1] - 3900:24
**importantly** [1] - 3899:12
**impression** [1] - 4085:24
**in-person** [2] - 4031:24, 4032:1
**inaccurate** [1] - 3931:10
**Inc** [1] - 3901:19
**incidentally** [2] - 4026:21, 4032:4
**include** [3] - 3955:1, 4036:23, 4074:18
**included** [5] - 3897:23, 3897:24, 4026:19, 4074:12, 4076:23
**includes** [1] - 3898:17
**including** [4] - 4006:22, 4010:24, 4015:16, 4067:17
**inconvenience** [1] - 4082:15
**inconveniencing** [1] - 4082:6
**Incorporated** [1] - 3910:25
**incorrect** [2] - 4066:4, 4085:13
**increase** [4] - 3923:12, 3924:4, 3924:6, 3924:17
**indeed** [3] - 4032:16, 4085:5, 4087:11
**indemnity** [3] - 4034:23, 4036:23, 4037:1
**independent** [2] - 3898:4, 3980:23
**indicate** [6] - 3945:22, 3954:14, 3993:19, 4001:19, 4017:21, 4084:23
**indicated** [9] - 3930:8, 3935:10, 3940:9, 3954:15, 3993:20, 3994:5, 4079:18, 4081:11, 4086:21
**indicates** [4] - 3926:21, 3937:21, 3991:13, 4017:22
**indication** [2] - 3901:7, 4016:14
**indicia** [1] - 3902:9
**indictment** [5] - 4064:11, 4066:1, 4066:3, 4066:5, 4066:7, 4066:15
**indirect** [1] - 4002:25
**indirectly** [1] - 4003:2

**individual** [6] - 3943:17, 3943:21, 3981:14, 3982:24, 4052:22, 4053:4
**individually** [1] - 4032:5
**individuals** [3] - 3909:17, 4043:16, 4056:9
**individuals'** [2] - 3910:13, 4073:13
**indulgence** [1] - 4018:23
**Industrial** [2] - 4017:8, 4017:15
**information** [30] - 3903:25, 3909:24, 3912:22, 3914:1, 3914:4, 3918:21, 3922:23, 3924:1, 3926:10, 3932:11, 3940:12, 3941:21, 3942:16, 3954:20, 3955:17, 3973:15, 3974:8, 3978:16, 3978:23, 3979:1, 3979:9, 3980:3, 3980:4, 3980:11, 3980:16, 3981:3, 4006:21, 4032:15, 4044:7, 4074:12
**innocent** [2] - 3905:4, 3905:7
**inquiry** [1] - 4025:19
**inside** [2] - 3977:11, 3978:2
**insofar** [1] - 3919:10
**instance** [2] - 3952:11, 4036:11
**instances** [8] - 3977:3, 4027:10, 4029:11, 4031:14, 4031:23, 4032:4, 4036:12, 4039:15
**instead** [1] - 4079:24
**Institute** [2] - 4017:7, 4017:15
**intend** [1] - 4079:19
**intending** [1] - 4084:4
**intent** [2] - 4084:12, 4084:23
**intention** [1] - 4085:3
**interaction** [1] - 4037:7
**interest** [17] - 3923:7, 3924:9, 3924:19, 3924:22, 3924:23, 3925:5, 3925:8, 3926:17, 3926:21, 3927:13, 3952:3, 4002:25, 4043:17, 4044:16, 4044:20, 4044:25
**intermediary** [1] - 3978:14
**Internal** [7] - 4028:5, 4028:11, 4029:20, 4030:10, 4030:15, 4032:5, 4032:24
**International** [6] - 4008:16, 4009:8, 4010:1, 4010:5, 4012:5, 4012:8
**internet** [3] - 3901:19,

4027:3, 4027:9
**interpretation** [1] - 4024:24
**interrupt** [1] - 4082:22
**interview** [17] - 4026:23, 4029:8, 4029:12, 4029:13, 4030:5, 4030:12, 4030:13, 4030:14, 4030:16, 4030:22, 4031:13, 4031:19, 4031:24, 4032:9, 4038:10, 4038:25, 4077:12
**interviewed** [6] - 4028:12, 4037:23, 4038:9, 4038:11, 4038:14, 4039:9
**interviews** [10] - 3986:3, 4027:21, 4027:22, 4027:24, 4028:1, 4029:22, 4031:25, 4032:2, 4038:2
**introduce** [2] - 4085:3, 4085:10
**introduced** [10] - 3902:1, 3903:17, 3974:22, 3975:13, 3980:7, 4021:6, 4022:1, 4027:17, 4032:22, 4033:22
**introducing** [3] - 3903:14, 4075:15, 4086:4
**introduction** [1] - 4033:7
**investigate** [1] - 3985:25
**Investigation** [5] - 3950:23, 3969:14, 4028:20, 4031:4, 4032:7
**investigation** [22] - 3986:1, 4021:17, 4028:3, 4031:15, 4034:19, 4035:4, 4043:14, 4044:1, 4044:10, 4044:18, 4047:4, 4052:24, 4062:22, 4063:15, 4066:2, 4074:6, 4074:20, 4076:11, 4076:18, 4077:12, 4077:18, 4077:21
**investigations** [3] - 4028:2, 4031:5, 4031:6
**investigative** [5] - 4033:25, 4038:3, 4044:7, 4046:12, 4047:11
**investigator** [1] - 4028:24
**investment** [1] - 3898:8
**investor** [1] - 3898:7
**invoices** [4] - 4002:11, 4005:14, 4014:15, 4015:16
**involved** [2] - 4043:25, 4077:22
**involvement** [1] - 4031:2
**involving** [4] - 3952:2, 3988:16, 3988:17, 4005:19
**iPhone** [9] - 3976:22, 3976:23, 3977:12, 3979:12, 3981:9, 3984:9, 4088:16, 4088:24, 4089:1

**iPhones** [3] - 3979:20, 3979:22, 3980:4
**IRS** [5] - 3985:18, 3985:21, 4027:20, 4030:12, 4073:13
**Island** [1] - 3973:19
**Islandia** [1] - 3894:22
**Isle** [38] - 3913:6, 3913:11, 3915:23, 3915:24, 3916:19, 3916:23, 3917:3, 3917:7, 3920:15, 3923:13, 3923:16, 3923:20, 3924:5, 3924:7, 3924:11, 3927:8, 3929:3, 3933:13, 3933:16, 3933:21, 3934:2, 3934:8, 3934:18, 3934:22, 3988:23, 3989:4, 3989:15, 3990:18, 3991:14, 3994:18, 3994:21, 3995:11, 3996:16, 4003:12, 4045:19
**Islip** [3] - 3894:6, 3894:15, 3895:21
**Israel** [2] - 4016:25, 4017:8
**issue** [16] - 3896:4, 3898:22, 3899:17, 3901:17, 3902:15, 3902:17, 3903:4, 3971:11, 4084:9, 4085:2, 4085:13, 4087:6, 4087:11, 4087:17, 4087:22
**issues** [4] - 3971:15, 3973:23, 4016:11, 4084:3
**IT** [3] - 4053:18, 4053:21, 4054:2
**items** [1] - 3979:17
**itself** [9] - 3901:8, 3976:24, 3977:11, 3979:3, 3979:10, 3981:10, 3981:21, 4024:23, 4036:7
**IV** [24] - 3913:6, 3913:7, 3913:11, 3915:23, 3915:24, 3916:23, 3920:15, 3923:13, 3923:16, 3923:20, 3924:5, 3924:7, 3924:11, 3927:8, 3929:3, 3933:21, 3934:2, 3934:8, 3934:18, 3934:22, 3994:19, 3995:11, 4003:12
**IV's** [1] - 3996:16

**J**

**JAMES** [1] - 3894:16
**January** [6] - 3939:17, 3939:20, 4054:12, 4054:13, 4069:22, 4072:23
**Jeff** [1] - 4054:1
**John** [11] - 4011:16, 4011:17, 4012:13, 4014:5,

4033:11, 4038:9, 4038:14, 4039:8, 4039:17, 4039:20, 4039:22
**Johnson** [2] - 3939:11, 3939:12
**join** [1] - 4080:10
**joint** [1] - 4031:5
**jointly** [3] - 4028:17, 4028:20, 4032:6
**joke** [1] - 3897:1
**JOSEPH** [1] - 3894:11
**Josephine** [1] - 4052:18
**Joshua** [2] - 3985:8, 3985:14
**JOSHUA** [2] - 3985:9, 4090:23
**Jowdy** [7] - 4046:2, 4046:4, 4046:5, 4046:8, 4077:16, 4077:19, 4081:8
**Judge** [35] - 3897:15, 3903:3, 3903:12, 3903:13, 3904:1, 3904:5, 3906:20, 3908:3, 3917:24, 3920:12, 3922:14, 3925:14, 3931:11, 3936:5, 3941:11, 3950:8, 3987:10, 4023:4, 4023:13, 4037:17, 4049:11, 4051:20, 4059:11, 4060:3, 4072:10, 4075:16, 4080:24, 4081:15, 4082:25, 4084:2, 4085:11, 4085:19, 4085:23, 4086:11, 4087:9
**judge** [12] - 3911:11, 3911:14, 3940:18, 3944:6, 3963:19, 3966:24, 3968:10, 3972:16, 3989:1, 4010:11, 4081:5, 4086:21
**JUDGE** [1] - 3894:11
**judgment** [1] - 3964:23
**July** [19] - 3938:15, 3938:23, 3995:9, 3995:10, 3997:10, 3998:20, 3999:8, 4000:2, 4007:14, 4007:17, 4007:20, 4043:6, 4045:13, 4046:21, 4047:8, 4047:15, 4047:16, 4047:25, 4048:11
**jump** [2] - 3960:3, 4054:8
**June** [6] - 3894:9, 3916:20, 3939:20, 4044:2, 4089:7
**juror** [1] - 3897:3
**JURORS** [1] - 3904:19
**jurors** [3] - 3896:6, 3952:24, 3957:11
**Jury** [1] - 4059:14
**jury** [42] - 3894:11, 3896:5, 3903:4, 3904:14, 3904:16, 3904:18, 3905:4, 3905:15, 3906:25, 3911:21, 3913:21, 3913:23,

3922:18, 3925:18, 3934:13, 3937:12, 3945:16, 3952:9, 3953:24, 3956:8, 3957:12, 3967:3, 4015:2, 4018:21, 4020:8, 4020:11, 4021:21, 4022:24, 4022:25, 4025:22, 4033:9, 4042:21, 4049:11, 4051:21, 4061:1, 4066:7, 4066:10, 4079:5, 4082:2, 4084:18, 4087:13
**jury's** [1] - 4025:19

## K

**Kaiser** [14] - 3919:5, 3919:6, 4004:7, 4011:16, 4011:17, 4014:5, 4033:11, 4038:9, 4038:14, 4039:1, 4039:8, 4039:18, 4039:20, 4039:22
**Kaiser's** [1] - 4012:13
**Kau** [2] - 3916:15, 4002:20
**keep** [5] - 3908:18, 3922:19, 3983:21, 4045:3, 4060:4
**keeps** [1] - 3995:15
**KELLY** [1] - 3894:14
**Kennedy** [4] - 4043:23, 4044:10, 4044:12, 4044:20
**kenner** [1] - 4001:9
**KENNER** [1] - 3894:7
**Kenner** [107] - 3894:23, 3898:6, 3898:14, 3898:18, 3899:11, 3899:15, 3899:17, 3900:21, 3900:23, 3900:24, 3901:1, 3902:18, 3902:21, 3902:23, 3904:6, 3907:6, 3911:3, 3917:20, 3936:22, 3937:2, 3939:15, 3939:18, 3942:11, 3947:5, 3951:7, 3955:2, 3955:24, 3959:17, 3965:4, 3968:5, 3990:24, 3990:25, 3991:1, 3992:4, 3992:11, 3993:15, 3993:16, 3993:20, 3994:1, 3994:8, 3994:25, 3995:5, 3995:19, 3995:20, 3995:25, 3996:24, 3999:5, 3999:24, 4001:6, 4002:24, 4003:1, 4003:2, 4003:18, 4003:24, 4004:15, 4005:5, 4005:13, 4006:22, 4007:23, 4008:13, 4008:15, 4011:11, 4011:12, 4011:18, 4012:11, 4013:11, 4014:4, 4018:10, 4019:10, 4021:12, 4021:24,

4023:17, 4023:18, 4024:8, 4024:15, 4024:23, 4024:25, 4026:16, 4037:8, 4046:9, 4047:20, 4048:13, 4048:24, 4050:3, 4050:22, 4051:5, 4055:1, 4055:5, 4056:7, 4057:9, 4061:15, 4062:9, 4073:22, 4074:7, 4074:17, 4076:16, 4076:17, 4080:20, 4083:6, 4083:21, 4084:4, 4084:11, 4084:21, 4085:4, 4085:8, 4088:4
**Kenner's** [27] - 3899:3, 3899:6, 3899:8, 3899:24, 3907:10, 3907:14, 3951:24, 3952:12, 3960:7, 3994:19, 3995:1, 4001:1, 4001:3, 4008:14, 4011:19, 4012:15, 4012:17, 4013:3, 4013:18, 4018:4, 4018:13, 4050:5, 4054:14, 4057:13, 4061:9, 4074:24, 4084:24
**Kenner/Tommy** [3] - 3936:14, 3940:24, 3941:19
**Kenners** [1] - 3995:7
**Kenners'** [1] - 3979:12
**Kenneth** [1] - 4046:2
**Kevner** [1] - 4010:25
**Kim** [2] - 3961:18, 3962:5
**kind** [6] - 3930:3, 3978:18, 3979:19, 3979:21, 3982:1, 4060:8
**kindly** [2] - 3918:3, 3940:22
**Kinetic** [4] - 4005:12, 4005:14, 4005:20, 4007:9
**knowledge** [21] - 3952:9, 3952:16, 3955:22, 3956:3, 3964:24, 4037:13, 4043:18, 4043:22, 4044:23, 4044:24, 4045:2, 4054:20, 4054:23, 4055:10, 4056:2, 4056:11, 4056:17, 4056:19, 4056:20, 4078:16
**known** [3] - 3913:6, 4035:5, 4043:9
**Komatireddy** [3] - 3908:21, 3953:7, 4020:22
**KOMATIREDDY** [83] - 3894:16, 3903:3, 3904:10, 3905:22, 3906:16, 3906:22, 3907:2, 3908:3, 3908:24, 3911:9, 3911:20, 3913:14, 3913:20, 3913:24, 3917:21, 3920:12, 3920:13, 3922:11, 3922:17, 3925:11, 3925:17, 3929:5,

3930:25, 3931:8, 3932:5, 3936:1, 3937:11, 3940:14, 3941:23, 3944:7, 3944:10, 3944:15, 3944:17, 3945:16, 3945:17, 3949:18, 3949:25, 3950:12, 3953:10, 3958:17, 3961:8, 3968:15, 3968:18, 3968:23, 3969:12, 3971:9, 3972:3, 3972:13, 3985:4, 3985:8, 3985:16, 3987:8, 3987:18, 3988:3, 3988:11, 3989:2, 4010:8, 4010:14, 4015:1, 4015:4, 4015:7, 4016:21, 4016:24, 4018:15, 4022:23, 4032:18, 4041:21, 4049:5, 4051:16, 4061:19, 4062:12, 4064:13, 4069:8, 4072:4, 4073:15, 4075:16, 4075:22, 4078:24, 4079:3, 4090:5, 4090:18, 4090:25, 4091:2
**KOMATUREDDY** [1] - 4067:21
**Kristen** [1] - 4088:7
**Kristie** [2] - 3992:5, 3992:7

## L

**L-5106** [2] - 3908:1, 4091:13
**lack** [1] - 3918:19
**laid** [1] - 3928:22
**land** [2] - 3996:10, 3996:11
**laptop** [5] - 3970:23, 3970:25, 3971:1, 3971:3, 3977:5
**LARUSSO** [80] - 3895:2, 3895:4, 3897:14, 3904:5, 3906:10, 3906:19, 3907:22, 3911:15, 3913:16, 3917:23, 3922:13, 3925:13, 3929:7, 3929:9, 3930:2, 3931:1, 3931:11, 3936:3, 3940:17, 3950:2, 4020:7, 4040:4, 4040:6, 4041:18, 4042:20, 4043:8, 4045:3, 4047:23, 4049:1, 4049:4, 4049:11, 4051:12, 4051:20, 4052:6, 4056:13, 4058:7, 4059:6, 4059:10, 4060:3, 4060:6, 4060:19, 4061:3, 4061:10, 4062:10, 4064:24, 4065:6, 4066:1, 4066:4, 4066:21, 4068:3, 4069:5, 4069:24, 4070:2, 4071:1, 4072:7, 4072:9, 4072:13, 4073:19,

4075:18, 4076:3, 4076:24, 4077:1, 4078:22, 4080:9, 4081:11, 4082:9, 4082:15, 4082:24, 4083:5, 4083:11, 4083:13, 4083:18, 4083:23, 4084:1, 4085:23, 4086:10, 4086:18, 4086:25, 4087:9, 4091:6
**LaRusso** [51] - 3898:23, 3900:8, 3902:19, 3902:20, 3903:21, 3903:25, 3957:2, 3957:9, 3957:14, 3957:15, 3957:24, 3958:3, 3958:7, 3958:15, 3958:24, 3959:1, 3960:19, 3961:2, 3961:6, 3961:12, 3961:22, 3961:24, 3962:1, 3966:9, 3966:12, 3966:24, 3967:1, 3967:8, 3968:10, 3968:13, 3971:13, 3971:17, 3971:19, 3976:3, 3982:9, 3982:17, 3982:18, 3984:4, 3984:6, 3987:12, 3987:14, 3988:5, 4010:10, 4016:19, 4018:24, 4019:8, 4040:3, 4079:18, 4085:20, 4090:15, 4090:22
**last** [23] - 3904:6, 3904:24, 3915:14, 3918:6, 3930:15, 3932:23, 3933:4, 3965:17, 3965:24, 3966:4, 3966:22, 3967:14, 3967:25, 3968:21, 3969:6, 3985:13, 4015:4, 4016:22, 4043:10, 4063:6, 4067:19, 4073:1, 4082:18
**lastly** [2] - 4051:2, 4071:21
**late** [2] - 3903:8, 4008:2
**latter** [1] - 3965:22
**Law** [1] - 4016:16
**law** [16] - 3897:17, 3907:4, 3907:9, 3907:13, 3939:2, 3947:24, 3948:6, 3948:10, 4005:12, 4063:1, 4063:13, 4077:6, 4077:9, 4077:13, 4078:13, 4079:9
**lawsuit** [2] - 4005:19, 4014:19
**lawyers** [5] - 4006:4, 4007:7, 4078:2, 4078:6, 4080:3
**lay** [4] - 3899:6, 3899:7, 4006:12, 4084:13
**laying** [2] - 3918:9, 4085:9
**lead** [3] - 3897:4, 3897:8, 3905:8
**leading** [1] - 3949:15
**learn** [6] - 4043:14, 4044:10, 4068:10, 4076:11, 4077:17, 4077:23

**learned** [2] - 3904:24, 4044:20
**learning** [1] - 4044:19
**least** [11] - 3900:5, 3900:14, 3918:18, 3919:10, 3919:12, 3937:1, 3975:1, 4022:17, 4059:10, 4080:23, 4084:16
**leave** [3] - 4018:19, 4081:4, 4084:25
**Led** [1] - 4003:18
**Lee** [2] - 3992:5, 3992:8
**left** [14] - 3903:7, 3914:3, 3915:2, 3918:19, 3926:8, 3982:20, 3998:17, 3999:3, 3999:22, 4006:3, 4006:10, 4006:19, 4018:21, 4063:6
**legible** [1] - 3960:10
**Lehman** [7] - 3964:9, 3964:10, 3964:12, 4000:18, 4036:14, 4049:23, 4049:24
**Lemon** [1] - 4052:18
**lend** [1] - 4024:23
**lender** [1] - 4056:24
**length** [1] - 3979:1
**letter** [1] - 3902:11
**level** [1] - 4060:23
**likelihood** [1] - 4081:12
**likewise** [1] - 4051:4
**limit** [1] - 4066:16
**limited** [1] - 3955:12
**Limited** [5] - 3928:1, 3928:10, 3935:15, 3935:20, 3938:18
**line** [32] - 3914:5, 3914:6, 3915:12, 3921:11, 3921:20, 3922:1, 3922:4, 3923:5, 3923:8, 3924:15, 3924:24, 3926:18, 3927:7, 3927:14, 3927:15, 3927:17, 3936:18, 3953:16, 3988:22, 3989:13, 3989:16, 3994:17, 3995:7, 3995:10, 3996:7, 3999:11, 4000:4, 4000:5, 4003:7, 4003:8, 4003:11, 4016:22
**lines** [13] - 3896:8, 3896:16, 3898:25, 3904:25, 3920:23, 3926:3, 3927:9, 3998:21, 3999:2, 3999:10, 3999:15, 3999:21, 4000:9
**list** [7] - 3979:9, 3986:24, 4015:8, 4015:16, 4036:22, 4036:23, 4081:19
**listed** [4] - 3934:9, 3999:7, 4000:1, 4086:12
**listen** [2] - 4079:25,

4084:12
**listening** [1] - 4080:16
**lists** [1] - 4016:13
**LLC** [27] - 3911:1, 3913:6, 3913:7, 3915:23, 3915:24, 3916:11, 3916:15, 3916:19, 3916:23, 3917:3, 3917:7, 3917:10, 3923:13, 3927:8, 3933:5, 3933:14, 3933:22, 3934:2, 3935:3, 3935:5, 3939:7, 3948:22, 3948:23, 3960:2, 3960:18, 4053:11
**LLC's** [1] - 3934:8
**loan** [33] - 3899:22, 3952:2, 3964:9, 3964:12, 3964:13, 3965:20, 3996:2, 3997:22, 3998:1, 3998:5, 3998:20, 4000:20, 4001:7, 4001:9, 4008:17, 4011:6, 4011:8, 4011:10, 4012:23, 4013:21, 4034:3, 4035:5, 4049:23, 4049:24, 4056:24, 4057:4, 4057:5, 4057:9, 4057:19, 4057:22, 4057:23, 4058:3, 4058:12
**Loan** [2] - 4000:13, 4000:16
**loaning** [1] - 3952:19
**loans** [3] - 3999:16, 4000:10, 4050:3
**located** [2] - 3907:6, 4030:19
**location** [1] - 3989:6
**look** [55] - 3912:13, 3915:21, 3918:3, 3918:5, 3923:11, 3925:19, 3933:13, 3934:7, 3936:25, 3940:22, 3943:2, 3943:12, 3947:5, 3948:5, 3949:14, 3953:1, 3955:9, 3962:10, 3967:19, 3986:3, 3988:17, 3990:21, 4000:13, 4001:17, 4016:5, 4016:12, 4017:25, 4020:25, 4021:23, 4022:3, 4022:5, 4023:6, 4025:3, 4025:10, 4025:16, 4027:20, 4032:24, 4033:23, 4035:15, 4036:6, 4036:25, 4042:16, 4047:22, 4055:11, 4057:16, 4064:4, 4067:16, 4067:19, 4068:4, 4074:21, 4074:24, 4075:5, 4075:10, 4086:17, 4088:25
**looked** [11] - 3914:14, 3961:14, 3962:19, 3989:23, 4012:9, 4034:17, 4036:18, 4041:4, 4074:15, 4074:23, 4076:19

**looking** [38] - 3897:17, 3901:16, 3912:2, 3914:20, 3922:20, 3923:9, 3925:3, 3934:15, 3941:25, 3942:23, 3943:8, 3944:2, 3945:25, 3946:22, 3957:20, 3958:1, 3959:7, 3977:15, 3977:17, 3977:20, 3986:13, 3986:19, 3988:15, 3989:24, 3990:2, 3991:23, 3992:7, 3992:20, 4005:24, 4015:13, 4034:22, 4034:25, 4036:25, 4061:6, 4061:10, 4069:2, 4076:14, 4086:1
**looks** [2] - 3896:10, 3982:20
**loose** [1] - 3904:11
**lost** [1] - 3903:20
**lowman** [1] - 3961:18
**LOWMAN** [1] - 3961:18
**Lowman** [1] - 3962:5
**Lucas** [2] - 4009:11, 4009:22
**lunch** [4] - 3904:4, 3904:7, 4018:16, 4018:20
**luncheon** [1] - 4019:11

**M**

**Magazine** [1] - 3901:19
**Magence** [5] - 4010:25, 4011:3, 4056:16, 4056:23, 4057:16
**mail** [10] - 3977:4, 3978:16, 3982:8, 3983:19, 3983:21, 3992:4, 3992:15, 3992:23, 3992:25, 4041:7
**mailed** [1] - 3899:2
**mails** [2] - 3977:4, 3982:6
**maintained** [2] - 4038:4, 4038:5
**majority** [2] - 3909:13, 3937:20
**Makika** [25] - 3916:11, 3929:3, 3934:18, 3934:22, 3953:21, 3961:14, 3961:19, 3962:6, 3962:11, 3962:15, 3962:19, 3963:2, 3963:14, 3966:15, 3996:20, 3997:5, 4003:13, 4004:11, 4004:14, 4047:15, 4048:11, 4048:12, 4048:18, 4048:24, 4048:25
**man** [2] - 4046:2, 4055:21
**manage** [1] - 3903:7
**Management** [50] -

3927:25, 3928:10, 3928:14, 3929:2, 3933:20, 3933:22, 3934:1, 3934:9, 3934:18, 3934:21, 3935:15, 3935:20, 3935:23, 3937:22, 3938:14, 3938:18, 3942:1, 3953:22, 3958:9, 3959:8, 3962:12, 3962:15, 3962:21, 3962:25, 3963:11, 3963:15, 3964:1, 3966:5, 3967:20, 3968:1, 4002:1, 4002:8, 4021:8, 4022:17, 4025:23, 4026:9, 4042:4, 4042:24, 4043:3, 4043:5, 4043:11, 4047:20, 4047:25, 4050:14, 4055:19, 4061:15, 4062:3, 4073:22, 4074:8, 4076:16

**management** [2] - 4050:9, 4062:8

**manipulate** [2] - 3981:8, 3981:11

**manipulated** [1] - 3982:6

**manipulating** [1] - 3983:8

**manipulation** [1] - 3982:1

**manpower** [1] - 4019:4

**mapping** [1] - 3991:17

**March** [15] - 3917:11, 3926:16, 3927:18, 3928:11, 3944:2, 3954:18, 3954:21, 3987:3, 3988:24, 4013:1, 4013:7, 4067:20, 4072:16, 4072:24

**mark** [3] - 3903:12, 4006:3, 4006:5

**Mark** [2] - 3941:4, 3941:7

**marked** [21] - 3903:18, 3910:8, 3911:21, 3912:25, 3916:6, 3920:18, 3927:19, 3928:6, 3938:9, 3938:25, 3940:2, 3958:8, 3986:7, 3987:19, 4009:16, 4021:24, 4041:16, 4051:9, 4058:20, 4067:7, 4069:6

**Marketing** [2] - 4002:12, 4069:17

**MARSHAL** [1] - 4019:4

**Mary** [1] - 3895:20

**match** [1] - 4007:11

**matched** [1] - 3921:16

**matches** [1] - 3921:25

**material** [3] - 3903:9, 3903:22, 4022:24

**materiality** [2] - 4033:24, 4034:7

**materials** [1] - 4018:24

**math** [3] - 3966:9, 3975:16, 3975:17

**mathematician** [1] -

3963:12

**Matt** [2] - 4031:3, 4031:16

**matter** [8] - 3957:3, 4027:15, 4028:19, 4030:4, 4031:22, 4048:16, 4078:15, 4089:6

**matters** [1] - 3898:8

**Matthew** [3] - 4029:6, 4029:7, 4030:24

**Maureen** [2] - 4063:7, 4063:22

**mean** [13] - 3928:3, 3953:19, 3973:2, 3973:13, 3981:11, 3982:19, 4027:5, 4028:1, 4031:8, 4037:2, 4037:4, 4038:3, 4047:11

**means** [4] - 3923:17, 4041:10, 4042:12, 4079:7

**meant** [2] - 3931:5, 3982:10

**meantime** [1] - 3925:19

**mechanical** [1] - 3895:25

**meeting** [1] - 4006:13

**members** [2] - 3904:18, 4079:5

**memo** [1] - 3915:12

**memorandum** [4] - 4030:12, 4030:13, 4030:14, 4030:16

**Memorial** [1] - 3894:21

**memory** [4] - 4085:11, 4086:6, 4086:10, 4087:20

**mentioned** [12] - 3921:17, 3932:6, 3940:5, 3940:9, 3951:9, 4051:22, 4053:5, 4054:12, 4054:18, 4087:4

**merits** [1] - 3896:19

**message** [21] - 3900:11, 3900:12, 3900:17, 3901:3, 3902:1, 3902:3, 3976:19, 3977:11, 3978:7, 3979:10, 3981:8, 3981:13, 3981:14, 3981:15, 3981:17, 3981:20, 3983:6, 3983:14, 3983:20, 3983:21

**messages** [36] - 3897:17, 3897:18, 3898:5, 3898:10, 3899:1, 3899:9, 3899:13, 3899:18, 3900:3, 3900:8, 3900:21, 3901:2, 3901:11, 3902:22, 3902:23, 3903:2, 3970:22, 3972:6, 3976:12, 3976:15, 3976:22, 3977:6, 3977:25, 3978:8, 3978:12, 3978:17, 3978:25, 3980:6, 3980:8, 3981:5, 3981:9, 3981:14, 3982:10, 3983:12, 3984:19, 3984:23

**met** [2] - 3898:20, 3901:12

**method** [1] - 3977:6

**Metro** [2] - 4015:20, 4015:21

**Mexican** [2] - 4017:7, 4017:15

**Mexico** [3] - 3901:25, 4012:8, 4017:22

**mic** [1] - 3969:9

**Michael** [13] - 3911:25, 3912:7, 3921:6, 3924:15, 3924:24, 3925:8, 3926:18, 3927:13, 3942:10, 3954:21, 3995:10, 4002:11, 4003:11

**Michigan** [1] - 3901:20

**might** [9] - 3897:1, 3897:2, 3903:13, 3966:13, 4036:18, 4037:4, 4047:11, 4085:10, 4089:1

**mike** [1] - 3908:18

**million** [10] - 3923:14, 3937:25, 3968:7, 3968:9, 3996:18, 4000:18, 4000:22, 4045:13, 4045:21, 4068:10

**mine** [1] - 3953:9

**Mineola** [1] - 3895:3

**minute** [1] - 3991:3

**minutes** [6] - 3957:7, 4015:5, 4045:6, 4049:20, 4060:2, 4087:16

**Mis** [1] - 3941:9

**Miskiewicz** [6] - 4023:10, 4023:14, 4060:20, 4085:1, 4085:14, 4085:25

**MISKIEWICZ** [11] - 3894:16, 3897:13, 4060:11, 4060:17, 4083:22, 4084:8, 4085:17, 4087:15, 4088:6, 4088:12, 4088:22

**misled** [1] - 3966:13

**mispronounce** [1] - 4045:14

**missing** [1] - 3919:22

**misspoke** [1] - 4055:17

**mistake** [1] - 3963:20

**mistaken** [1] - 3983:1

**mobile** [1] - 3983:4

**MOI** [2] - 4030:13, 4031:12

**moment** [12] - 3918:8, 3929:7, 3960:19, 3972:25, 3984:4, 4001:15, 4016:11, 4030:23, 4037:17, 4057:12, 4069:5, 4076:24

**Monday** [5] - 4081:23, 4082:17, 4083:2, 4083:8, 4083:25

**monetary** [2] - 4003:3, 4035:9

**money** [136] - 3898:7,

3898:14, 3898:15, 3899:23, 3900:2, 3900:24, 3901:5, 3911:7, 3911:25, 3925:25, 3926:14, 3930:12, 3934:21, 3937:19, 3937:21, 3938:3, 3938:7, 3942:4, 3942:7, 3942:17, 3942:25, 3943:3, 3943:9, 3943:15, 3944:18, 3945:8, 3945:23, 3946:1, 3946:9, 3946:10, 3946:14, 3946:16, 3946:17, 3946:18, 3946:22, 3946:24, 3947:2, 3947:7, 3948:5, 3948:16, 3948:22, 3949:5, 3949:10, 3951:14, 3951:18, 3954:6, 3955:4, 3955:10, 3955:12, 3955:18, 3955:19, 3955:20, 3955:22, 3955:24, 3963:10, 3964:16, 3966:15, 3989:5, 3990:23, 3995:16, 3995:17, 3996:17, 3997:5, 3997:14, 3998:8, 3998:18, 4000:21, 4000:23, 4001:5, 4001:6, 4001:11, 4001:12, 4002:16, 4004:1, 4004:3, 4004:6, 4004:9, 4004:12, 4004:22, 4004:25, 4005:9, 4005:11, 4006:5, 4007:14, 4007:20, 4007:22, 4007:25, 4008:7, 4010:17, 4010:21, 4011:12, 4011:20, 4011:24, 4012:1, 4012:11, 4012:16, 4012:17, 4012:25, 4013:6, 4013:9, 4013:14, 4013:19, 4013:25, 4014:10, 4014:18, 4014:21, 4015:25, 4016:15, 4017:4, 4024:19, 4025:13, 4025:17, 4036:12, 4046:9, 4048:17, 4050:25, 4055:8, 4055:18, 4055:21, 4056:3, 4056:18, 4064:7, 4068:11, 4068:14, 4068:23, 4074:15, 4074:16, 4076:19, 4076:20

**moneys** [6] - 4046:24, 4047:14, 4047:19, 4049:22, 4052:2, 4068:5

**monies** [6] - 3952:17, 3965:18, 4032:23, 4037:8, 4049:14, 4049:24

**Monjus** [1] - 4053:11

**month** [1] - 4072:2

**monthly** [1] - 3914:14

**months** [2] - 3949:15, 3949:22

**morning** [18] - 3896:22, 3903:23, 3904:18, 3904:19, 3904:21, 3950:19, 3950:20, 3956:6, 4045:11, 4059:20, 4060:24, 4079:22, 4079:23, 4079:24, 4080:15, 4082:10, 4082:21, 4083:25
**mortgage** [17] - 3996:14, 3996:15, 3997:21, 4008:15, 4008:17, 4008:18, 4008:21, 4009:2, 4009:10, 4009:13, 4009:21, 4010:1, 4011:21, 4012:5, 4012:22, 4013:4, 4013:20
**mortgaged** [1] - 3996:11
**Mosquito** [3] - 4017:23, 4017:24, 4018:9
**most** [2] - 3899:12, 3947:2
**mostly** [1] - 3943:5
**motion** [1] - 4080:4
**Motor** [1] - 4016:17
**Motorsports** [1] - 4001:14
**move** [14] - 3904:12, 3905:22, 3906:16, 3907:19, 3944:15, 3957:18, 3958:8, 3981:16, 4023:11, 4024:5, 4058:8, 4084:23, 4088:17, 4088:18
**moves** [14] - 3906:8, 3911:9, 3913:14, 3917:21, 3922:11, 3925:11, 3929:5, 3936:1, 3940:14, 3949:25, 3971:9, 3987:8, 3988:3, 4010:8
**MR** [222] - 3896:13, 3897:13, 3897:14, 3897:15, 3903:6, 3904:5, 3906:10, 3906:11, 3906:19, 3906:21, 3906:23, 3907:22, 3907:23, 3911:11, 3911:14, 3911:15, 3913:16, 3913:17, 3917:23, 3917:24, 3918:2, 3920:4, 3920:8, 3922:13, 3922:14, 3925:13, 3925:14, 3929:7, 3929:9, 3930:2, 3931:1, 3931:11, 3936:3, 3936:5, 3936:9, 3937:5, 3940:17, 3940:18, 3940:21, 3941:11, 3941:22, 3944:6, 3944:9, 3944:14, 3944:16, 3950:2, 3950:4, 3950:8, 3950:11, 3950:18, 3953:9, 3953:11, 3956:4, 3957:2, 3957:9, 3957:15, 3957:24, 3958:3,

3958:7, 3958:15, 3958:21, 3958:24, 3959:1, 3960:19, 3961:2, 3961:6, 3961:9, 3961:12, 3961:22, 3961:24, 3962:1, 3966:9, 3966:12, 3966:24, 3967:1, 3967:8, 3968:10, 3968:13, 3968:21, 3971:13, 3971:17, 3971:19, 3971:23, 3972:16, 3972:18, 3976:3, 3982:9, 3982:17, 3982:18, 3984:4, 3984:6, 3987:10, 3987:14, 3988:5, 3988:6, 3988:25, 4010:10, 4010:11, 4016:19, 4018:22, 4019:6, 4019:8, 4020:6, 4020:7, 4020:16, 4020:22, 4020:24, 4023:3, 4023:5, 4023:13, 4023:15, 4036:2, 4037:17, 4039:6, 4040:1, 4040:4, 4040:6, 4041:18, 4041:22, 4041:24, 4042:20, 4043:8, 4045:3, 4047:23, 4048:6, 4049:1, 4049:4, 4049:7, 4049:11, 4051:12, 4051:15, 4051:20, 4052:6, 4056:13, 4058:7, 4059:6, 4059:10, 4059:15, 4059:18, 4059:22, 4060:1, 4060:3, 4060:4, 4060:6, 4060:11, 4060:12, 4060:17, 4060:19, 4061:3, 4061:10, 4061:20, 4062:10, 4062:14, 4064:24, 4065:6, 4066:1, 4066:4, 4066:21, 4067:24, 4068:3, 4069:5, 4069:10, 4069:24, 4070:2, 4071:1, 4072:7, 4072:9, 4072:10, 4072:13, 4073:19, 4075:18, 4075:25, 4076:3, 4076:24, 4077:1, 4078:22, 4080:5, 4080:9, 4080:13, 4080:16, 4080:19, 4080:21, 4080:24, 4081:5, 4081:11, 4082:9, 4082:15, 4082:24, 4083:5, 4083:11, 4083:13, 4083:18, 4083:22, 4083:23, 4084:1, 4084:8, 4085:1, 4085:17, 4085:18, 4085:23, 4086:10, 4086:18, 4086:25, 4087:9, 4087:11, 4087:15, 4087:20, 4088:6, 4088:10, 4088:12, 4088:20, 4088:22, 4088:23, 4090:7, 4090:9, 4090:11, 4090:13, 4090:15, 4090:20, 4090:22, 4091:4, 4091:6

**MS** [81] - 3903:3, 3904:10, 3905:22, 3906:16, 3906:22, 3907:2, 3908:3, 3908:24, 3911:9, 3911:20, 3913:14, 3913:20, 3913:24, 3917:21, 3920:12, 3920:13, 3922:11, 3922:17, 3925:11, 3925:17, 3929:5, 3930:25, 3931:8, 3932:5, 3936:1, 3937:11, 3940:14, 3941:23, 3944:7, 3944:10, 3944:15, 3944:17, 3945:16, 3945:17, 3949:18, 3949:25, 3950:12, 3953:10, 3958:17, 3961:8, 3968:15, 3968:18, 3968:23, 3969:12, 3971:9, 3972:3, 3972:13, 3985:16, 3987:8, 3987:18, 3988:3, 3988:11, 3989:2, 4010:8, 4010:14, 4015:1, 4015:4, 4015:7, 4016:21, 4016:24, 4018:15, 4022:23, 4032:18, 4041:21, 4049:5, 4051:16, 4061:19, 4062:12, 4064:13, 4067:21, 4069:8, 4072:4, 4073:15, 4075:16, 4075:22, 4078:24, 4079:3, 4090:5, 4090:18, 4090:25, 4091:2
**multiple** [2] - 3912:20, 3915:19
**Murray** [8] - 3943:8, 3944:2, 3944:5, 3996:6, 4008:7, 4013:6, 4013:15, 4055:3
**Murray's** [1] - 4013:1
**must** [1] - 3897:22
**Mutual** [1] - 3935:3, 3935:6

## N

**Na'alehu** [5] - 3917:10, 3925:25, 3926:6, 3926:20, 3926:22
**name** [31] - 3908:13, 3914:5, 3914:7, 3914:8, 3916:11, 3922:6, 3936:22, 3936:25, 3941:19, 3951:6, 3968:22, 3969:6, 3984:14, 3985:12, 3985:13, 3993:23, 3994:8, 3995:24, 4011:8, 4040:18, 4043:23, 4044:12, 4044:13, 4046:2, 4052:16, 4053:14, 4053:16, 4055:22
**named** [3] - 3943:17,

3943:21, 4028:24
**names** [2] - 3910:13, 3910:22
**Nash** [7] - 4005:9, 4021:8, 4022:18, 4025:14, 4025:22, 4043:2, 4074:15
**Nash's** [1] - 4076:19
**National** [3] - 3990:9, 3990:12, 3994:22
**nature** [11] - 3902:16, 3909:21, 3952:20, 3975:7, 3983:9, 3983:17, 3986:16, 4030:11, 4034:3, 4077:14, 4085:9
**necessarily** [1] - 3920:1
**necessary** [1] - 4087:19
**need** [13] - 3898:14, 3900:2, 3901:6, 3904:12, 3950:6, 4006:3, 4018:24, 4028:3, 4052:4, 4066:11, 4074:4, 4086:2, 4088:11
**net** [5] - 3933:4, 3934:7, 3934:9, 3934:23, 3953:22
**never** [7] - 3930:2, 3964:9, 3979:8, 3984:11, 4079:11, 4085:17, 4087:18
**NEW** [1] - 3894:1
**New** [7] - 3894:6, 3894:15, 3895:21, 3901:25, 3973:16, 3973:18, 4028:25
**next** [27] - 3905:21, 3915:8, 3915:9, 3915:10, 3923:6, 3924:23, 3929:12, 3930:19, 3931:12, 3932:20, 3944:3, 3956:10, 3965:6, 3965:17, 3965:24, 3968:17, 3985:7, 3989:1, 4003:16, 4008:10, 4010:23, 4035:17, 4080:20, 4081:20, 4082:22, 4082:25, 4083:12
**Nicholas** [2] - 3948:15, 4063:9
**nickel** [1] - 4006:11
**night** [4] - 3904:24, 3930:15, 4080:1, 4082:9
**nine** [1] - 3905:16
**nine-and-a-half** [1] - 3905:16
**Nolan** [1] - 3996:7
**non** [1] - 3901:22
**non-computer** [1] - 3901:22
**none** [2] - 3901:3, 4078:24
**Northern** [29] - 3912:15, 3912:16, 3912:20, 3913:5, 3913:9, 3913:12, 3916:12, 3916:15, 3916:19, 3916:23, 3920:21, 3920:23, 3921:13,

3921:17, 3922:1, 3922:9, 3923:22, 3927:6, 3927:21, 3933:17, 3962:6, 3988:22, 3989:13, 3990:3, 3994:17, 3995:10, 3996:23, 3998:22, 4003:11
**note** [8] - 3900:20, 3902:8, 3923:12, 3924:4, 3924:6, 3924:16, 4034:2, 4039:14
**noted** [5] - 3896:3, 3902:4, 3910:3, 3918:23, 3924:17
**notes** [24] - 3896:18, 3902:5, 3915:11, 3945:19, 3945:21, 3945:22, 4028:12, 4028:15, 4029:13, 4029:14, 4029:15, 4029:16, 4029:23, 4030:1, 4030:3, 4030:5, 4030:6, 4030:21, 4032:2, 4038:20, 4038:22, 4038:24, 4039:15
**nothing** [8] - 3896:17, 3905:14, 4064:16, 4064:18, 4064:22, 4066:10, 4066:13, 4088:9
**noticed** [1] - 3936:13
**November** [6] - 3907:4, 3907:11, 3907:15, 3916:21, 3935:18, 4004:10
**Number** [2] - 3972:22, 3973:21
**number** [48] - 3913:8, 3914:6, 3914:8, 3916:12, 3916:16, 3916:20, 3916:24, 3917:2, 3922:5, 3922:6, 3931:1, 3931:4, 3932:14, 3932:21, 3934:4, 3939:4, 3939:8, 3939:12, 3939:15, 3939:19, 3939:24, 3939:25, 3954:11, 3954:13, 3954:14, 3957:16, 3959:2, 3964:4, 3975:3, 3975:11, 3976:21, 3984:15, 3986:23, 3992:22, 4006:22, 4006:25, 4007:1, 4022:2, 4045:7, 4071:2, 4072:6, 4072:18, 4075:17, 4075:19, 4077:17, 4078:1, 4078:6
**numbers** [14] - 3899:24, 3905:24, 3906:19, 3915:16, 3932:15, 3963:9, 3965:15, 3999:7, 3999:14, 4000:1, 4000:8, 4007:7, 4007:11, 4045:7
**NY** [3] - 3894:22, 3895:3, 3895:7

# O

**oath** [1] - 3908:6
**object** [2] - 4016:19, 4075:22
**objection** [63] - 3897:11, 3897:16, 3898:23, 3898:25, 3906:9, 3906:18, 3906:20, 3906:23, 3907:21, 3911:14, 3911:15, 3913:16, 3913:17, 3917:23, 3920:4, 3922:13, 3922:14, 3925:13, 3925:14, 3936:3, 3937:6, 3940:17, 3941:12, 3944:9, 3950:2, 3950:8, 3958:16, 3958:19, 3958:20, 3961:7, 3971:22, 3987:13, 3987:14, 3988:5, 3988:7, 4010:10, 4010:11, 4032:18, 4041:20, 4041:21, 4041:23, 4049:5, 4049:6, 4051:14, 4051:16, 4060:10, 4060:11, 4061:19, 4061:20, 4062:12, 4062:13, 4062:14, 4064:13, 4067:23, 4069:7, 4069:8, 4069:9, 4072:4, 4072:8, 4072:10, 4073:15, 4075:24, 4089:1
**objections** [3] - 3971:12, 4048:5, 4084:19
**obligated** [1] - 4032:10
**obligation** [3] - 3952:18, 4034:2, 4079:15
**obligations** [1] - 4056:8
**obtain** [3] - 3920:2, 3973:6, 3973:11
**obtained** [3] - 4025:13, 4026:23, 4057:10
**obvious** [1] - 4037:12
**obviously** [7] - 3898:4, 3898:17, 3899:5, 3901:11, 3903:14, 4084:22, 4086:16
**occasionally** [1] - 3919:21
**occasions** [2] - 4029:7, 4046:23
**occurred** [11] - 3916:1, 3928:4, 3934:17, 3957:1, 3964:12, 3973:11, 3981:5, 3982:2, 3984:11, 3984:20, 3984:24
**occurs** [1] - 3953:3
**Oceanside** [1] - 3895:7
**October** [7] - 3901:20, 3909:7, 3909:10, 3916:25, 3924:16, 4003:8, 4064:12
**OF** [3] - 3894:1, 3894:3,

3894:10
**offense** [1] - 4032:16
**offer** [7] - 3903:10, 3952:8, 3955:17, 4037:13, 4065:6, 4084:11, 4087:12
**offered** [3] - 3897:25, 3975:20, 4087:13
**offering** [1] - 3974:16, 4084:5, 4087:18
**Office** [2] - 4027:6, 4039:1
**office** [9] - 3903:8, 3948:10, 3973:16, 3973:17, 3973:18, 4027:2, 4027:5, 4028:25
**offices** [3] - 3939:2, 3947:24, 3948:6
**official** [1] - 4041:5
**often** [1] - 4031:2
**Old** [1] - 3895:3
**OLIVERAS** [1] - 3895:6
**once** [3] - 3928:12, 4018:22, 4084:21
**one** [86] - 3896:13, 3902:10, 3904:22, 3911:23, 3915:14, 3917:12, 3919:2, 3921:4, 3921:25, 3925:3, 3927:2, 3927:3, 3927:5, 3929:7, 3930:5, 3930:7, 3930:10, 3930:21, 3933:6, 3945:13, 3949:2, 3951:16, 3952:24, 3953:8, 3954:11, 3958:1, 3958:4, 3961:1, 3961:3, 3961:4, 3961:5, 3964:7, 3965:17, 3965:24, 3966:24, 3967:19, 3975:14, 3980:8, 3981:16, 3982:5, 3982:20, 3982:23, 3984:4, 3984:9, 3984:10, 3989:24, 3990:5, 3991:18, 3992:22, 3994:22, 3998:12, 4016:22, 4025:14, 4027:12, 4028:14, 4028:16, 4036:21, 4037:6, 4037:22, 4037:23, 4043:10, 4048:12, 4049:16, 4050:3, 4051:23, 4052:13, 4053:9, 4053:24, 4057:12, 4057:25, 4060:10, 4060:13, 4063:16, 4067:16, 4069:5, 4069:18, 4071:25, 4076:24, 4084:9, 4085:21, 4086:8, 4086:12, 4087:18
**One** [1] - 3894:21
**one's** [1] - 3953:3
**ones** [4] - 3966:22, 3974:22, 3980:6, 3984:13
**Open** [1] - 4067:1

**open** [1] - 3932:1
**opened** [1] - 3914:10
**operates** [1] - 3901:22
**operating** [14] - 3910:17, 3910:25, 3939:7, 3939:11, 3942:21, 3942:22, 3942:23, 3946:23, 3947:3, 3947:21, 3948:17, 3949:22, 3974:11, 4052:9
**operation** [1] - 4052:3
**opportunity** [12] - 3902:20, 3902:24, 3930:2, 3930:20, 4019:1, 4021:19, 4022:5, 4062:22, 4062:24, 4064:25, 4080:6, 4085:7
**opposed** [2] - 3899:15, 3979:2
**opposite** [1] - 3983:6
**opposition** [1] - 4088:24
**options** [1] - 3983:4
**order** [9] - 3916:1, 3916:3, 3928:23, 3933:11, 3933:12, 3974:3, 3974:7, 4021:20, 4045:4
**organization** [1] - 3946:21
**original** [3] - 3907:13, 4073:5, 4088:25
**originally** [1] - 4027:1
**originates** [1] - 3979:5
**originating** [1] - 4055:8
**otherwise** [1] - 4058:8
**outside** [2] - 3900:22, 4084:17
**overdrive** [1] - 3901:19
**overnight** [1] - 3996:19
**overruled** [1] - 4032:19
**owed** [2] - 3999:15, 4000:9
**Owen** [1] - 3996:7
**own** [5] - 3921:8, 3952:8, 4043:20, 4044:18, 4044:25
**owned** [2] - 4043:15, 4045:25
**owns** [1] - 4044:16

# P

**P-E-T-R-E-L-L-E-S-E** [1] - 3908:16
**Pacific** [1] - 4001:14
**package** [1] - 4073:5
**packet** [1] - 3903:22
**page** [26] - 3915:22, 3918:5, 3918:18, 3919:16, 3929:12, 3931:2, 3931:12, 3937:14, 3942:7, 3956:10, 3961:20, 3964:3, 3964:17, 3965:6, 3965:17, 3965:24, 4002:22, 4019:12, 4023:7, 4035:17, 4053:7, 4058:19,

4058:23, 4063:5, 4075:10, 4078:20
**pages** [7] - 3938:6, 3942:15, 3958:9, 3958:11, 3958:14, 3958:22, 4050:8
**paid** [7] - 3926:3, 3952:11, 3952:17, 3956:1, 3998:16, 4014:18, 4024:15
**Palm** [1] - 4011:7
**Palms** [7] - 3899:21, 3997:11, 3997:12, 3997:14, 3997:16, 3998:8, 3998:15
**Palos** [2] - 4016:25, 4017:8
**paper** [2] - 3959:21, 3991:13
**part** [20] - 3907:3, 3948:21, 3959:15, 3962:2, 3969:23, 3986:1, 4000:17, 4000:21, 4021:11, 4026:19, 4027:19, 4044:6, 4049:23, 4067:3, 4067:5, 4073:5, 4074:6, 4074:20, 4076:7, 4084:17
**participating** [1] - 4052:25
**participation** [2] - 4044:9, 4044:19
**particular** [34] - 3898:23, 3899:23, 3899:25, 3911:8, 3916:1, 3919:12, 3923:8, 3923:21, 3924:10, 3926:2, 3926:4, 3927:5, 3943:2, 3945:3, 3949:7, 3954:5, 3954:6, 3954:23, 3955:9, 3969:19, 3980:19, 4021:2, 4028:19, 4033:23, 4035:8, 4035:10, 4036:9, 4040:21, 4062:25, 4063:13, 4077:14
**particularly** [3] - 3946:19, 3981:9, 4077:21
**parties** [3] - 3905:23, 3979:2, 4046:24
**Partners** [3] - 4015:14, 4063:24, 4064:8
**parts** [1] - 4085:16
**party** [5] - 3995:15, 4002:24, 4003:1, 4053:9
**password** [3] - 3974:6, 3974:12, 3980:10
**passwords** [1] - 3974:10
**past** [2] - 4031:4, 4053:2
**patient** [2] - 3905:16, 4066:12
**pattern** [1] - 3943:15
**Paul** [1] - 4014:14
**Pause** [4] - 3911:13, 3929:8, 3950:7, 4076:25
**pause** [5] - 3914:10, 3966:11, 3966:25, 3967:7, 3984:5

**pay** [4] - 4002:17, 4010:24, 4012:5, 4055:25
**paying** [2] - 4056:7, 4056:9
**payment** [36] - 3923:6, 3923:7, 3924:9, 3924:23, 3926:18, 3951:9, 3964:25, 3991:2, 3994:12, 4000:18, 4001:6, 4001:9, 4003:3, 4008:16, 4009:2, 4009:7, 4009:10, 4011:5, 4011:21, 4011:22, 4013:4, 4013:5, 4013:20, 4014:16, 4056:21, 4058:13, 4058:14, 4059:3, 4061:6, 4061:12, 4061:14, 4061:24, 4073:21, 4076:15, 4077:3
**payments** [31] - 3912:2, 3912:4, 3912:7, 3921:10, 3921:14, 3921:16, 3924:19, 3924:22, 3925:5, 3925:8, 3926:21, 3927:9, 3927:13, 3927:17, 3954:3, 3954:14, 3954:22, 3994:6, 3994:8, 4011:1, 4012:21, 4014:6, 4014:7, 4016:18, 4054:21, 4057:3, 4057:5, 4057:9, 4057:15, 4058:2, 4058:12
**payoffs** [1] - 4000:15
**pays** [2] - 4008:15, 4008:17
**Peca** [14] - 3911:25, 3912:7, 3921:6, 3942:10, 3954:12, 3954:15, 3954:21, 3955:15, 3955:19, 4004:25, 4042:23, 4061:13, 4062:2, 4088:7
**Peca's** [10] - 3924:15, 3924:24, 3925:8, 3926:18, 3927:14, 3954:8, 3955:13, 3995:10, 4003:7, 4003:11
**people** [2] - 3899:16, 3984:11
**per** [2] - 4002:5, 4041:1
**percent** [5] - 3947:1, 3947:10, 3947:12, 3975:13, 3975:14
**percentage** [6] - 3932:17, 3932:24, 3932:25, 3946:24, 3956:2, 3975:10
**perform** [2] - 3979:21, 3979:24
**perhaps** [3] - 3903:23, 3975:18, 4088:13
**period** [59] - 3913:12, 3914:10, 3914:12, 3914:13, 3914:24, 3916:9, 3916:13, 3916:16, 3916:20, 3916:24, 3917:4,

3917:7, 3917:10, 3926:4, 3926:6, 3926:13, 3926:14, 3926:19, 3927:5, 3928:1, 3928:5, 3928:11, 3928:16, 3932:19, 3933:1, 3933:3, 3933:19, 3935:10, 3935:17, 3935:24, 3938:14, 3938:18, 3938:21, 3939:4, 3939:8, 3939:12, 3939:16, 3939:20, 3945:8, 3946:23, 3947:11, 3948:11, 3948:13, 3948:17, 3948:21, 3958:10, 3958:12, 3987:2, 3990:3, 4016:1, 4017:5, 4047:21, 4052:11, 4067:18, 4068:16, 4068:24, 4072:15, 4074:25
**periods** [2] - 3917:15, 3940:9
**permanent** [1] - 4050:3
**permissible** [1] - 3902:12
**permission** [1] - 3957:5
**permit** [1] - 4042:20
**person** [17] - 3914:16, 3941:2, 3981:8, 4028:7, 4029:12, 4031:19, 4031:24, 4032:1, 4040:18, 4041:6, 4043:23, 4046:6, 4046:7, 4053:18, 4053:21, 4053:24, 4054:2
**person's** [1] - 3902:6
**personal** [23] - 3952:8, 3952:16, 3955:22, 4001:7, 4001:9, 4025:11, 4037:13, 4043:18, 4043:20, 4043:22, 4044:18, 4044:25, 4045:2, 4054:23, 4055:10, 4056:11, 4056:19, 4056:20, 4067:2, 4068:11, 4071:22, 4078:15, 4078:16
**personally** [1] - 3974:20
**perspective** [3] - 4029:22, 4031:20, 4032:8
**pertain** [1] - 4034:19
**pertaining** [1] - 4011:2
**Petrellese** [13] - 3908:4, 3908:15, 3908:25, 3910:19, 3913:25, 3937:13, 3950:21, 3951:2, 3951:4, 3951:6, 3956:4, 3959:2, 4022:9
**PETRELLESE** [2] - 3908:8, 4090:3
**Phil** [56] - 3936:14, 3936:22, 3937:1, 3940:24, 3941:19, 3942:10, 3951:7, 3955:2, 3955:24, 3965:4,

3968:5, 3979:12, 3990:25, 3991:1, 3992:4, 3993:15, 3993:16, 3993:20, 3994:19, 3995:1, 3995:5, 3995:19, 3995:20, 3995:25, 3996:24, 3999:5, 3999:24, 4001:6, 4003:24, 4004:15, 4005:5, 4005:13, 4007:23, 4008:13, 4011:11, 4011:17, 4011:18, 4012:15, 4012:17, 4013:3, 4013:18, 4014:4, 4018:9, 4021:12, 4023:17, 4023:18, 4024:8, 4024:15, 4024:24, 4026:16, 4037:8, 4050:22, 4051:5, 4061:9, 4062:9, 4074:17
**Philip** [2] - 3960:7, 4006:22
**PHILLIP** [1] - 3894:7
**Phillip** [4] - 3939:15, 3947:5, 3994:1, 3994:8
**Phoenix** [1] - 4082:2
**phone** [24] - 3899:1, 3900:11, 3900:13, 3900:15, 3976:19, 3976:25, 3977:25, 3978:1, 3978:2, 3978:15, 3979:6, 3979:25, 3980:8, 3980:9, 3980:17, 3980:20, 3984:14, 3984:15, 4032:3, 4046:6
**phones** [7] - 3979:14, 3979:16, 3979:19, 3980:5, 3980:24, 3980:25, 3984:9
**photograph** [2] - 4009:25, 4010:4
**photographed** [1] - 3983:14
**photographs** [1] - 3984:25
**phrase** [2] - 3896:13, 3976:6
**phrases** [3] - 3896:7, 3896:12, 3904:25
**physically** [1] - 4030:19
**picture** [10] - 3976:9, 3976:24, 3982:12, 3983:2, 3983:18, 4009:21, 4009:23, 4026:24, 4027:2, 4027:8
**pictures** [13] - 3970:22, 3970:24, 3976:6, 3977:1, 3977:4, 3977:8, 3982:11, 4026:21, 4026:22, 4026:25, 4027:1, 4027:16
**piece** [1] - 4015:4
**pivot** [9] - 3927:25, 3928:3, 3928:12, 3932:6, 3935:2, 3935:7, 3935:14, 3938:16, 3940:4

22

Place [1] - 3997:17
place [6] - 3930:1, 3932:1, 3974:13, 4045:4, 4054:6, 4065:9
placed [1] - 4062:3
places [1] - 3971:4
plaintiff [1] - 3902:1
plan [1] - 4083:24
play [4] - 4087:16, 4088:7, 4088:15
Playboy [3] - 3899:22, 4007:18, 4007:23
player [3] - 3911:7, 3911:8, 3945:23
player's [1] - 3943:15
players [16] - 3912:11, 3943:2, 3954:7, 3955:9, 3955:14, 3956:1, 4026:22, 4026:23, 4027:15, 4037:7, 4037:18, 4044:22, 4045:1, 4056:8, 4056:10, 4063:1
Playmates [1] - 3899:22
Plaza [2] - 3894:15, 3895:20
pleasure [1] - 3975:24
pledged [1] - 3998:5
plus [1] - 3967:12
point [22] - 3900:9, 3902:10, 3930:18, 3951:16, 3960:23, 3975:18, 3978:13, 3979:5, 3983:4, 4024:3, 4024:11, 4028:10, 4028:23, 4032:9, 4039:20, 4057:25, 4079:12, 4085:7, 4085:21, 4088:18
pointed [2] - 3930:6, 3931:4
pointing [1] - 4065:3
points [1] - 3931:2
policy [1] - 4040:22
Porter [1] - 4053:16
portfolio [1] - 3956:2
portion [8] - 3975:22, 3981:16, 3997:25, 4003:2, 4016:7, 4047:17, 4047:24, 4048:3
portions [6] - 3906:5, 3945:21, 3981:16, 3981:20, 3983:8, 4088:6
pose [1] - 4026:24
position [2] - 4025:12, 4081:16
positions [1] - 3909:7
possession [5] - 3972:23, 4033:1, 4033:25, 4036:10, 4063:16
possibility [3] - 3900:14, 3902:7, 4047:10
possible [3] - 3957:19,

3984:12, 4084:7
post [3] - 3896:7, 3904:25, 4086:20
post-haste [1] - 4086:20
post-its [2] - 3896:7, 3904:25
posted [1] - 4027:4
potential [2] - 4028:3, 4028:7
practice [2] - 3903:14, 4040:22
pre [1] - 3903:12
pre-mark [1] - 3903:12
preliminary [1] - 4085:2
prepare [1] - 3947:14
prepared [5] - 3923:1, 3934:12, 4014:24, 4085:17, 4087:18
preparing [2] - 4067:3, 4087:14
preponderance [2] - 3897:22, 3898:20
presence [4] - 4037:19, 4038:15, 4038:20, 4084:18
present [16] - 3904:16, 4020:11, 4029:7, 4029:11, 4031:15, 4037:20, 4037:23, 4037:25, 4038:1, 4038:9, 4038:13, 4039:8, 4044:3, 4079:15, 4079:16, 4079:19
presentation [2] - 4079:8, 4079:21
presented [3] - 3905:24, 3906:3, 3975:21
preserved [1] - 3978:1
pretending [1] - 3899:16
previous [2] - 3992:23, 4078:21
previously [6] - 3903:18, 3906:3, 3971:11, 4022:1, 4025:1, 4074:7
primarily [1] - 4029:5
principal [7] - 3923:6, 3952:2, 4045:25, 4046:17, 4047:3, 4047:7, 4048:3
print [1] - 3903:25
printer [2] - 4019:2, 4019:7
Privitello [5] - 3948:15, 3949:15, 4014:10, 4063:8, 4063:10, 4063:23
Privitello's [1] - 4064:7
privy [1] - 4037:10
probable [1] - 4081:5
problem [5] - 3931:7, 4006:17, 4060:6, 4081:21, 4082:1
procedure [2] - 4029:21, 4036:17
PROCEEDINGS [1] -

3894:10
Proceedings [1] - 3895:25
proceedings [10] - 3911:13, 3929:8, 3940:16, 3950:7, 3966:11, 3966:25, 3967:7, 3984:5, 4076:25, 4089:6
proceeds [9] - 3990:7, 3990:24, 3991:23, 3991:24, 3992:15, 3994:25, 3996:14, 3996:15, 3998:1
process [1] - 3974:2
processed [1] - 3970:3
processing [2] - 3970:1, 3973:23
produce [2] - 4046:8, 4074:4
produced [2] - 3895:25, 3904:8
product [1] - 3921:8
production [1] - 4088:25
professional [1] - 3939:3
project [1] - 4076:7
projects [1] - 4077:22
promise [1] - 4060:22
promissory [1] - 4034:2
Promotions [1] - 4002:12
promptly [1] - 4089:3
proof [2] - 4065:7, 4079:9
properly [1] - 4052:7
Properties [2] - 4017:8, 4017:16
property [8] - 3990:22, 3990:23, 3991:5, 3991:17, 3991:21, 3994:24, 3998:4, 4004:4
Propiedades [2] - 3996:19, 4045:14
proposed [1] - 4077:19
proposition [1] - 3901:10
prosecutive [1] - 4047:11
prospective [1] - 4029:8
protocol [6] - 4028:6, 4028:9, 4029:21, 4029:25, 4036:5, 4036:17
protocols [1] - 4030:15
prove [2] - 3897:22, 4079:9
provided [6] - 3903:8, 3910:13, 3964:25, 3998:15, 4062:25, 4063:13
provider [2] - 3978:7, 3978:18
providers [3] - 3978:22, 3978:24, 3979:9
providing [1] - 4032:15
public [1] - 3909:16
publish [5] - 3911:21, 3913:20, 3922:18, 4015:1, 4051:21

published [3] - 3913:23, 4022:25, 4033:8
publishing [2] - 3925:18, 3945:16
pull [2] - 3908:18, 3953:5
purchase [12] - 3989:5, 3990:21, 3994:22, 3996:8, 3997:11, 3997:12, 3997:15, 3998:7, 4001:1, 4001:3, 4004:3, 4050:4
purported [2] - 3984:19, 3984:23
purpose [5] - 4033:2, 4034:1, 4034:7, 4046:25, 4066:19
purposes [9] - 3900:5, 3918:8, 3998:2, 3998:3, 4051:8, 4078:3, 4078:7, 4085:9, 4089:1
pursuant [3] - 3955:25, 4021:5, 4021:11
push [1] - 3958:4
put [24] - 3896:6, 3897:3, 3899:20, 3902:22, 3912:24, 3914:4, 3915:11, 3918:21, 3920:25, 3924:6, 3934:13, 3941:24, 3959:18, 3963:20, 3972:5, 3977:18, 4022:5, 4041:5, 4060:7, 4064:21, 4069:25, 4074:15, 4083:6, 4083:17
putting [1] - 3934:13

## Q

quantity [1] - 3975:12
quarterly [1] - 3912:4
que [1] - 4088:7
questioning [1] - 4016:22
questions [14] - 3950:12, 3959:3, 3968:11, 3968:15, 3972:14, 3984:7, 4018:15, 4032:11, 4039:18, 4039:19, 4040:2, 4045:11, 4064:20, 4078:21
quickly [6] - 3957:19, 4058:8, 4059:1, 4059:4, 4060:22, 4087:8
quite [2] - 3961:24, 4060:24

## R

R.L [1] - 3996:19
Racing [5] - 4001:13, 4002:12, 4002:14, 4007:23, 4014:20
racing [3] - 4002:18, 4068:24, 4069:18

**raise** [4] - 3898:23, 3904:23, 3969:1, 4084:22
**raised** [1] - 4087:6
**Ranford** [5] - 3943:22, 3944:5, 4010:17, 4010:19, 4043:11
**Ranford's** [2] - 4007:20, 4014:1
**rather** [3] - 3959:19, 4027:9, 4059:22
**re** [1] - 3992:15
**read** [14] - 3904:13, 3905:23, 3906:17, 3906:24, 3960:10, 3965:15, 3997:25, 4002:23, 4016:7, 4043:6, 4051:21, 4075:8, 4076:4, 4079:25
**reading** [1] - 4018:1
**reads** [2] - 3907:2, 4025:24
**ready** [2] - 4020:5, 4080:19
**real** [2] - 3988:16, 3988:17
**really** [4] - 3898:23, 3905:17, 3966:18, 4043:17
**reason** [4] - 4022:12, 4025:18, 4033:2, 4087:5
**reasonable** [1] - 4079:10
**reasons** [3] - 3901:6, 4064:25, 4086:8
**receipt** [2] - 4026:1, 4063:3
**receive** [3] - 3970:7, 4003:2, 4046:20
**received** [40] - 3909:23, 3912:24, 3915:7, 3918:22, 3933:7, 3940:12, 3954:6, 3965:18, 3989:25, 4040:9, 4042:2, 4045:21, 4046:9, 4046:20, 4046:24, 4049:8, 4049:2, 4049:9, 4051:13, 4051:18, 4054:25, 4056:4, 4061:23, 4062:10, 4062:17, 4062:18, 4068:2, 4069:13, 4069:14, 4069:21, 4085:12, 4092:15, 4092:17, 4092:19, 4092:21, 4092:23, 4092:25, 4093:2, 4093:4
**receiving** [2] - 4024:25, 4050:17
**recently** [1] - 4044:15
**recess** [6] - 3956:9, 3957:1, 4019:11, 4059:7, 4060:18, 4086:22
**recessed** [1] - 4089:6
**recipient** [1] - 4048:10
**recognize** [10] - 3921:2, 3939:1, 4009:18, 4048:2, 4053:14, 4053:16, 4058:23, 4067:11,

4067:12, 4085:5
**reconvene** [1] - 4018:17
**record** [17] - 3908:14, 3913:3, 3928:8, 3936:16, 3938:11, 3969:7, 3970:21, 3978:18, 3985:13, 3986:20, 4017:13, 4017:21, 4027:21, 4054:11, 4064:5, 4072:9, 4087:3
**recorded** [4] - 3895:25, 4087:24, 4088:1, 4088:24
**recording** [4] - 4088:7, 4088:8, 4088:15, 4088:21
**records** [71] - 3909:14, 3909:15, 3909:16, 3909:17, 3909:18, 3909:23, 3913:11, 3918:10, 3919:4, 3923:19, 3923:22, 3923:24, 3952:6, 3952:22, 3952:23, 3974:24, 3986:3, 3986:4, 3986:10, 3986:17, 3986:18, 3987:5, 3987:6, 3989:14, 3989:23, 3989:25, 3991:3, 3991:8, 3992:17, 3997:16, 3998:12, 4001:4, 4008:21, 4009:13, 4010:5, 4011:2, 4015:15, 4015:16, 4017:7, 4021:7, 4021:16, 4021:20, 4026:8, 4034:14, 4034:20, 4036:6, 4041:14, 4042:3, 4045:17, 4045:19, 4046:8, 4047:25, 4057:7, 4057:11, 4057:13, 4057:17, 4057:23, 4058:6, 4064:3, 4064:4, 4067:22, 4068:12, 4068:23, 4069:1, 4069:2, 4069:4
**recovered** [2] - 3979:12, 3980:24
**red** [13] - 3937:19, 3938:2, 3942:4, 3946:1, 3946:7, 3946:8, 3948:25, 3953:4, 3953:13, 3964:4, 3964:17, 4052:14
**redirect** [2] - 3968:12, 4078:23
**reduce** [2] - 4030:6, 4045:8
**reduced** [1] - 4081:19
**refer** [8] - 3930:24, 3987:19, 3988:16, 3988:20, 3989:9, 3989:11, 3991:21, 4034:9
**reference** [3] - 3936:12, 3952:14, 3954:14, 4012:7, 4018:25, 4026:5, 4029:3, 4029:22, 4030:16, 4036:17, 4078:14

**referenced** [1] - 4045:10
**referencing** [1] - 4049:22
**referred** [6] - 3907:24, 3917:15, 4010:5, 4018:3, 4024:8, 4077:6
**referring** [12] - 3921:23, 3926:13, 3926:14, 3931:1, 3987:4, 3989:17, 3989:18, 3989:21, 3990:11, 3991:4, 4001:24, 4033:4
**reflect** [3] - 4051:9, 4062:7, 4068:5
**reflected** [8] - 3904:25, 3906:4, 3910:20, 3955:23, 4023:21, 4025:1, 4037:9, 4056:5
**reflecting** [3] - 3941:20, 4032:22, 4042:4
**reflects** [6] - 3954:3, 3963:25, 4022:17, 4048:23, 4050:1, 4054:11
**regarding** [9] - 3898:14, 3902:21, 3978:19, 4014:19, 4022:18, 4031:4, 4033:10, 4079:25, 4085:8
**regards** [10] - 3967:4, 3967:25, 4040:11, 4040:14, 4040:23, 4045:12, 4047:24, 4056:15, 4056:23, 4077:16
**registering** [2] - 4017:23, 4017:24
**relate** [2] - 3899:18, 4073:16
**related** [18] - 3914:9, 3915:11, 3996:2, 3997:21, 4000:13, 4002:11, 4002:24, 4002:25, 4003:1, 4004:20, 4005:19, 4010:1, 4014:15, 4017:8, 4073:17, 4074:21, 4075:1, 4075:12
**relates** [20] - 3918:12, 3936:21, 3940:24, 3952:9, 3953:16, 3972:21, 4022:15, 4023:8, 4023:16, 4025:20, 4026:9, 4029:19, 4030:20, 4035:8, 4037:6, 4039:14, 4039:17, 4039:23, 4052:2, 4066:18
**relating** [1] - 4039:2
**relation** [1] - 4036:9
**relative** [1] - 3959:3
**relatively** [2] - 3903:8, 3981:7
**relevance** [3] - 4033:24, 4034:7, 4066:8
**relevant** [5] - 3907:2, 3981:4, 4074:22, 4074:25, 4076:18
**reliability** [1] - 3902:9

**rely** [2] - 3900:4, 3963:12
**remain** [2] - 3908:6, 4019:3
**remember** [7] - 4029:14, 4053:4, 4067:6, 4069:2, 4074:8, 4077:7, 4078:4
**remove** [4] - 3974:2, 3982:13, 3982:23, 3982:24
**removed** [1] - 3945:5
**removing** [1] - 3983:8
**rendered** [1] - 4035:4
**repayment** [2] - 3952:2, 4011:6
**repeat** [4] - 3962:17, 3984:21, 4039:5, 4078:5
**rephrase** [1] - 3962:18
**report** [2] - 3920:1, 4031:12
**Reporter** [1] - 3895:20
**reports** [1] - 4015:17
**Reports** [1] - 4015:14
**repository** [1] - 3978:15
**represent** [4] - 3914:21, 3934:16, 3937:18, 3951:7
**representation** [1] - 4088:23
**represents** [3] - 3927:4, 3938:3, 3954:4
**request** [4] - 3898:15, 4002:5, 4041:1, 4088:2
**require** [2] - 4019:2, 4029:15
**required** [2] - 3974:10, 4030:18
**requirement** [1] - 3898:24
**requirements** [2] - 3898:4, 3898:19
**requires** [1] - 4029:25
**requiring** [1] - 4030:21
**reserve** [2] - 3971:23, 4080:6
**reside** [1] - 3979:5
**residence** [4] - 3907:5, 3907:10, 3907:14, 3973:19
**respect** [13] - 3897:20, 3898:7, 3915:18, 3920:14, 3941:18, 3999:11, 4000:5, 4011:24, 4028:12, 4049:14, 4065:3, 4081:7, 4084:3
**respects** [1] - 3900:15
**Response** [1] - 3969:20
**responsibilities** [5] - 3909:11, 3969:23, 3969:25, 3985:24, 4029:19
**responsibility** [1] - 4027:20
**rest** [5] - 3897:1, 3904:12, 4001:22, 4002:7, 4014:21
**rested** [1] - 4079:6
**rests** [2] - 4079:4, 4079:12

24

**result** [5] - 3910:5, 3973:5, 3973:11, 4031:18, 4037:12
**resume** [1] - 4059:8
**resumes** [1] - 4020:9
**retrieve** [4] - 3974:20, 3974:21, 3977:5, 3978:3
**return** [2] - 3909:16, 4083:8
**returned** [2] - 3903:8, 4064:12
**returning** [1] - 3994:5
**returns** [1] - 4073:14
**reveal** [2] - 3951:18, 3951:21
**Revenue** [7] - 4028:5, 4028:11, 4029:20, 4030:10, 4030:15, 4032:5, 4032:24
**review** [66] - 3904:7, 3909:15, 3909:18, 3909:22, 3910:5, 3910:14, 3910:16, 3912:16, 3912:19, 3920:22, 3921:12, 3922:7, 3922:9, 3924:22, 3925:1, 3927:21, 3954:5, 3959:16, 3970:2, 3970:10, 3970:14, 3986:4, 3986:10, 3987:23, 3991:8, 3992:17, 3995:7, 3996:2, 3996:23, 3997:3, 3997:21, 3998:21, 3999:10, 4000:4, 4002:11, 4003:7, 4004:22, 4005:14, 4006:25, 4008:2, 4015:15, 4016:3, 4017:7, 4033:19, 4033:20, 4034:4, 4034:6, 4034:16, 4034:17, 4035:5, 4044:17, 4057:7, 4057:11, 4057:23, 4058:6, 4062:23, 4064:9, 4067:2, 4068:12, 4068:18, 4069:1, 4069:4, 4073:8, 4078:17, 4078:20, 4087:8
**reviewed** [48] - 3910:20, 3910:23, 3912:6, 3913:12, 3920:16, 3920:21, 3921:5, 3921:7, 3923:19, 3923:22, 3924:5, 3925:4, 3928:17, 3933:16, 3933:19, 3952:22, 3952:23, 3970:4, 3970:18, 3973:1, 3974:17, 3975:7, 3975:12, 3989:13, 3989:14, 3989:16, 3990:5, 3993:17, 3993:18, 3994:8, 3997:16, 3998:12, 4001:4, 4003:21, 4004:6, 4004:19, 4008:21, 4009:13, 4011:2, 4014:8, 4014:15, 4016:6, 4017:18, 4034:11, 4034:13, 4036:13, 4064:5
**reviewing** [2] - 3911:4,

3973:5
**RICHARD** [1] - 3894:22
**Richards** [9] - 3939:3, 3947:24, 3948:6, 3986:21, 3986:25, 4015:9, 4017:4, 4057:16, 4063:10
**Richards'** [5] - 3948:10, 3948:19, 4014:11, 4014:12, 4016:13
**Rick** [1] - 3951:6
**right-hand** [2] - 3926:7, 3927:10
**rise** [4] - 3896:1, 3904:15, 4020:3, 4020:10
**Road** [3] - 3895:3, 3907:6, 4009:4
**Robert** [2] - 3968:18, 3969:8
**ROBERT** [3] - 3895:4, 3969:2, 4090:16
**Rodriguez** [4] - 3949:2, 3949:6, 4014:13, 4014:16
**Rojo** [3] - 4017:23, 4017:24, 4018:9
**Romanowski** [1] - 4028:24
**Ron** [5] - 3948:10, 4014:12, 4016:13, 4057:15, 4063:10
**Ronald** [9] - 3939:2, 3947:24, 3948:6, 3948:19, 3986:21, 3986:25, 4014:11, 4015:9, 4017:4
**room** [2] - 3896:5, 3905:4
**Ross** [4] - 4010:25, 4011:3, 4056:16, 4056:24
**Rozenboom** [1] - 3899:21
**Ruben** [2] - 4016:25, 4017:8
**Rucchin** [4] - 3943:24, 3996:6, 4011:25, 4013:15
**rule** [1] - 4080:11
**Rule** [2] - 3897:21, 3901:22
**ruled** [2] - 4064:14, 4064:15
**rules** [6] - 3900:5, 3902:6, 4030:16, 4030:19, 4030:21, 4080:6
**ruling** [1] - 3902:25
**run** [2] - 3928:13, 4087:22
**running** [2] - 3897:1, 3910:3
**runs** [3] - 3938:4, 3938:7, 4084:20

**S**

**Sag** [1] - 4004:4
**Saint** [2] - 4009:10, 4009:22
**sake** [1] - 3957:17

**sale** [7] - 3990:22, 3990:24, 3991:5, 3991:13, 3991:23, 3991:24, 3994:25
**SARITHA** [1] - 3894:16
**satisfied** [1] - 3898:3
**save** [4] - 3903:2, 3971:20, 3976:18, 3976:24
**saved** [1] - 3977:8
**savings** [4] - 3939:23, 3944:24, 3945:5, 3945:12
**saw** [13] - 3896:6, 3924:6, 3951:12, 3962:20, 3975:22, 3991:19, 3992:22, 4001:16, 4002:8, 4043:8, 4043:9, 4044:15, 4074:15
**schedule** [7] - 3932:10, 3998:15, 4022:9, 4022:13, 4022:15, 4022:16
**scope** [3] - 4066:16, 4073:15, 4073:18
**Scott** [1] - 4028:24
**Scottsdale** [5] - 3907:7, 4008:19, 4009:4, 4011:21, 4012:22
**scour** [1] - 4036:8
**screen** [34] - 3899:2, 3900:16, 3901:17, 3901:18, 3902:1, 3902:4, 3920:25, 3922:19, 3922:21, 3934:13, 3941:24, 3972:5, 3973:7, 3973:22, 3974:15, 3976:11, 3976:23, 3976:24, 3977:7, 3977:15, 3977:18, 3977:20, 3978:9, 3980:19, 3981:25, 3982:2, 3982:16, 3983:3, 3983:13, 3983:23, 4016:8, 4021:3, 4022:6
**search** [2] - 3907:5, 4018:3
**searches** [1] - 3909:17
**seated** [8] - 3896:2, 3904:17, 3908:17, 3957:13, 3969:5, 3985:12, 4020:4, 4020:12
**second** [17] - 3914:5, 3918:6, 3919:16, 3923:3, 3923:9, 3931:2, 3932:14, 3937:13, 3939:25, 3964:3, 3966:10, 3966:24, 3997:15, 4023:7, 4056:14, 4075:14, 4081:2
**secondarily** [1] - 4087:23
**seconds** [1] - 4088:8
**secret** [1] - 3973:17
**section** [1] - 4040:25
**see** [5] - 3904:20, 3918:6, 3918:13, 3918:24, 3924:17, 3936:22,

3941:19, 3943:8, 3943:14, 3944:2, 3946:16, 3948:5, 3950:5, 3953:4, 3960:4, 3960:13, 3961:17, 3964:16, 3965:9, 3965:25, 3966:19, 3973:22, 3978:9, 3983:1, 3987:10, 3987:21, 3993:15, 3995:22, 4005:24, 4006:6, 4006:15, 4016:9, 4017:2, 4017:13, 4020:22, 4021:3, 4022:1, 4023:9, 4023:16, 4023:18, 4023:23, 4024:3, 4024:7, 4024:12, 4026:16, 4033:23, 4035:15, 4036:8, 4040:25, 4041:2, 4045:15, 4048:3, 4058:21, 4058:24, 4059:23, 4061:24, 4063:6, 4063:20, 4063:22, 4063:24, 4065:5, 4069:23, 4071:6, 4071:11, 4075:6, 4075:11, 4078:21, 4086:15, 4086:19, 4087:8
**seeing** [4] - 3911:24, 3961:21, 3998:6, 4069:3
**seek** [3] - 4035:10, 4045:23, 4085:10
**seeking** [2] - 4040:18, 4041:6
**seize** [1] - 4018:11
**seized** [3] - 3907:9, 3907:13, 3907:16
**select** [1] - 3975:21
**selected** [4] - 3946:4, 3957:16, 3958:11, 3986:21
**selection** [2] - 3958:18, 3958:22
**sellers'** [1] - 3991:10
**selling** [3] - 4043:16, 4043:19, 4044:25
**send** [3] - 3912:7, 3992:12, 4005:25
**sending** [2] - 3899:22, 4005:25
**sends** [4] - 4007:16, 4011:17, 4012:17, 4076:17
**sent** [26] - 3911:25, 3918:16, 3943:3, 3946:17, 3951:19, 3951:22, 3951:24, 3953:21, 3954:6, 3955:10, 3983:15, 4004:22, 4004:25, 4005:9, 4006:10, 4008:7, 4010:17, 4010:19, 4012:13, 4012:15, 4014:11, 4047:19, 4055:16, 4063:10, 4064:7, 4074:16
**sentence** [1] - 4078:10
**separate** [1] - 3929:1
**separating** [1] - 3958:14

**September** [11] - 3916:17, 3917:5, 3934:19, 3934:20, 3949:22, 3958:10, 3959:9, 3960:1, 3968:2, 4050:13
**Sergei** [1] - 3927:6
**series** [4] - 3926:24, 3927:4, 3981:9, 4004:18
**serve** [1] - 3909:16
**server** [1] - 3978:14
**Service** [7] - 4028:6, 4028:11, 4029:20, 4030:10, 4030:15, 4032:6, 4032:25
**service** [4] - 3978:7, 3978:15, 3978:24, 3979:8
**Services** [1] - 3996:3
**Servicing** [1] - 3965:20
**set** [2] - 4025:21, 4082:25
**settlement** [9] - 3991:11, 3991:18, 4000:17, 4002:20, 4003:3, 4035:12, 4036:14, 4077:16, 4077:19
**Settlement** [1] - 4057:15, 4058:3, 4058:12, 4058:16
**settlements** [1] - 3997:21
**seven** [1] - 4086:14
**several** [3] - 3905:23, 4034:11, 4034:13
**shaded** [1] - 3941:20
**shaking** [1] - 4085:14
**shall** [2] - 3998:3, 4003:2
**Shank** [1] - 4002:11
**share** [1] - 4044:7
**shares** [7] - 3947:6, 4043:15, 4043:17, 4043:20, 4044:22, 4044:25
**sheet** [1] - 3959:21
**sheets** [2] - 3910:14, 3935:11
**shifts** [1] - 4079:11
**Shop** [4] - 4005:13, 4005:15, 4005:20, 4007:9
**short** [1] - 4088:15
**shortly** [1] - 3951:8
**shot** [6] - 3900:17, 3901:18, 3902:1, 3902:4, 3977:7
**shots** [12] - 3899:2, 3901:17, 3976:12, 3977:15, 3977:18, 3977:20, 3978:10, 3980:19, 3982:1, 3982:3, 3983:13, 3983:24
**show** [26] - 3925:2, 3929:1, 3945:23, 3955:3, 3994:10, 4035:2, 4037:4, 4040:9, 4041:9, 4041:16, 4042:21, 4049:11, 4051:8, 4054:20, 4055:7, 4057:12, 4058:18, 4061:12, 4062:18, 4065:4,

4067:7, 4069:6, 4071:2, 4071:4, 4071:25, 4072:1
**showed** [4] - 3932:8, 4027:11, 4073:6, 4076:21
**showing** [2] - 4036:7, 4069:14
**shown** [3] - 3957:15, 4074:1, 4078:11
**shows** [7] - 3915:23, 3951:14, 3990:7, 3990:14, 3990:17, 4049:13, 4062:9
**sic** [1] - 4048:18
**side** [8] - 3926:7, 3926:8, 3927:10, 3958:5, 3983:6, 3990:21, 4006:8, 4006:10
**sidebar** [5] - 3929:10, 3930:1, 4065:6, 4065:9, 4066:22
**sidebars** [1] - 4084:6
**sign** [2] - 3963:21, 4040:18
**signatory** [2] - 3911:2, 3917:18, 3928:19, 3936:16, 3955:3, 3959:13
**signature** [1] - 3914:10, 3914:12, 3914:16, 3914:17, 3936:25, 3992:7, 3994:3, 4003:22, 4003:24, 4033:11, 4041:1
**signed** [2] - 3914:17, 4056:25
**silhouette** [1] - 4027:9
**Silver** [6] - 4016:11, 4016:16, 4077:6, 4077:9, 4077:13, 4078:13
**similar** [4] - 3995:1, 4031:12, 4036:16, 4036:17
**simplified** [1] - 3934:16
**simply** [3] - 3923:11, 3984:13, 4036:3
**single** [4] - 4015:12, 4058:19, 4058:23, 4078:10
**sit** [2] - 4057:8, 4076:14
**site** [1] - 3901:19
**situation** [1] - 3898:16
**situations** [1] - 3902:5
**six** [6] - 4038:17, 4038:19, 4039:8, 4045:9, 4060:13, 4086:13
**slightly** [1] - 3945:4
**slip** [3] - 3993:17, 4001:17
**slips** [3] - 3993:18, 3993:22, 3993:23
**small** [1] - 4045:7
**so..** [1] - 4034:12
**software** [2] - 3974:9, 3980:3
**sold** [3] - 3990:23, 3994:24, 4044:22
**Solutions** [1] - 4053:11
**someone** [1] - 3900:16,

3902:7, 3905:8, 4019:1, 4027:2, 4027:5, 4038:20, 4039:21, 4047:10
**sometime** [1] - 4063:14
**somewhat** [1] - 4033:20
**soon** [2] - 3991:1, 4074:16
**sorry** [20] - 3906:21, 3923:14, 3926:15, 3951:20, 3961:23, 3978:19, 3982:17, 3989:3, 3989:20, 3994:11, 4006:11, 4046:20, 4050:13, 4054:5, 4055:15, 4055:17, 4058:10, 4060:17, 4073:9, 4078:5
**sort** [5] - 3915:24, 3916:4, 3942:16, 3974:1, 3982:15
**source** [3] - 3918:20, 3919:13, 4025:8
**Southern** [1] - 4028:25
**Space** [1] - 4015:13
**Spanish** [1] - 4018:1
**speaking** [3] - 4015:15, 4028:9, 4053:4
**Special** [17] - 3937:12, 3950:21, 3975:24, 4020:19, 4020:21, 4028:5, 4028:11, 4029:19, 4030:23, 4031:3, 4031:15, 4031:23, 4031:24, 4032:6, 4037:5, 4037:18, 4038:25
**special** [1] - 3969:13, 3969:18, 3972:19, 3972:21, 3973:17, 3985:20, 3985:21, 3985:24, 3988:12, 4027:20, 4039:21
**specialized** [1] - 3974:2
**specific** [6] - 3922:1, 3922:4, 3973:13, 3998:18, 4030:9, 4034:9
**specifically** [3] - 3998:3, 4011:25, 4039:3
**Speed** [4] - 4005:12, 4005:14, 4005:20, 4007:9
**speeding** [1] - 3944:8
**spell** [4] - 3908:13, 3968:21, 3969:6, 3985:13
**spent** [5] - 3897:17, 4011:20, 4012:16, 4012:21, 4013:19
**spillover** [2] - 4081:1, 4082:2
**spoken** [4] - 4046:4, 4046:5, 4060:19
**sponsors** [2] - 4068:24, 4069:19
**Sports** [2] - 4002:12, 4016:17
**spreadsheet** [37] -

3909:24, 3909:25, 3912:22, 3912:24, 3914:4, 3915:2, 3915:25, 3916:4, 3916:9, 3917:2, 3921:9, 3921:19, 3922:5, 3923:2, 3923:12, 3924:2, 3928:9, 3929:1, 3932:12, 3933:10, 3935:4, 3935:7, 3935:19, 3935:24, 3937:15, 3938:19, 3938:22, 3939:2, 3939:10, 3939:14, 3939:21, 3942:1, 3942:15, 3942:16, 3945:13, 3945:18, 4064:10
**spreadsheets** [9] - 3910:20, 3911:24, 3912:10, 3914:2, 3917:12, 3921:23, 3921:25, 3940:10, 3952:25
**square** [1] - 4052:14
**Square** [1] - 3894:21
**squint** [1] - 4043:8
**stand** [8] - 3901:10, 3908:5, 3968:25, 4020:9, 4081:7, 4082:21, 4082:23, 4084:21
**standard** [1] - 3897:20
**Standard** [8] - 3910:17, 3910:25, 3911:1, 3912:8, 3954:15, 3954:22, 3955:3, 4011:17
**standards** [1] - 3901:11
**standing** [1] - 3908:6
**standpoint** [1] - 3953:20
**start** [4] - 4019:9, 4079:23, 4079:24, 4089:3
**started** [1] - 3909:6
**starting** [2] - 3914:3, 4080:17
**state** [6] - 3908:13, 3969:6, 3985:12, 4024:22, 4025:13, 4037:12
**statement** [31] - 3897:25, 3898:1, 3898:20, 3898:24, 3909:23, 3914:8, 3915:5, 3915:7, 3915:15, 3915:16, 3918:21, 3919:24, 3923:1, 3941:21, 3959:3, 3990:14, 3991:11, 3991:18, 4001:10, 4007:1, 4022:22, 4025:2, 4039:4, 4039:23, 4071:5, 4071:8, 4071:25, 4072:2, 4072:21, 4075:13
**statements** [20] - 3897:19, 3897:21, 3901:12, 3912:23, 3914:13, 3914:14, 3919:19, 3920:22, 3955:24, 3958:9, 3958:11, 3958:13, 4014:8, 4026:13, 4032:25,

4047:22, 4073:4, 4073:8, 4074:21, 4074:23
**STATES** [3] - 3894:1, 3894:3, 3894:11
**States** [7] - 3894:6, 3894:14, 3894:17, 3901:14, 4028:25, 4038:11, 4039:9
**stay** [4] - 3969:9, 4019:5, 4059:23, 4060:7
**stayed** [1] - 4062:6
**Steiger** [1] - 3895:20
**stem** [1] - 4024:25
**stenography** [1] - 3895:25
**step** [4] - 3933:8, 3968:16, 3985:5, 4078:25
**steps** [1] - 4079:2
**Steve** [3] - 3996:6, 4011:24, 4016:11
**Steven** [1] - 3943:24
**still** [1] - 4018:23
**stip** [4] - 3906:17, 3906:18, 3906:24, 3907:2
**stipulate** [3] - 3930:18, 3960:22, 4067:21
**stipulated** [2] - 3961:22, 4041:17
**stipulation** [3] - 3905:23, 3907:17, 3907:25, 3961:13, 4047:24
**stop** [1] - 4001:15
**stops** [1] - 3954:18
**storing** [1] - 3984:13
**straight** [1] - 4006:12
**Strangford** [1] - 3895:7
**Street** [5] - 3933:5, 4075:9, 4076:5, 4076:9, 4076:16
**strength** [1] - 3896:2
**string** [1] - 3982:15
**stuff** [1] - 3915:15
**subject** [4] - 3936:3, 3950:3, 3992:15, 4033:7
**subpoenaed** [1] - 4046:24
**subpoenas** [1] - 3909:16
**substance** [2] - 3901:8, 4074:11
**substantial** [3] - 3898:5, 3930:20, 4068:14
**substantially** [1] - 3907:15
**substantive** [6] - 3896:18, 3896:20, 3897:3, 3897:4, 3897:9, 3905:9
**subtracted** [1] - 3968:7
**sufficient** [2] - 3900:17, 3902:9
**sufficiently** [1] - 3900:6, 3902:2, 3902:13
**Suffolk** [1] - 3894:21
**suggest** [2] - 3952:1, 4088:13

**suggests** [2] - 4024:14, 4024:17
**sum** [3] - 3951:25, 3952:1, 4074:11
**summaries** [9] - 3910:4, 3917:14, 3922:7, 3935:9, 3935:22, 3940:7, 3947:14, 3947:17, 3949:21
**summarize** [2] - 3932:15, 3986:17
**summarizing** [1] - 3987:6
**summary** [11] - 3910:14, 3911:7, 3913:10, 3920:5, 3925:7, 3928:4, 3928:15, 3928:22, 3942:20, 3986:11, 4026:2
**summation** [1] - 3903:2
**Sunday** [1] - 4081:22
**support** [2] - 3901:9, 4078:14
**suppose** [1] - 3983:11
**surprise** [1] - 4068:8
**surreptitiously** [1] - 4088:1
**surrounding** [1] - 3952:11
**sustained** [1] - 4073:16
**Suzy** [1] - 3943:18
**sworn** [3] - 3908:10, 3969:3, 3985:10
**Sydor** [3] - 3996:6, 4007:16, 4043:5
**Sydor's** [3] - 3994:17, 4007:14, 4007:16
**system** [2] - 3914:7, 3974:11

# T

**table** [10] - 3927:25, 3928:3, 3928:12, 3932:7, 3935:2, 3935:7, 3935:14, 3938:16, 3968:20
**tables** [1] - 3940:4
**tag** [1] - 3904:25
**talks** [2] - 4040:25, 4071:5
**tape** [14] - 4084:10, 4084:12, 4084:24, 4085:3, 4085:8, 4085:11, 4085:16, 4085:22, 4086:17, 4087:6, 4087:8, 4087:12, 4087:17, 4087:24
**tapes** [1] - 4088:5
**tax** [7] - 3991:17, 4016:10, 4073:13, 4077:9, 4078:13, 4078:15
**Team** [1] - 3969:20
**team** [5] - 3969:24, 4018:3, 4044:7, 4046:12, 4047:12
**telephone** [3] - 3978:13, 3978:19, 3979:10, 4041:7

**telephones** [1] - 3978:20
**telephonic** [2] - 4031:25, 4032:1
**telephonically** [3] - 4028:8, 4029:12, 4031:19
**ten** [3] - 3957:7, 3974:7, 3975:13
**term** [1] - 3918:19
**terminal** [1] - 3914:6
**terms** [19] - 3898:22, 3898:24, 3899:10, 3901:9, 3911:5, 3912:18, 3912:19, 3921:7, 3935:7, 3938:2, 3942:24, 3946:8, 3946:12, 3946:16, 3952:18, 3962:2, 3975:1, 4030:17, 4033:17
**testified** [20] - 3908:10, 3918:8, 3920:21, 3969:4, 3972:25, 3985:11, 4014:24, 4015:8, 4027:19, 4029:18, 4030:23, 4037:19, 4037:22, 4038:10, 4038:16, 4039:7, 4039:12, 4066:10, 4073:20, 4077:2
**testify** [5] - 3902:18, 4077:17, 4078:2, 4078:7, 4081:23
**testifying** [4] - 4042:11, 4064:1, 4075:3, 4078:18
**testimonial** [1] - 3902:16
**testimony** [14] - 3898:5, 3951:9, 3951:10, 3952:5, 3952:15, 3974:17, 3975:20, 4033:10, 4040:11, 4040:14, 4040:16, 4045:11, 4073:10, 4078:4
**Texas** [1] - 3907:6
**text** [59] - 3897:16, 3897:18, 3898:5, 3898:10, 3899:1, 3899:13, 3899:18, 3900:3, 3900:8, 3900:11, 3900:21, 3901:2, 3901:3, 3901:8, 3901:11, 3901:18, 3902:1, 3902:3, 3902:21, 3902:23, 3903:2, 3970:22, 3972:6, 3976:12, 3976:15, 3976:19, 3976:22, 3977:6, 3977:8, 3977:11, 3977:25, 3978:7, 3978:8, 3978:12, 3978:17, 3978:23, 3978:25, 3979:1, 3979:2, 3979:3, 3979:9, 3980:5, 3980:8, 3981:5, 3981:8, 3981:9, 3981:13, 3981:14, 3981:15, 3981:16, 3981:17, 3982:10, 3982:15, 3983:6, 3983:8, 3983:12, 3983:14,

**telephones** column continues

**Text** [3] - 3983:20, 3983:21
**texts** [3] - 3900:23, 3977:16, 3978:19
**THE** [169] - 3894:11, 3896:1, 3896:2, 3896:4, 3896:15, 3897:16, 3903:4, 3904:2, 3904:9, 3904:14, 3904:15, 3904:17, 3904:20, 3906:9, 3906:12, 3906:18, 3906:24, 3907:21, 3907:24, 3908:5, 3908:13, 3908:15, 3908:17, 3908:20, 3908:21, 3911:16, 3913:18, 3913:22, 3917:25, 3920:7, 3920:9, 3922:15, 3925:15, 3929:11, 3930:23, 3931:9, 3932:2, 3936:6, 3937:7, 3941:14, 3941:17, 3945:15, 3949:17, 3950:10, 3950:14, 3953:7, 3956:5, 3956:6, 3957:8, 3957:11, 3957:13, 3957:23, 3958:13, 3958:16, 3958:20, 3958:22, 3960:24, 3961:4, 3961:7, 3961:10, 3961:23, 3968:12, 3968:16, 3968:20, 3968:24, 3969:5, 3969:8, 3969:9, 3971:11, 3971:16, 3971:18, 3971:21, 3971:25, 3972:15, 3982:8, 3982:16, 3985:3, 3985:5, 3985:12, 3985:14, 3987:15, 3988:8, 4010:12, 4015:3, 4015:6, 4016:20, 4018:16, 4019:4, 4020:3, 4020:4, 4020:8, 4020:10, 4020:12, 4023:1, 4023:10, 4032:19, 4039:5, 4040:3, 4041:20, 4041:23, 4041:25, 4048:5, 4048:7, 4049:3, 4049:6, 4049:8, 4051:14, 4051:17, 4051:25, 4052:4, 4058:10, 4059:9, 4059:12, 4059:17, 4059:19, 4059:25, 4060:9, 4060:15, 4061:4, 4061:21, 4062:13, 4062:15, 4064:15, 4065:2, 4066:3, 4066:5, 4067:23, 4067:25, 4069:9, 4069:11, 4070:1, 4072:6, 4072:8, 4072:11, 4073:16, 4075:14, 4075:17, 4075:21, 4075:24, 4076:1, 4078:23, 4078:25, 4079:5, 4080:3, 4080:11, 4080:14, 4080:18, 4080:20,

4080:22, 4081:4, 4081:7, 4082:7, 4082:14, 4082:18, 4083:3, 4083:9, 4083:12, 4083:16, 4083:20, 4083:24, 4084:3, 4085:20, 4086:3, 4086:12, 4086:24, 4087:4, 4087:14, 4088:4, 4089:3

**themselves** [6] - 3898:9, 3899:2, 3899:9, 3976:15, 3977:21, 3979:1

**theoretically** [1] - 3897:2

**theory** [1] - 3900:20

**thereafter** [2] - 3964:3, 4074:16

**therefore** [2] - 3902:16, 4079:14

**thereof** [1] - 4003:1

**thinking** [4] - 3896:11, 3896:22, 4057:14, 4087:9

**third** [4] - 3923:4, 3932:16, 3995:15, 4063:5

**Thompson** [1] - 3902:14

**thousand** [3] - 3963:6, 3975:16, 4003:14

**three** [5] - 3905:13, 3912:1, 3931:6, 3954:5, 4043:16

**throughout** [2] - 4021:16, 4037:20

**Thursday** [10] - 4081:24, 4082:1, 4082:3, 4082:10, 4082:16, 4082:21, 4083:6, 4083:13, 4083:15

**tied** [1] - 3923:23

**Tim** [8] - 3943:10, 4008:12, 4010:22, 4012:3, 4012:17, 4013:2, 4013:17, 4014:4

**Timothy** [5] - 3939:22, 3944:19, 3944:20, 3944:22, 3945:24

**title** [14] - 3909:2, 3909:9, 3914:5, 3936:18, 3936:25, 3964:20, 3969:17, 3985:19, 3986:18, 3989:14, 3990:9, 3995:12, 3998:7, 4034:20

**Title** [9] - 3964:22, 3965:1, 3990:12, 3991:5, 3991:10, 3992:9, 3994:22, 4000:25, 4050:4

**today** [20] - 3896:14, 3905:18, 3930:3, 3952:5, 3970:19, 3974:17, 3987:24, 4005:25, 4042:11, 4057:8, 4059:24, 4060:3, 4064:1, 4073:20, 4075:3, 4076:14, 4077:2, 4078:18, 4088:14

**together** [4] - 3927:11, 3927:12, 3967:17, 4013:16

**Tom** [1] - 4012:6

**TOMMY** [1] - 3894:7

**Tommy** [20] - 3936:17, 3936:22, 4000:22, 4001:20, 4004:12, 4005:2, 4005:10, 4005:19, 4007:17, 4011:9, 4012:6, 4012:7, 4014:19, 4016:4, 4025:5, 4025:9, 4025:10, 4025:16, 4067:13, 4067:15

**tomorrow** [10] - 4019:10, 4059:21, 4060:21, 4079:22, 4079:23, 4079:24, 4080:14, 4080:25, 4081:3, 4089:4

**took** [11] - 3912:22, 3945:2, 3968:6, 4009:23, 4010:2, 4027:2, 4029:13, 4032:2, 4063:16, 4065:8

**top** [5] - 3914:3, 3926:15, 3941:19, 3982:20, 3983:2

**total** [16] - 3914:20, 3914:21, 3914:22, 3932:16, 3932:18, 3932:22, 3932:24, 3933:24, 3934:4, 3946:22, 3947:12, 3953:23, 3963:17, 3963:22, 3966:7

**totaled** [1] - 3949:8

**totaling** [1] - 3930:11

**totality** [1] - 3927:11

**totalled** [1] - 3967:15

**totals** [1] - 3914:20

**tough** [1] - 3960:9

**towards** [2] - 3997:11, 4051:3

**Tracey** [1] - 4050:4

**tracing** [1] - 4046:23

**track** [3] - 3909:16, 3921:9, 3942:16

**tracking** [1] - 3938:6

**tracks** [1] - 3901:2

**Tracy** [4] - 4001:1, 4001:3, 4010:25

**transaction** [40] - 3910:1, 3910:2, 3915:4, 3915:6, 3915:22, 3916:1, 3920:22, 3921:4, 3922:8, 3923:11, 3924:10, 3924:16, 3925:2, 3927:5, 3930:11, 3933:10, 3934:8, 3934:17, 3946:19, 3959:8, 3959:11, 3959:24, 3960:4, 3960:6, 3960:16, 3961:17, 3962:9, 3962:11, 3962:14, 3965:12, 3967:19, 3968:2, 4021:7, 4033:23, 4055:24, 4062:8, 4075:6, 4077:14, 4078:14

**transactions** [36] - 3915:19, 3923:23, 3926:2,

3928:4, 3928:16, 3928:22, 3929:2, 3930:11, 3931:6, 3932:21, 3935:9, 3946:4, 3946:6, 3949:7, 3959:19, 3961:16, 3967:4, 3967:14, 3986:21, 3986:24, 3988:16, 3988:17, 3996:2, 3999:10, 4000:13, 4003:8, 4004:20, 4008:2, 4015:8, 4051:10, 4054:5, 4054:16, 4055:1, 4074:22, 4075:1, 4077:24

**transcript** [1] - 3895:25, 3906:4, 3906:5, 4078:11, 4085:15, 4085:16, 4085:17, 4087:13, 4087:14, 4087:18, 4088:11

**TRANSCRIPT** [1] - 3894:10

**transcripts** [1] - 4088:3

**transfer** [21] - 3906:2, 3915:13, 3923:20, 3949:15, 3959:12, 3965:7, 3976:19, 3983:24, 3996:18, 3997:1, 4016:14, 4022:18, 4033:3, 4034:1, 4034:7, 4035:1, 4036:7, 4036:9, 4036:19, 4037:2, 4048:17

**transferred** [32] - 3976:12, 3977:1, 3988:23, 3989:5, 3994:18, 3994:20, 3994:21, 3995:11, 3995:18, 3996:7, 3996:15, 3996:20, 3996:22, 3997:8, 4000:21, 4003:12, 4003:13, 4003:18, 4004:3, 4004:10, 4004:12, 4004:14, 4004:16, 4005:4, 4008:11, 4008:13, 4011:16, 4012:2, 4012:3, 4013:3, 4013:17, 4013:18

**transfers** [11] - 3934:1, 3945:4, 3945:6, 3966:5, 4014:3, 4032:22, 4032:23, 4035:9, 4035:11, 4036:18, 4063:9

**translation** [2] - 4017:18, 4017:25

**treated** [1] - 3945:12

**trial** [10] - 3896:8, 3897:1, 3905:2, 3907:18, 3930:21, 4037:20, 4048:12, 4078:1, 4086:7, 4086:9

**tried** [1] - 4083:18

**trouble** [1] - 4053:9

**true** [41] - 3896:9, 3907:8, 3913:10, 3917:14, 3919:15, 3920:2, 3922:7, 3925:7, 3928:15, 3928:21, 3935:8, 3935:22, 3936:17,

3940:7, 3949:21, 3952:13, 3952:20, 3952:21, 3954:18, 3954:24, 3954:25, 3955:20, 3955:21, 3971:5, 3971:6, 3984:8, 3986:24, 3987:5, 4021:17, 4021:21, 4024:1, 4024:9, 4024:20, 4026:10, 4026:13, 4027:10, 4028:17, 4030:7, 4032:17, 4037:10, 4037:15

**truncated** [1] - 4088:10

**Trust** [26] - 3912:15, 3912:16, 3912:20, 3913:5, 3913:9, 3913:12, 3916:12, 3916:16, 3916:19, 3916:23, 3920:21, 3920:23, 3921:13, 3921:17, 3922:1, 3922:9, 3923:23, 3927:7, 3927:22, 3933:17, 3989:14, 3990:3, 3995:10, 3996:23, 3998:22, 4003:11

**trust** [5] - 3961:13, 3962:6, 3962:19, 3994:17, 4063:10

**Trust's** [1] - 3988:22

**truthful** [1] - 4032:10

**try** [10] - 3902:22, 3957:5, 3957:6, 3957:9, 3967:2, 4045:3, 4047:6, 4060:21, 4060:22, 4089:3

**trying** [11] - 3919:25, 3957:3, 3980:2, 4058:11, 4066:8, 4081:18, 4082:5, 4082:15, 4083:1, 4083:14, 4085:18

**Tuesday** [3] - 4081:23, 4081:24, 4083:19

**turn** [20] - 3897:2, 3921:21, 3924:13, 3937:13, 3948:13, 3994:15, 3996:1, 3996:13, 3997:24, 3998:24, 3999:18, 4000:12, 4001:22, 4004:18, 4004:24, 4007:13, 4008:5, 4010:15, 4053:7, 4082:20

**turned** [2] - 3963:14, 3982:16

**turning** [19] - 3912:15, 3932:6, 3933:8, 3942:19, 3944:22, 3946:20, 3992:2, 3998:11, 4002:19, 4002:22, 4004:5, 4005:8, 4006:24, 4007:19, 4011:23, 4012:24, 4013:13, 4013:24, 4017:11

**twice** [1] - 4085:12

**two** [32] - 3896:4, 3909:8, 3943:9, 3944:24, 3944:25,

3945:7, 3946:13, 3947:7, 3948:20, 3954:13, 3954:14, 3965:22, 3966:16, 3967:17, 3979:14, 3979:16, 3980:4, 3980:5, 3980:23, 3984:9, 3984:11, 4050:2, 4054:12, 4054:16, 4054:18, 4054:21, 4054:25, 4059:19, 4063:7, 4063:23, 4073:1, 4083:9

**type** [3] - 3952:1, 3975:11, 3979:24

**typed** [1] - 4030:6

**typically** [2] - 4028:14, 4029:15

**Tyson** [6] - 4021:7, 4025:14, 4025:22, 4043:2, 4074:15, 4076:19

## U

**U.S** [7] - 3901:12, 3902:14, 4027:5, 4037:24, 4039:1, 4039:18, 4039:22

**Ula** [25] - 3916:11, 3929:3, 3934:18, 3934:22, 3953:21, 3961:13, 3961:18, 3962:6, 3962:11, 3962:14, 3962:19, 3963:2, 3963:14, 3966:15, 3996:20, 3997:5, 4003:13, 4004:10, 4004:14, 4047:14, 4048:11, 4048:12, 4048:18, 4048:24, 4048:25

**unbelievably** [1] - 3905:15

**under** [12] - 3897:21, 3901:22, 3902:6, 3904:1, 3952:17, 3954:22, 4015:13, 4037:6, 4079:9, 4080:6, 4080:11, 4085:23

**underlie** [1] - 4036:19

**Unique** [1] - 4002:12

**Unitech** [2] - 4001:13, 4002:14

**UNITED** [3] - 3894:1, 3894:3, 3894:11

**United** [7] - 3894:6, 3894:14, 3894:17, 3901:14, 4028:24, 4038:11, 4039:9

**unites** [1] - 3998:18

**unless** [1] - 4069:7, 4086:4

**unrelated** [1] - 3898:8

**untruthful** [1] - 4032:15

**up** [39] - 3897:4, 3904:1, 3908:18, 3908:19, 3920:25, 3921:16,

3934:20, 3949:15, 3955:9, 3957:3, 3959:20, 3963:8, 3963:22, 3966:4, 3967:6, 3968:24, 3972:5, 3973:7, 3983:5, 3989:8, 3996:11, 4007:11, 4011:12, 4012:11, 4016:9, 4022:6, 4053:10, 4060:6, 4061:10, 4062:6, 4068:20, 4069:25, 4074:22, 4082:12, 4082:19, 4083:1, 4083:4, 4084:10, 4088:7

**Urban** [17] - 3935:3, 3935:5, 3935:9, 3937:22, 4000:13, 4000:15, 4000:18, 4002:20, 4002:25, 4035:5, 4035:12, 4036:12, 4036:13, 4036:14, 4036:15, 4036:19

**user** [1] - 3980:4

**user-created** [1] - 3980:4

**uses** [1] - 4041:13

**usual** [1] - 4040:17

**utilized** [1] - 4030:5

**utilizing** [4] - 3898:8, 3903:17, 4048:16, 4087:24

## V

**various** [16] - 3910:4, 3911:2, 3923:23, 3948:24, 3970:8, 3987:6, 3988:16, 3993:12, 4004:19, 4021:15, 4026:21, 4032:23, 4037:18, 4077:23, 4078:3, 4078:7

**Vegas** [1] - 4002:12

**Ventures** [22] - 3913:6, 3915:23, 3916:19, 3916:23, 3917:3, 3917:7, 3917:10, 3923:13, 3923:16, 3923:20, 3925:25, 3926:6, 3926:20, 3926:22, 3927:8, 3929:3, 3933:13, 3933:16, 3933:22, 3934:2, 3934:8, 4004:17

**ventures** [2] - 3990:18, 3991:14

**verification** [2] - 3962:3, 3980:23

**verified** [1] - 3926:11

**verify** [12] - 3950:6, 3957:17, 3957:21, 3959:4, 3959:20, 3959:23, 3962:10, 3968:2, 3981:4, 3984:18, 3984:22, 4086:2

**version** [4] - 3935:20, 3938:19, 3991:25, 4088:14

**Veterans** [1] - 3894:21

**VI** [8] - 3917:7, 3988:23, 3989:4, 3989:15, 3990:18, 3991:14, 3994:21

**via** [1] - 4055:12

**video** [2] - 3906:5

**view** [1] - 3970:25

**voice** [1] - 3908:19

**voices** [1] - 4084:14

**voir** [3] - 3917:24, 3936:5, 3988:6

**VOIR** [1] - 3918:1, 3936:8, 3940:20, 4090:6, 4090:8, 4090:10

**Vonage** [2] - 4069:17, 4069:18

**vs** [3] - 3901:14, 3901:19, 3902:14

## W

**W-A-Y-N-E** [1] - 3985:14

**Wachovia** [1] - 3944:23

**Wachovia/Wells** [1] - 3940:1

**wait** [3] - 3971:14, 4086:3, 4086:5

**waiting** [1] - 4086:14

**walk** [2] - 3913:25, 3915:1

**wall** [2] - 3896:7, 3904:25

**Wampler** [4] - 4005:12, 4005:14, 4005:19, 4007:8

**warrant** [1] - 3907:5

**Washington** [2] - 3935:3, 3935:5

**waste** [1] - 4068:21

**Wayne** [15] - 3985:8, 3985:14, 3985:17, 4020:19, 4020:21, 4037:5, 4037:18, 4040:7, 4048:2, 4060:7, 4061:5, 4073:2, 4074:20, 4075:5, 4075:19

**WAYNE** [2] - 3985:9, 4090:23

**ways** [1] - 3976:21

**Wednesday** [4] - 4081:24, 4082:9, 4082:22, 4089:7

**week** [6] - 4076:16, 4081:20, 4082:25, 4083:12, 4086:6, 4086:8

**weekend** [1] - 3903:20

**weeks** [2] - 4045:9, 4086:14

**weight** [1] - 3900:8

**WEINBLATT** [1] - 3894:20

**welcome** [1] - 3985:2

**well..** [1] - 3944:14

**Wells** [12] - 3910:18, 3939:15, 3947:6, 3947:11, 3947:14, 3960:7, 3960:18,

3965:25, 3968:5, 3995:22, 4061:9, 4074:24

**Western** [1] - 3901:20

**Westlaw** [2] - 3901:20, 3901:24

**whereas** [1] - 3933:9

**wherein** [1] - 3956:1, 4078:12

**whole** [3] - 3920:7, 4080:12, 4082:11

**William** [1] - 3943:21

**wire** [24] - 3906:2, 3910:2, 3915:8, 3918:13, 3918:16, 3918:20, 3918:23, 3919:6, 3942:10, 3959:11, 3959:12, 3960:2, 3960:7, 3960:17, 3962:5, 3965:7, 3966:5, 3968:4, 4016:14, 4022:18, 4023:17, 4063:9, 4069:21

**wired** [2] - 3898:15, 4050:25

**wirelessly** [1] - 3977:3

**wish** [1] - 4079:17

**withdraw** [3] - 3937:2, 3944:9, 4067:6

**withdrawal** [23] - 3993:9, 3993:15, 3993:17, 3993:18, 3993:22, 3993:23, 4001:14, 4001:16, 4001:17, 4001:21, 4001:23, 4013:4, 4013:20, 4040:12, 4040:15, 4040:18, 4040:19, 4041:6, 4042:4, 4042:14, 4049:19, 4075:13, 4076:6

**withdrawals** [4] - 3941:3, 3959:4, 3993:13, 4040:23

**withdrawing** [1] - 4040:17

**withdrawn** [7] - 3990:25, 3993:20, 4029:18, 4033:9, 4039:13, 4044:11, 4068:8

**witness** [33] - 3904:11, 3905:10, 3905:21, 3908:5, 3908:9, 3957:8, 3957:21, 3968:17, 3968:25, 3969:3, 3985:7, 3985:10, 3988:25, 4020:9, 4028:12, 4031:20, 4032:8, 4059:15, 4059:25, 4060:1, 4060:10, 4060:12, 4060:20, 4066:11, 4079:2, 4080:14, 4082:1, 4082:4, 4082:19, 4083:1, 4083:3, 4083:15

**WITNESS** [11] - 3908:15, 3908:20, 3956:5, 3961:23, 3969:8, 3985:14, 4039:5, 4051:25, 4052:4, 4058:10, 4070:1

29

**WITNESSES** [1] - 4090:1
**witnesses** [13] - 4028:3, 4028:7, 4029:8, 4029:9, 4029:12, 4029:23, 4059:20, 4077:17, 4079:15, 4081:19, 4081:22, 4082:25, 4083:17
**word** [6] - 3977:7, 3982:14, 4024:19, 4041:9, 4041:14, 4081:6
**words** [2] - 3936:21, 3978:1
**worried** [1] - 4082:14
**worth** [1] - 4088:8
**writing** [2] - 3959:21, 4027:24
**written** [8] - 3997:10, 3998:7, 4030:6, 4068:5, 4068:15, 4068:17, 4071:3, 4073:6
**wrote** [3] - 3965:15, 4027:24, 4086:1

## Y

**year** [2] - 4069:23, 4082:13
**years** [4] - 3905:16, 3912:6, 3969:16, 3985:22
**yellow** [5] - 3937:19, 3937:21, 3942:4, 3946:1, 4023:24
**yesterday** [6] - 3896:5, 3902:4, 3903:7, 3905:3, 3930:3, 4079:7
**YORK** [1] - 3894:1
**York** [6] - 3894:6, 3894:15, 3895:21, 3973:16, 3973:18, 4029:1
**yourself** [2] - 3978:3, 4039:21

## Z

**zooming** [2] - 3911:23, 3926:8