2152

1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA        :      13-CR-607 (JFB)
4
        -against-                      U.S. Courthouse
5                                  :
                                       Central Islip, New York
6   PHILLIP A. KENNER
    a/k/a "Philip A. Kenner",
7         and                    :
    TOMMY C. CONSTANTINE
8   a/k/a "Tommy C. Hormovitis"

9                    Defendants   :
                                       June 1, 2015
10  - - - - - - - - - - - - - - - - X      9:30 a.m.

11
    BEFORE:
12          HONORABLE JOSEPH F. BIANCO
            United States District Judge
13          and a jury

14
    APPEARANCES:
15
    For the Government:        KELLY T. CURRIE
16                             Acting United States Attorney
                               Federal Plaza
17                             Central Islip, New York 11722
                               BY:  JAMES M. MISKIEWICZ
18                                  SARITHA KOMATIREDDY
                                    Assistant U.S. Attorneys
19

20

21  For the Defendant:        HALEY, WEINBLATT & CALCAGNI LLP
    Phillip A. Kenner         One Suffolk Square
22                            1601 Veterans Memorial Highway
                              Suite 425
23                            Islandia, New York 11749
                              BY:  RICHARD HALEY
24

25

2153

```
 1   For the Defendant:        LaRUSSO & CONWAY LLP
     Tommy C. Constantine      300 Old Country Road
 2                             Suite 341
                               Mineola, New York 11501
 3                             BY:  ROBERT P. LaRUSSO
                                        and
 4                                 ANDREW L. OLIVERAS
                                   26 Strangford Court
 5                                 Oceanside, New York 11572

 6

 7   Court Reporter(s)         RONALD E. TOLKIN
                               OWEN WICKER
 8                             ELLEN COMBS
                               100 Federal Plaza
 9                             Central Islip, New York 11722
                               631-712-6102
10

11                             ***

12           THE CLERK:  All rise.

13           THE COURT:  Please be seated.

14           THE CLERK:  Calling case 13-CR-607, U.S.A. versus

15   Kenner and Constantine.

16           Counsel, please state your appearance for the

17   record.

18           MR. MISKIEWICZ:  Good morning, Your Honor.

19           James Miskiewicz, for the government.

20           THE COURT:  Good morning, Mr. Miskiewicz.

21           MS. KOMATIREDDY:  Good morning, Your Honor.

22           Saritha Komatireddy, for the government.

23           THE COURT:  Good morning, Ms. Komatireddy.

24           MR. LaRUSSO:  Good morning, Judge.

25           Robert LaRusso for Mr. Constantine.
```

1          THE COURT:  Good morning, Mr. LaRusso,

2   Mr. Constantine.

3          MR. HALEY:  Good morning, Your Honor.

4          Richard Haley, for Mr. Kenner.

5          THE COURT:  Good morning, Mr. Haley and Mr. Kenner.

6          Al right.  The jurors are all here.  We ready to go?

7          MR. MISKIEWICZ:  We tried, but we are one witness

8   short of what we anticipated would fill out the day.

9   Mr. Gaarn is unavailable.  So we have three witnesses lined up

10  for today; Darryl Sydor, Steven Ross, James Grdina.  That will

11  take up most of the day, I think.  We tried, but we are just

12  short, Your Honor.  I apologize for that.

13         THE COURT:  Okay.  Some of the jurors want to know

14  whether we were going to sit Wednesday and Thursday.  I'm

15  going to tell them we are barring some unforeseen event we'll

16  sit Wednesday, Thursday.  I think I'm going to tell those two

17  jurors to pay attention.  We'll come to their matter later in

18  the week.  I think that's the best way to handle it.

19         Anyone disagree?

20         MR. MISKIEWICZ:  No, Your Honor.

21         MR. LaRUSSO:  No, Your Honor.

22         MR. HALEY:  Your Honor, my only comment, I take it

23  that Your Honor made the decision to excuse those two jurors.

24  I know one had a problem with two days, the other had a

25  problem with one day.  In order to accomplish the Wednesday

1    and Thursday sitting -- by the way, I'm not suggesting you

2    don't do that.  We're going to lose two jurors, then?

3            THE COURT:  That's my current intention.  The reason

4    I'm not excusing them now is we don't know what will happen if

5    we have a bunch of jurors come down with an illness or other

6    issue and not being able to sit Wednesday and Thursday.  We'll

7    still have them here.

8            MR. HALEY:  Thank you, Your Honor.

9            THE COURT:  Let's bring in the jury.

10           THE CLERK:  All rise.

11           (Whereupon the jurors enter the courtroom at 9:52

12   a.m.)

13           THE COURT:  Please be seated.

14           Good morning, members of the jury.

15           ALL JURORS:  Good morning.

16           THE COURT:  Good to see you back.  Before we

17   continue with the trial, I know some jurors are asking what

18   did I decide with respect to Wednesday and Thursday of this

19   week.  It's my intention to sit on Wednesday and Thursday of

20   this week.  I have spoken to the lawyers.  And we are still

21   behind, in my estimate.  So I don't want to lose two days.

22           So my current intention is, we have four alternates

23   left, to excuse those jurors when their events come up and use

24   the alternates to replace them.  But I want to emphasize to

25   Juror No. 3 and Juror No. 12, you need to continue to pay

2156

1    attention even though my intention is to excuse you later in

2    this week because as you've seen from this trial, unforeseen

3    things can happen.  Although my current intention is to sit

4    Wednesday and Thursday, I want you to stay until the time for

5    you to leave for your obligations.

6          So we'll continue with the trial.  I'll ask the

7    government to call its next witness.

8          MS. KOMATIREDDY:  The government calls Darryl Sydor.

9          THE COURT:  Mr. Sydor, come up to the witness stand

10   over here, and stand once you get there.

11         THE CLERK:  Raise your right hand.

12         (Witness sworn.)

13         THE WITNESS:  I do.

14   D A R R Y L    S Y D O R

15         called as a witness, having been first

16         duly sworn, was examined and testified

17         as follows:

18         THE CLERK:  Please state your name, and spell it for

19   the record.

20         THE WITNESS:  Darryl Sydor.

21   D-A-R-R-Y-L, middle initial M, S-Y-D-O-R.

22         THE COURT:  Be seated, Mr. Sydor.

23         Pull the microphone closer to you, and keep your

24   voice up.

25         Go ahead.

1        MS. KOMATIREDDY:  Thank you, Your Honor.

2   DIRECT EXAMINATION

3   BY MS. KOMATIREDDY:

4   Q    Good morning, Mr Sydor.

5   A    Good morning.

6   Q    Where do you live, sir.

7   A    Minnesota.

8   Q    What do you do for a living?

9   A    I am a NHL hockey coach.

10  Q    What team?

11  A    Minnesota Wild.

12  Q    What did you do before that?

13  A    I was an NHL player for 18 years.

14  Q    How old were you when you got your start in the NHL

15  league?

16  A    I played a half a year in '91, '92, at the age of 19.

17  The first full season was 1993.  I was 20.

18  Q    Can you walk us through the different teams you played

19  on?

20  A    I played for six teams.  I started out with Los Angeles

21  for five seasons.  I got traded to Dallas.  After Dallas, I

22  was there for seven years, I got traded to Columbus for a

23  quick stint, six months.  Went to Tampa Bay.  Got traded there

24  in January.  Went to Tampa Bay '04 -- '03-'04 season.  I was

25  there close to three years.  Went back to Dallas for a season.

1  After that I went to Pittsburgh for a couple of years.  Traded

2  back to Dallas.  And then went on to -- final season was with

3  St. Louis.

4  Q    That was '09 -'10.

5  A    That would have been '09 -'10, I believe, yes.

6  Q    Now, when you started playing hockey professionally, how

7  far did you get in school at that point?

8  A    I finished my grade 12 in playing hockey in Canada.

9  Q    What was the last job you had had, if any, before you

10 were playing hockey professionally?

11 A    During the summer of my junior career, my dad was a

12 Journeyman in the City.  He wanted me to kind of get down and

13 learn a little bit of the trades.  I worked for my uncle for

14 PDQ Plumbing for half a summer.

15 Q    What does PDQ stand for?

16 A    Pretty Damn Quick Plumbing.

17 Q    How much did you make when you were working for your

18 uncle during the summer?

19 A    That was more for experience.  He just wanted me to, you

20 know, dig the ditches, doing the grunt work for my uncle.

21 Q    Just give us an idea what you made during that time, if

22 anything?

23 A    I can't recall taking a paycheck home.  So maybe $10 an

24 hour.

25 Q    How much did you make in your first professional hockey

1  contract?

2  A    My first NHL contract was a signing bonus of $165,000,

3  with a salary of 150.

4  Q    And you said you played for half a season and then you

5  played a full season, is that right?

6  A    I played 48 games in '91 -'92.  Then they sent me back to

7  my junior team after the World Junior's.  I played for my

8  country.  Or the World Juniors Tournament at that age.  And

9  then went back to juniors for that year.

10  Q    When you got drafted and went to the L.A. Kings, how much

11  did you make in that first year that you were there?

12  A    Well, I think my first contract was -- I know my salary

13  was 150.  I thought that was -- you know, 165 was my signing

14  bonus.  Again, at that age that's a lot of money.

15  Q    Did you a plan what to do with that money?

16  A    My mom was a banker.  She was just helping me out.  I was

17  basically just putting it into a bank, a Nova Scotia bank

18  account.  Not really a plan.

19  Q    Did there come a time when you thought about investing

20  the money?

21  A    Yes.  Through help with my mom.  She always wanted me to

22  save my money.

23  Q    Did there come a time you got help from someone else

24  other than your mom?

25  A    Yeah.  So -- excuse me -- after my first contract, which

SYDOR-DIRECT-KOMATIREDDY                    2160

1   I was drafted pretty high, I had an agent, a Toronto by the

2   name of Don Meehan.  He had a lot of high picks.  After, there

3   was a trend.  And you know, after you were drafted, you kind

4   of lost touch with him.  So I went a different way after that

5   contract with another agent out of Los Angeles.  You try to

6   call him and -- you know, obviously, I got drafted and he got

7   paid.  Every year he drafted players.  So he went to other

8   people and shuffled me down.  I basically called and just

9   would say I was somebody different, then he'd answer the

10  phone.  Or his secretary would talk to him.  So anyway, that

11  relationship went south.  I changed agents.  And that's when I

12  met my first financial advisor Scott Bye.

13  Q    How long did you stay with Mr. Bye?

14  A    That would have been probably about three seasons.  I'd

15  been with him -- I got rid of him after the -- after me and my

16  wife got married in 1995.

17  Q    When you got rid of him, what did you do next?

18  A    During '95 -'96 is when I got married, in the summer of

19  '95.  So the next season I wrote him a letter saying I was

20  going in a different direction.  And that's when I met Phil

21  Kenner.

22  Q    How did you meet Mr. Kenner?

23  A    Actually, my wife met Phil.  I was playing for the Los

24  Angeles Kings at the time.  I believe he was in town for --

25  meeting with another player that I was playing with, Dmitri

1   Khristich.  And I believe he sat with my wife during the game.

2   And then I met him, I believe, the next day in the hall of the

3   hockey rink in Los Angeles Forum.  He introduced himself to

4   me.

5   Q    Would you recognize him if you saw him today?

6   A    Yes.

7   Q    Is he in the courtroom?

8   A    Yes.  He's sitting at the table.

9        MR. HALEY:  The identification is conceded.

10       THE COURT:  The identification is conceded.

11  Q    When you got to know Mr. Kenner through these

12  conversations over the time you got to know him, what did he

13  tell you about himself?

14  A    That he was working with players.  He was a financial

15  advisor, I believe in Boston at the time.  Derek Sanderson,

16  which was a hockey player, that name rang a bell, he was part

17  of the firm.  He wanted to help me out, be my financial

18  advisor.

19  Q    Did you end up hiring Mr. Kenner to be your financial

20  advisor?

21  A    Yes.

22  Q    Did you pay him a regular fee for his work?

23  A    Yes.

24  Q    Can you describe it in general terms, the nature of the

25  fee?

1    A    I believe it was a quarterly fee.

2    Q    Now, when Mr. Kenner began serving as your financial

3    advisor what kinds of investments did he propose at the

4    beginning?

5    A    Well, at the time of the switch was, Scott Bye was a

6    financial advisor that talked -- you know, I'm a grade 12

7    education hockey player and he talked in the financial world

8    talk.  I wasn't really getting it.  And after speaking with

9    Phil, it was more talking to me in my world and a lot of

10   things that I guess I would understand easier.  And we started

11   off pretty conservative with just stocks and bonds.

12   Q    Did there come a time when that changed?  Did he mention

13   other kinds of things?

14   A    Yes.  After -- you know, after we -- I believe we got

15   settled with stocks and bonds, we started venturing out to

16   more -- I guess you would say risky investments.

17   Q    I'm going to talk about a few of those investments.

18   Before I do that, when Mr. Kenner was your financial advisor

19   did you have any discussion about him having a power of

20   attorney for you?

21   A    Yeah.  I offered to give him power of attorney.  As a

22   hockey player, during the season I was focused on hockey.

23   That was what I did from two years to -- two years old.

24   Q    What was your understanding of the -- in terms of the

25   power of attorney, what was the agreement between you and

1    Mr. Kenner?

2    A    Well, playing hockey, you know, I'd be -- you travel a

3    lot.  If there's things that were going to be happening and I

4    wasn't able to do it, I gave him a power of attorney to do it.

5    As long as it came through and I knew what was going on.

6    Q    "As long as it came through," what does that mean?

7    A    Well, as long as we talked about it.  I wouldn't give him

8    the power of attorney to do something on my behalf without me

9    knowing about it.

10   Q    I'm going to focus your attention on an investment in

11   something called the Hawaii project.  Does that sound

12   familiar?

13   A    Yes.

14   Q    How did you hear about the Hawaii project?

15   A    Just through conversation.  I believe that's the Little

16   Isle IV.  We were going to put money into some land, supposed

17   to be a great piece of property.  A sugar cane farm, I believe

18   it was.  And then, you know, purchase the land, develop it and

19   then sell it.

20   Q    You said "through conversation."  Conversations with

21   whom?

22   A    With Phil Kenner.

23   Q    When you were having this conversation with Mr. Kenner,

24   did you come to a decision where you did decide to invest in

25   that project?

SYDOR-DIRECT-KOMATIREDDY                                    2164

1   A     Yes.

2   Q     How much did you invest?

3   A     $500,000, I believe.

4   Q     That number, when was that number mentioned -- withdrawn.

5         Who came up with that number in your conversation?

6   A     Phil Kenner.

7   Q     Did you talk about a line of credit at all?

8   A     Not at that time.  Not a line of credit.

9   Q     Did he say anything about an additional $100,000?

10  A     Yes.  I remember a conversation about another 100,000

11  line of credit.

12  Q     Now, did you also talk about -- around this time that you

13  were talking to Mr. Kenner about Hawaii, where were your bank

14  accounts?

15  A     Well, my personal bank accounts were in Bank of America.

16  I had Northern Trust with Charles Schwab.

17  Q     Had you talked to Mr. Kenner at all about moving accounts

18  and where your bonds were?

19  A     I know we had a conversation about transferring the bonds

20  from one to the other, yes.

21  Q     Did he ever tell you why?

22  A     I can't really recall why.

23  Q     Focusing on the Hawaii project.  At the time that you

24  decided to invest in Hawaii, did Mr. Kenner tell you anything

25  about money in Hawaii going to Mexico?

1              MR. HALEY:  I just object to the leading nature.

2     Ask what they spoke about.  I object to the leading question.

3              MS. KOMATIREDDY:  I'll withdraw it, Your Honor.

4     Q    At the time that you were investing in the Hawaii

5     project, did you know of Tommy Constantine?  That was 2003,

6     2004.

7     A    I don't know.

8     Q    Did Mr. Constantine, to your knowledge, have any

9     involvement in the Hawaiian project?

10    A    No.

11    Q    Did you authorize any of your money in the Hawaiian

12    project to go to Mr. Constantine?

13    A    No.

14    Q    Did Mr. Kenner tell you about who else would be investing

15    in the Hawaiian project, if anyone?

16    A    I think through conversations, you know, just other

17    hockey players.

18    Q    I'm going to name a couple of hockey players and ask you,

19    at that time, 2003, 2004, did you have any loans out to other

20    professional hockey players?

21    A    No.

22    Q    Sergei Gonchar, Mattias Norstrom, Glenn Murray, Michael

23    Peca?

24    A    No.

25    Q    Did they loan you any money?

1  A    No.

2  Q    Now, later -- you discussed a few years later just

3  talking about where it was going.  Did you have any

4  conversations with Mr. Kenner about Lehman?

5  A    Yes.  I don't exactly remember the whole conversation.

6  But it does -- you know, Lehman Brothers was coming into Cabo

7  in Mexico and, I guess, solidify things down there.

8  Q    Is that what he told you about it?  Is there anything

9  else that he told you about it?

10  A    That, and then I think the 100,000 would be -- once they

11  get that -- once Lehman Brothers got involved, the 100,000 was

12  to come back.

13  Q    I'm going to fast forward to 2009 and show you what is in

14  evidence as Exhibit 2118, 2119, and 2120.

15            (Handing.)

16            Did you have a chance to look at those before you

17  came to court today?

18  A    Yes.

19  Q    I will publish it to the jury, 2118.

20            These appear to be letters from Northern Trust Bank

21  to you.

22  A    Yes.

23  Q    Did you receive any of these letters in February or March

24  of 2009?

25  A    No.  I first saw these the other day.

1  Q    Turning to 2119, the letter entitled Notice of Default

2  and Intent to Sell Collateral.  2120, a letter entitled Notice

3  of Exclusive Control.

4         When you testified that you first saw them the other

5  day, can you be specific?  What other day?

6  A    About a week and a half ago when I came the first time to

7  testify.  Something happened with someone's mom and I didn't

8  stay.  But that's when I first saw the documents.

9  Q    I'm going to hand you what's in evidence as Government

10  Exhibit 2135.

11         (Handing.)

12         Did you have a chance to look at that before you

13  came to court today?

14  A    The same time I saw the other papers for the first time.

15         MR. HALEY:  Which one is this?

16         MS. KOMATIREDDY:  Here.

17         (Handing to counsel.)

18  Q    Just looking at this loan, it appears to be in your name.

19  In 2004, do you see that balance on the right side going from

20  zero to 400,000 to a million?

21  A    Yes.

22  Q    Did Mr. Kenner ever tell you about a loan in your name

23  from Northern Trust Bank of that amount?

24  A    No.

25  Q    You talked about how he had a power of attorney where you

1    authorized him to make transactions for you when he checked

2    with you first.  Did he check with you to see about, for

3    example, this note increase of a million dollars in December

4    of 2004?

5    A    No.  Because I would have -- this would have -- bring up

6    red flags for me and I would have asked a lot of questions.  I

7    wouldn't have allowed this.

8    Q    What about in February 2005 where there's another note

9    increase of $200,000.  The loan goes up to 1.2 million.  Did

10   he check with you about that?

11   A    No.

12   Q    I'm going to hand you what is in evidence as Government

13   Exhibit 2169.

14          (Handing.)

15          This is an account statement for the Darryl Sydor

16   account statement for Northern Trust.  Do you see that?

17   A    The first page?

18   Q    I'm looking at the header right now.

19   A    Yes.

20   Q    I'm going to turn to page 11 of this document, March 31,

21   2009.  Do you see an entry there, "Payment to or for benefit

22   of client"?

23   A    Yes.

24   Q    It says, "Pay Northern Trust for the benefit of Darryl

25   Sydor.  Represents payoff of loan."  Do you see that?

1   A    Yes.

2   Q    In the amount of $866,200.86, is that right?

3   A    Yes.

4   Q    This account, Mr. Sydor, fair to say this bond account

5   was your retirement fund?

6   A    Yeah.  This is a -- yes.  Yes.

7   Q    Did you know in March of 2009 that the $866,000 was --

8   your retirement fund was going to pay off a loan in your name?

9   A    No.

10  Q    When did you first find out about that?

11  A    The same time I seen these papers, I saw these.

12  Q    When was that?

13  A    About a week and a half ago.

14  Q    Did Mr. Kenner ever tell you?

15  A    Not to pay off a loan, no.

16  Q    I'm going to turn your attention to another investment.

17  Are you familiar with the company called Eufora?

18  A    Yes.

19  Q    Tell us about who first told you about Eufora?

20  A    I remember a conversation.  I was going, at the time, to

21  Columbus.  A conversation with Phil Kenner about Eufora, a

22  prepaid credit card company that was supposedly a good

23  investment.

24  Q    And what was the purpose of the conversation?

25  A    An explanation on what it was, was going to be.  And then

1    I believe we talked about how much to put in there.

2    Q    What did he tell you about what kind of company it was?

3    A    It was a prepaid credit card company that, you know,

4    people would use.  And that's pretty much what I knew about

5    it.

6    Q    You said you were in Columbus at the time.  Was that the

7    '03 -'04 season, for the Blue Jackets?

8    A    Yeah.  I got traded in January of '04 to Tampa Bay.  It

9    was before we talked, yeah.

10   Q    So it would have been before January of '04?

11   A    Yes.

12   Q    When you had that conversation, did you decide to invest

13   in Eufora?

14   A    Yes.

15   Q    Approximately how much did you invest?

16   A    I believe 200.

17   Q    $200,000?

18   A    I believe so.

19   Q    Did there come a time years later that you talked about

20   Eufora again?

21   A    Yes.  I believe there was another -- excuse me -- another

22   time where he asked for another $8,700 to basically get it

23   over the hump and get it finalized.

24   Q    So let me just focus your attention, is this

25   approximately 2008?

1   A    I believe so, yes.

2   Q    I'm going to show you what's marked as Government

3   Exhibit 5004.

4        (Handing.)

5   Q    Take a look at that.  In this conversation of getting

6   Eufora over the final hump, did you decide to invest again?

7   A    Well, seeing this, yes, I guess I did.

8   Q    Looking at Government Exhibit 5004, does that refresh

9   your recollection of how much money you put in?

10  A    I'm trying to think of the dates it was.

11  Q    Okay.

12  A    Yes.

13  Q    How much did you invest in Eufora for the final push?

14  A    Well, it's saying $50,000 here that he wired in.

15  Q    Does that sound around right?

16  A    Yes.  I think it's starting to come back.

17  Q    So at this time, let's go back to your conversation when

18  Mr. Kenner is talking to you about the final push.  What did

19  he say the money was going to be used for?

20  A    Well, for Eufora.  Just to, you know, get it over the

21  hump and get everything finalized, in production, and get it

22  out there for everybody to use, and to make money.

23       MS. KOMATIREDDY:  At this time, the government

24  offers Government Exhibit 5004 by stipulation.

25       THE COURT:  Any objection?

1          MR. LaRUSSO:  No, Your Honor.

2          MR. HALEY:  No, sir.

3          THE COURT:  Government 5004 is admitted.

4          (So marked as Government Exhibit 5004 in evidence.)

5    Q    Take a look at this, Mr. Sydor.  You testified earlier

6    that Mr. Kenner had a power of attorney on your behalf,

7    correct?

8    A    Yes.  It's not in place any longer.  I was traveling at

9    the time.

10   Q    When you decided to invest in Eufora, did Mr. Kenner tell

11   you that money would go to an entity called Constantine

12   Management Group?

13         MR. HALEY:  Can I just object to the leading nature

14   of it?

15         THE COURT:  Sustained as to form.

16         MR. HALEY:  Thank you.

17   Q    Where did you think the money -- where did Mr. Kenner

18   tell you the money was going?

19   A    For the investment in Eufora.

20   Q    At that time, did you know what the Constantine

21   Management Group was?

22   A    No.  I don't recall that.

23   Q    Did you authorize money to go to Constantine Management

24   Group?

25   A    I don't believe so.

SYDOR-DIRECT-KOMATIREDDY                    2173

1   Q    I'm going to show you what's in evidence as Government

2   Exhibit 1709.  If you look at your screen there, I'm going to

3   show you what is a bank record for Constantine Management

4   Group for July 2008.  Turning to page 2, do you see July 8,

5   2008, a wire in of $50,000 in the name of Darryl Sydor?

6   A    Yes.

7   Q    Turning to page 3, look at the July 8th, the wire is out.

8   Do you see a wire out of $28,000 to PEII Publishing?

9   A    Yes.

10  Q    Did you authorize any of your money to go to PEII

11  Publishing?

12  A    I have no idea what PEII Publishing is.

13  Q    Well, did you authorize any of your money to be used for

14  Playboy Enterprises?

15  A    No.

16  Q    Now, at the time that you invested in Eufora did the

17  defendant say anything to you about your money being used to

18  buy out other investors?

19  A    No.

20  Q    To buy out Tommy Constantine?

21  A    No.

22  Q    Or to buy out Phil Kenner?

23  A    No.

24  Q    Would that have been important to you in deciding whether

25  to give money to Eufora?

1  A    Yes.

2  Q    Why?

3  A    I would ask a lot of questions about what's going in

4  here.

5  Q    Finally, I'm going to turn your attention to something

6  called a Global Settlement Fund.  Does that sound familiar to

7  you?

8  A    Yes.

9  Q    Approximately where were you in May of 2009?  Where were

10 you in your playing career?

11 A    May 2009.  May 2009 I would still be in Dallas.

12 Q    Okay.

13 A    I think I had surgery that year for injuries.

14 Q    Would you tell us how you heard about the Global

15 Settlement Fund?

16 A    Through Phil again.  The Global Settlement Fund was going

17 to be funds to use against lawyer fees and different stuff for

18 Mexico investments.

19 Q    Okay.  And when you say "different stuff for Mexico

20 investments," did you have other investments in Mexico, ones

21 we haven't talked about so far?

22 A    I had the golf course in Cabo and then the North Property

23 Investment.

24 Q    How did the Global Settlement Fund relate to those Mexico

25 investments, as it was explained to you?  Sorry.  Let me

1    rephrase that question.

2            What did Phil say the purpose of the Global

3    Settlement Fund was in connection to the investments?

4    A    It was going to be to -- you know, legal fees, lawyer

5    fees for trying to get all this stuff that's going out to Cabo

6    with that investment of the golf course.  Just lawyer fees and

7    legal fees for that.

8    Q    Did you decide to give money to the Global Settlement

9    Fund?

10   A    Yes.

11   Q    Approximately how much?

12   A    I believe it was about 250.  200 or 250.

13   Q    I'm going to show you what's in evidence as Government

14   Exhibit 1503.

15            (Handing.)

16            Take a look at that.  Is that a fair collection of

17   your contributions to the Global Settlement Fund?

18   A    Yes.

19   Q    Now, you mentioned that the money was going to be used

20   for different legal fees for Mexico.  At that time, did you

21   authorize your money to be used for any other kind of losses?

22   A    No.

23   Q    Did you know anything about a lawsuit between Mr. Kenner

24   and his secretary Kristie Myrick?

25   A    Yes, I knew of the lawsuit.

1   Q    Did Mr. Kenner tell you that any money from the Global

2   Settlement Fund would be used for that lawsuit?

3   A    No.

4   Q    Did you authorize money that went into the Global

5   Settlement Fund to be used for the Myrick lawsuit?

6   A    Not for the Myrick lawsuit.

7   Q    Did you know anything about a lawsuit by other hockey

8   players; Juneau, Moreau, and Nolan?

9   A    Yes.

10  Q    At the time that you had this conversation about the

11  Global Settlement Fund, did Mr. Kenner tell you about money in

12  the fund being used for those lawsuits?

13  A    No.

14  Q    Did you authorize any of your money to go to those

15  lawsuits?

16  A    No.

17  Q    I'm going to show you what is marked as Government

18  Exhibit 6603.

19       (Handing.)

20       Is that your e-mail at the top, Mr. Sydor?

21  A    Yes, it is.

22  Q    Is that the address in how you communicated with

23  Mr. Kenner?

24  A    I'm sorry?

25  Q    Is that the e-mail address you would use to contact

1   Mr. Kenner?

2   A    Yes.

3   Q    Just looking over this e-mail, does that appear to be a

4   true and accurate copy of the e-mail conversation between you

5   and Mr. Kenner in May of 2009?

6   A    It's my e-mail.  I don't recall seeing all of this, no.

7            MS. KOMATIREDDY:  The government will offer 6603

8   with that caveat.

9            MR. HALEY:  I consent.

10           MR. LaRUSSO:  No objection, Your Honor.

11           THE COURT:  6603 is admitted.

12           (So marked as Government Exhibit 6603 in evidence.)

13  Q    Did you have a chance to look at this before coming into

14  court today, Mr. Sydor?

15  A    Yes.  The same as all these other papers here, the other

16  day.

17  Q    Looking at it, there's an e-mail from Mr. Kenner at the

18  bottom, a response from you at the top.

19  A    Yes.

20  Q    Now, this e-mail mentions a couple of different

21  investments, including Eufora, an Air Park real estate

22  project, a Falcon aircraft, and two complex condominiums.

23           Do you see that?

24  A    Yes.  Yeah, I see it all.  I mean, right now.

25  Q    Now, at the time that you talked to Mr. Kenner, before

1   you put money into the Global Settlement Fund, did he mention

2   any of that money being used for any of those projects?

3   A     No.  It was for the global settlement of the Mexico

4   situation.  As you can see, it's sent from my Blackberry.  I

5   probably read over the first little bit, the transfer to Ron

6   Richards for the Global Settlement Fund.  On the Blackberry, I

7   probably didn't read this whole e-mail.  I would have

8   questioned, you know, the Palms, the airplane, the air park.

9   I mean, I used private planes at the time, but I never really

10  wanted to purchase a plane or invest in an airplane.  And I

11  know for a fact that I didn't want to be part of the Palms.

12  Q     Why do you know that for a fact?

13  A     I've been to Las Vegas maybe twice.  I didn't see any --

14  I just didn't want to be part of it.

15  Q     Now, just going back to the wire in front of you,

16  Government Exhibit 1503.  What's the date of that wire?

17  A     May 11th, 2009.

18  Q     Going back to the e-mail, 6603.  What's the date of that

19  e-mail?

20  A     May 18th, 2009.

21  Q     And the one that Mr. Kenner sent you?

22  A     May 17th, 2009.

23  Q     So I just want the record to be very clear.  At the time

24  that you put your money into the Global Settlement Fund, did

25  you authorize your money to go to Eufora?

1          MR. HALEY:  Objection.

2          THE COURT:  What's the objection?

3          MR. HALEY:  Again, the leading nature.  It's

4   repetitive.

5          THE COURT:  No.  Again, as discussed before, if

6   you're asking about a particular item in an e-mail --

7          MR. HALEY:  I guess my objection, then, goes to the

8   form.  The prosecutor begins just so the record is crystal

9   clear.  I don't think that's proper.

10         THE COURT:  Just ask the question.

11         MR. HALEY:  Thank you.

12  Q    Did you authorize any of your money in the Global

13  Settlement Fund to be used for Eufora?

14  A    No.

15  Q    Would you have put money into the Global Settlement Fund

16  if you knew any of it would go to Eufora?

17  A    No.  It was for -- to get everything situated and in the

18  right direction for Mexico.  That's what I was -- under the

19  assumption.

20  Q    At the time you put money into the Global Settlement

21  Fund, did you authorize any of your money to go to the Avalon

22  Air Park or hangars in Scottsdale, Arizona?

23  A    No.

24  Q    Did you authorize any of your money to go -- to buy or

25  pay for a Falcon 10 aircraft?

1   A    No.

2   Q    Did you authorize any of your money to go towards two

3   Palms Place condominium units?

4   A    No.

5   Q    Would you have put money into the Global Settlement Fund

6   if you knew any of that money would go to any one of those

7   projects?

8   A    No.

9   Q    Did there come a time when you talked to Mr. Kenner about

10  additional money for the Global Settlement Fund?

11  A    Yes.

12  Q    Can you tell us about that?

13  A    I think there was another situation where we needed more

14  money than just the $8,700, which I stated earlier.  Saying

15  that -- after more money, asking if I can send 8,600.  I don't

16  remember exactly.

17  Q    Do you remember approximately what time frame that was?

18  A    I can't sit here and recall the date.

19  Q    I'm going to hand you what's been marked as DS-1.  Take a

20  look at that.  Without reading any of the content -- or you

21  can look at it, sorry.  Just don't read it out loud.

22  A    Okay.

23       (Handing.)

24  Q    Does that refresh your recollection as to the time frame

25  that this conversation happened?

1    A    Yes.

2    Q    Approximately when was it?

3    A    April 5th, 2011.

4    Q    At the time when Mr. Kenner is asking you for money, what

5    was he asking you for the money to be used for?

6    A    Just more -- you know, everything's going in the right

7    direction, more legal fees for Mexico.

8    Q    Did you talk about what happened to the GSF?

9    A    Not specifically where all the money went.  But I did

10   raise the question, where is this all going?

11   Q    How did Mr. Kenner respond?

12   A    Just it's a long, ongoing battle with, you know, the Ken

13   Jowdy situation and Mexico.  And then asked for more money.

14   Q    Did you give it to him?

15   A    No.

16   Q    Why not?

17   A    I thought I'd put enough in already.

18   Q    Finally, Mr. Sydor, did there come a time when you were

19   served with a grand jury subpoena?

20   A    Say that again?

21   Q    Did there come a time when you were served with a grand

22   jury subpoena?

23   A    Yes.

24   Q    Did you discuss that subpoena with Mr. Kenner?

25   A    Yes.

1    Q    Can you tell us about that?

2    A    It was after my playing dates.  I retired one day, the

3    next day I signed up to be an assistant coach in Houston with

4    the hockey club.  I was in Houston at the time.  I started

5    getting these phone calls about the subpoena.  So right away I

6    questioned -- I called Phil, asked him, you know, what should

7    I do?  I remember him saying just don't answer the door.  You

8    know, don't let them know where you are.

9            It got to the point where I just finally said, you

10   know what, a gentleman called and I said, you know, I'm going

11   to be at the rink at, you know, certain -- our hours are a lot

12   longer than hockey players.  Just meet me at the rink.  I'll

13   be there till 2 o'clock in Houston.  And he dropped the papers

14   off or whatever you do to subpoena me.  That was it.  Then I

15   went to the grand jury.

16   Q    You went, and where did you end up going to testify?

17   A    I came here to New York.  The exact date, I don't

18   remember, but I remember flying in.  One day I asked Phil who

19   was going to be there.  Ron Richards was going to talk to us

20   and be our counsel at that time of this, and Phil informed me

21   what was going on.

22   Q    What did he say was going on?

23   A    I believed it was -- from sitting in Ron Richards' hotel

24   room with a couple of other players that were doing the same

25   thing, I thought it was going to be mostly about this Mexico

1  situation.

2  Q    And that was just based on what Mr. Kenner told you?

3  A    Yes.  And then he'd say Ron will inform you about it.

4              MS. KOMATIREDDY:  No further questions.

5              THE COURT:  Any cross-examination?

6              MR. HALEY:  Yes, sir.

7         May I see Government Exhibits 2118 and 2119?

8              MR. LaRUSSO:  Your Honor, I apologize.  May I have a

9  brief side-bar?

10             THE COURT:  Yes.

11             (Whereupon a side-bar conference was conducted.)

12             (Matter continued on the next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

2184

1              (Side-bar conference.)

2              MR. LaRUSSO:  Your Honor, the conversation that

3      Mr. Sydor had with Mr. Kenner, which is really not related to

4      my client, it's outside the scope, will you just instruct the

5      jury that that part of the testimony does not apply to my

6      client?  You can do it later in the trial, I just want the

7      record to be clear.

8              THE COURT:  Yes, I will give them the instruction

9      that the statements Mr. Kenner made to being a witness can

10     only be used against Mr. Kenner and are not admissible against

11     Mr. Constantine.

12             MS. KOMATIREDDY:  Just with respect to the grand

13     jury testimony?

14             MR. LaRUSSO:  Just that, yes.

15             (Whereupon the side-bar conference was concluded.)

16             (Matter continued on the next page.)

17

18

19

20

21

22

23

24

25

1          (Matter continued in Open Court.)

2          THE COURT:  Members of the jury, I just want to give

3    you an instruction regarding the last portion of the testimony

4    by Mr. Sydor regarding a conversation he testified about with

5    Mr. Kenner regarding the grand jury.  Those statements are

6    admissible only against Mr. Kenner.  They're not admissible

7    against Mr. Constantine.

8          Okay.  Go ahead, Mr. Haley.

9          MR. HALEY:  Thank you, Your Honor.

10   CROSS EXAMINATION

11   BY MR. HALEY:

12   Q    Mr. Sydor, my name is Rick Haley.  I represent Phil

13   Kenner.  Though the clock may say a quarter to 3:00, sir, I'm

14   going to wish you good morning.

15          Sir, you testified that it was only a few days ago

16   that you saw some documents for the first time.

17          Do you recall that testimony?

18   A    Yes.

19   Q    And where were you when you say that you saw those

20   documents for the first time?

21   A    I was here before the situation happened with somebody's

22   mother.  So...

23   Q    And you say you were here, you mean physically in this

24   building?

25   A    Yes.

1  Q    Who were you with at that time?

2  A    I was with them.  I'm sorry, I forgot their names.

3  Q    When you say "them," are you talking about both

4  prosecutors or one prosecutor at that time?

5  A    One.

6  Q    Of the two prosecutors, who were you with?

7        MS. KOMATIREDDY:  He was with me.

8  A    The lady.  I'm sorry.  I don't know her name.

9  Q    That's all right.

10       Was anyone else present in this meeting?

11  A   Yes.  The other gentleman, Josh.  He came to the airport

12  and brought me here.

13  Q   Anyone else?

14  A   Not in this room.  Today, I looked over it again.  It was

15  her and Matt.

16  Q   When you say "Matt," do you mean Special Agent Matthew

17  Galioto of the Federal Bureau of Investigations?

18  A   Yes.

19  Q   How long did that meeting take place?

20       THE COURT:  Which one?  The one this morning?

21       MR. HALEY:  I apologize, Judge.  Thank you.

22  Q   I believe that you testified, sir, those documents, you

23  saw the documents a few days ago, is that correct?

24  A   Yeah, I don't know the exact date.  Do you know the date

25  I was here and then someone's mom had a stroke so I went back

1  home.

2  Q    My only question is, you don't have to be that specific.

3  But when you say a few days ago, do you mean approximately a

4  week ago, two weeks ago?

5  A    Yes.  I believe it was May 17th.  I was here for May 17th

6  and left on the 20th.

7  Q    All right.  So on or about and between May 17th and

8  May 20th, I'm talking about the meeting where you testified

9  you saw certain documents for the first time.  I'm talking

10  about that meeting, is that correct?

11  A    Okay.

12  Q    You believe that may have taken place between May 17th

13  and May 20th, is that correct?

14  A    Yeah.  I flew in on May 17th.

15          .  So it would be May 18th I believe I met.  I was

16  going to stick around, but then court was over that week.  So

17  I went back home.

18  Q    My question really, sir, just stay focused, the meeting,

19  once again, when you say you saw certain documents for the

20  first time, to the best of your memory, that occurred between

21  May 17th and May 20th, is that correct?

22  A    Yes.

23  Q    During that meeting one of the prosecutors was present,

24  is that correct?

25  A    Yes.

1    Q    During that meeting one of the agents was present, is

2    that correct?

3    A    Yes.

4    Q    Staying focused on that meeting, okay.  How long did that

5    meeting take place, approximately?

6    A    I'm trying to stay focused.  Three hours, four hours.

7    Q    During the course of that three or four-hour meeting, I

8    take it questions were asked of you by the prosecutor and the

9    agent and you answered those questions to the best of your

10   ability, is that true?

11   A    Yes.

12   Q    As they asked you questions and as you answered the

13   questions, did you observe either the prosecutor or the agent,

14   let's say, taking notes of what you were telling them?

15   A    Not a lot of notes.  It was just a lot more talking about

16   it, showing me stuff.  Yeah.

17   Q    Not a lot of notes but as best you recall, some notes,

18   correct?

19   A    There was a pen and paper there, yes.

20   Q    Sir, do you recall if, whatever notes that were taken,

21   whether they were taken on a document about this size, which

22   is commonly know as a legal pad that I'm holding in my right

23   hand, eight and a half inches by 14, or were they taken on a

24   document I'm holding in my left hand about this size, commonly

25   known as a Post-it note, maybe four inches by two and a half

1    inches?  Do you recall which of the two documents were used to

2    take notes of the conversation you were having with the agents

3    during the three-hour meeting?

4    A    A lot of notes were taken on -- maybe some on, I don't

5    know if you just said the exact size, I don't know, but the

6    big one.  And some were on Post-it notes that was maybe just a

7    quick note that she would write down.

8            MR. HALEY:  Your Honor, I would call for the

9    production of those notes.

10           THE WITNESS:  I don't have them.

11           THE COURT:  During the break we'll talk about them.

12           MR. HALEY:  Very well.

13   Q    Now, you testified on direct examination that

14   Document 2118 was one of the documents that you were shown by

15   the prosecutor and/or the agent during that meeting that took

16   place on or about between May 17th and May 20th, is that

17   correct?

18   A    Yes.

19   Q    We can agree, sir -- withdrawn.

20           In February of 2009 where did you reside?

21   A    January and February, um...

22   Q    Let me rephrase the question.

23   A    Well, let me think about it.

24   Q    Fair enough.

25   A    That would be the house that I went back to from Dallas,

1   in University Park.

2   Q    Well, is it fair to say, sir, that on or about February

3   of 2009 you would receive mail at 36134 Haynie, H-A-Y-N-I-E,

4   Ave, Dallas, Texas 75205?  Is that a fair statement?

5   A    That was my residence there, yes.

6   Q    Well, in or about that period of time, did you have any

7   awareness that there had been some defect with the United

8   States Postal Service where you were not receiving mail at

9   that address?

10  A    I can't recall any information on the postal service.

11  Q    We can agree, sir, that as relates to this particular

12  document, words like "Event of Default" are contained,

13  frankly, in the very first paragraph of that document,

14  correct?

15  A    Right, if I would have seen that I would have remembered

16  seeing that.

17  Q    Let's take a look at the document marked 2119.  As

18  relates to document 2119, sir, is it correct that in March of

19  2009 you were residing at 3613 Haynie Avenue, Dallas, Texas

20  75205, is that true?

21  A    Yes, sir.

22  Q    And we can agree, sir, can we not, that this document

23  begins, "RE:  Notice of Default and Intent to Sell

24  Collateral"?  We can agree with that, can we not?

25  A    Yes.

1  Q    Is it your testimony, sir, that for the first time, since

2  2009, you learned of the sale of your bond and collateral to

3  the line of credit when you met with the government back on

4  May 17th through May 20th of this year?

5  A    Re-ask the question.

6  Q    Sure.  Is it your testimony, sir, that the first time you

7  learned that there had been a default and the sale of your

8  collateral as relates to the bond referenced to the line of

9  credit in the amount of $850,000 as set forth on 2119, was

10 only a few days ago when you saw those documents as presented

11 to you by the prosecutor and the agent?  Is that your

12 testimony?

13 A    As I recall, yes.  If I saw this letter and it said

14 Notice of Default and Intent to Sell Collateral, I would

15 remember that, yes.

16 Q    Sir, we're talking about -- if I may.  For the past six

17 years, throughout the pendency of this matter in terms of the

18 investigation, you had no knowledge of the default and the

19 sale of your bonds.  Is that your testimony?

20 A    That's what I'm saying, yes.

21 Q    Well, prior to your May 20th -- May 17th through May 20th

22 meeting with the prosecutor and the agent, you were

23 interviewed by federal agents assigned to the investigation of

24 this matter, isn't that true?

25 A    Yes.

1  Q    Is it not true, sir, that as far back, say, of July of

2  2012 you had an interview over the phone involving questions

3  asked of you by Special Agent Matt Galioto and a person by the

4  name of Scott Romanowski?  Isn't that true?

5  A    Yes.

6  Q    I take it, sir -- do you recall if, during the course of

7  that meeting back in July of 2012, you were told or there were

8  discussions about the fact that your bonds had been

9  collateralized for the default with reference to the line of

10 credit?  That never came up?

11 A    I'm sure it came up in the phone conversation, but I

12 didn't see this.  I can't recall that conversation.

13 Q    When it was brought up in that conversation, what did you

14 say?  Did you say, This is the first time I'm hearing of it?

15 What did you say?

16 A    I can't exactly remember what was said.  I can't sit here

17 and remember that whole conversation.

18               (Matter continued on the next page.)

19

20

21

22

23

24

25

2193

1  Q   Well, following that conversation, did or did you not

2  contact Phil Kenner to say Phil, in sum or substance, what

3  is that all about?  Did that happen?  Yes or no?

4  A   I can't recall.  It was part of the investigation and

5  left it in their hands to deal with.

6           I can't recall if I called Phil and asked him

7  what is going on or not.

8  Q   Well, let's go to this document, Government's

9  Exhibit 6603, the e-mail introduced in evidence.  Is says

10  sent via BlackBerry via AT&T.  Yes, I totally understand

11  everything. Thx.

12          With reference to that particular document, that

13  was one of the documents you say that you saw for the

14  first time sometime between May 17th and May 20th of this

15  year, correct?

16 A   Yes, the whole document.  Like I said it is on my

17 BlackBerry and I probably read through the first couple

18 lines.  It's small, probably didn't read through it all. .

19 Q   When you say you probably didn't read through it all

20 --

21 A   -- Say that because I would question a lot of of that

22 stuff, the Palms and all that stuff.

23 Q   I understand, sir, your direct testimony, but when

24 you say you probably didn't read through it, at that point

25 in time to the best of your knowlege, was your BlackBerry

2194

```
1    device functioning where you would have the ability to

2    read the text message that was sent to you and then

3    respond.  That's just a question.

4            To your knowledge was the device working to that

5    extent?  Yes or no?

6    A    It was working, yes.

7    Q    Sir, I'll ask you to take a look at a document marked

8    Kenner Exhibit 64.

9            As relates to what has been marked as Kenner

10   Exhibit 64, was that one of the documents that was shown

11   to you by the Government during the course of that meeting

12   between May 17th and May 20th of this year?

13   A    Yes, I've seen this.

14   Q    So you saw that document, I take it, before May 17th

15   and May 20th of this year; is that correct?

16   A    I remember seeing this here, yes.  I mean I don't

17   remember everything but --

18   Q    Mr. Sydor, I don't expect you to remember everything.

19   We're talking about matters that go back six, seven,

20   eight, nine years, I'm not asking you, sir, to remember

21   everything.

22           You see typewritten Darryl Sydor?

23   A    Yes.

24   Q    Do you do you see what appears to be your signature

25   on the photocopy?
```

2195

1    A    That's my signature.

2                MR. HALEY:  Your Honor, I offer this document as

3    Kenner Exhibit 64.

4                MS. KOMATIREDDY:  No objection.

5                MR. LARUSSO:  No objection, your Honor.

6                THE COURT:  Kenner Exhibit 64 is admitted.

7                (Whereupon, Defendant's Exhibit 64 was received

8    in evidence.)

9    Q    Only because I'm not adapt using the screen, I'll

10   read this document in evidence for purposes of the record.

11   It's very short.

12               November 3, 2014, Northern Trust Bank, 2398 East

13   Camelback Road, Suite 400, Phoenix, AZ, 85016.

14               Re:  Darryl Sydor-LLC to Northern Trust.  Please

15   allow Phil Kenner to access this outstanding line of

16   correct for direct deposit for Little Isle IV account at

17   Northern Trust Bank.  He's authorized to sign for the

18   release of funds related to my line of credit.

19               Thank you for your assistance in this matter,

20   Darryl Sydor.

21   Q    Now, sir, as relates to that document, isn't it true

22   that over the course of a period of time you would receive

23   other documents from Northern Trust and you would in turn

24   return other documents to Northern Trust bearing your

25   signature?

2196

1  A    Sorry, you are asking me?  Can you repeat the

2  question?

3  Q    Sir, isn't it true, sir, that in addition to Kenner

4  Exhibit 64, over a period of time, you would receive other

5  documents from Northern Trust Bank and you would in turn

6  sign and return those documents.  Isn't that true?

7  A    From Northern Trust?

8  Q    Yes, sir.

9  A    A lot would come from Phil via e-mail PDF, sign and

10  send back.

11  Q    Not to parse out, sir, is it your testimony that a

12  lot of the documents would be sent by Phil Kenner through

13  e-mail with an instruction in sum and substance to sign

14  and return, correct?

15  A    Yes.

16  Q    I take it by a lot, not all.  There were instances

17  where Northern Trust --

18  A    -- Not directly.

19        MR. HALEY:  I have to finish the question.

20        THE WITNESS:  Yes.

21        MR. HALEY:  Not to be rude to you, but the

22  reporter has to take the question and answer.

23  Q    Sir, when you say a lot would be sent by Phil Kenner

24  with an e-mail signed and returned, I take it by that you

25  mean a lot were sent by Phil and some were sent directly

Sydor - Cross/Haley

2197

1    by Northern Trust, isn't that true?

2            Yes or no?

3    A    I would say it mostly all came from Phil Kenner.  I

4    didn't even know who was at Northern Trust contact-wise,

5    so if there was something that needed to be signed and

6    sent back, it would come from Phil Kenner.

7    Q    Could you give us some estimation as to the amount of

8    documents that you received either through Phil -- and you

9    say almost all of these, that's fine.  The documents that

10   you received through Phil Kenner as relates to your line

11   of credit at Northern Trust, he would forward those

12   documents to you via e-mail, correct?

13   A    He would forward the signature page that I would need

14   to sign.

15   Q    Mr. Sydor, as you sit here today, sir, under oath, is

16   it your testimony that you have a firm recollection that

17   all Phil Kenner ever sent you was a signature page, is

18   that your testimony?

19   A    No, he sent me documents but a lot of the time it

20   would not be the whole full document.

21           Some of the time it would be can you review

22   this, sign it and send it back.

23   Q    And when he, as you say, didn't send you the full

24   document, what, if any, communication would you initiate

25   with Phil Kenner under those circumstances?

2198

1  A    Can you repeat the question, please?

2  Q    Sure.

3        When you say he would not on occasion or at

4  times send you the full document, what, if any,

5  communication would you initiate with Phil Kenner

6  following that occurrence?

7  A    It would be over the phone or text message.

8  Q    All right.  So you get a document, as I understand it

9  by your testimony, it wouldn't be complete, so you would

10 then contact Phil.  Is that your testimony?

11 A    Are you asking if I asked him where is the rest of

12 the document?

13 Q    I'm asking what conversation you had with Phil, sir.

14 A    I can't remember every conversation I've had.

15 Q    Let's stay focused on those instances where you did

16 not receive, as you say, the full document, it was only a

17 signature page and in turn you would contact Phil.

18       What would you say to him?  Let's start with

19 what would you say to him?

20 A    We probably would talk about the situation and I

21 don't know the exact conversation, we'd probably talk

22 about the situation and then he would send the signature

23 page and I would sign and send it back.

24 Q    Well, Mr. Sydor, is it your recollection that you

25 would first receive only the signature page without the

2199

1    rest of the document and then contact Phil, or before Phil

2    sent you the document containing only the signature page,

3    you'd have the conversation at that point?

4    A    I can't recall the exact time frame of how it

5    happened.  I can't sit here and give you an exact time

6    frame what was sent, when, and where.

7    Q    Well, there's something called a master note.  Do you

8    have any recollection of that being sent to you by Phil

9    Kenner in its complete form, not simply a signature page

10   but every part of the master note?

11            Do you remember that?

12   A    I don't recall.

13   Q    Well, Mr. Sydor, and again I know this goes back a

14   while, sir, but is that your to state over a period of

15   time where your line was credit was used as authorized by

16   Kenner Exhibit 64, Phil Kenner sent you more than just a

17   signature page, a signature page, a signature page, a

18   signature page?

19            Isn't that a fact?

20            MS. KOMATIREDDY:  Objection to form.

21            THE COURT:  Sustained as to form.

22   A    That's a possibility.

23            THE COURT:  No.

24            THE WITNESS:  Sorry.

25            THE COURT:  I sustained the question.

2200

1          Rephrase it.

2     Q    Sir, you testified on direct examination that your

3     account at Schwab as it relates to the bonds, that was

4     important to you in terms of your investment portfolio, is

5     that true?

6     A    Yes.

7     Q    So it would be fair to state if you saw something as

8     relates to your bond account or you acquired information

9     that let's say your line of credit would be collateralized

10    by your bond account, you would want to pay attention to

11    that kind of circumstance, would you not?

12    A    Yes.

13    Q    Could you give us some idea as to the conversations

14    and communications you had with Phil, either over the

15    phone or by way of e-mail exchanges or by way of let's say

16    letters written for the period of time that your line of

17    credit was in effect.

18         Give us some idea?  More than one conversation,

19    more than 10?  Just some idea?

20    A    I can't recall.  I mean he was my financial advisor

21    and I trusted him with what he did.  I can't recall how

22    many conversations we had specifically on that.

23    Q    But he would communicate with you, yes, sir?  Is that

24    correct?

25    A    Through a conversation we'd talk about a whole bunch

Case 2:13-cr-00607-JFB-AYS   Document 306   Filed 07/07/15   Page 50 of 219 PageID #: 6543

2201

1   of different things, whether it was family, whether it was

2   investments, whether it was hockey.

3   Q    I'm really talking about would he communicate with

4   you with reference to your investments, sir.

5        I understand you would talk about other things

6   but my question is pretty focused.  Would he communicate

7   with you when you had questions about your investments.

8        Yes or no?

9   A    He would communicate with me about my investments,

10  yes.

11  Q    As a matter of fact you testified on direct that as

12  relates to investments generally, you and he would discuss

13  an investment that might be risky as opposed to an

14  investment that did not involve a level of risk, true?

15  A    Yes.

16  Q    Did you understand, sir, that the Hawaii project

17  involved an element of risk?

18  A    Uhm, I think any land deal is an investment of risk,

19  but from what I was told, it was a very nice piece of

20  property -- I hadn't been to that property -- and it was

21  going to be good.  So ...

22  Q    Do you have any reason to believe as you sit here

23  today, that it was not a nice piece of property?  I'll

24  rephrase the question?

25        Do you have any reason to believe as you sit

2202

1   here today that Phil Kenner misled you when he said to you

2   that is in substance a nice piece of property?

3                MS. KOMATIREDDY:  Objection to form.

4                THE COURT:  No, I'll let him answer that.  You

5   can answer it.

6                THE WITNESS:  Can you ask it again.

7   Q    When you and Phil discussed the Hawaii project which

8   involved investing in the purchase and development of

9   property in the state of Hawaii, did you have any reason

10  to believe that he misled you when he said in sum and

11  substance, this is a nice piece of property in Hawaii?

12  A    No, I believed him.

13  Q    By the way, did you ever ask to see, let's say, a

14  map, an aerial map of the properties that were being

15  purchased in Hawaii with reference to Little Isle IV?

16  A    I don't recall seeing a map.  I recall getting some

17  information in like a binder form or so in Little Isle IV.

18  Q    Let's talk about the binder you got from Phil Kenner

19  in Little Isle IV.

20           By a binder you mean more than just a signature

21  page?  You are talking about, I'll use the word "stack of

22  documents."

23  A    It's a binder by about an inch and a half, I would

24  say it is (indicating).

25  Q    And when you say binder, was it round clips so you

2203

```
 1    could look at the documents?  How was it bound, sir, if
 2    you recall?
 3    A    Yeah, I believe it is like a school binder, like
 4    round clips.
 5    Q    All right.
 6          If you recall could you describe the substance
 7    of the documents contained in that binder?
 8    A    I can't.  I can't recall.  I could sit here and say I
 9    know everything but I don't.
10    Q    You did say on direct you were aware that the Hawaii
11    project was going to be represented by a company called
12    Little Isle IV, true?
13    A    True.
14    Q    And did or did you not have an understanding that
15    Little Isle IV was something known as a Limited Liability
16    Company, an LLC?
17    A    I believe so, yes.
18    Q    And to your knowledge, who was the managing member of
19    the LLC?  Who was responsible for organizing and pursuing
20    the investment?
21    A    I can't recall whose name was on it.  I know like
22    Phil came to me for an investment, that's all.
23    Q    Well, sir, did you have an understanding that Phil
24    Kenner was the managing member of Little Isle IV LLC?
25    A    Uhm, I'm not sure.  I know he was my go-to
```

2204

1    in-between.  I don't know who was the managing partner.

2    Q    Well, do you know, sir, if within that binder of

3    documents, you received the four page operating agreement

4    for Little Isle IV?

5    A    Are you asking me if I know if it is in there?

6    Q    Yes.

7    A    I can't say I know what is in there, I don't.  It

8    might be but I haven't seen it for awhile.

9    Q    By the way, where is that binder today?

10   A    I believe it's in my storage in my house in Minnesota

11   with some other binders, the Diamonte binders and things

12   like that.

13   Q    Were you ever asked by the prosecutor or the agents

14   assigned to this investigation to produce that binder for

15   them?

16   A    No.

17   Q    Did you ever offer to produce that binder as it

18   relates to Little Isle IV to the prosecuting agents in

19   this case?

20   A    No.

21   Q    I take it, sir, they demonstrated no interest in your

22   binder, isn't that true?

23            MS. KOMATIREDDY:  Objection.

24            MR. HALEY:  I'll withdraw the question.

25            THE COURT:  Why don't we take the morning break.

2205

1          MR. HALEY:  Thank you, sir.

2          (Whereupon, at this time the jury exits the

3     courtroom.)

4          THE COURT:  Do you want that binder or not?

5          MR. HALEY:  May I speak with my client?  There

6     was another evidentiary issue.

7          THE COURT:  But if you want the binder I'll ask

8     him about it.

9          THE COURT:  May I continue, Judge.  First of

10    all, Judge, thank you.

11         MR. HALEY:  Judge, as relates -- sorry, Judge,

12    my mind wandered, as relates to the Government's notes --

13         THE COURT:  I want to know about the binder

14    first before we take the break.

15         MR. HALEY:  Your Honor, it's not a request at

16    this point in time as relates to the binder.

17         THE COURT:  Okay.  Mr. Sydor, you may take a

18    ten-minute break.  Thanks.

19         (Witness exits.)

20         MR. MISKIEWICZ:  Your Honor, for the record,

21    there are numerous copies of these binders, essentially

22    like a prospectus offered, they've gotten numerous copies.

23    This is a pure grandstanding waste of time that Mr. Haley

24    went through this, particularly the last question, so I

25    guess the Government had no interest in obtaining this.

2206

1   That is completely false and a complete waste of time and

2   we're behind as it is.

3          MR. HALEY:  May I address that comment, Judge?

4          THE COURT:  The last question was obviously

5   argumentative, but I don't think it is a waste of time in

6   questioning him regarding the binder, but the Government

7   can put in what it is but he's free to question him what

8   he received from Mr. Kenner, but please don't ask the last

9   argumentative question to make the point.

10          MR. HALEY:  And, Judge, sometimes my enthusiasm

11   gets ahead of me and that's is not an excuse and your

12   Honor is correct.  I do want to state for the record this

13   is not grandstanding.  I do not believe when the

14   Government received a prospectus and that's the binder

15   that's not to my knowledge what is or is not contained in

16   that document.  So from my perspective, Judge, it is far

17   from a waste of time and I do not based upon what I've

18   seen in excess of a million documents provided to me

19   through Rule 16 discovery seen that information part of

20   the Rule 16 disclosure.  So that is my position on that.

21          THE COURT:  Were there no statements during that

22   meeting?  What about the notes?

23          MS. KOMATIREDDY:  I have my direct witness

24   outside.  I'm happy to give it to the Court for a review.

25   That is a consolidation of my notes.  It had typewritten

2207

1    and handwritten notes on the top.

2                THE COURT:  Other notes or your name.

3                MS. KOMATIREDDY:  I wasn't memorializing the

4    defendant's statement.  I've already had questions to ask

5    him.  My normal practice in general given the obvious --

6                THE COURT:  Do you have them right now?

7                MS. KOMATIREDDY:  I can give it to you right

8    now.

9                THE COURT:  Give it to him.

10                And did the agent take notes?

11                MS. KOMATIREDDY:  No, sir.

12                THE COURT:  All right.  Let's take a break.

13                MR. HALEY:  Thank you, sir.

14                (Whereupon, a recess was taken.)

15                THE COURT:  Ready, Mr. Haley.

16                MR. MISKIEWICZ:  Your Honor, I would ask

17    reconsideration to your Honor to disclose Ms. Komatireddy's

18    notes.  I have a copy I would be happy to give to the

19    Court.  I understand when an AUSA writes notes, basically

20    statements of a witness, they are not necessarily

21    protected, but this material if you just looked at it I

22    think you would agree it is nothing but privileged work

23    product, requests nothing but her thought processes and

24    the information she intends to view it.

25                THE COURT:  If the United States of America

2208

1    takes a contemporaneous statement over a witness whether

2    in the form of a question or in the form of an answer they

3    should be produced.  And other things that -- just because

4    in the form of a question doesn't mean that doesn't mean

5    that the witness spoke to her.  In an abundance of caution

6    that should be turn over.  If she had typewritten things

7    before she met with him and you want to redact those out

8    that's fine, but better make sure this witness hangs

9    around so if there are additional questions based on her

10   notes that he's still here.  It's up to you.

11             MR. MISKIEWICZ:  I think we're -- if we would

12   have an opportunity, yes, there are many typewritten

13   portions, handwritten portions on this outline and we'd

14   ask for an opportunity to redact anything that is

15   privileged.

16             THE COURT:  You'll have an opportunity during

17   the lunch break.

18             MR. HALEY:  I assure the Government I'll look at

19   it immediately.  It may be there is nothing of great

20   substance or impact.  I may not ask a question about that

21   but I assure the Court I think everyone is looking to get

22   this witness off the stand and move on to the next

23   witness.

24             THE COURT:  All right.  Let's bring the jury in

25   and bring in the witness.

2209

1      MR. HALEY:  Judge, I apologize for the printer.

2  I hope it is not distracting.  Occasionally testimony is

3  adduced that we don't anticipate so we have to pull a

4  document off the printer.

5      THE COURT:  That's fine.

6      MR. HALEY:  Thank you, sir.

7      (Witness resumes.)

8      (Whereupon, the jury at this time enters the

9  courtroom.)

10      THE COURT:  Please be seated.

11      Mr. Haley, go ahead.

12      MR. HALEY:  Thank you, sir.

13  Q    Mr. Sydor, I'm going to show you a document that has

14  been admitted in evidence as Government's Exhibit 2169,

15  and I believe you testified on direct that this is a

16  document you did see before your meeting with the

17  prosecutor and the agents sometime between May 17th and

18  May 20th of this year.

19  A    I can't recall that I said that.

20  Q    All right.  Well, it's in evidence, so we can agree

21  it says account statement, is that true?

22  A    Yes.

23  Q    What was your address in or about March of 2009 --

24  let me rephrase the question, sir.

25      In or about March of 2009, at that point in

2210

1    time, did you have an address where you would receive

2    correspondence through the United States mail at 110

3    Millview, Pittsburgh, Pennsylvania, 15238?

4    A    This is our house in Pittsburgh when I played there.

5    Q    But that's an accurate address; is that correct?

6    A    That's an accurate address, but in March of '09 I'm

7    not there.

8    Q    Where are you in March of '09?

9    A    I don't exactly know the date but this is when I got

10   traded back to Dallas, Texas.

11   Q    So you were in Pittsburgh before you got traded back

12   to Dallas?

13   A    Yes.

14   Q    I see.

15        And you then moved from Pittsburgh I take it

16   into the Dallas address; is that correct?

17   A    Yes.

18   Q    As relates to that move, to your knowledge, was there

19   a forwarding address wherein mail that might be sent to a

20   prior address would then be forwarded to your new address?

21   A    Yes, my wife and kids -- when you get traded you get

22   traded one day you are gone that day so they stayed there

23   for a bit and then came to Dallas.

24        I'm assuming that, yeah, my wife would forward

25   to the Post Office for mail or whatever, moving, whatever

**2211**

1    that is.  When you move you do something with the post

2    office.  Forward mail.

3    Q    And that's a fair assumption, sir. You got moved a

4    lot so you want to make sure when you move from one

5    location to another the mail would end up being brought to

6    your attention by way of forwarding address.  Is that a

7    fair statement?

8    A    Yes.

9    Q    We can agree, can we not, as far as this particular

10   document is concerned, and the jury's recollection will

11   prevail, sir, it's not for me to testify what you said on

12   direct.  But as far as this document is concerned, if you

13   received this prior to May of this year, page 6 of this

14   document, clearly reads in bold type, pledged account

15   information, isn't that true?

16   A    Yes.

17   Q    There were instances, sir, where you were contacted

18   by a representative from Northern Trust with reference to

19   your line of credit, true?

20   A    I don't believe being contacted by Ms. Catie, the

21   administrator, and Mathew R. Miller, portfolio manager.

22   Q    Sir that's not my question.

23         Is it not true that there were times when

24   someone, whether it is those two individuals or someone

25   else, contacted you from Northern Trust with reference to

2212

1    your account, correct?

2    A    I don't recall, no.

3    Q    Kindly take a look at a document marked Kenner

4    Exhibit 65, and don't read it out loud.  Just read the

5    writing on this document to yourself.

6         Sir, does that refresh your recollection that on

7    or about April 1, 2009, Aaron from Northern Trust

8    contacted you and suggested a conference call take place

9    between you, Phil Kenner and Aaron?

10   A    Yes.  It says that, but I don't recall that.  I don't

11   remember it.

12   Q    Okay.

13        Sir, I'll ask you to take a look at a document

14   marked Kenner Exhibit 66.  It's a photocopy, but take a

15   look at the document and with particular reference to what

16   appears under at least this typewritten name.

17        Sir, do you see what appears to be your

18   signature on that document?

19   A    I see it.

20        MR. HALEY:  Thank you, Mr. Sydor.

21        THE WITNESS:  Do you want me to --

22        MR. HALEY:  No.

23   Q    Mr. Sydor, take a look at a document marked Kenner

24   Exhibit 67.  Sir, you are entitled to look at the entire

25   document but it does contain several pages.  I'll draw

2213

1    your attention to the last page of the document.

2              In those photocopies, sir, do you see what

3    appears to be your signature?

4    A    I see what appears to be my signature.

5    Q    Sir, I will show you another document.  And again you

6    are entitled to look at the entire document, but I'll show

7    you -- I'll draw your attention to the last page of that

8    document.

9              THE COURT:  What number is that, Mr. Haley?

10             MR. HALEY:  Sorry, Judge.  68.

11   Q    And in that photocopy do you see a signature that

12   appears to be your signature?

13   A    I see a signature.

14   Q    Well, as relates --

15   A    I see the signature, it appears to be a signature.

16   Q    Your signature, correct?

17   A    It appears to be my signature.

18   Q    All right.

19   Q    Sir, I'm going to ask you to look at that document

20   marked Kenner Exhibit 69.  You are entitled to look at the

21   entire document but I'll draw your attention to the last

22   page of that document, again it is a photocopy, but do you

23   see a signature above these typed words?

24   A    Yes.

25   Q    Does that appear to be your signature, sir?

2214

1    A    It appears to be my signature.

2    Q    Now, at any point in time did you or someone acting

3    on your behalf ever request all of the documents from

4    Northern Trust as relates to your line of credit or bonds?

5    A    Have I ever requested it?

6    Q    Yes.

7    A    No.

8    Q    Sir, I'll ask you to look at Kenner 70.

9         If you may, sir, let's just, if you don't mind,

10   sir, so you have a sense what is on the page.  Look at

11   page 1 and go to page 2, page 3, page 4, page 5, page 6,

12   and then there's a page 7.

13        Though a photocopy, sir, do you recognize your

14   signature on the document?

15   A    It appears to be a signature on this document and

16   this printing is not my printing.

17   Q    Well, whose printing is this here, if you know?

18   A    My printing is not that neat.

19   Q    So you guess it is not your printing?

20   A    I don't believe so.

21   Q    Whose printing is it?

22   A    I don't know.

23   Q    As relates to the signature line, does that appear to

24   be your signature?  Yes or no?

25   A    It appears to be my signature.

2215

1   Q    Well, in or about July of 2006, do you have a

2   recollection -- well, withdrawn, sir.

3            As relates to this particular document, in July

4   of 2006, do you have a recollection of receiving a letter

5   addressed to the members of Little Isle IV, LLC?  Yes or

6   no?

7   A    I don't recall.

8   Q    When you say you don't recall, I take it you mean you

9   may or may not have received that, true?

10  A    Yeah, true.  I don't recall.

11  Q    Okay.

12  Q    Sir, would you kindly take a look what has been

13  marked Kenner Exhibit 71.  You are entitled to look at the

14  entire document.  I draw your attention at least to the

15  heading, and specific reference to what would be page 9 of

16  the document?

17           As relates to that exhibit, and although a

18  photocopy, do you see what appears to be your signature on

19  that document?

20  A    That's not my signature.

21  Q    Well, as relates to this particular document, in or

22  about April of 2006, do you have a recollection of

23  receiving a document that pertains to Little Isle IV LLC,

24  yes or no?

25  A    I don't recall.    (Continued.)

2216

1   CROSS-EXAMINATION  (Continuing)

2   BY MR. HALEY:

3   Q    You understood, did you not, that by committing your

4   line of credit with reference to Little Isle IV you would

5   receive an ownership or percentage interest in Hawaii

6   project, true?

7   A    I believe I invested 500,000 into Hawaii, and the

8   line of credit, 100,000 line of credit was supposedly to

9   be with Lehman Brothers and Company or something and get

10  me that back.

11  Q    I'll ask the question again, sir.

12        My question is, Did you understand that by

13  investing through either the line of credit or by way of

14  let's say a specific cash contribution in the Hawaii

15  project, you would be receiving a percentage ownership in

16  interest that project.

17        You understood that, at the time?

18  A    Yes, yes.

19  Q    As it relates to Eufora, isn't it true that you had

20  an understanding that by investing in Eufora, you would be

21  receiving a percentage of an ownership interest in that

22  company, true?

23  A    Yes.

24  Q    The conversation that you had with Phil Kenner the

25  day that he spoke to you about Eufora, how long ago did

2217

1    that occur?

2    A    Years ago.

3    Q    Well could you give us the year to the best of your

4    recollection?

5    A    I think conversations about Eufora were around

6    '03-'04, something like that.

7    Q    2003, 2004?

8    A    I believe so.

9    Q    Over a decade ago, correct?

10   A    It would be that.

11   Q    Did you take written notes of the conversation that

12   you had with Phil in terms of what he said to you

13   regarding Eufora?

14   A    No.  I remember the first conversation, one of the

15   first conversations or conversation we were on the golf

16   course.  I didn't write it down.

17   Q    But I take it from that answer, sir, it was more than

18   one conversation about Eufora, true?

19   A    I was asked -- we had conversations, a few different

20   conversations,  a few different topics.

21   Q    My question is this.  The conversation that you had

22   with Phil Kenner back in 2003-2004, where based upon that

23   conversation you made a decision to commit your money to

24   Eufora.  I'm talking about that conversation.

25        Did that conversation occur on the golf course

2218

1  or did it occur some other place?

2  A   I can't recall the exact spot where I committed to

3  it.

4  Q   But it's fair to say that as it relates to that

5  conversation, it wasn't recorded.

6        That's true, correct?

7  A   Right.

8  Q   And you weren't taking notes in connection with what

9  Phil was saying to you, connect?

10 A   Correct.

11 Q   But it's crystal clear that you had an understanding

12 as a result of that conversation, that in return for you

13 allowing Phil pursuant to the power of attorney you gave

14 him, to use your money with reference to Eufora, you were

15 going to get an ownership interest.

16        That was your understanding, correct?

17 A   Correct.

18 Q   Beyond that understanding, do you have a specific

19 recollection, as you sit here today, about anything else

20 Phil told you about Eufora?

21 A   I can't sit here and say that I remember, no.

22 Q   Do you know as you sit here today, whether Tommy

23 Constantine had and continues to have an ownership

24 interest in Eufora?

25 A   I believe so, yes.

2219

1    Q    Do you have an understanding, sir, as you sit here

2    today, as a result of the -- let me withdraw that.

3          When you were shown the bank records that said

4    Constantine Management Group by the government on direct,

5    we can agree, sir, can we not, that Constantine Management

6    Group, Inc, at least Tommy Constantine shared some

7    similarity at least by way of his last name.

8    A    That's right.

9    Q    Now you testified on direct that your first financial

10   advisor was Scott Bye?

11   A    Yes.

12   Q    And you stayed with him for about three years, true?

13   A    Yes.

14   Q    And during that period of time he was recommending

15   what I'll call conservative investments, stocks and bonds.

16          Is that true?

17   A    Yes, stocks and bonds, and life insurance, for me and

18   my wife.

19   Q    And what time frame, what years are we speaking of?

20   A    I think that would have been --

21   Q    Well let me try.

22   A    Yes, '93/'94, something like that.

23   Q    Do you recall during that period of time how the

24   market was doing in connection with stocks and bonds?  Was

25   it doing well or were you getting average returns or

2220

1    anything?

2    A    I don't recall what the market was doing at that

3    time.

4    Q    And then you decided, you testified on direct that

5    through acquaintances to leave Scott Bye and go to Phil

6    Kenner.

7              Is that true?

8    A    Yes.

9    Q    Why did you leave Scott Bye?

10   A    I'm not sure.  It was really, he was really good.

11   Just talking to Phil -- my wife wanted it.  You know, it

12   just seemed communication was a lot easier for me to

13   understand, you know, investments and all that kind of

14   stuff.  It wasn't that -- I don't know.

15   Q    In other words, sir, Phil Kenner took the time and

16   effort when he met with you not to speak in terms of

17   financial terms that you couldn't understand, but at least

18   to reduce it to a point where you had a sense and

19   understanding as to your investments.

20             Isn't that true?

21   A    Yes.

22   Q    And then there comes a point in time where, I believe

23   you testified on direct, you moved from Scott Bye to Phil

24   Kenner, true?

25   A    True.

2221

1  Q    And at the point in time you moved to Phil Kenner,

2  Phil was at that point in time recommending at least the

3  same types of investments, at least initially, that you

4  had with Mr. Bye.

5          Isn't that true?

6  A    Yes.  I didn't have a lot with Scott Bye, as I said

7  life insurance, stuff like that.  I remember -- yeah, it

8  was similar stuff.

9  Q    And he was recommending, at least when you first met

10  Phil, conserve-type investments.  In other words, he

11  wasn't immediately throwing you into high risk

12  investments, was he, when you first met Phil?

13  A    No, not at first, no.

14  Q    Do you know how the market, the stocks and bonds

15  market was doing during the period of time when Phil first

16  started recommending these conservative investments to

17  you?  Was it doing well?  Was it doing average?  Was it

18  doing poorly?

19  A    I don't recall that.

20  Q    I understand, sir, that you testified on direct that

21  you trusted Phil.  And when he made a recommendation as it

22  relates to other investments that were riskier, I know you

23  told us on direct and even cross-examination, that you

24  would discuss those risk factors with Phil.

25          Is that true?

2222

1    A    Yes.  I would trust him, trust him like a friend,

2    yes.

3    Q    And when he described to you the risk factors, would

4    he also describe it from your perspective in a language

5    and terms that you could understand?

6    A    Yes.  He wouldn't specifically say, this is high

7    risk.  But in a land deal and other stuff, those are

8    riskier.  They're not near Coca Cola and all, you know,

9    the stocks and bonds?

10   Q    But with the risk would come with it, should it

11   succeed, a great return on your investment.

12        You understood that, did you not?

13   A    Yes.

14   Q    And I don't mean to belabor the point.  But we're

15   talking about the investments in real estate in Hawaii,

16   true?

17   A    True.

18   Q    Have you been to Hawaii, sir?

19   A    Been to Hawaii with my parents in 1970, 1980 I think.

20   Q    When?

21   A    Late 1980 we went to Hawaii.  And also on my

22   honeymoon I went there.

23   Q    And what did you think of the place when you went

24   there on those two occasions?

25   A    It's a long way to go.

2223

1   Q    But it's just downright beautiful, isn't it?

2   A    It's a nice place, yes.

3   Q    By the way, when you first started using Phil as your

4   business manager, financial advisor, Phil presented you

5   with a contract.  Even though you were friendly with Phil,

6   he presented you with a contract known as a standard

7   advisors agreement by which you then paid his quarterly

8   fee.

9             Do you recall that?

10  A    Yes, I did, yes.

11  Q    At that point in time did you have the opportunity to

12  read the contract that Phil presented to you and have an

13  opportunity to have him answer any questions you might

14  have about that contract?

15  A    Yeah.  I believe we started out when Phil was in

16  Boston at Asante.  And then I'm not sure, after Asante

17  then State Street Advisors.  I remember in Dallas, Texas,

18  in Houston when we signed it.

19  Q    You remember, sir, whether or not that contract

20  became what we know as an arbitration clause, meaning that

21  should there ever been a dispute between you and Phil

22  Kenner you could elect to go to arbitration rather than

23  pursue what could be a very lengthy and expensive civil

24  lawsuit?

25            Do you remember that being part of the Kenner

2224

1    advisor's agreement?

2    A    I don't remember going through it all, no.

3    Q    But was there a reference there, sir, where you

4    elected to take advantage of that arbitration clause

5    because of some dispute you had with Phil, yes or no?

6    A    I didn't know --, sir, no.

7    Q    By the way, other than Phil being your financial

8    advisor, over the years you have had access, yourself, to

9    obtain legal advice.  Is that true?

10   A    I have had -- I guess so, yeah.

11   Q    Well, you have purchased homes, correct?

12   A    Yes.

13   Q    And during the course of those purchases you would

14   have at least interaction with an attorney, true?

15   A    With an attorney?  You know, other than the title and

16   stuff like that, I'm not sure if that was an he.

17   Q    Well, I guess sir -- I'll make it simple.

18           From the point in time Phil Kenner became your

19   business manager/financial advisor, up to today, have you

20   ever retained the services of an attorney for any purpose?

21   A    Personally, myself, I haven't retained one.  But I

22   mean for the situation of the deposition I had to do and

23   stuff like that, that was through Phil's attorney.  I had

24   to seek out to look for a lawyer.

25   Q    Well, as relates, let's say to any of your

2225

1    involvement with the National Hockey League, was there

2    ever an instance where, either directly or through your

3    agent, an attorney was involved, if you recall?

4    A    Not that I recall.

5    Q    Well, we certainly can agree should you so choose you

6    know how to get in touch with a lawyer, correct, wherever

7    you are?

8    A    Yeah.

9    Q    When you were asked on direct specifically a question

10   offering a yes or no answer, did you authorize any of your

11   money to go to Tommy Constantine, your answer was, no.

12        Do you recall that?

13   A    Directly to Tommy Constantine, yes.

14   Q    Well, you told us a moment ago that you have an

15   awareness that Tommy Constantine has and still does have

16   an ownership interest in Eufora, true?

17   A    I believe so, yes.  I met Tommy once.

18   Q    You said a moment ago, sir, that after the initial

19   decision to invest in Eufora there were occasions when you

20   and Phil discussed your Eufora investment.  I think you

21   said one time was on the golf course.

22   A    We had conversations.  I might have brought that up.

23   I might have brought a different investment up.

24   Q    And was Phil always -- when you spoke with Phil about

25   these investments you would ask him a question and he

2226

1    would give you an answer.

2            Is that true?

3    A    Yes.

4    Q    Was there ever an instance where he said, I'm not

5    going to answer your question?  Did he ever say something

6    like that?

7    A    No.

8    Q    You did have an understanding, as you told us on

9    direct, that the GFS Fund would be used against lawyers's

10   fees.  And you used that, quote, lawyers's fees, correct?

11   A    Yes, used for lawyers's fees -- situation.

12   Q    Do you have any idea as you sit here today, as to the

13   nature of the lawsuit involving Phil Kenner and Kristie

14   Myrick?

15   A    Do I know what happened there?

16   Q    Well, do you have any idea, sir, as to the nature of

17   the lawsuit; whether he sued her or whether she sued him,

18   and the reasons for that lawsuit?  Do you have any

19   understanding of that?

20           MS. KOMATIREDDY:  Objection, your Honor.

21           THE COURT:  Overruled.  You can answer that.

22   A    I believe that Kristie was suing Phil over getting

23   fired, over getting let go.

24   BY MR. HALEY:

25   Q    Who, to the best of your knowledge told you that,

2227

1   that it was Kristie suing Phil over her getting fired

2   rather than Phil Kenner suing her for purposes of

3   absconding with records related to Hawaii land

4   development, things of that nature?  Who told you?

5          MS. KOMATIREDDY:  Objection, your Honor.

6          THE COURT:  Sustained as to form.

7   BY MR. HALEY:

8   Q    Who, to the best of your memory, who told you that

9   the lawsuit was commenced by Phil Kenner against Kristie

10  Myrick over her firing?

11         MS. KOMATIREDDY:  Objection, your Honor.

12         THE COURT:  Sustained.

13         MR. HALEY:  I apologize.

14  BY MR. HALEY:

15  Q    Well, who was the person who told you about the

16  Kristie - Kenner lawsuit?

17  A    Both Phil and she.  She mentioned it that he sued

18  her.

19  Q    How often did you communicate with Kristie Myrick via

20  text?

21  A    Not too often.  When she worked there, she was the

22  one, I think I would ask her, you know, where is he, or

23  whatever was going on.  Since all that happened I have

24  never spoken to her.

25  Q    When you say when she worked there.

2228

1      Kristie Myrick worked for Phil Kenner as an

2  employee of Standard Advisors, Inc.  Isn't that true?

3  A    I believe so.

4  Q    Kristie Myrick, if you know, sir, maintained in part

5  Standard Advisors books and records, including the books

6  and records as related to the Hawaii land development.

7  Isn't that true?

8  A    You're asking do I know if she has them?

9  Q    No.  Did you have an understanding that Kristie

10 Myrick was an employee of Phil Kenner?

11 A    I believe she was his secretary, helped Phil Kenner.

12 Q    And the communications that you had with Kristie

13 Myrick, did it concern things like your line of credit

14 and/or the use of your money for the Hawaii land deal,

15 things of that nature?

16      MS. KOMATIREDDY:  Objection, your Honor.

17      THE COURT:  Overruled.

18      You can answer that.

19 A    Ask that again, sir?

20 BY MR. HALEY:

21 Q    Your communication with Kristie Myrick, do you

22 recall, did it concern matters like the use of your line

23 of credit and/or let's say your investment in Hawaii,

24 things of that nature?

25 A    I don't understand the question.  She wasn't -- I'm

2229

1   sure she knew about these investments, but I didn't -- she

2   didn't have authority to do anything with it that I would

3   ask her.

4   Q    No.  I would like you to understand the question.

5         The content of the communications you had with

6   Kristie Myrick, to the best of your knowledge did they in

7   some sense involve your investment in the Hawaii project?

8   A    I don't believe so, no.

9   Q    Well, do you have a recollection of what you talked

10  about with her?

11  A    Like I said --

12        MS. KOMATIREDDY:  Objection.

13        THE COURT:  Sustained.

14  BY MR. HALEY:

15  Q    I'm going to ask you to take a look at a document

16  marked Kenner Exhibit 72.  And again, you're entitled to

17  look at the entire document.  But your attention at least

18  is drawn to the cover page or the first page.

19        Does that document, sir, have some meaning to

20  you?

21  A    No.

22  Q    Well, do you recall filing a claim in the United

23  States Bankruptcy Court, the District of Arizona, where

24  you were named as the plaintiff and Tommy Constantine was

25  named as the respondent?

Sydor - Cross/Mr. Haley

2230

1           MR. LaRUSSO:  Your Honor, can we have a sidebar.

2           THE COURT:  Yes.

3           (Continued on the following page.

2231

1      (The following occurred at sidebar.)

2          MR. LaRUSSO:  I object to any question regarding

3   this bankruptcy proceeding.  I believe, my understanding

4   is that Mr. Sydor -- well, if there is allegations here

5   that Mr. Constantine may have committed bankruptcy fraud,

6   I want to stay away from any allegations that might draw

7   out any information regarding the bankruptcy and

8   possibility that my client was involved in Bankruptcy

9   Court.  So I'm objecting to anything involving Bankruptcy

10  Court.

11         MR. HALEY:  Tommy Constantine clearly, through

12  the efforts of my client sold portions of his ownership

13  interest in Eufora to various hockey players over the

14  years.  That was the circumstance under which Phil was

15  making representations to the hockey player investors that

16  they were told for their contributions an ownership

17  interest in Eufora.  And what was occurring was Tommy

18  Constantine was indeed diminishing his ownership interest

19  by selling his stock and ownership interest in Eufora

20         Tommy Constantine years later when he was in

21  financial straits files a petition for bankruptcy.  In

22  that petition he denies -- and I don't whether it is true

23  or not from my perspective -- that he had an ownership

24  interest in Eufora.  Phil Kenner assisted Darryl Sydor and

25  others in bringing this claim in the bankruptcy

2232

1  proceeding.  Judge, I'll show you the particular point --

2  which each of Phil Kenners investors, clients was detailed

3  for the bankruptcy judge in order that, and for --

4  obligations to his client, there should be a claim in the

5  petition proceeding that his clients be made whole.  That

6  doesn't speak of a conspiracy between Phil Kenner and

7  Tommy Constantine.

8           As I said before, judge, I don't represent Tommy

9  Constantine.  I represent Phil Kenner.  My only objective

10 here is not to introduce this document into evidence, but

11 to establish to the jury, should he be called, that he

12 filed this petition against Tommy Constantine in the

13 Bankruptcy Court with the assistance of Phil Kenner.  And

14 indeed, your Honor, that is something I mentioned in my

15 opening statement.

16           THE COURT:  This is a much more limited offer.

17 He wants to say, show that he believes Mr. Kenner assisted

18 Mr. Sydor in trying to say what interest he had in Eufora

19 against Mr. Constantine's bankruptcy petition.  That

20 doesn't suggest any fraud.

21           MR. LaRUSSO:  If it is at least that limited.

22 I'm just concerned about the other part that he was

23 alluding to.

24           THE COURT:  I'm precluding any effort to try to

25 prove some type of fraud in connection with the

2233

1   bankruptcy.  Okay?

2           MS. KOMATIREDDY:  He is reading into the record

3   and asking something, asking questions, does it refresh

4   your recollection.  He is reading from a document --

5           THE COURT:  No, no.

6           MR. LaRUSSO:  You can see my concern.  The

7   document talks about Mr. Constantine representing falsely.

8   I want him to stay away from that.

9           MR. HALEY:  Your Honor, despite my enthusiasm at

10  times, I know what to do and what not to do.

11          MR. LaRUSSO:  Thank you very much.

12          (Continued on the following page.

13

14

15

16

17

18

19

20

21

22

23

24

25

(The following occurred in open court.)

BY MR. HALEY:

Q Mr. Sydor, taking a look at what has been marked Kenner Exhibit 72.

Do you recall an instance, sir, where Phil Kenner assisted you in filing a document in connection with a bankruptcy proceeding in order for you to preserve your interest in Eufora?

Do you recall that?

A No.

MR. HALEY: I just have a few more questions.

BY MR. HALEY:

Q Do you know who Sergei Gonchar is, yes or no?

A Yes.

Q And who is he?

A A hockey player that I played against in the National Hockey League.

Q Do you know who Mattias Nordstrom is?

A Yes.

Q And who is he?

A A hockey player I played against.

Q Do you know who Michael Peca is?

A Yes.

Q And who is he?

A An NHL player I played against.

2235

1    Q     Do you know who Tyson Nash is?

2    A     Yes.

3    Q     And who is he?

4    A     He is a really good friend and an NHL player I played

5    against in junior hockey.

6    Q     Do you know who Greg deVries is?

7    A     Yes.  I played against him in the National Hockey

8    League.

9    Q     Do you know who William Ranford is?

10   A     Yes.  I played against him in National Hockey League.

11   Q     Do you know who Glen Murray is?

12   A     Yes.  I played against him in  the National Hockey

13   League.

14   Q     And finally, do you know who Vitali Yachmenev is?

15   A     Yes.

16   Q     And do you have an understanding, sir, that in

17   addition to yourself, each one of those hockey players had

18   contributed money as an investment in Eufora?

19   A     Yeah, yes.  I didn't know exactly who everybody, but

20   yes.

21              MR. HALEY:  May I have a quick moment, judge?

22   BY MR. HALEY:

23   Q    Sir, in connection with the Myrick litigation we

24   spoke of before involving Phil Kenner and  Kristie Myrick;

25   do you recall being deposed as relates to that lawsuit,

2236

1    where questions were asked of you by the attorney for

2    Ms. Myrick, and the attorneys for Phil Kenner?

3    A    I don't recall that.

4    Q    Would you take a look at a document marked Kenner

5    Exhibit 73?

6    A    Yes, I do.

7    Q    Does that refresh your recollection as to whether or

8    not you were deposed in connection with the lawsuit

9    involving Phil Kenner and Ms. Myrick?

10   A    Yes, I guess I was.  I guess I didn't recall, but

11   this is what it was.

12   Q    And does that document refresh your recollection -- I

13   don't mean to interrupt you.

14        Please, you're entitled to look at the entire

15   document if you wish to do so.  I don't want to interrupt.

16   A    Okay.

17   Q    Sir, does that document refresh your recollection

18   that the lawsuit involving Phil Kenner and Kristie Myrick

19   was commenced by Phil Kenner against Kristie Myrick, in

20   other words he was the plaintiff, he sued her, not the

21   other way around?

22   A    Yes.

23   Q    It does refresh your recollection.  Is that correct?

24   A    Yes, it says here.  I can't remember this whole case.

25   I can't remember what questions were asked in the

2237

1    deposition.

2    Q    Do you have a recollection, sir that you retained an

3    attorney to represent you, and only you, for purposes of

4    that deposition?

5    A    I personally did not go out and find somebody, no, I

6    don't think so. I don't recall.

7    Q    Well, do you know, or do you recall if Global

8    Settlement Fund refused to pay for your attorney in

9    connection with that deposition?

10   A    Can you ask the question against?

11   Q    Do you know if Global Settlement funds were used to

12   pay for an attorney representing you during the course of

13   that deposition?

14   A    Not -- I can't recall, no.

15   Q    Does the law firm Gruber, Hurst, Johansen and Hail,

16   LLP, meaning anything to you?

17   A    Can you repeat that?  Gruber?

18   Q    I'll repeat that.

19        Does the string of names mean anything to you,

20   Gruber, Hurst, Johansen, and Hail, LLP, mean anything to

21   you?

22   A    I believe I -- it rings a bell.

23   Q    And finally, sir, following the Lehman closing, is it

24   not true that you did receive funds as relates to --

25   withdrawn.

2238

1    Following Lehman closing, you testified to on

2 direct you were aware there was going to be a Lehman

3 closing as relates to the Hawaii land development, true?

4 A    I believe, yes.

5 Q    And following that closing, did you receive monies

6 either directly or indirectly from Phil Kenner, yes or no?

7 A    I don't recall.

8 Q    Well, do you know if on or about August 25, 2006 you

9 received the sum of $383,914.40?

10    MS. KOMATIREDDY:  Objection.

11    THE COURT:  Overruled.  If he knows.

12 A    I don't recall, no.

13 BY MR. HALEY:

14 Q    Do you recall, sir, receiving the sum of $42,500 some

15 odd change, either directly or indirectly from Phil Kenner

16 following the Lehman closing?

17 A    I don't recall.

18 Q    Mr. Sydor, thank you for your testimony.

19    THE COURT:  Mr. LaRusso?

20    MR. LaRUSSO:  Thank you, your Honor.

21

22 CROSS-EXAMINATION

23 BY MR. LaRUSSO:

24 Q    Good afternoon, Mr. Sydor.  My name is Robert

25 LaRusso.  I represent Mr. Constantine.

2239

1    I believe you testified a little while ago that
2  you met Mr. Constantine on one occasion in Phoenix, I
3  believe that was your testimony a few minutes ago?
4  A    Yes.  I met him one time with Tyson Nash.  We walked
5  through the building and we met for lunch at a sandwich
6  shop, I believe.
7  Q    Would you be able to identify Mr. Constantine if you
8  saw him again?
9  A    Right there.
10    MR. HALEY:  He indicated my client, your Honor.
11    THE COURT:  Yes.
12  BY MR. LaRUSSO:
13  Q    Mr. Sydor, I'm going to ask you a few questions about
14  the Myrick lawsuit.
15    You testified on direct that you did not
16  authorize any of your Global Settlement Fund contributions
17  to be used towards the Myrick lawsuit.
18    Is that correct?
19  A    I believe so, yes.
20  Q    You believe so?
21  A    Can you ask the question again, sir?
22  Q    Sure.
23    When you were testifying on direct and the
24  government was asking you questions, you were asked
25  whether or not any of your Global Settlement Fund monies

Sydor - Cross/Mr. LaRusso

2240

1   that you contributed were to be used for the Myrick

2   lawsuit.  And your answer was, no, correct?

3   A    Correct.

4   Q    And I believe you also testified that you would not

5   have made that contribution if you knew you were going to

6   be paying for the Myrick lawsuit or a personal lawsuit.

7            Is that correct?

8   A    Correct.  I was under assumption it was for the

9   Mexican situation.

10  Q    Now you testified a few moment ago that you now

11  recall actually appearing for a deposition in the Myrick

12  lawsuit.

13           Is that correct?

14  A    Yes.  I didn't recall at first, but I do remember

15  doing this, the deposition.  It was in the Los Angeles

16  area.  I remember, I actually got a speeding ticket on the

17  way back from there.

18  Q    And you recall communicating with Mr. Constantine in

19  regards to your appearance at the Myrick litigation for

20  the purposes of being deposed.  Do you have any

21  recollection of communicating with Mr. Constantine either

22  by Blackberry, e-mail or telephone call?

23  A    I don't recall, no.

24  Q    Do you have any recollection of being, using the

25  words, upset you were being asked to attend a deposition

2241

1    down in Los Angeles in regard to the that lawsuit?

2    A    Yes.  Just, yeah.  I was.

3    Q    Do you recall the date of that deposition?

4    A    It says on here, Tuesday July 7, 2009.

5    Q    I'm going to show you what is marked for

6    identification as C-139.  Take a look at this, please.

7    And you can start on the second page and work your way

8    forward.  I just want to make sure you have had an

9    opportunity to look at that.

10   A    Yeah, I remember some of it.

11   Q    And directing your attention to the other portions

12   so that my next question will have some meaning.  Okay?

13           Does that refresh your recollection, do you

14   remember communicating with Mr. Constantine via your

15   Blackberry to his e-mail regarding the Kenner/Myrick --

16   I'll do it more directly.

17           Does this say, this is a communication between

18   you and Mr. Constantine on June 16, 2009 regarding the

19   Kenner/Myrick suit and your appearance for the deposition?

20   A    Yes.

21           MR. LaRUSSO:  And your Honor, may I ask this be

22   received at this time?

23           MS. KOMATIREDDY:  No objection.

24           THE COURT:  No objection?

25           MR. HALEY:  No, sir.

2242

1          THE COURT:  C-139 is admitted.

2          (Defense Exhibit C-139 in evidence.)

3   BY MR. LaRUSSO:

4   Q    I'm not going to read all of this to the jury, but I

5   would just like to display -- C-139, and what we were

6   referring to was the date June 16, 2009.  And it is you

7   corresponding with Mr. Constantine.

8          Is that correct, from your Blackberry?

9   A    Yes.

10  Q    And at this point you're telling Mr. Constantine that

11  you have an anniversary, and you would look at other

12  dates.  But I am in and out for the -- expletive -- and

13  only one hour.

14         Do you see that?

15  A    Yes.  I'm not even sure what that was, for why I said

16  that.

17  Q    You had a family affair and you weren't available at

18  that time and were you discussing with Mr. Constantine a

19  better date for your deposition.

20         Is that correct?

21  A    Yes.

22  Q    Now at this point, June 2009, you had made your

23  contribution to the settlement find.

24         Is that correct, back in May of 2009 about a

25  month before?

2243

1    A    Yes.

2    Q    And were you aware that Mr. Constantine was

3    participating in overseeing some of the funds that were

4    being contributed to the Global Settlement Fund at this

5    point?

6    A    I believe so, yes.

7    Q    Just a few questions.

8         You know you attended the deposition.  Do you

9    remember ever discussing with Mr. Constantine that it was

10   going to be the]Global Settlement Fund that was going to

11   pay for your expenses in connection with your appearance

12   at the Kenner/Myrick lawsuit, particularly your

13   deposition?

14   A    I don't believe so, no.

15   Q    I'm going to show you what has been marked for

16   identification as C-138.  And again, start on the second

17   page and read forward, and examine all of it before I ask

18   the next series of questions.

19        Direct ing your attention up to the top.  Is

20   this an e-mail communication in part between you and

21   Mr. Tommy Constantine on June 10, 2009 in regards to your

22   appearance in the Myrick lawsuit, particularly your

23   deposition?

24   A    Yes, it has that on there.

25   Q    And it contains information that you were forwarding

2244

1   to him regarding your communication with others via your

2   Blackberry.

3           Is that right?

4   A   Yes.

5           MR. LaRUSSO:  Your Honor, he would ask C-138 be

6   received at this time.

7           MR. HALEY:  No objection.

8           MR. MISKIEWICZ:  No objection.

9           THE COURT:  C-138 admitted.

10          (Defense Exhibit C-138 in evidence.)

11          MR. LaRUSSO:  With your permission, your Honor,

12  I would like to just read a portion of that C-138 dated

13  June 10, 2009.

14  BY MR. LaRUSSO:

15  Q   That's your information at the top, that header?

16          Is that correct, Mr. Sydor?

17  A   Yes.

18  Q   And this is to Tommy, re Eufora?

19  A   Yes.

20  Q   And you're sending it via your Blackberry.  And there

21  are correspondences that you attach here.  I would like to

22  just direct your attention to the second page for a

23  moment.

24          If you recall, Mr. Haley referred to a law firm

25  by name of Gruber, Hurst, Johansen and Hail.  Do you see

2245

1  that?

2  A    Yes.

3  Q    Does that refresh your recollection that they were

4  retained to represent your interest in this lawsuit?

5  A    I believe so, yes.

6  Q    Particularly Mr. Mark L Johansen.

7         Is that right?

8  A    Yes.

9  Q    And the first e-mail on this chain is from

10  Mr. Johansen to you.

11         Is that correct?

12  A    Yes.

13  Q    And it says, Darryl, I hope you and your family are

14  doing well and are enjoying the summer.  I wanted to let

15  you know that your deposition will not take place on June

16  12th as we previously scheduled.  Apparently counsel for

17  Myrick still wants to take your deposition and we are

18  looking at June 19, 24, 25, or 26.  Do any of those dates

19  work for you.  Regards, Mark.

20         And Mark is your attorney, Mr. Johansen?

21  A    I guess so, yes.

22  Q    Well, the next e-mail is your reply from you to

23  Mr. Johansen.

24         Is that correct?

25  A    Yes.

2246

1    Q    I want to make sure that you see it.

2         And your portion of the email says:  Hey, Mark,

3    thank you very much for your help on this.  However, you

4    should of been notified by either attorney Paul Augustine

5    and/or Ron Richards that they are handling the case going

6    forward.

7         Who is Paul Augustine?

8    A    I guess it is Ron Richard's help.  I don't know.  I

9    think this is through, I think through Phil.  This is who

10   we had, Ron Richards as a lawyer out of LA.  Also helped

11   me with my deposition for this years back.

12   Q    And that is the Ron Richards that your money was sent

13   to via wire transfer, correct, your Globe Settlement

14   money?

15   A    That is where I was told to send it to, yes.

16   Q    And the next sentence, I apologize for not being

17   notified yet.  Paul and Ron actually have been retained by

18   the entire group of us -- in rackets Kenner clients -- and

19   are handling the Global Settlement plan as well as filing

20   certain class action suits against certain parties.

21        And that kind of spells out accurately that

22   Mr. Richards was the person who was going to be handling

23   the Global Settlement Fund on behalf of you and the other

24   hockey players.

25        Is that right?

2247

1   A    I believe so, yes.

2   Q    Now this you, this is a e-mail from you to your

3   lawyer, correct?

4   A    Well this is, yeah, this is going to Mark Johansen

5   telling him that I no longer need him.

6   Q    Now after you mentioned Global Settlement Fund, the

7   next sentence says, They will be covering me in the

8   deposition in the Myrick case if it even takes place at

9   all.

10          Do you see that?

11  A    Yes.

12  Q    Is it fair to say at this point, you're saying that

13  the monies that Mr. Ron Richard has custody of regarding

14  the Global Settlement fund will be taking care of the cost

15  of your deposition at this point?

16          MS. KOMATIREDDY:  Objection.

17          THE COURT:  Overruled.

18  BY MR. LaRUSSO:

19  Q    Is that correct?

20  A    Can you ask the question again, please, sir.

21  Q    At this point in your communication to Mr. Johansen,

22  you're saying, They will be covering me in the deposition

23  in the Myrick case if it even takes place at all.  They,

24  being Mr. Ron Richardson and Paul Augustine.

25          Is that correct?

2248

1   A    Yes.

2   Q    And when you say covering you, covering the cost of

3   your appearance and other expenses in regards to your

4   deposition.

5        Is that correct?

6   A    Well, they didn't cover me -- I mean, I think what I

7   meant by that was that they're going to be the lawyers now

8   with me at the deposition.  I paid for my own flight down.

9   Q    Somebody had to pay for those expenses, right?

10  A    Yes.

11  Q    And you're telling inquire lawyer that Mr. Ron

12  Richards will be covering those expenses.

13       Is that what your saying at this point,

14  Mr. Sydor?

15  A    I guess that is what it's saying, yes.

16  Q    Let me just finish reading it.

17       Myrick's attorney was notified by Paul -- in

18  brackets, last week, end brackets -- that I could not

19  attend the first scheduled depo date.  That is probably

20  why they have responded to you with the new dates.  In any

21  case, I will make sure that you are physically notified by

22  Paul or Ron immediately.  And I thank you again for all

23  your help.  Finally, please advise me if there are any

24  additional final billings since my last payment.

25       So you're making payments to this lawyer,

2249

1   correct?

2   A    Yes.

3   Q    And you're telling him that payments that are being

4   made by you are going to be covered by the Global

5   Settlement Fund?

6   A    Payments by me are going to be covered by the Global

7   Settlement Fund?

8   Q    Yes.  Is that what you're telling Mr. Johansen at

9   this point?

10  A    I don't believe so.  I paid out of pocket for that.

11  Q    I understand that.  But when you paid out of pocket,

12  didn't you make a request to have those expenses paid for

13  by the Global Settlement Fund?

14  A    I can't recall.

15  Q    This doesn't refresh your recollection?

16  A    No.  I can't recall asking for money from the Global

17  Settlement.

18  Q    Did you communicate with Mr. Constantine at all

19  regarding any expenses or fees in connection with the

20  Global Settlement Fund?

21  A    I can't recall.

22  Q    Let me show what has been marked for identification

23  as C-144.

24       Do you recognize this as an email from you to

25  Mr. Constantine around the same time frame, May 20, 2009,

2250

1    talking to him in regards to an $8,000 expense?

2    A    Yes.  It's from Tommy asking me for $8,000.

3    Q    In regards to?

4    A    I guess the bill from the law firm.

5    Q    In regards to the deposition in the Myrick case.

6         Is that correct, to the best of your

7    recollection?

8    A    I guess.  I don't know.

9         MR. LaRUSSO:  Your Honor, I ask that C-144 be

10   received.

11        MS. KOMATIREDDY:  Objection, foundation.

12        THE COURT:  Overruled.

13        Any objection to it.

14        MR. HALEY:  I'm going to say, no, sir.

15        THE COURT:  C-144 admitted.

16        (Defense Exhibit C-144 in evidence.)

17        THE COURT:  Ladies and gentlemen, it's time for

18   the lunch break.

19        MR. LaRUSSO:  I'm actually finished with my

20   reports, judge, if you want to --

21        THE COURT:  So we'll take a lunch break.  And

22   we'll meet again at 2:00

23        (A luncheon recess was taken at 1:00 p.m.)

24        (Continued on the following page.)

25

Sydor - Cross/LaRusso

2251

1              A F T E R N O O N   S E S S I O N

2

3              THE COURT:  All be seated.  Ready?

4              MR. LARUSSO:  Yes, your Honor.

5              THE COURT:  How much longer do you think you

6    have, Mr. LaRusso?

7              MR. LARUSSO:  I want to say an hour, Judge.

8              THE COURT:  An hour?

9              MR. LARUSSO:  I threw out two yellow pieces of

10   paper already.  It may be shorter, Judge.

11             THE COURT:  Okay.

12             (Whereupon, the jury at this time enters the

13   courtroom.)

14             THE COURT:  Be seated.

15             Go ahead, Mr. LaRusso.

16             MR. LARUSSO:  Thank you, your Honor.

17   CROSS-EXAMINATION

18   BY MR. LARUSSO:

19   Q    Mr. Sydor, I'm going to come up here and just ask you

20   a few questions so we can move along as quickly as we can.

21   Take a look what has been mark for Identification as

22   C 141, and I ask you do you recognize this as an e-mail

23   from your lawyer, Mr. Johansen in regard to your

24   deposition you are forwarding to Mr. Constantine on

25   September 8, 2009, in regards to the last outstanding bill

Sydor - Cross/LaRusso

2252

1  for his services?

2  A    Yes, I see it.

3          MR. LARUSSO:  Your Honor, I ask C 141 be

4  received.

5          THE COURT:  Any objection?

6          MS. KOMATIREDDY:  No objection.

7          THE COURT:  Any objection.

8          MR. LARUSSO:  No, sir.

9          THE COURT:  C 141 received into evidence.

10         (Whereupon, Defendant's Exhibit C 141 was

11  received in evidence.)

12  Q    Very briefly in regards to the September 8, 2009,

13  e-mail, that's your e-mail address, is that correct,

14  Mr. Sydor?

15  A    Yes.

16  Q    To Mr. Constantine, Tommy at Eufora, and you are

17  responding at this point:  Just got this.  Just got this.

18  And you are forwarding the following message that appears

19  below.  It is from Mark to you, Darryl.  I hope you and

20  your family are enjoying the summer.  Since our work is

21  done on this case, could I please get you to take care of

22  the outstanding attorney fee balance of $1,697.  Please

23  call if you have any questions or if I can be of any

24  additional assistance.

25          Thanks, Mark.

2253

1      You e-mailed to Mr. Constantine this message and

2   said got this.  It's in reference to if you look the

3   header, Myrick/Kenner lawsuit?

4   A    Yes.

5   Q    Does this refresh your recollection that you are

6   asking Mr. Constantine to take care of this bill in

7   regards to the expenses incurred in the Myrick lawsuit?

8   A    I don't remember this conversation, but that's what

9   it does reflect.

10  Q    Now, the Government Exhibit 6603, that's the e-mail

11  you talked about where you were responding to Mr. Kenner's

12  e-mail of May 17, 2009, regarding the uses of the Global

13  Settlement Fund.

14      Do you recall that testimony?

15  A    Yes.

16  Q    And to be fair, you were telling us that you only

17  recall the initial portion of it, you did not as you

18  recall read the entire e-mail message.  Is that right?  Is

19  that your testimony?

20  A    Yes.

21  Q    However, you did respond, yes, I totally understand

22  everything.  Thanks, Darryl.

23      Is that correct?

24  A    Yes.

25  Q    And that would be on May 18, 2009, right?  Do you

Sydor - Cross/LaRusso

2254

1    agree with me?

2    A    Yes.

3    Q    Did you visit with Mr. Constantine either on that day

4    or shortly thereafter at the Eufora offices?

5    A    I can't exactly remember the exact date that I met.

6    I just know that we went through the offices, he showed me

7    the hangar, and then we went to lunch.  I don't remember

8    the exact date.

9    Q    Do you have a recollection of any further

10   conversation with Mr. Constantine on that occasion?

11   A    Well, we went to lunch.  I can't remember exactly

12   what we talked about.

13   Q    Let me show you what has been marked for

14   identification as C 125.  Do you recall responding on

15   May 18th, the same day of your e-mail that we just looked

16   at to Mr. Constantine regarding an upcoming meeting the

17   following day on May 19th?

18   A    I guess that's the time that I was in Phoenix and met

19   him.

20   Q    That's your e-mail address to Mr. Constantine in

21   response to his; is that correct?  Actually it's your

22   BlackBerry.

23   A    I guess it is what you set up for your BlackBerry for

24   mail.

25            MR. LARUSSO:  I ask C 125 be received at this

Sydor - Cross/LaRusso

2255

1    time.

2              MS. KOMATIREDDY:  No objection.

3              MR. HALEY:  No objection.

4              THE COURT:  C 125 is admitted.

5              (Whereupon, Defendant's Exhibit C 125 was

6    received in evidence.)

7    Q    Mr. Sydor, I'd ask you to take a look at the date of

8    this e-mail, May 18, 2009.  That's the same date of the

9    e-mail response you gave to Mr. Kenner, is that right, in

10   regards to the authorization use of Global Settlement Fund

11   money?

12   A    I guess so, yes.

13   Q    Well, just so we're sure, your response is this is

14   the 6603 exhibit.  Do you see that, Mr. Sydor?

15   A    Yeah.

16   Q    I want to make sure I get it correct.  And your

17   response to Mr. Kenner is on May 18, 2009?

18   A    Yes.

19   Q    And then the e-mail talking about setting up a

20   meeting with Mr. Constantine is on the same day of that

21   e-mail you responded to, May 18, 2009; is that right?

22   A    Yes, earlier in the day.

23   Q    And the address that Mr. Constantine is forwarding to

24   you, that is the address of Eufora; is that right?

25   A    I don't know exactly the address of Eufora.

Sydor - Cross/LaRusso

2256

1   Q    Take a look at your reply:  Be there by 10:30 a.m.

2   tomorrow.  Do you see that?

3   A    Yes.

4   Q    Does it refresh your recollection that you had a

5   meeting with Mr. Constantine on May 19th at Eufora, 2009?

6   A    I believe that's the day I met him, yeah.

7   Q    Now, did you have any discussion with him, does this

8   help refresh your recollection, that on May 19th you

9   discussed with Mr. Constantine the purposes of the Global

10  Settlement Fund?

11  A    I can't recall the conversation exactly what we

12  discussed.

13  Q    So if I listed a number of topics that you may have

14  had discussed, you would not be able to recall one way or

15  the other such as acquiring assets, obtaining interest in

16  hangars or airplanes, you have no recollection of that

17  taking place or you have no recollection whether it did

18  take place?

19  A    Either way, yeah, I don't exactly know the specifics

20  of the conversation.

21  Q    But would you agree with me having looked at these

22  two e-mails the possibility is you more than likely

23  discussed the Global Settlement Fund with Mr. Tommy

24  Constantine?

25          MS. KOMATIREDDY:  Objection to form.

Sydor - Cross/LaRusso

2257

1        THE COURT:  Sustained.

2   A    I --

3        THE COURT:  Sustained.

4   Q    After May 18, 2009, we'll use that date if I could,

5   would you agree with me that you continued your

6   communication with Mr. Constantine either directly by

7   telephone or by the use of e-mails?

8   A    I believe we had contact, yeah.

9   Q    In particular, do you remember after May 18, 2009,

10  participating in conference calls with all or most of the

11  other contributors to the Global Settlement Fund that were

12  arranged by Mr. Constantine?

13  A    Yeah, I remember one specifically about the Global

14  Settlement Fund.

15  Q    And did you call into that?

16  A    Yes, I was sitting in a parking lot of a Best Buy.

17  Q    Do you have a recollection of more than one

18  conference call being arranged as opposed to recalling

19  only one that you participated in?

20  A    I think it might have been one or two.  I can't

21  recall if there is more.

22  Q    Do you have any recollection of the particular nature

23  of the discussions that took place during those conference

24  calls?

25  A    The one I was sitting in Best Buy in my car

Sydor - Cross/LaRusso

2258

1   listening, we were talking about the Global Settlement

2   Fund and then for the situation in Mexico at the time.

3   Q    Do you have a recollection of any other topics being

4   discussed in the conference call?  You do remember?

5   A    I don't remember, no.

6   Q    Let me just ask you to look at what has been in

7   evidence and I'll not review all of these.  This is C 33

8   in evidence, and at the header, do you see Syd@ as your

9   e-mail address?

10  A    Yes.

11  Q    Do you have a recollection of receiving an invitation

12  by Mr. Constantine on June 10, 2009, to participate in a

13  conference call?

14  A    I don't recall.

15  Q    Let me show you what has been received in evidence as

16  C 34, this is an e-mail that is in evidence June 25, 2009.

17       This is C 34, June 25, 2009, and your e-mail is

18  part of the group e-mail; is that correct (indicating)?

19  A    Yes.

20  Q    Do you recall receiving an invitation by

21  Mr. Constantine on this date to participate in conference

22  call number 2?

23  A    I don't remember, no.  I don't recall.

24  Q    C 35 in evidence.  This is conference call number 3,

25  August 19, 2009.  Your e-mail address is part of the

2259

1   group; is that correct?

2   A    Yes.

3   Q    Do you recall receiving an invitation on August 19,

4   2009, to participate?

5   A    I don't recall.

6   Q    Let me ask you, do you remember, and this is C 32,

7   Mr. Sydor, June 10, 2009, e-mail, a conference call.  Do

8   you know all of the individuals listed on the lower

9   left-hand side.

10          Do you recognize some of those names, if not all

11  of them?

12  A    Yes.

13  Q    Those are many of the hockey players that invested as

14  you recall in the Global Settlement Fund?

15  A    Yes.

16  Q    Many of these, if not all, you either know personally

17  or played against?

18  A    Yes.

19  Q    Do you remember receiving this e-mail from

20  Mr. Constantine?

21  A    I don't recall seeing it, no.

22  Q    Do you remember any conference call that you

23  participated in, and I'll quote, if I could.  This is in

24  evidence.

25          There is a legal aspect and a media aspect which

Sydor - Cross/LaRusso

2260

1   we all need to be very aware of and approve before we can

2   execute.

3          Do you have any recollection after reading that

4   to you and looking at that that one topic that may have

5   been the subject of the conference call was not only the

6   legal aspect but a media aspect as well?

7   A    I don't recall.

8   Q    I will show you what has been marked for

9   identification as 32 A, and using what I've left on the

10  screen which is C 32, would you agree with me this is your

11  response to Mr. Constantine's invitation to participate in

12  the conference call?

13  A    Yes.

14  Q    And that would be dated the same date, June 10, 2009;

15  is that right?

16  A    Yes.

17          MR. LARUSSO:  Your Honor, may I ask -- and it is

18  marked C 32 A, be received in evidence?

19          MS. KOMATIREDDY:  No objection.

20          MR. HALEY:  May I see that, Mr. LaRusso.

21          MR. LARUSSO:  I'm sorry.

22          MR. HALEY:  No objection.

23          THE COURT:  C 32 A is admitted.

24          (Whereupon, Defendant's Exhibit C 32 A was

25  received in evidence.)

Sydor - Cross/LaRusso

2261

1  Q    This is the e-mail we just reviewed, the lower

2  portion from Mr. Constantine to you regarding a conference

3  call and the upper portion which is dated the same day, is

4  your response to Mr. Constantine; is that correct?

5  A    That's what it shows, yes.

6  Q    It says Sunday for Syd?

7  A    That's what it says.

8  Q    Do you have a recollection actually participating in

9  this conference that occurred shortly after June 2009?

10  A    I mean I just don't recall.

11  Q    But you do agree when you received an invitation from

12  Mr. Constantine, this refreshes your recollection that you

13  responded to him at least to your availability?

14  A    I guess, yes.

15  Q    By the way, do you recall in any of the either

16  e-mails that you received from Mr. Constantine or any of

17  the conference calls that you recall participating in,

18  discussing the status of the lawsuit or suits that were

19  being brought?

20  A    Ask that again.

21  Q    I'm sorry.

22  A    Ask that again.

23  Q    In either of the e-mails from Mr. Constantine or in

24  the conference calls you recall participating in, do you

25  remember Mr. Constantine updating you or giving you

2262

1    information regarding the lawsuits which were the subject

2    of the Global Settlement Fund?

3              I'll try and move it along and I apologize to

4    you.

5              Showing you what has been marked for

6    identification as C 126.  Just take a look at it.  You can

7    look at the headers.

8              I'll try and ask it in a general way.  The

9    exhibit will speak for itself.

10             Do you remember responding to Mr. Constantine in

11   regards to information he was providing you regarding an

12   update on the lawsuits that were taking place?

13   A    Yes, I guess.

14   Q    Well, do you recognize --

15   A    That's my e-mail.

16   Q    -- To Mr. Constantine which precedes information that

17   he had forwarded to you; is that right?

18   A    Yes.

19   Q    On October 19, 2009; is that correct?

20   A    Yes.

21   Q    You can look at the second page --

22             MR. LARUSSO:  Your Honor, I ask that C 126 be

23   received.

24             MS. KOMATIREDDY:  May I look at the document?

25             No objection.

Sydor - Cross/LaRusso

2263

1        MR. HALEY:  No objection.

2        THE COURT:  C 126 is admitted.

3        (Whereupon, Defendant's Exhibit C 126 was

4   received in evidence.)

5        MR. LARUSSO:  I would just publish the header if

6   I could.  This is C 126 and it is from Mr. Sydor to

7   Mr. Constantine on October 19, 2009.  Thank you.

8   Q    Do you remember, and again I know it has been a long

9   time, back when you sent your acknowledgment to Mr. Kenner

10  on May 18, 2009, receiving an e-mail from Mr. Constantine

11  discussing acquiring assets with Global Settlement Fund's

12  money?

13  A    I don't recall.

14  Q    Particularly amongst a number of topics, acquiring an

15  airplane known as the Falcon 10?

16  A    I know it was talked about in discussion.

17  Q    What I'll do, I'll show you what has been marked for

18  identification as C 127.  Do you recognize this as an

19  e-mail dated May 18, 2009, from Mr. Constantine to you,

20  discussing acquisition aspects of the Global Settlement

21  Fund, and please take your time.

22        Mr. Sydor, so the record accurately reflects

23  what happened, I went up and I placed another exhibit

24  before you marked separately as C 127 A for

25  identification, and ask you if there was an attachment to

Sydor - Cross/LaRusso

2264

1   the e-mail I'm asking you to examine, please look at C 127

2   A, that on May 18, 2009, you received an e-mail from

3   Mr. Constantine discussing the acquisition of assets by

4   the Global Settlement Fund money?

5   A    Yeah, it was sent to my Blackberry.

6   Q    That was operating around May 18, 2009, your

7   Blackberry?

8   A    Yes.

9         MR. LARUSSO:  I'll ask 127 be received in

10  evidence.

11        THE COURT:  127 A or just 127?

12        MR. LARUSSO:  Actually both, 127 and 127 A.

13  VOIR DIRE EXAMINATION

14  BY MS. KOMATIREDDY:

15  Q    You testified that that is your e-mail in the "to"

16  line?

17  A    The one that is set up with BlackBerry.

18  Q    Do you actually remember checking that e-mail

19  address?

20  A    I don't even remember checking my blackberry.net --

21        MS. KOMATIREDDY:  I'm sorry, please finish your

22  answer.

23  Q    -- I never use blackberry.net.  I never checked that

24  specifically.  Just my e-mail.

25  Q    As you sit here today, as you look at this, do you

2265

1    independently as you sit here today remember ever

2    receiving this e-mail from Tommy Constantine?

3    A    I don't remember the specifics of this, no.

4              MS. KOMATIREDDY:  We object.

5              THE COURT:  Why don't you approach.

6              (Whereupon, at this time the following took

7    place at the sidebar.)

8              (Continued.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sydor - Cross/LaRusso

2266

1    THE COURT:  It's still admissible to the extent

2  Mr. Constantine was sending to him.  It is still

3  admissible to Mr. Constantine's state of mind.  So if you

4  want an instruction.

5    MR. MISKIEWICZ:  Your Honor, I'm taking this out

6  of turn.  Our position on this, there is no way of telling

7  this is even authentic, we've never seen this before, we

8  have no independent indicia.  There is no -- this has

9  never been turned over in discovery and we have a million

10  pages of discovery, never seen it before.  This entire

11  thing could have been made up yesterday.  Under

12  authenticity grounds, if anything else, we object.

13    MR. LARUSSO:  He's identified it not as

14  positively as I like.  This is from the e-mail server, the

15  Government can authenticate this.  There is no evidence

16  this is in any way tampered with.

17    MS. KOMATIREDDY:  I'm not sure what gmail server

18  this is from.  This is not Mr. Sydor's gmail.  This is not

19  something that we had access to.

20    THE COURT:  How could they get access to this?

21  How could they check it?

22    MR. LARUSSO:  It's on the gmail server.

23    THE COURT:  For anybody to look at.

24    MR. LARUSSO:  You can't doctor with the gmail

25  server.

Sydor - Cross/LaRusso

2267

1        MS. KOMATIREDDY:  Actually you can.  I've seen

2   other fraudulent e-mails.  This is coming from the

3   Constantine account.  This is not that we have an access

4   to, so when we ask for e-mails, this is not an account

5   that we can have access to.

6        THE COURT:  I want to think about this one.  He

7   obviously can't authenticate it any further but I want to

8   think about it.

9        MR. LARUSSO:  So there is a complete record, the

10  document attached to it, and again to show authenticity,

11  he says his investments in Eufora is only 250.  Our

12  records he actually had $400,000 along with these other

13  individuals, so his interest was in AZ Partners which

14  converts in AZ Partners' interest in Eufora.  That's what

15  the document show.  There is no evidence to doctor this.

16  We wouldn't have put 400,000 into investments at this

17  point.  She said 250.

18        THE COURT:  Why don't you keep going.

19        MR. LARUSSO:  Okay.

20        (End of sidebar conference.)

21        (Continued.)

22

23

24

25

Sydor - Cross/LaRusso

2268

1      (Open court.)

2      MR. LARUSSO:  Your Honor, I'll display to the

3   jury what is already in evidence as C 31.

4   Q    Mr. Sydor, this is an e-mail that was received in

5   evidence, the subject matter is AZ Falcon Partners LLC

6   operating agreements dated July 27, 2009.  It's an e-mail

7   from Mr. Constantine to a group of individuals.

8      Do you see your e-mail address here

9   (indicating).

10  A    Yeah, it's on there a couple of times.

11  Q    I found it once.  No, it's here as well.  I guess

12  they made sure you got it, is that right?

13  A    (No response.)

14  Q    Mr. Sydor, I'll read portions of this and ask you

15  questions relative to what is in this e-mail in evidence,

16  and ask you whether or not if it refreshes your

17  recollection receiving information from Mr. Constantine on

18  the date I just mentioned.

19      To all:  As you may recall through our

20  discussions, one of the issues that was recently resolved

21  as part of our Global Settlement effort, was Diamonte Air,

22  which involved several airplanes and a lawsuit that was

23  filed by the bank against Phil and those of you who

24  invested in the company.

25      Do you recall receiving an e-mail discussing the

2269

1   Global Settlement Fund's efforts in regards to one of

2   Jowdy's companies called Diamonte Air?

3   A    I don't recall.  I mean I recall Diamonte Air.  I

4   don't recall this e-mail.

5   Q    Do you know the name Diamonte Air?

6   A    I don't think so, no.

7   Q    Do you remember investing 250,000 in it?

8   A    Well, I remember investing in Diamonte, the golf

9   course.

10  Q    When it says who invested in the company, were you

11  part of that group?  Do you know?

12  A    In Diamonte Air?

13  Q    Yes.

14  A    I mean I flew private a lot and actually never flew

15  once on this airplane.

16        MR. LARUSSO:  Mr. Sydor, I didn't catch your

17  answer, I'm sorry, when you looked away.

18  A    I don't recall, no.

19  Q    Well, let me just finish reading the paragraph to see

20  if it refreshes your recollection.  This lawsuit has been

21  dropped.  We have reacquired the airplane, refurbished it

22  to its highest standards and all is well with respect to

23  this entity.  It is the same solution we hoped to provide

24  with all the other investments made with Jowdy.

25        Do you have a recollection that at this point

Sydor - Cross/LaRusso

2270

1   Mr. Constantine is telling you that they reacquired from

2   Mr. Jowdy an airplane which has been known as discussed as

3   the Falcon 10?

4   A    I think I remember something about that.  I don't

5   exactly know the specifics.

6   Q    I'll drop down a little bit and continue the

7   discussion with the airplane to see if it refreshes your

8   recollection further.

9            The highlighted portion, about two-thirds of the

10  way it says:  There are two key points to consider here,

11  A, because some of you live in an area where it is

12  logistically impossible to take advantage of your

13  ownership interest in the airplane, you may not care about

14  this particular asset very much.  But the good news for

15  all of you is that regardless of where you live, your

16  investment in this entity will cost you absolutely

17  nothing, unless you elect to use the airplane, in which

18  case you will pay the standard fuel costs, pilot fees,

19  etcetera.  There will be no cost for the use of the

20  airplane itself because you already own it.  If any of you

21  want to use it, just call me and I will make the

22  arrangements.  I will also be providing you with a

23  website, user name and password so you can track where the

24  airplane is 24/7/365.

25            Again unless you use it it will cost you

2271

1    nothing.  I am responsible for the maintenance, insurance

2    storage etcetera.

3           Does that refresh your recollection that the

4    Global Settlement Fund was used to acquire the Falcon 10,

5    and it became an interest that you and others had as a

6    result of that acquisition by Global Settlement Fund's

7    money?

8    A    I think this is part of the Diamonte, so that's what

9    I thought the Global Settlement Fund was for, was the

10   Mexico projects and stuff and I guess this was part of

11   that but it came from Jowdy.

12          I remember at one point I actually asked -- I

13   was going to fly back with my family from Arizona and I

14   think I knew the plane was there.  I never checked this

15   website or whatever it is and we weren't able to use it.

16          Phil found me another plane and it was a prop,

17   silver plane.  I don't know even if that is the plane, but

18   that's the one I used to go once, Arizona-Canada.

19   Q    Let me ask you, would you agree that this e-mail is

20   refreshing your recollection to the acquisition of an

21   airplane by Global Settlement Fund monies and that you

22   obtained, obtained, secured an interest as a result of

23   that acquisition?

24          MS. KOMATIREDDY:  Objection to form.

25          THE COURT:  Overruled.  You can answer.

Sydor - Cross/LaRusso

2272

1   A    I think it does from part of the Mexico situation

2   with Jowdy.

3   Q    And picking up what you had mentioned earlier about

4   the use of the airplane, let me show you what has been

5   marked as C 28 A.  You recognize this as an e-mail from

6   Mr. Constantine on July 30, 2009, providing photographs of

7   the airplane that was acquired and the airplane that you

8   subsequently used.

9              There's three pages.  You can look at them all.

10  A    I remember sending -- them sending pictures of the

11  plane.  I can't remember if it was before or after they

12  ran on it or cleaned it up, but this is not the plane I

13  used.

14  Q    Would you agree this is an e-mail from

15  Mr. Constantine to you and others in the group regarding

16  the acquisition of the Falcon 10?

17  A    Yes.

18              MR. LARUSSO:  I ask C 128 be received.

19              MS. KOMATIREDDY:  No objection.

20              MR. HALEY:  No objection.

21              THE COURT:  C 128 is received in evidence.

22              (Whereupon, Defendant's Exhibit C 128 was

23  received in evidence.)

24              MR. LARUSSO:  If I may publish portions of it.

25  This is C 128 in evidence, an e-mail from Mr. Constantine,

Sydor - Cross/LaRusso

2273

1  July 30, 2009, to a number of other individuals including

2  to yourself.  I'm pointing to your e-mail address.  Is

3  that correct, Mr. Sydor?

4  A    Yes, it's there.

5  Q    And the content of this e-mail is very short.

6            All:  Here are the photos that were supposed to

7  be attached to the last e-mail that I sent regarding the

8  airplane.  I will forward the operating agreement for

9  those of you that haven't signed it yet so you can sign it

10 and e-mail or fax it back to me.

11           Thanks.

12           TC?

13           Do you remember discussing with Mr. Constantine

14 an ownership interest in the Falcon 10?

15 A    Sorry.  Say that again.

16 Q    Do you recall discussing with Mr. Constantine your

17 ownership interest in the Falcon 10 and the possibility of

18 receiving an operating agreement in regards thereto?

19 A    Well, after I think they recovered the plane, then,

20 yeah, I had conversations about the airplane with him.

21 Q    And receiving an ownership interest in it --

22 A    I believe it got spread out to it, yes.

23 Q    -- You and the other hockey players?

24 A    Yes.

25           MR. LARUSSO:  If I overtalk and you have to

Sydor - Cross/LaRusso

2274

1   finish the answer, please, just continue.

2   Q    Now, you testified just a few moments ago you

3   remember using the airplane but not this one.  Is that

4   your testimony?

5   A    No, I never used this airplane.  I used an airplane.

6   I used to fly when I was making good money, we would fly

7   private with small children and it was just easier.  I've

8   used charter airplanes before.

9   Q    Well, do you recall, and you can look at this e-mail

10  again, that the airplane, the Falcon 10, was acquired and

11  put into a company called AZ Falcon Partners?

12  A    I believe so, yes.

13  Q    So that if you received an e-mail from

14  Mr. Constantine regarding the use of an airplane that was

15  owned by AZ Falcon Partners, would it refresh your

16  recollection that it was the Falcon 10 that was being

17  discussed and not some other airplane?

18           MS. KOMATIREDDY:  Objection to form.

19           THE COURT:  Sustained.

20  Q    I will show you three exhibits.  129 for

21  identification, that is, C 129; C 129 A, and C 129 B.

22           I ask you if you remember receiving an e-mail

23  from Mr. Constantine with documentation showing your use

24  of an airplane owned by AZ Falcon Partners at or about

25  August 31, 2009.  Take a look at all three of those

Sydor - Cross/LaRusso

2275

1   documents.  I'm particularly referring you to 129 A in the

2   upper left-hand corner, the second line, please.

3   A    Yes.

4   Q    Do you have a recollection having looked at these

5   documents that you used the Falcon 10, August 22, 2009,

6   and this e-mail from Mr. Constantine to you was in

7   reference to the invoice, the payment for the use of that

8   plane?

9            MS. KOMATIREDDY:  Objection.  Content of the

10   record.

11           THE COURT:  Overruled.

12   A    Now, I do recall using -- I don't know if this was

13   this exact plane, I recall -- I knew I flew Kamloops.

14   Q    That's a location in Canada?

15   A    Yes, my summer home.

16   Q    Looking at these documents, does it help refresh your

17   recollection that flight you used the Falcon 10, and 129 A

18   is the invoice for it?

19   A    Yeah, I guess so.  I didn't recall then, but it shows

20   I used it.

21           MR. LARUSSO:  Your Honor, may I ask 129 A and B

22   be received at this time.

23           MS. KOMATIREDDY:  Voir dire.

24           THE COURT:  Yes.

25

Sydor - Cross/LaRusso

2276

1    VOIR DIRE EXAMINATION

2    BY MS. KOMATIREDDY:

3    Q    You testified you used a private plane from

4    Mr. Kenner and Constantine once?

5    A    Yes.

6    Q    You remember that plane being a propeller plane?

7    A    A two-door, a destination of Edmonton.

8    Q    You specifically testified it was a prop plane, not

9    the Falcon?

10   A    Yes, it was, I guess, a silver prop plane.

11   Q    Looking at Constantine Exhibits 129, 129 A and 129 B,

12   the same ones in front of you, do you actually

13   specifically remember getting this e-mail in the

14   attachments?

15   A    I don't recall, no.

16   Q    Do you specifically remember using a Falcon?

17   A    I don't exactly know what planes I used, like when I

18   would charter, what it was, the model or make.

19   Q    But you remember it was a prop plane, right?

20   A    I remember that one because it was actually my dad

21   joked about it when I showed up.  I was embarrassed, yeah.

22            MS. KOMATIREDDY:  I object.

23            MR. LARUSSO:  I ask it be received.

24            THE COURT:  We'll discuss it during the break.

25            MR. LARUSSO:  May I have a brief sidebar on

Sydor - Cross/LaRusso

2277

1    this?  It will take just two seconds.

2              (Whereupon, at this time the following took

3    place at the sidebar.)

4              (Continued.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2278

1          MR. LARUSSO:  The reason I'm asking for the

2     sidebar, and I apologize and I understand in the throws of

3     the trial the prosecutor did an excellent job, I

4     appreciate what he did, but yes, this did refresh his

5     recollection.

6          THE COURT:  He didn't actually say that.  He

7     said I guess I did because that's what it says.

8          MR. LARUSSO:  This is not a fabricated document,

9     Judge.  These are documents that can be easily verified.

10          THE COURT:  That's why I wanted to discuss it

11     during the break.  I didn't want to waste the jury's time.

12          MR. LARUSSO:  I didn't realize.  I apologize.

13          (End of sidebar conference.)

14          (Continued.)

15     Q    Do you recognize the names Mark Nolan and Jeff Bevis.

16     A    I mean maybe they are pilots.  That's what it is

17     under.  I'm not good with names, no.

18     Q    Are you still looking at that exhibit?

19     A    No.

20     Q    Okay.  You can, if you wish, with regards to the last

21     question.  Do you have any recollection of using the

22     Falcon 10 with Mr. Kenner and flying from Columbus to

23     Kamloops?

24     A    Yes, that was -- once again I don't know if it's

25     exact, like the make and model of the airplane but I do

2279

1    remember flying there.  That was after I got traded to

2    Columbus and we were going to -- he was going to help go

3    around with the realtor for us.

4    Q    And was that a jet airplane that was used?

5         You didn't pilot it, is that correct?

6    A    I didn't pilot it.

7         Yeah, they are mostly -- the only one time was a

8    prop plane, so it would have to be a jet.

9    Q    The Falcon 10?

10   A    Once again I can't -- I don't know if there was a

11   Falcon 10 or what model it was.

12   Q    Okay.

13        And lastly on Defendant's Exhibit C 31, I'm just

14   going to ask you one more question on the second page of

15   the exhibit to see if this helps refresh your recollection

16   regarding additional information from Mr. Constantine.

17        Finally, this is just one of the investment

18   acquisitions and business solutions that overlaid over the

19   legal strategy that we presented as part of the Global

20   plan.  I have attached the documentation for all of you to

21   sign for your respective share of ownership in the

22   airplane company.  It is a very basic operating agreement,

23   but you should definitely read it, sign it and send it

24   back to me at your convenience.

25        Please do not hesitate to call me if you have

Sydor - Cross/LaRusso

2280

1  any questions.  If you will be receiving a -- you will be

2  receiving a similar agreement for the ownership interest

3  that we acquire from the bad guys for their Eufora shares,

4  as well as the Avalon hangar building which is actually

5  where the plane is kept and where Eufora is headquartered.

6  I have also attached some photos of the plane.

7          Does that refresh your recollection that

8  Mr. Constantine communicated to you and the others that

9  the Global Settlement Fund had multiple purposes including

10 some of the ones I just read to you, Mr. Sydor?

11 A    Well, I don't recall it but at the beginning of this,

12 the legal strategy of the Global Settlement, hence from

13 the Jowdy issue, the Mexico stuff, I don't recall seeing

14 this, but --

15 Q    Did you ever hear the phrase "the bad guys"?

16 A    Yeah, that was used a lot.  Well, not a lot.  Well,

17 yeah, I heard "the bad guys."

18 Q    Who are "the bad guys"?

19 A    It's a whole bunch of different situations.

20 Q    In this context.

21 A    I believe that is the Mexico situation.

22 Q    You agree with me that "the bad guys" were Nolan,

23 Juneau and Moreau?

24 A    Yes, I think I recall something like that.  Yeah.

25 Q    And part of the discussions regarding the Global

Sydor - Cross/LaRusso

2281

1    Settlement Fund was to acquire their interests on behalf

2    of the other investors; is that correct?

3    A    Well, I don't know the whole specifics on that whole

4    feud, but --

5    Q    But would you agree it was part of the Global

6    Settlement Fund plan or strategy as far as you know?

7              MS. KOMATIREDDY:  Objection.  Asked and

8    answered.

9              THE COURT:  Sustained.

10   Q    Mr. Sydor, last question on the airplane.

11             Do you remember having e-mail BlackBerry

12   exchanges with Mr. Constantine on March 2, 2010 regarding

13   payments for the use of one of the airplane or the

14   airplane owned by AZ Falcon Partners, especially in

15   regards to the Kamloops trip.

16             Do you recognize this as an e-mail exchange you

17   and Mr. Constantine had with regards to expenses for that

18   trip, and again dated March 2, 2010.  Is that an e-mail

19   exchange that you and Mr. Constantine had regarding the

20   subject that I just mentioned?

21   A    I believe this is when I first met him.

22   Q    We're talking about an e-mail exchange in 2010, your

23   recollection was having met him sometime after you had

24   acknowledged the purpose of the Global Settlement Fund on

25   May 18, 2009, does this refresh your recollection to

Sydor - Cross/LaRusso

2282

1    another event you might have met him?

2              MS. KOMATIREDDY:  Objection to form.

3              THE COURT:  Overruled.  You can answer.

4    A    Say it again, please.

5    Q    Does that help refresh your recollection to a second

6    time you met Mr. Constantine?

7    A    Well, this is the one time that I was talking about

8    before where I met him at the buildings with Tyson and we

9    went down after for lunch.  That's when -- I can't recall

10   meeting Tommy again.

11   Q    Well, that e-mail helped you remember the occasion

12   you remembered the one time you met him.  Does it also

13   help refresh your recollection that an e-mail exchange

14   occurred with Mr. Constantine regarding payment for the

15   use of the airplane owned by AZ Falcon?

16   A    I guess, yes.

17              (Continued on the next page.)

18

19

20

21

22

23

24

25

Sydor - Voir Dire/Ms.  Komatireddy

2283

1    CROSS-EXAMINATION  (Continuing)

2    BY MR. LaRUSSO:

3    Q    Well, we can't guess.

4    A    So ask it again.

5    Q    Do you recall having a discussion via e-mail or

6    Blackberry with  Mr. Constantine regarding your use of the

7    AZ Falcon Partners plane and paying for expenses for that

8    trip?

9    A    Yeah.

10   MR. LaRUSSO:  Your Honor, I ask that be

11   received?

12   MS. KOMATIREDDY:  Voir dire, your Honor.

13   THE COURT:  Yes.

14   VOIR DIRE EXAMINATION

15   BY MS. KOMATIREDDY:

16   Q    Mr. Sydor, do you have this e-mail?  This e-mail,

17   what is the e-mail address at the top?

18   A    Blackberry dot net.

19   Q    Putting the defense attorneys' questions aside, do

20   you on your own, do you actually independently recollect

21   this e-mail conversation?

22   MR. LaRUSSO:  Objection, your Honor.

23   MR. HALEY:  I would object as well, Judge.

24   THE COURT:  To the form.

25   BY MS. KOMATIREDDY:

Sydor - Cross/Mr. LaRusso

2284

1   Q    Do you remember exchanging these e-mails with

2   Mr. Constantine in 2010?

3   A    I don't recall it.  I mean I just said it looks like

4   I did but I don't recall it.

5            MS. KOMATIREDDY:  We object.

6            THE COURT:  Do you want to discuss it further?

7

8   CROSS-EXAMINATION  (Continuing)

9   BY MR. LaRUSSO:

10  Q    By the way, in evidence is C-29.  This is an e-mail

11  or group e-mail from Mr. Constantine.  And you see your

12  e-mail address as part of the e-mail?

13  A    Yes.

14  Q    Do you recall receiving an e-mail from

15  Mr. Constantine, June 18, 2009, discussing a newspaper

16  article.  And it is actually, the caption of this is

17  called, Media Counterpunch.

18            Do you recall this?

19  A    I don't recall.

20  Q    I'm sorry?

21  A    I don't recall, no.

22  Q    Let me show you what has been marked for

23  identification as C-29A.  You can leave that there.

24            I would ask you to put that next to -- okay,

25  take a look at C-29A for identification.

2285

1      Does that refresh your recollection that you did

2  in fact receive that e-mail that you acknowledged in an

3  e-mail of your own dated June 18, 2009?

4  A    Yes.

5  Q    That is your e-mail to Mr. Constantine following that

6  e-mail we just displayed to the jury that is up here,

7  right?

8  A    Yeah.  I don't remember it but I honestly --

9  Q    But look at this.  You read the e-mail and you

10  responded to it.

11      Is that correct, that is what C-29A reflects,

12  right?

13  A    Yes.

14      MR. LaRUSSO:  I ask that C-29A be received, your

15  Honor.

16      MS. KOMATIREDDY:  Same objection, your Honor.

17      THE COURT:  We'll discuss it.

18  BY MR. LaRUSSO:

19  Q    Do you know a man by the name of Michael Stolper?

20  A    Yeah.  He was a lawyer out of New York, I believe.

21  Q    Did there come a point in time that you actually met

22  with Mr. Stolper?

23  A    Met with Mr. Stolper?  I know he was on a conference

24  call.  I'm not sure if I met him in person.

25  Q    Do you recall a trip to New York -- withdraw that.

Sydor - Cross/Mr. LaRusso

2286

1      Do you know where his offices were located?

2   A    No.

3   Q    Did you ever take a trip to New York and possibly

4   meet with Mr. Stolper?

5   A    I don't recall that.

6   Q    Your recollection is you recall participating in a

7   conference call.  Can you give us -- withdraw that.

8        Did anyone bring to your attention the name

9   Mr. Stolper before you participated in the conference

10  call?

11  A    I believe it was a situation where Brian Berard was

12  involved, Tommy Constantine, and he was a lawyer out of

13  New York.

14  Q    And was your participation in that conference call

15  for the purposes of soliciting your financial support in

16  regards to allegations that were being made against

17  Mr. Constantine at that point?

18        MS. KOMATIREDDY:  Objection, your Honor

19        THE COURT:  Overruled.

20        You can answer.

21  A    Would you re-ask the question?

22  BY MR. LaRUSSO:

23  Q    I'll break that down.

24        Before you participated in this conference call,

25  you spoke to a number of people about Mr. Stolper,

2287

1    correct?

2    A    I guess other people talked about Mr. Stolper.

3    Q    And some of those people were Mr. Berard.

4         Do you recall anyone else?

5    A    I believe Mr. Constantine, Berard, someone else I

6    can't remember now.

7    Q    Do you know what the purposes of -- withdraw that.

8    What do you remember being discussed -- withdraw that.

9         Do you recall amongst the topics discussed on

10   that conference call was taking over the control of Eufora

11   from Mr. Constantine?

12        MS. KOMATIREDDY:  Objection.

13        THE COURT:  Overruled.

14   A    It was in the regards of taking over.  I can't

15   remember who.  I think it was a feud between

16   Mr. Constantine and Mr. Kenner.

17   Q    And Mr. Stolper was on the side of the group looking

18   to take over control of Eufora from Mr. Constantine.  Is

19   that correct?

20   A    Yes.

21        I believe Brian Berard was -- some other fellow,

22   I can't remember who it was.  But I believe it was to

23   figure out where all the money went.  I believe there was

24   a feud between Tommy Constantine and Phil Kenner.

25   Q    Part of the discussion centered about taking control

Sydor - Cross/Mr. LaRusso

2288

1    over Eufora from Mr. Constantine?

2              MS. KOMATIREDDY:  Objection.

3              THE COURT:  Overruled.

4              You can answer.

5    A    Can you re-ask?

6    BY MR. LaRUSSO:

7    Q    Amongst the discussions was the topic of taking

8    control over Eufora from Mr. Constantine?

9    A    Yes, I believe so.

10   Q    Well, do you recall that part of the discussion

11   centered upon applying Eufora's loan to be able to obtain

12   that control.

13             Do you recall that?

14   A    I can't recall the specifics of it.

15   Q    By the way, you did sign on to have Mr. Stolper

16   represent you in regards to this dispute that was going

17   on.

18             Is that correct?

19   A    Yes.  Talking to the other players that were involved

20   and I just kind of followed, yes.

21   Q    When you met -- I apologize -- the testimony was when

22   you participated in the conference call, when you talked

23   to these other individuals about taking over the

24   company -- I withdraw that.

25             Do you remember a meeting where you personally

2289

```
1   attended with some of these individuals that were taking

2   over the company, where you hooked your phone or connected

3   your phone to Mr. Constantine so he could listen in on the

4   conversation?

5          Do you recall that?

6   A   I don't recall, no.

7   Q   Let me show you what has been marked for

8   identification, the full Exhibit is 37.  One of the pages

9   is C-37C for identification.  I know it's a tough copy.

10  But do you recognize your signature on this?

11  A   Yes.

12  Q   Do you remember signing a document similar to this?

13  A   I'm not sure what this document is.

14  Q   Take a look at it.  Either this document or any other

15  page in it, and see if it refreshes your recollection.

16          And I may be able to help you.  This is a copy,

17  but it actually is a little clearer.  If I may, your

18  Honor?

19          Read those paragraphs which are part of the

20  written consent of members.  It's the third page.  So you

21  can look at those three pages and see if that helps

22  refresh your recollection as to why you signed that

23  particular document or believe you did?

24  A   So what are you asking me?

25  Q   Does that refresh your recollection as to why your
```

Sydor - Cross/Mr. LaRusso

2290

1    signature appears on the exhibit C-37C?

2    A    I guess that is why I signed it.

3    Q    Unfortunately we can't guess.

4         Do you have a recollection of signing that

5    document and retaining Mr. Stolper for the purposes of

6    representing you in regards to the dispute with

7    Mr. Constantine?

8    A    I don't recall.  But I signed it.  That is my

9    signature.

10   Q    And taking a look at the first page of the document,

11   the yellow highlighted portion.

12        Do you remember that part of the reason for the

13   representation would be to allow Mr. Stolper and his

14   repetitive to buy the Eufora loan?

15   A    To buy the Eufora loan?

16   Q    Right.

17        Do you remember that just looking at the first

18   page of the entire document?

19   A    Oh, this one?

20   Q    Please.

21   A    I recall that Mr. Stolper was going to be -- I recall

22   that maybe like that what he was buying was part of

23   Eufora.  I don't recall his paying off the loan.  But I

24   recall, I think that was his --

25   Q    Is the word strategy, dealing with this situation?

2291

1   A    Yes, yes, that's right.

2   Q    Do you remember attending a shareholder meeting, a

3   Eufora Shareholder meeting either in person or over the

4   telephone?

5   A    A shareholder meeting?  I don't recall.

6   Q    Do you remember calling in to a meeting that

7   Mr. Constantine was holding for other Eufora investors?

8   A    I believe -- I remember being on a conference call

9   with Mr. Stolper, yes.

10  Q    I'm talking about Mr. Constantine now on a totally

11  separate occasion.  I'm sorry.  I apologize.  I should

12  have made that clear.

13  A    Ask again, sir.

14  Q    Do you remember participating in a shareholders'

15  meeting, Eufora shareholders meeting that was being run by

16  Mr. Constantine.  You participating by way of calling in?

17  A    I think, I believe I was on a conference call with

18  Mr. Constantine, yes.

19  Q    Do you remember some of the other participants on

20  this?

21  A    I don't recall now.

22  Q    There were others?

23  A    I think, so, yes.

24  Q    Mr. Berard being one?

25  A    I believe so, yeah.

Sydor - Cross/Mr. LaRusso

2292

1    Q    And do you have a recollection of any other people

2    such as Nick Privitello or Bob Rizzi?  Do those names mean

3    anything?  Do you remember them?

4    A    No.

5    Q    So in this particular conference call, do you have a

6    recollection of what was discussed?

7    A    I can't say that I remember exactly, no.

8    Q    Let me show you what has been marked 89A.  Hopefully

9    we'll finish with this, this one other area.

10            I would like you to take a look at this,

11   particularly the last page, the highlighted portion.  And

12   the question would be, Does the refresh your recollection

13   that in a conference call that you were alluding to

14   Mr. Constantine made an offer to pay back one hundred

15   percent to several of the Eufora investors?

16            Take a look at those.  That is my question and

17   see if that helps refresh your recollection?

18   A    Ask your question again, sir.  I was reading.

19   Q    Does this help to refresh your recollection after you

20   look at it, particularly the last page, the highlighted

21   portion, that during the conference call that we just

22   talked about, Mr. Constantine made an offer to some of the

23   Eufora investors to pay back a hundred percent of their

24   money?

25            THE COURT:  Why don't you focus him on the page

Sydor - Redirect/Ms. Komatireddy

2293

1    that you're referring to.

2              MR. LaRUSSO:  I should have done that.  I asked

3    him to look at the highlighted portion.

4    BY MR. LaRUSSO:

5    Q    Let me just show it to you and see if that helps.

6    A    I don't recall that.

7              MR. LaRUSSO:  Thank you, your Honor.

8              No further questions.  Thank you.

9              THE COURT:  Ms. Komatireddy?

10

11   REDIRECT EXAMINATION

12   BY MS. KOMATIREDDY:

13   Q    Did Mr. Constantine ever offer you a hundred percent

14   of your money from the Eufora investment.

15   A    I don't believe so, no.

16   Q    Did you ever get any money back from Eufora?

17   A    No.

18   Q    Let me show you this about Hawaii, okay?

19              I'm showing you what is in evidence as Kenner

20   64.  Do you remember testifying about that letter?

21   A    Yes.

22   Q    And do you remember you identified that as your

23   signature, correct?

24   A    Yes.

25   Q    You don't specifically remember signing that?

2294

```
 1   A    Specifically -- it's my handwriting on a piece of
 2   paper.  I don't remember.  I don't recall.  But it's my
 3   signature.
 4   Q    And then Mr. Haley asked you about a series of
 5   documents, and he asked you whether it appeared to be.
 6            Do you remember those questions?
 7   A    Yes.
 8   Q    All right, so, going through this document.
 9            Looking at Kenner 66, when he asked you whether
10   it appeared to be your signature, you said something like,
11   It appears to be.
12            Is that your signature?
13   A    That is not my signature.
14            MR. HALEY:  I'm sorry?  What was that?
15   A    That is not my signature.
16   Q    Looking at Kenner 67.
17            Is that your signature?
18   A    No.
19   Q    Going to Kenner 68.
20            Is that your signature?
21   A    No.
22   Q    Kenner 69.
23            Is that your signature?
24   A    No.  These are all upright.  Mine has a slant.
25   Q    Kenner 72.
```

2295

1          Is that your signature?

2    A    No.

3    Q    Do you remember when Mr. Haley asked you about

4    whether you were involved in a complaint against

5    Mr. Constantine.

6          Do you remember that question?

7    A    Yes.

8    Q    And he was referring to this document, page 72.  You

9    said not, even close.

10         Are you sure that is not your signature?

11   A    Positive.

12   Q    Mr. Haley also read into the record a sentence from

13   this document identified as K-65.

14         Do you remember that?  Do you remember reading

15   that?

16   A    Yes.

17   Q    Now just for the record, do you k now where this

18   comes from?

19   A    No.  I don't know.

20   Q    Now Mr. Haley asked you how many times you had

21   conversations with Kenner.  And in particular he asked you

22   about where you were in 2008 and 2009.

23         Do you remember those questions?

24   A    I don't exactly remember the questions.

25   Q    I'll ask a question.

Sydor - Redirect/Ms. Komatireddy

2296

1      The letters, the default letters that I showed

2  you 2118 through 2120.

3      You testified that you had seen those before,

4  right?

5  A    Right.

6  Q    In the 08/'09 season and the '09/'010 seasons, where

7  were you?

8  A    I was, '08/'09, I got traded back to Dallas from

9  Pittsburgh.  And I finished my season there.  And in '09 I

10  was in St. Louis.

11  Q    You were moving around quite a bit?

12  A    Yes.

13  Q    About those default letters.

14      During that time period or at any time period,

15  did you talk to Mr. Kenner on the phone about loaning your

16  name going into default?

17  A    I have no idea.

18  Q    Now Mr. Haley asked but papers you had about property

19  in Hawaii, right?

20  A    Paper.

21  Q    You had discussed a binder, I think?

22  A    Yes.

23  Q    I'm going to show you what is in evidence as

24  Government Exhibit 2135.  That is a loan transaction

25  history.  Was that loan transaction history, Government

Sydor - Redirect/Ms. Komatireddy

2297

1    Exhibit 2135, in the binder that Mr. Kenner gave you?

2    A    I don't believe so, no.

3    Q    Did he ever give you that kind of detail on where

4    your money went?

5    A    No.

6    Q    Now let's talk about the GSF.

7              Mr. LaRusso showed you an e-mail about referring

8    to various legal actions in connection with the GSF.

9              When you first learned about the loan -- what

10   did the defendant tell you it was for?

11             MR. LaRUSSO:  Your Honor, I object to the form

12   of the question.

13   BY MS. KOMATIREDDY:

14   Q    What did the defendant Kenner tell you?

15   A    It was for legal proceedings against Mr. Jowdy down

16   in Cabo in the -- project that we had, legal fees and loan

17   fees.

18   Q    When you decided to put money into the fund, why did

19   you do it?

20   A    Well, because there's obviously an argument going on

21   between them.  And it was part of an investment Mr. Jowdy

22   is saying this.  This golf course I had been on the

23   property before was starting to get built.  And with Phil,

24   actually, yes I think Phil came to, I believe Phil was

25   there in Mexico.  I can't -- I don't believe he came right

Sydor - Redirect/Ms. Komatireddy

2298

1   on the property with us, with me and the other two.  And

2   it was, everything started taking off, the structure, the

3   water, that not sand, but a water plant I guess, and stuff

4   like that.  And then I mean the course was doing really

5   well.  I had not been down --

6   Q    So why did you put money into the fund?

7   A    Because I wanted the fight to be -- this could be.

8   Q    You refer to this, what are you referring to?

9   A    The Cabo resort.

10  Q    Did you have any interest in buying a plane or a

11  hanger or a condominium?

12           MR. LaRUSSO:  Objection, your Honor, beyond the

13  scope.

14           THE COURT:  Sustained.

15  BY MS. KOMATIREDDY:

16  Q    Mr. LaRusso asked you about whether the legal --

17  involved assets including a hangar.

18           Did you have any interest in funding lawsuits or

19  lawyers or law firms that acquired a hanger?

20           MR. LaRUSSO:  Same objection, your Honor.

21  A    No.

22           THE COURT:  I'll let the answer stand.

23           I think you need to move on.  You went through

24  this more than once.

25  BY KOMATIREDDY:

Sydor - Recross/Mr. Haley

2299

1    Q    Mr. Sydor, Mr. Haley asked you if you had ever hired

2    a lawyer to help you in connection with your investments.

3              Do you remember that question?

4    A    Yes.

5    Q    Did you hire Phil Kenner?

6    A    As a financial advisor, yes.

7    Q    To do what?

8    A    Be my financial advisor.

9              MS. KOMATIREDDY:  No further questions.

10             THE COURT:  Mr. Haley?

11             MR. HALEY:  Yes, sir.

12   RECROSS-EXAMINATION

13   BY MR. HALEY:

14   Q    Sir, this is not the first time that you testified in

15   a legal proceeding as relates to this case, is it?

16             MS. KOMATIREDDY:  Objection.

17             THE COURT:  Overruled.

18             You can answer.

19   A    Well, I did the deposition.

20   BY MR. HALEY:

21   Q    Well, did you testify before a Grand Jury in the

22   Southern District of New York with reference to this

23   particular case, and specifically documents that you

24   signed as relates to your Northern Trust account?

25   A    This is the first time I have been in front of a

Sydor - Recross/Mr. Haley

2300

1    jury.

2    Q    Well, my question, sir, is, did there come a point in

3    time, specifically March 29, 2011, that you testified in a

4    Grand Jury with reference to this matter where you were

5    asked questions about the signature on various documents?

6    A    No, those questions were in a deposition I did in New

7    York.  Oh, yes, there was people there.

8             Is that the Grand Jury?  In the deposition?

9    Q    Sorry, I don't want you to be confused.  Do you

10   recall at some point, specifically March 29, 2011, being

11   in Manhattan, New York, at the US Attorney's Office, and

12   appearing before a Grand Jury to answer questions, with 23

13   other people present in the room?

14   A    Yes.

15   Q    And during the course of that testimony, I take it,

16   it was your desire and your effort to answer questions

17   truthfully, correct?

18   A    Yes.

19             MR. HALEY:  Your Honor, if I may, I need to make

20   a copy of a document in order to move forward.

21             If we can take a brief break at this point.

22             THE COURT:  We'll take the afternoon break.  And

23   don't discuss the case.

24             MR. HALEY:  Thank you, sir.

25             (A recess was taken.)

2301

1          THE COURT:  Please be seated.

2          MR. HALEY:  Judge, if I may -- I'm copying a

3    document.  Your Honor, I would say several months ago, if not

4    six months ago or longer, I had raised by way of Rule 16

5    demands, identification of all the documents that the

6    government alleged to be forged by the witnesses by the time

7    of trial in the matter.

8          Indeed, my recollection is that after some period of

9    time, and I mean from the point of my demand which I believe

10   was June of 2014, such documents were not provided by the

11   government until October of 2014.  Those documents consisted

12   of four documents.  It consisted of a revolving of credit

13   document the government maintained was a document containing

14   the forged signature of Ken Jowdy.  It consisted of two

15   documents known as a Funding Consulting Agreement which the

16   government alleged that the signature of John Kaiser was

17   forged or fictitious.  There was some confusion whether the

18   document was forged, fictitious.  And the fourth document is a

19   document which was actually in Spanish, wherein Mr. Kaiser

20   alleged that his signature on the side of the document was

21   forged.

22          My memory, Your Honor, is that the government, in

23   its response said that something to the affect that these are

24   the documents we allege to be forged, and then there was a

25   paren, among others.  I raised that as an issue, I believe, in

1    October.  And my memory of the Court's instruction to the

2    government was as follows, in substance:  You should contact

3    your witnesses and identify those documents that the

4    government alleges to be forged upon the trial of this action.

5    That was my memory of the Court's instructions to the

6    government.

7              Your Honor, I surmise that the defendant's request

8    for documents that were alleged to be forged by the government

9    in its case in chief ought to be made known to the defense to

10   avoid unjust surprise and prejudice.  I was obviously

11   surprised by the testimony of this witness who, when on

12   redirect, went from that appears to be my signature to say

13   well, that's actually not my signature, rather than taking

14   that opportunity when asked on cross-examination well, it

15   doesn't appear to be my signature because I don't sign that

16   way.  At this point, clearly identified without equivocation

17   based upon a litany of rapid fire leading questions, that's

18   not my signature, that's not my signature, that's not my

19   signature.

20             I say this, Judge, because the remedy, from my

21   perspective, as I'm endeavoring right now to collate

22   information that I believe will be demonstrative of the

23   falsity of that testimony.  Had I known in advance I would

24   have been able to address that by way of pretrial preposition

25   sometime ago.  I say that, Judge, as I will endeavor, at this

SYDOR-RECROSS-HALEY                           2303

 1  point, to question this witness in that regard.  But I'm going
 2  to reserve the right, Judge, to recall this witness under
 3  these circumstances.  That's my application to the Court.
 4          THE COURT:  Well, obviously, let's see what you can
 5  do with what you have here.  If you believe there's a basis to
 6  recall him based upon his conditional information presented,
 7  I'll certainly hear you.
 8          MR. HALEY:  Thank you, sir.
 9          MR. MISKIEWICZ:  Before we move on, may I address
10  the issue?
11          THE COURT:  Are we going to get this witness out of
12  here?  I'm concerned we're not going to get him out of here at
13  this point.  So if you want to make it clear on the record
14  now, Mr. Sydor may have to come back tomorrow.
15          MR. MISKIEWICZ:  Just take a second, Judge.
16  3500 DS-1, it's covered in Mr. Sydor's grand jury minutes.
17  The same thing Mr. Haley tried to admit, he was indicating
18  that they don't look like my signature.  That's my only point.
19          THE COURT:  In the grand jury testimony?
20          MR. MISKIEWICZ:  In the grand jury testimony.  The
21  little loop doesn't look like mine, et cetera.
22          MR. HALEY:  We can debate this.  The exhibits I
23  showed him were not exhibits that were introduced in the grand
24  jury testimony.  The Northern Trust documents, voluminous that
25  he signed over a period of time.

1           Thank you, Judge.  I'd like to get the witness on

2  the stand.

3           THE COURT:  Let's bring in the jury and the witness.

4           (Witness resume the stand.)

5           THE CLERK:  All rise.

6           (Whereupon the jury enters the courtroom at

7  4:04 p.m.)

8           THE COURT:  You may be seated.

9           Go ahead, Mr. Haley.

10          MR. HALEY:  Thank you, Judge.

11          Your Honor, in view of the testimony that was -- let

12  me begin this way.

13  RECROSS EXAMINATION

14  BY MR. HALEY:

15  Q    Sir, will you kindly take a look at Kenner Exhibit 74.

16          (Handing.)

17          Is that your signature?  It's a photocopy, sir.  Is

18  that your signature?

19  A    I believe it is, yes.

20          MR. HALEY:  Your Honor, I'd offer this into evidence

21  as Kenner Exhibit 74.

22          MR. LaRUSSO:  No objection.

23          MR. MISKIEWICZ:  No objection.

24          THE COURT:  Kenner Exhibit 74 is admitted.

25          (So marked as Kenner Exhibit 74 in evidence.)

1  Q    Sir, as relates to what is marked now as Kenner

2  Exhibit 74, sir, we can agree that it's dated May 3rd, 2004,

3  is that correct?

4  A    It appears, yes.

5  Q    The Schwab Institutional, correct?

6  A    Yes, I believe this is all in trust to Schwab.

7  Q    Sir, as relates to this particular document that is

8  signed by you on April 20th, 2004, this is, by its terms, the

9  authorization by which you are moving your bonds to Northern

10 Trust, is that correct?

11 A    I believe so, yes.

12 Q    And to your knowledge, does this document, as relates to

13 the bonds that were being used by -- being moved from Schwab

14 International to Northern Trust have relevance to the line of

15 credit for which you later received a default letter?  Or you

16 later saw the default letter on May 17th to May 20th,

17 according to your testimony.

18         MS. KOMATIREDDY:  Objection to form.

19         THE COURT:  Sustained as to form.

20 Q    Well, with reference to this particular document, was

21 today the first time that you saw this particular --

22 withdrawn.

23         Did the government show you this particular document

24 when you met with them between May 17th and May 20th of this

25 year?

SYDOR-RECROSS-HALEY                                    2306

1   A    I believe so, yes.

2   Q    Would you describe the conversation that you had with the

3   government as relates to this particular document?  What did

4   you say to them and what did they say to you?

5   A    Again, I can't recall the full conversation that I had

6   about it.  It was a lot.

7   Q    Sir, would you kindly take a look at a document marked as

8   Kenner Exhibit 75.  Take your time.

9        (Handing.)

10  A    (Witness complies.)

11  Q    Is that your signature, sir?

12  A    I'm not sure.

13  Q    As you sit here under oath today, can you say for

14  certainty that you did not sign this document?

15  A    I can't say I signed it, I can't say I didn't sign it.

16  Q    But is it your testimony, sir, that during the redirect

17  examination by the government of all those documents that you

18  were shown in rapid succession, that it's your testimony under

19  oath that you did not sign any of those documents?  Is that

20  your testimony?

21  A    I'm pretty sure I didn't sign those, yes.

22  Q    You're pretty sure you didn't sign them.  That's your

23  best recollection, sir, correct?

24  A    Very positive.

25  Q    Did you take note of the contents of the document before

1   you told the government on redirect that it's not my

2   signature, and now you tell us that you're pretty sure it's

3   not your signature?  Did you take a look at the content of it?

4            MS. KOMATIREDDY:  Objection, Your Honor.  Please

5   specify the document.

6   Q    Any of the documents, sir, that I showed you, and they

7   were Exhibits 66, 67, 68, 69, and 72.  I'm happy to show you

8   the documents again.  They were shown to you on redirect by

9   the prosecutor.

10           As relates to these particular documents, did you

11  take note of the content of the document before you answered

12  either my question or the government's question as to whether

13  or not that was your signature?

14  A    The document, I looked directly at the signature.

15           MR. HALEY:  Judge, with the Court's permission, I'm

16  going to handwrite a exhibit designation on this and then at

17  some later time I'll put a sticker on the exhibit.

18  Q    I'm going to show you a document marked Kenner Exhibit --

19           (Showing to Counsel.)

20           Sir, I'm going to ask you to take a look at a

21  document marked Kenner Exhibit 76.  You are entitled to read

22  the whole document.  I ask you to pay particular attention to

23  the next page.

24  A    You want me to read through it?

25  Q    You are certainly entitled to look at the entire

2308

1    document, sir.  But I'm going to draw your attention to this

2    portion of the document (indicating).

3            Now, on page 2 of that document, is or is that not

4    your signature, Mr. Sydor?

5    A    I don't recall signing, but it looks like my signature.

6    I can't say yes or no.  I don't recall signing it.

7    Q    Well, as relates to the handwriting there, sir, as you

8    were asked on redirect those series of questions about whether

9    that was your signature and you said no, with respect to that

10   document, is that your signature, yes or no?

11           MS. KOMATIREDDY:  Objection.  Asked and answered.

12           MR. HALEY:  It's a different document.

13           THE COURT:  You can answer that.

14   A    I can't say yes or no.  I don't know.  I can't recall.

15   Q    May I take Exhibit 76.  Let me put an exhibit sticker on

16   it.

17           Kindly take a look again at Exhibit 76.  May I see

18   that, sir?

19   A    Here.

20           (Handing.)

21           MS. KOMATIREDDY:  May we have a side bar?

22           THE COURT:  Yes.

23           (Whereupon a side-bar conference was conducted.)

24           (Matter continued on the next page.)

25

2309

1              (Side-bar conference.)

2              MS. KOMATIREDDY:  The previous exhibit, the witness

3     said he could not say yes or no that he signed.  Mr. Haley is

4     now presenting him with the grand jury version marked with the

5     grand jury exhibit.  It's a different exhibit.  Over the break

6     Mr. Haley indicated he wanted to used the non-marked version

7     to impeach the witness.  We told him they only way to impeach

8     him is with the actual exhibit used in the grand jury.  We

9     provided that to him because he didn't have a copy.  So we

10    have a situation where this is misleading.  It was asked and

11    answered.  He already said --

12             THE COURT:  Are you going to impeach him, what he

13    said in the grand jury?

14             MR. HALEY:  No.

15             MS. KOMATIREDDY:  It's not inconsistent with what he

16    said.

17             THE COURT:  Just make clear that this is the same

18    document so the jury is not confused.

19             MR. HALEY:  I will ask him that.  I didn't want him

20    to see the grand jury exhibit before he sees this.  I will

21    tell him to do that.

22             (Whereupon the side-bar conference was concluded.)

23             (Matter continued on the next page.)

24

25

1              (Matter continued in Open Court.)

2    CONTINUED CROSS EXAMINATION

3    BY MR. HALEY:

4    Q    Take a look at was marked as Kenner Exhibit 76 and what

5    is the document bearing the notation Grand Jury Exhibit 115.

6    It's hard to read that.  Exhibit 115, sir.  Does Grand Jury

7    Exhibit 115 and what I showed you as Kenner Exhibit 76 appear

8    to be the same document as relates to the first page as well

9    as the signature page?  You can compare the two.

10   A    They appear to be the same, yes.

11   Q    Sir, when you were testifying in the grand jury, did you

12   or did you not tell the grand jury that at times you may sign

13   your name, in substance, sometimes the signature may look a

14   little different than other times, but it's still your

15   signature?  Do you recall saying something like that?

16             MS. KOMATIREDDY:  Objection.

17             THE COURT:  Overruled.

18             You may answer if you remember that.

19   A    I don't remember.  I remember seeing a lot of different

20   exhibits with signatures.  I don't remember exactly what I

21   said.

22   Q    Well, sir, do you recall being asked this question and

23   giving this answer in the grand jury on March 29, 2011

24   (reading):

25             "QUESTION:  Let me show you what's been marked Grand

SYDOR-RECROSS-HALEY                                    2311

1   Jury Exhibit 115.  It's titled Pledge Agreement dated November
2   3rd, 2006.  Let me show you, start with the signature page,
3   does that look like your signature to you?
4           ANSWER:  It's a little sloppy, not as sharp."
5           Do you recall?
6           MS. KOMATIREDDY:  Objection.  It's a little loopy.
7           MR. HALEY:  I apologize.
8   Q   It's a little loopy, not as sharp.  Do you recall that
9   testimony?
10  A   I don't recall what I exactly said.
11          THE COURT:  The government will stipulate that is
12  what the transcript says?
13          MS. KOMATIREDDY:  Yes, sir.
14  Q   And sir, do you recall the grand jury question (reading):
15          "QUESTION:  So?
16          ANSWER:  I don't think so.  I mean, I signed it
17  differently.  Not different, but sometimes it looks
18  different."
19          Do you recall that?
20          MS. KOMATIREDDY:  Sometimes it could look different.
21          Your Honor, we'll just stipulate to this portion,
22  from page 23, line 5 to page 24, line 6.  This portion
23  referencing the grand jury testimony.
24          MR. HALEY:  Very well, Your Honor.  I will read it
25  into the record.  Thank you.

SYDOR-RECROSS-HALEY                                    2312

1   Q     (Reading):
2               "ANSWER:  I don't think so.  I mean" --
3               MR. HALEY:  Let me back up.  I apologize.
4   Q     (Reading):
5               "QUESTION:  So?
6               ANSWER:  I don't think so.  I mean, I signed it
7   different -- not different.  Sometimes it looks different.
8               QUESTION:  But it doesn't look familiar to you.  Is
9   that what you're saying?
10              ANSWER:  It looks familiar; but...
11              QUESTION:  No one here can second guess you on this
12  one.  In your judgment, is this your signature, most likely or
13  most likely not?
14              ANSWER:  I say most likely it is mine.
15              QUESTION:  Why do you say it's most likely yours?
16              ANSWER:  Sometimes it looks different.  It's not the
17  exact same every time.
18              QUESTION:  Without -- you're welcome to go through
19  the document as much as you want.  But I'll represent to you
20  that this document is an agreement to pledge collateral for a
21  loan in the amount of the loan, which was $850,000, putting up
22  stocks and bond.  You don't remember signing anything like
23  that or agreeing to anything like that?
24              ANSWER:  No.
25              QUESTION:  Do you have" --

SYDOR-RECROSS-HALEY                                        2313

1          MS. KOMATIREDDY:  That's fine.

2          MR. HALEY:  I will stop there.

3   Q    Mr. Sydor, can we agree that there may be times and

4   circumstances where you sign your name to a document, and

5   because of the time and the circumstance -- and by that I mean

6   the time of day, where you are and what you're doing, that

7   signature may appear different than when you signed your name

8   in other times?  Is that a fair statement?

9   A    Yes, I guess you can say that.  But I know that the

10  signature on one exhibit --

11  Q    Sir, just answer my question.  You're going to have a

12  chance again.  But my question is really quite simple -- and I

13  think the record speaks for itself.

14          Do you have a driver's license.

15  A    Yes.

16  Q    Is there a signature on the driver's license?  You don't

17  have to take it out.  Is there a signature on the driver's

18  license?

19  A    I'm pretty sure.

20  Q    You don't have to look at it, sir.  You should look at

21  it, I shouldn't say that.

22  A    Yes.

23  Q    Is that a copy of your signature?

24  A    When you sign for your license?

25  Q    Yes.

SYDOR-RECROSS-HALEY                                    2314

1    A    Yes, when you sign for it.

2    Q    Now on the cross examination by Mr. LaRusso, we can

3    agree, can we not, that at one point you testified rather

4    directly, if I recall, that you never used this airplane?

5    Meaning the Falcon 10.  Do you remember that testimony?

6    A    I remember -- remember saying that.  And then after

7    further documents put in front of me, I recalled -- I remember

8    saying that I can't recall the Falcon 10.  I don't know the

9    make and model of the airplanes.

10   Q    Yeah, but you know the difference, sir, between a turbo

11   plane aircraft, a jet aircraft and a prop plane, is that true?

12   A    Yes.  I know the difference between a prop and a jet.

13   Q    You were pretty assertive, were you not, sir on cross

14   examination by Mr. LaRusso that the only plane that you ever

15   flew as relates to the interaction with Phil and Tommy

16   Constantine was a prop plane.  Do you recall that testimony?

17   A    Until I had stuff in front of me to jog my memory.

18   Q    As a matter of fact, you flew twice on -- if not a Falcon

19   10, a turbo jet aircraft, isn't that true?

20   A    I flew on a lot of planes, yes.

21   Q    I'll rephrase the question.  There was a time where you

22   flew from Columbus, Ohio, to Kamloops, British Columbia,

23   Canada, with you and your wife and Phil Kenner, is that

24   correct?

25            MS. KOMATIREDDY:  Objection.  Asked and answered.

1          THE COURT:  Overruled.

2          You can answer.

3   A    No.  It was -- I believe it was a flight from Kamloops.

4   My wife was not on that.  It was me and Phil Kenner.  I

5   remember a couple of houses that we looked at.

6   Q    But that was a jet aircraft you flew on, correct?

7   A    Yes.

8   Q    I take it, sir, before you flew that -- well, before you

9   flew on that jet aircraft, did you conduct an inspection of

10  the exterior of the aircraft, sir?

11  A    No.

12  Q    Did you take photographs of that particular aircraft

13  before you flew on it?

14  A    Did I take a photograph?

15  Q    Yes, sir.

16  A    I might have taken a cell phone picture.  But I'm not

17  sure that I did.

18  Q    With reference to the photograph of the aircraft shown to

19  you in the e-mail by Mr. LaRusso, it's clear that that depicts

20  a jet air craft, does it not?

21  A    The document that he showed me, yes, it is a jet plane.

22  Q    Can you state here, under oath today, that that

23  photograph that you saw is not a photograph of the jet plane

24  you flew on with Phil Kenner?

25  A    I can't sit here and say if that was one or not.  I can't

1   remember what the inside of that airplane looked like that I

2   flew on.

3   Q    As a matter of fact, you went on it twice.  Do you have a

4   memory of -- or do you have a memory -- withdrawn.

5            Do you have a memory, sir, of flying on a jet

6   aircraft, as opposed to a prop aircraft, more than once

7   through the efforts of Phil Kenner and/or Tommy Constantine.

8   A    Yes.  If I needed an air -- like if I wanted to fly with

9   my family or a get a private, I would contact Phil Kenner.

10  And I'm not sure if he would contact Net Jets or another

11  company or the Falcon.

12  Q    Well, do you have a specific memory today, sir, that --

13  withdrawn.

14           With reference to the Falcon 10 aircraft that you

15  saw depicted in the photograph given to you by Mr. LaRusso, do

16  you know one way or another, as you sit here today, how many

17  times you knew on that particular aircraft?

18           MS. KOMATIREDDY:  Objection.  Asked and answered.

19           THE COURT:  Overruled.  He can answer.

20  A    On that particular plane, I'm not sure how many times.

21  Q    Okay.  Now, you were asked questions on cross examination

22  by Mr. LaRusso as to the conversations you had with Attorney

23  Stolper.  Do you recall the questions about your communication

24  with Attorney Stolper?

25  A    Yes.

1  Q    I believe that you testified on redirect that Bryan

2  Berard was one of those persons who was part and parcel of the

3  efforts to figure out where all the money went.

4  A    Yes.

5  Q    By contacting Attorney Stolper, is that correct?

6  A    I believe so, yes.

7  Q    Sir, isn't it true that in addition to Bryan Berard, Phil

8  Kenner was also part of that effort to engage Attorney Stolper

9  for the purpose of figuring out where all the money went?

10  Isn't that true?

11  A    I believe so.

12          THE COURT:  Mr. Haley, it's 4:30.  I'm not making

13  him come back tomorrow.

14          MR. HALEY:  Yes, sir.  I recognize that, Your Honor.

15  Q    You were asked on redirect a very specific question

16  about, once again, the contents of the binder that you

17  received from Phil Kenner.  As I recall, you testified you do

18  have a recollection that nowhere contained in that binder was

19  the loan transaction history that the government showed you,

20  is that correct?

21  A    I don't believe that I was firm in that statement.  I

22  believe I said I don't believe it's in there.

23  Q    So by that answer, this loan transaction history, as best

24  you know, may or may not have been in that binder?

25          MS. KOMATIREDDY:  Objection.  Asked and answered.

1          THE COURT:  Overruled.  He can answer.

2   A    Yes.

3          MR. HALEY:  May I have one extra minute?

4          I have no further questions.

5          MR. LaRUSSO:  Two questions.

6   RECROSS EXAMINATION

7   BY MR. LaRUSSO:

8   Q    The government came after I finished, asked you a

9   question.  Did Mr. Constantine offer money back to you with

10  regards to Eufora, do you recall that, and you said no?

11  A    I believe so.

12  Q    Well, you never asked Mr. Constantine for money back,

13  isn't that correct?

14  A    I don't think I personally asked him, no.

15  Q    Since the shareholders meeting that we discussed where

16  you were participating by telephone, you never spoke to

17  Mr. Constantine again about your investment, is that correct?

18  A    I don't believe so.

19          MR. LaRUSSO:  No further questions.

20          THE COURT:  You may step down, Mr. Sydor.  Thank

21  you.

22          (Witness excused at 4:45 p.m.)

23          THE COURT:  Okay.  We'll reconvene tomorrow morning

24  at 9:30.  Don't listen or read anything about the case.  Have

25  a safe trip home.  Have a good night.

1              (Whereupon the jury leaves the courtroom.)

2              THE COURT:  I want to make an observation.  There's

3    no way that should have taken the whole day.  It just

4    shouldn't have happened.  I've been a judge for nine and a

5    half years.  I was a litigant for many years before that.

6    These witnesses are just taking too long.  It's compounded by

7    the fact that when we had jury selection and I asked the

8    attorneys how long the case is going to take, I asked my law

9    clerk to confirm my recollection, and she confirmed it, that I

10   told the jury five to six weeks.  I believe the lawyers are

11   trying to tell me it could be as little as four weeks.  To err

12   on the side of caution, I decided to tell the jury five weeks.

13             And regardless of whether or not these witnesses are

14   taking too long, you're certainly taking too long.  If you

15   believe that your questioning of these witnesses are going to

16   be as long as it has been, there's no way that experienced

17   attorneys should step in my courtroom and tell me that a case

18   is going to be five weeks long.  I rely on that

19   representation.  I have no way of knowing.  I don't know how

20   long the case is going to take.  I rely on the lawyers to tell

21   me that.  We're in a situation here where this is so far off

22   your estimate, it's mystifying to me.  I have no explanation

23   for why you thought this would be a five-week trial.

24             I will say a couple of things.  And I'm only picking

25   these out.  Everybody's at fault for this delay.  I'm not

1    suggesting -- obviously, the questioning has to be thorough.

2    Mr. Kenner's and Mr. Constantine's liberty is at stake.  So

3    I'm not suggesting -- to me, speed is not the most important

4    thing.  It's most important to me that everybody gets a fair

5    trial.  That's why I don't put time constraints on attorneys.

6    I want Mr. Kenner and Mr. Constantine and the government to

7    feel they got to present whatever evidence they want presented

8    before the jury.  That's why I preside as a judge.

9            But people's time are just being abused in this

10   case.  The questioning is taking way too long.  There are two

11   examples.  Again, just by singling these out, I don't want to

12   suggest them for their own reasons but these two stick out in

13   my mind.  One of them is the way documents are being used to

14   try to refresh witnesses' recollection.  We spent hours,

15   hours, not minutes, hours of this trial showing witnesses

16   documents that everyone in the courtroom sitting here knows

17   there is zero chance that the witness is going to be refreshed

18   by the document.

19           And it's not in evidence.  The government sometimes

20   suggests to make reference to a document to get it into

21   evidence.  Because in many instances, the document that is in

22   evidence already, has been shown to the jury at least three,

23   four, sometimes five times, and yet it's put up again.  The

24   witness says I have no recollection of that.  The witness is

25   shown a document, says I have no recollection of that.  And

1   then the witness read one paragraph of the document and says

2   it doesn't refresh my recollection.  And then it's read more

3   of the document.  We waste hours on documents that the jury

4   has seen.  There's no strategic reason to put it before the

5   jury multiple times.  And in fact, there's no dispute that

6   that e-mail is authentic, that, in fact, it happened.

7          So even if by some crazy -- that the witness

8   authenticated ten times, there's no recollection of it, even

9   if you were to say oh, yeah, there's no recollection of that

10  e-mail, all you want to establish is the fact that the e-mail

11  is sent, which is what we knew weeks ago.  And that takes

12  hours to do.

13         So you know, riot control.  Can I control how much

14  refreshing of recollection a lawyer tries of a witness?  Yes.

15  Again, I like to give lawyers leeway.  But I can't let this go

16  on endlessly.  We're never going to finish the trial at this

17  pace.  We're going to go into July.  This trial's going to end

18  in end in mid-July the way we're going.  We got one witness

19  done today.

20         How many more witnesses does the government have?

21  How many witnesses do you have.

22         MR. MISKIEWICZ:  Off the top of my head, I can't

23  pinpoint.  We probably have at least a dozen witnesses.

24         THE COURT:  Okay.  So at this pace, that means

25  12 days.  Who knows?  Mr. Gaarn, who knows how many days he'll

U.S.A. v. KENNER and CONSTANTINE                    2322

1    be on the stand for.  I've never experienced anything like

2    this as a judge.  I'm going to think about it tonight, what I

3    need to do to try to persuade both sides that this is taking

4    too long.  The government is over objecting.  The government

5    is over objection.  And every time the government objects, the

6    witness say every single time, virtually, can I have the

7    question read back, or repeated to them.  And again, each time

8    that happens, over the course of a five-week trial, we're

9    talking about hours.

10            Just a few examples.  The government objected to

11   when he was asked what he understood the nature of the lawsuit

12   to be between Mr. Kenner and the secretary.  There was an

13   objection on relevance grounds.  Relevance grounds.  The

14   government is arguing that that lawsuit had nothing to do with

15   the purpose of Global Settlement Fund.  So how can it be

16   irrelevant what he was told or what he understood or may or

17   may not have consented to with respect to that lawsuit.

18            I was mystified by the objection on relevance as to

19   what he was told or what he understood his money was going to

20   and what that lawsuit related to.  I overruled that objection.

21   And then when he was asked what statements were made, what

22   conversations that he had with her regarding his investment,

23   the objection was on hearsay grounds.

24            Obviously whether or not the statements she was

25   making were true or not is not the purpose of that

1   questioning.  The purpose of the questioning was to try to

2   establish that she had some involvement, potentially, in

3   connection with Mexico or Hawaii and the communications

4   between them regarding that.

5            Then when he was asked about the e-mail that related

6   to that, the government objected the record speaks for itself,

7   which, in certain circumstances, is true.  But when someone

8   writes an e-mail and the lawyer asked him, when you said this

9   did you mean that?  Sometimes the witness needs to explain

10  what the e-mail, what they meant by the e-mail.  And that's a

11  perfectly proper question.

12           So we had a succession of government objections, and

13  this is an example that I wrote down, where another one was

14  what were you told, what were the discussions about taking

15  control over Eufora.  The government objected on hearsay

16  grounds.  I've allowed that testimony in for days.  For days

17  we've had questioning about whether or not there was an effort

18  to take over Eufora.  For whatever reason, the government

19  decided to insert the hearsay objection.  The purpose of that

20  had nothing to do with the truth of the matter.  It's whether

21  or not the bias of the witnesses shows that they were making

22  an effort to commit some fraud that related with respect to

23  Eufora, but they wanted to get the company for themselves.

24  That's what was motivating their efforts, not any type of

25  fraud.

1           So that's the exception to the hearsay.  It should

2   be apparent.  It wasn't apparent.  It should be apparent

3   because I've allowed that testimony in for three weeks now

4   when all the other witnesses were asked about it.  So every

5   time the government objects, I don't mind overruling the

6   objection, but I will say overruled, overruled, overruled.

7   But it adds a lot of time, and the witnesses then need to have

8   the questions read back.

9           So those are just two examples.  There are many,

10  many things contributing to the delay.  I think it is

11  completely unnecessary.  Again, I'm requesting, as I have

12  before, I don't like to put time constraints, I don't like to

13  shut people down, but I'm encouraging you to go back and look

14  at how you're conducting the questioning to see whether or not

15  you are wasting the juror's time.  I don't know if you looked

16  at the jurors today, but they didn't look like they were

17  mesmerized by the questioning for seven hours, for seven hours

18  with the morning and afternoon break of this witness.  I don't

19  think that's seven hours worth of information was given to

20  them, input into this case.  That's all I have to say.

21          Okay.  With respect to Mr. LaRusso's documents.

22          MR. LaRUSSO:  Judge, can I just be heard briefly on

23  that.  It might not have been clear.  First of all, these

24  e-mails, I was objecting at the side-bar to basically -- the

25  objection to these documents possibly being forged or

U.S.A. v. KENNER and CONSTANTINE                    2325

1   doctored.  These e-mails come right off of the server.  They

2   are not coming off of Mr. Constantine's computer.

3            THE COURT:  We know they come off a Google server.

4   I don't understand that the government or anyone can just go

5   onto Google server and access e-mails.

6            MR. LaRUSSO:  They can go on Google with his

7   account.  Those e-mails are from the Google server, that

8   account.  There's no way you can doctor it.  It's impossible

9   to doctor these e-mails.  In addition --

10           THE COURT:  Your client has lots going.  The

11  government hasn't suggested -- are you suggesting that the

12  government can go on Google and see his account.  They don't

13  have the ability to do that.

14           MR. LaRUSSO:  We can do it right now.  I can go on

15  the Internet and show this exact same e-mail that we're trying

16  to introduce.  And the other point, Judge, this was a very

17  important witness from our point because he couldn't remember

18  many of the purposes for the Global Settlement Fund.  We took

19  the Court's admonitions to try to cut back.  One of our

20  exhibits is C-127.  It's already in evidence through Michael

21  Peca, Your Honor.  Exhibit C-127.  This is a similar e-mail

22  that was sent to Mr. Sydor.  I didn't know if I can use it

23  because it was irrelevant at that point.  He was able to

24  testify to it.

25           So I curtailed the use of exhibits, Judge, to try

U.S.A. v. KENNER and CONSTANTINE                    2326

1   and move forward as quickly I can.  But with this witness it

2   became necessary to try to refresh his recollection.  And it

3   was very helpful because he finally remembered the airplane.

4   It took a little while to get there.

5            So my point is, Judge, we're trying to following the

6   Court's direction.  And I apologize, and maybe we can do more.

7   And I'll try and do more.  But with this witness, I felt it

8   necessary to try to get the document in, which is same thing.

9   If we look at C-127, it's the same information on the same

10  day, around the same time with Michael Peca.

11           THE COURT:  Is that Peca's?

12           MR. LaRUSSO:  Yeah.  This one is C-127, Your Honor.

13  I don't know if you have C-127.

14           THE COURT:  My question to the government on this is

15  I don't understand -- this is going back to Mr. LaRusso's

16  point.  We've had dozens and dozens of Gmail e-mails come into

17  evidence without objection from the government.  And then we

18  get to one or two or three, the government is objecting on

19  authentication grounds.  Why does the government have any

20  objection to the others ones that these e-mails have somehow

21  been doctored?  I don't understand the difference between

22  these e-mails.  Mr. LaRusso just said he got it all from the

23  same e-mail account.

24           MR. LaRUSSO:  That's correct.

25           THE COURT:  So why does the government believe some

1  of them are not doctored and have no concern and some are

2  doctored?

3          MR. MISKIEWICZ:  There has been a learning curve

4  with respect to Your Honor's ruling on a number of these

5  statements from -- out of court statements from one or the

6  other defendant.  And I don't recall how or whether we

7  objected.  And perhaps we objected on hearsay grounds and then

8  we learned that your ruling.  I don't believe that we've -- I

9  apologize if we objected on hearsay grounds when we shouldn't

10  have.

11          Perhaps our more fundamental objection should have

12  been with Mr. Peca.  And certainly we learned, throughout the

13  course of the last several weeks, that we see things that we

14  show our witnesses, they tell us -- these are not stupid men.

15  You would expect that if they were told this amount of detail

16  about these important transactions in their lives, which have

17  cost them hundreds of thousand, if not millions of dollars,

18  that they would have a sort of independent recollection.

19          The more we go through the trial and show them to

20  people, they are saying, as Mr. Sydor said, they have no

21  recollection of seeing them.  Our position, therefore, and I

22  would suggest maybe this is a way of dealing with it, counsel

23  has some exhibits that have never shown up, did not come from

24  Rule 16 discovery.  We have no way of really establishing its

25  authenticity.  We're not here to belabor the point and drag

U.S.A. v. KENNER and CONSTANTINE                    2328

1   this thing out for no reason.  But an e-mail or an invoice

2   printed on a piece of paper, he bears the burden of

3   establishing the authenticity of that document.

4           Time and time again when we show people things

5   afterwards, they have no memory of these things.  And so yes,

6   our position is, in good faith, we think that a lot of stuff

7   was simply made up.  Whether it was made up last night or made

8   up in 2011 or 2012 when the investigation heated up, I can't

9   say.  But yes, we have a very good faith belief that there are

10  things entirely made up.  Because these main witnesses who say

11  they've never seen things, they can't all be wrong.

12          THE COURT:  We've seen ones where they absolutely

13  don't remember.  And then we know from the government's own

14  documentation that they didn't respond to them.  For example,

15  Mr. -- I can't remember which witness it was, on that e-mail

16  it says approved and executed, they don't recall doing that,

17  but it's clear that they did.  The government's not contending

18  that's made up.

19          MR. MISKIEWICZ:  I don't believe that -- there are a

20  good number of those.  The post-GSF e-mails that people get

21  after they spent their money, yes, they sent it back

22  acknowledging it.  With all due respect, Your Honor, I don't

23  think we fought over those e-mails.

24          THE COURT:  I know.  But my point is, you're

25  suggesting that when it's involving people's money and

U.S.A. v. KENNER and CONSTANTINE                    2329

1   millions of dollars, it must be fraud or it must not ever have

2   been sent to them because they'd certainly remember it, we

3   know in that particular e-mail that a lot of them don't

4   remember even though it's clear from the government's evidence

5   that they did respond to it.

6           MR. MISKIEWICZ:  All I can ask, first of all, is the

7   indulgence to make the authenticity objection.  I think they

8   bear the burden.  And it's not unfair to say to them, if they

9   can't get from the witness, oh, yes, I recall seeing that,

10  then that should be the end of it instead of droning on and

11  trying to get them to submit to getting a document in that

12  they don't really have an independent recollection about.

13          Alternatively, and we could save a lot of time.

14  We've produced exhibits, we've produced prior to trial, we've

15  reproduced the same exhibits time and time again for the

16  defendants throughout the trial.  If they have exhibits like

17  this, it's pretty -- we can probably eliminate a lot of wasted

18  time if they would show us what they're going to show the

19  witnesses.  They know who we're calling.

20          THE COURT:  It should have be done a long time ago.

21          MR. MISKIEWICZ:  We got nothing.  We did not get

22  anything we got nothing.

23          THE COURT:  Look, the reason I wanted to table this,

24  if a witness says I don't remember seeing any of this, I

25  didn't use this e-mail account, that's not a foundation to get

U.S.A. v. KENNER and CONSTANTINE                    2330

1   the document in.  There's really no foundation for getting it

2   in.  If you want to show the government the Gmail account so

3   they can see what's on it, they will stipulate to its

4   authenticity.  That seems, to me, the most reasonable, easiest

5   way of doing it.  If not, you have to authenticate it.  You

6   have to call someone from Gmail to establish it's on their

7   server.

8           MR LaRUSSO:  We talked about that, Your Honor.

9           THE COURT:  You already heard what I said about the

10  trial.  So I'm hoping that you don't have to do that.

11  Obviously I understand the importance of this document.  And

12  the fact Mr. Peca had the exact document should lead the

13  government in what they believe.  One, that they already

14  allowed in through Mr. Peca.  That it's a fake document, I'm

15  not sure why they'd be concerned about C-127, which is the

16  same e-mail word for word.  That's up to them.

17          MR. LaRUSSO:  For the record, Mr. Norstrom also got

18  it.  This is not a document --

19          THE COURT:  Look, I can only rule on the

20  authentication issues.  That is not a way to authenticate it.

21  I tabled it for discussion because I don't want the government

22  to unnecessarily object to the authenticity of documents that

23  they don't need to.  But I'm hoping that you can find a way to

24  satisfy them without have to call someone from Gmail.

25          MR. LaRUSSO:  I don't know I can.  I will take the

1  Court's suggestion.  I usually work the night before on
2  witnesses that are going to be called.  I will narrow the
3  information that I'm going to try and elicit from them.  At
4  that point, usually in the evening hours, I know what
5  documents I'm going to use to cross examine them.  I'll try
6  and make them available to the government as soon as I can.  I
7  know today I made them available right before I began cross.
8  Not even all of them.  I kept one or two of them
9  inadvertently.  But I will try -- it will be at night, Judge.
10  I don't know how I can get it to them sooner that that.
11           THE COURT:  Look, I understand you're prepping as
12  you go along.  You know I think you're all excellent lawyers
13  and I like all of you personally.  So I don't want you to
14  think --
15           MR. LaRUSSO:  I appreciate that, Judge.
16           THE COURT:  I'm just observing this.  And I'm
17  observing the jury and I'm observing how long it's taking.
18  And I just know it's taking too long.  From my own experience,
19  I can't pinpoint it.  It's not one person.  Everyone is
20  contributing to it.  Knowing that, you can find ways of doing
21  it without the e-mail.  I want you to be as thorough as you're
22  bing, but find ways to save time.  It's really just an
23  argument that you're making.  You will have as much time as
24  you need for summations.  If you want to read the e-mail and
25  read it word for word in summations, I certainly will allow

U.S.A. v. KENNER and CONSTANTINE                    2332

1   you to do that.  Keep all of that in mind.  I trust that you

2   will do your best, okay.

3          MR. MISKIEWICZ:  Your Honor, in that vein, in that

4   spirit, there is a document that we intend to use for

5   Mr. Gaard coming up tomorrow.  It's the Eufora agreement that

6   Mr. Constantine and others signed.  We have been advised by

7   counsel, although I didn't personally have the conversation,

8   that they have the signed agreement, the pledging of the

9   patents to a third party.  We have unsigned copies that

10  document.

11         Just to move things along, rather than issue a

12  subpoena, we asked for a copy.  We were told no, you can't

13  have it.  Well, I'm asking Mr. LaRusso and Mr. Haley to turn

14  it over, give us a copy of the signed pledge agreement.

15  Meaning, the agreement by which Mr. Constantine and Eufora

16  were going to pledge the patents to a third party.

17         We've heard commentary by some of the witnesses that

18  they were never allowed to see the agreement.  This is the

19  agreement they were not allowed to see.  Mr. Gaarn, I believe,

20  will be able to testify about it.

21         THE COURT:  Do you believe the defense is going to

22  introduce it?

23         MR. MISKIEWICZ:  I don't know if they're going to

24  introduce it.  It would just speed things up if we could get a

25  copy, show it to Mr. Gaard and move it into evidence.

U.S.A. v. KENNER and CONSTANTINE                    2333

1        MR. LaRUSSO:  Judge, just for the record, I have no

2   problem with a document that both sides agree is authentic.  I

3   don't care if I have it if they have it.  If it's true and

4   accurate, I'll put it in evidence with no objection

5   whatsoever.  But unfortunately, I was asked about this and I'm

6   not even sure we're talking about the same document.  But I

7   will talk to Mr. Miskiewicz, clarify it so I know what we're

8   looking for.  I will personally take responsibility and look

9   for that document.  If we have it, we'll turn it over so that

10  they can use it to expedite the trial.

11       MR. MISKIEWICZ:  Thank you.

12       THE COURT:  Mr. Haley, I don't want -- my comments

13  in terms of the pace today, I understand, based on what you

14  said with regard to the signatures that you were somewhat

15  surprised by what he said.  I understand why you wanted to

16  have the witness go back through the exhibits.  And the

17  government objected, I overruled the objection.  So I

18  understand when you're hit with something you may not expect,

19  or when the government obviously pointed out you read part of

20  the grand jury testimony, but I understand why that was

21  necessary.

22       MR. HALEY:  Thanks, Your Honor.

23       If I may, in the same vein, I would state for the

24  record that when the government says they, every document that

25  I've identified for the purpose of any of my questioning of

U.S.A. v. KENNER and CONSTANTINE                    2334

1   any witness to date has been provide with Rule 16 discovery.

2   So I don't think the government's missing anything.

3              Judge, what I am concerned about is, you're correct,

4   Judge, I likely would have had probably three questions of

5   this witness had I not heard that litany of redirect that I

6   was totally, utterly surprised with.  I was aware and prepared

7   for this trial for some period of time, anticipating what

8   witnesses would be testifying as government witnesses in a

9   fashion that suggested forgery, implication being, of course,

10  Phil Kenner named.

11             Here is my concern, Judge.  We now have three or

12  four other government witnesses, Ranford, Rucchin, and one or

13  two others that have Northern Trust lines of credit.

14             THE COURT:  Let me ask the Government about that.

15  I'm not even sure why it came out on redirect as opposed to it

16  didn't come out on direct.  Why take them out on redirect and

17  not direct?  It's not the only document.

18             We do have to try to have some effort -- I

19  understand sometimes a witness may say something you don't

20  expect them to say about their signature.  And I don't expect

21  the government will necessarily show every single document in

22  the world to each witness.

23             But why did that come out on redirect?  And your

24  other witnesses, you're going to suggest their Northern Trust

25  signatures are not their's, based on what you know now.

U.S.A. v. KENNER and CONSTANTINE                    2335

1        MS. KOMATIREDDY:  Your Honor, with Mr. Sydor it was

2   part of our affirmative case to prove up the forgery.  His

3   testimony, when he looked at those signatures, he -- there was

4   some that he couldn't remember.  He couldn't say one way or

5   the other for sure whether he had signed it.  We had no desire

6   to make that part of our affirmative case.  The only reason we

7   did it on redirect was because it was raised on cross.  If it

8   wasn't raised on cross we wouldn't have raised it at all.

9        THE COURT:  There were a couple of them where he

10  said I'm not sure whether it is or not.  Then what he said on

11  cross, there was some he started saying they're definitely

12  not.  I'm confident of the term he used, but it was stronger

13  than saying I'm not sure one way or another.

14       MS. KOMATIREDDY:  Mr. Haley, the way he asked was,

15  Does that appear to be your signature?  And Mr. Sydor

16  answered, said, It appears to be my signature.  And stopped.

17  He stop he wouldn't allow him to elaborate on the cross

18  question.  So I followed up.  I expected the answer to either

19  I can't say for sure or no.  It wasn't part of our

20  presentation.

21       THE COURT:  I'm asking about these other witnesses.

22  Do you believe they're going to say that's not their signature

23  on the documents or they're not sure?

24       MR. MISKIEWICZ:  What we will endeavor to do for the

25  rest is identify for the defense, after we do final prep

1    before these folks get on the witness stand, say what their

2    position is.

3            THE COURT:  Are these documents that were on the

4    Kenner computer?

5            MR. MISKIEWICZ:  Well, some of them are.  Some of

6    them are many generations old, copies that appeared in the

7    arbitration.  Or one or the other pieces of the civil

8    litigation.  And when we have shown them to people, they've

9    said it looks like it.  I might be.  I don't remember.

10           We have told them we have a witness who witnessed

11   Mr. Kenner forging signatures.  And as they also know from our

12   Rule 16 discovery, we have an expert ready to testify,

13   probably the week after -- next week, John Osborn, who will

14   say the funding agreement by which $12 million was diverted to

15   Mr. Constantine has a phony signature.  A phone signature of

16   John Kaiser.  So where we've specifically been able to

17   identify forgeries, we did tell them.

18           THE COURT:  In the preparation of witnesses, if they

19   affirmatively say this is not my signature as opposed to

20   saying it may be, if he affirmatively says this is definitely

21   not my signature, let Mr. Haley know if he doesn't know

22   already so he can prepare that.

23           MR. MISKIEWICZ:  We will.  The intent here is not to

24   sandbag and open the door -- what has -- I understand what

25   happened was damaging to their defense.  But we have prepared

U.S.A. v. KENNER and CONSTANTINE                    2337

1   witnesses, asked them repeatedly.  They're talking about

2   things that happened years ago.  They do say -- they

3   equivocate.  Now, Mr. Sydor equivocated, but it's not because

4   we were intending to sandbag Mr. Haley.

5            THE COURT:  I didn't say -- if you were trying to

6   sandbag him, you would have done it on direct.  So I'm not

7   suggesting that it was an effort to sandbag him.  I want him

8   to have time to prepare.

9            MR. MISKIEWICZ:  Yes, Your Honor.

10           MR. HALEY:  Your Honor, I did not accuse the

11  government, nor do I accuse the government of sandbagging.

12  But I do stand by my earlier statement to this Court that from

13  the defense perspective, we covered this months ago.  My

14  memory was --

15           THE COURT:  The difference is, though, when a

16  witness says I'm not sure if that's my signature or not, our

17  discussion is what he said on direct.  When the witness said

18  that's a forgery, that's definitely not my signature.  The

19  government knew that.  We discussed it, we will turn it over.

20  What we've seen is a lot of witnesses that do say I'm not

21  sure.  I can't tell from the copy.  It looks like, it appears

22  to be.  Obviously the government is not going to disclose that

23  to you as a fraudulent document because it was not indicated

24  it's a fraudulent.  I think what happened here is, on redirect

25  he became a little stronger about some of the signatures.  I'm

1  not sure why that was.

2          MR. HALEY:  Well, the question I guess for the jury

3  to decide, given the way he presented it, is whether he had a

4  choice.  That's an argument that I will save for my summation.

5  I would wholeheartedly agree, Your Honor, that if a witness --

6  I'd walk away when a witness says I can't tell whether that's

7  my signature or not.  I would walk away.  And I wouldn't

8  expect the government in Rule 16 disclosure to say this

9  witness is going to testify I can't tell one way or another.

10         I do expect and that's why I demanded early on, that

11 type of disclosure.  And again, Judge, my only concern,

12 Judge -- I know it's getting late -- to the extent before

13 Mr. Ranford takes the stand, the government walks in and says,

14 oh, we just spoke to Mr. Ranford this morning.  He's going to

15 this is a forgery, this is forgery, this is a forgery.

16         By the way, these are Northern Trust documents.

17 These are documents that were not, if you will, provided by

18 the defendants or manufactured by the defense.  And that type

19 of document, given the government's theory in this case, that

20 he is accessing lines of credit without authorization, doing

21 so in a fraudulent manner, to the extent that they're going to

22 then proffer evidence like they did, forgery, forgery,

23 forgery, it's not sandbagging, Judge, but it's a matter of

24 fundamental fairness and the defense to prepare for that type

25 of testimony.

1        Judge, thank you for listening.

2        MR. LaRUSSO:  If I can, I'm sorry to bother.  I

3   don't want to have the issue arise tomorrow.  Those e-mails

4   that are still open, the Court hasn't decided on.  Obviously

5   we feel many of them are significant to our case, particularly

6   129-A which talks about the invoice that Mr. Sydor was

7   responsible for paying.  I'll tell the Court there was no

8   charge for the plane.  That's quite a substantial charge

9   because he was an owner.  That's our argument.

10        What I am going to do, if the government accepts my

11   offer, if we can access Google mail now on these five

12   exhibits.  Let them view us opening them up and then print out

13   the copies that we tried to introduce, and then they can make

14   a decision.  I'll ask them to make a decision now so that they

15   know there's no intent in any way to doctor those exhibits.

16   That's an offer I was just thinking of making.  I hope they

17   accept it.  Otherwise I may have to go through Google.

18        THE COURT:  I want the government to know, I think

19   the government was suggesting at side-bar that someone can go

20   in Gmail and doctor an e-mail.  I don't know whether that's

21   the case or not.  But to backdate an e-mail and make it appear

22   that it sent an e-mail on a certain date or not, I have no

23   idea if that's possible.

24        If, in fact, it is a Gmail account, and the

25   government is willing to stimulate, if they call someone from

U.S.A. v. KENNER and CONSTANTINE                    2340

1    Gmail saying we found this document on our server, it's coming

2    in, is there a way the government can cross examine the Gmail

3    witness and have them explain how someone can alter an e-mail.

4    I want the government know, to the extent they're not willing

5    to consent to the authenticity, that that's the level of

6    authenticity I will require on the Gmail.  If Gmail say we

7    searched our records and these are on our server, we will

8    allow it in.

9              MR. LaRUSSO:  It is actually Google, Judge.

10             THE COURT:  Is Gmail Google?  Showing my ignorance.

11             MR. LaRUSSO:  Judge, I just got that.

12             MR. HALEY:  Judge, I knew that.

13             THE COURT:  Have a good night.

14             (Matter concluded at 5:05 p.m.)

15             (Matter adjourned to June 2, 2015, at 9:30 a.m.)

16

17

18

19

20

21

22

23

24

25

W I T N E S S                                    2341

1

2   D A R R Y L     S Y D O R                      2156

3   DIRECT EXAMINATION                             2157

4   BY MS. KOMATIREDDY

5   CROSS EXAMINATION                              2185

6   BY MR. HALEY

7   CROSS-EXAMINATION                              2238

8   BY MR. LARUSSO

9   CROSS-EXAMINATION                              2251

10  BY MR. LARUSSO

11  CROSS-EXAMINATION  (CONTINUING)                2283

12  BY MR. LARUSSO

13  VOIR DIRE EXAMINATION                          2283

14  BY MS. KOMATIREDDY

15  CROSS-EXAMINATION  (CONTINUING)                2284

16  BY MR. LARUSSO

17  REDIRECT EXAMINATION                           2293

18  BY MS. KOMATIREDDY

19  RECROSS-EXAMINATION                            2299

20  BY MR. HALEY

21  RECROSS EXAMINATION                            2304

22  BY MR. HALEY

23  RECROSS EXAMINATION                            2318

24  BY MR. LARUSSO

25

E X H I B I T S                              2342

1

2    GOVERNMENT EXHIBIT 5004                          2172

3    GOVERNMENT EXHIBIT 6603                          2177

4

5

6    DEFENDANT'S EXHIBIT 64 WAS RECEIVED IN EVIDENCE   2195

7    DEFENSE EXHIBIT C-139 IN EVIDENCE               2242

8    DEFENSE EXHIBIT C-138 IN EVIDENCE               2244

9    DEFENSE EXHIBIT C-144 IN EVIDENCE               2250

10   DEFENDANT'S EXHIBIT C 141 WAS RECEIVED IN        2252

11   EVIDENCE

12   DEFENDANT'S EXHIBIT C 125 WAS RECEIVED IN        2255

13   EVIDENCE

14   DEFENDANT'S EXHIBIT C 32 A WAS RECEIVED IN       2260

15   EVIDENCE

16   DEFENDANT'S EXHIBIT C 126 WAS RECEIVED IN        2263

17   EVIDENCE

18   DEFENDANT'S EXHIBIT C 128 WAS RECEIVED IN        2272

19   EVIDENCE

20   DEFENDANT KENNER EXHIBIT 74                      2304

21

22

23

24

25

U.S.A. v. KENNER and CONSTANTINE                                          1

## $

**$1,697** [1] - 2252:22
**$10** [1] - 2158:23
**$100,000** [1] - 2164:9
**$12** [1] - 2336:14
**$165,000** [1] - 2159:2
**$200,000** [2] - 2168:9, 2170:17
**$28,000** [1] - 2173:8
**$383,914.40** [1] - 2238:9
**$400,000** [1] - 2267:12
**$42,500** [1] - 2238:14
**$50,000** [2] - 2171:14, 2173:5
**$500,000** [1] - 2164:3
**$8,000** [2] - 2250:1, 2250:2
**$8,700** [2] - 2170:22, 2180:14
**$850,000** [2] - 2191:9, 2312:21
**$866,000** [1] - 2169:7
**$866,200.86** [1] - 2169:2

## '

**'03** [1] - 2170:7
**'03-'04** [2] - 2157:24, 2217:6
**'04** [4] - 2157:24, 2170:7, 2170:8, 2170:10
**'08/'09** [1] - 2296:8
**'09** [5] - 2158:4, 2158:5, 2210:6, 2210:8, 2296:9
**'09/'010** [1] - 2296:6
**'10** [2] - 2158:4, 2158:5
**'91** [2] - 2157:16, 2159:6
**'92** [2] - 2157:16, 2159:6
**'93/'94** [1] - 2219:22
**'95** [2] - 2160:18, 2160:19
**'96** [1] - 2160:18

## 0

**08/'09** [1] - 2296:6

## 1

**1** [3] - 2152:9, 2212:7, 2214:11
**1.2** [1] - 2168:9

**10** [24] - 2179:25, 2200:19, 2243:21, 2244:13, 2258:12, 2259:7, 2260:14, 2263:15, 2270:3, 2271:4, 2272:16, 2273:14, 2273:17, 2274:10, 2274:16, 2275:5, 2275:17, 2278:22, 2279:9, 2279:11, 2314:5, 2314:8, 2314:19, 2316:14
**100** [1] - 2153:8
**100,000** [4] - 2164:10, 2166:10, 2166:11, 2216:8
**10:30** [1] - 2256:1
**11** [1] - 2168:20
**110** [1] - 2210:2
**115** [4] - 2310:5, 2310:6, 2310:7, 2311:1
**11501** [1] - 2153:2
**11572** [1] - 2153:5
**11722** [2] - 2152:17, 2153:9
**11749** [1] - 2152:23
**11th** [1] - 2178:17
**12** [4] - 2155:25, 2158:8, 2162:6, 2321:25
**125** [5] - 2254:14, 2254:25, 2255:4, 2255:5, 2342:12
**126** [6] - 2262:6, 2262:22, 2263:2, 2263:3, 2263:6, 2342:16
**127** [8] - 2263:18, 2263:24, 2264:1, 2264:9, 2264:11, 2264:12
**128** [5] - 2272:18, 2272:21, 2272:22, 2272:25, 2342:18
**129** [10] - 2274:20, 2274:21, 2275:1, 2275:17, 2275:21, 2276:11
**129-A** [1] - 2339:6
**12th** [1] - 2245:16
**13-CR-607** [2] - 2152:3, 2153:14
**14** [1] - 2188:23
**141** [5] - 2251:22, 2252:3, 2252:9, 2252:10, 2342:10
**150** [2] - 2159:3, 2159:13

**1503** [2] - 2175:14, 2178:16
**15238** [1] - 2210:3
**16** [9] - 2206:19, 2206:20, 2241:18, 2242:6, 2301:4, 2327:24, 2334:1, 2336:12, 2338:8
**1601** [1] - 2152:22
**165** [1] - 2159:13
**17** [1] - 2253:12
**1709** [1] - 2173:2
**17th** [16] - 2178:22, 2187:5, 2187:7, 2187:12, 2187:14, 2187:21, 2189:16, 2191:4, 2191:21, 2193:14, 2194:12, 2194:14, 2209:17, 2305:16, 2305:24
**18** [14] - 2157:13, 2253:25, 2255:8, 2255:17, 2255:21, 2257:4, 2257:9, 2263:10, 2263:19, 2264:2, 2264:6, 2281:25, 2284:15, 2285:3
**18th** [3] - 2178:20, 2187:15, 2254:15
**19** [6] - 2157:16, 2245:18, 2258:25, 2259:3, 2262:19, 2263:7
**1970** [1] - 2222:19
**1980** [2] - 2222:19, 2222:21
**1993** [1] - 2157:17
**1995** [1] - 2160:16
**19th** [3] - 2254:17, 2256:5, 2256:8
**1:00** [1] - 2250:23

## 2

**2** [8] - 2173:4, 2182:13, 2214:11, 2258:22, 2281:12, 2281:18, 2308:3, 2340:15
**20** [2] - 2157:17, 2249:25
**200** [2] - 2170:16, 2175:12
**2003** [3] - 2165:5, 2165:19, 2217:7
**2003-2004** [1] - 2217:22
**2004** [7] - 2165:6, 2165:19, 2167:19,

2168:4, 2217:7, 2305:2, 2305:8
**2005** [1] - 2168:8
**2006** [5] - 2215:1, 2215:4, 2215:22, 2238:8, 2311:2
**2008** [4] - 2170:25, 2173:4, 2173:5, 2295:22
**2009** [59] - 2166:13, 2166:24, 2168:21, 2169:7, 2174:9, 2174:11, 2177:5, 2178:17, 2178:20, 2178:22, 2189:20, 2190:3, 2190:19, 2191:2, 2209:23, 2209:25, 2212:7, 2241:4, 2241:18, 2242:6, 2242:22, 2242:24, 2243:21, 2244:13, 2249:25, 2251:25, 2252:12, 2253:12, 2253:25, 2255:8, 2255:17, 2255:21, 2256:5, 2257:4, 2257:9, 2258:12, 2258:16, 2258:17, 2258:25, 2259:4, 2259:7, 2260:14, 2261:9, 2262:19, 2263:7, 2263:10, 2263:19, 2264:2, 2264:6, 2268:6, 2272:6, 2273:1, 2274:25, 2275:5, 2281:25, 2284:15, 2285:3, 2295:22
**2010** [4] - 2281:12, 2281:18, 2281:22, 2284:2
**2011** [5] - 2181:3, 2300:3, 2300:10, 2310:23, 2328:8
**2012** [3] - 2192:2, 2192:7, 2328:8
**2014** [3] - 2195:12, 2301:10, 2301:11
**2015** [2] - 2152:9, 2340:15
**20th** [15] - 2187:6, 2187:8, 2187:13, 2187:21, 2189:16, 2191:4, 2191:21, 2193:14, 2194:12, 2194:15, 2209:18, 2305:8, 2305:16, 2305:24
**2118** [5] - 2166:14,

2166:19, 2183:7, 2189:14, 2296:2
**2119** [6] - 2166:14, 2167:1, 2183:7, 2190:17, 2190:18, 2191:9
**2120** [3] - 2166:14, 2167:2, 2296:2
**2135** [3] - 2167:10, 2296:24, 2297:1
**2156** [1] - 2341:2
**2157** [1] - 2341:3
**2169** [2] - 2168:13, 2209:14
**2172** [1] - 2342:2
**2177** [1] - 2342:3
**2185** [1] - 2341:5
**2195** [1] - 2342:6
**22** [1] - 2275:5
**2238** [1] - 2341:7
**2242** [1] - 2342:7
**2244** [1] - 2342:8
**2250** [1] - 2342:9
**2251** [1] - 2341:9
**2252** [1] - 2342:10
**2255** [1] - 2342:12
**2260** [1] - 2342:14
**2263** [1] - 2342:16
**2272** [1] - 2342:18
**2283** [2] - 2341:11, 2341:13
**2284** [1] - 2341:15
**2293** [1] - 2341:17
**2299** [1] - 2341:19
**23** [2] - 2300:12, 2311:22
**2304** [2] - 2341:21, 2342:20
**2318** [1] - 2341:23
**2398** [1] - 2195:12
**24** [2] - 2245:18, 2311:22
**24/7/365** [1] - 2270:24
**25** [4] - 2238:8, 2245:18, 2258:16, 2258:17
**250** [4] - 2175:12, 2267:11, 2267:17
**250,000** [1] - 2269:7
**26** [2] - 2153:4, 2245:18
**27** [1] - 2268:6
**28** [1] - 2272:5
**29** [3] - 2300:3, 2300:10, 2310:23
**2:00** [1] - 2250:22

## 3

**3** [5] - 2155:25,

2173:7, 2195:12,
2214:11, 2258:24
**30** [2] - 2272:6, 2273:1
**300** [1] - 2153:1
**31** [4] - 2168:20,
2268:3, 2274:25,
2279:13
**32** [7] - 2259:6,
2260:9, 2260:10,
2260:18, 2260:23,
2260:24, 2342:14
**33** [1] - 2258:7
**34** [2] - 2258:16,
2258:17
**341** [1] - 2153:2
**35** [1] - 2258:24
**3500** [1] - 2303:16
**3613** [1] - 2190:19
**36134** [1] - 2190:3
**37** [1] - 2289:8
**3:00** [1] - 2185:13
**3rd** [2] - 2305:2,
2311:2

---

### 4

**4** [1] - 2214:11
**400** [1] - 2195:13
**400,000** [2] - 2167:20,
2267:16
**425** [1] - 2152:22
**48** [1] - 2159:6
**4:04** [1] - 2304:7
**4:30** [1] - 2317:12
**4:45** [1] - 2318:22

---

### 5

**5** [2] - 2214:11,
2311:22
**500,000** [1] - 2216:7
**5004** [6] - 2171:3,
2171:8, 2171:24,
2172:3, 2172:4,
2342:2
**5:05** [1] - 2340:14
**5th** [1] - 2181:3

---

### 6

**6** [3] - 2211:13,
2214:11, 2311:22
**631-712-6102** [1] -
2153:9
**64** [9] - 2194:8,
2194:10, 2195:3,
2195:6, 2195:7,
2196:4, 2199:16,
2293:20, 2342:6
**65** [1] - 2212:4

**66** [3] - 2212:14,
2294:9, 2307:7
**6603** [9] - 2176:18,
2177:7, 2177:11,
2177:12, 2178:18,
2193:9, 2253:10,
2255:14, 2342:3
**67** [3] - 2212:24,
2294:16, 2307:7
**68** [3] - 2213:10,
2294:19, 2307:7
**69** [3] - 2213:20,
2294:22, 2307:7

---

### 7

**7** [2] - 2214:12, 2241:4
**70** [1] - 2214:8
**71** [1] - 2215:13
**72** [5] - 2229:16,
2234:4, 2294:25,
2295:8, 2307:7
**73** [1] - 2236:5
**74** [6] - 2304:15,
2304:21, 2304:24,
2304:25, 2305:2,
2342:20
**75** [1] - 2306:8
**75205** [2] - 2190:4,
2190:20
**76** [5] - 2307:21,
2308:15, 2308:17,
2310:4, 2310:7

---

### 8

**8** [3] - 2173:4,
2251:25, 2252:12
**8,600** [1] - 2180:15
**85016** [1] - 2195:13
**89A** [1] - 2292:8
**8th** [1] - 2173:7

---

### 9

**9** [1] - 2215:15
**9:30** [3] - 2152:10,
2318:24, 2340:15
**9:52** [1] - 2155:11

---

### A

**a.m** [4] - 2152:10,
2155:12, 2256:1,
2340:15
**a/k/a** [2] - 2152:6,
2152:8
**Aaron** [2] - 2212:7,
2212:9
**ability** [3] - 2188:10,

2194:1, 2325:13
**able** [11] - 2155:6,
2163:4, 2239:7,
2256:14, 2271:15,
2288:11, 2289:16,
2302:24, 2325:23,
2332:20, 2336:16
**absconding** [1] -
2227:3
**absolutely** [2] -
2270:16, 2328:12
**abundance** [1] -
2208:5
**abused** [1] - 2320:9
**accept** [1] - 2339:17
**accepts** [1] - 2339:10
**access** [8] - 2195:15,
2224:8, 2266:19,
2266:20, 2267:3,
2267:5, 2325:5,
2339:11
**accessing** [1] -
2338:20
**accomplish** [1] -
2154:25
**according** [1] -
2305:17
**account** [22] -
2159:18, 2168:15,
2168:16, 2169:4,
2195:16, 2200:3,
2200:8, 2200:10,
2209:21, 2211:14,
2212:1, 2267:3,
2267:4, 2299:24,
2325:7, 2325:8,
2325:12, 2326:23,
2329:25, 2330:2,
2339:24
**accounts** [3] -
2164:14, 2164:15,
2164:17
**accurate** [4] - 2177:4,
2210:5, 2210:6,
2333:4
**accurately** [2] -
2246:21, 2263:22
**accuse** [2] - 2337:10,
2337:11
**acknowledged** [2] -
2281:24, 2285:2
**acknowledging** [1] -
2328:22
**acknowledgment** [1] -
2263:9
**acquaintances** [1] -
2220:5
**acquire** [3] - 2271:4,
2280:3, 2281:1
**acquired** [4] - 2200:8,

2272:7, 2274:10,
2298:19
**acquiring** [3] -
2256:15, 2263:11,
2263:14
**acquisition** [6] -
2263:20, 2264:3,
2271:6, 2271:20,
2271:23, 2272:16
**acquisitions** [1] -
2279:18
**acting** [2] - 2152:16,
2214:2
**action** [2] - 2246:20,
2302:4
**actions** [1] - 2297:8
**actual** [1] - 2309:8
**adapt** [1] - 2195:9
**addition** [4] - 2196:3,
2235:17, 2317:7,
2325:9
**additional** [6] -
2164:9, 2180:10,
2208:9, 2248:24,
2252:24, 2279:16
**address** [27] -
2176:22, 2176:25,
2190:9, 2206:3,
2209:23, 2210:1,
2210:5, 2210:6,
2210:16, 2210:19,
2210:20, 2211:6,
2252:13, 2254:20,
2255:23, 2255:24,
2255:25, 2258:9,
2258:25, 2264:19,
2268:8, 2273:2,
2283:17, 2284:12,
2302:24, 2303:9
**addressed** [1] -
2215:5
**adds** [1] - 2324:7
**adduced** [1] - 2209:3
**adjourned** [1] -
2340:15
**administrator** [1] -
2211:21
**admissible** [5] -
2184:10, 2185:6,
2266:1, 2266:3
**admit** [1] - 2303:17
**admitted** [11] - 2172:3,
2177:11, 2195:6,
2209:14, 2242:1,
2244:9, 2250:15,
2255:4, 2260:23,
2263:2, 2304:24
**admonitions** [1] -
2325:19
**advance** [1] - 2302:23

**advantage** [2] -
2224:4, 2270:12
**advice** [1] - 2224:9
**advise** [1] - 2248:23
**advised** [1] - 2332:6
**advisor** [14] - 2160:12,
2161:15, 2161:18,
2161:20, 2162:3,
2162:6, 2162:18,
2200:20, 2219:10,
2223:4, 2224:8,
2224:19, 2299:6,
2299:8
**advisor's** [1] - 2224:1
**advisors** [1] - 2223:7
**Advisors** [3] -
2223:17, 2228:2,
2228:5
**aerial** [1] - 2202:14
**affair** [1] - 2242:17
**affect** [1] - 2301:23
**affirmatively** [2] -
2336:19, 2336:20
**afternoon** [3] -
2238:24, 2300:22,
2324:18
**afterwards** [1] -
2328:5
**age** [3] - 2157:16,
2159:8, 2159:14
**Agent** [2] - 2186:16,
2192:3
**agent** [9] - 2160:1,
2160:5, 2188:9,
2188:13, 2189:15,
2191:11, 2191:22,
2207:10, 2225:3
**agents** [7] - 2160:11,
2188:1, 2189:2,
2191:23, 2204:13,
2204:18, 2209:17
**ago** [24] - 2167:6,
2169:13, 2185:15,
2186:23, 2187:3,
2187:4, 2191:10,
2216:25, 2217:2,
2217:9, 2225:14,
2225:18, 2239:1,
2239:3, 2240:10,
2274:2, 2301:3,
2301:4, 2302:25,
2321:11, 2329:20,
2337:2, 2337:13
**agree** [23] - 2189:19,
2190:11, 2190:22,
2190:24, 2209:22,
2209:20, 2211:9,
2219:5, 2225:5,
2254:1, 2256:21,
2257:5, 2260:10,

2261:11, 2271:19,
2272:14, 2280:22,
2281:5, 2305:2,
2313:3, 2314:3,
2333:2, 2338:5
**agreeing** [1] - 2312:23
**Agreement** [2] -
2301:15, 2311:1
**agreement** [16] -
2162:25, 2204:3,
2223:7, 2224:1,
2273:8, 2273:18,
2279:22, 2280:2,
2312:20, 2332:5,
2332:8, 2332:14,
2332:15, 2332:18,
2332:19, 2336:14
**agreements** [1] -
2268:6
**ahead** [6] - 2156:25,
2185:8, 2206:11,
2209:11, 2251:15,
2304:9
**Air** [7] - 2177:21,
2179:22, 2268:21,
2269:2, 2269:3,
2269:5, 2269:12
**air** [3] - 2178:8,
2315:20, 2316:8
**aircraft** [14] - 2177:22,
2179:25, 2314:11,
2314:19, 2315:6,
2315:9, 2315:10,
2315:12, 2315:18,
2316:6, 2316:14,
2316:17
**airplane** [34] - 2178:8,
2178:10, 2263:15,
2269:15, 2269:21,
2270:2, 2270:7,
2270:13, 2270:17,
2270:20, 2270:24,
2271:21, 2272:4,
2272:7, 2273:8,
2273:20, 2274:3,
2274:5, 2274:10,
2274:14, 2274:17,
2274:24, 2278:25,
2279:4, 2279:22,
2281:10, 2281:13,
2281:14, 2282:15,
2314:4, 2316:1,
2326:3
**airplanes** [4] -
2256:16, 2268:22,
2274:8, 2314:9
**airport** [1] - 2186:11
**al** [1] - 2154:6
**allegations** [3] -
2231:4, 2231:6,

2286:16
**allege** [1] - 2301:24
**alleged** [4] - 2301:6,
2301:16, 2301:20,
2302:8
**alleges** [1] - 2302:4
**allow** [5] - 2195:15,
2290:13, 2331:25,
2335:17, 2340:8
**allowed** [6] - 2168:7,
2323:16, 2324:3,
2330:14, 2332:18,
2332:19
**allowing** [1] - 2218:13
**alluding** [2] - 2232:23,
2292:13
**almost** [1] - 2197:9
**alter** [1] - 2340:3
**alternates** [2] -
2155:22, 2155:24
**alternatively** [1] -
2329:13
**America** [2] - 2164:15,
2207:25
**AMERICA** [1] - 2152:3
**amount** [4] - 2167:23,
2169:2, 2191:9,
2197:7, 2312:21,
2327:15
**ANDREW** [1] - 2153:4
**Angeles** [2] - 2157:20,
2160:5, 2160:24,
2161:3, 2240:15,
2241:1
**anniversary** [1] -
2242:11
**ANSWER** [8] - 2311:4,
2311:16, 2312:2,
2312:6, 2312:10,
2312:14, 2312:16,
2312:24
**answer** [35] - 2160:9,
2182:7, 2196:22,
2202:4, 2202:5,
2208:2, 2217:17,
2223:13, 2225:10,
2225:11, 2226:1,
2226:5, 2226:21,
2228:18, 2240:2,
2264:22, 2269:17,
2271:25, 2274:1,
2282:3, 2286:20,
2288:4, 2298:22,
2299:18, 2300:12,
2300:16, 2308:13,
2310:18, 2310:23,
2313:11, 2315:2,
2316:19, 2317:23,
2318:1, 2335:18
**answered** [10] -

2188:9, 2188:12,
2281:8, 2307:11,
2308:11, 2309:11,
2314:25, 2316:18,
2317:25, 2335:16
**anticipate** [1] - 2209:3
**anticipated** [1] -
2154:8
**anticipating** [1] -
2334:7
**anyway** [1] - 2160:10
**apologize** [15] -
2154:12, 2183:8,
2186:21, 2209:1,
2227:13, 2246:16,
2262:3, 2278:2,
2278:12, 2288:21,
2291:11, 2311:7,
2312:3, 2326:6,
2327:9
**apparent** [3] - 2324:2
**appear** [10] - 2166:20,
2177:3, 2213:25,
2214:23, 2302:15,
2310:7, 2310:10,
2313:7, 2335:15,
2339:21
**appearance** [2] -
2153:16, 2240:19,
2241:19, 2243:11,
2243:22, 2248:3
**APPEARANCES** [1] -
2152:14
**appeared** [3] - 2294:5,
2294:10, 2336:6
**appearing** [2] -
2240:11, 2300:12
**application** [1] -
2303:3
**apply** [1] - 2184:5
**applying** [1] - 2288:11
**appreciate** [2] -
2278:4, 2331:15
**approach** [1] - 2265:5
**approve** [1] - 2260:1
**approved** [1] -
2328:16
**April** [4] - 2181:3,
2212:7, 2215:22,
2305:8
**arbitration** [4] -
2223:20, 2223:22,
2224:4, 2336:7
**area** [3] - 2240:16,
2270:11, 2292:9
**arguing** [1] - 2322:14
**argument** [4] -
2297:20, 2323:24,
2338:4, 2339:9
**argumentative** [2] -

2206:5, 2206:9
**arise** [1] - 2339:3
**Arizona** [4] - 2179:22,
2229:23, 2271:13,
2271:18
**Arizona-Canada** [1] -
2271:18
**arranged** [2] -
2257:12, 2257:18
**arrangements** [1] -
2270:22
**article** [1] - 2284:16
**Asante** [2] - 2223:16
**aside** [1] - 2283:19
**aspect** [4] - 2259:25,
2260:6
**aspects** [1] - 2263:20
**assertive** [1] -
2314:13
**asset** [1] - 2270:14
**assets** [4] - 2256:15,
2263:11, 2264:3,
2298:17
**assigned** [2] -
2191:23, 2204:14
**assistance** [3] -
2195:19, 2232:13,
2252:24
**assistant** [1] - 2182:3
**Assistant** [1] -
2152:18
**assisted** [3] - 2231:24,
2232:17, 2234:6
**assuming** [1] -
2210:24
**assumption** [3] -
2179:19, 2211:3,
2240:8
**assure** [2] - 2208:18,
2208:21
**AT&T** [1] - 2193:10
**attach** [1] - 2244:21
**attached** [4] -
2267:10, 2273:7,
2279:20, 2280:6
**attachment** [1] -
2263:25
**attachments** [1] -
2276:14
**attend** [2] - 2240:25,
2248:19
**attended** [2] - 2243:8,
2289:1
**attending** [1] - 2291:2
**attention** [19] -
2154:17, 2156:1,
2163:10, 2169:16,
2170:24, 2174:5,
2200:10, 2211:6,
2213:1, 2213:7,

2213:21, 2215:14,
2229:17, 2241:11,
2243:19, 2244:22,
2286:8, 2307:22,
2308:1
**Attorney** [5] -
2152:16, 2316:20,
2316:24, 2317:5,
2317:8
**attorney** [21] -
2162:20, 2162:21,
2162:25, 2163:4,
2163:8, 2167:25,
2172:6, 2218:13,
2224:14, 2224:15,
2224:20, 2224:23,
2225:3, 2236:1,
2237:3, 2237:8,
2237:12, 2245:20,
2246:4, 2248:17,
2252:22
**Attorney's** [1] -
2300:11
**attorneys** [4] - 2236:2,
2319:8, 2319:17,
2320:5
**Attorneys** [1] -
2152:18
**attorneys'** [1] -
2283:19
**August** [5] - 2238:8,
2258:25, 2259:3,
2274:25, 2275:5
**Augustine** [3] -
2246:4, 2246:7,
2247:24
**AUSA** [1] - 2207:19
**authentic** [3] - 2266:7,
2321:6, 2333:2
**authenticate** [4] -
2266:15, 2267:7,
2330:5, 2330:20
**authenticated** [1] -
2321:8
**authentication** [2] -
2326:19, 2330:20
**authenticity** [9] -
2266:12, 2267:10,
2327:25, 2328:3,
2329:7, 2330:4,
2330:22, 2340:5,
2340:6
**authority** [1] - 2229:2
**authorization** [3] -
2255:10, 2305:9,
2338:20
**authorize** [14] -
2165:11, 2172:23,
2173:10, 2173:13,
2175:21, 2176:4,

2176:14, 2178:25, 2179:12, 2179:21, 2179:24, 2180:2, 2225:10, 2239:16
**authorized** [3] - 2168:1, 2195:17, 2199:15
**availability** [1] - 2261:13
**available** [3] - 2242:17, 2331:6, 2331:7
**Avalon** [2] - 2179:21, 2280:4
**Ave** [1] - 2190:4
**Avenue** [1] - 2190:19
**average** [2] - 2219:25, 2221:17
**avoid** [1] - 2302:10
**aware** [5] - 2203:10, 2238:2, 2243:2, 2260:1, 2334:6
**awareness** [2] - 2190:7, 2225:15
**awhile** [1] - 2204:8
**AZ** [10] - 2195:13, 2267:13, 2267:14, 2268:5, 2274:11, 2274:15, 2274:24, 2281:14, 2282:15, 2283:7

### B

**backdate** [1] - 2339:21
**bad** [5] - 2280:3, 2280:15, 2280:17, 2280:18, 2280:22
**balance** [2] - 2167:19, 2252:22
**bank** [7] - 2159:17, 2164:13, 2164:15, 2173:3, 2219:3, 2268:23
**Bank** [6] - 2164:15, 2166:20, 2167:23, 2195:12, 2195:17, 2196:5
**banker** [1] - 2159:16
**Bankruptcy** [4] - 2229:23, 2231:8, 2231:9, 2232:13
**bankruptcy** [9] - 2231:3, 2231:5, 2231:7, 2231:21, 2231:25, 2232:3, 2232:19, 2233:1, 2234:7
**bar** [10] - 2183:9,

2183:11, 2184:1, 2184:15, 2308:21, 2308:23, 2309:1, 2309:22, 2324:24, 2339:19
**barring** [1] - 2154:15
**based** [8] - 2183:2, 2206:17, 2208:9, 2217:22, 2302:17, 2303:6, 2333:13, 2334:25
**basic** [1] - 2279:22
**basis** [1] - 2303:5
**battle** [1] - 2181:12
**Bay** [3] - 2157:23, 2157:24, 2170:8
**bear** [1] - 2329:8
**bearing** [2] - 2195:24, 2310:5
**bears** [1] - 2328:2
**beautiful** [1] - 2223:1
**became** [5] - 2223:20, 2224:18, 2271:5, 2326:2, 2337:25
**BEFORE** [1] - 2152:11
**began** [2] - 2162:2, 2331:7
**begin** [1] - 2304:12
**beginning** [2] - 2162:4, 2280:11
**begins** [2] - 2179:8, 2190:23
**behalf** [5] - 2163:8, 2172:6, 2214:3, 2246:23, 2281:1
**behind** [2] - 2155:21, 2206:2
**belabor** [2] - 2222:14, 2327:25
**belief** [1] - 2328:9
**believes** [1] - 2232:17
**bell** [2] - 2161:16, 2237:22
**below** [1] - 2252:19
**benefit** [2] - 2168:21, 2168:24
**Berard** [7] - 2286:11, 2287:3, 2287:5, 2287:21, 2291:24, 2317:2, 2317:7
**best** [13] - 2154:18, 2187:20, 2188:9, 2188:17, 2193:25, 2217:3, 2226:25, 2227:8, 2229:6, 2250:6, 2306:23, 2317:23, 2332:2
**Best** [2] - 2257:16, 2257:25
**better** [2] - 2208:8,

2242:19
**between** [25] - 2162:25, 2175:23, 2177:4, 2187:7, 2187:12, 2187:20, 2189:16, 2193:14, 2194:12, 2204:1, 2209:17, 2212:9, 2223:21, 2232:6, 2241:17, 2243:20, 2287:15, 2287:24, 2297:21, 2305:24, 2314:10, 2314:12, 2322:12, 2323:4, 2326:21
**Bevis** [1] - 2278:15
**beyond** [2] - 2218:18, 2298:12
**BIANCO** [1] - 2152:12
**bias** [1] - 2323:21
**big** [1] - 2189:6
**bill** [3] - 2250:4, 2251:25, 2253:6
**billings** [1] - 2248:24
**binder** [23] - 2202:17, 2202:18, 2202:20, 2202:23, 2202:25, 2203:3, 2203:7, 2204:2, 2204:9, 2204:14, 2204:17, 2204:22, 2205:4, 2205:7, 2205:13, 2205:16, 2206:6, 2206:14, 2296:21, 2297:1, 2317:16, 2317:18, 2317:24
**binders** [3] - 2204:11, 2205:21
**bing** [1] - 2331:22
**bit** [5] - 2158:13, 2178:5, 2210:23, 2270:6, 2296:11
**Blackberry** [18] - 2178:4, 2178:6, 2193:10, 2193:17, 2193:25, 2240:22, 2241:15, 2242:8, 2244:2, 2244:20, 2254:22, 2254:23, 2264:5, 2264:7, 2264:17, 2281:11, 2283:6, 2283:18
**blackberry.net** [2] - 2264:20, 2264:23
**Blue** [1] - 2170:7
**Bob** [1] - 2292:2
**bold** [1] - 2211:14
**bond** [6] - 2169:4, 2191:2, 2191:8, 2200:8, 2200:10,

2312:22
**bonds** [15] - 2162:11, 2162:15, 2164:18, 2164:19, 2191:19, 2192:8, 2200:3, 2214:4, 2219:15, 2219:17, 2219:24, 2221:14, 2222:9, 2305:9, 2305:13
**bonus** [2] - 2159:2, 2159:14
**books** [1] - 2228:5
**Boston** [2] - 2161:15, 2223:16
**bother** [1] - 2339:2
**bottom** [1] - 2177:18
**bound** [1] - 2203:1
**brackets** [2] - 2248:18
**break** [15] - 2189:11, 2204:25, 2205:14, 2205:18, 2207:12, 2208:17, 2250:18, 2250:21, 2276:24, 2278:11, 2286:24, 2300:21, 2300:22, 2309:5, 2324:18
**Brian** [2] - 2286:11, 2287:21
**brief** [3] - 2183:9, 2276:25, 2300:21
**briefly** [2] - 2252:12, 2324:22
**bring** [6] - 2155:9, 2168:5, 2208:24, 2208:25, 2286:8, 2304:3
**bringing** [1] - 2231:25
**British** [2] - 2314:22
**Brothers** [2] - 2166:6, 2166:11, 2216:9
**brought** [6] - 2186:12, 2192:13, 2211:5, 2225:22, 2225:23, 2261:19
**Bryan** [2] - 2317:1, 2317:7
**building** [3] - 2185:24, 2239:5, 2280:4
**buildings** [1] - 2282:8
**built** [1] - 2297:23
**bunch** [3] - 2155:5, 2200:25, 2280:19
**burden** [2] - 2328:2, 2329:8
**Bureau** [1] - 2186:17
**business** [3] - 2223:4, 2224:19, 2279:18
**but..** [1] - 2312:10
**buy** [6] - 2173:18, 2173:20, 2173:22,

2179:24, 2290:14, 2290:15
**Buy** [2] - 2257:16, 2257:25
**buying** [2] - 2290:22, 2298:10
**BY** [50] - 2152:17, 2152:23, 2157:3, 2185:11, 2216:2, 2226:24, 2227:7, 2227:14, 2228:20, 2229:14, 2234:2, 2234:12, 2235:22, 2238:13, 2238:23, 2239:12, 2242:3, 2244:14, 2247:18, 2251:18, 2264:14, 2276:2, 2283:2, 2283:15, 2283:25, 2284:9, 2285:18, 2286:22, 2288:6, 2293:4, 2293:12, 2297:13, 2298:15, 2298:25, 2299:13, 2299:20, 2304:14, 2310:3, 2318:7, 2341:4, 2341:6, 2341:8, 2341:10, 2341:12, 2341:14, 2341:16, 2341:18, 2341:20, 2341:22, 2341:24
**Bye** [9] - 2160:12, 2160:13, 2162:5, 2219:10, 2220:5, 2220:9, 2220:23, 2221:4, 2221:6

### C

**C-127** [6] - 2325:20, 2325:21, 2326:9, 2326:12, 2326:13, 2330:15
**C-138** [5] - 2243:16, 2244:5, 2244:9, 2244:10, 2244:12, 2342:8
**C-139** [5] - 2241:6, 2242:1, 2242:2, 2242:5, 2342:7
**C-144** [5] - 2249:23, 2250:9, 2250:15, 2250:16, 2342:9
**C-29** [1] - 2284:10
**C-29A** [4] - 2284:23, 2284:25, 2285:11, 2285:14
**C-37C** [2] - 2289:9, 2290:1

**Cabo** [5] - 2166:6, 2174:22, 2175:5, 2297:16, 2298:9
**CALCAGNI** [1] - 2152:21
**Camelback** [1] - 2195:13
**Canada** [4] - 2158:8, 2271:18, 2275:14, 2314:23
**cane** [1] - 2163:17
**caption** [1] - 2284:16
**car** [1] - 2257:25
**card** [2] - 2169:22, 2170:3
**care** [5] - 2247:14, 2252:21, 2253:6, 2270:13, 2333:3
**career** [2] - 2158:11, 2174:10
**case** [25] - 2153:14, 2204:19, 2236:24, 2246:5, 2247:8, 2247:23, 2248:21, 2250:5, 2252:21, 2270:18, 2299:15, 2299:23, 2300:23, 2302:9, 2318:24, 2319:8, 2319:17, 2319:20, 2320:10, 2324:20, 2335:2, 2335:6, 2338:19, 2339:5, 2339:21
**cash** [1] - 2216:14
**catch** [1] - 2269:16
**Catie** [1] - 2211:20
**caution** [2] - 2208:5, 2319:12
**caveat** [1] - 2177:8
**cell** [1] - 2315:16
**centered** [2] - 2287:25, 2288:11
**Central** [3] - 2152:5, 2152:17, 2153:9
**certain** [7] - 2182:11, 2187:9, 2187:19, 2246:20, 2323:7, 2339:22
**certainly** [7] - 2225:5, 2303:7, 2307:25, 2319:14, 2327:12, 2329:2, 2331:25
**certainty** [1] - 2306:14
**cetera** [1] - 2303:21
**chain** [1] - 2245:9
**chance** [5] - 2166:16, 2167:12, 2177:13, 2313:12, 2320:17
**change** [1] - 2238:15
**changed** [2] -

2160:11, 2162:12
**charge** [2] - 2339:8
**Charles** [1] - 2164:16
**charter** [2] - 2274:8, 2276:18
**check** [3] - 2168:2, 2168:10, 2266:21
**checked** [3] - 2168:1, 1264:23, 2271:14
**checking** [2] - 2264:18, 2264:20
**chief** [1] - 2302:9
**children** [1] - 2247:7
**choice** [1] - 2338:4
**choose** [1] - 2225:5
**circumstance** [3] - 2200:11, 2231:14, 2313:5
**circumstances** [4] - 2197:25, 2303:3, 2313:4, 2323:7
**City** [1] - 2158:12
**civil** [2] - 2223:23, 2336:7
**claim** [3] - 2229:22, 2231:25, 2232:4
**clarify** [1] - 2333:7
**class** [1] - 2246:20
**clause** [2] - 2223:20, 2224:4
**cleaned** [1] - 2272:12
**clear** [11] - 2178:23, 2179:9, 2184:7, 2218:11, 2291:12, 2303:13, 2309:17, 2315:19, 2324:23, 2328:17, 2329:4
**clearer** [1] - 2289:17
**clearly** [3] - 2211:14, 2231:11, 2302:16
**clerk** [1] - 2319:9
**CLERK** [6] - 2153:12, 2153:14, 2155:10, 2156:11, 2156:18, 2304:5
**client** [9] - 2168:22, 2184:4, 2184:6, 2205:5, 2231:8, 2231:12, 2232:4, 2239:10, 2325:10
**clients** [3] - 2232:2, 2232:5, 2246:18
**clips** [2] - 2202:25, 2203:4
**clock** [1] - 2185:13
**close** [2] - 2157:25, 2295:9
**closer** [1] - 2156:23
**closing** [5] - 2237:23, 2238:1, 2238:3,

2238:5, 2238:16
**club** [1] - 2182:4
**coach** [2] - 2157:9, 2182:3
**Coca** [1] - 2222:8
**Cola** [1] - 2222:8
**collate** [1] - 2302:21
**collateral** [3] - 2191:2, 2191:8, 2312:20
**Collateral** [3] - 2167:2, 2190:24, 2191:14
**collateralized** [2] - 2192:9, 2200:9
**collection** [1] - 2175:16
**Columbia** [1] - 2314:22
**Columbus** [6] - 2157:22, 2169:21, 2170:6, 2278:22, 2279:2, 2314:22
**COMBS** [1] - 2153:8
**coming** [6] - 2166:6, 2177:13, 2267:2, 2325:2, 2332:5, 2340:1
**commenced** [2] - 2227:9, 2236:19
**comment** [2] - 2154:22, 2206:3
**commentary** [1] - 2332:17
**comments** [1] - 2333:12
**commit** [2] - 2217:23, 2323:22
**committed** [2] - 2218:2, 2231:5
**committing** [1] - 2216:3
**commonly** [2] - 2188:22, 2188:24
**communicate** [6] - 2200:23, 2201:3, 2201:6, 2201:9, 2227:19, 2249:18
**communicated** [2] - 2176:22, 2280:8
**communicating** [3] - 2240:18, 2240:21, 2241:14
**communication** [10] - 2197:24, 2198:5, 2220:12, 2228:21, 2241:17, 2243:20, 2244:1, 2247:21, 2257:6, 2316:23
**communications** [4] - 2200:14, 2228:12, 2229:5, 2323:3

**companies** [1] - 2269:2
**company** [14] - 2169:17, 2169:22, 2170:2, 2170:3, 2203:11, 2216:22, 2268:24, 2269:10, 2274:11, 2279:22, 2288:24, 2289:2, 2316:11, 2323:23
**Company** [2] - 2203:16, 2216:9
**compare** [1] - 2310:9
**complaint** [1] - 2295:4
**complete** [4] - 2198:9, 2199:9, 2206:1, 2267:9
**completely** [2] - 2206:1, 2324:11
**complex** [1] - 2177:22
**complies** [1] - 2306:10
**compounded** [1] - 2319:6
**computer** [2] - 2325:2, 2336:4
**conceded** [2] - 2161:9, 2161:10
**concern** [6] - 2228:13, 2228:22, 2233:6, 2327:1, 2334:11, 2338:11
**concerned** [6] - 2211:10, 2211:12, 2232:22, 2303:12, 2330:15, 2334:3
**concluded** [3] - 2184:15, 2309:22, 2340:14
**conditional** [1] - 2303:6
**condominium** [2] - 2180:3, 2298:11
**condominiums** [1] - 2177:22
**conduct** [1] - 2315:9
**conducted** [2] - 2183:11, 2308:23
**conducting** [1] - 2324:14
**conference** [36] - 2183:11, 2184:1, 2184:15, 2212:8, 2257:10, 2257:18, 2257:23, 2258:4, 2258:13, 2258:21, 2258:24, 2259:7, 2259:22, 2260:5, 2260:12, 2261:2, 2261:9, 2261:17,

2261:24, 2267:20, 2278:13, 2285:23, 2286:7, 2286:9, 2286:14, 2286:24, 2287:10, 2288:22, 2291:8, 2291:17, 2292:5, 2292:13, 2292:21, 2308:23, 2309:1, 2309:22
**confident** [1] - 2335:12
**confirm** [1] - 2319:9
**confirmed** [1] - 2319:9
**confused** [2] - 2300:9, 2309:18
**confusion** [1] - 2301:17
**connect** [1] - 2218:9
**connected** [1] - 2289:2
**connection** [13] - 2175:3, 2218:8, 2219:24, 2232:25, 2234:6, 2235:23, 2236:8, 2237:9, 2243:11, 2249:19, 2297:8, 2299:2, 2323:3
**consent** [3] - 2177:9, 2289:20, 2340:5
**consented** [1] - 2322:17
**conservative** [3] - 2162:11, 2219:15, 2221:16
**conserve** [1] - 2221:10
**conserve-type** [1] - 2221:10
**consider** [1] - 2270:10
**consisted** [3] - 2301:11, 2301:12, 2301:14
**consolidation** [1] - 2206:25
**conspiracy** [1] - 2232:6
**Constantine** [129] - 2153:1, 2153:15, 2153:25, 2154:2, 2165:5, 2165:12, 2172:11, 2172:20, 2172:23, 2173:3, 2173:20, 2184:11, 2185:7, 2218:23, 2219:4, 2219:5, 2219:6, 2225:11, 2225:13, 2225:15, 2229:24, 2231:5, 2231:11, 2231:18,

2231:20, 2232:7,
2232:9, 2232:12,
2233:7, 2238:25,
2239:2, 2239:7,
2240:18, 2240:21,
2241:14, 2241:18,
2242:7, 2242:10,
2242:18, 2243:2,
2243:9, 2243:21,
2249:18, 2249:25,
2251:24, 2252:16,
2253:1, 2253:6,
2254:3, 2254:10,
2254:16, 2254:20,
2255:20, 2255:23,
2256:5, 2256:9,
2256:24, 2257:6,
2257:12, 2258:12,
2258:21, 2259:20,
2261:2, 2261:4,
2261:12, 2261:16,
2261:23, 2261:25,
2262:10, 2262:16,
2263:7, 2263:10,
2263:19, 2264:3,
2265:2, 2266:2,
2267:3, 2268:7,
2268:17, 2270:1,
2272:6, 2272:15,
2272:25, 2273:13,
2273:16, 2274:14,
2274:23, 2275:6,
2276:4, 2276:11,
2279:16, 2280:8,
2281:12, 2281:17,
2281:19, 2282:6,
2282:14, 2283:6,
2284:2, 2284:11,
2284:15, 2285:5,
2286:12, 2286:17,
2287:5, 2287:11,
2287:16, 2287:18,
2287:24, 2288:1,
2288:8, 2289:3,
2290:7, 2291:7,
2291:10, 2291:16,
2291:18, 2292:14,
2292:22, 2293:13,
2295:5, 2314:16,
2316:7, 2318:9,
2318:12, 2318:17,
2320:6, 2332:6,
2336:15
**CONSTANTINE** [1] -
2152:7
**constantine** [2] -
2165:8, 2332:15
**constantine's** [2] -
2320:2, 2325:2
**Constantine's** [3] -
2232:19, 2260:11,

2266:3
**constraints** [2] -
2320:5, 2324:12
**Consulting** [1] -
2301:15
**contact** [10] - 2176:25,
2193:2, 2197:4,
2198:10, 2198:17,
2199:1, 2257:8,
2302:2, 2316:9,
2316:10
**contact-wise** [1] -
2197:4
**contacted** [4] -
2211:17, 2211:20,
2211:25, 2212:8
**contacting** [1] -
2317:5
**contain** [1] - 2212:25
**contained** [4] -
2190:12, 2203:7,
2206:15, 2317:18
**containing** [2] -
2199:2, 2301:13
**contains** [1] - 2243:25
**contemporaneous** [1]
- 2208:1
**contending** [1] -
2328:17
**content** [6] - 2180:20,
2229:5, 2273:5,
2275:9, 2307:3,
2307:11
**contents** [2] -
2306:25, 2317:16
**context** [1] - 2280:20
**continue** [6] -
2155:17, 2155:25,
2156:6, 2205:9,
2270:6, 2274:1
**continued** [9] -
2183:12, 2184:16,
2185:1, 2192:18,
2250:24, 2257:5,
2308:24, 2309:23,
2310:1
**CONTINUED** [1] -
2310:2
**Continued** [8] -
2215:25, 2230:3,
2233:12, 2265:8,
2267:21, 2277:4,
2278:14, 2282:17
**continues** [1] -
2218:23
**CONTINUING** [2] -
2341:11, 2341:15
**Continuing** [3] -
2216:1, 2283:1,
2284:8

**contract** [10] - 2159:1,
2159:2, 2159:12,
2159:25, 2160:5,
2223:5, 2223:6,
2223:12, 2223:14,
2223:19
**contributed** [3] -
2235:18, 2240:1,
2243:4
**contributing** [2] -
2324:10, 2331:20
**contribution** [3] -
2216:14, 2240:5,
2242:23
**contributions** [3] -
2175:17, 2231:16,
2239:16
**contributors** [1] -
2257:11
**Control** [1] - 2167:3
**control** [8] - 2287:10,
2287:18, 2287:25,
2288:8, 2288:12,
2321:13, 2323:15
**convenience** [1] -
2279:24
**conversation** [50] -
2163:15, 2163:20,
2163:23, 2164:5,
2164:10, 2164:19,
2166:5, 2169:20,
2169:21, 2169:24,
2170:12, 2171:5,
2171:17, 2176:10,
2177:4, 2180:25,
2184:2, 2185:4,
2189:2, 2192:11,
2192:12, 2192:13,
2192:17, 2193:1,
2198:13, 2198:14,
2198:21, 2199:3,
2200:18, 2200:25,
2216:24, 2217:11,
2217:14, 2217:15,
2217:18, 2217:21,
2217:23, 2217:24,
2217:25, 2218:5,
2218:12, 2253:8,
2254:10, 2256:11,
2256:20, 2283:21,
2289:4, 2306:2,
2306:5, 2332:7
**conversations** [15] -
2161:12, 2163:20,
2165:16, 2166:4,
2200:13, 2200:22,
2217:5, 2217:15,
2217:19, 2217:20,
2225:22, 2273:20,
2295:21, 2316:22,

2322:22
**converts** [1] - 2267:14
**CONWAY** [1] - 2153:1
**copies** [5] - 2205:21,
2205:22, 2332:9,
2336:6, 2339:13
**copy** [11] - 2177:4,
2207:18, 2289:9,
2289:16, 2300:20,
2309:9, 2313:23,
2332:12, 2332:14,
2332:25, 2337:21
**copying** [1] - 2301:2
**corner** [1] - 2275:2
**correct** [79] - 2172:7,
2186:23, 2187:10,
2187:13, 2187:21,
2187:24, 2188:2,
2188:18, 2189:17,
2190:14, 2190:18,
2193:15, 2194:15,
2195:16, 2196:14,
2197:12, 2200:24,
2206:12, 2210:5,
2210:16, 2212:1,
2213:16, 2217:9,
2218:6, 2218:10,
2218:16, 2218:17,
2224:11, 2225:6,
2226:10, 2236:23,
2239:18, 2240:2,
2240:3, 2240:7,
2240:8, 2240:13,
2242:8, 2242:20,
2242:24, 2244:16,
2245:11, 2245:24,
2246:13, 2247:3,
2247:19, 2247:25,
2248:5, 2249:1,
2250:6, 2252:13,
2253:23, 2254:21,
2255:16, 2258:18,
2259:1, 2261:4,
2262:19, 2273:3,
2279:5, 2281:2,
2285:11, 2287:1,
2287:19, 2288:18,
2293:23, 2300:17,
2305:3, 2305:5,
2305:10, 2306:23,
2314:24, 2315:6,
2317:5, 2317:20,
2318:13, 2318:17,
2326:24, 2334:3
**correspondence** [1] -
2210:2
**correspondences** [1]
- 2244:21
**corresponding** [1] -
2242:7

**cost** [6] - 2247:14,
2248:2, 2270:16,
2270:19, 2270:25,
2327:17
**costs** [1] - 2270:18
**counsel** [6] - 2153:16,
2167:17, 2182:20,
2245:16, 2327:22,
2332:7
**Counsel** [1] - 2307:19
**Counterpunch** [1] -
2284:17
**country** [1] - 2159:8
**Country** [1] - 2153:1
**couple** [9] - 2158:1,
2165:18, 2177:20,
2182:24, 2193:17,
2268:10, 2315:5,
2319:24, 2335:9
**course** [18] - 2174:22,
2175:6, 2188:7,
2192:6, 2194:11,
2195:22, 2217:16,
2217:25, 2224:13,
2225:21, 2237:12,
2269:9, 2297:22,
2298:4, 2300:15,
2322:8, 2327:13,
2334:9
**Court** [15] - 2153:4,
2153:7, 2185:1,
2206:24, 2207:19,
2208:21, 2229:23,
2231:9, 2231:10,
2232:13, 2303:3,
2310:1, 2337:12,
2339:4, 2339:7
**COURT** [162] - 2152:1,
2153:13, 2153:20,
2153:23, 2154:1,
2154:5, 2154:13,
2155:3, 2155:9,
2155:13, 2155:16,
2156:9, 2156:22,
2161:10, 2171:25,
2172:3, 2172:15,
2177:11, 2179:2,
2179:5, 2179:10,
2183:5, 2183:10,
2184:8, 2185:2,
2186:20, 2189:11,
2195:6, 2199:21,
2199:23, 2199:25,
2202:4, 2204:25,
2205:4, 2205:7,
2205:9, 2205:13,
2205:17, 2206:4,
2206:21, 2207:2,
2207:6, 2207:9,
2207:12, 2207:15,

2207:25, 2208:16, 2208:24, 2209:5, 2209:10, 2213:9, 2226:21, 2227:6, 2227:12, 2228:17, 2229:13, 2230:2, 2232:16, 2232:24, 2233:5, 2238:11, 2238:19, 2239:11, 2241:24, 2242:1, 2244:9, 2247:17, 2250:12, 2250:15, 2250:17, 2250:21, 2251:3, 2251:5, 2251:8, 2251:11, 2251:14, 2252:5, 2252:7, 2252:9, 2255:4, 2257:1, 2257:3, 2260:23, 2263:2, 2264:11, 2265:5, 2266:1, 2266:20, 2266:23, 2267:6, 2267:18, 2271:25, 2272:21, 2274:19, 2275:11, 2275:24, 2276:24, 2278:6, 2278:10, 2281:9, 2282:3, 2283:13, 2283:24, 2284:6, 2285:17, 2286:19, 2287:13, 2288:3, 2292:25, 2293:9, 2298:14, 2298:22, 2299:10, 2299:17, 2300:22, 2301:1, 2303:4, 2303:11, 2303:19, 2304:3, 2304:8, 2304:24, 2305:19, 2308:13, 2308:22, 2309:12, 2309:17, 2310:17, 2311:11, 2315:1, 2316:19, 2317:12, 2318:1, 2318:20, 2318:23, 2319:2, 2321:24, 2325:3, 2325:10, 2326:11, 2326:14, 2326:25, 2328:12, 2328:24, 2329:20, 2329:23, 2330:9, 2330:19, 2331:11, 2331:16, 2332:21, 2333:12, 2334:14, 2335:9, 2335:21, 2336:3, 2336:18, 2337:5, 2337:15, 2339:18, 2340:10, 2340:13
**court** [7] - 2166:17, 2167:13, 2177:14,

2187:16, 2234:1, 2268:1, 2327:5
**Court's** [6] - 2302:1, 2302:5, 2307:15, 2325:19, 2326:6, 2331:1
**Courthouse** [1] - 2152:4
**courtroom** [9] - 2155:11, 2161:7, 2205:3, 2209:9, 2251:13, 2304:6, 2319:1, 2319:17, 2320:16
**cover** [2] - 2229:18, 2248:6
**covered** [4] - 2249:4, 2249:6, 2303:16, 2337:13
**covering** [5] - 2247:7, 2247:22, 2248:2, 2248:12
**craft** [1] - 2315:20
**crazy** [1] - 2321:7
**credit** [25] - 2164:7, 2164:8, 2164:11, 2169:22, 2170:3, 2191:3, 2191:9, 2192:10, 2195:18, 2197:11, 2199:15, 2200:9, 2200:17, 2211:19, 2214:4, 2216:4, 2216:8, 2216:13, 2228:13, 2228:23, 2301:12, 2305:15, 2334:13, 2338:20
**CROSS** [12] - 2185:10, 2216:1, 2238:22, 2251:17, 2283:1, 2284:8, 2310:2, 2341:5, 2341:7, 2341:9, 2341:11, 2341:15
**cross** [13] - 2183:5, 2221:23, 2302:14, 2314:2, 2314:13, 2316:21, 2331:5, 2331:7, 2335:7, 2335:8, 2335:11, 2335:17, 2340:2
**CROSS-EXAMINATION** [9] - 2216:1, 2238:22, 2251:17, 2283:1, 2284:8, 2341:7, 2341:9, 2341:11, 2341:15
**cross-examination** [3] - 2183:5,

2221:23, 2302:14
**crystal** [2] - 2179:8, 2218:11
**current** [3] - 2155:3, 2155:22, 2156:3
**CURRIE** [1] - 2152:15
**curtailed** [1] - 2325:25
**curve** [1] - 2327:3
**custody** [1] - 2247:13
**cut** [1] - 2325:19

# D

**dad** [1] - 2158:11, 2276:20
**Dallas** [14] - 2157:21, 2157:25, 2158:2, 2174:11, 2189:25, 2190:4, 2190:19, 2210:10, 2210:12, 2210:16, 2210:23, 2223:17, 2296:8
**damaging** [1] - 2336:25
**Damn** [1] - 2158:16
**Darryl** [13] - 2154:10, 2156:8, 2156:20, 2168:15, 2168:24, 2173:5, 2194:22, 2195:14, 2195:20, 2231:24, 2245:13, 2252:19, 2253:22
**DARRYL** [1] - 2156:21
**date** [21] - 2178:16, 2178:18, 2180:18, 2182:17, 2186:24, 2210:9, 2241:3, 2242:6, 2242:19, 2248:19, 2254:5, 2254:8, 2255:7, 2255:8, 2257:4, 2258:21, 2260:14, 2268:18, 2334:1, 2339:22
**dated** [9] - 2244:12, 2260:14, 2261:3, 2263:19, 2268:6, 2281:18, 2285:3, 2305:2, 2311:1
**dates** [5] - 2171:10, 2182:2, 2242:12, 2245:18, 2248:20
**days** [10] - 2154:24, 2155:21, 2185:15, 2186:23, 2187:3, 2191:10, 2321:25, 2323:16
**deal** [4] - 2193:5, 2201:18, 2222:7, 2228:14

**dealing** [2] - 2290:25, 2327:22
**debate** [1] - 2303:22
**decade** [1] - 2217:9
**December** [1] - 2168:3
**decide** [6] - 2155:18, 2163:24, 2170:12, 2171:6, 2175:8, 2338:3
**decided** [7] - 2164:24, 2172:10, 2220:4, 2297:18, 2319:12, 2323:19, 2339:4
**deciding** [1] - 2173:24
**decision** [6] - 2154:23, 2163:24, 2217:23, 2225:19, 2339:14
**default** [8] - 2191:7, 2191:18, 2192:9, 2296:1, 2296:13, 2296:16, 2305:15, 2305:16
**Default** [4] - 2167:1, 2190:12, 2190:23, 2191:14
**defect** [1] - 2190:7
**DEFENDANT** [1] - 2342:20
**defendant** [4] - 2173:17, 2297:10, 2297:14, 2327:6
**Defendant** [2] - 2152:21, 2153:1
**defendant's** [2] - 2207:4, 2302:7
**DEFENDANT'S** [6] - 2342:6, 2342:10, 2342:12, 2342:14, 2342:16, 2342:18
**Defendant's** [7] - 2195:7, 2252:10, 2255:5, 2260:24, 2263:3, 2272:22, 2279:13
**Defendants** [1] - 2152:9
**defendants** [2] - 2329:16, 2338:18
**Defense** [3] - 2242:2, 2244:10, 2250:16
**DEFENSE** [3] - 2342:7, 2342:8, 2342:9
**defense** [8] - 2283:19, 2302:9, 2332:21, 2335:25, 2336:25, 2337:13, 2338:18, 2338:24
**definitely** [4] -

2279:23, 2335:11, 2336:20, 2337:18
**delay** [2] - 2319:25, 2324:10
**demand** [1] - 2301:9
**demanded** [1] - 2338:10
**demands** [1] - 2301:5
**demonstrated** [1] - 2204:21
**demonstrative** [1] - 2302:22
**denies** [1] - 2231:22
**depicted** [1] - 2316:15
**depicts** [1] - 2315:19
**depo** [1] - 2248:19
**deposed** [3] - 2235:25, 2236:8, 2240:20
**deposit** [1] - 2195:16
**deposition** [27] - 2224:22, 2237:1, 2237:4, 2237:9, 2237:13, 2240:11, 2240:15, 2240:25, 2241:3, 2241:19, 2242:19, 2243:8, 2243:13, 2243:23, 2245:15, 2245:17, 2246:11, 2247:8, 2247:15, 2247:22, 2248:4, 2248:8, 2250:5, 2251:24, 2299:19, 2300:6, 2300:8
**Derek** [1] - 2161:15
**describe** [4] - 2161:24, 2203:6, 2222:4, 2306:2
**described** [1] - 2222:3
**designation** [1] - 2307:16
**desire** [2] - 2300:16, 2335:5
**despite** [1] - 2233:9
**destination** [1] - 2276:7
**detail** [2] - 2297:3, 2327:15
**detailed** [1] - 2232:2
**develop** [1] - 2163:18
**development** [4] - 2202:8, 2227:4, 2228:6, 2238:3
**device** [2] - 2194:1, 2194:4
**deVries** [1] - 2235:6
**Diamonte** [8] - 2204:11, 2268:21, 2269:2, 2269:3,

2269:5, 2269:8, 2269:12, 2271:8

**difference** [4] - 2314:10, 2314:12, 2326:21, 2337:15

**different** [25] - 2157:18, 2160:4, 2160:9, 2160:20, 2174:17, 2174:19, 2175:20, 2177:20, 2201:1, 2217:19, 2217:20, 2225:23, 2280:19, 2308:12, 2309:5, 2310:14, 2310:19, 2311:17, 2311:18, 2311:20, 2312:7, 2312:16, 2313:7

**differently** [1] - 2311:17

**dig** [1] - 2158:20

**diminishing** [1] - 2231:18

**dire** [2] - 2275:23, 2283:12

**DIRE** [4] - 2264:13, 2276:1, 2283:14, 2341:13

**DIRECT** [2] - 2157:2, 2341:3

**direct** [26] - 2189:13, 2193:23, 2195:16, 2200:2, 2201:11, 2203:10, 2206:23, 2209:15, 2211:12, 2219:4, 2219:9, 2220:4, 2220:23, 2221:20, 2223:23, 2225:9, 2226:9, 2238:2, 2239:15, 2239:23, 2243:19, 2244:22, 2334:16, 2334:17, 2337:6, 2337:17

**directing** [1] - 2241:11

**direction** [4] - 2160:20, 2179:18, 2181:7, 2326:6

**directly** [10] - 2196:18, 2196:25, 2225:2, 2225:13, 2238:6, 2238:15, 2241:16, 2257:6, 2307:14, 2314:4

**disagree** [1] - 2154:19

**disclose** [2] - 2207:17, 2337:22

**disclosure** [3] - 2206:20, 2338:8, 2338:11

**discovery** [6] - 2206:19, 2266:9, 2266:10, 2327:24, 2334:1, 2336:12

**discuss** [8] - 2181:24, 2201:12, 2221:24, 2276:24, 2278:10, 2284:6, 2285:17, 2300:23

**discussed** [17] - 2166:2, 2179:5, 2202:7, 2225:20, 2256:9, 2256:12, 2256:14, 2256:23, 2258:4, 2270:2, 2274:17, 2287:8, 2287:9, 2292:6, 2296:21, 2318:15, 2337:19

**discussing** [10] - 2242:18, 2243:9, 2261:18, 2263:11, 2263:20, 2264:3, 2268:25, 2273:13, 2273:16, 2284:15

**discussion** [9] - 2162:19, 2256:7, 2263:16, 2270:7, 2283:5, 2287:25, 2288:10, 2330:21, 2337:17

**discussions** [6] - 2192:8, 2257:23, 2268:20, 2280:25, 2288:7, 2323:14

**display** [2] - 2242:5, 2268:2

**displayed** [1] - 2285:6

**dispute** [5] - 2223:21, 2224:5, 2288:16, 2290:6, 2321:5

**distracting** [1] - 2209:2

**DISTRICT** [2] - 2152:1, 2152:1

**District** [3] - 2152:12, 2229:23, 2299:22

**ditches** [1] - 2158:20

**diverted** [1] - 2336:14

**Dmitri** [1] - 2160:25

**doctor** [6] - 2266:24, 2267:15, 2325:8, 2325:9, 2339:15, 2339:20

**doctored** [4] - 2325:1, 2326:21, 2327:1, 2327:2

**document** [137] - 2168:20, 2188:21, 2188:24, 2190:12,

2190:13, 2190:17, 2190:18, 2190:22, 2193:8, 2193:12, 2193:16, 2194:7, 2194:14, 2195:2, 2195:10, 2195:21, 2197:20, 2197:24, 2198:4, 2198:8, 2198:12, 2198:16, 2199:1, 2199:2, 2206:16, 2209:4, 2209:13, 2209:16, 2211:10, 2211:12, 2211:14, 2212:3, 2212:5, 2212:13, 2212:15, 2212:18, 2212:23, 2212:25, 2213:1, 2213:5, 2213:6, 2213:8, 2213:19, 2213:21, 2213:22, 2214:14, 2214:15, 2215:3, 2215:14, 2215:16, 2215:19, 2215:21, 2215:23, 2229:15, 2229:17, 2229:19, 2232:10, 2233:4, 2233:7, 2234:6, 2236:4, 2236:12, 2236:15, 2236:17, 2262:24, 2267:10, 2267:15, 2278:8, 2289:12, 2289:13, 2289:14, 2289:23, 2290:5, 2290:10, 2290:18, 2294:8, 2295:8, 2295:13, 2300:20, 2301:3, 2301:13, 2301:18, 2301:19, 2301:20, 2305:7, 2305:12, 2305:20, 2305:23, 2306:3, 2306:7, 2306:14, 2306:25, 2307:5, 2307:11, 2307:14, 2307:18, 2307:21, 2307:22, 2308:1, 2308:2, 2308:3, 2308:10, 2308:12, 2309:18, 2310:5, 2310:8, 2312:19, 2312:20, 2313:4, 2315:21, 2320:18, 2320:20, 2320:21, 2320:25, 2321:1, 2321:3, 2326:8, 2328:3, 2329:11, 2330:1, 2330:11, 2330:12, 2330:14, 2330:18, 2332:4, 2332:10,

2333:2, 2333:6, 2333:9, 2333:24, 2334:17, 2334:21, 2337:23, 2338:19, 2340:1

**Document** [1] - 2189:14

**documentation** [3] - 2274:23, 2279:20, 2328:14

**documents** [60] - 2167:8, 2185:16, 2185:20, 2186:22, 2186:23, 2187:9, 2187:19, 2189:1, 2189:14, 2191:10, 2193:13, 2194:10, 2195:23, 2195:24, 2196:5, 2196:6, 2196:12, 2197:8, 2197:9, 2197:12, 2197:19, 2202:22, 2203:1, 2203:7, 2204:3, 2206:18, 2214:3, 2275:1, 2275:5, 2275:16, 2278:9, 2294:5, 2299:23, 2300:5, 2301:5, 2301:10, 2301:11, 2301:12, 2301:15, 2301:24, 2302:3, 2302:8, 2303:24, 2306:17, 2306:19, 2307:6, 2307:8, 2307:10, 2314:7, 2320:13, 2320:16, 2321:3, 2324:21, 2324:25, 2330:22, 2331:5, 2335:23, 2336:3, 2338:16, 2338:17

**dollars** [3] - 2168:3, 2327:17, 2329:1

**Don** [1] - 2160:2

**done** [5] - 2252:21, 2293:2, 2321:19, 2329:20, 2337:6

**door** [3] - 2182:7, 2276:7, 2336:24

**dot** [1] - 2283:18

**down** [16] - 2155:5, 2158:12, 2160:8, 2166:7, 2189:7, 2217:16, 2241:1, 2248:8, 2270:6, 2282:9, 2286:23, 2297:15, 2298:5, 2318:20, 2323:13, 2324:13

**downright** [1] - 2223:1

**dozen** [1] - 2321:23

**dozens** [2] - 2326:16

**drafted** [5] - 2159:10, 2160:1, 2160:3, 2160:6, 2160:7

**drag** [1] - 2327:25

**draw** [6] - 2212:25, 2213:7, 2213:21, 2215:14, 2231:6, 2308:1

**drawn** [1] - 2229:18

**driver's** [3] - 2313:14, 2313:16, 2313:17

**droning** [1] - 2329:10

**drop** [1] - 2270:6

**dropped** [2] - 2182:13, 2269:21

**DS-1** [2] - 2180:19, 2303:16

**due** [1] - 2328:22

**duly** [1] - 2156:16

**during** [28] - 2158:11, 2158:18, 2158:21, 2160:18, 2161:1, 2162:22, 2187:23, 2188:1, 2188:7, 2189:3, 2189:11, 2189:15, 2192:6, 2194:11, 2206:21, 2208:16, 2219:14, 2219:23, 2221:15, 2224:13, 2237:12, 2257:23, 2276:24, 2278:11, 2292:21, 2296:14, 2300:15, 2306:16

## E

**e-mail** [116] - 2176:20, 2176:25, 2177:3, 2177:4, 2177:6, 2177:17, 2177:20, 2178:7, 2178:18, 2178:19, 2179:6, 2193:9, 2196:9, 2196:13, 2196:24, 2197:12, 2200:15, 2240:22, 2241:15, 2243:20, 2245:9, 2245:22, 2247:2, 2251:22, 2252:13, 2253:10, 2253:12, 2253:18, 2254:15, 2254:20, 2255:8, 2255:9, 2255:19, 2255:21, 2258:9, 2258:16, 2258:17, 2258:18, 2258:25, 2259:7, 2259:19,

2261:1, 2262:15, 2263:10, 2263:19, 2264:1, 2264:2, 2264:15, 2264:18, 2264:24, 2265:2, 2266:14, 2268:4, 2268:6, 2268:8, 2268:15, 2268:25, 2269:4, 2271:19, 2272:5, 2272:14, 2272:25, 2273:2, 2273:5, 2273:7, 2273:10, 2274:9, 2274:13, 2274:22, 2275:6, 2276:13, 2281:11, 2281:16, 2281:18, 2281:22, 2282:11, 2282:13, 2283:5, 2283:16, 2283:17, 2283:21, 2284:10, 2284:11, 2284:12, 2284:14, 2285:2, 2285:3, 2285:5, 2285:6, 2285:9, 2297:7, 2315:19, 2321:6, 2321:10, 2323:5, 2323:8, 2323:10, 2325:15, 2325:21, 2326:23, 2328:1, 2328:15, 2329:3, 2329:25, 2330:16, 2331:21, 2331:24, 2339:20, 2339:21, 2339:22, 2340:3

**e-mailed** [1] - 2253:1
**e-mails** [18] - 2256:22, 2257:7, 2261:16, 2261:23, 2267:2, 2267:4, 2284:1, 2324:24, 2325:1, 2325:5, 2325:7, 2325:9, 2326:16, 2326:20, 2326:22, 2328:20, 2328:23, 2339:3
**early** [1] - 2338:10
**easier** [3] - 2162:10, 2220:12, 2274:7
**easiest** [1] - 2330:4
**easily** [1] - 2278:9
**East** [1] - 2195:12
**EASTERN** [1] - 2152:1
**Edmonton** [1] - 2276:7
**education** [1] - 2162:7
**effect** [1] - 2200:17
**effort** [9] - 2220:16, 2232:24, 2268:21, 2300:16, 2317:8,

2323:17, 2323:22, 2334:18, 2337:7
**efforts** [5] - 2231:12, 2269:1, 2316:7, 2317:3, 2323:24
**eight** [2] - 2188:23, 2194:20
**either** [19] - 2188:13, 2197:8, 2200:14, 2216:13, 2225:2, 2238:6, 2238:15, 2240:21, 2246:4, 2254:3, 2256:19, 2257:6, 2259:16, 2261:15, 2261:23, 2289:14, 2291:3, 2307:12, 2335:18
**elaborate** [1] - 2335:17
**elect** [2] - 2223:22, 2270:17
**elected** [1] - 2224:4
**element** [1] - 2201:17
**elicit** [1] - 2331:3
**eliminate** [1] - 2329:17
**ELLEN** [1] - 2153:8
**email** [2] - 2246:2, 2249:24
**embarrassed** [1] - 2276:21
**emphasize** [1] - 2155:24
**employee** [2] - 2228:2, 2228:10
**encouraging** [1] - 2324:13
**end** [7] - 2161:19, 2182:16, 2211:5, 2248:18, 2321:17, 2321:18, 2329:10
**End** [2] - 2267:20, 2278:13
**endeavor** [2] - 2302:25, 2335:24
**endeavoring** [1] - 2302:21
**endlessly** [1] - 2321:16
**engage** [1] - 2317:8
**enjoying** [2] - 2245:14, 2252:20
**enter** [1] - 2155:11
**Enterprises** [1] - 2173:14
**enters** [3] - 2209:8, 2251:12, 2304:6
**enthusiasm** [2] - 2206:10, 2233:9
**entire** [11] - 2212:24,

2213:6, 2213:21, 2215:14, 2229:17, 2236:14, 2246:18, 2253:18, 2266:10, 2290:18, 2307:25
**entirely** [1] - 2328:10
**entitled** [10] - 2167:1, 2167:2, 2212:24, 2213:6, 2213:20, 2215:13, 2229:16, 2236:14, 2307:21, 2307:25
**entity** [3] - 2172:11, 2269:23, 2270:16
**entry** [1] - 2168:21
**equivocate** [1] - 2337:3
**equivocated** [1] - 2337:3
**equivocation** [1] - 2302:16
**err** [1] - 2319:11
**especially** [1] - 2281:14
**essentially** [1] - 2205:21
**establish** [4] - 2232:11, 2321:10, 2323:2, 2330:6
**establishing** [2] - 2327:24, 2328:3
**estate** [2] - 2177:21, 2222:15
**estimate** [2] - 2155:21, 2319:22
**estimation** [1] - 2197:7
**et** [1] - 2303:21
**etcetera** [2] - 2270:19, 2271:2
**Eufora** [66] - 2169:17, 2169:19, 2169:21, 2170:13, 2170:20, 2171:6, 2171:13, 2171:20, 2172:10, 2172:19, 2173:16, 2173:25, 2177:21, 2178:25, 2179:13, 2179:16, 2216:19, 2216:20, 2216:25, 2217:5, 2217:13, 2217:18, 2217:24, 2218:14, 2218:20, 2218:24, 2225:16, 2225:19, 2225:20, 2231:13, 2231:17, 2231:19, 2231:24, 2232:18, 2234:8, 2235:18, 2244:18, 2252:16, 2254:4,

2255:24, 2255:25, 2256:5, 2267:11, 2267:14, 2280:3, 2280:5, 2287:10, 2287:18, 2288:1, 2288:8, 2290:14, 2290:15, 2290:23, 2291:3, 2291:7, 2291:15, 2292:15, 2292:23, 2293:14, 2293:16, 2318:10, 2323:15, 2323:18, 2323:23, 2332:5, 2332:15
**Eufora's** [1] - 2288:11
**evening** [1] - 2331:4
**Event** [1] - 2190:12
**event** [2] - 2154:15, 2282:1
**events** [1] - 2155:23
**evidence** [52] - 2166:14, 2167:9, 2168:12, 2172:4, 2173:1, 2175:13, 2177:12, 2193:9, 2195:8, 2195:10, 2209:14, 2209:20, 2232:10, 2242:2, 2244:10, 2250:16, 2252:9, 2252:11, 2255:6, 2258:7, 2258:8, 2258:15, 2258:16, 2258:24, 2259:24, 2260:18, 2260:25, 2263:4, 2264:10, 2266:15, 2267:15, 2268:3, 2268:5, 2268:15, 2272:21, 2272:23, 2272:25, 2284:10, 2293:19, 2296:23, 2304:20, 2304:25, 2320:7, 2320:19, 2320:21, 2320:22, 2325:20, 2326:17, 2329:4, 2332:25, 2333:4, 2338:22
**EVIDENCE** [9] - 2342:6, 2342:7, 2342:8, 2342:9, 2342:11, 2342:13, 2342:15, 2342:17, 2342:19
**evidentiary** [1] - 2205:6
**exact** [14] - 2182:17, 2186:24, 2189:5, 2198:21, 2199:4, 2199:5, 2218:2, 2254:5, 2254:8,

2275:13, 2278:25, 2312:17, 2325:15, 2330:12
**exactly** [16] - 2166:5, 2180:16, 2192:16, 2210:9, 2235:19, 2254:5, 2254:11, 2255:25, 2256:11, 2256:19, 2270:5, 2276:17, 2292:7, 2295:24, 2310:20, 2311:10
**EXAMINATION** [26] - 2157:2, 2185:10, 2216:1, 2238:22, 2251:17, 2264:13, 2276:1, 2283:1, 2283:14, 2284:8, 2293:11, 2299:12, 2304:13, 2310:2, 2318:6, 2341:3, 2341:5, 2341:7, 2341:9, 2341:11, 2341:13, 2341:15, 2341:17, 2341:19, 2341:21, 2341:23
**examination** [9] - 2183:5, 2189:13, 2200:2, 2221:23, 2302:14, 2306:17, 2314:2, 2314:14, 2316:21
**examine** [4] - 2243:17, 2264:1, 2331:5, 2340:2
**examined** [1] - 2156:16
**example** [3] - 2168:3, 2323:13, 2328:14
**examples** [3] - 2320:11, 2322:10, 2324:9
**excellent** [2] - 2278:3, 2331:12
**exception** [1] - 2324:1
**excess** [1] - 2206:18
**exchange** [4] - 2281:16, 2281:19, 2281:22, 2282:13
**exchanges** [2] - 2200:15, 2281:12
**exchanging** [1] - 2284:1
**Exclusive** [1] - 2167:3
**excuse** [6] - 2154:23, 2155:23, 2156:1, 2159:25, 2170:21, 2206:11
**excused** [1] - 2318:22
**excusing** [1] - 2155:4

execute [1] - 2260:2
executed [1] - 2328:16
EXHIBIT [12] - 2342:2, 2342:3, 2342:6, 2342:7, 2342:8, 2342:9, 2342:10, 2342:12, 2342:14, 2342:16, 2342:18, 2342:20
Exhibit [58] - 2166:14, 2167:10, 2168:13, 2171:3, 2171:8, 2171:24, 2172:4, 2173:2, 2175:14, 2176:18, 2177:12, 2178:16, 2193:9, 2194:8, 2194:10, 2195:3, 2195:6, 2195:7, 2196:4, 2199:16, 2209:14, 2212:4, 2212:14, 2212:24, 2213:20, 2215:13, 2229:16, 2234:4, 2236:5, 2242:2, 2244:10, 2250:16, 2252:10, 2253:10, 2255:5, 2260:24, 2263:3, 2272:22, 2279:13, 2289:8, 2296:24, 2297:1, 2304:15, 2304:21, 2304:24, 2304:25, 2305:2, 2306:8, 2307:18, 2307:21, 2308:15, 2308:17, 2310:4, 2310:5, 2310:7, 2311:1, 2325:21
exhibit [17] - 2215:17, 2255:14, 2262:9, 2263:23, 2278:18, 2279:15, 2290:1, 2307:16, 2307:17, 2308:15, 2309:2, 2309:5, 2309:8, 2309:20, 2310:6, 2313:10
exhibits [13] - 2274:20, 2303:22, 2303:23, 2310:20, 2325:20, 2325:25, 2327:23, 2329:14, 2329:15, 2329:16, 2333:16, 2339:12, 2339:15
Exhibits [3] - 2183:7, 2276:11, 2307:7
exits [2] - 2205:2, 2205:19

expect [7] - 2194:18, 2327:15, 2333:18, 2334:20, 2338:8, 2338:10
expected [1] - 2335:18
expedite [1] - 2333:10
expense [1] - 2250:1
expenses [9] - 2243:11, 2248:3, 2248:9, 2248:12, 2249:12, 2249:19, 2253:7, 2281:17, 2283:7
expensive [1] - 2223:23
experience [2] - 2158:19, 2331:18
experienced [1] - 2319:16, 2322:1
expert [1] - 2336:12
explain [2] - 2323:9, 2340:3
explained [1] - 2174:25
explanation [2] - 2169:25, 2319:22
expletive [1] - 2242:12
extent [5] - 2194:5, 2266:1, 2338:12, 2338:21, 2340:4
exterior [1] - 2315:10
extra [1] - 2318:21

**F**

fabricated [1] - 2278:8
fact [14] - 2178:11, 2178:12, 2192:8, 2199:19, 2201:11, 2285:2, 2314:18, 2316:3, 2319:7, 2321:5, 2321:6, 2321:10, 2330:12, 2339:24
factors [2] - 2221:24, 2222:3
fair [13] - 2169:4, 2175:16, 2189:24, 2190:2, 2190:4, 2200:7, 2211:3, 2211:7, 2218:4, 2247:12, 2253:16, 2313:8, 2320:4
fairness [1] - 2338:24
faith [2] - 2328:6, 2328:9
fake [1] - 2330:14
Falcon [29] - 2177:22, 2179:25, 2263:15,

2268:5, 2270:3, 2271:4, 2272:16, 2273:14, 2273:17, 2274:10, 2274:11, 2274:15, 2274:16, 2274:24, 2275:5, 2275:17, 2276:9, 2276:16, 2278:22, 2279:9, 2279:11, 2281:14, 2282:15, 2283:7, 2314:5, 2314:8, 2314:18, 2316:11, 2316:14
false [1] - 2206:1
falsely [1] - 2233:7
falsity [1] - 2302:23
familiar [5] - 2163:12, 2169:17, 2174:6, 2312:8, 2312:10
family [6] - 2201:1, 2242:17, 2245:13, 2252:20, 2271:13, 2316:9
far [8] - 2158:7, 2174:21, 2192:1, 2206:16, 2211:9, 2211:12, 2281:6, 2319:21
farm [1] - 2163:17
fashion [1] - 2334:9
fast [1] - 2166:13
fault [1] - 2319:25
fax [1] - 2273:10
February [5] - 2166:23, 2168:8, 2189:20, 2189:21, 2190:2
federal [1] - 2191:23
Federal [3] - 2152:16, 2153:8, 2186:17
fee [5] - 2161:22, 2161:25, 2162:1, 2223:8, 2252:22
fees [14] - 2174:17, 2175:4, 2175:5, 2175:6, 2175:7, 2175:20, 2181:7, 2226:10, 2226:11, 2249:19, 2270:18, 2297:16, 2297:17
fellow [1] - 2287:21
felt [1] - 2326:7
feud [3] - 2281:4, 2287:15, 2287:24
few [16] - 2162:17, 2166:2, 2185:15, 2186:23, 2187:3, 2191:10, 2217:19, 2217:20, 2234:11, 2239:3, 2239:13,

2240:10, 2243:7, 2251:20, 2274:2, 2322:10
fictitious [2] - 2301:17, 2301:18
fight [1] - 2298:7
figure [2] - 2287:23, 2317:3
figuring [1] - 2317:9
filed [2] - 2232:12, 2268:23
files [1] - 2231:21
filing [3] - 2229:22, 2234:6, 2246:19
fill [1] - 2154:8
final [6] - 2158:2, 2171:6, 2171:13, 2171:18, 2248:24, 2335:25
finalized [2] - 2170:23, 2171:21
finally [8] - 2174:5, 2181:18, 2182:9, 2235:14, 2237:23, 2248:23, 2279:17, 2326:3
financial [17] - 2160:12, 2161:14, 2161:17, 2161:19, 2162:2, 2162:6, 2162:7, 2162:18, 2200:20, 2219:9, 2220:17, 2223:4, 2224:7, 2231:21, 2286:15, 2299:6, 2299:8
fine [4] - 2197:9, 2208:8, 2209:5, 2313:1
finish [2] - 2196:19, 2248:16, 2264:21, 2269:19, 2274:1, 2292:9, 2321:16
finished [4] - 2158:8, 2250:19, 2296:9, 2318:8
fire [1] - 2302:17
fired [2] - 2226:23, 2227:1
firing [1] - 2227:10
firm [6] - 2161:17, 2197:16, 2237:15, 2244:24, 2250:4, 2317:21
firms [1] - 2298:19
first [53] - 2156:15, 2157:17, 2158:25, 2159:2, 2159:11, 2159:12, 2159:25, 2160:12, 2166:25,

2167:4, 2167:6, 2167:8, 2167:14, 2168:2, 2168:17, 2169:10, 2169:19, 2178:5, 2185:16, 2185:20, 2187:9, 2187:20, 2190:13, 2191:1, 2191:6, 2192:14, 2193:14, 2193:17, 2198:25, 2205:9, 2205:14, 2217:14, 2217:15, 2219:9, 2221:9, 2221:12, 2221:13, 2221:15, 2223:3, 2229:18, 2240:14, 2245:9, 2248:19, 2281:21, 2290:10, 2290:17, 2297:9, 2299:14, 2299:25, 2305:21, 2310:8, 2324:23, 2329:6
five [8] - 2157:21, 2319:10, 2319:12, 2319:18, 2319:23, 2320:23, 2322:8, 2339:11
five-week [2] - 2319:23, 2322:8
flags [1] - 2168:6
flew [14] - 2187:14, 2269:14, 2275:13, 2314:15, 2314:18, 2314:20, 2314:22, 2315:6, 2315:8, 2315:9, 2315:13, 2315:24, 2316:2
flight [1] - 2248:8, 2275:17, 2315:3
fly [4] - 2271:13, 2274:6, 2316:8
flying [4] - 2182:18, 2278:22, 2279:1, 2316:5
focus [3] - 2163:10, 2170:24, 2292:25
focused [6] - 2162:22, 2187:18, 2188:4, 2188:6, 2198:15, 2201:6
focusing [1] - 2164:23
folks [1] - 2336:1
followed [2] - 2288:20, 2335:18
following [17] - 2193:1, 2198:6, 2230:3, 2231:1, 2233:12, 2234:1, 2237:23, 2238:1, 2238:5, 2238:16,

2250:24, 2252:18, 2254:17, 2265:6, 2277:2, 2285:5, 2326:5
**follows** [2] - 2156:17, 2302:2
**forged** [9] - 2301:6, 2301:14, 2301:17, 2301:18, 2301:21, 2301:24, 2302:4, 2302:8, 2324:25
**forgeries** [1] - 2336:17
**forgery** [9] - 2334:9, 2335:2, 2337:18, 2338:15, 2338:22, 2338:23
**forging** [1] - 2336:11
**forgot** [1] - 2186:2
**form** [19] - 2172:15, 2179:8, 2199:9, 2199:20, 2199:21, 2202:3, 2202:17, 2208:2, 2208:4, 2227:6, 2256:25, 2271:24, 2274:18, 2282:2, 2283:24, 2297:11, 2305:18, 2305:19
**forth** [1] - 2191:9
**Forum** [1] - 2161:3
**forward** [11] - 2166:13, 2197:11, 2197:13, 2210:24, 2211:2, 2241:8, 2243:17, 2246:6, 2273:8, 2300:20, 2326:1
**forwarded** [2] - 2210:20, 2262:17
**forwarding** [6] - 2210:19, 2211:6, 2243:25, 2251:24, 2252:18, 2255:23
**fought** [1] - 2328:23
**foundation** [3] - 2250:11, 2329:25, 2330:1
**four** [9] - 2155:22, 2188:6, 2188:7, 2188:25, 2204:3, 2301:12, 2319:11, 2320:23, 2334:12
**four-hour** [1] - 2188:7
**fourth** [1] - 2301:18
**frame** [6] - 2180:17, 2180:24, 2199:4, 2199:6, 2219:19, 2249:25
**frankly** [1] - 2190:13
**fraud** [6] - 2231:5,

2232:20, 2232:25, 2323:22, 2323:25, 2329:1
**fraudulent** [4] - 2267:2, 2337:23, 2337:24, 2338:21
**free** [1] - 2206:7
**friend** [2] - 2222:1, 2235:4
**friendly** [1] - 2223:5
**front** [5] - 2178:15, 2276:12, 2299:25, 2314:7, 2314:17
**fuel** [1] - 2270:18
**full** [8] - 2157:17, 2159:5, 2197:20, 2197:23, 2198:4, 2198:16, 2289:8, 2306:5
**functioning** [1] - 2194:1
**fund** [6] - 2169:5, 2169:8, 2176:12, 2247:14, 2297:18, 2298:6
**Fund** [50] - 2174:6, 2174:15, 2174:16, 2174:24, 2175:3, 2175:9, 2175:17, 2176:2, 2176:5, 2176:11, 2178:1, 2178:6, 2178:24, 2179:13, 2179:15, 2179:21, 2180:5, 2180:10, 2226:9, 2237:8, 2239:16, 2239:25, 2243:4, 2243:10, 2246:23, 2247:6, 2249:5, 2249:7, 2249:13, 2249:20, 2253:13, 2255:10, 2256:10, 2256:23, 2257:11, 2257:14, 2258:2, 2259:14, 2262:2, 2263:21, 2264:4, 2271:4, 2271:9, 2271:21, 2280:9, 2281:1, 2281:6, 2281:24, 2322:15, 2325:18
**Fund's** [3] - 2263:11, 2269:1, 2271:6
**fundamental** [2] - 2327:11, 2338:24
**funding** [2] - 2298:18, 2336:14
**Funding** [1] - 2301:15
**funds** [5] - 2174:17, 2195:18, 2237:11,

2237:24, 2243:3

---

# G

**Gaard** [2] - 2332:5, 2332:25
**Gaarn** [3] - 2154:9, 2321:25, 2332:19
**Galioto** [2] - 2186:17, 2192:3
**game** [1] - 2161:1
**games** [1] - 2159:6
**general** [3] - 2161:24, 2207:5, 2262:8
**generally** [1] - 2201:12
**generations** [1] - 2336:6
**gentleman** [2] - 2182:10, 2186:11
**gentlemen** [1] - 2250:17
**GFS** [1] - 2226:9
**given** [5] - 2207:5, 2316:15, 2324:19, 2338:3, 2338:19
**Glen** [1] - 2235:11
**Glenn** [1] - 2165:22
**global** [1] - 2178:3
**Global** [58] - 2174:6, 2174:14, 2174:16, 2174:24, 2175:2, 2175:8, 2175:17, 2176:1, 2176:4, 2176:11, 2178:1, 2178:6, 2178:24, 2179:12, 2179:15, 2179:20, 2180:5, 2180:10, 2237:7, 2237:11, 2239:16, 2239:25, 2243:4, 2246:19, 2246:23, 2247:6, 2247:14, 2249:4, 2249:6, 2249:13, 2249:16, 2249:20, 2253:12, 2255:10, 2256:9, 2256:23, 2257:11, 2257:13, 2258:1, 2259:14, 2262:2, 2263:11, 2263:20, 2264:4, 2268:21, 2269:1, 2271:4, 2271:6, 2271:9, 2271:21, 2279:19, 2280:9, 2280:12, 2280:25, 2281:5, 2281:24, 2322:15, 2325:18
**Globe** [1] - 2246:13

**Gmail** [11] - 2326:16, 2330:2, 2330:6, 2330:24, 2339:20, 2339:24, 2340:1, 2340:2, 2340:6, 2340:10
**gmail** [4] - 2266:17, 2266:18, 2266:22, 2266:24
**go-to** [1] - 2203:25
**golf** [7] - 2174:22, 2175:6, 2217:15, 2217:25, 2225:21, 2269:8, 2297:22
**Gonchar** [2] - 2165:22, 2234:13
**Google** [9] - 2325:3, 2325:5, 2325:6, 2325:7, 2325:12, 2339:11, 2339:17, 2340:9, 2340:10
**GOVERNMENT** [2] - 2342:2, 2342:3
**government** [69] - 2153:19, 2153:22, 2156:7, 2156:8, 2171:23, 2172:3, 2177:7, 2191:3, 2219:4, 2239:24, 2301:6, 2301:11, 2301:13, 2301:16, 2301:22, 2302:2, 2302:4, 2302:6, 2302:8, 2305:23, 2306:3, 2306:17, 2307:1, 2311:11, 2317:19, 2318:8, 2320:6, 2320:19, 2321:20, 2322:4, 2322:5, 2322:10, 2322:14, 2323:6, 2323:12, 2323:15, 2323:18, 2324:5, 2325:4, 2325:11, 2325:12, 2326:14, 2326:17, 2326:18, 2326:19, 2326:25, 2330:2, 2330:13, 2330:21, 2331:6, 2333:17, 2333:19, 2333:24, 2334:8, 2334:12, 2334:21, 2337:11, 2337:19, 2337:22, 2338:8, 2338:13, 2339:10, 2339:18, 2339:19, 2339:25, 2340:2, 2340:4
**Government** [23] - 2152:15, 2167:9,

2168:12, 2171:2, 2171:8, 2171:24, 2172:4, 2173:1, 2175:13, 2176:17, 2177:12, 2178:16, 2183:7, 2194:11, 2205:25, 2206:6, 2206:14, 2208:18, 2253:10, 2266:15, 2296:24, 2296:25, 2334:14
**Government's** [3] - 2193:8, 2205:12, 2209:14
**government's** [6] - 2307:12, 2328:13, 2328:17, 2329:4, 2334:2, 2338:19
**grade** [2] - 2158:8, 2162:6
**grand** [20] - 2181:19, 2181:21, 2182:15, 2184:12, 2185:5, 2303:16, 2303:19, 2303:20, 2303:23, 2309:4, 2309:5, 2309:8, 2309:13, 2309:20, 2310:11, 2310:12, 2310:23, 2311:14, 2311:23, 2333:20
**Grand** [7] - 2299:21, 2300:4, 2300:8, 2300:12, 2310:5, 2310:6, 2310:25
**grandstanding** [2] - 2205:23, 2206:13
**Grdina** [1] - 2154:10
**great** [3] - 2163:17, 2208:19, 2222:11
**Greg** [1] - 2235:6
**grounds** [8] - 2266:12, 2322:13, 2322:23, 2323:16, 2326:19, 2327:7, 2329:7
**group** [8] - 2246:18, 2258:18, 2259:1, 2268:7, 2269:11, 2272:15, 2284:11, 2287:17
**Group** [6] - 2172:12, 2172:21, 2172:24, 2173:4, 2219:4, 2219:6
**Gruber** [4] - 2237:15, 2237:17, 2237:20, 2244:25
**grunt** [1] - 2158:20
**GSF** [4] - 2181:8, 2297:6, 2297:8,

2328:20
**guess** [35] - 2162:10, 2162:16, 2166:7, 2171:7, 2179:7, 2205:25, 2214:19, 2224:10, 2224:17, 2236:10, 2245:21, 2246:8, 2248:15, 2250:4, 2250:8, 2254:18, 2254:23, 2255:12, 2261:14, 2262:13, 2268:11, 2271:10, 2275:19, 2276:10, 2278:7, 2282:16, 2283:3, 2287:2, 2290:2, 2290:3, 2298:3, 2312:11, 2313:9, 2338:2
**guys** [5] - 2280:3, 2280:15, 2280:17, 2280:18, 2280:22

## H

**Hail** [3] - 2237:15, 2237:20, 2244:25
**HALEY** [95] - 2152:21, 2152:23, 2154:3, 2154:22, 2155:8, 2161:9, 2165:1, 2167:15, 2172:2, 2172:13, 2172:16, 2177:9, 2179:1, 2179:3, 2179:7, 2179:11, 2183:6, 2185:9, 2185:11, 2186:21, 2189:8, 2189:12, 2195:2, 2196:19, 2196:21, 2204:24, 2205:1, 2205:5, 2205:11, 2205:15, 2206:3, 2206:10, 2207:13, 2208:18, 2209:1, 2209:6, 2209:12, 2212:20, 2212:22, 2213:10, 2216:2, 2226:24, 2227:7, 2227:13, 2227:14, 2228:20, 2229:14, 2231:11, 2233:9, 2234:2, 2234:11, 2234:12, 2235:21, 2235:22, 2238:13, 2239:10, 2241:25, 2244:7, 2250:14, 2255:3, 2260:20, 2260:22, 2263:1, 2272:20, 2283:23, 2294:14, 2299:11,

2299:13, 2299:20, 2300:19, 2300:24, 2301:2, 2303:8, 2303:22, 2304:10, 2304:14, 2304:20, 2307:15, 2308:12, 2309:14, 2309:19, 2310:3, 2311:7, 2311:24, 2312:3, 2313:2, 2317:14, 2318:3, 2333:22, 2337:10, 2338:2, 2340:12, 2341:6, 2341:20, 2341:22
**Haley** [26] - 2154:4, 2154:5, 2185:8, 2185:12, 2205:23, 2207:15, 2209:11, 2213:9, 2244:24, 2294:4, 2295:3, 2295:12, 2295:20, 2296:18, 2299:1, 2299:10, 2303:17, 2304:9, 2309:3, 2309:6, 2317:12, 2332:13, 2333:12, 2335:14, 2336:21, 2337:4
**half** [9] - 2157:16, 2158:14, 2159:4, 2167:6, 2169:13, 2188:23, 2188:25, 2202:23, 2319:5
**hall** [1] - 2161:2
**hand** [8] - 2156:11, 2167:9, 2168:12, 2180:19, 2188:23, 2188:24, 2259:9, 2275:2
**Handing** [3] - 2166:15, 2167:11, 2168:14, 2171:4, 2175:15, 2176:19, 2304:16, 2306:9
**handing** [3] - 2167:17, 2180:23, 2308:20
**handle** [1] - 2154:18
**handling** [3] - 2246:5, 2246:19, 2246:22
**hands** [1] - 2193:5
**handwrite** [1] - 2307:16
**handwriting** [2] - 2294:1, 2308:7
**handwritten** [2] - 2207:1, 2208:13
**hangar** [3] - 2254:7, 2280:4, 2298:17
**hangars** [2] - 2179:22, 2256:16

**hanger** [2] - 2298:11, 2298:19
**hangs** [1] - 2208:8
**happy** [3] - 2206:24, 2207:18, 2307:7
**hard** [1] - 2310:6
**Hawaii** [29] - 2163:11, 2163:14, 2164:13, 2164:23, 2164:24, 2164:25, 2165:4, 2201:16, 2202:7, 2202:9, 2202:11, 2202:15, 2203:10, 2216:5, 2216:7, 2216:14, 2222:15, 2222:18, 2222:19, 2222:21, 2227:3, 2228:6, 2228:14, 2228:23, 2229:7, 2238:3, 2293:18, 2296:19, 2323:3
**Hawaiian** [3] - 2165:9, 2165:11, 2165:15
**Haynie** [2] - 2190:3, 2190:19
**HAYNIE** [1] - 2190:3
**head** [1] - 2321:22
**header** [5] - 2168:18, 2244:15, 2253:3, 2258:8, 2263:5
**headers** [1] - 2262:7
**heading** [1] - 2215:15
**headquartered** [1] - 2280:5
**hear** [3] - 2163:14, 2280:15, 2303:7
**heard** [6] - 2174:14, 2280:17, 2324:22, 2330:9, 2332:17, 2334:5
**hearing** [1] - 2192:14
**hearsay** [6] - 2322:23, 2323:15, 2323:19, 2324:1, 2327:7, 2327:9
**heated** [1] - 2328:8
**help** [14] - 2159:21, 2159:23, 2161:17, 2246:3, 2246:8, 2248:23, 2256:8, 2275:16, 2279:2, 2282:5, 2282:13, 2289:16, 2292:19, 2299:2
**helped** [3] - 2228:11, 2246:10, 2282:11
**helpful** [1] - 2326:3
**helping** [1] - 2159:16
**helps** [4] - 2279:15, 2289:21, 2292:17,

2293:5
**hence** [1] - 2280:12
**hesitate** [1] - 2279:25
**high** [4] - 2160:1, 2160:2, 2221:11, 2222:6
**highest** [1] - 2269:22
**highlighted** [5] - 2270:9, 2290:11, 2292:11, 2292:20, 2293:3
**Highway** [1] - 2152:22
**himself** [2] - 2161:3, 2161:13
**hire** [1] - 2299:5
**hired** [1] - 2299:1
**hiring** [1] - 2161:19
**history** [4] - 2296:25, 2317:19, 2317:23
**hit** [1] - 2333:18
**Hockey** [5] - 2225:1, 2234:17, 2235:7, 2235:10, 2235:12
**hockey** [27] - 2157:9, 2158:6, 2158:8, 2158:10, 2158:25, 2161:3, 2161:16, 2162:7, 2162:22, 2163:2, 2165:17, 2165:18, 2165:20, 2176:7, 2182:4, 2182:12, 2201:2, 2231:13, 2231:15, 2234:16, 2234:21, 2235:5, 2235:17, 2246:24, 2259:13, 2273:23
**holding** [3] - 2188:22, 2188:24, 2291:7
**home** [5] - 2158:23, 2187:1, 2187:17, 2275:15, 2318:25
**homes** [1] - 2224:11
**honestly** [1] - 2285:8
**honeymoon** [1] - 2222:22
**Honor** [76] - 2153:18, 2153:21, 2154:3, 2154:12, 2154:20, 2154:21, 2154:22, 2154:23, 2155:8, 2157:1, 2165:3, 2172:1, 2177:10, 2183:8, 2184:2, 2185:9, 2189:8, 2195:2, 2195:5, 2205:15, 2205:20, 2206:12, 2207:16, 2207:17, 2226:20, 2227:5, 2227:11,

2228:16, 2230:1, 2232:14, 2233:9, 2238:20, 2239:10, 2241:21, 2244:5, 2244:11, 2250:9, 2251:4, 2251:16, 2252:3, 2260:17, 2262:22, 2266:5, 2268:2, 2275:21, 2283:10, 2283:12, 2283:22, 2285:15, 2285:16, 2286:18, 2289:18, 2293:7, 2297:11, 2298:12, 2298:20, 2300:19, 2301:3, 2301:22, 2302:7, 2304:11, 2304:20, 2307:4, 2311:21, 2311:24, 2317:14, 2325:21, 2326:12, 2328:22, 2330:8, 2332:3, 2333:22, 2335:1, 2337:9, 2337:10, 2338:5
**Honor's** [1] - 2327:4
**HONORABLE** [1] - 2152:12
**hooked** [1] - 2289:2
**hope** [4] - 2209:2, 2245:13, 2252:19, 2339:16
**hoped** [1] - 2269:23
**hopefully** [1] - 2292:8
**hoping** [2] - 2330:10, 2330:23
**Hormovitis** [1] - 2152:8
**hotel** [1] - 2182:23
**hour** [6] - 2158:24, 2188:7, 2189:3, 2242:13, 2251:7, 2251:8
**hours** [13] - 2182:11, 2188:6, 2320:14, 2320:15, 2321:3, 2321:12, 2322:9, 2324:17, 2324:19, 2331:4
**house** [3] - 2189:25, 2204:10, 2210:4
**houses** [1] - 2315:5
**Houston** [4] - 2182:3, 2182:4, 2182:13, 2223:18
**hump** [3] - 2170:23, 2171:6, 2171:21
**hundred** [4] - 2292:14, 2292:23, 2293:13
**hundreds** [1] -

2327:17
**Hurst** [3] - 2237:15, 2237:20, 2244:25

## I

**idea** [9] - 2158:21, 2173:12, 2200:13, 2200:18, 2200:19, 2226:12, 2226:16, 2296:17, 2339:23
**identification** [16] - 2161:9, 2161:10, 2241:6, 2243:16, 2249:22, 2254:14, 2260:9, 2262:6, 2263:18, 2263:25, 2274:21, 2284:23, 2284:25, 2289:8, 2289:9, 2301:5
**Identification** [1] - 2251:21
**identified** [5] - 2266:13, 2293:22, 2295:13, 2302:16, 2333:25
**identify** [4] - 2239:7, 2302:3, 2335:25, 2336:17
**ignorance** [1] - 2340:10
**illness** [1] - 2155:5
**immediately** [3] - 2208:19, 2221:11, 2248:22
**impact** [1] - 2208:20
**impeach** [3] - 2309:7, 2309:12
**implication** [1] - 2334:9
**importance** [1] - 2330:11
**important** [6] - 2173:24, 2200:4, 2320:3, 2320:4, 2325:17, 2327:16
**impossible** [2] - 2270:12, 2325:8
**IN** [9] - 2342:6, 2342:7, 2342:8, 2342:9, 2342:10, 2342:12, 2342:14, 2342:16, 2342:18
**in-between** [1] - 2204:1
**inadvertently** [1] - 2331:9
**Inc** [2] - 2219:6, 2228:2
**inch** [1] - 2202:23

inches [3] - 2188:23, 2188:25, 2189:1
**including** [5] - 2177:21, 2228:5, 2273:1, 2280:9, 2298:17
**inconsistent** [1] - 2309:15
**increase** [2] - 2168:3, 2168:9
**incurred** [1] - 2253:7
**indeed** [3] - 2231:18, 2232:14, 2301:8
**independent** [1] - 2266:8, 2327:18, 2329:12
**independently** [2] - 2265:1, 2283:20
**indicated** [3] - 2239:10, 2309:6, 2337:23
**indicating** [2] - 2258:18, 2303:17
**indicating)** [3] - 2202:24, 2268:9, 2308:2
**indicia** [1] - 2266:8
**indirectly** [2] - 2238:6, 2238:15
**individuals** [7] - 2211:24, 2259:8, 2267:13, 2268:7, 2273:1, 2288:23, 2289:1
**indulgence** [1] - 2329:7
**inform** [1] - 2183:3
**information** [19] - 2190:10, 2200:8, 2202:17, 2206:19, 2207:24, 2211:15, 2231:7, 2243:25, 2244:15, 2262:1, 2262:11, 2262:16, 2268:17, 2279:16, 2302:22, 2303:6, 2324:19, 2326:9, 2331:3
**informed** [1] - 2182:20
**ing** [1] - 2243:19
**initial** [3] - 2156:21, 2225:18, 2253:17
**initiate** [2] - 2197:24, 2198:5
**injuries** [1] - 2174:13
**input** [1] - 2324:20
**inquire** [1] - 2248:11
**insert** [1] - 2323:19
**inside** [1] - 2316:1
**inspection** [1] -

2315:9
**instance** [3] - 2225:2, 2226:4, 2234:5
**instances** [4] - 2196:16, 2198:15, 2211:17, 2320:21
**instead** [1] - 2329:10
**Institutional** [1] - 2305:5
**instruct** [1] - 2184:4
**instruction** [5] - 2184:8, 2185:3, 2196:13, 2266:4, 2302:1
**instructions** [1] - 2302:5
**insurance** [3] - 2219:17, 2221:7, 2271:1
**intend** [1] - 2332:4
**intending** [1] - 2337:4
**intends** [1] - 2207:24
**Intent** [3] - 2167:2, 2190:23, 2191:14
**intent** [2] - 2336:23, 2339:15
**intention** [5] - 2155:3, 2155:19, 2155:22, 2156:1, 2156:3
**interaction** [2] - 2224:14, 2314:15
**interest** [28] - 2204:21, 2205:25, 2216:5, 2216:16, 2216:21, 2218:15, 2218:24, 2225:16, 2231:13, 2231:17, 2231:18, 2231:19, 2231:24, 2232:18, 2234:8, 2245:4, 2256:15, 2267:13, 2267:14, 2270:13, 2271:5, 2271:22, 2273:14, 2273:17, 2273:21, 2280:2, 2298:10, 2298:18
**interests** [1] - 2281:1
**International** [1] - 2305:14
**Internet** [1] - 2325:15
**interrupt** [2] - 2236:13, 2236:15
**interview** [1] - 2192:2
**interviewed** [1] - 2191:23
**introduce** [5] - 2232:10, 2325:16, 2332:22, 2332:24, 2339:13
**introduced** [3] -

2161:3, 2193:9, 2303:23
**invest** [10] - 2163:24, 2164:2, 2164:24, 2170:12, 2170:15, 2171:6, 2171:13, 2172:10, 2178:10, 2225:19
**invested** [5] - 2173:16, 2216:7, 2259:13, 2268:24, 2269:10
**investigation** [5] - 2191:18, 2191:23, 2193:4, 2204:14, 2328:8
**Investigations** [1] - 2186:17
**investing** [8] - 2159:19, 2165:4, 2165:14, 2202:8, 2216:13, 2216:20, 2269:7, 2269:8
**Investment** [1] - 2174:23
**investment** [23] - 2163:10, 2169:16, 2169:23, 2172:19, 2175:6, 2200:4, 2201:13, 2201:14, 2201:18, 2203:20, 2203:22, 2222:11, 2225:20, 2225:23, 2228:23, 2229:7, 2235:18, 2270:16, 2279:17, 2293:14, 2297:21, 2318:17, 2322:22
**investments** [29] - 2162:3, 2162:16, 2162:17, 2174:18, 2174:20, 2174:25, 2175:3, 2177:21, 2201:2, 2201:4, 2201:7, 2201:9, 2201:12, 2219:15, 2220:13, 2220:19, 2221:3, 2221:10, 2221:12, 2221:16, 2221:22, 2222:15, 2225:25, 2229:1, 2267:11, 2267:16, 2269:24, 2299:2
**investors** [7] - 2173:18, 2231:15, 2232:2, 2281:2, 2291:7, 2292:15, 2292:23
**invitation** [5] - 2258:11, 2258:20,

2259:3, 2260:11, 2261:11
**invoice** [4] - 2275:7, 2275:18, 2328:1, 2339:6
**involve** [2] - 2201:14, 2229:7
**involved** [10] - 2166:11, 2201:17, 2202:8, 2225:3, 2231:8, 2268:22, 2286:12, 2288:19, 2295:4, 2298:17
**involvement** [3] - 2165:9, 2225:1, 2323:2
**involving** [7] - 2192:2, 2226:13, 2231:9, 2235:24, 2236:9, 2236:18, 2328:25
**irrelevant** [2] - 2322:16, 2325:23
**Islandia** [1] - 2152:23
**Isle** [13] - 2163:16, 2195:16, 2202:15, 2202:17, 2202:19, 2203:12, 2203:15, 2203:24, 2204:4, 2204:18, 2215:5, 2215:23, 2216:4
**Islip** [3] - 2152:5, 2152:17, 2153:9
**issue** [12] - 2155:6, 2205:6, 2280:13, 2301:25, 2303:10, 2332:11, 2339:3
**issues** [2] - 2268:20, 2330:20
**item** [1] - 2179:6
**itself** [4] - 2262:9, 2270:20, 2313:13, 2323:6
**IV** [13] - 2163:16, 2195:16, 2202:15, 2202:17, 2202:19, 2203:12, 2203:15, 2203:24, 2204:4, 2204:18, 2215:23, 2216:4

## J

**Jackets** [1] - 2170:7
**James** [2] - 2153:19, 2154:10
**JAMES** [1] - 2152:17
**January** [4] - 2157:24, 2170:8, 2170:10, 2189:21
**Jeff** [1] - 2278:15

U.S.A. v. KENNER and CONSTANTINE

14

**jet** [11] - 2279:4, 2279:8, 2314:11, 2314:12, 2314:19, 2315:6, 2315:9, 2315:20, 2315:21, 2315:23, 2316:5
**Jets** [1] - 2316:10
**JFB** [1] - 2152:3
**job** [2] - 2158:9, 2278:3
**jog** [1] - 2314:17
**Johansen** [11] - 2237:15, 2237:20, 2244:25, 2245:6, 2245:10, 2245:20, 2245:23, 2247:4, 2247:21, 2249:8, 2251:23
**John** [3] - 2301:16, 2336:13, 2336:16
**joked** [1] - 2276:21
**JOSEPH** [1] - 2152:12
**Josh** [1] - 2186:11
**Journeyman** [1] - 2158:12
**Jowdy** [9] - 2181:13, 2269:24, 2270:2, 2271:11, 2272:2, 2280:13, 2297:15, 2297:21, 2301:14
**Jowdy's** [1] - 2269:2
**Judge** [33] - 2152:12, 2153:24, 2186:21, 2205:9, 2205:10, 2205:11, 2206:3, 2206:10, 2206:16, 2209:1, 2213:10, 2251:7, 2251:10, 2278:9, 2283:23, 2302:20, 2302:25, 2303:2, 2303:15, 2304:1, 2304:10, 2325:16, 2325:25, 2326:5, 2331:9, 2331:15, 2334:4, 2334:11, 2338:11, 2338:12, 2338:23, 2340:9
**judge** [16] - 2232:1, 2232:3, 2232:8, 2235:21, 2250:20, 2301:2, 2307:15, 2319:4, 2320:8, 2322:2, 2324:22, 2333:1, 2334:3, 2339:1, 2340:11, 2340:12
**judgment** [1] - 2312:12
**July** [13] - 2173:4,

2173:7, 2192:1, 2192:7, 2215:1, 2215:3, 2241:4, 2268:6, 2272:6, 2273:1, 2321:17, 2321:18
**June** [18] - 2152:9, 2241:18, 2242:6, 2242:22, 2243:21, 2244:13, 2245:15, 2245:18, 2258:12, 2258:16, 2258:17, 2259:7, 2260:14, 2261:9, 2284:15, 2285:3, 2301:10, 2340:15
**Juneau** [2] - 2176:8, 2280:23
**junior** [3] - 2158:11, 2159:7, 2235:5
**Junior's** [1] - 2159:7
**Juniors** [1] - 2159:8
**juniors** [1] - 2159:9
**Juror** [2] - 2155:25
**juror's** [1] - 2324:15
**jurors** [10] - 2154:6, 2154:13, 2154:17, 2154:23, 2155:2, 2155:5, 2155:11, 2155:17, 2155:23, 2324:16
**JURORS** [1] - 2155:15
**Jury** [7] - 2299:21, 2300:4, 2300:8, 2300:12, 2310:5, 2310:6, 2311:1
**jury** [48] - 2152:13, 2155:9, 2155:14, 2166:19, 2181:19, 2181:22, 2182:15, 2184:5, 2184:13, 2185:2, 2185:5, 2205:2, 2208:24, 2209:8, 2232:11, 2242:4, 2251:12, 2268:3, 2285:6, 2300:1, 2303:16, 2303:19, 2303:20, 2303:24, 2304:3, 2304:6, 2309:4, 2309:5, 2309:8, 2309:13, 2309:18, 2309:20, 2310:11, 2310:12, 2310:23, 2311:14, 2311:23, 2319:1, 2319:7, 2319:10, 2319:12, 2320:8, 2320:22, 2321:3, 2321:5, 2331:17, 2333:20,

2338:2
**jury's** [2] - 2211:10, 2278:11

# K

**K-65** [1] - 2295:13
**Kaiser** [3] - 2301:16, 2301:19, 2336:16
**Kamloops** [5] - 2275:13, 2278:23, 2281:15, 2314:22, 2315:3
**keep** [3] - 2156:23, 2267:18, 2332:1
**kELLY** [1] - 2152:15
**Ken** [2] - 2181:12, 2301:14
**KENNER** [2] - 2152:6, 2342:20
**Kenner** [150] - 2152:6, 2152:21, 2153:15, 2154:4, 2154:5, 2160:21, 2160:22, 2161:11, 2161:19, 2162:2, 2162:18, 2163:1, 2163:22, 2163:23, 2164:6, 2164:13, 2164:17, 2164:24, 2165:14, 2166:4, 2167:22, 2169:14, 2169:21, 2171:18, 2172:6, 2172:10, 2172:17, 2173:22, 2175:23, 2176:1, 2176:11, 2176:23, 2177:1, 2177:5, 2177:17, 2177:25, 2178:21, 2180:9, 2181:4, 2181:11, 2181:24, 2183:2, 2184:3, 2184:9, 2184:10, 2185:5, 2185:6, 2185:13, 2193:2, 2194:8, 2194:9, 2195:3, 2195:6, 2195:15, 2196:3, 2196:12, 2196:23, 2197:3, 2197:6, 2197:10, 2197:17, 2197:25, 2198:5, 2199:9, 2199:16, 2202:1, 2202:18, 2203:24, 2206:8, 2212:3, 2212:9, 2212:14, 2212:23, 2213:20, 2214:8, 2215:13, 2216:24, 2217:22, 2220:6,

2220:15, 2220:24, 2221:1, 2223:22, 2223:25, 2224:18, 2226:13, 2227:2, 2227:9, 2227:16, 2228:1, 2228:10, 2228:11, 2229:16, 2231:24, 2232:6, 2232:9, 2232:13, 2232:17, 2234:4, 2234:6, 2235:24, 2236:2, 2236:4, 2236:9, 2236:18, 2236:19, 2238:6, 2238:15, 2246:18, 2255:9, 2255:17, 2263:9, 2276:4, 2278:22, 2287:16, 2287:24, 2293:19, 2294:9, 2294:16, 2294:19, 2294:22, 2294:25, 2295:21, 2296:15, 2297:1, 2297:14, 2299:5, 2304:15, 2304:21, 2304:24, 2304:25, 2305:1, 2306:8, 2307:18, 2307:21, 2310:4, 2310:7, 2314:23, 2315:4, 2315:24, 2316:7, 2316:9, 2317:8, 2317:17, 2320:6, 2322:12, 2334:10, 2336:4, 2336:11
**Kenner's** [2] - 2253:11, 2320:2
**Kenner/Myrick** [3] - 2241:15, 2241:19, 2243:12
**Kenners** [1] - 2232:2
**kept** [2] - 2280:5, 2331:8
**key** [1] - 2270:10
**Khristich** [1] - 2161:1
**kids** [1] - 2210:21
**kind** [9] - 2158:12, 2160:3, 2170:2, 2175:21, 2200:11, 2220:13, 2246:21, 2288:20, 2297:3
**kindly** [5] - 2212:3, 2215:12, 2304:15, 2306:7, 2308:17
**kinds** [2] - 2162:3, 2162:13
**Kings** [2] - 2159:10, 2160:24
**knowing** [3] - 2163:9, 2319:19, 2331:20

**knowledge** [9] - 2165:8, 2191:18, 2194:4, 2203:18, 2206:15, 2210:18, 2226:25, 2229:6, 2305:12
**knowlege** [1] - 2193:25
**known** [8] - 2188:25, 2203:15, 2223:6, 2263:15, 2270:2, 2301:15, 2302:9, 2302:23
**knows** [4] - 2238:11, 2320:16, 2321:25
**KOMATIREDDY** [82] - 2152:18, 2153:21, 2156:8, 2157:1, 2157:3, 2165:3, 2167:16, 2171:23, 2177:7, 2183:4, 2184:12, 2186:7, 2195:4, 2199:20, 2202:3, 2204:23, 2206:23, 2207:3, 2207:7, 2207:11, 2226:20, 2227:5, 2227:11, 2228:16, 2229:12, 2233:2, 2238:10, 2241:23, 2247:16, 2250:11, 2252:6, 2255:2, 2256:25, 2260:19, 2262:24, 2264:14, 2264:21, 2265:4, 2266:17, 2267:1, 2271:24, 2272:19, 2274:18, 2275:9, 2275:23, 2276:2, 2276:22, 2281:7, 2282:2, 2283:12, 2283:15, 2283:25, 2284:5, 2285:16, 2286:18, 2287:12, 2288:2, 2293:12, 2297:13, 2298:15, 2298:25, 2299:9, 2299:16, 2305:18, 2307:4, 2308:11, 2308:21, 2309:2, 2309:15, 2310:16, 2311:6, 2311:13, 2311:20, 2313:1, 2314:25, 2316:18, 2317:25, 2335:1, 2335:14, 2341:4, 2341:14, 2341:18
**Komatireddy** [3] - 2153:22, 2153:23, 2293:9

**Komatireddy's** [1] - 2207:17
**Kristie** [16] - 2175:24, 2226:13, 2226:22, 2227:1, 2227:9, 2227:16, 2227:19, 2228:1, 2228:4, 2228:9, 2228:12, 2228:21, 2229:6, 2235:24, 2236:18, 2236:19

**L**

**L.A** [1] - 2159:10
**LA** [1] - 2246:10
**ladies** [1] - 2250:17
**lady** [1] - 2186:8
**land** [8] - 2163:16, 2163:18, 2201:18, 2222:7, 2227:3, 2228:6, 2228:14, 2238:3
**language** [1] - 2222:4
**laRUSSO** [3] - 2153:1, 2172:1, 2326:12
**LARUSSO** [36] - 2195:5, 2251:4, 2251:7, 2251:9, 2251:16, 2251:18, 2252:3, 2252:8, 2254:25, 2260:17, 2260:21, 2262:22, 2263:5, 2264:9, 2264:12, 2266:13, 2266:22, 2266:24, 2267:9, 2267:19, 2268:2, 2269:16, 2272:18, 2272:24, 2273:25, 2275:21, 2276:23, 2276:25, 2278:1, 2278:8, 2278:12, 2341:8, 2341:10, 2341:12, 2341:16, 2341:24
**LaRusso** [69] - 2153:3, 2153:24, 2153:25, 2154:1, 2154:21, 2177:10, 2183:8, 2184:2, 2184:14, 2230:1, 2231:2, 2232:21, 2233:6, 2233:11, 2238:19, 2238:20, 2238:23, 2238:25, 2239:12, 2241:21, 2242:3, 2244:5, 2244:11, 2244:14, 2247:18, 2250:9, 2250:19, 2251:6,

2251:15, 2260:20, 2283:2, 2283:10, 2283:22, 2284:9, 2285:14, 2285:18, 2286:22, 2288:6, 2293:2, 2293:4, 2293:7, 2297:7, 2297:11, 2298:12, 2298:16, 2298:20, 2304:22, 2314:2, 2314:14, 2315:19, 2316:15, 2316:22, 2318:5, 2318:7, 2318:19, 2324:22, 2325:6, 2325:14, 2326:22, 2326:24, 2330:8, 2330:17, 2330:25, 2331:15, 2332:13, 2333:1, 2339:2, 2340:9, 2340:11
**LaRusso's** [2] - 2324:21, 2326:15
**Las** [1] - 2178:13
**last** [19] - 2158:9, 2185:3, 2205:24, 2206:4, 2206:8, 2213:1, 2213:7, 2213:21, 2219:7, 2248:18, 2248:24, 2251:25, 2273:7, 2278:20, 2281:10, 2292:11, 2292:20, 2327:13, 2328:7
**lastly** [1] - 2279:13
**late** [2] - 2222:21, 2338:12
**law** [5] - 2237:15, 2244:24, 2250:4, 2298:19, 2319:8
**lawsuit** [34] - 2175:23, 2175:25, 2176:2, 2176:5, 2176:6, 2176:7, 2223:24, 2226:13, 2226:17, 2226:18, 2227:9, 2227:16, 2235:25, 2236:8, 2236:18, 2239:14, 2239:17, 2240:2, 2240:6, 2240:12, 2241:1, 2243:12, 2243:22, 2245:4, 2253:3, 2253:7, 2261:18, 2268:22, 2269:20, 2322:11, 2322:14, 2322:17, 2322:20
**lawsuits** [5] - 2176:12, 2176:15, 2262:1, 2262:12, 2298:18

**lawyer** [15] - 2174:17, 2175:4, 2175:6, 2224:24, 2225:6, 2246:10, 2247:3, 2248:11, 2248:25, 2251:23, 2285:20, 2286:12, 2299:2, 2321:14, 2323:8
**lawyers** [7] - 2155:20, 2248:7, 2298:19, 2319:10, 2319:20, 2321:15, 2331:12
**lawyers's** [3] - 2226:9, 2226:10, 2226:11
**lead** [1] - 2330:12
**leading** [5] - 2165:1, 2165:2, 2172:13, 2179:3, 2302:17
**league** [1] - 2157:15
**League** [5] - 2225:1, 2234:17, 2235:8, 2235:10, 2235:13
**learn** [1] - 2158:13
**learned** [5] - 2191:2, 2191:7, 2297:9, 2327:8, 2327:12
**learning** [1] - 2327:3
**least** [14] - 2212:16, 2215:14, 2219:6, 2219:7, 2220:17, 2221:2, 2221:3, 2221:9, 2224:14, 2229:17, 2232:21, 2261:13, 2320:22, 2321:23
**leave** [4] - 2156:5, 2220:5, 2220:9, 2284:23
**leaves** [1] - 2319:1
**leeway** [1] - 2321:15
**left** [7] - 2155:23, 2187:6, 2188:24, 2193:5, 2259:9, 2260:9, 2275:2
**left-hand** [2] - 2259:9, 2275:2
**legal** [15] - 2175:4, 2175:7, 2175:20, 2181:7, 2188:22, 2224:9, 2259:25, 2260:6, 2279:19, 2280:12, 2297:8, 2297:15, 2297:16, 2298:16, 2299:15
**Lehman** [8] - 2166:4, 2166:6, 2166:11, 2216:9, 2237:23, 2238:1, 2238:2, 2238:16
**lengthy** [1] - 2223:23

**letter** [8] - 2160:19, 2167:1, 2167:2, 2191:13, 2215:4, 2293:20, 2305:15, 2305:16
**letters** [6] - 2166:20, 2166:23, 2200:16, 2296:1, 2296:13
**level** [2] - 2201:14, 2340:5
**Liability** [1] - 2203:15
**liberty** [1] - 2320:2
**license** [4] - 2313:14, 2313:16, 2313:18, 2313:24
**life** [2] - 2219:17, 2221:7
**likely** [6] - 2256:22, 2312:12, 2312:13, 2312:14, 2312:15, 2334:4
**limited** [2] - 2232:16, 2232:21
**Limited** [1] - 2203:15
**line** [26] - 2164:7, 2164:8, 2164:11, 2191:3, 2191:8, 2192:9, 2195:15, 2195:18, 2197:10, 2199:15, 2200:9, 2200:16, 2211:19, 2214:4, 2214:23, 2216:4, 2216:8, 2216:13, 2228:13, 2228:22, 2264:16, 2275:2, 2305:14, 2311:22
**lined** [1] - 2154:9
**lines** [3] - 2193:18, 2334:13, 2338:20
**listed** [2] - 2256:13, 2259:8
**listen** [2] - 2289:3, 2318:24
**listening** [2] - 2258:1, 2339:1
**litany** [2] - 2302:17, 2334:5
**litigant** [1] - 2319:5
**litigation** [3] - 2235:23, 2240:19, 2336:8
**live** [3] - 2157:6, 2270:11, 2270:15
**lives** [1] - 2327:16
**living** [1] - 2157:8
**LLC** [7] - 2195:14, 2203:16, 2203:19, 2203:24, 2215:5, 2215:23, 2268:5

**LLP** [4] - 2152:21, 2153:1, 2237:16, 2237:20
**loan** [19] - 2165:25, 2167:18, 2167:22, 2168:9, 2168:25, 2169:8, 2169:15, 2288:11, 2290:14, 2290:15, 2290:23, 2296:24, 2296:25, 2297:9, 2297:16, 2312:21, 2317:19, 2317:23
**loaning** [1] - 2296:15
**loans** [1] - 2165:19
**located** [1] - 2286:1
**location** [2] - 2211:5, 2275:14
**logistically** [1] - 2270:12
**look** [81] - 2166:16, 2167:12, 2171:5, 2172:5, 2173:2, 2173:7, 2175:16, 2177:13, 2180:20, 2180:21, 2190:17, 2194:7, 2203:1, 2208:18, 2212:3, 2212:13, 2212:15, 2212:23, 2212:24, 2213:6, 2213:19, 2213:20, 2214:8, 2214:10, 2215:12, 2215:13, 2224:24, 2229:15, 2229:17, 2234:3, 2236:4, 2236:14, 2241:6, 2241:9, 2242:11, 2251:21, 2253:2, 2255:7, 2256:1, 2258:6, 2262:6, 2262:7, 2262:21, 2262:24, 2264:1, 2264:25, 2266:23, 2272:9, 2274:9, 2274:25, 2284:25, 2285:9, 2289:14, 2289:21, 2290:10, 2292:10, 2292:16, 2292:20, 2293:3, 2303:18, 2303:21, 2304:15, 2306:7, 2307:3, 2307:20, 2307:25, 2308:17, 2310:4, 2310:13, 2311:3, 2311:20, 2312:8, 2313:20, 2324:13, 2324:16, 2326:9, 2329:23, 2330:19, 2331:11,

2333:8
**looked** [11] - 2186:14, 2207:21, 2254:15, 2256:21, 2269:17, 2275:4, 2307:14, 2315:5, 2316:1, 2324:15, 2335:3
**looking** [16] - 2167:18, 2168:18, 2171:8, 2177:3, 2177:17, 2208:21, 2245:18, 2260:4, 2275:16, 2276:11, 2278:18, 2287:17, 2290:17, 2294:9, 2294:16, 2333:8
**looks** [8] - 2284:3, 2308:5, 2311:17, 2312:7, 2312:10, 2312:16, 2336:9, 2337:21
**loop** [1] - 2303:21
**loopy** [2] - 2311:6, 2311:8
**Los** [6] - 2157:20, 2160:5, 2160:23, 2161:3, 2240:15, 2241:1
**lose** [2] - 2155:2, 2155:21
**losses** [1] - 2175:21
**lost** [1] - 2160:4
**loud** [2] - 2180:21, 2212:4
**Louis** [2] - 2158:3, 2296:10
**lower** [2] - 2259:8, 2261:1
**lunch** [7] - 2208:17, 2239:5, 2250:18, 2250:21, 2254:7, 2254:11, 2282:9
**luncheon** [1] - 2250:23

## M

**mail** [125] - 2176:20, 2176:25, 2177:3, 2177:4, 2177:6, 2177:17, 2177:20, 2178:7, 2178:18, 2178:19, 2179:6, 2190:3, 2190:8, 2193:9, 2196:9, 2196:13, 2196:24, 2197:12, 2200:15, 2210:2, 2210:19, 2210:25, 2211:2, 2211:5, 2240:22,

2241:15, 2243:20, 2245:9, 2245:22, 2247:2, 2251:22, 2252:13, 2253:10, 2253:12, 2253:18, 2254:15, 2254:20, 2254:24, 2255:8, 2255:9, 2255:19, 2255:21, 2258:9, 2258:16, 2258:17, 2258:18, 2258:25, 2259:7, 2259:19, 2261:1, 2262:15, 2263:10, 2263:19, 2264:1, 2264:2, 2264:15, 2264:18, 2264:24, 2265:2, 2266:14, 2268:4, 2268:6, 2268:8, 2268:15, 2268:25, 2269:4, 2271:19, 2272:5, 2272:14, 2272:25, 2273:2, 2273:5, 2273:7, 2273:10, 2274:9, 2274:13, 2274:22, 2275:6, 2276:13, 2281:11, 2281:16, 2281:18, 2281:22, 2282:11, 2282:13, 2283:5, 2283:16, 2283:17, 2283:21, 2284:10, 2284:11, 2284:12, 2284:14, 2285:2, 2285:3, 2285:5, 2285:6, 2285:9, 2297:7, 2315:19, 2321:6, 2321:10, 2323:5, 2323:8, 2323:10, 2325:15, 2325:21, 2326:23, 2328:1, 2328:15, 2329:3, 2329:25, 2330:16, 2331:21, 2331:24, 2339:11, 2339:20, 2339:21, 2339:22, 2340:3
**mailed** [1] - 2253:1
**mails** [18] - 2256:22, 2257:7, 2261:16, 2261:23, 2267:2, 2267:4, 2284:1, 2324:24, 2325:1, 2325:5, 2325:7, 2325:9, 2326:16, 2326:20, 2326:22, 2328:20, 2328:23, 2339:3
**main** [1] - 2328:10
**maintained** [2] -

2228:4, 2301:13
**maintenance** [1] - 2271:1
**man** [1] - 2285:19
**Management** [6] - 2172:12, 2172:21, 2172:23, 2173:3, 2219:4, 2219:5
**manager** [2] - 2211:21, 2223:4
**manager/financial** [1] - 2224:19
**managing** [3] - 2203:18, 2203:24, 2204:1
**Manhattan** [1] - 2300:11
**manner** [1] - 2338:21
**manufactured** [1] - 2338:18
**map** [3] - 2202:14, 2202:16
**March** [13] - 2166:23, 2168:20, 2169:7, 2190:18, 2209:23, 2209:25, 2210:6, 2210:8, 2281:12, 2281:18, 2300:3, 2300:10, 2310:23
**mark** [2] - 2245:6, 2251:21
**Mark** [7] - 2245:19, 2245:20, 2246:2, 2247:4, 2252:19, 2252:25, 2278:15
**marked** [38] - 2171:2, 2172:4, 2176:17, 2177:12, 2180:19, 2190:17, 2194:7, 2194:9, 2212:3, 2212:14, 2212:23, 2213:20, 2215:13, 2229:16, 2234:3, 2236:4, 2241:5, 2243:15, 2249:22, 2254:13, 2260:8, 2260:18, 2262:5, 2263:17, 2263:24, 2272:5, 2284:22, 2289:7, 2292:8, 2304:25, 2305:1, 2306:7, 2307:18, 2307:21, 2309:4, 2309:6, 2310:4, 2310:25
**market** [4] - 2219:24, 2220:2, 2221:14, 2221:15
**married** [2] - 2160:16, 2160:18

**master** [2] - 2199:7, 2199:10
**material** [1] - 2207:21
**Mathew** [1] - 2211:21
**Matt** [3] - 2186:15, 2186:16, 2192:3
**matter** [14] - 2154:17, 2191:17, 2191:24, 2195:19, 2201:11, 2268:5, 2300:4, 2301:7, 2314:18, 2316:3, 2323:20, 2338:23, 2340:14, 2340:15
**Matter** [7] - 2183:12, 2184:16, 2185:1, 2192:18, 2308:24, 2309:23, 2310:1
**matters** [2] - 2194:19, 2228:22
**Matthew** [1] - 2186:16
**Mattias** [2] - 2165:22, 2234:18
**mean** [32] - 2163:6, 2177:24, 2178:9, 2185:23, 2186:16, 2187:3, 2194:16, 2196:25, 2200:20, 2202:20, 2208:4, 2215:8, 2222:14, 2224:22, 2236:13, 2237:19, 2237:20, 2248:6, 2261:10, 2269:3, 2269:14, 2278:16, 2284:3, 2292:2, 2298:4, 2301:9, 2311:16, 2312:2, 2312:6, 2313:5, 2323:9
**meaning** [6] - 2223:20, 2229:19, 2237:16, 2241:12, 2314:5, 2332:15
**means** [1] - 2321:24
**meant** [2] - 2248:7, 2323:10
**Media** [1] - 2284:17
**media** [2] - 2259:25, 2260:6
**Meehan** [1] - 2160:2
**meet** [4] - 2160:22, 2182:12, 2250:22, 2286:4
**meeting** [30] - 2160:25, 2186:10, 2186:19, 2187:8, 2187:10, 2187:18, 2187:23, 2188:1, 2188:4, 2188:5, 2188:7, 2189:3,

2189:15, 2191:22, 2192:7, 2194:11, 2206:22, 2209:16, 2254:16, 2255:20, 2256:5, 2282:10, 2288:25, 2291:2, 2291:3, 2291:5, 2291:6, 2291:15, 2318:15
**member** [2] - 2203:18, 2203:24
**members** [4] - 2155:14, 2185:2, 2215:5, 2289:20
**Memorial** [1] - 2152:22
**memorializing** [1] - 2207:3
**memory** [12] - 2187:20, 2227:8, 2301:22, 2302:1, 2302:5, 2314:17, 2316:4, 2316:5, 2316:12, 2328:5, 2337:14
**men** [1] - 2327:14
**mention** [2] - 2162:12, 2178:1
**mentioned** [8] - 2164:4, 2175:19, 2227:17, 2232:14, 2247:6, 2268:18, 2272:3, 2281:20
**mentions** [1] - 2177:20
**mesmerized** [1] - 2324:17
**message** [5] - 2194:2, 2198:7, 2252:18, 2253:1, 2253:18
**met** [28] - 2160:12, 2160:20, 2160:23, 2161:2, 2187:15, 2191:3, 2208:7, 2220:16, 2221:9, 2221:12, 2225:17, 2239:2, 2239:4, 2239:5, 2254:5, 2254:18, 2256:6, 2281:21, 2281:23, 2282:1, 2282:6, 2282:8, 2282:12, 2285:21, 2285:23, 2285:24, 2288:21, 2305:24
**Mexican** [1] - 2240:9
**Mexico** [19] - 2164:25, 2166:7, 2174:18, 2174:19, 2174:20, 2174:24, 2175:20,

2178:3, 2179:18, 2181:7, 2181:13, 2182:25, 2258:2, 2271:10, 2272:1, 2280:13, 2280:21, 2297:25, 2323:3
**Michael** [5] - 2165:22, 2234:22, 2285:19, 2325:20, 2326:10
**microphone** [1] - 2156:23
**mid** [1] - 2321:18
**mid-July** [1] - 2321:18
**middle** [1] - 2156:21
**might** [12] - 2201:13, 2204:8, 2210:19, 2223:13, 2225:22, 2225:23, 2231:6, 2257:20, 2282:1, 2315:16, 2324:23, 2336:9
**Miller** [1] - 2211:21
**million** [6] - 2167:20, 2168:3, 2168:9, 2206:18, 2266:9, 2336:14
**millions** [2] - 2327:17, 2329:1
**Millview** [1] - 2210:3
**mind** [6] - 2205:12, 2214:9, 2266:3, 2320:13, 2324:5, 2332:1
**mine** [3] - 2294:24, 2303:21, 2312:14
**Mineola** [1] - 2153:2
**Minnesota** [2] - 2157:7, 2204:10
**minnesota** [1] - 2157:11
**minute** [2] - 2205:18, 2318:3
**minutes** [3] - 2239:3, 2303:16, 2320:15
**MISKIEWICZ** [25] - 2152:17, 2153:18, 2154:7, 2154:20, 2205:20, 2207:16, 2208:11, 2244:8, 2266:5, 2303:9, 2303:15, 2303:20, 2304:23, 2321:22, 2327:3, 2328:19, 2329:6, 2329:21, 2332:3, 2332:23, 2333:11, 2335:24, 2336:5, 2336:23, 2337:9
**Miskiewicz** [3] - 2153:19, 2153:20,

2333:7
**misleading** [1] - 2309:10
**misled** [2] - 2202:1, 2202:10
**missing** [1] - 2334:2
**model** [4] - 2276:18, 2278:25, 2279:11, 2314:9
**mom** [5] - 2159:16, 2159:21, 2159:24, 2167:7, 2186:25
**moment** [5] - 2225:14, 2225:18, 2235:21, 2240:10, 2244:23
**moments** [1] - 2274:2
**money** [72] - 2159:14, 2159:15, 2159:20, 2159:22, 2163:16, 2164:25, 2165:11, 2165:25, 2171:9, 2171:19, 2171:22, 2172:11, 2172:17, 2172:18, 2172:23, 2173:10, 2173:13, 2173:17, 2173:25, 2175:8, 2175:19, 2175:21, 2176:1, 2176:4, 2176:11, 2176:14, 2178:1, 2178:2, 2178:24, 2178:25, 2179:12, 2179:15, 2179:20, 2179:21, 2179:24, 2180:2, 2180:5, 2180:6, 2180:10, 2180:14, 2180:15, 2181:4, 2181:5, 2181:9, 2181:13, 2217:23, 2218:14, 2225:11, 2228:14, 2235:18, 2246:12, 2246:14, 2249:16, 2255:11, 2263:12, 2264:4, 2271:7, 2274:6, 2287:23, 2292:24, 2293:14, 2293:16, 2297:4, 2297:18, 2298:6, 2317:3, 2317:9, 2318:9, 2318:12, 2322:19, 2328:21, 2328:25
**monies** [4] - 2238:5, 2239:25, 2247:13, 2271:21
**month** [1] - 2242:25
**months** [4] - 2157:23, 2301:3, 2301:4, 2337:13

**Moreau** [2] - 2176:8, 2280:23
**morning** [18] - 2153:18, 2153:20, 2153:21, 2153:23, 2153:24, 2154:1, 2154:3, 2154:5, 2155:14, 2155:15, 2157:4, 2157:5, 2185:14, 2186:20, 2204:25, 2318:23, 2324:18, 2338:14
**most** [9] - 2154:11, 2257:10, 2312:12, 2312:13, 2312:14, 2312:15, 2320:3, 2320:4, 2330:4
**mostly** [3] - 2182:25, 2197:3, 2279:7
**mother** [1] - 2185:22
**motivating** [1] - 2323:24
**move** [12] - 2208:22, 2210:18, 2211:1, 2211:4, 2251:20, 2262:3, 2298:23, 2300:20, 2303:9, 2326:1, 2332:11, 2332:25
**moved** [5] - 2210:15, 2211:3, 2220:23, 2221:1, 2305:13
**moving** [4] - 2164:17, 2210:25, 2296:11, 2305:9
**MR** [207] - 2153:18, 2153:24, 2154:3, 2154:7, 2154:20, 2154:21, 2154:22, 2155:8, 2161:9, 2165:1, 2167:15, 2172:1, 2172:2, 2172:13, 2172:16, 2177:9, 2177:10, 2179:1, 2179:3, 2179:7, 2179:11, 2183:6, 2183:8, 2184:2, 2184:14, 2185:9, 2185:11, 2186:21, 2189:8, 2189:12, 2195:2, 2195:5, 2196:19, 2196:21, 2204:24, 2205:1, 2205:5, 2205:11, 2205:15, 2205:20, 2206:3, 2206:10, 2207:13, 2207:16, 2208:11, 2208:18, 2209:1, 2209:6, 2209:12,

2212:20, 2212:22, 2213:10, 2216:2, 2226:24, 2227:7, 2227:13, 2227:14, 2228:20, 2229:14, 2230:1, 2231:2, 2231:11, 2232:21, 2233:6, 2233:9, 2233:11, 2234:2, 2234:11, 2234:12, 2235:21, 2235:22, 2238:13, 2238:20, 2238:23, 2239:10, 2239:12, 2241:21, 2241:25, 2242:3, 2244:5, 2244:7, 2244:8, 2244:11, 2244:14, 2247:18, 2250:9, 2250:14, 2250:19, 2251:4, 2251:7, 2251:9, 2251:16, 2251:18, 2252:3, 2252:8, 2254:25, 2255:3, 2260:17, 2260:20, 2260:21, 2260:22, 2262:22, 2263:1, 2263:5, 2264:9, 2264:12, 2266:5, 2266:13, 2266:22, 2266:24, 2267:9, 2267:19, 2268:2, 2269:16, 2272:18, 2272:20, 2272:24, 2273:25, 2275:21, 2276:23, 2276:25, 2278:1, 2278:8, 2278:12, 2283:2, 2283:10, 2283:22, 2283:23, 2284:9, 2285:14, 2285:18, 2286:22, 2288:6, 2293:2, 2293:4, 2293:7, 2294:14, 2297:11, 2298:12, 2298:20, 2299:11, 2299:13, 2299:20, 2300:19, 2300:24, 2301:2, 2303:8, 2303:9, 2303:15, 2303:20, 2303:22, 2304:10, 2304:14, 2304:20, 2304:22, 2304:23, 2307:15, 2308:12, 2309:14, 2309:19, 2310:3, 2311:7, 2311:24, 2312:3, 2313:2, 2317:14, 2318:3, 2318:5, 2318:7, 2318:19, 2321:22,

2324:22, 2325:6, 2325:14, 2326:12, 2326:24, 2327:3, 2328:19, 2329:6, 2329:21, 2330:8, 2330:17, 2330:25, 2331:15, 2332:3, 2332:23, 2333:1, 2333:11, 2333:22, 2335:24, 2336:5, 2336:23, 2337:9, 2337:10, 2338:2, 2339:2, 2340:9, 2340:11, 2340:12, 2341:6, 2341:8, 2341:10, 2341:12, 2341:16, 2341:20, 2341:22, 2341:24
**MS** [79] - 2153:21, 2156:8, 2157:3, 2165:3, 2167:16, 2171:23, 2177:7, 2183:4, 2184:12, 2186:7, 2195:4, 2199:20, 2202:3, 2204:23, 2206:23, 2207:3, 2207:7, 2207:11, 2226:20, 2227:5, 2227:11, 2228:16, 2229:12, 2233:2, 2238:10, 2241:23, 2247:16, 2250:11, 2252:6, 2255:2, 2256:25, 2260:19, 2262:24, 2264:14, 2264:21, 2265:4, 2266:17, 2267:1, 2271:24, 2272:19, 2274:18, 2275:9, 2275:23, 2276:2, 2276:22, 2281:7, 2282:2, 2283:12, 2283:15, 2283:25, 2284:5, 2285:16, 2286:18, 2287:12, 2288:2, 2293:12, 2297:13, 2298:15, 2299:9, 2299:16, 2305:18, 2307:4, 2308:11, 2308:21, 2309:2, 2309:15, 2310:16, 2311:6, 2311:13, 2311:20, 2313:1, 2314:25, 2316:18, 2317:25, 2335:1, 2335:14, 2341:4, 2341:14, 2341:18
**multiple** [2] - 2280:9, 2321:5
**Murray** [2] - 2165:22,

2235:11
**must** [2] - 2329:1
**Myrick** [30] - 2175:24, 2176:5, 2176:6, 2226:14, 2227:10, 2227:19, 2228:1, 2228:4, 2228:10, 2228:13, 2228:21, 2229:6, 2235:23, 2235:24, 2236:2, 2236:9, 2236:18, 2236:19, 2239:14, 2239:17, 2240:1, 2240:6, 2240:11, 2240:19, 2243:22, 2245:17, 2247:8, 2247:23, 2250:5, 2253:7
**Myrick's** [1] - 2248:17
**Myrick/Kenner** [1] - 2253:3
**mystified** [1] - 2322:18
**mystifying** [1] - 2319:22

## N

**name** [25] - 2156:18, 2160:2, 2161:16, 2165:18, 2167:18, 2167:22, 2169:8, 2173:5, 2185:12, 2186:8, 2192:4, 2203:21, 2207:2, 2212:16, 2219:7, 2238:24, 2244:25, 2269:5, 2270:23, 2285:19, 2286:8, 2296:16, 2310:13, 2313:4, 2313:7
**named** [3] - 2229:24, 2229:25, 2334:10
**names** [6] - 2186:2, 2237:19, 2259:10, 2278:15, 2278:17, 2292:2
**narrow** [1] - 2331:2
**Nash** [2] - 2235:1, 2239:4
**National** [5] - 2225:1, 2234:16, 2235:7, 2235:10, 2235:12
**nature** [11] - 2161:24, 2165:1, 2172:13, 2179:3, 2226:13, 2226:16, 2227:4, 2228:15, 2228:24, 2257:22, 2322:11
**near** [1] - 2222:8

**neat** [1] - 2214:18
**necessarily** [2] - 2207:20, 2334:21
**necessary** [3] - 2326:2, 2326:8, 2333:21
**need** [10] - 2155:25, 2197:13, 2247:5, 2260:1, 2298:23, 2300:19, 2322:3, 2324:7, 2330:23, 2331:24
**needed** [3] - 2180:13, 2197:5, 2316:8
**needs** [1] - 2323:9
**Net** [1] - 2316:10
**net** [1] - 2283:18
**never** [19] - 2178:9, 2192:10, 2227:24, 2264:23, 2266:7, 2266:9, 2266:10, 2269:14, 2271:14, 2274:5, 2314:4, 2318:12, 2318:16, 2321:16, 2322:1, 2327:23, 2328:11, 2332:18
**new** [2] - 2210:20, 2248:20
**NEW** [1] - 2152:1
**New** [14] - 2152:5, 2152:17, 2152:23, 2153:2, 2153:5, 2153:9, 2182:17, 2285:20, 2285:25, 2286:3, 2286:13, 2299:22, 2300:6, 2300:11
**news** [1] - 2270:14
**newspaper** [1] - 2284:15
**next** [20] - 2156:7, 2160:17, 2160:19, 2161:2, 2182:3, 2183:12, 2184:16, 2192:18, 2208:22, 2241:12, 2243:18, 2245:22, 2246:16, 2247:7, 2282:17, 2284:24, 2307:23, 2308:24, 2309:23, 2336:13
**NHL** [6] - 2157:9, 2157:13, 2157:14, 2159:2, 2234:25, 2235:4
**nice** [5] - 2201:19, 2201:23, 2202:2, 2202:11, 2223:2
**Nick** [1] - 2292:2

**night** [5] - 2318:25, 2328:7, 2331:1, 2331:9, 2340:13
**nine** [2] - 2194:20, 2319:4
**Nolan** [3] - 2176:8, 2278:15, 2280:22
**non** [1] - 2309:6
**non-marked** [1] - 2309:6
**Nordstrom** [1] - 2234:18
**normal** [1] - 2207:5
**Norstrom** [2] - 2165:22, 2330:17
**North** [1] - 2174:22
**Northern** [27] - 2164:16, 2166:20, 2167:23, 2168:16, 2168:24, 2195:12, 2195:14, 2195:17, 2195:23, 2195:24, 2196:5, 2196:7, 2196:17, 2197:1, 2197:4, 2197:11, 2211:18, 2211:25, 2212:7, 2214:4, 2299:24, 2303:24, 2305:9, 2305:14, 2334:13, 2334:24, 2338:16
**notation** [1] - 2310:5
**note** [8] - 2168:3, 2168:8, 2188:25, 2189:7, 2199:7, 2199:10, 2306:24, 2307:11
**notes** [20] - 2188:14, 2188:15, 2188:17, 2188:20, 2189:2, 2189:4, 2189:6, 2189:9, 2205:12, 2206:22, 2206:25, 2207:1, 2207:2, 2207:10, 2207:18, 2207:19, 2208:10, 2217:11, 2218:8
**nothing** [9] - 2207:22, 2207:23, 2208:19, 2270:17, 2271:1, 2322:14, 2323:20, 2329:21, 2329:22
**Notice** [4] - 2167:1, 2167:2, 2190:23, 2191:14
**notified** [4] - 2246:4, 2246:17, 2248:17, 2248:21
**Nova** [1] - 2159:17
**November** [2] -

2195:12, 2311:1
**nowhere** [1] - 2317:18
**number** [12] - 2164:4, 2164:5, 2213:9, 2256:13, 2258:22, 2258:24, 2263:14, 2273:1, 2286:25, 2327:4, 2328:20
**numerous** [2] - 2205:21, 2205:22

## O

**o'clock** [1] - 2182:13
**oath** [4] - 2197:15, 2306:13, 2306:19, 2315:22
**object** [11] - 2165:1, 2165:2, 2172:13, 2231:2, 2265:4, 2266:12, 2276:22, 2283:23, 2284:5, 2297:11, 2330:22
**objected** [7] - 2322:10, 2323:6, 2323:15, 2327:7, 2327:9, 2333:17
**objecting** [4] - 2231:9, 2322:4, 2324:24, 2326:18
**objection** [72] - 2171:25, 2177:10, 2179:1, 2179:2, 2179:7, 2195:4, 2195:5, 2199:20, 2202:3, 2204:23, 2226:20, 2227:5, 2227:11, 2228:16, 2229:12, 2238:10, 2241:23, 2241:24, 2244:7, 2244:8, 2247:16, 2250:11, 2250:13, 2252:5, 2252:6, 2252:7, 2255:2, 2255:3, 2256:25, 2260:19, 2260:22, 2262:25, 2263:1, 2271:24, 2272:19, 2272:20, 2274:18, 2275:9, 2281:7, 2282:2, 2283:22, 2285:16, 2286:18, 2287:12, 2288:2, 2298:12, 2298:20, 2299:16, 2304:22, 2304:23, 2305:18, 2307:4, 2308:11, 2310:16, 2311:6, 2314:25, 2316:18, 2317:25,

2322:5, 2322:13, 2322:18, 2322:20, 2322:23, 2323:19, 2324:6, 2324:25, 2326:17, 2326:20, 2327:11, 2329:7, 2333:4, 2333:17
**objections** [1] - 2323:12
**objective** [1] - 2232:9
**objects** [2] - 2322:5, 2324:5
**obligations** [2] - 2156:5, 2232:4
**observation** [1] - 2319:2
**observe** [1] - 2188:13
**observing** [3] - 2331:16, 2331:17
**obtain** [2] - 2224:9, 2288:11
**obtained** [2] - 2271:22
**obtaining** [2] - 2205:25, 2256:15
**obvious** [1] - 2207:5
**obviously** [12] - 2160:6, 2206:4, 2267:7, 2297:20, 2302:10, 2303:4, 2320:1, 2322:24, 2330:11, 2333:19, 2337:22, 2339:4
**occasion** [5] - 2198:3, 2239:2, 2254:10, 2282:11, 2291:11
**occasionally** [1] - 2209:2
**occasions** [2] - 2222:24, 2225:19
**occur** [3] - 2217:1, 2217:25, 2218:1
**occurred** [5] - 2187:20, 2231:1, 2234:1, 2261:9, 2282:14
**occurrence** [1] - 2198:6
**occurring** [1] - 2231:17
**Oceanside** [1] - 2153:5
**October** [4] - 2262:19, 2263:7, 2301:11, 2302:1
**odd** [1] - 2238:15
**OF** [2] - 2152:1, 2152:3
**offer** [11] - 2177:7, 2195:2, 2204:17, 2232:16, 2292:14,

2292:22, 2293:13, 2304:20, 2318:9, 2339:11, 2339:16
**offered** [2] - 2162:21, 2205:22
**offering** [1] - 2225:10
**offers** [1] - 2171:24
**Office** [2] - 2210:25, 2300:11
**office** [1] - 2211:2
**offices** [3] - 2254:4, 2254:6, 2286:1
**often** [2] - 2227:19, 2227:21
**Ohio** [1] - 2314:22
**Old** [1] - 2153:1
**old** [3] - 2157:14, 2162:23, 2336:6
**OLIVERAS** [1] - 2153:4
**once** [14] - 2156:10, 2166:10, 2166:11, 2187:19, 2225:17, 2268:11, 2269:15, 2271:18, 2276:4, 2278:24, 2279:10, 2298:24, 2316:6, 2317:16
**one** [81] - 2154:7, 2154:24, 2154:25, 2164:20, 2167:15, 2178:21, 2180:6, 2182:2, 2182:18, 2186:4, 2186:5, 2186:20, 2187:23, 2188:1, 2189:6, 2189:14, 2193:13, 2194:10, 2200:18, 2210:22, 2211:4, 2217:14, 2217:18, 2224:21, 2225:21, 2227:22, 2235:17, 2239:2, 2239:4, 2242:13, 2256:14, 2257:13, 2257:17, 2257:19, 2257:20, 2257:25, 2260:4, 2264:17, 2267:6, 2268:20, 2269:1, 2271:12, 2271:18, 2274:3, 2276:20, 2279:7, 2279:14, 2279:17, 2281:13, 2282:7, 2282:12, 2289:8, 2290:19, 2291:24, 2292:9, 2292:14, 2312:11, 2312:12, 2313:10, 2314:3, 2315:25, 2316:16, 2317:2,

2318:3, 2320:13, 2321:1, 2321:18, 2323:13, 2325:19, 2326:12, 2326:18, 2327:5, 2330:13, 2331:8, 2331:19, 2334:12, 2335:4, 2335:13, 2336:7, 2338:9
**One** [1] - 2152:21
**ones** [5] - 2174:20, 2276:12, 2280:10, 2326:20, 2328:12
**ongoing** [1] - 2181:12
**open** [3] - 2234:1, 2336:24, 2339:4
**Open** [3] - 2185:1, 2268:1, 2310:1
**opening** [2] - 2232:15, 2339:12
**operating** [6] - 2204:3, 2264:6, 2268:6, 2273:8, 2273:18, 2279:22
**opportunity** [7] - 2208:12, 2208:14, 2208:16, 2223:11, 2223:13, 2241:9, 2302:14
**opposed** [5] - 2201:13, 2257:18, 2316:6, 2334:15, 2336:19
**order** [4] - 2154:25, 2232:3, 2234:7, 2300:20
**organizing** [1] - 2203:19
**Osborn** [1] - 2336:13
**otherwise** [1] - 2339:17
**ought** [1] - 2302:9
**outline** [1] - 2208:13
**outside** [2] - 2184:4, 2206:24
**outstanding** [3] - 2195:15, 2251:25, 2252:22
**overlaid** [1] - 2279:18
**overruled** [21] - 2226:21, 2228:17, 2238:11, 2247:17, 2250:12, 2271:25, 2275:11, 2282:3, 2286:19, 2287:13, 2288:3, 2299:17, 2310:17, 2315:1, 2316:19, 2318:1, 2322:20, 2324:6, 2333:17

**overruling** [1] - 2324:5
**overseeing** [1] - 2243:3
**overtalk** [1] - 2273:25
**OWEN** [1] - 2153:7
**own** [7] - 2248:8, 2270:20, 2283:20, 2285:3, 2320:12, 2328:13, 2331:18
**owned** [4] - 2274:15, 2274:24, 2281:14, 2282:15
**owner** [1] - 2339:9
**ownership** [17] - 2216:5, 2216:15, 2216:21, 2218:15, 2218:23, 2225:16, 2231:12, 2231:16, 2231:18, 2231:19, 2231:23, 2270:13, 2273:14, 2273:17, 2273:21, 2279:21, 2280:2

**P**

**p.m** [4] - 2250:23, 2304:7, 2318:22, 2340:14
**pace** [3] - 2321:17, 2321:24, 2333:13
**pad** [1] - 2188:22
**page** [61] - 2168:17, 2168:20, 2173:4, 2173:7, 2183:12, 2184:16, 2192:18, 2197:13, 2197:17, 2198:17, 2198:23, 2198:25, 2199:2, 2199:9, 2199:17, 2199:18, 2202:21, 2204:3, 2211:13, 2213:1, 2213:7, 2213:22, 2214:10, 2214:11, 2214:12, 2215:15, 2229:18, 2230:3, 2233:12, 2241:7, 2243:17, 2244:22, 2250:24, 2262:21, 2279:14, 2282:17, 2289:15, 2289:20, 2290:10, 2290:18, 2292:11, 2292:20, 2292:25, 2295:8, 2307:23, 2308:3, 2308:24, 2309:23, 2310:8, 2310:9, 2311:2, 2311:22
**pages** [5] - 2212:25,

2266:10, 2272:9, 2289:8, 2289:21
**paid** [6] - 2160:7, 2223:7, 2248:8, 2249:10, 2249:11, 2249:12
**Palms** [4] - 2178:8, 2178:11, 2180:3, 2193:22
**paper** [5] - 2188:19, 2251:10, 2292:4, 2296:20, 2328:2
**papers** [5] - 2167:14, 2169:11, 2177:15, 2182:13, 2296:18
**paragraph** [3] - 2190:13, 2269:19, 2321:1
**paragraphs** [1] - 2289:19
**parcel** [1] - 2317:2
**paren** [1] - 2301:25
**parents** [1] - 2222:19
**Park** [3] - 2177:21, 2179:22, 2190:1
**park** [1] - 2178:8
**parking** [1] - 2257:16
**parse** [1] - 2196:11
**part** [34] - 2161:16, 2178:11, 2178:14, 2184:5, 2193:4, 2199:10, 2206:19, 2223:25, 2228:4, 2232:22, 2243:20, 2258:18, 2258:25, 2268:21, 2269:11, 2271:8, 2271:10, 2272:1, 2279:19, 2280:25, 2281:5, 2284:12, 2287:25, 2288:10, 2289:19, 2290:12, 2290:22, 2297:21, 2317:2, 2317:8, 2333:19, 2335:2, 2335:6, 2335:19
**participants** [1] - 2291:19
**participate** [4] - 2258:12, 2258:21, 2259:4, 2260:11
**participated** [5] - 2257:19, 2259:23, 2286:9, 2286:24, 2288:22
**participating** [9] - 2243:3, 2257:10, 2261:8, 2261:17, 2261:24, 2286:6, 2291:14, 2291:16,

2318:16
**participation** [1] - 2286:14
**particular** [26] - 2179:6, 2190:11, 2193:12, 2211:9, 2212:15, 2215:3, 2215:21, 2232:1, 2257:9, 2257:22, 2270:14, 2289:23, 2292:5, 2295:21, 2299:23, 2305:7, 2305:20, 2305:21, 2305:23, 2306:3, 2307:10, 2307:22, 2315:12, 2316:17, 2316:20, 2329:3
**particularly** [9] - 2205:24, 2243:12, 2243:22, 2245:6, 2263:14, 2275:1, 2292:11, 2292:20, 2339:5
**parties** [1] - 2246:20
**partner** [1] - 2204:1
**Partners** [7] - 2267:13, 2268:5, 2274:11, 2274:15, 2274:24, 2281:14, 2283:7
**Partners'** [1] - 2267:14
**party** [2] - 2332:9, 2332:16
**password** [1] - 2270:23
**past** [1] - 2191:16
**patents** [2] - 2332:9, 2332:16
**Paul** [6] - 2246:4, 2246:7, 2246:17, 2247:24, 2248:17, 2248:22
**pay** [15] - 2154:17, 2155:25, 2161:22, 2169:8, 2169:15, 2179:25, 2200:10, 2237:8, 2237:12, 2243:11, 2248:9, 2270:18, 2292:14, 2292:23, 2307:22
**Pay** [1] - 2168:24
**paycheck** [1] - 2158:23
**paying** [4] - 2240:6, 2283:7, 2290:23, 2339:7
**payment** [3] - 2248:24, 2275:7, 2282:14
**Payment** [1] - 2168:21

**payments** [4] - 2248:25, 2249:3, 2249:6, 2281:13
**payoff** [1] - 2168:25
**PDF** [1] - 2196:9
**PDQ** [2] - 2158:14, 2158:15
**Peca** [7] - 2165:23, 2234:22, 2325:21, 2326:10, 2327:12, 2330:12, 2330:14
**Peca's** [1] - 2326:11
**PEII** [3] - 2173:8, 2173:10, 2173:12
**pen** [1] - 2188:19
**pendency** [1] - 2191:17
**Pennsylvania** [1] - 2210:3
**people** [13] - 2160:8, 2170:4, 2286:25, 2287:2, 2287:3, 2292:1, 2300:7, 2300:13, 2324:13, 2327:20, 2328:4, 2328:20, 2336:8
**people's** [2] - 2320:9, 2328:25
**percent** [3] - 2292:15, 2292:23, 2293:13
**percentage** [3] - 2216:5, 2216:15, 2216:21
**perfectly** [1] - 2323:11
**perhaps** [2] - 2327:7, 2327:11
**period** [13] - 2190:6, 2195:22, 2196:4, 2199:14, 2200:16, 2219:14, 2219:23, 2221:15, 2296:14, 2301:8, 2303:25, 2334:7
**permission** [2] - 2244:11, 2307:15
**person** [6] - 2192:3, 2227:15, 2246:22, 2285:24, 2291:3, 2331:19
**personal** [2] - 2164:15, 2240:6
**personally** [8] - 2224:21, 2237:5, 2259:16, 2288:25, 2318:14, 2331:13, 2332:7, 2333:8
**persons** [1] - 2317:2
**perspective** [5] - 2206:16, 2222:4, 2231:23, 2302:21,

2337:13
**persuade** [1] - 2322:3
**pertains** [1] - 2215:23
**petition** [5] - 2231:21, 2231:22, 2232:5, 2232:12, 2232:19
**Phil** [111] - 2160:20, 2160:23, 2162:9, 2163:22, 2164:6, 2169:21, 2173:22, 2174:16, 2175:2, 2182:6, 2182:18, 2182:20, 2185:12, 2193:2, 2193:6, 2195:15, 2196:9, 2196:12, 2196:23, 2196:25, 2197:3, 2197:6, 2197:8, 2197:10, 2197:17, 2197:25, 2198:5, 2198:10, 2198:13, 2198:17, 2199:1, 2199:8, 2199:16, 2200:14, 2202:1, 2202:7, 2202:18, 2203:22, 2203:23, 2212:9, 2216:24, 2217:12, 2217:22, 2218:9, 2218:13, 2218:20, 2220:5, 2220:11, 2220:15, 2220:23, 2221:1, 2221:2, 2221:10, 2221:12, 2221:15, 2221:21, 2221:24, 2223:3, 2223:4, 2223:5, 2223:12, 2223:15, 2223:21, 2224:5, 2224:7, 2224:18, 2225:20, 2225:24, 2226:13, 2226:22, 2227:1, 2227:2, 2227:9, 2227:17, 2228:1, 2228:10, 2228:11, 2231:14, 2231:24, 2232:2, 2232:6, 2232:9, 2232:13, 2234:5, 2235:24, 2236:2, 2236:9, 2236:18, 2236:19, 2238:6, 2238:15, 2246:9, 2268:23, 2271:16, 2287:24, 2297:23, 2297:24, 2299:5, 2314:15, 2314:23, 2315:4, 2315:24, 2316:7, 2316:9, 2317:7, 2317:17, 2334:10

**Phil's** [1] - 2224:23
**Philip** [1] - 2152:6
**PHILLIP** [1] - 2152:6
**Phillip** [1] - 2152:21
**Phoenix** [3] - 2195:13, 2239:2, 2254:18
**phone** [11] - 2160:10, 2182:5, 2192:2, 2192:11, 2198:7, 2200:15, 2289:2, 2289:3, 2296:15, 2315:16, 2336:15
**phony** [1] - 2336:15
**photocopies** [1] - 2213:2
**photocopy** [7] - 2194:25, 2212:14, 2213:11, 2213:22, 2214:13, 2215:18, 2304:17
**photograph** [5] - 2315:14, 2315:18, 2315:23, 2316:15
**photographs** [2] - 2272:6, 2315:12
**photos** [2] - 2273:6, 2280:6
**phrase** [1] - 2280:15
**physically** [2] - 2185:23, 2248:21
**picking** [2] - 2272:3, 2319:24
**picks** [1] - 2160:2
**picture** [1] - 2315:16
**pictures** [1] - 2272:10
**piece** [7] - 2163:17, 2201:19, 2201:23, 2202:2, 2202:11, 2294:1, 2328:2
**pieces** [2] - 2251:9, 2336:7
**pilot** [3] - 2270:18, 2279:5, 2279:6
**pilots** [1] - 2278:16
**pinpoint** [2] - 2321:23, 2331:19
**Pittsburgh** [6] - 2158:1, 2210:3, 2210:4, 2210:11, 2210:15, 2296:9
**Place** [1] - 2180:3
**place** [18] - 2172:8, 2186:19, 2187:12, 2188:5, 2189:16, 2212:8, 2218:1, 2222:23, 2223:2, 2245:15, 2247:8, 2247:23, 2256:17, 2256:18, 2257:23, 2262:12, 2265:7,

2277:3
**placed** [1] - 2263:23
**plaintiff** [2] - 2229:24, 2236:20
**plan** [5] - 2159:15, 2159:18, 2246:19, 2279:20, 2281:6
**plane** [20] - 2178:10, 2271:14, 2271:16, 2271:17, 2272:11, 2272:12, 2273:19, 2275:8, 2275:13, 2276:3, 2276:6, 2276:8, 2276:10, 2276:19, 2279:8, 2280:5, 2280:6, 2283:7, 2298:10, 2314:11, 2314:14, 2314:16, 2315:21, 2315:23, 2316:20, 2339:8
**planes** [3] - 2178:9, 2276:17, 2314:20
**plant** [1] - 2298:3
**Playboy** [1] - 2173:14
**played** [16] - 2157:16, 2157:18, 2157:20, 2159:4, 2159:5, 2159:6, 2159:7, 2210:4, 2234:16, 2234:21, 2234:25, 2235:4, 2235:7, 2235:10, 2235:12, 2259:17
**player** [10] - 2157:13, 2160:25, 2161:16, 2162:7, 2162:22, 2231:15, 2234:16, 2234:21, 2234:25, 2235:4
**players** [14] - 2160:7, 2161:14, 2165:17, 2165:18, 2165:20, 2176:8, 2182:12, 2182:24, 2231:13, 2235:17, 2246:24, 2259:13, 2273:23, 2288:19
**playing** [8] - 2158:6, 2158:8, 2158:10, 2160:23, 2160:25, 2163:2, 2174:10, 2182:2
**Plaza** [1] - 2152:16, 2153:8
**pledge** [3] - 2312:20, 2332:14, 2332:16
**Pledge** [1] - 2311:1
**pledged** [1] - 2211:14
**pledging** [1] - 2332:8

**Plumbing** [2] - 2158:14, 2158:16
**pocket** [2] - 2249:10, 2249:11
**point** [47] - 2158:7, 2182:9, 2193:24, 2199:3, 2205:16, 2206:9, 2209:25, 2214:2, 2220:18, 2220:22, 2221:1, 2221:2, 2222:14, 2223:11, 2224:18, 2232:1, 2242:10, 2242:22, 2243:5, 2247:12, 2247:15, 2247:21, 2248:13, 2249:9, 2252:17, 2267:17, 2269:25, 2271:12, 2285:21, 2286:17, 2300:2, 2300:10, 2300:21, 2301:9, 2302:16, 2303:1, 2303:13, 2303:18, 2314:3, 2325:16, 2325:17, 2325:23, 2326:5, 2326:16, 2327:25, 2328:24, 2331:4
**pointed** [1] - 2333:19
**pointing** [1] - 2273:2
**points** [1] - 2270:10
**poorly** [1] - 2221:18
**portfolio** [2] - 2200:4, 2211:21
**portion** [14] - 2185:3, 2244:12, 2246:2, 2253:17, 2261:2, 2261:3, 2270:9, 2290:11, 2292:11, 2292:21, 2293:3, 2308:2, 2311:21, 2311:22
**portions** [6] - 2208:13, 2231:12, 2241:11, 2268:14, 2272:24
**position** [5] - 2206:20, 2266:6, 2327:21, 2328:6, 2336:2
**positive** [2] - 2295:11, 2306:24
**positively** [1] - 2266:14
**possibility** [4] - 2199:22, 2231:8, 2256:22, 2273:17
**possible** [1] - 2339:23
**possibly** [2] - 2286:3, 2324:25
**post** [2] - 2211:1, 2328:20

**Post** [3] - 2188:25, 2189:6, 2210:25
**post-GSF** [1] - 2328:20
**Post-it** [2] - 2188:25, 2189:6
**Postal** [1] - 2190:8
**postal** [1] - 2190:10
**potentially** [1] - 2323:2
**power** [8] - 2162:19, 2162:21, 2162:25, 2163:4, 2163:8, 2167:25, 2172:6, 2218:13
**practice** [1] - 2207:5
**precedes** [1] - 2262:16
**precluding** [1] - 2232:24
**prejudice** [1] - 2302:10
**prep** [1] - 2335:24
**prepaid** [2] - 2169:22, 2170:3
**preparation** [1] - 2336:18
**prepare** [3] - 2336:22, 2337:8, 2338:24
**prepared** [2] - 2334:6, 2336:25
**preposition** [1] - 2302:24
**prepping** [1] - 2331:11
**present** [5] - 2186:10, 2187:23, 2188:1, 2300:13, 2320:7
**presentation** [1] - 2335:20
**presented** [8] - 2191:10, 2223:4, 2223:6, 2223:12, 2279:19, 2303:6, 2320:7, 2338:3
**presenting** [1] - 2309:4
**preserve** [1] - 2234:7
**preside** [1] - 2320:8
**pretrial** [1] - 2302:24
**pretty** [10] - 2160:1, 2162:11, 2170:4, 2201:6, 2306:21, 2306:22, 2307:2, 2313:19, 2314:13, 2329:17
**Pretty** [1] - 2158:16
**prevail** [1] - 2211:11
**previous** [1] - 2309:2
**previously** [1] - 2245:16

**print** [1] - 2339:12
**printed** [1] - 2328:2
**printer** [2] - 2209:1, 2209:4
**printing** [6] - 2214:16, 2214:17, 2214:18, 2214:19, 2214:21
**private** [5] - 2178:9, 2269:14, 2274:7, 2276:3, 2316:9
**privileged** [2] - 2207:22, 2208:15
**Privitello** [1] - 2292:2
**problem** [3] - 2154:24, 2154:25, 2333:2
**proceeding** [5] - 2231:3, 2232:1, 2232:5, 2234:7, 2299:15
**proceedings** [1] - 2297:15
**processes** [1] - 2207:23
**produce** [2] - 2204:14, 2204:17
**produced** [3] - 2208:3, 2329:14
**product** [1] - 2207:23
**production** [2] - 2171:21, 2189:9
**professional** [2] - 2158:25, 2165:20
**professionally** [2] - 2158:6, 2158:10
**proffer** [1] - 2338:22
**project** [17] - 2163:11, 2163:14, 2163:25, 2164:23, 2165:5, 2165:9, 2165:12, 2165:15, 2177:22, 2201:16, 2202:7, 2203:11, 2216:6, 2216:15, 2216:16, 2229:7, 2297:16
**projects** [3] - 2178:2, 2180:7, 2271:10
**prop** [9] - 2271:16, 2276:8, 2276:10, 2276:19, 2279:8, 2314:11, 2314:12, 2314:16, 2316:6
**propeller** [1] - 2276:6
**proper** [2] - 2179:9, 2323:11
**properties** [1] - 2202:14
**property** [10] - 2163:17, 2201:20, 2201:23, 2202:2, 2202:9, 2202:11,

2296:18, 2297:23, 2298:1
**Property** [1] - 2174:22
**propose** [1] - 2162:3
**prosecuting** [1] - 2204:18
**prosecutor** [11] - 2179:8, 2186:4, 2188:8, 2188:13, 2189:15, 2191:11, 2191:22, 2204:13, 2209:17, 2278:3, 2307:9
**prosecutors** [3] - 2186:4, 2186:6, 2187:23
**prospectus** [2] - 2205:22, 2206:14
**protected** [1] - 2207:21
**prove** [2] - 2232:25, 2335:2
**provide** [2] - 2269:23, 2334:1
**provided** [4] - 2206:18, 2301:10, 2309:9, 2338:17
**providing** [3] - 2262:11, 2270:22, 2272:6
**publish** [3] - 2166:19, 2263:5, 2272:24
**Publishing** [3] - 2173:8, 2173:11, 2173:12
**pull** [2] - 2156:23, 2209:3
**purchase** [3] - 2163:18, 2178:10, 2202:8
**purchased** [2] - 2202:15, 2224:11
**purchases** [1] - 2224:13
**pure** [1] - 2205:23
**purpose** [10] - 2169:24, 2175:2, 2224:20, 2281:24, 2317:9, 2322:15, 2322:25, 2323:1, 2323:19, 2333:25
**purposes** [10] - 2195:10, 2227:2, 2237:3, 2240:20, 2256:9, 2280:9, 2286:15, 2287:7, 2290:5, 2325:18
**pursuant** [1] - 2218:13
**pursue** [1] - 2223:23
**pursuing** [1] - 2203:19

**push** [2] - 2171:13, 2171:18
**put** [23] - 2163:16, 2170:1, 2171:9, 2178:1, 2178:24, 2179:15, 2179:20, 2180:5, 2181:17, 2206:7, 2267:16, 2274:11, 2284:24, 2297:18, 2298:6, 2307:17, 2308:15, 2314:7, 2320:5, 2320:23, 2321:4, 2324:12, 2333:4
**putting** [3] - 2159:17, 2283:19, 2312:21

## Q

**quarter** [1] - 2185:13
**quarterly** [2] - 2162:1, 2223:7
**QUESTION** [8] - 2310:25, 2311:15, 2312:5, 2312:8, 2312:11, 2312:15, 2312:18, 2312:25
**questioned** [2] - 2178:8, 2182:6
**questioning** [10] - 2206:6, 2319:15, 2320:1, 2320:10, 2323:1, 2323:17, 2324:14, 2324:17, 2333:25
**questions** [43] - 2168:6, 2174:3, 2183:4, 2188:8, 2188:9, 2188:12, 2188:13, 2192:2, 2201:7, 2207:4, 2208:9, 2223:13, 2233:3, 2234:11, 2236:1, 2236:25, 2239:13, 2239:24, 2243:7, 2243:18, 2251:20, 2252:23, 2268:15, 2280:1, 2283:19, 2293:8, 2294:6, 2295:23, 2295:24, 2299:9, 2300:5, 2300:6, 2300:12, 2300:16, 2302:17, 2308:8, 2316:21, 2316:23, 2318:4, 2318:5, 2318:19, 2324:8, 2334:4
**Quick** [1] - 2158:16
**quick** [3] - 2157:23,

2189:7, 2235:21
**quickly** [2] - 2251:20, 2326:1
**quite** [4] - 2296:11, 2313:12, 2339:8
**quote** [2] - 2226:10, 2259:23

## R

**rackets** [1] - 2246:18
**raise** [2] - 2156:11, 2181:10
**raised** [5] - 2301:4, 2301:25, 2335:7, 2335:8
**ran** [1] - 2272:12
**Ranford** [3] - 2235:9, 2334:12, 2338:13
**ranford** [1] - 2338:14
**rang** [1] - 2161:16
**rapid** [2] - 2302:17, 2306:18
**rather** [5] - 2223:22, 2227:2, 2302:13, 2314:3, 2332:11
**RE** [1] - 2190:23
**re** [5] - 2191:5, 2195:14, 2244:18, 2286:21, 2288:5
**re-ask** [3] - 2191:5, 2286:21, 2288:5
**reacquired** [2] - 2269:21, 2270:1
**read** [34] - 2178:5, 2178:7, 2180:21, 2193:17, 2193:18, 2193:19, 2193:24, 2194:2, 2195:10, 2212:4, 2223:12, 2242:4, 2243:17, 2244:12, 2253:18, 2268:14, 2279:23, 2280:10, 2285:9, 2289:19, 2295:12, 2307:21, 2307:24, 2310:6, 2311:24, 2318:24, 2321:1, 2321:2, 2322:7, 2324:8, 2331:24, 2331:25, 2333:19
**reading** [12] - 2180:20, 2233:2, 2233:4, 2248:16, 2260:3, 2269:19, 2292:18, 2295:14, 2310:24, 2311:14, 2312:1, 2312:4
**reads** [1] - 2211:14
**ready** [4] - 2154:6,

2207:15, 2251:3, 2336:12
**real** [2] - 2177:21, 2222:15
**realize** [1] - 2278:12
**really** [16] - 2159:18, 2162:8, 2164:22, 2178:9, 2184:3, 2187:18, 2201:3, 2220:10, 2235:4, 2298:4, 2313:12, 2327:24, 2329:12, 2330:1, 2331:22
**realtor** [1] - 2279:3
**reason** [11] - 2155:3, 2201:22, 2201:25, 2202:9, 2278:1, 2290:12, 2321:4, 2323:18, 2328:1, 2329:23, 2335:6
**reasonable** [1] - 2330:4
**reasons** [2] - 2226:18, 2320:12
**recalled** [1] - 2314:7
**recalling** [1] - 2257:18
**receive** [11] - 2166:23, 2190:3, 2195:22, 2196:4, 2198:16, 2198:25, 2210:1, 2216:5, 2237:24, 2238:5, 2285:2
**RECEIVED** [6] - 2342:6, 2342:10, 2342:12, 2342:14, 2342:16, 2342:18
**received** [37] - 2195:7, 2197:8, 2197:10, 2204:3, 2206:8, 2206:14, 2211:13, 2215:9, 2238:9, 2241:22, 2244:6, 2250:10, 2252:4, 2252:9, 2252:11, 2254:25, 2255:6, 2258:15, 2260:18, 2260:25, 2261:11, 2261:16, 2262:23, 2263:4, 2264:2, 2264:9, 2268:4, 2272:18, 2272:21, 2272:23, 2274:13, 2275:22, 2276:23, 2283:11, 2285:14, 2305:15, 2317:17
**receiving** [20] - 2190:8, 2215:4, 2215:23, 2216:15, 2216:21, 2238:14, 2258:11, 2258:20,

2259:3, 2259:19, 2263:10, 2265:2, 2268:17, 2268:25, 2273:18, 2273:21, 2274:22, 2280:1, 2280:2, 2284:14
**recently** [1] - 2268:20
**recess** [3] - 2207:14, 2250:23, 2300:25
**recognize** [12] - 2161:5, 2214:13, 2249:24, 2251:22, 2259:10, 2262:14, 2263:18, 2272:5, 2278:15, 2281:16, 2289:10, 2317:14
**recollect** [1] - 2283:20
**recollection** [81] - 2171:9, 2180:24, 2197:16, 2198:24, 2199:8, 2211:10, 2212:6, 2215:2, 2215:4, 2215:22, 2217:4, 2218:19, 2229:9, 2233:4, 2236:7, 2236:12, 2236:17, 2236:23, 2237:2, 2240:21, 2240:24, 2241:13, 2245:3, 2249:15, 2250:7, 2253:5, 2254:9, 2256:4, 2256:8, 2256:16, 2256:17, 2257:17, 2257:22, 2258:3, 2258:11, 2260:3, 2261:8, 2261:12, 2268:17, 2269:20, 2269:25, 2270:8, 2271:3, 2271:20, 2274:16, 2275:4, 2275:17, 2278:5, 2278:21, 2279:15, 2280:7, 2281:23, 2281:25, 2282:5, 2282:13, 2285:1, 2286:6, 2289:15, 2289:22, 2289:25, 2290:4, 2292:1, 2292:6, 2292:12, 2292:17, 2292:19, 2301:8, 2306:23, 2317:18, 2319:9, 2320:14, 2320:24, 2320:25, 2321:2, 2321:8, 2321:9, 2321:14, 2326:2, 2327:18, 2327:21, 2329:12
**recommendation** [1] -

2221:21
**recommending** [4] - 2219:14, 2221:2, 2221:9, 2221:16
**reconsideration** [1] - 2207:17
**reconvene** [1] - 2318:23
**record** [22] - 2153:17, 2156:19, 2173:3, 2178:23, 2179:8, 2184:7, 2195:10, 2205:20, 2206:12, 2233:2, 2263:22, 2267:9, 2275:10, 2295:12, 2295:17, 2303:13, 2311:25, 2313:13, 2323:6, 2330:17, 2333:1, 2333:24
**recorded** [1] - 2218:5
**records** [6] - 2219:3, 2227:3, 2228:5, 2228:6, 2267:12, 2340:7
**recovered** [1] - 2273:19
**RECROSS** [6] - 2299:12, 2304:13, 2318:6, 2341:19, 2341:21, 2341:23
**RECROSS-EXAMINATION** [2] - 2299:12, 2341:19
**red** [1] - 2168:6
**redact** [2] - 2208:7, 2208:14
**REDIRECT** [2] - 2293:11, 2341:17
**redirect** [13] - 2302:12, 2306:16, 2307:1, 2307:8, 2308:8, 2317:1, 2317:15, 2334:5, 2334:15, 2334:16, 2334:23, 2335:7, 2337:24
**reduce** [1] - 2220:18
**refer** [1] - 2298:8
**reference** [19] - 2192:9, 2193:12, 2201:4, 2202:15, 2211:18, 2211:25, 2212:15, 2215:15, 2216:4, 2218:14, 2224:3, 2253:2, 2275:7, 2299:22, 2300:4, 2305:20, 2315:18, 2316:14, 2320:20

**referenced** [1] - 2191:8
**referencing** [1] - 2311:23
**referred** [1] - 2244:24
**referring** [6] - 2242:6, 2275:1, 2293:1, 2295:8, 2297:7, 2298:8
**reflect** [1] - 2253:9
**reflects** [2] - 2263:22, 2285:11
**refresh** [32] - 2171:8, 2180:24, 2212:6, 2233:3, 2236:7, 2236:12, 2236:17, 2236:23, 2241:13, 2245:3, 2249:15, 2253:5, 2256:4, 2256:8, 2271:3, 2274:15, 2275:16, 2278:4, 2279:15, 2280:7, 2281:25, 2282:5, 2282:13, 2285:1, 2289:22, 2292:12, 2292:17, 2292:19, 2320:14, 2321:2, 2326:2
**refreshed** [1] - 2320:17
**refreshes** [5] - 2261:12, 2268:16, 2269:20, 2270:7, 2289:15
**refreshing** [2] - 2271:20, 2321:14
**refurbished** [1] - 2269:21
**refused** [1] - 2237:8
**regard** [4] - 2241:1, 2251:23, 2303:1, 2333:14
**regarding** [28] - 2185:3, 2185:4, 2185:5, 2206:6, 2217:13, 2231:2, 2231:7, 2241:15, 2241:18, 2244:1, 2247:13, 2249:19, 2253:12, 2254:16, 2261:2, 2262:1, 2262:11, 2272:15, 2273:7, 2274:14, 2279:16, 2280:25, 2281:12, 2281:19, 2282:14, 2283:6, 2322:22, 2323:4
**regardless** [2] - 2270:15, 2319:13

**regards** [22] - 2240:19, 2243:21, 2245:19, 2248:3, 2250:1, 2250:3, 2250:5, 2251:25, 2252:12, 2253:7, 2255:10, 2262:11, 2269:1, 2273:18, 2278:20, 2281:15, 2281:17, 2286:16, 2287:14, 2288:16, 2290:6, 2318:10
**regular** [1] - 2161:22
**relate** [1] - 2174:24
**related** [7] - 2184:3, 2195:18, 2227:3, 2228:6, 2322:20, 2323:5, 2323:22
**relates** [37] - 2190:11, 2190:18, 2191:8, 2194:9, 2195:21, 2197:10, 2200:3, 2200:8, 2201:12, 2204:18, 2205:11, 2205:12, 2205:16, 2210:18, 2213:14, 2214:4, 2214:23, 2215:3, 2215:17, 2215:21, 2216:19, 2218:4, 2221:22, 2224:25, 2235:25, 2237:24, 2238:3, 2299:15, 2299:24, 2305:1, 2305:7, 2305:12, 2306:3, 2307:10, 2308:7, 2310:8, 2314:15
**relationship** [1] - 2160:11
**relative** [1] - 2268:15
**release** [1] - 2195:18
**relevance** [4] - 2305:14, 2322:13, 2322:18
**rely** [2] - 2319:18, 2319:20
**remedy** [1] - 2302:20
**remember** [116] - 2164:10, 2166:5, 2169:20, 2180:16, 2180:17, 2182:7, 2182:18, 2191:15, 2192:16, 2192:17, 2194:16, 2194:17, 2194:18, 2194:20, 2198:14, 2199:11, 2212:11, 2217:14, 2218:21, 2221:7, 2223:17, 2223:19, 2223:25, 2224:2,

2236:24, 2236:25, 2240:14, 2240:16, 2241:10, 2241:14, 2243:9, 2253:8, 2254:5, 2254:7, 2254:11, 2257:9, 2257:13, 2258:4, 2258:5, 2258:23, 2259:6, 2259:19, 2259:22, 2261:25, 2262:10, 2263:8, 2264:18, 2264:20, 2265:1, 2265:3, 2269:7, 2269:8, 2270:4, 2271:12, 2272:10, 2272:11, 2273:13, 2274:3, 2274:22, 2276:6, 2276:13, 2276:16, 2276:19, 2276:20, 2279:1, 2281:11, 2282:11, 2284:1, 2285:8, 2287:6, 2287:8, 2287:15, 2287:22, 2288:25, 2289:12, 2290:12, 2290:17, 2291:2, 2291:6, 2291:8, 2291:14, 2291:19, 2292:3, 2292:7, 2293:20, 2293:22, 2293:25, 2294:2, 2294:6, 2295:3, 2295:6, 2295:14, 2295:23, 2295:24, 2299:3, 2310:18, 2310:19, 2310:20, 2312:22, 2314:5, 2314:6, 2314:7, 2315:5, 2316:1, 2325:17, 2328:13, 2328:15, 2329:2, 2329:4, 2329:24, 2335:4, 2336:9

**remembered** [3] - 2190:15, 2282:12, 2326:3
**repeat** [2] - 2196:1, 2198:1, 2237:17, 2237:18
**repeated** [1] - 2322:7
**repeatedly** [1] - 2337:1
**repetitive** [2] - 2179:4, 2290:14
**rephrase** [6] - 2175:1, 2189:22, 2200:1, 2201:24, 2209:24, 2314:21
**replace** [1] - 2155:24

**reply** [2] - 2245:22, 2256:1
**reporter** [1] - 2196:22
**Reporter(s** [1] - 2153:7
**reports** [1] - 2250:20
**represent** [8] - 2185:12, 2232:8, 2232:9, 2237:3, 2238:25, 2245:4, 2288:16, 2312:19
**representation** [2] - 2290:13, 2319:19
**representations** [1] - 2231:15
**representative** [1] - 2211:18
**represented** [1] - 2203:11
**representing** [3] - 2233:7, 2237:12, 2290:6
**represents** [1] - 2168:25
**reproduced** [1] - 2329:15
**request** [4] - 2205:15, 2214:3, 2249:12, 2302:7
**requested** [1] - 2214:5
**requesting** [1] - 2324:11
**requests** [1] - 2207:23
**require** [1] - 2340:6
**reserve** [1] - 2303:2
**reside** [1] - 2189:20
**residence** [1] - 2190:5
**residing** [1] - 2190:19
**resolved** [1] - 2268:20
**resort** [1] - 2298:9
**respect** [8] - 2155:18, 2184:12, 2269:22, 2308:9, 2322:17, 2323:22, 2324:21, 2327:4, 2328:22
**respective** [1] - 2279:21
**respond** [5] - 2181:11, 2194:3, 2253:21, 2328:14, 2329:5
**responded** [4] - 2248:20, 2255:21, 2261:13, 2285:10
**respondent** [1] - 2229:25
**responding** [4] - 2252:17, 2253:11, 2254:14, 2262:10
**response** [9] - 2177:18, 2254:21,

2255:9, 2255:13, 2255:17, 2260:11, 2261:4, 2268:13, 2301:23
**responsibility** [1] - 2333:8
**responsible** [3] - 2203:19, 2271:1, 2339:7
**rest** [3] - 2198:11, 2199:1, 2335:25
**result** [4] - 2218:12, 2219:2, 2271:6, 2271:22
**resume** [1] - 2304:4
**resumes** [1] - 2209:7
**retained** [5] - 2224:20, 2224:21, 2237:2, 2245:4, 2246:17
**retaining** [1] - 2290:5
**retired** [1] - 2182:2
**retirement** [2] - 2169:5, 2169:8
**return** [5] - 2195:24, 2196:6, 2196:14, 2218:12, 2222:17
**returned** [1] - 2196:24
**returns** [1] - 2219:25
**review** [3] - 2197:21, 2206:24, 2258:7
**reviewed** [1] - 2261:1
**revolving** [1] - 2301:12
**RICHARD** [1] - 2152:23
**Richard** [2] - 2154:4, 2247:13
**Richard's** [1] - 2246:8
**Richards** [7] - 2178:6, 2182:19, 2246:5, 2246:10, 2246:12, 2246:22, 2248:12
**Richards'** [1] - 2182:23
**Richardson** [1] - 2247:24
**Rick** [1] - 2185:12
**rid** [2] - 2160:15, 2160:17
**rings** [1] - 2237:22
**rink** [3] - 2161:3, 2182:11, 2182:12
**riot** [1] - 2321:13
**rise** [3] - 2153:12, 2155:10, 2304:5
**risk** [8] - 2201:14, 2201:17, 2201:18, 2221:11, 2221:24, 2222:3, 2222:7, 2222:10

**riskier** [1] - 2221:22, 2222:8
**risky** [2] - 2162:16, 2201:13
**Rizzi** [1] - 2292:2
**Road** [2] - 2153:1, 2195:13
**ROBERT** [1] - 2153:3
**Robert** [2] - 2153:25, 2238:24
**Romanowski** [1] - 2192:4
**Ron** [13] - 2178:5, 2182:19, 2182:23, 2183:3, 2246:5, 2246:8, 2246:10, 2246:12, 2246:17, 2247:13, 2247:24, 2248:11, 2248:22
**RONALD** [1] - 2153:7
**room** [3] - 2182:24, 2186:14, 2300:13
**Ross** [1] - 2154:10
**round** [2] - 2202:25, 2203:4
**Rucchin** [1] - 2334:12
**rude** [1] - 2196:21
**Rule** [7] - 2206:19, 2206:20, 2301:4, 2327:24, 2334:1, 2336:12, 2338:8
**rule** [1] - 2330:19
**ruling** [2] - 2327:4, 2327:8
**run** [1] - 2291:15

# S

**S-Y-D-O-R** [1] - 2156:21
**safe** [1] - 2318:25
**salary** [2] - 2159:3, 2159:12
**sale** [3] - 2191:2, 2191:7, 2191:19
**sand** [1] - 2298:3
**sandbag** [4] - 2336:24, 2337:4, 2337:6, 2337:7
**sandbagging** [2] - 2337:11, 2338:23
**Sanderson** [1] - 2161:15
**sandwich** [1] - 2239:5
**SARITHA** [1] - 2152:18
**saritha** [1] - 2153:22
**sat** [1] - 2161:1
**satisfy** [1] - 2330:24
**save** [4] - 2159:22,

2329:13, 2331:22, 2338:4
**saw** [21] - 2161:5, 2166:25, 2167:4, 2167:8, 2167:14, 2169:11, 2185:16, 2185:19, 2186:23, 2187:9, 2187:19, 2191:10, 2191:13, 2193:13, 2194:14, 2200:7, 2239:8, 2305:16, 2305:21, 2315:23, 2316:15
**scheduled** [2] - 2245:16, 2248:19
**school** [2] - 2158:7, 2203:3
**Schwab** [5] - 2164:16, 2200:3, 2305:5, 2305:6, 2305:13
**scope** [2] - 2184:4, 2298:13
**Scotia** [1] - 2159:17
**Scott** [8] - 2160:12, 2162:5, 2192:4, 2219:10, 2220:5, 2220:9, 2220:23, 2221:6
**Scottsdale** [1] - 2179:22
**screen** [3] - 2173:2, 2195:9, 2260:10
**searched** [1] - 2340:7
**season** [11] - 2157:17, 2157:24, 2157:25, 2158:2, 2159:4, 2159:5, 2160:19, 2162:22, 2170:7, 2296:6, 2296:9
**seasons** [3] - 2157:21, 2160:14, 2296:6
**seated** [8] - 2153:13, 2155:13, 2156:22, 2209:10, 2251:3, 2251:14, 2301:1, 2304:8
**second** [9] - 2241:7, 2243:16, 2244:22, 2262:21, 2275:2, 2279:14, 2282:5, 2303:15, 2312:11
**seconds** [1] - 2277:1
**secretary** [4] - 2160:10, 2175:24, 2228:11, 2322:12
**secured** [1] - 2271:22
**see** [56] - 2155:16, 2167:19, 2168:2, 2168:16, 2168:21, 2168:25, 2173:4,

2173:8, 2177:23, 2177:24, 2178:4, 2178:13, 2183:7, 2192:12, 2194:22, 2194:24, 2202:13, 2209:16, 2210:14, 2212:17, 2212:19, 2213:2, 2213:4, 2213:11, 2213:13, 2213:15, 2213:23, 2215:18, 2233:6, 2242:14, 2244:25, 2246:1, 2247:10, 2252:2, 2255:14, 2256:2, 2258:8, 2260:20, 2268:8, 2269:19, 2270:7, 2279:15, 2284:11, 2289:15, 2289:21, 2292:17, 2293:5, 2303:4, 2308:17, 2309:20, 2324:14, 2325:12, 2327:13, 2330:3, 2332:18, 2332:19

**seeing** [11] - 2171:7, 2177:6, 2190:16, 2194:16, 2202:16, 2259:21, 2280:13, 2310:19, 2327:21, 2329:9, 2329:24

**seek** [1] - 2224:24

**sees** [1] - 2309:20

**selection** [1] - 2319:7

**Sell** [3] - 2167:2, 2190:23, 2191:14

**sell** [1] - 2163:19

**selling** [1] - 2231:19

**send** [9] - 2180:15, 2196:10, 2197:22, 2197:23, 2198:4, 2198:22, 2198:23, 2246:15, 2279:23

**sending** [4] - 2244:20, 2266:2, 2272:10

**sense** [3] - 2214:10, 2220:18, 2229:7

**sent** [26] - 2159:6, 2178:4, 2178:21, 2193:10, 2194:2, 2196:12, 2196:23, 2196:25, 2197:6, 2197:17, 2197:19, 2199:2, 2199:6, 2199:8, 2199:16, 2210:19, 2246:12, 2263:9, 2264:5, 2273:7, 2321:11, 2325:22, 2328:21, 2329:2, 2339:22

---

**sentence** [3] - 2246:16, 2247:7, 2295:12

**separate** [1] - 2291:11

**separately** [1] - 2263:24

**September** [2] - 2251:25, 2252:12

**Sergei** [2] - 2165:22, 2234:13

**series** [3] - 2243:18, 2294:4, 2308:8

**served** [2] - 2181:19, 2181:21

**server** [11] - 2266:14, 2266:17, 2266:22, 2266:25, 2325:1, 2325:3, 2325:5, 2325:7, 2330:7, 2340:1, 2340:7

**Service** [1] - 2190:8

**service** [1] - 2190:10

**services** [2] - 2224:20, 2252:1

**serving** [1] - 2162:2

**set** [3] - 2191:9, 2254:23, 2264:17

**setting** [1] - 2255:19

**settled** [1] - 2162:15

**settlement** [2] - 2178:3, 2242:23

**Settlement** [59] - 2174:6, 2174:15, 2174:16, 2174:24, 2175:3, 2175:8, 2175:17, 2176:2, 2176:5, 2176:11, 2178:1, 2178:6, 2178:24, 2179:13, 2179:15, 2179:20, 2180:5, 2180:10, 2237:8, 2237:11, 2239:16, 2239:25, 2243:4, 2243:10, 2246:13, 2246:19, 2246:23, 2247:6, 2247:14, 2249:5, 2249:7, 2249:13, 2249:17, 2249:20, 2253:13, 2255:10, 2256:10, 2256:23, 2257:11, 2257:14, 2258:1, 2259:14, 2262:2, 2263:11, 2263:20, 2264:4, 2268:21, 2269:1, 2271:4, 2271:6, 2271:9, 2271:21, 2280:9, 2280:12, 2281:1, 2281:6,

---

2281:24, 2322:15, 2325:18

**seven** [5] - 2157:22, 2194:19, 2324:17, 2324:19

**several** [5] - 2212:25, 2268:22, 2292:15, 2301:3, 2327:13

**share** [1] - 2279:21

**shared** [1] - 2219:6

**shareholder** [2] - 2291:2, 2291:5

**Shareholder** [1] - 2291:3

**shareholders** [2] - 2291:15, 2318:15

**shareholders'** [1] - 2291:14

**shares** [1] - 2280:3

**sharp** [2] - 2311:4, 2311:8

**shop** [1] - 2239:6

**short** [4] - 2154:8, 2154:12, 2195:11, 2273:5

**shorter** [1] - 2251:10

**shortly** [2] - 2254:4, 2261:9

**show** [42] - 2166:13, 2171:2, 2173:1, 2173:3, 2175:13, 2176:17, 2209:13, 2213:5, 2213:6, 2232:1, 2232:17, 2241:5, 2243:15, 2249:22, 2254:13, 2258:15, 2260:8, 2263:17, 2267:10, 2267:15, 2272:4, 2274:20, 2284:22, 2289:7, 2292:8, 2293:5, 2293:18, 2296:23, 2305:23, 2307:7, 2307:18, 2310:25, 2311:2, 2325:15, 2327:14, 2327:19, 2328:4, 2329:18, 2330:2, 2332:25, 2334:21

**showed** [9] - 2254:6, 2276:21, 2296:1, 2297:7, 2303:23, 2307:6, 2310:7, 2315:21, 2317:19

**showing** [6] - 2188:16, 2262:5, 2274:23, 2293:19, 2320:15, 2340:10

**Showing** [1] - 2307:19

**shown** [10] - 2189:14,

---

2194:10, 2219:3, 2306:18, 2307:8, 2315:18, 2320:22, 2320:25, 2327:23, 2336:8

**shows** [3] - 2261:5, 2275:19, 2323:21

**shuffled** [1] - 2160:8

**shut** [1] - 2324:13

**side** [13] - 2167:19, 2183:9, 2183:11, 2184:15, 2259:9, 2287:17, 2301:20, 2308:21, 2308:23, 2309:22, 2319:12, 2324:24, 2339:19

**Side** [2] - 2184:1, 2309:1

**side-bar** [7] - 2183:9, 2183:11, 2184:15, 2308:23, 2309:22, 2324:24, 2339:19

**Side-bar** [2] - 2184:1, 2309:1

**sidebar** [8] - 2230:1, 2231:1, 2265:7, 2267:20, 2276:25, 2277:3, 2278:2, 2278:13

**sides** [2] - 2322:3, 2333:2

**sign** [21] - 2195:17, 2196:6, 2196:9, 2196:13, 2197:14, 2197:22, 2198:23, 2273:9, 2279:21, 2279:23, 2288:15, 2302:15, 2306:14, 2306:15, 2306:19, 2306:21, 2306:22, 2310:12, 2313:4, 2313:24, 2314:1

**signature** [93] - 2194:24, 2195:1, 2195:25, 2197:13, 2197:17, 2198:17, 2198:22, 2198:25, 2199:2, 2199:9, 2199:17, 2199:18, 2202:20, 2212:18, 2213:3, 2213:4, 2213:11, 2213:12, 2213:13, 2213:15, 2213:16, 2213:17, 2213:23, 2213:25, 2214:1, 2214:14, 2214:15, 2214:23, 2214:24, 2214:25, 2215:18, 2215:20, 2289:10, 2290:1,

---

2290:9, 2293:23, 2294:3, 2294:10, 2294:12, 2294:13, 2294:15, 2294:17, 2294:20, 2294:23, 2295:1, 2295:10, 2300:5, 2301:14, 2301:16, 2301:20, 2302:12, 2302:13, 2302:15, 2302:18, 2302:19, 2303:18, 2304:17, 2304:18, 2306:11, 2307:2, 2307:3, 2307:13, 2307:14, 2308:4, 2308:5, 2308:9, 2308:10, 2310:9, 2310:13, 2310:15, 2311:2, 2311:3, 2312:12, 2313:7, 2313:10, 2313:16, 2313:17, 2313:23, 2334:20, 2335:15, 2335:16, 2335:22, 2336:15, 2336:19, 2336:21, 2337:16, 2337:18, 2338:7

**signatures** [6] - 2310:20, 2333:14, 2334:25, 2335:3, 2336:11, 2337:25

**signed** [20] - 2182:3, 2196:24, 2197:5, 2223:18, 2273:9, 2289:22, 2290:2, 2290:8, 2299:24, 2303:25, 2305:8, 2306:15, 2309:3, 2311:16, 2312:6, 2313:7, 2332:6, 2332:8, 2332:14, 2335:5

**significant** [1] - 2339:5

**signing** [8] - 2159:2, 2159:13, 2289:12, 2290:4, 2293:25, 2308:5, 2308:6, 2312:22

**silver** [3] - 2271:17, 2276:10

**similar** [4] - 2221:8, 2280:2, 2289:12, 2325:21

**similarity** [1] - 2219:7

**simple** [2] - 2224:17, 2313:12

**simply** [2] - 2199:9, 2328:7

**single** [2] - 2322:6,

2334:21
**singling** [1] - 2320:11
**sit** [22] - 2154:14, 2154:16, 2155:6, 2155:19, 2156:3, 2180:18, 2192:16, 2197:15, 2199:5, 2201:22, 2201:25, 2203:8, 2218:19, 2218:21, 2218:22, 2219:1, 2226:12, 2264:25, 2265:1, 2306:13, 2315:25, 2316:16
**sitting** [6] - 2155:1, 2161:8, 2182:23, 2257:16, 2257:25, 2320:16
**situated** [1] - 2179:17
**situation** [17] - 2178:4, 2180:13, 2181:13, 2183:1, 2185:21, 2198:20, 2198:22, 2224:22, 2226:11, 2240:9, 2258:2, 2272:1, 2280:21, 2286:11, 2290:25, 2309:10, 2319:21
**situations** [1] - 2280:19
**six** [6] - 2157:20, 2157:23, 2191:16, 2194:19, 2301:4, 2319:10
**size** [3] - 2188:21, 2188:24, 2189:5
**slant** [1] - 2294:24
**sloppy** [1] - 2311:4
**small** [2] - 2193:18, 2274:7
**so..** [1] - 2185:22
**sold** [1] - 2231:12
**soliciting** [1] - 2286:15
**solidify** [1] - 2166:7
**solution** [1] - 2269:23
**solutions** [1] - 2279:18
**someone** [11] - 2159:23, 2211:24, 2214:2, 2287:5, 2323:7, 2330:6, 2330:24, 2339:19, 2339:25, 2340:3
**sometime** [4] - 2193:14, 2209:17, 2281:23, 2302:25
**sometimes** [10] - 2206:10, 2310:13, 2311:17, 2311:20,

2312:7, 2312:16, 2320:19, 2320:23, 2323:9, 2334:19
**somewhat** [1] - 2333:14
**soon** [1] - 2331:6
**sooner** [1] - 2331:10
**sorry** [19] - 2174:25, 2176:24, 2180:21, 2186:2, 2186:8, 2196:1, 2199:24, 2205:11, 2213:10, 2260:21, 2261:21, 2264:21, 2269:17, 2273:15, 2284:20, 2291:11, 2294:14, 2300:9, 2339:2
**sort** [1] - 2327:18
**sound** [3] - 2163:11, 2171:15, 2174:6
**south** [1] - 2160:11
**Southern** [1] - 2299:22
**Spanish** [1] - 2301:19
**speaking** [2] - 2162:8, 2219:19
**speaks** [2] - 2313:13, 2323:6
**Special** [2] - 2186:16, 2192:3
**specific** [7] - 2167:5, 2187:2, 2215:15, 2216:14, 2218:18, 2316:12, 2317:15
**specifically** [15] - 2181:9, 2200:22, 2222:6, 2225:9, 2257:13, 2264:24, 2276:8, 2276:13, 2276:16, 2293:25, 2294:1, 2299:23, 2300:3, 2300:10, 2336:16
**specifics** [5] - 2256:19, 2265:3, 2270:5, 2281:3, 2288:14
**specify** [1] - 2307:5
**speed** [2] - 2320:3, 2332:24
**speeding** [1] - 2240:16
**spell** [1] - 2156:18
**spells** [1] - 2246:21
**spent** [2] - 2320:14, 2328:21
**spirit** [1] - 2332:4
**spoken** [2] - 2155:20, 2227:24
**spot** [1] - 2218:2

**spread** [1] - 2273:22
**Square** [1] - 2152:21
**St** [2] - 2158:3, 2296:10
**stack** [1] - 2202:21
**stake** [1] - 2320:2
**stand** [11] - 2156:9, 2156:10, 2158:15, 2208:22, 2298:22, 2304:2, 2304:4, 2322:1, 2336:1, 2337:12, 2338:13
**Standard** [2] - 2228:2, 2228:5
**standard** [2] - 2223:6, 2270:18
**standards** [1] - 2269:22
**start** [5] - 2157:14, 2198:18, 2241:7, 2243:16, 2311:2
**started** [10] - 2157:20, 2158:6, 2162:10, 2162:15, 2182:4, 2221:16, 2223:3, 2223:15, 2298:2, 2335:11
**starting** [2] - 2171:16, 2297:23
**state** [9] - 2153:16, 2156:18, 2199:14, 2200:7, 2202:9, 2206:12, 2266:3, 2315:22, 2333:23
**State** [1] - 2223:17
**statement** [11] - 2168:15, 2168:16, 2190:4, 2207:4, 2208:1, 2209:21, 2211:7, 2232:15, 2313:8, 2317:21, 2337:12
**statements** [8] - 2184:9, 2185:5, 2206:21, 2207:20, 2322:21, 2322:24, 2327:5
**STATES** [2] - 2152:1, 2152:3
**States** [6] - 2152:12, 2152:16, 2190:8, 2207:25, 2210:2, 2229:23
**status** [1] - 2261:18
**stay** [8] - 2156:4, 2160:13, 2167:8, 2187:18, 2188:6, 2198:15, 2231:6, 2233:8
**stayed** [2] - 2210:22,

2219:12
**staying** [1] - 2188:4
**step** [2] - 2318:20, 2319:17
**Steven** [1] - 2154:10
**stick** [2] - 2187:16, 2320:12
**sticker** [2] - 2307:17, 2308:15
**still** [11] - 2155:7, 2155:20, 2174:11, 2208:10, 2225:15, 2245:17, 2266:1, 2266:2, 2278:18, 2310:14, 2339:4
**stimulate** [1] - 2339:25
**stint** [1] - 2157:23
**stipulate** [3] - 2311:11, 2311:21, 2330:3
**stipulation** [1] - 2171:24
**stock** [1] - 2231:19
**stocks** [8] - 2162:11, 2162:15, 2219:15, 2219:17, 2219:24, 2221:14, 2222:9, 2312:22
**Stolper** [17] - 2285:19, 2285:22, 2285:23, 2286:4, 2286:9, 2286:25, 2287:2, 2287:17, 2288:15, 2290:5, 2290:13, 2290:21, 2291:9, 2316:23, 2316:24, 2317:5, 2317:8
**stop** [2] - 2313:2, 2335:17
**stopped** [1] - 2335:16
**storage** [2] - 2204:10, 2271:2
**straits** [1] - 2231:21
**Strangford** [1] - 2153:4
**strategic** [1] - 2321:4
**strategy** [4] - 2279:19, 2280:12, 2281:6, 2290:25
**Street** [1] - 2223:17
**string** [1] - 2237:19
**stroke** [1] - 2186:25
**stronger** [2] - 2335:12, 2337:25
**structure** [1] - 2298:2
**stuff** [17] - 2174:17, 2174:19, 2175:5, 2188:16, 2193:22, 2220:14, 2221:7,

2221:8, 2222:7, 2224:16, 2224:23, 2271:10, 2280:13, 2298:3, 2314:17, 2328:6
**stupid** [1] - 2327:14
**subject** [4] - 2260:5, 2262:1, 2268:5, 2281:20
**submit** [1] - 2329:11
**subpoena** [6] - 2181:19, 2181:22, 2181:24, 2182:5, 2182:14, 2332:12
**subsequently** [1] - 2272:8
**substance** [8] - 2193:2, 2196:13, 2202:2, 2202:11, 2203:6, 2208:20, 2302:2, 2310:13
**substantial** [1] - 2339:8
**succeed** [1] - 2222:11
**succession** [2] - 2306:18, 2323:12
**sued** [4] - 2226:17, 2227:17, 2236:20
**Suffolk** [1] - 2152:21
**sugar** [1] - 2163:17
**suggest** [4] - 2232:20, 2320:12, 2327:22, 2334:24
**suggested** [3] - 2212:8, 2325:11, 2334:9
**suggesting** [7] - 2155:1, 2320:1, 2320:3, 2325:11, 2328:25, 2337:7, 2339:19
**suggestion** [1] - 2331:1
**suggests** [1] - 2320:20
**suing** [3] - 2226:22, 2227:1, 2227:2
**suit** [1] - 2241:19
**Suite** [3] - 2152:22, 2153:2, 2195:13
**suits** [2] - 2246:20, 2261:18
**sum** [5] - 2193:2, 2196:13, 2202:10, 2238:9, 2238:14
**summation** [1] - 2338:4
**summations** [2] - 2331:24, 2331:25
**summer** [7] - 2158:11,

2158:14, 2158:18, 2160:18, 2245:14, 2252:20, 2275:15
**Sunday** [1] - 2261:6
**support** [1] - 2286:15
**supposed** [2] - 2163:16, 2273:6
**supposedly** [2] - 2169:22, 2216:8
**surgery** [1] - 2174:13
**surmise** [1] - 2302:7
**surprise** [1] - 2302:10
**surprised** [3] - 2302:11, 2333:15, 2334:6
**sustained** [12] - 2172:15, 2199:21, 2199:25, 2227:6, 2227:12, 2229:13, 2257:1, 2257:3, 2274:19, 2281:9, 2298:14, 2305:19
**switch** [1] - 2162:5
**sworn** [2] - 2156:12, 2156:16
**Syd** [2] - 2258:8, 2261:6
**Sydor** [62] - 2154:10, 2156:8, 2156:9, 2156:20, 2156:22, 2157:4, 2168:15, 2168:25, 2169:4, 2172:5, 2173:5, 2176:20, 2177:14, 2181:18, 2184:3, 2185:4, 2185:12, 2194:18, 2194:22, 2195:14, 2195:20, 2197:15, 2198:24, 2199:13, 2205:17, 2209:13, 2212:20, 2212:23, 2231:4, 2231:24, 2232:18, 2234:3, 2238:18, 2238:24, 2239:13, 2244:16, 2248:14, 2251:19, 2252:14, 2255:7, 2255:14, 2259:7, 2263:6, 2263:22, 2268:4, 2268:14, 2269:16, 2273:3, 2280:10, 2281:10, 2283:16, 2299:1, 2303:14, 2308:4, 2313:3, 2318:20, 2325:22, 2327:20, 2335:1, 2335:15, 2337:3, 2339:6
**Sydor's** [2] - 2266:18,

2303:16
**Sydor-LLC** [1] - 2195:14

**T**

**table** [2] - 2161:8, 2329:23
**tabled** [1] - 2330:21
**talks** [2] - 2233:7, 2339:6
**Tampa** [3] - 2157:23, 2157:24, 2170:8
**tampered** [1] - 2266:16
**TC** [1] - 2273:12
**team** [2] - 2157:10, 2159:7
**teams** [2] - 2157:18, 2157:20
**telephone** [4] - 2240:22, 2257:7, 2291:4, 2318:16
**ten** [2] - 2205:18, 2321:8
**ten-minute** [1] - 2205:18
**term** [1] - 2335:12
**terms** [10] - 2161:24, 2162:24, 2191:17, 2200:4, 2217:12, 2220:16, 2220:17, 2222:5, 2305:8, 2333:13
**testified** [30] - 2156:16, 2167:4, 2172:5, 2185:4, 2185:15, 2186:22, 2187:8, 2189:13, 2200:2, 2201:11, 2209:15, 2219:9, 2220:4, 2220:23, 2221:20, 2238:1, 2239:1, 2239:15, 2240:4, 2240:10, 2264:15, 2274:2, 2276:3, 2276:8, 2296:3, 2299:14, 2300:3, 2314:3, 2317:1, 2317:17
**testify** [8] - 2167:7, 2182:16, 2211:11, 2299:21, 2325:24, 2332:20, 2336:12, 2338:9
**testifying** [4] - 2239:23, 2293:20, 2310:11, 2334:8
**testimony** [41] - 2184:5, 2184:13,

2185:3, 2185:17, 2191:1, 2191:6, 2191:12, 2191:19, 2193:23, 2196:11, 2197:16, 2197:18, 2198:9, 2198:10, 2209:2, 2238:18, 2239:3, 2253:14, 2253:19, 2274:4, 2288:21, 2300:15, 2302:11, 2302:23, 2303:19, 2303:20, 2303:24, 2304:11, 2305:17, 2306:16, 2306:18, 2306:20, 2311:9, 2311:23, 2314:5, 2314:16, 2323:16, 2324:3, 2333:20, 2335:3, 2338:25
**Texas** [4] - 2190:4, 2190:19, 2210:10, 2223:17
**text** [3] - 2194:2, 2198:7, 2227:20
**THE** [173] - 2153:12, 2153:13, 2153:14, 2153:20, 2153:23, 2154:1, 2154:5, 2154:13, 2155:3, 2155:9, 2155:10, 2155:13, 2155:16, 2156:9, 2156:11, 2156:13, 2156:18, 2156:20, 2156:22, 2161:10, 2171:25, 2172:3, 2172:15, 2177:11, 2179:2, 2179:5, 2179:10, 2183:5, 2183:10, 2184:8, 2185:2, 2186:20, 2189:10, 2189:11, 2195:6, 2196:20, 2199:21, 2199:23, 2199:24, 2199:25, 2202:4, 2202:6, 2204:25, 2205:4, 2205:7, 2205:9, 2205:13, 2205:17, 2206:4, 2206:21, 2207:2, 2207:6, 2207:9, 2207:12, 2207:15, 2207:25, 2208:16, 2208:24, 2209:5, 2209:10, 2212:21, 2213:9, 2226:21, 2227:6, 2227:12, 2228:17, 2229:13, 2230:2, 2232:16, 2232:24, 2233:5,

2238:11, 2238:19, 2239:11, 2241:24, 2242:1, 2244:9, 2247:17, 2250:12, 2250:15, 2250:17, 2250:21, 2251:3, 2251:5, 2251:8, 2251:11, 2251:14, 2252:5, 2252:7, 2252:9, 2255:4, 2257:1, 2257:3, 2260:23, 2263:2, 2264:11, 2265:5, 2266:1, 2266:20, 2266:23, 2267:6, 2267:18, 2271:25, 2272:21, 2274:19, 2275:11, 2275:24, 2276:24, 2278:6, 2278:10, 2281:9, 2282:3, 2283:13, 2283:24, 2284:6, 2285:17, 2286:19, 2287:13, 2288:3, 2292:25, 2293:9, 2298:14, 2298:22, 2299:10, 2299:17, 2300:22, 2301:1, 2303:4, 2303:11, 2303:19, 2304:3, 2304:5, 2304:8, 2304:24, 2305:19, 2308:13, 2308:22, 2309:12, 2309:17, 2310:17, 2311:11, 2315:1, 2316:19, 2317:12, 2318:1, 2318:20, 2318:23, 2321:24, 2325:3, 2325:10, 2326:11, 2326:14, 2326:25, 2328:12, 2328:24, 2329:20, 2329:23, 2330:9, 2330:19, 2331:11, 2331:16, 2332:21, 2333:12, 2334:14, 2335:9, 2335:21, 2336:3, 2336:18, 2337:5, 2337:15, 2339:18, 2340:10, 2340:13
**the]Global** [1] - 2243:10
**their's** [1] - 2334:25
**themselves** [1] - 2323:23
**theory** [1] - 2338:19
**thereafter** [1] - 2254:4
**therefore** [1] - 2327:21

**thereto** [1] - 2273:18
**they've** [3] - 2205:22, 2328:11, 2336:8
**thinking** [1] - 2339:16
**third** [3] - 2289:20, 2332:9, 2332:16
**thirds** [1] - 2270:9
**thorough** [2] - 2320:1, 2331:21
**thousand** [1] - 2327:17
**three** [16] - 2154:9, 2157:25, 2160:14, 2188:6, 2188:7, 2189:3, 2219:12, 2272:9, 2274:20, 2274:25, 2289:21, 2320:22, 2324:3, 2326:18, 2334:4, 2334:11
**three-hour** [1] - 2189:3
**threw** [1] - 2251:9
**throughout** [3] - 2191:17, 2327:12, 2329:16
**throwing** [1] - 2221:11
**throws** [1] - 2278:2
**Thursday** [7] - 2154:14, 2154:16, 2155:1, 2155:6, 2155:18, 2155:19, 2156:4
**Thx** [1] - 2193:11
**ticket** [1] - 2240:16
**title** [1] - 2224:15
**titled** [1] - 2311:1
**today** [26] - 2154:10, 2161:5, 2166:17, 2167:13, 2177:14, 2186:14, 2197:15, 2201:23, 2202:1, 2204:9, 2218:19, 2218:22, 2219:2, 2224:19, 2226:12, 2264:25, 2265:1, 2305:21, 2306:13, 2315:22, 2316:12, 2316:16, 2321:19, 2324:16, 2331:7, 2333:13
**TOLKIN** [1] - 2153:7
**tommy** [1] - 2231:20
**TOMMY** [1] - 2152:7
**Tommy** [27] - 2152:8, 2153:1, 2165:5, 2173:20, 2218:22, 2219:6, 2225:11, 2225:13, 2225:15, 2225:17, 2229:24,

2231:11, 2231:17, 2232:7, 2232:8, 2232:12, 2243:21, 2244:18, 2250:2, 2252:16, 2256:23, 2265:2, 2282:10, 2286:12, 2287:24, 2314:15, 2316:7

**tomorrow** [6] - 2256:2, 2303:14, 2317:13, 2318:23, 2332:5, 2339:3

**tonight** [1] - 2322:2

**took** [7] - 2189:15, 2220:15, 2257:23, 2265:6, 2277:2, 2325:18, 2326:4

**top** [7] - 2176:20, 2177:18, 2207:1, 2243:19, 2244:15, 2283:17, 2321:22

**topic** [2] - 2260:4, 2288:7

**topics** [5] - 2217:20, 2256:13, 2258:3, 2263:14, 2287:9

**Toronto** [1] - 2160:1

**totally** [4] - 2193:10, 2253:21, 2291:10, 2334:6

**touch** [2] - 2160:4, 2225:6

**tough** [1] - 2289:9

**Tournament** [1] - 2159:8

**towards** [2] - 2180:2, 2239:17

**town** [1] - 2160:24

**track** [1] - 2270:23

**traded** [11] - 2157:21, 2157:22, 2157:23, 2158:1, 2170:8, 2210:10, 2210:11, 2210:21, 2210:22, 2279:1, 2296:8

**trades** [1] - 2158:13

**transaction** [4] - 2296:24, 2296:25, 2317:19, 2317:23

**transactions** [2] - 2168:1, 2327:16

**transcript** [1] - 2311:12

**transfer** [2] - 2178:5, 2246:13

**transferring** [1] - 2164:19

**travel** [1] - 2163:2

**traveling** [1] - 2172:8

**trend** [1] - 2160:3

**trial** [18] - 2155:17, 2156:2, 2156:6, 2184:6, 2278:3, 2301:7, 2302:4, 2319:23, 2320:5, 2320:15, 2321:16, 2322:8, 2327:19, 2329:14, 2329:16, 2330:10, 2333:10, 2334:7

**trial's** [1] - 2321:17

**tried** [4] - 2154:7, 2154:11, 2303:17, 2339:13

**tries** [1] - 2321:14

**trip** [6] - 2281:15, 2281:18, 2283:8, 2285:25, 2286:3, 2318:25

**true** [52] - 2177:4, 2188:10, 2190:20, 2191:24, 2192:1, 2192:4, 2195:21, 2196:3, 2196:6, 2197:1, 2200:5, 2201:14, 2203:12, 2203:13, 2204:22, 2209:21, 2211:15, 2211:19, 2211:23, 2215:9, 2215:10, 2216:6, 2216:19, 2216:22, 2217:18, 2218:6, 2219:12, 2219:16, 2220:7, 2220:20, 2220:24, 2220:25, 2221:5, 2221:25, 2222:16, 2222:17, 2224:9, 2224:14, 2225:16, 2226:2, 2228:2, 2228:7, 2231:22, 2237:24, 2238:3, 2314:11, 2314:19, 2317:7, 2317:10, 2322:25, 2323:7, 2333:3

**trust** [4] - 2222:1, 2305:6, 2332:1

**Trust** [27] - 2164:16, 2166:20, 2167:23, 2168:16, 2168:24, 2195:12, 2195:14, 2195:17, 2195:23, 2195:24, 2196:5, 2196:7, 2196:17, 2197:1, 2197:4, 2197:11, 2211:18, 2211:25, 2212:7, 2214:4, 2299:24, 2303:24, 2305:10,

2305:14, 2334:13, 2334:24, 2338:16

**trusted** [2] - 2200:21, 2221:21

**truth** [1] - 2323:20

**truthfully** [1] - 2300:17

**try** [17] - 2160:5, 2219:21, 2232:24, 2262:3, 2262:8, 2320:14, 2322:3, 2323:1, 2325:19, 2325:25, 2326:2, 2326:7, 2326:8, 2331:3, 2331:5, 2331:9, 2334:18

**trying** [9] - 2171:10, 2175:5, 2188:6, 2232:18, 2319:11, 2325:15, 2326:5, 2329:11, 2337:5

**Tuesday** [1] - 2241:4

**turbo** [2] - 2314:10, 2314:19

**turn** [11] - 2168:20, 2169:16, 2174:5, 2195:23, 2196:5, 2198:17, 2208:6, 2266:6, 2332:13, 2333:9, 2337:19

**turned** [1] - 2266:9

**turning** [3] - 2167:1, 2173:4, 2173:7

**twice** [3] - 2178:13, 2314:18, 2316:3

**two** [32] - 2154:16, 2154:23, 2154:24, 2155:2, 2155:21, 2162:23, 2177:22, 2180:2, 2186:6, 2187:4, 2188:25, 2189:1, 2211:24, 2222:24, 2251:9, 2256:22, 2257:20, 2270:9, 2270:10, 2276:7, 2277:1, 2298:1, 2301:14, 2310:9, 2318:5, 2320:10, 2320:12, 2324:9, 2326:18, 2331:8, 2334:13

**two-door** [1] - 2276:7

**two-thirds** [1] - 2270:9

**type** [7] - 2211:14, 2221:10, 2232:25, 2323:24, 2338:11, 2338:18, 2338:24

**typed** [1] - 2213:23

**types** [1] - 2221:3

**typewritten** [5] - 2194:22, 2206:25,

2208:6, 2208:12, 2212:16

**Tyson** [3] - 2235:1, 2239:4, 2282:8

**U**

**U.S** [2] - 2152:4, 2152:18

**U.S.A** [1] - 2153:14

**um..** [1] - 2189:21

**unavailable** [1] - 2154:9

**uncle** [3] - 2158:13, 2158:18, 2158:20

**under** [12] - 2179:18, 2197:15, 2197:25, 2212:16, 2231:14, 2240:8, 2266:11, 2278:17, 2303:2, 2306:13, 2306:18, 2315:22

**understood** [6] - 2216:3, 2216:17, 2222:12, 2322:11, 2322:16, 2322:19

**unfair** [1] - 2329:8

**unforeseen** [2] - 2154:15, 2156:2

**unfortunately** [2] - 2290:3, 2333:5

**UNITED** [2] - 2152:1, 2152:3

**united** [1] - 2152:12

**United** [5] - 2152:16, 2190:7, 2207:25, 2210:2, 2229:22

**units** [1] - 2180:3

**University** [1] - 2190:1

**unjust** [1] - 2302:10

**unless** [2] - 2270:17, 2270:25

**unnecessarily** [1] - 2330:22

**unnecessary** [1] - 2324:11

**unsigned** [1] - 2332:9

**up** [46] - 2154:9, 2154:11, 2155:23, 2156:9, 2156:24, 2161:19, 2164:5, 2168:5, 2168:9, 2182:3, 2182:16, 2192:10, 2192:11, 2192:13, 2208:10, 2211:5, 2224:19, 2225:22, 2225:23, 2243:19, 2251:19, 2254:23, 2255:19, 2263:23, 2264:17,

2266:11, 2272:3, 2272:12, 2276:21, 2285:6, 2312:3, 2312:21, 2320:23, 2327:23, 2328:7, 2328:8, 2328:10, 2328:18, 2330:16, 2332:5, 2332:24, 2335:2, 2335:18, 2339:12

**upcoming** [1] - 2254:16

**update** [1] - 2262:12

**updating** [1] - 2261:25

**upper** [2] - 2261:3, 2275:2

**upright** [1] - 2294:24

**upset** [1] - 2240:25

**US** [1] - 2300:11

**user** [1] - 2270:23

**uses** [1] - 2253:12

**utterly** [1] - 2334:6

**V**

**various** [3] - 2231:13, 2297:8, 2300:5

**Vegas** [1] - 2178:13

**vein** [2] - 2332:3, 2333:23

**venturing** [1] - 2162:15

**verified** [1] - 2278:9

**version** [2] - 2309:4, 2309:6

**versus** [1] - 2153:14

**Veterans** [1] - 2152:22

**via** [10] - 2193:10, 2196:9, 2197:12, 2227:19, 2241:14, 2244:1, 2244:20, 2246:13, 2283:5

**view** [3] - 2207:24, 2304:11, 2339:12

**virtually** [1] - 2322:6

**visit** [1] - 2254:3

**Vitali** [1] - 2235:14

**voice** [1] - 2156:24

**VOIR** [4] - 2264:13, 2276:1, 2283:14, 2341:13

**voir** [2] - 2275:23, 2283:12

**voluminous** [1] - 2303:24

**W**

**walk** [3] - 2157:18, 2338:6, 2338:7

**walked** [1] - 2239:4
**walks** [1] - 2338:13
**wandered** [1] - 2205:12
**wants** [2] - 2232:17, 2245:17
**WAS** [6] - 2342:6, 2342:10, 2342:12, 2342:14, 2342:16, 2342:18
**waste** [6] - 2205:23, 2206:1, 2206:5, 2206:17, 2278:11, 2321:3
**wasted** [1] - 2329:17
**wasting** [1] - 2324:15
**water** [2] - 2298:3
**ways** [2] - 2331:20, 2331:22
**website** [2] - 2270:23, 2271:15
**Wednesday** [7] - 2154:14, 2154:16, 2154:25, 2155:6, 2155:18, 2155:19, 2156:4
**week** [13] - 2154:18, 2155:19, 2155:20, 2156:2, 2167:6, 2169:13, 2187:4, 2187:16, 2248:18, 2319:23, 2322:8, 2336:13
**weeks** [8] - 2187:4, 2319:10, 2319:11, 2319:12, 2319:18, 2321:11, 2324:3, 2327:13
**WEINBLATT** [1] - 2152:21
**welcome** [1] - 2312:18
**whatsoever** [1] - 2333:5
**wherein** [2] - 2210:19, 2301:19
**whole** [13] - 2166:5, 2178:7, 2192:17, 2193:16, 2197:20, 2200:25, 2232:5, 2236:24, 2280:19, 2281:3, 2307:22, 2319:3
**wholeheartedly** [1] - 2338:5
**WICKER** [1] - 2153:7
**wife** [9] - 2160:16, 2160:23, 2161:1, 2210:21, 2210:24, 2219:18, 2220:11, 2314:23, 2315:4

**Wild** [1] - 2157:11
**William** [1] - 2235:9
**willing** [2] - 2339:25, 2340:4
**wire** [6] - 2173:5, 2173:7, 2173:8, 2178:15, 2178:16, 2246:13
**wired** [1] - 2171:14
**wise** [1] - 2197:4
**wish** [3] - 2185:14, 2236:15, 2278:20
**withdraw** [8] - 2165:3, 2204:24, 2219:2, 2285:25, 2286:7, 2287:7, 2287:8, 2288:24
**withdrawn** [7] - 2164:4, 2189:19, 2215:2, 2237:25, 2305:22, 2316:4, 2316:13
**witness** [54] - 2154:7, 2156:7, 2156:9, 2156:15, 2184:9, 2205:19, 2206:23, 2207:20, 2208:1, 2208:5, 2208:8, 2208:22, 2208:23, 2208:25, 2209:7, 2302:11, 2303:1, 2303:2, 2303:11, 2304:1, 2304:3, 2306:10, 2309:2, 2309:7, 2318:22, 2320:17, 2320:24, 2321:1, 2321:7, 2321:14, 2321:18, 2322:6, 2323:9, 2324:18, 2325:17, 2326:1, 2326:7, 2328:15, 2329:9, 2329:24, 2333:16, 2334:1, 2334:5, 2334:19, 2334:22, 2336:1, 2336:10, 2337:16, 2337:17, 2338:5, 2338:6, 2338:9, 2340:3
**Witness** [2] - 2156:12, 2304:4
**WITNESS** [7] - 2156:13, 2156:20, 2189:10, 2196:20, 2199:24, 2202:6, 2212:21
**witnessed** [1] - 2336:10
**witnesses** [26] - 2154:9, 2301:6,

2302:3, 2319:6, 2319:13, 2319:15, 2320:15, 2321:20, 2321:21, 2321:23, 2323:21, 2324:4, 2324:7, 2327:14, 2328:10, 2329:19, 2331:2, 2332:17, 2334:8, 2334:12, 2334:24, 2335:21, 2336:18, 2337:1, 2337:20
**witnesses'** [1] - 2320:14
**word** [6] - 2202:21, 2290:25, 2330:16, 2331:25
**words** [6] - 2190:12, 2213:23, 2220:15, 2221:10, 2236:20, 2240:25
**World** [2] - 2159:7, 2159:8
**world** [3] - 2162:7, 2162:9, 2334:22
**worth** [1] - 2324:19
**write** [2] - 2189:7, 2217:16
**writes** [2] - 2207:19, 2323:8
**writing** [1] - 2212:5
**written** [3] - 2200:16, 2217:11, 2289:20
**wrote** [2] - 2160:19, 2323:13

**Y**

**Yachmenev** [1] - 2235:14
**year** [13] - 2157:16, 2159:9, 2159:11, 2160:7, 2174:13, 2191:4, 2193:15, 2194:12, 2194:15, 2209:18, 2211:13, 2217:3, 2305:25
**years** [20] - 2157:13, 2157:22, 2157:25, 2158:1, 2162:23, 2166:2, 2170:19, 2191:17, 2194:20, 2217:2, 2219:12, 2219:19, 2224:8, 2231:14, 2231:20, 2246:11, 2319:5, 2337:2
**yellow** [2] - 2251:9, 2290:11
**yesterday** [1] -

2266:11
**YORK** [1] - 2152:1
**York** [14] - 2152:5, 2152:17, 2152:23, 2153:2, 2153:5, 2153:9, 2182:17, 2285:20, 2285:25, 2286:3, 2286:13, 2299:22, 2300:7, 2300:11
**yourself** [4] - 2212:5, 2224:8, 2235:17, 2273:2

**Z**

**zero** [2] - 2167:20, 2320:17