2343

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA        :    13-CR-607 (JFB)
 4
          -against-                       U.S. Courthouse
 5
                                          Central Islip, NY
 6   PHILLIP A. KENNER
     a/k/a "Philip A. Kenner",
 7          and                      :
     TOMMY C. CONSTANTINE
 8   a/k/a "Tommy C. Hormovitis"

 9                    Defendants     :
                                          June 2, 2015
10   - - - - - - - - - - - - - - - X       9:30 a.m.

11
     BEFORE:
12                    HONORABLE JOSEPH F. BIANCO
                      United States District Judge
13                          and a jury

14
     APPEARANCES:
15
     For the Government:         KELLY T. CURRIE
16                               Acting United States Attorney
                                 100 Federal Plaza
17                               Central Islip, New York 11722
                                 BY:   JAMES M. MISKIEWICZ
18                                     SARITHA KOMATIREDDY
                                       Assistant U.S. Attorneys
19

20

21   For the Defendant:         HALEY, WEINBLATT & CALCAGNI LLP
     Phillip A. Kenner          One Suffolk Square
22                              1601 Veterans Memorial Highway
                                Suite 425
23                              Islandia, New York 11749
                                BY:  RICHARD HALEY
24

25
```



2344

1  For the Defendant:      LaRUSSO & CONWAY LLP
   Tommy C. Constantine      300 Old Country Road
2                           Suite 341
                            Mineola, New York 11501
3                     BY:  ROBERT P. LaRUSSO
                           and
4                     ANDREW L. OLIVERAS
                      26 Strangford Court
5                     Oceanside, New York 11572

6

7  Court Reporter(s)      OWEN WICKER
                          RONALD TOLKIN
8                         MARY ANN STEIGER
                          100 Federal Plaza
9                         Central Islip, NY 11722
                          631-712-6102

10

11              ***
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

2345

1       M O R N I N G   S E S S I O N

2       (Case called)

3       (Appearances noted.)

4           (Out of the presence of the jury.)

5       THE COURT:  All right.  The jurors have just

6  arrived but I understand there is an issue.

7       MR. HALEY:  I believe both matters may save time

8  rather than having multiple sidebars.

9           What occurred yesterday with respect to a

10  portion of the testimony of Daryll Sydor.  As your Honor

11  will recall during my direct examination of Daryll Sydor I

12  presented him with a number of documents and asked the

13  question:  Do you see what appears to be your signature?

14  And on four or five of the documents his answer was

15  affirmative.

16          On one of the documents he said, no, that is not

17  my signature.  My view, Judge, he was clearly aware when

18  asked the question do you see what appears to be your

19  signature, he knew he could answer no, that's not my

20  signature, as indicated to an answer that he gave during

21  the course of my direct examination of him.

22          What then transpired was redirect by the

23  Government where the Government presented him I believe

24  with a document I presented him where he had said that

25  does appear to be my signature or words to that effect.

---

2346

1       Indeed in a series of questions in succession, at least

2  from my perspective in a manner in which at given the

3  decibel in my perception in the way it was presented to

4  the witness the answer was kind of suggested to be no,

5  that is not my signature, no, that is not my signature.

6  That may ultimately be for a jury to determine as to the

7  manner in which those questions asked and the answers

8  given, and I recognize that.

9           The issue from my perspective is a little more

10  problematic, because as I said the other day, the defense

11  early on in this case made specific inquiry as to the

12  documents they were going to proffer in evidence that were

13  claimed to be forged documents and were provided, and I

14  will not belabor the record, four specific documents going

15  back to October.

16          One of the documents that I presented to the

17  witness, Mr. Sydor, yesterday, in addition to others but

18  this is the most significant one is a master note dated

19  November 3, 2006, Judge, Kenner Exhibit 69, which was one

20  of the documents I asked them do you see what appears to

21  be your signature, and he answered affirmatively on

22  direct, and on redirect, he says no, that is forgery as

23  relates to that document, Document 69.  That document

24  clearly indicates that the amount of the master note was

25  $850,000 and it's repeated in the body itself.  The

---

2347

1  Government in its direct examination of the witness

2  elicited clearly that he was completely unaware of the

3  $850,000 commitment of his line of credit.  That was his

4  direct testimony based upon specific questions asked of

5  him by the Government.

6           Judge, it was only a select number of Northern

7  Trust documents that were provided to the defense in

8  connection with this matter and because they were provided

9  the defense by way of Rule 16 discovery, undoubtedly in

10  the possession of the Government.

11          When this witness was prepped by the Government

12  of course I wasn't present but it strikes me if a witness

13  in prep tells the Government I was unaware of $850,000 and

14  the Government is in possession of a document that he

15  signs that reflects the $850,000 commitment by his line of

16  credit by virtue of his line one might think the

17  question may goes as follows:  Sir, you told us a moment

18  ago you were unaware of $850,000 but we have a document in

19  our possession showing you signed a master note in the

20  amount of 850,000.  Can you describe the discrepancy, and

21  the answer would be yes, that's a forgery.  Indeed I go

22  back to the Court's direction to the Government some time

23  ago that the Government makes that type of inquiry of each

24  one of those witnesses and disclose the documents they

25  allege before.  It was based upon my understanding at

**2348**

1  least that only four forged documents was going to be
2  presented at trial that I then commenced that examination
3  of this particular witness.  I might add that I'll deal
4  with anything the Government throws my way and I don't
5  mean to be aggressive by way of that -- let me get to the
6  point, Judge.
7        THE COURT:  I understand the issue so I just
8  want to know what you are asking.
9        MR. HALEY:  The Court has an understanding of
10  the issue.
11        THE COURT:  I got it.
12        MR. HALEY:  Thank you.
13        I've discussed with my client this morning,
14  Judge, because I believe it is my obligation and I want to
15  put it on the record, whether or not he wishes me to move
16  for a mistrial as a result of what transpired yesterday,
17  and based upon my conversation with my client, I want the
18  record to reflect we have discussed the matter and he's
19  elected not to, based upon a probably five or ten-minute
20  conversation this morning, not to request that I move for
21  a mistrial.
22        I think that ought to be made as a matter of
23  record for purposes of these proceedings.
24        THE COURT:  Again, I don't want to rehash
25  everything from yesterday.  We have a jury waiting, but I

**2349**

1  did ask the Government if the particular documents are
2  forged documents, I recall that as well.  I don't recall
3  saying to them have your witness review every single
4  document with their signature, maybe I did, but I
5  specifically remember ordering them to get every document
6  that has a signature on it, show it to every witness,
7  disclose whatever document you are claiming are forged.
8        When you asked those questions to him yesterday
9  and he answered them it appears to be my signature.  To be
10  honest with you I didn't know what that meant, whether it
11  was or wasn't.  It could be a forged signature when
12  somebody says it appears to be my signature but it is not.
13  I understand on another question he did answer that is not
14  my signature, suggesting that it was a different
15  situation.  But that a strategic matter and I left it
16  alone.  But if someone says it appears to be my signature
17  the Government is free on redirect to clarify.  When you
18  say it is my signature, is it or is it not?  It may be to
19  the Government's surprise to that he became more firm that
20  it wasn't his signature, and I don't know why that was.
21  You attribute it to the questioning but he may have looked
22  at the signatures more closely and there were slants.
23  Even the grand jury testified about the slants and loops
24  and things like that.
25        The bottom line and I think the Government is

**2350**

1  aware of that, to the extent in the prep session any
2  witness indicates that it's not their signature on a
3  document, I want you to disclose that to Mr. Haley.  I
4  don't want you to wait.  I want you to disclose that
5  issue.
6        MR. MISKIEWICZ:  I understand and a similar
7  issue came up overnight with a witness and he confirms it
8  is in fact his e-mail and signature and we'll continue
9  doing that throughout the rest of the trial.
10        THE COURT:  I know you made the mistrial request
11  but I'm not sure what a mistrial would accomplish because
12  I think his testimony would be what it was on redirect and
13  I think your client could argue that is his signature, so
14  it isn't what you would have done anyway even if you knew
15  he would deny it.
16        MR. HALEY:  The only purpose of my statement on
17  the record, I do believe I had an obligation to discuss it
18  with my client and I wanted the record to reflect our
19  discussion.  That is directly my obligation.
20        Thank you.
21        One other matter, Judge.  Last evening I
22  received notice that the Government will be calling
23  Mr. Meeley, and by the way I don't fault the Government,
24  they've done a herculean task to move witnesses around.  I
25  was not anticipating Mr. Meeley today but I'm prepared to

**2351**

1  proceed.
2        Here's my application.  Mr. Meeley is being
3  called as an expert witness, at least that was represented
4  to me.  I received material as relates to his so-called
5  expertise, and I would simply ask for a brief offer of
6  proof by the Government as to what he's going to testify
7  to because I don't want to be in a situation, Judge, where
8  I'm continually objecting in front of the jury and have
9  multiple sidebars.  I may have a standing objection to any
10  expert opinion he may render depending upon the
11  Government's proffer.  That's why I bring it to the
12  attention of the Court.
13        THE COURT:  Could the Government summarize what
14  he will testify to?
15        MS. KOMATIREDDY:  On May 10th of this year we
16  provided expert notice as to Mr. Meeley and indicated he's
17  expected to testify that the licenses and certifications
18  obtained by defendant Kenner including the Series 7,
19  Series 63, and Series 65 certifications with a reference
20  to the base numbers of the FINRA records that we produced
21  that indicate the certifications.  Candidly we provided
22  expert notice for Mr. Meeley out of an abundance of
23  caution.
24        THE COURT:  What is the purpose of the
25  testimony?  To establish Mr. Kenner was a licensed

**2352**

1  financial advisor?
2       MS. KOMATIREDDY:  There's a sentence in the
3  indictment where Mr. Kenner was a licensed financial
4  advisor and we believe it is relevant to the state of mind
5  of both Mr. Kenner the victims when they met Mr. Kenner
6  because he held himself out to be that in several
7  established firms.
8       I think we can go through this as a fact witness
9  without having to qualify him as an expert witness and if
10  that moots the issue --
11       MR. HALEY:  It moots the issue.  If that is the
12  only purpose they are calling Mr. Meeley, I withdraw the
13  objection.
14       THE COURT:  If you hear them going beyond that
15  you can obviously ask for a sidebar but it will be very
16  basic.
17       MR. LARUSSO:  Your Honor, one other matter,
18  Mr. Miskiewicz approached me this morning with regards to
19  the e-mails.  I believe we've reached an understanding how
20  to proceed.  They are going to have one of a member of
21  their trial team to sit with one of our representatives,
22  they will go into the Google e-mail and verify what we've
23  introduced are in fact on the server and hopefully that
24  will resolve the issue and hopefully we can move them in
25  evidence at some point in time.  I don't know when we'll

**2353**

1  do it.  I do appreciate doing that short of trying to
2  contact Google.  We did that last night, completely
3  unsuccessful, but we contacted an expert and verified the
4  information we provided to the Court.  These information
5  coming from the Google servers cannot be edited in any
6  way.
7       THE COURT:  I appreciate you working like that.
8       MS. KOMATIREDDY:  -- at the outset the parties
9  yesterday entered additional stipulations.  I'll provide
10  copies to the court reporters so the numbers are correct
11  for the record.
12       THE COURT:  Let's get the jury:
13       Does anyone mind we tell the jury that the
14  stipulations may shorten the trial.
15       MR. HALEY:  No objection
16       MR. MISKIEWICZ:  Your Honor, I took to heart
17  your Honor's admonition that the estimates are way off.  I
18  did estimate as part of our five-week or four-week
19  estimate, kind of a two-to-one ratio of two-to-one cross
20  where we've gone off track.  Page numbers:  We had 31
21  pages of direct on Mr. Sydor and 131 pages on cross.  It
22  seems the crosses are four to one and with the Pecas's and
23  so forth --
24       THE COURT:  I want to start the day fresh, a new
25  day.  Let's not revisit.  It's a new day.

**2354**

1       MR. MISKIEWICZ:  I was just data mining, your
2  Honor.
3       THE CLERK:  All rise.
4       (Whereupon, the jury at this time enters the
5  courtroom.)
6       THE COURT:  Please be seated.  Good morning,
7  members of the jury.  I hope you are doing well this
8  morning.  We're ready to continue with the trial.  As you
9  will hear in a moment, the Government will introduce more
10  stipulations between the parties with respect to certain
11  documents.  I just want to emphasize this to you because I
12  know I told you yesterday we were behind the estimate I
13  gave you before trial.  I don't want you to think that
14  everyone in the courtroom is not sensitive to your time as
15  jurors and your commitments.  The lawyers are trying to
16  find ways to be more efficient and stipulations obviously
17  when they enter into stipulations, that saves a lot of
18  time, bank custodians and other witnesses would have to be
19  called.  So if anyone is looking for any way that we can
20  minimize the amount of time that this trial has to go
21  forward, I just wanted to emphasize we are all sensitive
22  to that and the stipulations are a reflection of that.
23       Do you want to offer the stipulations.
24       MS. KOMATIREDDY:  They are marked Government's
25  Exhibit Stip 23 through Stip 32.  If I can move them in

**2355**

1  evidence at this time.
2       THE COURT:  All right.
3       MR. HALEY:  Yes, sir.
4       MR. LARUSSO:  Yes.
5       THE COURT:  The stipulations 23 through 32 are
6  admitted in evidence.  Again everyone is all right in
7  summarizing them.
8       (Whereupon, Government Exhibit Stipulations 23
9  through 32 were received in evidence.)
10       MR. LARUSSO:  Yes.
11       MR. HALEY:  Yes.
12       THE COURT:  You can see them during your
13  deliberations.  If you want to see the entirety of those
14  stipulations, but to save time the prosecution has
15  summarized what they are.
16       MS. KOMATIREDDY:  I will read the exhibit
17  numbers into evidence as well.  Government's Exhibit 101,
18  4001, 4003, through 4005, 4007, 4008, 4010, 4011 R, 4012
19  R, 4013 R, 4036 and 4038 which are title company records.
20       Government's Exhibit 1801 through 1809 which are
21  bank records, Government's Exhibit 305 and 306 which are
22  public documents.
23       Government's Exhibits 3209 through 3214 which
24  are bank records.
25       Government's Exhibits 3215 and 1451 through 1457

**2356**

1  which are bank records.

2       Government's Exhibits 3505 and 3506 which are

3  title company records.

4       And Government's Exhibits 305 T, 304 T.1, 304

5  T.2 and 306 T which are translations of documents.

6       Government's Exhibit moves the foregoing

7  exhibits into evidence.

8       THE COURT:  Is that agreed pursuant to the

9  stipulations those exhibits are admitted.

10       MR. LARUSSO:  Yes, your Honor.

11       MR. HALEY:  Yes, sir.

12       THE COURT:  So all the exhibits are admitted in

13  evidence.

14       (Whereupon, the foregoing Government Exhibits

15  mentioned above were received in evidence.)

16       MS. KOMATIREDDY:  There is one stipulation that

17  is substantive, your Honor.

18       THE COURT:  Which number is that?

19       MS. KOMATIREDDY:  Stipulation 29.

20       It is hereby stipulated and agreed by and

21  between the United States of America and the defendants

22  Phillip A. Kenner and Tommy C. Constantine, through their

23  attorneys, that:

24       If called as a witness at trial Mark Gold would

25  testify that:

**2357**

1       He is employed as a Senior Special Investigator

2  at the Federal Reserve Bank of New York.

3       2.  The Federal Reserve, Banks, including the

4  New York Fed, operate the Fedwire Funds Service, a service

5  that enables banks to electronically transfer funds to

6  other banks in real time.

7       3.  In a Fedwire Funds Service transaction, an

8  accountholder will instruct his or her bank to pay another

9  accountholder at another bank.  The originator's bank will

10  debit the originator's account and send a payment order to

11  the Federal Reserve Banks.  The Federal Reserve Banks then

12  process the payment order by debiting the account of the

13  originator's bank for the amount of the transfer and

14  crediting the account of the beneficiary's bank for the

15  same amount.  The beneficiary's bank will then credit the

16  beneficiary's account for the amount of the transfer.

17       4.  Government Exhibits 1903 and 1904 are true

18  and accurate copies of electronic Fedwire Funds Service

19  transactions records in the custody of the New York Fed.

20       5.  The original electronic records were created

21  contemporaneously with the processing of the electronic

22  funds transfers referenced therein and are kept in the

23  custody of the New York Fed in the course of a regularly

24  conducted business activity as part of the New York Fed's

25  regular practices.

**2358**

1       6.  The electronic funds transfers referenced in

2  Government Exhibits 1903 and 1904 were transacted through

3  the New York Fed's processing facility located in New

4  Jersey. "

5       With that the Government moves into evidence

6  Government's Exhibit 1903 and 1904.

7       THE COURT:  Any objection.

8       MR. LARUSSO:  No, your Honor.

9       MR. HALEY:  No, sir.

10       THE COURT:  Those exhibits are admitted.  Let me

11  give a little bit of instruction, that is called a

12  testimonial stipulation, and that means if that individual

13  were called to testify on the witness stand that is what

14  he would say and you should accept that if he would come

15  mere and testify that is what he would say.  With all

16  testimony and all witnesses that it is up to you toe

17  determine what said should be begin to them testimony.

18  It's up to the juror, even in the form of a stipulation.

19       I'll ask the Government to call it's next

20  witness.

21       (Whereupon, Government Exhibit 1903 and 1904 was

22  received in evidence.)

23       MR. MISKIEWICZ:  The Government calls James

24  Grdina.

25       THE COURT:  Mr. Grdina, come up to the witness

Grdina - Direct/Miskiewicz

**2359**

1  stand and remain standing for the oath.

2  **J A M E S   G R D I N A**,

3       called as a witness, having been first

4       duly sworn, was examined and testified

5       as follows:

6  DIRECT EXAMINATION

7  BY MR. MISKIEWICZ:

8  Q   Mr. Grdina, where do you currently live?  What state?

9  A   **Phoenix, Arizona.**

10  Q   What do you do for a living?

11  A   **I have a company that finances specialty cars.**

12  Q   Again, pull that a little closer to you.

13  A   **Closer?**

14  Q   I'm sorry, repeat that.

15  A   **I own a company that finances specialty cars.**

16  Q   Specialty cars.  What does that mean?

17  A   **Muscle cars, classic cars, late model luxury and**

18  **exotic cars.**

19  Q   How long had you had that company?

20  A   **Approximately four years.**

21  Q   Prior to that what did you do?

22  A   **Owned and operated a company that managed internet**

23  **companies and also for about 25 years owned a company**

24  **called Unitech, Inc.  That was in the telecommunications**

25  **industry.**

Grdina - Direct/Miskiewicz

2360

1  Q    And do you have any degrees or background --

2  A    Graduated from a business school from the University

3  of Virginia.

4  Q    Did there come a time in your history that you had a

5  company or managed a company called Intrigue Investments?

6  A    Yes.

7  Q    What was Intrigue Investments?

8  A    Intrigue Investments was a company I owned and

9  operated for a number of years that had acquired assets,

10  either commercial or residential property, as well as made

11  certain business loans.

12  Q    And in the course of operating Intrigue, did you ever

13  have any deals with either of the defendants in this case,

14  Mr. Tommy Constantine or Mr. Phil Kenner?

15  A    Yes, I did.

16  Q    Which one, or both?

17  A    Both of them.

18  Q    And did you meet them personally?

19  A    Yes.

20  Q    And would you recognize them if you saw them again?

21  A    Yes.

22  Q    Do you see -- we'll take Mr. Kenner.

23          MR. HALEY:  Identification conceded, Judge.

24          THE COURT:  Identification conceded.

25          MR. LARUSSO:  Likewise for Mr. Constantine.

Grdina - Direct/Miskiewicz

2361

1          THE COURT:  And for Mr. Constantine as well,

2  identification conceded.

3          MR. MISKIEWICZ:  Thank you.

4  Q    Approximately when did you meet -- withdrawn.  Which

5  of these two defendants did you meet first?

6  A    Mr. Constantine.

7  Q    Do you know approximately what year you met him?

8  A    If I recall correctly it was early in 2000,

9  approximately 15 years ago.

10  Q    I want to direct your attention to approximately the

11  year 2005.  Did you on behalf of Intrigue Investment enter

12  into any kind of financial dealings with either

13  Mr. Constantine or Mr. Kenner?

14  A    Yes, with Mr. Constantine.

15  Q    And could you tell the members of the jury what was

16  the nature of that agreement?

17  A    Mr. Constantine had contacted me with an investment

18  opportunity.  He had approached me with an opportunity

19  that required a $5 million loan to Mr. Kenner's company

20  for the purchase of a property on the Big Island

21  Waikapuna.

22  Q    Now, were you purchasing the property or were you

23  loaning money?

24  A    We had formed a company called Urban Expansion, LLC.

25  Q    When you say we, who is the "we" in that?

Grdina - Direct/Miskiewicz

2362

1  A    Intrigue Investments Company and Constantine

2  Management Group.

3  Q    Was there some sort of division of capital with

4  respect to the formation of that company?

5  A    Yes, as stated in the operating agreement, Intrigue

6  Investment Company was going to capitalize the company

7  with $3.5 million and therefore have a 70 percent

8  membership interest, and Constantine Management was going

9  to capitalize the company with $1.5 million and have a

10  30 percent pro rata membership interest.

11  Q    And what was -- so that would total $5 million,

12  correct?

13  A    Yes.

14  Q    So what was, if anything, this $5 million going to be

15  used for pursuant to any discussion you had with

16  Mr. Constantine?

17  A    As there was representation to me by Mr. Constantine,

18  the $5 million was needed to close the purchase of the

19  Waikapuna property in Hawaii, of that we had arranged that

20  there would be a three and a half million dollar

21  promissory note and we would retain 123.9 acres which was

22  zoned as a commercial piece or parcel of Waikapuna for

23  $1.5 million.

24  Q    Did you on behalf of Intrigue Investments contribute

25  any money to the formation of Urban Expansion?

Grdina - Direct/Miskiewicz

2363

1  A    Yes, October 14, 2005, I had wired $3.5 million to

2  Mr. Kenner's account for my capital investment.

3  Q    Do you remember the name of the account or the name

4  of the company and whose name the account was being held

5  that you put the $3.5 million into?

6  A    I don't recall.  It was a difficult name to remember.

7  Q    I'll come back to it.

8          Let me show you what has been marked for

9  identification as Government's Exhibit 3801.  Take a

10  moment, familiarize yourself with the document and let us

11  know if you recognize what that is.

12  A    It's the operating agreement for Urban Expansion

13  dated October 13, 2005.

14  Q    Is your significant there at the end of the document

15  or somewhere near the end, or what I should say, how do

16  you recognize that as the operating agreement?

17  A    I had executed this agreement and had a copy of this

18  agreement.

19          MR. MISKIEWICZ:  The Government moves for the

20  admission of 3801.

21          MR. HALEY:  May I just see it for a moment,

22  Judge?

23          THE COURT:  Sure.

24          Any objection, Mr. LaRusso?

25          MR. LARUSSO:  No, Judge.

Grdina - Direct/Miskiewicz

2364

1    MR. HALEY:  Judge, just one minute.  I'm sorry.
2    May I very briefly have a voir dire.
3    VOIR DIRE EXAMINATION.
4    BY MR. HALEY:
5    Q    Sir, as relates to this particular document, if I
6    show you this page, do you see what appears to be your
7    signature on that document?
8    A    Yes, I do.
9    Q    And where do you see it?
10   A    On the signature line James Grdina.
11   Q    It's fair to state, sir, that is a copy of the
12   original?
13   A    Yes.
14   Q    You nevertheless are able to recognize that signature
15   --
16   A    I'm sorry?
17   Q    You are nevertheless able to recognize your
18   signature.  This is a copy of the original, true?
19   A    True.
20        MR. HALEY:  I have no objection.
21        THE COURT:  3801 admitted.
22        (Whereupon, Government Exhibit 3801 was received
23   in evidence.)
24   Q    Whose other signature, if anyone, appears on that
25   page that you referred to?

Grdina - Direct/Miskiewicz

2365

1    A    Tommy Constantine as president of Constantine
2    Management Group.
3    Q    Thank you.
4         I will show you a couple of pages of 3801.
5    Directing your attention to page 2 of 3801.  Mr. Grdina,
6    there is some highlighted text there under the paragraph
7    1.11.  Does that indicate what the purpose of the
8    formation of this company is going to be?
9    A    Yes, it does.
10   Q    And in sum and substance what is the purpose of the
11   formation of Urban Expansion?
12   A    To make a loan to Kau Holding Company.
13   Q    Is there a reference to the $5 million loan you
14   talked about a minute ago?
15   A    Yes, that is correct.
16   Q    Page 3 of 3801, where it indicates in paragraph 2.2,
17   do you see that?
18   A    Yes, I do.
19   Q    Does that reflect what you said earlier about you and
20   Constantine making specific contributions to the loan or
21   the formation of this company?
22   A    Yes, it does.
23   Q    Okay.  Now, you said you put in the $3.5 million,
24   correct?
25   A    That's correct.

Grdina - Direct/Miskiewicz

2366

1    Q    And when you entered into this agreement, what if any
2    understanding did you have on the part of Mr. Constantine
3    regarding what is says here in 2.2 and his contribution?
4    A    His contribution was going to be $1.5 million.
5    Q    And that was going to round out the 5 million.
6         And what, if anything, did you understand the
7    amount of money was needed to buy this Waikapuna property?
8    A    Mr. Constantine represented to me there was
9    $5 million needed to close the property.
10   Q    Okay.
11        I will show you what is an exhibit at the end of
12   the operating agreement, 3801.
13        Tell us briefly, what is this?  This is kind of
14   fuzzy.
15   A    It's a plot of the Waikapuna property that was being
16   purchased and at the top of it you will see an area that
17   is marked as 123.9 acres.
18        MR. MISKIEWICZ:  Where my pen is?
19        THE WITNESS:  That's correct.  That is the
20   parcel that I had indicated earlier that we were going to
21   acquire with the funds that we were -- that we raised, the
22   $5 million for the property.
23   Q    Okay.  And was there some other larger piece of
24   property that was -- that you were assisting in the
25   acquisition of through your loan?

Grdina - Direct/Miskiewicz

2367

1    A    Yes, the acquisition of the entire 2,013 acres as
2    represented on this.
3    Q    So where my pen is there?
4    A    That is correct.
5    Q    So this area, this larger area is the 2,013 acres,
6    I'm sorry, .06?
7    A    Yes.
8    Q    And who was buying that land in terms of this loan?
9    A    The Kau Holding Company.
10   Q    So we know who is who in the various holding
11   companies, who was Kau Holding company?
12   A    The principal was Mr. Phil Kenner.
13   Q    And what was supposed to be, if -- according to any
14   conversation you had with Mr. Constantine, what was
15   supposed to be on this 123.9 acre parcel?
16   A    It was designated as a commercial portion of the
17   entire parcel, the property.  The rest of the property was
18   residential.
19   Q    Was that important in any way to you in terms of your
20   decision to participate in making this loan?
21   A    Yes, because as Mr. Constantine represents to me, the
22   commercial parcel of 123.9 acres was worth significantly
23   more than the $1.5 million purchase price.
24   Q    Okay.  So again was Mr. Constantine supposed to be
25   the one whose $1.5 million was in essence to contribute to

Grdina - Direct/Miskiewicz

2368

1  the purchase of this land?
2  **A    I was informed that there was a total of $5 million**
3  **needed to purchase the property.**
4  Q    Okay.
5  **A    And out of that the funds were designated as**
6  **$1.5 million for the purpose of this 129 acres and three**
7  **and a half million dollars was represented in a promissory**
8  **note.**
9  Q    Was there an actual written promissory note?
10  **A    Yes, there was.**
11  Q    And that memorialized whose loan?
12  **A    It was a loan from Urban Expansion to the Kau Holding**
13  **Company, October 14, 2005, the date of the promissory**
14  **note.**
15  Q    Showing you Government's Exhibit 3802 for
16  identification, do you recognize that?
17  **A    Yes, it's the promissory note that we had been**
18  **discussing.**
19  Q    Whose signature, do you know, if anyone's?
20  **A    Mr. Kenner's as the managing member of the Kau**
21  **Holding Company.**
22  Q    Did you see that document at or about the time it was
23  signed and the promissory note was issued in favor of
24  Urban Expansion?
25  **A    Yes.**

Grdina - Direct/Miskiewicz

2369

1          MR. MISKIEWICZ:  Government moves for the
2  admission of 3802.
3          MR. HALEY:  Just briefly, your Honor.
4          MR. HALEY:  No objection.
5          MR. LARUSSO:  No objection.
6          THE COURT:  3802 is admitted.
7          (Whereupon, Government Exhibit 3802 was received
8  in evidence.)
9  Q    You said you couldn't recall where the money that you
10  contributed went to.  I will show you what is marked as
11  Government's Exhibit 3813 for identification, and ask if
12  that refreshes your recollection as to what account or in
13  whose name the account was held where you sent Intrigue's
14  $3.5 million?
15  **A    Yes, it's an e-mail from Mr. Constantine --**
16  Q    You don't need to comment what is on there, but does
17  it help refresh your recollection?
18  **A    Yes, it does.**
19  Q    What was the name of the company that you sent your
20  money to or I should say Intrigue Investments' money?
21  **A    If I can pronounce it.  Ula Makika.**
22  Q    And I know you took the document back.  Who gave you
23  instructions where to send the money?
24  **A    Mr. Constantine.**
25  Q    Do you recall if there was any discussion as to why

Grdina - Direct/Miskiewicz

2370

1  the money, even though the promissory note was with Kau
2  Holding, KAU Holdings, why was money sent to a company by
3  the name of Ula Makika?  Did you have any discussions
4  along the line?
5  **A    I don't know.**
6  Q    Would you have known if you would send one to the
7  other because you were told by one of the defendants where
8  to send the money?
9  **A    No.**
10  Q    Do you have any ownership interest in Ula Makika?
11  **A    No.**
12  Q    What about Kau Holdings?
13  **A    No, I did not.**
14  Q    You didn't know where they did their banking, did
15  you?
16  **A    No, I did not.**
17  Q    Now --
18          MR. MISKIEWICZ:  May I have a moment, your
19  Honor?
20          Was there an interest rate at which, that is to
21  say Urban Expansion was to be paid, in exchange for this
22  $5 million loan.
23  **A    Yes.**
24  Q    Was there a term of years or year by which the loan
25  was going to be extended?

Grdina - Direct/Miskiewicz

2371

1  **A    Yes.**
2  Q    Do you remember which -- what was the interest rate?
3  **A    If I recall correctly, 18 percent.**
4  Q    And what was the term of years -- well, let me show
5  you 3802 now in evidence.  I'll put it up on the screen.
6          Looking at paragraph 1.  Does that refresh your
7  recollection as to what the interest rate was?
8  **A    Yes, 15 percent.**
9  Q    Okay.  And the number of years.  I'm sorry.  I'm
10  blank.
11          Did you testify as to how many years the term
12  was for this loan?
13  **A    No.**
14  Q    How long?
15  **A    The term of the loan was four years.**
16  Q    Now, do you recall whether or not there were any
17  other fees or penalties that would have to be paid out
18  with respect to this note, this loan?
19  **A    There were prepayment penalties.**
20  Q    Okay.  When you say prepayment penalties, what does
21  that mean?
22  **A    If the loan was paid in advance of the final**
23  **termination date of it, the expiration date.**
24  Q    And the note was signed or on or about October 15,
25  2005?

Grdina - Direct/Miskiewicz

2372

1    A    That's correct.

2    Q    So if the note was paid off, that is to say your

3    $3.5 million was paid off before the five years was up,

4    what would happen?

5    A    There was a prepayment penalty of $2 million and it

6    was spelled out in the agreement, $1 million payment was

7    due on or about 180 days after the date, the entire

8    principal balance and all accrued interest on such

9    principal amount is paid in full, and number two,

10   $1 million payment due on or before 180 days following the

11   end of the 180 day period provided in number 1 above.

12   Q    And Mr. Grdina, for the record, you are paraphrasing

13   or summarizing what appears in paragraph 3, the promissory

14   note up on the screen; is that correct?

15   A    That's correct.

16   Q    I will show you what is marked as Government's

17   Exhibit 3811 for identification, and actually I ask you to

18   just take a look at 3811 for a moment, and then I have a

19   question to ask you when you are ready.

20   A    Yes.

21   Q    Whose idea was it to build in a $2 million prepayment

22   penalty on a $3.5 million loan?

23   A    Mr. Constantine's.

24   Q    What is 3811?  What is that?

25   A    It is an e-mail from Mr. Constantine to his attorney

Grdina - Direct/Miskiewicz

2373

1    Todd Lockwood.  I'm copied on it.

2    Q    You are copied on it?

3    A    Yes.

4    Q    Do you recall getting that e-mail at or about the

5    time the loan was being negotiated?

6    A    Yes.

7    Q    Did you keep it -- is that in exactly the same

8    condition as when you received that copy of the e-mail,

9    the cc copy of the e-mail?

10   A    Yes, it is.

11         MR. MISKIEWICZ:  Government moves 3811 for its

12   admission.

13         MR. LARUSSO:  May I see that, please.

14         No objection, Judge.

15         MR. HALEY:  No objection, Judge.

16         THE COURT:  3811 is admitted.

17         (Whereupon, Government Exhibit 3811 was received

18   in evidence.)

19   Q    For the record, showing you now 3811 on the screen in

20   front of you.  Is this e-mail chain occurring before or

21   after the signing of the operating agreement and the

22   promissory note?

23   A    It was before.

24   Q    Okay.  It's fair to say this is in sum and substance

25   sort of bullet points of what has been negotiated, in

Grdina - Direct/Miskiewicz

2374

1    other words, a summary of what had been negotiated

2    regarding this agreement?

3    A    Yes, it is.

4    Q    And would you read for the record, I'm not sure if it

5    is clear enough for you, the second paragraph under

6    Mr. Constantine's e-mail to Todd Lockwood.

7         "At any time"?

8    A    At any time prior to the maturity date, Big Isle pays

9    off 100 percent of the principal and interest owed, the

10   $2 million prepayment penalty shall be paid to the new LLC

11   in two equal installments, one due on or before 180 days

12   from the date such principal and interest is paid in full

13   and one on or before 180 days thereafter.

14   Q    Now, at this point you've been in the business of,

15   the finance business, for well over 20 years?

16   A    Correct.

17   Q    Have you ever seen a prepayment penalty that big on

18   that amount of a principal loan?

19   A    No, I have not.

20   Q    Did you insist on the creation of such a prepayment

21   penalty?

22   A    No.

23   Q    Other than Mr. Constantine saying that to his lawyer

24   in that e-mail which he cc'd to you, did you have any

25   conversations with Mr. Constantine about, hey, we should

Grdina - Direct/Miskiewicz

2375

1    get, you know, a 66 percent or thereabouts prepayment

2    penalty?

3    A    No, I did not.

4    Q    Now, did there come a time that you had a

5    conversation with Mr. Kenner about how much the Waikapuna

6    property actually cost?

7    A    Yes.

8    Q    And do you recall, and if you don't recall tell me,

9    but do you recall approximately the month and year that

10   you had that conversation?

11   A    It was November of 2012.

12   Q    Okay.

13         What, if anything, did Mr. Kenner tell you about

14   the true cost of the Waikapuna property for which you

15   entered into this $5 million loan?

16   A    Mr. Kenner had stated that the property purchase

17   price was $4.2 million and that approximately $3.6 million

18   was needed to close the property, the balance due.

19   Q    And you put up 3.6 million?

20   A    3.5.

21   Q    $3.5 million.

22         Did he say there had already been from other

23   sources the balance, in other words, the balance between

24   4.2 and 3.6 that had been held in escrow somewhere?

25   A    Yes.

Grdina - Direct/Miskiewicz

2376

1  Q    I show you what has been marked as 3819 A for
2  identification --
3              MR. MISKIEWICZ:  Your Honor, may I just approach
4  counsel for a second.
5              (Counsel confer.)
6  Q    -- Mr. Grdina, in or about the time you had that
7  conversation or that communication with Mr. Kenner, did he
8  in fact also provide you a copy of what is now 3819 A?
9  A    Yes, he did.
10             MR. MISKIEWICZ:  The Government moves for the
11 admission of 3819 A.
12             MR. HALEY:  Yes, your Honor, I have no
13 objection.
14             MR. LARUSSO:  No objection, your Honor.
15             THE COURT:  3819 A is admitted.
16             (Whereupon, Government Exhibit 3819 A was
17 received in evidence.)
18 Q    Showing you 3819 A now on the screen.
19             In whose name is this bank account?
20 A    Ula Makika.
21 Q    Is that the LLC, the company to which you had sent
22 your $3.5 million?
23 A    Yes, it is.
24 Q    In fact I'll ask you to turn to the second page of
25 that Exhibit 3819, under where it says deposits and

Grdina - Direct/Miskiewicz

2377

1  credits?
2  A    Yes.
3  Q    Do you see your company Intrigue Investment Company,
4  among the things, among the deposits being credited there?
5  A    Yes, it shows that three and a half million dollars
6  wire from Intrigue Investment Company, October 14, 2005.
7  Q    That's the $3.5 million, correct?
8  A    Yes.
9  Q    And you created Urban Expansion and that was
10 3.5 million, but the money came out of where when you made
11 the loan?
12 A    Intrigue Investment Company.
13 Q    In or about this time was there some sort of -- I'll
14 direct your attention to items paid, right above that.  Do
15 you see that on 10/31?
16 A    Yes.
17 Q    And do you recognize the name Constantine Management
18 Group LTD?
19 A    Yes.
20 Q    And the amount $330,000 being paid to Constantine
21 Management Group.  Do you see that?
22 A    Yes, I do.
23 Q    Was there any sort of fee or other payment associated
24 with the $5 million loan that Urban Expansion was supposed
25 to be making at or about this time?

Grdina - Direct/Miskiewicz

2378

1  A    No, not that I'm aware of.
2  Q    Well, did Mr. Constantine or Mr. Kenner at any point
3  indicate that there would be, in addition to the loan that
4  CMG would be getting any fee or payments wrapped up in
5  this loan?
6  A    Mr. Kenner represented that Constantine Management --
7              MR. MISKIEWICZ:  Well, I'll withdraw the
8  question.
9              THE COURT:  Okay.
10 Q    At the time you were negotiating the Urban Expansion
11 promissory note operating agreement, did Mr. Constantine
12 say to you anything about him getting a fee at that time,
13 2005?
14 A    No, he did not.
15 Q    All right.  Now, you testified that there was --
16 well, withdrawn.
17             Did you ever get repaid, that is to say, did
18 Urban Expansion ever get repaid for this loan?
19 A    Yes, on August 14th of 2006, about ten months later,
20 the loan and all the other agreements were satisfied in
21 full.
22 Q    And do you know anything about how or where did the
23 money come from to satisfy the loan that Urban Expansion
24 had made?
25 A    It came from Kau Holding.

Grdina - Direct/Miskiewicz

2379

1  Q    Are you familiar with a former investment bank known
2  as Lehman Brothers?
3  A    Yes.
4  Q    Are you aware that Lehman Brothers at one point
5  provided funding, partial or otherwise, to the development
6  of land in Hawaii?
7  A    Yes.
8  Q    Including the Waikapuna property that you were also
9  loaning money to purchase, correct?
10 A    Yes.
11 Q    And do you know whether or not your Urban Expansion
12 loan was paid off in part with the proceeds from the
13 Lehman Brothers, at least the first tranche of money?
14 A    Yes, it was.
15 Q    How much money did Urban Expansion get as a result of
16 that payoff?
17 A    Approximately $6,936,000.
18 Q    Okay.  Now, why so much money?
19 A    They paid off the promissory note of $3.5 million,
20 they paid a portion of the prepayment penalty, and they
21 also paid for the settlement of the management agreement
22 that was executed as well.
23 Q    And so out of the three and a half million dollars
24 loan made -- Urban Expansion got back close to $7 million?
25 A    That's correct.

Grdina - Direct/Miskiewicz

2380

1   Q   Was there any divvying up of that sum of money?

2   A   Yes.

3   Q   How was the money divided?

4   A   Intrigue Investment Company received 70 percent of

5   it, $4,855,000, and Constantine Management Group received

6   30 percent which was approximately $2,081,000.

7   Q   Did there ever come a time -- withdrawn.

8       I will show you -- did there ever come a time

9   you discovered Mr. Constantine ever made a $1.5 million

10  contribution to Urban Expansion?

11  A   Yes.

12  Q   Did he?

13  A   No.

14  Q   Made no money contribution?

15  A   No, none.

16  Q   Did you learn that before or after you agreed to the

17  split, the 70/30 split which sent off over $2 million to

18  Mr. Constantine?

19  A   Afterwards.

20  Q   I want to change the subject matter.

21      Avalon GMC LLC, are you familiar with that

22  company?

23  A   Yes.

24  Q   What did you know about it?

25  A   I was approached by Mr. Constantine in 2005 about an

Grdina - Direct/Miskiewicz

2381

1   investment opportunity to develop or build three airplane

2   hangars at Scottsdale airport, Scottsdale, Arizona.

3   Q   And did you participate in any way, agree to invest

4   in that?

5   A   Yes, and received a 25 percent membership interest in

6   the company.

7   Q   All right.  And how was it that you received the

8   25 percent membership interest in the company?

9       MR. LARUSSO:  Your Honor, may I have a brief

10  sidebar on this?

11      THE COURT:  Yes.

12      (Whereupon, at this time the following took

13  place at the sidebar.)

14      (Continued.)

Grdina - Direct/Miskiewicz

2382

1       MR. LARUSSO:  On relevance grounds, I don't know

2   what the relevance of this portion of the testimony is.

3       MR. MISKIEWICZ:  Well, this again dovetails with

4   Jeff Bailey and Mr. Edenholm's testimony and the Global,

5   more specifically the Global Settlement Fund diversions

6   because what he will testify to to head off foreclosure on

7   the hangars, the Airpark, Mr. Constantine asked Mr. Grdina

8   if he would agree to a purchase agreement to head off

9   foreclosure.  That purchase agreement he did.  The

10  purchase agreement was then stipulated to or alleged by

11  Mr. Constantine in his bankruptcy proceedings to head off

12  bankruptcy as part of a New York organization plan.

13  $120,000 went from the Ron Richards Global Settlement Fund

14  escrow account as the so-called earnest money to the title

15  company on May 5, 2009, right at the time that they were

16  fund-raising for the Global Settlement Fund.

17      Meanwhile, Mr. Grdina will say he had already,

18  pursuant to the earlier agreements with this defendant,

19  spent something like $1.2 million towards getting his 25

20  percent share of the Airpark and at the end of the day he

21  got no Airpark, no hangar, nothing, of course, from the

22  testimony of Mr. Bailey that it was Mr. Bailey who

23  basically acquired the property but after a couple of

24  leaps and bounds with defendant Constantine.

25      So this is all part of -- this is relevant

Grdina - Direct/Miskiewicz

2383

1   because it shows when they are telling their hockey player

2   investors, oh, you are getting a percentage of this

3   Airpark, in fact it was under water, in bankruptcy, and

4   he's heading off bankruptcy and he's selling or attempting

5   to sell substantially the same piece of property to

6   multiple properties so he gets nothing from it.

7       MR. LARUSSO:  When is all of this occurring?

8       MR. MISKIEWICZ:  Mr. Grdina will say he began

9   making his contributions in 2005 up through 2008 and then

10  May 5th I think of 2009 to head off the foreclosure and as

11  the bankruptcy records show, is when this $120,000

12  diversion from the GSF Fund occurs, which is listed as

13  earnest money from Mr. Grdina.

14      THE COURT:  I've heard enough.  I think it is

15  intertwined with the diversion of money.  Okay.

16      MR. LARUSSO:  Judge, my understanding a lot of

17  this occurred well after, but representation that the

18  Government puts it right in that the global monies were

19  being used and if in fact it was being used for that

20  purpose, I understand.

21      THE COURT:  Thank you.

22      (End of sidebar conference.)

23      (Continued.)

Grdina - Direct/Miskiewicz

2384

1    (In open court.)

2        MR. MISKIEWICZ: May I proceed, your Honor?

3        THE COURT: Yes.

4    Q    Let me rephrase the last question.

5        What, if anything, did you do or Intrigue

6    Investment do, to obtain this 25 percent ownership in

7    Avalon CMG, the hangar or Airpark, whatever it was called.

8    A    **I invested approximately $1.3 million.**

9    Q    And was that all at once or over a period of time?

10   A    **Over a period of approximately five years.**

11   Q    Do you remember off the top of your head the exact

12   dates in which these various sums were paid?

13   A    **Not off the top of my head, no.**

14   Q    Showing you what has been marked for identification

15   purposes as Government's Exhibit JG 1, for James Grdina.

16       Take a look at that for a second. Don't read it

17   out loud, please. Does that help refresh your

18   recollection of the years during which you made these

19   investments?

20   A    **Yes.**

21   Q    And was the earliest investment that you made in the

22   Avalon CMG?

23   A    **August 24, 2005.**

24   Q    And how MANY more payments of money and/or other

25   contributions did you make?

---

Grdina - Direct/Miskiewicz

2385

1    A    **There were a total of ten additional payments.**

2    Q    What was the total amount of payments towards Avalon

3    CMG?

4    A    **In addition to the amounts that are shown on this**

5    **exhibit, there was a $40,000 capital call payment made in**

6    **2010, so the total would have been $1,308,500.**

7    Q    Okay. Could you just explain for the jury what do

8    you mean by "capital call"?

9    A    **As a member of this LLC, based on the terms and**

10   **conditions of the operating agreement, in the event that**

11   **there were bills due and in this case there were payments**

12   **that were due to the builders, the members based on their**

13   **pro rata share would be 25 percent, I would be responsible**

14   **to pay 25 percent of that capital call.**

15   Q    So if a builder sends an invoice, a bill, to Avalon

16   CMG, to keep it simple, 1,000 bucks, what ARE YOU and

17   Intrigue Investments responsible for paying?

18   A    **I'm responsible for $250,000 of it.**

19   Q    That is in addition to the money you invested?

20   A    **Yes.**

21   Q    That's what you mean by a capital call?

22   A    **Yes.**

23   Q    Over this period of time between 2005 and 2008, how

24   many additional contributions towards bills for the hangar

25   did you make?

---

Grdina - Direct/Miskiewicz

2386

1    A    **There were several. There were a total of nine**

2    **payments shown on this exhibit and one additional one in**

3    **2007.**

4    Q    For how many payments?

5    A    **Ten payments.**

6    A    **$1,308,500.**

7    Q    Now, did there come a time that Mr. Constantine

8    contacted you about problems he was having keeping the

9    hangars?

10   A    **Yes.**

11   Q    And do you recall approximately what year that would

12   have been in?

13   A    **If I recall correctly, 2011 and 2012.**

14   Q    Well, did there come a time you entered into some

15   sort of an agreement to purchase either one or the other

16   hangars, just purchase it outright?

17   A    **Yes.**

18   Q    Do you remember whether or not you signed a purchase

19   agreement at or about that time?

20   A    **I recall signing a purchase agreement.**

21   Q    Why did you enter into a purchase agreement --

22   withdrawn.

23       What, if any, conversation did you have with

24   Mr. Constantine leading to you purchasing -- leading to

25   you signing that purchase agreement?

---

Grdina - Direct/Miskiewicz

2387

1    A    **Mr. Constantine requested that I review and execute**

2    **the purchase agreement to help postpone the foreclosure**

3    **efforts of the builder.**

4    Q    Did he tell you who was about to foreclose on the

5    building?

6    A    **Yes.**

7    Q    Who?

8    A    **I don't recall the name of the gentleman at this**

9    **time.**

10       **(Continued.)**

---

GRDINA-DIRECT-MISKIEWICZ

2388

1  CONTINUED CROSS EXAMINATION
2  BY MR. MISKIEWICZ:
3  Q    So did you agree to sign some sort of a document or
4  purchase agreement to head off foreclosure?
5  A    Yes.
6  Q    Showing you what has been marked as Government
7  Exhibit 3820 for identification.  Do you recognize that
8  document?
9  A    Yes.
10 Q    Do you recognize any of the signatures appearing on the
11 document?
12 A    Yes, I do.
13 Q    Whose signature is that?
14 A    I signed.  The president of the investment company.  And
15 Tommy Constantine signed it as the seller.
16 Q    Did you sign it at or about the time of the dates
17 indicated on there?
18 A    Yes; April 20th, 2009.
19     MR. MISKIEWICZ:  The government moves for the
20 admission of 3820.
21     MR. HALEY:  I have no objection, Judge.
22     THE COURT:  All right.
23     MR. LaRUSSO:  Judge, I have two exhibits marked.  I
24 have no objection to the one that the witness is identifying.
25     THE COURT:  3820 is admitted.

GRDINA-DIRECT-MISKIEWICZ

2389

1     (So marked as Government Exhibit 3820 in evidence.)
2  A    I recall, at the time, that the builder was Steve Milton.
3  Q    Now I'm showing you a portion of 3820.  Line 15, what was
4  the purchase price?
5  A    $3,962,100.
6  Q    Based on your conversation with Mr. Constantine, did that
7  include any of the money over the $1 million you testified you
8  already contributed to Avalon?
9  A    I don't understand your question.
10 Q    In other words, was that 3.9 million going to be on top
11 of the 1.3 million or so that you already contributed to
12 getting your 25 percent share of Avalon CMG?
13 A    Yes.
14 Q    Okay.  That was a bad question.  Yes, meaning you were
15 going to pay another 3.9 or, yes, what you already paid was
16 going to be part of the 3.9?
17 A    Yes, it would be on top of what was already paid.
18 Q    Right after that on line 16, it says, "$120,000 earnest
19 deposit as indicated above."  Do you see that?
20 A    Yes.
21 Q    Did you, in fact, make a $120,000 earnest money deposit?
22 A    No, I did not.
23 Q    Did you have any conversation at or about that time with
24 Mr. Constantine about how that money, that $120,000 payment
25 would be made?

GRDINA-DIRECT-MISKIEWICZ

2390

1  A    Mr. Constantine had stated that he was going to handle
2  it.
3      MR. MISKIEWICZ:  I just need one moment, Your Honor.
4  Q    Now I'm going to show you what was marked for
5  identification purposes.
6      MR. MISKIEWICZ:  May I have a moment, Judge, to
7  confer with counsel?
8      THE COURT:  Yes.
9      (Pause in the proceeding.)
10     MR. MISKIEWICZ:  Your Honor, with stipulation of
11 both counsel, the government moves for the admission of
12 Government Exhibit 8004-C, as in Charlie, for the moment,
13 pages 1 and 6.  We would just reserve an opportunity to come
14 back to this, the rest of the document later.
15     THE COURT:  Is that correct?
16     MR. LaRUSSO:  That is correct, Your Honor.
17     MR. HALEY:  Yes.
18     THE COURT:  Pages 1 and 6 of Government
19 Exhibit 8004-C is admitted.
20     (So marked as Government Exhibit 8004-C in
21 evidence.)
22 Q    Showing you Government Exhibit 8004-C, as in Charlie.
23 And would you look at the second page of that exhibit.  Do you
24 see your company, the name referenced therein?
25 A    Yes.

GRDINA-DIRECT-MISKIEWICZ

2391

1  Q    This is --
2      THE COURT:  This is the second page, page 6?
3      MR. MISKIEWICZ:  Page 6, yes.
4  Q    Do you see your name there?
5  A    Yes.
6  Q    Is that referencing what we talked about, the $120,000
7  earnest money purchase and also the $3.9 million purchase of
8  Hangar 1 in the Avalon Air Park?
9  A    Yes.
10 Q    Page 1 of 8004, for the record, will you tell us what it
11 is?
12 A    It's a disclosure statement filed by Avalon CMG in the
13 United States Bankruptcy Court for the District of Arizona.
14 Q    Page 6 of that document which you're looking at, in
15 Article III, Section A, Hangar 1, is that what -- and all that
16 material, I'm not asking you to read the whole thing -- but is
17 that what references your $120,000 deposit and also the
18 purchase of Hangar 1?
19 A    Yes, it does.
20 Q    It's called Description of The Reorganization Plan, is
21 that correct?
22 A    That's correct.
23 Q    By the way, who ran Avalon CMG LLC?
24 A    Mr. Constantine.
25 Q    Up until now you were a 25 percent owner of Avalon CMG,

1  is that correct?

2  A   Yes.

3  Q   Did you know that your Avalon CMG LLC was petitioning for

4  bankruptcy at or about this time?

5  A   No, I did not.

6  Q   Did you know that your $120,000 earnest money deposit and

7  your agreement to purchase Hangar 1 for $3.9 million was part

8  of this reorganization plan?

9  A   No, I did not.

10  Q   Would it have mattered to you if you knew that this

11  purchase agreement that you signed was being used for this

12  purpose?

13  A   Yes.

14  Q   Why?

15  A   I wasn't aware of this use of the purchase agreement.  I

16  was told it was to forestall a foreclosure of the hangar.

17  Q   Not forestall or to be used in connection with

18  bankruptcy?

19  A   That's correct.

20  Q   Going back to 3820, your purchase agreement, where did

21  you sign this agreement when you did sign it to buy Hangar 1?

22  A   The physical location?

23  Q   Yes.

24  A   If I recall correctly, the document was e-mailed to me

25  and I signed it and returned it.

1  Q   I think when you first said you had a conversation with

2  Mr. Constantine about heading off foreclosure and signing an

3  agreement, you said that you thought it was in 2011.  Would

4  you look at what the date of your signature is here?

5  A   Yes.  It was April 20th of 2009, correct.

6  Q   That's the correct date?

7  A   Yes.

8  Q   So you misspoke when you said 2011?

9  A   Yes, I did.

10  Q   Did you, Mr. Grdina, ever go through with -- withdrawn.

11       I'm going to show you what is in evidence now as

12  Government's Exhibit 1102.  I won't read it, but at the top it

13  says, "Statement of Account of Law Offices of Ronald

14  Richards."

15  A   Yes, I see that.

16  Q   Did you ever hear of Ronald Richards?

17  A   Yes.  It was my understanding he was Mr. Constantine's

18  attorney at one time.

19  Q   If you'll look, roughly, at the middle of the page, do

20  you see a wire transfer on May 12th to Security Title Agency

21  of $120,000?

22  A   Yes, I do.

23  Q   Did you make that $120,000 wire transfer?

24  A   No, I did not.

25  Q   Were you aware of it at the time?

1  A   No.

2  Q   With respect to your purchase agreement -- or I should

3  say the bankruptcy petition reorganization plan, did you know

4  anything about that title agency?

5  A   It was the title agency that was listed in the purchase

6  agreement that was referred to earlier.

7  Q   That was the title agency to which you were supposed to

8  send your $120,000 deposit to, is that correct?

9  A   Correct.

10  Q   Going back to 8004-C, as in Charlie, briefly.  Roman

11  numeral A discusses $120,000.  Where is the money?  What

12  escrow account was it going to be held in?  I'm pointing to

13  it.

14  A   Yes; Security Title Agency.

15  Q   Thank you.

16       That's where that $120,000 came from -- I mean went

17  to from the Ronald Richards account, is that correct?

18  A   That's correct.

19  Q   What, again, did Mr. Constantine tell you, if anything,

20  about taking care of the $120,000.  Did he say he would take

21  it out of the Ronald Richards account?

22  A   He didn't mention that.

23  Q   He didn't tell you where he was going to get the money

24  from?

25  A   That's correct.

1  Q   He told you he needed you to sign an agreement, correct?

2  A   Yes.

3  Q   To do what?

4  A   To forestall a foreclosure of the hangar:

5  Q   Please sign -- in sum and substance, please sign the

6  purchase agreement for $3.9 million, right?

7  A   Yes.

8  Q   He committed you, your company, to $120,000 earnest

9  money -- kind of like a deposit, right?

10  A   Yes.

11  Q   But he said don't worry about the $120,000?

12  A   Yes.

13  Q   Now, is there -- withdrawn.

14       I'm showing you what has been marked for

15  identification as Government's Exhibit 3821.

16       (Showing to counsel.)

17  Q   I'm showing you what is marked as Government

18  Exhibit 3821.  Do you recall or do you recognize that e-mail?

19  A   Yes, I do.

20  Q   Is that to or from your e-mail address at the time?

21  A   It is from my e-mail address.

22  Q   Did you, in fact, send this e-mail with that address?

23  A   Yes.

24       MR. MISKIEWICZ:  The government moves for the

25  admission of 3821.

GRDINA-DIRECT-MISKIEWICZ

2396

1    THE COURT:  Any objection to 3821?

2    MR. LaRUSSO:  Not to the e-mail.

3    MR. HALEY:  No, Your Honor.

4    THE COURT:  3821 is admitted.

5        (So marked as Government Exhibit 3821 in evidence.)

6  Q   Let me bring up Government Exhibit 3821.  It is from you,

7  James Grdina.  Is that your e-mail address, or one of your

8  e-mail addresses at the time?

9  A   Yes.

10 Q   It's on May 12, 2009?

11 A   Yes.

12 Q   For the record, it's addressed to somebody named Linda.

13 A   Yes.

14 Q   You have seen this before, is that correct?

15 A   Yes.

16 Q   Let me ask you the question in this way:  Is it or is it

17 not true, sir, that this is an e-mail essentially saying

18 $121,000 fund -- a $121,000 in money to the Security Title

19 Agency escrow should be returned to the Ronald Richards

20 account?

21 A   $120,000, yes.

22 Q   I'm sorry.  $120,000.

23     Who, if anyone, asked you to send the money?

24 A   Mr. Constantine instructed me to do that.

25 Q   At that point, you had paid millions of dollars in

GRDINA-DIRECT-MISKIEWICZ

2397

1  deposits.  But you're not claiming that you made a deposit in

2  or about the date of 2009 toward the hangar, correct?

3  A   That's correct.

4  Q   This money came from somewhere.  You didn't know where it

5  came from, is that right?

6  A   Yes.

7  Q   But at some point, Mr. Constantine asked you to send this

8  e-mail?

9  A   Yes, he did.

10 Q   Do you know why?

11 A   I do not know why.

12 Q   Do you know what, if anything, happened -- withdrawn.

13     So is it fair to say that your purchase, or your

14 contract to purchase the hangar, Hangar 1 at Avalon Air Park,

15 was not ultimately consummated?

16 A   That's correct.

17 Q   Did you ever receive a return on your -- I think you said

18 1.3 million in capital and cash contributions towards that

19 company?

20 A   No, I did not.

21 Q   As you sit here today, have you seen a dime out of that

22 contribution?

23 A   No.

24 Q   Did you ever learn whether or not you had obtained a

25 25 percent -- well, withdrawn.

GRDINA-DIRECT-MISKIEWICZ

2398

1    You are aware that Mr. Constantine lost not only

2  Hangar 1, but all of the hangars that were part of the Avalon

3  Air Park, correct?

4  A   Yes.

5  Q   You were a quarter member of that company, correct?

6  A   Yes.

7  Q   You had contributed over a million dollars toward that

8  company?

9  A   Yes.

10 Q   You had paid your pro rata share of bills for that

11 company, correct?

12 A   Correct.

13 Q   Did you have anything in writing or were you given

14 anything in writing showing that you made your capital

15 contribution and lived up to your end of the bargain with

16 respect to that air park?

17 A   Well, I had the operating agreement that showed my

18 25 percent membership interest.

19 Q   And you know that operating agreement -- which was

20 something signed by who?

21 A   Signed by Mr. Constantine and Mr. Kenner and myself.

22 Q   And do you know if anything reflecting your 25 percent

23 shares showed up in any of the Arizona Corporate Commission

24 records reflecting who owns what in the corporation?

25 A   No, it did not.  The Arizona records reflected that

GRDINA-DIRECT-MISKIEWICZ

2399

1  Constantine Management Group was the managing member.  And the

2  other entity that was owned by Mr. Kenner was another member.

3  I was never included as a member in the filings.

4  Q   Showing you 3822 for identification.  Have you seen that

5  before?

6  A   Yes, I have.

7      (Handing.)

8      MR. LaRUSSO:  A brief sidebar on this, please.

9      THE COURT:  Let's take the morning break.  Please

10 don't discuss the case.

11     (Whereupon the jury leaves the courtroom at

12 10:00 a.m.)

13     You can take a break, Mr. Grdina.

14     (Witness leaves the courtroom. )

15     (Discussion outside the presence of the jury.)

16     THE COURT:  You may be seated.

17     MR. LaRUSSO:  Your Honor, the only objection that

18 I'm making with regards to this, the date that this document

19 was printed out, June 18, 2014, he was not an interest holder,

20 but before that he was.  I didn't have a chance to confront

21 this because I didn't know it was coming.  I need to get the

22 other record to be able to establish that.  What I'm saying is

23 that this document is not helpful in terms of whether he had

24 the interest during the period of time that he claims he had

25 the interest.  That's my point.

GRDINA-DIRECT-MISKIEWICZ

2400

1    MR. MISKIEWICZ:  That's not my understanding of that

2  being his testimony.  I guess I offered it in similar fashion

3  as the identical agency exhibit that Mr. LaRusso offered a

4  couple of days ago with another witness, as evidence of the

5  defendant's state of mind or the expression of the defendant.

6  If they're not going to stipulate to it, they're not going to

7  stipulate to it.  We'll call in the Arizona Corporation

8  Commission and see if they'll give us their understanding.

9  It's not my understanding there was a portion when he was a

10 member and then he wasn't.  He simply wasn't a member like

11 everybody else.

12    MR. LaRUSSO:  Judge, I'm not objecting to the

13 document itself.  In terms of whether it's an authentic

14 document, I'm not questioning that.

15    THE COURT:  I understand what the issue is.  You do

16 not dispute regarding whether or not someone was a member at

17 that point.  It doesn't matter if it was 2014 or 2012.  If

18 their suggestion is that the Arizona records reflect it was in

19 2012, I don't know if you have to call someone from Arizona if

20 you've got the document from 2012.

21    MR. LaRUSSO:  I can stipulate, Judge, it's the

22 relevant time period.  I have no problem with that.

23    THE COURT:  You could call them and see if you can

24 get the relevant document from that time frame.

25    MR. MISKIEWICZ:  We'll do that.  I'm almost finished

GRDINA-DIRECT-MISKIEWICZ

2401

1  with the direct.

2    THE COURT:  Let's take a break.

3    (Whereupon a recess was taken at 11:15 a.m.)

4    THE CLERK:  All rise.

5    THE COURT:  Please bring in the jury and the

6  witness.

7    (Witness resumes the stand.)

8    MR. MISKIEWICZ:  I think we have a stipulation as to

9  a document.

10    THE CLERK:  Clerk all rise.

11    (Whereupon the jury enters the courtroom at 11:45

12 a.m.)

13    THE COURT:  Please be seated.

14    Go ahead, Mr. Miskiewicz.

15    MR. MISKIEWICZ:  The government moves for admission

16 of Government Exhibit 3822 by a stipulation of the parties.

17    THE COURT:  Is that correct?

18    MR. LaRUSSO:  Yes.

19    THE COURT:  Is that correct?

20    MR. HALEY:  Yes.

21    THE COURT:  3822 is admitted.

22    (So marked as Government Exhibit 3822 in evidence.)

23 Q    So, Mr. Grdnia, I'm showing you 3822.  It's in evidence.

24 The document is entitled Arizona Corporation Commission, State

25 of Arizona Public Access System.  Avalon CMG LLC, was that the

GRDINA-DIRECT-MISKIEWICZ

2402

1  company that you had invested in over a number of years?

2  A    Yes, it was.

3  Q    Where it says "Manager and member information for Avalon

4  CMG LLC," is your name or Intrigue Investments listed anywhere

5  as member of Avalon CMG?

6  A    No, it is not.

7  Q    Specifically, if you look at the last time any dates

8  appear regarding the manager or the member, the latest date

9  there appears to be 7/15/2008.  Do you see that?

10 A    Yes.

11 Q    By that time, you had invested how much in Avalon CMG?

12 A    Almost 1.3 million.

13 A    What was the last time you invested in Avalon CMG.

14 A    It would have been 2010.

15 Q    Now, did you, at one point enter into an agreement with

16 the Palms Hotel to have a penthouse suite built for you

17 personally or Intrigue Investments?

18 A    Actually, I incorporated a company called Intrigue

19 Penthouse that I entered into a purchase agreement for the

20 purchase of a penthouse unit.

21 Q    Did you then actually contract with anybody to begin the

22 actual construction of that unit?

23 A    Yes; with Palms Place.

24 Q    Did there ever come a time that you sold that to anybody?

25 A    Yes.  I sold the actual entity, Intrigue Penthouse, that

GRDINA-DIRECT-MISKIEWICZ

2403

1  had the rights to the unit, to Constantine Management Group.

2  Q    Why did you sell it to them?

3  A    I'm sorry?

4  Q    Why did you sell it to Constantine Management Group?

5  A    I was paid an amount above what my initial investment

6  was.

7  Q    What did Constantine Management Group agree to pay?

8  A    They agreed to pay a total of $1.1 million, which

9  included approximately $650,000 of money that I already had in

10 escrow.

11 Q    In addition to receiving cash with respect to the

12 payments for this unit, was there any other source of property

13 or capital exchanged?

14 A    Yes.  I received the first $275,000 as a credit towards

15 my membership interest in the expansion.

16 Q    Thereafter, did you receive checks or wire transfers or

17 anything like that toward the remaining payments?

18 A    Yes.  I received a payment of $275,000 and two $325,000

19 payments, in full.

20 Q    Was this purchase memorialized in any fashion?

21 A    Yes.

22 Q    I'm going to show you what's been marked as Government

23 Exhibit 3823 for identification.  Do you recognize Government

24 Exhibit 3823?

25    (Handing.)

GRDINA-DIRECT-MISKIEWICZ

2404

1  A   Yes, I do.

2  Q   What do you recognize it to be?

3  A   **It's the sale of my membership interest in the Intrigue**

4  **Penthouse to Constantine Management Group.**

5  Q   Is that your signature at the end of the agreement at

6  Page 11?

7  A   **Yes, it is.**

8  Q   Do you recognize any of the other signatures on that

9  page?

10  A   **Yes. The purchaser for Constantine Management Group was**

11  **Tommy Constantine as president.**

12        MR. MISKIEWICZ:  The government moves the admission

13  of 3823.

14        MR. LaRUSSO:  No objection, Your Honor.

15        MR. HALEY:  No objection.

16        THE COURT:  3823?

17        MR. MISKIEWICZ:  Yes.

18        THE COURT:  3823 is admitted.

19        (So marked as Government Exhibit 3823 in evidence.)

20  Q   Briefly -- 3823. I apologize for doing that. It helps

21  the resetting of the --

22  A   **Focus.**

23  Q   Thank you. That's the word that I need to use.

24        It's entitled "Membership Interest Purchase

25  Agreement," is that correct?

GRDINA-DIRECT-MISKIEWICZ

2405

1  A   **Yes.**

2  Q   We don't have to go through all of this. But it does

3  reference the suite number --

4  A   **Correct.**

5  Q   -- that is being purchased, is that correct?

6  A   **Yes.**

7  Q   At the back there are what appears to be copies of

8  checks. Did you maintain these copies of checks?

9  A   **Yes, I did.**

10  Q   There's a check from Constantine Management Group Ltd.

11  dated 8/24/05 for $275,000. Is that towards -- that one of

12  the payments toward this Palms unit?

13  A   **Yes, it is.**

14  Q   There are checks. There's two -- you said you received

15  two checks, each $325,000. Both of them dated in or about 11

16  of 2005, is that correct?

17  A   **That's correct.**

18  Q   In the memo section where it says "For," what does that

19  say?

20  A   **"Palms Penthouse final." Final payment.**

21  Q   Do you have any idea where Mr. Constantine got this money

22  from?

23  A   **I do not.**

24  Q   Finally, going back to -- going back again, very briefly

25  to the Avalon CMG hangars. When you were asked to enter into

GRDINA-DIRECT-MISKIEWICZ

2406

1  this purchase agreement in April and May of '09, was there any

2  discussion of hockey players participating with you in that

3  purchase agreement?

4  A   **No.**

5  Q   You said that there was a document that reflected your

6  25 percent share based on all the money you had contributed to

7  Avalon CMG. I'm going to show you what's been marked for

8  identification as 3807. Is this the document that you were

9  referring to?

10  A   **Yes; the operating agreement for Avalon CMG.**

11  Q   Do you recognize the agreement?

12  A   **Yes.**

13  Q   You signed it?

14  A   **Yes.**

15  Q   Is it signed by anybody else?

16  A   **It's signed by Tommy Constantine as president of**

17  **Constantine Management Group and it's signed by Phil Kenner as**

18  **the manager member of Avalon Investments IV.**

19  Q   So Mr. Kenner is a managing member of that company?

20  A   **He was, yes, a managing member.**

21        MR. HALEY:  I would object, Your Honor. I don't

22  believe that's a fair characterization of the contents of the

23  document. I'll save that for cross-examination. I apologize.

24  A   **Well, it shows -- sorry.**

25        MR. MISKIEWICZ:  The government moves for the

GRDINA-DIRECT-MISKIEWICZ

2407

1  admission of 3807.

2        THE COURT:  Any objection to the document?

3        MR. LaRUSSO:  No, Your Honor.

4        MR. HALEY:  My confusion, Judge. And I apologize.

5  I have no objection to it.

6        THE COURT:  3807 is admitted.

7        (So marked as Government Exhibit 3807 in evidence.)

8  Q   Again, we're not going to go through the entire

9  agreement. But focusing your attention on Exhibit A, the last

10  page of the agreement, does that reflect what you believe your

11  1.3 million contribution towards Avalon was supposed to get

12  you in exchange for a percentage share of this company?

13  A   **Yes.**

14  Q   For the record, what does it indicate Intrigue

15  Investments get in Avalon?

16  A   **25 percent.**

17  Q   Last, but not least, I'm going to show you what's been

18  admitted in evidence as Government's Exhibit 5104. I'll show

19  it to you on the screen so we can all see it. Funding

20  Consulting Agreement has come in as 5104.

21        Now, CMG was the company through which

22  Mr. Constantine was supposed to contribute towards Urban

23  Expansion, correct?

24  A   **Yes.**

25  Q   Did you ever see this agreement, the funding agreement?

GRDINA-CROSS-HALEY

2408

1  A  **No, I have not.**

2  Q  With respect to the money that was raised and sent

3  wherever it was sent, did you ever hear of a guy named John

4  Kaiser?

5  A  **I don't recall the name.**

6        MR. MISKIEWICZ:  No further questions.

7        THE COURT:  Any cross-examination?

8        MR. HALEY:  Yes, sir.

9  CROSS EXAMINATION

10  BY MR. HALEY:

11  Q  Mr. Grdina, my name is Rick Haley, sometimes known as

12  Mr. Healy, and I represent Phil Kenner.  I set that clock.

13        Sir, you testified on direct that with reference to

14  the money that you contributed for purposes of purchasing the

15  Waikapuna, W-A-I-K-A-P-U-N-A, 3.6 million was used to close on

16  the purchase, correct?

17  A  **$3,621,000, correct.**

18  Q  That's correct.

19        Of that, you contributed $3.5 million, is that

20  correct?

21  A  **Yes.**

22  Q  Were you aware that Phil Kenner contributed $100,000 of

23  his personal funds to make that closing happen?

24  A  **Yes.**

25  Q  Indeed, sir, as relates to Government Exhibit 3819, that

GRDINA-CROSS-HALEY

2409

1  $100,000 deposit is reflected on this document, is that

2  correct?

3  A  **Yes, it is.**

4  Q  Now, in connection with your deposition to loan 3.5

5  million --

6        MR. MISKIEWICZ:  Your Honor, for the record, 3819-A,

7  as in apple.

8        MR. HALEY:  I appreciate that.

9  Q  Sir, at some point, as relates to the money you loaned,

10  were you aware that the Waikapuna property was appraised at

11  $35 million by KPMG when you made the $3.5 million loan?

12  A  **No, I was not.**

13  Q  I want to show you a document marked Kenner Exhibit 77.

14  Without revealing the content of the document by way of your

15  testimony, are you able to absorb the writing on the document?

16  Just take a quick look at it.

17  A  **(Witness complies.)**

18  Q  My question is, sir, at some point in time, did or did

19  you not become aware that the Waikapuna property was appraised

20  by KPMG in the amount of $35,750,000?

21  A  **I don't recall it.**

22  Q  Sir, do you recall or does the name Christopher Manfredi

23  mean anything to you?

24  A  **No.**

25  Q  I take it, sir, that document that you have in front of

GRDINA-CROSS-HALEY

2410

1  you does not in any way refresh your recollection whether

2  Mr. Christopher Manfredi was the project manager for the

3  Waikapuna project?

4  A  **I don't recall.**

5  Q  Now, sir, with reference to the agreement that you had by

6  way of the promise for the repayment of the $3.5 million, were

7  you aware that Phil Kenner personally guaranteed that

8  promissory note?  By that, I mean committed his personal

9  assets to satisfy that promissory note and the money due you

10  should it not be paid?

11  A  **Yes; he did in an amended security agreement.**

12  Q  Sir, will you kindly take a look at Kenner Exhibit 78.

13  It's a two-page document, but take whatever time you need to

14  read it to yourself.

15  A  **(Witness complies.)**

16  Q  Specifically, Paragraph 3, sir.  You can look at the

17  entire agreement.

18  A  **I am familiar with the agreement.**

19  Q  Is that the agreement you referred to just a moment ago

20  in terms of Phil Kenner's written agreement to personally

21  guarantee the loan?

22  A  **Yes.**

23        MR. HALEY:  I offer, Your Honor, Kenner Exhibit 78.

24        MR. LaRUSSO:  No objection.

25        MR. MISKIEWICZ:  No objection.

GRDINA-CROSS-HALEY

2411

1        THE COURT:  Kenner Exhibit 78 is admitted.

2        (So marked as Defendant Kenner Exhibit 78 in

3  evidence.)

4  Q  By the way, when did you meet Phil Kenner in person for

5  the first time?

6  A  **I don't recall.**

7  Q  Well, was it sometime after the money, the $3.5 million

8  you loaned, and sometime after you were paid pursuant to the

9  promissory note after the Lehman closing, did it take place

10  after those events?

11  A  **Yes.**

12  Q  I take it, sir, it was during one of those meetings after

13  the Lehman closing took place, that you told us on direct that

14  Phil told you that the property was purchased for 4.2 million,

15  is that correct?

16  A  **It was quite a few years after, yes.**

17  Q  I believe that you testified on direct, sir, that

18  following the Lehman closing pursuant to the terms of the

19  promissory note, the full terms and conditions of that note

20  were satisfied, is that true?

21  A  **That's correct.**

22  Q  Do you know, sir, if Lehman brothers in connection with

23  giving a loan for the purposes of the continuing development

24  of the Hawaii project required that promissory note to be

25  repaid in full?

GRDINA-CROSS-HALEY

2412

1  A   It was my understanding that that was the case.

2  Q   Now, with reference to the operating agreement.

3         MR. HALEY:  That was introduced as Government 3807,

4  is that correct?

5         MR. MISKIEWICZ:  Let me look at it.

6         MR. HALEY:  Here (handing).

7         MR. MISKIEWICZ:  Yes.

8  Q   With reference to the operating agreement introduced in

9  evidence as Government Exhibit 3807, sir -- simply going to

10  the --

11        MR. HALEY:  Actually, may I see your original,

12  Mr. Miskiewicz?

13        MR. MISKIEWICZ:  Here (handing).

14  Q   With reference to the operating agreement 3807, I'll

15  bring your attention, frankly, to page 27.  It's in evidence.

16  A   Yes.

17  Q   Various signatures appear on that document, is that

18  correct?

19  A   Yes.

20  Q   Tommy Constantine's signature, correct?

21  A   Correct.

22  Q   Phil Kenner's signature, correct?

23  A   Yes.

24  Q   Your signature, correct?

25  A   Yes.

GRDINA-CROSS-HALEY

2413

1  Q   And each one signed, sir, in their capacity as a managing

2  member of a particular entity, is that true?

3  A   Yes.

4  Q   So let me ask you, sir, who was the manager or managing

5  member of Avalon CMG LLC?

6  A   Constantine Management Group, president.

7  Q   As represented by the president, Tommy Constantine, is

8  that correct?

9  A   Yes.

10        MR. HALEY:  May I have two moments, Judge?

11        THE COURT:  Yes.

12  Q   Sir, with reference again to Government Exhibit 3807, it

13  bears the signatures of Tommy Constantine, Phil Kenner, and

14  yourself, James Grdina.  Were you on the same loan when that

15  document was signed, sir?

16  A   I don't know that.

17  Q   Do you know what the idea of silent counterparts means?

18  A   Yes.

19  Q   From your perspective, what does that mean?

20  A   You have a party that signs at another location.  If I

21  recall correctly Phil signed it at another location.

22  Q   What is your occupation, Mr. Grdnia?

23  A   I am an entrepreneur.

24  Q   I take it a successful one?

25  A   It's all relative.

GRDINA-CROSS-LaRUSSO

2414

1  Q   Sir, over the years, during your entrepreneurship, were

2  there instances where documents were signed -- I use the term

3  in counterparts where someone may not have actually been

4  physically present in the room and signed at another location

5  and the document was put together as an original?

6  A   Yes.

7  Q   That's not an unusual occurrence, is it?

8  A   It's common.

9         MR. HALEY:  Mr. Grdnia, it's been my pleasure.

10  Thank you, sir.

11        THE COURT:  Mr. LaRusso.

12  CROSS EXAMINATION

13  BY MR. LaRUSSO:

14  Q   Good afternoon.

15  A   Good afternoon.

16  Q   Mr. Grdina, my name is Robert LaRusso and I represent

17  Mr. Constantine.

18        At the time you entered into the agreement, the

19  Urban agreement with Kau Holding -- I believe you said that

20  was in October of 2005, is that right?

21  A   Yes.

22  Q   Were you aware that Mr. Constantine had already

23  contributed $625,000 towards his $1.5 million responsibility?

24  A   No.

25  Q   For a point of clarification, I believe you testified

GRDINA-CROSS-LaRUSSO

2415

1  both on direct and on cross-examination a few minutes ago,

2  that your 3.5 million and the $100,000 contribution by

3  Mr. Kenner was to close on the Waikapuna property, is that

4  right?

5  A   Correct.

6  Q   Do you know if there was any urgency in securing the

7  funding?

8  A   I was informed there was urgency.  There was a $64,000

9  penalty per week for postponing the closing of the purchase of

10  the property.

11  Q   Do you know how many weeks Mr. Kenner was paying that

12  $64,000 a week penalty?

13  A   No.  I saw two other payments in the bank statements that

14  were provided.

15  Q   And those penalty payments, were they to extend the

16  closing date on the property for the Waikapuna property?

17  A   That was my understanding.

18  Q   At that point, was this property in danger of being -- if

19  I choose the word correctly, not complete?  The contract to

20  purchase Waikapuna would not have been completed but for the

21  penalty payment and the intercession on your behalf, is that

22  correct?

23  A   That's my understanding, yes.

24  Q   Do you know whether or not that the urgency also -- in

25  addition to alleviating the penalty payments, was also to

GRDINA-CROSS-LaRUSSO

2416

1  preserve the earnest money or the down payment that was put on
2  that property when they entered the contract?
3  A   Yes, I'm aware of that.
4  Q   That was approximately $1 million, is that right?
5  A   It was my understanding it was 5 or $600,000.
6  Q   Were it not for your assistance, that money might have
7  been lost as well, is that correct?
8  A   That's correct.
9  Q   Now, and you may have to help me understand the
10  transaction, I believe you were describing a few moments ago,
11  3.5 plus $100,000 was to complete the purchase on Waikapuna.
12  Repeating myself for the next question. What was the 1.5
13  million for? Can you explain that for me?
14  A   Well, I was told by Mr. Constantine there was a total of
15  $5 million that was needed to close the property. I didn't
16  find out until sometime after -- actually, after the lien was
17  closing, that the amount that was needed was only 3.6 million;
18  $3,621,000.
19  Q   But there came a time that you learned that the 1.5 was
20  for a particular purpose, is that correct?
21  A   Yes, based on the agreements that we originally signed
22  in October of 2005, we were supposed to have purchased 123.9
23  acres for a million and a half dollars.
24  Q   So at the time you entered into the agreement, October of
25  2005, you had not yet purchased the 123.9 acres, is that

GRDINA-CROSS-LaRUSSO

2417

1  correct?
2  A   That's correct.
3  Q   So part of the money that was being loaned, as you said,
4  was to be used to purchase that property. I believe you were
5  shown a diagram of the property itself, is that correct?
6  A   No. It's somewhat misstated. I was informed there was
7  $5 million that was needed to purchase the property, needed to
8  close the property. Of that, we signed a promissory note for
9  three and a half million dollars and we received the
10  123.9 acres.
11  Q   So it is your testimony that the property was possessed
12  after this transaction in October of 2005?
13  A   The property was part of the transaction.
14  Q   Let me ask you, this 123.9 acres, that was part of a
15  larger parcel, is that right?
16  A   That's correct.
17  Q   Had there been any efforts made to subdivide that 123.9
18  from the higher parcel that we were talking about?
19  A   Yes. As part of the agreement, under the terms and
20  conditions, that had to be made in good
21  faith to actually provide that parcel for the deed. So they
22  had to separate it from the whole parcel.
23  Q   So the deed to the property had not yet been secured?
24  A   That's correct.
25  Q   In order to complete that portion there was in your mind,

GRDINA-CROSS-LaRUSSO

2418

1  at the time of the agreement, time needed to do that, is that
2  correct?
3  A   Yes.
4  Q   There were a lot of factors that were entered into to
5  finally securing the deed. You were aware of that?
6  A   Yes.
7  Q   There were all kind of studies that had to be done, they
8  had to make sure that the title was proper. Other business
9  considerations, is that correct?
10  A   Yes.
11  Q   In Hawaii, were you aware that that process could take a
12  relatively long period of time?
13  A   I found out afterwards, yes.
14  Q   The monies, the 1.5, where was that money being held
15  pending the receipt of the deed, pending the final outcome of
16  this transaction that you had entered into? Where was that
17  money supposed to be kept, to your understanding?
18  A   To my understanding, the $5 million was supposed to
19  purchase the whole parcel. Before that, we had a $3.5 million
20  dollars promissory note and we got rights to 123.9 acres.
21  Q   So it was your belief that you had actually acquired the
22  property subject to the deed being provided at a future time,
23  is that correct?
24  A   That is correct.
25  Q   Now, the Lehman closing occurred around August of 2006?

2419

1  A   August 10th.
2  Q   Yes. Do you know whether or not after that Lehman
3  closing Mr. Constantine paid additional monies toward his
4  obligation towards the $1.5 million?
5  A   The 1.5 million was supposed to be paid in a capital
6  contribution ten days after the signing of the operation
7  agreement in 2005.
8  Q   I understand that. But my question is, as you're
9  testifying here today, are you aware of the fact that
10  Mr. Constantine had paid some money before the deal in October
11  of 2005 and sometime after the ten-day period after receiving
12  the money from the Lehman closing?
13  A   No.
14  Q   As you're testifying here today, do you know whether or
15  not Mr. Constantine at some point, before, during or after,
16  made the $1.5 million obligation? Are you aware of that?
17        MR. MISKIEWICZ: May we approach.
18        (Whereupon a side-bar conference was conducted.)
19        (Matter continued on the next page.)
20
21
22
23
24
25

2420

1        (Side-bar conference.)
2        MR. MISKIEWICZ:  It's not really an objection, Your
3    Honor.  He may say he knows, but he knows because of what
4    Mr. Kenner told him.  That's why I led him through this area.
5    I did advise him not to make reference to comments Mr. Kenner
6    made to him in 2012 about Mr. Constantine actually having paid
7    nothing.  So that's why I interrupted him.
8        THE COURT:  I'm glad you did.
9        MR. LaRUSSO:  I'm glad you did too.  So I'll move
10   off this at this point.  I'll move into another area dealing
11   with this, but I don't think -- just so the Court is aware, he
12   confronted my client regarding this.  They had a conversation
13   regarding this.  And I don't believe Kenner should be coming
14   up at all in the conversation.  I'll stay away from that.
15       THE COURT:  Thank you.
16       MR. MISKIEWICZ:  Thank you.
17       (Whereupon the side-bar conference was concluded.)
18       (Matter continued on the next page.)
19
20
21
22
23
24
25

2421

1        (In open court.)
2    CROSS-EXAMINATION (Cont'd)
3    BY MR. LARUSSO:
4    Q    Mr. Grdina, did there come a time when you actually
5    confronted Mr. Constantine about the $1.5 million
6    contribution?
7    A    Yes.
8    Q    And during that discussion with Mr. Constantine, did
9    he present you with wire transfers and other documentation
10   proving that he had in fact made the 1.5 --
11   A    No, he did not.
12   Q    -- million dollar contribution?
13   A    No, he did not.
14   Q    Where did this meeting with Mr. Constantine take
15   place?
16   A    At his office at one of the airplane hangers.
17   Q    Do you remember him presenting you with any
18   documentation?
19   A    He had assured me he would provide me the
20   documentation and I still hadn't seen any to this date.
21       MR. LARUSSO:  Your Honor, with the Government's
22   permission and Mr. Haley's -- I'll not call you by your
23   last name anymore (handing).
24       MR. LARUSSO:  Your Honor, at this time with
25   stipulation from co-counsel and from the Government, I'm

OFFICIAL COURT REPORTER

2422

1    going to be introducing C 152, 153 and 154, they are bank
2    records.
3        THE COURT:  Any objection.
4        MR. MISKIEWICZ:  No objection.
5        THE COURT:  Mr. Haley?
6        MR. HALEY:  No, sir.
7        THE COURT:  152, 153 and 154 in evidence.
8        (Whereupon, Government's Exhibit C 152, 153, and
9    154 were received in evidence.)
10   BY MR. LARUSSO:
11   Q    By the way, at this meeting do you recall being shown
12   a spreadsheet of payments?
13   A    No.
14   Q    What office was the meeting?  Where did it take
15   place?
16   A    In the conference room.
17       MR. LARUSSO:  Pursuant to the stipulation there
18   had been received C 152 in evidence, and I'm turning to
19   the second page.  I'm actually pointing to the top which
20   shows this to be the account of Constantine Management
21   Group.
22       This is page 2 of 4 for the statement
23   September 1, 2005, through September 30, 2005.  I'll state
24   the obvious, that's about a month before your agreement?
25   A    Two weeks -- the whole period.

OFFICIAL COURT REPORTER

2423

1    Q    Do you know at the bottom do you see from the
2    Constantine Management Group two debits called "other
3    debts" on September 20, $555,000.
4        THE COURT:  Mr. LaRusso, it says 550,000, not
5    555,000.
6        MR. LARUSSO:  I'm sorry, your Honor.
7    Q    550,000.  Do you see that?
8    A    Yes.
9    Q    It says beneficiary, GDM.  Do you know what those
10   initials stands for?
11   A    No.
12   Q    Did you ever hear of a company called Guide Dog?
13   A    Yes.
14   Q    And the second one was September 20th, for 75,000,
15   for the same beneficiary, GDM 33?
16   A    I see that.
17   Q    Do you recall any documentation or proof that
18   Mr. Constantine had made a contribution to the 1.5 million
19   of $625,000 a couple weeks before the closing?
20   A    No.
21   Q    And I understand there was a requirement that there
22   be a $1.5 million within ten days of the agreement, but
23   your testimony was that it was never made, correct, at
24   that time?
25   A    That's correct.

OFFICIAL COURT REPORTER

Grdina - Cross/LaRusso

2424

1   Q   But when you met with Mr. Constantine, did he also
2   tell you that he made additional payments even though it
3   was passed the ten-day period?
4   A   No.
5             MR. MISKIEWICZ:  Objection, hearsay.
6             THE COURT:  Overruled.  You can answer that.
7             THE WITNESS:  No.
8   Q   Let me show you what has been received as C 153.
9   This is again the Constantine Management Group bank
10  statement for the period August 1, 2006, through
11  August 31, 2006.  Can you remind us again when the Lehman
12  closing was?
13  A   **August 14, 2006.**
14  Q   Directing your attention now to the third page of
15  this exhibit under withdrawals of debits from Constantine
16  Management Group.
17            Do you see August 15, 250,000?
18  A   Yes.
19  Q   And the beneficiary is the First American Title
20  Insurance, and if you continue down to the beneficiaries,
21  it says Kenner escrow?
22  A   Yes.
23  Q   Was this document shown to you in regards to any
24  monies that Mr. Constantine might have made towards his
25  responsibility for the 1.5 million?

Grdina - Cross/LaRusso

2425

1   A   **No, and this was after the closing of that**
2   **responsibility.**
3   Q   I preface that.  I understand that.  I'm asking you
4   you met with him and you discussed moneys that he was
5   obligated according to your testimony, did he provide you
6   with any documentations that he made, maybe not under ten
7   days, but made a contribution to the 1.5?
8   A   No.
9   Q   That's what this is all about?
10  A   **Well, this contribution he received almost**
11  **$2.1 million of payoff the day before for a percentage of**
12  **the company he didn't own.  He wasn't invested in the**
13  **company.  He didn't make the capital contribution of the**
14  **1.5.**
15  Q   Did he show you that particular payment and say to
16  you that in fact I was contributing money to the 1.5 after
17  I had received money from the Lehman closing?
18  A   **No, he did not.**
19  Q   In the same document, do you recall being shown or
20  told that on August 22, three payments going out, 169,000,
21  150,000, 100,000, to Mr. Kenner, on all occasions.  Do you
22  see that?
23  A   Yes.
24  Q   Did you discuss this in terms of the money that he
25  was obligated to pay?

Grdina - Cross/LaRusso

2426

1   A   No.
2   Q   By the way, the meeting you had with Mr. Constantine
3   came after these dates; is that right?
4   A   Yes.
5   Q   And lastly, Exhibit C 54, again, Constantine
6   Management Group, for the period May 1, 2007 through
7   May 31, 2007.  I direct your attention to the third page,
8   two withdrawals on May 15, one for 192,000, one for
9   60,000, one to Philip A. Kenner and the other to
10  Guide-Dog?
11  A   Yes.
12  Q   Again, any discussion with Mr. Constantine at the
13  time you had the meeting as this being part of his
14  contribution?
15  A   **No, this was five months before he even formed a**
16  **corporation.**
17  Q   That was in 2007.  When did you form the corporation?
18  A   **2005.  That's correct.**
19  Q   Two years after?
20  A   **This was after the payoff.  I didn't read the date on**
21  **that.  I'm sorry.**
22            MR. LARUSSO:  That's okay.  I misspeak many
23  times.  I should have shown that to you more clearly.
24  Q   My question is when you met with Mr. Constantine and
25  discussed the monies that you felt should have been

Grdina - Cross/LaRusso

2427

1   contributed at the time of the closing in October of 2005,
2   do you have any recollection of him providing the
3   information that I've just reviewed with you to show you
4   that in fact he had made the money contributions even
5   though it was beyond the ten-day period?
6   A   No.
7             MR. MISKIEWICZ:  Objection, asked and answered.
8             Withdrawn.
9   Q   Do you remember any promissory notes being shown to
10  you at the meeting?
11  A   **No?**
12  Q   At any point in time do you remember Mr. Constantine
13  showing you promissory notes from Phil Kenner for
14  $1.5 million?
15  A   No.
16  Q   By the way, at the time that this meeting with
17  Mr. Constantine was taking place, and I should say after
18  it, did you continue your relationship with
19  Mr. Constantine?
20  A   Yes.
21  Q   Would it be fair to say that following the meeting --
22  withdraw that.
23            What was your relationship with him back in
24  October of 2005 when you went into the business deal?
25  A   **We were good friends.**

Grdina - Cross/LaRusso

2428

1   Q   How long had you known him at that point?

2   A   At least five years.

3   Q   After the meeting that you had discussing with him

4   the 1.5 that he was to have contributed back in October of

5   2005, at that conclusion of the meeting did you remain

6   friends?

7   A   We were no longer good friends but he assured me he

8   would provide me the support documents to show his capital

9   contribution of 1.5 million.

10  Q   Well, did Mr. Constantine also try to help raise

11  money for your business?

12  A   At what period of time?

13  Q   Around this.

14  A   Yes.

15  Q   Tell us about that, please?

16  A   I have a company called Joyce Motor Credit that lends

17  money on specialty cars and he got me in touch with the

18  gentleman locally, Mr. Granatelli, for possible funding.

19  Q   Do you have a company on the website called the dirty

20  dot.com?

21  A   Yes.

22  Q   Did Mr. Constantine help raise $250,000 for that as

23  well?

24  A   I don't recall.

25  Q   By the way, his efforts that he made raised money for

Grdina - Cross/LaRusso

2429

1   you, you just described.  Did he ask for any compensation

2   for doing that?

3   A   No.

4   Q   By the way, did you make any certain introductions to

5   try -- withdraw that.

6       Do you recall a time when Mr. Constantine was

7   indicted?

8   A   For?

9   Q   -- And arrested for criminal charges?

10  A   Yes.

11  Q   And did you at any point agree to be a character

12  witness for Mr. Constantine?

13  A   Yes.

14  Q   That would be sometime around 2013; is that correct?

15  A   Correct.

16  Q   And you had agreed to go to court and testify on his

17  behalf to his good character; is that right?

18  A   Yes.

19  Q   As a matter of fact, at that point in time you had no

20  reason not to do that -- withdraw that.

21      Mr. Grdina, at or around that time were you

22  contacted by law enforcement --

23  A   Yes.

24  Q   -- Do you recall who and how they made contact with

25  you?

Grdina - Cross/LaRusso

2430

1   A   Mr. Galioto.

2   Q   Was that in person or on the telephone?

3   A   Both.  Both.

4   Q   And did there come a point in time that you decided

5   not to appear and testify on his behalf as a character

6   witness?

7   A   Yes.

8   Q   Why was that?

9   A   There was a big dichotomy.

10      At one point he was a big friend of mine and he

11  trained me as a businessperson so there was a conflict and

12  it was in my best interest not to testify.

13  Q   Did you in your equation consider the information

14  that you received from Mr. Galioto?

15  A   I didn't receive any information from him.

16  Q   Did you discuss with Mr. Galioto any of the

17  allegations being made against Mr. Constantine?

18  A   I did under subpoena provide them with the

19  information as requested.

20  Q   Do you remember ever telling Mr. Constantine and/or

21  his wife that you were scared to help him?

22  A   No, I don't recall that.

23  Q   Just going back for a minute.  I'll show you three

24  documents I'll mark for identification as 146, 147, and if

25  I may, 148.

Grdina - Cross/LaRusso

2431

1       Mr. Grdina, take a look at these three exhibits

2   as 146, 147 and 148 for identification, and the question

3   I'll ask after you look at them, does that refresh your

4   recollection that you were shown promissory notes signed

5   by Mr. Kenner?

6   A   I've never seen these before.

7       MR. MISKIEWICZ:  Objection.  May we approach?

8       THE COURT:  Yes.

9       (Whereupon, at this time the following took

10  place at the sidebar.)

11      (Continued.)

Grdina - Cross/LaRusso

**2432**

1    MR. MISKIEWICZ:  My objection.  The witness has
2   repeatedly said he was shown no documentation indicating
3   any payments from Mr. Constantine or -- towards Waikapuna,
4   and now he's being asked and I think your Honor made
5   reference to this yesterday after the jury had left, he's
6   being asked to refresh his recollection of documents that
7   he's not a party to, has no basis -- couldn't possibly --
8   I know you can show a witness anything but we're wasting
9   time here.  This is not his promissory note.
10    MR. LARUSSO:  Just for the record, I'm not
11   wasting time, Judge.  I have information that the meeting
12   he had with Mr. Constantine was quite different than the
13   way he's describing it.  I have three documents that we
14   know or at least from our information was shown to him.
15   He says he doesn't remember whether or not he was shown
16   documents, don't remember promissory notes.  I'm showing
17   these documents to see whether it refreshes his
18   recollection.
19    THE COURT:  Let's move on.
20    (End of sidebar conference.)
21    (Continued.)
22
23
24
25

Grdina - Cross/LaRusso

**2433**

1    (In open court.)
2   Q   Mr. Grdina, with regards to the Avalon Airpark hangar
3   you've testified to, I believe you indicated that the
4   initial contribution was moneys that were realized from a
5   Palm condominium unit that he owned; is that correct?
6   **A   Yes.**
7   Q   How much of that was, that is, the proceeds from that
8   sale were used as your initial contribution?
9   **A   $275,000.**
10   Q   During that point in time would you agree you then
11   had an ownership interest or at least believed to have an
12   ownership interest in Avalon?
13   **A   Correct.**
14   Q   You received an operating agreement, I think it was
15   shown to you, with your name on it?
16   **A   Yes.**
17   Q   Could you tell us what happened to the real estate
18   market, if you know, in and around this time, 2007-2008?
19   **A   It crashed.**
20   Q   That's a good word.  I think we're all familiar with
21   that.
22    People lost equity in their homes and property
23   at that time?
24   **A   Yes.**
25   Q   Were you made aware at this point in regards to the

Grdina - Cross/LaRusso

**2434**

1   building that Mr. Constantine faced challenges in regards
2   to preserving the equity in this building around this
3   time, 2007-2008?
4   **A   No.**
5   Q   You don't recall any conversation with him explaining
6   to you the difficulties and challenges he was having at
7   that point.
8   **A   I just recall writing checks for the capital calls
9   for the build-out of the units.**
10   Q   There were lenders, correct, in regards to Avalon?
11   **A   I'm not aware of that.**
12   Q   Do you know whether or not the equity in Avalon was
13   diminished substantially by moneys that were owed by the
14   downturn in the market?
15   **A   I'm not aware of that.**
16   Q   By the way, were you aware of a lender by the name of
17   Mr. Bailey?
18   **A   I'm sorry?**
19   Q   Mr. Bailey.
20   **A   I don't recall.**
21   Q   Do you know of any lender that had a loan interest in
22   the hangar?
23   **A   I don't recall any names at this time.**
24   Q   In your opinion, do you think the value of Avalon had
25   gone up after the market had crashed?

Grdina - Cross/LaRusso

**2435**

1   **A   No.**
2   Q   Would you agree -- well, withdraw that.
3    Do you recall having a conversation with
4   Mr. Constantine in terms of trying to protect whatever
5   equity was left in Avalon after the market had crashed?
6   **A   I don't know what you are referring to.**
7   Q   Well, in regards to any of the contributions that you
8   made, and I think you mentioned there were a host of them
9   in 2007 and I believe one went into 2008 and one in 2010,
10   do you recall any discussions with Mr. Constantine in that
11   regard to try to preserve the equity?
12   **A   No.**
13   Q   Do you recall any discussion where Mr. Constantine
14   offered you an opportunity or asked you that you could be
15   removed from the Avalon deal since it did not have the
16   value it had once in the past?
17   **A   Mr. Constantine clearly stated to me I was never
18   vested as a member of Avalon.**
19   Q   Did Mr. Constantine ever tell you he would personally
20   guarantee your investment?
21   **A   No.**
22   Q   By the way, what happened to the value of the
23   penthouse after -- withdraw.
24    Can you explain to us in regards to the Palm,
25   the penthouse, after you had sold it to Mr. Constantine,

Grdina - Cross/LaRusso

2436

1  what happened to that?
2  A   Well, I'm assuming if it followed the market trend,
3  it depreciated in value.
4  Q   It depreciated, correct?
5  A   Yes.
6       THE COURT:  Mr. Grdina, I think your mike may
7  have turned off.
8       MR. LARUSSO:  I'm thinking he's dropping his
9  voice when in fact it is his microphone.
10      Thank you.
11 Q   So it would be fair to say that the losses that you
12 talked about were not one-sided, they were not only you
13 but other people who likewise suffered losses in regards
14 to the deal we're talking about?
15      MR. MISKIEWICZ:  Objection to form.
16 A   In what respect?
17 Q   Well, there were losses suffered on both sides.
18 A   What deal?
19 Q   The Palms deal?
20 A   The Palms deal?
21 Q   Yes.
22 A   Yes.
23 Q   Do you recall at any point in time receiving an
24 ownership interest in an aviation company that
25 Mr. Constantine was the founder and consultant of?

Grdina - Cross/LaRusso

2437

1  A   No.
2  Q   Did you ever hear of a company called Jet Set?
3  A   Set Jet.
4  Q   You know the name?
5  A   Yes.
6  Q   And do you remember speaking with Mr. Constantine
7  about receiving an ownership interest in Jet Set -- Set
8  Jet?
9  A   Yes, he had mentioned having an ownership interest in
10 Set Jet.
11 Q   And did he offer you his equity, 100 percent equity
12 that he had in that company that he had earned over the
13 years?
14 A   There was never anything stipulated about the amount
15 of ownership interest or in what form.
16 Q   In regards to that company, what was the offer made
17 to you?
18      MR. MISKIEWICZ:  Objection.
19      THE COURT:  Overruled.  You can answer.
20 A   He simply offered me an ownership interest in Set
21 Jet.
22 Q   And did Mr. Constantine have an obligation to do that
23 to you or for you?
24 A   No.
25 Q   And why was he doing that?

Grdina - Cross/LaRusso

2438

1       MR. MISKIEWICZ:  Objection.
2       MR. LARUSSO:  As you understood it.
3  A   As he stated to me, it was because he did not vest my
4  interest in Avalon CMG.
5  Q   Did there come a point in time when Mr. Constantine
6  filed bankruptcy?
7  A   Yes.
8  Q   And do you know was it Chapter 7, 11 or 13?
9  A   I don't recall.
10 Q   And do you know the difference between the three?
11 A   No.
12 Q   Do you recall whether or not this bankruptcy involved
13 a reorganization plan?
14 A   I think it did, if I recall correctly.
15 Q   For which company?  I'm sorry.  For Mr. Constantine
16 personally, am I correct?
17 A   Yes.
18 Q   You were a creditor, would you agree with me, with
19 regards it his bankruptcy?
20 A   Yes.
21 Q   As a matter of fact, were you listed in the
22 bankruptcy filings as a creditor of Mr. Constantine?
23 A   I would assume so.  I received the mail for the
24 updates, the bankruptcy.
25 Q   Explain to the jury what that means.  What does that

Grdina - Cross/LaRusso

2439

1  mean?
2  A   If I'm listed as a creditor, any of the petitions in
3  front of the bankruptcy court, all the creditors will be
4  notified.
5  Q   And you were receiving such notification; is that
6  correct?
7  A   Correct.
8  Q   And you recall in any of those notifications
9  Mr. Constantine being required to submit a bankruptcy
10 plan?
11 A   I do not recall.
12 Q   Do you recall at any point in time being asked to
13 approve or disapprove a reorganization plan?
14 A   I don't recall.
15      MR. LARUSSO:  Just one moment, if I could.
16 Q   Let me show you what has been marked for
17 identification as C 159.
18      Mr. Grdina, I will just show this document to
19 you and ask you not to describe any information on it.
20 Just review it, and the question is:  Does it refresh your
21 recollection that you received information in regards to
22 Mr. Constantine's bankruptcy, that you were asked to
23 approve a reorganization plan?
24 A   I don't recall.
25 Q   Do you know what the word valid means?

Grdina - Cross/LaRusso

2440

1   A   Yes.
2   Q   What is it?
3   A   It's an acceptance or a denial.
4   Q   And do you remember at any point voting on a
5   reorganization plan for Mr. Constantine?
6   A   I don't recall at this time.
7   Q   You mentioned a man by the name of Mr. Hilton with
8   regards to the Avalon hangar.  Do you recall that?
9   A   Yes.
10  Q   How was he involved in this transaction?
11  A   It was my understanding he was the builder for the
12  units.
13  Q   Not only was he a builder but he was also a lender?
14  A   It's my understanding he built the units with his own
15  proceeds.
16  Q   Did you know as a result of his participation he
17  was owed money as a result?
18  A   That's my understanding.
19  Q   How much do you recall him being owed, if you do?
20  A   I have no idea.
21  Q   By the way, when you were shown the purchase
22  agreement for the payment of approximately $3.9 million
23  for that hangar, did you intend to pay that money?
24  A   No.
25  Q   Would you explain that to us, please?

Grdina - Cross/LaRusso

2441

1   A   Mr. Constantine once again requested that I enter
2   that purchase agreement or execute that agreement to
3   postpone or forestall the foreclosure of the units.
4   Q   And that you were working with Mr. Constantine at
5   this point to prevent the hangars from being taken away;
6   is that correct?
7   A   That's correct.
8   Q   By Mr. Hilton.
9   A   Yes, if I remember correctly at that time.
10  Q   And this was designed to prevent the loss of
11  substantial amounts of money that were equity still in the
12  building at that point?
13  A   I don't know what the equity was in the building.
14  Q   I'll just ask you a few questions about the
15  prepayment penalty, if I could.
16      Mr. Grdina, when you entered into this deal, you
17  didn't have a chance to see the Hawaiian property; is that
18  correct?
19  A   Yes.
20  Q   Did you do a title search?
21  A   No, I did not.
22  Q   Would you agree with me this is what is known as a
23  potential risky investment?
24  A   Based on the representations that Mr. Constantine
25  made, no.

Grdina - Cross/LaRusso

2442

1   Q   Why is that?
2   A   I was provided the information by him that the
3   property was worth multiples of what the purchase price
4   was, that Mr. Kenner had negotiated.
5   Q   But would you agree even though the property had
6   substantial amount of value, the investment had some risk?
7   A   Always.
8   Q   And that is part of investing.  You make a
9   determination what the risk is and what risk you are
10  willing to assume?
11  A   That's correct.
12  Q   Do you remember ever being told there was a
13  possibility of a larger investor coming into the project
14  sometime after you and Mr. Constantine invested?
15  A   I don't recall.
16  Q   Well, at the time that you were speaking to
17  Mr. Constantine about this, Mr. Grdina, were you aware
18  that he was working towards finding funding for all the
19  Hawaiian projects?
20  A   No.
21  Q   Never had a discussion with Mr. Constantine or anyone
22  else about Mr. Constantine trying to find funding for the
23  Hawaiian project?
24  A   I don't recall.
25  Q   Was there any discussion about your loan possibly

Grdina - Cross/LaRusso

2443

1   being a short-term loan as opposed to the five-year period
2   that you discussed?
3   A   I was only made aware of that after I was informed
4   that Lehman Brothers were purchasing or funding the
5   project.
6   Q   Approximately when do you remember being advised that
7   the Lehman Brothers were going to fund the project?
8   A   Shortly before the close in August of 2006.
9   Q   How about how long?  A couple months before?
10  A   I don't recall.
11  Q   Okay.
12      Let me ask you, if you could, if the prepayment
13  penalty was not included in the deal, how much would you
14  have made?
15  A   I do not know.  Mr. Constantine had negotiated the
16  final settlement which included many variables.
17  Q   But in terms of the contract that you entered into
18  back in October of 2005, if there was no prepayment
19  penalty, what was your anticipated profit?
20  A   I do not know.
21  Q   It was a five-year deal at 15 percent; is that
22  correct?
23  A   That's correct.
24  Q   You mentioned in the context of the Lehman deal, that
25  they paid for a management agreement.  What is this

Grdina - Cross/LaRusso

2444

1  management agreement?

2  A   It was a management agreement that Mr. Constantine

3  had drafted or created on behalf of Urban Expansion.

4        When we lent the money on the property, there

5  was basically a master agreement, a security agreement and

6  there was a management agreement along with a promissory

7  note.

8  Q   What do you understand the management agreement to

9  have been?

10  A   The it gave Urban Expansion some control over the

11  development of the property.

12  Q   In what way?

13  A   Sales, development, right of ways, any improvement to

14  the property.

15  Q   Were you and Mr. Constantine to be any part of the

16  management agreement?

17  A   Yes, we were.

18  Q   And were you to be paid in regards to your services

19  under that management agreement?

20  A   Yes, based on the sales of the property, over a

21  period of time.

22  Q   How much do you recall the management agreement would

23  have required people to pay?

24  A   There were I think three tranches, if I remember

25  correctly.  I don't remember the amount.

Grdina - Cross/LaRusso

2445

1  Q   Substantial amounts?

2  A   A million and a half dollars per tranche.

3  Q   You had no problem with that?

4  A   No.

5  Q   You discussed it with Mr. Constantine and agreed you

6  would go along with the management deal as you did with

7  the prepayment penalty?

8  A   Yes.

9  Q   You had no objection to either that or the prepayment

10  penalty, correct?

11  A   That's correct.

12  Q   By the way, just so that we complete the picture, in

13  regards to the Lehman closing or Lehman deal, part of that

14  required you and Mr. Constantine to waive this management

15  agreement; is that correct?

16  A   That's correct.

17        THE COURT:  Mr. LaRusso, it's 1 o'clock.  Are

18  you almost done or do you want me to break for lunch.

19        MR. LARUSSO:  I probably have 20 minutes or so.

20        THE COURT:  We'll break for lunch.  We'll

21  reconvene at 2 o'clock.

22        Don't discuss the case.  Have a good lunch.

23        (Whereupon, at this time the jury exits the

24  courtroom.)

25        (Continued.)

2446

1        A F T E R N O O N   S E S S I O N

2

3        THE CLERK:  All rise.

4        THE COURT:  Please be seated.

5        Before we bring the witness in, Mr. LaRusso, I

6  want you to discuss with Mr. Constantine that when the

7  witness indicated he was not shown any documentation by

8  Mr. Constantine at the meeting, Mr. Constantine gave a

9  very visible reaction to that, and I thought he mouthed

10  the word liar, and I just want you to discuss with him and

11  Mr. Kenner and Mr. Haley, since we had that discussion a

12  couple of weeks ago, about any animation in response to

13  the testimony, if you haven't done that already.

14        MR. LARUSSO:  I will, your Honor.

15        MR. CONSTANTINE:  I apologize, your Honor.  It's

16  very hard to listen to sometimes.

17        THE COURT:  I understand there's a lot of

18  emotions that go with any trial, but you have to control

19  them, all right?

20        MR. CONSTANTINE:  Will do.

21        THE COURT:  Let's bring in the jury.

22        (The witness resumes the stand.)

23        MS. KOMATIREDDY:  Your Honor, I just want to

24  note one thing with respect to the next witness,

25  Mr. Melley.

2447

1        THE COURT:  Before I forget, my deputy told me

2  that juror number 12 advised her that he switched his

3  plans.  I guess he wants to stay on the jury.  So we will

4  only lose juror number 3.

5        MS. KOMATIREDDY:  I just want to note for the

6  record with respect to Mr. Melley, the next witness, we

7  have one exhibit that we intend to introduce, 2802, which

8  is a broker report of sorts.  It's a business record of

9  FINRA.

10        And I'm advised by Mr. Melley that he's

11  testified to it as being a business record in multiple

12  cases.  Out of an abundance of caution we redacted --

13  there were a couple of portions in there that talk about

14  the employment history, reasons for termination, and to

15  steer clear of any possible proffer issue or 404(b), we

16  redacted every time it says reason for termination in the

17  exam history and it notes Mr. Kenner passed certain exams

18  and failed others, we also redacted the failed exams and I

19  provided that to Mr. Haley.

20        MR. HALEY:  She has, Judge, and I was greatly

21  appreciative.

22        THE COURT:  Good.  Let's bring in the jury.

23        (The jury is present.)

24        THE COURT:  Please be seated.

25        MR. LARUSSO:  May I proceed, your Honor?

Grdina - Cross/Larusso

2448

1    THE COURT:  Yes.
2  BY MR. LARUSSO:
3    Q.   Good afternoon.
4    A.   **Good afternoon.**
5    Q.   Do you know a man by the name of Mr. Hope?
6    A.   **Hope?**
7    Q.   Hope?
8    A.   **First name?**
9    Q.   Jason Hope?
10   A.   **Yes.**
11   Q.   Can you tell us who he is?
12   A.   **He's a local businessman in Scottsdale, Arizona.**
13   Q.   Did Mr. Constantine introduce you to Mr. Jason Hope?
14   A.   **Yes, he did.**
15   Q.   Did Mr. Constantine introduce you to Mr. Hope for the
16  purposes of him investing in your web site?
17   A.   **I don't recall the purpose.**
18   Q.   Do you recall meeting with him, Mr. Hope?
19   A.   **Yes, I did.**
20   Q.   Do you recall the nature of your discussion with
21  Mr. Hope?
22   A.   **Yes.**
23   Q.   Was that in regards to investing in your web site?
24   A.   **That's part of the conversation, yes.**
25   Q.   Did Mr. Hope, at any point in time, agree to invest

Grdina - Cross/Larusso

2449

1  $250,000 with you as a result of Mr. Constantine's
2  introduction?
3    A.   **No.**
4    Q.   Did he offer to invest any amount of money with you?
5    A.   **He had lent a company of mine $150,000.**
6    Q.   I'm sorry?
7    A.   **He lent a company of mine $150,000.**
8    Q.   What company was that?
9    A.   **It's called I-Network Group.**
10   Q.   So he helped or invested in your company and got an
11  interest as a result of that?
12   A.   **It was a loan.**
13   Q.   Do you recall ever communicating with Mr. Constantine
14  by way of e-mails or text messages seeking money urgently
15  for investment purposes?
16   A.   **I don't recall.**
17   Q.   I'm going to ask you to take a look for
18  identification as C-137, and I'm not going to identify the
19  document.  I just want you to take a look at it if you
20  would and after you look at these the question is going to
21  be does it refresh your recollection in regards to my
22  question.
23        MR. MISKIEWICZ:  May I approach and get a copy?
24        MR. LARUSSO:  Didn't I give that to you?
25        MR. MISKIEWICZ:  No.

Grdina - Cross/Larusso

2450

1        MR. LARUSSO:  I'm sorry.
2        (Pause in proceedings.)
3    A.   **Okay.**
4    Q.   Having looked at those, does it refresh your
5  recollection as to whether or not in and around April of
6  2013, you and Mr. Constantine discussed further
7  investments?
8    A.   **This was the subject that we had spoke about earlier,**
9  **where he was introducing me to Mr. Grandinelli locally to**
10  **provide possible funding for Choice Mobile Credit.**
11   Q.   I'm sorry, possible funding for?
12   A.   **Choice Mobile Credit.**
13   Q.   So Mr. Constantine was conversing with you via text
14  messaging, would that be fair, regarding trying to find
15  somebody to assist you in funding for your company?
16   A.   **Yes.**
17   Q.   And this was at or around April of 2013; is that
18  correct?
19   A.   **I do not -- yes, correct.**
20   Q.   That would have been approximately how long after you
21  were meeting with him when you confronted him about the
22  1.5 million?
23   A.   **Two or three months.**
24   Q.   So after your confrontation with Mr. Constantine, you
25  still continued the relationship with him where he was

Grdina - Cross/Larusso

2451

1  introducing you to people for possibly investing in your
2  companies; is that right?
3    A.   **Yes.**
4    Q.   I believe you testified that when you confronted
5  Mr. Constantine about the 1.5 million, your testimony was
6  you were no longer good friends; is that correct?
7    A.   **No.**
8    Q.   Well, at the time you confronted him, you still
9  remained good friends?
10   A.   **No.**
11        **I think I quantified that in another**
12  **conversation when we were speaking about the matter with**
13  **my character witness.**
14   Q.   I'm sorry?
15   A.   **My character witness in this case where I said I had**
16  **a conflict with him being a good friend and then I had an**
17  **individual that betrayed me.**
18   Q.   When did that occur?
19   A.   **Later in 2004.**
20   Q.   So after you had confronted Mr. Constantine regarding
21  the 1.5, you remained good friends?
22   A.   **Yes.**
23   Q.   And, in fact, not only did you continue discussing
24  with him possible investments in your company, you also
25  were exchanging social information regarding yourself and

Grdina - Cross/Larusso

2452

1   your family; is that correct?
2   A.   That's correct.
3   Q.   As a matter of fact, at or about the same time, in
4   April 2013, the two of you were discussing the pregnancies
5   of your wives; is that right?
6   A.   Correct.
7   Q.   And you were actually congratulating him and he,
8   likewise, was congratulating you?
9   A.   Yes.
10  Q.   So at least around April of 2013, you remained good
11  friends; is that right?
12  A.   Correct.
13  Q.   I'll just finish up and not repeat the testimony, but
14  there came a time when you were agreeing to testify on his
15  behalf after he was arrested for a crime after this series
16  of conversations that we're talking about after that time
17  period; is that right?
18  A.   That's right.
19        MR. MISKIEWICZ:  Asked and answered.
20        THE COURT:  Overruled.
21  A.   Correct.
22  Q.   Do you remember approximately when you had agreed to
23  become a character witness for him?
24        MR. MISKIEWICZ:  Asked and answered.
25        MR. LARUSSO:  Just the time frame, if you

Grdina - Cross/Larusso

2453

1   remember.
2   A.   It was perhaps October 2013.
3   Q.   2000 and?
4   A.   '13.  I'm sorry.
5   Q.   What was your understanding of who was the sole
6   principal behind the Hawaiian entity that you and
7   Mr. Constantine were invested in?
8   A.   It was my understanding that Mr. Phil Kenner was.
9   Q.   Was it your understanding that not only was he the
10  sole principal, but he was the person who owned the land
11  in the name of Kau Holding Company?
12  A.   It's my understanding that he was the principal of
13  Kau Holding Company.
14  Q.   Let me show you what has been marked for
15  identification as C-158.  Would you examine that, please.
16        (Pause in proceedings.)
17        Do you recognize that in part being an e-mail
18  from Mr. Constantine to you?
19  A.   It was from Mr. Constantine to Phil Kenner.  I was
20  copied on it as well as the attorney.
21  Q.   Whose attorney?
22  A.   Mr. Constantine's.
23  Q.   Do you recognize that as an e-mail communication
24  between you and Mr. Constantine in regards to the question
25  that I asked; that is, the owner of the Hawaiian property?

Grdina - Cross/Larusso

2454

1   A.   I don't recall this e-mail, if that's your question.
2   Q.   Well, take a look at the document.
3        Does it refresh your recollection that around
4   this period of time, which would have been October 2005,
5   that it was your understanding that Mr. Kenner was the
6   owner of the property that was the subject of Kau
7   Holdings?
8   A.   Yes.
9        MR. LARUSSO:  Just one more area, your Honor, if
10  I could.  We're just looking for a document and we found
11  it.
12  BY MR. LARUSSO:
13  Q.   You mentioned that the reason Mr. Constantine
14  conveyed his equity interest in Set Jet was because
15  Mr. Constantine told you he never conveyed your interest
16  in Avalon to you; do you remember that?
17  A.   That was the offer he made, correct.
18  Q.   Well, the actual operating agreement for Avalon CMG,
19  when was that executed, do you remember?
20  A.   I think it was March of 2006, March 10th.
21  Q.   I believe it was marked for identification.  In fact,
22  I think it's in evidence as 3807.  This is a copy of that
23  operating agreement for Avalon?
24  A.   Yes.
25  Q.   And I believe you were asked questions earlier today

Grdina - Cross/Larusso

2455

1   that you had executed and signed this document; is that
2   correct, referring to page 27?
3   A.   Yes.
4   Q.   And that attached to this agreement, the operating
5   agreement, is the percentage interest that you had in
6   Avalon, correct?
7   A.   Yes.
8   Q.   You had a percentage invest of 25 percent back when
9   the document was executed, correct?
10  A.   Correct.
11  Q.   So when Mr. Constantine is conveying to you his
12  interest in Set Jet, he had already conveyed or you had
13  already an interest in Avalon prior to this?
14        MR. MISKIEWICZ:  Objection.
15        THE COURT:  Do you understand the question?
16  BY MR. LARUSSO:
17  Q.   Do you understand the question?
18  A.   No.
19  Q.   Well, you talked to Mr. Constantine regarding his
20  equity interest in Set Jet sometime in 2012-2013; is that
21  correct?
22  A.   No.
23        I talked to Mr. Constantine and he actually
24  spoke to me and offered me an interest in Set Jet.
25  Q.   That was around 2012-2013?

Grdina - Cross/Larusso

2456

1  A.  Correct.
2  Q.  I showed you that exhibit, it was marked for
3  identification, that refreshed your recollection it was
4  around that period of time, correct?
5  A.  Yes.
6  Q.  When you executed the document for the operating
7  agreement for Avalon, that was back in 2006?
8  A.  2007.
9  Q.  2007, approximately five years earlier.
10      And in that document you had an interest of 25
11 percent in Avalon, correct?
12 A.  Based on the document, correct.
13 Q.  It was documented.  That's the point.  It was
14 documented back in 2007?
15 A.  Yes.
16 Q.  So you had been conveyed an interest before you're
17 talking with Mr. Constantine about Set Jet?
18 A.  No.
19      Mr. Constantine represented to me that my
20 interest was never invested, therefore he offered me an
21 interest in Set Jet.
22 Q.  When you say never invested, you had an operating
23 agreement; is that correct?
24 A.  That is correct.
25 Q.  Which discloses your interest, correct?

Grdina - Cross/Larusso

2457

1  A.  Yes.
2  Q.  At the time you received it, you realized and
3  accepted the fact that that document is your interest in
4  the company?
5  A.  At the time, correct.
6  Q.  I guess the question would be that -- withdrawn.
7      Mr. Grdina, do you recall that after your
8  interest in Avalon, you later accepted Mr. Constantine's
9  personal guarantee for 1.28 million when the real estate
10 market crashed; do you remember discussing that with him?
11 A.  No, I don't recall.
12 Q.  Do you recall Mr. Constantine ever discussing with
13 you trying to make good your investments?
14 A.  Yes.
15      That's when he offered a position or equity
16 interest in the Set Jet.
17 Q.  He didn't have to do that, did he?  He was not
18 obligated to do that?
19      MR. MISKIEWICZ:  Objection, asked and answered.
20      THE COURT:  Sustained.
21 BY MR. LARUSSO:
22 Q.  By the way, you testified that you weren't sure that
23 you were actually listed as a creditor because you
24 received documents from the bankruptcy court you assumed
25 that you were; is that correct?

Grdina - Cross/Larusso

2458

1  A.  Yes.
2  Q.  Do you remember, do you have any recollection of how
3  much money you were listed as a creditor for?
4  A.  I do not.
5  Q.  I'm going to show you what's been marked for
6  identification as 160.
7      MR. LARUSSO:  Just a moment, Judge.  I didn't
8  have an extra copy, only the one.
9  BY MR. LARUSSO:
10 Q.  Let me show you what's held together by a clip marked
11 for identification as C-160, and I'll let you look at all
12 of it, but I'm going to direct your attention particularly
13 to two pages.  This is page 4 of 11 and this is actually
14 page 10 of 11.  If you need to look at any others, feel
15 free, and the question is going to be, Mr. Grdina, does
16 that refresh your recollection as to the fact you were
17 listed as a creditor on Mr. Constantine's bankruptcy?
18 A.  I have not seen this document before, but it does
19 state that I was listed as a creditor for 1.375 million.
20 Q.  So we understand it, because you did drop your
21 voice --
22 A.  I am sorry.
23 Q.  Looking at the document now you remember that you and
24 your company were listed as a creditor for over $1.3
25 million?

Grdina - Cross/Larusso

2459

1  A.  I didn't recall the amount, I recall we were listed.
2  Q.  Personally or --
3  A.  It's listed by the company, Intrigue Investments.
4  Q.  And is your address listed as well in that document?
5  A.  Yes, it is.
6  Q.  What is the address?
7  A.  428 East Thunderbird Road, Phoenix, Arizona, 85020.
8  Q.  In regards to the money you were owed, I believe you
9  testified it was 1.28 million, do you recall that?
10 A.  Owed for what?
11 Q.  For the monies that you were claiming to be a
12 creditor, that the 1.375 includes interest, do you have a
13 recollection of that?
14 A.  No.
15      The amount that I invested in Avalon CMG was
16 $1,380,5000.
17 Q.  That document refreshes your recollection it's just a
18 little short of the monies that you claim?
19 A.  No.
20 Q.  How much is listed?
21 A.  1,375,000.
22 Q.  By the way, did you, yourself, list yourself as a
23 creditor?
24 A.  I don't recall.
25 Q.  Do you know if somebody else listed you as a

Grdina - Cross/Larusso

2460

1 creditor?

2 A.   I don't recall.

3 Q.   Do you see any other creditors or do you recall any

4 other creditors on the bankruptcy list that invested in

5 Avalon?

6 A.   I do not.

7 Q.   By the way, I think you testified that you have no

8 recollection of filing a ballot with regards to the

9 bankruptcy proceeding; is that correct?

10 A.   I don't recall, yes.

11 Q.   In regards to the monies that you realized from the

12 Lehman loan, do you recall filing taxes in regards to

13 those monies?

14 A.   Yes.

15 Q.   Do you recall having a conversation with your

16 accountant and discussing the difference in the level of

17 taxes you would pay if the transaction was treated one way

18 or the other?

19 A.   I don't recall.

20 Q.   You know the difference between ordinary income and

21 capital gains; is that correct?

22 A.   Correct.

23 Q.   And treated in one way or another would have a

24 substantial difference in how much taxes you actually

25 paid?

Grdina - Cross/Larusso

2461

1 A.   It all depends on the rest of the write-offs you have

2 and what the other income sources are in the return.

3 Q.   Do you remember ever speaking to Mr. Constantine

4 about how you would treat the monies that were realized

5 from the Lehman loan?

6 A.   I don't recall.

7 Q.   You don't recall the conversation or you don't recall

8 ever speaking to him?

9 A.   I don't recall speaking to him about it.

10 Q.   How did you treat, if you remember, the monies that

11 you realized from the Lehman loan in 2006?

12 A.   I do not know.

13 Q.   You have no recollection in talking to your

14 accountant whether you were treating it as a capital gain

15 or as income?

16 A.   No.

17        I provided him the information on the income and

18 I'm assuming he did what was correct.

19 Q.   Does it refresh your recollection, Mr. Grdina, that

20 in fact you treated it as ordinary income because

21 Mr. Constantine was staggering his payments on the 1.5

22 million after the tax year that you received the money?

23 A.   I have no idea what you're talking about.

24 Q.   You have no recollection of such a conversation; is

25 that correct?

Grdina - Cross/Larusso

2462

1 A.   No.

2        We were supposed to fund the company at its

3 inception.

4        MR. LARUSSO:  No further questions, your Honor.

5        THE COURT:  Redirect.

6        MR. MISKIEWICZ:  Your Honor, at this time, the

7 government moves for the admission of Government's

8 Exhibits 8013-C, 8011-C, 8012-C pursuant to Federal Rules

9 of Evidence 902.  One, these are bankruptcy court filings

10 and they were certified by the clerk of the court and

11 they're available for the court's inspection.  They have

12 also been shown --

13        MR. LARUSSO:  They were shown. I did look at

14 them.  I just want to make sure I looked at them

15 thoroughly.

16        THE COURT:  Yes.

17        MR. LARUSSO:  The government did make them

18 available and I apologize.

19        (Pause in proceedings.)

20        MR. LARUSSO:  Judge, no objection.

21        MR. HALEY:  Your Honor, whenever the government

22 cites the Federal Rules of Evidence I have no objection.

23        THE COURT:  Those documents are admitted.

24        (Government Exhibits 8013-C, 8011-C and 8012-C

25 in evidence.)

Grdina - Redirect/Miskiewicz

2463

1 REDIRECT EXAMINATION

2 BY MR. MISKIEWICZ:

3 Q.   I'm going to show you, Mr. Grdina, actually, this is

4 now marked as Government's 8011-C.  I believe it's

5 identical to Constantine 160.  You were shown this page of

6 the bankruptcy court filing just a moment ago by Mr.

7 Larusso, correct?

8 A.   Yes.

9 Q.   And this is where the list of creditors are or at

10 least the 20 largest unsecured creditors are, correct?

11 A.   That's correct.

12 Q.   And your company, Intrigue Investments, was listed as

13 one of those for 1.375 million, correct?

14 A.   Correct.

15 Q.   You testified on cross-examination that that's

16 slightly less than what you believe to have been owed as a

17 result of your contributions to Avalon?

18 A.   Slightly more.

19 Q.   This is slightly more.  Okay.

20        Now, there's a column here that says nature of

21 claims; trade, debt, bank loan, government contract, et

22 cetera.

23        You made an investment in Avalon, correct?

24 A.   That's correct.

25 Q.   What does this mean, do you have any idea what this

Grdina - Redirect/Miskiewicz

2464

1  means, contract?  You had some sort of contract with
2  Intrigue -- with Avalon?
3  **A.   I did not.**
4  Q.   And, by the way, were you shown this because this was
5  part of Mr. Constantine's personal bankruptcy, right?
6  **A.   Yes.**
7  Q.   It's not even Avalon.  Avalon went belly up several
8  years earlier, correct?
9  **A.   Yes.**
10 Q.   This petition is filed, 8013-C, this was filed in
11 April of 2012, correct, or that's what it says on the
12 exhibit?
13 **A.   Correct.**
14 Q.   For the record.
15       And you were asked a series of questions by
16 Mr. Larusso about in or about 2012 or 2013,
17 Mr. Constantine was offering you his equity in something
18 called Set Jet.
19       Do you remember those series of questions a
20 little while ago?
21 **A.   Yes, I do.**
22 Q.   Further along in 8011-C, I would like you to -- I'm
23 sorry, 8012-C, and I'm focusing you on page 2 of 6 where
24 this is a schedule of personal property owned by
25 Mr. Constantine in connection with this bankruptcy, and do

Grdina - Redirect/Miskiewicz

2465

1  you see the middle of the page?  For the record, where it
2  says SJ Holdings, can you read what it says there?
3  **A.   Entity recently formed.  The debtor has an**
4  **undetermined ownership interest.  This entity currently**
5  **has no assets and was set up to own an interest in a new**
6  **startup named Set Jet, LLC.**
7  Q.   What is Mr. Constantine saying to the bankruptcy
8  court in Arizona about the value of his company which he
9  is saying, oh, I'm going to give you an equity interest
10 in?
11 **A.   It's worth zero.**
12 Q.   And again, for the record, this is part of the same
13 bankruptcy petition filed in 2012, 8013-C, is that what
14 the record reveals?
15 **A.   Correct.**
16 Q.   Did he tell you in or about this time, 2012-2013,
17 I'll give you an equity position in a company that's
18 worthless?
19 **A.   He did not state that.**
20 Q.   Also, before the lunch break, you were asked by
21 Mr. LaRusso a series of questions about capital
22 contributions to Urban Expansion.  And, in fact, you were
23 asked just a moments ago about staggered capital
24 contributions.
25       Were there any staggered, under the terms of

Grdina - Redirect/Miskiewicz

2466

1  your operating agreement, meaning you and
2  Mr. Constantine's operating agreement, was any of his 1.5
3  million supposed to be staggered over a period of time
4  both before and after the signing of that agreement?
5  **A.   No.**
6  **        He had a 10-day window to fund the company with**
7  **the $1.5 million.**
8  Q.   And you were also shown a series of exhibits before
9  the lunch break reflecting -- well, they were bank records
10 Mr. LaRusso showed you of transfers to guide dog, and do
11 you remember those exhibits?
12 **A.   Yes, I do.**
13       MR. MISKIEWICZ: Mr. LaRusso, do you have any of
14 those exhibits?
15       MR. LARUSSO:  Yes, I do.
16 BY MR. MISKIEWICZ:
17 Q.   Mr. Grdina, when Lehman came in and Urban Expansion
18 was paid back for the loan, was there a settlement
19 agreement, something that governed the nature of how the
20 money could be spent and who could be involved?
21 **A.   Yes, there was.**
22 Q.   I'm going to show you what's been marked for
23 identification as 3824.
24       Do you recognize 3824?
25 **A.   Yes.**

Grdina - Redirect/Miskiewicz

2467

1  Q.   What do you recognize it to be?
2  **A.   The settlement agreement between Urban Expansion and**
3  **Kau Holding Company for the settlement of the acquisition**
4  **of the Waikapuna property.**
5  Q.   Had you seen this at or about the time that you were
6  ultimately -- Urban Expansion was ultimately paid back for
7  its loan?
8  **A.   Yes.**
9  Q.   Plus the two million prepayment penalty?
10 **A.   Correct.**
11 Q.   In fact, does your name appear at page 9 of that
12 settlement agreement, that's one of the parties here on
13 behalf of Urban Expansion?
14 **A.   Yes, it does.**
15 Q.   This is a true and accurate -- to the best of your
16 ability, a true and accurate copy of the settlement
17 agreement?
18 **A.   Yes, it is.**
19       MR. MISKIEWICZ:  The government moves for the
20 admission of 3824.
21       MR. HALEY:  Your Honor, may we approach?
22       THE COURT:  Yes.
23       (Continued on next page.)
24
25

Grdina - Redirect/Miskiewicz

2468

1          (The following takes place at sidebar.)
2          MR. HALEY:  Your Honor, my objection really goes
3    to standardized.  This strikes me as going far beyond the
4    scope of direct examination and I envision that it will
5    not result in extensive recross by perhaps both of us,
6    Mr. LaRusso and myself.  That's only my observation.  I'm
7    surprised that as to materiality he didn't go into it on
8    direct examination.  It seems --
9          THE COURT:  It's not like he's responding to
10   suggestions regarding these payments in the bank records.
11   What does it relate to?
12         MR. MISKIEWICZ:  The bank records show personal
13   payment from CMG to Mr. Kenner or Kenner's guide dog
14   company.
15         One of the provisions of the settlement
16   agreement is that Mr. Kenner would not be directly or
17   indirectly remunerated or refunded as a result of Lehman's
18   payment.
19         This is part of contract that governs the
20   entire -- what would have been the entire Hawaiian
21   project.
22         This rebuts any claim that those bank records
23   could have represented pre-payments or post-payments
24   towards his $1.5 million contribution to Urban Expansion,
25   whatever they had to do, and we will have some testimony I

Grdina - Redirect/Miskiewicz

2469

1    think later about where the money came from, it didn't
2    have anything to do with Urban Expansion.
3          MR. HALEY:  If I may, I understand the argument
4    being made by the government and we're prepared to answer
5    that argument in due course.
6          My only objection would be I suspect this
7    document will come in at some point.  I'm not here to
8    raise it as a technical issue, but if the government now
9    is going to introduce this document and, again, as the
10   government sometimes does to make arguments off of what
11   the document says, doesn't it say this, doesn't it mean
12   that, that I would object to.
13         If they're going to introduce the document into
14   evidence and save the content of the document for purposes
15   of closing statement or something of that nature as
16   relates to other evidence the government may or may not
17   adduce, that's what I would object to.
18         THE COURT:  This document, it's not as if this
19   document is unrelated to this witness.  He's part of the
20   agreement and directly in response to something
21   Mr. LaRusso covered.  I will allow him to question this
22   witness.  You're going to question him regarding that
23   provision.
24         MR. MISKIEWICZ:  The highlighted portion.
25         THE COURT:  Okay.

Grdina - Redirect/Miskiewicz

2470

1          MR. MISKIEWICZ:  The representation of
2    warranties provision.
3          MR. HALEY:  All right.  I withdraw the
4    objection.  Thank you for the side bar.
5          THE COURT:  He can have that admitted.
6    Mr. LaRusso, do you have any objection to that coming in?
7          MR. LARUSSO:  No.
8          (Continued on next page.)

Grdina - Redirect/Miskiewicz

2471

1          (The following takes place in open court.)
2          MR. HALEY:  Your Honor, thank you.  I have no
3    objection.
4          THE COURT:  3824 is admitted.
5          (Government Exhibit 3824 in evidence.)
6    BY MR. MISKIEWICZ:
7    Q.   Mr. Grdina, if you would turn to the third page of
8    3824, in the middle of that paragraph.
9          For the record, could you read the highlighted
10   text in subdivision C, small C of that?
11   A.   Yes.
12         **Neither Kenner nor any related party of Kenner**
13   **has any direct or indirect interest in Urban or any**
14   **related party thereof, and neither Kenner nor any related**
15   **party of Kenner shall receive, directly or indirectly, any**
16   **portion of the settlement payment or any other monetary or**
17   **other compensation in connection with the execution of**
18   **this agreement.**
19   Q.   Insofar as you were shown by Mr. LaRusso Constantine
20   Management Group's bank records either before or after the
21   time Urban Expansion entered into its agreement, was it
22   your understanding that Mr. Kenner had previously gotten
23   any money as a result of that?
24         MR. HALEY:  Objection.
25         THE COURT:  Sustained as to form.

Grdina - Recross/Haley

2472

BY MR. MISKIEWICZ:

1 Q.   What, if anything, did you understand Mr. Kenner had

2 by way of a financial stake in Urban Expansion, a personal

3 financial stake -- withdrawn.

4       What, if anything, did you understand Mr. Kenner

5 had by way of a personal financial interest in any of the

6 loans that Urban Expansion made?

7 A.   **It was my understanding he didn't have an interest.**

8 Q.   In effect, isn't that also when Lehman Brothers came

9 in, weren't you representing and warranteeing that to be

10 the case on behalf of Urban Expansion?

11 A.   **Yes.**

12 Q.   A warranty is like a promise, right?

13 A.   **Correct.**

14 Q.   Insofar as you knew that was true?

15 A.   **Yes.**

16       MR. MISKIEWICZ:  No further questions.

17       THE COURT:  Anything further?  Mr. LaRusso, do

18 you have anything further?

19

20 RECROSS-EXAMINATION

21 BY MR. HALEY:

22 Q.   Mr. Grdina, as relates to this document that's been

23 admitted into evidence as Government's 3824; indeed, sir,

24 it speaks for itself, the provision that was read to you,

---

Grdina - Recross/LaRusso

2473

1 and I think we agree that we can see again it's a

2 photocopy document, but we can see signatures on page 9 of

3 the document which include your signature; is that

4 correct?

5 A.   **Correct.**

6 Q.   Do you know, sir, if this particular document was

7 actually the final form of the settlement agreement that

8 was signed by all the parties and ultimately used as part

9 and parcel of the Lehman closing?

10 A.   **I do not, no.**

11       MR. HALEY:  I have no further questions, Judge.

12       THE COURT:  Mr. LaRusso?

13       MR. LARUSSO:  Yes.

14

15 CROSS-EXAMINATION

16 BY MR. LARUSSO:

17 Q.   You were shown on redirect, this is from 8011-C, the

18 voluntary bankruptcy petition, Intrigue Investments,

19 nature of claim, contract, 1.375.

20       Your investment was in Avalon GMC?

21 A.   **Correct.**

22 Q.   It was not an investment in Tommy Constantine, was

23 it?

24 A.   **No.**

25 Q.   Do you recall Mr. Constantine at any point saying,

---

Grdina - Recross/LaRusso

2474

1 okay, you roll the money to Avalon, but I'll personally

2 guarantee it?

3 A.   **I do not.**

4 Q.   Looking at this, this is his personal bankruptcy

5 proceeding, he's listing you as somebody owed money for an

6 investment in Avalon; am I correct?

7 A.   **I don't know if that is why it was listed.**

8 Q.   It's the amount, the approximate amount of your

9 investment in Avalon, LLC?

10 A.   **Yes, it is.**

11 Q.   Does this refresh your recollection that

12 Mr. Constantine is taking a voluntary basis to assume the

13 liability of an investment you made in Avalon that he

14 didn't have to do?

15       MR. MISKIEWICZ:  Objection.

16       THE COURT:  Sustained.

17 BY MR. LARUSSO:

18 Q.   8012, 8012-C, Mr. Miskiewicz talks about Set

19 Holdings, do you see that?

20 A.   **Yes.**

21       **Actually we talked about SJ Holdings.**

22 Q.   Do you know the name Set Holdings?

23 A.   **No.**

24 Q.   Have you ever heard of it before seeing that here?

25 A.   **No.**

---

Grdina - Recross/LaRusso

2475

1 Q.   Do you know what a holding company is?

2 A.   **Yes.**

3 Q.   In your own words, what is a holding company?

4 A.   **It holds one or a multiple number of interests in**

5 **other companies.**

6 Q.   Did Mr. Constantine tell you that he was giving you

7 an interest in Set Jet?

8 A.   **Yes.**

9 Q.   Or a holding company such as Set Holdings?

10 A.   **Set Jet.**

11 Q.   And Mr. Constantine is offering to convey to you 100

12 percent of his ownership interest in Set Jet, correct?

13 A.   **He never represented to me how much he would convey.**

14       **I don't know what interest he had in Set Jet.**

15 Q.   He was offering you a percentage of his equity

16 interest in Set Jet?

17       MR. MISKIEWICZ:  Objection.

18 A.   **He was offering me an interest in Set Jet.**

19 Q.   And your testimony is it wasn't his entire interest

20 in Set Jet?

21 A.   **I don't even know if it was his interest.**

22 Q.   Well, isn't it a fact that a holding company which

23 was intended to hold the interest, does not have any

24 value?

25       MR. MISKIEWICZ:  Objection.

Melley - Direct/Komatireddy

2476

1   A.   I see the amount is zero.
2   Q.   That's the holding company, correct?
3   A.   Correct.
4   Q.   It doesn't talk about Set Jet; is that correct?
5   A.   SJ Holdings does above it.
6           MR. LARUSSO:  Just one moment, your Honor.
7           (Pause in proceedings.)
8           MR. LARUSSO:  Thank you very much, Judge.
9   No further questions.
10          THE COURT:  You can step down, sir.
11   Thank you.
12          THE WITNESS:  Thank you.
13          (The witness steps down.)
14          THE COURT:  Next witness.
15          MS. KOMATIREDDY:  The government calls Peter
16   Melley.
17          THE COURT: Sir, if you could come up to the
18   witness stand and remain standing for the oath.
19
20   PETER MELLEY,
21          called as a witness, having been first
22          duly sworn, was examined and testified
23          as follows:
24
25          THE COURT:  Be seated.  Please state your name

Melley - Direct/Komatireddy

2477

1   and spell your last name for the record.
2           THE WITNESS:  Peter J. Melley, M-E-L-L-E-Y.
3           THE COURT:  As you're doing, Mr. Melley, if you
4   could stay close to the mike and keep your voice up.
5
6   DIRECT EXAMINATION
7   BY MS. KOMATIREDDY:
8   Q.   Good afternoon, Mr. Melley.
9   A.   Good afternoon.
10   Q.   Where do you work, sir?
11   A.   I work in Washington, D.C., for the Financial
12   Industry Regulatory Authority, commonly referred to as
13   FINRA.
14   Q.   And how long have you worked there?
15   A.   Approximately 18-and-a-half years.
16   Q.   Are you familiar with FINRA's records?
17   A.   I am.
18   Q.   Can you generally describe to us what FINRA does,
19   what does it do?
20   A.   Sure.
21          FINRA is a self-regulatory organization of the
22   securities history.  Its role is to govern the conduct of
23   its members who are brokerage firms and the registered
24   individuals who work at the firms.
25          It does this by creating rules that its members

Melley - Direct/Komatireddy

2478

1   need to adhere to and failure to do so can result in
2   disciplinary action.
3           FINRA also regulates trading on various trading
4   markets, public markets like the NASDAQ or over the
5   counter securities markets.
6           And FINRA is also responsible for licensing and
7   administering a number of licensing exams which allow
8   individuals to buy and sell shares of stock on behalf of
9   their clients and customers.
10   Q.   I'm going to focus to your testimony today on the
11   licensing aspect, okay?
12   A.   Okay.
13   Q.   I'm going to hand you two exhibits they have been
14   marked 2802 and 2802-R.
15          Take a look at them.
16          Do you recognize 2802?
17   A.   I do.
18   Q.   What is it?
19   A.   This is what we call a CRD report for a particular
20   individual, in this case Phillip Andrew Kenner.
21   Q.   Where did the information in this report come from?
22   A.   The information originates with either the individual
23   when they enter the securities industry or the firm that
24   they working for.
25          They're responsible and obligated under FINRA as

Melley - Direct/Komatireddy

2479

1   well as SEC rules to provide information in their
2   background, whether it be employment or education or the
3   licenses they hold.  They submit that electronically to
4   FINRA.
5           FINRA maintains the information in a database
6   referred to as CRD or Central Registration Depository.
7   Q.   So when you say FINRA maintains that information in
8   its database, are the entries in the database created at
9   or near the time the information comes in?
10   A.   They are.
11   Q.   Are they created in the ordinary course of FINRA's
12   business?
13   A.   Yes.
14   Q.   Are they kept in the ordinary course of FINRA's
15   business?
16   A.   They are.
17   Q.   Looking at 2802-R, is that a true and accurate
18   portion of 2802?
19   A.   Yes, it is.
20          MS. KOMATIREDDY:  The government moves 2802-R
21   into evidence.
22          MR. HALEY:  No objection.
23          MR. LARUSSO:  No objection, your Honor.
24          THE COURT:  2802-R is admitted.
25          (Government Exhibit 2802-R in evidence.)

1  BY MS. KOMATIREDDY:

2  Q.  Publishing it for the jury, taking a look at this,

3  sir, you said this is a CRD report.

4       What does CRD stand for?

5  A.  Central Registration Depository.  It's an online

6  registration database maintained by FINRA.

7  Q.  Who is this report for?

8  A.  In this case it is for Phillip Andrew Kenner.

9  There's a unique identifying number, 2511631, and every

10  individual registered in the industry has their own

11  number.

12  Q.  Can you just explain for us, at the bottom of the

13  first page, registrations, can you explain the type of

14  information that's contained in that table at the bottom?

15  A.  Sure.

16       For each firm in this case that Mr. Kenner

17  worked for, here it is from July 2003 through November

18  2004 for View Trade Financial.

19       And basically this is information for each state

20  that he was approved to handle customers or transacted

21  business in, as well as FINRA which you can see under the

22  regulator slide on the left side each state is indicated

23  or there could be FINRA registration capacity is just GS

24  for FINRA, meaning general securities rep, that's what

25  he's listed as.  That's your basic stockbroker official

1  term.  For each state it's listed as AG, meaning agent.

2       Moving from left to right, it just indicates the

3  dates while he was working for View Trade that he was

4  licensed to engage in securities work in those individual

5  states for FINRA.

6  Q.  What's in registration status?

7  A.  Registration status is just to indicate, whether it's

8  termed, that's to indicate the final date.  So, in this

9  instance, you're actually reading it from right to left.

10       So for the first, for that one for FINRA, he

11  began on July 30, 2003, and as of November 5, 2004, his

12  approval ended with FINRA.  That's the last entry while he

13  was registered in the industry.

14  Q.  These registration designations, is this for everyone

15  of Mr. Kenner's employers?

16  A.  Correct.

17  Q.  So going to page 2, we see here an employer as

18  Assante Capital Management, do you see that?

19  A.  Yes.

20  Q.  And below that are the registrations he had while he

21  was with Assante Capital Management?

22  A.  Exactly.

23  Q.  Turning to the next page, he's then with State Street

24  Research Investment Services?

25  A.  Yes, from 1987 through 2000.

1  Q.  And then while he's at State Street, these are

2  registration that he holds?

3  A.  Correct.

4       This is due in part to the license that he

5  holds, which is a state exam license which allows him to

6  transact business in those following states.

7  Q.  We will get to that in just a minute.

8       Going to the next section, employment history,

9  can you explain the contents of this section?

10  A.  Yes.

11       This section is similar to the one we just

12  reviewed.

13       In this case, the employment history includes

14  information that Mr. Kenner himself put in.

15       For each individual there's an employment

16  history which relies on the information that they are

17  actually putting down on their form which is called a U4.

18       It includes dates of employment and location or

19  address, as well as a position.  So it's similar to what's

20  in the registration area of the report, but not word for

21  word the same thing.

22  Q.  And just looking at some of the firms; View Trade,

23  The Leaders Group, Assante Global Advisors, are you

24  familiar with those firms?

25  A.  Yes.

1       Those are firms that are registered with FINRA

2  at one point or another.

3  Q.  State Street as well as Freedom Capital?

4  A.  Yes.

5  Q.  What kind of firms are they?

6  A.  The firms are either broker/dealers, meaning they're

7  allowed to buy and sell shares of stock in the market for

8  either their own account or their customers, or they could

9  be investment advisors, meaning that they're able to

10  provide investment advice for or handle client accounts

11  while working with a number of dealers who transact in

12  those investments.

13  Q.  Now, you mentioned that the information in this

14  section is partly provided by the actual individual, in

15  this case Mr. Kenner, correct?

16  A.  Correct.

17  Q.  So just looking at the employment history as it

18  continues back into the early '90s, where would this

19  information about college be coming from?

20  A.  So whenever an individual enters into the securities

21  industry, they have to file an original form U4 and have

22  to provide their education and employment prior to joining

23  the industry.

24       So it includes where they work, what their

25  position was.  In this case, Mr. Kenner included his time

Melley - Direct/Komatireddy

2484

1  while he was a student at Rensselaer Polytechnic Institute
2  and so forth.  Every individual is required to do that.
3  Q.   There's a section that is entitled office of
4  employment history, is that locations of the employment
5  places that we just saw?
6  A.   Correct.
7          Many firms have more than one location, various
8  branch offices, and that's a way to indicate the address
9  of that particular office.
10  Q.   Then there's a section entitled exam history.
11          Can you explain to us what's in this section?
12  A.   This section covers the licenses that Mr. Kenner held
13  at one point or another during his time in the industry.
14          In this case he held three licenses, the first
15  being the S7 or what's called a series seven.  That's the
16  general securities registered exam.  That's a FINRA
17  administered exam.
18          Then there's the series 63 or S63.  That's
19  basically the state equivalent of the S7, just covers
20  state law.
21          And then by having that you're allowed to handle
22  customers in particular states across the country and then
23  finally the S65 or the series 65 is the uniformed
24  investment advisor's exam.
25  Q.   Did Mr. Kenner pass each one of these exams?

Melley - Direct/Komatireddy

2485

1  A.   Yes, he did.  He passed the series 7 and the series
2  65 in 1994, and in 2000 he passed the series 63.
3  Q.   With respect to the series 7, series 63 and series
4  65, what kind of knowledge do these exams test?
5  A.   They test knowledge of the various securities markets
6  as well as various investment vehicles; stocks, bonds,
7  options.
8          In addition, they all test in one form or
9  another how to handle clients, relationships with the
10  clients that would go toward making sure they are put in
11  suitable investments, knowing their financial objectives,
12  and also it will test prohibition against unlawful or
13  unethical business practices.
14  Q.   Focusing on the first thing you mentioned, testing of
15  investment vehicles, stocks and bonds, what kind of
16  knowledge do these exams test?
17  A.   It tested different types of investments; what a
18  stock is, what a bond is, how it's different from each
19  other, various different securities.
20          And then it may also include in one form or
21  another types of risk, how thing are valued, market
22  liquidity, and again within that how the actual different
23  markets operate, the New York Stock Exchange, as opposed
24  to the NASDAQ as opposed to other trading markets.
25  Q.   With respect to dealing with clients, what do the

Melley - Direct/Komatireddy

2486

1  exams test with respect to communication?
2  A.   Well, all of the three exams test in one degree or
3  another that clients should receive material events,
4  everything should be dealt in fair and full disclosure,
5  everything should be dealt with truthfully.
6          In terms of a series 65, that spells out in
7  greater detail because of the duty that an investment
8  advisor has, a fiduciary duty, that the clients should be
9  put first.  They should be handled with loyalty and good
10  care.
11          And with regards to communications again, it
12  should be a full disclosure of any material event that may
13  have an impact on an investor's decision whether to make
14  that investment.
15  Q.   With respect to documentation, what do these exams
16  test?
17  A.   With documentation it depends.  If they're handling
18  client accounts and client funds, they should be providing
19  account statements to the client, providing a list of
20  transactions, purchases and sales that they may have made.
21          If they're an investment advisor and they're
22  managing a portfolio, they should be providing information
23  regarding what the holdings are, value at a certain times,
24  maintaining any bank records if necessary as well.
25  Q.   With respect to compensation, do these exams test any

Melley - Direct/Komatireddy

2487

1  guidelines or standards with respect to investment
2  advisor's compensation?
3  A.   For the series 65, the investment advisor exam, the
4  compensation can be in many forms.  It could cover a fixed
5  fee, hourly fee, assets under management.
6          There's no particular numeric standard, but
7  there's a guideline in terms of what that compensation
8  could be or should be.  And if it is excessive, it should
9  be disclosed.
10  Q.   And what's the guideline?
11  A.   The guideline generally for assets under management
12  is no more than two percent.  If one is charging above
13  that, I know the SEC has mandated and has been shown in
14  these exams that that should be disclosed to the client
15  that they are going to be charged in excess of two
16  percent.
17  Q.   Finally, with respect to conflict of interest, what
18  do the exams test?
19  A.   With regards to conflicts of interest, all conflicts
20  of interest should be disclosed in any way, shape or form
21  because it goes back to the disclosure idea, all material
22  events that may have an impact on that investment decision
23  should be made, they should be made aware of all
24  information that could affect whether they're going to
25  invest money with that advisor or with that broker.

Melley - Direct/Komatireddy

2488

1   Q.   Could you give us examples of the kinds of conflict
2   of interest covered?
3   A.   Conflict of interest --
4          MR. HALEY:  Objection.
5          THE COURT:  Sustained.
6   BY MS. KOMATIREDDY:
7   Q.   What is a conflict of interest as these exams would
8   define it?
9          MR. HALEY:  I object to that as well.
10         THE COURT:  Sustained.  I think we should move
11  on.
12         MS. KOMATIREDDY:  No further questions.
13         THE COURT:  Cross-examination.
14         MR. HALEY:  I have no questions.
15         Thank you.
16         MR. LARUSSO:  No questions, Judge.
17         THE COURT:  You can step down, Mr. Melley.
18         Thank you.
19         (The witness steps down.)
20         THE COURT:  Next witness.
21         MR. MISKIEWICZ:  Timothy Gaarn.
22         THE COURT:  Mr. Gaarn, if you could come up to
23  the witness stand and remain standing for the oath.
24
25

Gaarn - Direct/Miskiewicz

2489

1   TIMOTHY GAARN,
2          called as a witness, having been first
3          duly sworn, was examined and testified
4          as follows:
5
6          THE COURT:  Be seated.  Please state your name
7   and spell your last name for the record.
8          THE WITNESS:  Timothy Gaarn, G-A-A-R-N.
9          THE COURT:  As you did there, Mr. Gaarn, stay
10  close to the mike and keep your voice up.
11
12  DIRECT EXAMINATION
13  BY MR. MISKIEWICZ:
14  Q.   Good afternoon, Mr. Gaarn.
15         Mr. Gaarn, first of all, where do you currently
16  live?
17  A.   In Closter, New Jersey.
18  Q.   How long have you lived in New Jersey?
19  A.   My whole life.
20  Q.   Do you know either of the defendants in this case,
21  Tommy Constantine or Phil Kenner?
22  A.   Yes, I do.
23  Q.   Which ones?
24  A.   Tommy Constantine and Phil Kenner.
25  Q.   Did you meet them personally?

Gaarn - Direct/Miskiewicz

2490

1   A.   I met them personally.
2   Q.   If you saw them, would you recognize them?
3   A.   Yes, I would.
4   Q.   Do you see Mr. Constantine and Mr. Kenner --
5   A.   Yes.
6   Q.   -- in the courtroom?
7   A.   Yes, I do.
8          MR. LARUSSO:  Your Honor, Mr. Constantine
9   concedes the identification.
10         MR. HALEY:  Same on behalf of Mr. Kenner.
11         THE COURT:  The identifications have been
12  conceded.
13  BY MR. MISKIEWICZ:
14  Q.   Fair to say you met Mr. Kenner first?
15  A.   Yes.
16  Q.   When did you meet Mr. Kenner, what year?
17  A.   It was the early two thousands, I don't recall the
18  exact year.
19  Q.   How did you meet him?
20  A.   I was introduced by a mutual friend.
21  Q.   At that time what business were you in?
22  A.   What was I in?
23  Q.   Yes.
24  A.   I was a consultant, made introductions, trying to
25  help people do things, grow businesses.

Gaarn - Direct/Miskiewicz

2491

1   Q.   So you worked for yourself as an independent
2   consultant?
3   A.   Yes.
4   Q.   Where did you meet Mr. Kenner?
5   A.   In New York City.
6   Q.   What, if anything, how did Mr. Kenner introduce
7   himself?  What business was he in if at all did he
8   introduce him as?
9   A.   That he was a money manager.
10  Q.   For who or what?
11  A.   Professional athletes and entertainers.
12  Q.   Did there ever come a time that you either invested
13  in your own money or tried to help Mr. Kenner in terms of
14  sharpening investments?
15  A.   One time I invested my own money, yes.
16  Q.   How much did you invest at that point?
17  A.   $75,000.
18  Q.   Are you familiar with a company by the name of
19  Eufora, LLC?
20  A.   Yes, I am.
21  Q.   First of all, who, if anyone, if you know when you
22  were familiar with the company, operated Eufora?
23  A.   Tommy Constantine.
24  Q.   And how did you meet Mr. Constantine?
25  A.   Through Phil Kenner.

Gaarn - Direct/Miskiewicz

2492

1  Q.  And approximately when was that?
2  A.  I don't recall.  In 2005-2006.
3  Q.  What, if anything, did Mr. Kenner tell you about
4  Mr. Constantine's company Eufora?
5  A.  That it was a debit card company that helped fixed
6  people's credit.
7  Q.  And what conversations if any -- withdrawn.
8       Why did he tell you that?  Was he trying to
9  solicit you to invest or some other reason?
10 A.  To help introduce people maybe to potentially invest.
11 Q.  Were you in effect looking to see if you could find
12 other investors in Eufora?
13 A.  Yes.
14 Q.  And based on whose representations or statements or
15 information did you go around looking for other people to
16 invest in Eufora?
17 A.  Phil Kenner and Tommy Constantine.
18 Q.  Were you given -- withdrawn.
19      Now, did there ever come a time that you became
20 a member of any company that owned an equity stake in
21 Eufora?
22 A.  Yes.
23 Q.  And how did you become a member or managing member of
24 a company that owned a piece of Eufora?
25 A.  Phil Kenner asked me to.

Gaarn - Direct/Miskiewicz

2493

1  Q.  Did you put money of yours to buy into this company?
2  A.  No.
3  Q.  Do you recall approximately when Mr. Kenner asked you
4  to become a managing member of Eufora?
5  A.  It was around 2008-2009.
6  Q.  You said 2008 and you trailed off.  Did you say and
7  2009?
8  A.  2009.  It was around 2008, 2009.
9  Q.  What, if anything, did Mr. Kenner tell you about the
10 reason why he wanted you to be a managing member of some
11 company that had an ownership interest in Eufora?
12 A.  I was doing him a favor.
13 Q.  Okay.
14      Now, at this stage in your life, 2008 or 9, had
15 Mr. Kenner done you favors?
16 A.  Yes, he had.
17 Q.  What kinds of favors?
18 A.  He had lent me money.
19 Q.  Is it fair to say, Mr. Gaarn, that at this point you
20 had a series of financial setbacks?
21 A.  Yes.
22 Q.  Did you file for bankruptcy?
23 A.  No.
24 Q.  Were you in danger of losing your home?
25 A.  Yes.

Gaarn - Direct/Miskiewicz

2494

1  Q.  Did you have a job?
2  A.  No.
3  Q.  You had a family, correct?
4  A.  Yes.
5  Q.  Were you increasingly in debt?
6  A.  Yes.
7  Q.  And when he asked you to do him this favor, to become
8  a managing member, what, if anything, did the favors that
9  he provided you in the past, how did that impact you in
10 terms of deciding whether or not to do the favor?
11 A.  I felt like I owed him.
12 Q.  In connection with becoming a managing member of a
13 company that owned a piece of Eufora for Mr. Kenner, did
14 you open up any bank accounts?
15 A.  Yes, I did.
16      MR. HALEY:  Your Honor, might we have the name
17 of that company?
18      MR. MISKIEWICZ:  I'm getting to it.
19      MR. HALEY:  Okay.
20      MR. MISKIEWICZ:  Thank you, Mr. Haley.
21 BY MR. MISKIEWICZ:
22 Q.  Are you familiar with a company by the name of --
23 well, I'm going to show you what's been marked for
24 identification as TG-2.
25      Do you recognize that document?

Gaarn - Voir Dire/Haley

2495

1  A.  Yes, I do.
2  Q.  How do you recognize it?
3  A.  This was a document that made me the managing member.
4  Q.  You became a managing member of what company?
5  A.  Of AZ Eufora Partners.
6  Q.  And who previously, if you knew, was the managing
7  member of AZ Eufora Partners?
8  A.  Phil Kenner.
9  Q.  Is your signature on that?
10 A.  Yes, it is.
11 Q.  You have seen that before.  Is that in fact your
12 signature?
13 A.  Yes, it is.
14      MR. MISKIEWICZ:  The government moves for the
15 admission of TG-2.
16      MR. HALEY:  Quick voir dire, Judge.
17
18 VOIR DIRE EXAMINATION
19 BY MR. HALEY:
20 Q.  Sir, we can agree this is a photocopy, correct?
21 A.  Yes.
22 Q.  But notwithstanding the fact it's a photocopy, you're
23 able to recognize what appears to be your signature; is
24 that true?
25 A.  Yes, looks like it, and I remember the document.

Gaarn - Direct/Miskiewicz

2496

1    MR. HALEY:  No objection.

2    MR. LARUSSO:  No objection your Honor.

3    THE COURT:  TG-2 is admitted.

4    (Government Exhibit TG-2 in evidence.)

5  BY MR. MISKIEWICZ:

6  Q.   So the name of the company you became a managing

7  member of was called what?

8  A.   **AZ Eufora Partners.**

9  Q.   Now, in connection with becoming the managing member

10 of AZ Eufora Partners, did you ever open up any bank

11 accounts at any banks?

12 A.   **In conjunction with this?**

13 Q.   At or about the time you became the managing member?

14 A.   **After the time I became the managing member.**

15 Q.   Where did you open up the account?

16 A.   **A local bank in Closter.**

17 Q.   What was the bank?  Do you not recall?

18 A.   **I don't recall, no.**

19 Q.   I show you what's been marked for identification as

20 government's 2300.

21       Showing you 2300, Mr. Gaarn, do you see that?

22 A.   **Do you recognize that.**

23 A.   **Yes, I do.**

24 Q.   What do you recognize it to be?

25 A.   **A Wachovia bank document.**

---

Gaarn - Voir Dire/Haley

2497

1  Q.   Does it have your signature on it?

2  A.   **Yes, it does.**

3  Q.   Did you open that up at or about the time you became

4  the managing member of AZ Eufora?

5  A.   **Yes.**

6       MR. MISKIEWICZ:  The government moves the

7  admission of 2300.

8       MR. HALEY:  Brief voir dire, Judge.

9

10 VOIR DIRE EXAMINATION

11 BY MR. HALEY:

12 Q.   Mr. Gaarn, we can agree that this document, that

13 signature portion of the bank document, doesn't contain

14 any reference to AZ Eufora; is that correct?

15 A.   **Yes, that's correct.**

16 Q.   How are you able to state, sir, as you said a moment

17 ago under oath, that this is indeed the account at

18 Wachovia that you opened with reference to conducting the

19 business of AZ Eufora as its managing member?

20 A.   **Because I remember when it happened, when that other**

21 **document got signed, Phil asked me to go to the bank and**

22 **open up an account.**

23 Q.   But is it your testimony that this specific account,

24 which bears an account number, is to the best of your

25 knowledge the account you opened for purposes of

---

Gaarn - Voir Dire/LaRusso

2498

1  conducting the business of AZ Eufora?

2  A.   **Yes.**

3       MR. HALEY:  I have no objection, Judge.

4       MR. LARUSSO:  Just one question.

5       MR. MISKIEWICZ:  Your Honor, I have to correct

6  the record.  It's apparently already in by stipulation.

7       THE COURT:  We will admit it again just to be

8  sure.

9

10 VOIR DIRE EXAMINATION

11 BY MR. LARUSSO:

12 Q.   Do you remember when this account was opened?

13 A.   **It says right there, 12/30/2008.**

14 Q.   2008.

15       And the transfer document is dated August 1st,

16 2005?

17 A.   **Correct.**

18 Q.   You opened this account almost three years after you

19 became --

20 A.   **No, that document there was dated 2005.  It was**

21 **signed in 2008.**

22       MR. LARUSSO:  I have no objection, Judge.

23       THE COURT:  So to the extent 2300 is not in

24 evidence already, it's in evidence now.

25       (Government Exhibit 2300 in evidence.)

---

Gaarn - Direct/Miskiewicz

2499

1  BY MR. MISKIEWICZ:

2  Q.   2300, for the record, if you could read it, is this

3  when you first opened the account?  Was this part of the

4  documents that you filled out when you opened the account?

5  A.   **Yes.**

6  Q.   It's something called the Customer Access Agreement

7  with Wachovia?

8  A.   **Yes.**

9  Q.   What is the date when you opened the account?

10 A.   **12/30/2008.**

11 Q.   TG-2 in evidence now is a document that is entitled

12 transfer of membership interests of Eufora, LLC, an

13 Arizona limited liability company.

14       Do you see that?

15 A.   **Yes, I do.**

16 Q.   And that's your signature, right?

17 A.   **Yes.**

18 Q.   It purports to be dated when?

19 A.   **The first day of August, 2005.**

20 Q.   Did you sign it on the first day of August, 2005?

21 A.   **No, I did not.**

22 Q.   Who filled -- who prepared that document for you to

23 sign?

24 A.   **Phil Kenner.**

25 Q.   Who put in that date the first day of August, 2005?

Gaarn - Direct/Miskiewicz

2500

1   **A.   Phil Kenner.**
2   Q.   When you signed it, were you aware that it wasn't the
3   date that you were actually signing?
4   **A.   Yes, I was.**
5   Q.   Did you have a conversation with Mr. Kenner about
6   that?
7   **A.   Yes, I did.**
8   Q.   What, if anything, did you say to him about the fact
9   that you weren't signing it on August 1, 2005?
10  **A.   That's what I said.  I said, you know, it's backdated**
11  **to August 2005.  And Phil Kenner said, don't worry about**
12  **it, it just needs to be that way, it's okay.**
13  Q.   Are you saying that you opened -- I'm sorry, you
14  signed this document at or about the time that you opened
15  your bank account?
16  **A.   Yes, I did.**
17  Q.   So, in other words, this signature appeared sometime
18  in 2008, not in 2005?
19         MR. HALEY:  Judge, asked and answered.  I
20  object.
21         THE COURT:  I'll allow this one last question.
22  You can answer that.
23  **A.   I'm sorry, could you repeat that.**
24  Q.   You signed this sometime in 2008 and not in August
25  2005?

Gaarn - Direct/Miskiewicz

2501

1   **A.   Yes, correct.**
2   Q.   And then for some months afterwards did you transact
3   business through that Wachovia account in connection with
4   your role as managing member of AZ Eufora?
5   **A.   Yes, I did.**
6   Q.   And were funds deposited into that account?
7   **A.   Yes, they were.**
8   Q.   Did funds get transferred out of that account?
9   **A.   Yes, they did.**
10  Q.   And when you received the funds, did you wire
11  transfer money out of the account?
12  **A.   Yes, I did.**
13  Q.   When you wire transferred money out of the account
14  and sent it to various beneficiaries, how did you know
15  where to send the money?
16  **A.   Phil Kenner directed me.**
17  Q.   Now, did there actually come a time that you became
18  involved in conferences or telephone conferences with
19  other members of the board of directors of Eufora?
20  **A.   Yes.**
21  Q.   And did you participate in telephone conferences with
22  Mr. Constantine in connection with the operation of
23  Eufora?
24  **A.   Yes.**
25  Q.   Did there come a time, in or about 2010, that you

Gaarn - Direct/Miskiewicz

2502

1   became involved in a lawsuit regarding Eufora?
2   **A.   Yes.**
3   Q.   What was the reason for or were you a plaintiff in
4   that or a defendant in that lawsuit?
5   **A.   I was one of the people who brought the lawsuit on.**
6   Q.   Okay.
7         So you were suing Mr. Constantine or
8   Mr. Constantine was suing you?
9   **A.   We were suing Mr. Constantine.**
10  Q.   What was the purpose of that lawsuit?
11  **A.   When I was on the board, one of the telephone**
12  **conference calls we had, Mr. Constantine had mentioned**
13  **that he wanted to remove the patent out of Eufora, sell**
14  **the patent out of Eufora, and not take the investors along**
15  **with him and I objected to that.**
16  Q.   Why?
17  **A.   Because the patent was the value of the company and**
18  **if that's removed from the company, the investors are left**
19  **with nothing.**
20  Q.   So in effect were there times that you actually did
21  function as a managing member of Eufora after you signed
22  that agreement and got Mr. Kenner's interest in as a
23  managing member of AZ Eufora?
24  **A.   I participated in conference calls, yes.**
25  Q.   Back to the Wachovia account, were you compensated in

Gaarn - Direct/Miskiewicz

2503

1   any way for your role as a managing member through that
2   Wachovia account?
3   **A.   Yes.**
4         **I paid personal bills with some of that money.**
5   Q.   Who gave you permission to do that?
6   **A.   Phil Kenner.**
7   Q.   Was that part of the agreement by which you agreed to
8   do this favor for Mr. Kenner?
9   **A.   No.**
10  Q.   How did you arrive at the agreement or practice of
11  being permitted to pay personal bills out of the Wachovia
12  account?
13  **A.   Financial times had been tough and I asked Phil if it**
14  **would be okay to pay a few bills, and he said yes.**
15  Q.   He said yes?
16  **A.   Yes.**
17  Q.   Mr. Gaarn, do you have an agreement with the
18  government that governs your testimony here today?
19  **A.   I have a nonprosecution agreement.**
20  Q.   For the members of the jury, would you explain what
21  does a nonprosecution agreement mean that you have with
22  the government?
23  **A.   It means that I've not been accused of committing any**
24  **crime.  As long as I come on to the stand and I tell the**
25  **truth, I will have no issues.  If I say something where**

Gaarn - Direct/Miskiewicz

2504

1   when I'm on the stand that I could get in trouble for at
2   the time, I could be prosecuted.
3   Q.   Were you represented by counsel when you entered into
4   this agreement?
5   A.   Yes, I was.
6   Q.   What, if anything, does the government agree in
7   return, if anything, pursuant to that agreement?
8   A.   Nothing, just as long as I tell the truth.
9   Q.   Well, is it your understanding, sir, that based on
10  your testimony here today under oath, that the government
11  has agreed not to use anything you say against you in the
12  event that you were at some point prosecuted?
13  A.   Yes.
14          If I said something up here that I could get in
15  trouble for that came out while I'm telling the truth, I
16  would not be prosecuted for that.
17  Q.   Okay.
18          But to the extent you say anything here today
19  that might incriminate you in a crime, the government has
20  agreed not to use that against you; is that fair?
21  A.   Yes.
22  Q.   And moreover, prior to the signing of your
23  nonprosecution agreement with the government, had you been
24  meeting with members of law enforcement?
25  A.   Yes, I have.

Gaarn - Direct/Miskiewicz

2505

1   Q.   Do you remember when you signed the agreement?
2   A.   Approximately March of this year.
3   Q.   Approximately what year if you recall was the first
4   meeting with members of law enforcement in connection with
5   Eufora and what your testifying about here today?
6   A.   2011-2012.
7   Q.   Did you have an agreement then?
8   A.   No.
9   Q.   Were you under any subpoena or did you come in
10  voluntarily to come and talk to the government at that
11  time, if you recall?
12  A.   I came in voluntarily.
13  Q.   Did you agree to talk to government agents at that
14  time?
15  A.   Yes, I did.
16  Q.   Did they ask you to produce documents or any other
17  evidence you might have possession of?
18  A.   Yes.  If I had anything, yes.
19  Q.   And did you?
20  A.   Yes, I did.
21  Q.   When you produced those things, did you have an
22  agreement?
23  A.   No, I did not.
24  Q.   And at some point did you agree to do things in
25  advance of an investigation?  For instance, the recording

Gaarn - Direct/Miskiewicz

2506

1   of conversations?
2   A.   Yes, I did.
3   Q.   And did you in fact record conversations with any
4   individuals?
5   A.   Yes, I did.
6   Q.   Did you do that at the request of federal agents?
7   A.   Yes, I did.
8   Q.   When you did that, did you have any agreement?
9   A.   No, I didn't.
10  Q.   Did you have a lawyer at that time?
11  A.   No, I didn't.
12          MR. MISKIEWICZ:  Your Honor, this would be a
13  good time for the afternoon break.
14          THE COURT:  Let's take the afternoon break.
15  Don't discuss the case.
16          (The jury is excused.)
17          (A recess is taken.)
18          (Continued on next page.)
19
20
21
22
23
24
25

2507

1   THE CLERK:  All rise.
2   THE COURT:  Please be seated.
3   Okay.  Let's bring in the witness and the jury.
4   (The witness resumes the stand.)
5   THE CLERK:  All rise.
6   (Whereupon the jury enters the courtroom.)
7   THE COURT:  You may be seated.
8   Go ahead, Mr. Miskiewicz.
9   MR. MISKIEWICZ:  Thank you, Your Honor.
10  CONTINUED DIRECT EXAMINATION
11  BY MR. MISKIEWICZ:
12  Q   Mr. Gaarn, I'm going to show you, and put this on the
13  screen, what was admitted into evidence pursuant to
14  stipulation as Government's Exhibit 2301.  Let's focus on part
15  of that.
16          Is that -- the first page of 2301, whose account is
17  it?
18  A   That's my account.
19  Q   Is this the account that you talked about prior to the
20  break regarding holding it up shortly -- or at or around the
21  time that you signed the transfer of membership into AZ
22  Eufora?
23  A   Yes, it was.
24  Q   For the record, would you read what the opening balance
25  was on December 3rd?

RONALD E. TOLKIN, RPR, RMR, CRR

2508

1   A   Zero.

2   Q   December 30?

3   A   Zero.

4   Q   And 2300, as we saw earlier, indicated that you opened

5   the account on December 30th, 2008.  Did you put any money

6   into the account when you opened it?

7   A   No, I didn't.

8   Q   Then there is, immediately after that, an indication of a

9   deposit of $100,000.  Do you see that?

10  A   Yes.

11  Q   Did you put that $100,000 in there?

12  A   No.

13  Q   I'm going to show you -- let's go back to the first page

14  of Exhibit 2301.  For the record, where it says "Deposit and

15  Other Credits," for the record, how much money was deposited

16  and when?

17  A   On 12/31 there was $100,000 deposited.

18  Q   Does it indicate where the $100,000 came from?

19  A   There's a resolution error on the screen.

20  Q   A resolution?

21  A   Yeah, it came up on the screen.

22  Q   I will show you a hard copy of Exhibit 2301.

23      (Handing.)

24  Q   Yes, it's an error on the display screen.  We'll look at

25  it afterward.  Looking at the hard copy, part of that is

2509

1   blacked out.  Can you actually see the screen from where

2   you're sitting?

3   A   Yes.

4   Q   Where is the money received from?

5   A   Received from Johnson Bank.

6   Q   In whose name or what company's name?

7   A   Funds transferred, received from Johnson Bank.  Eufora

8   LLC.

9   Q   Now, I want to compare what you were just looking at with

10  another exhibit that's in evidence.  It is Government Exhibit

11  221.

12      THE COURT:  It is 2211.

13      MR. MISKIEWICZ:  Yes.  I'm sorry.

14  Q   I'll show you.  Let's go back to 2211.

15      MR. HALEY:  May we approach, briefly?

16      THE COURT:  Yes.

17      (Whereupon a side-bar conference was conducted.)

18      (Matter continued on the next page.)

19

20

21

22

23

24

25

2510

1       (Side-bar conference conducted.)

2       MR. HALEY:  Your Honor, my objection is simply this.

3   As I saw the exhibit -- and indeed, I did consent to its

4   admissibility in terms of its authenticity.  My objection is

5   going to be on relevance and materiality.  That is a transfer

6   from Glen Murray.  The current indictment does not list Glen

7   Murray in any respect whatsoever as a victim of any of the

8   Eufora transaction.  The victims that are listed in Eufora as

9   part of the indictment, a number of people.  Actually,

10  Ranford, Rucchin, who will testify.  Not Glen Murray.  To the

11  extent now they're going down that path to suggest that

12  somehow there was some inappropriate conduct with reference to

13  the transfer with respect to Glen Murray, I object.  It is not

14  404(b).  It's outside the scope of the indictment.

15      MR. MISKIEWICZ:  Mr. Murray is one of the victims.

16  He is not a John Doe currently, but he was originally a John

17  Doe.  It's part of the diversions.  There's been testimony

18  that at or about the same time as all these transactions that

19  I'm going to walk him through now, occurred when Eufora is,

20  really, going belly up, and Mr. Kenner and others are

21  soliciting from various victims to invest more money.

22      THE COURT:  I understand what the scheme is alleged.

23  So you're saying that Mr. Murray is a victim?

24      MR. MISKIEWICZ:  Yes, he is.

25      THE COURT:  Is he going to testify?

2511

1       MR. MISKIEWICZ:  He'll testify next week.

2       MR. HALEY:  Your Honor, this truly does come as a

3   surprise, although, in this respect.  The government sought to

4   supercede; that's certainly they're right.  I would admit that

5   in the original indictment Murray and others were listed as

6   John Doe victims.  The government then moved to, by their

7   claims to the Court, streamline and consolidate the

8   indictment.

9       From my perspective, that's what we're defending.

10  We're defending the current indictment.  And to the extent

11  that they are now moving beyond persons they've identified as

12  victims of the fraud to a Glenn Murray or others, indeed, I

13  respectfully suggest to the Court, again, that's 404(b).  We

14  weren't given notice they were going to -- as a matter of

15  fact, they were saying they weren't going to introduce any

16  404(b) in terms of other crimes.  This is not really a crime

17  of wrong to be alleging in front of the jury.  The fact that

18  they say there's a group of victims, I mean, that may be true,

19  as they say, but that's not defined and it's not contained in

20  the indictment.

21      MR. MISKIEWICZ:  Your Honor, there's also evidence

22  that there have been numerous other exhibits they had no

23  objection to.  Lines of credit for Mr. Murray, the flow of

24  money.  There were a series of charts that explained how there

25  was a Ponzi Scheme with the lines of credit.  Mr. Murray's

2512

GAARN-DIRECT-MISKIEWICZ

1  lines of credit were repeatedly drawn down on.  And they've
2  stipulated to these bank records.
3      MR. HALEY:  That is a different issue.
4      THE COURT:  First of all, the indictment is not
5  404(b).  The indictment alleges -- I'll go back and look it,
6  that the money was diverted from Eufora for personal uses.  To
7  the extent that your argument is it's not contained in the
8  indictment, I don't think it's limited to one victim.
9      I understand what you're saying, they pulled him out
10  as a John Doe.  But unless you asked the government, you said
11  is Murray not a victim and they told you that he is not and
12  not proving that, that would concern me.  I'll look at the
13  indictment.  I don't think it's written that way.
14      MR. HALEY:  Judge, I'd more than pleased to get the
15  indictment.  But my memory of the indictment -- I did not ask
16  them, Is Murray still a victim or not?  I take a look at the
17  four corners of the indictment where it indicates specifically
18  John Does.  There was a request to identify the John
19  Doe/victims in the indictment, and they did so by way of the
20  documents filed.  That does not list Murray as one of the
21  victims/John Does.  In that sense, they represented, at least
22  to me for the purposes of this trial, was not going to have to
23  be required to confront the allegation.
24      THE COURT:  You didn't know Mr. Murray would be a
25  witness?

2513

GAARN-DIRECT-MISKIEWICZ

1      MR. HALEY:  No.  Frankly, I didn't know Mr. Murray
2  would be a witness as far as Eufora is concerned.  I don't
3  think, Judge, I allowed information to go in in reference to
4  the lines of credit or where the money came from.  That is
5  part and parcel of the transactions, and I will address that
6  in the defense part of the case.
7      THE COURT:  I'm going to go back and look at the
8  indictment.  I'm not going to stop the questioning now.  But I
9  will go back and confirm what my memory is.  We can have
10  further discussion at the end of the day.
11      MR. HALEY:  Thank you, sir.
12      (Whereupon the side-bar conference was concluded.)
13      (Matter continued on the next page.)
14
15
16
17
18
19
20
21
22
23
24
25

2514

GAARN-DIRECT-MISKIEWICZ

1      (Matter continued in Open Court.)
2  CONTINUED DIRECT EXAMINATION
3  BY MR. MISKIEWICZ:
4  Q   Going back to the exhibit.
5  A   Yes.
6  Q   On 12/31, I think you already testified in Government
7  2301, your account received a $100,000 deposit from Eufora
8  LLC.
9  A   Yes.
10  Q   I'm showing you what's been admitted into evidence as
11  Government's Exhibit 2211.  Do you see in the upper left-hand
12  corner, first of all, whose bank account this is?
13  A   Yes, yes.
14  Q   Whose bank account is it?
15  A   Eufora LLC.
16  Q   The same company that you're receiving your -- your
17  Wachovia account is receiving money, correct?
18  A   Correct.
19  Q   Does it show if the Eufora LLC account received anything
20  like a $100,000 transaction on or about that day?
21      Your screen is blacked out?
22  A   Yeah, I can't see it.
23  Q   Can you read it from up there?
24  A   I'm sorry, I can't.
25  Q   I'm showing you Government's Exhibit 2211.  Specifically

2515

GAARN-DIRECT-MISKIEWICZ

1  directing your attention to the date of 12/29, does it
2  indicate who, if anyone, was depositing money into Eufora's
3  account that day in the amount of $100,000?
4  A   Yes, it does.
5  Q   Who is it?
6  A   Glen Murray.
7  Q   Do you know a Glen Murray?
8  A   No, I don't.
9  Q   Again, on the left-hand of your screen, you see that at
10  the bottom?
11  A   Yes, I can.
12  Q   Is that covered?  Can you read that part, where my cursor
13  is?
14  A   Yes.  It says, "Domestic Wire."
15  Q   Under the caption Withdrawals, is that correct?
16  A   Yes.
17  Q   Can you read where is that money -- first of all, how
18  much money is going out on that day?
19  A   $100,000.
20  Q   Who is it going out to the benefit of?
21  A   It's going to benefit of Timothy R. Gaarn.
22  Q   That's to your Wachovia account, correct?
23  A   Yes, it is.
24  Q   Going back to Government's 2302, your Wachovia account.
25  I want to direct your attention to the second page of that

GAARN-DIRECT-MISKIEWICZ

2516

1  exhibit.

2        MR. HALEY:  2301?

3        MR. MISKIEWICZ:  2302.  I'm sorry about that.

4  Q   I'll try to do it so you can see it on your screen?

5        Can you read what is highlighted on the screen?

6  A   **Yes.  The monies were transferred.**

7  Q   Can you read from where it's being transferred to?

8  A   **Phil Kenner.**

9  Q   What is the amount that's being transferred from your

10  Wachovia account?

11  A   **$81,127.**

12  Q   Now, who put in the paperwork to make the transfer out of

13  your Wachovia account?

14  A   **Who went to the bank to do it?**

15  Q   Yes.

16  A   **I did.**

17  Q   Who told you to send Phil Kenner $81,127 on that day,

18  12/31?

19  A   **Phil Kenner.**

20  Q   This is 12/31/2008, is that correct?

21  A   **Yes.**

22  Q   How many days did you have that account?

23  A   **One.**

24  Q   There are other transactions that are listed as

25  withdrawals.  Do you see -- can you read any of them?

---

GAARN-DIRECT-MISKIEWICZ

2517

1  A   **Yes, I can.**

2  Q   Do you see a transaction -- just generally, are some of

3  those withdrawals that you made?

4  A   **Yes, they are.**

5  Q   Would you identify some of the withdrawals that you made?

6  A   **Yes, I can.  AT&T.  That would have been my cell phone,**

7  **my cell phone bill.**

8  Q   Is it fair to say there are a number of withdrawals that

9  you made?

10  A   **Yes, there are.**

11  Q   Again, did you do this with anyone's knowledge that you

12  were withdrawing some of the funds at this time?

13  A   **Yes.**

14  Q   With whose knowledge did you do that?

15  A   **Phil Kenner.**

16  Q   I'm going to show you what has been received in evidence

17  as Government's Exhibit 2303.  Can you read whose account this

18  is in the name of?

19  A   **Timothy R. Gaarn.**

20  Q   That's what it says there?

21  A   **Yes.**

22  Q   That's the same Wachovia account that we talked about?

23  A   **Yes.**

24  Q   I'm directing your attention to page 2, the second page

25  of that account.  Does it indicate anywhere under Deposits and

---

GAARN-DIRECT-MISKIEWICZ

2518

1  Other Credits whether or not additional funds were deposited

2  into that account?

3  A   **Yes.**

4  Q   Can you read what is next to the deposit for 2/19?

5  A   **Yes.  $100,000 funds transfer received from Johnson Bank.**

6  **"ORG:  Eufora LLC."**

7  Q   Now, I'm going to ask you that you compare that for a

8  moment in the split screen in a moment with Government Exhibit

9  2214 in evidence.  Again, this is not your account.  Whose

10  account is it?  Can you read it?

11  A   **Eufora LLC Operating.**

12  Q   Is there any indication of -- I'm going to withdraw that.

13        Focus your attention to the bottom of 2214 in

14  evidence.  I'd ask you to read for the record if there is

15  another deposit that is indicated there on or about 3/19.

16  A   **Yes.**

17  Q   Who is depositing money into the Eufora account according

18  to that record on or about 3/19?

19  A   **Glen Murray.**

20        MR. HALEY:  Your Honor, I object.

21        THE COURT:  Is this what we discussed?

22        MR. HALEY:  No, Your Honor.  The money -- the money

23  came and arrive Eufora account.  The money arrived in the

24  Eufora account, as I read this, in February.  And then

25  deposited a month later in March.  I just don't think that it

---

GAARN-DIRECT-MISKIEWICZ

2519

1  leads to the conclusion that the government is asking the

2  witness to recall.

3        MR. MISKIEWICZ:  I object.

4        THE COURT:  You may continue.

5  Q   Sir, is there an indication of the money being deposited

6  in your Wachovia account at that time?  I'm sorry.  In the

7  Eufora account on that day, 3/19?

8  A   **Yes.**

9  Q   Who does it indicate the originator of that $100,000 was?

10  A   **Glen Murray.**

11  Q   Back to your Wachovia account, Exhibit 2303.

12  Specifically the third page.  Do you see an entry there for an

13  amount of approximately $30,000?

14  A   **Yes, I do.**

15  Q   Actually, exactly in the amount of $30,000?

16  A   **Yes, I do.**

17  Q   It says, according to this, that $30,000 was sent from

18  your Wachovia account to somebody by the name of John Kaiser

19  on 2/12.  Do you see that?

20  A   **Yes.**

21  Q   Did you owe John Kaiser money?

22  A   **No.**

23  Q   Do you know who John Kaiser is?

24  A   **Yes.**

25  Q   Who told you to send the $30,000 to John Kaiser on that

---

GAARN-DIRECT-MISKIEWICZ

2520

1   Q   day, 2/12/2009?

2   A   **Phil Kenner.**

3   Q   Referring to the next page of 2303, I will zero in on a

4   few transactions here. What appears to be a $13,000 transfer

5   out of your Wachovia account on or about 2/25/09. Can you

6   indicate who is referenced in there?

7   A   **Sent to International Bank, Phil Kenner and**

8   **Casa Mr. Loan.**

9   Q   You know who Casa Mr. Loan was?

10  A   **No.**

11  Q   Who, if anyone, directed you to send $13,000 out of your

12  Wachovia account to Phil Kenner and Casa Mr. Loan?

13  A   **Phil Kenner.**

14  Q   Below that, do you see on 2/25 there's another

15  transaction of $30,000?

16  A   **Yes.**

17  Q   Will you read for the record where it was sent to.

18  A   **It was sent to Bank of America for the benefit of Phil**

19  **Kenner.**

20  Q   What is the date of the $30,000 transfer?

21  A   **2/25.**

22  Q   That's 2/25/2009, is that right?

23  A   **Yes.**

24  Q   Below that, also on 2/25, there's $40,300 funds

25  transferred. Do you see that?

GAARN-DIRECT-MISKIEWICZ

2521

1   A   **Yes, I do.**

2   Q   Where is it sent to and to the benefit of who?

3   A   **Sent to TD Bank, benefit of John Kaiser.**

4   Q   Who told you to send $40,300 to the benefit of John

5   Kaiser out of your Wachovia account on that day?

6   A   **Phil Kenner.**

7   Q   How would Mr. Kenner direct you to do these things?

8   A   **He would either tell me verbally on the phone or send me**

9   **an e-mail with the names on it, or a fax.**

10  Q   Did he explain to you why he wanted these funds sent --

11  A   **No.**

12  Q   -- to be sent?

13  A   **No.**

14  Q   Did you ask him?

15  A   **No.**

16  Q   I'm going to show you what is in evidence as 2305.

17  Again, this is your Wachovia account?

18  A   **Yes.**

19  Q   For what period? Can you read what period it is?

20  A   **4/15/2009 for 5/15/2009.**

21  Q   Looking at the second page, in the upper left corner, is

22  there a balance still from the previous month?

23  A   **Yes.**

24  Q   What is the balance?

25  A   **$13,111.56.**

GAARN-DIRECT-MISKIEWICZ

2522

1   Q   Then there are deposits in a certain amount. For the

2   record, how much?

3   A   **$207,500.**

4   Q   Did you ever deposit $207,500 into this account?

5   A   **No.**

6   Q   Were you financially capable of doing that at this time?

7   A   **No.**

8   Q   I want you to compare what is in evidence as Government's

9   exhibit 2216 on the right side of your screen. Is that the

10  same Eufora account that you talked about?

11  A   **Yes.**

12  Q   At the bottom of the screen, can you see whether or not

13  Eufora received any money from anybody on that day?

14  A   **On 5/4.**

15  Q   Who is it from?

16  A   **William Ranford.**

17  Q   In the amount of what?

18  A   **$100,000.**

19  Q   Let's go back to -- going back to your account statement

20  for that month, Exhibit 2305, did you receive a $100,000

21  deposit at any point that month?

22  A   **Yes.**

23  Q   Or in that banking cycle?

24  A   **Yes.**

25  Q   Is there more than one $100,000 deposit made into that

GAARN-DIRECT-MISKIEWICZ

2523

1   account?

2   A   **Yes.**

3   Q   What was the first one?

4   A   **4/20.**

5   Q   Where did Wachovia get that $100,000?

6   A   **From Johnson Bank.**

7   Q   Where did Johnson Bank get it from? It says "ORG."

8   A   **Eufora LLC.**

9   Q   Is there a second $100,000 transaction?

10  A   **Yes.**

11  Q   A deposit?

12  A   **Yes.**

13  Q   Is that also from Eufora LLC?

14  A   **Yes.**

15  Q   What is the date?

16  A   **5/05.**

17  Q   Go to page 4 of 10 of Government Exhibit -- on the

18  exhibit we were just looking at. Do you see a transfer of

19  $95,000?

20  A   **Yes, I do.**

21  Q   Can you read where the money was transferred to?

22  A   **Sent to Bank of America, beneficiary Phil Kenner.**

23  Q   Who directed you to send money to Mr. Kenner, that

24  $95,000, Mr. Gaarn?

25  A   **Phil Kenner.**

1 Q   Again, did you owe Mr. Kenner $95,000 at this time?

2 A   **No.**

3 Q   Did you owe him -- as far as you testified about the

4 number of transactions on these bank records, did you owe him

5 any money at this time?

6 A   **I borrowed money from him, yes.**

7 Q   Did any of these wire transfers represent your paying

8 back any money that you had previously borrowed from him?

9 A   **No.**

10 Q   In fact, none of this was your money, right?

11 A   **Yes.**

12       MR. HALEY:  I object to the leading nature.

13       THE COURT:  I will let the answer stand.  Don't

14 lead.

15       If there's an objection, wait for the ruling.  Okay?

16       THE WITNESS:  All right.

17 Q   I'm going to show you what's in evidence as Government

18 Exhibit 2306.  Whose bank account is this?

19 A   **Mine.**

20 Q   The same Wachovia account?

21 A   **Yes.**

22 Q   Page 2, does it indicate whether there's an opening

23 balance?

24 A   **Yes.**

25 Q   What is the opening balance at the beginning of this

1 cycle?

2 A   **$93,538.10.**

3 Q   Okay.  By the way, what period are we looking at here?

4 A   **5/13/2009 through 6/11/2009.**

5 Q   Now, do you recall if there were -- withdrawn.

6       Let me take you through page 4 of 10.  I'm showing

7 you a page indicating other withdrawals and billing fees.  Do

8 you see that?

9 A   **Yes.**

10 Q   At the very top, it says, "5/20."  Do you see that?

11 A   **Yes.**

12 Q   Is there a transfer of funds going out of your account on

13 or about that date?

14 A   **Yes.**

15 Q   In what amount?

16 A   **$85,000.**

17 Q   Who is it going to?

18 A   **Bank of America, Phil Kenner.**

19 Q   Who directed you to send $85,000 to Mr. Kenner at the

20 Bank of America?

21 A   **Phil Kenner.**

22       MR. MISKIEWICZ:  Your Honor, I'm going to move to a

23 different area.

24       THE COURT:  Thank you, ladies and gentlemen for the

25 day.

1       Juror No. 3, you have a conflict tomorrow and

2 Thursday, correct?

3       JUROR NO. 3:  Yes, sir.

4       THE COURT:  I'm going to excuse you from service in

5 the case.  Obviously, we'll continue here in our service.

6 Because we're behind, we don't have the luxury of waiting.  So

7 I'm going to excuse you from the case.

8       Mr. Hoffman, Alternate No. 3, tomorrow morning

9 you'll sit in seat number 3.

10       I want to thank you, Juror 3, for your service.  I

11 just want to emphasize, it should be obvious, but I want to

12 emphasize that just because you've been excused from service,

13 you still can't discuss the case with the jurors on the way

14 out.  So please do not do that.

15       For the rest of you, don't listen or read anything

16 about the case.  Don't discuss the case.  Have a safe trip

17 home and I will see you tomorrow at 9:30.

18       (Whereupon the jurors leave the courtroom.)

19       JUROR NO. 3:  Thank you, Your Honor.

20       THE COURT:  You can step down, Mr. Gaarn.  See you

21 tomorrow morning at 9:30.

22       THE WITNESS:  Yes, Your Honor.

23       (Witness leaves the courtroom.)

24       THE COURT:  I want to go back to this Glenn Murray

25 issue.  When Mr. Murray testifies, will he testify his

1 investment was in Eufora, Hawaii, or both?  Where was the

2 investment?

3       MR. MISKIEWICZ:  Both.  And the 3500 material of

4 Mr. Murray was turned over a long time ago.  He was noticed as

5 a witness on the prior voir dire.

6       All I can add, Your Honor, is that with regard to

7 the transactions having to do with Mr. Murray, I don't believe

8 the indictment says these are -- the John Does listed in the

9 indictment are exclusive.  In fact, I'm pretty sure there's

10 language that indicates "among others."  The preparatory

11 language talks about the manner and means of conspiracy.

12       With respect to these transactions, I would

13 analogize that we're not required under the statute to allege

14 the acts.  It was a 371 conspiracy, which would be like an

15 additional overt act.  I don't think we're precluded from

16 proving more than -- moreover acts than are alleged in the

17 indictment.  The material with respect to Mr. Murray is just

18 that.  I don't believe that, other than hearing from the

19 defense that Mr. Murray is a victim, we certainly turned over

20 3500.  They were aware of Mr. Murray.  So other than that, if

21 the Court has any questions.

22       THE COURT:  I will go back to the original

23 indictment.  He was a John Doe in some paragraph of the

24 indictment?

25       MR. MISKIEWICZ:  Yes.  I don't recall which one he

1   was, but he was a John Doe.  A number of John Does were
2   removed when we shortened the list.  He was originally John
3   Doe 3.
4           THE COURT:  I do have the indictment in front of me,
5   not the original indictment.  The operative one from
6   April 22nd.  As I indicated at side-bar, I believe that the --
7   I didn't believe that the indictment was limited to particular
8   victims in terms of the scheme and the fraud.  In fact, in
9   Paragraph 5, it says, the defendants, some wording of
10  fraudulently induced -- executed schemes to fraudulently
11  induce the player clients and other individuals collectively
12  the investors.  And it says, "Including John Doe No. 1 through
13  11 and Jane Doe No. 1."
14          So as my memory suggests, Mr. Miskiewicz is
15  suggesting that the indictment is not limited to the scheme to
16  a particular John Does and Jane Doe.  It makes clear that the
17  investors are a large group of players and clients and other
18  individuals to include specifically identify the individuals
19  in the indictment.  The government is not required to identify
20  every victim in the indictment.
21          So as I said, the only thing that would concern me,
22  Mr. Haley, if Mr. Murray, in particular, in light of the prior
23  indictment, is no longer alleged to be a victim, if they made
24  a misrepresentation to you concerning that.  But I don't think
25  that happened.

1           MR. HALEY:  Your Honor, it did not.  May I complete
2   the record?
3           THE COURT:  Sure.
4           MR. HALEY:  My focus, Judge, the government went
5   from general to specific.  We go to specific, it relates to
6   paragraphs 12 and 13, in particular, when they say Eufora
7   investors.  I guess, just to read that into the record
8   (reading):
9           "It was further part of the scheme to defraud that
10  between February 2008 and May 2009, the defendant Kenner
11  convinced John Does 2 through 4 and John Doe 8 and John Doe
12  9" -- and that specifically is Mr. Peca, Mr. Sydor,
13  Mr. Rucchin, Mr. Nash -- "to invest money in Eufora, in
14  exchange for an ownership interest in the company, by
15  representing to each them Eufora was a promising company with
16  the potential for growth.  The defendants Kenner and
17  Constantine then unlawfully diverted certain money, including
18  for their personal benefit."
19          My argument is simply this, Judge, you read the
20  paragraph again, they identified specific persons they're
21  claiming as victims for purposes of the jury's consideration.
22  I think a fair reading of that is it would be an unlawful
23  diversion of their money as relates to Eufora in particular,
24  and only insofar as a specific, though general, as matter of
25  simply general principle.  That is the basis of my objection.

1           I believe Paragraph 13 also limits the persons that
2   the government alleges to the jury were victimized by
3   Mr. Kenner as relates to the Eufora scheme.  That's, frankly,
4   Judge, that is the basis of my position.  I just want the
5   record to be clear.  I respect Your Honor's ruling, but I just
6   wanted the record to be clear on that.
7           THE COURT:  I don't read the document as you would,
8   to suggest that maybe the government define the victims more
9   broadly as fraudulently inducing the player, clients, and
10  other individuals, collectively, the investors, and includes
11  various people because the way the paragraph reads is specific
12  reference to certain John Does; that anyone who's not
13  specifically referenced in the paragraph is somehow beyond the
14  scope of what the grand jury indicted.  I just don't believe
15  that that's accurate.  I don't believe it's beyond the scope
16  of the indictment.
17          To the extent that you are under a misimpression
18  based upon your reading of the indictment and the prior
19  indictment that Mr. Murray, the government is alleging all
20  kinds of things.  I don't know that I would believe that.  I
21  don't know why you would believe that the government witness
22  abandoned that.
23          MR. HALEY:  Judge, I make no such claim why the
24  government chooses to take a particular course of action.  We
25  have a theory as to why the government decided, to use the

1   euphemism, and streamline the indictment from the original
2   indictment.  We have a theory as to why that occurred.  But I
3   stand by -- I'm not claiming surprise.
4           THE COURT:  You're not claiming surprise?
5           MR. HALEY:  I'm claiming the argument I made to the
6   Court.  That's all.
7           THE COURT:  You're not claiming surprise?
8           MR. HALEY:  Absolutely not, Judge.
9           THE COURT:  This's not like some new type of
10  allegation.  It's part and parcel of what the whole case has
11  been about.  Certainly, you have hd sufficient time to make
12  whatever adjustments you want to make with respect to your
13  questioning of Mr. Murray.  He hasn't testified yet.  Or any
14  other evidence that you want to elicit through the various
15  witnesses.
16          Okay.  What do we have for tomorrow?
17          MR. MISKIEWICZ:  I gave a list to counsel.  We have
18  three, possibly four witnesses ready to go tomorrow after
19  Mr. Gaarn.  That is, Bruce Barreth, Will Castro, Steven
20  Rucchin, and William Ranford.
21          Thursday, we're still -- Mr. Manfredi is here.  He's
22  been here for a couple of weeks and would like to go back to
23  Hawaii.  We're going to try to get him on and off on Thursday.
24  We're trying to shed witnesses to move things along to get to
25  the finish line.  So we're reevaluating whether or not we're

U.S.A. v. KENNER and CONSTANTINE

2532

1  actually going to call.  We're not sure how many more we will
2  add.  Chris Manfredi will be available on Thursday.
3       THE COURT:  I just want to make sure that anyone
4  you're deciding not to call in order to streamline the case,
5  make sure that the defense doesn't want to call him.  I don't
6  want them to be under the impression that he's gone and come
7  back in a week or two.
8       MR. LaRUSSO:  There is one serious question we'd
9  like to ask Mr. Manfredi.  If they decide not to call him, we
10 would appreciate an opportunity to call him.  Maybe put him on
11 out of order and get him done.
12      MR. MISKIEWICZ:  We're going to resolve that tonight
13 and we'll let you know tomorrow morning.
14      THE COURT:  The only other issue, and I don't want
15 to discuss it right now, but I got the government's response
16 to the computer.  I don't know if you had a chance, Mr. Haley,
17 to digest that.
18      MR. HALEY:  Your Honor, I did not.  Candidly, Judge,
19 I will stand by the record that I have established on the
20 matter.
21      THE COURT:  Okay.
22      MR. HALEY:  I defer to the Court's decision on that.
23      THE COURT:  We will deal with that tomorrow, then.
24 I want to compliment everyone today.  Today, I felt it went
25 very well.  We got through witnesses.  So I appreciate

U.S.A. v. KENNER and CONSTANTINE

2533

1  everyone doing their best.  The jury seemed happier today.  I
2  don't know why, but they seemed to be livelier today.
3       I will see you tomorrow morning at 9:30.
4       MR. MISKIEWICZ:  Thank you, Your Honor.
5       MR. HALEY:  Thank you, Your Honor.
6       MR. LaRUSSO:  Thank you, Your Honor.
7       MR. OLIVERAS:  Thank you, Your Honor.
8       (Matter adjourned to June 3, 2015, at 9:30 a.m.)

W I T N E S S E S

2534

2  J A M E S   G R D I N A                    2359
3  DIRECT EXAMINATION                         2359
4  BY MR. MISKIEWICZ
5  CROSS EXAMINATION                          2408
6  BY MR. HALEY
7  CROSS EXAMINATION                          2414
8  BY MR. LaRUSSO
9  CROSS-EXAMINATION (Cont'd)                 2421
10 BY MR. LARUSSO
11 REDIRECT EXAMINATION                       2463
12 BY MR. MISKIEWICZ
13 RECROSS-EXAMINATION                        2472
14 BY MR. HALEY
15 CROSS-EXAMINATION                          2473
16 BY MR. LARUSSO
18 PETER MELLEY                               2476
19 DIRECT EXAMINATION                         2477
20 BY MS. KOMATIREDDY

W I T N E S S E S

2535

1  TIMOTHY GAARN                              2488
2  DIRECT EXAMINATION                         2489
3  BY MR. MISKIEWICZ
4  VOIR DIRE EXAMINATION                      2495
5  BY MR. HALEY
6  VOIR DIRE EXAMINATION                      2497
7  BY MR. HALEY
8  VOIR DIRE EXAMINATION                      2498
9  BY MR. LARUSSO:

GOVERNMENT EXHIBITS

|  |  | 2536 |
|---|---|---|
| 1 | Government Exhibit Stipulations 23 through 32 | 2355 |
| 2 | were received in evidence | |
| 3 | foregoing Government Exhibits mentioned above | 2356 |
| 4 | were received in evidence | |
| 5 | Government Exhibit 1903 and 1904 was received in | 2358 |
| 6 | evidence | |
| 7 | Government Exhibit 3801 was received in evidence | 2364 |
| 8 | Government Exhibit 3802 was received in evidence | 2369 |
| 9 | Government Exhibit 3811 was received in evidence | 2373 |
| 10 | Government Exhibit 3819 A was received in | 2376 |
| 11 | evidence | |
| 12 | Government Exhibit 3820 | 2389 |
| 13 | Government Exhibit 8004-C | 2390 |
| 14 | Government Exhibit 3821 | 2396 |
| 15 | Government Exhibit 3822 | 2401 |
| 16 | Government Exhibit 3823 | 2404 |
| 17 | Government Exhibit 3807 | 2407 |
| 18 | Government's Exhibit C 152, 153, and 154 were | 2422 |
| 19 | received in evidence | |
| 20 | Government Exhibits 8013-C, 8011-C and 8012-C in | 2462 |
| 21 | evidence | |
| 22 | Government Exhibit 3824 in evidence | 2471 |
| 23 | Government Exhibit 2802-R in evidence | 2479 |
| 24 | Government Exhibit TG-2 in evidence | 2496 |
| 25 | Government Exhibit 2300 in evidence | 2498 |

DEFENDANT EXHIBITS

|  |  | 2537 |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Defendant Kenner Exhibit 78 | 2411 |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

## $

**$1,308,500** [2] - 2385:6, 2386:6
**$1,380,5000** [1] - 2459:16
**$100,000** [19] - 2408:22, 2409:1, 2415:2, 2416:11, 2508:9, 2508:11, 2508:17, 2508:18, 2514:7, 2514:20, 2515:3, 2515:19, 2518:5, 2519:9, 2522:18, 2522:20, 2522:25, 2523:5, 2523:9
**$120,000** [18] - 2382:13, 2383:11, 2389:18, 2389:21, 2389:24, 2391:6, 2391:17, 2392:6, 2393:21, 2393:23, 2394:8, 2394:11, 2394:16, 2394:20, 2395:8, 2395:11, 2396:21, 2396:22
**$121,000** [2] - 2396:18
**$13,000** [2] - 2520:4, 2520:11
**$13,111.56** [1] - 2521:25
**$150,000** [2] - 2449:5, 2449:7
**$2,081,000** [1] - 2380:6
**$207,500** [2] - 2522:3, 2522:4
**$250,000** [3] - 2385:18, 2428:22, 2449:1
**$275,000** [4] - 2403:14, 2403:18, 2405:11, 2433:9
**$3,621,000** [2] - 2408:17, 2416:18
**$3,962,100** [1] - 2389:5
**$30,000** [6] - 2519:13, 2519:15, 2519:17, 2519:25, 2520:15, 2520:20
**$325,000** [2] - 2403:18, 2405:15
**$330,000** [1] - 2377:20
**$35** [1] - 2409:11
**$35,750,000** [1] - 2409:20
**$4,855,000** [1] - 2380:5

**$40,000** [1] - 2385:5
**$40,300** [2] - 2520:24, 2521:4
**$555,000** [1] - 2423:3
**$6,936,000** [1] - 2379:17
**$600,000** [1] - 2416:5
**$625,000** [2] - 2414:23, 2423:19
**$64,000** [2] - 2415:8, 2415:12
**$650,000** [1] - 2403:9
**$75,000** [1] - 2491:17
**$81,127** [2] - 2516:11, 2516:17
**$85,000** [2] - 2525:16, 2525:19
**$850,000** [5] - 2346:25, 2347:3, 2347:13, 2347:15, 2347:18
**$93,538.10** [1] - 2525:2
**$95,000** [3] - 2523:19, 2523:24, 2524:1

## '

**'09** [1] - 2406:1
**'13** [1] - 2453:4
**'90s** [1] - 2483:18

## 0

**06** [1] - 2367:6

## 1

**1** [24] - 2371:6, 2372:6, 2372:10, 2372:11, 2384:15, 2389:7, 2390:13, 2390:18, 2391:8, 2391:10, 2391:15, 2391:18, 2392:7, 2392:21, 2397:14, 2398:2, 2416:4, 2422:23, 2424:10, 2426:6, 2445:17, 2500:9, 2528:12, 2528:13
**1,000** [1] - 2385:16
**1,375,000** [1] - 2459:21
**1.1** [1] - 2403:8
**1.11** [1] - 2365:7
**1.2** [1] - 2382:19
**1.28** [2] - 2457:9, 2459:9
**1.3** [6] - 2384:8,

**2389:11, 2397:18, 2402:12, 2407:11, 2458:24
**1.375** [4] - 2458:19, 2459:12, 2463:13, 2473:19
**1.5** [32] - 2362:9, 2362:23, 2366:4, 2367:23, 2367:25, 2368:6, 2380:9, 2414:23, 2416:12, 2416:19, 2418:14, 2419:4, 2419:5, 2419:16, 2421:5, 2421:10, 2423:18, 2423:22, 2424:25, 2425:7, 2425:14, 2425:16, 2427:14, 2428:4, 2428:9, 2450:22, 2451:5, 2451:21, 2461:21, 2466:2, 2466:7, 2468:24
**10** [3] - 2458:14, 2523:17, 2525:6
**10-day** [1] - 2466:6
**10/31** [1] - 2377:15
**100** [5] - 2343:16, 2344:8, 2374:9, 2437:11, 2475:11
**100,000** [1] - 2425:21
**101** [1] - 2355:17
**10:00** [1] - 2399:12
**10th** [3] - 2351:15, 2419:1, 2454:20
**11** [6] - 2404:6, 2405:15, 2438:8, 2458:13, 2458:14, 2528:13
**1102** [1] - 2393:12
**11501** [1] - 2344:2
**11572** [1] - 2344:5
**11722** [2] - 2343:17, 2344:9
**11749** [1] - 2343:23
**11:15** [1] - 2401:3
**11:45** [1] - 2401:11
**12** [3] - 2396:10, 2447:2, 2529:6
**12/29** [1] - 2515:1
**12/30/2008** [2] - 2498:13, 2499:10
**12/31** [3] - 2508:17, 2514:6, 2516:18
**12/31/2008** [1] - 2516:20
**123.9** [10] - 2362:21, 2366:17, 2367:15, 2367:22, 2416:22, 2416:25, 2417:10,

**2417:14, 2417:17, 2418:20
**129** [1] - 2368:6
**12th** [1] - 2393:20
**13** [4] - 2363:13, 2438:8, 2529:6, 2530:1
**13-CR-607** [1] - 2343:3
**131** [1] - 2353:21
**14** [4] - 2363:1, 2368:13, 2377:6, 2424:13
**1451** [1] - 2355:25
**1457** [1] - 2355:25
**146** [2] - 2430:24, 2431:2
**147** [2] - 2430:24, 2431:2
**148** [2] - 2430:25, 2431:2
**14th** [1] - 2378:19
**15** [7] - 2361:9, 2371:8, 2371:24, 2389:3, 2424:17, 2426:8, 2443:21
**150,000** [1] - 2425:21
**152** [5] - 2422:1, 2422:7, 2422:8, 2422:18, 2536:18
**153** [5] - 2422:1, 2422:7, 2422:8, 2424:8, 2536:18
**154** [4] - 2422:1, 2422:7, 2422:9, 2536:18
**159** [1] - 2439:17
**16** [2] - 2347:9, 2389:18
**160** [2] - 2458:6, 2463:5
**1601** [1] - 2343:22
**169,000** [1] - 2425:20
**18** [2] - 2371:3, 2399:19
**18-and-a-half** [1] - 2477:15
**180** [5] - 2372:7, 2372:10, 2372:11, 2374:11, 2374:13
**1801** [1] - 2355:20
**1809** [1] - 2355:20
**1903** [5] - 2357:17, 2358:2, 2358:6, 2358:21, 2536:5
**1904** [5] - 2357:17, 2358:2, 2358:6, 2358:21, 2536:5
**192,000** [1] - 2426:8
**1987** [1] - 2481:25

**1994** [1] - 2485:2
**1st** [1] - 2498:15

## 2

**2** [14] - 2343:9, 2357:3, 2365:5, 2372:5, 2372:21, 2374:10, 2380:17, 2422:22, 2445:21, 2464:23, 2481:17, 2517:24, 2524:22, 2529:11
**2,013** [2] - 2367:1, 2367:5
**2.1** [1] - 2425:11
**2.2** [2] - 2365:16, 2366:3
**2/12** [1] - 2519:19
**2/12/2009** [1] - 2520:1
**2/19** [1] - 2518:4
**2/25** [3] - 2520:14, 2520:21, 2520:24
**2/25/09** [1] - 2520:5
**2/25/2009** [1] - 2520:22
**20** [4] - 2374:15, 2423:3, 2445:19, 2463:10
**2000** [3] - 2361:8, 2453:3, 2481:25, 2485:2
**2003** [2] - 2480:17, 2481:11
**2004** [3] - 2451:19, 2480:18, 2481:11
**2005** [35] - 2361:11, 2363:1, 2363:13, 2368:13, 2371:25, 2377:6, 2378:13, 2380:25, 2383:9, 2384:23, 2385:23, 2405:16, 2414:20, 2416:22, 2416:25, 2417:12, 2419:7, 2419:11, 2422:23, 2426:18, 2427:1, 2427:24, 2428:5, 2443:18, 2454:4, 2498:16, 2498:20, 2499:19, 2499:20, 2499:25, 2500:9, 2500:11, 2500:18, 2500:25
**2005-2006** [1] - 2492:2
**2006** [10] - 2346:19, 2378:19, 2418:25, 2424:10, 2424:11, 2424:13, 2443:8, 2454:20, 2456:7,

2461:11

**2007** [8] - 2386:3, 2426:6, 2426:7, 2426:17, 2435:9, 2456:8, 2456:9, 2456:14

**2007-2008** [2] - 2433:18, 2434:3

**2008** [12] - 2383:9, 2385:23, 2435:9, 2493:6, 2493:8, 2493:14, 2498:14, 2498:21, 2500:18, 2500:24, 2508:5, 2529:10

**2008-2009** [1] - 2493:5

**2009** [10] - 2382:15, 2383:10, 2388:18, 2393:5, 2396:10, 2397:2, 2493:7, 2493:8, 2529:10

**2010** [4] - 2385:6, 2402:14, 2435:9, 2501:25

**2011** [3] - 2386:13, 2393:3, 2393:8

**2011-2012** [1] - 2505:6

**2012** [9] - 2375:11, 2386:13, 2400:17, 2400:19, 2400:20, 2420:6, 2464:11, 2464:16, 2465:13

**2012-2013** [3] - 2455:20, 2455:25, 2465:16

**2013** [7] - 2429:14, 2450:6, 2450:17, 2452:4, 2452:10, 2453:2, 2464:16

**2014** [2] - 2399:19, 2400:17

**2015** [2] - 2343:9, 2533:8

**20th** [3] - 2388:18, 2393:5, 2423:14

**22** [1] - 2425:20

**221** [1] - 2509:11

**2211** [4] - 2509:12, 2509:14, 2514:11, 2514:25

**2214** [2] - 2518:9, 2518:13

**2216** [1] - 2522:9

**22nd** [1] - 2528:6

**23** [4] - 2354:25, 2355:5, 2355:8, 2536:1

**2300** [8] - 2496:20, 2496:21, 2497:7, 2498:23, 2498:25,

2499:2, 2508:4, 2536:25

**2301** [6] - 2507:14, 2507:16, 2508:14, 2508:22, 2514:7, 2516:2

**2302** [2] - 2515:24, 2516:3

**2303** [3] - 2517:17, 2519:11, 2520:3

**2305** [2] - 2521:16, 2522:20

**2306** [1] - 2524:18

**2355** [1] - 2536:1

**2356** [1] - 2536:3

**2358** [1] - 2536:5

**2359** [2] - 2534:2, 2534:3

**2364** [1] - 2536:7

**2369** [1] - 2536:8

**2373** [1] - 2536:9

**2376** [1] - 2536:10

**2389** [1] - 2536:12

**2390** [1] - 2536:13

**2396** [1] - 2536:14

**24** [1] - 2384:23

**2401** [1] - 2536:15

**2404** [1] - 2536:16

**2407** [1] - 2536:17

**2408** [1] - 2534:5

**2411** [1] - 2537:3

**2414** [1] - 2534:7

**2421** [1] - 2534:9

**2422** [1] - 2536:18

**2462** [1] - 2536:20

**2463** [1] - 2534:11

**2471** [1] - 2536:22

**2472** [1] - 2534:13

**2473** [1] - 2534:15

**2476** [1] - 2534:18

**2477** [1] - 2534:19

**2479** [1] - 2536:23

**2488** [1] - 2535:1

**2489** [1] - 2535:2

**2495** [1] - 2535:4

**2496** [1] - 2536:24

**2497** [1] - 2535:6

**2498** [2] - 2535:8, 2536:25

**25** [16] - 2359:23, 2381:5, 2381:8, 2382:19, 2384:6, 2385:13, 2385:14, 2389:12, 2391:25, 2397:25, 2398:18, 2398:22, 2406:6, 2407:16, 2455:8, 2456:10

**250,000** [1] - 2424:17

**2511631** [1] - 2480:9

**26** [1] - 2344:4

**27** [2] - 2412:15, 2455:2

**2802** [4] - 2447:7, 2478:14, 2478:16, 2479:18

**2802-R** [6] - 2478:14, 2479:17, 2479:20, 2479:24, 2479:25, 2536:23

**29** [1] - 2356:19

### 3

**3** [14] - 2346:19, 2357:7, 2365:16, 2372:13, 2410:16, 2447:4, 2526:1, 2526:3, 2526:8, 2526:9, 2526:10, 2526:19, 2528:3, 2533:8

**3.5** [21] - 2362:7, 2363:1, 2363:5, 2365:23, 2369:14, 2372:3, 2372:22, 2375:20, 2375:21, 2376:22, 2377:7, 2377:10, 2379:19, 2408:19, 2409:4, 2409:11, 2410:6, 2411:7, 2415:2, 2416:11, 2418:19

**3.6** [5] - 2375:17, 2375:19, 2375:24, 2408:15, 2416:17

**3.9** [7] - 2389:10, 2389:15, 2389:16, 2391:7, 2392:7, 2395:6, 2440:22

**3/19** [3] - 2518:15, 2518:18, 2519:7

**30** [5] - 2362:10, 2380:6, 2422:23, 2481:11, 2508:2

**300** [1] - 2344:1

**304** [2] - 2356:4

**305** [2] - 2355:21, 2356:4

**306** [2] - 2355:21, 2356:5

**30th** [1] - 2508:5

**31** [3] - 2353:20, 2424:11, 2426:7

**32** [4] - 2354:25, 2355:5, 2355:9, 2536:1

**3209** [1] - 2355:23

**3214** [1] - 2355:23

**3215** [1] - 2355:25

**33** [1] - 2423:15

**341** [1] - 2344:2

**3500** [2] - 2527:3, 2527:20

**3505** [1] - 2356:2

**3506** [1] - 2356:2

**371** [1] - 2527:14

**3801** [9] - 2363:9, 2363:20, 2364:21, 2364:22, 2365:4, 2365:5, 2365:16, 2366:12, 2536:7

**3802** [6] - 2368:15, 2369:2, 2369:6, 2369:7, 2371:5, 2536:8

**3807** [10] - 2406:8, 2407:1, 2407:6, 2407:7, 2412:3, 2412:9, 2412:14, 2413:12, 2454:22, 2536:17

**3811** [8] - 2372:17, 2372:18, 2372:24, 2373:11, 2373:16, 2373:17, 2373:19, 2536:9

**3813** [1] - 2369:11

**3819** [9] - 2376:1, 2376:8, 2376:11, 2376:15, 2376:16, 2376:18, 2376:25, 2408:25, 2536:10

**3819-A** [1] - 2409:6

**3820** [7] - 2388:7, 2388:20, 2388:25, 2389:1, 2389:3, 2392:20, 2536:12

**3821** [8] - 2395:15, 2395:18, 2395:25, 2396:1, 2396:4, 2396:5, 2396:6, 2536:14

**3822** [6] - 2399:4, 2401:16, 2401:21, 2401:22, 2401:23, 2536:15

**3823** [8] - 2403:23, 2403:24, 2404:13, 2404:16, 2404:18, 2404:19, 2404:20, 2536:16

**3824** [8] - 2466:23, 2466:24, 2467:20, 2471:4, 2471:5, 2471:8, 2472:24, 2536:22

**3rd** [1] - 2507:25

### 4

**4** [6] - 2357:17, 2422:22, 2458:13, 2523:17, 2525:6, 2529:11

**4.2** [3] - 2375:17, 2375:24, 2411:14

**4/15/2009** [1] - 2521:20

**4/20** [1] - 2523:4

**4001** [1] - 2355:18

**4003** [1] - 2355:18

**4005** [1] - 2355:18

**4007** [1] - 2355:18

**4008** [1] - 2355:18

**4010** [1] - 2355:18

**4011** [1] - 2355:18

**4012** [1] - 2355:18

**4013** [1] - 2355:19

**4036** [1] - 2355:19

**4038** [1] - 2355:19

**404(b** [2] - 2447:15, 2511:16

**404(b)** [3] - 2510:14, 2511:13, 2512:5

**425** [1] - 2343:22

**428** [1] - 2459:7

### 5

**5** [20] - 2357:20, 2361:19, 2362:11, 2362:14, 2362:18, 2365:13, 2366:5, 2366:9, 2366:22, 2368:2, 2370:22, 2375:15, 2377:24, 2382:15, 2416:5, 2416:15, 2417:7, 2418:18, 2481:11, 2528:9

**5/05** [1] - 2523:16

**5/13/2009** [1] - 2525:4

**5/15/2009** [1] - 2521:20

**5/20** [1] - 2525:10

**5/4** [1] - 2522:14

**5104** [2] - 2407:18, 2407:20

**54** [1] - 2426:5

**550,000** [2] - 2423:4, 2423:7

**555,000** [1] - 2423:5

**5th** [1] - 2383:10

### 6

**6** [7] - 2358:1, 2390:13, 2390:18,

2391:2, 2391:3,
2391:14, 2464:23
**6/11/2009** [1] - 2525:4
**60,000** [1] - 2426:9
**63** [4] - 2351:19,
2484:18, 2485:2,
2485:3
**631-712-6102** [1] -
2344:9
**65** [6] - 2351:19,
2484:23, 2485:2,
2485:4, 2486:6,
2487:3
**66** [1] - 2375:1
**69** [2] - 2346:19,
2346:23

**7**

**7** [5] - 2351:18,
2379:24, 2438:8,
2485:1, 2485:3
**7/15/2008** [1] - 2402:9
**70** [2] - 2362:7, 2380:4
**70/30** [1] - 2380:17
**75,000** [1] - 2423:14
**77** [1] - 2409:13
**78** [5] - 2410:12,
2410:23, 2411:1,
2411:2, 2537:3

**8**

**8** [1] - 2529:11
**8/24/05** [1] - 2405:11
**8004** [1] - 2391:10
**8004-C** [6] - 2390:12,
2390:19, 2390:20,
2390:22, 2394:10,
2536:13
**8011-C** [6] - 2462:8,
2462:24, 2463:4,
2464:22, 2473:17,
2536:20
**8012** [1] - 2474:18
**8012-C** [5] - 2462:8,
2462:24, 2464:23,
2474:18, 2536:20
**8013-C** [5] - 2462:8,
2462:24, 2464:10,
2465:13, 2536:20
**850,000** [1] - 2347:20
**85020** [1] - 2459:7

**9**

**9** [4] - 2467:11,
2473:2, 2493:14,
2529:12
**902** [1] - 2462:9

**9:30** [5] - 2343:10,
2526:17, 2526:21,
2533:3, 2533:8

**A**

**a.m** [5] - 2343:10,
2399:12, 2401:3,
2401:12, 2533:8
**a/k/a** [2] - 2343:6,
2343:8
**abandoned** [1] -
2530:22
**ability** [1] - 2467:16
**able** [7] - 2364:14,
2364:17, 2399:22,
2409:15, 2483:9,
2495:23, 2497:16
**absolutely** [1] -
2531:8
**absorb** [1] - 2409:15
**abundance** [2] -
2351:22, 2447:12
**accept** [2] - 2358:14
**acceptance** [1] -
2440:3
**accepted** [2] - 2457:3,
2457:8
**Access** [2] - 2401:25,
2499:6
**accomplish** [1] -
2350:11
**according** [4] -
2367:13, 2425:5,
2518:17, 2519:17
**account** [78] -
2357:10, 2357:12,
2357:14, 2357:16,
2363:2, 2363:3,
2363:4, 2369:12,
2369:13, 2376:19,
2382:14, 2394:12,
2394:17, 2394:21,
2396:20, 2422:20,
2483:8, 2486:19,
2496:15, 2497:17,
2497:22, 2497:23,
2497:24, 2497:25,
2498:12, 2498:18,
2499:3, 2499:4,
2499:9, 2500:15,
2501:3, 2501:6,
2501:8, 2501:11,
2501:13, 2502:25,
2503:2, 2503:12,
2507:16, 2507:18,
2507:19, 2508:5,
2508:6, 2514:7,
2514:12, 2514:14,
2514:17, 2514:19,

2515:3, 2515:22,
2515:24, 2516:10,
2516:13, 2516:22,
2517:17, 2517:22,
2517:25, 2518:2,
2518:9, 2518:10,
2518:17, 2518:23,
2518:24, 2519:6,
2519:7, 2519:11,
2519:18, 2520:5,
2520:12, 2521:5,
2521:17, 2522:4,
2522:10, 2522:19,
2523:1, 2524:18,
2524:20, 2525:12
**Account** [1] - 2393:13
**accountant** [2] -
2460:16, 2461:14
**accountholder** [2] -
2357:8, 2357:9
**accounts** [4] -
2483:10, 2486:18,
2494:14, 2496:11
**accrued** [1] - 2372:8
**accurate** [5] -
2357:18, 2467:15,
2467:16, 2479:17,
2530:15
**accused** [1] - 2503:23
**acquire** [1] - 2366:21
**acquired** [3] - 2360:9,
2382:23, 2418:21
**acquisition** [3] -
2366:25, 2367:1,
2467:3
**acre** [1] - 2367:15
**acres** [11] - 2362:21,
2366:17, 2367:1,
2367:5, 2367:22,
2368:6, 2416:23,
2416:25, 2417:10,
2417:14, 2418:20
**act** [1] - 2527:15
**acting** [2] - 2343:16
**action** [2] - 2478:2,
2530:24
**activity** [1] - 2357:24
**acts** [2] - 2527:14,
2527:16
**actual** [6] - 2368:9,
2402:22, 2402:25,
2454:18, 2483:14,
2485:22
**add** [3] - 2348:3,
2527:6, 2532:2
**addition** [7] - 2346:17,
2378:3, 2385:4,
2385:19, 2403:11,
2415:25, 2485:8
**additional** [8] -

2353:9, 2385:1,
2385:24, 2386:2,
2419:3, 2424:2,
2518:1, 2527:15
**address** [9] - 2395:20,
2395:21, 2395:22,
2396:7, 2459:4,
2459:6, 2482:19,
2484:8, 2513:5
**addressed** [1] -
2396:12
**addresses** [1] -
2396:8
**adduce** [1] - 2469:17
**adhere** [1] - 2478:1
**adjourned** [1] - 2533:8
**adjustments** [1] -
2531:12
**administered** [1] -
2484:17
**administering** [1] -
2478:7
**admissibility** [1] -
2510:4
**admission** [14] -
2363:20, 2369:2,
2373:12, 2376:11,
2388:20, 2390:11,
2395:25, 2401:15,
2404:12, 2407:1,
2462:7, 2467:20,
2495:15, 2497:7
**admit** [2] - 2498:7,
2511:4
**admitted** [24] - 2355:6,
2356:9, 2356:12,
2358:10, 2364:21,
2369:6, 2373:16,
2376:15, 2388:25,
2390:19, 2396:4,
2401:21, 2404:18,
2407:6, 2407:18,
2411:1, 2462:23,
2470:5, 2471:4,
2472:24, 2479:24,
2496:3, 2507:13,
2514:10
**admonition** [1] -
2353:17
**advance** [2] - 2371:22,
2505:25
**advice** [1] - 2483:10
**advise** [1] - 2420:5
**advised** [3] - 2443:6,
2447:2, 2447:10
**advisor** [6] - 2352:1,
2352:4, 2486:8,
2486:21, 2487:3,
2487:25
**advisor's** [2] -

2484:24, 2487:2
**Advisors** [1] - 2482:23
**advisors** [1] - 2483:9
**affect** [1] - 2487:24
**affirmatively** [1] -
2346:21
**afternoon** [9] -
2414:14, 2414:15,
2448:3, 2448:4,
2477:8, 2477:9,
2489:14, 2506:13,
2506:14
**afterwards** [3] -
2380:19, 2418:13,
2501:2
**AG** [1] - 2481:1
**Agency** [3] - 2393:20,
2394:14, 2396:19
**agency** [4] - 2394:4,
2394:5, 2394:7,
2400:3
**agent** [1] - 2481:1
**agents** [2] - 2505:13,
2506:6
**aggressive** [1] -
2348:5
**ago** [14] - 2347:18,
2347:23, 2361:9,
2365:14, 2400:4,
2410:19, 2415:1,
2416:10, 2446:12,
2463:6, 2464:20,
2465:23, 2497:17,
2527:4
**agree** [17] - 2381:3,
2382:8, 2388:3,
2403:7, 2429:11,
2433:10, 2435:2,
2438:18, 2441:22,
2442:5, 2448:25,
2473:1, 2495:20,
2497:12, 2504:6,
2505:13, 2505:24
**agreed** [10] - 2356:8,
2356:20, 2380:16,
2403:8, 2429:16,
2445:5, 2452:22,
2503:7, 2504:11,
2504:20
**agreeing** [1] - 2452:14
**Agreement** [3] -
2404:25, 2407:20,
2499:6
**agreement** [110] -
2361:16, 2362:5,
2363:12, 2363:16,
2363:17, 2363:18,
2366:1, 2366:12,
2372:6, 2373:21,
2374:2, 2378:11,

2379:21, 2382:8, 2382:9, 2382:10, 2385:10, 2386:15, 2386:19, 2386:20, 2386:21, 2386:25, 2387:2, 2388:4, 2392:7, 2392:11, 2392:15, 2392:20, 2392:21, 2393:3, 2394:2, 2394:6, 2395:1, 2395:6, 2398:17, 2398:19, 2402:15, 2402:19, 2404:5, 2406:1, 2406:3, 2406:10, 2406:11, 2407:9, 2407:10, 2407:25, 2410:5, 2410:11, 2410:17, 2410:18, 2410:19, 2410:20, 2412:2, 2412:8, 2412:14, 2414:18, 2414:19, 2416:24, 2417:19, 2418:1, 2419:7, 2422:24, 2423:22, 2433:14, 2440:22, 2441:2, 2443:25, 2444:1, 2444:2, 2444:5, 2444:6, 2444:8, 2444:16, 2444:19, 2444:22, 2445:15, 2454:18, 2454:23, 2455:4, 2455:5, 2456:7, 2456:23, 2466:1, 2466:2, 2466:4, 2466:19, 2467:2, 2467:12, 2467:17, 2468:16, 2469:20, 2471:18, 2471:21, 2473:7, 2502:22, 2503:7, 2503:10, 2503:17, 2503:19, 2503:21, 2504:4, 2504:7, 2504:23, 2505:1, 2505:7, 2505:22, 2506:8

**agreements** [3] - 2378:20, 2382:18, 2416:21

**ahead** [2] - 2401:14, 2507:8

**Air** [3] - 2391:8, 2397:14, 2398:3

**air** [1] - 2398:16

**Airpark** [6] - 2382:7, 2382:20, 2382:21, 2383:3, 2384:7, 2433:2

**airplane** [2] - 2381:1, 2421:16

**airport** [1] - 2381:2

**allegation** [2] - 2512:23, 2531:10

**allegations** [1] - 2430:17

**allege** [2] - 2347:25, 2527:13

**alleged** [4] - 2382:10, 2510:22, 2527:16, 2528:23

**alleges** [2] - 2512:5, 2530:2

**alleging** [2] - 2511:17, 2530:19

**alleviating** [1] - 2415:25

**allow** [3] - 2469:21, 2478:7, 2500:21

**allowed** [3] - 2483:7, 2484:21, 2513:3

**allows** [1] - 2482:5

**almost** [5] - 2400:25, 2402:12, 2425:10, 2445:18, 2498:18

**alone** [1] - 2349:16

**Alternate** [1] - 2526:8

**amended** [1] - 2410:11

**America** [5] - 2356:21, 2520:18, 2523:22, 2525:18, 2525:20

**AMERICA** [1] - 2343:3

**American** [1] - 2424:19

**amount** [30] - 2346:24, 2347:20, 2354:20, 2357:13, 2357:15, 2357:16, 2366:7, 2372:9, 2374:18, 2377:20, 2385:2, 2403:5, 2409:20, 2416:17, 2437:14, 2442:6, 2444:25, 2449:4, 2459:1, 2459:15, 2474:8, 2476:1, 2515:3, 2516:9, 2519:13, 2519:15, 2522:1, 2522:17, 2525:15

**amounts** [3] - 2385:4, 2441:11, 2445:1

**analogize** [1] - 2527:13

**Andrew** [2] - 2478:20, 2480:8

**ANDREW** [1] - 2344:4

**animation** [1] - 2446:12

**ANN** [1] - 2344:8

**answer** [11] - 2345:14, 2345:19, 2350:20, 2346:4, 2347:21, 2349:13, 2424:6, 2437:19, 2469:4, 2500:22, 2524:13

**answered** [7] - 2346:21, 2349:9, 2427:7, 2452:19, 2452:24, 2457:19, 2500:19

**answers** [1] - 2346:7

**anticipated** [1] - 2443:19

**anticipating** [1] - 2350:25

**anyway** [1] - 2350:14

**apologize** [5] - 2404:20, 2406:23, 2407:4, 2446:15, 2462:18

**appear** [5] - 2345:25, 2402:8, 2412:17, 2430:5, 2467:11

**APPEARANCES** [1] - 2343:14

**appearances** [1] - 2345:3

**appeared** [1] - 2500:17

**appearing** [1] - 2388:10

**apple** [1] - 2409:7

**application** [1] - 2351:2

**appraised** [2] - 2409:10, 2409:19

**appreciate** [5] - 2353:1, 2353:7, 2409:8, 2532:10, 2532:25

**appreciative** [1] - 2447:21

**approach** [6] - 2376:3, 2419:17, 2431:7, 2449:23, 2467:21, 2509:15

**approached** [3] - 2352:18, 2361:18, 2380:25

**approval** [1] - 2481:12

**approve** [2] - 2439:13, 2439:23

**approved** [1] - 2480:20

**approximate** [1] - 2474:8

**April** [9] - 2388:18, 2393:5, 2406:1,

2450:5, 2450:17, 2452:4, 2452:10, 2464:11, 2528:6

**ARE** [1] - 2385:16

**area** [8] - 2366:16, 2367:5, 2420:4, 2420:10, 2454:9, 2482:20, 2525:23

**argue** [1] - 2350:13

**argument** [5] - 2469:3, 2469:5, 2512:7, 2529:19, 2531:5

**arguments** [1] - 2469:10

**Arizona** [14] - 2359:9, 2381:2, 2391:13, 2398:23, 2398:25, 2400:7, 2400:18, 2400:19, 2401:24, 2401:25, 2448:12, 2459:7, 2465:8, 2499:13

**arranged** [1] - 2362:19

**arrested** [2] - 2429:9, 2452:15

**arrive** [2] - 2503:10, 2518:23

**arrived** [2] - 2345:6, 2518:23

**Article** [1] - 2391:15

**aspect** [1] - 2478:11

**Assante** [3] - 2481:18, 2481:21, 2482:23

**assets** [5] - 2360:9, 2410:9, 2465:5, 2487:5, 2487:11

**assist** [1] - 2450:15

**assistance** [1] - 2416:6

**Assistant** [1] - 2343:18

**assisting** [1] - 2366:24

**associated** [1] - 2377:23

**assume** [3] - 2438:23, 2442:10, 2474:12

**assumed** [1] - 2457:24

**assuming** [2] - 2436:2, 2461:18

**assured** [2] - 2421:19, 2428:7

**AT&T** [1] - 2517:6

**athletes** [1] - 2491:11

**attached** [1] - 2455:4

**attempting** [1] - 2383:4

**attention** [13] - 2351:12, 2361:10,

2365:5, 2377:14, 2407:9, 2412:15, 2424:14, 2426:7, 2458:12, 2515:1, 2515:25, 2517:24, 2518:13

**attorney** [4] - 2372:25, 2393:18, 2453:20, 2453:21

**Attorney** [1] - 2343:16

**attorneys** [1] - 2356:23

**Attorneys** [1] - 2343:18

**attribute** [1] - 2349:21

**August** [17] - 2378:19, 2384:23, 2418:25, 2419:1, 2424:10, 2424:11, 2424:13, 2424:17, 2425:20, 2443:8, 2498:15, 2499:19, 2499:20, 2499:25, 2500:9, 2500:11, 2500:24

**authentic** [1] - 2400:13

**authenticity** [1] - 2510:4

**Authority** [1] - 2477:12

**available** [3] - 2462:11, 2462:18, 2532:2

**Avalon** [56] - 2380:21, 2384:7, 2384:22, 2385:2, 2385:15, 2389:8, 2389:12, 2391:8, 2391:12, 2391:23, 2391:25, 2392:3, 2397:14, 2398:2, 2401:25, 2402:3, 2402:5, 2402:11, 2402:13, 2405:25, 2406:7, 2406:10, 2406:18, 2407:11, 2407:15, 2413:5, 2433:2, 2433:12, 2434:10, 2434:12, 2434:24, 2435:5, 2435:15, 2435:18, 2438:4, 2440:8, 2454:16, 2454:18, 2454:23, 2455:6, 2455:13, 2456:7, 2456:11, 2457:8, 2459:15, 2460:5, 2463:17, 2463:23, 2464:2, 2464:7, 2473:20, 2474:1, 2474:6,

2474:9, 2474:13
**aviation** [1] - 2436:24
**aware** [27] - 2345:17,
2350:1, 2378:1,
2379:4, 2392:15,
2393:25, 2398:1,
2408:22, 2409:10,
2409:19, 2410:7,
2414:22, 2416:3,
2418:5, 2418:11,
2419:9, 2419:16,
2420:11, 2433:25,
2434:11, 2434:15,
2434:16, 2442:17,
2443:3, 2487:23,
2500:2, 2527:20
**AZ** [11] - 2495:5,
2495:7, 2496:8,
2496:10, 2497:4,
2497:14, 2497:19,
2498:1, 2501:4,
2502:23, 2507:21

## B

**backdated** [1] -
2500:10
**background** [2] -
2360:1, 2479:2
**bad** [1] - 2389:14
**Bailey** [5] - 2382:4,
2382:22, 2434:17,
2434:19
**balance** [9] - 2372:8,
2375:18, 2375:23,
2507:24, 2521:22,
2521:24, 2524:23,
2524:25
**ballot** [1] - 2460:8
**Bank** [12] - 2357:2,
2509:5, 2509:7,
2518:5, 2520:7,
2520:18, 2521:3,
2523:6, 2523:7,
2523:22, 2525:18,
2525:20
**bank** [36] - 2354:18,
2355:21, 2355:24,
2356:1, 2357:8,
2357:9, 2357:13,
2357:14, 2357:15,
2376:19, 2379:1,
2415:13, 2422:1,
2424:9, 2463:21,
2466:9, 2468:10,
2468:12, 2468:22,
2471:20, 2486:24,
2494:14, 2496:10,
2496:16, 2496:17,
2496:25, 2497:13,

2497:21, 2500:15,
2512:2, 2514:12,
2514:14, 2516:14,
2524:4, 2524:18
**banking** [2] - 2370:14,
2522:23
**bankruptcy** [29] -
2382:11, 2382:12,
2383:3, 2383:4,
2383:11, 2392:4,
2392:18, 2394:3,
2438:6, 2438:12,
2438:19, 2438:22,
2438:24, 2439:3,
2439:9, 2439:22,
2457:24, 2458:17,
2460:4, 2460:9,
2462:9, 2463:6,
2464:5, 2464:25,
2465:7, 2465:13,
2473:18, 2474:4,
2493:22
**Bankruptcy** [1] -
2391:13
**banks** [3] - 2357:5,
2357:6, 2496:11
**Banks** [3] - 2357:3,
2357:11
**bar** [8] - 2419:18,
2420:1, 2420:17,
2470:4, 2509:17,
2510:1, 2513:12,
2528:6
**bargain** [1] - 2398:15
**Barreth** [1] - 2531:19
**base** [1] - 2351:20
**based** [15] - 2347:4,
2347:25, 2348:17,
2348:19, 2385:9,
2385:12, 2389:6,
2406:6, 2416:21,
2441:24, 2444:20,
2456:12, 2492:14,
2504:9, 2530:18
**basic** [2] - 2352:16,
2480:25
**basis** [4] - 2432:7,
2474:12, 2529:25,
2530:4
**bears** [2] - 2413:13,
2497:24
**became** [10] -
2349:19, 2492:19,
2495:4, 2496:6,
2496:13, 2496:14,
2497:3, 2498:19,
2501:17, 2502:1
**become** [5] - 2409:19,
2452:23, 2492:23,
2493:4, 2494:7

**becoming** [2] -
2494:12, 2496:9
**BEFORE** [1] - 2343:11
**began** [2] - 2383:8,
2481:11
**begin** [2] - 2358:17,
2402:21
**beginning** [1] -
2524:25
**behalf** [11] - 2361:11,
2362:24, 2415:21,
2429:17, 2430:5,
2444:3, 2452:15,
2467:13, 2472:11,
2478:8, 2490:10
**behind** [3] - 2354:12,
2453:6, 2526:6
**belabor** [1] - 2346:14
**belief** [1] - 2418:21
**belly** [2] - 2464:7,
2510:20
**below** [3] - 2481:20,
2520:14, 2520:24
**beneficiaries** [2] -
2424:20, 2501:14
**beneficiary** [4] -
2423:9, 2423:15,
2424:19, 2523:22
**beneficiary's** [3] -
2357:14, 2357:15,
2357:16
**benefit** [7] - 2515:20,
2515:21, 2520:18,
2521:2, 2521:3,
2521:4, 2529:18
**best** [4] - 2430:12,
2467:15, 2497:24,
2533:1
**betrayed** [1] - 2451:17
**between** [9] - 2354:10,
2356:21, 2375:23,
2385:23, 2438:10,
2453:24, 2460:20,
2467:2, 2529:10
**beyond** [6] - 2352:14,
2427:5, 2468:3,
2511:11, 2530:13,
2530:15
**BIANCO** [1] - 2343:12
**big** [3] - 2374:17,
2430:9, 2430:10
**Big** [2] - 2361:20,
2374:8
**bill** [2] - 2385:15,
2517:7
**billing** [1] - 2525:7
**bills** [6] - 2385:11,
2385:24, 2398:10,
2503:4, 2503:11,
2503:14

**bit** [1] - 2358:11
**blacked** [2] - 2509:1,
2514:21
**blank** [1] - 2371:10
**board** [2] - 2501:19,
2502:11
**body** [1] - 2346:25
**bond** [1] - 2485:18
**bonds** [2] - 2485:6,
2485:15
**borrowed** [2] - 2524:6,
2524:8
**bottom** [7] - 2349:25,
2423:1, 2480:12,
2480:14, 2515:10,
2518:13, 2522:12
**bounds** [1] - 2382:24
**branch** [1] - 2484:8
**break** [10] - 2399:9,
2399:13, 2401:2,
2445:18, 2445:20,
2465:20, 2466:9,
2506:13, 2506:14,
2507:20
**brief** [4] - 2351:5,
2381:9, 2399:8,
2497:8
**briefly** [7] - 2364:2,
2366:13, 2369:3,
2394:10, 2404:20,
2405:24, 2509:15
**bring** [8] - 2351:11,
2396:6, 2401:5,
2412:15, 2446:5,
2446:21, 2447:22,
2507:3
**broadly** [1] - 2530:9
**broker** [2] - 2447:8,
2487:25
**broker/dealers** [1] -
2483:6
**brokerage** [1] -
2477:23
**Brothers** [6] - 2379:2,
2379:4, 2379:13,
2443:4, 2443:7,
2472:9
**brothers** [1] - 2411:22
**brought** [1] - 2502:5
**Bruce** [1] - 2531:19
**bucks** [1] - 2385:16
**build** [3] - 2372:21,
2381:1, 2434:9
**build-out** [1] - 2434:9
**builder** [5] - 2385:15,
2387:3, 2389:2,
2440:11, 2440:13
**builders** [1] - 2385:12
**building** [5] - 2387:5,
2434:1, 2434:2,

2441:12, 2441:13
**built** [2] - 2402:16,
2440:14
**bullet** [1] - 2373:25
**business** [20] -
2357:24, 2360:2,
2360:11, 2374:14,
2374:15, 2418:8,
2427:24, 2428:11,
2447:8, 2447:11,
2479:12, 2479:15,
2480:21, 2482:6,
2485:13, 2490:21,
2491:7, 2497:19,
2498:1, 2501:3
**businesses** [1] -
2490:25
**businessman** [1] -
2448:12
**businessperson** [1] -
2430:11
**buy** [5] - 2366:7,
2392:21, 2478:8,
2483:7, 2493:1
**buying** [1] - 2367:8
**BY** [46] - 2343:17,
2343:23, 2359:7,
2364:4, 2388:2,
2408:10, 2414:13,
2421:3, 2422:10,
2448:2, 2454:12,
2455:16, 2457:21,
2458:9, 2463:2,
2466:16, 2471:6,
2472:1, 2472:22,
2473:16, 2474:17,
2477:7, 2480:1,
2488:6, 2489:13,
2490:13, 2494:21,
2495:19, 2496:5,
2497:11, 2498:11,
2499:1, 2507:11,
2514:3, 2534:4,
2534:6, 2534:8,
2534:10, 2534:12,
2534:14, 2534:16,
2534:20, 2535:3,
2535:5, 2535:7,
2535:9

## C

**C-137** [1] - 2449:18
**C-158** [1] - 2453:15
**C-160** [1] - 2458:11
**CALCAGNI** [1] -
2343:21
**candidly** [2] -
2351:21, 2532:18
**cannot** [1] - 2353:5

**capable** [1] - 2522:6
**capacity** [2] - 2413:1, 2480:23
**capital** [17] - 2362:3, 2363:2, 2385:5, 2385:8, 2385:14, 2385:21, 2397:18, 2398:14, 2403:13, 2419:5, 2425:13, 2428:8, 2434:8, 2460:21, 2461:14, 2465:21, 2465:23
**Capital** [3] - 2481:18, 2481:21, 2483:3
**capitalize** [2] - 2362:6, 2362:9
**caption** [1] - 2515:15
**card** [1] - 2492:5
**care** [2] - 2394:20, 2486:10
**cars** [7] - 2359:11, 2359:15, 2359:16, 2359:17, 2359:18, 2428:17
**Casa** [3] - 2520:8, 2520:9, 2520:12
**case** [26] - 2345:2, 2346:11, 2360:13, 2385:11, 2399:10, 2412:1, 2445:22, 2451:15, 2472:11, 2478:20, 2480:8, 2480:16, 2482:13, 2483:15, 2483:25, 2484:14, 2489:20, 2506:15, 2513:6, 2526:5, 2526:7, 2526:13, 2526:16, 2531:10, 2532:4
**cases** [1] - 2447:12
**cash** [2] - 2397:18, 2403:11
**Castro** [1] - 2531:19
**caution** [2] - 2351:23, 2447:12
**cc** [1] - 2373:9
**cc'd** [1] - 2374:24
**cell** [2] - 2517:6, 2517:7
**Central** [5] - 2343:5, 2343:17, 2344:9, 2479:6, 2480:5
**certain** [8] - 2354:10, 2360:11, 2429:4, 2447:17, 2486:23, 2522:1, 2529:17, 2530:12
**certainly** [3] - 2511:4, 2527:19, 2531:11
**certifications** [3] -

2351:17, 2351:19, 2351:21
**certified** [1] - 2462:10
**cetera** [1] - 2463:22
**chain** [1] - 2373:20
**challenges** [2] - 2434:1, 2434:6
**chance** [3] - 2399:20, 2441:17, 2532:16
**change** [1] - 2380:20
**Chapter** [1] - 2438:8
**character** [6] - 2429:11, 2429:17, 2430:5, 2451:13, 2451:15, 2452:23
**characterization** [1] - 2406:22
**charged** [1] - 2487:15
**charges** [1] - 2429:9
**charging** [1] - 2487:12
**Charlie** [3] - 2390:12, 2390:22, 2394:10
**charts** [1] - 2511:24
**check** [1] - 2405:10
**checks** [6] - 2403:16, 2405:8, 2405:14, 2405:15, 2434:8
**Choice** [1] - 2450:10
**choice** [1] - 2450:12
**choose** [1] - 2415:19
**chooses** [1] - 2530:24
**Chris** [1] - 2532:2
**Christopher** [2] - 2409:22, 2410:2
**cites** [1] - 2462:22
**City** [1] - 2491:5
**claim** [4] - 2459:18, 2468:22, 2473:19, 2530:23
**claimed** [1] - 2346:13
**claiming** [8] - 2349:7, 2397:1, 2459:11, 2529:21, 2531:3, 2531:4, 2531:5, 2531:7
**claims** [3] - 2399:24, 2463:21, 2511:7
**clarification** [1] - 2414:25
**clarify** [1] - 2349:17
**classic** [1] - 2359:17
**clear** [5] - 2374:5, 2447:15, 2528:16, 2530:5, 2530:6
**clearly** [5] - 2345:17, 2346:24, 2347:2, 2426:23, 2435:17
**CLERK** [6] - 2354:3, 2401:4, 2401:10, 2446:3, 2507:1,

2507:5
**clerk** [2] - 2401:10, 2462:10
**client** [10] - 2348:13, 2348:17, 2350:13, 2350:18, 2420:12, 2483:10, 2486:18, 2486:19, 2487:14
**clients** [9] - 2478:9, 2485:9, 2485:10, 2485:25, 2486:3, 2486:8, 2528:11, 2528:17, 2530:9
**clip** [1] - 2458:10
**clock** [1] - 2408:12
**close** [11] - 2362:18, 2366:9, 2375:18, 2379:24, 2408:15, 2415:3, 2416:15, 2417:8, 2443:8, 2477:4, 2489:10
**closely** [1] - 2349:22
**closer** [2] - 2359:12, 2359:13
**closing** [18] - 2408:23, 2411:9, 2411:13, 2411:18, 2415:9, 2415:16, 2416:17, 2418:25, 2419:3, 2419:12, 2423:19, 2424:12, 2425:1, 2425:17, 2427:1, 2445:13, 2469:15, 2473:9
**Closter** [2] - 2489:17, 2496:16
**CMG** [24] - 2378:4, 2384:7, 2384:22, 2385:3, 2385:16, 2389:12, 2391:12, 2391:23, 2391:25, 2392:3, 2401:25, 2402:4, 2402:5, 2402:11, 2402:13, 2405:25, 2406:7, 2406:10, 2407:21, 2413:5, 2438:4, 2454:18, 2459:15, 2468:13
**co** [1] - 2421:25
**co-counsel** [1] - 2421:25
**collectively** [2] - 2528:11, 2530:10
**college** [1] - 2483:19
**column** [1] - 2463:20
**coming** [6] - 2353:5, 2399:21, 2420:13, 2442:13, 2470:6, 2483:19

**commenced** [1] - 2348:2
**comment** [1] - 2369:16
**comments** [1] - 2420:5
**commercial** [4] - 2360:10, 2362:22, 2367:16, 2367:22
**Commission** [3] - 2398:23, 2400:8, 2401:24
**commitment** [2] - 2347:3, 2347:15
**commitments** [1] - 2354:15
**committed** [2] - 2395:8, 2410:8
**committing** [1] - 2503:23
**common** [1] - 2414:8
**commonly** [1] - 2477:12
**communicating** [1] - 2449:13
**communication** [3] - 2376:7, 2453:23, 2486:1
**communications** [1] - 2486:11
**companies** [4] - 2359:23, 2367:11, 2451:2, 2475:5
**company** [88] - 2355:19, 2356:3, 2359:11, 2359:15, 2359:19, 2359:22, 2359:23, 2360:5, 2360:8, 2361:19, 2361:24, 2362:4, 2362:6, 2362:9, 2363:4, 2365:8, 2365:21, 2367:11, 2369:19, 2370:2, 2376:21, 2377:3, 2380:22, 2381:6, 2381:8, 2382:15, 2388:14, 2390:24, 2395:8, 2397:19, 2398:5, 2398:8, 2398:11, 2402:1, 2402:18, 2406:19, 2407:12, 2407:21, 2423:12, 2425:12, 2425:13, 2428:16, 2428:19, 2436:24, 2437:2, 2437:12, 2437:16, 2438:15, 2449:5, 2449:7, 2449:8, 2449:10,

2450:15, 2451:24, 2457:4, 2458:24, 2459:3, 2462:2, 2463:12, 2465:8, 2465:17, 2466:6, 2468:14, 2475:1, 2475:3, 2475:9, 2475:22, 2476:2, 2491:18, 2491:22, 2492:4, 2492:5, 2492:20, 2492:24, 2493:1, 2493:11, 2494:13, 2494:17, 2494:22, 2495:4, 2496:6, 2499:13, 2502:17, 2502:18, 2514:16, 2529:14, 2529:15
**Company** [13] - 2362:1, 2362:6, 2365:12, 2367:9, 2368:13, 2368:21, 2377:3, 2377:6, 2377:12, 2380:4, 2453:11, 2453:13, 2467:3
**company's** [1] - 2509:6
**compare** [3] - 2509:9, 2518:7, 2522:8
**compensated** [1] - 2502:25
**compensation** [6] - 2429:1, 2471:17, 2486:25, 2487:2, 2487:4, 2487:7
**complete** [5] - 2415:19, 2416:11, 2417:25, 2445:12, 2529:1
**completed** [1] - 2415:20
**completely** [2] - 2347:2, 2353:2
**complies** [2] - 2409:17, 2410:15
**compliment** [1] - 2532:24
**computer** [1] - 2532:16
**conceded** [4] - 2360:23, 2360:24, 2361:2, 2490:12
**concedes** [1] - 2490:9
**concern** [2] - 2512:12, 2528:21
**concerned** [1] - 2513:2
**concerning** [1] - 2528:24

concluded [2] -
2420:17, 2513:12
conclusion [2] -
2428:5, 2519:1
condition [1] - 2373:8
conditions [3] -
2385:10, 2411:19,
2417:20
condominium [1] -
2433:5
conduct [2] - 2477:22,
2510:12
conducted [4] -
2357:24, 2419:18,
2509:17, 2510:1
conducting [2] -
2497:18, 2498:1
confer [2] - 2376:5,
2390:7
conference [11] -
2383:22, 2419:18,
2420:1, 2420:17,
2422:16, 2432:20,
2502:12, 2502:24,
2509:17, 2510:1,
2513:12
conferences [3] -
2501:18, 2501:21
confirm [1] - 2513:9
confirms [1] - 2350:7
conflict [7] - 2430:11,
2451:16, 2487:17,
2488:1, 2488:3,
2488:7, 2526:1
conflicts [2] - 2487:19
confront [2] -
2399:20, 2512:23
confrontation [1] -
2450:24
confronted [6] -
2420:12, 2421:5,
2450:21, 2451:4,
2451:8, 2451:20
confusion [1] - 2407:4
congratulating [2] -
2452:7, 2452:8
conjunction [1] -
2496:12
connection [11] -
2347:8, 2392:17,
2409:4, 2411:22,
2464:25, 2471:17,
2494:12, 2496:9,
2501:3, 2501:22,
2505:4
consent [1] - 2510:3
consider [1] - 2430:13
consideration [1] -
2529:21
considerations [1] -

2418:9
consolidate [1] -
2511:7
conspiracy [2] -
2527:11, 2527:14
CONSTANTINE [3] -
2343:7, 2446:15,
2446:20
constantine [13] -
2389:24, 2390:1,
2391:24, 2393:2,
2396:24, 2397:7,
2398:1, 2405:21,
2414:17, 2414:22,
2419:3, 2419:10,
2419:15
Constantine [161] -
2344:1, 2356:22,
2360:14, 2360:25,
2361:1, 2361:6,
2361:13, 2361:14,
2361:17, 2362:1,
2362:8, 2362:16,
2362:17, 2365:1,
2365:20, 2366:2,
2366:8, 2367:14,
2367:21, 2367:24,
2369:15, 2369:24,
2372:25, 2374:23,
2374:25, 2377:17,
2377:20, 2378:2,
2378:6, 2378:11,
2380:5, 2380:9,
2380:18, 2380:25,
2382:7, 2382:11,
2382:24, 2386:7,
2386:24, 2387:1,
2388:15, 2389:6,
2394:19, 2398:21,
2399:1, 2403:1,
2403:4, 2403:7,
2404:4, 2404:10,
2404:11, 2405:10,
2406:16, 2406:17,
2407:22, 2413:6,
2413:7, 2413:13,
2416:14, 2420:6,
2421:5, 2421:8,
2421:14, 2422:20,
2423:2, 2423:18,
2424:1, 2424:9,
2424:15, 2424:24,
2426:2, 2426:5,
2426:12, 2426:24,
2427:12, 2427:17,
2427:19, 2428:10,
2428:22, 2429:6,
2429:12, 2430:17,
2430:20, 2432:3,
2432:12, 2434:1,

2435:4, 2435:10,
2435:13, 2435:17,
2435:19, 2435:25,
2436:25, 2437:6,
2437:22, 2438:5,
2438:15, 2438:22,
2439:9, 2440:5,
2441:1, 2441:4,
2441:24, 2442:14,
2442:17, 2442:21,
2442:22, 2443:15,
2444:2, 2444:15,
2445:5, 2445:14,
2446:6, 2446:8,
2448:13, 2448:15,
2449:13, 2450:6,
2450:13, 2450:24,
2451:5, 2451:20,
2453:7, 2453:18,
2453:19, 2453:24,
2454:13, 2454:15,
2455:11, 2455:19,
2455:23, 2456:17,
2456:19, 2457:12,
2461:3, 2461:21,
2463:5, 2464:17,
2464:25, 2465:7,
2471:19, 2473:22,
2473:25, 2474:12,
2475:6, 2475:11,
2489:21, 2489:24,
2490:4, 2490:8,
2491:23, 2491:24,
2492:17, 2501:22,
2502:7, 2502:8,
2502:9, 2502:12,
2529:17
constantine's [1] -
2393:17
Constantine's [11] -
2372:23, 2374:6,
2412:20, 2439:22,
2449:1, 2453:22,
2457:8, 2458:17,
2464:5, 2466:2,
2492:4
construction [1] -
2402:22
consultant [3] -
2436:25, 2490:24,
2491:2
Consulting [1] -
2407:20
consummated [1] -
2397:15
Cont'd [2] - 2421:2,
2534:9
contact [2] - 2353:2,
2429:24
contacted [4] -

2353:3, 2361:17,
2386:8, 2429:22
contain [1] - 2497:13
contained [3] -
2480:14, 2511:19,
2512:7
contemporaneously
[1] - 2357:21
content [2] - 2409:14,
2469:14
contents [2] -
2406:22, 2482:9
context [1] - 2443:24
continually [1] -
2351:8
continue [7] - 2350:8,
2354:8, 2424:20,
2427:18, 2451:23,
2519:4, 2526:5
Continued [8] -
2381:14, 2383:23,
2387:10, 2431:11,
2432:21, 2445:25,
2467:23, 2470:8
continued [7] -
2419:19, 2420:18,
2450:25, 2506:18,
2509:18, 2513:13,
2514:1
CONTINUED [3] -
2388:1, 2507:10,
2514:2
continues [1] -
2483:18
continuing [1] -
2411:23
contract [10] -
2397:14, 2402:21,
2415:19, 2416:2,
2443:17, 2463:21,
2464:1, 2468:19,
2473:19
contribute [3] -
2362:24, 2367:25,
2407:22
contributed [11] -
2369:10, 2389:8,
2389:11, 2398:7,
2406:6, 2408:14,
2408:19, 2408:22,
2414:23, 2427:1,
2428:4
contributing [1] -
2425:16
contribution [20] -
2366:3, 2366:4,
2380:10, 2380:14,
2397:22, 2398:15,
2407:11, 2415:2,
2419:6, 2421:6,

2421:12, 2423:18,
2425:7, 2425:10,
2425:13, 2426:14,
2428:9, 2433:4,
2433:8, 2468:24
contributions [10] -
2365:20, 2383:9,
2384:25, 2385:24,
2397:18, 2427:4,
2435:7, 2463:17,
2465:22, 2465:24
control [2] - 2444:10,
2446:18
conversation [20] -
2348:17, 2348:20,
2367:14, 2375:5,
2375:10, 2376:7,
2386:23, 2389:6,
2389:23, 2393:1,
2420:12, 2420:14,
2434:5, 2435:3,
2448:24, 2451:12,
2460:15, 2461:7,
2461:24, 2500:5
conversations [5] -
2374:25, 2452:16,
2492:7, 2506:1,
2506:3
conversing [1] -
2450:13
convey [2] - 2475:11,
2475:13
conveyed [4] -
2454:14, 2454:15,
2455:12, 2456:16
conveying [1] -
2455:11
convinced [1] -
2529:11
CONWAY [1] - 2344:1
copied [3] - 2373:1,
2373:2, 2453:20
copies [4] - 2353:10,
2357:18, 2405:7,
2405:8
copy [12] - 2363:17,
2364:11, 2364:18,
2373:8, 2373:9,
2376:8, 2449:23,
2454:22, 2458:8,
2467:16, 2508:22,
2508:25
corner [2] - 2514:12,
2521:21
corners [1] - 2512:17
Corporate [1] -
2398:23
corporation [3] -
2398:24, 2426:16,
2426:17

**Corporation** [2] - 2400:7, 2401:24

**correct** [161] - 2353:10, 2362:12, 2365:15, 2365:24, 2365:25, 2366:19, 2367:4, 2372:1, 2372:14, 2372:15, 2374:16, 2377:7, 2379:9, 2379:25, 2390:15, 2390:16, 2391:21, 2391:22, 2392:1, 2392:19, 2393:5, 2393:6, 2394:8, 2394:9, 2394:17, 2394:18, 2394:25, 2395:1, 2396:14, 2397:2, 2397:3, 2397:16, 2398:3, 2398:5, 2398:11, 2398:12, 2401:17, 2401:19, 2404:25, 2405:4, 2405:5, 2405:16, 2405:17, 2407:23, 2408:16, 2408:17, 2408:18, 2408:20, 2409:2, 2411:15, 2411:21, 2412:4, 2412:18, 2412:20, 2412:21, 2412:22, 2412:24, 2413:8, 2415:5, 2415:22, 2416:7, 2416:8, 2416:20, 2417:1, 2417:2, 2417:5, 2417:16, 2417:24, 2418:2, 2418:9, 2418:23, 2418:24, 2423:23, 2423:25, 2426:18, 2429:14, 2429:15, 2433:5, 2433:13, 2434:10, 2436:4, 2438:16, 2439:6, 2439:7, 2441:6, 2441:7, 2441:18, 2442:11, 2443:22, 2443:23, 2445:10, 2445:11, 2445:15, 2445:16, 2450:18, 2450:19, 2451:6, 2452:1, 2452:2, 2452:6, 2452:12, 2452:21, 2454:17, 2455:2, 2455:6, 2455:9, 2455:10, 2455:21, 2456:1, 2456:4, 2456:11, 2456:12, 2456:23, 2456:24, 2456:25, 2457:5,

2457:25, 2460:9, 2460:21, 2460:22, 2461:18, 2461:25, 2463:7, 2463:10, 2463:11, 2463:13, 2463:14, 2463:23, 2463:24, 2464:8, 2464:11, 2464:13, 2465:15, 2467:10, 2472:14, 2473:4, 2473:5, 2473:21, 2474:6, 2475:12, 2476:2, 2476:3, 2476:4, 2481:16, 2482:3, 2483:15, 2483:16, 2484:6, 2494:3, 2495:20, 2497:14, 2497:15, 2498:5, 2498:17, 2501:1, 2514:17, 2514:18, 2515:15, 2515:22, 2516:20, 2526:2

**correctly** [9] - 2361:8, 2371:3, 2386:13, 2392:24, 2413:21, 2415:19, 2438:14, 2441:9, 2444:25

**cost** [2] - 2375:6, 2375:14

**counsel** [8] - 2376:4, 2376:5, 2390:7, 2390:11, 2395:16, 2421:25, 2504:3, 2531:17

**counter** [1] - 2478:5

**counterparts** [2] - 2413:17, 2414:3

**country** [1] - 2448:22

**Country** [1] - 2344:1

**couple** [8] - 2365:4, 2382:23, 2400:4, 2423:19, 2443:9, 2446:12, 2447:13, 2531:22

**course** [9] - 2345:21, 2347:12, 2357:23, 2360:12, 2382:21, 2469:5, 2479:11, 2479:14, 2530:24

**court** [12] - 2353:10, 2384:1, 2421:1, 2429:16, 2433:1, 2439:3, 2457:24, 2462:9, 2462:10, 2463:6, 2465:8, 2471:1

**COURT** [143] - 2343:1, 2345:5, 2348:7, 2348:11, 2348:24,

2350:10, 2351:13, 2351:24, 2352:14, 2353:7, 2353:12, 2353:24, 2354:6, 2355:2, 2355:5, 2355:12, 2356:8, 2356:12, 2356:18, 2358:7, 2358:10, 2358:25, 2360:24, 2361:1, 2363:23, 2364:21, 2369:6, 2373:16, 2376:15, 2378:9, 2381:11, 2383:14, 2383:21, 2384:3, 2388:22, 2388:25, 2390:8, 2390:15, 2390:18, 2391:2, 2396:1, 2396:4, 2399:9, 2399:16, 2400:15, 2400:23, 2401:2, 2401:5, 2401:13, 2401:17, 2401:19, 2401:21, 2404:16, 2404:18, 2407:2, 2407:6, 2408:7, 2411:1, 2413:11, 2414:11, 2420:8, 2420:15, 2422:3, 2422:5, 2422:7, 2423:4, 2424:6, 2431:8, 2432:19, 2436:6, 2437:19, 2445:17, 2445:20, 2446:4, 2446:17, 2446:21, 2447:1, 2447:22, 2447:24, 2448:1, 2452:20, 2455:15, 2457:20, 2462:5, 2462:16, 2462:23, 2467:22, 2468:9, 2469:18, 2469:25, 2470:5, 2471:4, 2471:25, 2472:18, 2473:12, 2474:16, 2476:10, 2476:14, 2476:17, 2476:25, 2477:3, 2479:24, 2488:5, 2488:10, 2488:13, 2488:17, 2488:20, 2488:22, 2489:6, 2489:9, 2490:11, 2496:3, 2498:7, 2498:23, 2500:21, 2506:14, 2507:2, 2507:7, 2509:12, 2509:16, 2510:22, 2510:25, 2512:4, 2512:24, 2513:7, 2518:21, 2519:4,

2524:13, 2525:24, 2526:4, 2526:20, 2526:24, 2527:22, 2528:4, 2529:3, 2530:7, 2531:4, 2531:7, 2531:9, 2532:3, 2532:14, 2532:21, 2532:23

**Court** [12] - 2344:4, 2344:7, 2348:9, 2351:12, 2353:4, 2391:13, 2420:11, 2511:7, 2511:13, 2514:1, 2527:21, 2531:6

**Court's** [2] - 2347:22, 2532:22

**court's** [1] - 2462:11

**Courthouse** [1] - 2343:4

**courtroom** [10] - 2354:5, 2354:14, 2399:11, 2399:14, 2401:9, 2401:11, 2445:24, 2490:6, 2507:6, 2526:18, 2526:23

**cover** [1] - 2487:4

**covered** [3] - 2469:21, 2488:2, 2515:12

**covers** [2] - 2484:12, 2484:19

**crashed** [4] - 2433:19, 2434:25, 2435:5, 2457:10

**CRD** [4] - 2478:19, 2479:6, 2480:3, 2480:4

**created** [5] - 2357:20, 2377:9, 2444:3, 2479:8, 2479:11

**creating** [1] - 2477:25

**creation** [1] - 2374:20

**Credit** [3] - 2428:16, 2450:10, 2450:12

**credit** [9] - 2347:3, 2347:16, 2357:15, 2403:14, 2492:6, 2511:23, 2511:25, 2512:1, 2513:4

**credited** [1] - 2377:4

**crediting** [1] - 2357:14

**creditor** [11] - 2438:18, 2438:22, 2439:2, 2457:23, 2458:3, 2458:17, 2458:19, 2458:24, 2459:12, 2459:23, 2460:1

**creditors** [5] - 2439:3, 2460:3, 2460:4,

2463:9, 2463:10

**credits** [1] - 2377:1

**Credits** [2] - 2508:15, 2518:1

**crime** [4] - 2452:15, 2503:24, 2504:19, 2511:16

**crimes** [1] - 2511:16

**criminal** [1] - 2429:9

**CROSS** [9] - 2388:1, 2408:9, 2414:12, 2421:2, 2473:15, 2534:5, 2534:7, 2534:9, 2534:15

**cross** [7] - 2353:19, 2353:21, 2406:23, 2408:7, 2415:1, 2463:15, 2488:13

**CROSS-EXAMINATION** [4] - 2421:2, 2473:15, 2534:9, 2534:15

**cross-examination** [5] - 2406:23, 2408:7, 2415:1, 2463:15, 2488:13

**crosses** [1] - 2353:22

**current** [2] - 2510:6, 2511:10

**CURRIE** [1] - 2343:15

**cursor** [1] - 2515:12

**custodians** [1] - 2354:18

**custody** [2] - 2357:19, 2357:23

**Customer** [1] - 2499:6

**customers** [4] - 2478:9, 2480:20, 2483:8, 2484:22

**cycle** [2] - 2522:23, 2525:1

## D

**D.C** [1] - 2477:11

**danger** [2] - 2415:18, 2493:24

**Daryll** [2] - 2345:10, 2345:11

**data** [1] - 2354:1

**database** [4] - 2479:5, 2479:8, 2480:6

**date** [22] - 2368:13, 2371:23, 2372:7, 2374:8, 2374:12, 2393:4, 2393:6, 2397:2, 2399:18, 2402:8, 2415:16, 2421:20, 2426:20, 2481:8, 2499:9,

2499:25, 2500:3, 2515:1, 2520:20, 2523:15, 2525:13
**dated** [7] - 2346:18, 2363:13, 2405:11, 2405:15, 2498:15, 2498:20, 2499:18
**dates** [6] - 2384:12, 2388:16, 2402:7, 2426:3, 2481:3, 2482:18
**days** [9] - 2372:7, 2372:10, 2374:11, 2374:13, 2400:4, 2419:6, 2423:22, 2425:7, 2516:22
**deal** [15] - 2348:3, 2419:10, 2427:24, 2435:15, 2436:14, 2436:18, 2436:19, 2436:20, 2441:16, 2443:13, 2443:21, 2443:24, 2445:6, 2445:13, 2532:23
**dealers** [1] - 2483:11
**dealing** [2] - 2420:10, 2485:25
**dealings** [1] - 2361:12
**deals** [1] - 2360:13
**dealt** [2] - 2486:4, 2486:5
**debit** [2] - 2357:10, 2492:5
**debiting** [1] - 2357:12
**debits** [2] - 2423:2, 2424:15
**debt** [2] - 2463:21, 2494:5
**debtor** [1] - 2465:3
**debts** [1] - 2423:3
**December** [3] - 2507:25, 2508:2, 2508:5
**decibel** [1] - 2346:3
**decide** [1] - 2532:9
**decided** [2] - 2430:4, 2530:25
**deciding** [2] - 2494:10, 2532:4
**decision** [4] - 2367:20, 2486:13, 2487:22, 2532:22
**deed** [5] - 2417:21, 2417:23, 2418:5, 2418:15, 2418:22
**defendant** [6] - 2351:18, 2382:18, 2382:24, 2400:5, 2502:4, 2529:10
**Defendant** [4] -

2343:21, 2344:1, 2411:2, 2537:3
**defendant's** [1] - 2400:5
**defendants** [7] - 2356:21, 2360:13, 2361:5, 2370:7, 2489:20, 2528:9, 2529:16
**Defendants** [1] - 2343:9
**defending** [2] - 2511:9, 2511:10
**defense** [6] - 2346:10, 2347:7, 2347:9, 2513:6, 2527:19, 2532:5
**defer** [1] - 2532:22
**define** [2] - 2488:8, 2530:8
**defined** [1] - 2511:19
**defraud** [1] - 2529:9
**degree** [1] - 2486:2
**degrees** [1] - 2360:1
**deliberations** [1] - 2355:13
**denial** [1] - 2440:3
**deny** [1] - 2350:15
**Deposit** [1] - 2508:14
**deposit** [16] - 2389:19, 2389:21, 2391:17, 2392:6, 2394:8, 2395:9, 2397:1, 2409:1, 2508:9, 2514:7, 2518:4, 2518:15, 2522:4, 2522:21, 2522:25, 2523:11
**deposited** [6] - 2501:6, 2508:15, 2508:17, 2518:1, 2518:25, 2519:5
**depositing** [2] - 2515:2, 2518:17
**deposition** [1] - 2409:4
**Depository** [2] - 2479:6, 2480:5
**deposits** [4] - 2376:25, 2377:4, 2397:1, 2522:1
**Deposits** [1] - 2517:25
**depreciated** [2] - 2436:3, 2436:4
**deputy** [1] - 2447:1
**describe** [3] - 2347:20, 2439:19, 2477:18
**described** [1] - 2429:1
**describing** [2] -

2416:10, 2432:13
**Description** [1] - 2391:20
**designated** [2] - 2367:16, 2368:5
**designations** [1] - 2481:14
**designed** [1] - 2441:10
**detail** [1] - 2486:7
**determination** [1] - 2442:9
**determine** [2] - 2346:6, 2358:17
**develop** [1] - 2381:1
**development** [4] - 2379:5, 2411:23, 2444:11, 2444:13
**diagram** [1] - 2417:5
**dichotomy** [1] - 2430:9
**difference** [4] - 2438:10, 2460:16, 2460:20, 2460:24
**different** [8] - 2349:14, 2432:12, 2485:17, 2485:18, 2485:19, 2485:22, 2512:3, 2525:23
**difficult** [1] - 2363:6
**difficulties** [1] - 2434:6
**digest** [1] - 2532:17
**dime** [1] - 2397:21
**diminished** [1] - 2434:13
**dire** [4] - 2364:2, 2495:16, 2497:8, 2527:5
**DIRE** [7] - 2364:3, 2495:18, 2497:10, 2498:10, 2535:4, 2535:6, 2535:8
**direct** [20] - 2345:11, 2345:21, 2346:22, 2347:1, 2347:4, 2353:21, 2361:10, 2377:14, 2401:1, 2408:13, 2411:13, 2411:17, 2415:1, 2426:7, 2458:12, 2468:4, 2468:8, 2471:13, 2515:25, 2521:7
**DIRECT** [8] - 2359:6, 2477:6, 2489:12, 2507:10, 2514:2, 2534:3, 2534:19, 2535:2
**directed** [4] - 2501:16,

2520:11, 2523:23, 2525:19
**directing** [4] - 2365:5, 2424:14, 2515:1, 2517:24
**direction** [1] - 2347:22
**directly** [4] - 2350:19, 2468:16, 2469:20, 2471:15
**directors** [1] - 2501:19
**dirty** [1] - 2428:19
**disapprove** [1] - 2439:13
**disciplinary** [1] - 2478:2
**disclose** [4] - 2347:24, 2349:7, 2350:3, 2350:4
**disclosed** [3] - 2487:9, 2487:14, 2487:20
**discloses** [1] - 2456:25
**disclosure** [4] - 2391:12, 2486:4, 2486:12, 2487:21
**discovered** [1] - 2380:9
**discovery** [1] - 2347:9
**discrepancy** [1] - 2347:20
**discuss** [11] - 2350:17, 2399:10, 2425:24, 2430:16, 2445:22, 2446:6, 2446:10, 2506:15, 2526:13, 2526:16, 2532:15
**discussed** [8] - 2348:13, 2348:18, 2425:4, 2426:25, 2443:2, 2445:5, 2450:6, 2518:21
**discusses** [1] - 2394:11
**discussing** [7] - 2368:18, 2428:3, 2451:23, 2452:4, 2457:10, 2457:12, 2460:16
**discussion** [13] - 2350:19, 2362:15, 2369:25, 2399:15, 2406:2, 2421:8, 2426:12, 2435:13, 2442:21, 2442:25, 2446:11, 2448:20, 2513:10
**discussions** [2] - 2370:3, 2435:10

**display** [1] - 2508:24
**dispute** [1] - 2400:16
**DISTRICT** [2] - 2343:1, 2343:1
**District** [2] - 2343:12, 2391:13
**diversion** [3] - 2383:12, 2383:15, 2529:23
**diversions** [2] - 2382:5, 2510:17
**diverted** [2] - 2512:6, 2529:17
**divided** [1] - 2380:3
**division** [1] - 2362:3
**divvying** [1] - 2380:1
**document** [82] - 2345:24, 2346:23, 2347:14, 2347:18, 2349:4, 2349:5, 2349:7, 2350:3, 2363:10, 2363:14, 2364:5, 2364:7, 2368:22, 2369:22, 2388:3, 2388:8, 2388:11, 2390:14, 2391:14, 2392:24, 2399:18, 2399:23, 2400:13, 2400:14, 2400:20, 2400:24, 2401:9, 2401:24, 2406:5, 2406:8, 2406:23, 2407:2, 2409:1, 2409:13, 2409:14, 2409:15, 2409:25, 2410:13, 2412:17, 2413:15, 2414:5, 2424:23, 2425:19, 2439:18, 2449:19, 2454:2, 2454:10, 2455:1, 2455:9, 2456:6, 2456:10, 2456:12, 2457:3, 2458:18, 2458:23, 2459:4, 2459:17, 2469:7, 2469:9, 2469:11, 2469:13, 2469:14, 2469:18, 2469:19, 2472:23, 2473:2, 2473:3, 2473:6, 2494:25, 2495:3, 2495:25, 2496:25, 2497:12, 2497:13, 2497:21, 2498:15, 2498:20, 2499:11, 2499:22, 2500:14, 2530:7
**Document** [1] - 2346:23

**documentation** [8] -
2421:9, 2421:18,
2421:20, 2423:17,
2432:2, 2446:7,
2486:15, 2486:17
**documentations** [1] -
2425:6
**documented** [2] -
2456:13, 2456:14
**documents** [28] -
2345:12, 2345:14,
2345:16, 2346:12,
2346:13, 2346:14,
2346:16, 2346:20,
2347:7, 2347:24,
2348:1, 2349:1,
2349:2, 2354:11,
2355:22, 2356:5,
2414:2, 2428:8,
2430:24, 2432:6,
2432:13, 2432:16,
2432:17, 2457:24,
2462:23, 2499:4,
2505:16, 2512:20
**Doe** [12] - 2510:16,
2510:17, 2511:6,
2512:10, 2527:23,
2528:1, 2528:3,
2528:12, 2528:13,
2528:16, 2529:11
**Doe/victims** [1] -
2512:19
**Dog** [2] - 2423:12,
2426:10
**dog** [2] - 2466:10,
2468:13
**dollar** [2] - 2362:20,
2421:12
**dollars** [9] - 2368:7,
2377:5, 2379:23,
2396:25, 2398:7,
2416:23, 2417:9,
2418:20, 2445:2
**Domestic** [1] -
2515:14
**done** [7] - 2350:14,
2350:24, 2418:7,
2445:18, 2446:13,
2493:15, 2532:11
**dot.com** [1] - 2428:20
**dovetails** [1] - 2382:3
**down** [10] - 2416:1,
2424:20, 2476:10,
2476:13, 2482:17,
2488:17, 2488:19,
2510:11, 2512:1,
2526:20
**downturn** [1] -
2434:14
**drafted** [1] - 2444:3

**drawn** [1] - 2512:1
**drop** [1] - 2458:20
**dropping** [1] - 2436:8
**due** [9] - 2372:7,
2372:10, 2374:11,
2375:18, 2385:11,
2385:12, 2410:9,
2469:5, 2482:4
**duly** [3] - 2359:4,
2476:22, 2489:3
**during** [11] - 2345:11,
2345:20, 2355:12,
2384:18, 2399:24,
2411:12, 2414:1,
2419:15, 2421:8,
2433:10, 2484:13
**duty** [2] - 2486:7,
2486:8

# E

**e-mail** [23] - 2350:8,
2352:22, 2369:15,
2372:25, 2373:4,
2373:8, 2373:9,
2373:20, 2374:6,
2374:24, 2395:18,
2395:20, 2395:21,
2395:22, 2396:2,
2396:7, 2396:8,
2396:17, 2397:8,
2453:17, 2453:23,
2454:1, 2521:9
**e-mailed** [1] - 2392:24
**e-mails** [2] - 2352:19,
2449:14
**earliest** [1] - 2384:21
**early** [4] - 2346:11,
2361:8, 2483:18,
2490:17
**earned** [1] - 2437:12
**earnest** [8] - 2382:14,
2383:13, 2389:18,
2389:21, 2391:7,
2392:6, 2395:8,
2416:1
**East** [1] - 2459:7
**EASTERN** [1] - 2343:1
**Edenholm's** [1] -
2382:4
**edited** [1] - 2353:5
**education** [2] -
2479:2, 2483:22
**effect** [4] - 2345:25,
2472:9, 2492:11,
2502:20
**efficient** [1] - 2354:16
**efforts** [4] - 2387:3,
2417:17, 2417:20,
2428:25

**either** [12] - 2360:10,
2360:13, 2361:12,
2386:15, 2445:9,
2471:20, 2478:22,
2483:6, 2483:8,
2489:20, 2491:12,
2521:8
**elected** [1] - 2348:19
**electronic** [4] -
2357:18, 2357:20,
2357:21, 2358:1
**electronically** [2] -
2357:5, 2479:3
**elicit** [1] - 2531:14
**elicited** [1] - 2347:2
**emotions** [1] -
2446:18
**emphasize** [4] -
2354:11, 2354:21,
2526:11, 2526:12
**employed** [1] - 2357:1
**employer** [1] -
2481:17
**employers** [1] -
2481:15
**employment** [10] -
2447:14, 2479:2,
2482:8, 2482:13,
2482:15, 2482:18,
2483:17, 2483:22,
2484:4
**enables** [1] - 2357:5
**end** [8] - 2363:14,
2363:15, 2366:11,
2372:11, 2382:20,
2398:15, 2404:5,
2513:10
**End** [2] - 2383:22,
2432:20
**ended** [1] - 2481:12
**enforcement** [3] -
2429:22, 2504:24,
2505:4
**engage** [1] - 2481:4
**enter** [7] - 2354:17,
2361:11, 2386:21,
2402:15, 2405:25,
2441:1, 2478:23
**entered** [14] - 2353:9,
2366:1, 2375:15,
2386:14, 2402:19,
2414:18, 2416:2,
2416:24, 2418:4,
2418:16, 2441:16,
2443:17, 2471:21,
2504:3
**enters** [4] - 2354:4,
2401:11, 2483:20,
2507:6
**entertainers** [1] -

2491:11
**entire** [8] - 2367:1,
2367:17, 2372:7,
2407:8, 2410:17,
2468:20, 2475:19
**entirety** [2] - 2355:13
**entitled** [5] - 2401:24,
2404:24, 2484:3,
2484:10, 2499:11
**entity** [6] - 2399:2,
2402:25, 2413:2,
2453:6, 2465:3,
2465:4
**entrepreneur** [1] -
2413:23
**entrepreneurship** [1]
- 2414:1
**entries** [1] - 2479:8
**entry** [2] - 2481:12,
2519:12
**envision** [1] - 2468:4
**equal** [1] - 2374:11
**equation** [1] - 2430:13
**equity** [17] - 2433:22,
2434:2, 2434:12,
2435:5, 2435:11,
2437:11, 2441:11,
2441:13, 2454:14,
2455:20, 2457:15,
2464:17, 2465:9,
2465:17, 2475:15,
2492:20
**equivalent** [1] -
2484:19
**error** [2] - 2508:19,
2508:24
**escrow** [6] - 2375:24,
2382:14, 2394:12,
2396:19, 2403:10,
2424:21
**essence** [1] - 2367:25
**essentially** [1] -
2396:17
**establish** [2] -
2351:25, 2399:22
**established** [2] -
2352:7, 2532:19
**estate** [2] - 2433:17,
2457:9
**estimate** [3] -
2353:18, 2353:19,
2354:12
**estimates** [1] -
2353:17
**et** [1] - 2463:21
**Eufora** [54] - 2491:19,
2491:22, 2492:4,
2492:12, 2492:16,
2492:21, 2492:24,
2493:4, 2493:11,

2494:13, 2495:5,
2495:7, 2496:8,
2496:10, 2497:4,
2497:14, 2497:19,
2498:1, 2499:12,
2501:4, 2501:19,
2501:23, 2502:1,
2502:13, 2502:14,
2502:21, 2502:23,
2505:5, 2507:22,
2509:7, 2510:8,
2510:19, 2512:6,
2513:2, 2514:7,
2514:15, 2514:19,
2518:6, 2518:11,
2518:17, 2518:23,
2518:24, 2519:7,
2522:10, 2522:13,
2523:8, 2523:13,
2527:1, 2529:6,
2529:13, 2529:15,
2529:23, 2530:3
**Eufora's** [1] - 2515:2
**euphemism** [1] -
2531:1
**evening** [1] - 2350:21
**event** [3] - 2385:10,
2486:12, 2504:12
**events** [3] - 2411:10,
2486:3, 2487:22
**evidence** [70] -
2346:12, 2352:25,
2355:1, 2355:6,
2355:9, 2355:17,
2356:7, 2356:13,
2356:15, 2358:5,
2358:22, 2364:23,
2369:8, 2371:5,
2373:18, 2376:17,
2389:1, 2390:21,
2393:11, 2396:5,
2400:4, 2401:22,
2401:23, 2404:19,
2407:7, 2407:18,
2411:3, 2412:9,
2412:15, 2422:7,
2422:9, 2422:18,
2454:22, 2462:25,
2469:14, 2469:16,
2471:5, 2472:24,
2479:21, 2479:25,
2496:4, 2498:24,
2498:25, 2499:11,
2505:17, 2507:13,
2509:10, 2511:21,
2514:10, 2517:16,
2518:9, 2518:14,
2521:16, 2522:8,
2524:17, 2531:14,
2536:2, 2536:4,

2536:6, 2536:7, 2536:8, 2536:9, 2536:11, 2536:19, 2536:21, 2536:22, 2536:23, 2536:24, 2536:25

**Evidence** [2] - 2462:9, 2462:22

**exact** [2] - 2384:11, 2490:18

**exactly** [3] - 2373:7, 2481:22, 2519:15

**exam** [7] - 2447:17, 2482:5, 2484:10, 2484:16, 2484:17, 2484:24, 2487:3

**EXAMINATION** [28] - 2359:6, 2364:3, 2388:1, 2408:9, 2414:12, 2421:2, 2463:1, 2472:21, 2473:15, 2477:6, 2489:12, 2495:18, 2497:10, 2498:10, 2507:10, 2514:2, 2534:3, 2534:5, 2534:7, 2534:9, 2534:11, 2534:13, 2534:15, 2534:19, 2535:2, 2535:4, 2535:6, 2535:8

**examination** [11] - 2345:11, 2345:21, 2347:1, 2348:2, 2406:23, 2408:7, 2415:1, 2463:15, 2468:4, 2468:8, 2488:13

**examine** [1] - 2453:15

**examined** [3] - 2359:4, 2476:22, 2489:3

**examples** [1] - 2488:1

**exams** [13] - 2447:17, 2447:18, 2478:7, 2484:25, 2485:4, 2485:16, 2486:1, 2486:2, 2486:15, 2486:25, 2487:14, 2487:18, 2488:7

**excess** [1] - 2487:15

**excessive** [1] - 2487:8

**Exchange** [1] - 2485:23

**exchange** [3] - 2370:21, 2407:12, 2529:14

**exchanged** [1] - 2403:13

**exchanging** [1] -

2451:25

**exclusive** [1] - 2527:9

**excuse** [2] - 2526:4, 2526:7

**excused** [2] - 2506:16, 2526:12

**execute** [2] - 2387:1, 2441:2

**executed** [7] - 2363:17, 2379:22, 2454:19, 2455:1, 2455:9, 2456:6, 2528:10

**execution** [1] - 2471:17

**Exhibit** [82] - 2346:19, 2354:25, 2355:8, 2355:17, 2355:20, 2355:21, 2356:6, 2358:6, 2358:21, 2363:9, 2364:22, 2368:15, 2369:7, 2369:11, 2372:17, 2373:17, 2376:16, 2376:25, 2384:15, 2388:7, 2389:1, 2390:12, 2390:19, 2390:20, 2390:22, 2393:12, 2395:15, 2395:18, 2396:5, 2396:6, 2401:16, 2401:22, 2403:23, 2403:24, 2404:19, 2407:7, 2407:9, 2407:18, 2408:25, 2409:13, 2410:12, 2410:23, 2411:1, 2411:2, 2412:9, 2413:12, 2422:8, 2426:5, 2471:5, 2479:25, 2496:4, 2498:25, 2507:14, 2508:14, 2508:22, 2509:10, 2514:11, 2514:25, 2517:17, 2518:8, 2519:11, 2522:20, 2523:17, 2524:18, 2536:1, 2536:5, 2536:7, 2536:8, 2536:9, 2536:10, 2536:12, 2536:13, 2536:14, 2536:15, 2536:16, 2536:17, 2536:18, 2536:22, 2536:23, 2536:24, 2536:25, 2537:3

**exhibit** [16] - 2355:16, 2366:11, 2385:5, 2386:2, 2390:23,

2400:3, 2424:15, 2447:7, 2456:2, 2464:12, 2509:10, 2510:3, 2514:4, 2516:1, 2522:9, 2523:18

**Exhibits** [11] - 2355:23, 2355:25, 2356:2, 2356:4, 2356:14, 2357:17, 2358:2, 2462:8, 2462:24, 2536:3, 2536:20

**exhibits** [11] - 2356:7, 2356:9, 2356:12, 2358:10, 2388:23, 2431:1, 2466:8, 2466:11, 2466:14, 2478:13, 2511:22

**exits** [1] - 2445:23

**exotic** [1] - 2359:18

**expansion** [1] - 2403:15

**Expansion** [30] - 2361:24, 2362:25, 2363:12, 2365:11, 2368:12, 2368:24, 2370:21, 2377:9, 2377:24, 2378:10, 2378:18, 2378:23, 2379:11, 2379:15, 2379:24, 2380:10, 2407:23, 2444:3, 2444:10, 2465:22, 2466:17, 2467:2, 2467:6, 2467:13, 2468:24, 2469:2, 2471:21, 2472:3, 2472:7, 2472:11

**expected** [1] - 2351:17

**expert** [6] - 2351:3, 2351:10, 2351:16, 2351:22, 2352:9, 2353:3

**expertise** [1] - 2351:5

**expiration** [1] - 2371:23

**explain** [11] - 2385:7, 2416:13, 2435:24, 2438:25, 2440:25, 2480:12, 2480:13, 2482:9, 2484:11, 2503:20, 2521:10

**explained** [1] - 2511:24

**explaining** [1] - 2434:5

**expression** [1] - 2400:5

**extend** [1] - 2415:15

**extended** [1] - 2370:25

**extensive** [1] - 2468:5

**extent** [7] - 2350:1, 2498:23, 2504:18, 2510:11, 2511:10, 2512:7, 2530:17

**extra** [1] - 2458:8

## F

**faced** [1] - 2434:1

**facility** [1] - 2358:3

**fact** [34] - 2350:8, 2352:8, 2352:23, 2376:8, 2376:24, 2383:3, 2383:19, 2389:21, 2395:22, 2419:9, 2421:10, 2425:16, 2427:4, 2429:19, 2436:9, 2438:21, 2451:23, 2452:3, 2454:21, 2457:3, 2458:16, 2461:20, 2465:22, 2467:11, 2475:22, 2495:11, 2495:22, 2500:8, 2506:3, 2511:15, 2511:17, 2524:10, 2527:9, 2528:8

**factors** [1] - 2418:4

**failed** [2] - 2447:18

**failure** [1] - 2478:1

**fair** [13] - 2364:11, 2373:24, 2397:13, 2406:22, 2427:21, 2436:11, 2450:14, 2486:4, 2490:14, 2493:19, 2504:20, 2517:8, 2529:22

**faith** [1] - 2417:21

**familiar** [9] - 2379:1, 2380:21, 2410:18, 2433:20, 2477:16, 2482:24, 2491:18, 2491:22, 2494:22

**familiarize** [1] - 2363:10

**family** [2] - 2452:1, 2494:3

**far** [3] - 2468:3, 2513:2, 2524:3

**fashion** [2] - 2400:2, 2403:20

**fault** [1] - 2350:23

**favor** [5] - 2368:23, 2493:12, 2494:7, 2494:10, 2503:8

**favors** [3] - 2493:15, 2493:17, 2494:8

**fax** [1] - 2521:9

**February** [2] - 2518:24, 2529:10

**Fed** [2] - 2357:4, 2357:19, 2357:23

**Fed's** [2] - 2357:24, 2358:3

**federal** [1] - 2506:6

**Federal** [8] - 2343:16, 2344:8, 2357:2, 2357:3, 2357:11, 2462:8, 2462:22

**Fedwire** [3] - 2357:4, 2357:7, 2357:18

**fee** [5] - 2377:23, 2378:4, 2378:12, 2487:5

**fees** [2] - 2371:17, 2525:7

**felt** [3] - 2426:25, 2494:11, 2532:24

**few** [6] - 2411:16, 2415:1, 2416:10, 2441:14, 2503:14, 2520:4

**fiduciary** [1] - 2486:8

**file** [2] - 2483:21, 2493:22

**filed** [6] - 2391:12, 2438:6, 2464:10, 2465:13, 2512:20

**filing** [2] - 2460:8, 2460:12, 2463:6

**filings** [3] - 2399:3, 2438:22, 2462:9

**filled** [2] - 2499:4, 2499:22

**final** [7] - 2371:22, 2405:20, 2418:15, 2443:16, 2473:7, 2481:8

**finally** [4] - 2405:24, 2418:5, 2484:23, 2487:17

**finance** [1] - 2374:15

**finances** [2] - 2359:11, 2359:15

**Financial** [2] - 2477:11, 2480:18

**financial** [9] - 2352:1, 2352:3, 2361:12, 2472:3, 2472:4, 2472:6, 2485:11, 2493:20, 2503:13

**financially** [1] - 2522:6

**finish** [2] - 2452:13, 2531:25

finished [1] - 2400:25
**FINRA** [20] - 2351:20, 2447:9, 2477:13, 2477:18, 2477:21, 2478:3, 2478:6, 2478:25, 2479:4, 2479:5, 2479:7, 2480:6, 2480:21, 2480:23, 2480:24, 2481:5, 2481:10, 2481:12, 2483:1, 2484:16
**FINRA's** [3] - 2477:16, 2479:11, 2479:14
**firm** [3] - 2349:19, 2478:23, 2480:16
**firms** [9] - 2352:7, 2477:23, 2477:24, 2482:22, 2482:24, 2483:1, 2483:5, 2483:6, 2484:7
**first** [28] - 2359:3, 2361:5, 2379:13, 2393:1, 2403:14, 2411:5, 2448:8, 2476:21, 2480:13, 2481:10, 2484:14, 2485:14, 2486:9, 2489:2, 2489:15, 2490:14, 2491:21, 2499:3, 2499:19, 2499:20, 2499:25, 2505:3, 2507:16, 2508:13, 2512:4, 2514:12, 2515:17, 2523:3
**First** [1] - 2424:19
**five** [10] - 2345:14, 2348:19, 2353:18, 2372:3, 2384:10, 2426:15, 2428:2, 2443:1, 2443:21, 2456:9
**five-week** [1] - 2353:18
**five-year** [2] - 2443:1, 2443:21
**fixed** [2] - 2487:4, 2492:5
**flow** [1] - 2511:23
**focus** [5] - 2404:22, 2478:10, 2507:14, 2518:13, 2529:4
**focusing** [3] - 2407:9, 2464:23, 2485:14
**followed** [1] - 2436:2
**following** [8] - 2372:10, 2381:12, 2411:18, 2427:21, 2431:9, 2468:1,

2471:1, 2482:6
**follows** [4] - 2347:17, 2359:5, 2476:23, 2489:4
**foreclose** [1] - 2387:4
**foreclosure** [9] - 2382:6, 2382:9, 2383:10, 2387:2, 2388:4, 2392:16, 2393:2, 2395:4, 2441:3
**foregoing** [3] - 2356:6, 2356:14, 2536:3
**forestall** [4] - 2392:16, 2392:17, 2395:4, 2441:3
**forged** [5] - 2346:13, 2348:1, 2349:2, 2349:7, 2349:11
**forgery** [2] - 2346:22, 2347:21
**forget** [1] - 2447:1
**form** [11] - 2358:18, 2426:17, 2436:15, 2437:15, 2471:25, 2473:7, 2482:17, 2483:21, 2485:8, 2485:20, 2487:20
**formation** [5] - 2362:4, 2362:25, 2365:8, 2365:11, 2365:21
**formed** [3] - 2361:24, 2426:15, 2465:3
**former** [1] - 2379:1
**forms** [1] - 2487:4
**forth** [2] - 2353:23, 2484:2
**forward** [1] - 2354:21
**founder** [1] - 2436:25
**four** [9] - 2345:14, 2346:14, 2348:1, 2353:18, 2353:22, 2359:20, 2371:15, 2512:17, 2531:18
**four-week** [1] - 2353:18
**frame** [2] - 2400:24, 2452:25
**frankly** [3] - 2412:15, 2513:1, 2530:3
**fraud** [2] - 2511:12, 2528:8
**fraudulently** [3] - 2528:10, 2530:9
**free** [2] - 2349:17, 2458:15
**Freedom** [1] - 2483:3
**fresh** [1] - 2353:24

**friend** [3] - 2430:10, 2451:16, 2490:20
**friends** [7] - 2427:25, 2428:6, 2428:7, 2451:6, 2451:9, 2451:21, 2452:14
**front** [6] - 2351:8, 2373:20, 2409:25, 2439:3, 2511:17, 2528:4
**full** [8] - 2372:9, 2374:12, 2378:21, 2403:19, 2411:19, 2411:25, 2486:4, 2486:12
**function** [1] - 2502:21
**Fund** [4] - 2382:5, 2382:13, 2382:16, 2383:12
**fund** [5] - 2382:16, 2396:18, 2443:7, 2462:2, 2466:6
**fund-raising** [1] - 2382:16
**funding** [11] - 2379:5, 2407:19, 2407:25, 2415:7, 2428:18, 2442:18, 2442:22, 2443:4, 2450:10, 2450:11, 2450:15
**funds** [17] - 2357:5, 2357:22, 2358:1, 2366:21, 2368:5, 2408:23, 2486:18, 2501:6, 2501:8, 2501:10, 2509:7, 2517:12, 2518:1, 2518:5, 2520:24, 2521:10, 2525:12
**Funds** [3] - 2357:4, 2357:7, 2357:18
**future** [1] - 2418:22
**fuzzy** [1] - 2366:14

# G

**G-A-A-R-N** [1] - 2489:8
**Gaarn** [15] - 2488:21, 2489:8, 2489:9, 2489:14, 2489:15, 2493:19, 2496:21, 2497:12, 2503:17, 2507:12, 2515:21, 2517:19, 2523:24, 2526:20, 2531:19
**gaarn** [1] - 2488:22
**GAARN** [2] - 2489:1, 2535:1
**gain** [1] - 2461:14

**gains** [1] - 2460:21
**Galioto** [3] - 2430:1, 2430:14, 2430:16
**GDM** [2] - 2423:9, 2423:15
**general** [5] - 2480:24, 2484:16, 2529:5, 2529:24, 2529:25
**generally** [3] - 2477:18, 2487:11, 2517:2
**gentleman** [2] - 2387:8, 2428:18
**gentlemen** [1] - 2525:24
**given** [5] - 2346:2, 2346:8, 2398:13, 2492:18, 2511:14
**glad** [2] - 2420:8, 2420:9
**Glen** [8] - 2510:6, 2510:10, 2510:13, 2515:6, 2515:7, 2518:19, 2519:10
**Glenn** [2] - 2511:12, 2526:24
**global** [1] - 2383:18
**Global** [5] - 2382:4, 2382:5, 2382:13, 2382:16, 2482:23
**GMC** [2] - 2380:21, 2473:20
**Gold** [1] - 2356:24
**Google** [3] - 2352:22, 2353:2, 2353:5
**govern** [1] - 2477:22
**governed** [1] - 2466:19
**government** [41] - 2369:1, 2373:11, 2388:19, 2390:11, 2395:24, 2401:15, 2404:12, 2406:25, 2462:7, 2462:17, 2462:21, 2463:21, 2467:19, 2469:4, 2469:8, 2469:10, 2469:16, 2476:15, 2479:20, 2495:14, 2497:6, 2503:18, 2503:22, 2504:6, 2504:10, 2504:19, 2504:23, 2505:10, 2505:13, 2511:3, 2511:6, 2512:10, 2519:1, 2528:19, 2529:4, 2530:2, 2530:8, 2530:19, 2530:21, 2530:24, 2530:25
**government's** [2] - 2496:20, 2532:15
**Government's** [32] - 2349:19, 2351:11, 2354:24, 2355:17, 2355:20, 2355:21, 2355:23, 2355:25, 2356:2, 2356:4, 2356:6, 2358:6, 2363:9, 2368:15, 2369:11, 2372:16, 2384:15, 2393:12, 2395:15, 2407:18, 2421:21, 2422:8, 2462:7, 2463:4, 2472:24, 2507:14, 2514:11, 2514:25, 2515:24, 2517:17, 2522:8, 2536:18

**Government** [83] - 2343:15, 2345:23, 2347:1, 2347:5, 2347:10, 2347:11, 2347:13, 2347:14, 2347:22, 2347:23, 2348:4, 2349:1, 2349:17, 2349:25, 2350:22, 2350:23, 2351:6, 2351:13, 2354:9, 2355:8, 2356:14, 2357:17, 2358:2, 2358:5, 2358:19, 2358:21, 2358:23, 2363:19, 2364:22, 2369:7, 2373:17, 2376:10, 2376:16, 2383:18, 2388:6, 2389:1, 2390:12, 2390:18, 2390:20, 2390:22, 2395:17, 2396:5, 2396:6, 2401:16, 2401:22, 2403:22, 2403:23, 2404:19, 2407:7, 2408:25, 2412:3, 2412:9, 2413:12, 2421:25, 2462:24, 2471:5, 2479:25, 2496:4, 2498:25, 2509:10, 2514:6, 2518:8, 2523:17, 2524:17, 2536:1, 2536:3, 2536:5, 2536:7, 2536:8, 2536:9, 2536:10, 2536:12, 2536:13, 2536:14, 2536:15, 2536:16, 2536:17, 2536:20, 2536:22, 2536:23, 2536:24, 2536:25

governs [2] - 2468:19, 2503:18
graduated [1] - 2360:2
Granatelli [1] - 2428:18
grand [2] - 2349:23, 2530:14
grandinelli [1] - 2450:9
Grdina [31] - 2358:24, 2358:25, 2359:8, 2364:10, 2365:5, 2372:12, 2376:6, 2382:7, 2382:17, 2383:8, 2383:13, 2384:15, 2393:10, 2396:7, 2413:14, 2414:16, 2421:4, 2429:21, 2431:1, 2433:2, 2436:6, 2439:18, 2441:16, 2442:17, 2457:7, 2458:15, 2461:19, 2463:3, 2466:17, 2471:7, 2472:23
Grdnia [5] - 2399:13, 2401:23, 2408:11, 2413:22, 2414:9
greater [1] - 2486:7
greatly [1] - 2447:20
grounds [1] - 2382:1
Group [21] - 2362:2, 2365:2, 2377:18, 2377:21, 2380:5, 2399:1, 2403:1, 2403:4, 2403:7, 2404:4, 2404:10, 2405:10, 2406:17, 2413:6, 2422:21, 2423:2, 2424:9, 2424:16, 2426:6, 2449:9, 2482:23
group [2] - 2511:18, 2528:17
Group's [1] - 2471:20
grow [1] - 2490:25
growth [1] - 2529:16
GS [1] - 2480:23
GSF [1] - 2383:12
guarantee [4] - 2410:21, 2435:20, 2457:9, 2474:2
guaranteed [1] - 2410:7
guess [4] - 2400:2, 2447:3, 2457:6, 2529:7
Guide [2] - 2423:12, 2426:10
guide [2] - 2466:10,

2468:13
Guide-Dog [1] - 2426:10
guideline [3] - 2487:7, 2487:10, 2487:11
guidelines [1] - 2487:1
guy [1] - 2408:3

# H

HALEY [85] - 2343:21, 2343:23, 2345:7, 2348:9, 2348:12, 2350:16, 2352:11, 2353:15, 2355:3, 2355:11, 2356:11, 2358:9, 2360:23, 2363:21, 2364:1, 2364:4, 2364:20, 2369:3, 2369:4, 2373:15, 2376:12, 2388:21, 2390:17, 2396:3, 2401:20, 2404:15, 2406:21, 2407:4, 2408:8, 2408:10, 2409:8, 2410:23, 2412:3, 2412:6, 2412:11, 2413:10, 2414:9, 2422:6, 2447:20, 2462:21, 2467:21, 2468:2, 2469:3, 2470:3, 2471:2, 2471:24, 2472:22, 2473:11, 2479:22, 2488:4, 2488:9, 2488:14, 2490:10, 2494:16, 2494:19, 2495:16, 2495:19, 2496:1, 2497:8, 2497:11, 2498:3, 2500:19, 2509:15, 2510:2, 2511:2, 2512:3, 2512:14, 2513:1, 2513:11, 2516:2, 2518:20, 2518:22, 2524:12, 2529:1, 2529:4, 2530:23, 2531:5, 2531:8, 2532:18, 2532:22, 2533:5, 2534:6, 2534:14, 2535:5, 2535:7
Haley [8] - 2350:3, 2408:11, 2422:5, 2446:11, 2447:19, 2494:20, 2528:22, 2532:16
Haley's [1] - 2421:22
half [7] - 2362:20,

2368:7, 2377:5, 2379:23, 2416:23, 2417:9, 2445:2
hand [3] - 2478:13, 2514:11, 2515:9
Handing [1] - 2399:7
handing [2] - 2403:25, 2508:23
handing) [3] - 2412:6, 2412:13, 2421:23
handle [5] - 2390:1, 2480:20, 2483:10, 2484:21, 2485:9
handled [1] - 2486:9
handling [1] - 2486:17
hangar [11] - 2382:21, 2384:7, 2385:24, 2392:16, 2395:4, 2397:2, 2397:14, 2433:2, 2434:22, 2440:8, 2440:23
Hangar [7] - 2391:8, 2391:15, 2391:18, 2392:7, 2392:21, 2397:14, 2398:2
hangars [7] - 2381:2, 2382:7, 2386:9, 2386:16, 2398:2, 2405:25, 2441:5
hangers [1] - 2421:16
happier [1] - 2533:1
hard [3] - 2446:16, 2508:22, 2508:25
Hawaii [6] - 2362:19, 2379:6, 2411:24, 2418:11, 2527:1, 2531:23
Hawaiian [6] - 2441:17, 2442:19, 2442:23, 2453:6, 2453:25, 2468:20
hd [1] - 2531:11
head [7] - 2382:6, 2382:8, 2382:11, 2383:10, 2384:11, 2384:13, 2388:4
heading [2] - 2383:4, 2393:2
Healy [1] - 2408:12
hear [6] - 2352:14, 2354:9, 2393:16, 2408:3, 2423:12, 2437:2
heard [2] - 2383:14, 2474:24
hearing [1] - 2527:18
hearsay [1] - 2424:5
heart [1] - 2353:16
held [9] - 2352:6, 2363:4, 2369:13,

2375:24, 2394:12, 2418:14, 2458:10, 2484:12, 2484:14
help [10] - 2369:17, 2384:17, 2387:2, 2416:9, 2428:10, 2428:22, 2430:21, 2490:25, 2491:13, 2492:10
helped [2] - 2449:10, 2492:5
helpful [1] - 2399:23
helps [1] - 2404:20
herculean [1] - 2350:24
hereby [1] - 2356:20
higher [1] - 2417:18
highlighted [4] - 2365:6, 2469:24, 2471:9, 2516:5
Highway [1] - 2343:22
Hilton [2] - 2440:7, 2441:8
himself [3] - 2352:6, 2482:14, 2491:7
history [10] - 2360:4, 2447:14, 2447:17, 2477:22, 2482:8, 2482:13, 2482:16, 2483:17, 2484:4, 2484:10
hockey [2] - 2383:1, 2406:2
Hoffman [1] - 2526:8
hold [2] - 2475:23, 2479:3
holder [1] - 2399:19
Holding [11] - 2365:12, 2367:9, 2367:11, 2368:12, 2368:21, 2370:2, 2378:25, 2414:19, 2453:11, 2453:13, 2467:3
holding [7] - 2367:10, 2475:1, 2475:3, 2475:9, 2475:22, 2476:2, 2507:20
holdings [1] - 2486:23
Holdings [9] - 2370:2, 2370:12, 2454:7, 2465:2, 2474:19, 2474:21, 2474:22, 2475:9, 2476:5
holds [2] - 2475:4, 2482:2, 2482:5
home [2] - 2493:24, 2526:17
homes [1] - 2433:22
honest [1] - 2349:10

Honor [63] - 2345:10, 2352:17, 2353:16, 2354:2, 2356:10, 2356:17, 2358:8, 2369:3, 2370:19, 2376:3, 2376:12, 2376:14, 2381:9, 2384:2, 2390:3, 2390:10, 2390:16, 2396:3, 2399:17, 2404:14, 2406:21, 2407:3, 2409:6, 2410:23, 2420:3, 2421:21, 2421:24, 2423:6, 2432:4, 2446:14, 2446:15, 2446:23, 2447:25, 2454:9, 2462:4, 2462:6, 2462:21, 2467:21, 2468:2, 2471:2, 2476:6, 2479:23, 2490:8, 2494:16, 2496:2, 2498:5, 2506:12, 2507:9, 2510:2, 2511:2, 2511:21, 2518:20, 2518:22, 2525:22, 2526:19, 2526:22, 2527:6, 2529:1, 2532:18, 2533:4, 2533:5, 2533:6, 2533:7
Honor's [2] - 2353:17, 2530:5
HONORABLE [1] - 2343:12
Hope [2] - 2448:9, 2448:13
hope [8] - 2354:7, 2448:5, 2448:6, 2448:7, 2448:15, 2448:18, 2448:21, 2448:25
hopefully [2] - 2352:23, 2352:24
Hormovitis [1] - 2343:8
host [1] - 2435:8
Hotel [1] - 2402:16
hourly [1] - 2487:5

# I

I-Network [1] - 2449:9
idea [7] - 2372:21, 2405:21, 2413:17, 2440:20, 2461:23, 2463:25, 2487:21
identical [2] - 2400:3, 2463:5

**identification** [28] - 2360:23, 2360:24, 2361:2, 2363:9, 2368:16, 2369:11, 2372:17, 2376:2, 2384:14, 2388:7, 2390:5, 2395:15, 2399:4, 2403:23, 2406:8, 2430:24, 2431:2, 2439:17, 2449:18, 2453:15, 2454:21, 2456:3, 2458:6, 2458:11, 2466:23, 2490:9, 2494:24, 2496:19

**identifications** [1] - 2490:11

**identified** [2] - 2511:11, 2529:20

**identify** [5] - 2449:18, 2512:18, 2517:5, 2528:18, 2528:19

**identifying** [2] - 2388:24, 2480:9

**III** [1] - 2391:15

**immediately** [1] - 2508:8

**impact** [3] - 2486:13, 2487:22, 2494:9

**important** [1] - 2367:19

**impression** [1] - 2532:6

**improvement** [1] - 2444:13

**inappropriate** [1] - 2510:12

**Inc** [1] - 2359:24

**inception** [1] - 2462:3

**include** [4] - 2389:7, 2473:3, 2485:20, 2528:18

**included** [5] - 2399:3, 2403:9, 2443:13, 2443:16, 2483:25

**includes** [5] - 2459:12, 2482:13, 2482:18, 2483:24, 2530:10

**Including** [1] - 2528:12

**including** [4] - 2351:18, 2357:3, 2379:8, 2529:17

**income** [5] - 2460:20, 2461:2, 2461:15, 2461:17, 2461:20

**incorporated** [1] - 2402:18

**increasingly** [1] -

2494:5

**incriminate** [1] - 2504:19

**indeed** [7] - 2346:1, 2347:21, 2408:25, 2472:24, 2497:17, 2510:3, 2511:12

**independent** [1] - 2491:1

**indicate** [13] - 2351:21, 2365:7, 2378:3, 2407:14, 2481:7, 2481:8, 2484:8, 2508:18, 2515:2, 2517:25, 2519:9, 2520:6, 2524:22

**indicated** [11] - 2345:20, 2351:16, 2366:20, 2388:17, 2389:19, 2433:3, 2446:7, 2480:22, 2508:4, 2518:15, 2528:6

**indicates** [6] - 2346:24, 2350:2, 2365:16, 2481:2, 2512:17, 2527:10

**indicating** [2] - 2432:2, 2525:7

**indication** [3] - 2508:8, 2518:12, 2519:5

**indicted** [2] - 2429:7, 2530:14

**indictment** [34] - 2352:3, 2510:6, 2510:9, 2510:14, 2511:5, 2511:8, 2511:10, 2511:20, 2512:4, 2512:5, 2512:8, 2512:13, 2512:15, 2512:17, 2512:19, 2513:8, 2527:8, 2527:9, 2527:17, 2527:23, 2527:24, 2528:4, 2528:5, 2528:7, 2528:15, 2528:19, 2528:20, 2528:23, 2530:16, 2530:18, 2530:19, 2531:1, 2531:2

**indirect** [1] - 2471:13

**indirectly** [2] - 2468:17, 2471:15

**individual** [10] - 2358:12, 2451:17, 2478:20, 2478:22, 2480:10, 2481:4,

2482:15, 2483:14, 2483:20, 2484:2

**individuals** [7] - 2477:24, 2478:8, 2506:4, 2528:11, 2528:18, 2530:10

**induce** [1] - 2528:11

**induced** [1] - 2528:10

**inducing** [1] - 2530:9

**Industry** [1] - 2477:12

**industry** [7] - 2359:25, 2478:23, 2480:10, 2481:13, 2483:21, 2483:23, 2484:13

**information** [30] - 2353:4, 2402:3, 2427:3, 2430:13, 2430:15, 2430:19, 2432:11, 2432:14, 2439:19, 2439:21, 2442:2, 2451:25, 2461:17, 2478:21, 2478:22, 2479:1, 2479:5, 2479:7, 2479:9, 2480:14, 2480:19, 2482:14, 2482:16, 2483:13, 2483:19, 2486:22, 2487:24, 2492:15, 2513:3

**informed** [4] - 2368:2, 2415:8, 2417:6, 2443:3

**initial** [3] - 2403:5, 2433:4, 2433:8

**initials** [1] - 2423:10

**inquiry** [2] - 2346:11, 2347:23

**insist** [1] - 2374:20

**insofar** [3] - 2471:19, 2472:15, 2529:24

**inspection** [1] - 2462:11

**installments** [1] - 2374:11

**instance** [2] - 2481:9, 2505:25

**instances** [1] - 2414:2

**Institute** [1] - 2484:1

**instruct** [1] - 2357:8

**instructed** [1] - 2396:24

**instruction** [1] - 2358:11

**instructions** [1] - 2369:23

**Insurance** [1] - 2424:20

**intend** [2] - 2440:23, 2447:7

**intended** [1] - 2475:23

**intercession** [1] - 2415:21

**Interest** [1] - 2404:24

**interest** [67] - 2362:8, 2362:10, 2370:10, 2370:20, 2371:2, 2371:7, 2372:8, 2374:9, 2374:12, 2381:5, 2381:8, 2398:18, 2399:19, 2399:24, 2399:25, 2403:15, 2404:3, 2430:12, 2433:11, 2433:12, 2434:21, 2436:24, 2437:7, 2437:9, 2437:15, 2437:20, 2438:4, 2449:11, 2454:14, 2454:15, 2455:5, 2455:12, 2455:13, 2455:20, 2455:24, 2456:10, 2456:16, 2456:20, 2456:21, 2456:25, 2457:3, 2457:8, 2457:16, 2459:12, 2465:4, 2465:5, 2465:9, 2471:13, 2472:6, 2472:8, 2475:7, 2475:12, 2475:14, 2475:16, 2475:18, 2475:19, 2475:21, 2475:23, 2487:17, 2487:19, 2487:20, 2488:2, 2488:3, 2488:7, 2493:11, 2502:22, 2529:14

**interests** [2] - 2475:4, 2499:12

**International** [1] - 2520:7

**internet** [1] - 2359:22

**interrupted** [1] - 2420:7

**intertwined** [1] - 2383:15

**Intrigue** [25] - 2360:5, 2360:7, 2360:8, 2360:12, 2361:11, 2362:1, 2362:5, 2362:24, 2369:20, 2377:3, 2377:6, 2377:12, 2380:4, 2384:5, 2385:17, 2402:4, 2402:17, 2402:18, 2402:25, 2404:3, 2407:14, 2459:3, 2463:12, 2464:2, 2473:18

**Intrigue's** [1] - 2369:13

**introduce** [10] - 2354:9, 2447:7, 2448:13, 2448:15, 2469:9, 2469:13, 2491:6, 2491:8, 2492:10, 2511:15

**introduced** [4] - 2352:23, 2412:3, 2412:8, 2490:20

**introducing** [3] - 2422:1, 2450:9, 2451:1

**introduction** [1] - 2449:2

**introductions** [2] - 2429:4, 2490:24

**invest** [11] - 2381:3, 2448:25, 2449:4, 2455:8, 2487:25, 2491:16, 2492:9, 2492:10, 2492:16, 2510:21, 2529:13

**invested** [15] - 2384:8, 2385:19, 2402:1, 2402:11, 2402:13, 2425:12, 2442:14, 2449:10, 2453:7, 2456:20, 2456:22, 2459:15, 2460:4, 2491:12, 2491:15

**investigation** [1] - 2505:25

**Investigator** [1] - 2357:1

**investing** [4] - 2442:8, 2448:16, 2448:23, 2451:1

**Investment** [8] - 2361:11, 2362:6, 2377:3, 2377:6, 2377:12, 2380:4, 2384:6, 2481:24

**investment** [30] - 2361:17, 2363:2, 2379:1, 2381:1, 2384:21, 2388:14, 2403:5, 2435:20, 2441:23, 2442:6, 2449:15, 2463:23, 2473:20, 2473:22, 2474:6, 2474:9, 2474:13, 2483:9, 2483:10, 2484:24, 2485:6, 2485:15, 2486:7, 2486:14, 2486:21, 2487:1, 2487:3, 2487:22, 2527:1, 2527:2

**Investments** [13] - 2360:5, 2360:7, 2360:8, 2362:1, 2362:24, 2385:17, 2402:4, 2402:17, 2406:18, 2407:15, 2459:3, 2463:12, 2473:18

**investments** [8] - 2384:19, 2450:7, 2451:24, 2457:13, 2483:12, 2485:11, 2485:17, 2491:14

**Investments'** [1] - 2369:20

**investor** [1] - 2442:13

**investor's** [1] - 2486:13

**investors** [8] - 2383:2, 2492:12, 2502:14, 2502:18, 2528:12, 2528:17, 2529:7, 2530:10

**invoice** [1] - 2385:15

**involved** [5] - 2438:12, 2440:10, 2466:20, 2501:18, 2502:1

**Island** [1] - 2361:20

**Islandia** [1] - 2343:23

**Isle** [1] - 2374:8

**Islip** [3] - 2343:5, 2343:17, 2344:9

**issue** [15] - 2345:6, 2346:9, 2348:7, 2348:10, 2350:5, 2350:7, 2352:10, 2352:11, 2352:24, 2400:15, 2447:15, 2469:8, 2512:3, 2526:25, 2532:14

**issued** [1] - 2368:23

**issues** [1] - 2503:25

**items** [1] - 2377:14

**itself** [4] - 2346:25, 2400:13, 2417:5, 2472:25

**IV** [1] - 2406:18

**J**

**James** [5] - 2358:23, 2364:10, 2384:15, 2396:7, 2413:14

**JAMES** [1] - 2343:17

**Jane** [2] - 2528:13, 2528:16

**Jason** [2] - 2448:9, 2448:13

**Jeff** [1] - 2382:4

**Jersey** [3] - 2358:4,

2489:17, 2489:18

**Jet** [23] - 2437:2, 2437:3, 2437:7, 2437:8, 2437:10, 2437:21, 2454:14, 2455:12, 2455:20, 2455:24, 2456:17, 2456:21, 2457:16, 2464:18, 2465:6, 2475:7, 2475:10, 2475:12, 2475:14, 2475:16, 2475:18, 2475:20, 2476:4

**JFB** [1] - 2343:3

**JG** [1] - 2384:15

**job** [1] - 2494:1

**John** [2] - 2408:3, 2510:16, 2511:6, 2512:10, 2512:18, 2519:18, 2519:21, 2519:23, 2519:25, 2521:3, 2521:4, 2527:8, 2527:23, 2528:1, 2528:2, 2528:12, 2528:16, 2529:11, 2530:12

**Johnson** [5] - 2509:5, 2509:7, 2518:5, 2523:6, 2523:7

**joining** [1] - 2483:22

**JOSEPH** [1] - 2343:12

**Joyce** [1] - 2428:16

**judge** [6] - 2388:23, 2400:12, 2462:20, 2500:19, 2512:14, 2530:23

**Judge** [36] - 2343:12, 2345:17, 2346:19, 2347:6, 2348:6, 2348:14, 2350:21, 2351:7, 2360:23, 2363:22, 2363:25, 2364:1, 2373:14, 2373:15, 2383:16, 2388:21, 2390:6, 2400:21, 2407:4, 2413:10, 2432:11, 2447:20, 2458:7, 2473:11, 2476:8, 2488:16, 2495:16, 2497:8, 2498:3, 2498:22, 2513:3, 2529:4, 2529:19, 2530:4, 2531:8, 2532:18

**July** [2] - 2480:17, 2481:11

**June** [3] - 2343:9, 2399:19, 2533:8

**juror** [4] - 2358:18,

2447:2, 2447:4, 2526:1

**JUROR** [2] - 2526:3, 2526:19

**Juror** [1] - 2526:10

**jurors** [4] - 2345:5, 2354:15, 2526:13, 2526:18

**jury** [32] - 2343:13, 2345:4, 2346:6, 2348:25, 2349:23, 2351:8, 2353:12, 2353:13, 2354:4, 2354:7, 2361:15, 2385:7, 2399:11, 2399:15, 2401:5, 2401:11, 2432:5, 2438:25, 2445:23, 2446:21, 2447:3, 2447:22, 2447:23, 2480:2, 2503:20, 2506:16, 2507:3, 2507:6, 2511:17, 2530:2, 2530:14, 2533:1

**jury's** [1] - 2529:21

**K**

**Kaiser** [7] - 2408:4, 2519:18, 2519:21, 2519:23, 2519:25, 2521:3, 2521:5

**Kau** [13] - 2365:12, 2367:9, 2367:11, 2368:12, 2368:20, 2370:1, 2370:12, 2378:25, 2414:19, 2453:11, 2453:13, 2454:6, 2467:3

**KAU** [1] - 2370:2

**keep** [4] - 2373:7, 2385:16, 2477:4, 2489:10

**keeping** [1] - 2386:8

**kELLY** [1] - 2343:15

**KENNER** - 2343:6

**Kenner** [114] - 2343:6, 2343:21, 2346:19, 2351:18, 2351:25, 2352:3, 2352:5, 2356:22, 2360:14, 2360:22, 2361:13, 2367:12, 2375:5, 2375:13, 2375:16, 2376:7, 2378:2, 2378:6, 2398:21, 2399:2, 2406:17, 2406:19, 2408:12, 2408:22, 2409:13,

2410:7, 2410:12, 2410:23, 2411:1, 2411:2, 2411:4, 2413:13, 2415:3, 2415:11, 2420:4, 2420:5, 2420:13, 2424:21, 2425:21, 2426:9, 2427:13, 2431:5, 2442:4, 2446:11, 2447:17, 2453:8, 2453:19, 2454:5, 2468:13, 2468:16, 2471:12, 2471:14, 2471:15, 2471:22, 2472:2, 2472:5, 2478:20, 2480:8, 2480:16, 2482:14, 2483:15, 2483:25, 2484:12, 2484:25, 2489:21, 2489:24, 2490:4, 2490:10, 2490:14, 2490:16, 2491:4, 2491:6, 2491:13, 2491:25, 2492:3, 2492:17, 2492:25, 2493:3, 2493:9, 2493:15, 2494:13, 2495:8, 2499:24, 2500:1, 2500:5, 2500:11, 2501:16, 2503:6, 2503:8, 2510:20, 2516:8, 2516:17, 2516:19, 2517:15, 2520:2, 2520:7, 2520:12, 2520:13, 2520:19, 2521:6, 2521:7, 2523:22, 2523:23, 2523:25, 2524:1, 2525:18, 2525:19, 2525:21, 2529:10, 2529:16, 2530:3, 2537:3

**Kenner's** [8] - 2361:19, 2363:2, 2368:20, 2410:20, 2412:22, 2468:13, 2481:15, 2502:22

**kept** [3] - 2357:22, 2418:17, 2479:14

**kind** [9] - 2346:4, 2353:19, 2361:12, 2366:13, 2395:9, 2418:7, 2483:5, 2485:4, 2485:15

**kindly** [1] - 2410:12

**kinds** [3] - 2488:1, 2493:17, 2530:20

**knowing** [1] - 2485:11

**knowledge** [6] - 2485:4, 2485:5, 2485:16, 2497:25, 2517:11, 2517:14

**known** [5] - 2370:6, 2379:1, 2408:11, 2428:1, 2441:22

**knows** [2] - 2420:3

**KOMATIREDDY** [17] - 2343:18, 2351:15, 2352:2, 2353:8, 2354:24, 2355:16, 2356:16, 2356:19, 2446:23, 2447:5, 2476:15, 2477:7, 2479:20, 2480:1, 2488:6, 2488:12, 2534:20

**KPMG** [2] - 2409:11, 2409:20

**L**

**ladies** [1] - 2525:24

**land** [4] - 2367:8, 2368:1, 2379:6, 2453:10

**language** [2] - 2527:10, 2527:11

**large** [1] - 2528:17

**larger** [4] - 2366:23, 2367:5, 2417:15, 2442:13

**largest** [1] - 2463:10

**LARUSSO** [59] - 2352:17, 2355:4, 2355:10, 2356:10, 2358:8, 2360:25, 2363:25, 2369:5, 2373:13, 2376:14, 2381:9, 2382:1, 2383:7, 2383:16, 2421:3, 2421:21, 2421:24, 2422:10, 2422:17, 2423:6, 2426:22, 2432:10, 2436:8, 2438:2, 2439:15, 2445:19, 2446:14, 2447:25, 2448:2, 2449:24, 2450:1, 2452:25, 2454:9, 2454:12, 2455:16, 2457:21, 2458:7, 2458:9, 2462:4, 2462:13, 2462:17, 2462:20, 2466:15, 2470:7, 2473:13, 2473:16, 2474:17, 2476:6, 2476:8, 2479:23,

2488:16, 2490:8, 2496:2, 2498:4, 2498:11, 2498:22, 2534:10, 2534:16, 2535:9
**IaRUSSO** [1] - 2344:1
**Larusso** [35] - 2344:3, 2363:24, 2388:23, 2390:16, 2396:2, 2399:8, 2399:17, 2400:3, 2400:12, 2400:21, 2401:18, 2404:14, 2407:3, 2410:24, 2414:11, 2414:13, 2414:16, 2420:9, 2423:4, 2445:17, 2446:5, 2463:7, 2464:16, 2465:21, 2466:10, 2466:13, 2468:6, 2469:21, 2470:6, 2471:19, 2472:18, 2473:12, 2532:8, 2533:6, 2534:8
**last** [12] - 2350:21, 2353:2, 2384:4, 2402:7, 2402:13, 2407:9, 2407:17, 2421:23, 2477:1, 2481:12, 2489:7, 2500:21
**lastly** [1] - 2426:5
**late** [1] - 2359:17
**latest** [1] - 2402:8
**law** [4] - 2429:22, 2484:20, 2504:24, 2505:4
**Law** [1] - 2393:13
**lawsuit** [4] - 2502:1, 2502:4, 2502:5, 2502:10
**lawyer** [2] - 2374:23, 2506:10
**lawyers** [1] - 2354:15
**lead** [1] - 2524:14
**Leaders** [1] - 2482:23
**leading** [3] - 2386:24, 2524:12
**leads** [1] - 2519:1
**leaps** [1] - 2382:24
**learn** [2] - 2380:16, 2397:24
**learned** [1] - 2416:19
**least** [11] - 2346:1, 2348:1, 2351:3, 2379:13, 2407:17, 2428:2, 2432:14, 2433:11, 2452:10, 2463:10, 2512:21
**leave** [1] - 2526:18

**leaves** [3] - 2399:11, 2399:14, 2526:23
**led** [1] - 2420:4
**left** [10] - 2349:15, 2432:5, 2435:5, 2480:22, 2481:2, 2481:9, 2502:18, 2514:11, 2515:9, 2521:21
**left-hand** [2] - 2514:11, 2515:9
**Lehman** [23] - 2379:2, 2379:4, 2379:13, 2411:9, 2411:13, 2411:18, 2411:22, 2418:25, 2419:2, 2419:12, 2424:11, 2425:17, 2443:4, 2443:7, 2443:24, 2445:13, 2460:12, 2461:5, 2461:11, 2466:17, 2472:9, 2473:9
**Lehman's** [1] - 2468:17
**lender** [3] - 2434:16, 2434:21, 2440:13
**lenders** [1] - 2434:10
**lends** [1] - 2428:16
**lent** [4] - 2444:4, 2449:5, 2449:7, 2493:18
**less** [1] - 2463:16
**level** [1] - 2460:16
**liability** [2] - 2474:13, 2499:13
**liar** [1] - 2446:10
**license** [2] - 2482:4, 2482:5
**licensed** [3] - 2351:25, 2352:3, 2481:4
**licenses** [4] - 2351:17, 2479:3, 2484:12, 2484:14
**licensing** [3] - 2478:6, 2478:7, 2478:11
**lien** [1] - 2416:16
**life** [2] - 2489:19, 2493:14
**light** [1] - 2528:22
**likewise** [3] - 2360:25, 2436:13, 2452:8
**limited** [4] - 2499:13, 2512:8, 2528:7, 2528:15
**limits** [1] - 2530:1
**Linda** [1] - 2396:12
**line** [8] - 2347:3, 2347:15, 2349:25, 2364:10, 2370:4,

2389:3, 2389:18, 2531:25
**lines** [4] - 2511:23, 2511:25, 2512:1, 2513:4
**liquidity** [1] - 2485:22
**list** [8] - 2459:22, 2460:4, 2463:9, 2486:19, 2510:6, 2512:20, 2528:2, 2531:17
**listed** [3] - 2383:12, 2394:5, 2402:4, 2438:21, 2439:2, 2457:23, 2458:3, 2458:17, 2458:19, 2458:24, 2459:1, 2459:3, 2459:4, 2459:20, 2459:25, 2463:12, 2474:7, 2480:25, 2481:1, 2510:8, 2511:5, 2516:24, 2527:8
**listen** [2] - 2446:16, 2526:15
**listing** [1] - 2474:5
**live** [2] - 2359:8, 2489:16
**lived** [2] - 2398:15, 2489:18
**livelier** [1] - 2533:2
**living** [1] - 2359:10
**LLC** [22] - 2361:24, 2374:10, 2376:21, 2380:21, 2385:9, 2391:23, 2392:3, 2401:25, 2402:4, 2413:5, 2465:6, 2474:9, 2491:19, 2499:12, 2509:8, 2514:8, 2514:15, 2514:19, 2518:6, 2518:11, 2523:8, 2523:13
**LLP** [2] - 2343:21, 2344:1
**loan** [46] - 2361:19, 2365:12, 2365:13, 2365:20, 2366:25, 2367:8, 2367:20, 2368:11, 2368:12, 2370:22, 2370:24, 2371:12, 2371:15, 2371:18, 2371:22, 2372:22, 2373:5, 2374:18, 2375:15, 2377:11, 2377:24, 2378:3, 2378:5, 2378:18, 2378:20, 2378:23, 2379:12,

2379:24, 2409:4, 2409:11, 2410:21, 2411:23, 2413:14, 2434:21, 2442:25, 2443:1, 2449:12, 2460:12, 2461:5, 2461:11, 2463:21, 2466:18, 2467:7, 2520:8, 2520:9, 2520:12
**loaned** [3] - 2409:9, 2411:8, 2417:3
**loaning** [2] - 2361:23, 2379:9
**loans** [2] - 2360:11, 2472:7
**local** [2] - 2448:12, 2496:16
**locally** [2] - 2428:18, 2450:9
**located** [1] - 2358:3
**location** [6] - 2392:22, 2413:20, 2413:21, 2414:4, 2482:18, 2484:7
**locations** [1] - 2484:4
**Lockwood** [2] - 2373:1, 2374:6
**look** [26] - 2372:18, 2384:16, 2390:23, 2393:4, 2393:19, 2402:7, 2409:16, 2410:12, 2410:16, 2412:5, 2431:1, 2431:3, 2449:17, 2449:19, 2449:20, 2454:2, 2458:11, 2458:14, 2462:13, 2478:15, 2480:2, 2508:24, 2512:5, 2512:12, 2512:16, 2513:7
**looked** [3] - 2349:21, 2450:4, 2462:14
**looking** [16] - 2354:19, 2371:6, 2391:14, 2454:10, 2458:23, 2474:4, 2479:17, 2482:22, 2483:17, 2492:11, 2492:15, 2508:25, 2509:9, 2521:21, 2523:18, 2525:3
**looks** [1] - 2495:25
**loops** [1] - 2349:23
**lose** [1] - 2447:4
**losing** [1] - 2493:24
**loss** [1] - 2441:10
**losses** [3] - 2436:11, 2436:13, 2436:17

**lost** [3] - 2398:1, 2416:7, 2433:22
**loud** [1] - 2384:17
**loyalty** [2] - 2486:9
**Ltd** [1] - 2405:10
**LTD** [1] - 2377:18
**lunch** [5] - 2445:18, 2445:20, 2445:22, 2465:20, 2466:9
**luxury** [2] - 2359:17, 2526:6

## M

**M-E-L-L-E-Y** [1] - 2477:2
**mail** [24] - 2350:8, 2352:22, 2369:15, 2372:25, 2373:4, 2373:8, 2373:9, 2373:20, 2374:6, 2374:24, 2395:18, 2395:20, 2395:21, 2395:22, 2396:2, 2396:7, 2396:8, 2396:17, 2397:8, 2438:23, 2453:17, 2453:23, 2454:1, 2521:9
**mailed** [1] - 2392:24
**mails** [2] - 2352:19, 2449:14
**maintain** [1] - 2405:8
**maintained** [1] - 2480:6
**maintaining** [1] - 2486:24
**maintains** [2] - 2479:5, 2479:7
**Makika** [4] - 2369:21, 2370:3, 2370:10, 2376:20
**man** [2] - 2440:7, 2448:5
**managed** [2] - 2359:22, 2360:5
**Management** [24] - 2362:2, 2362:8, 2365:2, 2377:17, 2377:21, 2378:6, 2380:5, 2399:1, 2403:1, 2403:4, 2403:7, 2404:4, 2404:10, 2405:10, 2406:17, 2413:6, 2422:20, 2423:2, 2424:9, 2424:16, 2426:6, 2471:20, 2481:18, 2481:21
**management** [13] -

2379:21, 2443:25,
2444:1, 2444:2,
2444:6, 2444:8,
2444:16, 2444:19,
2444:22, 2445:6,
2445:14, 2487:5,
2487:11
**Manager** [1] - 2402:3
**manager** [5] - 2402:8,
2406:18, 2410:2,
2413:4, 2491:9
**managing** [25] -
2368:20, 2399:1,
2406:19, 2406:20,
2413:1, 2413:4,
2486:22, 2492:23,
2493:4, 2493:10,
2494:8, 2494:12,
2495:3, 2495:4,
2495:6, 2496:6,
2496:9, 2496:13,
2496:14, 2497:4,
2497:19, 2501:4,
2502:21, 2502:23,
2503:1
**mandated** [1] -
2487:13
**Manfredi** [5] -
2409:22, 2410:2,
2531:21, 2532:2,
2532:9
**manner** [3] - 2346:2,
2346:7, 2527:11
**MANY** [1] - 2384:24
**March** [4] - 2454:20,
2505:2, 2518:25
**mark** [1] - 2430:24
**Mark** [1] - 2356:24
**marked** [33] - 2354:24,
2363:8, 2366:17,
2369:10, 2372:16,
2376:1, 2384:14,
2388:6, 2388:23,
2389:1, 2390:4,
2390:20, 2395:14,
2395:17, 2396:5,
2401:22, 2403:22,
2404:19, 2406:7,
2407:7, 2409:13,
2411:2, 2439:16,
2453:14, 2454:21,
2456:2, 2458:5,
2458:10, 2463:4,
2466:22, 2478:14,
2494:23, 2496:19
**market** [8] - 2433:18,
2434:14, 2434:25,
2435:5, 2436:2,
2457:10, 2483:7,
2485:21

**markets** [6] - 2478:4,
2478:5, 2485:5,
2485:23, 2485:24
**MARY** [1] - 2344:8
**master** [5] - 2346:18,
2346:24, 2347:16,
2347:19, 2444:5
**material** [7] - 2351:4,
2391:16, 2486:3,
2486:12, 2487:21,
2527:3, 2527:17
**materiality** [2] -
2468:7, 2510:5
**Matter** [5] - 2419:19,
2420:18, 2509:18,
2513:13, 2514:1
**matter** [16] - 2347:8,
2348:18, 2348:22,
2349:15, 2350:21,
2352:17, 2380:20,
2400:17, 2429:19,
2438:21, 2451:12,
2452:3, 2511:14,
2529:24, 2532:20,
2533:8
**mattered** [1] - 2392:10
**matters** [1] - 2345:7
**maturity** [1] - 2374:8
**mean** [14] - 2348:5,
2359:16, 2371:21,
2385:8, 2385:21,
2394:16, 2409:23,
2410:8, 2413:19,
2439:1, 2463:25,
2469:11, 2503:21,
2511:18
**meaning** [6] -
2389:14, 2466:1,
2480:24, 2481:1,
2483:6, 2483:9
**means** [7] - 2358:12,
2413:17, 2438:25,
2439:25, 2464:1,
2503:23, 2527:11
**meant** [1] - 2349:10
**meanwhile** [1] -
2382:17
**Meeley** [6] - 2350:23,
2350:25, 2351:2,
2351:16, 2351:22,
2352:12
**meet** [9] - 2360:18,
2361:4, 2361:5,
2411:4, 2489:25,
2490:16, 2490:19,
2491:4, 2491:24
**meeting** [16] -
2421:14, 2422:11,
2422:14, 2426:2,
2426:13, 2427:10,

2427:16, 2427:21,
2428:3, 2428:5,
2432:11, 2446:8,
2448:18, 2450:21,
2504:24, 2505:4
**meetings** [1] -
2411:12
**MELLEY** [2] -
2476:20, 2534:18
**Melley** [8] - 2446:25,
2447:6, 2447:10,
2476:16, 2477:2,
2477:3, 2477:8,
2488:17
**member** [39] -
2352:20, 2368:20,
2385:9, 2398:5,
2399:1, 2399:2,
2399:3, 2400:10,
2400:16, 2402:3,
2402:5, 2402:8,
2406:18, 2406:19,
2406:20, 2413:2,
2413:5, 2435:18,
2492:20, 2492:23,
2493:4, 2493:10,
2494:8, 2494:12,
2495:3, 2495:4,
2495:7, 2496:7,
2496:9, 2496:13,
2496:14, 2497:4,
2497:19, 2501:4,
2502:21, 2502:23,
2503:1
**members** [9] - 2354:7,
2361:15, 2385:12,
2477:23, 2477:25,
2501:19, 2503:20,
2504:24, 2505:4
**membership** [9] -
2362:8, 2362:10,
2381:5, 2381:8,
2398:18, 2403:15,
2404:3, 2499:12,
2507:21
**Membership** [1] -
2404:24
**memo** [1] - 2405:18
**Memorial** [1] -
2343:22
**memorialized** [2] -
2368:11, 2403:20
**memory** [3] - 2512:15,
2513:9, 2528:14
**mention** [1] - 2394:22
**mentioned** [10] -
2356:15, 2435:8,
2437:9, 2440:7,
2443:24, 2454:13,
2483:13, 2485:14,

2502:12, 2536:3
**mere** [1] - 2358:15
**messages** [1] -
2449:14
**messaging** [1] -
2450:14
**met** [7] - 2352:5,
2361:7, 2424:1,
2425:4, 2426:24,
2490:1, 2490:14
**microphone** [1] -
2436:9
**middle** [3] - 2393:19,
2465:1, 2471:8
**might** [7] - 2347:16,
2348:3, 2416:6,
2424:24, 2494:16,
2504:19, 2505:17
**mike** [3] - 2436:6,
2477:4, 2489:10
**million** [102] -
2361:19, 2362:7,
2362:9, 2362:11,
2362:14, 2362:18,
2362:20, 2362:23,
2363:1, 2363:5,
2365:13, 2365:23,
2366:4, 2366:5,
2366:9, 2366:22,
2367:23, 2367:25,
2368:2, 2368:6,
2368:7, 2369:14,
2370:22, 2372:3,
2372:5, 2372:6,
2372:10, 2372:21,
2372:22, 2374:10,
2375:15, 2375:17,
2375:19, 2375:21,
2376:22, 2377:5,
2377:7, 2377:10,
2377:24, 2379:19,
2379:23, 2379:24,
2380:9, 2380:17,
2382:19, 2384:8,
2389:7, 2389:10,
2389:11, 2391:7,
2392:7, 2395:6,
2397:18, 2398:7,
2402:12, 2403:8,
2407:11, 2408:15,
2408:19, 2409:5,
2409:11, 2410:6,
2411:7, 2411:14,
2414:23, 2415:2,
2416:4, 2416:13,
2416:15, 2416:17,
2416:23, 2417:7,
2417:9, 2418:18,
2418:19, 2419:4,
2419:5, 2419:16,

2421:5, 2421:12,
2423:18, 2423:22,
2424:25, 2425:11,
2427:14, 2428:9,
2440:22, 2445:2,
2450:22, 2451:5,
2457:9, 2458:19,
2458:25, 2459:9,
2461:22, 2463:13,
2466:3, 2466:7,
2467:9, 2468:24
**millions** [1] - 2396:25
**Milton** [1] - 2389:2
**mind** [4] - 2352:4,
2353:13, 2400:5,
2417:25
**mine** [4] - 2430:10,
2449:5, 2449:7,
2524:19
**Mineola** [1] - 2344:2
**minimize** [1] - 2354:20
**mining** [1] - 2354:1
**minute** [5] - 2348:19,
2364:1, 2365:14,
2430:23, 2482:7
**minutes** [2] - 2415:1,
2445:19
**misimpression** [1] -
2530:17
**MISKIEWICZ** [100] -
2343:17, 2350:6,
2353:16, 2354:1,
2358:23, 2359:7,
2361:3, 2363:19,
2366:18, 2369:1,
2370:18, 2373:11,
2376:3, 2376:10,
2378:7, 2382:3,
2383:8, 2384:2,
2388:2, 2388:19,
2390:3, 2390:6,
2390:10, 2391:3,
2395:24, 2400:1,
2400:25, 2401:8,
2401:15, 2404:12,
2404:17, 2406:25,
2408:6, 2409:6,
2410:25, 2412:5,
2412:7, 2412:13,
2419:17, 2420:2,
2420:16, 2422:4,
2424:5, 2427:7,
2431:7, 2432:1,
2436:15, 2437:18,
2438:1, 2449:23,
2449:25, 2452:19,
2452:24, 2455:14,
2457:19, 2462:6,
2463:2, 2466:13,
2466:16, 2467:19,

2468:12, 2469:24, 2470:1, 2471:6, 2472:1, 2472:17, 2474:15, 2475:17, 2475:25, 2488:21, 2489:13, 2490:13, 2494:18, 2494:20, 2494:21, 2495:14, 2496:5, 2497:6, 2498:5, 2499:1, 2506:12, 2507:9, 2507:11, 2509:13, 2510:15, 2510:24, 2511:1, 2511:21, 2514:3, 2516:3, 2519:3, 2525:22, 2527:3, 2527:25, 2531:17, 2532:12, 2533:4, 2534:4, 2534:12, 2535:3

**Miskiewicz** [6] - 2352:18, 2401:14, 2412:12, 2474:18, 2507:8, 2528:14

**misrepresentation** [1] - 2528:24

**misspeak** [1] - 2426:22

**misspoke** - 2393:8

**misstated** [1] - 2417:6

**mistrial** [4] - 2348:16, 2348:21, 2350:10, 2350:11

**Mobile** [2] - 2450:10, 2450:12

**model** [1] - 2359:17

**moment** [17] - 2347:17, 2354:9, 2363:10, 2363:21, 2370:18, 2372:18, 2390:3, 2390:6, 2390:12, 2410:19, 2439:15, 2458:7, 2463:6, 2476:6, 2497:16, 2518:8

**moments** [3] - 2413:10, 2416:10, 2465:23

**monetary** [1] - 2471:16

**money** [108] - 2361:23, 2362:25, 2366:7, 2369:9, 2369:20, 2369:23, 2370:1, 2370:2, 2370:8, 2377:10, 2378:23, 2379:9, 2379:13, 2379:15, 2379:18, 2380:1, 2380:3, 2380:14,

2382:14, 2383:13, 2383:15, 2384:24, 2385:19, 2389:7, 2389:21, 2389:24, 2391:7, 2392:6, 2394:11, 2394:23, 2395:9, 2396:18, 2396:23, 2397:4, 2403:9, 2405:21, 2406:6, 2408:2, 2408:14, 2409:9, 2410:9, 2411:7, 2416:1, 2416:6, 2417:3, 2418:14, 2418:17, 2419:10, 2419:12, 2425:16, 2425:17, 2425:24, 2427:4, 2428:11, 2428:17, 2428:25, 2440:17, 2440:23, 2441:11, 2444:4, 2449:4, 2449:14, 2458:3, 2459:8, 2461:22, 2466:20, 2469:1, 2471:23, 2474:1, 2474:5, 2487:25, 2491:9, 2491:13, 2491:15, 2493:1, 2493:18, 2501:11, 2501:13, 2501:15, 2503:4, 2508:5, 2508:15, 2509:4, 2510:21, 2511:24, 2512:6, 2513:4, 2514:17, 2515:2, 2515:17, 2515:18, 2518:17, 2518:22, 2518:23, 2519:5, 2519:21, 2522:13, 2523:21, 2523:23, 2524:5, 2524:6, 2524:8, 2524:10, 2529:13, 2529:17, 2529:23

**moneys** [3] - 2425:4, 2433:4, 2434:13

**monies** [12] - 2383:18, 2418:14, 2419:3, 2424:24, 2426:25, 2459:11, 2459:18, 2460:11, 2460:13, 2461:4, 2461:10, 2516:6

**month** [6] - 2375:9, 2422:24, 2518:25, 2521:22, 2522:20, 2522:21

**months** [5] - 2378:19, 2426:15, 2443:9, 2450:23, 2501:2

**moots** [2] - 2352:10, 2352:11

**moreover** [2] - 2504:22, 2527:16

**morning** [10] - 2348:13, 2348:20, 2352:18, 2354:6, 2354:8, 2399:9, 2526:8, 2526:21, 2532:13, 2533:3

**most** [1] - 2346:18

**Motor** [1] - 2428:16

**mouthed** [1] - 2446:9

**move** [11] - 2348:15, 2348:20, 2350:24, 2352:24, 2354:25, 2420:9, 2420:10, 2432:19, 2488:10, 2525:22, 2531:24

**moved** [1] - 2511:6

**moves** [17] - 2356:6, 2358:5, 2363:19, 2369:1, 2373:11, 2376:10, 2388:19, 2390:11, 2395:24, 2401:15, 2404:12, 2406:25, 2462:7, 2467:19, 2479:20, 2495:14, 2497:6

**moving** [2] - 2481:2, 2511:11

**MR** [260] - 2345:7, 2348:9, 2348:12, 2350:6, 2350:16, 2352:11, 2352:17, 2353:15, 2353:16, 2354:1, 2355:3, 2355:4, 2355:10, 2355:11, 2356:10, 2356:11, 2358:8, 2358:9, 2358:23, 2359:7, 2360:23, 2360:25, 2361:3, 2363:19, 2363:21, 2363:25, 2364:1, 2364:4, 2364:20, 2366:18, 2369:1, 2369:3, 2369:4, 2369:5, 2370:18, 2373:11, 2373:13, 2373:15, 2376:3, 2376:10, 2376:12, 2376:14, 2378:7, 2381:9, 2382:1, 2382:3, 2383:7, 2383:8, 2383:16, 2384:2, 2388:2, 2388:19, 2388:21, 2388:23, 2390:3, 2390:6, 2390:10,

2390:16, 2390:17, 2391:3, 2395:24, 2396:2, 2396:3, 2399:8, 2399:17, 2400:1, 2400:12, 2400:21, 2400:25, 2401:8, 2401:15, 2401:18, 2401:20, 2404:12, 2404:14, 2404:15, 2404:17, 2406:21, 2406:25, 2407:3, 2407:4, 2408:6, 2408:8, 2408:10, 2409:6, 2409:8, 2410:23, 2410:24, 2410:25, 2412:3, 2412:5, 2412:6, 2412:7, 2412:11, 2412:13, 2413:10, 2414:9, 2414:13, 2419:17, 2420:2, 2420:9, 2420:16, 2421:3, 2421:21, 2421:24, 2422:4, 2422:6, 2422:10, 2422:17, 2423:6, 2424:5, 2426:22, 2427:7, 2431:7, 2432:1, 2432:10, 2436:8, 2436:15, 2437:18, 2438:1, 2438:2, 2439:15, 2445:19, 2446:14, 2446:15, 2446:20, 2447:20, 2447:25, 2448:2, 2449:23, 2449:24, 2449:25, 2450:1, 2452:19, 2452:24, 2452:25, 2454:9, 2454:12, 2455:14, 2455:16, 2457:19, 2457:21, 2458:7, 2458:9, 2462:4, 2462:6, 2462:13, 2462:17, 2462:20, 2462:21, 2463:2, 2466:13, 2466:15, 2466:16, 2467:19, 2467:21, 2468:2, 2468:12, 2469:3, 2469:24, 2470:1, 2470:3, 2470:7, 2471:2, 2471:6, 2471:24, 2472:1, 2472:17, 2472:22, 2473:11, 2473:13, 2473:16, 2474:15, 2474:17, 2475:17, 2475:25, 2476:6, 2476:8, 2479:22,

2479:23, 2488:4, 2488:9, 2488:14, 2488:16, 2488:21, 2489:13, 2490:8, 2490:10, 2490:13, 2494:16, 2494:18, 2494:19, 2494:20, 2494:21, 2495:14, 2495:16, 2495:19, 2496:1, 2496:2, 2496:5, 2497:6, 2497:8, 2497:11, 2498:3, 2498:4, 2498:5, 2498:11, 2498:22, 2499:1, 2500:19, 2506:12, 2507:9, 2507:11, 2509:13, 2509:15, 2510:2, 2510:15, 2510:24, 2511:1, 2511:2, 2511:21, 2512:3, 2512:14, 2513:1, 2513:11, 2514:3, 2516:2, 2516:3, 2518:20, 2518:22, 2519:3, 2524:12, 2525:22, 2527:3, 2527:25, 2529:1, 2529:4, 2530:23, 2531:5, 2531:8, 2531:17, 2532:8, 2532:12, 2532:18, 2532:22, 2533:4, 2533:5, 2533:6, 2533:7, 2534:4, 2534:6, 2534:8, 2534:10, 2534:12, 2534:14, 2534:16, 2535:3, 2535:5, 2535:7, 2535:9

**MS** [16] - 2351:15, 2352:2, 2353:8, 2354:24, 2355:16, 2356:16, 2356:19, 2446:23, 2447:5, 2476:15, 2477:7, 2479:20, 2480:1, 2488:6, 2488:12, 2534:20

**multiple** [5] - 2345:8, 2351:9, 2383:6, 2447:11, 2475:4

**multiples** [1] - 2442:3

**Murray** [28] - 2510:6, 2510:7, 2510:10, 2510:13, 2510:15, 2510:23, 2511:5, 2511:12, 2511:23, 2512:11, 2512:16, 2512:20, 2512:24,

2513:1, 2515:6,
2515:7, 2518:19,
2519:10, 2526:24,
2526:25, 2527:4,
2527:7, 2527:17,
2527:19, 2527:20,
2528:22, 2530:19,
2531:13
**Murray's** [1] - 2511:25
**muscle** [1] - 2359:17
**mutual** [1] - 2490:20

## N

**name** [39] - 2363:3,
2363:4, 2363:6,
2369:13, 2369:19,
2370:3, 2376:19,
2377:17, 2387:8,
2390:24, 2391:4,
2402:4, 2408:5,
2408:11, 2409:22,
2414:16, 2421:23,
2433:15, 2434:16,
2437:4, 2440:7,
2448:5, 2448:8,
2453:11, 2467:11,
2474:22, 2476:25,
2477:1, 2489:6,
2489:7, 2491:18,
2494:16, 2494:22,
2496:6, 2509:6,
2517:18, 2519:18
**named** [3] - 2396:12,
2408:3, 2465:6
**names** [2] - 2434:23,
2521:9
**NASDAQ** [2] - 2478:4,
2485:24
**Nash** [1] - 2529:13
**nature** [7] - 2361:16,
2448:20, 2463:20,
2466:19, 2469:15,
2473:19, 2524:12
**near** [2] - 2363:15,
2479:9
**necessary** [1] -
2486:24
**need** [7] - 2369:16,
2390:3, 2399:21,
2404:23, 2410:13,
2458:14, 2478:1
**needed** [11] - 2362:18,
2366:7, 2366:9,
2368:3, 2375:18,
2395:1, 2416:15,
2416:17, 2417:7,
2418:1
**needs** [1] - 2500:12
**negotiated** [5] -

2373:5, 2373:25,
2374:1, 2442:4,
2443:15
**negotiating** [1] -
2378:10
**Network** [1] - 2449:9
**never** [10] - 2399:3,
2423:23, 2431:6,
2435:17, 2437:14,
2442:21, 2454:15,
2456:20, 2456:22,
2475:13
**nevertheless** [2] -
2364:14, 2364:17
**new** [5] - 2353:24,
2353:25, 2374:10,
2465:5, 2531:9
**NEW** [1] - 2343:1
**New** [16] - 2343:17,
2343:23, 2344:2,
2344:5, 2357:2,
2357:4, 2357:19,
2357:23, 2357:24,
2358:3, 2382:12,
2485:23, 2489:17,
2489:18, 2491:5
**next** [18] - 2358:19,
2416:12, 2419:19,
2420:18, 2446:24,
2447:6, 2467:23,
2470:8, 2476:14,
2481:23, 2482:8,
2488:20, 2506:18,
2509:18, 2511:1,
2513:13, 2518:4,
2520:3
**night** [1] - 2353:2
**nine** [1] - 2386:1
**NO** [2] - 2526:3,
2526:19
**none** [2] - 2380:15,
2524:10
**nonprosecution** [3] -
2503:19, 2503:21,
2504:23
**Northern** [1] - 2347:6
**note** [30] - 2346:18,
2346:24, 2347:16,
2347:19, 2362:21,
2368:8, 2368:9,
2368:14, 2368:17,
2368:23, 2370:1,
2371:18, 2371:24,
2372:2, 2372:14,
2373:22, 2378:11,
2379:19, 2410:8,
2410:9, 2411:9,
2411:19, 2411:24,
2417:8, 2418:20,
2432:9, 2444:7,

2446:24, 2447:5
**noted** [1] - 2345:3
**notes** [5] - 2427:9,
2427:13, 2431:4,
2432:16, 2447:17
**nothing** [5] - 2382:21,
2383:6, 2420:7,
2502:19, 2504:8
**notice** [4] - 2350:22,
2351:16, 2351:22,
2511:14
**noticed** [1] - 2527:4
**notification** [1] -
2439:5
**notifications** [1] -
2439:8
**notified** [1] - 2439:4
**notwithstanding** [1] -
2495:22
**November** [4] -
2346:19, 2375:11,
2480:17, 2481:11
**number** [22] -
2345:12, 2347:6,
2356:18, 2360:9,
2371:9, 2372:9,
2372:11, 2402:1,
2405:3, 2447:2,
2447:4, 2475:4,
2478:7, 2480:9,
2480:11, 2483:11,
2497:24, 2510:9,
2517:8, 2524:4,
2526:9, 2528:1
**numbers** [4] -
2351:20, 2353:10,
2353:20, 2355:17
**numeral** [1] - 2394:11
**numeric** [1] - 2487:6
**numerous** [1] -
2511:22
**NY** [2] - 2343:5,
2344:9

## O

**o'clock** [2] - 2445:17,
2445:21
**oath** [5] - 2359:1,
2476:18, 2488:23,
2497:17, 2504:10
**object** [9] - 2406:21,
2469:12, 2469:17,
2488:9, 2500:20,
2510:13, 2518:20,
2519:3, 2524:12
**objected** [1] - 2502:15
**objecting** [2] - 2351:8,
2400:12
**objection** [58] -

2351:9, 2352:13,
2353:15, 2358:7,
2363:24, 2364:20,
2369:4, 2369:5,
2373:14, 2373:15,
2376:13, 2376:14,
2388:21, 2388:24,
2396:1, 2399:17,
2404:14, 2404:15,
2407:2, 2407:5,
2410:24, 2410:25,
2420:2, 2422:3,
2422:4, 2424:5,
2427:7, 2431:7,
2432:1, 2436:15,
2437:18, 2438:1,
2445:9, 2455:14,
2457:19, 2462:20,
2462:22, 2468:2,
2469:6, 2470:4,
2470:6, 2471:3,
2471:24, 2474:15,
2475:17, 2475:25,
2479:22, 2479:23,
2488:4, 2496:1,
2496:2, 2498:3,
2498:22, 2510:2,
2510:4, 2511:23,
2524:15, 2529:25
**objectives** [1] -
2485:11
**obligated** [4] - 2425:5,
2425:25, 2457:18,
2478:25
**obligation** [6] -
2348:14, 2350:17,
2350:19, 2419:4,
2419:16, 2437:22
**observation** [1] -
2468:6
**obtain** [1] - 2384:6
**obtained** [2] -
2351:18, 2397:24
**obvious** [2] - 2422:24,
2526:11
**obviously** [3] -
2352:15, 2354:16,
2526:5
**occasions** [1] -
2425:21
**occupation** [1] -
2413:22
**occur** [1] - 2451:18
**occurred** [5] - 2345:9,
2383:17, 2418:25,
2510:19, 2531:2
**occurrence** [1] -
2414:7
**occurring** [2] -
2373:20, 2383:7

**occurs** [1] - 2383:12
**Oceanside** [1] -
2344:5
**October** [17] -
2346:15, 2363:1,
2363:13, 2368:13,
2371:24, 2377:6,
2414:20, 2416:22,
2416:24, 2417:12,
2419:10, 2427:1,
2427:24, 2428:4,
2443:18, 2453:2,
2454:4
**OF** [2] - 2343:1,
2343:3
**offer** [7] - 2351:5,
2354:23, 2410:23,
2437:11, 2437:16,
2449:4, 2454:17
**offered** [7] - 2400:2,
2400:3, 2435:14,
2437:20, 2455:24,
2456:20, 2457:15
**offering** [4] - 2464:17,
2475:11, 2475:15,
2475:18
**office** [4] - 2421:16,
2422:14, 2484:3,
2484:9
**Offices** [1] - 2393:13
**offices** [1] - 2484:8
**official** [1] - 2480:25
**offs** [1] - 2461:1
**Old** [1] - 2344:1
**OLIVERAS** [2] -
2344:4, 2533:7
**once** [3] - 2384:9,
2435:16, 2441:1
**One** [1] - 2343:21
**one** [80] - 2345:16,
2346:16, 2346:18,
2346:19, 2347:16,
2347:24, 2350:21,
2352:17, 2352:20,
2352:21, 2353:19,
2353:22, 2356:16,
2360:16, 2364:1,
2367:25, 2370:6,
2370:7, 2374:11,
2374:13, 2379:4,
2386:2, 2386:15,
2388:24, 2390:3,
2393:18, 2396:7,
2402:15, 2405:11,
2411:12, 2413:1,
2413:24, 2421:16,
2423:14, 2426:8,
2426:9, 2430:10,
2435:9, 2436:12,
2439:15, 2446:24,

2447:7, 2454:9,
2458:8, 2460:17,
2460:23, 2462:9,
2463:13, 2467:12,
2468:15, 2475:4,
2476:6, 2481:10,
2482:11, 2483:2,
2484:7, 2484:13,
2484:25, 2485:8,
2485:20, 2486:2,
2487:12, 2491:15,
2498:4, 2500:21,
2502:5, 2502:11,
2510:15, 2512:8,
2512:20, 2516:23,
2522:25, 2523:3,
2527:25, 2528:5,
2532:8

**one-sided** [1] -
2436:12
**ones** [1] - 2489:23
**online** [1] - 2480:5
**open** [9] - 2384:1,
2421:1, 2433:1,
2471:1, 2494:14,
2496:10, 2496:15,
2497:3, 2497:22
**Open** [1] - 2514:1
**opened** [11] - 2497:18,
2497:25, 2498:12,
2498:18, 2499:3,
2499:4, 2499:9,
2500:13, 2500:14,
2508:4, 2508:6
**opening** [3] - 2507:24,
2524:22, 2524:25
**operate** [2] - 2357:4,
2485:23
**operated** [3] -
2359:22, 2360:9,
2491:22
**Operating** [1] -
2518:11
**operating** [22] -
2360:12, 2362:5,
2363:12, 2363:16,
2366:12, 2373:21,
2378:11, 2385:10,
2398:17, 2398:19,
2406:10, 2412:2,
2412:8, 2412:14,
2433:14, 2454:18,
2454:23, 2455:4,
2456:6, 2456:22,
2466:1, 2466:2
**operation** [2] - 2419:6,
2501:22
**operative** [1] - 2528:5
**opinion** [2] - 2351:10,
2434:24

**opportunity** [6] -
2361:18, 2381:1,
2390:13, 2435:14,
2532:10
**opposed** [3] - 2443:1,
2485:23, 2485:24
**options** [1] - 2485:7
**order** [5] - 2357:10,
2357:12, 2417:25,
2532:4, 2532:11
**ordering** [1] - 2349:5
**ordinary** [4] - 2460:20,
2461:20, 2479:11,
2479:14
**ORG** [2] - 2518:6,
2523:7
**organization** [2] -
2382:12, 2477:21
**original** [10] - 2357:20,
2364:12, 2364:18,
2412:11, 2414:5,
2483:21, 2511:5,
2527:22, 2528:5,
2531:1
**originally** [3] -
2416:21, 2510:16,
2528:2
**originates** [1] -
2478:22
**originator** [1] - 2519:9
**originator's** [3] -
2357:9, 2357:10,
2357:13
**otherwise** [1] - 2379:5
**ought** [1] - 2348:22
**outcome** [1] - 2418:15
**outright** [1] - 2386:16
**outset** [1] - 2353:8
**outside** [2] - 2399:15,
2510:14
**overnight** [1] - 2350:7
**overruled** [3] - 2424:6,
2437:19, 2452:20
**overt** [1] - 2527:15
**owe** [4] - 2519:21,
2524:1, 2524:3,
2524:4
**owed** [9] - 2374:9,
2434:13, 2440:17,
2440:19, 2459:8,
2459:10, 2463:16,
2474:5, 2494:11
**OWEN** [1] - 2344:7
**own** [9] - 2359:15,
2425:12, 2440:14,
2465:5, 2475:3,
2480:10, 2483:8,
2491:13, 2491:15
**owned** [10] - 2359:22,
2359:23, 2360:8,

2399:2, 2433:5,
2453:10, 2464:24,
2492:20, 2492:24,
2494:13
**owner** [3] - 2391:25,
2453:25, 2454:6
**ownership** [13] -
2370:10, 2384:6,
2433:11, 2433:12,
2436:24, 2437:7,
2437:9, 2437:15,
2437:20, 2465:4,
2475:12, 2493:11,
2529:14
**owns** [1] - 2398:24

---

# P

**Page** [1] - 2404:6
**page** [52] - 2353:20,
2364:6, 2364:25,
2365:5, 2365:16,
2376:24, 2390:23,
2391:2, 2391:3,
2391:10, 2391:14,
2393:19, 2404:9,
2407:10, 2410:13,
2412:15, 2419:19,
2420:18, 2422:19,
2422:22, 2424:14,
2426:7, 2455:2,
2458:13, 2458:14,
2463:5, 2464:23,
2465:1, 2467:11,
2467:23, 2470:8,
2471:7, 2473:2,
2480:13, 2481:17,
2481:23, 2506:18,
2507:16, 2508:13,
2509:18, 2513:13,
2515:25, 2517:24,
2519:12, 2520:3,
2521:21, 2523:17,
2524:22, 2525:6,
2525:7
**pages** [6] - 2353:21,
2365:4, 2390:13,
2390:18, 2458:13
**paid** [32] - 2370:21,
2371:17, 2371:22,
2372:2, 2372:3,
2372:9, 2374:10,
2374:12, 2377:14,
2377:20, 2379:12,
2379:19, 2379:20,
2379:21, 2384:12,
2389:15, 2389:17,
2396:25, 2398:10,
2403:5, 2410:10,
2411:8, 2419:3,
2419:5, 2419:10,

2420:6, 2443:25,
2444:18, 2460:25,
2466:18, 2467:6,
2503:4
**Palm** [2] - 2433:5,
2435:24
**Palms** [6] - 2402:16,
2402:23, 2405:12,
2405:20, 2436:19,
2436:20
**paperwork** [1] -
2516:12
**paragraph** [10] -
2365:6, 2365:16,
2371:6, 2372:13,
2374:5, 2471:8,
2527:23, 2529:20,
2530:11, 2530:13
**Paragraph** [3] -
2410:16, 2528:9,
2530:1
**paragraphs** [1] -
2529:6
**paraphrasing** [1] -
2372:12
**parcel** [13] - 2362:22,
2366:20, 2367:15,
2367:17, 2367:22,
2417:15, 2417:18,
2417:21, 2417:22,
2418:19, 2473:9,
2513:5, 2531:10
**Park** [3] - 2391:8,
2397:14, 2398:3
**park** [1] - 2398:16
**part** [36] - 2353:18,
2357:24, 2366:2,
2379:12, 2382:12,
2382:25, 2389:16,
2392:7, 2398:2,
2417:3, 2417:13,
2417:14, 2417:19,
2426:13, 2442:8,
2444:15, 2445:13,
2448:24, 2453:17,
2464:5, 2465:12,
2468:19, 2469:19,
2473:8, 2482:4,
2499:3, 2503:7,
2507:14, 2508:25,
2510:9, 2510:17,
2513:5, 2513:6,
2515:12, 2529:9,
2531:10
**partial** [1] - 2379:5
**participate** [3] -
2367:20, 2381:3,
2501:21
**participated** [1] -
2502:24

**participating** [1] -
2406:2
**participation** [1] -
2440:16
**particular** [17] -
2348:3, 2349:1,
2364:5, 2413:2,
2416:20, 2425:15,
2473:6, 2478:19,
2484:9, 2484:22,
2487:6, 2528:7,
2528:16, 2528:22,
2529:6, 2529:23,
2530:24
**particularly** [1] -
2458:12
**parties** [5] - 2353:8,
2354:10, 2401:16,
2467:12, 2473:8
**partly** [1] - 2483:14
**Partners** [2] - 2495:5,
2495:7, 2496:8,
2496:10
**party** [5] - 2413:20,
2432:7, 2471:12,
2471:14, 2471:15
**pass** [1] - 2484:25
**passed** [4] - 2424:3,
2447:17, 2485:1,
2485:2
**past** [2] - 2435:16,
2494:9
**patent** [2] - 2502:13,
2502:14, 2502:17
**path** [1] - 2510:11
**pause** [2] - 2390:9,
2450:2
**Pause** [3] - 2453:16,
2462:19, 2476:7
**pay** [11] - 2357:8,
2385:14, 2389:15,
2403:7, 2403:8,
2425:25, 2440:23,
2444:23, 2460:17,
2503:11, 2503:14
**paying** [3] - 2385:17,
2415:11, 2524:7
**payment** [16] -
2357:10, 2357:12,
2372:6, 2372:10,
2377:23, 2385:5,
2389:24, 2403:18,
2405:20, 2415:21,
2416:1, 2425:15,
2440:22, 2468:13,
2468:18, 2471:16
**payments** [23] -
2378:4, 2384:24,
2385:1, 2385:2,
2385:11, 2386:2,

2386:4, 2386:5, 2403:12, 2403:17, 2403:19, 2405:12, 2415:13, 2415:15, 2415:25, 2422:12, 2424:2, 2425:20, 2432:3, 2461:21, 2468:10, 2468:23

**payoff** [3] - 2379:16, 2425:11, 2426:20

**pays** [1] - 2374:8

**Peca** [1] - 2529:12

**Pecas's** [1] - 2353:22

**pen** [2] - 2366:18, 2367:3

**penalties** [3] - 2371:17, 2371:19, 2371:20

**penalty** [18] - 2372:5, 2372:22, 2374:10, 2374:17, 2374:21, 2375:2, 2379:20, 2415:9, 2415:12, 2415:15, 2415:21, 2415:25, 2441:15, 2443:13, 2443:19, 2445:7, 2445:10, 2467:9

**pending** [2] - 2418:15

**penthouse** [4] - 2402:16, 2402:20, 2435:23, 2435:25

**Penthouse** [4] - 2402:19, 2402:25, 2404:4, 2405:20

**people** [10] - 2433:22, 2436:13, 2444:23, 2451:1, 2490:25, 2492:10, 2492:15, 2502:5, 2510:9, 2530:11

**people's** [1] - 2492:6

**per** [2] - 2415:9, 2445:2

**percent** [28] - 2362:7, 2362:10, 2371:3, 2371:8, 2374:9, 2375:1, 2380:4, 2380:6, 2381:5, 2381:8, 2382:20, 2384:6, 2385:13, 2385:14, 2389:12, 2391:25, 2397:25, 2398:18, 2398:22, 2406:6, 2407:16, 2437:11, 2443:21, 2455:8, 2456:11, 2475:12, 2487:12, 2487:16

**percentage** [6] -

2383:2, 2407:12, 2425:11, 2455:5, 2455:8, 2475:15

**perception** [1] - 2346:3

**perhaps** [2] - 2453:2, 2468:5

**period** [23] - 2372:11, 2384:9, 2384:10, 2385:23, 2399:24, 2400:22, 2418:12, 2419:11, 2422:25, 2424:3, 2424:10, 2426:6, 2427:5, 2428:12, 2443:1, 2444:21, 2452:17, 2454:4, 2456:4, 2466:3, 2521:19, 2525:3

**permission** [2] - 2421:22, 2503:5

**permitted** [1] - 2503:11

**person** [2] - 2411:4, 2430:2, 2453:10

**personal** [13] - 2408:23, 2410:8, 2457:9, 2464:5, 2464:24, 2468:12, 2472:3, 2472:6, 2474:4, 2503:4, 2503:11, 2512:6, 2529:18

**personally** [10] - 2360:18, 2402:17, 2410:7, 2410:20, 2435:19, 2438:16, 2459:2, 2474:1, 2489:25, 2490:1

**persons** [3] - 2511:11, 2529:20, 2530:1

**perspective** [4] - 2346:2, 2346:9, 2413:19, 2511:9

**Peter** [2] - 2476:15, 2477:2

**PETER** [2] - 2476:20, 2534:18

**petition** [4] - 2394:3, 2464:10, 2465:13, 2473:18

**petitioning** [1] - 2392:3

**petitions** [1] - 2439:2

**Phil** [42] - 2360:14, 2367:12, 2406:17, 2408:12, 2408:22, 2410:7, 2410:20, 2411:4, 2411:14, 2412:22, 2413:13,

2413:21, 2427:13, 2453:8, 2453:19, 2489:21, 2489:24, 2491:25, 2492:17, 2492:25, 2495:8, 2497:21, 2499:24, 2500:1, 2500:11, 2501:16, 2503:6, 2503:13, 2516:8, 2516:17, 2516:19, 2517:15, 2520:2, 2520:7, 2520:12, 2520:13, 2520:18, 2521:6, 2523:22, 2523:25, 2525:18, 2525:21

**Philip** [2] - 2343:6, 2426:9

**Phillip** [4] - 2343:21, 2356:22, 2478:20, 2480:8

**PHILLIP** [1] - 2343:6

**Phoenix** [2] - 2359:9, 2459:7

**phone** [3] - 2517:6, 2517:7, 2521:8

**photocopy** [3] - 2473:2, 2495:20, 2495:22

**physical** [1] - 2392:22

**physically** [1] - 2414:4

**picture** [1] - 2445:12

**piece** [5] - 2362:22, 2366:23, 2383:5, 2492:24, 2494:13

**Place** [1] - 2402:23

**place** [9] - 2381:13, 2411:9, 2411:13, 2421:15, 2422:15, 2427:17, 2431:10, 2468:1, 2471:1

**places** [1] - 2484:5

**plaintiff** [1] - 2502:3

**Plan** [1] - 2391:20

**plan** [8] - 2382:12, 2392:8, 2394:3, 2438:13, 2439:10, 2439:13, 2439:23, 2440:5

**plans** [1] - 2447:3

**player** [3] - 2383:1, 2528:11, 2530:9

**players** [2] - 2406:2, 2531:18

**Plaza** [2] - 2343:16, 2344:8

**pleased** [1] - 2512:14

**pleasure** [1] - 2414:9

**plot** [1] - 2366:15

**plus** [2] - 2416:11,

2467:9

**point** [42] - 2348:6, 2352:25, 2374:14, 2378:2, 2379:4, 2396:25, 2397:7, 2399:25, 2400:17, 2402:15, 2409:9, 2409:18, 2414:25, 2415:18, 2419:15, 2420:10, 2427:12, 2428:1, 2429:11, 2429:19, 2430:4, 2430:10, 2433:10, 2433:25, 2434:7, 2436:23, 2438:5, 2439:12, 2440:4, 2441:5, 2441:12, 2448:25, 2456:13, 2469:7, 2473:25, 2483:2, 2484:13, 2491:16, 2493:19, 2504:12, 2505:24, 2522:21

**pointing** [2] - 2394:12, 2422:19

**points** [1] - 2373:25

**Polytechnic** [1] - 2484:1

**Ponzi** [1] - 2511:25

**portfolio** [1] - 2486:22

**portion** [11] - 2345:10, 2367:16, 2379:20, 2382:2, 2389:3, 2400:9, 2417:25, 2469:24, 2471:16, 2479:18, 2497:13

**portions** [1] - 2447:13

**position** [5] - 2457:15, 2465:17, 2482:19, 2483:25, 2530:4

**possessed** [1] - 2417:11

**possession** [4] - 2347:10, 2347:14, 2347:19, 2505:17

**possibility** [1] - 2442:13

**possible** [5] - 2428:18, 2447:15, 2450:10, 2450:11, 2451:24

**possibly** [4] - 2432:7, 2442:25, 2451:1, 2531:18

**post** [1] - 2468:23

**post-payments** [1] - 2468:23

**postpone** [2] - 2387:2, 2441:3

**postponing** [1] -

2415:9

**potential** [2] - 2441:23, 2529:16

**potentially** [1] - 2492:10

**practice** [1] - 2503:10

**practices** [2] - 2357:25, 2485:13

**pre** [1] - 2468:23

**pre-payments** [1] - 2468:23

**precluded** [1] - 2527:15

**preface** [1] - 2425:3

**pregnancies** [1] - 2452:4

**prep** [2] - 2347:13, 2350:1

**preparatory** [1] - 2527:10

**prepared** [3] - 2350:25, 2469:4, 2499:22

**prepayment** [15] - 2371:19, 2371:20, 2372:5, 2372:21, 2374:10, 2374:17, 2374:20, 2375:1, 2379:20, 2441:15, 2443:12, 2443:18, 2445:7, 2445:9, 2467:9

**prepped** [1] - 2347:11

**presence** [2] - 2345:4, 2399:15

**present** [4] - 2347:12, 2414:4, 2421:9, 2447:23

**presented** [6] - 2345:12, 2345:23, 2345:24, 2346:3, 2346:16, 2348:2

**presenting** [1] - 2421:17

**preserve** [2] - 2416:1, 2435:11

**preserving** [1] - 2434:2

**president** [6] - 2365:1, 2388:14, 2404:11, 2406:16, 2413:6, 2413:7

**pretty** [1] - 2527:9

**prevent** [2] - 2441:5, 2441:10

**previous** [1] - 2521:22

**previously** [3] - 2471:22, 2495:6, 2524:8

**price** [4] - 2367:23,

2375:17, 2389:4, 2442:3

**principal** [9] - 2367:12, 2372:8, 2372:9, 2374:9, 2374:12, 2374:18, 2453:6, 2453:10, 2453:12

**principle** [1] - 2529:25

**printed** [1] - 2399:19

**pro** [3] - 2362:10, 2385:13, 2398:10

**problem** [2] - 2400:22, 2445:3

**problematic** [1] - 2346:10

**problems** [1] - 2386:8

**proceed** [4] - 2351:1, 2352:20, 2384:2, 2447:25

**proceeding** [3] - 2390:9, 2460:9, 2474:5

**proceedings** [6] - 2348:23, 2382:11, 2450:2, 2453:16, 2462:19, 2476:7

**proceeds** [3] - 2379:12, 2433:7, 2440:15

**process** [2] - 2357:12, 2418:11

**processing** [2] - 2357:21, 2358:3

**produce** [1] - 2505:16

**produced** [2] - 2351:20, 2505:21

**professional** [1] - 2491:11

**proffer** [3] - 2346:12, 2351:11, 2447:15

**profit** [1] - 2443:19

**prohibition** [1] - 2485:12

**project** [8] - 2410:2, 2410:3, 2411:24, 2442:13, 2442:23, 2443:5, 2443:7, 2468:21

**projects** [1] - 2442:19

**promise** [2] - 2410:6, 2472:13

**promising** [1] - 2529:15

**promissory** [24] - 2362:21, 2368:7, 2368:9, 2368:13, 2368:17, 2368:23, 2370:1, 2372:13, 2373:22, 2378:11,

2379:19, 2410:8, 2410:9, 2411:9, 2411:19, 2411:24, 2417:8, 2418:20, 2427:9, 2427:13, 2431:4, 2432:9, 2432:16, 2444:6

**pronounce** [1] - 2369:21

**proof** [2] - 2351:6, 2423:17

**proper** [1] - 2418:8

**properties** [1] - 2383:6

**property** [50] - 2360:10, 2361:20, 2361:22, 2362:19, 2366:7, 2366:9, 2366:15, 2366:22, 2366:24, 2367:17, 2368:3, 2375:6, 2375:14, 2375:16, 2375:18, 2379:8, 2382:23, 2383:5, 2403:12, 2409:10, 2409:19, 2411:14, 2415:3, 2415:10, 2415:16, 2415:18, 2416:2, 2416:15, 2417:4, 2417:5, 2417:7, 2417:8, 2417:11, 2417:13, 2417:23, 2418:22, 2433:22, 2441:17, 2442:3, 2442:5, 2444:4, 2444:11, 2444:14, 2444:20, 2453:25, 2454:6, 2464:24, 2467:4

**prosecuted** [3] - 2504:2, 2504:12, 2504:16

**prosecution** [1] - 2355:14

**protect** [1] - 2435:4

**provide** [11] - 2353:9, 2376:8, 2417:21, 2421:19, 2425:5, 2428:8, 2430:18, 2450:10, 2479:1, 2483:10, 2483:22

**provided** [15] - 2346:13, 2347:7, 2347:8, 2351:16, 2351:21, 2353:4, 2372:11, 2379:5, 2415:14, 2418:22, 2442:2, 2447:19, 2461:17, 2483:14, 2494:9

**providing** [4] - 2427:2, 2486:18, 2486:19, 2486:22

**proving** [3] - 2421:10, 2512:12, 2527:16

**provision** [3] - 2469:23, 2470:2, 2472:25

**provisions** [1] - 2468:15

**Public** [1] - 2401:25

**public** [2] - 2355:22, 2478:4

**publishing** [1] - 2480:2

**pull** [1] - 2359:12

**pulled** [1] - 2512:9

**purchase** [46] - 2361:20, 2362:18, 2367:23, 2368:1, 2368:3, 2375:16, 2379:9, 2382:8, 2382:9, 2382:10, 2386:15, 2386:16, 2386:18, 2386:20, 2386:21, 2386:25, 2387:2, 2388:4, 2389:4, 2391:7, 2391:18, 2392:7, 2392:11, 2392:15, 2392:20, 2394:2, 2394:5, 2395:6, 2397:13, 2397:14, 2402:19, 2402:20, 2403:20, 2406:1, 2406:3, 2408:16, 2415:9, 2415:20, 2416:11, 2417:4, 2417:7, 2418:19, 2440:21, 2441:2, 2442:3

**Purchase** [1] - 2404:24

**purchased** [5] - 2366:16, 2405:5, 2411:14, 2416:22, 2416:25

**purchaser** [1] - 2404:10

**purchases** [1] - 2486:20

**purchasing** [4] - 2361:22, 2386:24, 2408:14, 2443:4

**purports** [1] - 2499:18

**purpose** [11] - 2350:16, 2351:24, 2352:12, 2365:7, 2365:10, 2368:6, 2383:20, 2392:12,

2416:20, 2448:17, 2502:10

**purposes** [11] - 2348:23, 2384:15, 2390:5, 2408:14, 2411:23, 2448:16, 2449:15, 2469:14, 2497:25, 2512:22, 2529:21

**pursuant** [9] - 2356:8, 2362:15, 2382:18, 2411:8, 2411:18, 2422:17, 2462:8, 2504:7, 2507:13

**put** [17] - 2348:15, 2363:5, 2365:23, 2371:5, 2375:19, 2414:5, 2416:1, 2482:14, 2485:10, 2486:9, 2493:1, 2499:25, 2507:12, 2508:5, 2508:11, 2516:12, 2532:10

**puts** [1] - 2383:18

**putting** [1] - 2482:17

## Q

**qualify** [1] - 2352:9

**quantified** [1] - 2451:11

**quarter** [1] - 2398:5

**questioning** [4] - 2349:21, 2400:14, 2513:8, 2531:13

**questions** [18] - 2346:1, 2346:7, 2347:4, 2349:8, 2408:6, 2441:14, 2454:25, 2462:4, 2464:15, 2464:19, 2465:21, 2472:17, 2473:11, 2476:9, 2488:12, 2488:14, 2488:16, 2527:21

**quick** [2] - 2409:16, 2495:16

**quite** [2] - 2411:16, 2432:12

## R

**raise** [3] - 2428:10, 2428:22, 2469:8

**raised** [3] - 2366:21, 2408:2, 2428:25

**raising** [1] - 2382:16

**ran** [1] - 2391:23

**Ranford** [3] - 2510:10, 2522:16, 2531:20

**rata** [3] - 2362:10, 2385:13, 2398:10

**rate** [3] - 2370:20, 2371:2, 2371:7

**rather** [1] - 2345:8

**ratio** [1] - 2353:19

**reached** [1] - 2352:19

**reaction** [1] - 2446:9

**read** [30] - 2355:16, 2374:4, 2384:16, 2391:16, 2393:12, 2410:14, 2426:20, 2465:2, 2471:9, 2472:25, 2499:2, 2507:24, 2514:23, 2515:12, 2515:17, 2516:5, 2516:7, 2516:25, 2517:17, 2518:4, 2518:10, 2518:14, 2518:24, 2520:17, 2521:19, 2523:21, 2526:15, 2529:7, 2529:19, 2530:7

**reading** [4] - 2481:9, 2529:8, 2529:22, 2530:18

**reads** [1] - 2530:11

**ready** [3] - 2354:8, 2372:19, 2531:18

**real** [3] - 2357:6, 2433:17, 2457:9

**realized** [5] - 2433:4, 2457:2, 2460:11, 2461:4, 2461:11

**really** [4] - 2420:2, 2468:2, 2510:20, 2511:16

**reason** [6] - 2429:20, 2447:16, 2454:13, 2492:9, 2493:10, 2502:3

**reasons** [1] - 2447:14

**rebuts** [1] - 2468:22

**receipt** [1] - 2418:15

**receive** [6] - 2397:17, 2403:16, 2430:15, 2471:15, 2486:3, 2522:20

**received** [47] - 2350:22, 2351:4, 2355:9, 2356:15, 2358:22, 2364:22, 2369:7, 2373:8, 2373:17, 2376:17, 2380:4, 2380:5, 2381:5, 2381:7, 2403:14, 2403:18, 2405:14, 2417:9, 2422:9, 2422:18,

2424:8, 2425:10,
2425:17, 2430:14,
2433:14, 2438:23,
2439:21, 2457:2,
2457:24, 2461:22,
2501:10, 2509:4,
2509:5, 2509:7,
2514:7, 2514:19,
2517:16, 2518:5,
2522:13, 2536:2,
2536:4, 2536:5,
2536:7, 2536:8,
2536:9, 2536:10,
2536:19

**receiving** [7] -
2403:11, 2419:11,
2436:23, 2437:7,
2439:5, 2514:16,
2514:17

**recently** [1] - 2465:3

**recess** [2] - 2401:3,
2506:17

**recognize** [26] -
2346:8, 2360:20,
2363:11, 2363:16,
2364:14, 2364:17,
2368:16, 2377:17,
2388:7, 2388:10,
2395:18, 2403:23,
2404:2, 2404:8,
2406:11, 2453:17,
2453:23, 2466:24,
2467:1, 2478:16,
2490:2, 2494:25,
2495:2, 2495:23,
2496:22, 2496:24

**recollection** [23] -
2369:12, 2369:17,
2371:7, 2384:18,
2410:1, 2427:2,
2431:4, 2432:6,
2432:18, 2439:21,
2449:21, 2450:5,
2454:3, 2456:3,
2458:2, 2458:16,
2459:13, 2459:17,
2460:8, 2461:13,
2461:19, 2461:24,
2474:11

**reconvene** [1] -
2445:21

**record** [41] - 2346:14,
2348:15, 2348:18,
2348:23, 2350:17,
2350:18, 2353:11,
2372:12, 2373:19,
2374:4, 2391:10,
2396:12, 2399:22,
2407:14, 2409:6,
2432:10, 2447:6,

2447:8, 2447:11,
2464:14, 2465:1,
2465:12, 2465:14,
2471:9, 2477:1,
2489:7, 2498:6,
2499:2, 2506:3,
2507:24, 2508:14,
2508:15, 2518:14,
2518:18, 2520:17,
2522:2, 2529:2,
2529:7, 2530:5,
2530:6, 2532:19

**recording** [1] -
2505:25

**records** [22] -
2351:20, 2355:19,
2355:21, 2355:24,
2356:1, 2356:3,
2357:19, 2357:20,
2383:11, 2398:24,
2398:25, 2400:18,
2422:2, 2466:9,
2468:10, 2468:12,
2468:22, 2471:20,
2477:16, 2486:24,
2512:2, 2524:4

**RECROSS** [2] -
2472:21, 2534:13

**recross** [1] - 2468:5

**RECROSS-
EXAMINATION** [2] -
2472:21, 2534:13

**redacted** [3] -
2447:12, 2447:16,
2447:18

**redirect** [6] - 2345:22,
2346:22, 2349:17,
2350:12, 2462:5,
2473:17

**REDIRECT** [2] -
2463:1, 2534:11

**reevaluating** [1] -
2531:25

**reference** [16] -
2351:19, 2365:13,
2405:3, 2408:13,
2410:5, 2412:2,
2412:8, 2412:14,
2413:12, 2420:5,
2432:5, 2497:14,
2497:18, 2510:12,
2513:3, 2530:12

**referenced** [5] -
2357:22, 2358:1,
2390:24, 2520:6,
2530:13

**references** [1] -
2391:17

**referencing** [1] -
2391:6

**referred** [5] - 2364:25,
2394:6, 2410:19,
2477:12, 2479:6

**referring** [4] - 2406:9,
2435:6, 2455:2,
2520:3

**reflect** [5] - 2348:18,
2350:18, 2365:19,
2400:18, 2407:10

**reflected** [3] -
2398:25, 2406:5,
2409:1

**reflecting** [3] -
2398:22, 2398:24,
2466:9

**reflection** [1] -
2354:22

**reflects** [1] - 2347:15

**refresh** [13] - 2369:17,
2371:6, 2384:17,
2410:1, 2431:3,
2432:6, 2439:20,
2449:21, 2450:4,
2454:3, 2458:16,
2461:19, 2474:11

**refreshed** [1] - 2456:3

**refreshes** [3] -
2369:12, 2432:17,
2459:17

**refunded** [1] - 2468:17

**regard** [2] - 2435:11,
2527:6

**regarding** [15] -
2366:3, 2374:2,
2400:16, 2402:8,
2420:12, 2420:13,
2450:14, 2451:20,
2451:25, 2455:19,
2468:10, 2469:22,
2486:23, 2502:1,
2507:20

**regards** [25] -
2352:18, 2399:18,
2424:23, 2433:2,
2433:25, 2434:1,
2434:10, 2435:7,
2435:24, 2436:13,
2437:16, 2438:19,
2439:21, 2440:8,
2444:18, 2445:13,
2448:23, 2449:21,
2453:24, 2459:8,
2460:8, 2460:11,
2460:12, 2486:11,
2487:19

**registered** [5] -
2477:23, 2480:10,
2481:13, 2483:1,
2484:16

**Registration** [2] -

2479:6, 2480:5

**registration** [7] -
2480:6, 2480:23,
2481:6, 2481:7,
2481:14, 2482:2,
2482:20

**registrations** [2] -
2480:13, 2481:20

**regular** [1] - 2357:25

**regularly** [1] - 2357:23

**regulates** [1] - 2478:3

**regulator** [1] -
2480:22

**Regulatory** [1] -
2477:12

**regulatory** [1] -
2477:21

**rehash** [1] - 2348:24

**relate** [1] - 2468:11

**related** [3] - 2471:12,
2471:14

**relates** [10] - 2346:23,
2351:4, 2364:5,
2408:25, 2409:9,
2469:16, 2472:23,
2529:5, 2529:23,
2530:3

**relationship** [3] -
2427:18, 2427:23,
2450:25

**relationships** [1] -
2485:9

**relative** [1] - 2413:25

**relatively** [1] - 2418:12

**relevance** [3] -
2382:1, 2382:2,
2510:5

**relevant** [4] - 2352:4,
2382:25, 2400:22,
2400:24

**relies** [1] - 2482:16

**remain** [4] - 2359:1,
2428:5, 2476:18,
2488:23

**remained** [3] - 2451:9,
2451:21, 2452:10

**remaining** [1] -
2403:17

**remember** [34] -
2349:5, 2363:3,
2363:6, 2371:2,
2384:11, 2386:18,
2421:17, 2427:9,
2427:12, 2430:20,
2432:15, 2432:16,
2437:6, 2440:4,
2441:9, 2442:12,
2443:6, 2444:24,
2444:25, 2452:22,
2453:1, 2454:16,

2454:19, 2457:10,
2458:2, 2458:23,
2461:3, 2461:10,
2464:19, 2466:11,
2495:25, 2497:20,
2498:12, 2505:1

**remind** [1] - 2424:11

**remove** [1] - 2502:13

**removed** [3] -
2435:15, 2502:18,
2528:2

**remunerated** [1] -
2468:17

**render** [1] - 2351:10

**Rensselaer** [1] -
2484:1

**Reorganization** [1] -
2391:20

**reorganization** [6] -
2392:8, 2394:3,
2438:13, 2439:13,
2439:23, 2440:5

**rep** [1] - 2480:24

**repaid** [3] - 2378:17,
2378:18, 2411:25

**repayment** [1] -
2410:6

**repeat** [3] - 2359:14,
2452:13, 2500:23

**repeated** [1] - 2346:25

**repeatedly** [2] -
2432:2, 2512:1

**repeating** [1] -
2416:12

**rephrase** [1] - 2384:4

**report** [6] - 2447:8,
2478:19, 2478:21,
2480:3, 2480:7,
2482:20

**Reporter(s** [1] -
2344:7

**reporters** [1] -
2353:10

**represent** [3] -
2408:12, 2414:16,
2524:7

**representation** [3] -
2362:17, 2383:17,
2470:1

**representations** [2] -
2441:24, 2492:14

**representatives** [1] -
2352:21

**represented** [11] -
2351:3, 2366:8,
2367:2, 2368:7,
2378:6, 2413:7,
2456:19, 2468:23,
2475:13, 2504:3,
2512:21

**representing** [2] - 2472:10, 2529:15

**represents** [1] - 2367:21

**request** [4] - 2348:20, 2350:10, 2506:6, 2512:18

**requested** [3] - 2387:1, 2430:19, 2441:1

**required** [9] - 2361:19, 2411:24, 2439:9, 2444:23, 2445:14, 2484:2, 2512:23, 2527:13, 2528:19

**requirement** [1] - 2423:21

**Research** [1] - 2481:24

**Reserve** [4] - 2357:2, 2357:3, 2357:11

**reserve** [1] - 2390:13

**resetting** [1] - 2404:21

**residential** [2] - 2360:10, 2367:18

**resolution** [2] - 2508:19, 2508:20

**resolve** [2] - 2352:24, 2532:12

**respect** [25] - 2345:9, 2354:10, 2362:4, 2371:18, 2394:2, 2398:16, 2403:11, 2408:2, 2436:16, 2446:24, 2447:6, 2485:3, 2485:25, 2486:1, 2486:15, 2486:25, 2487:1, 2487:17, 2510:7, 2510:13, 2511:3, 2527:12, 2527:17, 2530:5, 2531:12

**respectfully** [1] - 2511:13

**responding** [1] - 2468:9

**response** [3] - 2446:12, 2469:20, 2532:15

**responsibility** [3] - 2414:23, 2424:25, 2425:2

**responsible** [5] - 2385:13, 2385:17, 2385:18, 2478:6, 2478:25

**rest** [5] - 2350:9, 2367:17, 2390:14, 2461:1, 2526:15

**result** [11] - 2348:16,

2379:15, 2440:16, 2440:17, 2449:1, 2449:11, 2463:17, 2468:5, 2468:17, 2471:23, 2478:1

**resumes** [3] - 2401:7, 2446:22, 2507:4

**retain** [1] - 2362:21

**return** [3] - 2397:17, 2461:2, 2504:7

**returned** [2] - 2392:25, 2396:19

**revealing** [1] - 2409:14

**reveals** [1] - 2465:14

**review** [3] - 2349:3, 2387:1, 2439:20

**reviewed** [2] - 2427:3, 2482:12

**revisit** [1] - 2353:25

**RICHARD** [1] - 2343:23

**Richards** [6] - 2382:13, 2393:14, 2393:16, 2394:17, 2394:21, 2396:19

**Rick** [1] - 2408:11

**rights** [2] - 2403:1, 2418:20

**rise** [6] - 2354:3, 2401:4, 2401:10, 2446:3, 2507:1, 2507:5

**risk** [4] - 2442:6, 2442:9, 2485:21

**risky** [1] - 2441:23

**Road** [2] - 2344:1, 2459:7

**Robert** [1] - 2414:16

**ROBERT** [1] - 2344:3

**role** [3] - 2477:22, 2501:4, 2503:1

**roll** [1] - 2474:1

**Roman** [1] - 2394:10

**Ron** [1] - 2382:13

**RONALD** [1] - 2344:7

**Ronald** [5] - 2393:13, 2393:16, 2394:17, 2394:21, 2396:19

**room** [2] - 2414:4, 2422:16

**roughly** [1] - 2393:19

**round** [1] - 2366:5

**Rucchin** [3] - 2510:10, 2529:13, 2531:20

**Rule** [1] - 2347:9

**rules** [2] - 2477:25, 2479:1

**Rules** [2] - 2462:8, 2462:22

**ruling** [2] - 2524:15, 2530:5

## S

**S63** [1] - 2484:18

**S65** [1] - 2484:23

**S7** [2] - 2484:15, 2484:19

**safe** [1] - 2526:16

**sale** [2] - 2404:3, 2433:8

**sales** [3] - 2444:13, 2444:20, 2486:20

**SARITHA** [1] - 2343:18

**satisfied** [2] - 2378:20, 2411:20

**satisfy** [2] - 2378:23, 2410:9

**save** [4] - 2345:7, 2355:14, 2406:23, 2469:14

**saves** [1] - 2354:17

**saw** [6] - 2360:20, 2415:13, 2484:5, 2490:2, 2508:4, 2510:3

**scared** [1] - 2430:21

**schedule** [1] - 2464:24

**Scheme** [1] - 2511:25

**scheme** [5] - 2510:22, 2528:8, 2528:15, 2529:9, 2530:3

**schemes** [1] - 2528:10

**school** [1] - 2360:2

**scope** [4] - 2468:4, 2510:14, 2530:14, 2530:15

**Scottsdale** [3] - 2381:2, 2448:12

**screen** [17] - 2371:5, 2372:14, 2373:19, 2376:18, 2407:19, 2507:13, 2508:19, 2508:21, 2508:24, 2509:1, 2514:21, 2515:9, 2516:4, 2516:5, 2518:8, 2522:9, 2522:12

**search** [1] - 2441:20

**seat** [1] - 2526:9

**seated** [9] - 2354:6, 2399:16, 2401:13, 2446:4, 2447:24, 2476:25, 2489:6, 2507:2, 2507:7

**SEC** [2] - 2479:1, 2487:13

**second** [12] - 2374:5, 2376:4, 2376:24, 2384:16, 2390:23, 2391:2, 2422:19, 2423:14, 2515:25, 2517:24, 2521:21, 2523:9

**section** [9] - 2405:18, 2482:8, 2482:9, 2482:11, 2483:14, 2484:3, 2484:10, 2484:11, 2484:12

**Section** [1] - 2391:15

**secured** [1] - 2417:23

**securing** [2] - 2415:6, 2418:5

**securities** [9] - 2477:22, 2478:5, 2478:23, 2480:24, 2481:4, 2483:20, 2484:16, 2485:5, 2485:19

**security** [2] - 2410:11, 2444:5

**Security** [3] - 2393:20, 2394:14, 2396:18

**see** [66] - 2345:13, 2345:18, 2346:20, 2355:12, 2355:13, 2360:22, 2363:21, 2364:6, 2364:9, 2365:17, 2366:16, 2368:22, 2373:13, 2377:3, 2377:15, 2377:21, 2389:19, 2390:24, 2391:4, 2393:15, 2393:20, 2400:8, 2400:23, 2402:9, 2407:19, 2407:25, 2412:11, 2423:1, 2423:7, 2423:16, 2424:17, 2425:22, 2432:17, 2441:17, 2460:3, 2465:1, 2473:1, 2473:2, 2474:19, 2476:1, 2480:21, 2481:17, 2481:18, 2490:4, 2492:11, 2496:21, 2499:14, 2508:9, 2509:1, 2514:11, 2514:22, 2515:9, 2516:4, 2516:25, 2517:2, 2519:12, 2519:19, 2520:14, 2520:25, 2522:12, 2523:18, 2525:8, 2525:10, 2526:17, 2526:20, 2533:3

**seeing** [1] - 2474:24

**seeking** [1] - 2449:14

**select** [1] - 2347:6

**self** [1] - 2477:21

**self-regulatory** [1] - 2477:21

**sell** [6] - 2383:5, 2403:2, 2403:4, 2478:8, 2483:7, 2502:13

**seller** [1] - 2388:15

**selling** [1] - 2383:4

**send** [16] - 2357:10, 2369:23, 2370:6, 2370:8, 2394:8, 2395:22, 2396:23, 2397:7, 2501:15, 2516:17, 2519:25, 2520:11, 2521:4, 2521:8, 2523:23, 2525:19

**sends** [1] - 2385:15

**Senior** [1] - 2357:1

**sense** [1] - 2512:21

**sensitive** [2] - 2354:14, 2354:21

**sent** [17] - 2369:13, 2369:19, 2370:2, 2376:21, 2380:17, 2408:2, 2408:3, 2501:14, 2519:17, 2520:7, 2520:17, 2520:18, 2521:2, 2521:3, 2521:10, 2521:12, 2523:22

**sentence** [1] - 2352:2

**separate** [1] - 2417:22

**September** [4] - 2422:23, 2423:3, 2423:14

**Series** [3] - 2351:18, 2351:19

**series** [19] - 2346:1, 2452:15, 2464:15, 2464:19, 2465:21, 2466:8, 2484:15, 2484:18, 2484:23, 2485:1, 2485:2, 2485:3, 2486:6, 2487:3, 2493:20, 2511:24

**serious** [1] - 2532:8

**server** [1] - 2352:23

**servers** [1] - 2353:5

**service** [5] - 2357:4, 2526:4, 2526:5, 2526:10, 2526:12

**Service** [2] - 2357:4, 2357:7, 2357:18

**services** [1] - 2444:18

**Services** [1] - 2481:24
**session** [1] - 2350:1
**Set** [26] - 2437:2,
2437:3, 2437:7,
2437:10, 2437:20,
2454:14, 2455:12,
2455:20, 2455:24,
2456:17, 2456:21,
2457:16, 2464:18,
2465:6, 2474:18,
2474:22, 2475:7,
2475:9, 2475:10,
2475:12, 2475:14,
2475:16, 2475:18,
2475:20, 2476:4
**set** [2] - 2408:12,
2465:5
**setbacks** [1] - 2493:20
**settlement** [10] -
2379:21, 2443:16,
2466:18, 2467:2,
2467:3, 2467:12,
2467:16, 2468:15,
2471:16, 2473:7
**Settlement** [3] -
2382:5, 2382:13,
2382:16
**seven** [1] - 2484:15
**several** [3] - 2352:6,
2386:1, 2464:7
**shall** [2] - 2374:10,
2471:15
**shape** [1] - 2487:20
**share** [6] - 2382:20,
2385:13, 2389:12,
2398:10, 2406:6,
2407:12
**shares** [3] - 2398:23,
2478:8, 2483:7
**sharpening** [1] -
2491:14
**shed** [1] - 2531:24
**short** [3] - 2353:1,
2443:1, 2459:18
**short-term** [1] -
2443:1
**shorten** [1] - 2353:14
**shortened** [1] - 2528:2
**shortly** [2] - 2443:8,
2507:20
**show** [42] - 2349:6,
2363:8, 2364:6,
2365:4, 2366:11,
2369:10, 2371:4,
2372:16, 2376:1,
2380:8, 2383:11,
2390:4, 2393:11,
2403:22, 2406:7,
2407:17, 2407:18,
2409:13, 2424:8,

2425:15, 2427:3,
2428:8, 2430:23,
2432:8, 2439:16,
2439:18, 2453:14,
2458:5, 2458:10,
2463:3, 2466:22,
2468:12, 2494:23,
2496:19, 2507:12,
2508:13, 2508:22,
2509:14, 2514:19,
2517:16, 2521:16,
2524:17
**showed** [4] - 2398:17,
2398:23, 2456:2,
2466:10
**showing** [20] -
2347:19, 2368:15,
2373:19, 2376:18,
2384:14, 2388:6,
2389:3, 2390:22,
2395:14, 2395:16,
2395:17, 2398:14,
2399:4, 2401:23,
2427:13, 2432:16,
2496:21, 2514:10,
2514:25, 2525:6
**shown** [23] - 2385:4,
2386:2, 2417:5,
2422:11, 2424:23,
2425:19, 2426:23,
2427:9, 2431:4,
2432:2, 2432:14,
2432:15, 2433:15,
2440:21, 2446:7,
2462:12, 2462:13,
2463:5, 2464:4,
2466:8, 2471:19,
2473:17, 2487:13
**shows** [4] - 2377:5,
2383:1, 2406:24,
2422:20
**side** [8] - 2419:18,
2420:17, 2470:4,
2480:22, 2509:17,
2513:12, 2522:9,
2528:6
**Side** [2] - 2420:1,
2510:1
**side-bar** [5] - 2419:18,
2420:17, 2509:17,
2513:12, 2528:6
**Side-bar** [2] - 2420:1,
2510:1
**sidebar** [8] - 2352:15,
2381:10, 2381:13,
2383:22, 2399:8,
2431:10, 2432:20,
2468:1
**sidebars** [2] - 2345:8,
2351:9

**sided** [1] - 2436:12
**sides** [1] - 2436:17
**sign** [9] - 2388:3,
2388:16, 2392:21,
2395:1, 2395:5,
2499:20, 2499:23
**signature** [40] -
2345:13, 2345:17,
2345:19, 2345:20,
2345:25, 2346:5,
2346:21, 2349:4,
2349:6, 2349:9,
2349:11, 2349:12,
2349:14, 2349:16,
2349:18, 2349:20,
2350:2, 2350:8,
2350:13, 2364:7,
2364:10, 2364:14,
2364:18, 2364:24,
2368:19, 2388:13,
2393:4, 2404:5,
2412:20, 2412:22,
2412:24, 2473:2,
2495:9, 2495:12,
2495:23, 2497:1,
2497:13, 2499:16,
2500:17
**signatures** [6] -
2349:22, 2388:10,
2404:8, 2412:17,
2413:13, 2473:2
**signed** [32] - 2347:19,
2368:23, 2371:24,
2386:18, 2388:14,
2388:15, 2392:11,
2392:25, 2398:20,
2398:21, 2406:13,
2406:15, 2406:16,
2406:17, 2413:1,
2413:15, 2413:21,
2414:2, 2414:4,
2416:21, 2417:8,
2431:4, 2455:1,
2473:8, 2497:21,
2498:21, 2500:2,
2500:14, 2500:24,
2502:21, 2505:1,
2507:21
**significant** [2] -
2346:18, 2363:14
**significantly** [1] -
2367:22
**signing** [2] - 2373:21,
2386:20, 2386:25,
2393:2, 2419:6,
2466:4, 2500:3,
2500:9, 2504:22
**signs** [2] - 2347:15,
2413:20
**silent** [1] - 2413:17

**similar** [4] - 2350:6,
2400:2, 2482:11,
2482:19
**simple** [1] - 2385:16
**simply** [7] - 2351:5,
2400:10, 2412:9,
2437:20, 2510:2,
2529:19, 2529:25
**single** [1] - 2349:3
**sit** [3] - 2352:21,
2397:21, 2526:9
**site** [2] - 2448:16,
2448:23
**sitting** [1] - 2509:2
**situation** [2] -
2349:15, 2351:7
**SJ** [3] - 2465:2,
2474:21, 2476:5
**slants** [2] - 2349:22,
2349:23
**slide** [1] - 2480:22
**slightly** [3] - 2463:16,
2463:18, 2463:19
**small** [1] - 2471:10
**so-called** [2] - 2351:4,
2382:14
**social** [1] - 2451:25
**sold** [3] - 2402:24,
2402:25, 2435:25
**sole** [2] - 2453:5,
2453:10
**solicit** [1] - 2492:9
**soliciting** [1] -
2510:21
**someone** [4] -
2349:16, 2400:16,
2400:19, 2414:3
**sometime** [9] -
2411:7, 2411:8,
2416:16, 2419:11,
2429:14, 2442:14,
2455:20, 2500:17,
2500:24
**sometimes** [3] -
2408:11, 2446:16,
2469:10
**somewhat** [1] -
2417:6
**somewhere** [3] -
2363:15, 2375:24,
2397:4
**sorry** [25] - 2359:14,
2364:1, 2364:16,
2367:6, 2371:9,
2396:22, 2403:3,
2406:24, 2423:6,
2426:21, 2434:18,
2438:15, 2449:6,
2450:1, 2450:11,
2451:14, 2453:4,

2458:22, 2464:23,
2500:13, 2500:23,
2509:13, 2514:24,
2516:3, 2519:6
**sort** [7] - 2362:3,
2373:25, 2377:13,
2377:23, 2386:15,
2388:3, 2464:1
**sorts** [1] - 2447:8
**sought** [1] - 2511:3
**source** [1] - 2403:12
**sources** [2] - 2375:23,
2461:2
**speaking** [6] - 2437:6,
2442:16, 2451:12,
2461:3, 2461:8,
2461:9
**speaks** [1] - 2472:25
**Special** [1] - 2357:1
**specialty** [4] -
2359:11, 2359:15,
2359:16, 2428:17
**specific** [10] -
2346:11, 2346:14,
2347:4, 2365:20,
2497:23, 2529:5,
2529:20, 2529:24,
2530:11
**specifically** [10] -
2349:5, 2382:5,
2402:7, 2410:16,
2512:17, 2514:25,
2519:12, 2528:18,
2529:12, 2530:13
**spell** [2] - 2477:1,
2489:7
**spelled** [1] - 2372:6
**spells** [1] - 2486:6
**spent** [2] - 2382:19,
2466:20
**split** [3] - 2380:17,
2518:8
**spreadsheet** [1] -
2422:12
**Square** [1] - 2343:21
**stage** [1] - 2493:14
**staggered** [3] -
2465:23, 2465:25,
2466:3
**staggering** [1] -
2461:21
**stake** [3] - 2472:3,
2472:4, 2492:20
**stand** [3] - 2358:13,
2359:1, 2401:7,
2446:22, 2476:18,
2480:4, 2488:23,
2503:24, 2504:1,
2507:4, 2524:13,
2531:3, 2532:19

**standard** [1] - 2487:6
**standardized** [1] - 2468:3
**standards** [1] - 2487:1
**standing** [4] - 2351:9, 2359:1, 2476:18, 2488:23
**stands** [1] - 2423:10
**start** [1] - 2353:24
**startup** [1] - 2465:6
**state** [16] - 2352:4, 2359:8, 2364:11, 2400:5, 2422:23, 2458:19, 2465:19, 2476:25, 2480:19, 2480:22, 2481:1, 2482:5, 2484:19, 2484:20, 2489:6, 2497:16
**State** [4] - 2401:24, 2481:23, 2482:1, 2483:3
**Statement** [1] - 2393:13
**statement** [6] - 2350:16, 2391:12, 2422:22, 2424:10, 2469:15, 2522:19
**statements** [3] - 2415:13, 2486:19, 2492:14
**states** [3] - 2481:5, 2482:6, 2484:22
**STATES** [2] - 2343:1, 2343:3
**States** [4] - 2343:12, 2343:16, 2356:21, 2391:13
**status** [2] - 2481:6, 2481:7
**statute** [1] - 2527:13
**stay** [4] - 2420:14, 2447:3, 2477:4, 2489:9
**steer** [1] - 2447:15
**STEIGER** [1] - 2344:8
**step** [3] - 2476:10, 2488:17, 2526:20
**steps** [2] - 2476:13, 2488:19
**Steve** [1] - 2389:2
**Steven** [1] - 2531:19
**still** [8] - 2421:20, 2441:11, 2450:25, 2451:8, 2512:16, 2521:22, 2526:13, 2531:21
**Stip** [2] - 2354:25
**stipulate** [3] - 2400:6, 2400:7, 2400:21

**stipulated** [4] - 2356:20, 2382:10, 2437:14, 2512:2
**stipulation** [11] - 2356:16, 2356:19, 2358:12, 2358:18, 2390:10, 2401:8, 2401:16, 2421:25, 2422:17, 2498:6, 2507:14
**Stipulations** [2] - 2355:8, 2536:1
**stipulations** [10] - 2353:9, 2353:14, 2354:10, 2354:16, 2354:17, 2354:22, 2354:23, 2355:5, 2355:14, 2356:9
**Stock** [1] - 2485:23
**stock** [3] - 2478:8, 2483:7, 2485:18
**stockbroker** [1] - 2480:25
**stocks** [2] - 2485:6, 2485:15
**stop** [1] - 2513:8
**Strangford** [1] - 2344:4
**strategic** [1] - 2349:15
**streamline** [3] - 2511:7, 2531:1, 2532:4
**Street** [3] - 2481:23, 2482:1, 2483:3
**strikes** [2] - 2347:12, 2468:3
**student** [1] - 2484:1
**studies** [1] - 2418:7
**subdivide** [1] - 2417:17
**subdivision** [1] - 2471:10
**subject** [4] - 2380:20, 2418:22, 2450:8, 2454:6
**submit** [2] - 2439:9, 2479:3
**subpoena** [2] - 2430:18, 2505:9
**substance** [3] - 2365:10, 2373:24, 2395:5
**substantial** [4] - 2441:11, 2442:6, 2445:1, 2460:24
**substantially** [2] - 2383:5, 2434:13
**substantive** [1] - 2356:17
**successful** [1] -

2413:24
**succession** [1] - 2346:1
**suffered** [2] - 2436:13, 2436:17
**sufficient** [1] - 2531:11
**Suffolk** [1] - 2343:21
**suggest** [3] - 2510:11, 2511:13, 2530:8
**suggested** [1] - 2346:4
**suggesting** [2] - 2349:14, 2528:15
**suggestion** [1] - 2400:18
**suggestions** [1] - 2468:10
**suggests** [1] - 2528:14
**suing** [3] - 2502:7, 2502:8, 2502:9
**suitable** [1] - 2485:11
**suite** [2] - 2402:16, 2405:3
**Suite** [2] - 2343:22, 2344:2
**sum** [4] - 2365:10, 2373:24, 2380:1, 2395:5
**summarize** [1] - 2351:13
**summarized** [1] - 2355:15
**summarizing** [2] - 2355:7, 2372:13
**summary** [1] - 2374:1
**sums** [1] - 2384:12
**supercede** [1] - 2511:4
**support** [1] - 2428:8
**supposed** [13] - 2367:13, 2367:15, 2367:24, 2377:24, 2394:7, 2407:11, 2407:22, 2416:22, 2418:17, 2418:18, 2419:5, 2462:2, 2466:3
**surprise** [5] - 2349:19, 2511:3, 2531:3, 2531:4, 2531:7
**surprised** [1] - 2468:7
**suspect** [1] - 2469:6
**sustained** [5] - 2457:20, 2471:25, 2474:16, 2488:5, 2488:10
**switched** [1] - 2447:2
**sworn** [3] - 2359:4,

2476:22, 2489:3
**Sydor** [5] - 2345:10, 2345:11, 2346:17, 2353:21, 2529:12
**System** [1] - 2401:25

**T**

**T.1** [1] - 2356:4
**T.2** [1] - 2356:5
**table** [1] - 2480:14
**talks** [2] - 2474:18, 2527:11
**task** [1] - 2350:24
**tax** [1] - 2461:22
**taxes** [3] - 2460:12, 2460:17, 2460:24
**TD** [1] - 2521:3
**team** [1] - 2352:21
**technical** [1] - 2469:8
**telecommunications** [1] - 2359:24
**telephone** [4] - 2430:2, 2501:18, 2501:21, 2502:11
**ten** [10] - 2348:19, 2378:19, 2385:1, 2386:5, 2419:6, 2419:11, 2423:22, 2424:3, 2425:6, 2427:5
**ten-day** [3] - 2419:11, 2424:3, 2427:5
**ten-minute** [1] - 2348:19
**term** [7] - 2370:24, 2371:4, 2371:11, 2371:15, 2414:2, 2443:1, 2481:1
**termed** [1] - 2481:8
**termination** [3] - 2371:23, 2447:14, 2447:16
**terms** [20] - 2367:8, 2367:19, 2385:9, 2399:23, 2400:13, 2410:20, 2411:18, 2411:19, 2417:19, 2425:24, 2435:4, 2443:17, 2465:25, 2486:6, 2487:7, 2491:13, 2494:10, 2510:4, 2511:16, 2528:8
**test** [10] - 2485:4, 2485:5, 2485:8, 2485:12, 2485:16, 2486:1, 2486:2, 2486:16, 2486:25, 2487:18

**tested** [1] - 2485:17
**testified** [19] - 2349:23, 2359:4, 2378:15, 2389:7, 2408:13, 2411:17, 2414:25, 2433:3, 2447:11, 2451:4, 2457:22, 2459:9, 2460:7, 2463:15, 2476:22, 2489:3, 2514:6, 2524:3, 2531:13
**testifies** [1] - 2526:25
**testify** [16] - 2351:6, 2351:14, 2351:17, 2356:25, 2358:13, 2358:15, 2371:11, 2382:6, 2429:16, 2430:5, 2430:12, 2452:14, 2510:10, 2510:25, 2511:1, 2526:25
**testifying** [3] - 2419:9, 2419:14, 2505:5
**testimonial** [1] - 2358:12
**testimony** [24] - 2345:10, 2347:4, 2350:12, 2351:25, 2358:16, 2358:17, 2382:2, 2382:4, 2382:22, 2400:2, 2409:15, 2417:11, 2423:23, 2425:5, 2446:13, 2451:5, 2452:13, 2468:25, 2475:19, 2478:10, 2497:23, 2503:18, 2504:10, 2510:17
**testing** [1] - 2485:14
**text** [4] - 2365:6, 2449:14, 2450:13, 2471:10
**TG-2** [6] - 2494:24, 2495:15, 2496:3, 2496:4, 2499:11, 2536:24
**THE** [155] - 2345:5, 2348:7, 2348:11, 2348:24, 2350:10, 2351:13, 2351:24, 2352:14, 2353:7, 2353:12, 2353:24, 2354:3, 2354:6, 2355:2, 2355:5, 2355:12, 2356:8, 2356:12, 2356:18, 2358:7, 2358:10, 2358:25, 2360:24, 2361:1, 2363:23,

2364:21, 2366:19, 2369:6, 2373:16, 2376:15, 2378:9, 2381:11, 2383:14, 2383:21, 2384:3, 2388:22, 2388:25, 2390:8, 2390:15, 2390:18, 2391:2, 2396:1, 2396:4, 2399:9, 2399:16, 2400:15, 2400:23, 2401:2, 2401:4, 2401:5, 2401:10, 2401:13, 2401:17, 2401:19, 2401:21, 2404:16, 2404:18, 2407:2, 2407:6, 2408:7, 2411:1, 2413:11, 2414:11, 2420:8, 2420:15, 2422:3, 2422:5, 2422:7, 2423:4, 2424:6, 2424:7, 2431:8, 2432:19, 2436:6, 2437:19, 2445:17, 2445:20, 2446:3, 2446:4, 2446:17, 2446:21, 2447:1, 2447:22, 2447:24, 2448:1, 2452:20, 2455:15, 2457:20, 2462:5, 2462:16, 2462:23, 2467:22, 2468:9, 2469:18, 2469:25, 2470:5, 2471:4, 2471:25, 2472:18, 2473:12, 2474:16, 2476:10, 2476:12, 2476:14, 2476:17, 2476:25, 2477:2, 2477:3, 2479:24, 2488:5, 2488:10, 2488:13, 2488:17, 2488:20, 2488:22, 2489:6, 2489:8, 2489:9, 2490:11, 2496:3, 2498:7, 2498:23, 2500:21, 2506:14, 2507:1, 2507:2, 2507:5, 2507:7, 2509:12, 2509:16, 2510:22, 2510:25, 2512:4, 2512:24, 2513:7, 2518:21, 2519:4, 2524:13, 2524:16, 2525:24, 2526:4, 2526:20, 2526:22, 2526:24, 2527:22, 2528:4, 2529:3,

2530:7, 2531:4, 2531:7, 2531:9, 2532:3, 2532:14, 2532:21, 2532:23
**theory** [2] - 2530:25, 2531:2
**thereabouts** [1] - 2375:1
**thereafter** [2] - 2374:13, 2403:16
**therefore** [2] - 2362:7, 2456:20
**therein** [2] - 2357:22, 2390:24
**thereof** [1] - 2471:14
**they've** [3] - 2350:24, 2511:11, 2512:1
**thinking** [1] - 2436:8
**third** [4] - 2424:14, 2426:7, 2471:7, 2519:12
**this's** [1] - 2531:9
**thoroughly** [1] - 2462:15
**thousands** [1] - 2490:17
**three** [17] - 2362:20, 2368:6, 2377:5, 2379:23, 2381:1, 2417:9, 2425:20, 2430:23, 2431:1, 2432:13, 2438:10, 2444:24, 2450:23, 2484:14, 2486:2, 2498:18, 2531:18
**throughout** [1] - 2350:9
**throws** [1] - 2348:4
**Thunderbird** [1] - 2459:7
**Thursday** [4] - 2526:2, 2531:21, 2531:23, 2532:2
**Timothy** [3] - 2488:21, 2515:21, 2517:19
**TIMOTHY** [2] - 2489:1, 2535:1
**timothy** [1] - 2489:8
**title** [8] - 2355:19, 2356:3, 2382:14, 2394:4, 2394:5, 2394:7, 2418:8, 2441:20
**Title** [4] - 2393:20, 2394:14, 2396:18, 2424:19
**today** [14] - 2350:25, 2397:21, 2419:9, 2419:14, 2454:25, 2478:10, 2503:18,

2504:10, 2504:18, 2505:5, 2532:24, 2533:1, 2533:2
**Todd** [2] - 2373:1, 2374:6
**toe** [1] - 2358:16
**together** [2] - 2414:5, 2458:10
**TOLKIN** [1] - 2344:7
**TOMMY** [1] - 2343:7
**Tommy** [16] - 2343:8, 2344:1, 2356:22, 2360:14, 2365:1, 2388:15, 2404:11, 2406:16, 2412:20, 2413:7, 2413:13, 2473:22, 2489:21, 2489:24, 2491:23, 2492:17
**tomorrow** [9] - 2526:1, 2526:8, 2526:17, 2526:21, 2531:16, 2531:18, 2532:13, 2532:23, 2533:3
**tonight** [1] - 2532:12
**took** [5] - 2353:16, 2369:22, 2381:12, 2411:13, 2431:9
**top** [8] - 2366:16, 2384:11, 2384:13, 2389:10, 2389:17, 2393:12, 2422:19, 2525:10
**total** [8] - 2362:11, 2368:2, 2385:1, 2385:2, 2385:6, 2386:1, 2403:8, 2416:14
**touch** [1] - 2428:17
**tough** [1] - 2503:13
**toward** [6] - 2397:2, 2398:7, 2403:17, 2405:12, 2419:3, 2485:10
**towards** [14] - 2382:19, 2385:2, 2385:24, 2397:18, 2403:14, 2405:11, 2407:11, 2407:22, 2414:23, 2419:4, 2424:24, 2432:3, 2442:18, 2468:24
**track** [1] - 2353:20
**Trade** [3] - 2480:18, 2481:3, 2482:22
**trade** [1] - 2463:21
**trading** [3] - 2478:3, 2485:24
**trailed** [1] - 2493:6

**trained** [1] - 2430:11
**tranche** [2] - 2379:13, 2445:2
**tranches** [1] - 2444:24
**transact** [3] - 2482:6, 2483:11, 2501:2
**transacted** [2] - 2358:2, 2480:20
**transaction** [12] - 2357:7, 2416:10, 2417:12, 2417:13, 2418:16, 2440:10, 2460:17, 2510:8, 2514:20, 2517:2, 2520:15, 2523:9
**transactions** [9] - 2357:19, 2486:20, 2510:18, 2513:5, 2516:24, 2520:4, 2524:4, 2527:7, 2527:12
**transfer** [17] - 2357:5, 2357:13, 2357:16, 2393:20, 2393:23, 2498:15, 2499:12, 2501:11, 2507:21, 2510:5, 2510:13, 2516:12, 2518:5, 2520:4, 2520:20, 2523:18, 2525:12
**transferred** [8] - 2501:8, 2501:13, 2509:7, 2516:6, 2516:7, 2516:9, 2520:25, 2523:21
**transfers** [6] - 2357:22, 2358:1, 2403:16, 2421:9, 2466:10, 2524:7
**translations** [1] - 2356:5
**transpired** [2] - 2345:22, 2348:16
**treat** [2] - 2461:4, 2461:10
**treated** [3] - 2460:17, 2460:23, 2461:20
**treating** [1] - 2461:14
**trend** [1] - 2436:2
**trial** [10] - 2348:2, 2350:9, 2352:21, 2353:14, 2354:8, 2354:13, 2354:20, 2356:24, 2446:18, 2512:22
**tried** [1] - 2491:13
**trip** [1] - 2526:16
**trouble** [2] - 2504:1, 2504:15
**true** [13] - 2357:17,

2364:18, 2364:19, 2375:14, 2396:17, 2411:20, 2413:2, 2467:15, 2467:16, 2472:15, 2479:17, 2495:24, 2511:18
**truly** [1] - 2511:2
**Trust** [1] - 2347:7
**truth** [3] - 2503:25, 2504:8, 2504:15
**truthfully** [1] - 2486:5
**try** [5] - 2428:10, 2429:5, 2435:11, 2516:4, 2531:23
**trying** [9] - 2353:1, 2354:15, 2435:4, 2442:22, 2450:14, 2457:13, 2490:24, 2492:8, 2531:24
**turn** [2] - 2376:24, 2471:7
**turned** [3] - 2436:7, 2527:4, 2527:19
**turning** [2] - 2422:18, 2481:23
**two** [25] - 2353:19, 2361:5, 2372:9, 2374:11, 2388:23, 2403:18, 2405:14, 2405:15, 2410:13, 2413:10, 2415:13, 2422:25, 2423:2, 2426:8, 2426:19, 2450:23, 2452:4, 2458:13, 2467:9, 2478:13, 2487:12, 2487:15, 2490:17, 2532:7
**two-page** [1] - 2410:13
**two-to-one** [2] - 2353:19
**type** [3] - 2347:23, 2480:13, 2531:9
**types** [2] - 2485:17, 2485:21

**U**

**U.S** [2] - 2343:4, 2343:18
**U4** [2] - 2482:17, 2483:21
**Ula** [4] - 2369:21, 2370:3, 2370:10, 2376:20
**ultimately** [5] - 2346:6, 2397:15, 2467:6, 2473:8
**unaware** [1] - 2347:2,

2347:13, 2347:18
**under** [22] - 2365:6, 2374:5, 2376:25, 2383:3, 2417:19, 2424:15, 2425:6, 2430:18, 2444:19, 2465:25, 2478:25, 2480:21, 2487:5, 2487:11, 2497:17, 2504:10, 2505:9, 2515:15, 2517:25, 2527:13, 2530:17, 2532:6
**understood** [1] - 2438:2
**undetermined** [1] - 2465:4
**undoubtedly** [1] - 2347:9
**unethical** [1] - 2485:13
**uniformed** [1] - 2484:23
**unique** [1] - 2480:9
**unit** [6] - 2402:20, 2402:22, 2403:1, 2403:12, 2405:12, 2433:5
**Unitech** [1] - 2359:24
**UNITED** [2] - 2343:1, 2343:3
**united** [1] - 2343:12
**United** [3] - 2343:16, 2356:21, 2391:13
**units** [4] - 2434:9, 2440:12, 2440:14, 2441:3
**University** [1] - 2360:2
**unlawful** [2] - 2485:12, 2529:22
**unlawfully** [1] - 2529:17
**unless** [1] - 2512:10
**unrelated** [1] - 2469:19
**unsecured** [1] - 2463:10
**unsuccessful** [1] - 2353:3
**unusual** [1] - 2414:7
**up** [34] - 2350:7, 2358:16, 2358:18, 2358:25, 2371:5, 2372:3, 2372:14, 2375:19, 2378:4, 2380:1, 2383:9, 2391:25, 2396:6, 2398:15, 2398:23, 2420:14, 2434:25, 2452:13, 2464:7,

2465:5, 2476:17, 2477:4, 2488:22, 2489:10, 2494:14, 2496:10, 2496:15, 2497:3, 2497:22, 2504:14, 2507:20, 2508:21, 2510:20, 2514:23
**updates** [1] - 2438:24
**upper** [2] - 2514:11, 2521:21
**Urban** [32] - 2361:24, 2362:25, 2363:12, 2365:11, 2368:12, 2368:24, 2370:21, 2377:9, 2377:24, 2378:10, 2378:18, 2378:23, 2379:11, 2379:15, 2379:24, 2380:10, 2407:22, 2414:19, 2444:3, 2444:10, 2465:22, 2466:17, 2467:2, 2467:6, 2467:13, 2468:24, 2469:2, 2471:13, 2471:21, 2472:3, 2472:7, 2472:11
**urgency** [3] - 2415:6, 2415:8, 2415:24
**urgently** [1] - 2449:14
**uses** [1] - 2512:6

## V

**valid** [1] - 2439:25
**value** [9] - 2434:24, 2435:16, 2435:22, 2436:3, 2442:6, 2465:8, 2475:24, 2486:23, 2502:17
**valued** [1] - 2485:21
**variables** [1] - 2443:16
**various** [12] - 2367:10, 2384:12, 2412:17, 2478:3, 2484:7, 2485:5, 2485:6, 2485:19, 2501:14, 2510:21, 2530:11, 2531:14
**vehicles** [2] - 2485:6, 2485:15
**verbally** [1] - 2521:8
**verified** [1] - 2353:3
**verify** [1] - 2352:22
**vest** [1] - 2438:3
**vested** [1] - 2435:18
**Veterans** [1] - 2343:22
**via** [1] - 2450:13

**victim** [8] - 2510:7, 2510:23, 2512:8, 2512:11, 2512:16, 2527:19, 2528:20, 2528:23
**victimized** [1] - 2530:2
**victims** [10] - 2352:5, 2510:8, 2510:15, 2510:21, 2511:6, 2511:12, 2511:18, 2528:8, 2529:21, 2530:8
**victims/John** [1] - 2512:21
**view** [1] - 2345:17
**View** [3] - 2480:18, 2481:3, 2482:22
**Virginia** [1] - 2360:3
**virtue** [1] - 2347:16
**visible** [1] - 2446:9
**voice** [4] - 2436:9, 2458:21, 2477:4, 2489:10
**voir** [4] - 2364:2, 2495:16, 2497:8, 2527:5
**VOIR** [7] - 2364:3, 2495:18, 2497:10, 2498:10, 2535:4, 2535:6, 2535:8
**voluntarily** [2] - 2505:10, 2505:12
**voluntary** [2] - 2473:18, 2474:12
**voting** [1] - 2440:4

## W

**Wachovia** [22] - 2496:25, 2497:18, 2499:7, 2501:3, 2502:25, 2503:2, 2503:11, 2514:17, 2515:22, 2515:24, 2516:10, 2516:13, 2517:22, 2519:6, 2519:11, 2519:18, 2520:5, 2520:12, 2521:5, 2521:17, 2523:5, 2524:20
**WAIKAPUNA** [1] - 2408:15
**Waikapuna** [18] - 2361:21, 2362:19, 2362:22, 2366:7, 2366:15, 2375:5, 2375:14, 2379:8, 2408:15, 2409:10, 2409:19, 2410:3, 2415:3, 2415:16,

2415:20, 2416:11, 2432:3, 2467:4
**wait** [3] - 2350:4, 2358:17, 2524:15
**waiting** [2] - 2348:25, 2526:6
**waive** [1] - 2445:14
**walk** [1] - 2510:19
**wants** [1] - 2447:3
**warranteeing** [1] - 2472:10
**warranties** [1] - 2470:2
**warranty** [1] - 2472:13
**Washington** [1] - 2477:11
**wasting** [2] - 2432:8, 2432:11
**water** [1] - 2383:3
**ways** [2] - 2354:16, 2444:13
**web** [2] - 2448:16, 2448:23
**website** [1] - 2428:19
**week** [6] - 2353:18, 2415:9, 2415:12, 2511:1, 2532:7
**weeks** [5] - 2415:11, 2422:25, 2423:19, 2446:12, 2531:22
**WEINBLATT** [1] - 2343:21
**whatsoever** [1] - 2510:7
**whole** [6] - 2391:16, 2417:22, 2418:19, 2422:25, 2489:19, 2531:10
**WICKER** [1] - 2344:7
**wife** [1] - 2430:21
**William** [2] - 2522:16, 2531:20
**willing** [1] - 2442:10
**window** [1] - 2466:6
**Wire** [1] - 2515:14
**wire** [8] - 2377:6, 2393:20, 2393:23, 2403:16, 2421:9, 2501:10, 2501:13, 2524:7
**wired** [1] - 2363:1
**wishes** [1] - 2348:15
**withdraw** [9] - 2352:12, 2378:7, 2427:22, 2429:5, 2429:20, 2435:2, 2435:23, 2470:3, 2518:12
**withdrawals** [7] - 2424:15, 2426:8,

2516:25, 2517:3, 2517:5, 2517:8, 2525:7
**Withdrawals** [1] - 2515:15
**withdrawing** [1] - 2517:12
**withdrawn** [14] - 2361:4, 2378:16, 2380:7, 2386:22, 2393:10, 2395:13, 2397:12, 2397:25, 2427:8, 2457:6, 2472:4, 2492:7, 2492:18, 2525:5
**WITNESS** [7] - 2366:19, 2424:7, 2476:12, 2477:2, 2489:8, 2524:16, 2526:22
**witness** [52] - 2346:4, 2346:17, 2347:1, 2347:11, 2347:12, 2348:3, 2349:3, 2349:6, 2350:2, 2350:7, 2351:3, 2352:8, 2352:9, 2356:24, 2358:13, 2358:20, 2358:25, 2359:3, 2388:24, 2400:4, 2401:6, 2409:17, 2429:12, 2430:6, 2432:1, 2432:8, 2446:5, 2446:7, 2446:22, 2446:24, 2447:6, 2451:13, 2451:15, 2452:23, 2469:19, 2469:22, 2476:13, 2476:14, 2476:18, 2476:21, 2488:19, 2488:20, 2488:23, 2489:2, 2507:3, 2507:4, 2512:25, 2513:2, 2519:2, 2526:23, 2527:5, 2530:21
**Witness** [3] - 2399:14, 2401:7, 2410:15
**witnesses** [8] - 2347:24, 2350:24, 2354:18, 2358:16, 2531:15, 2531:18, 2531:24, 2532:25
**wives** [1] - 2452:5
**word** [7] - 2404:23, 2415:19, 2433:20, 2439:25, 2446:10, 2482:20, 2482:21
**wording** [1] - 2528:9

**words** [6] - 2345:25, 2374:1, 2375:23, 2389:10, 2475:3, 2500:17
**worry** [2] - 2395:11, 2500:11
**worth** [3] - 2367:22, 2442:3, 2465:11
**worthless** [1] - 2465:18
**wrapped** [1] - 2378:4
**write** [1] - 2461:1
**write-offs** [1] - 2461:1
**writing** [4] - 2398:13, 2398:14, 2409:15, 2434:8
**written** [3] - 2368:9, 2410:20, 2512:13

## Y

**year** [13] - 2351:15, 2361:7, 2361:11, 2370:24, 2375:9, 2386:11, 2443:1, 2443:21, 2461:22, 2490:16, 2490:18, 2505:2, 2505:3
**years** [23] - 2359:20, 2359:23, 2360:9, 2361:9, 2370:24, 2371:4, 2371:9, 2371:11, 2371:15, 2372:3, 2374:15, 2384:10, 2384:18, 2402:1, 2411:16, 2414:1, 2426:19, 2428:2, 2437:13, 2456:9, 2464:8, 2477:15, 2498:18
**yesterday** [8] - 2345:9, 2346:17, 2348:16, 2348:25, 2349:8, 2353:9, 2354:12, 2432:5
**YORK** [1] - 2343:1
**York** [13] - 2343:17, 2343:23, 2344:2, 2344:5, 2357:2, 2357:4, 2357:19, 2357:23, 2357:24, 2358:3, 2382:12, 2485:23, 2491:5
**YOU** [1] - 2385:16
**yourself** [7] - 2363:10, 2410:14, 2413:14, 2451:25, 2459:22, 2491:1

## Z

**zero** [5] - 2465:11, 2476:1, 2508:1, 2508:3, 2520:3
**zoned** [1] - 2362:22