5484

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA      :  13-CR-607

        -against-                    US District Court
                                     Central Islip, NY

PHILLIP A. KENNER a/k/a
PHILIP A. KENNER, and
TOMMY C. CONSTANTINE a/k/a
TOMMY C. HORMOVITIS,

                    Defendants.:  July 1, 2015
- - - - - - - - - - - - - - X   9:50 am

          TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE JOSEPH F. BIANCO
          UNITED STATES DISTRICT JUDGE, and a jury.

APPEARANCES:

For the Government:

                         KELLY T. CURRIE
                         United States Attorney
                         One Pierrepont Plaza
                         Brooklyn, New York 11201
                         By:  JAMES MISKIEWICZ, ESQ.
                              SARITA KOMATIREDDY, ESQ.
                         United States Attorneys


For the Defense:         RICHARD D. HALEY  ESQ.
                         For Defendant Kenner

                         ROBERT LaRUSSO, ESQ.
                         ANDREW L. OLIVERAS, ESQ.
                         For Defendant Constantine


Court Reporter:          Dominick M. Tursi, CM, CSR
                         US District Courthouse
                         1180 Federal Plaza
                         Central Islip, New York 11722
                         (631) 712-6108  Fax:  712-6124
                         DomTursi@email.com



          Proceedings recorded by mechanical stenography.
          Transcript produced by CAT.

5485

1          (Call to Order of the Court.  Appearances stated

2     as indicated above.)

3          (The following ensued in the absence of the

4     jury.)

5          THE COURT:  The jurors are all here.

6          I just want to put some case authority on the

7     record.  I have never actually done it.  It should only

8     take a minute.

9          We have had, this goes all the way back to the

10    opening statements, where I precluded Mr. LaRusso and

11    maybe Mr. Haley as well from referencing, reading from the

12    prior indictment in this case, and it has come up several

13    times during the trial, and I just wanted to get case

14    authority on the record.

15         I think I noted this at the time when I

16    precluded it.  I want to put the case authority on the

17    record.

18         It is clear that the ostensible purpose for

19    offering it is to show that there was a prior allegation

20    of fraud in the first indictment that the defendant

21    contends is not fraud and to show to the jury there was

22    some prior allegation of fraud that was in fact not a

23    fraud.

24         The Second Circuit on two different occasions,

25    one in an unreported decision and one in a reported

5486

1    decision, has made clear that an indictment is not an

2    admission of a party opponent; obviously, in this case it

3    would be the government.

4           The first case is *United States v Adams*, 2000 US

5    APP Lexis 14157, Second Circuit 2000, where the defendant

6    argued that an allegation in another indictment should

7    have been admitted into evidence.  And the Second Circuit

8    affirmed the conviction and said exactly what I just said:

9    An indictment is not admissible as an admission of a party

10   opponent.

11          They cited a reported decision, *US v Salerno*,

12   937 F.2d 797 Second Circuit 1991, where the court in

13   Salerno said an indictment is not admissible as an

14   admission of a party opponent since it is, and quoting a

15   Learned Hand decision, *"the charge of a grand jury, and a*

16   *grand jury is neither an officer nor an agent of it the*

17   *United States but a part of the court."*

18          So the rationale as to why a prior indictment

19   somehow can't be utilized as an admission of the

20   government is that it is a product of the grand jury and

21   therefore can't be used for that purpose.

22          As I made clear multiple times, to the extent

23   that a witness went before the grand jury and gave

24   perjurious testimony, some testimony that led to a false

25   allegation, obviously that could be relevant to the

5487

1   credibility of that witness, so I never precluded that.  I

2   made clear that if there was any evidence that a

3   particular witness went in to the grand jury and lied

4   about a fraud allegation, that would certainly be

5   admissible at a minimum as impeachment material for that

6   witness.

7         Here the situation was just to show that the

8   allegation was no longer being pursued and the allegation

9   was false, according to the defense.  And I don't believe

10  under the case law that that is a proper thing.  It

11  certainly would confuse the jury.

12        For all the reasons I already talked about, for

13  them to start considering allegations that are no longer

14  in the indictment and whether or not they are true under

15  403 would be hopelessly confusing to a jury.

16        The Salerno case did state that if the

17  government made a statement in an opening statement or

18  some other forum other than an indictment that was

19  inconsistent with what they were offering at trial, that

20  then it can could be an admission, which is obviously not

21  the situation here.

22        In the Salerno case the government in one

23  prosecution at one trial took the position that a

24  particular individual was the victim of an extortion by

25  the mob, and then in another trial where they were now

5488

1  charging that person for bid rigging were obviously taking

2  different position, that he was not a victim and they

3  wanted to introduce the government's opening statement in

4  the other trial to show that the government in a prior

5  setting had argued that the defendant was a victim and not

6  coconspirator or something like that.

7       That is obviously an entirely different

8  situation that we don't have in the present case with

9  respect to the issue that I have been addressing.

10      So are we ready for the jury?

11      MR. LaRUSSO:  Just one or two other matters, if

12  I may, your Honor.  One we can take up later but this one

13  relates to the witness' testimony, our last colloquy

14  before we adjourned yesterday.

15      I read the court's finding regarding Mr.

16  Semple's conversation with Mr. Galioto and Kevin Brown and

17  what I have done is I have tried to extract comments that

18  I make to the witness and ask him if that is what happened

19  to see if it comports with the court's direction.

20      I would direct his attention back to his

21  testimony regarding a telephone conversation with Mr.

22  Galioto and Assistant US Attorney Kevin Brown and I would

23  ask if during the telephone conversation the gentlemen,

24  did you present your finding regarding the expenditures

25  regarding the Global Settlement Fund including the error

5489

1   of $155,000 sent to AZ Falcon.  He will presumably say

2   yes.

3              Then I would ask him isn't it true that Agent

4   Galioto was not receptive and he made clear that he was

5   not interested and declined to accept your summary.

6              THE COURT:  Okay.

7              MR. LaRUSSO:  Is that fair?

8              THE COURT:  Yes.

9              MR. LaRUSSO:  The other one we can do later.

10             The court reporter pointed out to me that

11  yesterday when I introduced the exhibits of Mr. Foster in

12  total they didn't get all the numbers because I was

13  speaking too fast so they have in the transcript

14  defendants introduced.

15             I know what they are.  I can put them in the

16  record now or I can do it later, judge, because I don't

17  think the government has had a chance to look at what went

18  in.

19             THE COURT:  Let me go off the record for a

20  second.

21             (Discussion off the record.)

22             THE COURT:  The numbers are in the transit.  The

23  reporter wasn't sure what was admitted.

24             What you offered you offered by number and then

25  we had a sidebar and he just wanted to confirm with me

5490

1  that all the exhibits you wanted to offer were admitted

2  and I said yes.

3          MR. LaRUSSO:  The only one that wasn't admitted,

4  Judge, was C313 which was redacted and from Exhibit C313A.

5          THE COURT:  I thought it was R.

6          MR. LaRUSSO:  I'm sorry.  313R.

7          THE COURT:  So 313 is not admitted but 3123R is.

8          MR. LaRUSSO:  Yes.  Does that clarify it?

9          THE COURT:  Yes.

10         And I just want to go back.  You had a

11  discussion with the government about the approved and

12  authorized emails.  You said you hadn't offered them as a

13  group.

14         Have you worked that out?  Do you remember the

15  ones that you put all the approved and authorized emails

16  together?

17         MR. LaRUSSO:  I don't think we really sat down

18  and discussed those, judge.  I know, as the court

19  remembers, I indicated that Mr. Kenner identified this

20  group.  This witness likewise identified the same.  But we

21  haven't sat down.  I believe the government maybe made a

22  comment they had no objection.  I don't remember that,

23  judge.  I have a vague recollection at some point there

24  was, I think Miss Komatireddy --

25         THE COURT:  Mr. Kenner authenticated those

5491

1   emails so I think they should come in.

2           MR. LaRUSSO:  I think the government actually

3   stipulated yesterday.  I'm not positive.  I didn't read

4   the record.

5           THE COURT:  Any objection to that group of

6   emails coming in?

7           MR. MISKIEWICZ:  The ones that are attached to

8   Mr. Semple's report?

9           THE COURT:  Yes.

10          MR. LaRUSSO:  Just the ones dealing with the

11  authorization.

12          MR. MISKIEWICZ:  I think, as we indicated, most

13  of those are admitted in any event in some other format.

14  There were a few that were of witnesses, our victims or

15  individuals who have never testified here.  I don't

16  remember what Mr. Kenner said about those.  If he

17  identified them, I guess we have no objection.

18          THE COURT:  I remember them being shown to him

19  as a group and him identifying them so I am going to admit

20  them.

21          MR. MISKIEWICZ:  All right.

22          MR. LaRUSSO:  I guess, for purposes of the

23  record, I will extract that group which is as I indicated

24  marked with the Bates stamps SMC000013, I believe went to

25  30.

5492

1          MS. KOMATIREDDY:  30 and not 31?

2          MR. LaRUSSO:  No.  31 also.  Pardon.  That is

3    correct.  So he will extract them from the exhibit.  I may

4    make copies and leave the exhibit in tact.  I will mark it

5    C283, which is the full exhibit, and mark it 283A I guess.

6          THE COURT:  You may want to try to figure out

7    what marked and showed Mr. Kenner because an if you have a

8    separate exhibit, that may confuse the jury.  They may

9    have written down what exhibit number you used when

10   Mr. Kenner was testifying.

11         MR. LaRUSSO:  Good point, judge.  I mean, my

12   recollection is I went by the Bates stamp but you may be

13   right.  I will do that before we actually mark it.

14         THE COURT:  You said you were going to think

15   about whether or not that chart which I previously

16   instructed the jurors are obviously admissible against

17   Mr. Kenner, whether you wanted it to be admitted against

18   Mr. Constantine as well since you utilized it.  Do you

19   know what I'm talking about?

20         MR. LaRUSSO:  I have no objection, Judge, at

21   this point in time.

22         THE COURT:  What number is that Exhibit again?

23         MS. KOMATIREDDY:  767.

24         THE COURT:  All right.

25         Bring Mr. Semple in first.  I want to confirm

5493

1    with him he understands my ruling.

2            (Mr. Semple enters the courtroom.)

3            THE COURT:  Good morning, Mr. Semple.

4            Before we bring in the jury, I think Mr. LaRusso

5    has already discussed this with you, but I want to make

6    sure you understand that I have made a ruling with respect

7    to your conversations with Agent Galioto and to the AUSA

8    in the Southern District, that none of the details of that

9    conversation are to come out to the jury.

10           Mr. LaRusso is going to lead you through that

11   with certain questions and you should give truthful

12   answers in terms of declining your invitation to provide

13   your report.  But in terms of the back and forth of what

14   Agent Galioto said or what the AUSA said, that is not to

15   come out.

16           Do you understand that?

17           THE WITNESS:  I understand that, your Honor.

18   Yes.

19           THE COURT:  Okay.  Let's bring in the jury.

20           You can be seated Mr. Semple.  It is going to

21   take a minute.

22           THE WITNESS:  Fine.

23           (The following ensued in the presence of the

24   jury.)

25

Semple - Direct/Mr. LaRusso

5494

1  ROBERT MICHAEL SEMPLE

2          called by the Defense, having been previously

3          duly sworn/affirmed, continued testifying as

4          follows:

5          THE COURT:  Good morning, members of the jury.

6  It is good to see everyone this morning.

7          As you recall Mr. Semple is on direct

8  examination by Mr. LaRusso.  We will continue from that

9  point.

10          Mr. Semple, I remind you that you are continued

11  under oath.  Do you understand?

12          THE WITNESS:  Yes, your Honor.

13          THE COURT:  Also, there is one exhibit, members

14  of the jury, it was a long time ago, and it was something

15  that was referenced yesterday.  It is Government Exhibit

16  767.  It is a chart.

17          I had told you at the time that the chart was

18  only admissible against Mr. Kenner.  Mr. LaRusso has

19  withdrawn any objection to that chart being admissible

20  against his client.  So that exhibit you can consider with

21  respect to both defendants.

22          Go ahead.

23

24  DIRECT EXAMINATION (Continued)

25  BY MR. LaRUSSO:

Semple - Direct/Mr. LaRusso

5495

1    Q.   Mr. Morning, Mr. Semple.

2    A.   Good morning.

3    Q.   Yesterday you testified about reviewing the list of

4    expenditures, or I should say the Ron Richards trust

5    account, that you reviewed big ticket items, and you went

6    through some of them with us.

7            Did you review just the big ticket items when

8    you did your initial analysis?

9    A.   No.  We reviewed all of them.  But what I meant by

10   reviewing the big ticket items is, we did a little more

11   extensive work on the larger ticket items.

12   Q.   And you also told us that you subsequently spoke to

13   Mr. Gonchar which he provided a copy of the document that

14   you prepared, the three-page exhibit, 767, before you

15   began your telephone conversation with him?

16   A.   Yes.

17   Q.   And you went through all of those expenses with him

18   over the telephone conference?

19   A.   Well, he and his attorney.

20   Q.   I'm sorry.  He and his attorney?

21           What was the attorney's name?

22   A.   Robert Lane.

23   Q.   Did you at any point in time have any discussion

24   about particular aspects of the expenditures, that you

25   recall?

Semple - Direct/Mr. LaRusso

5496

1    For example, let me direct your attention to the
2    Jowdy items, the Mexican attorneys, things like that.  Do
3    you recall conversations with him with regard to those?
4    A.   There were a number of items that I didn't have
5    specific detail on and was not able to review but had
6    general notes that I had gotten from the Kenner-Richards
7    analysis.
8         And those particular items, when I brought them
9    up and said I needed to do further investigation, Sergei
10   said I know what that is.  I understand that.
11        Like the HL Group was a New York media firm
12   hired in relation to the Jowdy litigation.  He was well
13   aware of that.  So there were other expenditures like that
14   that he was aware of.
15   Q.   Do you remember any in particular?  Any others?
16   A.   Yes.  Sullivan and Cromwell was one.  It was a New
17   York law firm and that was, they were retained on the
18   proposed Playboy acquisition.
19   Q.   What did Mr. Gonchar say?
20   A.   He said he know of the firm and he understood that
21   they were being retained, and some of the other players
22   were aware of it.  And I asked him -- he was curious
23   whether it was something they want to invest in.  And he
24   said:  Well, if you are going to tell my wife, no.
25        But basically he said you:  No.  Look.  We were

Semple - Direct/Mr. LaRusso

5497

1    aware of it.  We understood it and we agreed to it.  But

2    there was nothing ultimately provided to them to invest

3    in.

4    Q.    You mentioned I think at the end of the testimony

5    yesterday that there came a time that you had a

6    conversation with Special Agent Galioto and an Assistant

7    United States Attorney.  Is that correct?

8    A.    Yes.

9    Q.    Kevin Brown?

10   A.    Devin Brown.  Yes.

11   Q.    Can you tell us just briefly the background, how that

12   telephone conference came to be?

13   A.    I had been employed by Sergei Gonchar in relation to

14   the Global Settlement Fund.  There were issues and

15   questions the government had in relation to the Global

16   Settlement Fund.  And Sergei asked that attend a

17   telephonic conference call with his attorney Robert Lane,

18   myself, and I believe it was Devin Brown and Matt Galioto

19   on the other side, those were the only two I knew of that

20   were there and we had a discussion.

21   Q.    That was at the request of Mr. Gonchar that you

22   cooperated with regards to the findings that you made.  Is

23   that correct?

24   A.    Absolutely.  Yes.

25   Q.    Is it fair to say that during the course of that

Semple - Cross/Ms. Komatireddy

5498

1    conversation, you presented your findings regarding the

2    expenditures from the Global Settlement Fund including the

3    error in the $155,000 sent to AZ Falcon?

4              Is that a fair statement?

5    A.   Yes.

6    Q.   Is it also true that Agent Galioto was not receptive,

7    that Agent Galioto made it clear that he was not

8    interested and even declined to accept the summary?  Is

9    that right?

10   A.   That's correct.

11             MR. LaRUSSO:  Your Honor, no further questions.

12             THE COURT:  Cross-examination.

13

14   CROSS-EXAMINATION

15   BY MS. KOMATIREDDY:

16   Q.   Good morning.

17   A.   Good morning.

18   Q.   How are you?

19   A.   I'm doing great.  How are you doing?

20   Q.   Now, Mr. Semple, you are testified a little bit about

21   prior engagements so let's start with that.

22             Mr. Gonchar was your client in 2011.  Right?

23   A.   I believe so.  Yes.

24   Q.   You did his tax returns, for example.

25   A.   I believe so, yes.

Semple - Cross/Ms. Komatireddy

5499

1      I don't do tax returns.

2   Q.   You were an accountant -- you don't do tax returns?

3   A.   No.  My firm does.

4   Q.   Who is Brian Semple?

5   A.   My brother.

6   Q.   So Brian Semple did his tax returns.  Correct?

7   A.   He was the partner who signed the tax returns.  Yes.

8   Q.   And that is because Mr. Gonchar retained your firm

9   to do his tax returns that year, right?  Or for 20111?

10  A.   Again, I don't recall as I sit here, but I will

11  accept that as being reasonable.  I believe we were

12  preparing his returns in 2011.

13  Q.   Okay.  And so you did this review of the Global

14  Settlement Fund for Mr. Gonchar and that was one among

15  several things you did, you and your firm did, for him.

16  Is that fair?

17  A.   That's correct.

18  Q.   Now, you have gone also done work for

19  Mr. Constantine.  Correct?

20  A.   Yes.

21  Q.   For example, when Mr. Constantine filed bankruptcy

22  2012, you were the -- you were hired to assist with the

23  bankruptcy.  Correct?

24  A.   Preparing the bankruptcy schedule.  Correct.

25  Q.   You were hired to prepare revised tax returns in

Semple - Cross/Ms. Komatireddy

5500

1  connection with those bankruptcy schedules.  Correct?

2  A.  I wouldn't say revised tax returns.  I think we were

3  hired to prepare tax returns.  But I don't do taxes so --

4  I believe our firm was, yes.

5  Q.  But you actually filed a declaration in that

6  bankruptcy, didn't you?

7  A.  Yes.

8  Q.  You.  Not or your brother.

9  A.  No, on behalf of our firm.  Yes.

10  Q.  And so you actually filed a declaration about

11  Mr. Constantine's tax returns.  Correct?

12  A.  I don't have a copy of the declaration so I can't

13  answer that question.

14  Q.  You remember filing the declaration?

15  A.  No, I don't.

16  Q.  You don't?

17  A.  No.

18  Q.  Do you remember telling the bankruptcy court that

19  initially the IRS had a claim for more than $1.1 million

20  in taxes from Mr. Constantine?

21  A.  I don't recall as I sit here, but I do recall that

22  fact.

23  Q.  I'm going to hand you what has been marked Government

24  Exhibit RS6.  See if that refreshes your recollection.

25            MR. LaRUSSO:  Your Honor, may we have a sidebar?

Semple - Cross/Ms. Komatireddy

5501

1          THE COURT:  Yes.

2          (Continued on the following page.)

Semple - Cross/Ms. Komatireddy

5502

1        (Discussion at sidebar ensued as follows.)

2           MR. LaRUSSO:  The objection is to any

3   questioning regarding the bankruptcy, especially in

4   regards to the audit.  I purposely stayed away from it.

5   It was not part of our direct examination.  That's number

6   one.

7           Number two, this audit was done.  It was a very

8   thorough audit.  It resulted in no liability in regards to

9   I believe 2005 and a return of $90 to Mr. Constantine in

10  regards to 2006.  I purposely stayed away from it.  I

11  thought it was a side issue.  It has nothing to do with

12  the case.

13          MS. KOMATIREDDY:  This line of questioning is

14  intended to show that Mr. Semple has done multiple things

15  fir Mr. Constantine or multiple engagements.  It's

16  intended to show bias.  There is no allegation here of

17  bankruptcy fraud.  That is not our intention.  I had

18  expect him to remember this without having to refresh his

19  recollection.  My questions were simply going to be did

20  you file a declaration in support of Mr. Constantine, that

21  the result of his analysis was that he saved

22  Mr. Constantine over a million dollars, and then I was

23  going to go on:  Did you file a declaration in the next

24  suit to the same effect?  Did he file a declaration?  He

25  has been involved.

Semple - Cross/Ms. Komatireddy

5503

1    THE COURT:  Okay, she is not suggesting any

2    fraud.  She is suggesting he saved him a million dollars.

3    Right?

4         MS. KOMATIREDDY:  Yes.  I think is a --

5         THE COURT:  I don't think that is an incorrect

6    question.

7         MR. LaRUSSO:  I was actually thinking of

8    bringing it out on direct but I didn't want to open the

9    door.  But if she wants to bring out the fact that he

10   saved Mr. Constantine a million dollars, I understand the

11   relevancy.  You want to establish a relationship between

12   the two, your Honor.  That's no problem.  But I don't know

13   why you have to go into the details --

14        THE COURT:  She is just refreshing his

15   recollection.  If you want me to, I will tell the jury

16   there is no allegation of tax fraud.

17        MR. LaRUSSO:  I would appreciate that.  If she

18   is going to into the no bias, I have no problem with that

19   but I would ask for the jury to understand this is not a

20   fraud case.

21        THE COURT:  No.

22        (Discussion at sidebar was concluded.)

23        (Continued on the following page.)

24

25

Semple - Cross/Ms. Komatireddy

5504

1           (The following ensued in open court.)

2           THE COURT:  Members of the jury.  I want to give

3    you an instruction to make sure there is no

4    misunderstanding.

5           The government has made no allegation of

6    bankruptcy fraud or tax fraud in respect to

7    Mr. Constantine.  The government has not made any such

8    allegation.  I allowed questioning with respect to this

9    only because the government just wanted to go into the

10   nature of the relationship between Mr. Constantine and Mr.

11   Semple.

12          So that is the only purpose for this

13   questioning.  But I want to make sure that you are clear

14   there is no allegation of either tax fraud or bankruptcy

15   fraud.  Okay?

16          Go ahead.

17          MS. KOMATIREDDY:  Thank you.

18   BY MS. KOMATIREDDY:

19   Q.   Go back to this work that you did for Mr. Constantine

20   in connection with his bankruptcy.  You and your firm

21   redid the tax returns for 2007 to 2009.  Right?

22   A.   We took care of the tax returns for 2007 through

23   2009.

24   Q.   And in preparing those tax returns for 2007 through

25   2009, you saved Mr. Constantine over a million dollars.

Semple - Cross/Ms. Komatireddy

5505

1  Right?

2  A.   No.

3  Q.   Isn't it true, sir, that you concluded that the IRS'

4  tax bill of over $1.1 million should actually only be a

5  little over $4,000?

6  A.   That's correct.

7  Q.   You are an accountant, sir.  The difference between

8  $1.1 million and $4,000 is over a million dollars.  That's

9  a lot of money.  Money?

10  A.   Yes.

11  Q.   Now, you were also involved -- when Mr. Constantine

12  was sued by investors in Arizona in connection with

13  Eufora, his lawyer Mr. Wilenchik hired you again.

14  Correct?

15  A.   That's correct.

16  Q.   And you served as an accountant for Eufora.  Correct?

17  A.   No.  I was consulting expert for Wilenchik Bartness

18  law firm.

19  Q.   You were engaged by Eufora to audit the books of

20  Eufora.  Correct?

21  A.   No, I was not.

22  Q.   I hand you what has been marked as RS6 (sic).  Take a

23  look at that and let me know if it refreshes your

24  recollection.

25  A.   I have read it.

Semple - Cross/Ms. Komatireddy

5506

1    Q.   Isn't it true that you were engaged by Eufora to

2    audit the books of Eufora in connection with the

3    litigation brought by Mr. Stolper?

4    A.   No.

5    Q.   You were paid by Eufora, weren't you, Mr. Semple?

6    A.   We were given an initial retainer directly by Eufora

7    but we were engaged by the Wilenchik Bartness law firm.

8    Q.   And that initial retainer was approximately -- let's

9    back up.

10        You were you paid three different times in 2011

11   from Eufora, weren't you.

12   A.   I don't recall.

13        MS. KOMATIREDDY:  The government moves GX 4814,

14   4815, and 4816 into evidence as certified bank records.

15        MR. LaRUSSO:  No objection, your Honor.

16        THE COURT:  Mr. Haley?

17        MR. HALEY:  Certified bank records.  Judge, I

18   have no objection.

19        THE COURT:  Those exhibits are admitted.

20        (Government Exhibit GX 4814, 4815, and 4816 in

21   evidence.)

22   BY MS. KOMATIREDDY:

23   Q.   Mr. Semple, Semple Marchal & Cooper, that is your

24   firm.  Correct?

25   A.   Yes, ma'am.

Semple - Cross/Ms. Komatireddy

5507

```
1    Q.    This is a check from Eufora to your firm, February
2    2011, for $10,000.  Correct?
3    A.    That's correct.
4    Q.    And 4815.  Again that is your firm getting this check
5    from Eufora.  Correct?
6    A.    That's correct.
7    Q.    March 2011 you are getting another $10,000.  Correct?
8    A.    You did that pretty quick.  So is it three checks for
9    $10,000 each?
10   Q.    Well, this one is March 2011, that is also $10,000.
11   Correct?
12   A.    That is a $10,000 check.  That's correct.
13   Q.    4816 is another check from Eufora to your firm.
14   Correct?
15   A.    Yes.
16   Q.    And it is in May 2011 and that is also, that one is
17   $5,000.  Correct?
18   A.    Yes.
19   Q.    You were owed more money for your engagement with
20   Eufora?
21   A.    Yes.
22   Q.    Did you get it?
23   A.    No.
24   Q.    So you are still owed money?
25   A.    We are still owed money from Eufora.
```

Semple - Cross/Ms. Komatireddy

5508

1   Q.   You also did the financial statements for a company

2   called Technique Visual Arts.  Do you remember that?

3   A.   I have no idea.

4   Q.   You don't remember the company affiliated with

5   Mr. Kenner called Technique Visual Arts in 2004?

6   A.   In what?

7   Q.   In 2004.

8   A.   I have no idea, ma'am.

9           The name sounds vaguely familiar.  It may have

10  been an engagement done by my firm but we are a fairly

11  large firm and I'm not involved in every engagement.

12  Q.   Your firm used to be called Semple & Cooper.  Is that

13  correct?

14  A.   That's correct.

15  Q.   I hand you what has been marked as Government Exhibit

16  RS7.  See if that refreshes your memory.

17          Isn't it true that you audited the financial --

18  A.   Can I please have a minute to review this?

19  Q.   Sure.

20  A.   I appreciate your indulgence.

21          (There was a pause in the proceedings.)

22  A.   Okay.

23  Q.   Isn't it true that you audited the financial

24  statements for Technique Visual Arts?

25  A.   I don't know.  I don't recall it as I sit here.

Semple - Cross/Ms. Komatireddy

5509

1     This is not a signed copy of an opinion.  I

2  don't know where you got it from.

3     I can't answer the question.  Im sorry.

4     The name sounds remotely familiar but I'm really

5  not familiar with the engagement.

6  Q.   You didn't file something with the SEC as part of a

7  10K saying you certified the financial statements for

8  Technique Visual Arts?

9  A.   Ma'am, I don't file things with the SEC.  Our clients

10  file things with the SEC.  We only consent to the use of

11  our reports in those SEC filings.

12     So I don't recall as I sit here whether our firm

13  ever provided a consent in this engagement.  I'm not

14  telling you we didn't.  I'm not denying that we did it,

15  but I don't have any independent knowledge as I sit here

16  today.  And this is not refreshing my memory.  I'm sorry.

17  Q.   Is it fair to say you are also involved with various

18  business deals with Mr. Constantine over the years?

19  A.   That's a pretty vague, ambiguous question.  I can't

20  answer that question.  If you have a specific question,

21  I'm happy to answer it.

22  Q.   Well, you did know about a plane called Eclipse 500

23  right?

24  A.   That's correct.

25  Q.   You were involved when there was a dispute over

Semple - Cross/Ms. Komatireddy

5510

1   Mr. Constantine's brokering of a deal in connection with

2   the Eclipse 500.  Right?

3   A.   Yes I assisted Mr. Wilenchik in that matter.

4   Q.   There is a dispute involving Mr. Wilenchik,

5   Mr. Constantine and another individuals and the upshot was

6   that there was an analysis that there was $200,000 that

7   Mr. Constantine owed.

8   A.   That's right.

9   Q.   Is that right?

10  A.   Yes.

11  Q.   And you got involved in helping broker a settlement

12  of that.  Correct?

13  A.   Yes, I did that with Mr. Wilenchik.

14  Q.   You he did that -- in doing so you avoided a law suit

15  for Mr. Constantine.  Correct?

16  A.   I don't know that I avoided anything.

17        I helped Mr. Wilenchik get $200,000 that he was

18  owed in rebuilding that aircraft.

19  Q.   You put the -- you helped put the dispute to bed.  Is

20  that true?

21  A.   That's what I did.  Yes.

22  Q.   And after Mr. Constantine got arrested in this case,

23  you also got involved in helping with his other airplanes.

24  Correct?

25  A.   The Eclipse 500.  My involvement in the Eclipse 500

Semple - Cross/Ms. Komatireddy

5511

1    occurred after he was arrested in this case.

2            And, yes, I worked diligently with attorneys for

3    Sergei Gonchar to unwind the mess created with the Falcon

4    aircraft.  Yes.

5    Q.    We are talking about the Falcon aircrafts.  We are

6    talking about three airplanes:  The Falcon 10, the Falcon

7    20, the Falcon 50.  Is that correct?

8    A.    That's right.

9    Q.    And also an entity called AZ Falcon Partners.  Is

10   that correct?

11   A.    That's right.

12   Q.    When I talk about AZ Falcon Partners, it was an

13   entity managing all three of these planes.  Is that

14   correct?

15   A.    That's correct.

16   Q.    And yu helped manage the day to day things with AZ

17   Falcon Partners, like insurance for those planes and the

18   storage of those planes.  Correct?

19   A.    I did that for Sergei Gonchar.

20   Q.    But you did it.  Correct?

21   A.    I did it for Sergei Gonchar.  Yes, at his request.  I

22   participated in helping him get insurance, maintain

23   insurance, make sure that the planes were protected and

24   then ultimately sold.

25   Q.    And you worked closely with Mark D'Ambrosio in doing

Semple - Cross/Ms. Komatireddy

5512

1    that.  Right?

2    A.    Not so much.

3    Q.    You didn't email with Mark details about those

4    planes?

5    A.    Yes, I did.

6    Q.    And in order to ensure that someone can signoff on

7    the sale of one of those planes, you worked to get power

8    of attorney for Mr. Mark D'Ambrosio?

9    A.    For Mark D'Ambrosio?  Or from him?

10   Q.    Either one.

11   A.    I don't believe so.

12   Q.    Well, let's just talk about a specifics plane.  The

13   Falcon 150.

14            Mr. Gonchar was a personal guarantor on the

15   Falcon 50 loan.  Is that right?

16   A.    Yes.

17   Q.    The loan in approximately the amount of $1.3 million?

18   A.    I thought was 1.15 but that's close.

19   Q.    And you brokered the sale of the Falcon 250 plane.

20   Correct?

21   A.    I'm not a broker.

22   Q.    Well, you helped make sure the aircraft got sold?

23   A.    Yes, ma'am, I did.

24   Q.    You helped solve that problem, too.  Right?

25   A.    Yes.

Semple - Cross/Ms. Komatireddy

5513

1    Q.    And it got sold to someone named Troy Woods?

2    A.    No.

3    Q.    Who did it get sold to?

4    A.    I don't think Troy Woods actually bought then plane.

5    It was bought by somebody else.

6          Troy Woods was an individual who was interested

7    in buying the plane but he never came up with the money.

8    Q.    But the plane did get sold.  Right?

9    A.    Yes, ma'am.

10          MR. LaRUSSO:  Your Honor, can we have a sidebar

11   on this, please?

12          THE COURT:  Yes.

13          (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

Semple - Cross/Ms. Komatireddy

5514

1          (Discussion at sidebar ensued as follows.)

2          MR. LaRUSSO:  I'm objecting to relevancy at this

3   point I mean in terms of trying to establish bias, judge.

4   But this has nothing to do with the case at this point so

5   I am objecting to relevancy.

6          THE COURT:  It certainly goes to bias if he is

7   involved in different matters related to Mr. Constantine's

8   money.  And so I disagree that it doesn't go to bias.  I

9   think it is relevant on bias.

10         MS. KOMATIREDDY:  I do, too.  I'm trying to keep

11  it going, judge.

12         THE COURT:  How much more do you have?

13         Not much more?

14         MS. KOMATIREDDY:  Yes.

15         (Discussion at sidebar was concluded.)

16         (Continued on the following page.)

17

18

19

20

21

22

23

24

25

Semple - Cross/Ms. Komatireddy

5515

1        (The following ensued in open court.)

2    BY MS. KOMATIREDDY:

3    Q.    Now, just before we get into the specific planes.

4    Inn terms of the Falcon plane, your firm was involved in

5    helping to prepare some accounting and tax documents for

6    that as well.  Right?

7    A.    We prepared the tax returns, my firm did.

8    Q.    Mike Evans at your firm?

9    A.    Yes.

10   Q.    Someone who works for you.  Correct?

11   A.    He works in the tax department for my brother.

12   Q.    And you were familiar with the particular structure

13   or the tax structure of those companies as a result of the

14   involvement of your firm in filing these documents.  Fair?

15   A.    I wouldn't say that I had a great deal of knowledge

16   but I had a fair amount of knowledge.

17   Q.    And fair to say that in ensuring that the tax

18   documents for those entities were properly prepared, Mr.

19   Constantine told you that, or AZ Falcon Partners that

20   company was a company owned by Mr. Constantine and

21   Mr. Gonchar.  Right?

22   A.    That's my recollection, yes.

23   Q.    And if Falcon 10 Partners he told you that Falcon 10

24   was something, an entity that was supposed to at a later

25   the time buy the Falcon 10 airplane from AZ Falcon

Semple - Cross/Ms. Komatireddy

5516

1   Partners.  Correct?

2   A.   I'm sorry.  Can you give that to me again.

3   Q.   Falcon 10 Partners entity was supposed to buy the

4   Falcon 10 from AZ Falcon Partners at a later time.

5   Correct?

6   A.   No.

7   Q.   So let's just go the specifying claim.  On the Falcon

8   50 you have said you helped solve that problem.  Just so

9   we are clear, by selling the plain, that meant that the

10  loan was substantially paid down.  Correct?

11  A.   That's correct.

12  Q.   Mr. Gonchar's loan of $1.3 million.  Is that correct?

13  A.   Well, 1.15 million.

14  Q.   And the Falcon 20.  You were also involved in the

15  Falcon 20 aircraft.  Correct?

16  A.   Yes.

17  Q.   In fact you were invested in the Falcon 20 aircraft.

18  Correct?

19  A.   I'm not personally invested but the family limited

20  partnership that I'm the general partner of was actually

21  invested in the Falcon 20.

22  Q.   And did Falcon 10, going back to this for a minute.

23  You also were involved when there was a dispute over the

24  Falcon 10 ownership brokering -- I will withdraw

25  brokering, helping to solve that problem as well through

5517

1    some sort of system.  Right?

2    A.    No.  We were trying to get the airplane back that was

3    confiscated by the government improperly.  So yes, I was

4    working with the attorneys to try to get that aircraft

5    back.

6    Q.    Right.  You were working with the attorneys and

7    working with Mr. D'Ambrosio to try to get that airplane

8    back.  Right?

9    A.    I don't know that I was working with Mr. D'Ambrosio.

10   I did have communication with him because he had certain

11   knowledge that I didn't have, and Mr. Gonchar just want me

12   to do the best I could to help him sell the aircraft, pay

13   off the debt, mitigate his damages.

14   Q.    Right.  And he (sic) said it was your goal to get

15   that aircraft back from the federal government.  Correct?

16   A.    Yes.

17   Q.    Because at this time it is the federal government who

18   has custody of the Falcon 10.  Correct?

19   A.    They have taken custody of it.  Yes.

20   Q.    They took custody of it in connection with

21   Mr. Constantine's arrest in this case.  Correct?

22   A.    I believe so.  Yes.

23          They both happened at about the same time, yes,

24   but I'm not privy to what the government has done.

25   Q.    Now, for the work that you did in connection with

Semple - Cross/Ms. Komatireddy

5518

1  Constantine's bankruptcy you billed approximately

2  $130,000.  Is that fair?

3  A.    My firm did.  Yes.

4  Q.    Your firm did?

5  A.    Yes.

6  Q.    But you didn't get paid that full $130,000.  Correct?

7  A.    No, I did not.

8  Q.    You filed in the bankruptcy court -- let me withdraw

9  that.

10          You agreed to accept less than that.  Right?

11  A.    I believe so.  Yes.

12  Q.    You agreed to accept around $50,000.  Right?

13  A.    No.  Not that I recall.

14  Q.    But you recall something less than what you were

15  totally owed.  Correct?

16  A.    I don't even recall that.  I know that we were asked

17  to, but I don't think we ever agreed to.  I mean, we

18  wanted to be paid what we were owed.

19  Q.    Were you?

20  A.    No.  We never have been paid anything because of

21  Mr. Constantine's arrested.

22  Q.    And for your work for Eufora, I guess you already

23  said you haven't been paid in full for that, either?

24  A.    That's right.

25  Q.    Up until today?

Semple - Cross/Ms. Komatireddy

5519

1   A.   Up until today.  That's correct.

2   Q.   And you are also accountant, I believe you already

3   testified to this, for Set Jet and other companies of

4   Mr. Constantine.  Correct?

5   A.   I don't think we were the accountant for Set Jet.  I

6   think we did some initial work on it but we never actually

7   retained by Set Jet.

8   Q.   So you did that initial work for free, too.  Correct?

9   A.   We didn't get paid for it, as I recall.

10          I think we were paid a couple of checks from Set

11  Jet, nominal amounts initially, but we were ultimately not

12  retained as accountants for Set Jet.

13  Q.   Okay.  So fair to say you have done a lot of work for

14  Mr. Constantine or his companies for free.  Right?

15  A.   No.  We were paid for some work and there is other

16  work we are still owed for.

17  Q.   You are in court for free.  Right?

18  A.   Yes.

19  Q.   And over all these engagements in all these years,

20  fair to say you and Mr. Constantine are friends?

21  A.   I would say yes, I would consider him a friend today.

22  Q.   You've been to his house several times?

23  A.   Yes.

24  Q.   You've met his wife several times?

25  A.   Yes.

Semple - Cross/Ms. Komatireddy

5520

1    Q.    You're personal friends.

2    A.    I would say we're friends.

3    Q.    Now let's turn to what you did in this case.

4          You testified that you did not do a forensic

5    audit.  Right?

6    A.    That's correct.

7    Q.    You did not do a certified audit.  Right?

8    A.    That's correct.

9    Q.    You did a review of an account known as the GSF.

10   Correct?

11   A.    We did a forensic engagement.  We never did an audit.

12   We never did a review.  We never finished the engagement.

13         So it was really a consulting engagement under

14   the statement of standards for consulting services, a

15   litigation support engagement that we were asked initially

16   to sit down and review certain, not assertions of fraud

17   but concerns over the use of funds.

18         And Mr. Gonchar wanted to know how his funds

19   were used.  It was important to him.  He had put a lot of

20   money in.

21   Q.    But you never finished your review.

22   A.    No.

23   Q.    You did actually write a report in connection with

24   your review, didn't you?

25   A.    We never really wrote a report.

Semple - Cross/Ms. Komatireddy

5521

1   Q.   Well, you wrote something.  It is four pages long.

2   Right?

3   A.   We didn't write a report.  We basically took the

4   report prepared by Mr. Kenner/Richards and then Mr.

5   Richards report which had a running balance in it,

6   combined the two, and then we compared that to a third

7   document prepared by Eufora.

8   Q.   I hand you what has been marked as Government Exhibit

9   4803.

10         You wrote that, didn't you, Mr. Semple?

11  A.   No, I didn't.

12  Q.   Did someone from your firms write this?

13  A.   Yes.

14  Q.   Did you review it before giving it outside your firm?

15  A.   Yes.

16  Q.   Did you review it before producing it to the

17  government?

18  A.   Yes.

19  Q.   Isn't that a report?

20  A.   No, it is not a report.

21  Q.   What is it?

22  A.   It is a copy of our workpapers.

23  Q.   You are telling me that -- I'm sorry this four-page

24  page summary review and analysis consists of workpapers?

25  A.   Yes.

Semple - Cross/Ms. Komatireddy

5522

1   Q.   Okay.

2   A.   It's similar to an audit program where I sit down

3   with the staff and I say:  Look.  Here is what the client

4   wants us to do.  Here is what we are engaged to do.  Here

5   is the information we have.  Here is what I want you to

6   do.  Here is the process I want you to go through.

7            So this outlines the purpose of the procedures

8   to be performed, the actual procedures performed, and then

9   a conclusion based on those.  But we never prepared a

10  report.  We never issued a report.

11  Q.   But this does outline the purpose of the project and

12  the procedures.  Exactly what you just said.  Right?

13  A.   An interim workpaper document.  It is not a report.

14  It is not intended for third parties.  It's our

15  workpapers.

16  Q.   Is it true?

17  A.   Pardon?

18  Q.   Is it true?

19  A.   Pardon?

20  Q.   Is it true?

21  A.   Is what true?

22  Q.   Are the statements in the four-page documented true?

23  A.   To the best of my knowledge.

24  Q.   Okay.  So let's talks about the review and analysis

25  that you did do.

Semple - Cross/Ms. Komatireddy

5523

1       You said you received -- you testified on direct

2   that you received a summary of cash flow and you said that

3   it was provided by Ron Richards and Phil Kenner.  Correct?

4   A.   I received three documents.

5   Q.   Who did you actually receive them from?

6   A.   One document I believe I got from Sergei Gonchar.

7   And that I believe was the Richard s/Kenner analysis.  I

8   then received another summary from Ron Richards which had

9   no real detail but had a running balance, which I like

10  because I'm an accountant.  And then the third one I

11  received from Eufora.

12       That's my recollection.

13       I don't recall specifically as I sit here what I

14  got from who but that's my recollection.

15  Q.   And those are the documents you used to review what

16  we have been calling the GSF?

17  A.   Yes.

18  Q.   What is the account number for the GSF?

19  A.   I don't know what you are talking about:  account

20  number.

21  Q.   You reviewed the GSF account.  Right?

22  A.   It's the Ron Richards trust account.

23  Q.   Does the GSF consist of all of the transactions in

24  the Ron Richards trust account?

25  A.   No.

Semple - Cross/Ms. Komatireddy

5524

1  Q.  Which ones does it consist of?

2  A.  The ones that Ron Richards said related to the Global

3  Settlement Fund.

4  Q.  Did you specifically talk to Mr. Richards?

5  A.  Yes.

6  Q.  On the phone?

7  A.  Yes.

8  Q.  And you told --

9  A.  Twice.

10  Q.  Once?

11  A.  Twice.

12  Q.  Twice?

13  A.  Yes.  I called him once.  He called me back once.

14  Q.  And when you talked to him and he gave you this

15  spreadsheet -- you said he gave you the spreadsheet.

16  Right?

17  A.  The running balance total.

18  Q.  He didn't give you any banks statement, did he?

19  A.  No.

20  Q.  He didn't have the bank statements for the Ron

21  Richards trust account.

22  A.  I didn't have them.  No.

23      Well, I did get them recently.  I got them from

24  the government's records, and I appreciate that, but I

25  didn't have them until recently.

Semple - Cross/Ms. Komatireddy

5525

1   Q.   You didn't have -- when you did your analysis for Mr.

2   Gonchar, you didn't have the wire transfer records,

3   either, from the actual account, did you?

4   A.   That's correct.

5   Q.   Mr. Constantine never gave them to you, did he?

6   A.   I don't know that Mr. Constantine had them.

7   Q.   Well, did he give them to you or not?

8   A.   I don't recall.  I don't believe so.

9   Q.   When you did look at the actual transfers, you

10  testified that you were looking at doing this analysis for

11  Mr. Gonchar.  Right?

12  A.   At his request.  Yes.

13  Q.   And he was concerned about how his money was being

14  used and whether it was being used for its intended

15  purpose.  Correct?

16  A.   Yes.

17  Q.   At that time, in 2011, what did Mr. Gonchar tell you

18  about what was the intended purpose?

19  A.   Mr. Gonchar told me that the Global Settlement Fund

20  was an accumulation of funds from roughly 20 players, and

21  the primary purpose of that was the Jowdy litigation, to

22  fund the Jowdy litigation and to fund some PR related to

23  the Jowdy litigation, to make protective payments, to

24  preserve assets that the players were involved in, and to

25  resolve, liquidate some of the issues such as the

Semple - Cross/Ms. Komatireddy

5526

1   aircraft.  And you know, that was generally what I recall

2   from the conversation.

3   Q.   So it couldn't be -- so I got Jowdy litigation, some

4   aircraft, and then you said other items that are protected

5   (sic) advances?

6   A.   Protective advances.

7   Q.   What does that mean, *protective advances*?

8   A.   I didn't write it, it is not my term, but what I

9   understand the term was from talking to Mr. Constantine

10  and Mr. Gonchar was protected payments where they made

11  investments in certain properties and they were making

12  protected payments to either stall or avoid foreclosures

13  of properties, sell aircraft to mitigate damages.  Similar

14  to what we did in the Falcon 50 case, they sold a one

15  plane, and then a second plane was sold, and then the

16  Falcon 10 was retained because they felt the value the

17  bank was going to give them was less than the value of the

18  plane.

19  Q.   Okay.

20  A.   So they had to make payments on that.

21       Again, the Avalon building.  Eufora was an

22  investment that was made to the AZ Eufora partners.  They

23  had substantial investment in that.  So there were other

24  protected payments made to preserve their investment.

25  That is to the best of my recollection.

Semple - Cross/Ms. Komatireddy

5527

1   Q.   Okay.  So when you were doing this analysis that you

2   were hired to do by Mr. Gonchar as to whether the money

3   was used for its intended purpose, you are looking at

4   whether the money was used for Jowdy litigation, aircraft

5   expenses, the Avalon airpark, Eufora, and other

6   investments that were going into bankruptcy.

7            Is that a fair summary of what you just said?

8   A.   Generally, yes.

9   Q.   Well, Mr. Gonchar, you did say, was concerned that

10  the money would be used for its intended purpose.  Right?

11  A.   Yes.

12  Q.   So it is not that the money could be used for any

13  purpose.

14  A.   Mr. Gonchar said that he authorized Mr. Constantine

15  to utilize any portion of his funds that Mr. Constantine

16  felt he needed.  Mr. Constantine had asking him about it

17  and he authorized it.

18  Q.   What was the purpose of paying --

19  A.   Pardon me?

20  Q.   Why hire you and pay you money to review whether the

21  money was used for its intended purpose?

22  A.   He wasn't asking me for my opinion.  He was asking me

23  to review the documents, determine whether they were

24  valid, whether the accounting was right, and then to look

25  into the expenses and report back to him so he could make

Semple - Cross/Ms. Komatireddy

5528

1    a determination as to whether or not the funds were used

2    for their intended purpose.

3         I didn't make that determination.  That wasn't

4    my call.  I wasn't involved in negotiating the deal.  All

5    I had was copies of emails that went back and forth

6    between the players and Mr. Constantine and Mr. Kenner

7    which outlined the purpose of the fund.

8         I looked at a number of other documents that

9    were are status reports on what they had done and what

10   they had spent and how the funds were used and what

11   successes they had and what frustrations they had.

12        I reviewed that information.  But what Mr.

13   Gonchar wanted was for me to give them an accounting

14   summary, talk it through with him, so that he could make

15   an ultimate determination as to whether or not the funds

16   were used, in his mind, for their intended purpose.

17   Q.   Just to be clear.  You did not make any determination

18   about whether the fund in the GSF were used for their

19   intended purpose?

20   A.   That was not my responsibility.  No.

21   Q.   And you did not come to any conclusion that they were

22   or were not used for their intended purpose.

23   A.   Oh, I did come to a conclusion.

24   Q.   So you did make a determination?

25   A.   I came to a conclusion based on my discussions with

Semple - Cross/Ms. Komatireddy

5529

1   Mr. Gonchar.  And we closed the file, didn't issue a

2   report because he didn't want to pay us to issue a report.

3   So we wrapped up the engagement.  He had enough

4   information.  He was satisfied.

5   Q.   This is a very simple question, Mr. Semple.

6            MR. LaRUSSO:  Your Honor, I object.

7            THE COURT:  Sustained.  The jury will disregard

8   the question.

9            Just ask the question.

10  BY MS. KOMATIREDDY:

11  Q.   Did you determine -- isn't it is true, Mr. Semple,

12  that you concluded that it appears as though the majority

13  of the funds were used for their intended purpose?

14  A.   That was written by one of my staff people.

15            And yes, that was our conclusion after talking

16  to Mr. Gonchar.

17  Q.   You could not conclude that all of them were used for

18  their intended purpose.

19  A.   No, because we never got copies of some of the bills

20  and other documents that we requested from Mr. Richards.

21  Q.   Now, you said that you did some work to track down

22  the numbers that you were provided, and I'm going to ask

23  you about a couple of those numbers.

24            Let's look first at the inputs of some of the

25  money coming in.

Semple - Cross/Ms. Komatireddy

5530

1    You testified that there was money coming in

2    from Mr. Constantine in the amount of approximately

3    $125,000.

4            Do you remember that testimony?

5    A.   Yes.

6    Q.   And you testified that that was the proceeds of a

7    sale of a car.  Correct?

8    A.   Yes.

9    Q.   And specifically it was proceeds of a sale of a BMW

10   M6.  Right?

11   A.   I don't know if I said BMW.  I think I said M6.

12   Q.   You didn't actually have any bank record of that sale

13   of that car, did you?

14           You should feel free to consult your workpapers.

15   A.   Pardon?

16   Q.   Feel free to consult your workpapers.

17   A.   All of my workpapers aren't here.  You only gave me

18   the first few pages.

19           I don't recall, as I sit here, what we reviewed

20   in relation to the sale of the vehicle.

21   Q.   Well, let's look at, I direct your attention to

22   Government Exhibit, the workpapers I showed you, SMC3.

23   You actually go through and meticulously document --

24   A.   SMC3.

25   Q.   Do you have that in front of you?

Semple - Cross/Ms. Komatireddy

5531

1   A.   Is it Government Exhibit 4803?

2   Q.   Yes.

3   A.   Thanks.

4   Q.   And if you look at your page three?

5   A.   Okay.

6   Q.   You attempted to go through and document the backup

7   for various money coming in.  Right?

8   A.   Yes.

9   Q.   And you tried to match up money coming into the

10  account with emails that you saw.  Right?

11  A.   Yes.

12  Q.   And you actually did that with some of the players,

13  including Mr. Gonchar and some of the other players.

14  Correct?

15  A.   Yes.

16  Q.   But then when it comes to finding a backup for

17  Mr. Constantine's supposed deposit into the GSF, you don't

18  have a citation to any backup, do you?

19  A.   No.

20  Q.   You don't have a wire transfer record, do you?

21  A.   No.

22  Q.   You don't have a bill of sale, do you?

23  A.   I don't know.  It's not referenced in here.

24  Q.   You don't have any actual proof that it was his money

25  coming into the account, do you?

Semple - Cross/Ms. Komatireddy

5532

1  A.   I don't recall what we reviewed at the time, but it

2  was from the sale of an M6 vehicle.  That's all I recall.

3  And there is no reference in my workpapers to an actual

4  document.

5  Q.   But the sale of the M6 vehicle, you are just saying

6  that based on what Mr. Constantine told you.  Right?

7  A.   I believe so.  Yes.

8  Q.   And if look at the actual entry, looking at

9  Government Exhibit 767, the date being 9/8/2009, the entry

10  that you are referring to isn't in the name of

11  Mr. Constantine, is it?

12  A.   No.  It is Northwest Value Partners.

13  Q.   Now, you also considered in your analysis money that

14  Mr. Constantine told you that he or Mr. Kenner put into

15  the Global Settlement Fund.  Correct?

16  A.   I think there was an initial $20,000 deposit or

17  something that we were told about.  There was a notation

18  made on our workpapers that I recall for that entry, but I

19  don't recall specifically what that was.

20  Q.   Let me give you Government Exhibit 4804 so you have

21  it in front of you.

22       For the record that is one of your workpapers.

23  Right?

24  A.   Yes.

25  Q.   So in your analysis you accepted Mr. Constantine's

5533

1   representation that they actually put $20,000 into the

2   Global Settlement Fund in March 2009.  Right?

3   A.   I believe it was a deposit from Mr. Kenner on

4   Mr. Constantine's behalf.  That is as I recall.

5   Q.   And this is actually in evidence from the defense now

6   but I'm going to display the government's version for you.

7        They gave you this as backup for that $20,000.

8   Right?

9   A.   I don't recall.  Is that one of my workpapers?

10  Q.   You don't have a full set in front of you, sir?

11  A.   No, ma'am.  I don't.

12       Okay.  I may.  Which one is it?

13       I mean, this isn't showing the Bates number on

14  it.

15  Q.   SMC 1 through 45.  The Bates number is SMC31.

16  A.   Thank you.  Okay.

17  Q.   And that is the backup that you relied on in

18  determining that Mr. Kenner had put in $20,000 into the

19  account.  Right?

20  A.   That was a notation on our workpaper.  We were given

21  a copy of an email and that is the only information that

22  is in our file that I'm aware of related to that $20,000.

23  Q.   Looking at that account number.  That is the account

24  for the Global Settlement Fund withdrawals account?

25  A.   I don't recall.

Semple - Cross/Ms. Komatireddy

5534

1  Q.    According to the information you were given by

2  Mr. Constantine, this supposed deposit of $20,000 happened

3  on March 31, 2009.  Right?

4  A.    That is what the email says.  Yes.

5  Q.    I'm going to hand you what has been marked as

6  Government Exhibit 1106, which we move in at this time as

7  a certified bank record.

8            THE COURT:  Any objection?

9            MR. LaRUSSO:  One moment, Judge.  I'm just

10  looking at the attachment.

11            MR. HALEY:  I have no objection, judge.

12            MR. LaRUSSO:  No objection, your Honor.

13            THE COURT:  Government's Exhibit 1106 is

14  admitted.

15            (Government Exhibit 1106 in evidence.)

16  BY MS. KOMATIREDDY:

17  Q.    Looking at the account statement.

18  A.    I'm still looking.  Can I have a couple of minutes to

19  looks at this?

20  Q.    Sure.  Show it to the jury.

21  A.    Okay.  I cannot really read the attachments.  They

22  are very small print.

23  Q.    It is blown up on your screen there.

24  A.    That's the bank statement.  I'm looking at the second

25  attachment.

Semple - Cross/Ms. Komatireddy

5535

1           Okay.

2    Q.    There is no deposit in that account on March 31,

3    2009, is there?

4    A.    The last deposit is March 27.

5           (Continued on following page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Semple - Cross/Komatireddy

5536

1  Q.   Just to be sure, I hand you Government's

2  Exhibit 1107, we also move in as a certified bank record.

3            THE COURT:  Any objections, Mr. LaRusso?

4            MR. LARUSSO:  No, I'm sorry, your Honor.

5            MR. HALEY:  No, sir.

6            THE COURT:  1107 is admitted.

7            (Whereupon, Government Exhibit 1107 was received

8  in evidence.)

9  A.   All right.

10 Q.   Beginning of April, anytime in April there is no

11 deposit in the amount of $20,000, is there, from Standard

12 Advisors?

13 A.   There is a deposit amount of 38,000 on April 13th.

14 Q.   And there is no deposit in amount of $20,000 from

15 Standard Advisors, is there?

16 A.   I don't have the detailed records behind them.

17 Q.   This is the first time you are looking at the bank

18 statement?

19 A.   No, I saw them probably a month ago.

20 Q.   You didn't look at the detailed back up then for your

21 March 31, 2009 deposit?

22 A.   No.

23 Q.   When you looked at the bank statements that we

24 provided you a month ago you didn't go through the Ron

25 Richards bank statements analysis to see this they were

Semple - Cross/Komatireddy

5537

1   correct?

2          MR. LARUSSO:  Objection.

3          THE COURT:  Overruled.

4   A.   No, I didn't.

5   Q.   The defendants told you that that 20,000 that is was

6   going into the Global Settlement Fund, to be clear, which

7   defendant told you that?

8   A.   We were provided a copy of an e-mail from Mr. Kenner

9   to Mary Hurt, and it says Mary, can you please wire 20,000

10  from Standard Advisors to, there's a routing number and

11  account number, and it says Wells Fargo Bank, 1801 Avenue

12  of the Stars, Los Angeles, 90067.  Law offices of Ronald

13  Richards and Associates.  Account, Connie Constantine.

14  Thanks, Phil.

15         So what was the question?

16         MS. KOMATIREDDY:  Owen, could you please read

17  back the question?

18         (Question read.)

19  A.   I was given a copy of this e-mail from Mr.

20  Constantine, I believe.

21  Q.   And you relied on Mr. Kenner's statement in that

22  e-mail, correct?

23  A.   I relied on the e-mail, yes.

24  Q.   Which was written by Mr. Kenner, correct?

25  A.   It appeared to be, yes.

Semple - Cross/Komatireddy

5538

1   Q.   What Mr. Constantine and Mr. Kenner didn't tell you

2   was that Mr. Kenner actually wired that money on behalf of

3   Mr. Constantine to retain Ronald Richards to represent

4   Mr. Constantine in a federal court action pending in Los

5   Angeles, right?

6                MR. HALEY:  Objection, your Honor.

7                THE COURT:  Sustained as to form.

8                MR. HALEY:  Thank you.

9   Q.   Mr. Constantine didn't tell you that that money was

10  actually to retain Ronald Richards for him?

11  A.   Who is "him."

12  Q.   Mr. Constantine.

13  A.   So Mr. Constantine didn't tell me that it was money

14  for Ron Richards retained for his own case?

15  Q.   Yes.

16  A.   That is exactly what he told me.

17                That refreshes my recollection.  Yes, he told me

18  that was money that Mr. Kenner as a friend was willing to

19  advance him and send it to Ron Richards for a case that

20  Mr. Richards was working on.

21  Q.   For Mr. Constantine, right?

22  A.   I don't remember what case.  I remember it had to do

23  with Mr. Constantine, yes.

24  Q.   Not for the hockey players.

25  A.   Pardon?

5539

1  Q.   Not for the hockey players.

2  A.   I don't recall if it was part of the Global

3  Settlement Fund or not.

4  Q.   Still didn't get the answer.

5       Did you count it as far as the Global Settlement

6  Fund or not?

7  A.   It was listed on this schedule but you don't see it

8  on the schedule because I gave it to Mr. Gonchar.

9  Q.   I still don't know the answer.

10      Did you count this as part of the Global

11  Settlement Fund or not?

12  A.   No, a notation was made by my staff, a document was

13  provided, I didn't put it on my file schedule and didn't

14  review it with Mr. Gonchar.

15      MS. KOMATIREDDY:  Your Honor, at this time I

16  need to discuss one thing with you so, either at a sidebar

17  or a break.

18      THE COURT:  Why don't we take a break.

19      Let's take a break.  Don't discuss the case.

20      (Whereupon, at this time the jury exits the

21  courtroom.)

22      THE COURT:  Be seated.

23      THE WITNESS:  Your Honor, may I be excused?

24      THE COURT:  Yes.

25      What is the issue?

5540

1          MS. KOMATIREDDY:  I wanted to go outside the

2    scope of the direct with respect to Mr. Semple prepared

3    tax returns for Mr. Constantine for the relevant years for

4    the fraud as well as for Eufora.

5          Rather than recall him as a rebuttal witness, I

6    don't expect it to be more than a few minutes.  I want to

7    run some tax returns by him.

8          THE COURT:  I thought the tax returns were in

9    already, the Eufora tax returns?

10          MS. KOMATIREDDY:  The tax returns received

11   yesterday were 2002 to 2007, for Eufora.  Mr. Semple

12   prepared the tax returns for Mr. Constantine from 2007 to

13   2009, and he prepared but did not file the tax returns

14   from 2008 to 2009.

15          THE COURT:  What is the relevance for that?

16          MS. KOMATIREDDY:  It shows two things, your

17   Honor, it shows that Mr. Constantine's shows income in the

18   relevant time period that he was in fact not a profitable

19   as a race car driver, and also to the extent that both

20   defendants are claiming that there was a sale of shares.

21   There is no indication of a sale of shares based on

22   Mr. Constantine's representations in those returns.

23          And the other relevance as to the interest in

24   Eufora.  The interest in Eufora is much like the interest

25   we've seen in the airplanes, keeps changing depending what

5541

1   you are looking at.

2          I believe Mr. LaRusso called Mr. D'Ambrosio in

3   an effort to say all the players currently have an

4   interest.

5          If you look the at the documents it shows all

6   these documents contradict each other and there is no

7   clear indication who has interest in what.

8          MR. LARUSSO:  Judge, again, I believe I heard

9   she wants to introduce Mr. Constantine's personal tax

10  returns.  I don't know first of all if these are filed

11  returns.

12         MS. KOMATIREDDY:  They are filed.

13         MR. LARUSSO:  I've never seen the filed returns.

14         Secondly, the sale of the shares, Judge, if the

15  Court remembers was Constantine Management Group, not to

16  Mr. Constantine.  So I don't know if she wants to

17  introduce the tax returns of Constantine Management Group

18  to show if there were any sales.

19         Mr. Constantine's tax returns has nothing to do

20  with that aspect of the indictment.  The $725,000 sales of

21  stock that Mr. Kennedy approved the shares for

22  Mr. Constantine's personal use and ultimately resulted

23  with the hockey players.  So I am trying to understand

24  what tax returns are going in and the purpose so we can

25  proper evaluate its relevance.

5542

1          MS. KOMATIREDDY:  First, all of these tax

2    returns were produced to us by defense, Bates stamped with

3    Mr. Semple's firm.

4          Second, whether it's a sale of Mr. Constantine's

5    personal shares in Eufora or his alter ego entity

6    Constantine Management Group, that would reflect the 2008

7    Tommy Constantine filed tax returns in fact it is not in

8    evidence that supports the Government's theory there was

9    no sale, that it was just a diversion of money that was

10   supposed to go to Eufora.

11         THE COURT:  There's two issues, I guess, who had

12   what interests.

13         MS. KOMATIREDDY:  Yes, your Honor.

14         THE COURT:  That means that is relevant and

15   obviously there has been a lot of back and forth, with

16   respect to the Eufora returns that reflect different

17   ownership interests.  I think that is relevant.

18         MR. LARUSSO:  I haven't seen signed returns for

19   the years in question, Judge.

20         THE COURT:  Mr. Semple, please wait outside.

21         Thank you.

22         MR. LARUSSO:  Judge, I haven't seen signed

23   returns for Eufora for 2008 and 2009.  I know we provided

24   returns to the Government through Mr. Semple and I don't

25   know if they were filed.  As a matter of fact, I don't

5543

1   think they were filed.

2            I appreciate this.  I understand this,

3   Ms. Komatireddy.  I have these documents.  I provided it

4   to you.

5            I'm saying to the Court we don't have any

6   evidence that these tax returns were actually filed.  If

7   the Government has evidence that they were filed I'll have

8   an opportunity to look at them.  We provided these

9   documents to the Government, Mr. Semple did do work, this

10  is a product of his firm -- Judge, I guess the question

11  and Mr. Constantine is asking me to tell the Court, we

12  didn't provide them, that's correct.  They subpoenaed them

13  and Mr. Semple provided it to the Government.  That's how

14  they got these tax returns.

15           MS. KOMATIREDDY:  It is immaterial -- first of

16  all, whether or not they were filed is a simple question

17  for Mr. Semple.

18           Second, we're not arguing tax fraud or a

19  bankruptcy charge.  We didn't charge that.  They are

20  relevant because they are Mr. Constantine's representation

21  as to his assets and as to his interest of Eufora during

22  the relevant time period.

23           THE COURT:  They are not signed.  I don't know

24  how the witness can testify to this that they are

25  Mr. Constantine's representations.  He doesn't do the tax

5544

1    matters, so if they are not signed by Mr. Constantine I

2    don't know how this witness can say, yes, what is

3    reflected in this draft tax return potentially, that

4    Mr. Constantine told us were the various interests, they

5    could have gotten that from a variety of sources.  I don't

6    know how you can expect that in from this witness.  It's

7    not signed and if it's signed, it's different.

8              MS. KOMATIREDDY:  First of all, I'll check if

9    they were electronically signed.  Second of all, I believe

10   the witness will say he met with Mr. Constantine to go

11   over these tax returns, the cover memo on the tax returns

12   says they discussed the tax returns and ultimately

13   Mr. Constantine not to file two of them because they were

14   still working out the numbers.

15             What is captured in there is a product of

16   discussion with Mr. Constantine.

17             THE COURT:  Again, if you can lay a foundation

18   without referencing Mr. Constantine or the documents that

19   he met with Mr. Constantine and the information that was

20   in the tax returns regarding the various ownership

21   interests in Eufora was provided to him by

22   Mr. Constantine, then there would be a proper basis for

23   it.  Whether it is signed or not that is a statement by

24   your client.

25             MR. LARUSSO:  I agree with the Court on that but

5545

1    so the Court is aware the documents subpoenaed by the

2    Government, turned over to them, I have pulled out, I

3    think, the 2008 tax returns for Eufora and the 2009.  And

4    there's a cover memo on both of them and the memo says

5    prepared by Michael Evans, re:  The 2009 Eufora, it says

6    LLC, 1065 Federal and State Income Tax Returns, and there

7    is an initial ME, Michael Evans.  SMC prepared this

8    return.  The client instructed SMC to not complete the

9    engagement until the client was comfortable with the note

10   receivable and note payable balances.  SME did not send

11   this return to the client as instructed by the client.

12          That appears on both of the two tax returns.

13   That is the extent to my knowledge regarding this, Judge.

14          THE COURT:  So the only way those returns are

15   coming in on the issue of the statement by Mr. Constantine

16   or someone else, in this case the tax accountant what the

17   ownership in Eufora is, you have to ask the specific

18   question, not just discuss the return with

19   Mr. Constantine.  He has to be able to state that the

20   information regarding the ownership interest in Eufora

21   contained in those drafts were provided by

22   Mr. Constantine.  If he can't answer that, the inquiry

23   stops.

24          MS. KOMATIREDDY:  Understood, your Honor.

25          THE COURT:  If the personal returns were signed

5546

1   by Mr. Constantine, and Mr. LaRusso, I think, you know, I

2   don't know what all the tax law is, so if there is an

3   argument that is was CMG and it should be on CMG's return

4   rather than Constantine's return, I assume you can show

5   that Mr. Constantine showed on his tax return, CMG's

6   return, the sale of all his private interests of CMG in

7   Eufora.  I don't know if I could preclude the Government

8   if their belief is that it should be Mr. Constantine's

9   return as well.  I think that really goes to the weight.

10          MR. LARUSSO:  I would like to see the returns,

11  Judge, and given an opportunity to look at them, the ones

12  that were signed and filed, I don't have those.

13          THE COURT:  Could you show them those during the

14  break?

15          MS. KOMATIREDDY:  Yes, they are available.

16          THE COURT:  You got these from Mr. Semple's

17  records, the signed returns.

18          MS. KOMATIREDDY:  We have the same records, both

19  sides, Bates stamped with Mr. Semple's Bates stamp, we

20  have a CD of them and Mr. LaRusso provided it to us and

21  they are available.  The only thing we'll request that the

22  defense cannot speak with Mr. Semple.

23          THE COURT:  Yes.

24          MR. LARUSSO:  I don't do that, Judge.  If I

25  think is necessary to do that before I go on redirect to

5547

1    have a chance of redirect to go through the documents that

2    the Government discussed with him, that's the only thing I

3    would request.

4              THE COURT:  Sure.

5              MR. HALEY:  Your Honor, if I may.

6              THE COURT:  You are not asking the Government to

7    recall him during their case.

8              MR. LARUSSO:  I don't think that is necessary at

9    all.

10             MR. HALEY:  Your Honor, tax law is beyond me,

11   but I say that, your Honor, because the Government's

12   interpretation of these particular tax records is not one

13   that we necessarily agree with insofar as some mention of

14   it would be reflected in the capital gains section of the

15   records.  I don't know that the tax returns in and of

16   themselves would list specific ownership interest in

17   Eufora on the return itself.  I would actually reiterate

18   what Mr. LaRusso has to say, there has been proof here

19   that Tommy Constantine was selling ownership interests he

20   held in Eufora through CMG Management and to the extent

21   that there is some suggestion that now the defense has an

22   obligation to put in the tax records of CMG Management, I

23   don't know that shifts the burden of proof.  I guess,

24   Judge, maybe I have not articulated my position.

25             THE COURT:  I'm not shifting the burden of

5548

1  proof. I guess they have to establish through this

2  witness, he's an accountant, he may know the answer, if

3  Mr. Constantine sold a stock to Eufora in that year,

4  should it be on his return. If the witness, depending how

5  he answers that, then it could be a relevant inquiry. But

6  shifting the burden, as long as they lay a foundation it

7  is not shifting the burden. If the Government puts in a

8  particular document, and I'm not saying there is a

9  particular burden whatsoever on the defense, but if they

10  need some other document, that is up to the defense.

11          MR. HALEY: Thank you.

12          MR. LARUSSO: Two parts, for informational

13  purposes. I understand the tax returns were not filed.

14          THE COURT: What was that?

15          MR. LARUSSO: The tax returns in question here

16  were not filed. They still remain unfilled as far as I

17  understand. So the second part is if they are permitted

18  to argue or inquire into this on unfilled tax returns,

19  we're getting into the question now the jury may infer

20  whether he's involved in tax fraud. I understand the

21  relevancy in terms of that but there is no question that

22  these sales of stock or ownership interests were done.

23  The Government says it happened. We say it happened. Why

24  do we have to get into whether or not they appear on an

25  unfilled tax return.

5549

1          I think we're getting into an area where one, we

2    shouldn't allow the jury to hear, and may an improper

3    conclusion whether there is tax fraud here.

4          The Government has what it wants.  They are

5    arguing it is illegal these sales.  We are concealing they

6    took place.  That's my argument in terms of this aspect of

7    the case.

8          THE COURT:  I think it is fairly clear the

9    Government's position in this case is that the sale of

10   private stock is an explanation that was manufactured

11   after the fact, so certainly it would be relevant if

12   documents that were filed during the relevant time frame

13   or other documents of Eufora, operating agreements and

14   other things that don't reflect such a sale, that would be

15   very probative evidence of whether or not if there was a

16   sale at the time or the explanation of the sale came later

17   after the fact.  So I agree it is highly probative to the

18   extent Mr. Constantine is filing any documents what his

19   interest is in Eufora at any time and whether or not he

20   made a sale or not it is a highly relevant issue.  So we

21   have to try to get to the bottom whether or not they were

22   signed returns.  But if they are not signed, maybe I'll

23   have Mr. Semple do it outside the presence of the jury so

24   we don't inject the issue without knowing what the answer

25   is.

5550

1          MR. LARUSSO:  I agree with the Court on that.

2          MR. HALEY:  Your Honor, in anticipation of a

3     potential issue, should it occur those tax returns are

4     admitted into evidence, either because they've been filed

5     by Mr. Constantine or the witness indicates this

6     information inquired of Mr. Constantine, in order this

7     jury not be confused on the issue, I ask that there be an

8     instruction if that evidence is evidence that pertains to

9     returns that Mr. Constantine and Mr. Constantine alone

10     filed, not that Phil Kenner adopted in that respect or at

11     least some limiting instruction.

12          THE COURT:  We'll go step-by-step, but I want to

13     go back to your other point whether the Government has the

14     CMG returns.

15          MS. KOMATIREDDY:  There are no CMG returns.  We

16     subpoenaed all returns from Mr. Semple that he filed on

17     behalf of Mr. Constantine, I believe he will testify there

18     were no CMG returns that he prepared or filed.  Our

19     information there were none.

20          MR. HALEY:  I didn't address that, Judge --

21          THE COURT:  I know, but I don't want the jury,

22     going back to your first point, I don't want the jury to

23     be misled.

24          MR. HALEY:  So would I.

25          THE COURT:  That there was a CMG return that had

5551

1    a sale on it, that would concern me the Government was

2    suggesting from his personal return that no such sale

3    occurred.  But then it would be an issue of tax fraud, not

4    an issue of whether or not it was reflected on some

5    document at the time.  But if there is no CMG return --

6              MR. LARUSSO:  I don't have them, Judge, I

7    haven't seen them.  I can't tell the Court whether they

8    exist or not.  The Government I mean it is something they

9    usually get.  I don't think there were any CMG returns in

10   the pack that was subpoenaed by the Government and turned

11   over by Mr. Semple.

12             MS. KOMATIREDDY:  That's correct, we asked

13   Mr. Semple.  He only gave us returns for Mr. Constantine

14   and Eufora.  We asked him for all the returns prepared on

15   behalf of Mr. Constantine.

16             MR. LARUSSO:  He did not do the CMG, Judge.

17             THE COURT:  The question is do they exist.

18             MR. LARUSSO:  Judge, I can't answer that

19   question.  I need to find out if there is more information

20   before I answer the Court.  I can get an answer to that

21   but I can't do it right now.

22             THE COURT:  Why don't you bring Mr. Semple in.

23             MS. KOMATIREDDY:  I'm advised in terms of the

24   tax law.  I consulted with a tax expert from the

25   Government as well, even if CMG filed a return and

5552

1   withheld information on the return because Mr. Constantine

2   was a sole member, that income should pass through and

3   should be he reflected on the individual return in what is

4   called schedule E or D.  Depending whether he claimed it

5   as an S Corp. or a member of a corporation, it would have

6   to be on his individual return somewhere.  It is simply

7   not there.

8        THE COURT:  Mr. LaRusso, the Government's

9   position is not whether Mr. Constantine committed tax

10  fraud, that the sale never happened, that there was no

11  sale.  That is their position, so I don't want there to be

12  a red herring the Government is proposing tax fraud.  But

13  why don't we bring Mr. Semple in.

14       MR. LARUSSO:  Judge, we're not contesting that

15  Mr. Constantine did not get the money in CMG.  I don't

16  know if the Court --

17       THE COURT:  State that again.  I'm sorry.

18       MR. LARUSSO:  He got the money from the sale of

19  stock, the sale occurred and it was deposited into CMG.

20       THE COURT:  I understand where the money went.

21       Have Mr. Semple come back in.

22       (Mr. Semple reenters the courtroom.)

23       THE COURT:  I'll just have the prosecutor ask

24  you some questions about the tax documents because I want

25  to make sure we're not going into an area in front of the

5553

1    jury that you are not familiar with in terms of having

2    done the work.

3              THE WITNESS:  Sure.

4              THE COURT:  Go ahead, Ms. Komatireddy.

5              (Outside the presence of the jury.)

6    BY MS. KOMATIREDDY:

7    Q.    Showing you RS 1 through 5.  Take your time.  You

8    will notice your Bates stamp on the bottom of those

9    documents.

10   A.    Okay.  I'm familiar with this.  I've seen them

11   recently.

12   Q.    Can you explain to us, the first three, they appear

13   to be tax returns, individual tax returns for Mr. Tommy

14   Constantine for 2007, 2008, and 2009, right?

15   A.    That's correct.

16   Q.    And those were prepared by your firm, correct?

17   A.    That's my understanding.

18   Q.    In fact that's what you were hired to do in

19   connection with the bankruptcy, right?  Those were the

20   reports, part of what you were hired to do was to prepare

21   those returns, right?

22   A.    I believe that was part of the engagement.  I really

23   don't do the taxes.  I mean if my firm would do it I would

24   defer to the tax department to do it.

25   Q.    Okay.  When those returns are prepared, the

5554

1   information in the returns with respect to income, shares

2   in a particular corporation, shares in real estate, that

3   information, it comes from the client, right?

4   A.    Generally, yes.

5   Q.    So in this case it would come from Mr. Constantine,

6   right?

7   A.    Generally, yes.

8   Q.    And I'm just going to turn your attention just as an

9   example, in these tax returns it actually provides backup,

10  some of the backup in the schedules.  So directing your

11  attention to the last few pages of RS-1 it says Tommy

12  Constantine racing P&L?

13  A.    Yes.

14  Q.    And that's a schedule you received from the client,

15  right, with his profits and losses for that year?

16  A.    Yes, that's my assumption.  I mean I don't recall

17  receiving this from him, but Mike Evans would have worked

18  on the return and I'm sure he would have gotten this from

19  Mia Edrozo who is the bookkeeper.

20  Q.    For Eufora?

21  A.    Yes.

22  Q.    I'm talking about Tommy Constantine's personal

23  returns.

24  A.    She might have given him these backups.  She was

25  doing the interfacing that our office has with Constantine

5555

1  and Eufora.

2  Q.   Your understanding is this information comes from

3  Mr. Constantine, right?

4  A.   I don't know.  I mean I can't tell you.  I didn't get

5  it directly from him.  So generally this type of

6  information would be provided by the client or a client

7  representative.

8  Q.   Fair enough.

9         Looking at RS-4 and RS-5 which are the returns

10  for Eufora.

11  A.   I'm just trying to look to see if there is a date.

12  Q.   Before that, can you tell us if those returns were

13  filed?

14  A.   I believe seven, eight and nine were filed.  I'm not

15  sure if the one subsequent to that was.  I think 10, 11,

16  12 and 13 might not have been filed.

17  Q.   Well, but 78 and 79 were filed?

18  A.   I think they were actually filed with the IRS.

19  Q.   That's what I meant.

20  A.   They went to an audit for 2005 and 2006.  There was

21  roughly 1,150,000 in claims.  And so that when we were

22  complete with the audit, which was a very exhaustive

23  audit, the determination was made that I believe one of

24  the years there was no taxes owed and the second year

25  there was $60 refund, went from 1.150 million to a

5556

1    sixty-dollar refund for those two years and that was an

2    exhaustive audit.

3           I haven't been through an audit like that

4    through years.  As a matter of fact, I kind of felt the

5    individual from the IRS that conducted the audit was from

6    CMD.  He was very impressive.  So when we were done with

7    that audit, I believe that we actually filed these with

8    him.

9    Q.    Okay.

10   A.    And the reason is that the IRS --

11          THE COURT:  You don't have to go into the

12   detail.  Do you know if those versions were the same

13   versions that were filed.  Are those final versions, or do

14   you not know?

15          THE WITNESS:  Here's my concern, they appear to

16   be final returns but then there appears to be amended

17   returns on top of it.  So these were filed returns and

18   these are amended returns.  What happened, the IRS filed

19   substitute returns for Mr. Constantine for years that he

20   did not file.

21          THE COURT:  These were his personal returns?

22          THE WITNESS:  Yes, he didn't file for certain

23   years and because of the bankruptcy they had to catch them

24   up.

25          THE COURT:  What about the 2004 returns.

5557

1    MR. LARUSSO:  Judge, I'm just trying to make

2    sure I understand.

3         THE COURT:  Yes.

4    BY MR. LARUSSO:

5    Q.   You said the IRS filed returns for the years, I'm

6    talking about the personal ones, 2007 and 2008?

7    A.   -- and 2009, was my recollection.

8    Q.   What was the work that your firm did with respect to

9    the returns dealing with the IRS, just dealing with the

10   personal returns, the three years personal returns.

11   A.   We prepared returns from information we obtained from

12   the client or client's representative.  I don't know who

13   actually gave it to us.  I didn't actually work on this.

14   And then we actually filed amended returns because the IRS

15   had filed substitute returns showing substantial income

16   and taxes owed, and then we prepared the actual returns,

17   filed them with the IRS, along with the amended returns to

18   replace their substitute returns.  That's how in those

19   years we went from whatever the taxes were, 400,000 or

20   500,000, basically to zero.

21   BY MS. KOMATIREDDY:

22   Q.   That's how the number went from over $1 million to

23   $4,000 with respect to the bankruptcy court, after you did

24   another look at this?

25   A.   Yes, and we filed the amended returns.

5558

1   BY MR. LARUSSO:

2   Q.    The reason for the inquiry, is to establish the

3   facts.

4           One of the facts that we would like to

5   determine, the amended tax returns you prepared, do you

6   know if they were filed?  That's the only question.

7   That's what I'm asking?

8   A.    I'm telling you, I believe they were actually filed

9   with the agent at the time he was conducting the audit.

10  We gave it to him.

11  Q.    That's the best of your recollection?

12  A.    To the best of my reduction.

13          THE COURT:  That is going to the Eufora returns.

14          Do you have any knowledge as to the various

15  ownership interests reflected in the Eufora tax returns,

16  do you have knowledge where that information were to come

17  from?

18          THE WITNESS:  The information to prepare these

19  two returns, 2008-2009 would have come from Mia Edrozo

20  from Eufora.  We prepared the returns based on the

21  information we obtained.  When they were reviewed by

22  Mr. Constantine he said they are in error, we're not

23  filing these, they have to be corrected.

24          THE COURT:  Okay.

25          So thank you.

1        So my ruling is as follows.  So there will not

2   be confusion to the jury, unfairly prejudicial and

3   confusing to the jury to go into an unfilled Eufora return

4   that Mr. Constantine told them had issues, so that one is

5   easy.

6        On his personal returns, I'm precluding that for

7   the following reason.  I'm thinking about this, and I

8   think there is an issue because this witness did not

9   prepare the returns, but even apart from that, just to go

10  back to the basic point.  To the extent because the money

11  went into CMG, to the extent the Government is arguing

12  sort of as a matter of tax law that it should not just

13  have been reported on CMG but should have reported on

14  personal returns, I'm concerned we would get into, I don't

15  think this witness could opine on that, so I don't know

16  where the jury would be able to draw the conclusion it

17  should have appeared on his individual return, if in fact

18  the Government wanted to try to show no such sale occurred

19  based on tax returns, that was the primary one that should

20  be the focus would be the CMG one because that is where

21  the money went through.  But then to have the jury somehow

22  make the leap, make the tax conclusion that because the

23  sale is not recorded on Mr. Constantine's individual

24  return that it never happened, would require an

25  explanation to the jury of tax law and I'll not give that

5560

1    to them and I don't know where they would get that, so

2    that is potentially confusing.  And if in fact the tax law

3    is that it would not be reflected on Mr. Constantine's

4    return, not necessarily reflected on his individual

5    return, that certainly could be misleading to say the

6    least.

7              So I don't think this is -- to inject this issue

8    in this form at this stage of the case, I have grave

9    concerns about it so I'm precluding it.

10             MS. KOMATIREDDY:  Understood.

11             May I ask to establish since we put in 2002 to

12   2007 for Eufora, just to establish Mr. Semple was tasked

13   with filing the return for '08 and '09 and

14   Mr. Constantine's statement to him they could not be filed

15   and whatever explanation he gave was the defendant's

16   admission.

17             MR. LARUSSO:  I object to that.

18             MS. KOMATIREDDY:  We believe it is probative

19   what is coming clear there is substantial confusion over

20   who owned what at Eufora and even Mr. Constantine couldn't

21   give his accountant the go-ahead to make that clear for

22   the '08 and '09 years when all of these quote/unquote

23   sales of shares were happening.

24             THE COURT:  Again, to go into that, to put that

25   statement in there, we're left with a statement there is

Semple - Cross/Komatireddy

5561

1  something wrong there, then what is wrong.  We'd have to

2  go into an analysis what information or analysis was

3  provided to them and so it has no probative value.

4         To the extent the Government wants to show there

5  was an effort to try to determine what interest there was

6  in Eufora at the time, we heard a lot of testimony at the

7  time.  I don't think the jury is lacking in testimony

8  that, as Mr. Haley put it or the witness put it, trying to

9  clean up the records and trying to account for every

10  interest.  So there is no need to confirm that through

11  this witness.

12         There's a lot of testimony with that.  So I'm

13  precluding this whole area.

14         What else do you have to cover?

15         MS. KOMATIREDDY:  I have five or ten more

16  minutes, your Honor.  I just need to confer with my

17  colleagues.

18         THE COURT:  Let's take a short break.  The jury

19  has been waiting for about ten minutes.

20         MR. LARUSSO:  And I just have to confer with my

21  client.

22         (Whereupon, a recess was taken.)

23         THE COURT:  Okay.  Please be seated.

24         Bring in the jury.

25         (Whereupon, the jury at this time enters the

Semple - Cross/Komatireddy

5562

1   courtroom.)

2          THE COURT:  If everybody will be seated.  Go

3   ahead.

4   Q.   One of the things you testified about on direct was

5   that you had -- you didn't have full information through

6   no fault of your own to ask Mr. Richards about legal

7   expenses and he didn't give it to you, right?

8   A.   Yes, that's correct.

9   Q.   Okay.  And in particular you asked for invoices and

10  other information about the actual payments, and he didn't

11  give them to you?

12  A.   Yes.

13          THE COURT:  Slow down a little bit, Ms.

14  Komatireddy.

15  Q.   As a result, you didn't have as part of your review

16  about $800,000 in attorney's fees and related costs and

17  expenses included in that review, right?

18  A.   No, that's not correct.

19  Q.   Isn't it true that you excluded $800,000 from your

20  analysis because of a lack of information?

21  A.   No, there was about $758,000 I believe in attorney

22  fees.  Of that, roughly 200,000 plus, was related to the

23  Myrick case and the Playboy acquisition, and then there

24  was probably 350,000 or thereabouts that were related to

25  Ron Richards which Mr. Gonchar was retained or more

5563

1  comfortable with it.  We don't have a concern about that.

2        I would say it was probably closer to a third or

3  a quarter million dollars where we didn't have much detail

4  on it, other than the actual statements by Mr. Kenner or

5  Mr. Constantine which we had no reason to disbelieve, but

6  we didn't have the inputs.

7  Q.   With respect to that $300,000 or so from

8  Mr. Richards, you didn't have the invoices from

9  Mr. Richards about what his work was for; is that correct?

10 A.   That's correct.

11 Q.   You testified you reviewed a number of e-mails, moved

12 in by the defense, the Government's version is 4808.  I'll

13 hand these to you.

14        Do you have them in front of you?

15 A.   No, ma'am.

16 Q.   There you go.  (Handing.)

17 A.   Thank you.

18 Q.   You said that you had looked at these e-mails in

19 order to get a sense of matching it up so where the money

20 went; is that correct?

21 A.   Trying to get a idea what the purpose of the Global

22 Settlement Fund was; that is correct.

23 Q.   When you look at these e-mails, it has become a

24 familiar paragraph in our trial, a paragraph that is

25 repeated in many of thee e-mails, right?

Semple - Cross/Komatireddy

5564

1   A.    I believe so.

2   Q.    When you look at the e-mail, for example, Mr. Nash,

3   there's no approved authorization paragraph in the e-mail

4   backup you had for Mr. Nash, is there?

5   A.    What documents, please?

6   Q.    Your work papers, marked 4808, and I'm looking at

7   page 26.

8   A.    Thank you.  Okay.  Right.

9   Q.    The paragraph that is in the cover of the e-mail is

10  Mr. Gonchar.  It's not in the e-mail with Mr. Nash, is it?

11  A.    Not on this one, no.

12  Q.    On page 27, the next one, with Mr. DeVries, that

13  paragraph isn't in the e-mail for him either, ist it?

14  A.    No, I talked to Mr. Nash, I don't recall talking to

15  Mr. DeVries.

16  Q.    The e-mail with Mr. DeVries actually refers to a

17  couple of things but basically at the last sentence, the

18  sooner the better so we want to file the suit against

19  Jowdy in the next two days, right.

20          Thanks, Phil.

21          Did I read that last sentence correctly,

22  Mr. Semple?

23  A.    I'm sorry.

24  Q.    The sooner the better, so we want to file the suits

25  against --

Semple - Cross/Komatireddy

5565

1    A.   Yes, that's what it says.

2    Q.   And as far Mr. Ranford, the e-mail that you have or

3    if you look at your spreadsheet in your work papers, you

4    had a deposit of $100,000 from Mr. Ranford, right?

5    A.   Yes.

6    Q.   But you also had a deposit of $300,000 for

7    Mr. Ranford, right?

8    A.   Yes.

9    Q.   And you didn't have an e-mail backing that up so you

10   excluded that from your analysis?

11   A.   The 100,000 was returned if you look at the analysis.

12   The 100,000 was returned because there was no

13   confirmation.

14   Q.   Right.  The $300,000, you didn't have an e-mail

15   backing that up, right?

16   A.   There is nothing in the file as I recall.

17   Q.   So you excluded that from your analysis?

18   A.   No, I don't think I excluded it from my analysis.

19   Q.   SMC-6, your work papers.  Take a look at that.

20   A.   Thank you.

21        THE COURT:  While he's doing that, members of

22   the jury, I wanted to make clear SMC 0013 through 31,

23   which is a group of e-mails, that came in at various

24   times, but it is admitted under C-283 A, Mr. LaRusso?

25        MR. LARUSSO:  That's correct.

Semple - Cross/Komatireddy

5566

1    THE COURT:  And you have no objection,

2    Mr. Haley.

3    MR. HALEY:  None, your Honor.

4    THE COURT:  So they are admitted as a group

5    under that defense number.

6    (Whereupon, Defendant's Exhibit C-283 A was

7    received in evidence.)

8    A.   I don't actually see the e-mail by him, but I know

9    that we inquired about it because the 100,000 came in, a

10   100,000 was wired back to the Schwab account because he

11   did not provide the approval requested by Mr. Kenner and

12   Mr. Constantine.

13   He later provided the approval along with

14   $300,000 as I recall, but it is not in my work papers.

15   Q.   Well, do you have that approval for $300,000 in your

16   work papers?

17   A.   I just said that, not in my work papers.

18   Q.   You don't have an approval for Mr. Steven Rucchin at

19   all?

20   A.   I don't recall.

21   Q.   The papers are in front of you.  Go ahead and check?

22   A.   Doesn't seem to be, no.

23   Q.   You weren't here for Mr. Rucchin's testimony at this

24   trial?

25   A.   No.

Semple - Cross/Komatireddy

5567

1   Q.   You weren't here for Mr. Ranford's testimony?

2   A.   No.

3   Q.   Finally as part of your analysis you also analyzed

4   money that went from Mr. Kenner from the GSF account,

5   quote/unquote, correct?

6   A.   Yes, for his benefit and then I think there was some

7   expenses paid that were paid to him.

8   Q.   Right.

9        And you actually received from -- I'm sorry.

10  You received from Mr. Constantine a list of those

11  expenses, correct?

12  A.   Yes.

13  Q.   And I'm going to hand you what has been marked as

14  Government's Exhibit 4811.  This is that list of expenses

15  that you received from Mr. Constantine, correct, Bates

16  stamp SMC 39 to 45?

17  A.   It appears to be.

18       MS. KOMATIREDDY:  The Government moves 4811 in

19  evidence.

20       THE WITNESS:  There appears to be a section that

21  is missing.

22       THE COURT:  Hold on.

23       THE WITNESS:  So it is incomplete.  Sorry.

24       THE COURT:  Okay.

25  Q.   In terms of what was provided in your work papers, is

Semple - Cross/Komatireddy

5568

1    that a copy of what you provided to the Government in

2    response to a subpoena as part of your work papers?

3    A.    I don't have the Bates stamped documents in front of

4    me from my office.  All I can tell you there is a section

5    missing.

6    Q.    You don't see a Bates stamp at the bottom there?

7    A.    Yes, I do.  I don't have the original Bates stamped

8    documents with me so I can't confirm, but I'm saying there

9    is a section missing.  I don't know.

10   Q.    Where are the original Bates stamped documents?

11   A.    In Phoenix, Arizona.

12             THE COURT:  Any objection, Mr. LaRusso?

13             MR. LARUSSO:  Just for the record, I don't know

14   if I have them.  I will check.  You are talking about --

15             THE COURT:  No, she's offering that document and

16   I think she gave you a copy of that.  Do you have a copy

17   of what she has?

18             MR. LARUSSO:  I have a number of copies.  I

19   haven't had a chance to look at this.

20             May I just have a second.

21             Your Honor, to be able to properly answer, I'll

22   ask the witness what he's refer referring to.

23             THE WITNESS:  I'm referring to the blank section

24   on that.

25             MR. LARUSSO:  I have no objection to introducing

Semple - Cross/Komatireddy

5569

1    it.  Maybe we can clarify it later.

2              THE WITNESS:  May I have that back.  Don't leave

3    with my documents.

4              MR. HALEY:  Your Honor, I may have an objection.

5              THE COURT:  Let me see the document.  Why don't

6    you bring it up.

7              MS. KOMATIREDDY:  That is an exact copy in

8    response to a subpoena.  That's what he produced.

9              THE COURT:  I understand that.

10             MR. HALEY:  Don't yell at me.

11             MS. KOMATIREDDY:  Not you.  Mr. LaRusso.

12             MR. HALEY:  My only objection, Judge, is the

13   fact that it's incomplete.

14             THE COURT:  What are you using this for?

15             MS. KOMATIREDDY:  The rest of the expenses.  I

16   don't mind if the record says something is blacked out.  I

17   have a list of expenses that Mr. Kenner claimed for

18   reimbursement from GSF.

19             THE COURT:  So you will focus him on other

20   expenses.  What's the point?

21             MS. KOMATIREDDY:  I was going to tie it up on

22   that.

23             None of these were authorized but specifically

24   Mr. Gonchar specifically testified that he did not

25   authorize his money to be used to buy those Stanley Cup

Semple - Cross/Komatireddy

5570

1    final tickets and they are in here.  They are just not in

2    there.  That's all.

3            MR. HALEY:  I don't know if I need to put my

4    client on the stand, Judge.  I think we have the bank

5    records, that show his American Express bill paying for

6    those Stanley Cup tickets.  I would have to confirm that

7    with my client.  That has become an issue.

8            MS. KOMATIREDDY:  That is in evidence, the Amex

9    bill that Mr. Kenner claimed reimbursement for the ticket.

10   They go from the money that goes from the GSF to

11   Mr. Kenner's Wells Fargo account to pay his Amex bill to

12   pay these tickets.

13           THE COURT:  You have to put your client on to

14   explain that.

15           MR. HALEY:  I didn't know what they were, Judge.

16   It's difficult for me not to raise an objection.

17           MR. LARUSSO:  Your Honor, has he identified this

18   document.

19           MS. KOMATIREDDY:  He said it was the expense

20   report he received from Mr. Constantine from --

21           MR. LARUSSO:  The last part I didn't hear her.

22           MR. HALEY:  I don't mean to belabor the record.

23   So he will be testifying that this is a document that he

24   received from Mr. Constantine regarding the expenses that

25   Mr. Kenner claimed?

Semple - Cross/Komatireddy

5571

1          MR. LARUSSO:  Correct.

2          MS. KOMATIREDDY:  There was a claim made in 2009

3   so if it helps I have the cover e-mail what Mr. Kenner

4   sent to Mr. Constantine.  I can introduce that as well.

5   If it helps, do you want me to show it to you.  I take

6   your good faith representation.

7          MR. LARUSSO:  Judge, the only other thing is I

8   may be able to get those missing pages.

9          THE COURT:  If you do we'll put them in.

10         MR. LARUSSO:  That's my point.

11         THE COURT:  I'll ask him.

12         MR. LARUSSO:  Thank you very much.

13         (End of sidebar conference.)

14         (Continued.)

15

16

17

18

19

20

21

22

23

24

25

Semple - Cross/Komatireddy

5572

1           (In open court.)

2           THE COURT:  I'm admitting Government 4811 in

3    evidence, even though there is a portion of it that

4    appears to be blocked out, it may be a photocopy.  The

5    Government will ask about other entries not related to

6    that particular page but, Mr. Semple, I'll ask that you

7    call back to your office or to get somebody to check and

8    to see whether or not if there is in the original it has

9    that?

10           THE WITNESS:  I will definitely do that.

11           THE COURT:  And if we can get that, we'll

12   introduce the whole document into evidence, okay.

13           MS. KOMATIREDDY:  Thank you, Judge.

14           THE COURT:  So 4811 is admitted with the

15   understanding that if that additional page is recovered,

16   we'll add it to that exhibit?

17           THE WITNESS:  Thank you.

18           (Whereupon, Government Exhibit 4811 was received

19   in evidence.)

20           MR. LARUSSO:  Your Honor, may I have a quick

21   sidebar.  I think I may have it.  I apologize to the Court

22   but I would just like to put a little more information in

23   on this.

24           (Continued.)

25

Semple - Cross/Komatireddy

5573

1    (The following was held at the side bar.)

2    MR. LARUSSO:  Would you read SMC 38, I think it

3    will explain it.  This is an e-mail for the record, if I

4    may, Judge, this is from -- can't see, Judge --

5    Mr. Kenner, it looks like to Mr. Constantine.  The e-mail

6    says right here:  Just take out what you don't like.

7    Those were all of the legitimate travel, entertainment,

8    food, et cetera.  Get it done.  Thanks, Phil.

9    That's this document.  What is missing is the

10   expenses that were not allowed.  That's what I believe --

11   this removed portion.  So I'm not sure we are going to

12   find any additional expenses.  I want to let the Court

13   know that.

14   MS. KOMATIREDDY:  If I understand your

15   understanding, Mr. Constantine has redacted --

16   MR. LARUSSO:  I don't know, that may be the way

17   he received it.  I just want to make sure the witness'

18   testimony is complete.  That's all.

19   MS. KOMATIREDDY:  It may be that Mr. Kenner

20   redacted it.

21   THE COURT:  For completeness should we redact

22   the cover e-mail?

23   MR. LARUSSO:  Yes.

24   MR. HALEY:  Your Honor, another issue has arisen

25   because there has been so much testimony in this case.  My

Semple - Cross/Komatireddy

5574

1   recollection of Gonchar's testimony, and with all due

2   respect with Ms. Komatireddy, is not necessarily

3   consistent with her recollection, and I did speak with my

4   client briefly.  When you first questioned Sergei Gonchar,

5   you started to ask a question about who paid for the

6   tickets, and I don't know if there was an answer.  I guess

7   we can check the record.  Our recollection is I don't know

8   who paid for the tickets.  What is your recollection?

9           MS. KOMATIREDDY:  My first few questions to

10  Mr. Gonchar, he did -- the question was:  Do you know who

11  paid for the tickets?

12          I don't know.

13          Did you pay for the tickets?

14          He said no.  At least not intentionally.

15          And then he said he didn't hear, and I moved on.

16          THE COURT:  So we'll introduce the cover e-mail.

17          MR. LARUSSO:  I think that explains it.  I'm not

18  so sure this is an issue the part that is blacked out.

19          THE COURT:  You can still double-check.

20          MR. LARUSSO:  I will do that.

21          (End of sidebar conference.)

22          (Continued.)

23

24

25

Semple - Cross/Komatireddy

5575

1          (In open court.)

2          THE COURT:  Members of the jury for

3    completeness.

4          MS. KOMATIREDDY:  I have it, your Honor.

5          THE COURT:  In the work papers there was a cover

6    e-mail.

7          MS. KOMATIREDDY:  -- Marked 4810.

8          THE COURT:  And the cover e-mail was 4810?

9          MS. KOMATIREDDY:  Yes.

10         THE COURT:  Any objection to that?

11         MR. HALEY:  No, your Honor.

12         MR. LARUSSO:  No, your Honor.

13         THE COURT:  4810 is the cover e-mail to the

14   chart.

15         (Whereupon, Government Exhibit 4810 was received

16   in evidence.)

17         (Continued on the following page.)

18

19

20

21

22

23

24

25

Semple - Cross/Ms. Komatireddy

5576

1   CROSS-EXAMINATION  (Continued)

2   BY MS. KOMATIREDDY:

3   Q.   Was part of your analysis was to review money

4   Mr. Kenner received from the GSF, correct?

5   A.   Yes.

6   Q.   And you were told that money was for expenses related

7   to GSF, correct?

8   A.   Yes.

9   Q.   And the backup you had for that was this e-mail and

10  attachment, correct?  And this email I'm referring to

11  4810, right?

12  A.   Yes.

13  Q.   And the attachment is this list, what appears to be

14  various expenses on various statements, correct?

15  A.   Yes.

16  Q.   And this was your, this was the entirety of your

17  backup for those expense, correct?

18  A.   That's correct.

19  Q.   You didn't go through and verify each one, whatever

20  it was for, right?

21  A.   No.

22  Q.   So for example -- page 43, where it says in the

23  middle, Joe Louis box office, $1285.  You didn't actually

24  verify what that was for, did you?

25  A.   No.

Semple - Cross/Mr. Haley

5577

1    MS. KOMATIREDDY:  No further questions.

2    THE COURT:  Mr. Haley?

3  CROSS-EXAMINATION

4  BY MR. HALEY:

5  Q.   Joe Louis box office.

6       Did you have any documents one way or another as

7  to whether or not that had any relationship to the Stanley

8  Cup playoffs in 2009?

9  A.   No.

10  Q.   Did you ever have a discussion with Sergei Gonchar as

11  relates to that particular expenditure, yes or no?

12  A.   Yes.

13  Q.   Do you have a recollection of that conversation?

14  A.   Only that we discussed it in general, the fact that

15  only a portion of these expenses were reimbursed.

16  Q.   Finally, with reference to the portion of your report

17  that refers to Richard/Kenner GSF summary analysis.

18       Do you have the report?

19  A.   Yes.

20  Q.   You know what I'm referring to would be --

21  A.   Yes.

22  Q.   SMC 0000005?

23  A.   6, 7 and 8, four pages.

24  Q.   Who did you receive that document from?

25  A.   I received one document from Ron Richards which was

Semple - Redirect/Mr. LaRusso

5578

1    the one that had the running totals.  The Eufora one I

2    received from Mia Edrozo.  I'm not sure if I received -- I

3    don't believe I received it from Mr. Kenner directly.  I'm

4    not sure if I received it indirectly from -- originally

5    from Sergei Gonchar, which is what he had that Phil had

6    given him, I believe he said.  He just wanted me to look

7    at it.

8    Q.    And what you have just testified to in terms of your

9    memory, do you recall testifying to that same fact on

10   direct, if you recall?

11   A.    I believe so.

12         MR. HALEY:  I have no further questions.

13         THE COURT:  Redirect?

14         MR. LaRUSSO:  Thank you, your Honor.

15         I just want to make sure he has the exhibits.

16   REDIRECT EXAMINATION

17   BY MR. LaRUSSO:

18   Q.    Mr. Semple, C283 for identification is your work

19   papers.

20         Is that correct?

21   A.    Yes.

22   Q.    Would it be fair to say that during the course of

23   your direct and cross-examination, almost every single

24   document has been separately marked and introduced.

25         Is that correct?

Semple - Redirect/Mr. LaRusso

5579

1    A.   I believe a substantial portion of it, yes.

2              MR. LaRUSSO:  Your Honor, may I ask that it be

3    received at this time in light of the fact that we have

4    already introduced, I think, about 90 percent of the

5    documents?

6              MS. KOMATIREDDY:  Objection, your Honor.

7              THE COURT:  Yes.  We had that discussion.

8              MR. LaRUSSO:  Okay.

9    BY MR. LaRUSSO:

10   Q.   Let me just direct your attention to the $20,000

11   deposit which you testified to was sent in to the account

12   of Ron Richards' account as part of the Global Settlement

13   Fund.  We had that discussion.

14             Remember that?

15   A.   No.

16             What I remember is that my staff -- of $20,000,

17   they were given e-mail support for it.  I didn't have Ron

18   Richards' bank statements or records to confirm it at the

19   time.  And so I didn't include that on that analysis.

20   Q.   When you say that analysis --

21   A.   I didn't include it on that analysis because it

22   wasn't included by Ron Richards or Phil Kenner.

23   Q.   So on your document that you prepared from three

24   accounts that you discussed, Government Exhibit 767, you

25   did not include the $20,000 that appeared on the Ron

Semple - Redirect/Mr. LaRusso

5580

1   Richards/Kenner account as part of your work papers.

2            Is that correct?

3   A.   It was not on the record.  That handwriting is one of

4   my staff.  It says, opening deposit to account.  And then,

5   it was per discussions with Tommy Constantine.  I didn't

6   have had any documentation to back it.  It was not

7   included in Kenner's or -- Kenner's or Richards' accounts,

8   so I couldn't really include it.

9   Q.   What was the date of the deposit?

10  A.   It's marked as 3/31/09.  And the only thing we had to

11  support it was an e-mail from Mr. Kenner.

12  Q.   Okay.  Your chart starts on May 5, 2009 and did not

13  include that March document?

14  A.   That's correct, yes.

15  Q.   You were shown 4810 just few moments ago and

16  identified that as an e-mail that was provided to you with

17  regards to the list of expenses that were submitted for

18  analysis.

19            Is that correct?

20  A.   I'm sorry?

21  Q.   Exhibit 4810 was an e-mail that you included in your

22  work papers and it related to the expenses that Mr. Kenner

23  submitted as part of your work papers, and that was

24  separately identified.

25            Is that correct?

Semple - Redirect/Mr. LaRusso

5581

1    A.   Yes, it was included with the papers.

2    Q.   And this e-mail, I assume you reviewed it?

3    A.   Pardon?

4    Q.   You reviewed this e-mail?

5    A.   I don't have any direct knowledge of it.

6    Q.   Let me just read it:

7              *Just take out what you don't like.  Those were*

8    *all of the legit travel, entertainment, food, et cetera,*

9    *to "get it done".  Thanks, Phil.*

10             That is the e-mail that you had included in your

11   work papers with regard to these expenses.

12             Is that correct?

13   A.   Yes.

14   Q.   And then down below you wrote that, *Dude, you have*

15   *Mr. Chow's nightclub in here.  There is no way that's*

16   *going to fly.*

17             Do you recall that?

18   A.   No.

19   Q.   You testified on cross-examination about one of the

20   expenses and then six race cars.

21             Do you recall that?

22   A.   Yes.

23   Q.   And whether you received any documents with regards

24   to that.

25             Do you recall that?

Semple - Redirect/Mr. LaRusso

5582

1   A.   Yes.

2   Q.   Let me show you what has been marked, looks like

3   C330.

4        MR. HALEY:  Thank you.

5   BY MR. LaRUSSO:

6   Q.   Mr. Semple, would you look at that document.

7        Does that refresh your recollection at all as to

8   whether you received any documentation in regards to that

9   expenditure?

10  A.   (No verbal response.)

11  Q.   The question, Mr. Semple, is whether it refreshes

12  your recollection.  If it doesn't, then please say so and

13  we'll move on.

14  A.   I'm looking.

15       It does not.

16  Q.   Okay.  During your cross-examination by the

17  Government, you were asked questions and testified

18  regarding the fact that you couldn't conclude all of the

19  expenditures were for proper purposes.

20       Do you recall that?

21  A.   Yes.

22  Q.   And I believe you also said that you couldn't get

23  information from Ron Richards.

24       Do you recall that?

25  A.   Yes.

Semple - Redirect/Mr. LaRusso

5583

1   Q.   What category of expenditures were you unable to make

2   a determination of?

3   A.   As I testified, Mr. Richards felt that certain

4   documents shouldn't be provided based on attorney-client

5   privileges, and I respected that.  I didn't have them.

6   When I asked for them, we didn't get them, and I

7   understand why.

8            But I just couldn't confirm that all of the

9   money paid to Mr. Richards was for the purposes of the

10  Global Settlement Fund litigation.  But there was an

11  engagement letter and after that -- and I just noted it in

12  my work papers that -- or my papers that we didn't get

13  those back.

14           There were certain legal fees that were paid

15  that, I believe, Ron Richards paid directly to different

16  law firms.  And he felt those attorneys' bills should not

17  be provided.  We had a discussion about it.  He and

18  Mr. Lane had discussions offline from me.  I wasn't

19  involved, and as a result we were told that we weren't

20  going to get those.

21  Q.   However, you did you have a subsequent conversation

22  with Mr. Gonchar about some of the legal fees, prior

23  cases, et cetera.  You already testified to that, correct?

24  A.   Yes.

25  Q.   But you accounted for some of them with regards to

5584

1   the project, yes or no, that you were asked to accomplish.

2          Is that right?

3   A.   Yes.

4          We were able to, when we look at the

5   explanations from Mr. Kenner, Mr. Richards gave us, and

6   Mr. Gonchar was comfortable with that.

7   Q.   Just a few more questions, if I may.

8          There was a number of questions asked of you

9   regarding the authorization, the acknowledgment and

10  approvals for the expenditures of money.

11         Do you remember those e-mails from the hockey

12  players?

13  A.   Yes.

14  Q.   I believe you were asked, did you see one from

15  Mr. Rucchin, did you see one from Mr. Ranford.  And you

16  said you didn't see the --

17         Is that correct?

18  A.   Yes.

19  Q.   First question, Did you have all of the

20  acknowledgements and authorizations, e-mails?

21  A.   Yes, I thought we had had -- I know we had all of

22  them.  There were certain ones we just didn't get.  I

23  don't know why.  It was an engagement we didn't finish.

24  If we had finished the engagement, I probably would have

25  gone back and asked for them.

5585

1    At the time I had a majority of them and I was

2  told the same authorizations existed for all of them.

3  Q.   When we're talking about authorizations, we're

4  talking about an e-mail.

5    Is that correct?

6  A.   It's an e-mail, yes.

7  Q.   From Mr. Kenner to the hockey players, and then a

8  response by the hockey players acknowledging and

9  authorizing the expenditures in the e-mail.  That is

10  pretty, summary with regards to them?

11  A.   Yes.

12  Q.   And all of these e-mails were the same with regards

13  to the e-mails Mr. Kenner had sent to the hockey players.

14    Is that correct?

15  A.   That is my recollection, yes.

16  Q.   And you had reviewed, amongst the ones in your work

17  papers and found that to be so in regards to a great many

18  number of the ones that the hockey players had authorized.

19    Is that right?

20  A.   When we originally sat down with Mr. Constantine and

21  his staff, they gave us a stack of them.  There were other

22  ones that they were going to provide to us.  They needed

23  to find them, locate them, whatever.

24    And the initial stacks were with our work

25  papers.  And then I talked to Mr. Gonchar.  He didn't want

Semple - Redirect/Mr. LaRusso

5586

1    to do any more work.  He was comfortable with the results

2    of our findings, so we stopped.

3    Q.    So the ones that you did receive are in your work

4    papers.  And if you examine them, you will see that these

5    are the acknowledgments and authorizations from the hockey

6    players in response to Mr. Phil Kenner's e-mails.

7              Is that right?

8    A.    Yes, sir.

9    Q.    And you were asked questions by the Government in

10   regards to a declaration in the bankruptcy court, I

11   believe it was the IRS assessment to Constantine 1.774

12   plus dollars individually for taxes.

13             And I believe you then said the work was

14   performed and, in fact, the IRS modified the assessment to

15   a $60 dollar refund for Mr. Constantine?

16             Is that correct?

17   A.    For two years, 2005 and 2006.

18   Q.    You were anticipating that?

19   A.    Absolutely.

20   Q.    Is it fair to say without going into the extent of

21   all this, it was an extensive audit that was conducted by

22   the IRS?

23   A.    Yes.

24   Q.    One more question.

25             You testified that you appeared here today and

5587

1    are not being paid a fee.

2            Is that correct?

3    A.    Yes.

4    Q.    Why is that?

5    A.    Pardon?

6    Q.    Why is that?

7    A.    Well, the Government subpoenaed me and subpoenaed my

8    records and then I had discussions with Mr. --

9    Q.    How about we just say the USA?

10   A.    Yes.

11           I had discussions and they were telling me that

12   they were going to get back to me when I was going to

13   testify.  So I really had prepared to testify.  And then I

14   ultimately -- I was actually delivered a subpoena again by

15   the IRS at the IRS office in Scottsdale, and gave them

16   some additional documents.  And that was an active

17   subpoena, that the first one said you've got to be

18   available for at least five weeks.

19           My attorney called and said that is not

20   reasonable, whatever.  That is not reasonable.  And so I

21   got the second one that had a very short time frame.  And

22   I never heard anything from them.

23   Q.    So you appeared here today on behalf of

24   Mr. Constantine for free?

25   A.    Yes.

5588

1          I was asked to testify to work we did, and I was

2     willing to do it.  Quite frankly, I was prepared for this

3     on behalf of the Government.  But since I didn't get

4     called, I didn't have to do a lot of work other than

5     traveling, so --

6               MR. LaRUSSO:  No further questions.

7               THE COURT:  Anything else?

8               MS. KOMATIREDDY:  No, your Honor.

9               THE COURT:  You may step down.

10              MR. HALEY:  No questions.

11              THE COURT:  Your next witness.

12              MR. LaRUSSO:  He is outside.

13              Daniel Kennedy, called by Mr. Constantine, your

14     Honor.

15     **WILLIAM DANIEL KENNEDY**

16          called as a witness, having been first duly sworn,

17          was examined and testified as follows:

18              THE COURT:  Will you please state your name and

19     spell your last name for the record.

20              THE WITNESS:  William Daniel Kennedy, it's

21     K-E-N-N-E-D-Y.

22              THE COURT:  Mr. Kennedy, stay close to the mic

23     and keep your voice up.

24              THE WITNESS:  Okay.

25

Kennedy - Direct/Mr. LaRusso

5589

1    DIRECT EXAMINATION

2    BY MR. LaRUSSO:

3    Q.    Good afternoon, Mr. Kennedy.

4    A.    Good afternoon.

5    Q.    Mr. Kennedy, where do you reside?

6    A.    Scottsdale, Arizona.

7    Q.    How long have you resided there?

8    A.    Since '96, 7, 8, somewhere like that.

9    Q.    And before that?

10   A.    In Chicago.

11   Q.    And would you tell us what your business or

12   occupation is, what do you do for a living?

13   A.    Today I run a technology incubator called Mindnest.

14   Q.    Can you give that to the reporter, can you spell

15   that?

16   A.    M-I-N-D-N-E-S-T, one word.

17   Q.    What kind of business is that?

18   A.    We help technology companies -- develop software

19   systems to kind of improve their, their operations or

20   incubate new technology ideas.  And we have been focused

21   on that for three or four years.

22   Q.    Just give the jury a little bit of an idea of your

23   work history before that.

24   A.    Sure.  I started a number of businesses.

25           I started my first business at 17 in my bedroom

5590

1    called Saleslogix.

2           And through that business from myself I hired

3    one guy, then two, then 20.  And we ended up taking that

4    public in '96.  We had about 1,200 people during that

5    market cap.  We --

6    Q.   You had 1,200 people?

7    A.   1,200 people, I believe, was our market cap.

8    Q.   You mean they were employed by your company?

9    A.   Correct.

10   Q.   What is the market cap?

11   A.   I'm sorry.  It was markets, about a billion

12   and-a-half dollar market cap, so what the company was

13   valued at.

14   Q.   Continue telling us a little more about your work

15   history up until the present time.

16   A.   Sure.

17          I built another company called VSTORE.com and

18   they were a -- that was a business that a lot of people

19   open.  They're online commerce shops, and that was in the,

20   in the early '90s.

21          And another business called VCOMMERCE,

22   V-C-O-M-M-E-R-C-E, and that business allowed -- we help

23   target overstock selling, big e-tailers, effectively run

24   their back-end logistics to help them get their mission to

25   consumers.  Not very exciting stuff.  But we had a lot of

5591

1    transactions for a lot of big companies.

2            So this year, being an entrepreneur --

3    information, venture capitalists and building companies.

4            I also had a business called C 9 Innovations,

5    which was earlier.  And C 9 Innovations was an incubator

6    and we helped businesses similar to what we do today.  But

7    then we did equity instead of doing it for cash.  So it

8    was, we also helped businesses kind of -- entrepreneurial

9    businesses get going.

10   Q.   Let me ask you, did there come a time when you met a

11   man by the name of Tommy Constantine?

12   A.   Yes.  I know him as Tommy Constantine, just a

13   different pronunciation.

14   Q.   Do you see him here in the court?  We know people's

15   names, don't worry about it.

16   A.   I'm sorry, yes.

17   Q.   Indicating Mr. Constantine?

18   A.   Yes.

19   Q.   I'm not going to get it right.

20   A.   Yes.

21            THE COURT:  Any objection to the identification?

22            MS. KOMATIREDDY:  No, your Honor.

23            MR. HALEY:  No, sir.

24            THE COURT:  Identification is conceded.

25            Go ahead.

Kennedy - Direct/Mr. LaRusso

5592

1    BY MR. LaRUSSO:

2    Q.    Mr. Kennedy, I know I got your name right.

3          Could you just give us a little bit of how you

4    first met Mr. Constantine?

5    A.    I don't recall exactly how we met.  I know it was

6    through a mutual friend that introduced us.  We were both

7    young entrepreneurs in town, and we were into cars and

8    things like that.  So we were -- it was an introduction

9    made, and we just kind of became friends.  So I don't

10   remember the exact moments with the -- of the inception of

11   our relationship.  But it was, I would say it was in the

12   late '90s.

13   Q.    Did there come a point in time when the two of you

14   participated in any kind of business venture?

15   A.    The first thing that we did was a, I believe was a --

16   Tommy had a helicopter, a couple of helicopters he was

17   selling and I believe he either -- I believe he owned the

18   helicopters or through a business or something like that.

19          And he asked me, he says, we had some technology

20   folks, if I could build a website for him that helps sell

21   these helicopters.  And at that point the World Wide Web

22   was relatively new.  And so he thought there might be

23   people on the Web or on the Internet that might find the

24   helicopters to search in the beginning.

25          So I built some websites for him, and to help

5593

1    sell the helicopters.

2            And Tommy then, said to me, said that if someone

3    were to call the phone number and say that they came in

4    through the website, that he would provide a commission.

5    And I think it was around two percent -- I'm sorry, two

6    and-a-half, maybe three percent, something like that.

7    Q.   Did you have a written contract?

8    A.   No.  It was just a gentlemen's agreement.

9            And I -- it didn't take much time to build the

10   website.  It was probably a day's worth of work or

11   something like that.  And I had forgotten about it.

12           And several months later Tommy walked into the

13   office and handed me a check for $7,000, which I was very

14   shocked at.  Because I frankly had written that off and,

15   you know, just doing a favor for a friend.  And he said

16   that he had sold the larger helicopter and that the person

17   had identified they got it through the website.

18           And it really stuck in my memory that someone

19   would do that and stand up for, you know, what they made a

20   verbal commitment with.  And it was a nice moment.  So

21   that was when we kind of went from being a acquaintances

22   to being friends.

23   Q.   You mentioned cars.  Some kind of a mutual interest

24   in cars.  What were you referring to there?

25   A.   Well, I raced several different series for awhile.

5594

1    And, actually, Tommy raced with me in, I believe, one of

2    the endurance races that I was doing.  And it was just, I

3    would like to say I was good, but I was just a novice.

4    And he joined me in one of the races.

5    Q.    Did there come a time after your initial gentlemen's

6    agreement regarding the website that you put together for

7    him that you became involved in another business venture

8    with Mr. Constantine called Eufora?

9    A.    Yes.

10            When we first started talking about it, I don't

11   remember if Eufora was the exact name.  The idea was

12   coming together at that point, but I know Tommy had been

13   looking at doing some things, prepaid credit card space,

14   which was relatively new back then.  And we started

15   talking about how my company might be able to help with

16   the, what later became Eufora, before it was officially

17   formed.

18   Q.    What was the name of your company that did work for

19   that company?

20   A.    The name was C 9 Innovations.

21   Q.    And what kind of work did the company perform?

22   A.    It was, we helped entrepreneurs develop technology

23   and kind of business strategies, marketing strategies,

24   those types of things.  But primarily this was about

25   helping build the technical infrastructure, the initial

5595

1   technical infrastructure for him.

2   Q.   Let me just kind of jump ahead a little bit.

3   A.   Sure.

4   Q.   There came a point in time when the operating

5   agreement was signed by you and the others in regards to

6   the formation and the operation of Eufora.

7        Is that correct?

8   A.   That's correct.

9   Q.   Can you tell us how that came about, briefly?

10       Let me do it this way.

11  A.   Sure.

12  Q.   Let me show you what has been marked in evidence as

13  C265.

14       Do you recognize that?

15  A.   Do you mind if I look at it?

16       It appears to be the original operating

17  agreement.

18  Q.   Do you recognize that document because of what?

19  A.   I recognize it as my signature is on it.  And the

20  members were the original forming members of the LLC, from

21  my memory.

22  Q.   You were one of the founding members of this company?

23  A.   That's correct.

24  Q.   And could you tell us what your contribution was to

25  the company and what role you played, if any, in the

5596

1    company, at this point in time?

2    A.    Sure.

3          The agreement, as I remember, the discussions

4    that we had were that we were going to build the

5    technology for Eufora.

6    Q.    We, meaning you and your company?

7    A.    C 9 Innovations would have built the technology and

8    create an environment with ongoing hosting and kind of

9    maintenance and support for the core of what Eufora was

10   going to be in the original discussions, which had a

11   relatively limited scope in my mind of what we were going

12   to try to build.

13         And we built that technology, myself and Pete

14   Mueller, Nathan Pfluger.  A number of people were involved

15   in this, a whole team of people in building that

16   technology and kind of being involved with Mr. Constantine

17   and his, his idea learning about it and building the

18   software for it.

19   Q.    In return for your participation, that is you and

20   your company, you received a percentage interest.

21         Is that correct?

22   A.    As a commitment to a -- it was a commitment to

23   perform as we went forward.  So I had to perform from the

24   time that it was signed, a small part.  But it was for the

25   ongoing participation.  That is why I received that

5597

1    ten percent.

2    Q.   And again, this is Defendants' Exhibit C265 which you

3    identified as the operation agreement.  And this shows

4    that C 9 Consulting, LLC has a ten percent interest in

5    Eufora.

6              Is that correct?

7    A.   That is correct.

8    Q.   That is the company that you are referring to.

9              Is that right?

10   A.   Correct.

11   Q.   And the scripted work that you would perform in

12   regard to that interest in Eufora appears in the back of

13   the agreement as Exhibit A.

14             Am I correct you have had a chance to look at

15   this before today.  Is that right?  And that would be this

16   portion of the Exhibit A, Page 2.

17   A.   That's correct.

18   Q.   And without having to read it all, it's basically

19   what you told the jury with regard to what you and your

20   company would perform on behalf of Eufora.

21             Is that right?

22   A.   Yes, that is what the document states.

23   Q.   Can you tell us, did you continue working for Eufora

24   or did there come a time when you no longer worked in the

25   capacity you just described?

Kennedy - Direct/Mr. LaRusso

5598

1    A.   Yes, there was.

2         There were several years that had gone on at

3    this point and Tommy stood up at my wedding and was very

4    close to me.  And there came a time when Tommy approached

5    me, and I considered him to be a very good friend at that

6    point.  And Tommy approached me and said, we need to

7    continue to expand Eufora to become more and more things.

8         There was a lot of work around patents, securing

9    ITE, expanding the platform to do more things than we had

10   originally contemplated.

11        And we had been spending quite a bit of money at

12   this point time.  I think we estimated we put about a

13   quarter million dollars worth of actual cost into the

14   development.

15   Q.   And again, I apologize.  When you say we, your

16   company?

17   A.   I apologize, yes.  C 9.  I'll catch on.  I apologize.

18        C 9 Innovations had put in approximately, we had

19   estimated about quarter of a million dollars worth of

20   sweat equity into it.  And we had anticipated, based on

21   the original conversations, that the scope was going to be

22   this large.  And as the business grew, it became

23   significantly more, as many businesses become more and

24   more.  That is not unusual.

25        And Tommy had looked at this and said we needed

5599

1   to continue to provide, develop services. And we had

2   really looked at this as kind of developing the original

3   idea.

4           And then we would be kind of sitting back and as

5   the company started to get its own traction and was able

6   to raise money and do different things, that they would be

7   able to take those activities over.

8           But I do remember very specifically the document

9   that you placed up there. It did say that we would

10  provide ongoing development for the duration of the

11  agreement.

12  Q.   And what happened to that relationship?

13  A.   Well, in a lot of business cases, you have a

14  disagreement in the way that you think things, or what

15  they were intended to be. And so Tommy looked at that and

16  said, look, it's -- it's whatever it takes to get this

17  done.

18          And we looked at it and said, I'm continuing to

19  dump more money into this without seeing a return. And I

20  believe the return was there. It was a short-term thing

21  like we originally had considered it, and we couldn't

22  continue to foot the bill to, to continue to grow.

23  Q.   What happened?

24  A.   And eventually that became the demise of C 9 because

25  we continued to have a lot of customers do the same thing

5600

1   to us.

2           So Tommy and I reached an agreement through some

3   stress, stressful conversations around what we would do.

4   I had one view.  He had a different one.

5           And we had settled on that he would bring on a

6   full-time person to build technology and we would phase

7   out over a period of time.  And for that we would

8   relinquish some stock in the company, our holdings.

9   Q.   And did you, in fact, cease your relationship with

10  Eufora at some point after that agreement?

11  A.   Well, I was involved with Eufora as a shareholder and

12  a member, as a board member from time to time.  But I --

13  C 9 Innovations was only involved for maybe another month

14  or so after that, as anything outside of those, those

15  things.  So we didn't, we no longer did any more work on a

16  daily basis for Eufora.  It moved on its own.

17  Q.   And you kind of moved onto other businesses.

18           Is that correct?

19  A.   Correct.

20  Q.   In regards to the percentage interest that you had in

21  Eufora, when you left working for Eufora, you maintained

22  that ten percent, is that correct, at that time, the time

23  you left?

24  A.   I'm sorry, could you restate that?

25  Q.   When you became a founding member, were you given a

5601

1   ten percent interest in the company?

2   A.   Correct.

3   Q.   And then at the time you left, you still had that ten

4   percent interest.

5           Is that correct?

6   A.   My memory actually is -- when you say left --

7   Q.   When you ceased doing work, C 9 ceased doing work for

8   Eufora.

9   A.   I believe that we had reached this agreement prior to

10  C 9 stopping doing work.  So I believe the total

11  disagreement -- now, it may have been a week or two on

12  either side or something like that, but it was, for the

13  most part, we had ceased doing work around the time this

14  agreement was arrived at.

15  Q.   My question may have been confusing you.  Let me ask

16  it this way.

17          Did there come a point in time when you

18  transferred any of the ten percent interest that you

19  originally got in Eufora?

20  A.   Yes.

21  Q.   Could you explain the circumstances under which you

22  relinquished the percentage interest that you had in

23  Eufora?

24  A.   So the first time that occurred was the, I believe it

25  was two percent.  I don't have the document and my memory,

5602

1    I believe it was two percent that we relinquished back to

2    the, as I recall, the Eufora group of companies and the

3    Eufora, LLC.  And we relinquished, I believe, two percent

4    and modified the agreement with a subsequent document.

5    Q.   Tell us the circumstances under which you

6    relinquished that two percent.

7    A.   That was as Tommy and I had reached that point where

8    C 9 Innovations would no longer do additional work for

9    Eufora.

10   Q.   Let me show you what has been marked for

11   identification, I think.  Take a look at C260.

12        Do you recognize that?

13   A.   Yes.  This is the document, yes.

14   Q.   What is that?

15   A.   I'm sorry.

16        This is a document where we had relinquished two

17   percent of the, of the membership interest.

18   Q.   When you say we, again, it's your company and you.

19        Is that correct?

20   A.   I apologize.  Yes, C 9 Innovations.

21   Q.   Is that your signature on there?

22   A.   Yes, it is.

23        MR. LaRUSSO:  Your Honor, may I ask that C260 be

24   received in evidence?

25        MS. KOMATIREDDY:  No objection.

5603

1    MR. HALEY:  No objection.

2    THE COURT:  C260 is in evidence.

3    MS. KOMATIREDDY:  I'm sorry, it's 266.

4    MR. LaRUSSO:  I'm sorry, it is 266.  Thank you.

5    Thank you, your Honor.  I believe it is.  It's a

6    Government Exhibit.  I think that is what happened.

7    (Defense Exhibit C266 in evidence.)

8    BY MR. LaRUSSO:

9    Q.   When you were relinquishing this interest,

10   transferring the interest, did you give it back to the

11   company or did you give it to somebody individually at

12   this point?

13   A.   At this point I was doing it for the benefit of the

14   company.  The company needed -- the discussion that Tommy

15   and I had or Mr. Constantine and I had was that he would

16   need to hire someone full time.  There would need to be

17   more dollars in the company for him to go and do that.  So

18   there should be a relinquishing of, you know, actually

19   relinquish some of my stock in order to help fund that

20   through one man or another.  So that was in order to help

21   the company in whatever way that made sense.  But it was

22   to help the company in its fundraising or sell more stock

23   or any way that Mr. Constantine as a COO or managing

24   member felt appropriate.

25   Q.   This is the Exhibit C266.  I was going to say 260

5604

1   again, but that is a 6.  Okay.

2           This shows that you -- it's signed by yourself,

3   C 9 Consulting, transfers in to A Z Eufora Partners I.  Do

4   you see that?

5           Do you recall who they were at the time that you

6   relinquished your two percent interest?

7   A.   I don't know if that was a -- I don't know.  That may

8   have been a holding company.  I can't speculate.  I don't

9   remember.

10  Q.   But this is the document that relinquished your two

11  percent interest from the ten percent.  That is the next

12  to the last line, correct?

13  A.   Correct.

14  Q.   Did there come a time when you again relinquished a

15  portion of your percentage interest in Eufora?

16  A.   Yes.

17  Q.   Could you tell us the circumstances behind that,

18  please.

19  A.   It was some time later.  Tommy and I had gone from

20  being, you know, what I would consider close friends to

21  being acquaintances, where I once in a while would see him

22  at, you know, restaurants or something like that.  We

23  would say hello, but we didn't ever go do things together.

24  There was a lot of tension around.

25          Some things had happened and I knew Tommy was

5605

1    very focused on building Eufora and, you know, continued

2    to get more and more activity.  So Tommy reached out to me

3    at one point and said that the company had -- there was a

4    lot of struggles going on.  Tommy had been working there

5    for several years putting a lot of money into the business

6    and came to me and said, Look, I really need to change

7    your position once again.

8            And at this point, C 9 Innovations had

9    effectively stopped operating.  I lost about two

10   and-a-half million dollars personally in the venture.  And

11   I was building other businesses that were doing very well

12   at that point in time.  And I had frankly kind of pushed

13   Eufora out of my mind on an active basis.

14           And so he came to me and said he, you know, we

15   need to do something.  There was a lot of money going to

16   Eufora.  He hadn't been getting, you know, any money a

17   reasonable or paycheck, I don't remember which one.  But I

18   remember he had been working, you know, quite a bit making

19   this happen.

20           So he came to me and said, look, we had major

21   investments -- I'm sorry, we had major investment

22   technology and lots of patent expenses and we have to do

23   something different here.  And I was pretty frustrated at

24   that point in time.  He came back and said, I need to have

25   you transfer some additional stock or get some stock or

5606

1  something.  I don't remember exactly what it was.  And I

2  had felt like I had just, you know, kind of had enough.  I

3  was pretty frustrated.

4         I was focusing on other things, as I said.  We

5  had, you know, eight different businesses we helped

6  incubate, and C 9.  And every one of them had effectively

7  not made a positive investment.  So it was just one more

8  thing to kind of shut down in my mind.  And so I ended up

9  signing or gifting another percentage.  I don't remember

10 if it was six percent or -- I haven't seen that document

11 in a little while, but it was maybe six percent of the

12 last four, something like that.  I'm sure you have a

13 document to show me, so I'll agree with it if it was one

14 of those numbers.

15        But to Constantine Management Group, I believe

16 is what it was, or Management Group, LLC.  It was Tommy.

17 Q.    That was Tommy's personal company.

18        Is that correct?

19 A.    I believe it was his old company or his, it was, it

20 was solely owned by Tommy or Tommy's trusts or --

21 unfortunately, I don't have visibility into his ownership

22 structure of something.  But certainly when I see

23 Constantine Management Group, I don't think Eufora, I

24 think Constantine.

25 Q.    You transferred the percentage interest into

5607

1   Mr. Constantine personally?

2   A.    Correct.

3         But it was, a lot of that was in -- after the

4   company, things were happening.  It was his money going

5   back into Eufora and salaries and other things.  And I

6   just -- when we're doing well in other places, sometimes

7   you want the problems out of your hair and you don't

8   really, you know, think about the results of that.  And I

9   just didn't care at that point.

10  Q.    You gave it to Mr. Constantine or a company that was

11  affiliated with him.

12        Is that correct?

13  A.    I gave it to Tommy.  In my mind I was giving it to

14  Tommy.  I don't know the structure of that.

15  Q.    Let me show you what is in evidence as -- actually,

16  I'll put it on the screen so the jurors can see it.

17        Is this the transfer form that you signed giving

18  Constantine Management Group a four percent interest that

19  you had remaining of the eight in Eufora.

20        Is that correct?

21  A.    That is more than I thought.  So yes, four percent,

22  yes, sir.

23  Q.    And this was done on February 5th of 2008.

24        Is that correct?

25  A.    Correct.

5608

1   Q.   Do you have a recollection of signing this agreement

2   and where you signed it?

3   A.   I do, actually.

4           I was pretty frustrated and I, we agreed to a

5   phone call, I believe the results of some e-mails back and

6   forth.  I don't remember exactly how we were

7   communicating.  But I went to the office specifically when

8   Tommy was there -- I'm sorry, specifically when Tommy

9   wasn't there.

10  Q.   Why was that?

11  A.   Because I was frustrated.  It was just another

12  business venture that I looked at and, you know, we

13  weren't going to see the upside of it.  And I don't do

14  well with conflict, so I just felt like I, you know, I

15  kind of called up and found out, Hey, is Tommy there?

16          And, No, he is not.

17          Great.

18          And I popped in.  My office was right down the

19  street.  So I popped in and signed it.  And I believe it

20  was either Mia Edrozo or Mark D'Ambrosio that was there.

21  It was at the front desk.  And I asked Mia or Mark to

22  bring it up to me.  And those were the only two people I

23  really knew at the business.  And Mia worked for me for

24  years and years, and I don't know him that well.  But I

25  believe it was one of them.

Kennedy - Direct/Mr. LaRusso

5609

1    MR. LaRUSSO:  Your Honor, I notice it's

2    one o'clock.  I do have about another 15 to 20 minutes

3    left.

4    THE COURT:  Okay.  So we'll take the lunch

5    break.  I know we said we'd try to get you out of here by

6    lunch.  But keep in mind I have a perfect record of being

7    wrong.  But some day you'll get out of here before the end

8    of day.

9    So we'll meet again at two o'clock.

10    And don't discuss the case.

11    Have a good lunch.

12    (The jury left the courtroom.)

13    THE COURT:  Be seated.

14    This your last witness?

15    MR. LaRUSSO:  It is, your Honor.

16    THE COURT:  Is the Government going to call a

17    rebuttal witness or not?

18    MR. MISKIEWICZ:  We have Mr. Crisalli available.

19    I need to consult with him over the lunch break.  If we

20    do, it will only be for about five minutes tops.  And

21    that's it.

22    MR. LaRUSSO:  There will be no cross from me,

23    your Honor, on that witness.

24    THE COURT:  All right.  Have a good lunch.

25    (A luncheon recess was taken at 12:59 p.m.)

5610

```
 1              A F T E R N O O N   S E S S I O N

 2                         2:10 pm

 3

 4              (The following ensued in the absence of the

 5    jury.)

 6              THE COURT:  Mr. Semple is in the back.  I don't

 7    know do you have any objection.

 8              MR. LaRUSSO:  You asked him a question.  He told

 9    me to -- here he is.

10              THE COURT:  I should note Mr. D'Ambrosio came in

11    yesterday and sat in the back for a while.

12              MR. SEMPLE:  I wanted to tell you I ordered the

13    documents from my office.  It is going to Andrew's phone.

14    And the document you requested, the redacted document.  So

15    it should be here.

16              I will be here to answer any questions if you

17    need me.  But if I cannot sit back here, that's fine.

18              THE COURT:  Any objection?

19              MS. KOMATIREDDY:  No, I don't.

20              THE COURT:  I didn't know if you knew it but

21    Mr. D'Ambrosio was sitting back there.

22              MR. LaRUSSO:  No.

23              I actually don't normally let witnesses sit in

24    the courtroom but I did not notice he was here.

25              THE COURT:  As long as there is no belief that
```

Kennedy - Direct/Mr. LaRusso

5611

1    they are going to be called as a witness I don't mine.

2              You don't have any objection?

3              MR. HALEY:  No, sir.

4              MR. LaRUSSO:  Would you like me to get the

5    witness in?

6              THE COURT:  Yes.

7              And thank you, Mr. Semple.

8              Let's bring in the jury.

9              (The following ensued in the presence of the

10   jury.)

11

12   **WILLIAM DANIEL KENNEDY**

13         called by the Defense, having been previously

14         duly sworn/affirmed, continued testifying as

15         follows:

16

17   DIRECT EXAMINATION (Continued)

18   BY MR. LaRUSSO:

19   Q.   Mr. Kennedy, I'm going to show you what has been

20   received in evidence, it is actually marked C271 and 4780

21   in evidence.  It is an action by written consent of the

22   members of Eufora LLC on July 12, 2010.  It takes about

23   removal and replacement of managers on the company's board

24   of managers.

25              And on third page is a signature of a person by

5612

1    the name of William Daniel Kennedy.

2            Do you recognize that signature?

3    A.   Yes.  That's mine.

4    Q.   This is a redacted document.

5            Let me just show you what has been marked for

6    identification as C271A.

7            Is this the complete document that you signed,

8    just for identification purposes?

9    A.   From my memory, it appears to be.  Yes.

10   Q.   Okay.  The document, itself, talks about the removal

11   of two individuals by the name of Tim Gaarn and Mr. CR

12   Gentry.

13           Could you just tell us the background to your

14   signing this document dealing the removal of those two

15   gentlemen.

16   A.   Sure.  Tommy had approached me at some point and --

17           MR. LaRUSSO:  Your Honor, Mr. Haley just stood

18   up.  And we may want to just talk about this at sidebar

19   quickly.

20           I can kind of anticipate what he is going to

21   say, Judge.  May we?

22           THE COURT:  Yes.

23           MR. HALEY:  Your Honor may we have a side bar?

24           (Continued on the following page.)

25

Kennedy - Direct/Mr. LaRusso

5613

1          (Discussion at sidebar ensued as follows.)

2          THE COURT: Let me ask, have you ever discussed

3   this witness?

4          MR. LaRUSSO: That is my problem. I know there

5   has been a rushed preparation and I'm wondering if he

6   might be saying something that might not be proper.

7          So I'm going to lead him with did there come a

8   point in time when you were asked to vote on this? Yes.

9          And did you vote on it? Period. Move on.

10          MR. HALEY: Background is a pretty broad

11  question.

12          MR. LaRUSSO: I'm glad you did what you did.

13  Thank you.

14          (Discussion at side bar was concluded.)

15          (Continued on the following page.)

16

17

18

19

20

21

22

23

24

25

Kennedy - Direct/Mr. LaRusso

5614

1    BY MR. LaRUSSO:

2    Q.    Mr. Kennedy, I'm going to ask you a leading question

3    here.

4          There came a point in time you were asked as a

5    shareholder of Eufora to sign a resolution removing two

6    individuals.  Is that correct?

7    A.    That's correct.

8    Q.    And your signature on that document was your

9    acknowledgement approving the remove of these two

10   individuals.  Is that correct?

11   A.    That's correct.

12   Q.    Okay.

13   A.    And the other actions taken in that document.

14   Q.    Lastly.  Did there come a time when you were asked to

15   approve expenditures by Eufora for a power of attorney in

16   a lawsuit involving Mr. Constantine?

17   A.    There was a time when there was a potential lawsuit

18   that -- or from the best of my recollection they had

19   called me, I'm fairly certain on a phone call, and told me

20   that either he is being sued or threatened to be sued or

21   something was happening from that perspective.

22          And typically in those types of suits you see

23   somebody go after everybody's holdings, so they have

24   personal things and business things and everything else.

25          So there was an expenditure that was requested

Kennedy - Direct/Mr. LaRusso

5615

1    to defend, or I shouldn't say defend prepare I believe or

2    it s may have been defend, but I do believe it was prepare

3    for a potential lawsuit from this.

4              And as a preventative measure you can do a

5    little work and spend a little money and be well prepared

6    or you can wait for something bad to happen and spend a

7    lot more money.  So the feeling of the board was and the

8    representation of the CEO was to, or the largest

9    shareholder was that it was to prepared for a potential

10   lawsuit.

11   Q.    And did you approve that?

12   A.    Yes, sir.

13   Q.    Do you remember how much was voted for and what was

14   the expense?

15   A.    I believe it was a pretty nominal number.  It was, I

16   don't remember, 15, 10, 20, in that range.

17   Q.    That is your best recollection at this point.  Is

18   that correct?

19   A.    Yes.

20   Q.    Do you remember the name the plaintiff in the case?

21   A.    I do not.

22   Q.    Do you recall the nature of the suit?

23   A.    I don't.

24   Q.    And do you remember the name of the law firm?

25              Does Rodriguez mean anything to you?

5616

1   A.   I'm guessing that was the law firm but I would be

2   guessing.  So I would have to look at a document if there

3   was a document.  I just don't remember.

4            MR. LaRUSSO:  I have no further questions, your

5   Honor.

6            THE COURT:  Okay.  Cross-examination.

7            MS. KOMATIREDDY:  We have no cross, your Honor.

8            MR. HALEY:  No questions, judge.

9            THE COURT:  Okay.  You may step down, sir.

10   Thank you.

11            (The witness was excused.)

12            THE COURT:  Mr. LaRusso?

13            MR. LaRUSSO:  Your Honor, I have just one other

14   item.  I have a certification but I understand the

15   government is going to object to it.  It is a

16   certification of business records.  I'm asking that it be

17   received as a certification.

18            It contains both documents and emails.  And the

19   individual who sent it to me sent it as a complete package

20   and indicated they were all records maintained by his

21   business.

22            That is my last offer of proof.  Subject to

23   that, your Honor, I have no further questions and

24   Mr. Constantine rests.

25            THE COURT:  Do we have a discussion other than

5617

1    about those documents?

2              MS. KOMATIREDDY:  Yes, your Honor.  I just ask

3    the court inspect them.  I think the objection will be

4    clear.

5              THE COURT:  Why don't you come up.

6              (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5618

1        (Discussion at sidebar ensued as follows.)

2        MS. KOMATIREDDY:  Our objection is to the

3   business record.  We are fine with, I think the

4   certification is okay.  It is the name, bill of sale.  It

5   appears to be certified bill of sale, Tommy Constantine.

6   We stipulate to its admission.  But we object to the email

7   chain and the rest of the stuff.  So this is actually

8   emails are not a certified business record.

9        MR. LaRUSSO:  To be honest with you, the only

10  thing I was going to include is the emails.  The emails

11  were included by the person who signed off on the

12  custodial authorization, meant them as part of their

13  records reflecting the transactions that have taken place

14  between the parties.  Those deal with the fact that they

15  are keeping the transaction open and it remains open

16  today.

17        MS. KOMATIREDDY:  2014 emails.  They got them

18  from this company.  The issue is they are not business

19  records, therefore they are hearsay.  It has to do with

20  the Falcon 10 and whose name it is and there is a lot of

21  confusion over that.  The initial individual as a witness.

22  We would want the opportunity to cross-examine this

23  witness.

24        This is basically one excerpt of a whole story.

25  It is not clearly what the full story is.

5619

1      MR. LaRUSSO:  But these documents, judge, you

2  remember Mr. Semple testified in regards to the Falcon 10,

3  the sale never took place and that it was supposed to be

4  transferred to another company.  This is the escrow

5  company and all this shows is that in fact it was kept

6  open.  There was no decision.

7      That is all.  No other relevancy to the case

8  other than confirms what Mr. Semple said with regards to

9  the client.

10     THE COURT:  I don't think you can just do a

11  certification and say we found all these emails on our

12  server and they are business records.  All sorts of

13  information is contained in these emails that would be

14  objectionable.

15     I'm not sure why you are feel the need to do

16  that.  He testified to that.  He testified to that.  I

17  don't think there has been any contrary testimony.  The

18  government hasn't put any in.

19     MS. KOMATIREDDY:  It's a contrary approach.

20     MR. LaRUSSO:  Mr. Constantine is doing the, he

21  is basically backing up the fact that Mr. Constantine was

22  the one responsible making sure that the asset wasn't

23  turned over because he was concerned about the investment

24  that was operationally made into AZ Falcon.

25     THE COURT:  Thee are the emails for 2014.

5620

1      MR. LaRUSSO:  That is the point.  Even at this

2  late date it has not been transferred.

3      I have to be honest with you.  I looked at case

4  law to see when and if emails can become business records.

5  I have not found one.

6      To be very honest, I'm hoping at some point in

7  time people realize that lots of business is conducted by

8  email and at some point I hope legally will be considered

9  part of the business records.  That was what I was looking

10  to do here.

11      THE COURT:  We can make it easier, I don't think

12  there was an objection, I don't remember whether there was

13  but what is going on in 2013 or 2014 with respect to this

14  airplane is so far afield with what is rally relevant to

15  this case.

16      So I am sustaining the objection on relevancy

17  grounds.  I understand why it is important as to what

18  Mr. Constantine is the trying to do now with respect to

19  the plane.

20      MR. LaRUSSO:  The only thing reason, Judge, the

21  government makes a point of the fact that Mr. Constantine

22  is trying to take the plane away and put it into a company

23  with Mr. Gonchar with business people and the point is it

24  really has never been done.

25      THE COURT:  That came out from Mr. Semple, any

5621

1    way.

2              MR. LaRUSSO:  It has.

3              (Discussion at sidebar was concluded.)

4              (Continued on the following page.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Crisalli - Direct/Ms. Komatireddy

5622

1          (The following ensued in open court.)

2          THE COURT:  Members of the jury.  I have

3    sustained the objection.

4          So what we did, Mr. Semple is going to provide,

5    he reached back to his office and we are expecting that

6    page to be added to the record so that we will have it for

7    purposes of their summation.

8          With that understanding, then, does Mr.

9    Constantine rest?

10         MR. LaRUSSO:  He does, your Honor.

11         THE COURT:  Does the government have any

12   rebuttal case.

13         MS. KOMATIREDDY:  Very briefly we recall Special

14   Agent Robert Crisalli.

15

16   **ROBERT CRISALLI**

17         called by the Government, having been first duly

18         sworn/affirmed, was examined and testified as

19         follows:

20

21   DIRECT EXAMINATION

22   BY MS. KOMATIREDDY:

23   Q.   Agent, are you still a special agent with the card

24   team of the FBI?

25   A.   As far as I know.

Crisalli - Direct/Ms. Komatireddy

5623

1    Q.    I hand you Government Exhibit 4500, it is in

2    evidence.  Have you reviewed that disk?

3    A.    Yes, I have.

4    Q.    What is on that disk?

5    A.    That disk contains a video file -- I'm sorry, an

6    audio fail.

7    Q.    What the type of audio file?

8    A.    It is an iPhone audio file.

9    Q.    How can you tell?

10   A.    The fact that I got it off of an iPhone and it has an

11   M4V extension.

12   Q.    That audio file, aside from the contents of the file

13   is there any other information about the file on that

14   pertaining to it?

15   A.    There is some meta data associated with that file and

16   a creation date and a modification date.

17   Q.    Can you define what is meta data?

18   A.    Met data is data about data.  So it is information

19   that describes the data which it is attached to.

20   Q.    You said there is a creation date and a modification

21   date.

22           What was the creation date of that file?

23   A.    August 2, 2010.

24   Q.    And was there a time stamp as well?

25   A.    9:46.

Crisalli - Direct/Ms. Komatireddy

5624

1    Q.   Did you review that file this morning?

2    A.   I did, yes.

3    Q.   And what is the significance of the creation date?

4    A.   The creation date and time is the date and time that

5    that particular file was created on the file system.

6    Q.   In this case what is the file system?

7    A.   The iPhone operating system.

8    Q.   So date and time you just said August 2, 2010,

9    9-something pm.  That is the, what was it?

10   A.   9:46.

11   Q.   9:46 pm.  That is the date the file was created on

12   the iPhone?

13   A.   That is right.

14   Q.   You said there was also a modification date?

15   A.   Yes.

16   Q.   What is the significance of the modification date?

17   A.   The modification date tracks the last time that file

18   was modified and saved.

19   Q.   What was the modification date of that file?

20   A.   That was also August 2, 2010, at 9:46.

21   Q.   So the file had the same creation date and

22   modification date.

23            What did that mean about when that file was

24   recorded?

25   A.   That means that that file was created and saved on

Crisalli - Cross/Mr. Haley

5625

1   August 2, 2010, at 9:46.

2          MS. KOMATIREDDY:  No further questions.

3

4   CROSS-EXAMINATION

5   BY MR. HALEY:

6   Q.   We have met before, have we?

7   A.   We have.

8   Q.   For the record, I still represent Phil Kenner.

9   A.   Okay.

10  Q.   Your testimony is that the file was created on August

11  2, 9:46 pm?

12  A.   Correct.

13  Q.   And your testimony is that at some point it was then

14  modified that same moment?  Is that your testimony?

15  A.   No.  When a file is created and saved, the access

16  time -- I'm sorry, the modified time and the creation time

17  are exactly the same.

18  Q.   You have listened to an approximately 26-minute

19  portion of the tape, have you?

20  A.   I have not listened to the entire thing.  I have

21  listened to portions of it.

22          MR. HALEY:  Thank you.

23          THE WITNESS:  You are welcome.

24          MR. LaRUSSO:  No questions, your Honor.

25          THE COURT:  Anything else?

5626

1           MS. KOMATIREDDY:  No, your Honor.  Thank you.

2           THE COURT:  You can step down, sir.  Thank you.

3           MS. KOMATIREDDY:  The government rests.

4           THE COURT:  That completes the presentation of

5     evidence for the case.

6           As I told you yesterday, I need to go over my

7     instructions with the lawyers so I'm going to send you

8     home.  You will have the government's summation and

9     Mr. Haley's summation tomorrow and then Mr. LaRusso's

10    summation and the government's rebuttal and my

11    instructions on the law Monday.

12          I kid around about my estimates being wrong, but

13    again I want to thank you.  You have been a phenomenally

14    patient and understanding jury.  And I really should be

15    thanking you every day.

16          I do want you to know that I understand how much

17    time you have put into the case and I do appreciate it.

18          So that is the schedule we will follow tomorrow.

19          Don't read or listen to anything regarding the

20    case.  Don't discuss the case.

21          I will see you tomorrow morning at 9:30.

22          (The following ensued in the absence of the jury

23    at 2:35 pm.)

24          THE COURT:  Everyone can be seated.

25          Mr. LaRusso, as you know, my practice is to

5627

1    allocute the defendant with regard to his decision not the

2    testify.

3              Can I do that now.

4              MR. LaRUSSO:  Please.

5              THE COURT:  Mr. Constantine, I want to make sure

6    that you understand that the decision of whether or not a

7    defendant testifies in a criminal case is up to the

8    defendant.  Obviously, you can get recommendations and

9    advice from a lawyer with respect to whether or not to do

10   that, but the ultimate decision as to whether or not a

11   defendant testifies does not rest with the lawyer, it

12   rests with the defendant.

13             And I just want to confirm that you discussed

14   your right to testify with Mr. LaRusso.  Have you done

15   that?

16             DEFENDANT CONSTANTINE:  Yes.

17             THE COURT:  Is it your decision to not testify?

18             DEFENDANT CONSTANTINE:  Yes, your Honor.

19             THE COURT:  Thank you.

20             DEFENDANT CONSTANTINE:  Thank you.

21             THE COURT:  So do you want to do the Rule 29

22   motions?

23             MR. HALEY:  I will defer to Mr. LaRusso.

24             THE COURT:  Again you need to state the grounds

25   so that they are preserved but I will let you follow up

5628

1    with any evidentiary support, case support.  If there is a

2    favorable verdict for the government.  I will set a

3    briefing schedule for you to renew your motions.

4           MR. LaRUSSO:  Yes, sir.  Thank you, your Honor,

5    for allowing that.

6           The first application I'm going to make is to

7    dismiss Counts Two, Three, and Four.

8           As the court knows, that is the substantive wire

9    fraud counts regarding the $700,000 fraud in regards to

10   the transfer of stocks.  Sale of stock by Mr. Gaarn.  It

11   simply being alleged there is no evidence in the record to

12   sustain that Mr. Constantine was in any way involved in

13   those transactions from the beginning until the end.

14          There are other pieces of evidence that

15   corroborate our position, but basically there is lack of

16   evidence to support a finding that Mr. Constantine in any

17   way participated.  And as a result, those substantive

18   counts should be dismissed.

19          Of course, Judge, there is factual basis for

20   that.  I can go over Mr. Gaarn's testimony.  I can go over

21   some of the email traffic that corresponds to it to show

22   Mr. Constantine was not involved.  But the court is very

23   familiar with it and we will do that at a subsequent time.

24          We are also moving to dismiss Counts Four and

25   Five.  As the court knows, the indictment alleges a fraud

5629

1    to divert money to personal use.  And of course the idea,

2    the second part of it is that the defendant is supposedly

3    disavowing Mr. Privitello's interest in Eufora.

4           I think the evidence again is going to support

5    our position that there was actually no interest ever

6    created by the monies that were invested, so therefore to

7    claim that it was disavowed, it was disavowed, but there

8    is nothing illegal about his actions because they were

9    never approved.  In fact the record is uncontradicted that

10   the board of directors never approved it.  And therefore

11   it never became Mr. Privitello's standpoint in the

12   company.

13          In regard to diverting of the monies, I rest on

14   the record in regards to the fact it is clear what

15   happened here.  The hostile takeover, no request for the

16   money back and Mr. Constantine tried to offer it back.

17   And we suggest that the record doesn't support the two

18   counts in regards to Mr. Privitello.

19          And again, Judge I can go through the facts of

20   the diversion, the 150,000 and 50,000.  The record will

21   speak for itself.  It doesn't support a finding at all.

22          The last part, Judge, is, I hope I don't confuse

23   the court.  But I am looking at this particular case as

24   either no conspiracy or, if anything, if you look at the

25   facts in favor of the government there is a series of

5630

1    multiple conspiracies in this case.  And I'm talking about

2    Hawaii IV and Global Settlement Fund.

3         You look at Hawaii, and again I'm only going to

4    briefly outline it for the court, so the court understands

5    it I hope, you have the Northern Trust which there is no

6    evidence that Mr. Constantine had anything to do with.

7         You have the Centrum loan which I see there is

8    no evidence that Mr. Constantine knew that there was even

9    a loan and any possibility of a fraud existing.

10         The Grdina and Lehman Brothers loan, yes, the

11    government may indicate there was an ongoing fraud between

12    the two of them to take the money, but as read it, it is

13    basically a business transaction.  Mr. Grdina's claim that

14    Mr. Constantine didn't invest his money is a civil remedy,

15    not a criminal remedy.

16         With regard to the Lehman loan, just a repayment

17    of the monies to him for work that was done.

18         And the last one is the $2 million that were

19    provided, given to my client as a result of consulting

20    agreements.

21         I look at the Hawaii thing and I see a mixed bag

22    of separate conspiracies there.  And the government chose

23    to bring this case the way they did and it is my belief

24    that when you look at the facts in regards to those

25    aspects of the Hawaii conspiracy, some of them don't

5631

1   support a conspiracy, some may. And I think at this point

2   in time, because of the way the government decided to

3   charge it, they have taken it upon themselves, by going to

4   trial with this, I think under the law a dismissal may be

5   warranted under those circumstances.

6        Eufora very simply thing, Judge, again, three

7   aspects. The $700,000 Gaarn-Gentry transaction, the

8   $725,000 that Mr. Constantine is alleged to have taken.

9   And then there is the Privitello II. Again, I suggest,

10  Judge, my client is not involved with the 700. The 725,

11  the evidence is clear that he had an authorization from

12  the individuals whose stocks it was to sell them

13  personally. And Privitello we have already argued there

14  is no facts to support it.

15       The Global Settlement Fund I think is a possible

16  issue in regards to the way the court make look at it,

17  though I think the evidence is pretty strong there was no

18  conspiracy between Mr. Kenner and Mr. Gaarn in regards to

19  it. As a matter of fact he took opposite position very

20  publicly in regards to it.

21       The last part of my argument, judge, is that

22  when you take a look at this --

23       THE COURT: You said Mr. Gaarn. You meant

24  Mr. Kenner.

25       MR. LaRUSSO: I meant Mr. Kenner. I apologize,

5632

1    your Honor.  I did mean Mr. Kenner.

2           So when you take a look at this, Judge, you

3    don't have a Eufora conspiracy.  You don't have a Global

4    Settlement conspiracy.  The best you may have is a

5    Hawaiian conspiracy.  And quite candidly with regard to my

6    client that ended around 2006.  And if the jurors find

7    there is no Eufora conspiracy, there is no Global

8    Settlement Fund conspiracy, even if they do find this

9    Hawaiian conspiracy, that is probably not within the

10   statute of limitations.  More importantly, there is no

11   venue for the Hawaiian conspiracy whatsoever.

12          So for all those reasons, judge, I'm moving to

13   dismiss all counts in the indictment against my client.

14   And of course the money laundering, Judge, would be

15   because of my previous argument.

16          THE COURT:  Thank you.

17          Mr. Haley?

18          MR. HALEY:  Yes, sir.

19          MR. LaRUSSO:  Judge, may I correct that.  I

20   think I said Privitello.  I said Four and Five.  It is

21   actually Five and Six.

22          MR. HALEY:  As your Honor is aware, there is an

23   indictment that preceded the superseding indictment.

24          The government characterizes the superseding

25   indictment as being a streamlined indictment.  But in so

5633

1   doing, your Honor, the government has conflated, from our

2   perspective, various multiple conspiracies.  And as

3   relates to my understanding of the superseding indictment,

4   I intend to address our Rule 29 application with what I

5   hope is my correct understanding of the current theory of

6   the prosecution.

7            Specifically, judge, we have of course Count One

8   that alleges conspiracy to commit wire fraud.  The count

9   speaks for itself in terms of tracking the statutory

10  language.  As relate to Eufora investments, we have

11  various paragraphs that identify the alleged scheme to

12  defraud, paragraph 12, paragraph 13.

13           Paragraph 14, your Honor, is my focus at this

14  point in time because paragraph 14 reads:

15           *"It was further part of the scheme to defraud*

16  *that between November of 2009 and December 2009 the*

17  *defendants Kenner and Constantine convinced Privitello to*

18  *invest in Eufora in exchange for an ownership interest in*

19  *the company.*

20           *"The defendant Constantine then unlawfully*

21  *diverted certain money for unauthorized purposes,*

22  *including for his personal benefit and disavowed*

23  *Privitello's ownership interest in Eufora."*

24           There has been no evidence, your Honor,

25  whatsoever, that Phil Kenner had any role in any respect

5634

1   with reference to the decisions made by Mr. Privitello to

2   convey funds to Tommy Constantine in return for what was

3   then to be an ownership interest that he would acquire in

4   Eufora based upon what the government alleges are

5   representations made by one, and one person alone, and

6   that is Tommy Constantine.

7            As a matter of fact, without repeating what the

8   courts is well aware of in connection with the record,

9   when given the opportunity to bring a civil suit that

10  relates precisely to that event, Mr. Privitello and the

11  others see fit to sue only Tommy Constantine, knowing,

12  your Honor, that Phil Kenner had no role whatsoever in the

13  process by which it is decided, the same as Privitello

14  decided to invest in Eufora, and ultimately by his claim

15  was defrauded when Mr. Constantine did not provide him

16  with stock ownership interest that he had promised to

17  Mr. Privitello.

18           So it relates to Count One and Two insofar as

19  relates to Phil Kenner is responsible for either

20  substantive wire fraud or conspiracy to commit wire fraud

21  as relates to the Privitello allegations under the Eufora

22  investment description in Count 14 of the indictment.  I

23  respectfully submit to this court that Rule 29 would

24  mandate the dismissal as relates to that aspect of the

25  allegations in insofar as Phil Kenner is concerned.

5635

1      Your Honor, I also would point out that Count

2  Two of the indictment reads as follows.

3      Count Two, February 12, 2009, reads.

4      *"$30,000 wire transfer from coconspirators one*

5  *account at Wachovia Bank in Gloucester, New Jersey, to*

6  *John Doe's commercial commerce bank account in Eastern*

7  *District of New York."*

8      As relates to that particular count, we know,

9  based upon the government's representations to the court,

10  that coconspirator for One is Timothy Gaarn.

11      Now, there has been no evidence that Timothy

12  Gaarn is a coconspirator in any respect whatsoever.  As a

13  matter of fact, the testimony has been quite the opposite.

14  His testimony was, under oath, I conspired at no time to

15  commit any crime with Phil Kenner.

16      Not a scintilla of evidence that was produced in

17  this the court whereby, as is often the case and as I

18  submit must be the case, if you are going to allege

19  someone is a coconspirator, there should be testimony from

20  the coconspirator that there comes a point in time that I

21  have a meeting of the mine with, in this case Phil Kenner,

22  and we agreed to pursue some of illegal goal, and then

23  there is some overt act in furtherance of that goal.

24      Tim Gaarn again offered no testimony in that

25  regard whatsoever.  And there was not even, not additional

5636

1    evidence that would reflect that he was in some way a

2    coconspirator given his declaration under oath that there

3    was never a meeting of the minds between the two of them.

4            So as relates to that particular count, I would

5    submit that that is subject or ought to be dismissed by

6    way of Rule 29.

7            THE COURT:  Count Two is a substantive count.

8            MR. HALEY:  Excuse me, judge.  You are correct.

9    I characterized it incorrect.  It is a substantive count.

10           THE COURT:  So I don't understand why, even if

11   Mr. Gaarn was not, and I know that it does not allege him,

12   but it is not a requirement of the elements.  In other

13   words, if Mr. Kenner did that alone, he could still be

14   guilty of Count Two even if Mr. Gaarn was not a

15   coconspirator.

16           MR. HALEY:  Your Honor, point well taken.  And

17   it is a substantive count.  It is the manner in which the

18   government chooses to characterize that substantive count;

19   with it specifically alleged that there os a coconspirator

20   with reference to indeed Timothy Gaarn as being that

21   coconspirator.

22           So my point is that to the extent that they

23   allege in a substantive count that the underlying

24   substantive conduct rose from a conspiracy and that

25   conspiracy does not exist by way of the evidence presented

5637

1    to this court and jury, though a novel argument, judge, I

2    submit that in so doing, that count as it stands given the

3    precise theory and language as utilized by the indictment

4    ought not to stand by way of Rule 29.

5              Thank you, judge.

6              THE COURT:  Okay.

7              MS. KOMATIREDDY:  Would you like to hear

8    argument now or later?

9              THE COURT:  Again, I'm going to have post-trial

10   briefing so it is not necessary but if you want to briefly

11   respond.  Actually I did put a venue instruction in the

12   proposed charge and I wanted to confirm with the defense

13   that they weren't contesting venue.

14             What is your response?

15             MS. KOMATIREDDY:  Your Honor, I was only going

16   to, with respect to the argument on the substantive basis

17   I will prefer to brief it.  But one thing I just want to

18   note very briefly is with respect to Count Two.

19             When Mr. Haley was talking about the specific

20   language used in the allegation, I believe he was quoting

21   from the previous indictment.  The current indictment

22   reads, the description of the wire transmission is $30,000

23   wire transfer from an account at Wachovia Bank in

24   Gloucester, New Jersey, to John Doe 10 and John Kaiser's

25   TD Bank account in Eastern District, New York.

5638

1        It doesn't include a reference that was read.

2        MR. HALEY:  The government is correct.  There

3   have been so many.  The government is correct and I

4   apologize for the misstatement of the record.  It does not

5   in the current indictment identify Mr. Gaarn as a

6   coconspirator.

7        THE COURT:  Okay.  To go back.  Again, and this

8   is something that I was hearing for the first time with

9   respect to venue.  And I know there are three objectives

10  to the conspiracy but Mr. LaRusso's argument is that there

11  was no venue as to the, quote-unquote, Hawaii portion of

12  the conspiracy.

13        What is the government's response to that.

14  Assuming there was no Eufora conspiracy and assuming there

15  was no GSF conspiracy, what is the venue with respect to

16  the Hawaii conspiracy?

17        MS. KOMATIREDDY:  Yes, your Honor.

18        So with respect to Hawaii, there are first of

19  all several investors who are based in the Eastern

20  District of New York including Mr. John Kaiser and Mrs.

21  Ethel Kaiser.  In addition Mr. Peca and Mrs. Peca also

22  resided in Long Island during the years in which they were

23  involved in the Hawaii investments.

24        As you know, part of the money was also diverted

25  to Sag Harbor.  I realize they were separate counts but

5639

1  they from the Hawaii lines of credit so those proceeds to

2  this district and the victims are in this district.

3           MR. LaRUSSO:  Your Honor, if I remember it

4  correctly, I don't know of any wires in any of the

5  Hawaiian fraud part of the conspiracy.  I don't know if

6  there are any wires.  They may have been there, Judge, but

7  I don't know of any contact here with regards to the crime

8  being committed.

9           And I don't know if Mr. Peca was living here at

10 the time and participated in it I don't know if a record

11 exists to that extent.  I will have to look at it more

12 closely.

13          THE COURT:  Again, I just wanted it briefly.

14 This is obviously a complicated case.

15          MR. LaRUSSO:  It is, your Honor.

16          THE COURT:  For purposes of venue and for

17 purposes of a wire fraud conspiracy, it is not my

18 understanding of the law that that would be true of a

19 substantive wire fraud count, that you have to have venue

20 based upon that.

21          But if it is a conspiracy count, if someone did

22 something in furtherance of the conspiracy in the

23 district, even if it is not, wouldn't independently

24 satisfy an interstate wire conspiracy --

25          MR. LaRUSSO:  I agree.  We had this in the other

5640

1  case, if you remember, judge, but I don't know of any

2  facts that establish anything in furtherance of the

3  conspiracy that the record shows occurred in the Eastern

4  District. That is my position.

5  THE COURT: Okay. Again, if you want to have an

6  venue instruction, I am happy to put that in if you want

7  to make that argument to the jury as well. But I was

8  going to ask that both of you, whether you want venue

9  instructions or not, if either of you want it I will give

10  it. If you want to, think about that.

11  MR. LaRUSSO: I will think about it and I will

12  probably make my decision later, after we take the

13  requests to charge.

14  THE COURT: The other one is, again, I heard

15  multiple conspiracy arguments made. If you want to

16  request a multiple conspiracy instruction to the jury, I

17  will consider putting that in as well.

18  MR. LaRUSSO: I may do that, judge. But again,

19  my final decision will be made tonight and I will let the

20  court know.

21  THE COURT: Do you want to take a short break --

22  I'm sorry. Mr. Haley.

23  MR. HALEY: May I just apologize for my

24  ineffectiveness for referring to the wrong indictment. I

25  say that for purposes of the record. I won't repeat

5641

1   anything I have said in reference to the Privitello

2   allegations.

3          It was Count Two in the correct indictment.

4   Indeed, my remarks would be subject to analysis by way of

5   the correct indictment.

6          But as relates to Privitello, it also appears in

7   Counts Five and Six.  And to the extent that the court is

8   of the view that Rule 29 is appropriate insofar as theres

9   has been no proof to demonstrate that Phil Kenner either

10  committed wire fraud in terms of a conspiracy to commit

11  wire fraud, or substantive wire fraud as pertains to Mr.

12  Privitello, that argument would affect Counts Two, Five,

13  and Six.

14          THE COURT:  Thank you.

15          Let's take a break before the charge conference.

16  15 minutes.

17          MR. OLIVERAS:  Your Honor, I got word back from

18  Bob Semple's office.  It was redacted in their files as

19  well.  So they received it redacted.

20          MR. LaRUSSO:  So the document the government

21  introduced was the work copy that they had.

22          THE COURT:  Just remind me.  I will make that

23  note my law clerk will remind me to tell the jury that

24  before the summations tomorrow.  Thank you.

25          (Recess taken at 3 pm.)

5642

1    THE COURT:  Please be seated.  So the record is

2    clear, we posted copies of the proposed jury charge and

3    verdict sheet last night.  Everyone has had a chance to

4    review it?

5        MR. MISKIEWICZ:  Yes, your Honor.

6        MR. LARUSSO:  I did.  I just can't find my

7    verdict sheet but I'll grab somebody's copy.

8        THE COURT:  Mr. Haley, have you had a chance to

9    review it?

10        MR. HALEY:  I did, thank you.

11        THE COURT:  I'd like to do it by sections so it

12    is organized.

13        Section one from page 1 through page 35 which

14    are standard instructions on various issues.

15        Are there any objections to those instructions

16    or any comments?

17        MR. LARUSSO:  No, not on Mr. Constantine's part.

18    Judge, no comments or objections.

19        MR. HALEY:  No comments or objections from

20    Mr. Kenner's standpoint.

21        THE COURT:  Government?

22        MR. MISKIEWICZ:  Your Honor, with respect to the

23    defendant Kenner's testimony.

24        THE COURT:  Yes.

25        MR. MISKIEWICZ:  There are Pattern Jury

5643

1    Instructions from Sand, among others.

2              THE COURT:  What page are we on so I can look at

3    it?

4              MR. MISKIEWICZ:  On page 27.  In sum and

5    substance, as your Honor knows, it indicates that the

6    defendant's cross-examination should be evaluated like any

7    other witness.  I believe we don't have a particular one

8    prepared.  We do have one right out of Sand, but we would

9    ask the Court to consider, actually this is one from --

10   actually rather than delay this matter, I would ask

11   permission if we could submit this evening a proposed

12   alternative or supplemental charge with respect to the

13   defendant's testimony.

14             THE COURT:  What are you trying to capture?

15   What is missing I guess is the question.  What else should

16   be in there?

17             MR. MISKIEWICZ:  For instance, this is a charge

18   from Judge Walker in the Southern District and it was

19   referenced in a case at the Second Circuit, United States

20   v. Brutus, 505 F.3d 80, a 2007 case.  In addition to

21   indicating that no defendant is obligated to testify, it

22   goes on and sort of similarly tracks charges regarding

23   other witnesses who may have a vested interest in the

24   outcome of the matter.

25             For instance, it says, and I'm quoting from the

5644

1   charge that we have here, a defendant who does testify on

2   his own behalf obviously has a deep personal interest in

3   the outcome of his prosecution.  It's fair to say that the

4   interest that the defendant has in the outcome of the case

5   is an interest which is possessed by no other witness.

6          THE COURT:  Yes, I know that language you are

7   referring to but -- and you said Judge Walker, right, when

8   he was on the district court, but that language --

9          MR. MISKIEWICZ:  Yes.

10         THE COURT:  -- That language at one time, I

11  don't know if it was in Judge Sand at one time, but it was

12  something that judges would instruct.  I don't remember

13  the name of the case, but within the last five years or

14  so, I think it was Judge Scheindlin, gave an instruction

15  like that and the Second Circuit said, no, in the charge,

16  although there is a separate charge about interested

17  witnesses, that in the instructions related to the

18  defendant you should not highlight that, oh, by the way,

19  he has an interest in the case and you should consider

20  that.  I forget the case cite and I think as a result

21  Judge Sand doesn't have the language in that.  I think the

22  current version of Judge Sand is similar to what we have

23  which is neutral.  That was a result of a Second Circuit

24  case whose name I can get you that says you do not in the

25  instruction related to the defendant's testimony highlight

5645

1   it as an interest in the case, but --

2           MR. MISKIEWICZ:  No need to, your Honor.  I was

3   unaware of the subsequent Second Circuit decision so I'll

4   withdraw our application in that regard.

5           THE COURT:  Is there anything else in part one?

6           MR. MISKIEWICZ:  Not from the Government.

7           THE COURT:  Part two would charge obviously the

8   various elements of the various counts.

9           MR. LARUSSO:  Your Honor, don't take this as a

10  criticism of the rest, but I'm starting on page 37.

11          THE COURT:  Okay.

12          MR. LARUSSO:  In the bottom two paragraphs you

13  talk in Count 1, in sum, charges the defendants Phillip A.

14  Kenner and Tommy C. Constantine, together with others,

15  with conspiracy to commit wire fraud.  I read that because

16  my objection will be to the second paragraph.

17          Counts 2 through 6, in sum, charge the

18  defendants Phillip A. Kenner and Tommy C. Constantine,

19  together with others, with wire fraud regarding the wiring

20  of funds on specific dates related to Hawaii Land

21  Developments, the Eufora Investments, and the Global

22  Settlement Funds.

23          Those counts only relate to the Eufora

24  investments.

25          THE COURT:  Okay.  Fair enough.  It should say

5646

1   on specific dates related to Eufora investments?

2              MR. LARUSSO:  Correct.

3              THE COURT:  And I'm wondering in introducing

4   that you might want to say the conspiracy to commit wire

5   fraud contains -- I don't know, I haven't really thought

6   that one out whether it is logical to say whether the

7   conspiracy entailed Hawaii and to invest in Global and

8   then when you get to the substantive you say it only to

9   relates Eufora.  I have no real strong points whether the

10  Court wants to do that.

11             THE COURT:  I think that might make sense.

12  Later on I do say there are three objectives, so I think

13  it should say with conspiracy to commit wire fraud related

14  to Hawaiian land developments, Eufora investments and the

15  Global Settlement Fund, and the second paragraphs, Count 3

16  through 6 it will say related to the Eufora investments.

17  Does the Government agree with that?

18             MR. MISKIEWICZ:  Yes.

19             MR. HALEY:  I'm sorry, what page is that?

20             THE COURT:  Bottom of page 37.

21             MR. HALEY:  I see.

22             THE COURT:  So when we describe a conspiracy we

23  make clear it relates to all three and then describing two

24  through six, those counts only relate to the Eufora

25  investments.

5647

1          MR. HALEY:  Okay.  Thank you, Judge.

2          THE COURT:  Okay.  Go ahead.

3          MR. LARUSSO:  If you want me to continue, Judge?

4          THE COURT:  Yes.

5          MR. LARUSSO:  On page 47, I have no objection to

6    the way the Court has explained the participation in the

7    scheme to defraud, but this particular case is a little

8    bit unusual in that the Government is alleging the fraud,

9    in essence, diverting funds.  What I was thinking the

10   Court would consider is possibly putting in something to

11   the effect, the fact that the defendant received money is

12   insufficient to find a defendant knowingly participating

13   in a scheme to defraud.  You must find the defendant

14   diverted or received money as part of a scheme to defraud,

15   that is, defendant knew money was received with specific

16   intent to defraud, because I was trying to address the

17   language, but this case is kind of about diverting funds

18   and the fact that they received it is not a crime.  It has

19   to be related to the scheme to defraud.

20         So what I was trying to do is fashion some kind

21   of a presentation that would be acceptable to the Court.

22   I was struggling with the last part.  I'll be candid with

23   the Court in regards how to do that, but that's my

24   suggestion.  It could go at the end.  It doesn't

25   necessarily have to go in where it may be inserted.

5648

1       THE COURT:  Let me just look.

2       MR. MISKIEWICZ:  Your Honor, may I just be heard

3   on that suggestion?

4       THE COURT:  Yes.

5       MR. MISKIEWICZ:  Limiting it to diversions, as

6   suggested by Mr. LaRusso, would sort of negate what

7   happens to Mr. Privitello.  It's never been our theory at

8   least under the superseding indictment, it's not our

9   theory that his money was diverted and therefore that is

10  the crime.  It is both that it was diverted for personal

11  use by Mr. Constantine, but also as evidenced by the

12  consensual recording between Mr. Privitello and

13  Mr. Constantine.  He's just at the end of the day provided

14  nothing in exchange for his money and there is an excuse

15  given as to why, and I think it is fair for the jury to

16  find that the representation, particularly

17  Mr. Constantine's representation on that exhibit, my CEO

18  decided the money could not be accepted, is a material

19  omission of fact and deceptive because in fact at that

20  particular moment Mr. Constantine is the CEO of Eufora,

21  not anybody else, at the moment when the money was

22  solicited.

23      THE COURT:  I was thinking the same thing.  I

24  was thinking -- I don't think I should characterize this

25  as a "diversion case" but I want to make a more general

5649

1    point which I think is obvious but I don't see any harm in

2    putting something in here, like on page 49, "as a

3    practical matter, then in order to sustain the charges

4    against each defendant, the Government must establish

5    beyond a reasonable doubt that each defendant knew that

6    his conduct as a participant in the scheme was calculated

7    to deceive and nonetheless associated himself with the

8    alleged fraudulent scheme for the purpose of causing some

9    loss to another."  And I could add a sentence there, I

10   could say obviously the receipt of money without the

11   requisite -- without the required mental state would be

12   insufficient, just so -- I'm only making that basic point

13   for you, Mr. LaRusso, because if someone receives money if

14   they didn't intend to defraud, if they receive the money

15   in and of itself is not sufficient.

16              MR. LARUSSO:  Judge, I think that satisfies my

17   objection.

18              THE COURT:  Does the Government have any problem

19   with that?

20              MR. MISKIEWICZ:  No.

21              THE COURT:  Mr. Haley?

22              MR. HALEY:  None.

23              THE COURT:  So I'll say obviously the fact that

24   a defendant received money without -- that is not

25   grammatically correct.  How about this.  It would read:

5650

1  Obviously the fact that a defendant received money by

2  itself is insufficient to prove this element, instead, the

3  Government must prove this mental state that I have just

4  outlined."

5          MR. HALEY:  I'm okay with that.

6          MR. MISKIEWICZ:  Yes.

7          THE COURT:  Mr. LaRusso, keep going.

8          MR. LARUSSO:  Yes, Judge.  There is no other --

9  I think Mr. Haley has a comment on one.  The only other

10  part would deal with the verdict sheet with regards to

11  whether or not the special verdict on the aspect of

12  conspiracy be required.  That's the only thing I have.

13          THE COURT:  We'll go back to the verdict sheet.

14          MR. LARUSSO:  But that's all I have.

15          THE COURT:  Yes, Mr. Haley.

16          MR. HALEY:  I did want to mention going back to

17  part one.  I recall that the Government proposed jury

18  instruction, did address the issue of guilt by

19  association.  I don't believe part one has that aspect in

20  the Court's charge.  I forget the phraseology, Judge,

21  association with someone.

22          THE COURT:  Yes, I don't know that that ever

23  goes in part one.

24          MR. HALEY:  Maybe I missed it in another part.

25          THE COURT:  It's in the conspiracy part, I

5651

1   believe.

2            MR. HALEY:  Okay.

3            THE COURT:  Let me just check.

4            MR. HALEY:  Okay.

5            THE COURT:  Page 62.

6            MR. HALEY:  Thank you, your Honor.  My

7   oversight.

8            THE COURT:  That's okay.

9            MR. LARUSSO:  Actually I put him up to it,

10  Judge.  I went through it and I didn't see it.

11           THE COURT:  Page 62, first full problem, it

12  says:  I want to stress.

13           Do you see that?

14           MR. HALEY:  Thank you.

15           THE COURT:  You can blow that up and put it on

16  the screen.

17           MR. HALEY:  I defer to your Honor's legal

18  prowess, your Honor's charges.

19           THE COURT:  Is there anything else on part one

20  or part two from you, Mr. Haley?

21           MR. HALEY:  No, sir.

22           THE COURT:  Part three, the rules of

23  deliberation.

24           I didn't ask the Government.  Anything on part

25  two?

5652

1         MR. MISKIEWICZ:  With respect to the Santos

2   definition, I guess I'm focusing on page 74 and how

3   proceeds are defined.  I don't have an objection or

4   anything to the language there.

5         I guess what I'm looking for is I want to make

6   sure I'm not running afoul of the Court's instruction and

7   charges here.

8         There's a great deal of evidence that much of

9   what was obtained, particularly in Hawaii and subsequently

10  in the Eufora diversions through Timothy Gaarn, really

11  there is no overhead to those portions of the fraud.  It

12  is all basically theft.  I was intending on arguing with

13  respect to that definition that that is just pure profit,

14  and I just wanted to raise it because I think I've read

15  Santos and I think that is consistent with Santos.

16        THE COURT:  To the extent someone takes money

17  and steals it and puts it through a bank account, that

18  certainly I think would be consistent with the theory of

19  the definition of proceeds under Santos.

20        The Santos fact pattern was an illegal gambling

21  operation.  I think it was under promotion of money

22  laundering with the idea of paying the workers, you are

23  promoting the enterprise for purposes of money laundering,

24  and the Supreme Court said no, those are expenses of the

25  operation.  It has to be some promotion with the profits

5653

1    rather than just paying for the unlawful activity to run

2    itself.  Obviously, we don't have that situation but they

3    call it in the Second Circuit case that followed --

4            MR. MISKIEWICZ:  -- Quinones.

5            THE COURT:  Yes, Quinones, whether it was

6    limited to something, an illegal gambling situation, they

7    said it is in many situations where they call a merger

8    problem where the proceeds are being used in some way to

9    fund the underlying unlawful activity.  So honestly you

10   could not have that merger problem to some extent if it

11   relates to the Government is arguing the money was being

12   concealed by putting it back through Eufora in some way to

13   loan Eufora.  But to the extent that the Government's

14   theory of the case is that they took the investors' money

15   and it was funneled through Mr. Gaarn's account

16   independently so it could be diverted, certainly that

17   would be proceeds.

18           MR. MISKIEWICZ:  I just wanted to raise it in

19   case there -- I didn't want to raise -- I didn't want to

20   say something and draw an objection during summations.  I

21   thought I would raise it.

22           THE COURT:  It's up to the jury to decide

23   whether or not that was a diversion or not and they can

24   take the instruction on proceeds, but that certainly is a

25   legitimate argument to make.  Okay.

5654

1           MR. MISKIEWICZ:  Thank you.

2           THE COURT:  Anything else from the Government?

3           MR. MISKIEWICZ:  There is one other thing, and

4    I'm sorry, it goes back to part one.  And it would --

5    depends on what the argument from Mr. LaRusso and

6    Mr. Haley will be in summation.

7           They made quite a bit of argument during

8    openings about a great number of other investors and

9    player clients who were allegedly totally satisfied with

10   Mr. Kenner and/or Eufora and/or the Global Settlement

11   Fund.  To the extent there is going to be argument about

12   you didn't hear from Mr. Khristich or whoever, there is a

13   standard Sand jury charge regarding the fact that uncalled

14   witnesses are equally available to both parties.

15          I don't know if it is necessary but if there is

16   going to be an argument, it seemed to be confronted in

17   argument, I would request that that charge be given.

18          THE COURT:  I'm aware of that that instruction,

19   and I didn't put it in here, but if you were going to

20   argue that in your summations, you could trigger the need

21   to include that instruction if you start arguing with the

22   Government that they didn't call every single hockey

23   player to testify, which you are free to do, that there is

24   an instruction that makes clear so the jury knows about

25   shifting the burden and those people are sort of in

5655

1    control.  There is a standard instruction that addresses

2    that argument when it is made in a summation.  So I don't

3    know if you will decide whether to make that argument or

4    not.

5            MR. LARUSSO:  Right now my view of the

6    summations, and obviously I've been working on it a couple

7    of days, is to just refer to Sergei Gonchar who testified

8    and based upon Mr. Semple's testimony contradicts Mr. Peca

9    and I believe Mr. Nash's testimony regarding -- I'm not

10   intending to bring in Campbell and Stevenson, I don't

11   think it is necessary.  I think the evidence -- what we

12   have in the record is sufficient, but if I change that

13   point I'll let the Court know right away.  I'm aware of

14   that charge and I hope not to run afoul of it.

15           MR. MISKIEWICZ:  I should also add it would

16   apply to Ken Jowdy who we've heard a lot about who will be

17   somebody equally available to both parties to testify.  So

18   I think that the charge would be appropriate also if there

19   is going to be some suggestion that the Government's

20   failure to call Ken Jowdy which really wouldn't have been

21   to rebut an explanation proffered by the defense, not

22   really something directly involved in the charged conduct.

23   I think that can also be appropriate.

24           THE COURT:  If the words come out of defense

25   counsels' mouth in summation that the Government did not

5656

1    call X, and again it is not improper, they are free to

2    make those arguments, but that would trigger that

3    instruction, but the jury knows yes, the Government does

4    have the burden but they are not the only party that has

5    subpoena power.

6              MR. HALEY:  Your Honor, it was not my intention

7    to say where is Waldo.  It was not my intention to make

8    specific reference in terms of the Government's failure

9    and it is not my intention to make specific reference to

10   the government's failure whether we called Ken Jowdy or

11   any of the other persons who are hockey players or

12   victims, so I hope I don't run afoul to my representation

13   to this Court.  If I do obviously I'm subject to that

14   charge.

15             THE COURT:  If you run afoul, because it is a

16   permissible and proper argument to make, I will not

17   sustain the Government's objection if you make that

18   argument in your summation.  I want you to know I'll add

19   that instruction to the charge.  Okay.

20             Do you understand that?

21             MR. LARUSSO:  Yes, I do.

22             THE COURT:  Mr. Haley, do you understand that?

23             MR. HALEY:  I do.

24             THE COURT:  Anything else?

25             MR. MISKIEWICZ:  Thank you, your Honor.

5657

1     MR. LARUSSO:  Just for the record, Judge, we're

2  not sure, we're pretty sure we'll not do that but if we do

3  and if it is before summation I'll let you know and the

4  parties.

5     THE COURT:  I noticed a typo on 35, a good-faith

6  instruction.  This would only matter if they ask for a

7  copy of it, but it's grammatical in nature.  The first

8  sentence, there's an apostrophe there, the defendants'

9  contend, so I'll delete that.  It is not possessive.

10     Do you see that?

11     MR. LARUSSO:  I did.

12     THE COURT:  Mr. Haley, do you see that.

13     MR. HALEY:  I'm sorry.

14     THE COURT:  Page 35, taking off the apostrophe

15  on the defendants'.

16     MR. HALEY:  I see that.

17     THE COURT:  Everyone is good on part three?

18     MR. MISKIEWICZ:  Yes.

19     MR. LARUSSO:  Yes.

20     MR. HALEY:  Yes, sir.

21     THE COURT:  So the verdict sheet, okay.

22  Mr. LaRusso, do you want to have a special verdict for

23  each objective of the conspiracy?

24     MR. LARUSSO:  Yes, because I think as the Court

25  charges you have to have unanimity in regards to one of

5658

1    the purposes and I'm concerned based upon the present

2    state of the record they may find the defendant guilty on

3    one and not find them guilty on the others.  Through a

4    special verdict I think we should have the jurors identify

5    one which.  And with respect to venue, you know, if they

6    don't find on the Global Settlement Fund or Eufora we may

7    have problems with the statute and venue regarding Hawaii,

8    but that would come later.  That's why I think a special

9    verdict is important.

10           THE COURT:  I don't have a problem with that,

11   but I'm willing to hear if anyone -- Mr. Haley, do you

12   join in that?

13           I'll come back to you.

14           MR. HALEY:  Thank you, your Honor, may I give it

15   some thought?

16           THE COURT:  Yes.

17           What is the Government's view on that?

18           MR. MISKIEWICZ:  I'm having a hard time, sort of

19   envisioning what it would look like because it may be an

20   inconsistent verdict.

21           I suppose the jury could find one defendant

22   certainly participated in one of the objects of the

23   conspiracy, Hawaii, let's say, and the other one

24   participated in Eufora, and given the Court's instructions

25   that on conspiracy that they need not find that all of the

5659

1   objectives were accomplished, I'm just wondering if a

2   special verdict form is really going to solve any

3   question.  They need to find unanimity of purpose.  They

4   need to find these two defendants mutually agreed on the

5   overall conspiracy, and I think splitting it up that way

6   with a special verdict question is almost the

7   reinserting -- in a way it is almost reinserting which

8   overt acts do you find?

9           But under the post Sarbanes Oxley conspiracy

10  statute, overt acts are not an object of conspiracy.  So

11  I'm thinking out loud, your Honor, I haven't really --

12  that's my concern.  That it will really actually create an

13  issue that doesn't exist or more confusion that might not

14  necessarily exist but for the creation of a special

15  verdict.  I don't really care but I don't know how it

16  would be articulated in a manner that we would get a

17  verdict as to Count 1, that by necessity raises judicial

18  questions.

19          THE COURT:  Well, there's up sides and downsides

20  to doing it that way.

21          Look, I do have give a instruction that it has

22  to be unanimous as to the objective.  So the special

23  verdict sheet would mean that they follow that instruction

24  to some extent.  It would help to confirm if they followed

25  that instruction by making a finding as to each of the

5660

1    objectives, and of course they would be polled as to

2    whether or not they are unanimous.  That would be an

3    advantage.

4           The issue is I'm not so much worried about an

5    inconsistent verdict because if the verdict is

6    inconsistent in some way obviously the Court under the law

7    could address that if the verdict was inconsistent.  So I

8    don't know inviting -- I was thinking more that they are

9    not required to be unanimous as to each objective.  They

10   don't have to be unanimous only to one.  So you run the

11   risk, for example, if they said okay, we agree we're

12   unanimous that they both conspired to commit wire fraud on

13   Eufora, that the law would allow them to move on to the

14   other counts, whereas if you have a special verdict sheet

15   they could be back there two extra days arguing over

16   Hawaii and the Global Settlement Fund as to whether or not

17   that was a conspiracy, where under the law they could be

18   done.

19           You are making them make a finding that a

20   unanimous finding as to all three objectives when it only

21   amounts to one objective, that would be sufficient for

22   them to move on to the next count.

23           MR. LARUSSO:  Going back to the fact that I

24   asked that you clarify the substantive acts only relate to

25   Eufora, it's like common sense if they don't find that

5661

1    they committed a conspiracy with regard to Eufora, then

2    they don't go further.

3              THE COURT:  No, that's not true.

4              MR. LARUSSO:  I know, as to Mr. Kenner.  I see.

5    You're right, Judge, I did.  It is getting a little

6    confusing.

7              (Continued.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5662

1      THE COURT:  No, but it would -- you understand

2    what I'm saying.

3          If they found conspiracy on Eufora, and but they

4    were having a lot of disagreement over Hawaii, my verdict

5    sheet, a special verdict sheet would cause them to resolve

6    Hawaii, even though don't have to resolve Hawaii.  They're

7    all in agreement on Eufora.  So that is the down side to

8    that.

9          You don't know what's going on back there.  And

10   they can send out a verdict sheet that has a verdict that

11   says we're deadlocked as to some question that is not even

12   necessary for them to address.

13         So I'm just thinking out loud.  I don't think I

14   have ever given a special verdict at all of the time --

15         MR. LaRUSSO:  Judge, I'm looking at the Northern

16   Trust.  There is no evidence my client is involved in the

17   Northern Trust.

18         I'm looking at the Eufora fraud.  And they are

19   divided almost by defendants, 700,000, 725 with my client

20   and 100,000 with Mr. Kenner and if you want to, my client.

21   So as the facts play out, if the jurors feel that my

22   client is guilty, but Mr. Kenner had nothing to do with

23   those, then of course how are you going to make a

24   determination if we don't know what purposes they found

25   from the conspiracy?

5663

1    THE COURT:  Make a determination for what?

2    MR. LaRUSSO:  Well, let's say; how would we know

3    that they would be unanimous to that.  Let's say they're

4    unanimous with regards to -- if the jurors go back in and

5    decide that there was no conspiracy regarding Eufora, then

6    it seems to me from my client's point of view those counts

7    that relate to the substantive counts should fall as to my

8    client.  It just -- that's not true either, no.

9         I apologize because that is not true either.

10   They can find guilty of substantive and not of the

11   conspiracy, because he may have done it on his own.  I

12   agree.

13        THE COURT:  I'll think about it.  I want to hear

14   Mr. Haley.  I need time to think about it.  But I'll do a

15   little research on it and see if there is any guidance

16   when there is a multiple objective conspiracy, whether or

17   not courts should or shouldn't have special verdict

18   sheets.

19        Again, for the reasons I indicated my

20   inclination is not to do that because they're making -- a

21   jury makes more findings than they would need to find

22   guilt.  And it could weigh over the deliberations.  And,

23   you know, to the extent the argument is, well how do you

24   know they followed your instructions?  Well, that is true

25   of all my instructions.  I tell them to be unanimous on

5664

1    each element of each count.

2           But we don't do special verdict sheets where we

3    ask, Were you unanimous on this element, were you

4    unanimous on this element.  We just tell them, you need to

5    be unanimous on each element.  And we believe that they

6    follow that instruction.

7           So my inclination is not to do it.  But I'll see

8    if the Second Circuit has given guidance on that.

9           MR. MISKIEWICZ:  Your Honor, just to follow up

10   on what Mr. LaRusso said.

11          In essence he's basically saying there is a Rule

12   29 that no reasonable -- there is insufficient evidence

13   that the jury could reasonably find Mr. Constantine

14   participated in the Hawaii portion of the fraud.  I mean

15   that is his argument.  And obviously it could be resolved

16   out of court at some point.

17          But the jury could just as easily conclude that

18   as a result of, for instance the urban expansion loan, and

19   the $2 million in prepayment penalty that went to

20   Mr. Constantine.  Some of which he then shared back with

21   Mr. Kenner.  That was his involvement in the Hawaii aspect

22   of the fraud.  And then we're -- and they could conclude

23   on that, and as you say move on to the next count.

24   Instead they would then with a special verdict form they

25   would have to go to Eufora and then go to GSF.  And that

5665

1  would be the end of it.  But --

2          THE COURT:  Actually I'm just thinking more

3  about GSF.  There are no individual substantive counts on

4  GSF, right?

5          MR. LaRUSSO:  No, there isn't.

6          THE COURT:  So that is a perfect example.

7          They could sit back and say, Okay, there is a

8  conspiracy on Hawaii, there a conspiracy on Eufora, but we

9  don't know about the Global Settlement Fund.  And they can

10  then spend, who knows how much time on the Global

11  Settlement Fund, even though there are no substantive

12  counts left on the Global Settlement Fund.  And they have

13  already found the defendants guilty of the conspiracy to

14  commit wire fraud.  That's a big problem.  That is a big

15  problem.

16          Because in a civil cases when we do those

17  situations we tell them, if you answer guilty -- not

18  guilty in a civil case, but it would have to be something,

19  the Hawaii conspiracy.  If you find unanimously the

20  conspiracy with respect to the Hawaii land deal, if they

21  check guilty then there will be an instruction on that.

22          If you answer guilty to this, then skip -- that

23  is what you do on civil cases.  You skip B and C and move

24  to count two.  And that seems very strange to me to handle

25  a criminal case that way.

5666

1      But I'll think about it over vacation and we can

2  talk more in the morning.  All right?

3      But Mr. Haley, do you wish to state your

4  position at this point?

5      MR. HALEY:  My inclination, your Honor, is to

6  leave the charge and verdict sheet as its stands.

7      THE COURT:  All right.

8      MR. LaRUSSO:  What really concerns me, if your

9  Honor comes to my discussion is, I see the Eufora aspects

10  as charged by the government as not being in the

11  conspiracy.  There are separate aspects to it.  My client

12  did, let's say 725, and he did the -- Mr. Kenner did the

13  $700,000 my client was not involved.

14      But if the jurors find there is no conspiracy

15  between the parties with regard to Eufora, and let's say

16  they don't find Global Settlement Fund.  Now I'm stuck

17  with Hawaii, And the last act that was committed was

18  sometime in 2006.

19      How am I going to know whether or not the jurors

20  found the conspiracy that may not have -- may have been

21  outside the Statute of Limitations?  And the other part is

22  no venue.  I mean if that is the only conspiracy they find

23  is Hawaii on my client, then I'm going to argue then --

24      THE COURT:  The government runs the risk.  Again

25  there is a disadvantage of a special verdict sheet for the

5667

1    government.  The government runs the risk that you could

2    argue, if in fact one of the objectives of the conspiracy

3    is sufficient to satisfy Rule 29.  That would satisfy Rule

4    29.  In other words, if I were to determine you're right,

5    there was no possibility that the jury could conclude that

6    there was a Hawaii conspiracy.  Then the government then

7    runs the risk.  They can't argue, well even if, you know,

8    they may have found Eufora to be sufficient, you wouldn't

9    know.  Then so that creates a problem for purposes of

10   appeal, and for purposes of Rule 29.  If I were to

11   determine one of those three objectives were insufficient

12   as a matter of law, that it's possible that that was the

13   only one the jury found, as opposed to a special verdict

14   sheet.  Then you could say, well, judge, they found guilty

15   on the Eufora conspiracy, so it doesn't matter.

16          But it's the risk they run.

17          MR. LaRUSSO:  That is my point.  But then I go

18   to the Global Settlement Fund.  We're in dispute on that.

19   And I think the Court, likely looking at the facts, could

20   find it either way.  But I don't know what the jury will

21   find because they don't do a special verdict.  And, you

22   know, it's kind of like saying to myself, okay, Global

23   Settlement Fund, it looks like enough evidence that the

24   Court could sustain that one.  But if the jury don't find

25   him guilty, how am I going to know that the only other

5668

1   once would be Hawaii.  And then I would have the venue

2   question and I would have a Statute of Limitations

3   question.

4           THE COURT:  I'll think about it a little more.

5   Okay?

6           MR. LaRUSSO:  I have to do a little more

7   thinking.  But that was my thought in raising it

8   initially, judge.

9           THE COURT:  Okay.

10          All right, anything else in the verdict sheet

11  other than that issue?

12          MR. MISKIEWICZ:  Not from the government, no.

13          MR. LaRUSSO:  Your Honor, just a last thought.

14  My client raised this, and I'm not sure it's not

15  inappropriate.

16          In terms of, let's say there was a conviction.

17  Let's say that the monies are going to be a substantial

18  part of the sentencing guidelines in terms of what the

19  range would be.

20          If he is found guilty of, let's say only one

21  aspect of this, it's going to be substantially less.  And

22  granted, I understand the Court can find by a

23  preponderance of the evidence.  But it would certainly be

24  an argument for us to make if the jurors did not find that

25  he was responsible, and therefore the Court should

5669

1   consider, at least not including all of the other monies

2   on the preponderance of the evidence.

3         I hadn't thought about that.  And I think that

4   may be another factor that I have to consider in terms of

5   whether or not a conviction does result, and how it is

6   going to impact him later on in sentencing.

7         THE COURT:  Yes.  But I mean it's a fair point.

8   Except that the law is clear that the standard is

9   preponderance of the evidence for sentencing.  So

10  independent he what the jury determines, it's something

11  the Court could consider.

12        And obviously to some extent that, that risk is

13  in every case.  The jury doesn't have any dollar amounts.

14  Even if with respect to the each individual objective I'm

15  sure it's going to be an argument that the loss amount for

16  Eufora, if they were to be found guilty or Hawaii, or the

17  Global Settlement Fund, is not, the gross amount shouldn't

18  be the entire investment.  So --

19        MR. LaRUSSO:  Absolutely.

20        THE COURT:  So that is an issue that exists in

21  every case because we don't ask the jury to find a dollar

22  amount.  I understand when there is multiple objectives it

23  further leaves open that issue.

24        But I'm not sure that the sentencing issue is

25  sufficient to warrant a special verdict sheet.  But I'll

5670

1   think about it.

2           MR. LaRUSSO:  Thank you very much, your Honor.

3           THE COURT:  Is there anything else other than

4   that?

5           MR. LaRUSSO:  No, your Honor.

6           MR. HALEY:  Your Honor, just a final point.

7           This is my first opportunity to try a case in

8   front of this Court.

9           Typically when I sum up in front of a jury I

10  don't define the law to the jury.  But to be sure, I

11  oftentimes say, listen carefully as to whether or not you

12  may hear instruction on good faith, and something of that

13  nature.

14          I don't know what parameters your Honor puts on

15  the attorneys in connection with references to the law in

16  summations.

17          THE COURT:  As with all things, I'm very

18  generous.

19          MR. HALEY:  You are.

20          THE COURT:  So my practice is to allow you to go

21  even further than what you said.  Which is to say, Judge

22  Bianco will instruct you on the law, but I expect that he

23  will instruct you -- and you can even read a sentence from

24  the charge if you wanted to.  I tell them in the beginning

25  that I permit you to do that.  So they don't think you're

5671

1    stepping on my turf.  But I tell them that if I say

2    something different than what you say, then what I say

3    controls.  But you can even read from the charge itself.

4           MR. HALEY:  Thank you, sir.

5           THE COURT:  And that is why I tell them

6    discussing it, so they understand that you're not making

7    it up, you're looking at something I gave you.

8           I don't mention it because I don't want them to

9    think that the government is violating my instructions

10   again during summations.  I said it's improper to comment

11   on the demeanor of a witness.  So beginning tomorrow I may

12   say to them that instruction applies on the question of

13   witnesses whether it's to argue demeanor and credibility

14   during their summations, they're free to accept are reject

15   it.  But I don't want them to think if someone stands up

16   there and said, he was evasive, that that is violating my

17   instruction on witnesses.

18          All right.  And the government, and having said

19   defense counsel, and you can do it right now, just

20   double-check the redacted superseding indictment and make

21   sure that all the John Does have been replaced.  And you

22   see that everything is accurate.

23          I did ask the government.  I think this may have

24   been produced prior to my request.  But at the end of the

25   Count Seven and Eight, and Count Number Two --

5672

1           MS. KOMATIREDDY:  I can send a revised --

2           THE COURT:  Have you docketed this yet or not?

3   The redacted version, have you docketed it?

4           MS. KOMATIREDDY:  I have not docketed ed it.

5           THE COURT:  So just take out Section two, seven

6   and eight and just docket it as a redacted trial, you

7   know, indictment or something.

8           Okay.

9           MS. KOMATIREDDY:  All right.

10          MR. HALEY:  The government as well is generous,

11  your Honor.

12          If I may, the indictment now contains the

13  specific identity of the John Does.

14          Have you emailed that, Saritha?

15          MS. KOMATIREDDY:  Once I make that last -- the

16  final change, I'll put it on ECF and then I'll copy the

17  attorneys.

18          MR. HALEY:  Thank you.

19          THE COURT:  Here is a final version.  I'll make

20  a copy of it.  Actually we'll make copies and we'll docket

21  the prior version.  So that anything that comes from here

22  should be correct.

23          And I just want to confirm the forfeiture issue

24  as to Mr. Kenner an Mr. Constantine.  I just want to

25  confirm what I said yesterday.  I want to make sure that

5673

1   you understand that on the issue, assuming there were a

2   conviction in this case there will be a forfeiture

3   proceeding.

4           The law gives the defendant the right to have a

5   jury decide the issue of forfeiture.  But the defendant

6   can waive that right and have the Court, after a full

7   hearing, the same way you have a full hearing before the

8   jury, decide that issue.

9           The lawyers have advised me that you're willing

10  to waive the forfeiture part being presented to the jury

11  and have the Court decide that if there is a conviction.

12          Is that right, Mr. Constantine?

13          DEFENDANT CONSTANTINE:  If I understand you

14  correctly, your Honor, you're saying that you would decide

15  the forfeiture on this case instead of the jury?

16          THE COURT:  Yes.

17          DEFENDANT CONSTANTINE:  I would prefer that you

18  do it.

19          THE COURT:  All right.  And Mr. Kenner?

20          MR. KENNER:  Yes, sir.  I conferred with my

21  attorney, and I understand the parameters of it.  So I

22  would appreciate if the Court would handle that.

23          THE COURT:  Okay, I'm happy to do that.

24          And sometimes the forfeiture is very

25  straightforward.  Like in a child pornography case they

5674

1    try to forfeit the computer.

2            But this is obviously not one of those cases

3    where the forfeiture proceeding would be straightforward.

4    I think it's very complicated, a very complicated issue.

5            Okay, so anything else we want to discuss today

6    as far as -- We can start summations at 9:30.  Once you

7    finalize any charts, I just suggest you show them to

8    opposing counsel to make sure.  I would hate there to be

9    objections and sidebars during summations.  So if you plan

10   on using any charts.  Okay?

11           Also again, I know you might be busy tonight

12   with your summations, but I do want there to be an

13   agreement on the exhibit list so that we're not -- so

14   every lawyer should prepare what they think the exhibits

15   are in evidence, what they offered.  And then exchange it,

16   so we don't have any disagreement during deliberations.

17           Okay?

18           MR. LaRUSSO:  We'll -- is working on it.  So

19   we'll probably get it done tomorrow or Friday, we'll be

20   ready to exchange.

21           THE COURT:  That's fine, as long as you're ready

22   to do it by Monday, that is fine.

23           All right, anything else?

24           MR. HALEY:  No, sir.

25           MR. MISKIEWICZ:  No, your Honor.

5675

1          THE COURT:  Have a good night.

2          MR. LaRUSSO:  Thank you.

3          THE COURT:  Thank you.

4          (The proceedings were concluded at 4:21 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5676

1                        I N D E X

2

3    **ROBERT MICHAEL SEMPLE**                    5494
     DIRECT EXAMINATION (Continued)          5494
     BY MR. LaRUSSO
4    CROSS-EXAMINATION                        5498
     BY MS. KOMATIREDDY
5    CROSS-EXAMINATION                        5577
     BY MR. HALEY
6    REDIRECT EXAMINATION                     5578
     BY MR. LaRUSSO
7
     **WILLIAM DANIEL KENNEDY**                   5588
8    DIRECT EXAMINATION                       5588
     BY MR. LaRUSSO
9    WILLIAM DANIEL KENNEDY                   5611
     DIRECT EXAMINATION (Continued)          5611
10   BY MR. LaRUSSO

11   **ROBERT CRISALLI**                          5622
     DIRECT EXAMINATION                       5622
12   BY MS. KOMATIREDDY
     CROSS-EXAMINATION                        5625
13   BY MR. HALEY

14                     E X H I B I T S

15
     Government Exhibit GX 4814, 4815, and 4816 in   5506
16   evidence
     Government Exhibit 1106 in evidence      5534
17   Defense Exhibit C266 in evidence.        5603
     Defendant's Exhibit C-283 A was received in   5566
18   evidence
     Government Exhibit 1107 was received in   5536
19   evidence
     Government Exhibit 4811 was received in   5572
20   evidence
     Government Exhibit 4810 was received in   5575
21   evidence

22

23

24

25

Owen M. Wicker,  RPR
Official Court Reporter

## $

**$10,000** [5] - 5507:2, 5507:7, 5507:9, 5507:10, 5507:12
**$100,000** [1] - 5565:4
**$125,000** [1] - 5530:3
**$1285** [1] - 5576:23
**$130,000** [2] - 5518:2, 5518:6
**$155,000** [2] - 5489:1, 5498:3
**$20,000** [11] - 5532:16, 5533:1, 5533:7, 5533:18, 5533:22, 5534:2, 5536:11, 5536:14, 5579:10, 5579:16, 5579:25
**$200,000** [2] - 5510:6, 5510:17
**$30,000** [2] - 5635:4, 5637:22
**$300,000** [5] - 5563:7, 5565:6, 5565:14, 5566:14, 5566:15
**$4,000** [3] - 5505:5, 5505:8, 5557:23
**$5,000** [1] - 5507:17
**$50,000** [1] - 5518:12
**$60** [2] - 5555:25, 5586:15
**$7,000** [1] - 5593:13
**$700,000** [3] - 5628:9, 5631:7, 5666:13
**$725,000** [2] - 5541:20, 5631:8
**$758,000** [1] - 5562:21
**$800,000** [2] - 5562:16, 5562:19
**$90** [1] - 5502:9

## '

**'08** [2] - 5560:13, 5560:22
**'09** [2] - 5560:13, 5560:22
**'90s** [2] - 5590:20, 5592:12
**'96** [2] - 5589:8, 5590:4

## 0

**0000005** [1] - 5577:22
**0013** [1] - 5565:22

## 1

**1** [7] - 5484:7, 5533:15, 5553:7,
5557:22, 5642:13, 5645:13, 5659:17
**1,150,000** [1] - 5555:21
**1,200** [3] - 5590:4, 5590:6, 5590:7
**1.1** [3] - 5500:19, 5505:4, 5505:8
**1.15** [2] - 5512:18, 5516:13
**1.150** [1] - 5555:25
**1.3** [2] - 5512:17, 5516:12
**1.774** [1] - 5586:11
**10** [15] - 5511:6, 5515:23, 5515:25, 5516:3, 5516:4, 5516:22, 5516:24, 5517:18, 5526:16, 5555:15, 5615:16, 5618:20, 5619:2, 5637:24
**100,000** [5] - 5565:11, 5565:12, 5566:9, 5566:10, 5662:20
**1065** [1] - 5545:6
**10K** [1] - 5509:7
**11** [1] - 5555:15
**1106** [4] - 5534:6, 5534:13, 5534:15, 5676:16
**1107** [4] - 5536:2, 5536:6, 5536:7, 5676:18
**11201** [1] - 5484:14
**11722** [1] - 5484:22
**1180** [1] - 5484:21
**12** [4] - 5555:16, 5611:22, 5633:12, 5635:3
**12:59** [1] - 5609:25
**13** [2] - 5555:16, 5633:12
**13-CR-607** [1] - 5484:3
**13th** [1] - 5536:13
**14** [3] - 5633:13, 5633:14, 5634:22
**14157** [1] - 5486:5
**15** [3] - 5609:2, 5615:16, 5641:16
**150** [1] - 5512:13
**150,000** [1] - 5629:20
**17** [1] - 5589:25
**1801** [1] - 5537:11
**1991** [1] - 5486:12

## 2

**2** [9] - 5597:16, 5623:23, 5624:8,
5624:20, 5625:1, 5625:11, 5630:18, 5645:17, 5664:19
**20** [9] - 5511:7, 5516:14, 5516:15, 5516:17, 5516:21, 5525:20, 5590:3, 5609:2, 5615:16
**20,000** [2] - 5537:5, 5537:9
**200,000** [1] - 5562:22
**2000** [2] - 5486:4, 5486:5
**2002** [2] - 5540:11, 5560:11
**2004** [3] - 5508:5, 5508:7, 5556:25
**2005** [3] - 5502:9, 5555:20, 5586:17
**2006** [5] - 5502:10, 5555:20, 5586:17, 5632:6, 5666:18
**2007** [9] - 5504:21, 5504:22, 5504:24, 5540:11, 5540:12, 5553:14, 5557:6, 5560:12, 5643:20
**2008** [7] - 5540:14, 5542:6, 5542:23, 5545:3, 5553:14, 5557:6, 5607:23
**2008-2009** [1] - 5558:19
**2009** [20] - 5504:21, 5504:23, 5504:25, 5533:2, 5534:3, 5535:3, 5536:21, 5540:13, 5540:14, 5542:23, 5545:3, 5545:5, 5553:14, 5557:7, 5571:2, 5577:8, 5580:12, 5633:16, 5635:3
**2010** [5] - 5611:22, 5623:23, 5624:8, 5624:20, 5625:1
**2011** [8] - 5498:22, 5499:12, 5506:10, 5507:2, 5507:7, 5507:10, 5507:16, 5525:17
**20111** [1] - 5499:9
**2012** [1] - 5499:22
**2013** [1] - 5620:13
**2014** [3] - 5618:17, 5619:25, 5620:13
**2015** [1] - 5484:7
**250** [1] - 5512:19
**26** [1] - 5564:7
**26-minute** [1] -

**5625**:18
**260** [1] - 5603:25
**266** [2] - 5603:3, 5603:4
**27** [3] - 5535:4, 5564:12, 5643:4
**283A** [1] - 5492:5
**29** [10] - 5627:21, 5633:4, 5634:23, 5636:6, 5637:4, 5641:8, 5664:12, 5667:3, 5667:4, 5667:10
**2:10** [1] - 5610:2
**2:35** [1] - 5626:23

## 3

**3** [2] - 5641:25, 5646:15
**3/31/09** [1] - 5580:10
**30** [2] - 5491:25, 5492:1
**31** [6] - 5492:1, 5492:2, 5534:3, 5535:2, 5536:21, 5565:22
**3123R** [1] - 5490:7
**313** [1] - 5490:7
**313R** [1] - 5490:6
**35** [3] - 5642:13, 5657:5, 5657:14
**350,000** [1] - 5562:24
**37** [2] - 5645:10, 5646:20
**38** [1] - 5573:2
**38,000** [1] - 5536:13
**39** [1] - 5567:16

## 4

**400,000** [1] - 5557:19
**403** [1] - 5487:15
**43** [1] - 5576:22
**45** [2] - 5533:15, 5567:16
**4500** [1] - 5623:1
**47** [1] - 5647:5
**4780** [1] - 5611:20
**4803** [2] - 5521:9, 5531:1
**4804** [1] - 5532:20
**4808** [2] - 5563:12, 5564:6
**4810** [8] - 5575:7, 5575:8, 5575:13, 5575:15, 5576:11, 5580:15, 5580:21, 5676:20
**4811** [6] - 5567:14,

**5567**:18, 5572:2, 5572:14, 5572:18, 5676:19
**4814** [3] - 5506:13, 5506:20, 5676:15
**4815** [4] - 5506:14, 5506:20, 5507:4, 5676:15
**4816** [4] - 5506:14, 5506:20, 5507:13, 5676:15
**49** [1] - 5649:2
**4:21** [1] - 5675:4

## 5

**5** [2] - 5553:7, 5580:12
**50** [4] - 5511:7, 5512:15, 5516:8, 5526:14
**50,000** [1] - 5629:20
**500** [4] - 5509:22, 5510:2, 5510:25
**500,000** [1] - 5557:20
**505** [1] - 5643:20
**5494** [2] - 5676:2, 5676:3
**5498** [1] - 5676:4
**5506** [1] - 5676:15
**5534** [1] - 5676:16
**5536** [1] - 5676:18
**5566** [1] - 5676:17
**5572** [1] - 5676:19
**5575** [1] - 5676:20
**5577** [1] - 5676:6
**5578** [1] - 5676:6
**5588** [2] - 5676:7, 5676:8
**5603** [1] - 5676:17
**5611** [2] - 5676:9, 5676:9
**5622** [2] - 5676:11, 5676:11
**5625** [1] - 5676:12
**5th** [1] - 5607:23

## 6

**6** [4] - 5577:23, 5604:1, 5645:17, 5646:16
**62** [2] - 5651:5, 5651:11
**631** [1] - 5484:22

## 7

**7** [2] - 5577:23, 5589:8
**700** [1] - 5631:10
**700,000** [1] - 5662:19
**712-6108** [1] - 5484:22

**712-6124** [1] - 5484:22
**725** [3] - 5631:10, 5662:19, 5666:12
**74** [1] - 5652:2
**767** [5] - 5492:23, 5494:16, 5495:14, 5532:9, 5579:24
**78** [1] - 5555:17
**79** [1] - 5555:17
**797** [1] - 5486:12

**8**

**8** [2] - 5577:23, 5589:8
**80** [1] - 5643:20

**9**

**9** [16] - 5591:4, 5591:5, 5594:20, 5596:7, 5597:4, 5598:17, 5598:18, 5599:2, 5600:13, 5601:7, 5601:10, 5602:8, 5602:20, 5604:3, 5605:8, 5606:6
**9-something** [1] - 5624:9
**9/8/2009** [1] - 5532:9
**90** [1] - 5579:4
**90067** [1] - 5537:12
**937** [1] - 5486:12
**9:30** [2] - 5626:21, 5674:6
**9:46** [6] - 5623:25, 5624:10, 5624:11, 5624:20, 5625:1, 5625:11
**9:50** [1] - 5484:8

**A**

**a/k/a** [2] - 5484:5, 5484:6
**able** [9] - 5496:5, 5545:19, 5559:16, 5568:21, 5571:8, 5584:4, 5594:15, 5599:5, 5599:7
**absence** [3] - 5485:3, 5610:4, 5626:22
**absolutely** [3] - 5497:24, 5586:19, 5669:19
**accept** [5] - 5489:5, 5498:8, 5499:11, 5518:10, 5518:12, 5671:14
**acceptable** [1] - 5647:21
**accepted** [2] -

**5532:25, 5648:18
access** [1] - 5625:15
**accomplish** [1] - 5584:1
**accomplished** [1] - 5659:1
**according** [2] - 5487:9, 5534:1
**account** [33] - 5495:5, 5520:9, 5523:18, 5523:19, 5523:21, 5523:22, 5523:24, 5524:21, 5525:3, 5531:10, 5531:25, 5533:19, 5533:23, 5533:24, 5534:17, 5535:2, 5537:11, 5537:13, 5561:9, 5566:10, 5567:4, 5570:11, 5579:11, 5579:12, 5580:1, 5580:4, 5635:5, 5635:6, 5637:23, 5637:25, 5652:17, 5653:15
**accountant** [9] - 5499:2, 5505:7, 5505:16, 5519:2, 5519:5, 5523:10, 5545:16, 5548:2, 5560:21
**accountants** [1] - 5519:12
**accounted** [1] - 5583:25
**accounting** [3] - 5515:5, 5527:24, 5528:13
**accounts** [2] - 5579:24, 5580:7
**accumulation** [1] - 5525:20
**accurate** [1] - 5671:22
**acknowledgement** [1] - 5614:9
**acknowledgements** [1] - 5584:20
**acknowledging** [1] - 5585:8
**acknowledgment** [1] - 5584:9
**acknowledgments** [1] - 5586:5
**acquaintances** [1] - 5593:21, 5604:21
**acquire** [1] - 5634:3
**acquisition** [2] - 5496:18, 5562:23
**act** [2] - 5635:23, 5666:17

**action** [2] - 5538:4, 5611:21
**actions** [2] - 5614:13, 5629:8
**active** [2] - 5587:16, 5605:13
**activities** [1] - 5599:7
**activity** [3] - 5605:2, 5653:1, 5653:9
**acts** [3] - 5659:8, 5659:10, 5660:24
**actual** [10] - 5522:8, 5525:3, 5525:9, 5531:24, 5532:3, 5532:8, 5557:16, 5562:10, 5563:4, 5598:13
**Adams** [1] - 5486:4
**add** [4] - 5572:16, 5649:9, 5655:15, 5656:18
**added** [1] - 5622:6
**addition** [2] - 5638:21, 5643:20
**additional** [6] - 5572:15, 5573:12, 5587:16, 5602:8, 5605:25, 5635:25
**address** [6] - 5550:20, 5633:4, 5647:16, 5650:18, 5660:7, 5662:12
**addresses** [1] - 5655:1
**addressing** [1] - 5488:9
**adjourned** [1] - 5488:14
**admissible** [6] - 5486:9, 5486:13, 5487:5, 5492:16, 5494:18, 5494:19
**admission** [7] - 5486:2, 5486:9, 5486:14, 5486:19, 5487:20, 5560:16, 5618:6
**admit** [1] - 5491:19
**admitted** [14] - 5486:7, 5489:23, 5490:1, 5490:3, 5490:7, 5491:13, 5492:17, 5506:19, 5534:14, 5536:6, 5550:4, 5565:24, 5566:4, 5572:14
**admitting** [1] - 5572:2
**adopted** [1] - 5550:10
**advance** [1] - 5538:19
**advances** [3] - 5526:5,

**5526:6, 5526:7
advantage** [1] - 5660:3
**advice** [1] - 5627:9
**advised** [2] - 5551:23, 5673:9
**Advisors** [3] - 5536:12, 5536:15, 5537:10
**affect** [1] - 5641:12
**affiliated** [2] - 5508:4, 5607:11
**affirmed** [1] - 5486:8
**afield** [1] - 5620:14
**afoul** [4] - 5652:6, 5655:14, 5656:12, 5656:15
**afternoon** [2] - 5589:3, 5589:4
**agent** [3] - 5486:16, 5558:9, 5622:23
**Agent** [8] - 5489:3, 5493:7, 5493:14, 5497:6, 5498:6, 5498:7, 5622:14, 5622:23
**ago** [2] - 5494:14, 5536:19, 5536:24, 5580:15
**agree** [9] - 5544:25, 5547:13, 5549:17, 5550:1, 5606:13, 5639:25, 5646:17, 5660:11, 5663:12
**agreed** [7] - 5497:1, 5518:10, 5518:12, 5518:17, 5608:4, 5635:22, 5659:4
**agreement** [16] - 5593:8, 5594:6, 5595:5, 5595:17, 5596:3, 5597:3, 5597:13, 5599:11, 5600:2, 5600:10, 5601:9, 5601:14, 5602:4, 5608:1, 5662:7, 5674:13
**agreements** [2] - 5549:13, 5630:20
**ahead** [9] - 5494:22, 5504:16, 5553:4, 5560:21, 5562:3, 5566:21, 5591:25, 5595:2, 5647:2
**aircraft** [12] - 5510:18, 5511:4, 5512:22, 5516:15, 5516:17, 5517:4, 5517:12, 5517:15, 5526:1, 5526:4, 5526:13,

**5527:4
aircrafts** [1] - 5511:5
**airpark** [1] - 5527:5
**airplane** [4] - 5515:25, 5517:2, 5517:7, 5620:14
**airplanes** [3] - 5510:23, 5511:6, 5540:25
**allegation** [13] - 5485:19, 5485:22, 5486:6, 5486:25, 5487:4, 5487:8, 5502:16, 5503:16, 5504:5, 5504:8, 5504:14, 5637:20
**allegations** [4] - 5487:13, 5634:21, 5634:25, 5641:2
**allege** [3] - 5635:18, 5636:11, 5636:23
**alleged** [5] - 5628:11, 5631:8, 5633:11, 5636:19, 5649:8
**allegedly** [1] - 5654:9
**alleges** [3] - 5628:25, 5633:8, 5634:4
**alleging** [1] - 5647:8
**allocute** [1] - 5627:1
**allow** [3] - 5549:2, 5660:13, 5670:20
**allowed** [3] - 5504:8, 5573:10, 5590:22
**allowing** [1] - 5628:5
**almost** [4] - 5578:23, 5659:6, 5659:7, 5662:19
**alone** [3] - 5550:9, 5634:5, 5636:13
**alter** [1] - 5542:5
**alternative** [1] - 5643:12
**ambiguous** [1] - 5509:19
**amended** [6] - 5556:16, 5556:18, 5557:14, 5557:17, 5557:25, 5558:5
**AMERICA** [1] - 5484:3
**American** [1] - 5570:5
**Amex** [2] - 5570:8, 5570:11
**amount** [9] - 5512:17, 5515:16, 5530:2, 5536:11, 5536:13, 5536:14, 5669:15, 5669:17, 5669:22
**amounts** [3] - 5519:11, 5660:21, 5669:13

**analysis** [28] - 5495:8, 5496:7, 5502:21, 5510:6, 5521:24, 5522:24, 5523:7, 5525:1, 5525:10, 5527:1, 5532:13, 5532:25, 5536:25, 5561:2, 5562:20, 5565:10, 5565:11, 5565:17, 5565:18, 5567:3, 5576:3, 5577:17, 5579:19, 5579:20, 5579:21, 5580:18, 5641:4
**analyzed** [1] - 5567:3
**and-a-half** [3] - 5590:12, 5593:6, 5605:10
**ANDREW** [1] - 5484:18
**Andrew's** [1] - 5610:13
**Angeles** [2] - 5537:12, 5538:5
**answer** [17] - 5500:13, 5509:3, 5509:20, 5509:21, 5539:4, 5539:9, 5545:22, 5548:2, 5549:24, 5551:18, 5551:20, 5568:21, 5574:6, 5610:16, 5665:17, 5665:22
**answers** [2] - 5493:12, 5548:5
**anticipate** [1] - 5612:20
**anticipated** [1] - 5598:20
**anticipating** [1] - 5586:18
**anticipation** [1] - 5550:2
**anytime** [1] - 5536:19
**apart** [1] - 5559:9
**apologize** [9] - 5572:21, 5598:15, 5598:17, 5602:20, 5631:25, 5638:4, 5640:23, 5663:9
**apostrophe** [2] - 5657:8, 5657:14
**APP** [1] - 5486:5
**appeal** [1] - 5667:10
**appear** [3] - 5548:24, 5553:12, 5556:15
**APPEARANCES** [1] - 5484:11
**Appearances** [1] - 5485:1

**appeared** [5] - 5537:25, 5559:17, 5579:25, 5586:25, 5587:23
**application** [3] - 5628:6, 5633:4, 5645:4
**applies** [1] - 5671:12
**apply** [1] - 5655:16
**appreciate** [6] - 5503:17, 5508:20, 5524:24, 5543:2, 5626:17, 5673:22
**approach** [1] - 5619:19
**approached** [3] - 5598:4, 5598:6, 5612:16
**appropriate** [4] - 5603:24, 5641:8, 5655:18, 5655:23
**approval** [4] - 5566:11, 5566:13, 5566:15, 5566:18
**approvals** [1] - 5584:10
**approve** [2] - 5614:15, 5615:11
**approved** [6] - 5490:11, 5490:15, 5541:21, 5564:3, 5629:9, 5629:10
**approving** [1] - 5614:9
**April** [3] - 5536:10, 5536:13
**area** [3] - 5549:1, 5552:25, 5561:13
**argue** [6] - 5548:18, 5654:20, 5666:23, 5667:2, 5667:7, 5671:13
**argued** [3] - 5486:6, 5488:5, 5631:13
**arguing** [7] - 5543:18, 5549:5, 5559:11, 5652:12, 5653:11, 5654:21, 5660:15
**argument** [24] - 5546:3, 5549:6, 5631:21, 5632:15, 5637:1, 5637:8, 5637:16, 5638:10, 5640:7, 5641:12, 5653:25, 5654:5, 5654:7, 5654:11, 5654:16, 5654:17, 5655:2, 5655:3, 5656:16, 5656:18, 5663:23, 5664:15, 5668:24, 5669:15

**arguments** [2] - 5640:15, 5656:2
**arisen** [1] - 5573:24
**Arizona** [3] - 5505:12, 5568:11, 5589:6
**arrest** [1] - 5517:21
**arrested** [3] - 5510:22, 5511:1, 5518:21
**arrived** [1] - 5601:14
**articulated** [2] - 5547:24, 5659:16
**Arts** [4] - 5508:2, 5508:5, 5508:24, 5509:8
**aside** [1] - 5623:12
**aspect** [7] - 5541:20, 5549:6, 5634:24, 5650:11, 5650:19, 5664:21, 5668:21
**aspects** [5] - 5495:24, 5630:25, 5631:7, 5666:9, 5666:11
**assertions** [1] - 5520:16
**assessment** [2] - 5586:11, 5586:14
**asset** [1] - 5619:22
**assets** [2] - 5525:24, 5543:21
**assist** [1] - 5499:22
**Assistant** [2] - 5488:22, 5497:6
**assisted** [1] - 5510:3
**associated** [2] - 5623:15, 5649:7
**Associates** [1] - 5537:13
**association** [2] - 5650:19, 5650:21
**assume** [2] - 5546:4, 5581:2
**assuming** [3] - 5638:14, 5673:1
**assumption** [1] - 5554:16
**attached** [2] - 5491:7, 5623:19
**attachment** [4] - 5534:10, 5534:25, 5576:10, 5576:13
**attachments** [1] - 5534:21
**attempted** [1] - 5531:6
**attend** [1] - 5497:16
**attention** [6] - 5488:20, 5496:1, 5530:21, 5554:8, 5554:11, 5579:10
**Attorney** [3] - 5484:13, 5488:22,

5497:7
**attorney** [9] - 5495:19, 5495:20, 5497:17, 5512:8, 5562:21, 5583:4, 5587:19, 5614:15, 5673:21
**attorney's** [2] - 5495:21, 5562:16
**attorney-client** [1] - 5583:4
**Attorneys** [1] - 5484:15
**attorneys** [6] - 5496:2, 5511:2, 5517:4, 5517:6, 5670:15, 5672:17
**attorneys'** [1] - 5583:16
**audio** [4] - 5623:6, 5623:7, 5623:8, 5623:12
**audit** [18] - 5502:4, 5502:7, 5502:8, 5505:19, 5506:2, 5520:5, 5520:7, 5520:11, 5522:2, 5555:20, 5555:22, 5555:23, 5556:2, 5556:3, 5556:5, 5556:7, 5558:9, 5586:21
**audited** [2] - 5508:17, 5508:23
**August** [5] - 5623:23, 5624:8, 5624:20, 5625:1, 5625:10
**AUSA** [2] - 5493:7, 5493:14
**authenticated** [1] - 5490:25
**authority** [3] - 5485:6, 5485:14, 5485:16
**authorization** [5] - 5491:11, 5564:3, 5584:9, 5618:12, 5631:11
**authorizations** [4] - 5584:20, 5585:2, 5585:3, 5586:5
**authorize** [1] - 5569:25
**authorized** [6] - 5490:12, 5490:15, 5527:14, 5527:17, 5569:23, 5585:18
**authorizing** [1] - 5585:9
**available** [6] - 5546:15, 5546:21, 5587:18, 5609:18,

5654:14, 5655:17
**Avalon** [2] - 5526:21, 5527:5
**Avenue** [1] - 5537:11
**avoid** [1] - 5526:12
**avoided** [2] - 5510:14, 5510:16
**aware** [10] - 5496:13, 5496:14, 5496:22, 5497:1, 5533:22, 5545:1, 5632:22, 5634:8, 5654:18, 5655:13
**awhile** [1] - 5593:25
**AZ** [10] - 5489:1, 5498:3, 5511:9, 5511:12, 5511:16, 5515:19, 5515:25, 5516:4, 5526:22, 5619:24

## B

**back-end** [1] - 5590:24
**background** [3] - 5497:11, 5612:13, 5613:10
**backing** [3] - 5565:9, 5565:15, 5619:21
**backup** [10] - 5531:6, 5531:16, 5531:18, 5533:7, 5533:17, 5554:9, 5554:10, 5564:4, 5576:9, 5576:17
**backups** [1] - 5554:24
**bad** [1] - 5615:6
**bag** [1] - 5630:21
**balance** [3] - 5521:5, 5523:9, 5524:17
**balances** [1] - 5545:10
**Bank** [4] - 5537:11, 5635:5, 5637:23, 5637:25
**bank** [15] - 5506:14, 5506:17, 5524:20, 5526:17, 5530:12, 5534:7, 5534:24, 5536:2, 5536:17, 5536:23, 5536:25, 5570:4, 5579:18, 5635:6, 5652:17
**bankruptcy** [19] - 5499:21, 5499:23, 5499:24, 5500:1, 5500:6, 5500:18, 5502:3, 5502:17, 5504:6, 5504:14, 5504:20, 5518:1,

5518:8, 5527:6, 5543:19, 5553:19, 5556:23, 5557:23, 5586:10

**banks** [1] - 5524:18

**bar** [3] - 5573:1, 5612:23, 5613:14

**Bartness** [2] - 5505:17, 5506:7

**based** [14] - 5522:9, 5528:25, 5532:6, 5540:21, 5558:20, 5559:19, 5583:4, 5598:20, 5634:4, 5635:9, 5638:19, 5639:20, 5655:8, 5658:1

**basic** [2] - 5559:10, 5649:12

**basis** [5] - 5544:22, 5600:16, 5605:13, 5628:19, 5637:16

**Bates** [13] - 5491:24, 5492:12, 5533:13, 5533:15, 5542:2, 5546:19, 5553:8, 5567:15, 5568:3, 5568:6, 5568:7, 5568:10

**became** [7] - 5592:9, 5594:7, 5594:16, 5598:22, 5599:24, 5600:25, 5629:11

**become** [5] - 5563:23, 5570:7, 5598:7, 5598:23, 5620:4

**bed** [1] - 5510:19

**bedroom** [1] - 5589:23

**BEFORE** [1] - 5484:9

**began** [1] - 5495:15

**beginning** [5] - 5536:10, 5592:24, 5628:13, 5670:24, 5671:11

**behalf** [9] - 5500:9, 5533:4, 5538:2, 5550:17, 5551:15, 5587:23, 5588:3, 5597:20, 5644:2

**behind** [2] - 5536:16, 5604:17

**belabor** [1] - 5570:22

**belief** [3] - 5546:8, 5610:25, 5630:23

**below** [1] - 5581:14

**benefit** [3] - 5567:6, 5603:13, 5633:22

**best** [8] - 5517:12, 5522:23, 5526:25, 5558:11, 5558:12,

5614:18, 5615:17, 5632:4

**better** [2] - 5564:18, 5564:24

**between** [11] - 5503:11, 5504:10, 5505:7, 5528:6, 5618:14, 5630:11, 5631:18, 5633:16, 5636:3, 5648:12, 5666:15

**beyond** [2] - 5547:10, 5649:5

**BIANCO** [1] - 5484:9

**Bianco** [1] - 5670:22

**bias** [6] - 5502:16, 5503:18, 5514:3, 5514:6, 5514:8, 5514:9

**bid** [1] - 5488:1

**big** [7] - 5495:5, 5495:7, 5495:10, 5590:23, 5591:1, 5665:14

**bill** [8] - 5505:4, 5531:22, 5570:5, 5570:9, 5570:11, 5599:22, 5618:4, 5618:5

**billed** [1] - 5518:1

**billion** [1] - 5599:24

**bills** [2] - 5529:19, 5583:16

**bit** [9] - 5498:20, 5562:13, 5589:22, 5592:3, 5595:2, 5598:11, 5605:18, 5647:8, 5654:7

**blacked** [2] - 5569:16, 5574:18

**blank** [1] - 5568:23

**blocked** [1] - 5572:4

**blow** [1] - 5651:15

**blown** [1] - 5534:23

**BMW** [2] - 5530:9, 5530:11

**board** [4] - 5600:12, 5611:23, 5615:7, 5629:10

**Bob** [1] - 5641:18

**bookkeeper** [1] - 5554:19

**books** [2] - 5505:19, 5506:2

**bottom** [5] - 5549:21, 5553:8, 5568:6, 5645:12, 5646:20

**bought** [2] - 5513:4, 5513:5

**box** [2] - 5576:23,

5577:5

**break** [9] - 5539:17, 5539:18, 5539:19, 5546:14, 5561:18, 5609:5, 5609:19, 5640:21, 5641:15

**Brian** [2] - 5499:4, 5499:6

**brief** [1] - 5637:17

**briefing** [2] - 5628:3, 5637:10

**briefly** [8] - 5497:11, 5574:4, 5595:9, 5622:13, 5630:4, 5637:10, 5637:18, 5639:13

**bring** [14] - 5492:25, 5493:4, 5493:19, 5503:9, 5551:22, 5552:13, 5561:24, 5569:6, 5600:5, 5608:22, 5611:8, 5630:23, 5634:9, 5655:10

**bringing** [1] - 5503:8

**broad** [1] - 5613:10

**broker** [2] - 5510:11, 5512:21

**brokered** [1] - 5512:19

**brokering** [3] - 5510:1, 5516:24, 5516:25

**Brooklyn** [1] - 5484:14

**brother** [3] - 5499:5, 5500:8, 5515:11

**Brothers** [1] - 5630:10

**brought** [2] - 5496:8, 5506:3

**Brown** [5] - 5488:16, 5488:22, 5497:9, 5497:10, 5497:18

**Brutus** [1] - 5643:20

**build** [6] - 5592:20, 5593:9, 5594:25, 5596:4, 5596:12, 5600:6

**building** [6] - 5526:21, 5591:3, 5596:15, 5596:17, 5605:1, 5605:11

**built** [4] - 5590:17, 5592:25, 5596:7, 5596:13

**burden** [7] - 5547:23, 5547:25, 5548:6, 5548:7, 5548:9, 5654:25, 5656:4

**business** [30] - 5509:18, 5589:11, 5589:17, 5589:25,

5590:2, 5590:18, 5590:21, 5590:22, 5591:4, 5592:14, 5592:18, 5594:7, 5594:23, 5598:22, 5599:13, 5605:5, 5608:12, 5608:23, 5614:24, 5616:16, 5616:21, 5618:3, 5618:8, 5618:18, 5619:12, 5620:4, 5620:7, 5620:9, 5620:23, 5630:13

**businesses** [8] - 5589:24, 5591:6, 5591:8, 5591:9, 5598:23, 5600:17, 5605:11, 5606:5

**busy** [1] - 5674:11

**buy** [5] - 5515:25, 5516:3, 5569:25

**buying** [1] - 5513:7

**BY** [31] - 5494:25, 5498:15, 5504:18, 5506:22, 5515:2, 5529:10, 5534:16, 5553:6, 5557:4, 5557:21, 5558:1, 5576:2, 5577:4, 5578:17, 5579:9, 5582:5, 5589:2, 5592:1, 5603:8, 5611:18, 5614:1, 5622:22, 5625:5, 5676:3, 5676:4, 5676:5, 5676:6, 5676:8, 5676:10, 5676:12, 5676:13

---

## C

**C-283** [1] - 5565:24, 5566:6, 5676:17

**C260** [3] - 5602:11, 5602:23, 5603:2

**C265** [2] - 5595:13, 5597:2

**C266** [3] - 5603:7, 5603:25, 5676:17

**C271** [1] - 5611:20

**C271A** [1] - 5612:6

**C283** [2] - 5492:5, 5578:18

**C313** [1] - 5490:4

**C313A** [1] - 5490:4

**C330** [1] - 5582:3

**calculated** [1] - 5649:6

**Campbell** [1] - 5655:10

**candid** [1] - 5647:22

**candidly** [1] - 5632:5

**cannot** [3] - 5534:21, 5546:22, 5610:17

**cap** [4] - 5590:5, 5590:7, 5590:10, 5590:12

**capacity** [1] - 5597:25

**capital** [1] - 5547:14

**capitalists** [1] - 5591:3

**capture** [1] - 5643:14

**captured** [1] - 5544:15

**car** [3] - 5530:7, 5530:13, 5540:19

**card** [2] - 5594:13, 5622:23

**care** [3] - 5504:22, 5607:9, 5659:15

**carefully** [1] - 5670:11

**cars** [4] - 5581:20, 5592:7, 5593:23, 5593:24

**case** [73] - 5485:6, 5485:12, 5485:13, 5485:16, 5486:2, 5486:4, 5487:10, 5487:16, 5487:22, 5488:8, 5502:12, 5503:20, 5510:22, 5511:1, 5514:4, 5517:21, 5520:3, 5526:14, 5538:14, 5538:19, 5538:22, 5539:19, 5545:16, 5547:7, 5549:7, 5549:9, 5554:5, 5560:8, 5562:23, 5573:25, 5609:10, 5615:20, 5619:7, 5620:3, 5620:15, 5622:12, 5624:6, 5626:5, 5626:17, 5626:20, 5627:7, 5628:1, 5629:23, 5630:1, 5630:23, 5635:17, 5635:18, 5635:21, 5639:14, 5640:1, 5643:19, 5643:20, 5644:4, 5644:13, 5644:19, 5644:20, 5644:24, 5645:1, 5647:7, 5647:17, 5648:25, 5653:3, 5653:14, 5653:19, 5665:18, 5665:25, 5669:13, 5669:21, 5670:7, 5673:2, 5673:15, 5673:25

**cases** [5] - 5583:23, 5599:13, 5665:16, 5665:23, 5674:2
**cash** [2] - 5523:2, 5591:7
**CAT** [1] - 5484:25
**catch** [2] - 5556:23, 5598:17
**category** [1] - 5583:1
**causing** [1] - 5649:8
**CD** [1] - 5546:20
**cease** [1] - 5600:9
**ceased** [2] - 5601:7, 5601:13
**Central** [2] - 5484:4, 5484:22
**Centrum** [1] - 5630:7
**CEO** [3] - 5615:8, 5648:17, 5648:20
**certain** [10] - 5493:11, 5517:10, 5520:16, 5526:11, 5556:22, 5583:3, 5583:14, 5584:22, 5614:19, 5633:21
**certainly** [11] - 5487:4, 5487:11, 5514:6, 5549:11, 5560:5, 5606:22, 5652:18, 5653:16, 5653:24, 5658:22, 5668:23
**certification** [5] - 5616:14, 5616:16, 5616:17, 5618:4, 5619:11
**certified** [8] - 5506:14, 5506:17, 5509:7, 5520:7, 5534:7, 5536:2, 5618:5, 5618:8
**cetera** [3] - 5573:8, 5581:8, 5583:23
**chain** [1] - 5618:7
**chance** [6] - 5489:17, 5547:1, 5568:19, 5597:14, 5642:3, 5642:8
**change** [3] - 5605:6, 5655:12, 5672:16
**changing** [1] - 5540:25
**characterize** [2] - 5636:18, 5648:24
**characterized** [1] - 5636:9
**characterizes** [1] - 5632:24
**charge** [25] - 5486:15, 5543:19, 5631:3, 5637:12, 5640:13,

5641:15, 5642:2, 5643:12, 5643:17, 5644:1, 5644:15, 5644:16, 5645:7, 5645:17, 5650:20, 5654:13, 5654:17, 5655:14, 5655:18, 5656:14, 5656:19, 5666:6, 5670:24, 5671:3
**charged** [2] - 5655:22, 5666:10
**charges** [6] - 5643:22, 5645:13, 5649:3, 5651:18, 5652:7, 5657:25
**charging** [1] - 5488:1
**chart** [6] - 5492:15, 5494:16, 5494:17, 5494:19, 5575:14, 5580:12
**charts** [2] - 5674:7, 5674:10
**check** [14] - 5507:1, 5507:4, 5507:12, 5507:13, 5544:8, 5566:21, 5568:14, 5572:7, 5574:7, 5574:19, 5593:13, 5651:3, 5665:21, 5671:20
**checks** [2] - 5507:8, 5519:10
**Chicago** [1] - 5589:10
**child** [1] - 5673:25
**chooses** [1] - 5636:18
**chose** [1] - 5630:22
**Chow's** [1] - 5581:15
**Circuit** [10] - 5485:24, 5486:5, 5486:7, 5486:12, 5643:19, 5644:15, 5644:23, 5645:3, 5653:3, 5664:8
**circumstances** [4] - 5601:21, 5602:5, 5604:17, 5631:5
**citation** [1] - 5531:18
**cite** [1] - 5644:20
**cited** [1] - 5486:11
**civil** [5] - 5630:14, 5634:9, 5665:16, 5665:18, 5665:23
**claim** [6] - 5500:19, 5516:7, 5571:2, 5629:7, 5630:13, 5634:14
**claimed** [4] - 5552:4, 5569:17, 5570:9, 5570:25

**claiming** [1] - 5540:20
**claims** [1] - 5555:21
**clarify** [3] - 5490:8, 5569:1, 5660:24
**clean** [1] - 5561:9
**clear** [22] - 5485:18, 5486:1, 5486:22, 5487:2, 5489:4, 5498:7, 5504:13, 5516:9, 5528:17, 5537:6, 5541:7, 5549:8, 5560:19, 5560:21, 5565:22, 5617:4, 5629:14, 5631:11, 5642:2, 5646:23, 5654:24, 5669:8
**clearly** [1] - 5618:25
**clerk** [1] - 5641:23
**client** [33] - 5494:20, 5498:22, 5522:3, 5544:24, 5545:8, 5545:9, 5545:11, 5554:3, 5554:14, 5555:6, 5557:12, 5561:21, 5570:4, 5570:7, 5570:13, 5574:4, 5583:4, 5619:9, 5630:19, 5631:10, 5632:6, 5632:13, 5662:16, 5662:19, 5662:20, 5662:22, 5663:8, 5666:11, 5666:13, 5666:23, 5668:14
**client's** [2] - 5557:12, 5663:6
**clients** [2] - 5509:9, 5654:9
**close** [4] - 5512:18, 5588:22, 5598:4, 5604:20
**closed** [1] - 5529:1
**closely** [2] - 5511:25, 5639:12
**closer** [1] - 5563:2
**CM** [1] - 5484:20
**CMD** [1] - 5556:6
**CMG** [17] - 5546:3, 5546:6, 5547:20, 5547:22, 5550:14, 5550:15, 5550:18, 5550:25, 5551:5, 5551:9, 5551:16, 5551:25, 5552:15, 5552:19, 5559:11, 5559:13, 5559:20
**CMG's** [2] - 5546:3, 5546:5
**coconspirator** [10] -

5488:6, 5635:10, 5635:12, 5635:19, 5635:20, 5636:2, 5636:15, 5636:19, 5636:21, 5638:6
**coconspirators** [1] - 5635:4
**colleagues** [1] - 5561:17
**colloquy** [1] - 5488:13
**combined** [1] - 5521:6
**comfortable** [4] - 5545:9, 5563:1, 5584:6, 5586:1
**coming** [9] - 5491:6, 5529:25, 5530:1, 5531:7, 5531:9, 5531:25, 5545:15, 5560:19, 5594:12
**comment** [3] - 5490:22, 5650:9, 5671:10
**comments** [4] - 5488:17, 5642:16, 5642:18, 5642:19
**commerce** [2] - 5590:19, 5635:6
**commercial** [1] - 5635:6
**commission** [1] - 5593:4
**commit** [9] - 5633:8, 5634:20, 5635:15, 5641:10, 5645:15, 5646:4, 5646:13, 5660:12, 5665:14
**commitment** [3] - 5593:20, 5596:22
**committed** [5] - 5552:9, 5639:8, 5641:10, 5661:1, 5666:17
**common** [1] - 5660:25
**communicating** [1] - 5608:7
**communication** [1] - 5517:10
**companies** [7] - 5515:13, 5519:3, 5519:14, 5589:18, 5591:1, 5591:3, 5602:2
**company** [41] - 5508:1, 5508:4, 5515:20, 5590:8, 5590:12, 5590:17, 5594:15, 5594:18, 5594:19, 5594:21, 5595:22, 5595:25, 5596:1, 5596:6,

5596:20, 5597:8, 5597:20, 5598:16, 5599:5, 5600:8, 5601:1, 5602:18, 5603:11, 5603:14, 5603:17, 5603:21, 5603:22, 5604:8, 5605:3, 5606:17, 5606:19, 5607:4, 5607:10, 5618:18, 5619:4, 5619:5, 5620:22, 5629:12, 5633:19
**company's** [1] - 5611:23
**compared** [1] - 5521:6
**complete** [5] - 5545:8, 5555:22, 5573:18, 5612:7, 5616:19
**completeness** [2] - 5573:21, 5575:3
**completes** [1] - 5626:4
**complicated** [3] - 5639:14, 5674:4
**comports** [1] - 5488:19
**computer** [1] - 5674:1
**concealed** [1] - 5653:12
**concealing** [1] - 5549:5
**conceded** [1] - 5591:24
**concern** [4] - 5551:1, 5556:15, 5563:1, 5659:12
**concerned** [6] - 5525:13, 5527:9, 5559:14, 5619:23, 5634:25, 5658:1
**concerns** [3] - 5520:17, 5560:9, 5666:8
**conclude** [5] - 5529:17, 5582:18, 5664:17, 5664:22, 5667:5
**concluded** [7] - 5503:22, 5505:3, 5514:15, 5529:12, 5613:14, 5621:3, 5675:4
**conclusion** [8] - 5522:9, 5528:21, 5528:23, 5528:25, 5529:15, 5549:3, 5559:16, 5559:22
**conduct** [3] - 5636:24, 5649:6, 5655:22

conducted [3] - 5556:5, 5586:21, 5620:7

conducting [1] - 5558:9

confer [2] - 5561:16, 5561:20

conference [6] - 5495:18, 5497:12, 5497:17, 5571:13, 5574:21, 5641:15

conferred [1] - 5673:20

confirm [12] - 5489:25, 5492:25, 5561:10, 5568:8, 5570:6, 5579:18, 5583:8, 5627:13, 5637:12, 5659:24, 5672:23, 5672:25

confirmation [1] - 5565:13

confirms [1] - 5619:8

confiscated [1] - 5517:3

conflated [1] - 5633:1

conflict [1] - 5608:14

confronted [1] - 5654:16

confuse [3] - 5487:11, 5492:8, 5629:22

confused [1] - 5550:7

confusing [5] - 5487:15, 5559:3, 5560:2, 5601:15, 5661:6

confusion [4] - 5559:2, 5560:19, 5618:21, 5659:13

connection [11] - 5500:1, 5504:20, 5505:12, 5506:2, 5510:1, 5517:20, 5517:25, 5520:23, 5553:19, 5634:8, 5670:15

Connie [1] - 5537:13

consensual [1] - 5648:12

consent [3] - 5509:10, 5509:13, 5611:21

consider [10] - 5494:20, 5519:21, 5604:20, 5640:17, 5643:9, 5644:19, 5647:10, 5669:1, 5669:4, 5669:11

considered [4] - 5532:13, 5598:5, 5599:21, 5620:8

considering [1] - 5487:13

consist [2] - 5523:23, 5524:1

consistent [3] - 5574:3, 5652:15, 5652:18

consists [1] - 5521:24

conspiracies [3] - 5630:1, 5630:22, 5633:2

conspiracy [61] - 5629:24, 5630:25, 5631:1, 5631:18, 5632:3, 5632:4, 5632:5, 5632:7, 5632:8, 5632:9, 5632:11, 5633:8, 5634:20, 5636:24, 5636:25, 5638:10, 5638:12, 5638:14, 5638:15, 5638:16, 5639:5, 5639:17, 5639:21, 5639:22, 5639:24, 5640:3, 5640:15, 5640:16, 5641:10, 5645:15, 5646:4, 5646:7, 5646:13, 5646:22, 5650:12, 5650:25, 5657:23, 5658:23, 5658:25, 5659:5, 5659:9, 5659:10, 5660:17, 5661:1, 5662:3, 5662:25, 5663:5, 5663:11, 5663:16, 5665:8, 5665:13, 5665:19, 5665:20, 5666:11, 5666:14, 5666:20, 5666:22, 5667:2, 5667:6, 5667:15

conspired [2] - 5635:14, 5660:12

CONSTANTINE [6] - 5484:6, 5627:16, 5627:18, 5627:20, 5673:13, 5673:17

Constantine [151] - 5484:19, 5492:18, 5499:19, 5499:21, 5500:20, 5502:9, 5502:15, 5502:20, 5502:22, 5503:10, 5504:7, 5504:10, 5504:19, 5504:25, 5505:11, 5509:18, 5510:5, 5510:7, 5510:15, 5510:22, 5515:19, 5515:20,

5519:4, 5519:14, 5519:20, 5525:5, 5525:6, 5526:9, 5527:14, 5527:15, 5527:16, 5528:6, 5530:2, 5532:6, 5532:11, 5532:14, 5534:2, 5537:13, 5537:20, 5538:1, 5538:3, 5538:4, 5538:9, 5538:12, 5538:13, 5538:21, 5538:23, 5540:3, 5540:12, 5541:15, 5541:16, 5541:17, 5542:6, 5542:7, 5543:11, 5544:1, 5544:4, 5544:10, 5544:13, 5544:16, 5544:18, 5544:19, 5544:22, 5545:15, 5545:19, 5545:22, 5546:1, 5546:5, 5547:19, 5548:3, 5549:18, 5550:5, 5550:6, 5550:9, 5550:17, 5551:13, 5551:15, 5552:1, 5552:9, 5552:15, 5553:14, 5554:5, 5554:12, 5554:25, 5555:3, 5556:19, 5558:22, 5559:4, 5560:20, 5563:5, 5566:12, 5567:10, 5567:15, 5570:20, 5570:24, 5571:4, 5573:5, 5573:15, 5580:5, 5585:20, 5586:11, 5586:15, 5587:24, 5588:13, 5591:11, 5591:12, 5591:17, 5592:4, 5594:8, 5596:16, 5603:15, 5603:23, 5606:15, 5606:23, 5606:24, 5607:1, 5607:10, 5607:18, 5614:16, 5616:24, 5618:5, 5619:20, 5619:21, 5620:18, 5620:21, 5622:9, 5627:5, 5628:12, 5628:16, 5628:22, 5629:16, 5630:6, 5630:8, 5630:14, 5631:8, 5633:17, 5633:20, 5634:2, 5634:6, 5634:11, 5634:15, 5645:14, 5645:18, 5648:11,

5648:13, 5648:20, 5664:13, 5664:20, 5672:24, 5673:12

Constantine's [25] - 5500:11, 5510:1, 5514:7, 5517:21, 5518:1, 5518:21, 5531:17, 5532:25, 5533:4, 5540:17, 5540:22, 5541:9, 5541:19, 5541:22, 5542:4, 5543:20, 5543:25, 5546:4, 5546:8, 5554:22, 5559:23, 5560:3, 5560:14, 5642:17, 5648:17

consult [3] - 5530:14, 5530:16, 5609:19

consulted [1] - 5551:24

Consulting [1] - 5597:4

consulting [5] - 5505:17, 5520:13, 5520:14, 5604:3, 5630:19

consumers [1] - 5590:25

contact [1] - 5639:7

contained [2] - 5545:21, 5619:13

contains [4] - 5616:18, 5623:5, 5646:5, 5672:12

contemplated [1] - 5598:10

contend [1] - 5657:9

contends [1] - 5485:21

contents [1] - 5623:12

contesting [2] - 5552:14, 5637:13

continue [8] - 5494:8, 5590:14, 5597:23, 5598:7, 5599:1, 5599:22, 5647:3

continued [5] - 5494:3, 5494:10, 5599:25, 5605:1, 5611:14

Continued [19] - 5494:24, 5501:2, 5503:23, 5513:13, 5514:16, 5535:5, 5571:14, 5572:24, 5574:22, 5575:17, 5576:1, 5611:17, 5612:24, 5613:15, 5617:6, 5621:4,

5661:7, 5676:3, 5676:9

continuing [1] - 5599:18

contract [1] - 5593:7

contradict [1] - 5541:6

contradicts [1] - 5655:8

contrary [3] - 5619:17, 5619:19

contribution [1] - 5595:24

control [1] - 5655:1

controls [1] - 5671:3

conversation [10] - 5488:16, 5488:21, 5488:23, 5493:9, 5495:15, 5497:6, 5498:1, 5526:2, 5577:13, 5583:21

conversations [4] - 5493:7, 5496:3, 5598:21, 5600:3

convey [1] - 5634:2

conviction [5] - 5486:8, 5668:16, 5669:5, 5673:2, 5673:11

convinced [1] - 5633:17

COO [1] - 5603:23

Cooper [2] - 5506:23, 5508:12

cooperated [1] - 5497:22

copies [6] - 5492:4, 5528:5, 5529:19, 5568:18, 5642:2, 5672:20

copy [16] - 5495:13, 5500:12, 5509:1, 5521:22, 5533:21, 5537:8, 5537:19, 5568:1, 5568:16, 5569:7, 5641:21, 5642:7, 5657:7, 5672:16, 5672:20

core [1] - 5596:9

Corp [1] - 5552:5

corporation [2] - 5552:5, 5554:2

correct [141] - 5492:3, 5497:7, 5497:23, 5498:10, 5499:6, 5499:17, 5499:19, 5499:23, 5499:24, 5500:1, 5500:11, 5505:6, 5505:14, 5505:15, 5505:16, 5505:20, 5506:24,

5507:2, 5507:3,
5507:5, 5507:6,
5507:7, 5507:11,
5507:12, 5507:14,
5507:17, 5508:13,
5508:14, 5509:24,
5510:12, 5510:15,
5510:24, 5511:7,
5511:10, 5511:14,
5511:15, 5511:18,
5511:20, 5512:20,
5515:10, 5516:1,
5516:5, 5516:10,
5516:11, 5516:12,
5516:15, 5516:18,
5517:15, 5517:18,
5517:21, 5518:6,
5518:15, 5519:1,
5519:4, 5519:8,
5520:6, 5520:8,
5520:10, 5523:3,
5525:4, 5525:15,
5530:7, 5531:14,
5532:15, 5537:1,
5537:22, 5537:24,
5543:12, 5551:12,
5553:15, 5553:16,
5562:8, 5562:18,
5563:9, 5563:10,
5563:20, 5563:22,
5565:25, 5567:5,
5567:11, 5567:15,
5571:1, 5576:4,
5576:7, 5576:10,
5576:14, 5576:17,
5576:18, 5578:20,
5578:25, 5580:2,
5580:14, 5580:19,
5580:25, 5581:12,
5583:23, 5584:17,
5585:5, 5585:14,
5586:16, 5587:2,
5590:9, 5595:7,
5595:8, 5595:23,
5596:21, 5597:6,
5597:7, 5597:10,
5597:14, 5597:17,
5600:18, 5600:19,
5600:22, 5601:2,
5601:5, 5602:19,
5604:12, 5604:13,
5606:18, 5607:2,
5607:12, 5607:20,
5607:24, 5607:25,
5614:6, 5614:7,
5614:10, 5614:11,
5615:18, 5625:12,
5632:19, 5633:5,
5636:8, 5638:2,
5638:3, 5641:3,
5641:5, 5646:2,

5649:25, 5672:22
**corrected** [1] -
5558:23
**correctly** [3] -
5564:21, 5639:4,
5673:14
**corresponds** [1] -
5628:21
**corroborate** [1] -
5628:15
**cost** [1] - 5598:13
**costs** [1] - 5562:16
**counsel** [2] - 5671:19,
5674:8
**counsels'** [1] -
5655:25
**count** [17] - 5539:5,
5539:10, 5633:8,
5635:8, 5636:4,
5636:7, 5636:9,
5636:17, 5636:18,
5636:23, 5637:2,
5639:19, 5639:21,
5660:22, 5664:1,
5664:23, 5665:24
**Count** [14] - 5633:7,
5634:18, 5634:22,
5635:1, 5635:3,
5636:7, 5636:14,
5637:18, 5641:3,
5645:13, 5646:15,
5659:17, 5671:25
**Counts** [5] - 5627:8,
5628:24, 5641:7,
5641:12, 5645:17
**counts** [13] - 5628:9,
5628:18, 5629:18,
5632:13, 5638:25,
5645:8, 5645:23,
5646:24, 5660:14,
5663:6, 5663:7,
5665:3, 5665:12
**couple** [6] - 5519:10,
5529:23, 5534:18,
5564:17, 5592:16,
5655:6
**course** [8] - 5497:25,
5578:22, 5628:19,
5629:1, 5632:14,
5633:7, 5660:1,
5662:23
**court** [32] - 5486:12,
5486:17, 5489:10,
5490:18, 5500:18,
5504:1, 5515:1,
5518:8, 5519:17,
5538:4, 5557:23,
5572:1, 5575:1,
5586:10, 5591:14,
5617:3, 5622:1,

5628:8, 5628:22,
5628:25, 5629:23,
5630:4, 5631:16,
5634:23, 5635:9,
5635:17, 5637:1,
5640:20, 5641:7,
5644:8, 5664:16
**COURT** [242] - 5484:1,
5485:5, 5489:6,
5489:8, 5489:19,
5489:22, 5490:5,
5490:7, 5490:9,
5490:25, 5491:5,
5491:9, 5491:18,
5492:6, 5492:14,
5492:22, 5492:24,
5493:3, 5493:19,
5494:5, 5494:13,
5498:12, 5501:1,
5503:1, 5503:5,
5503:14, 5503:21,
5504:2, 5506:16,
5506:19, 5513:12,
5514:6, 5514:12,
5529:7, 5534:8,
5534:13, 5536:3,
5536:6, 5537:3,
5538:7, 5539:18,
5539:22, 5539:24,
5540:8, 5540:15,
5542:11, 5542:14,
5542:20, 5543:23,
5544:17, 5545:14,
5545:25, 5546:13,
5546:16, 5546:23,
5547:4, 5547:6,
5547:25, 5548:14,
5549:8, 5550:12,
5550:21, 5550:25,
5551:17, 5551:22,
5552:8, 5552:17,
5552:20, 5552:23,
5553:4, 5556:11,
5556:21, 5556:25,
5557:3, 5558:13,
5558:24, 5560:24,
5561:18, 5561:23,
5562:2, 5562:13,
5565:21, 5566:1,
5566:4, 5567:22,
5567:24, 5568:12,
5568:15, 5569:5,
5569:9, 5569:14,
5569:19, 5570:13,
5571:9, 5571:11,
5572:2, 5572:11,
5572:14, 5573:21,
5574:16, 5574:19,
5575:2, 5575:5,
5575:8, 5575:10,
5575:13, 5577:2,

5578:13, 5579:7,
5588:7, 5588:9,
5588:11, 5588:18,
5588:22, 5591:21,
5591:24, 5603:2,
5609:4, 5609:13,
5609:16, 5609:24,
5610:6, 5610:10,
5610:18, 5610:20,
5610:25, 5611:6,
5612:22, 5613:2,
5616:6, 5616:9,
5616:12, 5616:25,
5617:5, 5619:10,
5619:25, 5620:11,
5620:25, 5622:2,
5622:11, 5625:25,
5626:2, 5626:4,
5626:24, 5627:5,
5627:17, 5627:19,
5627:21, 5627:24,
5631:23, 5632:16,
5636:7, 5636:10,
5637:6, 5637:9,
5638:7, 5639:13,
5639:16, 5640:5,
5640:14, 5640:21,
5641:14, 5641:22,
5642:1, 5642:8,
5642:11, 5642:21,
5642:24, 5643:2,
5643:14, 5644:6,
5644:10, 5645:5,
5645:7, 5645:11,
5645:25, 5646:3,
5646:11, 5646:20,
5646:22, 5647:2,
5647:4, 5648:1,
5648:4, 5648:23,
5649:18, 5649:21,
5649:23, 5650:7,
5650:13, 5650:15,
5650:22, 5650:25,
5651:3, 5651:5,
5651:8, 5651:11,
5651:15, 5651:19,
5651:22, 5652:16,
5653:5, 5653:22,
5654:2, 5654:18,
5655:24, 5656:15,
5656:22, 5656:24,
5657:5, 5657:12,
5657:14, 5657:17,
5657:21, 5658:10,
5658:16, 5659:19,
5661:3, 5662:1,
5663:1, 5663:13,
5665:2, 5665:6,
5666:7, 5666:24,
5668:4, 5668:9,
5669:7, 5669:20,

5670:3, 5670:17,
5670:20, 5671:5,
5672:2, 5672:5,
5672:19, 5673:16,
5673:19, 5673:23,
5674:21, 5675:1,
5675:3
**Court** [34] - 5484:4,
5484:20, 5485:1,
5541:15, 5543:5,
5543:11, 5544:25,
5545:1, 5550:1,
5551:7, 5551:20,
5552:16, 5572:21,
5573:12, 5643:9,
5646:10, 5647:6,
5647:10, 5647:21,
5647:23, 5652:24,
5655:13, 5656:13,
5657:24, 5660:6,
5667:19, 5667:24,
5668:22, 5668:25,
5669:11, 5670:8,
5673:6, 5673:11,
5673:22
**court's** [2] - 5488:15,
5488:19
**Court's** [2] - 5650:20,
5652:6, 5658:24
**Courthouse** [1] -
5484:21
**courtroom** [6] -
5493:2, 5539:21,
5552:22, 5562:1,
5609:12, 5610:24
**courts** [2] - 5634:8,
5663:17
**cover** [10] - 5544:11,
5545:4, 5561:14,
5564:9, 5571:3,
5573:22, 5574:16,
5575:5, 5575:8,
5575:13
**CR** [1] - 5612:11
**create** [2] - 5596:8,
5659:12
**created** [7] - 5511:3,
5624:5, 5624:11,
5624:25, 5625:10,
5625:15, 5629:6
**creates** [1] - 5667:9
**creation** [8] - 5623:16,
5623:20, 5623:22,
5624:3, 5624:4,
5624:21, 5625:16,
5659:14
**credibility** [2] -
5487:1, 5671:13
**credit** [2] - 5594:13,
5639:1

**crime** [4] - 5635:15, 5639:7, 5647:18, 5648:10
**criminal** [3] - 5627:7, 5630:15, 5665:25
**Crisalli** [2] - 5609:18, 5622:14
**CRISALLI** [2] - 5622:16, 5676:11
**criticism** [1] - 5645:10
**Cromwell** [1] - 5496:16
**cross** [9] - 5498:12, 5578:23, 5581:19, 5582:16, 5609:22, 5616:6, 5616:7, 5618:22, 5643:6
**CROSS** [7] - 5498:14, 5576:1, 5577:3, 5625:4, 5676:4, 5676:5, 5676:12
**cross-examination** [6] - 5498:12, 5578:23, 5581:19, 5582:16, 5616:6, 5643:6
**CROSS- EXAMINATION** [7] - 5498:14, 5576:1, 5577:3, 5625:4, 5676:4, 5676:5, 5676:12
**cross-examine** [1] - 5618:22
**CSR** [1] - 5484:20
**Cup** [3] - 5569:25, 5570:6, 5577:8
**curious** [1] - 5496:22
**current** [4] - 5633:12, 5637:21, 5638:5, 5644:22
**CURRIE** [1] - 5484:12
**custodial** [1] - 5618:12
**custody** [3] - 5517:18, 5517:19, 5517:20
**customers** [1] - 5599:25

**D**

**D'Ambrosio** [9] - 5511:25, 5512:8, 5512:9, 5517:7, 5517:9, 5541:2, 5608:20, 5610:10, 5610:21
**daily** [1] - 5600:16
**damages** [2] - 5517:13, 5526:13
**Daniel** [3] - 5588:13,

5588:20, 5612:1
**DANIEL** [4] - 5588:15, 5611:12, 5676:7, 5676:9
**data** [6] - 5623:15, 5623:17, 5623:18, 5623:19
**date** [20] - 5532:9, 5555:11, 5580:9, 5620:2, 5623:16, 5623:20, 5623:21, 5623:22, 5624:3, 5624:4, 5624:8, 5624:11, 5624:14, 5624:16, 5624:17, 5624:19, 5624:21, 5624:22
**dates** [2] - 5645:20, 5646:1
**day's** [1] - 5593:10
**days** [3] - 5564:19, 5655:7, 5660:15
**deadlocked** [1] - 5662:11
**deal** [7] - 5510:1, 5515:15, 5528:4, 5618:14, 5650:10, 5652:8, 5665:20
**dealing** [4] - 5491:10, 5557:9, 5612:14
**deals** [1] - 5509:18
**debt** [1] - 5517:13
**deceive** [1] - 5649:7
**December** [1] - 5633:16
**deceptive** [1] - 5648:19
**decide** [7] - 5653:22, 5655:3, 5663:5, 5673:5, 5673:8, 5673:11, 5673:14
**decided** [4] - 5631:2, 5634:13, 5634:14, 5648:18
**decision** [12] - 5485:25, 5486:1, 5486:11, 5486:15, 5619:6, 5627:1, 5627:6, 5627:10, 5627:17, 5640:12, 5640:19, 5645:3
**decisions** [1] - 5634:1
**declaration** [9] - 5500:5, 5500:10, 5500:12, 5500:14, 5502:20, 5502:23, 5502:24, 5586:10, 5636:2
**declined** [2] - 5489:5, 5498:8

**declining** [1] - 5493:12
**deep** [1] - 5644:2
**defend** [3] - 5615:1, 5615:2
**DEFENDANT** [5] - 5627:16, 5627:18, 5627:20, 5673:13, 5673:17
**Defendant** [2] - 5484:17, 5484:19
**defendant** [28] - 5485:20, 5486:5, 5488:5, 5537:7, 5627:1, 5627:7, 5627:8, 5627:11, 5627:12, 5629:2, 5633:20, 5642:23, 5643:21, 5644:1, 5644:4, 5644:18, 5647:11, 5647:12, 5647:13, 5647:15, 5649:4, 5649:5, 5649:24, 5650:1, 5658:2, 5658:21, 5673:4, 5673:5
**defendant's** [4] - 5560:15, 5643:6, 5643:13, 5644:25
**Defendant's** [2] - 5566:6, 5676:17
**defendants** [10] - 5489:14, 5494:21, 5537:5, 5540:20, 5633:17, 5645:13, 5645:18, 5659:4, 5662:19, 5665:13
**Defendants** [1] - 5484:7
**defendants'** [3] - 5597:2, 5657:8, 5657:15
**defense** [5] - 5487:9, 5533:5, 5542:2, 5546:22, 5547:21, 5548:9, 5548:10, 5563:12, 5566:5, 5637:12, 5655:21, 5655:24, 5671:19
**Defense** [5] - 5484:16, 5494:2, 5603:7, 5611:13, 5676:17
**defer** [3] - 5553:24, 5627:23, 5651:17
**define** [2] - 5623:17, 5670:10
**defined** [1] - 5652:3
**definitely** [1] - 5572:10
**definition** [3] - 5652:2,

5652:13, 5652:19
**defraud** [8] - 5633:12, 5633:15, 5647:7, 5647:13, 5647:14, 5647:16, 5647:19, 5649:14
**defrauded** [1] - 5634:15
**delay** [1] - 5643:10
**delete** [1] - 5657:9
**deliberation** [1] - 5651:23
**deliberations** [2] - 5663:22, 5674:16
**delivered** [1] - 5587:14
**demeanor** [2] - 5671:11, 5671:13
**demise** [1] - 5599:24
**demonstrate** [1] - 5641:9
**denying** [1] - 5509:14
**department** [2] - 5515:11, 5553:24
**deposit** [15] - 5531:17, 5532:16, 5533:3, 5534:2, 5535:2, 5535:4, 5536:11, 5536:13, 5536:14, 5536:21, 5565:4, 5565:6, 5579:11, 5580:4, 5580:9
**deposited** [1] - 5552:19
**describe** [1] - 5646:22
**described** [1] - 5597:25
**describes** [1] - 5623:19
**describing** [1] - 5646:23
**description** [2] - 5634:22, 5637:22
**desk** [1] - 5608:21
**detail** [4] - 5496:5, 5523:9, 5556:12, 5563:3
**detailed** [2] - 5536:16, 5536:20
**details** [3] - 5493:8, 5503:13, 5512:3
**determination** [9] - 5528:1, 5528:3, 5528:15, 5528:17, 5528:24, 5555:23, 5583:2, 5662:24, 5663:1
**determine** [6] - 5527:23, 5529:11, 5558:5, 5561:5,

5667:4, 5667:11
**determines** [1] - 5669:10
**determining** [1] - 5533:18
**develop** [3] - 5589:18, 5594:22, 5599:1
**developing** [1] - 5599:2
**development** [2] - 5598:14, 5599:10
**Developments** [1] - 5645:21
**developments** [1] - 5646:14
**Devin** [2] - 5497:10, 5497:18
**DeVries** [3] - 5564:12, 5564:15, 5564:16
**difference** [1] - 5505:7
**different** [15] - 5485:24, 5488:2, 5488:7, 5506:10, 5514:7, 5542:16, 5544:7, 5583:15, 5591:13, 5593:25, 5599:6, 5600:4, 5605:23, 5606:5, 5671:2
**difficult** [1] - 5570:16
**diligently** [1] - 5511:2
**direct** [13] - 5488:20, 5494:7, 5496:1, 5502:5, 5503:8, 5523:1, 5530:21, 5540:2, 5562:4, 5578:10, 5578:23, 5579:10, 5581:5
**DIRECT** [8] - 5494:24, 5589:1, 5611:17, 5622:21, 5676:3, 5676:8, 5676:9, 5676:11
**directing** [1] - 5554:10
**direction** [1] - 5488:19
**directly** [5] - 5506:6, 5555:5, 5578:3, 5583:15, 5655:22
**directors** [1] - 5629:10
**disadvantage** [1] - 5666:25
**disagree** [1] - 5514:8
**disagreement** [4] - 5599:14, 5601:11, 5662:4, 5674:16
**disavowed** [3] - 5629:7, 5633:22
**disavowing** [1] - 5629:3
**disbelieve** [1] - 5563:5

discuss [6] - 5539:16, 5539:19, 5545:18, 5609:10, 5626:20, 5674:5
discussed [8] - 5490:18, 5493:5, 5544:12, 5547:2, 5577:14, 5579:24, 5613:2, 5627:13
discussing [1] - 5671:6
Discussion [9] - 5489:21, 5502:1, 5503:22, 5514:1, 5514:15, 5613:1, 5613:14, 5618:1, 5621:3
discussion [11] - 5490:11, 5495:23, 5497:20, 5544:16, 5577:10, 5579:7, 5579:13, 5583:17, 5603:14, 5616:25, 5666:9
discussions [7] - 5528:25, 5580:5, 5583:18, 5587:8, 5587:11, 5596:3, 5596:10
disk [1] - 5623:2, 5623:4, 5623:5
dismiss [3] - 5628:7, 5628:24, 5632:13
dismissal [2] - 5631:4, 5634:24
dismissed [2] - 5628:18, 5636:5
display [1] - 5533:6
dispute [5] - 5509:25, 5510:4, 5510:19, 5516:23, 5667:18
disregard [1] - 5529:7
DISTRICT [3] - 5484:1, 5484:1, 5484:10
district [4] - 5639:2, 5639:23, 5644:8
District [8] - 5484:4, 5484:21, 5493:8, 5635:7, 5637:25, 5638:20, 5640:4, 5643:18
diversion [4] - 5542:9, 5629:20, 5648:25, 5653:23
diversions [2] - 5648:5, 5652:10
divert [1] - 5629:1
diverted [6] - 5633:21, 5638:24, 5647:14, 5648:9, 5648:10,

5653:16
diverting [3] - 5629:13, 5647:9, 5647:17
divided [1] - 5662:19
docket [2] - 5672:6, 5672:20
docketed [3] - 5672:2, 5672:3, 5672:4
document [44] - 5495:13, 5521:7, 5522:13, 5523:6, 5530:23, 5531:6, 5532:4, 5539:12, 5548:8, 5548:10, 5551:5, 5568:15, 5569:5, 5570:18, 5570:23, 5572:12, 5573:9, 5577:24, 5577:25, 5578:24, 5579:23, 5580:13, 5582:6, 5595:18, 5597:22, 5599:8, 5601:25, 5602:4, 5602:13, 5602:16, 5604:10, 5606:10, 5606:13, 5610:14, 5612:4, 5612:7, 5612:10, 5612:14, 5614:8, 5614:13, 5616:2, 5616:3, 5641:20
documentation [2] - 5580:6, 5582:8
documented [1] - 5522:22
documents [34] - 5515:5, 5515:14, 5515:18, 5523:4, 5523:15, 5527:23, 5528:8, 5529:20, 5541:5, 5541:6, 5543:3, 5543:9, 5544:18, 5545:1, 5547:1, 5549:12, 5549:13, 5549:18, 5552:24, 5553:9, 5564:5, 5568:3, 5568:8, 5568:10, 5569:3, 5577:6, 5579:5, 5581:23, 5583:4, 5587:16, 5610:13, 5616:18, 5617:1, 5619:1
Doe [1] - 5637:24
Doe's [1] - 5635:6
dollar [5] - 5556:1, 5586:15, 5590:12, 5669:13, 5669:21
dollars [11] - 5502:22,

5503:2, 5503:10, 5504:25, 5505:8, 5563:3, 5586:12, 5598:13, 5598:19, 5603:17, 5605:10
Dominick [1] - 5484:20
DomTursi@email. com [1] - 5484:23
done [21] - 5485:7, 5488:17, 5499:18, 5502:7, 5502:14, 5508:10, 5517:24, 5519:13, 5528:9, 5548:22, 5553:2, 5556:6, 5573:8, 5599:17, 5607:23, 5620:24, 5627:14, 5630:17, 5660:18, 5663:11, 5674:19
done" [1] - 5581:9
door [1] - 5503:9
double [2] - 5574:19, 5671:20
double-check [2] - 5574:19, 5671:20
doubt [1] - 5649:5
down [16] - 5490:17, 5490:21, 5492:9, 5516:10, 5520:16, 5522:2, 5529:21, 5562:13, 5581:14, 5585:20, 5588:9, 5606:8, 5608:18, 5616:9, 5626:2, 5662:7
downsides [1] - 5659:19
draft [1] - 5544:3
drafts [1] - 5545:21
draw [2] - 5559:16, 5653:20
driver [1] - 5540:19
Dude [1] - 5581:14
due [1] - 5574:1
duly [4] - 5494:3, 5588:16, 5611:14, 5622:17
dump [1] - 5599:19
duration [1] - 5599:10
during [17] - 5485:13, 5488:23, 5497:25, 5543:21, 5546:13, 5547:7, 5549:12, 5578:22, 5582:16, 5590:4, 5638:22, 5653:20, 5654:7, 5671:10, 5671:14, 5674:9, 5674:16

E

e-mail [33] - 5537:8, 5537:19, 5537:22, 5537:23, 5564:2, 5564:3, 5564:9, 5564:10, 5564:13, 5564:16, 5565:2, 5565:9, 5565:14, 5566:8, 5571:3, 5573:3, 5573:5, 5573:22, 5574:16, 5575:6, 5575:8, 5575:13, 5576:9, 5579:17, 5580:11, 5580:16, 5580:21, 5581:2, 5581:4, 5581:10, 5585:4, 5585:6, 5585:9
e-mails [11] - 5563:11, 5563:18, 5563:23, 5563:25, 5565:23, 5584:11, 5584:20, 5585:12, 5585:13, 5586:6, 5608:5
e-tailers [1] - 5590:23
early [1] - 5590:20
easier [1] - 5620:11
easily [1] - 5664:17
EASTERN [1] - 5484:1
Eastern [3] - 5635:6, 5637:25, 5638:19, 5660:3
easy [1] - 5559:5
ECF [1] - 5672:16
Eclipse [4] - 5509:22, 5510:2, 5510:25
ed [1] - 5672:4
Edrozo [4] - 5554:19, 5558:19, 5578:2, 5608:20
effect [2] - 5502:24, 5647:11
effectively [3] - 5590:23, 5605:9, 5606:6
effort [2] - 5541:3, 5561:5
ego [1] - 5542:5
eight [4] - 5555:14, 5606:5, 5607:19, 5672:6
Eight [1] - 5671:25
either [19] - 5504:14, 5512:10, 5518:23, 5525:3, 5526:12, 5539:16, 5550:4, 5564:13, 5592:17, 5601:12, 5608:20, 5614:20, 5629:24,

5614:19, 5640:9, 5641:9, 5663:8, 5663:9, 5667:20
electronically [1] - 5544:9
element [5] - 5650:2, 5664:1, 5664:3, 5664:4, 5664:5
elements [1] - 5636:12, 5645:8
email [7] - 5512:3, 5533:21, 5534:4, 5576:10, 5618:6, 5620:8, 5628:21
emailed [1] - 5672:14
emails [15] - 5490:12, 5490:15, 5491:1, 5491:6, 5528:5, 5531:10, 5616:18, 5618:8, 5618:10, 5618:17, 5619:11, 5619:13, 5619:25, 5620:4
employed [2] - 5497:13, 5590:8
End [2] - 5571:13, 5574:21
end [8] - 5497:4, 5590:24, 5609:7, 5628:13, 5647:24, 5648:13, 5665:1, 5671:24
ended [3] - 5590:3, 5606:8, 5632:6
endurance [1] - 5594:2
engaged [4] - 5505:19, 5506:1, 5506:7, 5522:4
engagement [15] - 5507:19, 5508:10, 5508:11, 5509:5, 5509:13, 5520:11, 5520:12, 5520:13, 5520:15, 5529:3, 5545:9, 5553:22, 5583:11, 5584:23, 5584:24
engagements [3] - 5498:21, 5502:15, 5519:19
ensued [12] - 5485:3, 5493:23, 5502:1, 5504:1, 5514:1, 5515:1, 5610:4, 5611:9, 5613:1, 5618:1, 5622:1, 5626:22
ensure [1] - 5512:6
ensuring [1] - 5515:17

**entailed** [1] - 5646:7
**enterprise** [1] - 5652:23
**enters** [2] - 5493:2, 5561:25
**entertainment** [2] - 5573:7, 5581:8
**entire** [2] - 5625:20, 5669:18
**entirely** [1] - 5488:7
**entirety** [1] - 5576:16
**entities** [1] - 5515:18
**entity** [5] - 5511:9, 5511:13, 5515:24, 5516:3, 5542:5
**entrepreneur** [1] - 5591:2
**entrepreneurial** [1] - 5591:8
**entrepreneurs** [2] - 5592:7, 5594:22
**entries** [1] - 5572:5
**entry** [3] - 5532:8, 5532:9, 5532:18
**environment** [1] - 5596:8
**envisioning** [1] - 5658:19
**equally** [2] - 5654:14, 5655:17
**equity** [2] - 5591:7, 5598:20
**error** [3] - 5488:25, 5498:3, 5558:22
**escrow** [1] - 5619:4
**especially** [1] - 5502:3
**ESQ** [5] - 5484:14, 5484:15, 5484:16, 5484:18, 5484:18
**essence** [2] - 5647:9, 5664:11
**establish** [8] - 5503:11, 5514:3, 5548:1, 5558:2, 5560:11, 5560:12, 5640:2, 5649:4
**estate** [1] - 5554:2
**estimated** [2] - 5598:12, 5598:19
**estimates** [1] - 5626:12
**et** [3] - 5573:8, 5581:8, 5583:23
**Ethel** [1] - 5638:21
**Eufora** [125] - 5505:13, 5505:16, 5505:19, 5505:20, 5506:1, 5506:2, 5506:5, 5506:6, 5506:11, 5507:1, 5507:5,

5507:13, 5507:20, 5507:25, 5518:22, 5521:7, 5523:11, 5526:21, 5526:22, 5527:5, 5540:4, 5540:9, 5540:11, 5540:24, 5542:5, 5542:10, 5542:16, 5542:23, 5543:21, 5544:21, 5545:3, 5545:5, 5545:17, 5545:20, 5546:7, 5547:17, 5547:20, 5548:3, 5549:13, 5549:19, 5551:14, 5554:20, 5555:1, 5555:10, 5558:13, 5558:15, 5558:20, 5559:3, 5560:12, 5560:20, 5561:6, 5578:1, 5594:8, 5594:11, 5594:16, 5595:6, 5596:5, 5596:9, 5597:5, 5597:12, 5597:20, 5597:23, 5598:7, 5600:10, 5600:11, 5600:16, 5600:21, 5601:8, 5601:19, 5601:23, 5602:2, 5602:3, 5602:9, 5604:3, 5604:15, 5605:1, 5605:13, 5605:16, 5606:23, 5607:5, 5607:19, 5611:22, 5614:5, 5614:15, 5629:3, 5631:6, 5632:3, 5632:7, 5633:10, 5633:18, 5633:23, 5634:4, 5634:14, 5634:21, 5638:14, 5645:21, 5645:23, 5646:1, 5646:9, 5646:14, 5646:16, 5646:24, 5648:20, 5652:10, 5653:12, 5653:13, 5654:10, 5658:6, 5658:24, 5660:13, 5660:25, 5661:1, 5662:3, 5662:7, 5662:18, 5663:5, 5664:25, 5665:8, 5666:9, 5666:15, 5667:8, 5667:15, 5669:16
**evaluate** [1] - 5541:25
**evaluated** [1] - 5643:6
**Evans** [4] - 5515:8, 5545:5, 5545:7, 5554:17

**evasive** [1] - 5671:16
**evening** [1] - 5643:11
**event** [2] - 5491:13, 5634:10
**eventually** [1] - 5599:24
**evidence** [59] - 5486:7, 5487:2, 5506:14, 5506:21, 5533:5, 5534:15, 5536:8, 5542:8, 5543:6, 5543:7, 5549:15, 5550:4, 5550:8, 5566:7, 5567:19, 5570:8, 5572:3, 5572:12, 5572:19, 5575:16, 5595:12, 5602:24, 5603:2, 5603:7, 5607:15, 5611:20, 5611:21, 5623:2, 5626:5, 5628:11, 5628:14, 5628:16, 5629:4, 5630:6, 5630:8, 5631:11, 5631:17, 5633:24, 5635:11, 5635:16, 5636:1, 5636:25, 5652:8, 5655:11, 5662:16, 5664:12, 5667:23, 5668:23, 5669:2, 5669:9, 5674:15, 5676:16, 5676:16, 5676:17, 5676:18, 5676:19, 5676:20, 5676:21
**evidenced** [1] - 5648:11
**evidentiary** [1] - 5628:1
**exact** [3] - 5569:7, 5592:10, 5594:11
**exactly** [7] - 5486:8, 5522:12, 5538:16, 5592:5, 5606:1, 5608:6, 5625:17
**examination** [8] - 5494:8, 5494:12, 5502:5, 5578:23, 5581:19, 5582:16, 5616:6, 5643:6
**EXAMINATION** [17] - 5494:24, 5498:14, 5576:1, 5577:3, 5578:16, 5589:1, 5611:17, 5622:21, 5625:4, 5676:3, 5676:4, 5676:5, 5676:6, 5676:8, 5676:9, 5676:11,

5676:12
**examine** [2] - 5586:4, 5618:22
**examined** [2] - 5588:17, 5622:18
**example** [8] - 5496:1, 5498:24, 5499:21, 5554:9, 5564:2, 5576:22, 5660:11, 5665:6
**except** [1] - 5669:8
**excerpt** [1] - 5618:24
**exchange** [4] - 5633:18, 5648:14, 5674:15, 5674:20
**exciting** [1] - 5590:25
**excluded** [4] - 5562:19, 5565:10, 5565:17, 5565:18
**excuse** [2] - 5636:8, 5648:14
**excused** [2] - 5539:23, 5616:11
**exhaustive** [2] - 5555:22, 5556:2
**Exhibit** [35] - 5490:4, 5492:22, 5494:15, 5500:24, 5506:20, 5508:15, 5521:8, 5530:22, 5531:1, 5532:9, 5532:20, 5534:6, 5534:13, 5534:15, 5536:2, 5536:7, 5566:6, 5567:14, 5572:18, 5575:15, 5579:24, 5580:21, 5597:2, 5597:13, 5603:6, 5603:7, 5603:25, 5623:1, 5676:15, 5676:16, 5676:17, 5676:17, 5676:18, 5676:19, 5676:20
**exhibit** [12] - 5492:3, 5492:4, 5492:5, 5492:8, 5492:9, 5494:13, 5494:20, 5495:14, 5572:16, 5597:16, 5648:17, 5674:13
**exhibits** [5] - 5489:11, 5490:1, 5506:19, 5578:15, 5674:14
**exist** [5] - 5551:8, 5551:17, 5636:25, 5659:13, 5659:14
**existed** [1] - 5585:2
**existing** [1] - 5630:9
**exists** [2] - 5639:11, 5669:20

**exits** [1] - 5539:20
**expand** [1] - 5598:7
**expanding** [1] - 5598:9
**expansion** [1] - 5664:18
**expect** [4] - 5502:18, 5540:6, 5544:6, 5670:22
**expecting** [1] - 5622:5
**expenditure** [3] - 5577:11, 5582:9, 5614:25
**expenditures** [10] - 5488:24, 5495:4, 5495:24, 5496:13, 5498:2, 5582:19, 5583:1, 5584:10, 5585:9, 5614:15
**expense** [3] - 5570:19, 5576:17, 5615:14
**expenses** [23] - 5495:17, 5527:5, 5527:25, 5562:7, 5562:17, 5567:7, 5567:11, 5567:14, 5569:15, 5569:17, 5569:20, 5570:24, 5573:10, 5573:12, 5576:6, 5576:14, 5577:15, 5580:17, 5580:22, 5581:11, 5581:20, 5605:22, 5652:24
**expert** [2] - 5505:17, 5551:24
**explain** [4] - 5553:12, 5570:14, 5573:3, 5601:21
**explained** [1] - 5647:6
**explains** [1] - 5574:17
**explanation** [5] - 5549:10, 5549:16, 5559:25, 5560:15, 5655:21
**explanations** [1] - 5584:5
**Express** [1] - 5570:5
**extension** [1] - 5623:11
**extensive** [2] - 5495:11, 5586:21
**extent** [19] - 5486:22, 5540:19, 5545:13, 5547:20, 5549:18, 5559:10, 5559:11, 5561:4, 5586:20, 5636:22, 5639:11, 5641:7, 5652:16, 5653:10, 5653:13,

5654:11, 5659:24, 5663:23, 5669:12
**extortion** [1] - 5487:24
**extra** [1] - 5660:15
**extract** [3] - 5488:17, 5491:23, 5492:3

## F

**F.2d** [1] - 5486:12
**F.3d** [1] - 5643:20
**fact** [40] - 5485:22, 5500:22, 5503:9, 5516:17, 5540:18, 5542:7, 5542:25, 5549:11, 5549:17, 5553:18, 5556:4, 5559:17, 5560:2, 5569:13, 5577:14, 5578:9, 5579:3, 5582:18, 5586:14, 5600:9, 5618:14, 5619:5, 5619:21, 5620:21, 5623:10, 5629:9, 5629:14, 5631:19, 5634:7, 5635:13, 5647:11, 5647:18, 5648:19, 5649:23, 5650:1, 5652:20, 5654:13, 5660:23, 5667:2
**factor** [1] - 5669:4
**facts** [9] - 5558:3, 5558:4, 5629:19, 5629:25, 5630:24, 5631:14, 5640:2, 5662:21, 5667:19
**factual** [1] - 5628:19
**fail** [1] - 5623:6
**failure** [3] - 5655:20, 5656:8, 5656:10
**fair** [19] - 5489:7, 5497:25, 5498:4, 5499:16, 5509:17, 5515:14, 5515:16, 5515:17, 5518:2, 5519:13, 5519:20, 5527:7, 5555:8, 5578:22, 5586:20, 5644:3, 5645:25, 5648:15, 5669:7
**fairly** [3] - 5508:10, 5549:8, 5614:19
**faith** [3] - 5571:6, 5657:5, 5670:12
**Falcon** [35] - 5489:1, 5498:3, 5511:3, 5511:5, 5511:6, 5511:7, 5511:9, 5511:12, 5511:17, 5512:13, 5512:15,

5512:19, 5515:4, 5515:19, 5515:23, 5515:25, 5516:3, 5516:4, 5516:7, 5516:14, 5516:15, 5516:17, 5516:21, 5516:22, 5516:24, 5517:18, 5526:14, 5526:16, 5618:20, 5619:2, 5619:24
**fall** [1] - 5663:7
**false** [2] - 5486:24, 5487:9
**familiar** [8] - 5508:9, 5509:4, 5509:5, 5515:12, 5553:1, 5553:10, 5563:24, 5628:23
**family** [1] - 5516:19
**far** [6] - 5539:5, 5548:16, 5565:2, 5620:14, 5622:25, 5674:6
**Fargo** [2] - 5537:11, 5570:11
**fashion** [1] - 5647:20
**fast** [1] - 5489:13
**fault** [1] - 5562:6
**favor** [2] - 5593:15, 5629:25
**favorable** [1] - 5628:2
**Fax** [1] - 5484:22
**FBI** [1] - 5622:24
**February** [3] - 5507:1, 5607:23, 5635:3
**federal** [3] - 5517:15, 5517:17, 5538:4
**Federal** [2] - 5484:21, 5545:6
**fee** [1] - 5587:1
**fees** [4] - 5562:16, 5562:22, 5583:14, 5583:22
**felt** [8] - 5526:16, 5527:16, 5556:4, 5583:3, 5583:16, 5603:24, 5606:2, 5608:14
**few** [7] - 5491:14, 5530:18, 5540:6, 5554:11, 5574:9, 5580:15, 5584:7
**figure** [1] - 5492:6
**file** [36] - 5502:20, 5502:23, 5502:24, 5509:6, 5509:9, 5509:10, 5529:1, 5533:22, 5539:13, 5540:13, 5544:13, 5556:20, 5556:22,

5564:18, 5564:24, 5565:16, 5623:5, 5623:7, 5623:8, 5623:12, 5623:13, 5623:15, 5623:22, 5624:1, 5624:6, 5624:6, 5624:11, 5624:17, 5624:19, 5624:21, 5624:23, 5624:25, 5625:10, 5625:15
**filed** [39] - 5499:21, 5500:5, 5500:10, 5518:8, 5541:10, 5541:12, 5541:13, 5542:7, 5542:25, 5543:1, 5543:6, 5543:7, 5543:16, 5546:12, 5548:13, 5548:16, 5549:12, 5550:4, 5550:10, 5550:16, 5550:18, 5551:25, 5555:13, 5555:14, 5555:16, 5555:17, 5555:18, 5556:7, 5556:13, 5556:17, 5556:18, 5557:5, 5557:14, 5557:15, 5557:17, 5557:25, 5558:6, 5558:8, 5560:14
**files** [1] - 5641:18
**filing** [5] - 5500:14, 5515:14, 5549:18, 5558:23, 5560:13
**filings** [1] - 5509:11
**final** [7] - 5556:13, 5556:16, 5570:1, 5640:19, 5670:6, 5672:16, 5672:19
**finalize** [1] - 5674:7
**finally** [2] - 5567:3, 5577:16
**financial** [4] - 5508:1, 5508:17, 5508:23, 5509:7
**findings** [4] - 5497:22, 5498:1, 5586:2, 5663:21
**fine** [5] - 5493:22, 5610:17, 5618:3, 5674:21, 5674:22
**finish** [1] - 5584:23
**finished** [3] - 5520:12, 5520:21, 5584:24
**fir** [1] - 5502:15
**firm** [33] - 5496:11, 5496:17, 5496:20, 5499:3, 5499:8, 5499:15, 5500:4,

5500:9, 5504:20, 5505:18, 5506:7, 5506:24, 5507:1, 5507:4, 5507:13, 5508:10, 5508:11, 5508:12, 5509:12, 5515:4, 5515:7, 5515:8, 5515:14, 5518:3, 5518:4, 5521:14, 5542:3, 5543:10, 5553:16, 5553:23, 5557:8, 5615:24, 5616:1
**firms** [2] - 5521:12, 5583:16
**first** [28] - 5485:20, 5486:4, 5492:25, 5529:24, 5530:18, 5536:17, 5541:10, 5543:15, 5544:8, 5550:22, 5553:12, 5574:4, 5574:9, 5584:19, 5587:17, 5588:16, 5589:25, 5592:4, 5592:15, 5594:10, 5601:24, 5622:17, 5628:6, 5638:8, 5638:18, 5651:11, 5657:7, 5670:7
**First** [1] - 5542:1
**fit** [1] - 5634:11
**five** [4] - 5561:15, 5587:18, 5609:20, 5644:13
**Five** [5] - 5628:25, 5632:20, 5632:21, 5641:7, 5641:12
**flow** [1] - 5523:2
**fly** [1] - 5581:16
**focus** [1] - 5559:20, 5569:19, 5633:13
**focused** [2] - 5589:20, 5605:1
**focusing** [1] - 5606:4, 5652:2
**folks** [1] - 5592:20
**follow** [5] - 5626:18, 5627:25, 5659:23, 5664:6, 5664:9
**followed** [3] - 5653:3, 5659:24, 5663:24
**following** [20] - 5485:3, 5493:23, 5501:2, 5503:23, 5504:1, 5513:13, 5514:16, 5515:1, 5535:5, 5559:7, 5573:1, 5575:17, 5610:4, 5611:9,

5612:24, 5613:15, 5617:6, 5621:4, 5622:1, 5626:22
**follows** [10] - 5494:4, 5502:1, 5514:1, 5559:1, 5588:17, 5611:15, 5613:1, 5618:1, 5622:19, 5635:2
**food** [2] - 5573:8, 5581:8
**foot** [1] - 5599:22
**foreclosures** [1] - 5526:12
**forensic** [2] - 5520:4, 5520:11
**forfeit** [1] - 5674:1
**forfeiture** [7] - 5672:23, 5673:2, 5673:5, 5673:10, 5673:15, 5673:24, 5674:3
**forget** [2] - 5644:20, 5650:20
**forgotten** [1] - 5593:11
**form** [5] - 5538:7, 5560:8, 5607:17, 5659:2, 5664:24
**format** [1] - 5491:13
**formation** [1] - 5595:6
**formed** [1] - 5594:17
**forming** [1] - 5595:20
**forth** [4] - 5493:13, 5528:5, 5542:15, 5608:6
**forum** [1] - 5487:18
**forward** [1] - 5596:23
**foster** [1] - 5489:11
**foundation** [2] - 5544:17, 5548:6
**founding** [2] - 5595:22, 5600:25
**Four** [3] - 5628:7, 5628:24, 5632:20
**four** [8] - 5521:1, 5521:23, 5522:22, 5577:23, 5589:21, 5606:12, 5607:18, 5607:21
**four-page** [2] - 5521:23, 5522:22
**frame** [2] - 5549:12, 5587:21
**frankly** [3] - 5588:2, 5593:14, 5605:12
**fraud** [46] - 5485:20, 5485:21, 5485:22, 5485:23, 5487:4, 5502:17, 5503:2,

5503:16, 5503:20, 5504:6, 5504:14, 5504:15, 5520:16, 5540:4, 5543:18, 5548:20, 5549:3, 5551:3, 5552:10, 5552:12, 5628:9, 5628:25, 5630:9, 5630:11, 5633:8, 5634:20, 5639:5, 5639:17, 5639:19, 5641:10, 5641:11, 5645:15, 5645:19, 5646:5, 5646:13, 5647:8, 5652:11, 5660:12, 5662:18, 5664:14, 5664:22, 5665:14

**fraudulent** [1] - 5649:8

**free** [9] - 5519:8, 5519:14, 5519:17, 5530:14, 5530:16, 5587:24, 5654:23, 5656:1, 5671:14

**Friday** [1] - 5674:19

**friend** [5] - 5519:21, 5538:18, 5592:6, 5593:15, 5598:5

**friends** [6] - 5519:20, 5520:1, 5520:2, 5592:9, 5593:22, 5604:20

**front** [10] - 5530:25, 5532:21, 5533:10, 5552:25, 5563:14, 5566:21, 5568:3, 5608:21, 5670:8, 5670:9

**frustrated** [4] - 5605:23, 5606:3, 5608:4, 5608:11

**frustrations** [1] - 5528:11

**full** [11] - 5492:5, 5518:6, 5518:23, 5533:10, 5562:5, 5600:6, 5603:16, 5618:25, 5651:11, 5673:6, 5673:7

**full-time** [1] - 5600:6

**Fund** [31] - 5488:25, 5497:14, 5497:16, 5498:2, 5499:14, 5524:3, 5525:19, 5532:15, 5533:2, 5533:24, 5537:6, 5539:3, 5539:6, 5539:11, 5563:22, 5579:13, 5583:10,

5630:2, 5631:15, 5632:8, 5646:15, 5654:11, 5658:6, 5660:16, 5665:9, 5665:11, 5665:12, 5666:16, 5667:18, 5667:23, 5669:17

**fund** [6] - 5525:22, 5528:7, 5528:18, 5603:19, 5653:9

**fundraising** [1] - 5603:22

**Funds** [1] - 5645:22

**funds** [12] - 5520:17, 5520:18, 5525:20, 5527:15, 5528:1, 5528:10, 5528:15, 5529:13, 5634:2, 5645:20, 5647:9, 5647:17

**funneled** [1] - 5653:15

**furtherance** [3] - 5635:23, 5639:22, 5640:2

# G

**Gaarn** [13] - 5612:11, 5628:10, 5631:7, 5631:18, 5631:23, 5635:10, 5635:12, 5635:24, 5636:11, 5636:14, 5636:20, 5638:5, 5652:10

**Gaarn's** [2] - 5628:20, 5653:15

**Gaarn-Gentry** [1] - 5631:7

**gains** [1] - 5547:14

**Galioto** [9] - 5488:16, 5488:22, 5489:4, 5493:7, 5493:14, 5497:6, 5497:18, 5498:6, 5498:7

**gambling** [2] - 5652:20, 5653:6

**general** [4] - 5496:6, 5516:20, 5577:14, 5648:25

**generally** [5] - 5526:1, 5527:8, 5554:4, 5554:7, 5555:5

**generous** [2] - 5670:18, 5672:10

**gentlemen** [2] - 5488:23, 5612:15

**gentlemen's** [2] - 5593:8, 5594:5

**Gentry** [2] - 5612:12, 5631:7

**gifting** [1] - 5606:9

**given** [18] - 5506:6, 5533:20, 5534:1, 5537:19, 5546:11, 5554:24, 5578:6, 5579:17, 5600:25, 5630:19, 5634:9, 5636:2, 5637:2, 5648:15, 5654:17, 5658:24, 5662:14, 5664:8

**glad** [1] - 5613:12

**Global** [34] - 5488:25, 5497:14, 5497:15, 5498:2, 5499:13, 5524:2, 5525:19, 5532:15, 5533:2, 5533:24, 5537:6, 5539:2, 5539:5, 5539:10, 5563:21, 5579:12, 5583:10, 5630:2, 5631:15, 5632:3, 5642:7, 5645:21, 5646:7, 5646:15, 5654:10, 5658:6, 5660:16, 5665:9, 5665:10, 5665:12, 5666:16, 5667:18, 5667:22, 5669:17

**Gloucester** [2] - 5635:5, 5637:24

**go-ahead** [1] - 5560:21

**goal** [3] - 5517:14, 5635:22, 5635:23

**Gonchar** [41] - 5495:13, 5496:19, 5497:13, 5497:21, 5498:22, 5499:8, 5499:14, 5511:3, 5511:19, 5511:21, 5512:14, 5515:21, 5517:11, 5520:18, 5523:6, 5525:2, 5525:11, 5525:17, 5525:19, 5526:10, 5527:2, 5527:9, 5527:14, 5528:13, 5529:1, 5529:16, 5531:13, 5539:8, 5539:14, 5562:25, 5564:10, 5569:24, 5574:4, 5574:10, 5577:10, 5578:5, 5583:22, 5584:6, 5585:25, 5620:23, 5655:7

**Gonchar's** [2] - 5516:12, 5574:1

**good-faith** [1] - 5657:5

**government** [52] - 5486:3, 5486:20, 5487:17, 5487:22, 5488:4, 5489:17, 5490:11, 5490:21, 5491:2, 5497:15, 5504:5, 5504:7, 5504:9, 5506:13, 5517:3, 5517:15, 5517:17, 5517:24, 5521:17, 5582:17, 5586:9, 5587:7, 5588:3, 5609:16, 5616:15, 5619:18, 5620:21, 5622:11, 5626:3, 5628:2, 5629:25, 5630:11, 5630:22, 5631:2, 5632:24, 5633:1, 5634:4, 5636:18, 5638:2, 5638:3, 5641:20, 5642:21, 5666:10, 5666:24, 5667:1, 5667:6, 5668:12, 5671:9, 5671:18, 5671:23, 5672:10

**Government** [61] - 5484:12, 5494:15, 5500:23, 5506:20, 5508:15, 5521:8, 5530:22, 5531:1, 5532:9, 5532:20, 5534:6, 5534:15, 5536:7, 5542:24, 5543:7, 5543:9, 5543:13, 5545:2, 5546:7, 5547:2, 5547:6, 5548:7, 5548:23, 5549:4, 5550:13, 5551:1, 5551:8, 5551:10, 5551:25, 5552:12, 5559:11, 5559:18, 5561:4, 5567:18, 5568:1, 5572:2, 5572:5, 5572:18, 5575:15, 5579:24, 5603:6, 5622:17, 5623:1, 5645:6, 5646:17, 5647:8, 5649:4, 5649:18, 5650:3, 5650:17, 5651:24, 5653:11, 5654:2, 5654:22, 5655:25, 5656:3, 5676:15, 5676:16, 5676:18, 5676:19, 5676:20

**Government's** [13] - 5534:13, 5536:1, 5542:8, 5547:11, 5549:9, 5552:8, 5563:12, 5567:14, 5653:13, 5655:19, 5656:8, 5656:17, 5658:17

**government's** [8] - 5488:3, 5524:24, 5533:6, 5626:8, 5626:10, 5635:9, 5638:13, 5656:10

**grab** [1] - 5642:7

**grammatical** [1] - 5657:7

**grammatically** [1] - 5649:25

**grand** [5] - 5486:15, 5486:16, 5486:20, 5486:23, 5487:3

**granted** [1] - 5668:22

**grave** [1] - 5560:8

**Grdina** [1] - 5630:10

**Grdina's** [1] - 5630:13

**great** [6] - 5498:19, 5515:15, 5585:17, 5608:17, 5652:8, 5654:8

**grew** [1] - 5598:22

**gross** [1] - 5669:17

**grounds** [2] - 5620:17, 5627:24

**group** [8] - 5490:13, 5490:20, 5491:5, 5491:19, 5491:23, 5565:23, 5566:4, 5602:2

**Group** [8] - 5496:11, 5541:15, 5541:17, 5542:6, 5606:15, 5606:16, 5606:23, 5607:18

**grow** [1] - 5599:22

**GSF** [17] - 5520:9, 5523:16, 5523:18, 5523:21, 5523:23, 5528:18, 5531:17, 5567:4, 5569:18, 5570:10, 5576:4, 5576:7, 5577:17, 5638:15, 5664:25, 5665:3, 5665:4

**guarantor** [1] - 5512:14

**guess** [12] - 5491:17, 5491:22, 5492:5, 5518:22, 5542:11, 5543:10, 5547:23, 5548:1, 5574:6,

5643:15, 5652:2, 5652:5
**guessing** [2] - 5616:1, 5616:2
**guidance** [2] - 5663:15, 5664:8
**guidelines** [1] - 5668:18
**guilt** [2] - 5650:18, 5663:22
**guilty** [14] - 5636:14, 5658:2, 5658:3, 5662:22, 5663:10, 5665:13, 5665:17, 5665:18, 5665:21, 5665:22, 5667:14, 5667:25, 5668:20, 5669:16
**guy** [1] - 5590:3
**GX** [3] - 5506:13, 5506:20, 5676:15

**H**

**hair** [1] - 5607:7
**HALEY** [70] - 5484:16, 5506:17, 5534:11, 5536:5, 5538:6, 5538:8, 5547:5, 5547:10, 5548:11, 5550:2, 5550:20, 5550:24, 5566:3, 5569:4, 5569:10, 5569:12, 5570:3, 5570:15, 5570:22, 5573:24, 5575:11, 5577:4, 5578:12, 5582:4, 5588:10, 5591:23, 5603:1, 5611:3, 5612:23, 5613:10, 5616:8, 5625:5, 5625:22, 5627:23, 5632:18, 5632:22, 5636:8, 5636:16, 5638:2, 5640:23, 5642:10, 5642:19, 5646:19, 5646:21, 5647:1, 5649:22, 5650:5, 5650:16, 5650:24, 5651:2, 5651:4, 5651:6, 5651:14, 5651:17, 5651:21, 5656:6, 5656:23, 5657:13, 5657:16, 5657:20, 5658:14, 5666:5, 5670:6, 5670:19, 5671:4, 5672:10, 5672:18, 5674:24, 5676:5, 5676:13

**Haley** [20] - 5485:11, 5506:16, 5561:8, 5566:2, 5577:2, 5612:17, 5632:17, 5637:19, 5640:22, 5642:8, 5649:21, 5650:9, 5650:15, 5651:20, 5654:6, 5656:22, 5657:12, 5658:11, 5663:14, 5666:3
**Haley's** [1] - 5626:9
**half** [3] - 5590:12, 5593:6, 5605:10
**Hand** [1] - 5486:15
**hand** [9] - 5500:23, 5505:22, 5508:15, 5521:8, 5534:5, 5536:1, 5563:13, 5567:13, 5623:1
**handed** [1] - 5593:13
**handing** [1] - 5563:16
**handle** [2] - 5665:24, 5673:22
**handwriting** [1] - 5580:3
**happy** [3] - 5509:21, 5640:6, 5673:23
**Harbor** [1] - 5638:25
**hard** [1] - 5658:18
**harm** [1] - 5649:1
**hate** [1] - 5674:8
**Hawaii** [28] - 5630:2, 5630:3, 5630:21, 5630:25, 5638:11, 5638:16, 5638:18, 5638:23, 5639:1, 5645:20, 5646:7, 5652:9, 5658:7, 5658:23, 5660:16, 5662:4, 5662:6, 5664:14, 5664:21, 5665:8, 5665:19, 5665:20, 5666:17, 5666:23, 5667:6, 5668:1, 5669:16
**Hawaiian** [5] - 5632:5, 5632:9, 5632:11, 5639:5, 5646:14
**hear** [8] - 5549:2, 5570:21, 5574:15, 5637:7, 5654:12, 5658:11, 5663:13, 5670:12
**heard** [6] - 5541:8, 5561:6, 5587:22, 5640:14, 5648:2, 5655:16
**hearing** [2] - 5638:8, 5673:7

**hearsay** [1] - 5618:19
**held** [2] - 5547:20, 5573:1
**helicopter** [2] - 5592:16, 5593:16
**helicopters** [5] - 5592:16, 5592:18, 5592:21, 5592:24, 5593:1
**hello** [1] - 5604:23
**help** [10] - 5517:12, 5589:18, 5590:22, 5590:24, 5592:25, 5594:15, 5603:19, 5603:20, 5603:22, 5659:24
**helped** [10] - 5510:17, 5510:19, 5511:16, 5512:22, 5512:24, 5516:8, 5591:6, 5591:8, 5594:22, 5606:5
**helping** [6] - 5510:11, 5510:23, 5511:22, 5515:5, 5516:25, 5594:25
**helps** [3] - 5571:3, 5571:5, 5592:20
**herring** [1] - 5552:12
**highlight** [2] - 5644:18, 5644:25
**highly** [2] - 5549:17, 5549:20
**himself** [1] - 5649:7
**hire** [2] - 5527:20, 5603:16
**hired** [9] - 5496:12, 5499:22, 5499:25, 5500:3, 5505:13, 5527:2, 5553:18, 5553:20, 5590:2
**history** [2] - 5589:23, 5590:15
**HL** [1] - 5496:11
**hockey** [11] - 5538:24, 5539:1, 5541:23, 5584:11, 5585:7, 5585:8, 5585:13, 5585:18, 5586:5, 5654:22, 5656:11
**hold** [1] - 5567:22
**holding** [1] - 5604:8
**holdings** [2] - 5600:8, 5614:23
**home** [1] - 5626:8
**honest** [3] - 5618:9, 5620:3, 5620:6
**honestly** [1] - 5653:9
**Honor** [89] - 5488:12, 5493:17, 5494:12,

5498:11, 5500:25, 5503:12, 5506:15, 5513:10, 5529:6, 5534:12, 5536:4, 5538:6, 5539:15, 5539:23, 5540:17, 5542:13, 5545:24, 5547:5, 5547:10, 5547:11, 5550:2, 5561:16, 5566:3, 5568:21, 5569:4, 5570:17, 5572:20, 5573:24, 5575:4, 5575:11, 5575:12, 5578:14, 5579:2, 5579:6, 5588:8, 5588:14, 5591:22, 5602:23, 5603:5, 5609:1, 5609:15, 5609:23, 5612:17, 5612:23, 5616:5, 5616:7, 5616:13, 5616:23, 5617:2, 5622:10, 5625:24, 5626:1, 5627:18, 5628:4, 5632:1, 5632:22, 5633:1, 5633:13, 5633:24, 5634:12, 5635:1, 5636:16, 5637:15, 5638:17, 5639:3, 5639:15, 5641:17, 5642:5, 5642:22, 5643:5, 5645:2, 5645:9, 5648:2, 5651:6, 5656:6, 5656:25, 5658:14, 5659:11, 5664:9, 5666:5, 5666:9, 5668:13, 5670:2, 5670:5, 5670:6, 5670:14, 5672:11, 5673:14, 5674:25
**Honor's** [2] - 5651:17, 5651:18
**HONORABLE** [1] - 5484:9
**hope** [6] - 5620:8, 5629:22, 5630:5, 5633:5, 5655:14, 5656:12
**hopelessly** [1] - 5487:15
**hoping** [1] - 5620:6
**HORMOVITIS** [1] - 5484:6
**hostile** [1] - 5629:15
**hosting** [1] - 5596:8
**house** [1] - 5519:22
**Hurt** [1] - 5537:9

**I**

**idea** [9] - 5508:3, 5508:8, 5563:21, 5589:22, 5594:11, 5596:17, 5599:3, 5629:1, 5652:22
**ideas** [1] - 5589:20
**identification** [6] - 5578:18, 5591:21, 5591:24, 5602:11, 5612:6, 5612:8
**identified** [8] - 5490:19, 5490:20, 5491:17, 5570:17, 5580:16, 5580:24, 5593:17, 5597:3
**identify** [3] - 5633:11, 5638:5, 5658:4
**identifying** [1] - 5491:19
**identity** [1] - 5672:13
**II** [1] - 5631:9
**illegal** [5] - 5549:5, 5629:8, 5635:22, 5652:20, 5653:6
**immaterial** [1] - 5543:15
**impact** [1] - 5669:6
**impeachment** [1] - 5487:5
**important** [3] - 5520:19, 5620:17, 5658:9
**importantly** [1] - 5632:10
**impressive** [1] - 5556:6
**improper** [3] - 5549:2, 5656:1, 5671:10
**improperly** [1] - 5517:3
**improve** [1] - 5589:19
**inappropriate** [1] - 5668:15
**inception** [1] - 5592:10
**inclination** [3] - 5663:20, 5664:7, 5666:5
**include** [8] - 5579:19, 5579:21, 5579:25, 5580:8, 5580:13, 5618:10, 5638:1, 5654:21
**included** [7] - 5562:17, 5579:22, 5580:7, 5580:21, 5581:1, 5581:10, 5618:11

**including** [6] - 5488:25, 5498:2, 5531:13, 5633:22, 5638:20, 5669:1
**income** [4] - 5540:17, 5552:2, 5554:1, 5557:15
**Income** [1] - 5545:6
**incomplete** [2] - 5567:23, 5569:13
**inconsistent** [5] - 5487:19, 5658:20, 5660:5, 5660:6, 5660:7
**incorrect** [2] - 5503:5, 5636:9
**incubate** [2] - 5589:20, 5606:6
**incubator** [2] - 5589:13, 5591:5
**indeed** [2] - 5636:20, 5641:4
**independent** [2] - 5509:15, 5669:10
**independently** [2] - 5639:23, 5653:16
**indicate** [1] - 5630:11
**indicated** [6] - 5485:2, 5490:19, 5491:12, 5491:23, 5616:20, 5663:19
**indicates** [2] - 5550:5, 5643:5
**indicating** [2] - 5591:17, 5643:21
**indication** [2] - 5540:21, 5541:7
**indictment** [30] - 5485:12, 5485:20, 5486:1, 5486:6, 5486:9, 5486:13, 5486:18, 5487:14, 5487:18, 5541:20, 5628:25, 5632:13, 5632:23, 5632:25, 5633:3, 5634:22, 5635:2, 5637:3, 5637:21, 5638:5, 5640:24, 5641:3, 5641:5, 5648:8, 5671:20, 5672:7, 5672:12
**indirectly** [1] - 5578:4
**individual** [13] - 5487:24, 5513:6, 5552:3, 5552:6, 5553:13, 5556:5, 5559:17, 5559:23, 5560:4, 5616:19, 5618:21, 5665:3,

5669:14
**individually** [2] - 5586:12, 5603:11
**individuals** [6] - 5491:15, 5510:5, 5612:11, 5614:6, 5614:10, 5631:12
**indulgence** [1] - 5508:20
**ineffectiveness** [1] - 5640:24
**infer** [1] - 5548:19
**information** [29] - 5522:5, 5528:12, 5529:4, 5533:21, 5534:1, 5544:19, 5545:20, 5550:6, 5550:19, 5551:19, 5552:1, 5554:1, 5554:3, 5555:2, 5555:6, 5557:11, 5558:16, 5558:18, 5558:21, 5561:2, 5562:5, 5562:10, 5562:20, 5572:22, 5582:23, 5591:3, 5619:13, 5623:13, 5623:18
**informational** [1] - 5548:12
**infrastructure** [2] - 5594:25, 5595:1
**initial** [11] - 5495:8, 5506:6, 5506:8, 5519:6, 5519:8, 5532:16, 5545:7, 5585:24, 5594:5, 5594:25, 5618:21
**inject** [2] - 5549:24, 5560:7
**inn** [1] - 5515:4
**innovations** [5] - 5594:20, 5596:7, 5600:13, 5602:8, 5605:8
**Innovations** [4] - 5591:4, 5591:5, 5598:18, 5602:20
**inputs** [2] - 5529:24, 5563:6
**inquire** [1] - 5548:18
**inquired** [2] - 5550:6, 5558:12
**inquiry** [3] - 5545:22, 5548:5, 5558:2
**inserted** [1] - 5647:25
**insofar** [4] - 5547:13, 5634:18, 5634:25, 5641:8
**inspect** [1] - 5617:3

**instance** [3] - 5643:17, 5643:25, 5664:18
**instead** [4] - 5591:7, 5650:2, 5664:24, 5673:15
**instruct** [3] - 5644:12, 5670:22, 5670:23
**instructed** [3] - 5492:16, 5545:8, 5545:11
**instruction** [26] - 5504:3, 5550:8, 5550:11, 5637:11, 5640:6, 5640:16, 5644:14, 5644:25, 5650:18, 5652:6, 5653:24, 5654:18, 5654:21, 5654:24, 5655:1, 5656:3, 5656:19, 5657:6, 5659:21, 5659:23, 5659:25, 5664:6, 5665:21, 5670:12, 5671:12, 5671:17
**instructions** [10] - 5626:7, 5626:11, 5640:9, 5642:14, 5642:15, 5644:17, 5658:24, 5663:24, 5663:25, 5671:9
**Instructions** [1] - 5643:1
**insufficient** [5] - 5647:12, 5649:12, 5650:2, 5664:12, 5667:11
**insurance** [3] - 5511:17, 5511:22, 5511:23
**intend** [2] - 5633:4, 5649:14
**intended** [15] - 5502:14, 5502:16, 5522:14, 5525:14, 5525:18, 5527:3, 5527:10, 5527:21, 5528:2, 5528:16, 5528:19, 5528:22, 5529:13, 5529:18, 5599:15
**intending** [2] - 5652:12, 5655:10
**intent** [1] - 5647:16
**intention** [4] - 5502:17, 5656:6, 5656:7, 5656:9
**intentionally** [1] - 5574:14
**interest** [40] - 5540:23,

5540:24, 5541:4, 5541:7, 5543:21, 5545:20, 5547:16, 5549:19, 5561:5, 5561:10, 5593:23, 5596:20, 5597:4, 5597:12, 5600:20, 5601:1, 5601:4, 5601:18, 5601:22, 5602:17, 5603:9, 5603:10, 5604:6, 5604:11, 5604:15, 5606:25, 5607:18, 5629:3, 5629:5, 5633:18, 5633:23, 5634:3, 5634:16, 5643:23, 5644:2, 5644:4, 5644:5, 5644:19, 5645:1
**interested** [4] - 5489:5, 5498:8, 5513:6, 5644:16
**interests** [8] - 5542:12, 5542:17, 5544:4, 5544:21, 5546:6, 5547:19, 5548:22, 5558:15
**interfacing** [1] - 5554:25
**interim** [1] - 5522:13
**Internet** [1] - 5592:23
**interpretation** [1] - 5547:12
**interstate** [1] - 5639:24
**introduce** [6] - 5488:3, 5541:9, 5541:17, 5571:4, 5572:12, 5574:16
**introduced** [6] - 5489:11, 5489:14, 5578:24, 5579:4, 5592:6, 5641:21
**introducing** [2] - 5568:25, 5646:3
**introduction** [1] - 5592:8
**invest** [6] - 5496:23, 5497:2, 5630:14, 5633:18, 5634:14, 5646:7
**invested** [4] - 5516:17, 5516:19, 5516:21, 5629:6
**investigation** [1] - 5496:9
**investment** [8] - 5526:22, 5526:23, 5526:24, 5605:21, 5606:7, 5619:23,

5634:22, 5669:18
**Investments** [1] - 5645:21
**investments** [10] - 5526:11, 5527:6, 5605:21, 5633:10, 5638:23, 5645:24, 5646:1, 5646:14, 5646:16, 5646:25
**investors** [3] - 5505:12, 5638:19, 5654:8
**investors'** [1] - 5653:14
**invitation** [1] - 5493:12
**inviting** [1] - 5660:8
**invoices** [2] - 5562:9, 5563:8
**involved** [27] - 5502:25, 5505:11, 5508:11, 5509:17, 5509:25, 5510:11, 5510:23, 5514:7, 5515:4, 5516:14, 5516:23, 5525:24, 5528:4, 5548:20, 5583:19, 5594:7, 5596:14, 5596:16, 5600:11, 5600:13, 5628:12, 5628:22, 5631:10, 5638:23, 5655:22, 5662:16, 5666:13
**involvement** [3] - 5510:25, 5515:14, 5664:21
**involving** [2] - 5510:4, 5614:16
**iPhone** [4] - 5623:8, 5623:10, 5624:7, 5624:12
**IRS** [14] - 5500:19, 5555:18, 5556:5, 5556:10, 5556:18, 5557:5, 5557:9, 5557:14, 5557:17, 5586:11, 5586:14, 5586:22, 5587:15
**IRS'** [1] - 5505:3
**Island** [1] - 5638:22
**Islip** [2] - 5484:4, 5484:22
**issue** [31] - 5488:9, 5502:11, 5529:1, 5529:2, 5539:25, 5545:15, 5549:20, 5549:24, 5550:3, 5550:7, 5551:3, 5551:4, 5559:8,

5560:7, 5570:7, 5573:24, 5574:18, 5618:18, 5631:16, 5650:18, 5659:13, 5660:4, 5668:11, 5669:20, 5669:23, 5669:24, 5672:23, 5673:1, 5673:5, 5673:8, 5674:4
**issued** [1] - 5522:10
**issues** [5] - 5497:14, 5525:25, 5542:11, 5559:4, 5642:14
**ist** [1] - 5564:13
**ITE** [1] - 5598:9
**item** [1] - 5616:14
**items** [8] - 5495:5, 5495:7, 5495:10, 5495:11, 5496:2, 5496:4, 5496:8, 5526:4
**itself** [8] - 5547:17, 5612:10, 5629:21, 5633:9, 5649:15, 5650:2, 5653:2, 5671:3
**IV** [1] - 5630:2

## J

**JAMES** [1] - 5484:14
**Jersey** [2] - 5635:5, 5637:24
**Jet** [5] - 5519:3, 5519:5, 5519:7, 5519:11, 5519:12
**Joe** [2] - 5576:23, 5577:5
**John** [6] - 5635:6, 5637:24, 5638:20, 5671:21, 5672:13
**join** [1] - 5658:12
**joined** [1] - 5594:4
**JOSEPH** [1] - 5484:9
**Jowdy** [11] - 5496:2, 5496:12, 5525:21, 5525:22, 5525:23, 5526:3, 5527:4, 5564:19, 5655:16, 5655:20, 5656:10
**JUDGE** [1] - 5484:10
**judge** [22] - 5489:16, 5490:18, 5490:23, 5492:11, 5514:3, 5514:11, 5534:11, 5542:22, 5616:8, 5619:1, 5631:21, 5632:12, 5632:19, 5633:7, 5636:8, 5637:1, 5637:5,

5640:1, 5640:18, 5662:15, 5667:14, 5668:8
**Judge** [51] - 5490:4, 5492:20, 5506:17, 5534:9, 5541:8, 5541:14, 5542:19, 5543:10, 5545:13, 5546:11, 5546:24, 5547:24, 5550:20, 5551:6, 5551:16, 5551:18, 5552:14, 5557:1, 5569:12, 5570:4, 5570:15, 5571:7, 5572:13, 5573:4, 5612:21, 5620:20, 5628:19, 5629:19, 5629:22, 5631:6, 5631:10, 5632:2, 5632:14, 5639:6, 5642:18, 5643:18, 5644:7, 5644:11, 5644:14, 5644:21, 5644:22, 5647:1, 5647:3, 5649:16, 5650:8, 5650:20, 5651:10, 5657:1, 5661:5, 5670:21
**judges** [1] - 5644:12
**judicial** [1] - 5659:17
**July** [2] - 5484:7, 5611:22
**jump** [1] - 5595:2
**jurors** [10] - 5485:5, 5492:16, 5607:16, 5632:6, 5658:4, 5662:21, 5663:4, 5666:14, 5666:19, 5668:24
**Jury** [1] - 5642:25
**jury** [80] - 5484:10, 5485:4, 5485:21, 5486:15, 5486:16, 5486:20, 5486:23, 5487:3, 5487:11, 5487:15, 5488:10, 5492:8, 5493:4, 5493:9, 5493:19, 5494:3, 5494:5, 5494:14, 5503:15, 5503:19, 5504:2, 5529:7, 5534:20, 5539:20, 5548:19, 5549:2, 5549:23, 5550:7, 5550:21, 5550:22, 5553:1, 5553:5, 5559:2, 5559:3, 5559:16, 5559:21, 5559:25,

5561:7, 5561:18, 5561:24, 5561:25, 5565:22, 5575:2, 5589:22, 5597:19, 5609:12, 5610:5, 5611:8, 5611:10, 5622:2, 5626:14, 5626:22, 5637:1, 5640:7, 5640:16, 5641:23, 5642:2, 5648:15, 5650:17, 5653:22, 5654:13, 5654:24, 5656:3, 5658:21, 5663:21, 5664:13, 5664:17, 5667:5, 5667:13, 5667:20, 5667:24, 5669:10, 5669:13, 5669:21, 5670:9, 5670:10, 5673:5, 5673:8, 5673:10, 5673:15

## K

**K-E-N-N-E-D-Y** [1] - 5588:21
**Kaiser** [2] - 5638:20, 5638:21
**Kaiser's** [1] - 5637:24
**keep** [4] - 5514:10, 5588:23, 5609:6, 5650:7
**keeping** [1] - 5618:15
**keeps** [1] - 5540:25
**KELLY** [1] - 5484:12
**Ken** [3] - 5655:16, 5655:20, 5656:10
**KENNEDY** [4] - 5588:15, 5611:12, 5676:7, 5676:9
**Kennedy** [10] - 5541:21, 5588:13, 5588:20, 5588:22, 5589:3, 5589:5, 5592:2, 5611:19, 5612:1, 5614:2
**KENNER** [3] - 5484:5, 5484:5, 5673:20
**Kenner** [62] - 5484:17, 5490:19, 5490:25, 5491:16, 5492:7, 5492:10, 5492:17, 5494:18, 5496:6, 5508:5, 5523:3, 5528:6, 5532:14, 5533:3, 5533:18, 5537:8, 5537:24, 5538:1, 5538:2, 5538:18, 5550:10, 5563:4, 5566:11,

5567:4, 5569:17, 5570:9, 5570:25, 5571:3, 5573:5, 5573:19, 5576:4, 5578:3, 5579:22, 5580:11, 5580:22, 5584:5, 5585:7, 5585:13, 5625:8, 5631:18, 5631:24, 5631:25, 5632:1, 5633:17, 5633:25, 5634:12, 5634:19, 5634:25, 5635:15, 5635:21, 5636:13, 5641:9, 5645:14, 5645:18, 5654:10, 5661:4, 5662:20, 5662:22, 5664:21, 5666:12, 5672:24, 5673:19
**Kenner's** [7] - 5537:21, 5570:11, 5580:7, 5586:6, 5642:20, 5642:23
**Kenner-Richards** [1] - 5496:6
**Kenner/Richards** [1] - 5521:4
**kept** [1] - 5619:5
**Kevin** [3] - 5488:16, 5488:22, 5497:9
**Khristich** [1] - 5654:12
**kid** [1] - 5626:12
**kind** [24] - 5556:4, 5589:17, 5589:19, 5591:8, 5592:9, 5592:14, 5593:21, 5593:23, 5594:21, 5594:23, 5595:2, 5596:8, 5596:16, 5599:2, 5599:4, 5600:17, 5605:12, 5606:2, 5606:8, 5608:15, 5612:20, 5647:17, 5647:20, 5667:22
**knowing** [2] - 5549:24, 5634:11
**knowingly** [1] - 5647:12
**knowledge** [9] - 5509:15, 5515:15, 5515:16, 5517:11, 5522:23, 5545:13, 5558:14, 5558:16, 5581:5
**known** [1] - 5520:9
**knows** [6] - 5628:8, 5628:25, 5643:5,

5654:24, 5656:3, 5665:10
**Komatireddy** [5] - 5490:24, 5543:3, 5553:4, 5562:14, 5574:2
**KOMATIREDDY** [78] - 5484:15, 5492:1, 5492:23, 5498:15, 5502:13, 5503:4, 5504:17, 5504:18, 5506:13, 5506:22, 5514:10, 5514:14, 5515:2, 5529:10, 5534:16, 5537:16, 5539:15, 5540:1, 5540:10, 5540:16, 5541:12, 5542:1, 5542:13, 5543:15, 5544:8, 5545:24, 5546:15, 5546:18, 5550:15, 5551:12, 5551:23, 5553:6, 5557:21, 5560:10, 5560:18, 5561:15, 5567:18, 5569:7, 5569:11, 5569:15, 5569:21, 5570:8, 5570:19, 5571:2, 5572:13, 5573:14, 5573:19, 5574:9, 5575:4, 5575:7, 5575:9, 5576:2, 5577:1, 5579:6, 5588:8, 5591:22, 5602:25, 5603:3, 5610:19, 5616:7, 5617:2, 5618:2, 5618:17, 5619:19, 5622:13, 5622:22, 5625:2, 5626:1, 5626:3, 5637:7, 5637:15, 5638:17, 5672:1, 5672:4, 5672:9, 5672:15, 5676:4, 5676:12

## L

**lack** [2] - 5562:20, 5628:15
**lacking** [1] - 5561:7
**Land** [1] - 5645:20
**land** [2] - 5646:14, 5665:20
**lane** [1] - 5583:18
**Lane** [2] - 5495:22, 5497:17
**language** [9] - 5633:10, 5637:3, 5637:20, 5644:6,

5644:8, 5644:10, 5644:21, 5647:17, 5652:4
**large** [2] - 5508:17, 5598:22
**larger** [2] - 5495:11, 5593:16
**largest** [1] - 5615:8
**LaRusso** [110] - 5484:18, 5485:10, 5488:11, 5489:7, 5489:9, 5490:3, 5490:6, 5490:8, 5490:17, 5491:2, 5491:10, 5491:22, 5492:2, 5492:11, 5492:20, 5493:4, 5493:10, 5494:8, 5494:18, 5494:25, 5498:11, 5500:25, 5502:2, 5503:7, 5503:17, 5506:15, 5513:10, 5514:2, 5529:6, 5534:9, 5534:12, 5536:3, 5541:2, 5546:1, 5546:20, 5547:18, 5552:8, 5565:24, 5568:12, 5569:11, 5578:14, 5578:17, 5579:2, 5579:8, 5579:9, 5582:5, 5588:6, 5588:12, 5589:2, 5592:1, 5602:23, 5603:4, 5603:8, 5609:1, 5609:15, 5609:22, 5610:8, 5610:22, 5611:4, 5611:18, 5612:17, 5613:4, 5613:12, 5614:1, 5616:4, 5616:12, 5616:13, 5618:9, 5619:1, 5619:20, 5620:1, 5620:20, 5621:2, 5622:10, 5625:24, 5626:25, 5627:4, 5627:14, 5627:23, 5628:4, 5631:25, 5632:19, 5639:3, 5639:15, 5639:25, 5640:11, 5640:18, 5641:20, 5648:6, 5649:13, 5650:7, 5654:5, 5657:22, 5662:15, 5663:2, 5664:10, 5665:5, 5666:8, 5667:17, 5668:6, 5668:13, 5669:19, 5670:2, 5670:5,

5674:18, 5675:2, 5676:3, 5676:6, 5676:8, 5676:10
**LARUSSO** [59] - 5536:4, 5537:2, 5541:8, 5541:13, 5542:18, 5542:22, 5544:25, 5546:10, 5546:24, 5547:8, 5548:12, 5548:15, 5550:1, 5551:6, 5551:16, 5551:18, 5552:14, 5552:18, 5557:1, 5557:4, 5558:1, 5560:17, 5561:20, 5565:25, 5568:13, 5568:18, 5568:25, 5570:17, 5570:21, 5571:1, 5571:7, 5571:10, 5571:12, 5572:20, 5573:2, 5573:16, 5573:23, 5574:17, 5574:20, 5575:12, 5642:6, 5642:17, 5645:9, 5645:12, 5646:2, 5647:3, 5647:5, 5649:16, 5650:8, 5650:14, 5651:9, 5655:5, 5656:21, 5657:1, 5657:11, 5657:19, 5657:24, 5660:23, 5661:4
**LaRusso's** [2] - 5626:9, 5638:10
**last** [21] - 5488:13, 5535:4, 5554:11, 5564:17, 5564:21, 5570:21, 5588:19, 5604:12, 5606:12, 5609:14, 5616:22, 5624:17, 5629:22, 5630:18, 5631:21, 5642:3, 5644:13, 5647:22, 5666:17, 5668:13, 5672:15
**lastly** [1] - 5614:14
**late** [2] - 5592:12, 5620:2
**laundering** [3] - 5632:14, 5652:22, 5652:23
**law** [29] - 5487:10, 5496:17, 5505:18, 5506:7, 5510:14, 5537:12, 5546:2, 5547:10, 5551:24, 5559:12, 5559:25, 5560:2, 5583:16,

5615:24, 5616:1, 5620:4, 5626:11, 5631:4, 5639:18, 5641:23, 5660:6, 5660:13, 5660:17, 5667:12, 5669:8, 5670:10, 5670:15, 5670:22, 5673:4
**lawsuit** [4] - 5614:16, 5614:17, 5615:3, 5615:10
**lawyer** [2] - 5505:13, 5627:9, 5627:11, 5674:14
**lawyers** [2] - 5626:7, 5673:9
**lay** [2] - 5544:17, 5548:6
**lead** [2] - 5493:10, 5613:7
**leading** [1] - 5614:2
**leap** [1] - 5559:22
**Learned** [1] - 5486:15
**learning** [1] - 5596:17
**least** [6] - 5550:11, 5560:6, 5574:14, 5587:18, 5648:8, 5669:1
**leave** [3] - 5492:4, 5569:2, 5666:6
**leaves** [1] - 5669:23
**led** [1] - 5486:24
**left** [8] - 5560:25, 5600:21, 5600:23, 5601:3, 5601:6, 5609:3, 5609:12, 5665:12
**legal** [4] - 5562:6, 5583:14, 5583:22, 5651:17
**legally** [1] - 5620:8
**legit** [1] - 5581:8
**legitimate** [2] - 5573:7, 5653:25
**Lehman** [2] - 5630:10, 5630:16
**less** [4] - 5518:10, 5518:14, 5526:17, 5668:21
**letter** [1] - 5583:11
**Lexis** [1] - 5486:5
**liability** [1] - 5502:8
**lied** [1] - 5487:3
**light** [1] - 5579:3
**likely** [1] - 5667:19
**likewise** [1] - 5490:20
**limitations** [1] - 5632:10
**Limitations** [2] - 5666:21, 5668:2

**limited** [3] - 5516:19, 5596:11, 5653:6
**limiting** [2] - 5550:11, 5648:5
**line** [2] - 5502:13, 5604:12
**lines** [1] - 5639:1
**liquidate** [1] - 5525:25
**list** [8] - 5495:3, 5547:16, 5567:10, 5567:14, 5569:17, 5576:13, 5580:17, 5674:13
**listed** [1] - 5539:7
**listen** [2] - 5626:19, 5670:11
**listened** [3] - 5625:18, 5625:20, 5625:21
**litigation** [9] - 5496:12, 5506:3, 5520:15, 5525:21, 5525:22, 5525:23, 5526:3, 5527:4, 5583:10
**living** [2] - 5589:12, 5639:9
**LLC** [6] - 5545:6, 5595:20, 5597:4, 5602:3, 5606:16, 5611:22
**loan** [10] - 5512:15, 5512:17, 5516:10, 5516:12, 5630:7, 5630:9, 5630:10, 5630:16, 5653:13, 5664:18
**locate** [1] - 5585:23
**logical** [1] - 5646:6
**logistics** [1] - 5590:24
**Look** [1] - 5605:6
**look** [43] - 5489:17, 5496:25, 5505:23, 5522:3, 5525:9, 5527:24, 5529:24, 5530:21, 5531:4, 5532:8, 5536:20, 5541:5, 5543:8, 5546:11, 5555:11, 5557:24, 5563:23, 5564:2, 5565:3, 5565:11, 5565:19, 5568:19, 5578:6, 5582:6, 5584:4, 5595:15, 5597:14, 5599:16, 5602:11, 5605:20, 5616:2, 5629:24, 5630:3, 5630:21, 5630:24, 5631:16, 5631:22, 5632:2, 5639:11,

5643:2, 5648:1, 5658:19, 5659:21
**looked** [9] - 5528:8, 5536:23, 5563:18, 5598:25, 5599:2, 5599:15, 5599:18, 5608:12, 5620:3
**looking** [21] - 5525:10, 5527:3, 5532:8, 5533:23, 5534:10, 5534:17, 5534:18, 5534:24, 5536:17, 5541:1, 5555:9, 5564:6, 5582:14, 5594:13, 5620:9, 5629:23, 5662:5, 5662:15, 5662:18, 5667:19, 5671:7
**looks** [4] - 5534:19, 5573:5, 5582:2, 5667:23
**Los** [2] - 5537:12, 5538:4
**loss** [1] - 5649:9, 5669:15
**losses** [1] - 5554:15
**lost** [1] - 5605:9
**loud** [2] - 5659:11, 5662:13
**Louis** [2] - 5576:23, 5577:5
**lunch** [5] - 5609:4, 5609:6, 5609:11, 5609:19, 5609:24
**luncheon** [1] - 5609:25

---

**M**

**M4V** [1] - 5623:11
**M6** [4] - 5530:10, 5530:11, 5532:2, 5532:5
**ma'am** [7] - 5506:25, 5508:8, 5509:9, 5512:23, 5513:9, 5533:11, 5563:15
**mail** [33] - 5537:8, 5537:19, 5537:22, 5537:23, 5564:2, 5564:3, 5564:9, 5564:10, 5564:13, 5564:16, 5565:2, 5565:9, 5565:14, 5566:8, 5571:3, 5573:3, 5573:5, 5573:22, 5574:16, 5575:6, 5575:8, 5575:13, 5576:9, 5579:17, 5580:11, 5580:16, 5580:21,

5581:2, 5581:4, 5581:10, 5585:4, 5585:6, 5585:9
**mails** [1] - 5563:11, 5563:18, 5563:23, 5563:25, 5565:23, 5584:11, 5584:20, 5585:12, 5585:13, 5586:6, 5608:5
**maintain** [1] - 5511:22
**maintained** [2] - 5600:21, 5616:20
**maintenance** [1] - 5596:9
**major** [2] - 5605:20, 5605:21
**majority** [2] - 5529:12, 5585:1
**man** [2] - 5591:11, 5603:20
**manage** [1] - 5511:16
**Management** [9] - 5541:15, 5541:17, 5542:6, 5547:20, 5547:22, 5606:15, 5606:16, 5606:23, 5607:18
**managers** [2] - 5611:23, 5611:24
**managing** [2] - 5511:13, 5603:23
**mandate** [1] - 5634:24
**manner** [2] - 5636:17, 5659:16
**manufactured** [1] - 5549:10
**March** [8] - 5507:7, 5507:10, 5533:2, 5534:3, 5535:2, 5535:4, 5536:21, 5580:13
**Marchal** [1] - 5506:23
**Mark** [4] - 5511:25, 5512:3, 5512:9, 5608:20
**mark** [5] - 5492:4, 5492:5, 5492:13, 5512:8, 5608:21
**Marked** [1] - 5575:7
**marked** [16] - 5491:24, 5492:7, 5500:23, 5505:22, 5508:15, 5521:8, 5534:5, 5564:6, 5567:13, 5578:24, 5580:10, 5582:2, 5595:12, 5602:10, 5611:20, 5612:5
**market** [4] - 5590:5, 5590:7, 5590:10,

5590:12
**marketing** [1] - 5594:23
**markets** [1] - 5590:11
**Mary** [2] - 5537:9
**match** [1] - 5531:9
**matching** [1] - 5563:19
**material** [2] - 5487:5, 5648:18
**Matt** [1] - 5497:18
**matter** [13] - 5510:3, 5542:25, 5556:4, 5559:12, 5631:19, 5634:7, 5635:13, 5643:10, 5643:24, 5649:3, 5657:6, 5667:12, 5667:15
**matters** [3] - 5488:11, 5514:7, 5544:1
**ME** [1] - 5545:7
**mean** [18] - 5492:11, 5514:3, 5518:17, 5526:7, 5533:13, 5551:8, 5553:23, 5554:16, 5555:4, 5570:22, 5590:8, 5615:25, 5624:23, 5632:1, 5659:23, 5664:14, 5666:22, 5669:7
**meaning** [1] - 5596:6
**means** [2] - 5542:14, 5624:25
**meant** [6] - 5495:9, 5516:9, 5555:19, 5618:12, 5631:23, 5631:25
**measure** [1] - 5615:4
**mechanical** [1] - 5484:25
**media** [1] - 5496:11
**meet** [1] - 5609:9
**meeting** [2] - 5635:21, 5636:3
**member** [6] - 5552:2, 5552:5, 5600:12, 5600:25, 5603:24
**members** [10] - 5494:5, 5494:13, 5504:2, 5565:21, 5575:2, 5595:20, 5595:22, 5611:22, 5622:2
**membership** [1] - 5602:17
**memo** [3] - 5544:11, 5545:4
**memory** [8] - 5508:16, 5509:16, 5578:9,

5593:18, 5595:21, 5601:6, 5601:25, 5612:9
**mental** [2] - 5649:11, 5650:3
**mention** [3] - 5547:13, 5650:16, 5671:8
**mentioned** [2] - 5497:4, 5593:23
**merger** [2] - 5653:7, 5653:10
**mess** [1] - 5511:3
**met** [8] - 5519:24, 5544:10, 5544:19, 5591:10, 5592:4, 5592:5, 5623:18, 5625:6
**meta** [2] - 5623:15, 5623:17
**meticulously** [1] - 5530:23
**Mexican** [1] - 5496:2
**Mia** [6] - 5554:19, 5558:19, 5578:2, 5608:20, 5608:21, 5608:23
**mic** [1] - 5588:22
**Michael** [2] - 5545:5, 5545:7
**MICHAEL** [2] - 5494:1, 5676:2
**middle** [1] - 5576:23
**might** [11] - 5554:24, 5555:16, 5592:22, 5592:23, 5594:15, 5613:6, 5646:4, 5646:11, 5659:13, 5674:11
**Mike** [2] - 5515:8, 5554:17
**million** [19] - 5500:19, 5502:22, 5503:2, 5503:10, 5504:25, 5505:4, 5505:8, 5512:17, 5516:12, 5516:13, 5555:25, 5557:22, 5563:3, 5598:13, 5598:19, 5605:10, 5630:18, 5664:19
**mind** [8] - 5528:16, 5569:16, 5595:15, 5596:11, 5605:13, 5606:8, 5607:13, 5609:6
**Mindnest** [1] - 5589:13
**MINDNEST** [1] - 5589:16
**minds** [1] - 5636:3

**mine** [3] - 5611:1, 5612:3, 5635:21
**minimum** [1] - 5487:5
**minute** [4] - 5485:8, 5493:21, 5508:18, 5516:22
**minutes** [7] - 5534:18, 5540:6, 5561:16, 5561:19, 5609:2, 5609:20, 5641:16
**MISKIEWICZ** [30] - 5484:14, 5491:7, 5491:12, 5491:21, 5609:18, 5642:5, 5642:22, 5642:25, 5643:4, 5643:17, 5644:9, 5645:2, 5645:6, 5646:18, 5648:2, 5648:5, 5649:20, 5650:6, 5652:1, 5653:4, 5653:18, 5654:1, 5654:3, 5655:15, 5656:25, 5657:18, 5658:18, 5664:9, 5668:12, 5674:25
**misleading** [1] - 5560:5
**misled** [1] - 5550:23
**Miss** [1] - 5490:24
**missed** [1] - 5650:24
**missing** [6] - 5567:21, 5568:5, 5568:9, 5571:8, 5573:9, 5643:15
**mission** [1] - 5590:24
**misstatement** [1] - 5638:4
**misunderstanding** [1] - 5504:4
**mitigate** [2] - 5517:13, 5526:13
**mixed** [1] - 5630:21
**mob** [1] - 5487:25
**modification** [7] - 5623:16, 5623:20, 5624:14, 5624:16, 5624:17, 5624:19, 5624:22
**modified** [5] - 5586:14, 5602:4, 5624:18, 5625:14, 5625:16
**moment** [5] - 5534:9, 5593:20, 5625:14, 5648:20, 5648:21
**moments** [2] - 5580:15, 5592:10
**Monday** [2] - 5626:11, 5674:22

**money** [72] - 5505:9, 5507:19, 5507:24, 5507:25, 5513:7, 5514:8, 5520:20, 5525:13, 5527:2, 5527:4, 5527:10, 5527:12, 5527:20, 5527:21, 5529:25, 5530:1, 5531:7, 5531:9, 5531:24, 5532:13, 5538:2, 5538:9, 5538:13, 5538:18, 5542:9, 5552:15, 5552:18, 5552:20, 5559:10, 5559:21, 5563:19, 5567:4, 5569:25, 5570:10, 5576:3, 5576:6, 5583:9, 5584:10, 5598:11, 5599:6, 5599:19, 5605:5, 5605:15, 5605:16, 5607:4, 5615:5, 5615:7, 5629:1, 5629:16, 5630:12, 5630:14, 5632:14, 5633:21, 5638:24, 5647:11, 5647:14, 5647:15, 5648:9, 5648:14, 5648:18, 5648:21, 5649:10, 5649:13, 5649:14, 5649:24, 5650:1, 5652:16, 5652:21, 5652:23, 5653:11, 5653:14
**monies** [5] - 5629:6, 5629:13, 5630:17, 5668:17, 5669:1
**month** [3] - 5536:19, 5536:24, 5600:13
**months** [1] - 5593:12
**morning** [10] - 5493:3, 5494:5, 5494:6, 5495:1, 5495:2, 5498:16, 5498:17, 5624:1, 5626:21, 5666:2
**most** [2] - 5491:12, 5601:13
**motions** [2] - 5627:22, 5628:3
**mouth** [1] - 5655:25
**move** [8] - 5534:6, 5536:2, 5582:13, 5613:9, 5660:13, 5660:22, 5664:23, 5665:23
**moved** [4] - 5563:11, 5574:15, 5600:16,

5600:17
**moves** [2] - 5506:13, 5567:18
**moving** [2] - 5628:24, 5632:12
**MR** [245] - 5488:11, 5489:7, 5489:9, 5490:3, 5490:6, 5490:8, 5490:17, 5491:2, 5491:7, 5491:10, 5491:12, 5491:21, 5491:22, 5492:2, 5492:11, 5492:20, 5494:25, 5498:11, 5500:25, 5502:2, 5503:7, 5503:17, 5506:15, 5506:17, 5513:10, 5514:2, 5529:6, 5534:9, 5534:11, 5534:12, 5536:4, 5536:5, 5537:2, 5538:6, 5538:8, 5541:8, 5541:13, 5542:18, 5542:22, 5544:25, 5546:10, 5546:24, 5547:5, 5547:8, 5547:10, 5548:11, 5548:12, 5548:15, 5550:1, 5550:2, 5550:20, 5550:24, 5551:6, 5551:16, 5551:18, 5552:14, 5552:18, 5557:1, 5557:4, 5558:1, 5560:17, 5561:20, 5565:25, 5566:3, 5568:13, 5568:18, 5568:25, 5569:4, 5569:10, 5569:12, 5570:3, 5570:15, 5570:17, 5570:21, 5570:22, 5571:1, 5571:7, 5571:10, 5571:12, 5572:20, 5573:2, 5573:16, 5573:23, 5573:24, 5574:17, 5574:20, 5575:11, 5575:12, 5577:4, 5578:12, 5578:14, 5578:17, 5579:2, 5579:8, 5579:9, 5582:4, 5582:5, 5588:6, 5588:10, 5588:12, 5589:2, 5591:23, 5592:1, 5602:23, 5603:1, 5603:4, 5603:8, 5609:1, 5609:15, 5609:18, 5609:22,

5610:8, 5610:12, 5610:22, 5611:3, 5611:4, 5611:18, 5612:17, 5612:23, 5613:4, 5613:10, 5613:12, 5614:1, 5616:4, 5616:8, 5616:13, 5618:9, 5619:1, 5619:20, 5620:1, 5620:20, 5621:2, 5622:10, 5625:5, 5625:22, 5625:24, 5627:4, 5627:23, 5628:4, 5631:25, 5632:18, 5632:19, 5632:22, 5636:8, 5636:16, 5638:2, 5639:3, 5639:15, 5639:25, 5640:11, 5640:18, 5640:23, 5641:17, 5641:20, 5642:5, 5642:6, 5642:10, 5642:17, 5642:19, 5642:22, 5642:25, 5643:4, 5643:17, 5644:9, 5645:2, 5645:6, 5645:9, 5645:12, 5646:2, 5646:18, 5646:19, 5646:21, 5647:1, 5647:3, 5647:5, 5648:2, 5648:5, 5649:16, 5649:20, 5649:22, 5650:5, 5650:6, 5650:8, 5650:14, 5650:16, 5650:24, 5651:2, 5651:4, 5651:6, 5651:9, 5651:14, 5651:17, 5651:21, 5652:1, 5653:4, 5653:18, 5654:1, 5654:3, 5655:5, 5655:15, 5656:6, 5656:21, 5656:23, 5656:25, 5657:1, 5657:11, 5657:13, 5657:16, 5657:18, 5657:20, 5657:22, 5657:24, 5658:14, 5658:18, 5660:23, 5661:4, 5662:15, 5663:2, 5664:9, 5665:5, 5666:5, 5666:8, 5667:17, 5668:6, 5668:12, 5668:13, 5669:19, 5670:2, 5670:5, 5670:6, 5670:19, 5671:4, 5672:10,

5672:18, 5673:20, 5674:18, 5674:24, 5674:25, 5675:2, 5676:3, 5676:5, 5676:6, 5676:8, 5676:10, 5676:13
**MS** [77] - 5492:1, 5492:23, 5498:15, 5502:13, 5503:4, 5504:17, 5504:18, 5506:13, 5506:22, 5514:10, 5514:14, 5515:2, 5529:10, 5534:16, 5537:16, 5539:15, 5540:1, 5540:10, 5540:16, 5541:12, 5542:1, 5542:13, 5543:15, 5544:8, 5545:24, 5546:15, 5546:18, 5550:15, 5551:12, 5551:23, 5553:6, 5557:21, 5560:10, 5560:18, 5561:15, 5567:18, 5569:7, 5569:11, 5569:15, 5569:21, 5570:8, 5570:19, 5571:2, 5572:13, 5573:14, 5573:19, 5574:9, 5575:4, 5575:7, 5575:9, 5576:2, 5577:1, 5579:6, 5588:8, 5591:22, 5602:25, 5603:3, 5610:19, 5616:7, 5617:2, 5618:2, 5618:17, 5619:19, 5622:13, 5622:22, 5625:2, 5626:1, 5626:3, 5637:7, 5637:15, 5638:17, 5672:1, 5672:4, 5672:9, 5672:15, 5676:4, 5676:12
**Mueller** [1] - 5596:14
**multiple** [9] - 5486:22, 5502:14, 5502:15, 5630:1, 5633:2, 5640:15, 5640:16, 5663:16, 5669:22
**must** [4] - 5635:18, 5647:13, 5649:4, 5650:3
**mutual** [2] - 5592:6, 5593:23
**mutually** [1] - 5659:4
**Myrick** [1] - 5562:23

## N

**name** [19] - 5495:21, 5508:9, 5509:4, 5532:10, 5588:18, 5588:19, 5591:11, 5592:2, 5594:11, 5594:18, 5594:20, 5612:1, 5612:11, 5615:20, 5615:24, 5616:3, 5618:20, 5644:13, 5644:24
**named** [1] - 5513:1
**names** [1] - 5591:15
**Nash** [4] - 5564:2, 5564:4, 5564:10, 5564:14
**Nash's** [1] - 5655:9
**Nathan** [1] - 5596:14
**nature** [4] - 5504:10, 5615:22, 5657:7, 5670:13
**necessarily** [5] - 5547:13, 5560:4, 5574:2, 5647:25, 5659:14
**necessary** [6] - 5546:25, 5547:8, 5637:10, 5654:15, 5655:11, 5662:12
**necessity** [1] - 5659:17
**need** [25] - 5539:16, 5548:10, 5551:19, 5561:10, 5561:16, 5570:3, 5598:6, 5603:16, 5605:6, 5605:15, 5605:24, 5609:19, 5610:17, 5619:15, 5626:6, 5627:24, 5645:2, 5654:20, 5658:25, 5659:3, 5659:4, 5663:14, 5663:21, 5664:4
**needed** [5] - 5496:9, 5527:16, 5585:22, 5598:25, 5603:14
**negate** [1] - 5648:6
**negotiating** [1] - 5528:4
**neutral** [1] - 5644:23
**never** [26] - 5485:7, 5487:1, 5491:15, 5513:7, 5518:20, 5519:6, 5520:11, 5520:12, 5520:21, 5520:25, 5522:9, 5522:10, 5525:5, 5529:19, 5541:13,

5552:10, 5559:24, 5587:22, 5619:3, 5620:24, 5629:9, 5629:10, 5629:11, 5636:3, 5648:7
**NEW** [1] - 5484:1
**new** [3] - 5589:20, 5592:22, 5594:14
**New** [9] - 5484:14, 5484:22, 5496:11, 5496:16, 5635:5, 5635:7, 5637:24, 5637:25, 5638:20
**next** [7] - 5502:23, 5564:12, 5564:19, 5588:11, 5604:11, 5660:22, 5664:23
**nice** [1] - 5593:20
**night** [2] - 5642:3, 5675:1
**nightclub** [1] - 5581:15
**nine** [1] - 5555:14
**nominal** [2] - 5519:11, 5615:15
**none** [5] - 5493:8, 5550:19, 5566:3, 5569:23, 5649:22
**nonetheless** [1] - 5649:7
**normally** [1] - 5610:23
**Northern** [3] - 5630:5, 5662:15, 5662:17
**Northwest** [1] - 5532:12
**notation** [3] - 5532:17, 5533:20, 5539:12
**note** [5] - 5545:9, 5545:10, 5610:10, 5637:18, 5641:23
**noted** [2] - 5485:15, 5583:11
**notes** [1] - 5496:6
**nothing** [8] - 5497:2, 5502:11, 5514:4, 5541:19, 5565:16, 5629:8, 5648:14, 5662:22
**notice** [3] - 5553:8, 5609:1, 5610:24
**noticed** [1] - 5657:5
**novel** [1] - 5637:1
**November** [1] - 5633:16
**novice** [1] - 5594:3
**Number** [1] - 5671:25
**number** [25] - 5489:24, 5492:9, 5492:22, 5496:4, 5502:5, 5502:7,

5523:18, 5523:20, 5528:8, 5533:13, 5533:15, 5533:23, 5537:10, 5537:11, 5557:22, 5563:11, 5566:5, 5568:18, 5584:8, 5585:18, 5589:24, 5593:3, 5596:14, 5615:15, 5654:8

**numbers** [6] - 5489:12, 5489:22, 5529:22, 5529:23, 5544:14, 5606:14

**NY** [1] - 5484:4

## O

**o'clock** [2] - 5609:2, 5609:9
**oath** [3] - 5494:11, 5635:14, 5636:2
**object** [5] - 5529:6, 5560:17, 5616:15, 5618:6, 5659:10
**objecting** [2] - 5514:2, 5514:5
**objection** [38] - 5490:22, 5491:5, 5491:17, 5492:20, 5494:19, 5502:2, 5506:15, 5506:18, 5534:8, 5534:11, 5534:12, 5537:2, 5538:6, 5566:1, 5568:12, 5568:25, 5569:4, 5569:12, 5570:16, 5575:10, 5579:6, 5591:21, 5602:25, 5603:1, 5610:7, 5610:18, 5611:2, 5617:3, 5618:2, 5620:12, 5645:16, 5647:5, 5649:17, 5652:3, 5653:20, 5656:17
**objectionable** [1] - 5619:14
**objections** [5] - 5536:3, 5642:15, 5642:18, 5642:19, 5674:9
**objective** [6] - 5657:23, 5659:22, 5660:9, 5660:21, 5663:16, 5669:14
**objectives** [8] - 5638:9, 5646:12, 5659:1, 5660:1, 5660:20, 5667:2,

5667:11, 5669:22
**objects** [1] - 5658:22
**obligated** [1] - 5643:21
**obligation** [1] - 5547:22
**obtained** [3] - 5557:11, 5558:21, 5652:9
**obvious** [1] - 5649:1
**obviously** [21] - 5486:2, 5486:25, 5487:20, 5488:1, 5488:7, 5492:16, 5542:15, 5627:8, 5639:14, 5644:2, 5645:7, 5649:10, 5649:23, 5650:1, 5653:2, 5655:6, 5656:13, 5660:6, 5664:15, 5669:12, 5674:2
**occasions** [1] - 5485:24
**occupation** [1] - 5589:12
**occur** [1] - 5550:3
**occurred** [6] - 5511:1, 5551:3, 5552:19, 5559:18, 5601:24, 5640:3
**OF** [3] - 5484:1, 5484:3, 5484:9
**offer** [3] - 5490:1, 5616:22, 5629:16
**offered** [5] - 5489:24, 5490:12, 5635:24, 5674:15
**offering** [3] - 5485:19, 5487:19, 5568:15
**office** [12] - 5554:25, 5568:4, 5572:7, 5576:23, 5577:5, 5587:15, 5593:13, 5608:7, 5608:18, 5610:13, 5622:5, 5641:18
**officer** [1] - 5486:16
**offices** [1] - 5537:12
**officially** [1] - 5594:16
**offline** [1] - 5583:18
**often** [1] - 5635:17
**oftentimes** [1] - 5670:11
**old** [1] - 5606:19
**oLIVERAS** [1] - 5641:17
**OLIVERAS** [1] - 5484:18
**omission** [1] -

5648:19
**once** [8] - 5524:10, 5524:13, 5604:21, 5605:7, 5668:1, 5672:15, 5674:6
**One** [4] - 5484:13, 5633:7, 5634:18, 5635:10
**one** [103] - 5485:25, 5487:22, 5487:23, 5488:11, 5488:12, 5489:9, 5490:3, 5494:13, 5496:16, 5499:14, 5502:6, 5507:10, 5507:16, 5512:7, 5512:10, 5523:6, 5523:10, 5526:14, 5529:14, 5532:22, 5533:9, 5533:12, 5534:9, 5539:16, 5547:12, 5549:1, 5555:15, 5555:23, 5558:4, 5559:4, 5559:19, 5559:20, 5562:4, 5564:11, 5564:12, 5576:19, 5577:6, 5577:25, 5578:1, 5580:3, 5581:19, 5584:14, 5584:15, 5586:24, 5587:17, 5587:21, 5589:16, 5590:3, 5594:1, 5594:4, 5595:22, 5600:4, 5603:20, 5605:3, 5605:17, 5606:13, 5608:25, 5609:2, 5616:13, 5618:24, 5619:22, 5620:5, 5630:18, 5634:5, 5635:4, 5637:17, 5640:14, 5642:13, 5643:7, 5643:8, 5643:9, 5644:10, 5644:11, 5645:5, 5646:6, 5650:9, 5650:17, 5650:19, 5650:23, 5651:19, 5654:3, 5654:4, 5657:25, 5658:3, 5658:5, 5658:21, 5658:22, 5658:23, 5660:10, 5660:21, 5667:2, 5667:11, 5667:13, 5667:24, 5668:20, 5674:2
**ones** [12] - 5490:15, 5491:7, 5491:10, 5524:1, 5524:2,

5546:11, 5557:6, 5584:22, 5585:16, 5585:18, 5585:22, 5586:3
**ongoing** [4] - 5596:8, 5596:25, 5599:10, 5630:11
**online** [1] - 5590:19
**open** [11] - 5503:8, 5504:1, 5515:1, 5572:1, 5575:1, 5590:19, 5618:15, 5619:6, 5622:1, 5669:23
**opening** [4] - 5485:10, 5487:17, 5488:3, 5580:4
**openings** [1] - 5654:8
**operating** [5] - 5549:13, 5595:4, 5595:16, 5605:9, 5624:7
**operation** [4] - 5595:6, 5597:3, 5652:21, 5652:25
**operationally** [1] - 5619:24
**operations** [1] - 5589:19
**opine** [1] - 5559:15
**opinion** [2] - 5509:1, 5527:22
**opponent** [3] - 5486:2, 5486:10, 5486:14
**opportunity** [5] - 5543:8, 5546:11, 5618:22, 5634:9, 5670:7
**opposed** [1] - 5667:13
**opposing** [1] - 5674:8
**opposite** [2] - 5631:19, 5635:13
**Order** [1] - 5485:1
**order** [6] - 5512:6, 5550:6, 5563:19, 5603:19, 5603:20, 5649:3
**ordered** [1] - 5610:12
**organized** [1] - 5642:12
**original** [8] - 5568:7, 5568:10, 5572:8, 5595:16, 5595:20, 5596:10, 5598:21, 5599:2
**originally** [5] - 5578:4, 5585:20, 5598:10, 5599:21, 5601:19
**os** [1] - 5636:19
**ostensible** [1] -

5485:18
**ought** [2] - 5636:5, 5637:4
**outcome** [3] - 5643:24, 5644:3, 5644:4
**outline** [1] - 5522:11, 5630:4
**outlined** [2] - 5528:7, 5650:4
**outlines** [1] - 5522:7
**Outside** [1] - 5553:5
**outside** [7] - 5521:14, 5540:1, 5542:20, 5549:23, 5588:12, 5600:14, 5666:21
**overall** [1] - 5659:5
**overhead** [1] - 5652:11
**overruled** [1] - 5537:3
**oversight** [1] - 5651:7
**overstock** [1] - 5590:23
**overt** [3] - 5635:23, 5659:8, 5659:10
**owed** [10] - 5507:19, 5507:24, 5507:25, 5510:7, 5510:18, 5518:15, 5518:18, 5519:16, 5555:24, 5557:16
**Owen** [1] - 5537:16
**own** [6] - 5538:14, 5562:6, 5599:5, 5600:16, 5644:2, 5663:11
**owned** [4] - 5515:20, 5560:20, 5592:17, 5606:20
**ownership** [14] - 5516:24, 5542:17, 5544:20, 5545:17, 5545:20, 5547:16, 5547:19, 5548:22, 5558:15, 5606:21, 5633:18, 5633:23, 5634:3, 5634:16
**Oxley** [1] - 5659:9

## P

**P&L** [1] - 5554:12
**p.m** [2] - 5609:25, 5675:4
**pack** [1] - 5551:10
**package** [1] - 5616:19
**page** [36] - 5495:14, 5501:2, 5503:23, 5513:13, 5514:16, 5521:23, 5521:24,

5522:22, 5531:4, 5535:5, 5564:7, 5564:12, 5572:6, 5572:15, 5575:17, 5576:22, 5597:16, 5611:25, 5612:24, 5613:15, 5617:6, 5621:4, 5622:6, 5642:13, 5643:2, 5643:4, 5645:10, 5646:19, 5646:20, 5647:5, 5649:2, 5651:5, 5651:11, 5652:2, 5657:14
**pages** [5] - 5521:1, 5530:18, 5554:11, 5571:8, 5577:23
**paid** [19] - 5506:5, 5506:10, 5516:10, 5518:6, 5518:18, 5518:20, 5518:23, 5519:9, 5519:10, 5519:15, 5567:7, 5574:5, 5574:8, 5574:11, 5583:9, 5583:14, 5583:15, 5587:1
**papers** [21] - 5564:6, 5565:3, 5565:19, 5566:14, 5566:16, 5566:17, 5566:21, 5567:25, 5568:2, 5575:5, 5578:19, 5580:1, 5580:22, 5580:23, 5581:1, 5581:11, 5583:12, 5585:17, 5585:25, 5586:4
**paragraph** [10] - 5563:24, 5564:3, 5564:9, 5564:13, 5633:12, 5633:13, 5633:14, 5645:16
**paragraphs** [3] - 5633:11, 5645:12, 5646:15
**parameters** [2] - 5670:14, 5673:21
**pardon** [8] - 5492:2, 5522:17, 5522:19, 5527:19, 5530:15, 5538:25, 5581:3, 5587:5
**part** [47] - 5486:17, 5502:5, 5509:6, 5539:2, 5539:10, 5548:17, 5553:20, 5553:22, 5562:15, 5567:3, 5568:2, 5570:21, 5574:18,

5576:3, 5579:12, 5580:1, 5580:23, 5596:24, 5601:13, 5618:12, 5620:9, 5629:2, 5629:22, 5631:21, 5633:15, 5638:24, 5639:5, 5642:17, 5645:5, 5645:7, 5647:14, 5647:22, 5650:10, 5650:17, 5650:19, 5650:23, 5650:24, 5650:25, 5651:19, 5651:20, 5651:22, 5651:24, 5654:4, 5657:17, 5666:21, 5668:18, 5673:10
**participant** [1] - 5649:6
**participated** [7] - 5511:22, 5592:14, 5628:17, 5639:10, 5658:22, 5658:24, 5664:14
**participating** [1] - 5647:12
**participation** [3] - 5596:19, 5596:25, 5647:6
**particular** [20] - 5487:3, 5487:24, 5495:24, 5496:8, 5496:15, 5515:12, 5547:12, 5548:8, 5548:9, 5554:2, 5562:9, 5572:6, 5577:11, 5624:5, 5629:23, 5635:8, 5636:4, 5643:7, 5647:7, 5648:20
**particularly** [2] - 5648:16, 5652:9
**parties** [6] - 5522:14, 5618:14, 5654:14, 5655:17, 5657:4, 5666:15
**partner** [2] - 5499:7, 5516:20
**Partners** [10] - 5511:9, 5511:12, 5511:17, 5515:19, 5515:23, 5516:1, 5516:3, 5516:4, 5532:12, 5604:3
**partners** [1] - 5526:22
**partnership** [1] - 5516:20
**parts** [1] - 5548:12
**party** [4] - 5486:2, 5486:9, 5486:14,

5656:4
**pass** [1] - 5552:2
**patent** [1] - 5605:22
**patents** [1] - 5598:8
**patient** [1] - 5626:14
**Pattern** [1] - 5642:25
**pattern** [1] - 5652:20
**pause** [1] - 5508:21
**pay** [6] - 5517:12, 5527:20, 5529:2, 5570:11, 5570:12, 5574:13
**payable** [1] - 5545:10
**paycheck** [1] - 5605:17
**paying** [4] - 5527:18, 5570:5, 5652:22, 5653:1
**payments** [6] - 5525:23, 5526:10, 5526:12, 5526:20, 5526:24, 5562:10
**Peca** [4] - 5638:21, 5639:9, 5655:8
**penalty** [1] - 5664:19
**pending** [1] - 5538:4
**people** [12] - 5529:14, 5590:4, 5590:6, 5590:7, 5590:18, 5592:23, 5596:14, 5596:15, 5608:22, 5620:7, 5620:23, 5654:25
**people's** [1] - 5591:14
**per** [1] - 5580:5
**percent** [21] - 5579:4, 5593:5, 5593:6, 5597:1, 5597:4, 5600:22, 5601:1, 5601:4, 5601:18, 5601:25, 5602:1, 5602:3, 5602:6, 5602:17, 5604:6, 5604:11, 5606:10, 5606:11, 5607:18, 5607:21
**percentage** [6] - 5596:20, 5600:20, 5601:22, 5604:15, 5606:9, 5606:25
**perfect** [2] - 5609:6, 5665:6
**perform** [5] - 5594:21, 5596:23, 5597:11, 5597:20
**performed** [3] - 5522:8, 5586:14
**period** [4] - 5540:18, 5543:22, 5600:7, 5613:9

**perjurious** [1] - 5486:24
**permissible** [1] - 5656:16
**permission** [1] - 5643:11
**permit** [1] - 5670:25
**permitted** [1] - 5548:17
**person** [6] - 5488:1, 5593:16, 5600:6, 5611:25, 5618:11, 5634:5
**personal** [20] - 5512:14, 5520:1, 5541:9, 5541:22, 5542:5, 5545:25, 5551:2, 5554:22, 5556:21, 5557:6, 5557:10, 5559:6, 5559:14, 5606:17, 5614:24, 5629:1, 5633:22, 5644:2, 5648:10
**personally** [4] - 5516:19, 5605:10, 5607:1, 5631:13
**persons** [1] - 5656:11
**perspective** [2] - 5614:21, 5633:2
**pertaining** [1] - 5623:14
**pertains** [2] - 5550:8, 5641:11
**Pete** [1] - 5596:13
**Pfluger** [1] - 5596:14
**phase** [1] - 5600:6
**phenomenally** [1] - 5626:13
**Phil** [17] - 5523:3, 5537:14, 5550:10, 5564:20, 5573:8, 5578:5, 5579:22, 5581:9, 5586:6, 5625:8, 5633:25, 5634:12, 5634:19, 5634:25, 5635:15, 5635:21, 5641:9
**PHILIP** [1] - 5484:5
**Phillip** [2] - 5645:13, 5645:18
**PHILLIP** [1] - 5484:5
**Phoenix** [1] - 5568:11
**phone** [5] - 5524:6, 5593:3, 5608:5, 5610:13, 5614:19
**photocopy** [1] - 5572:4
**phraseology** [1] - 5650:20

**pieces** [1] - 5628:14
**Pierrepont** [1] - 5484:13
**place** [3] - 5549:6, 5618:13, 5619:3
**placed** [1] - 5599:9
**places** [1] - 5607:6
**plain** [1] - 5516:9
**plaintiff** [1] - 5615:20
**plan** [1] - 5674:9
**plane** [12] - 5509:22, 5512:12, 5512:19, 5513:4, 5513:7, 5513:8, 5515:4, 5526:15, 5526:18, 5620:19, 5620:22
**planes** [7] - 5511:13, 5511:17, 5511:18, 5511:23, 5512:4, 5512:7, 5515:3
**platform** [1] - 5598:9
**play** [1] - 5662:21
**Playboy** [2] - 5496:18, 5562:23
**played** [1] - 5595:25
**player** [2] - 5654:9, 5654:23
**players** [17] - 5496:21, 5525:20, 5525:24, 5528:6, 5531:12, 5531:13, 5538:24, 5539:1, 5541:3, 5541:23, 5584:12, 5585:7, 5585:8, 5585:13, 5585:18, 5586:6, 5656:11
**playoffs** [1] - 5577:8
**Plaza** [2] - 5484:13, 5484:21
**plus** [2] - 5562:22, 5586:12
**pm** [6] - 5610:2, 5624:9, 5624:11, 5625:11, 5626:23, 5641:25
**point** [55] - 5490:23, 5492:11, 5492:21, 5494:9, 5495:23, 5514:3, 5514:4, 5550:13, 5550:22, 5559:10, 5569:20, 5571:10, 5592:13, 5592:21, 5594:12, 5595:4, 5596:1, 5598:3, 5598:6, 5598:12, 5600:10, 5601:17, 5602:7, 5603:12, 5603:13, 5605:3, 5605:8, 5605:12, 5605:24,

5607:9, 5612:16,
5613:8, 5614:4,
5615:17, 5620:1,
5620:6, 5620:8,
5620:21, 5620:23,
5625:13, 5631:1,
5633:14, 5635:1,
5635:20, 5636:16,
5636:22, 5649:1,
5649:12, 5655:13,
5663:6, 5664:16,
5666:4, 5667:17,
5669:7, 5670:6
**pointed** [1] - 5489:10
**points** [1] - 5646:9
**polled** [1] - 5660:1
**popped** [2] - 5608:18,
5608:19
**pornography** [1] -
5673:25
**portion** [11] - 5527:15,
5572:3, 5573:11,
5577:15, 5577:16,
5579:1, 5597:16,
5604:15, 5625:19,
5638:11, 5664:14
**portions** [2] - 5625:21,
5652:11
**position** [12] -
5487:23, 5488:2,
5547:24, 5549:9,
5552:9, 5552:11,
5605:7, 5628:15,
5629:5, 5631:19,
5640:4, 5666:4
**positive** [2] - 5491:3,
5606:7
**possessed** [1] -
5644:5
**possessive** [1] -
5657:9
**possibility** [2] -
5630:9, 5667:5
**possible** [2] -
5631:15, 5667:12
**possibly** [1] - 5647:10
**post** [2] - 5637:9,
5659:9
**post-trial** [1] - 5637:9
**posted** [1] - 5642:2
**potential** [4] - 5550:3,
5614:17, 5615:3,
5615:9
**potentially** [2] -
5544:3, 5560:2
**power** [2] - 5512:7,
5614:15, 5656:5
**PR** [1] - 5525:22
**practical** [1] - 5649:3
**practice** [2] - 5626:25,

5670:20
**preceded** [1] -
5632:23
**precise** [1] - 5637:3
**precisely** [1] - 5634:10
**preclude** [1] - 5546:7
**precluded** [3] -
5485:10, 5485:16,
5487:1
**precluding** [3] -
5559:6, 5560:9,
5561:13
**prefer** [2] - 5637:17,
5673:17
**prejudicial** [1] -
5559:2
**prepaid** [1] - 5594:13
**preparation** [1] -
5613:5
**prepare** [9] - 5499:25,
5500:3, 5515:5,
5553:20, 5558:18,
5559:9, 5615:1,
5615:2, 5674:14
**prepared** [25] -
5495:14, 5515:7,
5515:18, 5521:4,
5521:7, 5522:9,
5540:2, 5540:12,
5540:13, 5545:5,
5545:7, 5550:18,
5551:14, 5553:16,
5553:25, 5557:11,
5557:16, 5558:5,
5558:20, 5579:23,
5587:13, 5588:2,
5615:5, 5615:9,
5643:8
**preparing** [3] -
5499:12, 5499:24,
5504:24
**prepayment** [1] -
5664:19
**preponderance** [3] -
5668:23, 5669:2,
5669:9
**presence** [4] -
5493:23, 5549:23,
5553:5, 5611:9
**present** [4] - 5488:8,
5488:24, 5590:15,
5658:1
**presentation** [2] -
5626:4, 5647:21
**presented** [3] -
5498:1, 5636:25,
5673:10
**preserve** [2] -
5525:24, 5526:24
**preserved** [1] -

5627:25
**presumably** [1] -
5489:1
**pretty** [10] - 5507:8,
5509:19, 5585:10,
5605:23, 5606:3,
5608:4, 5613:10,
5615:15, 5631:17,
5657:2
**preventative** [1] -
5615:4
**previous** [2] -
5632:15, 5637:21
**previously** [3] -
5492:15, 5494:2,
5611:13
**primarily** [1] - 5594:24
**primary** [2] - 5525:21,
5559:19
**print** [1] - 5534:22
**private** [2] - 5546:6,
5549:10
**privileges** [1] - 5583:5
**Privitello** [15] -
5629:18, 5631:9,
5631:13, 5632:20,
5633:17, 5634:1,
5634:10, 5634:13,
5634:17, 5634:21,
5641:1, 5641:6,
5641:12, 5648:7,
5648:12
**Privitello's** [3] -
5629:3, 5629:11,
5633:23
**privy** [1] - 5517:24
**probable** [4] -
5549:15, 5549:17,
5560:18, 5561:3
**problem** [14] -
5503:12, 5503:18,
5512:24, 5516:8,
5516:25, 5613:4,
5649:18, 5651:11,
5653:8, 5653:10,
5658:10, 5665:14,
5665:15, 5667:9
**problems** [2] - 5607:7,
5658:7
**procedures** [3] -
5522:7, 5522:8,
5522:12
**proceeding** [2] -
5673:3, 5674:3
**proceedings** [2] -
5508:21, 5675:4
**Proceedings** [1] -
5484:25
**proceeds** [8] - 5530:6,
5530:9, 5639:1,

5652:3, 5652:19,
5653:8, 5653:17,
5653:24
**process** [2] - 5522:6,
5634:13
**produced** [5] -
5484:25, 5542:2,
5569:8, 5635:16,
5671:24
**producing** [1] -
5521:16
**product** [3] - 5486:20,
5543:10, 5544:15
**proffered** [1] -
5655:21
**profit** [1] - 5652:13
**profitable** [1] -
5540:18
**profits** [2] - 5554:15,
5652:25
**program** [1] - 5522:2
**project** [2] - 5522:11,
5584:1
**promised** [1] -
5634:16
**promoting** [1] -
5652:23
**promotion** [2] -
5652:21, 5652:25
**pronunciation** [1] -
5591:13
**proof** [6] - 5531:24,
5547:18, 5547:23,
5548:1, 5616:22,
5641:9
**proper** [6] - 5487:10,
5541:25, 5544:22,
5582:19, 5613:6,
5656:16
**properly** [2] - 5515:18,
5568:21
**properties** [2] -
5526:11, 5526:13
**proposed** [5] -
5496:18, 5637:12,
5642:2, 5643:11,
5650:17
**proposing** [1] -
5552:12
**prosecution** [3] -
5487:23, 5633:6,
5644:3
**prosecutor** [1] -
5552:23
**protected** [5] -
5511:23, 5526:4,
5526:10, 5526:12,
5526:24
**protective** [3] -
5525:23, 5526:6,

5526:7
**prove** [2] - 5650:2,
5650:3
**provide** [9] - 5493:12,
5543:12, 5566:11,
5585:22, 5593:4,
5599:1, 5599:10,
5622:4, 5634:15
**provided** [25] -
5495:13, 5497:2,
5509:13, 5523:3,
5529:22, 5536:24,
5537:8, 5539:13,
5542:23, 5543:3,
5543:8, 5543:13,
5544:21, 5545:21,
5546:20, 5555:6,
5561:3, 5566:13,
5567:25, 5568:1,
5580:16, 5583:4,
5583:17, 5630:19,
5648:13
**provides** [1] - 5554:9
**prowess** [1] - 5651:18
**public** [1] - 5590:4
**publicly** [1] - 5631:20
**pulled** [1] - 5545:2
**pure** [1] - 5652:13
**purpose** [24] -
5485:18, 5486:21,
5504:12, 5522:7,
5522:11, 5525:15,
5525:18, 5525:21,
5527:3, 5527:10,
5527:13, 5527:18,
5527:21, 5528:2,
5528:7, 5528:16,
5528:19, 5528:22,
5529:13, 5529:18,
5541:24, 5563:21,
5649:8, 5659:3
**purposely** [2] -
5502:4, 5502:10
**purposes** [15] -
5491:22, 5548:13,
5582:19, 5583:9,
5612:8, 5622:7,
5633:21, 5639:16,
5639:17, 5640:25,
5652:23, 5658:1,
5662:24, 5667:9,
5667:10
**pursue** [1] - 5635:22
**pursued** [1] - 5487:8
**pushed** [1] - 5605:12
**put** [33] - 5485:6,
5485:16, 5489:15,
5490:15, 5510:19,
5520:19, 5532:14,
5533:1, 5533:18,

5539:13, 5547:22, 5560:11, 5560:24, 5561:8, 5570:3, 5570:13, 5571:9, 5572:22, 5594:6, 5598:12, 5598:18, 5607:16, 5619:18, 5620:22, 5626:17, 5637:11, 5640:6, 5651:9, 5651:15, 5654:19, 5672:16
**puts** [3] - 5548:7, 5652:17, 5670:14
**putting** [5] - 5605:5, 5640:17, 5647:10, 5649:2, 5653:12

## Q

**quarter** [3] - 5563:3, 5598:13, 5598:19
**questioned** [1] - 5574:4
**questioning** [4] - 5502:3, 5502:13, 5504:8, 5504:13
**questions** [21] - 5493:11, 5497:15, 5498:11, 5502:19, 5552:24, 5574:9, 5577:1, 5578:12, 5582:17, 5584:7, 5584:8, 5586:9, 5588:6, 5588:10, 5610:16, 5616:4, 5616:8, 5616:23, 5625:2, 5625:24, 5659:18
**quick** [2] - 5507:8, 5572:20
**quickly** [1] - 5612:19
**Quinones** [2] - 5653:4, 5653:5
**quite** [6] - 5588:2, 5598:11, 5605:18, 5632:5, 5635:13, 5654:7
**quote** [1] - 5638:14
**quote-unquote** [1] - 5638:11
**quote/unquote** [2] - 5560:22, 5567:5
**quoting** [3] - 5486:14, 5637:20, 5643:25

## R

**race** [2] - 5540:19, 5581:20
**raced** [2] - 5593:25, 5594:1

**races** [2] - 5594:2, 5594:4
**racing** [1] - 5554:12
**raise** [6] - 5570:16, 5599:6, 5652:14, 5653:18, 5653:19, 5653:21
**raised** [1] - 5668:14
**raises** [1] - 5659:17
**raising** [1] - 5668:7
**rally** [1] - 5620:14
**Ranford** [4] - 5565:2, 5565:4, 5565:7, 5584:15
**Ranford's** [1] - 5567:1
**range** [2] - 5615:16, 5668:19
**rather** [4] - 5540:5, 5546:4, 5643:10, 5653:1
**rationale** [1] - 5486:18
**re** [1] - 5545:5
**reached** [5] - 5600:2, 5601:9, 5602:7, 5605:2, 5622:5
**read** [18] - 5488:15, 5491:3, 5505:25, 5534:21, 5537:16, 5537:18, 5564:21, 5573:2, 5581:6, 5597:18, 5626:19, 5630:12, 5638:1, 5645:15, 5649:25, 5652:14, 5670:23, 5671:3
**reading** [1] - 5485:11
**reads** [4] - 5633:14, 5635:2, 5635:3, 5637:22
**ready** [3] - 5488:10, 5674:20, 5674:21
**real** [3] - 5523:9, 5554:2, 5646:9
**realize** [2] - 5620:7, 5638:25
**really** [25] - 5490:17, 5509:4, 5520:13, 5520:25, 5534:21, 5546:9, 5553:22, 5580:8, 5587:13, 5593:18, 5599:2, 5605:6, 5607:8, 5608:23, 5620:24, 5626:14, 5646:5, 5652:10, 5655:20, 5655:22, 5659:2, 5659:11, 5659:12, 5659:15, 5666:8
**reason** [5] - 5556:10, 5558:2, 5559:7,

5563:5, 5620:20
**reasonable** [6] - 5499:11, 5587:20, 5605:17, 5649:5, 5664:12
**reasonably** [1] - 5664:13
**reasons** [3] - 5487:12, 5632:12, 5663:19
**rebuilding** [1] - 5510:18
**rebut** [1] - 5655:21
**rebuttal** [4] - 5540:5, 5609:17, 5622:12, 5626:10
**receipt** [1] - 5649:10
**receivable** [1] - 5545:10
**receive** [4] - 5523:5, 5577:24, 5586:3, 5649:14
**received** [42] - 5523:1, 5523:2, 5523:4, 5523:8, 5523:11, 5536:7, 5540:10, 5554:14, 5566:7, 5567:9, 5567:10, 5567:15, 5570:20, 5570:24, 5572:18, 5573:17, 5575:15, 5576:4, 5577:25, 5578:2, 5578:3, 5578:4, 5577:25, 5581:23, 5582:8, 5596:20, 5596:25, 5602:24, 5611:20, 5616:17, 5641:19, 5647:11, 5647:14, 5647:15, 5647:18, 5649:24, 5650:1, 5676:17, 5676:18, 5676:19, 5676:20
**receives** [1] - 5649:13
**receiving** [1] - 5554:17
**recently** [3] - 5524:23, 5524:25, 5553:11
**receptive** [2] - 5489:4, 5498:6
**Recess** [1] - 5641:25
**recess** [2] - 5561:22, 5609:25
**recognize** [5] - 5595:14, 5595:18, 5595:19, 5602:12, 5612:2
**recollection** [24] - 5490:23, 5492:12, 5500:24, 5502:19, 5503:15, 5505:24,

5515:22, 5523:12, 5523:14, 5526:25, 5538:17, 5557:7, 5558:11, 5574:1, 5574:3, 5574:7, 5574:8, 5577:13, 5582:7, 5582:12, 5585:15, 5608:1, 5614:18, 5615:17
**recommendations** [1] - 5627:8
**record** [39] - 5485:7, 5485:14, 5485:17, 5489:16, 5489:19, 5489:21, 5491:4, 5491:23, 5530:12, 5531:20, 5532:22, 5534:7, 5536:2, 5568:13, 5569:16, 5570:22, 5573:3, 5574:7, 5580:3, 5588:19, 5609:6, 5618:3, 5618:8, 5622:6, 5625:8, 5628:11, 5629:9, 5629:14, 5629:17, 5629:20, 5634:8, 5638:4, 5639:10, 5640:3, 5640:25, 5642:1, 5655:12, 5657:1, 5658:2
**recorded** [3] - 5484:25, 5559:23, 5624:24
**recording** [1] - 5648:12
**records** [21] - 5506:14, 5506:17, 5524:24, 5525:2, 5536:16, 5544:17, 5546:18, 5547:12, 5547:15, 5547:22, 5561:9, 5570:5, 5579:18, 5587:8, 5616:16, 5616:20, 5618:13, 5618:19, 5619:12, 5620:4, 5620:9
**recovered** [1] - 5572:15
**red** [1] - 5552:12
**redact** [1] - 5573:21
**redacted** [10] - 5490:4, 5573:15, 5573:20, 5610:14, 5612:4, 5641:18, 5641:19, 5671:20, 5672:3, 5672:6
**redid** [1] - 5504:21
**REDIRECT** [2] -

5578:16, 5676:6
**redirect** [3] - 5546:25, 5547:1, 5578:13
**reduction** [1] - 5558:12
**reenters** [1] - 5552:22
**refer** [2] - 5568:22, 5655:7
**reference** [8] - 5532:3, 5577:16, 5634:1, 5636:20, 5638:1, 5641:1, 5656:8, 5656:9
**referenced** [3] - 5494:15, 5531:23, 5643:19
**references** [1] - 5670:15
**referencing** [2] - 5485:11, 5544:18
**referring** [9] - 5532:10, 5568:22, 5568:23, 5576:10, 5577:20, 5593:24, 5597:8, 5640:24, 5644:7
**refers** [2] - 5564:16, 5577:17
**reflect** [4] - 5542:6, 5542:16, 5549:14, 5636:1
**reflected** [7] - 5544:3, 5547:14, 5551:4, 5552:3, 5558:15, 5560:3, 5560:4
**reflecting** [1] - 5618:13
**refresh** [2] - 5502:18, 5582:7
**refreshes** [5] - 5500:24, 5505:23, 5508:16, 5538:17, 5582:11
**refreshing** [2] - 5503:14, 5509:16
**refund** [3] - 5555:25, 5556:1, 5586:15
**regard** [12] - 5496:3, 5581:11, 5597:12, 5597:19, 5627:1, 5629:13, 5630:16, 5632:5, 5635:25, 5645:4, 5661:1, 5666:15
**regarding** [21] - 5488:15, 5488:21, 5488:24, 5488:25, 5498:1, 5502:3, 5544:20, 5545:13, 5545:20, 5570:24,

5582:18, 5584:9,
5594:6, 5626:19,
5628:9, 5643:22,
5645:19, 5654:13,
5655:9, 5658:7,
5663:5
**regards** [28] -
5497:22, 5502:4,
5502:8, 5502:10,
5580:17, 5581:23,
5582:8, 5583:25,
5585:10, 5585:12,
5585:17, 5586:10,
5595:5, 5600:20,
5619:2, 5619:8,
5628:9, 5629:14,
5629:18, 5630:24,
5631:16, 5631:18,
5631:20, 5639:7,
5647:23, 5650:10,
5657:25, 5663:4
**reimbursed** [1] -
5577:15
**reimbursement** [2] -
5569:18, 5570:9
**reinserting** [2] -
5659:7
**reiterate** [1] - 5547:17
**reject** [1] - 5671:14
**relate** [5] - 5633:10,
5645:23, 5646:24,
5660:24, 5663:7
**related** [17] - 5514:7,
5524:2, 5525:22,
5533:22, 5562:16,
5562:22, 5562:24,
5572:5, 5576:6,
5580:22, 5644:17,
5644:25, 5645:20,
5646:1, 5646:13,
5646:16, 5647:19
**relates** [14] - 5488:13,
5577:11, 5633:3,
5634:10, 5634:18,
5634:19, 5634:21,
5634:24, 5635:8,
5636:4, 5641:6,
5646:9, 5646:23,
5653:11
**relation** [4] - 5496:12,
5497:13, 5497:15,
5530:20
**relationship** [6] -
5503:11, 5504:10,
5577:7, 5592:11,
5599:12, 5600:9
**relatively** [3] -
5592:22, 5594:14,
5596:11
**relevance** [3] -

5540:15, 5540:23,
5541:25
**relevancy** [6] -
5503:11, 5514:2,
5514:5, 5548:21,
5619:7, 5620:16
**relevant** [13] -
5486:25, 5514:9,
5540:3, 5540:18,
5542:14, 5542:17,
5543:20, 5543:22,
5548:5, 5549:11,
5549:12, 5549:20,
5620:14
**relied** [3] - 5533:17,
5537:21, 5537:23
**relinquish** [2] -
5600:8, 5603:19
**relinquished** [8] -
5601:22, 5602:1,
5602:3, 5602:6,
5602:16, 5604:6,
5604:10, 5604:14
**relinquishing** [2] -
5603:9, 5603:18
**remain** [1] - 5548:16
**remaining** [1] -
5607:19
**remains** [1] - 5618:15
**remarks** [1] - 5641:4
**remedy** [2] - 5630:14,
5630:15
**remember** [36] -
5490:14, 5490:22,
5491:16, 5491:18,
5496:15, 5500:14,
5500:18, 5502:18,
5508:2, 5508:4,
5530:4, 5538:22,
5579:14, 5579:16,
5584:11, 5592:10,
5594:11, 5596:3,
5599:8, 5604:9,
5605:17, 5605:18,
5606:1, 5606:9,
5608:6, 5615:13,
5615:16, 5615:20,
5615:24, 5616:13,
5619:2, 5620:12,
5639:3, 5640:1,
5644:12
**remembers** [2] -
5490:19, 5541:15
**remind** [3] - 5494:10,
5641:22, 5641:23
**remotely** [1] - 5509:4
**removal** [3] - 5611:23,
5612:10, 5612:14
**remove** [1] - 5614:9
**removed** [1] - 5573:11

**removing** [1] - 5614:5
**renew** [1] - 5628:3
**repayment** [1] -
5630:16
**repeat** [1] - 5640:25
**repeated** [1] - 5563:25
**repeating** [1] - 5634:7
**replace** [1] - 5557:18
**replaced** [1] - 5671:21
**replacement** [1] -
5611:23
**report** [18] - 5491:8,
5493:13, 5520:23,
5520:25, 5521:3,
5521:4, 5521:5,
5521:19, 5521:20,
5522:10, 5522:13,
5527:25, 5529:2,
5570:20, 5577:16,
5577:18
**reported** [4] - 5485:25,
5486:11, 5559:13
**reporter** [3] - 5489:10,
5489:23, 5589:14
**Reporter** [1] - 5484:20
**reports** [3] - 5509:11,
5528:9, 5553:20
**represent** [2] - 5538:3,
5625:8
**representation** [7] -
5533:1, 5543:20,
5571:6, 5615:8,
5648:16, 5648:17,
5656:12
**representations** [4] -
5540:22, 5543:25,
5634:5, 5635:9
**representative** [2] -
5555:7, 5557:12
**request** [9] - 5497:21,
5511:21, 5525:12,
5546:21, 5547:3,
5629:15, 5640:16,
5654:17, 5671:24
**requested** [4] -
5529:20, 5566:11,
5610:14, 5614:25
**requests** [1] - 5640:13
**require** [1] - 5559:24
**required** [3] - 5649:11,
5650:12, 5660:9
**requirement** [1] -
5636:12
**requisite** [1] - 5649:11
**research** [1] - 5663:15
**reside** [1] - 5589:5
**resided** [2] - 5589:7,
5638:22
**resolution** [1] - 5614:5
**resolve** [3] - 5525:25,

5662:5, 5662:6
**resolved** [1] - 5664:15
**respect** [30] - 5488:9,
5493:6, 5494:21,
5504:6, 5504:8,
5540:2, 5542:16,
5550:10, 5554:1,
5557:8, 5557:23,
5563:7, 5574:2,
5620:13, 5620:18,
5627:9, 5633:25,
5635:12, 5637:16,
5637:18, 5638:9,
5638:15, 5638:18,
5642:22, 5643:12,
5652:1, 5652:13,
5658:5, 5665:20,
5669:14
**respected** [1] - 5583:5
**respectfully** [1] -
5634:23
**respond** [1] - 5637:11
**response** [7] - 5568:2,
5569:8, 5582:10,
5585:8, 5586:6,
5637:14, 5638:13
**responsibility** [1] -
5528:20
**responsible** [3] -
5619:22, 5634:19,
5668:25
**rest** [5] - 5569:15,
5618:7, 5622:9,
5627:11, 5629:13,
5645:10
**restate** [1] - 5600:24
**restaurants** [1] -
5604:22
**rests** [3] - 5616:24,
5626:3, 5627:12
**result** [10] - 5502:21,
5515:13, 5562:15,
5583:19, 5628:17,
5630:19, 5644:20,
5644:23, 5664:18,
5669:5
**resulted** [2] - 5502:8,
5541:22
**results** [3] - 5586:1,
5607:8, 5608:5
**retain** [2] - 5538:3,
5538:10
**retained** [8] - 5496:17,
5496:21, 5499:8,
5519:7, 5519:12,
5526:16, 5538:14,
5562:25
**retainer** [2] - 5506:6,
5506:8
**return** [31] - 5502:9,

5544:3, 5545:8,
5545:11, 5545:18,
5546:3, 5546:4,
5546:5, 5546:6,
5546:9, 5547:17,
5548:4, 5548:25,
5550:25, 5551:2,
5551:5, 5551:25,
5552:1, 5552:3,
5552:6, 5554:18,
5559:3, 5559:17,
5559:24, 5560:4,
5560:5, 5560:13,
5596:19, 5599:19,
5599:20, 5634:2
**returned** [2] - 5565:11,
5565:12
**returns** [97] - 5498:24,
5499:1, 5499:2,
5499:6, 5499:7,
5499:9, 5499:12,
5499:25, 5500:2,
5500:3, 5500:11,
5504:21, 5504:22,
5504:24, 5515:7,
5540:3, 5540:7,
5540:8, 5540:9,
5540:10, 5540:12,
5540:13, 5540:22,
5541:10, 5541:11,
5541:13, 5541:17,
5541:19, 5541:24,
5542:2, 5542:7,
5542:16, 5542:18,
5542:23, 5542:24,
5543:6, 5543:14,
5544:11, 5544:12,
5544:20, 5545:3,
5545:12, 5545:14,
5545:25, 5546:10,
5546:17, 5547:15,
5548:13, 5548:15,
5548:18, 5549:22,
5550:3, 5550:9,
5550:14, 5550:15,
5550:16, 5550:18,
5551:9, 5551:13,
5551:14, 5553:13,
5553:21, 5553:25,
5554:1, 5554:9,
5554:23, 5555:9,
5555:12, 5556:16,
5556:17, 5556:18,
5556:19, 5556:21,
5556:25, 5557:5,
5557:9, 5557:10,
5557:11, 5557:14,
5557:15, 5557:16,
5557:17, 5557:18,
5557:25, 5558:5,
5558:13, 5558:15,

5558:19, 5558:20, 5559:6, 5559:9, 5559:14, 5559:19
**Returns** [1] - 5545:6
**review** [23] - 5495:7, 5496:5, 5499:13, 5508:18, 5520:9, 5520:12, 5520:16, 5520:21, 5520:24, 5521:14, 5521:16, 5521:24, 5522:24, 5523:15, 5527:20, 5527:23, 5539:14, 5562:15, 5562:17, 5576:3, 5624:1, 5642:4, 5642:9
**reviewed** [12] - 5495:5, 5495:9, 5523:21, 5528:12, 5530:19, 5532:1, 5558:21, 5563:11, 5581:2, 5581:4, 5585:16, 5623:2
**reviewing** [2] - 5495:3, 5495:10
**revised** [3] - 5499:25, 5500:2, 5672:1
**Richard** [1] - 5523:7
**RICHARD** [1] - 5484:16
**Richard/Kenner** [1] - 5577:17
**Richards** [29] - 5495:4, 5496:6, 5521:5, 5523:3, 5523:8, 5523:22, 5523:24, 5524:2, 5524:4, 5524:21, 5529:20, 5536:25, 5537:13, 5538:3, 5538:10, 5538:14, 5538:19, 5538:20, 5562:6, 5562:25, 5563:8, 5563:9, 5577:25, 5579:22, 5582:23, 5583:3, 5583:9, 5583:15, 5584:5
**Richards'** [3] - 5579:12, 5579:18, 5580:7
**Richards/Kenner** [1] - 5580:1
**rigging** [1] - 5488:1
**risk** [6] - 5660:11, 5666:24, 5667:1, 5667:7, 5667:16, 5669:12
**ROBERT** [5] - 5484:18, 5494:1,

5622:16, 5676:2, 5676:11
**Robert** [3] - 5495:22, 5497:17, 5622:14
**Rodriguez** [1] - 5615:25
**role** [3] - 5595:25, 5633:25, 5634:12
**Ron** [18] - 5495:4, 5523:3, 5523:8, 5523:22, 5523:24, 5524:2, 5524:20, 5536:24, 5538:14, 5538:19, 5562:25, 5577:25, 5579:12, 5579:17, 5579:22, 5582:23, 5583:15
**Ronald** [3] - 5537:12, 5538:3, 5538:10
**rose** [1] - 5636:24
**roughly** [3] - 5525:20, 5555:21, 5562:22
**routing** [1] - 5537:10
**RS** [1] - 5553:7
**RS-1** [1] - 5554:11
**RS-4** [1] - 5555:9
**RS-5** [1] - 5555:9
**RS6** [2] - 5500:24, 5505:22
**RS7** [1] - 5508:16
**Rucchin** [2] - 5566:18, 5584:15
**Rucchin's** [1] - 5566:23
**Rule** [10] - 5627:21, 5633:4, 5634:23, 5636:6, 5637:4, 5641:8, 5664:11, 5667:3, 5667:10
**rules** [1] - 5651:22
**ruling** [1] - 5493:1, 5493:6, 5559:1
**run** [9] - 5540:7, 5589:13, 5590:23, 5653:1, 5655:14, 5656:12, 5656:15, 5660:10, 5667:16
**running** [5] - 5521:5, 5523:9, 5524:17, 5578:1, 5652:6
**runs** [3] - 5666:24, 5667:1, 5667:7
**rushed** [1] - 5613:5

## S

**s/Kenner** [1] - 5523:7
**Sag** [1] - 5638:25
**salaries** [1] - 5607:5

**sale** [32] - 5512:7, 5512:19, 5530:7, 5530:9, 5530:12, 5530:20, 5531:22, 5532:2, 5532:5, 5540:20, 5540:21, 5541:14, 5542:4, 5542:9, 5546:6, 5549:9, 5549:14, 5549:16, 5549:20, 5551:1, 5551:2, 5552:10, 5552:11, 5552:18, 5552:19, 5559:18, 5559:23, 5618:4, 5618:5, 5619:3, 5628:10
**Salerno** [4] - 5486:11, 5486:13, 5487:16, 5487:22
**sales** [5] - 5541:18, 5541:20, 5548:22, 5549:5, 5560:23
**Saleslogix** [1] - 5590:1
**Sand** [6] - 5643:1, 5643:8, 5644:11, 5644:21, 5644:22, 5654:13
**Santos** [5] - 5652:1, 5652:15, 5652:19, 5652:20
**Sarbanes** [1] - 5659:9
**SARITA** [1] - 5484:15
**Saritha** [1] - 5672:14
**sat** [4] - 5490:17, 5490:21, 5585:20, 5610:11
**satisfied** [2] - 5529:4, 5654:9
**satisfies** [1] - 5649:16
**satisfy** [3] - 5639:24, 5667:3
**saved** [7] - 5502:21, 5503:2, 5503:10, 5504:25, 5624:18, 5624:25, 5625:15
**saw** [2] - 5531:10, 5536:19
**schedule** [8] - 5499:24, 5539:7, 5539:8, 5539:13, 5552:4, 5554:14, 5628:3
**schedules** [2] - 5500:1, 5554:10
**Scheindlin** [1] - 5644:14
**scheme** [8] - 5633:11, 5633:15, 5647:7, 5647:13, 5647:14,

5647:19, 5649:6, 5649:8
**Schwab** [1] - 5566:10
**scintilla** [1] - 5635:16
**scope** [3] - 5540:2, 5596:11, 5598:21
**Scottsdale** [2] - 5587:15, 5589:6
**screen** [3] - 5534:23, 5607:16, 5651:16
**scripted** [1] - 5597:11
**search** [1] - 5592:24
**seated** [7] - 5493:20, 5539:22, 5561:23, 5562:2, 5609:13, 5626:24, 5642:1
**SEC** [4] - 5509:6, 5509:9, 5509:10, 5509:11
**second** [12] - 5489:20, 5526:15, 5534:24, 5543:18, 5544:9, 5548:17, 5555:24, 5568:20, 5587:21, 5629:2, 5645:16, 5646:15
**Second** [11] - 5485:24, 5486:5, 5486:7, 5486:12, 5542:4, 5643:19, 5644:15, 5644:23, 5645:3, 5653:3, 5664:8
**secondly** [1] - 5541:14
**section** [6] - 5547:14, 5567:20, 5568:4, 5568:9, 5568:23, 5642:13
**Section** [1] - 5672:5
**sections** [1] - 5642:11
**securing** [1] - 5598:8
**see** [41] - 5488:19, 5494:6, 5500:24, 5508:16, 5536:25, 5539:7, 5546:10, 5555:11, 5566:8, 5568:6, 5569:5, 5572:8, 5573:4, 5584:14, 5584:16, 5584:16, 5586:4, 5591:14, 5604:4, 5604:21, 5606:22, 5607:16, 5608:13, 5614:22, 5620:4, 5626:21, 5630:7, 5630:21, 5634:11, 5646:21, 5649:1, 5651:10, 5651:13, 5657:10, 5657:12, 5657:16, 5661:4, 5663:15, 5664:7,

5666:9, 5671:22
**seeing** [1] - 5599:19
**seem** [1] - 5566:22
**sell** [6] - 5517:12, 5526:13, 5592:20, 5593:1, 5603:22, 5631:12
**selling** [4] - 5516:9, 5547:19, 5590:23, 5592:17
**Semple** [47] - 5492:25, 5493:2, 5493:3, 5493:20, 5494:7, 5494:10, 5495:1, 5498:20, 5499:4, 5499:6, 5502:14, 5504:11, 5506:5, 5506:23, 5508:12, 5521:10, 5529:5, 5529:11, 5540:2, 5540:11, 5542:20, 5542:24, 5543:9, 5543:13, 5543:17, 5546:22, 5549:23, 5550:16, 5551:11, 5551:13, 5551:22, 5552:13, 5552:21, 5552:22, 5560:12, 5564:22, 5572:6, 5578:18, 5582:6, 5582:11, 5610:6, 5611:7, 5619:2, 5619:8, 5620:25, 5622:4
**SEMPLE** [3] - 5494:1, 5610:12, 5676:2
**Semple's** [7] - 5488:16, 5491:8, 5542:3, 5546:16, 5546:19, 5641:18, 5655:8
**send** [5] - 5538:19, 5545:10, 5626:7, 5662:10, 5672:1
**sense** [4] - 5563:19, 5603:21, 5646:11, 5660:25
**sent** [7] - 5489:1, 5498:3, 5571:4, 5579:11, 5585:13, 5616:19
**sentence** [5] - 5564:17, 5564:21, 5649:9, 5657:8, 5670:23
**sentencing** [4] - 5668:18, 5669:6, 5669:9, 5669:24
**separate** [5] - 5492:8, 5630:22, 5638:25,

5644:16, 5666:11
**separately** [2] - 5578:24, 5580:24
**Sergei** [11] - 5496:9, 5497:13, 5497:16, 5511:3, 5511:19, 5511:21, 5523:6, 5574:4, 5577:10, 5578:5, 5655:7
**series** [2] - 5593:25, 5629:25
**served** [1] - 5505:16
**server** [1] - 5619:12
**services** [2] - 5520:14, 5599:1
**set** [2] - 5533:10, 5628:2
**Set** [5] - 5519:3, 5519:5, 5519:7, 5519:10, 5519:12
**setting** [1] - 5488:5
**settled** [1] - 5600:5
**Settlement** [33] - 5488:25, 5497:14, 5497:16, 5498:2, 5499:14, 5524:3, 5525:19, 5532:15, 5533:2, 5533:24, 5537:6, 5539:3, 5539:5, 5539:11, 5563:22, 5579:12, 5583:10, 5630:2, 5631:15, 5632:4, 5632:8, 5645:22, 5646:15, 5654:10, 5658:6, 5660:16, 5665:9, 5665:11, 5665:12, 5666:16, 5667:18, 5667:23, 5669:17
**settlement** [1] - 5510:11
**seven** [2] - 5555:14, 5672:5
**Seven** [1] - 5671:25
**several** [9] - 5485:12, 5499:15, 5519:22, 5519:24, 5593:12, 5593:25, 5598:2, 5605:5, 5638:19
**shared** [1] - 5664:20
**shareholder** [3] - 5600:11, 5614:5, 5615:9
**shares** [8] - 5540:20, 5540:21, 5541:14, 5541:21, 5542:5, 5554:1, 5554:2, 5560:23
**sheet** [15] - 5642:3,

5642:7, 5650:10, 5650:13, 5657:21, 5659:23, 5660:14, 5662:5, 5662:10, 5666:6, 5666:25, 5667:14, 5668:10, 5669:25
**sheets** [2] - 5663:18, 5664:2
**shifting** [4] - 5547:25, 5548:6, 5548:7, 5654:25
**shifts** [1] - 5547:23
**shocked** [1] - 5593:14
**shops** [1] - 5590:19
**short** [4] - 5561:18, 5587:21, 5599:20, 5640:21
**short-term** [1] - 5599:20
**show** [23] - 5485:19, 5485:21, 5487:7, 5488:4, 5502:14, 5502:16, 5534:20, 5541:18, 5546:4, 5546:13, 5559:18, 5561:4, 5570:5, 5571:5, 5582:2, 5595:12, 5602:10, 5606:13, 5607:15, 5611:19, 5612:5, 5628:21, 5674:7
**showed** [3] - 5492:7, 5530:22, 5546:5
**showing** [3] - 5533:13, 5553:7, 5557:15
**shown** [2] - 5491:18, 5580:15
**shows** [8] - 5540:16, 5540:17, 5541:5, 5597:3, 5604:2, 5619:5, 5640:3
**shut** [1] - 5606:8
**sic** [2] - 5517:14, 5526:5
**sic)** [1] - 5505:22
**side** [7] - 5497:19, 5502:11, 5573:1, 5601:12, 5612:23, 5613:14, 5662:7
**sidebar** [15] - 5489:25, 5500:25, 5502:1, 5503:22, 5513:10, 5514:1, 5514:15, 5539:16, 5571:13, 5572:21, 5574:21, 5612:18, 5613:1, 5618:1, 5621:3
**sidebars** [1] - 5674:9

**sides** [2] - 5546:19, 5659:19
**sign** [1] - 5614:5
**signature** [5] - 5595:19, 5602:21, 5611:25, 5612:2, 5614:8
**signed** [23] - 5499:7, 5509:1, 5542:18, 5542:22, 5543:23, 5544:1, 5544:7, 5544:9, 5544:23, 5545:25, 5546:12, 5546:17, 5549:22, 5595:5, 5596:24, 5604:2, 5607:17, 5608:2, 5608:19, 5612:7, 5618:11
**significance** [2] - 5624:3, 5624:16
**significantly** [1] - 5598:23
**signing** [3] - 5606:9, 5608:1, 5612:14
**signoff** [1] - 5512:6
**similar** [4] - 5522:2, 5526:13, 5591:6, 5644:22
**similarly** [1] - 5643:22
**simple** [2] - 5529:5, 5543:16
**simply** [4] - 5502:19, 5552:6, 5628:11, 5631:6
**single** [2] - 5578:23, 5654:22
**sit** [12] - 5499:10, 5500:21, 5508:25, 5509:12, 5509:15, 5520:16, 5522:2, 5523:13, 5530:19, 5610:17, 5610:23, 5665:7
**sitting** [2] - 5599:4, 5610:21
**situation** [5] - 5487:7, 5487:21, 5488:8, 5653:2, 5653:6
**situations** [2] - 5653:7, 5665:17
**Six** [3] - 5632:21, 5641:7, 5641:13
**six** [4] - 5581:20, 5606:10, 5606:11, 5646:24
**sixty** [1] - 5556:1
**sixty-dollar** [1] - 5556:1
**skip** [2] - 5665:22, 5665:23

**slow** [1] - 5562:13
**small** [2] - 5534:22, 5596:24
**SMC** [7] - 5533:15, 5545:7, 5545:8, 5565:22, 5567:16, 5573:2, 5577:22
**SMC-6** [1] - 5565:19
**SMC000013** [1] - 5491:24
**SMC3** [2] - 5530:22, 5530:24
**SMC31** [1] - 5533:15
**SME** [1] - 5545:10
**software** [2] - 5589:18, 5596:18
**sold** [9] - 5511:24, 5512:22, 5513:1, 5513:3, 5513:8, 5526:14, 5526:15, 5548:3, 5593:16
**sole** [1] - 5552:2
**solely** [1] - 5606:20
**solicited** [1] - 5648:22
**solve** [4] - 5512:24, 5516:8, 5516:25, 5659:2
**someone** [4] - 5512:6, 5513:1, 5515:10, 5521:12, 5545:16, 5593:2, 5593:18, 5603:16, 5635:19, 5639:21, 5649:13, 5650:21, 5652:16, 5671:15
**sometime** [1] - 5666:18
**sometimes** [2] - 5607:6, 5673:24
**somewhere** [2] - 5552:6, 5589:8
**sooner** [2] - 5564:18, 5564:24
**sorry** [27] - 5490:6, 5495:20, 5509:3, 5509:16, 5516:2, 5521:23, 5536:4, 5552:17, 5564:23, 5567:9, 5567:23, 5580:20, 5590:11, 5591:16, 5593:5, 5600:24, 5602:15, 5603:3, 5603:4, 5605:21, 5608:8, 5623:5, 5625:16, 5640:22, 5646:19, 5654:4, 5657:13
**sort** [6] - 5517:1, 5559:12, 5643:22, 5648:6, 5654:25,

5658:18
**sorts** [1] - 5619:12
**sounds** [2] - 5508:9, 5509:4
**sources** [1] - 5544:5
**Southern** [2] - 5493:8, 5643:18
**space** [1] - 5594:13
**speaking** [1] - 5489:13
**speaks** [1] - 5633:9
**Special** [2] - 5497:6, 5622:13
**special** [19] - 5622:23, 5650:11, 5657:22, 5658:4, 5658:8, 5659:2, 5659:6, 5659:14, 5659:22, 5660:14, 5662:5, 5662:14, 5663:17, 5664:2, 5664:24, 5666:25, 5667:13, 5667:21, 5669:25
**specific** [12] - 5496:5, 5509:20, 5515:3, 5545:17, 5547:16, 5637:19, 5645:20, 5646:1, 5647:15, 5656:8, 5656:9, 5672:13
**specifically** [11] - 5523:13, 5524:4, 5530:9, 5532:19, 5569:23, 5569:24, 5599:8, 5608:7, 5608:8, 5633:7, 5636:19
**specifics** [1] - 5512:12
**specifying** [1] - 5516:7
**speculate** [1] - 5604:8
**spell** [2] - 5588:19, 5589:14
**spend** [3] - 5615:5, 5615:6, 5665:10
**spending** [1] - 5598:11
**spent** [1] - 5528:10
**splitting** [1] - 5659:5
**spreadsheet** [3] - 5524:15, 5565:3
**stack** [1] - 5585:21
**stacks** [1] - 5585:24
**staff** [6] - 5522:3, 5529:14, 5539:12, 5579:16, 5580:4, 5585:21
**stage** [1] - 5560:8
**stall** [1] - 5526:12
**stamp** [6] - 5492:12,

5546:19, 5553:8, 5567:16, 5568:6, 5623:24
**stamped** [5] - 5542:2, 5546:19, 5568:3, 5568:7, 5568:10
**stamps** [1] - 5491:24
**stand** [3] - 5570:4, 5593:19, 5637:4
**standard** [4] - 5642:14, 5654:13, 5655:1, 5669:8
**Standard** [3] - 5536:11, 5536:15, 5537:10
**standards** [1] - 5520:14
**standpoint** [2] - 5629:11, 5642:20
**stands** [3] - 5637:2, 5666:6, 5671:15
**Stanley** [3] - 5569:25, 5570:6, 5577:7
**Stars** [1] - 5537:12
**start** [4] - 5487:13, 5498:21, 5654:21, 5674:6
**started** [6] - 5574:5, 5589:24, 5589:25, 5594:10, 5594:14, 5599:5
**starting** [1] - 5645:10
**starts** [1] - 5580:12
**state** [9] - 5487:16, 5545:19, 5552:17, 5588:18, 5627:24, 5649:11, 5650:3, 5658:2, 5666:3
**State** [1] - 5545:6
**statement** [15] - 5487:17, 5488:3, 5498:4, 5520:14, 5524:18, 5534:17, 5534:24, 5536:18, 5537:21, 5544:23, 5545:15, 5560:14, 5560:25
**statements** [11] - 5485:10, 5508:1, 5508:24, 5509:7, 5522:22, 5524:20, 5536:23, 5536:25, 5563:4, 5576:14, 5579:18
**states** [1] - 5597:22
**STATES** [3] - 5484:1, 5484:3, 5484:10
**States** [6] - 5484:13, 5484:15, 5486:4, 5486:17, 5497:7,

5643:19
**status** [1] - 5528:9
**Statute** [2] - 5666:21, 5668:2
**statute** [3] - 5632:10, 5658:7, 5659:10
**statutory** [1] - 5633:9
**stay** [1] - 5588:22
**stayed** [2] - 5502:4, 5502:10
**steals** [1] - 5652:17
**stenography** [1] - 5484:25
**step** [5] - 5550:12, 5588:9, 5616:9, 5626:2
**step-by-step** [1] - 5550:12
**stepping** [1] - 5671:1
**Steven** [1] - 5566:18
**Stevenson** [1] - 5655:10
**still** [12] - 5507:24, 5507:25, 5519:16, 5534:18, 5539:9, 5544:14, 5548:16, 5574:19, 5601:3, 5622:23, 5625:8, 5636:13
**Still** [1] - 5539:4
**stipulate** [1] - 5618:6
**stipulated** [1] - 5491:3
**stock** [12] - 5541:21, 5548:3, 5548:22, 5549:10, 5552:19, 5600:8, 5603:19, 5603:22, 5605:25, 5628:10, 5634:16
**stocks** [2] - 5628:10, 5631:12
**stolper** [1] - 5506:3
**stood** [2] - 5598:3, 5612:17
**stopped** [2] - 5586:2, 5605:9
**stopping** [1] - 5601:10
**stops** [1] - 5545:23
**storage** [1] - 5511:18
**story** [2] - 5618:24, 5618:25
**straightforward** [2] - 5673:25, 5674:3
**strange** [1] - 5665:24
**strategies** [1] - 5594:23
**streamlined** [1] - 5632:25
**street** [1] - 5608:19
**stress** [2] - 5600:3, 5651:12

**stressful** [1] - 5600:3
**strong** [2] - 5631:17, 5646:9
**structure** [4] - 5515:12, 5515:13, 5606:22, 5607:14
**struggles** [1] - 5605:4
**struggling** [1] - 5647:22
**stuck** [2] - 5593:18, 5666:16
**stuff** [2] - 5590:25, 5618:7
**subject** [4] - 5616:22, 5636:5, 5641:4, 5656:13
**submit** [5] - 5634:23, 5635:18, 5636:5, 5637:2, 5643:11
**submitted** [2] - 5580:17, 5580:23
**subpoena** [5] - 5568:2, 5569:8, 5587:14, 5587:17, 5656:5
**subpoenaed** [6] - 5543:12, 5545:1, 5550:16, 5551:10, 5587:7
**subsequent** [5] - 5555:15, 5583:21, 5602:4, 5628:23, 5645:3
**subsequently** [2] - 5495:12, 5652:9
**substance** [1] - 5643:5
**substantial** [5] - 5526:23, 5557:15, 5560:19, 5579:1, 5668:17
**substantially** [2] - 5516:10, 5668:21
**substantive** [18] - 5628:8, 5628:17, 5634:20, 5636:7, 5636:9, 5636:17, 5636:18, 5636:23, 5636:24, 5637:16, 5639:19, 5641:11, 5646:8, 5660:24, 5663:7, 5663:10, 5665:3, 5665:11
**substitute** [3] - 5556:19, 5557:15, 5557:18
**successes** [1] - 5528:11
**sue** [1] - 5634:11
**sued** [3] - 5505:12,

5614:20
**sufficient** [6] - 5649:15, 5655:12, 5660:21, 5667:3, 5667:8, 5669:25
**suggest** [3] - 5629:17, 5631:9, 5674:7
**suggested** [1] - 5648:6
**suggesting** [3] - 5503:1, 5503:2, 5551:2
**suggestion** [4] - 5547:21, 5647:24, 5648:3, 5655:19
**suit** [5] - 5502:24, 5510:14, 5564:18, 5615:22, 5634:9
**suits** [2] - 5564:24, 5614:22
**Sullivan** [1] - 5496:16
**sum** [4] - 5643:4, 5645:13, 5645:17, 5670:9
**summary** [9] - 5489:5, 5498:8, 5521:24, 5523:2, 5523:8, 5527:7, 5528:14, 5577:17, 5585:10
**summation** [9] - 5622:7, 5626:8, 5626:9, 5626:10, 5654:6, 5655:2, 5655:25, 5656:18, 5657:3
**summations** [10] - 5641:24, 5653:20, 5654:20, 5655:6, 5670:16, 5671:10, 5671:14, 5674:6, 5674:9, 5674:12
**superseding** [5] - 5632:23, 5632:24, 5633:3, 5648:8, 5671:20
**supplemental** [1] - 5643:12
**support** [13] - 5502:20, 5520:15, 5579:17, 5580:11, 5596:9, 5628:1, 5628:16, 5629:4, 5629:17, 5629:21, 5631:1, 5631:14
**supports** [1] - 5542:8
**suppose** [1] - 5658:21
**supposed** [6] - 5515:24, 5516:3, 5531:17, 5534:2, 5542:10, 5619:3

**supposedly** [1] - 5629:2
**Supreme** [1] - 5652:24
**sustain** [4] - 5628:12, 5649:3, 5656:17, 5667:24
**sustained** [3] - 5529:7, 5538:7, 5622:3
**sustaining** [1] - 5620:16
**sweat** [1] - 5598:20
**sworn** [1] - 5588:16
**sworn/affirmed** [3] - 5494:3, 5611:14, 5622:18
**system** [4] - 5517:1, 5624:5, 5624:6, 5624:7
**systems** [1] - 5589:19

## T

**tact** [1] - 5492:4
**tailers** [1] - 5590:23
**takeover** [1] - 5629:15
**talks** [2] - 5522:24, 5612:10
**tape** [1] - 5625:19
**target** [1] - 5590:23
**tasked** [1] - 5560:12
**tax** [77] - 5498:24, 5499:1, 5499:2, 5499:6, 5499:7, 5499:9, 5499:25, 5500:2, 5500:3, 5500:11, 5503:16, 5504:6, 5504:14, 5504:21, 5504:22, 5504:24, 5505:4, 5515:5, 5515:7, 5515:11, 5515:13, 5515:17, 5540:3, 5540:7, 5540:8, 5540:9, 5540:10, 5540:12, 5540:13, 5541:9, 5541:17, 5541:19, 5541:24, 5542:1, 5542:7, 5543:6, 5543:14, 5543:18, 5543:25, 5544:3, 5544:11, 5544:12, 5544:20, 5545:3, 5545:12, 5545:16, 5546:2, 5546:5, 5547:10, 5547:12, 5547:15, 5547:22, 5548:13, 5548:15, 5548:18, 5548:20, 5548:25,

5549:3, 5550:3, 5551:3, 5551:24, 5552:9, 5552:12, 5552:24, 5553:13, 5553:24, 5554:9, 5558:5, 5558:15, 5559:12, 5559:19, 5559:22, 5559:25, 5560:2

**Tax** [1] - 5545:6

**taxes** [7] - 5500:3, 5500:20, 5553:23, 5555:24, 5557:16, 5557:19, 5586:12

**TD** [1] - 5637:25

**team** [2] - 5596:15, 5622:24

**technical** [2] - 5594:25, 5595:1

**Technique** [4] - 5508:2, 5508:5, 5508:24, 5509:8

**technology** [11] - 5589:13, 5589:18, 5589:20, 5592:19, 5594:22, 5596:5, 5596:7, 5596:13, 5596:16, 5600:6, 5605:22

**telephone** [5] - 5488:21, 5488:23, 5495:15, 5495:18, 5497:12

**telephonic** [1] - 5497:17

**ten** [9] - 5561:15, 5561:19, 5597:1, 5597:4, 5600:22, 5601:1, 5601:3, 5601:18, 5604:11

**tension** [1] - 5604:24

**term** [3] - 5526:8, 5526:9, 5599:20

**terms** [16] - 5493:12, 5493:13, 5514:3, 5515:4, 5548:21, 5553:1, 5567:25, 5578:8, 5633:9, 5641:10, 5656:8, 5668:16, 5668:18, 5669:4

**testified** [25] - 5491:15, 5495:3, 5498:20, 5519:3, 5520:4, 5523:1, 5525:10, 5530:1, 5530:6, 5562:4, 5563:11, 5569:24, 5578:8, 5579:11,

5581:19, 5582:17, 5583:3, 5583:23, 5586:25, 5588:17, 5619:2, 5619:16, 5622:18, 5655:7

**testifies** [2] - 5627:7, 5627:11

**testify** [12] - 5543:24, 5550:17, 5587:13, 5588:1, 5627:2, 5627:14, 5627:17, 5643:21, 5644:1, 5654:23, 5655:17

**testifying** [5] - 5492:10, 5494:3, 5570:23, 5578:9, 5611:14

**testimony** [28] - 5486:24, 5488:13, 5488:21, 5497:4, 5530:4, 5561:6, 5561:7, 5561:12, 5566:23, 5567:1, 5573:18, 5573:25, 5574:1, 5619:17, 5625:10, 5625:13, 5625:14, 5628:20, 5635:13, 5635:14, 5635:19, 5635:24, 5642:23, 5643:13, 5644:25, 5655:8, 5655:9

**thanking** [1] - 5626:15

**THE** [259] - 5484:9, 5485:5, 5489:6, 5489:8, 5489:19, 5489:22, 5490:5, 5490:7, 5490:9, 5490:25, 5491:5, 5491:9, 5491:18, 5492:6, 5492:14, 5492:22, 5492:24, 5493:3, 5493:17, 5493:19, 5493:22, 5494:5, 5494:12, 5494:13, 5498:12, 5501:1, 5503:1, 5503:5, 5503:14, 5503:21, 5504:2, 5506:16, 5506:19, 5513:12, 5514:6, 5514:12, 5529:7, 5534:8, 5534:13, 5536:3, 5536:6, 5537:3, 5538:17, 5539:18, 5539:22, 5539:23, 5539:24, 5540:8, 5540:15, 5542:11, 5542:14, 5542:20, 5543:23,

5544:17, 5545:14, 5545:25, 5546:13, 5546:16, 5546:23, 5547:4, 5547:6, 5547:25, 5548:14, 5549:8, 5550:12, 5550:21, 5550:25, 5551:17, 5551:22, 5552:8, 5552:17, 5552:20, 5552:23, 5553:3, 5553:4, 5556:11, 5556:15, 5556:21, 5556:22, 5556:25, 5557:3, 5558:13, 5558:18, 5558:24, 5560:24, 5561:18, 5561:23, 5562:2, 5562:13, 5565:21, 5566:1, 5566:4, 5567:20, 5567:22, 5567:23, 5567:24, 5568:12, 5568:15, 5568:23, 5569:2, 5569:5, 5569:9, 5569:14, 5569:19, 5570:13, 5571:9, 5571:11, 5572:2, 5572:10, 5572:11, 5572:14, 5572:17, 5573:21, 5574:16, 5574:19, 5575:2, 5575:5, 5575:8, 5575:10, 5575:13, 5577:2, 5578:13, 5579:7, 5588:7, 5588:9, 5588:11, 5588:18, 5588:20, 5588:22, 5588:24, 5591:21, 5591:24, 5603:2, 5609:4, 5609:13, 5609:16, 5609:24, 5610:6, 5610:10, 5610:18, 5610:20, 5610:25, 5611:6, 5612:22, 5613:2, 5616:6, 5616:9, 5616:12, 5616:25, 5617:5, 5619:10, 5619:25, 5620:11, 5620:25, 5622:2, 5622:11, 5625:23, 5625:25, 5626:2, 5626:4, 5626:24, 5627:5, 5627:17, 5627:19, 5627:21, 5627:24, 5631:23, 5632:16, 5636:7, 5636:10, 5637:6, 5637:9, 5638:7, 5639:13, 5639:16,

5640:5, 5640:14, 5640:21, 5641:14, 5641:22, 5642:1, 5642:8, 5642:11, 5642:21, 5642:24, 5643:2, 5643:14, 5644:6, 5644:10, 5645:5, 5645:7, 5645:11, 5645:25, 5646:3, 5646:11, 5646:20, 5646:22, 5647:2, 5647:4, 5648:1, 5648:4, 5648:23, 5649:18, 5649:21, 5649:23, 5650:7, 5650:13, 5650:15, 5650:22, 5650:25, 5651:3, 5651:5, 5651:8, 5651:11, 5651:15, 5651:19, 5651:22, 5652:16, 5653:5, 5653:22, 5654:2, 5654:18, 5655:24, 5656:15, 5656:22, 5656:24, 5657:5, 5657:12, 5657:14, 5657:17, 5657:21, 5658:10, 5658:16, 5659:19, 5661:3, 5662:1, 5663:1, 5663:13, 5665:2, 5665:6, 5666:7, 5666:24, 5668:4, 5668:9, 5669:7, 5669:20, 5670:3, 5670:17, 5670:20, 5671:5, 5672:2, 5672:5, 5672:19, 5673:16, 5673:19, 5673:23, 5674:21, 5675:1, 5675:3

**thee** [2] - 5563:25, 5619:25

**theft** [1] - 5652:12

**themselves** [2] - 5547:16, 5631:3

**theory** [7] - 5542:8, 5633:5, 5637:3, 5648:7, 5648:9, 5652:18, 5653:14

**thereabouts** [1] - 5562:24

**therefore** [6] - 5486:21, 5618:19, 5629:6, 5629:10, 5648:9, 5668:25

**they've** [1] - 5550:4

**thinking** [10] - 5503:7, 5559:7, 5647:9,

5648:23, 5648:24, 5659:11, 5660:8, 5662:13, 5665:2, 5668:7

**third** [5] - 5521:6, 5522:14, 5523:10, 5563:2, 5611:25

**thorough** [1] - 5502:8

**threatened** [1] - 5614:20

**three** [20] - 5495:14, 5506:10, 5507:8, 5511:6, 5511:13, 5523:4, 5531:4, 5553:12, 5557:10, 5579:23, 5589:21, 5593:6, 5631:6, 5638:9, 5646:12, 5646:23, 5651:22, 5657:17, 5660:20, 5667:11

**Three** [1] - 5628:7

**three-page** [1] - 5495:14

**ticket** [5] - 5495:5, 5495:7, 5495:10, 5495:11, 5570:9

**tickets** [7] - 5570:1, 5570:6, 5570:12, 5574:6, 5574:8, 5574:11, 5574:13

**tie** [1] - 5569:21

**Tim** [2] - 5612:11, 5635:24

**Timothy** [4] - 5635:10, 5635:11, 5636:20, 5652:10

**today** [11] - 5509:16, 5518:25, 5519:1, 5519:21, 5586:25, 5587:23, 5589:13, 5591:6, 5597:15, 5618:16, 5674:5

**together** [6] - 5490:16, 5594:6, 5594:12, 5604:23, 5645:14, 5645:19

**TOMMY** [2] - 5484:6, 5484:6

**Tommy** [39] - 5542:7, 5547:19, 5553:13, 5554:11, 5554:22, 5580:5, 5591:11, 5591:12, 5592:16, 5593:2, 5593:12, 5594:1, 5594:12, 5598:3, 5598:4, 5598:6, 5598:25, 5599:15, 5600:2, 5602:7, 5603:14,

5604:19, 5604:25, 5605:2, 5605:4, 5606:16, 5606:20, 5607:13, 5607:14, 5608:8, 5608:15, 5612:16, 5618:5, 5634:2, 5634:6, 5634:11, 5645:14, 5645:18
**Tommy's** [2] - 5606:17, 5606:20
**tomorrow** [6] - 5626:9, 5626:18, 5626:21, 5641:24, 5671:11, 5674:19
**tonight** [2] - 5640:19, 5674:11
**took** [8] - 5487:23, 5504:22, 5517:20, 5521:3, 5549:6, 5619:3, 5631:19, 5653:14
**top** [1] - 5556:17
**tops** [1] - 5609:20
**total** [3] - 5489:12, 5524:17, 5601:10
**totally** [2] - 5518:15, 5654:9
**totals** [1] - 5578:1
**town** [1] - 5592:7
**track** [1] - 5529:21
**tracking** [1] - 5633:9
**tracks** [2] - 5624:17, 5643:22
**traction** [1] - 5599:5
**traffic** [1] - 5628:21
**transaction** [3] - 5618:15, 5630:13, 5631:7
**transactions** [4] - 5523:23, 5591:1, 5618:13, 5628:13
**TRANSCRIPT** [1] - 5484:9
**transcript** [2] - 5484:25, 5489:13
**transfer** [7] - 5525:2, 5531:20, 5605:25, 5607:17, 5628:10, 5635:4, 5637:23
**transferred** [4] - 5601:18, 5606:25, 5619:4, 5620:2
**transferring** [1] - 5603:10
**transfers** [2] - 5525:9, 5604:3
**transit** [1] - 5489:22
**transmission** [1] - 5637:22

**travel** [2] - 5573:7, 5581:8
**traveling** [1] - 5588:5
**trial** [10] - 5485:13, 5487:19, 5487:23, 5487:25, 5488:4, 5563:24, 5566:24, 5631:4, 5637:9, 5672:6
**TRIAL** [1] - 5484:9
**tried** [3] - 5488:17, 5531:9, 5629:16
**trigger** [2] - 5654:20, 5656:2
**Troy** [3] - 5513:1, 5513:4, 5513:6
**true** [20] - 5487:14, 5489:3, 5498:6, 5505:3, 5506:1, 5508:17, 5508:23, 5510:20, 5522:16, 5522:18, 5522:20, 5522:21, 5522:22, 5529:11, 5562:19, 5639:18, 5661:3, 5663:8, 5663:9, 5663:24
**trust** [4] - 5495:4, 5523:22, 5523:24, 5524:21
**Trust** [3] - 5630:5, 5662:16, 5662:17
**trusts** [1] - 5529:20
**truthful** [1] - 5493:11
**try** [10] - 5492:6, 5517:4, 5517:7, 5549:21, 5559:18, 5561:5, 5596:12, 5609:5, 5670:7, 5674:1
**trying** [14] - 5514:3, 5514:10, 5517:2, 5541:23, 5555:11, 5557:1, 5561:8, 5561:9, 5563:21, 5620:18, 5620:22, 5643:14, 5647:16, 5647:20
**turf** [1] - 5671:1
**turn** [2] - 5520:3, 5554:8
**turned** [3] - 5545:2, 5551:10, 5619:23
**Tursi** [1] - 5484:20
**twice** [3] - 5524:9, 5524:11, 5524:12
**two** [46] - 5485:24, 5488:11, 5497:19, 5502:7, 5503:12, 5521:6, 5540:16,

5542:11, 5544:13, 5545:12, 5548:12, 5556:1, 5558:19, 5564:19, 5586:17, 5590:3, 5592:13, 5593:5, 5601:11, 5601:25, 5602:1, 5602:3, 5602:6, 5602:16, 5604:6, 5604:10, 5605:9, 5608:22, 5609:9, 5612:11, 5612:14, 5614:5, 5614:9, 5629:17, 5630:12, 5636:3, 5645:7, 5645:12, 5646:23, 5651:20, 5651:25, 5659:4, 5660:15, 5665:24, 5672:5
**Two** [10] - 5628:7, 5634:18, 5635:2, 5635:3, 5636:7, 5636:14, 5637:18, 5641:3, 5641:12, 5671:25
**type** [2] - 5555:5, 5623:7
**types** [2] - 5594:24, 5614:22
**typically** [2] - 5614:22, 5670:9
**typo** [1] - 5657:5

**U**

**ultimate** [2] - 5528:15, 5627:10
**ultimately** [7] - 5497:2, 5511:24, 5519:11, 5541:22, 5544:12, 5587:14, 5634:14
**unable** [1] - 5583:1
**unanimity** [2] - 5657:25, 5659:3
**unanimous** [12] - 5659:22, 5660:2, 5660:9, 5660:10, 5660:12, 5660:20, 5663:3, 5663:4, 5663:25, 5664:3, 5664:4, 5664:5
**unanimously** [1] - 5665:19
**unauthorized** [1] - 5633:21
**unaware** [1] - 5645:3
**uncalled** [1] - 5654:13
**uncontradicted** [1] - 5629:9
**under** [19] - 5487:10,

5487:14, 5494:11, 5520:13, 5565:24, 5566:5, 5601:21, 5602:5, 5631:4, 5631:5, 5634:21, 5635:14, 5636:2, 5648:8, 5652:19, 5652:21, 5659:9, 5660:6, 5660:17
**underlying** [2] - 5636:23, 5653:9
**understood** [4] - 5496:20, 5497:1, 5545:24, 5560:10
**unfairly** [1] - 5559:2
**unfilled** [4] - 5548:16, 5548:18, 5548:25, 5559:3
**unfortunately** [1] - 5606:21
**UNITED** [3] - 5484:1, 5484:3, 5484:10
**United** [6] - 5484:13, 5484:15, 5486:4, 5486:17, 5497:7, 5643:19
**unlawful** [2] - 5653:1, 5653:9
**unlawfully** [1] - 5633:20
**unquote** [1] - 5638:11
**unreported** [1] - 5485:25
**unusual** [2] - 5598:24, 5647:8
**unwind** [1] - 5511:3
**up** [42] - 5485:12, 5488:12, 5496:9, 5506:9, 5513:7, 5518:25, 5519:1, 5529:3, 5531:9, 5534:23, 5536:20, 5548:10, 5556:24, 5561:9, 5563:19, 5565:9, 5565:15, 5569:6, 5569:21, 5588:23, 5590:3, 5590:15, 5593:19, 5598:3, 5599:9, 5606:8, 5608:15, 5608:22, 5612:18, 5617:5, 5619:21, 5627:7, 5627:25, 5651:9, 5651:15, 5653:22, 5659:5, 5659:19, 5664:9, 5670:9, 5671:7, 5671:15
**upshot** [1] - 5510:5
**upside** [1] - 5608:13

**urban** [1] - 5664:18
**US** [5] - 5484:4, 5484:21, 5486:4, 5486:11, 5488:22
**USA** [1] - 5587:9
**utilize** [1] - 5527:15
**utilized** [3] - 5486:19, 5492:18, 5637:3

**V**

**vacation** [1] - 5666:1
**vague** [2] - 5490:23, 5509:19
**vaguely** [1] - 5508:9
**valid** [1] - 5527:24
**Value** [1] - 5532:12
**value** [3] - 5526:16, 5526:17, 5561:3
**valued** [1] - 5590:13
**variety** [1] - 5544:5
**various** [13] - 5509:17, 5531:7, 5544:4, 5544:20, 5558:14, 5565:23, 5576:14, 5633:2, 5633:11, 5642:14, 5645:8
**VCOMMERCE** [2] - 5590:21, 5590:22
**vehicle** [3] - 5530:20, 5532:2, 5532:5
**venture** [5] - 5591:3, 5592:14, 5594:7, 5605:10, 5608:12
**venue** [14] - 5632:11, 5637:11, 5637:13, 5638:9, 5638:11, 5638:15, 5639:16, 5639:19, 5640:6, 5640:8, 5658:5, 5658:7, 5666:22, 5668:1
**verbal** [2] - 5582:10, 5593:20
**verdict** [34] - 5628:2, 5642:3, 5642:7, 5650:10, 5650:11, 5650:13, 5657:21, 5657:22, 5658:4, 5658:9, 5658:20, 5659:2, 5659:6, 5659:15, 5659:17, 5659:23, 5660:5, 5660:7, 5660:14, 5662:4, 5662:5, 5662:10, 5662:14, 5663:17, 5664:2, 5664:24, 5666:6, 5666:25, 5667:13, 5667:21, 5668:10,

5669:25
**verify** [2] - 5576:19, 5576:24
**version** [6] - 5533:6, 5563:12, 5644:22, 5672:3, 5672:19, 5672:21
**versions** [3] - 5556:12, 5556:13
**vested** [1] - 5643:23
**victim** [3] - 5487:24, 5488:2, 5488:5
**victims** [3] - 5491:14, 5639:2, 5656:12
**video** [1] - 5623:5
**view** [5] - 5600:4, 5641:8, 5655:5, 5658:17, 5663:6
**violating** [2] - 5671:9, 5671:16
**visibility** [1] - 5606:21
**Visual** - 5508:2, 5508:5, 5508:24, 5509:8
**voice** [1] - 5588:23
**vote** [2] - 5613:8, 5613:9
**voted** [1] - 5615:13
**VSTORE.com** [1] - 5590:17

## W

**Wachovia** [2] - 5635:5, 5637:23
**wait** [2] - 5542:20, 5615:6
**waiting** [1] - 5561:19
**waive** [2] - 5673:6, 5673:10
**Waldo** [1] - 5656:7
**walked** [1] - 5593:12
**Walker** [2] - 5643:18, 5644:7
**wants** [7] - 5503:9, 5522:4, 5541:9, 5541:16, 5549:4, 5561:4, 5646:10
**warrant** [1] - 5669:25
**warranted** [1] - 5631:5
**Web** [1] - 5592:21
**web** [1] - 5592:23
**website** [5] - 5592:20, 5593:4, 5593:10, 5593:17, 5594:6
**websites** [1] - 5592:25
**wedding** [1] - 5598:3
**week** [1] - 5601:11
**weeks** [1] - 5587:18
**weigh** [1] - 5663:22

**weight** [1] - 5546:9
**welcome** [1] - 5625:23
**Wells** [2] - 5537:11, 5570:11
**whatsoever** [6] - 5548:9, 5632:11, 5633:25, 5634:12, 5635:12, 5635:25
**whereas** [1] - 5660:14
**whereby** [1] - 5635:17
**whole** [4] - 5561:13, 5572:12, 5596:15, 5618:24
**Wide** [1] - 5592:21
**wife** [2] - 5496:24, 5519:24
**Wilenchik** [7] - 5505:13, 5505:17, 5506:7, 5510:3, 5510:4, 5510:13, 5510:17
**William** [1] - 5612:1
**WILLIAM** [4] - 5588:15, 5611:12, 5676:7, 5676:9
**william** [1] - 5588:20
**willing** [4] - 5538:18, 5588:2, 5658:11, 5673:9
**wire** [22] - 5525:2, 5531:20, 5537:9, 5628:8, 5633:8, 5634:20, 5635:4, 5637:22, 5637:23, 5639:17, 5639:19, 5639:24, 5641:10, 5641:11, 5645:15, 5645:19, 5646:4, 5646:13, 5660:12, 5665:14
**wired** [2] - 5538:2, 5566:10
**wires** [2] - 5639:4, 5639:6
**wiring** [1] - 5645:19
**wish** [1] - 5666:3
**withdraw** [3] - 5516:24, 5518:8, 5645:4
**withdrawals** [1] - 5533:24
**withdrawn** [1] - 5494:19
**withheld** [1] - 5552:1
**witness** [33] - 5486:23, 5487:1, 5487:3, 5487:6, 5488:18, 5490:20, 5540:5, 5543:24, 5544:2, 5544:6,

5544:10, 5548:2, 5548:4, 5550:5, 5559:8, 5559:15, 5561:8, 5561:11, 5568:22, 5588:11, 5588:16, 5609:14, 5609:17, 5609:23, 5611:1, 5611:5, 5613:3, 5616:11, 5618:21, 5618:23, 5643:7, 5644:5, 5671:11
**WITNESS** [17] - 5493:17, 5493:22, 5494:12, 5539:23, 5553:3, 5556:15, 5556:22, 5558:18, 5567:20, 5567:23, 5568:23, 5569:2, 5572:10, 5572:17, 5588:20, 5588:24, 5625:23
**witness'** [2] - 5488:13, 5573:17
**witnesses** [7] - 5491:14, 5610:23, 5643:23, 5644:17, 5654:14, 5671:13, 5671:17
**wondering** [3] - 5613:5, 5646:3, 5659:1
**Woods** [3] - 5513:1, 5513:4, 5513:6
**word** [2] - 5589:16, 5641:17
**words** [3] - 5636:13, 5655:24, 5667:4
**workers** [1] - 5652:22
**workpaper** [2] - 5522:13, 5533:20
**workpapers** [11] - 5521:22, 5521:24, 5522:15, 5530:14, 5530:16, 5530:17, 5530:22, 5532:3, 5532:18, 5532:22, 5533:9
**works** [2] - 5515:10, 5515:11
**World** [1] - 5592:21
**worried** [1] - 5660:4
**worry** [1] - 5591:15
**worth** [3] - 5593:10, 5598:13, 5598:19
**wrapped** [1] - 5529:3
**write** [4] - 5520:23, 5521:3, 5521:12, 5526:8
**written** [6] - 5492:9,

5529:14, 5537:24, 5593:7, 5593:14, 5611:21
**wrote** [4] - 5520:25, 5521:1, 5521:10, 5581:14

## Y

**year** [5] - 5499:9, 5548:3, 5554:15, 5555:24, 5591:2
**years** [21] - 5509:18, 5519:19, 5540:3, 5542:19, 5555:24, 5556:1, 5556:4, 5556:19, 5556:23, 5557:5, 5557:10, 5557:19, 5560:22, 5586:17, 5589:21, 5598:2, 5605:5, 5608:24, 5638:22, 5644:13
**yell** [1] - 5569:10
**yesterday** [10] - 5488:14, 5489:11, 5491:3, 5494:15, 5495:3, 5497:5, 5540:11, 5610:11, 5626:6, 5672:25
**YORK** [1] - 5484:1
**York** [7] - 5484:14, 5484:22, 5496:11, 5496:17, 5635:7, 5637:25, 5638:20
**young** [1] - 5592:7
**yourself** [1] - 5604:2
**yu** [1] - 5511:16

## Z

**zero** [1] - 5557:20