6124

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA       :   13-CR-607

      -against-                    US District Court
                                   Central Islip, NY
PHILLIP A. KENNER a/k/a
PHILIP A. KENNER, and
TOMMY C. CONSTANTINE a/k/a
TOMMY C. HORMOVITIS,

                Defendants.:  July 8, 2015
- - - - - - - - - - - - - - X

        TRANSCRIPT OF TRIAL
        BEFORE THE HONORABLE JOSEPH F. BIANCO
        UNITED STATES DISTRICT JUDGE, and a jury.

APPEARANCES:

For the Government:
                          KELLY T. CURRIE
                          United States Attorney
                          One Pierrepont Plaza
                          Brooklyn, New York 11201
                          By:  JAMES MISKIEWICZ, ESQ.
                               SARITHA KOMATIREDDY, ESQ.
                          United States Attorneys


For the Defense:          RICHARD D. HALEY, ESQ.
                          For Defendant Kenner

                          ROBERT LaRUSSO, ESQ.
                          ANDREW L. OLIVERAS, ESQ.
                          For Defendant Constantine


Court Reporter:           Stephanie Picozzi
                          US District Courthouse
                          1180 Federal Plaza
                          Central Islip, New York 11722
                          (631) 712-6104


        Proceedings recorded by mechanical stenography.
              Transcript produced by CAT.

6125

```
 1              THE CLERK:  Calling case 13-CR-607, United
 2   States v. Kenner and Constantine.
 3              Appearances.
 4              MR. MISKIEWICZ:  James Miskiewicz for the United
 5   States.
 6              MS. KOMATIREDDY:  Saritha Komatireddy for the
 7   United States.
 8              THE COURT:  Good afternoon.
 9              MR. LaRUSSO:  Robert LaRusso for
10   Mr. Constantine.
11              MR. OLIVERAS:  Andrew Oliveras for
12   Mr. Constantine.
13              THE COURT:  Good afternoon.
14              MR. HALEY:  Rick Haley for Mr. Kenner to my
15   left.
16              THE COURT:  Good afternoon.
17              (Court Exhibits 7, 8 and 9 received in
18   evidence.)
19              THE COURT:  We received three notes this
20   morning.  The first was marked Court Exhibit 7.  The
21   lawyers have all of these:  We changed our mind.  We do
22   not need Ron Richards' testimony read.
23              Then we received a note:  Is there an operating
24   agreement for AZ Eufora Partners, Standard Ventures LLC.
25   Then asks for various exhibits and a book of text
```

6126

1   messages.

2           Then we received the latest note asking for the

3   e-mails, GX 28.1 through 28.11.  So that one is easy.

4           To go back to Court Exhibit 8, I think you

5   agreed on AZ, no such document was introduced into

6   evidence, correct?

7           MR. HALEY:  I believe that's correct.

8           MR. LaRUSSO:  That's correct.

9           THE COURT:  Standard Ventures LLC.

10          MR. MISKIEWICZ:  There is TG2, Government

11  Exhibit TG2.

12          THE COURT:  What is it?

13          MR. MISKIEWICZ:  TG2?

14          THE COURT:  TG2 is the Standard Ventures

15  operating agreement?

16          MR. MISKIEWICZ:  It's a transfer.  It's the

17  transfer Timothy Gaarn testified about dated August 2005

18  transferring -- transferring to Timothy Gaarn AZ Eufora

19  Partners 3 and 8.4 percent member interest.  That's the

20  only TG2 we know of.

21          THE COURT:  That's not an operating agreement.

22  It's my understanding the same thing I will say, there is

23  no such document with respect to Standard Ventures,

24  however, I am providing you with a transfer agreement that

25  was introduced into evidence, it's not an operating

6127

1   agreement.  Right?

2          MR. HALEY:  I would agree, Judge.

3          THE COURT:  Then the other exhibits they gave us

4   the numbers for.  We are in agreement on that?

5          MR. HALEY:  No, your Honor.  Here is the issue.

6   They have K80.  K80 was introduced yesterday.  That's the

7   CR Gentry spread sheet.  Kenner 80 also bears the

8   designation of C140 as introduced by Mr. Constantine.

9          I'm a little mystified why they are asking for

10  K80 only insofar as your Honor can remind them K80 was

11  previously provided, the CR Gentry spread sheet.  As

12  relates to what they are identifying as K79, K84 and K85,

13  no K79, K84 and K85 was introduced into evidence.  I don't

14  know specifically what they are referring to, Judge.

15         They may be referring to K86 and K87.  If I

16  might simply ask perhaps your Honor request they identify

17  the nature of the document because they are taking notes,

18  maybe I misspoke, maybe they took the note incorrectly in

19  connection with those exhibits.

20         THE COURT:  You must have marked something.

21         MR. HALEY:  I must have, Judge.  I have no idea

22  what K79 is.  I may very well at one point if I was going

23  sequentially had it marked, someone wrote it note down.  I

24  don't know the answer to that.

25         THE COURT:  K79, K84, K85, we will say there

6128

1   were no exhibits for those numbers introduced into

2   evidence but if they can describe the document, maybe it's

3   been miss numbered.

4           MR. HALEY:  Thank you.  That would be my

5   request.

6           MR. MISKIEWICZ:  That would also be true, your

7   Honor, of GX3500, there is no such exhibit.

8           MR. OLIVERAS:  C166 also, your Honor.

9           THE COURT:  All right.  We do have a couple.  We

10  have GX210.

11          MR. MISKIEWICZ:  Yes, 2010, GX2010.  We have

12  located all the other exhibits we could find.

13          THE COURT:  Can you tell me what we have?

14          MR. MISKIEWICZ:  Yes.  They specifically wanted

15  the book with the text messages.  That is Government

16  Exhibit 7401 through 7456.  It's here.  It's in a binder.

17  We have located TG2 which we discussed.  There is a

18  Government Exhibit 769 which is the patent security

19  agreement.  There is a Government Exhibit 2010.

20  Mr. Constantine introduced C161 and 162.  Those are

21  purchase agreements for Neptune and Eufora as well as a

22  loan conversion agreement for Eufora Capital.  Then lastly

23  there are a series of I guess tax or e-mail messages that

24  they -- that's Exhibit Number 9, 208.1 through 208.11.  We

25  have located those.

6129

1        THE COURT:  Give me one second.

2        (Pause)

3        THE COURT:  K80 is also C140, is that what it

4   was?

5        MR. OLIVERAS:  Yes.

6        MR. HALEY:  Yes.  Your Honor, CR Gentry spread

7   sheet.  It's identified as such.

8        MR. LaRUSSO:  Your Honor, you will probably

9   remember you looked at this yesterday.  This was the

10  spread sheet.

11       MR. HALEY:  I misspoke.

12       MR. LaRUSSO:  K80 was the one that went in

13  yesterday.  That was our document not received.

14       MR. HALEY:  It was my mistake.  K80 is that

15  document.

16       THE COURT:  Which they have already.

17       MR. LaRUSSO:  They have.

18       THE COURT:  I will say in response to these two

19  notes, actually, they asked for AZ Eufora yesterday at the

20  end of the day.  For AZ Eufora Partners operating

21  agreement, no such document is introduced into evidence.

22  Standard Ventures operating agreement, no such document is

23  introduced into evidence.  However, I am providing you

24  with a transfer agreement related to Standard Ventures,

25  Government Exhibit TG2.  With respect to your request for

6130

1   other particular numbered exhibits, K80 which is also

2   marked as C140, an e-mail, you already have.  We are

3   providing you with GX210, GX769, C161 and 162, the book of

4   text messages which is GX7401-7456.  You asked for K79,

5   K84, K85 as well as GX3500 and C166.  There are no

6   exhibits by those numbers that have been received into

7   evidence.  But if you give me a description of the

8   document, perhaps it's under a different number.  And then

9   we are providing you with the e-mails, GX 28.1 through

10  28.11.

11              MR. HALEY:  We also need clarification on

12  GX3500.

13              THE COURT:  I grouped that with your exhibits.

14              MR. HALEY:  Very well.

15              THE COURT:  And C166, what's that?

16              MR. LaRUSSO:  Document used to refresh the

17  witness' recollection.  Judge, as we looked at the record,

18  it's not received into evidence.

19              THE COURT:  Maybe I should be clear.  I don't

20  want them to think because you did use those numbers,

21  Mr. Haley.

22              Did the government use GX3500?

23              MR. MISKIEWICZ:  We may have made reference to

24  3500 material and the Home Depot tape is 4500.  I can't

25  really tell what they are asking for.

6131

1    THE COURT:  For K79, K,84 K85, C166 I will say

2    although documents were marked with those numbers, they

3    were not received into evidence and, therefore, cannot be

4    provided but if they are thinking of a different exhibit,

5    they can gave a description.

6        MR. HALEY:  Thank you.  I would like that

7    request be made as well.  They are looking for something

8    obviously.

9        THE COURT:  They could be.  They may not be

10   putting down the correct documents.

11       MR. MISKIEWICZ:  Your Honor, will you advise

12   them there was no GX3500?

13       THE COURT:  Yes.

14       MR. MISKIEWICZ:  One other thing, you had said

15   GX210.  I think they are asking for 2010.  We do have

16   that.

17       THE COURT:  I misspoke.

18       MR. LaRUSSO:  The only other thing, Judge, in

19   terms of being accurate, they date Court Exhibit 9

20   yesterday.  I don't know if you want that on the record;

21   yesterday.  They dated it July 7.  Today is July 8.

22       THE COURT:  Okay.  I will let them know.  The

23   others they got right.

24       MR. HALEY:  Your Honor, I don't want to add

25   complexity as relates to there is no GX3500.  The Court

6132

1    will still make inquiry if they can describe the document?

2              THE COURT:  Yes.

3              (The jury enters the courtroom.)

4              THE COURT:  Please be seated.

5              Good morning -- good afternoon, members of the

6    jury.

7              I did want to bring you out just to respond to

8    your notes.

9              There was one from yesterday at the end of the

10   day as you were leaving where you asked for the AZ Eufora

11   Partners operating agreements and then the three from

12   today.

13             First, you advised me you did not need to hear

14   the readback of Ron Richards' testimony, then asking again

15   for the AZ Eufora Partners operating agreement and for

16   some other documents and then another note asking for

17   e-mails, 28.1 through 28.11.  By the way, that was dated

18   July 7.  It is July 8.  I know you know that; the other is

19   July 8.  That's fine.

20             So let me respond to your notes.

21             The reason I didn't send back AZ Eufora Partners

22   operating agreement is that no such document was

23   introduced into evidence.  So there is nothing in the

24   record for me to send back on that.

25             With respect to the Standard Ventures operating

6133

1   agreement, my response is the same; no such document was

2   introduced into evidence.  However, I am sending back

3   something that was introduced which was a transfer

4   agreement related to Standard Ventures which is GXTG2.  So

5   I will send that document back.

6          And then we do have and we will send back in a

7   moment -- K80 you asked for and we sent that back

8   yesterday.  That's back there; also marked C140.  You have

9   that back in the jury room already.

10         The other ones we will be sending back are

11  GX2010, GX769, C161 and 162, the book of text messages

12  which is GX7401 through 7456.  And the e-mails which are

13  28.1 through 28.11.  There were five other exhibits you

14  requested, K79, K84, K85 and C166 which were not

15  introduced into evidence so I can't provide those

16  documents to you, if you are looking for another document

17  and this is also true, there is another exhibit,

18  Government Exhibit 3500, I don't believe there was any

19  although the term 3500 material was mentioned during the

20  trial, there was no document called Government Exhibit

21  3500.  With respect to those five, it may be a confusion

22  over a number.  If you have a description of the document

23  that you want, just send back a note describing the

24  document, maybe it's just a miss identifying of what the

25  exhibit number was.  So you are going -- there are no

6134

1    documents to be provided to you under those numbers.

2              I think that responds to those notes.

3              I will ask you to return to the jury room and we

4    will send the documents back we do have in a moment.

5              Thank you.

6              (The jury leaves the courtroom.)

7              THE COURT:  Let's go through what we are sending

8    back then.  GXTG2.

9              MR. MISKIEWICZ:  GXTG2.

10             THE COURT:  GX2010, GX769, C161 and 162.

11             MR. MISKIEWICZ:  Yes.

12             THE COURT:  The binder, GX7401 through 7456.  If

13   defense counsel wants to take them out of the binder...

14             MR. HALEY:  Actually, your Honor, my client and

15   I were given the opportunity before the Court came to the

16   bench to look at all the documents.

17             MR. MISKIEWICZ:  You want us to remove the

18   cover?

19             THE COURT:  If you want to remove the cover,

20   that's good.

21             For the record, a U.S. Attorney emblem on the

22   cover was removed.  It's just a black binder now.

23             And GX208.1 through 208.11.  Okay.

24             While I have you captive, there are a couple of

25   rulings that I wanted to amplify and supplement although

6135

1   at least two of them based upon Mr. LaRusso's positions

2   are probably moot but I did want to place it on the

3   record.

4           First, there was no objection to this but I want

5   the record to be clear why I included it in the

6   instruction because I did research the issue.

7           There was within the wire fraud instruction what

8   is commonly known as a conscious avoidance instruction on

9   the issue of knowledge as relates to the falsity of the

10  statements.  I believed that that instruction, which the

11  government requested, was proper in this case, that the

12  standard for that is set forth most recently in a Second

13  Circuit case, United States v. Goffer, 721 F.3d 113,

14  Second Circuit 2013, where the Second Circuit reiterated

15  that the instruction may only be given if, 1, the

16  defendant asserts the lack of some specific aspect of

17  knowledge required for conviction and, 2, the appropriate

18  factual predicate for the charge exists, i.e., the

19  evidence is such that a rational juror may reach the

20  conclusion beyond a reasonable doubt that the defendant

21  was aware of a high probability of the fact in dispute and

22  consciously avoided confirming that fact.

23          And I believe that those predicate requirements

24  were met in this case at least sufficiently to trigger the

25  introduction for the following reason:  There is a theory

6136

```
1    of the case and, obviously, several different schemes that
2    the government is alleging, but with respect to various
3    portions of those schemes on different occasions the
4    argument could be made by and was made by both
5    Mr. Constantine and Mr. Kenner that they lacked some
6    specific aspect of knowledge required for conviction for
7    fraud because it was the other person who was in charge of
8    it.  Just by way of example, although there are numerous
9    examples of this, but with respect to Global Settlement
10   Fund, Mr. Kenner's position was I wasn't involved in the
11   Global Settlement Fund because it was Mr. Constantine who
12   had control over that account.  And similarly with respect
13   to some of the Eufora investment issues, Mr. LaRusso's
14   argument to the jury was that Mr. Constantine had nothing
15   to do with, for example, what went on with respect to Mr.
16   Gaarn and that bank account, that that was solely Mr.
17   Kenner and Mr. Constantine wasn't involved in any
18   representations related to that.  And, again, there were
19   similar issues, for example, with Mr. Privitello where one
20   person may have been dealing more directly or both of them
21   may have had interactions with them at various times with
22   the investment issues but one person then was more
23   involved in the movement of the money or some other aspect
24   with respect to the investment itself.  Because of those
25   assertions, the defense clearly asserted a lack of some
```

6137

1    specific knowledge that would be required for fraud, a

2    fraud conviction.

3            And I concluded the second requirement was met,

4    that based upon the government's evidence, assuming the

5    jury credited the government's witnesses and drew all

6    reasonable inferences in the government's favor, that

7    there could be a finding by the jury that in each of those

8    situations that the defendant was aware of the high

9    probability of the fact in dispute and consciously avoided

10   confirming that fact.  For example, when Mr. Kenner and

11   Mr. Constantine are pitching or explaining to the

12   investors what the purpose of the Global Settlement Fund

13   is, even if Mr. Kenner was not aware of every particular

14   transaction as related to the fund, an argument could be

15   made that based upon all the other circumstances

16   surrounding his relationship with Mr. Constantine and the

17   other matters and issues that were ongoing, he was aware

18   of the high probability of how the funds were being used,

19   or as the government would argue misused, and consciously

20   avoided confirming that fact through his own

21   investigation.  And with similar facts, to me, there is

22   also a clear rational finding on the other aspects of the

23   case vis-a-vis Mr. Constantine consciously avoiding

24   confirming whether or not certain representations were

25   made with respect to Eufora and the money for Eufora were

6138

1    accurate and whether the money was in fact being used in

2    that fashion.

3         So I believe the factual predicate existed for

4    that with respect to certain aspects of the case against

5    both defendants.  And the instruction itself tracks, I

6    think the instruction was used actually in the case

7    Mr. LaRusso had with me previously, Abdulla, and it tracks

8    the various guidance that the Second Circuit gave as to

9    what should be or not be in terms of the language of the

10   instruction itself.  I believe that's a very solid

11   instruction that I gave based upon Second Circuit law.

12        MR. LaRUSSO:  May I conclude and make a comment

13   in regards to that?  I do remember the Abdulla case very

14   well.  In regards to closing a blind eye, conscious

15   avoidance, that usually entails in some way the fact that

16   a person is confronted with a set of facts that he should

17   have either inquired but instead turned a blind eye.

18        I think in this particular case, events with

19   Eufora, Judge, Mr. Kenner's representations to his

20   investors was not necessarily something that would cause

21   Mr. Constantine to inquire about or close his mind to.  He

22   would let's say get a call that a hockey player investor

23   is buying Eufora.  I don't know why he would say:  What

24   did you tell them, what's the obligation?  He is not

25   closing a blind eye.  At this point these investments have

6139

1    been going on for some time.  I didn't think in that

2    context the request for conscious avoidance was really

3    necessary.  It wasn't turning a blind eye.  It was

4    accepting an investment.

5              In this case I believe most of them would be the

6    purchases of stock of his own to CMG.  I'm not seeing the

7    factual predicate as clearly as I saw the other you

8    mentioned in regard to GSF.

9              THE COURT:  For example, not to go back to

10   particular hockey players and particular portions of the

11   trial but, for example, if they are pitching an investor

12   together regarding Eufora and this is for commercials to

13   get us over the hump and meanwhile then the government's

14   argument is then some of that money didn't go for those

15   purposes, went to Mr. Kenner's personal uses or to some

16   other misappropriation, didn't deal with what the

17   representation was, even if Mr. Constantine was not the

18   person who was going to be directly involved in getting

19   the money from them, money was going to go from --

20   Mr. Kenner was going to somehow be involved, obviously, in

21   taking that person's money and getting it to

22   Mr. Constantine.  The argument would be from the

23   government's standpoint Mr. Constantine was aware based on

24   the circumstances of the high probability that in fact the

25   money was not going to be used for -- the government

6140

1    argued he knew for sure there wasn't conscious avoidance,

2    he knew but the fall back position would be that based

3    upon the circumstances he knew those people were not going

4    to end up with whatever interest they were being told

5    and/or the money was not going to be used for the

6    particular thing that it was being represented by he

7    and/or Mr. Kenner at any given time.  That's all along the

8    lines of what I was thinking.

9           The government didn't actually argue that in

10   their summation even though the instruction is in there.

11   The government chose to not, I guess it's a strategic

12   matter, mix the message, suggest the alternative theory.

13   I believe there was a sufficient basis in the record for

14   both defendants.  I didn't spell it out in the

15   instruction, what it related to, does it relate to GSF or

16   Eufora but I think it could potentially apply to both of

17   them at a minimum.  I haven't really thought about Hawaii.

18   I was thinking more about Eufora and GSF.  When I saw the

19   government's instruction I thought about what evidence

20   there was to support a conscious avoidance instruction,

21   those are the ones I immediately thought of.

22          Then my ruling, again, there was no objection,

23   my thinking was similar with respect to the Pinkerton

24   charge.  The Pinkerton charge is appropriate where there

25   is evidence of a conspiracy but one of the defendants

6141

1    involved in the conspiracy may not have been involved in

2    the actual substantive act that lead from the conspiracy

3    itself.  So it was my view that, again, assuming the jury

4    found a conspiracy existed, for example, the Eufora fraud,

5    that's what it relates to, those are the substantive

6    counts in this cases, if a jury concluded Mr. Kenner and

7    Mr. Constantine at some point agreed money people was

8    investing in Eufora was going to be diverted to other

9    uses, personal uses, and not going to any interest in the

10   company, the fact that the wire transfer involved in one

11   instance Mr. Kenner or another instance Mr. Constantine,

12   it would not shield them from liability under a Pinkerton

13   theory.  If you make such an agreement you both go out and

14   implement that agreement, some of it Mr. Kenner allegedly

15   billing through Mr. Gaarn, some of it being done through

16   Mr. Privitello, the fact that one defendant who is in that

17   conspiracy did not directly participate in that particular

18   wire transaction does not mean there is no liability under

19   Pinkerton.  Pinkerton allows for liability as long as

20   those five requirements, as I instructed the jury, are

21   met.  I believe there was a factual predicate for that

22   instruction as well.

23        There was no objection, but, again, the

24   government didn't explicitly rely on that in their

25   summation but certainly the jury would be within their

6142

1   right to consider that instruction in evaluating the

2   evidence in this case.

3   　　　　MR. LaRUSSO:  In regards to that, your Honor, if

4   you remember my discussion about a special verdict in

5   regards to the purposes of the conspiracy and the reason

6   behind that request was primarily what the Court just

7   said, that there was a possibility.  When you look at the

8   Gaarn stock sales or -- "stock sales" goes against my

9   summation -- interest in Eufora, the jurors could have

10  found there was no conspiracy, that Mr. Kenner had done it

11  on his own.  And by a special verdict, we would have known

12  whether or not they would have found a conspiracy.  If

13  they don't find a conspiracy regarding Eufora and the

14  Gaarn transfers, then Mr. Constantine can't be held liable

15  under Pinkerton at all.  That was my major concern.

16  That's why I brought it up before.  That was the

17  complexity of this case that brought that legal issue to

18  mind.

19  　　　　I understand Pinkerton, if the jury finds

20  conspiracy, if they don't find conspiracy, that Kenner did

21  it on his own, that charge could result in a finding of

22  responsibility on Mr. Constantine's part when factually

23  they may not have found that.

24  　　　　THE COURT:  That's my next ruling, going to

25  relate to the special verdict sheet.  Again, you withdrew

6143

1    that request.  I was going to deny it, in any event.

2              I don't disagree with what you are saying.  They

3    would have to find the conspiracy existed before they

4    could invoke Pinkerton.  There is no conspiracy, there is

5    no Pinkerton theory liability and a special verdict sheet

6    would confirm that.

7              But my response to that is, first of all, the

8    Pinkerton instruction couldn't be clearer when it lays out

9    the five requirements.  One of the requirements is there

10   has to have been a conspiracy in the first place.  So they

11   are properly instructed that they have to find a

12   conspiracy in the first place.  It cannot be clearer in

13   the Pinkerton instruction.  I have to assume they will

14   follow that instruction.  As I noted, the time this issue

15   came up with regard to the special verdict form, there are

16   always various elements to a crime, within every crime

17   there are various elements.  There can always be a concern

18   that a jury didn't properly consider one element and we

19   don't ask them for a special verdict in every element of

20   every crime.

21             I understand there is not exactly that

22   situation.  In my view this is similar to that and the

23   charge is clear.  So I don't have a real concern that

24   somehow they are going to say Mr. Constantine wasn't

25   involved in any Eufora conspiracy with Mr. Kenner but he

6144

1   is guilty of the substantive charges.  In Pinkerton --

2   they would have to completely ignore the Pinkerton

3   instruction.  So I don't have a real concern the jury is

4   going to do that in this case.

5              But let me place my ruling -- it's not really a

6   ruling because the request was withdrawn, but I was

7   prepared if the request was continued to be asserted to

8   deny it for the following reasons.  I did do research on

9   the special verdict issue and the Second Circuit in the

10  case in 2011, United States v. Applins, 637 F.3d 59,

11  Second Circuit 2011, in some detail discussed the use of

12  special verdicts in criminal cases.  And two things come

13  out of that case.  One is that it's a completely

14  discretionary decision by the District Court, within the

15  sound discretion of the District Court, as to whether or

16  not in any particular situation a special verdict should

17  be used.

18             And the Second Circuit in terms of providing

19  guidance on that -- let me repeat what they said on that.

20  They said:  The use of special interrogatories is not

21  required as we have declined to delineate bright line

22  rules for determining whether such interrogatories should

23  be employed or in what form or promulgated criteria.

24  District Courts are bound to consider rather than commit

25  to the decision whether and how to permit special

6145

1    interrogatories in such cases to the broad discretion of

2    the District Court.

3              In that case they note they have recognized what

4    they call preference for special interrogatories in

5    particular complex criminal cases notwithstanding what

6    other courts have said is the traditional distaste for

7    special interrogatories in criminal cases.  But in that

8    case, the specific issue was on predicate acts in a RICO

9    case whether or not you should ask a jury for a special

10   verdict as to which particular predicate acts they found

11   in connection with a RICO charge.  So I don't think it --

12   even then it's discretionary.  I don't think this

13   situation is equivalent to that situation.  And I'm not

14   going to -- this is not a complicated criminal case.  It's

15   a complicated criminal case but I don't think the

16   instructions are complicated.  The wire fraud instruction

17   is very straightforward.  Conspiracy instruction is very

18   straightforward.  I was clear, explicit in making sure

19   that I was clear to them they had to agree on which

20   particular objective they were finding the conspiracy on

21   even though there were three objectives.  The instruction

22   could not be clearer it had to be unanimous as to at least

23   one of the reasons I indicated.  The process of making

24   them decide three objectives even though the law only

25   requires them to find one of the objectives unanimously to

6146

1   be proven I think puts a burden on a jury that is not

2   required under the law.  That's why I declined to divide

3   up the verdict sheet in that way.

4          On the issue Mr. Constantine raised with

5   Mr. LaRusso, Mr. LaRusso passed to me about the issue of

6   sentencing, the Courts -- obviously, this could be briefed

7   more if there is a conviction in connection with

8   sentencing but the Courts seem to specifically address

9   that issue and say that it's still up to the Court to

10  determine whether there are multiple objectives which one

11  should be used for purposes of punishment, under the

12  sentencing standard which should be used for purposes of

13  punishment as long as it doesn't increase the statutory

14  maximum.  If the statutory maximum increases as a result

15  of one particular objective being found versus another,

16  then the trial court can't make that finding.  If it's not

17  going to increase the statutory maximum where within the

18  statutory maximum a sentence should lie is still even in

19  the form of a general verdict within the decision of the

20  sentencing court.

21         And there is a Third Circuit case that dealt

22  exactly with that situation, United States v. Conley, 92

23  F.3d 157, 1996 case.  It said trial court's determination

24  of objects of conspiracy for sentencing guideline purposes

25  after a jury rendered a general verdict which did not

6147

1    designate the object of the conspiracy did not violate the

2    defendant's Sixth Amendment right to a jury trial.  And

3    similarly, as I pointed out the other day, the Supreme

4    Court has said that for purposes of a due process claim

5    challenging the sufficiency of the evidence in a

6    multi-object conspiracy count where there was a general

7    verdict, that that also cannot -- is not cognizable as a

8    claim.

9          And on the issue of whether or not to give the

10   instruction, there is a District Court case, U.S. v.

11   Rienzi, 1996 West Law 605130, Eastern District of

12   Pennsylvania, 1996.  In fact, it was an ineffective

13   assistance of counsel claim claiming that the lawyer

14   should have asked for a special verdict or interrogatories

15   to determine the object of the conspiracy which returned a

16   guilty verdict.  And the Court rejected that and explained

17   what I just explained, that it's within the discretion of

18   the Court citing the Given (ph) case and Conley case and

19   some other cases.  So as a matter of discretion, that's my

20   ruling as it relates to the case.

21         Finally, again, I think this issue was

22   ultimately mooted out because my recollection is that

23   Mr. LaRusso withdrew any privilege claim relating to Ron

24   Richards' testimony but I ruled that even dependent of any

25   such waiver, his testimony was permissible even over an

**6148**

1   objection for two reasons.  First, the Second Circuit has

2   over and over again concluded that absent special

3   circumstances disclosure of client identity and fee

4   information are not privileged including a case Vingelli

5   v. United States, 992, F.2d 449, Second Circuit 1993.  And

6   in that case, the Court said we have determined in the

7   absence of special circumstances client identity fee

8   arrangements do not fall in the attorney-client privilege,

9   not the kind of disclosures having been made absent the

10  privilege disclosure does not incapacitate the attorney

11  from rendering legal advice.  Cites a string of cases.

12          The Second Circuit explains what are those

13  special circumstances.  In that case they discuss a Ninth

14  Circuit case where the special circumstance was that the

15  disclosure itself would reveal a confidential

16  communication between the attorney and client.  The matter

17  was to determine a tax liability, the disclosure of what

18  the matter was.  If there was no IRS examination, it was a

19  confidential communication.  That's the only special

20  circumstance that really comes up in these types of cases.

21          The fact that the information -- the fee or the

22  client identity is itself incriminating doesn't make it

23  privileged.  The second case made that clear, U.S. v.

24  Goldberger and Dubin, 935 F.2d 501.  And as a result of

25  these cases, numerous courts in similar circumstances

6149

1   similar to what I was confronted with allowed the records

2   to come in.  U.S. v. Weissberg, 2011 West Law 1327689,

3   Eastern District of New York 2011, where the records

4   reflected attorneys worked on escrow accounts,

5   communicated or met with certain individuals but it did

6   not reveal the content of attorney advice and the District

7   Court found them not to be privileged.

8           Another case Gardenville, LLC v. Travelers

9   Property Casualty, 2004 U.S. District Lexis, 8846 Western

10  District of New York, 2004, citing Second Circuit law made

11  clear to the extent communication doesn't involve legal

12  advice, simply transferring money or title, it's not

13  privileged.  So I don't believe Mr. Richards' testimony

14  regarding the client information and fees with respect to

15  litigation, public litigation and other matters could

16  possibly be privileged.  But I noted even if it were, the

17  crime fraud exception applies.  The standard for the crime

18  fraud exception is as set forth in U.S. v. Chervin, 2011

19  U.S. District Lexis 106929, Southern District of New York

20  September 21, 2011.  That case explains that the Second

21  Circuit held a party seeking to invoke the crime fraud

22  exception must prove a factual basis for probable cause to

23  believe a fraud or crime has been committed, that the

24  communication in question was in furtherance of the fraud

25  or the crime.

6150

1           It's clear a fraudulent objection of the scheme

2    need not to be established definitively, only a reasonable

3    basis for believing the objective was fraudulent.  I

4    concluded, again, based on the other evidence in the case

5    there was a sufficient basis to find probable cause that a

6    fraud was being committed with respect to the GSF and that

7    the communications with Mr. Richards to set up the account

8    and allow release of certain monies relating to that

9    account for matters that were unrelated to any litigation

10   related to the investments, that there was a sufficient

11   basis for that standard to be met with respect to the

12   communications between Mr. Richards and Mr. Constantine.

13          The Second Circuit made clear -- the Supreme

14   Court made clear the fact the attorney was not aware of

15   the fraudulent nature of the account or the transaction

16   doesn't mean that it's somehow not within the exception.

17   Attorney-client privilege does not attach to furtherance

18   of a crime of fraud regarding the attorney's lack of

19   knowledge.  He is being consulted in furtherance of that

20   crime of fraud, Clark v. United States, 289 U.S. 1, 1933,

21   Supreme Court case.  The fact Mr. Richards may not have

22   been, as I noted -- no findings that is to Richards by the

23   Court any knowledge by Mr. Richards of any fraudulent use

24   of the funds does not affect the analysis of the crime

25   fraud exception but based on the other evidence I heard in

6151

1    the case.

2              I think that's all I have for now.

3              You can take your lunch break.

4              (Whereupon, a recess was taken.)

5              THE CLERK:  Everyone be seated.

6              THE COURT:  Everybody is present in the

7    courtroom.

8              They asked for a walk.  Michele took them out

9    for a walk.  Then Court Exhibit 11 -- that's Court Exhibit

10   10.  Court Exhibit 11 asks for the Money Magazine article.

11   Let's just send that back now.

12             MR. HALEY:  Yes.

13             THE COURT:  What exhibit number is that?

14             MS. KOMATIREDDY:  726L.

15             THE COURT:  Everybody is okay with that going

16   back?

17             MR. HALEY:  Yes.

18             MR. LaRUSSO:  No objection.

19             THE COURT:  Then they ask for any testimony or

20   e-mails or documents regarding the Led Better/Sag Harbor

21   deal.  We can talk about this for a minute.  What I

22   suggest we do is put aside the testimony for a moment.

23   That's I think a monumental task.  I think that would take

24   many hours, correct?

25             MR. MISKIEWICZ:  Yes.  We are working through it

6152

1    but there is probably maybe ten, 11, 12 witnesses that

2    testified in some form about Sag Harbor.

3            THE COURT:  For example, Mr. Kenner went back

4    and forth on one occasion so it's not only in one spot.

5            MR. MISKIEWICZ:  That's what we are doing,

6    trying to isolate page and line citations, then sidebars

7    in between so it's going to take us -- I don't think we

8    will be done today.

9            THE COURT:  It's 4:10.

10           One option with respect to that, just to make

11   sure and that's a pretty unusual request, I could tell

12   them what we are doing, I could tell them we are

13   interpreting this to mean all the testimony.

14           MR. HALEY:  I don't want to interrupt.  I think

15   we made great progress.  From my perspective, when they

16   ask for all the testimony regarding Sag Harbor, I would

17   like to give them all the testimony.  We have made great

18   progress in terms of isolating.

19           THE COURT:  I know but it will probably take

20   over a day to read all that back, wouldn't it?

21           MR. MISKIEWICZ:  Yes.

22           MR. HALEY:  You are asking me for a time

23   estimate?

24           THE COURT:  I'm familiar with readbacks.  That

25   readback yesterday was 11 pages, took 20 minutes.

6153

1          MR. HALEY:  Whatever the Court thinks is

2    appropriate.

3          THE COURT:  I think it would take hours.  I

4    don't think I'm under estimating.  Again, going from

5    memory, I was thinking ten to 15 witnesses, Mr. Kenner

6    testified at length about it, Mr. Berard testified at

7    length about it, Mr. Manfredi.

8          MR. MISKIEWICZ:  Shimon Betesh.  Michael Peca,

9    Kristin Peca, smaller portions but, yes, they also

10   testified about it.

11         THE COURT:  Theoretically it involves the

12   testimony of the charts that involve Sag Harbor, again,

13   which is another whole set of witnesses who potentially

14   could be included in that.

15         Why don't we do this first, see if we can

16   isolate the documents.  Do we have agreement on the

17   documents?

18         MS. KOMATIREDDY:  I think we do.  First of all,

19   there is a binder that pertains to it and we are in

20   agreement with the binder.  The binder includes a number

21   of things separately admitted as exhibits without being

22   redundant of those -- I'm happy to read those exhibit

23   numbers into the record and send the binder back.

24         Mr. Haley and we have isolated another stack of

25   exhibits we are confident is most, not all, of the

6154

1    remaining actual documents; obviously, we can double-check

2    it tonight but I think we have isolated a stack.

3            THE COURT:  Let's put on the record what we

4    isolated.

5            MS. KOMATIREDDY:  The binder is admitted as

6    Binder 7.  Binder 7 includes the following exhibits --

7            MR. HALEY:  I hate to interrupt the Court, the

8    prosecutor, the only thing I would like to occur is my

9    client was looking through these documents, hadn't yet

10   seen the binder documents.  I want him to be aware.  If we

11   can walk over or whatever is most appropriate.

12           THE COURT:  Yes.

13           (Pause)

14           THE COURT:  Let me make sure I understand.

15   There is an additional bank record showing money going

16   back to Mr. Kaiser?

17           MR. HALEY:  I will allow my client, your Honor.

18   He has a better understanding.

19           DEFENDANT KENNER:  Yes, sir, your Honor.  After

20   the closing of the Led Better parcel in October of 2006,

21   Mr. Kaiser received 300,000 back from an escrow account

22   and into his bank account at Commerce Bank.  It's two days

23   before he repays the loan he took for the Led Better loan.

24   So we have in evidence BNK-MM-139 which is the November

25   2006 statement from Mr. Kaiser.  It's the previous month's

6155

1  statement.

2      THE COURT:  Is that in evidence?

3      MS. KOMATIREDDY:  Not from the government, your

4  Honor.

5      MR. HALEY:  The only thing I may add, it is part

6  of what was at least provided to us in Rule 16 discovery

7  as the bank records associated with the transaction.  You

8  can pull it up on our database.

9      THE COURT:  It doesn't matter whether it was

10  provided in discovery.  It wasn't in evidence.  You can

11  double-check.  It's 4:20.  You and your client can

12  double-check tonight to see if the October statement is in

13  evidence.  I think there was testimony regarding that.

14      But other than that, is the binder okay other

15  than that?

16      MR. HALEY:  The only issue, your Honor, I will

17  let the government make the offer of proof, my client is

18  of the view Government Exhibit 21, which is also included

19  in the binder, is not relevant or material to the request

20  of the jury.

21      MS. KOMATIREDDY:  I am happy to make an offer of

22  proof.  It's actually -- this was included in the binder

23  as 20 to 40.  For the record, the binder is admitted as an

24  exhibit.  The reason it's relevant to Sag Harbor is

25  because in the indictment as charged, the money is stolen

6156

1   October 2006 and as part of the fraud, interest payments

2   are made on the line of credit to conceal that theft.  The

3   actual charged wires, accounts 7 and 8, are the last two

4   payments made on the line of credit and these so-called

5   Ponzi scheme charts we have used show the connection when

6   the moment the money is stolen, every payment that leads

7   to the actual charged wires which is the totality of the

8   fraud.  So that's why --

9               THE COURT:  Showing the source of the money?

10              MS. KOMATIREDDY:  Yes.  Special Agent Petrellese

11  closed the loop on that as a summary chart witness when he

12  explained the Michael Peca line of credit from the moment

13  the Led Better money was stolen, traced each payment up to

14  the end.

15              THE COURT:  I think that's okay.

16              MR. HALEY:  Thank you.

17              THE COURT:  So we have the binder.

18              MS. KOMATIREDDY:  7, I believe.

19              MR. HALEY:  Binder 7.

20              THE COURT:  Then what are the other documents?

21              MR. HALEY:  Your Honor, thank you.  We are in

22  agreement.

23              THE COURT:  Can we go through what the other

24  exhibits are besides Binder 7?

25              MS. KOMATIREDDY:  Yes.  Your Honor, do you want

6157

1    me to read the exhibits in Binder 7?

2              THE COURT:  Yes, why don't we do that.

3              MS. KOMATIREDDY:  Binder 7 includes chart 8,

4    chart 9, charts 20 through 40, stip 29, 1903, 1904, 703,

5    2001, 2002, 2003, 1401, 941, 940, 1602, 2005, 2006, 2007,

6    2008, 1701, 1702, 1703, 1402, 1403 and 715.  The other

7    exhibits we agreed upon are 701C, 701C-A, certified deed,

8    702, 6015, 704, 705, three transcripts admitted as aids to

9    the jury, 505.1T.

10             THE COURT:  Hold on.  I normally would not send

11   back a transcript of a conversation.  I would tell them

12   there are recordings that relate to Sag Harbor.  I usually

13   do not send back an aid; it's not evidence.

14             MR. HALEY:  Judge, let me speak to my client.

15             THE COURT:  Yes.

16             Did you offer that or the government offered it?

17             MR. HALEY:  This is a Government Exhibit.

18             MS. KOMATIREDDY:  Should I read off the rest of

19   the document numbers?

20             MR. HALEY:  We consent to allow these aids in,

21   if your Honor -- I see a grimace.

22             THE COURT:  It's a little -- I tell them it's

23   not evidence, the tape is evidence.  I said to them during

24   my instructions if you want to hear a tape, I will bring

25   you out.  It's inconsistent with how I admit them and what

6158

1   I told them I would do.

2          My preference would be to say there are three

3   recordings, we can give them the number, portions of

4   recordings have been identified as relate to Sag Harbor.

5   Tomorrow morning we will bring you out to hear those.

6   Obviously, if everyone consents, I will allow them to use

7   the aids but I think we should do it that way.

8          MR. HALEY:  I will defer to the Court's better

9   judgment.

10         MS. KOMATIREDDY:  For the record, those

11  recording numbers, the clips, are admitted as 505.1,

12  505.2, 505.3.  The remaining documents, the Government

13  Exhibits 6504, 716, 717, 718, 2162, 1490F, 1490G, 2081B,

14  2082A and 1490C.

15         THE COURT:  So everyone is in agreement on

16  those?

17         MR. HALEY:  We are.  There are three Kenner

18  Exhibits that I believe we agreed to.

19         THE COURT:  We didn't get a note but the CSO

20  says they want to go home.  I will bring them in and tell

21  them we think we have gotten the Sag Harbor documents.  I

22  want to say on the testimony, I don't want to go through

23  this and have it open.  I want to tell them we think there

24  is approximately ten or so witnesses who testified about

25  Sag Harbor and we are going through it to -- I will tell

6159

1    them we are interpreting it.  They want all testimony of

2    any witness regarding Sag Harbor, approximately ten or so

3    of those witnesses.  We are going through and isolating.

4    Our intention is to read those back in the order that they

5    testified unless they want something else and to tell them

6    we are going to do the same with the recordings.

7            MR. HALEY:  Thank you.

8            MR. LaRUSSO:  Very good, your Honor.

9            THE COURT:  Obviously, I will tell them we got

10   the latest note.  I'm sure you didn't have a chance to

11   pull the documents; seems more specific.

12           MR. LaRUSSO:  Note 12, I think we have all the

13   e-mails acknowledging Ranford and should be able to have

14   that available to the Court in the morning.  We just have

15   to get together with the government.

16           THE COURT:  Okay.  Good.

17           I will tell them to come in at 10:15 because I

18   will not get here until 10:30.

19           MR. HALEY:  I think we reached agreement.

20           THE COURT:  Let's get the jury first and then we

21   will deal with that.

22           Mr. Haley, put the additional records on the

23   document.

24           MR. HALEY:  To complete the record as far as

25   Kenner Exhibits are concerned, as relates to the jury's

6160

1   request, Kenner Exhibit 34, Kenner Exhibit 221, Kenner

2   Exhibit 222.

3          THE COURT:  So everyone is in agreement the ones

4   the prosecutor identified and the ones Mr. Haley are the

5   ones that should go back?

6          MR. LaRUSSO:  Yes.

7          MR. HALEY:  Yes.

8          MS. KOMATIREDDY:  Yes, your Honor.

9          (The jury enters the courtroom.)

10          THE COURT:  Please be seated.

11          I know it's a little after 4:30.  I will let you

12   go home in a minute.  I want to tell you what we are doing

13   and my intention tomorrow morning, making sure I know what

14   you are requesting.

15          The Money Magazine article went back to you.

16   You have that.

17          The next thing you requested was any testimony

18   or e-mails or documents regarding the led better/Sag

19   Harbor deal.  We have isolated all the documents that

20   relate to the Sag Harbor transaction and I will send those

21   back to you even though you are going home.  We will put

22   them in the jury room so you will have them in the

23   morning.  The response to your documents will be in the

24   jury room.

25          The two things I want to note about that

6161

1    request, first is there are three portions of recordings

2    that have been identified as relating to Sag Harbor and,

3    again, I told you there is a list of recordings.  We can't

4    send those back.  So tomorrow morning we will bring you in

5    to listen to those three portions of those recordings.

6              As relates to the testimony, I am reading that

7    as you wrote it that you want any witness who testified

8    during his or her testimony about Sag Harbor.  You want

9    all of those portions of their testimony.  We are still

10   working on that.  I think it's probably ten or so

11   witnesses and unless you tell me otherwise, we are going

12   to isolate those and then read them back in the order the

13   witnesses testified during the course of the trial but

14   that's how I'm interpreting that request.

15             And then the next note requests documents.  I

16   haven't had a chance -- that one I think is clear what you

17   are asking for.  We will put those documents together so

18   you will have those first thing tomorrow morning too.

19             That's the plan we will follow tomorrow unless

20   you tell me I'm miss interpreting something you asked for,

21   otherwise, that's the plan.  The only difference, we will

22   start later.  I ask you come at 10:15 tomorrow instead of

23   9:30.

24             Don't read or listen to anything regarding the

25   case.  Don't discuss the case outside the deliberations.

6162

1    And, again, you have to wait until all 12 of you arrive

2    tomorrow morning before you start deliberating.

3             Have a safe trip home and good night.

4             (The jury leaves the courtroom.)

5             THE COURT:  I will have my law clerk give those

6    to Michele to bring back to the jury room, the Sag Harbor

7    documents.

8             Mr. Miskiewicz, make sure she is taking the

9    correct ones.

10            Just to go back to the last note to have these

11   ready to go tomorrow morning, says can we have the bank

12   statements for Johnson Bank for Eufora for the month of

13   February 2009.

14            Do you have those?

15            MS. KOMATIREDDY:  Yes, Judge; I can get that in

16   a minute.

17            THE COURT:  Then 223 -- excuse me, 2213, bank

18   statement and 1513 wire transfer instruction.

19            MR. LaRUSSO:  Judge, that cross out of

20   Government Exhibit 601, I believe that's the government

21   authorization e-mail that Mr. Ranford received from

22   Mr. Kenner, went in through the government but then they

23   cross it out and said e-mails acknowledging the Ranford

24   relationship.  So I'm assuming that's included within.

25   That's the way I read that.

6163

1    I have identified six e-mails that were between

2    the hockey players including Mr. Ranford and

3    Mr. Constantine.  I will give these to the government to

4    look at unless you want them now.

5    THE COURT:  Let's do it now.  Can you show those

6    to the government now?

7    My law clerk tells me they are writing another

8    note; maybe I got something wrong, maybe they are

9    clarifying something.

10   MS. KOMATIREDDY:  Your Honor, for the record,

11   they requested the Johnson Bank Eufora bank statement for

12   February 2009.  GX2213 is that statement so I think that's

13   the same thing.

14   THE COURT:  Okay.

15   MR. LaRUSSO:  Your Honor, I showed the e-mails

16   that we believe are responsive to the request regarding

17   the e-mails showing the Ranford/TC relationship, not in

18   any order but it's C128, C215, C122, C 24 and C 169.

19   THE COURT:  The jury asked whether they can come

20   back at 9:30 and deliberate even if we can't respond to

21   any notes.  I'm okay with that.  Any problem with that?

22   MR. MISKIEWICZ:  No objection.

23   MR. LaRUSSO:  No.

24   THE COURT:  If any notes come in between 9:30

25   and when I get here, we will hold them.

6164

```
1          MR. HALEY:  The earlier the better.  I have no
2   problem with that.
3          THE COURT:  We will tell them they can come at
4   9:30.
5          So is the government in agreement those are the
6   ones responsive to the e-mail alleging the Ranford and TC
7   relationship?
8          MR. MISKIEWICZ:  These are I think -- one could
9   broadly construe it that way.  They are basically e-mails
10  in which Mr. Ranford is on a long list of ccs.  They are
11  e-mails.  We don't have any objection.
12         THE COURT:  Mr. Haley?  You want to look at
13  those two?
14         MR. HALEY:  Yes.  I'm sure I don't have an
15  objection.
16         MR. LaRUSSO:  Your Honor, my client and Mr.
17  Oliveras have to be here at 9:30?  I will be here.
18         THE COURT:  It's up to them.  Nothing will
19  happen until at least 10:15.
20         MR. LaRUSSO:  I will have them here by 10:15.
21         THE COURT:  When I say nothing is going to
22  happen, Mr. Constantine, you understand they will be
23  deliberating starting 9:30.  Nothing will happen in the
24  courtroom until 10:50.
25         DEFENDANT CONSTANTINE:  I understand that.
```

6165

1         THE COURT:  The jury will not be coming into the

2    courtroom before 10:15.

3         MR. HALEY:  No objection as relates to the

4    e-mails.

5         MR. LaRUSSO:  C24, C128, C122, C215, C177, C169.

6    That should be six.

7         THE COURT:  You didn't mention 177.  Before I

8    want the government to see that one.

9         You have seen 177, Mr. Haley?

10        MR. MISKIEWICZ:  I don't have any objection to

11   177.

12        MR. HALEY:  I have no objection either, Judge.

13        THE COURT:  2213 I will tell them is the bank

14   statement for February 2009 and then 1513 obviously is the

15   wire transfer, right?

16        MR. MISKIEWICZ:  Yes, your Honor.

17        THE COURT:  We are in agreement that completes

18   that note?

19        MR. MISKIEWICZ:  I believe so.

20        MR. HALEY:  May I show my client?

21        THE COURT:  Sure.

22        MR. HALEY:  Yes, it does, Judge.

23        THE COURT:  Juror number 1 says she has vacation

24   plans starting Monday.

25        MR. MISKIEWICZ:  I thought it was the 16th.

6166

1        THE CLERK:  She leaves Sunday.

2        MR. LaRUSSO:  You are not planning on sitting

3   Friday?

4        THE COURT:  No, but I will.

5        How long is she going away for?

6        THE CLERK:  Let me ask.

7        (Pause)

8        MR. LaRUSSO:  On this last e-mail, we introduced

9   the bank statement of Mr. Ranford, I thought the

10  government actually introduced it but I may be wrong.  My

11  only concern, it looks like they are looking for all the

12  records regarding Mr. Ranford.  We have another exhibit

13  bank statement of his Charles Schwab account showing the

14  $1,000 he contributed and the 1,000 going back.  I agree

15  with the government, doesn't specifically ask.

16       I'm wondering if it's implying they are looking

17  for Ranford, looking for all the evidence relative to it.

18  I don't believe there is any dispute that these are

19  accurate records.  The question is whether or not the

20  Court can find it to be part of that request or not.

21  That's the reason I'm bringing it up.

22       THE COURT:  I don't think it's part of that

23  request.  They are asking for one bank statement.  If they

24  said all documents related to Ranford, I would agree with

25  you, all bank statements, but they don't ask for that.

6167

1            (Pause)

2            THE COURT:  She is leaving on Monday for two

3    weeks.

4            MR. HALEY:  I don't want to interrupt the

5    Court's process.  I'm sure we are all of the thought that

6    should she be excused we now, we'd bring back an

7    alternate, that alternate will have to be brought up to

8    speed.

9            THE COURT:  I think the rule allows for 11.  I

10   will double-check that.

11           MR. LaRUSSO:  I had a case, Judge, where an

12   11-person verdict was rendered.

13           THE COURT:  That would be an option.  Obviously,

14   I think we should sit Friday.

15           Everybody agree with that?

16           MR. LaRUSSO:  Yes.

17           THE CLERK:  They asked if they could stay late

18   on Thursday.

19           MR. HALEY:  They may be pleased to hear they can

20   sit on Friday.

21           THE COURT:  I will tell them they can sit late

22   on Thursday and sit on Friday.

23           THE CLERK:  I think one said they had an issue

24   Friday because they wanted to know in the morning how late

25   they could stay Thursday.

6168

1          MR. LaRUSSO:  My hope is not to push them to a

2    verdict, give them as much time as they need.  Like I

3    said, I know I'm available on the weekend.  I have plans

4    that I can cancel.  I don't know -- I'm sure everybody has

5    plans.

6          THE COURT:  I can be here on the weekend too.

7          I don't know if you are going to have 12 people

8    who want to come in on a Saturday or Sunday in July.

9          MR. LaRUSSO:  I'm one of them.

10         THE COURT:  What's the issue on Friday?  She

11   can't do it or part of Friday?

12         THE CLERK:  I overheard them say about Friday.

13         THE COURT:  I think we should tell them they can

14   stay late tomorrow night.

15         THE CLERK:  Some were asking how late; they have

16   child care issues.  How late would you have them?

17         THE COURT:  They can stay as late as they want

18   Thursday night, as late as they want.

19         MR. HALEY:  And give them the option of Friday

20   as well?

21         THE COURT:  I will give them the option of

22   Friday or Saturday or Sunday, whatever works for them.

23         Everybody good with that?

24         MR. HALEY:  Yes.

25         MR. LaRUSSO:  Yes.

6169

```
1              MR. MISKIEWICZ:  Yes.

2              THE COURT:  Anything else we need to discuss?

3              The testimony, again, especially in light of

4    this new addition, I think that will take the full day

5    tomorrow.  I think that will be a really long readback.

6              When you said you made progress, you really

7    isolated all the witnesses?

8              MR. HALEY:  I will answer the Court's question.

9              Shimon Betesh is all Led Better, not that

10   lengthy.  Vince Tesoriero talked about Led Better, not

11   that lengthy.  Phil Kenner's testimony is actually not

12   that lengthy in connection with Sag Harbor.  That was one

13   of the smaller spheres.  There are, however, the need to

14   isolate various aspects of testimony, the more

15   time-consuming aspect of it from some of the other

16   witnesses.  I suspect those are short clips.

17             THE COURT:  You haven't done that?

18             MR. HALEY:  No.

19             THE COURT:  Like for Mr. Peca and Mr. Berard and

20   Mr. Kaiser.

21             MR. HALEY:  No.

22             MR. MISKIEWICZ:  Still working on that.  Kaiser

23   is substantial.

24             THE COURT:  I would ask that you do that tonight

25   and tomorrow morning.
```

6170

1    MR. MISKIEWICZ:  We will.  We will get here also

2  early and try to agree.  I will be here at 8:30, if you

3  want.  We have agreed on Mr. Betesh.

4    Do you need us to go over this last pile of

5  exhibits?

6    THE COURT:  I thought we did that.  We went

7  through that last pile.

8    MR. MISKIEWICZ:  I thought so.  I wanted to make

9  sure.

10    MR. LaRUSSO:  Those are the exhibits.

11    THE COURT:  You read them all off.  Do it one

12  more time.

13    MR. MISKIEWICZ:  The two exhibits they

14  specifically requested are Government's 1513 and 2213.

15  Then the remainder are Constantine Exhibits C169, 128,

16  122, 215, 177 and C24.

17    MR. LaRUSSO:  Judge, the exhibit they crossed

18  out, 6601, I believe it's the authorization memo that the

19  government introduced.

20    THE COURT:  Does the government have 6601?

21    MR. MISKIEWICZ:  6601 is an e-mail from

22  Mr. Kenner to Ranford and then an acknowledgment having to

23  do with his authorization for the Global Settlement Fund.

24  Mr. Constantine is not specifically referenced in this

25  e-mail at all.  It is Mr. Ranford's authorization for his

6171

```
 1    money to go to the Global Settlement Fund.
 2             MR. LaRUSSO:  I thought the note talked about
 3    e-mails dealing with the relationship.  Our position is
 4    it's part of the relationship.
 5             MR. MISKIEWICZ:  We don't have any objection.
 6             THE COURT:  You okay with that?
 7             MR. HALEY:  Yes, Judge.
 8             THE COURT:  That will be added.
 9             So everyone agreed on that pile?
10             MR. LaRUSSO:  Yes.
11             THE COURT:  6601 has been added.
12             Any objection to my deputy bringing those back
13    and leaving them in the jury room?
14             MR. MISKIEWICZ:  None whatsoever.
15             MR. LaRUSSO:  C26 has an attachment.  We wanted
16    to make sure the attachment was in the copy we left.
17    There was a copy we pulled out of the sleeve.
18             MR. OLIVERAS:  It's right.
19             THE COURT:  Mr. Haley, you are okay with these
20    documents being put in the jury room so they are there in
21    the morning?
22             MR. HALEY:  Yes.
23             THE COURT:  Mr. LaRusso?
24             MR. LaRUSSO:  Yes.
25             MR. MISKIEWICZ:  Yes, your Honor.
```

6172

1    THE COURT:  Mr. Constantine, I changed my mind

2    about 10:15.  It's possible I could get here before 10:15.

3    If there is a note or something, I don't want to do it

4    without you.

5    DEFENDANT CONSTANTINE:  Whatever you say.

6    THE COURT:  Plan to be here.

7    Isolate Sag Harbor for the other witnesses.

8    Tomorrow morning we will bring them out, we will do the

9    three recordings and then we will start the readbacks.

10    Anything else we have to address?

11    I will tell them they can sit as late as they

12    want Thursday night and Friday if they wish and/or

13    Saturday and/or Sunday.  I think that's the best way to

14    handle the situation at least at this point.

15    Obviously, they may be thinking if we don't come

16    in with a verdict, we have to come back in two weeks.  I

17    don't think we have to address that because we have all

18    day tomorrow left.  If they ask that question, I can

19    prepare something to say to them; what if we can't agree

20    before juror number 1 has to leave.  We have to decide

21    what we are going to do at that point.  We are not at that

22    stage yet.

23    I asked my deputy.  Juror Number 1 indicated she

24    said something about a month ago or provided paperwork a

25    month ago.  I don't remember that.  A month ago we thought

6173

1    it was crazy when one of them did have a July 16 problem,

2    we were saying how crazy.  We verified she did say

3    something to us a month ago.  I don't know if I put it on

4    the record or not.  We did not think at that point it was

5    a concern I guess.  I don't particularly remember that.

6            Anything else?

7            MR. MISKIEWICZ:  No; not from the government.

8            MR. LaRUSSO:  No, your Honor.

9            MR. HALEY:  No, your Honor.

10           THE COURT:  Have a good night.

11           (The trial was adjourned and then recalled.)

12           THE CLERK:  Please be seated.

13           I appreciate everybody coming back and the

14   Marshals making Mr. Kenner available.  Everybody is

15   present.

16           This note was handed to me.  I got so distracted

17   by the scheduling issue, I didn't look at it.  But as I

18   walked out the door, I guess as they were leaving...

19           I showed this note to counsel, Court Exhibit 13:

20   We do not need the testimony read back for Led Better, Sag

21   Harbor deal.  We do not need to hear the recordings of the

22   Led Better transaction.

23           You obviously don't have to work on that.  It's

24   a good thing.  So tomorrow morning then there is nothing

25   -- I will have Michele bring these documents now that we

**6174**

1   put on the record, unless there is an objection, since I

2   will not bring them out.

3            Is there any objection to Michele telling them

4   these are the documents responsive to their last note and

5   to also tell them, so they are not wondering what the

6   schedule is tomorrow, they can stay as late as they want

7   tomorrow and that if they want, they can come back Friday

8   too?  Any objection?

9            MR. MISKIEWICZ:  No objection.

10           MR. LaRUSSO:  No, your Honor.

11           MR. HALEY:  No, your Honor.

12           THE COURT:  Thanks again.

13           (The trial was adjourned to Thursday, July 9,

14   2015 at 9:30 a.m.)

15

16

17

18

19

20

21

22

23

24

25

## $

**$1,000** [1] - 6166:14

## 1

**1** [5] - 6135:15, 6150:20, 6165:23, 6172:20, 6172:23
**1,000** [1] - 6166:14
**10** [1] - 6151:10
**106929** [1] - 6149:19
**10:15** [7] - 6159:17, 6161:22, 6164:19, 6164:20, 6165:2, 6172:2
**10:30** [1] - 6159:18
**10:50** [1] - 6164:24
**11** [5] - 6151:9, 6151:10, 6152:1, 6152:25, 6167:9
**11-person** [1] - 6167:12
**11201** [1] - 6124:14
**113** [1] - 6135:13
**11722** [1] - 6124:22
**1180** [1] - 6124:21
**12** [4] - 6152:1, 6159:12, 6162:1, 6168:7
**122** [1] - 6170:16
**128** [1] - 6170:15
**13** [1] - 6173:19
**13-CR-607** [2] - 6124:3, 6125:1
**1327689** [1] - 6149:2
**1401** [1] - 6157:5
**1402** [1] - 6157:6
**1403** [1] - 6157:6
**1490C** [1] - 6158:14
**1490F** [1] - 6158:13
**1490G** [1] - 6158:13
**15** [1] - 6153:5
**1513** [3] - 6162:18, 6165:14, 6170:14
**157** [1] - 6146:23
**16** [2] - 6155:6, 6173:1
**1602** [1] - 6157:5
**162** [4] - 6128:20, 6130:3, 6133:11, 6134:10
**169** [1] - 6163:18
**16th** [1] - 6165:25
**1701** [1] - 6157:6
**1702** [1] - 6157:6
**1703** [1] - 6157:6
**177** [4] - 6165:7, 6165:9, 6165:11, 6170:16
**1903** [1] - 6157:4
**1904** [1] - 6157:4
**1933** [1] - 6150:20
**1993** [1] - 6148:5
**1996** [3] - 6146:23, 6147:11, 6147:12

## 2

**2** [1] - 6135:17
**20** [3] - 6152:25, 6155:23, 6157:4
**2001** [1] - 6157:5
**2002** [1] - 6157:5
**2003** [1] - 6157:5
**2004** [2] - 6149:9, 6149:10
**2005** [2] - 6126:17, 6157:5
**2006** [4] - 6154:20, 6154:25, 6156:1, 6157:5
**2007** [1] - 6157:5
**2008** [1] - 6157:6
**2009** [3] - 6162:13, 6163:12, 6165:14
**2010** [3] - 6128:11, 6128:19, 6131:15
**2011** [6] - 6144:10, 6144:11, 6149:2, 6149:3, 6149:18, 6149:20
**2013** [1] - 6135:14
**2015** [2] - 6124:7, 6174:14
**208.1** [1] - 6128:24
**208.11** [2] - 6128:24, 6134:23
**2081B** [1] - 6158:13
**2082A** [1] - 6158:14
**21** [2] - 6149:20, 6155:18
**215** [1] - 6170:16
**2162** [1] - 6158:13
**221** [1] - 6160:1
**2213** [3] - 6162:17, 6165:13, 6170:14
**222** [1] - 6160:2
**223** [1] - 6162:17
**24** [1] - 6163:18
**28.1** [4] - 6126:3, 6130:9, 6132:17, 6133:13
**28.11** [4] - 6126:3, 6130:10, 6132:17, 6133:13
**289** [1] - 6150:20
**29** [1] - 6157:4

## 3

**3** [1] - 6126:19
**300,000** [1] - 6154:21
**34** [1] - 6160:1
**3500** [4] - 6130:24, 6133:18, 6133:19, 6133:21

## 4

**40** [2] - 6155:23, 6157:4
**449** [1] - 6148:5
**4500** [1] - 6130:24
**4:10** [1] - 6152:9
**4:20** [1] - 6155:11
**4:30** [1] - 6160:11

## 5

**501** [1] - 6148:24
**505.1** [1] - 6158:11
**505.1T** [1] - 6157:9
**505.2** [1] - 6158:12
**505.3** [1] - 6158:12
**59** [1] - 6144:10

## 6

**601** [1] - 6162:20
**6015** [1] - 6157:8
**605130** [1] - 6147:11
**631** [1] - 6124:22
**637** [1] - 6144:10
**6504** [1] - 6158:13
**6601** [4] - 6170:18, 6170:20, 6170:21, 6171:11

## 7

**7** [12] - 6125:17, 6125:20, 6131:21, 6132:18, 6154:6, 6156:3, 6156:18, 6156:19, 6156:24, 6157:1, 6157:3
**701C** [2] - 6157:7
**701C-A** [1] - 6157:7
**702** [1] - 6157:8
**703** [1] - 6157:4
**704** [1] - 6157:8
**705** [1] - 6157:8
**712-6104** [1] - 6124:22
**715** [1] - 6157:6
**716** [1] - 6158:13
**717** [1] - 6158:13
**718** [1] - 6158:13
**721** [1] - 6135:13
**726L** [1] - 6151:14
**7401** [1] - 6128:16
**7456** [3] - 6128:16, 6133:12, 6134:12
**769** [1] - 6128:18

## 8

**8** [8] - 6124:7, 6125:17, 6126:4, 6131:21, 6132:18, 6132:19, 6156:3, 6157:3
**8.4** [1] - 6126:19
**80** [1] - 6127:7
**8846** [1] - 6149:9
**8:30** [1] - 6170:2

## 9

**9** [5] - 6125:17, 6128:24, 6131:19, 6157:4, 6174:13
**92** [1] - 6146:22
**935** [1] - 6148:24
**940** [1] - 6157:5
**941** [1] - 6157:5
**992** [1] - 6148:5
**9:30** [7] - 6161:23, 6163:20, 6163:24, 6164:4, 6164:17, 6164:23, 6174:14

## A

**a.m** [1] - 6174:14
**a/k/a** [2] - 6124:5, 6124:6
**Abdulla** [2] - 6138:7, 6138:13
**able** [1] - 6159:13
**absence** [1] - 6148:7
**absent** [2] - 6148:2, 6148:9
**accepting** [1] - 6139:4
**account** [8] - 6136:12, 6136:16, 6150:7, 6150:9, 6150:15, 6154:21, 6154:22, 6166:13
**accounts** [2] - 6149:4, 6156:3
**accurate** [3] - 6131:19, 6138:1, 6166:19
**acknowledging** [2] - 6159:13, 6162:23
**acknowledgment** [1] - 6170:22
**act** [1] - 6141:2
**acts** [2] - 6145:8, 6145:10
**actual** [4] - 6141:2, 6154:1, 6156:3, 6156:7
**add** [2] - 6131:24, 6155:5
**added** [2] - 6171:8, 6171:11
**addition** [1] - 6169:4
**additional** [2] - 6154:15, 6159:22
**address** [3] - 6146:8, 6172:10, 6172:17
**adjourned** [2] - 6173:11, 6174:13
**admit** [1] - 6157:25
**admitted** [5] - 6153:21, 6154:5, 6155:23, 6157:8, 6158:11
**advice** [3] - 6148:11, 6149:6, 6149:12
**advise** [1] - 6131:11
**advised** [1] - 6132:13
**affect** [1] - 6150:24
**afternoon** [4] - 6125:8, 6125:13, 6125:16, 6132:5
**Agent** [1] - 6156:10

1

**ago** [4] - 6172:24, 6172:25, 6173:3
**agree** [7] - 6127:2, 6145:19, 6166:14, 6166:24, 6167:15, 6170:2, 6172:19
**agreed** [6] - 6126:5, 6141:7, 6157:7, 6158:18, 6170:3, 6171:9
**agreement** [25] - 6125:24, 6126:15, 6126:21, 6126:24, 6127:1, 6127:4, 6128:19, 6128:22, 6129:21, 6129:22, 6129:24, 6132:15, 6132:22, 6133:1, 6133:4, 6141:13, 6141:14, 6153:16, 6153:20, 6156:22, 6158:15, 6159:19, 6160:3, 6164:5, 6165:17
**agreements** [2] - 6128:21, 6132:11
**aid** [1] - 6157:13
**aids** [3] - 6157:8, 6157:20, 6158:7
**allegedly** [1] - 6141:14
**alleging** [2] - 6136:2, 6164:6
**allow** [4] - 6150:8, 6154:17, 6157:20, 6158:6
**allowed** [1] - 6149:1
**allows** [2] - 6141:19, 6167:9
**alternate** [2] - 6167:7
**alternative** [1] - 6140:12
**Amendment** [1] - 6147:2
**AMERICA** [1] - 6124:3
**amplify** [1] - 6134:25
**analysis** [1] - 6150:24
**Andrew** [1] - 6125:11
**ANDREW** [1] - 6124:18
**answer** [2] - 6127:24, 6169:8
**Appearances** [1] - 6125:3
**APPEARANCES** [1] - 6124:11
**applies** [1] - 6149:17
**Applins** [1] - 6144:10
**apply** [1] - 6140:16
**appreciate** [1] - 6173:13
**appropriate** [4] - 6135:17, 6140:24, 6153:2, 6154:11
**argue** [2] - 6137:19, 6140:9
**argued** [1] - 6140:1
**argument** [5] - 6136:4, 6136:14, 6137:14, 6139:14, 6139:22
**arrangements** [1] - 6148:8
**arrive** [1] - 6162:1
**article** [2] - 6151:10, 6160:15
**aside** [1] - 6151:22
**aspect** [4] - 6135:16, 6136:6, 6136:23, 6169:15

**aspects** [3] - 6137:22, 6138:4, 6169:14
**asserted** [2] - 6136:25, 6144:7
**assertions** [1] - 6136:25
**asserts** [1] - 6135:16
**assistance** [1] - 6147:13
**associated** [1] - 6155:7
**assume** [1] - 6143:13
**assuming** [2] - 6137:4, 6141:3, 6162:24
**attach** [1] - 6150:17
**attachment** [2] - 6171:15, 6171:16
**Attorney** [2] - 6124:13, 6134:21
**attorney** [6] - 6148:8, 6148:10, 6148:16, 6149:6, 6150:14, 6150:17
**attorney's** [1] - 6150:18
**attorney-client** [2] - 6148:8, 6150:17
**Attorneys** [1] - 6124:15
**attorneys** [1] - 6149:4
**August** [1] - 6126:17
**authorization** [4] - 6162:21, 6170:18, 6170:23, 6170:25
**available** [2] - 6159:14, 6168:3, 6173:14
**avoidance** [5] - 6135:8, 6138:15, 6139:2, 6140:1, 6140:20
**avoided** [3] - 6135:22, 6137:9, 6137:20
**avoiding** [1] - 6137:23
**aware** [7] - 6135:21, 6137:8, 6137:13, 6137:17, 6139:23, 6150:14, 6154:10
**AZ** [8] - 6125:24, 6126:5, 6126:18, 6129:19, 6129:20, 6132:10, 6132:15, 6132:21

## B

**Bank** [3] - 6154:22, 6162:12, 6163:11
**bank** [12] - 6136:16, 6154:15, 6154:22, 6155:7, 6162:11, 6162:17, 6163:11, 6165:13, 6166:9, 6166:13, 6166:23, 6166:25
**based** [8] - 6135:1, 6137:4, 6137:15, 6138:11, 6139:23, 6140:2, 6150:4, 6150:25
**basis** [5] - 6140:13, 6149:22, 6150:3, 6150:5, 6150:11
**bears** [1] - 6127:7
**BEFORE** [1] - 6124:9
**behind** [1] - 6142:6

**bench** [1] - 6134:16
**Berard** [2] - 6153:6, 6169:19
**best** [1] - 6172:13
**Betesh** [3] - 6153:8, 6169:9, 6170:3
**better** [3] - 6154:18, 6158:8, 6164:1
**Better** [7] - 6154:20, 6154:23, 6156:13, 6169:9, 6169:10, 6173:20, 6173:22
**better/Sag** [1] - 6160:18
**Better/Sag** [1] - 6151:20
**between** [5] - 6148:16, 6150:12, 6152:7, 6163:1, 6163:24
**beyond** [1] - 6135:20
**BIANCO** [1] - 6124:9
**billing** [1] - 6141:15
**Binder** [3] - 6154:6, 6156:24, 6157:1
**binder** [17] - 6128:16, 6134:12, 6134:22, 6153:19, 6153:20, 6153:23, 6154:5, 6154:6, 6154:10, 6155:14, 6155:19, 6155:22, 6155:23, 6156:17, 6156:19, 6157:3
**binder..** [1] - 6134:13
**black** [1] - 6134:22
**blind** [4] - 6138:14, 6138:17, 6138:25, 6139:3
**BNK-MM-139** [1] - 6154:24
**book** [4] - 6125:25, 6128:15, 6130:3, 6133:11
**bound** [1] - 6144:24
**break** [1] - 6151:3
**briefed** [1] - 6146:6
**bright** [1] - 6144:21
**bring** [10] - 6132:7, 6157:24, 6158:5, 6158:20, 6161:4, 6162:6, 6167:6, 6172:8, 6173:25, 6174:2
**bringing** [2] - 6166:21, 6171:12
**broad** [1] - 6145:1
**broadly** [1] - 6164:9
**Brooklyn** [1] - 6124:14
**brought** [3] - 6142:16, 6142:17, 6167:7
**burden** [1] - 6146:1
**buying** [1] - 6138:23

## C

**C122** [2] - 6163:18, 6165:5
**C128** [2] - 6163:18, 6165:5
**C140** [4] - 6127:8, 6129:3, 6130:2, 6133:8
**C161** [3] - 6128:20, 6130:3, 6133:11, 6134:10

**C166** [5] - 6128:8, 6130:5, 6130:15, 6131:1, 6133:14
**C169** [2] - 6165:5, 6170:15
**C177** [1] - 6165:5
**C215** [2] - 6163:18, 6165:5
**C24** [2] - 6165:5, 6170:16
**C26** [1] - 6171:15
**cancel** [1] - 6168:4
**cannot** [3] - 6131:3, 6143:12, 6147:7
**Capital** [1] - 6128:22
**captive** [1] - 6134:24
**care** [1] - 6168:16
**case** [40] - 6125:1, 6135:11, 6135:13, 6135:24, 6136:1, 6137:23, 6138:4, 6138:6, 6138:13, 6138:18, 6139:5, 6142:2, 6142:17, 6144:4, 6144:10, 6144:13, 6145:3, 6145:8, 6145:9, 6145:14, 6145:15, 6146:21, 6146:23, 6147:10, 6147:18, 6147:20, 6148:4, 6148:6, 6148:13, 6148:14, 6148:23, 6149:8, 6149:20, 6150:4, 6150:21, 6151:1, 6161:25, 6167:11
**cases** [9] - 6141:6, 6144:12, 6145:1, 6145:5, 6145:7, 6147:19, 6148:11, 6148:20, 6148:25
**Casualty** [1] - 6149:9
**CAT** [1] - 6124:25
**ccs** [1] - 6164:10
**Central** [2] - 6124:4, 6124:22
**certain** [4] - 6137:24, 6138:4, 6149:5, 6150:8
**certainly** [1] - 6141:25
**certified** [1] - 6157:7
**challenging** [1] - 6147:5
**chance** [2] - 6159:10, 6161:16
**changed** [2] - 6125:21, 6172:1
**charge** [7] - 6135:18, 6136:7, 6140:24, 6142:21, 6143:23, 6145:11
**charged** [2] - 6155:25, 6156:3, 6156:7
**charges** [1] - 6144:1
**Charles** [1] - 6166:13
**chart** [3] - 6156:11, 6157:3, 6157:4
**charts** [3] - 6153:12, 6156:5, 6157:4
**check** [4] - 6154:1, 6155:11, 6155:12, 6167:10
**Chervin** [1] - 6149:18
**child** [1] - 6168:16
**chose** [1] - 6140:11
**Circuit** [16] - 6135:13,

3

6135:14, 6138:8, 6138:11, 6144:9, 6144:11, 6144:18, 6146:21, 6148:1, 6148:5, 6148:12, 6148:14, 6149:10, 6149:21, 6150:13
**circumstance** [2] - 6148:14, 6148:20
**circumstances** [7] - 6137:15, 6139:24, 6140:3, 6148:3, 6148:7, 6148:13, 6148:25
**citations** [1] - 6152:6
**Cites** [1] - 6148:11
**citing** [2] - 6147:18, 6149:10
**claim** [4] - 6147:4, 6147:8, 6147:13, 6147:23
**claiming** [1] - 6147:13
**clarification** [1] - 6130:11
**clarifying** [1] - 6163:9
**Clark** [1] - 6150:20
**clear** [12] - 6130:19, 6135:5, 6137:22, 6143:23, 6145:18, 6145:19, 6148:23, 6149:11, 6150:1, 6150:13, 6150:14, 6161:16
**clearer** [3] - 6143:8, 6143:12, 6145:22
**clearly** [2] - 6136:25, 6139:7
**CLERK** [9] - 6125:1, 6151:5, 6166:1, 6166:6, 6167:17, 6167:23, 6168:12, 6168:15, 6173:12
**clerk** [2] - 6162:5, 6163:7
**client** [15] - 6134:14, 6148:3, 6148:7, 6148:8, 6148:16, 6148:22, 6149:14, 6150:17, 6154:9, 6154:17, 6155:11, 6155:17, 6157:14, 6164:16, 6165:20
**clips** [2] - 6158:11, 6169:16
**close** [1] - 6138:21
**closed** [1] - 6156:11
**closing** [3] - 6138:14, 6138:25, 6154:20
**CMG** [1] - 6139:6
**cognizable** [1] - 6147:7
**coming** [2] - 6165:1, 6173:13
**comment** [1] - 6138:12
**Commerce** [1] - 6154:22
**commercials** [1] - 6139:12
**commit** [1] - 6144:24
**committed** [2] - 6149:23, 6150:6
**commonly** [1] - 6135:8
**communicated** [1] - 6149:5
**communication** [4] - 6148:16, 6148:19, 6149:11, 6149:24

**communications** [2] - 6150:7, 6150:12
**company** [1] - 6141:10
**complete** [1] - 6159:24
**completely** [2] - 6144:2, 6144:13
**completes** [1] - 6165:17
**complex** [1] - 6145:5
**complexity** [2] - 6131:25, 6142:17
**complicated** [3] - 6145:14, 6145:15, 6145:16
**conceal** [1] - 6156:2
**concern** [6] - 6142:15, 6143:17, 6143:23, 6144:3, 6166:11, 6173:5
**concerned** [1] - 6159:25
**conclude** [1] - 6138:12
**concluded** [4] - 6137:3, 6141:6, 6148:2, 6150:4
**conclusion** [1] - 6135:20
**confident** [1] - 6153:25
**confidential** [2] - 6148:15, 6148:19
**confirm** [1] - 6143:6
**confirming** [4] - 6135:22, 6137:10, 6137:20, 6137:24
**confronted** [2] - 6138:16, 6149:1
**confusion** [1] - 6133:21
**Conley** [2] - 6146:22, 6147:18
**connection** [5] - 6127:19, 6145:11, 6146:7, 6156:5, 6169:12
**conscious** [5] - 6135:8, 6138:14, 6139:2, 6140:1, 6140:20
**consciously** [4] - 6135:22, 6137:9, 6137:19, 6137:23
**consent** [1] - 6157:20
**consents** [1] - 6154:6
**consider** [3] - 6142:1, 6143:18, 6144:24
**conspiracy** [22] - 6140:25, 6141:1, 6141:2, 6141:4, 6141:17, 6142:5, 6142:10, 6142:12, 6142:13, 6142:20, 6143:3, 6143:4, 6143:10, 6143:12, 6143:25, 6145:17, 6145:20, 6146:24, 6147:1, 6147:6, 6147:15
**Constantine** [28] - 6124:19, 6125:2, 6125:10, 6125:12, 6127:8, 6128:20, 6136:5, 6136:11, 6136:14, 6136:17, 6137:11, 6137:16, 6137:23, 6138:21, 6139:17, 6139:22, 6139:23, 6141:7, 6141:11, 6142:14, 6143:24, 6146:4, 6150:12, 6163:3, 6164:22,

6170:15, 6170:24, 6172:1
**CONSTANTINE** [3] - 6124:6, 6164:25, 6172:5
**Constantine's** [1] - 6142:22
**construe** [1] - 6164:9
**consulted** [1] - 6150:19
**consuming** [1] - 6169:15
**content** [1] - 6149:6
**context** [1] - 6139:2
**continued** [1] - 6144:7
**contributed** [1] - 6166:14
**control** [1] - 6136:12
**conversation** [1] - 6157:11
**conversion** [1] - 6128:22
**conviction** [4] - 6135:17, 6136:6, 6137:2, 6146:7
**copy** [2] - 6171:16, 6171:17
**correct** [6] - 6126:6, 6126:7, 6126:8, 6131:10, 6151:24, 6162:9
**counsel** [3] - 6134:13, 6147:13, 6173:19
**count** [1] - 6147:6
**counts** [1] - 6141:6
**couple** [2] - 6128:9, 6134:24
**course** [1] - 6161:13
**COURT** [108] - 6124:1, 6125:8, 6125:13, 6125:16, 6125:19, 6126:9, 6126:12, 6126:14, 6126:21, 6127:3, 6127:20, 6127:25, 6128:9, 6128:13, 6129:1, 6129:3, 6129:16, 6129:18, 6130:13, 6130:15, 6130:19, 6131:1, 6131:9, 6131:13, 6131:17, 6131:22, 6132:2, 6132:4, 6134:7, 6134:10, 6134:12, 6134:19, 6139:9, 6142:24, 6151:6, 6151:13, 6151:15, 6151:19, 6152:3, 6152:9, 6152:19, 6152:24, 6153:3, 6153:11, 6154:3, 6154:12, 6154:14, 6155:2, 6155:9, 6156:9, 6156:15, 6156:17, 6156:20, 6156:23, 6157:2, 6157:10, 6157:15, 6157:22, 6158:15, 6158:19, 6159:9, 6159:16, 6159:20, 6160:3, 6160:10, 6162:5, 6162:17, 6163:5, 6163:14, 6163:19, 6163:24, 6164:3, 6164:12, 6164:18, 6164:21, 6165:1, 6165:7, 6165:13, 6165:17, 6165:21, 6165:23, 6166:4, 6166:22, 6167:2, 6167:9, 6167:13, 6167:17, 6168:2, 6168:10, 6168:13, 6168:17, 6168:21, 6169:2, 6169:17, 6169:19, 6169:24, 6170:6, 6170:11, 6170:20, 6171:6,

6171:8, 6171:11, 6171:19, 6171:23, 6172:1, 6172:6, 6173:10, 6174:12
**court** [2] - 6146:16, 6146:20
**Court** [30] - 6124:4, 6124:20, 6125:17, 6125:20, 6126:4, 6131:19, 6131:25, 6134:15, 6142:6, 6144:14, 6144:15, 6145:2, 6146:9, 6147:4, 6147:10, 6147:16, 6147:18, 6148:6, 6149:7, 6150:14, 6150:21, 6150:23, 6151:9, 6151:10, 6153:1, 6154:7, 6159:14, 6166:20, 6173:19
**Court's** [2] - 6158:8, 6167:5, 6169:8
**court's** [1] - 6146:23
**Courthouse** [1] - 6124:21
**courtroom** [7] - 6132:3, 6134:6, 6151:7, 6160:9, 6162:4, 6164:24, 6165:2
**Courts** [3] - 6144:24, 6146:6, 6146:8
**courts** [2] - 6145:6, 6148:25
**cover** [3] - 6134:18, 6134:19, 6134:22
**CR** [3] - 6127:7, 6127:11, 6129:6
**crazy** [2] - 6173:1, 6173:2
**credit** [3] - 6156:2, 6156:4, 6156:12
**credited** [1] - 6137:5
**crime** [11] - 6143:16, 6143:20, 6149:17, 6149:21, 6149:23, 6149:25, 6150:18, 6150:20, 6150:24
**criminal** [5] - 6144:12, 6145:5, 6145:7, 6145:14, 6145:15
**criteria** [1] - 6144:23
**cross** [2] - 6162:19, 6162:23
**crossed** [1] - 6170:17
**CSO** [1] - 6158:19
**CURRIE** [1] - 6124:12

**D**

**database** [1] - 6155:8
**date** [1] - 6131:19
**dated** [3] - 6126:17, 6131:21, 6132:17
**days** [1] - 6154:22
**deal** [5] - 6139:16, 6151:21, 6159:21, 6160:19, 6173:21
**dealing** [2] - 6136:20, 6171:3
**dealt** [1] - 6146:21

4

**decide** [2] - 6145:24, 6172:20
**decision** [3] - 6144:14, 6144:25, 6146:19
**declined** [2] - 6144:21, 6146:2
**deed** [1] - 6157:7
**Defendant** [2] - 6124:17, 6124:19
**defendant** [4] - 6135:16, 6135:20, 6137:8, 6141:16
**DEFENDANT** [3] - 6154:19, 6164:25, 6172:5
**defendant's** [1] - 6147:2
**Defendants** [1] - 6124:7
**defendants** [3] - 6138:5, 6140:14, 6140:25
**defense** [2] - 6134:13, 6136:25
**Defense** [1] - 6124:16
**defer** [1] - 6158:8
**definitively** [1] - 6163:20
**deliberate** [1] - 6163:20
**deliberating** [2] - 6162:2, 6164:23
**deliberations** [1] - 6161:25
**delineate** [1] - 6144:21
**deny** [2] - 6143:1, 6144:8
**dependent** [1] - 6147:24
**Depot** [1] - 6130:24
**deputy** [2] - 6171:12, 6172:23
**describe** [2] - 6128:2, 6132:1
**describing** [1] - 6133:23
**description** [3] - 6130:7, 6131:5, 6133:22
**designate** [1] - 6147:1
**designation** [1] - 6127:8
**detail** [1] - 6144:11
**determination** [1] - 6146:23
**determine** [3] - 6146:10, 6147:15, 6148:17
**determined** [1] - 6148:6
**determining** [1] - 6144:22
**difference** [1] - 6161:21
**different** [4] - 6130:8, 6131:4, 6136:1, 6136:3
**directly** [3] - 6136:20, 6139:18, 6141:17
**disagree** [1] - 6143:2
**disclosure** [4] - 6148:3, 6148:10, 6148:15, 6148:17
**disclosures** [1] - 6148:9
**discovery** [2] - 6155:6, 6155:10
**discretion** [4] - 6144:15, 6145:1, 6147:17, 6147:19
**discretionary** [2] - 6144:14, 6145:12
**discuss** [3] - 6148:13,

**decide** [2] - 6145:24, 6161:25, 6169:2
**discussed** [2] - 6128:17, 6144:11
**discussion** [1] - 6142:4
**dispute** [3] - 6135:21, 6137:9, 6166:18
**distaste** [1] - 6145:6
**distracted** [1] - 6173:16
**DISTRICT** [3] - 6124:1, 6124:1, 6124:10
**District** [14] - 6124:4, 6124:21, 6144:14, 6144:15, 6144:24, 6145:2, 6147:10, 6147:11, 6149:3, 6149:6, 6149:9, 6149:10, 6149:19
**diverted** [1] - 6141:8
**divide** [1] - 6146:2
**document** [20] - 6126:5, 6126:23, 6127:17, 6128:2, 6129:13, 6129:15, 6129:21, 6129:22, 6130:8, 6130:16, 6132:1, 6132:22, 6133:1, 6133:5, 6133:16, 6133:20, 6133:22, 6133:24, 6157:19, 6159:23
**documents** [27] - 6131:2, 6131:10, 6132:16, 6133:16, 6134:1, 6134:4, 6134:16, 6151:20, 6153:16, 6153:17, 6154:1, 6154:9, 6154:10, 6156:20, 6158:12, 6158:21, 6159:11, 6160:18, 6160:19, 6160:23, 6161:15, 6161:17, 6162:7, 6166:24, 6171:20, 6173:25, 6174:4
**done** [4] - 6141:15, 6142:10, 6152:8, 6169:17
**door** [1] - 6173:18
**double** [4] - 6154:1, 6155:11, 6155:12, 6167:10
**double-check** [4] - 6154:1, 6155:11, 6155:12, 6167:10
**doubt** [1] - 6135:20
**down** [2] - 6127:23, 6131:10
**drew** [1] - 6137:5
**Dubin** [1] - 6148:24
**due** [1] - 6147:4
**during** [4] - 6133:19, 6157:23, 6161:8, 6161:13

## E

**e-mail** [7] - 6128:23, 6130:2, 6162:21, 6164:6, 6166:8, 6170:21, 6170:25
**e-mails** [15] - 6126:3, 6130:9, 6132:17, 6133:12, 6151:20, 6159:13, 6160:18, 6162:23, 6163:1, 6163:15, 6163:17, 6164:9, 6164:11,

6165:4, 6171:3
**early** [1] - 6170:2
**Eastern** [2] - 6147:11, 6149:3
**EASTERN** [1] - 6124:1
**easy** [1] - 6126:3
**either** [2] - 6138:17, 6165:12
**element** [2] - 6143:18, 6143:19
**elements** [2] - 6143:16, 6143:17
**emblem** [1] - 6134:21
**employed** [1] - 6144:23
**end** [4] - 6129:20, 6132:9, 6140:4, 6156:14
**entails** [1] - 6138:15
**enters** [2] - 6132:3, 6160:9
**equivalent** [1] - 6145:13
**escrow** [2] - 6149:4, 6154:21
**especially** [1] - 6169:3
**ESQ** [5] - 6124:14, 6124:15, 6124:16, 6124:18, 6124:18
**established** [1] - 6150:2
**estimate** [1] - 6152:23
**estimating** [1] - 6153:4
**Eufora** [24] - 6125:24, 6126:18, 6128:21, 6128:22, 6129:19, 6129:20, 6132:10, 6132:15, 6132:21, 6136:13, 6137:25, 6138:19, 6138:23, 6139:12, 6140:16, 6140:18, 6141:4, 6141:8, 6142:9, 6142:13, 6143:25, 6162:12, 6163:11
**evaluating** [1] - 6142:1
**event** [1] - 6143:1
**events** [1] - 6138:18
**evidence** [29] - 6125:18, 6126:6, 6126:25, 6127:13, 6128:2, 6129:21, 6129:23, 6130:7, 6130:18, 6131:3, 6132:23, 6133:2, 6133:15, 6135:19, 6137:4, 6140:19, 6140:25, 6142:2, 6147:5, 6150:4, 6150:25, 6154:24, 6155:2, 6155:10, 6155:13, 6157:13, 6157:23, 6166:17
**exactly** [2] - 6143:21, 6146:22
**examination** [1] - 6148:18
**example** [8] - 6136:8, 6136:15, 6136:19, 6137:10, 6139:9, 6139:11, 6141:4, 6152:3
**examples** [1] - 6136:9
**exception** [5] - 6149:17, 6149:18, 6149:22, 6150:16, 6150:25
**excuse** [1] - 6162:17

**excused** [1] - 6167:6
**exhibit** [9] - 6128:7, 6131:4, 6133:17, 6133:25, 6151:13, 6153:22, 6155:24, 6166:12, 6170:17
**Exhibit** [21] - 6125:20, 6126:4, 6126:11, 6128:16, 6128:18, 6128:19, 6128:24, 6129:25, 6131:19, 6133:18, 6133:20, 6151:9, 6151:10, 6155:18, 6157:17, 6160:1, 6160:2, 6162:20, 6173:19
**Exhibits** [5] - 6125:17, 6158:13, 6158:18, 6159:25, 6170:15
**exhibits** [18] - 6125:25, 6127:3, 6127:19, 6128:1, 6128:12, 6130:1, 6130:6, 6130:13, 6133:13, 6153:21, 6153:25, 6154:6, 6156:24, 6157:1, 6157:7, 6170:5, 6170:10, 6170:13
**existed** [3] - 6138:3, 6141:4, 6143:3
**exists** [1] - 6135:18
**explained** [3] - 6147:16, 6147:17, 6156:12
**explaining** [1] - 6137:11
**explains** [2] - 6148:12, 6149:20
**explicit** [1] - 6145:18
**explicitly** [1] - 6141:24
**extent** [1] - 6149:11
**eye** [4] - 6138:14, 6138:17, 6138:25, 6139:3

## F

**F.2d** [2] - 6148:5, 6148:24
**F.3d** [3] - 6135:13, 6144:10, 6146:23
**fact** [14] - 6135:21, 6135:22, 6137:9, 6137:10, 6137:20, 6138:1, 6138:15, 6139:24, 6141:10, 6141:16, 6147:12, 6148:21, 6150:14, 6150:21
**facts** [2] - 6137:21, 6138:16
**factual** [3] - 6135:18, 6138:3, 6139:7, 6141:21, 6149:22
**factually** [1] - 6142:22
**fall** [2] - 6140:2, 6148:8
**falsity** [1] - 6135:9
**familiar** [1] - 6152:24
**far** [1] - 6159:24
**fashion** [1] - 6138:2
**favor** [1] - 6137:6
**February** [3] - 6162:13, 6163:12, 6165:14
**Federal** [1] - 6124:21
**fee** [3] - 6148:3, 6148:7,

6148:21
**fees** [1] - 6149:14
**finally** [1] - 6147:21
**findings** [1] - 6150:22
**fine** [1] - 6132:19
**first** [12] - 6125:20, 6132:13, 6135:4, 6143:7, 6143:10, 6143:12, 6148:1, 6153:15, 6153:18, 6159:20, 6161:1, 6161:18
**five** [4] - 6133:13, 6133:21, 6141:20, 6143:9
**follow** [2] - 6143:14, 6161:19
**following** [3] - 6135:25, 6144:8, 6154:6
**form** [4] - 6143:15, 6144:23, 6146:19, 6152:2
**forth** [3] - 6135:12, 6149:18, 6152:4
**fraud** [17] - 6135:7, 6136:7, 6137:1, 6137:2, 6141:4, 6145:16, 6149:17, 6149:18, 6149:21, 6149:23, 6149:24, 6150:6, 6150:18, 6150:20, 6150:25, 6156:1, 6156:8
**fraudulent** [4] - 6150:1, 6150:3, 6150:15, 6150:23
**Friday** [12] - 6166:3, 6167:14, 6167:20, 6167:22, 6167:24, 6168:10, 6168:11, 6168:12, 6168:19, 6168:22, 6172:12, 6174:7
**full** [1] - 6169:4
**fund** [1] - 6137:14
**Fund** [2] - 6136:10, 6136:11, 6137:12, 6170:23, 6171:1
**funds** [2] - 6137:18, 6150:24
**furtherance** [3] - 6149:24, 6150:17, 6150:19

## G

**Gaarn** [6] - 6126:17, 6126:18, 6136:16, 6141:15, 6142:8, 6142:14
**Gardenville** [1] - 6149:8
**general** [3] - 6146:19, 6146:25, 6147:6
**Gentry** [3] - 6127:7, 6127:11, 6129:6
**Given** [1] - 6147:18
**given** [3] - 6134:15, 6135:15, 6140:7
**Global** [5] - 6136:9, 6136:11, 6137:12, 6170:23, 6171:1
**Goffer** [1] - 6135:13
**Goldberger** [1] - 6148:24

**Government** [12] - 6124:12, 6126:10, 6128:15, 6128:18, 6128:19, 6129:25, 6133:18, 6133:20, 6155:18, 6157:17, 6158:12, 6162:20
**government** [23] - 6130:22, 6135:11, 6136:2, 6137:19, 6139:25, 6140:9, 6140:11, 6141:24, 6155:3, 6155:17, 6157:16, 6159:15, 6162:20, 6162:22, 6163:3, 6163:6, 6164:5, 6165:8, 6166:10, 6166:15, 6170:19, 6170:20, 6173:7
**Government's** [1] - 6170:14
**government's** [6] - 6137:4, 6137:5, 6137:6, 6139:13, 6139:23, 6140:19
**great** [2] - 6152:15, 6152:17
**grimace** [1] - 6157:21
**grouped** [1] - 6130:13
**GSF** [4] - 6139:8, 6140:15, 6140:18, 6150:6
**guess** [4] - 6128:23, 6140:11, 6173:5, 6173:18
**guidance** [2] - 6138:8, 6144:19
**guideline** [1] - 6146:24
**guilty** [2] - 6144:1, 6147:16
**GX** [2] - 6126:3, 6130:9
**GX2010** [3] - 6128:11, 6133:11, 6134:10
**GX208.1** [1] - 6134:23
**GX210** [3] - 6128:10, 6130:3, 6131:15
**GX2213** [1] - 6163:12
**GX3500** [6] - 6128:7, 6130:5, 6130:12, 6130:22, 6131:12, 6131:25
**GX7401** [2] - 6133:12, 6134:12
**GX7401-7456** [1] - 6130:4
**GX769** [3] - 6130:3, 6133:11, 6134:10
**GXTG2** [3] - 6133:4, 6134:8, 6134:9

## H

**Haley** [8] - 6125:14, 6130:21, 6153:24, 6159:22, 6160:4, 6164:12, 6165:9, 6171:19
**HALEY** [6] - 6124:16, 6125:14, 6126:7, 6127:2, 6127:5, 6127:21, 6128:4, 6129:6, 6129:11, 6129:14, 6130:11, 6130:14, 6131:6, 6131:24, 6134:14, 6151:12, 6151:17, 6152:14, 6152:22,

6153:1, 6154:7, 6154:17, 6155:5, 6155:16, 6156:16, 6156:19, 6156:21, 6157:14, 6157:17, 6157:20, 6158:8, 6158:17, 6159:7, 6159:19, 6159:24, 6160:7, 6164:1, 6164:14, 6165:3, 6165:12, 6165:20, 6165:22, 6167:4, 6167:19, 6168:19, 6168:24, 6169:8, 6169:18, 6169:21, 6171:7, 6171:22, 6173:9, 6174:11
**handed** [1] - 6173:16
**handle** [1] - 6172:14
**happy** [2] - 6153:22, 6155:21
**Harbor** [18] - 6151:20, 6152:2, 6152:16, 6153:12, 6155:24, 6157:12, 6158:4, 6158:21, 6158:25, 6159:2, 6160:19, 6160:20, 6161:2, 6161:8, 6162:6, 6169:12, 6172:7, 6173:21
**hate** [1] - 6154:7
**Hawaii** [1] - 6140:17
**hear** [5] - 6132:13, 6157:24, 6158:5, 6167:19, 6173:21
**heard** [1] - 6150:25
**held** [2] - 6142:14, 6149:21
**high** [4] - 6135:21, 6137:8, 6137:18, 6139:24
**hockey** [2] - 6138:22, 6139:10, 6163:2
**hold** [2] - 6157:10, 6163:25
**Home** [1] - 6130:24
**home** [6] - 6158:20, 6160:12, 6160:21, 6162:3
**Honor** [29] - 6127:5, 6127:10, 6127:16, 6128:7, 6128:8, 6129:6, 6129:8, 6131:11, 6131:24, 6134:14, 6142:3, 6154:17, 6154:19, 6155:4, 6155:16, 6156:21, 6156:25, 6157:21, 6159:8, 6160:8, 6163:10, 6163:15, 6164:16, 6165:16, 6171:25, 6173:8, 6173:9, 6174:10, 6174:11
**HONORABLE** [1] - 6124:9
**hope** [1] - 6168:1
**HORMOVITIS** [1] - 6124:6
**hours** [2] - 6151:24, 6153:3
**hump** [1] - 6139:13

## I

**i.e** [1] - 6135:18
**idea** [1] - 6127:21
**identified** [5] - 6129:7, 6158:4, 6160:4, 6161:2, 6163:1

**identify** [1] - 6127:16
**identifying** [2] - 6127:12, 6133:24
**identity** [3] - 6148:3, 6148:7, 6148:22
**ignore** [1] - 6144:2
**immediately** [1] - 6141:14
**implement** [1] - 6141:14
**implying** [1] - 6166:16
**incapacitate** [1] - 6148:10
**included** [5] - 6135:5, 6153:14, 6155:18, 6155:22, 6162:24
**includes** [3] - 6153:20, 6154:6, 6157:3
**including** [2] - 6148:4, 6163:2
**inconsistent** [1] - 6157:25
**incorrectly** [1] - 6127:18
**increase** [2] - 6146:13, 6146:17
**increases** [1] - 6146:14
**incriminating** [1] - 6148:22
**indicated** [2] - 6145:23, 6172:23
**indictment** [1] - 6155:25
**individuals** [1] - 6149:5
**ineffective** [1] - 6147:12
**inferences** [1] - 6137:6
**information** [3] - 6148:4, 6148:21, 6149:14
**inquire** [1] - 6138:21
**inquired** [1] - 6138:17
**inquiry** [1] - 6132:1
**insofar** [1] - 6127:10
**instance** [2] - 6141:11
**instead** [2] - 6138:17, 6161:22
**instructed** [2] - 6141:20, 6143:11
**instruction** [24] - 6135:6, 6135:7, 6135:8, 6135:10, 6135:15, 6138:5, 6138:6, 6138:10, 6138:11, 6140:10, 6140:15, 6140:19, 6140:20, 6141:22, 6142:1, 6143:8, 6143:13, 6143:14, 6144:3, 6145:16, 6145:17, 6145:21, 6147:10, 6162:18
**instructions** [2] - 6145:16, 6157:24
**intention** [2] - 6159:4, 6160:13
**interactions** [1] - 6136:21
**interest** [5] - 6126:19, 6140:4, 6141:9, 6142:9, 6156:1
**interpreting** [4] - 6152:13, 6159:1, 6161:14, 6161:20
**interrogatories** [6] - 6144:20, 6144:22, 6145:1,

6145:4, 6145:7, 6147:14
**interrupt** [3] - 6152:14, 6154:7, 6167:4
**introduced** [16] - 6126:5, 6126:25, 6127:6, 6127:8, 6127:13, 6128:1, 6128:20, 6129:21, 6129:23, 6132:23, 6133:2, 6133:3, 6133:15, 6166:8, 6166:10, 6170:19
**introduction** [1] - 6135:25
**investigation** [1] - 6137:21
**investing** [1] - 6141:8
**investment** [4] - 6136:13, 6136:22, 6136:24, 6139:4
**investments** [2] - 6138:25, 6150:10
**investor** [2] - 6138:22, 6139:11
**investors** [2] - 6137:12, 6138:20
**invoke** [2] - 6143:4, 6149:21
**involve** [2] - 6149:11, 6153:12
**involved** [9] - 6136:10, 6136:17, 6136:23, 6139:18, 6139:20, 6141:1, 6141:10, 6143:25
**involves** [1] - 6153:11
**IRS** [1] - 6148:18
**Islip** [2] - 6124:4, 6124:22
**isolate** [5] - 6152:6, 6153:16, 6161:12, 6169:14, 6172:7
**isolated** [5] - 6153:24, 6154:2, 6154:4, 6160:19, 6169:7
**isolating** [2] - 6152:18, 6159:3
**issue** [16] - 6127:5, 6135:6, 6135:9, 6142:17, 6143:14, 6144:9, 6145:8, 6146:4, 6146:5, 6146:9, 6147:9, 6147:21, 6155:16, 6167:23, 6168:10, 6173:17
**issues** [5] - 6136:13, 6136:19, 6136:22, 6137:17, 6168:16
**itself** [6] - 6136:24, 6138:5, 6138:10, 6141:3, 6148:15, 6148:22

### J

**JAMES** [1] - 6124:14
**James** [1] - 6125:4
**Johnson** [2] - 6162:12, 6163:11
**JOSEPH** [1] - 6124:9
**Judge** [11] - 6127:2, 6127:14, 6127:21, 6130:17,

6131:18, 6138:19, 6162:15, 6165:12, 6165:22, 6167:11, 6171:7
**judge** [3] - 6157:14, 6162:19, 6170:17
**JUDGE** [1] - 6124:10
**judgment** [1] - 6158:9
**July** [9] - 6124:7, 6131:21, 6132:18, 6132:19, 6168:8, 6173:1, 6174:13
**juror** [4] - 6135:19, 6165:23, 6172:20, 6172:23
**jurors** [1] - 6142:9
**jury** [32] - 6124:10, 6132:3, 6132:6, 6133:9, 6134:3, 6134:6, 6136:14, 6137:5, 6137:7, 6141:3, 6141:6, 6141:20, 6141:25, 6142:19, 6143:18, 6144:3, 6145:9, 6146:1, 6146:25, 6147:2, 6155:20, 6157:9, 6159:20, 6160:9, 6160:22, 6164:20, 6162:4, 6162:6, 6163:19, 6165:1, 6171:13, 6171:20
**jury's** [1] - 6159:25

### K

**K,84** [1] - 6131:1
**K79** [7] - 6127:12, 6127:13, 6127:22, 6127:25, 6130:4, 6131:1, 6133:14
**K80** [9] - 6127:6, 6127:10, 6129:3, 6129:12, 6129:14, 6130:1, 6133:7
**K84** [5] - 6127:12, 6127:13, 6127:25, 6130:5, 6133:14
**K85** [6] - 6127:12, 6127:13, 6127:25, 6130:5, 6131:1, 6133:14
**K86** [1] - 6127:15
**K87** [1] - 6127:15
**Kaiser** [5] - 6154:16, 6154:21, 6154:25, 6169:20, 6169:22
**KELLY** [1] - 6124:12
**KENNER** [3] - 6124:5, 6124:5, 6154:19
**Kenner** [26] - 6124:17, 6125:2, 6125:14, 6127:7, 6136:5, 6136:17, 6137:10, 6137:13, 6139:20, 6140:7, 6141:6, 6141:11, 6141:14, 6142:10, 6142:20, 6143:25, 6152:3, 6153:5, 6158:17, 6159:25, 6160:1, 6162:22, 6170:22, 6173:14
**Kenner's** [4] - 6136:10, 6138:19, 6139:15, 6169:11
**kind** [1] - 6148:9
**knowledge** [6] - 6135:9,

6135:17, 6136:6, 6137:1, 6150:19, 6150:23
**known** [2] - 6135:8, 6142:11
**KOMATIREDDY** [16] - 6124:15, 6125:6, 6151:14, 6153:18, 6154:5, 6155:3, 6155:21, 6156:10, 6156:18, 6156:25, 6157:3, 6157:18, 6158:10, 6160:8, 6162:15, 6163:10
**Komatireddy** [1] - 6125:6
**Kristin** [1] - 6153:9

### L

**lack** [3] - 6135:16, 6136:25, 6150:18
**lacked** [1] - 6136:5
**language** [1] - 6138:9
**LaRusso** [41] - 6124:18, 6125:9, 6126:8, 6129:8, 6129:12, 6129:17, 6130:16, 6131:18, 6138:7, 6138:12, 6142:3, 6146:5, 6147:23, 6151:18, 6159:8, 6159:12, 6160:6, 6162:19, 6163:15, 6163:23, 6164:16, 6164:20, 6165:5, 6166:2, 6166:8, 6167:11, 6167:16, 6168:1, 6169:8, 6168:25, 6170:10, 6170:17, 6171:2, 6171:10, 6171:15, 6171:23, 6171:24, 6173:8, 6174:10
**LaRusso's** [2] - 6135:1, 6136:13
**last** [6] - 6156:3, 6162:10, 6166:8, 6170:4, 6170:7, 6174:4
**lastly** [1] - 6128:22
**late** [10] - 6167:17, 6167:21, 6167:24, 6168:14, 6168:15, 6168:16, 6168:17, 6168:18, 6172:11, 6174:6
**latest** [2] - 6126:2, 6159:10
**Law** [2] - 6147:11, 6149:2
**law** [6] - 6138:11, 6145:24, 6146:2, 6149:10, 6162:5, 6163:7
**lawyer** [1] - 6147:13
**lawyers** [1] - 6125:21
**lays** [1] - 6143:8
**lead** [1] - 6141:2
**leads** [1] - 6156:6
**least** [6] - 6135:1, 6135:24, 6145:22, 6155:6, 6164:19, 6172:14
**leave** [1] - 6172:20
**leaves** [3] - 6134:6, 6162:4, 6166:1
**leaving** [3] - 6132:10,

6167:2, 6171:13
**leaving..** [1] - 6173:18
**led** [1] - 6160:18
**Led** [8] - 6151:20, 6154:20, 6154:23, 6156:13, 6169:9, 6169:10, 6173:20, 6173:22
**left** [3] - 6125:15, 6171:16, 6172:18
**legal** [3] - 6142:17, 6148:11, 6149:11
**length** [2] - 6153:6, 6153:7
**lengthy** [3] - 6169:10, 6169:11, 6169:12
**Lexis** [2] - 6149:9, 6149:19
**liability** [5] - 6141:12, 6141:18, 6141:19, 6143:5, 6148:17
**liable** [1] - 6142:14
**lie** [1] - 6146:18
**light** [1] - 6169:3
**line** [5] - 6144:21, 6152:6, 6156:2, 6156:4, 6156:12
**lines** [1] - 6140:8
**list** [2] - 6161:3, 6164:10
**listen** [2] - 6161:5, 6161:24
**litigation** [3] - 6149:15, 6150:9
**LLC** [3] - 6125:24, 6126:9, 6149:8
**loan** [3] - 6128:22, 6154:23
**located** [3] - 6128:12, 6128:17, 6128:25
**look** [5] - 6134:16, 6142:7, 6163:4, 6164:12, 6173:17
**looked** [2] - 6129:9, 6130:17
**looking** [6] - 6131:7, 6133:16, 6154:9, 6166:11, 6166:16, 6166:17
**looks** [1] - 6166:11
**loop** [1] - 6156:11
**lunch** [1] - 6151:3

### M

**Magazine** [2] - 6151:10, 6160:15
**mail** [7] - 6128:23, 6130:2, 6162:21, 6164:6, 6166:8, 6170:21, 6170:25
**mails** [15] - 6126:3, 6130:9, 6132:17, 6133:12, 6151:20, 6159:13, 6160:18, 6162:23, 6163:1, 6163:15, 6163:17, 6164:9, 6164:11, 6165:4, 6171:3
**major** [1] - 6142:15
**Manfredi** [1] - 6153:7
**marked** [5] - 6125:20, 6127:20, 6127:23, 6130:2,

**6**

6131:2, 6133:8
**Marshals** [1] - 6173:14
**material** [3] - 6130:24, 6133:19, 6155:19
**matter** [5] - 6140:12, 6147:19, 6148:16, 6148:18, 6155:9
**matters** [3] - 6137:17, 6149:15, 6150:9
**maximum** [4] - 6146:14, 6146:17, 6146:18
**mean** [3] - 6141:18, 6150:16, 6152:13
**meanwhile** [1] - 6139:13
**mechanical** [1] - 6124:24
**member** [1] - 6126:19
**members** [1] - 6132:5
**memo** [1] - 6170:18
**memory** [1] - 6153:5
**mention** [1] - 6165:7
**mentioned** [2] - 6133:19, 6139:8
**message** [1] - 6140:12
**messages** [5] - 6126:1, 6128:15, 6128:23, 6130:4, 6133:11
**met** [5] - 6135:24, 6137:3, 6141:21, 6149:5, 6150:11
**Michael** [2] - 6153:8, 6156:12
**Michele** [4] - 6151:8, 6162:6, 6173:25, 6174:3
**might** [1] - 6127:16
**mind** [4] - 6125:21, 6138:21, 6142:18, 6172:1
**minimum** [1] - 6140:17
**minute** [3] - 6151:21, 6160:12, 6162:16
**minutes** [1] - 6152:25
**misappropriation** [1] - 6139:16
**MISKIEWICZ** [35] - 6124:14, 6125:4, 6126:10, 6126:13, 6126:16, 6128:6, 6128:11, 6128:14, 6130:23, 6131:11, 6131:14, 6134:9, 6134:11, 6134:17, 6151:25, 6152:5, 6152:21, 6153:8, 6163:22, 6164:8, 6165:10, 6165:16, 6165:19, 6165:25, 6169:1, 6169:22, 6170:1, 6170:8, 6170:13, 6170:21, 6171:5, 6171:14, 6171:25, 6173:7, 6174:9
**Miskiewicz** [2] - 6125:4, 6162:8
**miss** [3] - 6128:3, 6133:24, 6161:20
**misspoke** [3] - 6127:18, 6129:11, 6131:17
**mistake** [1] - 6129:14

**misused** [1] - 6137:19
**mix** [1] - 6140:12
**moment** [5] - 6133:7, 6134:4, 6151:22, 6156:6, 6156:12
**Monday** [2] - 6165:24, 6167:2
**money** [17] - 6136:23, 6137:25, 6138:1, 6139:14, 6139:19, 6139:21, 6139:25, 6140:5, 6141:7, 6149:12, 6154:15, 6155:25, 6156:6, 6156:9, 6156:13, 6171:1
**Money** [2] - 6151:10, 6160:15
**monies** [1] - 6150:8
**month** [5] - 6162:12, 6172:24, 6172:25, 6173:3
**month's** [1] - 6154:25
**monumental** [1] - 6151:23
**moot** [1] - 6135:2
**mooted** [1] - 6147:22
**morning** [9] - 6125:20, 6132:5, 6158:5, 6159:14, 6160:13, 6160:23, 6161:4, 6161:18, 6162:2, 6162:11, 6167:24, 6169:25, 6171:21, 6172:8, 6173:24
**most** [4] - 6135:12, 6139:5, 6153:25, 6154:11
**movement** [1] - 6136:23
**MR** [124] - 6125:4, 6125:9, 6125:11, 6125:14, 6126:7, 6126:8, 6126:10, 6126:13, 6126:16, 6127:2, 6127:5, 6127:21, 6128:4, 6128:6, 6128:8, 6128:11, 6128:14, 6129:5, 6129:6, 6129:8, 6129:11, 6129:12, 6129:14, 6129:17, 6130:11, 6130:14, 6130:16, 6130:23, 6131:6, 6131:11, 6131:14, 6131:18, 6131:24, 6134:9, 6134:11, 6134:14, 6134:17, 6138:12, 6142:3, 6151:12, 6151:17, 6151:18, 6151:25, 6152:5, 6152:14, 6152:21, 6152:22, 6153:1, 6153:8, 6154:7, 6154:17, 6155:5, 6155:16, 6156:16, 6156:19, 6156:21, 6157:14, 6157:17, 6157:20, 6158:8, 6158:17, 6159:7, 6159:8, 6159:12, 6159:19, 6159:24, 6160:6, 6160:7, 6162:19, 6163:15, 6163:22, 6163:23, 6164:1, 6164:8, 6164:14, 6164:16, 6164:20, 6165:3, 6165:5, 6165:10, 6165:12, 6165:16, 6165:19, 6165:20, 6165:22, 6165:25, 6166:2, 6166:8, 6167:4, 6167:11, 6167:16, 6167:19,

6168:1, 6168:9, 6168:19, 6168:24, 6168:25, 6169:1, 6169:8, 6169:18, 6169:21, 6169:22, 6170:1, 6170:8, 6170:10, 6170:13, 6170:17, 6170:21, 6171:2, 6171:5, 6171:7, 6171:10, 6171:14, 6171:15, 6171:18, 6171:22, 6171:24, 6171:25, 6173:7, 6173:8, 6173:9, 6174:9, 6174:10, 6174:11
**MS** [5] - 6125:6, 6151:14, 6153:18, 6154:5, 6155:3, 6155:21, 6156:10, 6156:18, 6156:25, 6157:3, 6157:18, 6158:10, 6160:8, 6162:15, 6163:10
**multi** [1] - 6147:6
**multi-object** [1] - 6147:6
**multiple** [1] - 6146:10
**must** [3] - 6127:20, 6127:21, 6149:22
**mystified** [1] - 6127:9

**N**

**nature** [2] - 6127:17, 6150:15
**necessarily** [1] - 6138:20
**necessary** [1] - 6139:3
**need** [10] - 6125:22, 6130:11, 6132:13, 6150:2, 6168:2, 6169:2, 6169:13, 6170:4, 6173:20, 6173:21
**Neptune** [1] - 6128:21
**new** [1] - 6169:4
**NEW** [1] - 6124:1
**New** [5] - 6124:14, 6124:22, 6149:3, 6149:10, 6149:19
**next** [3] - 6142:24, 6160:17, 6161:15
**night** [5] - 6162:3, 6168:14, 6168:18, 6172:12, 6173:10
**Ninth** [1] - 6148:13
**none** [1] - 6171:14
**normally** [1] - 6157:10
**note** [20] - 6125:23, 6126:2, 6127:18, 6127:23, 6132:16, 6133:23, 6145:3, 6158:19, 6159:10, 6159:12, 6160:25, 6161:15, 6162:10, 6163:8, 6165:18, 6171:2, 6172:3, 6173:16, 6173:19, 6174:4
**noted** [2] - 6143:14, 6149:16, 6150:22
**notes** [8] - 6125:19, 6127:17, 6129:19, 6132:8, 6132:20, 6134:2, 6163:21, 6163:24
**nothing** [6] - 6132:23, 6136:14, 6164:18, 6164:21,

6164:23, 6173:24
**notwithstanding** [1] - 6145:5
**November** [1] - 6154:24
**Number** [2] - 6128:24, 6172:23
**number** [8] - 6130:8, 6133:22, 6133:25, 6151:13, 6153:20, 6158:3, 6165:23, 6172:20
**numbered** [2] - 6128:3, 6130:1
**numbers** [9] - 6127:4, 6128:1, 6130:6, 6130:20, 6131:2, 6134:1, 6153:23, 6157:19, 6158:11
**numerous** [2] - 6136:8, 6148:25
**NY** [1] - 6124:4

**O**

**object** [3] - 6147:1, 6147:6, 6147:15
**objection** [18] - 6135:4, 6140:22, 6141:23, 6148:1, 6150:1, 6151:18, 6163:22, 6164:11, 6164:15, 6165:3, 6165:10, 6165:12, 6171:5, 6171:12, 6174:1, 6174:3, 6174:8, 6174:9
**objective** [3] - 6145:20, 6146:15, 6150:3
**objectives** [4] - 6145:21, 6145:24, 6145:25, 6146:10
**objects** [1] - 6146:24
**obligation** [1] - 6138:24
**obviously** [11] - 6131:8, 6136:1, 6139:20, 6146:6, 6154:1, 6158:6, 6159:9, 6165:14, 6167:13, 6172:15, 6173:23
**occasion** [1] - 6152:4
**occasions** [1] - 6136:3
**occur** [1] - 6154:8
**October** [3] - 6154:20, 6155:12, 6156:1
**OF** [3] - 6124:1, 6124:3, 6124:9
**offer** [3] - 6155:17, 6155:21, 6157:16
**offered** [1] - 6157:16
**OLIVERAS** [5] - 6124:18, 6125:11, 6128:8, 6129:5, 6171:18
**Oliveras** [2] - 6125:11, 6164:17
**One** [1] - 6124:13
**one** [30] - 6126:3, 6127:22, 6129:1, 6129:12, 6131:14, 6132:9, 6136:19, 6136:22,

8

6140:25, 6141:10, 6141:16, 6143:9, 6143:18, 6144:13, 6145:23, 6145:25, 6146:10, 6146:15, 6152:4, 6152:10, 6161:16, 6164:8, 6165:8, 6166:23, 6167:23, 6168:9, 6169:12, 6170:11, 6173:1

**ones** [7] - 6133:10, 6140:21, 6160:3, 6160:4, 6160:5, 6162:9, 6164:6

**ongoing** [1] - 6137:17

**open** [1] - 6158:23

**operating** [10] - 6125:23, 6126:15, 6126:21, 6126:25, 6129:20, 6129:22, 6132:11, 6132:15, 6132:22, 6132:25

**opportunity** [1] - 6134:15

**option** [4] - 6152:10, 6167:13, 6168:19, 6168:21

**order** [3] - 6159:4, 6161:12, 6163:18

**otherwise** [2] - 6161:11, 6161:21

**outside** [1] - 6161:25

**overheard** [1] - 6168:12

**own** [4] - 6137:20, 6139:6, 6142:11, 6142:21

**P**

**page** [1] - 6152:6

**pages** [1] - 6152:25

**paperwork** [1] - 6172:24

**parcel** [1] - 6154:20

**part** [7] - 6142:22, 6155:5, 6156:1, 6166:20, 6166:22, 6168:11, 6171:4

**participate** [1] - 6141:17

**particular** [12] - 6130:1, 6137:13, 6138:18, 6139:10, 6140:6, 6141:17, 6144:16, 6145:5, 6145:10, 6145:20, 6146:15

**particularly** [1] - 6173:5

**Partners** [6] - 6125:24, 6126:19, 6129:20, 6132:11, 6132:15, 6132:21

**party** [1] - 6149:21

**passed** [1] - 6146:5

**patent** [1] - 6128:18

**pause** [1] - 6166:7

**Pause** [3] - 6129:2, 6154:13, 6167:1

**payment** [2] - 6156:6, 6156:13

**payments** [2] - 6156:1, 6156:4

**Peca** [4] - 6153:8, 6153:9, 6156:12, 6169:19

**Pennsylvania** [1] - 6147:12

**people** [3] - 6140:3, 6141:7,

6168:7

**percent** [1] - 6126:19

**perhaps** [2] - 6127:16, 6130:8

**permissible** [1] - 6147:25

**permit** [1] - 6144:25

**person** [5] - 6136:7, 6136:20, 6136:22, 6138:16, 6139:18

**person's** [1] - 6139:21

**personal** [2] - 6139:15, 6141:9

**perspective** [1] - 6152:15

**pertains** [1] - 6153:19

**Petrellese** [1] - 6156:10

**ph** [1] - 6147:18

**Phil** [1] - 6169:11

**PHILIP** [1] - 6124:5

**PHILLIP** [1] - 6124:5

**Picozzi** [1] - 6124:20

**Pierrepont** [1] - 6124:13

**pile** [3] - 6170:4, 6170:7, 6171:9

**Pinkerton** [13] - 6140:23, 6140:24, 6141:12, 6141:19, 6142:15, 6142:19, 6143:4, 6143:5, 6143:8, 6143:13, 6144:1, 6144:2

**pitching** [2] - 6137:11, 6139:11

**place** [4] - 6135:2, 6143:10, 6143:12, 6144:5

**plan** [3] - 6161:19, 6161:21, 6172:6

**planning** [1] - 6166:2

**plans** [3] - 6165:24, 6168:3, 6168:5

**player** [1] - 6138:22

**players** [2] - 6139:10, 6163:2

**Plaza** [2] - 6124:13, 6124:21

**pleased** [1] - 6167:19

**point** [6] - 6127:22, 6138:25, 6141:7, 6172:14, 6172:21, 6173:4

**pointed** [1] - 6147:3

**Ponzi** [1] - 6156:5

**portions** [7] - 6136:3, 6139:10, 6153:9, 6158:3, 6161:1, 6161:5, 6161:9

**position** [3] - 6136:10, 6140:2, 6171:3

**positions** [1] - 6135:1

**possibility** [1] - 6142:7

**possible** [1] - 6172:2

**possibly** [1] - 6149:16

**potentially** [2] - 6140:16, 6153:13

**predicate** [7] - 6135:18, 6135:23, 6138:3, 6139:7,

6141:21, 6145:8, 6145:10

**preference** [2] - 6145:4, 6158:2

**prepare** [1] - 6172:19

**prepared** [1] - 6144:7

**present** [2] - 6151:6, 6173:15

**pretty** [1] - 6152:11

**previous** [1] - 6154:25

**previously** [2] - 6127:11, 6138:7

**primarily** [1] - 6142:6

**privilege** [4] - 6147:23, 6148:8, 6148:10, 6150:17

**privileged** [5] - 6148:4, 6148:23, 6149:7, 6149:13, 6149:16

**Privitello** [2] - 6136:19, 6141:16

**probability** [4] - 6135:21, 6137:9, 6137:18, 6139:24

**probable** [2] - 6149:22, 6150:5

**problem** [3] - 6163:21, 6164:2, 6173:1

**Proceedings** [1] - 6124:24

**process** [3] - 6145:23, 6147:4, 6167:5

**produced** [1] - 6124:25

**progress** [3] - 6152:15, 6152:18, 6169:6

**promulgated** [1] - 6144:23

**proof** [2] - 6155:17, 6155:22

**proper** [1] - 6135:11

**properly** [2] - 6143:11, 6143:18

**Property** [1] - 6149:9

**prosecutor** [2] - 6154:8, 6160:4

**prove** [1] - 6149:22

**proven** [1] - 6146:1

**provide** [1] - 6133:15

**provided** [6] - 6127:11, 6131:4, 6134:1, 6155:6, 6155:10, 6172:24

**providing** [5] - 6126:24, 6129:23, 6130:3, 6130:9, 6144:18

**public** [1] - 6149:15

**pull** [2] - 6155:8, 6159:11

**pulled** [1] - 6171:17

**punishment** [2] - 6146:11, 6146:13

**purchase** [1] - 6128:21

**purchases** [1] - 6139:6

**purpose** [1] - 6137:12

**purposes** [6] - 6139:15, 6142:5, 6146:11, 6146:12, 6146:24, 6147:4

**push** [1] - 6168:1

**put** [8] - 6151:22, 6154:3, 6159:22, 6160:21, 6161:17, 6171:20, 6173:3, 6174:1

**puts** [1] - 6146:1

**putting** [1] - 6131:10

**R**

**raised** [1] - 6146:4

**Ranford** [11] - 6159:13, 6162:21, 6162:23, 6163:2, 6164:6, 6164:10, 6166:9, 6166:12, 6166:17, 6166:24, 6170:22

**Ranford's** [1] - 6170:25

**Ranford/TC** [1] - 6163:17

**rather** [1] - 6144:24

**rational** [2] - 6135:19, 6137:22

**reach** [1] - 6135:19

**reached** [1] - 6159:19

**read** [11] - 6125:22, 6152:20, 6153:22, 6157:1, 6157:18, 6159:4, 6161:12, 6161:24, 6162:25, 6170:11, 6173:20

**readback** [3] - 6132:14, 6152:25, 6169:5

**readbacks** [2] - 6152:24, 6172:9

**reading** [1] - 6161:6

**ready** [1] - 6162:11

**real** [2] - 6143:23, 6144:3

**really** [7] - 6130:25, 6139:2, 6140:17, 6144:5, 6148:20, 6169:5, 6169:6

**reason** [5] - 6132:21, 6135:25, 6142:5, 6155:24, 6166:21

**reasonable** [3] - 6135:20, 6137:6, 6150:2

**reasons** [3] - 6144:8, 6145:23, 6148:1

**recalled** [1] - 6173:11

**received** [10] - 6125:17, 6125:19, 6125:23, 6126:2, 6129:13, 6130:6, 6130:18, 6131:3, 6154:21, 6162:21

**recently** [1] - 6135:12

**recess** [1] - 6151:4

**recognized** [1] - 6145:3

**recollection** [2] - 6130:17, 6147:22

**record** [16] - 6130:17, 6131:20, 6132:24, 6134:21, 6135:3, 6135:5, 6140:13, 6153:23, 6154:3, 6154:15, 6155:23, 6158:10, 6159:24, 6163:10, 6173:4, 6174:1

**recorded** [1] - 6124:24

**recording** [1] - 6158:11

**recordings** [9] - 6157:12, 6158:3, 6158:4, 6159:6, 6161:1, 6161:3, 6161:5, 6172:9, 6173:21
**records** [6] - 6149:1, 6149:3, 6155:7, 6159:22, 6166:12, 6166:19
**redundant** [1] - 6153:22
**reference** [1] - 6130:23
**referenced** [1] - 6170:24
**referring** [2] - 6127:14, 6127:15
**reflected** [1] - 6149:4
**refresh** [1] - 6130:16
**regard** [2] - 6139:8, 6143:15
**regarding** [12] - 6139:12, 6142:13, 6149:14, 6150:18, 6151:20, 6152:16, 6155:13, 6159:2, 6160:18, 6161:24, 6163:16, 6166:12
**regards** [4] - 6138:13, 6138:14, 6142:3, 6142:5
**reiterated** [1] - 6135:14
**rejected** [1] - 6147:16
**relate** [5] - 6140:15, 6142:25, 6157:12, 6158:4, 6160:20
**related** [7] - 6129:24, 6133:4, 6136:18, 6137:14, 6140:15, 6150:10, 6166:24
**relates** [8] - 6127:12, 6131:25, 6135:9, 6141:5, 6147:20, 6159:25, 6161:6, 6165:3
**relating** [3] - 6147:23, 6150:8, 6161:2
**relationship** [6] - 6137:16, 6162:24, 6163:17, 6164:7, 6171:3, 6171:4
**relative** [1] - 6166:17
**release** [1] - 6150:8
**relevant** [2] - 6155:19, 6155:24
**rely** [1] - 6141:24
**remainder** [1] - 6170:15
**remaining** [2] - 6154:1, 6158:12
**remember** [5] - 6129:9, 6138:13, 6142:4, 6172:25, 6173:5
**remind** [1] - 6127:10
**remove** [2] - 6134:17, 6134:19
**removed** [1] - 6134:22
**rendered** [2] - 6146:25, 6167:12
**rendering** [1] - 6148:11
**repays** [1] - 6154:23
**repeat** [1] - 6144:19
**Reporter** [1] - 6124:20

**representation** [1] - 6139:17
**representations** [3] - 6136:18, 6137:24, 6138:19
**represented** [1] - 6140:6
**request** [17] - 6127:16, 6128:5, 6129:25, 6131:7, 6139:2, 6142:6, 6143:1, 6144:6, 6144:7, 6152:11, 6155:19, 6160:1, 6161:1, 6161:14, 6163:16, 6166:20, 6166:23
**requested** [5] - 6133:14, 6135:11, 6160:17, 6163:11, 6170:14
**requesting** [1] - 6160:14
**requests** [1] - 6161:15
**required** [5] - 6135:17, 6136:6, 6137:1, 6144:21, 6146:2
**requirement** [1] - 6137:3
**requirements** [4] - 6135:23, 6141:20, 6143:9
**requires** [1] - 6145:25
**research** [2] - 6135:6, 6144:8
**respect** [16] - 6126:23, 6129:25, 6132:25, 6133:21, 6136:2, 6136:9, 6136:12, 6136:15, 6136:24, 6137:25, 6138:4, 6140:23, 6149:14, 6150:6, 6150:11, 6152:10
**respond** [3] - 6132:7, 6132:20, 6163:20
**responds** [1] - 6134:2
**response** [4] - 6129:18, 6133:1, 6143:7, 6160:23
**responsibility** [1] - 6142:22
**responsive** [3] - 6163:16, 6164:6, 6174:4
**rest** [1] - 6157:18
**result** [3] - 6142:21, 6146:14, 6148:24
**return** [1] - 6134:3
**returned** [1] - 6147:15
**reveal** [2] - 6148:15, 6149:6
**RICHARD** [1] - 6124:16
**Richards** [5] - 6150:7, 6150:12, 6150:21, 6150:22, 6150:23
**Richards'** [2] - 6125:22, 6132:14, 6147:24, 6149:13
**Rick** [1] - 6125:14
**RICO** [2] - 6145:8, 6145:11
**Rienzi** [1] - 6147:11
**ROBERT** [1] - 6124:18
**Robert** [1] - 6125:9
**Ron** [3] - 6125:22, 6132:14, 6147:23
**room** [7] - 6133:9, 6134:3, 6160:22, 6160:24, 6162:6,

6171:13, 6171:20
**Rule** [1] - 6155:6
**rule** [1] - 6167:9
**ruled** [1] - 6147:24
**rules** [1] - 6144:22
**ruling** [5] - 6140:22, 6142:24, 6144:5, 6144:6, 6147:20
**rulings** [1] - 6134:25

## S

**safe** [1] - 6162:3
**Sag** [16] - 6152:2, 6152:16, 6153:12, 6155:24, 6157:12, 6158:4, 6158:21, 6158:25, 6159:2, 6160:20, 6161:2, 6161:8, 6162:6, 6169:12, 6172:7, 6173:20
**sales** [1] - 6142:8
**Saritha** [1] - 6125:6
**SARITHA** [1] - 6124:15
**Saturday** [3] - 6168:8, 6168:22, 6172:13
**saw** [2] - 6139:7, 6140:18
**schedule** [1] - 6174:6
**scheduling** [1] - 6173:17
**scheme** [2] - 6150:1, 6156:5
**schemes** [2] - 6136:1, 6136:3
**Schwab** [1] - 6166:13
**seated** [4] - 6132:4, 6151:5, 6160:10, 6173:12
**Second** [14] - 6135:12, 6135:14, 6138:8, 6138:11, 6144:9, 6144:11, 6144:18, 6148:1, 6148:5, 6148:12, 6149:10, 6149:20, 6150:13
**second** [3] - 6129:1, 6137:3, 6148:23
**security** [1] - 6128:18
**see** [4] - 6153:15, 6155:12, 6157:21, 6165:8
**seeing** [1] - 6139:6
**seeking** [1] - 6149:21
**seem** [1] - 6146:8
**send** [2] - 6132:21, 6132:24, 6133:5, 6133:6, 6133:23, 6134:4, 6151:11, 6153:23, 6157:10, 6157:13, 6160:20, 6161:4
**sending** [3] - 6133:2, 6133:10, 6134:7
**sent** [1] - 6133:7
**sentence** [1] - 6146:18
**sentencing** [5] - 6146:6, 6146:8, 6146:12, 6146:20, 6146:24
**separately** [1] - 6153:21

**September** [1] - 6149:20
**sequentially** [1] - 6127:23
**series** [1] - 6128:23
**set** [5] - 6135:12, 6138:16, 6149:18, 6150:7, 6153:13
**Settlement** [5] - 6136:9, 6136:11, 6137:12, 6170:23, 6171:1
**several** [1] - 6136:1
**sheet** [7] - 6127:7, 6127:11, 6129:7, 6129:10, 6142:25, 6143:5, 6146:3
**shield** [1] - 6141:12
**Shimon** [3] - 6153:8, 6169:9
**short** [1] - 6169:16
**show** [3] - 6156:5, 6163:5, 6165:20
**showed** [2] - 6163:15, 6173:19
**showing** [4] - 6154:15, 6156:9, 6163:17, 6166:13
**sidebars** [1] - 6152:6
**similar** [6] - 6136:19, 6137:21, 6140:23, 6143:22, 6148:25, 6149:1
**similarly** [2] - 6136:12, 6147:3
**simply** [2] - 6127:16, 6149:12
**sit** [5] - 6167:14, 6167:20, 6167:21, 6167:22, 6172:11
**sitting** [1] - 6166:2
**situation** [6] - 6143:22, 6144:16, 6145:13, 6146:22, 6172:14
**situations** [1] - 6137:8
**six** [2] - 6163:1, 6165:6
**Sixth** [1] - 6147:2
**sleeve** [1] - 6171:17
**smaller** [2] - 6153:9, 6169:13
**so-called** [1] - 6156:4
**solely** [1] - 6136:16
**solid** [1] - 6138:10
**someone** [1] - 6127:23
**sound** [1] - 6144:15
**source** [1] - 6156:9
**Southern** [1] - 6149:19
**special** [20] - 6142:4, 6142:11, 6142:25, 6143:5, 6143:15, 6143:19, 6144:9, 6144:12, 6144:16, 6144:20, 6144:25, 6145:4, 6145:7, 6145:9, 6147:14, 6148:2, 6148:7, 6148:13, 6148:14, 6148:19
**Special** [5] - 6156:10
**specific** [5] - 6135:16, 6136:6, 6137:1, 6145:8, 6159:11

9

**specifically** [6] - 6127:14, 6128:14, 6146:8, 6166:15, 6170:14, 6170:24
**speed** [1] - 6167:8
**spell** [1] - 6140:14
**spheres** [1] - 6169:13
**spot** [1] - 6152:4
**spread** [4] - 6127:7, 6127:11, 6129:6, 6129:10
**stack** [2] - 6153:24, 6154:2
**stage** [1] - 6172:22
**Standard** [7] - 6125:24, 6126:14, 6126:23, 6129:22, 6129:24, 6132:25, 6133:4
**standard** [5] - 6126:9, 6135:12, 6146:12, 6149:17, 6150:11
**standpoint** [1] - 6139:23
**start** [3] - 6161:22, 6162:2, 6172:9
**starting** [2] - 6164:23, 6165:24
**statement** [10] - 6154:25, 6155:1, 6155:12, 6162:18, 6163:11, 6163:12, 6165:14, 6166:9, 6166:13, 6166:23
**statements** [3] - 6135:10, 6162:12, 6166:25
**STATES** [3] - 6124:1, 6124:3, 6124:10
**States** [10] - 6124:13, 6124:15, 6125:2, 6125:5, 6125:7, 6135:13, 6144:10, 6146:22, 6148:5, 6150:20
**statutory** [4] - 6146:13, 6146:14, 6146:17, 6146:18
**stay** [5] - 6167:17, 6167:25, 6168:14, 6168:17, 6174:6
**stenography** [1] - 6124:24
**Stephanie** [1] - 6124:20
**still** [5] - 6132:1, 6146:9, 6146:18, 6161:9, 6169:22
**stip** [1] - 6157:4
**stock** [3] - 6139:6, 6142:8
**stolen** [3] - 6155:25, 6156:6, 6156:13
**straightforward** [2] - 6145:17, 6145:18
**strategic** [1] - 6140:11
**string** [1] - 6148:11
**substantial** [1] - 6169:23
**substantive** [3] - 6141:2, 6141:5, 6144:1
**sufficiency** [1] - 6147:5
**sufficient** [3] - 6140:13, 6150:5, 6150:10
**sufficiently** [1] - 6135:24
**suggest** [2] - 6140:12, 6151:22
**summary** [1] - 6156:11
**summation** [3] - 6140:10,

6141:25, 6142:9
**Sunday** [4] - 6166:1, 6168:8, 6168:22, 6172:13
**supplement** [1] - 6134:25
**support** [1] - 6140:20
**Supreme** [3] - 6147:3, 6150:13, 6150:21
**surrounding** [1] - 6137:16
**suspect** [1] - 6169:16

# T

**tape** [3] - 6130:24, 6157:23, 6157:24
**task** [1] - 6151:23
**tax** [2] - 6128:23, 6148:17
**TC** [1] - 6164:6
**ten** [5] - 6152:1, 6153:5, 6158:24, 6159:2, 6161:10
**term** [1] - 6133:19
**terms** [4] - 6131:19, 6138:9, 6144:18, 6152:18
**Tesoriero** [1] - 6169:10
**testified** [9] - 6126:17, 6152:2, 6153:6, 6153:10, 6158:24, 6159:5, 6161:7, 6161:13
**testimony** [22] - 6125:22, 6132:14, 6147:24, 6147:25, 6149:13, 6151:19, 6151:22, 6152:13, 6152:16, 6152:17, 6153:12, 6155:13, 6158:22, 6159:1, 6160:17, 6161:6, 6161:8, 6161:9, 6169:3, 6169:11, 6169:14, 6173:20
**text** [4] - 6125:25, 6128:15, 6130:4, 6133:11
**TG2** [7] - 6126:10, 6126:11, 6126:13, 6126:14, 6126:20, 6128:17, 6129:25
**THE** [117] - 6124:9, 6125:1, 6125:8, 6125:13, 6125:16, 6125:19, 6126:9, 6126:12, 6126:14, 6126:21, 6127:3, 6127:20, 6127:25, 6128:9, 6128:13, 6129:1, 6129:3, 6129:16, 6129:18, 6130:13, 6130:15, 6130:19, 6131:1, 6131:9, 6131:13, 6131:17, 6131:22, 6132:2, 6132:4, 6134:7, 6134:10, 6134:12, 6134:19, 6139:9, 6142:24, 6151:5, 6151:6, 6151:13, 6151:15, 6151:19, 6152:3, 6152:9, 6152:19, 6152:24, 6153:3, 6153:11, 6154:3, 6154:12, 6154:14, 6155:2, 6155:9, 6156:9, 6156:15, 6156:17, 6156:20, 6156:23, 6157:2, 6157:10, 6157:15, 6157:22, 6158:15, 6158:19,

6159:9, 6159:16, 6159:20, 6160:3, 6160:10, 6162:5, 6162:17, 6163:5, 6163:14, 6163:19, 6163:24, 6164:3, 6164:12, 6164:18, 6164:21, 6165:1, 6165:7, 6165:13, 6165:17, 6165:21, 6165:23, 6166:1, 6166:4, 6166:6, 6166:22, 6167:2, 6167:9, 6167:13, 6167:17, 6167:21, 6167:23, 6168:6, 6168:10, 6168:12, 6168:13, 6168:15, 6168:17, 6168:21, 6169:2, 6169:17, 6169:19, 6169:24, 6170:6, 6170:11, 6170:20, 6171:6, 6171:8, 6171:11, 6171:19, 6171:23, 6172:1, 6172:6, 6173:10, 6173:12, 6174:12
**theft** [1] - 6156:2
**theoretically** [1] - 6153:11
**theory** [4] - 6135:25, 6140:12, 6141:13, 6143:5
**therefore** [1] - 6131:3
**thinking** [6] - 6131:4, 6140:8, 6140:18, 6140:23, 6153:5, 6172:15
**thinks** [1] - 6153:1
**Third** [1] - 6146:21
**three** [10] - 6125:19, 6132:11, 6145:21, 6145:24, 6157:8, 6158:2, 6158:17, 6161:1, 6161:5, 6172:9
**Thursday** [6] - 6167:18, 6167:22, 6167:25, 6168:18, 6172:12, 6174:13
**time-consuming** [1] - 6169:15
**Timothy** [2] - 6126:17, 6126:18
**title** [1] - 6149:12
**today** [3] - 6131:21, 6132:12, 6152:8
**together** [3] - 6139:12, 6159:15, 6161:17
**TOMMY** [2] - 6124:6, 6124:6
**tomorrow** [16] - 6158:5, 6160:13, 6161:4, 6161:18, 6161:19, 6161:22, 6162:2, 6162:11, 6168:14, 6169:5, 6169:25, 6172:8, 6172:18, 6173:24, 6174:6, 6174:7
**tonight** [2] - 6154:2, 6155:12, 6169:24
**took** [4] - 6127:18, 6151:8, 6152:25, 6154:23
**totality** [1] - 6156:7
**traced** [1] - 6156:13
**tracks** [2] - 6138:5, 6138:7
**traditional** [1] - 6145:6

**transaction** [6] - 6137:14, 6141:18, 6150:15, 6155:7, 6160:20, 6173:22
**TRANSCRIPT** [1] - 6124:9
**transcript** [2] - 6124:25, 6157:11
**transcripts** [1] - 6157:8
**transfer** [8] - 6126:16, 6126:17, 6126:24, 6129:24, 6133:3, 6141:10, 6162:18, 6165:15
**transferring** [3] - 6126:18, 6149:12
**transfers** [1] - 6142:14
**Travelers** [1] - 6149:8
**trial** [8] - 6133:20, 6139:11, 6146:16, 6146:23, 6147:2, 6161:13, 6173:11, 6174:13
**TRIAL** [1] - 6124:9
**trigger** [1] - 6135:24
**trip** [1] - 6162:3
**true** [2] - 6128:6, 6133:17
**try** [1] - 6170:2
**trying** [1] - 6152:6
**turned** [1] - 6138:17
**turning** [1] - 6139:3
**two** [11] - 6129:18, 6135:1, 6144:12, 6148:1, 6154:22, 6156:3, 6160:25, 6164:13, 6167:2, 6170:13, 6172:16
**types** [1] - 6148:20

# U

**U.S** [8] - 6134:21, 6147:10, 6148:23, 6149:2, 6149:9, 6149:18, 6149:19, 6150:20
**ultimately** [1] - 6147:22
**unanimous** [1] - 6145:22
**unanimously** [1] - 6145:25
**under** [8] - 6130:8, 6134:1, 6141:12, 6141:18, 6142:15, 6146:2, 6146:11, 6153:4
**UNITED** [3] - 6124:1, 6124:3, 6124:10
**United** [10] - 6124:13, 6124:15, 6125:1, 6125:4, 6125:7, 6135:13, 6144:10, 6146:22, 6148:5, 6150:20
**unless** [5] - 6159:5, 6161:11, 6161:19, 6163:4, 6174:1
**unrelated** [1] - 6150:9
**unusual** [1] - 6152:11
**up** [12] - 6140:4, 6142:16, 6143:15, 6146:3, 6146:9, 6148:20, 6150:7, 6155:8, 6156:13, 6164:18, 6166:21, 6167:7
**US** [2] - 6124:4, 6124:21

**uses** [3] - 6139:15, 6141:9

**V**

**vacation** [1] - 6165:23
**various** [7] - 6125:25, 6136:2, 6136:21, 6138:8, 6143:16, 6143:17, 6169:14
**Ventures** [8] - 6125:24, 6126:9, 6126:14, 6126:23, 6129:22, 6129:24, 6132:25, 6133:4
**verdict** [18] - 6142:4, 6142:11, 6142:25, 6143:5, 6143:15, 6143:19, 6144:9, 6144:16, 6145:10, 6146:3, 6146:19, 6146:25, 6147:7, 6147:14, 6147:16, 6167:12, 6168:2, 6172:16
**verdicts** [1] - 6144:12
**verified** [1] - 6173:2
**versus** [1] - 6146:15
**view** [3] - 6141:3, 6143:22, 6155:18
**Vince** [1] - 6169:10
**Vingelli** [1] - 6148:4
**violate** [1] - 6147:1
**vis** [2] - 6137:23
**vis-a-vis** [1] - 6137:23

**W**

**wait** [1] - 6162:1
**waiver** [1] - 6147:25
**walk** [3] - 6151:8, 6151:9, 6154:11
**walked** [1] - 6173:18
**wants** [1] - 6134:13
**weekend** [2] - 6168:3, 6168:6
**weeks** [2] - 6167:3, 6172:16
**Weissberg** [1] - 6149:2
**West** [2] - 6147:11, 6149:2
**Western** [1] - 6149:9
**whatsoever** [1] - 6171:14
**whole** [1] - 6153:13
**wire** [6] - 6135:7, 6141:10, 6141:18, 6145:16, 6162:18, 6165:15
**wires** [2] - 6156:3, 6156:7
**wish** [1] - 6172:12
**withdrawn** [1] - 6144:6
**withdrew** [2] - 6142:25, 6147:23
**witness** [3] - 6156:11, 6159:2, 6161:7
**witness'** [1] - 6130:17
**witnesses** [11] - 6137:5, 6152:1, 6153:5, 6153:13, 6158:24, 6159:3, 6161:11,

6161:13, 6169:7, 6169:16, 6172:7
**wondering** [2] - 6166:16, 6174:5
**works** [1] - 6168:22
**writing** [1] - 6163:7
**wrote** [2] - 6127:23, 6161:7

**Y**

**yesterday** [9] - 6127:6, 6129:9, 6129:13, 6129:19, 6131:20, 6131:21, 6132:9, 6133:8, 6152:25
**YORK** [1] - 6124:1
**York** [5] - 6124:14, 6124:22, 6149:3, 6149:10, 6149:19