SLR:LDM:MMO
F#: 2013R00948

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **AUG 21 2015** ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LONG ISLAND OFFICE

— — — — — — — — — — — — — — — — X

UNITED STATES OF AMERICA

    - against -

PHILIP A. KENNER, et al,

          Defendants.

POST-CONVICTION PROTECTIVE
ORDER _____

Criminal Docket No. 13-0607 (JFB)

— — — — — — — — — — — — — — — — X

        WHEREAS, the United States has made an <u>ex parte</u> application to this Court,

pursuant to Title 21, United States Code, Section 853(e)(1)(A), for a protective order to

preserve the availability of certain real property that is subject to forfeiture in the above-

captioned criminal action. Upon consideration of the United States' application, the affidavit

submitted in support thereof, the Superseding Indictment returned in this case, and the

record, including the defendants' convictions after a jury trial, the Court finds that there is

probable cause to enter a protective order to preserve said property based upon the following:

        1.      That on or about April 22, 2015, a federal grand jury for this district

returned a Superseding Indictment (the "Indictment") charging defendants Philip A. Kenner

("Kenner") and Tommy C. Constantine ("Constantine") (the "defendants") with federal

criminal violations, including conspiracy to commit wire fraud, in violation of Title 18,

United States Code, Section 1349; wire fraud, in violation of Title 18, United States Code,

Section 1343; and conspiracy to commit money laundering, in violation of Title 18, United

States Code, Section 1956(h).

2.      That the Indictment provided notice to the defendants of the United States' intention to seek forfeiture pursuant to (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property, real or personal, constituting or derived from proceeds traceable to Kenner and Constantine's violations of Title 18, United States Code, Sections 1343 and 1349, and (b) Title 18, United States Code, Section 982(a)(1) of any property, real or personal, involved in their violation of Title 18, United States Code, Section 1956(h).  The Indictment also provided for the forfeiture of substitute assets, pursuant to Title 21, United States Code, Section 853(p).

3.      That on July 9, 2015, the defendants were convicted by a jury verdict of conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering in violation of Title 18, United States Code, Sections 1349, 1343 and 1956, respectively.

4.      That on August 20, 2015, the United States filed a Bill of Particulars identifying Diamante Cabo San Lucas, Boulevard Diamante s/n, Los Cangrejos, Cabo San Lucas, B.C.S., Mexico 23473  (the "Subject Property"), as subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c), as property, real or personal, constituting or derived from proceeds traceable to the defendants' violations of Title 18, United States Code, Sections 1343 and 1349 and/or property, real or personal, involved in their violation of Title 18, United States Code, Section 1956(h).

5.      That the Subject Property is owned by KAJ Holdings, LLC ("KAJ Holdings"), Baja Ventures 2006, LLC ("Baja Ventures"), Diamante Properties, LLC

("Diamante Properties"), and CSL Properties 2006, LLC ("CSL Properties") (collectively, the "LLCs").

6.     That Kenner is the sole and managing member of Baja Ventures and is the managing member of CSL Properties.

7.     That Kenneth A. Jowdy ("Jowdy"), a business associate of Kenner, is the sole and managing member of KAJ Holdings and is the managing member of Diamante Properties.

8.     That Jowdy is also the manager of the Subject Property.

9.     That the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c), as property, real or personal, constituting or derived from proceeds traceable to Kenner and Constantine's violations of Title 18, United States Code, Sections 1343 and 1349 and/or property, real or personal, involved in their violation of Title 18, United States Code, Section 1956(h), as a result of the defendants' convictions of conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering.

10.     That there is reason to believe the Subject Property is at risk of being sold, transferred, assigned, pledged, distributed, encumbered, wasted, secreted, depreciated, damaged, or diminished in value by the actions of Kenner, Jowdy, and/or any other person with an interest in the Subject Property if a protective order is not entered.

11.     That any third party claims to the Subject Property may be properly brought and resolved in ancillary proceedings conducted by this Court, pursuant to Title 21, United States Code, Section 853(n) following the execution of a Preliminary Order of Forfeiture in accordance with the provisions of federal forfeiture law.

12.     That the Court has jurisdiction to enter this order pursuant to Title 21, United States Code, Section 853(l).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that, effective immediately, all persons, including, Kenner, Constantine, Jowdy, the LLCs, and their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and those persons, financial institutions, or entities who have any interest or control over the Subject Property, are hereby,

RESTRAINED, ENJOINED, AND PROHIBITED, without prior approval of this Court and upon notice to the United States and an opportunity for the United States to be heard, from attempting or completing any action that would affect the availability or value of said Subject Property, including but not limited to selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, or in any way diminishing the value of, all or any part of their interest, direct or indirect, in the Subject Property.

IT IS FURTHER ORDERED that in order to avoid dissipation and ensure the preservation of the Subject Property prior to the entry of a forfeiture order, Jowdy, or any other person charged with managing the Subject Property, is directed to: (a) provide a

monthly accounting of revenue and expenses associated with the management of the Subject

Property, which the United States, the Federal Bureau of Investigation (the "FBI"), or the

U.S. Marshal or his designee, shall have the right to inspect; (b) manage and maintain the

Subject Property in good physical and financial condition and pay all management and

maintenance costs for the Subject Property, including but not limited to, utility bills, repair

and maintenance bills, taxes, etc.; (c) maintain any insurance as required by law on the

Subject Property; and (d) produce any books or records associated with the maintenance and

operation of the Subject Property within ten (10) business days of any request made by the

United States.

IT IS FURTHER ORDERED that the FBI, or the U.S. Marshal or his

designee, shall promptly serve a copy of this Protective Order upon Kenner, Constantine,

Jowdy, the LLCs, and all other appropriate individuals and/or entities having an interest, or

prospective interest, in the Subject Property, and shall make a return thereon reflecting the

date and time of service.

THIS PROTECTIVE ORDER shall remain in full force and effect until further order of this Court.

Dated:   Central Islip, New York
         August 21, 2015

                                    S. Joseph F. Bianco
                                    HONORABLE JOSEPH F. BIANCO
                                    UNITED STATES DISTRICT JUDGE

---

United States v. PHILIP A. KENNER, et al, 13-CR-0607 (JFB)          Page 6
Post-Conviction Protective Order

SLR:LDM:MMO
F#: 2013R00948

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

PHILIP A. KENNER, et al,

              Defendants.

- - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 21 2015 ★

LONG ISLAND OFFICE

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
PROTECTIVE ORDER

Criminal Docket No. 13-0607 (JFB)

MATTHEW GALIOTO, being duly sworn, deposes and states as follows:

    1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since approximately November 1995. Since approximately October 1998, I have been assigned to a white collar crime squad on Long Island, New York. As a special agent on a white collar crime squad, my duties and responsibilities include conducting investigations of individuals and business entities that have allegedly violated federal criminal laws, including Title 18, United States Code, Sections 1343 (wire fraud), 1349 (wire fraud conspiracy) and 1956 (money laundering).

    2.      I am a Certified Public Accountant and, prior to my employment with the FBI, was employed as an auditor. In my capacity as a special agent, I have conducted numerous financial investigations including the tracing of proceeds of crimes, such as wire fraud and money laundering.

    3.      This affidavit is made in support of an application for a protective order

as to in the following real property: Diamante Cabo San Lucas, Boulevard Diamante s/n, Los Cangrejos, Cabo San Lucas, B.C.S., Mexico 23473 (the "Subject Property"). The proposed protective order would preserve the availability of the Subject Property for forfeiture by, among other restraining KAJ Holdings, LLC ("KAJ Holdings"), Baja Ventures 2006, LLC ("Baja Ventures"), Diamante Properties, LLC ("Diamante Properties"), and CSL Properties 2006, LLC ("CSL Properties") (collectively, the "LLCs") from selling, transferring, pledging, encumbering or otherwise alienating their interests in the Subject Property.

4. There is probable cause to believe that the Subject Property is subject to forfeiture pursuant to: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as property, real or personal, constituting or derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1349, and/or (b) Title 18, United States Code, Section 982(a)(1), as property, real or personal, involved in a violation of Title 18, United States Code, Section 1956(h).

5. The facts and information in this affidavit are based upon my personal knowledge, the observations of other law enforcement personnel involved in this investigation, and the review of bank and other financial records and trial testimony.[1]

## STATUTORY FRAMEWORK

6. Under Title 18, United States Code, Section 1343, it is unlawful to, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit or

---

[1] As this affidavit is submitted for the limited purpose of seeking a protective order as to the Subject Property, it is not intended to include each and every fact and matter observed by me or known to the government.

cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice.

      7.    Under Title 18, United States Code, Section 1349, any attempt or conspiracy to violate Title 18, United States Code, Section 1343, shall be subject to the same penalties as those prescribed for a violation of Title 18, United States Code, Section 1343, the commission of which was the object or attempt of the conspiracy.

      8.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1349 is subject to forfeiture to the United States.

      9.    Under Title 18, United States Code, Section 1956(h), any person who conspires to commit any offense defined in Section 1956 or Section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

      10.    Under Title 18, United States Code, Section 1956(a)(1)(B)(i), it is unlawful for any person to, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct or attempt to conduct such a financial activity which in fact involves the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

11.     Pursuant to Title 18, United States Code, Section 1961(1), as incorporated by Title 18, United States Code, Section 1956(c)(7)(A), the term "specified unlawful activity" includes wire fraud as defined under Title 18, United States Code, Section 1343.

12.     Pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in money laundering activity or attempted money laundering activity in violation of Title 18, United States Code, Section 1956, is subject to forfeiture to the United States.

13.     Pursuant to Title 18, United States Code, Section 982(b)(1) and Title 21, United States Code, Section 853(e)(1)(A), this Court is authorized to enter a protective order or injunction, require the execution of satisfactory performance bond, or take any other action to preserve the availability of property subject to forfeiture.

14.     As discussed below, the government's investigation has revealed that the Subject Property represents property traceable to proceeds of wire fraud, or a conspiracy to commit such an offense and/or represents property involved in a money laundering conspiracy and thus is subject to forfeiture to the United States.

## BACKGROUND

15.     The defendant Philip A. Kenner, also known as "Phillip A. Kenner" ("Kenner"), was a financial advisor whose clients included, among other individuals, current and former professional hockey players of the National Hockey League (hereinafter, the "player-clients"). Since approximately the mid-1990s, Kenner advised the player-clients on their financial affairs, managed their accounts at various financial institutions, and recommended various investments to them, including investments in real estate development projects and small, privately held companies. Kenner was a licensed financial advisor between approximately

July 1994 and November 2004. Between approximately August 2002 and 2007, Kenner held the position of Secretary at Eufora, LLC ("Eufora"), an Arizona-registered limited liability company that held itself out to be a seller of prepaid consumer debit cards.

16.     The defendant Tommy C. Constantine, also known as "Tommy C. Hormovitis" ("Constantine"), was a former professional race car driver and business partner of Kenner. Constantine was the founder and Chief Executive Officer of Eufora. In addition, Constantine operated and controlled Constantine Management Group, Ltd. ("CMG"), an Illinois Corporation, and Urban Expansion, LLC ("Urban Expansion"), a limited liability company with its principal place of business in Phoenix Arizona. Both CMG and Urban Expansion held themselves out to be engaged in the management and development of real property for both commercial and leisure purposes. (Kenner and Constantine are collectively referred to as the "Defendants.")

17.     On or about April 22, 2015, a federal grand jury empanelled in this district returned a Superseding Indictment charging the defendants with federal criminal violations including conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; wire fraud, in violation of Title 18, United States Code, Section 1343; and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). The Superseding Indictment contained a criminal forfeiture allegation to notify the Defendants that, upon their conviction, the government intended to seek forfeiture  pursuant to (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property, real or personal, constituting or derived from proceeds traceable to Kenner and Constantine's violations of Title 18, United States Code, Sections 1343 and 1349, and (b) Title 18, United States Code, Section 982(a)(1) of any property, real or personal, involved in their

6

violation of Title 18, United States Code, Section 1956(h). The Superseding Indictment also provided for the forfeiture of substitute assets, pursuant to Title 21, United States Code, Section 853(p).

18.     On or about July 9, 2015, a jury empanelled in this district convicted the Defendants of wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering.

19.     As established at trial, in or about and between August 2002 and April 2013, the Defendants devised, implemented, supervised and executed a scheme to fraudulently induce the player-clients and other individuals (collectively, the "Investors") to invest money by falsely stating that the funds would be used towards the purchase of, *inter alia*, real estate in Hawaii for the benefit of Investors. Kenner was the sole managing member of Little Isle IV, LLC and Ula Makikia, LLC, the two entities used by Kenner to invest and divert Investor funds. The Defendants intended and did in fact, improperly divert a substantial portion of the money designated for the Hawaii investments to bank accounts controlled by the Defendants and used for their personal benefit, for unrelated business ventures and to conceal their scheme to defraud. Kenner also opened lines of credit in the Investors' names, ostensibly to fund the Hawaii investments. In reality, Kenner also used these lines of credit for his personal benefit, for unrelated business ventures, to conceal the scheme to defraud, and to finance the purchase of the Subject Properties.

20.     In or about and between 2005 and 2006, as described below, Kenner diverted funds intended for the purchase of real property in Hawaii and used lines of credit in the player-clients' names to fund his, and his business associate Kenneth A. Jowdy's ("Jowdy"), personal interests in the Subject Property.

21.     In or around January 2005, Kenner and Jowdy entered into a contract to purchase the Subject Property. The total cost of the property was $65 million (USD), and Kenner and Jowdy were required to make a payment of approximately $7.5 million, which included the down payment of 10 percent and fees incurred due to a delay in closing. Kenner was tasked with raising the money for the payment.

22.     Kenner and Jowdy subsequently created Diamante Cabo San Lucas, LLC ("DCSL") to facilitate the purchase of the property. DCSL subsequently formed a Mexican subsidiary, Diamante Cabo San Lucas S. de R.L. de CV (the "DCSL Subsidiary") to acquire the rights in and develop the Subject Property. Jowdy serves as the managing member of the DCSL Subsidiary.

23.     DCSL is owned by four Delaware limited liability companies: KAJ Holdings, which owns 40 percent; Baja Ventures, which owns 39 percent; Diamante Properties, which owns 13 percent; and CSL Properties, which owns 8 percent.

## KAJ HOLDINGS

24.     Jowdy is the sole and managing member of KAJ Holdings. The operating agreement of DCSL shows that KAJ Holdings made a capital contribution of $2.5 million toward the purchase of the Subject Property. Bank records and loan statements show that a substantial portion of this contribution can be traced to Investor money that was intended to be used to purchase real property in Hawaii. Specifically, in or around December 2004, Kenner purchased real property in Hawaii called Honu'apo with Investor funds. Kenner financed the $3.5 million purchase through lines of credit he took out in the names of player-clients Glen Murray, Darrly Sydor, and Steve Rucchin. In or around July 2005, Kenner mortgaged Honu'apo to secure a $3 million loan from Centrum Financial (the "Centrum Loan"). According to the Use of Funds

8

Statement included in the Centrum Loan, the money was only to be used for the Hawaii investment. However, unbeknownst to the player-clients, on or about July 20, 2005, Kenner diverted $1.5 million from the Centrum Loan to Jowdy to cover part of KAJ Holding's capital contribution to DCSL. At trial, Kenner acknowledged that a portion of the Centrum Loan was used to purchase the Subject Property. *See* Trial Transcript dated June 23, 2015 at 4637: 9-19.

25.     Further, on or about May 4, 2005, Kenner withdrew $350,000 from the line of credit of player-client Owen Nolan. Bank records show that this money was transferred from Little Isle account number 1411012916 held at Northern Trust (the "Little Isle Account"), which held investor money for the Hawaii investments, to Atilio Colli Villarino ("Villarino"), the seller of the Subject Property. Upon information and belief, this money was credited to KAJ Holdings' contribution to DCSL.

## BAJA VENTURES

26.     Kenner is the sole owner and managing member of Baja Ventures. The operating agreement of DCSL shows that Baja Ventures made a capital contribution of $2.5 million to DCSL. Bank records show that from in or around May 2005 to September 2005, funds were moved from Investors' accounts to an account at Banamex (the "DCSL Subsidiary Account"), an account owned by the DCSL Subsidiary and used to make the payment on the Subject Property. Specifically, on or about June 7, 2005, $1.5 million was transferred from a Charles Schwab account owned by Investor Jere Lehtinen to the DCSL Subsidiary Account.

27.     On or about May 17, 2005, $350,000 was transferred from the Little Isle Account to Villarino. Wire transfer records show that this money was part of a deposit made by Investor Jozef Stumpel into the Little Isle Account on a prior occasion. That same day, $325,000 was transferred from Ula Makika account number 3981345276 held at Northern Trust

(the "Ula Maki ka Account") to Villarino. As with Little Isle Account, the Ula Makika Account
held Investor money for the Hawaii investments. Wire transfer records show that the $325,000
that was transferred had been deposited by Stumpel into the Ula Makika account on a prior
occasion. On or about May 18, 2005, $225,000 was transferred from the Ula Makika Account to
Villarino. Upon information and belief, approximately $400,000 of these funds were credited
towards Baja Venture's capital contribution to DCSL. Finally, on or about May 30, 2005, six
hundred thousand dollars was transferred from an account owned by Jozef Stumpel to the DCSL
Subsidiary Account.

## DIAMANTE PROPERTIES

28.     Jowdy is the managing member of Diamante Properties. Kenner is also a
member of Diamante Properties. The operating agreement for Diamante Properties lists its
members and their capital contributions to the company. According to the DCSL operating
agreement, Diamante Properties made a minimal capital contribution, which was funded by the
individual contributions of its members, including Jowdy and Kenner.

## CSL PROPERTIES

29.     Kenner acts as the managing member of CSL Properties while many of the
player-clients have ownership interests in the company. According to the DCSL operating
agreement, CSL Properties made a capital contribution of $2 million towards the purchase of the
Subject Property, which contribution was derived from investments by player-clients who were
aware that their investments would be used towards the purchase of the Subject Property.
However, despite the contribution of $2 million, CSL Properties, and thus the player-clients,
received a disproportionately small ownership interest of just eight percent of the Subject
Property.

## OTHER SOURCES OF FUNDING FROM INVESTORS

30. On or about August 23, 2005, Investor Ethel Delores Kaiser wired $300,000 to Kau Holding Company, LLC ("Kau Holding") at Northern Trust Bank for the purpose of investing in the Hawaii project. Kenner was the sole managing member of Kau Holding. On August 26, 2005, Kenner transferred $140,000 from Kau Holding to the Ula Makika Account. On the same day, Kenner sent $110,000 from the Ula Makika Account to the Baja Development Corp. Account and $25,000 to the DCSL Subsidiary Account.

31. On or about August 29, 2005, $500,000 was transferred from the Baja Development Corp. Account to Villarino. Records obtained during the investigation into the Defendants show that this money derived from a previous loan of approximately $750,000 from Glen Murray to Kenner and Jowdy. The money was originally lent to finance an investment connected to the Palms Resort and Casino in Las Vegas. When the Las Vegas investment fell through, Kenner, without Murray's knowledge or authorization, diverted $500,000 of the original loan amount to Baja Development Corp. to help finance the purchase of the Subject Property.

## SUBJECT PROPERTY

32. On or about March 10, 2006, DCSL closed on the Subject Property. In addition to the $7.5 million deposit, DCSL also secured a loan of up to $125 million from Lehman Brothers.

33. Upon information and belief, there is a strong likelihood that Jowdy may attempt to sell, transfer, pledge, or assign his interest in the Subject Property to a third party or parties. There are also grounds to believe that Jowdy is not currently fulfilling his fiduciary

11

duties as managing member of the Subject Property and is currently taking measures to waste, damage, depreciate, or generally diminish the value of the Subject Property.[2]

## CONCLUSION

34.     Based upon the investigation into the Defendants as well as investors' testimony and Kenner's testimony at trial, the Subject Property represents (a) property constituting or derived from proceeds traceable to the Defendants' violations of Title 18, United States Code, Sections 1343 and 1349, and/or (b) property involved in a money laundering conspiracy. As a result, there is probable cause to believe that the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461(c).

35.     Accordingly, pursuant to Title 18, United States Code, Section 982(b)(1) and Title 21, United States Code, Section 853(e)(1)(A), the government respectfully requests that the Court issue a protective order (a) immediately restraining, prohibiting, and enjoining any person, including Kenner, Constantine, Jowdy, the LLCs, and their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and those persons, financial institutions, or entities who have any interest or control over the Subject Property, from attempting or completing any action that would affect the availability or value of said property, including but not limited to selling, assigning, pledging, distributing, encumbering, wasting, secreting, or otherwise disposing of, their interest in the Subject Property, without providing notice to the United States and this Court and obtaining permission from this Court and (b) requiring the parties to provide a monthly accounting of revenue and expenses associated with the management of the Subject Property, manage and maintain the Subject Property in good physical and financial condition, maintain any insurance as required by law on the Subject

2   On or about August 13, 2015, during a conference call with members of CSL Properties, Jowdy indicated that he was actively negotiating the sale of his interest in the Subject Property.

12

Property, and produce any books or records associated with the maintenance and operation upon any request made by the United States.

36.     Because this Affidavit is submitted in connection with an ongoing investigation that would be jeopardized by premature disclosure of information, I request that this Affidavit and all related documents be filed under seal until further order of the Court, except that copies of the protective order may be served at the time they are executed, and that the government may provide copies of the order and this Affidavit to any foreign or domestic law enforcement or regulatory authorities for use in connection with the restraint of the Subject Property pursuant to international treaty or otherwise, and as required by its discovery obligations, including Rule 16 of the Federal Rules of Criminal Procedure.

MATTHEW GALIOTO
Special Agent
Federal Bureau of Investigation

SLR:LDM:MMO
F#: 2013R00948

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 21 2015   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -

PHILIP A. KENNER, et al,

        Defendants.

- - - - - - - - - - - - - - - -X

FILED UNDER SEAL

UNITED STATES' *EX PARTE*
APPLICATION FOR POST-CONVICTION
PROTECTIVE ORDER FOR
ASSETS SUBJECT TO
FORFEITURE

Criminal Docket No. 13-0607 (JFB)

The United States of America, by and through, the undersigned counsel, hereby seeks,

pursuant to Title 18, United States Code, Section 982(b)(1) and Title 21, United States Code,

Section 853(e)(1)(A), a protective order to preserve real property that is subject to

forfeiture, namely, Diamante Cabo San Lucas, Boulevard Diamante s/n, Los Cangrejos,

Cabo San Lucas, B.C.S., Mexico 23473 (the "Subject Property"). As set forth more fully

below, there is probable cause to believe that, in connection with the offenses of the

defendants' conviction in this action, defendant, Philip A. Kenner ("Kenner") and his

business associate, Kenneth Jowdy ("Jowdy"), diverted millions of dollars of investor funds

to purchase their interests in the Subject Property. As such, the Subject Property is subject to

forfeiture pursuant to (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c), as property, real or personal, constituting or derived

from proceeds traceable to the defendants' violations of Title 18, United States Code,

Sections 1343 and 1349 and/or (b) Title 18, United States Code, Section 982(a)(1), as

property, real or personal, involved in a violation of Title 18, United States Code, Section 1956(h).

The purpose of the requested order is to preserve the availability of assets that are subject to forfeiture by the Court. The United States has reason to believe that the Subject Property is at risk of being sold, transferred, assigned, pledged, distributed, encumbered, wasted, secreted, depreciated, damaged, or diminished in value by the actions of Kenner, Jowdy, and/or any other interested parties if a protective order is not issued. Accordingly, a proposed order is submitted herewith.

## PROCEDURAL BACKGROUND

On April 22, 2015, a federal grand jury sitting in this district returned a Superseding Indictment (the "Indictment") charging defendants Kenner and Tommy C. Constantine ("Constantine") with federal criminal violations, including conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; wire fraud, in violation of Title 18, United States Code, Section 1343; and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). *See* Docket No. 214.

In accordance with Rule 32.2(a) of the Federal Rules of Criminal Procedure, the Indictment included forfeiture allegations which provided notice of the United States' intent to seek forfeiture of all property subject to forfeiture with respect to each particular count in the Indictment. Regarding the wire fraud counts of the Indictment (Counts One through Eight), the forfeiture allegation notified the defendants that, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1349 was forfeitable. With respect to the

2

money laundering count of the Indictment (Count Nine), the forfeiture allegation notified the defendants that, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a violation of Title 18, United States Code, Section 1956(h) was forfeitable. The Indictment's forfeiture allegations also contained a provision allowing the government to seek forfeiture of substitute assets of the defendants pursuant to Title 21, United States Code, Section 853(p), in the event that forfeitable property could not be located as a result of the defendants' actions and upon the exercise of due diligence.

On July 9, 2015, the defendants Kenner and Constantine were convicted by a jury verdict of conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1349, 1343 and 1956, respectively. *See* Docket No. 321. The evidence at trial established that, as a result of their offenses, the defendants defrauded victims of approximately thirteen million dollars. Following the defendants' convictions, on August 20, 2015, the United States filed a Bill of Particulars identifying the Subject Property as subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c).

## THE SUBJECT PROPERTY

The Subject Property is owned by KAJ Holdings, LLC ("KAJ Holdings"), Baja Ventures 2006, LLC ("Baja Ventures"), Diamante Properties, LLC ("Diamante Properties"), and CSL Properties 2006, LLC ("CSL Properties") (collectively, the "LLCs"). Kenner is the sole and managing member of Baja Ventures and is the managing member of CSL Properties. *See* Affidavit of Special Agent Matthew Galioto (the "Affidavit") ¶¶ 26, 29. Kenner is also a member of Diamante Properties. *See id.* ¶ 28. Jowdy is the sole and managing member of KAJ Holdings and is the managing member of Diamante Properties. *See id.* ¶¶ 24 and 28.   Jowdy also serves as the manager of the Subject Property. *See id.* ¶ 22.

As set forth in the accompanying Affidavit of Matthew Galioto (the "Affidavit"), sworn to August 20, 2015, Kenner and Jowdy diverted money from accounts that held investor money for the Hawaii investments to the approximately $7.5 million payment used to purchase the Subject Property. Of the $7.5 million payment, $5 million can be traced to investor money Kenner and Jowdy diverted from the Hawaii accounts to fund their personal interests in the Subject Property.   Specifically, Kenner diverted $2.5 million of investor money from the Hawaii accounts to fund Jowdy's interest in KAJ Holdings. *See* Affidavit ¶ 24-25.  Kenner also diverted $2.5 million of investor money to fund his personal interest in Baja Ventures. *See id.* ¶ 26-27.  Moreover, as managing members of Diamante Properties (Jowdy), CSL Properties (Kenner), and manager of the Subject Property itself (Jowdy), Jowdy and Kenner have the ability to sell, transfer, waste, destroy, or otherwise diminish the value of the Subject Property. *See id.* ¶ 28-29, 33.

4

## **ARGUMENT**

Criminal forfeiture is governed by Title 21, United States Code, Section 853.  *See* Title 18, United States Code, Section 982(b)(1), incorporating Section 853; *see also* Title 21, United States Code, Section 2461(c) (making the procedures in Section 853 applicable to all criminal forfeiture cases).  In order to assure the availability of property for forfeiture following conviction, Title 21, United States Code, Section 853(e)(1), allows the Court to enter a protective order upon the filing of an indictment.  Section 853(e), in pertinent part, provides:

> (1) Upon application of the United States, the Court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property . . . for forfeiture under this section—
>
> (A) upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; . . .

In addition, a protective order may be entered following the filing of a Bill of Particulars identifying specific property as subject to forfeiture.  *See Libretti v. United States,* 516 U.S. 29, 45 (1995); *United States v. Moffitt, Zwerling & Kemler, P.C.,* 83 F.3d 660, 664-65 (4th Cir. 1996).

Restraint of assets under Section 853(e) prior to a final determination of forfeiture in a criminal case has been approved by the United States Supreme Court.  In *United States v. Monsanto,* 491 U.S. 600 (1989), the district court restrained, under Title 21, United States Code, Section 853, a defendant from disposing of his house, his apartment and $35,000 in cash prior to making a final determination on whether those assets would be forfeited to the United States.  The Supreme Court upheld the restraint, noting:

5

> [I]t would be odd to conclude that the Government may not restrain property, such as the home and apartment in respondent's possession, based on a finding of probable cause, when we have held that . . ., the Government may restrain persons where there is a finding of probable cause to believe that the accused has committed a serious offense.

*Id.* at 615-16. Applying *Monsanto*, courts in this circuit have issued restraining orders prior to the conclusion of the forfeiture phase of the criminal trial. *See United States v. Daugerdas*, 2012 WL 5835203, at *1-2 (S.D.N.Y. Nov. 7, 2012) (upholding post-indictment restraint of assets); *United States v. Egan*, 2010 WL 3000000, at *6 (S.D.N.Y. July 29, 2010) (denying defendant's motion to set aside or modify the post-indictment restraining order); *United States v. Madoff,* 2009 WL 1055792 (S.D.N.Y. Apr. 20, 2009) (ordering restraint of assets subject to forfeiture following indictment).[1]

The protective order may be issued *ex parte,* and there is no right to a hearing before the Court issues a protective order. *See United States v. Monsanto,* 924 F.2d 1186, 1193 (2d Cir. 1991) (finding that a "notice and a hearing need not occur before an *ex parte* restraining order entered pursuant to section 853(e)(1)(A)"); *United States v. E-Gold, Ltd.,* 521 F.3d 411, 417 (D.C. Cir. 2008) (agreeing with *Monsanto* that no pre-restraint hearing is required)[2]; *United States v. Holy Land Found. for Relief & Dev.,* 493 F.3d 469, 475 (5th Cir. 2007) (en banc) ("a court may issue a restraining order without prior notice or a hearing").

---

[1] Pursuant to Title 28, United States Code, Section 2461(c), the procedural rules set forth in Title 21, United States Code, Section 853 apply at all stages of forfeiture proceedings. Specifically, Title 28, United States Code, Section 2461(c) provides in pertinent part that: "The procedures in section 413 of the Controlled Substances Act (21 U.S.C. § 853) *apply to all stages of a criminal forfeiture proceeding,* except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act." (emphasis added)

[2] In *Kaley v. United States,* 134 S.Ct. 1090, 1097 (2014), the Supreme Court rejected the circuit courts findings in *Monsanto* and *E-Gold* that defendants were entitled to challenge a grand jury's probable cause determination via a post-restraint hearing. The

If any third parties have claims to the properties for which a protective order is sought, Title 21, United States Code, Section 853(n) sets forth the procedure for the adjudication of such claims. This process begins, however, "[f]ollowing the entry of an order of forfeiture under this section . . ." 21 U.S.C. § 853(n)(1); see also *Libretti,* 516 U.S. 29, 44 (1995); *United States v. McHan,* 345 F.3d 262, 269-270 (4th Cir. 2003) ("§ 853(n) provides all of the process due"); *United States v. Messino,* 122 F.3d 427, 428 (7th Cir. 1997) (under Sections 853(k) and (n), third parties must wait until the court has entered a preliminary order of forfeiture to challenge the forfeiture action); *United States v. McCorkle,* 143 F. Supp. 2d 1311, 1318-19 (M.D. Fla. 2001).

The standard for issuing a protective order is probable cause. *See United States v. Monsanto,* 491 U.S. 600, 615-16 (1989). If the government makes the required probable cause showing, the issuance of the protective order is mandatory; the court's only discretion concerns the manner of the restraint. *See Id.,* 491 U.S. at 612-13 (the word "may" in section 853(e) means only that the district court may enter a protective order if the government requests it, but not otherwise, and that it is not required to enter the order if a bond or other means exists to preserve the property; it "cannot sensibly be construed to give the district court[s] discretion to permit the dissipation of the very property that section 853(a) requires [to be forfeited] upon conviction"). Protective orders may issue upon a judicial finding of probable cause. *See In re Billman,* 915 F.2d 916, 919 (4th Cir. 1990) ("[T]he government may 'seize property based on a finding of probable cause to believe that the property will ultimately be proven forfeitable,' " (citation omitted)). Probable cause can be shown by "an

---

Court did not rule on the circuit courts' findings that the restraining order may be issued *ex parte*.

7

aggregate of the facts," and has been described as "less than prima facie proof but more than mere suspicion." *United States v. Roth,* 912 F.2d 1131, 1134 (9th Cir. 1990).

The probable cause showing consists of two requirements. First, there must be probable cause to believe that the defendant has committed an offense permitting forfeiture. *Kaley v. United States,* 134 S.Ct. 1090, 1095 (2014). Here, a federal jury has already found that the defendants violated Title 18, United States Code, Sections 1343, 1349, and 1956(h) based upon the much higher standard of proof of beyond a reasonable doubt. As indicated in the Indictment, these offenses are all predicates to forfeiture. Under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1349 is forfeitable to the United States. Likewise, under Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a violation of Title 18, United States Code, Section 1956(h) is forfeitable to the United States.

Second, there must be probable cause to believe the property at issue has the requisite connection to the crime or crimes. *Kaley,* 134 S.Ct. at 1095. Courts may rely upon probable cause established in an agent's affidavit. *See United States v. Kaley,* 579 F.3d 1246, 1259 (11th Cir. 2009) (*Kaley I*) (noting that the court relied on the grand jury's finding of probable cause supplemented by an agent's affidavit). In the Affidavit, Special Agent Galioto provides a detailed factual basis linking the Subject Property to the ownership and control of the defendants, and demonstrates a substantial likelihood that the Subject Property is traceable to proceeds of the defendants' crimes. As established at trial and as set forth in the Affidavit, the defendants executed a scheme to fraudulently induce their clients and other

8

individuals to invest money with them by falsely claiming, among other things, that funds would be invested in real estate in Hawaii. In furtherance of this scheme, Kenner induced clients to wire large amounts of money into bank accounts under his control. *See* Affidavit, ¶ 19. Kenner also persuaded investors to open lines of credit at various financial institutions. *Id.* Rather than use the funds for their purported purpose, the defendants diverted the funds for their personal benefit and used money from their clients' lines of credit for unauthorized purposes, including for their personal benefit. *Id.* Bank records and the testimony of Kenner and the investors reveal that Kenner used funds designated for the Hawaii investments to fund his and Jowdy's personal interests in the Subject Property. At trial, Kenner testified that he used money from a loan issued by Centrum Financial to fund part of the deposit on the Subject Property. *See* Trial Transcript dated June 23, 2015 at 4637: 9-19; Affidavit, ¶ 24. The Use of Funds Statement accompanying the loan, however, prohibited the borrower from using the funds for anything other than the Hawaii investments. *See* Affidavit, ¶ 24. Moreover, bank records show the movement of funds from accounts designated for the Hawaii investments to the seller of the Subject Property. *See id.*, ¶¶ 24-27, 29-31. Many of these transactions occurred without the knowledge or authorization of the investors. *See id.*, ¶ 31.

As further set forth in the Affidavit, the Subject Property is currently at risk of being sold or transferred to a third party. *See* Affidavit, ¶ 33. Moreover, there is also reason to believe that Jowdy is currently taking measures to waste, damage, depreciate, or generally diminish the value of the Subject Property. *Id.* The destruction or the transfer, movement, conveyance, or encumbrance of the Subject Property by Kenner, Jowdy or any third-party

9

could render it unavailable for forfeiture and, thereby, thwart the very purpose of the
mandatory forfeiture statutes.

The United States, by the instant motion, seeks to preserve the *status quo* of the
Subject Property to prevent its alienation or dissipation by a third party or by the defendants
or those acting on their behalf. The purpose of the restraint of the Subject Property is to
preserve its availability for forfeiture following the conclusion of the forfeiture phase of the
trial. *See Billman,* 915 F.2d at 921.

In addition, this Court has jurisdiction to enter the requested Order "without regard to
the location of any property which may be subject to forfeiture under this section . . ." Title
21, United States Code, Section 853(l), incorporated by Title 18, United States Code, Section
982(b)(1).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter
the accompanying proposed protective order (a) immediately restraining, prohibiting, and
enjoining any person, including Kenner, Constantine, Jowdy, the LLCs, and their agents,
servants, employees, attorneys, family members and those persons in active concert or
participation with them, and those persons, financial institutions, or entities who have any
interest or control over the Subject Property, from attempting or completing any action that
would affect the availability or value of said property, including but not limited to selling,
assigning, pledging, distributing, encumbering, wasting, secreting, or otherwise disposing of,
their interest in the Subject Property, without providing notice to the United States and this
Court and obtaining permission from this Court and (b) requiring the parties to provide a
monthly accounting of revenue and expenses associated with the management of the Subject

10

Property, manage and maintain the Subject Property in good physical and financial

condition, maintain any insurance as required by law on the Subject Property, and produce

any books or records associated with the maintenance and operation upon any request made

by the United States.

The United States further requests that this application and the Affidavit remain under

seal until further order of this Court.


KELLY T. CURRIE
ACTING UNITED STATES ATTTORNEY
United States Attorney's Office
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722


/s/ Madelin O'Connor
Diane Leonardo
Madeline O'Connor
Assistant United States Attorneys

11