

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

JHK:LDM:DCL

*610 Federal Plaza
Central Islip, New York 11722*

February 26, 2016

Honorable Joseph F. Bianco
United States District Court
100 Federal Plaza
Central Islip, New York 11722

       Re: <u>United States v. Kenner and Constantine</u>
           CR-13-607 (S-2)

Dear Judge Bianco:

     As directed by Your Honor, the government respectfully submits this letter brief to address several issues that arose during the course of the hearing held on February 12, 2016 regarding the forfeiture to be imposed against defendants Phillip Kenner and Tommy Constantine as a result of their convictions for wire fraud, wire fraud conspiracy and money laundering conspiracy. *See* Hearing Tr. 89:23-25-91:1-14.[1]

**A.**     <u>**Conduct Not Specifically Proven During the Guilt Phase of Trial Should Be Considered During the Forfeiture Phase of Trial**</u>**.**

     As the Court is aware, the defendants were charged with and convicted of wire fraud, conspiracy to commit wire fraud, and money laundering conspiracy based upon the defendants' schemes to defraud investors and to launder the fraud proceeds for the defendants' own personal benefit and to invest in unrelated business ventures. Testimony and evidence regarding the unrelated business ventures included, among other things, testimony and evidence that victims' monies were diverted to fund the purchases of condominium units at the Palms in Las Vegas, real estate in Sag Harbor, the Falcon 10 airplane, and properties in Mexico know as Los Frailes, Diamante Cabo San Lucas and Diamante Del Mar. *See, e.g.*, Trial Tr. 581:4-10; 2121:11-19; 3111:15-25; 3539:5-19; 4636:24-25, 4637:1; 4637:18-19. Thus, the requisite nexus between these properties and the crimes of conviction for purposes of forfeiture was established during the guilt phase of trial. Nevertheless, even if the defendants now argue that the Court cannot consider any testimony about these or other properties during the forfeiture phase of trial because they were not specifically referenced in the Superseding Indictment or that these properties

---

[1] "Hearing Tr." refers to the February 12, 2016 transcript of the first day of the forfeiture hearing in this matter. "Trial Tr." refers to the transcript of the criminal trial held in this matter between May 4, 2015 and July 9, 2015.

pertain to frauds that were not proven at trial, the law allows the government to present evidence and information about properties and frauds that were not specifically charged in an indictment or proven at trial when the defendants were convicted of crimes such as the crimes of conviction in this case.

As discussed more fully below, there are two separate bases for the Court to consider during the forfeiture phase of trial conduct that was not specifically proven during the guilt phase of trial: (1) because the defendants were convicted of schemes to defraud, the government may seek forfeiture of the gross proceeds of uncharged executions of those schemes; and (2) because the defendants were convicted of wire fraud and money laundering conspiracies, the government may seek forfeiture of any property that was involved in those conspiracies. *See United States v. Capoccia*, 503 F.3d 103, 117-18 (2d Cir. 2007) ("Where the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise, the government need only establish that the forfeited assets have the 'requisite nexus,' Fed.R.Crim.P. 32.2(b)(1), to that scheme, conspiracy, or enterprise."); *United States v. Kahale*, 2010 WL 3851987, at *30 (E.D.N.Y. Sept. 27, 2010) (stating that "where an indictment charges a conspiracy or scheme to defraud, the proceeds of uncharged or acquitted conduct may become forfeitable because the government may be able to prove that money 'involved in the uncharged or acquitted [conduct] nevertheless constituted the proceeds of, or was traceable to, or was involved in, the [conspiracy or scheme to defraud] crime of conviction.' (citation omitted))."

### i. Forfeiture of Proceeds of Uncharged Executions of Defendants' Fraudulent Schemes

Case law confirms that frauds which were not specifically proven during the guilt phase of trial, but which arose out of the same schemes as the crimes of conviction, can be considered during the forfeiture phase of trial. S*ee United States v. Hatfield*, 2010 WL 4177159, at *6 (E.D.N.Y. Oct. 18, 2010) ("[T]he Government can also seek forfeiture of proceeds derived from 'uncharged executions' of Defendants' fraudulent schemes."); *United States v. Jafari*, 85 F. Supp. 3d 679, 687-88 (W.D.N.Y. Jan. 16, 2015) ("Considering uncharged conduct that is part of a fraudulent scheme is consistent with the law as articulated by courts in the Second Circuit"). Accordingly, the government has presented, and intends to continue to present, to the Court in the forfeiture hearing evidence regarding additional *executions* of the defendants' charged and proven schemes to defraud.

As the Court is aware, the defendants were charged and convicted of wire fraud, conspiracy to commit wire fraud, and money laundering conspiracy based upon the defendants' schemes to defraud investors and to launder the fraud proceeds for the defendants' own personal benefit and to invest in unrelated business ventures. In this regard, the Superseding Indictment filed on April 22, 2015 charged in general terms that:

> In or about and between August 2002 and April 2013, the defendants KENNER and CONSTANTINE devised, implemented, supervised and executed a *scheme* to fraudulently induce the player-clients and other individuals (collectively, the "Investors"), *including* John Does 1 through 11 and Jane Doe 1, to invest money by falsely stating that the funds would be invested in real estate in Hawaii, Eufora

2

>and an entity known as the "Global Settlement Fund" (hereinafter "GSF") for the benefit of the Investors when, in truth and in fact, as KENNER and CONSTANTINE then and there well knew and believed, a substantial portion of the money would be improperly diverted to bank accounts controlled by KENNER and CONSTANTINE and used for their personal benefit, for unrelated business ventures and to conceal their *scheme* to defraud.

Superseding Indictment, ¶ 5, Docket Entry ("DE") 214 (emphasis added); *see also id.* at ¶¶ 6-10, 12-15, 21-28.

In addition, an element of defendants' wire fraud convictions under 18 U.S.C. § 1343, was proof of a scheme to defraud. *See United States v. Gotti*, 459 F.3d 296, 330 (2d Cir. 2006). Thus, since the Superseding Indictment charged, and the defendants were convicted of, schemes to defraud, the additional executions of the schemes that the government seeks to introduce at the forfeiture phase of trial are not "new" frauds, but rather constitute additional uncharged executions of the same schemes for which the defendants were convicted.

In *United States v. Boesen*, 473 F. Supp. 2d 932, 952-53 (S.D. Iowa 2007), the court held that an indictment need not charge every execution of a scheme, and the court may consider uncharged executions of a scheme for purposes of forfeiture. *See also United States v. Kirkham*, 129 F. App'x 61, 68 (5th Cir. 2005) ("[A]lthough the government may charge defendants for each execution of the scheme, it is not required to do so"); *United States v. Hickman*, 331 F.3d 439, 446 (5th Cir. 2003) ("[A]lthough the crime of health care fraud is complete upon the execution of a scheme, any scheme can be executed a number of times, and each execution may be charged as a separate count"); *United States v. Pless*, 79 F.3d 1217, 1220 (D.C.Cir. 1996) ("[I]t is not necessary for the government to charge every single act of execution of the scheme in order to prove the whole scheme."); *United States v. Hammen*, 977 F.2d 379, 383 (7th Cir. 1992) ( "[F]or each count of conviction, there must be an execution. However, the law does not require the converse: each execution need not give rise to a charge in the indictment."). The *Boesen* court recognized that "[f]orfeiture of the gross proceeds of uncharged executions of the scheme" serves the purposes of "confiscat[ing] property used in violation of the law, and . . . requir[ing] disgorgement of the fruits of illegal conduct." *Boesen*, 473 F. Supp. 2d at 953. Thus, the fact that the government elected not to charge and prove every execution of the fraudulent scheme at trial does not bar it from presenting evidence of the additional executions at the forfeiture hearing.[2] Accordingly, the Court may hear evidence and information regarding the additional uncharged executions of the defendants' schemes to defraud.

---

[2] *See, e.g.*, Trial Tr. at 241:15-18 ("Why would we put before the jury a fraud that is in a . . . prior indictment, that *the government's saying we're not seeking to prove at this point*?" (emphasis added)); *id.* at 1527:1-3 (". . . . he's going to say he was defrauded in Los Frailes because that is an entire[ly] separate fraud *we don't need to argue about at this trial*" (emphasis added)). Although the parties and the Court loosely referred to the executions of the frauds as frauds, the facts and evidence confirm that the defendants' conduct with regard to, *inter alia*, the Palms and the properties in Mexico were in fact additional executions of defendants' fraudulent schemes.

3

### ii.     Forfeiture of Property Involved in the Money Laundering and Wire Fraud Conspiracies

The defendants were convicted of conspiracy to commit wire fraud and money laundering conspiracy. The defendants' convictions for these conspiracies encompass an even "broader category of criminal conduct [than that which is] encompassed by the overall scheme to defraud." *Kahale*, 2010 WL 3851987, at *31. That is to say, any property that was involved in the conspiracy is subject to forfeiture. *See United States v. Capoccia*, 503 F.3d 103, 117-18 (2d Cir. 2007) ("Where the conviction itself is for . . . engaging in a conspiracy, . . . the government need only establish that the forfeited assets have the 'requisite nexus,' Fed.R.Crim.P. 32.2(b)(1), to that . . . conspiracy . . . ."); *United States v. Hasson*, 333 F.3d 1264, 1279 n.19 (11th Cir. 2003) ("[M]oney laundering conviction in hand, the government need only prove that property was involved in or traceable to property involved in that offense by a preponderance of the evidence"); *Kahale*, 2010 WL 3851987, at *30 (stating that "where an indictment charges a conspiracy . . . , the proceeds of uncharged or acquitted conduct may become forfeitable because the government may be able to prove that money 'involved in the uncharged or acquitted [conduct] nevertheless constituted the proceeds of, or was traceable to, or was involved in, the [conspiracy . . . ] crime of conviction.' " (citation omitted)); *United States v. Peters*, 2009 U.S. Dist. LEXIS 22451, at * (W.D.N.Y. March 19, 2009) (defendant convicted of a fraud conspiracy is liable to forfeit the proceeds of the entire conspiracy, including property derived from specific acts that were alleged in the indictment as substantive counts on which the defendant was acquitted), *aff'd*, 732 F.3d 93 (2d Cir. 2013).

In sum, the evidence and information presented to the Court regarding, *inter alia*, the condominium units at the Palms in Las Vegas and the properties in Mexico may be considered by the Court because it was already presented to the Court in the guilt phase of trial, and because it constitutes both evidence and information pertaining to additional executions of the schemes to defraud of which the defendants were already convicted, and evidence and information pertaining to properties that were involved in the conspiracy to commit wire fraud and money laundering conspiracy.

### B.     Hearsay and Documents Provided by Third Parties

At the forfeiture hearing, the Court raised questions concerning the admissibility of hearsay evidence in the form of emails, bank records, and charts provided by third parties as well as out of court statements made by third parties to agents. For the reasons set forth herein, this evidence is admissible in the forfeiture proceeding.

It is well established that hearsay is admissible during the forfeiture phase of trial provided it is "sufficiently reliable." *See Capoccia,* 503 F.3d at 110 (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay; this is consistent with forfeiture being part of the sentencing process where hearsay is admissible); *United States v. Hatfield,* 795 F. Supp. 2d 219, 229-30 (E.D.N.Y. 2011) (noting Federal Rules of Evidence do not apply during forfeiture hearings); *United States v. Nicolo,* 597 F. Supp. 2d 342, 345 (W.D.N.Y. 2009) (finding hearsay is admissible provided it is "sufficiently reliable"); *see also* United States v. Ali, 619 F.3d 713, 720 (7th Cir. 2010) (because forfeiture is

part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"). In general, hearsay is considered "sufficiently reliable" where it has been corroborated by other evidence. *See United States v. Martinez,* 413 F.3d. 239, 240-41 (2d Cir. 2005); *United States v. Carmona,* 873 F.2d 569, 574 (2d Cir. 1989); *United States v. Fatico,* 579 F.2d 707, 713 (2d Cir. 1978); *United States v. Gaskin,* 2002 WL 459005, *9 (W.D.N.Y. Jan. 8, 2002).

For example, in *United States v. Stathakis,* 2008 WL 413782, at *14 & n.2 (E.D.N.Y. Feb. 13, 2008), the Court admitted documents provided by a coconspirator, who did not testify during the forfeiture hearing, as well as an agent's testimony regarding the contents of those documents. Specifically, the coconspirator provided the agent with credit reports and other financial documents given to the coconspirator by the defendant to facilitate fraudulent loan applications. *Id.* at 7, 14. In evaluating the agent's testimony and the loan documents, the Court noted that the contents of the documents were corroborated by other evidence, namely: the loan documents identified the defendant's known business; two other coconspirators had informed the agent they received rent and maintained the property associated with one of the loans for the defendant; and the fraudulent loan applications were substantially similar to other fraudulent loans proven during the guilt phase of the trial. *Id.* at 14.

Here, the information provided by third parties, including bank records, spreadsheets, and emails, is similarly corroborated by witness testimony and bank records introduced during the guilt phase of trial.[3] For instance, witness testimony from the guilt phase of trial corroborates the information contained in Forfeiture Exhibit 48, an exhibit for which Your Honor reserved decision regarding its admissibility during the February 12, 2016 hearing. Forfeiture Exhibit 48 contains a chart listing the names of investors in the Diamante Del Mar property, as well as the amount of money each investor contributed. It also contains copies of the checks and transfer records corresponding to the transactions listed in the chart. Forfeiture Exhibit 48 lists Bryan Berard ("Berard") as one of the investors in the Diamante Del Mar property with a $500,000 investment. The information on the chart is corroborated by Berard's testimony at trial that he invested $500,000 in the Diamante Del Mar property and that Kenneth Jowdy ("Jowdy") and defendant Kenner served as project managers of this property. *See* Direct Examination of Berard (Trial Tr. at 3111:15-26). In addition to Berard, the chart lists James McKee, Michael Peca, and Glen Murray as investors in the Diamante Del Mar property, among others, and with investments of $500,000 each in the property. All three individuals testified during the guilt phase of trial that they invested these exact amounts in the Diamante Del Mar property. *See* Direct Examination of James McKee (Trial Tr. at 1811:19-22); Cross Examination of Michael Peca (Trial Tr. at 581:4-10); Cross Examination of Glen Murray (Trial Tr. at 3539:5-15). Accordingly, Forfeiture Exhibit 48 is well-corroborated and reliable hearsay that should be admissible in the forfeiture hearing.

Your Honor also reserved decision regarding the admissibility of Forfeiture Exhibit 46 at the February 12, 2016 hearing. Forfeiture Exhibit 46, which was also supplied by attorneys for

---

[3] The examples that follow are meant to be representative samples of the type of corroborating evidence the government is able to provide for its forfeiture exhibits; they are not intended to serve as an exhaustive list.

5

Jowdy, consists of bank statements for Baja Development Corporation covering the period from approximately January 31, 2006 to April 30, 2006. These statements are corroborated by Government Exhibit 2102, which was admitted during the guilt phase of trial and shows the movement of funds into and out of Northern Trust Account number 1411026189 held in the name of Ula Makika LLC (the "Ula Makika Account").[4] For instance, Forfeiture Exhibit 46 shows a February 3, 2006 wire transfer of $20,000 from the Ula Makika Account to Baja Development Corporation. *See* Forfeiture Exhibit 46, Bates No. DIAMANTE 0000113. This same transaction is also shown in Government Exhibit 2102 at Bates No. NAAZOOO549. In addition, Forfeiture Exhibit 46 shows a February 14, 2006 wire transfer of $50,000 and a February 24, 2006 wire transfer of $50,000 out of the Baja Development Corporation account. *See* Forfeiture Exhibit 46, Bates No. DIAMANTE 0000113. Government Exhibit 2102 corroborates this transfer as reflected in a February 14, 2006 wire transfer of $50,000 into the Ula Makika Account, as well as a February 24, 2006 wire transfer of $50,000 into the Ula Makika account, both of which came from Baja Development Corporation. *See* Gov't Exhibit 2102, Bates No. NAAZOOO550. Consequently, Forfeiture Exhibit 46 is sufficiently reliable hearsay that should be admissible in the forfeiture hearing.

In addition to this documentary evidence, Special Agent Joshua Wayne's testimony concerning statements made by investors is also admissible at the forfeiture stage. Numerous courts have held that statements made by third parties to agents have been found to be sufficiently reliable where they are consistent with other testimony as well as other hearsay statements offered during sentencing proceedings. *Carmona,* 873 F.2d at 575; *Fatico,* 579 F.2d at 713; *Tineo v. United States,* 977 F. Supp. 245, 263 (S.D.N.Y. Dec. 20, 1996).[5] In *Carmona*, an agent testified at a *Fatico* hearing as to statements made to him by unnamed informants. 873 F.2d at 575. Also in *Carmona*, the Court heard hearsay testimony from a probation officer "that a New York City police officer told him that the victim of a shooting, who later died, told the attending paramedic that [the defendant] was his assailant." *Id*. The Court noted that the informants did not know each other, yet their statements identifying the defendant as a contract killer were consistent with one another, as was the statement made to the paramedic. The Court therefore found that "[t]hese sources [were] sufficiently independent and similar to corroborate the hearsay evidence." *Id.*

Here, statements made by investors to other agents in the course of the investigation are corroborated by other evidence admitted during the guilt phase of trial. For instance, while Greg DeVries ("DeVries") did not testify during the guilt phase of trial, his statements made to Special Agent Matthew Galioto ("Agent Galioto"), and subsequently relayed to Special Agent Wayne, are consistent with financial records and witness testimony introduced during the guilt phase of trial. Government Exhibit 1708, which was admitted into evidence at trial, shows a June 2, 2008

---

[4] The bank statements contained in Government Exhibit 2102 are the same statements contained in Forfeiture Exhibit 47 which was offered during the February 12, 2016 forfeiture hearing.

[5] In finding reliable hearsay admissible in the context of forfeiture hearings, Courts have frequently relied on admissibility findings in other sentencing proceedings, including *Fatico* hearings. *See, e.g., Stathakis,* 2008 WL 413782, at *14 & n.2 (*citing Carmona,* 873 F.2d at 574); *United States v. Gaskin,* 2002 WL 459005, *9 (W.D.N.Y. Jan. 8, 2002) (same).

transfer from Greg DeVries of $75,000 to Bank of America Account Number 0046 7816 9272, held in the name of Constantine Management Group, Ltd (the "Constantine Management Account"). *See* Gov't Exhibit 1708, Bates No. BNK-BOA-00000687. DeVries informed Agent Galioto that he intended his money to go solely to Eufora.

During the guilt phase of trial, several investors testified that Kenner diverted money investors had intended for the Global Settlement Fund into Eufora, without their knowledge, and/or diverted money they had invested in Eufora to other accounts, including the Constantine Management Account, without their knowledge. *See* Direct Examination of Glen Murray (Trial Tr. 3493:11-13; 3496:5-9; 3497:2-24); Direct Examination of Darryl Sydor (Trial Tr. 2179:12-19); Direct Examination of Michael Peca (Trial Tr. 415:22-416:24); Direct Examination of Tyson Nash (Trial Tr. 1916:20-1918:5). Thus, Agent Wayne's testimony regarding what DeVries told Agent Galioto about the money he had invested in Eufora is corroborated by the trial evidence of Kenner's pattern of diverting investor money related to Eufora without the knowledge of his clients.

Accordingly, the Court may consider evidence supplied by third parties who do not testify during the forfeiture phase of trial because that evidence, while hearsay, is sufficiently reliable in that it is corroborated by other bank records and witness testimony introduced during the guilt phase of trial.

C. **The Superseding Indictment and the Bill of Particulars Gave Notice to the Defendants of the Government's Intention to Seek Mandatory Forfeiture**

The defendants received all the notice to which they were entitled with respect to the forfeiture. The Superseding Indictment (and, indeed, the previously filed indictments) specifically provided notice to the defendants of the government's intention, upon their convictions, to seek forfeiture of all property, real or personal, traceable to proceeds of the wire fraud, and wire fraud and/or involved in the money laundering conspiracies. *See* Superseding Ind. at ¶¶ 31, 34. This language satisfied the government's obligation to provide notice of its intent to seek forfeiture. *United States v. Grammatikos*, 633 F.2d 1013, 1024 (2d Cir. 1980) ("The plain language of Rule 7(c)(2) [6] requires only that the extent of the interest or property subject to forfeiture be alleged. That condition was satisfied here since the superseding indictment announced that the government would seek all of appellant's interest or property in the illicit enterprise of which he was the sole proprietor").

With regard to whether the government is further obligated to provide notice of the specific assets it seeks to forfeit, one court in this district has denied a defense request for a forfeiture Bill of Particulars. In *Kahale*, 789 F. Supp. 2d at 377-378, the court denied the defendant's request, reasoning that "[w]hile two rules of federal criminal procedure require the

---

[6] "In 2000, the same language [of Rule 7 (c)] was repeated in subdivision (a) of Rule 32.2, which was intended to consolidate the rules dealing with forfeiture." *See* Fed R. Crim. P. 7 advisory committee note (2009).

7

government to provide notice of its intent to pursue criminal forfeiture, there is no requirement that the government individually itemize the property subject to forfeiture in an indictment." The *Kahale* court explained that the notice requirement was satisfied as the superseding indictment advised the defendant of the government intent to seek all of the defendant's "interest or property in the illicit enterprise of which he was the sole proprietor." *Id*. at 377. (internal citation omitted)). Another court in this district also recognized that while some courts require a Bill of Particulars for specific property, other courts have found that a Bill of Particulars is not necessary at all with regard to specific property. *United States v. Galestro*, 2008 U.S. Dist. LEXIS 53834, *31-34 (E.D.N.Y. July 15, 2008). The court in *Galestro,* however, in *deciding defendant's motion for a bill of particulars*, concluded that if the government sought the forfeiture of specific property, a Bill of Particulars should be provided 30 days prior to the start of trial in this case. *Id.* (emphasis supplied).

Here, the defendants never requested a Bill of Particulars with regard to the forfeiture allegations. In fact, on July 22, 2014, defendant Kenner requested a Bill of Particulars only with regard to the identity of "John Doe" victims named in the indictment. *See* DE 74. The defendants cannot claim prejudice when they never made a request for an itemization of specific property.

Notwithstanding defendants' failure to request a Bill of Particulars, the government did in fact provide a Bill of Particulars prior to the start of trial.[7] A Bill of Particulars was filed on April 22, 2015, asserting that, pursuant to 18 U.S.C. §§ 981 (a)(1)(c), 982 (a)(1), and 1956 (h), the government would seek the forfeiture of the defendants' interest in Baja Ventures 2006, LLC and Diamante Properties LLC. *See* Docket Entry ("DE") 280. Notably, the only asset owned by Baja Ventures 2006 LLC and Diamante Properties, LLC is a percentage of ownership of Diamante Cabo San Lucas ("DCSL"), a resort in Cabo, Mexico. Accordingly, *prior to the start* of trial, the defendants were aware that the government was seeking to forfeit their ownership interests in DCSL. On July 1, 2015, after weeks of trial that included testimony and documentary evidence with regard to investment monies diverted to the Cabo resort and other properties in Mexico, the defendants waived their right to have the jury decide the forfeiture. *See* Trial Tr. at pp. 5672-5674.

On August 22, 2015, an amended Bill of Particulars was filed which listed additional entities subject to forfeiture, as well as the resort itself, based on the defendants' money laundering convictions. *See* DE 328. The only asset owned by these additional entities is a percentage of ownership in DCSL, which the defendants were already advised the government would pursue in its April 22, 2015 Bill of Particulars. However, neither defendant has an ownership interest in the entities named in the amended Bill of Particular, i.e., KAJ Holdings, CSL Properties 2006, LLC, and Somerset LLC. Instead, these entities belong to third parties, and, if the resort is forfeited, the third parties may assert their legal interests through an ancillary proceeding at a later stage of the forfeiture proceedings. *See* 21 U.S.C. § 853(n).

---

[7] Pursuant to Fed. R. Crim. P 7(f) a defense request for a Bill of Particulars must be made within 14 days after arraignment or at a later time if the court permits.

8

      Furthermore, there is no constitutional right to have the jury determine the forfeiture. *Libretti v. United States*, 516 U.S. 29, 49 (1995)("the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection"); *United States v. Valdez*, 726 F.3d 684, 699 (5th Cir. 2013) ("There is no constitutional right to a jury determination of forfeiture"). Rather, the right to a jury determination exists pursuant to Rule 32.2(b)(5), which required the defendants to make such a request before the jury began deliberating guilt. Even if the court were to assume that the defendants would have exercised this right differently, whether they failed to do so unintentionally or because they were not fully aware of the scope of the forfeiture proceeding, does not preclude the government from seeking forfeiture. *Valdez*, 726 F.3d at 699 (while the trial judge's failure to inquire if the defendant wanted the jury retained was clear error, it did not require reversal of the forfeiture order because there is no constitutional right to have the jury determine the forfeiture, there was sufficient factual support for the forfeiture, and defendant made no affirmative request for the jury); *United States v. Williams*, 720 F.3d 674, 700-01 (8th Cir. 2013) (Rule 32.2(b)(5) is a "time-related directive," the violation of which does not override the mandatory nature of criminal forfeiture if the defendant is convicted).

      The Superseding Indictment provided defendants with adequate notice that the government intended to forfeit all property, real or personal, involved in the wire fraud, and wire fraud and money laundering conspiracies, including DCSL, and the government was not required to file a Bill of Particulars listing each specific property it was seeking to forfeit. Nevertheless, the government filed an initial Bill of Particulars well before the defendants waived a jury for the forfeiture hearing, and gave notice to defendants that the government was seeking to forfeit their interests in DCSL. The amended Bill of Particulars pertained to the same asset being sought for forfeiture that was already identified in the initial Bill of Particulars, namely, DCSL. In addition, even after providing notice of specific assets to a defendant, the government is not limited in its ability to seek forfeiture of all property subject to the penalty "simply because it listed some items with particularity." *Peters*, 2009 U.S. Dist. LEXIS 22451, at *15. Accordingly, there is no prejudice to defendants based on the amended Bill of Particulars and their statutory right to have the jury determine the forfeiture.

                                            Respectfully submitted,

                                            ROBERT L. CAPERS
                                            United States Attorney


                      By:     /s/ Diane C. Leonardo
                             Diane C. Leonardo
                             Madeline M. O'Connor
                             Assistant U.S. Attorneys
                             (631) 715-7854/7870

cc: Defense counsel by ECF