1

1                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

2

- - - - - - - - - - - - - - - X

3

UNITED STATES OF AMERICA    :    13-CR-607 (JFB)

4

    -against-             U.S. Courthouse

5

                      :
                        Central Islip, New York

6

PHILLIP A. KENNER
a/k/a "Philip A. Kenner",

7

    and             :    Forfeiture Hearing
TOMMY C. CONSTANTINE

8

a/k/a "Tommy C. Hormovitis"

9

             Defendants  :

10

- - - - - - - - - - - - - - - X      March 9, 2016
                        10:30 a.m.

11

BEFORE:

12

        HONORABLE JOSEPH F. BIANCO
        United States District Judge

13

14

APPEARANCES:

15

For the Government:     LORETTA E. LYNCH

16

                      United States Attorney
                      Federal Plaza

17

                      Central Islip, New York 11722
                      BY:  DIANE C. LEONARDO

18

                            MADELINE M. O'CONNOR
                            LAURA MANTELL

19

                            SARITHA KOMATIREDDY
                            Assistant U.S. Attorneys

20

21

22

For the Defendant:      HALEY, WEINBLATT & CALCAGNI LLP
Phillip A. Kenner       One Suffolk Square

23

                      1601 Veterans Memorial Highway
                      Suite 425

24

                      Islandia, New York 11749
                      BY:  RICHARD HALEY

25

2

```
 1   For the Defendant:        LaRUSSO & CONWAY LLP
     Tommy C. Constantine      300 Old Country Road
 2                             Suite 341
                               Mineola, New York 11501
 3                             BY:  JOSEPH CONWAY
                                       and
 4                               ANDREW L. OLIVERAS
                                 26 Strangford Court
 5                               Oceanside, New York 11572

 6

 7   Court Reporter:           RONALD E. TOLKIN, RPR, RMR, CRR
                               100 Federal Plaza
 8                             Central Islip, New York 11722
                               631-712-6105
 9                             ronald_tolkin@nyed.uscourts.gov

10                             ***

11            THE CLERK:  All rise.

12            THE COURT:  Please be seated.

13            THE CLERK:  Calling case 13-CR-607, U.S.A. versus

14   Kenner and Constantine.

15            Counsel, please state your appearance for the

16   record.

17            MS. LEONARDO:  For the United States, Diane

18   Leonardo, Madeline O'Connor, and Laura Mantell.

19            Good morning, Your Honor.

20            THE COURT:  Morning.

21            MR. CONWAY:  Good morning, Judge.

22            Joseph Conway for Thomas Constantine.

23            MR. OLIVERAS:  Joseph Oliveras for Thomas

24   Constantine.

25            THE COURT:  Morning.
```

3

1          MR. OLIVERAS:  Good morning, Your Honor.

2          MR. HALEY:  Richard Haley for the defendant Phil

3     Kenner.  Mr. Kenner is to my left, Judge.

4          THE COURT:  Good morning to you both.

5          Both defendants are present.

6          As you know, this is the continuation of the

7     forfeiture proceeding.  Since we met the last time I did

8     receive the government's letter addressing the issues that I

9     had asked them to address.

10          Mr. Haley, I did receive your letter in response.

11    My intention with respect to that, I think consistent with

12    what we did at the start of the hearing is, I am reserving on

13    those legal issues as well as the issues regarding the

14    objections to hearsay.

15          I am going to reserve on those but, obviously, you

16    can continue to lodge those exhibits or objection to evidence

17    or testimony the government offers.  But I want the government

18    to have an opportunity to present all the evidence they think

19    is admissible with respect to any property that they think

20    should be subject to forfeiture.

21          And then I will decide those issues, obviously, once

22    the hearing is done.  So that is the way we are going to

23    proceed.

24          I just want to get a sense for the timing today.

25    The government was in the middle of a witness, right?

4

1          MS. LEONARDO:  Yes, Your Honor.

2          I have probably about another half-hour, 45 minutes

3    on direct, and then we will rest.

4          THE COURT:  What does the defense want to do then in

5    terms of the defense case?  Have you decided what you are

6    going to do yet or are you still thinking about it?

7          MR. HALEY:  Your Honor, if I may, the government I

8    am told will conclude its case this morning.

9          THE COURT:  Yes.

10          MR. HALEY:  We only have the testimony of Agent

11   Joshua Wayne.  I will be cross examining Agent Wayne.  My

12   client, as of this moment, still has the intent to testify at

13   the forfeiture hearing.  We are not prepared to proceed today.

14   We spoke with your clerk about another date.  If the

15   government rests, as they state they will, at that date we

16   will commence the defense case in this matter.

17          Judge, there has been -- so the Court is aware, we

18   have encountered some difficulty.  I think we are going to be

19   able to overcome that difficulty with the MDC and my client's

20   access to the computer.  It has been more restricted than we

21   would like but I will deal with that.  I have been able to

22   deal with it in the past.  I am not asking for the Court's

23   intercession.  I am hopeful that by the 4th we will have

24   sufficient time to proceed with my client's case.  Thank you.

25          THE COURT:  Great.

5

1           So we will continue with Agent Wayne's testimony.

2           You can take the stand, Agent Wayne.

3           Let's swear him in again.

4           (Witness sworn.)

5           THE WITNESS:  I do.

6           J O S H U A     W A Y N E,

7           called as a witness, having been duly

8           sworn, was examined and testified as follows:

9           THE CLERK:  Please state your name and spell it for

10  the record.

11          THE WITNESS:  Joshua Wayne.

12          J-O-S-H-U-A, W-A-Y-N-E.

13          MS. LEONARDO:  I need the machine on.

14          THE CLERK:  Yes.

15          MR. HALEY:  Judge, do you usually display the

16  exhibits on the large screen?

17          MS. LEONARDO:  I am planning to do that.

18          MR. HALEY:  Your Honor, there is not a monitor on

19  our desk to simultaneously review the exhibits.

20          THE COURT:  Do you have paper copies of them or not?

21          MR. HALEY:  I don't.

22          MS. LEONARDO:  Yes, I do.

23          MR HALEY:  The exhibits are to be introduced into

24  evidence?

25          MS. LEONARDO:  Your Honor, I have some exhibits from

1    the last time.  I will be referring to them as what has been

2    introduced into evidence.  I have additional copies to present

3    to counsel as we move along.

4              MR. HALEY:  We will do fine with that, Judge.

5         Thank you.

6              THE COURT:  If you want to move your chair you can.

7              MR. HALEY:  Thank you.

8              MS. LEONARDO:  Your Honor, I did provide your clerk

9    with a list of the additional documents.

10             THE COURT:  Thanks.

11   CONTINUED DIRECT EXAMINATION

12   BY MS. LEONARDO:

13   Q    Good morning, Agent Wayne.

14   A    Good morning.

15   Q    Agent Wayne, I want to return your attention to what was

16   marked at the last time as an exhibit, Forfeiture Exhibit 36.

17   A    Yes.

18   Q    Agent Wayne, and this exhibit -- the court reserved

19   decision on this exhibit the last time we were here.  Since

20   the last time did you look at additional exhibits in evidence

21   to verify any of the entries on this exhibit?

22   A    Yes.

23   Q    Specifically, what did you use to verify them?

24   A    Bank records.

25   Q    Agent Wayne, specifically with regard to the second entry

1  on that ledger, what records did you look at to verify the

2  accuracy of the entries?

3  A    I looked at the Little Isle line of credit history and

4  the Little Isle bank records.

5  Q    When you say line of credit history, it was Government

6  Exhibit 2133, correct?

7  A    Yes.

8  Q    And Little Isle bank accounts, it was Exhibit 2101?

9  A    Yes.

10  Q    You referred to pages 170 to 172 for the Little Isle

11  account?

12  A    Yes.

13  Q    With regard to the next entry on that ledger, what did

14  you need to review to verify that amount?

15  A    Bank records from Little Isle and Ula Makika.

16  Q    Specifically, what did you do?

17  A    Money that came in from Jozef Stumpel to Ula Makika, then

18  off to the seller of the property, Atilio.  Then money from

19  Ula Makika to Little Isle, and then back to the seller of the

20  property.

21  Q    In other words, Exhibit Number 2102 is the Ula Makika

22  account, and those were at pages 526 to page 528, correct?

23  A    Yes.

24  Q    And again the Little Isle account, which was 2101, pages

25  170 to 171, right?

1   A     Yes.

2   Q     Agent, I would ask you to refer to Exhibit 58, Forfeiture

3   Exhibit 58.

4          MR. HALEY:  58?

5          MS. LEONARDO:  This is a new exhibit I am giving to

6   counsel.

7   Q     Agent Wayne, looking at Exhibit 58, do you recognize that

8   and what do you recognize that to be?

9   A     The Charles Schwab wires.

10  Q     Looking at those three pages?

11  A     Three pages, yes.

12  Q     Looking at those, where did the government obtain those

13  documents?

14  A     Phillip Kenner's home.

15  Q     How do you know that?

16  A     From the search warrant records.

17  Q     Those are the documents labeled PK Home?

18  A     Yes.

19  Q     It is your understanding those are the documents that

20  were retrieved from Mr. Kenner's home?

21  A     Right.

22         MS. LEONARDO:  Your Honor, we offer those documents

23  in evidence.

24         THE COURT:  What number is that again?

25         MS. LEONARDO:  58.

1          THE COURT:  Any objection?

2          MR. HALEY:  No, sir.

3          MR. CONWAY:  No, Your Honor.

4          THE COURT:  Exhibit 58 is admitted.

5          (So marked as Forfeiture Exhibit 58 in evidence.)

6   Q    Agent Wayne, also looking at Forfeiture Exhibit 36, which

7   is still on the screen, are those numbers also reflected in 58

8   and 36?

9   A    Yes.

10  Q    Agent Wayne, I would ask you to look at the new exhibits,

11  60, 61, and 62.

12  A    Yes.

13  Q    Do you recognize those?

14  A    Yes.

15  Q    What do you recognize each of those documents to be?

16  A    E-mails from Phillip Kenner to Ken Jowdy regarding

17  payments to Atilio for deposits and other money going down to

18  Baja.  And he wanted the letter from Phil Kenner to Atilio

19  stating that money was going down for the property.

20  Q    With regard to exhibits, Forfeiture Exhibit 60, 61, and

21  62, where did the government obtain those documents?

22  A    The SEC.

23  Q    When you say "the SEC," what do you mean?

24  A    The SEC provided documents to us that were originally

25  provided by Phillip Kenner.

1  Q    In fact, each of those documents have been marked PK-SEC

2  with a series of Bates numbers?

3  A    Yes.

4          MS. LEONARDO:  Your Honor, I will offer those in

5  evidence.

6          MR. HALEY:  Judge, may I have a moment?

7          THE COURT:  Yes.

8          MR. HALEY:  Your Honor, as relates to the exhibits

9  61 and 62, consist of a two-page document each.

10          THE WITNESS:  Yes.

11          MR. HALEY:  As relates to the first page of that

12  document, Judge, we have no objection as to the admissibility

13  of the first page of the document.

14          As relates to the unfocused purpose of 61 and 62, as

15  relates to what is then stapled as the second page to the

16  document -- Judge, may I have a moment?

17          THE COURT:  Yes.

18          (Whereupon Mr. Haley confers with Mr. Kenner.)

19          The second page looks like a Spanish version that

20  was signed by Mr. Kenner.

21          MR. HALEY:  Judge, the issue becomes the signature

22  on the document itself.  Your Honor, if I may.  We know that

23  the government by virtue of Agent Wayne's testimony thus far

24  has had and continues to have, as best we know, communications

25  with the attorney for Kenneth Jowdy.  The testimony is they

1   received documents from Mr. Tom Harvey, who is the attorney

2   for Ken Jowdy.

3           We request, Judge, in view of that level of

4   cooperation, and cooperation between the government and the

5   attorney for Ken Jowdy, that inquiry be made of the attorney

6   for Ken Jowdy as to whether or not the original of Page 2 of

7   both documents exists so that we might take a look at the

8   original as relates to the signature on the document.

9           That would be our request, Judge.  If it is

10  available it may resolve any objection we may have.  If it is

11  not available we can address the issue at that point.  As the

12  Court can see, this document is barely legible.  And that

13  would be our request.

14          MS. LEONARDO:  Your Honor, if I may.  These are

15  documents that were produced by Mr. Kenner in response to an

16  SEC motion to compel him to comply to the subpoena.  The

17  documents were marked by Mr. Kenner's counsel at the time of

18  the SEC, numbered 1 through approximately 26,000.  Mr. Kenner

19  testified to that at the trial, that he in fact produced

20  26,000 documents to the SEC.

21          THE COURT:  I don't need to hear more.  These

22  documents are admissible based upon the testimony that was

23  provided.  In terms of the authenticity of the signature

24  obviously if you want to test that, Mr. Haley, you can.  I

25  don't think there is any reason to question that these

1   documents were produced by Mr. Kenner to the SEC based on the

2   record that we have.

3          MR. HALEY:  If I may, Judge.  There is a dispute as

4   to whether or not those documents were produced by Mr. Kenner

5   during the course of the SEC proceeding or whether they were

6   produced by Mr. Jowdy during the course of the SEC

7   investigation.

8          The government is making that representation that

9   they were Kenner produced documents.  Mr. Jowdy was part of

10  that SEC investigation by way of being a witness.  The

11  information I received is that they were actually documents

12  produced by Mr. Jowdy.

13         Judge, you are correct, I believe, as relates to my

14  client's ability to raise as an issue as to the authenticity

15  of the documents.  In view of the fact that he is going

16  testify I don't want to make an issue that is unnecessary.  We

17  will address it at that point in time.  But I don't want the

18  record to be of the view that what the government's

19  representation is about who produced it is indeed something we

20  are going to concede.

21         THE COURT:  So 60 through 62 are admitted.  I would

22  ask, and I don't think that it is unreasonable that they want

23  to see if Mr. Jowdy's attorney has the originals of these

24  documents, that they be produced to the government.  Can you

25  make that request to his lawyer?

Case 2:13-cr-00607-JFB-AYS   Document 369   Filed 03/23/16   Page 13 of 105 PageID #: 9340

1          MS. LEONARDO:  We can do that, Your Honor.

2          MR. HALEY:  Thank you, Your Honor.

3          (So marked as Forfeiture Exhibit 60, 61, and 62 in

4    evidence.)

5    CONTINUED DIRECT EXAMINATION

6    BY MS. LEONARDO:

7    Q    So, Agent Wayne, can you describe what Exhibit 60 shows?

8    A    It shows a letter from Phillip Kenner discussing the

9    money going down to Atilio.

10   Q    Exhibit 60 is an e-mail, isn't that right?

11   A    I'm sorry.  That is Exhibit 61.

12          60 is an e-mail from Kenner to Jowdy discussing the

13   deposits for Atilio.

14   Q    Agent Wayne, I want to direct your attention to

15   Forfeiture Exhibit 44.

16   A    Yes.

17   Q    Agent Wayne, looking at Exhibit 44, what is that?

18   A    It is money going down to one of the players for Little

19   Isle and another company that Jowdy controlled.

20   Q    Is this a letter that you received through Mr. Jowdy's

21   attorney?

22   A    Yes.

23   Q    The information that was contained on that ledger, would

24   you verify the information with numbers and the deposits that

25   are listed in the e-mail in Forfeiture Exhibit 60?

Case 2:13-cr-00607-JFB-AYS  Document 369  Filed 03/23/16  Page 14 of 105 PageID #: 9341

1   A    Yes.

2   Q    Were they correct?

3   A    Yes.

4            MS. LEONARDO:  Your Honor, we offer Exhibit 44.

5            MR. HALEY:  May I conduct a brief voir dire, Judge?

6            THE COURT:  Yes.

7   VOIR DIRE EXAMINATION

8   BY MR. HALEY:

9   Q    Agent Wayne, Government FORF-44 contains a sixth column

10  that says Notes.

11           Do you see that?

12  A    Yes.

13  Q    The records that you reviewed to substantiate the

14  accuracy of those documents, do those records reflect, make

15  any reference to 1 percent, 5 percent, or anything of that

16  nature?

17  A    I would ask which records you are referring to?

18  Q    Well, you indicated a moment ago that the information

19  contained on this chart --

20  A    Yes.

21  Q    -- is consistent with the bank records you reviewed.  Is

22  that true?

23  A    Yes.

24  Q    As it relates to those bank records, in reviewing those

25  bank records, do those bank records review -- reflect the bank

1  records --

2  A    Bank records do not reflect the percentage.

3  Q    Well, from where do those percentages drop?

4  A    From this record here.  From Jowdy's records directly.

5  Q    When you say "Jowdy produced," we are talking about

6  records produced by his attorney Tom Harvey to you, correct?

7  A    To the government, yes.

8  Q    With reference to your testimony concerning the accuracy

9  of this particular chart, I believe you testified that it is

10  accurate because you reviewed the bank records.

11           Is that true?

12  A    Yes.  Some bank records and some -- and the letter that

13  was -- we spoke about before.

14  Q    Which letter are we talking about?

15  A    The letter from Phillip Kenner to Atilio discussing the

16  amount.

17  Q    My question is simply this, sir, with reference to the

18  columns that are indicated, Date, From, To, Amount, and Pers.

19  Do you see those columns?

20  A    Yes.

21  Q    The information contained in those columns, according to

22  your testimony, you were able to verify the accuracy of that

23  information by examining the bank records.

24           Is that true?

25  A    Not all of them.  But, yes, some of them.

WAYNE-VOIR DIRE-HALEY                          16

1  Q     But those bank records do not reflect anything that

2  relates to column 4, Notes, 1 percent, 1 percent, 5 percent,

3  do they?

4  A     They do not.

5             MR. HALEY:  I object to the admissibility of that

6  document, Judge, as relates to that column that reflects

7  notes.

8             THE COURT:  I am not even sure the agent testified

9  to that.

10            Do you know what that column represents?  When it

11 represents percentages, do you know what that represents or

12 not?  They are percentages of what?

13            THE WITNESS:  I believe it is the ownership in

14 certain, you know, properties.

15            THE COURT:  Is the government introducing this

16 document for the purposes of the notes column or which

17 columns?

18            MS. LEONARDO:  Your Honor, with regard to the

19 investor deposits which were verified in the defendant's

20 e-mail to Mr. Jowdy regarding deposits, what are Exhibit 60,

21 61, and 62.

22            THE COURT:  You are only concerned about the dollar

23 amounts and where and when?

24            MS. LEONARDO:  That is correct.

25            THE COURT:  I am not going to consider the notes

1  column now.

2            MR. HALEY:  Thank you.

3            THE COURT:  44 is admitted, striking the notes

4  column.

5            (So marked as Forfeiture Exhibit 44 in evidence.)

6  CONTINUED DIRECT EXAMINATION

7  BY MS. LEONARDO:

8  Q    Agent Wayne, I am going to ask you to look at Forfeiture

9  Exhibit --

10            THE COURT:  I'm sorry.  I didn't ask you,

11  Mr. Conway.  Do you have any objection to that?

12            MR. CONWAY:  Based on your ruling, Your Honor, I

13  don't.

14            THE COURT:  Go ahead.

15  Q    I will ask you to look at Exhibits 54 and 57.

16  A    Yes.

17  Q    Agent Wayne, looking at those exhibits, do you recognize

18  those?

19  A    Yes.

20  Q    What do you recognize it to be?

21  A    These are e-mails.  54 is an e-mail between Kenner and

22  Jowdy discussing money coming down to Kenner and then some --

23  there is money coming back up to Kenner.  Money coming down to

24  Jowdy, some money going back up to Kenner.

25            And 57 is a record from the SEC about Mike Peca's

1  money going down to Schwab wires, the money going down to

2  Baja.  This is a Jowdy run company, and the money returning.

3  Q    Looking at Exhibit 54, which is an e-mail exchange, where

4  did the government receive that document?

5  A    From Jowdy's attorney.

6  Q    With regard to Forfeiture Exhibit 57, where did the

7  government receive that document?

8  A    The SEC.

9  Q    Again, that was Mr. Kenner's production to the SEC?

10  A    Mr. Kenner's production, yes.

11  Q    In addition to looking at those two documents, did you

12  also look at the bank records for Ula Makika to verify that

13  deposits were coming from Baja Development to Ula Makika?

14  A    Yes.

15  Q    That was Exhibit Ula Makika 2110?

16  A    Yes.

17        MS. LEONARDO:  Your Honor, we would offer exhibits

18  54 and 57.

19        MR. HALEY:  I have no objection to FORF-57.  However

20  I must again, Judge, repeat what is at least a standing

21  objection as relates to what I believe the government's

22  derogation under Rule 16 in this proceeding to provide

23  documentary evidence pursuant to the rule in advance of the

24  trial.

25        FORF-54 is not a document that was provided to us by

1   way of Rule 16 material preceding the commencement of the

2   trial.  What we are learning during the course of this

3   particular hearing, the testimony of this witness thus far,

4   there apparently were communications between the government

5   and Mr. Jowdy's attorney prior to the commencement of the

6   forfeiture hearing, but apparently renewed communications

7   subsequent to the trial wherein he began to provide documents

8   of this nature, specifically FORF-54, to the government.

9           I would object to the admissibility of this document

10  for failure to abide by this Court's repeated orders that the

11  government provide all Rule 16 material to the defense in the

12  advance of trial.  Your Honor may have some memory that there

13  were a few instances where the government needed additional

14  time, and one specific -- actually, two specific instances

15  where the Court asked the government when will Rule 16 be

16  completed, and a representation was made to the Court that

17  Rule 16 would be completed by a specific date.

18          So I object to the admissibility of this particular

19  document as not having been previously provided to the defense

20  by virtue of our -- or the government's Rule 16 obligations.

21          Thank you.

22          MR. CONWAY:  I join in Mr. Haley's objection.

23          MS. LEONARDO:  Your Honor, if I may, I can just

24  clear this up right now.  There is a Bates stamp at the bottom

25  of 19617.  It was four CD of documents that were turned over

1    to the defense attorneys prior to the beginning of the trial,

2    and those are our Bates stamp numbers showing that this was

3    turned over in advance of the trial.

4           THE COURT:  So these weren't produced for the first

5    time between the end of the trial and the forfeiture hearing,

6    they were provided prior to trial?

7           MS. LEONARDO:  That is correct, Your Honor.

8           MR. HALEY:  Judge, if I may?

9           Was this document produced as part of the December

10   15, 2015 Rule 16 disclosure which occurred subsequent to the

11   trial?

12          MS. LEONARDO:  It was produced during the course of

13   the -- prior to the trial.

14          THE COURT:  Did you agree to reproduce this?

15          MS. LEONARDO:  Your Honor, I don't know if I

16   reproduced it.  But in producing documents, I only produced

17   additional documents, not the 2 million pages that were turned

18   over prior to trial.

19          THE COURT:  But you may have reproduced this

20   recently because you were going to rely on it?  Is that

21   possible?  I am confused as to why it wasn't provided to the

22   defendants.

23          MS. LEONARDO:  Your Honor, I do not recall.  I sent

24   documents to counsel in October and December.  I don't recall

25   if this was an additional document that I put in there.  But

1    it clearly was produced prior to the beginning of the trial.

2            MR. HALEY:  Your Honor, if I may, as the Court is

3    aware approximately 2 million documents were produced by way

4    of Rule 16.  We did receive in October or December additional

5    documents provided by the government that contained many, many

6    additional documents in terms of bank records and e-mails and

7    things of that nature, as I recall.

8            Frankly, Judge, I am not going to represent as an

9    officer of the court that I looked at each and every one of

10   those documents.  I did not.  I did a cursory gross

11   examination of the documents.  I guess the government's

12   representation is that this specific document because they are

13   the ones providing the documents, Judge, presumably they and

14   their agents have a better understanding of what was provided

15   before trial and what was provided after trial.

16           The government's representation that these

17   particular documents were provided, as reflected in FORF-54,

18   in advance of the trial, during the course of this proceeding,

19   I will accept their representation and withdraw my objection.

20           THE COURT:  You can, obviously, double check that.

21           MR. HALEY:  I will.

22           MR. CONWAY:  Judge, I will just say for the record,

23   I have never seen this document before.  The Bates stamps on

24   the bottom, it is the first time I have seen the Bates stamps

25   in that fashion.  As you can see from the other documents

1  today, the way they Bates stamped documents throughout the

2  trial and this hearing are far different from this.  I am not

3  sure where this document comes from.  But for today's purposes

4  I guess we will let it go and see where we go with it.

5           THE COURT:  Based upon the government's

6  representation, I am going to admit it into evidence.

7  Obviously, you can go back and check and have a conversation

8  with the government why the Bates stamping is different.  But

9  unless you are able to show me this was not provided prior to

10  the trial I will allow it into evidence.

11          Go ahead.  And that is 54 and 57?

12          MS. LEONARDO:  Okay.

13          THE COURT:  There is no objection to 57?

14          MR. CONWAY:  No.

15          MR. HALEY:  No objection.

16          THE COURT:  54 and 57 are admitted.

17          (So marked as Forfeiture Exhibit 54 and 57 in

18  evidence.)

19  CONTINUED DIRECT EXAMINATION

20  BY MS. LEONARDO:

21  Q    Agent Wayne, I would like to draw your attention to what

22  we have labeled as Chart 27, which I believe we discussed at

23  the last hearing.

24  A    Yes.

25  Q    In looking at Chart 27, can you describe for the Court

1  how you made this chart?

2  A    I reviewed bank records, I reviewed Forfeiture 54 and

3  Forfeiture 57 and Forfeiture 44, and also bank records that

4  are already in evidence at the criminal trial, that showed

5  money from players going to Baja Development and going either

6  that day or the day after, soon after going to Ula Makika.

7  And then in some instances, going then to CMD.

8          MS. LEONARDO:  Your Honor, I would offer Chart 27

9  into evidence.

10         MR. HALEY:  I object.  As I understand this chart

11 the government now during the course of a forfeiture hearing

12 purports to allege additional fraudulent conduct not set forth

13 in the allegations of the indictment that served for the

14 prosecution of Mr. Kenner in the trial of this matter by way

15 of this particular chart; CSL Properties' Capital

16 Contributions by Virtue of a Kenner Controlled Account.

17         CSL Properties was not, as I recall, was part and

18 parcel of the alleged fraudulent schemes set forth in the

19 indictment.  Your Honor's well aware of what the alleged

20 fraudulent schemes involved, the last allegations being Hawaii

21 Land Development, Eufora, Global Settlement Fund, and Led

22 Better.

23         If the issue before this Court for its determination

24 in a forfeiture hearing is a nexus between the property the

25 government looks to seize and the offense committed, and the

1   offense committed was not alleged nor even considered by the

2   trier of fact upon the trial of the matter, to introduce in a

3   forfeiture hearing what at least I perceive to be some sort of

4   allegation within the context of this document that there was

5   some fraudulent activity when hockey player clients made

6   contributions through CSL Properties and Baja Development, I

7   would respectfully suggest to the Court is not part and parcel

8   of a forfeiture hearing based upon what the law permits and

9   the issue to be decided by the Court in the course of such a

10  hearing.

11          THE COURT:  I understand.  You obviously have that

12  standing objection to certain items that were seized in the

13  forfeiture but I will reserve on that.  Your objection is

14  noted.

15          I assume, Mr. Conway --

16          MR. CONWAY:  I am joining in that objection, Your

17  Honor.

18          THE COURT:  So I am reserving on that issue but,

19  otherwise, you said 27.

20          MS. LEONARDO:  I am sorry.  Chart 27, Your Honor.

21          THE COURT:  Chart 27 is admitted as a summary chart.

22          (So marked as Chart 27 in evidence.)

23  CONTINUED DIRECT EXAMINATION

24  BY MS. LEONARDO:

25  Q    Agent Wayne, I want to direct your attention to Exhibit

1   52.

2   A     Yes.

3   Q     Looking at what is marked as Forfeiture Exhibit 52, is

4   that the same e-mail as Forfeiture Exhibit 49 which the Court

5   reserved decision on the last time?

6   A     Yes.

7   Q     Exhibit 52, can you describe what that is?

8   A     It is an e-mail from Bob Gaudet, Bryan Berard stating the

9   investors and the amounts that they put in.

10  Q     Where did the government get that?

11  A     From Bob Gaudet.

12          MS. LEONARDO:  Your Honor, I offer 52 just to

13  replace 49.  There was an objection the last time with regard

14  to how it got to the government.

15          THE COURT:  This came directly from Bob Gaudet?

16          THE WITNESS:  Yes.

17          THE COURT:  Is there still an objection?

18          MR. HALEY:  Your Honor, only insofar as the hearsay

19  nature of the document.  I know hearsay is admissible for

20  purposes of a forfeiture hearing.  I have every reason to

21  believe the judge will give the defense the same latitude by

22  way of hearsay admissions in the course of the hearing.  But

23  this is not -- this agent cannot authenticate this document.

24  He is not Bob Gaudet.  He is not a recipient of the document.

25  He is simply saying this is something we received in the

1    course of our investigation and we now offer it as an exhibit

2    because we received it during our investigation.

3              MR. CONWAY:  Your Honor, in addition to that, I

4    would ask that this be part of the standing objection we have

5    because this is dealing with the Providence property which

6    again was not part of the trial.

7              THE COURT:  Again, I am reserving on the hearsay

8    objections and, obviously, on that objection as well in terms

9    of what property it relates to.  I just want to make clear,

10   just for the record, on cross-examination you should cross the

11   agent on any issue or exhibit I reserved on.  You should

12   assume it is going to come in and do all your cross because

13   you are not going to get another opportunity to do that.

14             So I am reserving on this exhibit as well, 52.

15             (So marked as Forfeiture Exhibit 52 in evidence.)

16   CONTINUED DIRECT EXAMINATION

17   BY MS. LEONARDO:

18   Q    Agent Wayne, as a follow-up as to what we discussed the

19   last time as to the Sugar Mill property, I would ask you to

20   look at Forfeiture Exhibit 56.

21   A    Yes.

22   Q    Do you recognize that?

23   A    Yes.  It is the title records for the Sugar Mill

24   property.

25   Q    Where did the government receive that?

1    A     From the title company.

2              MS. LEONARDO:  I offer Forfeiture Exhibit 56.

3              MR. HALEY:  Objection.  As otherwise stated we have

4    no objection.

5              MR. CONWAY:  The same, Your Honor.

6              THE COURT:  So 56 is admitted subject to reserving

7    on the issue of the property that it relates to.

8              (So marked as Forfeiture Exhibit 56 in evidence.)

9    Q     Agent Wayne, with regards to Exhibit 56 you also verified

10   other represented evidence, namely Government Exhibit 2015,

11   the Little Isle IV trust statement to verify that Little Isle

12   made a wire transfer for the Sugar Mill property?

13   A     Yes.

14   Q     Agent, I want to direct your attention to Forfeiture

15   Exhibit 13.

16   A     Yes.

17   Q     Agent, looking at Exhibit 13, Forfeiture Exhibit 13, do

18   you recognize that?

19   A     Yes.

20   Q     What is that?

21   A     It is an assignment of a condo unit to JMT.

22   Q     Where did the government obtain this document?

23   A     The Palms Casino.

24   Q     As far as your understanding, it is the consignment of a

25   Palms unit to JMT, correct?

1  A    Right.

2           MS. LEONARDO:  Your Honor, I will offer it into

3  evidence as Exhibit 13.

4           MR. HALEY:  Subject to the standing objection, no

5  objection.

6           THE COURT:  Admitted subject to the standing

7  objection.

8           (So marked as Forfeiture Exhibit 13 in evidence.)

9  Q    Agent, I would like to direct your attention to

10  Forfeiture Exhibit 55.

11          Do you recognize what that is?

12  A    Yes.

13  Q    What do you recognize it to be?

14  A    It is an e-mail from JMT to Phil Kenner.

15  Q    Do you know where the government received that document?

16  A    From Jowdy's attorney.

17  Q    After the government received this document, did you have

18  a conversation with JMT about this e-mail?

19  A    Yes.

20  Q    In addition to conversations you had about the e-mail,

21  was there also evidence submitted during the criminal trial

22  with regards to the text messages between Phil Kenner and JMT?

23  A    Yes.

24  Q    That was Government Exhibit 4511 at the trial?

25  A    Yes.

1  Q    In your conversations with JMT, did he speak to you about

2  the Palms?

3  A    Yes.

4           MS. LEONARDO:  Your Honor, I will offer Exhibit 35.

5           MR. HALEY:  Judge, I am not detecting a Bates stamp

6  on this particular document.

7           So this was also provided in advance of trial is the

8  government's representation?

9           MS. LEONARDO:  I would have to double check.

10          MR. HALEY:  That is my first objection.

11          My second objection is this, Judge.  You review this

12  document, this three-page document -- and I know hearsay is

13  admissible, and the Court will determine the extent that such

14  hearsay is admissible, and to the extent such matter is going

15  to be considered by the Court -- this three-page document

16  contains a litany of personal complaints by Mr. McKee back in

17  2010 with reference to his relationship with Phil Kenner and

18  investments which were recommended by Phil, investments that

19  didn't work out, his view of what transpired.  A litany of

20  complaints.

21          This document is so unduly prejudicial for the

22  defendant when the defense does not have an opportunity to

23  cross examine Mr. McKee regarding the accuracy of anything

24  contained in this document.  It is a blatant attempt, I submit

25  to the Court, to embellish a record, to further demonstrate

1  the unsupported allegations by various hockey player clients

2  who may have had any number of disputes with Phil Kenner

3  regarding their investments, whether they were advisable or

4  whether they weren't, they made money on the investments or

5  they didn't make money on the investments.

6          I object.

7          MR. CONWAY:  I join in that, Your Honor.

8          THE COURT:  I am reserving on this one as well.

9  Obviously, Mr. McKee testified at the trial.  So it is not as

10  if he didn't testify at all.  I didn't have a chance to go

11  through the e-mail and see whether the matters were raised in

12  this e-mail, whether they related to his trial testimony or

13  related to other matters.

14          In any event, I am reserving on this issue.  So I

15  will reserve on 55.

16          MS. LEONARDO:  Your Honor, I know you are reserving

17  on 55.  I would point out to the Court that with regard to

18  text messages that were admitted into evidence during the

19  trial, they discussed payments that Mr. McKee was making to

20  the Palms.  That was discussed during the criminal trial.

21          THE COURT:  Again, I have to go back and compare

22  this e-mail to what his testimony was and what the text

23  messages were.  I can't do it at the moment.

24          MR. HALEY:  Judge, I don't dispute that aspect of

25  it.  But that document the government is introducing into

1   evidence goes far beyond the specific e-mails that were at

2   issue during the course of the trial.  He talks about a myriad

3   of other matters and complaints he has.

4            THE COURT:  I will look it over.

5            MR. HALEY:  Thank you.

6            THE COURT:  And also, if the government, at the

7   hearing today can just verify if this is a new e-mail or

8   something that was provided prior to trial.

9            MS. LEONARDO:  I will double check.

10           (So marked as Forfeiture Exhibit 55 in evidence.)

11  CONTINUED DIRECT EXAMINATION

12  MS. LEONARDO:

13  Q    Agent Wayne, I would just ask you to look at Forfeiture

14  Exhibit 69.

15  A    Yes.

16  Q    In addition to what you testified to on the first date of

17  the hearing with regard to Michael Peca --

18  A    Yes.

19  Q    -- I believe you introduced into evidence Chart 22?

20  A    Yes.

21  Q    With regard to the payment for the Palms coming from CMD

22  Management?

23  A    Right.

24  Q    It is also already in evidence during the criminal trial

25  as Exhibit 1753 and 1751.

1    A    Yes.

2    Q    There are checks with regard to Mr. Peca's unit in

3    evidence, in those exhibits, correct?

4    A    That is correct.

5    Q    Looking at Exhibit 69, what is that?

6    A    Well, this second check is the one that -- it is a

7    $100,000 check from Constantine Management Group to Stewart

8    Title for, it says the unit in the memo, C-6304.

9    Q    This came from CMG bank records?

10   A    No.  This came from the Palms.

11   Q    Did you verify it with the CMG bank statements?

12   A    Yes.  The bank statement shows that $100,000 check, and

13   the check number is 1051.

14        MS. LEONARDO:  I will offer Exhibit 69 in evidence.

15        MR. CONWAY:  The standing objection.

16        MR. HALEY:  The same thing.

17        THE COURT:  Subject to the Court's ruling on

18   Exhibit 69, it is admitted.

19        (So marked as Forfeiture Exhibit 69 in evidence.)

20   Q    Agent Wayne, looking at Forfeiture Exhibit 32 and 67.

21   A    What was the other number?

22   Q    32 and 67.

23   A    Okay.

24   Q    Looking at Exhibit 32, do you recognize that?

25   A    Yes.  It is the Diamante del Mar general ledger.

1    Q    Where did the government obtain that?

2    A    From Jowdy's attorney.

3    Q    Was it also produced to the SEC?

4    A    Yes.

5    Q    The numbers on it indicate PK-SEC?

6    A    Yes.

7    Q    So this was a copy received from Jowdy's attorney and

8    copied to the SEC?

9    A    I am not sure about Jowdy's attorney.  I misspoke.  It

10   came from the SEC.

11   Q    Exhibit 67, do you recognize that?

12            THE COURT:  What number is that?

13            MS. LEONARDO:  67.

14            THE COURT:  The prior one?

15            MS. LEONARDO:  32.

16            THE COURT:  32.

17   A    Yes.  It is an e-mail between Ken Jowdy and Phil Kenner

18   discussing money going down for ASI, which is a loan.

19   Q    The last time we were here the Court reserved on

20   Exhibit 31.  Can you look at 31 and tell us about it?

21   A    It is an e-mail between Phil Kenner and Antinello.

22   Q    In sum and substance what is the e-mail about?

23   A    It is talking about his investments.  One of them being a

24   Hawaii investment of 100,000.

25   Q    In looking at the e-mail contained in 67 and the ledger

Case 2:13-cr-00607-JFB-AYS  Document 369  Filed 03/23/16  Page 34 of 105 PageID #: 9361

1   what, if anything, occurred with Mr. Stumpel?

2   A    $100,000 went to Little Isle, and then from there money

3   goes to Ula Makika, and from there it goes to Diamante del

4   Mar.

5   Q    How many went from Ula Makika to Diamante del Mar?

6   A    40,000.

7   Q    According to this e-mail when did that occur?

8   A    11/15/2005.

9   Q    Looking at the DDM ledger, does the DDM ledger indicate

10  that there was a $40,000 wire transfer?

11  A    Yes.

12  Q    Where does that go?

13  A    It goes to KSI Capital to pay for attorney fees at

14  closing.

15  Q    Did you confirm this with Little Isle records that are in

16  evidence at 2101 at pages 189 to 191?

17  A    Yes.

18  Q    And the Ula Makika records that show a $40,000 wire

19  transfer to DDM, correct?

20  A    Yes.

21        MS. LEONARDO:  Your Honor, we will offer Exhibit 32

22  and 67.

23        THE COURT:  Did you say 32-SEC on the bottom of it?

24  Did you say that?  I don't see that on the document.

25        MS. LEONARDO:  Your Honor, I am sorry.  We had an

1  original 32 that I had replaced with the SEC one.  You should

2  have a copy of it.

3           MR. HALEY:  We do have one that reveals it has an

4  SEC designation.

5           THE COURT:  Any objection to 32 or 67?

6           MR. HALEY:  Judge, the same objection.

7           MR. CONWAY:  Judge, I have a standing objection.

8           Also, going back, this document 67 appears to be the

9  same -- and I don't know the exhibit number, but we are

10  arguing that this document we may not have been given at all.

11  It has the same type of Bates stamp number that we argue, I

12  believe, Exhibit 54.

13           Again, this is not a document that we recall.  This

14  could have been a document that I think would have been

15  helpful at trial.  I don't recall seeing it and I don't know

16  if we ever got it before.  So I will put the objection in and

17  request that the Court ask the government to go back and check

18  it if this was ever produced to defense prior to now.

19           THE COURT:  That one has a KJ marking on it, KJ

20  2585.  Do you know if that was in evidence before at the trial

21  or not?

22           MS. LEONARDO:  Your Honor, I believe it was just

23  before trial.  I will verify that.  I believe with the Bates

24  numbering, that may have been documents produced from the

25  defendant to us in typical discovery.  I will verify that,

1   Your Honor.

2          THE COURT:  Okay.  KJ, is that Kenneth Jowdy?

3          MS. LEONARDO:  I would think that it would be, but I

4   am not sure if it came from our production to the defendants

5   or the defendant's typical production.

6          THE COURT:  Just double check that.  I am admitting

7   those subject to resolving the standing objection and,

8   obviously, having you verify it.  I am talking about Exhibit

9   67, and the standing objection applies to Exhibit 32.

10         (So marked as Forfeiture Exhibit 32 and 67 in

11  evidence.)

12         MS. LEONARDO:  May I have one moment, Your Honor?

13         THE COURT:  Yes.

14         MS. LEONARDO:  Your Honor, I have no further

15  questions.

16         THE COURT:  Do you want to take a short break?  A 10

17  minute break and we will have the cross-examination.

18         (Whereupon a recess was taken at 11:20 a.m.)

19         (Matter continued at 11:38 a.m.)

20         THE CLERK:  All rise.

21         THE COURT:  Please be seated.

22         All right.  Go ahead, Mr. Haley.

23         MR. HALEY:  Thank you, Judge.

24         Judge, I believe I am going to lose the Court's

25  compliment that I was the most technologically smooth attorney

1  during the course of the trial because I am unable to focus

2  this document.  Having said that, Your Honor, Your Honor has a

3  copy of the document on the bench, FORF-1, the search and

4  seizure.

5           THE COURT:  Yes, I have got it.

6           MR. HALEY:  I won't use the overhead projector.

7  CROSS EXAMINATION

8  BY MR. HALEY:

9  Q    Agent Wayne, good morning.

10 A    Good morning.

11 Q    Agent Wayne, you have Chart FORF-1 in front of you?

12 A    Yes.

13 Q    When you testified at the commencement of this proceeding

14 on February 12th, 2016, do you recall if that was the first

15 chart introduced into evidence?

16 A    Yes.

17 Q    There was an inquiry made during the course of the voir

18 dire as to the source of the information you utilized to

19 prepare that chart.

20        Do you recall questions of that nature?

21 A    Yes.

22 Q    Do you recall, on Page 22 Line 19, with reference to the

23 chart the Court asking the following question (reading):

24        "QUESTION:  All the information contained in this

25 chart from things that were in evidence, or some of it --

1          THE WITNESS:  Some of it from information outside

2    the evidence."

3    A    Yes.

4    Q    Would you kindly indicate to the Court what evidence

5    outside the evidence was used to prepare that chart?

6    A    Outside the evidence, what I meant by that was in the

7    criminal trial evidence was put in.  And then we had these

8    documents, the forfeiture documents.  That is the other

9    evidence I was talking about.

10   Q    With reference to the forfeiture documents are you aware

11   that in December of 2015, specifically December 15, 2015,

12   following the conclusion of the trial the government provided

13   additional Rule 16 material on three separate CD disks?

14          Are you aware of that?

15   A    I am aware we provided other documents.

16   Q    Were you part of the team that collected those other

17   documents that were supplied to the defense on December 15,

18   2015?

19   A    Some of those documents, yes.  I was part of that team.

20   Q    Would you kindly identify those documents that were

21   provided in the December 15, 2015 submission that was

22   contained on those CD disks?

23   A    That I provided?

24   Q    Yes, sir.

25   A    The Gaudet documents.

1  Q    I am sorry?

2  A    The Gaudet documents.

3  Q    Were the Gaudet documents utilized in the preparation of

4  one or more of the charts that have been introduced during the

5  course of this forfeiture hearing, yes or no?

6  A    Yes.

7  Q    What charts?

8  A    Well, this chart itself.

9  Q    Meaning Chart 1?

10  A    Chart 1.

11  Q    Okay.

12  A    Let me see if there are any other charts.  I believe that

13  was it.  Chart 23 reflects the schedule, the line of credit

14  money that went to Bob Gaudet, and those records might have

15  also been included but I'm not sure.

16  Q    Now, you testified during the course of your direct

17  examination that information contained in the charts, and your

18  testimony concerning your opinion as to whether or not the

19  property sought to be forfeited is connected to the offense,

20  was based in part on documents that were provided to you by

21  others, is that true?

22  A    Right.

23  Q    In those documents that were provided to you by others,

24  and we know some of it was provided by Mr. Harvey, Mr. Jowdy's

25  attorney, is that correct?

1   A      Right.

2   Q      Did Mr. Jowdy's attorney provide you, sir, with prior

3   testimony of his client concerning the nature of the funds

4   that were sent to him from Little Isle IV to Baja Development?

5   A      I don't know.

6   Q      I am going to ask you to take a look at what has been

7   marked as Exhibit F-1 for identification.  I will staple it.

8   It is currently unstapled.  It is a two-page document.  Just

9   take a look at both pages.

10          MR. HALEY:  I previously provided a copy to the

11  government, Judge.

12          MS. LEONARDO:  Your Honor, I specifically told

13  counsel I would object to the authenticity of this document.

14  It is half a page of a purported deposition transcript.  It

15  doesn't have a page number on it.  It is, obviously, a

16  redacted portion.  I don't know where it came from.  I didn't

17  see the entire document.  I specifically told counsel I would

18  object to it.

19          MR. HALEY:  I said that I would refer to it but I am

20  not offering it into evidence.  We did have an agreement that

21  I would endeavor to obtain a full transcript.  It is an

22  excerpt from that transcript.  If the government wishes to see

23  the full transcript I believe they are entitled to do so, but

24  at this point in time it is only marked for identification.

25  It is a discrete question I have for this witness with regard

1   to that document.

2        THE COURT:  You can ask him a question regarding it.

3   But I think if there is something in Mr. Jowdy's testimony

4   that is inconsistent with what the agent has prepared, I would

5   suggest in your case you introduce it, assuming you can get a

6   full transcript of whatever was said so the government will

7   not have an objection to an excerpt.  I am not sure what he is

8   going to be able to say about this but let's give it a shot.

9        MR. HALEY:  Judge, I don't want to use the word

10  "trust me," but if I could ask the one question?

11       THE COURT:  Go ahead.  I'm trusting you.

12       MR. HALEY:  Thank you.

13  Q    My question is simply this, sir, if you take a look at

14  this document, and the front page of the document, did

15  Mr. Jowdy's attorney, Tom Harvey, provide you a copy of the

16  transcript in connection with the matter entitled "Greg

17  DeVries -- I won't go on -- "versus Kenneth Jowdy," which

18  action was apparently commenced in the Superior Court of the

19  State of California, County of Los Angeles Central District,

20  yes or not?

21  A    I don't know.

22  Q    And seeing this document doesn't refresh your

23  recollection?

24  A    It did not.

25  Q    You told us a moment ago that you relied upon information

1    obtained from other sources as relates to the creation of the

2    chart, Chart 1 and others, as well as your opinion that the

3    property being sought by the government is related to the

4    offense of conviction.

5            MS. LEONARDO:  Your Honor, objection.  That was

6    sustained -- well, it was sustained during the first day of

7    testimony.  He does not have an opinion or knowledge of the

8    indictment.

9            THE COURT:  You don't need to go into whether or not

10   it is covered by the indictment or not.  The first part of the

11   question is okay, all right.  What his opinion is of whether

12   it was covered by the indictment is irrelevant.

13           MR. HALEY:  Judge, if I may, for the purposes of the

14   record the government did elicit this answer in response to

15   this question (reading):

16           "QUESTION:  In addition to those acts, did you also

17   identify assets that were directly traceable to the line of

18   credit money for Global Settlement account money?

19           ANSWER:  Yes."

20           If I may, Judge, he is rendering an opinion as to

21   what is directly traceable to two aspects of the indictment by

22   virtue of his investigation.  So that is why I asked the

23   question.

24           THE COURT:  That part is okay.

25           MR. HALEY:  Okay.

1   Q    Well, sir, is it fair to state that documents that you

2   would often rely upon or did rely upon in forming part of your

3   investigation with reference to the charts and determinations

4   as to the traceability of funds from Global Settlement to,

5   let's say, other assets was based upon documents like 3500

6   material?

7   A    It was documents in 3500 and all the documents that were

8   in evidence from the criminal trial.

9   Q    Even though the Court is well aware 3500 material is

10  what, sir?

11  A    Records that are turned over to the defense.

12  Q    But they are also records generated by the government in

13  connection with its investigation which are then turned over

14  to the defense, is that true?

15  A    Yes.

16  Q    Those records would include, I take it, notes of

17  interviews of witnesses the government intends to present at

18  trial, is that correct?

19  A    It could be those, yes.

20  Q    Well, kindly take a look at Kenner Exhibit F-2.

21       Do you recognize that document?

22  A    Yes.

23  Q    What is it?

24  A    It is a 302.

25       MS. LEONARDO:  Your Honor, can we have a copy,

1  please?

2          MR. HALEY:  I am sorry.  I alerted you to the

3  fact --

4          MS. LEONARDO:  Of what this document is?

5          MR. HALEY:  Yes.  I thought I showed it to you a

6  moment ago before Mr. Wayne took the stand.

7          (Handing to counsel.)

8  Q    What is that, sir?

9  A    It is a record or a report of an interview with Kenneth

10  Jowdy.

11  Q    An interview conducted by who?

12  A    By myself and Matt Galioto.

13  Q    When did that interview take place?

14  A    May 20, 2014.

15  Q    In the course of that interview, did Mr. Jowdy tell

16  you -- I don't need you to look at the entire document.  I am

17  just trying to move it along.

18          In the course of that interview did Mr. Jowdy tell

19  you how Kenner obtained his 39 percent interest in the

20  Diamante Cabo San Lucas project?

21  A    I don't recall him saying that.  But...

22  Q    Would you kindly take a look at Page 2 of Kenner Exhibit

23  F-2.  The third paragraph.  Does that refresh your

24  recollection as to what Mr. Jowdy told you as to how Philip

25  Kenner acquired his 39 percent interest in Diamante Cabo San

Case 2:13-cr-00607-JFB-AYS  Document 369  Filed 03/23/16  Page 45 of 105 PageID #: 9372

1  Lucas?

2  A    Yes.

3  Q    What is your recollection of that, sir?

4  A    That Kenner borrowed the money from Jozef Stumpel and

5  Jerry Linton.

6  Q    It was through the borrowing money from Jerry Linton to

7  Jozef Stumpel that Phil Kenner acquired his 39 percent

8  interest in Diamante Cabo San Lucas through August 2006,

9  correct?

10 A    Can you repeat the question?

11 Q    Sure.  Ken Jowdy told you that the source of funds by

12 which Phillip Kenner acquired his 39 percent in Diamante Cabo

13 San Lucas was through money loaned to him by Jerry Linton and

14 Jozef Stumpel, correct?

15 A    Yes.

16 Q    I want you to take a look at what is marked as Kenner

17 Exhibit F-3.

18       Will you exam that document?

19 A    Yes.

20 Q    Do you recognize that, sir?

21 A    I don't recognize that.

22 Q    Well, in the course of your association with the

23 investigation of Phillip Kenner and Tommy Constantine, were

24 you privy to all of the 3500 material that was generated in

25 that investigation?

1    A    Yes.

2    Q    During the course of that investigation were you privy to

3    statements made by the witnesses who -- other law enforcement

4    agents, specifically FBI agents, though you may not have taken

5    that statement were you privy to that?

6    A    I had access to it, yes.

7    Q    As it relates to Kenner Exhibit F-3, could you tell the

8    Court what this appears to be, given your background and

9    experience with this investigation?

10   A    It appears to be --

11            MS. LEONARDO:  Objection, Your Honor.

12            THE COURT:  Give an offer of proof, Mr. Haley.  What

13   do you believe it to be, 3500 material from a witness?  Which

14   witness?

15            MR. HALEY:  John Kaiser.

16            THE COURT:  What is the government's objection?  Let

17   me just say this.  To streamline Mr. Haley's cross if he has

18   given the government's deference to the hearsay, obviously in

19   this proceeding, if Mr. Haley has any statements of any

20   witnesses at trial or who would have relevant information

21   regarding the funds and the properties that are at issue here

22   I don't see why he can't utilize those and make them a part of

23   the record as well.  If Mr. Kaiser said something inconsistent

24   that Agent Wayne is relying on I don't know why the government

25   would have an objection to it.

1          MS. LEONARDO:  My objection to this is that he is

2    trying to have the witness authenticate the document.  He has

3    already said he wasn't present and he didn't recognize the

4    document.  It is from October 19th of 2010.  He was not

5    present for this interview.

6          THE COURT:  Do you want me to have Mr. Haley call

7    every agent who interviewed Mr. Kaiser or Mr. Jowdy to

8    authenticate it for the Court?  I mean, that is kind of crazy.

9          MS. LEONARDO:  No, Your Honor.  But this witness

10   just testified he is not familiar with this.  He was not

11   involved in the interview.

12         THE COURT:  Given the government's efforts to use

13   hearsay, as I said to Mr. Haley, unless the government is

14   going to suggest to me that one of these reports was not

15   produced by a government agent I will allow you to produce any

16   one of the reports.  If you want to question the witness

17   regarding something you think is inconsistent with the

18   conclusions he has drawn in the analysis of the bank records,

19   I will allow you to do that.

20         MR. HALEY:  Thank you, Your Honor.  Indeed, that is

21   where I was headed.  I felt it important that at least the

22   agent recognizes it is a document that was produced, although

23   by other agents, in the course of the --

24         THE COURT:  To save time, tell me what has been

25   produced to you.  If the government believes you are

1   misrepresenting what it is they can object.

2          MR. HALEY:  As an offer of proof, Judge, these are

3   handwritten notes taken by Scott Romanowski, with Matt Galioto

4   present, concerning the interview of John Kaiser on

5   October 19, 2010.

6          THE COURT:  Okay.  Go ahead.

7   CONTINUED CROSS-EXAMINATION

8   BY MR. HALEY:

9   Q    Agent Wayne, as relates to now what is Kenner Exhibit

10  F-3 -- first of all, are you able to read -- because it is

11  handwritten, are you able to read the handwritten notes on

12  Page 2 of this document?  You see a circle JK, you see another

13  circle KJ.

14         Can you read that handwriting, yes or no?

15  A    Yes.

16  Q    Would you kindly read to yourself where you are able to

17  discern from these handwritten notes from the bottom of Page 2

18  to the first and third portion of Page 3.  Read it to

19  yourself.

20  A    Should I read it?

21  Q    Yes, sir.  If you can understand the writing.  If you

22  can, you can.  If you can't, you can't, and advise us.

23         (Witness reads the document requested.)

24  A    Yes, I read it.

25  Q    As a result of reading that, sir, do those notes refer to

1  statements that John Kaiser made to Scott Romanowski in the

2  presence of Matt Galioto concerning his knowledge of a loan

3  from Hawaii to Ken Jowdy, yes or no?

4  A    It is Hawaii and Mexico.

5  Q    Excuse me, Hawaii and Mexico?

6  A    Yes.

7  Q    Do you recall Exhibit 43 being introduced as a defense

8  exhibit during the course of the trial?

9  A    No.

10  Q    Were you present during the testimony of Phil Kenner

11  during the course of the trial, sir?

12  A    Yes.

13  Q    Did you hear his testimony regarding money, loans that

14  flowed from Hawaii, hockey player client's money, to Ken Jowdy

15  by way of a loan for purposes of development of Diamante Cabo

16  San Lucas?

17  A    I think he said it was money going down from -- I don't

18  know if it was Hawaii, money going to Mexico.  I am not sure

19  he specifically mentioned Cabo San Lucas.  I would have to

20  review the record of his testimony.

21  Q    Your best recollection during the course of the testimony

22  is he characterized these monies as being loans as opposed to

23  investments, correct?

24  A    Yes.

25  Q    Now, Chart 24, which is in evidence reflects -- this was

WAYNE-CROSS-HALEY                              50

1    your testimony -- monies coming from the various lines of

2    credit, various hockey player clients, correct?

3    A     Yes.

4    Q     Into Little Isle IV, correct?

5    A     Right.

6    Q     And then to Baja Development Corp, is that correct?

7    A     Baja and Diamante.

8    Q     Baja and Diamante, correct.

9    A     Yes.

10   Q     Those monies, as best you know, that flowed from Little

11   Isle IV to Baja Development Corp were monies loaned were they

12   not?

13   A     According to Kenner's testimony that is what he said.

14   Q     As a matter of fact a loan, according to Kenner's

15   testimony, with a rate of return of 15 percent, is that

16   correct?

17   A     I believe that is what he said, yes.

18   Q     Indeed is it fair to state, sir, that Chart 26 also

19   reflects -- I believe Chart 26 is 1, 2, 3, 4, 5, 6, 7 in

20   length.

21   A     Yes.

22   Q     Does that also reflect money coming from a line of credit

23   to Little Isle IV and then to a particular individual, is that

24   correct?

25   A     Yes.

1   Q     That individual was actually the owner of the property in

2   Diamante Cabo San Lucas, is that correct?

3   A     Yes.

4   Q     Based on Kenner's testimony was that part of the loan to

5   Baja Development Corp or an entity controlled by Ken Jowdy for

6   purposes of developing the Cabo San Lucas property?

7   A     I would have to review his testimony.  He got specific

8   with the transactions.

9   Q     But all your charts reflect that money comes out of a

10  line of credit, goes to Little Isle IV, and then goes to the

11  owner of the property of Diamante Cabo San Lucas, correct?

12  A     In this first chart, yes.

13  Q     In the second chart as well, the same owners, correct?

14  A     Yes.

15  Q     In the third chart?

16  A     Yes.

17  Q     In the fourth?

18  A     Yes.

19  Q     The fifth is different.  The sixth, the last page.

20  A     Yes.

21  Q     Now Diamante Cabo San Lucas is currently an entity in

22  operation, is that true?

23  A     Yes.

24  Q     Rather than elicit it because I know we have a trial

25  transcript, but this transcript may have a different part of

1    consideration by an appellate court or not.

2         Diamante Cabo San Lucas is not only an ongoing

3    operation but it is an operation, to the best of your

4    knowledge, run and controlled by Ken Jowdy, is that correct?

5    A    That is correct.

6    Q    The same Ken Jowdy who has refused to employ the witness

7    John Kaiser, who testified here?

8         MS. LEONARDO:  Your Honor, objection to relevance.

9         THE COURT:  Sustained.  We have already covered this

10   during the trial.

11        MR. HALEY:  Okay.  Very well.

12   Q    Returning to Chart 1, sir.  Let's go to the fourth

13   column, Diamante Cabo San Lucas.

14        Do you see that?

15   A    The fourth column?

16   Q    I am sorry.  The last column.

17   A    Yes.

18   Q    We are on FORF-1, correct?

19   A    Yes.

20   Q    You have in that column $100,000 related to each line

21   which says, that we can read, a reference to Diamante Cabo San

22   Lucas.

23        Do you see that?

24   A    Yes.

25   Q    Sir, that was a deposit made by Greg DeVries in the

1    amount of $100,000 for purposes of obtaining an investment

2    interest in Diamante Cabo San Lucas, correct?

3    A     Yes.

4    Q     With reference to the 15 hundred (sic) under Jerry

5    Linton, that was also money transferred to Ken Jowdy from an

6    account credited to Jerry Linton for purposes of Mr. Linton

7    acquiring an ownership interest in Diamante Cabo San Lucas or

8    someone else?

9    A     I believe it was a loan of 1.5 million.

10   Q     And you say, "the loan."  This was the loan that Jerry

11   Linton made to Phil Kenner for the purposes of Phil Kenner

12   acquiring his 39 percent interest in Diamante Cabo San Lucas?

13   A     The loan that Linton made to Phil Kenner?  It is unclear.

14   Some documents that were seen were going to Phil Kenner and

15   some were a loan to Jowdy.  To me, it is unclear whether it is

16   a loan to Kenner or Jowdy.

17   Q     As relates to the $100,000 that Greg DeVries sent to Ken

18   Jowdy for purposes of acquiring an investment interest in

19   Diamante Cabo San Lucas, as relates to that, what if any

20   material misrepresentations did Phil Kenner make to Greg

21   DeVries as relates to Greg DeVries' decision to invest in

22   Diamante Cabo San Lucas in order to obtain an equity interest?

23            MS. LEONARDO:  Objection, Your Honor.

24            THE COURT:  Any statement that DeVries made to him I

25   will allow that, but he is not going to sit up here and try to

1   be a summary witness of whatever interviews may exist in the

2   world.  It may be a misrepresentation or not.  He is just

3   testifying as to the tracking of the money and entities, as he

4   has testified.

5           MR. HALEY:  May I make an offer of proof so the

6   Court can understand the relevance from my perspective.

7           THE COURT:  Yes.  I am not saying it is not

8   relevant.  If you have other evidence you want to make me

9   aware of it is fine.

10          What is your offer of proof?

11          MR. HALEY:  Your Honor, what I view as to what is

12  occurring here is the government is seeking now by virtue of a

13  forfeiture hearing to identify other investments made by

14  hockey player clients into other matters, specifically

15  Diamante Cabo San Lucas; specifically Diamante del Mar -- that

16  has no relationship whatsoever to the offenses of conviction.

17          What they are seeking to do here Judge is say, okay,

18  from our perspective Mr. Kenner defrauded his hockey player

19  clients with respect to the Hawaii Land Development; with

20  respect to Eufora; with respect to Global Settlement Fund; and

21  with respect to the Led Better project.  But now that we are

22  in forfeiture we want to throw into a chart other investments

23  made by clients of Mr. Kenner as relates to properties that

24  weren't connected with Hawaii Land Development and argue that

25  those properties are to be forfeited.

Case 2:13-cr-00607-JFB-AYS   Document 369   Filed 03/23/16   Page 55 of 105 PageID #: 9382

1    THE COURT:  I understand that argument but you can

2  just point that out to me in your summation or if you want to

3  make a written submission.  To the extent you think that is

4  what the government is doing in pointing to particular items

5  of money that there is no evidence in the record that there

6  was any omission or misrepresentation to the hockey player

7  regarding that particular investment, even if they put on

8  testimony at trial that there was some other aspect of the

9  investment, if you believe there was no testimony at the trial

10  or no testimony to support that there was some type of

11  misrepresentation made for a particular investment I would be

12  happy to look at that.

13    MR. HALEY:  Okay.

14    THE COURT:  I just don't think it is going to be

15  productive.  The agent is not capable of sorting through the

16  whole record.  It is the government's burden to prove that.

17    MR. HALEY:  I asked the question because I knew the

18  answer.  The answer is simply this, there is no evidence that

19  I have come across that Mr. Kenner ever made a material

20  misrepresentation to Greg DeVries getting Greg DeVries to make

21  a conscious decision to invest in Diamante del Mar.

22    That is why I asked the question.

23    THE COURT:  Okay.

24    You may continue.

25  CONTINUED CROSS-EXAMINATION

1    BY MR. HALEY:

2    Q    If I could, sir, as relates to all of the monies that are

3    reflected in column -- the last column of FORF-1, Diamante

4    Cabo San Lucas.  Those were monies that were directly

5    deposited in some sense from those individuals to Diamante

6    Cabo San Lucas for the purpose of those individuals acquiring

7    investment interest in that entity, Diamante Cabo San Lucas,

8    with the exception of the $1,500 from Jerry Linton and the

9    monies that flowed from Joseph Stumpel, is that correct?

10   A    It is 1.5 million, for the record.

11   Q    Yes.

12   A    Yes, you are correct.

13            (Matter continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

1    CROSS-EXAMINATION  (Continuing)

2    BY MR. HALEY:

3    Q    Let's go to column 9, the Diamante Del Mar property.

4    A    Yes.

5    Q    Similarly, are the amounts reflected in those columns

6    the functions of money flowing from the various

7    individuals that are listed on your chart to Diamante Del

8    Mar for purposes of those individuals acquiring an

9    investment interest in Diamante Del Mar?

10   A    Yes.

11              THE COURT:  Let me ask Ms. Leonardo to address

12   that issue first.

13              You understand what his argument is,

14   Ms. Leonardo?  In other words, his argument is that it's

15   one thing to say, obviously we had much proof about it at

16   the trial, that quantity of money was money that was

17   invested by hockey players in Hawaii, was taken from

18   Hawaii and moved to Mexico, to an investment in Mexico

19   without their authorization.

20              Mr. Haley is arguing that there are other monies

21   that were directly put by the hockey players into either

22   Diamante Del Mar or Diamante Cabo San Lucas that did not

23   come out of Hawaii that were direct investments, whatever

24   they might be.  And that the suggestion is that there is

25   an absence of proof in the record that that was

58

1    unauthorized for any particular hockey player.

2           So what is your response to that?

3           MS. LEONARDO:  Your Honor, I'm just going to

4    have Ms. O'Connor to address this.

5           MS. O'CONNOR:  Your Honor, that might not be an

6    exact certainly since that money was sent there for

7    investments.  However, it's still relevant for purposes of

8    this trial because it's property involved in money

9    laundering transactions.  And in certain cases proceeds in

10   that but for the fraudulent proceeds defendants would not

11   have been seeing these funds, these legitimate investment

12   funds to make the purchases.

13          So these are more legal arguments that could be

14   addressed in our briefs.

15          THE COURT:  But the legal argument the

16   government is going to make is that even if there was no

17   misrepresentation made with respect to that particular

18   investment because they were being defrauded on some other

19   investment, they would not have made that investment if

20   they had known they had been defrauded.  And that's the

21   argument.

22          MS. O'CONNOR:  Depending on certain things,

23   actually.  However, legitimate investment money was at

24   times co-mingled with fraudulent proceeds for the

25   purchases of property.  And that is how it is relevant in

59

1      this trial in determining the amount of the forfeiture.

2              THE COURT:  Why can't I just determine the

3      amount of forfeiture, putting aside your issue, a separate

4      legal issue of whether or not your first argument would

5      carry weight.

6              But on the issue of commingling, why wouldn't it

7      be, why couldn't the Court just determine what money went

8      from Hawaii to the entity that was unauthorized and order

9      that amount or percentage forfeited?  Why does the

10     co-mingling matter?

11             MS. O'CONNOR:  Well, the law recognizes that

12     when these funds are co-mingled with tainted funds, under

13     the money laundering conspiracy you're unable to consider

14     all of the money involved that went to the purchase of the

15     property.

16             THE COURT:  Okay.  Go ahead.

17             MR. HALEY:  Your Honor, maybe direct, maybe we

18     can expedite matters.  There is another issue, if the

19     Court can't understand the relevance.

20             As we know, there was no special verdict here.

21     So the government cannot argue by virtue of the verdict

22     itself that the jury made a determination that there was

23     wire mail fraud associated with each of the four separate

24     schemes alleged in the indictment.

25             The Court presumably as the sentencing Court,

60

1   and indeed for purposes of a forfeiture determination, may

2   reach other conclusions based upon a different standard.

3   And I don't dispute that potential authority of the Court.

4          Here is my argument though, judge, so the Court

5   can understand where I'm going with reference to other

6   questions asked of this witness, and even questions that

7   the defense will present in its presentation.

8          There was money that we acknowledge that flowed

9   from Hawaii to Baja Development Corp for purposes of, as

10  has been testified to, the acquisition of land in Diamante

11  Del Mar as well as Diamante Cabo San Lucas and the

12  development of those two properties.

13         Mr. Kenner testified that those monies that

14  flowed from Hawaii or its entities, corporate banking

15  entities, Ula Makika corporate accounts were loans to Ken

16  Jowdy, where it is anticipated that there would be a 15

17  percent return on those loans.

18         There was testimony during the course of the

19  trial as to the extent of knowledge individual investors

20  may have had with reference to those loans that were now

21  flowing out of the Hawaii investment portfolio to Mexico

22  for purposes of the Mexican development.

23         Indeed your Honor may recall there were

24  questions about prior Grand Jury testimony where witnesses

25  acknowledged they were aware of the loans to Mexico to Ken

61

1   Jowdy, the point of which they became aware of them became

2   a little bit of a dispute, but after the Grand Jury

3   testimony with reference to that, it might be in the

4   record and I could point at this point to how Mr. Peca

5   responded to them in substance.  And he said, I wasn't

6   aware initially.  But yes, we did become aware and my

7   testimony was truthful in that respect.

8           The issue as to whether or not these were loans

9   to Ken Jowdy.  The issue to whether or not the hockey

10  players had prior knowledge of those loans.  And the issue

11  to whether or not those circumstances demonstrate some

12  sort of fraudulent intent or fraudulent scheme on the part

13  of Phil Kenner are for determinations by a trier of fact.

14          But my argument is simply this, judge.  And I

15  think we've developed that.  The money that went from

16  Hawaii to Diamante Cabo San Lucas belonged to Ken Jowdy.

17  This was a loan agreement that was introduced into

18  evidence by the defense.  And it has been our position,

19  and it is our position that if there are loans for which

20  there was a 15 percent return on interest, and if hockey

21  players had knowledge of that, there is no fraud

22  associated with that transaction.

23          If there is no fraud associated with that

24  transaction, then the government cannot say that to this

25  Court that whatever interest Phil Kenner had in Diamante

62

1    Cabo San Lucas ought to be forfeited.  Because it's the

2    nexus between the property they seek to forfeit and the

3    offense committed.  Id no offense has been committed,

4    judge, there is no nexus as far as that is concerned.

5            So I mention this to your Honor because we have

6    documents that there is going to be a relevancy objection.

7    We might as well address it now, for the Court's

8    consideration.  And it will be a question of not

9    admissibility in my opinion, but the weight of the

10   evidence, where, for example John Kaiser in a prior

11   proceeding, specifically a proceeding before the American

12   Arbitration Association, testified that he was an investor

13   in Hawaii, $1.1 million.  He sat down with Phil Kenner --

14   and I'm paraphrasing the testimony -- but if I make a

15   mistake I know I'll be corrected -- he along with Phil

16   Kenner discussed the advisability and the advantage of

17   lending money that was slated for the line of credit, to

18   Ken Jowdy at a 15 percent greater return, that would then

19   give them additional funds to develop the Hawaii

20   properties.  That the idea was again he would pay back a

21   15 percent interest.  We have a loan agreement in

22   evidence.  And indeed Kaiser's testimony was that he

23   trusted Ken Jowdy.  He anticipated there would be the 15

24   percent return investment.  And at that point he did not

25   blame Phil Kenner for the fact that Ken Jowdy never paid

63

1   back the loan.

2          What well see, judge, and I'll simply point it

3   out, and I'll make the argument now; the agent, special

4   agent or Agent Joshua has testified there was money

5   flowing from Hawaii to Baja Development Corp, and money

6   that went into the purchase and development of the

7   Diamante Cabo San Lucas and the Diamante Del Mar

8   properties.  And that is true.

9          There is also a chart in evidence that shows

10  money had flowed back from Baja Development to the Hawaii

11  accounts.  Just like a loan, judge.  When you lend money

12  you expect the obligor to begin to pay back that money.

13  And that is what occurred here.

14         So I believe it's necessary, judge, that I

15  develop a record, as strong a record as I'm able, to

16  establish that the money that flowed from the Hawaiian

17  land development to Diamante Cabo San Lucas and Diamante

18  Del Mar, was not part of any fraudulent scheme whatsoever,

19  and indeed ought not to be part of the forfeiture.

20         So that is why I'm moving in that direction.

21         THE COURT:  Let me just, again recite what my

22  view is on this.  And hopefully this will streamline what

23  you need to do today with the agent.

24         I don't think that your theory and your

25  arguments, I think are certainly relevant.  And I'm going

64

1  to let you develop the record.  But I think they're more

2  just affirmative arguments that you're making to me as to

3  what the proof does or does not show.  In addition if you

4  want to supplement this record with any additional

5  documents or testimony, whichever, I'm going to allow you

6  to.

7        I don't think you need do that through this

8  agent.  I'm going to let you put in any testimony or

9  statements the government has that you believe are

10  inconsistent with the government's theory of forfeiture in

11  this case.

12        So if you have statements about this either made

13  under oath previously or any witness made in the 302 or

14  any other statement, I'm going allow you to introduce

15  those and have me consider them for these purposes of

16  these arguments you're trying to make.  I just don't think

17  it's going to be productive to have to the agent show each

18  one of those pieces and seek to authenticate it through

19  him, because I'm going to let you bring it all in any way.

20  Okay?

21        MR. HALEY:  Thank you, judge.

22        And with that ruling by the Court, I think I can

23  expedite something right now.  I would then offer --

24        THE COURT:  And obviously Mr. Kenner is going to

25  testify too, so --

65

1        MR. HALEY:  I interrupted the Court.  I

2   apologize.

3        THE COURT:  But I understand why you did want to

4   get in other statements by people to corroborate what you

5   think your client has already testified to at the trial,

6   but anything else you can add on the forfeiture base.  So

7   go ahead.

8        MS. O'CONNOR:  Your Honor, if I can just add.

9   Much of this was testified to during the criminal trial.

10  In fact you know better than I do.  Mr. Kaiser was

11  specifically questioned with regard to his prior

12  testimony.  Mr. Peca was specifically questioned with

13  regard to his prior testimony.  So to the extent that

14  counsel is trying to retry this entire case, as your Honor

15  knows the jury already made the findings.

16       THE COURT:  But his argument is that the jury

17  did not make a finding as to a particular scheme, because

18  there were multiple schemes.  But he is trying, for

19  purposes of the forfeiture, and I assume he's going to do

20  the same thing for purposes of sentencing, that he is

21  trying to essentially reargue it before me, because there

22  wasn't a particular finding as to each scheme by the jury.

23  It was not a special verdict form.

24       MS. O'CONNOR:  And your Honor, again, this is

25  our position, I think we said this before, because it is a

66

1  money laundering conspiracy, the Court can consider the

2  charged conduct, uncharged conduct, including conduct, any

3  conduct that leads to the money laundering scheme.

4            THE COURT:  Okay.

5            MR. HALEY:  This will be quick, judge, if I may?

6            I would simply -- I previously provided to the

7  government offered in evidence Kenner Exhibit F-4, which

8  consists of the testimony of John Kaiser in or about May

9  of 2009.  It's a full and complete transcript, judge.

10  That will be Exhibit 4.

11            I'm speaking to myself -- withdrawn.

12  BY MR. HALEY:

13  Q    Now agent, I want you to take a look at FORF-44, that

14  was introduced into evidence, I believe just a short while

15  ago.

16            Do you recall this?

17  A    Yes.

18  Q    Now as relates to various entries on this document,

19  page 1, page 2, page 3; this is a chart you prepared,

20  correct?

21  A    I did not prepare this chart.

22  Q    Who prepared this chart?

23  A    It was given to us by Jowdy's attorney.

24  Q    And the document given to you by Jowdy's attorney

25  contains, does it not, notations reflecting loans, and the

67

1   word, loans, is used, to Baja Development Corp, correct?

2   A    Yes.

3         MR. HALEY:  I don't know if I made a formal

4   offer, but in reference to Kenner Exhibits F-2 and F 3,

5   which are the 3500 materials.

6         THE COURT:  F-2, 3, 4, admitted.

7         MR. HALEY:  Thank you, your Honor.

8         (Kenner Exhibits F-2, F-3, F-4 in evidence.)

9         THE COURT:  F-1 was the deposition which I said

10  if you got a full version of it I would allow that in.

11        MR. HALEY:  Yes, sir.

12  BY MR. HALEY:

13  Q    Now going back, sir, to FORF-1, the tenth column,

14  Palms?

15  A    Yes.

16  Q    I see a $500,000 notation attributed to Kaiser and

17  others, correct?

18  A    Yes.

19  Q    And would you kindly describe to the Court the source

20  of that $500,000?

21  A    Bank records that went from John Kaiser to Phil

22  Kenner.  And in speaking with John Kaiser he said he

23  invested in the Palms, and that was for the Palms.

24  Q    And we see $1 million 572 for Jay McKee, correct?

25  A    Yes.

68

1    Q    And what is your understanding as to the source of

2    those funds?

3    A    It's Jay McKee's estimated loss for the Palms.

4    Q    Well when you say Jay McKee's estimated loss for the

5    Palms, is that a figure that he gave you, said this is my

6    estimated loss for the Palms?

7    A    Yes.

8    Q    Did he provide bank records in substantiation of that

9    amount as set forth on that line, that exact amount

10   actually went to the Palms?  Yes or no?

11   A    No.

12   Q    With reference to the $290,000 for Ethan Moreau, what

13   was the source of that money?

14   A    There is bank records showing Ethan Moreau sent a CMG

15   for $290,000 for Palms, to Palms.

16   Q    And with reference to the $2,600,000 on the Michael

17   Peca line, what is the source of those funds?

18   A    Michael Peca's estimated loss for the Palms.

19   Q    My question regarding Jay McKee.  Is that estimated

20   loss as told to you by him verified by bank records in

21   terms of the transfer of those kind of monies?

22   A    No.

23   Q    During the course of the trial, sir, to your memory

24   was there testimony by any of the government witnesses,

25   meaning any of the individuals listed as investors in the

69

1    Palms that I have just stated on the record, that they

2    were in some way fraudulently induced by Phil Kenner to

3    make investment in him Palms; yes or no?

4    A    I would have to review that testimony.

5    Q    Okay, going to the next column, sir?

6    A    Yes.

7    Q    We have $500,000 from Bryan Berard, sir?

8    A    Yes.

9    Q    And what was the source of those funds to your

10   knowledge?

11   A    It was a wire from Bryan Berard down to Robert

12   Gaudet.

13   Q    Do you know to where, sir?

14   A    Robert Gaudet was the one who was running Frailes.

15   Q    I'm just curious.  To your knowledge this is an

16   investigator in this case.  Was Robert Gaudet ever charged

17   by any accusatory instrument --

18            MS. LEONARDO:  Objection.

19   Q    -- of being a participant in any fraudulent scheme

20   relating to Phillip Kenner; yes or no?

21            MS. LEONARDO:  Objection, your Honor.

22            THE COURT:  Sustained.

23   BY MR. HALEY:

24   Q    You see $500,000 from Greg DeVries, for Greg DeVries.

25            Is that correct?

Wayne - Cross/Mr. Haley

70

1    A    Yes.

2    Q    And this is an investment that Greg DeVries made in

3    trading?

4    A    Yes.

5    Q    Now staying with those two investments, the

6    investment for $500,000 from Bryan Berard and the $500,000

7    from Greg DeVries.

8         At any point, to your knowledge, based upon your

9    investigation, did those funds flow through any account

10   controlled by Eufora?

11   A    The Frailes money?

12   Q    Yes.

13   A    Not to my knowledge.

14   Q    Well, did the Frailes money come through any account

15   established through, by way of the Global Settlement Fund?

16   A    Not to my knowledge.

17   Q    To your knowledge, did any of those monies flow

18   through any account associated with or controlled by the,

19   what was the Led Better Corp?

20   A    No.

21   Q    To your knowledge, do any of those monies flow

22   through or be controlled by an account directly attributed

23   to the Hawaiian land development?

24   A    There was Hawaiian credit money that went from the

25   Hawaiian line of credit to, I believe Little Isle and then

71

1   down to Robert Gaudet.

2   Q    Which money was that?

3   A    I believe it was Owen Nolan and Steve Rucchin, Steve

4   Rucchin's line of credit.  I didn't include that in the

5   amounts because that was already included in their lines

6   of credit.

7   Q    Fair enough.

8           By the way, for purposes of your chart, when you

9   say included in the lines of credit, you drafted this

10  chart based on the position that the monies that was

11  deposited in each individual line of credit is relevant,

12  the entire amount is relevant for purposes of forfeiture.

13          Is that your position?

14  A    Yes.

15  Q    And again, that's based upon your assumption that --

16  withdrawn.

17          THE COURT:  How much more do you have,

18  Mr. Haley?

19          MR. HALEY:  Your Honor, I'm, believe it or not,

20  I'm almost done.

21  BY MR. HALEY:

22  Q    Finishing off, sir, the Palms inquiry.

23  A    Yes.

24  Q    Are there any documents that were introduced during

25  the course of the trial that you believe are relevant for

1   purposes of determining whether there was a nexus between

2   the Hawaiian land development project, the Eufora project,

3   the Global Settlement project and Led Better, and these

4   numbers listed on the Palms?

5   A    The Palms documents are numbers related to the, the

6   GSF.

7            THE COURT:  Are you aware of any documents in

8   evidence from the trial showing that money went from

9   either Hawaii, Eufora or the Global Settlement Fund to the

10  Palms?

11  A    Yes.

12  BY MR. HALEY:

13  Q    What documents are those?

14  A    Well, first thing is the extension of loan money that

15  eventually went over for the Palms.  Also the line of

16  credit money that was eventually paid over to Gardenia for

17  the Palms, for the McKee unit, and also there was, I

18  believe there was testimony regarding Ethan Moreau doing

19  $90,000 going to CMG.

20  Q    Same question with reference to Frailes.  What, if

21  any, documents were introduced with reference to the

22  Frailes that would have the same connection to your money?

23  A    There was in the Little Isle bank records, you could

24  see line of credit money coming from Owen Nolan and Steve

25  Rucchin to Little Isle and then to Bobby Gaudet, Robert

Wayne - Cross/Mr. Conway

1   Gaudet.

2          MR. HALEY:  May I have one moment, Judge?

3          THE COURT:  Yes.

4          (There was a pause in the proceedings.)

5          MR. HALEY:  Agent Wayne?

6          THE WITNESS:  Yes.

7          MR. HALEY:  Thank you.

8          No further questions, Judge.

9          THE COURT:  Thank you.

10         Mr. Conway?

11  CROSS-EXAMINATION

12  BY MR. CONWAY:

13  Q    Good afternoon, Agent Wayne.

14  A    Good afternoon.

15  Q    I'm going to ask you, I think you have Exhibit 1

16  Forfeiture 1, in front of your chart?

17  A    Yes.

18  Q    I want to start with column, what I'll call column 2

19  which is right after the victims.  It starts with Hawaii.

20  A    Yes.

21  Q    Hawaii, and the next column entitled LOC is one in

22  the same in the sense that they both deal with Hawaii,

23  correct?

24  A    They were for -- intended for Hawaii.  In some

25  instances they went other places.

Wayne - Cross/Mr. Conway

74

1    Q    And when you list Hawaii at the top, you have an

2    amount down at bottom of approximately 2.4 million.

3            Is that from direct investments into the Hawaii

4    account?

5    A    Yes.

6    Q    And then the second column, that's LOC up on the top,

7    that stands for line of credit?

8    A    Yes.

9    Q    The line of credit, that money was taken from for --

10   and put into a Hawaiian account?

11   A    Taken from?  I'm sorry.

12   Q    It was taken from Hawaiian transfers, from lines of

13   credits to accounts in Hawaii?

14   A    Typically, yes.

15   Q    In terms of the first account, Hawaii, the 2.4, that

16   was pursuant to an agreement that some of these victims

17   had entitled Little Isle, or the Little Isle IV?

18   A    Yes.

19   Q    There was an agreement signed by the investors to

20   invest sums of money.

21            Is that correct?

22   A    Yes.

23   Q    In any of those agreements signed by the investors,

24   were any of those agreements signed by Thomas Constantine?

25   A    I would have to review the documents, but I don't

75

1    believe so.

2    Q    And the victims or the investors you list that

3    invested direct money into Hawaii, in column 1, those who

4    testified at trial, did any of those testify that they had

5    any deals with Tommy Constantine?

6    A    I'm sorry, had any dealings with Tommy?  They

7    testified that they had dealings with Tommy Constantine.

8    Q    Let me rephrase.  Bad question.

9         Did any of them testify that they had direct

10   conversations or involvement with Mr. Constantine in

11   reference to these direct investments into Little Isle IV?

12   A    Not that I recall.

13   Q    Now you looked at, I would imagine, thousands of

14   pages of banks reports for numerous accounts, correct?

15   A    Right.

16   Q    And this Little Isle, was that one of the accounts

17   you looked at?

18   A    Yes.

19   Q    Was Thomas Constantine a signatory on that account or

20   accounts?

21   A    No.

22   Q    The transfers of the money from the Hawaii account or

23   what I'll call the direct deposit account, column 1, those

24   monies would eventually go to other places, correct?

25   A    Typically, yes.

Wayne - Cross/Mr. Conway

1  Q   Any of those Hawaiian transfers done by Tommy

2  Constantine?

3  A   I would have to look at the record, but I believe he

4  received some money from Brad's business.

5  Q   I'm not saying that he received any of the initial

6  Hawaiian transfers from that Hawaii account, the 2.4

7  million.

8          Were they done by Thomas Constantine?

9  A   No.

10  Q   Was that money transferred by Thomas Constantine?

11  A   Not that I'm aware of, no.

12  Q   And if I asked you the same question in terms of the

13  line of credit, did you look at those banks accounts and

14  those opening statements of the monies in the line of

15  credit and/or the trust?

16  A   Yes.

17  Q   And in those bank documents, was Mr. Constantine a

18  signatory in Northern Trust on any of these accounts?

19  A   No.

20  Q   And the monies that were deposited into that line of

21  credit that were then wired out, were those wires done by

22  Thomas Constantine?

23  A   No.

24  Q   In terms of the Sugar Mill project --

25  A   Yes.

77

```
1    Q    And there is a word I can't pronounce, but I'll give

2    it a try, Naalehu?

3    A    Naalehu?

4    Q    You say it a lot better than I do.

5         Is that an account that you analyzed in the

6    course of your investigation?

7    A    The Naalehu accounts, I may have looked at it.  I

8    don't think I analyzed it.

9    Q    In the documents you looked at, was Thomas

10   Constantine's name on any of those documents?

11   A    Not that I'm aware of.

12   Q    Let's go to the end of the document.  You have

13   Diamante Cabo San Lucas, correct?

14   A    Correct.

15   Q    And you have approximately 4.5 million going into

16   that company, correct?

17   A    Correct.

18   Q    And am I correct in saying that company is Ken

19   Jowdy's company?

20   A    Correct.

21   Q    And you have approximately six, seven or eight

22   investors who had invested money into that company,

23   correct?

24   A    Other investors loaned the money.

25   Q    And those six or seven or eight people, those who
```

Wayne - Cross/Mr. Conway

78

1   testified at trial, did they testify that Mr. Constantine

2   had any role in having them invest money in the Diamante

3   Cabo San Lucas?

4   A    I don't believe so.

5   Q    In terms of the column right before that, again a

6   word I can't pronounce, Frailes?

7   A    Frailes, yes.

8   Q    You have approximately $6.7 million?

9   A    Yes.

10  Q    Again, half a dozen to a dozen investors, that's

11  money that the investors invested in this particular

12  venture?

13  A    Invested or intended to invest.

14  Q    And did any of those who testified at trial, did they

15  testify that Mr. Constantine had any role in getting them

16  to invest that money?

17  A    No.

18  Q    Two columns before that, Diamante Del Mar, the

19  northern property --

20  A    Yes.

21  Q    Approximately 9.1 million?

22  A    Yes.

23  Q    Is that also a Ken Jowdy property?

24  A    Yes.

25  Q    And likewise, you have a dozen or so investors of

79

1   approximately 9.1 million, correct?

2   A    Yes.

3   Q    And that was either direct investments or money that

4   came from Hawaii?

5   A    Yes.  I think those were direct investments.

6   Q    Direct investments.

7            Again, any of those investors ever describe

8   dealing with Thomas Constantine in terms of having them

9   invest those monies?

10  A    Not that I'm aware of.

11  Q    I'm sorry, I missed your answer.

12  A    Not that I'm aware of.

13  Q    And then there is a column here that is entitled Led

14  Better?

15  A    Yes.

16  Q    You have one investment of 375,000.  Am I correct

17  that Mr. Constantine had nothing to do with the Led Better

18  investment?

19  A    That's correct.

20  Q    In fact, he wasn't even charged in the indictment

21  with that, correct?

22  A    Yes.

23  Q    In terms of the lines of credit that were made to

24  Northern Trust, you analyzed those accounts and you saw

25  through the exhibits a series of documents, players either

Wayne - Cross/Mr. Conway

80

 1   executed documents to put money in those lines of credit

 2   or signed the documents authorizing money to put those

 3   lines of credit in place and things of that nature,

 4   correct?

 5   A    I think there was evidence in the trial.

 6   Q    And did any of those documents have Mr. Constantine's

 7   name on them?

 8   A    Not that I'm aware of.

 9   Q    And there wasn't any witnesses that informed you that

10   Mr. Constantine had any involvement in soliciting them to

11   put monies in these lines of credit from Northern Trust,

12   right?

13   A    I don't believe so.

14   Q    I want to show you -- I think you have it in front of

15   you so I won't show it to you -- chart number 26.

16   A    Yes.

17   Q    And these are monies from Little Isle going to --

18   again, I can't pronounce the name, but -- atilio antinello

19   (ph).  And I'll give you the spelling when we're finished.

20   As you can tell, my Italian is pretty lousy.

21        In this six, seven or eight page chart, these

22   are monies coming from investors, some of the players,

23   going to this particular individual, correct?

24   A    Yes.

25   Q    And is that in terms of the Frailes?

81

1   A      No.

2   Q      Which venture is that?

3   A      That is the Diamante Cabo San Lucas.

4   Q      Diamante, okay.

5          In chart 26 it doesn't mention Thomas

6   Constantine in any of the pages of this chart, correct?

7   A      No, it doesn't.

8   Q      And none of the investors mention Thomas Constantine

9   as being somebody they spoke to in reference to making

10  investments, correct?

11  A      Not that I'm aware of.

12  Q      And on chart 24, these are, this is a chart

13  illustrating money coming from Little Isle or, let me back

14  up, money coming from investors into Little Isle and then

15  going to either Baja Development or Del Monte, correct?

16  A      Diamante, yes.

17  Q      And again, Mr. Constantine was not named or mentioned

18  in this chart?

19  A      He is not.

20  Q      And the players that are listed in the left column,

21  again, did any of them testify or tell you that

22  Mr. Constantine had any involvement in soliciting these

23  investments from them?

24  A      Not that I'm aware of.

25  Q      On chart 23, which has the title Frailes, again you

82

1  have two investors making investments into Little Isle and

2  then those investments going to Ula Makika, and then going

3  to Robert Gaudet, correct?

4  A   They weren't investments into Little Isle, they were

5  lines of credit monies being moved that eventually wound

6  up with Bob Gaudet.

7  Q   And again, Mr. Constantine is not named in this

8  chart?

9  A   He is not.

10 Q   Is it fair to say that the two investors, Mr. Nolan

11 and Mr. Rucchin, did not testify at the trial that Mr. --

12 or testified at the trial that Mr. Constantine had no role

13 in them getting them to invest this money initially into

14 the line of credit?

15 A   Not that I'm aware of.

16 Q   And on chart 27, this is Cabo San Lucas properties

17 monies, correct?

18 A   Yes.

19 Q   And again, you have a two-page chart, you have six,

20 seven different investors, money going into Baja

21 Development that then goes to Ula Makika?

22 A   Right.

23 Q   Now in this particular chart you have three boxes

24 that indicate money goes to Constantine Management Group,

25 correct?

Wayne - Cross/Mr. Conway

1   A    That is correct.

2   Q    And they total $45,000.  Is it 25,000, 15,000 and

3   5,000?

4   A    Yes.

5   Q    And you analyzed all these accounts and came up with

6   three particular transactions where money went to CMG for

7   $40,000?

8   A    For these particular transactions, money initially

9   went from the players down to -- for Diamante Cabo San

10  Lucas and then back to Ula Makika.

11  Q    And am I correct that the money going to CMG comes

12  from Ula Makika?

13  A    That's correct.

14  Q    And am I correct that at the trial it was, there was

15  evidence showing that Mr. Constantine had a consulting

16  agreement with Ula Makika, correct?

17  A    I would have to review that.

18  Q    Fair enough.

19        In terms of Constantine Management Group, did

20  you do a full audit or complete analysis of that complete

21  account or accounts?

22  A    There was a schedule done.  I didn't do the schedule,

23  I didn't prepare the schedule, but there was a schedule

24  done of the statements and the checks.

25  Q    And what about Mr. Constantine's personal accounts?

84

1   A   Also.

2   Q   Is that something you did or somebody else did?

3   A   Somebody else did.

4   Q   You don't have any chart of that right now though?

5   A   They might be in the criminal trial.

6       MS. LEONARDO:   Objection.

7   A   Sorry.

8   Q   In today's testimony, Agent Wayne, you introduced a

9   series of exhibits, some that are in evidence, some that

10  are subject to connection.  But I'll list them for the

11  record.

12      Forfeiture Exhibit 3, Forfeiture Exhibit 13,

13  Forfeiture Exhibit 31, Forfeiture Exhibit 54, 56, 57, 58,

14  60, 61 and 62.

15      Would you like to see them?

16  A   Sure.

17  Q   Take a second to look at them.

18  A   Yes.

19  Q   In any of those exhibits, does the name Thomas

20  Constantine appear?

21  A   No.

22  Q   And as you sit here today, Agent Wayne, do you know

23  or have any evidence that Mr. Constantine had any

24  ownership interest in Diamante Del Mar?

25  A   Diamante Del Mar, no.

Wayne - Cross/Mr. Conway

85

1    Q    And Cabo San Lucas?

2    A    No.

3    Q    And Los Frailes?

4    A    Interest in it?  I believe he put money into Los

5    Frailes at one time.

6    Q    Let me ask you about that.  Are you aware from doing

7    your analysis that there came a point when Mr. Constantine

8    invested his own money into Frailes?

9    A    Yes.

10   Q    In fact, did he mortgage his home for $500,000 and

11   put that in as an investment into Los Frailes?

12   A    That I don't know.

13   Q    Other than that, do you believe him to have any

14   ownership in Los Frailes at this time?

15   A    No.

16        MR. CONWAY:  Judge, can I just have a second?

17        THE COURT:  Sure.

18        (There was a pause in the proceedings.)

19        MR. CONWAY:  Thank you, your Honor.

20        I have nothing further at this point.

21        THE COURT:  Redirect?

22        MS. LEONARDO:  No, your Honor, no redirect.

23        THE COURT:  You can step down, Agent.

24        MR. HALEY:  Your Honor, I do have one question

25   based upon the questioning.

86

1         THE COURT:  All right.

2    RECROSS-EXAMINATION

3    BY MR. HALEY:

4    Q    Sir, when you were asked the questions about the

5    figures set forth in FORF-1 concerning the monies in the

6    Frailes category, your answer was these monies constituted

7    monies either invested or intended to invest?

8    A    Yes.

9    Q    How much of that, those sums contained in that

10   column, are monies that were, to use your phraseology,

11   intended to be invested?

12   A    Maybe intended was a poor choice of words.  They put

13   money, money that went to Phil Kenner that Gaudet said

14   never came down to him.  That was the, I guess the

15   intended investments.  That is what I meant by that.

16   Q    Fair enough.

17        MR. HALEY:  Thank you, Judge.

18        THE COURT:  All right, step down.  Thank you.

19        Does the Government rest?

20        MS. LEONARDO:  Yes, your Honor, the Government

21   rests.

22        THE COURT:  All right.  And then the deputy told

23   me that in terms of the defense case you're looking at

24   April 4th.

25        Is that what you're trying to do?

87

1              MR. HALEY:  Yes, your Honor.

2              MR. CONWAY:  Yes, your Honor, that's correct.

3              THE COURT:  And do you know what you intend to

4      do yet, Mr. Conway?

5              MR. CONWAY:  Well, your Honor, I had spoken to

6      the Government earlier this morning, discussing with my

7      client whether he wishes to testify or not.  And we'll let

8      the Court know in due time about that.

9              Depending on the testimony that I anticipate

10     coming in, I told the Government that there is a

11     possibility that I might want to see Agent Wayne again.

12     Not to do with anything that they brought up, but

13     questions that might come up.  I know he will be

14     available.

15             And the possibility exists that we would like to

16     call Agent Galioto on some matters.  Agent Wayne clearly

17     testified that he wasn't familiar with everything.  And I

18     put the Government on notice that we possibly will call

19     Agent Galioto.  And to that extent, if there is 3500

20     material for him, I would ask that that be produced.

21             THE COURT:  My same offer applies to Mr. Haley,

22     which is, if your purpose of calling Agent Galioto is

23     simply getting some report generated of a witness, I'm

24     going to allow you to get that in without calling him.  So

25     I just want you to understand that.

88

1          MR. CONWAY:  I will take that, your Honor, as

2     the only reason I would call him is if I need to elicit

3     something that I cannot put in directly.

4          MR. HALEY:  Your Honor, the final matter relates

5     to Terrace Court Exhibit Number 1, which is the excerpt of

6     the testimony coming out of the proceedings in the

7     Superior Court of the State of California.  We did review,

8     for whatever it's worth, we did review discovery that was

9     provided to us by the Government.  And we were provided

10    with a full transcript of this particular document.

11         So I'll discuss that with the Government.  I'll

12    point out to where it's listed on the material we received

13    from the Government.  I think that might resolve that

14    issue so we don't have to delay the proceedings for

15    purposes of obtaining certain --

16         THE COURT:  You're saying the Government

17    provided you with a full transcript?

18         MR. HALEY:  Correct.

19         THE COURT:  Do you know whether that is accurate

20    or not, or you don't know?

21         MS. LEONARDO:  I do not know, your Honor.  But I

22    can also check that.

23         MR. HALEY:  Sure.

24         THE COURT:  Why don't we do this?  I'm going to

25    admit that portion so we have it admitted.  If the

89

1   Government has other portions that it wishes to introduce

2   and wants me review the whole transcript for context or

3   completeness, I'm willing to do that.  Okay?

4          MS. LEONARDO:  Thank you.

5          MR. HALEY:  Actually, Judge, that was the

6   purpose of my making the representation at this point, so

7   I didn't forget.

8          THE COURT:  Okay, so it's in.  Okay.

9          MR. HALEY:  Thank you.

10          MS. LEONARDO:  Your Honor, I just ask that in

11  advance of the April 4th hearing that counsel provide us

12  with any documents they intend to introduce.

13          MR. CONWAY:  Absolutely.

14          THE COURT:  Okay.

15          MR. HALEY:  Absolutely, Judge.  I might add for

16  purposes of the record, I did indicate to the Government,

17  that though not introduced in the course of the trial, it

18  is our intention, it is not actually that lengthy, to

19  introduce the Grand Jury testimony of Mr. Peca, Mrs. Dorn

20  Mr. Turner.  I gave them notice.

21          THE COURT:  And for your preparation of

22  Mr. Kenner.  As you know, he was on the stand for a long

23  time during the trial.  And I want you to understand and

24  Mr. Kenner to understand that we consider any testimony

25  that he already gave without him having to repeat it.

Wayne - Recross/Mr. Haley

90

1          MR. HALEY:  Yes, sir.

2          THE COURT:  This is really for him just to add

3    anything he wanted to add and obviously additional items

4    that are now coming in.  Okay?

5          MR. HALEY:  Understood.

6          THE COURT:  Okay, on April 4th, say 10:00 a.m.

7          MR. CONWAY:  Very good, your Honor.  Thank you.

8          MR. HALEY:  Thank you, Judge.

9          MS. LEONARDO:  Thank you, your Honor.

10         THE COURT:  Have a good day.

11         (The proceedings were concluded at 1:03 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**W I T N E S S E S**

91

1

2    J O S H U A    W A Y N E,               5

3    CONTINUED DIRECT EXAMINATION              6

4    BY MS. LEONARDO

5    VOIR DIRE EXAMINATION                    14

6    BY MR. HALEY

7    CONTINUED DIRECT EXAMINATION             17

8    BY MS. LEONARDO

9    CROSS EXAMINATION                        37

10   BY MR. HALEY

11   CONTINUED CROSS-EXAMINATION              48

12   BY MR. HALEY

13   CROSS-EXAMINATION                        73

14   BY MR. CONWAY

15   RECROSS-EXAMINATION                      86

16   BY MR. HALEY

17

18

19

20

21

22

23

24

25

**W I T N E S S E S**

92

1

2      FORFEITURE EXHIBIT 58                        9

3      FORFEITURE EXHIBIT 60, 61, AND 62            13

4      FORFEITURE EXHIBIT 44                        17

5      FORFEITURE EXHIBIT 54 AND 57                 22

6      CHART 27                                     24

7      FORFEITURE EXHIBIT 52                        26

8      FORFEITURE EXHIBIT 56                        27

9      FORFEITURE EXHIBIT 13                        28

10     FORFEITURE EXHIBIT 55                        31

11     FORFEITURE EXHIBIT 69                        32

12     FORFEITURE EXHIBIT 32 AND 67                 36

13     KENNER EXHIBITS F-2, F-3, F-4 IN EVIDENCE.   67

14

15

16

17

18

19

20

21

22

23

24

25

## U.S.A. v. KENNER and CONSTANTINE

1

### $

**$1,500** [1] - 56:8
**$100,000** [6] - 32:7, 32:12, 34:2, 52:20, 53:1, 53:17
**$2,600,000** [1] - 68:16
**$290,000** [2] - 68:12, 68:15
**$40,000** [3] - 34:10, 34:18, 83:7
**$45,000** [1] - 83:2
**$500,000** [7] - 67:16, 67:20, 69:7, 69:24, 70:6, 85:10
**$90,000** [1] - 72:19

### 1

**1** [16] - 11:18, 14:15, 16:2, 39:9, 39:10, 42:2, 50:19, 52:12, 66:19, 67:24, 73:15, 73:16, 75:3, 75:23, 88:5
**1.1** [1] - 62:13
**1.5** [2] - 53:9, 56:10
**10** [1] - 36:16
**100** [1] - 2:7
**100,000** [1] - 33:24
**1051** [1] - 32:13
**10:00** [1] - 90:6
**10:30** [1] - 1:10
**11/15/2005** [1] - 34:8
**11501** [1] - 2:2
**11572** [1] - 2:5
**11722** [2] - 1:17, 2:8
**11749** [1] - 1:24
**11:20** [1] - 36:18
**11:38** [1] - 36:19
**12th** [1] - 37:14
**13** [8] - 27:15, 27:17, 28:3, 28:8, 84:12, 92:3, 92:9
**13-CR-607** [2] - 1:3, 2:13
**14** [1] - 91:5
**15** [11] - 20:10, 38:11, 38:17, 38:21, 50:15, 53:4, 60:16, 61:20, 62:18, 62:21, 62:23
**15,000** [1] - 83:2
**16** [9] - 18:22, 19:1, 19:11, 19:15, 19:17, 19:20, 20:10, 21:4, 38:13
**1601** [1] - 1:23
**17** [2] - 91:7, 92:4
**170** [2] - 7:10, 7:25
**171** [1] - 7:25

**172** [1] - 7:10
**1751** [1] - 31:25
**1753** [1] - 31:25
**189** [1] - 34:16
**19** [2] - 37:22, 48:5
**191** [1] - 34:16
**19617** [1] - 19:25
**19th** [1] - 47:4
**1:03** [1] - 90:11

### 2

**2** [1] - 11:6, 20:17, 21:3, 44:22, 48:12, 48:17, 50:19, 66:19, 73:18
**2.4** [3] - 74:2, 74:15, 76:6
**20** [1] - 44:14
**2006** [1] - 45:8
**2009** [1] - 66:9
**2010** [3] - 29:17, 47:4, 48:5
**2014** [1] - 44:14
**2015** [6] - 20:10, 27:10, 38:11, 38:18, 38:21
**2016** [2] - 1:9, 37:14
**2101** [3] - 7:8, 7:24, 34:16
**2102** [1] - 7:21
**2110** [1] - 18:15
**2133** [1] - 7:6
**22** [3] - 31:19, 37:22, 92:5
**23** [2] - 39:13, 81:25
**24** [3] - 49:25, 81:12, 92:6
**25,000** [1] - 83:2
**2585** [1] - 35:20
**26** [6] - 2:4, 50:18, 50:19, 80:15, 81:5, 92:7
**26,000** [2] - 11:18, 11:20
**27** [10] - 22:22, 22:25, 23:8, 24:19, 24:20, 24:21, 24:22, 82:16, 92:6, 92:8
**28** [1] - 92:9

### 3

**3** [6] - 48:18, 50:19, 66:19, 67:4, 67:6, 84:12
**300** [1] - 2:1
**302** [2] - 43:24, 64:13
**31** [4] - 33:20, 84:13, 92:10

**32** [12] - 32:20, 32:22, 32:24, 33:15, 33:16, 34:21, 35:1, 35:5, 36:9, 36:10, 92:11, 92:12
**32-SEC** [1] - 34:23
**341** [1] - 2:2
**35** [1] - 29:4
**3500** [7] - 43:5, 43:7, 43:9, 45:24, 46:13, 67:5, 87:19
**36** [4] - 6:16, 9:6, 9:8, 92:12
**37** [1] - 91:9
**375,000** [1] - 79:16
**39** [5] - 44:19, 44:25, 45:7, 45:12, 53:12

### 4

**4** [4] - 16:2, 50:19, 66:10, 67:6
**4.5** [1] - 77:15
**40,000** [1] - 34:6
**425** [1] - 1:23
**43** [1] - 49:7
**44** [7] - 13:15, 13:17, 14:4, 17:3, 17:5, 23:3, 92:4
**45** [1] - 4:2
**4511** [1] - 28:24
**48** [1] - 91:11
**49** [2] - 25:4, 25:13
**4th** [4] - 4:23, 86:24, 89:11, 90:6

### 5

**5** [4] - 14:15, 16:2, 50:19, 91:2
**5,000** [1] - 83:3
**52** [7] - 25:1, 25:3, 25:7, 25:12, 26:14, 26:15, 92:7
**526** [1] - 7:22
**528** [1] - 7:22
**54** [11] - 17:15, 17:21, 18:3, 18:18, 22:11, 22:16, 22:17, 23:2, 35:12, 84:13, 92:5
**55** [5] - 28:10, 30:15, 30:17, 31:10, 92:10
**56** [7] - 26:20, 27:2, 27:6, 27:8, 27:9, 84:13, 92:8
**57** [11] - 17:15, 17:25, 18:6, 18:18, 22:11, 22:13, 22:16, 22:17, 23:3, 84:13, 92:5
**572** [1] - 67:24

**58** [10] - 8:2, 8:3, 8:4, 8:7, 8:25, 9:4, 9:5, 9:7, 84:13, 92:2

### 6

**6** [2] - 50:19, 91:3
**6.7** [1] - 78:8
**60** [1] - 9:11, 9:20, 12:21, 13:3, 13:7, 13:10, 13:12, 13:25, 16:20, 84:14, 92:3
**61** [9] - 9:11, 9:20, 10:9, 10:14, 13:3, 13:11, 16:21, 84:14, 92:3
**62** [9] - 9:11, 9:21, 10:9, 10:14, 12:21, 13:3, 16:21, 84:14, 92:3
**631-712-6105** [1] - 2:8
**67** [12] - 32:20, 32:22, 33:11, 33:13, 33:25, 34:22, 35:5, 35:8, 36:9, 36:10, 92:12, 92:13
**69** [6] - 31:14, 32:5, 32:14, 32:18, 32:19, 92:11

### 7

**7** [1] - 50:19
**73** [1] - 91:13

### 8

**86** [1] - 91:15

### 9

**9** [3] - 1:9, 57:3, 92:2
**9.1** [2] - 78:21, 79:1

### A

**a.m** [4] - 1:10, 36:18, 36:19, 90:6
**a/k/a** [2] - 1:6, 1:8
**abide** [1] - 19:10
**ability** [1] - 12:14
**able** [6] - 4:19, 4:21, 15:22, 22:9, 41:8, 48:10, 48:11, 48:16, 63:15
**absence** [1] - 57:25
**absolutely** [2] - 89:13, 89:15
**accept** [1] - 21:19
**access** [2] - 4:20, 46:6

**according** [4] - 15:21, 34:7, 50:13, 50:14
**account** [18] - 7:11, 7:22, 7:24, 42:18, 53:6, 70:9, 70:14, 70:18, 70:22, 74:4, 74:10, 74:15, 75:19, 75:22, 75:23, 76:6, 77:5, 83:21
**Account** [1] - 23:16
**accounts** [14] - 7:8, 60:15, 63:11, 74:13, 75:14, 75:16, 75:20, 76:13, 76:18, 77:7, 79:24, 83:5, 83:21, 83:25
**accuracy** [5] - 7:2, 14:14, 15:8, 15:22, 29:23
**accurate** [2] - 15:10, 88:19
**accusatory** [1] - 69:17
**acknowledge** [1] - 60:8
**acknowledged** [1] - 60:25
**acquired** [3] - 44:25, 45:7, 45:12
**acquiring** [1] - 53:7, 53:12, 53:18, 56:6, 57:8
**acquisition** [1] - 60:10
**action** [1] - 41:18
**activity** [1] - 24:5
**acts** [1] - 42:16
**add** [5] - 65:6, 65:8, 89:15, 90:2, 90:3
**addition** [6] - 18:11, 26:3, 28:20, 31:16, 42:16, 64:3
**additional** [13] - 6:2, 6:9, 6:20, 19:13, 20:17, 20:25, 21:4, 21:6, 23:12, 38:13, 62:19, 64:4, 90:3
**address** [6] - 3:9, 11:11, 12:17, 57:11, 58:4, 62:7
**addressed** [1] - 58:14
**addressing** [1] - 3:8
**admissibility** [5] - 10:12, 16:5, 19:9, 19:18, 62:9
**admissible** [5] - 3:19, 11:22, 25:19, 29:13, 29:14
**admissions** [1] - 25:22
**admit** [2] - 22:6, 88:25
**admitted** [11] - 9:4,

U.S.A. v. KENNER and CONSTANTINE

2

12:21, 17:3, 22:16, 24:21, 27:6, 28:6, 30:18, 32:18, 67:6, 88:25
**admitting** [1] - 36:6
**advance** [6] - 18:23, 19:12, 20:3, 21:18, 29:7, 89:11
**advantage** [1] - 62:16
**advisability** [1] - 62:16
**advisable** [1] - 30:3
**advise** [1] - 48:22
**afternoon** [2] - 73:13, 73:14
**agent** [38] - 6:15, 8:2, 8:7, 9:6, 13:14, 13:17, 16:8, 22:21, 24:25, 25:23, 26:11, 27:9, 27:14, 27:17, 32:20, 37:11, 41:4, 47:7, 47:15, 47:22, 48:9, 55:15, 63:3, 63:4, 63:23, 64:8, 64:17, 66:13, 73:5, 73:13, 84:8, 84:22, 85:23, 87:11, 87:16, 87:19, 87:22
**Agent** [19] - 4:10, 4:11, 5:1, 5:2, 6:13, 6:18, 6:25, 9:10, 10:23, 13:7, 14:9, 17:8, 17:17, 26:18, 28:9, 31:13, 37:9, 46:24, 63:4
**agents** [4] - 21:14, 46:4, 47:23
**ago** [4] - 14:18, 41:25, 44:6, 66:15
**agree** [1] - 20:14
**agreement** [6] - 40:20, 61:17, 62:21, 74:16, 74:19, 83:16
**agreements** [2] - 74:23, 74:24
**ahead** [7] - 17:14, 22:11, 36:22, 41:11, 48:6, 59:16, 65:7
**alerted** [1] - 44:2
**allegation** [1] - 24:4
**allegations** [3] - 23:13, 23:20, 30:1
**allege** [1] - 23:12
**alleged** [4] - 23:18, 23:19, 24:1, 59:24
**allow** [8] - 22:10, 47:15, 47:19, 53:25, 64:5, 64:14, 67:10, 87:24
**almost** [1] - 71:20
**AMERICA** [1] - 1:3

**American** [1] - 62:11
**amount** [10] - 7:14, 15:16, 53:1, 59:1, 59:3, 59:9, 68:9, 71:12, 74:2
**Amount** [1] - 15:18
**amounts** [4] - 16:23, 25:9, 57:5, 71:5
**analysis** [3] - 47:18, 83:20, 85:7
**analyzed** [4] - 77:5, 77:8, 79:24, 83:5
**AND** [3] - 92:3, 92:5, 92:12
**ANDREW** [1] - 2:4
**Angeles** [1] - 41:19
**answer** [5] - 42:14, 55:18, 79:11, 86:6
**ANSWER** [1] - 42:19
**anticipate** [1] - 87:9
**anticipated** [2] - 60:16, 62:23
**Antinello** [1] - 33:21
**antinello** [1] - 80:18
**apologize** [1] - 65:2
**appear** [1] - 84:20
**appearance** [1] - 2:15
**APPEARANCES** [1] - 1:14
**appellate** [1] - 52:1
**applies** [2] - 36:9, 87:21
**April** [3] - 86:24, 89:11, 90:6
**Arbitration** [1] - 62:12
**argue** [3] - 35:11, 54:24, 59:21
**arguing** [2] - 35:10, 57:20
**argument** [10] - 55:1, 57:13, 57:14, 58:15, 58:21, 59:4, 60:4, 61:14, 63:3, 65:16
**arguments** [4] - 58:13, 63:25, 64:2, 64:16
**Atilio** [6] - 7:18, 9:17, 9:18, 13:9, 13:13, 15:15
**ASI** [1] - 33:18
**aside** [1] - 59:3
**aspect** [2] - 30:24, 55:8
**aspects** [2] - 42:21
**assets** [2] - 42:17, 43:5
**assignment** [1] - 27:21
**Assistant** [1] - 1:19
**associated** [4] - 59:23, 61:22, 61:23,

70:18
**association** [1] - 45:22
**Association** [1] - 62:12
**assume** [3] - 24:15, 26:12, 65:19
**assuming** [1] - 41:5
**assumption** [1] - 71:15
**atilio** [1] - 80:18
**attempt** [1] - 29:24
**attention** [6] - 6:15, 13:14, 22:21, 24:25, 27:14, 28:9
**Attorney** [1] - 1:16
**attorney** [20] - 10:25, 11:1, 11:5, 12:23, 13:21, 15:6, 18:5, 19:5, 28:16, 33:2, 33:7, 33:9, 34:13, 36:25, 39:25, 40:2, 41:15, 66:23, 66:24
**attorneys** [1] - 20:1
**Attorneys** [1] - 1:19
**attributed** [2] - 67:16, 70:22
**audit** [1] - 83:20
**August** [1] - 45:8
**authenticate** [4] - 25:23, 47:2, 47:8, 64:18
**authenticity** [1] - 11:23, 12:14, 40:13
**authority** [1] - 60:3
**authorization** [1] - 57:19
**authorizing** [1] - 80:2
**available** [3] - 11:10, 11:11, 87:14
**aware** [22] - 4:17, 21:3, 23:19, 38:10, 38:14, 38:15, 43:9, 54:9, 60:25, 61:1, 61:6, 72:7, 76:11, 77:11, 79:10, 79:12, 80:8, 81:11, 81:24, 82:15, 85:6

**B**

**background** [1] - 46:8
**bad** [1] - 75:8
**Baja** [17] - 9:18, 18:2, 18:13, 23:5, 24:6, 40:4, 50:6, 50:7, 50:8, 50:11, 51:5, 60:9, 63:5, 63:10, 67:1, 81:15, 82:20
**bank** [28] - 6:24, 7:4,

7:8, 7:15, 14:21, 14:24, 14:25, 15:2, 15:10, 15:12, 15:23, 16:1, 18:12, 21:6, 23:2, 23:3, 32:9, 32:11, 32:12, 47:18, 67:21, 68:8, 68:14, 68:20, 72:23, 76:17
**banking** [1] - 60:14
**banks** [2] - 75:14, 76:13
**barely** [1] - 11:12
**base** [1] - 65:6
**based** [13] - 11:22, 12:1, 17:12, 22:5, 24:8, 39:20, 43:5, 51:4, 60:2, 70:8, 71:10, 71:15, 85:25
**Bates** [10] - 10:2, 19:24, 20:2, 21:23, 21:24, 22:1, 22:8, 29:5, 35:11, 35:23
**became** [2] - 61:1
**become** [1] - 61:6
**becomes** [1] - 10:21
**BEFORE** [1] - 1:11
**began** [1] - 19:7
**begin** [1] - 63:12
**beginning** [2] - 20:1, 21:1
**believes** [1] - 47:25
**belonged** [1] - 61:16
**bench** [1] - 37:3
**Berard** [4] - 25:8, 69:7, 69:11, 70:6
**best** [4] - 10:24, 49:21, 50:10, 52:3
**better** [3] - 21:14, 65:10, 77:4
**Better** [6] - 23:22, 54:21, 70:19, 72:3, 79:14, 79:17
**between** [10] - 11:4, 17:21, 19:4, 20:5, 23:24, 28:22, 33:17, 33:21, 62:2, 72:1
**beyond** [1] - 31:1
**BIANCO** [1] - 1:12
**bit** [1] - 61:2
**blame** [1] - 62:25
**blatant** [1] - 29:24
**Bob** [6] - 25:8, 25:11, 25:15, 25:24, 39:14, 82:6
**Bobby** [1] - 72:25
**borrowed** [1] - 45:4
**borrowing** [1] - 45:6
**bottom** [5] - 19:24, 21:24, 34:23, 48:17, 74:2

**boxes** [1] - 82:23
**Brad's** [1] - 76:4
**break** [2] - 36:16, 36:17
**brief** [1] - 14:5
**briefs** [1] - 58:14
**bring** [1] - 64:19
**brought** [1] - 87:12
**Bryan** [4] - 25:8, 69:7, 69:11, 70:6
**burden** [1] - 55:16
**business** [1] - 76:4
**but..** [1] - 44:21
**BY** [27] - 1:17, 1:24, 6:12, 13:6, 14:8, 17:7, 22:20, 24:24, 26:17, 37:8, 48:8, 56:1, 57:2, 66:12, 67:12, 69:23, 71:21, 72:12, 73:12, 86:3, 91:4, 91:6, 91:8, 91:10, 91:12, 91:14, 91:16

**C**

**C-6304** [1] - 32:8
**Cabo** [34] - 44:20, 44:25, 45:8, 45:12, 49:15, 49:19, 51:2, 51:6, 51:11, 51:21, 52:2, 52:13, 52:21, 53:2, 53:7, 53:12, 53:19, 53:22, 54:15, 56:4, 56:6, 56:7, 57:22, 60:11, 61:16, 62:1, 63:7, 63:17, 77:13, 78:3, 81:3, 82:16, 83:9, 85:1
**CALCAGNI** [1] - 1:22
**California** [2] - 41:19, 88:7
**cannot** [4] - 25:23, 59:21, 61:24, 88:3
**capable** [1] - 55:15
**Capital** [2] - 23:15, 34:13
**carry** [1] - 59:5
**case** [10] - 2:13, 4:5, 4:8, 4:16, 4:24, 41:5, 64:11, 65:14, 69:16, 86:23
**cases** [1] - 58:9
**Casino** [1] - 27:23
**category** [1] - 86:6
**CD** [3] - 19:25, 38:13, 38:22
**Central** [4] - 1:5, 1:17, 2:8, 41:19
**certain** [5] - 16:14,

U.S.A. v. KENNER and CONSTANTINE

3

24:12, 58:9, 58:22, 88:15

**certainly** [2] - 58:6, 63:25

**chair** [1] - 6:6

**chance** [1] - 30:10

**characterized** [1] - 49:22

**charged** [3] - 66:2, 69:16, 79:20

**Charles** [1] - 8:9

**CHART** [1] - 92:6

**Chart** [13] - 22:22, 22:25, 23:8, 24:22, 31:19, 37:11, 39:9, 39:10, 42:2, 49:25, 50:18, 50:19, 52:12

**chart** [41] - 14:19, 15:9, 23:1, 23:10, 23:15, 24:20, 24:21, 37:15, 37:19, 37:23, 37:25, 38:5, 39:8, 39:13, 42:2, 51:12, 51:13, 51:15, 54:22, 57:7, 63:9, 66:19, 66:21, 66:22, 71:8, 71:10, 73:16, 80:15, 80:21, 81:5, 81:6, 81:12, 81:18, 81:25, 82:8, 82:16, 82:19, 82:23, 84:4

**charts** [6] - 39:4, 39:7, 39:12, 39:17, 43:3, 51:9

**check** [11] - 21:20, 22:7, 29:9, 31:9, 32:6, 32:7, 32:12, 32:13, 35:17, 36:6, 88:22

**checks** [2] - 32:2, 83:24

**choice** [1] - 86:12

**circle** [2] - 48:12, 48:13

**circumstances** [1] - 61:11

**clear** [2] - 19:24, 26:9

**clearly** [2] - 21:1, 87:16

**CLERK** [5] - 2:11, 2:13, 5:9, 5:14, 36:20

**clerk** [2] - 4:14, 6:8

**client** [4] - 4:12, 40:3, 65:5, 87:7

**client's** [4] - 4:19, 4:24, 12:14, 49:14

**clients** [6] - 24:5, 30:1, 50:2, 54:14, 54:19, 54:23

**closing** [1] - 34:14

**CMD** [2] - 23:7, 31:21

**CMG** [6] - 32:9, 32:11, 68:14, 72:19, 83:6, 83:11

**co** [3] - 58:24, 59:10, 59:12

**co-mingled** [1] - 58:24, 59:12

**co-mingling** [1] - 59:10

**collected** [1] - 38:16

**column** [26] - 14:9, 16:2, 16:6, 16:10, 16:16, 17:1, 17:4, 52:13, 52:15, 52:16, 52:20, 56:3, 57:3, 67:13, 69:5, 73:18, 73:21, 74:6, 75:3, 75:23, 78:5, 79:13, 81:20, 86:10

**columns** [6] - 15:18, 15:19, 15:21, 16:17, 57:5, 78:18

**coming** [14] - 17:22, 17:23, 18:13, 31:21, 50:1, 50:22, 72:24, 80:22, 81:13, 81:14, 87:10, 88:6, 90:4

**commence** [1] - 4:16

**commenced** [1] - 41:18

**commencement** [3] - 19:1, 19:5, 37:13

**commingling** [1] - 59:6

**committed** [4] - 23:25, 24:1, 62:3

**communications** [3] - 10:24, 19:4, 19:6

**company** [7] - 13:19, 18:2, 27:1, 77:16, 77:18, 77:19, 77:22

**compare** [1] - 30:21

**compel** [1] - 11:16

**complaints** [3] - 29:16, 29:20, 31:3

**complete** [3] - 66:9, 83:20

**completed** [2] - 19:16, 19:17

**completeness** [1] - 89:3

**compliment** [1] - 36:25

**comply** [1] - 11:16

**computer** [1] - 4:20

**concede** [1] - 12:20

**concerned** [2] - 16:22, 62:4

**concerning** [6] - 15:8, 39:18, 40:3, 48:4, 49:2, 86:5

**conclude** [1] - 4:8

**concluded** [1] - 90:11

**conclusion** [1] - 38:12

**conclusions** [2] - 47:18, 60:2

**condo** [1] - 27:21

**conduct** [6] - 14:5, 23:12, 66:2, 66:3

**conducted** [1] - 44:11

**confers** [1] - 10:18

**confirm** [1] - 34:15

**confused** [1] - 20:21

**connected** [2] - 39:19, 54:24

**connection** [4] - 41:16, 43:13, 72:22, 84:10

**conscious** [1] - 55:21

**consider** [5] - 16:25, 59:13, 64:15, 66:1, 89:24

**consideration** [2] - 52:1, 62:8

**considered** [2] - 24:1, 29:15

**consignment** [1] - 27:24

**consist** [1] - 10:9

**consistent** [2] - 3:11, 14:21

**consists** [1] - 66:8

**conspiracy** [2] - 59:13, 66:1

**CONSTANTINE** [1] - 1:7

**Constantine** [33] - 2:1, 2:14, 2:22, 2:24, 32:7, 45:23, 74:24, 75:5, 75:7, 75:10, 75:19, 76:2, 76:8, 76:10, 76:17, 76:22, 78:1, 78:15, 79:8, 79:17, 80:10, 81:6, 81:8, 81:17, 81:22, 82:7, 82:12, 82:24, 83:15, 83:19, 84:20, 84:23, 85:7

**Constantine's** [3] - 77:10, 80:6, 83:25

**constituted** [1] - 86:6

**consulting** [1] - 83:15

**contained** [10] - 13:23, 14:19, 15:21, 21:5, 29:24, 33:25, 37:24, 38:22, 39:17, 86:9

**contains** [3] - 14:9, 29:16, 66:25

**context** [2] - 24:4, 89:2

**continuation** [1] - 3:6

**continue** [3] - 3:16, 5:1, 55:24

**CONTINUED** [12] - 6:11, 13:5, 17:6, 22:19, 24:23, 26:16, 31:11, 48:7, 55:25, 91:3, 91:7, 91:11

**continued** [2] - 36:19, 56:13

**continues** [1] - 10:24

**Continuing** [1] - 57:1

**contributions** [1] - 24:6

**Contributions** [1] - 23:16

**controlled** [6] - 13:19, 51:5, 52:4, 70:10, 70:18, 70:22

**Controlled** [1] - 23:16

**conversation** [2] - 22:7, 28:18

**conversations** [3] - 28:20, 29:1, 75:10

**conviction** [2] - 42:4, 54:16

**conway** [1] - 73:10

**Conway** [4] - 2:22, 17:11, 24:15, 87:4

**CONWAY** [23] - 2:1, 2:3, 2:21, 9:3, 17:12, 19:22, 21:22, 22:14, 24:16, 26:3, 27:5, 30:7, 32:15, 35:7, 73:12, 85:16, 85:19, 87:2, 87:5, 88:1, 89:13, 90:7, 91:14

**cooperation** [2] - 11:4

**copied** [1] - 33:8

**copies** [2] - 5:20, 6:2

**copy** [6] - 33:7, 35:2, 37:3, 40:10, 41:15, 43:25

**Corp** [7] - 50:6, 50:11, 51:5, 60:9, 63:5, 67:1, 70:19

**corporate** [2] - 60:14, 60:15

**correct** [66] - 7:6, 7:22, 12:13, 14:2, 15:6, 16:24, 20:7, 27:25, 32:3, 32:4, 34:19, 39:25, 43:18, 45:9, 45:14, 49:23, 50:2, 50:4, 50:6, 50:8, 50:16, 50:24, 51:2, 51:11, 51:13, 52:4, 52:5, 52:18,

53:2, 56:9, 56:12, 66:20, 67:1, 67:17, 67:24, 69:25, 73:23, 74:21, 75:14, 75:24, 77:13, 77:14, 77:16, 77:17, 77:18, 77:20, 77:23, 79:1, 79:16, 79:19, 79:21, 80:4, 80:23, 81:6, 81:10, 81:15, 82:3, 82:17, 82:25, 83:1, 83:11, 83:13, 83:14, 83:16, 87:2, 88:18

**corrected** [1] - 62:15

**corroborate** [1] - 65:4

**counsel** [10] - 2:15, 6:3, 8:6, 11:17, 20:24, 40:13, 40:17, 44:7, 65:14, 89:11

**Country** [1] - 2:1

**County** [1] - 41:19

**course** [27] - 12:5, 12:6, 19:2, 20:12, 21:18, 23:11, 24:9, 25:22, 26:1, 31:2, 37:1, 37:17, 39:5, 39:16, 44:15, 44:18, 45:22, 46:2, 47:23, 49:8, 49:11, 49:21, 60:18, 68:23, 71:25, 77:6, 89:17

**Court** [39] - 2:4, 2:7, 4:17, 11:12, 19:15, 19:16, 21:2, 22:25, 23:23, 24:7, 24:9, 25:4, 29:13, 29:15, 29:25, 30:17, 33:19, 35:17, 37:23, 38:4, 41:18, 43:9, 46:8, 47:8, 54:6, 59:7, 59:19, 59:25, 60:3, 60:4, 61:25, 64:22, 65:1, 66:1, 67:19, 87:8, 88:5, 88:7

**COURT** [107] - 1:1, 2:12, 2:20, 2:25, 3:4, 4:4, 4:9, 4:25, 5:20, 6:6, 6:10, 8:24, 9:1, 9:4, 10:7, 10:17, 11:21, 12:21, 14:6, 16:8, 16:15, 16:22, 16:25, 17:3, 17:10, 17:14, 20:4, 20:14, 20:19, 21:20, 22:5, 22:13, 22:16, 24:11, 24:18, 24:21, 25:15, 25:17, 26:7, 27:6, 28:6, 30:8, 30:21, 31:4, 31:6, 32:17, 33:12, 33:14, 33:16,

U.S.A. v. KENNER and CONSTANTINE

4

34:23, 35:5, 35:19, 36:2, 36:6, 36:13, 36:16, 36:21, 37:5, 41:2, 41:11, 42:9, 42:24, 46:12, 46:16, 47:6, 47:12, 47:24, 48:6, 52:9, 53:24, 54:7, 55:1, 55:14, 55:23, 57:11, 58:15, 59:2, 59:16, 63:21, 64:24, 65:3, 65:16, 66:4, 67:6, 67:9, 69:22, 71:17, 72:7, 73:3, 73:9, 85:17, 85:21, 85:23, 86:1, 86:18, 86:22, 87:3, 87:21, 88:16, 88:19, 88:24, 89:8, 89:14, 89:21, 90:2, 90:6, 90:10

**court** [3] - 6:18, 21:9, 52:1

**Court's** [5] - 4:22, 19:10, 32:17, 36:24, 62:7

**Courthouse** [1] - 1:4

**covered** [3] - 42:10, 42:12, 52:9

**crazy** [1] - 47:8

**creation** [1] - 42:1

**credit** [27] - 7:3, 7:5, 39:13, 42:18, 50:2, 50:22, 51:10, 62:17, 70:24, 70:25, 71:4, 71:6, 71:9, 71:11, 72:16, 72:24, 74:7, 74:9, 76:13, 76:15, 76:21, 79:23, 80:1, 80:3, 80:11, 82:5, 82:14

**credited** [1] - 53:6

**credits** [1] - 74:13

**criminal** [8] - 23:4, 28:21, 30:20, 31:24, 38:7, 43:8, 65:9, 84:5

**CROSS** [8] - 37:7, 48:7, 55:25, 57:1, 73:11, 91:9, 91:11, 91:13

**cross** [7] - 4:11, 26:10, 26:12, 29:23, 36:17, 46:17

**CROSS-EXAMINATION** [6] - 48:7, 55:25, 57:1, 73:11, 91:11, 91:13

**cross-examination** [2] - 26:10, 36:17

**CRR** [1] - 2:7

**CSL** [3] - 23:15, 23:17, 24:6

**curious** [1] - 69:15

**cursory** [1] - 21:10

### D

**date** [4] - 4:14, 4:15, 19:17, 31:16

**Date** [1] - 15:18

**DDM** [3] - 34:9, 34:19

**deal** [3] - 4:21, 4:22, 73:22

**dealing** [2] - 26:5, 79:8

**dealings** [2] - 75:6, 75:7

**deals** [1] - 75:5

**December** [7] - 20:9, 20:24, 21:4, 38:11, 38:17, 38:21

**decide** [1] - 3:21

**decided** [2] - 4:5, 24:9

**decision** [4] - 6:19, 25:5, 53:21, 55:21

**Defendant** [2] - 1:22, 2:1

**defendant** [3] - 3:2, 29:22, 35:25

**defendant's** [2] - 16:19, 36:5

**defendants** [4] - 3:5, 20:22, 36:4, 58:10

**Defendants** [1] - 1:9

**defense** [16] - 4:4, 4:5, 4:16, 19:11, 19:19, 20:1, 25:21, 29:22, 35:18, 38:17, 43:11, 43:14, 49:7, 60:7, 61:18, 86:23

**deference** [1] - 46:18

**defrauded** [3] - 54:18, 58:18, 58:20

**del** [5] - 32:25, 34:3, 34:5, 54:15, 55:21

**Del** [11] - 57:3, 57:7, 57:9, 57:22, 60:11, 63:7, 63:18, 78:18, 81:15, 84:24, 84:25

**delay** [1] - 88:14

**demonstrate** [2] - 29:25, 61:11

**deposit** [2] - 52:25, 75:23

**deposited** [3] - 56:5, 71:11, 76:20

**deposition** [2] - 40:14, 67:9

**deposits** [6] - 9:17, 13:13, 13:24, 16:19,

16:20, 18:13

**deputy** [1] - 86:22

**derogation** [1] - 18:22

**describe** [5] - 13:7, 22:25, 25:7, 67:19, 79:7

**designation** [1] - 35:4

**desk** [1] - 5:19

**detecting** [1] - 29:5

**determination** [3] - 23:23, 59:22, 60:1

**determinations** [2] - 43:3, 61:13

**determine** [3] - 29:13, 59:2, 59:7

**determining** [2] - 59:1, 72:1

**develop** [3] - 62:19, 63:15, 64:1

**developed** [1] - 61:15

**developing** [1] - 51:6

**Development** [16] - 18:13, 23:5, 23:21, 24:6, 40:4, 50:6, 50:11, 51:5, 54:19, 54:24, 60:9, 63:5, 63:10, 67:1, 81:15, 82:21

**development** [7] - 49:15, 60:12, 60:22, 63:6, 63:17, 70:23, 72:2

**DeVries** [11] - 41:17, 52:25, 53:17, 53:21, 53:24, 55:20, 69:24, 70:2, 70:7

**DeVries'** [1] - 53:21

**Diamante** [49] - 32:25, 34:3, 34:5, 44:20, 44:25, 45:8, 45:12, 49:15, 50:7, 50:8, 51:2, 51:11, 51:21, 52:2, 52:13, 52:21, 53:2, 53:7, 53:12, 53:19, 53:22, 54:15, 55:21, 56:3, 56:5, 56:7, 57:3, 57:7, 57:9, 57:22, 60:10, 60:11, 61:16, 61:25, 63:7, 63:17, 77:13, 78:2, 78:18, 81:3, 81:4, 81:16, 83:9, 84:24, 84:25

**Diane** [1] - 2:17

**DIANE** [1] - 1:17

**different** [6] - 22:2, 22:8, 51:19, 51:25, 60:2, 82:20

**difficulty** [2] - 4:18, 4:19

**dire** [2] - 14:5, 37:18

**DIRE** [2] - 14:7, 91:5

**DIRECT** [9] - 6:11, 13:5, 17:6, 22:19, 24:23, 26:16, 31:11, 91:3, 91:7

**direct** [16] - 4:3, 13:14, 24:25, 27:14, 28:9, 39:16, 57:23, 59:17, 74:3, 75:3, 75:9, 75:11, 75:23, 79:3, 79:5, 79:6

**direction** [1] - 63:20

**directly** [8] - 15:4, 25:15, 42:17, 42:21, 56:4, 57:21, 70:22, 88:3

**discern** [1] - 48:17

**disclosure** [1] - 20:10

**discovery** [2] - 35:25, 88:8

**discrete** [1] - 40:25

**discuss** [1] - 88:11

**discussed** [5] - 22:22, 26:18, 30:19, 30:20, 62:16

**discussing** [6] - 13:8, 13:12, 15:15, 17:22, 33:18, 87:6

**disks** [2] - 38:13, 38:22

**display** [1] - 5:15

**dispute** [4] - 12:3, 30:24, 60:3, 61:2

**disputes** [1] - 30:2

**DISTRICT** [2] - 1:1, 1:1

**District** [2] - 1:12, 41:19

**document** [60] - 10:9, 10:12, 10:13, 10:16, 10:22, 11:8, 11:12, 16:6, 16:16, 18:4, 18:7, 18:25, 19:9, 19:19, 20:9, 20:25, 21:12, 21:23, 22:3, 24:4, 25:19, 25:23, 25:24, 27:22, 28:15, 28:17, 29:6, 29:12, 29:15, 29:21, 29:24, 30:25, 34:24, 35:8, 35:10, 35:13, 35:14, 37:2, 37:3, 40:8, 40:13, 40:17, 41:1, 41:14, 41:22, 43:21, 44:4, 44:16, 45:18, 47:2, 47:4, 47:22, 48:12, 48:23, 66:18, 66:24, 77:12, 88:10

**documentary** [1] - 18:23

**documents** [71] - 6:9, 8:13, 8:17, 8:19, 8:22, 9:15, 9:21, 9:24, 10:1, 11:1, 11:7, 11:15, 11:17, 11:20, 11:22, 12:1, 12:4, 12:9, 12:11, 12:15, 12:24, 14:14, 18:11, 19:7, 19:25, 20:16, 20:17, 20:24, 21:3, 21:5, 21:6, 21:10, 21:11, 21:13, 21:17, 21:25, 22:1, 35:24, 38:8, 38:10, 38:15, 38:17, 38:19, 38:20, 38:25, 39:2, 39:3, 39:20, 39:23, 43:1, 43:5, 43:7, 53:14, 62:6, 64:5, 71:24, 72:5, 72:7, 72:13, 72:21, 74:25, 76:17, 77:9, 77:10, 79:25, 80:1, 80:2, 80:6, 89:12

**dollar** [1] - 16:22

**done** [7] - 3:22, 71:20, 76:1, 76:8, 76:21, 83:22, 83:24

**Dorn** [1] - 89:19

**double** [4] - 21:20, 29:9, 31:9, 36:6

**down** [18] - 9:17, 9:19, 13:9, 13:18, 17:22, 17:23, 18:1, 33:18, 49:17, 62:13, 69:11, 71:1, 74:2, 83:9, 85:23, 86:14, 86:18

**dozen** [3] - 78:10, 78:25

**drafted** [1] - 71:9

**draw** [1] - 22:21

**drawn** [1] - 47:18

**drop** [1] - 15:3

**due** [1] - 87:8

**duly** [1] - 5:7

**during** [28] - 12:5, 12:6, 19:2, 20:12, 21:18, 23:11, 26:2, 28:21, 30:18, 30:20, 31:2, 31:24, 37:1, 37:17, 39:4, 39:16, 42:6, 46:2, 49:8, 49:10, 49:11, 49:21, 52:10, 60:18, 65:9, 68:23, 71:24, 89:23

### E

**e-mail** [20] - 13:10, 13:12, 13:25, 16:20,

## U.S.A. v. KENNER and CONSTANTINE

5

17:21, 18:3, 25:4, 25:8, 28:14, 28:18, 28:20, 30:11, 30:12, 30:22, 31:7, 33:17, 33:21, 33:22, 33:25, 34:7
**e-mails** [4] - 9:16, 17:21, 21:6, 31:1
**EASTERN** [1] - 1:1
**efforts** [1] - 47:12
**eight** [3] - 77:21, 77:25, 80:21
**either** [8] - 23:5, 57:21, 64:12, 72:9, 79:3, 79:25, 81:15, 86:7
**elicit** [3] - 42:14, 51:24, 88:2
**embellish** [1] - 29:25
**employ** [1] - 52:6
**encountered** [1] - 4:18
**end** [2] - 20:5, 77:12
**endeavor** [1] - 40:21
**enforcement** [1] - 46:3
**entire** [4] - 40:17, 44:16, 65:14, 71:12
**entities** [3] - 54:3, 60:14, 60:15
**entitled** [5] - 40:23, 41:16, 73:21, 74:17, 79:13
**entity** [4] - 51:5, 51:21, 56:7, 59:8
**entries** [3] - 6:21, 7:2, 66:18
**entry** [2] - 6:25, 7:13
**equity** [1] - 53:22
**essentially** [1] - 65:21
**establish** [1] - 63:16
**established** [1] - 70:15
**estimated** [5] - 68:3, 68:4, 68:6, 68:18, 68:19
**Ethan** [3] - 68:12, 68:14, 72:18
**Eufora** [5] - 23:21, 54:20, 70:10, 72:2, 72:9
**event** [1] - 30:14
**eventually** [4] - 72:15, 72:16, 75:24, 82:5
**evidence** [60] - 3:16, 3:18, 5:24, 6:2, 6:20, 8:23, 9:5, 10:5, 13:4, 17:5, 18:23, 22:6, 22:10, 22:18, 23:4, 23:9, 24:22, 26:15, 27:8, 27:10, 28:3,

28:8, 28:21, 30:18, 31:1, 31:10, 31:19, 31:24, 32:3, 32:14, 32:19, 34:16, 35:20, 36:11, 37:15, 37:25, 38:2, 38:4, 38:5, 38:6, 38:7, 38:9, 40:20, 43:8, 49:25, 54:8, 55:5, 55:18, 61:18, 62:10, 62:22, 63:9, 66:7, 66:14, 67:8, 72:8, 80:5, 83:15, 84:9, 84:23
**EVIDENCE** [1] - 92:13
**exact** [2] - 58:6, 68:9
**exam** [1] - 45:18
**examination** [4] - 21:11, 26:10, 36:17, 39:17
**EXAMINATION** [21] - 6:11, 13:5, 14:7, 17:6, 22:19, 24:23, 26:16, 31:11, 37:7, 48:7, 55:25, 57:1, 73:11, 86:2, 91:3, 91:5, 91:7, 91:9, 91:11, 91:13, 91:15
**examine** [1] - 29:23
**examined** [1] - 5:8
**examining** [2] - 4:11, 15:23
**example** [1] - 62:10
**exception** [1] - 56:8
**excerpt** [3] - 40:22, 41:7, 88:5
**exchange** [1] - 18:3
**excuse** [1] - 49:5
**executed** [1] - 48:10
**EXHIBIT** [10] - 92:2, 92:3, 92:4, 92:5, 92:7, 92:8, 92:9, 92:10, 92:11, 92:12
**exhibit** [14] - 6:16, 6:18, 6:19, 6:21, 8:5, 9:4, 13:10, 25:7, 26:1, 26:11, 26:14, 33:11, 35:9, 49:8
**Exhibit** [71] - 6:16, 7:6, 7:8, 7:21, 8:2, 8:3, 8:7, 9:5, 9:6, 9:20, 13:3, 13:7, 13:11, 13:15, 13:17, 13:25, 14:4, 16:20, 17:5, 17:9, 18:3, 18:6, 18:15, 22:17, 24:25, 25:3, 25:4, 26:15, 26:20, 27:2, 27:8, 27:9, 27:10, 27:15, 27:17, 28:3, 28:8, 28:10, 28:24,

29:4, 31:10, 31:14, 31:25, 32:5, 32:14, 32:18, 32:19, 32:20, 32:24, 33:20, 34:21, 35:12, 36:8, 36:9, 36:10, 40:7, 43:20, 44:22, 45:17, 46:7, 48:9, 49:7, 66:7, 66:10, 73:15, 84:12, 84:13, 88:5
**exhibits** [15] - 3:16, 5:16, 5:19, 5:23, 5:25, 6:20, 9:10, 9:20, 10:8, 17:17, 18:17, 32:3, 79:25, 84:9, 84:19
**EXHIBITS** [1] - 92:13
**Exhibits** [3] - 17:15, 67:4, 67:8
**exist** [1] - 54:1
**exists** [2] - 11:7, 87:15
**expect** [1] - 63:12
**expedite** [2] - 59:18, 64:23
**experience** [1] - 46:9
**extension** [1] - 72:14
**extent** [6] - 29:13, 29:14, 55:3, 60:19, 65:13, 87:19

### F

**F-1** [2] - 40:7, 67:9
**F-2** [6] - 43:20, 44:23, 67:4, 67:6, 67:8, 92:13
**F-3** [5] - 45:17, 46:7, 48:10, 67:8, 92:13
**F-4** [3] - 66:7, 67:8, 92:13
**fact** [11] - 10:1, 11:19, 12:15, 24:2, 44:3, 50:14, 61:13, 62:25, 65:10, 79:20, 85:10
**failure** [1] - 19:10
**fair** [6] - 43:1, 50:18, 71:7, 82:10, 83:18, 86:16
**familiar** [2] - 47:10, 87:17
**far** [6] - 10:23, 19:3, 22:2, 27:24, 31:1, 62:4
**fashion** [1] - 21:25
**FBI** [1] - 46:4
**February** [1] - 37:14
**Federal** [2] - 1:16, 2:7
**fees** [1] - 34:13
**felt** [1] - 47:21
**few** [1] - 19:13

**fifth** [1] - 51:19
**figure** [1] - 68:5
**figures** [1] - 86:5
**final** [1] - 88:4
**findings** [1] - 65:15
**fine** [2] - 6:4, 54:9
**finished** [1] - 80:19
**finishing** [1] - 71:22
**first** [16] - 10:11, 10:13, 20:4, 21:24, 29:10, 31:16, 37:14, 42:6, 42:10, 48:10, 48:18, 51:12, 57:12, 59:4, 72:14, 74:15
**flow** [3] - 70:9, 70:17, 70:21
**flowed** [7] - 49:14, 50:10, 56:9, 60:8, 60:14, 63:10, 63:16
**flowing** [3] - 57:6, 60:21, 63:5
**focus** [1] - 37:1
**follow** [1] - 26:18
**follow-up** [1] - 26:18
**following** [2] - 37:23, 38:12
**follows** [1] - 5:8
**FORF-1** [6] - 37:3, 37:11, 52:18, 56:3, 67:13, 86:5
**FORF-44** [2] - 14:9, 66:13
**FORF-54** [3] - 18:25, 19:8, 21:17
**FORF-57** [1] - 18:19
**forfeit** [1] - 62:2
**forfeited** [4] - 39:19, 54:25, 59:9, 62:1
**forfeiture** [29] - 3:7, 3:20, 4:13, 19:6, 20:5, 23:11, 23:24, 24:3, 24:8, 24:13, 25:20, 38:8, 38:10, 39:5, 54:13, 54:22, 59:1, 59:3, 60:1, 63:19, 64:10, 65:6, 65:19, 71:12, 73:16, 84:12, 84:13
**Forfeiture** [31] - 1:7, 6:16, 8:2, 9:5, 9:6, 9:20, 13:3, 13:15, 13:25, 17:5, 17:8, 18:6, 22:17, 23:2, 23:3, 25:3, 25:4, 26:15, 26:20, 27:2, 27:8, 27:14, 27:17, 28:8, 28:10, 31:10, 31:13, 32:19, 32:20, 36:10
**FORFEITURE** [10] -

92:2, 92:3, 92:4, 92:5, 92:7, 92:8, 92:9, 92:10, 92:11, 92:12
**forget** [1] - 89:7
**form** [1] - 65:23
**formal** [1] - 67:3
**forming** [1] - 43:2
**forth** [4] - 23:12, 23:18, 68:9, 86:5
**four** [2] - 19:25, 59:23
**fourth** [3] - 51:17, 52:12, 52:15
**Frailes** [15] - 69:14, 70:11, 70:14, 72:20, 72:22, 78:6, 78:7, 80:25, 81:25, 85:3, 85:5, 85:8, 85:11, 85:14, 86:6
**frankly** [1] - 21:8
**fraud** [3] - 59:23, 61:21, 61:23
**fraudulent** [10] - 23:12, 23:18, 23:20, 24:5, 58:10, 58:24, 61:12, 63:18, 69:19
**fraudulently** [1] - 69:2
**front** [4] - 37:11, 41:14, 73:16, 80:14
**full** [8] - 40:21, 40:23, 41:6, 66:9, 67:10, 83:20, 88:10, 88:17
**functions** [1] - 57:6
**fund** [1] - 70:15
**Fund** [3] - 23:21, 54:20, 72:9
**funds** [13] - 40:3, 43:4, 45:11, 46:21, 58:11, 58:12, 59:12, 62:19, 68:2, 68:17, 69:9, 70:9

### G

**Galioto** [6] - 44:12, 48:3, 49:2, 87:16, 87:19, 87:22
**Gardenia** [1] - 72:16
**Gaudet** [17] - 25:8, 25:11, 25:15, 25:24, 38:25, 39:2, 39:3, 39:14, 69:12, 69:14, 69:16, 71:1, 72:25, 73:1, 82:3, 82:6, 86:13
**general** [1] - 32:25
**generated** [3] - 43:12, 45:24, 87:23
**given** [6] - 35:10, 46:8, 46:18, 47:12, 66:23,

U.S.A. v. KENNER and CONSTANTINE

**6**

66:24
**Global** [7] - 23:21, 42:18, 43:4, 54:20, 70:15, 72:3, 72:9
**government** [64] - 3:17, 3:25, 4:7, 4:15, 8:12, 9:21, 10:23, 11:4, 12:8, 12:24, 15:7, 16:15, 18:4, 18:7, 19:4, 19:8, 19:11, 19:13, 19:15, 21:5, 22:8, 23:11, 23:25, 25:10, 25:14, 26:25, 27:22, 28:15, 28:17, 30:25, 31:6, 33:1, 35:17, 38:12, 40:11, 40:22, 41:6, 42:3, 42:14, 43:12, 43:17, 46:24, 47:13, 47:15, 47:25, 54:12, 55:4, 58:16, 59:21, 61:24, 64:9, 66:7, 68:24, 86:19, 86:20, 87:10, 87:18, 88:9, 88:11, 88:13, 88:16, 89:1, 89:16
**Government** [6] - 1:15, 7:5, 14:9, 27:10, 28:24, 87:6
**government's** [13] - 3:8, 12:18, 18:21, 19:20, 21:11, 21:16, 22:5, 29:8, 46:16, 46:18, 47:12, 55:16, 64:10
**Grand** [3] - 60:24, 61:2, 89:19
**great** [1] - 4:25
**greater** [1] - 62:18
**Greg** [11] - 41:16, 52:25, 53:17, 53:20, 53:21, 55:20, 69:24, 70:2, 70:7
**gross** [1] - 21:10
**Group** [3] - 32:7, 82:24, 83:19
**GSF** [1] - 72:6
**guess** [1] - 21:11, 22:4, 86:14

## H

**Haley** [12] - 3:2, 3:10, 10:18, 11:24, 36:22, 46:12, 46:19, 47:6, 47:13, 57:20, 71:18, 87:21
**HALEY** [94] - 1:22, 1:24, 3:2, 4:7, 4:10, 5:15, 5:18, 5:21,

5:23, 6:4, 6:7, 8:4, 9:2, 10:6, 10:8, 10:11, 10:21, 12:3, 13:2, 14:5, 14:8, 16:5, 17:2, 18:19, 20:8, 21:2, 21:21, 22:15, 23:10, 25:18, 27:3, 28:4, 29:5, 29:10, 30:24, 31:5, 32:16, 35:3, 35:6, 36:23, 37:6, 37:8, 40:10, 40:19, 41:9, 41:12, 42:13, 42:25, 44:2, 44:5, 46:15, 47:20, 48:2, 48:8, 52:11, 54:5, 54:11, 55:13, 55:17, 56:1, 57:2, 59:17, 64:21, 65:1, 66:5, 66:12, 67:3, 67:7, 67:11, 67:12, 69:23, 71:19, 71:21, 72:12, 73:2, 73:5, 73:7, 85:24, 86:3, 86:17, 87:1, 88:4, 88:18, 88:23, 89:5, 89:9, 89:15, 90:1, 90:5, 90:8, 91:6, 91:10, 91:12, 91:16
**Haley's** [2] - 19:22, 46:17
**half** [3] - 4:2, 40:14, 78:10
**half-hour** [1] - 4:2
**Handing** [1] - 44:7
**handwriting** [1] - 48:14
**handwritten** [4] - 48:3, 48:11, 48:17
**happy** [1] - 55:12
**Harvey** [4] - 11:1, 15:6, 39:24, 41:15
**Hawaii** [34] - 23:20, 33:24, 49:3, 49:4, 49:5, 49:14, 49:18, 54:19, 54:24, 57:17, 57:18, 57:23, 59:8, 60:9, 60:14, 60:21, 61:16, 62:13, 62:19, 63:5, 63:10, 72:9, 73:19, 73:21, 73:22, 73:24, 74:1, 74:3, 74:13, 74:15, 75:3, 75:22, 76:6, 79:4
**Hawaiian** [9] - 63:16, 70:23, 70:24, 70:25, 72:2, 74:10, 74:12, 76:1, 76:6
**headed** [1] - 47:21
**hear** [2] - 11:21, 49:13

**hearing** [20] - 3:12, 3:22, 4:13, 19:3, 19:6, 20:5, 22:2, 22:23, 23:11, 23:24, 24:3, 24:8, 24:10, 25:20, 25:22, 31:7, 31:17, 39:5, 54:13, 89:11
**Hearing** [1] - 1:7
**hearsay** [9] - 3:14, 25:18, 25:19, 25:22, 26:7, 29:12, 29:14, 46:18, 47:13
**helpful** [1] - 35:15
**Highway** [1] - 1:23
**history** [2] - 7:3, 7:5
**hockey** [12] - 24:5, 30:1, 49:14, 50:2, 54:14, 54:18, 55:6, 57:17, 57:21, 58:1, 61:9, 61:20
**home** [3] - 8:14, 8:20, 85:10
**Home** [1] - 8:17
**Honor** [77] - 2:19, 3:1, 4:1, 4:7, 5:18, 5:25, 6:8, 8:22, 9:3, 10:4, 10:8, 10:22, 11:14, 13:1, 13:2, 14:4, 16:18, 17:12, 18:17, 19:12, 19:23, 20:7, 20:15, 20:23, 21:2, 23:8, 24:17, 24:20, 25:12, 25:18, 26:3, 27:5, 28:2, 29:4, 30:7, 30:16, 34:21, 34:25, 35:22, 36:1, 36:12, 36:14, 37:2, 40:12, 42:5, 43:25, 46:11, 47:9, 47:20, 52:8, 53:23, 54:11, 58:3, 58:5, 59:17, 60:23, 62:5, 65:8, 65:14, 65:24, 67:7, 69:21, 71:19, 85:19, 85:22, 85:24, 86:20, 87:1, 87:2, 87:5, 88:1, 88:4, 88:21, 89:10, 90:7, 90:9
**Honor's** [1] - 23:19
**HONORABLE** [1] - 1:12
**hopeful** [1] - 4:23
**hopefully** [1] - 63:22
**Hormovitis** [1] - 1:8
**hour** [1] - 4:2
**hundred** [1] - 53:4

## I

**id** [1] - 62:3
**idea** [1] - 62:20
**identification** [2] - 40:7, 40:24
**identify** [3] - 38:20, 42:17, 54:13
**illustrating** [1] - 81:13
**imagine** [1] - 75:13
**important** [1] - 47:21
**IN** [1] - 92:13
**include** [2] - 43:16, 71:4
**included** [3] - 39:15, 71:5, 71:9
**including** [1] - 66:2
**inconsistent** [4] - 41:4, 46:23, 47:17, 64:10
**indeed** [7] - 12:19, 47:20, 50:18, 60:1, 60:23, 62:22, 63:19
**indicate** [5] - 33:5, 34:9, 38:4, 82:24, 89:16
**indicated** [2] - 14:18, 15:18
**indictment** [8] - 23:13, 23:19, 42:8, 42:10, 42:12, 42:21, 59:24, 79:20
**individual** [5] - 50:23, 51:1, 60:19, 71:11, 80:23
**individuals** [5] - 56:5, 56:6, 57:7, 57:8, 68:25
**induced** [1] - 69:2
**information** [12] - 12:11, 13:23, 13:24, 14:18, 15:21, 15:23, 37:18, 37:24, 38:1, 39:17, 41:25, 46:20
**informed** [1] - 80:9
**initial** [1] - 76:5
**inquiry** [3] - 11:5, 37:17, 71:22
**insofar** [1] - 25:18
**instances** [4] - 19:13, 19:14, 23:7, 73:25
**instrument** [1] - 69:17
**intend** [2] - 87:3, 89:12
**intended** [6] - 73:24, 78:13, 86:7, 86:11, 86:12, 86:15
**intends** [1] - 43:17
**intent** [2] - 4:12, 61:12
**intention** [2] - 3:11,

89:18
**intercession** [1] - 4:23
**interest** [15] - 44:19, 44:25, 45:8, 53:2, 53:7, 53:12, 53:18, 53:22, 56:7, 57:9, 61:20, 61:25, 62:21, 84:24, 85:4
**interrupted** [1] - 65:1
**interview** [8] - 44:9, 44:11, 44:13, 44:15, 44:18, 47:5, 47:11, 48:4
**interviewed** [1] - 47:7
**interviews** [2] - 43:17, 54:1
**introduce** [6] - 24:2, 41:5, 64:14, 89:1, 89:12, 89:19
**introduced** [12] - 5:23, 6:2, 31:19, 37:15, 39:4, 49:7, 61:17, 66:14, 71:24, 72:21, 84:8, 89:17
**introducing** [2] - 16:15, 30:25
**invest** [9] - 53:21, 55:21, 74:20, 78:2, 78:13, 78:16, 79:9, 82:13, 86:7
**invested** [9] - 57:17, 67:23, 75:3, 77:22, 78:11, 78:13, 85:8, 86:7, 86:11
**investigation** [13] - 12:7, 12:10, 26:1, 26:2, 42:22, 43:3, 43:13, 45:23, 45:25, 46:2, 46:9, 70:9, 77:6
**investigator** [1] - 69:16
**investment** [22] - 33:24, 53:1, 53:18, 55:7, 55:9, 55:11, 56:7, 57:9, 57:18, 58:11, 58:18, 58:19, 58:23, 60:21, 62:24, 69:3, 70:2, 70:6, 79:16, 79:18, 85:11
**investments** [23] - 29:18, 30:3, 30:4, 30:5, 33:23, 49:23, 54:13, 54:22, 57:23, 58:7, 70:5, 74:3, 75:11, 79:3, 79:5, 79:6, 81:10, 81:23, 82:1, 82:2, 82:4, 86:15
**investor** [2] - 16:19,

## U.S.A. v. KENNER and CONSTANTINE

62:12

**investors** [18] - 25:9, 60:19, 68:25, 74:19, 74:23, 75:2, 77:22, 77:24, 78:10, 78:11, 78:25, 79:7, 80:22, 81:8, 81:14, 82:1, 82:10, 82:20

**involved** [4] - 23:20, 47:11, 58:8, 59:14

**involvement** [3] - 75:10, 80:10, 81:22

**irrelevant** [1] - 42:12

**Islandia** [1] - 1:24

**Isle** [29] - 7:3, 7:4, 7:8, 7:10, 7:15, 7:19, 7:24, 13:19, 27:11, 34:2, 34:15, 40:4, 50:4, 50:11, 50:23, 51:10, 70:25, 72:23, 72:25, 74:17, 75:11, 75:16, 80:17, 81:13, 81:14, 82:1, 82:4

**Islip** [3] - 1:5, 1:17, 2:8

**issue** [21] - 10:21, 11:11, 12:14, 12:16, 23:23, 24:9, 24:18, 26:11, 27:7, 30:14, 31:2, 46:21, 57:12, 59:3, 59:4, 59:6, 59:18, 61:8, 61:9, 61:10, 88:14

**issues** [4] - 3:8, 3:13, 3:21

**Italian** [1] - 80:20

**items** [3] - 24:12, 55:4, 90:3

**itself** [3] - 10:22, 39:8, 59:22

**IV** [8] - 27:11, 40:4, 50:4, 50:11, 50:23, 51:10, 74:17, 75:11

## J

**Jay** [4] - 67:24, 68:3, 68:4, 68:19

**Jerry** [7] - 45:5, 45:6, 45:13, 53:4, 53:6, 53:10, 56:8

**JFB** [1] - 1:3

**JK** [1] - 48:12

**JMT** [6] - 27:21, 27:25, 28:14, 28:18, 28:22, 29:1

**John** [8] - 46:15, 48:4, 49:1, 52:7, 62:10, 66:8, 67:21, 67:22

**join** [2] - 19:22, 30:7

**joining** [1] - 24:16

**JOSEPH** [2] - 1:12, 2:3

**Joseph** [3] - 2:22, 2:23, 56:9

**Joshua** [3] - 4:11, 5:11, 63:4

**JOSHUA** [1] - 5:12

**Jowdy** [41] - 9:16, 10:25, 11:2, 11:5, 11:6, 12:6, 12:9, 12:12, 13:12, 13:19, 15:5, 16:20, 17:22, 17:24, 18:2, 33:17, 36:2, 41:17, 44:10, 44:15, 44:18, 44:24, 45:11, 47:7, 49:3, 49:14, 51:5, 52:4, 52:6, 53:5, 53:15, 53:16, 53:18, 60:16, 61:1, 61:9, 61:16, 62:18, 62:23, 62:25, 78:23

**Jowdy's** [16] - 12:23, 13:20, 15:4, 18:5, 19:5, 28:16, 33:2, 33:7, 33:9, 39:24, 40:2, 41:3, 41:15, 66:23, 66:24, 77:19

**Jozef** [4] - 7:17, 45:4, 45:7, 45:14

**Judge** [23] - 1:12, 2:21, 3:3, 6:4, 10:12, 10:16, 11:3, 11:9, 12:3, 14:5, 16:6, 18:20, 20:8, 21:8, 21:13, 29:11, 35:7, 36:23, 40:11, 42:20, 48:2, 54:17, 85:16

**judge** [28] - 4:17, 5:15, 10:6, 10:21, 12:13, 21:22, 25:21, 29:5, 30:24, 35:6, 36:24, 42:13, 60:4, 61:14, 62:4, 63:2, 63:11, 63:14, 64:21, 66:5, 66:9, 73:2, 73:8, 86:17, 89:5, 89:15, 90:8

**Jury** [3] - 60:24, 61:2, 89:19

**jury** [4] - 59:22, 65:15, 65:16, 65:22

## K

**Kaiser** [12] - 46:15, 46:23, 47:7, 48:4, 49:1, 52:7, 62:10, 65:10, 66:8, 67:16, 67:21, 67:22

**Kaiser's** [1] - 62:22

**Ken** [22] - 9:16, 11:2, 11:5, 11:6, 33:17, 45:11, 49:3, 49:14, 51:5, 52:4, 52:6, 53:5, 53:17, 60:15, 60:25, 61:9, 61:16, 62:18, 62:23, 62:25, 77:18, 78:23

**KENNER** [2] - 1:6, 92:13

**Kenner** [67] - 1:6, 1:22, 2:14, 3:3, 9:16, 9:18, 9:25, 10:18, 10:20, 11:15, 11:18, 12:1, 12:4, 12:9, 13:8, 13:12, 15:15, 17:21, 17:22, 17:23, 17:24, 23:14, 23:16, 28:14, 28:22, 29:17, 30:2, 33:17, 33:21, 43:20, 44:19, 44:22, 44:25, 45:4, 45:7, 45:12, 45:16, 45:23, 46:7, 48:9, 49:10, 53:11, 53:13, 53:14, 53:16, 53:20, 54:18, 54:23, 55:19, 60:13, 61:13, 61:25, 62:13, 62:16, 62:25, 64:24, 66:7, 67:4, 67:8, 67:22, 69:2, 69:20, 86:13, 89:22, 89:24

**Kenner's** [8] - 8:14, 8:20, 11:17, 18:9, 18:10, 50:13, 50:14, 51:4

**Kenneth** [4] - 10:25, 36:2, 41:17, 44:9

**kind** [2] - 47:8, 68:21

**kindly** [6] - 38:4, 38:20, 43:20, 44:22, 48:16, 67:19

**KJ** [4] - 35:19, 36:2, 48:13

**knowledge** [13] - 42:7, 49:2, 52:4, 60:19, 61:10, 61:21, 69:10, 69:15, 70:8, 70:13, 70:16, 70:17, 70:21

**known** [1] - 58:20

**knows** [1] - 65:15

**KOMATIREDDY** [1] - 1:19

**KSI** [1] - 34:13

## L

**labeled** [2] - 8:17, 22:22

**Land** [3] - 23:21, 54:19, 54:24

**land** [4] - 60:10, 63:17, 70:23, 72:2

**large** [1] - 5:16

**laRUSSO** [1] - 2:1

**last** [14] - 3:7, 6:1, 6:16, 6:19, 6:20, 22:23, 23:20, 25:5, 25:13, 26:19, 33:19, 51:19, 52:16, 56:3

**latitude** [1] - 25:21

**laundering** [4] - 58:9, 59:13, 66:1, 66:3

**Laura** [1] - 2:18

**LAURA** [1] - 1:18

**law** [3] - 24:8, 46:3, 59:11

**lawyer** [1] - 12:25

**leads** [1] - 66:3

**learning** [1] - 19:2

**least** [3] - 18:20, 24:3, 47:21

**Led** [6] - 23:21, 54:21, 70:19, 72:3, 79:13, 79:17

**ledger** [7] - 7:1, 7:13, 13:23, 32:25, 33:25, 34:9

**left** [2] - 3:3, 81:20

**legal** [4] - 3:13, 58:13, 58:15, 59:4

**legible** [1] - 11:12

**legitimate** [2] - 58:11, 58:23

**lend** [1] - 63:11

**lending** [1] - 62:17

**length** [1] - 50:20

**lengthy** [1] - 89:18

**LEONARDO** [70] - 1:17, 2:17, 4:1, 5:13, 5:17, 5:22, 5:25, 6:8, 6:12, 8:5, 8:22, 8:25, 10:4, 11:14, 13:1, 13:6, 14:4, 16:18, 16:24, 17:7, 18:17, 19:23, 20:7, 20:12, 20:15, 20:23, 22:12, 22:20, 23:8, 24:20, 24:24, 25:12, 26:17, 27:2, 28:2, 29:4, 29:9, 30:16, 31:9, 31:12, 32:14, 33:13, 33:15, 34:21, 34:25, 35:22, 36:3, 36:12, 36:14, 40:12, 42:5, 43:25, 44:4, 46:11, 47:1, 47:9, 52:8, 53:23, 58:3, 69:18, 69:21, 84:6, 85:22,

86:20, 88:21, 89:4, 89:10, 90:9, 91:4, 91:8

**Leonardo** [3] - 2:18, 57:11, 57:14

**letter** [8] - 3:8, 3:10, 9:18, 13:8, 13:20, 15:12, 15:14, 15:15

**level** [1] - 11:3

**likewise** [1] - 78:25

**line** [21] - 7:3, 7:5, 39:13, 42:17, 50:22, 51:10, 52:20, 62:17, 68:9, 68:17, 70:25, 71:4, 71:11, 72:15, 72:24, 74:7, 74:9, 76:13, 76:14, 76:20, 82:14

**Line** [1] - 37:22

**lines** [9] - 50:1, 71:5, 71:9, 74:12, 79:23, 80:1, 80:3, 80:11, 82:5

**Linton** [9] - 45:5, 45:6, 45:13, 53:5, 53:6, 53:11, 53:13, 56:8

**list** [4] - 6:9, 74:1, 75:2, 84:10

**listed** [6] - 13:25, 57:7, 68:25, 72:4, 81:20, 88:12

**litany** [2] - 29:16, 29:19

**LLP** [2] - 1:22, 2:1

**loan** [16] - 33:18, 49:2, 49:15, 50:14, 51:4, 53:9, 53:10, 53:13, 53:15, 53:16, 61:17, 62:21, 63:1, 63:11, 72:14

**loaned** [3] - 45:13, 50:11, 77:24

**loans** [11] - 49:13, 49:22, 60:15, 60:17, 60:20, 60:25, 61:8, 61:10, 61:19, 66:25, 67:1

**LOC** [2] - 73:21, 74:6

**lodge** [1] - 3:16

**look** [23] - 6:20, 7:1, 9:10, 11:7, 17:8, 17:15, 18:12, 26:20, 31:4, 31:13, 33:20, 40:6, 40:9, 41:13, 43:20, 44:16, 44:22, 45:16, 55:12, 66:13, 76:3, 76:13, 84:17

**looked** [6] - 7:3, 21:9, 75:13, 75:17, 77:7, 77:9

U.S.A. v. KENNER and CONSTANTINE

8

**looking** [17] - 8:7, 8:10, 8:12, 9:6, 13:17, 17:17, 18:3, 18:11, 22:25, 25:3, 27:17, 32:5, 32:20, 32:24, 33:25, 34:9, 86:23
**looks** [2] - 10:19, 23:25
**LORETTA** [1] - 1:15
**Los** [5] - 41:19, 85:3, 85:4, 85:11, 85:14
**lose** [1] - 36:24
**loss** [5] - 68:3, 68:4, 68:6, 68:18, 68:20
**lousy** [1] - 80:20
**Lucas** [34] - 44:20, 45:1, 45:8, 45:13, 49:16, 49:19, 51:2, 51:6, 51:11, 51:21, 52:2, 52:13, 52:22, 53:2, 53:7, 53:12, 53:19, 53:22, 54:15, 56:4, 56:6, 56:7, 57:22, 60:11, 61:16, 62:1, 63:7, 63:17, 77:13, 78:3, 81:3, 82:16, 83:10, 85:1
**LYNCH** [1] - 1:15

## M

**machine** [1] - 5:13
**Madeline** [1] - 2:18
**MADELINE** [1] - 1:18
**mail** [21] - 13:10, 13:12, 13:25, 16:20, 17:21, 18:3, 25:4, 25:8, 28:14, 28:18, 28:20, 30:11, 30:12, 30:22, 31:7, 33:17, 33:21, 33:22, 33:25, 34:7, 59:23
**mails** [4] - 9:16, 17:21, 21:6, 31:1
**Makika** [17] - 7:15, 7:17, 7:19, 7:21, 18:12, 18:13, 18:15, 23:6, 34:3, 34:5, 34:18, 60:15, 82:2, 82:21, 83:10, 83:12, 83:16
**Management** [4] - 31:22, 32:7, 82:24, 83:19
**Mantell** [1] - 2:18
**MANTELL** [1] - 1:18
**Mar** [15] - 32:25, 34:4, 34:5, 54:15, 55:21, 57:3, 57:8, 57:9,

57:22, 60:11, 63:7, 63:18, 78:18, 84:24, 84:25
**March** [1] - 1:9
**marked** [18] - 6:16, 9:5, 10:1, 11:17, 13:3, 17:5, 22:17, 24:22, 25:3, 26:15, 27:8, 28:8, 31:10, 32:19, 36:10, 40:7, 40:24, 45:16
**marking** [1] - 35:19
**material** [1] - 19:1, 19:11, 38:13, 43:6, 43:9, 45:24, 46:13, 53:20, 55:19, 87:20, 88:12
**materials** [1] - 67:5
**Matt** [3] - 44:12, 48:3, 49:2
**matter** [10] - 4:16, 23:14, 24:2, 29:14, 36:19, 41:16, 50:14, 56:13, 59:10, 88:4
**matters** [6] - 30:11, 30:13, 31:3, 54:14, 59:18, 87:16
**McKee** [7] - 29:16, 29:23, 30:9, 30:19, 67:24, 68:19, 72:17
**McKee's** [2] - 68:3, 68:4
**MDC** [1] - 4:19
**mean** [2] - 9:23, 47:8
**meaning** [2] - 39:9, 68:25
**meant** [2] - 38:6, 86:15
**memo** [1] - 32:8
**Memorial** [1] - 1:23
**memory** [2] - 19:12, 68:23
**mention** [3] - 62:5, 81:5, 81:8
**mentioned** [2] - 49:19, 81:17
**messages** [3] - 28:22, 30:18, 30:23
**met** [1] - 3:7
**Mexican** [1] - 60:22
**Mexico** [7] - 49:4, 49:5, 49:18, 57:18, 60:21, 60:25
**Michael** [3] - 31:17, 68:16, 68:18
**middle** [1] - 3:25
**might** [11] - 11:7, 19:14, 57:24, 58:5, 61:3, 62:7, 84:5, 87:11, 87:13, 88:13,

89:15
**Mike** [1] - 17:25
**Mill** [4] - 26:19, 26:23, 27:12, 76:24
**million** [12] - 20:17, 21:3, 53:9, 56:10, 62:13, 67:24, 74:2, 76:7, 77:15, 78:8, 78:21, 79:1
**Mineola** [1] - 2:2
**mingled** [2] - 58:24, 59:12
**mingling** [1] - 59:10
**minute** [1] - 36:17
**minutes** [1] - 4:2
**misrepresentation** [5] - 54:2, 55:6, 55:11, 55:20, 58:17
**misrepresentations** [1] - 53:20
**misrepresenting** [1] - 48:1
**missed** [1] - 79:11
**misspoke** [1] - 33:9
**mistake** [1] - 62:15
**moment** [9] - 4:12, 10:6, 10:16, 14:18, 30:23, 36:12, 41:25, 44:6, 73:2
**money** [89] - 7:17, 7:18, 9:17, 9:19, 13:9, 13:18, 17:22, 17:23, 17:24, 18:1, 18:2, 23:5, 30:4, 30:5, 33:18, 34:2, 39:14, 42:18, 45:4, 45:6, 45:13, 49:13, 49:14, 49:17, 49:18, 50:22, 51:9, 53:5, 54:3, 55:5, 57:6, 57:16, 58:6, 58:8, 58:23, 59:7, 59:13, 59:14, 60:8, 61:15, 62:17, 63:4, 63:5, 63:10, 63:11, 63:12, 63:16, 66:1, 66:3, 68:13, 70:11, 70:14, 70:24, 71:2, 72:8, 72:14, 72:16, 72:22, 72:24, 74:9, 74:20, 75:3, 75:22, 76:4, 76:10, 77:22, 77:24, 78:2, 78:11, 78:16, 79:3, 80:1, 80:2, 81:13, 81:14, 82:13, 82:20, 82:24, 83:6, 83:8, 83:11, 85:4, 85:8, 86:13
**monies** [26] - 49:22, 50:1, 50:10, 50:11,

56:2, 56:4, 56:9, 57:20, 60:13, 68:21, 70:17, 70:21, 71:10, 75:24, 76:14, 76:20, 79:9, 80:11, 80:17, 80:22, 82:5, 82:17, 86:5, 86:6, 86:7, 86:10
**monitor** [1] - 5:18
**Monte** [1] - 81:15
**Moreau** [3] - 68:12, 68:14, 72:18
**morning** [1] - 2:19, 2:20, 2:21, 2:25, 3:1, 3:4, 4:8, 6:13, 6:14, 37:9, 37:10, 87:6
**mortgage** [1] - 85:10
**most** [1] - 36:25
**motion** [1] - 11:16
**move** [3] - 6:3, 6:6, 44:17
**moved** [2] - 57:18, 82:5
**moving** [1] - 63:20
**MR** [115] - 2:21, 2:23, 3:1, 3:2, 4:7, 4:10, 5:15, 5:18, 5:21, 5:23, 6:4, 6:7, 8:4, 9:2, 9:3, 10:6, 10:8, 10:11, 10:21, 12:3, 13:2, 14:5, 14:8, 16:5, 17:2, 17:12, 18:19, 19:22, 20:8, 21:2, 21:21, 21:22, 22:14, 22:15, 23:10, 24:16, 25:18, 26:3, 27:3, 27:5, 28:4, 29:5, 29:10, 30:7, 30:24, 31:5, 32:15, 32:16, 35:3, 35:6, 35:7, 36:23, 37:6, 37:8, 40:10, 40:19, 41:9, 41:12, 42:13, 42:25, 44:2, 44:5, 46:15, 47:20, 48:2, 48:8, 52:11, 54:5, 54:11, 55:13, 55:17, 56:1, 57:2, 59:17, 64:21, 65:1, 66:5, 66:12, 67:3, 67:7, 67:11, 67:12, 69:23, 71:19, 71:21, 72:12, 73:2, 73:5, 73:7, 73:12, 85:16, 85:19, 85:24, 86:3, 86:17, 87:1, 87:2, 87:5, 88:1, 88:4, 88:18, 88:23, 89:5, 89:9, 89:13, 89:15, 90:1, 90:5, 90:7, 90:8,

91:6, 91:10, 91:12, 91:14, 91:16
**MS** [74] - 2:17, 4:1, 5:13, 5:17, 5:22, 5:25, 6:8, 6:12, 8:5, 8:22, 8:25, 10:4, 11:14, 13:1, 13:6, 14:4, 16:18, 16:24, 17:7, 18:17, 19:23, 20:7, 20:12, 20:15, 20:23, 22:12, 22:20, 23:8, 24:20, 24:24, 25:12, 26:17, 27:2, 28:2, 29:4, 29:9, 30:16, 31:9, 31:12, 32:14, 33:13, 33:15, 34:21, 34:25, 35:22, 36:3, 36:12, 36:14, 40:12, 42:5, 43:25, 44:4, 46:11, 47:1, 47:9, 52:8, 53:23, 58:3, 58:5, 58:22, 59:11, 65:8, 65:24, 69:18, 69:21, 84:6, 85:22, 86:20, 88:21, 89:4, 89:10, 90:9, 91:4, 91:8
**multiple** [1] - 65:18
**must** [1] - 18:20
**myriad** [1] - 31:2

## N

**Naalehu** [3] - 77:2, 77:3, 77:7
**name** [5] - 5:9, 77:10, 80:7, 80:18, 84:19
**named** [2] - 81:17, 82:7
**namely** [1] - 27:10
**nature** [7] - 14:16, 19:8, 21:7, 25:19, 37:20, 40:3, 80:3
**necessary** [1] - 63:14
**need** [8] - 5:13, 7:14, 11:21, 42:9, 44:16, 63:23, 64:7, 88:2
**needed** [1] - 19:13
**never** [3] - 21:23, 62:25, 86:14
**NEW** [1] - 1:1
**new** [3] - 8:5, 9:10, 31:7
**New** [6] - 1:5, 1:17, 1:24, 2:2, 2:5, 2:8
**next** [4] - 7:13, 56:13, 69:5, 73:21
**nexus** [3] - 23:24, 62:2, 62:4, 72:1
**Nolan** [3] - 71:3,

U.S.A. v. KENNER and CONSTANTINE

**9**

72:24, 82:10
**none** [1] - 81:8
**Northern** [3] - 76:18, 79:24, 80:11
**northern** [1] - 78:19
**notation** [1] - 67:16
**notations** [1] - 66:25
**noted** [1] - 24:14
**Notes** [2] - 14:10, 16:2
**notes** [9] - 16:7, 16:16, 16:25, 17:3, 43:16, 48:3, 48:11, 48:17, 48:25
**nothing** [2] - 79:17, 85:20
**notice** [2] - 87:18, 89:20
**Number** [2] - 7:21, 88:5
**number** [9] - 8:24, 30:2, 32:13, 32:21, 33:12, 35:9, 35:11, 40:15, 80:15
**numbered** [1] - 11:18
**numbering** [1] - 35:24
**numbers** [7] - 9:7, 10:2, 13:24, 20:2, 33:5, 72:4, 72:5
**numerous** [1] - 75:14

## O

**O'Connor** [2] - 2:18, 58:4
**O'CONNOR** [6] - 1:18, 58:5, 58:22, 59:11, 65:8, 65:24
**oath** [1] - 64:13
**object** [8] - 16:5, 19:9, 19:18, 23:10, 30:6, 40:13, 40:18, 48:1
**objection** [43] - 3:16, 9:1, 10:12, 11:10, 17:11, 18:19, 18:21, 19:22, 21:19, 22:13, 22:15, 24:12, 24:13, 24:16, 25:13, 25:17, 26:4, 26:8, 27:3, 27:4, 28:4, 28:5, 28:7, 29:10, 29:11, 32:15, 35:5, 35:6, 35:7, 35:16, 36:7, 36:9, 41:7, 42:5, 46:11, 46:16, 46:25, 47:1, 52:8, 53:23, 62:6, 69:18, 84:6
**Objection** [1] - 69:21
**objections** [2] - 3:14, 26:8
**obligations** [1] - 19:20

**obligor** [1] - 63:12
**obtain** [6] - 8:12, 9:21, 27:22, 33:1, 40:21, 53:22
**obtained** [2] - 42:1, 44:19
**obtaining** [2] - 53:1, 88:15
**obviously** [14] - 3:15, 3:21, 11:24, 21:20, 22:7, 24:11, 26:8, 30:9, 36:8, 40:15, 46:18, 57:15, 64:24, 90:3
**occur** [1] - 34:7
**occurred** [3] - 20:10, 34:1, 63:13
**occurring** [1] - 54:12
**Oceanside** [1] - 2:5
**October** [4] - 20:24, 21:4, 47:4, 48:5
**OF** [2] - 1:1, 1:3
**offense** [6] - 23:25, 24:1, 39:19, 42:4, 62:3
**offenses** [1] - 54:16
**offer** [19] - 8:22, 10:4, 14:4, 18:17, 23:8, 25:12, 26:1, 27:2, 28:2, 29:4, 32:14, 34:21, 46:12, 48:2, 54:5, 54:10, 64:23, 67:4, 87:21
**offered** [1] - 66:7
**offering** [1] - 40:20
**offers** [1] - 3:17
**officer** [1] - 21:9
**often** [1] - 43:2
**Old** [1] - 2:1
**Oliveras** [1] - 2:23
**OLIVERAS** [3] - 2:4, 2:23, 3:1
**omission** [1] - 55:6
**once** [1] - 3:21
**One** [1] - 1:22
**one** [24] - 13:18, 19:14, 21:9, 30:8, 32:6, 33:14, 33:23, 35:1, 35:3, 35:19, 36:12, 39:4, 41:10, 47:14, 47:16, 57:15, 64:18, 69:14, 73:2, 73:21, 75:16, 79:16, 85:5, 85:24
**ones** [1] - 21:13
**ongoing** [1] - 52:2
**opening** [1] - 76:14
**operation** [3] - 51:22, 52:3
**opinion** [6] - 39:18,

42:2, 42:7, 42:11, 42:20, 62:9
**opportunity** [3] - 3:18, 26:13, 29:22
**opposed** [1] - 49:22
**order** [2] - 53:22, 59:8
**orders** [1] - 19:10
**original** [3] - 11:6, 11:8, 35:1
**originally** [1] - 9:24
**originals** [1] - 12:23
**otherwise** [2] - 24:19, 27:3
**ought** [2] - 62:1, 63:19
**outside** [3] - 38:1, 38:5, 38:6
**overcome** [1] - 4:19
**overhead** [1] - 37:6
**Owen** [2] - 71:3, 72:24
**own** [1] - 85:8
**owner** [2] - 51:1, 51:11
**owners** [1] - 51:13
**ownership** [4] - 16:13, 53:7, 84:24, 85:14

## P

**p.m** [1] - 90:11
**Page** [6] - 11:6, 37:22, 44:22, 48:12, 48:17, 48:18
**page** [19] - 7:22, 10:9, 10:11, 10:13, 10:15, 10:19, 29:12, 29:15, 40:8, 40:14, 40:15, 41:14, 51:19, 56:13, 66:19, 80:21, 82:19
**pages** [10] - 7:10, 7:22, 7:24, 8:10, 8:11, 20:17, 34:16, 40:9, 75:14, 81:6
**paid** [2] - 62:25, 72:16
**Palms** [5] - 27:23, 27:25, 29:2, 30:20, 31:21, 32:10, 67:14, 67:23, 68:3, 68:5, 68:6, 68:10, 68:15, 68:18, 69:1, 69:3, 71:22, 72:4, 72:5, 72:10, 72:15, 72:17
**paper** [1] - 5:20
**paragraph** [1] - 44:23
**paraphrasing** [1] - 62:14
**parcel** [2] - 23:18, 24:7
**part** [18] - 12:9, 20:9, 23:17, 24:7, 26:4, 26:6, 38:16, 38:19,

39:20, 42:10, 42:24, 43:2, 46:22, 51:4, 51:25, 61:12, 63:18, 63:19
**participant** [1] - 69:19
**particular** [20] - 15:9, 19:3, 19:18, 21:17, 23:15, 29:6, 50:23, 55:4, 55:7, 55:11, 58:1, 58:17, 65:17, 65:22, 78:11, 80:23, 82:23, 83:6, 83:8, 88:10
**past** [1] - 4:22
**pause** [2] - 73:4, 85:18
**pay** [3] - 34:13, 62:20, 63:12
**payment** [1] - 31:21
**payments** [2] - 9:17, 30:19
**Peca** [5] - 31:17, 61:4, 65:12, 68:17, 89:19
**Peca's** [3] - 17:25, 32:2, 68:18
**people** [2] - 65:4, 77:25
**perceive** [1] - 24:3
**percent** [16] - 14:15, 16:2, 44:19, 44:25, 45:7, 45:12, 50:15, 53:12, 60:17, 61:20, 62:18, 62:21, 62:24
**percentage** [2] - 15:2, 59:9
**percentages** [3] - 15:3, 16:11, 16:12
**permits** [1] - 24:8
**Pers** [1] - 15:18
**personal** [2] - 29:16, 83:25
**perspective** [2] - 54:6, 54:18
**ph** [1] - 80:19
**Phil** [24] - 3:2, 9:18, 28:14, 28:22, 29:17, 29:18, 30:2, 33:17, 33:21, 45:7, 49:10, 53:11, 53:13, 53:14, 53:20, 61:13, 61:25, 62:13, 62:15, 62:25, 67:21, 69:2, 86:13
**Philip** [2] - 1:6, 44:24
**Phillip** [9] - 1:22, 8:14, 9:16, 9:25, 13:8, 15:15, 45:12, 45:23, 69:20
**PHILLIP** [1] - 1:6
**phraseology** [1] - 86:10
**pieces** [1] - 64:18

**PK** [3] - 8:17, 10:1, 33:5
**PK-SEC** [2] - 10:1, 33:5
**place** [2] - 44:13, 80:3
**places** [2] - 73:25, 75:24
**planning** [1] - 5:17
**player** [8] - 24:5, 30:1, 49:14, 50:2, 54:14, 54:18, 55:6, 58:1
**players** [10] - 13:18, 23:5, 57:17, 57:21, 61:10, 61:21, 79:25, 80:22, 81:20, 83:9
**Plaza** [2] - 1:16, 2:7
**point** [15] - 11:11, 12:17, 30:17, 40:24, 55:2, 61:1, 61:4, 62:24, 63:2, 70:8, 85:7, 85:20, 88:12, 89:6
**pointing** [1] - 55:4
**poor** [1] - 86:12
**portfolio** [1] - 60:21
**portion** [3] - 40:16, 48:18, 88:25
**portions** [1] - 89:1
**position** [5] - 61:18, 61:19, 65:25, 71:10, 71:13
**possibility** [2] - 87:11, 87:15
**possible** [1] - 20:21
**possibly** [1] - 87:18
**potential** [1] - 60:3
**preceding** [1] - 19:1
**prejudicial** [1] - 29:21
**preparation** [2] - 39:3, 89:21
**prepare** [4] - 37:19, 38:5, 66:21, 83:23
**prepared** [4] - 4:13, 41:4, 66:19, 66:22
**presence** [1] - 49:2
**present** [9] - 3:5, 3:18, 6:2, 43:17, 47:3, 47:5, 48:4, 49:10, 60:7
**presentation** [1] - 60:7
**presumably** [2] - 21:13, 59:25
**pretty** [1] - 80:20
**previously** [4] - 19:19, 40:10, 64:13, 66:6
**privy** [3] - 45:24, 46:2, 46:5
**proceed** [3] - 3:23, 4:13, 4:24

U.S.A. v. KENNER and CONSTANTINE

10

**proceeding** [8] - 3:7, 12:5, 18:22, 21:18, 37:13, 46:19, 62:11
**proceedings** [5] - 73:4, 85:18, 88:6, 88:14, 90:11
**proceeds** [3] - 58:9, 58:10, 58:24
**produce** [1] - 47:15
**produced** [24] - 11:15, 11:19, 12:1, 12:4, 12:6, 12:9, 12:12, 12:19, 12:24, 15:5, 15:6, 20:4, 20:9, 20:12, 20:16, 21:1, 21:3, 33:3, 35:18, 35:24, 47:15, 47:22, 47:25, 87:20
**producing** [1] - 20:16
**production** [4] - 18:9, 18:10, 36:4, 36:5
**productive** [2] - 55:15, 64:17
**project** [6] - 44:20, 54:21, 72:2, 72:3, 76:24
**projector** [1] - 37:6
**pronounce** [3] - 77:1, 78:6, 80:18
**proof** [7] - 46:12, 48:2, 54:5, 54:10, 57:15, 57:25, 64:3
**Properties** [2] - 23:17, 24:6
**properties** [8] - 16:14, 46:21, 54:23, 54:25, 60:12, 62:20, 63:8, 82:16
**Properties'** [1] - 23:15
**property** [23] - 3:19, 7:18, 7:20, 9:19, 23:24, 26:5, 26:9, 26:19, 26:24, 27:7, 27:12, 39:19, 42:3, 51:1, 51:6, 51:11, 57:3, 58:8, 58:25, 59:15, 62:2, 78:19, 78:23
**prosecution** [1] - 23:14
**prove** [1] - 55:16
**provide** [8] - 6:8, 18:22, 19:7, 19:11, 40:2, 41:15, 68:8, 89:11
**provided** [26] - 9:24, 9:25, 11:23, 18:25, 19:19, 20:6, 20:21, 21:5, 21:14, 21:15, 21:17, 22:9, 29:7,

31:8, 38:12, 38:15, 38:21, 38:23, 39:20, 39:23, 39:24, 40:10, 66:6, 88:9, 88:17
**Providence** [1] - 26:5
**providing** [1] - 21:13
**purchase** [2] - 59:14, 63:6
**purchases** [2] - 58:12, 58:25
**purported** [1] - 40:14
**purports** [1] - 23:12
**purpose** [4] - 10:14, 56:6, 87:22, 89:6
**purposes** [23] - 16:16, 22:3, 25:20, 42:13, 49:15, 51:6, 53:1, 53:6, 53:11, 53:18, 57:8, 58:7, 60:1, 60:9, 60:22, 64:15, 65:19, 65:20, 71:8, 71:12, 72:1, 88:15, 89:16
**pursuant** [2] - 18:23, 74:16
**put** [16] - 20:25, 25:9, 35:16, 38:7, 55:7, 57:21, 64:8, 74:10, 80:1, 80:2, 80:11, 85:4, 85:11, 86:12, 87:18, 88:3
**putting** [1] - 59:3

**Q**

**quantity** [1] - 57:16
**QUESTION** [2] - 37:24, 42:16
**questioned** [2] - 65:11, 65:12
**questioning** [1] - 85:25
**questions** [8] - 36:15, 37:20, 60:6, 60:24, 73:8, 86:4, 87:13
**quick** [1] - 66:5

**R**

**raise** [1] - 12:14
**raised** [1] - 30:11
**rate** [1] - 50:15
**rather** [1] - 51:24
**reach** [1] - 60:2
**read** [8] - 48:10, 48:11, 48:14, 48:16, 48:18, 48:20, 48:24, 52:21
**reading** [3] - 37:23, 42:15, 48:25

**reads** [1] - 48:23
**really** [1] - 90:2
**reargue** [1] - 65:21
**reason** [3] - 11:25, 25:20, 88:2
**receive** [6] - 3:8, 3:10, 18:4, 18:7, 21:4, 26:25
**received** [11] - 11:1, 12:11, 13:20, 25:25, 26:2, 28:15, 28:17, 33:7, 76:4, 76:5, 88:12
**recently** [1] - 20:20
**recess** [1] - 36:18
**recipient** [1] - 25:24
**recite** [1] - 63:21
**recognize** [16] - 8:7, 8:8, 9:13, 9:15, 17:17, 17:20, 26:22, 27:18, 28:11, 28:13, 32:24, 33:11, 43:21, 45:20, 45:21, 47:3
**recognizes** [2] - 47:22, 59:11
**recollection** [4] - 41:23, 44:24, 45:3, 49:21
**recommended** [1] - 29:18
**record** [26] - 2:16, 5:10, 12:2, 12:18, 15:4, 17:25, 21:22, 26:10, 29:25, 42:14, 44:9, 46:23, 49:20, 55:5, 55:16, 56:10, 57:25, 61:4, 63:15, 64:1, 64:4, 69:1, 76:3, 84:11, 89:16
**records** [38] - 6:24, 7:1, 7:4, 7:15, 8:16, 14:13, 14:14, 14:17, 14:21, 14:24, 14:25, 15:1, 15:2, 15:4, 15:6, 15:10, 15:12, 15:23, 16:1, 18:12, 21:6, 23:2, 23:3, 26:23, 32:9, 33:15, 34:18, 39:14, 43:11, 43:12, 43:16, 47:18, 67:21, 68:8, 68:14, 68:20, 72:23
**RECROSS** [2] - 86:2, 91:15
**RECROSS-EXAMINATION** [2] - 86:2, 91:15
**redacted** [1] - 40:16
**redirect** [2] - 85:21, 85:22

**refer** [3] - 8:2, 40:19, 48:25
**reference** [9] - 14:15, 15:8, 15:17, 29:17, 37:22, 38:10, 43:3, 52:21, 53:4, 60:5, 60:20, 61:3, 67:4, 68:12, 68:16, 72:20, 72:21, 75:11, 81:9
**referred** [1] - 7:10
**referring** [2] - 6:1, 14:17
**reflect** [6] - 14:14, 14:25, 15:2, 16:1, 50:22, 51:9
**reflected** [4] - 9:7, 21:17, 56:3, 57:5
**reflecting** [1] - 66:25
**reflects** [4] - 16:6, 39:13, 49:25, 50:19
**refresh** [2] - 41:22, 44:23
**refused** [1] - 52:6
**regard** [13] - 6:25, 7:13, 9:20, 16:18, 18:6, 25:13, 30:17, 31:17, 31:21, 32:2, 40:25, 65:11, 65:13
**regarding** [12] - 3:13, 9:16, 16:20, 29:23, 30:3, 41:2, 46:21, 47:17, 49:13, 55:7, 68:19, 72:18
**regards** [2] - 27:9, 28:22
**related** [5] - 30:12, 30:13, 42:3, 52:20, 72:5
**relates** [22] - 10:8, 10:11, 10:14, 10:15, 11:8, 12:13, 14:24, 16:2, 16:6, 18:21, 26:9, 27:7, 42:1, 46:7, 48:9, 53:17, 53:19, 53:21, 54:23, 56:2, 66:18, 88:4
**relating** [1] - 69:20
**relationship** [2] - 29:17, 54:16
**relevance** [3] - 52:8, 54:6, 59:19
**relevancy** [1] - 62:6
**relevant** [4] - 46:20, 54:8, 58:7, 58:25, 63:25, 71:11, 71:12, 71:25
**relied** [1] - 41:25
**rely** [3] - 20:20, 43:2
**relying** [1] - 46:24
**rendering** [1] - 42:20

**renewed** [1] - 19:6
**repeat** [3] - 18:20, 45:10, 89:25
**repeated** [1] - 19:10
**rephrase** [1] - 75:8
**replace** [1] - 25:13
**replaced** [1] - 35:1
**report** [2] - 44:9, 87:23
**Reporter** [1] - 2:7
**reports** [3] - 47:14, 47:16, 75:14
**represent** [1] - 21:8
**representation** [9] - 12:8, 12:19, 19:16, 21:12, 21:16, 21:19, 22:6, 29:8, 89:6
**represented** [1] - 27:10
**represents** [3] - 16:10, 16:11
**reproduce** [1] - 20:14
**reproduced** [2] - 20:16, 20:19
**request** [5] - 11:3, 11:9, 11:13, 12:25, 35:17
**requested** [1] - 48:23
**reserve** [3] - 3:15, 24:13, 30:15
**reserved** [4] - 6:18, 25:5, 26:11, 33:19
**reserving** [8] - 3:12, 24:18, 26:7, 26:14, 27:6, 30:8, 30:14, 30:16
**resolve** [2] - 11:10, 88:13
**resolving** [1] - 36:7
**respect** [8] - 3:11, 3:19, 54:19, 54:20, 54:21, 58:17, 61:7
**respectfully** [1] - 24:7
**responded** [1] - 61:5
**response** [4] - 3:10, 11:15, 42:14, 58:2
**rest** [2] - 4:3, 86:19
**restricted** [1] - 4:20
**rests** [2] - 4:15, 86:21
**result** [1] - 48:25
**retrieved** [1] - 8:20
**retry** [1] - 65:14
**return** [6] - 6:15, 50:15, 60:17, 61:20, 62:18, 62:24
**returning** [2] - 18:2, 52:12
**reveals** [1] - 35:3
**review** [12] - 5:19, 7:14, 14:25, 29:11, 49:20, 51:7, 69:4,

74:25, 83:17, 88:7, 88:8, 89:2
**reviewed** [5] - 14:13, 14:21, 15:10, 23:2
**reviewing** [1] - 14:24
**Richard** [1] - 3:2
**RICHARD** [1] - 1:24
**rise** [2] - 2:11, 36:20
**RMR** [1] - 2:7
**Road** [1] - 2:1
**Robert** [6] - 69:11, 69:14, 69:16, 71:1, 72:25, 82:3
**role** [3] - 78:2, 78:15, 82:12
**Romanowski** [2] - 48:3, 49:1
**RONALD** [1] - 2:7
**ronald_tolkin@nyed .uscourts.gov** [1] - 2:9
**RPR** [1] - 2:7
**Rucchin** [3] - 71:3, 72:25, 82:11
**Rucchin's** [1] - 71:4
**Rule** [9] - 18:22, 19:1, 19:11, 19:15, 19:17, 19:20, 20:10, 21:4, 38:13
**rule** [1] - 18:23
**ruling** [3] - 17:12, 32:17, 64:22
**run** [2] - 18:2, 52:14
**running** [1] - 69:14

**S**

**San** [34] - 44:20, 44:25, 45:8, 45:13, 49:16, 49:19, 51:2, 51:6, 51:11, 51:21, 52:2, 52:13, 52:21, 53:2, 53:7, 53:12, 53:19, 53:22, 54:15, 56:4, 56:6, 56:7, 57:22, 60:11, 61:16, 62:1, 63:7, 63:17, 77:13, 78:3, 81:3, 82:16, 83:9, 85:1
**SARITHA** [1] - 1:19
**sat** [1] - 62:13
**save** [1] - 47:24
**saw** [1] - 79:24
**schedule** [5] - 39:13, 83:22, 83:23
**scheme** [6] - 61:12, 63:18, 65:17, 65:22, 66:3, 69:19
**schemes** [4] - 23:18, 23:20, 59:24, 65:18

**Schwab** [2] - 8:9, 18:1
**Scott** [2] - 48:3, 49:1
**screen** [2] - 5:16, 9:7
**search** [2] - 8:16, 37:3
**seated** [2] - 2:12, 36:21
**SEC** [20] - 9:22, 9:23, 9:24, 10:1, 11:16, 11:18, 11:20, 12:1, 12:5, 12:6, 12:10, 17:25, 18:8, 18:9, 33:3, 33:5, 33:8, 33:10, 35:1, 35:4
**second** [9] - 6:25, 10:15, 10:19, 29:11, 32:6, 51:13, 74:6, 84:17, 85:16
**see** [23] - 11:12, 12:23, 14:11, 15:19, 21:25, 22:4, 30:11, 34:24, 39:12, 40:17, 40:22, 46:22, 48:12, 52:14, 52:23, 63:2, 67:16, 67:24, 69:24, 72:24, 84:15, 87:11
**seeing** [3] - 35:15, 41:22, 58:11
**seek** [2] - 62:2, 64:18
**seeking** [2] - 54:12, 54:17
**seize** [1] - 23:25
**seized** [1] - 24:12
**seizure** [1] - 37:4
**seller** [2] - 7:18, 7:19
**sense** [3] - 3:24, 56:5, 73:22
**sent** [5] - 20:23, 40:4, 53:17, 58:6, 68:14
**sentencing** [2] - 59:25, 65:20
**separate** [3] - 38:13, 59:3, 59:23
**series** [3] - 10:2, 79:25, 84:9
**served** [1] - 23:13
**set** [4] - 23:12, 23:18, 68:9, 86:5
**Settlement** [7] - 23:21, 42:18, 43:4, 54:20, 70:15, 72:3, 72:9
**seven** [4] - 77:21, 77:25, 80:21, 82:20
**short** [2] - 36:16, 66:14
**shot** [1] - 41:8
**show** [6] - 22:9, 34:18, 64:3, 64:17, 80:14, 80:15
**showed** [2] - 23:4, 44:5

**showing** [4] - 20:2, 68:14, 72:8, 83:15
**shows** [4] - 13:7, 13:8, 32:12, 63:9
**sic** [1] - 53:4
**signatory** [2] - 75:19, 76:18
**signature** [3] - 10:21, 11:8, 11:23
**signed** [5] - 10:20, 74:19, 74:23, 74:24, 80:2
**similarly** [1] - 57:5
**simply** [8] - 15:17, 25:25, 41:13, 55:18, 61:14, 63:2, 66:6, 87:23
**simultaneously** [1] - 5:19
**sit** [2] - 53:25, 84:22
**six** [4] - 77:21, 77:25, 80:21, 82:19
**sixth** [2] - 14:9, 51:19
**slated** [1] - 62:17
**smooth** [1] - 36:25
**soliciting** [2] - 80:10, 81:22
**someone** [1] - 53:8
**soon** [1] - 23:6
**sorry** [11] - 13:11, 17:10, 24:20, 34:25, 39:1, 44:2, 52:16, 74:11, 75:6, 79:11, 84:7
**sort** [2] - 24:3, 61:12
**sorting** [1] - 55:15
**sought** [2] - 39:19, 42:3
**source** [7] - 37:18, 45:11, 67:19, 68:1, 68:13, 68:17, 69:9
**sources** [1] - 42:1
**Spanish** [1] - 10:19
**speaking** [2] - 66:11, 67:22
**special** [3] - 59:20, 63:3, 65:23
**specific** [6] - 19:14, 19:17, 21:12, 31:1, 51:7
**specifically** [14] - 6:23, 6:25, 7:16, 19:8, 38:11, 40:12, 40:17, 46:4, 49:19, 54:14, 54:15, 62:11, 65:11, 65:12
**spell** [1] - 5:9
**spelling** [1] - 80:19
**spoken** [1] - 87:5
**Square** [1] - 1:22

**stamp** [4] - 19:24, 20:2, 29:5, 35:11
**stamped** [1] - 22:1
**stamping** [1] - 22:8
**stamps** [2] - 21:23, 21:24
**stand** [3] - 5:2, 44:6, 89:22
**standard** [1] - 60:2
**standing** [9] - 18:20, 24:12, 26:4, 28:4, 28:6, 32:15, 35:7, 36:7, 36:9
**stands** [1] - 74:7
**staple** [1] - 40:7
**stapled** [1] - 10:15
**start** [2] - 3:12, 73:18
**starts** [1] - 73:19
**state** [6] - 2:15, 4:15, 5:9, 43:1, 50:18, 88:7
**State** [1] - 41:19
**statement** [5] - 27:11, 32:12, 46:5, 53:24, 64:14
**statements** [9] - 32:11, 46:3, 46:19, 49:1, 64:9, 64:12, 65:4, 76:14, 83:24
**STATES** [2] - 1:1, 1:3
**States** [3] - 1:12, 1:16, 2:17
**stating** [2] - 9:19, 25:8
**staying** [1] - 70:5
**step** [2] - 85:23, 86:18
**Steve** [3] - 71:3, 72:24
**Stewart** [1] - 32:7
**still** [6] - 4:6, 4:12, 9:7, 25:17, 58:7
**Strangford** [1] - 2:4
**streamline** [2] - 46:17, 63:22
**striking** [1] - 17:3
**strong** [1] - 63:15
**Stumpel** [7] - 7:17, 34:1, 45:4, 45:7, 45:14, 56:9
**subject** [7] - 3:20, 27:6, 28:4, 28:6, 32:17, 36:7, 84:10
**submission** [2] - 38:21, 55:3
**submit** [1] - 29:24
**submitted** [1] - 28:21
**subpoena** [1] - 11:16
**subsequent** [2] - 19:7, 20:10
**substance** [2] - 33:22, 61:5
**substantiate** [1] -

14:13
**substantiation** [1] - 68:8
**sufficient** [1] - 4:24
**Suffolk** [1] - 1:22
**Sugar** [2] - 26:19, 26:23, 27:12, 76:24
**suggest** [3] - 24:7, 41:5, 47:14
**suggestion** [1] - 57:24
**Suite** [2] - 1:23, 2:2
**sum** [1] - 33:22
**summary** [2] - 24:21, 54:1
**summation** [1] - 55:2
**sums** [2] - 74:20, 86:9
**Superior** [2] - 41:18, 88:7
**supplement** [1] - 64:4
**supplied** [1] - 38:17
**support** [1] - 55:10
**sustained** [2] - 42:6, 52:9, 69:22
**swear** [1] - 5:3
**sworn** [2] - 5:4, 5:8

**T**

**tainted** [1] - 59:12
**talks** [1] - 31:2
**team** [2] - 38:16, 38:19
**technologically** [1] - 36:25
**tenth** [1] - 67:13
**terms** [14] - 4:5, 11:23, 21:6, 26:8, 68:21, 74:15, 76:12, 76:24, 78:5, 79:8, 79:23, 80:25, 83:19, 86:23
**Terrace** [1] - 88:5
**test** [1] - 11:24
**testified** [23] - 5:8, 11:19, 15:9, 16:8, 30:9, 31:16, 37:13, 39:16, 47:10, 52:7, 54:4, 60:10, 60:13, 62:12, 63:4, 65:5, 65:9, 75:4, 75:7, 78:1, 78:14, 82:12, 87:17
**testify** [1] - 4:12, 12:16, 30:10, 64:25, 75:4, 75:9, 78:1, 78:15, 81:21, 82:11, 87:7
**testifying** [1] - 54:3
**testimony** [46] - 3:17, 4:10, 5:1, 10:23, 10:25, 11:22, 15:8, 15:22, 19:3, 30:12,

U.S.A. v. KENNER and CONSTANTINE

12

30:22, 39:18, 40:3, 41:3, 42:7, 49:10, 49:13, 49:20, 49:21, 50:1, 50:13, 50:15, 51:4, 51:7, 55:8, 55:9, 55:10, 60:18, 60:24, 61:3, 61:7, 62:14, 62:22, 64:5, 64:8, 65:12, 65:13, 66:8, 68:24, 69:4, 72:18, 84:8, 87:9, 88:6, 89:19, 89:24

**text** [3] - 28:22, 30:18, 30:22

**THE** [118] - 2:11, 2:12, 2:13, 2:20, 2:25, 3:4, 4:4, 4:9, 4:25, 5:5, 5:9, 5:11, 5:14, 5:20, 6:6, 6:10, 8:24, 9:1, 9:4, 10:7, 10:10, 10:17, 11:21, 12:21, 14:6, 16:8, 16:13, 16:15, 16:22, 16:25, 17:3, 17:10, 17:14, 20:4, 20:14, 20:19, 21:20, 22:5, 22:13, 22:16, 24:11, 24:18, 24:21, 25:15, 25:16, 25:17, 26:7, 27:6, 28:6, 30:8, 30:21, 31:4, 31:6, 32:17, 33:12, 33:14, 33:16, 34:23, 35:5, 35:19, 36:2, 36:6, 36:13, 36:16, 36:20, 36:21, 37:5, 38:1, 41:2, 41:11, 42:9, 42:24, 46:12, 46:16, 47:6, 47:12, 47:24, 48:6, 52:9, 53:24, 54:7, 55:1, 55:14, 55:23, 57:11, 58:15, 59:2, 59:16, 63:21, 64:24, 65:3, 65:16, 66:4, 67:6, 67:9, 69:22, 71:17, 72:7, 73:3, 73:6, 73:9, 85:17, 85:21, 85:23, 86:1, 86:18, 86:22, 87:3, 87:21, 88:16, 88:19, 88:24, 89:8, 89:14, 89:21, 90:2, 90:6, 90:10

**theory** [2] - 63:24, 64:10

**thinking** [1] - 4:6

**third** [3] - 44:23, 48:18, 51:15

**Thomas** [12] - 2:22, 2:23, 74:24, 75:19,

76:8, 76:10, 76:22, 77:9, 79:8, 81:5, 81:8, 84:19

**thousands** [1] - 75:13

**three** [7] - 8:10, 8:11, 29:12, 29:15, 38:13, 82:23, 83:6

**three-page** [2] - 29:12, 29:15

**throughout** [1] - 22:1

**throw** [1] - 54:22

**timing** [1] - 3:24

**title** [3] - 26:23, 27:1, 81:25

**Title** [1] - 32:8

**today** [6] - 3:24, 4:13, 22:1, 31:7, 63:23, 84:22

**today's** [2] - 22:3, 84:8

**TOLKIN** [1] - 2:7

**Tom** [3] - 11:1, 15:6, 41:15

**TOMMY** [1] - 1:7

**Tommy** [7] - 1:8, 2:1, 45:23, 75:5, 75:6, 75:7, 76:1

**took** [1] - 44:6

**top** [2] - 74:1, 74:6

**total** [1] - 83:2

**traceability** [1] - 43:4

**traceable** [2] - 42:17, 42:21

**tracking** [1] - 54:3

**trading** [1] - 70:3

**transaction** [2] - 61:22, 61:24

**transactions** [4] - 51:8, 58:9, 83:6, 83:8

**transcript** [12] - 40:14, 40:21, 40:22, 40:23, 41:6, 41:16, 51:25, 66:9, 88:10, 88:17, 89:2

**transfer** [4] - 27:12, 34:10, 34:19, 68:21

**transferred** [2] - 53:5, 76:10

**transfers** [4] - 74:12, 75:22, 76:1, 76:6

**transpired** [1] - 29:19

**trial** [66] - 11:19, 18:24, 19:2, 19:7, 19:12, 20:1, 20:3, 20:5, 20:6, 20:11, 20:13, 20:18, 21:1, 21:15, 21:18, 22:2, 22:10, 23:4, 23:14, 24:2, 26:6, 28:21, 28:24, 29:7, 30:9,

30:12, 30:19, 30:20, 31:2, 31:8, 31:24, 35:15, 35:20, 35:23, 37:1, 38:7, 38:12, 43:8, 43:18, 46:20, 49:8, 49:11, 51:24, 52:10, 55:8, 55:9, 57:16, 58:8, 59:1, 60:19, 65:5, 65:9, 68:23, 71:25, 72:8, 75:4, 78:1, 78:14, 80:5, 82:11, 82:12, 83:14, 84:5, 89:17, 89:23

**trier** [2] - 24:2, 61:13

**true** [7] - 14:22, 15:11, 15:24, 39:21, 43:14, 51:22, 63:8

**Trust** [3] - 76:18, 79:24, 80:11

**trust** [3] - 27:11, 41:10, 76:15

**trusted** [1] - 42:6

**trusting** [1] - 41:11

**truthful** [1] - 61:7

**try** [2] - 53:25, 77:2

**trying** [7] - 44:17, 47:2, 64:16, 65:14, 65:18, 65:21, 86:25

**turned** [5] - 19:25, 20:3, 20:17, 43:11, 43:13

**turner** [1] - 89:20

**two** [11] - 10:9, 18:11, 19:14, 40:8, 42:21, 60:12, 70:5, 78:18, 82:1, 82:10, 82:19

**two-page** [3] - 10:9, 40:8, 82:19

**type** [2] - 35:11, 55:10

**typical** [2] - 35:25, 36:5

**typically** [2] - 74:14, 75:25

### U

**U.S** [2] - 1:4, 1:19

**U.S.A** [1] - 2:13

**Ula** [17] - 7:15, 7:17, 7:19, 7:21, 18:12, 18:13, 18:15, 23:6, 34:3, 34:5, 34:18, 60:15, 82:2, 82:21, 83:10, 83:12, 83:16

**unable** [2] - 37:1, 59:13

**unauthorized** [2] - 58:1, 59:8

**uncharged** [1] - 66:2

**unclear** [2] - 53:13, 53:15

**under** [4] - 18:22, 53:4, 59:12, 64:13

**understood** [1] - 90:5

**unduly** [1] - 29:21

**unfocused** [1] - 10:14

**unit** [5] - 27:21, 27:25, 32:2, 32:8, 72:17

**UNITED** [2] - 1:1, 1:3

**united** [1] - 1:12

**United** [2] - 1:16, 2:17

**unless** [2] - 22:9, 47:13

**unnecessary** [1] - 12:16

**unreasonable** [1] - 12:22

**unstapled** [1] - 40:8

**unsupported** [1] - 30:1

**up** [17] - 17:23, 17:24, 19:24, 26:18, 53:25, 74:6, 81:14, 82:6, 83:5, 87:12, 87:13

**utilize** [1] - 46:22

**utilized** [2] - 37:18, 39:3

### V

**various** [5] - 30:1, 50:1, 50:2, 57:6, 66:18

**venture** [2] - 78:12, 81:2

**verdict** [3] - 59:20, 59:21, 65:23

**verified** [3] - 16:19, 27:9, 68:20

**verify** [13] - 6:21, 6:23, 7:1, 7:14, 13:24, 15:22, 18:12, 27:11, 31:7, 32:11, 35:23, 35:25, 36:8

**version** [2] - 10:19, 67:10

**versus** [2] - 2:13, 41:17

**Veterans** [1] - 1:23

**victims** [3] - 73:19, 74:16, 75:2

**view** [6] - 11:3, 12:15, 12:18, 29:19, 54:11, 63:22

**Virtue** [1] - 23:16

**virtue** [5] - 10:23, 19:20, 42:22, 54:12, 59:21

**voir** [2] - 14:5, 37:17

**VOIR** [2] - 14:7, 91:5

### W

**W-A-Y-N-E** [1] - 5:12

**wants** [1] - 89:2

**warrant** [1] - 8:16

**Wayne** [34] - 4:11, 5:2, 5:11, 6:13, 6:15, 6:18, 6:25, 8:7, 9:6, 9:10, 13:7, 13:14, 13:17, 14:9, 17:8, 17:17, 22:21, 24:25, 26:18, 27:9, 31:13, 32:20, 37:9, 37:11, 44:6, 46:24, 48:9, 73:5, 73:13, 84:8, 84:22, 87:11, 87:16

**Wayne's** [2] - 5:1, 10:23

**weight** [2] - 59:5, 62:9

**WEINBLATT** [1] - 1:22

**whatsoever** [2] - 54:16, 63:18

**wherein** [1] - 19:7

**whichever** [1] - 64:5

**whole** [2] - 55:16, 89:2

**willing** [1] - 89:3

**wire** [5] - 27:12, 34:10, 34:18, 59:23, 69:11

**wired** [1] - 76:21

**wires** [3] - 8:9, 18:1, 76:21

**wishes** [3] - 40:22, 87:7, 89:1

**withdraw** [1] - 21:19

**withdrawn** [2] - 66:11, 71:16

**WITNESS** [7] - 5:5, 5:11, 10:10, 16:13, 25:16, 38:1, 73:6

**witness** [17] - 3:25, 5:4, 5:7, 12:10, 19:3, 40:25, 46:13, 46:14, 47:2, 47:9, 47:16, 48:23, 52:6, 54:1, 60:6, 64:13, 87:23

**witnesses** [6] - 43:17, 46:3, 46:20, 60:24, 68:24, 80:9

**word** [4] - 41:9, 67:1, 77:1, 78:6

**words** [3] - 7:21, 57:14, 86:12

**world** [1] - 54:2

**worth** [1] - 88:8

**wound** [1] - 82:5

**writing** [1] - 48:21

**written** [1] - 55:3

U.S.A. v. KENNER and CONSTANTINE

13

| Y |
|---|

**YORK** [1] - 1:1
**York** [6] - 1:5, 1:17, 1:24, 2:2, 2:5, 2:8
**yourself** [2] - 48:16, 48:19