1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA
                                        13-CR-607 (JFB)


            -against-            :
                                        United States Courthouse
                                        Central Islip, New York
PHILLIP A. KENNER,
a/k/a "Philip Kenner"
        and
TOMMY C. CONSTANTINE,              TRANSCRIPT OF HEARING
a/k/a "Tommy C. Hormovitis,           FORFEITURE

                                      February 12, 2016
            Defendants.       :      1:30 a.m.

- - - - - - - - - - - - - - X
            BEFORE THE HONORABLE JOSEPH F. BIANCO
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:
For the Government:        LORETTA E. LYNCH
                           United States Attorney
                           100 Federal Plaza
                           Central Islip, New York 11722
                           BY:  DIANE LEONARDO
                                MADELINE O'CONNOR
                                LAURA MANDEL
                                SARITHA KOMATIREDDY
                           Assistant United States Attorneys

For the Defendant:         BY:  RICHARD HALEY, ESQ.
Kenner:                    1601 Veterans Highway Ste. 425
                           Islandia, New York 11749


For the Defendant
Constantine:               BY:  JOSEPH CONWAY, ESQ.
                                ANDREW OLIVERAS, ESQ.
                           300 Old Country Road
                           Mineola, New York 11572


Court Reporter:            Perry Auerbach
                           100 Federal Plaza
                           Central Islip, New York 11722
                           (631) 712-6103

2

Proceedings recorded by mechanical stenography.
Transcript produced by computer.


***

4    THE CLERK: Calling case 13-CR-607 USA versus
5    Kenner and Constantine. Counsel please state appearances
6    for the record.
7    MS. LEONARDO: For the United States Diane
8    Leonardo, Madeline O'Connor, Laura Mandel and Saritha
9    Komatireddy.
10   THE COURT: Good afternoon.
11   MR. HALEY: Good afternoon, Judge. Richard
12   Haley, pursuant to a CJA appointment, for the defendant
13   Phil Kenner, Mr. Kenner is seated to my left.
14   MR. CONWAY: Good afternoon, your Honor. Joseph
15   Conway and Andrew Oliveras.
16   THE COURT: Good afternoon. Mr. Constantine is
17   present as well. So as you know, we scheduled this for
18   the forfeiture hearing. Are both sides ready to proceed?
19   MS. LEONARDO: Yes, your Honor.
20   MR. HALEY: Yes, your Honor.
21   I do have an application before we proceed.
22   THE COURT: Yes.
23   MR. HALEY: Your Honor, before I begin, I will
24   have a standing objection to a discrete category of

3

1    documents that I believe that the government will seek to
2    introduce upon the commencement of this forfeiture
3    hearing. I bring this to the attention of the court at
4    this point in time so there's not a continual interruption
5    by way of objection and at least I can make my record and
6    then the government can respond and the Court can consider
7    the issue.
8        Your Honor may recall that this indictment was
9    returned back in 2013, specifically October 29, 2013.
10   Mr. Kenner was originally represented by Randi Chavis,
11   Legal Aid Society. I was thereafter appointed to
12   represent Mr. Kenner, specifically on April 3, 2014.
13   Prior to my appointment, the government had already
14   commenced the supply of what is, what we all know is
15   called Rule 16 material. Upon my appointment and shortly
16   thereafter, I filed a formal demand, specifically on June
17   25, 2014, demanding all Rule 16 material, in addition to
18   other demands as set forth in my discovery demands, it was
19   a 13 page discovery demand it's a matter of record.
20       What transpired thereafter were a number of
21   instances where there were continual responses, repeated
22   responses to my demands by way of Rule 16 material. The
23   Court may recall there were some issues as relates to when
24   the government believed that they would complete the Rule
25   16 disclosure. Indeed, Judge, this is a complicated case,

4

1    the Court ruled it to be a complicated case, I never
2    objected to that complex designation because it is indeed
3    a complex case.
4        However, when we commenced trial at least is
5    there had been a representation by the government that all
6    Rule 16 material had been delivered to the defense and the
7    defense proceeded to trial with a body of knowledge that
8    consisted of Rule 16 material having previously been
9    provided to the government in advance of trial. In
10   advance of trial as well, inquiry was made as to whether
11   the defendant would be seeking to have the forfeiture
12   count of the indictment tried by court or jury.
13       We did indicate at that point in time it would
14   be our intention to have it tried by the court and not the
15   jury.
16       Thereafter, Judge, what had occurred is we had
17   received prior to the trial a Bill of Particulars that
18   expanded, if you will, the property identified in the
19   indictment that the government would seek criminal
20   forfeiture upon conviction. By way of the record, Judge,
21   as relates to the indictment itself, the criminal
22   forfeiture allegations in the indictment identify 95-4928
23   Hawaii Belt Road as specific property that the government
24   would seek to forfeit. Identify lot 469, Discovery Harbor
25   unit one as another real property the government would

5

1    seek to forfeit. Identify a 1976 Falcon 10 airplane the
2    government would seek to forfeit upon conviction and the
3    premises located at 1075 East Cactus Road.
4        Now, Judge, in advance of trial the government
5    did supply a Bill of Particulars and I recognize frankly,
6    Judge, pursuant to statute the government can supply a
7    Bill of Particulars. So my argument is they're not bound
8    by what's contained in the indictment, they may supplement
9    the indictment by way of a Bill of Particulars and they
10   did so, Judge. On April 22, 2015 they supplemented the
11   forfeiture allegation by way of a Bill of Particulars
12   indicating that upon conviction the government would also
13   seek to forfeit my client's interest in Baja Ventures LLC
14   as well as Diamonte Properties LLC.
15       It was that body of knowledge, your Honor, that
16   we had available to us when we made decisions in
17   connection with our desire to proceed by way of court
18   determination rather than jury determination. And indeed
19   it was with that body of knowledge that we then commenced
20   the trial and cross-examined various government witnesses
21   during the course of that trial.
22       Prior to the jury entertaining this case and
23   prior to the submission of either the requests to charge
24   or any special verdict that would otherwise be required
25   should the defendant require the jury decide the issue, we

6

1 placed on the record that again we wished the Court to
2 decide the issue and waived our right to a jury trial as
3 relates to the forfeiture at that point in time.
4 　　　Again, Judge, at that point in time our body of
5 knowledge was based upon the indictment and the Bill of
6 Particulars that the government provided.
7 　　　Subsequent to the jury verdict in this case,
8 specifically on August 20th, the government filed another
9 document stylized as a Bill of Particulars, not an amended
10 Bill of Particulars but another document stylized as a
11 Bill of Particulars. In that Bill of Particulars they
12 repeated their desire to forfeit upon conviction Baja
13 Ventures 2006, admittedly, Judge, we had been given prior
14 notice to that desire that the government would forfeit
15 that property by way of their Bill of Particulars that
16 proceeded the commencement of the trial.
17 　　　However, they then went on to identify
18 additional properties that they would now seek to forfeit
19 upon the forfeiture aspect of the case, again, Judge, this
20 is post verdict, KAJ Holdings LLC, CSL Properties 2006
21 LLC, Diamonte Properties LLC, Somerset LLC, Diamonte Cabo
22 San Lucas and the real property and premises located at
23 Mosquito Rojo, block 17 lot to 30.
24 　　　That August 20th Bill of Particulars, Judge, was
25 subsequently followed by a delivery to the defense by way

7

1 of three CD disks on December 21, 2016 wherein the
2 government identified additional documents that they would
3 be utilizing for purposes of the forfeiture hearing on
4 these three disks.
5 　　　Your Honor, it's our position I believe twofold
6 position, your Honor, first of all, I submit to the Court
7 that the government that the government ought to be
8 precluded for its failure to in advance of trial identify
9 specific properties that they sought to forfeit in Rule 16
10 material prior to the commencement of trial.
11 　　　With all due respect, I respectfully suggest to
12 the Court that if this were a civil case and had been a
13 violation of let's say a court order directing timely
14 discovery by way of documents and that had not been
15 adhered to, the Court might very well preclude evidence on
16 that issue for purpose of the civil trial. Indeed the
17 Federal Rules of Civil Procedure being modified to make
18 sure that discovery schedule and discovery deadlines are
19 adhered to by the litigants and that's enforced by the
20 Court. Here, by way of the representations made to the
21 Court during the course of the Rule 16 disclosure in
22 advance of trial, it was more than one representation that
23 Rule 16 discovery had been completed and we proceeded to
24 trial.
25 　　　What I look at as a more significant issue,

8

1 your Honor, is the prejudice that accrued to the defendant
2 with reference to his decision as to whether to proceed to
3 trial by way of court or jury with reference to the
4 forfeiture count. When we made that decision, Judge, we
5 had again the universe and body of knowledge defined, but
6 by way of indictment and by way of the Bill of
7 Particulars. What's transpired now is subsequent to that
8 decision and subsequent to our relinquishment of right to
9 have the jury decide the issue, the government is now
10 adding a Bill of Particulars that's identifying additional
11 properties that were not made known to the defendant
12 before the commencement of trial. And again, Judge, I
13 respectfully suggest to the Court that I don't know what
14 the decision would have been as to whether or not my
15 client would have consented to waive that issue before the
16 court or jury, but at least he would have had and we would
17 have had a body of knowledge when we made that decision as
18 to what specific properties they sought to forfeit.
19 　　　As your Honor is well aware forfeiture is
20 considered a penalty, it's considered to be a loss of
21 property in a sense of imposing a penalty as a result of a
22 defendant's criminal conviction, and because it's
23 considered a penalty, Judge, I respectfully suggest to the
24 Court that due process in this respect is paramount.
25 　　　Your Honor, my final comment in that regard is

9

1 simply this. As relates to the property identified in the
2 August 20, 2015 Bill of Particulars, the defendant would
3 object in having -- and has a continuing objection to any
4 and all evidence that's to be introduced as relates to
5 those properties, depending upon what charts the
6 government seeks to introduce as relates to those
7 properties, and rather than during the course of the
8 hearing, Judge, interpose specific objections to that body
9 of material, I thought I'd raise this issue at this point
10 in time and indicate my standing objection. Thank you,
11 Judge.
12 　　　THE COURT: Thank you. Ms. Leonardo, do you
13 want to respond to that?
14 　　　MS. LEONARDO: Yes, your Honor. Your Honor,
15 initially I'll just note that I've been through all the
16 Rule 16 discovery, but it's my understanding that all of
17 these properties were mentioned in Rule 16 discovery
18 whether it was from 3500 material, it's all mentioned
19 in there, each and every one involving the initial
20 properties.
21 　　　I would note that with regard to Mr. Haley's
22 comments in regard to the Baja Ventures, that Bill of
23 Particulars was filed at the time of trial.
24 　　　THE COURT: He noted that.
25 　　　MS. LEONARDO: I'm sorry, and certainly he was

10

1 aware of it.

2     With regard to whether or not the jury trial is

3 not a due process right, I think your Honor said it's a

4 statutory provision, and there is a jury trial if there's

5 just a money judgment being sought. I would note in

6 indictment, in criminal forfeiture allegation Count Nine

7 it's specifically just the money laundering count,

8 your Honor, we specifically are say we are seeking

9 forfeiture with regard to any property real or personal

10 involved in such offense or any property traceable to such

11 property, including but not limited to.

12     So your Honor it's our position we're not

13 limited to what's listed in the indictment. I don't

14 believe we're required to list each property in the

15 indictment. I don't believe there's any prejudicial to

16 the defendant.

17     THE COURT: I think his argument is that once he

18 got the Bill of Particulars that then he assumed that that

19 was the limit of what the government would be seeking.

20     MS. LEONARDO: Your Honor, I think in the

21 indictment it's clear that it's including but not limited

22 to. And as I said before, discovery that was had in this

23 case involved all properties, each and every property.

24     THE COURT: These three CD disks, were those all

25 new documents or some of those were duplicate that you

11

1 might have been putting together for purposes of the

2 forfeiture aspect of the case?

3     MS. LEONARDO: Your Honor, some of those were

4 duplicates. In addition, I provided 200 pages of

5 documents in October of 2015 with regard to that. So I

6 think at this stage it could have been raised months ago

7 with regard to what we were seeking. There was additional

8 charts that clearly showed a flow of money, there are bank

9 accounts that are already in evidence that show flows of

10 monies to the other entities.

11     THE COURT: Okay. I'm going to reserve decision

12 on this. I obviously wasn't aware of this prior to coming

13 out today. I will go back and look at the law as relates

14 to forfeiture proceedings, and a Bill of Particulars and

15 what binding effect it may have on the government.

16     MR. CONWAY: Judge, if I may, I'm going to join

17 in the motion with the caveat that my knowledge, my client

18 had no ownership interest in those properties. But to the

19 extent he does and the government tries to prove that,

20 I'll join in Mr. Haley's motion.

21     THE COURT: Okay. So I'm going to allow it. I

22 know there is a standing objection and it's preserved for

23 the record for the reasons Mr. Haley indicated. I'm going

24 to allow the government to put on the evidence that

25 relates to all of these properties and that will give me a

12

1 chance to look more closely at the law. I want to make

2 sure, Mr. Haley, your argument in terms of -- is an

3 argument about his decision about whether or not to seek a

4 jury decide the forfeiture versus having me decide it, as

5 well as additional discovery being provided after the

6 trial.

7     You're not suggesting that for purpose of going

8 forward with the hearing, that you're not ready to go

9 forward with the hearing.

10     MR. HALEY: No, sir. If I may, your Honor, I

11 didn't mean to any way surprise the Court as relates to

12 this particular matter. Frankly, given what's transpired

13 here I didn't know when it was going to end. We kept

14 getting additional material from the government.

15     Having said that, your Honor, I would simply

16 point out for the record, the additional Rule 16 material

17 we received included documents already in evidence. I

18 obviously have no objection to that, or documents

19 previously disclosed. But there were documents contained

20 in the material that hadn't been previously disclosed.

21     THE COURT: We'll come back to the issue once

22 I've had a chance to look at the law. We'll proceed

23 today. I think my deputy was trying to find a mutually

24 agreeable date to continue it on. Why don't we get

25 started.

13

1     MS. LEONARDO: Your Honor, if you'd like,

2 Ms. O'Connor would like to give a brief opening to give

3 you a roadmap of what we'll be seeking.

4     THE COURT: Sure.

5     MS. LEONARDO: Thank you.

6     MS. O'CONNOR: Good afternoon, your Honor. As

7 you know, after trial the jury convicted the defendants of

8 wire fraud, conspiracy to commit wire fraud and money

9 laundering conspiracy. The government submits that there

10 are two theories for which the defendants are liable to

11 forfeit property as a result of their convictions.

12     First, the defendants are required to forfeit

13 all proceeds of the wire fraud conviction pursuant to 18

14 USC Section 981(a)(1)(C).

15     Second, pursuant to 18 USC Section 982(a)(1),

16 the defendants are required to forfeit all property

17 involved in or traceable to the money laundering

18 conspiracy. The scope of the money laundering forfeiture

19 provision is quite broad, and applies to any property that

20 was "involved in," "used to commit" or "used to

21 facilitate" the defendants' money laundering violations.

22     As the government will show, for these offenses,

23 the defendants must pay a forfeiture money judgment, and

24 forfeit the previously restrained or seized assets, namely

25 the Diamonte Cabo San Lucas resort, the Falcon 10

14

1 airplane, and the property located in Hawaii, which will
2 be referred to as the Sugar Mill property.
3         As the Court is aware, forfeiture is part of
4 defendants' sentencing, and as such, the burden of proof
5 is based on a preponderance of the evidence, hearsay is
6 admissible, and the rules of evidence do not apply.
7         To establish the forfeiture, the government
8 intends to rely upon the evidence already presented at
9 trial, as well as additional information and exhibits
10 presented during the course of the forfeiture hearing.
11 Special Agent Josh Wayne will briefly summarized the
12 relevant trial testimony, and testify to additional
13 victims who were defrauded as part of defendants' schemes
14 and conspiracies to defraud.
15         As your Honor will recall, the trial evidence
16 proves that the defendants scammed victims with promises
17 that their money would be invested in real estate in
18 Hawaii, a company named Eufora, and the Global Settlement
19 Fund.  Despite those representations, the victims' monies
20 were diverted to fund the purchases of condominium units
21 at the Palms in Las Vegas, real estate in Sag Harbor, the
22 Falcon 10 airplane, the Sugar Mill property and three
23 properties in Mexico know as Los Frailes, Diamonte Cabo
24 San Lucas and Diamonte Del Mar.
25         Pursuant to 18 USC Section 981(a)(1)(C), the

15

1 government is seeking forfeiture of the proceeds traceable
2 to the wire fraud and conspiracy to commit wire fraud
3 violations, which includes the previously restrained Sugar
4 Mill property and Falcon 10 airplane, as well as a money
5 judgment.
6         Pursuant to 18 USC Section 982(a)(1), the
7 government is seeking forfeiture of the entire Diamonte
8 Cabo San Lucas property that was involved in or traceable
9 which the Court has already restrained for forfeiture, as
10 property that was involved in or traceable to the
11 defendants' money laundering violations.
12         Thank you.
13         THE COURT:  All right.  Either defense counsel,
14 I'm not asking for an opening, but if you want to give
15 one, I'll be happy to hear it.
16         MR. HALEY:  Believe it or not, Judge, no.
17         MR. CONWAY:  Same here, Judge.
18         THE COURT:  Do you want to call your first
19 witness?
20         MS. LEONARDO:  Thank you, your Honor.  The
21 government would call agent Josh Wayne.
22
23
24
25

Wayne - Direct/Leonardo

16

1 JOSHUA WAYNE,
2         called as a witness, having been first
3         duly sworn, was examined and testified
4         as follows:
5         THE CLERK:  Please state your name and spell it
6 for the record.
7         THE WITNESS:  Joshua Wayne, J-O-S-H-U-A
8 W-A-Y-N-E.
9
10 DIRECT EXAMINATION
11 BY MS. LEONARDO:
12 Q.   Good afternoon, Agent Wayne.
13 A.   Good afternoon.
14 Q.   Agent Wayne, subsequent to your testimony at trial in
15 this matter did you review trial exhibits, trial testimony
16 and other evidence to identify assets and properties
17 traceable to the crimes of conviction?
18 A.   Yes.
19 Q.   And in addition, did you also review in that same
20 evidence to determine a total approximate amount of the
21 proceeds of the crimes of conviction?
22 A.   Yes.
23 Q.   And in addition to those acts, did you also identify
24 assets that were directly traceable to line of credit
25 money or global settlement account money?

Wayne - Direct/Leonardo

17

1 A.   Yes.
2 Q.   Which specific assets were those?
3 A.   Palms condominium units, Frailes, F-R-A-I-L-E-S,
4 Diamonte Del Mar, Diamonte Cabo San Lucas.
5 Q.   And also the Sugar Mill property?
6 A.   And the Sugar Mill property.
7 Q.   And with regards to the scheme that was proven at
8 trial, is it correct that the purchase of real estate in
9 Hawaii and the fact that the players' line of credits that
10 was supposed to be used for the purchase of blind real
11 estate was used for other business ventures?
12 A.   Yes.
13         MR. HALEY:  I would object at this point in
14 time.  It is the government's witness.  Can the witness
15 testify rather than yes or no answers on a litany of
16 leading questions.  I object to the leading nature of the
17 questions.
18         THE COURT:  Overruled.  This is just background.
19 We haven't gone to the substance, this is just the
20 foundation.  I sat through the trial.  So this is nothing
21 new.  Once you get to the substance, please don't lead,
22 okay.
23         MS. LEONARDO:  Yes, your Honor.
24 Q.   And in addition to line of credit money not being
25 used for what it was supposed to be used for, was it also

**Wayne - Direct/Leonardo**

18

1  proved at trial that other that investors made straight
2  investments into Hawaii and that money was used for other
3  purposes?
4      MR. HALEY:  Judge, I'm going object, what was
5  proven at trial.  I have to object.
6      THE COURT:  Overruled.  Go ahead.
7  **A.  That I'm not sure about.  I know that at trial I'm**
8  **not sure if it was proven, but later on we sought to.**
9  **Q.**  And that was in regard to the analysis that you did?
10  **A.  Yes.**
11  **Q.**  And with regard to evidence that was proven at trial,
12  did the records show that investors' money or line of
13  credit money would go into Northern Trust Bank account?
14  **A.  Yes.**
15  **Q.**  And would those bank accounts also include the Little
16  Isle IV bank account?
17  **A.  Yes.**
18  **Q.**  And the Ula Makika bank account?
19  **A.  Yes.**
20  **Q.**  With regard to each of those three accounts, who
21  controlled those accounts?
22  **A.  Phil Kenner.**
23  **Q.**  In addition, at trial, was it proven that investments
24  into Eufora were fraudulent?
25  **A.  Yes.**

**Wayne - Direct/Leonardo**

19

1  **Q.**  And also was it proven at trial that the purchase of
2  the property in Sag Harbor was fraudulent?
3  **A.  Yes.**
4  **Q.**  It was also proven at trial that funds were put into
5  what's called the global settlement fund were diverted to
6  the defendants other investments?  That investment funds
7  were used for defendants' expenses and another
8  investments?
9  **A.  Yes.**
10  **Q.**  And prior to your testimony today, did you prepare a
11  spreadsheet with regard to the amount of money that each
12  victim invested into each of the schemes?
13  **A.  Yes.**
14  **Q.**  And do need to refer to them in order to testify?
15  **A.  Yes.**
16  **Q.**  What did you use to prepare the record?
17  **A.  Bank records, testimony at trial, other records.**
18      MS. LEONARDO:  Your Honor, I have a copy for the
19  Court.
20      THE COURT:  Yes, thank you.
21      (Documents handed to the Court.)
22  **Q.**  And agent, I just ask you to refer in front you
23  what's marked as forfeiture Exhibit 1.
24      MR. HALEY:  Judge, is there going to be an offer
25  of the chart into evidence?

**Wayne - Voir Dire/Haley**

20

1      MS. LEONARDO:  Can I ask him to identify it
2  first?
3      MR. HALEY:  I'm sorry.
4      MS. LEONARDO:  For the record, your Honor, I did
5  provide that to counsel.
6      MR. HALEY:  Yes, your Honor, conceded.
7      MR. CONWAY:  Conceded.
8  **Q.**  Do you recognize what's exhibit one, do you recognize
9  that as the spreadsheet that you developed?
10  **A.  Yes.**
11  **Q.**  That consisted trial testimony and documentary
12  evidence?
13  **A.  Yes.**
14      MS. LEONARDO:  Your Honor, I move into evidence
15  forfeiture exhibit one.
16      MR. HALEY:  Can I conduct a voir dire, Judge?
17      THE COURT:  Sure.
18
19  VOIR DIRE EXAMINATION
20  BY MR. HALEY:
21  **Q.**  Agent Wayne, good afternoon, sir.
22  **A.  Good afternoon.**
23  **Q.**  Agent Wayne, you testified just a moment ago that
24  this chart that the government seeks to introduce into
25  evidence was based on trial testimony and evidence

**Wayne - Voir Dire/Haley**

21

1  introduced at trial.  Isn't that what you just said?
2  **A.  Yes.**
3  **Q.**  Well, sir, during the course of the trial, the
4  evidence that was presented to the Court and jury
5  addressed itself to four separate fraudulent schemes as
6  set forth in the indictment, correct?
7  **A.  You want -- Eufora is one scheme, Sag Harbor, I'm not**
8  **sure what you mean?**
9  **Q.**  I'll rephrase that.
10      During the course of the trial, this turned out
11  to be a nine week trial, there was evidence introduced as
12  relates to four separate fraudulent schemes, specifically
13  the Hawaiian land development number one, number two, the
14  Eufora scheme, number three, the Global Settlement Fund,
15  and number four, the Led Better scheme; is that correct?
16  **A.  Yes.**
17  **Q.**  And if I recall, you sat through virtually the entire
18  trial, is that true?
19  **A.  Most of it, yes.**
20  **Q.**  During the course of the trial, was there ever any
21  evidence introduced before the Court and jury regarding a
22  fraudulent scheme concerning the Palms, yes or no?
23  **A.  Yes.**
24  **Q.**  Was that evidence in your opinion within the four
25  corners of the indictment, in other words, was the Palms

Wayne - Voir Dire/Haley

22

1  identified as a fraudulent scheme in the indictment, yes
2  or no?
3        MS. LEONARDO:  Objection.
4        THE COURT:  Mr. Haley, I understand why you're
5  asking these questions.  This is a legal issue.  He
6  gathered the documents and testimony related to this
7  chart.  Obviously I'm going to look at where he got the
8  information from.  But in terms of what was in the
9  indictment or not in the indictment, that's -- we can
10  discuss that.  He's not --
11        MR. HALEY:  Very well, Judge.  If I may, might I
12  ask this question?
13  Q.  Sir, you testified that this chart is based upon
14  evidence that was proven at trial but later on what we
15  determined, correct?
16  **A.  It was evidence that may have been already entered**
17  **into evidence, and then I looked at later on and we saw**
18  **it.**
19        THE COURT:  All the information contained in
20  this chart from things that were in evidence or some of
21  it --
22        THE WITNESS:  Some of it is from information
23  outside of the evidence.
24        MR. HALEY:  Your Honor, in view of that answer I
25  would object to the admission of the chart.

Wayne - Voir Dire/Haley

23

1        MS. LEONARDO:  Your Honor, most of the chart is
2  made up of evidence that was from trial and trial
3  testimony.
4        There are additional exhibits which we provided
5  to counsel which would back up some of the other elements
6  of it.
7        Your Honor, it is our position there's a money
8  laundering conspiracy conviction.  Anything involved in
9  that is subject to forfeiture.
10        THE COURT:  Are you going to introduce the
11  backup?  Is what's behind this chart the back up for the
12  chart?
13        MS. LEONARDO:  Yes, your Honor.
14        THE COURT:  I'm overruling the objection.  This
15  is a summary chart, it's admissible as a summary chart.  I
16  obviously want to review the backup and I'm going to hear
17  testimony as relates to the preparation of the chart.  But
18  again, I'm reserving on this issue of the timing of the
19  properties when they were identified by the government.
20  Whether or not they were part of the indictment or not
21  part of the indictment is obviously something that I'll
22  determine.  But in terms of the evidentiary basis of the
23  admission, I'll overrule the objection and it's admitted.
24        (Government's Exhibit 1 in evidence.)
25

Wayne - Direct/Leonardo

24

1  DIRECT EXAMINATION (Continued.)
2  BY MS. LEONARDO:
3  Q.  Agent Wayne, looking at your chart, you identified in
4  the first column losses to victims with regard to Hawaii.
5  Can you explain what that means?
6  **A.  Hawaii victims that made straight investments,**
7  **investments in the Hawaii project, as well as loans to the**
8  **Hawaii project.**
9  Q.  When you say straight investments, what do you mean
10  by that?
11  **A.  Not line of credit.**
12  Q.  How did you determine there were victims that made
13  straight investments into Hawaii that was not used for
14  Hawaii?
15  **A.  I looked at bank records, testimony, and documents**
16  **that was taken from Phil Kenner's home.**
17  Q.  Was that with regard to the Little Isle agreement?
18  A.  Yes.
19  Q.  And was that exhibit number 2, agent?
20  A.  Yes.
21        MS. LEONARDO:  I provided a copy to counsel.
22  Q.  Agent Wayne, looking at exhibit 2, do you recognize
23  that and what do you recognize that to be?
24  **A.  The Little Isle operating agreement.**
25  Q.  Where did you get that document?

Wayne - Direct/Leonardo

25

1  **A.  From Phil Kenner's home.**
2  Q.  What is your understanding with regard to what this
3  document is?
4  **A.  It lists -- it's the operating agreement for Little**
5  **Isle which lists the investments in Little Isle.**
6  Q.  And from that is that where you got each investor's
7  name that you considered to be from Little Isle?
8  **A.  Yes, as well as the investments into the bank account**
9  **of Little Isle.**
10  Q.  So you've reviewed bank accounts from Little Isle?
11  **A.  Yes, as well as evidence.**
12        MS. LEONARDO:  Your Honor, I offer exhibit 2
13  into evidence.
14        MR. HALEY:  Your Honor, actually during the
15  course of the trial we introduced that exhibit into
16  evidence so I will have no objection.
17        THE COURT:  I remember.
18        MR. CONWAY:  No objection, your Honor.
19        THE COURT:  Okay.  Exhibit 2 is admitted.
20        (Government's Exhibit 2 in evidence.)
21  Q.  Now, Agent Wayne, with regard to line of credit money
22  that was invested into Hawaii.
23  **A.  Yes.**
24  Q.  What was the total amount of line of credit money
25  that was invested into Hawaii?

Wayne - Direct/Leonardo

26

1  A.  9.8 million approximately.
2  Q.  And of that amount, did all or one of the victims
3  testify at trial?
4  A.  Yes.
5  Q.  Who was the victim that did not testify at trial?
6  A.  Mattias Norstrom.
7  Q.  And even though Mr. Norstrom did not testify at
8  trial, his line of credit account was introduced as an
9  exhibit at trial, correct?
10  A.  Yes.
11  Q.  And that was exhibit 2138, correct?
12  A.  Right.
13  Q.  And that shows his investment into what?
14  A.  It shows his line of credit transaction history.
15  Q.  Okay, now you have on the chart, you have -- you have
16  nine million dollars worth of line of credit?
17         THE COURT:  Can you focus a little better on
18  that.
19  Q.  In other words, did you double count line of credit
20  money or did you separated that?
21  A.  I separated that.
22  Q.  In your first column you have in the Hawaii money
23  approximated 2.4 million dollars straight investment,
24  correct?
25  A.  Right.

Wayne - Direct/Leonardo

27

1  Q.  I believe you testified earlier that you took that
2  from deposits into Little Isle, correct?
3  A.  Yes.
4  Q.  And those individuals you considered victims of fraud
5  because they're listed in the Little Isle agreement as
6  exhibit 2, correct?
7  A.  Right.
8  Q.  So overall, what was the total loss amounts to the
9  victims of the Hawaii fraud?
10  A.  12.2 million.
11  Q.  And as you discovered each property, did you identify
12  line of credit money that went to other victim ventures?
13  A.  Yes.
14  Q.  And did you also identify straight investors' money
15  that went to other ventures?
16  A.  Yes.
17  Q.  We'll get into those.
18         I want to direct your attention to what is known
19  as the Sugar Mill property.  Do you know what that is?
20  A.  Yes.
21  Q.  What is that?
22  A.  It's a property in Hawaii.
23  Q.  Were you able to determine how that property was
24  purchased and what records did you use?
25  A.  Yes, I used line of credit records and bank records,

Wayne - Direct/Leonardo

28

1  Little Isle, and line of credit transaction histories
2  which show line of credit money from Serge Gonchar that
3  went to Little Isle and two after that went to the
4  purchase of Sugar Mill property.
5  Q.  And do you recall if Sergei Gonchar testified that he
6  was aware that his line of credit was being used to
7  purchase the Sugar Mill property?
8  A.  Initially he was not aware.
9  Q.  And on or about what date did you identify these
10  transactions occurring?
11  A.  I would have to look at the bank record.
12  Q.  Was it in or about February 2005?
13  A.  Yes.
14  Q.  You were able to determine how the property was
15  actually purchased and what name it was purchased?
16  A.  It was purchased in the name of Honu'apo historical
17  society, H-O-N-U ' A-P-O.
18  Q.  And based on your investigation did you determine who
19  is the owner or in control of the Honu'apo historical
20  society?
21  A.  Kenner is the director of Honu'apo Historical
22  Society.  And also he stated in an e-mail that he is, he
23  owns it free and clear.
24         MS. LEONARDO:  Your Honor, I'm going to just
25  provide copies of exhibits 3, 4 and 5 to counsel.

Wayne - Direct/Leonardo

29

1  Q.  Agent Wayne, with regard to exhibit 3, do you
2  recognize that and what do you recognize that to be?
3  A.  An e-mail between Phil Kenner and Masood Bhaeui
4  B-H-A--E-U-I, M-A-S-O-O-D.
5  Q.  Where did you get this copy?
6  A.  From Ken Jowdy's attorneys, attorney.
7  Q.  And what is Exhibit 4?  Do you recognize that and
8  what do you recognize it to be?
9  A.  It's a document from the state of Hawaii that was
10  taken from Phil Kenner's home, which lists Phil Kenner as
11  an authorized officer.
12  Q.  Of what?
13  A.  Honu'apo Historical Society.
14  Q.  And with regards to exhibit five, what is that?  What
15  do you recognize that to be?
16  A.  Document from Hawaii.gov which states Phil Kenner as
17  the director.  And it says P, and I'm not exactly sure but
18  I assume P as the director.
19  Q.  Where did you get that from?
20  A.  From Hawaii.gov.
21  Q.  With regard to exhibit 4, did you get that at
22  Mr. Kenner's home?
23  A.  Yes.
24  Q.  And that was during the execution of the search
25  warrant?

Wayne - Direct/Leonardo

30

1   A.   Yes.

2        MS. LEONARDO:  Your Honor, I would offer

3   exhibits 3, 4 and 5 in evidence.

4        MR. HALEY:  Your Honor, if I may?  As relates to

5   Exhibit 4, is there a representation by the government

6   that this specific documentary exhibit was previously an

7   exhibit and delivered by Rule 16?

8        MS. LEONARDO:  I believe it would have.

9        MR. HALEY:  Do you know?  If I may, Judge, this

10  is an offer of proof.  This particular document, as best

11  as I recall, was not part of the documents delivered at

12  the time of trial.  That may have been one of the

13  documents that was delivered by way of discovery December

14  2015, representation of Rule 16 discovery.  I'm just

15  trying to verify when it's plain we received this

16  particular document.

17       THE COURT:  Do you know whether this was

18  received prior to the trial or post-trial, do you know?

19       MS. LEONARDO:  Your Honor, I can confer with

20  counsel.

21       MR. HALEY:  As relates to others, Judge, we've

22  seen the others just so the court is aware.

23       ORF-4?

24       MS. LEONARDO:  One moment, your Honor.

25       Your Honor, I believe the agent testified that

---

Wayne - Direct/Leonardo

31

1   Exhibit 4 was received during the course of the search

2   warrant.

3        THE COURT:  He asked for the production of it.

4        MR. HALEY:  Production of it, correct.

5        MS. LEONARDO:  Your Honor, it's my understanding

6   everything from the search warrant was produced.  If you'd

7   like we can always double-check.  But I would also

8   indicate that this is backed up by -- the rules of

9   evidence don't apply in this hearing, it's backed up by

10  the other documents that we have that we're submitting to

11  offer.

12       If you'd like we can check and see if there's

13  awaits stamp on it and it was produced as part of search

14  warrant.

15       MR. HALEY:  Judge, I wouldn't raise the

16  objection unless I had a good faith basis -- your Honor,

17  rather than take up time with court, perhaps I can speak

18  with the US Attorney and perhaps we can resolve the issue.

19  I wanted to make that a matter of record.

20       THE COURT:  Any objection, Mr. Conway?

21       MR. CONWAY:  No objection.

22       THE COURT:  Exhibits 3, 4 and 5 are admitted.

23       (Government Exhibits 3, 4 and 5 in evidence.)

24  Q.   So Agent Wayne, based on these exhibit, is it your

25  understanding that the -- what's known as the Sugar Mill

---

Wayne - Direct/Leonardo

32

1   property is held in the name Honu'apo Historical Society

2   which is an entity related to Mr. Kenner?

3   A.   Yes.

4   Q.   And was there also a document that was introduced

5   into evidence, exhibit 761, which is a letter from Little

6   Isle?

7   A.   Yes.

8        MS. LEONARDO:  Your Honor, I'm going to locate

9   that exhibit.

10  Q.   In sum and substance, agent, it wasn't admitted at

11  trial, what was the content of that letter?

12       MR. HALEY:  I'm sorry, judge, my

13  understanding -- you're asking the question about a

14  document that wasn't admitted.

15       MS. LEONARDO:  That was admitted in evidence at

16  the criminal trial.  Exhibit 761.  I'm trying to find a

17  copy.

18       THE COURT:  Go ahead.  You can answer that.

19  A.   It's a letter to the investors of Little Isle.  I

20  would need to look at it, though.

21  Q.   And let me show you what's marked in the criminal

22  trial as exhibit 761.  (Handing.)

23  A.   Yes.  This is Little Isle.

24  Q.   And who is that letter from and who is it to?

25  A.   To the members of Little Isle from Phil Kenner.

---

Wayne - Direct/Leonardo

33

1   Q.   And within that letter, did Mr. Kenner represent

2   anything with regard to the Sugar Mill property?

3   A.   It says one other 10 acre parcel known as the Sugar

4   Mill parcel.  It's owned by the Society of Hawaii

5   nonprofit corporation that organized called

6   Environmentally Remedy, and then developed that parcel.

7   Q.   And that letter was addressed to the Little Isle and

8   signed by Mr. Kenner; is that right?

9   A.   Yes.

10  Q.   Moving on to the Eufora fraud that was proven at

11  trial, can you briefly describe for the Court what that

12  was?

13  A.   Investors believed they were investing in Eufora and

14  their money was supposed to be used for Eufora and the

15  money went to the benefit of Tommy Constantine and Phil

16  Kenner.

17  Q.   What was the -- see the chart broken down two

18  separate frauds?

19  A.   Yes.

20  Q.   Can you explain those numbers to the Court?

21  A.   Money that went from Eufora to -- I'm sorry, money

22  that went from the investors to CMG for Eufora and money

23  that went through Eufora to Tim Gaarn to Phil Kenner's

24  benefit.

25  Q.   At trial, was the chart introduced with regard to the

---

1 Eufora fraud?

2 **A.  Yes.**

3 **Q.  And was that chart 15?**

4 **A.  Yes.**

5      MS. LEONARDO:  Your Honor, I have copies for

6 counsel.

7 **Q.  And Agent Wayne, based upon the testimony at trial,**

8 what was the total amount of money that was invested in

9 Eufora?

10 **A.  1.225 million.**

11 **Q.  And that represented which amount?**

12 **A.  The total amount of Eufora that went to CMG, I'm**

13 **sorry, investment money that went to CMG and investment**

14 **money that went to Eufora.**

15 **Q.  And in addition to individuals that testified at**

16 trial, were there individuals who did not testify at trial

17 who also invested in Eufora?

18 **A.  Yes.**

19 **Q.  And who were those individuals?**

20 **A.  Greg DeVries and Mattias Norstrom.**

21 **Q.  Did you -- how did you determine that their**

22 investment went to Eufora?

23 **A.  Well, in Greg DeVries' case, we looked at that chart**

24 **that went to Gaarn, you see that money went from Greg**

25 **DeVries to Eufora then to Gaarn, and then off to Kenner's**

1 **benefit and other items.  And for Eufora CMG you see money**

2 **going from the investors to CMG.**

3 **Q.  Did you also look at the CMG bank accounts that were**

4 in evidence during the trial?

5 **A.  Yes.**

6 **Q.  Those are exhibits 1705 and 1708?**

7 **A.  Yes.**

8 **Q.  So including the victims who testified and those who**

9 did not, the total Eufora fraud was how much?

10 **A.  1.325 million.**

11      MR. HALEY:  Your Honor, if I may, I don't want

12 my silence to be construed by this court or, for that

13 matter, the 2nd Circuit as relates to questions that are

14 asked of this particular witness where they characterize a

15 specific transaction as a fraud and then the witness

16 answers as relates to that leading question.  I say that,

17 Judge, simply because of this fundamental point.  During

18 the course of the trial, it was not a special verdict

19 here.  Judge, again, there were four separate schemes,

20 alleged fraudulent schemes that set forth in the

21 indictment.

22      The jury may very well have found as relates to

23 Hawaii land development that there was no fraud associated

24 with that particular alleged fraud.  They obviously found

25 fraud as relates to one or more of the alleged fraudulent

1 schemes.  And I admit that, Judge, where that

2 determination was made, whether it was exclusively Eufora

3 or whether it was Eufora, Global Settlement Fund and Led

4 Better or a combination of them or all four, we don't

5 know, but for witness to render an opinion based upon the

6 fact that the jury rendered a verdict wire, mail fraud

7 without a specialized verdict indicating what specific

8 fraud they found to be proven beyond a reasonable doubt,

9 is really the basis for my objection, Judge.  And I just

10 wanted to make that made known so the Court is not of a

11 view that he's characterized each and every transaction as

12 a fraud that somehow the defense concedes that.

13      The other point is simply this, Judge.

14 Mr. Norstrom or Mr. DeVries testified during the course of

15 the trial whatever monies went to Eufora as relates to

16 their investment in Eufora, there was no testimony from

17 either of those individuals as to what if any

18 representations were made to them by Phil Kenner, either

19 in terms of material misrepresentation or fraudulent

20 misrepresentation.  It's entirely speculative to say,

21 well, others he defrauded so ergo he must have also

22 defrauded these two by way he have fraudulent

23 misrepresentations.

24      That's the basis of my objection, Judge.  Thank

25 you.

1      MR. CONWAY:  I would join in that objection,

2 Judge.

3      THE COURT:  First point, I don't attribute your

4 silence as to the agreement that each of these schemes was

5 fraudulent, so you don't have to worry that.  But I'm not

6 going to preclude you from referring to the government's

7 position whether they were fraudulent or not.  I don't

8 have an issue with him using the term obviously I'll come

9 to my own conclusion as relates to the forfeiture.  But on

10 the second issue, how do you intend to prove that the

11 people who didn't testify had similar false

12 representations made to them?

13      MS. LEONARDO:  Your Honor, from my

14 understanding, what the indictment charges is that -- and

15 what the defendants were convicted of, is that the monies

16 into Eufora were for fraudulent purposes, it is for

17 unauthorized purposes monies were diverted.

18      It's our position that just because the two

19 people didn't testify -- and I don't think you need to

20 have every victim testify.  I think that you can draw a

21 conclusion that they were also defrauded by them.  You see

22 their money going into Eufora also and for other purposes.

23      THE COURT:  I'm going to -- I understand that

24 issue.  I'm going to allow him to testify regarding the

25 people who didn't testify during the trial as to what

Wayne - Direct/Leonardo

38

1   happened with their assets.  But we'll get back to that
2   objection, because I'm not sure that it's necessarily an
3   inference that can be drawn from every single person that
4   testified given their conversation they had.  We did have
5   some documents, e-mails, I don't remember if there was
6   e-mails to these two individuals where certain
7   representations were made about how the money would be
8   used, so I'm going to go back and look at what evidence
9   there is as to what if any representations were made to
10  them, at least e-mails.  But anyway, you can keep going.
11          (Continued on next page.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Wayne - Direct/Leonardo

39

1   BY MS. LEONARDO:  (Cont'd)
2   Q    Agent Wayne, did you have any conversations with Greg
3   DeVries?
4   A    **I did not.**
5   Q    Do you know if any other law enforcement agents had a
6   conversation with him?
7   A    **Yes.**
8   Q    Who did?
9   A    **I believe Mat Galioto.**
10  Q    Do you know if in sum and substance whether
11  Mr. DeVries, whether he knew or didn't know whether his
12  money was fraudulently invested?
13          MR. HALEY:  Objection.
14          THE COURT:  What do you say?
15          MS. LEONARDO:  Hearsay admissible.
16          THE COURT:  Well, double hearsay.
17          I'll allow that.  If you want to put Agent
18  Galioto on the stand, I'll allow you to do that but not
19  what he was told by Agent Galioto.  Okay.
20  BY MS. LEONARDO:
21  Q    Agent Wayne, in addition to you relying on the CMG
22  account to come up with this figure of 1.325 million, did
23  you also rely on expenses that Mr. Kenner received from
24  the Eufora account?
25  A    **We expected it went from Eufora to Gaarn and then off**

Wayne - Direct/Leonardo

40

1   to Kenner.
2   Q    And those were exhibits 3004, 3255, 1451, 3507,
3   correct?
4   A    **Yes.**
5          THE COURT:  Say those again?
6          MS. LEONARDO:  3004, 3255, 1451, 3507.
7          Your Honor, by way of procedure, I anticipate
8   we'll be submitting a brief too, your Honor.
9          THE COURT:  Okay.
10         MS. LEONARDO:  Rather than pull out each
11  exhibit's name, we envision doing as a summary witness, to
12  provide your Honor each and every document given at trial.
13         THE COURT:  All right.  Thank you.
14  BY MS. LEONARDO:
15  Q    Agent Wayne, can you briefly describe for the Court
16  what the fraudulent conduct was that was proven at trial
17  with regard to the Global Settlement Fund?
18  A    **Contributors from the Global Settlement Fund believed**
19  **their money would be used to sue Jowdy, go after Jowdy.**
20  **Instead, their money went to other items.**
21  Q    What was the total amount that was deposited of
22  investor money or victim money that was deposited in the
23  GSF fund?
24  A    **3.3 million.**
25  Q    Where did you come up with that amount?

Wayne - Direct/Leonardo

41

1   A    **Money that went into Ron Richards' account and a list**
2   **of investors from the Excel spreadsheet also entered into**
3   **evidence at trial.**
4   Q    At trial, was there also an exhibit of expenses that
5   was created and introduced into evidence?
6   A    **Yes.**
7   Q    That was Government Exhibit 80; is that correct?
8   A    **Yes.**
9   Q    And just with regard to the GSF account, were you
10  able to trace GSF money that was used for expenses related
11  to the Falcon 10 airplane?
12  A    **Yes.**
13  Q    And specifically what did you trace?
14  A    **Can I get a better version of this?**
15         THE COURT:  I think if you put your hand over it
16  it may help.
17         That didn't work.
18  A    **Money from Cabin Crafters went for the renovation of**
19  **Falcon 10.  AT Falcon Partners went to Falcon 10.**
20         THE WITNESS:  -- And you need to focus this.
21         Can I have a hard copy?
22         MS. LEONARDO:  I apologize, your Honor.  I don't
23  have an extra copy.
24         (Handing to witness).
25  A    **Aerospace reports went for the Falcon 10, and**

Wayne - Direct/Leonardo

42

1 Southwest Aviation Insurance went for the Falcon 10, as
2 well as Rick Rosenbloom money.
3 Q    Okay.  It was approximately based on the chart that
4 was already in evidence in the criminal trial,
5 approximately $615,000 of GSF money that went towards the
6 Falcon 10 airplane, correct?
7 A    Yes.
8 Q    And I think you said it was for the Aerospace report?
9 A    Yes.
10 Q    And that was with regard to what?
11 A    Some type of loan repayment, repossession of the
12 Falcon 10.
13 Q    And then there were in evidence invoices from Cabin
14 Crafters for refurbishing the plane; is that right?
15 A    Yes.
16 Q    And also an invoice for insurance for the airplane,
17 correct?
18 A    Yes.
19 Q    Was there also evidence at trial that the plane was
20 owned by AZ Falcon Partners?
21 A    Yes.
22 Q    And was there evidence at trial that Tommy
23 Constantine claimed that he owned the plane in his
24 bankruptcy paperwork?
25 A    Yes.

Wayne - Direct/Leonardo

43

1 Q    And that was also an exhibit at trial, correct?
2 A    Yes.
3 Q    And in addition to GSF money being used toward the
4 airplane, was GSF money also used to pay for a portion of
5 the Palm units?
6 A    It was -- GSF money was used to pay part of a loan
7 for the Palms condominiums.
8 Q    Now, we'll get into the Palms.
9        Agent Wayne, can you just describe for the Court
10 how do you know payments at the Palms or expenses for the
11 Palms was related to a line of credit money that was
12 supposed to be for Hawaii, GSF money, and the Centrum loan
13 money?
14 A    Yes.  Do you want me to go through the chart?
15 Q    Yes.
16 A    Okay.  A summary of the penthouse unit, 55304, James
17 Gardenia who testified at trial.  Deposit down on the
18 Palms unit of 100,000.  Then made another deposit of
19 $548,000, approximately, on July 13, 2005.
20        Then James Gardenia sold his interest to CMG,
21 Tommy Constantine's company on 8/24/2005.
22        As part of the $1.2 million agreement, Tommy
23 Constantine gave $275,000 worth of interest into Avalon
24 CMG which is hangars, and then Tommy Constantine also --
25 CMG sent James Gardenia another $275,000 as part of the

Wayne - Direct/Leonardo

44

1 1.2 million, and the source of those funds were Kaiser's
2 loan to Hawaii and Sergei Gonchar's investment in Hawaii
3 and as well as an investment for Michael Andretti.
4        CMG also sent another 325,000 on November 7,
5 2005.  The source of the money was Gonchar's line of
6 credit and Darryl Sydor's investment in Hawaii.
7        Then CMG sent another $325,000 as part of a
8 $1.2 million payment and the source of those funds are
9 Michael Andretti's investment in the Palm and Bradley
10 ispister's investment in Hawaii.  And then on November 25,
11 2008, James McKee is assigned the Palms unit.
12        On 3/17, 2009 the Palms unit was appraised for
13 $2.8 million which is less than the purchase price of
14 2.2 million.
15        Phil Kenner on July 1, 2009, in travels to
16 Florida meets with James McKee and pitches James McKee to
17 buy the unit --
18        MR. HALEY:  Judge, I would object.  Is that
19 based upon -- your Honor, I apologize.
20        THE COURT:  What is that based on?  Where is
21 that coming from?
22        THE WITNESS:  Conversations with James McKee as
23 well as assignment of the unit.
24        THE COURT:  Whose conversations?
25        THE WITNESS:  I believe it was Mike Connor

Wayne - Direct/Leonardo

45

1 re-interviewed James McKee.
2        MR. HALEY:  Your Honor, if I may, may I conduct
3 a brief voir dire in connection with the answer.
4        THE COURT:  Why don't you wait for your cross.
5        MR. HALEY:  Okay.
6        THE WITNESS:  Then James McKee sold the unit on
7 July 14, 2009.
8 Q    Now, Agent, backing up a little bit, with regards to
9 the purchase of the unit as the Palms, did Ethan Moreau
10 have a unit that was supposed to purchase at the Palms?
11 A    Yes.
12 Q    And do you know what happened with respect to that
13 unit?
14 A    Ethan Moreau gave a deposit of $290,000 for the
15 units and to purchase a unit, two units, and those
16 $290,000 goes to Constantine Management Group and sent to
17 Ula Makika.
18 Q    And those were shown in the bank records introduced
19 in evidence?
20 A    Yes.
21 Q    Showing you what has been marked for identification
22 as Forfeiture Exhibit 6.  What do you recognize that to
23 be?
24 A    The e-mail between Phil Kenner and Ethan Moreau
25 discussing the purchase of the units.

Wayne - Direct/Leonardo

46

1  Q   Okay. And prior to Ethan Moreau being involved, were
2  you able to trace through the bank records how the deposit
3  on this particular unit was made, the Moreau unit?
4  A   **Prior to Moreau being involved, the Centrum loan**
5  **money eventually went to CMG which then put a deposit on**
6  **the unit.**
7  Q   And at trial what was -- can you just remind the
8  Court what was the fraud with regard to the Centrum loan?
9  A   **Centrum loan money was supposed to be used for**
10 **Hawaii, also secured by original line of money that went**
11 **to purchase the property in Hawaii.**
12 Q   So instead of the money sent for Hawaii, being used
13 for Hawaii, it went to another business venture, correct?
14 A   **Yes.**
15 Q   Agent, did you also during the course of the trial,
16 were there also other charts introduced in trial, four and
17 five?
18 A   **Yes.**
19 Q   That also shows the Centrum loan money?
20 A   **Yes.**
21 Q   And that's what you just testified to?
22 A   **Yes.**
23 Q   With regards to McKee's units at the Palms did you
24 speak to Mr. McKee?
25 A   **Yes.**

Wayne - Direct/Leonardo

47

1  Q   And he also testified during the course of the
2  criminal trial?
3  A   **He did.**
4  Q   Did he tell you that Phil Kenner agreed to made the
5  payments on the unit that he purchased?
6  A   **Yes.**
7  Q   With regards to the purchase of the McKee unit from
8  Mr. Gardenia.
9  A   **Yes.**
10 Q   Those were actually introduced in evidence at the
11 trial; is that right?
12 A   **I believe they were. Some of them are.**
13 Q   I direct your attention what is marked as forfeiture
14 number 11. Can you describe what that is, please, Agent
15 Wayne?
16 A   **The agreement for Tommy Constantine's or CMG to**
17 **purchase the interest in Intrigue Penthouse.**
18 Q   And that is actually already an exhibit introduced at
19 trial as Exhibit 3823?
20 A   **Yes.**
21 Q   And regards to Exhibit 8, the e-mail between
22 Mr. Kenner and Mr. Moreau, where did you get that?
23 A   **Ken Jowdy's attorney.**
24      MS. LEONARDO: I offer Exhibit 8 and 11 in
25 evidence.

Wayne - Direct/Leonardo

48

1       THE COURT: I thought it was 6.
2       MS. LEONARDO: I'm sorry, your Honor, it's 6.
3       THE COURT: 6 and 11?
4       MS. LEONARDO: Yes, your Honor.
5       MR. HALEY: I'm sorry, which one.
6       MS. LEONARDO: Six is the e-mail and 11 is
7  actually in evidence.
8       MR. HALEY: Judge, thank you.
9       MR. CONWAY: I have no objection, your Honor.
10      MR. HALEY: No objection, your Honor.
11      THE COURT: 6 and 11 are admitted.
12      (Whereupon, Government Exhibit 6 and 11 were
13 received in evidence.)
14 Q   Agent Wayne, how did you determine the loss amount
15 with regard to Ethan Moreau?
16 A   **That's what he provided us with, saying that is how**
17 **much out of pocket money he lost so far.**
18      MR. HALEY: Your Honor, if I may. I would
19 object.
20      My understanding is that this proceeding is a
21 forfeiture hearing, not a hearing that addresses a
22 guideline calculation in connection with loss amount. I'm
23 wondering when the witness testifies as to a loss amount,
24 his opinion as relates to a particular item, what he
25 claims is a fraudulent transaction, I'm not understanding

Wayne - Direct/Leonardo

49

1  the connection when we're dealing with the nexus between
2  the conviction and the interest an individual may have in
3  a particular piece of property.
4       The offenses of conviction, again, Judge,
5  involve specific fraudulent schemes that were identified
6  in the indictment. The Palms was not alleged to be one of
7  them. Trade list was not alleged to be one of them nor
8  other items referred in the charge, so that's only my
9  objection.
10      Relevance and materiality for the purposes of
11 the forfeiture hearing.
12      Thank you.
13      MS. LEONARDO: Your Honor, it's our position
14 that in order to fashion an appropriate forfeiture money
15 judgment, you need to know the entire scope of the money
16 laundering conspiracy.
17      I think I mentioned before in the indictment,
18 part of the conspiracy that they were convicted of is that
19 they took Hawaii money, money meant for Hawaii and was
20 used for other business ventures and personal expenses.
21 The other business ventures were Palms, Cabo, all the
22 things we'll try to talk about.
23      It obviously overlaps a little bit with the
24 restitution questions, and I would submit this is not a
25 surprise to the defense because it is laid out in the PSR

Wayne - Direct/Leonardo

**50**

1   with regards to each and every one of these things, with
2   regards to losses that each of these people sustained.
3            THE COURT:  Okay.  Again, I'll allow the
4   testimony and allow the agent obviously to trace the
5   money, where it went, in terms of the amounts of
6   forfeiture for reference of restitution.
7            Again, I want to get the testimony from him to
8   state the evidence of where he believed based upon his
9   review of the records and other pieces of evidence where
10  the money went and then I'll made a legal determination on
11  each of those issues of forfeiture, restitution and
12  obviously guidelines.  Okay.
13           MS. LEONARDO:  Thank you.
14  Q   Agent Wayne, what was the total amount of the loss to
15  Ethan Moreau with regards to the Palms unit?
16  A   **Approximately 1.5 million.**
17  Q   And I believe you mentioned briefly about James
18  McKee's purchase --
19  A   **I'm sorry, Ethan Moreau was $290,000.**
20  Q   And 1.5?
21  A   **Jaime.  I'm sorry.**
22  Q   And the 290,000 came about because Ethan Moreau put
23  the deposit down and never got it back; is that correct?
24  A   **Yes.**
25  Q   Did you trace where that 290 went?

Wayne - Direct/Leonardo

**51**

1   A   **Went to CMG and then I believe it was to Ula Makika,**
2   **the Kenner controlled account.**
3   Q   And I believe you just said Mr. McKee's out of pocket
4   expenses with regard to this unit was approximately
5   $1.5 million; is that correct?
6   A   **Yes.**
7   Q   Did you also with regard to Mr. McFadden's unit trace
8   investment money that went to Little Isle IV and then to
9   Ula Makika and CMG for the purchase of Mr. McKee's unit?
10  A   **It may have just gone to Ula Makika.  I'm not sure if**
11  **it went through Little Isle II.**
12  Q   Is that with regards to Ethel Kaiser's involvement in
13  Hawaii?
14  A   **It was a loan.**
15  Q   Ethel Kaiser testified to that at trial, correct?
16  A   **Yes.**
17  Q   Now, with regards to the purchase of the Palms unit
18  in the name of Michael and Kristin Peca, did you also
19  trace a line of credit money that went to that unit?
20  A   **Yes.**
21  Q   Did you prepare a chart on that?
22  A   **Yes.**
23  Q   What did you base that chart on?
24  A   **Bank records mainly.**
25  Q   When you say bank records, what bank records?

Wayne - Direct/Leonardo

**52**

1   A   **Little Isle bank records, GDM, Guide-Dog Management,**
2   **CMG, Ula Makika.**
3   Q   Okay.  Looking at chart 22, is that how you prepared
4   that chart?
5   A   **Yes.**
6   Q   It's a summary chart of all those bank records?
7   A   **That's right.**
8   Q   It's a summary chart of all of those bank records?
9   A   **Yes.**
10           MS. LEONARDO:  Your Honor, I'd offer chart 22 in
11  evidence.
12           THE COURT:  Any objection?
13           Do I have this in my book or not?
14           MS. LEONARDO:  I'm sorry, your Honor.  It's in
15  the chart.
16           MR. HALEY:  Your Honor, I have my standing
17  objection.
18           MR. CONWAY:  Judge, my objection is this is not
19  stuff, this is not evidence that was put in at trial.  In
20  fact just the opposite, I believe.
21           We tried to bring it out at trial and our
22  objection was overruled.  They are ruling this a Palms
23  Penthouse fraud.  There has been no jury determination as
24  such, so I will object on those grounds.
25           THE COURT:  Again, that is similar to

Wayne - Direct/Leonardo

**53**

1   Mr. Haley's objection.
2            I'll admit the evidence related to each of these
3   various properties and the tracing of the money, but I'll
4   go back to this issue about what the count of conviction,
5   whether or not the other items, given that alleged fraud,
6   for example, for the Palms Penthouse, whether or not those
7   moneys should be forfeited or not.  So you are preserving
8   that objection, but for the purpose of the hearing I'll
9   admit it.
10           MS. LEONARDO:  Thank you, your Honor.
11  Q   Agent Wayne, just looking at what is marked as chart
12  22, can you just describe for the Court how Hawaii line of
13  credit money went towards this unit?
14  A   **Sure.  From Steven Rucchin, $200,000 on January 21,**
15  **2005, going to Little Isle, January 25, 2005.  Norstrom's**
16  **line of credit goes to Little Isle.  From there the money**
17  **goes to GDM, Guide-Dog Management, a Kenner-controlled**
18  **account.**
19           From there it goes to CMG, and soon after a
20  check is written for 100,000 to Stuart Tietell for purpose
21  of the unit.  Do you want me to continue?
22           MS. LEONARDO:  Yes, please.
23  A   **Also Centrum money, 2.5 million went to Little Isle.**
24  **From there $650,000 goes to Ula Makika.  Soon after Ula**
25  **Makika sends it to CMG and checks are written for the**

Wayne - Direct/Leonardo

54

1 purpose of purchase of the unit, a deposit.  And again
2 Ethel Kaiser $700,000 loan goes to Cow Holdings and off to
3 Makika and then to CMG and a check is written for part of
4 the condo units.
5 Q   And did you speak with Mr. Peca about the purchase of
6 this unit?
7 A   Yes.
8 Q   And what if anything was he told with regard to the
9 purchase of this unit?
10 A   He said that he would make the deposit and Kenner
11 would make -- he would take on -- he would make the
12 deposit and Phil Kenner would make the mortgage payments
13 and the mortgage would be in Peca's name.
14 Q   And Mr. Kenner represented that he would make the
15 mortgage payments on the unit?
16 A   Yes.
17 Q   And similar to what was represented to Mr. McKee?
18 A   Yes.
19 Q   Did you also compare the payments that you spoke
20 about with regards to the Palms payment schedule for the
21 units which was already in evidence as Exhibit 4408?
22 Q   Okay.
23 Q   Okay.
24     And in reviewing that, did that reflect payments
25 that were made with regards to these units?

Wayne - Direct/Leonardo

55

1 A   Yes.
2 Q   And I believe you testified that Mr. Rucchin's line
3 of credit went towards the Peca's unit; is that right?
4 A   Yes.
5 Q   And he testified at trial, correct?
6 A   Yes.
7 Q   Now, Agent, I want to direct your attention to what
8 is known as the Frailes' property?
9     THE COURT:  Why don't we take a ten-minute break
10 and we'll go to 4:30 and stop.
11     MS. LEONARDO:  Thank you, your Honor.
12     THE COURT:  All right.
13     (Whereupon, a recess was taken.)
14     THE COURT:  Go ahead.
15 Q   Agent Wayne, just one further question with regard to
16 the Peca's unit at the Palms.  I'll ask you to look at
17 what is marked as forfeiture Exhibit 15.
18 A   Yes.
19 Q   And do you recognize that?
20 A   Yes.
21 Q   And where did you get this?
22 A   From Kristin Peca.
23 Q   This is an e-mail between Michael and Kristin Peca
24 and Phil Kenner?

Wayne - Direct/Leonardo

56

1     MS. LEONARDO:  Your Honor, I offer Exhibit 15 in
2 evidence.
3     MR. HALEY:  No objection, your Honor.
4     MR. CONWAY:  No objection, your Honor.
5     THE COURT:  Okay.  Exhibit 15 is admitted.
6     (Whereupon, Government Exhibit 15 was received
7 in evidence.)
8 Q   In sum and substance, Agent, what does this e-mail
9 represent?
10 A   An e-mail from Phil Kenner to Michael Peca discussing
11 the terms of the Palm deal.
12 Q   And do you know how much, how you arrived at this
13 figure?  I believe you have under the Palms, you have the
14 Pecas listed.  How did you derive that figure?
15 A   That's what the Pecas told me.
16 Q   Was there a total loss with regards to the Palms
17 unit?
18 A   Yes, that's an estimated loss.
19 Q   Do you know what the status of that unit is today?
20 A   I believe it is in foreclosure.
21 Q   Okay.  Agent, I want to direct your attention to the
22 Frailes property.
23 A   Yes.
24 Q   Can you describe to the Court what the Frailes
25 property is?

Wayne - Direct/Leonardo

57

1 A   An undeveloped property north of Cabo San Lucas, that
2 Kenner got investors to invest in.
3 Q   And were you also able to trace line of credit money
4 that was sent to Hawaii that went to the Frailes
5 investment?
6 A   Yes.
7 Q   Specifically which investor's line of credit did you
8 trace to the Frailes?
9     Actually did you prepare a chart for that too?
10 A   I did.
11 Q   I'll ask you to look at what is marked as chart 23.
12 A   Yes.
13 Q   How did you prepare this chart?
14 A   By looking at bank records and discussions with
15 Robert.
16 Q   I'm sorry, bank records in evidence?
17 A   Yes.
18 Q   Bank records of Little Isle and Ula Makika?
19 A   Yes.
20     MS. LEONARDO:  I offer chart 23 in evidence.
21     THE COURT:  Any objection?
22     MR. HALEY:  Your Honor, subject to my standing
23 objection.
24     MR. CONWAY:  No objection, your Honor.
25     THE COURT:  Chart 23 is admitted as a summary

Wayne - Direct/Leonardo

58

1    chart.

2        (Whereupon, Government Exhibit 23 was received

3    in evidence.)

4    Q    Agent Wayne, looking at chart 23, briefly describe

5    what this represents?

6    A    Yes, my credit money from Nolan and Rucchin going to

7    Little Isle and to Ula Makika and to Robert Gaudet.

8    Q    And did both Rucchin and Nolan testify during the

9    criminal part of this trial with regards to the lines of

10   credit?

11   A    Yes.

12   Q    Do you recall what the testimony was?

13   A    Nolan stated he was not aware of a line of credit.

14   Rucchin stated that his line of credit was only supposed

15   to be used for Hawaii.

16   Q    And on the chart you have money going to Robert

17   Gaudet.  Who is Robert Gaudet?

18   A    A business part of of Phil Kenner for the property.

19   He helped broker the deal for a potential purchase of the

20   Frailes property.

21   Q    Did you have conversations with Mr. Gaudet with

22   regards to the purchase of the property?

23   A    Yes.

24   Q    And did Mr. Gaudet tell you that Phil Kenner was an

25   investor or an owner of the property?

Wayne - Direct/Leonardo

59

1    A    Well, he was invested in the property, some of his

2    money that went down as Phil Kenner's money.

3    Q    And on your forfeiture chart 1, what was the total

4    amount of money that players invested in Frailes?

5    A    Approximately 6.7 million.

6    Q    How did you arrive at that number?

7    A    Money that went down for the investment in Frailes.

8    Q    And in speaking with Mr. Gaudet, did he provide you

9    with a list of investors in the Frailes property?

10   A    Yes, but we also got a list of investors from e-mail

11   that went to Brian Berard from Gaudet.

12   Q    Now, I'll ask you to look at what is marked as

13   Forfeiture Exhibit 18 and 19, and can you tell us what

14   that is?

15   A    This is a transaction from Tyson Nash representing

16   his investment in Frailes.

17   Q    Did Mr. Gaudet confirm that Tyson Nash was an

18   investor in Frailes?

19   A    Yes.

20   Q    Where did you get those documents?

21   A    From Tyson Nash.

22        MS. LEONARDO:  Your Honor, I would offer 18 and

23   19 into evidence.

24        MR. HALEY:  Your Honor, if I may.  I don't

25   believe that a document is properly authenticated for

Wayne - Direct/Leonardo

60

1    purposes of admissibility when it is given to the witness

2    even though he's a government witness.  He identifies it

3    in terms of a document that was given to him by Tyson

4    Nash.  That's the sole and exclusive basis for the

5    authentication upon which the Government seeks to

6    introduce FORF-19.

7        I would object.

8        THE COURT:  Any response?

9        MS. LEONARDO:  Your Honor, it's our position

10   this was given to the Government by Mr. Nash with regards

11   to his investment in Frailes and we also do have the

12   confirmatory e-mail from Gaudet who verified Tyson Nash

13   didn't make this investment in Frailes and based on the

14   agent's conversation with Gaudet.

15        MR. CONWAY:  Your Honor, just as a pickup on

16   Mr. Haley's initial point.  It's my understanding Tyson

17   Nash testified at trial.  These were documents not

18   introduced at trial, and when the defense tried to elicit

19   cross-examination materials about this particular Frailes

20   or Las Frailes, whatever it may be called, our objections

21   were overruled.

22        THE COURT:  I'll reserve on Exhibit 19.

23        There's no objection to 18?

24        MR. CONWAY:  No, sir.

25        THE COURT:  18 is admitted, and I'll reserve on

Wayne - Direct/Leonardo

61

1    Exhibit 19.

2        (Whereupon, Government Exhibit 18 was received

3    in evidence.)

4    BY MS. LEONARDO:

5    Q    Agent Wayne, I'll ask you to look at what is marked

6    as Exhibit 20.  Do you recognize that?

7    A    Yes.

8    Q    What do you recognize that to be?

9    A    Charles Schwab records for Brian Berard's sending

10   money to Robert Gaudet.

11   Q    Did Brian Berard testify at trial?

12   A    Yes.

13   Q    And did Brian Berard also represent that he invested

14   in Frailes?

15   A    I'm not sure if he represented that at trial, but he

16   did invest in Frailes.

17   Q    And where did you get this document from?

18   A    Charles Schwab.

19        MS. LEONARDO:  Your Honor, I would offer

20   Exhibit 20 in evidence.

21        MR. HALEY:  Judge, I never object to bank

22   records as the Court is well aware.  I might simply say

23   again it is subject to my standing objection as it refers

24   to Frailes.

25        Thank you, Judge.

Wayne - Direct/Leonardo

62

1      MR. CONWAY:  Same here, Judge.

2      THE COURT:  Exhibit 20 is admitted.

3      (Whereupon, Government Exhibit 20 was received

4  in evidence.)

5      MS. LEONARDO:  Your Honor, if you would like, I

6  know a bunch of Charles Schwab records were stipulated to.

7      I don't know if these were stipulated to.

8      THE COURT:  They were not objecting to the

9  document itself.

10     MS. LEONARDO:  Okay.

11     THE COURT:  It's a continuing objection to the

12 proving up of frauds that weren't presented at trial is

13 what you are saying?

14     MR. HALEY:  Yes, sir.

15     THE COURT:  Okay.

16     MS. LEONARDO:  Thank you.

17 **Q    Looking at 21.  Do you recognize that and what do you**

18 **recognize it to be?**

19 **A    A statement from Hermosa Ventures.  Nordstrom**

20 **deposits money into this bank account and the money**

21 **subsequently goes to Robert Gaudet.**

22 **Q    And did you confirm that with Robert Gaudet?**

23 **A    Yes.**

24 **Q    And again that was for the purchase of Frailes?**

25 **A    An investment in Frailes.**

Wayne - Direct/Leonardo

63

1      MS. LEONARDO:  The investment in Frailes, yes.

2  **Q    Agent, I'd ask you to look at Exhibit 22.**

3  **A    Yes.**

4  **Q    Do you recognize that and what do you recognize that**

5  **to be?**

6  **A    It's a wire transfer from Michael Peca.**

7  **Q    And that is from his Charles Schwab account?**

8  **A    Yes.**

9  **Q    Where did you get that?**

10 **A    Charles Schwab.**

11     MS. LEONARDO:  Your Honor, I offer Exhibit 22 in

12 evidence.

13     THE COURT:  And 21?

14     MS. LEONARDO:  And 21.

15     THE COURT:  Any objection?

16     MR. HALEY:  As far as the bank records, no.  But

17 I believe these are both related to Frailes, is that the

18 testimony?

19     THE WITNESS:  Yes.

20     MR. HALEY:  My continuing objection.

21     MR. CONWAY:  Same objection.

22     THE COURT:  21 and 22 are admitted.

23     (Whereupon, Government Exhibit 21 and 22 were

24 received in evidence.)

25     MS. LEONARDO:  I can hand the next batch to

Wayne - Direct/Leonardo

64

1  counsel because they are bank records.

2      THE COURT:  Okay.

3      MS. LEONARDO:  That would be Exhibit 23, 24, 25,

4  26 and 27 (handing to counsel).

5  **Q    Looking at Exhibit 23 through 27, do you recognize**

6  **those?**

7  **A    Yes.**

8  **Q    What do you recognize those to be?**

9  **A    They are bank records where money is invested into**

10 **Frailes for Frailes.**

11 **Q    Okay.  And 23 is with regards to which investor?**

12 **A    Nick Privitello.**

13 **Q    Continue.  Does Nick Privitello's investment into**

14 Frailes actually get to Frailes?

15 **A    No, it went to Phil Kenner's account.**

16 **Q    Which Phil Kenner account did that go to?**

17 **A    I would have to look at Phil Kenner's account.**

18 **Q    Based on your recollection, it was not sent to Mr.**

19 Gaudet but it was sent to Phil Kenner?

20 **A    Right.**

21 **Q    And Exhibit 24, 25, what does that represent?**

22 **A    24 is a check written to John Kaiser for Frailes from**

23 **^  Frank Sconzo, and John Kaiser deposited the money and**

24 **then sent money to Phil Kenner for Sconzo's investment.**

25 **Q    Who told you that John Kaiser sent the money for**

Wayne - Direct/Leonardo

65

1  Mr. Sconzo's investment?

2  **A    John Kaiser.**

3  **Q    Exhibit 26 is with regards to which investor?**

4  **A    Turner Stevenson.**

5  **Q    And Exhibit 27 is with regard to which investor?**

6  **A    Jonathan Smith.**

7      MS. LEONARDO:  Your Honor, we would offer

8  Exhibit 23 through 27.

9      THE COURT:  Other than the standing objection,

10 any objection?

11     MR. HALEY:  May I have a moment, Judge?

12     May I have one quick question?

13     THE COURT:  Yes.

14     MR. HALEY:  As relates to FORF-27, how many

15 conversations did you have with Kelly Smith or Jonathan W.

16 Smith with reference to this document?

17     THE WITNESS:  Maybe two or three.

18     MR. HALEY:  Were those conversations reduced to

19 3500 material?

20     THE WITNESS:  There was a memo written.

21     MR. HALEY:  No objection, Judge.

22     MR. CONWAY:  No objection, your Honor.

23     THE COURT:  23 through 27 are admitted.

24     (Whereupon, Government Exhibit 23 through 27

25 were received in evidence.)

Wayne - Direct/Leonardo

66

BY MS. LEONARDO:

1 BY MS. LEONARDO:

2 Q You indicated earlier that you received an e-mail

3 forwarded to you from Brian Berard with regard to the

4 investment of Frailes; is that correct?

5 A Yes.

6 Q Showing you what is marked as Exhibit 49.

7 A Yes.

8 Q And is that the e-mail that you received?

9 A The Government received, yes.

10 MS. LEONARDO: The Government received.

11 Q And do the numbers of investments in that e-mail

12 correspond to the bank records that you just testified to

13 with regards to the victims who invested in Frailes?

14 A Yes.

15 Q And did Robert Gaudet also confirm that that were

16 investors' investments in Frailes?

17 A Yes.

18 MS. LEONARDO: Your Honor, I would offer

19 Exhibit 49.

20 MR. HALEY: I object, your Honor. The

21 question -- the answer was [sic], does this e-mail that

22 apparently was sent to the witness regarding ostensibly an

23 e-mail exchange between Brian Berard and John Kaiser,

24 corroborate information contained on the charts? I would

25 object to the admissibility of that document, Judge. It

---

Wayne - Direct/Leonardo

67

1 is one thing, Judge, if his testimony is being based on an

2 analysis of bank records or prior testimony. It's another

3 if he's using an e-mail between two witnesses who

4 ostensibly argue here today who are unsworn to somehow

5 bolster his finding.

6 I would object on that basis.

7 MR. CONWAY: I join in that objection.

8 MS. LEONARDO: I believe the agent testified

9 that he spoke to Mr. Gaudet about it also and those are

10 confirmed.

11 The earlier bank records also reflect the same

12 amounts of money that those individuals invested in

13 Frailes.

14 THE COURT: I don't remember if he said he spoke

15 to Mr. Gaudet about this.

16 Did you speak to Mr. Gaudet about this?

17 THE WITNESS: I spoke to Mr. Gaudet about

18 several of the investors' money going down to Frailes.

19 That particular e-mail, I would have to review that.

20 THE COURT: I'll reserve on that. Okay.

21 Keep going.

22 BY MS. LEONARDO:

23 Q And Agent Wayne, you estimate that the total loss to

24 investors was about 6.7 million and the chart that

25 Mr. Gaudet provided to you is about 6 million. Can you

---

Wayne - Direct/Leonardo

68

1 explain the difference?

2 A Mr. Gaudet -- well, first I think we left out the

3 Yachmenev's investment. And that is based on money from

4 forfeiture 28.

5 MR. HALEY: I'm sorry, Judge. Could he repeat

6 that? That is the very first time.

7 I didn't hear that.

8 THE WITNESS: Vitalli Y-a-c-h-m-e-n-e-v.

9 MR. HALEY: Is that mentioned to your knowledge

10 in any of the bills of particulars that have been filed in

11 this case, that particular investment?

12 THE WITNESS: To my knowledge, I don't know.

13 MS. LEONARDO: Yachmenev is an individual.

14 MR. HALEY: I see.

15 BY MS. LEONARDO:

16 Q Agent Wayne, let's do it this way. Looking at

17 Exhibit 31, what is Exhibit 31?

18 A It's an e-mail from Vitalli Yachmenev to Matt

19 Galioto.

20 Q And it's a forwarded e-mail from, between Mr. Kenner

21 and Mr. Yachmenev, correct?

22 A Yes.

23 Q And within that e-mail, what is represented?

24 A Phil Kenner's, the investments in Vitalli's

25 investments.

---

Wayne - Direct/Leonardo

69

1 Q Okay. Investments in Hawaii, Mexico, Eufora and

2 Global Settlement Fund?

3 A Right.

4 MS. LEONARDO: I offer Exhibit 31 in evidence.

5 THE COURT: You have the same objection as the

6 other e-mail?

7 MR. HALEY: I do, your Honor.

8 THE COURT: Okay.

9 MR. CONWAY: Same, your Honor.

10 THE COURT: I'll reserve on this e-mail too.

11 So the record is clear, this e-mail was provided

12 to you?

13 THE WITNESS: Provided to the Government.

14 THE COURT: Okay, but did you speak to

15 Mr. Yachmenev?

16 Did you speak to him?

17 THE WITNESS: I did not.

18 THE COURT: Okay. Keep going.

19 BY MS. LEONARDO:

20 Q Agent Wayne, were you able to trace through any bank

21 account records of any investments that Vitalli Yachmenev

22 had?

23 A Yes.

24 Q What did you do to trace that?

25 A We received Chase records which is the intermediary

---

Wayne - Direct/Leonardo

70

1  bank, showed money going to Robert Gaudet and Pacifico
2  Properties from Vitalli Yachmenev.  Pacifico Properties is
3  a Gaudet controlled property in Mexico.
4  Q    From Mr. Gaudet, right?
5  A    Yes.
6  Q    When you say received records from Chase as an
7  intermediary, what do you mean that Chase is an
8  intermediary?
9  A    I guess Chase is used as an intermediary to send
10  money overseas.
11  Q    Looking at Exhibit 28 and 29, are these the records
12  that the Government received from Chase?
13  A    Yes.
14        MS. LEONARDO:  Your Honor, I would offer
15  Exhibit 28 and 29.
16        THE COURT:  Any objection?
17        MR. HALEY:  Your Honor, I wouldn't have the
18  stenographer read back the question and answer, but are
19  these documents that you received from the bank or from
20  Mr. Gaudet?
21        THE WITNESS:  From the bank.
22        MR. HALEY:  Incidentally, how did you receive
23  those documents?  Pursuant to subpoena?
24        THE WITNESS:  I believe so.
25        THE COURT:  Is it a grand jury subpoena, if you

Wayne - Direct/Leonardo

71

1  know?
2        THE WITNESS:  No.
3        MR. HALEY:  May I have a moment, Judge?
4        THE COURT:  Yes.
5        MR. HALEY:  Your Honor, if I may?
6        THE COURT:  Yes.
7        MR. HALEY:  No objection, with a reservation
8  only in this respect, Judge, and I'll do it upon
9  cross-examination, but I would be making inquiry as to the
10  nature of the subpoena through which these documents were
11  obtained.
12        If they were obtained by way of a grand jury
13  subpoena issued subsequent to an indictment, I may have a
14  particular application to this Court as relates to the
15  admissibility of this, but I'm just reserving my objection
16  at this point in time.
17        MR. CONWAY:  Just my objection, your
18  Honor.
19        THE COURT:  Those two documents are admitted.
20        I would ask that you check between now and the
21  next hearing whether or not these would be obtained
22  pursuant to subpoena, grand jury subpoena, so the agent
23  will know that.
24        MS. LEONARDO:  I can do that, your Honor, and in
25  the alternative I can see if I can get a certification

Wayne - Direct/Leonardo

72

1  from Chase.
2        MR. HALEY:  That doesn't resolve the issue from
3  my perspective, Judge.
4        THE COURT:  You are not objecting to the
5  authenticity but he wants to made sure that a grand jury
6  subpoena wasn't used post-trial.
7        MR. HALEY:  Correct.  Thank you.
8        MS. LEONARDO:  I'll represent that that didn't
9  happen.
10        THE COURT:  We're trying to figure out when that
11  came in.
12        MS. LEONARDO:  Very well, your Honor.
13  Q    Agent Wayne, looking at Exhibit 28 and 29, can you
14  describe what those documents represent?
15  A    Represents money that went from Vitalli Yachmenev to
16  Robert Gaudet and Pacifico Properties.
17  Q    Agent, I apologize if we already did this.  According
18  to Mr. Gaudet's list, it shows about 6 million was the
19  total investment into Frailes, but your figure is 6.7.
20        Where did that additional money come from?
21  A    Some of the money never went down to -- went from
22  Phil Kenner's account and never went down to Gaudet.
23  Q    I believe you testified earlier that Mr. Privitello's
24  money went directly to Phil Kenner?
25  A    Right.

Wayne - Direct/Leonardo

73

1  Q    And which other investors?
2  A    Jonathan Smith also, and there is also another
3  $200,000, I believe, in addition to what was on the
4  Gaudet's list from Yachmenev, that went to Pacifico
5  Properties and Robert Gaudet.
6  Q    Okay.  Agent, I want to direct your attention to the
7  purchase for the property located at Diamonte Del Mar,
8  which is also known as the northern property.
9  A    Yes.
10  Q    Would you trace line of credit money that was meant
11  for Hawaii to Diamonte Del Mar?
12  A    Yes.
13  Q    And in doing that, did you review bank records that
14  are already in evidence?
15  A    Yes.
16  Q    And that would be line of credit transaction history?
17  A    Yes.
18  Q    And did you also prepare two charts with regard to --
19  a chart with regard to Diamonte Del Mar?
20  A    Yes.
21  Q    As related to the line of credit?
22  A    Yes.
23  Q    Looking at chart 24, is that the chart you prepared?
24  A    Yes.
25  Q    And again it is based on your review of records in

Wayne - Direct/Leonardo

74

1  evidence?

2  A    Right.

3        MS. LEONARDO:  Your Honor, I would offer chart

4  24.

5        THE COURT:  Any objection?

6        MR. HALEY:  No, your Honor.

7        MR. CONWAY:  No objection, your Honor.

8        THE COURT:  Chart 24 is admitted.

9        (Whereupon, Government Exhibit 24 was received

10  in evidence.)

11  BY MS. LEONARDO:

12  Q    Agent, looking at chart 24, can you just briefly

13  describe to the Court what is reflected on this?

14  A    Yes, line of credit money going to Little Isle and

15  Baja Development Corp., which is a Jowdy controlled

16  company, as well as the Diamonte Del Mar, again a Jowdy

17  controlled company for the Mexico project.

18  Q    Little Isle was meant for the purchase of real estate

19  in Hawaii?

20  A    Yes.

21  Q    And then did you learn through Baja Development what

22  it is controlled by?

23  A    Ken Jowdy.

24  Q    How do you know that?

25  A    I believe there was testimony at trial.

Wayne - Direct/Leonardo

75

1  Q    What was the total amount that you arrived at that

2  that was involved in the Diamante Del Mar?

3  A    9.1 million.

4  Q    What do you base that amount on?  In other words, in

5  addition to the line of credit money was there additional

6  money that was there?

7  A    Yes.  (Perusing).  You have to show me the documents,

8  but I believe it was a schedule from Ken Jowdy which says

9  the money came to Diamante Del Mar as well as bank records

10  from Ken Jowdy showing money coming in.

11  Q    Looking at Exhibit 36, the schedule.

12  A    No, that's not the schedule.  Schedule 48.

13  Forfeiture 48, I'm sorry.

14        THE COURT:  Where did you get this document

15  from?

16        THE WITNESS:  Ken Jowdy's attorney.

17        MR. HALEY:  Is that being offered, Judge?

18        MS. LEONARDO:  No, I'm just looking for a copy.

19        I'm sorry, Judge.

20  Q    Agent, looking at Exhibit 48, where did you get this

21  document?

22  A    From Ken Jowdy's attorney.

23  Q    Okay.  And were you able to verify some of the

24  investments in that document with other evidence that has

25  already been admitted?

Wayne - Direct/Leonardo

76

1  A    There was testimony at trial regarding investments in

2  Diamonte Del Mar.

3  Q    And specifically Maureen Peca, Berard and McKee all

4  testified at trial with regard to Del Mar?

5  A    Yes.

6  Q    And their investments?

7  A    Yes.

8  Q    And in taking their trial testimony, did you compare

9  it to the investment chart in Exhibit 48?

10  A    Yes.

11  Q    Okay.  And do those numbers match?

12  A    I have to look at the testimony, but they may say

13  they invested in Diamonte Del Mar.

14  Q    You included on the forfeiture chart 1, specific

15  amounts for each of those four individuals, correct?

16  A    Yes.

17  Q    That was based on your testimony?

18  A    That they invested in Del Mar.  Again I would have to

19  review to see how much they actually invested.

20  Q    I'm just trying to ask you.  You have it on your

21  chart.  Is that the Diamante investors?

22  A    Based on this document and the subsequent checks that

23  went to Diamonte Del Mar and the wire transfers.

24        MS. LEONARDO:  Your Honor, I offer Exhibit 48 in

25  evidence.

Wayne - Direct/Leonardo

77

1        MR. HALEY:  Objection.

2        MR. CONWAY:  I object as well, your Honor.

3        THE COURT:  I'll reserve on this one as well.

4  BY MS. LEONARDO:

5  Q    Looking at Exhibit 48, is that where you got the

6  total number of investors into Diamonte Del Mar and the

7  total amount you arrived at?

8        MR. HALEY:  We just interpose an objection.  The

9  Court reserved decision and counsel is continuing.  I

10  would be more than happy to state the specificity of my

11  objection on the record.

12        THE COURT:  I'll allow her to fully develop this

13  record with respect to the document, what is contained in

14  it.  In terms of whether or not I'll consider it, I'll

15  reserve, but I don't want to have the witness testify

16  later any more about the document.  I understand you are

17  objecting to any documents the third party is providing

18  the Government whether it is e-mails or other documents,

19  but I'll not preclude them from describing what the

20  document is.

21        In the event I do allow it in evidence they'll

22  be clear, and obviously you can cross-examine him on the

23  document that is coming in.

24        MR. HALEY:  Thank you, your Honor.

25        THE COURT:  Go ahead.

Wayne - Direct/Leonardo

78

1     MS. LEONARDO: Thank you, your Honor.

2  Q   Were you also able to identify money from Del Mar

3  going back to Mr. Kenner?

4  A   **I was able to identify money from Jowdy controlled**

5  **accounts going back to Kenner.**

6  Q   With regard to which Jowdy controlled account?

7  A   **Baja Development Corp.**

8  Q   And I think --

9     MS. LEONARDO: That's my mistake.

10 Q   That was from a Cabo investment or a Del Mar

11 investment?

12 A   **A Cabo investment.**

13    MS. LEONARDO: I'm sorry, that was my mistake.

14 Q   Were you also --

15    MS. LEONARDO: I'm sorry, withdrawn.

16    May I have one moment, your Honor?

17 BY MS. LEONARDO:

18 Q   Agent, do you know what the status of the Del Mar

19 property is today?

20 A   **It's not in the ownership of Ken Jowdy. I believe**

21 **the bank foreclosed on it.**

22 Q   Agent, I wanted to draw your attention to the

23 property located in Cabo that is known as Diamonte Cabo

24 San Lucas.

25    Were you able to trace line of credit money that

Wayne - Direct/Leonardo

79

1  went towards the down payment for Cabo?

2  A   **Yes.**

3  Q   And were you also able to trace Centrum money that

4  went to the down payment for Cabo?

5  A   **Yes.**

6  Q   Do you recall what Mr. Kenner's testimony was during

7  the criminal part of this trial with regards to his

8  interest in the Cabo property?

9  A   **Yes.**

10 Q   What was that?

11 A   **He was 39 percent Baja Ventures and 39 percent owner**

12 **of Cabo.**

13 Q   And just for our purposes we're shortening it to

14 Cabo, but it refers to Diamonte Cabo San Lucas LLC,

15 correct?

16 A   **Right.**

17 Q   And Mr. Kenner also testified at trial that between 1

18 and $1.5 million from the line of credit money went to

19 Cabo, right?

20 A   **Yes.**

21 Q   And he also testified, Mr. Kenner also testified at

22 trial, that Centrum loan money also went to Cabo; is that

23 right?

24 A   **Yes.**

25 Q   And introduced in evidence during the course of the

Wayne - Direct/Leonardo

80

1  criminal trial was the operating agreement for Baja

2  Ventures 2006; is that right?

3  A   **Yes.**

4  Q   And that was Exhibit 4502.

5     Specifically, can you tell us whose line of

6  credit money you traced to Cabo?

7  A   **Yes, Nolan line of credit on May 4, 2005, $400,000**

8  **went to Little Isle and another $350,000 from Little Isle**

9  **goes to the seller of the property of in Cabo San Lucas.**

10 Q   Agent, did you prepare a chart with regard to these

11 transfers?

12 A   **Yes.**

13 Q   Is that chart 26?

14 A   **Yes.**

15 Q   Which consists of how many pages?

16 A   **Seven.**

17 Q   And these are all related to the line of credit money

18 going to Cabo?

19 A   **No.**

20 Q   Which other investors are included in there?

21 A   **Glen Murray's money that went from Glen Murray to a**

22 **deal in the Palms and the deal fell apart, and it goes to**

23 **Baja Development which goes to Dr. P-i-e-d-a-d-e-s, to the**

24 **seller of the property.**

25 Q   Let me back you up a little bit.

Wayne - Direct/Leonardo

81

1     In preparing these charts did you rely on bank

2  records of Little Isle and Ula Makika?

3  A   **Yes.**

4  Q   In part did you rely on that?

5  A   **In part.**

6  Q   What else did you rely on?

7  A   **Records from Jowdy's attorney.**

8     MS. LEONARDO: I would offer chart 26 consisting

9  of seven pages in evidence.

10    MR. HALEY: I'm sorry. I didn't hear the latter

11 part of the witness's answer was, these are part of

12 documents that you received from Ken Jowdy's attorney?

13    THE COURT: Part of the chart.

14    THE WITNESS: The backup for the chart based on

15 records received, partly records received from Jowdy's

16 attorney.

17    THE COURT: What type of records? Bank records?

18    THE WITNESS: Some bank records, a schedule

19 prepared to show a down payment for the Cabo San Lucas

20 property.

21    THE COURT: Are those somewhere else in here?

22    THE WITNESS: They are in here.

23    MS. LEONARDO: Your Honor, I was intending to

24 offer them as an exhibit also. I can do that now.

25    THE COURT: Why don't we wait then on chart 26.

Wayne - Direct/Leonardo

82

1        Let's see what the backup is.

2    Q    Well, Agent, I'll ask you to look at Exhibit 36

3    through 39.  Can you describe for the Court what those

4    are?

5    A    **Contracts for the sale of property, bank records, a**

6    **schedule that was given to us by Jowdy's attorney which**

7    **details the deposit on the property.**

8    Q    Just for the record, Exhibit 36 is a schedule given

9    to you by Mr. Jowdy's attorney, correct?

10   A    **Given to the Government, yes.**

11   Q    And attached to that schedule are bank records; is

12   that right?

13   A    **Yes.**

14   Q    And Exhibit 37 are also bank records; is that right?

15   A    **Yes.**

16   Q    And 38 is also bank records?

17   A    **Yes.**

18   Q    And 39 are also wire transfers -- bank records and

19   wire transfers from Charles Schwab; is that right?

20   A    **Right.**

21   Q    In looking at these documents and in preparing a

22   chart, did you look at other bank records such as Ula

23   Makika or Little Isle with regard to these investments?

24   A    **Yes.**

25       MS. LEONARDO:  Your Honor, again I would offer

Wayne - Direct/Leonardo

83

1    the chart.

2        THE COURT:  Same objection.

3        MR. HALEY:  This objection is expanded in this

4    respect.  If I'm listening to the testimony correctly,

5    there's a great deal of documents that were provided by

6    Ken Jowdy's attorney to the Government.  Now, whether

7    those documents contained or consist of a chart that Ken

8    Jowdy's attorneys prepared for the Government or whether

9    it consists of documents purporting to be bank documents

10   or not provided to the Government by Ken Jowdy's attorney

11   that weren't obtained, let's say, by the subpoenas or

12   they're being a direct communication by a government

13   agent, a financial institution, I would object to the

14   receipt of that type of information before this Court in

15   connection with any hearing, certainly by way of a

16   forfeiture hearing, Judge.

17       What we're talking about, we're talking about

18   the Government concealing or at least allowing an attorney

19   who represents a party adverse to my client, I think that

20   became apparent during the course of this trial, providing

21   a select number of documents for the Government, the

22   Government taking those documents and then utilizing it

23   for the purpose of creating charts.

24       I would object to that being then introduced in

25   evidence.

Wayne - Direct/Leonardo

84

1        MR. CONWAY:  I would join in on that, your

2    Honor.

3        THE COURT:  I'll reserve on chart 26 and 36 to

4    39.

5    (Continued.)

Wayne - Direct/Leonardo

85

1        MS. LEONARDO:  Your Honor, also before we meet

2    again next time, in reverse discovery Mr. Constantine's

3    attorney received documents from Mr. Jowdy.  So I'm

4    verifying what was provided to them, I assume, in response

5    to a subpoena.

6        MR. HALEY:  And were they introduced in evidence

7    during the course of the trial, those documents that you

8    claim were received by reverse discovery -- I don't

9    believe they were.  That's really my objection.  The fact

10   you receive documents doesn't --

11       THE COURT:  I understand.

12       MR. HALEY:  Thank you.

13   BY MS. LEONARDO:

14   Q.   Agent Wayne, looking at the chart 2016 that describes

15   how you traced the line of money or sent the central money

16   to the Cabo board?

17   A.   **Owen Nolan money, line of credit money into Little**

18   **Isle, Glen Murray had put a deposit down on the Stewart**

19   **Title Palms and some of that money goes to Baja**

20   **Development and then Propiedades, P-R-O-P-I-E-D-A-D-E-S,**

21   **and off to the seller of the property, Centrum loan money**

22   **goes to Little Isle and then Propiedadies then to the**

23   **seller of the property.  Jozef Stumpel sends money to Ula**

24   **Makika, and that money is sent to the seller of the**

25   **property and down to Iowa, same goes to the seller of the**

Wayne - Direct/Leonardo

86

property.  And Jere Lehtinen and Jozef Stumpel sends money
to Propiedadies and then money goes out to the seller of
the property and back to Ula Makika.  Ethel Kaiser loan
money goes to Kau Holdings to Ula Makika and then to
Propiedadies, that was not part of deposit on this
property.

Q.   What do you mean that was not part of deposit?

A.   It just went to -- Kenneth Jowdy controlled both
accounts from Mexico.

And Jozef Stumpel's money goes to Propiedadies
and goes to the seller of the property, I believe it
should be 8,500 not 85,000.

Q.   And were you able to determine how much of the
Centrum loan money went to the purchase of Cabo?

A.   1.5 million.

Q.   And that was the Centrum loan that was to be used for
the Hawaii property; is that right?

A.   Yes.

Q.   Agent, did you also review bank records that showed
money coming back from the Cabo property to the benefit of
Ula Makika?

A.   Yes.

Q.   What records did you review for that?

A.   Bank records for Ula Makika, as well as records
provided by Ken Jowdy's attorney for the bank accounts.

Wayne - Direct/Leonardo

87

Q.   Did you also prepare a chart with regard to the flow
of money from Cabo back to this account?

A.   Yes.

Q.   Is that the chart 47?

A.   Yes.

Q.   46 and 47.

Looking sat exhibits 46 and 47, is that the bank
statement that you received from Mr.  Jowdy's attorney?

A.   Yes.

Q.   And 47 is actually Mr. Kenner's Ula Makika account?

A.   Yes.

Q.   Actually one page, a couple of pages of statements
from Mr. Kenner's Ula Makika account?

A.   Yes.

MS. LEONARDO:  Your Honor, I offer charts 26 and
27 into evidence.

MR. HALEY:  Your Honor, I'm going object to any
document that the government seeks to introduce in this
hearing that was supplied by an attorney for a person that
we maintain is adverse to my client.  No matter how those
documents are characterized.

MR. CONWAY:  Judge, I have no objections to
Government Exhibit 47, but I do object to Government
Exhibit 46.

THE COURT:  Chart 27, was based on that?

Wayne - Direct/Leonardo

88

MR. CONWAY:  Yes.  And I object to the chart
number 27 based on that.  It relies in part on Government
Exhibit 46.

THE COURT:  You don't object -- you object to
47, the Northern Trust Bank records, which one did you
say?  You said Jowdy attorney provided you with 46.

THE WITNESS:  46, 47 was the bank record,
probably already in evidence at that time.

THE COURT:  I'll reserve on that as well.  Keep
going.

Q.   Agent Wayne, can you just on chart 27, start with the
money coming out of Cabo in fact to Mr. Kenner?

A.   Yes, there's money for investment in Cabo Baja
Development which was controlled by Jowdy and then goes
Ula Makika and some cases goes to Constantine Management
Group.  Those are the charts 27, you want me to go through
each one in detail?

Q.   According to your charts, it's the account, the money
goes to Baja Development, which Mr. Kenner testified Ken
Jowdy controlled the company for it?

A.   Yes.

Q.   Ula Makika, which is a Kenner controlled account,
correct?

A.   Yes.

Q.   And also goes to CMG Management, correct?

Wayne - Direct/Leonardo

89

A.   Yes.

Q.   And your understanding is Mr. Constantine is the
holder of the CMG Management Company, correct?

A.   Yes.

Q.   What was the approximate amount of the money that
went back from Baja to Mr. Kenner or Mr. Constantine?

A.   About 330 approximately.

MS. LEONARDO:  Your Honor, may describes have a
moment, please?

THE COURT:  Yes.

MS. LEONARDO:  Your Honor, would it be possible
for us to continue with Agent Wayne?  I'm almost done.  I
believe there's just a few documents that I would like to
introduce.  If we can do that on -- I think we picked the
ninth.

THE COURT:  Do you have a lot of witnesses
besides him?

MS. LEONARDO:  No, your Honor.

THE COURT:  And you picked the ninth, March 9th?

MR. CONWAY:  Yes.

THE COURT:  At what time?

MR. CONWAY:  10 o'clock, I believe, your Honor.

THE COURT:  Okay.  I do want the government to
brief 3 issues for me before that next hearing, just in a
letter.  One is this issue of Bill of Particulars, whether

Wayne - Direct/Leonardo

90

1 or not the government articulates in the Bill of
2 Particulars what they intend to prove whether or not they
3 were bound by that Bill of Particulars.  I know the
4 indictment said including but not limited to, but my
5 question is once the government responds to inquiries from
6 the defense, submits a Bill of Particulars to them, are
7 they then bound to that Bill of Particulars or can they
8 still add to that.
9         The second one relates to the issue of whether
10 or not there was -- obviously you're aware of this, you
11 are proving up as both defense counsel noted frauds that
12 were not proven at trial.  As a matter of fact there are
13 certain ones that I specifically remember Mr. Miskiewicz
14 saying we're not proving this, we're not contending this
15 is fraud, we're not proving this up.  I want case law that
16 says even when the government does not prove a particular
17 fraud at trial, such as the Palms is a classic example, I
18 can go back and check the transcript, but I think there
19 was a specific representation made that the government is
20 not attempting to go prove that the money put into the
21 Palms units, even though there was some testimony by
22 hockey players that that was fraudulent.  And in fact, I
23 think, as counsel noted, there was some controversy, an
24 objection was made, there was a sidebar, I said the
25 government is not claiming this is fraud, why are you

91

1 doing this.  We're not doing this, I told him.
2         Then the forfeiture phase the government
3 included, assert that those are frauds that should be
4 included for purposes of the forfeiture.
5         And then the third issue is the ongoing
6 evidentiary objection regarding the third parties who
7 supply -- I know obviously the rules of hearsay are
8 relaxed at a forfeiture hearing, but I would like to think
9 that to the extent that, for example, victims could -- you
10 can interview a victim, you can get e-mails, bank records
11 and charts, that the government then submits without that
12 person testifying at the forfeiture hearing.  Okay.  It
13 doesn't have to be long.  I just want cases that address
14 those issues, okay.
15         MS. LEONARDO:  Okay.
16         THE COURT:  Obviously I'm allowing the evidence
17 and testimony to come in.  But obviously those are the
18 three objections I heard at the start and are sort of
19 ongoing.  We don't have a lot of forfeiture hearings as
20 you know, so I can't claim that I looked at those in the
21 context of forfeiture.
22         MS. LEONARDO:  Can we submit those by the 20th
23 of February?
24         THE COURT:  Yes.  Obviously this is on for March
25 9th, so if you can submit by February 26?  Is that what

92

1 you said?
2         MS. LEONARDO:  I think that should be fine,
3 your Honor.
4         THE COURT:  Okay.  I'll give defense counsel to
5 March 7th if you want to put a letter in response.  You
6 can also address this on March 9th if want.  Okay.
7         MR. HALEY:  Your Honor, if I may, will the court
8 approve today, I'll put a CJA form in, the ordering of
9 this transcript, I think it would be assistance of this
10 court and certainly would be of assistance to the defense
11 and, who knows, maybe an assistance to the Second Circuit
12 at some point.
13         THE COURT:  Yes.  I'll approve that.
14         MR. HALEY:  Thank you.
15         THE COURT:  All right.  Have a good weekend.
16         MS. LEONARDO:  Thank you, your Honor.
17         MR. HALEY:  Thank you, your Honor.
18         (Whereupon, court recessed for the day until
19 March 9th at 10:00 a.m.)

93

1         INDEX:
2 JOSHUA WAYNE                                        16
3 DIRECT EXAMINATION                                  16
4 BY MS. LEONARDO
5 VOIR DIRE EXAMINATION                               20
6 BY MR. HALEY
7 DIRECT EXAMINATION (Continued.)                     24
8 BY MS. LEONARDO
9
10         EXHIBITS:
11 Government's Exhibit 1 in evidence                  23
12 Government's Exhibit 2 in evidence                  25
13 Government Exhibits 3, 4 and 5 in evidence          31
14
15
16 Government Exhibit 6 and 11 in evidence             48
17 Government Exhibit 15 in evidence                   56
18 Government Exhibit 23 in evidence                   58
19 Government Exhibit 18 in evidence                   61
20 Government Exhibit 20 in evidence                   62
21 Government Exhibit 21 and 22 in evidence            63
22 Government Exhibit 23 through 27 in evidence        65
23 Government Exhibit 24 in evidence                   74
24
25

## $

**$200,000** [2] - 53:14, 73:3
**$275,000** [2] - 43:23, 43:25
**$290,000** [3] - 45:14, 45:16, 50:19
**$325,000** [1] - 44:7
**$350,000** [1] - 80:8
**$400,000** [1] - 80:7
**$548,000** [1] - 43:19
**$615,000** [1] - 42:5
**$650,000** [1] - 53:24
**$700,000** [1] - 54:2

## 1

**1** [7] - 19:23, 23:24, 44:15, 59:3, 76:14, 79:17, 93:11
**1.2** [3] - 43:22, 44:1, 44:8
**1.225** [1] - 34:10
**1.325** [2] - 35:10, 39:22
**1.5** [5] - 50:16, 50:20, 51:5, 79:18, 86:15
**10** [13] - 5:1, 13:25, 14:22, 15:4, 33:3, 41:11, 41:19, 41:25, 42:1, 42:6, 42:12, 89:22
**100** [2] - 1:15, 1:24
**100,000** [2] - 43:18, 53:20
**1075** [1] - 5:3
**10:00** [1] - 92:19
**11** [7] - 47:14, 47:24, 48:3, 48:6, 48:11, 48:12, 93:16
**11572** [1] - 1:23
**11722** [2] - 1:15, 1:25
**11749** [1] - 1:20
**12** [1] - 1:10
**12.2** [1] - 27:10
**13** [2] - 3:19, 43:19
**13-CR-607** [2] - 1:4, 2:5
**14** [1] - 45:7
**1451** [2] - 40:2, 40:6
**15** [6] - 34:3, 55:17, 56:1, 56:5, 56:6, 93:17
**16** [16] - 3:15, 3:17, 3:22, 3:25, 4:6, 4:8, 7:9, 7:21, 7:23, 9:16, 9:17, 12:16, 30:7, 30:14, 93:2, 93:3
**1601** [1] - 1:19

**17** [1] - 6:23
**1705** [1] - 35:6
**1708** [1] - 35:6
**18** [10] - 13:13, 13:15, 14:25, 15:6, 59:13, 59:22, 60:23, 60:25, 61:2, 93:19
**19** [4] - 59:13, 59:23, 60:22, 61:1
**1976** [1] - 5:1
**1:30** [1] - 1:10

## 2

**2** [7] - 24:19, 24:22, 25:12, 25:19, 25:20, 27:6, 93:12
**2.2** [1] - 44:14
**2.4** [1] - 26:23
**2.5** [1] - 53:23
**2.8** [1] - 44:13
**20** [7] - 9:2, 61:6, 61:20, 62:2, 62:3, 93:5, 93:20
**200** [1] - 11:4
**2005** [6] - 28:12, 43:19, 44:5, 53:15, 80:7
**2006** [3] - 6:13, 6:20, 80:2
**2008** [1] - 44:11
**2009** [3] - 44:12, 44:15, 45:7
**2013** [2] - 3:9
**2014** [2] - 3:12, 3:17
**2015** [4] - 5:10, 9:2, 11:5, 30:14
**2016** [3] - 1:10, 7:1, 85:14
**20th** [3] - 6:8, 6:24, 91:22
**21** [8] - 7:1, 53:14, 62:17, 63:13, 63:14, 63:22, 63:23, 93:21
**2138** [1] - 26:11
**22** [9] - 5:10, 52:3, 52:10, 53:12, 63:2, 63:11, 63:22, 63:23, 93:21
**23** [14] - 57:11, 57:20, 57:25, 58:2, 58:4, 64:3, 64:5, 64:11, 65:8, 65:23, 65:24, 93:11, 93:18, 93:22
**24** [10] - 64:3, 64:21, 64:22, 73:23, 74:4, 74:8, 74:9, 74:12, 93:7, 93:23
**25** [6] - 3:17, 44:10, 53:15, 64:3, 64:21,

93:12
**26** [8] - 64:4, 65:3, 80:13, 81:8, 81:25, 84:3, 87:15, 91:25
**27** [12] - 64:4, 64:5, 65:5, 65:8, 65:23, 65:24, 87:16, 87:25, 88:2, 88:11, 88:16, 93:22
**28** [4] - 68:4, 70:11, 70:15, 72:13
**29** [4] - 3:9, 70:11, 70:15, 72:13
**290** [1] - 50:25
**290,000** [1] - 50:22
**2nd** [1] - 35:13

## 3

**3** [8] - 3:12, 28:25, 29:1, 30:3, 31:22, 31:23, 89:24, 93:13
**3.3** [1] - 40:24
**3/17** [1] - 44:12
**30** [1] - 6:23
**300** [1] - 1:22
**3004** [2] - 40:2, 40:6
**31** [4] - 68:17, 69:4, 93:13
**325,000** [1] - 44:4
**3255** [2] - 40:2, 40:6
**330** [1] - 89:7
**3500** [2] - 9:18, 65:19
**3507** [2] - 40:2, 40:6
**36** [4] - 75:11, 82:2, 82:8, 84:3
**37** [1] - 82:14
**38** [1] - 82:16
**3823** [1] - 47:19
**39** [5] - 79:11, 82:3, 82:18, 84:4

## 4

**4** [10] - 28:25, 29:7, 29:21, 30:3, 30:5, 31:1, 31:22, 31:23, 80:7, 93:13
**425** [1] - 1:19
**4408** [1] - 54:21
**4502** [1] - 80:4
**46** [6] - 87:6, 87:7, 87:24, 88:3, 88:6, 88:7
**469** [1] - 4:24
**47** [7] - 87:4, 87:6, 87:7, 87:10, 87:23, 88:5, 88:7
**48** [7] - 75:12, 75:13, 75:20, 76:9, 76:24,

93:12
**77**:5, 93:16
**49** [2] - 66:6, 66:19
**4:30** [1] - 55:10

## 5

**5** [5] - 28:25, 30:3, 31:22, 31:23, 93:13
**55304** [1] - 43:16
**56** [1] - 93:17
**58** [1] - 93:18

## 6

**6** [9] - 45:22, 48:1, 48:2, 48:3, 48:11, 48:12, 67:25, 72:18, 93:16
**6.7** [1] - 59:5, 67:24, 72:19
**61** [1] - 93:19
**62** [1] - 93:20
**63** [1] - 93:21
**631** [1] - 1:25
**65** [1] - 93:22

## 7

**7** [1] - 44:4
**712-6103** [1] - 1:25
**74** [1] - 93:23
**761** [3] - 32:5, 32:16, 32:22
**7th** [1] - 92:5

## 8

**8** [2] - 47:21, 47:24
**8,500** [1] - 86:12
**8/24/2005** [1] - 43:21
**80** [1] - 41:7
**85,000** [1] - 86:12

## 9

**9.1** [1] - 75:3
**9.8** [1] - 26:1
**95-4928** [1] - 4:22
**981(a)(1)(C** [1] - 14:25
**981(a)(1)(C)** [1] - 13:14
**982(a)(1** [2] - 13:15, 15:6
**9th** [4] - 89:19, 91:25, 92:6, 92:19

## A

**A-P-O** [1] - 28:17
**a.m** [2] - 1:10, 92:19

**a/k/a** [2] - 1:7, 1:9
**able** [12] - 27:23, 28:14, 41:10, 46:2, 57:3, 69:20, 75:23, 78:2, 78:4, 78:25, 79:3, 86:13
**according** [2] - 72:17, 88:18
**account** [25] - 16:25, 18:13, 18:16, 18:18, 25:8, 26:8, 39:22, 39:24, 41:1, 41:9, 51:2, 53:18, 62:20, 63:7, 64:15, 64:16, 64:17, 69:21, 72:22, 78:6, 87:2, 87:10, 87:13, 88:18, 88:22
**accounts** [9] - 11:9, 18:15, 18:20, 18:21, 25:10, 35:3, 78:5, 86:9, 86:25
**accrued** [1] - 8:1
**acre** [1] - 33:3
**acts** [1] - 16:23
**add** [1] - 90:8
**adding** [1] - 8:10
**addition** [11] - 3:17, 11:4, 16:19, 16:23, 17:24, 18:23, 34:15, 39:21, 43:3, 73:3, 75:5
**additional** [12] - 6:18, 7:2, 8:10, 11:7, 12:5, 12:14, 12:16, 14:9, 14:12, 23:4, 72:20, 75:5
**address** [2] - 91:13, 92:6
**addressed** [2] - 21:5, 33:7
**addresses** [1] - 48:21
**adhered** [2] - 7:15, 7:19
**admissibility** [3] - 60:1, 66:25, 71:15
**admissible** [3] - 14:6, 23:15, 39:15
**admission** [2] - 22:25, 23:23
**admit** [3] - 36:1, 53:2, 53:9
**admitted** [16] - 23:23, 25:19, 31:22, 32:10, 32:14, 32:15, 48:11, 56:5, 57:25, 60:25, 62:2, 63:22, 65:23, 71:19, 74:8, 75:25
**admittedly** [1] - 6:13
**advance** [5] - 4:9, 4:10, 5:4, 7:8, 7:22

**adverse** [2] - 83:19, 87:20
**Aerospace** [2] - 41:25, 42:8
**afternoon** [9] - 2:11, 2:12, 2:15, 2:17, 13:6, 16:12, 16:13, 20:21, 20:22
**agent** [24] - 15:21, 19:22, 20:23, 24:19, 30:25, 32:10, 39:2, 43:9, 46:15, 50:4, 56:21, 63:2, 67:8, 71:22, 72:17, 73:6, 74:12, 75:20, 78:18, 78:22, 80:10, 83:13, 86:19, 88:11
**Agent** [31] - 14:11, 16:12, 16:14, 20:21, 24:3, 24:22, 25:21, 29:1, 31:24, 34:7, 39:17, 39:19, 39:21, 40:15, 45:8, 47:14, 48:14, 50:14, 53:11, 55:7, 55:15, 56:8, 58:4, 61:5, 67:23, 68:16, 69:20, 72:13, 82:2, 85:14, 89:12
**agent's** [1] - 60:14
**agents** [1] - 39:5
**ago** [2] - 11:6, 20:23
**agreeable** [1] - 12:24
**agreed** [1] - 47:4
**agreement** [8] - 24:17, 24:24, 25:4, 27:5, 37:4, 43:22, 47:16, 80:1
**ahead** [4] - 18:6, 32:18, 55:14, 77:25
**Aid** [1] - 3:11
**airplane** [8] - 5:1, 14:1, 14:22, 15:4, 41:11, 42:6, 42:16, 43:4
**allegation** [2] - 5:11, 10:6
**allegations** [1] - 4:22
**alleged** [6] - 35:20, 35:24, 35:25, 49:6, 49:7, 53:5
**allow** [9] - 11:21, 11:24, 37:24, 39:17, 39:18, 50:3, 50:4, 77:12, 77:21
**allowing** [2] - 83:18, 91:16
**almost** [1] - 89:12
**alternative** [1] - 71:25
**amended** [1] - 6:9
**AMERICA** [1] - 1:3

**amount** [18] - 16:20, 19:11, 25:24, 26:2, 34:8, 34:11, 34:12, 40:21, 40:25, 48:14, 48:22, 48:23, 50:14, 59:4, 75:1, 75:4, 77:7, 89:5
**amounts** [4] - 27:8, 50:5, 67:12, 76:15
**analysis** [2] - 18:9, 67:2
**Andretti** [1] - 44:3
**Andretti's** [1] - 44:9
**ANDREW** [1] - 1:22
**Andrew** [1] - 2:16
**answer** [6] - 22:24, 32:18, 45:3, 66:21, 70:18, 81:11
**answers** [2] - 17:15, 35:16
**anticipate** [1] - 40:7
**anyway** [1] - 38:10
**apart** [1] - 80:22
**apologize** [3] - 41:22, 44:19, 72:17
**apparent** [1] - 83:20
**APPEARANCES** [1] - 1:13
**appearances** [1] - 2:6
**application** [2] - 2:22, 71:14
**applies** [1] - 13:19
**apply** [2] - 14:6, 31:9
**appointed** [1] - 3:11
**appointment** [3] - 2:13, 3:13, 3:15
**appraised** [1] - 44:12
**appropriate** [1] - 49:14
**approve** [2] - 92:8, 92:13
**approximate** [2] - 16:20, 89:5
**approximated** [1] - 26:23
**April** [2] - 3:12, 5:10
**argue** [1] - 67:4
**argument** [4] - 5:7, 10:17, 12:2, 12:3
**arrive** [1] - 59:6
**arrived** [3] - 56:12, 75:1, 77:7
**articulates** [1] - 90:1
**aspect** [2] - 6:19, 11:2
**assert** [1] - 91:3
**assets** [5] - 13:24, 16:16, 16:24, 17:2, 38:1
**assigned** [1] - 44:11
**assignment** [1] -

44:23
**assistance** [3] - 92:9, 92:10, 92:11
**Assistant** [1] - 1:18
**associated** [1] - 35:23
**assume** [2] - 29:18, 85:4
**assumed** [1] - 10:18
**AT** [1] - 41:19
**attached** [1] - 82:11
**attempting** [1] - 90:20
**attention** [7] - 3:3, 27:18, 47:13, 55:7, 56:21, 73:6, 78:22
**Attorney** [1] - 1:14, 31:18
**attorney** [17] - 29:6, 47:23, 75:16, 75:22, 81:7, 81:12, 81:16, 82:6, 82:9, 83:6, 83:10, 83:18, 85:3, 86:25, 87:8, 87:19, 88:6
**Attorneys** [1] - 1:18
**attorneys** [2] - 29:6, 83:8
**attribute** [1] - 37:3
**Auerbach** [1] - 1:24
**August** [3] - 6:8, 6:24, 9:2
**authenticated** [1] - 59:25
**authentication** [1] - 60:5
**authenticity** [1] - 72:5
**authorized** [1] - 29:11
**available** [1] - 5:16
**Avalon** [1] - 43:23
**Aviation** [1] - 42:1
**awaits** [1] - 31:13
**aware** [10] - 8:19, 10:1, 11:12, 14:3, 28:6, 28:8, 30:22, 58:13, 61:22, 90:10
**AZ** [1] - 42:20

## B

**B-H-A--E-U-I** [1] - 29:4
**backed** [2] - 31:8, 31:9
**background** [1] - 17:18
**backing** [1] - 45:8
**backup** [3] - 23:11, 23:16, 81:14, 82:1
**Baja** [12] - 5:13, 6:12, 9:22, 74:15, 74:21, 79:11, 80:1, 80:23, 85:19, 88:13, 88:19, 89:6

**baja** [1] - 78:7
**bank** [53] - 11:8, 18:15, 18:16, 18:18, 19:17, 24:15, 25:8, 25:10, 27:25, 28:11, 35:3, 45:18, 46:2, 51:24, 51:25, 52:1, 52:6, 52:8, 57:14, 57:16, 57:18, 61:21, 62:20, 63:16, 64:1, 64:9, 66:12, 67:2, 67:11, 69:20, 70:1, 70:19, 70:21, 73:13, 75:9, 78:21, 81:1, 81:17, 81:18, 82:5, 82:11, 82:14, 82:16, 82:18, 82:22, 83:9, 86:19, 86:24, 86:25, 87:7, 88:7, 91:10
**Bank** [2] - 18:13, 88:5
**bankruptcy** [1] - 42:24
**base** [2] - 51:23, 75:4
**based** [22] - 6:5, 14:5, 20:25, 22:13, 28:18, 31:24, 34:7, 36:5, 42:3, 44:19, 44:20, 50:8, 60:13, 64:18, 67:1, 68:3, 73:25, 76:17, 76:22, 81:14, 87:25, 88:2
**basis** [2] - 23:22, 31:16, 36:9, 36:24, 60:4, 67:6
**batch** [1] - 63:25
**became** [1] - 83:20
**BEFORE** [1] - 1:12
**begin** [1] - 2:24
**behind** [1] - 23:11
**Belt** [1] - 4:23
**benefit** [4] - 33:15, 33:24, 35:1, 86:20
**Berard** [6] - 59:11, 61:11, 61:13, 66:3, 66:23, 76:3
**Berard's** [1] - 61:9
**best** [1] - 30:10
**better** [2] - 26:17, 41:14
**Better** [2] - 21:15, 36:4
**between** [10] - 29:3, 45:24, 47:21, 49:1, 55:23, 66:23, 67:3, 68:20, 71:20, 79:17
**beyond** [1] - 36:8
**Bhaeui** [1] - 29:3
**BIANCO** [1] - 1:12
**Bill** [23] - 4:17, 5:5, 5:7, 5:9, 5:11, 6:5, 6:9, 6:10, 6:11, 6:15, 6:24, 8:6, 8:10, 9:2,

9:22, 10:18, 11:14, 89:25, 90:1, 90:3, 90:6, 90:7
**bills** [1] - 68:10
**binding** [1] - 11:15
**bit** [3] - 45:8, 49:23, 80:25
**blind** [1] - 17:10
**block** [1] - 6:23
**board** [1] - 85:16
**body** [7] - 4:7, 5:15, 5:19, 6:4, 8:5, 8:17, 9:8
**bolster** [1] - 67:5
**book** [1] - 52:13
**bound** [3] - 5:7, 90:3, 90:7
**Bradley** [1] - 44:9
**break** [1] - 55:9
**Brian** [6] - 59:11, 61:9, 61:11, 61:13, 66:3, 66:23
**brief** [4] - 13:2, 40:8, 45:3, 89:24
**briefly** [6] - 14:11, 33:11, 40:15, 50:17, 58:4, 74:12
**bring** [2] - 3:3, 52:21
**broad** [1] - 13:19
**broken** [1] - 33:17
**broker** [1] - 58:19
**bunch** [1] - 62:6
**burden** [1] - 14:4
**business** [5] - 17:11, 46:13, 49:20, 49:21, 58:18
**buy** [1] - 44:17
**BY** [21] - 1:16, 1:19, 1:21, 16:11, 20:20, 24:2, 39:1, 39:20, 40:14, 61:4, 66:1, 67:22, 68:15, 69:19, 74:11, 77:4, 78:17, 85:13, 93:4, 93:6, 93:8

## C

**Cabin** [2] - 41:18, 42:13
**Cabo** [29] - 6:21, 13:25, 14:23, 15:8, 17:4, 49:21, 57:1, 78:10, 78:12, 78:23, 79:1, 79:4, 79:8, 79:12, 79:14, 79:19, 79:22, 80:6, 80:9, 80:18, 81:19, 85:16, 86:14, 86:20, 87:2, 88:12, 88:13

**Cactus** [1] - 5:3
**calculation** [1] - 48:22
**case** [13] - 2:5, 3:25, 4:1, 4:3, 5:22, 6:7, 6:19, 7:12, 10:23, 11:2, 34:23, 68:11, 90:15
**cases** [2] - 88:15, 91:13
**category** [1] - 2:25
**caveat** [1] - 11:17
**CD** [2] - 7:1, 10:24
**central** [1] - 85:15
**Central** [3] - 1:6, 1:15, 1:25
**Centrum** [11] - 43:12, 46:4, 46:8, 46:9, 46:19, 53:23, 79:3, 79:22, 85:21, 86:14, 86:16
**certain** [2] - 38:6, 90:13
**certainly** [3] - 9:25, 83:15, 92:10
**certification** [1] - 71:25
**chance** [2] - 12:1, 12:22
**characterize** [1] - 35:14
**characterized** [2] - 36:11, 87:21
**charge** [2] - 5:23, 49:8
**charges** [1] - 37:14
**Charles** [6] - 61:9, 61:18, 62:6, 63:7, 63:10, 82:19
**chart** [64] - 19:25, 20:24, 22:7, 22:13, 22:20, 22:25, 23:1, 23:11, 23:12, 23:15, 23:17, 24:3, 26:15, 33:17, 33:25, 34:3, 34:23, 42:3, 43:14, 51:21, 51:23, 52:3, 52:4, 52:6, 52:8, 52:10, 52:15, 53:11, 57:9, 57:11, 57:13, 57:20, 57:25, 58:1, 58:4, 58:16, 59:3, 67:24, 73:19, 73:23, 74:3, 74:8, 74:12, 76:9, 76:14, 76:21, 80:10, 80:13, 81:8, 81:13, 81:14, 81:25, 82:22, 83:1, 83:7, 84:3, 85:14, 87:1, 87:4, 87:25, 88:1, 88:11
**charts** [11] - 9:5, 11:8,

46:16, 66:24, 73:18, 81:1, 83:23, 87:15, 88:16, 88:18, 91:11
**Chase** [6] - 69:25, 70:6, 70:7, 70:9, 70:12, 72:1
**Chavis** [1] - 3:10
**check** [7] - 31:7, 31:12, 53:20, 54:3, 64:22, 71:20, 90:18
**checks** [2] - 53:25, 76:22
**Circuit** [2] - 35:13, 92:11
**civil** [2] - 7:12, 7:16
**Civil** [1] - 7:17
**CJA** [2] - 2:13, 92:8
**claim** [2] - 85:8, 91:20
**claimed** [1] - 42:23
**claiming** [1] - 90:25
**claims** [1] - 48:25
**classic** [1] - 90:17
**clear** [4] - 10:21, 28:23, 69:11, 77:22
**clearly** [1] - 11:8
**CLERK** [2] - 2:5, 16:5
**client** [4] - 8:15, 11:17, 83:19, 87:20
**client's** [1] - 5:13
**closely** [1] - 12:1
**CMG** [22] - 33:22, 34:12, 34:13, 35:1, 35:2, 35:3, 39:21, 43:20, 43:24, 43:25, 44:4, 44:7, 46:5, 47:16, 51:1, 51:9, 52:2, 53:19, 53:25, 54:3, 88:25, 89:3
**column** [2] - 24:4, 26:22
**combination** [1] - 36:4
**coming** [6] - 11:12, 44:21, 75:10, 77:23, 86:20, 88:12
**commenced** [3] - 3:14, 4:4, 5:19
**commencement** [4] - 3:2, 6:16, 7:10, 8:12
**comment** [1] - 8:25
**comments** [1] - 9:22
**commit** [3] - 13:8, 13:20, 15:2
**communication** [1] - 83:12
**company** [5] - 14:18, 43:21, 74:16, 74:17, 88:20
**Company** [1] - 89:3
**compare** [2] - 54:19, 76:8

**complete** [1] - 3:24
**completed** [1] - 7:23
**complex** [2] - 4:2, 4:3
**complicated** [2] - 3:25, 4:1
**computer** [1] - 2:2
**concealing** [1] - 83:18
**conceded** [2] - 20:6, 20:7
**concedes** [1] - 36:12
**concerning** [1] - 21:22
**conclusion** [2] - 37:9, 37:21
**condo** [1] - 54:4
**condominium** [2] - 14:20, 17:3
**condominiums** [1] - 43:7
**conduct** [3] - 20:16, 40:16, 45:2
**confer** [1] - 30:19
**confirm** [3] - 59:17, 62:22, 66:15
**confirmatory** [1] - 60:12
**confirmed** [1] - 67:10
**connection** [5] - 5:17, 45:3, 48:22, 49:1, 83:15
**Connor** [1] - 44:25
**consented** [1] - 8:15
**consider** [2] - 3:6, 77:14
**considered** [5] - 8:20, 8:23, 25:7, 27:4
**consist** [1] - 83:7
**consisted** [2] - 4:8, 20:11
**consisting** [1] - 81:8
**consists** [2] - 80:15, 83:9
**conspiracies** [1] - 14:14
**conspiracy** [7] - 13:8, 13:9, 13:18, 15:2, 23:8, 49:16, 49:18
**Constantine** [11] - 1:21, 2:6, 2:17, 33:15, 42:23, 43:23, 43:24, 45:16, 88:15, 89:2, 89:6
**CONSTANTINE** [1] - 1:8
**Constantine's** [3] - 43:21, 47:16, 85:2
**construed** [1] - 35:12
**Cont'd** [1] - 39:1
**contained** [6] - 5:8, 12:19, 22:19, 66:24, 77:13, 83:7

**contending** [1] - 90:14
**content** [1] - 32:11
**context** [1] - 91:21
**continual** [2] - 3:4, 3:21
**continue** [4] - 12:24, 53:21, 64:13, 89:12
**continued** [1] - 38:11
**Continued** [3] - 24:1, 84:5, 93:7
**continuing** [4] - 9:3, 62:11, 63:20, 77:9
**contracts** [1] - 82:5
**contributors** [1] - 40:18
**control** [1] - 28:19
**controlled** [13] - 18:21, 51:2, 53:17, 70:3, 74:15, 74:17, 74:22, 78:4, 78:6, 86:8, 88:14, 88:20, 88:22
**controversy** [1] - 90:23
**conversations** [6] - 39:2, 44:22, 44:24, 58:21, 65:15, 65:18
**convicted** [3] - 13:7, 37:15, 49:18
**conviction** [12] - 4:20, 5:2, 5:12, 6:12, 8:22, 13:13, 16:17, 16:21, 23:8, 49:2, 49:4, 53:4
**convictions** [1] - 13:11
**CONWAY** [27] - 1:21, 2:15, 11:16, 15:17, 20:7, 25:18, 31:21, 37:1, 48:9, 52:18, 56:4, 57:24, 60:15, 60:24, 62:1, 63:21, 65:22, 67:7, 69:9, 71:17, 74:7, 77:2, 84:1, 87:22, 88:1, 89:20, 89:22
**Conway** [2] - 2:16, 31:20
**copies** [2] - 28:25, 34:5
**copy** [7] - 19:18, 24:21, 29:5, 32:17, 41:21, 41:23, 75:18
**corners** [1] - 21:25
**Corp** [2] - 74:15, 78:7
**corporation** [1] - 33:5
**correctly** [1] - 83:4
**correspond** [1] - 66:12
**corroborate** [1] -

66:24
**counsel** [13] - 2:6, 15:13, 20:5, 23:5, 24:21, 28:25, 30:20, 34:6, 64:1, 77:9, 90:11, 90:23, 92:4
**counsel)** [1] - 64:4
**Count** [1] - 10:6
**count** [5] - 4:12, 8:4, 10:7, 26:19, 53:4
**Country** [1] - 1:22
**couple** [1] - 87:12
**course** [16] - 5:21, 7:21, 9:7, 14:10, 21:3, 21:10, 21:20, 25:15, 31:1, 35:18, 36:14, 46:15, 47:1, 79:25, 83:20, 85:7
**Courthouse** [1] - 1:6
**Cow** [1] - 54:2
**Crafters** [2] - 41:18, 42:14
**created** [1] - 41:5
**creating** [1] - 83:23
**credit** [38] - 16:24, 17:24, 18:13, 24:11, 25:21, 25:24, 26:8, 26:14, 26:16, 26:19, 27:12, 27:25, 28:1, 28:2, 28:6, 43:11, 44:6, 51:19, 53:13, 53:16, 55:3, 57:3, 57:7, 58:6, 58:10, 58:13, 58:14, 73:10, 73:16, 73:21, 74:14, 75:5, 78:25, 79:18, 80:6, 80:7, 80:17, 85:17
**credits** [1] - 17:9
**crimes** [2] - 16:17, 16:21
**criminal** [11] - 4:19, 4:21, 8:22, 10:6, 32:16, 32:21, 42:4, 47:2, 58:9, 79:7, 80:1
**cross** [5] - 5:20, 45:4, 60:19, 71:9, 77:22
**cross-examination** [2] - 60:19, 71:9
**cross-examine** [1] - 77:22
**cross-examined** [1] - 5:20
**CSL** [1] - 6:20

**D**

**Darryl** [1] - 44:6
**date** [2] - 12:24, 28:9

**deadlines** [1] - 7:18
**deal** [5] - 56:11, 58:19, 80:22, 83:5
**dealing** [1] - 49:1
**December** [2] - 7:1, 30:13
**decide** [5] - 5:25, 6:2, 8:9, 12:4
**decision** [4] - 8:2, 8:4, 8:8, 8:14, 8:17, 11:11, 12:3, 77:9
**decisions** [1] - 5:16
**defendant** [7] - 2:13, 4:11, 5:25, 8:1, 8:11, 9:2, 10:16
**Defendant** [1] - 1:19, 1:21
**defendant's** [1] - 8:22
**defendants** [8] - 13:7, 13:10, 13:12, 13:16, 13:23, 14:16, 19:6, 37:15
**Defendants** [1] - 1:10
**defendants'** [5] - 13:21, 14:4, 14:13, 15:11, 19:7
**defense** [11] - 4:6, 4:7, 6:25, 15:13, 36:12, 49:25, 60:18, 90:6, 90:11, 92:4, 92:10
**defined** [1] - 8:5
**defraud** [1] - 14:14
**defrauded** [4] - 14:13, 36:21, 36:22, 37:21
**Del** [17] - 14:24, 17:4, 73:7, 73:11, 73:19, 74:16, 75:2, 75:9, 76:2, 76:4, 76:13, 76:18, 76:23, 77:6, 78:2, 78:10, 78:18
**delivered** [4] - 4:6, 30:7, 30:11, 30:13
**delivery** [1] - 6:25
**demand** [2] - 3:16, 3:19
**demanding** [1] - 3:17
**demands** [3] - 3:18, 3:22
**deposit** [13] - 43:17, 43:18, 45:14, 46:2, 46:5, 50:23, 54:1, 54:10, 54:12, 82:7, 85:18, 86:5, 86:7
**deposited** [3] - 40:21, 40:22, 64:23
**deposits** [2] - 27:2, 62:20
**deputy** [1] - 12:23
**derive** [1] - 56:14
**describe** [10] - 33:11,

40:15, 43:9, 47:14, 53:12, 56:24, 58:4, 72:14, 74:13, 82:3
**describes** [2] - 85:14, 89:8
**describing** [1] - 77:19
**designation** [1] - 4:2
**desire** [3] - 5:17, 6:12, 6:14
**despite** [1] - 14:19
**detail** [1] - 88:17
**details** [1] - 82:7
**determination** [5] - 5:18, 36:2, 50:10, 52:23
**determine** [9] - 16:20, 23:22, 24:12, 27:23, 28:14, 28:18, 34:21, 48:14, 86:13
**determined** [1] - 22:15
**develop** [1] - 77:12
**developed** [2] - 20:9, 33:6
**Development** [7] - 74:15, 74:21, 78:7, 80:23, 85:20, 88:14, 88:19
**development** [2] - 21:13, 35:23
**DeVries** [4] - 34:20, 34:25, 39:3, 39:11
**deVries** [1] - 36:14
**DeVries'** [1] - 34:23
**Diamante** [2] - 75:2, 76:21
**Diamonte** [20] - 5:14, 6:21, 13:25, 14:23, 14:24, 15:7, 17:4, 73:7, 73:11, 73:19, 74:16, 75:9, 76:2, 76:13, 76:23, 77:6, 78:23, 79:14
**DIANE** [1] - 1:16
**Diane** [1] - 2:8
**difference** [1] - 68:1
**dire** [2] - 20:16, 45:3
**DIRE** [2] - 20:19, 93:5
**direct** [6] - 27:18, 47:13, 55:7, 56:21, 73:6, 83:12
**DIRECT** [4] - 16:10, 24:1, 93:3, 93:7
**directing** [1] - 7:13
**directly** [2] - 16:24, 72:24
**director** [3] - 28:21, 29:17, 29:18
**disclosed** [2] - 12:19, 12:20
**disclosure** [2] - 3:25,

7:21
**discovered** [1] - 27:11
**discovery** [14] - 3:18, 3:19, 7:14, 7:18, 7:23, 9:16, 9:17, 10:22, 12:5, 30:13, 30:14, 85:2, 85:8
**Discovery** [1] - 4:24
**discrete** [1] - 2:25
**discuss** [1] - 22:10
**discussing** [2] - 45:25, 56:10
**discussions** [1] - 57:14
**disks** [3] - 7:1, 7:4, 10:24
**DISTRICT** [3] - 1:1, 1:1, 1:12
**diverted** [1] - 14:20, 19:5, 37:17
**document** [26] - 6:9, 6:10, 24:25, 25:3, 29:9, 29:16, 30:10, 30:16, 32:4, 32:14, 40:12, 59:25, 60:3, 61:17, 62:9, 65:16, 66:25, 75:14, 75:21, 75:24, 76:22, 77:13, 77:16, 77:20, 77:23, 87:18
**documentary** [2] - 20:11, 30:6
**documents** [37] - 3:1, 7:2, 7:14, 10:25, 11:5, 12:17, 12:18, 12:19, 22:6, 24:15, 30:11, 30:13, 31:10, 38:5, 59:20, 60:17, 70:19, 70:23, 71:10, 71:19, 72:14, 75:7, 77:17, 77:18, 81:12, 82:21, 83:5, 83:7, 83:9, 83:21, 83:22, 85:3, 85:7, 85:10, 87:21, 89:13
**Documents** [1] - 19:21
**Dog** [2] - 52:1, 53:17
**dollars** [2] - 26:16, 26:23
**done** [1] - 89:12
**double** [3] - 26:19, 31:7, 39:16
**double-check** [1] - 31:7
**doubt** [1] - 36:8
**Dr** [1] - 80:23
**draw** [2] - 37:20, 78:22
**drawn** [1] - 38:3
**due** [3] - 7:11, 8:24,

10:3
**duly** [1] - 16:3
**duplicate** [1] - 10:25
**duplicates** [1] - 11:4

## E

**e-mail** [23] - 28:22, 29:3, 45:24, 47:21, 48:6, 55:23, 56:8, 56:10, 59:10, 60:12, 66:2, 66:8, 66:11, 66:21, 66:23, 67:3, 67:19, 68:18, 68:20, 68:23, 69:6, 69:10, 69:11
**e-mails** [5] - 38:5, 38:6, 38:10, 77:18, 91:10
**East** [1] - 5:3
**EASTERN** [1] - 1:1
**effect** [1] - 11:15
**either** [4] - 5:23, 15:13, 36:17, 36:18
**elements** [1] - 23:5
**elicit** [1] - 60:18
**enforced** [1] - 7:19
**enforcement** [1] - 39:5
**entered** [2] - 22:16, 41:2
**entertaining** [1] - 5:22
**entire** [3] - 15:7, 21:17, 49:15
**entirely** [1] - 36:20
**entities** [1] - 11:10
**entity** [1] - 32:2
**Environmentally** [1] - 33:6
**envision** [1] - 40:11
**ergo** [1] - 36:21
**ESQ** [3] - 1:19, 1:21, 1:22
**establish** [1] - 14:7
**estate** [5] - 14:17, 14:21, 17:8, 17:11, 74:18
**estimate** [1] - 67:23
**estimated** [1] - 56:18
**Ethan** [8] - 45:9, 45:14, 45:24, 46:1, 48:15, 50:15, 50:19, 50:22
**Ethel** [4] - 51:12, 51:15, 54:2, 86:3
**Eufora** [28] - 14:18, 18:24, 21:7, 21:14, 33:10, 33:13, 33:14, 33:21, 33:22, 33:23, 34:1, 34:9, 34:12, 34:14, 34:17, 34:22,

34:25, 35:1, 35:9, 36:2, 36:3, 36:15, 36:16, 37:16, 37:22, 39:24, 39:25, 69:1
**event** [1] - 77:21
**eventually** [1] - 46:5
**evidentiary** [2] - 23:22, 91:6
**exactly** [1] - 29:17
**EXAMINATION** [6] - 16:10, 20:19, 24:1, 93:3, 93:5, 93:7
**examination** [2] - 60:19, 71:9
**examine** [1] - 77:22
**examined** [2] - 5:20, 16:3
**example** [3] - 53:6, 90:17, 91:9
**Excel** [1] - 41:2
**exchange** [1] - 66:23
**exclusive** [1] - 60:4
**exclusively** [1] - 36:2
**execution** [1] - 29:24
**exhibit's** [1] - 40:11
**EXHIBITS** [1] - 93:10
**Exhibits** [2] - 31:23, 93:13
**exhibits** [9] - 14:9, 16:15, 23:4, 28:25, 30:3, 31:22, 35:6, 40:2, 87:7
**expanded** [2] - 4:18, 83:3
**expected** [1] - 39:25
**expenses** [7] - 19:7, 39:23, 41:4, 41:10, 43:10, 49:20, 51:4
**explain** [2] - 24:5, 33:20, 68:1
**extent** [2] - 11:19, 91:9
**extra** [1] - 41:23

## F

**facilitate** [1] - 13:21
**fact** [7] - 17:9, 36:6, 52:20, 85:9, 88:12, 90:12, 90:22
**failure** [1] - 7:8
**faith** [1] - 31:16
**Falcon** [13] - 5:1, 13:25, 14:22, 15:4, 41:11, 41:19, 41:25, 42:1, 42:6, 42:12, 42:20
**false** [1] - 37:11
**far** [2] - 48:17, 63:16
**fashion** [1] - 49:14

**February** [3] - 28:12, 91:23, 91:25
**Federal** [3] - 1:15, 1:24, 7:17
**fell** [1] - 80:22
**few** [1] - 89:13
**figure** [5] - 39:22, 56:13, 56:14, 72:10, 72:19
**filed** [4] - 3:16, 6:8, 9:23, 68:10
**final** [1] - 8:25
**financial** [1] - 83:13
**fine** [1] - 92:2
**first** [10] - 7:6, 13:12, 15:18, 16:2, 20:2, 24:4, 26:22, 37:3, 68:2, 68:6
**Florida** [1] - 44:16
**flow** [2] - 11:8, 87:1
**flows** [1] - 11:9
**focus** [2] - 26:17, 41:20
**followed** [1] - 6:25
**follows** [1] - 16:4
**foreclosed** [1] - 78:21
**foreclosure** [1] - 56:20
**FORF-19** [1] - 60:6
**FORF-27** [1] - 65:14
**forfeit** [13] - 4:24, 5:1, 5:2, 5:13, 6:12, 6:14, 6:18, 7:9, 8:18, 13:11, 13:12, 13:16, 13:24
**forfeited** [1] - 53:7
**Forfeiture** [2] - 45:22, 59:13
**forfeiture** [46] - 2:19, 3:2, 4:11, 4:20, 4:22, 5:11, 6:3, 6:19, 7:3, 8:4, 8:19, 10:6, 10:9, 11:2, 11:14, 12:4, 13:18, 13:23, 14:3, 14:7, 14:10, 15:1, 15:7, 15:9, 19:23, 20:15, 23:9, 37:9, 47:13, 48:21, 49:11, 49:14, 50:6, 50:11, 55:17, 59:3, 68:4, 75:13, 76:14, 83:16, 91:2, 91:4, 91:8, 91:12, 91:19, 91:21
**FORFEITURE** [1] - 1:9
**form** [1] - 92:8
**formal** - 3:16
**forth** [3] - 3:18, 21:6, 35:20
**forward** [2] - 12:8, 12:9
**forwarded** [2] - 66:3,

68:20
**foundation** [1] - 17:20
**Frailes** [34] - 14:23, 17:3, 56:22, 56:24, 57:4, 57:8, 58:20, 59:4, 59:7, 59:9, 59:16, 59:18, 60:11, 60:13, 60:19, 60:20, 61:14, 61:16, 61:24, 62:24, 62:25, 63:1, 63:17, 64:10, 64:14, 64:22, 66:4, 66:13, 66:16, 67:13, 67:18, 72:19
**FRAILES** [1] - 17:3
**Frailes'** [1] - 55:8
**Frank** [1] - 64:23
**frankly** [2] - 5:5, 12:12
**fraud** [23] - 13:8, 13:13, 15:2, 27:4, 27:9, 33:10, 34:1, 35:9, 35:15, 35:23, 35:24, 35:25, 36:6, 36:8, 36:12, 46:8, 52:23, 53:5, 90:15, 90:17, 90:25
**frauds** [4] - 33:18, 62:12, 90:11, 91:3
**fraudulent** [17] - 18:24, 19:2, 21:5, 21:12, 21:22, 22:1, 35:20, 35:25, 36:19, 36:22, 37:5, 37:7, 37:16, 40:16, 48:25, 49:5, 90:22
**fraudulently** [1] - 39:12
**free** [1] - 28:23
**front** [1] - 19:22
**fully** [1] - 77:12
**Fund** [6] - 14:19, 21:14, 36:3, 40:17, 40:18, 69:2
**fund** [3] - 14:20, 19:5, 40:23
**fundamental** [1] - 35:17
**funds** [1] - 19:4, 19:6, 44:1, 44:8

### G

**Gaarn** [4] - 33:23, 34:24, 34:25, 39:25
**Galioto** [4] - 39:9, 39:18, 39:19, 68:19
**gardenia** [1] - 47:8
**Gardenia** [3] - 43:17, 43:20, 43:25
**gathered** [1] - 22:6

**Gaudet** [28] - 58:7, 58:17, 58:21, 58:24, 59:8, 59:11, 59:17, 60:12, 60:14, 61:10, 62:21, 62:22, 64:19, 66:15, 67:9, 67:15, 67:16, 67:17, 67:25, 68:2, 70:1, 70:3, 70:4, 70:20, 72:16, 72:22, 73:5
**Gaudet's** [2] - 72:18, 73:4
**GDM** [2] - 52:1, 53:17
**given** [11] - 6:13, 12:12, 38:4, 40:12, 53:5, 60:1, 60:3, 60:10, 82:6, 82:8, 82:10
**Glen** [1] - 80:21, 85:18
**global** [2] - 16:25, 19:5
**Global** [6] - 14:18, 21:14, 36:3, 40:17, 40:18, 69:2
**Gonchar** [2] - 28:2, 28:5
**Gonchar's** [2] - 44:2, 44:5
**Government** [37] - 1:14, 31:23, 41:7, 48:12, 56:6, 58:2, 60:5, 60:10, 61:2, 62:3, 63:23, 65:24, 66:9, 66:10, 69:13, 70:12, 74:9, 77:18, 82:10, 83:6, 83:8, 83:10, 83:18, 83:21, 83:22, 87:23, 88:2, 93:13, 93:16, 93:17, 93:18, 93:19, 93:20, 93:21, 93:22, 93:23
**government** [47] - 3:1, 3:6, 3:13, 3:24, 4:5, 4:9, 4:19, 4:23, 4:25, 5:2, 5:4, 5:6, 5:12, 5:20, 6:6, 6:8, 6:14, 7:2, 7:7, 8:9, 9:6, 10:19, 11:15, 11:19, 11:24, 12:14, 13:9, 13:22, 14:7, 15:1, 15:7, 15:21, 20:24, 23:19, 30:5, 60:2, 83:12, 87:18, 89:23, 90:1, 90:5, 90:16, 90:19, 90:25, 91:2, 91:11
**government's** [2] - 17:14, 37:6
**Government's** [4] - 23:24, 25:20, 93:11,

93:12
**grand** [4] - 70:25, 71:12, 71:22, 72:5
**great** [1] - 83:5
**Greg** [4] - 34:20, 34:23, 34:24, 39:2
**grounds** [1] - 52:24
**Group** [2] - 45:16, 88:16
**GSF** [8] - 40:23, 41:9, 41:10, 42:5, 43:3, 43:4, 43:6, 43:12
**guess** [1] - 70:9
**Guide** [2] - 52:1, 53:17
**Guide-Dog** [2] - 52:1, 53:17
**guideline** [1] - 48:22
**guidelines** [1] - 50:12

### H

**Haley** [2] - 2:13, 11:23, 12:2, 22:4
**HALEY** [69] - 1:19, 2:12, 2:21, 2:24, 12:10, 15:16, 17:13, 18:4, 19:24, 20:3, 20:6, 20:16, 20:20, 22:11, 22:24, 25:14, 30:4, 30:9, 30:21, 31:4, 31:15, 32:12, 35:11, 39:13, 44:18, 45:2, 45:5, 48:5, 48:8, 48:10, 48:18, 52:16, 56:3, 57:22, 59:24, 61:21, 62:14, 63:16, 63:20, 65:11, 65:14, 65:18, 65:21, 66:20, 68:5, 68:9, 68:14, 69:7, 70:17, 70:22, 71:3, 71:5, 71:7, 72:2, 72:7, 74:6, 75:17, 77:1, 77:8, 77:24, 81:10, 83:3, 85:6, 85:12, 87:17, 92:7, 92:14, 92:17, 93:6
**Haley's** [4] - 9:21, 11:20, 53:1, 60:16
**hand** [2] - 41:15, 63:25
**handed** [1] - 19:21
**Handing** [1] - 32:22
**handing** [1] - 41:24, 64:4
**hangars** [1] - 43:24
**happy** [2] - 15:15, 77:10
**Harbor** [4] - 4:24, 14:21, 19:2, 21:7

**hard** [1] - 41:21
**Hawaii** [38] - 4:23, 14:1, 14:18, 17:9, 18:2, 24:4, 24:6, 24:7, 24:8, 24:13, 24:14, 25:22, 25:25, 26:22, 27:9, 27:22, 29:9, 33:4, 35:23, 43:12, 44:2, 44:6, 44:10, 46:10, 46:11, 46:12, 46:13, 49:19, 51:13, 53:12, 57:4, 58:15, 69:1, 73:11, 74:19, 86:17
**Hawaii.gov** [2] - 29:16, 29:20
**Hawaiian** [1] - 21:13
**heard** [1] - 91:18
**HEARING** [1] - 1:8
**hearing** [19] - 2:19, 3:3, 7:3, 9:8, 12:8, 12:9, 14:10, 31:9, 48:21, 49:11, 53:8, 71:21, 83:15, 83:16, 87:19, 89:24, 91:8, 91:12
**hearings** [1] - 91:19
**hearsay** [4] - 14:5, 39:15, 39:16, 91:7
**held** [1] - 32:1
**help** [1] - 41:16
**helped** [1] - 58:19
**Hermosa** [1] - 62:19
**Highway** [1] - 1:19
**historical** [2] - 28:16, 28:19
**Historical** [3] - 28:21, 29:13, 32:1
**histories** [1] - 28:1
**history** [2] - 26:14, 73:16
**hockey** [1] - 90:22
**holder** [1] - 89:3
**Holdings** [3] - 6:20, 54:2, 86:4
**home** [4] - 24:16, 25:1, 29:10, 29:22
**Honor** [111] - 2:15, 2:20, 2:21, 2:24, 3:8, 5:15, 7:5, 7:6, 8:1, 8:19, 8:25, 9:14, 10:3, 10:8, 10:12, 12:15, 13:1, 13:6, 14:15, 15:20, 17:23, 19:18, 20:4, 20:6, 20:14, 22:24, 23:1, 23:7, 23:13, 25:12, 25:14, 25:18, 28:24, 30:2, 30:4, 30:19,

30:24, 30:25, 31:5, 31:16, 32:8, 34:5, 35:11, 37:13, 40:7, 40:8, 40:12, 41:22, 44:19, 45:2, 48:2, 48:4, 48:9, 48:10, 48:18, 49:13, 52:10, 52:14, 52:16, 53:10, 55:11, 56:1, 56:3, 56:4, 57:22, 57:24, 59:22, 59:24, 60:9, 60:15, 61:19, 62:5, 63:11, 65:7, 65:22, 66:18, 66:20, 69:7, 69:9, 70:14, 70:17, 71:5, 71:18, 71:24, 72:12, 74:3, 74:6, 74:7, 76:24, 77:2, 77:24, 78:1, 78:16, 81:23, 82:25, 84:2, 85:1, 87:15, 87:17, 89:8, 89:11, 89:18, 89:22, 92:3, 92:7, 92:16, 92:17
**HONORABLE** [1] - 1:12
**HONU** [1] - 28:17
**Honu'apo** [5] - 28:16, 28:19, 28:21, 29:13, 32:1
**Hormovitis** [1] - 1:9

## I

**identification** [1] - 45:21
**identified** [7] - 4:18, 7:2, 9:1, 22:1, 23:19, 24:3, 49:5
**identifies** [1] - 60:2
**identify** [13] - 4:22, 4:24, 5:1, 6:17, 7:8, 16:16, 16:23, 20:1, 27:11, 27:14, 28:9, 78:2, 78:4
**identifying** [1] - 8:10
**II** [1] - 51:11
**imposing** [1] - 8:21
**incidentally** [1] - 70:22
**include** [1] - 18:15
**included** [5] - 12:17, 76:14, 80:20, 91:3, 91:4
**includes** [1] - 15:3
**including** [4] - 10:11, 10:21, 35:8, 90:4
**indeed** [4] - 3:25, 4:2, 5:18, 7:16
**INDEX** [1] - 93:1

**indicate** [3] - 4:13, 9:10, 31:8
**indicated** [2] - 11:23, 66:2
**indicating** [2] - 5:12, 36:7
**indictment** [26] - 3:8, 4:12, 4:19, 4:21, 4:22, 5:8, 5:9, 6:5, 8:6, 10:6, 10:13, 10:15, 10:21, 21:6, 21:25, 22:1, 22:9, 23:20, 23:21, 35:21, 37:14, 49:6, 49:17, 71:13, 90:4
**individual** [1] - 49:2, 68:13
**individuals** [8] - 27:4, 34:15, 34:16, 34:19, 36:17, 38:6, 67:12, 76:15
**inference** [1] - 38:3
**information** [6] - 14:9, 22:8, 22:19, 22:22, 66:24, 83:14
**initial** [2] - 9:19, 60:16
**inquiries** [1] - 90:5
**inquiry** [2] - 4:10, 71:9
**instances** [1] - 3:21
**instead** [2] - 40:20, 46:12
**institution** [1] - 83:13
**Insurance** [1] - 42:1
**insurance** [1] - 42:16
**intend** [2] - 37:10, 90:2
**intending** [1] - 81:23
**intends** [1] - 14:8
**intention** [1] - 4:14
**interest** [7] - 5:13, 11:18, 43:20, 43:23, 47:17, 49:2, 79:8
**intermediary** [4] - 69:25, 70:7, 70:8, 70:9
**interpose** [2] - 9:8, 77:8
**interruption** [1] - 3:4
**interview** [1] - 91:10
**interviewed** [1] - 45:1
**Intrigue** [1] - 47:17
**introduce** [5] - 3:2, 9:6, 20:24, 23:10, 60:6, 87:18, 89:14
**introduced** [17] - 9:4, 21:1, 21:11, 21:21, 25:15, 26:8, 32:4, 33:25, 41:5, 45:18, 46:16, 47:10, 47:18, 60:18, 79:25, 83:24,

85:6
**invest** [2] - 57:2, 61:16
**invested** [16] - 14:17, 19:12, 25:22, 25:25, 34:8, 34:17, 39:12, 59:1, 59:4, 61:13, 64:9, 66:13, 67:12, 76:13, 76:18, 76:19
**investigation** [1] - 28:18
**investing** [1] - 33:13
**investment** [32] - 19:6, 26:13, 26:23, 34:13, 34:22, 36:16, 44:2, 44:3, 44:6, 44:9, 44:10, 51:8, 57:5, 59:7, 59:16, 60:11, 60:13, 62:25, 63:1, 64:13, 64:24, 65:1, 66:4, 68:3, 68:11, 72:19, 76:9, 78:10, 78:11, 78:12, 88:13
**investments** [20] - 18:2, 18:23, 19:6, 19:8, 24:6, 24:7, 24:9, 24:13, 25:5, 25:8, 66:11, 66:16, 68:24, 68:25, 69:1, 69:21, 75:24, 76:1, 76:6, 82:23
**investor** [6] - 40:22, 58:25, 59:18, 64:11, 65:3, 65:5
**investor's** [2] - 25:6, 57:7
**investors** [14] - 18:1, 32:19, 33:13, 33:22, 35:2, 41:2, 57:2, 59:9, 59:10, 67:24, 73:1, 76:21, 77:6, 80:20
**investors'** [4] - 18:12, 27:14, 66:16, 67:18
**invoice** [1] - 42:16
**invoices** [1] - 42:13
**involve** [1] - 49:5
**involved** [10] - 10:10, 10:23, 13:17, 13:20, 15:8, 15:10, 23:8, 46:1, 46:4, 75:2
**involvement** [1] - 51:12
**involving** [1] - 9:19
**Iowa** [1] - 85:25
**Islandia** [1] - 1:20
**Isle** [33] - 18:16, 24:17, 24:24, 25:5, 25:7, 25:9, 25:10, 27:2, 27:5, 28:1, 28:3, 32:6, 32:19, 32:23,

32:25, 33:7, 51:8, 51:11, 52:1, 53:15, 53:16, 53:23, 57:18, 58:7, 74:14, 74:18, 80:8, 81:2, 82:23, 85:18, 85:22
**Islip** [1] - 1:6, 1:15, 1:25
**ispister's** [1] - 44:10
**issue** [20] - 3:7, 5:25, 6:2, 7:16, 7:25, 8:9, 8:15, 9:9, 12:21, 22:5, 23:18, 31:18, 37:8, 37:10, 37:24, 53:4, 72:2, 89:25, 90:9, 91:5
**issued** [1] - 71:13
**issues** [4] - 3:23, 50:11, 89:24, 91:14
**item** [1] - 48:24
**items** [4] - 35:1, 40:20, 49:8, 53:5
**itself** [3] - 4:21, 21:5, 62:9
**IV** [2] - 18:16, 51:8

## J

**Jaime** [1] - 50:21
**James** [10] - 43:16, 43:20, 43:25, 44:11, 44:16, 44:22, 45:1, 45:6, 50:17
**January** [2] - 53:14, 53:15
**Jere** [1] - 86:1
**JFB** [1] - 1:4
**John** [5] - 64:22, 64:23, 64:25, 65:2, 66:23
**join** [5] - 11:16, 11:20, 37:1, 67:7, 84:1
**Jonathan** [3] - 65:6, 65:15, 73:2
**Joseph** [1] - 2:15
**JOSEPH** [2] - 1:12, 1:21
**Josh** [2] - 14:11, 15:21
**JOSHUA** [3] - 16:1, 16:7, 93:2
**Joshua** [1] - 16:7
**Jowdy** [15] - 40:19, 74:15, 74:16, 74:23, 75:8, 75:10, 78:4, 78:6, 78:20, 85:3, 86:8, 88:6, 88:14, 88:20
**Jowdy's** [14] - 29:6, 47:23, 75:16, 75:22, 81:7, 81:12, 81:15,

82:6, 82:9, 83:6, 83:8, 83:10, 86:25, 87:8
**Jozef** [1] - 85:23, 86:1, 86:10
**judge** [6] - 11:16, 18:4, 19:24, 31:15, 32:12, 35:19
**JUDGE** [1] - 1:12
**Judge** [47] - 2:12, 3:25, 4:16, 4:20, 5:4, 5:6, 5:10, 6:4, 6:13, 6:19, 6:24, 8:4, 8:12, 8:23, 9:8, 9:11, 15:16, 15:17, 20:16, 22:11, 30:9, 30:21, 35:17, 36:1, 36:9, 36:13, 36:24, 37:2, 44:18, 48:8, 49:4, 52:18, 61:21, 61:25, 62:1, 65:11, 65:21, 66:25, 67:1, 68:5, 71:3, 71:8, 72:3, 75:17, 75:19, 83:16, 87:22
**judgment** [4] - 10:5, 13:23, 15:5, 49:15
**July** [3] - 43:19, 44:15, 45:7
**June** [1] - 3:16
**jury** [23] - 4:12, 4:15, 5:18, 5:22, 5:25, 6:2, 6:7, 8:3, 8:9, 8:16, 10:2, 10:4, 12:4, 13:7, 21:4, 21:21, 35:22, 36:6, 52:23, 70:25, 71:12, 71:22, 72:5

## K

**Kaiser** [8] - 51:15, 54:2, 64:22, 64:23, 64:25, 65:2, 66:23, 86:3
**Kaiser's** [2] - 44:1, 51:12
**KAJ** [1] - 6:20
**Kau** [1] - 86:4
**keep** [4] - 38:10, 67:21, 69:18, 88:9
**Kelly** [1] - 65:15
**Ken** [14] - 29:6, 47:23, 74:23, 75:8, 75:10, 75:16, 75:22, 78:20, 81:12, 83:6, 83:7, 83:10, 86:25, 88:19
**KENNER** [1] - 1:7
**Kenner** [47] - 1:7, 1:19, 2:6, 2:14, 3:10,

3:12, 18:22, 28:21, 29:3, 29:10, 29:16, 32:2, 32:25, 33:1, 33:8, 33:16, 36:18, 39:23, 40:1, 44:15, 45:24, 47:4, 47:22, 51:2, 53:17, 54:10, 54:12, 54:14, 55:24, 56:10, 57:2, 58:18, 58:24, 64:16, 64:19, 64:24, 68:20, 72:24, 78:3, 78:5, 79:17, 79:21, 88:12, 88:19, 88:22, 89:6

**Kenner's** [14] - 24:16, 25:1, 29:10, 29:22, 33:23, 34:25, 59:2, 64:15, 64:17, 68:24, 72:22, 79:6, 87:10, 87:13

**Kenner-controlled** [1] - 53:17

**Kenneth** [1] - 86:8

**kept** [1] - 12:13

**knowledge** [9] - 4:7, 5:15, 5:19, 6:5, 8:5, 8:17, 11:17, 68:9, 68:12

**known** [8] - 8:11, 27:18, 31:25, 33:3, 36:10, 55:8, 73:8, 78:23

**knows** [1] - 92:11

**KOMATIREDDY** [1] - 1:17

**Komatireddy** [1] - 2:10

**Kristin** [3] - 51:18, 55:22, 55:23

---

**L**

**laid** [1] - 49:25

**land** [2] - 21:13, 35:23

**Las** [2] - 14:21, 60:20

**latter** [1] - 81:10

**laundering** [8] - 10:7, 13:9, 13:17, 13:18, 13:21, 15:11, 23:8, 49:16

**Laura** [1] - 2:9

**LAURA** [1] - 1:17

**law** [5] - 11:13, 12:1, 12:22, 39:5, 90:15

**lead** [1] - 17:21

**leading** [3] - 17:16, 35:16

**learn** [1] - 74:21

**least** [5] - 3:5, 4:4, 8:16, 38:10, 83:18

---

**Led** [2] - 21:15, 36:3

**left** [2] - 2:14, 68:2

**Legal** [1] - 3:11

**legal** [2] - 22:5, 50:10

**Lehtinen** [1] - 86:1

**Leonardo** [2] - 2:9, 9:12

**LEONARDO** [103] - 1:16, 2:8, 2:20, 9:14, 9:25, 10:20, 11:3, 13:1, 13:5, 15:20, 16:11, 17:23, 19:18, 20:1, 20:4, 20:14, 22:3, 23:1, 23:13, 24:2, 24:21, 25:12, 28:24, 30:2, 30:8, 30:19, 30:24, 31:5, 32:8, 32:15, 34:5, 37:13, 39:1, 39:15, 39:20, 40:6, 40:10, 40:14, 41:22, 47:24, 48:2, 48:4, 48:6, 49:13, 50:13, 52:10, 52:14, 53:10, 53:22, 55:11, 56:1, 57:20, 59:22, 60:9, 61:4, 61:19, 62:5, 62:10, 62:16, 63:1, 63:11, 63:14, 63:25, 64:3, 65:7, 66:1, 66:10, 66:18, 67:8, 67:22, 68:13, 68:15, 69:4, 69:19, 70:14, 71:24, 72:8, 72:12, 74:3, 74:11, 75:18, 76:24, 77:4, 78:1, 78:9, 78:13, 78:15, 78:17, 81:8, 81:23, 82:25, 85:1, 85:13, 87:15, 89:8, 89:11, 89:18, 91:15, 91:22, 92:2, 92:16, 93:4, 93:8

**less** [1] - 44:13

**letter** [8] - 32:5, 32:11, 32:19, 32:24, 33:1, 33:7, 89:25, 92:5

**liable** [1] - 13:10

**limit** [1] - 10:19

**limited** [4] - 10:11, 10:13, 10:21, 90:4

**line** [39] - 16:24, 17:9, 17:24, 18:12, 24:11, 25:21, 25:24, 26:8, 26:14, 26:16, 26:19, 27:12, 27:25, 28:1, 28:2, 28:6, 43:11, 44:5, 46:10, 51:19, 53:12, 53:16, 55:2, 57:3, 57:7, 58:13, 58:14, 73:10, 73:16,

---

73:21, 74:14, 75:5, 78:25, 79:18, 80:5, 80:7, 80:17, 85:15, 85:17

**lines** [1] - 58:9

**list** [7] - 10:14, 41:1, 49:7, 59:9, 59:10, 72:18, 73:4

**listed** [3] - 10:13, 27:5, 56:14

**listening** [1] - 83:4

**lists** [3] - 25:4, 25:5, 29:10

**litany** [1] - 17:15

**litigants** [1] - 7:19

**LLC** [7] - 5:13, 5:14, 6:20, 6:21, 79:14

**loan** [15] - 42:11, 43:6, 43:12, 44:2, 46:4, 46:8, 46:9, 46:19, 51:14, 54:2, 79:22, 85:21, 86:3, 86:14, 86:16

**loans** [1] - 24:7

**locate** [1] - 32:8

**located** [5] - 5:3, 6:22, 14:1, 73:7, 78:23

**look** [18] - 7:25, 11:13, 12:1, 12:22, 22:7, 28:11, 32:20, 35:3, 38:8, 55:16, 57:11, 59:12, 61:5, 63:2, 64:17, 76:12, 82:2, 82:22

**looked** [4] - 22:17, 24:15, 34:23, 91:20

**looking** [20] - 24:3, 24:22, 52:3, 53:11, 57:14, 58:4, 62:17, 64:5, 68:16, 70:11, 72:13, 73:23, 74:12, 75:11, 75:18, 75:20, 77:5, 82:21, 85:14, 87:7

**LORETTA** [1] - 1:14

**Los** [1] - 14:23

**loss** [9] - 8:20, 27:8, 48:14, 48:22, 48:23, 50:14, 56:16, 56:18, 67:23

**losses** [2] - 24:4, 50:2

**lost** [1] - 48:17

**Lucas** [10] - 6:22, 13:25, 14:24, 15:8, 17:4, 57:1, 78:24, 79:14, 80:9, 81:19

**LYNCH** [1] - 1:14

---

**M**

**M-A-S-O-O-D** [1] - 29:4

**MADELINE** [1] - 1:16

**Madeline** [1] - 2:9

**mail** [24] - 28:22, 29:3, 36:6, 45:24, 47:21, 48:6, 55:23, 56:8, 56:10, 59:10, 60:12, 66:2, 66:8, 66:11, 66:21, 66:23, 67:3, 67:19, 68:18, 68:20, 68:23, 69:6, 69:10, 69:11

**mails** [5] - 38:5, 38:6, 38:10, 77:18, 91:10

**maintain** [1] - 87:20

**Makika** [22] - 18:18, 45:17, 51:1, 51:9, 51:10, 52:2, 53:24, 53:25, 54:3, 57:18, 58:7, 81:2, 82:23, 85:24, 86:3, 86:4, 86:21, 86:24, 87:10, 87:13, 88:15, 88:22

**Management** [6] - 45:16, 52:1, 53:17, 88:15, 88:25, 89:3

**Mandel** [1] - 2:9

**MANDEL** [1] - 1:17

**Mar** [17] - 14:24, 17:4, 73:7, 73:11, 73:19, 74:16, 75:2, 75:9, 76:2, 76:4, 76:13, 76:18, 76:23, 77:6, 78:2, 78:10, 78:18

**March** [5] - 89:19, 91:24, 92:5, 92:6, 92:19

**marked** [10] - 19:23, 32:21, 45:21, 47:13, 53:11, 55:17, 57:11, 59:12, 61:5, 66:6

**Masood** [1] - 29:3

**Mat** [1] - 39:9

**match** [1] - 76:11

**material** [13] - 3:15, 3:17, 3:22, 4:6, 4:8, 7:10, 9:9, 9:18, 12:14, 12:16, 12:20, 36:19, 65:19

**materiality** [1] - 49:10

**materials** [1] - 60:19

**Matt** [1] - 68:18

**matter** [7] - 3:19, 12:12, 16:15, 31:19, 35:13, 87:20, 90:12

**Mattias** [2] - 26:6, 34:20

---

**Maureen** [1] - 76:3

**McFadden's** [1] - 51:7

**McKee** [10] - 44:11, 44:16, 44:22, 45:1, 45:6, 46:24, 47:7, 54:17, 76:3

**McKee's** [4] - 46:23, 50:18, 51:3, 51:9

**mean** [5] - 12:11, 21:8, 24:9, 70:7, 86:7

**means** [1] - 24:5

**meant** [3] - 49:19, 73:10, 74:18

**mechanical** [1] - 2:1

**meet** [1] - 85:1

**meets** [1] - 44:16

**members** [1] - 32:25

**memo** [1] - 65:20

**mentioned** [5] - 9:17, 9:18, 49:17, 50:17, 68:9

**Mexico** [5] - 14:23, 69:1, 70:3, 74:17, 86:9

**Michael** [6] - 44:3, 44:9, 51:18, 55:23, 56:10, 63:6

**might** [4] - 7:15, 11:1, 22:11, 61:22

**Mike** [1] - 44:25

**Mill** [11] - 14:2, 14:22, 15:4, 17:5, 17:6, 27:19, 28:4, 28:7, 31:25, 33:2, 33:4

**million** [23] - 26:1, 26:16, 26:23, 27:10, 34:10, 35:10, 39:22, 40:24, 43:22, 44:1, 44:8, 44:13, 44:14, 50:16, 51:5, 53:23, 59:5, 67:24, 67:25, 72:18, 75:3, 79:18, 86:15

**Mineola** [1] - 1:23

**minute** [1] - 55:9

**Miskiewicz** [1] - 90:13

**misrepresentation** [2] - 36:19, 36:20

**misrepresentations** [1] - 36:23

**mistake** [2] - 78:9, 78:13

**modified** [1] - 7:17

**moment** [6] - 20:23, 30:24, 65:11, 71:3, 78:16, 89:9

**money** [11] - 10:5, 10:7, 11:8, 13:8, 13:17, 13:18, 13:21, 13:23, 14:17, 15:4,

15:11, 16:25, 17:24,
18:2, 18:12, 18:13,
19:11, 23:7, 25:21,
25:24, 26:20, 26:22,
27:12, 27:14, 28:2,
33:14, 33:15, 33:21,
33:22, 34:8, 34:13,
34:14, 34:24, 35:1,
37:22, 38:7, 39:12,
40:19, 40:20, 40:22,
41:1, 41:10, 41:18,
42:2, 42:5, 43:3,
43:4, 43:6, 43:11,
43:12, 43:13, 44:5,
46:5, 46:9, 46:10,
46:12, 46:19, 48:17,
49:14, 49:15, 49:19,
50:5, 50:10, 51:8,
51:19, 53:3, 53:13,
53:16, 53:23, 57:3,
58:6, 58:16, 59:2,
59:4, 59:7, 61:10,
62:20, 64:9, 64:23,
64:24, 64:25, 67:12,
67:18, 68:3, 70:1,
70:10, 72:15, 72:20,
72:21, 72:24, 73:10,
74:14, 75:5, 75:6,
75:9, 75:10, 78:2,
78:4, 78:25, 79:3,
79:18, 79:22, 80:6,
80:17, 80:21, 85:15,
85:17, 85:19, 85:21,
85:23, 85:24, 86:1,
86:2, 86:4, 86:10,
86:14, 86:20, 87:2,
88:12, 88:13, 88:18,
89:5, 90:20
**moneys** [1] - 53:7
**monies** [5] - 11:10,
14:19, 36:15, 37:15,
37:17
**Moreau** [11] - 45:9,
45:14, 45:24, 46:1,
46:3, 46:4, 47:22,
48:15, 50:15, 50:19,
50:22
**mortgage** [3] - 54:12,
54:13, 54:15
**Mosquito** [1] - 6:23
**most** [2] - 21:19, 23:1
**motion** [2] - 11:17,
11:20
**move** [1] - 20:14
**moving** [1] - 33:10
**MR** [94] - 2:12, 2:15,
2:21, 2:24, 11:16,
12:10, 15:16, 15:17,
17:13, 18:4, 19:24,
20:3, 20:6, 20:7,

20:16, 20:20, 22:11,
22:24, 25:14, 25:18,
30:4, 30:9, 30:21,
31:4, 31:15, 31:21,
32:12, 35:11, 37:1,
39:13, 44:18, 45:2,
45:5, 48:5, 48:8,
48:9, 48:10, 48:18,
52:16, 52:18, 56:3,
56:4, 57:22, 57:24,
59:24, 60:15, 60:24,
61:21, 62:1, 62:14,
63:16, 63:20, 63:21,
65:11, 65:14, 65:18,
65:21, 65:22, 66:20,
67:7, 68:5, 68:9,
68:14, 69:7, 69:9,
70:17, 70:22, 71:3,
71:5, 71:7, 71:17,
72:2, 72:7, 74:6,
74:7, 75:17, 77:1,
77:2, 77:8, 77:24,
81:10, 83:3, 84:1,
85:6, 85:12, 87:17,
87:22, 88:1, 89:20,
89:22, 92:7, 92:14,
92:17, 93:6
**MS** [103] - 2:8, 2:20,
9:14, 9:25, 10:20,
11:3, 13:1, 13:5,
13:6, 15:20, 16:11,
17:23, 19:18, 20:1,
20:4, 20:14, 22:3,
23:1, 23:13, 24:2,
24:21, 25:12, 28:24,
30:2, 30:8, 30:19,
30:24, 31:5, 32:8,
32:15, 34:5, 37:13,
39:1, 39:15, 39:20,
40:6, 40:10, 40:14,
41:22, 47:24, 48:2,
48:4, 48:6, 49:13,
50:13, 52:10, 52:14,
53:10, 53:22, 55:11,
56:1, 57:20, 59:22,
60:9, 61:4, 61:19,
62:5, 62:10, 62:16,
63:1, 63:11, 63:14,
63:25, 64:3, 65:7,
66:1, 66:10, 66:18,
67:8, 67:22, 68:13,
68:15, 69:4, 69:19,
70:14, 71:24, 72:8,
72:12, 74:3, 74:11,
75:18, 76:24, 77:4,
78:1, 78:9, 78:13,
78:15, 78:17, 81:8,
81:23, 82:25, 85:1,
85:13, 87:15, 89:8,
89:11, 89:18, 91:15,
91:22, 92:2, 92:16,

93:4, 93:8
**Murray** [2] - 80:21,
85:18
**Murray's** [1] - 80:21
**must** [2] - 13:23,
36:21
**mutually** [1] - 12:23

## N

**named** [1] - 14:18
**namely** [1] - 13:24
**Nash** [7] - 59:15,
59:17, 59:21, 60:4,
60:10, 60:12, 60:17
**nature** [2] - 17:16,
71:10
**necessarily** [1] - 38:2
**need** [5] - 19:14,
32:20, 37:19, 41:20,
49:15
**never** [5] - 4:1, 50:23,
61:21, 72:21, 72:22
**NEW** [1] - 1:1
**new** [2] - 10:25, 17:21
**New** [5] - 1:6, 1:15,
1:20, 1:23, 1:25
**next** [5] - 38:11, 63:25,
71:21, 85:2, 89:24
**nexus** [1] - 49:1
**Nick** [2] - 64:12, 64:13
**ninth** [2] - 89:15,
89:19
**Nolan** [5] - 58:6, 58:8,
58:13, 80:7, 85:17
**nonprofit** [1] - 33:5
**Nordstrom** [1] - 62:19
**Norstrom** [4] - 26:6,
26:7, 34:20, 36:14
**Norstrom's** [1] - 53:15
**north** [1] - 57:1
**northern** [1] - 73:8
**Northern** [2] - 18:13,
88:5
**note** [3] - 9:15, 9:21,
10:5
**noted** [3] - 9:24,
90:11, 90:23
**nothing** [1] - 17:20
**notice** [1] - 6:14
**November** [2] - 44:4,
44:10
**number** [11] - 3:20,
21:13, 21:14, 21:15,
24:19, 47:14, 59:6,
77:6, 83:21, 88:2
**numbers** [3] - 33:20,
66:11, 76:11

## O

**o'clock** [1] - 89:22
**O'CONNOR** [2] - 1:16,
13:6
**O'Connor** [2] - 2:9,
13:2
**objected** [1] - 4:2
**objecting** [2] - 62:8,
72:4, 77:17
**objections** [4] - 9:8,
60:20, 87:22, 91:18
**obtained** [4] - 71:11,
71:12, 71:21, 83:11
**obviously** [16] - 11:12,
12:18, 22:7, 23:16,
23:21, 35:24, 37:8,
49:23, 50:4, 50:12,
77:22, 90:10, 91:7,
91:16, 91:17, 91:24
**occurred** [1] - 4:16
**occurring** [1] - 28:10
**October** [2] - 3:9, 11:5
**OF** [3] - 1:1, 1:3, 1:8
**offense** [1] - 10:10
**offenses** [2] - 13:22,
49:4
**offer** [22] - 19:24,
25:12, 30:2, 30:10,
31:11, 47:24, 52:10,
56:1, 57:20, 59:22,
61:19, 63:11, 65:7,
66:18, 69:4, 70:14,
74:3, 76:24, 81:8,
81:24, 82:25, 87:15
**offered** [1] - 75:17
**officer** [1] - 29:11
**Old** [1] - 1:22
**OLIVERAS** [1] - 1:22
**Oliveras** [1] - 2:16
**once** [4] - 10:17,
12:21, 17:21, 90:5
**ones** [1] - 90:13
**ongoing** [2] - 91:5,
91:19
**opening** [2] - 13:2,
15:14
**operating** [3] - 24:24,
25:4, 80:1
**opinion** [3] - 21:24,
36:5, 48:24
**opposite** [1] - 52:20
**order** [3] - 7:13, 19:14,
49:14
**ordering** [1] - 92:8
**ORF-4** [1] - 30:23
**organized** [1] - 33:5
**original** [1] - 46:10
**originally** [1] - 3:10
**ostensibly** [2] - 66:22,

67:4
**otherwise** [1] - 5:24
**ought** [1] - 7:7
**outside** [1] - 22:23
**overall** [1] - 27:8
**overlaps** [1] - 49:23
**overrule** [1] - 23:23
**overruled** [4] - 17:18,
18:6, 52:22, 60:21
**overruling** [1] - 23:14
**overseas** [1] - 70:10
**Owen** [1] - 85:17
**own** [1] - 37:9
**owned** [3] - 33:4,
42:20, 42:23
**owner** [3] - 28:19,
58:25, 79:11
**ownership** [2] - 11:18,
78:20
**owns** [1] - 28:23

## P

**Pacifico** [4] - 70:1,
70:2, 72:16, 73:4
**pages** [4] - 11:4,
80:15, 81:9, 87:12
**Palm** [3] - 43:5, 44:9,
56:11
**Palms** [28] - 14:21,
17:3, 21:22, 21:25,
43:7, 43:8, 43:10,
43:11, 43:18, 44:11,
44:12, 45:9, 45:10,
46:23, 49:6, 49:21,
50:15, 51:17, 52:22,
53:6, 54:20, 55:16,
56:13, 56:16, 80:22,
85:19, 90:17, 90:21
**paperwork** [1] - 42:24
**paramount** [1] - 8:24
**parcel** [2] - 33:3, 33:4,
33:6
**part** [23] - 14:3, 14:13,
23:20, 23:21, 30:11,
31:13, 43:6, 43:22,
43:25, 44:7, 49:18,
54:3, 58:9, 58:18,
79:7, 81:4, 81:5,
81:11, 81:13, 86:5,
86:7, 88:2
**particular** [13] - 12:12,
30:10, 30:16, 35:14,
35:24, 46:3, 48:24,
49:3, 60:19, 67:19,
68:11, 71:14, 90:16
**particulars** [1] - 68:10
**Particulars** [23] - 4:17,
5:5, 5:7, 5:9, 5:11,
6:6, 6:9, 6:10, 6:11,

6:15, 6:24, 8:7, 8:10, 9:2, 9:23, 10:18, 11:14, 89:25, 90:2, 90:3, 90:6, 90:7
**parties** [1] - 91:6
**partly** [1] - 81:15
**Partners** [2] - 41:19, 42:20
**party** [2] - 77:17, 83:19
**pay** [3] - 13:23, 43:4, 43:6
**payment** [5] - 44:8, 54:20, 79:1, 79:4, 81:19
**payments** [6] - 43:10, 47:5, 54:12, 54:15, 54:19, 54:24
**Peca** [7] - 51:18, 54:5, 55:22, 55:23, 56:10, 63:6, 76:3
**Peca's** [3] - 54:13, 55:3, 55:16
**Pecas** [2] - 56:14, 56:15
**penalty** [3] - 8:20, 8:21, 8:23
**penthouse** [1] - 43:16
**Penthouse** [3] - 47:17, 52:23, 53:6
**people** [4] - 37:11, 37:19, 37:25, 50:2
**percent** [2] - 79:11
**perhaps** [2] - 31:17, 31:18
**Perry** [1] - 1:24
**person** [3] - 38:3, 87:19, 91:12
**personal** [2] - 10:9, 49:20
**perspective** [1] - 72:3
**perusing** [1] - 75:7
**phase** [1] - 91:2
**Phil** [29] - 2:14, 18:22, 24:16, 25:1, 29:3, 29:10, 29:16, 32:25, 33:15, 33:23, 36:18, 44:15, 45:24, 47:4, 54:12, 55:24, 56:10, 58:18, 58:24, 59:2, 64:15, 64:16, 64:17, 64:19, 64:24, 68:24, 72:22, 72:24
**Philip** [1] - 1:7
**PHILLIP** [1] - 1:7
**picked** [2] - 89:14, 89:19
**pickup** [1] - 60:15
**piece** [1] - 49:3
**pieces** [1] - 50:9

**PIEDADES** [1] - 80:23
**pitches** [1] - 44:16
**placed** [1] - 6:1
**plain** [1] - 30:15
**plane** [3] - 42:14, 42:19, 42:23
**players** [2] - 59:4, 90:22
**players'** [1] - 17:9
**Plaza** [2] - 1:15, 1:24
**pocket** [2] - 48:17, 51:3
**point** [13] - 3:4, 4:13, 6:3, 6:4, 9:9, 12:16, 17:13, 35:17, 36:13, 37:3, 60:16, 71:16, 92:12
**portion** [1] - 43:4
**position** [8] - 7:5, 7:6, 10:12, 23:7, 37:7, 37:18, 49:13, 60:9
**possible** [1] - 89:11
**post** [3] - 6:20, 30:18, 72:6
**post-trial** [2] - 30:18, 72:6
**potential** [1] - 58:19
**preclude** [3] - 7:15, 37:6, 77:19
**precluded** [1] - 7:8
**prejudice** [1] - 8:1
**prejudicial** [1] - 10:15
**premises** [2] - 5:3, 6:22
**preparation** [1] - 23:17
**prepare** [8] - 19:10, 19:16, 51:21, 57:9, 57:13, 73:18, 80:10, 87:1
**prepared** [4] - 52:3, 73:23, 81:19, 83:8
**preparing** [2] - 81:1, 82:21
**preponderance** [1] - 14:5
**present** [1] - 2:18
**presented** [4] - 14:8, 14:10, 21:4, 62:12
**preserved** [1] - 11:22
**preserving** [1] - 53:7
**previously** [6] - 4:8, 12:19, 12:20, 13:24, 15:3, 30:6
**price** [1] - 44:13
**Privitello** [1] - 64:12
**Privitello's** [2] - 64:13, 72:23
**procedure** [1] - 40:7
**Procedure** [1] - 7:17

**proceed** [5] - 2:19, 2:22, 5:17, 8:2, 12:22
**proceeded** [3] - 4:7, 6:16, 7:23
**proceeding** [1] - 48:20
**Proceedings** [1] - 2:1
**proceedings** [1] - 11:14
**proceeds** [3] - 13:13, 15:1, 16:21
**process** [2] - 8:24, 10:3
**produced** [3] - 2:2, 31:6, 31:13
**production** [2] - 31:3, 31:4
**project** [3] - 24:7, 24:8, 74:17
**promises** [1] - 14:16
**proof** [2] - 14:4, 30:10
**properly** [1] - 59:25
**Properties** [7] - 5:14, 6:20, 6:21, 70:2, 72:16, 73:5
**properties** [15] - 6:18, 7:9, 8:11, 8:18, 9:5, 9:7, 9:17, 9:20, 10:23, 11:18, 11:25, 14:23, 16:16, 23:19, 53:3
**property** [65] - 4:18, 4:23, 4:25, 6:15, 6:22, 8:21, 9:1, 10:9, 10:10, 10:11, 10:14, 10:23, 13:11, 13:16, 13:19, 14:1, 14:2, 14:22, 15:4, 15:8, 15:10, 17:5, 17:6, 19:2, 27:11, 27:19, 27:22, 27:23, 28:4, 28:7, 28:14, 32:1, 33:2, 46:11, 49:3, 55:8, 56:22, 56:25, 57:1, 58:18, 58:20, 58:22, 58:25, 59:1, 59:9, 70:3, 73:7, 73:8, 78:19, 78:23, 79:8, 80:9, 80:24, 81:20, 82:5, 82:7, 85:21, 85:23, 85:25, 86:1, 86:3, 86:6, 86:11, 86:17, 86:20
**Propiedades** [1] - 85:20
**PROPIEDADES** [1] - 85:20
**Propiedadies** [4] - 85:22, 86:2, 86:5, 86:10

**prove** [5] - 11:19, 37:10, 90:2, 90:16, 90:20
**proved** [1] - 18:1
**proven** [12] - 17:7, 18:5, 18:8, 18:11, 18:23, 19:1, 19:4, 22:14, 33:10, 36:8, 40:16, 90:12
**proves** [1] - 14:16
**provide** [4] - 20:5, 28:25, 40:12, 59:8
**provided** [15] - 4:9, 6:6, 11:4, 12:5, 23:4, 24:21, 48:16, 67:25, 69:11, 69:13, 83:5, 83:10, 85:4, 86:25, 88:6
**providing** [2] - 77:17, 83:20
**proving** [4] - 62:12, 90:11, 90:14, 90:15
**provision** [2] - 10:4, 13:19
**PSR** [1] - 49:25
**pull** [1] - 40:10
**purchase** [25] - 17:8, 17:10, 19:1, 28:4, 28:7, 44:13, 45:9, 45:10, 45:15, 45:25, 46:11, 47:7, 47:17, 50:18, 51:9, 51:17, 54:1, 54:5, 54:9, 58:19, 58:22, 62:24, 73:7, 74:18, 86:14
**purchased** [5] - 27:24, 28:15, 28:16, 47:5
**purchases** [1] - 14:20
**purporting** [1] - 83:9
**purpose** [6] - 7:16, 12:7, 53:8, 53:20, 54:1, 83:23
**purposes** [10] - 7:3, 11:1, 18:3, 37:16, 37:17, 37:22, 49:10, 60:1, 79:13, 91:4
**pursuant** [8] - 2:13, 5:6, 13:13, 13:15, 14:25, 15:6, 70:23, 71:22
**putting** [1] - 11:1

**Q**

**questions** [5] - 17:16, 17:17, 22:5, 35:13, 49:24
**quick** [1] - 65:12
**quite** [1] - 13:19

**R**

**raise** [2] - 9:9, 31:15
**raised** [1] - 11:6
**Randi** [1] - 3:10
**rather** [5] - 5:18, 9:7, 17:15, 31:17, 40:10
**re** [1] - 45:1
**re-interviewed** [1] - 45:1
**read** [1] - 70:18
**ready** [2] - 2:19, 12:8
**real** [8] - 4:25, 6:22, 10:9, 14:17, 14:21, 17:8, 17:10, 74:18
**really** [2] - 36:9, 85:9
**reasonable** [1] - 36:8
**reasons** [1] - 11:23
**receipt** [1] - 83:14
**receive** [2] - 70:22, 85:10
**received** [28] - 4:17, 12:17, 30:15, 30:18, 31:1, 39:23, 48:13, 56:6, 58:2, 61:2, 62:3, 63:24, 65:25, 66:2, 66:8, 66:9, 66:10, 69:25, 70:6, 70:12, 70:19, 74:9, 81:12, 81:15, 85:3, 85:8, 87:8
**recess** [1] - 55:13
**recessed** [1] - 92:18
**recognize** [20] - 5:5, 20:8, 24:22, 24:23, 29:2, 29:7, 29:8, 29:15, 45:22, 55:19, 61:6, 61:8, 62:17, 62:18, 63:4, 64:5, 64:8
**recollection** [1] - 64:18
**record** [17] - 2:7, 3:5, 3:19, 4:20, 6:1, 11:23, 12:16, 16:6, 19:16, 20:4, 28:11, 31:19, 69:11, 77:11, 77:13, 82:8, 88:7
**recorded** [2] - 2:1
**records** [54] - 18:12, 19:17, 24:15, 27:24, 27:25, 45:18, 46:2, 50:9, 51:24, 51:25, 52:1, 52:6, 52:8, 57:14, 57:16, 57:18, 61:9, 61:22, 62:6, 63:16, 64:1, 64:9, 66:12, 67:2, 67:11, 69:21, 69:25, 70:6, 70:11, 73:13, 73:25,

75:9, 81:2, 81:7, 81:15, 81:17, 81:18, 82:5, 82:11, 82:14, 82:16, 82:18, 82:22, 86:19, 86:23, 86:24, 88:5, 91:10
**reduced** [1] - 65:18
**refer** [2] - 19:14, 19:22
**reference** [4] - 8:2, 8:3, 50:6, 65:16
**referred** [2] - 14:2, 49:8
**referring** [1] - 37:6
**refers** [2] - 61:23, 79:14
**reflect** [1] - 54:24, 67:11
**reflected** [1] - 74:13
**refurbishing** [1] - 42:14
**regard** [37] - 8:25, 9:21, 9:22, 10:2, 10:9, 11:5, 11:7, 18:9, 18:11, 18:20, 19:11, 24:4, 24:17, 25:2, 25:21, 29:1, 29:21, 33:2, 33:25, 40:17, 41:9, 42:10, 46:8, 48:15, 51:4, 51:7, 54:8, 55:15, 65:5, 66:3, 73:18, 73:19, 76:4, 78:6, 80:10, 82:23, 87:1
**regarding** [5] - 21:21, 37:24, 66:22, 76:1, 91:6
**regards** [21] - 17:7, 29:14, 45:8, 46:23, 47:7, 47:21, 50:1, 50:2, 50:15, 51:12, 51:17, 54:20, 54:25, 56:16, 58:9, 58:22, 60:10, 64:11, 65:3, 66:13, 79:7
**related** [8] - 22:6, 32:2, 41:10, 43:11, 53:2, 63:17, 73:21, 80:17
**relates** [23] - 3:23, 4:21, 6:3, 9:1, 9:4, 9:6, 11:13, 11:25, 12:11, 21:12, 23:17, 30:4, 30:21, 35:13, 35:16, 35:22, 35:25, 36:15, 37:9, 48:24, 65:14, 71:14, 90:9
**relaxed** [1] - 91:8
**relevance** [1] - 49:10
**relevant** [1] - 14:12
**relies** [1] - 88:2

**relinquishment** [1] - 8:8
**rely** [5] - 14:8, 39:23, 81:1, 81:4, 81:6
**relying** [1] - 39:21
**Remedy** [1] - 33:6
**remind** [1] - 46:7
**render** [1] - 36:5
**rendered** [1] - 36:6
**renovation** [1] - 41:18
**repayment** [1] - 42:11
**repeat** [1] - 68:5
**repeated** [2] - 3:21, 6:12
**rephrase** [1] - 21:9
**report** [1] - 42:8
**Reporter** [1] - 1:24
**reports** [1] - 41:25
**repossession** [1] - 42:11
**represent** [7] - 3:12, 33:1, 56:9, 61:13, 64:21, 72:8, 72:14
**representation** [5] - 4:5, 7:22, 30:5, 30:14, 90:19
**representations** [6] - 7:20, 14:19, 36:18, 37:12, 38:7, 38:9
**represented** [6] - 3:10, 34:11, 54:14, 54:17, 61:15, 68:23
**representing** [1] - 59:15
**represents** [3] - 58:5, 72:15, 83:19
**requests** [1] - 5:23
**require** [1] - 5:25
**required** [4] - 5:24, 10:14, 13:12, 13:16
**reservation** [1] - 71:7
**reserve** [9] - 41:11, 60:22, 60:25, 67:20, 69:10, 77:3, 77:15, 84:3, 88:9
**reserved** [1] - 77:9
**reserving** [2] - 23:18, 71:15
**resolve** [2] - 31:18, 72:2
**resort** [1] - 13:25
**respect** [6] - 7:11, 8:24, 45:12, 71:8, 77:13, 83:4
**respectfully** [3] - 7:11, 8:13, 8:23
**respond** [2] - 3:6, 9:13
**responds** [1] - 90:5
**response** [3] - 60:8, 85:4, 92:5

**responses** [2] - 3:21, 3:22
**restitution** [3] - 49:24, 50:6, 50:11
**restrained** [3] - 13:24, 15:3, 15:9
**result** [2] - 8:21, 13:11
**returned** [1] - 3:9
**reverse** [2] - 85:2, 85:8
**review** [10] - 16:15, 16:19, 23:16, 50:9, 67:19, 73:13, 73:25, 76:19, 86:19, 86:23
**reviewed** [1] - 25:10
**reviewing** [1] - 54:24
**RICHARD** [1] - 1:19
**Richard** [1] - 2:12
**Richards'** [1] - 41:1
**Rick** [1] - 42:2
**Road** [3] - 1:22, 4:23, 5:3
**roadmap** [1] - 13:3
**Robert** [11] - 57:15, 58:7, 58:16, 58:17, 61:10, 62:21, 62:22, 66:15, 70:1, 72:16, 73:5
**Rojo** [1] - 6:23
**Ron** [1] - 41:1
**Rosenbloom** [1] - 42:2
**Rucchin** [4] - 53:14, 58:6, 58:8, 58:14
**Rucchin's** [1] - 55:2
**Rule** [14] - 3:15, 3:17, 3:22, 3:24, 4:6, 4:8, 7:9, 7:21, 7:23, 9:16, 9:17, 12:16, 30:7, 30:14
**ruled** [1] - 4:1
**Rules** [1] - 7:17
**rules** [3] - 14:6, 31:8, 91:7
**ruling** [1] - 52:22

## S

**Sag** [3] - 14:21, 19:2, 21:7
**sale** [1] - 82:5
**San** [10] - 6:22, 13:25, 14:24, 15:8, 17:4, 57:1, 78:24, 79:14, 80:9, 81:19
**SARITHA** [1] - 1:17
**Saritha** [1] - 2:9
**sat** [3] - 17:20, 21:17, 87:7
**saw** [1] - 22:17

**scammed** [1] - 14:16
**schedule** [10] - 7:18, 54:20, 75:8, 75:11, 75:12, 81:18, 82:6, 82:8, 82:11
**scheduled** [1] - 2:18
**scheme** [6] - 17:7, 21:7, 21:14, 21:15, 21:22, 22:1
**schemes** [9] - 14:13, 19:12, 21:5, 21:12, 35:19, 35:20, 36:1, 37:4, 49:5
**Schwab** [6] - 61:9, 61:18, 62:6, 63:7, 63:10, 82:19
**Sconzo** [1] - 64:23
**Sconzo's** [2] - 64:24, 65:1
**scope** [2] - 13:18, 49:15
**search** [4] - 29:24, 31:1, 31:6, 31:13
**seated** [1] - 2:14
**Second** [1] - 92:11
**second** [3] - 13:15, 37:10, 90:9
**Section** [4] - 13:14, 13:15, 14:25, 15:6
**secured** [1] - 46:10
**see** [9] - 31:12, 33:17, 34:24, 35:1, 37:21, 68:14, 71:25, 76:19, 82:1
**seek** [8] - 3:1, 4:19, 4:24, 5:1, 5:2, 5:13, 6:18, 12:3
**seeking** [7] - 4:11, 10:8, 10:19, 11:7, 13:3, 15:1, 15:7
**seeks** [4] - 9:6, 20:24, 60:5, 87:18
**seized** [1] - 13:24
**select** [1] - 83:21
**seller** [8] - 80:9, 80:24, 85:21, 85:23, 85:24, 85:25, 86:2, 86:11
**send** [1] - 70:9
**sending** [1] - 61:9
**sends** [3] - 53:25, 85:23, 86:1
**sense** [1] - 8:21
**sent** [13] - 43:25, 44:4, 44:7, 45:16, 46:12, 57:4, 64:18, 64:19, 64:24, 64:25, 66:22, 85:15, 85:24
**sentencing** [1] - 14:4
**separate** [4] - 21:5, 21:12, 33:18, 35:19

**separated** [2] - 26:20, 26:21
**September** [1] - 1:10
**Serge** [1] - 28:2
**Sergei** [2] - 28:5, 44:2
**set** [3] - 3:18, 21:6, 35:20
**settlement** [2] - 16:25, 19:5
**Settlement** [6] - 14:18, 21:14, 36:3, 40:17, 40:18, 69:2
**several** [1] - 67:18
**shortening** [1] - 79:13
**shortly** [1] - 35:15
**show** [7] - 11:9, 13:22, 18:12, 28:2, 32:21, 75:7, 81:19
**showed** [3] - 11:8, 70:1, 86:19
**showing** [3] - 45:21, 66:6, 75:10
**shown** [1] - 45:18
**shows** [4] - 26:13, 26:14, 46:19, 72:18
**sic** [1] - 66:21
**sidebar** [1] - 90:24
**sides** [1] - 2:19
**signed** [1] - 33:8
**significant** [1] - 7:25
**silence** [2] - 35:12, 37:4
**similar** [3] - 37:11, 52:25, 54:17
**simply** [5] - 9:1, 12:15, 35:17, 36:13, 61:22
**single** [1] - 38:3
**Smith** [4] - 65:6, 65:15, 65:16, 73:2
**Society** [5] - 3:11, 28:22, 29:13, 32:1, 33:4
**society** [2] - 28:17, 28:20
**sold** [2] - 43:20, 45:6
**sole** [1] - 60:4
**Somerset** [1] - 6:21
**somewhere** [1] - 81:21
**soon** [2] - 53:19, 53:24
**sorry** [17] - 9:25, 20:3, 32:12, 33:21, 34:13, 48:2, 48:5, 50:19, 50:21, 52:14, 57:16, 68:5, 75:13, 75:19, 78:13, 78:15, 81:10
**sort** [1] - 91:18
**sought** [4] - 7:9, 8:18, 10:5, 18:8

**source** [3] - 44:1, 44:5, 44:8
**Southwest** [1] - 42:1
**speaking** [1] - 59:8
**special** [3] - 5:24, 14:11, 35:18
**specialized** [1] - 36:7
**specific** [11] - 4:23, 7:9, 8:18, 9:8, 17:2, 30:6, 35:15, 36:7, 49:5, 76:14, 90:19
**specifically** [12] - 3:9, 3:12, 3:16, 6:8, 10:7, 10:8, 21:12, 41:13, 57:7, 76:3, 80:5, 90:13
**specificity** [1] - 77:10
**speculative** [1] - 36:20
**spell** [1] - 16:5
**spreadsheet** [3] - 19:11, 20:9, 41:2
**stage** [1] - 11:6
**stamp** [1] - 31:13
**stand** [1] - 39:18
**standing** [8] - 2:25, 9:10, 11:22, 52:16, 57:22, 61:23, 65:9, 71:17
**start** [2] - 88:11, 91:18
**started** [1] - 12:25
**statement** [2] - 62:19, 87:8
**statements** [1] - 87:12
**status** [2] - 56:19, 78:18
**statute** [1] - 5:6
**statutory** [1] - 10:4
**Ste** [1] - 1:19
**stenographer** [1] - 70:18
**stenography** [1] - 2:1
**Steven** [1] - 53:14
**Stevenson** [1] - 65:4
**Stewart** [1] - 85:18
**still** [1] - 90:8
**stipulated** [2] - 62:6, 62:7
**stop** [1] - 55:10
**straight** [6] - 18:1, 24:6, 24:9, 24:13, 26:23, 27:14
**Stuart** [1] - 53:20
**stuff** [1] - 52:19
**Stumpel** [2] - 85:23, 86:1
**Stumpel's** [1] - 86:10
**stylized** [2] - 6:9, 6:10
**subject** [3] - 23:9, 57:22, 61:23
**submission** [1] - 5:23

**submit** [7] - 7:6, 49:24, 91:22, 91:25
**submits** [3] - 13:9, 90:6, 91:11
**submitting** [2] - 31:10, 40:8
**subpoena** [8] - 70:23, 70:25, 71:10, 71:13, 71:22, 72:6, 85:5
**subpoenas** [1] - 83:11
**subsequent** [6] - 6:7, 8:7, 8:8, 16:14, 71:13, 76:22
**subsequently** [2] - 6:25, 62:21
**substance** [5] - 17:19, 17:21, 32:10, 39:10, 56:8
**sue** [1] - 40:19
**Sugar** [11] - 14:2, 14:22, 15:3, 17:5, 17:6, 27:19, 28:4, 28:7, 31:25, 33:2, 33:3
**suggest** [3] - 7:11, 8:13, 8:23
**suggesting** [1] - 12:7
**sum** [3] - 32:10, 39:10, 56:8
**summarized** [1] - 14:11
**summary** [7] - 23:15, 40:11, 43:16, 52:6, 52:8, 57:25
**supplement** [1] - 5:8
**supplemented** [1] - 5:10
**supplied** [1] - 87:19
**supply** [4] - 3:14, 5:5, 5:6, 91:7
**supposed** [7] - 17:10, 17:25, 33:14, 43:12, 45:10, 46:9, 58:14
**surprise** [2] - 12:11, 49:25
**sustained** [1] - 50:2
**sworn** [1] - 16:3
**Sydor's** [1] - 44:6

**T**

**ten** [1] - 55:9
**ten-minute** [1] - 55:9
**term** [1] - 37:8
**terms** [8] - 12:2, 22:8, 23:22, 36:19, 50:5, 56:11, 60:3, 77:14
**testifies** [1] - 48:23
**testimony** [28] - 14:12, 16:14, 16:15, 19:10,

19:17, 20:11, 20:25, 22:6, 23:3, 23:17, 24:15, 34:7, 36:16, 50:4, 50:7, 58:12, 63:18, 67:1, 67:2, 74:25, 76:1, 76:8, 76:12, 76:17, 79:6, 83:4, 90:21, 91:17
**theories** [1] - 13:10
**thereafter** [4] - 3:11, 3:16, 3:20, 4:16
**third** [3] - 77:17, 91:5, 91:6
**Tietell** [1] - 53:20
**Tim** [1] - 33:23
**timely** [1] - 7:13
**timing** [1] - 23:18
**Title** [1] - 85:19
**today** [7] - 11:13, 12:23, 19:10, 56:19, 67:4, 78:19, 92:8
**together** [1] - 11:1
**TOMMY** [1] - 1:8
**Tommy** [7] - 1:9, 33:15, 42:22, 43:21, 43:22, 43:24, 47:16
**took** [2] - 27:1, 49:19
**total** [15] - 16:20, 25:24, 27:8, 34:8, 34:12, 35:9, 40:21, 50:14, 56:16, 59:3, 67:23, 72:19, 75:1, 77:6, 77:7
**toward** [1] - 43:3
**towards** [4] - 42:5, 53:13, 55:3, 79:1
**trace** [14] - 41:10, 41:13, 46:2, 50:4, 50:25, 51:7, 51:19, 57:3, 57:8, 69:20, 69:24, 73:10, 78:25, 79:3
**traceable** [7] - 10:10, 13:17, 15:1, 15:8, 15:10, 16:17, 16:24
**traced** [2] - 80:6, 85:15
**tracing** [1] - 53:3
**trade** [1] - 49:7
**transaction** [7] - 26:14, 28:1, 35:15, 36:11, 48:25, 59:15, 73:16
**transactions** [1] - 28:10
**transcript** [3] - 2:2, 90:18, 92:9
**TRANSCRIPT** [1] - 1:8
**transfer** [1] - 63:6
**transfers** [4] - 76:23,

80:11, 82:18, 82:19
**transpired** [3] - 3:20, 8:7, 12:12
**travels** [1] - 44:15
**trial** [107] - 4:4, 4:7, 4:9, 4:10, 4:17, 5:4, 5:20, 5:21, 6:2, 6:16, 7:8, 7:10, 7:16, 7:22, 7:24, 8:3, 8:12, 9:23, 10:2, 10:4, 12:6, 13:7, 14:9, 14:12, 14:15, 16:14, 16:15, 17:8, 17:20, 18:1, 18:5, 18:7, 18:11, 18:23, 19:1, 19:4, 19:17, 20:11, 20:25, 21:1, 21:3, 21:10, 21:11, 21:18, 21:20, 22:14, 23:2, 25:15, 26:3, 26:5, 26:8, 26:9, 30:12, 30:18, 32:11, 32:16, 32:22, 33:11, 33:25, 34:7, 34:16, 35:4, 35:18, 36:15, 37:25, 40:12, 40:16, 41:3, 41:4, 42:4, 42:19, 42:22, 43:1, 43:17, 46:7, 46:15, 46:16, 47:2, 47:11, 47:19, 51:15, 52:19, 52:21, 55:5, 58:9, 60:17, 60:18, 61:11, 61:15, 62:12, 72:6, 74:25, 76:1, 76:4, 76:8, 79:7, 79:17, 79:22, 80:1, 83:20, 85:7, 90:12, 90:17
**tried** [4] - 4:12, 4:14, 52:21, 60:18
**tries** [1] - 11:19
**true** [1] - 21:18
**Trust** [2] - 18:13, 88:5
**try** [1] - 49:22
**trying** [5] - 12:23, 30:15, 32:16, 72:10, 76:20
**turned** [1] - 21:10
**turner** [1] - 65:4
**twofold** [1] - 7:5
**type** [3] - 42:11, 81:17, 83:14
**Tyson** [6] - 59:15, 59:17, 59:21, 60:3, 60:12, 60:16

**U**

**Ula** [21] - 18:18, 45:17, 51:1, 51:9, 51:10,

52:2, 53:24, 57:18, 58:7, 81:2, 82:22, 85:23, 86:3, 86:4, 86:21, 86:24, 87:10, 87:13, 88:15, 88:22
**unauthorized** [1] - 37:17
**under** [1] - 56:13
**undeveloped** [1] - 57:1
**unit** [33] - 4:25, 43:16, 43:18, 44:11, 44:12, 44:17, 44:23, 45:6, 45:9, 45:10, 45:13, 45:15, 46:3, 46:6, 47:5, 47:7, 50:15, 51:4, 51:7, 51:9, 51:17, 51:19, 53:13, 53:21, 54:1, 54:6, 54:9, 54:15, 55:3, 55:16, 56:17, 56:19
**UNITED** [3] - 1:1, 1:3, 1:12
**United** [4] - 1:6, 1:14, 1:18, 2:8
**units** [11] - 14:20, 17:3, 43:5, 45:15, 45:25, 46:23, 54:4, 54:21, 54:25, 90:21
**universe** [1] - 8:5
**unless** [1] - 31:16
**unsworn** [1] - 67:4
**US** [1] - 31:18
**USA** [1] - 2:5
**USC** [4] - 13:14, 13:15, 14:25, 15:6
**utilizing** [2] - 7:3, 83:22

**V**

**various** [2] - 5:20, 53:3
**Vegas** [1] - 14:21
**venture** [1] - 46:13
**ventures** [5] - 17:11, 27:12, 27:15, 49:20, 49:21
**Ventures** [6] - 5:13, 6:13, 9:22, 62:19, 79:11, 80:2
**verdict** [6] - 5:24, 6:7, 6:20, 35:18, 36:6, 36:7
**verified** [1] - 60:12
**verify** [2] - 30:15, 75:23
**verifying** [1] - 85:4
**version** [1] - 41:14
**versus** [2] - 2:5, 12:4

**Veterans** [1] - 1:19
**victim** [6] - 19:12, 26:5, 27:12, 37:20, 40:22, 91:10
**victims** [11] - 14:13, 14:16, 24:4, 24:6, 24:12, 26:2, 27:4, 27:9, 35:8, 66:13, 91:9
**victims'** [1] - 14:19
**view** [2] - 22:24, 36:11
**violation** [1] - 7:13
**violations** [3] - 13:21, 15:3, 15:11
**virtually** [1] - 21:17
**Vitalli** [5] - 68:8, 68:18, 69:21, 70:2, 72:15
**Vitalli's** [1] - 68:24
**voir** [2] - 20:16, 45:3
**VOIR** [2] - 20:19, 93:5

## W

**W-A-Y-N-E** [1] - 16:8
**wait** [2] - 45:4, 81:25
**waive** [1] - 8:15
**waived** [1] - 6:2
**wants** [1] - 72:5
**warrant** [4] - 29:25, 31:2, 31:6, 31:14
**Wayne** [31] - 14:11, 15:21, 16:7, 16:12, 16:14, 20:21, 20:23, 24:3, 24:22, 25:21, 29:1, 31:24, 34:7, 39:2, 39:21, 40:15, 43:9, 47:15, 48:14, 50:14, 53:11, 55:15, 58:4, 61:5, 67:23, 68:16, 69:20, 72:13, 85:14, 88:11, 89:12
**WAYNE** [2] - 16:1, 93:2
**wherein** [1] - 7:1
**wire** [10] - 13:8, 13:13, 15:2, 36:6, 63:6, 76:23, 82:18, 82:19
**wished** [1] - 6:1
**withdrawn** [1] - 78:15
**witness's** [1] - 81:11
**witness)** [1] - 41:24
**witnesses** [3] - 5:20, 67:3, 89:16
**wondering** [1] - 48:23
**words** [3] - 21:25, 26:19, 75:4
**worry** [1] - 37:5
**worth** [2] - 26:16, 43:23

**written** [5] - 53:20, 53:25, 54:3, 64:22, 65:20

## Y

**Y-a-c-h-m-e-n-e-v** [1] - 68:8
**Yachmenev** [8] - 68:13, 68:18, 68:21, 69:15, 69:21, 70:2, 72:15, 73:4
**Yachmenev's** [1] - 68:3
**YORK** [1] - 1:1
**York** [5] - 1:6, 1:15, 1:20, 1:23, 1:25