*HALEY WEINBLATT & CALCAGNI, LLP*
1601 Veterans Memorial Highway, Suite 425
Islandia, New York 11749
631-582-5151

May 24, 2016

Hon. Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

                    RE: <u>United States v. Philip Kenner</u>
                         Docket Number: 13-607 (JFB)

Dear Judge Bianco:

      This letter is written on behalf of the defendant, Philip A. Kenner, to interpose the following objections to the pre-sentence report ("PSR") with respect to various enhancements under the United States Sentencing Guidelines ("Guidelines").

**Objection to Adjustment for Obstruction of Justice**

      In paragraphs 55 and 71 of the PSR, a two-level Guideline enhancement for obstruction of justice is premised upon the contents of paragraph 43 of the PSR in which it is alleged that Kenner engaged in witness tampering and committed perjury during the course of his trial testimony. The instances of witness tampering concern an allegation that Kenner told an unidentified witness to avoid being served with a government trial subpoena and purportedly sought to preclude the testimony of John Kaiser and Ken Jowdy at trial by commencing a criminal action in Mexico against them in connection with the Los Frailes real estate venture. Paragraph 43 of the PSR further alleges that Kenner committed perjury with respect his denial of forging Kaiser's signature on a "funding/consulting agreement"; falsely testified that the "Home Depot" tape had been modified; and falsely testified that "...he entered into an official loan agreement" with Ken Jowdy.

      With respect to the allegation that Kenner testified falsely concerning the existence of an "official loan agreement" with Ken Jowdy, the defendant relies upon the record proof adduced at the forfeiture hearing and Kenner Exhibits F-1 (Jowdy testimony), F-4 (Kaiser testimony) and F-25 (Robert Gaudet testimony with exhibit of "Revolving Line of Credit Loan") which substantiate, under oath, the existence of a written loan agreement between Kenner and Jowdy. Kaiser's testimony before the American Arbitration Association on May 30, 2009 concerning the Kenner to Jowdy loan is clear and succinct: "Q. Has this ever been a secret that Mr. Kenner lent this money

to Mr. Jowdy?  A. No." (F-4, pg. 86, line 25 - pg. 87, line 2).  Ironically, the government alleges that Kenner obstructed justice in this regard yet persists in the false claim--both a trial and during the course of the forfeiture hearing--that no such loan agreement exists despite the statements made by Kaiser to federal law enforcement agents detailing the history of the loans as embodied in the "Kaiser 302", dated 10/19/10 (F-3, full reproduction) and the "Jowdy 302", dated 3/24/10, in which he states to federal agents that the money ("$")  received  from "Little Isle IV" and "Ula Makika" by "B Develop." and "DDM" were "loans" (Government  Exhibit, 3500-KJ-2, 13-CR-607).

Kenner's testimony, outside the presence of the jury, with respect to the "Home Depot" tape was not concluded before he, during re-direct examination, fully authenticated the tape by testifying that it was a complete and accurate to the best of his memory, thus allowing its introduction into evidence by the government.  Notably, the tape was authenticated by Kenner before the government's FBI computer expert testified at trial that the metadata of the recording indicated that it had not been modified.  Under such circumstances, neither Kenner's truthful testimony concerning the loan agreement with Jowdy nor his complete testimony resulting in the authentication of the "Home Depot" tape constitute obstruction of justice within the meaning of Guideline 3C1.1

Kenner's denial of forging Kaiser's signature on the "funding/consulting agreement" is unequivocal.  Although the government presented expert testimony concerning the signature "John Kaiser" as it appears on the Agreement as a forgery, such testimony was not unequivocal.  To the contrary, the government's handwriting expert, John Paul Osborn, qualified his opinion in terms of probability, *i.e.* "highly probable", rather than one of certainty (Osborn -direct/Miskiewicz, pg. 3692, lines 1-7; Kenner Exhibit 105).  Of course,  Kaiser's credibility as a government witness was undermined by his obvious bias and previous statements to federal agents wholly inconsistent with his trial testimony regarding the Jowdy loan  as noted above.[1]  Moreover, the guilty verdict on six of the nine counts of the indictment does not necessarily implicate a finding by the jury that Kenner committed perjury in this regard.  Simply put, the trial testimony of Kenner on this disputed matter does not rise to the level to warrant a finding that he wilfully perjured himself on a material matter so as to support a Guideline 3C1.1 enhancement.  *See* United States v. Thompson, 808 F.3d 190 (2nd Cir. 2015).

With respect to the remaining allegations of witness tampering in support of  an obstruction of justice enhancement (PSR ¶ 43, first paragraph), Kenner requests a Fatico hearing on these disputed issues of fact.  United States v Fatico, 603 F.2d 1053 (2nd Cir. 1979); s*ee* United States v. Lee, 653 F.3d 170, 174 (2nd Cir. 2011) ("...a defendant...has a due process right to contest  errors in the PSR that affect his sentence...(and)  should not be punished for doing so"); *see also* United States v. Guerra, 888 F.2d 247, 251 (2nd Cir. 1989).

## Objection to Loss Calculation

At the outset, Kenner objects to that portion of the loss calculation as set forth in paragraph 42 of the PSR which includes alleged losses related to Los Frailes ($7,386,000.00), Baja Ventures 2006 ($250,000.00), The Palms Resort ($5,162,000.00) and Eclipse Aerospace ($745,000.00).  The foregoing business ventures are also alleged to constitute Relevant Conduct (uncharged crimes)  for Guideline purposes as set forth in paragraphs 30 through 41 of the PSR.  As far as Eclipse Aerospace

is concerned, the PSR makes no mention of Kenner's involvement in the transaction yet it is included as part of Kenner's loss calculation. In any event, Kenner requests a <u>Fatico</u> hearing on the Loss Calculation and Relevant Conduct Guideline enhancements with respect to Cabo San Lucas (Loss Frailes) Investment (PSR ¶ 30), Baja Ventures 2006, LLC (PSR ¶'s 31-34), Palms Resort Investment (PSR ¶'S 35-38) and Eclipse Aerospace (PSR ¶'s 39-41).

In paragraph 42 of the PSR, it is noted that the "(G)overnment has not provided information regarding the extent in which victim investors have been reimbursed or compensated via the resale of real estate properties." Although the development and resale of the Hawaii properties was foreclosed by the collapse of Lehman Brothers as revealed at trial, there remains a viable civil lawsuit to recover the money loaned to Jowdy by the hockey player investors, who presently are members of Na'alehu Ventures 2006, parent company to Little Isle IV. As of this date, the 5.5 million dollar loan to Jowdy, with accumulated interest, approximates 22 million dollars. While such a factor may not fall within the <u>Application Notes</u> to Guideline 2B1.1, it is submitted that the unique facts of this case fall outside the "heartland" of cases such that the potential recovery of the Jowdy loan, with interest, by Kenner's hockey player clients, who remain as members of the Hawaii LLC's, should be credited against the $8,651,542 "Line of Credit" loss as set forth in paragraph 42 of the PSR for Guideline purposes. *See generally* USSG § 2B1.1, cmt. n.3(E)(I). Alternatively, the legal obligation incurred by Jowdy in favor of Kenner's hockey player clients through Kenner's efforts as managing member of Little Isle IV and Ula Makika ought to be considered by the Court as part of the nature and circumstances of the offense under 18 U.S.C. § 3553(a).

The PSR also overlooks the fact that several of Kenner's hockey player clients recovered a portion of their collateral through negotiated settlements with Northern Trust (Nolan-direct/Miskiewicz, pg. 2074, lines 1-10, $500,000; Peca-direct/Miskiewicz, pg. 436, lines 1-15, $600,000; Berard-direct/Miskiewicz, $300,000). Pursuant to subdivision 3(E)(ii) of the *Application Notes* to Guideline 2B1.1, it is submitted that such reimbursement for loss may be considered as a credit against loss with respect to the individual hockey player client. Parenthetically, it is noted that Northern Trust has not reported any loss on their part to the Probation Department as of the date of the PSR (PSR ¶ 42).

Finally, Kenner request that the Probation Department provide a copy of the affidavits of loss referenced in paragraph 48 of the PSR, *i.e.* Steve Rucchin, Tyson Nash, Turner Stevenson, William Ranford, Jay McKee, Owen Nolan and Michael Peca. Kenner also objects to the restitution/loss calculations set forth in paragraph 47 of the PSR unsupported by affidavits of loss from Bryan Berard ($1,124,405.00), Sergei Gonchar ($899,221.00), Ethel Kaiser ($700,000.00) and Daryl Sydor ($1,256,200.00). Indeed, such loss calculations likely include losses associated with hockey player investments in Los Frailes, Baja Ventures 2006 and the Palms Resort to which Kenner objects. Upon receipt of the affidavits of loss, Kenner reserves the right to supplement his objections to the PSR, in addition to addressing the amount of restitution to be ordered by the Court.

**Objection to USSG § 2B1.1(b)(2)(A) Enhancement**

In paragraph 60 of the PSR, it is alleged that the offense involved more than ten victims thus warranting a two-level enhancement under Guideline 2B1.1(b)(2)(A). Of the four "fraudulent

schemes" alleged in the indictment, only the Hawaii real estate venture involved ten or more victims. In paragraph 29 of the PSR, these victims are identified as Bryan Berard, Sergei Gonchar, Ethel Kaiser, John Kaiser, Glen Murray, Tyson Nash, Owen Nolan, Michael Peca, Steve Rucchin and Darryl Sydor–ten in all. Based on her trial testimony, Ethel Kaiser did not sustain an actual loss as a consequence of her investments in the Hawaii real estate and she was not a "Line of Credit" contributor. Since the *Commentary* to Guideline 2B1.1 defines "victim" as "(A)ny person who sustained any part of actual loss...or any person who sustained bodily injury as result of the offense, the "victims" associated with the Hawaii real estate venture total nine, not ten.

It is recognized that additional "victims" may be identified with respect to Jay McKee (Global Settlement Fund), Turner Stevenson (Global Settlement Fund) and William Ranford (Eufora and Global Settlement). Nicholas Privitello is not included as a "victim" of Kenner due to his acquittal on Counts Five and Six of the indictment. Because the jury did not render a special verdict, it may not be assumed that the defendant's were convicted by the jury on each of the fraudulent schemes as alleged in the superseding indictment, although the Probation Department makes such an assumption. Here, the application of the instant enhancement will turn on the Court's evaluation of the offense of conviction. Thus, if the Court determines that the offense of conviction involved each of the "fraudulent schemes" alleged in the indictment, including the Hawaii real estate venture, the enhancement applies. Absent such a finding, only Berard (Led Better), McKee (Global Settlement Fund), Stevenson (Global Settlement Fund), Murray (Eufora and Global Settlement Fund), Nash (Eufora and Global Settlement Fund) Peca (Eufora and Global Settlement Fund) Ranford (Eufora and Global Settlement Fund) and Sydor (Eufora and Global Settlement Fund), eight in all, may be considered "victims' for purposes of Guideline 2B1.1(b)(2)(A) and the enhancement is therefore unwarranted.

## Objection to USSG § 2B1.1(10)(C) Enhancement

In paragraph 61 of the PSR, it is alleged that the offense of conviction involved "sophisticated means" thus warranting a two-level enhancement under Guideline 2B1.1(10)(C). Again, the application of such an enhancement, if at all, may turn upon the Court's evaluation of the offense of conviction. In any event, Kenner objects to the enhancement as argued below.

Despite the finding of the Court that the case was "complex" for purposes of speedy trial as conceded by the defendants, such a finding does not necessarily equate to "sophisticated means" under Guideline 2B1.1. Within the four corners of the indictment, the alleged fraudulent schemes were premised upon fraudulent representations to induce hockey player investments and the unauthorized diversion of such investments for personal gain. Here, Hawaii land investments were made, Eufora was not a fictional entity, Jowdy reneged on his loan obligation which served as the predicate for the Global Settlement Fund and the Sag Harbor property was purchased and sold. The Government's theory of prosecution rested upon false representations and material omissions which constitute the "garden variety" of wire and mail fraud prosecutions. The fact the government supported its case through the introduction of a large volume of financial records or that a number of legitimate limited liability companies (LLC's) were created in furtherance of the Hawaii development project is insufficient to characterize the offense of conviction as involving "sophisticated means".

Under *Application Note 8* to U.S.S.G § 2B1.1, "sophisticated means" is defined as an "especially complex or intricate offense conduct pertaining to the execution or concealment of an offense." Included within the definition is "(C)onduct such as hiding of assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts...". As previously noted, the Hawaii LLC's, as well as Eufora, were not mere corporate shells without offices, personnel or business accounts. The indictment alleged that Kenner and Constantine engaged in deceptive and fraudulent business practices to mislead investors, and utilized the mail and wire in furtherance of their criminal activity, but such activities did not constitute "especially complex or intricate offense conduct" within the meaning of *Application Note 8* to Section 2B1.1.

### Objection to USSG § 3B1.1 Enhancement

In paragraph 63 of the PSR, it is alleged that Kenner was the "organizer or leader of a criminal activity involving five or more participants or was otherwise extensive" thus warranting a four-level enhancement under Guideline 3B1.1. Presumably, the Probation Department is relying upon the "otherwise extensive" phase in the Guideline provision to support the enhancement inasmuch as no person, other than Constantine, was alleged in the indictment or at trial to be co-conspirator of Kenner.

In United States v. Manas, 272 F.3d 159, 166 (2nd Cir. 2001), the Court wrote that the following factor are to be considered by the sentencing court in determining whether the criminal activity upon which the defendant was convicted was "otherwise extensive" under Guideline 3B1.1

  (I)   the number of knowing participants
  (ii)  the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent
  (iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme.

At trial, the government presented only one witness, Timothy Gaarn, who conceivably was an unknown participated in the Eufora investments purportedly led and directed by Kenner with specific criminal intent. As alleged in the indictment and at trial, the Hawaii land development project, Eufora and the Global Settlement Fund were conspiracies in which only Kenner and Constantine were knowing participants who had direct contact with Kenner's hockey player clients. To the extent that other persons were involved in the Hawaii land development project--as consultants, attorneys, architects and the like–they were not "peculiar and necessary" to the alleged fraud, *i.e.* misrepresentations regarding the use of investor's money and the diversion of investor money for personal benefit." Accordingly, Kenner objects to the application the instant Guideline enhancement and requests a Fatico hearing should the government proffer additional co-conspirators in support of such an enhancement.

It is noted that Kenner also objects to the repetition of the Guideline 3B1.1 enhancement in paragraph 68 of thee PSR wherein it is alleged that he was an "organizer of criminal activity" with respect the count of conviction for conspiracy to launder money. Like paragraph 63 of the PSR, the enhancement is not supported by specific factual allegations in paragraphs 10 through 28 of the PSR

regarding (I) the number of knowing participants in the money laundering conspiracy (ii), the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent or in the money laundering conspiracy or (iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme involving the money laundering conspiracy.

## Conclusion

Based upon the foregoing, Kenner objects to the Guideline enhancements identified in the preceding paragraphs and requests that the Guideline calculation be amended and reduced accordingly. Additionally, Kenner requests a <u>Fatico</u> hearing on the disputed issues of fact set forth in this letter.

Very truly yours,

***Richard D. Haley***

RICHARD D. HALEY

cc: All counsel of record via ECF
    USPO Shayna Bryant  via U.S. Mail

---

[1] In <u>Philip A. Kenner v. John Kaiser et al.</u>, CV 2012-055576  (Az. Sup. Ct, Maricopa Cty), the Hon. John R. Hanna, Jr. rendered a decision, dated July 22, 2015, in which he wrote:

> "(T)he court generally did not find Kaiser's testimony credible. Some
> of the reasons are stated elsewhere in these Findings.  In addition,
> Kaiser's testimony in general was frequently self-contradictory and
> self-serving, his demeanor at times suggested lack of veracity, and
> he had an obvious motive for denying responsibility for the loans."
> (*Decision,* ¶ 26)

Claiming that Kenner forged his signature, Kaiser denied signing promissory notes to Interveners, Daryl Sydor, William Ranford and Dimitri Khristich.  In his 13 page decision, Judge Hanna categorically rejected Kaiser's trial testimony finding in favor of Sydor, Ranford and Khristich.