

**Michael Morrissey**
P 602 358 0298 | M 602 828 0114
michael@mitchellsteincarey.com

One Renaissance Square, 2 North Central Ave.
Suite 1900, Phoenix, AZ 85004
P 602 358 0290 | F 602 358 0291
MitchellSteinCarey.com

June 9, 2016

Honorable Joseph F. Bianco
United States District Court Judge
Eastern District of New York
100 Federal Plaza
New York, NY   11722

    Re: United States v. Tommy Constantine
      Criminal Docket No. 13-607 (S-I) (JFB)
      <u>Reply in Support of Motion for New Trial and Motion for Judgment of Acquittal</u>

Dear Judge Bianco:

  I. <u>The Government's Failure to Prove An Agreement to Commit a Crime Requires an Acquittal of the Conspiracies Charged in Counts 1 and 9.</u>

In its Response to Constantine's assertion of insufficiency of evidence, the government relies upon the volume of its evidence, rather than point to evidence of an actual agreement between Constantine and Kenner.  ECF 370 at 2 ("government called 39 witnesses and introduced more than a thousand exhibits… to show that Constantine and Kenner defrauded numerous investors.")  However, because the government's voluminous evidence did not establish the missing element of an actual agreement between Constantine and Kenner, this Court should enter an acquittal on Counts 1 and 9.  As the 9th Circuit recently emphasized in *United States v. Loveland*, No. 13-30162, 2016 WL 3156308, at 1 (9th Circuit June 3, 2016), in reversing a conspiracy conviction:

> Conspiracy means an agreement to commit a crime, not commission of a crime. Though that might sound less serious to a layman, lawyers know that the conspiracy charge affects much

Page 1

>  about trial and sentencing, all to the advantage of the prosecution. A conspiracy charge imposes one substantial disadvantage to the prosecution: the prosecution must prove the existence of an agreement beyond a reasonable doubt. The agreement can be explicit or tacit, and can be proved by direct or circumstantial evidence, including inferences from circumstantial evidence, but it still has to be proved. Without an agreement, there is no conspiracy.

(footnotes in original omitted). In asserting the sufficiency of its evidence, the government's reliance on *United States v. McGinn*, 787 F.3d 116 (2d Cir. 2015), is misplaced, as *McGinn* in fact highlights what is missing on this record. In finding sufficient evidence to support a conspiracy conviction, the *McGinn* Court emphasized "joint" activity by co-defendants – diverting funds together, and submitting false documents together. Id. at 124. In contrast, in the case at bar, the government pled a conspiracy spanning from 2002 to 2013 [ECF 214 at 6] that bore no relation to the actual dealings between Constantine and Kenner, and the proof at trial did not show a joint agreement. Accordingly, the government's reliance on the principle that a defendant need not participate in every act of a conspiracy to be culpable [ECF 370 at 24] misses the point – many acts occurred. The issue is whether the acts were the product of an agreement between Constantine and Kenner to commit a crime. They were not.

    A.  Hawaii Project

The government's Response re-states Kenner's role in obtaining investments for the Hawaii project and in establishing lines of credit for the investors. ECF No. 370 at 2-4. Regarding any agreement between Constantine and Kenner to commit a crime in this time frame, however, the government offers only its view that Lehman should not have funded the loan for the Hawaii project. Further, the government's assertions that the record supports that the "Urban Expansion loan was completely unnecessary" and that "Lehman was simultaneously offering to take a substantial stake," [ECF 370 at 4] is belied by the transcript. Transcript 4307-8, cited by

Page 2

the government, directly contradicts those claims. At Tr. 4307-8, Kenner testified that "Lehman changed their deal requirements with me significantly" and therefore he was "in a very precarious position." While Lehman was in fact offering money, it was not "in the best interest of the project to close with Lehman Brothers." Tr. at 4309. Notably, absent from these facts is any agreement by Constantine to do anything illegal, or even any role at all with respect to Kenner's rejection of the Lehman loan. Kenner, and only Kenner, obtained the investments in Hawaii and rejected Lehman's terms. See ECF 346 at 3, Constantine's Post Trial Motion for Acquittal, citing trial testimony of K. and M. Peca, Mascarella, Sydor, Murray and Kenner.

Approximately 6 weeks after Kenner rejected Lehman's terms, Constantine and Grdina provided funding for the Hawaii project through the Urban Expansion Loan. Providing funding for a project is normal business activity, and the fact that Constantine eventually received money from re-payment of that loan [Tr. at 2443-2445] is not proof of any joint illegal agreement between Kenner and Constantine.[1]

The government makes the inconsistent assertions that Constantine was "involved in efforts to cover up his part in the Hawaii fraud," while at the same time boasting about his Hawaii deal. [EFC 370 at 6] While the government cites the trial testimony of Sydor, Rucchin, and Gonchar for its claim that Constantine hid his involvement, no rational trier of fact could have found from that testimony that Kenner and Constantine jointly "kept Constantine's receipt of Hawaii funds hidden from investors." [ECF 370 at 6] To the contrary, that testimony supports the lack of joint activity between Kenner and Constantine. The years in question – 2003 and 2004 – predated Constantine's involvement. See, Tr. at 2164-5 (Sydor did not know Constantine in 2003 and 2004); Tr. at 2720-4 (Rucchin did not know Constantine in 2003 when

---

[1] Trial testimony established that Constantine provided his $1.5 million contribution to the loan through a series of transfers totaling $1.5 million. Tr. at 3958-68 [detailing transfers from Constantine into Kenner's accounts]. See also Tr. at 1208, 2997-3002 [funding arrangements from Urban Expansion].

Page 3

Kenner involved Rucchin in Hawaii); Tr. at 4852 (Gonchar invested with Constantine in 2008, did not meet him until 2009). Notably, in Closing Argument, the government did not point to any evidence of a joint agreement with respect to the Hawaii object of the conspiracy. Instead, the government asserted in conclusory fashion that Constantine and Kenner were "intertwined" financially and therefore with respect to the Hawaii object. See Tr. at 5711-14. In light of that failure of proof, there was insufficient evidence for any trier of fact to have found a conspiratorial agreement to engage in illegal activity as to that object.

      B.  Eufora

In its Response, as with the Hawaii object of the conspiracy, the government asserts that Kenner and Constantine jointly undertook activity and thereby conspired with respect to Eufora money. See ECF 370 at 7, 9 (claiming proof of "active" scheming between the two to "use the money on themselves and their various debts"). The government points "[i]n particular" to the wire transfers charged in Counts Two through Four as proof as joint conspiratorial activity. ECF 370 at 10. However, because no rational trier of fact could have found that the conduct underlying Counts Two through Four was joint activity, this rationale does not support the sufficiency of the conspiracy conviction.

The government asserts that the wire transfers in Counts Two and Three were for "Constantine's personal benefit." Id. No rational trier of fact could have made that finding. In Count 2, Gaarn transferred $30,000 at Kenner's direction from Gaarn's Wachovia account to Kaiser's account, as a "favor" to Kenner that Constantine had "[n]othing to do with." Tr. at 2632-3; 2493-4, 2629. Kaiser, the recipient of Gaarn's favor, similarly testified that Constantine had no involvement with this transaction and that the wire related to money Gaarn owed Kenner. Tr. at 1046-48. Accordingly, the trial testimony flatly contradicts the government's view of this

Page 4

evidence, and does not support the absent element of a joint agreement to engage in illegal activity.[2]

Similarly, no rational trier of fact could have found that the conduct underlying Count 3 was part of joint activity between Kenner and Constantine, much less for "Constantine's personal benefit." In Count 3, Kaiser wired $25,000 to Kenner because Gaarn had mistakenly wired money to Kaiser. Tr. at 1049 [Kaiser]. The wire dealt with the Paradise Valley property as to which there were no allegations of fraud by the government. Tr. at 1040.

In its Response, the government acknowledges that Count 4 "represented Kenner's use of investor money on a personal expense (reimbursement for Kaiser's construction work on properties in Paradise Valley and Hermosa Beach)." ECF 370 at 10. Having acknowledged that point, it follows that the evidence in Count 4 is insufficient to sustain the substantive verdict against Constantine, and no rational trier of fact could have relied upon the Eufora wires as charged in Counts 2-4 as proof of joint illegal activity between Kenner and Constantine.

### C. The Home Depot Tape

The transcript of the Home Depot tape does not support the government's interpretation of it as an admission by Constantine that he helped cover up fraud with respect to Eufora. See ECF 370 at 11. To the contrary, in that tape Constantine related in plain terms things Kenner had done – transferring investor money in and out of Eufora's accounts to Tim Gaarn and Kenner's accounts – and told Kenner that Kenner was accountable for those actions. GX-4500. As noted previously, trial testimony by Gaarn, Kaiser and Kenner established that Constantine had no role in these actions, despite being named in substantive Counts 2-4. In context, it is clear that in the Home Depot conversation Constantine is not referring to joint activity Kenner and Constantine

---

[2] The Court itself raised the issue of the apparent lack of evidence connecting Constantine to Gaarn's wire transactions. Tr. at 5212. The government's theory that Constantine was somehow aware of these transactions was contradicted by each trial witness.

Page 5

undertook together in the past. Rather, Constantine is seeking to end the civil litigation for control of Eufora that was actively being litigated in August, 2010, the time frame in which the tape was made. On tape, Constantine told Kenner:

> [t]he whole Eufora thing is done. Everyone thinks we're lying and playing games. If you guys go the route you're going, this guy takes it in four days and we're finished. Instead, of everybody including Johnny getting everything he wants. I don't understand, like why are you doing this? Why? What the hell is the point?

GX-4500. Constantine, rather than admitting to joint activity, was highlighting *Kenner's* individual liability, and trying to end the litigation over control of Eufora. At a later point in the tape he states:

> You understand that if they push the envelope, continue to push the envelope, Eufora is a non-event. There's way more stuff to worry about for you.
>
> ***
>
> And now we move forward. And then we get a general release from everybody, that protects you too. Because if God forbid any of this shit that, I'm not going to say, that has happened, that I believe you will be in the hot seat for, I'm getting a release for everything that's happened in the past to this date for everyone…everyone. Or there's no deal cause the lender, does not want to have a company that has infighting.

GX-4500. Viewed fairly, the Home Depot tape does not support the government's interpretation of it as an admission by Constantine to "diversion of GSF funds for personal benefit," or as advocacy for "working together and continuing the conspiracy." ECF 370 at 16-17. As with the GSF object of the conspiracy, the Home Depot tape is not an admission of participation in criminal activity for the Hawaii or Eufora objects, or any criminal object. Indeed, in quoting Constantine's words "They're not gonna fucking pinch the guy who drove the getaway car…," the government omits the next sentence and entire context. Constantine states, in the very next sentence:

Page 6

> And I know **you think I robbed the bank** but I have answers for everything. Everything, in writing.

GX-4500. (emphasis added). There is simply no fair reading of these statements as consistent with the government's claim that they represent Constantine referring to "himself and Kenner as co-conspirators in a bank robbery." ECF 370 at 17. More importantly, no rational jury could have relied on the Home Depot tape to supply what was otherwise missing from the evidence – an agreement between Constantine and Kenner to commit a crime.

### D. Global Settlement Fund

Trial testimony established that the purposes of the GSF were quite broad. See testimony of K. and M. Peca, Nash, Sydor, Rucchin and Murray. Tr. at 773-77, 2003-4, 2252-81, 2792-3, 3544-46. The broad purposes of the GSF were established at in person meetings with the investors, and later confirmed and broadened by follow up confirming emails. In its Response, in asserting that the Constantine was part of joint fraudulent activity in spending money collected for the GSF, the government appears to argue that the broadening of the purposes of the GSF, and ratification of actions Kenner and Constantine took with GSF, was invalid. EFC 370 at 27-8. In its summary of the trial testimony, the government catalogues the uses to which GSF money was put, ECF 370 at 29-30, while ignoring the fact that those uses were approved. See e.g., Tr. at 471-2. [M. Peca explaining why he approved of Constantine's plan for use of GSF money]. The government's characterization of the agreement of its own witnesses, through their confirming emails to Constantine's plan, as "more fraud," ECF 370 at 28, simply flies in the face of the trial testimony.[3]

---

[3] The government disputes the significance of the testimony by certified public accountant Semple. ECF 370 at 30. As to the GSF, Semple testified that he did come to a "conclusion" that the "majority of the funds were used for their intended purpose;" given that he lacked access to all requested records, Semple could not opine as to "all of them." Tr. at 5529.

Page 7

To the extent the government does recognize the import of the testimony by M. Peca, Nash, Sydor, Rucchin, Murray, and Gonchar, that they all approved the uses of the GSF, it asserts that the agreement by its own witnesses to those purposes was irrelevant, because "once the money was wired, the fraud was complete." ECF 370 at 33. That is not the law. If, as trial testimony established, without any intent to defraud, Kenner and Constantine disclosed the purposes of the GSF and then received explicit affirmation and ratification of those purposes, then seeking the money in the first place, and accepting the wiring of money for those purposes, is not evidence of a joint agreement by Kenner and Constantine to accomplish an illegal objective. The government's reliance on *United States v. Trudeau*, No. 10-CR-234, 2016 WL 614686 (D. Conn. Feb. 16, 2016), is misplaced. The *Trudeau* Court made clear the wire fraud was "complete" at the time a wire was sent, if it was sent "with intent to defraud." Id. at 4. In the present case, absent that fraudulent intent, the fact that money was wired in furtherance of the broad purposes of the GSF wires does not complete any crime.

Tellingly, the government alleged no substantive counts with respect to the GSF. See ECF 214. The trial testimony did not establish a joint agreement between Constantine and Kenner to commit a crime with respect to GSF money. In fact, in Post Trial Forfeiture Proceedings, Kenner repudiated his trial testimony asserting that Constantine had misappropriated GSF funds. Kenner testified:

> [n]ow that I understand what arrangement Mr. Constantine had with Mr. Gonchar and the contribution of one of the deposits into the account, I think my observations were incorrect when I told my clients that I thought he misappropriated funds.

Transcript of Forfeiture Hearing April 4, 2016, at 254. Further, Kenner testified:

> Q. Going back to the GSF, as you sit here today knowing what you know now about Mr. Constantine's arrangement with Mr. Gonchar and what you know now were monies deposited by Mr.

> Constantine into Mr. Richard's account, do you still believe Mr. Constantine misappropriated any GSF funds?
>
> A. No. Now that I know what his arrangement was with Mr. Gonchar, and that he deposited funds, I have no problems with what he did with the money.

Id. at 257. In its Response, the government acknowledges the authorized use by Constantine of money provided by Gonchar to the GSF. ECF 370 at 30. The contribution from Gonchar was well over a $1 million. Tr. at 4819-4826. Nonetheless, despite the concession regarding Gonchar, and despite the testimony by the investors that they approved the broad purposes of the GSF, the government maintains that it proved "more than enough to constitute fraud" by Constantine with respect to the GSF. ECF 370 at 30. Because the trial record belies that assertion, no rational trier of fact could have found that Constantine's efforts with respect to the GSF were part of joint conspiratorial activity with Kenner. With the addition of Kenner's post trial testimony,[4] it is even more evident that there was no joint plan, and no action by Constantine in support of an illegal goal. Accordingly, this case raises "'a real concern that an innocent person may have been convicted'" such that a judgment of acquittal should be entered on Counts 1 and 9, or at a minimum, a new trial granted in the interests of justice. *See United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)(quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

II. The Use of a General Verdict Form Was Plain Error

In its Response, the government correctly notes that the Court's instructions to the jury required it to agree unanimously on the object of the wire fraud conspiracy. ECF 370 at 38-39.

---

[4] On information and belief, in Post Trial Forfeiture Proceedings the government has excluded the money provided to Constantine by Gonchar from its forfeiture claim. Further, there was no accounting at trial to segregate out approved expenditures attributable to Gonchar's contributions, such as payment of Constantine's rent, or dealings with Playboy magazine, for which no crime occurred, even if those expenditures did not relate to the broad purposes of the GSF.

Page 9

At trial the Court noted, in declining to use a special verdict form, or special interrogatories, then in the event of an evidentiary insufficiency, the verdict would stand if at least one object was supported by factually sufficient evidence. Tr. at 5681-2. Constantine's argument is that because a special verdict form was not used, it is impossible to determine which object, if any, the jury agreed upon. Because of that plain error in a case of such complexity, the verdict in Count 1 cannot stand.

                                      Respectfully submitted,

                                      MITCHELL | STEIN | CAREY, PC


                                      By:
                                          Michael Morrissey

cc:  All counsel of record (by ECF)