Ensenada B.C. June 02, 2005

MRS. ALICIA CESEÑA AGUNDEZ DE COLLI
MR. ATILIO COLLI VILLARINO
IN ATTENDANCE.-

    I, PHILIP ANDREW KENNER, serving as CEO of ULA MAKIKA LLC, through this document and under oath state the following:
    That on behalf of and by order of the corporation PROPIEDADES DDM. S de R.L. de C.V., by means of its sole administrator Mr. Kenneth Aboud Jowdy, the company that I represent made two electronic transfers (deposits) to checking account number ███████████████████████ in US dollars, the legal tender of the United States of America, with bank transfer CODE number █████████████ from the Credit Institution known as Banamex, S.A., entity located in San José del Cabo, B.C.S., México, whose account holder is Mr. ATILIO COLLI VILLARINO.
    The deposits referenced and which are listed below were made as a result of a private contractual relationship to carry out the purchase and sale agreement between You and PROPIEDADES DDM S. de R.L. de C.V., and therefore the company that I represent ULA MAKIKA LLC does not reserve action or right to claim a mistake, incorrect payment, or restitution of the deposits, for all legal effects that may take place.

TRANSFERS (DEPOSITS)

Date of firm receipt in
the account of
Mr. Atilio Colli Villarino

| | Amount |
|---|---|
| May 17, 2005 | $325,000.00 dollars |
| May 18, 2005 | $225,000.00 dollars |
| Total | $550,000.00 dollars (FIVE HUNDRED AND FIFTY |

THOUSAND AND 00/100 US DOLLARS) :

    The current document is extended per the request of CC. ALICIA CESEÑA AGUNDEZ DE COLLI, ATILIO COLLI VILLARINO as well as the Corporation PROPIEDADES DDM S. de R.L. de C.V., pursuant to the covenant in the seventh clause, third paragraph of the second amendment agreement relative to the Private Contract of Purchase and Sale carried out between the aforementioned parties.
    SINCERELY,

[signature]
ULA MAKIKA LLC.
PHILIP ANDREW KENNER
CEO

[signature]
~~Fernando M. Garcia Campuzano~~
Certified Translator



Government Exhibit
FORF-41
13 CR 607 (JFB)

**PROPIEDADES DDM S DE R.L.**
**Account No.** ▉▉▉▉▉
**US dollars**

[handwritten] Banamex
CHECK RECORD

JUNE 7, 2005

$2,100,000.00

(TWO MILLION, ONE HUNDRED THOUSAND DOLLARS AND 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. 0001

**Banamex** 0:48:12          CONFIDENTIAL INFORMATION                    JUNE 7, 2005
[there is an illegible stamp under Banamex]

DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.H.
ATILIO, COLLI/VILLARINO          ██████████              $2,100,000.00

Banco Nacional de México, S.A., Member of the Banamex Financial Group

[stamp]
964-3    964-3    964-3 [this number
continues around border]
**Banamex**
Banco Nacional de México, S.A
2
WE RECEIVED FOR PAYMENT OR [ILLEGIBLE]
THE AMOUNT STATED ON THE FRONT
JUNE 7, 2005
IN ACCORDANCE WITH ARTS. 7, 32 [illeg.]
269 OF THE GENERAL LAW ON [illeg.]
AND CREDIT TRANSACTIONS [illeg.]
CASE OF CREDIT INSTRUMENTS [illeg.]

**Banamex** 0:48:12          CONFIDENTIAL INFORMATION                    JUNE 7, 2005
[there is an illegible stamp under Banamex]

DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.H.
CHARGE TO:                      TOTAL AMOUNT            $2,100,000.00
BANAMEX CHECK   ██████████      $2,100,000.00

TOTAL: $2,100,000.00
ISABEL LA CATOLICA 44 COL. CENTRO C.P. 0600D MEXICO CITY, FED. DIST.     Banco Nacional de México, S.A.
[illegible]                                                              Member of the Banamex Financial Group

CABO CONTRACTS ENGLISH 00000003

| **Banamex** | ACCOUNT STATEMENT AS OF MAY 31, 2005 |
| | CLIENT: ▮▮▮ |
| | Federal Taxpayer No. ▮▮▮ |
| | Page: 1 of 2 |

Branch 964 NUEVA ENSENADA, BC
Post Office 229
06089 Mexico City, Federal District CH

PROPIEDADES DDM S DE RL DE CV
OBREGON 1289
CENTRAL ZONE TWELVE AND THIRTEEN CH
22800 ENSENADA, BCN C.R.22831

Your account statement contains information on the following products and services:

### GENERAL SUMMARY

| PRODUCT / SERVICE | CONTRACT | PREVIOUS BALANCE | BALANCE AS OF MAY 31, 2005 |
|---|---|---|---|
| Non-interest bearing dollar checking account | 7578517591 | $0.00 | $1,000,000.00 |

### NON-INTEREST BEARING DOLLAR CHECKING ACCOUNT

SUMMARY FROM MAY 27, 2005 THROUGH MAY 31, 2005
CONTRACT 7578517591

| | | |
|---|---|---|
| Previous Balance | $0.00 | [stamp] |
| (+) 1 Deposit | $1,000,000.00 | MAY 2005 |
| (-) 0 Withdrawals | $0.00 | PAGE |
| **BALANCE AS OF MAY 31, 2005** | **$1,000,000.00** | A0680509 |
| | | MINISTRY OF THE TREASURY |
| | | AND PUBLIC CREDIT |
| Average Balance | $400,000.00 | UNDERSECRETARIAT OF REVENUE |
| Days Elapsed | 5 | [illegible] |
| **Checks Drawn** | 0 | BANCO NACIONAL DE MEXICO, S.A. |
| **Checks Exempt** | 0 | [illegible] |
| | | **1990** |
| | | [vertical text to right of stamp is illegible] |

**SUMMARY BY FORM OF ACCESS**

| | WITHDRAWALS | DEPOSITS |
|---|---|---|
| Checks ▮▮▮ | $0.00 | $1,000,000.00 |

| If you wish to receive payments by means of electronic transfer of interbank funds, you may provide the account number shown below to the person sending you the respective payment(s): Standard Bank Code (CLABE) 002022096490368342. Starting June 1, 2004, use of the CLABE is mandatory. |
|---|

### TRANSACTIONS PERFORMED

| DATE | DESCRIPTION | WITHDRAWALS | DEPOSITS | BALANCE |
|---|---|---|---|---|
| | PREVIOUS BALANCE | | | 0.00 |
| MAY 30 | DEPOSIT SUBJECT TO COLLECTION, NUEVA ENSENADA, BC BRANCH | | 1,000,000.00 | 1,000,000.00 |

CABO CONTRACTS ENGLISH 00000004

| Banamex | ACCOUNT STATEMENT AS OF JUNE 30, 2005 |
|---|---|
| | CLIENT: ▓▓▓▓▓ |
| | Federal Taxpayer No. ▓▓▓▓▓▓ |
| | Page:        1 of 2 |

Branch 964 NUEVA ENSENADA, BC
Post Office 229
06089 Mexico City, Federal District CH

PROPIEDADES DDM S DE RL DE CV
OBREGON 1289
CENTRAL ZONE TWELVE AND THIRTEEN  CH
22800 ENSENADA, BCN   C.R.22831

Your account statement contains information on the following products and services:

| GENERAL SUMMARY | | | |
|---|---|---|---|
| PRODUCT / SERVICE | CONTRACT | PREVIOUS BALANCE | BALANCE AS OF JUNE 30, 2005 |
| Non-interest bearing dollar checking account | 7578517591 | $1,000,000.00 | $472.70 |

### NON-INTEREST BEARING DOLLAR CHECKING ACCOUNT

| SUMMARY FROM JUNE 1, 2005 THROUGH JUNE 30, 2005 | | |
|---|---|---|
| CONTRACT 7578517591 | | |
| Previous Balance | $1,000,000.00 | [stamp] |
| (+)     3 Deposits | $1,585,490.00 |                             JUNE 2005 |
| (-)     5 Withdrawals | $2,585,490.00 |                      PAGE |
| **BALANCE AS OF JUNE 30, 2005** | **$472.75.00** | A0680509 |
| | | MINISTRY OF THE TREASURY |
| | | AND PUBLIC CREDIT |
| Average Balance | $183,860.62 | |
| Days Elapsed | 30 | UNDERSECRETARIAT OF REVENUE |
| **Checks Drawn** | 2 | [illegible] |
| **Checks Exempt** | 2 | BANCO NACIONAL DE MEXICO, S.A. |
| | | [illegible] |
| | | **1990** |
| | | [vertical text to right of stamp is illegible] |

SUMMARY BY FORM OF ACCESS

Checks ▓▓▓▓▓▓

| | WITHDRAWALS | DEPOSITS |
|---|---|---|
| | $2,585,017.25  \| | $1,585,490.00 |

| If you wish to receive payments by means of electronic transfer of interbank funds, you may provide the account number shown below to the person sending you the respective payment(s): Standard Bank Code (CLABE) 002022096490368342. Starting June 1, 2004, use of the CLABE is mandatory. |
|---|

### TRANSACTIONS PERFORMED

| DATE | DESCRIPTION | WITHDRAWALS | DEPOSITS | BALANCE |
|---|---|---|---|---|
| | PREVIOUS BALANCE | | | 1,000,000.00 |
| JUNE 2 | WITHDRAWN AS INSTRUCTED BY THE NUEVA ENSENADA, BC BRANCH | 400,000.00 | | 600,000.00 |
| JUNE 6 | COMMISSION FOR INTERNATIONAL TRANSFER RECEIVED ▓▓▓▓▓ | 15.00 | | |
| JUNE 6 | VAT ON INTERNATIONAL TRANSFER RECEIVED ▓▓▓▓▓ | 2.25 | | |
| JUNE 6 | DEPOSIT AS INSTRUCTED BY JERE | | | |

[Illegible Stamp]

CLIENT: 35656541

Page: 2 of 2

PROPIEDADES DDM S DE R.L. DE CV

### TRANSACTIONS PERFORMED

| DATE | DESCRIPTION | WITHDRAWALS | DEPOSITS | BALANCE |
|---|---|---|---|---|
| | LEHTINEN C/O P KENNER, STN, REF: ████ $ 1,499,900.00, INTERNATIONAL FUNDS TRANSFER RECEIVED FROM OUR BRANCH | | 1,499,900.00 | 2,099,972.75 |
| JUNE 7 | CASH DEPOSIT, NUEVA ENSENADA, BC BRANCH | | 5,000.00 | 4,972.75 |
| JUNE 7 | CHECK NUMBER 1 CASHING | 2,100,000.00 | | |
| JUNE 8 | DEPOSIT SUBJECT TO COLLECTION, NUEVA ENSENADA, BC BRANCH | | 80,500.00 | |
| JUNE 8 | CHECK NUMBER 4 CASHING | 85,000.00 | | 472.75 |
| JUNE 30 | NUMBER OF EXEMPT CHECKS 2 | | | 472.75 |

### TAKE CARE OF YOUR CHECKS AS CASH!

When drawing checks:
- Make sure they are registered and non-bearer.
- Whenever possible, include the words: "TO BE CREDITED ON THE BENEFICIARY'S ACCOUNT."
- Remember that you have the **Protected Checkbook** service, which allows you to activate the checks as you draw them.

**Prevention is your best ally**

| We are here to serve you 24 hours, 365 days per year |
|---|
| For consultation, advice, clarifications and banking through Audiomático |

| Corporate and Business | SMEs (small and medium enterprises) |
|---|---|
| From Mexico City, **12-26-26-26** and from the rest of the country **01-800-800-5858** | From Mexico City, **12-26-88-67** and from the rest of the country **01-800-111-2020** |

**Important:** If you need a clarification about your statement, you have 45 calendar days after the cut-off day. For that, we will be glad to assist you on our Client Services Lines.

*Thank you for choosing us*

[Illegible]

CABO CONTRACTS ENGLISH 00000006

**PROPIEDADES DDM S DE R.L.**
**Account No.** ▮▮▮▮▮▮
**US dollars**

CHECK RECORD

JUNE 8, 2005

$85,000.00

(EIGHTY FIVE THOUSAND DOLLARS AND 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |

No. 0004

CABO CONTRACTS ENGLISH 00000007

**Banamex** 1:09:32        CONFIDENTIAL INFORMATION                        JUNE 8, 2005
[there is an illegible stamp under Banamex]

## DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.H.
ATILIO, COLLI/VILLARINO                        $85,000.00

Banco Nacional de México, S.A., Member of the Banamex Financial Group

[stamp]
[same stamp is repeated twice,
side by side]
964-4     964-4     964-4 [this number
continues around border]
**Banamex**
Banco Nacional de México, S.A
2
WE RECEIVED FOR PAYMENT OR DEPOSIT
THE AMOUNT STATED ON THE FRONT
JUNE 8, 2005
IN ACCORDANCE WITH ARTS. 7, 32 [illeg.]
269 OF THE GENERAL LAW ON [illeg.]
AND CREDIT TRANSACTIONS [illeg.]
CASE OF CREDIT INSTRUMENTS [illeg.]

**Banamex** 1:09:32        CONFIDENTIAL INFORMATION                        JUNE 8, 2005
[there is an illegible stamp under Banamex]

## DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.H.
CHARGE TO:                      TOTAL AMOUNT                 $85,000.00
   BANAMEX CHECK                $85,000.00

TOTAL: $85,000.00
ISABEL LA CATOLICA 44 COL. CENTRO C.P. 0600D MEXICO CITY, FED. DIST.        Banco Nacional de México, S.A.
[illegible]                                                                 Member of the Banamex Financial Group

CABO CONTRACTS ENGLISH 00000008

**LOR MANAGEMENT, S.A. DE C.V.**
**Account No.** ████████
**US dollars**

CHECK RECORD

JUNE 7, 2005

PROPIEDADES DDM S DE R.L.

$80,500.00

EIGHTY THOUSAND AND FIVE HUNDRED DOLLARS AND 00/100

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| **LOAN**<br>PROPIEDADES DDM S DE R.L.<br>(MR. ATILIO DEPOSIT) | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |

No. 9168

CABO CONTRACTS ENGLISH 00000009

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: ███████████                               JUNE 7, 2005

**DEPOSIT OF DOLLAR CHECKS SBC** [Subject to collection]

NUEVA ENSENADA, B.C.

| DESCRIPTION | BRANCH | ACCOUNT | AUT | AMOUNT |
|---|---|---|---|---|
| CHECK DEPOSIT SBC [Subject to collection] M | 964 | ████████ | 30110 | $80,500.00 |
| CLIENT: PROPIEDADES DOM S  DE RL DE CV | | | | |
| REF: | | | | |

Banco Nacional de México, S.A., Member of the Banamex Financial Group

[stamp]

964-5    964-5    964-5 [this number continues around border]

**Banamex**

Banco Nacional de México. S.A

2

WE RECEIVED FOR PAYMENT OR DEPOSIT
THE AMOUNT STATED ON THE FRONT
JUNE 7, 2005
IN ACCORDANCE WITH ARTS. 7, 32 [illeg.]
269 OF THE GENERAL LAW ON [illeg.]
AND CREDIT TRANSACTIONS [illeg.]
CASE OF CREDIT INSTRUMENTS [illeg.]

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: 964/5/FG97B/11:46:26                     PAGE 1/1
                                                                          JUNE 7, 2005

**DEPOSIT OF DOLLAR CHECKS SBC** [Subject to collection]

NUEVA ENSENADA, B.C.

CHARGE TO:                        AMOUNT  M.E.                    $80,500.00
S.B.C M.E. ████████████           $80,500.00

ISABEL LA CATOLICA 44 COL. CENTRO C.P. 0600D MEXICO CITY, FED. DIST.      Banco Nacional de México, S.A.
R.F.C BNM -840515-VB1                                                     Member of the Banamex Financial Group

AUT-266 A/B 2-02

**LOR MANAGEMENT, S.A. DE C.V.**
**Account No.** ████████
**US dollars**

CHECK RECORD

JUNE 7, 2005

PROPIEDADES DDM S. DE R.L.

$5,200.00

FIVE THOUSAND AND TWO HUNDRED DOLLARS AND 00/100

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| **LOAN** PROPIEDADES DDM S. DE R.L. (MR. ATILIO DEPOSIT) | 10.8792  [handwritten] |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

No. 9167

CABO CONTRACTS ENGLISH 00000011

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: ████████████████                    JUNE 7, 2005

### CASH DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.

| DESCRIPTION | BRANCH | ACCOUNT | AUT | AMOUNT |
|---|---|---|---|---|
| CHECK DEPOSIT IN CASH | 964 | ██████ | 30111 | $5,000.00 |
| CLIENT: PROPIEDADES DOM S  DE RL DE CV | | | | |

Banco Nacional de México, S.A., Member of the Banamex Financial Group

[stamp]
964-5     964-5     964-5 [this number continues around border]
**Banamex**
Banco Nacional de México, S.A
2
WE RECEIVED FOR PAYMENT OR DEPOSIT
THE AMOUNT STATED ON THE FRONT
JUNE 7, 2005
IN ACCORDANCE WITH ARTS. 7, 32 [illeg.]
269 OF THE GENERAL LAW ON [illeg.]
AND CREDIT TRANSACTIONS [illeg.]
CASE OF CREDIT INSTRUMENTS [illeg.]

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: ████████████████        PAGE 1/1
                                                         JUNE 7, 2005

### CASH DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.

| CHARGE TO: | AMOUNT M.E. | $5,000.00 |
|---|---|---|
| CASH M.E. | $5,000.00 | |

ISABEL LA CATOLICA 44 COL. CENTRO C.P. 0600D MEXICO CITY, FED. DIST.        Banco Nacional de México, S.A.
R.F.C BNM -840515-VB1                                                        Member of the Banamex Financial Group

AUT-266 A/B 2-02

CABO CONTRACTS ENGLISH 00000012

**PROPIEDADES DDM S DE R.L.**
**Account No.** ▮▮▮▮▮▮
**US dollars**

CHECK RECORD

JUNE 20, 2005

$1,500,000.00

(ONE MILLION AND FIVE HUNDRED THOUSAND DOLLARS AND 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | . |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
|  |  |  |  |  |

No. 0008

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: ▓▓▓▓▓▓▓▓                          JUNE 20, 2005

### COMBINED DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.

| DESCRIPTION | BRANCH | ACCOUNT | AUT | AMOUNT |
|---|---|---|---|---|
| COMBINED CHECK DEPOSIT | 590 | ▓▓▓▓▓ | 45451 | $1,500,000.00 |
| CLIENT: ATILIO, COLLI/VILLARINO | | | | |

Banco Nacional de México, S.A., Member of the Banamex Financial Group

[stamp]

964-5     964-5     964-5 [this number continues around border]

**Banamex**

Banco Nacional de México, S.A

2

WE RECEIVED FOR PAYMENT OR DEPOSIT
THE AMOUNT STATED ON THE FRONT

JUNE 20, 2005

IN ACCORDANCE WITH ARTS. 7, 32 [illeg.]
269 OF THE GENERAL LAW ON [illeg.]
AND CREDIT TRANSACTIONS [illeg.]
CASE OF CREDIT INSTRUMENTS [illeg.]

**Banamex**

CONFIDENTIAL INFORMATION BRANCH: ▓▓▓▓▓▓▓▓▓▓                PAGE 1/1
                                                            JUNE 20, 2005

### COMBINED DEPOSIT OF DOLLAR CHECKS

NUEVA ENSENADA, B.C.

CHARGE TO:                          AMOUNT M.E.              $1,500,000.00
    CH. BNMX.ME                     $1, 500,000.00

ISABEL LA CATOLICA 44 COL. CENTRO C.P. 0600D MEXICO CITY, FED. DIST.      Banco Nacional de México, S.A.
R.F.C BNM -840515-VB1                                                     Member of the Banamex Financial Group

TOTAL                               $1, 500,000.00
AUT-266 A/B 2-02

**PROPIEDADES DDM S DE R.L. DE C.V.**
**Account No.** ▉▉▉▉▉▉▉▉
**US dollars**

CHECK RECORD

AUGUST 29, 2005

Atilio Colli Villarino

$500,000.00

(Five Hundred Thousand Dollars And 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |

No. 0004

CABO CONTRACTS ENGLISH 00000015

Santander Serfin

Deposit/Payment

CHECK ONLY ONE BOX IN EACH OPTION (COMPLETE A SLIP FOR EACH TYPE OF DEPOSIT/PAYMENT

CURRENCY TYPE: ___ DOMESTIC   X U.S. DOLLARS

ACCOUNT OR CREDIT CARD NUMBER

DEPOSIT/PAYMENT OF: X S.SANTANDER SERFIN CHECKS ___ CHECKS OF OTHER BANKS AND/OR CASH

| NAME OF CLIENT | BANK | ACCOUNT NO. | CHECK NO. | AMOUNT |
|---|---|---|---|---|
| Atilio Colli Villarino | 1. Santander | | 4 | [illegible stamp] |
| | 2 | | | |
| | 3 | | | |
| | 4 | | | |
| | 5 | | | |
| | 6 | | | |
| | 7 | | | |

THIS SLIP WILL BE VALID WHEN IT CONTAINS THE IMPRESSION OF OUR CERTIFICATION MACHINE, THE STAMP AND SIGNATURE OF THE RECEIVING TELLER.
OTHER BANKS' DOCUMENTS ARE ACCEPTED SUBJECT TO COLLECTION AND ARE SUBJECT TO SUBSEQUENT INQUIRY REGARDING THEIR AMOUNT, AND THEIR ACCEPTANCE IS ALSO SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS FOR PRESENTATION TO THE ELECTRONIC CLEARING HOSE.

TOTAL IN DOCUMENTS   $500,000.00

CASH

TOTAL DEPOSIT   $500,000.00

NAME OF DEPOSITOR OR PAYER
Propiedades DDM S. de R.L. de C.V

REFERENCE

AUG/29/2005 15 51:02 CF991255 Sec. 226 0394 $500,000.00 USD
CASH DEPOSIT Account.

CLIENT
ATILIO COLLI VILLARINO

CABO CONTRACTS ENGLISH 00000017

**PROPIEDADES DDM S DE R.L. DE C.V.**
**Account No.** ▮▮▮▮▮▮▮▮▮▮
**US dollars**

CHECK RECORD

SEPTEMBER 8, 2005

Atilio Colli Villarino

$500,000.00

(Five Hundred Thousand Dollars and 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |

No. 0005

CABO CONTRACTS ENGLISH 00000018



Santander Serfin

Deposit/Payment

CHECK ONLY ONE BOX IN EACH OPTION (COMPLETE A SLIP FOR EACH TYPE OF DEPOSIT/PAYMENT

CURRENCY TYPE:   __ DOMESTIC    _X_ U.S. DOLLARS

DEPOSIT/PAYMENT OF:   _X_ SANTANDER SERFIN CHECKS AND/OR CASH   __ CHECKS OF OTHER BANKS

ACCOUNT OR CREDIT CARD NUMBER ▓▓▓

NAME OF CLIENT
Atilio Colli Villarino

THIS SLIP WILL BE VALID WHEN IT CONTAINS THE IMPRESSION OF OUR CERTIFICATION MACHINE, THE STAMP AND SIGNATURE OF THE RECEIVING TELLER. OTHER BANKS' DOCUMENTS ARE ACCEPTED SUBJECT TO COLLECTION AND ARE SUBJECT TO SUBSEQUENT INQUIRY REGARDING THEIR AMOUNT, AND THEIR ACCEPTANCE IS ALSO SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS FOR PRESENTATION TO THE ELECTRONIC CLEARINGHOUSE.

NAME OF DEPOSITOR OR PAYER
Propiedades DDM S. de R.L. de C.V.

REFERENCE
El Cardonal Contract

BSS4473 SEP/08/2005 15:14:50
CASH DEPOSIT Account ▓▓▓

| BANK | ACCOUNT NO. | CHECK NO. | AMOUNT |
|---|---|---|---|
| 1. Serfin | ▓▓▓ | 5 | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| TOTAL IN DOCUMENTS | | | $500,000.00 |
| CASH | | | $500,000.00 |
| TOTAL DEPOSIT | | | ▓▓▓ |

[illegible stamp]

CLIENT ▓▓▓ $500,000.00 USD
ATILIO COLLI VILLARINO

**PROPIEDADES DDM S DE R.L. DE C.V.**
**Account No.** <span style="background:black">    </span>
**US dollars**

CHECK RECORD

SEPTEMBER 8, 2005

Atilio Colli Villarino

$200,000.00

(Two Hundred Thousand Dollars and 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |
| | | | | |

No. 0006



Santander Serfin

Deposit/Payment

CHECK ONLY ONE BOX IN EACH OPTION (COMPLETE A SLIP FOR EACH TYPE OF DEPOSIT/PAYMENT

CURRENCY TYPE: __ DOMESTIC __ X __ U.S. DOLLARS

ACCOUNT OR CREDIT CARD NUMBER

NAME OF CLIENT
Atilio Colli Villarino

THIS SLIP WILL BE VALID WHEN IT CONTAINS THE IMPRESSION OF OUR CERTIFICATION MACHINE, THE STAMP AND SIGNATURE OF THE RECEIVING TELLER.
OTHER BANKS' DOCUMENTS ARE ACCEPTED SUBJECT TO COLLECTION AND ARE SUBJECT TO SUBSEQUENT INQUIRY REGARDING THEIR AMOUNT, AND THEIR ACCEPTANCE IS ALSO SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS FOR PRESENTATION TO THE ELECTRONIC CLEARING HOUSE.

NAME OF DEPOSITOR OR PAYER
Propiedades DDM S. de R.L. de C.V.
REFERENCE
El Cardonal Contract

BSS4473 SEP/08/2005 17:39:01
CASH DEPOSIT Account.

DEPOSIT/PAYMENT OF: X SANTANDER SERFIN CHECKS AND/OR CASH

| BANK | ACCOUNT NO. | CHECK NO. | AMOUNT |
|---|---|---|---|
| 1. Serfin | ▮ | 6 | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| | TOTAL IN DOCUMENTS | | $200,000.00 |
| | CASH | | $200,000.00 |
| | TOTAL DEPOSIT | | ▮ |

[Illegible stamp]

CLIENT
$200,000.00 USD
ATILIO COLLI VILLARINO

**PROPIEDADES DDM S DE R.L. DE C.V.**
**Account No** ███████████
**US dollars**

CHECK RECORD

SEPTEMBER 13, 2005

Atilio Colli Villarino

$200,000.00

(Two Hundred Thousand Dollars and 00/100)

| REASON FOR PAYMENT | CHECK RECEIVED SIGNATURE |
|---|---|
| EL CARDONAL CONTRACT PAYMENT | |

| ACCOUNT | NAME | PARTIAL | DEBIT | CREDIT |
|---|---|---|---|---|
| | | | | |

No. 0007



Santander Serfin

Deposit/Payment

CHECK ONLY ONE BOX IN EACH OPTION (COMPLETE A SLIP FOR EACH TYPE OF DEPOSIT/PAYMENT)

CURRENCY TYPE: ___ DOMESTIC   _X_ U.S. DOLLARS

ACCOUNT OR CREDIT CARD NUMBER

DEPOSIT/PAYMENT OF:   X SANTANDER SERFIN CHECKS   CHECKS OF OTHER BANKS   AND/OR CASH

| NAME OF CLIENT | BANK | ACCOUNT NO. | CHECK NO. | AMOUNT |
|---|---|---|---|---|
| Atilio Colli Villarino | 1. | | 7 | |
| | 2 | | | |
| | 3 | | | |
| | 4 | | | |
| | 5 | | | |
| | 6 | | | |
| | 7 | | | [illegible stamp] |

THIS SLIP WILL BE VALID WHEN IT CONTAINS THE IMPRESSION OF OUR CERTIFICATION MACHINE, THE STAMP AND SIGNATURE OF THE RECEIVING TELLER. OTHER BANKS' DOCUMENTS ARE ACCEPTED SUBJECT TO COLLECTION AND ARE SUBJECT TO SUBSEQUENT INQUIRY REGARDING THEIR AMOUNT, AND THEIR ACCEPTANCE IS ALSO SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS FOR PRESENTATION TO THE ELECTRONIC CLEARINGHOUSE.

TOTAL IN DOCUMENTS

CASH   $200,000.00

TOTAL DEPOSIT   $200,000.00

NAME OF DEPOSITOR OR PAYER
[Illegible handwriting]

REFERENCE
[Illegible handwriting]

CLIENT
$200,000.00 USD
ATILIO COLLI VILLARINO

[illegible stamp]
CASH DEPOSIT Account.

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR

[in left and right margin] VERIFIED

---VOLUME ONE THOUSAND TWENTY-SIX---
---NOTARIAL INSTRUMENT SIXTY-FIVE THOUSAND THIRTY-SIX---

- - - In the city of La Paz, Baja California Sur, Mexico, on the tenth day of the month of March of the year two thousand six, I, JOSE ALBERTO CASTRO SALAZAR, Notary Public assigned to Notarial Office Number SEVEN of the State and Federal Real Property, acting in the municipalities of La Paz and Los Cabos, residing in the capital of the State, at which the incumbent notary public is HECTOR CASTRO CASTRO, acting in accordance with the provisions of Article twenty-nine (29) of the Law on the Notarial Profession now in effect, record the following legal acts:

- - - I. The **REAL PROPERTY SALES AGREEMENT** entered into by the "**SELLER**", **ALICIA CESEÑA AGUNDEZ**, and the "**BUYER**", the company "DIAMANTE CABO SAN LUCAS," A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY in his capacity as Chief Executive Officer, and

- - - II. THE TRANSFER OF (i) TRUST RIGHTS IN A TRUST TRANSFERRING TITLE, WITH A REVERSION CLAUSE; (ii) THE RIGHTS OF THE DONORS, RESULTING FROM A CERTAIN GIFT OF REAL PROPERTIES INTENDED FOR ROADS, entered into by the "**TRANSFEROR**", ALICIA CESEÑA AGUNDEZ, and by the "**TRANSFEREE**", the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, in his capacity as Chief Executive Officer; and (iii) THE RIGHTS AND OBLIGATIONS arising from the establishment of a NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT IN PERPETUITY, entered into by the "**TRANSFEROR**", ALICIA CESEÑA AGUNDEZ, and the "**TRANSFEREE**", the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, in his capacity as Chief Executive Officer.

- - - In both acts, Kenneth Aboud Jowdy was assisted by a person whom he trusts and has appointed as his translator, and is a law school graduate, Fernando Manuel García Campuzano, who stated before the undersigned notary public that he accepted the position and swears that he will perform it faithfully and lawfully.

These transactions have been made subject by the parties to the following recitals and clauses:

--- RECITALS ---

--- ONE. PROPERTY OWNERSHIP HISTORY

- - - a) By means of notarial instrument number three thousand one hundred ninety-two, executed on the seventh of January of nineteen hundred sixty-three, volume seventy-three, before Armando Aguilar Paniagua, who was notary public number one of the state of Baja California Sur, and originally recorded in the Public Register of Real Property of the city of La Paz, Baja California Sur, under number eighty-four (84), in volume

3820

CABO CONTRACTS ENGLISH 00000024

2

two (2), section one (I), which was the register of transfer deeds of San José del Cabo, Baja California Sur, on the thirteenth (13th) of February of nineteen hundred sixty-three (1963); a record was entered of the purchase by ATILIO COLLI VILLARINO of a parcel of land located in the property LA LAGUNA, in Cabo San Lucas, Baja California Sur, with an area of four hundred thirty seven hectares (437-00-00), with the following measurements: borders and boundaries as described in the aforementioned notarial instrument, which is deemed reproduced herein as if it were literally included, which property, since its purchase and up to the date hereof, has been used for livestock raising purposes.

- - - b) By means of notarial instrument number three thousand two hundred two, in volume seventy-five, executed on the seventh of January of nineteen hundred sixty-three before Armando Aguilar Paniagua, who was notary public number one of the state of Baja California Sur, and originally recorded in the Public Register of Real Property of the city of La Paz, Baja California Sur, municipality of Los Cabos, under number eighty-five (85) of volume two (2), section one (I), which was the register of transfer deeds of San José del Cabo, Baja California Sur, on the thirteenth (13) of February of nineteen hundred sixty-three (1963), a record was entered of the purchase by ATILIO COLLI VILLARINO of a parcel of land located in the property LA LAGUNA, in Cabo San Lucas, Baja California Sur, with an area of one hundred sixty-three (163-00-00) hectares, and with the measurements, borders and boundaries as described in the aforementioned notarial instrument, which is deemed reproduced herein as if it were literally included, which property, since its purchase and up to the date hereof, has been used for livestock raising purposes.

- - - c) By means of notarial instrument eleven thousand two hundred one, in volume one hundred thirty-six, dated the twenty-fifth of November of nineteen hundred eighty-eight, executed before Héctor Castro Castro, notary public number seven of the state of Baja California Sur, and recorded in the Public Register of Real Property of the municipality of Los Cabos, by means of a notation in the margin under number eighty-four (84) of volume two (2), section one (I), on the ninth (9th) of December of nineteen hundred eighty-eight (1988), a record was entered to clarify the area, measurements and boundaries of the properties that are the subject of this instrument, as taken from a topographical survey authorized by the Property Register Department, showing a total area for both properties of six hundred seventeen hectares, sixty-eight ares and thirty-six centiares (617-68-36) and the measurements, borders and boundaries that are described in the aforementioned notarial instrument and are deemed reproduced herein as if they were literally included.

- - - d) On the twenty-first of November of nineteen hundred ninety-one, by means of official letter one hundred twenty-seven (127), authorization was received from the Department of Planning and Land Development of District IV of the municipality of Los Cabos, Baja California Sur, to divide the property identified as LA LAGUNA (El CARDONAL) into seven parcels.

3821

CABO CONTRACTS ENGLISH 00000025

[illegible seal and numbers]                                                                                              3

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR

[in left and right margin] VERIFIED
[illegible notarial seal in left margin]

from which the following parcels are derived, together with the SITE described in recital f) below, are the subject of this instrument:

- - - **d.1. LOT ONE (I):** in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero one three dash zero eight one (4-02-013-0081), with an area of five hectares, ninety-two ares and sixty-eight centiares (5-92-68), and the following measurements and boundaries:

- - - From survey point O to survey point H, towards the north, a distance of one hundred ninety-one point eighty-nine meters (191.89), and an angle of one hundred fifteen degrees, thirty-eight minutes, five seconds ($116^0$ 38' 05"), bordering with Lot seven (VII).

- - - From survey point H to survey point I, towards the north, a distance of one hundred twenty-seven point fifty-two meters (127.52), and an angle of one hundred twenty degrees, nine minutes, twenty-one seconds ( ($120^0$ 09' 21"), bordering with Lot seven (VII).

- - - From survey point I to survey point J, towards the north, a distance of thirty-one point five meters (31.50), and an angle of one hundred ninety seven degrees, eight minutes, twenty-four seconds ($197^0$ 08' 24"), bordering with Lot seven (VII).

- - - From survey point J to survey point A, towards the north, a distance of one hundred twenty-five meters (125.00), and an angle of one hundred seven degrees, eight minutes, twenty-four seconds ($107^0$ 08' 24"), bordering with Lot seven (VII).

- - - From survey point B to survey point C, towards the south, a distance of one hundred twenty-five meters (125.00), and an angle of two hundred eighty-seven decrees, eight minutes, twenty-four seconds ($287^0$ 08' 24"), bordering with Lot three (III).

- - - From survey point C to survey point D, towards the south, a distance of thirty-one point five meters (31.50), and an angle of seventeen degrees, eight minutes, twenty-four seconds ($17^0$ 08' 24"), bordering with Lot three (III).

- - - From survey point D to survey point E, towards the south, a distance of one hundred twenty-seven point fifty-two meters (127.52), and an angle of three hundred degrees, nine minutes, twenty-one seconds ($300^0$ 09' 21"), bordering with Lot three (III).

- - - From survey point E to survey point F, towards the south, a distance of one hundred ninety-one point eighty-eight meters (191.88), and an angle of two hundred ninety-five degrees, thirty-eight minutes, five seconds ($295^0$ 38' 05"), bordering with Lot four (IV).

- - - From survey point A to survey point B, towards the east, a distance of one hundred thirty-five meters (135.00), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds ($197^0$ 08' 24"), bordering property of Francisco Arballo.

- - - From survey point F to survey point G, towards the west, a distance of one hundred thirty-five meters (135.00), and an angle of seventeen degrees, eight minutes, twenty-four seconds ($17^0$ 08' 24"), bordering with Lot two (II).

- - - **d.2. LOT TWO (II):** in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja

3822

CABO CONTRACTS ENGLISH 00000026

4

California Sur, property register code four dash zero two dash zero one three dash zero zero eight two (4-02-013-0082), with an area of five hectares, ninety-four ares and eighty six centiares (5-94-86), and the following measurements and boundaries:

- - - From survey point L to survey point M, towards the north, a distance of two hundred ninety-nine point ninety-four meters (299.94), and an angle of one hundred fourteen degrees, thirty-eight minutes, thirty-five seconds (114$^0$ 38' 35"), bordering with Lot seven (VII).

- - - From survey point F to survey point D-5, towards the south, a distance of one hundred sixteen point ninety-eight meters (116.98), and an angle of two hundred ninety-four degrees, thirty-eight minutes, thirty-five seconds (294$^0$ 38' 35"), bordering with Lot five (V).

- - - From survey point D-5 to survey point K, towards the south, a distance of one hundred eighty-three point zero one meters (183.01), and an angle of two hundred ninety four degrees, thirty-eight minutes, thirty-five seconds (294 38' 35"), bordering with Lot six (VI).

- - - From survey point M to survey point G, towards the east, a distance of sixty-five meters (65.00), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds (197$^0$ 08' 24"), bordering with Lot seven (VII).

- - - From survey point G to survey point F, towards the east, a distance of one hundred thirty-five meters (135.00), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds (197$^0$ 08' 24"), bordering with Lot one (I).

- - - From survey point K to survey point L, towards the west, a distance of two hundred meters (200.00), and an angle of seventeen degrees, eight minutes, twenty-four seconds (17$^0$ 08' 24"), bordering with the property of Mr. Atilio Colli.

- - - **d.3. LOT THREE (III):** in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero one three dash zero zero eight three (4-02-013-0083), with an area of eleven hectares, thirty-four ares and forty-one centiares (11-34-41), and the following measurements and boundaries:

- - - From survey point D-1 to survey point D, towards the north, a distance of sixty-one point fifty-eight meters (61.58), and an angle of three hundred degrees, nine minutes, twenty-one seconds (300$^0$ 09' 21"), bordering with Lot one (I).

- - - From survey point D to survey point C, towards the north, a distance of thirty-one point fifty meters (31.50), and an angle of seventeen degrees, eight minutes, twenty-four seconds (17$^0$ 08' 24"), bordering with Lot one (I).

- - - From survey point C to survey point B, towards the north, a distance of one hundred twenty-five meters (125.00), and an angle of two hundred eighty-seven degrees, eight minutes, twenty-four seconds (287$^0$ 08' 24"), bordering with Lot one (I).

3823

CABO CONTRACTS ENGLISH 00000027

- - - From survey point V-1 to survey point V-2, towards the south, a distance of one hundred seventy-one point twenty-six meters (171.26), bordering with the Pacific Ocean.

- - - From survey point V-2 to survey point D-2, towards the south, a distance of sixteen point ninety-six meters (16.96), bordering with the Pacific Ocean.

- - - From survey point V-1 to survey point B, towards the east, a distance of six hundred seventeen point eighty-seven meters (617.87), and an angle of seventeen degrees, eight minutes, twenty-four seconds ($17^0$ 08' 24"), bordering with the property of Francisco Arballo.

- - - From survey point D-1 to survey point D-2, towards the west, a distance of six hundred twenty-eight point fifty-six meters (628.56), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds ($197^0$ 08' 24"), bordering with Lot four (IV).

- - - **d.4. LOT FOUR** (IV): in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero zero one three dash zero zero eight four (4-02-013-0084), with an area of eleven hectares, sixty-two ares and sixty centiares (11-62-60), and the following measurements and boundaries:

- - - From survey point D-1 to survey point E, towards the north, a distance of sixty-five point ninety-three meters (65.93), and an angle of three hundred degrees, nine minutes, twenty-one seconds ($300^0$ 09' 21"), bordering with Lot one (I).

- - - From survey point E to survey point D-3, towards the north, a distance of one hundred twenty-two point ten meters (122.10), and an angle of two hundred ninety-five degrees, thirty-eight minutes, five seconds ($295^0$ 38' 05"), bordering with Lot one (I).

- - - From survey point D-4 to survey point VZF-5, towards the south, a distance of four point ninety-five meters (4.95), and an angle of one hundred nineteen degrees, fifty-five minutes, six seconds ($119^0$ 55' 06"), bordering with the Pacific Ocean.

- - - From survey point VZF-5 to survey point V-4, towards the south, a distance of sixty point twenty-seven meters (60.27), and an angle of one hundred seventeen degrees, seven minutes, fifty-four seconds ($117^0$ 07' 54"), bordering with the Pacific Ocean.

- - - From survey point V-4 to survey point V-3, towards the south, a distance of seventy-four point forty meters (74.40), and an angle of one hundred seventeen degrees, fifty-five minutes, ten seconds ($117^0$ 55' 10"), bordering with the Pacific Ocean.

CABO CONTRACTS ENGLISH 00000028

6

- - - From survey point V-3 to survey point D-2, towards the south, a distance of forty-eight point eighty-six meters (48.86), and an angle of one hundred nineteen degrees, thirty-six minutes, six seconds (119° 36' 06"), bordering with the Pacific Ocean.

- - - From survey point D-2 to survey point D-1, towards the east, a distance of six hundred twenty-eight point fifty-six meters (628.56), and an angle of seventeen degrees, eight minutes, twenty-four seconds (17° 08' 24"), bordering with Lot three (III).

- - - From survey point D-3 to survey point D-4, towards the west, a distance of six hundred twenty-five point eighty-seven meters (625.87), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds (197° 08' 24"), bordering with Lot five (V).

- - - **d.5. LOT FIVE** (V): in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero one three dash zero zero eight five (4-02-013-0085), with an area of eleven hectares, forty ares and ninety-one centiares (11-40-91), and the following measurements and boundaries:

- - - From survey point D-3 to survey point F, towards the north, a distance of sixty-nine point seventy-eight meters (69.78), and an angle of two hundred ninety-five degrees, thirty-eight minutes, five seconds (295° 38' 05"), bordering with Lot two (II).

- - - From survey point F to survey point D-5, towards the north, a distance of one hundred sixteen point ninety-eight meters (116.98), and an angle of two hundred ninety-four degrees, thirty-eight minutes, five seconds (294° 38' 05"), bordering with Lot two (II).

- - - From survey point D-6 to survey point VZF-6, towards the south, a distance of ninety-nine point seventeen meters (99.17), and an angle of one hundred twenty-two degrees, fifty-three minutes, ten seconds (122° 53' 10"), bordering with the Pacific Ocean.

- - - From survey point VZF-6 to survey point D-4, towards the south, a distance of ninety-one point eighty-one meters (91.81), and an angle of one hundred nineteen degrees, fifty-five minutes, seven seconds (119° 55' 07"), bordering with the Pacific Ocean.

- - - From survey point D-4 to survey point D-3, towards the east, a distance of six hundred twenty-five point eighty-seven meters (625.87), and an angle of seventeen degrees, eight minutes, twenty-four seconds (17° 08' 24"), bordering with Lot five (V).

- - - From survey point D-5 to survey point D-6, towards the west, a distance of six hundred four point twenty-three meters (604.23), and an angle of one hundred ninety seven degrees,

3825

eight minutes, twenty-four seconds (197$^0$ 08' 24"), bordering with Lot six (VI).

- - - **d.6. LOT SIX** (VI): in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero one three dash zero zero eight six (4-02-013-0086), with an area of eleven hectares, three ares and ninety centiares (11-03-90), and the following measurements and boundaries:

- - - From survey point D-5 to survey point K, towards the north, a distance of one hundred eighty-three point zero one meters (183.01), and an angle of two hundred ninety-four degrees, thirty-eight minutes, thirty-five seconds (294$^0$ 38' 35"), bordering with Lot two (II).

- - - From survey point D-7 to survey point VZF-9, towards the south, a distance of sixty-seven point thirty-six meters (67.36), and an angle of two hundred sixty-nine degrees, fifty-one minutes, eight seconds (269$^0$ 51' 08"), bordering with the Pacific Ocean.

- - - From survey point VZF-9 to survey point VZF-8, towards the south, a distance of forty-six point twenty-six meters (46.26), and an angle of one hundred fourteen degrees, thirty-four minutes, five seconds (114$^0$ 34' 05"), bordering with the Pacific Ocean.

- - - From survey point VZF-7 to survey point D-6, towards the south, a distance of one point seventy-seven meters (1.77), and an angle of one hundred twenty-two degrees, fifty-three minutes, fifteen seconds (122$^0$ 53' 15"), bordering with the Pacific Ocean.

- - - From survey point D-6 to survey point D-5, towards the east, a distance of six hundred four point twenty-three meters (604.23), and an angle of seventeen degrees, eight minutes, twenty-four seconds (17$^0$ 08' 24"), bordering with Lot five (V).

- - - From survey point K to survey point D-7, towards the west, a distance of six hundred thirteen point seventy-one meters (613.71), and an angle of one hundred ninety-seven degrees, eight minutes, twenty-four seconds (197$^0$ 08' 24"), bordering with the property of Atilio Colli.

- - - **d.7. LOT SEVEN** (VII): in the property known as LA LAGUNA, the portion known as El Cardonal Ranch, in Cabo San Lucas, municipality of Los Cabos, Baja California Sur, property register code four dash zero two dash zero one three dash zero zero eight seven (4-02-013-0087), with an area of twenty-six hectares, zero ares and ninety-eight centiares (26-00-98),

3826

CABO CONTRACTS ENGLISH 00000030

8

and the following measurements and boundaries:

- - - From survey point ninety-six to survey point sixty, towards the north, a distance of eighty-seven point sixty-seven meters (87.67), and an angle of one hundred seventeen degrees, fifteen minutes, twenty-three seconds ($117^0$ 15' 23"), bordering with the property of Mr. Atilio Colli.

- - - From survey point sixty to survey point sixty-four, towards the north, a distance of fifty-four point twenty-six meters (54.26), and an angle of one hundred thirteen degrees, twenty-nine minutes, fifty-six seconds ($113^0$ 29' 56"), bordering with the property of Mr. Atilio Colli.

- - - From survey point sixty-four to survey point R, towards the north, a distance of fifty-nine point nineteen meters (59.19), and an angle of one hundred twenty degrees, fifty-one minutes, sixteen seconds ($120^0$ 51' 16"), bordering with the property of Mr. Atilio Colli.

- - - From survey point R to survey point sixty-five, towards the north, a distance of seventy-five point thirty-seven meters (75.37), and an angle of one hundred twelve degrees, forty-eight minutes, one second ($112^0$ 48' 01"), bordering with the property of Mr. Atilio Colli.

- - - From survey point sixty-five to survey point sixty-eight, towards the north, a distance of fifty-seven point sixty-four meters (57.64), and an angle of one hundred fourteen degrees, twenty-two minutes, twenty-one seconds ($114^0$ 22' 21"), bordering with the property of Mr. Atilio Colli.

- - - From survey point sixty-eight to survey point sixty-nine, towards the north, a distance of seventy-seven point thirty-three meters (77.33), and an angle of one hundred twenty-seven degrees, twenty-eight minutes, three seconds ($127^0$ 28' 03"), bordering with the property of Mr. Atilio Colli.

- - - From survey point sixty-nine to survey point seventy-three, towards the north, a distance of forty point seventy-four meters (40.74), and an angle of one hundred fifteen degrees, thirty-nine minutes, thirty-five seconds ($115^0$ 39' 35"), bordering with the property of Mr. Atilio Colli.

- - - From survey point seventy-three to survey point seventy-four, towards the north, a distance of seventy-four point eleven meters (74.11), and an angle of one hundred four degrees, fifty-eight minutes, twelve seconds ($104^0$ 58' 12"), bordering with the property of Mr. Atilio Colli.

- - - From survey point seventy-four to survey point eighty, towards the north, a distance of forty-four point twenty-six meters (44.26), and an angle of ninety-eight degrees, thirty-one minutes, twenty-seven seconds ($98^0$ 31' 27"), bordering with the property of Mr. Atilio Colli.

- - - From survey point eighty to survey point seventy-nine, towards the north, a distance of thirty-four point ninety meters (34.90), and an angle of one hundred twenty-eight degrees, forty-two minutes, forty-six seconds ($128^0$ 42' 46"),

CABO CONTRACTS ENGLISH 00000031

bordering with the property of Mr. Atilio Colli.

- - - From survey point seventy-nine to survey point seventy-eight, towards the north, a distance of forty-six point thirty-four meters (46.34), and an angle of one hundred seventeen degrees, eighteen minutes, forty-two seconds (117$^0$ 18' 42"), bordering with the property of Mr. Atilio Colli.

- - - From survey point seventy-eight to survey point seventy-seven, towards the north, a distance of fifty-one point twenty-six meters (51.26), and an angle of one hundred twenty-three degrees, fifty-seven minutes, thirty-seven seconds (123$^0$ 57' 37"), bordering with the property of Mr. Atilio Colli.

- - - From survey point seventy-seven to survey point eighty-three, towards the north, a distance of forty-four point nine meters (44.09), and an angle of one hundred ten degrees, forty minutes, thirty-one seconds (110$^0$ 40' 31"), bordering with the property of Mr. Atilio Colli.

- - - From survey point one hundred seventeen to survey point J, towards the south, a distance of one hundred twenty-seven point eighty-three meters (127.83), and an angle of two hundred eighty-seven degrees, eight minutes, twenty-four seconds (287$^0$ 08' 24"), bordering with Lot one (I).

- - - From survey point J to survey point I, towards the south, a distance of thirty-one point fifty meters (31.50), and an angle of seventeen degrees, eight minutes, thirty-six seconds (17$^0$ 08' 36"), bordering with Lot one (I).

- - - From survey point I to survey point H, towards the south, a distance of one hundred twenty-seven point fifty meters (127.50), and an angle of three hundred degrees, nine minutes, twenty seconds (300$^0$ 09' 20"), bordering with Lot one (I).

- - - From survey point H to survey point G, towards the south, a distance of one hundred ninety-one point eighty-nine meters (191.89), and an angle of two hundred ninety-five degrees, thirty-eight minutes, five seconds (295$^0$ 38' 05"), bordering with Lot one (I).

- - - From survey point G to survey point M, towards the south, a distance of sixty-five meters (65.00), and an angle of seventeen degrees, eight minutes, fifty-seven seconds (17$^0$ 08' 57"), bordering with Lot two (II).

- - - From survey point M to survey point L, towards the south, a distance of two hundred ninety-nine point ninety-four meters (299.94), and an angle of two hundred ninety-four degrees, thirty-nine minutes, fifteen seconds (294$^0$ 39' 15"), bordering with Lot two (II).

- - - From survey point eighty-three to survey point one hundred seventeen, towards the east, a distance of three hundred ninety-five point ninety-two meters (395.92), and an angle of one hundred ninety-six degrees, fifty-four minutes, fifty-nine seconds (196$^0$ 54' 59"), bordering with the property of Francisco Arballo.

- - - From survey point L to survey point ninety-six, towards the west, a distance of three hundred fifteen point thirty-three meters (315.33), and an angle of eighteen degrees, thirteen minutes, thirty-two seconds (18$^0$ 13' 32"), bordering with the property of Mr. Atilio Colli.

3828

CABO CONTRACTS ENGLISH 00000032

10

- - - e) **REMAINDER OF EL CARDONAL RANCH**. As a result of the subdivision described in section (d) above, a parcel of land identified by property register code four dash zero two dash zero one three dash zero zero zero one (4-02-013-0001) remained, with an area of five hundred thirty-four hectares, thirty-eight ares and three centiares (534-38-03).

- - - f) **PERMIT TO SUBDIVIDE A PARCEL OF THE LA LAGUNA PROPERTY, NAMELY THE PORTION THEREOF IDENTIFIED AS THE REMAINDER OF THE EL CARDONAL RANCH**. On the tenth of May of two thousand five, the Director General of Urban Development and Ecology of the municipality of Los Cabos drafted Official Letter number SUBD/073/PU/2005, ESS "U" BEE DEE SLASH ZERO SEVEN THREE SLASH PEE "U" SLASH TWO ZERO ZERO ZERO FIVE, which authorized the subdivision of a parcel of the property called LA LAGUNA, namely the portion thereof known as the remainder of El Cardonal Ranch, as referenced in section (e) above, which will hereafter consist of three sites, identified as SITES I, II and III, with SITE I described below. SITE I, and the Lots described in section (d) above, are the subject of this sale:

- - - **SITE I** of the property called LA LAGUNA (**EL CARDONAL**), in the municipal delegation of Cabo San Lucas, municipality of Los Cabos, Baja California Sur, Property Register Code four dash zero two dash zero one three dash zero zero zero one (4-02-013-0001), with an area of FIVE HUNDRED TWENTY-EIGHT HECTARES, EIGHTY-EIGHT ARES, FORTY-NINE POINT FOUR HUNDRED TWENTY-SEVEN CENTIARES (528-88-49.427), with the following measurements and boundaries:

- - - **TO THE NORTH**: IN TWO SECTIONS, TWO THOUSAND, TWO HUNDRED NINETY-NINE METERS, SEVEN HUNDRED FIVE MILLIMETERS (2,299.705), with property that is now or was previously owned by VICTOR HUGO CESEÑA, plus ONE HUNDRED THIRTY-NINE METERS, SEVEN HUNDRED SEVENTY-ONE MILLIMETERS (139.771), with SITE III;

- - - **TO THE SOUTH**: IN THREE SECTIONS, ONE HUNDRED THIRTY-NINE METERS, EIGHT HUNDRED FIFTEEN MILLIMETERS (139.815), with SITE III; plus ONE THOUSAND, SIX HUNDRED FIVE METERS, SEVENTY MILLIMETERS (1,605.070), with FEDERAL PACIFIC OCEAN MARITIME LAND ZONE; plus SEVEN HUNDRED FORTY-SEVEN METERS, ONE HUNDRED SIXTY MILLIMETERS (747.100), with LOT VII;

- - - **TO THE EAST**: IN TWO SECTIONS, ONE THOUSAND SEVEN HUNDRED FOURTEEN METERS, THREE HUNDRED SEVENTY MILLIMETERS (1,714.370), with property that is now or was previously owned by NESTOR HERRERA, plus ONE THOUSAND ONE HUNDRED TWENTY-NINE METERS, FORTY MILLIMETERS (1,129.040), with LOTS II, VI and VII;

- - - **TO THE WEST**: IN THREE PLOTS, ONE THOUSAND NINE HUNDRED NINETY-FIVE METERS, FIVE HUNDRED EIGHTY MILLIMETERS, with SITE II, plus ONE HUNDRED METERS (100.000), with SITE III, plus THREE HUNDRED SEVENTY-FOUR METERS,

[in right margin, two illegible seals]

3829

CABO CONTRACTS ENGLISH 00000033

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR

[in left and right margin] VERIFIED
[in left margin, illegible notarial seal]

11

FOUR HUNDRED FOURTEEN MILLIMETERS (374.414), with property that is now or was previously owned by LUIS BULNES MOLLEDA.

- - - g) By means of notarial instrument number eight thousand, nine hundred sixty-five (8,965), in volume one hundred five, dated the eighth (8th) of August of two thousand five (2005), executed before José Rubén Arechiga de la Peña, notary public assigned to notarial office number ten of the state, recorded in the Public Register of Real Property of the municipality of Los Cabos under number thirty (30), in volume CCXXIII, section one (1), dated the sixteenth of August of two thousand five, a record was entered of the formalization of the subdivision described in section (f) above.

- - - h) By means of notarial instrument number sixty-two thousand, nine hundred two (62,902), in volume nine hundred eighty-seven (987), dated the first of September of two thousand five, executed before the undersigned notary public, the first certified copy of which was recorded in the Public Register of Real Property of the municipality of Los Cabos, under number ninety-seven (97), in volume CCXXXI, section one, as well as under number thirty (30), in volume CCXXIII, section one, the following acts were formalized:

- - - **h.1.** TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE, pursuant to which ATILIO COLLI VILLARINO and ALICIA CESEÑA AGUNDEZ placed in trust with SCOTIABANK INVERLAT, SOCIEDAD ANÓNIMA, A FULL SERVICE BANK, SCOTIABANK INVERLAT FINANCIAL GROUP, and designated the MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR as primary beneficiary, the title to the real property defined in such notarial instrument as the CARDONAL PARCEL (SITE III), described in representation I.f) of said instrument, whose areas, measurements and boundaries are deemed reproduced herein as if they were literally included and which correspond to SITE III described in recital (f) of this instrument;

- - - **h.2.** DEED OF GIFT FOR ROAD, pursuant to which ATILIO COLLI VILLARINO and ALICIA CESEÑA AGUNDEZ donated to the HONORABLE NINTH DISTRICT OF THE MUNICIPALITY OF LOS CABOS, BAJA CALIFORNIA SUR, the title to the real property referred to in such notarial instrument as CARDONAL ROAD (SITE II), described in recital I.f) of such instrument, whose areas, measurements and boundaries are deemed reproduced herein as if they were literally included and which correspond to SITE II described in recital (f) of this instrument; and

- - - **h.3.** EASEMENT ESTABLISHMENT AGREEMENT, recording the establishment of a NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE IN PERPETUITY, for an area of land referred to in such instrument merely for identification purposes as SITE IV, which is located within the area of SITE I, which is described in recital f)

3830

CABO CONTRACTS ENGLISH 00000034

12

of this instrument. Such easement involves an area of six thousand, one hundred twenty-eight point four thousand fourteen square meters (6,128.4514)[1], with the following measurements and boundaries:

- - - TO THE NORTH: 10.2071 METERS, WITH SITE III, 239.694 METERS OWNED BY ATILIO COLLI;

- - - TO THE SOUTH: 10.00 METERS WITH PROPERTY OF ATILIO COLLI, 90.00 METERS WITH PROPERTY OF ATILIO COLLI, 10.00 METERS WITH SITE II, 136.456 WITH PROPERTY OF ATILIO COLLI;

- - - TO THE EAST: 165.386 WITH PROPERTY OF ATILIO COLLI, 110.00 METERS WITH PROPERTY OF ATILIO COLLI, 100.00 METERS WITH PROPERTY OF ATILIO COLLI;

- - - TO THE WEST: 100.00 METERS WITH PROPERTY OF ATILIO COLLI, 100.00 METERS WITH PROPERTY OF ATILIO COLLI; 174.174 METERS WITH PROPERTY OF LUIS BULNES MOLLEDA, and

- - - i) By means of notarial instrument number sixty-four thousand, seven hundred eighty-six (64,786), volume one thousand twenty-one (1,021), dated the eighteenth of February of two thousand six, executed before the undersigned notary public assigned to this office, and recorded in the Public Register of Real Property of the municipality of Los Cabos, under number forty-three (43), page forty-three (43), volume CCXXXIX, section one, dated the twenty-second of February of two thousand six (2006), the following acts were recorded:

- - - i.1. NOTARIAL RECORDING OF THE OFFICIAL LETTER FOR SUBDIVISION NUMBER ONE HUNDRED TWENTY-SEVEN (127), issued by the Department of Planning and Urban Development of the Honorable IV District of the municipality of Los Cabos, Baja California Sur, dated the twenty-first of November of nineteen hundred ninety-one, described in recital (d) of this instrument; and

- - - i.2. THE CONCLUSION OF THE TESTAMENTARY SUCCESSION to assets of ATILIO COLLI VILLARINO, pursuant to which ALICIA CESEÑA AGUNDEZ was awarded (i) the ownership rights that belonged to ATILIO COLLI VILLARINO in respect of the lots described in recitals **d), e) and f)** of this instrument, as well as (ii) the contractual position and, therefore, all the trust rights and obligations of ATILIO COLLI VILLARINO arising from the TRUST AGREEMENT TRANSFERRING TITLE WITH A REVERSION CLAUSE mentioned in recital h.1 hereof; (iii) the contractual position and, therefore, all the rights and obligations of ATILIO COLLI VILLARINO arising from the GIFT FOR ROAD, pursuant to which ATILIO COLLI VILLARINO and ALICIA CESEÑA AGUNDEZ donated, to the HONORABLE NINTH DISTRICT OF THE MUNICIPALITY OF LOS CABOS, BAJA CALIFORNIA SUR, the title to SITE II to which reference was made in recital h.2 hereof; and (iv) the contractual position and, therefore, all the rights and obligations of ATILIO COLLI VILLARINO arising from the establishment of a NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT

3831

---

[1] Translator's note: the number and the words do not agree in the original.

CABO CONTRACTS ENGLISH 00000035

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR

[in left and right margin] VERIFIED
[in left margin, illegible notarial seal]

13

IN PERPETUITY, regarding the land area referred to in such instrument, merely for identification purposes, as SITE IV, which continues to be an integral part of SITE I and is described in recital h.3 of this Recitals section.

- - - j) On the twenty-eighth of February of the year two thousand six, notice was given to the Honorable Ninth District of Los Cabos and the Municipal Water Utility of Los Cabos, and on the first of March of two thousand six, notice was given to the trustee, Scotiabank Inverlat, Sociedad Anónima, of the aforementioned testamentary award and, therefore, the consolidation of the contractual position of ALICIA CESEÑA AGUNDEZ DE COLLI as the sole holder of the contractual positions awarded under the three agreements referenced in items h.1, h.2 and h.3 hereof.

- - - k) Except for the NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT IN PERPETUITY, identified as SITE IV, which was established regarding a portion of SITE I and to which reference is made in recital h.3 hereof, the properties described in this recitals section of this instrument, are free from encumbrance and limitations on their ownership, as there are no notations of this nature concerning them in the Public Register of Real Property of San José del Cabo, Baja California Sur, according to certificates issued by such office, all dated the twenty-third of February of two thousand six; the properties are also current on payment of their tax contributions, according to documentary proof issued by the respective official department.

- - - TWO. The lots described in recital d) and Site I described in recital f) of this instrument, which are the subject of this sale transaction, except for the NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT IN PERPETUITY, identified as SITE IV, which was established from a portion of SITE I, and to which reference is made in recital h.3 of this instrument, are free from encumbrance and limitations on their ownership, as there are no notations of this nature in the Public Register of Real Property of San José del Cabo, Baja California Sur, according to certificates issued by such office, all dated the eighth of March of two thousand six.

- - - THREE. The real properties described in this instrument are current on payment of their tax contributions, according to certificates issued by the respective official departments and dated the sixth of March of two thousand six.

- - - FOUR. AGRARIAN REFORM LETTER. The SELLER herein showed to me the Certificate for Ranch Land that Cannot be Expropriated or Encumbered number three five one eight zero one (351801), issued by the Ministry of Agrarian Reform, dated the twenty-second of May of nineteen hundred eighty-seven, in Mexico City, Federal District. In such certificate it states that the property that is the subject of this Agreement cannot be expropriated or encumbered.

3832

CABO CONTRACTS ENGLISH 00000036

14

- - -**FIVE.** KENNETH ABOUD JOWDY states, in his capacity as Chief Executive Office of the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, that his principal is engaged in the construction and sale of property developments, and to this end it is purchasing the property that is the subject of this agreement. Therefore, the total amount of the expenditure made to purchase such property will be deducted in the respective tax year, in accordance with the provisions of Article 225 of the Income Tax Act. .

- - -Now therefore, the parties agree to the following:

- - -CLAUSES- - -

### I. REAL PROPERTY SALES AGREEMENT

- - -**ONE.** ALICIA CESEÑA AGUNDEZ "SELLS" to "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, which "BUYS" and acquires the real properties described in recital d), and Site I, described in recital f), of this instrument, including but not limited to the portion of Site I on which the NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT IN PERPETUITY was established, which is identified as SITE IV and to which reference is made in recital h.3) of this instrument, with the areas, measurements and boundaries stated therein, which is deemed reproduced herein as if it were literally included, with everything related thereto *de facto* and *de jure*.

- - -**TWO.** The assets that are the subject of the sale are free from any encumbrance and there are no limitations on their title, except for the NON-EXCLUSIVE VOLUNTARY RIGHT OF WAY AND USAGE EASEMENT IN PERPETUITY established regarding Site I, which is referenced in recital h.3 of this instrument. The SELLER agrees to carry out clean-up in the event of eviction pursuant to the law. In connection with this purpose and for the purpose of performance and interpretation of this agreement, the parties agree to submit to the jurisdiction of the laws and competent courts of the city of La Paz, Baja California Sur.

- - -**THREE.** The transaction price is:

SEVENTY-TWO MILLION, EIGHT HUNDRED TWENTY-FIVE THOUSAND, EIGHT HUNDRED EIGHTY-THREE UNITED STATES DOLLARS AND 00/100 (USD 72,825,883.00), which shall be paid as follows:

- - -A). The amount of SIX MILLION, SIX HUNDRED TWENTY-FIVE THOUSAND AND 00/100 UNITED STATES DOLLARS (USD 6,625,000.00), prior to the signing of this notarial instrument.

- - -B). The amount of SIXTY-SIX MILLION, TWO HUNDRED THOUSAND, EIGHT HUNDRED EIGHTY-THREE AND 00/100 UNITED STATES DOLLARS (USD 66,200,883.00),

[two illegible notarial seals in right margin]

3833

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

15

[in left and right margin] VERIFIED
[illegible notarial seal in left margin]

which will be paid subsequent to the signing of this notarial instrument, by means of a bank transfer made by ST[E]WART TITLE INFORMATION SERVICES, to account number ███████ in the name of ALICIA CESEÑA AGUNDEZ, at the bank NORTHERN TRUST INTERNATIONAL BANK in the United States of America, headquartered at 40 Broad Street, 10th Floor, New York, New York, 10004, ABA number ████████ SWIFT CNORUS33, account name: MERRILL LYNCH PIERCE FENNER & SMITH, account number ███████ ████, for credit to account number ████████ in the name of ALICIA CESEÑA AGUNDEZ, as agreed directly by ST[E]WART TITLE INFORMATION SERVICES and the seller, AL[I]CIA CESEÑA AGUNDEZ, by means of an instruction letter, on the understanding that the sale shall be deemed concluded upon the signing of this notarial instrument, as the parties have agreed on the thing and its price, even though a portion of the price has not been delivered prior to the signing of this notarial instrument.

- - -**FOUR. THE GRANTORS AGREE THAT:**

- - -A). This transaction shall be carried out *ad corpus*[2]. Therefore, if the areas and measurements to which reference has been made are larger or smaller, such difference will be to the benefit or detriment of the BUYER.

- - -B). The BUYER acknowledges receipt of the properties that are the subject of this agreement.

- - -C). All the expenses, taxes and fees that arise from the granting of this agreement, through its recording, that the BUYER is required to carry out, are for the BUYER'S sole account, with the exception of the income tax the SELLER is required to pay. The SELLER states under oath that she is a natural person with a business, that she reports her income and pays her taxes in her annual tax return, under Federal Taxpayer Register Number ███████ and that the property that is the subject of this instrument is used for the business of livestock raising, which, when he was alive, was engaged in by her husband, Atilio Colli Villarino, and that she has continued to engage in this activity, as the assets, rights and obligations dedicated to the business of livestock raising were awarded to her in her capacity as heir to the entire estate and beneficiary of the testamentary succession to the assets of Atilio Colli Villarino, as recorded in the notarial instrument mentioned in recital I) hereof. She continued by stating that in order to demonstrate that the property in question is dedicated to the business of livestock raising and forms part of the assets, she was providing a copy of the receipt and of form 13 (annual tax return of natural persons) issued by the Tax Administration Service, the supplementary return for fiscal year 2004 filed by Atilio Colli Villarino. Now, regardless of the fact that Alicia Ceseña has been engaging in business

3834

---

[2] Translator's note: In Mexico, in an *ad corpus* sale there is a fixed predetermined price that does not guarantee that the property is of a specific area.

16

activities, she filed via the internet, on the Tax Administration Service page, a notice of change in tax position with the Federal Taxpayer Register, pursuant to which she increased tax liability code S250 Livestock Raising (Regime for Natural Persons with Business and Professional activities), and she therefore provided to me the original of the certificate of approval containing the digital seal of the aforementioned notice. Therefore, and based on Article Two Hundred One (201) of the Regulations of the Income Tax Act, the SELLER states that she will declare and report, for her own account, the tax that is applicable. Therefore, the notary public before whom this instrument is executed is released from the obligation to calculate and report the aforementioned tax.

- - -FIVE. The BUYER agrees to use the property as ordered by the Urban Development Law in effect in the state of Baja California Sur.

- - - II. TRANSFER OF TRUST RIGHTS TRANSFERRING TITLE WITH REVERSION CLAUSE.

- - - -ONE. ALICIA CESEÑA AGUNDEZ, as "TRANSFEROR", irrevocably transfers to the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, as "TRANSFEREE", which "PURCHASES" the contractual position and all rights and obligations of any kind of ALICIA CESEÑA AGUNDEZ relating to the Trust Agreement Transferring Title with Reversion Clause, recorded by a notary public by means of the notarial instrument cited in recital h) hereof, with everything related thereto *de facto* and *de jure*.

- - -TWO. The assets that form part of the transfer being carried out are free from any encumbrances and there are no limitations on their title.

- - -THREE. This transfer is made free of charge.

- - -FOUR. The transferee expressly accepts the transfer made to it and subrogates to the contractual position, which it assumes together with all the rights and all the obligations thereunder, by means of this act, without prejudice to the notice that must be given to the rest of the parties in accordance with the terms of the respective trust agreement.

- - -FIVE. The grantors agree as follows:

- - -A). The transferee acknowledges receipt of the trust rights as secondary beneficiary "A" that derive from the aforementioned trust.

- - -B). In this same act, the transferor and the transferee sign, in the presence of the undersigned notary public, a document that will serve as the notice to the rest of the parties to the trust agreement referenced in this section, in order to inform them of the transfer of the contractual position as agreed upon herein, and on the acceptance of the transferee; with the instruction to the notary public that within five (5) days of the signing of this notarial instrument, he notify the trustee and primary beneficiary of

[two illegible notarial seals in right margin]

3835

CABO CONTRACTS ENGLISH 00000039

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

17

[in left and right margin] VERIFIED

of the instrument in question, so that they are informed of this transfer, in accordance with clause twenty-five of the respective instrument.

- - -C). All the expenses, taxes and fees that arise from the granting of this Transfer Agreement, through its recording, that are the responsibility of the transferee, are for its sole account, including any amount by way of income tax.

- - - **III. TRANSFER OF DONOR RIGHTS, IN A CERTAIN GIFT OF REAL PROPERTIES TO BE USED FOR ROADS**.

- - -**ONE**. ALICIA CESEÑA AGUNDEZ, in her capacity as absolute holder of the rights established in favor of ATILIO COLLI VILLARINO and of she herself, ALICIA CESEÑA AGUNDEZ, in the IRREVOCABLE DEED OF GIFT FOR THE PARCEL CALLED CARDONAL ROAD (SITE II), which was recorded by a notary public by means of the notarial instrument mentioned in recital h) hereof, "TRANSFERS" to the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, which "PURCHASES", with everything related thereto *de facto* and *de jure*, the contractual position and all the rights and obligations of any kind of the TRANSFEROR in the aforementioned IRREVOCABLE DEED OF GIFT, specifically including, but not limited to, the rights established in clause EIGHT of the deed of gift.

- - -**TWO**. The assets that form part of the transfer being carried out are free from any encumbrances and there are no limitations on their title.

- - -**THREE**. This transfer is made free of charge.

- - -**FOUR**. The transferee expressly accepts the transfer made to it and subrogates to the contractual position, which it assumes with all the rights and all the obligations inherent thereto, by means of this act, without prejudice to the notice that must be given to the rest of the parties in accordance with the terms of the original agreement.

- - -**FIVE. THE GRANTORS AGREE THAT:**

- - -A). In this same act, the Transferor and the Transferee sign, in the presence of the undersigned notary public, a document that will serve as the notice to the rest of the parties to the agreement referenced in this section, in order to inform them of the transfer of the contractual position agreed upon herein and on the acceptance of the transferee; with the instruction to the notary public that within five (5) days of the signing of this notarial instrument, he is to notify the Honorable District of Los Cabos, Baja California Sur, so that it is aware of this transfer of rights under the aforementioned IRREVOCABLE DEED OF GIFT.

- - -B). All the expenses, taxes and fees that arise from the granting of this Transfer Agreement, through its recording, that are the responsibility

[illegible notarial seals in left margin]

3836

CABO CONTRACTS ENGLISH 00000040

18

of the transferee, shall be for its sole account, including any amount by way of income tax.

- - -<u>IV. ASSIGNMENT OF CONTRACTUAL POSITION AND ALL OF THE OBLIGATIONS AND RIGHTS, IN A CERTAIN EASEMENT</u>.

- - -**ONE.** ALICIA CESEÑA AGUNDEZ "TRANSFERS" irrevocably to the company "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, represented by KENNETH ABOUD JOWDY, which "PURCHASES" the contractual position and all the rights and all the obligations of any kind of the transferor, relating to the EASEMENT ESTABLISHMENT AGREEMENT; recorded by a notary public by means of the notarial instrument mentioned in recital h) hereof.

- - -**TWO.** This transfer is made free of charge.

- - -**THREE.** The transferee expressly accepts the transfer made to it and subrogates to the contractual position, which it assumes with all the rights and all the obligations inherent thereto, by means of this act, without prejudice to the notice that must be given to the rest of the parties to the aforementioned easement establishment agreement.

- - -**FOUR.** The grantors agree:

- - -A). In this same act, the transferor and transferee sign, in the presence of the undersigned notary public, a document that will serve as the notice to the rest of the parties to the agreement referenced in this section, in order to inform them of the transfer of the contractual position agreed upon herein and on the acceptance of the transferee; with the instruction to the notary public that within five (5) days of the signing of this notarial instrument, he is to notify the Honorable District of Los Cabos, Baja California Sur, so that it is aware of this transfer of rights under the aforementioned IRREVOCABLE DEED OF GIFT.

- - -B). All the expenses, taxes and fees that arise from the granting of this Transfer Agreement, through its recording, that are the responsibility of the transferee, are for its sole account, including any amount by way of income tax.

- - -<u>V. COMMON PROVISIONS OF THE LEGAL ACTS OF THIS INSTRUMENT</u>

- - -**ONE.** The parties agree that any notice related to this instrument must be sent to the parties' following addresses:

SELLER: Calle Miguel Hidalgo, sin número, between Manuel Doblado and Zaragoza, Colonia Centro, San José del Cabo, Baja California Sur, postal code twenty-three thousand four hundred.

BUYER: Camino del Mar No. 323, Pedregal Development, Cabo San Lucas, Baja California Sur, twenty-three thousand four hundred fifty.

- - - All notices and communications that the parties must give shall be in writing and may be sent by any means to the addresses stated above, or be

3837

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

19

[in left and right margin] VERIFIED

delivered by hand to said addresses. They shall be deemed delivered when they are received by the party to which they have been addressed.

- - -TWO. Failure by either of the parties to exercise their rights at any time or for any period of time, under any of the provisions of this agreement, shall not be deemed a waiver of such rights, nor shall it affect any subsequent exercise thereof, and shall not be deemed a release from performance of any obligation of the other party.

- - -THREE. If any of the clauses of this agreement is in violation of the law or become nulls or void, such clause shall not affect the validity of the remaining clauses, shall be deemed deleted and shall be replaced, if possible, by a new clause or clauses with wording to the same effect, based on the overall interpretation of the agreement or deduced therefrom.

- - -FOUR. For all matters related to this agreement, the parties are subject to the laws applicable in Baja California Sur. The parties are subject, with regard to the interpretation and performance of this agreement, and any matter that is not included herein, to the jurisdiction and authority of the courts of the city of La Paz, Baja California Sur, and waive any jurisdiction to which they may be entitled by reason of their present or future domicile.

- - -LEGAL CAPACITY

- - - KENNETH ABOUD JOWDY has demonstrated his legal capacity and the legal existence of his principal, by means of notarial instrument sixty-four thousand, eight hundred sixty-five (64,865), volume one thousand, twenty-five (1,025), dated the twenty-third of February of the year two thousand six, which he states has not been revoked or modified, and was recorded in the Public Register of Real Property and Trade of San José del Cabo, on Electronic Commercial Page: nine zero six five four (9065 4), Federal Taxpayer No. ▮▮▮▮▮▮▮. First Recording, Payment Receipt No. two seven five four seven one (275471), dated the twenty-seventh of February of the year two thousand six, executed before the undersigned notary public, assigned to Notarial Office Number Seven, of the State, in which is recorded the FOUNDING of the corporation called "DIAMANTE CABO SAN LUCAS", S. DE R.L. DE C.V., from which I have copied the following relevant portions:

"...ONE. The company will be called "DIAMANTE CABO SAN LUCAS"; this name will be followed by the words SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE [limited liability company with variable capital]. TWO. The purpose of the company is to engage in any type of activities related to real property development, within the limits permitted by the Foreign Investment Law. Therefore, in addition to the activities mentioned in this article, the company will develop private eighteen-hole golf courses, residential units, cottages and other related infrastructures. The company may engage, in general, in any type of activities related to the foregoing, and therefore the company may, but is not limited to: A) within the limits permitted by the Foreign Investment Law, engage in any type of

[illegible notarial seals in left margin]

3838

CABO CONTRACTS ENGLISH 00000042

20

activities related to the development of real property for tourism purposes; B) within the limits permitted by the Foreign Investment Law, establish, purchase, construct, lease, operate and own, in any form permitted by law, stores, shops, offices, bars, markets and other establishments that are necessary or advisable to the purposes of the company; C) purchase or possess in any manner, use, lease as lessor or lessee, manage, sell or dispose of in any form, all the chattel or real property that may be necessary or advisable to achieve the purposes of the company; D) supervise, plan and/or contract, directly or through third parties, any form of buildings, structures or residential developments, and purchase or sell, in any manner, construction materials; E) provide and receive any type of technical, administrative, supervisory, and/or promotional services, and in general any kind of services required for commercial or industrial negotiations, in Mexico or abroad; F) promote, organize, manage and/or supervise any kind of corporations or partnerships; G) purchase shares, interests, stakes or securities and bonds of any kind of company or corporation and hold interests in them; H) record, obtain, acquire, use or dispose of any kind of trademarks, trade names, investment certificates, patents, copyrights, options and preferences, processes and concessions or licenses, in Mexico or abroad; I) Obtain and grant loans, with or without security, issue, accept, guarantee, endorse and, in general, subscribe any negotiable instruments, and guarantee, in any form, the obligations of third parties; J) in general, enter into any type of acts or contracts that are related, directly or indirectly, to the company or other purposes, including the acquisition in any form of chattel or real property in order to carry out the company purpose. The company may only engage in activities that form part of its purpose, and may not in any way carry out activities reserved exclusively to the Mexican government. THREE. The registered office of the company will be in the city of Cabo San Lucas, Baja California Sur, without prejudice to its establishment of offices or branches in other parts of the state, of the Republic or abroad, and it may specify elected domiciles in the contracts into which it enters. FOUR. The duration of the company will be NINETY-NINE YEARS, counted from the date on which this notarial instrument is signed. FIVE. FOREIGN OWNERSHIP CLAUSE. The company will have Mexican nationality, with a FOREIGNERS' ADMISSION CLAUSE. Foreign investors or companies may own stakes in its capital stock, and there is no foreigners' exclusion clause. Ownership of any percentage of the capital is permitted. "Any foreigner that, at the time of the founding or any later time, acquires an interest or stake in the company, shall be deemed Mexican based on that simple fact, in respect of each other, and it shall be deemed that the foreigner agrees not to invoke the protection of its government, under penalty, in the event it breaches such agreement, of losing such interest or stake to the benefit of the

[illegible notarial seal in right margin]

3839

CABO CONTRACTS ENGLISH 00000043

[illegible seal and numbers]

HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

21

[in left and right margin] VERIFIED

Mexican nation." SIX. The capital of the company will be variable, with a minimum initial amount without right of withdrawal of MXN 10,000.00 (TEN THOUSAND AND 00/100 MEXICAN PESOS), with no maximum. SEVEN. The capital stock will be fully subscribed and paid in, and consists of shares of MXN 500.00 (five hundred Mexican pesos) each. These shares will always be in the foregoing amount or a multiple thereof. The Managing Director of the company states under oath that the full amount of the value of the shares has been deposited in the company's safe. NINE. The company will be managed by a MANAGING DIRECTOR or a CHIEF EXECUTIVE OFFICER, who will have the broadest of powers under a general power of attorney for LAWSUITS AND COLLECTIONS, ACTS OF ADMINISTRATION and ACTS OF OWNERSHIP, with all the general and special powers that require a special clause according to the law, pursuant to the first THREE paragraphs of Article two thousand, five hundred fifty-four (2,554) and the special clauses of Article two thousand, five hundred eighty-seven (2,587), both of the Civil Code of the Federal District and corresponding Article two thousand, four hundred sixty-eight (2,468) of the Civil Code of the state of Baja California Sur, and their corresponding articles in the other states of the Federation. The legal representative may appear before any type of authority, whether Federal, state, municipal and/or delegation, of any legislative, executive, judicial, labor, and/or tax authority or authority of any other nature. The legal representative may carry out all types of actions and applications whatsoever, in relation to filing complaints, criminal complaints and charges, assist the agent of the Public Prosecutor and appear as a civil party, withdraw from any type of actions, proceedings, collateral issues, appeals, complaints, criminal complaints and charges, including a proceeding for *amparo* [*appeal for relief under the Constitution*], settle and compromise in arbitration proceedings under the law and arbitration according to equitable principles; submit and answer interrogatories, challenge with or without cause, receive payments and any other actions without any reservations or limitations whatsoever, with the authority to appear before any type of natural person or legal entity, private or official, carrying out any type of actions and/or requests. In addition to the general power for lawsuits and collections now granted, pursuant to Articles 689, 690, 692 and 695 of the Federal Labor Act, the legal representative is appointed the legal representative of the company, with powers to appear on its behalf at Settlement Hearings held before the Local Settlement Board, the Federal Settlement Board and/or the respective Special Settlement and Arbitration Board, whether Federal or Local, or before any other labor authority, with powers for administrative acts relating to labor and to enter into the agreements that may arise therefrom. POWER FOR ADMINISTRATIVE ACTS, in order that the legal representative may enter into or have entered into, perform or have performed, any type of actions, acts, agreements and/or contracts of any kind whatsoever, executing any type of private documents or public instruments with administrative powers. POWER TO SIGN

[illegible notarial seals in left margin]

3840

CABO CONTRACTS ENGLISH 00000044

22

NEGOTIABLE INSTRUMENTS, in order that the legal representative may issue, draw, subscribe, endorse, guarantee or place in circulation in any other manner, any type of negotiable instruments, pursuant to Article Nine (9) of the General Law on Negotiable Instruments and Credit Transactions. POWER TO ENGAGE IN ACTS OF OWNERSHIP, in order that the legal representative may transfer, encumber, mortgage or in any other manner dispose of the possession and ownership of assets of the principal, of any kind whatsoever, and may sign any private documents or public instruments, in the terms, prices and other conditions the legal representative deems appropriate, and if applicable, negotiate payments, receive their amount and endorse or collect the checks that constitute payment. POWERS TO BE REPLACED IN WHOLE OR IN PART IN THIS POWER OF ATTORNEY. The legal representative has the right to exercise the same and may appoint legal representatives, agents and employees, establishing their powers, obligations and remuneration, and may revoke the replacements made. TEMPORARY: ONE. At the first Shareholders' Meeting, the shareholders approved the following resolutions: 1. The company will be managed by a MANAGING DIRECTOR. 2. KENNETH ABOUD JOWDY is appointed MANAGING DIRECTOR. In the performance of his duties he shall have the powers specified in clause NINE of these articles of incorporation, with the proviso that he must, in order to perform his activities, obtain the respective permit that is issued at the discretion of the Ministry of the Interior, and that in the event of violation of the Regulations of the General Population Act he will be liable for the respective penalties. 3. A GENERAL POWER OF ATTORNEY FOR LAWSUITS AND COLLECTIONS, ADMINISTRATIVE ACTS AND ACTS OF OWNERSHIP is granted to FERNANDO MANUEL GARCIA CAMPUZANO."

I, the Notary Public, certify that I have seen the aforementioned instruments, which I append to this instrument.

- - - **I, THE NOTARY PUBLIC, CERTIFY:**

- - -**ONE.** I know the appearing parties and I consider them to have legal capacity.

- - -**TWO.** The parties gave their identification particulars as follows: **ALICIA CESEÑA AGÚNDEZ**, seventy-four (74) years of age, a Mexican citizen, born in Cabo San Lucas, Baja California Sur, on the ███████████ ████████████████████ a businesswoman, marital status widow, residing at calle Hidalgo sin número, colonia Centro, in San José del Cabo, Baja California Sur. **KENNETH ABOUD JOWDY**, native of Connecticut, U.S.A., born on the ███████████████████████████ businessman, single, a resident of the United States of America, temporarily residing in this city; he demonstrated his legal presence in Mexico by means of the immigration document that is separately appended hereto. **FERNANDO MANUEL GARCIA CAMPUZANO**, a Mexican citizen, married, attorney, born in Ensenada, Baja California Sur,

[illegible notarial seals in right margin]

3841

[illegible seal and numbers]

**HECTOR CASTRO CASTRO**
INCUMBENT
**JOSÉ ALBERTO CASTRO SALAZAR**
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

23

[in left and right margin] VERIFIED

on the ████████████████ residing at Obregón ████████████████
████████████████ Baja California, all of them temporarily in this city.

- - -**THREE**. With regard to income tax, and after being given the warnings required by law, they stated that they are current, without showing me proof of this.

- - -**FOUR**. The contents of this instrument and the items appended hereto are true copies of their originals, which I have seen and have returned to the interested parties.

- - -**FIVE**. After advising the appearing parties of their right to read or to have me, the Notary Public, read them this instrument, they elected the former, and having done so, they expressed their approval of it. Therefore, after its legal force and effect were explained to them, they confirmed and signed it on the date hereof. I SO CERTIFY.

ALICIA CESEÑA AGÚNDEZ. SIGNATURE. KENNETH ABOUD JOWDY. SIGNATURE. FERNANDO MANUEL GARCIA CAMPUZANO. SIGNATURE. SIGNED BEFORE ME, JOSE ALBERTO CASTRO SALAZAR, SIGNATURE, AUTHENTICATING SEAL.

ON THE TWENTY-FOURTH DAY OF THE MONTH OF MARCH OF THE YEAR TWO THOUSAND SIX, WITH TAXES PAID, I DEFINITIVELY AUTHENTICATE THIS NOTARIAL INSTRUMENT, IN LA PAZ, STATE OF BAJA CALIFORNIA SUR, UNITED MEXICAN STATES. I SO CERTIFY.

JOSE ALBERTO CASTRO SALAZAR. SIGNATURE. AUTHENTICATING SEAL OF THE NOTARY PUBLIC. THIS IS THE FIRST CERTIFIED COPY AND THE FIRST ISSUED FOR THE USE OF THE COMPANY "DIAMANTE CABO SAN LUCAS", A LIMITED LIABILITY COMPANY WITH VARIABLE CAPITAL, AS OWNER, AND CONSISTS OF TWELVE TWO-SIDED SHEETS, DULY VERIFIED, SEALED AND SIGNED.

LA PAZ, BAJA CALIFORNIA SUR, ON THE TWENTY-FOURTH OF MARCH OF THE YEAR TWO THOUSAND SIX. I SO CERTIFY.

[illegible notarial seal in left margin]

[illegible notarial seal]

[signature]

3842

- - - IN LA PAZ, BAJA CALIFORNIA SUR, MEXICO, ON THE TWENTY-SEVENTH DAY OF THE MONTH OF MARCH OF THE YEAR TWO THOUSAND SIX, I, **JOSE ALBERTO CASTRO SALAZAR**, NOTARY PUBLIC ASSIGNED TO NOTARIAL OFFICE NUMBER SEVEN OF THE STATE, ACTING IN THE MUNICIPALITIES OF LA PAZ AND LOS CABOS, AT WHICH THE INCUMBENT NOTARY PUBLIC IS **HECTOR CASTRO CASTRO**, ACTING IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE TWENTY-NINE (29) OF THE LAW ON THE NOTARIAL PROFESSION NOW IN EFFECT, I RECORD AND **CERTIFY**: THIS DOCUMENT IS A TRUE COPY OF THE ORIGINAL, WHICH I HAVE SEEN, WITH A COPY OF APPENDIX A1, WHICH IS APPENDED UNDER LETTER "A" OF THIS NOTARIAL OFFICE UNDER MY CHARGE. I SO CERTIFY.

[notarial seal]
[signature]

3843

CABO CONTRACTS ENGLISH 00000047

HECTOR CASTRO CASTRO
INCUMBENT
JOSE ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE NO. 7

LA PAZ, BAJA CALIFORNIA SUR

**CERTIFIED COPY:** FIRST CERTIFIED COPY OF THIS NOTARIAL INSTRUMENT, WHICH CONTAINS THE TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE, THE EASEMENT ESTABLISHMENT AGREEMENT AND THE DEED OF GIFT FOR ROAD, ENTERED INTO AMONG: ALICIA CESENA DE COLLI AND ATILIO COLLI VILLARINO, PLAYA GRANDE DE CABO SAN LUCAS, S.A. DE C.V., THE MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR, AND SCOTIABANK INVERLAT, S.A., IN FAVOR OF THE HONORABLE NINTH DISTRICT OF THE MUNICIPALITY OF LOS CABOS, BAJA CALIFORNIA SUR.

Notarial Instrument Number          62,902

Volume                              987

Date                                September 1, 2005

IGNACIO RAMIREZ [illegible]
[illegible] 122-31-20, 122-02-11 and [illegible]
LA PAZ, BAJA CALIFORNIA SUR

3928

[illegible seal and numbers]
HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR
[in left and right margin] VERIFIED

- - -VOLUME NINE HUNDRED EIGHTY-SEVEN- - -
- - -NOTARIAL INSTRUMENT SIXTY-TWO THOUSAND NINE HUNDRED TWO- - -
- - - In the city of La Paz, Baja California Sur, Mexico, on the first day of the month of September of the year two thousand five, I, JOSE ALBERTO CASTRO SALAZAR, Notary Public assigned to Notarial Office Number SEVEN of the State and Federal Real Property, acting in the municipalities of La Paz and Los Cabos, residing in the capital of the State, at which the incumbent notary public is HECTOR CASTRO CASTRO, acting in accordance with the provisions of Article sixty-one (61) and twenty-nine (29) of the Law on the Notarial Profession now in effect, record the following legal acts:
I.  TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE
II. THE EASEMENT ESTABLISHMENT AGREEMENT
III. THE DEED OF GIFT FOR ROAD
ENTERED INTO ON ONE SIDE BY **MRS. ALICIA CESEÑA AGUNDEZ DE COLLI AND ATILIO COLLI VILLARINO**, OF THEIR OWN RIGHT (WHO WILL BE REFERRED TO AS "**THE COLLIS**"; ON ANOTHER SIDE BY **PLAYA GRANDE DE CABO SAN LUCAS, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE**, REPRESENTED IN THIS ACT BY ITS LEGAL REPRESENTATIVE MR. **FRANCISCO BULNES MALO**, (WHO WILL BE REFFERED TO AS "**PLAYA GRANDE**"); ON ANOTHER SIDE, **THE MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR**, REPRESENTED IN THIS ACT BY MR. LUIS ARMANDO DÍAZ AND JOSE ANTONIO AGUNDEZ MONTAÑO, ACTING AS PRESIDENT OF THE GOVERNING BODY AND CEO, RESPECTIVELY, (WHO WILL BE REFERRED TO AS "**THE UTILITY**"); ON ANOTHER SIDE, **THE HONORABLE NINTH DISTRICT OF THE MUNICIPALITY OF LOS CABOS, BAJA CALIFORNIA SUR**, REPRESENTED BY MR. LUIS ARMANDO DIAZ AND MARGARITA DIAZ AND ENRIQUE PASCUAL NAVARRO BARAJAS, SERVING AS MUNICIPAL PRESIDENT, MUNICIPAL SINDICATE, GENERAL MUNICIPAL SECRETARY, RESPECTIVELY (WHO WILL BE REFERRED TO AS "**THE H. MUNICIPALITY**") AND ON THE LAST SIDE, **SCOTIABANK INVERLAT, SOCIEDAD ANÓNIMA, INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT**, (WHO WILL BE REFERRED TO AS "**THE TRUSTEE**"), REPRESENTED BY ITS TRUSTEE REPRESENTATIVES **OFELIA DEL SAGRARIO ISAAC NAVARRO AND JESÚS LADIMIR GARCIA VALENZUELA**.

3929

--- PURSUANT TO THE FOLLOWING STATEMENTS AND CLAUSES ---

--- STATEMENTS ---

I.- MR. AND MRS COLLI state that:

a) By means of notarial instrument number three thousand one hundred ninety-two recorded on January 7 nineteen sixty-three, executed before the Notary Public Armando Aguilar Paniagua, who was notary public number one of the state of Baja California Sur, and registered in the Public Registry Office of the Municipality of Los Cabos, under number eighty-four (84) of the second (2nd) volume of section one (I) on February thirteen (13), nineteen sixty-three (1963): the purchase made by Mr. ATILIO COLLI VILLARINO of a piece of land located in the property of La Laguna, in Cabo San Lucas, Baja California Sur, was recorded; a total of four hundred thirty-seven (437-00-00) hectares and whose measurements, property lines and boundaries which are described in the aforementioned notarial instrument are deemed reproduced herein as if they were literally included.

b) By means of notarial instrument three thousand two hundred two recorded on January 7 nineteen sixty-three, executed before the Notary Public Armando Aguilar Paniagua, who was notary public number one of the state of Baja California Sur, and registered in the Public Registry Office of the Municipality of Los Cabos, under number eighty-five (85) of the second (2nd) volume of section one (I) on February thirteen (13), nineteen sixty-three (1963): the purchase made by Mr. ATILIO COLLI VILLARINO of a piece of land located in the property of La Laguna, in Cabo San Lucas, Baja California Sur, was recorded; a total of one hundred sixty-three (163-00-00) hectares and whose measurements, property lines and boundaries which are described in the aforementioned notarial instrument are deemed reproduced herein as if they were literally included.

c) By means of notarial instrument eleven thousand two hundred one recorded on November 25 nineteen eighty-eight, executed before the Notary Public Hector Castro Castro, who was notary public number seven of the state of Baja California Sur, and registered in the Public Registry Office of the Municipality of Los Cabos, with a marginal annotation under number eighty-four (84) of the second (2nd) volume of section one (I) on December nine (9), nineteen eighty-one (1981); the following was recorded: the clarification of surface, measurements, and boundaries of the land described in previous statements 1.a) and 1.b), resulting from a topographic rendering carried out by the National Land Registry Office, which conclude a total surface area for both pieces of land of six hundred seventeen (617-00-00) hectares and whose measurements, property lines and boundaries which are described in the aforementioned notarial instrument are deemed reproduced herein as if they were literally included.

3930

CABO CONTRACTS ENGLISH 00000050

[illegible seal and numbers]
HECTOR CASTRO CASTRO
INCUMBENT
JOSÉ ALBERTO CASTRO SALAZAR
ASSIGNED TO
NOTARIAL OFFICE [illegible]

LA PAZ, BAJA CALIFORNIA SUR
[in left and right margin] VERIFIED

d) On the twenty-first day of November, nineteen ninety-one, by way of the Office of Urban Planning of the Municipality of Los Cabos, Baja California Sur, authorization was obtained from the General Office of Public Works to subdivide in seven parcels the land described in section 1.c) above; this subdivision transaction was manifested in the registry, resulting in one of the parcels the one known as Parcel A, with the corresponding registry number four hundred two dash zero thirteen dash zero zero one (402-013-001) and with a surface area, measurements, property lines and boundaries described in the annex plans made for the purpose of authorizing said subdivision.

e) On the twenty-second day of November, two thousand four, THE COLLIS celebrated and recorded with THE UTILITY and the H. MUNICIPALITY, among other things, by means on the instrument which contains the following acts: 1) THE PROMISSORY AGREEMENT OF THE TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE; 2) THE PROMISSORY AGREEMENT FOR THE EASEMENT ESTABLISHMENT AGREEMENT; AND 3) THE PROMISSORY AGREEMENT FOR THE DEED OF GIFT FOR ROAD; within the terms and conditions described in said instrument are deemed reproduced herein as if they were literally included and the appendix of the present notarial instrument is annexed under letter "A" to indicate an integral part of the instrument. Hereinafter, the instrument described here will be called "**THE PROMISSORY AGREEMENTS**".

f) As derived by the agreement between THE COLLIS in THE PROMISSORY AGREEMENTS, by means of notarial instrument eight thousand nine hundred sixty-five (8,965), volume one hundred five (105) recorded on the eighth day of August, two thousand five, executed before Appointed Notary JOSE RUBEN ARECHIGA DE LA PEÑA to the Notary Office number ten of the State, under the number thirty (30), volume CCXXIII dated August sixteen two thousand five, stated the subdivision of Parcel A described in section I. d) above, of which derived the following parcels:

SITE I of the property called "**LA LAGUNA (EL CARDONAL)**", in the municipal delegation of CABO SAN LUCAS, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ZERO ZERO ZERO ONE (4-02-013-0001), with an area of FIVE HUNDRED TWENTY-EIGHT HECTARES, EIGHTY-EIGHT ARES, FORTY-NINE POINT FOUR HUNDRED TWENTY-SEVEN CENTIARES (528-88-49.427), with the following measurements and boundaries:

TO THE NORTH: IN TWO SECTIONS, TWO THOUSAND, TWO HUNDRED NINETY-NINE METERS, SEVEN HUNDRED FIVE MILLIMETERS (2,299.705), with property that is now or was previously

3931

CABO CONTRACTS ENGLISH 00000051

owned by VICTOR HUGO CESEÑA, plus ONE HUNDRED THIRTY-NINE METERS, SEVEN HUNDRED SEVENTY-ONE MILLIMETERS (139.771), with SITE III;

**TO THE SOUTH**: IN THREE SECTIONS, ONE HUNDRED THIRTY-NINE METERS, EIGHT HUNDRED FIFTEEN MILLIMETERS (139.815), with SITE III; plus ONE THOUSAND, SIX HUNDRED FIVE METERS, SEVENTY MILLIMETERS (1,605.070), with FEDERAL PACIFIC OCEAN MARITIME LAND ZONE; plus SEVEN HUNDRED FORTY-SEVEN METERS, ONE HUNDRED SIXTY MILLIMETERS (747.100), with LOT VII;

**TO THE EAST**: IN TWO SECTIONS, ONE THOUSAND SEVEN HUNDRED FOURTEEN METERS, THREE HUNDRED SEVENTY MILLIMETERS (1,714.370), with property that is now or was previously owned by NESTOR HERRERA, plus ONE THOUSAND ONE HUNDRED TWENTY-NINE METERS, FORTY MILLIMETERS (1,129.040), with LOTS II, VI and VII;

**TO THE WEST**: IN THREE PLOTS, ONE THOUSAND NINE HUNDRED NINETY-FIVE METERS, FIVE HUNDRED EIGHTY MILLIMETERS, with SITE II, plus ONE HUNDRED METERS (100.000), with SITE III, plus THREE HUNDRED SEVENTY-FOUR METERS, FOUR HUNDRED FOURTEEN MILLIMETERS (374.414), with property that is now or was previously owned by LUIS BULNES MOLLEDA.

**SITE II** of the property called "**LA LAGUNA (EL CARDONAL)**", in the municipal delegation of CABO SAN LUCAS, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ONE ZERO EIGHT NINE (4-02-013-1089), with an area of 3 HECTARES, NINETY-NINE ARES, FIFTY-TWO POINT FIVE HUNDRED SEVENTY-THREE CENTIARES (3-99-52.573), with the following measurements and boundaries:

**TO THE NORTH**: TWENTY METERS, ONE HUNDRED NINETY-FIVE MILLIMETERS (20.195), with property that is now or was previously owned by VICTOR HUGO CESEÑA;

**TO THE SOUTH**: TWENTY METERS, FOUR HUNDRED FOURTEEN MILIMETERS (20.414), with SITE III;

**TO THE EAST**: ONE THOUSAND NINE HUNDRED NINETY-FIVE METERS, FIVE HUNDRED EIGHTY MILIMETERS (1,995.580), WITH PROPERTY THAT IS NOW OR WAS PREVIOUSLY OWNED BY MR. ATILIO COLLI VILLARINO;

~~TO THE WEST: ONE THOUSAND NINE HUNDRED NINETY-FOUR METERS, NINE HUNDRED THIRTY-FIVE MILIMETERS (1,994.935), WITH PROPERTY THAT IS NOW OR~~ WAS PREVIOUSLY OWNED BY LUIS BULNES MOLLEDA.

**SITE III** of the property called "**LA LAGUNA (EL CARDONAL)**", in the municipal delegation of CABO SAN LUCAS, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ONE ZERO NINE ZERO (4-02-013-1090), with an area of

3932

CABO CONTRACTS ENGLISH 00000052

ONE HECTARE, FIFTY ARES, ZERO CENTIARES (1-50-00.000), with the following measurements and boundaries:

**TO THE NORTH**: IN TWO SECTIONS, TWENTY METERS, FOUR HUNDRED FOURTEEN MILIMETERS (20.414) with SITE II, plus ONE HUNDRED THIRTY-NINE METERS, EIGHT HUNDRED FIFTEEN MILIMETERS (139.815), with SITE I, property of Mr. ATILIO COLLI VILLARINO;

**TO THE SOUTH**: ONE HUNDRED TWENTY-NINE METERS, FIVE HUNDRED SIXTY-THREE MILIMETERS (129.563) WITH SITE I, property of Mr. ATILIO COLLI VILLARINO and TEN METERS, TWO HUNDRED SEVEN MILIMETERS (10.207) with Site IV;

**TO THE EAST**: ONE HUNDRED METERS (100.00) with SITE I, property of Mr. ATILIO COLLI VILLARINO;

**TO THE WEST**: ONE HUNDRED TWO METERS, SEVENTY-ONE MILIMETERS (102.071) with SITE I, WITH PROPERTY THAT IS NOW OR WAS PREVIOUSLY OWNED BY LUIS BULNES MOLLEDA.

g) By virtue of the terms agreed upon in the PROMISSORY AGREEMENTS, THE COLLIS agreed to record with regards to THE CARDONAL PARCEL (SITE III) a Trust Agreement Transferring Title With Reversion Clause; and with regards to the ROAD (SITE II) a Deed of Gift for Road subject to the terms and conditions set forth in THE PROMISSORY AGREEMENTS.

h) Furthermore, THE COLLIS agreed in THE PROMISSORY AGREEMENTS to establish an easement over a surface which will from now on be called THE CARDONAL EASEMENT (SITE IV), which has a surface area of six thousand one hundred twenty eight meters point four thousand fourteen square meters (6,128.4514) [Translator's note: the number and the words do not agree in the original], with the following measurements and boundaries:

**TO THE NORTH**: 10.2071 METERS WITH SITE III, 239.694 METERS WITH THE PROPERTY OF ATILIO COLLI;

**TO THE SOUTH**: 10.00 METERS WITH PROPERTY OF ATILIO COLLI, 90.00 METERS WITH PROPERTY OF ATILIO COLLI, 10 METERS WITH SITE II, 136.456 METERS WITH PROPERTY OF ATILIO COLLI;

**TO THE EAST**: 165.366 METERS WITH PROPERTY OF ATILIO COLLI, 110.00 METERS WITH PROPERTY OF ATILIO COLLI, 100.00 METERS WITH PROPERTY OF ATILIO COLLI;

**TO THE WEST**: 100.00 METERS WITH PROPERTY OF ATILIO COLLI, 100.00 METERS WITH PROPERTY OF ATILIO COLLI, 174.174 METERS WITH PROPERTY OF LUIS BULNES MOLLEDA.

i) THE COLLIS state that the property described in section I. c) above is free of liens and in turn so are each of the sections derived from it.

3933

CABO CONTRACTS ENGLISH 00000053

This information, in compliance with the certificated issued by the Public Register of Real Property and Trade of San Jose del Cabo, Baja California Sur, which are added to the appendix of this instrument with the letter "B".

j) Furthermore, they state that Parcel A which is described in section I. d) above, from which THE CARDONAL PARCEL (SITE III) and ROAD (SITE II) have derived, are current on their property tax payments as of the date when this instrument was signed, according to evidence of no property tax debts, which are added to the appendix of this instrument with the letter "C".

II.- **PLAYA GRANDE** states through its representative that:

a) By means of notarial instrument number three thousand eighty three recorded on January fifth, nineteen sixty-three, executed before the Notary Public Armando Aguilar Paniagua, who was notary public number one of the state of Baja California Sur, and registered in the Public Registry Office under number eighty-one (81) of the second (2nd) volume of section one (I) on February thirteen (13), nineteen sixty-three (1963), the purchase made by Mr. LUIS RAMON BULNES MOLLEDA of a piece of land located in the property of La Laguna, was recorded; a total of three hundred fifty-seven (357-00-00) hectares and whose measurements, property lines and boundaries which are described in the aforementioned notarial instrument are deemed reproduced herein as if they were literally included.

b) By means of notarial instrument number fifty-one thousand four hundred sixty-four recorded on July fifteenth, two thousand three, executed before the undersigned Notary Public, and registered into the public registry in the municipality of Los Cabos by means of a marginal annotation in the registry recitals described in statement II. a) above, the Act was put on the record with regards to surface area, measurements and boundaries of aforementioned property in which it was recorded that the correct surface area is three hundred forty-five hectares, fifty-two ares, and sixty-four point thirty-six centiares (345-52-64.36) and the measurements, property lines and boundaries which are described in the aforementioned notarial instrument are deemed reproduced herein as if they were literally included.

c) That on November twenty-second, two thousand four, Mr. LUIS BULNES MOLLEDA celebrated and recorded with the UTILITY and THE H. MUNICIPALITY, among other things, the following acts: 1) THE PROMISSORY AGREEMENT OF THE TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE; 2) THE PROMISSORY ~~AGREEMENT FOR THE EASEMENT ESTABLISHMENT AGREEMENT; AND 3) THE~~ PROMISSORY AGREEMENT FOR THE DEED OF GIFT FOR ROAD; the same as in this instrument are being called THE PROMISSORY AGREEMENTS.

d) By means of notarial instrument number two hundred twenty-eight recorded on December fifteenth, two thousand four, executed before Notary Public Maria del Pilar Garcia Orozco, notary public number seventeen of the state of Baja California Sur, and registered in the

3934

CABO CONTRACTS ENGLISH 00000054

Public Registry Office under number sixty three (63), page sixty-three (63) of the CCI volume, section one, on December twenty-fourth, two thousand four, the purchase and sale agreement executed between Mr. LUIS RAMON BULNES MOLLEDA as the seller, and PLAYA GRANDE as the buyer was recorded, with regards to the property described in section II. b) above.

e) Through a missive dated the seventeenth of May, of the year two thousand five, a notification was sent on behalf of Mr. RAMON LUIS BULNES MOLLEDA and PLAYA GRANDE to the UTILITY and the MUNICIPALITY of the execution of the purchase and sale agreement mentioned in recital II, d, above, stating PLAYA GRANDE as its subrogation to swear to the terms specified in the PROMISSORY AGREEMENTS instead of Mr. RAMON LUIS BULNES MOLLEDA.

f) As derived from the agreements made in THE PROMISSORY AGREEMENTS by means of notarial instrument eight thousand nine hundred seventy (8,970), volume one hundred five (105), recorded on August eighth, two thousand five, executed before Appointed Notary JOSE RUBEN ARECHIGA DE LA PEÑA to Notary Office number ten of the state, registered in the Public Registry Office of San José del Cabo, Baja California Sur, under number twenty-nine (29), volume CCXXIII, dated August sixteenth, two thousand five, PLAYA GRANDE made the subdivision of the property described in section II. b) be known, resulting in the following parcels: SITE "A" of the property called "LA LAGUNA", in the municipal delegation of Cabo San Lucas, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ZERO ZERO ZERO SIX (4-02-013-0006), with an area of THREE HUNDRED FORTY HECTARES, THREE ARES, SEVENTY-SIX POINT FIFTY-FOUR CENTIARES (340-03-76.054), with the following measurements and boundaries: TO THE NORTH: ONE THOUSAND, FIVE HUNDRED SIXTY METERS, ONE HUNDRED EIGHTY MILLIMETERS (1,560.180), with property that is now or was previously owned by VICTOR HUGO CESEÑA.

TO THE SOUTH: IN TWO SECTIONS, ONE HUNDRED NINETEEN METERS, THREE HUNDRED SIXTY MILLIMETERS (119.360), with SITE "B"; plus ONE THOUSAND SIX HUNDRED SIXTY-ONE METERS, ONE HUNDRED EIGHTY-EIGHT MILLIMETERS (1,661.188) with FEDERAL PACIFIC OCEAN MARITIME LAND ZONE;

TO THE EAST: IN THREE SECTIONS, ONE THOUSAND NINE HUNDRED NINETY THREE METERS, FOUR HUNDRED FIFTY MILLIMETERS (1,993.450), with SITE "B"; plus ONE HUNDRED METERS (100.00), with SITE "C"; plus THREE HUNDRED FORTY-THREE METERS, TWO HUNDRED FORTY MILLIMETERS (343.240), with property that is now or was previously owned by Mr. ATILIO COLLI VILLARINO;

3935

TO THE WEST: TWO THOUSAND FORTY TWO METERS AND TWO HUNDRED FORTY-SIX MILLIMETERS (2,042.246), with property that is now or was previously owned by FRANCISCO BULNES MALO.

**SITE "B"** of the property called **"LA LAGUNA" (MEDANOS PARTIDOS)**, in the municipal delegation of Cabo San Lucas, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ONE ZERO NINE ONE (4-02-013-1091), with an area of THREE HECTARES, NINETY-EIGHT ARES, EIGHTY-EIGHT POINT THREE HUNDRED SIX CENTIARES (3-98-88.306), with the following measurements and boundaries:

**TO THE NORTH**: TWENTY METERS, NINETEEN CENTIMETERS (20.19) with property that is now or was previously owned by VICTOR HUGO CESEÑA;

**TO THE SOUTH**: TWENTY METERS, FORTY-ONE CENTIMETERS (20.41) with SITE "C";

**TO THE EAST**: ONE THOUSAND NINE HUNDRED NINETY-FIVE METERS, THREE CENTIMETERS (1,995.03), with property that is now or was previously owned by Mr. ATILIO COLLI VILLARINO;

**TO THE WEST**: ONE THOUSAND NINE HUNDRED NINETY THREE METERS, FORTY FIVE CENTIMETERS (1,993.45), with SITE "A";

**SITE "C"** of the property called **"LA LAGUNA"**, in the municipal delegation of Cabo San Lucas, municipality of Los Cabos, Baja California Sur, Property Register Code FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ONE ZERO NINE TWO (4-02-013-1092), with an area of ONE HECTARE, FIFTY ARES, ZERO CENTIARES (1-50-00.000), with the following measurements and boundaries:

**TO THE NORTH**: IN TWO SECTIONS, ONE HUNDRED NINETEEN METERS, THIRTY-SIX CENTIMETERS (119.36), with SITE "A", plus TWENTY METERS, FORTY-ONE CENTIMETERS (20.41), with SITE "B";

**TO THE SOUTH**: ONE HUNDRED SIXTY METERS, TWENTY-THREE CENTIMETERS (160.23), with SITE "A";

**TO THE EAST**: ONE HUNDRED TWO METERS, SEVEN CENTIMETERS (102.07), with property that is now or was previously owned by Mr. ATILIO COLLI VILLARINO;

**TO THE WEST**: ONE HUNDRED METERS (100.00), with SITE "A".

g) By virtue of the terms agreed upon in the PROMISSORY AGREEMENTS, PLAYA GRANDE (as the successor of Mr. RAMON LUIS BULNES MOLLEDA) is obligated to grant with regards to THE MEDANOS PARTIDOS PARCEL (SITE C) a Trust Agreement Transferring Title With Reversion Clause; and with regards to the MEDANOS PARTIDOS ROAD (SITE B) a Deed of Gift for Road subject to the terms and conditions set forth in THE PROMISSORY AGREEMENTS.

3936

h) Furthermore, PLAYA GRANDE (as the successor of Mr. RAMON LUIS BULNES MOLLEDA) is obligated to establish an access easement, over an area which will henceforth be called THE MEDANOS PARTIDOS EASEMENT (SITE D), which has an area of fourteen thousand four hundred ninety-four point two thousand five hundred fifty-one square meters (14,494.2551), with the following measurements and boundaries:

TO THE NORTH: 547.770 METERS WITH SITE A, 10.208 WITH SITE C

TO THE WEST: 160.448 METERS WITH SITE A, 110.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 122.508 METERS WITH SITE A.

TO THE SOUTH: 10.757 METERS WITH SITE A, 41.740 METERS WITH SITE A, 10.00 METERS WITH SITE A, 90.00 METERS WITH SITE A, 10.00 METERS WITH SITE A, 90 METERS WITH SITE A, 10.00 METERS WITH SITE A, 90 METERS WITH SITE A, 10.00 METERS WITH SITE A, 90 METERS WITH SITE A, 10.00 METERS WITH SITE A, 90 METERS WITH SITE A

TO THE EAST: 300.628 METERS WITH PROPERTY OF ATILIO COLLI, 100 METERS WITH SITE A, 100 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A, 100.00 METERS WITH SITE A

The above, in compliance with the terms and conditions set forth in the PROMISSORY AGREEMENTS.

I) PLAYA GRANDE states that in the property described in section II. d) above is free of liens and in turn so are each of the sections derived from it. The above, in compliance with the certificates issued by the Public Register of Real Property and Trade of San Jose del Cabo, Baja California Sur, which are added to the appendix in this instrument with letter "D".

II) Furthermore, they state that the property described in section II. d) above, from which THE MEDANOS PARTIDOS PARCEL (SITE C) and THE MEDANOS PARTIDOS ROAD (SITE B) have derived, are current on their property tax payments as of the date when this instrument was signed, according to evidence of no property tax debts, which are added to the appendix of this instrument with the letter "E".

III) THE UTILITY states that:

a) It is a decentralized public institution in the Municipality of Los Cabos, Baja California Sur, with own legal personality and resources, established by agreement of the Honorable Municipality of Los Cabos, Baja California Sur, on the tenth of July, 2002 two

CABO CONTRACTS ENGLISH 00000057

thousand two, published in the Official Government Gazette of the State of Baja California Sur, on the 20 twentieth of the same month and year.

b) It is responsible for providing the public services of Drinking Water, Sewage, and Sanitation (Water Utility) within the Municipality of Los Cabos, Baja California Sur.

c) It is being legally represented in the current notarial instrument by Mr. José Antonio Agúndez Montaño and Luis Armando Díaz, acting as CEO of the UTILITY and President of the Governing Body of said Institution, respectively.

d) By virtue of the legal representation exercised as municipal authorities legitimately established, they hold full legal capacity to conduct contracts and acts related to the stipulations of this contract.

e) By virtue of the legal faculties it holds, and by virtue of its stipulations, and acting as Municipal Public Institution, System Provider of the Water Utility of Los Cabos, to provide the population's needs for potable water, on the eighteenth (18) of November, 2003, it entered into a contract for the provision of professional services, with the legal entity Promoagua Desalación de Los Cabos, S.A. de C.V., known as the Contract for the Provision of Services for the Extraction and Desalization of Sea Water, its Purification, Transfer, Storage, and Delivery in the city of Cabo San Lucas, Baja California Sur, disposal of refuse water, and the construction project and testing of potable water networks in the Mesa Colorada and los Cangrejos Colonies in the same municipality, for a period of twenty (20) years, as well as transferring the property and system operations to COMSAPASLC in optimal working conditions at the conclusion of the agreed upon period; the potable water networks will be transferred to COMSAPASLC at the conclusion of the testing period for its operations; under the stipulations set forth by the Acquisition, Leasing, and Public Utilities Law and Regulations.

f) It recognizes the expressed and manifested intentions of THE COLLIS and of PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA), of concurring to enter into the present instrument, for the benefit of the residents of Cabo San Lucas, in order to contribute, at no cost, with THE DESALIZATION PLANT; as well as the conditions that the items listed in the contracts that are being entered into are indeed always used for the sole purpose herein agreed upon as if they had been entered into in THE PROMISSORY AGREEMENTS.

g) It is familiar with the properties that are the subject of the contracts entered into in this act, as well as their physical and legal conditions, and it establishes that they are adequate for the purposes laid out herein, in the rustic state they are found, under the

3938

terms that are being agreed upon in this instrument and those that were agreed upon in THE PROMISSORY AGREEMENTS.

h) It concurs to celebrate and grant this instrument, to commit itself to its terms and to the terms and conditions in THE PROMISSORY AGREEMENTS.

IV. THE H. MUNICIPALITY states that:

a) It is a Public Institution with own legal personality, an compliance with Fraction II of Article one hundred fifteen (115) of the Political Constitution of the United States of Mexico, Article one hundred seventeen (117) of the Political Constitution of the State of Baja California Sur, and articles one (1), five (5), and twenty-six (26) Fraction I of the Municipal Regulating Organic Law of the 8th Title of the Political Constitution of the State of Baja California Sur, and it holds the necessary faculties to enter into the current notarial instrument.

b) It is responsible for the provision of public services in the Municipality of Los Cabos, Baja California Sur, and hereby appears at the present act to carry out the promissory agreement to donate, to receive in form the donated area which will be identified hereafter, in compliance with the Urban Development Law of the State of Baja California Sur, with the purpose of assigning it to urban use, for the provision of potable water, as well as a public road, primordially.

c) It recognizes having defined and agreed with third-party Mr. Víctor Hugo Ceseña Díaz, owner of the rustic property known as Los Cangrejos, which shares boundaries to the north with the properties described in Statements I.c. and II.b above, owned by THE COLLIS and PLAYA GRANDE respectively, the donation of the area needed to build the roads that are indicated in the drawings shown in this instrument as annex "F", and that will be part of the access road to THE DESALIZATION PLANT, from the junction with the road from Cabo San Lucas to Todos Santos; to the border of the properties owned by the two parties entering into this contract.

V. THE COLLIS, PLAYA GRANDE, THE UTILITY AND THE H. MUNICIPALITY, state jointly that:

With regards to the information contained in the previous sections, the parties agree to concur and do concur in granting this instrument, with the purpose of establishing, in one single instrument three legal acts or promissory agreements in THE PROMISSORY AGREEMENTS, different but related; sharing each of them the same aforementioned recitals, as well as the clauses contained in the chapter of common clauses.

Therefore express that they will be executing and execute the following agreements, within the same legal instrument, namely:

3939

CABO CONTRACTS ENGLISH 00000059

1.- TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE, which affects the parcels identified as THE CARDONAL PARCEL (SITE III) and as THE MEDANOS PARTIDOS PARCEL (SITE C); entering into it as trustors are THE COLLIS and PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); on one side, and on the other, as primary beneficiary THE UTILITY.

2.- THE DEED OF GIFT, which affects the parcels identified as CARDONAL ROAD (SITE II) and MEDANOS PARTIDOS ROAD (SITE B); entering into it as donors: THE COLLIS and PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); on one side, and on the other, THE H. MUNICIPALITY, as receiver of the donation.

3.- THE EASEMENT ESTABLISHMENT AGREEMENT, which affects the parcels identified as THE CARDONAL EASEMENT (SITE IV) and THE MEDANOS PARTIDOS EASEMENT (SITE D); entering into is as the central owners of the corresponding properties: THE COLLIS and PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); on one side, and on the other, as beneficiary of the dominating property Scotiabank Inverlat, S.A., Institución de Banca Múltiple, Grupo Financiero Scotiabank Inverlat, as trustee executing the trust that's set forth in this same instrument.

VI. THE TRUSTEE states through its representatives that:

a). It is a Credit Institution established in compliance with the Credit Institutions Law, and that it has all the proper authorizations to conduct operations related to trusts, thereby agreeing to act as Trustee in the terms of the current agreement and accepts the burden hereby conferred, swearing under oath its true and loyal performance.

b). Its role as Deputy Trustee has not been revoked, limited, or modified in any way, and that this role grants them full legal faculties to oblige the party that they are representing in the terms of the current agreement.

c). LEGAL PROHIBITIONS.- For all effects and purposes established in section 5.5 of the dispositions concerning the Trust which the Bank of Mexico issued by means of notice 1/2005, the TRUSTEE communicates to all parties the sections of text from the following articles that establish prohibitions for the Trust Institutions when handling and executing the Trusts:

1.- Article 3382 of the General Law on Negotiable Instruments and Credit Transactions

3940

CABO CONTRACTS ENGLISH 00000060

"...The trust established in favor of the trustee is null, with the exception of the following paragraph, and in any other legal disposition which applies.

*The trust institution can act as beneficiary of the trusts if their purpose is to serve as payment instruments of unfulfilled obligations, in the case of credits given by the same institution to conduct business-related activities. In that instance, the parties must agree on terms and conditions to avoid possible conflicts of interest..."*

2.- Article 394 of the General Law on Negotiable Instruments and Credit Transactions.

"...The following are prohibited:

*i.- Secret trusts;*

*ii.- Trusts in which the benefit is given to several persons in succession who would need to be replaced due to the death of the previous one, except in the case that said replacement happens in favor of people who are alive or already conceived, upon the death of the trustor; and*

*iii.- Those with a duration greater than fifty years, when the legal entity that is designated as beneficiary is not and entity subject to public law or a charitable institution. However, they can be created with duration **greater** than fifty years when the purpose of the trust is maintaining a science or art museum that is not-for-profit..."*

3.- Article 106 of the Credit Institutions Law.

*"...Credit Institutions are prohibited from...*

*...XIX. When conducting operations referred to in section XV of article 46 of this Law..."*

*a) Conducting operations with the same institution when carrying out trusts, mandates, or commissions. The Bank of Mexico can authorize, through general character dispositions, certain operations whenever they don't represent a conflict of interest;*

b) Responding to trustors, mandates, or commissioners, of the debtors failure to fulfill their terms, for credits that are granted, or of the issuing entities, for the values acquired, except if it's their fault, as is set forth by the final section of article 391 of the General Law on Negotiable Instruments and Credit Transactions, or to guarantee the collection of yields for the funds whose investment is entrusted to them.

*If at the termination of the trust, mandate or commission constituted for lending, the loans were not settled by the debtors, the institution shall transfer them to the trustor or trustee, as applicable, or to the constituent or principal, abstaining from covering their amount.*

~~The trust agreements, mandate or commission shall be notated with the provisions of this subsection and a declaration of the trustee in the sense that this content was clearly stated~~

*3941*

CABO CONTRACTS ENGLISH 00000061

*to any person from whom they have received property or rights because of their involvement as trustee.*

*c) To act as trustees, clients or commissioners in trusts, mandates or commissions, respectively, through which to capture, directly or indirectly, funds from the public, by any acts causing direct or contingent liability, except in the case of trusts created by the Government through the Federal Secretariat of Finance and Public Credit, and trusts through which securities are registered in the National Securities Registry, pursuant to the provisions of the Securities Market Law issued;*

*d) To act in trusts, mandates or commissions such as those referred in the second paragraph of Article 88 of the Investment Company Act;*

*e) To act in trusts, mandates or commissions in order to evade limitations or prohibitions contained in financial laws;*

*f) To use funds or securities of trusts, mandates or commissions aimed at lending, in which the trustee has discretion in granting them to perform operations under which are or may become debtors: the trust delegates; members of the board of directors or board of managers, as appropriate, both principals and substitutes, whether or not acting; employees and officers of the institution; or alternate commissioners, whether or not acting; the external auditors of the institution; members of the technical committee of the respective trust; ascendants or descendants in the first degree or spouses of the aforementioned persons, the companies in whose assemblies such persons or institutions are a majority themselves, also those that the Bank of Mexico determined by general provisions; and*

*g) To administer rural properties, unless they have received the administration in order to distribute the assets among heirs, legatees, partners or creditors, or to pay an obligation or to ensure compliance with the value of the estate or its products, without such administration exceeding two years, except in cases of production trusts or guarantee trusts."*

*Any pact contrary to what is disposed in the preceding paragraphs will be void.*

4. Article 118 of the Law of Credit Institutions:

*"...With the exception of all the information that is requested by the National Banking Commission, the violation of the secrecy of the operations referred to in section XV of Article 46 of this Law, even if before authorities or courts in lawsuits or claims other than those brought by the trustee or trustee, commissioner or client, against the institution or vice versa, will constitute a*

3942

CABO CONTRACTS ENGLISH 00000062

*civil liability for the damages caused, without prejudice for other appropriate criminal liabilities."*
6.- Articles in Memo 1/2005 of the Bank of Mexico which set forth a prohibition.-

*"6.1 In the event of trusts, trust companies will be prohibited from the following:*
*a) Charging the trust for property prices higher than those agreed when creating the transaction in question;*
*b) Ensuring the collection of returns or rates on funds whose investment is entrusted to them, and*
*c) Performing operations in conditions and terms contrary to their internal policies and to sound financial practices.*
*6.2 Trust companies may not enter into securities transactions, securities or any other financial instrument that does not meet the specifications that have been agreed in the contract of the corresponding Trust.*
*6.3 Trust companies may not carry out types of trust that they are not authorized to perform in accordance with the laws and regulations governing them.*
*6.4 In no case can trust companies use the trust they have in heritage to pay for any sanction that is imposed on them by some authority.*
*6.5 In Guarantee Trusts, the guarantee and bonding institutions cannot receive goods or rights except those aimed at guaranteeing the obligations in question.*
*6.6 Trust companies must observe the provisions of Articles 106 section XIX of the Law on Credit Institutions, 103 Section IX of the Securities Exchange Act, Art. 62 section VI of the General Law of Insurance Institutions and Mutual Societies and Art. 60 section VI Bis of the Federal Law on Bonding Institutions, as appropriate to each institution."*
VII. The parts accept and recognize that once authorized in definitive the present instrument, they will receive from the Signed Notary the corresponding Testimony. These declarations they make for all legal effects that may take place, freeing the Trustee from any further responsibility.
Declared the above, the parties agree to adjudge the following:

## FIRST LEGAL ACT

TRUST AGREEMENT TRANSFERRING TITLE WITH REVERSION CLAUSE, ENTERED INTO AS TRUSTEE, SCOTIABANK INVERLAT, AS TRUSTORS AND SECONDARY BENEFICIARIES "A", THE COLLIS; AS TRUSTOR AND

3943

CABO CONTRACTS ENGLISH 00000063

SECONDARY BENEFICIARY "B" PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); AND AS PRIMARY BENEFICIARY, THE UTILITY, ACCORDING TO THE PRECEDING STATEMENTS AND IN COMPLIANCE WITH THE FOLLOWING:

CLAUSES:

**ONE.- CONSTITUTION.-** THE TRUSTORS AND SECONDARY BENEFICIARIES "A" AND THE TRUSTOR AND SECONDARY BENEFICIARY "B", serving as Trustors, affect, in this act, in Trust Agreement Transferring Title With Reversion Clause (hereinafter the TRUST) and transmit to the TRUSTEE, the ownership of the properties that were defined as THE CARDONAL PARCEL (SITE III) and as THE MEDANOS PARTIDOS PARCEL (SITE C) described in sections I. f) and II. f), respectively, and the areas, measurements, and boundaries are deemed reproduced herein as if they were literally included (hereinafter the PROPERTY).

The PROPERTY is transferred to the TRUSTEE with the payment of all contributions current as well as other taxes that might be demanded with regards to this property, in addition to being free of liens, taxes, leases, third-party rights, reserves, limitations, and obligations, and in general with all that by right, use, and manner were to apply to it.

The parties convene that the TRUSTEE does not assume any responsibility if the PROPERTY has an area or measurements that differ to those indicated in statements I. f) and II. f) of this instrument.

**TWO.- DESIGNATION OF BENEFICIARIES.-** The TRUSTORS designate THE UTILITY as the PRIMARY BENEFICIARY in the current agreement, and as SECONDARY BENEFICIARIES if circumstances lead to the reversion of the ownership of the PROPERTY, to THE COLLIS, in what concerns THE CARDONAL PARCEL (SITE III) and to PLAYA GRANDE, in what concerns THE MEDANOS PARTIDOS PARCEL (SITE C).

In this act, TRUSTORS A and B, respectively, grant physical and legal possession of the PROPERTY to the PRIMARY BENEFICIARY who will enjoy it abiding strictly by what has been stipulated in this instrument herein. The TRUSTEE is namely freed of any obligation or responsibility with regards to the possession which by this act the TRUSTORS A and B grant to the PRIMARY BENEFICIARY.

**THREE.- PARTIES.-** The parties in this TRUST are:

TRUSTORS: THE COLLIS, in what concerns THE CARDONAL PARCEL (SITE III)

3944

CABO CONTRACTS ENGLISH 00000064

and PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA), in what concerns THE MEDANOS PARTIDOS PARCEL (SITE C).

**TRUSTEE:** SCOTIABANK INVERLAT

**PRIMARY BENEFICIARY:** THE UTILITY

**SECONDARY BENEFICIARIES "A":** This will be THE COLLIS or their successors or the beneficiaries that in their case are designated by them, in what concerns THE CARDONAL PARCEL (SITE III);

**SECONDARY BENEFICIARY "B":** PLAYA GRANDE or its successors in what concerns THE MEDANOS PARTIDOS PARCEL (SITE C).

**FOUR.- DESIGNATION OF BENEFICIARIES OF THE SECONDARY BENEFICIARIES "A".-** This will be the natural persons or legal entities designated by THE COLLIS, to step in as successors in the contractual position of the current TRUST in case of their death. Designating Beneficiaries can be done and modified at any given time without the consent of the other parties in the current TRUST, done privately through an instrument and subscribed by THE COLLIS to the TRUSTOR, with signing ratified by a Notary Public.

In the event of such death, the TRUSTOR shall be notified of such in writing and with the accompanying death certificate, in order to recognize the Beneficiaries as SECONDARY BENEFICIARIES "A".

The Beneficiaries, after the death of the SECONDARY BENEFICIARIES "A" and it is duly notified to the TRUSTOR, will enjoy all the rights and will assume all the obligations that this agreement grants the SECONDARY BENEFICIARIES "A", and while this is not the case, the Beneficiaries will not gain any rights whatsoever regarding this current TRUST nor its estate.

In the event that the SECONDARY BENEFICIARIES "A" relinquish their rights derived from the current TRUST in favor of a third party, the designation of Beneficiaries will be revoked *Ipso facto* without the need of any procedure before or after the fact, subrogating the relinquishing part in the right to make, in this case, its own respective designation of beneficiaries.

In the case of death of the SECONDARY BENEFICIARIES "A", without having designated Beneficiaries, the TRUSTOR will recognize their heirs and successors once the corresponding successor procedure is completed.

**FIVE.- ESTATE OF THE TRUST:**

~~The Estate of the TRUST is made up of the PROPERTY, defined as THE CARDONAL PARCEL (SITE III) and THE MEDANOS PARTIDOS PARCEL (SITE C), which are also described in~~ statements I. f) and II. f),

3945

CABO CONTRACTS ENGLISH 00000065

respectively, and with areas, measurements, and boundaries which are deemed reproduced herein as if they were literally included.

**SIX.- PURPOSE OF THE TRUST.-**

- - - 1. That the TRUSTEE maintains always, as long as the TRUST is in effect, the ownership of the PROPERTY eliminating the possibility that it would be granted as guarantee, taxed in any way, or transferred in any way to a third party.

- - - 2. That THE UTILITY, as indirect possessors, [illegible] the natural and legal possession of the PROPERTY, uses them only and exclusively for the purpose of installing and operating THE DESALINATION PLANT, by means of which desalinized sea water will be provided to the residents of Cabo San Lucas, Municipality of Los Cabos, Baja California Sur.

- - - 3. That the TRUSTEE allows THE UTILITY or third-party designated by them, to carry out under their responsibility and risk in the PROPERTY the construction and installation deemed necessary to THE UTILITY to operate THE DESALINATION PLANT, with the understanding that anything built will be owned by THE UTILITY or by whomever builds it with its knowledge, unless a new agreement states otherwise, as is defined by THE UTILITY.

- - - 4. That the TRUSTEE with prior instructions from the TRUSTORS and the PRIMARY BENEFICIARY, carries out the necessary legal acts to comply with the purposes of the current trust, in an illustrative but not limiting manner, such as subdivisions, division into lots, and the development of easements.

- - - 5.- At the time the TRUST ceases to be in effect, whether because of the expiration of its duration and extension, if any, or because of the occurrence of the requirements for early termination and the reversion clause, the TRUSTEE must declare the TRUST extinct, and with regards to the PROPERTY, revert the ownership of the same in the state that they're in to their respective TRUSTORS and SECONDARY BENEFICIARIES, or to its successors and/or Beneficiaries that might have been assigned.

**SEVEN.- CHANGES TO THE PROPERTY.-** The PRIMARY BENEFICIARY will be in natural and legal possession of the PROPERTY and will be able to manage by themselves or by means of a designated third party, any business that is necessary before the corresponding governing bodies, to make in the PROPERTY the improvements, additions, or build on it the buildings and facilities needed to run THE DESALINATION PLANT; it remains their responsibility to manage any necessary operations, procedures, and expenses to get these

3946

CABO CONTRACTS ENGLISH 00000066

Case 2:13-cr-00607-JFB-AYS Document 401-5 Filed 10/07/16 Page 67 of 146 PageID #: 10079

authorizations, without the TRUSTEE acquiring obligations or responsibilities towards it, by virtue of which the same INSTITUTION or the designated third party remain owners of these developments.

Once the life of the TRUST ends or there is an update to a supposed early termination, the PRIMARY BENEFICIARY must remove from the PROPERTY any and all construction, installations, improvements and/or additions they might have made to it of their own accord or through a third party, being responsible for delivering to the TRUSTORS and the SECONDARY BENEFICIARIES "A" AND "B", the physical and legal possession of the PROPERTY in the same condition as it was received.

**EIGHT.- CONSTRUCTION PROVISIONS.-** It's agreed that the construction work for the DESALINATION PLANT and the corresponding access roads and easements must be carried out, aiming always for the smallest impact, both visual and auditory, in the surroundings and in accordance with the applicable regulations and laws in force, with regards to any construction and with regards to the environment.

In what concerns the construction of the DESALINATION PLANT, it's agreed that it will be built, whenever possible, in line with the natural landscape of the land, in order to lessen the visual impact. For that purpose, the use of colors in keeping with the surroundings and the use of hedges and natural barriers shall be prioritized.

- - - Part of the obligations of THE UTILITY are installing power lines and posts to provide electricity to the DESALINATION PLANT, as well as its various technical areas, but these power lines must be subterranean, at least in the areas where they could represent a larger visual impact for the rest of the land property of THE COLLIS AND PLAYA GRANDE (AS THE SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA), particularly from the industrial site of the DESALINATION PLANT towards and in the access roads.

**NINE.- FREE TRANSFER.-**

- - - The parties agree that the transfer and encumbrance of the PROPERTY to the TRUST is free of charge, without any kind of remuneration in favor of THE COLLIS and PLAYA GRANDE; which they are conducting as a service to the residents of Cabo San Lucas, Baja California Sur.

**TEN.- TAXES AND EXPENSES.-** All taxes, rights, fees, expenses and other expenditures incurred by the PROPERTY or incurred by the process of the current agreement, including without limits those related to gathering

3947

CABO CONTRACTS ENGLISH 00000067

the certificates that show the absence of liens, statements of no debts, appraisals, notary services, and registration of this notarial instrument, as well as any Income Tax if it were to accrue, will be the responsibility of the PRIMARY BENEFICIARY.

**ELEVEN.- 'AD CORPUS' CONTRIBUTION**

The transfer and encumbrance of ownership of the PROPERTY to the TRUST is done 'ad corpus' which is stated for any legal purposes that would arise.

**TWELVE.- WARRANTY OF TITLE.-** The TRUSTORS are obligated to the warranty of title and right of possession in accordance to the Law, with regards to the PROPERTY, and assume all responsibility towards the TRUSTEE and the PRIMARY BENEFICIARY. Furthermore, they state that the PROPERTY is free of liens, mortgages, collateral, foreclosure, or tax debts or contributions or its differences, or any other dues.

**THIRTEEN.- PERIOD OF VALIDITY OF TRUST.-** The parties agree that the TRUST will have an original period of validity of ninety-nine (99) years, which can be extended for periods of ten (10) years, through a notarial instrument with signing ratified by a Notary Public, that the PRIMARY BENEFICIARY would send to the TRUSTOR and to the TRUSTEES AND SECONDARY BENEFICIARIES "A" AND "B" at least 20 business days before the expiration date of the TRUST, provided that the DESALINATION PLANT remains in working order; in any other event, consent would be needed from the parties.

It will not be possible to terminate the TRUST before the due date, during the original period of validity, or during its extension, if there is one; unless what is agreed upon in the next clause.

**FOURTEEN.- REASONS FOR EARLY TERMINATION OF TRUST.-**

The parties will agree in the TRUST, as reasons for early termination of the trust the following:

1.- The voluntary decision manifested through a notarial instrument with signing ratified by a Notary Public by THE UTILITY and THE COLLIS and PLAYA GRANDE, or its beneficiaries and/or successors to terminate the trust, as long as THE DESALINATION PLANT remains efficient and in working order.

2.- The fact that the UTILITY intends to instruct the TRUSTEE to pledge or encumber the PROPERTIES, in any way, or that the UTILITY itself encumbers or pledges the trust rights that it has under this agreement.

3948

CABO CONTRACTS ENGLISH 00000068

3.- In the case that THE UTILITY fails to inform and request from the TRUSTEE, of any consent of the necessary and sufficient powers to exercise the timely and efficient defense of the trusted property, as is set forth in Clause Twenty-eight of this agreement.

4.- The total or severe damage to THE DESALINATION PLANT which prevents it from restoring operations for a period greater than two years, starting from the date that the damage occurs.

5.- In the case that THE DESALINATION PLANT, for any other reason, even one that is justified, whether voluntary, contentious, financial, or operational, suspends operations and the supply of potable water to the residents of Cabo San Lucas, for a period of time greater than three years.

6.- In the case that THE DESALINATION PLANT ceases to operate for a period greater than two years without a justified cause.

7.- In the case that THE UTILITY incurs in failure to fulfill, for a period greater than two (2) years, its obligations to pave the access roads to THE DESALINATION PLANT, in particular those described in Clause One, point 1 of the Purposes section in the Second Legal Act of the current agreement.

8.- In the case that THE UTILITY fails to respect and enforce any of the purposes set forth for the trust or any of the clauses in this instrument.

For all legal effects of the aforementioned information contained in sections five (5) and six (6) of the current clause, it is agreed that it will be understood that all operations will be suspended in the case that THE DESALINATION PLANT fails to provide, in the manner agreed, during the annuities referred to in aforementioned subsections, to THE UTILITY, the water stipulated in the service supply contract by virtue of which THE UTILITY is responsible for and current with the operations of THE DESALINATION PLANT. It is likewise agreed that suspension of operations may be evidenced by any form of appropriate proof, notwithstanding that the most effective and indubitable proof is the fact of the UTILITY not submitting documentary evidence annually to the TRUSTEE. The UTILITY must obtain such documentary evidence from the National Water Commission, delegation of Baja California Sur, in which it is certified, if applicable, whether during the prior year in question the DESALINATION PLANT engaged in regular operations, or in the absence of such documentary evidence, similar reliable documentation that is sufficient to evidence actual operation, in the opinion of the TRUSTEE. The following, but not only the

3949

following documents, are satisfactory for this purpose: copies of the respective invoices or the prior year that the UTILITY actually has to the company that operates the DESALINATION PLANT. The ideal proof or evidence must be made by the UTILITY on a yearly basis within the first months of the next year of the annuity in question. Failure to do so in two or more instances will be considered as more than sufficient proof of the suspension of operations and will update, *ipso facto*, the reason for termination of this instrument herein. By virtue of this information, THE UTILITY will be obligated to obtain and submit annually to the TRUSTEE proof obtained from the National Water Commission, Baja California Sur Authority, which certifies that THE DESALINATION PLANT operated in a timely fashion or otherwise, ceased its operations, and where it isn't possible to provide in a timely fashion, submit to the TRUSTEE the different documentation eluded to in the previous paragraph.

**FIFTEEN.- REVERSION.-** If any of the prior suppositions were to occur, the TRUSTOR AND SECONDARY BENEFICIARIES "A" AND "B" or their beneficiaries and/or successors, will request the TRUSTEE the early termination of the TRUST and the reversion of the PROPERTY, through a notarial instrument with signing ratified by a Notary Public that must be accompanied by the necessary documents and elements to prove without a doubt, that the supposition for the early termination that is being claimed, is in fact the case. A copy of the document and any annexes will be sent to the PRIMARY BENEFICIARY, who will have three (3) business days from the date when they're received, to manifest what is in their best interest. After this period of time, if the TRUSTEE has not received a document from the PRIMARY BENEFICIARY, it will be understood that the termination of the current agreement is implicitly accepted and the reversion of the PROPERTY to the TRUSTORS AND SECONDARY BENEFICIARIES "A" AND "B"; furthermore, the PRIMARY BENEFICIARY will be obligated to, within sixty (60) days of the date of the instrument that terminates the TRUST, hand over the physical and legal possession of the PROPERTY to the TRUSTORS AND SECONDARY BENEFICIARIES "A" AND "B", or their beneficiaries and/or successors, free of occupants, in the same condition that it was received in from the PRIMARY BENEFICIARY. In any case, THE UTILITY will have two (2) years from the date of enactment of the reversion to remove the additional assets attached to the land.

**SIXTEEN.- TERMS.-** Similarly, it is stipulated that THE COLLIS and PLAYA GRANDE accept the obligation to not interfere in any way with the

3950

CABO CONTRACTS ENGLISH 00000070

construction or operation of THE DESALINATION PLANT, managed by THE UTILITY, or of the business hired by THE UTILITY for these effects, provided that the construction work and operations follow the regulations in force.

**SEVENTEEN.- RESTRICTIONS.-** In accordance with the purpose and features of the current legal instrument and of the TRUST, THE UTILITY accepts and agrees that under no circumstance, present or future, will it overtax, mortgage, sell, or conduct actions or agreements that affect the beneficiary rights that are held in the TRUST, nor will it instruct the TRUSTEE to do the same; this has the purpose of preserving the integrity of the property in trust.

**EIGHTEEN.- FREE LOAN AUTHORIZATION.-** The parties accept and recognize that THE UTILITY has the right to transmit by way of a free loan (commodatum), or analogous agreement, the use and temporary enjoyment free of charge of the PROPERTY to the physical person, whom THE UTILITY appoints, for as long as needed to complete the construction and operation of THE DESALINATION PLANT, without the need for further consent from the TRUSTORS and provided that the person in receipt of the free loan, or the use and enjoyment of the PROPERTY, accepts explicitly to respect the terms within the TRUST. THE UTILITY must notify the TRUSTEE if entering into such an agreement and must provide them with an original copy of the same for purely informative reasons, as the TRUSTEE will not hold any responsibility or obligation towards such agreement or its consequences.

**NINETEEN.- OBLIGATIONS OF THE UTILITY.-** THE UTILITY is obligated and committed to provide the necessary infrastructure to the land on which THE DESALINATION PLANT is to be erected, as well as the construction of access roads to said location, to the effect of assisting in its operation and in keeping with these, to which effect is foreseen by the Plan Director of Urban Development of San José del Cabo, Cabo San Lucas, Baja California Sur.

This infrastructure will need to consist of one access road measuring 40 meters wide, four lanes, with a median strip, enclosures, and sidewalks, as well as pavement and the required technical specifications, in accordance to the current regulations, to withstand the vehicular traffic that with such purpose travels the area and by virtue or not of THE DESALINATION PLANT.

The access road being discussed will need to start from the road that leads from Cabo San Lucas to Todos Santos and goes to the various technical areas that THE DESALINATION PLANT may have, as is shown in the corresponding project to this legal instrument hereto attached as annex "F".

The scope of the Construction of the aforementioned road will be of a maximum of TWELVE MILLION MEXICAN PESOS 00/100 M.N. (MXN 12,000,000.00) at the rate from July

3951

CABO CONTRACTS ENGLISH 00000071

two thousand three (2003), which can be updated at the time of its construction based on the National Index of Consumer Prices.

In the supposed instance that the amount mentioned in the previous paragraph is insufficient for the construction in the terms presented, it is agreed that it will be the obligation of THE UTILITY to build firstly only one of the two bodies of the total road, that is, only two of the four lanes.

The period of time to satisfy the requirements laid out herein is of two (2) years, starting from the date when the TRUST was set up, without the need of a prior interpretation or subsequent formality.

- - - In what concerns the second body of the road, that is, the remaining two lanes, these will be carried out subject to what future budgetary generations allow, whether it's by THE UTILITY or the Municipality or competent public entity, within a timeframe no greater than 6 years.

- - - It is agreed that in the case of a default in the construction of the road, THE COLLIS AND PLAYA GRANDE, or their successors will be authorized to carry out, of their own accord, the construction, in which case the investment made by them will be treated as made on account of future donations in terms of what's expressed in article seventy-four (74) and/or seventy-four BIS (74 BIS) of the Law of Urban Development of the State of Baja California Sur, which will be documented by an agreement that is included in the second legal act in the instrument herein.

**TWENTY.- RESERVATION OF THE RIGHT TO INSTALL DESALINATION PLANTS.-** THE COLLIS and PLAYA GRANDE, and its beneficiaries and/or successors, reserve the right to to install in the remainder of the properties, respectively, one or more desalination plants, to supply potable water to such properties, as they are used at present or in the future, subject to the provisions of Article seventy-two (72) of the Law of Urban Development of the state.

- - - The UTILITY therefore herewith states its intention not to oppose and even to assist THE COLLIS and PLAYA GRANDE to carry out the procedures and obtain, at their expense, the respective concession for the installation of their own seawater desalination plant or plants, on conditions that do not affect the operation of the DESALINATION PLANT.

- - - Notwithstanding the foregoing, in the event the installation of the aforementioned plants might be made more onerous or difficult because of the pre-existence and/or operation of the DESALINATION PLANT, the UTILITY is obligated to grant, and shall grant, in this act, the right to use water produced by the DESALINATION PLANT, at the price established for commercial use in the zone at the time of contracting.

3952

CABO CONTRACTS ENGLISH 00000072

- - - **TWENTY-ONE.- WASTE WATER PREFERENTIAL RIGHT.-**

- - - The UTILITY agrees to sell at market value, on a preferential basis, to PLAYA GRANDE or successors, and to THE COLLIS, or successors and/or beneficiaries, in that order, the waste water that is generated from the operation of the DESALINATION PLANT, for use in their present or future projects.

- - - **TWENTY-TWO.- REPOSITIONING OF WATER SUPPLY FROM PRE-EXISTING WELL.-** In view of the fact that as of the date hereof the COLLIS have a water well used to provide a watering place on the lands they own, and that it is believed that such well will be affected by the construction of the DESALINATION PLANT, the UTILITY agrees to ensure that the company that operates the DESALINATION PLANT installs, near the current location of the aforementioned well, or in the location agreed upon by the parties, a desalinated water standpoint of half an inch, to make up for the future absence of the well in question. The installation of and consumption from the standpipe will be for the account and cost of the UTILITY for as long as the TRUST continues to exist and even after it ceases to exist.

**TWENTY-THREE.- REPOSITIONING OF ENCLOSURES.-** Keeping in mind that THE COLLIS use the property for cattle and to date have an enclosure located on the boundaries of the parcels which this instrument is concerned with, it is agreed that THE UTILITY is obligated to relocate the enclosure, of its own accord or through a third party but at its own expense, with no expense to THE COLLIS, in its new placement, delimiting the rest of THE CARDONAL, in its boundaries with the parcels which this instrument is concerned with, in order to prevent the cattle from dispersing or affecting the parcels of concern in this instrument or third parties.

- - - The current obligation will need to be met within thirty days of the date when this instrument is signed, with the understanding that THE COLLIS have no civil, criminal, or any other kind of responsibility, in the coincidental instance that during the process of removing and installing the enclosure or during the construction process of THE DESALINATION PLANT the cattle were to egress the property which in turn were to harm persons or objects of a third party, in which case THE UTILITY would be obligated to find a peaceful resolution for THE COLLIS of any claim, lawsuit, or dispute.

**TWENTY-FOUR.- BEACH ACCESS.-** The parties agree that THE COLLIS and PLAYA GRANDE, their beneficiaries and successors, will retain at all times the right of access to the beach, so as not to interfere or limit the present or future business endeavors.

TWENTY-FIVE.- THE COLLIS and PLAYA GRANDE reserve their unconditional right to assign, total or partially, at any time the contractual position which they've acquired through this instrument, without the need for prior

3953

authorization, and only through written notification ratified by a Notary Public directed to the TRUSTEE with copy to the PRIMARY BENEFICIARY, always under the assumption that the assignee or assignees, swear to the same terms and conditions agreed upon in this instrument.

**TWENTY-SIX.-** THE UTILITY agrees now and at all time to not authorize of its own accord or through third parties access permits to street vendors or establishments, whether permanent or semi-permanent, both in the access roads, which are described in the agreement, and in adjacent areas or where THE DESALINATION PLANT is located.

**TWENTY-SEVEN.- RESPONSIBILITY OF THE TRUSTEE.-** The parties agree that the TRUSTEE will be free of responsibility when it acts in accordance with the stipulated specifications of this TRUST agreement, or with the instructions that it receives from the PRIMARY AND SECONDARY BENEFICIARIES, jointly.

The TRUSTEE will respond civilly to any damages caused by failure to comply with the obligations entered into by this agreement while not acting in compliance with the stipulated specifications of this TRUST agreement or with the instructions it receives from the PRIMARY AND SECONDARY BENEFICIARIES, jointly. However, these instructions should not be followed by the TRUSTEE when they're given in excess of the authority conferred or by a person who doesn't hold the authority to do so (which must be verified by the TRUSTEE), when in violation with the clauses contained within this contract or by a legal norm, when the instructions are confusing or not operationally viable. The TRUSTEE shall also not be obligated to follow these instructions if the PRIMARY BENEFICIARY isn't current on the payments due to the trust subject to the provisions set forth in the Thirtieth Clause of this agreement.

In other respects, the TRUSTEE does not assume further obligations than those agreed upon expressly in this instrument, and shall not be responsible for the facts, actions, or omissions of the parties, third parties, or authorities that block or hinder compliance with the purposes of this TRUST.

**TWENTY-EIGHT.- DEFENSE OF THE ESTATE OF THE TRUST.-** The TRUSTEE is under no obligation to defend the estate placed in trust. Should they ever receive a notification, legal suit, or any type of claim, in relation to the Trust agreement or its estate, the PRIMARY BENEFICIARY or the representative shall be notified immediately, in order to advocate in its defense; sending this notification is the extent of the responsibility of the TRUSTEE. The TRUSTEE is free of responsibility for facts or actions carried out by third parties that block or hinder the purposes of this agreement.

3954

CABO CONTRACTS ENGLISH 00000074

The TRUSTEE, prior request in writing from the PRIMARY BENEFICIARY, shall grant the necessary powers in favor of the same PRIMARY BENEFICIARY or the person designated by them as their representative; the TRUSTEE will not be under obligation to grant these powers if the fiduciary fees referred to in the Thirtieth Clause of this agreement aren't covered and current. The TRUSTEE, shall not be responsible in any case for the acts carried out by the representatives nor shall they be under obligation to cover any professional fees or expenses incurred by their actions nor to the payment of legal fees, given that these items are the responsibility of the PRIMARY BENEFICIARY.

In case of emergency, without this representing an obligation, the TRUSTEE will be able to carry out all acts necessary to the proper conservation of the estate, provided that the Trust holds all necessary economic and documented elements. All shall take place without damaging the obligation carried out by the PRIMARY BENEFICIARY to name the representative mentioned in the paragraph above, which shall need to happen within 48 hours of receiving notification.

**TWENTY-NINE.- EXPLANATION OF ACCOUNTS.-** The TRUSTEE will generate and send annually to the address indicated by the PRIMARY BENEFICIARY, account statements that show the movements carried out in this Trust over the corresponding timeframe.

The parties agree that the PRIMARY BENEFICIARY will have twenty (20) business days after the notice has been sent, which will be counted from the last day that is included in the statement, to clarify, in this case, any questions they may have; once this period is lapsed, these statements will be approved implicitly.

If under any circumstance the PRIMARY BENEFICIARY does not receive the corresponding statement, a copy of said statement must be requested to the TRUSTEE, for which there will be a period of fifteen (15) natural days to do so after the expiration date of the period in question.

**THIRTY.- TRUST FEES.-** The BENEFICIARY agrees to pay the TRUSTEE for carrying out its charge the following amounts:

1.- For accepting the charge of TRUSTEE, the amount of MXN 10,000.00 (ten thousand Mexican pesos 00/100 national currency), paid once, prior to entering into and signing the current instrument.

2.- For carrying out the charge of TRUSTEE, the amount of MXN 50,000.00 (fifty thousand Mexican pesos 00/100 national currency), which shall be paid in annuities in advance; payment of the first annuity must be done before or at the time of the signing of the current instrument.

3955

It will be the BENEFICIARY'S obligation to make annual payments to the Trust Institution whether or not they a request is received.

3.- For the signing of notarial instruments related to the transfer of ownership of each of the PROPERTIES, including the termination of the contract and the reversion of these, the amount of MXN 10,000.00 (ten thousand Mexican pesos 00/100 national currency), for each property.

4.- For the acknowledgement of new Beneficiaries in the case of the termination of rights of a Beneficiary, the amount of MXN 5,000.00 (five thousand Mexican pesos 00/100 national currency).

5.- For changes to the current agreement, for granting powers of attorney, for renewals of notarial instructions, for the signing of any notarial instrument derived from the current TRUST and in general for participating in any act in which the TRUSTEE must appear to sign notarial instruments other than the ones mentioned above, the amount of MXN 5,000.00 (five thousand Mexican pesos 00/100 national currency).

7.- For issuing additional account statements, the amount of MXN 500.00 (five hundred pesos 00/100 national currency), for each one.

When the TRUSTEE performs services not stipulated in this clause, a fee will be conventionally agreed upon with the PRIMARY BENEFICIARY prior to the service being performed, given that their services will always be onerous. When an agreement cannot be reached about the fees to be awarded, the TRUSTEE will not be under any obligation to perform the service and in this act the parties agree that the TRUSTEE will be free of any responsibility that may result from not carrying out the act being requested.

All expenses which result from any act or service of the TRUSTEE in addition to their fees, will be covered by the PRIMARY BENEFICIARY.

The aforementioned fee amounts of the TRUSTEE will be updated in the month of January every year based on inflation, in line with the numbers published by the Bank of Mexico in their National Consumer Prices, or the entity that replaces it, if the case may be.

All the fees for the TRUSTEE are subject to value added taxes, which is responsibility of the PRIMARY BENEFICIARY.

In the case that the TRUSTEE does not receive these fees in a timely manner, the debtor will fall in arrears and will pay accordingly the amount that results from applying the salary owed, and as long as the debt remains unsettled, the amount that results from applying two (2) times the Interbank Balance Interest Rate (T.I.I.E., from the Spanish acronym) published on the last day of each month in the Official Diary of the Federation, which is in force during the period spanning the date in which the trust fees become due, to the date in which they are paid. If the T.I.I.E. is not in force at the time of the

3956

CABO CONTRACTS ENGLISH 00000076

infraction, the TRUSTEE will apply the rate that replaces it, to which the PRIMARY BENEFICIARY has now agreed.

The parties recognize that whenever there are amounts owed to the TRUSTEE on account of fees or commissions, the TRUSTEE, with no responsibility for the consequences that may result, can abstain from participating in any act that is requested by any of the BENEFICIARIES, whether jointly or individually. In addition, the parties agree that the TRUSTEE will have the right to subject the ESTATE OF THE TRUST to a lien, until the amounts owed are made current.

The Assets in Trust guarantee preferentially the fees that are owed to the TRUSTEE.

**THIRTY-ONE.- ADDRESSES AND NATIONALITIES.-** The parties to this agreement state that their nationalities and addresses are:

- - - THE COLLIS: Miguel Hidalgo s/n, corner Manuel Doblado, Colonia Centro, San José del Cabo, Baja California Sur, Mexico.

- - - NATIONALITY: MEXICAN

- - - PLAYA GRANDE (AS SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA): Avenue Solmar No. 1 (one) Cabo San Lucas, B.C.S. Mexico.

THE UTILITY: Guerrero y Coronado s/n Colonia Centro, San José del Cabo, Baja California Sur.

- - - NATIONALITY: Mexican with Foreigner Exclusion Clause

THE HONORARY MUNICIPALITY: Boulevard Mijares No. 1413 (fourteen hundred thirteen) Colonia Centro, San José del Cabo, Zip Code 23400 (twenty-three thousand four hundred)

- - - NATIONALITY: Mexican

THE TRUSTEE: Plaza Puerto Paraíso, suite four and five, Cabo Bello, corner Gómez Farias, Colinia El Médano, Cabo San Lucas, Baja California Sur

- - - NATIONALITY: Mexican with Foreigner Inclusion Clause

All parties must notify the TRUSTEE of any changes of address and the address of their assignees, and failure to do so, any correspondence mailed to the address on file will fulfill all legal requirements, leaving the TRUSTEE free of any responsibility.

**THIRTY-TWO.- JURISDICTION AND COMPETENCY.-** The parties to this agreement will duly obey, for the interpretation and enforcement of this Agreement, the Laws and Courts of the Municipality of Los Cabos, Baja California Sur, waiving any other jurisdiction or venue they may have currently or may acquire in the future.

**THIRTY-THREE.-** In this act, the PRIMARY BENEFICIARY expressly attests to understand and agree with the terms of this notarial instrument and state that they are familiar with the ownership history of the

3957

PROPERTY, having conducted of its own accord a detailed background check in that regard, reason by which, if any hidden defect were to arise in the titles corresponding to the ownership and possession of the PROPERTY, by this act the TRUSTEE and the Notary Public are released of any responsibility, surrendering the right to exercise against them any action that could come forth. All the foregoing notwithstanding the right to demand the sanitation and eviction subject to the provisions in Clause Twenty-two of this agreement.

THIRTY-FOUR.- The parties expressly accept and recognize that the TRUSTEE is not a party in the following two legal acts contained in this instrument, whereby they do not assume any obligation or responsibility with regards to these. Any stipulation to the contrary shall be held as not considered.

SECOND LEGAL ACT

IRREVOCABLE AGREEMENT FOR DONATION OF THE PARCELS KNOWN AS CARDONAL ROAD (SITE I) AND MEDANOS PARTIDOS ROAD (SITE B), ENTERED INTO ON ONE SIDE, AS FIRST DONORS, THE COLLIS; ON ANOTHER SIDE, AS SECOND DONORS, PLAYA GRANDE (AS SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); AND ON ANOTHER SIDE, AS DONEE, THE HONORABLE MUNICIPALITY OF THE MUNICIPALITY OF LOS CABOS B.C.S. (THE H. MUNICIPALITY) IN ACCORDANCE WITH THE PRECEDING STATEMENTS AND UNDER THE FOLLOWING

CLAUSES

- - - ONE.- DONATION.

- - - In this act, THE COLLIS and PLAYA GRANDE, make a CONDITIONED AND IRREVOCABLE DONATION (hereinafter THE DONATION), in favor of THE H. MUNICIPALITY, who accepts the ownership rights over the property identified as THE CARDONAL ROAD (SITE II) and as THE MEDANOS PARTIDOS ROAD (SITE B); respectively, including all corresponding thereto, *de facto or de jure*, (whose description is deemed reproduced in this clause as if it were literally included here), who are to date current on their total payment of their contributions and other taxes that might be required regarding these assets, as well as free of liens, taxes, leases, third-party rights, reserves, limitations, and obligations, and in general all that by right, use, and manner were to apply to it.

TWO.- The donation is made irrevocable, but conditioned to comply strictly with the following:

PURPOSES:

- - - I. That they are used solely and exclusively for public access roads to THE DESALINATION PLANT, which will start from the junction in the road from

3958

CABO CONTRACTS ENGLISH 00000078

Cabo San Lucas to Todos Santos, through an area that will also be donated by third-party Mr. Víctor Hugo Ceseña Díaz, as appears in section c) of paragraph IV of the statements, and going to THE DESALINATION PLANT, which they do to benefit the whole community and residents of Cabo San Lucas.

- - - 2. That THE DONEE maintains always public ownership of the public domain of THE CARDONAL ROAD (SITE II) and THE MEDANOS PARTIDOS ROAD (SITE B), and that it is never possible that the ownership rights over said property could be affected by guarantee, tax, or transfer in any way.

- - - THREE.- TRANSFER FREE OF CHARGE.- The parties agree that the transfer to the TRUST of the rights of ownership and possession to THE CARDONAL ROAD (SITE III) and THE MEDANOS PARTIDOS ROAD (SITE C) are free of charge, without any consideration whatsoever in favor of the COLLIS and PLAYA GRANDE, pursuant to the statements made in recital sections I and II of this instrument, which they do to benefit the population of Cabo San Lucas, Baja California Sur.

- - - FOUR. THE H. MUNICIPALITY in this act expressly accepts the donation being given to it, and agrees to put to use the assets being donated for the expressly determined purposes.

- - - FIVE.- POSSESSION:

- - - The COLLIS and PLAYA GRANDE deliver in this act to the donee full physical and legal possession to THE CARDONAL ROAD (SITE II) and THE MEDANOS PARTIDOS ROAD (SITE B).

SIX.- OBLIGATIONS REGARDING FORMALIZATION OF THE TRUST.

- - - THE H. MUNICIPALITY agrees to do the following:

- - - 1.- Be responsible for all the expenses, costs and fees related to the preparation of the notarial instrument that contains the DONATION, and specifically those related to obtaining the certificate of no encumbrances, proof of no debt, appraisals, notarial and recording services for the aforementioned notarial instrument.

- - - 2.- Be responsible for all taxes, including income tax, if any, related to the granting of the notarial instrument that contains the DONATION.

- - - SEVEN.- CONTRIBUTION 'AD CORPUS'

- - - The transfer of ownership of THE CARDONAL ROAD (SITE II) and THE MEDANOS PARTIDOS ROAD (SITE B) will take place "ad corpus"

- - - EIGHT.- OBLIGATIONS OF THE DONEE.

- - - The donee recognizes that THE UTILITY, under the agreed upon terms in the first agreement included in this instrument, is under the irrevocable obligation to provide any urban infrastructure in the terms agreed upon in the

3959

nineteenth clause of the first agreement included in this instrument, both for the assets that are being affected by the current trust as for the access roads; and thereby in this act accepts the responsibility and is responsible in solidarity with THE UTILITY, to specifically comply with all matters relative to the access roads; building them and providing them with infrastructure specified in the first instrument, which to be concise are here reproduced.

In said terms, it's expressly agreed that if THE UTILITY or the donee herein fail to fulfill specifically their obligation to provide the intended infrastructure to the access roads, subject of the current donation, in this case it's agreed that the donation will prevail but will give the right to the donors, to opt for any one of the following options:

a) Demand that THE H. MUNICIPALITY and THE UTILITY, comply with said obligation;

b) The donors or their successors may carry out, of their own accord the construction, applying in this case any investment they make in the construction and infrastructure carried out will be deemed made on account of future donations of sellable land, in accordance with the provisions of fraction II of Article 74 of the Urban Development Law of the state of Baja California Sur, payable to present or future developments located in the corresponding properties where the donated or other areas originate, provided that they are in this municipality.

c) Give THE UTILITY and the donor the obligation to build the roads, with the expected specifications, provided that THE MUNICIPALITY considers the donated areas for the roads made on account of future donations of sellable land, assigning to the donated areas an estimated value at MXN 30.00 (thirty dollars in the legal working currency of the United States of America), per square meter, which will be payable, exclusively, against future donations in terms of the items set forth in fraction II of Article 74 of the Urban Development Law of the state of Baja California Sur, to present or future developments, of the donors or their successors, located in the corresponding properties where the donated or other areas originate, provided that they are in this municipality.

- - - NINE.- RUSTIC STATUS.-

- - - It is agreed that the MUNICIPAL GOVERNMENT recognizes for the grantors the irrevocable circumstance that the fact that it carried out the donation, the trust and the easement, which are included in this instrument; or the fact that the DESALINATION PLANT is built with its easements and access roads, even urbanized, and even operate, these circumstances will not lead to the change in the

3960

CABO CONTRACTS ENGLISH 00000080

servient estates of the COLLIS and PLAYA GRANDE of their rustic cadastral classification.

- - - **TEN.- RESTRICTIONS.-**

- - - The H. MUNICIPALITY agrees now and at all time to not authorize of its own accord or through third parties access permits to street vendors or establishments, whether permanent or semi-permanent, both in the access roads and rights to access, which are described in the agreement, and in adjacent areas or where THE DESALINATION PLANT is located.

- - - **ELEVEN.- OTHER CLAUSES.**

- - - It is agreed that THE DONATION will be understood as covered by the common clauses that are contained in the last paragraph of this instrument.

### THIRD LEGAL ACT

- - - AGREEMENT FOR THE ESTABLISHMENT OF VOLUNTARY EASEMENTS IN PERPETUITY, ON THE LAND AREAS KNOWN AS CARDONAL EASEMENT and MEDANOS PARTIDOS EASEMENT, ENTERED INTO ON ONE SIDE AS OWNERS OF THE SERVIENT ESTATE EL CARDONAL, BY THE COLLIS; AND AS THE SECOND PART, AS OWNER OF THE SERVIENT ESTATE MEDANOS PARTIDOS, PLAYA GRANDE (AS SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA); AND AS ANOTHER PART, AS SUCCESSOR OF THE DOMINANT ESTATE, SCOTIABANK INVERLAT, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT, AS INSTRUCTED BY THE TRUSTORS AND BENEFICIARIES, PURSUANT TO THE TRUST SET UP IN THE INSTRUMENT HEREIN, WITH THE PRESENCE OF THE UTILITY, PURSUANT TO THE PRECEDING RECITALS AND THE FOLLOWING

CLAUSES

- - - ONE.- COMPLYING WITH THE PROMISE

- - - The parties to this agreement grant, in this act, VOLUNTARY EASEMENT FOR USE AND ACCESS, NOT EXCLUSIVE, (hereinafter THE EASEMENT) by which are affected the properties known as THE CARDONAL EASEMENT and THE MEDANOS PARTIDOS EASEMENT; including the following essential characteristics and the others referred to within the remaining clauses of this agreement.

- - - OWNERS OF THE SERVIENT PROPERTY

3961

CABO CONTRACTS ENGLISH 00000081

- - - MEDANOS PARTIDOS SECOND DONOR

- - - PLAYA GRANDE (AS SUCCESSOR TO MR. RAMON LUIS BULNES MOLLEDA), with regards to THE MEDANOS PARTIDOS EASEMENT.

- - - OWNER OF THE DOMINANT PROPERTY

- - - THE TRUST in the first of the legal acts that are conducted in this instrument in which THE UTILITY is acting as primary beneficiary

- - - SUBJECT MATTER:

- - - The property known as THE CARDONAL EASEMENT and THE MEDANOS PARTIDOS EASEMENT (whose description is deemed reproduced in this clause as if it were literally included here). It is understood and agreed that the impact of these on the current easement agreement is made with finding itself current on payment of all contributions and other taxes that were payable in respect thereof, as well as free from encumbrances, burdens, leases, third party rights, reservations, limitations and responsibilities and, in general, anything that by law, practice and/or custom, is applicable thereto.

- - - PURPOSES:

- - - 1. To be used solely and exclusively as VOLUNTARY EASEMENT FOR USE AND ACCES, private and exclusive subject to the use for well perforation and subterranean installation of pipes, of all kinds required for the installation and operation of THE DESALINATION PLANT, and with regards to access, not exclusive, given that it will share the access, for the benefit of the servient estate and its present and future owners, as well as for the staff of THE DESALINATION PLANT.

- - - 2. That the owner of the dominant estate, in compliance with what's stated in articles one thousand one hundred nineteen (1119) and one thousand one hundred twenty (1120) of the Federal Civil Code, is responsible for all costs incurred by the upgrades and improvements of the surfaces related to the easement and its maintenance, in perpetuity, and also for the access road.

- - - TWO.- ACCEPTANCE OF OBLIGATIONS BY THE PARTIES.

In this act, the parties accept the installation of easements discussed in this instrument and assume the responsibility to make them prevail in perpetuity, provided that the intended use is maintained and that the object and the purposes contained in this instrument are respected unconditionally.

- - - THREE.- TRANSFER FREE OF CHARGE.

3962

CABO CONTRACTS ENGLISH 00000082

The parties agree that the installation of easements is voluntary and free of charge, without any consideration whatsoever in favor of THE COLLIS and PLAYA GRANDE (AS SUCCESSOR FOR MR. RAMON LUIS BULNES MOLLEDA); pursuant to the statements made in recital sections I and II of this instrument, which they do to benefit the population of Cabo San Lucas, Baja California Sur.

- - - FOUR.- BEGINNING OF THE TERM

- - - THE COLLIS AND PLAYA GRANDE (AS SUCCESSOR FOR MR. RAMON LUIS BULNES MOLLEDA) accept as beginning of the term of THE CARDONAL EASEMENT (SITE IV) AND THE MEDANOS PARTIDOS ROAD (SITE D) is exactly from the date in which this notarial instrument is being entered into.

- - - FIVE.- OBLIGATIONS REGARDING FORMALIZATION OF THE EASEMENT.

THE UTILITY agrees to do the following:

- - - 1.- Process and pay for all the costs for the preparations, permits and authorizations that the subdivisions require, in terms of recording the configuration of the parcels.

- - - 2.- Be responsible for all the expenses, costs and fees related to the preparation of the notarial instrument that contains THE EASEMENT, and specifically those related to obtaining the certificate of no encumbrances, proof of no debt, appraisals, notarial and recording services for the aforementioned notarial instrument.

- - - 3.- Be responsible for all taxes, including income tax, if any, related to the granting of the notarial instrument that contains THE EASEMENT.

- - - SIX.- 'AD CORPUS' CONTRIBUTION.

- - - The allocation of the CARDONAL EASEMENT (SITE IV) AND THE MEDANOS PARTIDOS EASEMENT (SITE D) is made 'ad corpus', therefore any difference that may arise will be adjusted accordingly.

- - - SEVEN.- OBLIGATIONS OF THE UTILITY.

- - - In compliance with what's stated in articles one thousand one hundred nineteen (1119) and one thousand one hundred twenty (1120) of the Federal Civil Code, it's agreed that the successor of the dominant estate will be responsible for the cost, that they will assume and hereby do assume with regards to THE EASEMENT the irrevocable obligation to cover the whole cost of the construction work of the actual work and unloading, as well as that of the technical installation required subject to the provisions of THE DESALINATION PLANT, its maintenance in perpetuity, as well as the work to clean, maintain, and preserve, with the intent to preserve these facilities and the care and good superficial appearance, aiming always to minimize the visual impact of said facilities and the harmonious coexistence with the

3963

CABO CONTRACTS ENGLISH 00000083

surrounding properties. However, it is agreed and accepted that the execution and financing of the aforementioned projects, will be carried out by the company that has been contracted to design and build THE DESALINATION PLANT, subject to the provisions set forth in paragraph seven (7) of section III of the recitals in the contract; in the event that said third party does not fulfill its obligations it will be seen as non-compliance by part of THE UTILITY.

- - - EIGHT.- RUSTIC STATUS.

- - - It is agreed that THE UTILITY is under the obligation to process and obtain from the Office of Municipal Real Estate, the specific documentation that manifests and grants THE COLLIS and PLAYA GRANDE the irrevocable circumstance that the fact that THE EASEMENT, the promised trust, and the donation are carried out, projects which are outlined in this instrument; or the fact that THE DESALINATION PLANT is built with its easements and access roads, even urbanized, and even operate, these circumstances will not lead to the change in the servient estates of THE COLLIS and PLAYA GRANDE of their rustic cadastral classification. Lacking in the evidence specified, it is agreed that the current instrument will serve as effective document to recognize the aforementioned circumstance.

- - - NINE.- RESTRICTIONS.

- - - THE UTILITY, jointly and severally with THE H. MUNICIPALITY, agrees now and at all time to not authorize of its own accord or through third parties access permits to street vendors or establishments, whether permanent or semi-permanent, both in the access roads, thoroughfares, not to mention in the easement areas referred to in the agreement, as well as in the neighboring areas or where the DESALINATION PLANT is installed.

- - - TEN.- OTHER CLAUSES.

- - - It is agreed that THE EASEMENT will be understood as covered by the common clauses that are contained in the last paragraph of this instrument.

- - - ELEVEN.- The parties who enter into this legal agreement, relieve THE TRUST of any and all responsibility derived from it, [illegible] has acted in response to the primaries and while executing the purposes of the trust that is consigned in this notarial instrument.

- - - CLAUSES COMMON TO THE THREE LEGAL ACTS

- - - ONE.- ASSIGNMENT OF RIGHTS AND OBLIGATIONS

- - - Both parties agree that the UTILITY may not assign part or all the rights and obligations contained in the present instrument to third parties without prior consent of the COLLIS AND MR. BULNES, granted in writing.

- - - TWO.- ABSENCE OF DEFECTS

3964

CABO CONTRACTS ENGLISH 00000084

- - - The parties state that in this instrument and in the contract contained therein, there has been no injury, fraud, violence, error, or any other defect that might affect its existence or validity, being the parties content with all the terms.

- - - Likewise the COLLIS and MR. BULNES shall not be in state of insolvency or need because of their free contributions of these parcels, subject of the three contracts that are contained in this instrument.

- - - THREE.- NOTICES AND ANNOUNCEMENTS

- - - All notices and announcements that the parties should be given in relation to this instrument will be made by certified mail, return receipt requested, or by any other means attesting that the notice was received by the recipient, in order for said  communications or notices to take effect precisely from the date on which they were received.

- - - For this purpose the parties indicate their addresses as follows:

- - - THE COLLIS: Miguel Hidalgo s/n, Esq. Manuel Doblado, Colonia Centro, San Jose del Cabo, B.C.S. Mexico

- - - PLAYA GRANDE (AS SUCCESSOR OF MR. RAMON LUIS BULNES MOLLEDA): Avenida Solmar No. 1 one Cabo San Lucas, B.C.S. Mexico

THE UTILITY: Guerrero y Coronado s/n, Colonia Centro        , San Jose del Cabo, B.C.S. Mexico

The H. MUNICIPALITY: Boulevard Mijares No. 1413 fourteen thirteen, Colonia Centro, San José del Cabo, Postal Code 23400 twenty-three thousand four hundred.

THE TRUSTEE: Plaza Puerto Paraíso, suite four and five, Cabo Bello, corner Gómez Farias, Colonia El Médano, Cabo San Lucas, Baja California Sur

- - - FOUR.- APPLICABLE LAWS.-

- - - Both this instrument, as well as the three promised contracts, that may in turn also contain one or more instruments, shall be governed for its interpretation and enforcement by the laws of the United Mexican States in general and in particular by the commercial laws, in addition to the common law for federal matters.

- - - FIVE.- JURISDICTION

- - - Furthermore, in the assumption that any dispute arises between the parties which could not be resolved satisfactorily by them in relation to this instrument or with regard to the promised contracts, both parties agree to be expressly and irrevocably subjected to the jurisdiction of the competent federal authorities in the state of Baja California Sur, renouncing from this moment to the immunity that they might currently or in the future hold due to a change of address or for any other reason.

3965

CABO CONTRACTS ENGLISH 00000085

- - - SIX.- THE COLLIS and PLAYA GRANDE reserve their unconditional right to assign, total or partially, at any time the contractual position which they've acquired through this instrument, without the need for prior authorization, and only through written notification, with confirmed receipt, to the trustee, THE UTILITY or THE H. MUNICIPALITY, as is pertinent, but always under the assumption that the assignee or assignees, swear to the same terms and conditions agreed upon in this instrument.

- - - SEVEN.- Pursuant to the fact that THE COLLIS concur to entering into this instrument as physical persons, it is agreed that the rights and obligations accepted by them in the three agreements contained in this instrument, will prevail the death of THE COLLIS,a nd that all parties will accept, with no further exchange, as their successors in the three agreements the physical persons or legal entities that THE COLLIS were to designate in the referenced trust provided that they hadn't in life reassigned their contractual positions in their entirety.

## LEGAL CAPACITIES

The parties to this agreement swear under oath that the legal capacity they present has not been revoked nor limited in any way and that it remains current.

- - - MR. FRANCISCO RAMON BULNES MALO, demonstrates his legal capacity and the legal existence of his principal, by means of the following documents:

- - - a) Copy of notarial instrument thirty-two thousand nine hundred forty-six (32,946), volume five hundred thirty-six (536), dated the tenth of December of the year nineteen ninety six, entered into before Notary Public HECTOR CASTRO CASTRO, Notary Public number SEVEN of the State, recorded in the Public Register of Real Property and Trade of San José del Cabo, Baja California Sur, with number fifty-nine (59), volume seventeen (XVII), section four, dated the thirteenth of January of the year nineteen ninety-seven, in which the CONSTITUTION   was consigned of the company known as "PLAYA GRANDE DE CABO SAN LUCAS", SOCIEDAD ANONIMA DE CAPITAL VARIABLE, from which as is relevant herein, I copy the following: "...CLAUSES.- DENOMINATION.- ONE.- The Company will be called: "PLAYA GRANDE DE CABO SAN LUCAS". SOCIEDAD ANONIMA DE CAPITAL VARIABLE, and will always be followed by the words SOCIEDAD ANONIMA DE CAPITAL VARIABLE, or by its acronym S.A. de C.V.- TWO.- The Company has Mexican nationality, with a FOREIGNERS' EXCLUSION CLAUSE, therefore: "The company shall not accept directly or indirectly as partners or shareholders or investors any foreign persons or companies without foreigners' exclusion

3966

clause, nor shall it accept in any way rights of partners or shareholders or investors to member investors and companies".- ADDRESS.- THREE.- The Social address of the Company shall be: "CABO SAN LUCAS, BAJA CALIFORNIA SUR, notwithstanding setting branches or offices in any other place in the Mexican Republic or abroad, reserving the right to appoint conventional addresses in order to comply with certain obligations.- DURATION.- FOUR.- The duration of the company will be NINETY-NINE YEARS, counted from the date on which this notarial instrument is signed.- PURPOSE.- FIVE.- The purpose of the Company will be: 1.- Use of real estate developments; 2.- Purchase and sale of land and buildings; 3.- Construction and sale of habitable units; 5.- Development and sale of land and buildings; 6.- Import and export of goods and services.- CAPITAL.- SIX.- The company's capital is of: MXN 50,000.00 (FIFTY THOUSAND MEXICAN PESOS 00/100 NATIONAL CURRENCY), represented by (100) registered shares valued at MXN 500.00 (FIVE HUNDRED MEXICAN PESOS 00/100 NATIONAL CURRENCY), each... CLAUSES.- THIRTEEN.- Management of the Company will be by a Single Manager or by a Board of Directors, which will be decided by a Shareholder's General Assembly. If Board of Directors is the choice, the following rules will be followed: a).- It will be made up of two members at least, one of whom will be President. The minority of shareholders made up of twenty-five per cent of the social capital, will have the power to name a Managing Director.- b).- The Board of Directors will gather through written or verbal instructions done by any of its members, at any time, and in order to make valid decisions, the attendance of a minimum of the majority of members will be required and that they're made by a majority vote of those present. In the case of a tie, the President of the Board of Directors will decide with his/her vote.- c).- The Board of Directors will hold the general and special faculties, including those which according to law require a special clause, specific to the powers for lawsuits and collections, acts of administration, and control, collected in the terms of article two thousand five hundred fifty-four of the current Civil Code and its Corresponding of the States of the Mexican Republic, by which they will be able to manage freely all business and assets of the Company, and consequently: I.- Promote and desist in any type of actions, suits, trials, or procedures, including the writ of protection; II.- Compromise; III.- Articulate and absolve positions; IV.- Compromise in referees; V.- Recuse; VI.- Receive payments; VII.- File criminal claims and lawsuits and desist from them, granting pardon in that case and join in as contributor to the Attorney General's Office; VIII.- Appear in court orders and bids; IX.- Grant general or special powers subject to law to the person or persons it deems

3967

CABO CONTRACTS ENGLISH 00000087

convenient, with the right to revoke them if it were the case; X.- The Board of Directors will be able to carry out these rights before individuals and any form of Administrative or Legal Authorities, including those of a Municipal, State, or Federal nature, before the Office of Consumer Protection, and before the Boards of Conciliation and Referees, Local or Federal, and before any other Work Authority, having the right to assist as managing representative of the Company at any hearings with the purpose of conciliation, lawsuits and exceptions, propositions, admission, and sentence relief, including confessions. The Board will also be able to rescind and terminate work contracts, as well as compromise and celebrate agreements with the plaintiff workers, all within the stipulations set forth in Article nine, eleven, forty-six, forty-seven, five hundred twenty-three, six hundred ninety-two, seven hundred eighty-six, seven hundred eighty-eight, eight hundred seventy-six, eight hundred seventy-eight, eight hundred eighty, eight hundred eighty-three, and eight hundred eighty-four, of the Federal Workers' Law, and in agreement with Article two thousand five hundred fifty-four of the Civil Code of Baja California Sur and its Corresponding of the States of the Mexican Republic.- c).- For all effects and purposes of the previous point, the Board of Directors remains therefore fully able to defend and manage the Company's interests as well as acquire, transfer, and tax any types of assets including real estate assets, as well as subscribe and endorse credit titles in the terms of Fraction I of Article Nine of the General Law on Negotiable Instruments and Credit Transactions.- e) The Board of Directors will be in charge of carrying out and agreeing to the contracts of the Shareholders' General Assembly provided that no other arrangement has been made by them in special cases.- f).- The position of Managing Director is not [illegible], but the Board will have the ability to grant special general powers subject to law.- g).- It is the Board of Director's responsibility to designate one or several Special General Managers and Assistant Managers, where deemed necessary. Determine in each case the extension of responsibilities with the corresponding obligations.- h).- The members of the Board will stay in their role indefinitely without reducing the responsibilities corresponding to the Board of Directors, with the purpose of limiting the length time of their management and expression of cause.- i).-Anytime there is for any reason a new designation in Board members by the Shareholders' General Assembly, the previous charges will remain in their positions until the new members have assumed these charges.- j).- It will not be a reason to be excused from the role of Board member, to give in guarantee that determines the Shareholders' General Assembly or in its absence, constitute a deposit, effectively of one hundred thousand Mexican pesos, national currency, or its equivalent in shares in the Company's box.- k).- The Board of Directors will assign a Secretary, who could be a member of the Board, who will be entrusted to arrange

3968

meetings, to prepare the material for them, to prepare the acts of the Boards and to report the findings to the corresponding bodies and individuals. - The time that the Secretary has to remain in office performing his duties, and emoluments, will be determined by the Board of Directors. When the General Assembly of Shareholders shall appoint a sole administrator, he will have all the powers and duties assigned to the Board of Directors.- Transitional Provisions.

SECOND ..- Those present, constituting the First Ordinary General Assembly, take the following resolutions: a) The Company shall be managed by a sole director and for that effect was appointed MR. FRANCISCO RAMON BULNES MALO, who will have the powers determined under CLAUSE THIRTEEN... c) .- GENERAL POWER OF LAWSUITS AND COLLECTIONS AND ACTS OF DIRECTORS attributed in favor of MESSRS. VICTOR MANUEL CHONG ALVAREZ and JOSE NOE PABLOS PEÑUÑURI, so that they exercise it JOINTLY or SEPARATELY with the following powers: POWER GENERAL FOR LAWSUITS AND COLLECTIONS, with all the general powers and even the special ones that according to the Law require power or specific clauses in the terms of the first paragraph of Article two thousand five hundred fifty-four of the Civil Code in force in this State. – Included but not limited to are, among other powers, the powers: I. To promote and withdraw from all kinds of actions, resources, trials and proceedings, even support; II.- To compromise, III.- To articulate and absolve positions .... "

--- b) .- Copy of notarial instrument number fifty-three thousand four hundred and sixteen (53416), volume eight hundred thirty-six (836), dated the twenty-fourth of February, two thousand three (2003), which is registered in the Public Registry Property and Commerce in San Jose del Cabo, Baja California Sur, as Number 12 Twelve, sheet 12 Twelve, Volume XXXIV, Section IV, of the seventeenth of March two thousand and three (2003), which comprises the notarization of the minutes of the extraordinary general meeting of the company PLAYA GRANDE DEL CABO SAN LUCAS, SA DE C.V.

--- MR. LUIS ARMANDO DIAZ and MRS. MARGARITA MARTHA DIAZ JIMENEZ accredited their personality as Mayor and Trustee of IX City of Los Cabos, Baja California Sur, respectively, with the Mayor record issued by the Municipal Elections Committee of Los Cabos, dated February 10, two thousand five (2005).

... - MR. ENRIQUE PASCUAL NAVARRO BARAJAS and JOSE ANTONIO AGUNDEZ MONTAÑO, accredited their personality as Secretary General and Director General of the Municipal Agency of the System for Water and Wastewater Operations of the 11. City Council IX I Los Cabos, Baja California Sur.

3969

CABO CONTRACTS ENGLISH 00000089

With a copy of the notarial instrument number fourteen thousand eight hundred thirty-nine (14,819 ) volume XXXIX thirty-nine Roman dated March 9, two thousand and two (2002), granted before Sara Elisa Ortega Garnica, Notary Public deputy and assigned to the holder of the Notary Public Office number Seven of the Municipality of Tonalá, Jalisco, acting by a Notary Partnership agreement with the holder of the Notary Public number sixty nine (69), where it is stated the GRANTING OF POWERS. - CLAUSES.– TWO.- SCOTIABANK INVERLAT, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT, through Mr. Francisco Delgado Zapico and Guillermo Vazquez Hernández Aldana, in their capacity as Delegate Trustees, present to grant in favor of OFELIA DEL SAGRARIO ISAAC NAVARRO, a resident of Cabo San Lucas, Baja California Sur, and JUAN CARLOS CALDERON QUEZADA, a resident of Guadalajara, Jalisco, a GENERAL POWER FOR LAWSUITS AND COLLECTIONS, with the following powers: I.- To file all kinds of actions and exceptions and withdraw them. II. To grant and sign all types of public and private documents. III. To make manifestations, renounces, protests established by the Constitution of the United States of Mexico. IV. To file appeals and withdraw them, even of Amparo Trial, V - To compromise. VI. - To offer and take tests and cross out the contract, acknowledge signatures, documents, rebuke false signatures in the contract, present witnesses, cross them out, to see protests to the contract, object to their presence, to question and reinterrogate them. VII. To submit to arbitration or arbitrators. VIII. To articulate and absolve positions. IX. To challenge. X - To make and receive payments. XI. To file complaints and criminal charges and to desist from them, to assist the Public Ministry and demand payment of liability for property damage, to constitute the constituents of the offended civil party in criminal proceedings. XII. To grant judicial pardon if necessary, to request bankruptcies and generally to initiate, continue and terminate in any way all kinds of appeals, trials and arbitration of any order, to do the disclaimers, submissions and agreements as may be necessary in accordance to Article Twenty-seventh 27 of the Constitution and its Regulatory and Interpretative Legislation and the Nationality and Naturalization Act, as well as to enter into agreements and labor transactions. XII. To acquire goods and rights in an auction or outside it, making the positions and bids, to extend jurisdiction, to allege incompetence; to choose jurisdictions. THREE.- The powers referred to in the second clause, will be exercised by the attorneys jointly or separately, before all kinds of natural or legal persons, and against all kinds of Administrative, Judicial, Civil, Criminal or Labour Authorities, whether municipal, local or federal, of Conciliation or of

3970

CABO CONTRACTS ENGLISH 00000090

Conciliation and Arbitration. – I).- With a copy of the first testimony of the instrument number (26054) twenty-six thousand and fifty-four, dated August 5, two thousand and two (2002), granted before Mr. Francisco Jacobo Sevillano González, Notary number Thirty Two (32) of Mexico City, Federal District, in the Commercial File number one hundred twenty-eight thousand eight hundred sixty-seven (128867), dated August 30 of two thousand and two (2002), was formalized the Session of the Board of Directors OF SCOTIABANK INVERLAT, S.A., MULTIPLE BANKING INSTITUTION, FINANCIAL GROUP SCOTIABANK FINANCIAL INVERLAT, on June 25 of two thousand and two (2002), where was formalized the revocation of Trust Delegates and powers granted and ratified on behalf of HUGO MARIO TORTEYA CHIMELY, GUILLERMO HERNÁNDEZ ALDANA, LOURDES GUADALUPE AMADOR SILVA, JOSÉ ROSARIO FLORES VALENZUELA AND RÓMULO FIGUERAS GONZÁLEZ. And were appointed as Trust Delegates YNGRID JOSEFINA NAVARRO DEWAR, MANUEL AMAYA GALAZ, CLAUDIA ELENA ORTEGA ELÍAS, JUAN CARLOS CALDERÓN QUEZADA, FRANCISCO JAVIER RAMÍREZ RAMÍREZ, LUIS MIGUEL FERNÁNDEZ SÁNCHEZ, GUSTAVO GARCIA WINDER, ANTONIO GÓMEZ AGUIRRE, HUMBERTO PARRA PÉREZ, JOSÉ FRANCISCO AZCONA LIZÁRRAGA, OFELIA DEL SAGRARIO ISAAC NAVARRO, ANTONIO RAFAEL FIERROS MIRANDA, JOEL ENRIQUE GUERRERO LÓPEZ, ROBERTO TIBURCIO MÓJICA AND CARLOS NÚÑEZ GUERRERO, with all the powers inherent in the position to be exercised jointly with another Trust Delegate, with exception of the powers contained in section 1) below, which may be exercised individually. To the persons mentioned above are conferred all the powers mentioned in the previous paragraph that according to Law are inherent to the position of Trust Delegates including the following powers. - 1) GENERAL POWER FOR LAWSUITS AND COLLECTIONS. - 2) GENERAL POWER FOR ACTS OF ADMINISTRATION. - 3) GENERAL POWER FOR ACTS OF DOMAIN. - 4) GENERAL POWER TO SIGN AND ENDORSE. - 5) GENERAL POWER ON LABOR ISSUES - With certified copy of the deed number twenty-seven thousand five hundred eighty-five twenty (27585) dated August 22, two thousand and three (2003), before Mrs. Ana Patricia Tolentino Bandala, head of the Public Notary number one hundred ninety five (195) of the Federal District, where a meeting of the Board of Directors was formalized and which parts are copied as follows "... ORDER OF THE DAY - X - Revocation and appointment of the Trust Delegates of the Bank. - Agreements. - X - REVOCATION AND NOMINATION OF TRUST DELEGATES. -x.1.2.- With the recommendation of Mr. José Eugui,

3971

CABO CONTRACTS ENGLISH 00000091

Director of the Trust Sector, the appointment of the following individuals as Trust Delegates of Scotiabank Inverlat, S.A., Institución de Banca Múltiple, Grupo Financiero Scotiabank Inverlat was approved: David Pineda Dosamantes, Jesús Lacimir García Valenzuela, German Alonso Pérez Balderrama." --- MRS. OFELIA DEL SAGRARIO ISAAC NAVARRO and MR. GERMAN ALONSO PEREZ BALDERRAMA, under oath of telling the truth, have mentioned to the undersigned Notary that their appointment of Trust Delegates, as well as the powers conferred on them by their representative SCOTIABANK INVERLAT, S.A., MULTIPLE BANKING INSTITUTION, FINANCING GROUP SCOTIABANK INVERLAT to date have not been suspended, limited or revoked under any aspect.

LIST OF ANNEXES:

A. Promissory Contract of Trust, Donation and Rights of Way.

B. Certificate of No Liens of Sites II and III derived of the property La Laguna (EL CARDONAL)

C. Property Tax Clearance Certificate of Sites II and III derived of the property La Laguna (EL CARDONAL)

D. Certificate of No Lien of Sites B and C derived from property MEDANOS PARTIDOS

E. Certificate of Property Tax Clearance of Sites B and C derived from property MEDANOS PARTIDOS

F. Roads plan VICTOR HUGO CESEÑA

- - - I, THE NOTARY, CERTIFY:

--- ONE. - That I know the present persons and agree to their legal capacity.

--- TWO. That they have manifested to be:

- - - MRS. ALICIA CESEÑA AGUNDEZ COLLI, of Mexican nationality, married, of legal age, housewife, originally from Cabo San Lucas, Baja California Sur, born on ███████████ ████████████████████████████████████████████ in San Jose del Cabo, Baja California Sur, who identified herself to the one signed with her voting card with photo, issued by the Federal Electoral Institute.

- - - MR. ATILIO COLLI VILLARINO, of Mexican nationality, of legal age, married, farmer, native of San Jose del Cabo, Baja California Sur, where he was born on ████████ ██████████████████████████████████████████ San José del Cabo, Baja California Sur, who identified himself to the one signed with his voting card with photo, issued by the Federal Electoral Institute.

3972

CABO CONTRACTS ENGLISH 00000092

- - - **MR. FRANCISCO RAMON BULNES MALO**, said to be Mexican by birth, single, born in Mexico City, Federal District, on ██████████████████████████████████████████ businessman, residing in Cabo San Lucas, Baja California Sur and visiting this city.

- - - **MR. LUIS ARMANDO DÍAZ**, of Mexican nationality, married, of legal age, Mayor of H.IX. City of Los Cabos, Baja California Sur, a native of Tepic, Nayarit, where he was born on the ███████████████████████████████████, residing in ████████████ ███████████████████████ ██████████████ Baja California Sur, who identified himself to the one signed with his voting card with photo, issued by the Federal Electoral Institute.

- - - **MR. JOSE ANTONIO AGUNDEZ MONTAÑO**, of Mexican nationality, married, of legal age, Director General of the Municipal Agency for Water and Wastewater, Los Cabos, BCS, originally from ████████████████ where he was born on ██████████████████ residing in ███████████ Baja California Sur, who identified himself to the one signed with his voting card with photo, issued by the Federal Electoral Institute.

- - - **MRS. MARGARITA MARTHA DIAZ JIMENEZ**, of Mexican nationality, single, of legal age, Municipal Trustee of H. IX. City of Los Cabos, Baja California Sur, a native of Leon, Guanajuato, born on ████████████████████████████████████ resident at ████████████████████ Cabo San Lucas , Baja California Sur, who identified herself to the one signed with her voting card with photo, issued by the Federal Electoral Institute.

- - - **MR. ENRIQUE PASCUAL NAVARRO BARAJAS**, of Mexican nationality, married, of legal age, Secretary General of H.IX Municipal City of Los Cabos, Baja California Sur, a native of Sinaloa, where he was born on ██████████████████████████ residing in █████████████████████████ San Jose del Cabo, Baja California Sur, who identified himself to the one signed with his voting card with photo, issued by the Federal Electoral Institute.

- - - **MRS. OFELIA DEL SAGRARIO ISAAC NAVARRO**, a Mexican citizen by birth, a native of Guadalajara, Jalisco, born on ██████████████████████████████ married, lawyer, residing in █████████████████ █████████████████████ Cabo San Lucas, Baja California Sur, who did not present identification for being of my personal knowledge.

3973

- - - **MR. JESÚS LADIMIR GARCIA VALENZUELA**, married, bank employee, of Mexican nationality by birth, a native of Los Mochis, Sinaloa, where he was born on the ███████████ ███████████████████████████ married, and with the same address as the previous person, who did not present identification for being of my personal knowledge.

- - - **THREE** - That regarding the payment of income tax and after making the warnings required by Law, they manifested that they were aware, without giving me credit.

- - - **FOUR** - That the related and annex documents are faithful to the originals that I have seen and returned to the interested parties.

- - - **FIVE** – Having warned the present of their right to read or that I, the Notary, read them this Instrument, they chose the former and, that done, they expressed their agreement, so after explaining their value and legal force, they ratified it and signed it on this date. I ATTEST.

**ALICIA CESEÑA AGUNDEZ DE COLLI, SIGNED, ATILIO COLLI VILLARINO, SIGNED, FRANCISCO RAMÓN BULNES MALO, SIGNED, LUIS ARMANDO DIAZ, SIGNED JOSÉ ANTONIO AGUNDEZ MONTAÑO, SIGNED, MARTHA MARGARITA DIAZ JIMÉNEZ, SIGNED, ENRIQUE PASCUAL NAVARRO BARAJAS, SIGNED, OFELIA DEL SAGRARIO ISAAC NAVARRO, SIGNED, JESÚS LADIMIR GARCÍA VALENZUELA, SIGNED.------------------**

MR. JOSÉ ALBERTO CASTRO SALAZAR, SIGNED, AUTHORIZING STAMP, IN THE FIRST OF SEPTEMBER, TWO THOUSAND AND FIVE (2005), DATE THAT THIS ACT WAS SIGNED, I AUTHORIZE IN DEFINITIVE. I ATTEST.

IT IS THE FIRST TESTIMONY IN THE ORDER ISSUED FOR USE BY SCOTIABANK INVERLAT, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT, WITH THE TITLE OF TRUSTEE, IN TWENTY-FOUR SHEETS DULY COLLATED, STAMPED AND SIGNED

LA PAZ, BAJA CALIFORNIA SUR, DATED THE TENTH OF SEPTEMBER, TWO THOUSAND FIVE (2005). I ATTEST.......................

[official stamps and seals from the real estate office, notaries, etc.]

3974

[boxes of signatures, dates, stamps and seals from the Public Registry Office]

3975

CABO CONTRACTS ENGLISH 00000095

INSTRUMENT THAT CONTAINS: 1) PROMISSORY AGREEMENT FOR PLACEMENT IN TRUST WITH TRANSFER OF TITLE AND WITH REVERSION CLAUSE; 2) PROMISSORY AGREEMENT FOR ESTABLISHMENT OF EASEMENTS; 3) PROMISSORY AGREEMENT FOR DONATION FOR ROAD, ENTERED INTO BY, AS THE FIRST PROMISSORS, ALICIA CESEÑA AGUNDEZ DE COLLI AND ATILIO COLLI VILLARINO, ON THEIR OWN BEHALF (HEREINAFTER, THE "COLLIS"); AS SECOND PROMISSOR, LUIS BULNES MOLLEDA, ON HIS OWN BEHALF (HEREINAFTER MR. BULNES) AND, AS PROMISSOR TRUSTEE AND PROMISSOR SUCCESSOR IN INTEREST, THE MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR, REPRESENTED BY ULISES OMAR CESEÑA MONTAÑO AND MIGUEL ÁNGEL CESEÑA COTA, IN THEIR CAPACITIES AS CHAIRMAN OF THE BOARD OF GOVERNORS AND GENERAL MANAGER, RESPECTIVELY, HEREINAFTER REFERRED TO AS THE "UTILITY"; AND THE VIII MUNICIPAL GOVERNMENT OF THE MUNICIPALITY OF LOS CABOS, B.C.S., REPRESENTED BY ULISES OMAR CESEÑA MONTAÑO, RIGOBERTO ARCE MARTÍNEZ AND AUGUSTO RAUL JIMÉNEZ BELTRÁN, IN THEIR CAPACITIES AS MUNICIPAL PRESIDENT, MUNICIPAL COMPTROLLER, AND MUNICIPAL GENERAL SECRETARY, RESPECTIVELY, HEREINAFTER REFERRED TO AS THE "PROMISSOR DONEE", WITH THE APPEARANCE AS WITNESS OF HONOR OF THE CONSTITUTIONAL GOVERNOR OF THE STATE, LEONEL EFRAÍN COTA MONTAÑO, PURSUANT TO THE FOLLOWING RECITALS AND CLAUSES:

## RECITALS

I.      The COLLIS state as follows:

a) Alicia Ceseña Agúndez de Colli and Atilio Colli Villarino are married to each other, under the system of joint ownership of property, and both are Mexican citizens, of legal age and qualified to enter into contracts and bind themselves pursuant to the conditions of this instrument. The former is recorded in the Federal Taxpayer Register under number ███████████ domiciled for tax purposes at Miguel Hidalgo s/n, Esq. Manuel Doblado, Colonia Centro, San José del Cabo, B.C.S., Mexico;

b) The conjugal partnership made up of the spouses purchased all of the present rural property called El Cardonal, which has an area of 617-68-36 [illegible] hectares and since its purchase and up the date hereof has been used to

3976

raise livestock. This purchase is evidenced by notarial instrument numbers 3,192 and 3,202, which were executed on January 7, 1963, before Armando Aguilar Paniagua, and recorded in the Public Register of Real Property of the municipality of Los Cabos, under number 84, volume 2, section 1, of Notarial Instruments, on February 13, 1963, and under number 85, volume 2, section 1, on February 13, 1963, respectively. Such notarial instruments were exhibited and have been returned to the COLLIS.

c) Although physically and with regard to recording (in the local Public Register of Real Property and Trade), the rural property El Cardonal is a single unit as of the date hereof, as it appears in the municipal Property Register, it is divided into a total of eight parcels, as shown in the respective plan that is appended hereto as APPENDIX A.

d) The largest of the aforementioned parcels, which is described below as parcel A of the El Cardonal livestock ranch, hereinafter PARCEL A, is located in the delegation of Cabo San Lucas, in the state of Baja California Sur, Mexico, identified by property register code 402-013-0001, with an area of 339-67-80.59 hectares, with the following measurements and boundaries:

TO THE NORTH: with district of Los Cangrejos, and property of Victor Hugo Ceseña Díaz;
TO THE SOUTH: with ZFMT [Federal Maritime Land Zone] on the Pacific Ocean;
TO THE EAST: with Parcel A of the El Cardonal property itself;
TO THE WEST: with property of Luis Bulnes Molleda.

e) They are aware of the existence of the Plan for the Design, Construction and Operation of a Desalination Plant for the benefit of the population of Cabo San Lucas, intended to obtain 200 liters per second (hereinafter the DESALINATION PLANT) promoted by the municipal and state governments, under, respectively, ULISES OMAR CESEÑA MONTAÑO and LEONEL EFRAÍN COTA MONTAÑO, in their respective capacities as President of the VIII Municipal Government of Los Cabos and Constitutional Governor of the state of Baja California Sur; with the approval and support of the Federal government under the CONSTITUTIONAL PRESIDENT OF THE UNITED MEXICAN STATES, VICENTE FOX QUESADA.

f) Prior to the execution date of this agreement, they stated by means of letters appended hereto as APPENDIX E, and now confirm, that it is their free and irrevocable intention to participate in the joint efforts promoting the DESALINATION PLANT, and, in order to benefit the population of Cabo San Lucas, to contribute free of charge the land area that is necessary to carry out this plan. The dimensions of that land area are specified hereinafter, by means of the legal instruments and contracts that are also defined hereinafter, without any consideration whatsoever in their

3977

favor, and subject only to the condition that the land area always be used, solely and exclusively, for the purposes for which it is contributed and no other.

g) They are aware that Luis Bulnes Molleda, hereinafter Mr. BULNES, who owns the abutting property called Medanos Partidos, has also expressed his full agreement to participating, on similar terms, in the plan in question.

h) As an act prior to the execution of this instrument, the UTILITY, for the purpose stated in recital f) above, showed, in the plan that is appended to this instrument as APPENDIX B, the area of land owned by the COLLIS that will be needed to house part of the industrial plant and installations of the DESALINATION PLANT, with such parcel described as follows and identified hereinafter, for the purposes hereof, as the PROMISED CARDONAL PARCEL (SITE III):

Area of fifteen thousand square meters (15,000), with the following measurements and boundaries:

PROMISED CARDONAL PARCEL (SITE III)
TO THE NORTH:       20.4143 METERS WITH SITE II
                    139.8151 METERS WITH PROPERTY OF ATILIO COLLI

TO THE SOUTH:       129.5634 METERS WITH PROPERTY OF ATILIO COLLI
                    10.2071 METERS WITH SITE IV

TO THE EAST:        100 METERS WITH PROPERTY OF ATILIO COLLI

TO THE EAST:        102.0714 METERS WITH PROPERTY OF LUIS BULNES
                    MOLLEDA

The PROMISED CARDONAL PARCEL (SECTION III) will be appropriately subdivided out of the larger parcel of which it has formed part up to now, as described in letter d), subject to the applicable authorizations and its recording in the respective municipal Property Register, only the PROMISED CARDONAL PARCEL (SITE III) is to be placed into the promised trust agreement.

i) In addition, in preparation for entering into this promissory agreement and the separate promised easement establishment agreement, which will be entered into, the UTILITY also showed in the aforementioned plan appended as APPENDIX B, the land areas that form part of the land parcel owned by the COLLIS, which will be needed for an access road to the DESALINATION PLANT, hereinafter referred to as the

3978

PROMISED CARDONAL ROAD (SITE II), and for the underground installation of the wells, pipelines and sewers, in the portion involving El Cardonal; hereinafter referred to as the PROMISED CARDONAL EASEMENT (SITE IV), which are described below:

The PROMISED CARDONAL ROAD (SITE II): Area of thirty-nine thousand, nine hundred fifty-two point five hundred seventy-three (39,952.573) square meters, with the following measurements and boundaries:

| | |
|---|---|
| TO THE NORTH: | 20.195 METERS WITH PROPERTY OF VICTOR HUGO CESEÑA |
| TO THE SOUTH: | 20.4143 METERS WITH SITE III |
| TO THE EAST: | 102.0714 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE WEST: | 1,995.568 METERS WITH PROPERTY OF LUIS BULNES MOLLEDA |

The PROMISED CARDONAL EASEMENT (SITE IV): Area of six thousand, one hundred twenty-eight meters point four thousand fourteen (6,128.4514)[1] square meters, with the following measurements and boundaries:

| | |
|---|---|
| TO THE NORTH: | 10.2071 METERS WITH SITE III |
| | 239.694 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE SOUTH: | 10.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 90.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 10.00 METERS WITH SITE II |
| | 136.456 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE EAST: | 165.366 METERS WITH PROPERTY OF ATILIO COLLI |
| | 110.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE WEST: | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 174.174 METERS WITH PROPERTY OF LUIS BULNES MOLLEDA |

j) As of the date on which this instrument is executed, the COLLIS are the sole owners and original possessors of the PROMISED CARDONAL PARCEL (SITE III), as well as of the PROMISED CARDONAL ROAD (SITE II) and the PROMISED CARDONAL EASEMENT (SITE IV), as well as of the larger parcel of which they form part, and others, but they do not hold indirect possession of such parcels by reason of a previous lease agreement regarding such livestock business, which is currently in the process of judicial termination.

k) Therefore, and for as long as the proceeding for termination of the aforementioned lease subsists, the COLLIS are lawfully entitled to enter into this promissory agreement, but may not enter into the other promised agreements,

3979

---

[1] Translator's note: as in a prior document, the words and numbers don't agree.

whether the trust, the easement and/or donation for a road, which will be entered into once they reassume full legal possession of the property El Cardonal.

l) It is their wish to enter into this agreement in order to subsequently bind themselves to agree to enter into the promised agreements specified below, without any consideration in their favor, and in accordance with the terms and conditions that are set forth below.

m) PARCEL A, from which the PROMISED CARDONAL PARCEL (SITE III), the PROMISED CARDONAL ROAD (SITE II) and the PROMISED CARDONAL EASEMENT (SITE IV) will be taken, subject to the limiting factor of the existence of the aforementioned lease litigation, is not subject to any mortgage, pledge, attachment, lien, reservation, responsibility or limitation of any kind whatsoever, regarding title to the same, and it is current on payment of property tax, as well as any other fee or cooperation.

n) PARCEL A and the larger property, El Cardonal, of which it forms part, are classified as rural, and have no urban infrastructure whatsoever.

ñ) They have sufficient financial resources and good character to bind themselves in the manner and terms set forth in this agreement, and the contributions they promise to make will not leave them insolvent or in need.

II. Mr. BULNES states as follows:

a) He is a natural person and Mexican citizen, married under the property system of separation of assets, is of legal age and has the capacity to bind himself pursuant to the conditions of this instrument; he is recorded in the Federal Taxpayer Register under number ███████████████ and resides for tax purposes at ███████████████. Cabo San Lucas, B.C.S., C.P. [postal code] 23410.

b) He is the lawful and sole owner and possessor of the rural property known as Medanos Partidos, which has an area of 345-52-64.36 hectares and since its purchase and up to the date hereof has been used to raise livestock. This purchase is evidenced by notarial instrument number 3,183, executed on January 5, 1963, before Armando Aguilar Paniagua, and recorded in the Public Register of Real Property of the municipality of Los Cabos, under number 81, volume 2, section 1, on February 13, 1963, which was exhibited and has been returned to him.

3980

c) The rural property known as Medanos Partidos consists of the following: rural property Medanos Partidos, located in the delegation of Cabo San Lucas, in the state of Baja California Sur, Mexico, identified by property register code 4-02-013-0006, with a current area of 345-52-64.36 hectares, with the following measurements and boundaries:

TO THE NORTH: 2,042.246 meters, with property of Francisco R. Bulnes Malo
TO THE NORTHEAST: 1,580.370 meters, with property, now inherited, of Francisco Ceseña and Los Cangrejos of Victor H. Ceseña Dias, in two plots of 1,190.477 meters and 389.893 meters, respectively.
TO THE SOUTHEAST: 2,440.341 meters, with property El Cardonal of Atilio Colli Villarino, in two plots of 1,654.368 meters and 785,973 meters, respectively.
TO THE SOUTHWEST: 1,661.188 meters with Federal Maritime Land Zone, in four plots of 334.846 meters, 254.158 meters, 752.030 meters and 320.154 meters.

d) He is aware of the existence of the Plan for the Design, Construction and Operation of a Desalination Plant for the benefit of the population of Cabo San Lucas, intended to obtain 200 liters per second (hereinafter the DESALINATION PLANT) promoted by the municipal and state governments, under, respectively, ULISES OMAR CESEÑA MONTAÑO and LEONEL EFRAIN COTA MONTAÑO, in their respective capacities as President of the VIII Municipal Government of Los Cabos and Constitutional Governor of the state of Baja California Sur; with the approval and support of the Federal government under the CONSTITUTIONAL PRESIDENT OF THE UNITED MEXICAN STATES, VICENTE FOX QUESADA.

e) Prior to the execution date of this agreement, he stated by means of letters appended hereto as APPENDIX F, and now hereby confirms, that it is his free and irrevocable intention to participate in the joint efforts promoting the DESALINATION PLANT, and, in order to benefit the population of Cabo San Lucas, to contribute free of charge the land area that is needed to carry out this plan; the dimensions of that land area are specified hereinafter, by means of the legal instruments and contracts that are also defined hereinafter, without any consideration whatsoever in his favor, and subject only to the condition that the land area always be used, solely and exclusively, for the purposes for which it is contributed and no other.

f) They are [sic] aware that the COLLIS, who own the abutting property called El Cardonal, have also expressed their full agreement to participating in the plan in question, in similar terms.

g) As an act prior to the execution of this instrument, the UTILITY, for the purpose stated in recital f) above, showed, in the plan that is appended to this instrument as

3981

CABO CONTRACTS ENGLISH 00000101

APPENDIX C, the area of land owned by Mr. BULNES, that will be needed to house part of the industrial plant and installations of the DESALINATION PLANT, with such parcel described as follows and identified hereinafter, for the purposes hereof, as the PROMISED MEDANOS PARTIDOS PARCEL (SITE C):

THE PROMISED MEDANOS PARTIDOS PARCEL (SITE C)
Area of fifteen thousand (15,000) square meters, with the following measurements and boundaries:

| | |
|---|---|
| TO THE NORTH: | 20.4143 METERS WITH SITE B |
| | 119.3563 METERS WITH SITE A |
| TO THE WEST: | 100.00 METERS WITH SITE A |
| TO THE SOUTH: | 150.0215 METERS WITH SITE A |
| | 10.2075 METERS WITH SITE D |
| TO THE EAST: | 102.0714 METERS WITH PROPERTY OF ATILIO COLLI |

The PROMISED MEDANOS PARTIDOS PARCEL (SITE C) will be appropriately subdivided out of the larger parcel of which it has formed part up to now, as described in letter c), of this recitals section, subject to the applicable authorizations and its recording in the respective municipal Property Register; only the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) is to be placed into the promised trust agreement.

h) In addition, in preparation for entering into this promissory agreement and the separate easement establishment promissory agreement, which will be entered into, the UTILITY also showed in the aforementioned plan appended as APPENDIX C, the land areas that form part of the land parcel owned by Mr. BULNES, which will be needed for an access road to the DESALINATION PLANT, hereinafter referred to as the PROMISED MEDANOS PARTIDOS ROAD (SITE B), and for the underground installation of the wells, pipelines and sewers, in the portion involving El Cardonal; hereinafter referred to as the PROMISSORY MEDANOS PARTIDOS EASEMENT (SITE D) and that are described as follows:

The PROMISSORY MEDANOS PARTIDOS ROAD (SITE B)
Area of thirty-nine thousand, eight hundred eighty-four point nine hundred thirty-six (39,884.936) square meters, with the following measurements and boundaries:

| | |
|---|---|
| TO THE NORTH: | 20.1836 METERS WITH PROPERTY OF VICTOR HUGO CESEÑA |
| TO THE WEST: | 1,993.5589 METERS WITH SITE A |
| TO THE SOUTH: | 20.4143 METERS WITH SITE C |

3982

TO THE EAST:          1,994.9347 METERS WITH PROPERTY OF ATILIO COLLI

The PROMISED MEDANOS PARTIDOS EASEMENT (SITE D):
Area of fourteen thousand, four hundred ninety-four point two thousand five hundred fifty-four (14,494.2551)[2] square meters, with the following measurements and boundaries:

TO THE NORTH:         547.770 METERS WITH SITE A
                      10.208 METERS WITH SITE C

TO THE WEST:          160.448 METERS WITH SITE A
                      110.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      122.508 METERS WITH SITE A
TO THE SOUTH:         10.797 METERS WITH SITE A
                      41.740 METERS WITH SITE A
                      10.00 METERS WITH SITE A
                      90.00 METERS WITH SITE A
                      10.00 METERS WITH SITE A
                      90.00 METERS WITH SITE A
                      10.00 METERS WITH SITE A
                      90.00 METERS WITH SITE A
                      10.00 METERS WITH SITE A
                      90.00 METERS WITH SITE A
                      10.00 METERS WITH SITE A
                      90.00 METERS WITH SITE A

TO THE EAST:          300.628 METERS WITH PROPERTY OF ATILIO COLLI
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A
                      100.00 METERS WITH SITE A

l) It is his wish to enter into this agreement in order to bind himself to subsequently enter into the promised agreements specified below, without any consideration in his favor, and in accordance with the terms and conditions that are set forth below.

j) The property Medanos Partidos, from which the PROMISED MEDANOS PARTIDOS PARCEL (SITE C), THE PROMISED MEDANOS PARTIDOS ROAD (SITE B) AND THE PROMISED MEDANOS PARTIDOS EASEMENT (SITE D) will be taken, is not subject to any mortgage, pledge, attachment,

3983

---

[2] Translator's note: the words and numbers do not agree.

lien, reservation, responsibility or limitation of any kind whatsoever, regarding title to the same, and it is current on payment of property tax, as well as any other fee or cooperation.

n) The larger property, Medanos Partidos, is classified as rural, and has no urban infrastructure whatsoever.

ñ) He has sufficient financial resources and good character to bind himself in the manner and terms set forth in this agreement, and the contributions he promises to make will not leave him insolvent or in need.

III.    The UTILITY states as follows:

1. It is a decentralized entity of the municipality of Los Cabos, Baja California Sur, with a legal personality and its own assets, created by a resolution of the Municipal Government of Los Cabos, B.C.S., dated June 10, 2001, published in the Official Gazette of the government of the state of Baja California Sur on the 20th of the month and year cited.

2. It is responsible for providing public water utility services in the municipality of Los Cabos, Baja California Sur.

3. Its legal representatives in this legal instrument are Miguel Ángel Ceseña Cota and Ulises Omar Ceseña Montaño, in their capacities as General Manager of the Utility and Chairman of the Board of Governors of the Utility, respectively.

4. By virtue of the legal representation they exercise in their capacities as lawfully constituted municipal authorities, they have the legal capacity to enter into contracts and acts related to the purpose of this agreement.

5. It is of sufficiently good character to be bound in the manner and terms set forth in this agreement.

6. It indicates as its domicile for the purposes of this agreement the premises located at Guerrero y Coronado S/N, Colonia Centro, San José del Cabo, B.C.S., in San José del Cabo, Los Cabos, Baja California Sur, Mexico.

7. By virtue of the legal powers it enjoys, by virtue of its purpose, and in its capacity as a Public Municipal Entity, the Water Utility of Los Cabos, in order to satisfy the needs of the population in relation to the supply of potable water, on

3984

CABO CONTRACTS ENGLISH 00000104

November 18, 2003, it entered into an agreement for the provision of professional services, with the legal entity called Promoaqua Desalación de Los Cabos, S.A. de C.V., called the Agreement for Provision of Services for Extraction and Desalination of Sea Water, its Purification, Transportation, Storage and Delivery to the city of Cabo San Lucas, B.C.S., the disposal of waste water and the planning, construction and testing of potable water networks of the districts of Mesa Colorada and Los Cangrejos, of same city, for a period of 20 years, as well as transfer of ownership and operation of the system to OOMSAPASLC [the Utility] on optimal operating conditions upon the termination of the agreed period. The potable water networks must be delivered to OOMSAPASLC upon completion of the tests of their operation; within the framework of the provisions of the Law on Acquisitions, Leases and Services of the Public Sector and its Regulations.

8. It acknowledges that it has received the letters described in letter f) of recitals section I and letter e) of section II, respectively, and therefore it is aware of the express and manifest intention of the COLLIS and Mr. BULNES to enter into this instrument, to the benefit of the population of Cabo San Lucas, to contribute, free of charge, to the DESALINATION PLANT; and also of the condition that the assets that form the subject of the agreements that, according to promises that have been given, will be entered into, will actually always be used for the purposes agreed hereinafter.

9. It acknowledges that it produced the plans appended to this instrument and that reference has been made to the recitals sections, which are respectively identified as APPENDIX B and APPENDIX C, which show the land requirements of the DESALINATION PLANT, at least insofar as concerns the portions that involve the rural properties El Cardonal and Medanos Partidos.

10. It knows the properties that will form the subject of the agreements that, according to promises given herein, will be entered into, as well as the physical and legal conditions of the same, and believes that they will be appropriate for the purposes for which they are being contributed, in their current rustic condition, in the terms agreed upon in this instrument.

11. It is participating in the execution and granting of this promissory instrument, in order to bind itself to its terms.

IV. The ~~VIII MUNICIPAL GOVERNMENT OF THE MUNICIPALITY OF~~ LOS CABOS B.C.S. hereby states as follows:

IV.1 It is a Public Institution with its own legal personality, according to section II, article 115 of the Constitution of the United Mexican States, article 117 of the Constitution of the state

3985

CABO CONTRACTS ENGLISH 00000105

of Baja California Sur, and Articles 1, 5 and 26, Section I, of the Municipal Regulatory Act of the Eighth Title of the Constitution of the state of Baja California Sur, and that it has the powers necessary to enter into this agreement.

IV.2. Its representatives evidence their personalities as follows: ULISES OMAR CESEÑA MONTAÑO and RIGOBERTO ARCE MARTÍNEZ evidence their positions as MUNICIPAL PRESIDENT and MUNICIPAL COMPTROLLER of the VIII Municipal Government of Los Cabos, B.C.S., respectively, based on the majority vote cast by the Municipal Electoral Committee to elect the Municipal Government of the Municipality of Los Cabos, B.C.S., an uncertified copy which was displayed and is appended to this agreement, of which it forms an integral part as APPENDIX G, and AUGUSTO RAUL JIMÉNEZ BELTRÁN evidences his position as General Secretary pursuant to the appointment made by the Municipal President and confirmed by the City Council, a certified copy of which was displayed and is appended to this agreement, of which it forms an integral part as APPENDIX H.

IV.3. Its registered office is located at Blvd. Mijares No. 1413, Col. Centro, San José del Cabo, C.P. [postal code] 23400, which it states is to be used for the legal purposes and effects of this agreement, and that its Federal Taxpayer No. is

IV.4. It is responsible for providing public utility services in the municipality of Los Cabos, B.C.S., and therefore is entering into this act for the purpose of binding itself to enter into the promised donation agreement, a promise to enter into which is given in this instrument, in order to receive the donated area identified hereinafter, so as to comply with the Urban Development Law of the state of Baja California Sur, in order to use it for urban facilities and provision of potable water, as well as a public road, primarily.

IV.5. It acknowledges that it has determined and agreed with third party Victor Hugo Ceseña Diaz, the owner of another rural property called Los Cangrejos, which borders the properties El Cardonal and Medanos Partidos on the North, on the donation of the area needed to construct the roads that are shown in the plan that is appended to this instrument as APPENDIX I, and which will constitute part of the access road to the DESALINATION PLANT, from the junction with the Cabo San Lucas road, to Todos Santos, and as far as the border of the properties owned by the first two contracting parties herein.

V. The parties jointly state as follows:

Further to the provisions of the preceding sections, the parties agree to participate and do participate in the granting of this instrument, and

3986

CABO CONTRACTS ENGLISH 00000106

to enter, by means of one single instrument, into three separate but related legal acts or promissory agreements, each of which shares recitals similar to those previously stated, as well as the clauses that appear in the section containing common clauses.

They therefore state that they will enter into and do enter into the following agreements, in the same legal instrument, as follows:

1. Promissory Agreement for Placement in Trust with Transfer of Title and with a reversion clause, in which will be placed the parcels identified as the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C), which will be entered into by the COLLIS and Mr. BULNES, as promissory trustor parties, and, and by the UTILITY, as primary beneficiary.

2. Promissory Agreement for Donation, which will cover the parcels defined as the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B), which will be entered into by the COLLIS and Mr. BULNES as the promissory donor parties, and the PROMISSORY DONEE, as the promissory donee.

3. Promissory Agreement for Easement Establishment, which will cover the parcels identified as the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D), which is being entered into by the COLLIS and Mr. BULNES, as constituent promissory parties that own the properties in question, and the UTILITY, as promissory successor to the dominant property.

Now therefore, the parties agree to grant the following:

FIRST LEGAL ACT

PROMISSORY AGREEMENT FOR PLACEMENT IN TRUST WITH TRANSFER OF TITLE AND WITH REVERSION CLAUSE, ENTERED INTO BY THE COLLIS AS FIRST PROMISSORY TRUSTORS AND BY MR. BULNES AS SECOND PROMISSORY TRUSTOR, AND THE UTILITY, AS PROMISSORY BENEFICIARY, PURSUANT TO THE PRECEDING RECITALS AND THE FOLLOWING

CLAUSES

3987

CABO CONTRACTS ENGLISH 00000107

ONE -                    PROMISE

The parties to this agreement mutually agree to enter into a definitive trust agreement with transfer of title and a reversion clause (hereinafter the TRUST), to which will be transferred the ownership rights to the properties defined in letters h) of section I of the Recitals, and letter g) of Section II of the Recitals, and identified as the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C); the promised agreement contains the following essential characteristics and the other characteristics specified in the remainder of the clauses of this agreement:

FIRST TRUSTORS:              THE COLLIS, with regard to the PROMISED CARDONAL PARCEL

SECOND TRUSTOR:              MR. BULNES, with regard to the PROMISED MEDANOS PARTIDOS PARCEL

TRUSTEE:                     The fiduciary institution appointed by the UTILITY

FIRST BENEFICIARY:           THE UTILITY

SECOND BENEFICIARY:

The COLLIS and the beneficiaries they appoint, if any, shall have the above character with regard to the PROMISED CARDONAL PARCEL (SITE III), and Mr. BULNES and the beneficiaries he appoints, if any, shall have the above character with regard to the PROMISED MEDANOS PARTIDOS PARCEL (SITE C).

SUBJECT MATTER

The subject matter is the real properties identified as the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C), which are described in recitals h) of section I of the Recitals and g) of section II of the Recitals (whose description is deemed reproduced in this clause as if it were literally included here). It is understood and agreed that the transfer to the trustee of ownership and full title to such parcels will take place with the parcels current on payment of all contributions and other taxes that were payable in respect thereof, as well as free from encumbrances, burdens, leases, third party rights,

3988

CABO CONTRACTS ENGLISH 00000108

14

reservations, limitations and responsibilities and, in general, anything that by law, practice and/or custom, is applicable thereto.

PURPOSES:

1. The PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) will be used solely and exclusively for the installation and operation of the DESALINATION PLANT and complementary works, which will provide desalinated sea water to the population of Cabo San Lucas, Municipality of Los Cabos, Baja California Sur.

2. The TRUSTEE must always retain, for so long as the TRUST exists, ownership of the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C), and it is prohibited for the TRUSTEE to pledge, encumber or transfer, in any manner whatsoever, the ownership rights to such properties.

3. The TRUSTEE must retain, for so long as the TRUST exists, full original legal possession of the aforementioned parcels, but transfers, in gratuitous bailment or any other legal manner, to the UTILITY or to a third party that the UTILITY appoints, indirect physical and legal possession in order that the works may be carried out for the construction and installation of the DESALINATION PLANT and its operation.

4. The TRUSTEE will permit the UTILITY or the third party the UTILITY appoints to carry out the construction and installations, that are pertinent to the operation of the DESALINATION PLANT, on the parcels that are the property of the trust, on the understanding that the edifices constructed shall be the property of the UTILITY or the party that constructs them, with the consent of the UTILITY, unless there is a new different agreement, as determined by the UTILITY.

5. In accordance with the provisions of the General Law on Negotiable Instruments and Credit Transactions, the TRUSTEE grants the persons the UTILITY appoints the necessary and broadest powers that are required by law, except for the power to transfer assets, so that they may defend the assets placed in trust, under the strict responsibility of the UTILITY, subject to notice to the COLLIS and Mr. BULNES, or their successors.

6. If the UTILITY does not appoint legal representatives in accordance with the provisions of the preceding point, the TRUSTEE may, in order to defend the trust assets, grant the necessary and broadest powers that are required by law, except for the power to transfer assets, to the person(s) that the COLLIS and Mr. BULNES, or their successors, appoint.

3989

CABO CONTRACTS ENGLISH 00000109

15

7. At the time the trust ceases to be in effect, whether because of the expiration of its duration and extension, if any, or because of the occurrence of the requisites for early termination and the reversion clause, the TRUSTEE must declare the TRUST extinct and:

a) With regard to the land, revert ownership of the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) to their respective trustors or to the beneficiaries they have appointed or their successors, free from occupants and possessors and duly vacant, or the natural persons or legal entities that they appoint;

b) With regard to all construction, permit the owner of the edifices constructed to remove them, or in the absence thereof, reach an agreement with the successors to the land in terms both parties deem appropriate and, in the absence of an agreement, proceed with their demolition and the removal of debris.

8. The other terms that may be inferred from the remainder of the clauses of this promissory instrument or that are additionally agreed with the TRUST.

TWO.        ACCEPTANCE OF OBLIGATIONS BY THE PARTIES.

The COLLIS and Mr. BULNES accept the obligation and promise to enter into the TRUST in a notarial instrument, in order to transfer, pursuant to the terms agreed upon herein, ownership and full title to the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C), respectively, and the UTILITY also hereby agrees to participate and enter into the TRUST, and to use the aforementioned properties solely and exclusively for the purposes for which they are contributed and for no other, and to respect, comply and ensure compliance with the remainder of the obligations they undertake, in order that a Fiduciary Institution may acquire the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) in trust for the aforementioned purposes.

THREE.        TRANSFER FREE OF CHARGE.

The parties agree that the transfer to the TRUST of the rights of ownership and possession to the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS SECTION (SITE C) will be free of charge, without any consideration whatsoever in favor of the

3990

CABO CONTRACTS ENGLISH 00000110

COLLIS and Mr. BULNES, pursuant to the statements made in recital sections I and II of this instrument, which they do to benefit the population of Cabo San Lucas, Baja California Sur.

FOUR.        PERIOD WITHIN WHICH TRUST MUST BE GRANTED

The parties agree that the period within which the TRUST must be entered into and granted in a notarial instrument is ninety business days, counted from the date on which the COLLIS are restored to full physical and indirect possession in the lawsuit mentioned in letters j) and k) of recitals section I hereof.

FIVE.        POSSESSION

The COLLIS and Mr. BULNES will deliver, to the TRUSTEE, full physical and legal possession to the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) on precisely the date on which the notarial instrument that contains the TRUST is signed.

Notwithstanding the foregoing, as from the date hereof Mr. BULNES authorizes the UTILITY itself to carry out, or have carried out by a third party the UTILITY appoints, the DESALINATION PLANT construction works, at least in the portion thereof that involves the PROMISED MEDANOS PARTIDOS PARCEL (SITE C).

Insofar as concerns the COLLIS, they anticipate that once full physical and legal possession of the PROMISED CARDONAL PARCEL (SITE III) is restored to them, they will issue an authorization similar to that specified in the preceding paragraph, even if the TRUST has not yet been formalized.

Therefore, the UTILITY acknowledges and expressly agrees that this agreement does not authorize it in any way whatsoever to use, occupy and/or build on the PROMISED CARDONAL PARCEL (SITE III) until the event mentioned in the preceding paragraph occurs.

SIX.        PROMISED AGREEMENT

The parties agree to enter into the promised, final agreement, which is to say the TRUST, no later than the date specified in clause four, with regard to the PROMISED CARDONAL PARCEL (SITE III) and the

3991

17

PROMISED MEDANOS PARTIDOS PARCEL (SITE C), which form the subject of this agreement. Therefore, on that date the COLLIS and Mr. BULNES will transfer ownership of the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) to the fiduciary institution appointed by the UTILITY.

The date established in clause four for entering into the TRUST may be deferred pursuant to a written agreement signed by the parties to this agreement. It may also be moved earlier.

SEVEN.        OBLIGATIONS    OF    THE    PARTIES    REGARDING
              FORMALIZATION OF THE TRUST.

In order that the TRUST may be entered into, the COLLIS and Mr. BULNES agree to provide the title deed[s] to the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) to the Notary Public referenced in clause eight, at least five (5) days prior to the date fixed for entering into the TRUST.

For its part, the UTILITY agrees to do the following:

1.      Request and obtain from the appointed Notary Public the "draft" of the notarial instrument that is to contain the TRUST, so that it may be provided to the donors for their consideration before being signed, at least ten (10) business days in advance and, if applicable, request the corrections or additions upon which the parties agree.

2.      Process and pay for all the costs for the preparations, permits and authorizations that the subdivisions require, in terms of recording the configuration of the promised parcels.

3.      Bear all costs, fees and expenses related to the preparation of the notarial instrument that contains the TRUST, and specifically those related to obtaining the certificate of no encumbrances, proof of no debt, appraisals, notarial and recording services for the aforementioned notarial instrument.

3.      Bear all taxes, including income tax, if any, related to the granting of the notarial instrument that contains the TRUST.

EIGHT.        CONTRIBUTION 'AD MESURAM'[3]

3992

---

[3] Translator's note: form of property sale in which a specific area is assured, and if there is an excess/shortage the price is adjusted.

18

The transfer of ownership of the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) will take place "ad mesuram", so any difference there may be will be adjusted accordingly.

NINE.        DOMICILE FOR GRANTING THE FINAL AGREEMENT.

The parties agree to make the state of Baja California Sur, and specifically the notarial office selected by the COLLIS and Mr. BULNES, the location for performance of the obligation to grant the TRUST, which is to contain essentially, *mutatis mutandis*, the same terms and the same conditions as this instrument.

TEN.        WARRANTY OF TITLE

With regard to the agreements set forth in clause one hereof and on the assumption the TRUST will be granted, the COLLIS and Mr. BULNES herewith agree to be responsible for warranty of title with regard to the PROMISED CARDONAL PARCEL (SITE III) and the PROMISED MEDANOS PARTIDOS PARCEL (SITE C) as specified, and also that such parcels are free from any encumbrance, mortgage, pledge, attachment or debt for taxes or contributions or their differences, as well as any other item.

ELEVEN.        TERM OF THE TRUST

The parties agree that the TRUST will have an original term of ninety-nine (99) years, which may be renewed prior to its expiration without need for the consent of the COLLIS or Mr. BULNES, provided that the DESALINATION PLANT remains in operation.

The TRUST may not be terminated early, during the original term or during an extension thereof, if any, except as agreed in the next clause.

TWELVE.        CAUSES FOR EARLY TERMINATION OF THE TRUST

The parties will stipulate in the TRUST, as causes for early termination of the same, the following:

3993

CABO CONTRACTS ENGLISH 00000113

19

1. The voluntary written agreement of the UTILITY and of the COLLIS and Mr. BULNES, or their beneficiaries or successors, to deem it terminated, regardless of whether the DESALINATION PLANT remains in efficient operating condition.

2. The fact that the UTILITY or a third party operator of the DESALINATION PLANT instructs the TRUSTEE to pledge or encumber in any manner whatsoever the rights of the UTILITY under the TRUST.

3. The fact of the UTILITY or a third party operator of the DESALINATION PLANT omitting to inform and request the TRUSTEE to grant powers of attorney to defend the trust assets and engage in the appropriate, effective defense, against any complaint, attachment or encumbrance that any third party may effect against the UTILITY, or against the third party operator of the DESALINATION PLANT, provided that such act may affect the trust rights to the parcels or the trust rights of the UTILITY.

4. The total loss of or serious harm of the DESALINATION PLANT, that prevents it from resuming operations for a period of more than two years, counted from the date on which the loss or harm occurs.

5. The fact that the DESALINATION PLANT suspends operations and provision of potable water to the population of Cabo San Lucas, for a period of more than three years, for any other reason, even if justified, whether voluntary, litigation-related, financial or operational.

6. The fact that the DESALINATION PLANT ceases to operate for a period of more than two years without justified cause.

7. The fact that the UTILITY is in breach, for a period of more than 2 years, of the obligations it has assumed regarding paving the access roads to the DESALINATION PLANT, particularly the obligation defined in clause one, point 1, of the Purposes Section of the Second Legal Act of this instrument.

8. The fact that the UTILITY fails to comply and/or to ensure compliance with any of the purposes stipulated for the trust or any of the clauses of this instrument.

THIRTEEN.        REVERSION

3994

CABO CONTRACTS ENGLISH 00000114

20

The parties agree that the TRUST will also contain an express reversion clause regarding the parcels that make up the assets of the TRUST, which the TRUSTEE must make to the respective trustors or their beneficiaries or successors, or to the natural person or legal entity that they designate, when the TRUST becomes ineffective because of the occurrence of any of the causes of termination that is duly proven.

The UTILITY will have a period of two years, counted from the date on which the reversion clause becomes effective, to remove the other assets placed on the land.

FOURTEEN.          FACILITIES

The TRUST must also set forth the obligation, which the COLLIS and Mr. BULNES accept, not to interfere in any way in the construction or operation of the DESALINATION PLANT, for which the UTILITY, or the company contracted by the UTILITY for such purposes, is responsible, provided that the construction and operation works are in accordance with applicable regulations.

FIFTEEN.          RESTRICTIONS

In accordance with the subject matter and characteristics of this legal instrument and of the TRUST, the UTILITY accepts and agrees that in no case, present or future, may it encumber, mortgage, sell or enter into acts or contracts that affect the trust rights it will acquire in the TRUST, nor may it instruct the TRUSTEE to do anything similar, in order to preserve the integrity of the assets placed in trust.

SIXTEEN.          AUTHORIZATION OF GRATUITOUS BAILMENT

The parties also agree that the TRUST will include an express clause pursuant to which the UTILITY may itself, or through the TRUSTEE, grant, in writing, in gratuitous bailment or a similar contract that serves to transfer temporary use and enjoyment, free of charge, to the legal entity indicated by the UTILITY, of the parcels of land that will be placed in trust and are identified in clause one hereof, for the entire period of time needed for the construction and operation of the DESALINATION PLANT, without need for any additional consent of the trustors, provided that the

3995

CABO CONTRACTS ENGLISH 00000115

21

gratuitous bailee or recipient of such use and enjoyment expressly agrees to comply with the terms of the TRUST.

SEVENTEEN.          OBLIGATIONS OF THE UTILITY

In accordance with the provisions of clauses one and two hereof, and the related clauses of the TRUST, it will be agreed that the TRUST undertakes and promises to provide the necessary infrastructure on the land on which the DESALINATION PLANT is to be constructed, as well as the construction of access roads to such site, in order to facilitate their operation and accord, as provided for in the Master Plan of Urban Development of San José del Cabo, Cabo San Lucas, B.C.S.

This infrastructure will necessarily consist of an access road that is 40 meters wide, with four lanes, with a central median, curbs and sidewalks, and paved, and having the technical specifications needed to handle the vehicular traffic that passes through the zone for this reason, whether or not in relation to operation of the DESALINATION PLANT.

The access road in question must start from the highway that goes from Cabo San Lucas to Todos Santos, and extend to the different technical areas of the DESALINATION PLANT, as shown in the respective plan, which is appended to this legal instrument as APPENDIX I.

The scope of this road construction will be for an amount of up to MXN 12,000,000.00 (TWELVE MILLION AND 00/100 MEXICAN PESOS), at July 2003 prices, which may be updated at the time of its construction based on the National Consumer Price Index.

In the event the amount specified in the preceding paragraph is insufficient for the construction as provided herein, it is agreed that the UTILITY will have an absolute obligation to build, first, only one of the two portions of the complete road, or in other words, only two of the four lanes.

A period of two (2) years will be specified in the TRUST for the performance of the aforementioned obligations. This period will be counted from the date on which the TRUST is established, without need for any other prior demand or formality.

The second portion of the road, or in other words, the remaining two lanes, will be constructed as permitted by the generation of future budget items, whether of the UTILITY or the Municipal Government

3996

CABO CONTRACTS ENGLISH 00000116

22

or competent public entity, within a period not to exceed 6 years.

It is agreed that in the event the road is not constructed, the COLLIS and Mr. BULNES or their successors may carry out the works for their own account, but in such case the entire investment they make will be deemed made on account of future donations in accordance with the provisions of Article 74 and/or 74-bis of the Urban Development Law of the state of Baja California Sur. The foregoing will be documented by means of an agreement to be entered into by the COLLIS and Mr. BULNES, with the MUNICIPAL GOVERNMENT, on or before the date on which the TRUST is entered into.

EIGHTEEN.            CONSTRUCTION PROVISIONS

It is also agreed that the TRUST will include clauses that specify the characteristics according to which the DESALINATION PLANT and the respective access road and easement construction works must be carried out in order to reduce the visual and noise impact, as it is the intention of the parties to have works that have the least impact possible on the environment and comply with applicable regulations regarding construction and the environment.

The obligations of the UTILITY include the installation of a power line to provide electric power to the DESALINATION PLANT and to its various technical areas, but must be in the form of underground cables, at least in the areas that could have the greatest impact on the view of the other lands owned by the COLLIS and Mr. BULNES, particularly from the industrial plant of the DESALINATION PLANT and toward and in the easements area.

NINETEEN.            RESERVATION OF THE RIGHT TO INSTALL
                     DESALINATION PLANTS

The TRUST will include a provision for the unrestricted reservation of the right of each one of the COLLIS and Mr. BULNES, and of their beneficiaries or successors, to install in the remainder of the properties, respectively, one or more desalination plants, to supply potable water to such properties, as they are used at present or in the future, subject to the provisions of Article 72 of the Law of Urban Development of the state.

The UTILITY therefore herewith states its intention not to oppose and even to assist the COLLIS and Mr. BULNES

3997

23

to carry out the procedures and obtain, at their expense, the respective concession for the installation of their own seawater desalination plant or plants, on conditions that do not affect the operation of the DESALINATION PLANT.

Notwithstanding the foregoing, in the event the installation of the aforementioned plants might be made more onerous or difficult because of the pre-existence and/or operation of the DESALINATION PLANT, the UTILITY is obligated to grant, and shall grant, in the TRUST, the right to use water produced by the DESALINATION PLANT, at the price established for commercial use in the zone at the time of contracting.

TWENTY.              WASTE WATER PREFERENTIAL RIGHT

The UTILITY agrees to sell at market value, on a preferential basis, to Mr. BULNES and to the COLLIS, in that order, the waste water that is generated from the operation of the DESALINATION PLANT, for use in their present or future projects.

TWENTY-ONE.         REPLACEMENT OF WATER SUPPLY FROM
                    PRE-EXISTING WELL

In view of the fact that as of the date hereof the COLLIS have a water well used to provide a watering place on the lands they own, and that it is believed that such well will be affected by the construction of the DESALINATION PLANT, the UTILITY agrees to ensure that the company that operates the DESALINATION PLANT installs, near the current location of the aforementioned well, or in the location agreed upon by the parties, a desalinated water standpoint of half an inch, to make up for the future absence of the well in question. The installation of and consumption from the standpipe will be for the account and cost of the UTILITY for as long as the TRUST continues to exist and even after it ceases to exist.

TWENTY-TWO.         BEACH ACCESS

The parties agree that the COLLIS and Mr. BULNES, their beneficiaries and successors, will retain at all times the right of access to the beach, so as not to interfere or limit the present or future business endeavors.

TWENTY-THREE.       OTHER CLAUSES THE TRUST MUST CONTAIN

3998

24

The UTILITY agrees that TRUST shall contain, in addition to what has already been defined in the foregoing, other clauses which shall be bound by the following:

1) that the UTILITY shall now and at all times  agree not authorize by itself or by way of third parties the granting of access permits for street vendors or allowing the establishment of fixed or semi-fixed stores, both in the access roads to which the contract makes reference, as well as in the neighboring areas or where the DESALINATION PLANT is installed.

2) That the TRUSTEE that was designated in the TRUST may cease to hold office under the terms of Article 391 of the General Law of Negotiable Instruments and Credit Transactions and be replaced by different TRUSTEE agreed upon by the parties.

3) That the trustee will compensate the trustors for the acts in bad faith or in excess of the powers vested in it for the execution of the trust, by virtue of the deed or of the law to the detriment of conducting these.

4) The formalities which the TRUSTEE shall follow to comply with and enforce the purposes of the TRUST and implement, where appropriate, the reversal of the assets of the trust, where appropriate.

5) That the UTILITY will assume the full cost of the trustee fees.

SECOND LEGAL ACT

PROMISSORY AGREEMENT FOR THE IRREVOCABLE DONATION OF THE FRACTIONS PROMISED CARDONAL ROAD (SITE II) and PROMISED MEDANOS PARTIDOS ROAD (SITE B), ENTERED INTO BY THE COLLIS AS FIRST PROMISSORY DONOR AND BY MR. BULNES AS SECOND PROMISSORY DONOR, AND THE VIII MUNICIPAL GOVERNMENT OF THE MUNICIPALITY OF LOS CABOS, B.C.S. (MUNICIPAL GOVERNMENT), AS PROMISSORY DONEE, PURSUANT TO THE PRECEDING RECITALS AND THE FOLLOWING

CLAUSES

ONE -          PROMISE

3999

CABO CONTRACTS ENGLISH 00000119

25

The parties to this agreement mutually agree to enter into a definitive agreement for IRREVOCABLE DONATION (hereinafter the DONATION), by which will be transferred the ownership rights to the properties defined in letters i) of section I of the Recitals, and letter h) of Section II of the Recitals, and identified as the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B); the promised agreement contains the following essential characteristics and the other characteristics specified in the remainder of the clauses of this agreement:

FIRST DONORS:             THE   COLLIS,   with   regard   to   the PROMISED CARDONAL ROAD (SITE II)

SECOND DONOR:             MR.   BULNES,   with   regard   to   the PROMISED   MEDANOS   PARTIDOS ROAD (SITE B)

DONEE:                    The MUNICIPAL GOVERNMENT


SUBJECT MATTER

The promised real properties identified as the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE II), which are described in recitals i) of section I of the Recitals and h) of section II of the Recitals (whose description is deemed reproduced in this clause as if it were literally included here). It is understood and agreed that the transfer to the donee of ownership and full title to such parcels will take place with the parcels current on payment of all contributions and other taxes that were payable in respect thereof, as well as free from encumbrances, burdens, leases, third party rights, reservations, limitations and responsibilities and, in general, anything that by law, practice and/or custom, is applicable thereto.

PURPOSES:

1. To be destined only and exclusively for public roads for access to the DESALINATION PLANT, which will start from the junction of Route Cabo San Lucas to Todos Santos, through an area that will also be donated by the third party Victor Hugo Ceseña Díaz as referenced in paragraph 5 of section IV of the recitals, and until the DESALINATION PLANT, for the benefit of the whole community and population of Cabo San Lucas

4000

CABO CONTRACTS ENGLISH 00000120

26

2. The DONEE must always retain, the public ownership of the public domain, of the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B), and it is prohibited to pledge, encumber or transfer, in any manner whatsoever, the ownership rights to such properties.

TWO.       ACCEPTANCE OF OBLIGATIONS BY THE PARTIES.

The COLLIS and Mr. BULNES accept the obligation and promise to enter into the DONATION in a notarial instrument, in order to transfer, pursuant to the terms agreed upon herein, ownership and full title to the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B), respectively, and the MUNICIPAL GOVERNMENT also hereby agrees to participate and enter into the DONATION, and to use the aforementioned properties solely and exclusively for the purposes for which they are contributed and for no other, and to respect, comply and ensure compliance with the remainder of the obligations they undertake.

THREE.       TRANSFER FREE OF CHARGE.

The parties agree that the transfer of the rights of ownership and possession to the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B) will be free of charge, without any consideration whatsoever in favor of the COLLIS and Mr. BULNES, pursuant to the statements made in recital sections I and II of this instrument, which they do to benefit the population of Cabo San Lucas, Baja California Sur.

FOUR.       PERIOD WITHIN WHICH DONATION MUST BE GRANTED

The parties agree that the period within which the DONATION must be entered into and granted in a notarial instrument is ninety business days, counted from the date on which the COLLIS are restored to full physical and legal possession in the lawsuit mentioned in letters j) and k) of recitals section I hereof.

FIVE.       POSSESSION

The COLLIS and Mr. BULNES will deliver, to the DONEE, full physical and legal possession to the PROMISED CARDONAL ROAD (SITE

4001

CABO CONTRACTS ENGLISH 00000121

27

II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B) on precisely the date on which the notarial instrument that contains the DONATION is signed.

Notwithstanding the foregoing, as from the date hereof Mr. BULNES authorizes the MUNICIPAL GOVERNMENT through the UTILITY to carry out, or have carried out by a third party the UTILITY appoints, that it may and even shall start the construction of the line of the roads, at least in the portions involving the PROMISED MEDANOS PARTIDOS PARCEL (SITE B) as long as the line starts from the junction of the public road.

Insofar as concerns the COLLIS, they anticipate that once full physical and legal possession of the PROMISED CARDONAL ROAD (SITE II) is restored to them, they will issue an authorization similar to that specified in the preceding paragraph, even if the DONATION has not yet been formalized.

Therefore, the MUNICIPAL GOVERNMENT acknowledges and expressly agrees that this agreement does not authorize it in any way whatsoever to use, occupy and/or build on the PROMISED CARDONAL ROAD (SITE II) until the event mentioned in the preceding paragraph occurs.

SIX.        PROMISED AGREEMENT

The parties agree to enter into the promised, final agreement, which is to say the DONATION, no later than the date specified in clause four, with regard to the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B), which form the subject of this agreement. Therefore, on that date the COLLIS and Mr. BULNES will transfer ownership of the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B) to the donee.

The date established in clause four for entering into the DONATION may be deferred pursuant to a written agreement signed by the parties to this agreement. It may also be moved earlier.

SEVEN.        OBLIGATIONS    OF    THE    PARTIES    REGARDING FORMALIZATION OF THE TRUST.

In order that the DONATION may be entered into, the COLLIS and Mr. BULNES agree to provide the title deed[s] to the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS

4002

CABO CONTRACTS ENGLISH 00000122

28

PARTIDOS ROAD (SITE B) to the Notary Public referenced in clause eight, at least five (5) days prior to the date fixed for entering into the DONATION.

For its part, the MUNICIPAL GOVERNMENT agrees to do the following:

1.      Request and obtain from the appointed Notary Public the "draft" of the notarial instrument that is to contain the DONATION so that it may be provided to the donors for their consideration before being signed, at least ten (10) business days in advance and, if applicable, request the corrections or additions upon which the parties agree.

2.      Process and pay for all the costs for the preparations, permits and authorizations that the subdivisions require, in terms of recording the configuration of the promised parcels.

3.      Bear all costs, fees and expenses related to the preparation of the notarial instrument that contains the DONATION, and specifically those related to obtaining the certificate of no encumbrances, proof of no debt, appraisals, notarial and recording services for the aforementioned notarial instrument.

3.      Bear all taxes, including income tax, if any, related to the granting of the notarial instrument that contains the DONATION.

EIGHT.        CONTRIBUTION 'AD MESURAM'[4]

The transfer of ownership of the PROMISED CARDONAL ROAD (SITE II) and the PROMISED MEDANOS PARTIDOS ROAD (SITE B) will take place "ad mesuram", so any difference there may be will be adjusted accordingly.

NINE.         OBLIGATIONS OF THE DONEE

The donee will assume jointly with the UTILITY in the promised DONATION the irrevocable obligation to provide urban infrastructure in the terms expressed in point 5 of the declaration IV and clause Seventeen of the first contracts that are contained in this instrument in the understanding that in the event of default the donation will prevail but in that case the donors may carry out the works for their own account, but in such case the entire investment they make will be deemed made on account of future donations in accordance with the provisions of

4003

---

[4] Translator's note: form of property sale in which a specific area is assured, and if there is an excess/shortage the price is adjusted.

29

Section II from Article 74 and/or 74-bis of the Urban Development Law of the state of Baja California Sur; or exercise reversion actions that are foreseen in the thirteenth clause of the first of the contracts that are contained in this instrument.

TEN                RUSTIC STATUS

It is agreed that the MUNICIPAL GOVERNMENT recognizes for the donors the irrevocable condition that the fact that it carried out the promised donation, the promised trust and the promised easement, which are announced in this instrument; or the fact that the DESALINATION PLANT is built with its easements and access roads, even developed, and even operational, these circumstances will not lead to the a change in the serviant estates of the COLLIS and Mr. BULNES of their rustic cadastral classification.

ELEVEN.              RESTRICTIONS

The MUNICIPAL GOVERNMENT shall now and at all times agree not to authorize by itself or by way of third parties the granting of access permits for street vendors or allowing the establishment of permanent or semi-permanent stores, both in the access roads and rights-of-way to which the contract makes reference, as well as in the neighboring areas or where the DESALINATION PLANT is installed.

TWELVE           OTHER CLAUSES

It is agreed that the promised DONATION and the present promissory agreement will be understood as covered by the common clauses that are contained in the last paragraph of this instrument.


THIRD LEGAL ACT

PROMISSORY AGREEMENT FOR THE ESTABLISHMENT OF VOLUNTARY EASEMENTS IN PERPETUITY ON THE FRACTIONS PROMISED CARDONAL EASEMENT and PROMISED MEDANOS PARTIDOS EASEMENT, ENTERED INTO BY THE COLLIS, THE OWNERS OF THE SERVIENT ESTATE EL CARDONAL AS THE FIRST PART AND BY MR. BULNES THE OWNER OF THE SERVIENT ESTATE MEDANOS PARTIDOS AS THE SECOND PART, AND THE UTILITY, AS THE PROMISSORY SUCCESSOR OF THE DOMINANT ESTATE,

4004

PURSUANT TO THE PRECEDING RECITALS AND THE FOLLOWING

CLAUSES

ONE -                    PROMISE

The parties to this agreement mutually agree to enter into a definitive agreement for the NONEXCLUSIVE VOLUNTARY EASEMENT OF ACCESS AND RIGHT-OF-WAY (hereinafter the EASEMENT), by which will be affected the properties defined in letters i) of section I of the Recitals, and letter h) of Section II of the Recitals, and identified as the PROMISED CARDONAL EASEMENT and the PROMISED MEDANOS PARTIDOS EASEMENT; the promised agreement contains the following essential characteristics and the other characteristics specified in the remainder of the clauses of this agreement:

OWNERS OF THE SERVIENT ESTATE
EL CARDONAL:

THE  COLLIS,  with  regard  to  the PROMISED CARDONAL EASEMENT

OWNER OF THE SERVIENT ESTATE
MEDANOS PARTIDOS SECOND DONOR:

MR.  BULNES,  with  regard  to  the PROMISED   MEDANOS   PARTIDOS EASEMENT

SUCCESSOR OF THE DOMINANT ESTATE:

The UTILITY as a trustee in the trust promised in the first of the legal acts contained in this legal instrument and the TRUSTEE holding the trust promised in the first legal act entered into in this instrument.

SUBJECT MATTER

The promised real properties identified as the PROMISED CARDONAL EASEMENT and the PROMISED MEDANOS PARTIDOS EASEMENT, which are described in recitals i) of section I of the Recitals and h) of section II of the Recitals (whose description is deemed reproduced in this clause as if it were literally included here). It is understood

4005

CABO CONTRACTS ENGLISH 00000125

31

and agreed that the affectation of these to the promised easement will take place with the parcels current on payment of all contributions and other taxes that were payable in respect thereof, as well as free from encumbrances, burdens, leases, third party rights, reservations, limitations and responsibilities and, in general, anything that by law, practice and/or custom, is applicable thereto.

PURPOSES:

1. To be destined solely and exclusively for VOLUNTARY EASEMENT OF ACCESS AND RIGHT-OF-WAY, private and exclusive to what concerns its use for drilling and the laying of underground ducts, of all types required for the installation and operation of the DESALINATION PLANT, and in regards to the right-of-way, nonexclusive, as the right-of-way will be shared, for the benefit of servient estates and their current and future owners as well as by the personnel of the DESALINATION PLANT.

2. The assignee of the dominant estate, according to what is established by the Articles 1119 and 1120 of the Federal Civil Code, will be responsible to assume all costs for the repairs on the surface of the easement access and its maintenance, in perpetuity and also in regards to the right-of-way.

TWO.        ACCEPTANCE OF OBLIGATIONS BY THE PARTIES.

The COLLIS and Mr. BULNES accept the obligation and promise to enter into the EASEMENT in a notarial instrument, in order to establish, pursuant to the terms agreed upon herein, the aforementioned obligations upon the property identified as PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D), respectively, and the UTILITY also hereby agrees to participate in conjunction with the TRUSTEE and enter into the EASEMENT, and to use the aforementioned obligations solely and exclusively within the agreement for the purposes for which they are contributed and for no other, and to respect, comply and ensure compliance with the remainder of the obligations they undertake.

THREE.        TRANSFER FREE OF CHARGE.

The parties agree that the establishment of the easements will be voluntary and free of charge, without any consideration whatsoever in favor of the COLLIS and Mr. BULNES, pursuant to the statements made in recital sections I and II of this instrument, which they do to benefit the population of Cabo San Lucas, Baja California Sur.

4006

CABO CONTRACTS ENGLISH 00000126

FOUR.        PERIOD WITHIN WHICH DONATION MUST BE GRANTED

The parties agree that the period within which the EASEMENT must be entered into and granted in a notarial instrument is ninety business days, counted from the date on which the COLLIS are restored to full physical and legal possession in the lawsuit mentioned in letters j) and k) of recitals section I hereof.

FIVE.        EFFECTIVE DATE

The COLLIS and Mr. BULNES agree that the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D) will become effective precisely on the date on which the notarial instrument that contains the EASEMENT is signed.

Notwithstanding the foregoing, as from the date hereof Mr. BULNES authorizes the UTILITY to carry out, or have carried out by a third party the utility appoints, the construction of the collection and discharge units, as well as of the necessary technical facilities according to the DESALINATION PLANT project, at least in the portions involving the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D).

Insofar as concerns the COLLIS, they anticipate that once full physical and legal possession of the PROMISED CARDONAL EASEMENT (SITE IV) is restored to them, they will issue an authorization similar to that specified in the preceding paragraph, even if the EASEMENT has not yet been formalized.

Therefore, the UTILITY acknowledges and expressly agrees that this agreement does not authorize it in any way whatsoever to use, occupy and/or build on the PROMISED CARDONAL EASEMENT (SITE IV) until the event mentioned in the preceding paragraph occurs.

SIX.        PROMISED AGREEMENT

The parties agree to enter into the promised, final agreement, which is to say the EASEMENT, no later than the date specified in clause four, with regard to the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D), which form the subject of this agreement. Therefore, on that date the COLLIS and Mr.

4007

BULNES will transfer ownership of the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D) to the successor of the dominant estate.

The date established in clause four for entering into the promised agreement may be deferred pursuant to a written agreement signed by the parties to this agreement. It may also be moved earlier.

SEVEN.     OBLIGATIONS   OF   THE   PARTIES   REGARDING FORMALIZATION OF THE TRUST.

In order that the EASEMENT may be entered into, the COLLIS and Mr. BULNES agree to provide the title deed[s] to the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D) to the Notary Public referenced in clause eight, at least five (5) days prior to the date fixed for entering into the EASEMENT.

For its part, the UTILITY agrees to do the following:

1.     Request and obtain from the appointed Notary Public the "draft" of the notarial instrument that is to contain the EASEMENT so that it may be provided to the donors for their consideration before being signed, at least ten (10) business days in advance and, if applicable, request the corrections or additions upon which the parties agree.

2.     Process and pay for all the costs for the preparations, permits and authorizations that the subdivisions require, in terms of recording the configuration of the promised parcels.

3.     Bear all costs, fees and expenses related to the preparation of the notarial instrument that contains the EASEMENT, and specifically those related to obtaining the certificate of no encumbrances, proof of no debt, appraisals, notarial and recording services for the aforementioned notarial instrument.

3.     Bear all taxes, including income tax, if any, related to the granting of the notarial instrument that contains the EASEMENT.

EIGHT.     CONTRIBUTION AD MESURAM [5]

The transfer of ownership of the PROMISED CARDONAL EASEMENT (SITE IV) and the PROMISED MEDANOS PARTIDOS EASEMENT (SITE D) will take place

4008

---

[5] Translator's note: form of property sale in which a specific area is assured, and if there is an excess/shortage the price is adjusted.

CABO CONTRACTS ENGLISH 00000128

"ad mesuram", so any difference there may be will be adjusted accordingly.

NINE.          OBLIGATIONS OF THE DONEE

As established by the Articles 1119 and 1120 of the Federal Civil Code, it is agreed that the successor of the dominant estate, which will assume the promised EASEMENT will have the irrevocable obligation to fully fund the construction of the intake and discharge work , as well as of the necessary technical facilities according to the DESALINATION PLANT project, and of its maintenance in perpetuity, as well as the surface cleaning, maintenance and conservation, for the protection of its own facilities and to care and keep a good surface appearance, always trying to minimize the visual impact of such facilities and [keeping] the harmonious coexistence with the properties of the area; nevertheless it is agreed and acknowledged that the implementation and costing of such work will be executed by the company contracted for the design and construction of the DESALINATION PLANT, under the terms of the contract that were referred in subsection 7 of section III of the recitals; it is understood that the noncompliance by this third party shall be deemed a breach by the UTILITY.

TEN          RUSTIC STATUS

It is agreed that the UTILITY is obliged to apply for and obtain from the Municipal Cadastre specific statement affirming that it maintains and recognizes for the donors the irrevocable condition that the fact that it carried out the promised donation, the promised trust and the promised easement, which are announced in this instrument; or the fact that the DESALINATION PLANT is built with its easements and access roads, even developed, and even operational, these circumstances will not lead to the a change in the serviant estates of the COLLIS and Mr. BULNES of their rustic cadastral classification.

ELEVEN.          RESTRICTIONS

~~The UTILITY in conjunction with the MUNICIPAL GOVERNMENT shall now and at all times agree not to authorize by itself or by way of third parties the~~ granting of access permits to street vendors or allowing the establishment of permanent or semi-permanent stores, both on the access roads and

4009

on the rights-of-way to which the contract makes reference, as well as in the neighboring areas or where the DESALINATION PLANT is installed.

TWELVE          OTHER CLAUSES

It is agreed that the promised EASEMENT and the present promissory agreement will be understood as covered by the common clauses that are contained in the last paragraph of this instrument.

## CLAUSES COMMON TO THE THREE LEGAL ACTS

ONE               ASSIGNMENT OF RIGHTS AND OBLIGATIONS

Both parties agree that the UTILITY may not assign part or all the rights and obligations contained in the present instrument to third parties without prior consent of the COLLIS AND MR. BULNES, granted in writing.

TWO          ABSENCE OF DEFECTS

The parties state that in this instrument and in the contract contained therein, there has been no injury, fraud, violence, error, or any other defect that might affect its existence or validity, being the parties content with all the terms.

Likewise the COLLIS and MR. BULNES shall not be in state of insolvency or need because of their free contributions of these parcels, subject of the three contracts that are contained in this instrument.

THREE               NOTICES AND ANNOUNCEMENTS

All notices and announcements that the parties should be given in relation to this instrument will be made by certified mail, return receipt requested, or by any other means attesting that the notice was received by the recipient, in order for said communications or notices to take effect precisely from the date on which they were received.

For this purpose the parties indicate their addresses as follows:

4010

THE COLLIS                Miguel Hidalgo s/n
                          Esq. Manuel Doblado
                          Colonia Centro
                          San Jose del Cabo, B.C.S. Mexico

MR. BULNES                Av. Solmar No. 1

                          Cabo San Lucas B.C.S. Mexico

THE UTILITY               Guerrero y Coronado s/n
                          Colonia Centro
                          San Jose del Cabo, B.C.S. Mexico


FOUR        APPLICABLE LAWS

Both this instrument, as well as the three promised contracts, that may in turn also contain one or more instruments, shall be governed for its interpretation and enforcement by the laws of the United Mexican States in general and in particular by the commercial laws, in addition to the common law for federal matters.


FIVE        JURISDICTION

Furthermore, in the assumption that any dispute arises between the parties which could not be resolved satisfactorily by them in relation to this instrument or with regard to the promised contracts, both parties agree to be expressly and irrevocably subjected to the jurisdiction of the competent federal authorities in the state of Baja California Sur, renouncing from this moment to the immunity that they might currently or in the future hold due to a change of address or for any other reason.

After reading this instrument and having understood the legal consequences arising from it, the parties involved in it sign four copies in front of the witnesses who sign below, in the city of Cabo San Lucas, Baja California Sur at the 22 days of November two thousand four (2004).

4011

CABO CONTRACTS ENGLISH 00000131

SIGNATURE PAGE OF THE INSTRUMENT CONTAINING 1) PROMISSORY AGREEMENT FOR PLACEMENT IN TRUST WITH TRANSFER OF TITLE AND WITH REVERSION CLAUSE; 2) PROMISSORY AGREEMENT FOR ESTABLISHMENT OF EASEMENTS; 3) PROMISSORY AGREEMENT FOR DONATION FOR ROAD, ENTERED INTO ON THE 22 OF NOVEMBER 2004 BY:

[signature]
ATILIO COLLI VILARINO

[signature]
LUIS BULNES MOLLEDA

[signature]
ALICIA CESEÑA AGUNDES DE COLLI

[signature]
C.P. ULISES O. SESEÑA MONTAÑO

[signature]
MIGUEL ÁNGEL CESEÑA COTA

[signature]
C.P. RIGOBERTO ARCE MARTÍNES

[signature]
AUGUSTO R. JIMENES BELTRÁN

[signature]
LEONEL E. COTA MONTAÑO

[Every page in this document has an illegible notarial seal on the left margin]

4012



4013

CABO CONTRACTS ENGLISH 00000133



JUNCTION WITH CABO SAN LUCAS TODOS SANTOS ROAD

LOCATION

SYMBOLS

- COORDINATE SYSTEM -

AREA FOR SEALS

ANNEX "D"

STRONGER

AURELIO COSTA GARCIA, ENGINEER

MEASUREMENTS AND BOUNDARIES

PARCEL "VI" FROM SITE "B"

[Text below is illegible]

TO THE NORTHWEST

TO THE NORTHEAST

TO THE SOUTHEAST

TO THE SOUTHWEST

PHYSICAL SURVEY

MR. VICTOR HUGO CESENA DIAZ

PROPERTY LOS CANGREJOS
Municipality of Cabo San Lucas

PARCEL "VI" FROM SITE "B"

TOP-04

TE "B"                                    SCALE   1:3500

4014



PROP. VICTOR HUG

SITE PROPERTY OF
MR. LUIS BULNES

PROP. MR. ATILIO CO
617-38-36.78 Has.

DESALINATION PLANT
FACILITY

COLLECTION AREA

PACIFIC OCEAN

4015

CABO CONTRACTS ENGLISH 00000135



4016

CABO CONTRACTS ENGLISH 00000136





CABO CONTRACTS ENGLISH 00000138



4019

CABO CONTRACTS ENGLISH 00000139



### SITE II
### PLANT ACCESS ROAD
#### CONSTRUCTION TABLE

| EST/PV | | DIRECTION | DISTANCE | V | COORDINATES | |
|---|---|---|---|---|---|---|
| | | | | | Y | X |
| | | | | 38 | 13,289.2261 | 8,310.7548 |
| 37 | | N 66°47'12.30" W | 26.9152 | 37 | 12,283.3739 | 9,292.2710 |
| 40 | | S 15°47'25.65" W | 1,904.935 | 43 | 10,343.7197 | 7,749.4162 |
| 41 | | S 62°39'20.08" E | 20.4143 | 40 | 10,334.34 | 7,787.9481 |
| 38 | | N 15°47'25.65" E | 1,895.560 | 38 | 12,289.3060 | 8,301.5133 |

AREA  = 39,952.573 m2

LOCATION

### SITE II
### COLLECTION AREA
#### CONSTRUCTION TABLE

| EST | SIDE PV | DIRECTION | DISTANCE | V | COORDINATES | |
|---|---|---|---|---|---|---|
| | | | | | Y | X |
| | | | | 45 | 10,245.5001 | 7,721.6409 |
| 45 | 46 | S 62°18'50.06" S | 10.207 | 46 | 10,240.8102 | 7,720.7068 |
| 46 | 47 | S 15°47'25.00" W | 165.356 | 47 | 10,081.6167 | 7,885.7080 |
| 47 | 48 | S 52°20'47.71" E | 239.894 | 48 | 9,935.7505 | 7,873.4786 |
| 48 | 49 | S 37°39'12.29" W | 110.00 | 49 | 9,846.1705 | 7,803.2514 |
| 49 | 50 | N 52°20'47.71" W | 10.00 | 50 | 9,854.2792 | 7,800.2642 |
| 50 | 51 | N 37°39'12.29" E | 100.00 | 51 | 9,933.4512 | 7,891.4526 |
| 51 | 52 | N 52°20'47.71" W | 93.00 | 52 | 9,088.4307 | 7,790.1967 |
| 52 | 53 | S 37°39'12.29" W | 100.00 | 53 | 9,000.2587 | 7,729.1034 |
| 53 | 54 | N 52°20'47.71" W | 10.00 | 54 | 9,919.3678 | 7,721.1023 |
| 54 | 55 | N 37°39'12.29" E | 100.00 | 55 | 9,984.5398 | 7,782.7805 |
| 55 | 56 | N 52°20'47.71" W | 136.426 | 56 | 10,077.6968 | 7,674.2492 |
| 56 | 45 | N 13°47'25.00" E | 174.174 | 45 | 10,245.5001 | 7,721.6409 |

AREA   = 6,128.4514 m2

### SITE III
### DESALINATION PLANT
CTION TABLE

| | DISTANCE | V | COORDINATES | |
|---|---|---|---|---|
| | | | Y | X |
| | | 40 | 10,343.7197 | 7,749.4162 |
| N | 150.229 | 43 | 10,270.6935 | 7,885.7211 |
| N | 100.000 | 44 | 10,191.2365 | 7,845.7844 |
| W | 136.771 | 45 | 10,245.5001 | 7,721.6409 |
| E | 102.071 | 40 | 10,343.7197 | 7,749.1162 |

REA  = 15,000.000 m2

| REV. | DATE | MODIFIED | VERIFIED | APPROVED | MODIFICATION |
|---|---|---|---|---|---|
| | | | | | |

CLIENT: MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR

PROJECT: CABO SAN LUCAS SEAWATER DESALINATION PLANT, BCS, MEXICO

TITLE: SITE FOR THE FACILITIES ON THE PROPERTY OF MR. ATILIO COLLI

ANNEX "B"   SHEET 2 OF 3   PLAN No. 1   REV. 0

4020

CABO CONTRACTS ENGLISH 00000140



LOCATION

## MEASUREMENTS AND BOUNDARIES

### SITE II

| | |
|---|---|
| TO THE NORTH: | 20.195 METERS WITH PROPERTY OF VICTOR HUGO CESEÑA |
| TO THE SOUTH: | 20.4143 METERS WITH SITE III |
| TO THE EAST: | 102.0714 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE WEST: | 1,995.568 METERS WITH PROPERTY OF LUIS BULNES |

## MEASUREMENTS AND BOUNDARIES

### SITE III

| | |
|---|---|
| TO THE NORTH: | 20.4143 METERS WITH SITE B |
| | 119.3563 METERS WITH SITE A |
| TO THE WEST: | 100.00 METERS WITH SITE A |
| TO THE SOUTH: | 150.0215 METERS WITH SITE A |
| | 10.2075 METERS WITH SITE D |
| TO THE EAST: | 102.0714 METERS WITH PROPERTY OF ATILIO COLLI |

## MEASUREMENTS AND BOUNDARIES

### SITE IV

| | |
|---|---|
| TO THE NORTH: | 10.2071 METERS WITH SITE III |
| | 239.694 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE SOUTH: | 10.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 90.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 10.00 METERS WITH SITE II |
| | 136.456 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE EAST: | 165.366 METERS WITH PROPERTY OF ATILIO COLLI |
| | 110.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| TO THE WEST: | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 100.00 METERS WITH PROPERTY OF ATILIO COLLI |
| | 174.174 METERS WITH PROPERTY OF LUIS BULNES MOLLEDA |



| REV | DATE | MODIFY | VERIFIED | APPROVED | MODIFICATION | | |
|---|---|---|---|---|---|---|---|
| CLIENT | | MUNICIPAL WATER UTILITY OF LOS CABOS, BAJA CALIFORNIA SUR | | | | | |
| | | PROJECT | | | CABO SAN LUCAS SEAWATER DESALUATION PLANT, BCS, MEXICO | | |
| | | DESIGN | | | TITLE | SITE FOR THE FACILITIES ON THE PROPERTY OF MR. ATILIO COLLI | |
| ANNEX "B" | | | | | SHEET 3 OF 3 | PLAN No. 1 | REV. 0 |

CABO CONTRACTS ENGLISH 00000141



4022

CABO CONTRACTS ENGLISH 00000142



### SITE B
### PLANT ACCESS ROAD

#### CONSTRUCTION TABLE

| SIDE | | DIRECTION | DISTANCE | V | COORDINATES | |
|---|---|---|---|---|---|---|
| EST | PV | | | | Y | X |
| | | | | 27 | 13,213.3733 | 8,231.2715 |
| 301 | 302 | N 85°13'12.47" W | 25.04 | 302 | 13,213.9923 | 8,237.2017 |
| 302 | 303 | S 05°01'45'42" W | 3.003 | 303 | 15,253.124 | 2,712.7417 |
| 303 | 304 | S 85°19'44.45" E | 25.014 | 304 | 13,505.5032 | 7,740.3305 |
| 304 | 37 | N 03°04'42.45" E | 5,554.525 | 27 | 13,253.3723 | 8,232.2715 |

AREA = 59,854,936 m2

### SITE C
### DESALINATION PLANT

#### CONSTRUCTION TABLE

| SIDE | | DIRECTION | DISTANCE | V | COORDINATES | |
|---|---|---|---|---|---|---|
| EST | PV | | | | Y | X |
| | | | | 104 | 10,246.1643 | 7,540.5533 |
| 104 | 103 | N 27°23'29'43" N | 24.414 | 103 | 10,255.6247 | 7,013.7043 |
| 103 | 107 | N 62°73'19.45" N | 116.313 | 107 | 10,410.5345 | 7,316.0903 |
| 107 | 108 | S 27°40'16.95" W | 54.053 | 108 | 10,322.5311 | 7,320.0577 |
| 108 | 109 | S 52°21'03.0'5 E | 113.321 | 109 | 0,243.3045 | 7,712.1422 |
| 109 | 104 | N 11°07'49.43" E | 162.071 | 104 | 10,246.112 | 7,740.0055 |

AREA = 15,000,000 m2

SITE A

SITE D

PACIFIC OCEAN

4023



CABO CONTRACTS ENGLISH 00000144



MEASURES AND BOUNDARIES

SITE B

| | |
|---|---|
| TO THE NORTH: | 20.1836 METERS WITH PROPERTY OF VICTOR HUGO CESEÑA |
| TO THE WEST: | 1,993.5589 METERS WITH SITE A |
| TO THE SOUTH: | 20.4143 METERS WITH SITE C |
| TO THE EAST: | 1,994.9347 METERS WITH PROPERTY OF ATILIO COLLI |

SITE A

SITE D

PACIFIC OCEAN

4025

CABO CONTRACTS ENGLISH 00000145



CABO CONTRACTS ENGLISH 00000146