# MAHER & PITTELL, LLP
ATTORNEYS AT LAW

| | |
|---|---|
| *Reply To:* | *Long Island Office* |
| **42-40 Bell Blvd, Suite 302** | **14 Bond St, Suite 389** |
| **Bayside, New York 11361** | **Great Neck, New York 11021** |
| **Tel (516) 829-2299** | **Tel (516) 829-2299** |
| *jp@jpittell.com* | *jp@jpittell.com* |

November 3, 2016

Hon. Joseph F. Bianco
US District Court Judge
US District Court
920 Federal Plaza
Central Islip, NY 11722

Re:   *U.S. v. Kenner* 13-607 (JFB)

Dear Judge Bianco:

We submit this letter in response to the Government's Letter dated November 1, 2016.

We do not take a position on the Government's application to inspect the books and records along with the physical property of DCSL. However, we contend, as litigants to the forfeiture proceeding, we should be permitted to attend these inspections. This is relevant as it appears Mr. Kenner has an ownership interest in DCSL which the Government seeks to seize.

However, we do oppose the Government's request for deletion of a word on page 20 of its forfeiture brief. In its letter, the Government does not specify the word it seeks to delete. However, we infer the Government seeks to delete its reference to Jowdy as "co-conspirator" in the following sentences which are at the bottom of page 20 of the Government's forfeiture brief:

> *The DCSL resort is forfeitable because it is traceable to the proceeds of defendants' wire fraud and was involved in and is traceable to defendants' laundering of the fraud proceeds. Specifically, Kenner laundered money intended for the Hawaii investments, including stolen line of credit money and stolen Centrum Loan funds, and other investments, as well as borrowed money, to bank accounts controlled by co-conspirator Jowdy in order to fund both his and Jowdy's personal interests in DCSL*

We do not agree with the Government's claim that Mr. Kenner was a money laundering "co-conspirator" with Jowdy. However, Mr. Kenner has repeatedly contended he was criminally defrauded by Jowdy. As such, the Government's contention that Jowdy has engaged in criminal conduct may be significant to the determination of the forfeiture, or other issues, in this case. Further, the Government's assertion of a seemingly new theory of liability may have significance.

In its letter, the Government stands by its use of the "word" stating it is "appropriate given the facts and testimony of the case." The Government took six months to prepare its forfeiture brief. We trust its use of this word is not flippant nor a mistake. Yet, for an ambiguous reason, the Government now seeks deletion of this "appropriate" word. The Government claims it seeks deletion in order to "avoid litigation on this issue and delay of the forfeiture proceedings." However, we fail to see how the Government's use of a single word -- which it admits is appropriate -- will generate litigation or cause delay. Moreover, as pointed out by my predecessor counsel (Mr. Haley) during the forfeiture proceedings, the Government endeavored to expand litigation by seeking asset forfeiture, and money judgment forfeiture, based upon conduct which was beyond the scope allegations at trial.

Accordingly, it is our position that the Government's forfeiture brief should remain as submitted.

                                            Respectfully submitted,
                                            /s/
                                            Jeffrey G. Pittell

cc:      Diane Leonardo, AUSA
           Phillip Kenner
           All counsel of record via ECF