

ROCKEFELLER CENTER
1270 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
T 212.307.5500  F 212.307.5598  www.Venable.com

December 19, 2016

**BY ECF**

The Honorable Joseph F. Bianco
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

David N. Cinotti

**T 212.370.6279**
**F 212.307.5598**
dncinotti@venable.com

     **Re:**    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco:

     This firm represents Danske Bank A/S, London Branch ("Danske") in connection with the forfeiture proceeding in this case. As the Court is aware, the Government seeks to forfeit the Diamante Cabo San Lucas Resort (the "Diamante Resort" or the "Resort"). Danske has a senior secured lien and other legal interests in or relating to the Resort.

     Danske respectfully submits this letter in support of the application by Diamante Cabo San Lucas, LLC, Diamante Cabo San Lucas S. de R.L. de C.V., KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy for relief from the Court's Post-Conviction Protective Order dated August 21, 2015 (the "DCSL Application"), to the extent that the DCSL Application seeks to lift or modify the Protective Order.[1] Although Danske has cooperated and intends to continue to cooperate with the Government throughout this process, Danske also submits this letter to express its concerns about the forfeiture proceeding's substantial negative impact on the Diamante Resort and to alert the Court to a potential default that might occur in 2017.

        **The Diamante Resort**

     The Diamante Resort is a 1,500-acre private master-planned resort community six miles from Cabo San Lucas's city center. The Resort consists of certain residential and other areas that have already been sold or that are intended to be sold to third-party buyers. Currently, more than 4,000 third parties own condominiums, time shares, and other property on the Resort. The Resort is not yet fully developed; it is a multi-phased project that will likely take up to a decade to complete. The master development plan for the project calls for further construction, amenities, and another golf course.

---

[1] Danske understands that its consent, along with the consent of this Court and the Delaware Court of Chancery, is a condition to the settlement agreement that is also a subject of the DCSL Application. Danske takes no position on the settlement agreement and will consent to it if both Courts approve it.



The Honorable Joseph F. Bianco
December 19, 2016
Page 2

The borrower and developer of the Diamante Resort, Diamante Cabo San Lucas, S. de R.L. de C.V. (the "Borrower"),[2] purchased the undeveloped land that became the Diamante Resort in 2006 with a loan from Lehman Brothers Holdings Inc. ("Lehman"). As part of the terms of the loan, the Borrower transferred all assets comprising the Resort to a trust created under Mexican law (the "Trust"), which serves to secure the loan. The Trust is irrevocable and cannot be terminated until all amounts due under the loan agreements are satisfied. The Trust has been the legal owner of the Resort since 2006, and remains so today. In 2009, Lehman assigned to Danske its rights under the loan agreements and the agreement establishing the Trust. Danske is the primary beneficiary of the Trust, and the Borrower is the secondary beneficiary. CIBanco S.A. Institución de Banca Múltiple is the current Trustee of the Trust. Full repayment to Danske under the loan agreements is due in 2024 (unless an event of default occurs before that date), when the Resort is projected to be substantially, although not fully, complete.

The Borrower is owned 99% by Diamante Cabo San Lucas, LLC, and 1% by Mr. Jowdy. There are nine members of Diamante Cabo San Lucas, LLC, including Baja Ventures 2006, LLC (39%), KAJ Holdings LLC (40%), Diamante Properties, LLC (13%), and CSL Properties 2006, LLC (8%).

### Danske Bank's Rights and Interests in the Diamante Resort

Danske has a number of rights and interests in the Diamante Resort under the loan and trust agreements. To start, Danske has first priority interest in the assets of the Trust (i.e., the Diamante Resort). The Borrower, as secondary beneficiary, is subordinated to Danske. If the Diamante Resort is sold, Danske has the right to be paid all amounts due before the Borrower, or anyone else (except the Trustee with regard to certain fees) takes any portion of the sale proceeds. Danske does not believe that the Government contests this fact.

If an event of default occurs, such as the failure of the Borrower to meet payment obligations to Danske or a change in the Resort's or the Borrower's management without Danske's consent, the loan documents permit Danske to accelerate the Borrower's obligations under the loan, instruct the Trustee to commence a foreclosure proceeding in Mexico, and/or exercise rights under the Uniform Commercial Code. In addition, most major acts with regard to the Diamante Resort require the joint consent of Danske and the Borrower. For example, no sale of the Resort or change in ownership or management of the Resort or the Borrower can occur without Danske's consent. If an event of default occurs under the loan documents, the Trustee is required to follow Danske's instructions regarding the Resort.

---

[2] In its Memorandum of Law in Support of Entry of an Order of Forfeiture, ECF No. 401 (Oct. 7, 2016), the Government refers to the Borrower (Diamante Cabo San Lucas, S. de R.L. de C.V.) as the "Mexican Subsidiary" of Diamante Cabo San Lucas, LLC.



The Honorable Joseph F. Bianco
December 19, 2016
Page 3

Danske also has rights in the companies that own the Borrower by virtue of a series of pledge agreements executed in connection with the loan. Among other things, if an event of default under the loan documents occurs, Danske has a right to take control of both the Borrower and Diamante Cabo San Lucas LLC (which owns 99% of the Borrower). Danske has the right to be indemnified by the Borrower and the pledgees for any costs associated with, among other things, defending Danske's rights under the loan or pledge agreements. The Trustee has similar indemnification rights against the Borrower relating to, among other things, defending the assets of the Trust. Danske's right to indemnification is secured by the Resort, and thus any unpaid indemnification amounts would come out of sale proceeds.

In short, if the Borrower defaults on its obligations under the loan agreements, Danske would have contractual rights to, among other things, accelerate the loan; foreclose on the Resort; take control of the Borrower and its 99% owner; and be repaid out of the sale proceeds for, among other things, principal, interest, costs, and amounts subject to indemnification. The amount in principal and interest (current and deferred) that would be due Danske in the event of a default or sale is approximately $180 million. This amount does not include Danske's costs, expenses, protective advances, or amounts subject to indemnification under the loan documents.

### The Borrower's October 2017 Payment Obligation

The loan to the Borrower is structured into various "facilities." Facility C is a revolving line of credit of up to $15 million; the Borrower makes periodic draw requests on this facility. Facility C is nearly fully drawn, and Danske expects to receive a further draw request before the end of 2016, which, if paid, would increase the amount drawn to approximately $14.6 million. By October 31, 2017, the Borrower is required to repay Danske the full amount of funds drawn under Facility C. Facility C's revolving line of credit will be terminated upon this payment. Danske anticipates that the Borrower will owe Danske the fully drawn amount of $15 million by October 31, 2017. Failure to make that payment in full is an event of default under the loan documents. As explained in the DCSL Application, it appears that the Borrower may not meet the October 2017 payment obligation.

Danske believes that the Protective Order and the forfeiture proceeding have had a substantial negative impact on the Resort. As the Court is aware, the Protective Order prevents persons with an interest in or control over the Diamante Resort from selling, transferring, or encumbering any part of their interest without the Court's permission. *See* Prot. Order at 4, ECF No. 330, Aug. 21, 2015. This provision prevents sales of parcels within the Resort to investors and other developers without the Court's approval. Such sales are a major aspect of the Resort's business plan and an important source of revenue needed to meet the Borrower's loan obligations, including but not limited to repayment of the principal amount owed. Although the Protective Order does not altogether prevent parcel sales, the requirement to seek Government



The Honorable Joseph F. Bianco
December 19, 2016
Page 4

and Court approval significantly slows down the sale process and may have a chilling effect on potential sales. For example, the DCSL Application notes that the Protective Order had a negative impact on Silverpeak Real Estate Partners' proposed equity investment.

Moreover, even assuming Court approval of sales under the Protective Order, the DCSL Application explains that the existence of the forfeiture proceeding has made it difficult for the Borrower to market the property and find buyers willing to accept the risk and uncertainty of a potential government forfeiture. Parcel buyers reasonably need to know who the owner and developer of the property will be in order to ensure that the master development plan will be carried out and that the value, quality, and reputation of the Resort will be maintained. As explained in the DCSL Application, the Borrower has been unable to make significant parcel sales, the proceeds of which are needed to develop and increase the value of the Diamante Resort and repay Danske.

Despite the financial challenges at the Resort, Danske has offered considerable support to the Resort since it acquired the loan. Indeed, the equity holders have not contributed capital to the Resort since 2006, and construction has been funded solely through the loan and sales activity at the Resort. Among other things, Danske has deferred interest payments due for the period between the purchase of the Resort and assignment of the loan to Danske, and has been reasonable in considering the Borrower's requests for extensions. But, in light of the adverse impact of the forfeiture proceeding and current uncertainty regarding the Resort, Danske believes that extending further credit to the Borrower or forgiving a payment default while the forfeiture proceeding or relating proceedings are pending would threaten Danske's ability to recover its investment and would therefore not be in Danske's best interests.

## The San Marcos Condominium

As described in the DCSL Application, the Borrower proposes to sell a parcel of the Resort to a third party that intends to construct a condominium project called the San Marcos Condominium. The purchase price for the parcel is $2.5 million.

Danske has considered this sale request and agrees that the purchase price is fair and reasonable. The sale will serve two important purposes—allowing the continuation of development at the Diamante Resort and contributing at least in part to the October 2017 payment due Danske. Without sales such as this one, there is a serious potential risk of a default and foreclosure on the property in less than a year.

In evaluating the sale process, Danske considered that the parcel at issue is not located on premium ocean-front land and, under the current master plan, would likely stay undeveloped through 2024 unless sold. The sale will allow immediate construction activities on the parcel,



The Honorable Joseph F. Bianco
December 19, 2016
Page 5

which will improve the overall financial state of the Resort.  Danske believes that the development will stimulate interest among potential parcel developers and home and timeshare buyers, as well as increase overall spending on Resort amenities and services.  Moreover, when determining the fair-market value of the Resort, or parcels of it, Danske believes that it is important to keep in mind that the Resort will likely not be fully developed for another decade and is currently subject to the forfeiture proceeding.  Current fair-market value must take into account the current circumstances.

Danske understands that the Government believes it needs additional financial information to evaluate the proposed sale.  Danske further understands that the Borrower has provided the same financial information to the Government that it provides to Danske.  Nevertheless, Danske is willing to offer whatever assistance it can to the Government to evaluate the transaction.  In addition, Danske is aware that the Government has suggested in this proceeding that there might be waste or some form of mismanagement of Resort assets.  At this time, Danske is not aware of any waste or mismanagement at the Resort and remains supportive of the management and development team.

\*     \*     \*

Accordingly, Danske respectfully requests that the Court grant the DCSL Application to lift or modify the Protective Order to allow the San Marcos Condominium sale.  Danske also respectfully requests that the Court consider the ongoing negative impact of the forfeiture proceeding and the Protective Order on the Diamante Resort, including the potential for payment default in October 2017 and potential foreclosure as a result.

We thank the Court for considering this matter.

Respectfully,

David N. Cinotti

cc:     All parties of record via ECF