AAS:SK
F.#2013R00948

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                                         No. 13-CR-607 (S-2) (JFB)

PHILLIP A. KENNER,
      also known as
      "Philip A. Kenner," and
TOMMY C. CONSTANTINE,
      also known as
      "Tommy C. Hormovitis,"

      Defendants.

– – – – – – – – – – – – – – – –X

## THE GOVERNMENT'S RESPONSE
## TO CONSTANTINE'S SUPPLEMENTAL POST-TRIAL MOTION

                                                         ROBERT L. CAPERS
                                                         United States Attorney
                                                         Eastern District of New York

Saritha Komatireddy
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

On November 23, 2015, Constantine filed a motion requesting a judgment of acquittal or new trial on all counts of conviction. Both sides briefed the motion and the Court scheduled oral argument on the motion for June 20, 2016. A few days before, on June 16, 2016, Constantine requested an adjournment of the oral argument on the basis that he had "recently been made aware of new evidence that will likely factor into the arguments." ECF No. 383. On September 1, 2016, an attorney for Constantine deposed trial witness James Grdina in connection with a civil matter. During the 30-minute deposition, Constantine's attorney questioned Grdina primarily about his testimony at the criminal trial, conducting, in essence, one more cross-examination. See ECF No. 407-1. On October 21, 2016, Constantine filed a supplement to his post-trial motion, arguing that Grdina's testimony in the civil deposition regarding the Urban Expansion loan undermined his testimony at the criminal trial and provided a basis for a new trial as to Count One. See ECF No. 407.

Constantine's supplemental motion has no merit. Constantine's use of a civil deposition to further cross-examine Grdina does not qualify as "new evidence" warranting a new trial. Moreover, the new testimony that Constantine relies on in his supplemental motion consists merely of answers summarizing documents and representations provided by Constantine to Grdina. Although Constantine does not produce those documents and representations in connection with his motion, any documents and representations related to the decade-old Urban Expansion loan would have been fully available at the time of the criminal trial. In all events, the new testimony is duplicative of arguments presented at trial and does not nullify the overwhelming evidence of Constantine's guilt on Count One.

BACKGROUND

A.    The Trial[1]

During the fourth week of trial, the government called James Grdina to testify. Tr. 2358. During the direct examination, the government elicited testimony from Grdina about the Urban Expansion loan made in connection with the Hawaii project. Specifically, Grdina testified that:

- In 2005, Constantine approached Grdina with "an opportunity that required a $5 million loan" to Kenner's company because — Constantine represented — "$5 million was needed to close the purchase of the Waikapuna property in Hawaii." Tr. 2361, 2362, 2366, 2416, 2417, 2418. (In truth, only approximately $3.6 million was needed for the purchase. Tr. 2375.)

- Grdina and Constantine formed a company called Urban Expansion to pursue the opportunity. Tr. 2361-2362. They agreed that Grdina would provide $3.5 million in capital, Constantine would provide $1.5 million in capital, and Grdina and Constantine would split their membership interests 70-30, respectively. Tr. 2362. The capital contributions were to be made within ten days of the signing of the Urban Expansion operating agreement (in October 2005). Tr. 2419, 2466; GX-3801. Grdina wired his $3.5 million capital contribution to Kenner within the required time frame. Tr. 2362-2363. Constantine did not make his $1.5 million capital contribution. Tr. 2380, 2423.

---

[1] The government incorporates by reference the facts set forth in its previously filed opposition to Constantine's post-trial motions. See ECF No. 370.

2

- Grdina and Constantine provided the Urban Expansion loan at an interest rate of 15 percent and with a prepayment penalty of $2 million. Tr. 2371-2372; GX-3802. Grdina did not ask for the imposition of a prepayment penalty but rather the prepayment penalty was Constantine's idea. Tr. 2372-2375.

During the direct examination, the government also introduced into evidence an email chain that included an initial email from Constantine to his attorney Todd Lockwood in which Constantine stated that he told his attorney Lockwood the terms of the deal as he understood them (which terms included a $2 million prepayment penalty) and a second email from Constantine to his attorney Todd Lockwood in which Constantine provided Lockwood with further specific instructions regarding the terms of the prepayment penalty. GX-3811.

The trial attorneys for both Kenner and Constantine cross-examined Grdina, each in turn. During Constantine's cross-examination, Constantine posed questions suggesting that:

- Constantine contributed $625,000 towards his $1.5 million capital contribution obligation to Urban Expansion even prior to the October 2005 formation of Urban Expansion, and paid additional monies towards his obligation nearly a year later, after the August 2006 resolution of the Urban Expansion loan. Tr. 2414, 2419.
- During a subsequent conversation between Grdina and Constantine, Constantine presented Grdina with wire transfers and other documentation showing that Constantine had made a $1.5 million capital contribution. Tr. 2421-2427, 2431.

In response to this questioning, Grdina testified that Constantine had "assured" Grdina that he would provide documentation but that Grdina "still hadn't seen any to this date."

3

Tr. 2421, 2428.  Constantine then introduced into evidence bank records showing various wire transfers from Constantine to multiple unrelated Kenner entities before and after the operative period of the Urban Expansion loan.  Tr. 2421-2427; C-152; C-153; C-154.  Constantine referred Grdina to additional documents (not in evidence), which Grdina testified he had never seen before.  Tr. 2431.  Constantine also introduced into evidence an additional email between Constantine, Kenner, Constantine's attorney Todd Lockwood, and Grdina regarding the Urban Expansion loan.  Tr. 2453-2454; C-158.  Later in the trial, during the cross-examination of the government's forensic accountant, Constantine elicited testimony that various wire transfers from Constantine to multiple unrelated Kenner entities before and after the operative period of the Urban Expansion loan totaled $1.5 million.  Tr. 3964-3968.  Finally, Constantine elicited testimony from Grdina that Grdina went along with the prepayment penalty and did not have an objection to it.  Tr. 2445.

During closing arguments, the government walked the jury through the multiple facets of Constantine's involvement in the Hawaii fraud, including Constantine's self-dealing arrangement of the Urban Expansion loan to enable him and Kenner to obtain millions in proceeds from the loan's repayment without having to make any initial capital contribution.  Tr. 5715-5720.

During Constantine's closing argument, Constantine argued that he had in fact "put in his respective share" of the capital contribution required for Urban Expansion, although it "may not have been in the time frame that the contract called for."  Tr. 5949.  Constantine sought to persuade the jury that he had fulfilled his capital contribution obligation because he "made a $625,000 payment to Mr. Kenner in 2005 and entered into an agreement with Mr. Kenner via the Palms condos for the balance . . . [a]nd when Mr. Kenner

4

could not close on the Palm deal, Mr. Constantine paid the remaining balance of the $1.5 million in 2005." Tr. 5949 (referencing Kenner's testimony). Constantine also argued that the prepayment penalty was a reasonable feature of the Urban Expansion loan. Tr. 5947-5948.

    B.    <u>The Deposition and Supplemental Motion</u>

On September 1, 2016, Constantine deposed Grdina in connection with a civil matter. During the deposition, Constantine's attorney revisited the question of whether he had made a $1.5 million capital contribution to Urban Expansion:

> Q. Since this lawsuit has been filed, we've had a couple of meetings. And I'm not going to make you go through this stack of documents, but there was a stack of documents and papers that were provided to you in my defense of Mr. Constantine to show you whether or not the $1.5 million contribution was made by Mr. Constantine?
>
> A. That's correct.
>
> Q. After reviewing this stack of documents, is it your understanding now that Mr. Constantine did, in fact, make a one-and-a-half-million-dollar contribution to that entity for the Hawaii property?
>
> A. Based on the documents that were presented and the representations made by Mr. Constantine, the $1.5 million was satisfied. I haven't seen an agreement between Mr. Constantine and Mr. Kenner and his entities to support that, but the transactional history was provided to me.
>
>     \*    \*    \*
>
> Q. And now you've been provided information from Mr. Constantine. It, at least, appears from your review and reliance on Mr. Constantine explaining it to you that he, in fact, did make that $1.5 million contribution?
>
> A. Yes.

ECF No. 407-1 at 10-11, 15. Constantine did not mark or identify the referenced documents or "information" in the deposition and does not attach them to his supplemental motion. In his supplemental motion, Constantine merely cites back to trial testimony and documents either admitted or available at trial and asserts that Constantine "made the required contribution," including through a "transfer of $1.513 million interest in Palm Units." ECF No. 407 at 3 n. 1.

Constantine's attorney also revisited the question of the origination of the prepayment penalty:

> Q. And I believe that you testified that it was Mr. Constantine's idea to do the prepayment penalty, but upon reflection and going through some e-mails, was it really the attorney's, who was forming the entities for you, idea to do a prepayment penalty?
>
> A. Yes.

ECF No. 407-1 at 16. Again, Constantine did not mark or identify the referenced emails in the deposition and does not attach them to his supplemental motion. In his supplemental motion, Constantine references a payment document available at trial and asserts — without evidentiary support — that the payment was made in recognition of the attorney's "work in recommending the prepayment penalty." ECF No. 407 at 4 n.2.

6

ARGUMENT

    A.    Applicable Law

Constantine moves for a new trial on Count One based on Grdina's deposition testimony. "A motion for a new trial based on newly discovered evidence is not favored and will only be granted when the 'new evidence . . . would probably lead to an acquittal.'" Orena v. United States, 956 F. Supp. 1071, 1093 (E.D.N.Y. 1997) (Weinstein, J.) (quoting United States v. Spencer, 4 F.3d 115, 118 (2d Cir.1993)). "Thus, '[a] district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only in the most extraordinary circumstances." Id. (quoting United States v. Imran, 964 F.2d 1313, 1318 (2d Cir.1992)). The Second Circuit's standard for granting such a motion requires that "(1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007).[2]

---

[2] Constantine does not claim that Grdina committed perjury or otherwise lied at trial; rather, the motion is styled as Grdina correcting his testimony based on documentation and representations received from Constantine since trial. In any event, it is worth noting that courts have long been "particularly reluctant" to grant a motion for a new trial "where the newly discovered evidence consists of a witness recantation as such recantations are looked upon with the utmost suspicion." United States v. DiPaolo, 835 F.2d 46, 49 (2d Cir. 1987) (internal quotation marks omitted). This is so "because recantations upset[] society's interest in the finality of convictions, [are] very often unreliable and given for suspect motives." United States v. Haouari, 510 F.3d 350, 353 (2d Cir. 2007); see also United States v. Bednard, 776 F.2d 236, 238–39 (8th Cir.1985) (new trial motions based on recanted testimony are immediately suspect because "where a witness makes subsequent statements directly contradicting earlier testimony, the witness is either lying now, was lying then, or lied both times"). "When the proffered new evidence consists solely of a recantation, in order to succeed on a motion for a new trial the defendant must prove: (1) the

7

B.    Argument

Constantine's supplemental motion does not rely on evidence that is new or could not with due diligence have been discovered at or before trial.  See United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) ("It is basic that a defendant seeking a new trial must establish that the newly discovered evidence could not with due diligence have been discovered at or before trial.").  Constantine essentially used a civil deposition conducted after the criminal trial to pose additional cross-examination questions to Grdina, outside of the confines of the criminal rules and shielded from the scrutiny of redirect examination.  Constantine argues that, in responding to those questions at the deposition, Grdina repudiated his trial testimony that Constantine had not made his required $1.5 million capital contribution to the Urban Expansion loan and that the prepayment penalty on the loan was Constantine's idea.  In the deposition, Grdina does not state that he lied at trial; rather, he merely testifies that, having considered additional documentation and representations from Constantine since trial, his answers to the follow-up questions now differ.  However, those follow-up questions, and the documents they reference, were fully available at the time of trial:

- On the topic of the $1.5 million capital contribution, Constantine elicited testimony from Grdina at the deposition that "the $1.5 million was satisfied" based on "documents that were presented," including "transactional history," and

---

testimony recanted was both false and material; (2) without the false testimony the jury probably would have acquitted the defendant; and (3) that the party seeking the new trial was taken by surprise when the false testimony was given and could not address that falsity until after the trial." United States v. Schlesinger, 438 F. Supp. 2d 76, 101 (E.D.N.Y. 2006).  The defendant bears the burden of satisfying these elements.  Id.

8

"representations made by Mr. Constantine." ECF No. 407 at 4. Documents related to the decade-old Urban Expansion transaction were available at trial. Indeed, the government and Constantine introduced multiple documents, including bank records that contained transaction history, during the examination of Grdina. Tr. 2421-2427, 2431; C-152; C-153; C-154. Similarly, Constantine was free to testify at trial.

- On the topic of the origination of the prepayment penalty, Constantine elicited testimony from Grdina at the deposition that the prepayment penalty was "really the attorney's" idea based on "reflection and going through some emails." ECF No. 407 at 4. Attorney emails from the time of the transaction were available at trial. Indeed, the government and Constantine introduced attorney emails during the examination of Grdina. Tr. 2372; GX-3811; Tr. 2453-2454; C-158. Similarly, Constantine was free to call his attorney Todd Lockwood to testify at trial.

Constantine also argues that Grdina's "testimony was incorrect because [he] lacked personal knowledge" as to whether Constantine had made the required $1.5 million capital contribution and based his answer on what Kenner had told him. ECF No. 407 at 3-4. That line of questioning was also available at trial: the government proactively raised with the Court and the parties that Grdina had, in part, been informed by what Kenner had told him; Constantine's trial attorney acknowledged this point. Tr. 2420. Constantine was free to question Grdina on the limits of his personal knowledge. Indeed, Constantine did underscore the limits of Grdina's personal knowledge during the cross-examination, including by eliciting that Grdina was not aware of certain wire transfers, documentation, and side deals between Constantine and Kenner that Constantine argued were related to the $1.5 million capital contribution. Tr. 2414, 2419, 2421-2427, 2431.

9

In sum, Constantine's questioning of Grdina during the civil deposition could just as easily have taken place at the criminal trial, and the resulting responses do not constitute newly discovered evidence warranting a new trial. See, e.g., United States v. Brown, 582 F.2d 197, 202-03 (2d Cir. 1978) (denying motion for new trial where defense counsel possessed sufficient information to question government witness about information alleged to be newly discovered).

Even if Grdina's deposition testimony were to be considered, it would not have led the jury to acquit Constantine on Count One. As an initial matter, Grdina's testimony is either cumulative or not material. At trial, Constantine repeatedly presented the jury with documents and arguments to suggest that he had made the $1.5 million capital contribution, at least eventually. See supra pages 3-5. Grdina's deposition testimony (based on documents and representations from Constantine) that Constantine made the $1.5 capital contribution is merely cumulative of what was presented at trial. See United States v. Williams, 526 F. App'x 80, 81 (2d Cir. 2013) (where new evidence is merely "cumulative," a new trial is not required). In addition, at trial, Constantine suggested that the prepayment penalty was reasonable and equally attributable to Grdina since Grdina did not object to it. See supra pages 4-5. Grdina's deposition testimony that it was the attorney's idea is not a material change to what was presented at trial. Even accepting that testimony, the Urban Expansion loan remains strong evidence of Constantine's involvement in the Hawaii fraud because: Constantine initiated the creation of the loan, Tr. 2361 (Constantine approached Grdina); Constantine fraudulently represented to Grdina that $5 million in capital was needed when only approximately $3.6 million was needed, Tr. 2375; Constantine was able to obtain millions of dollars in proceeds from the loan (which he diverted to his own and Kenner's

10

personal uses) before putting in his share of the initial capital for the loan, Tr. 2419, 2466; and all the while the loan was unnecessary because Lehman stood ready to fund the Hawaii project, Tr. 4307-4308. In essence, the Urban Expansion loan, like the Centrum loan, was a complex means of self-dealing on the part of Kenner and Constantine to extract cash for themselves by mortgaging out land that victim investors had paid for.

Furthermore, Constantine's arrangement of the Urban Expansion loan was not "the only theory" connecting Constantine to the Hawaii fraud, as Constantine claims. ECF No. 407 at 2-3 (citing only a brief excerpt from a colloquy among the Court and the parties at the charging conference). As the government argued to the jury at trial and to the Court in its response to Constantine's post-trial motions, there were multiple sources of evidence showing that Constantine facilitated and benefited from the Hawaii fraud, including that: Constantine obtained a steady stream of proceeds from the Hawaii accounts, including more than $1 million in cash withdrawals from the Hawaii accounts and $650,000 laundered through the Centrum loan, see ECF No. 370 at 4-6, Tr. 5712-5713, Tr. 5720-5723, Tr. 5994-5995, GX-41B; and Constantine was involved in efforts to cover up the Hawaii fraud, including by signing sham consulting agreements and hiding his bank records, ECF No. 370 at 6-7, Tr. 5729-5730.

Finally, and in all events, the Hawaii project was not the only means for carrying out the conspiracy charged in Count One; Constantine and Kenner also conspired to perpetrate a scheme to defraud the investors in connection with Eufora and GSF, and a finding of conspiracy as to any one of those aspects of the scheme was sufficient to find guilt on Count One. See Tr. 5665 (the Court noting, as an example, that the jury could conclude that "there is a conspiracy on Hawaii, there [is] a conspiracy on Eufora, but we don't know about the Global Settlement Fund" and find the "defendants guilty of the conspiracy to

11

commit wire fraud."). Grdina's deposition testimony on two limited points pertaining to the Urban Expansion loan would have little impact on the totality of the evidence presented as to each object of the conspiracy in Count One.

In his supplement, Constantine repeats his erroneous argument that the insufficiency of any one object in a multi-object conspiracy results in insufficiency as to the entire count, and selectively quotes the Court as saying the government "runs the risk" without a special verdict. See ECF No. 407 at 5. However, as the government previously explained, the law is clear that if the evidence is sufficient with respect to any of the objects in a multi-object conspiracy, the general guilty verdict stands. See Griffin v. United States, 502 U.S. 46, 57-58 (1991); see also ECF No. 370 at 42-43 (previous explanation). The Court also made this clear at trial:

> [W]ith respect to the special verdict because as a result of the research, I just want to make sure it is clear that I didn't suggest something that could be misunderstood. I said if there is a general verdict, it is possible that the government could be risking; if there were a favorable verdict for the government, that they could be risking having that verdict potentially validated on appeal if one of the three objectives turned out to be legally insufficient.
>     After researching it last night there actually is a case called Griffin v United States, 5012 US 46, a 1991 case, where the Supreme Court held that the due process clause does not require that in federal prosecutions, general guilty verdict in multiple object conspiracy be set aside if the evidence is inadequate to support conviction as to one object.
>     So it appears that there is no risk to particular on that issue; that in fact if the jury came back with a general verdict, if there was a fact that there was an evidentiary insufficiency that were determined by me on a Rule 29 or by Second Circuit later, the law, based upon the Supreme Court, is that the verdict still stands for reasons they articulate in that case.

>I just wanted that to be clear because I suggested that there was a risk that the government might be taking but I don't think it is a risk.

Tr. at 5680-81.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Constantine's supplemental motion.

Dated:   Brooklyn, New York
         January 16, 2017

                                          Respectfully submitted,

                                          ROBERT L. CAPERS
                                          UNITED STATES ATTORNEY
                                          Eastern District of New York
                                          Attorney for Plaintiff
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201

                              By:   /s/_____
                                    Saritha Komatireddy
                                    Assistant United States Attorney
                                    (718) 254-6054

cc:   All counsel of record (by ECF)