```
                                                    FILED
                                                    CLERK
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2                                                   JGK 03/15/2018
                                                    U.S. DISTRICT COURT
3       ------------------------------------X       EASTERN DISTRICT OF NEW YORK
                                            :       LONG ISLAND OFFICE
4       UNITED STATES OF AMERICA,           :       13-CR-00607 (JFB)
                                            :
5                                           :       100 Federal Plaza
                       v.                   :       Central Islip, New York
6                                           :
        PHILLIP F. KENNER, et al.,          :       March 12, 2018
7                                           :
                       Defendants.          :
8       ------------------------------------X

9            TRANSCRIPT OF CRIMINAL CAUSE FOR CONFERENCE
                 BEFORE THE HONORABLE JOSEPH F. BIANCO
10                   UNITED STATES DISTRICT JUDGE

11
        APPEARANCES:
12
        For the Government:     MATTHEW HAGGANS, ESQ.
13                              DIANE LEONARDO-BECKMANN, ESQ.
                                United States Attorneys Office
14                              610 Federal Plaza
                                Central Islip, New York 11722
15

16      For the Defendant:      JESSE SIEGEL, ESQ.
                                Federal Defenders of New York, Inc.
17                              770 Federal Plaza
                                Central Islip, New York 11722
18

19
        Court Transcriber:      RUTH ANN HAGER, C.E.T.**D-641
20                              TypeWrite Word Processing Service
                                211 North Milton Road
21                              Saratoga Springs, New York 12866

22

23

24

25


        Proceedings recorded by electronic sound recording, transcript
        produced by transcription service.
```

2

1  (Proceedings began at 1:57 p.m.)
2            THE CLERK:  Calling case 13-CR-607, USA v. Kenner.
3  Please state your appearance for the record.
4            MR. HAGGANS:  Good afternoon, Your Honor.  Matthew
5  Haggans for the United States.  I'm joined today by Diane
6  Leonardo and the case agents Joshua Wayne and Matt Galiotto
7  [ph.].
8            THE COURT:  Good afternoon.
9            MS. LEONARDO:  Good afternoon.
10           MR. SIEGEL:  Good afternoon, Judge.  Jesse Siegel
11 for Mr. Kenner.
12           THE COURT:  Good afternoon, Mr. Siegel.  Mr. Kenner
13 is present.  Good afternoon, Mr. Kenner.
14           THE DEFENDANT:  Yes, good afternoon, Judge.
15           THE COURT:  Everyone can stay seated during the
16 conference because we're recording this, so just ask that you
17 remain seated.
18           As you know, I scheduled this because I received a
19 series of letters from Mr. Kenner of February 19th,
20 February 26th, and March 4th indicating various issues that
21 he was having with Mr. Siegel in connection with preparing and
22 filing various submissions including the forfeiture
23 opposition.  Some appear to be related to objections to the
24 pre-central court and factical briefs.  So first I wanted to
25 have a discussion about that.

3

1           In connection with that, Mr. Kenner indicates his
2  desire to proceed *pro se* with the assistance of stand-by
3  counsel with a paralegal and investigator, so that's a
4  separate issue we have to discuss as well.  But I don't --
5  Mister -- let me just ask you first, Mr. Siegel.  Have you had
6  a chance to discuss these letters with Mr. Kenner or you have
7  not?
8           MR. SIEGEL:  We haven't had an extensive
9  conversation about it.  I'm under the impression that that is
10 Mr. Kenner's desire.
11          THE COURT:  Okay.  Mr. Kenner, let me just explain
12 to you what the procedure is for this type of situation and
13 obviously if you have any questions I'm happy to answer them.
14 A defendant has an absolute right to represent himself or her
15 side -- herself in a criminal proceeding in the trial or, in
16 this case, in the post-trial mode.  However, the law
17 requires -- there's a Supreme Court case called <u>Faretta</u> and
18 various cases since <u>Faretta</u> that requires the Court before
19 allowing a defendant to proceed *pro se* to have a full
20 discussion with the defendant about the risks of doing that.
21 And my intention is not to do that with you today, but I just
22 wanted to explain to you what the procedure is going to be,
23 that it's laid out in numerous cases including a Second
24 Circuit case called <u>U.S. v. Fore</u>, F-O-R-E, 169 F.3d 104, (2d.
25 Cir. 1999).

4

1    But as I said, it's laid out in many cases since
2 then and instructs the trial court and says there's no magic
3 formula or scripted procedure for such a discussion, but the
4 trial court should consider the defendant's education, family,
5 general conduct, and any other relevant circumstances and then
6 have a discussion with the defendant about the nature of the
7 charges, the range, allowable punishments and the risks of
8 self-representation.
9    Obviously, as I said, we're past the trial here, so
10 the risks are a little bit different than the risks that would
11 be prior to trial, but there are certainly risks.  So if you
12 tell me either today or in the future or if you want to think
13 about it, obviously you can think about it and discuss it with
14 Mr. Siegel that you wish to proceed *pro se*.  And obviously, if
15 I were -- after having this discussion to conclude that your
16 waiver -- your right to representation under the Sixth
17 Amendment is knowing and voluntary, I would certainly allow
18 Mr. Siegel to remain as your standby counsel.  And I assume
19 you have a paralegal.  Correct, Mr. Siegel?
20    MR. SIEGEL:  Judge, I actually don't have a full-
21 time paralegal, but I have somebody that I use when I need to.
22    THE COURT:  Okay.  Well, obviously under the CJA I
23 would authorize you to utilize the services of a paralegal to
24 assist you and Mr. Kenner with any clerical needs that he
25 would have.  And an investigator, I have to hear more about in

5

1  the posture that we're in exactly what that would be for, but
2  certainly I'll be prepared to authorize that as well through
3  Mr. Siegel.  I'm not going to have a situation where
4  investigators and paralegals are reporting directly to you.
5  If you want paralegal and investigator you're going to have to
6  work with Mr. Siegel for that.
7            But the other issue, Mr. Kenner, is the law also
8  makes clear that a defendant's decision to proceed *pro se*
9  cannot be -- cannot be prompted or a result of ineffective
10 assistance of counsel.  In other words, the only reason the
11 defendant is going *pro se* is because his lawyer is
12 ineffective.  The court shouldn't make a defendant choose --
13 if a defendant really doesn't want to go *pro se*, have to go
14 *pro se* because the lawyer is being ineffective.
15           I have not concluded that Mr. Siegel has been
16 ineffective at all but because you raise that issue,
17 Ms. Leonardo, I have to address that issue first before going
18 to this other stage of whether you want to proceed *pro se*.  If
19 a defendant says, my lawyer is fine, regardless of whether my
20 lawyer is, you know, effective or not, I just want to handle
21 the case myself, again, a defendant has the absolute right to
22 do that.  But if what I -- when I'm reading these letters is
23 you're basically saying because my lawyer is not performing
24 the way he needs to do, I basically have to take this over.
25 And if that's the case, if I were to conclude that Mr. Siegel

6

was ineffective the solution wouldn't be that you have to take your case over; the solution would be to get another lawyer on the case that you deem effective.

So the first thing I'm going to ask, Mr. Siegel, what you need to do because he does raise these issues, you don't have to do it today, but -- and you can even submit it *ex parte*. The Government doesn't need to see it because I don't want you to disclose any client confidences that are privileged. I want you just go through what his issues are with your performance, just so I can understand what your response would be. Does that make sense, Mr. Siegel?

MR. SIEGEL: So you want me to write you a letter to address the issues that Mr. Kenner has raised in his letters?

THE COURT: Yes.

MR. SIEGEL: I can do that.

THE COURT: Okay. And then we'll take it from there. Obviously if I conclude based on your response that I don't think that you're performing in an effective manner then, Mr. Kenner, understanding that you're still going to be his attorney, that there's no issues that I have with your performance if he still wants to proceed *pro se* then I'll go through the questioning. I will ask the Government to put in proposed questions. I think the Government typically -- and I could be wrong about this -- but I think the Government typically has a set of questions that they submit. Obviously,

```
 1  again I'll handle [ph.] them -- to this particular situation,
 2  but I'll ask the Government to submit some proposed questions,
 3  okay?
 4            MR. HAGGANS:  Understood, Your Honor.
 5            THE COURT:  All right.  Mr. Kenner, I covered a lot
 6  of things there.  I don't know if you have any questions of
 7  the Court about how we're proceeding here.  If I misunderstood
 8  something you can let me know as well.
 9            THE DEFENDANT:  No, sir, Your Honor.  I understood
10  what you explained.
11            THE COURT:  Okay.
12            THE DEFENDANT:  And I think you understood the
13  letters correctly.
14            THE COURT:  Yeah.  And also, again, I also -- if --
15  you know, my hope is -- and that's why I asked whether
16  Mr. Siegel had talked to you about these things.  I don't --
17  and you -- your -- you know, sometimes I'm concerned that the
18  relationship has so broken down that it's irreparable but, you
19  know, you're not -- you said at one point he's a kind and
20  friendly person, so, you know, you had issues with his
21  performance.
22            But I also think he's willing to work with you to
23  try to resolve these issues that you have.  Some of the things
24  that you're raising I understand why you want the case to move
25  along but, you know, just because you've submitted things
```

8

1  regarding a factical hearing or other things, you know, we're
2  still trying to finish the forfeiture part of the case.  So --
3  and again, I haven't received Mr. Siegel's letter but I just
4  want you to understand that it's -- if a lawyer is focusing on
5  what's most immediately due, which is the forfeiture and
6  obviously he should be working with you on that -- I'm not
7  suggesting that to the extent you believe that there should be
8  more communication, there certainly should be communication --
9  but the fact that he hasn't done other things that you're
10 moving forward on is not necessarily ineffective because I
11 haven't -- we haven't gotten to that stage and I haven't
12 gotten -- I haven't set a sentencing date.  We have to deal
13 with the forfeiture issue first.  And if a lawyer is able to
14 handle those multiple things at the same time, that's great.
15 But my experience is lawyers often focus on what's due first
16 and then they turn to the next thing that's due.  And
17 obviously, the forfeiture issue is a big issue.  So it's not
18 surprising to me that given that your forfeiture opposition is
19 due now at the end of March that he may not be focusing on
20 some of the other things that he may be focusing on in
21 connection with the other aspects of the case.
22          But -- and the other thing I want to say to you
23 is -- and I'll repeat this to you when we -- if we get to the
24 point where we're going through the discussion -- I think very
25 accommodating because I know you're very active and you're a

very smart guy and my view is that you should have full participation on this on what's being submitted. And I think on other occasions, although I've asked you if Mr. Siegel reviewed your work product first, that -- and some courts would not allow this when there's an attorney involved in the case -- some courts would say every -- if there's an attorney in the case, everything has to go through the attorney. But because of my belief that it's helpful to have a lawyer in the case, if you -- to the extent you've prepared things that you want me to submit, again, I still think it's in the best interests that you run it through Mr. Siegel first so he can give you some guidance on that.

But I also think if he has other ideas that I should get those too, and I should allow a joint submission with attaching your *pro se* submissions to whatever Mr. Siegel wants to add to those. I think that's the procedure that we follow with respect to the prior motion and I just want to make sure you understand that I'm willing to continue that procedure, although it is not customary.

In this particular case I'm only willing to continue the procedure where he would file an opposition to the forfeiture and that would attach what you've prepared and provide additional, you know, arguments, law, whatever it is he thinks would also be helpful. So that's still available to you.

1           Does that make sense?
2           THE DEFENDANT:  Yes, sir, Your Honor, it does.
3           THE COURT:  Okay.  All right.
4           So again, Mr. Siegel, I suggest you can maybe speak
5  to him after the proceedings if you have time to -- if after
6  speaking to him Mr. Kenner wants to pursue that and have a
7  proceeding with the understanding that I just gave him, that
8  he can continue to submit what he wants to submit with your
9  submission to sort of joining along with his, then you don't
10 have to do the letter addressing all the things if he's
11 satisfied that he's communicated to you that he's satisfied
12 with how you're going to proceed with him going forward.  And
13 then, you know, just move forward with the submission being
14 due at the end of the month.  If you need a little more
15 time -- want a little bit more time -- I see -- I saw that
16 face.
17          MR. SIEGEL:  Well, you know, very honestly, once I
18 got the letter that Mr. Kenner had -- I was -- had submitted
19 to the Court during that time period I was working almost full
20 time on this because this deadline was coming up, but I pretty
21 much stopped working on it at that point not knowing how we
22 were going to proceed, not thinking it appropriate to, you
23 know, spend all that amount of time as a CJA attorney until
24 the issue of representation was resolved.
25          THE COURT:  Okay.  Well, again, if you need a couple

1   more weeks, two more weeks in light of that, you know, we'll
2   give you that. But I -- and I certainly think Mr. Kenner if
3   he's already prepared things to supplement what you're
4   submitting before you sort of reject his continued assistance,
5   I suggest you look at what Mr. Siegel has already prepared and
6   would continue to prepare if you let him stay as your attorney
7   because that could be a lot of work product that could be
8   helpful to you. Again, not replacing your work product, just
9   more work product. Okay.
10              So what I'm going to do in the event that they are
11  unable to resolve the situation after speaking to each other,
12  if you are going to resolve just send me a letter, Mr. Siegel.
13  Obviously next time Mr. Kenner is here just confirm the
14  situation is resolved. That won't [indiscernible]
15  unnecessarily to do that. Just wait till our next scheduled
16  conference just to confirm that whatever he has is accurate.
17  Obviously Mr. Kenner can always write me a letter if there's
18  something else that arises.
19              But in the event that I don't get something from you
20  indicating the situation is resolved then I'm going to set a
21  date for you to put in your letter addressing his issues and
22  then a date to have this Faretta hearing. Okay. So what do
23  you think we can do, a week? A week enough to respond to his
24  letter?
25              MR. SIEGEL: Yes, absolutely.

```
                                                              12
 1              THE COURT:  Okay.  So if you could put in -- and
 2   again, you can submit an ex parte letter addressing his issues
 3   with respect to the representation.
 4              And then maybe wait next week, Michelle.  Thursday.
 5              MR. HAGGANS:  I cannot be here Thursday, Your Honor.
 6              THE COURT:  Next Thursday?
 7              MR. HAGGANS:  No, Your Honor.
 8              THE COURT:  Wednesday or Friday?
 9              MR. HAGGANS:  I'll be out of town the end of next
10   week.
11              THE COURT:  The end of next week?
12              MR. HAGGANS:  Yes, Your Honor.
13              THE COURT:  Okay.  A week from Monday?  26th.
14              MR. HAGGANS:  That's fine with the Government, Your
15   Honor.
16              THE COURT:  Okay.  1:30.  Is that good, Mr. Siegel?
17              MR. SIEGEL:  That is fine, Judge.  That's for a
18   possible Faretta hearing.
19              THE COURT:  Correct.
20              MR. SIEGEL:  Yeah.
21              THE COURT:  If the Government could submit the
22   questions sometime maybe by Wednesday of next week so I can
23   look at them in advance, that would be helpful.  All right?
24              MR. HAGGANS:  Yes, Your Honor.  Just so I'm clear,
25   the triggering event for the Government making that submission
```

1  will be if the defense makes an *ex parte* submission?
2          THE COURT:  Yeah.  I guess you should tell them,
3  Mr. Siegel.  Just contact them on -- if, in fact, you do make
4  that submission.  Don't tell them what's in the submission.
5  Just let them know that Mr. Kenner wants to proceed with the
6  Faretta hearing so that they know that they have to put in the
7  questions by next Wednesday, okay?
8          MR. SIEGEL:  Absolutely.
9          THE COURT:  All right.  Okay.
10         MR. HAGGANS:  Your Honor, could we -- as long as
11 we're here, could we address just one other matter?
12         THE COURT:  Yeah, as long as it doesn't address
13 anything that was Mr. Constantine --
14         MR. HAGGANS:  It would solely be a scheduling
15 matter, Your Honor.
16         THE COURT:  All right.  Okay.
17         MR. HAGGANS:  When this -- when the forfeiture
18 schedule was recently extended the oral argument date was
19 cancelled, but it's not been replaced.  And that's my only
20 request is that we put a date back on the calendar.
21         THE COURT:  Yeah.  The only -- I was thinking about
22 doing that and I'll tell you right now it's going to be
23 probably early June is when I'm looking at to do it so I have
24 time to read the motions, but I -- I just want to make sure if
25 Mr. Siegel is going to need one or two weeks and then I don't

```
                                                              14
 1  know how we'll get into -- if he's going to need one or two
 2  weeks more and then obviously that would extend out your reply
 3  the same amount of time.  I just don't want it -- I just don't
 4  want to set a date yet until I know whether that schedule is
 5  going to be revised, but I will set one as soon as this issue
 6  gets resolved, but I anticipate it will be in early June.
 7  Okay.
 8            MR. HAGGANS:  Understood, Your Honor.
 9            THE COURT:  All right.  Okay.
10            MR. SIEGEL:  Great.  Thank you, Judge.
11            THE COURT:  All right.  Thank you.
12            MR. HAGGANS:  Thank you, Judge.
13  (Proceedings concluded at 2:14 p.m.)
14                          * * * * * *
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                    15
 1          I certify that the foregoing is a court transcript
 2   from an electronic sound recording of the proceedings in the
 3   above-entitled matter.
 4
 5                              [signature]
 6                              _____
 7                              Ruth Ann Hager, C.E.T.**D-641
 8   Dated:  March 14, 2018
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```