1

1          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
2

3     ------------------------------X
      UNITED STATES OF AMERICA,
4                                :    CR-13-607
                                      (JFB)
5          -against-            :   United States Courthouse
                                    Central Islip, New York
6     TOMMY CONSTANTINE and
      PHILLIP KENNER,
7                                :   March 26, 2018
                 Defendants.         2 p.m.
8     ------------------------------X

9               TRANSCRIPT OF CONFERENCE
             BEFORE THE HONORABLE JOSEPH F. BIANCO
10           UNITED STATES DISTRICT COURT JUDGE

11

12    APPEARANCES:

13    For the Government:     RICHARD P. DONOGHUE, ESQ.
                              UNITED STATES ATTORNEY
14                               BY: MATTHEW HAGANS, AUSA
                                     DIANE LEONARDO, AUSA
15                            100 Federal Plaza
                              Central Islip, New York 11722
16

17    For the Defendant:      JESSE SIEGEL, ESQ.

18

19

20
      Official Court Reporter:    Paul J. Lombardi, RMR, FCRR
21    Ph. (631) 712-6106          100 Federal Plaza - Suite 1180
      Fax (631) 712-6122          Central Islip, New York 11722
22

23

24
                Proceedings recorded by mechanical stenography.
25                   Transcript produced by CAT.

2

1          THE CLERK:  Calling case USA v Kenner.  Counsel

2    please state your appearance for the record.

3          MR. HAGANS:  Good afternoon, your Honor.

4    Matthew Hagans for the United States, joined at table by

5    AUSA Diane Leonardo of our office.

6          THE COURT:  Good afternoon.

7          MR. SIEGEL:  Good afternoon, Judge.  Jesse

8    Siegel for Mr. Kenner.

9          THE COURT:  Good afternoon, Mr. Siegel.

10   Mr. Kenner is present.

11         Good afternoon, Mr. Kenner.

12         THE DEFENDANT:  Good afternoon, your Honor.

13         THE COURT:  As you know, we scheduled this in

14   connection with Mr. Kenner's letters to me indicating that

15   he wishes to proceed pro se representing himself in this

16   case.

17         I did ask Mr. Siegel to file a letter going

18   through some of the issues that Mr. Kenner had raised.  I

19   did receive an ex parte letter of March 20th where

20   Mr. Siegel does explain the situation.  Did Mr. Kenner get

21   to see a copy of this?

22         MR. SIEGEL:  Yes, Judge.

23         THE COURT:  Based upon my own observations of

24   Mr. Siegel's representation in connection with this case,

25   as well as the letter, I do not believe there is any basis

3

1    to conclude he has not been effective in his

2    representation of Mr. Kenner.

3            As I noted, Mr. Kenner has not asked me to have

4    another attorney.  He asked me to represent himself but

5    because he raised issues regarding the effectiveness of

6    Mr. Siegel's representation I felt obligated to at least

7    have Mr. Siegel address them in some way to ensure that

8    the defendant was not proceeding pro se because of his

9    attorney's ineffectiveness and he was essentially left

10   with no alternative.

11           I don't believe that's this situation.  The

12   letter indicates -- I did ask Mr. Kenner to think about

13   it, to speak to Mr. Siegel and then to report back whether

14   he still wishes to represent himself.  Mr. Siegel

15   indicates that he does.  I want to confirm that.

16           Mr. Kenner, have you had time to think about it?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  And also with Mr. Siegel?

19           THE DEFENDANT:  Yes, sir, we did.

20           THE COURT:  Is it your intention to represent

21   yourself?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  I think as I explained to you last

24   time there are a series of questions that the law requires

25   me to cover with you so I can make sure that your decision

4

1    which is your absolute constitutional right to represent

2    yourself, my only obligation is to make sure that that

3    decision is knowing and intelligent and voluntary.

4         So the government has submitted a letter to me

5    of March 21st proposing certain questions.  I'm going to

6    ask those questions because I think they are appropriate.

7    I may insert a few additional questions as we go along.

8         Mr. Kenner, first I want to make sure you

9    understand that you have the constitutional right to be

10   represented by an attorney at every stage of the

11   proceeding, including all of the stages that we still have

12   remaining in this case which include completion of the

13   forfeiture issue, sentencing, and any other issues that

14   might come up.

15        Do you understand that you are entitled to an

16   attorney at every stage of this proceeding?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Do you understand if you cannot

19   afford a lawyer the court will appoint one on your behalf

20   at no cost to you?

21        Do you understand that?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Do you also understand you have the

24   constitutional right to represent yourself as I just

25   mentioned to you, if you choose to do so?

5

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And it is your desire to exercise

4    that constitutional right to represent yourself?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Have you ever studied law?

7          THE DEFENDANT:  I have not.

8          THE COURT:  Have you ever represented yourself

9    in a criminal action?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Do you understand that you are

12    charged with and have been convicted by the jury at trial

13    of counts one through four, seven and nine of the second

14    superseding indictment in this case charging you with

15    conspiracy to commit wire fraud, wire fraud, and

16    conspiracy to commit money laundering?

17          Do you understand you have been convicted of

18    those counts?

19          THE DEFENDANT:  Yes, I believe I have been

20    convicted of those counts.

21          THE COURT:  Do you understand based on those

22    counts of which you have been convicted the maximum term

23    of imprisonment as to each one of those counts is 20

24    years?

25          THE DEFENDANT:  Yes, sir.

1           THE COURT:  Do you understand at sentencing the

2   court could order the sentences of these counts to be

3   served consecutively, that is, one after the other, which

4   means that you are facing a total term of imprisonment at

5   the time of sentencing of up to 120 years in jail?

6           Do you understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you understand at sentencing the

9   court must impose a special assessment of $100 on each of

10   the counts of conviction separately?

11           THE DEFENDANT:  I understand that.

12           THE COURT:  Do you understand at sentencing the

13   court may impose a term of supervised release to follow

14   any term of imprisonment and also can impose fines in the

15   amount of $250,000 as to each count?

16           THE DEFENDANT:  I have been advised of that.

17           THE COURT:  Do you understand at sentencing I

18   can also order you to pay -- I must order you to pay

19   restitution to the victims, that restitution is mandatory

20   in an amount to be determined by the court at sentencing?

21           THE DEFENDANT:  I have been advised of that.

22           THE COURT:  Do you understand at sentencing I

23   can also direct you to forfeit certain assets?  As you

24   know we have this on going forfeiture proceeding.

25           You understand I can order forfeiture of assets?

1      THE DEFENDANT:  Yes, sir, I am aware of the

2  ongoing procedure.

3      THE COURT:  Have you received and reviewed the

4  copy of the presentence investigation report?

5      THE DEFENDANT:  I never received a copy of the

6  report but Mr. Haley let me read it one time.

7      THE COURT:  Obviously we'll make sure that you

8  get a copy of it.

9      I want to make sure you understand that there

10  are advisory sentencing guidelines that under federal law

11  I need to consider.  They are not binding but they are one

12  of the factors I need to consider and the guidelines may

13  have an effect on your sentence because they are the

14  starting point for any sentence even though they are not

15  mandatory in any way.

16      Do you understand that?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  I'll come back to that in a minute.

19      Do you understand if you choose to represent

20  yourself, essentially we will talk about standby counsel

21  and a paralegal, but you are on your own and that I can't

22  tell you or advise you as to how you should handle any

23  aspect of your case so you can't, for example, ask me

24  questions along the line because I can't serve as an

25  advisor to you.

8

1        Do you understand that?  No one will be able to

2   do that.

3        THE DEFENDANT:  Referencing yourself, your

4   Honor?  I do understand that, yes.

5        THE COURT:  Yes.

6        THE DEFENDANT:  Yes.

7        THE COURT:  Are you familiar with the Federal

8   Rules of Evidence?

9        THE DEFENDANT:  Not particularly.

10        THE COURT:  Do you understand that the rules of

11   evidence govern what evidence may or may not be introduced

12   at a trial or can apply at hearings, including any hearing

13   in connection with sentencing or we had the forfeiture

14   hearing but it's possible we could have a supplemental

15   hearing and that in representing yourself you will have to

16   abide by these very technical rules and I'm not going to

17   be relaxing the rules because you are not an attorney.

18        Do you understand that?

19        THE DEFENDANT:  Yes, sir, I do.

20        THE COURT:  Are you familiar with the rules of

21   criminal procedure?

22        THE DEFENDANT:  Not particularly.

23        THE COURT:  Do you understand that those rules

24   govern the way a criminal action is handled at trial or at

25   a hearing or a sentencing in federal court and that you

9

1    are bound by those rules and, again, those rules aren't

2    relaxed for your benefit as a nonattorney?

3              THE DEFENDANT:  I am aware of that.

4              THE COURT:  These aren't on the government's

5    proposed questions but I want to make sure you understand

6    generally what the risks are of proceeding without an

7    attorney and representing yourself.

8              I think you probably understand this already but

9    I'm going to emphasize this to you.  These proceedings

10   that we are having, continue to have, are very complicated

11   proceedings.  The forfeiture in this case is a very

12   complicated issue factually and legally.  Obviously

13   sentencing is very complicated.  There are many factors

14   that the court has to consider.  The guidelines can be

15   very technical.

16             There are a lot of cases that apply to

17   particular enhancements, whether this enhancement should

18   apply, not apply.  These are all very complicated matters.

19   I have been a judge 12 years.  A lot of times I have to

20   look up these issues myself because every case is

21   different.  The law is very nuanced as to different

22   situations.

23             So I want to make sure that you understand the

24   complexity of the remaining issues in this case.  I think

25   you do but I want to make sure you understand that.  You

10

1  understand that?

2  　　　　THE DEFENDANT:  Your Honor, I would be remiss if

3  I said I understand the complexity of each of the issues

4  if your Honor must be looking up some of the case work or

5  the other elements of issues you have to handle for

6  sentencing or other portion of the case.

7  　　　　I don't want to suggest that I understand.

8  　　　　THE COURT:  I'm not suggesting you understand

9  every complexity but that's my whole point.  I don't think

10  you understand every complexity and nobody understands

11  every complexity.  Judges don't understand every

12  complexity.  So I have to look them up.

13  　　　　But I also depend upon the lawyers.  I do my own

14  research, but I depend on them to point me to cases and to

15  make arguments and that's helpful.  So because you are not

16  an attorney that's a disadvantage for you because

17  attorneys are skilled in the law and the procedures and

18  how to research cases and how to make arguments to the

19  court and are obviously in a better position to do that

20  than someone who doesn't have a law degree and doesn't

21  have experience doing any of those types of things.

22  　　　　I want to make sure you understand that you

23  could be at a disadvantage because of the fact you are not

24  an attorney and that these issues are very complicated.

25  You understand that?

1    THE DEFENDANT:  At the moment, your Honor, I do

2    understand that.

3    THE COURT:  Also, just in general, apart from

4    the legal issues and the factual issues, we may -- even

5    though we had a forfeiture hearing, one of the risks

6    proceeding pro se is you don't know how the case will play

7    out.  We don't know as we sit here today what else is

8    needed.  Obviously we know there is additional briefing on

9    the forfeiture.  Obviously there is a sentencing

10   proceeding, but, for example, we may have to have a Fatico

11   hearing regarding sentencing.

12   You would have to question witnesses at the

13   Fatico hearing, for example, and as I said it could be

14   possible that we could have to reopen the forfeiture

15   hearing.  Somebody could come up where I say I have to

16   open this up and readdress this issue.  There could be

17   issues in connection with forfeiture, in connection with

18   sentencing.  All kinds of things come up in a case that I

19   can't predict and nobody can predict.  Once you make this

20   decision it's not a situation where you can keep going

21   back and forth, like, oh, I think I need a lawyer for

22   this.

23   You understand that?

24   THE DEFENDANT:  Yes, your Honor, I do.

25   THE COURT:  And also just generally there is

1    some benefit, for example, at sentencing where not only in

2    sentencing does the defendant get to speak but the

3    attorney gets to speak on that person's behalf.

4            So you have two people talking then, not just

5    the defendant themselves, but again someone talking on his

6    behalf and you are going to not have that.  It's obviously

7    just going to be you talking on your own behalf.  Do you

8    understand that?

9            THE DEFENDANT:  Yes, under the circumstances, I

10   understand that.

11           THE COURT:  Do you have any questions of me with

12   respect to representing yourself or anything that I raised

13   with you so far?

14           THE DEFENDANT:  Nothing that we have discussed

15   today, your Honor.

16           THE COURT:  Is there anything else you want to

17   discuss with me before I ask you some final questions

18   about your willingness and desire to represent yourself?

19           THE DEFENDANT:  I think I can wait until after

20   we are complete and there may or may not be a follow-up

21   question, your Honor, but thank you.

22           THE COURT:  In light of the penalties to which

23   you are exposed at sentencing which I reviewed with you

24   today, or in any trial in this case if the case were to be

25   retried, I didn't mention that but that's always a

13

possibility, and in light of all the difficulties of

representing yourself that I discussed with you, do you

still desire to represent yourself and to give up your

right to be represented by a lawyer?

THE DEFENDANT:  At the moment, yes.

THE COURT:  What does that mean at the moment?

Again, once you make the decision it's not going

to be a situation where you go back and forth, you

understand that?

THE DEFENDANT:  Yes, I understand that, your

Honor.

THE COURT:  Is your decision entirely voluntary?

THE DEFENDANT:  I believe it is.

THE COURT:  Has anyone threatened you or forced

you to make this request to represent yourself?

THE DEFENDANT:  I don't believe so.

THE COURT:  Do you understand that any

statements that you make in the course of representing

yourself could be used against you by the government

either in the course of the sentencing of this matter or

any future proceeding related to this case, do you

understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are there any other questions that

the government wants me to cover with the defendant?

14

1       MR. HAGANS:  No, your Honor.

2       THE COURT:  Mr. Siegel, do you think there are

3   any other questions I need to ask Mr. Kenner?

4       MR. SIEGEL:  No, Judge.

5       THE COURT:  On the basis of my observations of

6   Mr. Kenner, not only here in the courtroom today, but

7   obviously this case has a long history, I have had many

8   colloquies with him on many different issues over time

9   including representation by his lawyers, I heard him

10  testify at the trial for many days, I believe that his

11  decision to proceed pro se is knowing and voluntary, that

12  he's conscious of the risks that are involved.  I have

13  done my best to make him aware of those risks, and,

14  therefore, I believe that the standard under Fretta,

15  F-R-E-T-T-A, has been satisfied in terms of me satisfying

16  myself that this is a knowing and voluntary choice and I

17  will allow him to proceed pro se in the case as is his

18  constitutional right to do so.

19       Mr. Kenner, the only remaining issue I have for

20  today, well, two issues, if you need more time for the

21  deadlines I will obviously give you a little bit of

22  additional time.  I would ask Mr. Siegel that you pass any

23  work that you have done to Mr. Kenner.  I would hate for

24  any work that you have done to be wasted if he can decide

25  whether he wants to use it or not, but certainly you

1  should make all your work product available to him.

2      Okay?

3      MR. SIEGEL:  Yes, Judge.

4      THE COURT:  And then I assume, Mr. Kenner, that

5  you would like to have standby counsel and a paralegal

6  with that counsel to assist you, is that accurate?

7      THE DEFENDANT:  Yes, your Honor.

8      THE COURT:  Mr. Siegel suggested in his letter

9  that he doesn't really have a paralegal and he's a sole

10  practitioner, but my view on this and I'll be guided by

11  you and Mr. Kenner, Mr. Siegel, you obviously put a lot of

12  time in this case and I would hate even though you would

13  only be standby counsel for me to have another lawyer come

14  in and become familiar with the whole case, just to even

15  operate as standby counsel.

16      I don't think it is particularly productive, if

17  it can be avoided.  Even if you don't have a paralegal, if

18  that's the only thing holding you back I would authorize

19  under the CJA act for you, I don't know how it would be

20  done, but to utilize the services of someone to act as a

21  paralegal on a temporary basis, in other words, on an

22  hourly rate consistent with the CJA rate because I think,

23  assuming your relationship with Mr. Kenner hasn't

24  deteriorated to the point where you don't think you can

25  function in that capacity as standby counsel, I think it

16

1    would be better for you to stay on the case given how much

2    time and knowledge you have about the case.

3              Are you willing to do that if Mr. Kenner is okay

4    with that?

5              MR. SIEGEL:  Yes, Judge.

6              THE COURT:  Okay.

7              Mr. Kenner, you heard what I was suggesting that

8    he would stay on the case as your standby counsel.  I

9    would authorize him under the CJA act to have a paralegal

10   assist him to the extent you need paralegal work done.

11   You mentioned an investigator.  I would have to hear more

12   about why you would need an investigator.  I do that for

13   defense lawyers.  When they want to investigate they have

14   to write to me and explain why but, again, he can assist

15   you if you think that was necessary in obtaining one and

16   working with one.  Obviously when you are in jail it's

17   hard to work with someone on the outside in that way.

18             Is that okay with you?

19             THE DEFENDANT:  Yes, that's fine for Mr. Siegel

20   to stay on and if we could have a paralegal and then I can

21   address your Honor directly about the need if necessary

22   for an investigator.

23             THE COURT:  On that type of issue that deals

24   with your defense you can write that letter.  You don't

25   have to provide it to the government because that would go

17

1    into your defense lawyer's -- for example, when they ask

2    for an investigator they don't tell the government why

3    they want it.  They write a letter to me what's called

4    ex parte explaining why they need it and if I think it's

5    necessary I authorize it.

6         Other things obviously the government would get

7    to see, but that particular letter you wouldn't have to

8    provide a copy to the government.  Okay?

9         THE DEFENDANT:  Yes, sir.

10        THE COURT:  On the dates, I don't have in front

11   of me what the date is, but you want an extension of that

12   date?

13        THE DEFENDANT:  Yes, at least that would give us

14   an opportunity for Mr. Siegel to pass the information,

15   either by himself or through a new paralegal to come visit

16   with me.

17        THE COURT:  What do you suggest then?

18        THE DEFENDANT:  Your Honor, under the

19   circumstances, and in order to allow Mr. Siegel to acquire

20   a paralegal through whatever CJA procedure is necessary,

21   if we could have 30 days and I could receive both the

22   information Mr. Siegel has put in place already.

23        THE COURT:  30 days from today?

24        THE DEFENDANT:  From April 2nd, if we just

25   extend it.

18

1          THE COURT:  May 2nd?

2          THE DEFENDANT:  That would be fine, your Honor.

3          THE COURT:  Okay.

4          THE DEFENDANT:  I do appreciate that.

5          THE COURT:  We'll move the government's date, I

6    don't remember how much time you had under the prior

7    schedule.

8          MS. LEONARDO:  We have 30 days also, your Honor,

9    so if we could have June 2nd.

10          THE COURT:  That's a Saturday, you want June

11    4th?

12          MR. HAGANS:  That's fine, your Honor.

13          THE COURT:  Did we have a date --

14          THE DEFENDANT:  You had not calendared one yet,

15    your Honor.

16          You suggested about a month or so so you would

17    have time to read the motions.

18          THE COURT:  How about July 18th or so, the week

19    of July 16th, is that okay?

20          Mr. Siegel, obviously because you are standby I

21    would want you to be here too.

22          MR. SIEGEL:  Right, Judge.  I'm actually going

23    to be away starting July 21st for a week.  So I will be

24    here the week before then.

25          THE COURT:  Okay.

1    The 18th then, let's say 10 a.m. on the 18th.

2    Obviously we will have to check with Mr. Constantine and

3    his counsel because I would want to do it all at once.

4    (There was a pause in the proceedings.)

5    MR. SIEGEL:  That's fine for me, Judge.

6    Judge, can I just have a minute, though?

7    THE COURT:  Yes.  Is that okay with the

8    government, that date and time?

9    MR. HAGANS:  Yes, your Honor.

10    THE COURT:  Go ahead, Mr. Siegel.

11    MR. SIEGEL:  Thank you, your Honor.

12    (There was a pause in the proceedings.)

13    MR. SIEGEL:  Okay, Judge.  We are good.

14    Thank you.

15    THE COURT:  All right.

16    MR. HAGANS:  Thank you, your Honor.

17    Your Honor, if I may just raise one additional

18    matter and I want to be cautious and say I haven't

19    researched this explicitly, but in light of Mr. Siegel's

20    current status as standby counsel I wonder if it's worth

21    reiterating to the defendant that the general maximum he's

22    entitled to counsel but not his choice of counsel I expect

23    that's true for standby counsel as well.

24    Given the history of this case and the

25    defendant's multiple representation situations, the

20

1    government would respectfully request that the defendant

2    be reminded that if his relationship for whatever reason

3    were to break down with Mr. Siegel he may not get another

4    standby counsel appointed afterwards.

5              I understand that would be up to your Honor

6    ultimately.

7              THE COURT:  I this he understands and my sense

8    is that, Mr. Kenner, the fact he said he's willing to

9    continue him as standby counsel I think shows to me he is

10   making every effort to keep Mr. Siegel.

11             Mr. Hagans is correct, Mr. Kenner, that what

12   applies to attorneys also applies to standby counsel.  You

13   can't have a situation where you keep asking me to replace

14   standby counsel.  I have the discretion to say it to you

15   at some point no.  I'm not going to have another attorney

16   come on the case and get familiar with the case if I don't

17   feel you demonstrated a sufficient reason to replace

18   counsel, but obviously we are not at that stage.

19             But you understand that, right?

20             THE DEFENDANT:  Yes.

21             That was an excellent point by attorney Hagans.

22   I appreciate that, your Honor.

23             THE COURT:  Okay.

24             All right?

25             MR. HAGANS:  Thank you, Judge.

21

1          THE COURT:  Have a good day.

2          THE DEFENDANT:  Thank you, your Honor.

3          (The matter concluded.)