FILED
CLERK
10/4/2018 4:38 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

    ---------------------------------X
                                     :
    UNITED STATES OF AMERICA,        :
                                     : 13-CR-00607 (JFB)
              v.                     :
                                     : October 1, 2018
    KENNER, et al.,                  : Central Islip, New York
                                     :
              Defendants.            :
                                     :
    ---------------------------------X

          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                 BEFORE THE HONORABLE JOSEPH F. BIANCO
                      UNITED STATES DISTRICT JUDGE


    APPEARANCES:

    For the Government:         UNITED STATES ATTORNEY
                                BY:  MATTHEW HAGGANS, ESQ.
                                     MADELINE O'CONNOR, ESQ.
                                ASSISTANT U.S. ATTORNEYS
                                271 Cadman Plaza East
                                Brooklyn, New York 11201

    For Defendant/Constantine:  SANFORD TALKIN, ESQ.
                                Talkin, Muccigrosso & Roberts
                                40 Exchange Place
                                New York, New York 10005

    For Defendant/Kenner:       PHILLIP A. KENNER, Pro Se
                                #07480-408
                                MDC Brooklyn
                                P.O. Box 329001
                                Brooklyn, New York 11232



    Court Transcriber:          SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
                                211 N. Milton Road
                                Saratoga Springs, New York 12866
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

1  (Proceedings began at 2:04 p.m.)
2          THE CLERK:  Calling case 13-CV-607, <u>USA v. Kenner</u>
3  <u>and Constantine</u>.
4          Counsel, please state your appearance for the
5  record.
6          MR. HAGGANS:  Good afternoon, Your Honor.  Matthew
7  Haggans for the United States with Madeline O'Connor and
8  Diana -- Diane Leonardo.
9          THE COURT:  Good afternoon.
10         MR. TALKIN:  Good afternoon, Your Honor.  San Talkin
11 for Mr. Constantine who is on the telephone.
12         THE COURT:  Good afternoon.
13         MR. KENNER:  Good afternoon, Your Honor.  Phillip
14 Kenner representing myself.  I'm pro se.
15         THE COURT:  Good afternoon.  Mr. Constantine, can
16 you hear everybody okay?
17         MR. CONSTANTINE:  Yes, Your Honor.  Thank you.
18         THE COURT:  So I scheduled the status conference.
19 We have a couple of pending issues.  Some relate to Mr.
20 Constantine and some relate to Mr. Kenner, and I'll see if
21 there's anything else while we have everybody here but the
22 first thing I want to address obviously is the forfeiture
23 motion and I did receive, Mr. Talkin, your letter on the 20th
24 indicating that some issue had risen.  So do you want to
25 explain to me what the issue is?

3

1  MR. TALKIN:  Yes.  Yes, Your Honor.  It's not a
2 representation issue or anything.  It's just -- it's simply --
3 and first of all, the reason I wanted to come in is I know
4 Your Honor has granted extensions on this and it's been a
5 complicated issue.  Unfortunately the issue that arose is that
6 even though I have been able to brief the issues that are the
7 legal issues, the accounting issues are something that Your
8 Honor has gotten an expert recently involved and we're working
9 through.
10  However, my understanding of the accounting issues
11 were that that was a much smaller issue than what really
12 exists.  In other words, there's much more work that needs to
13 be done than I thought had to be based on my understanding of
14 the accounting issues.  So that's the issue that arose.
15  I've discussed it with my client and then I'll end
16 the accountant on a way to resolve it.  In other words, we
17 believe that Mr. Constantine needs to come to New York and sit
18 down with the accountant for a week to go through the
19 thousands of transactions that occurred in this case and
20 that's the only way to really resolve this.  The accountant of
21 course is willing to do that but because right there's the
22 extension tax season he won't be available until sometime
23 after October 15th.
24  It's my understanding that Mr. Constantine and the
25 accountant have spoken to each other.  They're going to begin

4

1   the process on the telephone after the 15th and hope to meet
2   towards the end of October, early November, in order to
3   accomplish going through each and every transaction in this
4   case.  Then that will arm me with information to deal with but
5   I think Mr. Constantine's central issue of forfeiture which is
6   the Honeycutt issue.  There are other smaller ancillary issues
7   but that's the biggest one.
8            So once that happens we -- I'll get the report and
9   I'll get to work on plugging them into the law that's already
10  been laid out.
11           There's a couple of complicating factors just that
12  are all on my side on that.  I start a Southern District case
13  November 14th and then starting -- I'm going to start picking
14  a jury in December in New York County on a murder case, a cold
15  case that -- I think this jury selection is only going to take
16  a week and then we're going to start up on January 7th because
17  it's going to be a very long trial.  So I -- I guess one of
18  the reasons I wanted to be here is to tell Your Honor this
19  isn't anything that -- it's no -- it's certainly not a delay
20  by Mr. Constantine and it's not a delay by me.  It's just this
21  is a mammoth project and I really think that this is the kind
22  of thing that if you had ten lawyers working around the clock
23  and ten accountants it would be hard to do and when you have
24  one accountant and one lawyer doing it it's even harder.
25  We're doing it.  We're going to get it done but I just think

5

1   we owe it to Your Honor to let you know that the extensions
2   you've given us are not -- we didn't -- they're not in waste.
3   It's just we're trying to get something done that's very
4   difficult to do.
5              THE COURT:  I know but -- I can't put off this until
6   after that trial in January.
7              MR. TALKIN:  I understand.  What I'm trying to get
8   done is we're hoping -- if I can get the report by sometime
9   into mid November hopefully my trial will be done by
10  Thanksgiving and then right after Thanksgiving within a week
11  I'll turn it around to Your Honor.  That's, you know -- and
12  it's going to be really hard to do that but I'm going to get
13  it done.
14             THE COURT:  Okay.  Mr. Haggans, do you want to be
15  heard on that?
16             MR. HAGGANS:  Just briefly, Your Honor.  I think the
17  Court knows probably better than I do that the history in this
18  case.  We're about to enter our fortieth month post verdict.
19  The Government filed its forfeiture brief in October 2016, two
20  years ago, and I joined the case I think three or four months
21  after that.  About 18, 20 months post conviction and I've been
22  on the case about 18 or so months.
23             Mr. Constantine is at liberty.  It's in his interest
24  to continue these proceedings as long as possible to avoid
25  imposition of judgment.  This I believe is the sixth request

6

1  for an extension from Mr. Constantine just in the past year.
2  Really in the past eight months.  We initially set a deadline
3  back for February 28, 2018 and it's been a regular request for
4  an extension since then.
5              Mr. Talkin --
6              THE COURT:  Hold on a second.
7                    [Pause in proceedings.]
8              THE COURT:  Okay.  Go ahead.
9              MR. HAGGANS:  I understand to some extent where Mr.
10 Talkin is coming from.  He's also joined the case after a lot
11 of these issues have transpired but that again is in no small
12 part due to Mr. Constantine and his replacement of his
13 attorneys.  The Government opposes the extension request.  We
14 would seek the Court's leave to insure that we have sufficient
15 time to reply to any of the opposition papers once they're
16 ultimately filed and we would like to be able to respond to
17 both sets of papers at the same time.
18             I believe as the Court knows Mr. Kenner has put in
19 fairly voluminous filings in opposition and it's my
20 understanding that he intends to supplement those filings. I
21 have every expectation that that supplement will also be
22 voluminous.  So the Government would strongly prefer to be
23 able to reply to all of the defense filings in one go.  Thank
24 you, Judge.
25             THE COURT:  Well, I mean that -- I understand your

7

1   concerns just overall and obviously I've been trying to do the
2   best I can to get this case moving forward.  I won't rehash
3   all the different issues that have come up.  It's not as if
4   this has been the only issue for the entire period of delay
5   but it would make no sense for me -- the accounting piece I
6   think obviously is an important piece for purposes of
7   forfeiture and it's not Mr. Talkin's -- it's not in his
8   control and I assume it's not in Mr. Constantine's control if
9   the accountant thinks he needs more information.  So I don't
10  view this as simply an effort to delay.
11              But I need to resolve this in a way that minimizes
12  the amount of time.  So one option would be to move forward
13  with the rest of it and just leave this piece outstanding but
14  the Government is suggesting you don't want that.  I mean I
15  could try to do that but you would rather they respond all at
16  once.  Right?  Isn't that what you just said?
17              MR. HAGGANS:  When Your Honor says the rest of it,
18  does that mean everything other than forfeiture?
19              THE COURT:  No.  That means everything other than
20  the accounting piece on the forfeiture issue just to make sure
21  that -- it's not ultimately going to advance the decision
22  because I have to wait the accounting piece but if you're
23  concerned that this is a second endless delay that would be
24  one possibility.  I'm not suggesting that's ideal either
25  because in my view it's not going to ultimately necessarily

1  speed up the process but if you wanted that I would be willing
2  to consider that.
3         In other words, you're saying we don't want to
4  respond to Mr. Kenner until -- because he's going to
5  supplement when he gets the accounting piece and -- but --
6  which is fine.  I'm willing to go along with that but there
7  would be no reason why whatever other issues are not -- are
8  not a part of the accounting piece could move forward on the
9  briefing both from the Government's end and from anyone else's
10 end.
11        MR. HAGGANS:  Could we just have a moment, Your
12 Honor?
13        THE COURT:  Yes.
14             [Pause in proceedings.]
15        MS. O'CONNOR:  Your Honor, I believe what Mr.
16 Haggans was trying to convey to the Court is we currently
17 received Mr. Kenner's submission and it's 217 pages and
18 thousands of pages of exhibits.  Our response to that portion
19 would be due October 21st.  In conversations with Mr.
20 Constantine's attorney it's our understanding Mr. Kenner
21 intends to supplement his brief once there's the accounting
22 portion.
23        So just for the ease of responding to everything
24 because it's going to be a duplication of issues, it's
25 preferable if we just do one response brief to both Mr.

9

1  Constantine and Mr. Kenner's initial brief and his
2  supplemental brief.
3           THE COURT:  Once everything has been done, including
4  the accounting?
5           MS. O'CONNOR:  Yes, Your Honor, with the accounting.
6           THE COURT:  Okay.  That's fine but that's the only
7  other way -- I'm not going to move forward obviously without
8  allowing them the chance to put in the accounting information.
9  I think that would be unfair but if the Government does not
10 want to proceed piecemeal then the only thing left then, Mr.
11 Talkin, is to try to figure out a schedule that minimizes the
12 amount of time.
13          So you said early -- what did you say, early
14 December?  Is that what you're proposing?
15          MR. TALKIN:  Assuming that I would get the
16 accounting by mid November I'm hoping that that trial will be
17 over by the 28th or the 29th.  Then I am picking a jury on the
18 3rd, 4th but that's -- picking a jury doesn't take preparation
19 so hopefully what I can do is in those last few days of
20 December -- excuse me, last few days of November plug in the
21 accounting to what's already done and then maybe by the end of
22 the week when we start picking, which is the 7th, in the
23 interim since it doesn't take overnight preparation I can work
24 on this in the evenings and get it done by the 7th.
25          THE COURT:  Okay.  So the opposition will be due

1  December 7th.  I want you to emphasize to the accountant and
2  Mr. Constantine this is important from your end.  You need to
3  work with the accountant.  Mr. Talkin said you're going to
4  speak to him over the phone initially and then you're going to
5  set up a time to come to New York to spend a week with him.
6  You have -- you and Mr. Talkin need to coordinate with the
7  accountant the timing of that to insure that the accountant is
8  going to be able to turn a report around by like November
9  15th.  Is that -- when would you need it, Mr. Talkin?
10           MR. TALKIN:  Maybe he can go another week because
11 I'll be on trial but around then.  That's a good date to give
12 us some leeway.
13           THE COURT:  Okay  So, Mr. Talkin, you talk to Mr.
14 Constantine and the accountant, whatever schedule needs to be
15 done to get you that report.  If the accountant says I'm not
16 going to be able to do the report then we have a problem and I
17 want to maybe set up another conference.  I'm going to assume
18 if I don't hear from you that you've reached an agreement with
19 the accountant where he's going to get you that report.
20           MR. TALKIN:  Understood.
21           THE COURT:  All right.  If you could provide -- when
22 you get the report to Mr. Kenner -- is that --
23           MR. TALKIN:  The accountant is working on behalf of
24 both defendants.  So I'll make sure he gets it.
25           THE COURT:  Mr. Kenner, my hope would be that you

11

1   could then also put in your supplement sometime in December on
2   the same schedule.  If you have any trouble with that you can
3   let me know but that would be my hope.  Okay?
4           MR. KENNER:  Not a problem, Your Honor.  I've in
5   fact in the single meeting I was able to have with the
6   forensic accountant and Mr. Talkin I've already turned over
7   the deliverable -- excuse me, the documents the accountant
8   would need to piece together the individual forensic
9   accounting for some of the supplemental items in my brief.
10          THE COURT:  Okay.  All right.  So if the Government
11  December 7th, when -- when does the Government need to
12  respond?
13          MS. O'CONNOR:  January 11th, Your Honor.
14          THE COURT:  Okay.  That's fair.  January 11th.
15  Then, Mr. Talkin, you're --
16          MR. TALKIN:  I'll be off Fridays for argument to --
17  their motion, my reply.
18          THE COURT:  I got it.
19          MR. TALKIN:  Unless you want to give me a sur reply.
20          THE COURT:  I got mixed up.
21          MR. TALKIN:  I didn't think so.
22          THE COURT:  Right.  So let's pick a Friday.  It can
23  be the 25th or the 1st.
24          MR. HAGGANS:  The 25th would be very bad for me.
25          THE COURT:  Bad you said?  How about February 1st?

12

1          MS. O'CONNOR:  That's fine with the Government, Your
2  Honor.
3          MR. TALKIN:  That's fine.
4          THE COURT:  February -- we'll have argument on the
5  forfeiture motion on February 1st at 1:30.
6          Let me just deal with the other issues.  I want to
7  try to deal with them quickly because I saw that I have
8  lawyers back here.  Judge Tomlinson is picking a jury for me
9  and some issue came up.  I have to address that so I don't
10 keep everybody waiting.
11         But, Mr. Kenner, a couple of things.  First, I think
12 as you know the Bureau of Prisons had an issue with you
13 getting a hard drive because it's not consistent with their
14 regulations.  So I don't know if there's another piece of
15 technology that's consistent with their regulations that could
16 address what your concern was about having a backup.  So do
17 you have any alternative proposal?
18         MR. KENNER:  In fact, Your Honor, if we could have a
19 few minute ex parte I had a couple of other related issues
20 with respect to the MDC facility that we did need to discuss
21 today.  It came up in the last few days and it became very
22 urgent with respect to my ongoing preparation for the elements
23 of the case.  But I did -- but I have become very familiar --
24 I became aware of the denial of the backup hard drive.
25         THE COURT:  Okay.

13

1          MR. KENNER: As Your Honor may remember, that issue
2 came up about a year ago because --
3          THE COURT: Before we deal with other issues that
4 you have, what's the answer to that issue? Is there an answer
5 to that issue or not?
6          MR. KENNER: Well, Your Honor, I'm the only person
7 at MDC that deals with this and as Your Honor knows I have a
8 laptop that I work on every day and about a year ago, plus or
9 minus, the backup hard drive that I had had for several years
10 from the Government disappeared at MDC with no explanation or
11 no answer from the facility. We're really not looking to
12 transport the backup hard drive throughout the facility in
13 concurrence with their concerns for distribution of
14 contraband. In fact, the backup --
15          THE COURT: What's -- let me --
16          MR. KENNER: -- hard drive would sit with the hard
17 drive -- with this.
18          THE COURT: I don't want to get into a discussion
19 with you about this because I've already told you my decision
20 is I'm not going to order them to provide a hard drive in the
21 jail. That's inconsistent. They've articulated the reasons
22 why they don't like having it in the jail and I believe those
23 reasons are valid.
24          What I'm suggesting to you -- so stop arguing to me
25 about why you should be able to have it anyway. If there's

1  some other proposal, some other piece of technology that you
2  have in the jail or the alternative would be to -- whatever
3  you've done to -- I assume that Mr. Siegel could keep that
4  hard drive at his office.
5           To the extent that you're worried that you're going
6  to lose materials that you worked on I'm sure there can be a
7  way arranged so that in some manner it was backed up in a way
8  that he could keep a separate copy of it in his office.
9           MR. KENNER:  Your Honor, I guess as a solution --
10 and I didn't mean to insult the Court with my --
11          THE COURT:  It's not insulting.  I'm just trying to
12 save time.
13          MR. KENNER:  Yes, Your Honor.  I was just suggesting
14 that two hard drives would remain together under lock and key
15 at all times at the MDC.  But perhaps once every few weeks and
16 certainly at some point soon if Mr. Siegel or one of the other
17 gentleman working with me at the moment could have an external
18 hard drive and I could be taken to Brooklyn for court for a
19 day and bring the computer, back it up and I can go back to
20 MDC.
21          THE COURT:  Okay.  I'm just going to ask the
22 Government to discuss with the lawyer at the MDC whether or
23 not -- the Government understands what the issue is, right,
24 the -- he just wants to periodically to be able to back up his
25 information so that if it gets lost or whatever he won't lose

1 all his work.  So is there a way that Mr. Siegel could come
2 into the courthouse, if it has to be done at the courthouse, a
3 copy can be made.  If you could just send me a letter within a
4 week.  If they say that's no good just have him try to suggest
5 some other way to do this.
6         MR. KENNER:  Understood, Your Honor.
7         THE COURT:  The last thing, Mr. Kenner, and what I'm
8 going to do is I'm going to hear -- I have to hear this civil
9 matter.  I'm going to have to ask the Marshals to bring you
10 back if you have a longer list of questions but -- Mr. Talkin,
11 you can leave obviously but this part doesn't even have to be
12 ex parte but on this issue of subpoenas that you're continuing
13 to request again my view on that is until these issues get
14 resolved and I decide what type of evidentiary hearing we're
15 going to have for purposes of sentencing or not there is --
16 I'm not sure what you're seeking subpoenas pursuant to.  The
17 hearing on the forfeiture is closed.  So I don't know if you
18 want to address that, Mr. Kenner.
19         MR. KENNER:  If Your Honor had received my
20 supplemental letter that I sent off to the Court on or about
21 August 9th.  I tried to give Your Honor a better description
22 of what each of those relevant subpoenas would be -- why I
23 needed them for a money judgment calculation or money judgment
24 offset calculation with respect to forfeiture.  So I tried to
25 detail that in greater detail.

16

1      THE COURT: I'm going to hold off then until I
2 consider the whole forfeiture issue as a whole. Whether or
3 not there would be any basis for you to obtain additional
4 information I think in my view awaits the outcome of all the
5 briefing. I have to look at all the briefing and if I believe
6 that there was some factual piece that was missing or that you
7 should have an entitlement to reopen the forfeiture hearing I
8 would consider it at that point. Okay?
9      MR. KENNER: Okay, Your Honor.
10      THE COURT: All right. So I'm just going to ask the
11 Marshals to hold onto Mr. Kenner so I can hear the list.
12      Mr. Talkin, you're excused and Mr. Constantine,
13 you're excused as well. The Government can go back to their
14 office. If I think any of these -- these all relate to issues
15 you're having with the jail itself?
16      MR. KENNER: Yes, sir, Your Honor.
17      THE COURT: I don't know if --
18      mR. HAGGANS: The Government will be available if
19 the Court needs to resume. I would just -- before we separate
20 if I could address just one minor matter.
21      I understand from the docket that Mr. Kenner filed a
22 rebuttal on his Rule 6 motion and that there was an
23 accompanying disk or set of documents. The Government's not
24 received that. I don't know if he sent it by mail or has only
25 sent --

17

1  THE COURT:  Yes, we received the disk.  I think a
2 portion -- the memo got uploaded and not the exhibits I guess.
3 Is that what happened?
4  MR. HAGGANS:  I could check the docket again.  All I
5 see is basically the cover email from Mr. Kenner to Your Honor
6 dated September 17th.
7  THE COURT:  Okay.  We'll have -- I guess the easiest
8 way probably to give you -- for you to make a copy.  You
9 didn't send in a copy of the disk, did you?
10  MR. KENNER:  I did not, Your Honor.
11  THE COURT:  So we'll give you the disk and you can
12 just copy it and give it back.
13  MR. HAGGANS:  Thank you, Your Honor.
14  THE COURT:  Thank you.
15 (Proceedings concluded at 2:26 p.m.)
16                         * * * * *

```
                                                                    18
 1      I certify that the foregoing is a court transcript from
 2 an electronic sound recording of the proceedings in the above-
 3 entitled matter.
 4
 5                                    _____
 6                                       Shari Riemer, CET-805
 7 Dated:   October 4, 2018
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```