DCL:LDM:MMO
F. # 2013R00948

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                 - against -                                   Crim. No. 13-607 (S-2) (JFB)

PHILLIP A. KENNER,
          also known as,
               "Philip A. Kenner," and
TOMMY C. CONSTANTINE,
          also known as
              "Tommy C. Hormovitis,"

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ENTRY OF AN ORDER OF FORFEITURE**

                                       RICHARD P. DONOGHUE
                                       UNITED STATES ATTORNEY
                                       Eastern District of New York
                                       610 Federal Plaza
                                       Central Islip, New York 11722

*Of Counsel:*

MADELINE O'CONNOR
DIANE LEONARDO
Assistant United States Attorneys

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ………………………………………………..… ii

**PRELIMINARY STATEMENT**………………………………………………...1

**ARGUMENT**…………………………………………………………………..…3

    **I.**    **Section 982's Text Demonstrates that Money Laundering Forfeitures Are Not Limited to the Proceeds that the Defendant Obtained**………...…3

    **II.**    **Section 982's Legislative History Confirms the Statute's Plain Text**…………………………………………………..………9

    **III.**    **Defendants' Remaining Arguments Lack Merit or Are Otherwise Irrelevant to the Forfeiture Issues Sub Judice**……………….…..……..11

        **A.**    **Kenner's Arguments Concerning the Evidence as to the Amount He Must Forfeit Lack Merit**………………………………11

        **B.**    **Kenner's Arguments Concerning Lehtinen's and Stumpel's Investments Do Not Affect the Forfeitability of the Diamante Cabo San Lucas Resort and Baja Ventures 2006, LLC**………….13

        **C.**    **Kenner's Arguments Regarding Restitution and Loss Amount Are Inappropriately Raised in the Instant Forfeiture Briefing** ………………………………………………14

        **D.**    **The Proposed Forfeiture Is Not Excessive Under the Eighth Amendment**………………………………………………15

        **E.**    **The Court Lacks Authority to Grant Constantine's Request That Forfeited Funds Be Applied to Restitution**………………...17

**CONCLUSION**………………………………………………………………..18

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Honeycutt v. United States*,
   137 S. Ct. 1626 (2017) .................................................................. *passim*

*In re 650 Fifth Ave.*,
   777 F. Supp. 2d 529 (S.D.N.Y. 2011) .................................................... 14

*United States v. Ahmad*,
   213 F.3d 805 (4th Cir. 2000) ............................................................. 15

*United States v. Alquza*,
   722 F. App'x 348 (4th Cir. 2018) ....................................................... 3, 4

*United States v. Alquza*,
   2017 WL 4451146 (W.D. N.C. Sept. 21, 2017) ..........................................4

*United States v. Bermudez*,
   413 F.3d 304 (2d Cir. 2005) ........................................................... 4, 6, 7

*United States v. Broadbent*,
   225 F. Supp. 3d 239 (S.D.N.Y. 2016) .................................................... 17

*United States v. Coffman*,
   859 F. Supp. 2d 871 (E.D. Ky. 2012) .................................................... 4

*United States v. Cohan*,
   988 F. Supp. 2d 323 (E.D.N.Y. 2013) ............................................... 17-18

*United States v. Harris*,
   2018 WL 6184878 (D. Haw. Nov. 27, 2018) ........................................... 12

*United States v. Hendrickson*,
   22 F.3d 170 (7th Cir. 1994) .............................................................. 7

*United States v. Huber*,
   404 F.3d 1047 (8th Cir. 2005) ........................................................... 5

*United States v. Nicolo*,
   597 F. Supp. 2d 342 (W.D.N.Y. 2009) .................................................. 5

*United States v. Pratt*,
   2018 WL 2871840 (E.D.N.Y. June 11, 2018) ........................................... 17

*United States v. Reiner*,
   397 F. Supp. 2d 101 (D. Me. 2005) ...................................................... 4

*United States v. Schlesinger*,
  261 F. App'x 355 (2d Cir. 2008) ........................................................................14

*United States v. Schlesinger*,
  396 F. Supp. 2d 267 (E.D.N.Y. 2005) *aff'd*, 514 F.3d 277 (2d Cir. 2008)..………… 4-5, 14

*United States v. Sherman*,
  262 F.3d 784 (8th Cir. 2001) ........................................................................ 14

*United States v. Tencer*,
  107 F.3d 1120 (5th Cir. 1997) ........................................................................ 9

*United States v. Walters*,
  910 F.3d 11 (2d Cir. 2018) ........................................................................ 16-17

*United States v. Ward*,
  2017 WL 4051753 (W.D. Mich. Aug. 24, 2017), report and recommendation adopted,
  2017 WL 3981160 (W.D. Mich. Sept. 11, 2017)…………………………..……………….. 8

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010) ........................................................................ 12

*United States v. Viloski*,
  814 F. 3d 115 (2d Cir. 2016)…..………………………………………………………………..15-16

## **Statutes**

18 U.S.C. § 981(a)(1)(C) …...……………………………………………………………… 8

18 U.S.C. § 982……………………………………………………………………………9, 11

18 U.S.C. § 982(a)(1) ……………………………………………………………… *passim*

18 U.S.C. § 982(b)(1)……………………………………………………………….. 6

18 U.S.C. § 982(b)(2)……………………………………………………………*passim*

18 U.S.C. § 1956……..…………………………………………………………...……… 3

18 U.S.C. § 1957 …..…………...……………………………………….…………... 3

18 U.S.C. § 1960……….……..………………………...……….…………………3

21 U.S.C. § 853(a)……………………………………………………………*passim*

21 U.S.C. § 853(a)(1)……………………………………………………………3, 4, 5, 6

21 U.S.C. § 853(p)……………………………………………………………..5, 6

## PRELIMINARY STATEMENT

The United States of America (the "government") respectfully submits this reply memorandum of law in further support of its request for orders of forfeiture against defendants Phillip A. Kenner, also known as "Philip A. Kenner" ("Kenner"), and Tommy C. Constantine ("Constantine") (collectively, "defendants") to: (1) forfeit the previously restrained resort in Diamante Cabo San Lucas ("DCSL"), property located in Hawaii (the "Sugar Mill property"), and a Falcon 10 airplane (collectively "the Forfeitable Assets"); and (2) impose money judgments in the amount of $36,739,048.59, representing the proceeds of wire fraud and conspiracy to commit wire fraud, and the amount involved in or traceable to defendants' money laundering conspiracy.

In his opposition to the government's motion for entry of an order of forfeiture, Constantine does not challenge the government's evidence showing the nexus between the Forfeitable Assets and the crimes of conviction.  Instead, Constantine opposes only the amount of the forfeiture money judgment sought by the government by relying primarily upon *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), a Supreme Court decision issued after the government filed the Government's Memorandum of Law in Support of Entry of an Order of Forfeiture, on October 7, 2016, Docket Entry ("DE") 401 (the "Government's Initial Memorandum").[1]  *See* Constantine's Memorandum of Law in Response to the Government's Motion for Entry of an Order of Forfeiture, dated December 10, 2018 ("Constantine Opposition"), DE 599.

However, as discussed herein, Constantine's arguments are misplaced because *Honeycutt* addressed forfeiture pursuant to the proceeds provision of the narcotics forfeiture statute, 21 U.S.C.

---

[1] On December 14, 2018, Constantine filed a letter with the Court requesting to "join in the arguments raised by [Kenner] in his opposition to the government's Forfeiture Motion to extent [sic] those arguments are applicable to him."  DE 604.  However, Constantine's request should be denied as an impermissible attempt to supplement his opposition after the filing deadline.

1

§ 853(a), whereas the forfeiture in this case is governed by, *inter alia*, 18 U.S.C. § 982(a)(1), the forfeiture statute for property involved in money laundering crimes, which is a much broader forfeiture statute.[2]

Meanwhile, in his 217-page memorandum of law in opposition, Kenner improperly attempts to re-litigate the criminal trial and otherwise fails to demonstrate that the judgment amount sought by the government is not legally justified.[3]  *See* Kenner's Forfeiture Reply, dated September 10, 2018 ("Kenner's Opposition"), DE 579.

For the reasons set forth herein, as well as those set forth in the Government's Initial Memorandum, the government has met its burden of demonstrating the requisite nexus between the crimes of conviction and the Forfeitable Assets as well as the requested money judgments.

---

[2] On December 26, 2018, the Court granted the government's request to bifurcate its reply memorandum of law to first address the relevance of *Honeycutt* to this case; should the Court determine that *Honeycutt* limits the forfeiture money judgments sought against defendants, the government reserves the right to obtain its own expert witness, engage in further discovery, and present additional evidence relevant to the tracing that would be required under *Honeycutt*. DE 605.

[3] Kenner's 217-page opposition is, at times, rambling and incomprehensible.  The government has endeavored to address Kenner's arguments that appear to relate to the forfeiture proceedings.  To the extent the government has inadvertently not responded to a cogent forfeiture argument on which the Court seeks elucidation, the government respectfully requests the opportunity to supplement its response either in writing or at oral argument.  In addition, a supplemental *pro se* submission was provided to the government by Kenner's stand-by counsel on or about January 7, 2019; however, the disc provided to the government was blank.  To date, the government has not been provided with a replacement disc, and, thus, is unable to address the contents of the submission to the extent they are relevant to the instant forfeiture motion.  Accordingly, the government respectfully requests the opportunity to respond to the submission, either in writing or at oral argument, if necessary.

**ARGUMENT**

I.      **Section 982's Text Demonstrates that Money Laundering Forfeitures Are Not Limited to the Proceeds that the Defendant Obtained**

In determining the scope of forfeiture, this Court must employ the Supreme Court's approach in *Honeycutt* of looking to the language of the specific forfeiture statute at issue.  In *Honeycutt*, the Supreme Court held that 21 U.S.C. § 853(a)(1), the narcotics forfeiture statute, does not authorize the imposition of a forfeiture money judgment on a defendant jointly and severally with his co-conspirators for all proceeds obtained by the narcotics conspiracy.  137 S. Ct. at 1632-33.  Section 853(a)(1), by its terms, limits forfeiture to property that "*the* [convicted] *person obtained*, directly or indirectly, as the result of" the crime for which he was convicted.  21 U.S.C. § 853(a)(1) (emphasis added).  The Supreme Court held that this language clearly limits Section 853(a)(1) forfeiture to proceeds that the defendant personally "obtained" and, thus, precludes joint and several liability.  *Honeycutt*, 137 S. Ct. at 1632-33.

The language of Section 853(a)(1), however, differs significantly from the language of the forfeiture statute that applies to the defendants' money laundering conspiracy offense in this case, 18 U.S.C. § 982(a)(1).  Specifically, Section 982(a)(1) provides: "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, *involved in such offense*, or any property traceable to such property."  (emphasis added).  Unlike Section 853(a)(1), Section 982(a)(1) contains no language that limits forfeiture to proceeds that the defendant personally obtained.  *See United States v. Alquza,* 722 F. App'x 348, 349 (4th Cir. 2018) (recognizing that *Honeycutt* has no application to § 982(a)(1) forfeitures).[4]

---

[4] Notably, defendants do not cite any case that holds that *Honeycutt* applies to Section 982(a)(1).  *See* Kenner Opposition at pp. 33-35; Constantine Opposition at pp. 2-7.  Although

3

The Supreme Court reasoned that Section 853(a)(1)'s language defining forfeitable property as property that the defendant "obtained," *i.e.*, "personal[ly] possess[ed] or use[d]," supported its holding that Section 853(a) forfeitures foreclosed joint and several liability for the reasonably foreseeable proceeds acquired by a defendant's co-conspirators. *Honeycutt*, 137 S. Ct. at 1632. The absence of that language in Section 982(a)(1) is therefore significant. In contrast to "obtained," Section 982(a)(1)'s broader phrase "involved in" does not connote personal possession or use. Furthermore, rather than defining forfeitable property with reference to a particular "person," Section 982(a)(1) references the entire "offense." *See United States v. Bermudez*, 413 F.3d 304, 306 (2d Cir. 2005) (because Section 982(a)(1) requires forfeiture of funds "involved in the offense," rejecting argument that forfeiture is limited to proceeds that the defendant obtained); *United States v. Reiner*, 397 F. Supp. 2d 101, 112 (D. Me. 2005) (Section 982(a)(1) forfeiture "is not limited to amounts 'obtained by' the defendant" and extends to the funds the defendant conspired to launder).

As discussed in Section II(C) of the Government's Initial Memorandum, "[m]oney laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture . . . , because it applies to more than just the laundered property or proceeds from the laundered property." *United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012), *aff'd*, 574 F. App'x 541 (6th Cir. 2014). In contrast to proceeds forfeiture, "[m]oney laundering forfeiture is required for all property 'involved in' the crime." *Id.* "The term 'involved in' has

---

Constantine cites the district court decision in *United States v. Alquza*, 2017 WL 4451146 (W.D. N.C. Sept. 21, 2017), to support his argument that no courts have rendered an opinion on whether *Honeycutt* applies to Section 982(a)(1), *see* Constantine Opposition at p. 3, he fails to acknowledge that the Fourth Circuit, in affirming the district court's forfeiture order holding the defendant liable for all property involved in the money laundering offense, plainly stated that *Honeycutt* does not apply to Section 982(a)(1). *See Alquza,* 722 F. App'x at 349.

consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the money laundering offense." *United States v. Schlesinger*, 396 F. Supp. 2d 267, 271-72 (E.D.N.Y. 2005), *aff'd*, 514 F.3d 277 (2d Cir. 2008); *see also United States v. Nicolo*, 597 F. Supp. 2d 342, 347-48 (W.D.N.Y. 2009).  Thus, the forfeiture under Section 853(a)(1) in a drug conspiracy context, which is limited to the proceeds actually obtained by the defendant, differs from the forfeiture in a money laundering context, where a defendant is required to forfeit all of the property "involved in" the money laundering crime, which is far more than mere proceeds.  *See United States v. Huber*, 404 F.3d 1047, 1056 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money-laundering case allows the Government to obtain a money judgment representing the value of all property 'involved in' the offense, including the money or other property being laundered (the corpus), and any other property used to facilitate the laundering offense"; in a conspiracy case, the corpus is the funds the defendant conspired to launder (citation and internal quotation marks omitted)); *Nicolo*, 597 F. Supp. 2d at 351 ("The corpus of a money-laundering conspiracy is the funds that the defendant conspired to launder.  Any funds that [defendant] conspired to launder, then, are subject to forfeiture, as are any funds that 'facilitated' his money laundering offenses" (citation and internal quotation marks omitted)).  The properties and funds that form the basis for the requested money judgment in this case were properties "involved in" defendants' money laundering conspiracy, as discussed more fully in Section III(B) of the Government's Initial Memorandum.

Subsection (b) of Section 982 supports the plain reading that money laundering forfeitures extend beyond the funds that a particular defendant obtained.  Subsection (b)(1) provides in part that the substitute asset provisions of Section 853(p) apply to Section 982(a)(1) forfeitures.  In *Honeycutt*, the Supreme Court interpreted Section 853(p) as reinforcing its conclusion that Section

853(a) did not permit imposing on a defendant joint and several liability for all the funds attributable to a drug conspiracy.  But in doing so, it relied on Section 853(p)'s reference to the "property described in subsection (a) [of Section 853]," *i.e.*, the forfeitable property described in the substantive forfeiture provision, leading the Court to conclude that Section 853(p) "authorized the Government to confiscate [substitute] assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation."  137 S. Ct. at 1634 ("[The substitute asset]  provision begins from the premise that the defendant once possessed tainted property as 'described in subsection (a),' and provides a means for the Government to recoup the value of the property if it has been dissipated or otherwise disposed of by 'any act or omission of the defendant.'" (internal citations omitted)).   Although Section 982(b)(1) incorporates Section 853(p)'s procedures for obtaining substitute assets, it does not incorporate Section 853(p)'s limitation to forfeiture of "any property described in subsection (a) [of Section 853]."  That would be nonsensical.  *Bermudez*, 413 F.3d at 306 ("The 'proceeds' limitation of § 853(a)(1) has no logical connection to § 982(a)(1) forfeitures.").  Rather, "in the money-laundering context, § 853(p) defines what assets may be substituted for assets forfeitable under § 982(a)(1)," which are the funds "involved in [the] offense."  *Bermudez*, 413 F.3d at 306.  Therefore, for purposes of Section 982(a)(1) forfeitures, Section 982(b)(1)'s reference to Section 853(p)'s substitute asset provisions does not support imposing *Honeycutt's* limitation of forfeitures to funds that a defendant obtained.

Subsection (b)(2) of Section 982 provides an even clearer indication that *Honeycutt* does not dictate the same result in a Section 982(a)(1) "involved in" property forfeiture involving a mastermind money launderer as it does in a Section 853(a) proceeds forfeiture.  Section 982(b)(2) provides a safe harbor for certain low-level money launderers, stating in part that the substitute

asset provisions cannot be used to order a defendant to forfeit untainted property "where such defendant acted merely as an intermediary who handled but did not retain the property." 18 U.S.C. § 982(b)(2).  Section 982(b)(2) qualifies that exception by further providing that it does not apply if the defendant "conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period."  *Id.*  Congress would have had no need to enact a provision protecting certain low-level intermediaries from the forfeiture of substitute property for the tainted funds they merely "handled but did not retain," if those money launderers in the first instance were not liable for forfeiture of funds beyond those they personally acquired and retained.  Moreover, the fact that Congress limited that exclusion from the substitute asset provisions to those money launderers who had not "conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period" confirms that Congress intended money launderers falling outside that narrow category to have broad liability for forfeiture of untainted funds if the tainted funds could not be recovered.  *See Bermudez*, 413 F.3d at 306-07 ("§ 982(b) provides for the forfeiture of substitute assets for certain intermediaries who launder large amounts of property" even though such forfeiture may be "extremely punitive and burdensome" (internal citation and quotation marks omitted)); *United States v. Hendrickson*, 22 F.3d 170, 175-76 (7th Cir. 1994) (same).

In this case, the defendants were not mere intermediaries as they retained the property they laundered.  *See, e.g.*, Memorandum and Order, dated October 13, 2017 ("Rule 33 Decision") at p. 52 ("[T]he Hawaii Project evidence showed a long-running and multi-faceted scheme in which Constantine played an integral role by (1) siphoning funds intended to finance that development; (2) manufacturing a fraudulent pretext for those payments; and (3) securing additional funding for the Hawaii Project via loan proceeds that he subsequently diverted to his and Kenner's benefit.");

7

p. 53 ("As with the Hawaii Project, the evidence at trial demonstrated that Constantine routinely siphoned Eufora investments to cover his personal expenses.").   Moreover, even if the Court were to find that defendants were mere intermediaries, the evidence indisputably demonstrates that neither defendant is entitled to Section 982(b)(2)'s safe-harbor provision because each defendant conducted at least three transactions totaling $100,000 or more in a twelve-month period.[5]

Notably, while the Supreme Court in *Honeycutt* reasoned that it would be unfair to impose a large money judgment representing "the entire amount of the conspiracy's proceeds" against a low level co-conspirator who did not financially benefit from the crime, in this case, no such concern is implicated because both defendants were the "masterminds" of their money laundering conspiracy and each personally obtained significant financial benefit from their crimes. *Honeycutt*, 137 S. Ct. at 1631-32.[6]   In fact, the Supreme Court's concern with imposing a large

---

[5] *See, e.g.*, Government Exhibit at Criminal Phase of Trial 1751 (On January 26, 2005, Kenner wired $270,000 from his GDM account to Constantine's Constantine Management Group, LTD account (the "CMG Account"); on July 21, 2005, Kenner wired $300,000 from the Ula Makika account to the CMG account; on July 22, 2005, Kenner wired $350,000 from the Ula Makika account to the CMG account;  on August 10, 2005, a check in the amount of $718,970 that was paid to Stewart Title by Constantine from the CMG Account cleared); Forfeiture Exhibit 69 (On January 27, 2006, Constantine wrote two separate checks from the CMG Account, each in the amount of $100,000, to Stewart Title for the purchase of the Palms Units).

[6] Just as defendants were the masterminds of their money laundering conspiracy, they were the masterminds of their wire fraud conspiracy and directly or indirectly obtained the proceeds of the wire fraud conspiracy.  As such, defendants are individually liable to forfeit the full amount of the proceeds of the wire fraud conspiracy under 18 U.S.C. § 981(a)(1)(C), and there is no need to hold them jointly and severally liable for same.  *See United States v. Ward*, 2017 WL 4051753, at *3 (W.D. Mich. Aug. 24, 2017) (holding post-*Honeycutt* that because the defendant was the mastermind of the drug conspiracy, he indirectly obtained the proceeds of the whole conspiracy; "Although the Government did not establish that Defendant directly obtained the [full amount of the conspiracy's proceeds], the statute does not require the Government to do so."), *report and recommendation adopted*, 2017 WL 3981160 (W.D. Mich. Sept. 11, 2017). Furthermore, although the defendants can be held jointly and severally liable for the property involved in their money laundering conspiracy because they meet the exception set forth in Section 982(b)(2), the joint and several liability language is superfluous given that each

money judgment on a low level co-conspirator who did not receive significant financial benefit from the crime is addressed by Section 982(b)(2)'s safe-harbor provision, which protects certain low-level intermediaries from the forfeiture of substitute funds for the tainted funds they did not retain.

## II.       Section 982's Legislative History Confirms the Statute's Plain Text

The legislative history of Section 982 underscores the plain reading of Section 982(a)(1) to permit forfeiture of funds that the money launderer did not obtain.  When Section 982 was enacted in 1986, it provided for the forfeiture of "gross receipts the person obtained" from the offense "or which is traceable to such gross receipts."  Pub. L. No. 99-570, § 1366, 100 Stat. 3207-39 (1986).  According to the Senate Report accompanying the legislation, "gross receipts" meant "only the commission earned by the money launderer . . . , and not the corpus laundered itself."  S. Rep. No. 99-433 at 23 (1986).

In 1988, the statute was amended to substitute the language, which is still in effect today, requiring a defendant to forfeit the funds "involved in [the] offense" or "property traceable to such property."  Pub. L. No. 100-690, § 6343, 102 Stat. 4181, 4374 (1988).  Congress enacted the broader language to ensure that forfeiture would encompass "the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense."  Cong. Rec. S17360, 17365 (daily ed. Nov. 10, 1988) (statement of Senator Biden: section-by section analysis by drafter of H. 5210, predecessor bill to 1988 law); *see United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997).

---

defendant who meets the exception is individually liable to forfeit an amount equivalent to *all* of the property "involved in" the money laundering.  Accordingly, because the imposition of joint and several liability is unnecessary in this case, the government has excluded it in the attached revised forfeiture orders.  *See* revised draft Preliminary Orders of Forfeiture attached hereto as Exhibit A.

Also in 1988, Congress both made the substitute asset provisions apply to money laundering forfeitures and enacted the first clause of Section 982(b)(2), thereby protecting the "intermediary" money launderer from having to forfeit substitute assets in place of the laundered funds. Pub. L. No. 100-690, § 6464, 102 Stat. 4375. According to Senator Biden's statement, "Without this provision, it might be permissible for a court to order a person who violated a money laundering statute by converting a million dollars to some other form on behalf of another party, to forfeit substitute assets worth a million dollars, even though the launderer had retained only a small portion of the corpus as his fee, and had transferred the remainder of the corpus back to the other party, or his designee." Cong. Rec. S17365. Senator Biden continued, "Such a result would appear to be unduly harsh." *Id*.

In 1990, Congress amended Section 982(b)(2) to narrow the intermediary exception, adding the language that allows the substitute asset provisions to apply if "the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period." Pub. L. No. 101-647, Tit. XIV, § 1403, 104 Stat. 4789, 4835 (1990). In the section-by-section analysis of a predecessor bill (S. 2652), Senator Dole explained that the intermediary exception "should be narrowed to reflect its true intent, which was to protect the low-level or occasional participant in a money laundering offense, such as a 'smurf' who carries his employer's money to a bank but retains none of it for himself, from forfeiture of money over which he never exercised exclusive control." Cong. Rec. S6606 (daily ed. May 18, 1990). Senator Dole explained that the exception "was not intended to preclude forfeiture of substitute assets from a professional money launderer who moves hundreds of thousands of dollars through various businesses and accounts on behalf of other criminals engaged in drug trafficking or other specified unlawful activity." *Id.*

10

Accordingly, "[t]he amendment would qualify the 1988 exception by providing that substitute assets will be forfeited even by an intermediary who does not retain the laundered property if that person participates in three or more transactions involving $100,000 or more in a twelve-month period." *Id.* Senator Dole concluded, "Such a person is clearly a professional money launderer who is not deserving of the forfeiture exemption." *Id.*

The legislative history confirms Section 982's plain text. Section 982(b)(2)'s safe-harbor provision was considered necessary because, in its absence, a money launderer would have been liable for forfeiting substitute assets even for funds she had merely "handled but did not retain." Congress then determined that the "professional money launderer" did not merit that safe harbor and limited it accordingly, making clear its intent that a money laundering forfeiture under Section 982(a)(1) encompasses "forfeiture of substitute assets from a professional money launderer who moves hundreds of thousands of dollars" for criminals including drug traffickers, Cong. Rec. S6606, even if the money launderer did not retain the funds.

In sum, the Court should reject the defendants' misplaced attempt to extend the Supreme Court's limited holding in *Honeycutt* to the money laundering forfeiture in this case, as it would nullify the broad forfeiture authority in the plain text of Section 982(a)(1) that is intended to punish mastermind and professional money launderers, such as the defendants, and undermine the deterrent effect that was intended by Congress in enacting the money laundering statutes.

### III. Defendants' Remaining Arguments Lack Merit or Are Otherwise Irrelevant to the Forfeiture Issues Sub Judice

#### A. Kenner's Arguments Concerning the Evidence as to the Amount He Must Forfeit Lack Merit

As he is unable to make any arguments or produce any evidence to support his claim that the government's forfeiture calculation is unreasonable, Kenner instead seeks to challenge the

evidence that resulted in his conviction.  However, the forfeiture phase does not afford the defendant an opportunity to challenge or re-evaluate the legal sufficiency of the evidence of his guilt.  *See United States v. Warshak*, 631 F.3d 266, 330-31 (6th Cir. 2010) (affirming district court's refusal to let defendant introduce evidence tending to show his conduct was not illegal; in the forfeiture phase of the trial, the legality of the conduct is no longer at issue; the only question is whether there is a nexus between the conduct and the offense); *United States v. Harris*, 2018 WL 6184878, at *3 (D. Haw. Nov. 27, 2018) (rejecting the defendant's attempt "to recall witnesses and challenge the evidence that the jury relied upon in finding Defendant guilty").

In addition, Kenner arguments, repeated throughout his opposition, which attempt to recharacterize the money diverted from the Hawaii project to Mexico as loans, rather than fraudulent and unlawful diversions of investor funds, are irrelevant because Kenner did not have permission to use the investors funds for any purpose other than the development of the Hawaii project.  *See, e.g.*, Tr. 393-397, 703-704 (Pecas testifying that line of credit money was to be used for Hawaii, not loan to Mexico); GX 505.3 (Pecas "never would have done it, if we knew money was going to be loaned anywhere or used for anything other than what we were told, which was Hawaii"); Tr. 2723-2724 (Rucchin) (same); Tr. 4847 (Gonchar) (same).  Indeed, the Court has already rejected these same arguments in its decision on Kenner's Rule 33 motion.  *See, e.g.*, p. 85 of Memorandum and Order, dated October 13, 2017 ("Rule 33 Decision") (finding that the investors' line of credit records "do not demonstrate that the investors permitted Kenner to transfer their money to Jowdy-led developments in Mexico or to Constantine and CMG"); Rule 33 Decision, p. 92 n.38 ("[T]he Court will not explore Kenner's repeated argument that the government knew that Jowdy stole Hawaii Project funds that were loaned to him.  As previously discussed, it is immaterial whether Kenner transferred money to Jowdy via a loan or some other

12

arrangement because witness after witness testified that they never authorized their Hawaii Project investments to go to Jowdy at all.").  Although Kenner provides some argument that *Honeycutt* limits the forfeiture money judgment the government seeks, *see* Kenner Opposition at pp. 28-38, his and Constantine's arguments on this point are misplaced, as discussed more fully above.

> **B.    Kenner's Arguments Concerning Lehtinen's and Stumpel's Investments Do Not Affect the Forfeitability of the Diamante Cabo San Lucas Resort and Baja Ventures 2006, LLC**

Kenner maintains, in sum and substance, that Baja Ventures 2006 is owned by Kenner, Jere Lehtinen ("Lehtinen") and Josef Stumpel ("Stumpel").  *See* Kenner Opposition at pp. 7, 121. Kenner claims that "100% of the Baja Ventures 2006 capital account funds came from Stumpel and Lehtinen . . . [and] there is no equivocation about the clean, non-commingled sources of the Baja Ventures 2006 funds."  *Id.* at p. 8.  Thus, Kenner argues that the Court should reject the forfeiture of Baja Ventures 2006, LLC ("Baja Ventures").  *Id.* at p.152.  However, Kenner fails to cite to any evidence to support his arguments, and, notably, fails to provide any details as to the bank accounts, types of transactions, and amount of funds that were involved in the transactions he claims occurred.

Even assuming, *arguendo*, that Kenner is correct about the "clean" funding of Baja Ventures 2006, the Diamante Cabo San Lucas resort ("DCSL"), including Baja Ventures' ownership interest in it, is nevertheless forfeitable because DCSL is traceable to the proceeds of defendants' wire fraud and was involved in and is traceable to defendants' laundering of the fraud proceeds.  Indeed, the government has provided ample evidence that Kenner laundered money intended for the Hawaii investments, including stolen line of credit money and stolen Centrum Loan funds, and other investments, as well as borrowed money, to bank accounts controlled by Kenneth Jowdy ("Jowdy") in order to fund both his and Jowdy's personal interests in DCSL.  *See* Government's Initial Memorandum at pp. 20-27.  Kenner commingled these tainted funds with his

13

clients' investments in DCSL in order to conceal his diversion of client funds. *Id.* In addition, Kenner induced his clients to invest in DCSL while concealing that a portion of these funds would be diverted to Kenner's and Constantine's personal accounts, as well as the disproportionately small ownership interests the clients would receive in DCSL at closing. *Id.* Accordingly, all right, title and interest in DCSL is forfeitable. *See United States v. Schlesinger*, 396 F. Supp. 2d at 272-73 (holding that a factory and the property that housed it were forfeitable as property that facilitated money laundering where defendants used the factory "to steal money from insurance companies by submitting fraudulent insurance claims for damages due to fires that occurred at the premises" and then laundered the proceeds through business accounts to, among other things, pay the taxes for the property), *aff'd,* 261 F. App'x 355 (2d Cir. 2008); *United States v. Sherman*, 262 F.3d 784, 794-95 (8th Cir. 2001) (if real property is used to facilitate an offense, forfeiture of the entire parcel is appropriate).

Furthermore, even accepting Kenner's contentions that Baja Ventures' capital accounts were funded with untainted funds, Baja Ventures is nonetheless forfeitable as property that facilitated the money laundering by providing a means to purchase, and conceal Kenner's ownership interest in, DCSL. *See* Government's Initial Memorandum at pp. 20-23; *see also In re 650 Fifth Ave.*, 777 F. Supp. 2d 529, 567 (S.D.N.Y. 2011) (recognizing that a court can order the forfeiture of a business entity that was used to conceal ownership of property that was involved in money laundering).

### C.     Kenner's Arguments Regarding Restitution and Loss Amount Are Inappropriately Raised in the Instant Forfeiture Briefing

Throughout his opposition, Kenner frequently refers to restitution and loss amount. *See, e.g.*, Kenner Opposition at pp. 57-59, 66-67, 72-88. However, because the instant forfeiture briefing does not concern the issues of restitution and loss amount, the government will not respond

to Kenner's arguments on those points in the instant reply memorandum.

### D.   The Proposed Forfeiture Is Not Excessive Under the Eighth Amendment

Kenner suggests that the forfeiture of Baja Ventures would be excessive under the Eighth Amendment.  *See* Kenner Opposition at pp. 26, 38.  Although Constantine does not address the constitutionality of the proposed forfeiture, the government submits that the proposed forfeiture as to both Kenner and Constantine is not excessive.

In *United States v. Bajakajian*, the Supreme Court held that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  524 U.S. 321, 334 (1998).  The Supreme Court placed the burden upon the defendant challenging the forfeiture to demonstrate that the amount of forfeiture sought violates the Excessive Fines Clause. *Id*. at 348; *United States v. Ahmad*, 213 F.3d 805, 815-16 (4th Cir. 2000) (burden is upon the defendant to demonstrate excessiveness).   In *Bajakajian*, the Supreme Court considered a gross disproportionality standard with respect to the proper amount of forfeiture.  The Supreme Court found that "the essence of [Bajakajian's] crime is a willful failure to report the removal of currency from the United States." *Bajakajian*, 524 U.S. at 337.  However, the Supreme Court concluded that forfeiture of the entire amount of unreported currency was excessive because Bajakajian committed a one-time, reporting violation; the money was not the proceeds of other illegal activity; and he was not a "money launderer, a drug trafficker, or a tax evader."  *Id*. at 337-38.

"A forfeiture is unconstitutionally excessive if it is grossly disproportional to the gravity of a defendant's offense.  *Id.* at 334.  Although *Bajakajian* did not provide a test for gross disproportionality, the Second Circuit has interpreted *Bajakajian* as requiring courts to consider four factors: "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally

designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *United States v. Viloski*, 814 F.3d 104, 110 (2d Cir. 2016).

Here, with regard to the first factor,  Kenner's and Constantine's "willful participation" in "a multi-year conspiracy involving repeated instances of money laundering, mail fraud, wire fraud, and related offenses . . . is sufficient to support the forfeiture." *Id*. at 113.  As to the second factor, Kenner's and Constantine's conduct fits "squarely within the class of persons for whom the federal mail- and wire-fraud and money-laundering statutes were designed—namely, those who use facilities of interstate or foreign commerce to engage in fraudulent schemes and financial transactions and then seek to conceal or disguise the nature of the proceeds of the fraud." *Id*. at 114.  As to the third factor, as opposed to *Bajakajian*'s one time offense, money laundering is a serious crime, which was specifically noted by the Supreme Court in *Bajakajian*. *Id*. at 338.  The fourth factor addresses the nature of the harm caused by the defendant's conduct.  Here, Kenner and Constantine defrauded multiple investors of millions of dollars through their money laundering and wire fraud crimes.  In sum, all four *Bajakajian* factors support the proposed forfeiture.[7]

Moreover, the government has taken a reasonable and conservative approach in its calculation of the money judgment, and has provided offsets to prevent double counting.  S*ee* Government's Initial Memorandum at pp. 28, 45 n.7.  *See United States v. Walters*, 910 F.3d 11, 31 (2d Cir. 2018) (The method of calculation need only be a " 'reasonable estimate of the [amount],

---

[7] The Second Circuit also held that "[c]ourts should not consider a defendant's personal circumstances—such as age, health, or present financial condition—when making a proportionality determination, except insofar as they are relevant to determining whether a forfeiture would deprive a defendant of his livelihood." *Viloski*, 814 F. 3d 115.  Here, neither defendant allege any personal factors that would affect a proportionality determination.

given the available information' " (quoting *United States v. Vilar*, 729 F.3d 62, 95-96 (2d Cir. 2013)).  Despite the fact that the government could have sought the forfeiture of the same property twice, once as property involved in money laundering and once as wire fraud proceeds, the government did not do so in this case.  *See United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008) (affirming District Court order forfeiting "certain funds twice—once as proceeds of mail and wire fraud and once as property involved in money laundering," because the "two offenses impact[] two distinct sets of victims"; "The 'victims' of fraud counts are those persons who have lost money or property as a direct result of the fraud.  The 'victim' of money laundering is, by contrast, ordinarily society at large." (internal citations and quotation marks omitted)).  Accordingly, the forfeiture money judgments sought by the government are legally acceptable.

### E.    The Court Lacks Authority to Grant Constantine's Request That Forfeited Funds Be Applied to Restitution

Lastly, while Constantine does not oppose the forfeiture of the Forfeitable Assets, he requests that the Forfeitable Assets "be disposed [of] in a manner that causes the victims of the crimes of conviction to obtain remuneration, the amount of this remuneration should be deducted from the restitution obligation that will be imposed by the Court as part of his sentence."  Constantine Opposition at p. 7.  However, Constantine's request should be denied as the Court lacks authority to grant such a request.  *United States v. Pratt*, 2018 WL 2871840, at *4 (E.D.N.Y. June 11, 2018) (Court lacks authority to order government to apply forfeited funds to restitution ordered as part of defendant's criminal sentence, therefore motion seeking such relief is denied) *United States v. Broadbent*, 225 F. Supp. 3d 239, 242 (S.D.N.Y. 2016) ("[D]istrict courts must set forfeiture and restitution amounts independently . . . and may not order the government to credit one against the other . . . .  Rather, the decision to remit forfeited funds to victims as restitution remains in the government's sole discretion."); *United States v. Cohan*, 988 F. Supp. 2d 323, 329

(E.D.N.Y. 2013) (the court lacks the authority to order the Attorney General to apply forfeited funds to restitution), *aff'd*, 798 F.3d 84 (2d Cir. 2015).

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that each of the Forfeitable Assets is subject to forfeiture as property traceable to defendants' wire fraud and conspiracy to commit wire fraud violations, and as property involved in or traceable to defendants' money laundering conspiracy, and that defendants are each liable for a money judgment in the amount of $36,739,048.59 representing the balance of the proceeds of defendants' wire fraud and conspiracy to commit wire fraud violations, as well as the value of the funds that are traceable to defendants' wire fraud and conspiracy to commit wire fraud violations, and that were involved in or are traceable to defendants' money laundering conspiracy, in addition to such other and further relief as the Court deems just and proper.

Dated: Central Islip, New York
       January 11, 2019

                              Respectfully submitted,

                              RICHARD P. DONOGHUE
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              610 Federal Plaza
                              Central Islip, New York 11722


                               /s/ Madeline O'Connor
                              MADELINE O'CONNOR
                              DIANE LEONARDO
                              Assistant United States Attorneys
                              (631) 715-7870
                              (631) 715-7854