

Thomas McC. Souther
Telephone: (646) 558-6052
souther@freehsporkinsullivan.com

Thomas McC. Souther
Freeh Sporkin & Sullivan, LLP
350 Fifth Avenue
Suite 6903
New York, New York 10118

January 30, 2019

**BY ECF**

The Honorable Joseph F. Bianco
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:   United States of America v. Kenner, et al, Cr. No. 13-607 (JFB)

Dear Judge Bianco:

      Kevin P. Mulry of Farrell Fritz, P.C. and I represent Diamante Cabo San Lucas, LLC ("DCSL"), Diamante Cabo San Lucas S. de R.L. de C.V. ("Diamante SRLCV"), KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy (together, the "DCSL Parties") in connection with the forfeiture proceeding in this case.  I respectfully submit this letter in response to the Government's request for preliminary orders of forfeiture against defendants Phillip A. Kenner ("Kenner") and Tommy C. Constantine ("Constantine").

**The Government broadly seeks to forfeit an entire resort development**
**in Mexico, including substantial interests of persons other than Kenner.**

      The Government seeks to forfeit an entire resort development in Mexico, known as Diamante Cabo San Lucas (the "Resort" or the "Property"), because it asserts that one investor, Kenner, used proceeds of his criminal activity to purchase his interest in the project in 2006. Kenner's interests, at most, include his interest in Baja Ventures 2006, LLC and a small percentage interest in Diamante Properties, LLC.  Significantly, Kenner has no interest in—and the Government does not contend he has any interest in—KAJ Holdings, CSL Properties 2006, LLC, or Somerset Properties, LLC, other entities that have an interest in DCSL and the Resort.

1

**The funds invested in the Resort since 2006 dwarf the funds invested by Kenner.**

The Resort is a world class, master planned, golf resort community being developed on approximately 1500 acres located on the coast of the Pacific Ocean approximately five miles north of downtown Cabo San Lucas, Mexico. The Property was purchased on March 10, 2006 at a purchase price of $72,825,883.00 (the "Purchase Price") by paying (i) deposits to the Seller in installments totaling $6,625,000.00 (the "down payment") before closing; and (ii) the balance of the Purchase Price and closing costs using a portion of the proceeds of a $125,000,000.00 acquisition and development loan from Lehman Brothers Holdings Inc. ("Lehman"), the original lender with whom the DCSL Parties were working at the time of the closing in 2006. The Property is owned by a Mexican Guaranty Trust pursuant to which the lender, originally Lehman but currently Danske Bank A/S, London Branch ("Danske"), is the First Place Beneficiary, and the designated developer and Second Place Beneficiary is Diamante SRLCV. DCSL owns 99% of the ownership interests in Diamante SRLCV, and the remaining 1% of Diamante SRLCV is owned by Mr. Jowdy.

Notably, the Resort was named to the list of "2015 Platinum Clubs of the World", and since its debut, the Resort's "Dunes Course" designed by Davis Love III has won broad acclaim, rated 38th best golf course in the world by Golf Magazine and selected as the top ranked golf course in all of Mexico and Latin America. In 2016, Golf Digest named the Dunes Course the #1 Golf Course in Mexico. In December 2014, Diamante also debuted "El Cardonal," the first golf course designed by Tiger Woods and constructed and opened for play in the world.[1]

The development is currently meeting its Residence Club time share and real estate sales targets for the 2018/2019 season, and contrary to the Government's unsupported claim in its request for the Post-Conviction Protective Order in 2015 (the "Restraining Order"), the Resort has been exceedingly well managed by its General Administrator, Mr. Jowdy. In fact, Danske, the current lender under the Guaranty Trust has repeatedly reiterated its confidence in Mr. Jowdy's management of the Resort in meetings and filings with the Government and in the Court on several occasions.

As the result of a sale by the Resort of an oceanfront parcel (of approximately eighty-five acres) to a hotel developer for $40,000,000.00 in 2015, the DCSL Parties and the residents and members at the Resort have been anticipating with enthusiasm the opening of a "Hard Rock" hotel (approximately 650 hotel keys) and a "Nobu" hotel (approximately 200 hotel keys) by the hotel developer in the spring of 2019.

---

[1] In December 2016, the DCSL Parties filed an application seeking modification of the Post-Conviction Protective Order and approval of certain transactions, and in opposition to the Government's request for site access and information beyond the scope of the protective order. A detailed Declaration of Kenneth A. Jowdy, dated December 13, 2016 (the "Jowdy Declaration"), was submitted to the Court in connection with that application. The Jowdy Declaration contained a detailed historical background of the development of the Resort from its acquisition, through the many obstacles overcome by Mr. Jowdy over the course of a decade, including the campaign by defendant Kenner to unfairly malign Mr. Jowdy and wrongfully accuse Mr. Jowdy of misconduct. Although the Jowdy Declaration and an accompanying memorandum were filed with the Court in December 2016, neither document is reflected on the docket of this case. Accordingly, for the Court's convenience, a copy of the Jowdy Declaration is submitted with this letter as Exhibit A. The DCSL Parties respectfully request that the papers submitted on their application in December 2016, which were reviewed and considered by the Court, should be electronically filed on the docket.

2

Unfortunately, as a result of the Court's August 2015 Restraining Order, Diamante has been unable to sell any additional large parcels of land, the sale of which would have significantly helped to reduce the principal on the development project's total current committed loan of $129,400,000.00. The sale of oceanfront and other parcels of land to hotel and residential developers has been a key component of the DCSL Parties' strategy of quickly paying down principal on its loans and thus reducing the crushing principal and interest obligations to the lender.

**A forfeiture of interests in the Resort beyond those of Kenner would be unfair, unduly harsh, and punitive to the DCSL Parties and hundreds of innocent third parties.**

The DCSL Parties submit that it would be unfair, unduly harsh, and punitive to the DCSL Parties and the hundreds of innocent third parties with interests in the Resort, if the Court were to grant the Government's broad request that the Resort—and the interests of any third parties other than defendants—are deemed to be subject to forfeiture, even preliminarily. Hundreds of millions of dollars have been invested and reinvested in this project over the past twelve years by the DCSL Parties, the development's lender, Danske, property purchasers, and time share members, not to mention the more than a decade of work by thousands of individuals, all of which has no nexus whatsoever to the defendants or the crimes charged in this case. The relief sought by the Government is grossly disproportionate to the relationship, if any, between the Resort and Kenner's offenses of conviction.

**The Court should only forfeit Kenner's interest in Baja Ventures 2006, LLC and Diamante Properties, LLC.**

Rather than punishing the DCSL Parties and the other innocent third parties—including property purchasers, time share members, Danske, and even some of defendant Kenner's former clients who were investors in DCSL—by subjecting the DCSL Parties and all of these innocent parties to months or years of protracted discovery and ancillary proceedings, the DCSL Parties respectfully request that the Court limit its forfeiture order to directing the forfeiture of interests, if any, that the defendants hold in DCSL. The DCSL Parties believe that at most such interests include interests, if any, that defendant Kenner holds in Baja Ventures 2006, LLC, and a small percentage interest that Kenner may hold in Diamante Properties, LLC.

The DCSL Parties are aware of no evidence that suggests that either defendant has ever had an interest in KAJ Holdings, LLC, CSL Properties 2006, LLC, or Somerset Properties, LLC. Indeed, Mr. Jowdy never agreed to borrow any of the funds used to fund any portion of the down payment from Kenner or anyone else personally. Mr. Jowdy's contribution for his interest was finding the property, finding financing for the purchase and pre-development costs, and managing the development of the property. All of these tasks have been fulfilled by Mr. Jowdy, and he continues to fulfill those responsibilities to this day.

**The Court should consider the collateral consequences of an overly broad forfeiture order.**

Since 2007, defendant Kenner has attempted to place the blame for his criminal activity on Mr. Jowdy and on others, while brazenly disparaging virtually all of Kenner's former clients, countless witnesses, attorneys (including his own), present and former government officials, and Mr.

3

Jowdy, all without any regard to the impact of his actions on the success or failure of the project. Moreover, Kenner's actions, coupled with the Government's overly broad forfeiture grab, demonstrate complete disregard for the collateral consequences that may result from entry of even a preliminary order of forfeiture that includes the entire Property or the DCSL Parties' interests. The practical implications and potentially adverse impact of such an order include the inevitable loss of the financial contributions or investments in the project by many of Kenner's former clients, not to mention any hope of a return on those investments, the uncertain potentially adverse financial impact on thousands of time share members, real estate purchasers and hotel developers, and the loss of jobs by some of the thousand or more employees currently working at the Resort. At a minimum, there is a heightened risk that the Resort will face the loss of key employees to competing properties in Cabo San Lucas that are not operating under a cloud of uncertainty that a preliminary order of forfeiture is likely to generate. There also is a significantly increased risk that the project may default on the Danske loan.

The stakes are far more complicated and incredibly high in this case than in a more traditional post-conviction forfeiture proceeding. Here, the Government is not attempting to seize a boat or a car, or a home or an undeveloped parcel of land. This Resort is a going concern that has achieved the current success that it has not only without the defendants having had any involvement for more than a decade, but in spite of the unlawful efforts by defendant Kenner to wrest control of the Resort from its rightful owners and managers. The Resort has sold approximately 173 real estate Lots, Villas or Units and has approximately 6725 time share members to date. Mr. Jowdy and his management team have worked tirelessly to keep the development of the Resort on track. However, marketing, sales, development, and operations all will have to continue successfully for at least six years, at the current pace of sales and operations, before any equity partner—including the Government, if it ends up with an equity stake through this forfeiture—should expect any return on investment. Unlike a simple forfeiture of cash or a vehicle or even a developed piece of property, the forfeiture of the Resort, a going concern, potentially gives rise to an immediate and almost insurmountable administrative challenge, as the project would have to be administered extra-territorially in Mexico, through the Guaranty Trust and subject to the rights of Danske as First Place Beneficiary, with the hope that none of the collateral consequences enumerated above would adversely affect the already fragile financial state of the Property.

The Resort has now been restrained for almost three and one-half years. An ancillary proceeding involving the DCSL Parties, Danske, CSL Properties 2006, LLC investors, Somerset Properties, LLC investors, real estate Lot, Villa and Unit owners, and time share members could last more years, particularly given the Government's seeming indifference to the rights of third parties whose property interests have been restrained. A preliminary order of forfeiture should be limited to the interest of the defendants in any properties.

**The language of the proposed preliminary order of forfeiture is unnecessarily and unduly broad and does not reference the existing restraints on the Resort.**

The language of the Government's proposed preliminary order of forfeiture is unnecessarily and unduly broad. Despite the fact that the Resort has been restrained since August 2015, and has been restrained throughout the length of the extended forfeiture proceedings, the proposed order at

paragraph 3 allows the Government to "seize the Forfeited Assets." At a minimum, this language, if adopted by the Court, will cause confusion and further harm to the Resort as it may incorrectly imply to third parties that the Resort has already been forfeited. At its most dangerous, such language could embolden the Government to take aggressive steps on the presumption that it already has the right to seize assets, including those in a foreign country.

The DCSL Parties respectfully submit that in the event any preliminary order of forfeiture is entered in which the Resort or any of the interests of the DCSL Parties are defined as Forfeited Assets, the order should not provide that such assets be "seized," and should provide that any request for a restraint beyond those in the existing Restraining Order must be made to the Court showing good cause and on notice to all interested parties.

## CONCLUSION

It is disheartening to the DCSL Parties that defendant Kenner continues to use this case as a forum in which to unfairly malign the DCSL Parties, including Mr. Jowdy, as evidenced by Kenner's most recent protracted, rambling *pro se* filings in this case. Kenner has been attempting to undermine the DCSL Parties' efforts to develop this project for more than ten years. Even now, more than three and one-half years after his conviction, he continues to engage in conduct that is potentially detrimental to the project. We urge the Court to put an end to this injustice.

The DCSL Parties and Mr. Jowdy respectfully request that the Court consider this letter highlighting the inherent inequity of the Government's overly broad request for a preliminary order of forfeiture of the Resort, of KAJ Holdings, LLC, of Diamante Properties, LLC (other than Kenner's interest in Diamante Properties, LLC), of CSL Properties 2006, LLC, and of Somerset Properties, LLC. The Court should deny the Government's request. Such a sweeping preliminary order of forfeiture likely would have a negative impact on the Resort and would seriously impair the prospect of the continued success of the development. Moreover, such an order would in all likelihood undermine the hope that any of Kenner's former clients who invested in the Diamante project would obtain any return on their investment, including the return of their original contribution, because of the project's inability to meet its loan obligations to Danske. Accordingly, the DCSL Parties ask the Court to consider limiting any forfeiture order, insofar as it may relate to the Resort or the ownership interests in the Resort, to the forfeiture and seizure of the defendants' interests, if any, in Baja Ventures 2006, LLC and Diamante Properties, LLC.

Thank you for the Court's consideration.

Respectfully submitted,

*/s/ Thomas McC. Souther*

Thomas McC. Souther

5

cc: All parties of record via ECF
      Doreen S. Martin, Esq. (By Email)
      Kevin P. Mulry, Esq. (By Email)