

ROCKEFELLER CENTER
1270 AVENUE OF THE AMERICAS
24TH FLOOR
NEW YORK, NY 10020
T 212.307.5500   F 212.307.5598   www.Venable.com

Doreen Martin

**T 212.983.1179**
**F 212.307.5598**
DSMartin@Venable.com

February 20, 2019

**BY ECF**

The Honorable Joseph F. Bianco
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> **Re:   United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco:

We write on behalf of Danske Bank A/S, London Branch ("Danske") in response to the government's February 11, 2019 letter ("Letter").

As set forth more fully below and in our prior letter, Danske disagrees with the government's statement that "the forfeiture it seeks . . . does not harm any potential third-party petitioner's interest in the forfeitable property." Letter at 2. Danske recognizes that the government has now indicated that it does not intend to seize the Resort upon the issuance of a Preliminary Order of Forfeiture and anticipates that the Protective Order will remain in full force and effect, and the operations of the Resort will remain in "status quo" pending resolution of the ancillary proceedings.   However, Danske's concerns remain given that the language in the proposed Preliminary Order of Forfeiture ("Proposed Order") directly contradicts the government's assertions.

As written, the Proposed Order permits the government to seize the Resort at any time. Danske firmly believes that the language in the Proposed Order will seriously jeopardize the ability of the Resort to continue to operate as a going concern. For instance, Danske is genuinely concerned that some or all employees, suppliers, customers, and owners at the Resort are likely to react in a manner which will be negative to value. Not only would this put up to 1,000 local employee jobs at risk but it would directly affect recovery prospects for all creditors, including the victims the government is seeking to protect. For any business to operate successfully, there needs to be clarity on daily management and Danske finds that the wording in the Proposed Order unequivocally removes any stability Danske has tried to bring to the development. The language in the Proposed Order could very well lead to employees seeking new employment, suppliers refusing to do business with the Resort or changing the terms of trade, and prospective buyers unwilling to purchase because their interest could be challenged. All these issues point to a real



The Honorable Joseph F. Bianco
February 20, 2019
Page 2

risk that the going concern nature of the Resort will be further threatened if any further uncertainty regarding the Resort is introduced.

It has been over three years since the Court issued the Protective Order in this action. The Protective Order and the uncertainty regarding potential forfeiture of the Resort has had a material downward effect on the value of the Resort. In those three years, both Danske and the developer have worked in difficult circumstances to try and preserve as much value in the development as possible to ensure recovery prospects are maximized. Most notably, Danske has worked with management to preserve value by waiving events of default, including agreeing to postpone scheduled loan amortization in excess of $25 million, in an effort to preserve value for all stakeholders. Without those forbearances by Danske, the Resort would not be a going concern. Anything that puts these forbearances at unnecessary risk should be avoided. As the Court recognized at a January 11, 2017 hearing concerning several issues before the Court at that time, Danske "has every incentive to ensure there is not dissipation of assets" because of its $180 million stake in the Resort. [January 11, 2017 Hearing Tr. at 10:9–14.] Thus, to the extent the Court issues a Preliminary Order of Forfeiture that includes the Resort, Danske respectfully requests that the Court include language making clear the government's assertions that it will not physically seize the property pending resolution of the ancillary proceedings.[1]

Finally, if the Court finds that the government has met its burden of proof in establishing that the Resort was "involved in the offense"[2], Danske is concerned that the specter of months or years of additional litigation in an ancillary proceeding will further dissipate the value of the Resort. Even after ancillary proceedings are concluded, issues of international law will further delay the uncertainty over the Resort. Specifically, because the Resort property is in Mexico and is owned by a Mexican trust, it is our understanding that to the extent the U.S. government obtains a forfeiture of the Resort, the U.S. government must seek assistance from the Mexican government

_____

[1] Contrary to the government's assertion, Danske is not requesting that the Court determine its interest in the underlying Resort at this time. Rather, Danske is simply seeking to preserve its due process rights. Courts have considered a third party's interest in property in limited circumstances prior to an ancillary proceeding in order to preserve their due process rights by asking a court to act to prevent irreparable harm arising from, for example, unrecoverable dissipation of value. *See, e.g.*, *United States v. Bohn*, 2011 WL 4708799, *7 (W.D. Tenn. June 27, 2011); *United States v. Coffman*, 612 Fed. App'x 278, 289–90 (6th Cir. May 11, 2015). Further, this Court has already expressed its sensitivity to negative impact on the Resort. [*See* January 11, 2017 Hearing Tr. at 12:15–18 (stating that "I obviously am sensitive to the issue of any negative impact . . . , including a potential default later this year").

[2] *See United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004) (setting forth that the government bears the burden of forfeiture by a preponderance of the evidence).



The Honorable Joseph F. Bianco
February 20, 2019
Page 3

and a Mexican court in order to actually seize the property.[3] Thus, to the extent the Court issues a Preliminary Order of Forfeiture that includes the Resort, in addition to adding language in the Proposed Order that the status quo as to the operations of the Resort shall remain in place, Danske respectfully asks the Court to consider requesting that interested third parties and the government enter into a mediation before a Magistrate Judge in this Court as soon as practicable. A mediation, soon after an issuance of a Preliminary Order of Forfeiture, will be in the best interest of all parties as it potentially could avoid months or years of additional litigation in an ancillary proceeding and in Mexico and avoid further dissipation of value in the Resort.

The undersigned attorneys will be present at the Court's upcoming March 1, 2019 hearing and are available to answer any questions the Court may have regarding these matters. We thank the Court for considering this matter.

Respectfully,

Doreen S. Martin
George Kostolampros

cc:     All parties of record via ECF
        Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)
        Marc Wolinsky, Esq. (Diamante Doce, LLC) (by email)

---

[3] Department of Justice guidance specifically sets forth that "when it is known or can be ascertained in advance that a particular foreign government either cannot or will not recognize, enforce, or otherwise make beneficial use of a forfeiture order obtained in this country, it would clearly be a waste of U.S. prosecutorial and judicial resources to pursue the forfeiture action." U.S. Dep't of Justice, Justice Manual: Criminal Resource Manual § 280, https://www.justice.gov/jm/criminal-resource-manual-280-forfeiture-assets-located-foreign-countries.