

Thomas McC. Souther
Telephone: (646) 558-6052
souther@freehsporkinsullivan.com

Thomas McC. Souther
Freeh Sporkin & Sullivan, LLP
350 Fifth Avenue
Suite 6903
New York, New York 10118

February 22, 2019

**BY ECF**

The Honorable Joseph F. Bianco
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:   **United States of America v. Kenner, et al, Cr. No. 13-607 (JFB)**

Dear Judge Bianco:

Kevin P. Mulry of Farrell Fritz, P.C. and I represent Diamante Cabo San Lucas, LLC ("DCSL"), Diamante Cabo San Lucas S. de R.L. de C.V. ("Diamante SRLCV"), KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy (together, the "DCSL Parties") in connection with the forfeiture proceeding in this case.  I respectfully submit this letter in response to the Government's letter dated February 11, 2019.

The Government seeks to forfeit an entire resort development in Mexico, known as Diamante Cabo San Lucas (the "Resort" or the "Property"), but the Government appears to have completely lost sight of the purpose of forfeiture in criminal proceedings.  Criminal forfeiture proceedings are designed to deprive convicted criminals of the profits of their crimes of conviction. "Forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed on innocent owners." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) (citing *United States v. Bajakajian*, 524 U.S. 321, 332 (1998).  *See also, United States v. Bailey*, 926 F.Supp.2d 739, 764 (W.D.N.C. 2013) ("The primary remedial purpose underlying criminal forfeiture . . . is to punish the defendant and disgorge him of his ill-gotten gains.").

The DCSL Parties recognize that, as a general rule, third parties claiming an interest in property potentially subject to forfeiture may not intervene in a trial or appeal of a criminal case

involving the forfeiture of such property. *See* 21 U.S.C. §853(k).  But even the Second Circuit has recognized that there may be a circumstance in which a "third-party claimant contesting a criminal forfeiture may lack an adequate remedy at law if the claimant faces months or years of delay before the claimant may seek an ancillary proceeding in the criminal forfeiture action." *See De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006).  It has been more than three years since the defendants were convicted in this case and the Government embarked on this tortuous journey to seize the Resort, yet the Government would have the Court put blinders on, ignore the practical realities of this complex case, and ignore the input from third parties.  The DCSL Parties are not seeking to intervene in this criminal proceeding.  Rather, the DCSL Parties are merely seeking to provide the Court with alternatives to the all or nothing proposals advanced by the Government and the defendants.

At this stage of the proceedings, the Court is tasked with determining whether there is a nexus or connection between the crime of conviction and the property sought to be forfeited. *United States v. Nicolo*, 597 F.Supp.2d 342, 346 (W.D.N.Y. 2009).  Such a nexus or connection must reflect more than an incidental or fortuitous connection between the property sought and the illegal activity. *Id*. at 357.  A tenuous connection simply is insufficient to support the forfeiture of real property.  Moreover, even in circumstances in which the law arguably allows for the forfeitability of real property, at least one court has declined to order such a result because to do so in that case "would be to impose a grossly disproportional fine, in violation of the excessive fines clause, and beyond the bounds of equity." *United States v. Stanford*, 2014 WL 7013987 (W.D.La. Dec. 12, 2014) (a copy of the *Stanford* decision is submitted with this letter).

The property defendant Kenner received as a result of his alleged use of criminal proceeds was his interest in Baja Ventures 2006, LLC and his fractional interest in Diamante Properties, LLC.  Kenner did not receive the Resort, or a share of the Resort, but only his interest in those two LLCs, which themselves have an ownership interest in DCSL.  Defendant Kenner has no interest—and the Government concedes he has no interest—in the other LLCs that have ownership interests in DCSL, *i.e*., KAJ Holdings, LLC, CSL Properties, LLC, and Somerset Properties, LLC.  Those LLCs have no nexus to defendant Kenner's criminal conduct.

The case before the Court presents unique challenges in many respects.  The Government's insistence on seeking the forfeiture of the entire Resort, rather than simply seeking the forfeiture of the interests defendant Kenner may have in the property through Baja Ventures 2006, LLC and Diamante Properties, LLC, does not serve to punish the defendant.  Instead, the ones who would be punished by the Government's actions are the thousands of time share members and property owners and employees, and innocent stakeholders, including the DCSL Parties and Danske Bank.  These innocent parties have endured more than three years with the uncertainty of operating under the restrictions of the Post-Conviction Protective Order, and nearly a decade of obstacles before that imposed largely at the direction of defendant Kenner.  If the Government succeeds in obtaining a preliminary order of forfeiture of the Resort, these innocent parties likely will become victims, and in some instances victims again, but this time at the hands of the Government and not the defendant.

The Government states in its letter that it "anticipates that the Post-Conviction Protective Order, dated August 21, 2015, will remain in full force and effect, and operations of the Resort will

2

remain status quo pending resolution of the ancillary proceeding." Government February 11, 2019 letter, p.3, Dkt. No. 618. Such a statement strains credulity and defies logic. The property that the Government seeks is not a bank account, or a vehicle, or a plot of land, or a completed structure or home on a plot of land. This property is a dynamic, operating business. It is a resort that is in the midst of development and has struggled to meet its debt obligations and continue to develop the property in accordance with the project's master plan. Does the Government seriously believe that "the Resort will remain status quo" in the wake of a preliminary order of forfeiture that includes the Resort? Does the Government actually believe that such an order will not further adversely affect the sales of time shares and residential properties at the Resort? If so, such a view demonstrates a complete lack of understanding of the resort development business and reflects the myopic approach that the Government has taken throughout the forfeiture proceeding. The Government may believe that it has the right to seek the forfeiture of the entire Resort, and it may also believe that it is doing so to recoup assets that may benefit the defendants' victims. The reality, however, is that in circumstances analogous to those in *United States v. Bailey*, *supra*, the Government's efforts to seek the forfeiture of the Resort likely will dispossess innocent owners and make them victims, ostensibly in the name of fairness, but this time the innocent parties will be victims of the Government's overreaching, rather than the defendants' misconduct.

The DCSL Parties respectfully request that the Court consider this letter highlighting the inherent inequity of the Government's overly broad request for a preliminary order of forfeiture of the Resort, of KAJ Holdings, LLC, of Diamante Properties, LLC (other than Kenner's interest in Diamante Properties, LLC), of CSL Properties 2006, LLC, and of Somerset Properties, LLC. The Court should deny the Government's request.

The development is facing a financial crisis. The debt on the project needs to be restructured to address the existing events of default and extend the lines of credit and the repayment terms. New capital needs to be identified, raised, and injected into the project to accelerate the progress of the development, which essentially has been treading water for the past three-and-one-half years. Large parcels of land need to be marketed and sold to commercial developers in order to provide an infusion of cash that will reduce the debt on the property. There is no guarantee that the development will be successful if the DCSL Parties are freed from the uncertainty and restrictions of the Post-Conviction Protective Order and able to overcome these critical financial hurdles. It is a virtual certainty, however, that if the Government succeeds in its efforts to obtain the sweeping preliminary order of forfeiture that it is seeking, such an order would seriously impair any prospect for the continued success of the development. Accordingly, the DCSL Parties ask the Court to consider limiting any forfeiture order, insofar as it may relate to the Resort or the ownership interests in the Resort, to the forfeiture and seizure of the defendants' interests, if any, in Baja Ventures 2006, LLC and Diamante Properties, LLC.

Thank you for the Court's consideration.

Respectfully submitted,

*/s/ Thomas McC. Souther*

Thomas McC. Souther

cc:    All parties of record via ECF
           Doreen S. Martin, Esq. (By Email)
           Kevin P. Mulry, Esq. (By Email)
           Philip Kenner (By Mail)