FILED
CLERK

5/16/2019 9:57 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 13-cr-00607-JFB
                             :
     - versus -              : U.S. Courthouse
                             : Central Islip, New York
                             :
KENNER, et al.,              : May 14, 2019
          Defendants  : 1:21 PM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government:**        **Richard P. Donoghue, Esq.**
                              United States Attorney

                      BY:   **Diane Leonardo, Esq.**
                            **Madeline O'Connor, Esq.**
                            **Matthew Haggans, Esq.**
                            Assistant U.S. Attorney
                            100 Federal Plaza
                            Central Islip, NY 11722

**For Danske Bank:**          **George Kostolampros, Esq.**
                            **Kelli Schubic Weiner, Esq.**
                            **Doreen Martin, Esq.**
                            Venable, LLP
                            1290 Avenue of the Americas
                            New York, NY 10104

**For DCLS Parties:**         **Thomas Souther, Esq.**
                            Freeh Sporkin & Sullivan LLP
                            2559 M St NW, 2nd Floor
                            Washington, D.C. 20037

                            **Kevin P. Mulry, Esq.**
                            Farrell Fritz, P.C.
                            100 Motor Parkway, Ste. 300
                            Hauppauge, NY 11788

                            **Marc Wolinsky, Esq.**
                            Wachtell Lipton Rosen & Katz
                            51 W. 52nd Street
                            New York, NY 10019

**Transcription Service:**    **Transcriptions Plus II, Inc.**
                            rl.transcriptions@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 13-cr-607, USA v.

2     Phillip Kenner.

3          Please state your appearance for the record.

4          MS. LEONARDO:  For the United States, Diane

5     Leonardo, Madeline O'Connor, Matt Haggans, Assistant

6     United States Attorneys, and also at counsel table is

7     Special Agent Galiota (ph.).

8          THE COURT:  Good afternoon.

9          IN UNISON:  Good afternoon, your Honor.

10          MR. KOSTOLAMPROS:  George Kostolampros.  I'm

11     from Venable, LLP on behalf of Danske Bank, and here with

12     me are Kelly Shubic Weiner, and Doreen Martin.

13          THE COURT:  Good afternoon.  You can stay

14     seated and speak into the mic.  It's better that way.

15          MR. SOUTHER:  Thank you, your Honor.

16          Thomas Souther, Freeh Sporkin & Sullivan.  I

17     represent the DCSL parties which include Diamante, Cabo

18     San Lucas, LLC, the Mexican developer, Diamante Cabo San

19     Lucas, SRL CV, KAJ Holdings, LLC., Diamante Properties,

20     LLC and Ken Jowdy, together we refer to them as the DCSL

21     parties.

22          THE COURT:  Right.

23          MR. WOLINSKY:  Good afternoon, your Honor.

24          My name is Marc Wolinsky.  I'm a partner at

25     Wachtell Lipton but I am here in my individual capacity

3

Proceedings

1    today.  I'm a homeowner at Diamante, and I've been

2    coordinating with an ad hoc group of homeowners who

3    collectively own in excess of $50 million of property.

4              THE COURT:  Okay.  Very good.  Good afternoon.

5              And Mr. Kenner, you're here, as well.

6              THE DEFENDANT:  Yes, ma'am.

7              MR. MULRY:  Your Honor, Kevin Mulry from

8    Farrell Fritz, also for the DCSL parties.

9              Good afternoon.

10             THE COURT:  Good afternoon.

11             All right.  So I know that you were previously

12   before Judge Bianco, and that was in the context of

13   having an order -- a preliminary order of forfeiture

14   entered, and when the government presented that, there

15   were objections, and those objections went to both the

16   scope of the order, and the language of the order.

17             And I know that I read the transcript before

18   Judge Bianco, and what he said was let's see if the

19   parties can get together, and perhaps can agree to some

20   language in the preliminary order of forfeiture that

21   would serve to preserve the value of the assets,

22   in effect.

23             I do believe, and let me ask the government

24   this, when you were before Judge Bianco, part of the

25   argument before him was what was subject to forfeiture.

Proceedings

4

1          Is that right?

2          MS. LEONARDO:  That's right, your Honor.

3          THE COURT:  Okay.  So that was a forfeiture

4    hearing, and then in the context of that, the issue of

5    whether or not value could be preserved by some language

6    you could agree to, right?

7          MS. LEONARDO:  That's exactly right, your

8    Honor.

9          THE COURT:  All right.  So then you did have a

10   meeting.  You all had a meeting in March, I believe --

11   sometime in March you had the meeting?

12         MR. KOSTOLAMPROS:  Yes.

13         MR. SOUTHER:  Yes.

14         MS. LEONARDO:  Yes.

15         THE COURT:  Right.  So Judge Bianco said why

16   don't you get together and meet, and see if you can work

17   something out.  Obviously, that didn't work out, but in

18   the context of the meeting, was part of the meeting

19   discussing what's subject to forfeiture or is that what's

20   currently under submission before Judge Bianco.  What's

21   the government's position on that?

22         MS. LEONARDO:  The government's position is

23   that as you had said, we were to meet to discuss language

24   to preserve the value of the property, not to discuss the

25   scope of the forfeiture, which is strictly within the

5

Proceedings

1   Court's domain, rather than the third parties.

2          THE COURT:  And is that something that was

3   argued before Judge Bianco?

4          MS. LEONARDO:  The scope of the forfeiture?

5          THE COURT:  Scope.

6          MS. LEONARDO:  Oh, yes, that was the whole

7   nature of the forfeiture proceeding.

8          THE COURT:  And that's under submission before

9   him?

10          MS. LEONARDO:  It is, your Honor.

11          THE COURT:  Okay.  Let me ask you this, in the

12   course of your meeting, had you discussed what the scope

13   of the forfeiture is?  Is that something that you would

14   have put on the table, as part of your discussions?

15          MS. LEONARDO:  No, your Honor.  In fact, I

16   think that's why we're here today because we could not

17   agree that scope was beyond the focus of that meeting.

18          The government's position is that we were to

19   meet strictly to discuss any language that could be

20   included to preserve the value of the property, not

21   whether the property itself was forfeiturable.

22          THE COURT:  Right, and you weren't even open to

23   that.  Is that right?

24          MS. LEONARDO:  That's right, your Honor.

25          THE COURT:  Okay.  Let me hear from the other

6

Proceedings

1    side just upon the issue of whether or not Judge Bianco

2    (indiscernible) talking about the scope, whether you

3    wanted to talk about the scope or do you think the scope

4    is something that's presently under submission before the

5    district judge?  And since you're first up, you're

6    sitting in the first spot, you speak.

7              MR. KOSTOLAMPROS:  Well, we -- sure.  Sure,

8    your Honor.  And again, your Honor, we represent Danske

9    Bank --

10             THE COURT:  Right.

11             MR. KOSTOLAMPROS:  -- whose got $180 million

12   lien position as to the property.

13             THE COURT:  Understood.

14             MR. KOSTOLAMPROS:  And our understanding is

15   each of the parties here raised objections essentially at

16   that hearing --

17             THE COURT:  Right.

18             MR. KOSTOLAMPROS:  -- in letters, and judge

19   Bianco recognized the concerns there, and part of those

20   concerns was the scope of the forfeiture order, the

21   proposed preliminary order of forfeiture, including what

22   should be subject to forfeiture, ultimately.

23             And I think for our side here, we all believe

24   that that's part of the scope and discussions with the

25   government as to -- look, what's going to cause the least

7

Proceedings

1  harm to innocent third-parties, which is what Judge

2  Bianco asked the government to consider.

3          THE COURT:  Right.  I mean, I read what he said

4  and I think the objectionable language that everybody

5  that -- what's sitting on the defendant's side of the

6  courtroom said, was the judge said well, how does the

7  government know that you can handle -- I think it's

8  handling a big resort like this, and maybe the government

9  can work with you.

10         But look, at this stage in the proceedings

11  under Rule 32(2), if you look at the rule, the rule says

12  that as soon as possible, I think, after the verdict, the

13  Court decides what is subject to forfeiture, and that's

14  before Judge Bianco.

15         And then with respect to a preliminary order,

16  if the Court finds it's subject to forfeiture, it

17  promptly enters a preliminary order of forfeiture setting

18  forth the amount, and directing forfeiture.

19         The language that the government suggested in

20  the preliminary order does say that the government is

21  authorized to seize; is that correct?

22         MS. LEONARDO:  That's correct, your Honor.

23         THE COURT:  Now I know before Judge Bianco, the

24  government had said no, we told the bank, and the bank is

25  the senior lienholder here, right?  Everybody's got skin

8

Proceedings

1   in this game, and it's significant, and the bank is the

2   one that brought up, you know, if you put in language

3   that you're authorized to seize, that language by itself

4   is going to really have a chilling effect on the resort,

5   right, and on your all investment.

6           So I think what he said was you're just saying,

7   okay, we don't intend to do it, wasn't enough, and that's

8   really all I see that Judge Bianco had in mind when he

9   ordered a mediation.  Certainly in the nature of

10  mediation, if both sides want to broaden that scope and

11  work something out, of course I am here for that but I

12  don't think the government is here to change what they

13  think is subject to forfeiture.

14          I think that's something that there was

15  significant submissions before the district judge, and

16  that's under submission.  If the government is not

17  willing to sort of mediate that now --

18          And by the way, isn't there in the future

19  contemplated, an ancillary proceeding where the rights of

20  other third-parties might be allowed to be heard?

21          MR. KOSTOLAMPROS:  Well, your Honor --

22          THE COURT:  So wouldn't it affect -- you all

23  agreeing, at this stage, sort of cut off those rights of

24  other people that would be entitled to notice under an

25  ancillary proceeding?

Proceedings

1          MS. LEONARDO:  Absolutely, your Honor, which is

2  why we would defer any kind of -- addressing any third-

3  party interest at this time.  It's not the appropriate

4  time.  That's why we would just limit these discussions

5  to preserving the property until such time everyone's

6  interests are litigated.

7          THE COURT:  So let me ask the government, is

8  there any movement on your part in taking out the

9  language from the preliminary order that says sort of

10  this stark -- this is subject -- you know, the government

11  is authorized to seize, and perhaps substituting language

12  that might reinstate what was the order of 2015?  There's

13  an interim order, right?

14          MS. LEONARDO:  There's a protective order.

15          THE COURT:  Yes.

16          MS. LEONARDO:  So the Court had suggested that

17  the third parties supply us with proposed modifications.

18  When the government received them, we then incorporated

19  them into a proposed POF that we resubmitted to them for

20  their review.  And at that time, we had also -- I think

21  we had mentioned to the Court, that we had discussed a

22  possibility of an interlocutory sale.

23          THE COURT:  Okay.

24          MS. LEONARDO:  So, we had that.  But we did

25  include their suggested modifications to the extent

10

Proceedings

1   possible that the protective order would be incorporated

2   and would remain in effect.

3           THE COURT:  What language is that because I

4   don't think I have that.

5           MS. LEONARDO:  It's Exhibit 4 to the

6   government's letter.

7           THE COURT:  If somebody has it if someone --

8           MS. LEONARDO:  We can --

9           THE COURT:  -- wants to read it to me from the

10  other side, do you know what she is talking about?

11          MR. KOSTOLAMPROS:  Well, I don't think we have

12  a copy.

13          MR. SOUTHER:  We don't have it.

14          MR. KOSTOLAMPROS:  We don't.

15          THE COURT:  I don't have that.

16          MR. SOUTHER:  They were all -- they were

17  submitted under sale and ex parte, your Honor.

18          MR. KOSTOLAMPROS:  Right.

19          MS. LEONARDO:  It would be the proposed order

20  that we sent to them in an email but we can provide the

21  Court with a copy right now --

22          THE COURT:  Yes, if you could do that because I

23  would like to look at that language, and we can put a pin

24  in that for a moment, and talk about the idea of a

25  possible interlocutory seal -- sale because that seemed

Proceedings

1  to be something that might have gone beyond what Judge

2  Bianco had in mind, that the government might have been

3  open to.

4          What's the status on that?  Is that something

5  that --

6          MR. KOSTOLAMPROS:  Your Honor --

7          THE COURT:  -- this side is interested in?

8          MR. KOSTOLAMPROS:  If I can add to one point,

9  just to backtrack a little bit.

10          THE COURT:  Sure.

11          MR. KOSTOLAMPROS:  I mean the government

12  offered at the hearing before Judge Bianco, look, we'll

13  add this language about, you know, seizure, but Judge

14  Bianco asked the government to sit down and have a

15  mediation with us to consider all our concerns, and all

16  of our concerns -- I mean, you raised that there is a

17  potential ancillary hearing.

18          THE COURT:  Right.

19          MR. KOSTOLAMPROS:  But in our letters, we

20  raised look, the ancillary hearing doesn't solve the

21  fundamental issue with the forfeiture here and the

22  seizure of the resort, is that the resort will not be a

23  going concern at that time, causing due process

24  violations to Danske Bank, as well as to other third

25  parties, before you even get to the ancillary hearing.

12

Proceedings

1        THE COURT:  You're saying that the mere passage

2   of time is killing your investment.

3        MR. KOSTOLAMPROS:  Right.  And we've raised --

4   it's not a matter of simply an ancillary hearing here.

5   There are Mexican law issues here.

6        THE COURT:  Right.

7        MR. KOSTOLAMPROS:  The government would have to

8   move in Mexico.  Ultimately, I think the best route here

9   is to either -- well, number one, there has to be equity

10  value in the resort and there's a dispute as to whether

11  there is any equity of value --

12        THE COURT:  Now you're talking about doing an

13  interlocutory sale, the first step in that being

14  appraisal, right?

15        MR. KOSTOLAMPROS:  Not even.  Before then.  The

16  government needs to consider, pursuant to its own

17  policies and procedures, as to whether there's equity

18  value to even pursue forfeiture and seizure as to the

19  resort.

20        THE COURT:  Well, do they have to do that if

21  they're doing a sale?

22        MR. KOSTOLAMPROS:  Yes.

23        THE COURT:  Okay.

24        MR. KOSTOLAMPROS:  Yes.

25        THE COURT:  Is the sale something that you need

13

Proceedings

1  -- and let me ask the government.  Is that something that

2  you voluntarily sort of agreed to negotiated or is that

3  something that the government is required to do at this

4  stage of the proceedings?

5          MS. LEONARDO:  I'm sorry, your Honor, you're

6  saying that we're required to do --

7          THE COURT:  I'm talking about an interlocutory

8  sale.

9          MS. LEONARDO:  The government's not required to

10  conduct an interlocutory sale, although we suggest the

11  idea --

12          THE COURT:  Right.

13          MS. LEONARDO:  -- as a possible way to preserve

14  value.  It seemed to be something that was well-reserved

15  by all, and we will --

16          THE COURT:  So that seems to me to be something

17  that maybe you all wanted to talk about but that's a

18  negotiation that seems to have died during your

19  discussions as to the best way to do it.

20          MR. KOSTOLAMPROS:  And let me add why that's

21  died.  The reason why it's denied is because this is not

22  something that is -- it needs to e presented in a way

23  that all the parties have a position, and be involved,

24  and be allowed to be involved in, number one, hiring an

25  appraiser, number two, hiring --

14

Proceedings

1         THE COURT:  Right.

2         MR. KOSTOLAMPROS:  -- a consultant that is

3    going to be involved, and, you know, at the end of the

4    day, we haven't been able to get that traction.  I mean,

5    the government has gone ahead and hired their own

6    consultant through our own little -- our own due

7    diligence, we haven't been able to find any experience

8    that this person has as to a Mexican resort property of

9    this size, beyond a resort here in the U.S. itself.

10         So all of those things raise concerns with us,

11   and we have asked -- look, this has got to be a step-by-

12   step proceed.  Number one, if there -- we need an up-to-

13   date appraisal.  The appraisal -- we have differing

14   appraisals.  The government's appraisal is outdated, and

15   frankly, we have disagreements with it.  We think we need

16   an appraisal based on assumptions of -- that are based on

17   a sale now of the property as is, and that includes all

18   the encumbrances that come with the properties --

19         THE COURT:  It's all the debt, right?

20         MR. KOSTOLAMPROS:  Right, because you have

21   interested parties like Mr. Wolinsky here.  If the

22   obligations of the resort don't come with that sale,

23   there's going to be over 6,500 innocent owners on the

24   resort who will be harmed.

25         THE COURT:  Right.

Proceedings

1          MR. KOSTOLAMPROS:  That needs to be taken into

2    account.

3          THE COURT:  So there's several bumps in the

4    road obviously --

5          MR. KOSTOLAMPROS:  Right.

6          THE COURT:  -- of even proceeding with a sale.

7    If it's the -- a sale is something that the government

8    doesn't have to do but wants to talk about, that's one

9    thing.  I'm not sure the government even wants to talk

10   about the sale.  That's something that they would have

11   put on the table to discuss.

12          Is that something the government wants to

13   discuss because obviously there's discontent with the way

14   the government is going forward with any appraisal, and

15   that's the problem.  If that's the bump in the road

16   that's really insurmountable, and the government doesn't

17   want to proceed with the sale, then we're sort of stuck

18   there.

19          MS. LEONARDO:  The government was willing to

20   discuss it as a means to resolving the issue about the

21   preliminary order of forfeiture language so it could move

22   on from there.  That way, we could get the order entered,

23   and then discuss in --

24          THE COURT:  And then discuss the sale after

25   that?

16

Proceedings

1           MS. LEONARDO:  Correct, right.  But since that
2     doesn't seem to be a means to resolve the issues we have
3     today, then there doesn't seem to be a point to continue
4     those discussions at this juncture, it could be discussed
5     after a preliminary order is entered and the ancillary
6     proceeding is conducted, and then we can, you know,
7     pursue that with the third parties at that time.
8           THE COURT:  All right.  I'm looking right now
9     at the preliminary order of forfeiture, and this is
10    what's been handed up to me, and the government has said
11    that the -- it was provided in an email to all the
12    interested parties.  Is that or is that not the case?  It
13    is -- I'll tell you how many pages the document is.  It's
14    a six-page document.
15          MR. KOSTOLAMPROS:  I believe it was.  It was
16    definitely provided to us, I believe.
17          MR. SOUTHER:  The only order that I got was
18    restated, was just a copy of what was originally
19    submitted.  I don't --
20          THE COURT:  So the original preliminary order
21    of sale -- preliminary order of forfeiture, I'm sorry,
22    also a six-page document, and that's under document 607-
23    1. And the one that I am looking at also six pages, and I
24    think the different part would be paragraph 3.  Let me
25    ask the government, is that what's different about it?

17

Proceedings

1    MS. LEONARDO:  No, your Honor.  There's several

2    differences, as we incorporated numerous of their

3    proposed modifications.

4    THE COURT:  Okay.  So when -- I think the

5    interlocutory sale is not something that the government

6    wants to mediate or discuss.  I think that's, from what I

7    am hearing, I am not sure that's even worth going forward

8    with.  I also think the scope of the forfeiture is

9    something that's already been argued, and it's under

10   submission to Judge Bianco, and that's not here.

11   MR. WOLINSKY:  Your Honor?

12   THE COURT:  What's here is the language of the

13   order of forfeiture.

14   MR. WOLINSKY:  Let me put this in context.  I

15   was at the hearing with Judge Bianco.

16   THE COURT:  Okay.

17   MR. WOLINSKY:  My sense of it is not the sense

18   that you have.  My sense of it was that the judge was

19   saying to the government, you do not understand the

20   complexities, and consequences of what you're intending

21   to do, and he therefore directed the parties to sit down

22   and try and mediate.

23   THE COURT:  Okay.

24   MR. WOLINSKY:  I think Judge Bianco was very

25   much in tune to the idea that the scope of the order --

18

Proceedings

1   the scope of forfeiture being proposed was not one that

2   he was necessarily prepared to enter.  So for the

3   government to come in here today and say they're not

4   prepared to speak to the scope of the order, I don't

5   think it's consistent with Judge Bianco's expectations.

6           But more importantly, it's not consistent --

7   and this is the most important point -- it is not

8   consiistent with preserving the value of the project.

9   And everyone here is very much in tune to preserving the

10  value of the project, and everyone --

11          THE COURT:  I think the government should be in

12  tune to preserving the value of the project as well.  Am

13  I right?

14          MS. LEONARDO:  We certainly are.

15          THE COURT:  I think everyone wants that.  Look,

16  I am looking at the transcript of Judge Bianco's

17  proceeding, and you tell me where he tells me that the

18  scope of the forfeiture -- I get what you're saying.

19  He's interested in having it run properly.  He's

20  interested in possibly taking out that authorized, seized

21  language.  That that language would have a chilling

22  effect on sales, the going forward of the resort.  That's

23  what I am getting.

24          I am not getting -- unless the government is

25  certainly open to it, because that's what mediation is

19

Proceedings

1  about, but both parties have to be open to it,

2  particularly in a criminal proceeding.  This isn't a

3  civil proceeding where, you know, we're sort of settling

4  a civil case.  This is a criminal proceeding.  So the

5  government really has to be open to changing things, and

6  on notice to anybody who might be interested, and it is

7  getting the way of Federal Rules of Criminal Procedure,

8  which there are certain things they can do, and there's

9  certain things that I think that they can't do.

10        Let me ask the government.  I mean, does

11  anybody have a piece that they want to read me of Judge

12  Bianco's hearing where he talks about changing the scope.

13        What I have is I am just going to request, and

14  this is at page 17, "That you try and hear all their

15  concerns, and after hearing their concerns, submit

16  another order, and that would be a preliminary order, to

17  the Court, consistent with the government's objectives.

18  You know, any modifications you could make to try to

19  minimize any potential negative impact, the operation of

20  the resort to innocent third parties."

21        So I --

22        MR. WOLINSKY:  Your Honor --

23        THE COURT:  -- just don't see it as opening the

24  entire scope of the forfeiture, unless it's something the

25  government is interested in, in the context of mediation.

Proceedings

1  And if they're not, then the only thing that they're

2  interested in, and that could possibly be helpful to you

3  is changing that language with respect to the order of

4  the seizure.

5  　　　　What I would like the government to do, and

6  perhaps in connection with the other parties, is maybe

7  take a short break, and maybe mark up what's new in this

8  order, and then we can talk about that.

9  　　　　MS. LEONARDO:  The government can do that, your

10 Honor.

11 　　　　MR. SOUTHER:  Your Honor, may I just --

12 　　　　THE COURT:  Yes.

13 　　　　MR. SOUTHER:  -- add one observation.  With

14 respect to the wording from the transcript, and Judge

15 Bianco, you know, I think we aren't parties to the

16 criminal case, and as it's part of --

17 　　　　THE COURT:  Right.  You're third parties, by

18 the way, that aren't really allowed to intervene at this

19 stage, right?

20 　　　　MR. SOUTHER:  And we weren't seeking to

21 intervene but, you know, what we were trying to present

22 to the Court was, you know, an alternative to the all or

23 nothing alternatives that were being proposed.

24 　　　　THE COURT:  No, I understand.

25 　　　　MR. SOUTHER:  And, you know, one of the biggest

21

Proceedings

1  concerns that certainly the DCSL parties have, and I

2  think it's shared by the others, was the government's

3  insistence on including the resort as a whole, as part of

4  the forfeiture.

5          THE COURT:  Which goes to the scope of the

6  forfeiture.

7          MR. SOUTHER:  And I think that -- I mean, my

8  impression was, and obviously I have a bias, but my

9  impression sitting there in the courtroom, and hearing

10 Judge Bianco express those words, was that he shared that

11 concern, and that's why I think he directed the third

12 parties to sit down with the government to try and work

13 it out as a way to try and minimize the dramatic chilling

14 effect that that's going to have on the ability to move

15 forward, and continue to sell real property, continue to

16 sell timeshares.  Continue to fund the cash flow that is

17 necessary, just to meet the day-to-day obligations.  This

18 resort lives paycheck-to-paycheck right now.

19         THE COURT:  I understand that but chilling

20 effect is the chilling effect of language that says the

21 government is authorized to seize the resort.  I think

22 that's what chilling.

23         You've been operating since 2015 under an order

24 that says what?  What does it say?  Let me ask the

25 government in terms of what you could do, what you could

Transcriptions Plus II, Inc.

Proceedings

1    sell.

2              MR. SOUTHER:  Well --

3              MS. LEONARDO:  There are no limitations on the

4    sales of timeshares or individual lot owners --

5              THE COURT:  And would you consider -- would

6    that continue under the preliminary order of forfeiture?

7              MS. LEONARDO:  Yes, we --

8              THE COURT:  Would you agree to that?

9              MS. LEONARDO:  -- specifically incorporate the

10   protective order and the modification which permits those

11   sales.

12             MR. KOSTOLAMPROS:  Your Honor, if I may add,

13   you know, look, we met with the government trying to come

14   up with the language, and frankly to our astonishment, we

15   were surprised that the government was taking the

16   position that it wouldn't even recognize the interest of

17   the 6,500 timeshare owners, and other land sale owners

18   who have been sold already, pursuant to the Court's

19   protective order, an allowance of that.

20             So what would that mean?  We said look, if

21   you're going to make that argument, and say that the

22   property is subject to seizure, but you could go ahead

23   and still sell timeshares, but everyone who buys that

24   share has to come to this court or to the government and

25   make the argument that they are a valid owner.  There's

23

Proceedings

1    no way one sale could go forward.

2         THE COURT:  Isn't that what's been going on

3    since 2015 and haven't there been sales since then?

4         MR. KOSTOLAMPROS:  No, there haven't.  The

5    protective order --

6         THE COURT:  The government is saying they're

7    going to go along with exactly what's been in place since

8    2015.

9         MR. KOSTOLAMPROS:  The way the protective order

10   is reads is, we've read it as it allows time shares sales

11   and other sales to go forward.  That implies that the

12   Court is allowing that to go forward, without any --

13   without subject to forfeiture.

14        There's even a --

15        THE COURT:  I don't understand.

16        MR. KOSTOLAMPROS:  -- that's the way that we've

17   read it.

18        THE COURT:  The government is saying that

19   they're willing to do things exactly the way they've been

20   done since 2015, right?

21        MS. LEONARDO:  That's exactly right.

22        THE COURT:  No changes.

23        MR. KOSTOLAMPROS:  Right, but when we met with

24   them, they're saying that we won't recognize -- we will

25   not recognize the timeshare sales that happened to date,

24

Proceedings

1  which means that those owners would have to make a

2  showing to the government or to the Court in an ancillary

3  proceeding that they were rightful owners.

4          THE COURT:  So these are prior sales that have

5  happened?

6          MR. KOSTOLAMPROS:  Prior sales.

7          THE COURT:  Prior to 2015 or prior to the

8  preliminary order of forfeiture?

9          MR. KOSTOLAMPROS:  I'm not sure.  I mean, my

10  understanding is that it would apply to the 6,500 that

11  have been sold.

12          THE COURT:  That have already been sold.

13          MR. SOUTHER:  To date.

14          MR. KOSTOLAMPROS:  To date.

15          MR. SOUTHER:  To date.

16          MR. KOSTOLAMPROS:  To date.

17          MR. SOUTHER:  So that would include both --

18          MR. KOSTOLAMPROS:  Right.

19          THE COURT:  So that --

20          MR. SOUTHER:  -- prior to --

21          THE COURT:  Let's ask.  Let me ask because

22  people looked confused over here.

23          MS. LEONARDO:  So, your Honor, I think what

24  they're trying to say is they want the government to

25  essentially conduct an ancillary proceeding without

25

Proceedings

1    having conducted one and automatically recognize interest

2    without having been provided any information or anything

3    else.  And the government is not in a position to do

4    that, and it would be unfair to all potential claimants

5    to the property.

6            So what we tried to do was stick to what the

7    Court said, preserve value, right -- incorporate

8    language, preserve value, and leave the ancillary

9    proceeding issues to the ancillary proceeding.

10           THE COURT:  Right.  And at that proceeding,

11   these people and anybody else could, upon notice, could

12   come in and assert their --

13           MS. LEONARDO:  Interests.

14           THE COURT:  -- rights.

15           MS. LEONARDO:  Which is what due process

16   requires.

17           THE COURT:  Right.

18           MR. KOSTOLAMPROS:  Your Honor, there are 6,500

19   owners, not all of them are U.S. citizen and --

20           THE COURT:  Well, they would get whatever

21   notice is necessary under due process, right?

22           MR. KOSTOLAMPROS:  But --

23           THE COURT:  That's what the ancillary

24   proceeding is for.

25           MR. KOSTOLAMPROS:  Right, but how would the

26

Proceedings

1    resort survive during that time period?

2            THE COURT:  How has the resort survived this

3    long?

4            MR. KOSTOLAMPROS:  It couldn't --

5            MR. SOUTHER:  Your Honor?

6            MR. KOSTOLAMPROS:  It survived through the

7    allowance of the protective order that allows these sales

8    to go forward.

9            THE COURT:  Again, you're allowing --

10           MR. KOSTOLAMPROS:  Which would continue, your

11   Honor.

12           THE COURT:  -- the sales to go forward.  I just

13   feel like the government keeps saying we're going to let

14   things continue the way they have been, and maybe that's

15   language you all need to talk about.

16           So what I am going to -- I'm taking a break.  I

17   want you to take a look over this together, and then come

18   back because I have a couple of other criminal

19   proceedings to do, and then we'll talk about this.  Once

20   I see -- I'd like a marked up version of this versus the

21   original preliminary order of forfeiture.  You can get

22   that to me.

23           MS. LEONARDO:  Okay.

24           THE COURT:  We'll do a -- let's take a half

25   hour.

27

                              Proceedings

1           (Off the record.)

2           THE CLERK:  Calling 13-cr-607, United States of

3   America v. Phillip Kenner.

4           THE COURT:  Okay.  We don't need to have the

5   appearances.  We're just back on the record.  So I know

6   we took a break to talk.  I know you've had some

7   discussions.  Let me hear from the government what's

8   going on, if anything.

9           MS. LEONARDO:  Well, your Honor, what we have

10  for you is three copies of the preliminary order of

11  forfeiture.  First, the order that was submitted as an

12  attachment on the docket entry 607-1 --

13          THE COURT:  Right.

14          MS. LEONARDO:  -- then we --

15          THE COURT:  That's the original one.

16          MS. LEONARDO:  Yes.

17          THE COURT:  Uh-hum.

18          MS. LEONARDO:  Then we have for you the redline

19  copy that was provided to the government by the third

20  parties with their suggested modifications, and then we

21  have our proposed order that was -- we provided to the

22  third parties for their review.

23          THE COURT:  Okay.  So obviously there's no

24  agreement, right?  So you need me to take some time to

25  look at it so we can talk about t?

28

Proceedings

1          MS. LEONARDO:  Sure.  And if it would help the

2   Court, we could go through --

3          THE COURT:  If you want to just go through it

4   line by line, maybe it's a good use of time?

5          MR. KOSTOLAMPROS:  Your Honor, I don't know if

6   it is frankly.  I think, you know, we've asked for two

7   fundamental things before we could even agree to move

8   forward and have a conversation.

9          THE COURT:  Okay.  Well, why don't you tell me

10  what those are --

11         MR. KOSTOLAMPROS:  I will --

12         THE COURT:  -- because it's probably stuff I

13  already know about.

14         MR. KOSTOLAMPROS:  -- that's what I think,

15  we'll just cut to the chase.

16         THE COURT:  Yes, let's do that because nobody

17  is sitting behind you at the moment that has to be here,

18  so let's do it.

19         MR. KOSTOLAMPROS:  Right.  So I mean, so the

20  two fundamental issues, before we even get sort of into

21  the specifics are one, is deletion of language, the

22  seizure language, that the resort is subject to seizure.

23         THE COURT:  And what paragraph is that?

24         MR. KOSTOLAMPROS:  Paragraph 3.  And the draft

25  that's title or that has -- it says draft subject to

Proceedings

1  further government review, March 29th, 2019.

2          THE COURT:  Yes.  I am with you.

3          MR. KOSTOLAMPROS:  And then the other point is,

4  recognizing property owners who have purchased timeshares

5  and land sales, previously purchased them, and those

6  going forward.  And again, that gets to our point --

7  look, that's going to completely harm the resort.  The

8  resort will not be able to continue on as a going

9  concern, and if the interest here is ultimately to get

10  value out of the resort, there will be none.

11          THE COURT:  And the government -- I mean, what

12  do you say to that because that's the core of it, right?

13  Is that something that you fundamentally disagree with,

14  and you think it's an ongoing concern, and there's not a

15  danger of all these loans being called in and the entire

16  resort collapsing, because that's essentially what the

17  defendants are saying, right?

18          MR. KOSTOLAMPROS:  Right.

19          MR. WOLINSKY:  Yes, your Honor.

20          MS. LEONARDO:  Well, your Honor, what we said

21  to them in response is that they had the same concern

22  with the protective order, and yet the sales have

23  continued.  The protective order was very clear that the

24  property was subject to forfeiture.  That hasn't stopped

25  the sales.  In fact, Mr. Jowdy's letter, and DCLS's

30

Proceedings

1    letter says they're meeting sales goals.

2          So clearly, it's not having the cloud that they

3    claim it will, and if everything were to continue status

4    quo, which is what they asked from us in the first place,

5    then we don't understand why now it's a problem, and the

6    government is not able to continue with the status quo.

7          THE COURT:  I'm looking at the paragraph 3 of

8    both the government draft and the proposed draft, and

9    that's the blue underline, and the government is the

10   yellow highlighting.

11         MS. LEONARDO:  Yes.

12         THE COURT:  And I think the big problem that

13   the parties are having is paragraph 3 says upon -- the

14   government says, "Upon entry of this preliminary order,

15   the U.S. Attorney General or its designees, and this is

16   the language, is authorized to seize the forfeitable

17   assets and to conduct proper discovery in accordance with

18   Rule 32.2."  And that tracks exactly the statutory

19   language.

20         "And it to commence any proceedings to comply

21   with the statutes governing third-party rights," and you

22   envision that to be in the ancillary proceeding but the

23   language that I am looking at that the government has is

24   basically cut and past from the statute, is it not?

25         MS. LEONARDO:  It is, your Honor.

Proceedings

1    THE COURT:  Okay.  And what is proposed and the

2    government could agree to if they want to but don't have

3    to, says, "Upon entry of the preliminary order, the

4    United States Attorney General or its designee," and it

5    just says, "is authorized to conduct proper discovery,"

6    taking out "is authorized to seize the forfeited assets."

7         Now in the government's, is there anything that

8    in your view, softens the word to seize the forfeited

9    assets?

10   MS. LEONARDO:  So, your Honor, at the time we

11   were not willing to adopt that modification because it

12   affected all of the forfeitable assets including a

13   Falcon-10 Airplane that the government has seized, and

14   needs this language to continue to hold.

15        So we're not able to do that but what we did

16   indicate is that we would be willing to modify the

17   language to say something to the effect that the

18   government -- something, however, the United States will

19   not seize the DCSL property.  We can define it, which

20   would be I guess at subparagraph A, prior to the entry of

21   a final order of forfeiture or further order of the

22   Court.

23        THE COURT:  So you are willing to say the

24   government will not seize prior to the final order of

25   forfeiture?

32

Proceedings

1      MS. LEONARDO:  Yes, we're willing to say that.

2      THE COURT:  And that's not good enough for the

3  defendants?

4      MR. KOSTOLAMPROS:  It's not because the issue

5  is we -- when we first proposed some modification to the

6  language, we assumed that the government wasn't

7  challenging ongoing sales.  It's only when we met with

8  the government in person after Judge Bianco had his

9  hearing, did we realize that the government was taking

10  that position.

11      And frankly, it's both of this language that's

12  important, it's not just the seizure language but it's

13  also recognizing prior sales, and ongoing sales,

14  because --

15      THE COURT:  And where is that language

16  reflected in your draft?

17      MR. KOSTOLAMPROS:  In our draft?

18      THE COURT:  With respect to -- yeah, what did

19  you want it to say with respect to reflecting past sales.

20      MR. KOSTOLAMPROS:  Sure.  Paragraphs 4 and 5,

21  your Honor.

22      THE COURT:  And that's paragraph 4, I'm looking

23  at, and that is not at all in the government's, but also

24  the government doesn't have in the copy to me what they

25  just said.  However, the government will not seize.

33

Proceedings

1      MS. LEONARDO:  That's correct, your Honor.

2      THE COURT:  Okay.  Let me just take a look at

3  what is in paragraph 4, and then I'm just going to -- on

4  the third-party side, right?  "None of the real property

5  and premises in Mexico, known as" -- and that's this

6  resort, -- "is subject to forfeiture".  You want them to

7  say that none of that is subject when, in fact, it

8  clearly is subject to it.  Just their agreement won't be

9  seized, and I'm assuming if I'll go back to the

10 government, you would object to saying none of this is

11 subject to forfeiture because that's a final finding as

12 to forfeiture, is it not?

13     MS. LEONARDO:  That's exactly right.

14     THE COURT:  Okay.

15     UNIDENTIFIED SPEAKER:  If I could interject,

16 your Honor, our position in our version you have with the

17 blue markup, we took the position that the forfeitable

18 assets excluded the real estate and were the U.S. held

19 equity interest only.

20     THE COURT:  I get it.  And that's your position

21 but that's what's got to be ruled upon as to the final

22 order of forfeiture, and as I said before, I think --

23     MR. KOSTOLAMPROS:  Your Honor, if I may, your

24 Honor?

25     THE COURT:  Yes.

34

Proceedings

1          MR. KOSTOLAMPROS:  Just getting to that point,

2     I mean you raised -- look, you didn't believe that Judge

3     Bianco had or basically allowed for this to be a

4     discussion about scope but --

5          THE COURT:  Not that he didn't allow for the

6     discussion, because he certainly did allow for any

7     discussion --

8          MR. KOSTOLAMPROS:  Right.

9          THE COURT:  -- but it's kind of the government

10    has to want to discuss it, and sort of mediate it, but as

11    I said earlier, it's not a case where the government has

12    to --

13         MR. KOSTOLAMPROS:  But let me add --

14         THE COURT:  -- they're willing to have a

15    conversation because at this stage of the proceeding,

16    you're third parties, right?

17         MR. KOSTOLAMPROS:  Right, but let me --

18         THE COURT:  And you don't have the absolute

19    right to talk about it unless the government wants to.

20         MR. KOSTOLAMPROS:  But we raised the

21    ramifications which will ultimately harm the value of the

22    resort, and the Court said -- this is after a long

23    colloquy said look, I know, this is the Court --

24         THE COURT:  Uh-hum.

25         MR. KOSTOLAMPROS:  -- commenting to Ms.

Proceedings

1   Connor's arguments, I know but --

2            THE COURT:  This is you talking or who is

3   talking?

4            MR. KOSTOLAMPROS:  This is the Court talking,

5   Judge Bianco.

6            THE COURT:  So you're reading from Judge

7   Bianco's --

8            MR. KOSTOLAMPROS:  I'm reading -- this is the

9   transcript on page 13.

10           THE COURT:  Okay.

11           MR. KOSTOLAMPROS:  "I know, but they're

12  suggesting -- they're suggesting being the third

13  parties" --

14           THE COURT:  Right.

15           MR. KOSTOLAMPROS:  -- "that this could then be

16  tied up for years, years, and years" --

17           THE COURT:  Uh-hum.

18           MR. KOSTOLAMPROS:  -- "in the Mexican

19  government, and that the government in forfeiting this

20  property, could be harming the very victims who the

21  government in this case is trying to make whole and

22  innocent third parties who had nothing to do with this

23  case."

24           THE COURT:  Right.

25           MR. KOSTOLAMPROS:  "So why wouldn't the

36

Proceedings

1  government consider all those things?  Have you ever met

2  with them and tried to understand what the ramifications

3  would be?  I assume the government doesn't understand

4  every aspect of what the implications would be of

5  forfeiting the entire resort."

6           And that to us is why would he even have been

7  talking about Mexican law -- Mexican law only applies if

8  you're applying forfeiture as to the entire resort.  And

9  I believe Judge Bianco, at least as we all took it he

10  said look, go back and talk, how can you get the value

11  that you want ultimately to --

12           THE COURT:  Right.

13           MR. KOSTOLAMPROS:  -- victims and not hurt

14  innocent shareholders.

15           THE COURT:  Not hurt additional.

16           MR. KOSTOLAMPROS:  And, your Honor, getting --

17  how you do that I think fundamentally starting off with

18  an appraisal of the property to Government Exhibit an

19  understanding of what that property is really valued at.

20  We've had settlement discussions with the government

21  prior to two years ago frankly --

22           THE COURT:  Uh-hum.

23           MR. KOSTOLAMPROS:  -- where, you know, we

24  discussed potential options.  I think if there's an

25  appraisal here, that would set realistic expectations as

37

Proceedings

1  to what potentially a settlement could look like to move

2  forward.

3          THE COURT:  Let me hear from the government on

4  that.

5          MS. LEONARDO:  Well, your Honor, first when we

6  spoke, the Court asked us if we had considered it, and we

7  told the Court that we had, in fact, spoken with the

8  bank, and the bank's concerns were one, was the

9  government going to go in and physically seize the

10  property, and two, what about the protective order, and

11  our --

12          THE COURT:  Are you concerned with how the

13  property is being managed at this point, I mean in terms

14  of just maintaining status quo?

15          MS. LEONARDO:  Your Honor, the government does

16  have certain concerns that it's being run by Jowdy, who

17  is somebody that the government feels is an unindicted

18  co-conspirator.

19          THE COURT:  But what about all of the debt on

20  the property, and things of that nature?

21          MS. LEONARDO:  Well, that is why the government

22  suggested an interlocutory sale, which seemed to be a

23  resolution that would absolve all concerns.

24          THE COURT:  And that's a sale of the entire

25  property, right?

38

Proceedings

1          MS. LEONARDO:  The entire resort, the money

2    would be held --

3          THE COURT:  But the first step in that sale

4    process would be an appraisal, is that right?

5          MS. LEONARDO:  Yes.  And, in fact, we took

6    steps to have an appraisal performed but then --

7          THE COURT:  And they don't like your appraiser.

8    They don't like your person.  They want somebody else.

9          MS. LEONARDO:  Well --

10          THE COURT:  So you can't even agree on who is

11    going to appraise it?

12          MR. KOSTOLAMPROS:  Your Honor, there's a

13    fundamental difference --

14          THE COURT:  As a first step?

15          MR. KOSTOLAMPROS:  I mean, your Honor, here you

16    have sophisticated parties who know the property --

17          THE COURT:  Well, no, I think you know best,

18    right?

19          MR. KOSTOLAMPROS:  I mean, why wouldn't they

20    involve us?  I mean we have appraisers who -- our

21    appraisers who have already appraised that property, know

22    it extremely well.  They do appraisals in Mexico all the

23    time.  These are large entities that do that.  But again,

24    the government's going about this all on its own, exactly

25    contrary to what Judge Bianco said, and said look, you

Proceedings

1    have sophisticated parties who know what they're doing .

2    What makes you think, government, that you know what

3    you're doing?

4             MS. LEONARDO:  Your Honor, the government has

5    contracted with third parties that perform these

6    appraisals.

7             THE COURT:  So these appraisals are done at the

8    government expense as well, is that right?

9             MS. LEONARDO:  Yes.

10            THE COURT:  Do you -- are you interested at all

11   in going down a road where the other side would pay for

12   appraisals, and maybe you look at them, and consider it

13   but in the meantime -- I mean, if you're interested.

14   Again, you don't have to be because you're the

15   government, you don't have to but if you are interested,

16   and I believe everyone is interested in preserving value,

17   would it be a good road to go down to enter a preliminary

18   order today that says that there's not going to be any

19   seizure.  The government agrees there will be no seizure

20   and you can show that to people, and that basically is a

21   status quo order.  Right?

22            So you can continue selling and managing the

23   property but while that order is signed, and that will

24   obviously have to be signed Judge Bianco, talking to each

25   other about an appraisal process, having the third-

Proceedings

1  parties pay for an appraisal, so it's not a government

2  expense, and then the government can have a chance to

3  look at it, have its own appraiser look at it, and then

4  maybe go down the road to a sale, and that sale can take

5  place before an ancillary proceeding.  Is that correct?

6  I'm asking the government, under the law --

7          MS. LEONARDO:  So --

8          THE COURT:  -- or is it a part of that

9  proceeding?

10          MS. LEONARDO:  It could be worked in

11  conjunction but the government would need to know every

12  third-party claimant in order to make sure that everyone

13  has a right --

14          THE COURT:  Right.

15          MS. LEONARDO:  -- a say in that process.

16          THE COURT:  But could you -- if you had the

17  order -- the preliminary order signed, with this or a

18  status quo language in it, and parties go down the road

19  toward the appraisal process, and maybe the ancillary

20  proceeding is something that could be speeded up in some

21  way?

22          MS. LEONARDO:  That could be -- that could

23  commence as soon as a preliminary order is entered, which

24  is what we've been saying.

25          THE COURT:  So without the preliminary order,

41

Proceedings

1    nothing happens.

2            MS. LEONARDO:  Exactly.

3            THE COURT:  There's no next steps.

4            MS. LEONARDO:  That's exactly right.

5            THE COURT:  But you would be interested in

6    looking at their appraisal if -- are you willing to pay

7    for an appraisal on your side of the table there?

8            MR. KOSTOLAMPROS:  I believe we would be,

9    right?

10           UNIDENTIFIED SPEAKER:  Right.

11           THE COURT:  And is that something that the

12   government would be open to looking at?

13           MS. LEONARDO:  We would --

14           THE COURT:  You've already paid for yours,

15   right?

16           MS. LEONARDO:  We have discussed having an

17   appraisal performed, but the process was halted once our

18   discussions, you know, fell apart but we would certainly

19   want to conduct our own, and we would never say we don't

20   want to see another independent appraisal.

21           THE COURT:  Look, I mean, there's no question

22   that the third-parties --

23           MR. KOSTOLAMPROS:  But it's got to be --

24           THE COURT:  -- have a real interest in

25   preserving value.  You have the same interest, and

42

Proceedings

1   they've got a lot of experience with this, right?  That

2   is clearly what Judge Bianco was recognizing, right?  But

3   look, the government has a lot of experience in all of

4   these matters, as well.

5           So I think you would take advantage -- the

6   government should take advantage of this expertise.  They

7   should try to go down the road of interlocutory sale, and

8   -- but that's collaboratively with the third parties who

9   are wiling to pay for an appraisal for you to look at.

10          MR. KOSTOLAMPROS:  Your Honor, I --

11          THE COURT:  Let me hear about that, if you

12   think that makes sense.

13          MR. KOSTOLAMPROS:  I think that makes sense,

14   your Honor.  I think the first step in the process is the

15   appraisal because ultimately -- and frankly, there has to

16   be a recognition of what are we appraising, right?  I

17   mean if there's an issue as to the --

18          THE COURT:  I think you're appraising the

19   entire resort, even though you will still have -- you

20   still have an argument to make to Judge Bianco that not

21   all of it should be forfeited.

22          MR. KOSTOLAMPROS:  Right.

23          THE COURT:  But at this point, that's not

24   before us.

25          MR. KOSTOLAMPROS:  Right, right, right.

Proceedings

1          THE COURT:  Right?  You haven't waived

2    anything.

3          MR. KOSTOLAMPROS:  Right.

4          THE COURT:  Okay.  So in terms of what I would

5    recommend because I think that's what I can do here, I

6    would recommend that you enter -- that Judge Bianco sign

7    a preliminary order of forfeiture that includes the

8    additional language that the government has put forward

9    which preserves the status quo in terms of the resort

10   continuing to operate under these previous protective

11   orders, and that the government, which it is willing to

12   do, put language in there that it will not forfeit or

13   sell the resort until the final order of forfeiture.

14          Because the government mentioned your concern

15   with the sale of other assets?

16          MS. LEONARDO:  Do you mean seize, your Honor?

17          THE COURT:  Seize, I'm sorry.

18          MS. LEONARDO:  That the Court will not seize.

19   The only other language we would change from the draft

20   that we provided, which is marked draft subject to

21   further review, is that we would remove the language

22   which says that the government's going to forfeit the

23   proceeds of an interlocutory sale, since that is not

24   something that has been agreed upon --

25          THE COURT:  Not yet.

44

Proceedings

1          MS. LEONARDO:  -- and we would revert back to

2    the language from our original order which would be that

3    -- a, would be the real property and premises, and so

4    forth.

5          THE COURT:  Do you understand what she just put

6    on the record?

7          MR. KOSTOLAMPROS:  I don't.  Look, at the end

8    of the day, I think -- we have concerns with the language

9    in the proposed order of forfeiture.

10         THE COURT:  Because I am focusing on paragraph

11   3, right?

12         MR. KOSTOLAMPROS:  It's not just the appraisal,

13   your Honor, though --

14         THE COURT:  No, it's not -- the appraisal is

15   going to follow.  My recommendation is that this

16   appraisal process follow the entry of a preliminary order

17   of forfeiture.  And under this order, you still have

18   rights in an ancillary proceeding or in the present

19   proceeding before Judge Bianco to say -- argue that

20   certain of these assets are not subject to forfeiture.

21         MR. KOSTOLAMPROS:  Your Honor, just --

22         THE COURT:  But I think the preliminary order

23   should be signed, so that it can move on.

24         MR. KOSTOLAMPROS:  Well, I understand but the

25   issue is ultimately what's in that order, right?  And for

45

Proceedings

1   us again, it's about the seizure language --

2           THE COURT:  And the language is going to say

3   that the government will not seize the resort, will

4   continue operate under the prior protective orders, and

5   will not seize the resort prior to a final order of

6   forfeiture.

7           MR. WOLINSKY:  Your Honor, just a procedural

8   question. The judge -- Judge Bianco referred this for a

9   mediation --

10          THE COURT:  Right.

11          MR. WOLINSKY:  -- with ex parte communications

12  from the parties.  I don't believe he was referring it

13  for a recommendation from your Honor.  So if there's --

14          THE COURT:  Okay.  Well, to the extent you

15  wanted a mediator's recommendation, that's the mediator's

16  recommendation.  I understand it's ex parte.  We have a

17  criminal defendant here.  I can't have anything ex parte.

18  That's the problem.

19          MR. WOLINSKY:  No, my only -- the only reason I

20  was raising this was I understood your Honor was

21  contemplating sending some communication to the judge

22  with a recommendation as to what should happen next, and

23  I don't think that was contemplated by --

24          THE COURT:  No, because it's not an R&R

25  situation.  It's sort of a -- it's a criminal proceeding.

46

Proceedings

1          MR. WOLINSKY:  Right.

2          THE COURT:  It's not an R&R at all.  It's a

3    mediation to try to talk to you all.  Because it's a

4    criminal proceeding with a criminal defendant here, I

5    don't think that I can appropriately talk to anybody ex

6    parte, would you agree?

7          MR. WOLINSKY:  Oh, yes.  Well, your Honor, I

8    was not --

9          MR. KOSTOLAMPROS:  I agree with that.

10         MR. WOLINSKY:  I was not suggesting that in any

11   way.

12         THE COURT:  No, no, okay.  I think -- I know

13   where you're coming from.

14         MR. WOLINSKY:  What I was suggesting, and I may

15   have mis understood what your Honor was saying --

16         THE COURT:  No, I don't blame you for

17   misunderstanding because I used the word recommendation,

18   and when that comes out of a magistrate judge's mouth, it

19   sounds like an R&R, right?

20         MR. WOLINSKY:  Yes, exactly.

21         THE COURT:  Okay.  I get it.  So it was just

22   lower case "r" reffered to me to possibly mediate

23   something between the parties, the government and the

24   third parties, that is.  So to the extent that it has

25   been -- from what I heard, it would be my mediator's

Proceedings

1  recommendation that the order -- a preliminary order of

2  forfeiture be entered, and that that order include

3  language that the government has agreed to that the

4  resort should continue to operate, that it will not be

5  seized until a final order of forfeiture, and that all

6  third-parties reserve their rights to contest what assets

7  are subject to forfeiture, and those rights would be

8  adjudicated -- are those rights before Judge Bianco now

9  or do all of those rights come before Judge Bianco in the

10  context of an ancillary proceeding?

11          MR. KOSTOLAMPROS:  Your Honor, if I may add

12  that that would be --

13          MS. LEONARDO:  No third-party rights are before

14  the Court at this time.

15          THE COURT:  There's no third-party rights.

16          MS. LEONARDO:  No.  No.

17          MR. KOSTOLAMPROS:  Your Honor, if I may?

18          THE COURT:  Yes.

19          MR. KOSTOLAMPROS:  The notion that the

20  preliminary order will allow for third-parties to

21  adjudicate in the ancillary proceeding is the very

22  argument that we raised --

23          THE COURT:  Other -- I'm not talking about --

24          MR. KOSTOLAMPROS:  -- the concern that we

25  raised to Judge Bianco.

48

Proceedings

1          THE COURT:  -- I'm talking about other parties

2     that might be out there because whoever is out there is

3     entitled to notice of an ancillary proceeding.

4          MR. KOSTOLAMPROS:  That's right, and that

5     includes the 6,500 --

6          THE COURT:  That includes you and -- it does.

7          MR. KOSTOLAMPROS:  -- the 6,500 timeshare

8     owners, and the future share owners, who the way that

9     that would read right now would cause sales to cease

10    completely.

11         THE COURT:  But that's not in this.  That's

12    what --

13         MR. KOSTOLAMPROS:  But that's what we're here

14    for.

15         THE COURT:  That's when you're talking about an

16    ancillary proceeding.  What's in this that you're afraid

17    is going -- that will give you some level of comfort,

18    which is what I recommend is language that the property

19    will not be seized before a final order of forfeiture.

20    And that's what the government is willing to agree to.

21         MR. KOSTOLAMPROS:  I know but that's the reason

22    that -- that's the issue that we raised with Judge

23    Bianco.  And frankly, we didn't even recognize or realize

24    that the government was taking the position that current

25    sales and prior sales will subject to forfeiture, as

Proceedings

1  well.

2          And that gets to the heart of why we cannot

3  agree to all such language because --

4          THE COURT:  You don't have to agree to the

5  language.  That's the problem.

6          MR. KOSTOLAMPROS:  I know but I am trying to

7  impress upon you, hopefully you can get the government to

8  understand, our view is look, we have an owner right here

9  of a property.  He would never buy a property on that

10  resort if he knew that he had to come in here, and make a

11  showing that he was the rightful owner of that property.

12          MR. WOLINSKY:  Your Honor, all you're doing is

13  telling every past owner, and every future owner, that

14  they're buying a lawsuit in federal court in New York.

15          THE COURT:  Well, if the property is subject to

16  forfeiture, so be it.  I can't help that.

17          MR. WOLINSKY:  Well, we'll -- you're not

18  willing to address that issue.  The government is not

19  willing to address that issue.  Frankly, I don't think

20  Judge Bianco is going to enter an prder saying that the

21  property -- that the entire resort is subject to

22  forfeiture for very --

23          THE COURT:  But isn't that a matter -- isn't

24  that the matter under submission before him because at

25  the end of his hearing, I believe the last thing he said

50

Proceedings

1    is that matter is under submission.

2            MR. WOLINSKY:  Right, it's under submission,

3    and we've made arguments that that property --

4            THE COURT:  And you guys can agree to settle it

5    but you don't have to.

6            MR. WOLINSKY:  Understood.  The government is

7    not willing to settle it, we obviously are.

8            THE COURT:  Not on your terms, and you're not

9    willing to settle on their terms, so --

10            MR. WOLINSKY:  Your Honor?

11            THE COURT:  -- that's that.

12            MR. WOLINSKY:  It is beyond dispute, if we go

13    to an ancillary proceeding, and there is published notice

14    to 6,500 timeshare members, and 172 owners, that their

15    interests -- their existing interests are subject to

16    forfeiture, and the next thing you know, it goes on the

17    friends of Diamante home-book page, and the next thing

18    you know, it's in the New York Post, and then after that,

19    it's in the Wall Street Journal, and it's in Sporting

20    News because there are a lot of well-known sporting

21    figures who own property, sales are going to stop.

22            THE COURT:  And you've impressed that upon the

23    government, probably more than once.  Am I right?  And

24    you're --

25            MS. LEONARDO:  Well --

51

Proceedings

1          THE COURT:  -- not interested in making any

2    changes because you --

3          MS. LEONARDO:  The government is --

4          THE COURT:  Tell me your view.

5          MS. LEONARDO:  Our view is that this forfeiture

6    proceeding has been out there in the news for years.  The

7    protective order says it's forfeitable.  Nothing has

8    changed that would require us to change anything or at

9    least give up the right to forfeit the property.  You

10   know, that's the legal right here, and then the third

11   party's interest will be resolved later.

12          And we would point out that paragraph 7 of the

13   revision we provided to them, adds a paragraph saying at

14   their request, that it adjudicates the government's

15   interest without regard to any third-party's interest.

16   It's very clear.

17          THE COURT:  Which is what I said when I

18   mentioned it's without prejudice.

19          MS. LEONARDO:  Exactly.

20          MR. WOLINSKY:  Your Honor, what is going to

21   change, and I'm at a loss to understand why the

22   government does appreciate this, what is going to change

23   is publicity.

24          THE COURT:  You haven't had any publicity about

25   this criminal proceeding at all?

52

Proceedings

1      MR. WOLINSKY:  Criminal proceeding, yes.

2 Anyone --

3      THE COURT:  And the criminal proceeding didn't

4 involve the name of this resort?

5      MR. WOLINSKY:  Yes, if you do -- if you Google

6 the property like I did before I purchased, I would have

7 seen that Mr. Kenner originally filed a lawsuit against

8 Mr. Jowdy accusing him of fraud --

9      THE COURT:  Right.

10      MR. WOLINSKY:  -- that lawsuit was dismissed.

11 The government indicted Mr. Kenner, and Mr. Kenner turned

12 out to have snuckered the hockey players into wrongly

13 suing Mr. Jowdy.  That's what you will find out.

14      THE COURT:  And if you were to Google this

15 resort, you might find this forfeiture proceeding too.

16      MR. WOLINSKY:  And if you Google --

17      THE COURT:  I can't help that.

18      MR. WOLINSKY:  Well, no, you can't help it but

19 maybe you can talk some sense into the government.  What

20 we're proposing is very simple.  Let's find out whether

21 there's any equity in this project to be fighting over.

22      THE COURT:  Well, the government has agreed to

23 this appraisal procedure.

24      MR. WOLINSKY:  So --

25      THE COURT:  So you want to hold off the

53

Proceedings

1    preliminary order of forfeiture until the appraisal

2    proceeding?

3           MR. WOLINSKY:  Here's what I am proposing, and

4    I think it's very sensible.  The first thing that has to

5    happen is Mr. Kenner has to be sentenced, and we

6    appreciate that, and there can't be any sentencing until

7    there's a preliminary order of forfeiture.

8           The Federal Rules of Criminal Procedure provide

9    a mechanism for dealing with the circumstance where the

10   exact scope of the property that's subject to forfeiture

11   is indeterminate, and it provides that the Court can --

12   we can forfeit Mr. Kenner's interest, start right there.

13          THE COURT:  So -- right, it has to be

14   traceable.  I understand that.  But --

15          MR. WOLINSKY:  And then --

16          THE COURT:  -- one thing you said is that Mr.

17   Kenner is entitled to be sentenced, and he can't be

18   sentenced before this order of -- preliminary order is

19   in; is that correct?

20          MR. WOLINSKY:  That's my understanding.

21          THE COURT:  I ask the government, is that

22   correct?  So he's entitled to be sentenced and his

23   sentence is held up because we don't have the preliminary

24   order of forfeiture?

25          MR. SOUTHER:  Well, that's not entirely the

54

Proceedings

1   case.  Look, we're not parties to the case but we've

2   attended some of these proceeding.  I think there have

3   been other delays that have contributed to it.

4            THE COURT:  Okay, but that's a matter of

5   criminal procedure, and criminal law, right?  Let me ask

6   the government, you know more about criminal procedure

7   than I do.  In terms of the sentencing of this defendant,

8   what's the time table?  Can he not be sentenced until

9   there's a preliminary order of forfeiture?

10           MS. LEONARDO:  There has to be a preliminary

11  order of forfeiture, and then the forfeiture has to be

12  pronounced at the sentence, so this is a necessary step.

13           THE COURT:  To the sentencing.

14           MR. WOLINSKY:  Yes.

15           MS. LEONARDO:  Absolutely.

16           MR. WOLINSKY:  That's my understanding.  I'm

17  not a criminal lawyer, but that can address Mr. Kenner's

18  interest.  It doesn't have to address all the homeowners,

19  and all the timeshare members.

20           THE COURT:  There's a lot of interest here.

21  Mr. Kenner has an interest to be sentenced.  There are

22  people who are adjudicated to have been defrauded in the

23  criminal proceeding, and there's the interest of third

24  parties, and there's an orderly way of doing that --

25           MR. WOLINSKY:  Right.

THE COURT: -- and hopefully the orderly way is what's in the Federal Rules of Criminal Procedure 32.2. I do think that that envisions the first step being a preliminary order of forfeiture. I do think that there are important rights here that have to be considered. I think the government is well aware of it. They may be well aware at this point of maybe rolling the dice and going ahead with this language but I think that's the order in which it has to be.

Again, I'm not the district judge. I'm not even referenced on a settlement conference because it's not a civil case, it's a criminal proceeding. I've heard from everybody, and again to the extent I'm making a mediator's recommendation, that's really the only recommendation I can see going forward because I am not seeing a lot of common ground.

So if I have to say it again, the recommendation is that the order be entered with the stipulation that the government is not going to seize anything at this time, not going to seize until the end, and also that the parties go forward with a possible interlocutory sale, the first step being an appraisal and the government be open to seeing what the appraisals look like. Again, it's basically a status quo.

MR. KOSTOLAMPROS: Well, your Honor, again, I

Proceedings

1  think --

2          THE COURT:  We can argue all day --

3          MR. KOSTOLAMPROS:  Right, but I mean --

4          THE COURT:  -- but this is what you call

5  impasse.

6          MR. KOSTOLAMPROS:  And I agree with you there

7  but I think we were there before Judge Bianco --

8          THE COURT:  Well, you're still there.

9          MR. KOSTOLAMPROS:  -- and we made these

10  arguments, and Judge Bianco told the government listen to

11  them.

12          THE COURT:  But he didn't tell the government

13  what they had to do.  He told them to listen, and I think

14  they've listened.

15          MR. KOSTOLAMPROS:  Right, but I think if we --

16          THE COURT:  Listening doesn't mean agreeing

17  with you.

18          MR. KOSTOLAMPROS:  But I think if we go back to

19  Judge Bianco, as Mr. Wolinsky said, I think that Judge

20  Bianco was very open to listening to our concerns and

21  recognizing those concerns.

22          THE COURT:  And the government isn't denying

23  that.

24          MR. KOSTOLAMPROS:  Right, right.

25          THE COURT:  Is that what you're saying?

57

Proceedings

1      MR. KOSTOLAMPROS:  I am but I am --

2      THE COURT:  That's fine.  That's fine.

3      MR. KOSTOLAMPROS:  -- trying to impress upon

4  you that I don't think -- and for us, the seizure

5  language that you're recommending as a mediator here,

6  does not solve our problem, and our problem is not just

7  side this, it's the government's side, as well because it

8  will devalue the resort, because the resort will not be a

9  going concern.

10     THE COURT:  Understood.  Anything further from

11  the government?  Any final remarks you would want to

12  make?

13     MS. LEONARDO:  No, your Honor.

14     THE COURT:  Okay.  All right.  Thank you.

15     IN UNISON:  Thank you, your Honor.

16     THE DEFENDANT:  Your Honor, there is one --

17     THE COURT:  Do you want these back?

18  (Indiscernible).  Go ahead.

19     THE DEFENDANT:  Your Honor, there is one other

20  issue that when Mr. Jowdy's representatives are going

21  from the courtroom, there I was a little I submitted ex

22  parte, I just wanted to put on the record with you, and

23  the government and stay present for it.  It's ex parte

24  but we may need their assistance.

25     THE COURT:  Did the government have it?  When

58

Proceedings

1    you say ex parte --

2              THE DEFENDANT:  No.

3              THE COURT:  -- ex parte to Judge Bianco?

4              THE DEFENDANT:  Yes, that's correct.

5              THE COURT:  That's not before me.

6              THE DEFENDANT:  Okay.

7              THE COURT:  That's something you submitted to

8    Judge Bianco ex parte?

9              THE DEFENDANT:  Two weeks ago.  I'm just not

10   sure if it ever arrived here.

11             THE COURT:  You didn't see it on the docket?

12             THE DEFENDANT:  But it's an issue --

13             THE COURT:  Do you have access to the docket?

14             THE DEFENDANT:  I don't have access to the

15   docket.

16             THE COURT:  Does the government know what the

17   defendant is talking about?

18             MR. HAGGANS:  Your Honor, the defendant has

19   made a number of ex parte fillings in the case, because I

20   don't receive the filings --

21             THE COURT:  Right, you don't have it.

22             MR. HAGGANS:  -- it's difficult for me to track

23   which filing he may be --

24             THE COURT:  And to the extent it's ex parte,

25   it's not to me, ex parte.  It's to Judge Bianco.

59

Proceedings

1        MR. HAGGANS:  It would not be to you, your

2   Honor, it would be to Judge Bianco, yes.

3        THE COURT:  So --

4        THE DEFENDANT:  Well, your Honor, if Mr.

5   Jowdy's parties are all absent from the courtroom, I

6   don't have any problem addressing it with your Honor and

7   with the government because we probably need their

8   assistance.

9        THE COURT:  But again, it's not mine, it's

10  Judge Bianco's.

11        THE DEFENDANT:  I understand and I appreciate

12  that.  The issue actually is with the government and I

13  need their assistance.  I didn't have any communication

14  with the government, so I had to send it --

15        THE COURT:  Just one second.

16        Mr. Haggans, are you handling the criminal side

17  of this case?

18        MR. HAGGANS:  I am, your Honor.

19        THE COURT:  And not the forfeiture side?

20  You're on the criminal --

21        MR. HAGGANS:  We're all on the team, your

22  Honor.

23        THE COURT:  I understand you're all together,

24  but -- all right.  So --

25        MR. HAGGANS:  I am happy to remain for whatever

60

                              Proceedings

1   assistance the Court may require.

2              THE COURT:  Okay.  Third parties can go home.

3              IN UNISON:  Thank you, your Honor.

4   (Ex parte portion begins at 3:34:46 PM)

5              MR. HAGGANS:  Your Honor, I believe one of the

6   third-party counsels left a bag in the jury room, so he

7   may need some assistance to get that.

8              THE COURT:  Oh, that's too bad.

9   (Pause)

10             THE COURT:  So I am just noting that we have

11  the defendant in the courtroom.  We have the government

12  in the courtroom.  The third-party lawyers have left but

13  this is nonetheless an open courtroom.  This is not a

14  sealed proceeding.

15             Mr. Kenner, do you understand that?

16             THE DEFENDANT:  Yes, it's an interested party,

17  a former co-conspirator, Mr. Jowdy is in the back, if we

18  could ask him to leave.

19             THE COURT:  I really can't.  I can't seal the

20  courtroom.

21             MR. HAGGANS:  Your Honor, the courts are open.

22             THE COURT:  No, I agree with you.  I can't seal

23  the courtroom.  I would also note, just for the Court's

24  attention, and information, that Mr. Kenner is proceeding

25  pro se at this point, which may have been obvious from

61

Proceedings

1    the proceeding but I wanted that noted on the record.

2           THE COURT:  Okay.  So again, this is an open

3    courtroom.  I don't have the courtroom closed.  You

4    submitted something under seal.  I understand you've

5    submitted it to Judge Bianco, not to me.

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  You expressed that you wanted to

8    put something on the record in open court.  I don't know

9    if you want to do that but I want to make clear, this is

10   an open court proceeding.  The transcripts are open, as

11   well.

12          THE DEFENDANT:  Okay?

13          THE COURT:  All right.  I can put on the record

14   that you have put something on the docket but I can just

15   leave it at that because again, it's not before me.

16          THE DEFENDANT:  I understand, your Honor.  The

17   simple issue is there was some government discovery

18   delivered to me pre-trial in early 2015 on a government

19   jump drive, a Lexar jump drive.  It had password

20   KENNER2015!.

21          THE COURT:  And what about it?

22          THE DEFENDANT:  Well, it was delivered when I

23   was changed from GEO Queens facility to MDC Brooklyn on

24   April 22nd of 2015.  The U.S. Marshals delivered my

25   laptop, several hundred CDs, a hard drive and a jump

62

Proceedings

1    drive.

2              THE COURT:  And this is what's in the letter to

3    Judge Bianco?

4              THE DEFENDANT:  Yes, ma'am, yes, ma'am.

5              THE COURT:  Okay.  So I know what that is.

6              THE DEFENDANT:  Okay.

7              THE COURT:  That's under seal and that is on

8    the record.  So Judge Bianco does have access to it.

9    That's all I can assure you about that.

10             THE DEFENDANT:  Okay.  I was --

11             THE COURT:  And I don't think you should speak

12   any further about it right now because I don't think the

13   government is prepared, they haven't seen it.  I don't

14   know what they can add to it.  I can just assure you it's

15   on the docket.  The judge has it.

16             THE DEFENDANT:  Okay.

17             THE COURT:  Okay.

18             THE DEFENDANT:  If I can -- if I could just

19   speak to that, I don't have access to the docket or the

20   docket materials.  The government had, when they

21   delivered that particular jump drive in or about February

22   of 2015, there was a letter that had corresponded with it

23   several times about the password and I really just need a

24   copy of that letter for the folks at MDC.

25             THE COURT:  Okay.  So let me ask you is this.

63

Proceedings

1   Is that letter under seal to Judge Bianco because you

2   requested it be under seal?

3           THE DEFENDANT:  No, that's how Judge Bianco

4   told me to communicate with him if it was a --

5           THE COURT:  Okay, well then he's well aware of

6   it.  There's nothing really to be done here or with the

7   attorneys in court here today, because as I said, they

8   haven't seen it.  And to the extent you wanted to file

9   something, Judge Bianco told you to file it under seal.

10  So there's really nothing more to be done on that.

11          THE DEFENDANT:  Okay.  Does your Honor have a

12  recommendation how I can get a copy of the letter that

13  accompanied the jump drive back in 2015?

14          THE COURT:  Well, that's what you asked Judge

15  Bianco, right?  So he'll respond to that.

16          THE DEFENDANT:  Part and parcel, yes.

17          THE COURT:  Yeah, okay.  He'll respond.

18          THE DEFENDANT:  Okay.  All right.

19          THE COURT:  All right, thank you.

20          THE DEFENDANT:  Thank you, your Honor.

21                  (Matter concluded)

22                      -o0o-

23

24

25

64

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **16th** day of **May**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.