FILED
CLERK

5/20/2019 8:55 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 13-cr-00607-JFB
                               :
      - versus -               : U.S. Courthouse
                               : Central Islip, New York
                               :
KENNER, et al.,                : May 15, 2019
            Defendants         : 1:22 PM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

<u>**For the Government**</u>:        **Richard P. Donoghue, Esq.**
                              United States Attorney

                        BY:   **Nicole Boeckmann, Esq.**
                              Assistant U.S. Attorney
                              100 Federal Plaza
                              Central Islip, NY 11722


<u>**For the Defendant**</u>:         **Philip Kenner, pro se**
                              No. 07480-408
                              MDC Brooklyn
                              Metropolitan Detention
                        Center
                              P.O. Box 329001
                              Brooklyn, NY 11232




<u>**Transcription Service**</u>:     **Transcriptions Plus II, Inc.**
                              laferrara44@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1

2         THE DEFENDANT:  Good afternoon, your Honor.

3         THE COURT:  Good afternoon, Mr. Kenner.  We're

4  just going to call the case.  Everyone could stay seated

5  because we're recording it.

6         THE CLERK:  Calling case 13-cr-607, USA v.

7  Kenner.

8         Please state your appearance for the record.

9         MS. BOECKMANN:  Good afternoon, your Honor.

10        Nicole Boeckmann on behalf of AUSA Matthew

11 Haggans for the United States.

12        THE COURT:  Good afternoon, Ms. Boeckmann.

13        THE DEFENDANT:  Phil Kenner, defendant.

14        THE COURT:  Good afternoon, Mr. Kenner.

15        So I scheduled this, Mr. Kenner, because I

16 received an ex parte letter from you indicating that you

17 were in the SHU and discussing the whole issue with the

18 jump drive.  I did also receive a letter from your

19 girlfriend indicating the same thing -- your fiancé, I

20 think it is.

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  So I docketed the letter from the

23 fiance.  I didn't docket yours because you asked that it

24 be ex parte, although I was going to disclose it to the

25 government, just so they can look into the whole

3

Proceedings

1    situation but I think the government should -- have you

2    had a chance to look into it?

3              MS. BOECKMANN:  We have, your Honor.

4              THE COURT:  Okay.

5              MS. BOECKMANN:  I spoke to Mr. Haggans this

6    morning, who has been in contact with Nicole McFarland

7    (ph.), who is one of the staff attorneys at the

8    Metropolitan Detention Center.  She is actually not at

9    the MDC.  She is at a conference in Colorado but has been

10   in contact with the facility.

11             They are right now working through the process

12   of having Mr. Kenner removed from the SHU, and having the

13   disciplinary expunged.  Mr. Haggans did do a review.  Mr.

14   Kenner is correct, he was given access to this particular

15   drive at some time.  So it seems to have been an error on

16   the part of the MDC, which they are working to rectify.

17             However, I was told that because of the size of

18   the thumb drive that he had, they will not permit that.

19   They'll permit the material.  They are going to give us

20   back the thumb drive, and ask that we put it on an

21   external hard drive instead to return to him based on the

22   size of the particular device.

23             I don't know whether because it is so small,

24   they feel it can be secreted somewhere.  I am not exactly

25   certain what their concern is with that but we can

4

Proceedings

 1    certainly do that in short order.

 2            But it's my understanding that they are in the

 3    process of --

 4            THE COURT:  Well let me --

 5            MS. BOECKMANN:  -- reversing what they had

 6    done.

 7            THE COURT:  Yeah.  I would just -- and I

 8    appreciate -- you can thank Mr. Haggans for looking into

 9    it quickly but the -- two things is, first of all, I'm a

10    little concerned when I hear reverse -- reverse the

11    process.  I don't want him to be in the SHU for days

12    because they're trying to --

13            MS. BOECKMANN:  No, she was trying to make it

14    happen.  I was hoping it was going to be done by the time

15    I was up here.

16            THE COURT:  All right.

17            MS. BOECKMANN:  I didn't hear that it was.  My

18    hope is that -- I hate to ever promise anything on behalf

19    of a facility that I am not in charge of, but they

20    understand the urgency and that it should be done today.

21            THE COURT:  Okay.  Yes, if he's not out of the

22    SHU by the end of the day today, then just tell this on

23    the phone, I want to know why.

24            MS. BOECKMANN:  Right.

25            THE COURT:  It's clear it was an error.

5

Proceedings

1           MS. BOECKMANN:  Yes.

2           THE COURT:  And my second issue that I want you

3    to convey back to her is -- and how long -- when did this

4    start, Mr. Kenner?  What was the first day?

5           THE DEFENDANT:  The end of April.

6           THE COURT:  So, I don't understand why --

7           THE DEFENDANT:  It's about 16 days, your Honor.

8           MS. BOECKMANN:  I think we only became aware of

9    it --

10           THE COURT:  No, I am not criticizing you --

11           MS. BOECKMANN:  Yes.

12           THE COURT:  -- but --

13           MS. BOECKMANN:  No, I know.

14           THE COURT:  -- I want you to tell her that

15    whatever, you know, internal mechanism there are for

16    someone looking into -- when he's telling them that this

17    is an error, I got this from the government, it shouldn't

18    have taken them 16 days to -- and if he didn't reach out,

19    who knows how long it would have been before them --

20           MS. BOECKMANN:  That's --

21           THE COURT:  -- to verify whether what he is

22    saying is true.  It just seems to me -- you know, we're

23    not talking about, you know, contraband where he had

24    drugs or something like that.  He had a flash drive that

25    he said was discovery.  You would think before putting

6

Proceedings

1  someone in the SHU, that they would call the United

2  States Attorney's Office to see whether or not what he is

3  saying is true or not.  I'm just shocked that something

4  as basic as that when you're dealing with -- you know,

5  they know that discovery goes in and out of the jail

6  electronically.  So that is, to me, not acceptable.

7           I mean, maybe there's more to the story on

8  their end as to why they didn't believe what Mr. Kenner

9  was telling them, but you know on its face, it seems like

10  this could have been cleared up, you know, within one

11  phone call in hours, not 16 days but I don't know if

12  there's anything you want to add, Mr. Kenner, to that

13  issue.

14           THE DEFENDANT:  Yes, your Honor, and I

15  appreciate your compassion for that because it's been a

16  -- it's been a very difficult situation being in complete

17  isolation for that period of time.

18           THE COURT:  Well, why didn't they believe you?

19  Do you know why they didn't believe what you were telling

20  them or --

21           THE DEFENDANT:  The short version of the event

22  was they called me and told me to get ready to go work on

23  my case, which I walked from the building that all the

24  inmates are in to the east building into the visiting

25  room.  So I picked up my materials, this bag but in the

7

Proceedings

1  paper form, as you'll remember that was a problem, and

2  when I went out in the hallway, they said let me see your

3  papers, very typical.  I handed it to them, and they said

4  turn around, put your hands behind your back.

5          I said, "Can you tell me what's going on?"

6          The Lieutenant said -- Lieutenant Perry said,

7  "You have contraband.  It was found in your possession in

8  the East visiting room with all your discovery."

9          I said, "Lieutenant Perry, there's no

10 contraband in my discovery.  It's the same stuff that's

11 been there for four-and-a-half years."

12         He said, "Take it up with the disciplinary

13 officer.  He'll come see you in the next month."

14         I said, "But Lieutenant, it's -- it can't be

15 anything."

16         He goes, "It was a flash drive."

17         I said, "It's a flash drive?  It said -- it has

18 the password Kenner2015! right on the package."

19         He said, "I don't care what you say.  You've

20 got to take it up with disciplinary.  You're getting a

21 shocked."

22         And I said, "Okay."

23         And then they put me up there.  I spoke to

24 effectively each person that walked by the SHU unit, and

25 I told them -- half of the staff was compassionate, and

8

Proceedings

1    said "What a bunch of idiots."  The other half said, "Not

2    my problem.  You've got to take it up with the DHO when

3    they get here."

4                I was told the DHO can show up anytime in the

5    first 30 days.  In 16 days, I haven't seen the DHO yet.

6                I explained to each person that it had the

7    government password written right on the package, and

8    it's a jump drive, and if they open it up, the best of my

9    recollection was that it was privilege log material that

10   the government had given me somewhere in the first

11   quarter of 2015, while I was at Queens.  And that the

12   U.S. Marshals had delivered that with my computer, the

13   external hard drives, the discs, all to MDC, and as -- if

14   your Honor recalls, about a week later, they told me that

15   all the materials were available for discovery use

16   pretrial at that point.  So --

17               THE COURT:  Have you had other issues with that

18   -- I know you had issues with certain officials at the

19   jail or time that you've told me about, but is it --

20               THE DEFENDANT:  Your Honor, I appreciate again

21   your recollection of that.  It's -- I'm working through

22   those issues the best I can.

23               THE COURT:  Okay.

24               THE DEFENDANT:  There's some very wonderful and

25   compassionate people over there that know the struggle

Proceedings

1  it's been, and at the moment, I am getting as much time

2  as I can muster up with the help of the good people.

3         THE COURT:  All right.

4         THE DEFENDANT:  The other thing I just wanted

5  to raise for your Honor's knowledge is that I appreciate

6  that they're going to send the jump drive back to the

7  government, they're going to put it on a hard drive, and

8  send the hard drive in, but if your Honor recalls, about

9  six to nine -- and I appreciate that, and that's all we

10  could ask for.  I just want to refresh your recollection

11  that about six to nine months ago -- excuse me about a

12  year ago now, I had told your Honor that one of the

13  officers had stolen one of the external hard drives that

14  the government had given us, terabyte drives, back at

15  GEO, and that they refused to acknowledge where it went

16  or why it was missing.

17         And then when we had asked your Honor for a

18  replacement to be able to backup the computer, if you

19  remember that, MDC said that we could not have a backup

20  hard drive because hard drives are illegal.

21         THE COURT:  Right.

22         THE DEFENDANT:  And we said it's just going to

23  be a hard drive that sits in the discovery box with a 12-

24  inch cable that plugs in, so we can backup the computer,

25  and they made it a real hard deal about it, and continue

10

                              Proceedings

1   to cause trouble for my paralegal when he's come on

2   several occasions saying you didn't -- you had

3   authorization to come as a person but you didn't get

4   authorization to bring the backup hard drive.

5           So I find it a little bit ironic that it's a

6   simple solve for Ms. McFarland -- and I -- just so your

7   Honor knows, I wrote to her three times from the SHU and

8   said can someone people just please plug the jump drive

9   in?  It's got the password right on the package from the

10  government.  You'll see it's privileged material, and the

11  jump drive is locked.

12          THE COURT:  Well --

13          THE DEFENDANT:  Because there is an issue at

14  the jail, your Honor, that if you had a jump drive where

15  you could put porn or other, you know, contraband on it,

16  and you could transport it throughout the -- I don't know

17  what you do with it when you have it on there.  I've got

18  the only computer, as far as I know but that's why they

19  don't want an unlocked device but this is a locked device

20  by the government.  It's no different than --

21          THE COURT:  I'm not suggesting that they

22  shouldn't be concerned when they saw it but as soon as

23  you tell them it's discovery, I would expect that whoever

24  you're telling that to -- I don't know why -- I don't

25  know whether those letters got to Ms. McFarland or not

11

Proceedings

1    but that's the part that bothers me.

2           But in any event, so just -- I know we've gone

3    -- I know we've had a lot of different issues in terms of

4    what they allow and don't allow but I just want to make

5    sure what Ms. Boeckmann is now proposing, that's not

6    going to create any issues for you, as long as they

7    follow through on that, right?

8           THE DEFENDANT:  That's fantastic, your Honor.

9           THE COURT:  All right.

10          MS. BOECKMANN:  And I am going to have Mr.

11   Haggans reconfirm with the MDC exactly what type of

12   device they want, and what kind of labeling they want on

13   it, since it sounds like they at one point had the

14   external hard drive, requested this, and now they want to

15   go back --

16          THE COURT:  Right.

17          MS. BOECKMANN:  -- to what's happened before.

18   They certainly, you know, do change their policy on

19   electronic data from time to time, but I will have him

20   clarify that and I will express to her, the Court's

21   concern about the 16-day delay and why this wasn't

22   addressed immediately, being that he claimed it was

23   discovery and it was labeled in the fashion it was

24   labeled.

25          THE COURT:  All right.  Let me just -- while I

12

Proceedings

1    have you and Mr. Kenner, I just want to make sure that
2    there's no other issues we can address but I did want to
3    -- hopefully your paralegal will give you these but these
4    just came in.
5            So as you know, the government has been through
6    first Magistrate Judge Brown and now Magistrate Shields,
7    trying to have a dialogue with the third-parties
8    regarding the wording of any potential preliminary order
9    of forfeiture.  I know you wanted to participate in those
10   discussions but they don't have any obligation -- I mean,
11   they could include you if you want but because it's
12   really their negotiations with each other of the
13   government trying to address their concerns about the
14   language, it's not something that they are required to
15   allow you to participate in but I did want to make sure
16   that the fruits of those discussions, which now are being
17   conveyed to me, that you have those documents.
18           So if --
19           THE DEFENDANT:  Your Honor, if I could let you
20   know, the -- Magistrate Shields was wonderful.  She
21   brought me to court yesterday.
22           THE COURT:  Oh, good.
23           THE DEFENDANT:  And I sat in, at least on the
24   interaction between the parties.  I understand the
25   contempt between both sides.

13

Proceedings

1    THE COURT:  Okay, so that's --

2    THE DEFENDANT:  They did let me leave with, I

3  think it was document 607, and some of the alterations.

4    THE COURT:  Well, the government submitted May

5  -- I think it might have been today -- I have it in my

6  chambers, if the marshals will just hold you a minute,

7  we'll give you a copy of it.

8    THE DEFENDANT:  Thank you.

9    THE COURT:  But what they said was the

10  recommendation of Judge Shields was to what the language

11  should be, so they submitted a proposed new preliminary

12  forfeiture order, and then today, one of the -- counsel

13  for Danske Bank -- I don't know how you pronounce that.

14    THE DEFENDANT:  [Dan-ska].

15    THE COURT:  Danske, said that that wasn't

16  really like a -- there was no recommendation from Judge

17  Shields.  That the government is overstating what

18  occurred.

19    So I will give you a copy of their letter, and

20  the government's letter, so you could start reviewing

21  that, and if any of that creates any issues for you, and

22  I don't know whether now there's going to be more

23  discussion, I may have to have a conference with

24  everybody here to address that but we'll give you this

25  paperwork, and you can always write me if you have some

14

Proceedings

1   commentary on it, okay?

2          THE DEFENDANT:  Thank you, your Honor.

3          THE COURT:  All right.  So are there any

4   other --

5          MS. BOECKMANN:  The only other thing I wanted

6   to raise, your Honor, is in having been asked by Mr.

7   Haggans to cover this, and having been here when the case

8   was tried in 2015, I was inquiring to him sort of where

9   we were at, and he had mentioned that probation had been

10  asked to do some updates.

11         I then followed-up with probation just to see

12  where they were at, and they had only been given a

13  request with respect to Mr. Constantine.  I did ask them

14  at that point to do one for Mr. Kenner, as well.  I

15  didn't know if the Court wanted that but I was concerned

16  that when we get to the point that we're ready to be

17  sentenced, probation was telling me it takes them

18  sometimes several months to do an update.  I'm not

19  exactly certain why that is.  I'm sort of pressing them

20  on that because I am trying to get everybody poised, so

21  that all the documentation is done once the forfeiture

22  litigation has come to fruition.

23         THE COURT:  Yeah, that was my goal too, and

24  what happened was that we had a conference many months

25  ago where I thought Constantine's PSR was going to be

15

Proceedings

1  updated.  He was going to be interviewed, and was going

2  to be updated, and for whatever reason, that did not

3  happen, and then it was brought to my attention that that

4  did not happen, and then they did ask -- I forgot how

5  much time they asked for but that's -- I gave them more

6  time prepare it.

7           I didn't -- you know, obviously updating a

8  report is more important when someone is out on bail

9  because they have more information to report.  I'm not

10  sure what the update of Mr. Kenner would reflect but --

11           MS. BOECKMANN:  Yeah, it would only be any

12  disciplinaries while he has been in jail but mostly I

13  wanted to find out whether or not the Court wanted one.

14           THE COURT:  No.

15           MS. BOECKMANN:  And if they did -- if they

16  (sic) don't want one, then I can let them know but when I

17  checked with them --

18           THE COURT:  Yeah.

19           MS. BOECKMANN:  -- they said they only had a

20  request for Mr. Constantine.

21           THE COURT:  Yeah, Mr. Constantine's lawyer had

22  requested it, and I thought it was reasonable given it's

23  been years, and they wanted to document what he has been

24  up to, I think, from a positive stand point but Mr.

25  Kenner, unless you tell me you want an update done, I

16

Proceedings

1    don't see any point to updating your PSR.

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Okay.

4              THE DEFENDANT:  There's been no disciplinary

5    action --

6              THE COURT:  Okay.

7              THE DEFENDANT:  -- until this last 16 days.

8              THE COURT:  All right.

9              MS. BOECKMANN:  Okay.

10             THE COURT:  So to your answer your question --

11             MS. BOECKMANN:  Excellent.

12             THE COURT:  -- the forfeiture part of it, I

13   have been awaiting the resolution of these ongoing

14   negotiations and I haven't fully digested what I am going

15   to do now because it appears like there was some progress

16   from your office's letter to me.

17             MS. BOECKMANN:  Yes.

18             THE COURT:  But then I got this letter today,

19   suggesting that there may be -- so I think I'm probably

20   going to have a conference in the next couple of weeks to

21   address whether there's any additional progress that

22   could be made on that, and you know, the bottom line is

23   that I wanted to make sure that there were going to be --

24   if the Court were to order some type of forfeiture the

25   government were requesting, that there were not going to

17

Proceedings

1   be unintended consequences to innocent third parties that

2   were going to take place simply because of the procedure

3   in a forfeiture action of them only being able to object

4   after --

5            MS. BOECKMANN:  Right.

6            THE COURT:  -- the order, and when you're

7   dealing with properties of these sizes, and timeshares,

8   and all sorts of issues like the banks, I was concerned

9   that your team was not fully aware of what some of the

10  unintended consequences financially might be, including

11  to the victims.

12           MS. BOECKMANN:  Right.

13           THE COURT:  So that was the whole goal of this

14  was for them to sit down with the banks, and have a

15  magistrate judge help try to bridge the gap.

16           So I am going to speak to Judge Shields just to

17  see, you know, what transpired, and then we'll have a

18  conference on that in the near future, and then -- but my

19  goal was what you suggested, have a sentencing

20  documentation and Mr. Kenner's objections are in, and --

21           MS. BOECKMANN:  Yes, Mr. Haggans said there was

22  something scheduled to handle the objections to Mr.

23  Kenner's report.  He thought there was already.

24           THE COURT:  Yeah.

25           MS. BOECKMANN:  A conference.

18

Proceedings

1        THE COURT:  You don't have something further

2   you're putting in -- on the PSR, you put in your

3   objections, right?

4        THE DEFENDANT:  The objections had been

5   submitted a while back.

6        THE COURT:  Yeah.

7        THE DEFENDANT:  And I think she may be

8   referring to oral arguments --

9        MS. BOECKMANN:  Yes.

10       THE COURT:  -- on or about June --

11       MS. BOECKMANN:  On the objections, correct.

12       THE COURT:  On the objections.

13       MS. BOECKMANN:  Yes.

14       THE DEFENDANT:  On the objections, 11th or

15   12th.

16       THE COURT:  Right.

17       MS. BOECKMANN:  Yes.

18       THE DEFENDANT:  I don't recall.

19       THE COURT:  So that's the next step.

20       MS. BOECKMANN:  Okay.  I just wanted to -- I

21   was mostly checking in with probation and making sure

22   that --

23       THE COURT:  No, I appreciate that but we'll

24   double-check just to make sure it's not further delayed

25   than I thought it was.

19

Proceedings

1          MS. BOECKMANN:  Mr. Constantine's they said is

2    underway.

3          THE COURT:  Okay.

4          MS. BOECKMANN:  I just think -- they then told

5    me about Mr. Kenner --

6          THE COURT:  Okay.

7          MS. BOECKMANN:  -- and I didn't -- having not

8    been present, I just didn't know what the status was, and

9    I wanted to alert the Court that they didn't have a

10   request, so in the event you wanted one, I wanted to get

11   that started, and if you don't, I can let them know

12   there's --

13         THE COURT:  All right.

14         MS. BOECKMANN:  -- everything is as is.

15         THE COURT:  Yep.

16         MS. BOECKMANN:  Terrific.

17         THE COURT:  Okay.  Mr. Kenner, do you have any

18   other issues for today?

19         THE DEFENDANT:  Not for today, your Honor.

20   There's a few open items.  I will just address them in a

21   letter to you.

22         THE COURT:  Okay.

23         THE DEFENDANT:  And again, thank you for

24   intervening on this issue.

25         THE COURT:  Yes, sure.  And I was going to try

20

Proceedings

1    to bring you in on Monday but I wanted to give the

2    government some time to look into it because otherwise,

3    usually I can't do anything until they've had a chance to

4    look into it, so I apologize that even after you told me,

5    there was some additional couple of days.  I know every

6    day in there is unpleasant.

7              But I would just ask -- and this is not -- I

8    don't want you to take this as a criticism, when you're

9    submitting things to me, just -- I would not overuse the

10   ex parte, making them ex parte.  Unless it's reviewing

11   some defense -- some strategy of what you're about --

12   you're asking me about, if it deals with your paralegal

13   and what you wanted to do, those are the things that

14   would be in the ex parte category.

15             THE DEFENDANT:  Okay.

16             THE COURT:  But if it's objections, if it's

17   anything where I'm going to need the government to

18   respond to, then don't label it ex parte because this --

19   and this is a good example.  You labeled it ex parte and

20   I wanted the government to see it right away because I

21   knew they would realize this is a mistake but then I

22   wasn't sure if there wasn't something in here that you

23   didn't want them to know, so I didn't want to give them

24   your letter without your permission.

25             THE DEFENDANT:  I understand.

21

Proceedings

1          THE COURT:  So just be cognizant of -- if the
2   letter is not really revealing anything, or they're going
3   to get an advantage because they know what you're
4   doing --
5          THE DEFENDANT:  Okay.
6          THE COURT:  -- don't label it ex parte, so that
7   I can have their input, make them, you know, respond to
8   it, okay?
9          THE DEFENDANT:  Okay.  I understand and --
10         THE COURT:  All right.
11         THE DEFENDANT:  -- thank you for the clarity,
12  your Honor.
13         THE COURT:  So I may wait until the June date
14  to address the forfeiture issue.  I may have a conference
15  earlier but obviously you're free to make any written
16  submissions you want prior to that date, okay?
17         THE DEFENDANT:  Yes, sir, your Honor.
18         THE COURT:  All right.  Thank you.
19         THE DEFENDANT:  Thank you so much.
20         MS. BOECKMANN:  Thank you.
21         THE COURT:  Sure.
22              (Matter concluded)
23                   -o0o-
24
25

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **18th** day of **May**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.