

Thomas McC. Souther  
Telephone: (646) 558-6052  
souther@freehsporkinsullivan.com

Thomas McC. Souther  
Freeh Sporkin & Sullivan, LLP  
350 Fifth Avenue  
Suite 6903  
New York, New York 10118

May 21, 2019

**BY ECF**

The Honorable Joseph F. Bianco  
U.S. District Court for the Eastern District of New York  
100 Federal Plaza  
Central Islip, New York 11722

Re:   United States of America v. Kenner, et al, Cr. No. 13-607 (JFB)

Dear Judge Bianco:

     Kevin P. Mulry of Farrell Fritz, P.C. and I represent Diamante Cabo San Lucas, LLC ("DCSL"), Diamante Cabo San Lucas S. de R.L. de C.V. ("Diamante SRLCV"), KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy (together, the "DCSL Parties") in connection with the forfeiture proceeding in this case.  I respectfully submit this letter in response to the Government's renewed request for preliminary orders of forfeiture against defendants Phillip A. Kenner ("Kenner") and Tommy C. Constantine ("Constantine").  The revised proposed preliminary orders of forfeiture submitted by the Government on May 14, 2019 have in our view done nothing to alleviate the concerns that the DCSL Parties and the other third parties raised in our previous submissions in advance of the Court's March 1, 2019 forfeiture hearing in the referenced case.

     The Government continues to insist that it is entitled to seek to forfeit an entire resort development in Mexico, known as Diamante Cabo San Lucas (the "Resort" or the "Property"), despite the fact that it is indisputable that hundreds of millions of dollars have been poured into the acquisition and development of the Resort, which has absolutely no nexus to the defendants or the crimes charged in this case.  Perhaps even more stunning, however, is the Government's continued insistence that the entry of their proposed Preliminary Orders of Forfeiture will have no impact on the ability to sell real estate parcels or time share memberships, because as the Government has put it "we are just looking to maintain the status quo."

1

It is incomprehensible to the DCSL Parties how the Government can take the position that the proposed Preliminary Orders of Forfeiture that the Government has resubmitted will have no adverse impact on sales at the Resort. Such a position is even more baffling, given the Government's position that all of the nearly 7,000 real property owners and time share members at the Resort will be given notice of the proposed Preliminary Orders of Forfeiture, and will be required to justify to the Government and the Court that they are innocent owners of their respective interests. Word of the requirement that existing buyers and members must file a claim with the Court to clear their title would spread like wildfire throughout Cabo San Lucas and be used by other resort developers to discourage sales at Diamante. Presumably, prospective purchases of real property and time share memberships will be delayed—if not completely ground to a halt—because purchasers, if any, would insist on pre-clearing any purchase with the Government and the Court. It simply is unrealistic for the Government to cling to the theory that sales will not be affected adversely.

This development project is facing a financial crisis and has been treading water since the imposition of the protective order in 2015. Available lines of credit have been exhausted. Despite meeting its modified sales goals for real estate parcel sales and time share memberships over the past three and one-half years, the cash flow generated by these sales barely enables the project to cover its development costs and operating expenses. Those sales revenues, however, are insufficient to enable the project to meet its significant debt obligations, as evidenced by the fact that approximately $30 million in principal payments on the loan facilities extended by Danske Bank are past due. Moreover, continued expansion and development of the project in accordance with the master plan is stalled, and will remain stalled, absent the restructuring of the debt and the infusion of new capital. None of that will materialize if the cloud of potential forfeiture of the entire Property continues to linger over the Resort.

It is easy for the Government to say that they expect that the status quo will be maintained. They do not have the impossible task of attempting to sell interests in the Resort in the face of the enormous hurdles erected by the Government. Moreover, the Government apparently has given no consideration to how potential shortfalls in cash flow at the project will be addressed, when sales indeed are adversely impacted by the entry of the proposed Preliminary Orders of Forfeiture that include forfeiture of the Resort. Who is supposed to bear that risk? The Government certainly has not volunteered to fund any operating shortfalls.

The DCSL Parties submit that it would be unfair, unduly harsh, and punitive to the DCSL Parties and the hundreds of innocent third parties with interests in the Resort, if the Court were to grant the Government's sweeping request that the Resort—and the interests of all third parties other than defendants—are deemed to be subject to forfeiture, even preliminarily. Hundreds of millions of dollars have been invested and reinvested in this project over the past thirteen years by the DCSL Parties, the development's lender, Danske, property purchasers, and time share members, not to mention the more than a decade of work by thousands of individuals. None of these interests have any nexus whatsoever to the defendants or the crimes charged in this case.

Finally, it is dispiriting to the DCSL Parties that this case continues to be used as a forum in which to unfairly malign the DCSL Parties, and Mr. Jowdy in particular, as evidenced by some of the

2

recent arguably defamatory filings by third parties falsely accusing Mr. Jowdy of wrongdoing. The Government claims that it is interested in preserving as much value as possible in the Property, but the Government has contributed to this toxic climate by publicly denigrating Mr. Jowdy throughout the forfeiture proceedings. It began with inaccurate and unsubstantiated accusations in the original filings submitted to the Court when the Government filed an *ex parte* motion to obtain the Protective Order in 2015, and has continued up through the proceedings this week before Magistrate Judge Shields at which the Government made disparaging comments about Mr. Jowdy in open court. The challenges to preserve value in the Resort have been enormous, but these baseless and unwarranted personal attacks on Mr. Jowdy by the Government and others have made it even more difficult for the DCSL Parties to "maintain the status quo."

The DCSL Parties and Mr. Jowdy respectfully request that the Court consider this letter and their previous letters, dated January 30, 2019 (Dkt. 611) and February 22, 2019 (Dkt. 625) and deny the Government's request for a preliminary order of forfeiture of the Resort, of KAJ Holdings, LLC, of Diamante Properties, LLC (other than Kenner's interest in Diamante Properties, LLC), of CSL Properties 2006, LLC, and of Somerset Properties, LLC. The DCSL Parties ask the Court to consider limiting any forfeiture order, insofar as it may relate to the Resort or the ownership interests in the Resort, to the forfeiture and seizure of the defendants' interests, if any, in Baja Ventures 2006, LLC and Diamante Properties, LLC.

Thank you for the Court's consideration.

Respectfully submitted,

*/s/ Thomas McC. Souther*

Thomas McC. Souther

cc: All parties of record via ECF
     Doreen S. Martin, Esq. (By Email)
     Kevin P. Mulry, Esq. (By Email)
     Marc Wolinsky, Esq. (By Email)
     Phillip A. Kenner (By first-class mail)