

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

May 21, 2019

**VIA ECF**
The Honorable Joseph F. Bianco
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re:   United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco:

We write on behalf of third party Danske Bank A/S, London Branch ("Danske") to respond to the government's recent filings [Dkt. Nos. 655, 662], to object to the government's proposed preliminary order of forfeiture (the "Proposed Order") [Dkt. No. 655] and respectfully request that the Court consider alternatives set forth below in its consideration of a Preliminary Order of Forfeiture that would cause the least amount of harm to innocent third parties.

*The Government's Recent Filings*

As to the government's recent filings, the government's letters did not apprise the Court that at the mediation conference before Magistrate Judge Anne Y. Shields the parties did not reach an agreement, thus potentially leaving the Court with the impression that the parties had reached an agreement. Our concern with the government's letter was justified in that the Court stated at a hearing the very next day to address a letter regarding Defendant Kenner's Special Housing Unit ("SHU") issue that based upon the government's May 14, 2019 letter "it appears like there was some progress . . . [b]ut then I got this letter today [the May 15, 2019 letter on behalf of Danske Bank] . . . ." May 15, 2019 Tr. at 16, attached hereto as Exhibit 1.

Further, the government also failed to apprise the Court that Magistrate Judge Shields recognized that she did not have authority to issue a formal Report and Recommendation to this Court. May 14, 2019 Tr. at 46 [Dkt. No. 662-1] (Judge Shields stating, "It's not an R&R at all. It's a mediation to try to talk to you all."). Judge Shields's "recommendation" was only as part of the mediation process, not as any formal recommendation. Additionally, Judge Shields made those



Hon. Judge Bianco
May 21, 2019
Page 2

recommendations based on the government's refusal to negotiate over the scope of forfeiture.[1] The third parties, however, believed that the Court had requested that the government consider all alternatives in order to minimize any potential negative impact to innocent third parties.

### *The Government's Proposed Order Is Directly Contrary to the Court's Protective Order and Would Lead to Significant Harm to the Resort Property and Innocent Third Parties*

We were hopeful that after the Court requested that the government consider the concerns of the third parties, that we would be able to reach an agreement with the government that would cause the least amount of harm to the Resort Property and by extension to innocent third parties. Unfortunately, since that hearing, it has become clear that the government's position is more extreme than we had originally thought. When we met with the government on March 13, 2019, the government made clear for the first time that its position is that despite the Court's prior order allowing for sales of timeshares and home sales (the "Protective Order"), those interests are forfeitable. How can the timeshare owners and individual property owners be subject to forfeiture when they are not subject to the Protective Order?

Under the government's Proposed Order, over 6,500 timeshare and home owners, some of whom are not even U.S. citizens or residents, will be given notice that their interests in a foreign property are subject to forfeiture and they will be required to make some sort of showing to the U.S. government and/or to this Court proving their purchases are "valid." The government has not explained what "valid" would mean. Under forfeiture law, these purchasers would not be bona fide purchasers for value because the government could argue they were on notice that the Resort Property was subject to forfeiture at the time of purchase. *See* 21 U.S.C. § 853(n)(6)(B). The government has stated that there would need to be a showing that the purchaser bought at "market value." Market value, however, is not an easily established criteria given that sales were made at different times and each home site or timeshare has different characteristics. The government mistakenly believes that this process of establishing and assessing value would not be too onerous or would not take a significant amount of time—even though there are over 7,000 owners who purchased from 2010 through the present.

Furthermore, under the government's position, sales of every parcel from the Resort Property are subject to forfeiture, this would include a multimillion dollar sale in 2014 of a parcel of land to an entity that ultimately spent millions on building and developing two hotels on the

---

[1] The Court should also be aware that even though the parties submitted *ex parte* position letters, Magistrate Judge Shields did not meet with any of the third parties or the government *ex parte* during the mediation because she believed that she could not have *ex parte* communications because the criminal defendant was present. May 14, 2019 Tr. at 45 (Magistrate Judge Shields stating, "We have a criminal defendant here. I can't have anything ex parte."). This Court, however, made clear that the defendant was not required to attend. *See* May 15, 2019 Tr. at 12.



Hon. Judge Bianco
May 21, 2019
Page 3

property with over eight hundred rooms, high-end restaurants, and other resort amenities that are scheduled to fully open in the summer 2019. The government has been fully apprised of those sales and has stood by allowing all of those sales to occur while the criminal case has been pending. These sales have inured to the Resort Property's benefit because those funds have then been used to further develop the Resort.

The government naïvely assumes (without any basis) that if the Court entered the Proposed Order it would have no effect on the Resort Property's value or ability to continue as a going concern. No prospective buyer will purchase a timeshare or home on the Resort knowing that their property/interest is subject to seizure in the U.S. and that they will have to defend and prove their interest to the U.S. government and/or this Court.[2] Equally, if the government's Proposed Order were entered by the Court, the developer would have no alternative but to immediately cease all real estate and timeshare sales activities as, at the very least, any sale entered into in the full knowledge of the order would amount to a misrepresentation on the part of the seller and would expose the developer to additional litigation risk. These timeshare and home sales are the lifeblood of the Resort and without such sales occurring the developer will have no liquidity to pay its expenses—i.e. development expenses, maintenance expenses, interest and principal payments due to Danske, and all other expenses to keep the Resort a going concern. Such an action could lead to hundreds of local employees and their dependents losing their livelihoods and could place the financial condition of many suppliers to Diamante into a weaker state; potentially impacting additional indirect job losses—each of these parties effectively becoming a new class of victim.

To be clear, under the government's Proposed Order the Resort will not meet its debt and financial obligations, forcing it to default further on its loans with Danske and default on debts to other creditors. Danske has made clear to the government that it will not contribute any additional cash and will not forbear on any additional commitments. The very real scenarios include Danske seeking foreclosure under its loan agreements and/or creditors forcing the Resort into *Concurso* (bankruptcy) in Mexico.

As mentioned above, at the mediation before Magistrate Judge Shields on May 14, 2019, the government took the position that only the language as to forfeiture of the Resort Property was at issue and the third parties believed that the Court requested that the government take into account all of the third parties' concerns, including the scope of forfeiture, i.e., alternatives to seizing the Resort Property. The government refused to consider any alternative position, other than

---

[2]   Also, the government assumes that a non-U.S. citizen or resident would submit themselves to jurisdiction in the U.S. Assuming those individuals do not, or even if they did, the government could not explain how it could enforce seizure of a timeshare interest or home in Mexico owned by an entity or individual with no jurisdictional ties to the U.S. As we explained in our prior letter, the government would have to seek the assistance of the Mexican government and Mexican courts to enforce any such seizure.



Hon. Judge Bianco
May 21, 2019
Page 4

essentially clarifying in its Proposed Order that it will not seek seizure of the Resort Property until after ancillary proceedings are completed. The government's proposed seizure language is an illusory concession as it does not alleviate the harm that will result if the Proposed Order is entered—the developer could not realistically continue to operate and no potential buyer will purchase a timeshare or home site on the Resort knowing they will have to show to the U.S. government and/or a U.S. court that its purchase is "valid."

The government simply refuses to consider the ramifications of its position. Instead, the government views that because the Resort has been a going concern since the Court issued the Protective Order, issuance of the government's Proposed Order will not lead to the results forecasted by Danske and the other third parties. The government blindly ignores that the Resort is a going concern only because of Danske's forbearance on over $30 million on amortization payments. This includes that the borrower had insufficient liquidity to repay the maturing $15 million revolving loan extension on December 31, 2018 and consequently there is a continuing payment default. Danske has so far continued to fund draw requests to protect and preserve the value of its collateral but there is no contractual obligation on the bank to do so. As of today, there are approximately $1.5 million of potentially available funds within the revolver. In the event that there were to be an immediate cessation of cash collections in the aftermath of the government's Proposed Order, this would equate to 13 days liquidity based on the 2018 development spend rate. Furthermore, Danske is under no obligation to fund any additional draw requests and would not (and could not) fund a draw request in such a scenario if the bank determines that it is not a commercially viable decision.

***There is no Equity Value in the Resort Property that would Justify Forfeiture of the Resort Property and the Attendant Consequences***

The government's attempt to seize the Resort Property is fundamentally misguided. It is based on the mistaken assumption that there is equity value in the Resort Property that could then be used to compensate victims of the defendant's fraud. Throughout these proceedings, Danske has advised the government that there is no equity value in the Resort and provided the government with an independent appraisal undertaken by JLL supporting Danske's position. Danske's appraisal shows that there is not enough value if the Resort Property were sold to cover the amount Danske is owed. By seeking forfeiture of the Resort Property, the government will not be able to compensate any victim of defendant's fraud and will create thousands of additional victims— current employees, timeshare and home owners on the Resort together with creditors of the Resort as well as Danske and its shareholders.

To put into perspective the government's overzealousness here, the amount of tainted funds represents a fraction of the funds used to purchase the Resort Property and an even lesser fraction of the total amounts spent to purchase and develop the Resort Property. Specifically, the government acknowledged in its motion for forfeiture that the $65 million purchase price of the Resort Property was "largely financed by a loan from Lehman Brothers[,]" which is the loan



Hon. Judge Bianco
May 21, 2019
Page 5

Danske subsequently purchased. [Dkt. No. 401 at 21]. According to the government, $7 million was raised for a down payment and without those amounts the property would not have been purchased. *See id.* In fact, the Resort Property definitively would not have been purchased without the initial loan. Of the $7 million down payment, the government stated that $2.5 million is attributable to defendant's fraud. *See id.* at 21–23. This equates to less than 4% of the purchase price of the Resort Property and 1.3% of amounts due to Danske. This of course does not take into account the millions of dollars in improvements at the Resort Property as a result of the millions of dollars innocent timeshare and home owners used to purchase their property and interests. The government, however, is willing to cause harm to all of those innocent third parties, some of whom were also original victims of the defendant.

***Danske's Position***

The government proceeds as if Danske and the other third parties have no rights whatsoever until an ancillary proceeding. That is simply not the case. The government fails to appreciate that this is a resort property in Mexico. The government will have to enforce any seizure of a third party's interest in Mexico. Further, the government's proposed action will lead to immediate due process violations. *See Monroe Savings Bank, FSB v. Catalano*, 733 F. Supp. 595, 599 (W.D.N.Y. 1990) (finding that not allowing bank to foreclose on property subject to forfeiture would be an "impermissible 'taking' under the Fifth Amendment"). Additionally, this Court has made clear that it will consider innocent third parties' concerns regarding the unintended consequences of the government's proposed forfeiture.[3]

---

[3] *See* May 15, 2019 Tr. at 16–17 ("[T]he bottom line is that I wanted to make sure that there were going to be -- if the Court were to order some type of forfeiture the government were requesting, that there were not going to be unintended consequences to innocent third parties that were going to take place simply because of the procedure in a forfeiture action of them only being able to object after -- . . . -- the order, and when you're dealing with properties of these sizes, and timeshares, and all sorts of issues like the banks, I was concerned that your team was not fully aware of what some of the unintended consequences financially might be, including to the victims.")



Hon. Judge Bianco
May 21, 2019
Page 6

As such, Danske respectfully requests that the Court deny the government's Proposed Order and consider the following alternatives:

(1) Limit forfeiture to defendant's interest in the Resort Property, which consists only of his interests in Baja Ventures 2006, LLC and Diamante Properties, LLC, thus ensuring that the due process rights of third parties are not violated; or

(2) To the extent the Court intends to issue an order that goes beyond defendant's interest:

a. Order forfeiture of only the U.S. equity interest in Diamante Cabo San Lucas LLC, which owns an interest in Diamante Cabo San Lucas S. de R.L.de C.V. (the Mexican entity that is the second place beneficiary under the Mexican trust that owns the Resort Property), making clear that the Resort Property is not subject to forfeiture, including all timeshare and home sales interests in the Resort;[4] or

b. Issue a Preliminary Order of Forfeiture that the defendant's interest in the Resort Property is forfeited, and allow for further consideration of a potential interlocutory sale, to the extent there is no harm to innocent third parties and it is shown that there is equity value in the Resort Property through an independent appraisal agreed to by the relevant third parties.[5]

---

[4] In this scenario, Danske's loan remains, home and timeshares owners as well as the 2014 parcel sale are not challenged, and the obligations of the Resort remain in place. Further, Mexican law issues will not be involved because the forfeiture would only concern the U.S. equity interest.

[5] The government and the relevant parties had previously discussed the potential of an interlocutory sale. Unfortunately, those discussions also did not lead to an agreement for many reasons. Among other things, the government refused to acknowledge existing timeshare and home sales and acknowledge the amount of Danske's loan. Without such acknowledgements, there would be no clarity on what was being sold to a potential new buyer. Further, the government engaged a consultant to apparently manage the potential sale process without any input from Danske or the other third parties. The government could not even provide a C.V. or a listing of that consultant's experiences, let alone any experience with selling a 1,500 acre resort property in Mexico. Danske, however, is willing to further discuss the potential of an interlocutory sale. Any sale, however, should be managed by Danske, who is the only party here with the relevant experience and knowledge to appropriately manage the sale process. Additionally, under DOJ's own guidance, any potential discussion of an interlocutory sale must first begin with an up-to-date appraisal of the property showing that there is value in the property after paying innocent lienholders. If there is no equity value, there is simply no rationale to seek forfeiture of the Resort Property.



Hon. Judge Bianco
May 21, 2019
Page 7

       Thank you for the Court's consideration of this matter.  We also respectfully request the opportunity to be heard on this matter before the Court enters a preliminary order of forfeiture.

       Respectfully,

       George Kostolampros
       Doreen S. Martin

cc:    All parties of record via ECF
       Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)
       Marc Wolinsky, Esq. (Diamante Doce, LLC) (by email)