

Thomas McC. Souther
Telephone: (646) 558-6052
souther@freehsporkinsullivan.com

Thomas McC. Souther
Freeh Sporkin & Sullivan, LLP
350 Fifth Avenue
Suite 6903
New York, New York 10118

September 3, 2019

**BY ECF**

The Honorable Joseph F. Bianco
United States Circuit Judge
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:   United States of America v. Kenner, et al, Cr. No. 13-607 (JFB)

Dear Judge Bianco:

      Kevin P. Mulry of Farrell Fritz, P.C. and I represent Diamante Cabo San Lucas, LLC, Diamante Cabo San Lucas S. de R.L. de C.V., KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy (together, the "DCSL Parties") in connection with the forfeiture proceeding in this case. I am writing regarding the revised proposed preliminary orders of forfeiture submitted by the Government on August 14, 2019 (the "Revised Proposed Preliminary Orders"). These Revised Proposed Preliminary Orders continue to seek the forfeiture of the entire Resort with some carve outs, but have in our view done nothing to alleviate one of the most acute concerns raised by the Court at the conference on July 2, 2019, and by the DCSL Parties and the other third parties in our previous submissions. That concern is the adverse impact that a preliminary order of forfeiture will have on the ability to continue to generate sales of real property and time share memberships at the Resort. This is particularly problematic if the proposed preliminary order seeks forfeiture of the entire resort or leaves open the question of who will be the owner and developer of the Resort pending the outcome of an ancillary proceeding. The DCSL Parties continue to have objections to and concerns with the Government's Revised Proposed Preliminary Orders.

      The Government continues to ignore the economic reality of the perilous financial situation this project faces. The DCSL Parties and others have been seeking to engage the Government in

constructive discussions to reach a solution, not only as to the wording of a proposed preliminary order of forfeiture, but more broadly a solution that provides a path forward for the development to remain financially viable. Regrettably, the Government seems determined to forge ahead without the input of the parties that have the most at stake in this project and are in the best position to provide insight into the likely impact a proposed preliminary order of forfeiture will have on the project.

The Government's intransigence over the past four years and insistence on pursuing the forfeiture of the entire resort ignores the indisputable fact that hundreds of millions of dollars have been poured into the acquisition and development of the Resort that have absolutely no nexus to the defendants or the crimes charged in this case. Rather than exercising prosecutorial discretion and seeking a practical solution to identify a means to secure compensation for the victims of the defendants' criminal conduct, the Government continues to overreach. In fact, the Government could not offer the Court a single example of any other Government forfeiture even remotely close to what the Government is pursuing in this case. The Government's mantra has been to "maintain the status quo" at the project until the ancillary proceedings resolve the ownership issues. The Government, however, repeatedly only provides obstacles and not solutions as to how it expects the developer to accomplish this now nearly impossible task in the face of uncertainty as to the ownership of the project. Moreover, without an infusion of capital, this project is facing a cash flow crisis. Who does the Government expect will fund the looming cash shortfall? How are essential construction projects going to begin if lines of credit are exhausted and there is no new capital available? How does the Government expect the project to fund salaries for over 1000 employees on a weekly basis? The Government's response apparently is . . . we do not want to think about that right now; that is your problem.

At this stage, the DCSL Parties believe that the prospect of extracting any value from the Resort to compensate the victims of the defendants' criminal conduct is increasingly remote. To make matters worse, the Government's cavalier disregard of the financial warnings that the DCSL Parties and Danske Bank have been imploring the Government to take into consideration likely will result in a reduction in value of the Resort. Such a reduction in value will adversely affect hundreds if not thousands of innocent third parties, including real property owners, time share members, employees of the project, third-party vendors, and employees of those third-party vendors. This negative impact was among the concerns the Court specifically raised with the Government at the hearing on July 2, 2019, but it still does not seem to resonate with the Government. The DCSL Parties believe that the only possibility for the defendants' victims to receive any compensation from the project would be if the project is able to obtain financing, continue with development, and pay Danske Bank without being impeded by the Government.

This project is in desperate need of an orderly restructuring equivalent to what parties might pursue in a pre-packaged bankruptcy filing. No one benefits from the uncertainty of the future ownership of the project that will accompany the entry of a preliminary order of forfeiture that leaves open the question of who will own and operate the Resort on a going forward basis. The Government has been unwilling to discuss the broader picture, insisting that it must proceed one step at a time and the first step is to have the Court enter a preliminary order of forfeiture. This is a complicated situation that requires the Government to work collaboratively with the DCSL Parties, Danske Bank, and the homeowners to come up with a practical solution. The Government recently agreed to meet with

Danske Bank on September 5, 2019, which is a step in the right direction, but there must be a greater sense of urgency to reach a solution that will enable this project to survive. We urge the Court to direct the Government to engage in such a dialogue with the DCSL Parties, Danske Bank, and the homeowners.

The Government repeatedly has disparaged Ken Jowdy since it obtained its *ex parte* protective order in 2015 and continued to denigrate him unfairly as recently as the July 2, 2019 conference before Your Honor when it argued that Mr. Jowdy "obtained a home, we believe without any value given." (July 2, 2019 Tr. 25). Such an argument is disingenuous at best, because the Government has had financial records from both the DCSL Parties and we believe from Danske Bank for years that reflect what Mr. Jowdy paid for his undeveloped parcel of land at the Resort. Not once in the more than four years since the entry of the protective order has the Government sought to have a dialogue with the DCSL Parties to address their recently articulated unfounded "concerns" that Mr. Jowdy purportedly obtained a home at the Resort "without any value given." It is ironic that the Government seems willing to discredit Mr. Jowdy when it suits their argument, and yet the Government has been content to have Mr. Jowdy continue as manager and developer of the Resort for the last four years.

The Government's August 14, 2019 filing reveals that Mr. Jowdy apparently is not alone in having incurred the Government's ire. The Revised Proposed Preliminary Orders include a laundry list of at least 35 names of individuals and entities in paragraph (f)(iv), in addition to the two defendants, who are excluded from the carve outs outlined in paragraphs (f)(i-iii).[1] The Government offers no explanation for including these individuals and entities in a criminal forfeiture order. Moreover, the Government offers no reason to believe that these individuals or entities have an ownership interest in the Resort, let alone why such an interest, if any, was not obtained for fair value. The Government has been provided with information on all real estate owners and timeshare members at the Diamante Resort and should not be allowed to go on a fishing expedition at this late date, while at the same time smearing the reputations of innocent individuals by listing their names in the same category as the criminal defendants in a preliminary order of forfeiture in a criminal case.

The DCSL Parties previously have requested that the Court consider limiting any forfeiture order, insofar as it may relate to the Resort or the ownership interests in the Resort, to the forfeiture and seizure of the defendants' interests, if any, in Baja Ventures 2006, LLC and Diamante Properties, LLC. We recognize that the Court has indicated that it was not inclined to limit a preliminary order of forfeiture in that manner, but the DCSL Parties firmly believe that any preliminary order of forfeiture that is not limited in this fashion is likely to have a detrimental effect on the Resort and thousands of innocent third parties.

Mr. Jowdy has dedicated more than fourteen years to this project, but the most important consideration for him at this stage is that the project be given a chance to survive and flourish, and that innocent third parties are not harmed. Accordingly, Mr. Jowdy advises the Court that he is willing to consider all reasonable options to achieve that objective. He and the other DCSL Parties

---

[1] For good measure, the Government added to the list all current or former employees of Lehman Bank and Danske Bank. Providing adequate notice to all current and former employees of these two banks may provide a challenge to the Government.

are acting in good faith in an effort to identify a solution that seeks to avoid the collateral damage that the DCSL Parties believe is likely to flow from the entry of a preliminary order of forfeiture that either leaves open the question of who will be the owner and developer of the Resort pending an ancillary proceeding, or fails to include a restructuring plan that will at least give the project a chance to succeed. Absent a collaborative effort by the Government, Danske Bank, the DCSL Parties, and the homeowners to achieve this objective, the collateral consequences that the DCSL Parties and others fear will flow from the current path the Government is pursuing may be unavoidable.

    Thank you for the Court's consideration.

    Respectfully submitted,

    */s/ Thomas McC. Souther*

    Thomas McC. Souther

cc:    All parties of record via ECF
       Doreen S. Martin, Esq. (By Email)
       Kevin P. Mulry, Esq. (By Email)
       Marc Wolinsky, Esq. (By Email)
       Phillip A. Kenner (By first-class mail)