

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SK/JMH  
F. #2013R00948

*610 Federal Plaza*
*Central Islip, New York 11722*

September 12, 2019

<u>By Hand and ECF</u>

The Honorable Joseph F. Bianco  
United States Circuit Judge  
for the Court of Appeals, Second Circuit  
100 Federal Plaza  
Central Islip, New York 11722

        Re:    <u>United States v. Philip A. Kenner and Tommy C. Constantine</u>  
              <u>Criminal Docket No. 13-607 (JFB)</u>

Dear Judge Bianco:

      The government respectfully submits this letter in response to defendant Constantine's supplement to his motion for a new trial based on the alleged ineffectiveness of his trial counsel.  <u>See</u> ECF No. 704.  For the reasons set forth below, Constantine's supplemental argument is meritless and, for the reasons set forth in this and prior filings, Constantine's motion should be denied in its entirety.

      Constantine argues that his trial counsel was ineffective because counsel did not employ two specific text messages in the cross-examinations of victims Jay McKee and Michael and Kristin Peca.  Constantine further argues that employing these text messages would have established that the defendants had apprised the victims of certain additional uses of GSF funds at the outset (consistent with subsequent "authorization" emails), and thereby would have altered the GSF accounting in a manner that exonerates Constantine of the GSF fraud.  This argument fails on multiple fronts.

      First, the Court has already considered—and rejected—these two text messages (among many others) as providing a basis for a new trial.  In a motion filed on November 28, 2016, co-defendant Kenner argued that the quoted text messages were among a body of evidence that showed that the government's witnesses committed perjury and were "sufficiently material to undermine confidence in the verdict."  ECF No. 417 at 106; <u>see</u> <u>id.</u> at 122 (quoting both text messages); <u>id.</u>, Exs. 401, 417 (same); <u>id.</u>, App'x Ex. McKee issues at 2, 8-9 (same).  The Court rejected Kenner's argument and stated, "Kenner's perjury claims merely reiterate the same credibility issues that his counsel vigorously explored at trial on cross-examination of the government's witnesses and during his opening statement and

summation.  Kenner also testified in great detail as to these issues during the defense case.  Therefore, any purported perjury was fully considered by the jury, which—after nine weeks of testimony and the introduction of more than 1,000 exhibits—had ample opportunity to fully evaluate the veracity of each witness in this case[.]" ECF No. 501 at 3-4.  The Court further concluded, "after careful consideration of the parties' submissions, contentions at oral argument, and the extensive trial record," that "a new trial is not warranted because there is no real possibility that an innocent person has been convicted." Id. at 4.  In other words, the text messages quoted in Constantine's supplemental filing, once again raised to the Court's attention approximately three years after the Court already considered them, do not materially alter assessments of the witnesses' credibility and the defendants' guilt.

       Second, trial counsel's choice not to raise these two text messages in cross-examination was not unprofessional, unreasonable, or otherwise constitutionally deficient, because the text messages were not exculpatory.  The defendants represented that GSF funds would be used to fund litigation against Ken Jowdy to recover an investment in Mexico, not funneled into additional investments; rather, the additional interests in Eufora, airplane hangars, and an airplane that the defendants claimed would be bestowed to the victims were merely benefits the victims would receive in exchange for participating in the GSF.  See Trial Tr. at 420, 452-54, 465-70 (M. Peca testifying that GSF was a "legal fund designed for a civil action against Ken Jowdy" and that the other interests were "more of an incentive" for participating); Trial Tr. at 685-87 (K. Peca describing GSF as a legal fund to sue Ken Jowdy and the "other minor items," such as shares in Eufora an an airplane, "as incentives if we were willing to put this large money upfront"); Trial Tr. at 1814-17, 1822-23 (McKee testifying that GSF was a "war chest" to pay Ronald Richards' legal expenses to pursue legal action against Ken Jowdy to recoup losses from a previous investment in property in Mexico, and not for other uses).  The two text messages are consistent with this understanding.

       Furthermore, the text messages are evidence of the defendants' fraud.  As with the "authorization" emails, they show the defendants discussing Eufora, airplane hangars, and an airplane, but wholly omitting the multiple personal expenditures that Constantine made with GSF funds (Constantine's rent, Kenner's tequila company, etc.).  With regard to the investments the text messages do mention, once again, the defendants failed to disclose that Eufora's patents had been pledged as collateral, the airplane hangars were in bankruptcy, and the airplane had been repossessed; and ultimately, the victims did not acquire any portion of these assets, despite the defendants' promises.  See generally ECF No. 370 at 28-29.  In light of the foregoing, trial counsel's choice not to raise the two text messages in cross-examination was a sound strategic decision, as any such cross-examination would have elicited a sharp redirect examination emphasizing that the victims received none of the benefits promised.

       Third, raising the two text messages in cross-examination would have been cumulative of other questioning and unlikely to elicit a different response.  This is because trial counsel already successfully confronted the victims about their initial conversations related to GSF including a discussion of Eufora, airplane hangars, and an airplane.  See Trial

Tr. at 470, 481, 553-54 (M. Peca admitting that some of the contents of the "authorization" email had been discussed in the initial GSF meeting, including that claims by Juneau and Moreau would get settled, and based "on our conversation that the incentive would be acquiring percentages and things, so we wanted to know exactly how much before we got involved"); Trial Tr. at 770-75 (trial counsel questioning K. Peca about how Eufora, the "airplane and a hangar" were discussed in the initial GSF meeting; K. Peca responding, "I do remember them mentioning that there will be incentive[s], if you will, that if we go ahead with this Global Settlement Fund, we'll benefit from it, from Eurofa" and admitting that it's possible that "the bad apples" Nolan, Juneau, and Moreau came up in the initial meeting); Trial Tr. at 1877-79 (trial counsel questioning McKee about Constantine's claims regarding acquiring ownership interests "from the bad guys for their Eufora shares as well as the Avalon hangar building" and the plane; McKee responding that the statements do not refresh his recollection but he does not doubt their accuracy).  Therefore, trial counsel already elicited evidence that the initial GSF meetings contained some discussion of the victims obtaining additional ownership interests in Eufora, airplane hangars, and an airplane, and the jury took that evidence into consideration when weighting the witnesses' credibility and the strength of the government's case.

Fourth, the two text messages do not alter the GSF accounting in a manner that exonerates Constantine.  In addition to the Pecas and McKee, multiple GSF victims testified at trial that they intended their funds to be used for legal expenses against Ken Jowdy to recoup losses from an investment in Mexico.  See ECF No. 370 at 14.  Ultimately, the evidence showed that only $225,000 of the GSF funds were used for that purpose.  As the Court previously found, "none of the government's witnesses testified that they approved using the GSF for the defendants' individual gain."  ECF No. 501 at 2.  Yet, the defendants diverted GSF funds to pay for: (1) automotive work ($90,000); (2) legal fees to various attorneys (approximately $156,000); (3) rent for his personal residence ($18,000); (4) architectural services ($2,400); and (5) a "multitude of additional disbursements . . . that arguably do not fall within the GSF's ambit," including $450,000 to purchase an airplane.  ECF No. 501 at 60 & n. 18; see also id. at 33 (summarizing Ronald Richards' testimony as to other transfers).  In the end, the victims put more than two million dollars into the GSF and got nothing in return.

Finally, Constantine cannot show any prejudice in connection with his claim.  As the government has previously argued, GSF was but one of three frauds, any one of which would have supported the jury's verdict as to the conspiracy charged.  As the Court has already concluded, "the witness testimony and documentary evidence . . . sufficiently established that Constantine agreed with Kenner to participate in all of the objectives of the conspiracy.  In particular, bank records show that both defendants routinely diverted third-

party funds intended to finance the Hawaii Project, Eufora, and the GSF to pay for undisclosed personal expenditures[.]" ECF No. 501 at 2.[1]

For the foregoing reasons, the government respectfully requests that Constantine's supplemental motion for a new trial on the basis of ineffective assistance of counsel be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/
Saritha Komatireddy
J. Matthew Haggans
Assistant U.S. Attorneys
(718) 254-7000

cc: All counsel of record (via ECF)
Philip A. Kenner, defendant pro se (via certified mail)

---

[1] Constantine states in his letter that "it is unclear exactly if and when Kenner's texts were disclosed to Constantine." See ECF No. 704 at 2 n.4. The record reflects that, on March 24, 2014, the government produced to Kenner the "imaged copies of the electronic devices that were recovered" from Kenner's home; the inventory of these devices includes Kenner's laptop and cellphone. See ECF No. 48 at 1; ECF No. 678 Ex. 2. Those materials then underwent a "privilege review." Id. at 1. Firewall counsel "reviewed the electronic materials seized" from Kenner's home and categorized the documents by their privilege status. See ECF Nos. 111 at 1. After completion of the privilege review, the government provided the material deemed not privileged by firewall counsel to Constantine on two occasions. See ECF No. 165; ECF No. 198 (noting that the production included "text messages" from "Kenner's laptop and/or cellphone").