

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

September 26, 2019

George Kostolampros

**T 202.344.4426**
**F 202.344.8300**
gkostolampros@venable.com

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York  11722

      Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco:

    We write on behalf of Danske Bank A/S, London Branch ("Danske") to reiterate Danske's view regarding the government's proposed preliminary orders of forfeiture (the "Proposed Orders"), as they relate to the resort property located in Diamante Cabo San Lucas (the "Resort Property"), and as a follow up to Danske's September 18, 2019 request for the Court's assistance with respect to avoiding the unnecessary and potentially devastating harm to innocent third-parties that the Proposed Orders can be expected to cause.  Danske has attempted to reasonably and equitably resolve the issues the Proposed Orders will cause to the Resort Property and innocent third-parties.  The only obstacle to a mutual resolution that is in everyone's best interests is the government's intransigence.  As set forth below and in our prior correspondence, the government's Proposed Orders do nothing to benefit victims and, by causing significant harm to innocent third parties, go well beyond punishing the defendants.  The government continually makes the point that third party interests will be adjudicated in ancillary proceedings but that is simply irrelevant because the harm will inure to Danske and other third parties, including thousands of innocent owners of properties or interests at the Resort Property, prior to any ancillary hearing.

    Given the Court's prior statement that it would issue a preliminary order of forfeiture either the last week of September or first week in October, we write to respectfully request that the Court limit the preliminary order of forfeiture to defendants' interests or to the U.S. equity interests in the Resort Property so as to avoid harming innocent third parties and thereby imposing an excessive fine in violation of the Eighth Amendment because of the harm to innocent third parties.



The Honorable Joseph F. Bianco
September 26, 2019
Page 2

***The Government's Refusal to Enter into an Agreement with the Bank Will Harm Innocent Third Parties and Further Harm Victims.***

The government's refusal to move forward with an agreed-to resolution prior to the issuance of a preliminary order of forfeiture is rooted in the government's errant beliefs that the "status quo" of the Resort Property as a going concern will remain even after a preliminary order is issued and that the Resort Property is worth more than what Danske is owed.  As this Court recognized at the July 2019 hearing, the government has not offered anything to the Court that supports the government's position that the Resort Property's value and innocent parties will not be harmed by the government's proposed forfeiture of the Resort Property.  Further, Danske has made clear multiple times that the liquidity crisis it long predicted is now here and Danske will not (and indeed, as a public company with obligations to its shareholders, cannot) infuse the Resort Property with additional funding or loan modifications as it had in years past without an orderly agreed process for a sale and one in which Danske's lien is recognized to a certain amount.  There is, thus, without Danske providing additional liquidity, no ability to maintain the status quo of years past.  Without an immediate resolution, it is inevitable that cessation of development and sales leading to value destruction is the likely outcome.

Further, the government's belief that the Resort Property's value exceeds the amount of Danske's $180,000,000 lien is simply wrong.[1]  Filed under a separate motion to seal for the Court to consider is a 2017 appraisal issued by Jones Lang LaSalle ("JLL"), a well-known independent company that routinely provides these kinds of appraisals; the government received a copy of this appraisal in 2017.  This appraisal makes clear that the Resort Property is worth well below the amount owed to Danske, which obtained its interest as a bona fide purchaser for value.  Although JLL has not completed a recent appraisal, Danske has recently been advised by JLL that it does not believe the value has increased.  Given the 2017 valuation, after Danske's senior secured lien is paid, there will likely be *no cash* to share with the government and more importantly the victims.  Along with offering a guaranteed amount covering the amount of tainted funds purportedly used to purchase the Resort Property, Danske has also offered to discount its lien amount.  Danske remains bewildered at why the government will not agree to this proposal, which provides victims with a guaranteed cash payment with a potential additional upside to the extent the interlocutory sale brings in more funds than Danske's discounted lien amount.  Right now, the victims have no such guarantee and face uncertainty over litigation in an ancillary proceeding and significant risk that the Resort Property's value will be further materially diminished.  How does the government

---

[1]    The lien amount provided herein is exclusive of the default interest that has accrued since December 31, 2018 when the borrower defaulted by failing to repay Facility C and failing to pay accumulated amortization relating to Facility A.  With the inclusion of default interest, which Danske is entitled to receive under the relevant agreements, Danske is now owed, at a minimum, approximately $22 million of compounded interest through the end of 2019.  In other words, by year end, the $22 million increases the size of Danske's lien to $202 million.



The Honorable Joseph F. Bianco
September 26, 2019
Page 3

propose to recover for the victims if the Proposed Orders are entered and they have the impact that Danske and others are predicting?

Simply put, Danske's proposal ensures an orderly interlocutory sales process in which Danske will commit to the additional liquidity needs of the Resort Property through an expedited interlocutory sale. Without an agreed-to resolution prior to the issuance of the Proposed Orders including the Resort Property, the Resort Property's ability to continue as a going concern is, at best, uncertain. As written, the Proposed Orders leave unclear who the ultimate owner and developer of the property will be in the future and when that will be determined. The Government takes the unsupported position that nothing substantively will change once the Proposed Orders are issued. But that just defies common sense. If issued, the Proposed Orders that include the Resort Property will affect on-going sales. It is naïve to think that a potential buyer would spend hundreds of thousands or even millions of dollars to buy a home site on the Resort Property when it is unclear whether the Resort Property's planned development may change with a new owner. Further, it is also naïve to think the Proposed Orders, if issued, will not have some effect on time share sales. Given the current lack of liquidity any effect on sales will have a material effect on the Resort Property continuing as a going concern—i.e., to be able to pay its employees, vendors, and loan interest and principal to Danske.

There, however, is no need for this uncertainty or outcome to occur—all the government must do is agree to Danske's proposed resolution that avoids value destruction while also ensuring that millions are available for distribution to the victims. In all events, if the Court signs the Proposed Orders, Danske will have no choice but to seek alternative remedies including but not limited to filing a motion to proceed with an interlocutory sale.

***The Government's Proposed Forfeiture of the Resort Property Is an Excessive Fine and Violates the Eighth Amendment Because of the Harm to Innocent Third Parties.***

The Proposed Orders violate the Excessive Fines Clause of the Eighth Amendment because the Proposed Orders put in motion a series of events that will harm *innocent* third parties, including the very victims the government claims it seeks to help. The well-recognized principles applied by courts to evaluate whether a punishment is excessive under the Eighth Amendment make clear that the disproportionate treatment imposed by the Proposed Orders is forbidden by the Eighth Amendment.

"A court's discretion in ordering criminal forfeiture is cabined by the Eighth Amendment's Excessive Fines Clause. The amount of forfeiture 'must bear some relationship to the gravity of the offense that it is designed to punish.'" *U.S. v. Peters*, 732 F.3d 93, 99 (2d Cir. 2013) (quoting *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1995)). In an *in personam* action like the one before the Court, "a monetary penalty will be considered excessive within the meaning of the Eighth



The Honorable Joseph F. Bianco
September 26, 2019
Page 4

Amendment when there is a lack of proportion between the gravity of the offense and the harshness of the penalty." *See United States v. Milbrand*, 58 F.3d 841, 845 (2d Cir. 1995). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality. The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. *See also Austin* v. *United States*, 509 U.S. 602, 606 (1993) (noting the Eighth Circuit's statement that "'the [g]overnment is exacting too high a penalty in relation to the offense committed'"). It is plain that the forfeiture of the Resort Property violates the Eighth Amendment as an excessive fine.[2]

The government seeks to forfeit the Resort Property as property involved in or traceable to the defendants' wire fraud, conspiracy to commit wire fraud and money laundering conspiracy. In support of its claim that the Resort Property was proceeds of defendants' criminal activity, the government contends that the Resort Property would not have been bought but for the approximately $7 million of stolen and laundered funds that were used by the defendants to fund the down payment. The government goes too far. Rather than seek to forfeit only the tainted down payment or defendant Kenner's interest in the Resort Property, the government grabs for the entire Resort Property, which the government (incorrectly) believes is worth more than amounts owed to Dankse. But the Resort Property was purchased in January 2005 for $65 million. Whatever value the Resort Property can now fetch in a sale is the sole result of the developer's and Danske's commitment, over the past fourteen years, to developing the Resort Property. During those fourteen years, Danske and the developer devoted time and additional, legitimately sourced money—not connected to defendants' conspiracy—to create a first class resort. In other words, any value that exceeds the $65 million purchase price was created by developing the property and sales of parcels and properties to innocent third parties, i.e., value created by legitimate activities. By trying to take the entire Resort Property—and any value created by legitimate activities—the penalty the government seeks to impose is disproportionate to the offense committed to purchase the Resort Property.

In assessing whether the forfeiture here is disproportionate, the Court should consider the grievous and irreversible harm that the government's Proposed Orders will cause innocent third-parties, including third parties such as Danske, time share owners and land owners, vendors, creditors, and employees on the Resort Property (see effects of forfeiture on third parties outlined in Danske's letters dated February 6, 2019, February 20, 2019, August 16, 2019, and September 18, 2019). The government may contend that, because this is a criminal proceeding, it is an *in personam* proceeding and harm to third parties cannot be considered in evaluating whether the

---

[2] Even though Danske is a third party, the Court can and should consider Danske's arguments. *See United States v. Nicoll*, 13-cr-385 (SRC), 2015 WL 13628130 (D.N.J. April 4, 2019) (finding that although the third party lacked standing to challenge the government's theory of nexus, the third party's argument "has brought to this Court's attention the need to revisit that issue").



The Honorable Joseph F. Bianco
September 26, 2019
Page 5

penalty sought is an excessive fine. Although "criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited," the Second Circuit has recognized that criminal forfeiture incorporates "aspects of an *in rem* proceeding against property tainted by the defendant's criminal conduct." *United States v. Daugerdas,* 892 F.3d 545, 548 (2d Cir. 2018).

Here, because the Proposed Orders seek forfeiture of the entire Resort Property as being "involved in the offense," this is essentially an *in rem* proceeding. As such, in determining whether a proposed *in rem* forfeiture violates the Excessive Fines Clause, the Court should consider "(1) the harshness of the forfeiture (e.g., the nature and value of the property and ***the effect of forfeiture on innocent third parties***) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such an offense; (2) the relationship between the property and the offense, including whether use of the property in the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive; and (3) the role and degree of culpability of the owner of the property." *Milbrand*, 58 F.3d 841 at 847-848 (emphasis added). The forfeiture undoubtedly will affect third parties disproportionately. And while third parties can and will seek to litigate their interests in ancillary proceedings, ancillary proceedings will—at least in Danske's case—not be enough. Indeed, without an agreement ensuring an orderly sale process and funding for the Resort Property during the sales process, the Resort Property's value is likely to materially diminish well before any ancillary proceeding begins.

***The Court Can and Should Limit Forfeiture to Defendant's Interest or U.S. Equity Interest in the Resort Property.***

Danske respectfully requests that the Court consider its proportionality arguments above in the context of the harm resulting to third parties if the government's proposed order is issued and limit the Proposed Orders to Defendant's interest or the U.S equity interests in the Resort Property. Limiting forfeiture to those interests ensures the obligations of the Resort Property to innocent third parties, including time share owners, land owners, creditors, vendors, employees and Danske, while at the same time serving the purpose of criminal forfeiture, which "is designed to punish the offender, and cannot be imposed upon innocent owners." *Peters*, 732 F.3d at 99.

The government has expressed the concern that if the Court issued an order limited to the equity interest in the Resort Property, Danske could immediately foreclose on the Resort Property. Danske, however, as part of its offer to the government, offered to commit to fund the Resort Property through an agreed-to interlocutory sale of the equity interest. Even if Danske moved to foreclose on the Resort Property, the Trust Agreement provides that the equity interests in the Resort Property would receive any proceeds from the foreclosure that exceed the value of Danske's lien.



The Honorable Joseph F. Bianco
September 26, 2019
Page 6

The government has not shown that it can even effectuate an order of this Court seizing the Resort Property, which is located in Mexico. As we highlighted to the Court several months ago, the Resort Property is located in Mexico and is owned by a Mexican trust and it is our understanding that to the extent the government obtains a forfeiture of the Resort Property, the government must seek assistance from the Mexican government and a Mexican court in order to actually seize the property.[3] It is unclear how long the process of effectuating seizure could take to resolve. Thus, the specter of years of litigation remains without any assurance or commitment that the Resort Property could continue on as a going concern.

Finally, if the Court intends to grant the government's most recent version of its Proposed Orders, Danske respectfully requests that the Court delete language set forth in paragraph (f)(iv) referencing current or former employees of Danske, including current employees David Daniel and Peter John Hughes. Specifically, in paragraph (f)(iv), the Government has carved out from its proposed exception to forfeiture any interest in the Resort Property owned or purchased, directly or indirectly, from certain individuals and entities. Although the government has offered no evidence that any current or former employees of Danske, including Messrs. Hughes and Daniel, own any such interest, the government has included them in the Proposed Orders. Messrs. Hughes and Daniel have offered to provide the government with a sworn statement that neither they nor their family hold any interest in the Resort Property. As such, there is simply no basis to include any language in the Proposed Orders referencing any current of former employee of Danske, including Messrs. Hughes and Daniel, as owning a personal interest in the Resort Property.

\* \* \* \* \*

---

[3] Department of Justice guidance specifically sets forth that "when it is known or can be ascertained in advance that a particular foreign government either cannot or will not recognize, enforce, or otherwise make beneficial use of a forfeiture order obtained in this country, it would clearly be a waste of U.S. prosecutorial and judicial resources to pursue the forfeiture action." U.S. Dep't of Justice, Justice Manual: Criminal Resource Manual § 280, https://www.justice.gov/jm/criminal-resource-manual-280-forfeiture-assets-located-foreign-countries.



The Honorable Joseph F. Bianco
September 26, 2019
Page 7

                                                     Respectfully,

                                                   George Kostolampros
                                                 Doreen S. Martin

cc: All parties of record via ECF
Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)
Marc Wolinsky, Esq. (Diamante Doce, LLC) (by email)