**Marc Wolinsky**
**Diamante Doce, LLC**
**252 Seventh Avenue – PH O**
**New York, NY  10001**

**(212) 403-1226**

September 27, 2019

**Via ECF**

The Honorable Joseph F. Bianco
United States Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York  11722

   Re: United States of America v. Kenner, Cr. No. 13-607 (JFB)

Dear Judge Bianco:

  I am writing on behalf of myself and an ad hoc group of my fellow Diamante homeowners who, collectively, own in excess of $50 million of property at the Diamante to join in the position urged by Mr. Kostolampros on behalf of Danske Bank in his September 26, 2019 letter.

  It simply cannot be denied that the entry of an Order providing for the forfeiture of the entire Resort would be devastating to everyone with an interest in the property.  Ongoing sales, the lifeblood of the development, will stop.  Ongoing improvements, of vital interest to me and my fellow homeowners, will stop.  Resales will stop.  Property values will fall.  The project will be tainted for years.  The government has never put forward a reasoned articulation refuting these obvious facts, and has never explained how it would realize value from the forced sale of a project that, according to Jones Lang's appraisal, is under water.

  Respectfully, it is incumbent upon the Court to put this misguided and legally unjustified effort to an end.  As the Court knows, and as we appreciate, under the applicable statutory framework, at this stage of the proceedings, the Court's obligation is to determine whether the

Hon. Joseph F. Bianco
September 27, 2019
Page 2

government has met its initial burden of establishing the scope of the property subject to forfeiture. As part of this exercise, the Court must protect the due process rights of all persons. It is not enough, as the government suggests, to go forward with an order that prejudices the rights on innocent third-parties when there is no legal basis to do so on the theory that everything can be sorted out down the road.

In this context, it is apparent that the government has not met its initial burden in establishing that the entire Diamante resort, *i.e.*, real property located in Mexico, is subject to forfeiture. Mr. Kenner did not acquire real property in Cabo San Lucas, Mexico. He used stolen money to acquire a 39.845% interest in a limited liability company, Diamante Cabo San Lucas LLC ("DCSL LLC"), through two other limited liability companies, Baja Ventures 2006 LLC, and Diamante Properties LLC. These are the only interests subject to forfeiture.

Basic principles apply here. If Mr. Kenner had acquired a small interest in Facebook by investing $5 million in Facebook at a time when the funds were critical to Facebook's development, the Court could not rule that Facebook in its entirety would be subject to forfeiture. That is because the courts recognize that the scope of property interests subject to forfeiture is governed by state law and state law respects the corporate form. *See United States* v. *Oregon*, 671 F.3d 484, 490 (4th Cir. 2012) ("we generally refer to state law in determining whether a petitioner [in an ancillary proceeding] has a legal interest in forfeited property"); *United States* v. *Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988) (refusing to order of forfeiture of entire property where some mortgage payments were funded with criminal proceeds;

Hon. Joseph F. Bianco
September 27, 2019
Page 3

"forfeitability [does not] spread[] like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment").

This same reasoning applies here. As Mr. Kostolampros explains in his letter, and as cannot be denied, the vast bulk of the purchase price of 1,500 acres of unimproved land in 2006 came from the $125 million loan originally provided by Lehman Brothers (now owned by Danske Bank). That loan also funded initial improvements at the resort. The extensive, subsequent development at the resort, including the construction of the second 18 hole private golf course, was funded with additional loan proceeds and the proceeds of the arms-length purchases of real estate interests by homeowners and time share members. Those purchases were made in the 13 years *after* Mr. Kenner defrauded his clients. These hundreds of millions of dollars of funds, which dwarf the proceeds of Mr. Kenner's crimes, are not traceable to Mr. Kenner's offenses.

The Court therefore should enter an Order providing that Mr. Kenner's interests, *i.e.*, his interests in two LLCs, are subject to forfeiture. That is the proper course legally, and that is the course that will protect the interests of innocent third-parties.

Respectfully submitted,

Marc Wolinsky