

Thomas McC. Souther
Telephone: (646) 558-6052
souther@freehsporkinsullivan.com

Thomas McC. Souther
Freeh Sporkin & Sullivan, LLP
350 Fifth Avenue
Suite 6903
New York, New York 10118

September 30, 2019

**BY ECF**

The Honorable Joseph F. Bianco
United States Circuit Judge
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:    United States of America v. Kenner, et al, Cr. No. 13-607 (JFB)

Dear Judge Bianco:

     Kevin P. Mulry of Farrell Fritz, P.C. and I represent Diamante Cabo San Lucas, LLC, Diamante Cabo San Lucas S. de R.L. de C.V., KAJ Holdings, LLC, Diamante Properties, LLC, and Kenneth A. Jowdy (together, the "DCSL Parties") in connection with the forfeiture proceeding in this case. I am writing on behalf of the DCSL Parties to join in the position urged by Danske Bank A/S London Branch ("Danske") in its September 26, 2019 filing that the Government forgo its pursuit of the forfeiture of the Resort and exercise some common sense to reach a practical solution to this exercise that has a realistic prospect of resulting in compensation being available to the victims of the defendants' criminal conduct. The Government has articulated no plan of action to address the negative impact that the DCSL Parties believe the Government's revised proposed preliminary orders of forfeiture are certain to have on the project. The Government's reckless position leaves the DCSL Parties in the untenable predicament of being expected to "maintain the status quo" under circumstances in which the DCSL Parties believe the collapse of the Resort and the diminution of its value is a virtual certainty.

     The DCSL Parties also join in the arguments presented by Mr. Marc Wolinsky on behalf of an ad hoc group of homeowners at the Resort in his September 27, 2019 filing.

1

The DCSL Parties continue to be frustrated by the refusal of the Government to work collaboratively with the DCSL Parties, Danske, and the homeowners to formulate a plan to avoid, limit, or at least prepare for, the adverse impact that proposed preliminary orders of forfeiture likely will have on the project. The DCSL Parties approached the Government immediately following the court conference on September 5, 2019 and reiterated their request to participate in the meetings with the Government and Danske. The Government again was unwilling to meet with the DCSL Parties, preferring instead to meet with Danske alone.

It is beyond comprehension why the Government would rebuff a request by the DCSL Parties to meet with the Government. It is particularly astonishing to the DCSL Parties, however, because it is the DCSL Parties that the Government expects will somehow magically "maintain the status quo" in the aftermath of the entry of proposed orders of forfeiture, despite the fact that the project will lack the necessary financial resources to be able to meet its obligations, let alone continue to develop and expand the project.

The DCSL Parties have faced and overcome enormous obstacles over the fourteen years that they have nurtured this project. Objectively, one might conclude that they are in the best position to evaluate the potential impact that preliminary orders of forfeiture would have on the day to day operations of the project. The Government, however, has consistently ignored the warnings raised by the DCSL Parties, Danske, and the other stakeholders who have significantly more financial risk and exposure in connection with this project than any other party, including the Government. Hundreds of people who work at the project currently or provide services to the project have greater financial exposure than the Government because their jobs will be at stake if the project stumbles or fails. Indeed, even the victims of the defendants' crimes are at greater financial risk and exposure than the Government. If the DCSL Parties, Danske, and the homeowners are correct about the likely dire consequences that will flow from the preliminary orders of forfeiture, any hope of recovering anything of value for the benefit of those victims will have been lost because of the Government's intransigence.

If the Government's motivation and intent is to try to preserve value for the benefit of the victims of the defendants' crimes, working collaboratively with the stakeholders to achieve that objective, rather than treating this as a routine forfeiture case involving a bank account, a car, a boat, or a home, would seem to be a more productive means to that end. Instead of simply labeling issues as premature and more properly the subject of resolution in an ancillary proceeding, working collaboratively with the third parties that they know will have claims to streamline and expedite an ancillary proceeding, if one is necessary, may reduce the adverse impact that surely will be associated with any forfeiture order and protracted ancillary proceeding.

In the most recent proposed preliminary orders of forfeiture, the Government carves out dozens of named individuals and several categories of people from the class of homeowners excluded from having to assert a claim that they are a bona fide purchasers for value. The Government has not articulated why it believes that the property claims, if any, of these named individuals or categories of people apparently are subject to question. This is another area, however, in which collaboration between the Government and the stakeholders arguably would streamline the process, and conceivably even eliminate the need for an ancillary proceeding in some instances.

2

For example, based on the ownership records maintained and produced by the DCSL Parties to the Government, the DCSL Parties are aware of only four individuals from the list of individuals named in the most recent proposed preliminary orders of forfeiture who have an ownership interest in real property or a time share at the Resort. Two of the individuals named, Mr. Kenneth Jowdy and Mr. Gregory Carrafiello, are affiliated with the DCSL Parties. Mr. Jowdy acquired his Sunset Hills Lot in 2014., Mr. Carrafiello executed his Reservation Deposit Agreement for the purchase of his Casita Lot in 2018 and his Promise to Constitute a Trust Agreement this year. As with all real estate sales, the purchase price of each sale was submitted for prior approval by Danske. Each purchase has been listed in the sales documentation submitted to the Government for review along with all other sales. The Government could have requested and obtained additional information on each sale, if the Government's interest is in determining whether Mr. Jowdy and Mr. Carrafiello are bona fide purchasers for value of their respective parcels. Moreover, the Government could have easily engaged in a discussion with representatives of Messrs. Jowdy and Carrafiello, reviewed the documentation that reflects how and when they acquired their respective interests, and possibly eliminated the need for ancillary proceedings with respect to their claims, or at least streamlined the process for presenting such information to the Court for a prompt determination of the validity of their respective claims in a timely fashion. The Government has made no such effort. In the case of Mr. Jowdy, the Government has known for four years that Mr. Jowdy owns a home at the Resort, and yet in four years it has never attempted to engage with representatives of Mr. Jowdy to address the Government's recently expressed purported concern that Mr. Jowdy did not pay full value for his property.

Similarly, the only two other individuals named in the proposed preliminary orders that have an ownership interest in real estate at the Resort purchased their property interests from independent third-party property owners in transactions that were of the type expressly permitted under the Protective Order, as amended. It would be unjustified for the Government to now take the position that these two transactions should be treated differently than any other third-party transactions. These two property owners should not be compelled to have to make a claim for their ownership interests simply because the Government added their names to a list without justification or explanation. It is incredibly unfair for the Government to list innocent third parties in the proposed preliminary orders in a criminal proceeding without any valid reason, including those who have no ownership interests in the Resort, and the DCSL Parties respectfully request that all of their names be omitted from any proposed preliminary order of forfeiture.

Criminal forfeiture proceedings are designed to deprive convicted criminals of the profits of their crimes of conviction. "Forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed on innocent owners." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) (citing *United States v. Bajakajian*, 524 U.S. 321, 332 (1998). The Government seems to have lost sight of this fundamental premise in its pursuit of forfeiture of the entire Resort. This overreaching by the Government should be rejected by the Court, because it has made it more likely that the DCSL Parties, Danske, the homeowners, and other innocent third parties, including the original victims of the defendants criminal conduct, are more likely to be punished by this forfeiture, in violation of their Eighth Amendment rights, than the defendants will be.

      The DCSL Parties previously requested that the Court consider limiting any forfeiture order, insofar as it may relate to the Resort or the ownership interests in the Resort, to the forfeiture and seizure of the defendants' interests, if any, in Baja Ventures 2006, LLC and Diamante Properties, LLC. The DCSL Parties renew that request because they firmly believe that any preliminary order of forfeiture that is not limited in this fashion is likely to have a detrimental effect on the Resort and thousands of innocent third parties.

      Thank you for the Court's consideration.

      Respectfully submitted,

      */s/ Thomas McC. Souther*

      Thomas McC. Souther

cc:    All parties of record via ECF
       Doreen S. Martin, Esq. (By Email)
       Kevin P. Mulry, Esq. (By Email)
       Marc Wolinsky, Esq. (By Email)
       Phillip A. Kenner (By first-class mail)