10:50 am, Oct 02, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE
FILED
CLERK

U N I T E D   S T A T E S   D I S T R I C T   C O U R T
E A S T E R N   D I S T R I C T   O F   N E W   Y O R K

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 13-cr-00607-JFB
                               :
       - versus -             : U.S. Courthouse
                               : Central Islip, New York
                               :
KENNER, et al.,               : August 16, 2019
                 Defendants    : 2:07 PM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

<u>**For the Government**</u>:          **Richard P. Donoghue, Esq.**
                                United States Attorney

                        BY:     **Matthew Haggans, Esq.**
                                **Saritha Komatireddy, Esq.**
                                Assistant U.S. Attorney
                                100 Federal Plaza
                                Central Islip, NY 11722

<u>**For the Defendant**</u>:          **Sanford Talkin, Esq.**
                                Talkin, Muccigrosso
                                & Roberts LLP
                                40 Exchange Place
                                18th Floor
                                New York, NY 10005

<u>**Transcription Service**</u>:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1        THE COURT:   Criminal Cause for a Status

2   Conference in 13-cr-607, United States of America v.

3   Tommy Constantine.

4        Counsel, please state your appearances,

5   starting with the government.

6        MR. HAGGANS:  Matthew Haggans and Saritha

7   Komatireddy for the United States.

8        Good afternoon, your Honor.

9        THE COURT:  Good afternoon.

10        MS. KOMATIREDDY:  Good afternoon.

11        MR. TALKIN:  Good afternoon, your Honor.

12        Sam Talkin for Mr. Constantine who is also on

13   the telephone.

14        THE COURT:  Good afternoon, Mr. Talkin, Mr.

15   Constantine.

16        THE DEFENDANT:  Good afternoon.

17        THE COURT:  So as you know --

18        MR. TALKIN:  Good afternoon, your Honor.

19        THE COURT:  -- I scheduled this in order to

20   address the bail issues and the request by Mr. Talkin

21   with respect to additional help preparing the case

22   forward, and I agreed to let the attorneys appear by

23   phone.  Mr. Constantine usually appears by phone for

24   these types of conferences, and I didn't think it was

25   necessary to have both lawyers be present in the

3

Proceedings

1   courtroom, especially because Mr. Constantine is not

2   going to be present.

3           So in any event let's deal with the bail issue

4   first, and I just want the record to be clear, the

5   government's motion for revocation is denied.  I don't

6   think any of these issues that are being discussed today,

7   in my view, are not grounds for revocation of bail.  Mr.

8   Constantine has been on bail for five years without

9   incident.  He has a substantial bail package in place,

10  that I think secures his appearance in Court.

11          I don't believe the posture of the case, the

12  procedural posture of the case is a changed circumstance

13  that would even warrant that type of consideration.

14          The only issue that the Court has which I want

15  to try to resolve today is insuring that the amount of

16  security on the bond remains essentially the equivalent,

17  and that Mr. Constantine does not have access to some

18  large amount of money at his disposal, but I think we can

19  accomplish that based upon what I am reading.

20          So I just want to make sure I understand the

21  situation, Mr. Talkin.  And also, there's a lot of back

22  and forth about how Mr. Constantine got the money, and

23  the circumstances.  Obviously, that was the subject of

24  litigation, a settlement agreement was reached, and I

25  don't believe that I should -- you know, I am not getting

4

Proceedings

1   involved in what occurred there.  There's been no finding

2   that Mr. Constantine did anything wrong in connection

3   with inheriting this money.

4            So again, my focus here today is to just make

5   sure the bond is as secure as it was, and that he is not

6   going to have access to some large amount of money that

7   he could use to flee the jurisdiction, although as I have

8   pointed this out before, and I'll point out again in

9   connection with the government's motion for revocation,

10  for Mr. Constantine to flee at this point, unless his

11  whole family was going to come with him overseas

12  somewhere, which I highly doubt, he would essentially be

13  fleeing the country, and leaving his mother, his wife,

14  his children, with a $4 million judgment against them,

15  and he would never be able to see them again.  So I think

16  the likelihood of that is very low.

17           But in any event, let me just make sure I

18  understand the situation, Mr. Talkin.  The $300- and what

19  is it 7 --

20           MR. TALKIN:  60.

21           THE COURT:  -- 60 is going to be held in an

22  escrow account.  It's the defendant's mother's money, and

23  she --

24           MR. TALKIN:  Correct.

25           THE COURT:  -- is on the bond.

5

Proceedings

1          MR. TALKIN:  That's correct.

2          THE COURT:  All right.  So as far as I am

3    concerned, that additional money is just additional money

4    that is just securing the bond.  Mr. Constantine is not

5    going to have access to that money.  His mother is not

6    going to have access to that money.  It's going to be

7    kept in an escrow account pending the outcome of the

8    case.

9          The other thing that you mentioned in your

10   letter, Mr. Talkin, in terms of not having any -- as a

11   result of Ms. Ferguson not being on the bond anymore,

12   that you believe that the mother's property has increased

13   in value, such that it would cover any difference --

14         MR. TALKIN:  Yes, we believe that, your Honor.

15   I haven't documented that.  We haven't done new

16   appraisals but it's just our look at the market tells us

17   that.

18         THE COURT:  All right.

19         MR. TALKIN:  But just your Honor so you know,

20   the other $170,000 is still in my escrow account.

21         THE COURT:  Well, that --

22         MR. TALKIN:  And --

23         THE COURT:  Go ahead.

24         MR. TALKIN:  Okay.

25         THE COURT:  Go ahead.  I was going to get to

6

Proceedings

1  that.

2              MR. TALKIN:  And --

3              THE COURT:  I don't have any understanding who

4  would have access to that money.

5              MR. TALKIN:  Nobody has access right now.  I

6  think the real issue is should a -- you know, should Mr.

7  Constantine's bond be violated, and the government moved

8  against that $170,000, it is still there, and it's going

9  to be in my escrow account, and even the attorneys out in

10 Arizona representing the trust don't quibble with that.

11             The issue is there's an argument to be made

12 that the government would have difficulty getting their

13 hands on that because the trust might have a better -- a

14 higher standing for that money than the government, and

15 they may not be able to get their hands on it, so they're

16 saying it's really not actual security.

17             But as far as whether it's still in escrow,

18 it's there, it's staying there.  We're kind of rejecting

19 potential future litigation as the government's point of

20 view, that diminishes it --

21             THE COURT:  All right.

22             MR. TALKIN:  -- according to them.

23             THE COURT:  But in terms of Mr. Constantine

24 being able to get his hands on that, that's not going to

25 be possible.  It's going to be in the same escrow account

7

Proceedings

1   as the $360,000.

2            MR. TALKIN:  Correct.  Even if Mr.

3   Constantine's a trustee, and he's in charge of that

4   money, I am not releasing that until your Honor tells me

5   I can release the whole amount.

6            THE COURT:  All right.  So does the government

7   want to be heard on -- it appears to me Mr. Constantine

8   has no access to this, you know, $530,000, so it doesn't

9   create any issue about him getting this money, and being

10  able to flee with this money.

11           There appears to be an issue that the

12  government would not be able to recover the $170,000 if

13  they were to forfeit the bond.  Is that really the only

14  issue at this point?

15           MR. HAGGANS:  Your Honor, based on the record

16  just made by Mr. Talkin and your Honor's prior ruling,

17  the government has nothing further with respect to the

18  monies in escrow.

19           THE COURT:  All right.  So I think what I would

20  like Mr. Talkin, if you could -- if Mr. Constantine can

21  have an appraisal done of his mother's property, just to

22  show that it has increased essentially in that -- you

23  know, it doesn't have to be like exact dollars, but

24  essentially it has increased such that the security on

25  the bond is equivalent then, I'm satisfied that this is

8

Proceedings

1   not

2   -- removing Ms. Ferguson, obviously from the bond, does

3   not create any additional risk that he will flee.

4         MR. TALKIN:  Okay.

5         THE COURT:  Okay?

6         MR. TALKIN:  We'll take care of that.

7         THE DEFENDANT:  Yes.

8         THE COURT:  All right.

9         MR. TALKIN:  Thank you, your Honor.

10        THE COURT:  All right.  Does the government

11  have anything else now on the bond issue?

12        MR. HAGGANS:  I think, your Honor, that just

13  leaves the potential question of his access to those

14  funds that might fund the trust.  As the government

15  understands the situation of the Arizona estate

16  proceeding, and as the government represented in its

17  letter, those trusts cannot be funded until, I believe,

18  the $530,000 that's currently in escrow is released.  If

19  that is also the defense's understanding, and Mr.

20  Talkin's able to represent that on the record, I don't

21  think we have a further dispute on that issue, based on

22  the Court's prior ruling.

23        THE COURT:  Mr. --

24        MR. TALKIN:  I think that's correct, but you

25  know I don't really know 100 percent if that's correct.

9

Proceedings

1 But I think that there's the -- the issue could be if we

2 want to take -- I mean, one thing that the attorney in

3 Arizona for the -- I guess the plaintiff in that action,

4 or they -- and the trust, and the judge out there, they

5 want that 500 -- they want the Ferguson estate released

6 from any liability, which it sounds like I think we can

7 do.

8          I think that when we do that, that might make

9 the -- I think that makes the trust have the $170,000.

10 What I don't know is if that act then "frees" it up, so

11 that they can act on it.  That would be enough for the

12 Arizona courts then to get us in the position where the

13 trust is funded.  I don't know the answer to that.

14          I mean it's academic for the short term because

15 whether it's funded or not, it's going to stay in my

16 escrow, but at some point someone could, you know, ask

17 for that money, and I don't know what the outcome, if the

18 Ferguson -- if Ferguson is taken off the bond, but I

19 am --

20          THE DEFENDANT:  I might be able to shed a

21 little light if you wish -- if you want me to, Sam.

22          MR. TALKIN:  No, let me -- I'll talk to you.

23 I'll figure that out.

24          THE DEFENDANT:  We'll figure that out.

25          THE COURT:  Yes, that's not an immediate issue

10

Proceedings

1    for purposes of today, but if that -- Mr. Talkin, that's

2    something you and Mr. Constantine could look into and --

3            MR. TALKIN:  Yeah, I'll file a brief letter on

4    that issue to try to firm that up.

5            THE COURT:  All right.

6            MR. HAGGANS:  Your Honor, if I could just

7    briefly respond to that.

8            THE COURT:  Sure.

9            MR. HAGGANS:  I think this is set out in the

10   government's letter on this issue, the government's

11   concern is that once the -- if the Ferguson estate is

12   released from the bond in a manner that's satisfactory to

13   the Arizona court, those trusts might well be funded with

14   not the funds from the escrow, those funds will remain in

15   escrow but those trust over which the defendant will

16   become the trustee will be funded with significant funds.

17   I believe it's 1.1 or $1.2 million, and the government's

18   chief concern is not so much the funds in escrow because

19   those will remain in escrow as Mr. Talkin has

20   represented, but that Mr. Constantine would have access

21   to those kinds of funds, albeit in his capacity as a

22   trustee.  That gives the government grave concern about

23   his ability to use those funds in advance of surrendering

24   for any sentence the Court may impose.

25           THE COURT:  Mr. Talkin, is that a possibility,

Proceedings

1   that the $1.1 million would be delivered to the trust?

2           MR. TALKIN:  I believe so, yes.  I think at

3   some point that could happen if Ferguson is released as a

4   suretor.

5           THE COURT:  All right.  Well, that's something

6   that has to be addressed, and again, you can talk to Mr.

7   Constantine and just put it in a letter to me that again,

8   I don't think we have to worry about that for purposes of

9   today but in the event that that happens, in the near

10  future, there has to be some restriction on his ability

11  to access $1 million as a trustee.

12          One of the things I was thinking of as I was

13  reading the letter, if the money -- if that money is in

14  the hands of some third party -- physically in the hands

15  of some third party, one of the things I was thinking was

16  a possibility, assuming it was an independent third

17  party, that the government and the Court would receive

18  any notification of any attempt by him to access that

19  money.

20          So if as a trustee, he tried to access that

21  money, that the government and the Court would receive

22  immediate notification that he attempted to do so, that

23  might be another way of dealing with that type of

24  situation, but --

25          MR. TALKIN:  Yeah, my understanding is that

12

Proceedings

1    that's what is going to happen.  The person who is third

2    in succession can't be because he's going to manage that

3    money, and that person would be the third person that

4    would be controlling the money, and --

5            THE DEFENDANT:  And he's also a suretor.

6            MR. TALKIN:  And so he would be able to notify,

7    we could obviously draw up an agreement or agree on the

8    record --

9            THE COURT:  Right.

10            MR. TALKIN:  -- that it's his obligation to

11   notify the government, and the Court, and me if anyone

12   asks for access to that money beyond what he's doing

13   professionally.

14            THE COURT:  Yeah, I --

15            MR. TALKIN:  But that's fine with us.

16            THE COURT:  Yeah, I think that would have to be

17   in writing, and he would have to agree to that, but that

18   -- and he's a suretor too?

19            MR. TALKIN:  Yes.

20            THE COURT:  Yeah, I'm comfortable with that.

21            THE DEFENDANT:  It's Steve Curry (ph.), your

22   Honor.

23            THE COURT:  All right.  I think I would be

24   comfortable with that arrangement.

25            MR. TALKIN:  Okay.  I will talk to all the

Proceedings

1    relevant parties on that, and include that in the letter

2    that I write, confirmation that we're ready to do that,

3    and that whatever steps to satisfy the government, and

4    the Court, we'd need to do, we'll do.

5            THE COURT:  All right.  On the issue of getting

6    additional counsel, I had the same reaction that the

7    government had to the request, Mr. Talkin, and I don't --

8    two issues with it; one is, what you're saying needs

9    additional work, as text messages, I don't believe are

10   new.  Certainly the letters from Mr. Kaiser (ph.), and

11   Mr. Pecca (ph.), are not new.  So I am not sure that that

12   -- either of those things would warrant the need for an

13   additional attorney to -- you know, I am not even sure

14   exactly what you would be raising with the Court on those

15   things at that point, given that they're not new, but I

16   want --

17           MR. TALKIN:  I guess --

18           THE COURT:  I also don't want to have another

19   attorney -- for any attorney to really help you on these

20   things, they would have to -- it would -- you know, from

21   a taxpayer expense, it would cost a lot of money to get

22   another attorney up to speed enough to be able to write

23   something on any of those types of issues because they

24   don't understand the case, but that's my initial

25   thoughts.

14

Proceedings

1          MR. TALKIN:  I mean, my thought is I would have

2   that attorney just, you know, on the discrete issue that

3   I think I could focus them on with the text.

4            As far as the texts are concerned, and the

5   government and I have been working on trying to identify

6   -- I've gone through all the discovery letters.  It looks

7   like, and that those -- there's a discovery letter that

8   says that they were turned over right before trial.  I

9   don't know.  I'm waiting a communication back from the

10  government, I'm sure they have to go dig through their

11  files, like I have had to to figure it out but I guess

12  what I envision now -- because I wasn't sure if it was

13  Brady or just more fuel for the ineffective assistance

14  because I am not sure -- I mean, maybe that those texts

15  -- the texts that are in Kenner's motion are not

16  referenced in trial in any way.

17            There are texts that are but this is a separate

18  -- these are separate texts.  By my view of those, they

19  are -- they would've presented very effective cross-

20  examination of critical witnesses, and they weren't used.

21  So my thought process now is that it's just an addendum

22  to the ineffective assistance of counsel motion, which

23  wouldn't be that long of a process, but I am not sure.

24  If it became a Brady issue, which it doesn't look like it

25  is based on, you know, me pulling these letters, that's a

15

Proceedings

1   different story.

2          That's kind of when -- when I wrote that

3   letter, I thought there was a good chance it was a Brady

4   issue because obviously I wasn't the attorney at trial,

5   and I didn't have the opportunity to take in every piece

6   of discovery but it looks to me, if I can get behind the

7   letters and see what was actually turned over, that the

8   text that Kenner's referring to were turned over right

9   before trial.  That's the way it looks right now.

10          THE COURT:  All right.  Well --

11          MR. TALKIN:  Or it might've been during trial.

12   It may be during trial, but you know right there.

13          THE COURT:  But again, if you want to --

14          MR. TALKIN:  So --

15          THE COURT:  -- if you want to put in a short

16   letter pointing me to these texts, that you believe are

17   exculpatory, that the lawyers -- that you used --

18   should've used, I think you could put in that letter

19   pretty quickly.  Okay?

20          MR. TALKIN:  Okay.

21          THE COURT:  And the government obviously could

22   respond but I would just ask that you and the government

23   work together just to get to the bottom of, you know,

24   what was produced.  I assume the government is confident

25   that these texts were produced, correct?

Proceedings

1    MS. KOMATIREDDY:  Yes, your Honor.  I guess we

2 would like just some clarification here.  My

3 understanding is that there were a number of text

4 messages on Mr. Kenner's devices, and that we're talking

5 about many, and I'm not sure what the basis of the

6 proposed motion is, but if it's an addendum to the

7 ineffective assistance of counsel motion, we would

8 obviously have to notify Mr. LaRusso.  Mr. LaRusso would

9 have to then provide an addendum to his affidavit which

10 in the first instance, was quite extensive. I would

11 expect he would want to have an opportunity to defend his

12 conduct again in an extensive and detailed manner.

13    I don't think it -- just based on how we

14 handled these in the past, I imagine this would introduce

15 months, not weeks of delay.

16    And I don't see a prejudice to the defendant

17 because he still has the ability in collateral

18 proceedings to make these arguments.  So it's not -- it

19 seems just like a way to delay sentencing, as opposed to

20 -- without real prejudice to the defendant otherwise.

21    THE COURT:  Well I agree.

22    MS. KOMATIREDDY:  So --

23    THE COURT:  Anything that is going to delay the

24 sentencing, Mr. Talkin, right now, would be putting in a

25 letter pointing me to certain texts that he believes

Proceedings

1   should've been introduced into evidence that we're

2   introduced into evidence.

3          Whether or not that required Mr. LaRusso to

4   respond, I have no idea.  They may not be exculpatory at

5   all, that I may look at them, and think that these

6   weren't particularly meaningful texts, and I wouldn't

7   need a response from Mr. LaRusso if the texts don't

8   appear to be exculpatory.

9          If they do appear to be exculpatory, and they

10  need some type of response from Mr. LaRusso, then I will

11  worry about then but I don't think it makes -- to suggest

12  that when I have this, you know, massive ineffective

13  assistance of counsel motion before me now, that I am

14  going to decide that to leave open for collateral review,

15  some text messages, I don't think makes any sense why I

16  wouldn't try to -- given the posturing.

17         I don't think there's going to be months of

18  delay, even assuming I needed a response from Mr.

19  LaRusso, this is a pretty narrow -- I don't know how it

20  would take Mr. LaRusso to respond to why he did or did

21  not introduce some text messages but I didn't see the

22  text messages.

23         I don't even know what they say.  So we'll take

24  it one step at a time, but I would ask that you do that

25  relatively soon, Mr. Talkin.

18

Proceedings

1          MR. TALKIN:  Yes.

2          THE COURT:  It doesn't -- again, it could be in

3     the form of a letter, and just attach the text messages

4     that you believe, you know, the lawyers should have

5     introduced or cross-examined, whatever you think, okay?

6          MR. TALKIN:  Yep, I will do that, your Honor.

7     Okay.  I will get that together, and do it as fast as

8     possible.

9          THE COURT:  All right.  We're obviously

10    scheduled for September, I think --

11         MR. HAGGANS:  Yes.

12         THE COURT:  -- 5th, for another status,

13    correct?  Is that --

14         MR. HAGGANS:  Yes.

15         MR. TALKIN:  Yes, your Honor.  The defense memo

16    is due right before or after that, I don't have it in

17    front of me but I'm going to move this issue to the

18    front, get that out soon, along with this short bail

19    letter, and then we'll get the sentencing memo.

20         THE COURT:  All right.

21         MR. TALKIN:  But I'm not looking to delay

22    anything.  It's just there's certain -- I have an

23    obligation to represent my client, and get things done,

24    and it's just -- it's when new things pop up, it's --

25    everything -- it takes time, and I have to take time to

Proceedings

1  do things.

2        THE COURT:  All right.  And I don't want to

3  discuss the forfeiture issue because Mr. Kenner is not

4  here, but obviously we'll discuss it on September 5th,

5  but if the government has any update with respect to the

6  dialogue about the resort, and those discussions, don't -

7  - you can put in a letter before the 5th, just so I

8  understand what that situation is, you know, going into

9  that conference.  So everybody will understand what the

10  situation is, okay?

11        MR. HAGGANS:  Your Honor, I would just note,

12  and I don't think this will prejudice Mr. Kenner in my

13  saying so, that the forfeiture counsel for the government

14  did file the preliminary order and I believe with a cover

15  letter, just in the past several days, and so that is on

16  the docket.

17        THE COURT:  Okay.  I will have to go -- we're

18  having issues with -- since I've gotten elevated to the

19  Circuit, we don't get an automatic bounce of everything

20  that's filed.  We have to go back, and look at the

21  docket.  So I'll go back and check that.  Okay?

22        MS. KOMATIREDDY:  Yes, your Honor.

23        MR. HAGGANS:  Yes, your Honor.

24        THE COURT:  All right.  Thank you very much.

25  Have a good weekend.

20

Proceedings

1        MR. HAGGANS:  Thank you, your Honor.

2        MR. TALKIN:  Thank you.

3        THE DEFENDANT:  Thank you very much, your

4   Honor.  Bye.

5        MR. TALKIN:  Goodbye.

6             (Matter concluded)

7                  -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **October**, 2019.

Linda Ferrara

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.