

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

October 2, 2019

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

Re:   **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco

We write on behalf of Danske Bank A/S London Branch ("Danske") in reply to the government's September 27, 2019 letter. Danske is compelled to respond to the government's submission to correct various mischaracterizations; given the severity of the harm that the government's position is likely to cause, it is critical that the Court have an accurate and complete record.

1. **The Government Has Failed to Follow its Own Policies and Reach an Agreement with Danske as an Innocent Third-Party Lender**

Danske is bewildered by the government's representation that "despite [its] efforts and willingness to work cooperatively with Danske, . . . Danske has never genuinely responded in kind." Yes, the government has taken Danske's meetings and phone calls, but the government has never engaged in a substantive conversation as to what it intends to do with the Resort Property if forfeiture is ordered. In fact, in the numerous meetings Danske has had with the government, the government's standard response to engaging in such a discussion has been that Danske is getting ahead of itself because the Court could decide not to include the Resort Property in the preliminary order of forfeiture. It was only after Danske went directly to the Court to apprise it of the serious consequences of a forfeiture that the government even raised the idea of a potential interlocutory sale. Strikingly, even though Danske recently provided the government with a revised proposed Preliminary Order of Forfeiture ("POF") that was based on the government's own prior draft that included interlocutory sale language, the government stubbornly refuses to even consider such language "at this late stage."



The Honorable Joseph F. Bianco
October 2, 2019
Page 2

Contrary to the government's description of Danske's settlement offer, Danske's offer is consistent with the Department of Justice's own guidance on expedited settlements and interlocutory sales, which sets forth that "[t]he interlocutory sale policy provides a means of protecting the interests of lenders and the Government, while preserving as much equity as possible for forfeiture, in cases where property owners default on their mortgages or other exigent circumstances arise."[1] Under DOJ's own guidelines, upon a "preliminary showing" of the lienholders' claim, the government is encouraged to enter into a settlement with lenders. DOJ's policy "is intended to avoid unnecessary litigation between the United States and innocent third parties holding perfected liens or mortgages against property that is subject to federal forfeiture . . . [and] is intended to provide consistency, predictability, and fairness in handling the claims of such parties."[2]

The government apparently seeks to explain away its intransigence in entering into a settlement that is encouraged by DOJ's own policies by characterizing Danske's latest proposal as "self-serving and one-sided" because Danske requests recognition of its claim as part of that offer. Of course, that characterization ignores that as part of the agreed-to settlement, Danske offered to significantly discount its claim by *tens of millions of dollars* and offered the government *millions of dollars in cash*—cash that is otherwise unlikely to be available—to distribute to the victims of Defendants' fraud. This offer is neither self-serving nor one-sided because the offer guarantees that the Defendants' victims will be compensated. In fact, it is negligent to decline such an offer. Furthermore, it is consistent with DOJ's own policy, which states:

> The objective of the expedited settlement policy is to encourage early settlements with legitimate mortgagees and lienholders. In those settlements, the Government will agree ***not to contest payment of the principal and accrued interest that are due and casualty insurance premiums paid by the lienholder from the net proceeds of the sale of the property to the fullest extent possible.*** Thus, by entering into an expedited settlement, mortgagees and lienholders will protect their interests in forfeitable property early in a forfeiture case, avoiding unnecessary litigation costs.[3]

---

[1]  Guide to Interlocutory Sales and Expedited Settlement, Department of Justice, at ii, https://www.justice.gov/sites/default/files/criminal-afmls/legacy/2011/05/12/guidetosales07.pdf.

[2]  *Id.*

[3]  *Id.* (emphasis added).



The Honorable Joseph F. Bianco
October 2, 2019
Page 3

It is unclear why the government refuses to follow its own policies in regards to Danske and this proceeding.

    **2. The Government Misrepresents that Danske Has Ignored The Government's Requests and that The Government Does Not Possess Documents Supporting Danske's Claim**

It is the government that disingenuously claims that "Danske has not, to date, provided any proof of its outstanding loan balance (e.g., a pay-off letter) and has ignored the government's repeated requests for such basic documentation." The government has never requested any specific information—instead, the government has asked only for an array of financial information so that it can "better understand the financial state of the resort."[4]

The government in its recent letter to the Court references a "pay-off letter" as an example of a document that Danske has not provided the government. First, the government has never requested a pay-off letter. Second, this reference makes clear how little the government understands about the complexity of the Resort Property—indeed, unlike the properties, e.g., homes or cars, the government typically seeks to forfeit, there is no "pay-off letter," but instead trust documents and various facility and loan documents (some of which the government already has). In short, this is not a car involving a simple pay-off amount, and the sooner the government understands that fact, the better off all parties will be. Nevertheless, Danske will provide the government with a letter setting forth that amount it is owed by tomorrow.

In all events, the government has not given the Court a full picture as to the documentation Danske has already provided. In fact, much of the relevant "basic documentation" the government complains it lacks has been provided to it at least once, including in June 2016 and again in April 2019 (various financial reports), and July 2019 (the trust agreement). The government's assertion to the contrary is flatly false.

---

[4] Specifically, in rejecting Danske's latest offer, the government requested that Danske provide all banking records, payroll records and all contracts with outside vendors from 2009 to the present date so that it could understand the Resort Property's financial status. Danske explained to the government that it had much of this information and asked for an explanation as to how these documents, including those that are more than ten years old, would help to evaluate *Danske's claim* or the *current financial condition* of the Resort Property. In response, the government stated that it would get back to us on more specifics with regards to the records, but has not.



The Honorable Joseph F. Bianco
October 2, 2019
Page 4

### 3. The Government's Submission Demonstrates, Yet Again, that the Government Is The One Overreaching

Glaringly absent from the government's letter is any response to the fact that the Resort Property is in Mexico. It is our understanding that the U.S. government simply cannot seize property in Mexico on its own and the government has not addressed this concern at all. And the government objects to limiting the forfeiture to the U.S. equity interests because, among other things the government believes that it is "insufficient" because Danske could foreclose on the property. The government contends that Danske's very request shows that it seeks to defeat the forfeiture by foreclosure. This is nonsensical. Danske has forbeared on principal payments due to it, has proposed to pay the government millions of dollars for the benefit of victims, and *offered to agree to an interlocutory sale* that would give additional potential upside to victims if the sale proceeds were above Danske's *discounted lien*. How Danske's proposal can be described as seeking to defeat forfeiture by foreclosure is perplexing. One thing is clear though: to the extent there is no agreement reached and the Resort Property cannot continue as a going concern, Danske will seek all potential avenues of redress in this Court and the Courts in Mexico—as it must in order to protect its interest and to discharge its duties to its shareholders.

### 4. At the Very Least, the Court Has Discretion to Consider Danske's Argument

The government again falls back on arguing that Danske, as a third party, has no standing to contest forfeiture at this time. But, as the Court recognized previously, Danske is raising issues for the Court to consider that goes to effecting third parties' interests prior to an ancillary proceeding. Indeed, during the July 2, 2019 hearing, the Court made clear that it was "concerned about the scope of the forfeiture in this case. . . . [T]o utilize what the government is suggesting to this Court . . . that in this particular case, under the unique facts of forfeiting a Mexican resort with these types of investments could have the practical effect of *destroying the value of that resort, hurting innocent third parties who have nothing to do with this case, and potentially hurting the victims in this case, who continue to have investments in that property and would obviously be impacted by a decision* . . . ." *See, e.g.*, July 2, 2019 Status Conf. Tr. at 2:24-4:16 (emphasis added); *see id.* at 25:12-27:11. Further, although the government is correct that a third party's interest is not litigated until an ancillary proceeding, due process rights can be relevant prior to such third party hearing. That is the case here because the Resort Property will suffer significant harm, which in turn will harm third parties before those parties even have a chance to file a petition in an ancillary proceeding.

Danske is prepared to discuss these matters further before the Court and is open to further discussions with the government *in order to effectuate an agreement prior to a POF* consistent with DOJ's own policy. Danske's proposal at its core is to have an agreed-to orderly process with respect to any sale of the Resort Property. Danske's proposal—a guaranteed cash payment and



The Honorable Joseph F. Bianco
October 2, 2019
Page 5

significant discount on its lien—is far more likely to yield a higher recovery for all parties after an interlocutory sale than the process the government blindly insists upon forging ahead with. The government has never provided Danske (or the Court, for that matter) with any clarity as to what will happen to the Resort Property after a POF is entered, how long a sale process would take, and how the Resort Property will continue as a going concern if sales substantially decrease and there is absolutely no funding.

       Danske regrets that we have not been able to reach an agreement with the government and therefore yet again must raise these issues with the Court, but believes that the Court's intervention is imperative to protect third parties, including the victims, by preserving the Resort Property's value.

                              Respectfully,

                              George Kostolampros
                              Doreen S. Martin

cc:    All parties of record via ECF
       Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)
       Marc Wolinsky, Esq. (Diamante Doce, LLC) (by email)