October 4, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

Your Honor,

I am in receipt of a September 30, 2019 letter from Attorney McSouther to the Court. McSouther espouses the potential difficulties of the DCSL property based on the government's egregious proposal of forfeiture. McSouther's complaint ignores a few salient issues. One, he and Farrell Fritz are representing both the shareholders of Diamante Cabo san Lucas and their progeny, and Ken Jowdy (and his KAJ Holdings LLC) which have been unequivocally proven to have stolen equity deposit money pre-closing and sued for it in Mexico (*infra*), millions of budget funds post closing (*ECF No. 667 at 10-16*), and continued thru his decade-plus racketeering efforts with former Lehman Brothers banker, Masood Bhatti (*ECF No. 628 at 2*), and the Danske bankers themselves (*ECF No. 667 at 16-17*) (*ECF No. 628*). They are on both sides of the "real" fight to recover the *government-forfeiture-44* funds Jowdy stole from Kenner and Kenner investors since 2006.

*If Kenner were in the shoes of the non-victim Cabo owners*, like the Diamante Doce, LLC members et.al. thru attorney Woolzinsky, Kenner would not care at all about the Jowdy thefts and victims of his who have been defrauded since Jowdy's first documented thefts from Kenner and Kenner investors in August 2002 (*ECF No. 667 at 24-28*). They would not be relevant to Kenner. Kenner would not care if Jowdy ever re-paid the loans he confessed to in his January 2010 California deposition or specifically to the FBI (with FBI agent Galioto present in March 24, 2010 – *3500-KJ-2 at 11-14*). *The government's trial frauds on the court and jury were known as false at all times after the Jowdy-in-person confessions*; *and planned*.

But – Kenner did *care* "too much" and chose to sue and expose Jowdy since 2007 in every possible jurisdiction. These are loans (and other documented embezzlements – *ECF No. 667*) that Jowdy himself, the investors themsleves, the loan agreement witness, and Kenner have distinctly verified for over a decade. Only the government refuses to acknowledge their deficiencies, because it would leave egg on their collective faces for perpetuating FBI agent Galioto's ruse since 2009; and guaranteeing a verdict reversal immediately.

1

After the Jowdy 2010 FBI confessions, there could be no misunderstanding, and certainly not one worthy of a prosecution (unless Jowdy was named as a co-conspirator, which the court is deftly aware he was not).   In fact, Jowdy's attorney, Tom Harvey, is complicit with their 2002-initiated "fake lien" scheme on Kenner and Kenner investors to begin this two-decade hoax.   *United States v. Turk*, 626 F.3d 743; 2010 U.S. Ap. LEXIS 24427 (2d Cir 2010)...

Many courts reference *Turk* related to loan cases.   All of the <u>original</u> Diamante del Mar partners were lenders, per multiple Jowdy testimonies, and Attorney Tom Harvey's fake lien letters (*Bates stamp: BN-P-00000109-110*)

- The *Turk* Court referenced lies that *Turk* had represented to his investors, such as "*telling the investors that they held recorded first mortgages*". Ironically, this is the exact language from Harvey's letters and criminal cover-up that Jowdy and his attorney perpetrated on Kenner and Kenner investors since 2002; <u>*exactly*</u> (*ECF No. 667 at 23-24*).   Kenner has presented this Jowdy cabal crime and cover-up for years.   Sadly, it has received the blind-eye of the government and FBI for "unknown" reasons; specifically considering it was the beginning of their 20 years of RICO activity.

Nevertheless, the government has tried to "back-door" Jowdy into the case with Kenner 10-years after Kenner's original proffer (June 24, 2009), when none of the evidence supports Kenner being anything but a personal lender, investor and corporate lender (thru the Hawai'i partners loans) to Jowdy, at all times.   Kenner was not convicted of any conspiratorial offense that required a "loss finding" in the conviction.

Yet, in full contradiction, AUSA O'Connell explained to the Court on May 14, 2019 (*See May 14, 2019 hearing transcripts at 37*) (*ECF No. 667 at 5*):

> *The Court: Are you concerned with how the property is being managed at this point, I mean just in terms of maintaining status quo?*
>
> *AUSA O'Connell: Your Honor, the government does have certain concerns that its being run by Jowdy, who is someone that the government feels is an unindicted co-conspirator.*

Several obvious issues belie the government's position.   Your Honor expressed to the government July 2, 2019:

2

> [Judge Bianco]: "*What I want the government to do is try to obviously focus its attention on the core of this case which is the entities that were controlled by the defendants and those entities that the money was moved into and protect all of that…*"

Jowdy co-conspirator from 2012-2017 confirmed the government hoax in his February 2019 submission stating (*ECF No. 628 at 1*):

> "*Jowdy would like the Court to think that Kenner stole $7 million from the Hockey Players…*"

"*The government did trace the money*"…
Defendant Kenner has been proclaiming the government's forensic proof since they released *government-forfeiture-44* and *government-forfeiture-36* as part of their forfeiture case in 2016.  *Government-forfeiture-44* confirms that Mr. Jowdy received 100% of the Hawai'i funds for his singular benefit as a personal loan (*3500-KJ-2 at 24-25*).

Michael Peca told the 2011 SDNY Grand Jury exactly what he and the other Hawai'i partners expected of their Hawai'i capital account and Mr. Jowdy's involvement, *infra*.  The government also produced *government-forfeiture-36*.  It was their-own forensic accounting of the Cabo investment funds.  As Your Honor has commanded the government to effectively "*TRACE THE MONEY*", they already did it (just like Kenner told Kristen Peca to do with her husband's Northern Trust Bank account in 2012).  They just don't like what it proves.   The result, which they continue to run away from, is that Kenner's Baja Ventures 2006 Diamante Cabo san Lucas equity is 100% derived from government-traced and verified, "**un-tainted**" and "**clean**" funds, wholly independent from the instant case.

Attorney McSouther is correct about one item in his September 30, 2019 letter.  Criminal forfeiture proceedings are designed to deprive convicted criminals of the profits of their crimes of conviction.   "Forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed on innocent owners." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir 2012) (citing *United States v. Bajakajian*, 524 U.S. 321, 332 (1998)).   Kenner agrees; and the government has lost sight of this fundamental premise in its pursuit of forfeiture…in the instant case.  Kenner is sure that Attorney McSouther would agree that if the government wants to pursue Mr. Jowdy for some participation in a fraud (as the government expressed, *supra*, to Magistrate Shields), they should indict and arrest Jowdy and let them fight it out in a courtroom where the racketeering criminality of Jowdy and his documented cabal can have their shot at justice (once and for all) and avoid the

3

perpetual slander by the government and Kenner, from their perspective. They should study the merits of Kenner's *ECF No. 667* submission for its efficacy before they get what they wish for, and for the moment be thankful that the government is terrified of reversing course and admitting their 10-year hoax (or cover-up).

*Government-forfeiture-36 proof of "untainted" funds...*
Kenner's two partners, who are not named victims in the instant case, provided $4.1 million to Mr. Jowdy in 2005 as the initial deposits to secure the original purchase contract. The government confirms these amounts (*government-forfeiture-36*), as follows:

 Jozef Stumpel deposit of $**350,000** (5-17-2005) (Little Isle 4 account),
- *Bates stamp: NAAZ000171-172*

 Jozef Stumpel deposit of $**325,000** (5-17-2005) (Ula Makika account),
- *Bates stamp: NAAZ000527*

 Jozef Stumpel deposit of $**225,000** (5-18-2005) (Ula Makika account),
- *Bates stamp: NAAZ000527*

 Jozef Stumpel deposit of $**45,000** to Baja Development Corporate (5-18-2005) (Little Isle 4 account)
- *Bates stamp: NAAZ000171-172*

 Jozef Stumpel deposit of $**1,600,000** (5-23-2005) (personal account to Jowdy's Mexican *LOR Management* account) (*government-forfeiture-36*), and

 Jere Lehtinen deposit of $**1,499,990** (6-6-2005) from his personal account to Jowdy's Mexican *Propiedades Management* account) (*government-forfeiture-36*).

*Baja Ventures 2006's "clean" funds...*
Baja Ventures 2006's $4.1 million total is ratified as 100% "**clean**". Their initial contributions have been independently verified to the FBI (*ECF No. 652*). Kenner, Stumpel and Lehtinen discovered after the March 2006 Cabo san Lucas closing with Jowdy and Lehman Brothers that Jowdy refused to allocate the full $4.1 million to their Baja Ventures 2006 capital account.[1] Instead, Stumpel was forced to sue

---

[1] The court should note that Kenner and Kenner investors discovered the $300,000 that Jowdy and his brother-in-law and general counsel, William Najam, under-allocated to the CSL Properties, LLC capital account. These items (amongst other embezzlement discoveries) led to the initial fall 2006 email to Jowdy to "wake up" and stop stealing everyone's money like it was a free $20 million -- and its subsequent negotiations in 2007. **Najam was Jowdy's co-conspirator in the original 2009 EDNY Grand Jury investigation when Kenner proffered**. Najam also verified all of the money he and Jowdy defrauded the investors in his 2009 arbitration testimony (*Nolan v. Kenner arbitration Day 2 at 376-81*);

4

Jowdy for the $1.6 million balance in Mexico (several times).   The initiation of the first Mexico litigation began December 2008, once Jowdy's attorneys terminated the settlement negotiations for the decade of Jowdy embezzlements, loan schemes and equity frauds (with his complicit cabal – who were expressly listed on the "release" agreements).

On 12-28-2008, Stumpel engaged Mexican counsel to recover the $1.6 million stolen by Jowdy (*Bates stamp: PK-000109539-542*).   This is the Mexico lawsuit that John Kaiser gave testimony on Stumpel's behalf via courthouse affidavit.   Kenner paid for Kaiser to fly from New York to Cabo san Lucas on 6-3-2010 to sign the affidavit in person in the courthouse (*Bates stamp: BNK_AMEX-00001970*).   Kaiser immediately returned to New York the following day (6-4-2010), after the 24-hour round-trip (*Bates stamp: BNK_AMEX-00001971*); for that singular purpose.

- The Court should note that Kaiser's signed affidavit was confirmed by Bryan Berard on a 2012 surreptitious phone recording as being Kaiser's authentic signature (*ECF No. 667 at 7*).   Nevertheless, the government proffered to this court in 2014 that Kaiser's name was "*forged*" on that document (too).   The ruse continued until Kenner informed his trial counsel that there was an FBI recording that refuted the government proffer and the Kaiser lies (or planned perjury) about another "forgery"; one of about a dozen which has been empirically proven as lies since this 2013 forgery charade began (including the false claims in 2015 – *Tr.991*).[2]   Kenner's trial counsel leaked the impeachment

---

and Najam was named specifically by the Hawai'i-Mexico investors in the two 2009 California lawsuits to recover the stolen funds:

> "*Mr. Najam was in charge of the corporate governance while under Jowdy's direction and control received over eight million dollars ($8,000,000) from a LLC in Hawai'i. Mr. Najam failed to properly account for those funds and has placed the Jowdy investors in a vulnerable and compromised position.*"
>
> o   *No greater transparency could have been possible with 19 Hawai'i partners.*

[2] As the Court has been made aware by Kenner, the government recovered the original "*ink*" versions of the Kaiser signatures on the eve of trial…….**FROM KAISER'S OWN HOME** (*GX-7004* and *GX-7005*).   *Neither* of these originals were admitted at trial for fear of disclosure and the humiliation to explain somehow how Kaiser had possession of his two "*ink*" signatures…but they were forgeries?!?!   Only the photocopies that were recovered from the Hawai'i corporate files at Kenner's home were admitted (*Tr.990 – GX-5104*); presenting clear misconduct to hide their ruse.

5

evidence to the government and they immediately dropped all discussions of its veracity.

*Michael Peca confirmed the Hawai'i loans* to Jowdy and the Hawai'i partners' "*group*" expectations to the 2011 SDNY Grand Jury *after* FBI agent Galioto "cherry-picked" him for testimony.   Michael Peca testified as follows (*Peca SDNY Grand Jury Tr.30-31*):

> Q: How much did you put into Little Isle 4?
>
> A [**Mike Peca**]: "$100,000 cash investment that was going towards that.  Then we had lines of credit.  I had one out for $1.7 million that was going to be used at the time.  Here's where a lot of the cross starts to happen.  **A short-term loan to Mr. Jowdy, because at the time Cabo – we hadn't gotten the lending from Lehman Brothers yet.  We** made a short-term loan until the lending came in.  Once the lending came through they were to pay back the loan, I think in the neighborhood of five-and-a-half million dollars, on the closing.  It was never paid back.  And then communication basically seized at that point from him [Jowdy].  **That was kind of the whole sticking point as far as me and the other guys with Mr. Jowdy.**
>
> The 1.7 along with the $100,000 and **whatever else put in this a capital account**, Little Isle 4, I believe.  **The Capital account was loaned to Ken Jowdy**, our business partner, so there is no need at the time to be worried about anything.  **The money was loaned to Ken Jowdy to basically help some of the purchase of the Cabo property so we can get the funding**.  And then it was supposed to [be] a short-term loan."

- Please note that Mike Peca told the 2011 Grand Jury that he expected 100% of his Hawai'i "capital account" funds (over **$1.8 million**) were supposed to be **in** Little Isle 4's capital account and **loaned to Jowdy**.
    - Peca's "expected" contribution to the Jowdy loans is *more than* the entire superseding indictment alleged victims contributed to the 2004 Little Isle 4 By-Laws authorized "loans" – of $1,315,000 (which includes Peca and Sydor traceable funding).

*Darryl Sydor confirmed the Jowdy loan* from the Hawai'i partners -- and his underlying knowledge -- without hesitation to the same SDNY Grand Jury in 2011 (*Sydor SDNY Grand Jury Tr.25-26*): [3]

---

[3] Michael Peca, Tuner Stevenson and Darryl Sydor all gave testimony to the 2011 SDNY Grand Jury on the same day, confirming the Hawai'i partners' "*group*" lending decision; although it was authorized by the corporate By Laws at all times, as well.   All three individuals who gave SDNY Grand Jury testimony are beneficiaries of the loans (in the

6

> *Q:  Was that [the LOC at Northern Trust Bank] also for Little Isle 4 as far as you know?*
>
> ***A [Sydor]: Yes, but then we put it towards a short-term loan to Mr. Jowdy until Lehman Brothers came up with the money that was supposed to be paid back."***
>
> *Q: Did you know in advance that it was going to be used, this Little Isle 4 money, to be used to salvage the Cabo investment?*
>
> ***A [Sydor]: <u>Yes.  It was to help with the short-term loan to keep funding the Cabo, but then its supposed to be paid back,</u> but that's –***
>
> *Q: Paid back to you or to Little Isle 4?*
>
> ***A [Sydor]: Paid back to Little Isle 4.***
>
> *Q: So –*
>
> ***A [Sydor]: <u>Back to Hawai'i, not me personally</u>.***
>
> *Q: Bu that didn't happen?*
>
> ***A [Sydor]: That didn't happen.   And Lehman came up with the $129 million loan. It was supposed to be back at closing.***

Turner Stevenson testified at the 2011 Grand Jury.  Stevenson was the 3rd handpicked witness (*by FBI Agent Galioto*) (*Stevenson SDNY Grand Jury at Tr.17-18*):

> *Q:  When you put up $100,000 for Hawai'i, did you have any understanding of whether the money could be used to pay for the Mexico project or was it just supposed to go to the Hawai'i project?*
>
> ***A [Stevenson]: In the beginning it was supposed to go to Hawai'i. Then I saw they needed, <u>the group of us got together</u>, we have this piece of land that's available for purchase in Mexico that we need to wait on or get funds on to transfer as a group like one big blanket to get money into Cabo and pay for that land to hold it until the loan came.***
>
> *Q: So are you saying that you agreed to transfer some of the money from the Hawai'i project to the Cabo project?*

---

Hawai'i partners) -- and as bona fide purchasers of the Cabo equity (thru CSL Properties LLC) as well; *thus receiving the cross-benefit as planned*.

7

> *A [Stevenson]: I would say that, yes.*
>
> *Q: Who made that decision?*
>
> *A [Stevenson]: I think all of us as a group.*
>
> *Q: What do you mean as a "group", who is the group?*
>
> *A [Stevenson]: All the guys who were invested in it.*

After the three (3) Grand Jury testimonies in 2011 (*and no evidence in contradiction thru that date – seven [7] full years after the loans to Jowdy began*), there could be no question about the Jowdy loan knowledge "*as a group*". The testimony was given after 19 of the 26 Hawai'i partners had sued Jowdy in Mexico, Arizona, Nevada and California *to recover the same funds*; at all times as individual plaintiffs, wholly verifying the underlying loans and their knowledge of them without equivocation or contradiction.

As a result of the empirical evidence ignored by the government, the court has been presented an enigma to resolve themselves (despite its July 2, 2019 request, *infra*). A pending 8th Amendment violation may be ripe under the government's misaligned forfeiture pursuits (of Kenner, Kenner investors, and the 3rd party DCSL investors); specifically because 100% of the funds alleged at trial to be stolen by Jowdy were documented and verified as *actually stolen by Jowdy* (*government-forfeiture-44* and *government-forfeiture-36*).

This EDNY court alerted the government (four-and-a-half years after trial) that it has been expected (and apparently overdue) (*July 2, 2019 hearing Tr.24-25*):

> [Judge Bianco]: "*I'm a judge. I'm not a business person, so I don't know all of the intricacies of something like this. So I'm relying on the government's assessment of the way to do this to protect what the government is trying to accomplish here without overreaching in a way that is going to hurt everybody. And I don't think we're at that point. If the government just continues to not really focus on this, I'm going to have to try to figure out myself in terms of where I should draw the line.*"

The government's summation deceptions on this court have not been resolved to date (and continue to disagree with the fundamental forfeiture pursuits of the government); as there is no way for the jury to un-ring the "*Kenner stole all the Hawai'i money to buy his piece of the Cabo resort*" bell of lies (*Tr. 5996, 5721, 5722-*

8

*23, 5744-45, 5990, 5991-92, 5707-5709*) -- one of which claimed *(Tr.5721 -- Michiewicz]*:

> *"And what do you find out [about the Jowdy loan]? You find out, what did that 5 million or however much more or less that netted out to be, what did it buy Mr. Kenner? It bought him a 39 percent interest in Ken Jowdy's Cabo San Lucas. Didn't buy the players a 39 percent interest. Him. And if you read it, you will see that Ken Jowdy, himself, is only a 40 percent shareholder in the parent company. Can't get too much closer to being equal partners. To this day, right now, he is a partner in that resort. That's where the money went. That's what it bought him. And on the backs, on the portfolios, of the hockey players."*

*Government-forfeiture-36* and *government-forfeiture-44* prove this is undeniably **untrue**, without dispute…but it remains after extremely biasing Kenner.

But – as Judge O'Brien stated in concurrence when overturning *United States v. Evans*, 677 Fed. Appx. 469; 2017 U.S. App. LEXIS 1942 (10th Cir 2017) (*Evans II*), a second time:

> *"The result here may not be heralded as a model of perfect justice, but it will stand as a conscientious application of the law."*[4]

Respectfully submitted, October 4, 2019,

Phil Kenner

---

[4] After Justice Gorsuch's initial 10th Circuit *Evans I* appellate opinion in 2014 to calculate the *Evans'* fraud appropriately (See *United States v. Evans*, 744 F.3d 1192; 2014 U.S. App. LEXIS 4490 (10th Cir 2014)), which was similarly prosecuted by allegations of *concealment* by *Evans'* from his investors during financial troubles in their real estate company, in the *Evans II* decision, Judge O'Brien (*who replaced Justice Gorsuch following his appointment to the Supreme Court in 2017*) was forced to:
    (1) Change the District Court judge,
    (2) Order no restitution or loss, and
    (3) Reduce the re-sentence guidelines to 4-10 months after the original 14-year sentence; once the Court determined and opined that *authorized* business transactions of a corporation *cannot* result in a "loss factor" for equity investors (as they accept the risk-reward premise of private equity) – *identical to the instant case*.

Because -- the corporate decisions were authorized by the only corporate documents (the Little Isle 4 By Laws). Furthermore, the Managing Member (Kenner) was never a beneficiary of the transactions that were allegedly concealed from 4 of the 26 Hawai'i partners, with Michael Peca re-canting his "*no knowledge*" testimony on cross-examination (*Tr.498-99*) (*ECF No. 501 at 9*).

- Michael Peca verified his 2011 SDNY Grand Jury testimony was "*truthful*".