FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   OCT 04 2019   ★
LONG ISLAND OFFICE

# CSL Properties 2006, LLC
*A Delaware Limited Liability Company*

September 13, 2019

Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    *United States v. Philip A. Kenner, et al, 13-CR-607 (JFB)*
               *Post-Conviction Protective Order / Preliminary Forfeiture Order*

Dear Judge Bianco:

      We are sending this correspondence to you in our collective capacity as the current 3-Member Management Panel of CSL Properties 2006, LLC ("CSL Properties"). As you know, CSL Properties is one of the four (4) limited liability companies that hold an equity stake in Diamante Cabo San Lucas, LLC ("DCSL"); and, in turn, our LLC is comprised of thirteen (13) individual Members, **all** of whom are now-retired NHL players and former clients of Philip Kenner. Under DCSL's original Operating Agreement, CSL Properties was allocated an eight percent (8%) ownership interest in the 1,500-acre, golf and real estate project that is currently being developed in Mexico under the Diamante name ("the Property" or "the Project").

      It is our understanding that the Court is on the cusp of entering its preliminary forfeiture order in this case. In that regard, we have been closely monitoring all of the forfeiture-related filings in this matter, including the several letters submitted on behalf of the DCSL Parties, Danske Banke and Marc Wolinsky, as well the <u>proposed</u> preliminary orders recently submitted by the Government. As victims in this case, and individuals who stand to lose even more if the Project does not survive the forfeiture process, we wanted one last opportunity to briefly express some of our concerns to the Court before a preliminary forfeiture order is entered.

      To our knowledge, the government has still not addressed (at least not in any filing, nor with any of us) many of the legitimate and serious questions raised by the lawyers for Danske Bank and the DCSL Parties in previous letters submitted to the Court. For example, if the proposed preliminary forfeiture order that the government has submitted for the court's consideration is ultimately entered:

- Who will manage the day-to-day activities of the Property during the pendency of the ancillary proceedings, including the daily management of hundreds of employees that the Project currently employs?

RECEIVED
OCT 04 2019
EDNY PRO SE OFFICE

- Who will oversee the broader development of the Property during the ancillary proceedings -- which may last many, many months – including the approval and initiation of new capital projects?
    - Or, will the Project remain essentially frozen in the same *status quo* that it has been for the last several years until the ancillary proceedings have run their entire course (which will certainly not improve the equity position in the Project)?
- If an infusion of capital is needed during the pendency of the ancillary proceedings, who will provide it – the Government?
- What will happen if Danske Bank exercises its rights under the loan documents, and initiates foreclosure proceedings if DCSL defaults or continues to default on its loan obligations – complicated by the fact that this forfeiture involves real property located in a foreign country?
- What incentive is there, if any, for Danske Bank to forbear on foreclosure proceedings or possibly pursue other legal action in Mexico, if the Project is in default and tied up in protracted forfeiture proceedings?

These are just a few of some basic, but extremely important questions that we feel have not been addressed by the Government; or, if such questions have been addressed, the answers have not been shared with us, as innocent equity holders in the Project and victims of the crimes from which the forfeiture arises.

Candidly, it is hard to envision a scenario that an all-encompassing preliminary forfeiture order like the one proposed by the Government will improve or even maintain whatever equity may exist in the Property. Instead, the potential for the entire Project to implode or become mired in protracted ancillary proceedings or a bank foreclosure seems infinitely greater if the expansive forfeiture order that the Government is requesting is entered. If that happens, we and the other Members of CSL Properties will be victimized all over again. In that regard, it is also worrisome that the Government has already indicated in prior filings that "the decision to remit forfeited funds to victims as restitution remains in the government's sole discretion".

From our perspective, it seems as though the Government has given very little (if any) consideration to these practical concerns (and numerous others) that will certainly arise once a preliminary order of forfeiture has been entered, and/or the potential negative impact that such an expansive order will have on the Members of CSL Properties, as well as hundreds of other innocent individuals, not to mention the ongoing viability of the Project, itself. We hope and trust the Court is mindful of these important considerations when it crafts its preliminary forfeiture order, and the tremendous impact that such an order will undoubtedly have on the future of the Project.

Your consideration of this letter is appreciated.

Respectfully submitted,

Sergei Gonchar,
Managing Member
CSL Properties 2006, LLC

Respectfully submitted,

Greg de Vries,
Managing Member
CSL Properties 2006, LLC

Respectfully submitted,

Mattias Norstrom,
Managing Member
CSL Properties 2006, LLC