

October 7, 2019

The Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1040
Central Islip, NY 11722

**RE:** United States of America against Phillip Kenner ("Kenner") and Tommy Constantine ("Constantine") – Sentencing Memorandum Analysis

Dear Judge Bianco:

We have been requested to examine the banking records, e-mails, spreadsheets and other documentation provided to us to analyze and support the cash flow related to the instant case. This report is being submitted on behalf of Kenner only. Our report and our procedures only examined the Sentencing Memorandum Conclusions as stated in Kenner's Sentencing Memorandum ("the Memorandum"). In addition, our engagement consisted only of confirming math and examining and verifying documents as provided by Kenner. We did not opine on any legal positions or legal conclusions as stated in the Memorandum. Accordingly, the results of our findings are below:

**Michael Peca ("Peca")**

Hawaii Investment - $1,875,000
Per our review of banking and other records, and other information we were able to confirm that Peca's investment in Hawaii project was $1,875,000 made via a $100,000 deposit and $1,775,000 line of credit with Northern Trust collateralized by Peca's brokerage account at Northern Trust.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>Kenner has represented that $42,553 was repaid to Peca in August 2006.</u>
  The records reflect that there were 27 wires made from August 18, 2006 through September 12, 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to various accounts. The wires were as follows:

  - 1 wire in the amount of $40,000
  - 1 wire in the amount of $10,204
  - 1 wire in the amount of $20,408
  - 2 wires in the amount of $40,816
  - 17 wires in the amount of $42,533
  - 1 wire in the amount of $63,830
  - 3 wires in the amount of $10,638
  - 1 wire in the amount of $21,277

The Honorable Joseph F. Bianco
October 7, 2019
Page 2

>However, it cannot be determined if Peca received such distribution since the bank description only says that it was paid to Charles Schwab. In addition, the April 26, 2006 limited liability agreement of Little Isle IV, LLC reflects that there were 26 investors.

- <u>Kenner has represented that $300,052 was received in tax-free bond interest in the Northern Trust brokerage account that was used as collateral for the $1,775,000 line of credit.</u>
The records reflect that this is correct. Please note that the interest was earned on the entire brokerage account which was in excess of the $1,775,000 line of credit since Northern Trust would only grant lines of credit equal to a percentage of the collateralized brokerage account. Such interest was earned from January 2005 through May 2009.

- <u>Kenner has represented that Peca received over $600,000 from a settlement with Northern Trust.</u>
Trial transcript "United States of America against Phillip Kenner and Tommy Constantine" page 506 reflects Peca's cross examination testimony. Such testimony reflects that Peca received $600,000 from Northern Trust.

- <u>Kenner has represented that Peca received a 10% interest in CSL Properties 2006, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .46% (10% * 4.6% = .46%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $943,000 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Peca owned 10% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .46% multiplied by $205,000,000 equals $943,000.

- <u>Kenner has represented that Peca owns a 10.37% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Peca's interest in Little Isle is worth at least $3,422,100 (10.37% * $33,000,000) plus interest.</u>



The Honorable Joseph F. Bianco
October 7, 2019
Page 3

> The records reflect that Little Isle's operating agreement shows that Peca owned a 10.37% interest in such entity. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed. Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case. We also recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 10.37% multiplied by $33,000,000 equals $3,422,100.

Global Settlement Fund ("GSF") – Investment - $250,000
Per our review of banking and other records, and other information we were able to confirm that Peca's investment in the GSF was $250,000 made via a wire transfer to Ron Richards account on May 8, 2009.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided Peca's investment of $250,000 over $4,555,322 (total investments in the GSF Fund) to arrive at Peca's percentage of total investments as 5.48%. He then extrapolated the 5.48% over the total misappropriation of $17,077 to arrive at Peca's misappropriated assets as $935.</u>
We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.



The Honorable Joseph F. Bianco
October 7, 2019
Page 4

### Eufora Investment - $100,000

Per our review of banking and other records, and other information we were able to confirm that Peca's investment in Eufora of $100,000 made via a wire transfer to Constantine Management Group's ("CMG") Bank of America account # 004678169272 on April 7, 2008.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>Kenner has represented that Constantine sold his Eufora private stock to Peca for $100,000.</u>
  The stock sale is supported by Kenner's complaint to the United States Bankruptcy Court in March 2013. We do not have any other records to support that the transfer was a private sale of stock from Constantine to Peca.

- <u>Kenner has represented that Eufora was independently valued by Neptune Capital at $20,000,000 after the investment.</u>
  We have not seen documents that support such valuation.

### **Owen Nolan ("Nolan")**

### Hawaii Investment - $2,300,000

Per our review of banking and other records, and other information we were able to confirm that Nolan's investment in Hawaii project was $2,300,000 made via a $2,300,000 line of credit with Northern Trust collateralized by Nolan's brokerage account at Northern Trust.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>Kenner has represented that $42,553 was repaid to Nolan in August 2006.</u>
  The records reflect that there was a wire in the amount of $42,553 made during August 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to Nolan's account.

- <u>Kenner has represented that $592,878 was received in tax-free bond interest in the Northern Trust brokerage account that was used as collateral for the $2,300,000 line of credit.</u>
  The records reflect that this is correct. Please note that the interest was earned on the entire brokerage account which was in excess of the $2,300,000 line of credit since the Northern Trust would only grant lines of credit equal to a percentage of the collateralized brokerage account. Such interest was earned from January 2005 through March 2009.



The Honorable Joseph F. Bianco
October 7, 2019
Page 5

- <u>Kenner has represented that Nolan received over $500,000 from a settlement with Northern Trust.</u>
  Trial transcript "United States of America against Phillip Kenner and Tommy Constantine" page 2074 reflects Nolan's cross examination testimony. Such testimony reflects that Nolan received $500,000 from Northern Trust.

- <u>Kenner has represented that Nolan received a 5% interest in CSL Properties, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .23% (5% * 4.6% = .23%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $471,500 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Nolan owned 5% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .23% multiplied by $205,000,000 equals $471,500.

- <u>Kenner has also represented that Nolan received an additional 1% interest in Diamante Cabo San Lucas from Ken Jowdy. Kenner represents that such investment was worth approximately $2,050,000 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  We are unable to confirm Nolan's additional 1% interest in Diamante Cabo San Lucas or the value of such interest if confirmed. We can confirm that 1% multiplied by $205,000,000 equals $2,050,000.

- <u>Kenner has represented that Nolan owns a 18.1022% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Nolan's interest in Little Isle is worth at least $5,973,726 (18.1022% * $33,000,000) plus interest.</u>



The Honorable Joseph F. Bianco
October 7, 2019
Page 6

>Nolan's interest is supported by the Company's 2006 K-1 which reflects Nolan's interest as 18.1022%. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed. Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case. We recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 18.1022% multiplied by $33,000,000 equals $5,973,726.

**Darryl Sydor ("Sydor")**

Hawaii Investment - $950,000
Per our review of banking and other records, and other information we were able to confirm that Sydor's investment in Hawaii project was $950,000 made via a $100,000 deposit and $850,000 line of credit with Northern Trust collateralized by Sydor's brokerage account at Northern Trust.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that $40,000 was repaid to Sydor in August 2006.
  The records reflect that there was a wire in the amount of $40,000 made during August 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to Sydor's account.

- Kenner has represented that $249,215 was received in tax-free bond interest in the Northern Trust brokerage account that was used as collateral for the $950,000 line of credit.



The Honorable Joseph F. Bianco
October 7, 2019
Page 7

> The records reflect that this is correct. Please note that the interest was earned on the entire brokerage account which was in excess of the $950,000 line of credit since the Northern Trust would only grant lines of credit equal to a percentage of the collateralized brokerage account. Such interest was earned from January 2005 through April 2009.

- <u>Kenner has represented that Sydor received a 5% interest in CSL Properties, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .23% (5% * 4.6% = .23%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $471,500 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Sydor owned 5% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .23% multiplied by $205,000,000 equals $471,500.

- <u>Kenner has represented that Sydor owns a 7.85% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Sydor's interest in Little Isle is worth at least $2,590,500 (7.85% * $33,000,000) plus interest.</u>
  The records reflect that Little Isle's operating agreement shows that Sydor owned a 7.85% interest in such entity. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed. Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case.



The Honorable Joseph F. Bianco
October 7, 2019
Page 8

We recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 7.85% multiplied by $33,000,000 equals $2,590,500.

Global Settlement Fund ("GSF") – Investment - $250,000
Per our review of banking and other records, and other information we were able to confirm that Sydor's investment in the GSF was $250,000 made via a wire transfer to Ron Richards account on May 11, 2009.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided Sydor's investment of $250,000 over $4,555,322 (total investments in the GSF Fund) to arrive at Sydor's percentage of total investments as 5.48%. He then extrapolated the 5.48% over the total misappropriation of $17,077 to arrive at Sydor's misappropriated assets as $935.
We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.

Eufora Investment - $50,000
Per our review of banking and other records, and other information we were able to confirm that Sydor's investment in Eufora of $50,000 made via a wire transfer to Constantine Management Group's ("CMG") Bank of America account # 004678169272 on July 8, 2008.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that Constantine sold his Eufora private stock to Sydor for $50,000.
The stock sale is supported by Kenner's complaint to the United States Bankruptcy Court in March 2013. We do not have any other records to support that the transfer was a private sale of stock from Constantine to Sydor.

- Kenner has represented that Eufora was independently valued by Neptune Capital at $20,000,000 after the investment.
We have not seen documents that support such valuation.



The Honorable Joseph F. Bianco
October 7, 2019
Page 9

### Bryan Berard ("Berard")

Hawaii Investment - $750,000
Per our review of banking and other records, and other information we were able to confirm that Berard's investment in Hawaii project was $750,000 made via a $100,000 deposit and $650,000 line of credit with Northern Trust collateralized by Berard's brokerage account at Northern Trust.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that $42,553 was repaid to Berard in August 2006.
  The records reflect that there were 27 wires made from August 18, 2006 through September 12, 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to various accounts. The wires were as follows:

    - 1 wire in the amount of $40,000
    - 1 wire in the amount of $10,204
    - 1 wire in the amount of $20,408
    - 2 wires in the amount of $40,816
    - 17 wires in the amount of $42,533
    - 1 wire in the amount of $63,830
    - 3 wires in the amount of $10,638
    - 1 wire in the amount of $21,277

  However, it cannot be determined if Berard received such distribution since the bank description only says that it was paid to Charles Schwab. In addition, the April 26, 2006 limited liability agreement of Little Isle IV, LLC reflects that there were 26 investors.

- Kenner has represented that $129,314 was received in tax-free bond interest in the Northern Trust brokerage account that was used as collateral for the $650,000 line of credit.
  The records reflect that this is correct. Please note that the interest was earned on the entire brokerage account which was in excess of the $650,000 line of credit since the Northern Trust would only grant lines of credit equal to a percentage of the collateralized brokerage account. Such interest was earned from January 2005 through April 2009.

- Kenner has represented that Berard received over $300,000 from a settlement with Northern Trust.



The Honorable Joseph F. Bianco
October 7, 2019
Page 10

>   Trial transcript "United States of America against Phillip Kenner and Tommy Constantine" page 3042 reflects Berard's cross examination testimony. Such testimony reflects that Berard received $300,000 from Northern Trust.

- <u>Kenner has represented that Berard received a 10% interest in CSL Properties, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .46% (10% * 4.6% = .46%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $943,000 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Berard owned 10% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .46% multiplied by $205,000,000 equals $943,000.

- <u>Kenner has represented that Berard received a job from Kenneth Jowdy</u>
  Trial transcript "United States of America against Phillip Kenner and Tommy Constantine" page 3067 reflects Berard's cross examination testimony. Such testimony reflects that Berard had a business relationship with Ironman Sales in Mexico whereby Berard brings clients to the DCSL property for entertainment and golf. We cannot support any other details of such arrangement or the value of such arrangement.

- <u>Kenner has represented that Berard owns a 6.36% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Berard's interest in Little Isle is worth at least $2,098,800 (6.36% * $33,000,000) plus interest.</u>



The Honorable Joseph F. Bianco
October 7, 2019
Page 11

> The records reflect that the Little Isle's operating agreement shows that Berard owned a 6.36% interest in such entity. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed. Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case. We recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 6.36% multiplied by $33,000,000 equals $2,098,800.

**Steve Rucchin ("Rucchin")**

Hawaii Investment - $1,100,000
Per our review of banking and other records, and other information we were only able to confirm Rucchin's investment in Hawaii project as $1,000,000, made via a $1,000,000 line of credit with Northern Trust collateralized by Rucchin's brokerage account at Northern Trust.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that $42,553 was repaid to Rucchin in August 2006.
  The records reflect that there was a wire in the amount of $42,553 made during August 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to Rucchin's account.

- Kenner has represented that $210,113 was received in tax-free bond interest in the Northern Trust brokerage account that was used as collateral for the $1,000,000 line of credit.



The Honorable Joseph F. Bianco
October 7, 2019
Page 12

    The records reflect that this is correct. Please note that the interest was earned on the entire brokerage account which was in excess of the $1,000,000 line of credit since the Northern Trust would only grant lines of credit equal to a percentage of the collateralized brokerage account. Such interest was earned from January 2005 through May 2009.

- <u>Kenner has represented that Rucchin invested $300,000 from the line of credit in an investment other than Hawaii.</u>
  The line of credit transcript history reflects that $300,000 was disbursed from the line on March 12, 2007. In addition, the March 2007 Ula Makika, LLC bank statement reflects that $300,000 came in and went out to Robert Gaudet around such time. In addition Bates stamped document #BN-P-00000228 entitled "Transactions Related to Robert Gaudet" also reflects as March 13, 2007 wire transfer of $300,000.

- <u>Kenner has represented that Rucchin received a 5% interest in CSL Properties, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .23% (5% * 4.6% = .23%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $471,500 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Rucchin owned 5% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .23% multiplied by $205,000,000 equals $471,500.

- <u>Kenner has represented that Rucchin owns a 6.82% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Rucchin's interest in Little Isle is worth at least $2,250,600 (6.82% * $33,000,000) plus interest.</u>
  The records reflect that Little Isle's operating agreement shows that Rucchin owned a 6.82% interest in such entity. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed.



The Honorable Joseph F. Bianco
October 7, 2019
Page 13

Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case. We recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 6.82% multiplied by $33,000,000 equals $2,250,600.

Global Settlement Fund ("GSF") – Investment - $50,000
Per our review of banking and other records, and other information we were able to confirm that Rucchin's investment in the GSF was $50,000 made via a wire transfer to Ron Richards account on May 26, 2009.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided Rucchin's investment of $50,000 over $4,555,322 (total investments in the GSF Fund) to arrive at Rucchin's percentage of total investments as 1.09%. He then extrapolated the 1.09% over the total misappropriation of $17,077 to arrive at Rucchin's misappropriated assets as $186.</u>
We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.

Eufora Investment - $150,000
Per our review of banking and other records, and other information we were able to confirm that Rucchin's investment in Eufora of $150,000 made via two wire transfers to Eufora LLC's Johnson Bank account # 6030820074. The first transfer of $100,000 was made on February 19, 2009 and the second $50,000 transfer was made on April 17, 2019.

In addition, our conclusions are as follows as it pertains to Kenner's representations:



The Honorable Joseph F. Bianco
October 7, 2019
Page 14

- <u>Kenner has represented that Tim Gaarn sold his Eufora private stock to Rucchin for $150,000.</u>
  The stock sale is supported by the fact that the above-named deposits into the Johnson bank account are then directly transferred back out to Tim Gaarn. Other records to support that the transfer was a private stock sale from Gaarn to Rucchin is an e-mail from C.R. Gentry to Tim Gaarn which mentions an external transfer of stock units from Standard Ventures LLC to AZ Eufora Partners I LLC.

- <u>Kenner has represented that Eufora was independently valued by Neptune Capital at $20,000,000 after the investment.</u>
  We have not seen documents that support such valuation.

**William Ranford ("Ranford")**

Global Settlement Fund ("GSF") – Investment - $300,000
Per our review of banking and other records, and other information we were able to confirm that Ranford's investment in the GSF was $300,000 made via several wire transfers to Ron Richards account as follows: On June 5, 2009, Ranford wired $100,000 into the account. On June 12, 2009, $100,000 was wired back to Ranford's Charles Schwab account. On July 13, 2009, Ranford wired $300,000 to Ron Richards Trust account.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided Ranford's investment of $350,000 over $4,555,322 (total investments in the GSF Fund) to arrive at Ranford's percentage of total investments as 6.58%. He then extrapolated the 6.58% over the total misappropriation of $17,077 to arrive at Ranford's misappropriated assets as $1,123.</u>
  We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.



The Honorable Joseph F. Bianco
October 7, 2019
Page 15

Eufora Investment - $400,000
Per our review of banking and other records, and other information we were able to confirm that Ranford's investment in Eufora of $400,000 was made as follows: On July 7, 2008 a wire transfer of $200,000 to Constantine Management Group's ("CMG") Bank of America account # 004678169272. On February 6, 2009, a wire transfer of $100,000 into LLC's Johnson Bank account # 6030820074 and on May 4, 2009 a wire transfer of $100,000 into LLC's Johnson Bank account # 6030820074.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that Constantine sold his Eufora private stock to Ranford for $200,000.
  The stock sale is supported by Kenner's complaint to the United States Bankruptcy Court in March 2013. We do not have any other records to support that the transfer was a private sale of stock from Constantine to Ranford.

- Kenner has represented that Tim Gaarn sold his Eufora private stock to Ranford for $200,000.
  The stock sale is supported by the fact that the above-named deposits into the Johnson bank account are then directly transferred back out to Tim Gaarn. Other records to support that the transfer was a private stock sale from Gaarn to Rucchin is an e-mail from C.R. Gentry to Tim Gaarn which mentions an external transfer of stock units from Standard Ventures LLC to AZ Eufora Partners I LLC. However, such e-mail only reflects a transfer of $100,000 for such units. There are no other records to support the sale of additional units for another $100,000.

- Kenner has represented that Eufora was independently valued by Neptune Capital at $20,000,000 after the investment.
  We have not seen documents that support such valuation.


**Tyson Nash ("Nash")**

Hawaii Investment - $100,000
Per our review of banking and other records, and other information we saw a transfer from Nash on May 19, 2005 into Big Isle IV Ventures, LLC's Northern Trust account # 1411013249 bank statement.

In addition, our conclusions are as follows as it pertains to Kenner's representations:



The Honorable Joseph F. Bianco
October 7, 2019
Page 16

- <u>Kenner has represented that $42,553 was repaid to Nash in August 2006.</u>
  The records reflect that there was a wire in the amount of $42,553 made during August 2006 from Na'alehu Ventures 2006, LLC Northern Trust bank account #1411023164 to Nash's account.

- <u>Kenner has represented that Nash received a 5% interest in CSL Properties, LLC's 4.6% interest in Diamante Cabo San Lucas. This equates to a .23% (5% * 4.6% = .23%) interest in Diamante Cabo San Lucas. Kenner represents that such investment was worth approximately $471,500 since Diamante Cabo San Lucas had a net investment value of $205,000,000.</u>
  Per the CSL Properties 2006, LLC ("CSL") operating agreement dated March 2, 2006, Nash owned 5% of such entity. Kenner has represented that CSL owned 8% of Diamante Cabo San Lucas ("DCSL") until September 2016 when CSL gained an additional 1.05% interest for a total of 9.05% in DCSL pursuant to a mediation settlement. We have only been able to support this through an e-mail dated September 12, 2016 from Steve Main to various investors. In addition, we cannot confirm the investment value of DCSL. However, we can confirm that .23% multiplied by $205,000,000 equals $471,500.

- <u>Kenner has represented that Nash owns a 2.25% interest in Little Isle IV, LLC ("Little Isle"). He has also represented that Little Isle is owed at least $33,000,000 from Ken Jowdy ("Jowdy") for monies advanced to Jowdy from Little Isle thus Nash's interest in Little Isle is worth at least $742,500 (2.25% * $33,000,000) plus interest.</u>
  The records reflect that Little Isle's operating agreement shows that Nash owned a 2.25% interest in such entity. However, we are unable to confirm that monies wired or sent to Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") constitute loans to Jowdy. Kenner has pointed us to the By Laws of Little Isle dated September 1, 2004 which reflect that Little Isle could "participate as a lender if deemed by the managing member to be in the best interest of the LLC". In addition, Kenner has also provided us with a revolving line of credit agreement dated December 7, 2004 between Kenneth Aboud Jowdy (Borrower) and Phillip A Kenner and Little Isle IV, LLC (Lenders) reflecting a 15% interest rate on any monies borrowed. Furthermore, the Government's Forfeiture Exhibit # 44 also reflects monies transferred from Little Isle and / or others to Baja Development as loans to Baja Development. Kenner has provided us with the attached list of monies transferred to Jowdy, Jowdy controlled companies or for the benefit of Jowdy ("Jowdy vendors") less repayments from such Jowdy controlled companies or Jowdy vendors for the period October 29, 2004 through March 24, 2006. We were able to verify such transactions to the respective bank statements only. We cannot verify the purpose of such transfers or that such transfers to entities other than Baja Development Corp. and / or Diamante del Mar are connected to the instant case. In addition, we cannot verify that the schedule encompasses all transactions related to the instant case.



The Honorable Joseph F. Bianco
October 7, 2019
Page 17

>We recalculated the balance due as of September 30, 2019 as a loan balance and can confirm that such balance would be at least $33,000,000 assuming a 15% annual interest rate. Finally, we can confirm that 2.25% multiplied by $33,000,000 equals $742,500.

Global Settlement Fund ("GSF") – Investment - $100,000
Per our review of banking and other records, and other information we were able to confirm that Nash's investment in the GSF was $100,000 made via a wire transfer to Ron Richards account on June 10, 2009.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided Nash's investment of $100,000 over $4,555,322 (total investments in the GSF Fund) to arrive at Nash's percentage of total investments as 2.19%. He then extrapolated the 2.19% over the total misappropriation of $17,077 to arrive at Nash's misappropriated assets as $374.
We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.

Eufora Investment - $100,000
Per our review of banking and other records, and other information we were able to confirm that Nash's investment in Eufora of $100,000 made via a wire transfer to Constantine Management Group's ("CMG") Bank of America account # 004678169272 on April 24, 2008.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- Kenner has represented that Constantine sold his Eufora private stock to Nash for $100,000.
The stock sale is supported by Kenner's complaint to the United States Bankruptcy Court in March 2013. The sale is also supported by the Government's Exhibit 764 "Transfer of Membership Agreement" which is further discussed in Trial transcript "United States of America against Phillip Kenner and Tommy Constantine" page 1943. We do not have any other records to support that the transfer was a private sale of stock from Constantine to Nash.



The Honorable Joseph F. Bianco
October 7, 2019
Page 18

- <u>Kenner has represented that Eufora was independently valued by Neptune Capital at $20,000,000 after the investment.</u>
  We have not seen documents that support such valuation.

### Jay McKee ("McKee")

<u>Global Settlement Fund ("GSF") – Investment - $250,000</u>
Per our review of banking and other records, and other information we were able to confirm that McKee's investment in the GSF was $250,000 made via a wire transfer to Ron Richards account on May 11, 2009.

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>According to Mr. Kenner, the Court determined, in its October 13, 2017 Memorandum and Order that Constantine was convicted of misappropriating $17,077. Accordingly, Kenner has divided McKee's investment of $250,000 over $4,555,322 (total investments in the GSF Fund) to arrive at McKee's percentage of total investments as 5.48%. He then extrapolated the 5.48% over the total misappropriation of $17,077 to arrive at McKee's misappropriated assets as $935.</u>
  We can confirm the math on the above as accurate. We have also been provided with Judge Bianco's October 13, 2017 Memorandum and Order which on page 60 reflects that Contantine's misappropriation of the GSF Fund was $17,077.

### Joe Juneau ("Juneau")

<u>Hawaii Investment - $319,244</u>

In addition, our conclusions are as follows as it pertains to Kenner's representations:

- <u>Kenner has represented that Juneau was fully bought out and repaid by Owen Nolan on March 23, 2007.</u>
  Kenner has represented to us that Juneau and Nolan had each purchased shares through a joint letter of credit for $638,488. The records reflect that on March 23, 2007, Owen Nolan's Northern Trust line of credit report increased by $638,488. This transaction suggests that the increase went to pay the letter of credit and therefore suggests that Owen Nolan purchased Juneau's interest.



The Honorable Joseph F. Bianco
October 7, 2019
Page 19

We are happy to further discuss the results of our findings with you at any time. Please feel free to contact me at the number on page 1 with any comments or questions that you may have.

Thank you.

Very truly yours,

*Eric Mendelsohn*

Eric Mendelsohn, CPA

