October 15, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

Your Honor,

During the October 11, 2019 hearing, Kenner offered to recap his comments and representations of evidence confirming "no nexus" to the Baja Ventures 2006 LLC in Cabo san Lucas with the government's own forensic submissions (post-trial).

On July 2, 2019, Your Honor stated (*Tr.25*), "*What I want the government to do is to try to obviously focus its attention on the core of this case which is the entities that were controlled by the defendants and those entities that the money was moved into and protect all of that…*"

TRANSLATION:  "**Follow the money**"…

<u>The government did three-and-a-half years ago</u>.   They do not want the Court to realize it, because the forfeiture nexus requirement fails with their-own post-trial submissions.

Your Honor addressed this issue for the umpteenth time (*July 2, 2019 hearing Tr.24-25*):
> "*I'm a judge.  I'm not a business person, so I don't know all of the intricacies of something like this.  So I'm relying on the government's assessment of the way to do this to protect what the government is trying to accomplish here without overreaching in a way that is going to hurt everybody.  And I don't think we're at that point.  <u>If the government just continues to not really focus on this, I'm going to have to try to figure out myself in terms of where I should draw the line</u>.*"

Kenner addressed this critical point in the July 2, 2019 hearing, similar to Kenner's October 11, 2019 offers.[1]

---

[1] *July 2, 2019 hearing at 31-32*:
> [Defendant Kenner]: *And Your Honor, if I could just clarify one point, you know, the government back in 2015, 2016 actually did their own accounting on the cash flow*

1

U.S. attorney Michiewicz made it clear to the 2015 trial court that Kenner was not being charged with "risky" investments, rather for "**stealing money**" (*Tr.4588*):

> *Q. You understand that the indictment in this case <u>does not blame you</u> for losing money in a risky venture. Right?*
>
> *A [Kenner]: That's my understanding.*
>
> *Q. You understand that the indictment charges you with <u>stealing money from your clients</u>, correct?*
>
> *A [Kenner]: That's my understanding.*

---

> *that they're now talking about and they provided the Court during the forfeiture hearings in early 2016 with both government-forfeiture-36 and government-forfeiture-44.   Government-forfeiture-44 was the accounting records that Mr. Wayne had produced for the government through Jowdy's attorneys confirming that a hundred percent of the money that flowed out of the Hawai'i loans to Jowdy were in fact loans to Jowdy in spite of the government's proffer during trial of being phony, bogus and supposed.*
>
> *Second and probably more important to this forfeiture issue, and the government's trying to morph these two accounting records together when they are two unique issues.   And I addressed that on my last representations to the court.   I think it was in docket 667.   But government-forfeiture-36 was the government's accounting to track the funds that went to the purchase of the Cabo san Lucas property.   My two partners – and for the record, zero of the dollars flow through any of my personal accounts.*
>
> *My entity that the government seeks to forfeit, Baja Ventures 2006, was paid for in its entirety by my two partners, Joseph [sic] Stumpel and [indiscernible] [actually Jere Lehtinen], neither of which were ever named in the superseding indictment.   The government through government-forfeiture-36 traced $4.1 million to Mr. Jowdy for the purchase, although he only docketed $2.5 million, pilfering the other 1.6 that resulted in Mexican litigation as I've written to the Court.*
>
> *The other investors, which include Mr. Peka [sic] who you've seen here and about none other investors, totaled 2.3 million.   So in the context, $6.4 million was directly sent to Mr. Jowdy by my investors that are in the two equity LLCs.   Mr. Jowdy through his legal counsel only represented that $6.25 million was given to the seller, so he's $150,000 short on what we gave him for our two equity positions, notwithstanding his accounting errors again in his favor.*
>
> *THE Court: All right.*

The government's post-trial submissions exonerates Kenner per Michiewicz's own Q&A...

***Government-forfeiture-44***...(admitted Forfeiture Tr.66-67 – March 9, 2016) ***Government-forfeiture-44*** confirms that all of the Hawai'i money went to Jowdy as loans, despite the government emphasizing that Kenner was "*lying*" (*infra*) about it – and prejudicing Kenner's defense by asserting that Kenner's representations were "*bogus*" (*Tr.5708 (2x), 5709*), "*phony*" (*Tr.4597, 4598*) and "*supposed*" (*Tr.5707-5708*).  The unsubstantiated attacks on Kenner during trial referred to Kenner as "*lying about everything*" (*Tr.5064-5065*).

- Only the government's self-serving proffers contradicted Kenner's confirmations of the Jowdy loans as being real.

***Government-forfeiture-36***...
In spite of over three-and-a-half years of post forfeiture hearing arguments about the government's requested "preliminary order of forfeiture" (requiring nexus from ill-gotten gains), the government's own 2016 submission confirms that Kenner's investment partners deposited $4.1 million into Jowdy accounts ($1.6 million of which was stolen by Jowdy and sued for in Mexico by Jozef Stumpel to recover[2]) (*ECF No. 652*).

---

[2] The court should note that the U.S. Attorneys introduced John Kaiser's Mexico testimonial in the 2008 *Stumpel v. Jowdy* criminal case (known as a testigo) in 2014 (pre-trial) to the EDNY court as "*another forgery of Kaiser's name*".  They offered it as proof that Kaiser's name had been "forged" by someone in Mexico.

The government *dropped* the Kaiser lie about this forgery after Kenner explained the evidence in-hand to his trial attorney that the FBI recordings have a confession of Kaiser's signature being authentic on the Mexico testigo.   Kenner's trial counsel "leaked" the crucial impeachment evidence to the U.S. Attorneys and the subject matter vanished from the government's prosecution without notifying the court that there was an integrity issue with Kaiser regarding "forgeries" that he had falsely offered to the FBI, U.S. Attorneys – and subsequently as perjury to this EDNY Court (*ECF No. 675 at 60, footnote 21*).

- Nevertheless, once Kaiser was employed by Jowdy in Mexico (2012), Kaiser immediately gave false testimony to the Mexico criminal court that his name was forged and the Stumpel case versus Jowdy for the $1.6 million theft was dismissed. This is the same "Jowdy" that Kaiser called a "crook" in his February 28, 2019 "shocking" revelation letter to this Court that the government effectively quoted repeatedly during the October 11, 2019 proceedings (*ECF No. 628*).

*Trace the money…*
The government *never* traced ill-gotten funds to any Kenner or Kenner investor LLC equity in Cabo san Lucas (or anywhere related to the instant case) – and as such, have not met their burden for forfeiture.   The court knows that the Jowdy-Hawai'i loan has been authorized by corporate doctrine since 2004 (*Tr.4458, 4520, 4526*) -- and was acknowledged by 25 of the 26 Hawai'i partners pre-2015 trial (none dissenting); including everyone except Owen Nolan, who has worked with Jowdy since 2008, when he signed a settlement agreement for any Jowdy-related frauds, identical to Joe Juneau (*Tr.354*).   Nolan, like Juneau, has been fully recompensed for all Hawai'i and Mexico investment issues since 2008.

It is critical that the only money the government traced from Hawai'i to Jowdy to the Cabo deal is a $350,000 transfer that originated with Owen Nolan's capital account contribution (if backwards accounting is even a reasonable method).   Nolan *cannot* be a victim because he settled with Jowdy in 2008 for all things Jowdy stole, mismanaged (known or unknown) at the time.  The Nolan settlement and exchange of Cabo equity with Jowdy effectively authorizes the Jowdy use of Nolan's funds under the same scenario – thus the only possible nexus to the Cabo deal is broken. That certainly includes any funds that originated from Nolan in Hawai'i that Jowdy acquired thru the Hawai'i loan.

- Also, the Jowdy loan was never dissipated as an asset of the Hawai'i partners since the "group" authorization.   Kenner's forensic accountant verified its current $33 million-plus value (*ECF No. 736-4 and 736-5, calculation exhibits included in verification*).

*Probation's 2016 view of Jowdy (one-year post-trial)…*
Thru the submission date of the 2016 PSR addendum, Jowdy was referred to as a victim of Kenner's by the government (*Tr.27-33*) and Probation (July 18, 2016 submission); never a co-conspirator (until U.S. Attorney O'Connor raised the issue to Magistrate Shields on May 14, 2019 [*Tr.37*]).   *They needed to manufacture a nexus*, so they have been forced to "move the goalposts".   Kenner was not prosecuted as a Jowdy co-conspirator; fundamentally changing everything to do with the instant case.

- In the *United States v. Contorinis*, 692, F.3d 136, 148 (2d Cir 2012), the Court "observed that neither the language of the criminal forfeiture statute nor Circuit case law supported the proposition that a defendant must forfeiture proceeds that 'go directly to an innocent third party and are never possessed by the defendant'" *Id.* at 147.

4

The Hawai'i-Jowdy loan is and has always been a titled asset of the Hawai'i partners (Little Isle 4 and Na'alehu Ventures 2006) (*See 3500-KJ-2 at 24-25*) (*Tr.4597-98*). And – Jowdy had been referred to as a victim thru mid-2016, or longer.

The government wants the court to ignore typical disgorgement precedent, where its primary purpose "is to deprive violators of their ill-gotten gains". *SEC v. First Jersey SEC. Inc.*, 101 F.3d 1450, 1474 (2d Cir 1996). Their approach also contradicted the Second Circuit decision in *United States v. Contorinis*, 692 F.3d 136 (2d Cir 2012) ("Criminal forfeiture focuses on the disgorgement by a defendant of his 'ill-gotten gains'" *Id*. at 146). The Second Circuit opined that "[e]xtending the scope of a forfeiture to include proceeds that have never been acquired either by a defendant or his joint actors would be at odds with the broadly accepted principle that forfeiture is calculated based on a defendant's gains.").

As such, the government has failed to meet virtually every requirement to seek Baja Ventures 2006, LLC (debunked thru their own forensic accounting submissions, detailed further *infra*); and has certainly failed to create a nexus to make more innocent (non-parties to the instant case) victims from their actions -- $4.1 million worth (at a minimum).

*The government's strategic delay of evidence allows erroneous prosecutorial theories...*

- The government cannot hide from this malfeasance – because they called the admissions of the loans to Jowdy (*government-forfeiture-44*) "cumulative" post-trial (*ECF No. 440 at 5-6*) – exposing their complete negligence in prosecution, with the confessions that **they knew of the evidence** (a.k.a. "cumulative").

The timing of their strategic disclosure was calculated to avoid conflicting with the prejudicially false premise that "*Kenner stole the Hawai'i money to buy his piece of the Cabo resort project*"... (*Tr.5996, 5711, 5722-23, 5744-45, 5990, 5991-92, 5707-5709*), as follows:

[*Tr.5711* – Michiewicz summation]:
> "And what do you find out [about the Jowdy loan]? You find out, what did that 5 million or however much more or less that netted out to be, what did it buy Mr. Kenner? It bought him a 39 percent interest in Ken Jowdy's Cabo San Lucas. Didn't buy the players a 39 percent interest. Him. [] To this day, right now, he is a partner in that resort. That's where the money went. That's what it bought him. And on the backs, on the portfolios, of the hockey players."

5

> [*Tr.5722-5723* – Michiewicz summation]:
>> *"And if you look at the Centrum loan, I can not think of a more perfect example of proof beyond a reasonable doubt -- actions speak louder than words -- no reason to mortgage Honu'apo parcel. No reason other than for Kenner to get his 39 percent. To get his piece of the pie, that resort in Cabo. No reason. Actions speak louder than words. And in this case the action is pure fraud."*
>
> And – [*Tr.5990* – Komatireddy rebuttal summation]:
>> *"…you know what, Baja Development Corporation, on that chart, but there is some sort of misconduct; you don't know what the money was for. You know exactly what the money was for. In fact, Mr. LaRusso, when the first witness got on the stand, one of his first exhibits he entered into evidence was a record of the Baja Development Corporation. Those records are in evidence. Mr. Kenner told you that he used that money to get his piece in the Mexico investment with Ken Jowdy. You know exactly what that's for. That's in evidence."*
>
> And – [*Tr.5996* – Komatireddy rebuttal summation]:
>> *"He [Kenner] used it for personal use to get an interest in that resort in Cabo."*

- ==The Court and the government know that these abusive summations, amongst multiple other insinuations and misleading questions during Kenner's cross-examination, *infra*, were *false*, but fully prejudicial against Kenner – and left uncorrected, absolutely affected the jury's deliberations.==

Michiewicz attacked Kenner about the authenticity of the loan agreement, insinuating Kenner's dishonesty about the loan agreement; he himself knew to be authentic (*Tr.4597-4598*):
> *Q:  So you would agree with me Mr. Kenner, that if the loan document proves to this jury to be phony, everything you have said in your direct testimony about money going to Mexico and not being stolen is a lie?*

AUSA Michiewicz' assault on the known truths continued:
> *Q:  And if that loan document proves to be phony, then you are lying?   Correct?*

**The government produced no supportive evidence.   The government produced just the opposite to this court thru the forfeiture exhibits.**

6

- **Kenner can only hope the jury did not take them on their honor, and perceived responsibility as officers of the Court, <u>above reproach</u>!!**

Assuming that the government had confirmed to the jury in 2015 that Jowdy was a revisionary "bad guy" and had received <u>all</u> of the Hawai'i loan money (i.e. "not stolen by Kenner to buy his piece of the Cabo project") (*government-forfeiture-44* and *government-forfeiture-36*), it is improbable that the jury could have convicted Kenner of anything to do with the Hawai'i "object" of the instant case, as "stolen" by Kenner lie Michiewicz asserted thru misleading Q&A (*Tr.4588*).   Because – 100% of the Hawai'i funds are traceable to authorized activities in the corporate governing documents – <u>and now it is certain Kenner did not steal any of them</u>....

*Government-forfeiture-36 details...*
- *The document confirmed $4.1 million was deposited into the Baja Ventures 2006 capital account thru Jowdy (as the Cabo Managing Member) – although $1.6 million was stolen by Jowdy leaving a deficient $2.5 million "untainted" capital account...*

The government evidence confirmed $4.1 million in Baja Ventures 2006 deposits:
- *The $956,000 Stumpel deposits (May 16-17, 2005);*
- *The Stumpel $1.6 million deposit (May 23, 2005) to Jowdy's LOR Management account in Mexico; and*
- *The Lehtinen $1.5 million deposit June 6, 2005 to Jowdy's Propiedades DDM account in Mexico.*

*Clarification of the first four deposits to the Cabo seller...*
The forensic tracing by the government represents four (4) transfers in May 2005 to the seller of the Cabo property ($900,000, as expected by Stumpel and Kenner, specifically traceable to the Jozef Stumpel contemporaneous deposits):

*Government-forfeiture-36* identifies the following four transfers (requiring extra detailed tracing):
- 5-04-2005 -- $350,000 from Little Isle 4 account;
- 5-17-2005 -- $350,000 from Little Isle 4 account;
- 5-17-2005 -- $325,000 from Ula Makika account;
- 5-18-2005 -- $225,000 from Ula Makika account;

7

*Detail tracing...*
5-04-2005 -- **$350,000** (back-traceable to Owen Nolan's capital account contribution as part of the Hawai'i-Jowdy loans); [3]

- The 2008 Jowdy-Nolan settlement agreement conflates all transactions with Nolan as if they were done by Jowdy himself (Nolan's alter ego); removing Nolan's transactions from "concealment or criminal" scrutiny in the instant case.

**Jozef Stumpel's initial Baja Ventures 2006 deposits** (*ECF No. 652*):

- On 5-16-2005, Kenner's Baja Ventures 2006 equity partner, Jozef Stumpel, made a **$446,000 deposit** into a new Ula Makika bank account (*Bates stamp: NAAZ000527*) – originally opened for Stumpel and Kenner.

- On 5-17-2005, Kenner's Baja Ventures 2006 equity partner, Jozef Stumpel, made a **$510,000 deposit** into their new Ula Makika bank account (*Bates stamp: NAAZ000527*).

Following the Stumpel capital account deposits of **$956,000**, Jowdy instructed Kenner and Stumpel to transfer the funds as follows for the Cabo seller deposits:

---

[3] Nolan's 2008 settlement with Jowdy included an "everything Jowdy touched under the sun" provision, thus the 2008 agreement settled all funds Jowdy received (loans from Hawai'i -- and Nolan's Mexico investments [also stolen by Jowdy – *Bates stamp: PKHome-00016860*). Thus, the Nolan transfer was fully compensated by Jowdy thru the 2008 agreement, removing Nolan from any nexus argument by Nolan's own choice; now perceived as Jowdy's alter ego.

Ironically, in *government-forfeiture-36*, the only funds that can be back-traced (unconventionally) to specific investors is the $350,000 the government traced to the Cabo san Lucas purchase emanating from Nolan's capital account contributions. Thus, even the nexus to Jowdy had been settled eleven (11) years ago in 2008. **This wholly eliminates Owen Nolan from victim status for anything to do with this instant case** (certainly never more than a $350,000 potential victim) – specifically because he was a Hawai'i equity investor for over a year before the Jowdy loans even began (the demarcation date of the alleged "concealment" issues; raising non-fraud factors related to loss amount and forfeiture/restitution issues).
- See Justice Gorsuch's appeal agreement of identical elements in *United States v. Evans*, 744 F.3d 1192; 2014 U.S. App. LEXIS 4490 (10th Cir 2014) (*referencing Turk*) (*Evans I*)...and *2nd appeal for improper calculation (again) -- United States v. Evans*, 677 Fed. Appx. 469; 2017 U.S. App. LEXIS 1942 (10th Cir 2017) (*Evans II*).

5-17-2005 -- **$325,000** was wired to the Cabo seller (Atilio Colli Villarino) – per Jowdy's instructions (as the Managing Member of the Cabo purchase) (*Bates stamp: NAAZ000527*) *from the Stumpel Ula Makika deposits*.
- Specifically traceable to Baja Ventures 2006 from Jozef Stumpel's capital account deposits, *supra*…

5-17-2005 -- **$400,000** was transferred from Ula Makika to the Little Isle 4 bank account awaiting further instructions from Jowdy for the remaining wire transfer accounts and payees (**SENT account** -- *Bates stamp: NAAZ000527*) (**RECEIVED** account -- *Bates stamp: NAAZ000172*).
- At the time of the May 2005 Stumpel deposits, Ula Makika was *not* a Hawai'i Partners related bank account. It was newly established for Stumpel and Kenner to purchase a Hawai'i water company (a deal that contemporaneously fell thru).

5-17-2005 -- **$350,000** was wired directly to the Cabo seller (Atilio Colli Villarino) – per Jowdy's instructions (as the Managing Member of the Cabo purchase) *from the Stumpel Ula Makika deposits (thru Little Isle 4) (Bates stamp: NAAZ000171)*.
- Specifically traceable to Baja Ventures 2006 from Jozef Stumpel's capital account contribution…

- 5-18-2005 – the **$45,000** balance was wired to Jowdy's Baja Development Corp account (for Cabo related expenses) – per Jowdy's instructions (as the Managing Member of the Cabo purchase) *from the Stumpel Ula Makika deposits (thru Little Isle 4) (Bates stamp: NAAZ000171)*.
   - Specifically traceable to Baja Ventures 2006 from Jozef Stumpel's capital account contribution…

5-18-2005 -- **$225,000** was wired to the Cabo seller (Atilio Colli Villarino) – per Jowdy's instructions (as the Managing Member of the Cabo purchase) *from the Stumpel Ula Makika deposits*.
- Specifically traceable to Baja Ventures 2006 from Jozef Stumpel's capital account contribution…

Kenner received ZERO benefit from the Hawai'i-Jowdy loans and is still a Jowdy victim with the remainder of the Hawai'i partners (excluding John Kaiser and former COO Chris Manfredi who have no money traceable to the Hawai'i investment accounts or project) (*See 3500-CM-2-r at 2*).

9

*Future litigation to recover the Jowdy stolen funds…*
Based on the Jowdy *government-forfeiture-44* offering in 2015, and the Jowdy "under oath" declaration fraud on the court (*ECF No. 611-1*), Kenner and Kenner investors will be forced to sue Jowdy for the funds under civil proceedings once Kenner is available to spearhead the issue (only tolled by the Jowdy-Galioto-Kaiser-Berard-led arrest in November 2013).   The government knew the truths since 2015 (at a minimum thru the Jowdy submission), but has refused to assist in the documented thefts (*ECF No. 653, 654*).   The government espoused Kaiser's "shocking" new revelations to the Court (*ECF No. 628*) about Jowdy's frauds on October 11, 2019.   Kenner hi-lighted to the court the same day that Kenner proffered about the $20 million-plus of Jowdy racketeering, embezzlements and intimidation (prior to the Kenner Mexico jailhouse beating) on June 24, 2019 to the same FBI agent; but somehow now it is true because Jowdy's 2012-2017 co-conspirator, John Kaiser, now says it?  Why has the court never heard from agent Galioto in over ten years?   He is the *only* thread that runs from the shocking dismissal of the Jowdy 2009 Grand Jury and investigation thru until today's forfeiture enigma.

*The forfeiture ruse…*
The Cabo forfeiture ruse has now extended over four (4) years, and the investors (including Kenner) are no closer to resolution; simply being pushed further away by the government's refusal to admit there is no nexus between Kenner and ill-gotten gains used in the Kenner Baja Ventures 2006 equity acquisition (despite their misleading trial summations and attacks on Kenner's veracity; now proven 100% true, *supra*).

As a result, they have "moved the goalposts" again to include no more than the insignificant $350,000 funds (in the $73 million purchase), originating from the Hawai'i-Jowdy loans that were verified by **non-victim Michael Peca** to SDNY Grand Jury as a "group" decision to do it (*2011 SDNY Grand Jury – 3500-MP-5 at Tr.16-17*):
> *Q: When did you make that investment?*
>
> *A [Michael Peca]: It round the same time, 2004, 2005.  I want to say they were my very much – they were presented to me.  **On all of them, through all the times, I made the final decision**.   I may not have done as much due diligence as some may have done.   It's not like I had to say yes or forced.   I made the decision to say, yeah, I want to do that.  **Based on the money I was making at the time it didn't bother me to invest those kinds of dollars**.*

Michael Peca continued (*2011 SDNY Grand Jury – 3500-MP-5 at Tr.30-32*):

10

*Q: How much did you put into Little Isle 4?*

*A [Mike Peca]: "$100,000 cash investment that was going towards that. Then we had lines of credit. I had one out for $1.7 million that was going to be used at the time. Here's where a lot of the cross starts to happen.  **A short-term loan to Mr. Jowdy, because at the time Cabo – we hadn't gotten the lending from Lehman Brothers yet.  We** made a short-term loan until the lending came in.  Once the lending came through they were to pay back the loan, I think in the neighborhood of five-and-a-half million dollars, on the closing.  It was never paid back.  And then communication basically seized at that point from him [Jowdy].  **That was kind of the whole sticking point as far as <u>me and the other guys</u> with Mr. Jowdy.***

*The 1.7 along with the $100,000 and **whatever else put in this a capital account**, Little Isle 4, I believe.  **The Capital account was loaned to Ken Jowdy**, our business partner, so there is no need <u>at the time</u> to be worried about anything.  **The money was loaned to Ken Jowdy to basically help some of the purchase of the Cabo property so we can get the funding**. <u>And then it was supposed to [be] a short-term loan</u>."*

*Q: Were you consulted in advance about whether to use the money in the Little Isle 4 capital account to loan money to the Mexico project?*

*A [Mike Peca]: <u>I knew the short-term loan was made to Mr. Jowdy</u>.*

*Q: **Did you know in advance of it being made**?*

*A [Mike Peca]: <u>I probably did, I mean at the time if I was told about it, I probably would say, okay, sounds good.  It was probably explained to me</u>.  I can't tell you definitely right now that I know the day or time of the conversation.   As it was happening I wasn't like what happened to that, I did not know it would happen.  I kind of knew what we were doing.*

*Q: Let me paraphrase, you are not sure if you were told but you basically approved of it.   You wouldn't really have cared sounds like you're saying?*

*A [Mike Peca]: **Correct**.*

11

The Court even recognized that Peca *withdrew* his Kenner-adverse "concealment" testimony (*Tr.436*), rendering himself a non-victim of the alleged "unknown" Jowdy loan fraud.  The court stated (*ECF No. 501 at 9*):

> "*However, he [Michael Peca] admitted that he had testified before the grand jury that he was aware of a short-term loan made to Jowdy using Little Isle IV's capital account.*" (*Tr.499*).

Michael Peca confirmed to the 2015 trial court that his answers to the SDNY Grand Jury were truthful (*Tr.498*).

**John Kaiser** testified during the 2009 *Nolan v. Kenner* Arizona arbitration that he *did not hold Kenner responsible* for the Jowdy non-payments, either (*Nolan arbitration Day 5, Tr.928-929*):

> *Q: Has this ever been a secret that Mr. Kenner lent this money to Mr. Jowdy?*
>
> **A [Kaiser]: No.**
>
> *Q: Was this a transaction that, as your view as an investor was open and disclosed to everyone?*
>
> **A [Kaiser]:** *It was open.*   **There was no secret handshakes or nothing like that**.
>
> *Q: Even now, sitting here in May 2009, is there anything you've uncovered, as someone who obviously knows how to investigate, that Mr. Kenner has done anything inappropriate throughout these transactions?*
>
> **A [Kaiser]: No.**
>
> *Q: Not one complaint?*
>
> **A [Kaiser]: No.**
>
> *Q.   At the time this money was lent to Mr. Jowdy to be spent in the Mexican project, did anybody anticipate he wasn't going to pay you back when the Cabo deal closed, the Lehman's Cabo deal?*
>
> **A [Kaiser]:** *No.*  **Otherwise I wouldn't have lent it**.  *I wouldn't want to go down that route.*

12

> *Q. <u>Do you blame Mr. Kenner for him [Jowdy] not paying the money back</u>?*
>
> *A [Kaiser]: <u>No</u>.*

**Darryl Sydor** confirmed the Jowdy loan from the Hawai'i partners -- and his underlying knowledge -- without hesitation to the 2011 SDNY Grand Jury (*See Sydor SDNY Grand Jury Tr.25-26*): [4]

> *Q: Was that [the LOC at Northern Trust Bank] also for Little Isle 4 as far as you know?*
>
> *A [Sydor]: Yes, but then we put it towards a short-term loan to Mr. Jowdy until Lehman Brothers came up with the money that was supposed to be paid back."*
>
> *Q: Did you know in advance that it was going to be used, this Little Isle 4 money, to be used to salvage the Cabo investment?*
>
> *A [Sydor]: <u>Yes. It was to help with the short-term loan to keep funding the Cabo, but then its supposed to be paid back, but that's</u> –*
>
> *Q: Paid back to you or to Little Isle 4?*
>
> *A [Sydor]: Paid back to Little Isle 4.*
>
> *Q: So –*
>
> *A [Sydor]: <u>Back to Hawai'i, not me personally</u>.*
>
> *Q: Bu that didn't happen?*
>
> *A [Sydor]: That didn't happen. And Lehman came up with the $129 million loan. It was supposed to be back at closing.*

- Sydor even confirmed that his LOC funds were known by him to *belong* to the <u>Little Isle 4 capital account</u> (*supra*) – *and no longer belonging to him* – further explaining his distinctive understanding of his pledged LOC – *four (4) years closer to the actual events (pre-CTE or undue influence)*.

---

[4] Michael Peca and Tuner Stevenson corroborated Sydor's 2011 SDNY Grand Jury testimony -- the same day in front of FBI agent Galioto.

13

- Sydor confirmed to the 2015 trial court that his answers were truthful to the SDNY Grand Jury (*Tr.2300*).

**Turner Stevenson** (a **non-victim** in the 2015 superseding indictment) testified to the 2011 SDNY Grand Jury *with FBI agent Galioto present* (*at SDNY Tr.17-18*):

> *Q: When you put up $100,000 for Hawai'i, did you have any understanding of whether the money could be used to pay for the Mexico project or was it just supposed to go to the Hawai'i project?*
>
> *A [Stevenson]: In the beginning it was supposed to go to Hawai'i. Then I saw they needed, <u>the group of us got together</u> [emphasis added], we have this piece of land that's available for purchase in Mexico that we need to wait on or get funds on to transfer as a group like one big blanket to get money into Cabo and pay for that land to hold it until the loan came.*
>
> *Q: So are you saying that you agreed to transfer some of the money from the Hawai'i project to the Cabo project?*
>
> *A [Stevenson]: I would say that, <u>yes</u>.*
>
> *Q: Who made that decision?*
>
> *A [Stevenson]: <u>I think all of us as a group</u>.*
>
> *Q: What do you mean as a "group", who is the group?*
>
> *A [Stevenson]: <u>All the guys who were invested in it</u>.*

**Bryan Berard**, the second investor turncoat (working hand-in-hand with Kaiser to protect Jowdy as part of the Jowdy cabal from 2011-2017 for pay), had already confirmed his knowledge and expectations for the Jowdy loans in 2009 (before the synchronized **CTE** effected his recollection of facts and circumstances he had previously verified without equivocation six [6] years closer to the actual events):

Berard's 2009 arbitration testimony affirmed – *Nolan arbitration Day 5 at 916-918*]:
> *Q: When you were – as far as the Hawai'i deal, were you made aware of any sort of transaction Mr. Kenner set up where you can give a commitment or pledge a credit line in lieu of putting all your money in initially?*

14

*A [Berard]: Yes.*

*Q: Can you tell the panel what was your understanding?*

*A [Berard]: Basically the company – it was set up.  <u>**The company would pay the payments**</u>.  I would <u>**pledge**</u> the money, obviously to get a loan for the property.  <u>**Again, the company would pay the payments**, and I was not forfeiting all the amount of money for the piece of property.</u>*

*Q: Were you aware that Mr. Kenner got a credit line against some securities or investments you had?*

*A [Berard]: Yes.*

*Q: And later on were you aware that Mr. Kenner started lending this money to another principal in the Cabo project named Ken Jowdy?*

*A [Berard]: Yes.*

*Q: Where did you think the money that Mr. Jowdy – were you told where the money was going to be used that was given Mr. Jowdy as far as the Mexican project?  Was there anything you were told about that?*

*A [Berard]: Basically just loan him the money for the project.*

*Q: What about bank statements; <u>did you have any problem getting any of your bank statements from Mr. Kenner</u> at any time?*

*A [Berard]: Not at all.*

*Q: And prior to signing any of these documents did you have access to your own attorney unconnected to Mr. Kenner to review this?*

*A [Berard]: Yes I did.  We have a family attorney back home where before I sign any documents basically – I went to his office, sat with him.  We reviewed them, and I signed them and basically FedEx'd them to Phil [Kenner].*

15

*Diamante Cabo homeowners representative weighs in to "trace the money"...*
Although Mr. Wolinsky's October 11, 2019 anger may have been misdirected towards the Court, it was obvious he is flustered and feels "*snuckered*"[5] by the government as a legitimate Cabo home purchaser for value; commensurate with Kenner and the Kenner investors equity positions.   He asked the Court to do one thing; "*trace the money*".  Kenner is not sure what Wolinsky's expectations are from his request, but it is clear from the government's own forensic analysis that there will only be one conclusion.

**ANSWER**:  (1) 100% of the Kenner – Baja Ventures 2006 capital account equity is "clean" and "untainted funds", failing the disgorgement expectancies to "separate a criminal from his ill-gotten gains"; and

(2) Only $350,000 of the loans every Hawai'i partner acknowledged before trial (minus Nolan, *supra*) was utilized by Jowdy as part of his personal loan (*3500-KJ-2 at 24-25*).  Jowdy's banking records in the government's possession conclude without room for interpretation that Jowdy used the remainder of the funds for "whatever he deemed in Ken Jowdy's best interest that day"; regardless of Kenner and Kenner investors' expectations that it would be used to assist in the acquisition of the Cabo project as (1) Peca, Sydor and Stevenson told the 2011 Grand Jury, (2) Kaiser and Berard told the 2009 arbitration panel, and (3) 19 Hawai'i partners sued Jowdy to recover "the loans" and more...in Arizona (2008-09), in California (2009-

---

[5] The slander-laden press release (promoted by the NY Daily News as a friend to Jowdy's cabal) included a press-release portion of the 2017 Jowdy settlement terms and conditions with the investors.  It left another scar on those related to the DCSL project, as evidenced by Diamante Doce Managing Member, Attorney Marc Wolinsky's open Court proffer on May 14, 2019 that:

> [Wolinsky]: "*...if you Google the property like I did before I purchased, I would have seen that Mr. Kenner originally filed a lawsuit against Mr. Jowdy accusing him of fraud – that lawsuit was dismissed.  The government indicted Mr. Kenner, and **Mr. Kenner turned out to have snuckered the hockey players into wrongly suing Mr. Jowdy**.*"

- This is clearly *not correct* based on Jowdy's-own well-hidden confessions to the same FBI agent who hides in the EDNY courtroom at every hearing (*3500-KJ-2 at 12-14*) -- from the investors and the public at-large – and the government's post-trial evidence they continue to run from (*government-forfeiture-36* and *government-forfeiture-44*), except when they need to berate the Court about a nexus that does not exist (simply to cover their-own malfeasance of over a decade at this point in time) (*ECF No. 667*).

**It is clear and confessed that...Jowdy "*snuckered*" everyone!!**

16

10), in Nevada (2007-2010), and in Mexico (2007-2013), and Delaware (2014-2017).

- The Court should specifically note that the 2017 settlement agreement between Jowdy and the Jowdy investors concludes that they have received agreed-upon recompense and restitution for "anything related to Jowdy under the sun, known or unknown".

- This clearly includes anything Jowdy received as part of the well-documented 2004 Hawai'i-Jowdy loans.

*The final misdirection (left un-revealed to the investors and confusion on the court)...*
It is obvious that thru the July 18, 2016 PSR addendum, Jowdy was considered a victim by the government, in order to blame Kenner for Jowdy's documented thefts (*government-forfeiture-44*). The FBI agent thru 2017 had convinced the former Kenner investors that Kenner was guilty "of stealing their money to buy his Cabo project equity" and "Jowdy had been fully investigated"; so future allegiance to Jowdy was the way to get their money back. As a result of the Galioto urging, the investors settled with Jowdy in 2017 (solely thru Jowdy's perceived generosity), **absolving all Hawai'i and Mexico transactions that involved Jowdy** – <u>with fully agreed upon compensation for every Kenner investor</u>.

In verification and contemporaneously, former Kenner investors' attorney, Steve Main, emailed his clients and confirmed on February 20, 2017 (as he was told by the FBI agent, Kaiser and Berard at the time):

> "*Finally for those of you who are convinced that Jowdy is guilty of some crime… I simply note that the circumstances surrounding the Diamante del Mar project and the Cabo project and the relationship between Kenner and Jowdy <u>has been exhaustively investigated over several years by the FBI, SEC and the U.S. Attorney of the EDNY.</u>*"

- Independent attorney Steve Main could *not* have independently acquired this "secret" FBI and government investigation knowledge, without the "leak" from an insider (Galioto himself).

Thru the date of Kenner's sentencing (four-and-a-half years later), the FBI ruse has continued on the Kenner investors who still believe that Kenner "stole all of their money to buy his Cabo equity" (in contradiction to the government forensic accounting), as the reason for the Kenner guilt and conviction.[6]

---

[6] [On an 2012 FBI recording] – Kristen Peca tells Kenner:

17

- If the FBI told Kenner about criminal activity, it would behoove Kenner to disagree with the FBI and its perceived integrity, above reproach. So – why would the Kenner investors, specifically after FBI agent Galioto confirmed Jowdy was "clean" to their-own attorney?  *They would not and could not…*

Clearly, this is not the truth thru the government's-own forensic post-trial accounting.

*Kaiser changes allegiances again (once used-up by Jowdy)…*
Former Jowdy insider (2011-2017), and Hawai'i partners Managing Member-turncoat's (John Kaiser) *shocking* letter to the Court on February 28, 2019 (*ECF No. 628*) confirmed the years of Jowdy frauds and complicity with Jowdy's Lehman Brothers lender (Masood Bhatti) and Danske Bank (another Jowdy co-conspirator who the government and FBI have refused to interview and investigate for Jowdy's documented RICO acts, with 100% evidence in hand – *ECF No. 667 at 16-20*).

After – *and only after* – his firing, John Kaiser exposed the Galioto and the Jowdy hoax when he wrote (*ECF No. 628 at 1*):
> "*Jowdy would like the court to think that Kenner stole $7 million from the hockey players and others…*".

*Fully revisionary issues and perjury…*
The court now is 100% aware that Kaiser's pre-trial recorded statement in concert with *Government-forfeiture-36* and *government-forfeiture-44* prove it is not true…but connects the dots on all of the misdirection since Kenner's 2009 FBI proffer of the Jowdy criminal activity.[7]

---

> *Kristen Peca – Matt [Galioto] told Michael and I that you stole all of the Hawai'i money and never gave it – the loan money -- to…uhhhh…Jowdy.*
>
> *Kenner – Kristen – I have all of the bank records that prove the money went to Jowdy and his accounts at all times. I told you that already. You told me that you saw the bank records after I sent them to Michael. You know -- the attorneys who sued Jowdy for the money in Mexico and Arizona and California used them to confirm the loans before we sued?*
>
> *Kristen Peca – but – I don't understand why he would say it.*

[7] John Kaiser has been the Managing Member of Na'alehu Ventures 2006 (the Hawai'i partners) since 2007.  His trial recordings called Jowdy a "thief" before he took his job in 2012 (*Tr.1312-13*).   Kaiser's 2019 letter (*ECF No. 628*) now "re-verifies" Jowdy as a thief. Yet, with the new knowledge of the Jowdy criminal activity and armed with *government-*

18

Perhaps, John Kaiser had a hand in the "*snuckering*"?

Submitted respectfully,

Phil Kenner

---

*forfeiture-44*, Kaiser has not lifted a hand to pursue Jowdy for his Hawai'i partners and recover the loan that now exceeds $33 million.

Before accepting his job in Mexico from Jowdy, he confessed to his previous knowledge of Jowdy robbing Kenner and Kenner investors. Kaiser told Constantine on the recording played in open court that Jowdy stole from everyone:

> *"I, I really know that because I met him 10 years ago from how things played out. I really, he is, he's a guy who had fucking nothing. He showed that he was some fucking billionaire that he was, that he was, he was -- the fucking guy, he was a busboy."*

Kaiser denied it emphatically (*Tr.1229-30*) until he was forced to listen to the recording during trial (while he was employed by his co-conspirator, Jowdy, in 2015).

After Kaiser listened to the recording of his voice calling Jowdy a thief, and authenticating it, the following Kaiser confessions of perjury ensued in the courtroom:

> *Q. So would you agree with me that when you testified earlier that you didn't use the words or -- withdraw that. Did you not use the words Mr. Jowdy is a thief? This refreshes your recollection and in fact you did use those words; is that correct?*
>
> *A [John Kaiser]: Yes.*
>
> *Q. So correct me if I'm wrong, would it be your testimony that the only reason you thought Mr. Jowdy had stolen or misappropriated the money was because Mr. Kenner told you so; is that correct?*
>
> *A [John Kaiser]: No.*
>
> *Q. Do you remember testifying earlier this morning and responding yes to that question?*
>
> *A [John Kaiser]: No.*
>
> *Attorney Larusso: We'll let the record stand, okay, Mr. Kaiser?*

19