

U.S. Department of Justice

United States Attorney
*Eastern District of New York*

SK/JMH
F. #2013R00948

*610 Federal Plaza*
*Central Islip, New York 11722*

October 17, 2019

<u>By Hand and ECF</u>

The Honorable Joseph F. Bianco
United States Circuit Judge
for the Court of Appeals, Second Circuit
100 Federal Plaza
Central Islip, New York 11722

      Re:   <u>United States v. Philip A. Kenner and Tommy C. Constantine</u>
             <u>Criminal Docket No. 13-607 (JFB)</u>

Dear Judge Bianco:

      The government respectfully submits this memorandum at the Court's direction and in further opposition to defendant Kenner's Rule 29 motion for a judgment of acquittal on the basis of venue. The government renews its contention that any venue challenge has been waived. The government nevertheless provides the information below in response to the Court's instruction to cite trial transcripts and exhibits establishing venue in this district for the counts of conviction.

      The government must prove, by a preponderance of the evidence, that the crimes were committed in the district in which the prosecution is brought. <u>See</u> <u>United States v. Lange</u>, 834 F.3d 58, 68-69 (2d Cir. 2016). For continuing offenses—including the offenses of conviction in this case—Congress has expressly provided that venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. For the offense of wire fraud conspiracy, venue lies wherever "an overt act in furtherance of the conspiracy was committed." <u>United States v. Tzolov</u>, 642 F.3d 314, 320 (2d Cir. 2011) (internal quotation marks omitted). For both wire fraud conspiracy and wire fraud, venue lies wherever "a wire in furtherance of a scheme begins its course, continues or ends." <u>United States v. Rutigliano</u>, 790 F.3d 389, 397 (2d Cir. 2015). For money laundering conspiracy, venue lies wherever "an act in furtherance of the . . . conspiracy took place" or "the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i). In challenging the sufficiency of the government's venue evidence, the defendant "bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government." <u>United States v. Kozeny</u>, 667 F.3d 122, 139 (2d Cir. 2011).

The government presented more than sufficient evidence for a reasonable jury to have found venue in this district by a preponderance of the evidence. For example:

Kenner obtained investments for the Hawaii project from individuals on Long Island. Specifically, in 2001, at a time when Kenner was already serving as Michael Peca's financial advisor, Peca "signed a five year contract . . . with the New York Islanders," prompting Kenner to approach Peca about "diversifying" his investments and transitioning from a "fairly conservative" portfolio of stocks and bonds to "not just having everything in the stock market, but now, you know, branch out [] into other options, whether it be real estate or other sorts of companies." Trial Tr. 378. In the 2002-2003 timeframe, Kenner and Peca were both on Long Island and communicated through phone calls, emails, and in-person meetings. Trial Tr. 375, 377. During their communications, Kenner spoke with Peca about investing in the Hawaii project, and Peca invested $100,000 into the project. Trial Tr. 379-80, 382 (Peca sent wire transfer when he was living in Huntington Bay). Kenner also solicited investments for the Hawaii project from Ethel Kaiser, John Kaiser, and others on Long Island. See Trial Tr. 932-33, GX-2109 at 2 (E. Kaiser sent Kenner money for Hawaii project); Trial Tr. 975 (Kenner asked Kaiser for $1,000,000 loan for Hawaii project while Kaiser was at home on Long Island).

Kenner also relied on people who traveled back and forth to Hawaii from Long Island and who worked remotely from Long Island to assist with the Hawaii project. See Trial Tr. 959 (Kaiser testifying that he and Manfredi worked on due diligence for Hawaii project while living in Smithtown and Stony Brook, respectively; both flew back and forth to Hawaii from Long Island); Trial Tr. 2910, 2913, 2919 (Manfredi testifying that he worked on Hawaii project remotely from New York, where he still had a business on Long Island, and "was more or less commuting back and forth").

Kenner and Constantine then diverted money intended for the Hawaii project to personal uses on Long Island and further laundered that money. Kenner diverted money from two investors' Hawaii lines of credit to purchase property on Long Island and then sent proceeds from the fraud to Constantine and himself. See GX-CHART-8; GX-CHART-9; GX-2001 (Peca line of credit transaction history); GX-2134 (Berard line of credit transaction history); GX-1401 (incoming and outgoing wires). The money for the property went to Long Island, and the property, the real estate attorney facilitating the purchase of the property, some of the individuals participating in the purchase of the property, and some of the communications related to the property all were in the Eastern District of New York. See Trial Tr. 634-35 & GX-701C at 2 (real estate attorney retained by Kenner had office in Garden City); Trial Tr. 637-38 & GX-1401 at 2 ($769,000 for closing wired by Kenner to Garden City real estate attorney escrow account); Trial Tr. 642-43, GX-702, GX-703 (documents for closing faxed by Kenner to Garden City real estate attorney); Trial Tr. 4109 & GX-701C at 4 (participants in transaction included North Point Properties based in Setauket, which included Manfredi, Tesoriero, Milano, and Kaiser); GX-941 (map of property in Sag Harbor).

Constantine routed money stolen from the Hawaii project to an auto shop on Long Island to customize a race car. See GX-1733 at 3 ($17,500 wired by Constantine to Unique Auto Sports' account at North Fork Bank); Trial Tr. 2696 (Nissan 350Z race car sent to Unique Auto Sports' shop in Holbrook). The auto shop made certain improvements to the car's "wheels, tires, some graphics on the vehicle, cherry work and an audio system," in its facility on Long Island, and also created a television program depicting the work being done on Long Island, promoting the car, and featuring Constantine. Trial Tr. 2694-97; see GX-504T (transcript of program excerpts).

Kenner and Constantine also obtained investments for Eufora from individuals on Long Island. Specifically, Kenner and Constantine spoke with Kaiser and his mother. See Trial Tr. 935-36, 948, 950 (E. Kaiser talked to Constantine while at home and invested $70,000 in Eufora from Roslyn bank account); Trial Tr. 1056-60 (Kaiser and his friends talked to Constantine and invested money in Eufora). Kenner and Constantine also spoke with Nicholas Privitello, over the phone and by email. See Trial Tr. 1483, 1486-87 (Kenner phone call); Trial Tr. 1537 (Constantine phone call); GX-208.1-208.11 (Constantine emails); Trial Tr. 1479-80 (Eufora shareholders call with Constantine and others, including Privitello); Trial Tr. 1477 & GX-503 (recorded phone call between Constantine and Privitello while Privitello was in his yard at home); Trial Tr. 1426 (Privitello lived on Long Island his whole life). Privitello sent the money for his investment from banks on Long Island. See Trial Tr. 1452-53 (Privitello exchanged emails and phone calls with Constantine from bank parking lot while physically "scrambl[ing]" around to two different banks on Long Island to send the money); GX-1101, GX-3301, GX-3302, GX-3305, GX-3306 (wire transfers).

Kenner and Constantine routed money stolen from Eufora through and to bank accounts on Long Island. See Trial Tr. 1045-51, GX-CHART-15 & GX-1603, GX-CHART-16 & GX-1604, GX-CHART-19 & GX-1727 (Kaiser accounts).

In addition, Kenner and Constantine diverted money intended for the Global Settlement Fund to Kenner's tequila company, whose bottles he shipped to Long Island. See Trial Tr. 1084 (Kenner sent sample tequila bottles to Kaiser's home on Long Island).

Finally, over the course of the scheme, Kenner and Constantine communicated with investors on Long Island on numerous occasions, in person and otherwise, to maintain their investor relationships and forge new ones. See, e.g., Trial Tr. 1013-14 & GX-942 (Kenner and Kaiser together at christening on Long Island in 2007); Trial Tr. 937, 1481 (Kenner met E. Kaiser and Privitello at birthday party at Kaiser's house on Long Island); Trial Tr. 979 (phone calls between Kenner and Kaiser); Trial Tr. 995 (text messages between Constantine and Kaiser); Trial Tr. 1080 (emails between Kenner and Kaiser); Trial Tr. 1130-33 (mailings between Kenner and Kaiser). Their co-conspirator, Timothy Gaarn, also met in person with one of the investors on Long Island. Trial Tr. 594 (Peca met Gaarn on Long Island in 2003).

3

      For the reasons set forth above and in the government's prior briefing, the Court should deny Kenner's venue challenge as both waived and meritless.

                                  Respectfully submitted,

                                  RICHARD P. DONOGHUE
                                United States Attorney

By:    /s/_____
       Saritha Komatireddy
       J. Matthew Haggans
       Assistant U.S. Attorneys
       (718) 254-7000

cc:     All counsel of record (via ECF)
       Philip A. Kenner, defendant pro se (via certified mail)