October 21, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

Your Honor:

Defendant Kenner submits this letter to the Court to issue requests to the government for production of documents (or subpoenas, if they continue their lack of cooperation) for the:

1. 2015 Diamante Cabo san Lucas appraisal (acknowledged 10-11-2019 in court);
2. 2017 Diamante Cabo san Lucas appraisal (acknowledged 10-11-2019 in court);
3. 2008-09 Ken Jowdy settlement agreements with Owen Nolan;
4. 2008-09 Ken Jowdy settlement agreements with Joe Juneau (*Tr.354*);
5. 2017 Ken Jowdy and Diamante parties settlement agreement with Kenner investors (represented by attorney Steve Main in the Delaware actions).

*There are guideline loss factors and forfeiture issues still open before this Court…*
- The recovery of the subpoenaed items will illuminate those issues.

In *Rutkoske*[1], the Second Circuit opined that as a result of the complexities in *United States v. Ebbers*, 458 F.3d 110 (2d Cir 2006) – "'[t]he loss must be the result of the fraud." *Id*. at 128.  "[l]osses from causes other than the fraud must be excluded from the loss calculation." *Id*.
- As Hawai'i partners' investor Michael Peca confirmed to the 2015 trial court, after his memory was refreshed on cross-examination (*Tr.498-99*), <u>he was at all times aware of the Jowdy loans</u> that were authorized as a "*group*"; in addition to the Little Isle 4 corporate documents (*Kenner trial exhibit 25*) confirming their permitted activity for the corporation (*Tr.4286-88*).   Peca's own confessions eliminate his victim status, at a minimum from the Jowdy loan transactions.

Under *United States v. Prange*, 771 F.3d at 35 (1st Cir 2014), the court opined, ("[I]f the shares received carry any fair market value, the district court should have reduced its loss calculation by that amount").   This is echoed by the Court in *United*

---

[1] *United States v. Rutkoske*, 506 F.3d 170 (2d Cir 2007)

1

*States v. Bryson*, 101 F. Supp. 3d 147; U.S. Dist. LEXIS 42557, relying on *Ebbers*, *Rutkoske*, *United States v. Leonard*, 529 F.3d 83 (2d Cir 2011), and the tenth circuit's decision in *United States v. Evans*, 744 F.3d 1192 (10th Cir 2014) (hi-lighted in Kenner's September 30, 2019 letter to the Court).

- The resulting Jowdy loans, as documented and verified by forensic accounting (*ECF No. 736-3, 736-4, 736-5*), confirm the remaining value of the underlying loan to the Hawai'i partners. The government admitted the loan verification to the court during the March 9, 2016 forfeiture hearings (*Tr.66-67*) (*government-forfeiture-44*) – despite its massive conflict with their trial allegations (*Tr. 5996, 5711, 5722-23, 5744-45, 5990, 5991-92, 5707-5709*). Thus, the Hawai'i partners have a tangible asset. This fact is regardless of the government's trial inferences that Kenner lied about the loan at trial (*Tr.4597*) as a cover-up (*Tr.27-33*), and despite John Kaiser having the actual loan agreement in his possession for over 10 years before trial (*Tr.1127*), while confirming it to the FBI on October 19, 2010 multiple times (*3500-JK-1-r at 2, 3, 10*), ironically in his same office as the document was in his custody.[2]
    - This "new evidentiary" disclosure (in 2016 – post-trial) was the first instance the government could no longer maintain their faulty trial theory and affirmative proffers to the jury that "*Kenner stole all of the Hawai'i money to buy his Cabo san Lucas equity*", *supra*. But – the prejudicial damage was already done.

*Requests for the 2008-09 Jowdy settlement agreements with Nolan and Juneau…*
In 2008-09, Owen Nolan and Joe Juneau (*Tr.354*) reached settlement agreements with Ken Jowdy for all potential harm by Jowdy, *personally*, &/or thru his controlled entities including but not limited to <u>Diamante del Mar</u> and <u>Diamante Cabo san Lucas</u>. The same California counsel represented Nolan and Juneau at the time. As a result, including funds that may have originated from the Hawai'i partners capital account

---

[2] The court should note that Kaiser's possession of the Jowdy loan agreement (for 10 years) (*Tr.1127*) – *alleged as another cover-up or some sort* -- eerily echoes Kaiser's personal custody of the "*ink*" versions of the 2004 and 2005 Constantine consulting agreements recovered from <u>his</u> home, while maintaining that although he possessed them for over 10 years…**someone forged his name** (*ECF No. 668 Appendix at 24*).

- In fact – the court should note that the government was "slick" by <u>never</u> introducing the "*ink*" versions they recovered on the "*eve of trial*" from Kaiser himself (*GX-7004* and *GX-7005*) (for fear of embarrassment of disclosing the custodial source of the ruse), and resorted to premeditated "tom foolery" by <u>only admitting</u> the photocopy versions (*GX-5104*) recovered from Kenner's home-office (exactly where the photocopies would be expected to be retained) (*Tr.990*).

2

thru their contributions, they cannot be deemed a victim (with full compensation acquired thru independent negotiations with the person the government now, post-trial, confirms "actually stole" the investors funds: Ken Jowdy)[3].   Kenner was alleged to have concealed the corporate authorized transactions from the investors *years after* their initial Hawai'i investments.

*Requests for the 2015 and 2017 Diamante Cabo san Lucas appraisals…*
These appraisals will confirm the agreed upon settlement value for the Delaware case plaintiffs versus Jowdy; required since the settlement is with a third party for culpability and not a fraud factor related to Kenner's alleged "concealment".[4]

Since the October 11, 2019 hearing, the U.S. Attorneys office refused Kenner's request to share the 2015 and 2017 Diamante Cabo san Lucas appraisals under seal and stipulation (thru request of Kenner's stand-by counsel); yet Kenner has attached the 2008 Diamante Cabo san Lucas appraisal for $450,000,000 (*per Ex. 1*) for the court's convenience (further confirming the Kenner 2009 proffer that Jowdy was dissipating all value in the underlying investment thru budget-driven thefts). Ironically, the government, in concurrence with Kenner's 2009 FBI proffer statements, represented this same "criminal" aspect of Jowdy's management when they verified the only appreciable difference in the $200 million value depreciation between the 2015 and 2017 appraisals were the increases by Jowdy's operations budget to pay his friends & family.   This *also* echoed former Jowdy co-conspirator, John Kaiser's February 2019 "shocking" letter to this court of Jowdy's ongoing criminal activity (as known for years before Jowdy fired him), again identical to Kenner's FBI proffer on June 24, 2009 – *over 10 years earlier* (*ECF No. 628*).

*Intrinsic value of the Nolan and Juneau settlements…*
The Lehman Brothers loan at the time of their September 2008 bankruptcy was no more than $125,000,000 (*per Ex. 2*).[5]   Thus, the accountable value in 2008 of Nolan

---

[3] May 14, 2019 forfeiture hearing (with Magistrate Shields) *at Tr.37*.

[4] The court should note that the government confirmed to the jury with Kenner on cross-examination that he was under indictment, because they alleged Kenner stole the money from his investors (*Tr.4588*); nevertheless untrue per their post trial *government-forfeiture-44* and *government-forfeiture-36* submissions in forfeiture, leaving another reformative issue of prejudice unresolved; certainly effecting the guideline loss factor presently.

[5] *Ex. 2* is the initial summary of the 2008-09 Cabo loan re-acquisition as represented by Jowdy and Lehman Brothers' lender, Masood Bhatti (see Kaiser's *ECF No. 628* submission for ongoing Jowdy frauds with Bhatti) to Danske Bank.  The submission falsely confirmed that Jowdy is the sole capital account at Diamante Cabo san Lucas -- **with $8.4 million**

3

and Juneau's respective 1% Diamante Cabo san Lucas agreement with Jowdy was no less than $3,250,000, apiece. Their financial destiny has been tied to Jowdy and his future actions from that point forward, binding Juneau and Nolan by admission and estoppel. In addition, Juneau had already been bought out of all investments related to the instant case since 2007. Thus, Juneau achieved a potential windfall thru his agreement with Jowdy.

On the other hand, Nolan's agreement effectively made him and Jowdy "alter-egos" of one another from that point forward related to all elements of their mutual settlement agreement. As such, any and all funds that Nolan invested in the Hawai'i partners, which were subsequently transferred as part and parcel to the 2004-06 Jowdy loans have been repaid and re-compensated (per their independent agreement). Now, the funds that originated (thru reverse forensic accounting) to Nolan as a source to the Hawai'i partners capital account loans to Jowdy, belong to Jowdy as if they were his in the first instance.

*Forfeiture and guideline problems for the government...*
The government faces an insurmountable challenge as a result of the Nolan-Jowdy settlement to allege nexus or loss based on Nolan's Hawai'i funds. The loans were at all times authorized transactions of the Little Isle 4 partners by corporate doctrine (*supra*), and Nolan independently signed the authorized release of his funds from his LOC account at Northern Trust Bank to the Little Isle 4 capital account for all authorized activities (*Ex. 3*). Nolan verified his signature on the 2004 *Letter of Authorization* document during his 2009 arbitration 6-years before trial (re-verified by his-own attorney in 2009, *Day 5 at 1049, ECF No. 736-1 at 53*).

*The government's nexus failure...*
The government's only tracing (per *government-forfeiture-36*) of funds from the Hawai'i partners thru the Jowdy loans to the Diamante Cabo capital accounts is the initial $350,000 Jowdy requested on May 5, 2005, pursuant to the loan agreement. No other funds from the personal loan to Jowdy (*3500-KJ-2 at 24-25*) arrive in the Cabo project capital account funds; specifically according to the government's-own post-trial forensic accounting.
- They cannot argue against their-own findings as a matter of inconvenience now.

---

**contributed** (*Ex. 2 at 2*); and no other capital accounts. BUT (as the court and government know) -- Jowdy had ZERO contributions at that time and simply conflated 100% of the Kenner and Kenner investors' investment deposits as his own. It was also known at all times to Danske Bank, Jowdy and Bhatti, but the criminal activity has been left unchallenged by the knowing FBI case agent, even after Kenner's June 2009 proffer about these items and more (*ECF No. 667 at 16-17*).

The 2008-09 agreements between Jowdy and Nolan effectively changes the status of the funds Jowdy stole (and others)[6] from Nolan for the use of those same funds, as his alter-ego.  Thus, the Jowdy-Nolan deal disqualifies any liability for the Nolan funds related to loss factor for the same.   Jowdy originally received $425,000 of the Nolan funds in May 2005 thru the Little Isle 4 capital account "*group*" loans to Jowdy, as Michael Peca (*ECF No. 668 Appendix at 109-110, 112-113*), Darryl Sydor (*ECF No. 668 Appendix at 138-39*), and Turner Stevenson (*ECF No. 668 Appendix at 138*) told the 2011 SDNY Grand Jury the "group" expected – and Michael Peca re-confirmed it to the 2015 EDNY trial court – *Tr.498-99*).   $350,000 of the $425,000 were traced thru *government-forfeiture-36* to the Jowdy capital account in Mexico; *but none to Kenner's Baja Ventures 2006*.   O'er, as a result of the 2008-09 Nolan agreements, Nolan "traded" his "rights" to all of his originating funds, which Jowdy "received" or "obtained" for the $3,000,000-plus equity in the Jowdy-controlled resort (identical to Juneau's agreement).  No further loss factor can be attributed.  Nolan received full-agreed-upon compensation.   The subpoena will confirm the values for the court.

*2017 Kenner investors' settlement agreement with Jowdy…*
As a result of the 2014 Delaware lawsuit versus Jowdy by the Kenner investors, post Kenner arrest in 2013, Jowdy again settled for all potential illicit activities, *known or unknown*, between himself, *personally*, &/or his actions as the controlling member at all times of *Diamante del Mar*, *Diamante Cabo san Lucas* (and a myriad of other

---

[6] Jowdy received Nolan's Cabo san Lucas $100,000 equity deposit in August 2006, months after the DCSL closing (as a result of Nolan's cash flow problems at the time).  *Ex. 4* confirms that Jowdy also stole those Nolan funds thru his Baja Development Corp (personal money laundering LLC) by *never* depositing them into the Cabo san Lucas operating accounts, as required.   As a result -- Jowdy needed to settle with Nolan for those "unknown" funds, as well.   It should be noted, Jowdy actually used some of the Nolan DCSL funds to "pay off" Roger Clemens' whistleblower, Brian McNamee, so he would conveniently forget what he had already told Senator Mitchell's investigation team in the Major League Baseball ("MLB") steroid investigation of Clemens, in addition to the same disclosures to the head investigators from MLB.   McNamee conveniently "misremembered" everything when on the witness stand as the government's main witness in the Clemens federal perjury trial.

The court should note that Jowdy's attorney, Tom Harvey, was representing whistleblower McNamee at the time of the payoffs, according to Harvey's quoted activity in NY Daily News writer (Michael O'Keefe)'s 2008 blockbuster novel, "American Icon" (about Clemens' steroid use); at the same time the anti-Kenner-NY Daily News slander stories began – thru an FBI leak -- about "*Kenner stealing investors funds to buy his piece of the Cabo san Lucas project*" (the origination of the government's trial lies of the same -- *Tr. 5996, 5711, 5722-23, 5744-45, 5990, 5991-92, 5707-5709*).

Jowdy-controlled entities used for his 2-decades of embezzlements and money laundering [*ECF No. 667*]).

Each 2017 investor who settled with Jowdy has received fully agreed upon compensation for funds they personally distributed to Jowdy for equity or loans, or indirectly distributed to Jowdy thru the corporate authorized Hawai'i partners 2004-06 loans.

<u>*All*</u> of the signatories to the 2017 settlement agreements, who were alleged victims in the Kenner superseding indictment, have "under oath" statements, pre-trial, that they were aware, at all times, of the Hawai'i partners loans to Jowdy.   Nevertheless, Jowdy (for his self-perceived liabilities and personal preservation) chose to formulate a settlement agreement for his liabilities (known or unknown) and any potential malfeasances that have or have not been previously exposed by Kenner to the FBI in 2009 or subsequently thru evidence the government turned over to Kenner in pre-trial (*ECF No. 667*).   The government's-own evidence confirmed Jowdy's embezzlements in every corporate activity Kenner and Kenner investors were associated with him thru his own personal and corporate banking records; thus it is irrefutable.

*Subpoenas…*
The acquisition of the aforementioned documents (page 1), all under seal and stipulation will provide the court with the necessary evidentiary means to confirm under precedent of case law that all proper re-compensations have been granted to the Kenner investors in the superseding indictment (by a government-verified responsible third party).   And – proper offsets will be attributed to the Kenner guideline loss factors and government-sought forfeiture items.

According to *Evans* (and the Justice Gorsuch appellate decisions), "[W]ithout a loss, there can be no victims"); *Id*. at 1107.  See *United States v. Evans*, 744 F.3d 1192; 2014 U.S. App. LEXIS 4490 (10th Cir 2014) (*referencing Turk, 2nd Cir*) (*Evans I*)…and *2nd appeal for improper calculation (again) -- United States v. Evans*, 677 Fed. Appx. 469; 2017 U.S. App. LEXIS 1942 (10th Cir 2017) (*Evans II*).[7]

---

[7] After 2 appeals, *Evans* was released "time served" due to repeated miscalculation of loss, because the Court determined there was no fraud in the inducement of the investments (identical to the Kenner Hawai'i partners), and the district courts should have inquired into what loss, if any, the investors would have suffered if defendant had "come clean" regarding the status of the investments.

6

*Tracing the proceeds to the planned forfeiture...*

Ultimately, the government bears the burden of proving by a preponderance of the evidence that the property to be forfeited "constitutes or is derived from proceeds traceable" to the offense, regardless of whether "proceeds" is defined under §981(a)(2)(A) of (B). 18 U.S.C. §981(a)(1)(C); see also *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir 2011).


Respectfully submitted, October 21, 2019,


Phil Kenner

---

In Evans, the Court opined that the district courts should have considered the effect and foreseeability of <u>*non-fraud factors*</u> in determining loss in an <u>*equity investment*</u>, where the shareholders/investors assume the risk of their corporate authorized investments and not the results of alleged concealment of the underlying activities after the non-fraud inducement to invest.

- This Court should note that all Hawai'i partners were investors prior to the initiation of the November 2004 Jowdy loans, except for Michael Peca, who joined in the middle of the Jowdy transactions (March 2005). The court has previously noted that Michael Peca confirmed he was aware of the Jowdy loans and approved them at all times with the "*group*" of Hawai'i partners; including the 4 of 26 Hawai'i partners who exhibited *faulty memory, confusion and mistakes* (or CTE-symptoms) during trial regarding their specific detailed recollections. **Three of the 4 Hawai'i partners previously signed-off and participated** in the 2008-09 Arizona lawsuits to recover the loans (they could not remember 8 years later) from Jowdy, and the 2009-2010 California lawsuits to recover the loans (they could not remember 6 years later) from Jowdy.

- Only Owen Nolan was absent in the repeated Plaintiff roles of Arizona and California versus Jowdy, because he had previously settled in 2008-09 for a 1% DCSL equity windfall at the time (like Juneau, who was no longer a Hawai'i partners member after his 2007 buy-out). They both consciously chose to tie their financial future to Ken Jowdy and his principal leadership in the Cabo san Lucas project for all previous Hawai'i and Mexico funding.
    - As a result, the court is aware that Nolan cannot be considered a financial victim after his full settlement (for loss factors), nor is Nolan permitted under the MVRA permitted to receive a virtual windfall from double collection of restitution. Nolan was represented by independent counsel, who settled with Jowdy, prior to their-own counsel's joint efforts side-by-side with Jowdy and Jowdy's attorneys versus all Kenner-led, Jowdy-adverse parties (now effecting Nolan and Juneau's settlement prospects).