

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO                                            *610 Federal Plaza*
                                                       *Central Islip, New York 11722*

October 30, 2019

Honorable Joseph F. Bianco
United States Circuit Judge
Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

             Re:    United States v. Kenner and Constantine
                    No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

   The government respectfully submits this letter pursuant to Your Honor's order dated October 23, 2019 and in response to letters filed by Danske Bank A/S, London Branch ("Danske") and Marc Wolinsky, a homeowner at the Diamante Cabo San Lucas resort ("DCSL" or "the resort") (Docket Entries ("DE") 754 and 755, respectively) objecting to the Preliminary Order of Forfeiture ("POF") filed by the government. DE 751. The government also responds the letter filed by DCSL dated October 29, 2019. DE 760.

   Short of the government walking away from the forfeiture of the resort, which forfeiture is mandatory under Fed. R. Crim. P. 32.2 if the Court finds that the government has established the requisite nexus between the resort and the defendants' crimes, it appears nothing will satisfy Danske, DCSL and the one homeowner that has submitted letters to the Court. The government has endeavored to meet, and in fact, has met, every request of the Court to lessen the hypothetical financial impact of the inclusion of the resort in the POF. At the October 11, 2019 status conference, Danske specifically requested that the original language proffered by the government to the third parties regarding an interlocutory sale be included in a revised POF and that the bank was "agreeable" to such language. See Official Transcript of Proceedings, October 11, 2019 ("TR"), at p. 38. Your Honor requested that the government submit a revised order that included such language. Id. at pp. 40-41. Against that backdrop, the current POF was filed and as shown by the recent filings, as the government correctly noted, the "bank constantly changes its mind." Id. at p. 34.

A.     **The letter dated October 18, 2019 from Danske**

   Danske's most recent submission raises three items: 1) that the interlocutory sale be limited to the equity interest in the property; 2) that the time period for the closing of the interlocutory sale be less than 18 months; and 3) that the exclusion, in general terms, of employees of Danske Bank from the "carve-out" of third party claims should be stricken from the POF.

1

The requests to limit the interlocutory sale to the equity interest or remove the resort from the POF completely have previously been raised and rejected by the Court. See, for e.g., TR at p. 52 (Mr. Souther: "—if the Court excluded from the preliminary order the notion that the resort would be sold…". The Court: "No, that's not happening…").

With regard to an 18-month period for the closing date of an interlocutory sale, the extended time inures to the benefit of Danske as Danske desires the forfeiture to be effectuated by way of an interlocutory sale rather than a direct forfeiture of the resort. Thus, the 18-month period provides more time to complete the forfeiture in Danske's preferred method. Inexplicably, after objecting to an 18-month period, the bank adopted that same time frame in its proposed revision. See DE 754. Further, the 18-month period is the outermost time limit to conclude a sale; the government nevertheless intends to complete a sale as expeditiously as possible, of course dependent upon Danske's and DCSL's anticipated cooperation.

Finally, to address the Court's concerns about streamlining the process of third party claims, the government agreed to recognize the interests of thousands of third party time-share owners and homeowners and created a "carve-out" in the POF to exclude those individuals from the ancillary proceeding, i.e., they do not have to file a claim to establish their interest in the resort property. The government excluded from the carve-out individuals/entities who were central to the resort's operations and transactions. Danske, Lehman, and their respective employees, were central to the operations and transactions of the resort. The Court also recognized that "…Mr. Jowdy and his entities were direct beneficiaries of Mr. Kenner sending the money to them, right? I don't understand why I would ever exclude Mr. Jowdy and his entities from forfeiture?" Transcript of Proceedings, dated July 2, 2019 at pp. 20-21. Realistically, all the exclusion means is that the individuals or the entities excluded from the carve-out will be required as mandated by statute set forth more fully below, to prove that they are bona fide purchasers for value.

After Danske took issue with two of its employees being named in the exception to the carve-out, the bank provided the government with affidavits from the two employees disavowing any ownership interest in the resort or any of the entities. The government thereafter removed the two employees from the POF, which is precisely what the bank requested. TR at pp. 33; 37. The government revised the POF, as Danske and the Court requested, and again, Danske changed its position and demands--which at this stage occurs with increasing frequency.

**B.**     **The letter dated October 23, 2019 from Marc Wolinsky**

Mr. Wolinsky's letter seeks to: 1) incorporate into the POF a provision that a sale will only go forward based upon the amount of equity in the resort; and 2) require that the ultimate purchaser of the property honor contractual and "personal" commitments of the developer. DE 755. First, it is important to note that while Mr. Wolinsky has indicated that he "unofficially" represents an unidentified "ad hoc" group of homeowners, who "collectively own $50 million

dollars of property"[1] and seek to maintain the original Master Plan of the resort, Mr. Wolinsky is demanding that the government recognize rights that were never legally guaranteed to the homeowners in the first place.  Indeed, the unwritten, "personal commitments of the developer," are not legal rights that the government, the current owner or any future owner would be required to recognize and guarantee.  Mr. Wolinsky specifically noted that his understanding is that in Mexico their "rights as homeowners" are "limited."  TR at p. 45.  As discussed at the conference, unwritten commitments cannot form the basis of any sale objections.  See, e.g., TR at pp. 44; 59. Danske also acknowledged that with regard to a sale, "the bank is in a position where it can't force a potential buyer to do frankly whatever."  TR at p. 57.  Moreover, there are numerous other homeowners, as well as the other entities at the resort, that have yet to be heard and who may have different views from Mr. Wolinsky.

   Despite Mr. Wolinsky's and Danske's request that the Court forego entering a preliminary order of forfeiture until an appraisal is conducted and there is adequate equity to satisfy Danske's purported lien, the law mandates the prompt entry of a preliminary order of forfeiture once the court finds that property is subject to forfeiture.  See Fed. R. Crim. P. 32.2(b). Noticeably absent from the statute is any requirement that the government demonstrate that the property have a particular amount equity in order to be forfeitable, or that the property possesses adequate equity to satisfy a **potential** claimant's **purported** claim.  Moreover, Mr. Wolinsky's argument that the Court should delay entry of a preliminary order of forfeiture because the Court cannot "identify" the specific property subject to forfeiture is inapposite because the specific property subject to forfeiture -- the resort -- has certainly been identified, and, as stated, is entirely forfeitable notwithstanding its equity value.

C.  **The letter dated October 29, 2019 from DCSL**

   The DCSL parties, of course, join in the requests of Mr. Wolinsky and Danske, but raise two separate issues.  DE 760. For the first time, and after being present for the court conference in which Danske complained about the inclusion of Danske employee names, DCSL complains about individual employees of DCSL being excluded from the carve-out and requests that the Court require that the government prove that an individual did not make a bona fide purchase in the resort property.  This suggestion, of course, is completely contrary to the law.  See United States v. Watts, 786 F.3d 152, 160 (2d Cir. 2015)("The **petitioner** must then prove his entitlement to relief on the merits by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6)…. Under § 853(n)(6)(B), the petitioner must demonstrate that he is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.")(internal citations and quotations omitted; emphasis added); see also Pacheco v. Serendensky, 393 F.3d 348, 351 (2d Cir. 2004)("Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its alleged interest in property to be forfeited.  At that hearing, both the **petitioner** and the government are entitled to present evidence, with the burden ultimately on the **petitioner** to prove her claim by a preponderance of

---

[1] The government notes that the "ad hoc" group of homeowners' representation that they own over $50 million dollars in properties, indicates that the resort has equity.

the evidence")(internal citations omitted; emphasis supplied).  DCSL does not offer any authority to the contrary, and indeed, it cannot.  The government previously advised the Court that it had concerns about excluding from the carve–out individuals and entities that have been central to the resort's operations and transactions. Indeed, in appraisals of the resort, it was specifically noted by the DCSL management team that initial sales at the resort were made to friends and family.  The government is not required to "carve-out" any third party claims, but in addressing the Court's concerns, did so to streamline the ancillary hearing process only for the thousands of timeshare owners and homeowners who have no known connection to the resort's operations and transactions.

      With regard to the proposed site visit, the government conferred with Danske and DCSL. As explained to DCSL, the Complex Assets Unit of the United States Marshals Service's Asset Forfeiture Division (the "Marshals") is prepared to conduct the appraisal along with an appraiser during the week of November 18 through 21, 2019.  At no time during the conference call did the Marshals suggest that an appraiser would be at the resort on a different date.  In fact, the Marshals specifically indicated that the appraiser would be in place prior to the site visit.  In addition, the Marshals have been reviewing the documentation provided by DCSL and Danske in preparation for the visit, as well as to timely complete the appraisal.  The government notes that the four-day estimated period within which to conduct the appraisal is, of course, dependent on the cooperation of the resort's management team.  In that regard, the government has requested that DCSL provide certain documents to the government in advance of the site visit.  Counsel for DCSL has assured the government that the requested documents will be produced by the end of this week.

      In conclusion, the government has met with the parties, has proffered numerous iterations of a POF, has participated in numerous status conferences to discuss the contents of a POF and the plans to move forward with a forfeiture of the resort and has incorporated everything in the POF that the Court has requested.  After the last conference, the Court specifically noted that, "…I can't think of a [sic] better language in the preliminary order than what we're now up to…". TR at p. 56.  The government respectfully requests that the POF be entered.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Diane C. Leonardo
Diane C. Leonardo
Madeline O'Connor
Assistant U.S. Attorneys
(631) 715-7854
(631) 715-7870

cc:  Philip Kenner
     All counsel of record by ECF