# MEMBERSHIP INTEREST PURCHASE AGREEMENT
## Pacifico Properties SA de CV

This **Membership Interest Purchase Agreement** (the "Agreement") is made and entered into this ___ day of _____ 2008, by and between **Pacifico Properties SA de CV ("PP") OR** ("Seller"), and Frank Sconzo ("FS") OR ("Purchaser").

### WITNESSETH:

**WHEREAS**, Seller is the sole owner of 100% of the membership interests of **Pacifico Properties SA de CV and the parcel 16H.** The entire terms of this Agreement only refer to PP's interest in the 16 Hectare parcel in Los Frailes, BCS and not any other interests of the company. The Purchaser is not acquiring any interest in any other entity that PP has similar interest.

**WHEREAS**, PP, Seller and/or John Kaiser as Managing Partner of Seller, has the valid contractual interest, right and ability to sell certain real property or a portion of said property within Los Frailes, Baja California South (BCS) generally described as: Los Frailes (the "Property"). The Property is anticipated to be as follows:

    16H
    Los Frailes, BCS

**WHEREAS**, Seller desires to sell, and Purchaser desires to purchase 5.4% of Sellers interest in PP's interest in the parcel referred to as 16H including the all rights and options to purchase the Property now owned by Seller and/or John Kaiser, according to the terms, conditions and consideration provided herein

**NOW, THEREFORE**, in consideration of the premises, the mutual covenants and agreements and the respective representations and warranties herein contained, and on the terms and subject to the conditions herein set forth, the parties hereto, intending to be legally bound, hereby agree as follows:

# ARTICLE I
## PURCHASE AND SALE OF THE MEMBERSHIP INTEREST

Section 1.1  Purchase Price.  As consideration for the purchase of the membership interest, Purchasers shall pay Seller the sum of **$300,000** ("Purchase Price") without interest, as follows:

**$300,000** upon execution hereof based on an acquisition price of $35 per m2 resulting in a total percentage of  5.4 % of 16H.

**All payments are to be made payable via wire transfer to "PACIFICO PROPERTIES" with the following instructions:**

| | |
|---|---|
| **BANCO** | **JP MORGAN CHASE** |
| **CIUDAD** | **NEW YORK** |
| **ABA** | 021000021 |
| **SWIFT** | CHASUS33 |
| **Cuenta** | [redacted] |
| **CUENTA CLABE** | [redacted] |

**BENEFICIARIO**  Pacifico Properties SA de CV
**INSTRUCCIONES ESPECIALES:**  BANCO SANTANDER SERFIN SA
REF  400047144
BMSXMXMM

**DIRECCION DEL JP MORGAN CHASE:**
**4 NEW YORK PLAZA FLOOR 15**
**NEW YORK, N.Y.**

Future payments received by the Seller will be subject to a separate agreement. No continuance of the specific terms of this agreement will be allowed unless agreed to in writing by both Seller and Buyer.

# ARTICLE II
## REPRESENTATIONS AND WARRANTIES
## OF THE SELLER

The Seller, jointly and severally, hereby represents and warrant to Purchasers as follows:

Section  2.1         Organization, Good Standing and Qualification.

2

Pacifico Properties SA de CV is a duly formed, organized, validly existing and in good standing under the laws of Mexico, (ii) has all requisite power and authority to carry on its business, and (iii) is duly qualified to transact business and is in good standing in all jurisdictions where its ownership, lease or operation of property or the conduct of its business requires such qualification, except where the failure to do so would not have a material adverse effect to the Seller or Purchasers.

At Closing, the outstanding equity interest in PP 16H parcel by the Purchaser will consist of 5.4% are validly issued and outstanding as follows:

Purchaser - 5.4%
Pacifico Properties SA de CV - 88%.

All of the issued and outstanding membership interests of PP are owned by the Seller and are fully paid and non-assessable. None of the membership interests issued is in violation of any preemptive rights. PP has no obligation to Purchaser to repurchase, reacquire, or redeem any of its outstanding membership interests.

Section 2.2     Subsidiaries. PP retains the right to have subsidiaries with respect to this property (16H) or other properties.

Section 2.3     Ownership of the Membership Interest. The Seller owns, beneficially and of record, all of the membership interest free and clear of any liens, claims, equities, charges, options, rights of first refusal, or encumbrances. Seller has the unrestricted right and power to transfer, convey and deliver full ownership of the membership interest without the consent or agreement of any other person and without any designation, declaration or filing with any governmental authority.

Section 2.4     Authorization. Seller represents that John Kaiser is of full age and majority, with full power, capacity, and authority to enter into this Agreement and perform the obligations contemplated hereby by and for Seller and PP.   All action on the part of Seller necessary for the authorization, execution, delivery and performance of this Agreement by them has been taken and will be taken prior to Closing.  This Agreement, when duly executed and delivered in accordance with its terms, will constitute legal, valid and binding obligations of Seller enforceable against them in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization and other similar laws of general application affecting creditors' rights generally or by general equitable principles.

Section 2.5     Seller' Review. The Seller hereby confirms and represents that they:
  (a) have had an opportunity to engage and is represented by an attorney of its choice;
  (b) has had an opportunity to negotiate the terms and conditions of this Agreement;
  (c) has been given adequate time to evaluate the merits and risks of the transactions contemplated hereby.

Section 2.6  No Breaches or Defaults. The execution, delivery, and performance of this Agreement by the Seller does not: (i) conflict with, violate, or constitute a breach of or a default under any other Agreement, (ii) result in the creation or imposition of any lien, claim, or encumbrance of any kind upon the Stock, or (iii) require any authorization, consent, approval, exemption, or other action by or filing with any third party or Governmental Authority under any provision of: (a) any applicable Legal Requirement, or (b) any credit or loan agreement, promissory note, or any other agreement or instrument to which the Seller or PP is a party or by which the membership interest may be bound or affected

Section 2.7     Consents. No permit, consent, approval or authorization of, or designation, declaration or filing with, any Governmental Authority or any other person or entity is required on the part of the Seller or PP in connection with the execution and delivery by the Seller of this Agreement or the consummation and performance of the transactions contemplated hereby, except as identified herein.

Section 2.8     Pending Claims. Except as set forth in Exhibit 3.8, there is no claim, suit, arbitration, investigation, judgment, action or other proceeding, whether judicial, administrative or otherwise, now pending or, to the best of the Seller' knowledge, threatened before any court, arbitration, administrative or regulatory body or any governmental agency which may result in any judgment, order, award, decree, liability or other determination which will or could reasonably be expected to have any effect upon Seller or PP or the transfer by Seller to Purchasers of the membership interest under this Agreement, nor is there any basis known to Seller for any action.  No litigation is pending, or, to Seller' knowledge, threatened against Seller, PP or their assets or properties which seek to restrain or enjoin the execution and delivery of this Agreement or any of the documents referred to herein or the consummation of any of the transactions contemplated thereby or hereby.  Neither Seller nor PP is subject to any judicial injunction or mandate or any quasi-judicial or administrative order or restriction directed to or against them or which would affect Seller or PP or the membership interest to be transferred under this Agreement.

Section 2.9     Taxes. Seller and PP have timely and accurately filed all federal, state, foreign and local tax returns and reports required to be filed prior to such dates and have timely paid all taxes shown on such returns as owed for the periods of such returns, and are not delinquent in the payment of any tax or governmental charge of any nature.  No assessments or notices of deficiency or other communications have been received by Seller or PP with respect to any tax return which has not been paid, discharged or fully reserved against and no amendments or applications for refund have been filed or are planned with respect to any such return.  There are no agreements between Seller or PP and any taxing authority, including, without limitation, the Internal Revenue Service, waiving or extending any statute of limitations with respect to any tax return.

Section 2.10    Labor Matters. Neither Seller nor PP employ or have ever employed any person, nor does either entity have any agreements, contracts or collective bargaining agreements with any person or group of any kind.

4

Section 2.11     Compliance with Laws.  Seller and PP are, and at all times prior to the date hereof have been, to the best of their knowledge, in compliance with all statutes, orders, rules, ordinances and regulations applicable to it or to the ownership of their assets or the operation of their businesses, except for failures to be in compliance that would not have a material adverse effect on the business, properties, condition (financial or otherwise) or prospects of PP.  Seller has no basis to expect, nor have they received any order or notice of any such violation or claim of violation of any such statute, order, rule, ordinance or regulation by Seller or PP.

Section 2.12     No Pending Transactions.  Except for the transactions contemplated by this Agreement, neither Seller or PP is a party to or bound by or the subject of any agreement, undertaking, commitment or discussions or negotiations with any person that could result in (i) the sale, merger, consolidation or recapitalization of PP , (ii) the sale of any of the assets of PP except in the ordinary course of business, or (iii) the sale of any membership interest in PP.

Section 2.13     No Undisclosed Liabilities  To the best of Seller' knowledge,  PP does not have any obligation or liability (contingent or otherwise).

Section 2.14     Material Agreements; Action.  There are no material contracts, agreements, commitments, understandings or proposed transactions, whether written or oral, to which Seller is a party or by which they are bound that involve or relate to any of the respective officers, directors, members or managers of PP.

Section 2.15     Insurance Policies.  None.

Section 2.16     Taxes.  None are application at the time of this Agreement.

Section 2.17     Employee Benefit Plans.  PP does not contribute to any pension, profit-sharing, option, other incentive plan, or other Employee Benefit Plan (as defined the Employee Retirement Income Security Act of 1974), or have any obligation to or customary arrangement with employees for bonuses, incentive compensation, vacations, severance pay, insurance, or other benefits.

Section 2.18     Disclosure.  No representation or warranty of the Seller contained in this Agreement (including the exhibits hereto) contains any untrue statement or omits to state a material fact necessary in order to make the statements contained herein or therein, in light of the circumstances under which they were made, not misleading.

Section 2.19     Brokers.  No agent, broker, finder or investment or commercial banker, or other person or firms engaged by or acting on behalf of Seller in connection with the negotiation, execution, delivery or performance of this Agreement or the transactions contemplated by this Agreement, is or will be entitled to any broker's or finder's or similar fees or other commissions as a result of this Agreement or such transactions.

Section 2.20     Due Diligence. Except as expressly set forth herein, Seller expressly disclaim all representations and warranties, express or implied or otherwise arising by operation of law, arising out of, or with respect to, the execution of this Agreement and arising out, of or with respect to, any aspect, status or element of the membership interest.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES
## OF PURCHASERS

The Purchasers hereby represent and warrants to the Seller as follows:

Section 3.1 Authorization. The Purchasers have full power, capacity, and authority to enter into this Agreement and perform the obligations contemplated hereby. All action on the part of the Purchasers necessary for the authorization, execution, delivery and performance of this Agreement by them have been taken and will be taken prior to Closing. This Agreement, when duly executed and delivered in accordance with its terms, will constitute legal, valid, and binding obligations of the Purchasers enforceable against them in accordance with its terms, except as may be limited by bankruptcy, insolvency, and other similar laws affecting creditors' rights generally or by general equitable principles.

Section 3.2     Brokers. No agent, broker, finder or investment or commercial banker, or other person or firms engaged by or acting on behalf of Purchasers in connection with the negotiation, execution, delivery or performance of this Agreement or the transactions contemplated by this Agreement, is or will be entitled to any broker's or finder's or similar fees or other commissions as a result of this Agreement or such transactions.

Section 3.3   Due Diligence. The Purchasers covenant and agree that they have performed their own due diligence with respect to matters affecting the Property and the membership interest and have thoroughly investigated to their full satisfaction, all aspects of the transaction and sale. Purchasers are satisfied with respect to the probable risk, worth and potential of the Property and have relied upon their own judgment in consummating this Agreement.

## ARTICLE IV
## CONFIDENTIALITY

Section 4.1     Confidentiality. The terms of this Agreement are confidential in nature unless otherwise deemed necessary due to necessary action in order to enforce the terms set forth herein by Seller or Purchaser.

6

# ARTICLE V
# MISCELLANEOUS

Section 5.1  <u>Amendment; Waiver</u>.  Neither this Agreement nor any provision hereof may be amended, modified or supplemented unless in writing, executed by all the parties hereto.  Except as otherwise expressly provided herein, no waiver with respect to this Agreement shall be enforceable unless in writing and signed by the party against whom enforcement is sought.  Except as otherwise expressly provided herein, no failure to exercise, delay in exercising, or single or partial exercise of any right, power or remedy by any party, and no course of dealing between or among any of the parties, shall constitute a waiver of, or shall preclude any other or further exercise of, any right, power or remedy.

Section 5.2  <u>Title</u>.  The Seller, Managing Partner and/or PP has the right when in the best interest of the Property (16H) to change the Mexican entity by which ownership exists and is registered with the proper Mexican authorities as deemed appropriate and in the best interest of the members without notification prior to action.

Section 5.3  <u>Notices</u>.  Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and delivered in person, transmitted by facsimile transmission (fax) or sent by registered or certified mail (return receipt requested) or recognized overnight delivery service, postage pre-paid, addressed as follows, or to such other address has such party may notify to the other parties in writing:

    (a)  if to the Seller:

        John R. Kaiser, Managing Partner
        Pacifico Properties SA de CV
        ▮▮▮▮▮▮▮▮
        Setauket, NY

    (b)  if to Purchasers:

        Frank Sconzo

        _____

A notice or communication will be effective (i) if delivered in person or by overnight courier, on the business day it is delivered, (ii) if transmitted by telecopier,

on the business day of actual confirmed receipt by the addressee thereof, and (iii) if sent by registered or certified mail, three (3) business days after dispatch.

Section 5.4 <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

Section 5.5 <u>Assignment; Successors and Assigns</u>. Except as otherwise provided herein, the provisions hereof shall inure to the benefit of, and be binding upon the successors and permitted assigns of the parties hereto. No party hereto may assign its rights or delegate its obligations under this Agreement without the prior written consent of the other parties hereto, which consent will not be unreasonably withheld unless otherwise offered in terms of this Agreement.

Section 5.6 <u>Survival of Representations, Warranties and Covenants</u>. All representations and warranties made in, pursuant to or in connection with this Agreement shall survive the execution and delivery of this Agreement.

Section 5.7 <u>Entire Agreement</u>. This Agreement and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof and thereof and supersede and cancel all prior representations, alleged warranties, statements, negotiations, undertakings, letters, acceptances, understandings, contracts and communications, whether verbal or written among the parties hereto and thereto or their respective agents with respect to or in connection with the subject matter hereof.

Section 5.8 <u>Choice of Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Arizona, without regard to principles of conflict of laws.

Section 5.9 <u>Counterparts and Facsimiles</u>. This Agreement may be executed in multiple counterparts and in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute and be deemed to be one and the same instrument and each of which shall be considered and deemed an original for all purposes. This Agreement shall be effective with the facsimile signature of any of the parties set forth below and the facsimile signature shall be deemed as an original signature for all purposes and the Agreement shall be deemed as an original for all purposes.

Section 5.10 <u>Costs and Expenses</u>. Each party shall pay their own respective fees, costs and disbursements incurred in connection with this Agreement.

Section 5.11 <u>Section Headings</u>. The section and subsection headings in this Agreement are used solely for convenience of reference, do not constitute a part of this Agreement, and shall not affect its interpretation.

Section 5.12    <u>No Third-Party Beneficiaries</u>. Nothing in this Agreement will confer any third party beneficiary or other rights upon any person or any entity that is not a party to this Agreement.

Section 5.13    <u>Validity</u>. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

Section 5.14    <u>Further Assurances</u>. Each party covenants that at any time, and from time to time, after the Closing Date, it will execute such additional instruments and take such actions as may be reasonably be requested by the other parties to confirm or perfect or otherwise to carry out the intent and purposes of this Agreement.

Section 5.15    <u>Exhibits Not Attached</u>. Any exhibits not attached hereto on the date of execution of this Agreement shall be deemed to be and shall become a part of this Agreement as if executed on the date hereof upon each of the parties initialing and dating each such exhibit, upon their respective acceptance of its terms, conditions and/or form.

Section 5.16    <u>Arbitration Provision, Governing Law, Consent To Jurisdiction & Venue</u>: Any dispute arising out of or relating to this contract, including the breach, termination or validity hereof, shall be fully and finally resolved by binding arbitration in accordance with the CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration, by a sole arbitrator. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C.§§1-16, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The place of the arbitration shall be Maricopa County, State of Arizona. The common laws of the State of Arizona shall apply to all issues. The arbitrator shall award to the prevailing party all its costs of arbitration, including arbitration fees, travel expenses, costs of discovery, and reasonable attorney fees incurred.

**IN WITNESS WHEREOF**, the undersigned have executed this Stock Purchase Agreement to become effective as of the date first set forth above.

PURCHASERS
-----

_____
Frank Sconzo

SELLER
-----

**Pacific Properties SA de CV – 16H**

By

_____
John R. Kaiser, Managing Member

**Galioto, Matthew**

| | |
|---|---|
| From: | John Kaiser <span style="background:black">■</span> |
| Sent: | Monday, February 24, 2014 11:45 AM |
| To: | Galioto, Matthew; Wayne Joshua R |
| Subject: | Fwd: agreements |
| Attachments: | Jonathan Smith-PP-16H Membership Agreement.doc; ATT00004.htm; Nick Privitello-PP- 16H Membership Agreement.doc; ATT00005.htm; Frank Sconzo-PP-16H Membership Agreement.doc; ATT00006.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Bob Gaudet <<span style="background:black">■</span>>
> **Date:** May 1, 2009 at 12:39:05 AM EDT
> **To:** John Kaiser <<span style="background:black">■</span>>
> **Subject: agreements**
>
> Agreements attached. Still need to place the %. Will get with P.

1

**Galioto, Matthew**

From: John Kaiser
Sent: Monday, February 24, 2014 12:18 PM
To: Galioto, Matthew; Wayne Joshua R
Subject: Fwd: agreements

Sent from my iPhone

Begin forwarded message:

> From: John Kaiser <
> Date: May 1, 2009 at 7:30:17 AM EDT
> To: Bob Gaudet <
> Subject: Re: agreements
>
> Tks, please try to work the % out . Tks Jk
>
> Sent from my iPhone
>
> On May 1, 2009, at 12:39 AM, Bob Gaudet < > wrote:
>
>> Agreements attached. Still need to place the %. Will get with P.
>>
>> <Jonathan Smith-PP-16H Membership Agreement.doc>
>> <Nick Privitello-PP- 16H Membership Agreement.doc>
>> <Frank Sconzo-PP-16H Membership Agreement.doc>

1

**Galioto, Matthew**

| | |
|---|---|
| From: | John Kaiser ▉ |
| Sent: | Monday, February 24, 2014 11:43 AM |
| To: | Galioto, Matthew; Wayne Joshua R |
| Subject: | Fwd: EC 16 |
| Attachments: | Jonathan Smith-PP-16H Membership Agreement.doc; ATT00005.htm; Nick Privitello-PP- 16H Membership Agreement.doc; ATT00006.htm; Frank Sconzo-PP-16H Membership Agreement.doc; ATT00007.htm; survey map.JPG.zip; ATT00008.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Bob Gaudet <▉
> **Date:** May 3, 2009 at 7:03:31 AM EDT
> **To:** John Kaiser <▉
> **Subject: EC 16**
>
> Attached are 3 agreements per below.
> Attached is a survey map showing 16 hectare parcel.
>
> EAST CAPE 16
>
> | | | | |
> |---|---|---|---|
> | JONATHAN SMITH | $100,000 | | 1.8% INTEREST |
> | NICK PRIVITELLO | $250,000 | | 4.5% INTEREST |
> | FRANK SCONZO | | $300,000 | 5.4% INTEREST |
>
> BASED ON:
>
> EC 16 = 160,000 M2
> $35 per M2 = $5,600,000

1





# FRANK T. SCONZO, JR., M.D., F.A.C.S., F.A.C.R.S.

286 Sills Road, Suite 5
East Patchogue, N.Y. 11772
(631) 654-3100
Fax (631) 654-0212

## Colon & Rectal Surgery

### FAX TRANSMITTAL SHEET

Date: 3/20/14

To: Matt Galioto

From: Dr Sconzo

Re: Checks

Number of pages (including cover sheet): 3

Comments: _____

> received a year before trial confirming Galioto knew Kaiser robbed his Long Island doctor friends...

This facsimile contains privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this facsimile is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or coping of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to the above address via the US Postal Service. Thank You.

$190,000 stolen by Kaiser and concealed by Galioto...



3/20/2014

