November 4, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

The Honorable Judge Bianco:

In furtherance of my submission request to the court of October 21, 2019 (ECF No. 756), I am attaching formal subpoenas that I would respectfully ask the court to so-order.

The requested information is necessary for the upcoming sentencing proceedings. They will provide the court and parties with the value and timing of the settlement agreements Jowdy constructed with the two (2) government witnesses (Juneau and Nolan) in 2008, related to the use of funds in Hawai'i and Mexico that Jowdy controlled (subject of the *government-forfeiture-44* Hawai'i loans to Jowdy). The value will provide the court with an offset value for consideration received by the two (2) parties as a result of any funds traceable from their Hawai'i investment to Jowdy.

Hence, the first subpoena requests:

- Signed 2008-09 settlement agreements between Owen Nolan and Ken Jowdy (and Jowdy related entities);

- Signed 2008-09 settlement agreements between Joe Juneau[1] and Ken Jowdy (and Jowdy related entities).

Second, the government has repeatedly referenced the 2015 and 2017 Diamante Cabo san Lucas ("DCSL") appraisals to the court. Specifically, they claimed on October 11, 2019 that DCSL had lost $200 million in value between the 2015 and 2017 appraisals in the government's possession. The defendant is simply looking for the values from 2015 and 2017 appraisals for offset calculations.

---

[1] Joe Juneau referenced the settlement agreement with Jowdy during trial (*Tr.354*). Juneau and Nolan were represented by the same California counsel at the time of the settlement Juneau referenced during the 2015 EDNY trial.

The CSL members who have been corresponding with the Court formalized a settlement agreement with Ken Jowdy in 2017 (only 6 of which were named in the superseding indictment, less than 50% of the CSL members); thru continuing litigation in Delaware that Kenner had initiated in other jurisdictions on behalf of the same investors to recover the Jowdy controlled funds, prior to his detainment in 2013.

The CSL members negotiated and received significant equity consideration for the forgiveness of any funds Jowdy had controlled thru loan or equity since their individual 2002 investments began with Jowdy.   The appraisals will produce the proper offset value for the compensation they received from Jowdy and his entities in the 2017 agreement (covering any and all monies that Jowdy received as part and parcel to the 2004 Hawai'i loan agreement – as turned over to the FBI by Jowdy during his March 24, 2010 FBI proffer: 3500-KJ-2 at 24-25).

In contradiction to the Venable opposition (ECF No. 763), the Jowdy settlement "value" is exactly the bargained for re-compensation to all of the Hawai'i and Mexico investors that Jowdy came in monetary contact with thru any means (loans and equity transactions, since 2002), under *pari passu* expectations.  These were non-fraud factors in the instant case (with the passive-equity investors governed by the corporate operating agreement in Hawai'i – to determine whether or not the Managing Member could conduct transactions on behalf of the investment base); with culpability related to fraud in the inducement or not in the various "objects". *United States v. Rutkoske*, 506 F.3d 170 (2d Cir 2007), and *United States v. Evans*, 744 F.3d 1192; 2014 U.S. App. LEXIS 4490 (10th Cir 2014) (*referencing Turk – 2nd Cir*) (*Evans I*)…and *2nd appeal for improper loss calculation (again) -- United States v. Evans*, 677 Fed. Appx. 469; 2017 U.S. App. LEXIS 1942 (10th Cir 2017) (*Evans II*), all supports the specific need to receive the valuations, in conjunction with the various settlement agreements.

Jowdy's 2008 and 2017 settlement agreements accept the responsibility for the funds the government-themselves "traced" (per the court's request – July 2, 2019 hearing at 25) to Jowdy; not Kenner (despite the government's droning in their sentencing memo (ECF No. 765 at 8).  An innocent third party (Jowdy – per the government's trial claims at Tr.33 – and the July 18, 2019 PSR submission at 1) has settled specific outstanding issues and re-compensated the investors, whether or not Jowdy officially accepted responsibility, publically.  The sheer value of the settlement transactions (calculable into the millions of dollars) has tremendous effects on the calculation of loss in the instant case; wholly effecting sentencing guidelines, money judgment and potential restitution under the MVRA.

As always, the confidentiality and value of the underlying investments are paramount to Kenner's concerns for the investors, the bank, and the other related parties (as echoed by the Danske bank attorneys).   As such, Kenner would suggest that all information is relayed to Kenner under seal.   To the extent that the future reference to these materials is necessary, Kenner will submit those specific portions under seal.

Submitted November 4, 2019,

Phil Kenner