

600 MASSACHUSETTS AVE., NW    WASHINGTON, DC 20001
**T** 202.344.4000  **F** 202.344.8300  www.Venable.com

November 8, 2019

George Kostolampros

**T 202.344.4426**
**F 202.344.8300**
gkostolampros@venable.com

<u>**VIA ECF**</u>

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

   Re: <u>**United States of America v. Kenner, Cr. No. 13-607 (JFB)**</u>

Dear Judge Bianco,

  We write on behalf of Danske Bank A/S London Branch ("Danske") in response to (1) the government's October 30, 2019 letter (Docket Entry 761) replying to letters filed by Danske, the DCSL parties, and a representative of an ad hoc group of homeowners, and (2) defendant Phillip Kenner's November 4, 2019 request asking the Court to issue a subpoena compelling Danske to produce the 2015 and 2017 Jones Lang LaSalle appraisal reports.

**I.**  <u>**THE GOVERNMENT'S OCTOBER 30 LETTER.**</u>

  In its October 30 letter, the government again reflexively opposes Danske's requests without due consideration that the requests do not limit the government's alternatives but simply address concerns that seek to maximize value for the Resort Property. <u>First</u>, contrary to the government's contentions, Danske's October 18, 2019 letter does <u>not</u> demand that the proposed preliminary order of forfeiture (the "Proposed Order") exclude the Resort Property from its scope or limit the forfeiture to the U.S. equity interests. Danske has been advised by Jones Lang LaSalle, an independent commercial real estate services firm, who is familiar with the Resort Property and the market for similar properties/entities, that a sale of the Resort Property as a going concern by selling the equity interests will yield the most value. In light of that advice, in its October 18 letter, Danske proposed including a reference to conducting an interlocutory sale of the equity interests as an alternative to selling the Resort Property. Danske does not, as the government continues to suggest, intend to use the sale of the equity to try to end run its lien priority.[1] Rather, Danske seeks

―――――――――――――――

[1] The government references Danske's "purported" claim in its letter. Just as it had no basis for impugning the integrity of the Danske employees the government named in a previous



The Honorable Joseph F. Bianco
November 8, 2019
Page 2

only to ensure that, to the extent the Proposed Order includes language that the Resort Property will be subject to interlocutory sale, Danske, or any other party, would not be limited in arguing in a subsequent motion for an interlocutory sale that such sale should be of the equity interests. As written now, the Proposed Order could be viewed as limiting any potential sale to just the real property. Further, Danske has endeavored to explain to the government the benefit of selling the Resort Property as a commercial going concern rather than selling just the real estate. As Danske has tried to explain, selling the Resort Property as a going concern ensures that the buyer of the asset acquires the rights to various contracts which are essential to the smooth operation of the resort, including, as one example, operation of off-site waste treatment facilities that provide crucial volumes of water to irrigate the golf courses. It is less likely that a sale will successfully close if a purchaser does not have access to these contracts. It is for this reason that Danske has taken, and continues to take, the position that the government should recognize on the record that an interlocutory sale could potentially include a sale of the equity interests or that the Proposed Order should state, even in a footnote, that any interlocutory sale of the Resort Property involve both the Resort Property and the equity interests. In referencing the equity interests in its previous letter, Danske is not asking either the government or the Court to limit the Proposed Order to the equity interests.

Second, in addressing the 18-month timeframe for the interlocutory sale, the government appears to misapprehend Danske's position. Danske has no objection to the 18-month period—Danske's position in its October 18, 2019 letter and now is that completing a sale as expeditiously as possible is imperative to ensuring that the Resort Property remains a going concern. Danske's concern is if the interlocutory sale process does not begin as soon as possible it is not likely to be completed within 18 months. Beginning the interlocutory sale process means developing a plan amongst interested parties and moving the Court for an interlocutory sale. This must include coordinating with interest third parties to ensure that the plan is workable in this market and will minimize any unnecessary harm to those third parties. The Resort Property and interested third parties simply do not have the luxury of time because, as Danske has previously pointed out, delays in starting the sale process will delay providing the capital the Resort Property so badly needs. Indeed, liquidity is fully exhausted and there is no undrawn capacity in bank facilities, and based on recent meetings with the borrower, Danske currently expects that the developer will be able to operate on a cash neutral basis through May 2020, but only after implementing a cost reduction program. Any delays with respect to the sale process heighten the risk of a liquidity crisis that could jeopardize any going concern sale effort. While Danske understands the government is in

_____

version of its Proposed Order, the government has no basis for suggesting that Danske is not a bona fide purchaser without an entitlement to first payment in-full.



The Honorable Joseph F. Bianco
November 8, 2019
Page 3

the process of obtaining an appraisal[2], the government has provided no clarity as to how long that process will take or what will be done if the appraisal confirms there is no value beyond the amounts owed to Danske.[3]

Although the government has taken Danske's requested meetings in which Danske raised its concerns regarding forfeiture and also sought to obtain clarity as to the government's forfeiture proceeding, the government has only conceded to those requests after Danske had to raise them directly with the Court. This process of Danske raising concerns to the government, the government refusing to consider and address those concerns, Danske then raising them to the Court and then the government finally relenting has taken over a year since the government submitted its initial Proposed Order. Because neither the Resort Property nor interested third parties has the benefit of time to again follow that same procedure, we respectfully request that the Court require that a joint statement be filed by the government and interested third parties (i.e., Danske as the lienholder, the borrower, and any interested homeowner) setting forth a proposal for an interlocutory sale within some reasonable time period after the issuance of the Proposed Order. Danske proposes that the time period be 30 days from the issuance of the Proposed Order.

<u>Third</u>, although the government reluctantly agreed to remove two named Danske employees from the Proposed Order, it continues to insist on including apparently all current or former Danske employees in the Proposed Order. With respect to this issue, the government must have a basis to assert forfeiture of property or an interest owned by current or former Danske employees in the Resort Property. The government's inclusion of current and former employees in the POF can be viewed as disparaging to Danske, implying that employees of Danske may have received an interest in the Resort Property improperly. The government, however, has offered no basis why such language should be included. For instance, the government has not identified any such person who owns an interest nor identified a basis to argue that such a person (to the extent

---

[2] Danske also has no information about the government's process with respect to the appointment of a suitably qualified professional party who can conduct and execute the sale process—a crucial component that requires prompt attention.

[3] In its response to Mr. Wolinsky, the government concludes that the "'ad hoc' group of homeowners' representation that they own over $50 million dollars in properties, <u>indicates that the resort has equity</u>." Letter at 3 n.1 (emphasis added). This conclusion is indicative of a lack of understanding of the Resort Property and the equity in the property. The ad hoc group of homeowners' properties are not part of the Resort Property for purposes of valuation of the Resort Property, as the government has already conceded that those homeowners' already purchased properties are not subject to forfeiture. Thus, the value of those homeowners' properties have no bearing on whether the Resort Property has equity.



The Honorable Joseph F. Bianco
November 8, 2019
Page 4

there is one) should be treated differently than any other third party with an interest in the Resort Property. Thus, such language should be stricken from the POF.

In sum, in its October 18, 2019 letter and again here, Danske is not seeking controversial relief or to take rights from the government. Danske's entire goal in writing this reply and in its October 18 letter is to ensure that there is a timely, sophisticated and potentially agreed-to process to resolve the forfeiture through an interlocutory sale. This process must be on an expedited time frame to ensure value in the Resort Property and not further harm innocent third parties like Danske. Danske respectfully requests that the Court consider these issues prior to entering the Proposed Order.

## II.    THE COURT SHOULD DENY MR. KENNER'S REQUEST TO SUBPOENA DANSKE.

Danske objects to Mr. Kenner's request that the Court issue a subpoena pursuant to Rule 17 of the Federal Rules of Criminal Procedure. For the same reasons set forth in its October 31, 2019 letter, Danske respectfully requests that the Court deny Mr. Kenner's requested subpoena.

Respectfully,

George Kostolampros
Doreen S. Martin


cc:    All parties of record via ECF
       Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)
       Marc Wolinsky, Esq. (Diamante Doce, LLC) (by email)
       CSL Properties 2006, LLC (by overnight mail)