# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 13-CR-607 (JFB) (AYS)

UNITED STATES OF AMERICA,

VERSUS

PHILLIP A. KENNER AND TOMMY C. CONSTANTINE,

Defendants.

MEMORANDUM AND ORDER
December 3, 2019

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On July 9, 2015, following a nine-week trial, a jury convicted defendant Phillip Kenner ("Kenner") of one count of conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One of the Superseding Indictment); four counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Two, Three, Four, and Seven); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Nine).[1] (ECF No. 324.) In addition, the jury convicted defendant Tommy C. Constantine ("Constantine," and together with Kenner, "defendants") of one count of conspiring to commit wire fraud (Count One); five counts of wire fraud (Counts Two through Six); and one count of conspiracy to commit money laundering (Count Nine).

Now pending before the Court is Kenner's motion for a judgment of acquittal, pursuant to Rule 29, and his motion for reconsideration of his Rule 33 motion. (ECF No. 668.)[2] In his Rule 29 motion, Kenner principally argues that: (1) venue was improper in the Eastern District of New York ("EDNY" or "District"); and (2) there was a prejudicial variance between the Superseding Indictment and the proof presented at trial. In his Rule 33 motion, he repeats his same arguments that served as the bases for his original motion, including newly-discovered evidence and prosecutorial misconduct. (ECF No. 668 at 6.)

On July 2, 2019, Kenner filed a motion pursuant to 28 U.S.C. § 2255 on the basis of

---

[1] The jury also acquitted Kenner of three wire fraud counts (Counts Five, Six, and Eight). (ECF No. 324.)

[2] By letter dated August 30, 2019, Constantine requested to join in Kenner's motion to the extent that it applied to Constantine. (ECF No. 704.)

ineffective assistance of counsel. (ECF No. 675.)

For the reasons set forth below, the Court denies Kenner's motions.

I. BACKGROUND

Familiarity with the facts of the case is presumed. Nevertheless, the Court briefly summarizes the evidence relevant to the instant motions below. The evidence is construed in the light most favorable to the government, pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

At trial, the government presented three theories of fraud: (1) the Hawaii Project; (2) the funds related to Eufora, LLC ("Eufora"); and (3) the Global Settlement Fund ("GSF").

With respect to the Hawaii Project, the government's evidence demonstrated that Kenner defrauded several professional hockey players who were his clients. His clients testified that they contributed funds to the project based on Kenner's representations that their investments would finance a real estate development in Hawaii. In reality, however, Kenner diverted his clients' money, without authorization, to another property development in Mexico that involved Ken Jowdy ("Jowdy"). According to bank records introduced at trial, Constantine received money that was actually intended for the Hawaii Project.

Similarly, with respect to the Eufora scheme, the government established at trial that Kenner sought funds from several investors who were told that their money would be used to finance the Eufora company. However, according to bank records and testimony, Constantine and Kenner converted those investments to cover personal expenses without the investors' authorization.

Finally, government witnesses testified that Kenner and Constantine convinced them to invest in the GSF because they were told that their contributions would principally finance litigation against Jowdy to recover money from him. Again, bank records and testimony demonstrated that both defendants used GSF money for personal expenses. For example, the records established that Constantine covered his rent and automotive work with funds from the GSF.

1. Relevant Procedural History

By Superseding Indictment dated April 22, 2015, the government charged Kenner with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Nine); and seven counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Two through Eight). (ECF No. 214.) In addition, the government charged Constantine with conspiracies to commit wire fraud and money laundering (Counts One and Nine) and five counts of wire fraud (Counts Two through Six).

Following a nine-week trial, the jury returned a verdict on July 9, 2015. (ECF No. 324.) The jury found Constantine guilty on all charges and Kenner guilty on both conspiracy counts. (*Id.*) The jury also found Kenner guilty on the wire fraud charges in Counts Two, Three, Four, and Seven in the Superseding Indictment, but it acquitted him of the wire fraud charges in Counts Five, Six, and Eight. (*Id.*)

Thereafter, Constantine moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 as to all counts, or, in the alternative, for a new trial, pursuant to Federal Rule of Criminal Procedure 33. (ECF No. 346.) In addition, Kenner moved for a new trial pursuant to

Federal Rule of Criminal Procedure 33, on the basis of *Brady* violations, newly-discovered evidence, prosecutorial misconduct, and the assertion that the verdict was against the weight of the evidence. (ECF No. 416.) On October 11, 2017, this Court denied both motions, (ECF No. 501), but reserved decision on Constantine's request for relief based on ineffective assistance of counsel, (ECF No. 483), because it was not fully briefed at the time the Order was issued (ECF No. 501 at 3 n.2). On October 4, 2019, the Court denied Constantine's motion for a new trial on the basis of ineffective assistance of counsel. (ECF No. 729.)

On June 17, 2019, Kenner filed the instant motion. (ECF No. 668.) On July 23, 2019, the government responded, alleging that Kenner had waived his venue arguments and that there was no variance at the trial. (ECF No. 681.) The government urged this Court to deny Kenner's Rule 33 motion because all of the issues he raised were already decided by the Court in its October 11, 2017 Order. On October 17, 2019, upon direction from this Court, the government provided additional support for its venue arguments. (ECF No. 752.) Kenner submitted a reply on October 30, 2019, asserting that the government's basis for venue is predicated on falsehoods, mere preparatory acts, and non-victim activity. (ECF No. 762.)

II. STANDARD OF REVIEW

1. Rule 29 Motion for Judgment of Acquittal[3]

Kenner principally argues that: (1) venue was improper; and (2) there was an unconstitutional variance from the Superseding Indictment at the trial. As discussed below, the Court finds each of these arguments to be without merit.

Pursuant to Rule 29(a), a district court shall enter a judgment of acquittal as to "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29(c) permits a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c).

Under Rule 29, the standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008); *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008); *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006); *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006). In other words, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Temple*, 447

---

[3] Kenner claims that he did not realize that his attorney failed to submit a Rule 29 motion until recently, and he thus submitted this motion *pro se* as soon as he could. The government argues that such a claim is "disingenuous," given the government's opposition to Kenner's initial Rule 33 motion. (ECF No. 681 at 1 (citing ECF No. 440 at 2) (outlining the post-trial motions from both defendants).) Despite the untimeliness of the motion, the Court, as discussed below, has considered the merits of Kenner's arguments.

3

F.3d at 136 (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)).

Importantly, when evaluating the evidence under this standard, "courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003); *see also United States v. Florez*, 447 F.3d 145, 154-55 (2d Cir. 2006) ("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court."); *Guadagna*, 183 F.3d at 130 (holding that a court must bear in mind that Rule 29 "does not provide [it] with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury") (citation and internal quotation marks omitted).

Therefore, viewing the evidence in the light most favorable to the government means "drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Arena*, 180 F.3d 380, 391 (2d Cir. 1999) (citation and internal quotation marks omitted). In examining the sufficiency of the evidence, the Court should not analyze pieces of evidence in isolation, but rather must consider the evidence in its totality. *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir. 1993); *see also Guadagna*, 183 F.3d at 130 (holding that sufficiency test must be applied "to the totality of the government's case and not to each element, as each fact may gain color from others").

2. Rule 33 Motion for a New Trial

Rule 33 states, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court may grant a Rule 33 motion only in "extraordinary circumstances," *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009), and only if there exists "a real concern that an innocent person may have been convicted." *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)); *accord United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009); *see also United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000) ("Granting Rule 33 motions is not favored and is done with great caution."). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. In deciding a Rule 33 motion, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (citation omitted).

III. VENUE

Defendant Kenner appears to challenge venue on all counts. As a threshold matter, Kenner waived this argument. In any event, as discussed below, the Court concludes that venue existed in EDNY for the counts of conviction based upon, *inter alia*, phone calls, email communications, and wire transfers that occurred with individuals on Long Island.

1. Waiver

The government contends in its letter that Kenner waived his venue argument by failing

4

to raise it during the trial. In particular, the government argues that, because Kenner provided specific grounds for a motion for acquittal after the government's case but failed to include any objection to venue, he waived his venue claim. (ECF No. 681 at 2.) As set forth below, the Court agrees.

The Second Circuit has "identified two situations where a finding of waiver is proper: (a) when the indictment or statements by the prosecutor clearly reveal this defect but the defendant fails to object; and (b) when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue." *United States v. Price*, 447 F.2d 23, 27 (2d Cir. 1971) (citing *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968)). At the same time, however, "the constitutional underpinning and importance of proper venue dictate that waiver of objections to venue should not be readily inferred." *Id.*

Here, after the government rested its case, Kenner moved for acquittal pursuant to Rule 29. (Tr. at 5632-37; *see also id.* at 5679.) He argued that there was no proof presented connecting Kenner to the Eufora scheme in which Constantine convinced Nicholas Privitello ("Privitello"), an electrician from Long Island, to invest in the company. (*Id.* at 5633-34.) He also contended that there was no evidence that Timothy Gaarn ("Gaarn") was a co-conspirator, as alleged in the indictment. (*Id.* at 5635.) Although Constantine raised that there was no venue with respect to the Hawaii Project, Kenner did not raise the issue. (*Id.* at 5632.) Kenner and Constantine both requested to include a jury instruction on venue, (*id.* at 5680), but such a request is not sufficient for Kenner to preserve his objection. *See United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984) (noting that "the fact that counsel requested a venue instruction, is not enough to prevent waiver of the venue objection").

Thus, although Constantine raised the venue argument, Kenner did not and has therefore waived the issue of venue. However, even assuming *arguendo* that venue was not waived, the Court concludes that this argument is without merit.

2. Legal Standard

Two provisions of the United States Constitution guarantee that the defendant must be tried in the place where the crime was committed. Article III, section 2, provides in relevant part that criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment guarantees that a criminal defendant shall be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. In addition, Rule 18 of the Federal Rules of Criminal Procedure requires that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

The Second Circuit has provided that:

[T]here is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding. . . .

*United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985); *accord United States v. Royer*, 549 F.3d 886, 893 (2d Cir. 2008).

The government bears the burden of proving venue by a preponderance of the evidence. *United States v. Smith*, 198 F.3d 377, 382 (2d Cir. 1999); *United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir. 1994). Courts "review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting every inference that could have been drawn in its favor." *Smith*, 198 F.3d at 382 (internal quotations omitted).

Under 18 U.S.C. § 3237(a), venue properly lies in "any district in which such offense was begun, continued, or completed." With respect to conspiracy, the Second Circuit "has held that venue may lie in any district in which the conspiracy was formed or in any district in which a conspirator committed an overt act in furtherance of the criminal scheme." *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007). Any "act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy" is an overt act, whether it is "innocent or illegal." *United States v. Tzolov*, 642 F.3d 314, 320 (2d Cir. 2011).

Phone calls can constitute overt acts in furtherance of a conspiracy. *See Rommy*, 506 F.3d at 120 ("It is beyond question that telephone calls can constitute overt acts in furtherance of a conspiracy."); *Smith*, 198 F.3d at 382; *United States v. Naranjo*, 14 F.3d 145, 147 (2d. Cir. 1994); *see also United States v. Christo*, 413 Fed. App'x 375, 376 (2d Cir. 2011) (stating that "the overt act can be something as simple as a phone call in furtherance of the conspiracy"). Moreover, it is not legally significant whether the defendant is the conspirator in the district where venue is being sought, or whether the defendant initiated or received the call. Indeed, phone calls into or out of a district can establish venue in that district so long as they further the ends of the conspiracy. *See Rommy*, 506 F.3d at 120 (venue proper based on calls from undercover government agent inside the venue to out-of-venue defendant); *Smith*, 198 F.3d at 382 (venue proper based on co-conspirator's calls from inside venue to victim outside of venue); *United States v. Friedman*, 998 F.2d 53, 57 (2d Cir. 1993) (venue proper based on out-of-venue conspirator's phone call to inside-venue conspirator, even though charges against inside-venue co-conspirator were later dropped).

With respect to the offense of wire fraud, 18 U.S.C. § 3237(a) states that "[a]ny offense involving the use of the mails [or] transportation in interstate or foreign commerce . . . may be inquired of and prosecuted in any district from, through, or into which such commerce [or] mail matter . . . moves." 18 U.S.C. § 3237(a). The Second Circuit has held that this statute applies when determining the appropriate venue for wire fraud offenses. *United States v. Kim*, 246 F.3d 186, 191-92 (2d Cir. 2001) (affirming the district court's conclusion that venue was proper in the district where wires were sent and received because "the act of causing a wire to be transmitted in furtherance of a fraud is criminalized by the statute, and . . . a wire is 'transmitted' both where it was sent and where it was received"); *United States v. Gilboe*, 684 F.2d 235, 239 (2d Cir. 1982) (finding phone calls to and from New York that defendant "caused," as well as transfer of proceeds of fraud through New York so that "such commerce" moved "from, through, or into" New York, pursuant to 18 U.S.C. § 3237(a), properly established venue).

6

Finally, for conspiracy to commit money laundering, venue lies wherever "an act in furtherance of the ... conspiracy took place" or "the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i).

Because "venue must be proper with respect to each count," the Court reviews each count separately. *Tzolov*, 642 F.3d at 318 (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989)).

3. Application

The jury found both Kenner and Constantine guilty of Count One, conspiracy to commit wire fraud. As set forth in the Superseding Indictment, Count One alleges that defendants conspired to commit wire fraud "within the Eastern District of New York and elsewhere." (Superseding Ind. ¶ 17).

With respect to the substantive crime of wire fraud, the jury also found Kenner guilty of Counts Two, Three, Four, and Seven, and Constantine guilty of Counts Two through Six. For these charges, the Superseding Indictment refers to multiple wire transfers that involved accounts in EDNY. For example, in Count Two, the Superseding Indictment alleges that there was a $30,000 wire transfer from an account at Wachovia Bank in Closter, New Jersey to John Kaiser's TD Bank account in EDNY, on or around February 12, 2009. (*Id.* ¶ 19; *see also* Tr. at 1047-48; GX-1603; GX-1721.) For Count Three, the Superseding Indictment alleges that on or about February 26, 2009, there was a $40,300 wire transfer from John Kaiser's account at TD Bank in EDNY to Kenner's account at Bank of America in Scottsdale, Arizona. (Superseding Ind. ¶ 19; *see also* Tr. at 1049-50; GX-1724; GX-1604.) For Count Four, the Superseding Indictment alleges that there was a $25,000 wire transfer from Kenner's account to Kaiser's account in EDNY on or about May 22, 2009. (Superseding Ind. ¶ 19; *see also* Tr. at 1050-51; GX-1727.) Testimony from Kaiser and Gaarn established that these transfers pertained to the Eufora fraud. (Tr. at 1045-51; 2501; 2629; 2632-33; *see also* GX-1603; GX-1604; GX-1721; GX-1724; GX-1727.)

For Count Five, the Superseding Indictment alleges that there was a $150,000 wire transfer from Privitello's account in EDNY to an account in California on or about December 7, 2009. (Superseding Ind. ¶ 19.) The Superseding Indictment also alleges that on or about that same date, there was a $50,000 wire transfer from Privitello's account in EDNY to an account in California, which provided the basis for Count Six. (*Id.*; *see also* Tr. at 1432-33, 1435, 1442-43; GX-208.1; GX-3302; GX-3306.) Privitello testified that he executed these two transfers for a 1.5 percent stake in Eufora. (Tr. at 1432-33, 1435.)

For Counts Seven and Eight, the Superseding Indictment alleges that Kenner devised and executed a scheme to purchase real property located in Sag Harbor on Long Island, New York (referred to as the "Led Better Scheme"). (Superseding Ind. ¶¶ 21-22.) According to the testimony of Shimon Betesh, an attorney who resides in Queens, New York, Kenner was a member of the Led Better Development Company LLC ("Led Better"). (Tr. at 635-36.) John Kaiser testified that he and other individuals sold a stake in the Sag Harbor property to Kenner and Led Better. (*Id.* at 998-1004; GX-1602.) Kenner, as a member of Led Better, transferred via wire $769,000 to Betesh's attorney escrow account in this District to purchase the property. (Tr. at 637-38.) Kenner acquired this money from lines of

credit from two investors, Michael Peca and Bryan Berard. (GX-2001; GX-2134.) He obtained this money without their consent. Indeed, Peca testified that he never authorized Kenner to transfer money to Led Better and understood that his line of credit would only be used for the Hawaii Project. (Tr. at 418-19.)

Both defendants were found guilty of conspiracy to commit money laundering, Count Nine. The Superseding Indictment alleges that defendants knowingly conspired to conduct transactions that involved the proceeds of wire fraud and the wire fraud conspiracy, and that such activity occurred within EDNY and elsewhere. (Superseding Ind. ¶ 30.)

a. The Three Schemes

Kenner argues that venue did not exist in EDNY. Generally, he alleges that he has only ever lived in Arizona, Hawaii, Nevada, California, and Utah, and that "over 95% of [his] business-related transactions had direct ties to Arizona." (ECF No. 668 at 13, 17.) In doing so, Kenner ignores the wire transfers that were initiated in EDNY and that support venue on each count in this case.

With respect to Count One, this Court previously explained that the conspiracy to commit wire fraud had three separate "objects"—the Hawaii Project, the Eufora investments, and the GSF. (ECF No. 501 at 48.) The evidence supports venue for each object of the conspiracy, as discussed below. Moreover, that same evidence also supports venue on each of the other counts of conviction.[4]

b. The Hawaii Project

Specifically, Kenner argues that no "transactions for the Hawaii investors occurred in the EDNY at any time." (ECF No. 668 at 9.) Indeed, he contends that the investors' attempts to recover their Hawaii Project loans from Jowdy occurred in Mexico, Nevada, Arizona, and California. (*Id.* at 7.)

The evidence supporting venue in EDNY on the conspiracy count related in part to Kenner's attempts to obtain investments for the Hawaii Project from individuals on Long Island. For example, Kenner spoke at length with Michael Peca—who was living in Huntington Bay, Long Island at the time—about investing in the Hawaii Project, and Peca eventually invested $100,000. (Tr. at 379-80.) Kenner's efforts to obtain Peca's investments included emails, phone calls, and in-person meetings on Long Island. (*Id.* at 375, 377.)

Similarly, Kenner sought to obtain investments from Ethel Kaiser and John Kaiser, who lived on Long Island. (*Id.* at 932-33, 975). These efforts included a request that John Kaiser provide a million-dollar loan for the Hawaii Project. (*Id.* at 975.) Although Kenner acknowledges that John Kaiser lived within EDNY, he incorrectly claims that he was never a victim of the crimes alleged. (ECF No. 668 at 28.)

Kenner also claims that Michael and Kristen Peca, as well as Ethel Kaiser, both lived upstate at the time of the transactions. (ECF No. 668 at 28-29.) Specifically, he claims that Ethel lived upstate, within the

---

[4] Although Kenner was acquitted of Counts Five, Six, and Eight, the Court has separately analyzed venue as to Constantine on Counts Five and Six (because he joined in Kenner's motion), and concludes that the evidence in the record, as discussed below, supports venue on those counts as they relate to Constantine's conviction.

8

Northern District of New York, full time. (*Id.* at 28.)

With respect to the Pecas, Kenner asserts that they left their Long Island home around April 2004, and Michael did not invest in the Hawaii Project until 2005. (*Id.* at 29.) He refers to a portion of Kristen Peca's testimony in which the government asks when the Pecas invested money in the Hawaii Project, to which she responded "2005, 2006. We were in Edmonton." (Tr. at 700.) Michael Peca testified, however, that he discussed the Hawaii Project with Kenner in 2003, when Peca was living on Long Island. (*Id.* at 377-82.) Specifically, he testified that the discussion happened during the hockey season, when he would have been on Long Island, and not during the off-season, when he would have been home in Buffalo. (*Id.* at 382.)

The government further correctly notes that Kenner relied on individuals, such as Chris Manfredi, to travel back and forth from Hawaii to Long Island to assist with the Hawaii Project. (ECF No. 752 at 2 (citing Tr. at 959).)

In addition, the evidence established that Kenner and Constantine used investment funds that were intended for the Hawaii Project for their own personal use on Long Island. Specifically, Kenner diverted funds from the lines of credit of two Hawaii Project investors to purchase the Sag Harbor property on Long Island, as set forth above. (ECF No. 752 at 2 (citing GX-Chart-8).) With respect to Constantine, the government presented evidence that demonstrated that he used the Hawaii Project funds to, *inter alia*, customize a race car on Long Island. (Tr. at 2694-97.)

c. The Eufora Objective

Kenner makes the same claim with respect to the Eufora funds, namely, that none of the investors had any ties to EDNY. (*Id.* at 12.) He acknowledges that Privitello resided in EDNY (*id.* at 28), and that Privitello was a "potential Eufora investor in the EDNY," but that Privitello only communicated with Kaiser and Constantine and not Kenner, (*id.* at 31). Additionally, Kenner highlights that he was acquitted of the two counts that involved transactions with Privitello. (*Id.* at 31.)

Evidence in the trial record demonstrates that multiple witnesses testified that they spoke with Kenner and Constantine in person, through email, and over the phone, about investing in Eufora, some of which took place in this District. For example, Ethel Kaiser testified that Kenner asked her to make a loan, and that after speaking with Constantine while she was at home on Long Island, she invested $70,000 into Eufora from her Roslyn, Long Island bank account. (Tr. at 935-36, 948, 950.)

Moreover, the government presented evidence that both defendants sought investments for Eufora from individuals on Long Island and thereafter diverted money from Eufora "through and to bank accounts on Long Island." (ECF No. 752 at 3 (citing Tr. at 1045-51).) As noted above, with respect to Count Four, Kenner transferred $25,000 to Kaiser's account in this District, which was related to the Eufora scheme. (Tr. at 1050-51; GX-1727.)

For Counts Five and Six, Privitello testified that he executed two transfers from his account in this District for a 1.5 percent stake in Eufora. (Tr. at 1432-33, 1435.)

#### d. The GSF Objective

With respect to the Global Settlement Fund, Kenner reiterates his claim that "none of the GSF contributors or any of the GSF transactions touched the EDNY at any time." (ECF No. 668 at 9.)

The government responds that Kenner and Constantine diverted funds intended for the GSF to Kenner's tequila company. Thereafter, Kenner sent sample tequila bottles to Kaiser's home on Long Island. (Tr. at 1084.)

The government cites numerous instances in which Kenner and Constantine communicated with investors from Long Island, "to maintain their investor relationships and forge new ones." (ECF No. 752 at 3.)

In sum, the Court agrees with the government and concludes that there was sufficient evidence to support a finding, by a preponderance of the evidence, that the telephone calls, emails, and wire transfers that involved individuals on Long Island were in furtherance of the fraud and the conspiracy. The testimony from the trial demonstrates that Kenner had multiple calls with victims of the frauds, and the victims wired funds when they resided on Long Island.

Furthermore, the record demonstrates that Kenner, as member of Led Better, wired funds to an account within EDNY to purchase property on Long Island. Although the wire transmission alleged in the Superseding Indictment for Count Seven involved a transfer to and from Arizona accounts, the evidence established that the Led Better scheme also included a transfer of $769,000 to Shimon Betesh in EDNY to complete the purchase of the Sag Harbor property. (Tr. at 637-38; GX-1401.) Given that venue is proper in a wire fraud case under § 3237(a) "in any district in which such offense was begun, continued, or completed," *Kim*, 246 F.3d at 191, the Court finds that this transfer supports venue since it continued and completed the scheme. Therefore, the communications and wire transfers outlined here—as well as the closing of the Sag Harbor property that occurred on Long Island (Tr. at 4109)—were means to further the crime in Count Seven.

In addition, the Court concludes that there was sufficient evidence to support a finding that Kenner knew that the communications and wire transfers were taking place in New York or, at the very least, it was reasonably foreseeable to him. *See Rommy*, 506 F.3d at 123 ("[T]he law does not require a defendant to have actual knowledge that an overt act will occur in a particular district to support venue at that location. At most, it asks that the overt act's occurrence in the district of venue have been reasonably foreseeable to a conspirator."). Here, Kenner knew where Kaiser lived, as Kaiser showed a photograph of Kenner at Kaiser's daughter's christening. (Tr. at 1013-14.)

Thus, looking at the record in the light most favorable to the government, the Court finds that the government demonstrated "substantial contacts" with the District, on each count of conviction, pursuant to *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985). Accordingly, it was not unfair or prejudicial for the defendant to be tried in EDNY. *See, e.g., Tzolov*, 642 F.3d at 321 (rejecting argument that defendant's flights out of JFK Airport did not satisfy the "substantial contacts" rule from *Reed*); *see also United States v. Abdallah*, 840 F. Supp. 2d 584, 596-603 (E.D.N.Y. 2012) (finding venue proper based on one telephone call that

occurred in the district), *aff'd*, 528 F. App'x 79 (2d Cir. 2013).

Accordingly, Kenner's venue challenge is without merit.[5]

## IV. VARIANCE

Kenner next claims that the evidence produced at trial constructively amended the Superseding Indictment. Specifically, Kenner argues that the Superseding Indictment identified Timothy Gaarn as a co-conspirator, but he did not identify himself as such at trial.

### 1. Legal Standard

The Fifth Amendment grants defendants the right to be tried only on charges contained in an indictment returned by a grand jury. "An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively." *United States v. Clemente*, 22 F.3d 477, 482 (2d Cir. 1994); *see United States v. Mucciante*, 21 F.3d 1228, 1233 (2d Cir. 1994) ("Even if an indictment is not *actually* amended, the law recognizes that there are times when the government's presentation of evidence, together with the trial court's jury instructions, creates an unacceptable risk that the jury might convict the defendant of a crime materially different from the one alleged in the indictment.").

An indictment has been constructively amended "when the government's presentation of evidence and the district court's jury instructions combine to 'modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.'" *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996) (quoting *Clemente*, 22 F.3d at 482).

An amendment of the indictment differs from a variance in important ways. "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *United States v. Frank*, 156 F.3d 332, 338 n.5 (2d Cir. 1998). By contrast, "[a] *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* (quoting *United States v. Zingaro*, 858 F.2d 94, 98 (2d Cir. 1988)). The most significant difference between a variance and a constructive amendment is that the latter is a *per se* violation of the Fifth Amendment, whereas "a defendant must show prejudice in order to prevail on a variance claim." *Id.* A defendant fails to show that he has been prejudiced by the variance when "the allegation and proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *Mucciante*, 21 F.3d at 1236 (citation and internal quotation marks omitted).

"To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence . . . which so

---

[5] The Court reaches the same conclusion as to Constantine on his separate counts of conviction. Obviously, this analysis applies equally to Constantine as to counts on which both he and Kenner were convicted.

11

modif[ies] *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (internal quotation marks omitted).

Importantly, the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992) (internal quotation marks omitted).

2. Application

Kenner claims that there was a prejudicial variance relating to the Eufora conspiracy and Gaarn's role as a co-conspirator. (ECF No. 668 at 36.) In essence, Kenner claims that, although the Superseding Indictment accused Gaarn of wrongdoing, in that "Kenner directed Timothy Gaarn to divert certain money for unauthorized purposes," (Superseding Ind. ¶ 13), Gaarn testified that his nonprosecution agreement with the government meant that he was not accused of committing a crime. (*See* ECF No. 668 at 36.)

In response, the government asserts that these facts do not constitute a variance, and, in any event, Kenner suffered no prejudice. (ECF No. 681 at 2-3.) The government argues that, even though Gaarn did not indicate that he was a co-conspirator at trial, the "jury could have reasonably concluded, based on the bank records and testimony," that he was. (*Id.*) The government contends that the indictment and the proof presented at trial "substantially corresponded" given that the proof established that Kenner did direct Gaarn to divert funds for unauthorized purposes. (*Id.*) Moreover, the government claims that Kenner suffered no prejudice because he was aware that "Co-Conspirator 1" referred to Gaarn. (*Id.* at 3.)

The Court agrees with the government in that Gaarn's failure to identify himself as a co-conspirator did not mislead Kenner at the trial. In addition, the proof presented at trial demonstrated that Gaarn was in fact a co-conspirator, and such an omission did not "deprive [Kenner] of his right to be prosecuted against another prosecution for the same offense." *See Mucciante*, 21 F.3d at 1236. Moreover, "the identity of one's co-conspirators is not an essential element of the offense charged." *United States v. Lucas*, 395 F. Supp. 3d 241, 252 (W.D.N.Y. 2019); *see also United States v. Dove*, 884 F.3d 138, 147 (2d Cir. 2018) (finding that the district court's failure to include four of the five co-conspirators' names in the jury charge "did not constructively amend the indictment because the government did not have to prove the identities of those named in order to secure a conviction").

Therefore, the Court concludes that no constructive amendment or variance occurred, and, even if a variance did occur, there was no prejudice to Kenner.

V. KENNER'S RULE 33 MOTION

1. Legal Standard

Kenner seeks reconsideration of his Rule 33 motion. "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Black v. Diamond*, 163 F.

App'x 58, 61 (2d Cir. 2006) ("To merit reconsideration, a movant must point to law or facts overlooked by the court in its initial ruling."); *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 97–cv–6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4, 2006 WL 355137 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

2. Application

Kenner seeks reconsideration of his Rule 33 motion, which this Court denied on October 11, 2017. He claims that his Rule 33 motion should be granted based on, *inter alia*: (1) newly discovered evidence; (2) *Brady* violations; (3) prosecutorial misconduct; and (4) cumulative prejudice. (ECF No. 668 at 6.)

The Court has considered Kenner's arguments, and, for the reasons stated in its October 11, 2017 Order, finds them to be without merit. Kenner has not presented any "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. In essence, in his massive submissions, Kenner continues to try to attack the credibility of the witnesses and the government's conduct, and re-litigate the findings made by the jury. Kenner has failed to point to any new evidence that undermines the determinations made by the jury after it had a full and fair opportunity to evaluate all of the evidence, including the credibility of the witnesses, and the arguments of both sides. Moreover, Kenner has failed to demonstrate that the government violated any of its discovery obligations or engaged in any prosecutorial misconduct during the trial or at any stage of the case. In short, the Court has considered all of Kenner's arguments and finds them to be without merit. Therefore, the Court denies his motion.

CONCLUSION

For the foregoing reasons, the Court denies Kenner's motion pursuant to Rule 29 and his motion for reconsideration of his Rule 33 motion. Moreover, Kenner's Section 2255 petition for ineffective assistance of counsel is premature and denied without prejudice. *See Re v. United States*, No. 14-CR-550 (PKC), 2016 WL 9022577, at *1 (S.D.N.Y. June 20, 2016) ("Although there is no jurisdictional bar to adjudicating a § 2255 motion while the direct appeal is pending, a § 2255 motion filed before the movant has exhausted a direct appeal is generally considered premature.").[6]

SO ORDERED.

S/ JOSEPH F BIANCO

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: December 3, 2019
Central Islip, NY

\*\*\*

The United States is represented by Assistant United States Attorneys Saritha Komatireddy and Matthew Haggans of the United States

---

[6] For the reasons previously set forth on the record on September 5, 2019—including avoiding additional delay in this case—the Court, in its discretion, also declines to consider Kenner's ineffective assistance claims at this time under Rule 33 of the Federal Rules of Criminal Procedure. *See United States v. Brown*, 623 F.3d 104, 114 (2d Cir. 2010). The Court concludes, under the particular circumstances of this case, that those claims should be addressed on collateral review.

Attorney's Office for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201.

Defendant Phillip A. Kenner is proceeding *pro se*.

Defendant Tommy C. Constantine is represented by Sanford Talkin of Talkin, Muccigrosso & Roberts LLP, 40 Exchange Place, 18th Floor, New York, New York 10005; and by Michael Morrissey of Mitchell Stein Carey P.C., One Renaissance Square, 2 North Central Ave., Suite 1900, Phoenix, Arizona 85004.