

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

December 20, 2019

Honorable Joseph F. Bianco
United States Circuit Judge
Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

      Re:    <u>United States v. Kenner and Constantine</u>
             No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

      This letter is respectfully submitted pursuant to the Court's December 6, 2019 directive to address the following forfeiture related questions: (1) whether certain frauds, namely, the Los Frailes ("Frailes"), Diamante Del Mar ("Del Mar"), and line of credit frauds, were not reasonably foreseeable to Defendant Tommy Constantine ("Constantine"), and, thus, would require a reduction in the proposed forfeiture money judgment against Constantine; and (2) whether Defendant Phillip Kenner's ("Kenner") forfeiture liability for the Frailes, Del Mar and Palms frauds should be limited to the amount of proceeds traceable to those frauds; as well to address the following forfeiture related question that was raised by Kenner during the December 6, 2019 conference: whether the forfeiture regarding the line of credit money stolen from victim Owen Nolan ("Nolan") by Kenner to fund the purchase of the Diamante Cabo San Lucas resort ("DCSL") should be limited because of a purported settlement between Kenneth Jowdy ("Jowdy") and Nolan as to those funds. *See* Transcript, dated December 6, 2019 ("December 6, 2019 TR"), attached hereto as Exhibit A, at pp. 18-26. For the reasons discussed below, the full amount of the forfeiture the government seeks against each defendant in this case is appropriate.

      A.    <u>**The Foreseeability of Certain Frauds to Constantine**</u>

      The Court asked the government to address whether certain frauds, namely, the Frailes, Del Mar, and line of credit frauds, were reasonably foreseeable to Constantine. December 6, 2019 TR at pp. 22-24. As a preliminary matter, Constantine failed to raise the argument that these frauds were not reasonably foreseeable to him in his memorandum of law in opposition to the government's forfeiture motion. Rather, Constantine argued that he was not "involved in" and did not "receive[]" or "acquire" any money from those frauds, and, therefore, according to Constantine, pursuant to *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), he should not be held jointly and severally liable for the proceeds "obtained" from those frauds. *See* Constantine's Memorandum of Law in Response to the Government's Motion for Entry of an Order of Forfeiture ("Constantine's Forfeiture Opposition"), DE 599, at pp. 5-8, 12-13. However, as the government asserted in its reply memorandum of law, and argued during the

1

forfeiture oral argument on March 1, 2019, Constantine, as a mastermind and ringleader of the conspiracies, obtained the proceeds of the frauds, directly or indirectly, and consequently should be held liable for the full amount of proceeds. *See* Government's Reply Memorandum of Law in Further Support of Entry of an Order of Forfeiture ("Government's Reply Memorandum"), DE 607, at p. 8 & n.6; Transcript of Oral Argument on March 1, 2019 ("Oral Argument Transcript"), attached hereto as Exhibit B, at pp. 5-11.

Subsequent to the submission of the Government Reply Memorandum on January 11, 2019, and the forfeiture oral argument held on March 1, 2019, the Second Circuit decided the case of *United States v. Tanner*, 942 F.3d 60 (2d Cir. 2019). The defendants in *Tanner* had been ordered by the district court "to forfeit $9,703,995.33 each rather than jointly and severally, for an approximate total of $19.4 million." *Id.* at 67. The Second Circuit held that the district court erred in holding each defendant liable for the full amount of the proceeds, as it would require the defendants to forfeit, collectively, twice the amount of proceeds obtained from their scheme. *Id.* The Second Circuit recognized, however, that the "bar against joint and several forfeiture for co-conspirators," pursuant to *Honeycutt*, 137 S. Ct. at 1630, "applies only to co-conspirators who never possessed the tainted proceeds of their crimes," and, thus, "when each co-conspirator acquired the full proceeds as a result of the crime, each can still be held liable to forfeit the value of those tainted proceeds, even if those proceeds are no longer in his possession." *Tanner*, 942 F.3d at 67-68 (citation and internal quotation marks omitted). In sum, the Second Circuit drew a distinction between joint and several co-conspirator liability, in which a defendant is "held jointly and severally liable for property that his co-conspirator derived from the crime but that *the defendant himself did not acquire*," and ordinary joint and several liability, in which a defendant is held jointly and severally liable for the property that *he* acquired. *Id.* at 68 (citation and quotation marks omitted).

In this case, Kenner and Constantine should each be held liable for the full proceeds and, therefore, the imposition of joint and several co-conspirator liability is not necessary. *See* Government's Reply Memorandum, DE 607, at p. 8 n.6. The government sought to hold each defendant individually liable for the full proceeds, because each defendant obtained the full amount of proceeds, directly or indirectly, as a mastermind of the wire fraud and money laundering conspiracies. The government intended to provide each defendant with a credit or offset for any amount forfeited from the other defendant so as to prevent a double forfeiture recovery. As such, the money judgments that the government sought would have been the functional equivalent to the money judgments that the Second Circuit endorsed in *Tanner*, which hold defendants jointly and severally liable for the full amount of proceeds that they acquired. However, since the Second Circuit stated that the type of judgment that the government seeks against the defendants in this case should be in the form of joint and several liability, rather than individual liability with a credit/offset for co-defendant payments, the government submits revised proposed preliminary orders of forfeiture that conform to *Tanner*, attached hereto as Exhibit C.[1]

---

[1] The revised proposed preliminary orders of forfeiture attached hereto as Exhibit C also contain the language the Court directed the government to include regarding the potential forfeiture of equity interests in DCSL.

The absence of any discussion of "reasonable foreseeability" in the Second Circuit's decision in *Tanner* is also notable. It can be inferred from the Circuit's decision that because the defendant in *Tanner* was not a "mere intermediary," but rather was "an active participant in the unlawful activity," who "acquired the full proceeds as a result of the crime," there was no reason to discuss whether the proceeds were reasonably foreseeable to the defendant, unlike in the context of joint and several *co-conspirator* liability, where a defendant is being held liable for proceeds that he did *not* personally obtain, and thus the reasonable foreseeability of those proceeds would be a concern. *Tanner*, 942 F.3d at 68 (citation and internal quotation marks omitted). Here, too, the reasonable foreseeability of the proceeds is not an issue because *both* defendants were the masterminds of their crimes, and obtained, directly or indirectly, the full proceeds of their crimes. *See United States v. Bangiyev*, 359 F. Supp. 3d 435, 440 (E.D. Va. 2019) (stating that "*Honeycutt* bases its reasoning on drawing a distinction between a mastermind who controls the criminal operation and a lower figure who only has access to and control over the smaller amount of tainted property directly in his possession"; "Picking up on this distinction, lower courts have declined to apply *Honeycutt* in cases where the defendant held a position of control in the criminal operation."), *aff'd*, 771 F. App'x 328 (4th Cir. 2019); *United States v. Ward*, 2017 WL 4051753, at *3 (W.D. Mich. Aug. 24, 2017) (holding post-*Honeycutt* that because the defendant was the mastermind of the drug conspiracy, he indirectly obtained the proceeds of the whole conspiracy; "Although the Government did not establish that Defendant directly obtained the [full amount of the conspiracy's proceeds], the statute does not require the Government to do so."), *report and recommendation adopted*, 2017 WL 3981160 (W.D. Mich. Sept. 11, 2017), *aff'd*, 757 F. App'x 507 (6th Cir. 2019); *S.E.C. v. Metter*, 706 F. App'x 699, 702 n.2 (2d Cir. 2017) (summary order) (distinguishing between a defendant who controlled the enterprise, and, thus, could be held liable for all proceeds obtained from the fraud, and "incidental figures," whose "role in the offense" would not justify holding them liable for all proceeds obtained from the offense).

Assuming *arguendo* that the Court were to address the issue of reasonable foreseeability, the proceeds obtained from the Frailes, Del Mar, and line of credit frauds were undeniably foreseeable to Constantine because the Frailes, Del Mar and line of credit frauds fit squarely within Kenner and Constantine's scheme. Given that Kenner and Constantine's scheme was to tell victims that their money would be invested in Eufora, the Global Settlement Fund, and real estate in Hawaii, and then divert the victims' money to fund the purchases of various other real and personal properties for the benefit of Kenner and Constantine, it was unquestionably foreseeable to Constantine that the Del Mar and Frailes real properties would be purchased with stolen victim funds, and that money from the investor victims' lines of credit, which were established to fund the Hawaii real estate project, would be diverted to purchase real and personal properties for the benefit of the defendants. Moreover, to the extent these frauds were committed primarily by Kenner -- Constantine's mastermind partner in crime -- the execution of these frauds in furtherance of their conspiracy was certainly foreseeable to Constantine. *See United States v. Bonventre,* 646 F. App'x 73, 90 n.16 (2d Cir. 2016) (summary order) (affirming district court's finding that the defendant was jointly and severally liable for the gross proceeds generated by a Ponzi scheme because the defendant's clients' investments were reasonably foreseeable to the defendant, even though the defendant argued that he did not have any contact with the clients and his participation in the conspiracy "was limited to writing computer programs"); *United States v. Lyons*, 870 F. Supp. 2d 281, 292 (D. Mass. June 29, 2012) (finding

3

that "the proceeds generated by [a gambling enterprise's] agents and bettors known to a defendant were reasonably foreseeable to that specific defendant."); *United States v. Coleman Commercial Carrier, Inc.*, 232 F. Supp. 2d 201, 204 (S.D.N.Y. 2002) ("Given the central role [the defendant] played in the conspiracy, this Court finds, by a preponderance of the evidence, that it was reasonably foreseeable to him that other members of the conspiracy would reap proceeds accounting for the balance of the $1 million the government seeks to have forfeited.").

### B. Kenner's Forfeiture Liability for the Frailes, Del Mar and Palms Frauds Should Not Be Limited

As discussed *supra*, the government seeks forfeiture of the gross proceeds traceable to defendants' wire fraud and wire fraud conspiracy, as well as the property involved in or traceable to defendants' money laundering conspiracy. The government demonstrated that the Frailes, Del Mar and Palms properties had the requisite nexus to defendants' wire fraud, wire fraud conspiracy and money laundering conspiracy offenses, *i.e.*, the proceeds of the frauds proven at trial have been traced to these properties, and these properties were involved in defendants' money laundering conspiracy crime of conviction. *See* Government's Memorandum of Law in Support of Entry of an Order of Forfeiture ("Government's Forfeiture Memorandum"), Docket Entry ("DE") 401 at pp. 28-52. Kenner argues that because only a portion of the proceeds is traceable to these properties, it is disproportionate to seek a forfeiture money judgment against him for the legitimate investment funds that are also traceable to these properties; however, Kenner's argument is untimely, and, more importantly, is unsupported by the law. *See* December 6, 2019 TR at pp. 22, 24-25.

First and foremost, assuming *arguendo* that Kenner is raising an Eighth Amendment challenge to the forfeiture, such a challenge must be raised at sentencing, after the Court enters a preliminary order of forfeiture. *See United States v. Vico*, 2016 WL 233407, at *8 (S.D. Fla. Jan. 20, 2016) (rejecting Eighth Amendment challenge to forfeiture during the forfeiture phase of the criminal trial because an excessiveness challenge is appropriately raised at sentencing after the court enters a preliminary order of forfeiture), *aff'd*, 691 F. App'x 594 (11th Cir. June 23, 2017); *United States v. Tedder*, 2003 WL 23204849, at *6 (W.D. Wis. July 28, 2003) (challenges to a criminal forfeiture on Eighth Amendment grounds are premature until the court enters a preliminary order of forfeiture); *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 207-08 (D.D.C. 2014) (Eighth Amendment challenge is premature until forfeitability is determined and forfeiture order is entered; denying motion to dismiss on Eighth Amendment grounds).

Moreover, forfeiture of the property involved in the money laundering in this case is not excessive. In *United States v. Bajakajian*, the Supreme Court held that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." 524 U.S. 321, 334 (1998). The Supreme Court stated that a forfeiture is unconstitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* Although *Bajakajian* did not provide a test for gross disproportionality, the Second Circuit has interpreted *Bajakajian* as requiring courts to consider four factors: "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct."

4

*United States v. Viloski*, 814 F.3d 104, 110 (2d Cir. 2016) (citation and quotation marks omitted).

Here, with regard to the first factor, Kenner and Constantine's "willful participation" in "a multi-year conspiracy involving repeated instances of money laundering [and] wire fraud . . . is sufficient to support the forfeiture." *Id*. at 113. As to the second factor, Kenner and Constantine's conduct "fits squarely within the class of persons for whom the federal mail- and wire-fraud and money-laundering statutes were designed—namely, those who use facilities of interstate or foreign commerce to engage in fraudulent schemes and financial transactions and then seek to conceal or disguise the nature of the proceeds of the fraud." *Id*. at 114.

As to the third factor, defendants' estimated sentencing guideline ranges are at or near the top of the Sentencing Table for offenders with their criminal histories. In addition, the maximum fine for money laundering is twice the value of the property laundered. *See United States v. Garza-Gonzalez*, 512 F. Appx. 60, 67 (2d Cir. Feb 21, 2013) (quoting 18 U.S.C. §§ 1956(a)(1) and (h)). In *Garza-Gonzales*, the Second Circuit affirmed the district court's forfeiture money judgment in the amount of $29,505,265, holding that because the defendant "used his perfume business to conceal the fact that he was laundering the proceeds of drug transactions, . . . the district court did not err in viewing the business's cash receipts during the period in question as 'property . . . involved in' [the defendant's] conspiracy to violate § 1956." *Id.* Notably, only $7 million in drug money was included in the total $29,505,265 cash receipts, and, thus, the untainted property was more than three times the value of the proceeds laundered. *Id.* Further, even though the defendant was not subjected to a fine, the Second Circuit recognized that his potential to be fined twice the amount of the property involved in the laundering was enough to justify the forfeiture. *Id.* ("Had [the defendant] been subject to a fine instead of forfeiture, the fine for Count Two could have been twice that amount. . . In light of the statutory scheme and the above factors, it is clear to us[] that the money judgment here did not violate the Eighth Amendment.").

Lastly, as to the fourth factor, which addresses the nature of the harm caused by the defendants' conduct, Kenner and Constantine defrauded multiple investors of millions of dollars through their money laundering and wire fraud crimes and conspiracies. In sum, all four *Bajakajian* factors support the proposed forfeiture money judgment regarding the Frailes, Del Mar and Palms properties -- including the amount attributable to the legitimate investment funds that were commingled with the proceeds in, and facilitated, the money laundering transactions -- as properties traceable to defendants' wire fraud and wire fraud conspiracy, and involved in or traceable to defendants' money laundering conspiracy. *See also United States v. Aguasvivas-Castillo*, 668 F.3d 7, 16-17 (1st Cir. 2012) (the forfeiture of $20 million, approximately three-fourths of which comprised untainted funds forfeited under the facilitation theory, was not grossly disproportional to the gravity of a $4.4 million food stamp fraud offense); *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir. 1999) (forfeiture of a $4 million business used to facilitate money laundering offense was not grossly disproportional to an offense involving only $175,000; Eighth Amendment analysis looks not just to the value of the forfeited property in comparison to the amount laundered, but to the scope and duration of the scheme, the harm caused, and the relationship of the property to the scheme); *United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995) (forfeiture of entire amount laundered even though defendant retained only a fraction as his commission is not excessive because it is "quite rational based on a proportionality analysis").

### C. The Purported Settlement Between Nolan and Jowdy Does Not Alter the Forfeiture Sought by the Government

During the conference on December 6, 2019, Kenner raised the argument that the forfeiture the government seeks regarding DCSL should be reduced because the $350,000 that the government traced from Nolan's line of credit to the purchase of DCSL was, in sum and substance, addressed by a settlement agreement between Nolan and Jowdy. December 6, 2019 TR at pp. 18-21. As an initial matter, Kenner has not provided evidence of any such settlement agreement or proof that it has any relevance to the Hawaii investment fraud. In any event, Kenner's argument misses the point. In this case, the government seeks forfeiture of the gross proceeds traceable to defendants' wire fraud and wire fraud conspiracy, as well as the property involved in or traceable to defendants' money laundering conspiracy. With respect to defendants' wire fraud and wire fraud conspiracy offenses, defendants are required to forfeit the gross proceeds of those offenses. Therefore, if the government were seeking a forfeiture money judgment for the amount of proceeds that were traced to the purchase of DCSL, defendants would not be entitled to an offset for any amount of money that may have been repaid to Nolan in a settlement with Jowdy. *See* Government's Forfeiture Memorandum, DE 401 at pp. 5-6; *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008) (forfeiture in mail and wire fraud case based on § 981(a)(1)(C) and § 2461(c) is not limited to the net gain or profit (citing § 981(a)(2)(A)); *United States v. Sigillito*, 899 F. Supp. 2d 850, 865 (E.D. Mo. 2012) (defendant in an investment fraud scheme must forfeit the gross amount he took from investors, without credit for his use of the later investments to pay the early investors; 981(a)(2)(A) applies because the scheme was entirely unlawful); *United States v. Nicolo*, 597 F. Supp. 2d 342, 347 (W.D.N.Y. 2009) (finding that "a defendant may be ordered to forfeit all monies received by him as a result of the fraud, regardless of his net profits from the scheme" (citing *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009))).

However, because the proceeds of the wire fraud and wire fraud conspiracy, including, but not limited to, Nolan's line of credit funds, were laundered to fund the purchase of DCSL, DCSL is forfeitable in its entirety as property that was involved in and traceable to defendants' money laundering conspiracy. As such, the government is seeking the forfeiture of DCSL in its entirety, rather than a forfeiture money judgment for the proceeds that were traced to the purchase of DCSL.[2] Indeed, when calculating the forfeiture money judgment, the government excluded the funds that were traced to the purchase of DCSL to prevent double counting. *See* Government's Forfeiture Memorandum, DE 401 at p. 55 n.9. Even if the Court were to disregard the funds that were stolen from Nolan's line of credit in determining whether DCSL is forfeitable, the resort would nevertheless be forfeitable as property involved in money laundering because the government presented evidence that proceeds from several other sources were traced to the purchase of DCSL. *See* Government's Forfeiture Memorandum, DE 401 at pp. 20-27. For these reasons, Kenner's argument that Nolan's $350,000 line of credit funds should reduce the forfeiture is inapposite.

---

[2] The government respectfully requests a forfeiture money judgment for the amount of proceeds that were traced to the purchase of DCSL only in the event that the Court does not order the forfeiture of DCSL in its entirety as property involved in and traceable to defendants' money laundering conspiracy.

6

      In conclusion, the full amount of the forfeiture the government seeks against each defendant in this case is appropriate, and the government respectfully requests that the Court enter the proposed Preliminary Orders of Forfeiture that are attached hereto as Exhibit C.

      Respectfully submitted,

      RICHARD P. DONOGHUE
      United States Attorney

By:    /s/ Madeline O'Connor
      Madeline O'Connor
      Diane C. Leonardo
      Assistant U.S. Attorneys
      (631) 715-7870
      (631) 715-7854

cc: Philip Kenner
    All counsel of record by ECF