December 9, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

### Berard admits CTE and corresponding litigation pre-EDNY trial
### (Yet -- undisclosed by the government as a crucial "*memory*" witness) [1]

Your Honor,

As the Court knows, the government raised the issue of *faulty memory, confusion and mistakes* for the first (1st) time post-trial (*ECF No. 440 at 16*).  The government raised it during its defense of the synchronized testimony by its trial witnesses that universally contradicted the entirety of their own Rule 16, pre-trial empirical evidence.  Kenner addressed this, yet unresponded in *ECF No. 773*.
- See "*Berard CTE -- Chronology of events*" *(Ex.B)*
- See "*Nolan CTE -- Chronology of events*" *(Ex.D)*

If the government was presenting an individual with Alzheimer's as a material witness to testify to "*what they remember they were never told*", the credibility of testimony presented thru a "*memory test*" witness would be significantly diminished, **if allowed at all**, for value and reliability if the Court and jury were told the person was suffering from CTE-Alzheimer's symptoms.[2]   To further the known cover-up – the witnesses were actively participating in a class action lawsuit *with over 300 other former NHL players* to recover damages for those specific symptoms.

---

[1] At sentencing, "the Court is virtually unfettered with respect to the information it may

[2] The primary symptoms of **CTE** have been described by neurological experts (including Dr. Ann McKee) at Boston University's Neurological Center as:
> *CTE, a catastrophic disease first associated with boxers long ago, results when a toxic protein, Tau, accumulates in the brain, kills brain cells, and leads to symptoms such as cognitive dysfunction, **memory loss**, sleeplessness, depression, diminished impulse control, episodes of anger, and dementia, among others. Until recently, CTE could only be confirmed through an autopsy. **Tau proteins are released whenever a concussion occurs**.*

- Nine of the 12 alleged superseding indictment victims are former NHL hockey players, wholly exposed to **CTE** issues thru repeated concussions and sub-concussive hits over decades.

1

> CASE 0:14-md-02551-SRN-BRT   Document 28   Filed 10/20/14   Page 1 of 118
>
> UNITED STATES DISTRICT COURT
> DISTRICT OF MINNESOTA
>
> IN RE NATIONAL HOCKEY PLAYERS' )   MDL No. 14-2551 (SRN/JSM)
> CONCUSSION INJURY LITIGATION   )
> _____ )   PLAINTIFFS' MASTER
>                                 )   ADMINISTRATIVE LONG-FORM AND
> The Document Relates to:        )   CLASS ACTION COMPLAINT
>                                 )
>    ALL ACTIONS                  )
> _____ )

- ***The government hid that crucial information about all their witnesses at trial.  Even one admission would have led to a myriad of cross-examination determinations about self-confessed cognitive degeneration – and the request to present expert testimony about CTE symptoms.***

As the Court is aware in *Bell v. Miller*, 500 F.3d 149 (2nd Cir – 2007), the Court ordered a new trial (under a *28 U.S.C. 2255* ruling) simply because the defense attorney failed to investigate the "memory loss" issues related to a crucial government witness with an expert of their own. Here, only "*memory*" witnesses were presented, consistently testifying to recollections in direct contrast to their-own empirical evidence and real-time actions, all in Rule 16 production.  In *Bell*, the Court was not moved by the fact that the defense attorney had cogently cross-examined the witness' memory issues and their doctors testimony related to the trauma; akin to the **CTE** issues previously raised by defendant Kenner following the government's *faulty memory, confusion and mistakes* defense of the monumental-inconsistent testimony given by every government witness (*ECF No. 440 at 16*).  The instant case is inundated by this crucial issue; and now publically revealed by Bryan Berard about his Plaintiff participation in the 2014 class-action lawsuit for **CTE** versus the NHL (concealed by a knowing government of their star witness).

*The testimonial inconsistencies were dynamic; both multifaceted and artless...*
Their witnesses' testimonial contradictions included but were not limited to: (1) SDNY Grand Jury testimony, (2) FBI proffers, (3) civil testimony, (4) signed banking records, (5) independent-signed attorney disclosure, and (6) affidavits all "*under oath*" (in the government's 3500 production).   **In addition**, the same witnesses actively participated as a group of individual Plaintiffs in multiple litigation efforts, in multiple jurisdictions (including Mexico), regarding the recovery efforts for the

unpaid loans to Ken Jowdy (a government-proclaimed non-party to this instant case).   In direct contradiction, each one of the government witnesses failed in their ability to recall those specific facts -- *years later (akin to Alzheimer's symptoms)*.

- The various Plaintiffs' independent litigation participation included signing off on detailed disclosure statements with their various private attorneys in each respective litigation effort, up to six years *prior* to trial; and long before their synchronized *faulty memory, confusion and mistakes (Bates stamp: ED-002445-56 and BX20-SD-857-870 – recovered two times by the government and ignored)*.

**Authorized transactions** *(simply not remembered by passive equity investors)…* During the March 9, 2016 forfeiture hearing, the Court asked the government:

"*Why wouldn't the Court just determine what money went from Hawai'i to the entity that was unauthorized and order that amount or percentage forfeited?*"

That is the statutory requirement of forfeiture; *separating the criminal from their "ill-gotten" gains*.

- The Appellate Court in the recent *Shkreli* (18-cr-819) decision opined, "Criminal forfeiture focuses on the disgorgement by a defendant of his ill-gotten gains"; *United States v. Contorinis*, 692 F.3d at 146; *United States v. Torres*, 703 F.3d 194, 203 (2nd Cir 2012), "'Forfeiture is gain based'.  It is not based on the losses to victims" (appellate order at 6-7).

The government has been grandstanding for 4-years since trial that they need to forfeit the Kenner Baja Ventures 2006 LLC equity (echoing their summation lies that "*Kenner stole all of the money and bought his Cabo equity with it*" -- *Tr.5996, 5711, 5722-23, 5744-45, 5990, 5991-92, 5707-5709*).   That was never true.   Kenner never stole any of the Hawai'i funds.   The government confirmed this during their forfeiture hearing, specifically when IRS agent Galioto confirmed to the Court that Ken Jowdy, himself, verified 100% of the Kenner-Baja Ventures 2006 capital account originated from Kenner's two (2) partners, Jozef Stumpel and Jere Lehtinen, *infra*.   Their prosecutorial theory was that 4 of the 26 Hawai'i partners – *who are all governed by passive-equity agreements* -- *could not remember* whether or not they were told about specific facts they all previously confirmed, years before trial (*or testified they 'did not read' because they trusted Kenner – who followed the operating agreement, as required*).

- No funds were distributed to Kenner; illegally or otherwise (*a.k.a. no ill-gotten funds*).

3

*The government "**traced the money**" (post-trial) – but did not like what they found (after alleging for 3-months of trial that Kenner stole it)…*

- **Their-own evidence (***government-forfeiture-36 and government-forfeiture-44***) confirmed that Kenner *neither* stole the money from Hawai'i, *nor* used it to buy his Cabo equity**.

In fact, IRS agent Wayne explained to the Court during the March 9, 2016 forfeiture hearing that Kenner's 2-European partners (Jozef Stumpel and Jere Lehtinen) paid for 100% of the Baja Ventures 2006 equity, following his own temporary amnesia on the specific material forfeiture fact under analysis at that moment; ***nexus*** (*See March 9, 2016 -- Tr.44-45*):

> Q:  In the course of that interview, did Mr. Jowdy tell you – I don't need you to look at the entire document.  I am just trying to move it along.  <u>In the course of that interview, did Mr. Jowdy tell you how Kenner obtained his 39% interest in the Diamante Cabo san Lucas project?</u>
>
> *A [Wayne]: **I don't recall him saying that**.  But…*
>
> Q: Would you kindly take a look at Page 2 of **Kenner Exhibit F-2**?  The third paragraph.  <u>Does that refresh your recollection as to what Mr. Jowdy told you as to how Philip Kenner acquired his 39 percent interest in Diamante Cabo san Lucas?</u>
>
> *A [Wayne]: **Yes**.*
>
> Q: What is your recollection of that, sir?
>
> *A [Wayne]: **That Kenner borrowed the money from Jozef Stumpel and Jerry Linton** [sic].*
>
> Q:  It was through the borrowing money from Jerry Linton [sic] and Jozef Stumpel that Kenner acquired his 39 percent interest in the Diamante Cabo san Lucas through August 2006, correct?
>
> *A [Wayne]: Can you repeat the question?*

4

> *Q: Sure.  Ken Jowdy told you that the source of the funds by which Philip Kenner acquired his 39 percent in Diamante Cabo san Lucas was through money loaned to him by Jerry Linton [sic] and Jozef Stumpel, correct?* [3]
>
> *A [Wayne]: Yes.*

What is forfeitable?  *Kenner received nothing, let alone anything that was ill-gotten*. **Agent Wayne confirmed it**.  How is that based on transactions authorized by the Little Isle 4 By Laws (the controlling corporate document), but simply not remembered by passive-equity investors (like Bryan Berard) – with admitted Alzheimer's (**CTE**) symptoms?

- It presents an irreconcilable standard for the Court without further discovery and analysis.

***As the Court knows -- the Hawai'i partners (Little Isle 4 By Laws) authorize the loans*** *(Kenner exhibit 25, introduced at Tr.4520)*.   19 of the 26 investors participated in lawsuits for nearly 8 years prior to Kenner's arrest to recover the loans in the USA and Mexico; specifically from Ken Jowdy.

The government utilized an alleged *civil* "disagreement" (if not influenced by Galioto lying to Kristen Peca and Michael Peca – and others that Kenner stole the money and never gave the loans to Jowdy)[4], and criminalized it by suggesting, "*Kenner stole the*

---

[3] See Stumpel letter to the Court – *ECF No. 771.*

[4] Kristen Peca recorded Kenner for 5-hours in July 2012 for the FBI.  She *also* admitted that she was never aware of her husband having a LOC at Northern Trust Bank – discrediting her entire testimony about (1) being involved in a 2005 meeting about the LOC, (2) the contemporaneous transfer of bonds (which never even happened), and (3) receiving a 2009 default letter (while living in the wrong state as to where the letter was delivered via FedEx; more logistically impossible testimony left to stand uncorrected by the complicit government).   But to secure his critical witnesses – Galioto misled Kristen Peca and Michael Peca that Kenner stole the Jowdy loan (*government-forfeiture-44*).  From the July 2012 recordings, Kristen Peca was clearly aware that the Hawai'i partners had agreed to loan money to Jowdy, she simply believed from the FBI that Kenner stole it:

> *Kristen Peca – Matt [Galioto] told Michael and I that you stole all of the Hawai'i money and never gave it – the loan money -- to…uhhhh…Jowdy.*
>
> *Kenner – Kristen – I have all of the bank records that prove the money went to Jowdy and his accounts at all times.  I told you that already. You told me that you saw the bank records after I sent them to Michael.  You know -- the attorneys who sued Jowdy for the money in Mexico and Arizona and California used them to confirm the loans before we sued?*

5

*money and bought his Cabo equity with it*". **Neither is true**...but the government needed the Court to believe that to continue their forfeiture ruse -- without proving a single nexus to Kenner's equity.

The government affirmed, "*The government's only burden is to demonstrate the requisite nexus between the [Kenner] property and the crimes of conviction.*" [*December 2, 2019 hearing at Tr.4*].

- **They have not** (*See government-forfeiture-44* and *government-forfeiture-36*) with ZERO "ill-gotten funds" traced to anything Kenner owns; specifically not Baja Ventures 2006, LLC.

Kenner hi-lighted during the forfeiture hearing that the government did "*trace the money*" thru their *government-forfeiture-36* forfeiture submission.  Kenner testified "because it's a $350,000 tracing that goes only to Mr. Jowdy's LLC, Mr. Jowdy settled that with Mr. Nolan back in 2008, already for those funds...there really has been no other nexus proven.  That's what the government proved during their forfeiture case [*December 2, 2019 hearing at Tr.19-20*].

The Court replied: "*Yes, I guess I am a little confused by the $350,000 reference.  Does the government want to respond to that?*" [*Id. at 20*].

Kenner followed up: "*...traced to the [Cabo] LLC...purchase...and only $350,000 comes from one of the [alleged] victims in the case, and that is Mr. Nolan.  And as a result, I think with some forethought, Mr. Jowdy settled with Mr. Nolan for that money, and other business transactions in 2008*" [*Id. at 21*].

- *Yet – there is <u>no nexus</u> and the government <u>cannot</u> clear that statutory hurdle!*

This "nexus" unicorn in the instant case was outlined by the Court during the 2016 forfeiture hearing when the Court opined, "*why couldn't the Court just determine what money went from Hawai'i to the entity that was unauthorized, and order that amount or percentage forfeited?*"
- That is exactly what the forfeiture statute demands the Court do, but the government <u>cannot</u> meet that burden – and certainly have not to date.

---

    *Kristen Peca – but – I don't understand why he would say it.*

6

*Berard admits CTE…*

A recently discovered podcast interview with Bryan Berard confirmed his 2014 litigation versus the National Hockey League for ***Chronic Traumatic Encephalopathy*** ("**CTE**").

Although Berard told the podcast and asserted in his fictional book that Kenner stole "*over 3 million bucks he stole he basically stole from me*".  Not a single dollar can be proven or traced to Kenner from any Berard illegal transaction.  His confabulations thru **CTE** have denied his memory of his previous anomalous lifestyle demands that routinely drained his accounts overseen by Kenner.  Kenner never administered even half of that amount of money for Berard any point in time, further confounding the truths that a typical Alzheimer's-symptom sufferer confuses.  Berard also asserted he lost between $3-6 million in *forged lines of credit*, while neither he nor the government ever challenged authenticity of the Berard signatures on the $650,000 LOC (far below his $3-6 million confabulated storyline).

- The empirical texts and signed Berard documents prove his lies in his podcast and book, complimenting his 2015 trial perjury (or CTE-based testimony).  In addition, to incite future violence from the police versus Kenner, Berard insinuated that Kenner stole money from ex-cops on the podcast and in the book, when no dollars can be traced to Kenner for any illegal activity.  It is more confabulation, but with undertones of inciting violence in the future versus Kenner.

*Contemporaneous lies about more alleged "forgeries" outed…*

"Where the newly discovered evidence is the existence of allegedly perjured testimony the defendant must first demonstrate that perjury was in fact committed." *United States v. Torres*, 128 F.3d 38, 49 (2nd Cir 1997) (citing *United States v. White*, 972 F.2d 16, 20 (2nd Cir 1992)); *United States v. Moore*, 54 F.3d 92, 99 (2nd Cir 1995).  A witness commits perjury by willfully giving false testimony concerning a material matter. *United States v. Monteleone*, 257 F.3d 210, 219 (2nd Cir 2001) (citing *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993)).  In correct testimony resulting from confusion, mistake, or faulty memory, or simple inaccuracies or inconsistencies in testimony likewise do not rise to the level of perjury.  See *Monteleone*, 257 F.3d at 219; *United States v. Sanchez*, 969 F.2d at 1414-15.

Here, Berard was <u>only</u> an alleged victim of $150,000 transferred to Ken Jowdy from his Hawai'i capital account (*See ECF No. 770 at 54*) as part of the Little Isle 4 authorized loans.  As the Court knows, and prior to his admitted **CTE**, Berard

7

confirmed his knowledge and authorization of the Jowdy loans during voluntary testimony in the 2009 *Nolan v. Kenner* arbitration (*ECF No. 770 at 61-62*).  Berard's admission of **CTE** in the 'one crucial and material matter' has grand ramification on the efficacy of the verdict.   Had Berard confirmed his previously espoused knowledge (from 2009 and prior), it would have contradicted the memory failures of the other four (4) memory loss testimonies (of Michael Peca [before his re-canting], Nolan, Sydor [despite his 2011 SDNY Grand Jury testimony confirming the loans as authorized and approved] and Rucchin [who could not claim anything more than the deal was "*foggy*" to him – *Tr.2722*); all severe **CTE** candidates along with Berard's admission.

Berard was found as lying in a 2015 Arizona contemporaneous case as a John Kaiser co-defendant about his name being forged on several documents.  Kaiser was found to have lied about five (5) other documents he claimed his name was *forged* -- in spite of the empirical email evidence validating that Kaiser participated in the actual signing of the documents and dissemination of the agreements to the Promissory Note holders who sued Kaiser and Berard as interveners to Kenner's fraudulent conveyance of title case (*Bates stamp: BINDER-000453-454*).   Government "*tracing*" witness, Lanie Donlan (*Tr.3424, 3438, 3454-55, 3456-57*) was caught lying in the Arizona trial about her name, Berard's name, and the *forgery* of the name and stamp of a Massachusetts notary (*3500-LD-2*) (again with empirical evidence of texts between Kenner and Berard verifying the exact signature transaction) (*ECF No. 668 Appendix at 62-63*).

| 532 | +14015246929 Bryan Berard* | 4/21/2008 6:19:35 PM(UTC+0) | Sent | *Call me when free about PV [Paradise Valley Arizona renovation home]* |
|---|---|---|---|---|

- Kenner sent the Power of Attorney document to Berard for a **SIGNATURE** and **NOTARY** after they spoke on the phone.

- Berard sent the following text to Kenner to confirm Kenner would get Berard's Power of Attorney document signed on the 24th of April (*day of the signature, witness from Donlan and notarized stamp from William Medlin – Bates stamp: PKHome-00013158-13160*):

| 463 | +14015246929 Bryan Berard* | 4/23/2008 9:14:25 PM(UTC+0) | Read | *I get back 2 hboston 2nite so ill get papers 2 u 2morrow so ull have friday!!! Howd u guys do n tourney??* |
|---|---|---|---|---|

8

- In fact --- Berard inquired about using Kenner's FedEx account to send Kenner the notarized document "*so ull have friday!!!*" which Berard called a **FORGERY** in the Arizona case:

[Berard (read) in BLACK; Kenner (sent) hi-lighted]:

| 486 | +14015246929 Bryan Berard* | 4/24/2008 7:52:38 PM(UTC +0) | Read | *Ok 2 use ur fed x acct # 4 package??* |
|---|---|---|---|---|
| 582 | +14015246929 Bryan Berard* | 4/24/2008 7:52:50 PM(UTC +0) | Sent | *Yes* |
| 487 | +14015246929 Bryan Berard* | 4/24/2008 7:54:08 PM(UTC +0) | Read | *Thanks* |

Clearly, **Berard and Donlan lied to the Arizona Court** in 2015 about another "*forgery*", *while being represented by the same Arizona attorneys as Jowdy* (who were engaging in the proven Jowdy "forgery fraud" at the same time). In the adverse ruling to Berard and Kaiser -- the Arizona Court hi-lighted the Berard fraud about his name being forged (in concert with Donlan's "witness" signature on the same document with the Massachusetts notary [William Medlin]):

(Regarding *Bates stamp: PKHome-00013158-13160*):

> *¶49. Berard testified that his signature on the Power of Attorney – Special (Arizona exhibit 25) and Deed of Trust (Arizona exhibit 26) were forged. However, Berard signed a number of recorded documents as a grantor, including the Quit Claim Deed transferring the property to John R. Kaiser, Trustee of the Shangri-La Trust 1999 (Arizona exhibit 27).*

Finally, the Arizona Judge confirmed that Berard and Kaiser <u>stole</u> the Arizona property from Kenner via fraudulent conveyance, after they began to work hand-in-hand with FBI agent Galioto (just like the Sag Harbor theft and sale with fabricated documents and forging of Kenner's girl-friend's name) (*Bates stamp: BINDER-450, 452[FAKE], Bates stamp: BINDER000433-434[REAL]*):

> *¶57. The March 9, 2012, conveyance of the property by John R. Kaiser as Trustee of the Shangri-La Trust 1999 to "John R. Kaiser, a married man, as his sole and separate property and Bryan Berard, an unmarried man" (exhibit 29) was a fraudulent transfer. A.R.S. §44-1004(A).*

9

*Repeated **CTE**-Alzheimer's symptoms have confused "recent" recollections of previous empirical facts…*

Multiple individuals (in addition to Berard) who are involved directly and indirectly with the 2015 Kenner trial have participated in recent litigation related to **CTE**.   **As a result of new information and evidence** regarding the witnesses' *faulty memory, confusion and mistakes*, Kenner requests to serve subpoenas on the individuals with specific Requests for Admissions ("RFA"); in lieu of depositions.

- *CTE symptoms for the former hockey players listed in the current litigation efforts include <u>faulty memory</u>, <u>confusion</u>, <u>amnesia</u>, <u>progressive dementia</u>, and <u>loss of memory</u>, amongst other <u>cognitive degenerative issues</u>.*

These exculpatory **CTE** symptoms run concurrent with the "*excuses*" the government offered for the government witnesses' synchronized testimony, which contradicted all pre-trial evidence in the government's possession from their Rule 16 discovery and investigations.   As the Court is aware, the government solicited these *first-time, contradicting statements* during direct examinations during trial.

- *Perhaps, instead of suborned perjury (as alleged by Kenner during his Rule 33 submission), there is an actual medical disease which would deem the testimony at time of trial wholly <u>unreliable</u>, only raised by the government post-trial, and in direct contradiction to all of the witnesses prior "under oath" statements.*

As a result, defendant Kenner is requesting that the Court issue the **CTE** subpoenas previously submitted to the Court (*submission dated December 11, 2018*) and determine its causal effect on witnesses' inability to "*remember what they were never told*" or understand that the Alzheimer's symptoms wholly effected their ability as passive-equity investors to remember what they used to know when "*they trusted Phil*" (verified thru their real-time actions) but simply do not have the ability to recall because of the disease.


Respectfully submitted (December 2019).


Phil Kenner

10