December 10, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

### Egregious Rule 1002 "Best Evidence Rule" violation [1]

Your Honor,

There has been an egregious and material Rule 1002 "Best Evidence Rule" violation in the instant case that has not been properly vetted pre-sentence; the Kaiser "*original ink*" concealment by the government from the Court and their own expert.

As the court is aware, the government alleged multiple signatures as forgeries in 2014, pre-trial.

As the Court is also aware, after Kenner represented to his trial counsel the underlying and specific impeachment evidence (in Rule 16 discovery) about two of the three, 2014 government representations, the government dropped their trial plans with respect to those documents; (1) the Jowdy loan document and (2) the Kaiser Mexico testimonial document.

*First abandoned government lie re: forgeries -- Jowdy loan document…*

Kenner exposed Jowdy's trial authentication of the Hawai'i loan agreement from Jowdy's December 2010 Nevada trial defense (*Nevada Day 1: Tr.197-200*).  Jowdy admitted the loan agreement thru the signature witness as his defense case-in-chief exhibit.   This testimonial evidence was delivered by Kenner to the Court following the Court's *specific* request for the information during the March 6, 2016 forfeiture hearing (*Tr.288-90*).
- There is no authentication question from any party involved in the agreement (including the Kaiser confessions to the FBI as Managing Member of the Hawai'i partners that he conducted independent meetings with Jowdy pre- and post-agreement sign-off in December 2004 – *3500-JK-1-r at 2, 3, 10*).

---

[1] At sentencing, "the Court is virtually unfettered with respect to the information it may consider."  United States v. Alexander, 860 F.2d 508, 513 (2d Cir 1988).

1

- Kaiser also confirmed to this Court that he had a copy of the loan agreement, as requested at his home for over a decade before the 2015 trial (*Tr.1127*).

*Second abandoned government lie re: forgeries -- The Kaiser Mexico testimonial...*

John Kaiser traveled on **May 31, 2010** to Mexico (*Bates stamp: BNK-AMEX-0001970*) to offer testimonial support for Jozef Stumpel in his $1.6 million lawsuit versus Jowdy -- after Jowdy stole the $1.6 million from the Baja Ventures 2006 capital account in the Diamante Cabo san Lucas project (*ECF No. 771*) (*government-forfeiture-36*).  Once Jowdy strategically hired Kaiser in 2012, Kaiser's first task for Jowdy was to testify in the Mexico court that his name was forged on the document and get the Mexico criminal case dismissed for Jowdy.  *It worked immediately.*  The U.S. Government actually produced the document in front of the EDNY Court in 2014.  Kenner alerted his trial counsel that Bryan Berard had been recorded during 2012 FBI recordings and **admitted** that he and Kaiser were in the Mexico District Attorneys office and **signed the testimonial documents**.  **That does *not* lend itself to a forgery.**

- After both disclosures of fraud on the Court by the government, Kenner's trial counsel *leaked* the information to the government.   They dropped those allegations; despite Jowdy and Kaiser lying to them about the authenticity of the original documents, in the first place.

### The Best-evidence violation in the instant case...
### (Constantine Consulting Agreements)

During the same 2014 pre-trial hearing, the government claimed the two Kaiser signatures from the 2004 and 2005 Constantine-Hawai'i consulting agreements were "forged".   The government recovered the photocopies (*GX-5104*) from Kenner's office in the Hawai'i corporate files.   That is where the agreements should be maintained in custody; as they were.

On the "*eve of trial*", Kenner was taken unscheduled to the EDNY courthouse (no hearing date).   FBI agent and AUSA Michiewicz  showed Kenner and trial counsel the "*ink*" *originals*.  **They confirmed that Kaiser had recovered them from his home**.   If that golden nugget was not enough to question "*how did Kaiser have the "original ink" versions of two agreements that were 10 years old at his house*"...and "*they were forged*", then the prosecutorial ends outweighed their responsibility to a fair legal confrontation.

2

==**The government <u>never</u> notified the Court of this crucial revelation…**==

- *Further defying logic*: The Court should note that in 2014 (a year prior to trial), the government and Kaiser represented the two consulting signatures as his authentic signature, just merely photocopied and alleged as superimposed by Kenner on the two agreements without Kaiser's knowledge.  **How could the originals now recovered from Kaiser's home be forged, considering the ink and photocopy versions were the same documents?**  *The enigma is irreconcilable.*

*Rule 1002 violation…*

Nevertheless, the government had every right to present the document in their case. BUT -- they still had the specific obligation to present the "*original ink*" versions to the Court at trial for the jury to weigh the evidence and *specifically the circumstances surrounding their recovery*.

The government failed and concealed the "**best evidence**".  But – not only did they conceal the "*original ink*" versions (*GX-7004* and *GX-7005; neither admitted at trial*) from the jury and the Court, but when the government's forensic expert was asked to verify the documents he used to evaluate the alleged forgeries of Kaiser's name, he confirmed as well that he reviewed the photocopy versions <u>only</u> (*GX-5104*) (*Tr.3622, 3626*).

***This concealment from their-own expert witness prejudiced the defendant to an incalculable amount.***
- First, the allegation of forgeries is criminal (in its own mis-representations – 18 U.S.C. 1001); *but…*
- Second, the supplemental testimony in front of a jury by a government expert reinforces the witness' allegations and is indefensibly prejudicial.

The government was specifically aware of their actions to conceal the "*original ink*" versions -- and should be held responsible.  Kaiser identified only the photocopy versions at trial, as well (*Tr.990-91*).

==*What would the government expert have said during trial if the documents had to be admitted as "recovered" from Kaiser's possession?*==
Not only did the government avoid the incredible presentation at trial in front of the Court and jury that Kaiser had the possessed the originals for a decade (with the "*original ink*" forgeries), but they never presented that unbelievable circumstance to

3

their-own signature expert who could not have reviewed the documents without significantly more skepticism.

There is no plausible instructions to the jury or reprimand to the government that is enough under this "planned diversion" and surreptitious plan, specifically carried out to prejudice the defendant.

**In addition…**
The government knew that Hawai'i partners' COO Chris Manfredi confirmed his knowledge of the "Constantine consulting agreements" in 2010 (five years prior to trial) *(3500-CM-2-r at 1)…*
- Two significant items are raised by these revelations.

**One** – Where are the agreements that COO Manfredi was aware of – if Kaiser and the government are standing by their incredible "forgery" position that obviously deceived the Court, the jury, their-own expert -- and prejudiced the defendant? – *and…*

**Second** -- Why did it take Kaiser until the "*eve of trial*" to produce the "*original ink*" versions if Manfredi had previously announced the Hawai'i partners' management knowledge of the Constantine consulting agreements (wholly authorized by the Hawai'i partners By Laws), five years earlier? [2]

*"Forgery" pattern of lies from the Jowdy cabal …*

Lastly, the Court should note that Jowdy, Kaiser, Berard and Donlan have been exposed in multiple jurisdictions *before* and *after* the 2015 trial about planned perjury related to "*forgery*" allegations:
- In the Hawai'i partners 2008-09 Arizona lawsuit versus Jowdy to recover the stolen loans, Jowdy's presented a forgery defense regarding the loan agreement for 2 years.
    - Jowdy's lies were self-exposed by his-own admission 3 weeks after the Arizona case was abruptly dismissed.  While under oath in his California January 2010 depositions (in evidence, *with Kaiser present for the 2-day*

---

[2] See *United States v. Gil*, 297 F.3d 93, 97 (2d Cir 2002), where a guilty verdict was vacated and remanded for "late discovery" of exculpatory information that "*was not disclosed timely enough for it to be useful to defendant*".   In *Gil*, *supra*, the Court was disturbed that "*the production of the [exculpatory] document on the eve of trial did not provide defendant the opportunity to read it, identify its usefulness, and use it*".

4

> *Jowdy confessions*), Jowdy confessed all the Hawai'i money he received were "loans" (*confirmed by* government-forfeiture-44); *and...*

- In the second-2010, $1.6 million criminal case filed versus Jowdy (*Jozef Stumpel v. Jowdy*) in Mexico for diverting $1.6 million Stumpel's Baja Ventures 2006 capital account funds (*confirmed by* government-forfeiture-36) (*ECF No. 771*), Jowdy's new employee, John Kaiser, claimed his signature on his Mexico testimonial, which he signed in the Cabo san Lucas Courthouse, was a forgery to dismiss the criminal case; *and...*

- In 2012 – Kenner sued for fraudulent conveyance of title versus Kaiser and Berard (and a million-plus dollars of documented theft from Kenner by Kaiser and Berard) in Arizona.  Kaiser and Berard were subsequently sued by 5 Interveners for unpaid Promissory notes [including Nash, Sydor, Ranford – from the instant case; and Khristich and Lehtinen (Kenner's other Baja Ventures 2006 partner with Stumpel)].   Kaiser and Berard offered more forgery lies as their defense.  The 2015 civil trial verdict ruled against their multitude of forgery defenses based on empirical email confirmations by Kaiser-himself, which authenticated his signatures (in Rule 16 evidence, *Bates stamp: BINDER-00453-454*).  Kenner provided the exculpatory evidence to the interveners trial attorney after Kenner's arrest in 2013 (at the specific hands of Kaiser and Berard); *and...*

- In the same 2013-15 Arizona case, Berard and Lanie Donlan lied about their own signatures and the "signature and stamp" of a Massachusetts notary.  FBI agent Galioto and IRS agent Wayne knew the forgery claims were false (*3500-LD-2*). Kenner's "real-time" direct text messages with Berard debunked Berard's lies about not signing, notarizing, and mailing the alleged forgery document to Kenner in Arizona (using Kenner's FedEx account) (*ECF No. 668 Appendix at 62-63*).  In addition, Berard perjured himself about the document during his 2014 Arizona deposition (*ECF No. 668 Appendix at 60-61*) (*3500-BB-xx at 39-41*). [3]

*The forgery pattern...*

---

[3] The actual *3500-BB-xx* number is not known to Kenner.  The Berard deposition (like the 2014 Kaiser Arizona depositions) was never turned over to Kenner pre-trial, despite the government allegedly providing it to Kenner's trial counsel.   Kenner presented the two depositions as "new evidence" in his first Rule 33 motion.

5

The pattern of "forgery" lies is simply traced to anyone participating in the Jowdy ruse of non-culpability for the Hawai'i partners funds Jowdy stole (*government-forfeiture-44*), the diversions of capital account funds in the Diamante Cabo project (*government-forfeiture-36*), and the overly documented decades of RICO acts and thievery from Kenner and Kenner investors (*ECF No. 667*).

In the instant case, the Court must demand answers from the government about their planned prejudice related to their *Rule 1002* violation. This act of premeditation is as volatile in the contentious empirical evidence battle (versus the synchronized testimonial reversals or memory loss via **CTE**) as their avoidance of the "*trace the money*" obligations they continue to avoid related to forfeiture, money judgment and "loss amounts".

Respectfully submitted (December 2019).

Phil Kenner

6