December 26, 2019

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

Your Honor,

I submit that notwithstanding the **CTE** issues Kenner has raised since the government's first defense of *faulty memory, confusion and mistakes* (*ECF No. 440 at 16*), the recent **Brady** and complimenting **late discovery** issues raise serious concerns about the appropriate and timely delivery of exculpatory evidence to the defendants by the government.  The Court should recall that the government explained to the Court at the beginning of July 2014 that they had produced about 90% of the exculpatory evidence and asked for a 90 day hearing postponement to verify their position (over 5 years into their pre-trial investigation), with about 10% to complete production.  *They were not even close.*  More than 90% of the Rule 16 production was delivered *after* that date to the defendants; and at least ½ of that within 90 days of trial.

In recent submissions and oral argument, attorney Sam Talkin has raised *Brady* issues related to Kenner's voluminous text messages that were <u>never</u> delivered to defendant Constantine.   The government has been unable to reproduce their production after multiple requests related to his critical exculpatory "dump".  Kenner has raised a parallel issue of *late discovery*, echoing Talkin's claims at the December 6, 2019 hearing (*Tr.26-28*) that it would have been impossible for the millions of documents (not just millions of pages) that were delivered in the last three (3) months pre-trial to be properly reviewed by defendant's counsels and integrated into a cogent defense strategy; specifically with Kenner's single attorney representation and pre-trial detention restrictions.

The late delivery of the voluminous materials made it impossible for the defense attorneys, if they even received the nearly hundred thousand of text, the Northern Trust Bank records, the 3500 production, or the millions of pages of other discovery on the eve of trial – and had the appropriate time to properly evaluate the documents and apply them to a coherent defense (jointly or otherwise, with multiple severance request denials).   Either the government holds responsibility for this "late delivery" over a year after the case was deemed "complex" by the court, ***requiring a new trial*** (under *Gil*), or there is insurmountable ineffective assistance

1

of counsel issues (under *Strickland*) that cannot be defended by either defendants' counsel, **requiring a new trial**.

- See *United States v. Gil*, 297 F.3d 93 (2d Cir 2002) ("the government wrongfully suppressed evidence favorable to the defendant [that was] exculpatory and impeaching information, seriously undermining confidence in [the] guilty verdict, and was not disclosed timely enough for it to be useful to defendant. The production of the documents on the eve of trial did not provide defendant the opportunity to read it, identify its usefulness, and use it.").

The Court opined, "To the extent that a prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation, grounded in the 14th Amendment, to disclose that evidence to the defendant. Information coming within the scope of this principle includes not only evidence that it is exculpatory, i.e. going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, i.e. having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir 2001) (alterations in original) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir 1998)).

In *Gil*, a guilty verdict was vacated and remanded for "late discovery" of exculpatory information that "*was not disclosed timely enough for it to be useful to defendant*". In *Gil*, *supra*, the Court was disturbed that "*the production of the [exculpatory] document on the eve of trial did not provide defendant the opportunity to read it, identify its usefulness, and use it*".

***Northern Trust March 2009 default letters (Sydor and Berard issue)...***
**Northern Trust banker, Aaron Mascarella** testified in March 2009 "*The [default] letters in March were sent Federal Express and certified mail.*" (*Tr.897*). Thus -- every default letter had to be signed for personally by someone at the mailing address (verifying a distinct Kristen Peca lie about signing for the NY delivered March 2009 default letter while living in Columbus Ohio – *GX-2116, Tr.709 [1]*).

**Darryl Sydor impeachable testimony with texts:**
After receiving the March 2009 default letter that identified $855,351.03 was past due (*GX-2119 at 1, introduced at Tr.2167*), Sydor sent Kenner a text message to

---

[1] [Kristen Peca]: "*one day I got mail that I had to sign for*"

2

inquire about the letter, *infra*.   Despite his real time 2009 knowledge, Sydor testified (*Tr.2166-67*):

> *Q I will publish it to the jury, 2118. These appear to be letters from Northern Trust Bank to you.*
> *A [Sydor]: Yes.*
>
> *Q Did you receive any of these letters in February or March of 2009?*
> *A [Sydor]: No. <u>I first saw these the other day.</u>*
>
> *Q Turning to 2119, the letter entitled Notice of Default and Intent to Sell Collateral. 2120, a letter entitled Notice of Exclusive Control. When you testified that you first saw them the other day, can you be specific? What other day?*
> *A [Sydor]: <u>About a week and a half ago when I came the first time to testify. Something happened with someone's mom and I didn't stay. But that's when I first saw the documents.</u>*
>
> *Q Did Mr. Kenner ever tell you about a loan in your name from Northern Trust Bank of that amount?*
> *A [Sydor]: No.* [2]

Three (3) days after the default letter was mailed from Northern Trust Bank (signature required via FedEx) – Sydor sent Kenner the following text:

| 6083 | +19725230505 Darryl Sydor* | 3/23/2009 1:59:36 AM(UTC+0) | Read | What funds ? **And this thing says I owe <u>855,351.03</u> right now.** |
|---|---|---|---|---|

**THUS – clearly Sydor has CTE or was coached to not remember the default letter he signed for and asked Kenner about in real time (March 23, 2009).**

- **The government withheld their crucial knowledge of the Sydor CTE from the Court and the texts would have impeached Sydor's crucial memory issues.**

---

[2] The Court should note that Sydor signed *Master Notes* with Northern Trust Bank in 2004, 2005, 2006, 2007 and 2008 and the dozens of ancillary LOC documents (including but not limited to the *2004 Extension of Credit, 2004 Letter of Authorization*, the 2004, 2005, 2006, 2007 and 2008 *Disbursement Request & Authorization* identifying the amount of Sydor's $850,000 LOC that had been spent [this latter list – all one page documents with Sydor's signature]).

3

**Bryan Berard impeachable testimony with texts:**

After receiving the March 2009 default letter, Berard sent Kenner a text message to inquire about the letter and residual funds left over after the LOC was paid off, *infra*. Nevertheless, Berard testified (*Tr.3035-36*):

> *Q. When you opened up your line of credit with respect to the Hawaii deal, did you have any understanding as to how that line of credit funding could be used?*
>
> *A [Berard]: I didn't think any of the money -- I thought it would be interest payments. I didn't think any of the money would be used out of my line of credit.*
>
> *Q. So was there any -- withdrawn. Did you get statements contemporaneous with the operation of your line of credit sent to your house or anywhere you were working at the time, if you recall?*
>
> *A [Berard]: My line of credit, no.*

Six (6) days after the default letter was mailed from Northern Trust Bank (signature required via FedEx) – Berard sent Kenner the following text:



| 6207 | +14015246929 **Bryan Berard*** | 3/26/2009 6:53:59 PM(UTC+0) | Read | **[Berard]: When u get chance can we look at how much money will b freed up after payn off line of credit NT??? Thanks** |
|---|---|---|---|---|

- Berard was asking about his residual cash after his $650,000 LOC payoff (*Kenner Rule 29 – ECF No. 668 at 46, footnote 32*);

    o This text was **_5 days before_** Berard authorized his collateral seizure on April 1 (and **_12 days before_** the **DUE DATE** – verified with *Bates stamp: TNTC000010* – which was received at Berard's Rhode Island home – just like his February 2009 LOC statement – Bates stamp: *TNTC000012*);

        ▪ Without Berard's verbal approval – the bank could not have seized his funds **_7 days before_** a **due date** – *it is incomprehensible*….

4

Kenner replied to Berard, confirming Berard would have "*300k*" available:



| 7280 | +14015246929 Bryan Berard* | 3/26/2009 7:00:51 PM(UTC+0) | Sent | **[Kenner]: ~300k** |
|---|---|---|---|---|

And Berard replied:



| 6208 | +14015246929 Bryan Berard* | 3/26/2009 7:04:18 PM(UTC+0) | Read | **[Berard]: Cool thanks!!! When will that b freed Gonna use 200 for a cool oppurtunity will show u and talk 2 u abt it later. <u>Good for all of us n future.</u>** |
|---|---|---|---|---|

- The Court should note that every LOC client received monthly LOC statements that were in the Northern Trust subpoena (*Kenner trial exhibit 210*) – contradicting the government claims that there was no notice of the LOC from Northern Trust Bank (but -- frankly a Patriot Act banking issue *if actually true*). It was *also* debunked by Northern Trust banker Aaron Mascarella – *Tr.912*):

    *[Mascarella]: I know it doesn't help you today right now, but that a copy [of the LOC statements] was also sent to each one of the borrowers.*

And – when the Northern Trust Bank subpoena arrived after the government case closed and Berard was dismissed – several LOC monthly statements confirmed that Berard perjured himself (suborned or not) and/or was suffering from **CTE** symptoms as he confirmed in a 2018 podcast – about his participation in a 2014 NHL lawsuit to recover damages for **CTE** related brain damage.

**THUS – clearly Berard has CTE or was coached to not remember the default letter he signed for and asked Kenner about in real time (March 23, 2009).**

- **The government withheld their crucial knowledge of the Berard CTE from the Court and the texts would have impeached Berard's crucial memory issues.**

5

**<mark>Owen Nolan impeachable testimony with texts:</mark>**

Kenner and Nolan exchanged a 6-day text dialogue in December 2007 when Nolan was required by Northern Trust Bank to re-sign his LOC documents for the 5th time (2003, 2004, 2005, 2006, and 2007).³   Kenner mailed the 2007 documents to Nolan (after Nolan failed to respond directly to the Northern Trust Bank November 2007 mailings).   Nolan requested that he and Kenner speak on the phone **two (2) times** prior to Nolan individually sending his signed LOC documents to Northern Trust Bank using Kenner's FedEx account.   These documents arrived via the Northern Trust bank subpoena after week 7 of the trial – specifically *after* the government dismissed Nolan (*Kenner trial exhibit 210*).

In spite of his December 2007 6-day text confirmation, *infra*, Nolan testified (*Tr.2065-66*):

> *Q There has been testimony in this case about lines of credit. Did you ever have a line of credit associated with your investment in Hawaii?*
> *A [Nolan]: No.*
>
> *Q Did you ever authorize Mr. Kenner to open up a line of credit in your name?*
> *A [Nolan]: No.*
>
> *Q Did you ever authorize Mr. Kenner to open up a line of credit in a company called Little Isle IV?*
> *A [Nolan]: No.*
>
> *Q What about if there was a company called Little Isle IV and you and Mr. Joe Juneau and Mr. Kenner were somehow vouching for a line of credit in Little Isle IV, **do you have any <u>memory</u> doing that**?* ⁴
> *A [Nolan]: No.*

---

³ This 2007 LOC package included a 11-3-*2007 Disbursement Request & Authorization* form (signed by Nolan) that identified $2,189,796.02 as "**Amount paid to others on borrowers behalf**" (*Bates stamp: TNTC00738*).   This complimented the *2004 Extension of Credit* form that Nolan signed and dated on 10-29-04 (in his-own handwriting) that specifically identified a "*$2,200,000*" "*Investment in Little Isle IV LLC*" (*Bates stamp: TNTC00764*).   These were both present in he 2015 Northern Trust bank subpoena (*Kenner trial exhibit 210, introduced at Tr.4210*) – **but unavailable at the time of Nolan's cross-examination**.

⁴ In the 2015 Northern Trust bank subpoena (*Kenner trial exhibit 210*) – there was a **2007 default letter** mailed to Nolan's current Arizona residence, further and directly notifying Nolan about the LOC that he had signed for (*Bates stamp: TNTC00051*).

6

*The following was the 5-day December 2007 text communication between Kenner and Nolan, confirming his specific LOC knowledge, personally signatures, and independent mailing of the LOC documents to Northern Trust bank...*

From Kenner to Nolan (conversation Day 1):

| 37 | +14169970110 Owen Nolan* | 12/23/2007 3:40:50 PM(UTC+0) | Sent | *I need to send you via FEDEX LOC docs from Northern Trust that MUST be signed and returned by the end of the year.* Where are you the day after XMAS?? |
|---|---|---|---|---|

From Nolan to Kenner (conversation Day 1):

| 41 | +14169970110 Owen Nolan* | 12/23/2007 6:40:59 PM(UTC+0) | Read | **What r the papers for** |
|---|---|---|---|---|
| 42 | +14169970110 Owen Nolan* | 12/23/2007 6:41:26 PM(UTC+0) | Read | **And why the sudden rush** |

From Kenner to Nolan (conversation Day 1):

| **38** | **+14169970110 Owen Nolan*** | **12/23/2007 7:09:24 PM(UTC+0)** | **Sent** | *The papers are for your Line of Credit at Northern Trust. The Bank sent them to me for the renewal of the LOC on friday and said they MUST be signed and returned by end of year. Its not just you. All of the guys have to do it.* I don't make these rules. Where can I send them for next Wednesday or thurday fedex delivery?? PK |
|---|---|---|---|---|
| 39 | +14169970110 Owen Nolan* | 12/23/2007 7:12:23 PM(UTC+0) | Sent | Can you also plz ask Diana for the ppwk I faxed a while ago for VortalOptics?? I need you to *sign and fax* them to me at 480.314.3795. Then, we can have your shares registered. *Your ppwk is the last of the guys to get done.* Happy Holidays. I hope the kids are well!! |

From Nolan to Kenner (conversation Day 3):

| 45 | +14169970110 Owen Nolan* | 12/26/2007 5:26:24 AM(UTC+0) | Read | Westin bayshore vancouver we leave tommorrow |
|---|---|---|---|---|

From Kenner to Nolan (conversation Day 3):

| 42 | +14169970110 Owen Nolan* | 12/26/2007 1:34:06 | Sent | It already was sent to Calgary. It will be |
|---|---|---|---|---|

7

|  |  | PM(UTC+0) |  | there when you return. Please just sign and return asap. Happy Holidays!! |
|---|---|---|---|---|

- As part of the government's Rule 16 production – they produced Kenner's FedEx records and AMEX account records. It confirmed Kenner sent Nolan the 2007 renewal docs via FEDEX *independently to Northern Trust Bank* on 12-26-07 (*Bates Stamp -- BNK-AMEX-1638*):



From Nolan to Kenner (conversation Day 5):

| 46 | +14169970110 Owen Nolan* | 12/28/2007 6:04:48 PM(UTC+0) | Read | ***Where's the package that needs signed*** plus jp needs 200000 for toronto settlement ***where r we getting that money since everything is tied up*** |
|---|---|---|---|---|
| 47 | +14169970110 Owen Nolan* | 12/28/2007 6:06:04 PM(UTC+0) | Read | He said in order to write it off it needs to be paid this year |
| 48 | +14169970110 Owen Nolan* | 12/28/2007 6:07:04 PM(UTC+0) | Read | ***Call me need to discuss this*** |

- Kenner and Nolan spoke about the LOC paperwork on the phone at this point – per the following message the next day from Nolan to Kenner…

From Nolan to Kenner (conversation Day 6):

| 49 | +14169970110 Owen Nolan* | 12/29/2007 3:46:45 AM(UTC+0) | Read | ***Can u call me back I have a question about papers*** |
|---|---|---|---|---|

- As part of the government's Rule 16 production – they produced Kenner's FedEx records and AMEX account records. It confirmed Nolan *returned his LOC documents independently* to Northern Trust Bank utilizing Kenner's FedEx account – *after* his follow-up conversation with Kenner (*Bates Stamp -- BNK-AMEX-1640*):

8



Please note that Nolan's text on December 28, 2007 acknowledged, *supra*:

> "*where r we getting that money [$200,000 for his agent's bill] since everything is tied up*"

- *This is <u>clear</u> confirmation that Nolan knew in December 2007 that his ~$2 million bond account at Northern Trust was <u>pledged</u> for the LOC – in addition to the monthly bank statements confirming the PLEDGED account.*

The court must also note that Nolan was aware of the Hawai'i partners August 2006 "pay down" of his Northern Trust LOC – BECAUSE Nolan requested to wire $500,000 of his previous collateral days later to his Schwab account (which **he signed** for the transfer on September 5, 2006) (*Bates stamp: S01746 and PKHome-0001717*) *available to the Court upon request.   Nolan immediately liquidated these funds after transferring them out of his Schwab investment account.   Nolan's reckless spending (arranged by his wife) was documented thru subsequent Kenner-Nolan texts:

| 1124 | +14169970110 Owen Nolan* | 6/3/2008 9:56:09 PM(UTC+0) | Read | Can you come up here in the next day or two so we can get up to date **we talked to tax guys and we have a huge bill to pay** |
|---|---|---|---|---|

- Nolan was referring to the **$750,000** tax bill for the United States IRS from his $5,000,000 insurance settlement Nolan had with the Toronto Maple Leafs hockey team.   His wife spent the money that was set aside (*Bates stamp: PKHome-001496*), *infra*.

Nolan's wife handled the settlement money with Kenner's assistant, Myrick, at Kenner's direction - so two (2) years later, Nolan was UNAWARE of what happened to the settlement money…

| 116 | +14169970110 Owen | 6/6/2008 2:19:38 PM(UTC+0) | Rea | What did we invest the settlement money in |
|---|---|---|---|---|

9

| 5 | Nolan* | | d | |

Kenner response:

| 1354 | +14169970110 Owen Nolan* | 6/6/2008 4:26:44 PM(UTC+0) | Sent | I'll get all that info this afternoon and get u a full breakdown of where it went. Pk |

Nolan reply:

| 1166 | +14169970110 Owen Nolan* | 6/6/2008 4:28:45 PM(UTC+0) | Read | Perfect THX |

Kenner sent Nolan's FINRA manager's spreadsheet to Nolan, *infra*, which was also mailed to Nolan's address of record by his FINRA investment advisor, *infra*.

Nolans wife withdrew the entire after-tax benefits of the Nolan $5 million settlement without her husband's knowledge within 20 months, leaving Nolan $750,000 in debt to the IRS (with the 9-29-2006 deposit designated for the future IRS payment).   Nothing in Kenner's control was concealed from (1) Nolan, (2) his wife, Diana, (3) his FINRA investment advisor (at Greenberg Graham), (4) his private banker (at Wells Fargo) or (5) his personal assistant.

- **Yet, in 2015, Nolan cannot recall any of it.**

**Greenberg Graham and Charles Schwab cash flow report as requested by Nolan...**

- *It confirmed Nolan's wife withdrew 100% of their life savings unknown to Owen at the time.*

**Capital Flows and Valuation Report**
From 07/01/2006 to 12/31/2008

Owen Nolan   Individual   Acct #: 4053-xxxx
5655 Silver Creek Valley Road
No. 264
San Jose, CA 95138

| Trade Date | Activity | Deposit | Withdrawal |
|---|---|---|---|
| 07/01/2006 | Deposit | 3.12 | |
| 08/25/2006 | Deposit | 42,553.00 | |
| 09/12/2006 | Deposit | 2,000,000.00 | |
| 09/28/2006 | Withdrawal | | (12,500.00) |
| 09/29/2006 | Deposit | 750,000.00 | |
| 01/02/2007 | Withdrawal | | (12,500.00) |
| 01/08/2007 | Withdrawal | | (500,000.00) |
| 03/30/2007 | Withdrawal | | (12,500.00) |
| 04/04/2007 | Withdrawal | | (491,449.04) |
| 04/17/2007 | Withdrawal | | (470,000.00) |
| 06/12/2007 | Withdrawal | | (300,000.00) |
| 06/26/2007 | Withdrawal | | (12,500.00) |
| 07/18/2007 | Withdrawal | | (5,800.00) |
| 07/24/2007 | Withdrawal | | (100,000.00) |
| 08/15/2007 | Withdrawal | | (200,000.00) |
| 08/21/2007 | Withdrawal | | (230,500.00) |
| 09/14/2007 | Withdrawal | | (16,625.00) |
| 10/01/2007 | Withdrawal | | (581.00) |
| 10/01/2007 | Withdrawal | | (12,500.00) |
| 01/02/2008 | Withdrawal | | (12,500.00) |
| 02/06/2008 | Withdrawal | | (225,578.79) |
| 03/27/2008 | Withdrawal | | (12,500.00) |
| 06/02/2008 | Withdrawal | | (2,912.40) |
| | | 2,792,556.12 | (2,630,946.23) |

- ==The December 2007 texts between Kenner and Nolan proved that it was wholly impossible for Nolan to be unaware of his Northern Trust Bank LOC &/or the paperwork he had signed annually for 4+ years to date...(and discussed multiple times on the phone with Kenner).==

*Further LOC knowledge by everyone in Nolan's business and personal lives...*
Thru the multitude of *late discovery* productions by the government, the government also possessed evidence that Owen Nolan's wife, Diana, had been communicating with the Nolan's private banker (at Wells Fargo Bank) and their private-assistant to make specific payments on Owen's Northern Trust LOC in 2006, further identifying the vast unconcealed knowledge by <u>everyone</u> in Owen Nolan's life about the LOC (except Owen thru his haze of **CTE**). [5]

Nolan's incremental knowledge of the LOC and its 2006 transactions following the Lehman Brothers JV (which Nolan signed off on – *Kenner exhibit 63, introduced at Tr.2116*).  Please note that Nolan was either confused thru the haze of **CTE** – or tried to "discount" his signature authenticity on the JV document.   Shockingly, he verified that he printed his name next to the questioned signature.   *It was dumbfounding*.

> *Q Well, do you see the words Owen Nolan –*
>
> *MR. MISKIEWICZ: Objection.*
> *THE COURT: What document are you referring to?*
> *MR. HALEY: Kenner Exhibit 63.*
> *THE COURT: You're asking if that's his signature or not?*
> *MR. HALEY: Judge, there's also a –*

---

[5] Although Nolan testified thru his own haze of **CTE** that he never knew about his LOC, the government knew that Northern Trust Banker Aaron Mascarella gave a March 2009 deposition (*Bates stamp: AM030909*) that confirmed he had been speaking to Nolan about his LOC between 2003 and 2006 (*ECF No. 668 Appendix at 170-71*).   The government also knew they had Rule 16 evidence that Nolan's wife was personally making payments on the LOC in 2006, including the repayment of a loan:
- *Bates stamp: MYR0001066, produced by Nolan's investment advisor during a 2009 litigation*;
- *Bates stamp: NOLAN0005249, produced by Nolan himself during the 2009 arbitration, further verifying his real time retention of the transparent emails*; and
- *Bates stamp: NOLAN0005044, Nolan's 2006 Hawai'i partners k1 tax document, produced by Nolan during the 2009 arbitration confirming Nolan retained it from his 2006 tax records, wholly verifying the exact amount of his LOC funds and Hawai'i partners investment*)
  - **All available to the Court upon request**.

- The August 2006 Northern Trust LOC communication included Owen Nolan's wife (Diana), her personal business manager, and her Wells Fargo private banker; wholly removing any possible concealment of anything from any Nolan advisor in real time about Owen's LOC: **and hi-lighting the severe Nolan CTE at the time of his 2015 testimony (9 years later).**

12

> *A [Nolan]: **I'm not saying it's not my signature**. I'm just saying it's not very clear to say it is. That's all I'm saying.*
>
> *Q We can agree, sir, where it says "Print Name: Owen Nolan," you wrote Owen Nolan, is that correct?*
>
> *A [Nolan]: **That is my writing, yes.***

Nevertheless, Nolan produced his Little Isle 4 2006 k1 tax document in the 2009 *Nolan v. Kenner* arbitration.  It is *Bates stamp: NOLAN0005044* (and available to the Court upon request).  It verified Nolan's entire $2.2 million LOC investment in Little Isle 4 and the 2006 reduction payout of $761,468.   After Nolan produced his own tax document for the arbitration, Kenner delivered it to the SEC in 2011. The government tried to claim that it was only located at Kenner home to distract the Court from the Nolan 2009 production of the original (*Tr.2145-46*).

All of Nolan's texts with Kenner confirm his real time knowledge that was unavailable to Constantine's defense (based on a lack of production) and Kenner's clear defense based on *late discovery* issues; both needing to prove innocence in the Nolan transactions based on the government's misrepresentation of the pre-trial evidence in their possession.

- **The government withheld their crucial knowledge of the Nolan CTE from the Court and the texts would have impeached Nolan's crucial memory issues.**

*[The remainder of this page left intentionally blank]*

**Jay McKee impeachable testimony with texts:**

As the court is aware, the government produced Jay McKee as a GSF victim only (*Tr.1846*):

> *MS. KOMATIREDDY: Your Honor, we object based on relevance. We also objected because Mr. McKee is here as a witness with respect to the Global Settlement Fund. He's not alleged to be a victim of the Eufora fraud in this case.*

Jay McKee could neither recall the Constantine GSF email, *infra* (*Tr.1818*) (separate from the GSF acknowledgement and acceptance email) that he received 9 days after the face-to-face meeting in Buffalo, New York – or the details of the dinner meeting and 2-day text communication immediately following it via text, also *infra*.

> *Q. Now, after this money went out from your account on May 11th, did you receive an e-mail from either Mr. Kenner or Mr. Constantine about the Global Settlement Fund?*
> *A [McKee]: **I can't recall specific e-mails, sorry.***

This is one of the emails McKee turned over to the government in rule 16 productions (*infra*)...

*[The remainder of this page left intentionally blank]*

14

> **From:** Tommy Constantine <tommy@eufora.com>
> **Sent:** Monday, May 18, 2009 10:33 AM
> **To:** nicjay74@aol.com
> **Cc:** phil kenner
> **Subject:** Global Settlement
> **Attachments:** AZ Eufora Partners LLC MCKEE 5.4.09.xls
>
> *[Annotation: Sent to McKee hours before h[e] returned the "signed" acknowl[edgment] of Constantine's use of GSF f[rom] the same email address he di[d not] remember receiving the "Acknowledgment" sign off e[mail]]*
>
> Nicole and Jay:
>
> You will be receiving a Transfer of Membership Agreement for your increased interest in Eufora, LLC from our CEO (C.R. Gentry) later this week or next week at the latest. We just have to wait for the other side to sign the Transfer docs as part of the settlement, which is supposed to be in the next few days. In the meantime, this email shall serve as written confirmation that you will be receiving 1/10th of the interest that we acquire from Nolan, Juneau and Moreau with respect to Eufora. Specifically, you will be receiving an additional .364% which is 1/10 of the 3.64% interest that they currently own or owned. The attached excel spread sheet shows your current ownership interest and the interest that we are acquiring from the three of them as part of the settlement. The dollar amounts on the right are the current value of those interest at the $20M valuation (for the whole company). Again, your interest is 1/10 of that and will be added to the .70% you already own.
>
> Additionally, Juneau and Nolan owned 10% each (20% total) of the Avalon Airpark project. We are buying out their 20%, so you will also receive 1/10th of this interest (2%). It is currently valued at $3.3M and the office space is currently being rented by Eufora. You will also be receiving an LLC and operating agreement reflecting your new proportionate share of ownership of this building.
>
> Frankly, although this one is more of a luxury than an investment, you will also own 1/10th of 20% (2%) of the Falcon 10 airplane. It is worth approximately $1M but will be very difficult if not impossible to sell. In any case, this will not cost you guys anything going forward. Ultimately you guys should take advantage of the fact that we now all own an airplane together and when it's geographically feasible, you guys should use it to make owing a piece of it worthwhile. Just let me know whenever you want to use it. You just have to pay for the hourly costs for fuel and the daily costs for the pilots and landing fees.
>
> Finally, as Phil and I stated, I also settled the Palms condo issue with Moreau as part of this global settlement transaction. Moreau had absolutely no right to sue me for the Palms units and I would have crushed him in that lawsuit because we had a signed agreement when he bought it. Nevertheless, since we got that issue resolved as part of the settlement as well, I have elected to share in the ownership of those units and the equity that exists in them with all of the great partners that have stepped up and helped us fix this problem with all these problem individuals. Specifically, these Palms units are a one bedroom and an adjacent studio on the 31st floor with a strip view. They are worth approximately $1.5M today and were worth $1.8-$2M some time ago. I believe they will recover in the future and be worth more than they are today. In any case, you will also be receiving an LLC and operating agreement reflecting your new proportionate ownership of these units. Although Juneau, Nolan and Moreau did not own any interest in these units, to keep things simple, I will just match what we are doing in the Avalon project so you will also receive 1/10th of a 20% interest in these (2%).
>
> **Please do not hesitate to call me if you have any questions and please just to follow the program in terms of documentation.**
>
> **TC**
> **(602) 363-5676**

Jay McKee gave full testimony that he and his wife were *not* told by Constantine (or Kenner) about the multiple planned uses by Constantine of the GSF proceeds. His testimony was specific (*Tr.1820-24*):

15

*Q. Did either Mr. Kenner or Mr. Constantine explain or tell you that any money from the Global Settlement Fund would be used to pay any lawyers other than Ron Richards?*
**A [McKee]: No.**

*Q. In addition to the fund being for -- sorry. Let's go on the rest of that. You will be receiving transfer of membership agreements from Tommy for your acquisition of additional interest in Eufora, LLC, as well as your new LLC and operating agreements reflecting your ownership interest in the Avalon Airpark real estate project, the Falcon 10 aircraft and the 2 Palms Place condominium units. First of all, this Air Park, the Falcon and the Palms condominium units, did Mr. Kenner or Mr. Constantine mention those things before you gave them money?*
**A [McKee]: I don't recall those, no. I don't recall those.**

*Q. In your conversation with them in the restaurant, did they mention those things?*
**A [McKee]: Not that I recall.**

*Q. Would you have given any money to the Global Settlement Fund if you had been told that any portion of it would be used for Eufora?*
**A [McKee]: No.**

*Q. Did you intend any of your money in the Global Settlement Fund Tommy Constantine used for a Falcon 10 aircraft?*

> *MR. HALEY: I would object again just leading nature.*
> *THE COURT: Again, you can't ask these questions that nonleading way so I'm going to allow it. There's no way to cover these items in a nonleading way.*
> *MR. HALEY: Thank you.*

*Q. Let me ask it again. Did you intend for any of your money in the Global Settlement Fund to go to a Falcon 10 aircraft?*
**A [McKee]: No.**

*Q. Would you have given money to the Global Settlement Fund if you had been told that any of it would go to a Falcon 10 aircraft?*
**A [McKee]: No.**

16

> *Q. Would you have -- did you intend any of your money in the Global Settlement Fund to go to two Palms Place condominium units?*
> ***A [McKee]: No.***
>
> *Q. Would you have given any money to the Global Settlement Fund if you knew that any portion of it would go to pay for two Palms Place condominium units?*
> ***A [McKee]: No, I would not.***
>
> *Q. This e-mail says that you would be getting an interest in these things. Why would you be getting interest in these things?*
> ***A [McKee]: I don't have an answer.***
>
> *Q. Did they explain either Kenner or Constantine explain to you?*
> ***A [McKee]: Not that I recall, no.***
>
> *Q. It goes on you may not recall Tommy or I mentioning the Palms units in our conversation. In any case, because Moreau and Tommy settled that case as part of the Global Settlement Fund, he has graciously elected to include you as a beneficiary -- and the sentence continues. When he says graciously elected, what was your understanding of that statement?*
> ***A [McKee]: As I mentioned, I don't know if I've seen this before. Or I don't know if I was the one that opened this, so I'm not sure what that would mean there.***
>
> *Q. Did either Mr. Kenner or Mr. Constantine in their conversation with you in the restaurant indicate that they would graciously give you interest in other properties?*
> ***A [McKee]: Not that I recall.***

In spite of the government's thorough use of McKee's **CTE** (or planned perjury about the well-documented use of GSF funds by Constantine to McKee, and all others), the government ignored the fact that fully impeaching texts were available to discount exactly what McKee testified: "*he could remember never being told*", *supra*.

In spite of McKee's egregious **CTE** symptoms in front of the Court (*or other undue influences*) -- McKee conducted a full text conversation with Kenner immediately after the May 9, 2009 dinner, *infra*.

- At no time (post-dinner) does McKee appear aloof or concerned that he had not heard the exact "same" text details during the dinner meeting that had just

17

completed only hours before...(all *prior* to his acknowledged follow-up independent communication with Michael Peca about the GSF -- *Tr.1817*):

McKee in BLACK (read) -- Kenner responses hi-lighted (sent):

| 7032 | +17168034903 **Jay McKee*** | 5/9/2009 3:46:20 AM(UTC+0) | Read | Thx 4 making the trip bud.. **Took in alot from the talk tnite**.. Drive safe, be in touch.. |
|---|---|---|---|---|
| 8255 | +17168034903 Jay McKee* | 5/9/2009 3:55:39 AM(UTC+0) | Sent | Good stuff |

Then, McKee continued by re-engaging eight (8) hours later:

| 7039 | +17168034903 **Jay McKee*** | 5/9/2009 12:36:25 PM(UTC+0) | Read | **Can u do me a favor.. Can u email me, so I can look at it on paper, everything my 25O turns into.. Nicole was speaking with Tommy when u explained to me all the areas where we are benefiting..** |
|---|---|---|---|---|
| 8265 | +17168034903 Jay McKee* | 5/9/2009 12:37:21 PM(UTC+0) | Sent | **I will have tommy do it so it's <u>consistent</u> with the discussion** |
| 7040 | +17168034903 Jay McKee* | 5/9/2009 12:37:42 PM(UTC+0) | Read | **Perfect, tks** |

Then, McKee continued by re-engaging one and a half (1-½) hours later:

| 7043 | +17168034903 **Jay McKee*** | 5/9/2009 2:12:22 PM(UTC+0) | Read | Hey, also, could u email me what the 3 black sheep are getting in the end result, as well as Tommy bullet points they had 2 agree too.. Tks |
|---|---|---|---|---|
| 8269 | +17168034903 Jay McKee* | 5/9/2009 2:32:11 PM(UTC+0) | Sent | Tommy said you will get 1/10th of everything that is acquired of theirs which includes 20% (2% for you) of the <u>airpark building</u>, 1/10th of their 3.64% of their Eufora shares (.364% for you which puts you just over 1% in Eufora) and then a small piece of the <u>jet</u> which TC is still crunching numbers on but it will probably be 1% of it. |
| 8270 | +17168034903 **Jay McKee*** | 5/9/2009 2:35:46 PM(UTC+0) | Sent | TC will send you the bullets they agreed to but has to wait till it's actually signed. Should be a day or two. They have only agreed by email so far. He will also send you the media summary but he wants you to convince |

18

| | | | | the owner of Chef's to send him the tomato sauce Fed Ex. |
|---|---|---|---|---|
| 7044 | +17168034903 **Jay McKee*** | 5/9/2009 2:43:44 PM(UTC+0) | Read | Haha.. Consider it done.. I'll have Lou put some bottles together with the extra meat for the real flavor.. |
| 8271 | +17168034903 **Jay McKee*** | 5/9/2009 2:45:55 PM(UTC+0) | Sent | Thx |

Then, McKee continued by re-engaging forty-five (45) minutes later:

| 7045 | +17168034903 **Jay McKee*** | 5/9/2009 3:36:47 PM(UTC+0) | Read | **Did TC say the jet was worth 25Om last night?** |
|---|---|---|---|---|
| 8273 | +17168034903 **Jay McKee*** | 5/9/2009 3:44:10 PM(UTC+0) | Sent | **The jet is worth 1.5m. He invested 250k to repair it** |

| 7046 | +17168034903 **Jay McKee*** | 5/9/2009 3:45:53 PM(UTC+0) | Read | **Aha.. Thats where the 25O number came from..** |
|---|---|---|---|---|

| 7048 | +17168034903 **Jay McKee*** | 5/9/2009 3:53:08 PM(UTC+0) | Read | **In the deal, the 3 guys get their money back from their involvement with TC, but nothing back from their Mexico deals, correct..** |
|---|---|---|---|---|
| 8276 | +17168034903 **Jay McKee*** | 5/9/2009 3:54:14 PM(UTC+0) | Sent | **Correct!** |

Then, McKee continued by re-engaging two (2) hours later:

| 7053 | +17168034903 **Jay McKee*** | 5/9/2009 5:43:22 PM(UTC+0) | Read | **If we get control of Jowdys Cabo equity and move to sell Cabo - we get our 5OO back from del mar, and what percent of Cabo do we end up with?** |
|---|---|---|---|---|
| 8282 | +17168034903 **Jay McKee*** | 5/9/2009 5:48:03 PM(UTC+0) | Sent | **Its impossible to say until we know everyone who's involved in getting Jowdy's 40%. For example, the new bank/investor may want half of it to do the deal. But...whatever it is, you will get 1/10 of it.** |

Then, McKee continued by re-engaging four (4) hours later:

| 7060 | +17168034903 **Jay McKee*** | 5/9/2009 10:01:18 PM(UTC+0) | Read | **So is it correct to say we'd get our 5OO back from del mar, as well as a prob minumium 2% of Cabo? Sorry to keep asking - just trying to get it right..** |
|---|---|---|---|---|

19

If McKee did not purposely _lie_ in 2015 to support the government's claims of "*conspiracy by concealment*", then the _inaccurate_ and _unreliable_ testimony by McKee, certainly and prejudiciously contributed to the ongoing collective amnesia (a.k.a. **CTE**) by the GSF contributors. The _faulty_ and _inconsistent_ testimony was entirely in the government's favor while seeking a conviction of Kenner and Constantine – for alleged crimes that McKee – in particular – exhibited **faulty memory, confusion and _clearly_ made a mistake**.

- **The government withheld their crucial knowledge of the McKee CTE from the Court and the texts would have impeached McKee's crucial memory issues.**

Proportionately exculpatory texts have been discovered post-trial thru a hundred-plus hours of review for Ranford, Rucchin, John Kaiser, Kristen Peca, and Nash.

This issue must receive resolution for the government's known malfeasance of _exculpatory concealment_ and _late delivery_; coupled together, presenting an unacceptable standard of pre-trial _Brady_ production and _Gil_ violations.

Respectfully submitted (December 2019).

Phil Kenner