**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>PHILIP A. KENNER, *et al.*,<br><br>Defendants. | Criminal Docket No. 13-0607 (JFB)<br><br>**VERIFIED PETITION OF DANSKE BANK A/S LONDON BRANCH TO ADJUDICATE INTEREST IN PROPERTY PURSUANT TO 21 U.S.C. § 853(n)** |

      Danske Bank A/S London Branch ("Danske") petitions this Court for an ancillary hearing pursuant to Title 21, United States Code, Section 853(n) (the "Petition") to assert Danske's interest in certain property ordered forfeited by the preliminary order (the "Preliminary Order") issued on March 16, 2020.

      1.     Pursuant to 21 U.S.C. § 853(n), Danske asserts its interest as a senior secured lienholder to the following real property and a holder of secured interests in the equity interests in the borrower that is obligated to repay the lien Danske holds in such real property. More specifically, Danske holds interests in the following property set forth in paragraph A(1)-(6) of the Preliminary Order:

      a.     Diamante Cabo San Lucas, Cabo San Lucas, Mexico at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico (the "Resort Property"), and

        b.        Secured interest in shares in Baja Ventures 2006, LLC, Diamante Properties, LLC, CSL Properties 2006, LLC, and KAJ Holdings, LLC (together, the "Equity Interests").

2.        The defendants' interests in the Resort Property and the Equity Interests were ordered forfeited to the United States in this Court's Preliminary Order, subject to the interest of third-party claimants. A summary of and the bases for Danske's interests in the Resort Property and Equity Interests are set forth below.

## I.    SUMMARY OF DANSKE'S CLAIM

### A.    Perfected Senior Interest in the Resort Property and Related Rights

3.        Danske's senior interest in the Resort Property, perfected through the Trust (defined below), secures three lending facilities (Facility A, Facility B, and Facility C) extended to Diamante Cabo San Lucas S. De R.L. De C.V., a Mexican limited liability company (the "Borrower" or "Diamante") and a profit participation fee due from Borrower (the "PPF"), which represents $50 million of unpaid accrued interest. The lending facilities and PPF are governed by the terms of the Third Amended and Restated Loan Agreement, which grants Danske a variety of contractual rights including, upon a default, the right to default interest and to foreclose.

4.        As of April 30, 2020, Danske's claim totals over $197.1 million (USD) inclusive of default interest and unpaid costs and fees to which Danske is contractually entitled. The amount of Danske's claim increases each month as default interest accrues and is added to the principal balance.

5.        The amounts owed to Danske as of April 30, 2020 are set forth in the below table.

| | |
|---|---|
| Facility A Principal Balance | $96.4 million |
| Facility B Principal Balance | $18 million |
| Facility C Principal Balance | $14.1 million |
| PPF | $50 million |
| Unpaid Interest and Unpaid Fees | $18.6 million |
| Total | **$197.1 million** |

6.  As set forth in the above table, the Borrower owes approximately $18.6 million in unpaid interest and fees as of April 30, 2020. The approximately $18.6 million of unpaid interest and fees is comprised of approximately $16.7 million in unpaid interest due on Facilities A, B, and C, an unpaid lenders fee of more than $1,031,000, and an unpaid modification fee of $875,000 arising from the loan modification executed in September 2018 that is described below.

7.  On March 13, 2020, the Borrower deposited approximately $900,000 of certain timeshare deposits into a Facility C reserve. These ring-fenced funds have, for now, been applied to Facility C, and have reduced its principal balance, as of April 30, 2020, to $14.1 million.

      **B.**    **The Equity Interests**

8.  As described below, Danske holds perfected senior secured interests in the Equity Interests and Diamante Cabo San Lucas, LLC and PF Ventures, LLC (together, the "LLCs") that hold, directly or indirectly, ownership interests in the Borrower. As explained above, the Borrower is the second beneficiary of the Trust. Danske perfected its secured interests in the LLCs and the Equity Interests by filing initial and, as necessary, has filed renewal UCC financing statements.

## II.    THE INITIAL LOAN EXTENDED BY LEHMAN

9.     In March 2006, Lehman Brothers Holdings Inc. ("Lehman") extended an acquisition, pre-development, development and construction loan in an amount of up to $125 million to Diamante to acquire the land and to develop the property located at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico into a resort that would include infrastructure to support development and use of the property and any improvements, the "Dunes" golf course, and various homes.  Between 2006 and 2009, Lehman advanced the Borrower $107,538,327.83 for acquisition of the land and development of the Resort Property.

10.    The 2006 Loan Agreement established the structure of the original loan and the rights granted to the then-lender, Lehman.  The 2006 Trust Agreement (defined below) between Diamante, Bank of New York, S.A., and Lehman established that the Trust (defined below) held the Resort Property for Lehman's benefit, as first beneficiary, and that Lehman held a perfected secured senior lien in the Resort Property.

11.    The 2006 Loan Agreement (as well as all subsequent amendments) provides that Mexican law governs the "creation, perfection, priority, enforcement and foreclosure" of liens and secured interests created pursuant thereto.  Under Mexican law, interests in real property are perfected by creating a Mexican guaranty trust that owns the real property for the benefit of the lender.  In accord with Mexican law and the terms of an initial irrevocable guaranty trust agreement (the "Trust Agreement") between Diamante, Lehman (now-Danske), and the Bank of New York Mellon, S.A., the Resort Property is owned by a Mexican guaranty trust numbered F/00321 (the "Trust").

12.    The initial Trust Agreement provided that Lehman is the first-place beneficiary and the Borrower is the second-place beneficiary of the Trust; the Trust Agreement has since been amended twice and pursuant to those amendments, Danske is now the first-place

4

beneficiary.  The Trust Agreement also provides that Borrower, as second-place beneficiary, can only realize its interest in the Resort Property after it fully satisfies its obligations to the first-place beneficiary, Danske.

13.     In addition to obtaining a senior secured interest in the Resort Property, Lehman received security interests in all of the rights, title, and interests (direct or indirect) in the Borrower, i.e., all securities or other property representing the Equity Interests, all accounts or other property relating to the Equity Interests; and all Proceeds arising from the Equity Interests.  In 2006, Lehman perfected the security interests in the LLCs and the Equity Interests by filing UCC financing statements.

14.     The 2006 Loan Agreement granted Lehman the rights to (a) first payment priority, (b) full repayment of the principal balance and interest, including interest accrued on the principal balance, (c) payment of deferred interest (interest unpaid as of the payment date under the loan agreement for which payment is deferred), (d) payment of default interest, with default interest added to the principal balance, (e) recover all of its costs and expenses incurred in connection with the loan, and (f) declare an event of default and to thereafter exercise certain remedies.

### III.   DANSKE ACQUIRES LEHMAN'S INTEREST IN THE RESORT PROPERTY AND EQUITY INTERESTS

15.     Danske purchased Lehman's interests in the Resort Property and the Equity Interests pursuant to the terms of a 1999 Master Repurchase Agreement (the "MRA") and a 2005 committed repurchase facility agreement (with the MRA, the "Repo Agreements").  A repurchase agreement (or "repo") is, in essence, an agreement to engage in two transactions.  In the first transaction, a party sells an asset to a counterparty.  The seller remains obligated to repurchase that asset from the counterparty on an agreed upon date, the "repurchase date."  The

second transaction occurs on the repurchase date when the counterparty sells the asset back to the selling party for full repayment and an additional sum that recompenses the purchasing party for any risk it accepts in connection with the repo.

16. Under the Repo Agreements, Lehman agreed to sell and Danske agreed to buy certain assets, e.g., interests in commercial loans, in transactions totaling up to $800 million. Danske and Lehman also agreed that, pursuant to the terms of the Repo Agreements, Lehman would—at the repurchase price and on the repurchase date agreed to by the parties—repurchase the assets it sold to Danske.

17. As relevant to Danske's claim, Danske purchased its interests in the Resort Property and Equity Interests from Lehman pursuant to the terms of the Repo Agreements by providing Lehman with funds (in the form of a purchase price) in exchange for obtaining title to Lehman's interests in the Resort Property and Equity Interests. Under the terms of the MRA, "[a]ll of [Lehman's] interest would pass" to Danske upon purchase of Lehman's interests. In other words, under the terms of the Repo Agreements and New York law (which governs the Repo Agreements), Danske obtained title to Lehman's interests in the Resort Property and Equity Interests as early as the date Lehman sold those interests to Danske in exchange for funding provided under the Repo Agreements.

18. On September 15, 2008, Lehman filed for bankruptcy protection. The MRA defined bankruptcy as an event of default that allowed Danske to require immediate payment of the repurchase prices owed for all transactions completed under the Repo Agreements. The MRA also provided that, upon a Lehman default, Danske had the option to refuse to retain the interest it purchased and instead demand Lehman satisfy its debt through some other form of value or payment. The value of any purchased interests under the MRA that Danske elected to

retain would be used to credit Lehman's account under the Repo Agreements and reduce the aggregate repurchase amount due to Danske from Lehman.

19. Danske notified Lehman that it had defaulted under the MRA on September 15, 2008 and September 23, 2008. By the time of Lehman's defaults in September 2008, Danske had purchased from Lehman several senior secured interests in commercial mortgages, which were held by Bank of New York ("BNY") for Danske's benefit, including Lehman's interest in the Resort Property. A contemporaneous trust receipt provided by BNY established that it held Lehman's interest in the Resort Property (which, by operation of the 2006 Loan Agreement and related pledges, also included Lehman's interest in the Equity Interests) for Danske's benefit.

20. Following Lehman's default, Danske evaluated which specific assets it would elect to retain under the Repo Agreements as partial satisfaction of the repurchase amount owed by Lehman to Danske. On or around December 5, 2008, Danske informed Diamante that Danske would retain Lehman's interests in the Resort Property and Equity Interests, along with certain other assets, as partial satisfaction of the repurchase price Lehman still owed to Danske under the Repo Agreements. Even after Danske elected to retain the interests it had purchased in the Resort Property and Equity Interests (along with the interests Danske purchased in other senior liens) and credited Lehman's account, Lehman still owed Danske hundreds of millions of dollars under the Repo Agreements and a separate, but related residential mortgage repurchase agreement. As a result, Danske filed a proof of claim (Claim No. 19487) in the Lehman bankruptcy proceeding in which Danske sought to recover $699,657,333.82 as the net aggregate amount Lehman owed to Danske.

21. When Danske initially purchased and acquired its interests in the Resort Property and Equity Interests from Lehman, Danske neither knew nor had reason to know that the Resort

7

Property or the Equity Interests were subject to forfeiture. Similarly, when Danske elected to credit Lehman for the value of the interests in the Resort Property and Equity Interests rather than declining to retain the interests Danske purchased under the Repo Agreements, Danske neither knew nor had reason to know that the Resort Property or the Equity Interests were subject to forfeiture.

22.    On January 13, 2009, when Lehman and Danske executed an omnibus assignment and assumption agreement (the "Assignment and Assumption Agreement"), Lehman assigned and Danske assumed all of Lehman's rights, obligations, and interests under the loan agreements. More specifically, Lehman assigned, transferred, and made payable to Danske all obligations of Borrower, including but not limited to interest, principal, and all other sums that were due or would become due under the March 2006 loan and promissory note, its senior secured lien in the Resort Property (as secured through the Trust) and its secured Equity Interests. Lehman also assigned to Danske all collateral securing the loan including but not limited to the Borrower's assignment of all leases and rents, assignment of beneficiary rights under any trust or similar agreement, assignment of rights under any collateral agreement and/or UCC financing statement assignment, an allonge, and assignment of the mortgage.

23.    In early 2009, the Borrower owed Lehman $107,538,327.83 in principal and $49,132,479 in unpaid accrued interest. After Danske loaned the Borrower an additional $1.6 million under the original loan facility in early 2009, the principal balance due increased from $107,538,327.83 to $109,138,327.83. In March 2009, at the time Danske entered into a new agreement with the Borrower, the Borrower owed $109,138,327.83 in principal and $49,132,479 in unpaid accrued interest.

24. At the time Lehman formally assigned its rights, interests, and claims in the Resort Property and Equity Interests to Danske and Danske formally assumed such rights, interests, and claims, Danske neither knew nor had reason to know that the Resort Property and Equity Interests were subject to forfeiture.

### IV. SUBSEQUENT MODIFICATIONS AND AMENDMENTS TO THE 2006 LOAN AGREEMENT

25. On March 6, 2009, Danske and the Borrower entered into an Amended and Restated Loan Agreement that modified the structure of the original loan by splitting it into Facility A and Facility B. Under the new structure, Facility A represented the amount of unpaid principal advanced to the Borrower under the original loan in an amount of $109,138,327.83, which was comprised of the $107,538,327.83 loaned by Lehman and the $1.6 million Danske loaned the Borrower in early 2009. Facility B was established as a revolving line of credit of up to $16 million, which represented the amount remaining to be advanced under the original loan. In addition, unpaid accrued interest (then totaling approximately $49 million) was to be repaid as the "Profit Participation Fee" (PPF) which was to be calculated using a formula established by the Amended and Restated Loan Agreement.

26. The Amended and Restated Loan Agreement (and related documents) entitled Danske to the same rights that Lehman had, *see, e.g.*, ¶ 14, *supra*, and the payment, completion, and recourse guarantees made to Lehman were reaffirmed in favor of Danske. Danske and the Borrower also executed an amended Trust Agreement that acknowledged Danske as "Beneficiary in First Place as creditor under the Amended and Restated Loan Documents" and, pursuant to Mexican law and the amended Trust Agreement, affirmed that Danske held a perfected priority security interest in the Resort Property.

27. At this same time, Danske formalized its assumption of Lehman's priority secured interests in the Equity Interests in the LLC Entities and the pledge agreements executed in Lehman's favor were reaffirmed in Danske's favor. To ensure that the priority secured interests in the LLCs and Equity Interests remained perfected, Danske filed UCC financing statements naming Danske as the new secured party. At this same time, PF Ventures, LLC ("PF Ventures"), an LLC entity with an equity interest in the Borrower's managing member (Diamante Cabo San Lucas LLC), granted Danske a "first priority security interest in all of Pledgor's right, title and interest" in the Borrower's managing member. Danske promptly perfected PF Ventures's pledge by filing a UCC-1 financing statement. Throughout the relevant timeframe, Danske's first priority secured interests in the Equity Interests have remained perfected.

28. In January 2010, Danske and Diamante agreed to a loan modification that increased the Facility B line of credit from $16 million to $20 million in order to enable the Borrower to finance ongoing operations and continue development at the Resort Property.

29. Beginning in March 2012 and through March 2013, Danske and the Borrower agreed to a series of extensions of the loan maturity dates for Facilities A and B.

30. By the end of April 2013, Facility A had a principal balance of $123,427,361.29 and Facility B had a principal balance of approximately $21,242,353.07.

31. On April 26, 2013, Danske and Diamante entered into the Second Amended and Restated Loan Agreement, which modified the loan by: (a) increasing the unpaid principal balance of Facility A to $123.5 million to reflect the capitalization of accrued but unpaid interest on Facilities A and B and the payment of certain of Danske's costs and expenses; (b) replacing Facility B with two notes: a new Facility B with a principal amount of $18 million and a new Facility C with a principal balance of $2 million; (c) establishing a new Facility D that advanced

new funds of $3 million; (d) increasing the PPF from approximately $45 million to a definitive $50 million; and (e) extending the maturity dates for Facilities A and B to March 31, 2016.  The purpose of this modification and advancing new money was to finance further development of the Resort Property.

32. On April 29, 2014, Danske and Diamante executed the Third Amended and Restated Loan Agreement, which, among other things, modified the loan structure by consolidating then-Facility C and then-Facility D into a replacement Facility C.  Replacement Facility C, a revolving line of credit, increased the Borrower's available line of credit by $10,000,000, which permitted the Borrower to draw and redraw funds of up to $15,000,000 from Facility C.  The Third Amended and Restated Loan Agreement also extended the maturity date for the Facility C Note to March 31, 2015.  The primary purpose of this modification was to advance additional funds to continue development of the Resort Property.

33. The Third Amended and Restated Loan Agreement entitled Danske to a number of rights including full repayment of: (a) the principal balance on Facilities A and B on or before March 31, 2016, and on Facility C on or before March 31, 2015; (b) principal and interest, including payment of interest accrued on the principal balance; (c) payment of the PPF in the amount of $50 million; (d) if the Borrower defaulted, payment of default interest at a rate of 20% with accrued default interest added to the principal balance owed to Danske; (e) first payment priority on all amounts owed and due; and (f) all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the loan.

34. In October 2014, Danske and Diamante modified the terms of Third Amended and Restated Loan Agreement by extending the maturity dates for Facilities A and B to October 30, 2024 and for replacement Facility C to October 31, 2017.

35. At the time Danske entered into each of the foregoing agreements with Diamante, Danske neither knew nor had reason to know that the Resort Property or Equity Interests were subject to forfeiture. In fact, the government did not identify the Resort Property as subject to forfeiture in any Court filing until the filing of a second Bill of Particulars on August 20, 2015.[1]

36. In September 2018, Danske and Diamante modified and amended the terms of the Third Amended and Restated Loan Agreement retroactive to November 1, 2017 in material part by extending the maturity date for Facility C from October 31, 2017 to December 31, 2018 and extending the due date for certain scheduled amortization payments on Facility A.

37. Notwithstanding the September 2018 modification, the Borrower was in default under the Third Amended and Restated Loan Agreement as of December 31, 2018 due to Diamante's failure to make principal payments on Facilities A and C due by December 31, 2018 and to pay the loan modification fee of $875,000. The Borrower's default continued throughout 2019 as a result of a failure to make monthly principal payments and payments of interest. In January 2020, Danske issued a notice of default to the Borrower.

38. As a consequence of these defaults, default interest is accruing on Facility A, Facility B, and Facility C at the rate of default rate set forth in the Third Amended and Restated Loan Agreement, 20% per annum. As of the date of this Petition, Danske's lien now totals $197.1 million. With every month that passes, interest continues to accrue and add to the principal balance. As a result of this accrual, Danske estimates that its claim will total at least $211 million in September 2020.

---

[1] In an April 22, 2015 Bill of Particulars, the government identified only two LLCs, Baja Ventures 2006, LLC and Diamante Properties, LLC, as potentially subject to forfeiture.

## V.  DANSKE BANK IS A BONA FIDE PURCHASER FOR VALUE

39. Under 21 U.S.C. § 853(n), a party is a bona fide purchaser for value who, at the time of purchase, lacked reasonable cause to know that the Resort Property or Equity Interests were subject to forfeiture.

40. Danske gave value in exchange for its secured interests in the Resort Property and the Equity Interests in at least two ways.

41. Danske gave value for its interests in the Resort Property and Equity Interests by purchasing its interests through a transaction completed pursuant to the terms of the Repo Agreements. Under New York law and the Repo Agreements, Danske acquired title to Lehman's interests in the Resort Property and Equity Interests as early as the date upon which Lehman sold its interest to Danske and no later than the date of Lehman's first default, September 15, 2008. After Lehman defaulted under the Repo Agreements on September 15, 2008 and September 23, 2008, Danske elected to retain the interests it purchased in the Resort Property and Equity Interests. Therefore, as satisfaction for the amounts owed to Danske under the Repo Agreements, Danske had full right to the secured interests in the Resort Property and Equity Interests as of Lehman's default and, at the very latest, as of January 2009, pursuant to the Assignment and Assumption Agreement.

42. In addition, from 2009 to the present, Danske has advanced tens of millions of dollars to further development of the Resort Property, which has inured to the Resort Property's benefit. Indeed, without these advances and the extensions of maturity dates afforded Borrower to make certain principal and interest payments, the Resort Property would be worth far less than it is today. These advances were used to develop the property into the resort it has become.

43. Danske was without reason to know of the potential forfeitability of the Resort Property and Equity Interests at the time it advanced funds to the Borrower, at the time it

purchased its interest from Lehman, at the time of Lehman's defaults, or at the time it formally assumed Lehman's interest, rights, and claims to the Resort Property and Equity Interests.

44. For the reasons set forth herein, Danske is a bona fide purchaser and has superior, senior interests in the Resort Property and the Equity Interests. In addition, as a bona fide purchaser, Danske respectfully submits that it is entitled to enforcement of its contractual rights pursuant to the Third Amended and Restated Loan Agreement, as amended, and all related loan documents (including but not limited to the Trust Agreement).

## VI. PRAYER FOR RELIEF

45. WHEREFORE, Petitioner Danske respectfully requests that this Verified Petition be granted, that the Court amend its initial orders of forfeiture, to: (a) recognize Danske's first priority lien on the Resort Property and perfected senior security interests in the Equity Interests, (b) recognize the terms of the Third Amended and Restated Loan Agreement (as amended), including Danske's entitlement to all default interest amounts accumulated and to foreclose on the Resort Property in addition to all other contractual entitlements specified therein, and (c) to such other and further relief, either at law or in equity, to which Danske is entitled.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Dated:  New York, New York
       May 6, 2020

                                            **VENABLE LLP**

By: */s/ George Kostolampros*

George Kostolampros
(gkostolampros@venable.com)
600 Massachusetts Ave NW
Washington DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

      AND

Doreen S. Martin
Xochitl S. Strohbehn
(dsmartin@venable.com)
(xochitl.strohbehn@venable.com)
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

*Attorneys for Danske Bank*

15

## VERIFICATION

I, David Daniel, Head of London Non-Core of Danske Bank A/S London Branch ("Danske"), verify, pursuant to 28 U.S.C. §1746, under penalty of perjury and the laws of the United States of America that the foregoing Petition is true and correct according to the best of my knowledge.

Dated:  May 5, 2020

_____
David Daniel, Head of London Non-Core
Danske Bank A/S London Branch