

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

May 15, 2020

Honorable Joseph F. Bianco
United States Circuit Judge
Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

> Re:   United States v. Kenner and Constantine
>       No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

The government respectfully writes in response to the letter and petition filed by Danske Bank A/S London Branch ("Danske") on May 6, 2020.  See Docket Entries ("DE") 835 and 836.  For the reasons set forth below, Danske's petition is premature and should be held in abeyance until the government completes the steps required to commence an ancillary proceeding in accordance with the provisions of Rule 32.2 of the Federal Rules of Criminal Procedure.

> I.   Conduct of the Ancillary Proceeding

The post-trial ancillary proceeding affords third parties an opportunity to establish their legal right, title or interest in criminally forfeited property.  See 21 U.S.C. § 853(n).  The ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure.  See, e.g., Pacheco v. United States, 393 F.3d 348, 352 (2d Cir. 2004) (commenting that civil procedures aid efficient resolution of claims in ancillary proceeding); Fed. R. Crim. P. 32.2(c)(1) (authorizing motions to dismiss, discovery, and motions for summary judgment in ancillary proceeding).

In order to advance a claim in an ancillary proceeding, a third-party claimant must first establish a "legal interest" in a particular asset identified in the order of forfeiture, within the meaning of 21 U.S.C. § 853(n)(2).  United States v. Watts, 786 F.3d 152, 160 (2d Cir. 2015) (citing United States v. Ribadeniera, 105 F.3d 833, 835 (2d Cir. 1997)); see also United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture."

(citation omitted)); <u>United States v. Salti</u>, 579 F.3d 656, 667 n.11 (6th Cir. 2009) (holding that standing must be supported in same way as any other matter on which claimant bears burden of proof (citation and quotation marks omitted)).

Only after a claimant makes a threshold showing of standing under Section 853(n)(2) may a court reach the merits of a claim, at which point the court must determine whether the claimant has met the burden of showing that his or her legal interest is a "superior interest" as compared to the government's interest at the time of the acts giving rise to forfeiture. <u>Watts</u>, 786 F.2d at 160; <u>Pacheco</u>, 393 F.3d at 351 ("burden [falls] ultimately on the petitioner to prove her claim by a preponderance of the evidence"); <u>Timley</u>, 507 F.3d at 1130, n.2 (distinguishing between "legal interest" required for claimant to establish standing under Section 853(n)(2), and "superior legal interest" required for claimant to ultimately prevail on merits under Section 853(n)(6)); <u>United States v. Nava</u>, 404 F.3d 1119, 1125 (9th Cir. 2005) ("[T]he petitioner bears the burden of proving his right, title, or interest under Section 853(n)(6).").

In order to show a superior legal interest, a claimant must either demonstrate under Section 853(n)(6)(A) that he or she had priority of ownership over the forfeited property at the time of the offense, or must demonstrate under Section 853(n)(6)(B) that he or she subsequently acquired the property as a bona fide purchaser for value without cause to believe the property was subject to forfeiture. <u>Ribadeniera</u>, 105 F.3d at 834-35. In addition, under the relation back doctrine, the government's exclusive interest in forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture . . . ." 21 U.S.C. § 853(c); <u>Nava</u>, 404 F.3d at 1124 ("The title to forfeited property vests in the United States at the time the defendant commits the unlawful acts . . . .").

In sum, the ancillary proceeding is essentially a quiet title proceeding in which the Court must determine, under the standards set forth in Section 853(n)(6), whether forfeited property actually belongs to the third party that has asserted a claim to it. <u>See</u>, <u>e.g.</u>, <u>United States v. McHan</u>, 345 F.3d 262, 275-76 (4th Cir. 2003) (holding that petitioner in ancillary proceeding, which is akin to equitable quiet title proceeding, has no Seventh Amendment right to jury trial). If the forfeited property belongs to the third party, then the property must be stricken from the order of forfeiture; however, if the property does not belong to the third party, then the preliminary order of forfeiture becomes final and the United States becomes the exclusive titleholder to the property. <u>See</u> 21 U.S.C. §§ 853(n)(6) and (7); <u>United States v. Puig</u>, 419 F.3d 700, 703 (8th Cir. 2005) (holding that if no third party files a meritorious claim to assets included in order of forfeiture, then United States obtains clear title to property pursuant to 21 U.S.C. § 853(n)(7)).

In accordance with the provisions of Rule 32.2, the Preliminary Orders entered by the Court in this case authorize the government to commence an ancillary proceeding by publishing notice of the Preliminary Orders and sending notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture of the Forfeitable Assets. <u>See</u> Preliminary Orders, DE 825 and DE 826, at ¶¶ 3-4; Fed. R. Crim. P. 32.2(b)(6). Consistent with the custom and practice in this district, the Preliminary Orders also authorize publication on the government website, www.forfeiture.gov, which is to required to run for a period of thirty days under the applicable rules. <u>See</u> Preliminary Orders, at ¶ 4; Fed. R. Crim. P. 32.2(b)(6)(C) (cross-referencing internet publication procedures found in Fed. R. Civ. P. Supp. R.

G(4)(a)(iv)(C) that govern in rem forfeiture actions).  Within thirty days following final publication or receipt of direct notice, the Preliminary Orders further authorize any third party asserting a legal interest in the Forfeitable Assets to file a petition requesting a hearing to adjudicate the validity of its alleged interest in the property and seeking amendment of the order to recognize the claimed interest.  See Preliminary Orders, at ¶ 5 (citing 21 U.S.C. § 853(n)(6)).

II.     Danske's Petition Is Premature and Should Be Held In Abeyance Pending
        The Government's Commencement Of The Ancillary Proceeding

        At present, the government has yet to commence an ancillary proceeding by publishing notice of the Preliminary Orders and sending notice to potential third-party claimants.[1]  This renders Danske's petition premature.  See United States v. Marion, 562 F.3d 1330, 1338 (11th Cir. 2009) (recognizing that authority to commence ancillary proceeding rests with government) (citing Advisory Committee Notes to Fed. R. Crim. P. 32.2).

        Danske suggests to the Court that the government has been unresponsive and unwilling to move forward with a settlement, when, in fact, the government has been actively negotiating a settlement with Danske, reviewing thousands of pages of claim-related documents, and consulting with experts to determine the best method to forfeit DCSL.  Prior to the Court's entry of the Preliminary Orders and up until the present, the government, counsel for Danske, and counsel for DCSL and Ken Jowdy ("Jowdy"), have been engaging in settlement negotiations.  Initially, it appeared that a potential settlement would obviate the need for an ancillary proceeding as to DCSL.  However, after weeks of discussions, Danske withdrew the settlement offer that the parties had been extensively discussing and proposed a new settlement that was significantly less beneficial to the government.  Nevertheless, the government continued to engage in settlement discussions with Danske, DCSL and Jowdy.  Throughout the course of the settlement discussions, and, indeed, throughout the course of the litigation in this case, the government had asked Danske to produce proof of its claimed debt.  However, despite the numerous requests and ongoing settlement discussions, Danske delayed providing any financial transaction documentation to support its claimed debt, seemingly wanting the government to agree to a settlement without confirming that Danske had a valid approximately $200 million claim.  It was not until March 12, 2020, that Danske produced financial transaction documentation to support its claim.  Thereafter, it produced additional documentation on March 22, 2020, March 30, 2020, March 31, 2020, April 1, 2020, April 3, 2020, the morning of April 15, 2020, the evening of April 15, 2020, and April 22, 2020.  Indeed, Danske's most recent production on April 22, 2020, which consisted of thousands of pages, was produced a mere six business days prior to Danske's May 1, 2020 email to the government demanding that the government accept its near $200 million claim and agree to its considerably reduced settlement offer.  Even under normal operating procedures, Danske has not provided the government adequate time to review the thousands of pages of documentation that purportedly support Danske's claim, and to determine whether Danske's reduced settlement proposal is justified.  Instead, and despite the government's repeated requests that Danske provide it a reasonable

        [1] In addition to Danske, there are other third parties that could potentially assert an interest in the Diamante Cabo San Lucas resort ("DCSL"), such as CSL Properties 2006, LLC, Diamante Properties, LLC, and a number of individuals.

3

amount of time to review the documentation, Danske has badgered the government in an effort to coerce a settlement.

Contrary to Danske's claim that it "has provided the government with all of the documents necessary to determine Danske's claim," DE 835 at p. 2, the documentation that Danske has provided to date is unclear, inconsistent and incomplete. The government retained forensic accounting experts to assist it in reviewing Danske's documentation. The experts observed numerous deficiencies in Danske's claim documentation. By way of example, Danske has not provided any information about: a) the actual recipient of $92,196,180.00 in funds that Danske claims, but has yet to document, it sent to DCSL; b) Danske's records reflect an additional $14,800,405.00 in unexplained "transfers"; and c) Danske claims $3,427,293.00 in unexplained "miscellaneous" fees and expenses. Moreover, Danske's financial records are inconsistent with the records Danske provided from Trimont, the company utilized by Lehman and Danske to service the debt through 2016. In light of these inconsistencies and inadequacies, among a myriad of others, the government requested additional documentation from Danske. Rather than provide the documentation to substantiate its claim, however, Danske refused to provide any further information and wrote the Court to demand an expedited ancillary proceeding-- apparently abandoning the settlement negotiations that may have obviated the need for an ancillary proceeding. The government is entitled to conduct discovery on the issue of any claimant's standing under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Suppl. Rules"). Pursuant to Suppl. Rule G, once a claim is filed, the government may serve Special Interrogatories to establish a claimant's standing, which is a threshold, jurisdictional issue in any forfeiture action. Suppl. R. G(6)(a). In addition, the government has a right to conduct discovery, including serving formal document demands, pursuant to the Preliminary Orders and Fed. R. Crim. P. 32.2(b)(3) and (c), to obtain the documentation it requested from Danske. Accordingly, Danske's refusal to respond to the government's informal requests will not relieve it of its obligation to produce records and proof of its claim.

In addition to hiring an expert to review Danske's claim materials, the government has retained experts to assist with the forfeiture of DCSL. The government is evaluating several possible methods for forfeiting the property in order to determine which method of forfeiture will maximize recovery but have the least impact on the resort's operations. Thus, given the fact that the government is weighing a host of forfeiture options, weighing the impact the global pandemic might have on the forfeiture, and operating under the present quarantine conditions, the government respectfully requests that Danske's petition be held in abeyance while the government continues to evaluate its options and work towards the best possible forfeiture resolution.[2] In addition, although Danske has abandoned settlement efforts by

---

[2] A letter filed May 13, 2020 by a homeowner at the resort urges the Court to determine Danske's claim, in part because there is no funding for the resort. DE 839. The homeowners, whose interests have been carved out of the Preliminary Order, have no standing in the ancillary proceeding. Moreover, it is unclear what funding is necessary if the resort is essentially shut down due to COVID-19, as the homeowner acknowledges in his letter. Further, the government notes that despite the homeowner's claim that there is no other source of funding available to

filing its letter and requesting an ancillary proceeding, the government believes that, with assistance from the Court, and provided that Danske can substantiate its claim, the government and Danske may nonetheless reach a settlement that will resolve the forfeiture of the DCSL property without the need for an ancillary proceeding involving numerous claimants.

Accordingly, the government respectfully requests that the Court hold Danske's petition in abeyance while the government reviews Danske's claim and determines the best method to forfeit the property in this case.

Thank you for Your Honor's consideration of this submission.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Madeline O'Connor
      Madeline O'Connor
      Diane C. Leonardo
      Assistant U.S. Attorneys
      (631) 715-7870
      (631) 715-7854

cc:  Philip Kenner, by mail
     All counsel of record by ECF

---

DCSL, a GoFundMe page, organized by Jowdy, has raised approximately $150,000 to date for the purported benefit of DCSL workers.

5