

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

May 18, 2020

**VIA ECF**

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

    Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

    We write on behalf of Danske Bank A/S London Branch ("Danske") to reply to the government's May 15, 2020 letter and to respectfully request, pursuant to Your Honor's individual rules of practice, a pre-motion conference so that Danske may file a motion for summary judgment and obtain an expeditious adjudication of Danske's senior secured interests in the Resort Property and the Equity Interests that were deemed forfeited to the United States subject to the interests of third-parties. *See* Dkt. Nos. 825 (¶ A(1)-(6)), 826 (¶ A(1)-(6)).

    **1.**    **Danske's Petition Is Timely**

    21 U.S.C. § 853(n)(2) entitled Danske to file its petition requesting adjudication of its interest in property ordered forfeited upon entry of a preliminary order of forfeiture. The government points to no statutory authority requiring Danske to wait to file its petition until the government gets around to publishing the notice Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure requires. The government claims *it* is the sole party with the authority to begin an ancillary proceeding, relying on *U.S. v. Marion*, 562 F.3d 1330 (11th Cir. 2009). But *Marion* did not hold that third parties must wait to file their petitions until after the government decides to provide notice, which, if true, would create due process issues by allowing the government to unilaterally delay a party's right to be heard. In all events, procedural rules do not trump the statutory regime that establishes the government's obligations and third-parties' entitlements following entry of a preliminary order of forfeiture. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 n.4 (2010) ("Congress has plenary power to override the Federal Rules, so its enactments . . . prevail even in case of a conflict."). It would make little sense if, as the government contends, the statutory bar on intervention set forth under 21 U.S.C. § 853(k) could be extended indefinitely due to the government's refusal to publish the notice that Section 853 and Rule 32.2.(b)(6) require.

    **2.**    **Danske Has Produced Thousands of Pages of Documents—the Government Is Simply Stalling And Continuing to Ignore the Urgency of the Matter**

The Honorable Joseph F. Bianco
May 18, 2020
Page 2

For more than four years, Danske attempted to negotiate a resolution of its claim only to be told by the government at every turn that Danske's efforts were premature and would be addressed once a preliminary order was entered. Now that a preliminary order has been entered and Danske is statutorily entitled to assert its claim, the government argues, yet again, that Danske's attempt to assert its claim is premature and should be held in abeyance. Time has run out, and Danske and the Resort Property cannot and need not wait any longer.

The government contends that it had "been actively negotiating a settlement" with Danske and borrower's counsel and that Danske "has delayed providing any financial transaction documentation to support its claimed debt . . . ." Not so. Until the government's most recent request, Danske was responsive to every government request for documents. And, in hopes of settling expeditiously, Danske provided loan and other documents to the government years ago, as early as late *2015* and again in October 2019. Since the Court's issuance of the preliminary order, Danske has also responded to the government's follow up requests by providing additional documents on March 13, March 30, and April 2, including examples of wire transfers of advances from Danske to the borrower.[1] The documents sent to the government in March 2020 total less than 400 pages and should have been reviewable by May—even under the work-from-home Pandemic conditions.

In its May 15 letter to the Court, the government claims that Danske has not provided any information about the actual recipient of approximately $92 million in advances from Danske.[2] It is unclear what the government is asking for because Danske has already provided the government with Danske statements that were addressed to the borrower as well as a third-party servicer's own statements setting forth, among other things, advances made by Danske to the borrower. It defies logic to believe that the Resort Property's development could have occurred without $92 million in financing from Danske. Additionally, these advances and fees were all in accordance with modifications and amendments to the loan agreement as set forth in Danske's Verified Petition. Astoundingly, the government questions an outbound transfer of $1 million on November 5, 2019 in the $92 million the government claims that Danske has failed to document it sent to the borrower. Danske, however, provided the government on March 31, 2020 wire transfer information showing that $1 million was sent to the borrower's bank account on November 5, 2019.

The government has wasted valuable time by sitting on Danske's previous offers. The government complains that, "after weeks of discussions, Danske withdrew the settlement offer that the parties had been extensively discussing and proposed a new settlement that was significantly less beneficial to the government." As to the most recent Danske offer, if the government had any

---

[1] Danske produced 5 additional documents to the government on April 15; it has no record of any production made after April 15.

[2] The government claims that Danske's records reflect $14,800,405.00 in purportedly "unexplained" transfers and $3,427,293.00 in "unexplained" miscellaneous fees and expenses. Just like the $92 million, these transfers are explained by the underlying documents. For instance, included as part of the $14.8 million that the government claims are unexplained transfers is a $308,052 transfer in April 2016, but the government has documents showing that the "unexplained" transfer was a credit for a principal payment. Further, the underlying agreements set forth Danske is entitled to reimbursement of its fees, including servicer's fee, attorneys' fees and other fees.

2

The Honorable Joseph F. Bianco
May 18, 2020
Page 3

confidence in its appraisal (which in recent discussions with Danske's counsel, it still stood by), then the offer is significantly better than Danske's previous offer. Further, Danske's revised offer was driven by financial realities arising from the Pandemic's catastrophic impact—an impact that could have been avoided if the government had accepted Danske's previous offer even if in principal subject to further validation. That the government still will not even agree to a settlement in principal, subject to validating Danske's claim, makes clear that Danske must litigate its claim.

As Danske has previously explained, the borrower has very little capital available to finance operations and development costs at the Resort Property—costs that remain ongoing despite the lockdown. The borrower's cash constraints have grown even more dire as a result of the Pandemic because the Resort Property is generating no revenue to support its operations. The government's apparent naïve suggestion that operations or expenditures cease during a lockdown simply serves as a reminder of how little the government has done to familiarize itself with the running of the Resort Property.

### 3. Danske's Petition Can and Should Be Decided Now

There is no reason to hold Danske's petition in abeyance and to not proceed with determining Danske's claim through a motion for summary judgment. Importantly, with every month that passes, Danske's claim—which totals over $197.1 million (USD) as of April 30, 2020 grows and the Resort Property will require a capital infusion to continue. Time is of the essence to resolve Danske's claim and allow Danske or another institution to provide the capital the Resort Property so badly needs.

Summary judgment is legally appropriate and warranted by the exigencies of this situation. To adjudicate Danske's claim, the Court must answer one question: whether, as a matter of law, Danske is a bona fide purchaser for value? This question can be decided—in Danske's favor—on a motion for summary judgment. Documents—which the government has or will be given prior to Danske's motion—show indisputably that Danske gave value for its interest and acquired its interest years before Danske knew or had any reason to know the Resort Property was subject to forfeiture. Further, the documents, including the underlying agreements, Danske statements to the borrower and third-party servicer statements are indisputable evidence of the advances made by Danske. In short, there is no genuine dispute as to any material fact relevant to Danske's claim and the situation at the Resort Property is growing increasingly precarious.

For the foregoing reasons, Danske respectfully requests that the Court schedule a pre-motion conference so Danske may move for summary judgment. We are available this week.

Respectfully,

*[signature]*

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn

3

The Honorable Joseph F. Bianco
May 18, 2020
Page 4


cc: All parties of record via ECF
Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)

The Honorable Joseph F. Bianco
May 18, 2020
Page 4