# EXHIBIT B



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Western Case Management Center

October 20, 2009

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

**VIA FACSIMILE**

Michael L. Meeks, Esq.
Becky Hsiao, Esq.
BuchalterNemer
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612

Thomas M. Baker, Esq.
Baker & Baker
5050 N. 8th Place, Suite 10
Phoenix, AZ 85014-3203

Paul J. Augustine, Esq.
Augustine & McKenzie, PLLC
1004 W. Fort Street
Boise, ID 83702

Re: 76 148 Y 00223 08 JENF
    Diana Nolan and Owen Nolan
    and
    Philip A. Kenner,
    Standard Advisors, Inc. and Standard Advisors, LLC

Dear Parties:

By direction of the Arbitrator panel we herewith transmit to you the duly executed Amended Final Arbitration Award in the above matter. This serves as a reminder that there is to be no direct communication with the Arbitrator. All communication shall be directed to the Association.

If you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

/s/

Jennifer Nilmeier
Manager of ADR Services
559-490-1862
JenNilmeier@adr.org

JN/ji
Enclosure

    cc:    Hon. Bruce E. Meyerson (Via Email, Without Enclosure)
             Hon. Frank X. Gordon, Jr. (Via Email, Without Enclosure)
             Hon. Colin Campbell, Esq. (Via Email, Without Enclosure)

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

| | |
|---|---|
| DIANA NOLAN and OWEN NOLAN, ) | AAA No. 76 148 Y 00223 08 JENF |
| ) | |
| Claimants, ) | AMENDED FINAL ARBITRATION |
| v. ) | AWARD |
| ) | |
| PHILIP A. KENNER, STANDARD ) | |
| ADVISORS, INC. and STANDARD ) | |
| ADVISORS, LLC, ) | |
| ) | |
| Respondents. ) | |

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby issue this AMENDED FINAL ARBITRATION AWARD, as follows:

This arbitration case presents a dispute between a professional hockey player and his wife, Claimants Owen and Diana Nolan, and Respondents Philip Kenner, Standard Advisors, Inc., and Standard Advisors, LLC (collectively "Standard Advisors"). Claimants were represented by Buchalter Nemer. Respondents were represented by Baker & Baker and the Law Offices of Ronald Richards & Associates. The Panel, Arbitrators Hon. Colin Campbell (Ret.), Hon. Frank X. Gordon, Jr. (Ret.) and Hon. Bruce E. Meyerson (Ret.), took testimony over the course of several days, May 26-30, 2009, and the written record comprises exhibits, expert reports, deposition designations, declarations and affidavits.

### (A) Factual Background

Although many factual issues are disputed in the arbitration, the following facts are not. Owen Nolan is a highly successful professional hockey player. At the pinnacle of his career, his sports agent negotiated a $30 million contract for him with a provision that protected his payment in the event of a lock-out by adding payments due during a lock-out to the back of the contract term. He still plays professional hockey, although he is approaching the end of his athletic career.

Philip Kenner has worked in the past as an investment advisor and more recently as a business advisor for Mr. and Mrs. Nolan. He has relationships with a number of professional hockey players. Prior to 2003, he worked for Asante Global Advisors ("Asante") and held various securities licenses. Both sides agree that while employed by Asante, Mr. Kenner had fiduciary duties as an investment advisor to the Nolans.

In 2003, Mr. Kenner left Asante and formed his own business, Standard Advisors, Inc. He prepared a formal contract which Owen Nolan signed on April 3, 2003, retaining Mr. Kenner to provide "business management and other services." The formal contract enumerated certain duties and responsibilities that Mr. Kenner undertook for Mr. Nolan. These include maintaining deposit accounts and paying bills, preparing checks, completing accounting and books and records, preparing quarterly cash basis financial statements, and other duties. He entered into the same relationship with other hockey players he previously represented. Pursuant to the contract, Mr. Kenner had access to

most all financial information regarding the Nolans. His fee was based upon the Nolans' "total investment assets."

Owen Nolan testified he did not read any of the private placement memoranda he received or, for that matter, any other financial documents. As a matter of law, the Panel must hold Mr. Nolan accountable for what he signs. "Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 157 cmt. b. (1981). If parties could avoid legal agreements by saying they did not read them, the law of contracts would be undone completely.

One of the purposes of private placement memoranda is to place investors on notice of the risks attendant to certain investments. The Panel therefore assumes that the Nolans were aware of the risks stated in the private placement memoranda he signed. The argument that Mr. Kenner knew Mr. Nolan did not read anything goes too far. *Bradley v. Industrial Comm'n*, 51 Ariz. 291, 299, 76 P.2d 745, 748 (1938) ("When a person bound by a writing has carelessly signed the same without reading it, the mere fact that he believed it to be something else than what it was, when such belief was not brought about by the misconduct of the other party, furnishes no ground for the admission of parole evidence that he did not mean to execute it, for courts are not under the duty of relieving parties of the consequences of their own gross negligence.").

**(B)    Is Mr. Kenner a fiduciary to the Nolans?**

As between the Nolans and Mr. Kenner, their relationship before and after the creation of Standard Advisors from the testimony heard by the Panel fundamentally

3

remained the same. The Nolans relied upon Mr. Kenner to assist them in their financial affairs. Mr. Kenner and the Nolans, over the years, had developed a relationship of special trust and confidence. Mr. Kenner presented business opportunities to the Nolans, as he did to other hockey players. So, as to some of the investments at issue in this arbitration, several hockey players who all have Mr. Kenner as their business agent all invested together. In some instances, Mr. Kenner bundled his investing hockey players into an LLC which then held the investment.

Under Arizona law, a fiduciary relationship is one in which special confidence and trust are placed in another and whose attributes include great intimacy, disclosure of secrets, or intrusting of power, *resulting in a position of superiority or influence. See Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 24, 945 P.2d 317, 335 (App.1996). On the evidence, the Panel concludes that the relationship between the Nolans and Mr. Kenner (and Standard Advisors), when he provided business management and other services, was one of special confidence and trust, and, in the context of particular duties he undertook with transactions, gave rise to a fiduciary obligation on the part of Mr. Kenner to the Nolans. Although Mr. Kenner was in a confidential relationship with the Nolans and owed fiduciary duties to the Nolans, that is not the end of the analysis. A person in a confidential and fiduciary relationship with another is not liable simply because an investment becomes a bad investment. Liability attaches only when a breach of duty is shown, and damages flow causatively from the breach. So, for example, after presentation of all the evidence, the Nolans' attorney

4

withdrew claims concerning Impact Protective Equipment as it lacked evidence pertaining both to breach and damages.

As a general matter, the Nolans allege that Mr. Kenner is liable for putting them into a number of unsuitable private placement investments. The Panel did not hear evidence regarding the full scope and range of the Nolans' investments and expenditures, but the Nolans hold substantial real estate assets outside of Mr. Kenner's activities, and a substantial stock portfolio. Without more, the Panel cannot find that the number of private placement investments made by the Nolans is necessarily unsuitable for a professional hockey player earning the amounts of income that Mr. Nolan earned. On this issue, the Nolans did not meet the burden of proof.

The Nolans also claim Mr. Kenner did not advise them he also was self-investing in these investments. Mr. Kenner denies this. Both sides agree that Mr. Kenner would visit the Nolans and talk into the night about these investments. Owen Nolan's recollections of these conversations are, at best, sparse. Mr. Kenner presented testimony and declarations from other hockey player clients that Mr. Kenner told them of his involvement in the projects. The only other person present at these conversations, Diana Nolan, was not called by either side. Although the evidence is mixed, on the limited evidence presented, the Panel concludes that the Nolans did not meet the burden of proof that Mr. Kenner failed to disclose his self-interest in the investments.

The Nolans allege that Mr. Kenner has not given them the proper paperwork documenting some of their investments. This may be true, but it is not true that damages for the total value of the investment flow causatively from the breach of that particular

duty. Other remedies may be appropriate and the Panel addresses this issue as to choice of remedy in the context of the individual investments.

With this factual background and preliminary findings, the Panel now addresses the individual investments at issue in this case

### (C)  Little Isle IV

The most contentious issue in the case is the Little Isle IV investment, a limited liability company of which Mr. Kenner is the managing member. This investment consists of purchases of real estate in Hawaii for development. Owen Nolan testified he invested $100,000.00 in Little Isle IV. In addition, the documents show the Nolans established a $2.2 million line of credit with Northern Trust and authorized Mr. Kenner to draw against that line of credit to make investments in Little Isle IV. The line of credit was secured by a pledge of the Nolans' assets. Other hockey players who invested in this project through Mr. Kenner testified they were aware of the structure of their investment, and the use of similar lines of credit. Of course, what other hockey players knew or approved is not proof of what the Nolans knew or approved.

The initial by-laws of Little Isle IV indicated that its purposes were to invest in Hawaii real estate. The Nolans presented testimony that Mr. Kenner drew down on their $2.2 million line of credit to fund investments in Mexico and other investment activities outside of the Hawaiian islands. One of these investments was a highly dubious overseas scheme involving a gem stone. As to his ability to draw down on the Nolan's line of credit, Mr. Kenner was plainly a fiduciary, and the purpose of the line of credit was to fund Little Isle IV, whose purpose was to invest in Hawaiian real estate. There is no

6

evidence that the Nolans authorized any other use of the line of credit, and there is evidence they were not aware of the substantial draws.

Putting aside the issue of whether the Nolans authorized the line of credit or not, the Panel concludes that Mr. Kenner owed a fiduciary duty to the Nolans because he was entrusted with the use of the Nolans' funds for the specific purpose of depositing those funds into the Little Isle IV account, in accordance with the purposes of Little Isle IV. Mr. Kenner breached his fiduciary duty to the Nolans by drawing down funds from the line of credit for purposes other than purchasing Hawaiian real estate under Little Isle IV. By reason of this breach of duty, the Nolans have lost the full value of the credit line, $2.2 million, and are entitled to damages against Mr. Kenner and Standard Advisors in this amount. By reason of the Panel's ruling, the Nolans' investment in Little Isle IV is reduced to the initial $100,000.00 investment.

### (D) Investments and Developments in Baja California

Over the course of their relationship, the Nolans invested $500,000.00 into a land development midway along the Pacific side of the Baja peninsula, and $100,000.00 into a land development in Cabo San Lucas.

The first land development project was Diamonte del Mar. Mr. Kenner placed a number of his hockey players into this investment. This project concerned the development of a raw track of land along the Baja peninsula, between Cabo San Lucas and Ensenada. From the testimony, the land had natural beauty and oceanfront. It was a high risk project as no other developments were in the surrounding area. Moreover, further work needed to be done to secure fee title in Mexico, which has its own unique

7

challenges. His investment was initially placed into a promissory note, but a letter from New York attorneys in September 2002 to the Nolans explained that a private placement memorandum would be forthcoming. The confidential offering memorandum of the Baja Management LLC is in evidence. Of all the investments the Nolans made, this is the one investment that they actually went down to visit.

The Nolans allege that they were not told by Mr. Kenner about his interests in the Diamante del Mar project. His interests are named in the confidential offering memorandum, but Mr. Nolan does not recall seeing it. On the evidence, the panel concludes that the Nolans have not met the burden of proof on this issue.

The second land development was in Cabo San Lucas. Although the Nolans had a place holder in the investment, the Nolans did not actually invest monies in this project until after the project was funded for development by Lehman Brothers. Given the then economic activity in Cabo San Lucas, and its attractiveness as a resort area for the Southwest, it is difficult to conclude the investment of $100,000.00 was imprudent or reckless when made after development funding was obtained from Lehman Brothers. The Nolans do point out that Mr. Kenner's interest in the project is disproportionate to the hockey player's interest; but Mr. Kenner testified that this was a mistake. Under the circumstances, and based on Mr. Kenner's admission, the Panel orders that Mr. Kenner holds in constructive trust for the Nolans a proportionate share of his interest for the benefit of the Nolans. This interest would be the amount that the Nolans would hold in the hockey player's investment pool that would bring the holdings of the hockey players

8

to equal proportion with Mr. Kenner. The Panel rules only on a constructive trust for the Nolans, and makes no ruling as to any other hockey player.

### (E) Eufora LLC and Avalon CMG, LLC

The Nolans invested in two businesses which are run by Tommy Constantine, a friend of Mr. Kenner's. Eufora, LLC, is a prepaid credit card company. Avalon CMG, LLC, is a company that developed hangers and office space at the Scottsdale Air Park. From the testimony, both companies appear to be legitimate businesses.

The Nolans allege that they have never received paperwork which confirms their ownership interest in the companies, or the investor company that has an interest in the companies. Mr. Kenner did not dispute this. As a fiduciary charged with looking after their business affairs, it is a breach of duty for Mr. Kenner not to maintain and share proper paperwork for the Nolans' investment. Mr. Kenner claims all his electronic files were taken by a former employee, but the evidence is too ambiguous to excuse him from not maintaining files and providing them to his clients.

The remedy, however, is not the full amount of the investment. The Nolans have not shown that the failure to receive the proper paperwork caused any damage. Mr. Kenner claimed that he would get the paperwork, and Mr. Constantine confirmed this. On August 6, 2009, Mr. Kenner submitted the foregoing information.

### (F) Other Companies

The Nolans seek to recover their full investments in other companies: Codefire Acquisition Company/Teknik Digital Arts; Integrated Telecommunication; Red Mosquito, LLC (Ad Shapers); TekConnect; and Escer Holding Corporation. The bulk of

9

the testimony heard by the Panel concerned the Hawaiian and the Baja peninsula developments. The evidence as to these individual investments was spotty at best. For example, one hockey player who testified actually worked at Integrated Telecommunication during the hockey lock-out and thought it was a great investment.

As a whole, the Panel concludes that the evidence regarding these investments does not meet the burden of proof to sustain a damage claim requiring the return of the investment. However, insofar as the Nolans' claim they lack paperwork documenting their investment in these companies, the Panel ordered Mr. Kenner to obtain the paperwork confirming the Nolans' investments in these entities and deliver the paperwork to the Nolans. On August 6, 2009, Mr. Kenner submitted the foregoing information.

### (G) Punitive Damages

The Nolans allege fraud, along with punitive damages, in addition to their claim for breach of fiduciary duty. Both fraud and punitive damages require clear and convincing evidence. This is a very high standard of proof. The Panel must be firmly convinced of the causes of action and, in the case of punitive damages, be firmly convinced that Mr. Kenner acted with an evil mind. As noted above, Mr. Kenner called other hockey players and submitted declarations from hockey players that they were fully aware of Mr. Kenner's interests and activities. He also claimed all his files were taken by a disgruntled employee who the Panel did not hear from either by way of testimony, deposition or declaration as to what files or knowledge the employee possessed. From the employee, the panel received only a short declaration on a collateral issue.

Although testimony from other players is not any evidence of what the relationship was between the Nolans and Mr. Kenner, it does give the Panel pause to conclude that the fraud claim has been proved by clear and convincing evidence. And the departure of the employee also gives the Panel pause as to what was taken and what was not taken. On these facts, the Panel concludes that the Nolans have not met their burden of proof on these claims.

### (H) Attorneys' Fees and Prejudgment Interest

In an Order entered July 29, 2009, the Panel ruled that an attorneys' fees award could be entered in this matter against Mr. Kenner personally. The Panel also ruled that Mr. and Mrs. Nolan are entitled to prejudgment interest from April 17, 2009. The only remaining issues concern the request by Mr. and Mrs. Nolan for attorneys' fees and costs. They seek attorneys' fees in the amount of $395,616.25, "attorney charges" in the amount of $13,517.26, expert witness fees in the amount of $123,338.44 and costs in the amount of $42,675.

The parties' agreement provides that the "prevailing party in any arbitration . . . shall be entitled to recover reasonable attorneys' charges (whether or not such costs are recoverable pursuant to applicable law) . . . in addition to any other relief to which that party may be entitled." In addition, the applicable rules of the American Arbitration Association (the "AAA") permit the Panel to apportion fees paid by the parties to the AAA and compensation of the Panel members.

The Panel has considered the Application for Fees and Costs, the Response, and Reply. The Panel awards attorneys' fees to Mr. and Mrs. Nolan in the amount of

11

$395,616.25. Given the complexity of the facts and financial information, and the success achieved by Mr. and Mrs. Nolan on the most hotly contested issue as well as their recovery of all of the documentation of their various investments, the Panel finds the fees requested to be reasonable. The Panel notes that Respondents made no objection to particular entries, but only a generalized objection to the fees requested. In fact, the fees charged by Mr. Richards for his short involvement in the case ($100,000), supports the reasonableness of the fees requested by counsel for Mr. and Mrs. Nolan who was involved from the beginning of the arbitration.

The Panel grants Mr. and Mrs. Nolan their attorneys' costs in the amount of $13,517.26. The arbitration agreement permits the prevailing party to recover their attorneys' "costs" regardless of whether such "costs are recoverable pursuant to applicable law." The Panel finds that the costs requested by Mr. and Mrs. Nolan are reasonable.

The Panel denies the request for expert witness fees; nothing in the arbitration agreement permits the recovery of those fees. The Panel directs that the fees paid to the AAA and arbitrator compensation be shared equally by the parties.

Subsequent to the entry of the Final Award, pursuant to Rule 46 of the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures, Claimants submitted a Request for Correction of Computational Error. Respondents did not submit any response to the Request. Accordingly, the Final Award is hereby corrected as follows:

IT IS ORDERED granting judgment in favor of Claimants Diana and Nolan Owen and against Respondents Philip Kenner, Standard Advisors, Inc., and Standard Advisors, LLC, jointly and severally, in the amount of $2.2 million.

IT IS FURTHER ORDERED that prejudgment interest at 10% per annum shall run on the foregoing amount from April 17, 2009 to the date of this Award, which amount is $95,232.87

IT IS FURTHER ORDERED that Diana and Nolan Owen are granted a constructive trust in the interest of Respondent Philip Kenner in the Cabo San Lucas development equal to the proportionate share that Diana and Nolan Owen hold in the hockey player's investment pool that would bring the holdings of the hockey players to equal proportion with Mr. Kenner.

IT IS FURTHER ORDERED that Claimants Diana and Nolan Owen are awarded attorneys' fees and costs in the amount of $409,133.51.

IT IS FURTHER ORDERED that the administrative filing and case service fees of the AAA, totaling $11,250.00 shall be borne equally. The other administrative fees of the AAA, totally $400.00, shall be borne equally. The fees and expenses of the arbitrators, totaling $55,651.03 shall be borne equally. Therefore, Respondents shall reimburse Diana and Owen Nolan the sum of $5,625.00, representing that portion of said fees and expenses in excess of the apportioned cost previously incurred by Diana and Own Nolan.

IT IS FURTHER ORDERED that interest at 10% per annum shall run on the total sum of $2,709,987.38 from the date of this Award, which sum is awarded in favor of

Claimants Diana and Nolan Owen and against Respondents Philip Kenner, Standard Advisors, Inc., and Standard Advisors, LLC, jointly and severally.

IT IS FURTHER ORDERED that any claims not expressly granted in this Final Award are denied.

IT IS FURTHER ORDERED that this Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

DATED this 19th day of October, 2009.

_____
Hon. Bruce E. Meyerson, Chair


_____
Hon. Frank X. Gordon


_____
Hon. Colin Campbell

14

Claimants Diana and Nolan Owen and against Respondents Philip Kenner, Standard Advisors, Inc., and Standard Advisors, LLC, jointly and severally.

IT IS FURTHER ORDERED that any claims not expressly granted in this Final Award are denied.

IT IS FURTHER ORDERED that this Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

DATED this 17th day of October, 2009.

_____
Hon. Bruce E. Meyerson, Chair

*[signature]*
Hon. Frank X. Gordon


_____
Hon. Colin Campbell

14

Claimants Diana and Nolan Owen and against Respondents Philip Kenner, Standard Advisors, Inc., and Standard Advisors, LLC, jointly and severally.

IT IS FURTHER ORDERED that any claims not expressly granted in this Final Award are denied.

IT IS FURTHER ORDERED that this Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

DATED this ____ day of October, 2009.

_____
Hon. Bruce E. Meyerson, Chair


_____
Hon. Frank X. Gordon

_____
Hon. Colin Campbell

14