FILED
CLERK

6/12/2020 12:24 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,  . Criminal No. 13-cr-00607-JFB-AYS-1
                           .
          Vs.              .
                           . 100 Federal Plaza
PHILLIP A. KENNER,         . Central Islip, NY  11722
TOMMY C. CONSTANTINE,      .
. . . . . . . . . . . . . .. DATE: June 10, 2020

          TRANSCRIPT OF STATUS CONFERENCE
       BEFORE HONORABLE JOSEPH F. BIANCO
          UNITED STATES VISITING JUDGE

APPEARANCES:  (Telephonically)

For the Government:          UNITED STATES ATTORNEYS OFFICE
                             EASTERN DISTRICT OF NEW YORK
                             BY:  SARITHA KOMATIREDDY, ESQ.
                                  MATTHEW HAGGANS, ESQ.
                                  DIANE LEONARDO, ESQ.
                                  MADELINE O'CONNOR, ESQ.
                             271 Cadman Plaza East
                             Brooklyn, NY  11201

For Defendant Kenner:        PHILLIP A. KENNER, Pro se
                             Metropolitan Detention Center
                             Brooklyn, NJ  11232

                             MATTHEW W. BRISSENDEN, ESQ.
                                (Standby counsel)
                             666 Old Country Road, Suite 501
                             Garden City, NY  11530

For Defendant Constantine:   TALKIN MUCCIGROSSO & ROBERTS
                             BY:  SANFORD TALKIN, ESQ.
                             40 Exchange Place, 18th Floor
                             New York, NY  10005

Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044    Fax No. 732-865-7179**
**800 603-6212**
www.tgribbentranscription.com

ADDITIONAL APPEARANCES:

For Marc Wolinsky:              WACHTELL LIPTON ROSEN & KATZ
                               BY:  MARC WOLINSKY, ESQ.
                               51 West 52nd Street
                               New York, NY 10019

For Danske Bank:               VENABLE LLP
                               BY:  GEORGE KOSTOLAMPROS, ESQ.
                                    KELLY WEINER, ESQ.
                                    DOREEN MARTIN, ESQ.
                                    XOCHITL STROHBEHN, ESQ.
                               Rockefeller Center
                               1270 Avenue of the Americas
                               24th Floor
                               New York, NY 10020

For Diamante and Jowdy:        FREEH SPORKIN & SULLIVAN
                               BY:  THOMAS SOUTHER, ESQ.
                               350 5th Ave, Suite 6903
                               New York, NY 10118

                               FARRELL FRITZ
                               BY:  KEVIN MULRY, ESQ.
                               622 Third Avenue
                               Suite 37200
                               New York, NY 10017

For Owen Nolan:                PROSKAUER ROSE
                               BY:  SEETHA RAMACHANDRA, ESQ.
                               Eighth Avenue & 41st Street
                               New York, NY 10036

1                          I N D E X

2

3   FORFEITURE ISSUE                    PAGE

4           BY MS. O'CONNOR                6

5           BY MR. KOSTOLAMPROS            8

6           BY MR. SOUTHER                10

7   DECISION                             11

8

9   SENTENCING ISSUE                     20

10

11   RESTITUTION ISSUE                   27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Calling the case of US/Kenner and

 2   Constantine, 13-607.  Let me just make sure who we have on the

 3   line.  Mr. Kenner, are you on the line?

 4              MR. KENNER:  Yes, sir.

 5              THE COURT:  All right, good morning, Mr. Kenner.  Mr.

 6   Brissenden, you're on the line?

 7              MR. BRISSENDEN:  Good morning, Judge.

 8              THE COURT:  Good morning.  Mr. Talkin, you're on the

 9   line?

10              MR. TALKIN:  Yes.

11              THE COURT:  Mr. Talkin?

12              MR. TALKIN:  Yes, good morning, Your Honor.

13              THE COURT:  Good morning, Mr. Talkin.  And Mr.

14   Constantine, are you on the line?

15              MR. CONSTANTINE:  Yes, Your Honor, I'm here.

16              THE COURT:  All right.  Good morning.

17              MR. CONSTANTINE:  Good morning.

18              THE COURT:  And then I know we have counsel for

19   Danske Bank, Mr. Kostolampros, are you on the line?

20              MR. KOSTOLAMPROS:  Yes, I am, Your Honor.

21              THE COURT:  All right, good morning, and you have a

22   number of your colleagues I understand?

23              MR. KOSTOLAMPROS:  Yes, I have Doreen Martin, Kelly

24   Weiner, and Xochtil Strohbehn with me as well.

25              THE COURT:  All right, good morning to all of you.
```

1  Mr. Wolinsky, are you on the line?

2          MR. WOLINSKY:  Yes, good morning, Your Honor, I am

3  and (inaudible-beeping) are listening in.

4          THE COURT:  All right, thank you, good morning to all

5  of you and all of them as well.  And Mr. Souther and Mr. Mulry

6  are on the line for Diamante?

7          MR. SOUTHER:  Good morning, Your Honor, this is

8  Thomas Souther, yes, I'm on the line.

9          MR. MULRY:  And good morning, Your Honor, this is

10  Kevin Mulry.

11          THE COURT:  All right, good morning to both of you.

12  And I know I received a letter from counsel for Owen Nolan

13  regarding restitution, is counsel for Owen Nolan on the line as

14  well?

15          MS. RAMACHANDRA:  Yes, Your Honor, this is Seetha

16  Ramachandra, I'm counsel for Owen Nolan.

17          THE COURT:  Good morning.  So, is there anyone else

18  in terms of interested parties who need to be identified?  All

19  right, so my agenda for today, I have three things I wanted to

20  publish for purposes of this status conference.  The first

21  issue is the sentencing and the rescheduling of both of the

22  sentencings.  The second issue is the forfeiture issue, which

23  I've obviously received all the letters on as well as the

24  petition from the bank.  And then the third issue is

25  restitution.

1          So, I think given that there are a number of people

2     on here, I think who are listening, because of the forfeiture

3     issue, I think I'm going to start with that.  So let me just

4     ask the Government before I hear from anyone who wants to be

5     heard on the forfeiture issue, I read the various letters.  And

6     I guess I want the Government to advise me as to why they

7     haven't published notice with respect to the Court's

8     preliminary forfeiture order.  I didn't put a date in the

9     forfeiture order, but I assumed that that would go out quickly.

10          So can the Government explain to me, when I didn't

11    hear anything for a number of months I assumed that that was

12    because there were settlement discussions going on between you

13    and the bank.  But I don't understand why that notice has not

14    gone out.

15          MS. O'CONNOR:  Yes, Your Honor, this is AUSA,

16    Madeline O'Connor, good morning.

17          THE COURT:  Good morning.

18          MS. O'CONNOR:  By way of background, the Government

19    and counsel for Danske and (inaudible-background talking) have

20    been engaging in settlement discussions prior to entry of the

21    preliminary order of forfeiture.  During the course of

22    (inaudible) --

23          THE COURT:  Hold on, hold on one second, Ms.

24    O'Connor, because anyone who is on the line who is not speaking

25    please your phone on mute, because I can't hear Ms. O'Connor

1  because somebody doesn't have their phone on mute.  So everyone

2  put their phone on mute.  Thank you.  All right, go ahead, Ms.

3  O'Connor.

4          MS. O'CONNOR:  During the course of those

5  discussions, the Government informally requested from Danske

6  (inaudible) the settlement was being discussed, would have

7  obviated (inaudible) ancillary proceeding. And reaching a

8  settlement that would avoid an ancillary proceeding as to the

9  resorts would be the best case scenario.  And that's why the

10 Government didn't begin the ancillary proceeding and noticing.

11          Now if that settlement prospect no longer exists, the

12 Government is prepared to commence an ancillary proceeding and

13 begin the noticing process.  Although we would still like to

14 engage in settlement discussions, if we can resolve Danske's

15 claim and the discovery as to Danske's claim, so that's why we

16 have waited to this point, although we're prepared to move

17 forward with noticing (inaudible) if it doesn't seem that a

18 settlement can be reached at this stage.

19          THE COURT:  Well I don't understand why you can't at

20 least at this point, Danske, it's fine if there were settlement

21 discussions going on, and everybody was in agreement that was

22 in the best interest to hold off the ancillary proceeding while

23 that was occurring, but obviously Danske, by virtue of their

24 letter to me, wants to proceed with their petition, and if

25 that's their view, and I don't see why to the extent there are

1  continuing discussions, why those things can't proceed

2  simultaneously so that if a settlement is not reached, that the

3  Court is in a position to move forward with respect to their

4  petition.

5        I think I made very clear that I was of the view,

6  given all the issues that have been raised by Mr. Wolinsky and

7  by the bank, that we were going to proceed expeditiously with

8  respect to the ancillary proceeding in order to avoid any harm,

9  economic harm to third parties.  So that continues to be my

10 intention.  The bank wants to proceed and that's what's going

11 to happen.

12        I encourage the settlement discussions obviously to

13 proceed simultaneously.  Because we all agree that it's in the

14 best interest for this to get resolved quickly.  But we're not

15 going to be in a position where if those settlement discussions

16 get stalled for any reason, that then months are going to have

17 to go by because we're not in a position to move forward on the

18 ancillary proceeding.

19        But let me just confirm that that's what the bank

20 wishes to do at this point. Mr. Kostolampros, have I accurately

21 stated what your view is in terms of the timing?

22        MR. KOSTOLAMPROS:  Yes, Your Honor, you have.  I'll

23 just add, look, we did enter into settlement discussions with

24 the Government.  We have just wasted valuable time by doing so

25 frankly.  Because we provided the Government documents, each

1  time the Government requests more additional information.

2  There is valuable time wasted in between.  And frankly you

3  know, look, we're open to having settlement discussions, but we

4  need to move forward with our petition.

5          THE COURT:  What's the status of the resort right now

6  in light of the pandemic?  Is it still completely closed?

7          MR. KOSTOLAMPROS:  Yes, Your Honor, it's effectively

8  closed.  There's effectively no revenues, and there's complete

9  uncertainty on when that will be lifted.  And ultimately even

10 if it is lifted, what the resort will look like.  And what

11 potential revenue sources there will be at that point in time.

12         THE COURT:  And you mentioned in one of your letters,

13 I don't have it in front of me right now, but that there was

14 going to be need for the additional infusion of capital, I

15 guess in late July. I just want to understand if there's some

16 timing issue with respect to that.  Is that --

17         MR. KOSTOLAMPROS:  Your Honor, we're still,

18 everything is fluid at this point.  There have been, as you can

19 imagine, there's been sort of cutting and budgeting processes

20 going forward.  But you know, we expect that at least for right

21 now, that the resort probably can continue on until late summer

22 or at some point in the summer, as is right now.  But again

23 there's complete uncertainty. And we expect, to the extent

24 anything changes on that, we'll be, letting the Court know

25 about the financial conditions.

1           THE COURT:  All right.  Is there anything else you

2    want to add before I turn to Mr. Souther?

3           MR. KOSTOLAMPROS:  No.

4           THE COURT:  All right, Mr. Souther, is there anything

5    you want to add?

6           MR. SOUTHER:  No, Your Honor, just to echo what Mr.

7    Kostolampros has said.  You know, at this point the project has

8    had to furlough nearly all of its employees in this period of

9    shutdown.  The Government of Mexico has not announced when it

10   is that they're going to allow resorts, such as Diamante to

11   reopen.

12          So we've scaled back their expenses to the bone.  But

13   you know, at this point they've exhausted their liquidity

14   lines.  And so it's critical that we move forward as quickly as

15   possible.

16          And you know, it's been unfortunate that the

17   Government continues to say well, let's -- everything is

18   premature.  We've been saying this for years.  And we were

19   trying to avoid this sort of precarious situation that we're in

20   right now.  So I think it's, we would encourage the Court to

21   move forward expeditiously, as you've indicated, your desire,

22   and get this resolved.

23          I mean it's almost, borders on disingenuous frankly

24   for the Government to take the position that they're

25   questioning the bank's claim. The bank has you know, put $200

1 million into this project, and that ought to be resolved.  And

2 once that's resolved, I think the bank will be in a position to

3 make other decisions.

4 　　　　　But to ask the bank to put additional monies in

5 without some sort of confirmation that their claim is being

6 recognized, I think is, you know, puts them in an impossible

7 position.

8 　　　　　THE COURT:  All right. Mr. Wolinsky, is there

9 anything you want to add?

10 　　　　　MR. WOLINSKY:  Your Honor, frankly, no.  Everything

11 that's been said.

12 　　　　　THE COURT:  All right, okay, I think everybody

13 understands what my view has been of this all along. As I said,

14 my goal was to do this very expeditiously, it was not -- my

15 goal was to be immediate settlement upon entry of the

16 preliminary forfeiture, that was the goal, and delaying that

17 for a long period of time in order to allow the Government to

18 get the value of the property and to have those discussions and

19 document exchanges take place before the preliminary order was

20 even entered.

21 　　　　　But certainly, once it was entered, it was my

22 intention if there was not going to be a settlement, to move

23 forward expeditiously on the ancillary proceeding.  And so

24 that's exactly what we're going to do.

25 　　　　　So my belief is under Rule 32.2, I'm going to set

dates.  I did not put dates in the preliminary order with regard to noticing potential claimants and then doing the publication.

So I think what I'm going to do here, the Government can tell me if this, if there's any issues with this. I can't imagine there would be. I'm going to ask the Government within a week of today to provide notice to those potential claimants who they are reasonable aware may have an interest, including obviously the bank.  Obviously understand that the publication takes longer and it would be the Court's goal to make sure, to the extent possible, that I'm considering all of the potential claims simultaneously.  Because I do agree with the Government that that's obviously beneficial and important.

But I don't think the bank should have to wait in order to see, at least in briefing their motion, for the publication to be complete.  So is there any issue with the Government providing notice to the bank and any other potential claimants that the Government is aware of, of within a week today?

MS. O'CONNOR:  No, Your Honor, we'll begin the process and we would just ask that the resort cooperate in providing information as to potential claimants, if we don't in fact have any of that information on hand.

THE COURT:  I'm sure, Mr. Souther, you'll do that?

MR. SOUTHER:  Of course, Your Honor .

1          THE COURT:  All right. And then in terms of the, a

2     date for the publication.  How long does it take for the

3     Government to arrange for the publication?

4          MS. O'CONNOR:  We could do that within the same time

5     period, Your Honor.

6          THE COURT:  All right, so a week from today, the

7     notices will go out.  And the publication will take place.  And

8     then obviously at that point Mr. Kostolampros, your petition

9     will be something the Court can address.  You don't have to

10    file it again, it's obviously already on the docket.  At that

11    point it will be ripe.

12         My question to you is, the Government obviously in

13    their papers has indicated, notwithstanding what you and Mr.

14    Souther have said about the nature of the claim and the

15    documents that have already been provided over a long period of

16    time, the Government they are saying that they're still missing

17    some documents.  I'm going to give you the choice of how you

18    want to proceed.  We could set a date for the Government to

19    provide you a list of what additional documents they think they

20    need.  And for then you to provide those or respond why you

21    don't think they should get those.  Or an alternative would be,

22    for you to file -- well I guess it could be simultaneous to

23    that, you could file your motion and I wouldn't make the

24    Government respond until the discovery issue was resolved,

25    because obviously their position is going to be, we can't

1  respond to this until we have all the necessary documents.  But

2  again, my goal is to let as little time go, you know, be wasted

3  as possible.  So if you want to do those things simultaneously,

4  you want to do the discovery issue first before you file your

5  motion.  Have you thought about that?

6         MR. KOSTOLAMPROS:  Yes, we have, Your Honor.  I mean,

7  look, we feel that we've given the Government everything that

8  they need. We've given them our bank statements, we've given

9  them the underlying agreements.  We've given them recently

10 every wire transfer for the $90 million of transfers that they

11 highlighted in their, one of their letters to the Court.  We've

12 addressed and given them documents on the 14.8 million and

13 internal transfers.

14        So we feel that we've given the Government

15 everything.  So again, we would like to proceed on a dual

16 track.  Get our motion filed and, you know, we'll take their

17 request and we'll, you know, to the extent they're relevant

18 requests, and we feel like they're, that there's no challenge

19 to be made to those requests, we'll provide those documents to

20 them.

21        And I would ask that, you know, they should be able

22 to get us those document requests, you know, within days, if

23 not at most a week.

24        THE COURT:  Yes, I was thinking a week as well, a

25 week.  Just, you know, give you a list of whatever remaining

1  documents or information they would need a week from today.

2  But then, is the Government able to do that?

3          MS. O'CONNOR:  Yes, Your Honor.

4          THE COURT:  All right, and then when do you want to

5  file your motion by, when do you want to respond to that letter

6  by, Mr. Kostolampros?

7          MR. KOSTOLAMPROS:  We could file our motion for

8  summary judgment within a week, Your Honor.

9          THE COURT:  You have to wait for them --

10         MR. KOSTOLAMPROS:  All right, I'll wait for them for

11 their document request.

12         THE COURT:  No, not -- just wait for them to file the

13 notice, they're going to do that within a week from today, so

14 let me just say, today is the 10th, so you want to file it next

15 Friday, the 19th?

16         MR. KOSTOLAMPROS:  Sure.

17         THE COURT:  All right.

18         MS. O'CONNOR:  Your Honor.

19         THE COURT:  Yes, go ahead, Ms. O'Connor.

20         MS. O'CONNOR:  We just wanted to point out that the

21 noticing, the publication period is 60 days for a claimant to

22 file a claim. And if the Court wants to determine all claims

23 and make sure there are no competing claims, it would make

24 sense for the publication noticing period to conclude, and all

25 claims to come in, and make sure there are no competing claims,

1  before addressing for my (inaudible-beeping) motion.

2          THE COURT:  I know, but even I agree with you on

3  that, which I said I do think it's possible that obviously

4  should be done, but even if I were to wait, why should I not

5  have the motion completely briefed so that when that 60 day

6  period expires, assuming say there's no other claimants, then

7  I'd be immediately in a position to decide the bank's motion, I

8  wouldn't have to wait a day longer.  I could issue my ruling on

9  the 61st day.  That's my goal.

10          MS. O'CONNOR:  Yes, Your Honor, we would also point

11  out the Government's entitled to depositions of parties, which

12  might not -- although we have an idea of certain individuals

13  we'd like to depose, the identity of those individuals might

14  not become apparent to us until we receive the remaining

15  documents we need from the bank.

16          THE COURT:  Well, again I'll take it step by step.

17  I'm finding it hard to believe there's going to be depositions

18  necessary in this case. But I could be wrong.  But obviously

19  I'll let you be heard on whatever remaining discovery you think

20  prior to you filing your opposition.  But this is going to be

21  driven by the bank's ability to respond to your various

22  requests, not the Government's you know, need for more time.

23          So, Mr. Kostolampros, if you get the request for

24  documents, to the extent the Government believes in advance of

25  getting additional documents, that they need a deposition, you

1  should put in that letter next week. I understand obviously

2  they may not know that fully until you get all of the documents

3  you believe you're entitled to, but if you already know you

4  want the deposition of somebody, it should be in that letter

5  next week.

6          So Mr. Kostolampros, if they give you that letter

7  regarding their discovery requests a week from today, how long

8  do you want to respond, either provide the documents I guess or

9  explain to me why you're opposed to it.

10         MR. KOSTOLAMPROS:  Right, we'll do so, Your Honor.

11         THE COURT:  Do you want to set a date for that, or do

12  you want to not do that at this point, because you don't know

13  what's in the letter.  If you want you can see the letter and

14  then you know, after you get the letter, propose to me a date

15  by which you'll provide the documents and respond, and/or let

16  me know your objections.  Do you want to handle it that way,

17  since I guess you don't know what they're going to say.

18         MR. KOSTOLAMPROS:  Yeah, I think that makes sense,

19  Your Honor.

20         THE COURT:  All right, so you're going to get a week,

21  at the latest a week from today.  You want to the following

22  Monday to put in your response.  I anticipate the letter would

23  say, we're willing to provide these documents by X date, but if

24  there's some portion of their request that you believe they're

25  not entitled to then you would let me know in that letter, and

1  you know, if you need more time to brief that, I'd give you

2  more time.  But does that sound good?

3          MR. KOSTOLAMPROS:  Yes, yes.

4          THE COURT:  So I don't have a calendar in front of

5  me, the Monday --

6          MR. KOSTOLAMPROS:  Monday is June 22nd.

7          THE COURT:  Right.  All right, so June 22nd.  At this

8  point I'm not going to -- let me think about this for a second.

9  At this point what I'm going to do is I'm going to set the

10  Government's opposition not the motion 45 days from the date

11  it's submitted.  And then two weeks for the reply.  And what

12  that will essentially do is -- and obviously that's subject to

13  change, if the Government doesn't get documents that I

14  determine that they're entitled to prior to filing their

15  opposition, I'll obviously adjust that.  But assuming whatever

16  the Government needs is provided, and I rule with respect to

17  the remaining documents, this will be the date, there will be

18  no extensions.  And then that, with this briefing period, what

19  we'll do, we'll give basically 60 days out it will be fully

20  briefed.  And then I'll see if there are other claimants who

21  respond to the publication.

22          All right, any questions from the Government on the

23  schedule?

24          MS. O'CONNOR:  Your Honor, we just wanted to clarify

25  the date, so Monday June 22nd is when the bank will file its

1  motion?

2         THE COURT:  No, they're filing their motion Friday

3  the 19th.  So your opposition is due 45 days from June 19th.

4  If it lands on a weekend, it's due the following Monday.  And

5  then the bank will have two weeks from that date to put in any

6  reply.

7         All right, and I would obviously, so before I get to

8  the next point, does the Government have any questions about

9  the schedule?

10        MS. O'CONNOR:  No, Your Honor.

11        THE COURT:  All right.  Any questions from the bank?

12        MR. KOSTOLAMPROS:  No, Your Honor.

13        THE COURT:  All right, and again, I will, I think

14  this is obvious, but I would encourage you, as the bank

15  indicated, to continue trying to resolve it.  I think it's in

16  everybody's interest to get that done before this 60 day period

17  ends. So anything that the Court can do, you know, even though

18  we're not physically open, if you think, I think it was Judge

19  Shields, right, wasn't Judge Shields involved at some point?

20        MR. KOSTOLAMPROS:  Yes, Your Honor.

21        THE COURT:  If you think having Judge Shields try to

22  mediate some of those discussions, I'm sure she can make

23  herself available by phone to do that.  So, but any issues, I

24  don't want to -- any issues that come up at any point, write me

25  a letter immediately so that we can address them during this

1  period, I don't want there to be any unnecessary delay.  I'm

2  reading every letter that comes in.

3          All right, but before we leave the forfeiture docket,

4  let me just ask the defendant's, Mr. Talkin, do you have

5  anything you want to add on the forfeiture issue at this point?

6          MR. TALKIN:  No, Your Honor, just as we said before,

7  we just want to move as fast as possible so the victims have

8  the best chance of getting back any of their money.

9          THE COURT:  All right, I agree.  Mr. Kenner, is there

10  anything you want to add on the forfeiture issue?

11          MR. KENNER:  No, Your Honor.

12          THE COURT:  All right. So obviously anyone who was

13  listening for purposes of the forfeiture, can drop off the call

14  if they want.  Feel free to continue to listen if you'd like,

15  but we're going to move on to the other agenda items.

16          So I do want to talk about the sentencing and

17  proceeding with the sentencing.  And Mr. Kenner, I obviously, I

18  know through Mr. Brissenden, I think you wrote me a letter,

19  initially objecting to the continued adjournments of the

20  sentencing.  I just wanted to discuss that with you.  And I

21  certainly understand your frustration.  Because I know you'd

22  like to continue on, including an appeal.

23          But first of all, I did want to proceed on March

24  18th, and I was doing everything I could to try to keep that

25  date. But I just determined at that point it wasn't safe to

1  bring, have the Marshals bring you out.  It was right on the

2  edge before everything shutdown completely.  But you know,

3  having the victims, having you, having the lawyers, having

4  everybody in the courtroom at that point, I already made the

5  determination that it was not safe to do.

6          So unfortunately I did have to cancel it at the last

7  minute.  But in terms of what the options are at this point,

8  and let me just, because I get to Mr. Kenner.  Mr. Talkin, my

9  understanding, just based upon your letters, is that your

10  client wishes to put off his sentencing until he can safely

11  physically appear in the court for his sentencing, is that

12  understanding correct?

13          MR. TALKIN:  That's right.  Him as well as numerous

14  supporters that he has.

15          THE COURT:  Right.  All right.  So, does the

16  Government want to be heard with respect to Mr. Constantine

17  before I go back to Mr. Kenner?  Does the  Government agree

18  with that?

19          MS. KOMATIREDDY:  Yes, Your Honor, AUSA Komatireddy.

20          THE COURT:  So Mr. Kenner, what the situation is, and

21  I don't know how much, Mr. Brissenden you have researched this,

22  but under the Cares Act, the Court is permitted, because of the

23  situation currently, to conduct a video sentencing with your

24  consent, if I determined that the sentencing cannot be further

25  delayed without serious harm to the interests of justice.

1          So my view is, and I've sentenced hundreds of people

2    over 14 years, I've never sentenced someone by video. It's my

3    view, and normally the law wouldn't even allow for something

4    like that.  It's my view, I think for obvious reasons, having

5    everybody physically in the courtroom, seeing you when you're

6    speaking, seeing the victims when they're speaking, the

7    lawyers, is important, very important.

8          So, I view sentencing someone by video, and honestly

9    it's reflected in the law, as a last resort, where there's

10   going to be some serious harm to the interest of justice if

11   it's not done expeditiously.

12         I don't believe that that standard has been met under

13   these circumstances currently. And obviously I'm making these

14   decisions not knowing how long the current situation is going

15   to continue.  Each time I've adjourned this for 30 days or so.

16   My hope was that at some point the situation would be safe

17   enough for the Marshals to be able to produce you to the

18   courtroom, and I was thinking about using the ceremonial

19   courtroom to have maximum space.  That courtroom is gigantic.

20   And I think to have everybody in there safely.

21         So that's been my thought process, is that we're

22   potentially getting closer to that point.  I don't, I was going

23   to ask the Government if they have any more information than I

24   do. I don't have, I have not received information from the

25   court or the Marshal Service, as to a date by which they think

1  they're going to be in a position to do that.  But let me just

2  ask the Government before we proceed further, whether they have

3  any more information on that.

4       Is the Government aware of any estimate of when the

5  Marshals might be in a position to do that?

6       MS. KOMATIREDDY:  Your Honor, this is AUSA

7  Komatireddy, we are not aware of any particular date. I

8  understand that there are preparations being made, and I'm sure

9  Your Honor is aware of the same, to modify the courthouses in

10  order to get to that point.  But we are not aware of a specific

11  date.

12       THE COURT:  All right.  So, you know, and Mr. Kenner,

13  I'm prepared to hear from you, and I'm just going to invite

14  you, if you want put something in writing, you can do that as

15  well, to explain to me why you believe that the standard is met

16  unless you proceed by video.  But you know, my hope is that

17  we're going to have more information, as things begin to open

18  up in the very near future.

19       Actually, let me ask the Government, I'm not aware,

20  has there been any in person, forget about a sentencing, but

21  have there been any in person proceedings, arraignment or

22  anything like that?  I'm not aware of any.  Have there been any

23  that you're aware of?

24       MS. KOMATIREDDY:  I'm not aware of any since the

25  lockdown order that was issued by the Governor in late March.

1          THE COURT:  Okay.  All right.  So Mr. Kenner, if you

2   want to put in a letter explaining to me why the standard has

3   been met and I should proceed with a video sentencing, you

4   know, over the next, sometime maybe 30 days out.  I'm open

5   minded about looking at it. But I want you to understand what

6   my thinking is.  So I don't know if you've given that some

7   thought.

8          MR. KENNER:  All right, thank you, Your Honor.

9          THE COURT:  So what do you want to do, do you want to

10  think about it, or do you know what your view is now, Mr.

11  Kenner.  Do you want to put something in writing, just tell me

12  what you'd like to do with respect to that, got another date

13  right now, and we'll take it from there.

14         MR. KENNER:  Your Honor, I would prefer an in person

15  appearance.  So I don't think you need to wait for a letter

16  from me to describe any circumstances you're not aware of.  I'm

17  in concurrence with what you previously said, so.

18         THE COURT:  So my intention would be to do what I've

19  been doing then.  Which is we'll find, we'll pick a date

20  possibly 30 days out for an in person sentencing.  And you

21  know, just because you're of that view right now, Mr. Kenner,

22  and of the same mindset, if for whatever reason you know, there

23  was a spike in cases again and it appeared that this was going

24  to be a much longer term.  I'm constantly reassessing the

25  situation and what my views are.  And I'll obviously consult

1  with you on that.

2          But my hope is at this point, given the trend, that

3  we're getting very close to be able, trials are an entirely

4  different ball game in terms of the complexity of being able to

5  do something like that.  But I would think the first, the one

6  that's least complicated is to have one defendant being

7  sentenced.

8          So, that's my plan is to set -- and I would just say

9  to Mr. Constantine and Mr. Talkin, if, my hope is, as you have

10 seen, is to have the sentencings of both defendants on the same

11 day.  And that would allow obviously, to the extent the victims

12 wanted to be in person, that they would only have to be in

13 court on one occasion. But I'm also open to considering the

14 fact, if Mr. Kenner, if the Marshals are able to produce Mr.

15 Kenner and he wants to proceed expeditiously, but there's some

16 issues about Mr. Constantine and/or his supporters getting

17 there, I would be open to having some period of time, not too

18 long, but some period of time before we proceed with Mr.

19 Constantine.

20         You know, the victims, can also, even if we're

21 physically in the courtroom, the victims if they wanted to

22 could appear by, I assume we could hopefully set it up

23 logistically to appear by video, while we were physically in

24 the courtroom. So the extent that they went to Mr. Kenner's but

25 didn't want to come back again for Mr. Constantine, we could

1    arrange some video hopefully, or at least audio.

2              But is that understood?

3              MR. TALKIN:  Yes, unless we say something to the

4    contrary by letter, we're in full agreement that we're on the

5    same date and we'll wait until that's available.

6              THE COURT:  All right.  So, Jim, do you want to pick

7    a date, maybe some time after July 13th for potential in person

8    sentencing.

9              THE CLERK:  Yes (inaudible)

10             MR. BRISSENDEN:  Judge, I know --

11             THE COURT:  Go ahead.

12             MR. BRISSENDEN:  Judge, this is Matt Brissenden,

13   unfortunately, and I'm only standby counsel, but I'm not

14   available on that date.

15             THE COURT:  All right --

16             MR. BRISSENDEN:  Or any day the following week.

17             THE COURT:  Yeah, the following Wednesday, let's do

18   it on a Wednesday, Jim, Wednesday.  What is that the 23rd?

19             ATTORNEY:  Your Honor, that's the only day of the

20   week I'm really to available.

21             THE COURT:  All right, how about Tuesday the 22nd?

22             ATTORNEY:  Wednesday would be the 22nd.

23             THE COURT:  So Tuesday the 21st?

24             ATTORNEY:  I'm free all day.

25             THE COURT:  All right, so, why don't we say Mr.

1 Kenner at 10:30 and Mr. Constantine immediately thereafter,

2 we'll say 11:30, but you know, whenever Mr. Kenner is over. Is

3 that okay with the Government?

4          MS. KOMATIREDDY:  This is AUSA Komatireddy, yes, Your

5 Honor.  We have consulted with the victims as well, and they

6 are available at that time. Several of them plan to be there in

7 person.

8          THE COURT:  All right. And you can again, invite them

9 to, if they want to -- we'll have to look into the video, but

10 certainly we know we could get them by audio if they didn't

11 want to come in person.  All right.

12                    (Court and clerk confer)

13          THE COURT:  All right.  So, the only, before I'll see

14 if you have any other issues, but the last issue is the

15 restitution issue.  I did receive the letter from Owen Nolan's

16 counsel which I wanted to discuss and then just discuss the

17 restitution issue more generally.

18          So the Government, that was only submitted a day or

19 so ago, and the Government had a chance to review that, and if

20 you want to respond in writing, I guess I'll give you a chance

21 to do that, or you can tell me now what the Government's view

22 is with respect to that.

23          MS. KOMATIREDDY:  Your Honor, this is AUSA

24 Komatireddy. I would ask that we'd be able to respond in

25 writing.

1          THE COURT:  Okay, that's fine.  And I just note, I

2    know the Government, obviously we've been talking about

3    restitution for a while.  The Government did, I think back in

4    December, have a revised chart which I think prompted in part

5    the letter from Ms. Ramachandra.  But in that letter the

6    Government also said in addition to Owen Nolan, I believe that

7    there, the Government believed that there were going to be

8    other supplemental submissions on restitution from Mr. Hughes

9    and Mr. Rezi (phonetic).  I don't think I've ever seen those

10   and I don't know if the Government is aware of whether or not

11   they did also file any type of supplemental affidavit with

12   regard to what they believe they're entitled to.

13         MS. KOMATIREDDY:  We did send, Your Honor, AUSA

14   Komatireddy, we did send a loss affidavit form to those

15   individuals.  I will need to run down whether they returned

16   yet.

17         THE COURT:  All right, and if they haven't, I would

18   just, to the extent you have contact information, just contact

19   them and let them know that they should do that expeditiously

20   if they want the Court to consider it.  So, Ms. Ramachandra, I

21   don't know if there's anything you want to add at this point,

22   until you see the Government's response.

23         MS. RAMACHANDRAN:  Yes, I'll wait until I see the

24   Government's response.

25         THE COURT:  I would just say, I was thinking, I was

1    looking at your submission, I would just say, although I think

2    you accurately cited the law as it relates to what could be the

3    subject of restitution, in terms of when there's a scheme.  The

4    issue, I believe think there's a couple of issues with what you

5    submitted.

6          One of the issues that jumped out at me is that even

7    if it could be considered part of the count of conviction, it

8    still would require the Government to have proven that that as

9    part of the scheme, and I don't know how much you looked back

10   at the trial transcript and you know, the post trial, the

11   forfeiture hearing and things of that nature.  But and I don't

12   know exactly all the different that are in that or not you're

13   seeking.

14         But if Mr. Nolan had other investments, Mr. Kenner,

15   that he believes were part of the scheme and were fraudulent in

16   some manner, but the Government hasn't, has not proven it, as

17   part of the trial or the post trial proceedings, then that

18   would be problematic, even if it could be considered part of

19   the count of conviction.

20         And the other thing I noticed is, I think some of

21   what he was seeking as restitution I thought, looked like it

22   was part of the penalty, some type of penalty with respect to

23   the arbitration.  I don't know why that would be something that

24   the Court could also include in a restitution order.

25         So those are two issues that just jumped out at me.

1  But it may make sense to wait for the Government to respond and

2  then you can put in another letter.  And then if necessary we

3  can have another call to discuss it.  Okay?

4          MS. RAMACHANDRAN:  Okay. I mean one of the challenges

5  in writing this letter was in the Government's submission it

6  really wasn't clear how they arrived at the number for Mr.

7  Nolan for the restitution number. I mean I take their

8  submission at their word where they say they're only including

9  amounts that were, you know, part of the scheme charged in the

10  indictment, and proven at trial. But it wasn't clear what those

11  were without looking back at the trial transcripts, which I

12  don't have access to.

13          THE COURT:  All right, well you can, I'll ask them in

14  your letter to break down how they arrived at that particular

15  number so you can see what the breakdown is.  And honestly you

16  can call them and maybe have a discussion with them about that

17  if you want as well.  They obviously have an obligation to work

18  the victims and victims' counsel to try to make sure the

19  amounts are accurate.

20          But I can just tell you generally that you know, in

21  terms of the line of credit money that went, that was part of

22  the Hawaii project before the global settlement fund, those

23  were the parts of the scheme that were the focus of the trial.

24  So my belief is is that that's what's embedded in that number.

25  Okay?

1          MS. RAMACHANDRAN:  Okay.  Thank you.

2          THE COURT:  All right.

3          MR. TALKIN:  Your Honor, on behalf of Mr.

4  Constantine, I just want to flag one issue, which I'm not sure

5  is going to come up based on the Government's submission to

6  date.  And you know, clearly unlike forfeiture, restitution is

7  joint and several.  But the statute does contain language that

8  allows for proportionality based on conduct.

9          And we do have the unique situation here with the

10  lines of credit which are a large amount of money.  And you

11  know, it's clear that there's a strong argument for Constantine

12  on proportionality as to those, whether he would be responsible

13  for restitution as to those monies that didn't make it to

14  Hawaii and things along those lines.

15          And certainly any of these collateral issues that are

16  being raised by the victims as far as penalties or judgments or

17  anything like that, that arise strictly from.  I don't think

18  we're there yet.  I just wanted Your Honor and the Government

19  to know that that's something that we should think about as we

20  go through this.

21          THE COURT:  Yes, I'm glad you raised that and I don't

22  remember now if the Government, in light of my forfeiture

23  ruling ever backed out the lines of credit for purposes of

24  restitution.  But it would be my view that that's not the part

25  of Mr. Constantine's restitution order for the same reasons

1  that I do not believe it should be part of his forfeiture

2  order.  So to -- the Government hasn't done that to make sure

3  that there's a restitution amount that takes that into

4  consideration.

5          I would just also ask you, Mr. Talkin, I know several

6  months ago you were of the belief that the -- there might be

7  some sale of the (inaudible-audio glitch) or the patents --

8          MR. TALKIN:  Yeah, I --

9          THE COURT:  -- are there --

10         MR. TALKIN:  Actually Your Honor, I will update you

11  and the Government shortly on that.  But in short it hasn't

12  happened yet, because the (inaudible) kind of froze everything.

13  But it's still alive.  I will speak to the attorneys in the

14  sale and the CEO, and I'll give everyone update, a short

15  letter, just probably on the -- so everyone knows what's going

16  on.

17         THE COURT:  All right.  And Ms. Ramachandra, Mr.

18  Kenner had raised at some point, and the Government I think had

19  probably reached out to you and then  responded in a letter.

20  But I just want to confirm.  Mr. Kenner was of the belief that

21  there had been some kind of civil settlement reached, I believe

22  with Mr. Jowdy, and was arguing that his restitution to your

23  client should be offset by whatever settlement was reached.

24         I think my memory is that the Government, in a letter

25  to me, indicated that they did not believe -- because Mr.

1  Kenner wanted a copy of the settlement agreement.  So I don't

2  think I saw anything in your letter about that.  But I just,

3  again I want to try to eliminate any open issues.  I haven't

4  heard from Mr. Kenner yet, but I know that was something he was

5  interested in. Do you want to respond to that?

6        MS. RAMACHANDRAN:  Well I sort of assumed from the

7  docket entries and so forth on the correspondence I saw that

8  the Government had not offset their restitution number by that

9  settlement agreement.  So I had actually viewed that as

10 resolved.  But I can respond to that as well when I respond to

11 the Government's letter.

12       THE COURT:  All right.  Yes.  All right, Mr. Kenner,

13 is there anything you want to be heard on, on the restitution

14 issue at this point?

15       MR. KENNER:  Perhaps Your Honor can just lay out what

16 your schedule is with respect to the restitution or a hearing.

17 I know you had mentioned that you thought you may do that in a

18 separate forum.  And I'm just unfamiliar with what your

19 schedule and thought would be on that.

20       THE COURT:  My thought, we were going to go forward

21 in March because there were open issues, I had already decided

22 that the law allows me I can sentence somebody, and then put

23 off the setting of the restitution amount so as not to delay

24 the sentencing.  And that continues to be my view, is that to

25 the extent there are any open issues regarding restitution,

1   it's not doing go delay the sentencing.  I'm just going to go

2   forward with the sentencing as soon as we can.  And if

3   necessary, just have that restitution issue play out a little

4   bit more.  So that's my current intention.

5           Your sentencing is not going to be delayed by the

6   restitution issue in other words.  But I know to the extent,

7   I'm hoping that the situation at MDC is okay right now, but to

8   the extent your hope was that you know, this wouldn't delay how

9   long you would have to be at the MDC versus another institution

10  if you were sentenced.  Because you are pro se, that you know,

11  I would want you to stay here for, until the restitution issue

12  was resolved, so that might delay a designation. But I'll have

13  to think about that.

14          But what's the situation at the jail right now, is it

15  okay there?

16          MR. KENNER:  No, it's not.  But this probably isn't

17  the right forum with everyone else on the line to talk about

18  this situation.

19          THE COURT:  All right.  Well, I'm sorry to hear

20  that, but if you want to send me a letter regarding whatever

21  the situation is, obviously I'll look at it.  I'm monitoring,

22  obviously as you know, there's litigation going on with respect

23  to that, I'm monitoring that.  But if there's anything in

24  particular you want to bring to my attention, just send me a

25  letter.  But you know, I'll take that into consideration as

1  well.

2         MR. KENNER:  So if Your Honor could just clear up one

3  point for me.  And I can deal with the rest of this with Mr.

4  Brissenden.  I'm assuming it's just going to be after

5  sentencing that you're going to wrap up whatever restitution

6  issues may be outstanding. Is there a plan for a hearing

7  similar to the forfeiture hearing, or what is the schedule that

8  we have on that or is it just --

9         THE COURT:  No I don't, at this point I don't

10  anticipate any type of evidentiary hearing on that.  You know,

11  obviously I have the trial evidence, I have the forfeiture

12  evidence. To the extent that there are any issues, for example

13  if there are issues with regard to for example Owen Nolan

14  believing that there were certain frauds that were part of the

15  scheme that he should get restitution on, that were part of the

16  offense of conviction, the Court would not be having a hearing

17  on something like that, that's just something at this point I

18  would not entertain.

19         So, I don't anticipate there actually being at this

20  point any type of evidentiary hearing with respect to

21  restitution.  I have the ability to do that if something in an

22  affidavit, you know, comes in and disputed, it's not something

23  I heard testimony about, to do that.  But I'm not at that

24  point.

25         MR. KENNER:  Okay.

1           THE COURT:  Okay?

2           MR. KENNER:  Yes.

3           THE COURT:  All right.  So that's all I had on my

4  agenda, is there anything else, Mr. Kenner is there anything

5  else you want to raise with me today?

6           MR. KENNER:  No, sir.

7           THE COURT:  All right, if you want another status

8  conference, as we're doing today by phone, Mr. Kenner, just

9  again write me a letter, and request a phone conference to

10  discuss whatever it is. I don't want you to feel like you're

11  cutoff from the Court just because you can't appear in person.

12  All right?

13          MR. KENNER:  Okay, thank you, Your Honor, I

14  appreciate that.

15          THE COURT:  Right.  Mr. Talkin, is there anything

16  else from your client today?

17          MR. TALKIN:  No, thank you, Your Honor.

18          THE COURT:  All right, does the Government have

19  anything else today?

20          MS. KOMATIREDDY:  No, Your Honor, thank you.

21          THE COURT:  All right, thank you everybody, I

22  appreciate your patience and take care.

23                          *  *  *  *  *

24

25

1    **C E R T I F I C A T I O N**

2

3         I, **PATRICIA POOLE**, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    /S/ PATRICIA POOLE

9    TRACY GRIBBEN TRANSCRIPTION, LLC     DATE: June 11, 2020

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25