**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

-against-

Criminal Docket No. 13-0607 (JFB)

PHILIP A. KENNER, *et al.*,

     Defendants.

**MOTION FOR SUMMARY JUDGMENT IN SUPPORT OF VERIFIED PETITION OF DANSKE BANK A/S LONDON BRANCH TO ADJUDICATE INTEREST IN PROPERTY PURSUANT TO 21 U.S.C. § 853(n)**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .......................................................................................... 1

II.  FACTUAL BACKGROUND ............................................................................................ 3

    A.  Danske's Interest in the Resort Property Began Under the Terms of an $800 Million Commercial Repurchase Agreement. ............................................................. 3

    B.  In 2006, Lehman Brothers Holdings Inc. Acquired a Senior Perfected Secured Interest in the Resort Property After Extending a Loan of Up to $125 Million to Diamante Cabo San Lucas S. De R.L. De C.V. ............................................................................... 4

    C.  Lehman Defaults on the MRA in September 2008 And Danske Acquires Lehman's Interest. .................................................................................................................... 7

    D.  In January 2009, Danske Assumed Lehman's Perfected Secured Interests and Rights in the Resort Property and Equity Interests. ............................................................. 8

    E.  Since Danske Acquired the Interests in the Resort Property and Equity Interests, Danske Has Entered Into Additional Modifications of the Loan Agreements and Advanced at Least $100 Million of Dollars to Fund the Borrower's Development of the Resort Property. ..................................................................................................................... 9

    F.  Danske Neither Knew Nor Had Reason to Believe that Either the Resort Property or the Equity Interests Were Subject to Forfeiture. ............................................... 12

    G.  Danske Holds a Senior Secured Lien in the Resort Property of Approximately $200 Million, and Senior Secured Interests in the Equity Interests. ............................. 13

III.  ARGUMENT ................................................................................................................. 14

    A.  Standard Applicable to this Motion ................................................................... 14

    B.  Danske Has a Legal Interest in the Resort Property and Equity Interests and Thus Has Standing to Assert its Claim. ................................................................................ 15

    C.  Danske Is a Bona Fide Purchaser of its Senior Secured Interests in the Resort Property and the Equity Interests. ................................................................................ 16

        1.  Danske Acquired its Interests No Later than January 2009. ...................... 17

        2.  Danske Provided Value for its Interests. ................................................... 20

        3.  When it Acquired its Interests, Danske Was Reasonably Without Cause to Believe the Resort Property or Equity Interests Were Subject to Forfeiture. ......................... 21

    D.  The Preliminary Order Should Be Amended to Reflect that Danske's Interests Are Senior to Interests Held or Acquired by the Government or Equity Holders. ................. 23

IV.  CONCLUSION ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashwood Capital, Inc. v. OTG Mgmt., Inc.*,
  99 A.D.3d 1 (1st Dep't 2012) ...............................................................19

*Cherno v. Dutch Am. Mercantile Corp.*,
  353 F.2d 147 (2d Cir. 1965)...............................................................21

*Cosmopolitan Credit & Inv. Corp. v. Blyth Eastman Dillon & Co.*,
  507 F. Supp. 954 (S.D. Fla. 1981) .....................................................20

*Jenkins v. Stephenson*,
  293 A.D.2d 612, 745 N.Y.S.2d 30 (2d Dep't 2002)............................17

*In re Lehman Bros.*,
  526 B.R. 481 (S.D.N.Y. 2014)....................................................2, 5, 18

*LH 1440 L.L.C. v. Lehman Commercial Paper, Inc. (In re Lehman Bros.
  Holdings, Inc.)*,
  416 B.R. 392 (Bankr. S.D.N.Y. 2009) ...............................................20

*NML Capital v. Republic of Argentina*,
  621 F.3d 230 (2d Cir. 2010)...............................................................15

*Pacheco v. Serendensky*,
  393 F.3d 348 (2d Cir. 2004)...............................................................17

*Parris v. Fremont Inv. & Loan*,
  No. 14-cv-06907 (KAM)(RER), 2017 U.S. Dist. LEXIS 144279 (E.D.N.Y.
  Aug. 31, 2017) ...................................................................................16

*Scher Law Firm v. DB Partners I LLC*,
  No. 24633/09, 27 Misc. 3d 1230(A), (N.Y. Sup. Ct. June 3, 2010) .......21

*SEC v. Drysdale Sec. Corp.*,
  785 F.2d 38 (2d Cir. 1986)..................................................................18

*In re TOUSA, Inc.*,
  No. 09-60589-CIV, 2011 WL 1627129 (S.D. Fla. Mar. 4, 2011) ..........20

*United States v. Agnello*,
  344 F. Supp. 2d 360 (E.D.N.Y. 2003) .................................................19

*United States v. Chowaiki*,
  369 F. Supp. 3d 565 (S.D.N.Y. 2019)..................................................16

*United States v. Egan*,
No. 10 cr 191, 2012 U.S. Dist. LEXIS 123002 (S.D.N.Y. Aug. 28, 2012) ...........................17

*United States v. Espada*,
128 F. Supp. 3d 555 (E.D.N.Y. 2015) .......................................................................15

*United States v. Huntington Nat'l Bank*,
682 F.3d 429 (6th Cir. 2012) .................................................................................17

*United States v. Lavin*,
942 F.2d 177 (3rd Cir. 1991) .................................................................................17

*United States v. Mackay*,
Nos. 2:08-cr-106; 2:08-cr-46; 2:08-cr-47, 2010 U.S. Dist. LEXIS 143452 (D.
Vt. Feb. 11, 2010) (*rev'd on other grounds*)...................................................16, 21

*United States v. Madoff*,
No. 09 Cr. 213 (DC), 2012 U.S. Dist. LEXIS 48733 (S.D.N.Y. April 3, 2012) ...................15

*United States v. Ribadeneira*,
105 F.3d 833 (2d Cir. 1997)....................................................................................15

*United States v. Rodriguez-Perez*,
No. S38 10 CR 905-LTS, 2019 WL 188400 (S.D.N.Y. Jan. 11, 2019)............................19, 22

*United States v. Watts*,
786 F.3d 152 (2d Cir. 2015)....................................................................... *passim*

*Willis Mgmt., Ltd. v. United States*,
652 F.3d 236 (2d Cir. 2011)...............................................................................15, 16

*Wooster & Frame v. Jenkins*,
3 Denio 187 (N.Y. Sup. Ct. 1846) ...........................................................................20

**Statutes**

21 U.S.C. § 853...................................................................................... *passim*

N.Y. UCC 1-204 .......................................................................................21

**Other Authorities**

Fed. R. Civ. P. 56 ...............................................................................1, 15

Fed. R. Crim. P. 32.2 ...........................................................................1, 15

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and Rule 56 of the Federal Rules of Civil Procedure, Danske Bank A/S London Branch ("Danske") respectfully submits this motion for summary judgment (the "Motion") in favor of its petition (the "Petition"), pursuant to Title 21, United States Code, Section 853(n), seeking adjudication of Danske's interest in certain property ordered forfeited by the March 16, 2020 preliminary order (the "Preliminary Order").

## I.      PRELIMINARY STATEMENT

On March 16, 2020, the Court entered a Preliminary Order requiring that certain property be forfeited to the government subject to the rights of third-parties. It is unequivocal that Danske holds secured interests in the following property set forth in paragraph A(1)-(6) of the Preliminary Order:  (1) Diamante Cabo San Lucas, Cabo San Lucas, Mexico at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico (the "Resort Property"), and (2)  shares, in pertinent part, in Baja Ventures 2006, LLC, Diamante Properties, LLC, CSL Properties 2006, LLC, and KAJ Holdings, LLC (together, the "Equity Interests").

This Court is asked to decide one issue: whether Danske, an international commercial bank and lender here of millions of dollars, is a bona fide purchaser of senior secured interests in the Resort Property and Equity Interests. This issue is a simple one without any genuine issue of material fact and can be decided by this Court through this Motion.

To begin, Danske, as a secured lender, has standing to bring its Petition and this Motion. In the Second Circuit, a party has standing to litigate its claim in an ancillary proceeding if the party can establish that it has a legal interest at stake. A legal interest is defined by relevant case law as having a right against an identifiable property, rather than a general interest in an estate. Danske, which has a right to payment that is secured by identifiable property, the Resort Property and Equity Interests, holds exactly that kind of interest and therefore has standing. This is the very

kind of interest that the Department of Justice recognizes as the "intent of Congress" in its own general policy that the government reach early settlements with valid lienholders like Danske.

Danske is also a bona fide purchaser for value and, at the time of purchase, was reasonably without cause to believe that the property was subject to forfeiture. Under Title 21, United States Code, Section 853 ("Section 853") a party is a bona fide purchaser if it can demonstrate that (1) it gave value for the interest it acquired, and (2) at the time of purchase, it was reasonably without cause to believe the property was subject to forfeiture. There can be no doubt that Danske satisfies that test. First, Danske's interest in the Resort Property dates back to a repurchase agreement with Lehman Brothers Holdings Inc. ("Lehman") and Lehman Commercial Paper Inc. (together with Lehman, the "Lehman Parties") pursuant to which Danske purchased assets, including Lehman's interest in the Resort Property, for approximately $800 million dollars. During the devastating financial crisis of 2008, after the Lehman Parties filed for bankruptcy and defaulted on the repurchase agreement with Danske, Danske acquired Lehman's perfected senior secured lien in the Resort Property as partial payment of the amounts the Lehman Parties owed to Danske under the repurchase agreement. At that time, Lehman's lien against the Resort Property totaled over $107 million. Danske formally assumed Lehman's interests almost *five years* before the Defendants were even indicted and more than *six years* before there was any notice that the Resort Property and Equity Interests were subject to forfeiture.

Second, in addition to acquiring its interest as a result of the Lehman Parties' defaults under the repurchase agreement, Danske has subsequently advanced at least $100 million for the development and benefit of the Resort, which like the original loan amount of $107 million, was secured by the Resort Property. At the time of these advances, Danske had no reason to believe the Resort Property was subject to forfeiture. The loan secured by the Resort Property consists of

three separate loan facilities—Facility A (accounting for the original Lehman loaned amounts), Facility B (created in March 2009), and Facility C (created in its current form in 2014). Under these facilities, Danske is currently owed (inclusive of default interest):

| Facility A Principal Balance | $96.4 million |
|---|---|
| Facility B Principal Balance | $18 million |
| Facility C Principal Balance | $14.1 million |
| Profit Participation Fee ("PPF") representing unpaid interest accruing between 2006-2009 | $50 million |
| Unpaid Interest and Unpaid Fees | $21.5 million |
| Total | **$200 million** |

Because Danske is a bona fide purchaser for value under 21 U.S.C. Section 853(n)(6)(B), its interests are superior to interests held or acquired by the government or any equity holder. Danske respectfully requests that the Court enter an order amending the preliminary order of forfeiture to reflect Danske's (and its successors' and assigns') senior interests and its right to first payment in full and default interest on its claim.

## II. FACTUAL BACKGROUND

### A. Danske's Interest in the Resort Property Began Under the Terms of an $800 Million Commercial Repurchase Agreement.

Danske's interests in the Resort Property and Equity Interests dates back to repurchase transactions completed under the terms of a 1999 Master Repurchase Agreement (the "MRA"), as amended, and a 2005 committed repurchase facility agreement (with the MRA, the "Repo Agreements"). *See* Rule 56.1 Stmt. ¶¶ 30-56. A repurchase transaction is a form of financing arrangement where one party ("Seller") obtains financing dollars by selling an interest in property (for example, a secured lien against a commercial property) to another party ("Buyer"), with Seller retaining the obligation to repurchase the interest from Buyer at an agreed upon price and date.

The Repo Agreements governed repurchase transactions completed in connection with a "committed repurchase facility" with a total funding amount of $800,000,000 (the "Commercial

3

Repo"). *Id.*, ¶ 56. Lehman sold Danske a certain pool of assets, i.e., secured interests in commercial properties, in exchange for Danske's payment of a purchase price. *See id.*, ¶¶ 33, 35. Under the terms of the MRA,

> "*[a]ll of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date* and, unless otherwise agreed by Buyer and Seller, nothing in this Agreement shall preclude Buyer from engaging in repurchase transactions with the Purchased Securities or otherwise selling, transferring, pledging or hypothecating the Purchased Securities."

*Id.*, ¶ 38 (emphasis added). In addition, under the terms of a tri-party custodial agreement (the "Custody Agreement") between Danske, Lehman, and Bank of New York ("BNY"), the assets purchased pursuant to the Repo Agreements were held for Danske's benefit in an account at LaSalle Bank, N.A. ("LaSalle"), as sub-custodian for BNY. *Id.*, ¶ 49. The Custody Agreement provided that:

> "[a]ll property from time to time in Buyer's Master Custodian Account shall be owned and controlled solely by Buyer, and Bank shall follow only Buyer's instructions with respect to Buyer's Account. . . ."

Rule 56.1 Stmt. ¶ 55. As of September 12, 2008, Lehman had a $107,529,665.06 interest in the Resort Property that was held at LaSalle for Danske's benefit, *id.* ¶ 59.

The Repo Agreements and Custody Agreement contemplated that Danske and Lehman would engage in multiple repurchase transactions under the Commercial Repo. In connection with these transactions, Lehman agreed to repurchase from Danske the interest in the Resort Property (and any other interests sold to Danske) at an agreed upon price that repaid the amount Danske conveyed to Lehman and added a premium for the risk Danske assumed. *Id.*, ¶33.

**B.     In 2006, Lehman Brothers Holdings Inc. Acquired a Senior Perfected Secured Interest in the Resort Property After Extending a Loan of Up to $125 Million to Diamante Cabo San Lucas S. De R.L. De C.V.**

In March 2006, Lehman Brothers Holdings Inc. ("Lehman") extended to Diamante Cabo San Lucas S. De R.L. De C.V., a Mexican limited liability company (the "Borrower" or

4

"Diamante") an acquisition, pre-development, development and construction loan in an amount of up to $125 million. *Id.*, ¶ 5. Diamante took the loan to acquire the land and develop the Resort Property into a world class resort. *Id.*, ¶¶ 6, 8. The property purchased by Diamante was a 1,510-acre site in Cabo San Lucas, Mexico consisting of vacant land located four miles west of downtown Cabo San Lucas with 1.5 miles of beach frontage along the Pacific Ocean. *Id.*, ¶ 7. As presented to Lehman, Diamante's "master plan" included developing "211 private, oceanfront and ocean view residential home sites, 185 villas (full and/or fractional ownership), two championship golf courses (including the "Dunes" golf course), two clubhouses, a beach club with a restaurant and guest accommodations, community center with a spa, fitness center, tennis, pool, retail, restaurant(s) and other commercial services." *Id.*, ¶ 8. The plan also provided for "65 beachfront acres and 235 upland acres of excess land for future development." *Id.* Between 2006 and 2009, the Borrower drew $107,538,327.83 to acquire and develop the Resort Property. Rule 56.1 Stmt. ¶ 18.

The 2006 Loan Agreement granted to the then-lender, Lehman, certain rights. The 2006 Trust Agreement (defined below) between Diamante, Banco J.P. Morgan, S.A. Institucion de Banca, J.P.Morgan Grupo Financiero, Trust Department (the "Trustee"), and Lehman established that the Trust (defined below) held the Resort Property for Lehman's benefit, as first beneficiary. *Id.*, ¶¶ 22-23. Through the Trust, which was registered in the Public Property Registry, Lehman held a perfected secured senior lien in the Resort Property. *Id.*, ¶¶ 21, 23.

The 2006 Loan Agreement (and all subsequent amendments) provides that New York law governs, without limitation, matters of construction, validity and performance, and the obligations arising thereunder, while Mexican law governs the "creation, perfection, priority, enforcement and foreclosure" of liens and secured interests created pursuant thereto. *Id.*, ¶ 20. Under Mexican law,

interests in real property are perfected by creating a Mexican guaranty trust using a public deed and then registering the trust agreement with the applicable Public Property Registry. *See id.*, ¶ 21. Pursuant to the 2006 irrevocable guaranty trust agreement (the "Trust Agreement") between Diamante, Lehman (now-Danske), and the Trustee, the Resort Property is owned by a Mexican guaranty trust numbered F/00321 (the "Trust"). *Id.*, ¶¶ 22-23. This Trust was created using a public deed that was then registered with the appropriate Public Property Registry. Rule 56.1 Stmt. ¶ 23.

The original Trust Agreement secured Lehman's interest in the Resort Property and provided that Lehman is the first-place beneficiary and the Borrower is the second-place beneficiary of the Trust; the Trust Agreement has since been amended on or around March 6, 2009, April 30, 2013, and May 13, 2014. *Id.*, ¶¶ 102-103.

In addition to acquiring a senior secured interest in the Resort Property, Lehman acquired senior security interests in all of the rights, title, and interests (direct or indirect) in the Borrower, *i.e.*, all securities or other property representing the Equity Interests, all accounts or other property relating to the Equity Interests; and all Proceeds arising from the Equity Interests. *Id.*, ¶¶ 11, 17, 27-29. In 2006, Lehman perfected the security interests in the LLCs and the Equity Interests by filing UCC financing statements. *Id.*, ¶ 29.

The 2006 Loan Agreement also granted Lehman the rights to (a) first payment priority, (b) full repayment of the principal balance and interest, including interest accrued on the principal balance, (c) payment of deferred interest (interest unpaid as of the payment date under the loan agreement for which payment is deferred), (d) payment of default interest, with default interest added to the principal balance, (e) recover all of its costs and expenses incurred in connection with the loan, and (f) declare an event of default and to thereafter exercise certain remedies. *Id.*, ¶ 13.

### C.   Lehman Defaults on the MRA in September 2008 And Danske Acquires Lehman's Interest.

On September 15, 2008, Lehman filed for bankruptcy. The Repo Agreements provided in pertinent part that a bankruptcy filing and failure to repurchase assets under the terms of the Repo Agreements constituted events of default. *Id.*, ¶¶ 36, 31, 58. As a result of Lehman's bankruptcy filing, Danske notified Lehman that it had defaulted under the Repo Agreements on September 15, 2008. Rule 56.1 Stmt. ¶ 59. Thereafter, on September 23, 2008, Danske notified Lehman that an event of default had occurred because of Lehman's failure to pay Danske certain amounts due and owing in connection with repurchase transactions completed under the Repo Agreements. *Id.*, ¶ 60.

As a result of Lehman's defaults, Danske was entitled to exercise its right to certain remedies, including requiring Lehman to make immediate payment of the repurchase prices owed for transactions completed under the Repo Agreements, to elect to retain some or all of the assets Danske bought to satisfy the repurchase prices owed by Lehman, or to demand Lehman provide another form of value to satisfy the repurchase prices owed. *Id.*, ¶¶ 42-43, 60. Under the MRA, if Danske elected to retain an asset, the value of that asset would be credited to Lehman's account under the Repo Agreements to reduce the aggregate amount due to Danske from Lehman. *Id.*, ¶¶ 44, 59 (Exhibit 32 thereto reflects that, as of September 12, 2008, Lehman's perfected senior secured lien in the Resort Interest was valued at face value, or $107 million).

During 2009, Danske agreed to accept as partial satisfaction 11 secured interests in commercial property, including Lehman's interests in the Resort Property. Rule 56.1 Stmt. ¶ 62. Even after Danske elected to retain the 11 secured interests, Lehman still owed Danske hundreds of millions of dollars. *Id.* Indeed, under the Commercial Repo, Danske provided $800,587,599.42 of funding to the Lehman Parties, but had, as of the date of its bankruptcy claim filing, received

partial payment of $248,191,560 in the form of 11 secured liens. *Id.*, ¶ 62. Danske filed a proof of claim (Claim No. 19487) in the Lehman bankruptcy proceeding in which Danske sought to recover $699,657,333.82 owed in connection with the Commercial Repo and $300,000,000 of residential repurchase transactions completed under a separate repurchase agreement between Danske and Lehman. Danske's claim amount was the net aggregate amount the Lehman Parties owed to Danske after Lehman's account was credited to reflect the value of collateral that Danske purchased and elected to retain. *See id.*, ¶ 62. The Bankruptcy Court approved the parties' settlement that set Danske's deficiency claim amount as $580 million. *Id.*, ¶ 63.

**D.**     **In January 2009, Danske Assumed Lehman's Perfected Secured Interests and Rights in the Resort Property and Equity Interests.**

After Danske agreed to accept the senior secured lien in the Resort Property as partial satisfaction of amounts owed to Danske, Lehman and Danske executed an omnibus assignment and assumption agreement (the "Assignment and Assumption Agreement") on January 13, 2009. Pursuant to the Assignment and Assumption Agreement, Lehman assigned and Danske assumed all of Lehman's rights, obligations, and interests under the loan agreements and related documents, e.g., the Trust Agreement and pledges of equity interests. *Id.*, ¶ 61. Among other things, Lehman assigned, transferred, and made payable to Danske all obligations of Borrower, including but not limited to interest, principal, and all other sums that were due or would become due under the 2006 loan documents, and its senior secured interests in the Resort Property (perfected as set forth above) and Equity Interests (perfected through UCC financing statements). *See id.* Under the Assignment and Assumption Agreement, Danske stepped into Lehman's shoes and acquired all of the collateral securing the loan, including among other things beneficiary rights under the Trust Agreement and rights under the UCC financing statements.

8

In early 2009, the Borrower owed $107,538,327.83 in principal and $49,132,479 in unpaid accrued interest. Rule 56.1 Stmt. ¶¶ 18, 65, 67. After Danske loaned the Borrower an additional $1.6 million under the original loan facility in early 2009, the principal balance increased from $107,538,327.83 to $109,138,327.83. *Id.*, ¶ 65. In March 2009, at the time Danske entered into an amended and restated agreement with the Borrower, the Borrower owed $109,138,327.83 in principal and $49,132,479 in unpaid accrued interest. *Id.*

E.    **Since Danske Acquired the Interests in the Resort Property and Equity Interests, Danske Has Entered Into Additional Modifications of the Loan Agreements and Advanced at Least $100 Million of Dollars to Fund the Borrower's Development of the Resort Property.**

On March 6, 2009, Danske and the Borrower entered into an Amended and Restated Loan Agreement that modified the structure of the original loan by splitting it into Facility A and Facility B. *Id.*, ¶ 64. Facility A represented the amount of unpaid principal advanced to the Borrower under the original loan in an amount of $109,138,327.83, which was comprised of the $107,538,327.83 loaned by Lehman and the $1.6 million Danske advanced in early 2009. *Id.*, ¶ 65. Facility B was established as a revolving line of credit of up to $16 million, an amount that represented the amount remaining to be advanced under the original 2006 loan. *Id.*, ¶66. In addition, unpaid accrued interest (then totaling approximately $49 million) was to be repaid as the PPF which was to be calculated using a formula set forth in the Amended and Restated Loan Agreement. *Id.*, ¶ 68.

The Amended and Restated Loan Agreement (and related documents) entitled Danske to the same rights that Lehman had, *see* Section B, *supra*, and pledges and guaranties made to Lehman were reaffirmed in favor of Danske. Rule 56.1 Stmt. ¶¶69-70. Danske, the Trustee and the Borrower also executed an amended Trust Agreement that acknowledged Danske as "Beneficiary in First Place as creditor under the Amended and Restated Loan Documents" and

took the necessary steps to ensure that the security interest in the Resort Property remained perfected. *Id.*, ¶ 101.

In March 2009, Danske also formalized its assumption of Lehman's priority secured interests in the Equity Interests in the LLC Entities and ensured that these interests remained perfected by filing UCC financing statements naming Danske as Lehman's replacement. *See Id.*, ¶ 106. At this same time, PF Ventures, LLC ("PF Ventures"), an LLC entity with an equity interest in the Borrower's managing member (Diamante Cabo San Lucas LLC), granted Danske a "first priority security interest in all of Pledgor's right, title and interest" in the Borrower's managing member. *Id.*, ¶ 70. Danske promptly perfected its interests in PF Ventures by filing a UCC financing statement. *Id.*, ¶ 106.

In January 2010, Danske and Diamante agreed to a loan modification that increased the Facility B line of credit from $16 million to $20 million, *id.*, ¶ 73, in order to enable the Borrower to finance ongoing operations and continue development at the Resort Property. Following this loan modification, Danske continued to have a perfected senior secured lien against the Resort Property and perfected senior secured interests in the Equity Interests. Rule 56.1 Stmt. ¶ 75.

Beginning in March 2012 and through March 2013, Danske and the Borrower agreed to a series of extensions of the loan maturity dates for Facilities A and B. *Id.*, ¶ 77. Other than extending the deadline for payment, these extensions did not change any of Danske's rights. After the extensions, Danske continued to have perfected senior secured interests in the Resort Property and the Equity Interests. *Id.*, ¶ 78.

On April 26, 2013, Danske and Diamante entered into the Second Amended and Restated Loan Agreement, which modified the loan in material part by: (a) increasing the unpaid principal balance of Facility A to $123.5 million to reflect the capitalization of accrued but unpaid interest

on Facilities A and B and the payment of certain of Danske's costs and expenses; (b) replacing Facility B with two notes: a new Facility B with a principal amount of $18 million and a new Facility C with a principal balance of $2 million; (c) establishing a new Facility D that advanced new funds of $3 million; (d) increasing the PPF from approximately $45 million to a definitive $50 million; and (e) extending the maturity dates for Facilities A and B to March 31, 2016. *Id.*, ¶¶ 80, 84. After entering into the Second Amended and Restated Loan Agreement, Danske continued to have perfected senior secured interests in the Resort Property and the Equity Interests. *Id.*, ¶¶ 82-83. The purpose of this modification and advancing new money was to finance further development of the Resort Property. *Id.*, ¶ 86.

On April 29, 2014, Danske and Diamante executed the Third Amended and Restated Loan Agreement, which, among other things, modified the loan structure by consolidating then-Facility C and then-Facility D into a replacement Facility C. Rule 56.1 Stmt. ¶ 87. Replacement Facility C, a revolving line of credit, increased the Borrower's available line of credit by $10,000,000, which permitted the Borrower to draw and redraw funds of up to $15,000,000 from Facility C. *Id.* The Third Amended and Restated Loan Agreement also extended the maturity date for the Facility C Note to March 31, 2015. *Id.*, ¶ 88. The primary purpose of this modification was to advance additional funds to continue development of the Resort Property. *Id.*, ¶ 89.

The Third Amended and Restated Loan Agreement maintained Danske's rights including full repayment of: (a) the principal balance on Facilities A and B on or before March 31, 2016, and on Facility C on or before March 31, 2015; (b) principal and interest, including payment of interest accrued on the principal balance; (c) payment of the PPF in the amount of $50 million; (d) if the Borrower defaulted, payment of default interest at a rate of 20% with accrued default interest added to the principal balance owed to Danske; (e) first payment priority on all amounts owed and

11

due; and (f) all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the loan. *Id.*, ¶ 92. After executing the Third Amended and Restated Loan Agreement, Danske has continued to have perfected senior secured interests in the Resort Property and the Equity Interests. *Id.*, ¶¶ 90-91.

In October 2014, Danske and Diamante modified the terms of the Third Amended and Restated Loan Agreement by extending the maturity dates for Facilities A and B to October 30, 2024 and for replacement Facility C to October 31, 2017. Rule 56.1 Stmt. ¶ 94. In September 2018, Danske and Diamante modified and amended the terms of the Third Amended and Restated Loan Agreement retroactive to November 1, 2017 in material part by extending the maturity date for Facility C from October 31, 2017 to December 31, 2018 and extending the due date for certain scheduled amortization payments on Facility A. *Id.*, ¶ 97. After agreeing to these extensions, Danske had (and still has) perfected senior secured interests in the Resort Property and the Equity Interests. *Id.*, ¶¶ 95, 98.

**F.      Danske Neither Knew Nor Had Reason to Believe that Either the Resort Property or the Equity Interests Were Subject to Forfeiture.**

When Danske acquired its interests in the Resort Property and Equity Interests in connection with the Commercial Repo, Danske was reasonably without cause to believe the Resort Property or Equity Interests were subject to forfeiture. Danske did not know and had no reason to believe that the Resort Property or Equity Interests could be subject to forfeiture at any time before the government made public that it intended to forfeit the property in which Danske has interests. Indeed, Danske purchased its interest in the property five years before the original indictment in this action, which was on October 29, 2013. *Id.*, ¶ 108. The initial indictment did not include the Resort Property or Equity Interests as among the property subject to forfeiture as a result of Defendants' criminal conduct. *Id.*, ¶ 109. Like the initial indictment, the superseding indictment

filed in April 2015 did not include the Resort Property or Equity Interests as among the property subject to forfeiture. Rule 56.1 Stmt. ¶¶ 110-12.

In fact, the government did not list or publicly disclose that the Resort Property was even subject to forfeiture until August 20, 2015, the day before the protective order was filed. *Id.*, ¶ 115.

### G.      Danske Holds a Senior Secured Lien in the Resort Property of Approximately $200 Million, and Senior Secured Interests in the Equity Interests.

Danske's senior interest in the Resort Property, perfected through the Trust, secures the loan (consisting of Facility A, Facility B, and Facility C) extended to Diamante, any payments, e.g., fees and interest, due under the loan documents, and the PPF, which represents $50 million of unpaid accrued interest. *Id.*, ¶ 118. The lending facilities and PPF are governed by the terms of the Third Amended and Restated Loan Agreement and grants Danske a variety of contractual rights including, upon a default, the right to default interest and to foreclose. *Id.*, ¶ 92. The May 2014 Trust Agreement maintained the perfected senior secured lien Danske holds against the Resort Property. *Id.*, ¶ 103.

Diamante defaulted under the Third Amended and Restated Loan Agreement as of December 31, 2018 by failing to make principal payments on Facilities A and C due by December 31, 2018 and to pay the loan modification fee of $875,000. *Id.*, ¶ 117. The Borrower's default continued throughout 2019 as a result of a failure to make monthly principal payments and an interest payment due on September 30, 2019. *Id.* In January 2020, Danske issued a notice of default to the Borrower. *Id.*

As a consequence of Diamante's defaults, default interest is now accruing on Facilities A-C at 20% per annum, the rate set forth in the Third Amended and Restated Loan Agreement. *Id.*, ¶ 122. As of May 31, 2020, Danske's lien totals approximately $200 million (USD) inclusive of default interest and unpaid costs and fees to which Danske is contractually entitled. *Id.*, ¶ 118.

13

The Borrower owes approximately $21.5 million in unpaid interest and fees as of May 31, 2020, which is comprised of approximately $19.3 million in unpaid interest due on Facilities A, B, and C, an unpaid lenders fee of more than $1,360,840, and an unpaid modification fee of $875,000 arising from the loan modification executed in September 2018. Rule 56.1 Stmt. ¶¶ 118-119. In addition, on March 13, 2020, the Borrower deposited approximately $900,000 of certain timeshare deposits into a Facility C reserve to ensure that the Borrower can meet certain timeshare obligations to members. This $900,000 (USD) have, for now, been applied to Facility C, and have reduced its principal balance, as of May 31, 2020, to $14.1 million. *Id.*, ¶ 121.

With every month that passes, interest continues to accrue and add to the principal balance. As a result, Danske estimates that its senior secured claim will total at least $211 million in September 2020.

Finally, in addition to its perfected senior secured claim against the Resort Property, Danske holds perfected senior secured interests in the Equity Interests as well as Diamante Cabo San Lucas, LLC and PF Ventures, LLC. The LLC entities (Diamante Cabo San Lucas, LLC, PF Ventures, LLC, Baja Ventures, LLC, CSL Ventures, LLC, KAJ Holdings, LLC, and Diamante Properties, LLC) in which Danske holds an interest own, directly or indirectly, interests in the Borrower. *Id.*, ¶ 11. These interests are junior in position to Danske's senior secured claim in the Resort Property. *Id.*, ¶¶ 104-105.  In 2009, Danske maintained the perfection of its secured interests in the LLCs by filing UCC financing statements and updating those statements as necessary. *Id.*, ¶¶ 106-107.

## III.   ARGUMENT
### A.   Standard Applicable to this Motion

A petitioner may move for summary judgment on its petition for an ancillary hearing pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, which incorporates by reference

Rule 56 of the Federal Rules of Civil Procedure. A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. Espada*, 128 F. Supp. 3d 555, 557 (E.D.N.Y. 2015) (quoting Fed. R. Civ. P. 56(a)) (granting summary judgment in favor of claimant); *NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010).

### B. Danske Has a Legal Interest in the Resort Property and Equity Interests and Thus Has Standing to Assert its Claim.

Danske has standing because it has a legal interest in the Resort Property and Equity Interests. A party has standing to assert its claim in an ancillary proceeding if it demonstrates it has "a legal interest in the forfeited property." *Espada*, 128 F. Supp. 3d at 560 (internal quotations and citations omitted); *see also United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). "[S]tate law . . . determines whether a petitioner has a legal interest in the property at issue." *Espada*, 128 F. Supp. 3d at 560; *Willis Mgmt., Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011) (citing *Pacheco v. Serendensky*, 393 F.3d 348, 353-56 (2d Cir. 2004)). A party has standing if it establishes it has an interest "sufficient to establish a 'right, title, or interest in the [forfeited] property'" under Section 853(n)(6) that is an interest "'in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account.'" *United States v. Madoff*, No. 09 Cr. 213 (DC), 2012 U.S. Dist. LEXIS 48733, at *11 (S.D.N.Y. April 3, 2012); *see also United States v. Ribadeneira*, 105 F.3d 833, 836-37 (2d Cir. 1997).

New York law applies to, among other things, matters arising under the Repo Agreements, the loan agreement, and to the pledge agreements, while Mexican law applies to the creation and perfection of Danske's senior lien in the Resort Property. Rule 56.1 Stmt. ¶¶ 30, 48, 71, 74, 81, 93. New York law provides that a holder of a secured interest has a legal interest in property. *United States v. Chowaiki*, 369 F. Supp. 3d 565, 575 (S.D.N.Y. 2019) (finding that a party with a

15

security interest in an artwork had a legal interest in that property but lacked standing because it had not perfected it). Similarly, under New York law, a mortgagee has a legal interest because it has an interest in identifiable property rather than merely a general interest. *See, e.g.*, *Parris v. Fremont Inv. & Loan*, No. 14-cv-06907 (KAM)(RER), 2017 U.S. Dist. LEXIS 144279, at *7-8 (E.D.N.Y. Aug. 31, 2017). In line with that reasoning, courts have found that mortgagees are proper parties to ancillary hearings. *See United States v. Mackay*, Nos. 2:08-cr-106; 2:08-cr-46; 2:08-cr-47, 2010 U.S. Dist. LEXIS 143452, at *17-18 (D. Vt. Feb. 11, 2010) (*rev'd on other grounds*) (finding bank had standing in an ancillary hearing).

Danske currently has a perfected first priority lien against the Resort Property totaling at least $200 million and, as a result of filing UCC financing statements that it has maintained, has perfected senior interests in the Equity Interests comprised shares in the LLCs. Because it holds perfected interests in identifiable property, Danske has standing.

**C.    Danske Is a Bona Fide Purchaser of its Senior Secured Interests in the Resort Property and the Equity Interests.**

As this Court is well aware, 21 U.S.C. § 853(n)(6) provides two methods by which a third-party claimant, such as Danske, may prove that it is entitled to an amendment of the forfeiture order. Under subparagraph (B), Danske is, by a preponderance of the evidence, a "bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B); *Willis*, 652 F.3d at 240-41 (reciting rule that, under Section 853(n)(6), the court must amend a preliminary order of forfeiture when claimant establishes by a preponderance of the evidence that it has an interest in, or was a bona fide purchaser for value of, the property subject to forfeiture; *United States v. Egan*, No. 10 cr 191, 2012 U.S. Dist. LEXIS 123002, at *17-18 (S.D.N.Y. Aug. 28, 2012) (recognizing that a party must establish its interest in property by a

16

preponderance of the evidence and granting summary judgment in part in favor of non-settling claimants where claimants demonstrated their interest in certain currency). As courts have recognized, "the whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired through the operation of the relation-back doctrine—in the forfeited property." *See e.g., United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012); *United States v. Lavin*, 942 F.2d 177, 186 (3rd Cir. 1991) (stating that Subsection B "reflects another common-law rule . . . , namely, that an 'innocent purchaser for valuable consideration must be protected.'") (quoting *Mowrey v. Walsh*, 8 Cowen 238 (N.Y. 1828) and UCC § 2-403(1) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value.")). Further, "[t]he good-faith purchaser exception developed over time in order to promote finality in commercial transactions and thus to encourage purchases and to foster commerce." *Lavin*, 942 F.2d at 186.

State law, here the law of New York, governs whether Danske is a bona fide purchaser for value. *See, e.g.*, *Pacheco*, 393 F.3d at 353. In New York, a party seeking to demonstrate it is a bona fide purchaser for value "must have no [actual or constructive] knowledge of the outstanding lien *and* win the race to the recording office." *Jenkins v. Stephenson*, 293 A.D.2d 612, 614, 745 N.Y.S.2d 30, 32 (2d Dep't 2002). As explained below, Danske is a bona fide purchaser of value entitled to first repayment and enforcement of its contractual rights because it acquired its interests for value and at the time of acquisition, was reasonably without cause to believe that the Property was subject to forfeiture.

### 1.      Danske Acquired its Interests No Later than January 2009.

Danske acquired its perfected secured senior interests in the Resort Property and Equity Interests no later than January 2009. Under the terms of the Repo Agreements, Danske and Lehman engaged in repurchase transactions that "rolled," or turned over, on a regular basis. In connection

17

with these transactions, Danske purchased a pool of assets from Lehman in exchange for providing $800 million of funding while Lehman retained an obligation to repurchase the assets Danske purchased. Rule 56.1 Stmt. ¶¶ 33, 59. Under the MRA, which is governed by New York law, "[a]ll of [Lehman's] interest would pass" to Danske upon its purchase of assets from Lehman. *Id.* ¶ 38. Purchased assets were held by BNY (and LaSalle) for Danske's benefit. *Id.* ¶¶ 49, 52. By September 12, 2008, Lehman's perfected senior lien against the Resort Property was among the assets held in Danske's account at LaSalle. *Id.* ¶ 59. As of September 12, 2018, when the interests were held by LaSalle for Danske's benefit, under the Repo Agreements, Custody Agreement, and New York law, Danske had all of Lehman's interest in the Resort Property. *See, e.g.*, *SEC v. Drysdale Sec. Corp.*, 785 F.2d 38, 41 (2d Cir. 1986) (recognizing that "repo 'lenders' take title to the securities received and can trade, sell or pledge them"); *In re Lehman Bros.*, 526 B.R. 481, 495 (S.D.N.Y. 2014) (finding that rehypothecation of bonds that bank had previously pledged to a financial services company under an interest swap agreement was free of bank's interest and left bank with "no interest whatsoever in the property at stake"). On September 15 and 23, 2008, Lehman defaulted under the Repo Agreements, leaving Danske entitled to elect how Lehman could satisfy what it owed to Danske.

By January 13, 2009, Danske elected to accept assignment of Lehman's perfected senior secured interest in the Resort Property (and, relatedly, the Equity Interests) as partial satisfaction of what Lehman owed to Danske under the Repo Agreements. On January 13, 2009, Danske and Lehman formalized Danske's acceptance of Lehman's interests by executing the Assignment and Assumption Agreement pursuant to which Lehman assigned and Danske formally assumed all of Lehman's rights, including the perfection of the interests in the Resort Property and Equity Interests. Rule 56.1 Stmt. ¶ 61. Under New York law, upon executing this agreement, Danske had

18

full ownership of Lehman's perfected senior secured interests in the Resort Property and Equity Interests. *See United States v. Rodriguez-Perez*, No. S38 10 CR 905-LTS, 2019 WL 188400, at *4 (S.D.N.Y. Jan. 11, 2019) (citing *U.S. v. Watts*, 786 F.3d 152, 167 n.7 (2d Cir. 2015)) (reciting that, in *Watts*, the Second Circuit recognized "that the date on which the petitioner's interest in the accounts originated should be determined by reference to the date on which the assignor acquired its interest because, under New York law, an assignee steps into the shoes of the assignor and may exercise any legal rights and defenses originally belonging to the assignor"). Moreover, New York law enforces contracts, including assumption or assignment agreements, pursuant to their terms. *See Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012) ("'[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.' . . . (internal citations omitted)). This Court should, likewise, enforce the Assignment and Assumption Agreement and find that Danske acquired its perfected senior secured interests in the Resort Property and Equity Interests no later than January 13, 2009.

Danske advanced additional funding in 2010, 2013, and 2014. *See* Rule 56.1 Stmt. ¶ 120. In each instance, the additional funding was secured by Danske's *existing* perfected senior interests in the Resort Property and Equity Interests. Unless it is expressly altered or removed, a security interest remains intact after an agreement is amended. *See United States v. Agnello*, 344 F. Supp. 2d 360, 368-69 (E.D.N.Y. 2003) (holding that petitioner had an interest superior to the government where that petitioner's original agreement granted a security interest in all equipment subsequently acquired by borrower through new advances of money and holding that the parties' later modifications of their agreement did not disturb the original security interest granted to lender/petitioner); *In re TOUSA, Inc.*, No. 09-60589-CIV, 2011 WL 1627129, at *7 (S.D. Fla. Mar. 4, 2011) (holding that the execution of an amended and restated agreement did not constitute a

novation where the parties expressed their intention that the security interest and liens granted in

the original security agreement would continue in full force and effect). Danske's amendments to

the Amended and Restated Loan Agreement did not alter Danske's security interests in the Resort

Property and Equity Interests, Rule 56.1 Stmt. ¶ 75, 82-83, 90-91, 95, and the security interests

that Lehman perfected in 2006 have remained perfected. *See e.g.*, *id.*, ¶¶ 103, 107.

### 2. **Danske Provided Value for its Interests.**

Danske purchased assets from Lehman, including Lehman's interest in the Resort Property,

as part of satisfying Lehman's $800 million debt to Danske under the MRA. *See* Section C, *supra*.

At the time of the assignment, the lien against the Resort Property was valued at $107 million.

Rule 56.1 Stmt. ¶ 59. Since Danske took Lehman's interest in 2009, Danske has advanced at least

an additional $100 million to the Resort Property. Purchasing something, *i.e.*, exchanging money

for an interest or right, constitutes providing value under New York law. *See Wooster & Frame v.*

*Jenkins*, 3 Denio 187, 189 (N.Y. Sup. Ct. 1846) (finding that the parties' exchange of notes "was

the same thing, in legal effect, as though the value had been received in goods or money").

Here, there are two bases to find that Danske purchased Lehman's interest. First, under the

terms of the Repo Agreements, Danske purchased secured interests in commercial properties from

Lehman, including Lehman's interest in the Resort Property (and the Equity Interests), for an

amount of $800,587,599. Rule 56.1 Stmt. ¶ 62. Courts have found that a party providing funds in

connection with a repurchase has provided value and is a bona fide purchaser. *See Cosmopolitan*

*Credit & Inv. Corp. v. Blyth Eastman Dillon & Co.*, 507 F. Supp. 954 (S.D. Fla. 1981) (deeming

purchaser of securities through a repurchase transaction a bona fide purchaser); *LH 1440 L.L.C. v.*

*Lehman Commercial Paper, Inc. (In re Lehman Bros. Holdings, Inc.)*, 416 B.R. 392, 397-98

(Bankr. S.D.N.Y. 2009) (analyzing a repurchase transaction between State Street Bank and

Lehman Commercial Paper following Lehman's default due to its bankruptcy filing and stating

that "[t]he Court believes that a purchaser under a repurchase agreement should be treated in a manner comparable to a good faith purchaser for value."). And indeed, the MRA contemplated that Danske, as buyer, would provide value for its interests. Rule 56.1 Stmt. ¶ 34; *cf. id.* ¶ 39. Second, even if the government were to challenge that Danske's secured interest in the Resort Property and Equity Interests does not date back to the Repurchase Agreement because Lehman had a right to repurchase the asset (or for any other reason), Danske unequivocally purchased its interest in satisfaction of debt owed to it by Lehman as part of Lehman's bankruptcy.

In addition, since 2009, Danske has advanced at least $100 million, *id.*, ¶ 120, to the Borrower with the Resort Property and Equity Interests securing the loans Danske made. It goes without saying that loaning money constitutes a form of value. *See* N.Y. UCC 1-204; *see also Scher Law Firm v. DB Partners I LLC*, No. 24633/09, 27 Misc. 3d 1230(A), at *7 (N.Y. Sup. Ct. June 3, 2010) ("[I]t is undisputed that RBC gave value to DB Partners by loaning money to it"). It therefore makes sense that courts routinely hold that mortgagees are bona fide purchasers that have provided value. *See Mackay*, 2010 U.S. Dist. LEXIS 143452, at *17-18 (*rev'd on other grounds*) (finding bank to be a bona fide purchaser for value where it loaned defendants $260,000 in exchange for a mortgage on the property); *Cherno v. Dutch Am. Mercantile Corp.*, 353 F.2d 147 (2d Cir. 1965) (trustee in bankruptcy stood in shoes of mortgagee, as a bona fide purchaser, which gave full value for its mortgage on mortgagor's chattels as innocent purchaser without knowledge).

### 3. When it Acquired its Interests, Danske Was Reasonably Without Cause to Believe the Resort Property or Equity Interests Were Subject to Forfeiture.

Under the express language of Section 853(n), a party that gave value for an interest establishes that it is a bona fide purchaser if it demonstrates that, it "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B); *see also Watts*, 786 F.3d at 169. That is, the only belief that matters is

whether a property was subject to forfeiture. Courts addressing the issue of knowledge of forfeiture require specific knowledge that the resort would be subject to forfeiture. *See Watts*, 786 F.3d at 172-74 (holding that defense counsel did not reasonably have cause to believe that certain funds were subject to forfeiture—and instead were merely potentially forfeitable—after a *Monsanto* hearing finding that government lacked probable cause to restrain the funds); *United States v. Rodriguez-Perez*, No. S38 10 CR 905-LTS, 2019 WL 188400, at *6-7 (S.D.N.Y. Jan. 11, 2019) (holding that assignee of mortgage had constructive notice that the government was seeking forfeiture over the entire parcel of property—not just defendants' interest in the subject property— where the assignment occurred after the government filed a notice of pendency that identified the entire parcel of property as subject to forfeiture).

As explained above, Danske acquired its senior secured interests in the Resort Property and the Equity Interests no later than January 2009, *see* Section D, *supra*, nearly *five years* before Defendants were indicted and *years* before the government ever set forth that the Resort Property and Equity Interests were subject to forfeiture in its Bills of Particulars. At the time Danske acquired its interests, Danske was reasonably without cause to believe that the Resort Property and Equity Interests were subject to forfeiture. Rule 56.1 Stmt. ¶ 116.

Likewise, when Danske advanced millions in additional monies, pursuant to restated and amended agreements, to the Borrower in 2010, 2013, and 2014, Danske was reasonably without cause to know the Resort Property or Equity Interests were subject to forfeiture. Because Danske gave value and did not reasonably have cause to believe its interests were subject to forfeiture, Danske is a bona fide purchaser under Section 853(n)(6)(B) and its interests must be recognized as superior to the interest the government acquired and any interests held by equity holders.

**D.     The Preliminary Order Should Be Amended to Reflect that Danske's Interests Are Senior to Interests Held or Acquired by the Government or Equity Holders.**

Danske's perfected senior secured interests in the Resort Property and Equity Interest are senior to any interest held by an equity holder or any interest the government acquired through forfeiture. The relation-back rule established under 21 U.S.C. § 853(c) is subject to the exceptions articulated in Section 853(n)(6), which were created "to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired though the operation of the relation-back doctrine—in the forfeited property." *See Petters*, 2013 U.S. Dist. LEXIS 10396, at *11-12 (internal citations omitted). The Department of Justice in its own guidance recognizes that "[t]he intent of Congress, as reflected in applicable "innocent ownership" provisions, is to pay valid perfected liens and mortgages against forfeited property". DOJ's Guide to Interlocutory Sales and Expedited Settlement at 1-1.[1]

A property interest cannot be forfeited if "the petitioner is a bona fide purchaser for value of the . . . interest . . . and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B). As set forth above, Danske is a bona fide purchaser of its interests in the Resort Property and Equity Interests, *see* Sections C1-C3, *supra*. Therefore, the exception articulated in Section 853(n)(6)(B) applies and Danske's senior secured interests in the Resort Property and the Equity Interests (and all related rights, including but not limited to its right to default interest) are superior to any interest held by other equity holders or the government acquired from the Defendants. *See Petters*, 2013 U.S. Dist. LEXIS 10396, at *22-23 (amending the preliminary order of forfeiture to reflect superiority of mortgagee's first priority interest in to the Government's interest where mortgagee had shown,

---

[1]     Available at https://www.justice.gov/sites/default/files/criminal-afmls/legacy/2011/05/12/guidetosales07.pdf

"by a preponderance of the evidence, that it was 'reasonably without cause to believe that the [Properties were] subject to forfeiture'" when it acquired its interests (alteration in original)). Under the exceptions set forth in Section 853(n)(6), Danske respectfully submits that the Preliminary Order of Forfeiture should be amended to reflect Danske's senior secured interests in the Resort Property and Equity Interests.

## IV.   CONCLUSION

For the foregoing reasons and as set forth in Danske's Petition, Danske respectfully requests that the Court grant this Motion, recognize Danske (and its successors and assigns) as a bona fide purchaser for value of senior secured interests in the Equity Interests and Resort Property, including Danske's right to default interest, and amend the Preliminary Order to reflect Danske's senior secured interests with the amount of Danske's claim to be calculated (inclusive of default interest) at the time of amendment. Danske also respectfully requests that the Court grant Danske any and all relief that it deems necessary and proper.

Dated:  New York, New York
        June 19, 2020

VENABLE LLP


By: */s/ George Kostolampros*

George Kostolampros
(gkostolampros@venable.com)
600 Massachusetts Ave NW
Washington DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

        AND

24

Doreen S. Martin
Xochitl S. Strohbehn
(dsmartin@venable.com)
(xochitl.strohbehn@venable.com)
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

*Attorneys for Danske Bank A/S London
Branch*