# EXHIBIT 6

PLEDGE AGREEMENT (the "AGREEMENT") EXECUTED AMONG **DIAMANTE CABO SAN LUCAS, LLC** IN ITS CAPACITY AS PLEDGOR (HEREINAFTER "DIAMANTE LLC"), **KENNETH A. JOWDY** ("JOWDY" AND COLLECTIVELY WITH DIAMANTE LLC, THE "PLEDGORS" ) **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.** ("ISSUER COMPANY") AND **LEHMAN BROTHERS HOLDINGS INC.** IN ITS CAPACITY AS PLEDGEE (HEREINAFTER "PLEDGEE"), PURSUANT TO THE FOLLOWING DECLARATIONS AND CLAUSES:

## DECLARATIONS

I. Pledgors declare through their representatives that:

  a) Diamante LLC is a Delaware limited liability company.

  b) Diamante LLC is the legal owner of one membership interest of the capital stock of Issuer Company representing an ownership interest of 99% of all of the legal and beneficial interests in Issuer Company (the "Diamante Membership Interest").

  c) Jowdy is the legal owner of one membership interest of the capital stock of Issuer Company representing an ownership interest of 1% of all of the legal and beneficial interests in Issuer Company (the "Jowdy Membership Interest" and with Diamante Membership Interest, the "Membership Interests").

  d) The capital stock of Issuer Company consists of 2 membership interests with a value of $10,000 Mexican Pesos.

  e) Pledgee has this day made a loan to Issuer Company in the principal amount of $125,000,000 Dollars, with interest thereon (the "Loan").

  f) The Loan is evidenced by the documents listed in exhibit "A" (collectively, the "Transaction Documents") and is secured by, among other things, this Pledge Agreement and a Trust Agreement as more particularly described in the Transaction Documents (the "Trust").

  g) Pursuant to the Transaction Documents, the execution of this Agreement and the constitution of the pledge on the Membership Interests described above of Issuer Company are conditions precedent under such Transaction Documents.

  h) In order to secure the fulfillment of all and each one of the obligations of Pledgors, the Issuer Company, and the U.S. LLC Members (as defined in exhibit "A") under the Transaction Documents as amended, restated, modified or supplemented from time to time; and any and all present or future obligations under this Agreement, as



1

amended, restated, modified or supplemented from time to time (collectively, the "Guaranteed Obligations"), the Pledgors wish to execute this Pledge Agreement pledging the Membership Interests in favor of Pledgee.

    i)    Kenneth A. Jowdy has sufficient power and authority to bind Diamante LLC under the terms of this Agreement and to pledge the Diamante Membership Interest as provided herein.

    j)    Pledgors expressly recognizes the legal capacity of the person executing this Agreement on behalf of Pledgee.

    k)    The Membership Interests are free and clear of any lien or limitations of ownership, and are fully issued and paid.

    l)    Pledgors have the power and authority and the legal right to execute, deliver and perform their obligations hereunder, and to grant the security interest in the Membership Interests pursuant to this Agreement and have taken all necessary legal and corporate actions to authorize their execution, delivery and performance, and to grant the security interest in the Membership Interests pursuant to this Agreement;

    m)    This Agreement constitutes a legal, valid and binding obligation of Pledgors enforceable in accordance with applicable law and its terms;

    n)    The execution, delivery and performance of this Agreement will not violate in any material respect any requirement of law, any provision of Diamante LLC's organizational documents or any contractual obligation of Pledgors and will not result in the creation or imposition of any lien on any of the assets or revenues of Pledgors except for those derived from the Membership Interests pledged by this Agreement (in accordance with any requirement of law or contractual obligation of Pledgors) except as contemplated hereby and except as expressly permitted by the Transaction Documents;



    o)    As of the date hereof, there is no pending or, to the best of their knowledge after due inquiry, threatened action, claim, requirement or proceeding before any court, governmental agency or arbitrator that affects or could affect the legality, validity or enforceability of this Agreement or their legal title to the Membership Interests;

    p)    No consent or authorization of, request, or whatever other act, by a governmental authority or any other person is required for the execution, modification, termination, assignment, delivery, completion, validity and execution of this Agreement or for the perfection and maintenance of the first priority security interest created hereby, except for the registration of this Agreement in Issuer Company corporate books.

    q)    Pledgors are the beneficial owner and owner of record and have good and indefeasible title to the Membership Interests, free of any and all encumbrances, liens, security interests, options or claims of any other person, except as created under this Agreement or as expressly permitted by the Transaction Documents;

2

 r) The individuals executing this Agreement on behalf of Pledgors have all the necessary power, authority and corporate authorization to execute and deliver this Agreement on their behalf, and such powers, authority and corporate authorizations have not been revoked or limited in any manner; and

 s) It is Pledgors' intention to pledge the Membership Interests to Pledgee in accordance with the provisions of this Agreement.

II. Pledgee declares through its representative that:

 a) Pledgee is a corporation incorporated and existing according to the laws of the State of Delaware in the United States of America.

 b) The person executing this agreement on its behalf has sufficient power to represent Pledgee in this act.

 c) Pledgee wishes to execute this Pledge Agreement and receive the Membership Interest under pledge.

III. Issuer Company declares through its representative that:

 a) Kenneth A. Jowdy has sufficient power and authority to bind Issuer Company under the terms of this Agreement.

 b) Issuer Company expressly recognizes the legal capacity of the person executing this Agreement on behalf of Pledgee.

 c) The Membership Interests are free and clear of any lien or limitations of ownership, and fully issued and paid.

 d) Issuer Company has the power and authority and the legal right to execute, deliver and perform its obligations hereunder, and to effect the security interest in the Membership Interests pursuant to this Agreement and has taken all necessary legal and corporate actions to authorize its execution, delivery and performance, and to effect the security interest in the Membership Interest pursuant to this Agreement;

 e) This Agreement constitutes a legal, valid and binding obligation of Issuer Company enforceable in accordance with the applicable law and its terms;

 f) The execution, delivery and performance of this Agreement will not violate in any material respect any provision of any requirement of law, any provision of its organizational documents or contractual obligation of Issuer Company and will not



CONFIDENTIAL DANSKE_0016323

result in the creation or imposition of any lien on any of the assets or revenues of Issuer Company;

g) As of the date hereof, there is no pending or, to the best of Issuer Company's knowledge after due inquiry, threatened action, claim, requirement or proceeding before any court, governmental agency or arbitrator that affects or could affect the legality, validity or enforceability of this Agreement or its legal title to the Membership Interests;

h) No consent or authorization of, request, or whatever other act, by a governmental authority or any other person is required for the execution, modification, termination, assignment, delivery, completion, validity and execution of this Agreement or for the perfection and maintenance the first priority security interest created hereby, except for the registration of this agreement in Issuer Company's corporate books;

i) The individual executing this Agreement on behalf of Issuer Company has all the necessary power, authority and corporate authorization to execute and deliver this Agreement on its behalf, and such powers, authority and corporate authorizations have not been revoked or limited in any manner; and

## CLAUSES

**FIRST.    CONSTITUTION OF THE PLEDGE.**

Pledgors hereby pledge the Membership Interests. This Pledge includes any increases in the value of the Membership Interests because of increases in the capital stock of Issuer Company.

For purposes of the provisions of article 334 section III of the General Law of Negotiable Instruments and Credit Operations of Mexico (hereinafter the "LGTOC"), Pledgors and Issuer Company hereby agree to deliver to Pledgee on the Closing Date (as defined in the Transaction Documents), a certificate issued by the Secretary of the Board of Directors of Issuer Company certifying that the pledge which is the subject matter of this Agreement has been duly registered in the Membership Register of Issuer Company and a membership meeting duly called has approved the pledges in favor of Pledgee. Issuer Company hereby agrees to make such annotation on the Closing Date and to comply with this pledge as provided herein.



**SECOND.    PURPOSE OF THE PLEDGE.**

The pledge constituted under the terms of clause First above secures the payment and fulfillment of all and each one of the Guaranteed Obligations of Issuer Company, U.S. LLC Members and Pledgors, as well as the payment of the costs and fees incurred by Pledgee in enforcing this Agreement and the Transaction Documents. This pledge is a

CONFIDENTIAL  DANSKE_0016324

continuous pledge and its security shall be extended to any rights or assets received by Pledgors as record holder of the Membership Interests; (iii) it will remain in full force and effect until the Guaranteed Obligations are paid in full by or on behalf of the obligated party; (iv) it shall not be reduced or partially extinguished, even if the obligated party is entitled to make partial installments under the Transaction Documents, as the parties recognize that the rights of Pledgee would not remain duly secured in such case; and (v) it shall also secure in favor of Pledgee any novation, extension or renewal for the payment of the Guaranteed Obligations that Pledgee may grant to Issuer Company, U.S. LLC Members and Pledgors, applicable, without it being necessary to amend this Agreement. Pledgors agree to comply with all the applicable law and contractual obligations to protect the Membership Interests.

**THIRD.**     **REGISTRATION OF THE PLEDGE IN THE STOCK REGISTER.**

The parties agree that this Agreement and the membership meeting referred in the first clause are the only documents necessary in order to register the pledge of the Membership Interests in the Membership Register of Issuer Company.

**FOURTH.**     **VOTING RIGHTS.**

Subject to the following paragraph of this section, the parties agree that Pledgors shall exercise the voting rights of the Membership Interests in accordance with the Transaction Documents; provided however that, Pledgee shall be entitled to exercise such voting rights if Pledgee notifies Issuer Company that an Event of Default as defined in the Transaction Documents has occurred and is continuing ("Notice of Default"). Issuer Company shall comply with the Notice of Default given by Pledgee, without further consent from Pledgors and thereafter Issuer Company shall only recognize Pledgee as the party entitled to vote the Membership Interests, unless and until, Pledgee notifies Issuer Company that the Event of Default has been cured.



Notwithstanding the prior paragraph, prior to Pledgors exercising any of the voting rights of the Membership Interests, it shall give written notice to Pledgee at least 15 days in advance of the date on which such voting is to take place. If Pledgee opposes such vote, it shall notify Issuer Company and Pledgors and Issuer Company and Pledgors agree not to vote the Membership Interest. Notwithstanding anything in this Agreement, Pledgors shall not, without the express written consent of Pledgee because it will be deemed that Pledgee has the voting rights, vote the Membership Interest to amend Issuer Company's bylaws, grant powers of attorneys, or undertake any of the actions listed on Section 78 subsections II, V, VI, VII, VIII, IX, X, and XI of the Corporate law ("LGSM"). Issuer Company shall not permit any vote that is prohibited under this Section without first obtaining the express written consent of Pledgee. Any vote undertaken in contravention of this Section shall be null and void.

CONFIDENTIAL     DANSKE_0016325

**FIFTH.    INCREASE IN VALUE.**

This Pledge includes any increases in the capital stock of the company which increase the value of the Membership Interest. Pledgors and Issuer Company agree that the Membership Interest shall at all times represent 100% of the capital stock of Issuer Company.

**SIXTH.    DURATION.**

The pledge which is the subject matter of this Agreement shall be in force during the time that there exists outstanding Guaranteed Obligations and shall not terminate until the date on which all and each one of the Guaranteed Obligations have been paid in full. Due to the above, Pledgors shall have no right to request the partial release of the Membership Interests in case that the amount of the Guaranteed Obligations is reduced.

**SEVENTH.  NOVATION, MODIFICATION, ETC.**

Neither the execution of this Agreement nor the pledge which is the subject matter hereof shall constitute any novation, modification, payment or "dación en pago" of the Guaranteed Obligations.

**EIGHTH.   NOTICES.**

All notices under this Agreement shall be in writing and shall be sent by certified mail, telegram or telecopy, or shall be delivered by hand, to each one of the following domiciles of the parties:

Pledgee:            Lehman Brothers Holdings Inc.
                    c/o 315 Park Avenue South
                    New York, New York 10010
                    Attention: Joseph J. Flannery
                    Telecopy Number: (212) 505-4001

                    With copies to:

                    Herrick, Feinstein, LLP
                    Two Park Avenue
                    New York, New York 10016
                    Attention: Paul Shapses, Esq.
                    Telecopy Number: (212) 592-1500



CONFIDENTIAL                                                                    DANSKE_0016326

| | |
|---|---|
| Diamante LLC: | Diamante Cabo San Lucas, LLC<br>c/o William J. Najam, Jr.<br>2 Dogwood Drive<br>Danbury, CT 06811<br><br>With a copy to:<br><br>Baker & Hostetler<br><br>666 Fifth Avenue<br>New York, New York 10103<br>Fax: 212-589-4201 |
| Issuer Company: | Diamante Cabo San Lucas, S de .R.L. de C.V.<br>Camino del Mar 323<br>Col. El Pedregal 23450<br>Cabo San Lucas, Los Cabos,<br>Baja California Sur<br>México<br><br>With a copy to:<br><br>Fernando Garcia<br>Camino del Mar 323<br>Col. El Pedregal 23450<br>Cabo San Lucas, Los Cabos,<br>Baja California Sur<br>México<br>Facsimile No.: 646-178-2008 |
| Jowdy: | Kenneth A. Jowdy<br>Camino del Mar 323<br>Col. El Pedregal 23450<br>Cabo San Lucas, Los Cabos,<br>Baja California Sur<br>México<br>Facsimile No.: 646-178-2008 |



All notices and communications under this Agreement, shall be in writing and shall be sent by mail (by certified mail, postage prepaid and acknowledge receipt), by telegraph or telecopy or by hand with acknowledged receipt.

CONFIDENTIAL                                                                                                           DANSKE_0016327

The parties shall give notice in the same manner to each other with respect to any change of domicile at least 15 days in advance of the effective date of such change.

**NINTH.    GOVERNING LAW AND JURISDICTION.**

In anything not provided for in this Agreement, the parties shall abide by the terms of the LGTOC, LGSM, the Mexican Commerce Code (*Código de Comercio*), the applicable Civil Federal Code of the United Mexican States, or in lieu thereof by the terms of the Civil Code for Baja California Sur, Mexico and any other Mexican applicable Law.

In the event of any dispute, controversy or claim arising by reason of this Agreement, the parties expressly submit themselves to the jurisdiction of the courts of the city of Cabo San Lucas or Mexico City, as elected by the party filing the suit, waiving any other jurisdiction that may correspond to them by reason of their current or future domicile.

**TENTH.    ENFORCEMENT.**

Pledgors expressly agree that Pledgee may enforce the pledge subject matter of this Agreement if an Event of Default (as defined in the Transaction Documents) and/or a default under this Agreement occurs and the Guaranteed Obligations are not paid in full.

To the extent Pledgee obtains any proceeds from exercising or enforcing any of its rights or remedies under this pledge, and except as may otherwise be required by applicable law, Pledgee shall apply such proceeds in accordance with the Transaction Documents.



**ELEVENTH. INDEMNITY.**

Pledgors agree to indemnify, reimburse and hold Pledgee and its respective successors, permitted assigns, shareholders, directors, officers, employees and agents (hereinafter for purposes of this Clause the "<u>Indemnitee</u>" or the "<u>Indemnitees</u>") free and harmless, from any and all liabilities, obligations, losses, damages, penalties, claims, demands, actions, suits, judgments and any and all reasonable costs and expenses (including attorneys fees and expenses) (collectively the "<u>Expenses</u>") imposed on, asserted against or incurred by any of the Indemnitees in any manner relating to or arising out of the execution, delivery or performance of this Agreement or in any other way connected with the enforcement of any of the terms of this Agreement, or the preservation of any rights hereunder. Pledgors agrees that upon written notice by any Indemnitee of the assertion of such a liability, obligation, loss, damage, penalty, claim, demand, action, judgment or suit, it shall assume full responsibility for the defense thereof.

Pledgors agrees to pay or reimburse Pledgee, any and all reasonable fees, costs and expenses incurred by Pledgee in connection with the creation, preservation or protection of the pledge hereunder and the Membership Interests, including other reasonable fees,

8

CONFIDENTIAL

DANSKE_0016328

costs and expenses, including those stemming from proceedings commenced under this Agreement.

Issuer Company agrees to indemnify, reimburse and hold Indemnitees free and harmless, from any and all Expenses imposed on, asserted against or incurred by any of the Indemnitees in any manner relating to or arising out of the execution, delivery or performance of this Agreement or in any other way connected with the enforcement of any of the terms of this Agreement, or the preservation of any rights hereunder. Issuer Company agrees that upon written notice by any Indemnitee of the assertion of such a liability, obligation, loss, damage, penalty, claim, demand, action, judgment or suit, it shall assume full responsibility for the defense thereof

Any amounts paid by any Indemnitee as to which such Indemnitee has the right to reimbursement shall constitute Guaranteed Obligations secured by the Membership Interest. The Guaranteed Obligations shall, therefore, continue in full force and effect until complied with in full, notwithstanding the termination of the Transaction Documents.

TWELFTH. ASSIGNMENTS.

Pledgors may not assign their rights and duties under this Agreement without the prior written consent of Pledgee. Pledgee shall have the right to sell, assign, transfer, negotiate or grant participation in all or any of its rights and capacities hereunder as may be permitted and as provided in the Transaction Documents. Due to the ancillary nature of this Agreement, the parties hereto expressly agree that the pledge and security interest granted herein securing any of the Guaranteed Obligations shall be automatically transferred upon any transfer, ownership endorsement or assignment by Pledgee of this Agreement or any of the Guaranteed Obligations that it secures.



THIRTEENTH. REMEDIES.

The rights and remedies of Pledgee set forth in this Agreement and the Transaction Documents are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of Pledgee in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any default or event of default. No course of dealing among Pledgors and Pledgee or Pledgee and Issuer Company or their agents or employees shall be effective to amend, modify or discharge any provision of this Agreement or any Transaction Document or to constitute a waiver of any default or event of default. No notice to or demand upon Pledgors in any case shall entitle Pledgors to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Pledgee to exercise any right or remedy or take any other or further action in any circumstances without notice or demand.

CONFIDENTIAL                                                                                                          DANSKE_0016329

DIAMANTE CABO SAN LUCAS, LLC

By: _____
Name: Kenneth A. Jowdy
Title: Managing Member
Place: Cabo San Lucas, Baja California Sur
Date: March 10, 2006

KENNETH A. JOWDY

_____
Place: Cabo San Lucas, Baja California Sur
Date: March 10, 2006

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Title: Legal Representative
Place: Cabo San Lucas, Baja California Sur
Date: March 10, 2006

DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.

By: _____
    Kenneth A. Jowdy
Title: General Manager
Place: Cabo San Lucas, Baja California Sur
Date: March 10, 2006

10

CONFIDENTIAL
DANSKE_0016330

## EXHIBIT A

1. Loan Agreement between Issuer Company and Pledgee dated as of March 10, 2006 (the "Closing Date")

2. Note by Issuer Company in favor of Pledgee dated as of the Closing Date

3. Trust Agreement among Issuer Company, Pledgee and Banco J.P. Morgan, S.A. dated as of the Closing Date.

4. Assignment of Leases and Rents by Issuer Company in favor of Pledgee dated as of the Closing Date.

5. Recourse Guaranty by Kenneth A. Jowdy ("Jowdy") in favor of Pledgee dated as of the Closing Date.

6. Environmental Indemnity by Jowdy and Issuer Company in favor of Pledgee dated as of the Closing Date.

7. Completion Guaranty by Jowdy in favor of Pledgee dated as of the Closing Date. 

8. Omnibus Assignment by Issuer Company in favor of Pledgee dated as of the Closing Date.

9. Guaranty by Jowdy, Diamante Cabo San Lucas LLC (Diamante LLC"), U.S. LLC Members in favor of Pledgee dated as of the Closing Date. 

10. Pledge Agreement by Jowdy, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings, LLC and CSL Properties 2006, LLC ("U.S. LLC Members") and Pledgee in respect of U.S. LLC Member's membership interests in Diamante LLC dated as of the Closing Date.

11

CONFIDENTIAL
DANSKE_0016331

11. Pledge Agreement without transfer of possession between Issuer Company and Pledgee dated as of the Closing Date..

12. U.S. Pledge Agreement by Diamante LCC, Jowdy, Issuer Company and Pledgee in respect of Jowdy's and Diamante LLC membership interests in Issuer Company dated as of the Closing Date.





12

CONFIDENTIAL

DANSKE_0016332