# EXHIBIT 12
# (Part 1 of 2)

COTEJADO

COTEJADO

LIC. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

IGNACIO RAMIREZ 1836
TELS. 122-9...
122...
125/44...
FAX 12...

1

............VOLUMEN NUMERO MIL VEINTISEIS..............

ESCRITURA NUMERO SESENTA Y CINCO MIL CUARENTA Y UNO ...........

- - - En la Ciudad de La Paz, Baja California Sur, México, a los diez días del mes de Marzo del año dos mil seis, YO, Licenciado JOSE ALBERTO CASTRO SALAZAR, Notario Público adscrito a la Notaría Pública Número SIETE del Estado y del Patrimonio Inmueble Federal, con ejercicio en los Municipios de La Paz y Los Cabos, y con Residencia en la Capital del Estado, cuyo titular es el licenciado HECTOR CASTRO CASTRO, actuando de conformidad con lo dispuesto por el artículo (29) veintinueve de la Ley del Notariado en vigor, **HAGO CONSTAR**; .........................................

- - - **CONTRATO DE FIDEICOMISO TRASLATIVO DE DOMINIO E IRREVOCABLE DE GARANTÍA IDENTIFICADO CON EL NUMERO F/00321** (EL "CONTRATO DE FIDEICOMISO" o "FIDEICOMISO") CELEBRADO ENTRE **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.** ("DIAMANTE CABO"), REPRESENTADO EN ESTE ACTO POR EL SEÑOR **KENNETH ABOUD JOWDY**, ACTUANDO COMO FIDEICOMITENTE Y FIDEICOMISARIO EN SEGUNDO LUGAR ("FIDEICOMITENTE" O "FIDEICOMISARIO EN SEGUNDO LUGAR ", SEGÚN EL CONTEXTO); **LEHMAN BROTHERS HOLDINGS INC.,** REPRESENTADA EN ESTE ACTO POR EL SEÑOR ██████████████████ EN SU CARÁCTER DE FIDEICOMISARIO EN PRIMER LUGAR EL "FIDEICOMISARIO EN PRIMER LUGAR"); Y **BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA,** EN SU CARÁCTER DE FIDUCIARIO, REPRESENTADO EN ESTE ACTO POR EL SEÑOR **HECTOR LOYO URRETA** (EL "FIDUCIARIO").....................................................

- - - En este acto el señor **KENNETH ABOUD JOWDY** se hace asistir de persona de su confianza a quien designa como su traductor, el licenciado en derecho **FERNANDO MANUEL GARCÍA CAMPUZANO**, quien ante el suscrito notario acepta el cargo y protesta su fiel y legal desempeño. ......................................................

- - - - - - - - - - - - - - - - - - - - - **A N T E C E D E N T E S** ........................

- - - I.- Declara **DIAMANTE CABO**, representada en este acto por el señor KENNETH ABOUD JOWDY como Gerente General:...............................................

- - - a).- Que mediante escritura sesenta y cinco mil treinta y seis volumen mil veintisies, de fecha diez de marzo del año dos mil seis, otorgada ante la fe del Suscrito Notario Adscrito a esta Notaría numero Siete del Estado, adquirió por Compra Venta que hizo con la señora ALICIA CESEÑA AUGNEZ, los siguientes inmuebles (en lo sucesivo los "Predios"): ......................................................

- - - a).1.- **LOTE I UNO.-** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0081 cuatro guión cero dos guión cero uno tres guión cero cero cero ocho uno, con una superficie de 5-92-68 has. (cinco hectáreas noventa y dos áreas y sesenta y ocho centiáreas) y las siguientes medidas y colindancias:.............

1

2

Del vértice G al vértice H hacia el Norte con una distancia de (191.89 m) ciento noventa y uno punto ochenta y nueve metros, y un ángulo de (115° 38' 05") ciento quince grados treinta y ocho minutos y cinco segundos, colindando con Lote (VII) siete. ........................

Del vértice H al vértice I hacia el Norte con una distancia de (127.52 m) ciento veintisiete punto cincuenta y dos metros, y un ángulo de (120° 09' 21") ciento veinte grados, nueve minutos y veintiún segundos, colindando con Lote (VII) siete..............................................

Del vértice I al vértice J hacia el Norte con una distancia de (31.50 m) treinta y uno punto cincuenta metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete.............................

Del vértice J al vértice A hacia el Norte con una distancia de (125.00 m) ciento veinticinco metros, y un ángulo de (107° 08' 24") ciento siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete...............................

Del vértice B al vértice C hacia el Sur con una distancia de (125.00 m) ciento veinticinco metros, y un ángulo de (287° 08' 24") doscientos ochenta y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres. .............................

Del vértice C al vértice D hacia el Sur con una distancia de (31.50 m) treinta y uno punto cincuenta metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres....................................

Del vértice D al vértice E hacia el Sur con una distancia de (127.52 m) ciento veintisiete punto cincuenta y dos metros, y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con Lote (III) tres.............................

Del vértice E al vértice F hacia el Sur con una distancia de (191.88 m) ciento noventa y uno punto ochenta y ocho metros, y un ángulo de (295° 38' 05") doscientos noventa y cinco grados treinta y ocho minutos y cinco segundos, colindando con Lote (IV) cuatro. ...

Del vértice A al vértice B hacia el Este con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con propiedad del señor Francisco Arballo. Del vértice F al vértice G hacia el Oeste con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (II) dos. ...............................................

- - - a). 2.- LOTE II DOS:  del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0082 cuatro guión cero dos guión cero uno tres guión cero cero ocho dos, con una superficie de 5-94-86 has. (cinco hectáreas noventa y cuatro áreas y ochenta y seis centiáreas) y las siguientes medidas y colindancias: ...........................................................................................................

Del vértice L al vértice M hacia el Norte con una distancia de (299.94 m) doscientos noventa y nueve punto noventa y cuatro metros, y un ángulo de (114° 38' 35") ciento catorce grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (VII) siete..........................................................................................................

2

CONFIDENTIAL

DANSKE_0016012

IGNACIO RAMIREZ 1930
TELS. 122-81-20
122-97-17
125-24-40
FAX 1252668

C. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

3

Del vértice F al vértice (D-5) "D" guión cinco hacia el Sur con una distancia de (116.98 m) ciento dieciséis punto noventa y ocho metros, y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (V) cinco. ............................................................................

Del vértice (D-5) "D" guión cinco al vértice K hacia el Sur con una distancia de (183.01 m) ciento ochenta y tres punto cero uno metros, y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (VI) seis. ............................................................................

Del vértice M al vértice G hacia el Este con una distancia de (65.00 m) sesenta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete.

Del vértice G al vértice F hacia el Este con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno.

Del vértice K al vértice L hacia el Oeste con una distancia de (200.00 m) doscientos metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con propiedad del señor Atilio Colli. ............................................

- - - a) .3.- LOTE III TRES del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0083 cuatro guión cero dos guión cero uno tres guión cero cero ocho tres, con una superficie de 11-34-41 has. (once hectáreas treinta y cuatro áreas y cuarenta y un centiáreas), y las siguientes medidas y colindancias: ............................................................................

Del vértice (D-1) "D" guión uno al vértice D hacia el Norte con una distancia de (61.58 m) sesenta y uno punto cincuenta y ocho metros y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con el Lote (I) uno....

Del vértice D al vértice C hacia el Norte con una distancia de (31.50 m) treinta y uno punto cincuenta metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno............................................

Del vértice C al vértice B hacia el Norte con una distancia de (125.00 m) ciento veinticinco metros y un ángulo de (287° 08' 24") doscientos ochenta y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno...............................

Del vértice (V-1) V guión uno al vértice (V-2) V guión dos hacia el Sur con una distancia de (171.26 m) ciento setenta y uno punto veintiséis metros, colindando con el Océano Pacífico. ............................................................................

Del vértice (V-2) V guión dos al vértice (D-2) D guión dos hacia el Sur con una distancia de (16.96 m) dieciséis punto noventa y seis metros, colindando con Océano Pacifico......

Del vértice (V-1) V guión uno al vértice B hacia el Este con una distancia de (617.87 m) seiscientos diecisiete punto ochenta y siete metros y un ángulo de (17° 08' 24")

3

CONFIDENTIAL

DANSKE_0016013

4

diecisiete grados, ocho minutos y veinticuatro segundos, colindando con propiedad de Francisco Arballo...............................................................................................................

Del vértice (D-1) D guión uno al vértice (D-2) D guión dos hacia el Oeste con una distancia de (628.56 m) seiscientos veintiocho punto cincuenta y seis metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (IV) cuatro...............................................................

**- - a). 4.- LOTE IV CUATRO:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0084 cuatro guión cero dos guión cero uno tres guión cero cero ocho cuatro, con una superficie de 11-62-60 has. (once hectáreas sesenta y dos áreas y sesenta centiáreas) y las siguientes medidas y colindancias: ...........................................................................................................

Del vértice (D-1) D guión uno al vértice E hacia el Norte con una distancia de (65.93 m) sesenta y cinco punto noventa y tres metros y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con Lote (I) uno. .........................

Del vértice E al vértice (D-3) D guión tres hacia el Norte con una distancia de (122.10 m) ciento veintidós punto diez metros y un ángulo de (295° 38' 05") doscientos noventa y cinco grados, treinta y ocho minutos y cinco segundos, colindando con Lote (I) uno. ......

Del vértice (D-4) D guión cuatro al vértice (VZF-5) V,Z,F guión cinco hacia el Sur con una distancia de (4.95 m) cuatro punto noventa y cinco metros y un ángulo de (119° 55' 06") ciento diecinueve grados, cincuenta y cinco minutos y seis segundos, colindando con Océano Pacífico. .............................................................................................................

Del vértice (VZF-5) V,Z,F guión cinco al vértice (V-4) V guión cuatro hacia el Sur con una distancia de (60.27 m) sesenta punto veintisiete metros y un ángulo de (117° 07' 54") ciento diecisiete grados, siete minutos y cincuenta y cuatro segundos, colindando con Océano Pacífico. .............................................................................................................

Del vértice (V-4) V guión cuatro al vértice (V-3) V guión tres hacia el Sur con una distancia de (74.40 m) setenta y cuatro punto cuarenta metros y un ángulo de (117° 55' 10") ciento diecisiete grados, cincuenta y cinco minutos y diez segundos, colindando con Océano Pacífico. .............................................................................................................

Del vértice (V-3) V guión tres al vértice (D-2) D guión dos hacia el Sur con una distancia de (48.86 m) cuarenta y ocho punto ochenta y seis metros y un ángulo de (119° 36' 06") ciento diecinueve grados, treinta y seis minutos y seis segundos, colindando con Océano Pacífico. .............................................................................................................

Del vértice (D-2) D guión dos al vértice (D-1) D guión uno hacia el Este con una distancia de (628.56 m) seiscientos veintiocho punto cincuenta y seis metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres. .............................................................................................................

Del vértice (D-3) D guión tres al vértice (D-4) D guión cuatro hacia el Oeste con una distancia de (625.87 m) seiscientos veinticinco punto ochenta y siete metros y un ángulo





CONFIDENTIAL

DANSKE_0016014

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-91-12
125-24-55
FAX 125-25-06

**LIC. HECTOR CASTRO CASTRO**
TITULAR
**LIC. JOSE ALBERTO CASTRO SALAZAR**
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

5

de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (V) cinco. .................................................................

- - - a).5.- LOTE V CINCO: del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0085 cuatro guión cero dos guión cero uno tres guión cero cero cinco, con una superficie de 11-40-91 has. (once hectáreas cuarenta áreas y noventa y un centiáreas) y las siguientes medidas y colindancias: ................................................................................

Del vértice (D-3) D guión tres al vértice F hacia el Norte con una distancia de (69.78 m) sesenta y nueve punto setenta y ocho metros y un ángulo de (295° 38' 05") doscientos noventa y cinco grados treinta y ocho minutos y cinco segundos, colindando con Lote (II) dos..................................................................................................

Del vértice F al vértice (D-5) D guión cinco hacia el Norte con una distancia de (116.98 m) ciento dieciséis punto noventa y ocho metros y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados, treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (II) dos. ...............................................................................

Del vértice (D-6) D guión seis al vértice (VZF-6) V,Z,F guión seis hacia el Sur con una distancia de (99.17 m) noventa y nueve punto diecisiete metros y un ángulo de (122° 53' 10") ciento veintidós grados, cincuenta y tres minutos y diez segundos, colindando con Océano Pacífico. ............................................................................

Del vértice (VZF-6) V,Z,F guión seis al vértice (D-4) D guión cuatro hacia el Sur con una distancia de (91.81 m) noventa y uno punto ochenta y un metros y un ángulo de (119° 55' 07") ciento diecinueve grados cincuenta y cinco minutos y siete segundos, colindando con Océano Pacífico. ..........................................................................

Del vértice (D-4) D guión cuatro al vértice (D-3) D guión tres hacia el Este con una distancia de (625.87 m) seiscientos veinticinco punto ochenta y siete metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (V) cinco. ...........................................................................

Del vértice (D-5) D guión cinco al vértice (D-6) D guión seis hacia el Oeste con una distancia de (604.23 m) seiscientos cuatro punto veintitrés metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VI) seis. ...........................................................................

- - - a).6.- LOTE VI SEIS: del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0086 cuatro guión cero dos guión cero uno tres guión cero cero ocho seis,  con una superficie de 11-03-90 has. (once hectáreas tres áreas y noventa centiáreas) y las siguientes medidas y colindancias: ................................................................................................

Del vértice (D-5) D guión cinco al vértice K hacia el Norte con una distancia de (183.01 m) ciento ochenta y tres punto cero uno metros y un ángulo de (294° 38' 35") doscientos

5

6

noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (II) dos. ....................................................................................................

Del vértice (D-7) D guión siete al vértice (VZF-9) V,Z,F guión nueve hacia el Sur con una distancia de (67.36 m) sesenta y siete punto treinta y seis metros y un ángulo de (269° 51' 08") doscientos sesenta y nueve grados, cincuenta y un minutos, ocho segundos, colindando con Océano Pacífico. ....................................................................................................

Del vértice (VZF-9) V,Z,F guión nueve al vértice (VZF-8) V,Z,F guión ocho hacia el Sur con una distancia de (46.26 m) cuarenta y seis punto veintiséis metros y un ángulo de (114° 34' 05") ciento catorce grados treinta y cuatro minutos y cinco segundos, colindando con Océano Pacífico. ....................................................................................................

Del vértice (VZF-8) V,Z,F guión ocho al vértice (VZF-7) V,Z,F guión siete hacia el Sur con una distancia de (66.73 m.) sesenta y seis punto setenta y tres metros y un ángulo de (111° 07' 02") ciento once grados, siete minutos y dos segundos, colindando con Océano Pacífico. ....................................................................................................

Del vértice (VZF-7) V,Z,F guión siete al vértice (D-6) D guión seis hacia el Sur con una distancia de (1.77 m) uno punto setenta y siete metros y un ángulo de (122° 53' 15") ciento veintidós grados cincuenta y tres minutos y quince segundos, colindando con Océano Pacífico. ....................................................................................................

Del vértice (D-6) D guión seis al vértice (D-5) D guión cinco hacia el Este con una distancia de (604.23 m) seiscientos cuatro punto veintitrés metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos veinticuatro segundos, colindando con Lote (V) cinco. ....................................................................................................

Del vértice K al vértice (D-7) D guión siete hacia el Oeste con una distancia de (613.71 m) seiscientos trece punto setenta y un metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con propiedad de Atilio Colli. ....................................................................................................

- - - a).7.- LOTE VII SIETE: del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0087 (cuatro guión cero dos guión cero trece guión cero cero ochenta y siete) con una superficie con una superficie de 26-00-98 has. (veintiséis hectáreas cero áreas y noventa y ocho centiáreas) y las siguientes medidas y colindancias:

Del vértice noventa y seis al vértice sesenta hacia el Norte en una distancia de 87.67m ochenta y siete punto sesenta y siete metros en (117°15'23") ciento diecisiete grados quince minutos veintitrés segundos colindando con propiedad del señor Atilio Colli. ...........

Del vértice sesenta al vértice sesenta y cuatro hacia el Norte en una distancia de 54.26m cincuenta y cuatro punto veintiséis metros en (113°29'56") ciento trece grados veintinueve minutos cincuenta y seis segundos colindando con propiedad del señor Atilio Colli. ...........

6

DANSKE_0016016

IGNACIO RAMIREZ
TELS. 122-91-2
122-97-1
125-24-4
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

7

Del vértice sesenta y cuatro al vértice R hacia el Norte en una distancia de 59.09m cincuenta y nueve punto diecinueve metros en (120°51'16") ciento veinte grados cincuenta y un minutos dieciséis segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice R al vértice sesenta y cinco hacia el Norte en una distancia de 7.47m setenta y cinco punto treinta y cuatro metros en (112°48'01") ciento doce grados cuarenta y ocho minutos un segundo colindando con propiedad del señor Atilio Colli. ..................

Del vértice sesenta y cinco al vértice sesenta y ocho hacia el Norte en una distancia de 57.64m cincuenta y siete punto sesenta y cuatro metros en (114°22'21") ciento catorce grados veintidós minutos veintiún segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice sesenta y ocho al vértice sesenta y nueve hacia el Norte en una distancia de 77.33m de setenta y siete punto treinta y tres metros en (127°28'03") ciento veintisiete grados veintiocho minutos tres segundos colindando con propiedad del señor Atilio Colli.

Del vértice sesenta y nueve al vértice setenta y tres hacia el Norte en una distancia de 40.74m de cuarenta punto setenta y cuatro metros en (115°39'35") ciento quince grados treinta y nueve minutos treinta y cinco segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice setenta y tres al vértice setenta y cuatro hacia el Norte en una distancia de 74.11m de setenta y cuatro punto once metros en (104°58'12") ciento cuatro grados cincuenta y ocho minutos doce segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice setenta y cuatro al vértice ochenta hacia el Norte en una distancia de 44.26m de cuarenta y cuatro punto veintiséis metros en (98° 31' 27") en noventa y ocho grados treinta y un minutos veintisiete segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice ochenta al vértice nueve hacia el Norte en una distancia de 34.90m de treinta y cuatro punto noventa metros en (128°42'46") ciento veintiocho grados cuarenta y dos minutos cuarenta y seis segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice setenta y nueve al vértice setenta y ocho hacia el Norte en una distancia de 46.34m de cuarenta y seis punto treinta y cuatro metros en (117°18'42") ciento diecisiete grados dieciocho minutos cuarenta y dos segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice setenta y ocho al vértice setenta y siete hacia el Norte en una distancia de 51.26m de cincuenta y uno punto veintiséis metros en (123°57'37") ciento veintitrés grados cincuenta y siete minutos treinta y siete segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice setenta y siete al vértice ochenta y tres hacia el Norte en una distancia de 44.09m de cuarenta y cuatro punto cero nueve metros en (110°40'31") en ciento diez

7

CONFIDENTIAL

DANSKE_0016017

8

grados cuarenta minutos treinta y un segundos colindando con propiedad del señor Atilio Colli. ..................

Del vértice ciento dieclsiete al vértice J hacia el Sur en una distancia de 127.83m de ciento veintisiete punto ochenta y tres metros en (287°08'24") doscientos ochenta y siete grados ocho minutos veinticuatro segundos colindando con Lote I. ..................

Del vértice J al vértice I hacia el Sur en una distancia de 31.50m de treinta y uno punto cincuenta metros en (17°08'36") dieclsiete grados ocho minutos treinta y seis segundos colindando con Lote I. ..................

Del vértice I al vértice H hacia el Sur en una distancia de 127.50m ciento veintisiete punto cincuenta metros en (300°09'20") trescientos grados nueve minutos veinte segundos colindando con Lote I. ..................

Del vértice H al vértice G hacia el Sur en una distancia de 191.89m ciento noventa y uno punto ochenta y nueve metros en (295°38'05") doscientos noventa y cinco grados treinta y ocho minutos cinco segundos colindando con Lote I. ..................

Del vértice G al vértice M hacia el Sur en una distancia de 65.00m sesenta y cinco metros en (17°08'57") dieclsiete grados ocho minutos cincuenta y siete segundos colindando con Lote II. ..................

Del vértice M al vértice L hacia el Sur en una distancia de 299.94m doscientos noventa y nueve punto noventa y cuatro metros en (294°39'15") doscientos noventa y cuatro grados treinta y nueve minutos quince segundos colindando con Lote II. ..................

Del vértice ochenta y tres al vértice ciento dieclsiete hacia el Este en una distancia de 395.92m de trescientos noventa y cinco punto noventa y dos metros en (196°54'59") ciento noventa y seis grados cincuenta y cuatro minutos cincuenta y nueve segundos colindando con Propiedad de Francisco Arballo. ..................

Del vértice L al vértice noventa y seis hacia el Oeste en una distancia de 315.33m trescientos quince punto treinta y tres metros en (18°13'32") dieciocho grados trece minutos treinta y dos segundos colindando con propiedad del señor Atilio Colli. ..................

- - - a).8.- POLÍGONO I del Predio LA LAGUNA, (EL CARDONAL), en la delegación Municipal de Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con Clave Catastral 4-02-013-0001 CUATRO GUION CERO DOS GUION CERO UNO TRES GUION CERO CERO CERO UNO y con superficie de 528-88-49.427 Has. QUINIENTOS VEINTIOCHO HECTÁREAS OCHENTA Y OCHO AREAS CUARENTA Y NUEVE PUNTO CUATROCIENTOS VEINTISIETE CENTIAREAS, con las medidas y colindancias siguientes: ..................

AL NORTE: EN DOS TRAMOS, 2,299.705 M. DOS MIL DOSCIENTOS NOVENTA Y NUEVE METROS SETECIENTOS CINCO MILÍMETROS, con propiedad que es o fue del señor VICTOR HUGO CESEÑA, mas 139.771 M. CIENTO TREINTA Y NUEVE METROS SETECIENTOS SETENTA Y UN MILÍMETROS, con POLÍGONO III; ..................

AL SUR: EN TRES TRAMOS, 139.815 M. CIENTO TREINTA Y NUEVE METROS OCHOCIENTOS QUINCE MILÍMETROS, con POLÍGONO III; mas 1,605.070 M. UN MIL



8

CONFIDENTIAL

DANSKE_0016018



IGNACIO RAMIREZ 1690
TELS. 12
12
12
FAX 12

**LIC. HÉCTOR CASTRO CASTRO**
TITULAR
**LIC. JOSE ALBERTO CASTRO SALAZAR**
ADSCRITO
NOTARIA PUBLICA NUM. 7
LA PAZ, B.C.S.

9



COTEJADO

COTEJADO

SEISCIENTOS CINCO METROS SETENTA MILÍMETROS, con ZONA FEDERAL MARÍTIMA TERRESTRE DEL OCEANO PACÍFICO; mas 747.160 M. SETECIENTOS CUARENTA Y SIETE METROS CIENTO SESENTA MILÍMETROS, con LOTE VII; ........

AL ESTE: EN DOS TRAMOS, 1,714.370 M. UN MIL SETECIENTOS CATORCE METROS TRESCIENTOS SETENTA MILÍMETROS, con propiedad que es o fue del señor NESTOR HERRERA mas 1,129.040 M. UN MIL CIENTO VEINTINUEVE METROS CUARENTA MILÍMETROS, con LOTES II, VI y VII; ...............................

AL OESTE: EN TRES TRAMOS, 1,995.580 M. UN MIL NOVECIENTOS NOVENTA Y CINCO METROS QUINIENTOS OCHENTA MILÍMETROS, con POLÍGONO II, mas 100.000 M. CIEN METROS, con POLÍGONO III, mas 374.414 M. TRESCIENTOS SETENTA Y CUATRO METROS CUATROCIENTOS CATORCE MILÍMETROS, con propiedad que es o fue del señor LUIS BULNES MOLLEDA.................................

- - - b).- Que mediante la misma escritura sesenta y cinco mil treinta y seis, volumen mil veintiseis, de fecha diez de marzo del año dos mil seis, otorgada ante la fe del Suscrito Notario Adscrito a esta Notaría numero Siete del Estado, adquirió por Cesión que hizo con la señora ALICIA CESEÑA AUGNEZ, los siguientes derechos (en lo sucesivo los "Derechos"): .............................................................

- - - b).1.- Los derechos fideicomisarios y de cualquier naturaleza que, como Fideicomisario en Segundo Lugar "A", o por cualquier otro título posee y que de hecho y por derecho le correspondan en relación al Contrato de Fideicomiso Traslativo de Dominio con Cláusula de Reversión protocolizado mediante la escritura pública (62,902), sesenta y dos mil novecientos dos del volumen (987), novecientos ochenta y siete, de fecha primero de septiembre del año dos mil cinco, otorgada ante la fe del suscrito notario público, y cuyo primer testimonio quedo inscrito ante el Registro Público de la Propiedad del Municipio de Los Cabos, bajo el número 97 noventa y siete, del volumen CCXXXI, de la sección Primera, así como en el número 30 treinta, del volumen CCXXIII sección Primera, mediante el cual los señores ATILIO COLLI VILLARINO y ALICIA CESEÑA AGUNDEZ afectaron en fideicomiso con SCOTIABANK INVERLAT, SOCIEDAD ANÓNIMA, INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT, y designando al ORGANISMO OPERADOR MUNICIPAL DEL SISTEMA DE AGUA POTABLE, ALCANTARILLADO Y SANEAMIENTO DE LOS CABOS, BAJA CALIFORNIA SUR como fideicomisario en primer lugar, la propiedad del inmueble definido en dicha escritura como LA FRACCION CARDONAL (POLIGONO III), descrito en la declaración I.f) de dicho instrumento, cuyas superficies, medidas y colindancias se tienen aquí por reproducidas como si a la letra se insertasen. .................

- - - b).2.- Los derechos establecidos a favor de los señores ATILIO COLLI VILLARINO y de la señora ALICIA CESEÑA AGUNDEZ en el CONTRATO DE DONACIÓN IRREVOCABLE DE LA FRACCIÓN DEFINIDA COMO VIÁLIDAD CARDONAL (POLÍGONO II), el cual fue protocolizado mediante la escritura pública mencionada en el Antecedente I.b).1. de este instrumento, mediante el cual los señores ATILIO COLLI



CONFIDENTIAL

DANSKE_0016019

10

VILLARINO y ALICIA CESEÑA AGUNDEZ donaron al HONORABLE NOVENO AYUNTAMIENTO DEL MUNICIPIO DE LOS CABOS BAJA CALIFORNIA SUR la propiedad del inmueble definido en dicha escritura como VIALIDAD CARDONAL (POLÍGONO II) descrito en la declaración I.f) de dicho instrumento, cuyas superficies, medidas y colindancias se tienen aquí por reproducidas como si a la letra se insertasen.

- - - b).3.- Los derechos establecidos a favor de los señores ATILIO COLLI VILLARINO y de la señora ALICIA CESEÑA AGUNDEZ en la constitución de la SERVIDUMBRE VOLUNTARIA DE PASO Y DE USO NO EXCLUSIVA Y A PERPETUIDAD (la "SERVIDUMBRE"), la cual fue protocolizada mediante la escritura pública mencionada en el Antecedente I.b).1. de este instrumento, mediante la cual los señores ATILIO COLLI VILLARINO y ALICIA CESEÑA AGUNDEZ constituyeron la referida servidumbre respecto de un área de terreno denominada en dicho instrumento meramente para efectos de identificación como POLIGONO IV, que permanece como parte integrante del POLIGONO I mencionado en el Antecedente I.a).8 de este instrumento, la cual cuenta con una superficie de 6,128.4514 seis mil ciento veintiocho metros punto cuatro mil catorce metros cuadrados, con las siguientes medidas y colindancias: ........................

AL NORTE: 10.2071 MTS CON POLIGONO III, 239.694 MTS CON PROPIEDAD ATILIO COLLI .............................

AL SUR: 10.00 MTS CON PROPIEDAD ATILIO COLLI, 90.00 MTS CON PROPIEDAD ATILIO COLLI, 10.00 MTS CON POLIGONO II, 136.456 MTS CON PROPIEDAD ATILIO COLLI ......................

AL ESTE: 165.366 MTS CON PROPIEDAD ATILIO COLLI, 110.00 MTS CON PROPIEDAD ATILIO COLLI, 100.00 MTS CON PROPIEDAD ATILIO COLLI.....................

AL OESTE: 100.00 MTS CON PROPIEDAD ATILIO COLLI, 100.00 MTS CON PROPIEDAD ATILIO COLLI; 174.174 MTS CON PROPIEDAD LUIS BULNES MOLLEDA. ....................

- - - c).- **CERTIFICADO DE LIBERTAD DE GRAVAMEN.-** Que los Predios materia de esta operación, a excepción de la SERVIDUMBRE VOLUNTARIA DE PASO Y DE USO NO EXCLUSIVA Y A PERPETUIDAD identificada como POLÍGONO IV la cual fue constituida sobre una porción del POLÍGONO I y a que se hace referencia en el Antecedente I.b).3. del presente instrumento, se encuentran libres de gravamen y limitación de dominio, acreditando lo anterior con los certificados expedidos por la Dirección del Registro Público de la Propiedad de San José del Cabo, Baja California Sur, de fecha **ocho de marzo del año dos mil seis**, los cuales agrego al legajo del apéndice correspondiente al testimonio de esta escritura. Asimismo, que los Derechos materia de esta operación se encuentran libres de todo gravamen y limitación de dominio alguno. .......................

- - - d).- **IMPUESTO PREDIAL.-** Los Predios materia de este instrumento se encuentran al corriente en el pago de sus impuestos prediales, lo cual acredita con certificados expedidos por la Recaudación de Rentas del Municipio de Los Cabos, Baja California





10

CONFIDENTIAL

DANSKE_0016020



IGNACIO RAMIREZ
TELS. 122-9
122-0
125-1
FAX 125

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

11

Sur, mismos que el Suscrito Notario agrega el original al apéndice del Protocolo bajo el número de esta escritura. ...........................................................................................................

- - - e).- AVALUOS PERICIALES.- El suscrito Notario agrega el original al apéndice del Protocolo bajo el número de esta escritura, los avalúos autorizados por la Dirección de Catastro del Municipio de Los Cabos, Baja California Sur, en los que se valúan los inmuebles objeto de esta escritura. ...........................................................................................

- - - f).- AVISO PREVENTIVO.- Que se presentaron avisos preventivos ante el Registro Público de la Propiedad y del Comercio de San José del Cabo, documentos que se agrega al apéndice del protocolo de esta escritura. ...................................................................

- - - II.- Declara el FIDUCIARIO:  .........................................................................................

- - - a).- PRHOHIBICIONES LEGALES.- Para los efectos establecidos en el punto 5.5 de las disposiciones que en materia de Fideicomiso emitió el Banco de México, mediante la circular 1/2005, el FIDUCIARIO hace del conocimiento de las partes el texto de los siguientes artículos que establecen prohibiciones para las Instituciones Fiduciarias en el manejo y ejecución de los Fideicomisos:

1.- Artículo 382 de la Ley General de Títulos y Operaciones de Crédito.- ...........................

"...Es nulo el fideicomiso que se constituye a favor del fiduciario, salvo lo dispuesto en el párrafo siguiente, y en las demás disposiciones legales aplicables. ..................................

La institución fiduciaria podrá ser fideicomisaria en los fideicomisos que tengan por fin servir como instrumentos de pago de obligaciones incumplidas, en el caso de créditos otorgados por la propia institución para la realización de actividades empresariales. En este supuesto, las partes deberán convenir los términos y condiciones para dirimir posibles conflictos de intereses... .........................................................................................."

2.- Artículo 394 de la Ley General de Títulos y Operaciones de Crédito.- ...........................

"...Quedan prohibidos: ...........................................................................................................

i.- los fideicomisos secretos; .................................................................................................

ii.- aquellos en los cuales el beneficio se conceda a diversas personas sucesivamente que deban substituirse por muerte de la anterior, salvo el caso de que la substitución se realice en favor de personas que esten vivas o concebidas ya, a la muerte del fideicomitente; y .................................................................................................................

iii.- aquellos cuya duración sea mayor de cincuenta años, cuando se designe como beneficiario a una persona moral que no sea de derecho publico o institución de beneficencia. sin embargo, pueden constituirse con duración mayor de cincuenta años cuando el fin del fideicomiso sea el mantenimiento de museos de carácter científico o artístico que no tengan fines de lucro. ............................................................................."

3.- Artículo 106 de la Ley de Instituciones de Crédito.- ......................................................

"...A las instituciones de crédito les estará prohibido: ........................................................

...XIX. En la realización de las operaciones a que se refiere la fracción XV del artículo 46 de esta Ley:.............................................................................................................................

11

CONFIDENTIAL

DANSKE_0016021

12

a) Celebrar operaciones con la propia institución en el cumplimiento de fideicomisos, mandatos o comisiones. El Banco de México podrá autorizar, mediante disposiciones de carácter general, la realización de determinadas operaciones cuando no impliquen un conflicto de intereses;.................................................................................

b) Responder a los fideicomitentes, mandantes o comitentes, del incumplimiento de los deudores, por los créditos que se otorguen, o de los emisores, por los valores que se adquieran, salvo que sea por su culpa, según lo dispuesto en la parte final del artículo 391 de la Ley General de Títulos y Operaciones de Crédito, o garantizar la percepción de rendimientos por los fondos cuya inversión se les encomiende...................................

Si al término del fideicomiso, mandato o comisión constituidos para el otorgamiento de créditos, éstos no hubieren sido liquidados por los deudores, la institución deberá transferirlos al fideicomitente o fideicomisario, según sea el caso, o al mandante o comitente, absteniéndose de cubrir su importe. ......................................................

En los contratos de fideicomiso, mandato o comisión se insertará en forma notoria lo dispuesto en este inciso y una declaración de la fiduciaria en el sentido de que hizo saber inequívocamente su contenido a las personas de quienes haya recibido bienes o derechos para su afectación fiduciaria ..................................................................... .

c) Actuar como fiduciarias, mandatarias o comisionistas en fideicomisos, mandatos o comisiones, . respectivamente, a través de los cuales se capten, directa o indirectamente, recursos del público, mediante cualquier acto causante de pasivo directo o contingente, excepto tratándose de fideicomisos constituidos por el Gobierno Federal a través de la Secretaría de Hacienda y Crédito Público, y de fideicomisos a través de los cuales se emitan valores que se inscriban en el Registro Nacional de Valores de conformidad con lo previsto en la Ley del Mercado de Valores; ......................

d) Desempeñar los fideicomisos, mandatos o comisiones a que se refiere el segundo párrafo del artículo 88 de la Ley de Sociedades de Inversión;.....................................

e) Actuar en fideicomisos, mandatos o comisiones a través de los cuales se evadan limitaciones o prohibiciones contenidas en las leyes financieras; ...................................

f) Utilizar fondos o valores de los fideicomisos, mandatos o comisiones destinados al otorgamiento de créditos, en que la fiduciaria tenga la facultad discrecional, en el otorgamiento de los mismos para realizar operaciones en virtud de las cuales resulten o puedan resultar deudores sus delegados fiduciarios; los miembros del consejo de administración o consejo directivo, según corresponda, tanto propietarios como suplentes, estén o no en funciones; los empleados y funcionarios de la institución; los comisarios propietarios o suplentes, estén o no en funciones; los auditores externos de la institución; los miembros del comité técnico del fideicomiso respectivo; los ascendientes o descendientes en primer grado o cónyuges de las personas citadas, las sociedades en cuyas asambleas tengan mayoría dichas personas o las mismas instituciones, asimismo aquellas personas que el Banco de México determine mediante disposiciones de carácter general, y.................................................................................



12

CONFIDENTIAL

DANSKE_0016022



IGNACIO RAMIREZ
TELS. 12-3-91-29
12-2-97-11
12-2-14-48
FAX 12-2-5691

**LIC. HECTOR CASTRO CASTRO**
TITULAR
**LIC. JOSE ALBERTO CASTRO SALAZAR**
ADSCRITO
NOTARIA PUBLICA NUM. 7
LA PAZ, B.C.S.

13

g) Administrar fincas rústicas, a menos que hayan recibido la administración para distribuir el patrimonio entre herederos, legatarios, asociados o acreedores, o para pagar una obligación o para garantizar su cumplimiento con el valor de la misma finca o de sus productos, y sin que en estos casos la administración exceda del plazo de dos años, salvo los casos de fideicomisos a la producción o fideicomisos de garantía. .........

Cualquier pacto contrario a lo dispuesto en los incisos anteriores, será nulo. ................. "

4.- Artículo 118 de la Ley de Instituciones de Crédito.-

"... Con la salvedad de toda clase de información que sea solicitada por la Comisión Nacional Bancaria, la violación del secreto propio de las operaciones a que se refiere la fracción XV del artículo 46 de esta Ley, incluso ante las autoridades o tribunales en juicios o reclamaciones que no sean aquellos entablados por el fideicomitente o fideicomisario, comitente o mandante, contra la institución o viceversa, constituirá a ésta en responsabilidad civil por los daños y perjuicios ocasionados, sin perjuicio de las responsabilidades penales procedentes" ...........

5.- Artículos de la Circular 1/2005 del Banco de México que establecen una prohibición.-

"6.1..En la celebración de Fideicomisos, las Instituciones Fiduciarias tendrán prohibido lo siguiente: ..................

- - - a) ...Cargar al patrimonio fideicomitido precios distintos a los pactados al concertar la operación de que se trate; ......................

- - - b) . Garantizar la percepción de rendimientos o precios por los fondos cuya inversión se les encomiende, y...........................

- - - c) Realizar operaciones en condiciones y términos contrarios a sus políticas internas y a las sanas prácticas financieras ..........................

- - - 6.2 .Las Instituciones Fiduciarias no podrán celebrar operaciones con valores, títulos de crédito o cualquier otro instrumento financiero, que no cumplan con las especificaciones que se hayan pactado en el contrato de Fideicomiso correspondiente...

- - - 6.3 Las Instituciones Fiduciarias no podrán llevar a cabo tipos de Fideicomiso que no estén autorizadas a celebrar de conformidad con las leyes y disposiciones que las regulan. ..........................

- - - 6.4 En ningún caso las Instituciones Fiduciarias podrán cubrir con cargo al patrimonio fideicomitido el pago de cualquier sanción que les sea impuesta a dichas Instituciones por alguna autoridad ..........................

- - - 6.5 ....En los Fideicomisos de garantía, las Instituciones de Fianzas y las Sofoles no podrán recibir sino bienes o derechos que tengan por objeto garantizar las obligaciones de que se trate. ..........................

- - - 6.6 .Las Instituciones Fiduciarias deberán observar lo dispuesto en los artículos 106 fracción XIX de la Ley de Instituciones de Crédito, 103 fracción IX de la Ley del Mercado de Valores, 62 fracción VI de la Ley General de Instituciones y Sociedades Mutualistas do Seguros y 60 fracción VI Bis de la Ley Federal de Instituciones de Fianzas, según corresponda a cada institución". ..........................

13

CONFIDENTIAL

DANSKE_0016023

14

- - - III.- Exponen los comparecientes, bajo protesta de decir verdad, que cuentan con las facultades necesarias para el otorgamiento de la presente escritura, y que sus personalidades no les han sido revocadas ni modificadas de forma alguna. .....................
- - - Expuesto lo anterior, los comparecientes otorgan las siguientes: ..........................
- - - - - - - - - - - - D E C L A R A C I O N E S .......................................................
- - - 1. El FIDEICOMISARIO EN PRIMER LUGAR, a la fecha del presente documento (la "FECHA DE CIERRE"), ha otorgado un crédito a DIAMANTE CABO por la cantidad de hasta $125,000,000.00 (Ciento veinticinco millones de dólares de los Estados Unidos de América) de principal , sujeto al interés correspondiente (el "CRÉDITO"). ........................
- - - 2. El CRÉDITO consta en los siguientes documentos: (i) Contrato de Crédito (Loan Agreement) celebrado en la FECHA DE CIERRE entre DIAMANTE CABO y el FIDEICOMISARIO EN PRIMER LUGAR (el "CONTRATO DE CRÉDITO"); (ii) Pagaré (Promissory Note) suscrito en la FECHA DE CIERRE por DIAMANTE CABO (el "PAGARÉ"); (iii) Contrato de Cesión de Arrendamiento y Rentas (Assignment of Lease and Rents), celebrado en la FECHA DE CIERRE, entre DIAMANTE CABO y el FIDEICOMISARIO EN PRIMER LUGAR (la "CESIÓN DE RENTAS"); (iv) Contrato de Prenda sin Transmisión de Posesión (Pledge Agreement Without Transfer of Posesión), celebrado en la FECHA DE CIERRE entre DIAMANTE CABO y el FIDEICOMISARIO EN PRIMER LUGAR (el "CONTRATO DE PRENDA"); (v) Garantía con Recurso (Recourse Guaranty) celebrada en la FECHA DEL CIERRE por el Señor Kenneth A. Jowdy (el "GARANTE") y el FIDEICOMISARIO EN PRIMER LUGAR, con vigencia a partir de la FECHA DE CIERRE (la "GARANTÍA CON RECURSO"); (vi) Documento de Responsabilidad e Indemnización Ambiental (Indemnity Agreement) celebrado en la FECHA DEL CIERRE entre DIAMANTE CABO, el GARANTE y EL FIDEICOMISARIO EN PRIMER LUGAR (la "INDEMNIZACIÓN AMBIENTAL"); (vii) Contrato de Prenda (Pledge Agreement) celebrado en la FECHA DEL CIERRE entre el FIDEICOMISARIO EN SEGUNDO LUGAR, el GARANTE, Diamante Cabo San Lucas LLC ("U.S. LLC"), y el FIDEICOMISARIO EN PRIMER LUGAR (el "CONTRATO DE PRENDA SOBRE PARTE SOCIAL MEXICANA"); (viii) Contrato de Prenda (Pledge Agreement) celebrado en la FECHA DE CIERRE, entre el GARANTE, U.S. LLC y EL FIDEICOMISARIO EN PRIMER LUGAR (el "CONTRATO DE PRENDA SUJETO A LA LEGISLACIÓN DE E.U.A."); (ix) Contrato de Prenda (Pledge Agreement) celebrado en LA FECHA DE CIERRE entre el GARANTE, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC y CSL Properties 2006, LLC (colectivamente, los "MIEMBROS DE LA U.S. LLC") y el FIDEICOMISARIO EN PRIMER LUGAR (el "CONTRATO DE PRENDA SOBRE PARTES SOCIALES DE E.U.A."); (x) Cesión Omnibus (Omnibus Assignment) celebrada en la FECHA DE CIERRE entre DIAMANTE CABO y el FIDEICOMISARIO EN PRIMER LUGAR (la "CESIÓN OMNIBUS"); (xi) Documento de Cumplimiento de Garantía de Conclusión (Completion Guaranty), otorgado por el GARANTE en la FECHA DE CIERRE a favor del FIDEICOMISARIO EN PRIMER LUGAR; (xii) Garantía



14

DANSKE_0016024

LIC. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM 7
LA PAZ, B.C.S.

IGNACIO RAMIREZ 1930
TELS. 122-91-40
122-97
125-24
FAX 12525

15

(Guaranty) otorgada por los MIEMBROS DE LA U.S. LLC, el GARANTE y la U.S. LLC a favor del FIDEICOMISARIO EN PRIMER LUGAR en la FECHA DE CIERRE. Los documentos que se mencionan anteriormente se denominan conjuntamente como los "DOCUMENTOS DE LA OPERACIÓN", y estos últimos, conjuntamente con el presente CONTRATO DE FIDEICOMISO se denominan los "DOCUMENTOS DE CRÉDITO".........

- - - 3.DIAMANTE CABO, de conformidad con los DOCUMENTOS DE LA OPERACIÓN, convino en celebrar el presente CONTRATO DE FIDEICOMISO con el fin de garantizar sus obligaciones, así como las obligaciones a cargo de los MIEMBROS DE LA U.S. LLC, la U.S. LLC, y del GARANTE, previstas en los DOCUMENTOS DE LA OPERACIÓN.......

4. DIAMANTE CABO, en este acto, declara, manifiesta y garantiza que: ..............

- - - a).- Es una Sociedad de Responsabilidad Limitada debidamente constituida de conformidad con las leyes de los Estados Unidos Mexicanos, con domicilio principal en Calle Obregón No. 1,289, 22800, Ensenada, Baja California Norte, México......................

- - - b).- Es propietario de los Predios descritos en el Antecedente I.a) y los Derechos descritos en el Antecedente I.b) de este instrumento (en lo sucesivo los Predios y los Derechos serán conjuntamente denominados para los efectos de este CONTRATO DE FIDEICOMISO como el "INMUEBLE");......................

- - - c).- Cuenta con las facultades corporativas y legales para celebrar, entregar y cumplir con las obligaciones a su cargo establecidas en el presente instrumento, así como para otorgar las garantías necesarias, transmitir el dominio y afectar el INMUEBLE en términos del presente CONTRATO DE FIDEICOMISO y que ha tomado todas las acciones jurídicas y corporativas necesarias a efecto de autorizar su celebración, entrega y cumplimiento, así como para afectar el INMUEBLE, en términos del presente CONTRATO DE FIDEICOMISO; ......................

- - - d).- El presente CONTRATO DE FIDEICOMISO constituye una obligación jurídica, válida y obligatoria a cargo de CABO DIAMANTE, ejecutable de conformidad con las disposiciones establecidas en la legislación aplicable; ......................

- - - e).- La celebración, entrega y cumplimiento del presente CONTRATO DE FIDEICOMISO no implicará ninguna violación material de ninguna disposición ni requisito legal, ni de ninguna disposición establecida en sus documentos corporativos, ni de ninguna obligación contractual a cargo de DIAMANTE CABO y no tendrá como resultado la constitución ni la imposición de ningún gravamen sobre ninguno de los activos o ingresos de DIAMANTE CABO, salvo por lo establecido en el presente instrumento y lo expresamente permitido en los DOCUMENTOS DE LA OPERACIÓN;...

- - - f).-A la fecha de celebración del presente instrumento, no existe, hasta donde es de su conocimiento, después de haber efectuado las investigaciones pertinentes, ninguna acción, reclamación, demanda, requerimiento ni procedimiento potencial ni pendiente de resolución, ante ningún tribunal, dependencia gubernamental o árbitro, que afecte o

15

16

pudiese afectar la legalidad, validez y ejecutabilidad del presente CONTRATO DE FIDEICOMISO o de la propiedad sobre el INMUEBLE;..................................................

- - - g).- Ningún consentimiento, autorización, solicitud ni cualquier otro acto por parte de alguna autoridad gubernamental o de cualquier otra persona se requiere a efecto de celebrar, modificar, dar por terminado, ceder, entregar, cumplir, o hacer válido el presente CONTRATO DE FIDEICOMISO ni a efecto de perfeccionar ni mantener la garantía que se constituye en el mismo; ..................................................

- - - h)  DIAMANTE CABO es el legítimo propietario del INMUEBLE, libre de todo gravamen (a excepción de la SERVIDUMBRE), carga, garantía, opción o reclamación por parte de cualquier tercero;..................................................

- - - i).- La persona que celebra el presente CONTRATO DE FIDEICOMISO en representación de DIAMANTE CABO cuenta con los poderes, las facultades y la autorización corporativa necesarias para hacerlo, los cuales no le han sido revocados ni limitados en forma alguna;

- - - j).-Es intención de DIAMANTE CABO afectar el INMUEBLE en fideicomiso, de conformidad con las disposiciones del presente instrumento. ..................................................

- - - k).- Los estatutos sociales de DIAMANTE CABO incluyen las disposiciones legales establecidas en el artículo 27, fracción I,  de la Constitución Política de los Estados Unidos Mexicanos..................................................

- - - l). - . El destino, la utilización y el aprovechamiento del INMUEBLE será para fines no residenciales en tanto forme parte del PATRIMONIO FIDEICOMITIDO y, por lo tanto, la celebración del presente CONTRATO DE FIDEICOMISO no requerirá de permiso de la Secretaría de Relaciones Exteriores ("SRE"), en términos de los artículos 11 y 12 de la Ley de Inversión Extranjera ("LIE")..................................................

- - - m).- ..El INMUEBLE se encuentra al corriente en el pago de cualesquiera impuestos predial o cualesquiera otras contribuciones gubernamentales y servicios a los que pudiese estar sujeto dicho INMUEBLE o sus propietarios. ..................................................

- - - n).- ..El INMUEBLE cumple con todas las normas ambientales, de salud y seguridad aplicables, y DIAMANTE CABO no tiene conocimiento de que (i) haya ocurrido ningún evento ni exista circunstancia ni condición que pudiese constituir o resultar en una violación a las leyes ambientales, de salud y seguridad, y (ii) el INMUEBLE no está sujeto a ninguna acción existente ni, hasta donde es del conocimiento de DIAMENTE CABO, potencial, ejercida por o ante ninguna autoridad gubernamental, en términos de ninguna ley ambiental, de salud ni de seguridad aplicable, ni existe sustento legal alguno para dicha acción.

- - - 5.El FIDEICOMISARIO EN PRIMER LUGAR en este acto declara, manifiesta y garantiza que: ..................................................

- - - a).- Es una sociedad debidamente constituida de conformidad con las leyes del Estado de Delaware en los Estados Unidos de América; ..................................................

- - - b).- Su representante legal cuenta con todas las facultades y autorización corporativa





16

DANSKE_0016026



IGNACIO RAMIREZ 1930
TELS. 12.2.91-20
122-97-17
125-22-40
FAX 125-26-68

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

17

necesarias para celebrar el presente CONTRATO DE FIDEICOMISO, mismos que no le han sido revocadas ni limitadas en forma alguna; ..........................................................

- - - c).- El FIDEICOMISARIO EN PRIMER LUGAR no tendrá derecho a usar ni aprovechar el INMUEBLE, salvo que el FIDEICOMISO reciba el PERMISO SRE, tal y como se define en la Cláusula DECIMA OCTAVA siguiente, en el entendido de que dicha limitación no precluirá ni disminuirá en forma alguna, los derechos del FIDEICOMISARIO EN PRIMER LUGAR en términos del presente CONTRATO DE FIDEICOMISO o de la garantía otorgada en el mismo. ..........................................................

- - - 6. -El FIDUCIARIO en este acto declara, manifiesta y garantiza que:..........................

- - - a).- .Es una institución de banca múltiple, debidamente constituida y autorizada para operar como tal, de conformidad con las leyes mexicanas;..........................................................

- - - b).- Su representante legal cuenta con todas las facultades y autorizaciones corporativas necesarias para celebrar el presente CONTRATO DE FIDEICOMISO, mismas que no le han sido revocadas ni limitadas en forma alguna..........................................

- - - - - - - - - - - - - - - - - - TÉRMINOS DEFINIDOS ..........................................................

Los términos en mayúsculas que no se encuentren definidos en el presente CONTRATO DE FIDEICOMISO tendrán los significados que les fueron atribuidos en los DOCUMENTOS DE LA OPERACIÓN. Adicionalmente, los siguientes términos tendrán los significados que a continuación se establecen:..........................................................

"OBLIGACIONES GARANTIZADAS": Todas y cada una de las obligaciones presentes o futuras a cargo de DIAMANTE CABO, de la U.S. LLC, los MIEMBROS DE LA U.S. LLC y el GARANTE bajo los DOCUMENTOS DE LA OPERACIÓN, incluyendo, sin limitación alguna, el pago oportuno de la cantidad adeudada del principal y, en su caso, de intereses,.así como de la "CUOTA ADICIONAL" (Additional Fee), tal y como se define en el Contrato de Crédito, con los respectivos cambios que dichos documentos u obligaciones sufran en el tiempo, por reformas, novación, modificaciones, enmiendas o suplementos; así como todas y cada una de las obligaciones presentes o futuras a cargo de DIAMANTE CABO en términos del presente CONTRATO DE FIDEICOMISO, con sus respectivas reformas, modificaciones y adiciones que ocurran de tiempo en tiempo. ..........................................................

- - - - - - - - - - - - - - - - - - C L Á U S U L A S ..........................................................

- - - PRIMERA.- TRANSMISIÓN DEL INMUEBLE FIDEICOMITIDO. ..........................

El FIDEICOMITENTE en este acto, y en forma irrevocable, transfiere la propiedad y afecta en fideicomiso traslativo de dominio a favor del FIDUCIARIO, los Predios y los Derechos que constituyen el INMUEBLE libre de todo gravamen (a excepción de la SERVIDUMBRE) o carga,, con la superficie y linderos que se encuentran transcritos en el Antecedente I.a), los cuales son aquí reproducidos a la letra y deberán entenderse como insertados en su totalidad. ..........................................................

El FIDEICOMITENTE responderá por saneamiento en caso de evicción del INMUEBLE.

17

DANSKE_0016027

18

- - - Con excepción del derecho del FIDEICOMITENTE para readquirir el INMUEBLE, de conformidad con lo previsto en la Cláusula CUARTA siguiente, el FIDEICOMITENTE no se reserva ningún derecho respecto del presente CONTRATO DE FIDEICOMISO ni respecto del PATRIMONIO FIEDICOMITIDO (tal y como se define más adelante). Lo anterior, sin perjuicio de los derechos del FIDEICOMISARIO EN SEGUNDO LUGAR previstos en este CONTRATO DE FIDEICOMISO. .................................................

- - - Las partes del Fideicomiso se obliga a destinar los Predios según lo ordenado por la Ley de Desarrollo Urbano vigente en el Estado de Baja California Sur..........................

- - - SEGUNDA.- PARTES Y PATRIMONIO FIDEICOMTIDO. ..........................

- - - Las partes del presente FIDEICOMISO son:.................................................

FIDEICOMITENTE: **Diamante Cabo San Lucas, S. de R.L. de C.V.,** y/o sus sucesores y cesionarios autorizados (los cuales podrán denominarse, en lo sucesivo, como el "FIDEICOMITENTE")..............................................................................

FIDEICOMISARIO EN PRIMER LUGAR: **Lehman Brothers Holdings Inc.,** o sus sucesores y cesionarios permitidos (denominados, en lo sucesivo y de forma indistinta, como el "FIDEICOMISARIO EN PRIMER LUGAR"). ...........................................

FIDEICOMISARIO EN SEGUNDO LUGAR: **Diamante Cabo San Lucas, S. de R.L. de C.V.,** y/o sus sucesores o cesionarios autorizados (mismos que, en lo sucesivo, pueden también ser denominados como "FIDEICOMISARIO EN SEGUNDO LUGAR"). ...............

FIDUCIARIO: **BANCO J.P. MORGAN, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA,** (en lo sucesivo, el "FIDUCIARIO")............................................................................................

El patrimonio objeto del presente FIDEICOMISO será EL INMUEBLE, con todo lo que de hecho y por derecho le corresponde y todos sus accesorios presentes y futuros, incluyendo, sin limitación alguna, cualesquiera mejoras, construcciones, desarrollos, accesiones, licencias, permisos, derechos y concesiones, excluyendo cualquier porción del INMUEBLE que sea vendido o transmitido después de la celebración de este CONTRATO DE FIDEICOMISO de conformidad con los términos establecidos en el presente, incluyendo cualquier dinero o contraprestación que pueda ser recibido(a) por el FIDUCIARIO, en su caso, después de que dichas ventas o transferencias se lleven a cabo (en lo sucesivo el "PATRIMONIO FIDEICOMITIDO"). .....................................

- - - - TERCERA.- DESIGNACIÓN DEL FIDUCIARIO. .....................................

El FIDUCIARIO en este acto (i) acepta su designación como FIDUCIARIO y conviene en cumplir leal y cabalmente con sus obligaciones de FIDUCIARIO, así como con los fines del mismo, y todas las obligaciones asumidas por el FIDUCIARIO en términos del presente instrumento y de la legislación aplicable; (ii) recibe, sujeto a los términos del CONTRATO DE FIDEICOMISO, el PATRIMONIO FIDEICOMITIDO, y (iii) reconoce y acepta la propiedad sobre el PATRIMONIO FIDEICOMITIDO y conviene en detentar dicha propiedad únicamente para los fines del presente FIDEICOMISO. Sujeto a los términos del CONTRATO DE FIDEICOMISO, se autoriza en este acto al FIDUCIARIO





CONFIDENTIAL

DANSKE_0016028



IGNACIO RAMIREZ 1850
TELS. 122-41-20
122-97-17
122-24-40
FAX 1222588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

19

para tomar todas las medidas que resulten necesarias para cumplir con los fines del FIDEICOMISO. Asimismo, el FIDUCIARIO deberá cumplir, de inmediato, con todas y cada una de las instrucciones que le dé el FIDEICOMISARIO EN PRIMER LUGAR, sin necesidad de notificación o autorización previa por parte del FIDEICOMISARIO EN SEGUNDO LUGAR (excepto cuando lo expresamente previsto en el presente instrumento requiera notificación a o autorización por parte del FIDEICOMISARIO EN SEGUNDO LUGAR) siempre que dichas instrucciones se encuentren expresamente permitidas en el presente instrumento y de conformidad con las disposiciones que expresamente se prevén en el presente CONTRATO DE FIDEICOMISO, y conviene en no llevar a cabo ni dejar de llevar a cabo cualquier acción que pudiese impedir u obstruir de cualquier forma el cumplimiento de los fines del presente FIDEICOMISO.........................

- - - CUARTA.- FINES DEL FIDEICOMISO.........................

Los fines del FIDEICOMISO son los siguientes:

El FIDUCIARIO conservará la propiedad y la titularidad sobre el INMUEBLE y el PATRIMONIO FIDEICOMITIDO hasta el vencimiento del CONTRATO DE FIDEICOMISO, de conformidad con los términos del mismo.........................

En tanto el FIDUCIARIO no haya recibido aviso por escrito de parte del FIDEICOMISARIO EN PRIMER LUGAR notificándole la existencia de algún incumplimiento de las OBLIGACIONES GARANTIZADAS ("NOTIFICACIÓN DE INCUMPLIMIENTO"), el FIDUCIARIO permitirá al FIDEICOMISARIO EN SEGUNDO LUGAR tener la utilización, el aprovechamiento y la posesión del PATRIMONIO FIDEICOMITIDO para fines no residenciales. La utilización, el aprovechamiento y posesión prevista en el presente deberá permitir al FIDEICOMISARIO EN SEGUNDO LUGAR desarrollar el INMUEBLE de conformidad con los DOCUMENTOS DE CRÉDITO (el "PROYECTO"):.........................

En tanto el FIDUCIARIO no haya recibido la NOTIFICACIÓN DE INCUMPLIMIENTO, el FIDUCIARIO deberá transferir porciones del PATRIMONIO FIDEICOMETIDO a terceras personas identificadas en las instrucciones conjuntas que por escrito le notifiquen el FIDEICOMISARIO EN PRIMER LUGAR y del FIDEICOMISARIO EN SEGUNDO LUGAR. Cualquier porción del PATRIMONIO FIDEICOMITIDO que sea transmitido a terceros de acuerdo a este inciso dejará de ser parte del PATRIMONIO FIDEICOMITIDO. .........................

El FIDUCIARIO mantendrá el PATRIMONIO FIDEICOMITIDO afectado en términos del presente FIDEICOMISO en beneficio del FIDEICOMISARIO EN PRIMER LUGAR a fin de garantizar y asegurar el pago y cumplimiento, en tiempo y forma, de todas y cada una de las OBLIGACIONES GARANTIZADAS a cargo del FIDEICOMISARIO EN SEGUNDO LUGAR, EL GARANTE, la U.S. LLC y los MIEMBROS de la U.S. LLC bajo los DOCUMENTOS DE CRÉDITO. .........................

Una vez que haya recibido alguna NOTIFICACIÓN DE INCUMPLIMIENTO de parte del FIDEICOMISARIO EN PRIMER LUGAR, el FIDUCIARIO, siguiendo las instrucciones de

19

20

parte del FIDEICOMISARIO EN PRIMER LUGAR y sin necesidad de obtener el consentimiento ni la aprobación de parte del FIDEICOMISARIO EN SEGUNDO LUGAR ("ORDEN DE LIQUIDACIÓN"), deberá tomar todas o algunas de las siguientes acciones: (i) revocar los derechos del FIDEICOMISARIO EN SEGUNDO LUGAR para la utilización, aprovechamiento y posesión del INMUEBLE, así como para el desarrollo del PROYECTO en dicho INMUEBLE, entregando la NOTIFICACIÓN DE INCUMPLIMIENTO al FIDEICOMISARIO EN SEGUNDO LUGAR; (ii) sujeto a la condición de que se obtenga el PERMISO DE SRE (como se define en la Cláusula DECIMA OCTAVA), y a que se modifique este CONTRATO DE FIDEICOMISO en términos de dicha cláusula, permitir al FIDEICOMISARIO EN PRIMER LUGAR, el uso y posesión del PATRIMONIO FIDEICOMITIDO para fines no residenciales; y (iii) sujeto al procedimiento establecido en la Cláusula DÉCIMA SEGUNDA, enajenar la totalidad o parte de los bienes y derechos que conforman el PATRIMONIO FIDEICOMITIDO o modificar el CONTRATO DE FIDEICOMISO como se prevé en el presente instrumento. Al recibir la ORDEN DE LIQUIDACIÓN del FIDUCIARIO, el FIDEICOMISARIO EN SEGUNDO LUGAR entregará inmediatamente el uso y la posesión del PATRIMONIO FIDEICOMITIDO al FIDUCIARIO o a quien éste en su caso designe por instrucciones del FIDEICOMISARIO en PRIMER LUGAR; y ......................................................



Después de que el FIDUCIARIO reciba aviso por escrito de parte del FIDEICOMISARIO EN PRIMER LUGAR notificándole que el FIDEICOMISARIO EN SEGUNDO LUGAR, el GARANTE, la U.S. LLC y los MIEMBROS DE LA U.S. LLC han cumplido con todas y cada una de las OBLIGACIONES GARANTIZADAS a su cargo ("NOTIFICACIÓN DE PAGO"), el FIDUCIARIO, de conformidad con las instrucciones por escrito que reciba por parte del FIDEICOMISARIO EN SEGUNDO LUGAR, procederá a (i) revertir la propiedad del PATRIMONIO FIDEICOMITIDO al FIDEICOMISARIO EN SEGUNDO LUGAR y dar por terminado el presente CONTRATO DE FIDEICOMISO; o (ii) a solicitud del FIDEICOMISARIO EN SEGUNDO LUGAR modificar este FIDEICOMISO conforme a lo instruido por el FIDEICOMISARIO EN SEGUNDO LUGAR, incluyendo, sin limitación alguna, la remoción del FIDEICOMISARIO EN PRIMER LUGAR como parte del presente CONTRATO DE FIDEICOMISO. .............................................................



Que el FIDUCIARIO, por instrucciones del FIDEICOMISARIO EN PRIMER LUGAR, otorgue, sin necesidad de obtener el consentimiento previo del FIDEICOMISARIO EN SEGUNDO LUGAR, una hipoteca a favor del FIDEICOMISARIO EN PRIMER LUGAR sobre el INMUEBLE a fin de garantizar las OBLIGACIONES GARANTIZADAS...............

- - - QUINTA.- OBLIGACIONES. .............................................................................

Las partes de este FIDEICOMISO acuerdan lo siguiente: ...........................................

(a) El FIDUCIARIO le encomienda al FIDEICOMISARIO EN SEGUNDO LUGAR, la administración del INMUEBLE y lo designará como depositario del mismo, otorgándole la posesión del INMUEBLE afectado en fideicomiso, pudiendo, como administrador, por sí o a través de terceros, usar, beneficiarse del uso de, y llevar a cabo cualquier

20

DANSKE_0016030



**LIC. HECTOR CASTRO CASTRO**
TITULAR
**LIC. JOSE ALBERTO CASTRO SALAZAR**
ADSCRITO
NOTARIA PUBLICA NUM. 7
LA PAZ, B.C.S.

21

modificación, trabajo, mejora, construcción, desarrollo, arrendamiento, administración y manejo de dicho INMUEBLE, así como constituir los regímenes de condominio o sub-condominio que considere pertinentes, siempre y cuando dichas actividades cumplan con la Cláusula Cuarta, inciso (b) anterior, así como con los DOCUMENTOS DE CRÉDITO. ............................................................................................

(b) El FIDEICOMISARIO EN SEGUNDO LUGAR obtendrá todos los permisos, licencias y concesiones que sean necesarios a fin de llevar a cabo los actos mencionados en el párrafo (a) de la presente Cláusula, sin que el FIDEICOMISARIO EN PRIMER LUGAR y FIDUCIARIO tengan responsabilidad alguna respecto de violaciones de dichos permisos, licencias y concesiones o de cualesquiera leyes aplicables causadas por el uso o posesión del FIDEICOMISARIO EN SEGUNDO LUGAR del PATRIMONIO FIDEICOMITIDO o relacionada con la construcción en el mismo, ni tampoco tendrán responsabilidad alguna que se derive de los trabajos, modificaciones, mejoras o construcciones del PROYECTO, siendo el FIDEICOMISARIO EN SEGUNDO LUGAR, el único responsable por dichos actos. El FIDEICOMISARIO EN SEGUNDO LUGAR, asumirá, a su cuenta y bajo su propio costo, cualesquiera obligaciones fiscales, laborales o de pago relacionadas con, o que se deriven del uso y posesión del PATRIMONIO FIDEICOMITIDO, incluyendo, sin limitación, aquellos relacionados con cualquier construcción, mejora y desarrollo respecto del INMUEBLE...............................

(c) El FIDUCIARIO otorgará, de tiempo en tiempo, a las personas que determine el FIDEICOMISARIO EN SEGUNDO LUGAR, de conformidad con lo establecido en este inciso (c) todos y cada uno de los poderes que sean necesarios para llevar a cabo los fines del FIDEICOMISO. Una vez que, por instrucciones del FIDEICOMISARIO EN PRIMER LUGAR, se haya entregado alguna NOTIFICACIÓN DE INCUMPLIMIENTO, el FIDUCIARIO deberá revocar todos los poderes que hayan sido identificados por el FIDEICOMISARIO EN PRIMER LUGAR y otorgados en términos del presente CONTRATO DE FIDEICOMISO y otorgar a las personas que le indique el FIDEICOMISARIO EN PRIMER LUGAR, todos y cada uno de los poderes que sean necesarios para el cumplimiento de los fines del FIDEICOMISO. .....................................

(d) El FIDUCIARIO no modificará el presente FIDEICOMISO salvo que así haya sido instruido por parte del FIDEICOMISARIO EN PRIMER LUGAR y del FIDEICOMISARIO EN SEGUNDO LUGAR, conjuntamente. Una vez que se haya recibido alguna NOTIFICACIÓN DE INCUMPLIMIENTO, el consentimiento o aprobación por parte del FIDEICOMISARIO EN SEGUNDO LUGAR no será necesario para efectuar las modificaciones previstas en la Cláusula DÉCIMA SEGUNDA siguiente............................

(e) Salvo que los fines del FIDEICOMISO lo permitan, el FIDUCIARIO no deberá: (i) transferir la propiedad ni (ii) constituir u otorgar garantía, hipoteca, o prenda alguna ni (iii) constituir ningún otro tipo de garantía real sobre ninguno de los bienes que formen parte del PATRIMONIO FIDEICOMITIDO, ni sobre sus derechos derivados del presente CONTRATO DE FIDEICOMISO, salvo mediante el consentimiento previo y por escrito

21

CONFIDENTIAL

DANSKE_0016031

22

de parte del FIDEICOMISARIO EN PRIMER LUGAR (mismo que podrá ser otorgado o negado a la entera discreción del FIDEICOMISARIO EN PRIMER LUGAR)......................

(f) El FIDEICOMISARIO EN SEGUNDO LUGAR será el único responsable de la conservación del PATRIMONIO FIDEICOMITIDO y el único responsable de llevar a cabo, a su propio costo, todas las reparaciones que sean necesarias, de pagar todos y cada uno de los impuestos correspondientes, de mantener y cumplir con todos los permisos, licencias y concesiones que sean necesarios y de cumplir con todas las leyes y reglamentos aplicables, a fin de conservar todos los bienes que integran el PATRIMONIO FIDEICOMITIDO, en buen estado y llevando a cabo los actos necesarios para la construcción y operación de un desarrollo turístico, de conformidad con las disposiciones establecidas en la Cláusula Cuarta, inciso (b) anterior y con los DOCUMENTOS DE CRÉDITO, en el entendido, sin embargo, de que dicho INMUEBLE no será destinado o utilizado para fines residenciales en tanto forme parte del PATRIMONIO FIDEICOMITIDO, de conformidad con lo previsto por la LIE......................



(g) .El FIDUCIARIO tendrá todos los derechos y facultades para cumplir con los fines del presente FIDEICOMISO, de conformidad con los términos aquí establecidos y la ley aplicable, incluyendo facultades de dominio......................

(h) El FIDUCIARIO deberá proteger todos los bienes y derechos que forman parte del PATRIMONIO FIDEICOMITIDO a través de los agentes que se mencionan en la presente Cláusula; en el entendido de que en caso de que ocurriese alguna Emergencia que se haga del conocimiento del FIDUCIARIO, el FIDUCIARIO actuará de inmediato y tomará todas las medidas necesarias para la protección del PATRIMONIO FIDEICOMITIDO, y en este acto se le otorgan todas las facultades necesarias para designar apoderados, cuyas facultades estarán sujetas, siempre y cuando el tiempo así lo permita, a la ratificación por parte del FIDEICOMISARIO EN PRIMER LUGAR. Para fines de la presente Cláusula, el término "Emergencia" significa cualquier hecho o situación que directamente ponga en peligro la salud y la seguridad de cualquier persona, visitante o empleado que se encuentre presente en el PATRIMONIO FIDEICOMITIDO, o que pueda resultar en la imposición de alguna sanción o pena al FIDUCIARIO, al FIDEICOMISARIO EN PRIMER LUGAR y/o al FIDEICOMISARIO EN SEGUNDO LUGAR......................



(i) Hasta que las OBLIGACIONES GARANTIZADAS sean pagadas en su totalidad, el presente FIDEICOMISO será irrevocable y estará vigente a partir de la fecha de su firma hasta su terminación como se encuentra aquí previsto. El FIDEICOMISO deberá estar vigente el tiempo que sea necesario para cumplir con sus fines, y no podrá ser revocado por el Fideicomitente. El CONTRATO DE FIDEICOMISO podrá darse por terminado de conformidad con las causales establecidas en el artículo trescientos noventa y dos de la Ley General de Títulos y Operaciones de Crédito, salvo por lo que se refiere a la causa de terminación establecida en la fracción sexta de dicho artículo, dado que el FIDEICOMITENTE no se reserva para sí el derecho de revocar el presente

22

DANSKE_0016032

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

23

FIDEICOMISO, A la terminación del CONTRATO DE FIDEICOMISO, el FIDUCIARIO entregará y transferirá el PATRIMONIO FIDEICOMITIDO de la siguiente forma: (i) previo al pago de la totalidad de las OBLIGACIONES GARANTIZADAS, tal como se muestre en el certificado que entregue al FIDUCIARIO el FIDEICOMISARIO EN PRIMER LUGAR, al FIDEICOMISARIO EN PRIMER LUGAR o su cesionario, como garantía de pago total de las OBLIGACIONES GARANTIZADAS; (ii) después del pago total de las OBLIGACIONES GARANTIZADAS, de conformidad con lo indicado en la NOTIFICACIÓN DE PAGO, al FIDEICOMITENTE o su cesionario; (iii) a la persona designada por escrito por el FIDEICOMISARIO EN PRIMER LUGAR y por el FIDEICOMISARIO EN SEGUNDO LUGAR; o (iv) de conformidad con lo previsto en la Cláusula Décima Segunda siguiente. ...................................................................

(j)En caso de que el FIDUCIARIO reciba cualquier cantidad de dinero durante la vigencia del presente FIDEICOMISO, deberá notificarlo inmediatamente al FIDEICOMISARIO EN PRIMER LUGAR y deberá actuar de conformidad con las instrucciones que le dé este último. ...................................................................

**- - - - SEXTA.- DISPOSICIÓN LEGAL.** ...................................................................

De conformidad con la fracción XIX del artículo 106 de la Ley de Instituciones de Crédito, el FIDUCIARIO declara que, en términos de la presente Cláusula, ha proporcionado a las partes del presente instrumento, por escrito una explicación clara e inequívoca, del significado jurídico y de las consecuencias de dicha fracción, misma que se transcribe para todos los efectos que resulten pertinentes: ...................................................................

"Artículo 106 a las Instituciones de crédito les estará prohibido: ...................................................................

....XIX.En la realización de las operaciones a que se refiere la fracción XV del artículo 46 de esta Ley: ...................................................................

Celebrar operaciones con la propia institución en el cumplimiento de fideicomisos, mandatos o comisiones. El Banco de México podrá autorizar, mediante disposiciones de carácter general, la realización de determinadas operaciones cuando no impliquen un conflicto de intereses;

Responder a los fideicomitentes, mandantes o comitentes, del incumplimiento de los deudores, por los créditos que se otorguen, o de los emisores, por los valores que se adquieran, salvo que sea por su culpa, según lo dispuesto en la parte final del artículo 391 de la Ley General de Títulos y Operaciones de Crédito, o garantizar la percepción de rendimientos por los fondos cuya inversión se les encomiende. ...................................................................

Si al término del fideicomiso, mandato o comisión constituidos para el otorgamiento de créditos, éstos no hubieren sido liquidados por los deudores, la institución deberá transferirlos al fideicomitente o fideicomisario, según sea el caso, o al mandante o comitente, absteniéndose de cubrir su importe. ...................................................................

En los contratos de fideicomiso, mandato o comisión se insertará en forma notoria lo dispuesto en este inciso y una declaración de la fiduciaria en el sentido de que hizo

23

CONFIDENTIAL

DANSKE_0016033

24

saber inequívocamente su contenido a las personas de quienes haya recibido bienes o derechos para su afectación fiduciaria; .......................................................

Actuar como fiduciarias, mandatarias o comisionistas en fideicomisos, mandatos o comisiones, respectivamente, a través de los cuales se capten, directa o indirectamente, recursos del público, mediante cualquier acto causante de pasivo directo o contingente, excepto tratándose de fideicomisos constituidos por el Gobierno Federal a través de la Secretaría de Hacienda y Crédito Público, y de fideicomisos a través de los cuales se emitan valores que se inscriban en el Registro Nacional de Valores de conformidad con lo previsto en la Ley del Mercado de Valores;

Desempeñar los fideicomisos, mandatos o comisiones a que se refiere el segundo párrafo del artículo 88 de la Ley de Sociedades de Inversión; ........................................

Actuar en fideicomisos, mandatos o comisiones a través de los cuales se evadan limitaciones o prohibiciones contenidas en las leyes financieras; ..................................

Utilizar fondos o valores de los fideicomisos, mandatos o comisiones destinados al otorgamiento de créditos, en que la fiduciaria tenga la facultad discrecional, en el otorgamiento de los mismos para realizar operaciones en virtud de las cuales resulten o puedan resultar deudores sus delegados fiduciarios; los miembros del consejo de administración o consejo directivo, según corresponda, tanto propietarios como suplentes, estén o no en funciones; los empleados y funcionarios de la institución; los comisarios propietarios o suplentes, estén o no en funciones; los auditores externos de la institución; los miembros del comité técnico del fideicomiso respectivo; los ascendentes o descendientes en primer grado o cónyuges de las personas citadas, las sociedades en cuyas asambleas tengan mayoría dichas personas o las mismas instituciones, asimismo aquellas personas que el Banco de México determine mediante disposiciones de carácter general, y ..............................................................

Administrar fincas rústicas, a menos que hayan recibido la administración para distribuir el patrimonio entre herederos, legatarios, asociados o acreedores, o para pagar una obligación o para garantizar su cumplimiento con el valor de la misma finca o de sus productos, y sin que en estos casos la administración exceda del plazo de dos años, salvo los casos de fideicomisos a la producción o fideicomisos de garantía..................

Celebrar operaciones con la propia institución en el cumplimiento de fideicomisos, mandatos o comisiones. El Banco de México podrá autorizar, mediante disposiciones de carácter general, la realización de determinadas operaciones cuando no impliquen un conflicto de intereses;...........................................................................

Responder a los fideicomitentes, mandantes o comitentes, del incumplimiento de los deudores, por los créditos que se otorguen, o de los emisores, por los valores que se adquieran, salvo que sea por su culpa, según lo dispuesto en la parte final del artículo 391 de la Ley General de Títulos y Operaciones de Crédito, o garantizar la percepción de rendimientos por los fondos cuya inversión se les encomiende..................................



24

CONFIDENTIAL

DANSKE_0016034



LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

IGNACIO RAMIREZ
TELS. 12-291-20
12-297-17
25-24-40
FAX 28-25-68

25

Si al término del fideicomiso, mandato o comisión constituidos para el otorgamiento de créditos, éstos no hubieren sido liquidados por los deudores, la institución deberá transferirlos al fideicomitente o fideicomisario, según sea el caso, o al mandante o comitente, absteniéndose de cubrir su importe. ........................................................

En los contratos de fideicomiso, mandato o comisión se insertará en forma notoria lo dispuesto en este inciso y una declaración de la fiduciaria en el sentido de que hizo saber inequívocamente su contenido a las personas de quienes haya recibido bienes o derechos para su afectación fiduciaria; ..............................................................

Actuar como fiduciarias, mandatarias o comisionistas en fideicomisos, mandatos o comisiones, respectivamente, a través de los cuales se capten, directa o indirectamente, recursos del público, mediante cualquier acto causante de pasivo directo o contingente, excepto tratándose de fideicomisos constituidos por el Gobierno Federal a través de la Secretaría de Hacienda y Crédito Público, y de fideicomisos a través de los cuales se emitan valores que se inscriban en el Registro Nacional de Valores de conformidad con lo previsto en la Ley del Mercado de Valores;

Desempeñar los fideicomisos, mandatos o comisiones a que se refiere el segundo párrafo del artículo 88 de la Ley de Sociedades de Inversión; ........................................

Actuar en fideicomisos, mandatos o comisiones a través de los cuales se evadan limitaciones o prohibiciones contenidas en las leyes financieras; ..................................

Utilizar fondos o valores de los fideicomisos, mandatos o comisiones destinados al otorgamiento de créditos, en que la fiduciaria tenga la facultad discrecional, en el otorgamiento de los mismos para realizar operaciones en virtud de las cuales resulten o puedan resultar deudores sus delegados fiduciarios; los miembros del consejo de administración o consejo directivo, según corresponda, tanto propietarios como suplentes, estén o no en funciones; los empleados y funcionarios de la institución; los comisarios propietarios o suplentes, estén o no en funciones; los auditores externos de la institución; los miembros del comité técnico del fideicomiso respectivo; los ascendientes o descendientes en primer grado o cónyuges de las personas citadas, las sociedades en cuyas asambleas tengan mayoría dichas personas o las mismas instituciones, asimismo aquellas personas que el Banco de México determine mediante disposiciones de carácter general, y ................................................................

Administrar fincas rústicas, a menos que hayan recibido la administración para distribuir el patrimonio entre herederos, legatarios, asociados o acreedores, o para pagar una obligación o para garantizar su cumplimiento con el valor de la misma finca o de sus productos, y sin que en estos casos la administración exceda del plazo de dos años, salvo los casos de fideicomisos a la producción o fideicomisos de garantía....................

Cualquier pacto contrario a lo dispuesto en los incisos anteriores, será nulo."..................

Asimismo, en cumplimiento a lo dispuesto por el Numeral 5.5 de la Circular 1/2005 publicada por el Banco de México en el Diario Oficial de la Federación, el 23 de junio de 2005, el Fiduciario hace constar que explicó en forma inequívoca a las partes del

25

CONFIDENTIAL

DANSKE_0016035

26

presente Fideicomiso, y en especial al Fideicomitente, el valor y consecuencias legales del Numeral 6 de la Circular 1/2005 sobre las prohibiciones a las que está sujeto el Fiduciario. Para dichos efectos se transcribe a continuación el Numeral 6 de la Circular 1/2005 de Banco de México: ....................................................................................

"6.1..En la celebración de fideicomisos, las Instituciones Fiduciarias tendrán prohibido lo siguiente:...........................................................................................................

Cargar al patrimonio fideicomitido precios distintos a los pactados al concertar la operación de que se trate;.........................................................................................

Garantizar la percepción de rendimientos o precios por los fondos cuya inversión se les encomiende, y ...............................................................................................

Realizar operaciones en condiciones y términos contrarios a sus políticas internas y a las sanas prácticas financieras.............................................................................

6.2 Las Instituciones Fiduciarias no podrán celebrar operaciones con valores, títulos de crédito o cualquier otro instrumento financiero, que no cumplan con las especificaciones que se hayan pactado en el contrato de fideicomiso correspondiente. .........................

6.3 Las Instituciones Fiduciarias no podrán llevar a cabo tipos de Fideicomiso que noestén autorizadas a celebrar de conformidad con las leyes y disposiciones que las regulan. ....................................................................................................

6.4 En ningún caso las Instituciones Fiduciarias podrán cubrir con cargo al patrimonio fideicomitido el pago de cualquier sanción que les sea impuesta a dichas Instituciones Fiduciarias por alguna autoridad. ...................................................................

6.5 .En los Fideicomiso de garantía, las Instituciones de Fianzas y las Sofoles no podrán recibir sino bienes o derechos que tengan por objeto garantizar las obligaciones de que se trate. ..............................................................................................

6.6 Las Instituciones Fiduciarias deberán observar lo dispuesto en los artículos 106 fracción XIX de la Ley de Instituciones de Crédito, 103 fracción IX de la Ley del Mercado de Valores, 62 fracción VI de la Ley General de Instituciones y Sociedades Mutualistas de Seguros y 60 fracción VI Bis de la Ley Federal de Instituciones de Fianzas, según corresponda a cada Institución." ......................................................................

**SÉPTIMA.- IMPUESTOS, COSTOS Y GASTOS.** .................................................

(a) Todos los impuestos, costos, gastos, honorarios y comisiones derivadas de la elaboración, firma y registro del presente CONTRATO DE FIDEICOMISO y en relación con cualquier modificación al mismo, así como aquellos derivados de cualquier acción, contrato, documento o notificación que se efectúe, se elabore, se celebre o que se lleve a cabo en términos del presente CONTRATO DE FIDEICOMISO, incluyendo, sin limitación alguna, los costos notariales y de registro, los honorarios razonables y gastos de los asesores jurídicos del FIDEICOMISARIO EN PRIMER LUGAR y del FIDUCIARIO, y todos y cada uno de los costos y gastos en los que el FIDEICOMISARIO EN PRIMER LUGAR y EL FIDUCIARIO hayan incurrido para el cumplimiento de sus respectivas obligaciones y en el ejercicio de sus respectivos





26

DANSKE_0016036



IGNACIO RAMÍREZ 1930
TELS. 122-01-20
122-97-11
122-24-60
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

27

COTEJADO

COTEJADO

derechos de conformidad con el presente CONTRATO DE FIDEICOMISO y con cualquier cierre, serán cubiertos, exclusivamente, por el FIDEICOMISARIO EN SEGUNDO LUGAR.............................................................................................

(b) En caso de que, por cualquier razón, el FIDEICOMISARIO EN PRIMER LUGAR pague, por cuenta del FIDEICOMISARIO EN SEGUNDO LUGAR, cualesquiera de dichos costos o gastos, el FIDEICOMISARIO EN SEGUNDO LUGAR conviene en rembolsar dichos costos y gastos al FIDEICOMISARIO EN PRIMER LUGAR, a solicitud de este último.............................................................................................

(c) .. En caso de que cualquier autoridad fiscal notifique o de alguna otra manera solicite, de parte del FIDUCIARIO, cualquier información y/o aclaración en relación con las actividades del FIDEICOMISO constituido en términos del presente CONTRATO DE FIDEICOMISO que pudiera considerarse sujeta a algún impuesto que el FIDUCIARIO, conforme a dicha solicitud de autoridad, deba retener y pagar en virtud del presente CONTRATO DE FIDEICOMISO, el FIDEICOMISARIO EN SEGUNDO LUGAR deberá, y en este acto se compromete a y acuerda, sacar en paz y a salvo al FIDUCIARIO, así como a proporcionar a este último la asistencia y fondos suficientes para el pago de cualesquiera cantidades relacionadas con los impuestos cuyo pago pudiera ser requerido al FIDUCIARIO en términos de la legislación aplicable. El FIDUCIARIO no será responsable de ninguna acción en relación con dichas retenciones y pagos y en la medida en que este último esté sujeto al pago de alguna multa o sea sancionado de cualquier otra forma el FIDEICOMISARIO EN SEGUNDO LUGAR acuerda y se compromete a rembolsarle, de inmediato, cualquier gasto o costo en el que el FIDUCIARIO hubiese incurrido en relación con dichas sanciones o multas; en el entendido, sin embargo, de que lo anterior no se aplicará a gastos o costos incurridos debido a negligencia, dolo o mala fe por parte del FIDUCIARIO. En relación con lo anterior, el FIDUCIARIO tendrá derecho a contratar asesores legales y fiscales que considere conveniente y a cobrarle al FIDEICOMISARIO EN SEGUNDO LUGAR los honorarios razonables de dichos asesores.............................................................................................

(d) Las partes acuerdan que la transferencia del INMUEBLE al fiduciario en términos de este contrato o de cualquier contrato de cesión no constituye ni constituirá una enajenación en términos de la fracción V, inciso a), del artículo 14 del Código Fiscal de la Federación, tampoco causará adicionalmente el impuesto sobre adquisición de inmuebles debido a que el FIDEICOMITENTE como FIDEICOMISARIO EN SEGUNDO LUGAR tiene el derecho de reversión respecto del INMUEBLE después de la terminación del FIDEICOMISO siempre que las OBLIGACIONES GARANTIZADAS se encuentren cubiertas en su totalidad de conformidad con el presente y con los DOCUMENTOS DE CRÉDITO.............................................................................................

--- OCTAVA.- HONORARIOS DEL FIDUCIARIO. .............................................................................................

Como contraprestación por sus servicios en términos del presente contrato, el FIDEICOMISARIO EN SEGUNDO LUGAR pagará al FIDUCIARIO, las cantidades

CONFIDENTIAL

DANSKE_0016037

28

establecidas en el documento adjunto al presente como Anexo "A". Las contraprestaciones al FIDUCIARIO deberán pagarse en Dólares o en Pesos, al tipo de cambio vigente en México y publicado por el Banco de México en el Diario Oficial de la Federación, en la fecha de pago. ..............................................................................

- - - NOVENA.- RESPONSABILIDAD LIMITADA DEL FIDUCIARIO..................

A fin de inducir al FIDUCIARIO a celebrar el presente FIDEICOMISO, el FIDEICOMITENTE y el FIDEICOMISARIO EN PRIMER LUGAR, expresamente acuerdan con el FIDUCIARIO lo siguiente:..................................................................

El FIDUCIARIO solamente estará obligado a actuar de buena fe y de acuerdo con las disposiciones expresas establecidas en el presente CONTRATO DE FIDEICOMISO y de conformidad con las instrucciones que por escrito le proporcione el FIDUCIARIO EN PRIMER LUGAR o, en la medida de lo establecido expresamente en el presente contrato, el FIDEICOMISARIO EN SEGUNDO LUGAR, según sea el caso, y mientras siga actuando de buena fe y de acuerdo a lo estipulado en este FIDEICOMISO no tendrá obligación alguna de verificar la autenticidad de dichas instrucciones o de la firma de la persona o personas que firmen dichas instrucciones;...............................................

El FIDUCIARIO no estará obligado a tener un mayor grado de cuidado en la conservación del PATRIMONIO FIDEICOMITIDO que el que tiene con sus propios bienes; .............................................................................................................................

El presente CONTRATO DE FIDEICOMISO expresamente establece todas las obligaciones del FIDUCIARIO. EL FIDUCIARIO no asume ninguna obligación implícita ni obligaciones derivadas directa o indirectamente, de contratos del FIDEICOMITENTE, del FIDEICOMISARIO EN SEGUNDO LUGAR, ni del FIDEICOMISARIO EN PRIMER LUGAR de los cuales no sea parte, incluyendo sin limitar respecto de los DOCUMENTOS DE CREDITO;...........................................................................................

El FIDUCIARIO será responsable, única y exclusivamente, de la pérdida y daño causado como consecuencia directa de su negligencia, dolo o mala fe respecto de todo lo relacionado con el cumplimiento de sus obligaciones en términos del presente CONTRATO DE FIDEICOMISO; ..............................................................................

El FIDEICOMISARIO EN SEGUNDO LUGAR conviene, sin limitación alguna, en defender, indemnizar y sacar en paz y a salvo al FIDUCIARIO, sus subsidiarias, afiliadas y partes relacionadas, así como a sus respectivos funcionarios, consejeros, delegados fiduciarios, empleados agentes y asesores, de cualesquiera reclamaciones, demandas, sanciones, procedimientos, multas, responsabilidades, transacciones, daños, costos o gastos de cualquier naturaleza, que sean o no de su conocimiento, que hayan o no sido previstos, contingentes o de cualquier otro tipo (incluyendo, sin limitación alguno, honorarios y gastos legales razonables) derivados de o en los que se haya incurrido en relación con el presente CONTRATO DE FIDEICOMISO, salvo cualquier responsabilidad que surja de la negligencia, dolo o mala fe del FIDUCIARIO....



28

DANSKE_0016038



IGNACIO RAMIREZ 1620
TELS. 122-91 20
122-97 17
125-24-48
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

29

El FIDEICOMISARIO EN SEGUNDO LUGAR será responsable del pago de todos los impuestos correspondientes al PATRIMONIO FIDEICOMITIDO y defenderá, indemnizará y sacará en paz y a salvo al FIDUCIARIO del pago de cualesquiera cantidades a las que el FIDUCIARIO se encuentre obligado en virtud de dichos impuestos correspondientes al PATRIMONIO FIDEICOMITIDO. Las responsabilidades del FIDEICOMISARIO EN SEGUNDO LUGAR establecidas en el inciso (e) anterior, así como en el presente inciso (f) sobrevivirán y continuarán vigentes, aún después de la terminación del presente CONTRATO DE FIDEICOMISO o de la renuncia del FIDUCIARIO hasta en tanto sean exigibles por cualquier autoridad fiscal........................

El FIDUCIARIO en ningún caso será responsable, ni directa ni indirectamente, de la validez, valor o ejecutividad de los DOCUMENTOS DE CRÉDITO, ni de cualesquier otros convenios, documentos o instrucciones relacionadas con los mismos; ...................

El FIDEICOMITENTE, el FIDEICOMISARIO EN SEGUNDO LUGAR y el FIDEICOMISARIO EN PRIMER LUGAR acuerdan y reconocen que el FIDUCIARIO no tendrá responsabilidad (i) en caso de que el PATRIMONIO FIDEICOMITIDO o cualquier parte del mismo sea expropiado, embargado o confiscado; o (ii) por cualquier incumplimiento de sus obligaciones por causas o circunstancias fuera de su control;.......

El FIDUCIARIO no será responsable de actos u omisiones del FIDEICOMITENTE, del FIDEICOMISARIO EN SEGUNDO LUGAR, del FIDEICOMISARIO EN PRIMER LUGAR, ni de ningún tercero que impidan o dificulten el cumplimiento de los objetos del FIDEICOMISO; y................................

El FIDEICOMITENTE, el FIDEICOMISARIO EN SEGUNDO LUGAR y el FIDEICOMISARIO EN PRIMER LUGAR reconocen que el FIDUCIARIO no conoce ni se requiere que conozca el contenido de los DOCUMENTOS DE CRÉDITO para poder cumplir con sus obligaciones en términos del presente CONTRATO DE FIDEICOMISO.

Ninguna disposición del presente CONTRATO DE FIDEICOMISO liberará al FIDUCIARIO de la responsabilidad derivada de su propia negligencia, omisión negligente o dolo. ...............

El FIDUCIARIO reconoce que no venderá ni transferirá la totalidad ni parte del PATRIMONIO FIDEICOMITIDO salvo por lo expresamente previsto en el CONTRATO DE FIDEICOMISO o expresamente permitido por el FIDEICOMISARIO EN PRIMER LUGAR y por el FIDEICOMISARIO EN SEGUNDO LUGAR actuando conjuntamente. El FIDUCIARIO no estará facultado para vender ninguna parte del PATRIMONIO FIDEICOMITIDO ni para obtener dinero con el fin de pagar sus honorarios ni cantidades que se le adeuden sin el previo consentimiento por parte del FIDEICOMISARIO EN PRIMER LUGAR y, previo a la recepción por parte del FIDUCIARIO de la NOTIFICACIÓN DE INCUMPLIMIENTO, sin el consentimiento del FIDEICOMISARIO EN SEGUNDO LUGAR, y cualquier derecho a favor del FIDUCIARIO para recibir dinero en términos del presente CONTRATO DE FIDEICOMISO estará, salvo lo previsto en la Cláusula Décima Segunda, inciso 2.(b), subordinado al derecho que tiene el

29

CONFIDENTIAL

DANSKE_0016039

30

FIDEICOMISARIO EN PRIMER LUGAR de que se le pague la totalidad de cualquier cantidad que se le adeude en términos de los DOCUMENTOS DE CRÉDITO. ................

El FIDUCIARIO deberá actuar de inmediato al recibir instrucciones de parte del FIDEICOMISARIO EN PRIMER LUGAR, tal y como se establece en este CONTRATO DE FIDEICOMISO, incluyendo sin limitación alguna, cualquier instrucción que le haya sido proporcionada por parte del FIDEICOMISARIO EN PRIMER LUGAR, de conformidad con los términos del CONTRATO DE FIDEICOMISO, después de la entrega de cualquier NOTIFICACIÓN DE INCUMPLIMIENTO, sin haber consultado u obtenido el consentimiento de parte del FIDEICOMISARIO EN SEGUNDO LUGAR. El FIDUCIARIO será responsable de cualquier daño que se cause al FIDEICOMISARIO EN PRIMER LUGAR por no dar adecuado cumplimiento a sus instrucciones conforme a lo previsto en este CONTRATO DE FIDEICOMISO ................................................

**DÉCIMA.- RENUNCIA Y SUSTITUCIÓN DEL FIDUCIARIO.** .............................

(a) El FIDUCIARIO podrá ser removido en cualquier momento por el FIDEICOMISARIO EN PRIMER LUGAR y por el FIDEICOMISARIO EN SEGUNDO LUGAR actuando conjuntamente, siempre y cuando el FIDUCIARIO sea notificado por escrito con por lo menos treinta (30) días naturales de anticipación a la fecha en que dicha remoción deba surtir efectos, y siempre y cuando dentro de dicho periodo de treinta días, el FIDEICOMISARIO EN PRIMER LUGAR y el FIDEICOMISARIO EN SEGUNDO LUGAR designen a un sustituto y que dicho sustituto acepte su nombramiento como FIDUCIARIO en términos del presente contrato; previendo sin embargo que, después de la entrega de la NOTIFICACIÓN DE INCUMPLIMIENTO, el consentimiento del FIDEICOMISARIO EN SEGUNDO LUGAR no será requerido para remover o nombrar al FIDUCIARIO sustituto . ........................................................................

(b) El FIDUCIARIO únicamente podrá renunciar a su nombramiento en el caso mencionado en el Artículo 391 de la Ley General de Títulos y Operaciones de Crédito, siempre y cuando este último otorgue al FIDEICOMISARIO EN PRIMER LUGAR y al FIDEICOMISARIO EN SEGUNDO LUGAR notificación por escrito sobre su intención de renunciar, con por lo menos sesenta (60) días naturales de anticipación y en el entendido de que el FIDUCIARIO no será liberado de su cargo hasta que se haya nombrado un sustituto de conformidad con lo previsto en el inciso (a) anterior y que dicho sustituto haya aceptado por escrito dicha designación. ..........................................

(c) Cualquier FIDUCIARIO sustituto tendrá los mismos derechos y obligaciones que el FIDUCIARIO en términos del presente contrato y será considerado como "FIDUCIARIO" para todos los efectos a que haya lugar respecto del presente CONTRATO DE FIDEICOMISO. ..............................................

(d) En caso de que el FIDUCIARIO deje de actuar como tal de conformidad con la presente Cláusula DÉCIMA, el FIDUCIARIO deberá elaborar reportes contables, así como toda la demás información que sea necesaria en relación con el PATRIMONIO FIDEICOMITIDO y entregarlos tanto al FIDEICOMISARIO EN PRIMER LUGAR como al



30

DANSKE_0016040



IGNACIO RAMÍREZ
TELS. 12 2-91-20
12 2-97-17
126 14-40
FAX 126

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

31

LA PAZ, B.C.S.

FIDEICOMISARIO EN SEGUNDO LUGAR con, por lo menos, treinta (30) días de anticipación a la fecha en que su remoción o renuncia surta efectos. ...............................

(e) Todos los costos y gastos relacionados con la remoción o el nombramiento del FIDUCIARIO sustituto deberán ser pagados por el FIDEICOMISARIO EN SEGUNDO LUGAR...............................

**DÉCIMA PRIMERA.- GARANTÍAS ADICIONALES; PODER IRREVOCABLE A FAVOR DEL FIDUCIARIO**...............................

El FIDEICOMISARIO EN SEGUNDO LUGAR deberá, en cualquier momento y de tiempo en tiempo, a su exclusivo costo, de inmediato celebrar y entregar todos aquellos documentos adicionales, así como tomar todas aquellas acciones adicionales que sean necesarias o deseables, o aquellas que el FIDEICOMISARIO EN PRIMER LUGAR y/o el FIDUCIARIO le soliciten, a fin de (i) perfeccionar, proteger y mantener cualquier transmisión hecha o que se pretenda hacer y/o cualquier garantía otorgada o que se pretenda otorgar en términos del presente CONTRATO DE FIDEICOMISO; (ii) permitir que el FIDUCIARIO otorgue una hipoteca a favor del FIDEICOMISARIO EN PRIMER LUGAR sobre el INMUEBLE tal como se establece en los DOCUMENTOS DE CRÉDITO y (iii) facultar al FIDEICOMISARIO EN PRIMER LUGAR y al FIDUCIARIO para ejercitar y ejecutar sus derechos y recursos derivados del presente instrumento respecto del PATRIMONIO FIDEICOMITIDO o cualquier parte del mismo, incluyendo el llevar a cabo o causar que se tomen cualesquiera acciones y/o iniciar todos y cualesquier procedimientos que sean necesarios o convenientes a fin de que el FIDUCIARIO (en términos de, y de conformidad con las instrucciones que por escrito dadas por el FIDEICOMISARIO EN PRIMER LUGAR) lleve a cabo la ejecución y venta extrajudicial PATRIMONIO FIDEICOMITIDO (o de parte del mismo) de conformidad con el procedimiento establecido en el presente documento.......................................

Como medio para cumplir con las obligaciones del FIDEICOMISARIO EN SEGUNDO LUGAR establecidas en el inciso (a) de la presente Cláusula, el FIDEICOMISARIO EN SEGUNDO LUGAR en este acto otorga a favor del FIDUCIARIO (para ser ejercido, directamente por el FIDUCIARIO y/o a través de sustitución del mismo a cualquiera de sus delegados fiduciarios o a cualquier otra persona que haya sido designada por el FIDEICOMISARIO EN PRIMER LUGAR para dichos efectos) un poder especial irrevocable, tan amplio como la legislación aplicable lo permita, a fin de que el FIDUCIARIO pueda, en nombre y representación del FIDEICOMISARIO EN SEGUNDO LUGAR, celebrar y entregar todos los documentos y tomar todas las acciones adicionales que sean necesarias o deseables o aquellas que el FIDEICOMISARIO EN PRIMER LUGAR y/o el FIDUCIARIO soliciten, a fin de (i) perfeccionar, proteger y conservar cualquier transmisión que se haga o se pretenda hacer y/o que se otorgue o se pretenda otorgar de conformidad con el presente CONTRATO DE FIDEICOMISO; y (ii) facultar al FIDEICOMISARIO EN PRIMER LUGAR y la FIDUCIARIA para ejercer y ejecutar sus derechos y recursos en términos con el



31

32

presente CONTRATO DE FIDEICOMISO y/o de la legislación aplicable, en relación con el PATRIMONIO FIDEICOMITIDO o con cualquier parte del mismo, así como para llevar a cabo o hacer que se lleven a cabo cualesquiera acciones y/o iniciar todos y cada uno de los procedimientos judiciales o extrajudiciales que sean necesarios o convenientes a fin de que el FIDUCIARIO pueda llevar a cabo la ejecución y la venta extrajudicial del PATRIMONIO FIDEICOMITIDO (o de cualquier parte del mismo) de conformidad con el procedimiento establecido en el presente instrumento. Adicionalmente, y con respecto al procedimiento para la venta extrajudicial y distribución del PATRIMONIO FIDEICOMITIDO establecido en la Cláusula DECIMA SEGUNDA, el FIDUCIARIO estará facultado para efectuar, en representación del FIDEICOMITENTE y del FIDEICOMISARIO EN SEGUNDO LUGAR(y) las mismas declaraciones y garantías hechas por el FIDEICOMITENTE y por el FIDEICOMISARIO EN SEGUNDO LUGAR en relación a la propiedad sobre el PATRIMONIO FIDEICOMITIDO (o parte del mismo), así como con respecto a la responsabilidad del FIDEICOMITENTE o del FIDEICOMISARIO EN SEGUNDO LUGAR en relación con el saneamiento para el caso de evicción de conformidad con la Cláusula DÉCIMA SÉPTIMA; y (z) cualesquiera otras declaraciones y garantías (distintas a aquellas establecidas en el inciso (y) anterior) hechas por el FIDEICOMITENTE y por el FIDEICOMISARIO EN SEGUNDO LUGAR en relación con el PATRIMONIO FIDEICOMITIDO (o con cualquier parte del mismo), de conformidad con el presente CONTRATO DE FIDEICOMISO, y con los DOCUMENTOS DE CRÉDITO. El FIDEICOMITENTE y el FIDEICOMISARIO EN SEGUNDO LUGAR reconocen y acuerdan que los poderes especiales irrevocables otorgados a favor del FIDUCIARIO en términos de la presente Cláusula se otorgan como medio para cumplir con las obligaciones específicamente identificadas y asumidas por el FIDEICOMITENTE y el FIDEICOMISARIO EN SEGUNDO LUGAR, y por lo tanto, son irrevocables en términos del artículo 2596 del Código Civil Federal, y sus correlativos en los Códigos Civiles para los demás Estados de la República Mexicana y para el Distrito Federal. .......
CLÁUSULA ESPECIAL ...................................................................................
**VENTA EXTRAJUDICIAL Y DISTRIBUCIÓN DEL PATRIMONIO FIDEICOMITIDO........**
DÉCIMA SEGUNDA.-  VENTA EXTRAJUDICIAL Y DISTRIBUCIÓN DEL PATRIMONIO FIDEICOMITIDO. ..........................................................................................
En términos del artículo 83 de la Ley de Instituciones de Crédito y del artículo 403 de la Ley General de Títulos y Operaciones de Crédito, las partes del presente FIDEICOMISO en este acto, expresa e irrevocablemente, acuerdan el siguiente procedimiento de ejecución de la garantía sobre el PATRIMONIO FIDEICOMITIDO creada mediante el presente CONTRATO DE FIDEICOMISO: ........................................................
(a) El FIDEICOMISARIO EN PRIMER LUGAR notificará por escrito al FIDUCIARIO la NOTIFICACION DE INCUMPLIMIENTO y la ORDEN DE LIQUIDACIÓN. ......................
(b) Una vez que el FIDUCIARIO reciba la NOTIFICACIÓN DE INCUMPLIMIENTO, seguida por una ORDEN DE LIQUIDACIÓN, el FIDUCIARIO procederá a la distribución





32

DANSKE_0016042



IGNACIO RAMIREZ
TELS. 122-11-50
122-17-13
125-11-55
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

33



y/o venta extrajudicial, de todos o parte de los bienes y/o derechos que integran el PATRIMONIO FIDEICOMITIDO de conformidad con el procedimiento de la presente Cláusula. ........................

(c) El FIDUCIARIO notificará al FIDEICOMISARIO EN SEGUNDO LUGAR (con copia al FIDEICOMISARIO EN PRIMER LUGAR) que ha recibido del FIDEICOMISARIO EN PRIMER LUGAR una NOTIFICACION DE INCUMPLIMIENTO seguida de una ORDEN DE LIQUIDACIÓN, adjuntándole copia de los documentos recibidos, por lo que procederá a la ejecución de la garantía ("NOTIFICACION DE VENTA"). ........................

La NOTIFICACIÓN DE VENTA será notificada al FIDEICOMISARIO EN SEGUNDO LUGAR tan pronto como sea posible, pero en ningún caso después de dos días hábiles inmediatamente posteriores a la fecha en la que el FIDUCIARIO reciba la NOTIFICACION DE INCUMPLIMIENTO y la ORDEN DE LIQUIDACIÓN. ........................

(d) El FIDEICOMISARIO EN SEGUNDO LUGAR contará con un periodo de 5 (cinco) días hábiles (el "PERIODO DE SANEAMIENTO"), contados a partir de la fecha en que se considere que el FIDEICOMISARIO EN SEGUNDO LUGAR recibió la NOTIFICACIÓN DE VENTA en términos del inciso inmediato siguiente, para (i) subsanar y/o entregar evidencia de cumplimiento respecto de las OBLIGACIONES GARANTIZADAS que se señalan como incumplidas y descritas en la, NOTIFICACION DE INCUMPLIMIENTO y ORDEN DE LIQUIDACIÓN y para proporcionar al FIDEICOMISARIO EN PRIMER LUGAR pruebas documentales irrefutables (con copia al FIDUCIARIO) de que el incumplimiento ha sido subsanado dentro del periodo establecido para hacerlo y/o que se ha cumplido, dentro del plazo requerido para ello, con las obligaciones que causaron dicho incumplimiento; y/o (ii) proporcionar al FIDEICOMISARIO EN PRIMER LUGAR (con copia al FIDUCIARIO) pruebas documentales irrefutables de la prórroga o novación de las OBLIGACIONES GARANTIZADAS objeto del incumplimiento en cuestión (dicha notificación se denomina "NOTIFICACIÓN DE SANEAMIENTO"). En caso de que el FIDEICOMISARIO EN PRIMER LUGAR no esté de acuerdo con las pruebas documentales irrefutables, lo notificará al FIDUCIARIO, quien deberá continuar con la venta extrajudicial como lo instruya el FIDEICOMISARIO EN PRIMER LUGAR. ........................

(e) Cada ORDEN DE LIQUIDACIÓN, NOTIFICACIÓN DE VENTA, NOTIFICACIÓN DE SANEAMIENTO, NOTIFICACIÓN DE SUSPENSIÓN (tal y como se define más adelante) y NOTIFICACIÓN DE CONTINUACIÓN (tal y como se define más adelante) deberá efectuarse por escrito a las partes correspondientes, ya sea (i) si son relacionadas con partes cuyo domicilio se encuentre en México, a las direcciones señaladas en la Cláusula Décima Quinta y en presencia de algún Notario Público o de algún Corredor Público autorizado en México o a través de reconocimiento de parte del receptor de dicha notificación o bien (ii) si son relacionadas con partes cuyo domicilio se encuentre fuera de México, de conformidad con la Cláusula DÉCIMA QUINTA siguiente. ........................

33

CONFIDENTIAL

DANSKE_0016043

34

(f) El FIDEICOMISARIO EN PRIMER LUGAR estará facultado para, en cualquier momento y mediante notificación por escrito al FIDUCIARIO (cada una de dichas notificaciones se denomina "NOTIFICACIÓN DE SUSPENSIÓN") instruir al FIDUCIARIO para que suspenda, total o parcialmente y en la fecha y hora que este último reciba dicha NOTIFICACIÓN DE SUSPENSIÓN, el procedimiento para la venta extrajudicial y/o distribución, en todo o parte del PATRIMONIO FIDEICOMITIDO iniciado en términos de la ORDEN DE LIQUIDACIÓN respectiva, en el entendido de que dicha suspensión dejará de surtir efectos, total o parcialmente, a partir de la fecha en que el FIDUCIARIO reciba por escrito, de parte del FIDEICOMISARIO EN PRIMER LUGAR, una o más notificaciones (cada una de dichas notificaciones se denominará "NOTIFICACIÓN DE CONTINUACIÓN") mediante las cuales se instruya al FIDUCIARIO a continuar, total o parcialmente con el procedimiento de venta extrajudicial y/o distribución del PATRIMONIO FIDEICOMITIDO que había sido suspendido. ...................

Una vez que el FIDUCIARIO reciba la NOTIFICACIÓN DE CONTINUACIÓN respectiva, este último deberá continuar, inmediatamente, con el procedimiento de venta extrajudicial y/o distribución en todo o en parte del PATRIMONIO FIDEICOMITIDO de conformidad con la presente Cláusula y la NOTIFICACIÓN DE CONTINUACIÓN............

(g) En caso de que el FIDEICOMISARIO EN SEGUNDO LUGAR no subsane el incumplimiento descrito en la NOTIFICACIÓN DE VENTA correspondiente dentro del PERIODO DE SANEAMIENTO y en la forma descrita en el inciso (d) anterior, el FIDUCIARIO deberá, tal y como lo instruya el FIDEICOMISARIO EN PRIMER LUGAR, proceder inmediatamente con la enajenación y/o distribución extrajudicial de la totalidad o de una parte de los bienes y/o derechos que integran el PATRIMONIO FIDEICOMITIDO según hayan sido especificados por el FIDEICOMISARIO EN PRIMER LUGAR en la ORDEN DE LIQUIDACION (en lo sucesivo, cualesquiera activos y/o derechos designados como tales se denominarán, los "BIENES DESIGNADOS"); de conformidad con lo siguiente: .......................................

1 Con respecto a los BIENES DESIGNADOS, el FIDUCIARIO deberá, en caso de así haber sido instruido por el FIDEICOMISARIO EN PRIMER LUGAR a través de la ORDEN DE LIQUIDACIÓN correspondiente, y actuando con base en la asesoría de los abogados designados por parte del FIDEICOMISARIO EN PRIMER LUGAR, llevar a cabo el siguiente procedimiento: .......................................

(a) ..El FIDUCIARIO deberá obtener, de parte de alguna institución de crédito autorizada y de buena reputación en México (distinta del FIDUCIARIO o de cualquiera de sus Afiliadas), o de parte de algún corredor público debidamente autorizado en México, que haya sido indicado por escrito por el FIDEICOMISARIO EN PRIMER LUGAR, un avalúo de los BIENES DESIGNADOS, el cual servirá como precio base para la venta de los mismos (el "PRECIO BASE"). .......................................

(b) El FIDEICOMISARIO EN PRIMER LUGAR entregará al FIDUCIARIO, a su entera discreción, un aviso por escrito ("NOTIFICACIÓN DE POSIBLES ADQUIRENTES") que



34

CONFIDENTIAL

DANSKE_0016044



LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PÚBLICA NUM.7

LA PAZ, B.C.S.

35

contenga una lista con los nombres, direcciones, números de teléfono y de fax de las personas identificadas por parte del FIDEICOMISARIO EN PRIMER LUGAR, como POSIBLES ADQUIRENTES de los BIENES DESIGNADOS, los cuales pueden incluir cualquier afiliada del FIDEICOMISARIO EN PRIMER LUGAR (en conjunto, los "POSIBLES ADQUIRENTES").   No obstante lo previsto en este CONTRATO DE FIDEICOMISO, al FIDEICOMISARIO EN SEGUNDO LUGAR o a cualquiera de sus afiliadas se les deberá permitir actuar como POSIBLES ADQUIRENTES. Dentro de los 5 (cinco) días hábiles siguientes a la recepción, por parte del FIDUCIARIO, de la NOTIFICACIÓN DE POSIBLES ADQUIRENTES,  pero en cualquier caso, por lo menos 15 (quince) días hábiles antes de la fecha establecida para la subasta privada, el FIDUCIARIO convocará en forma privada (cada una, una "CONVOCATORIA") a los POSIBLES ADQUIRENTES para invitarlos a la venta extrajudicial de los BIENES DESIGNADOS, utilizando la forma que le proporcione el FIDEICOMISARIO EN PRIMER LUGAR. En la CONVOCATORIA se les indicará el lugar y la hora en que se llevará a cabo la subasta, el PRECIO BASE, y se les indicará que la subasta es el resultado de un procedimiento de ejecución del PATRIMONIO FIDEICOMITIDO en términos del presente CONTRATO DE FIDEICOMISO. ...................................................

Las partes en este acto acuerdan que el FIDEICOMISARIO EN PRIMER LUGAR (en forma directa o a través de las personas designadas por este último) tendrá, en todo momento, un derecho de preferencia para adquirir los BIENES DESIGNADOS (o cualquier parte de ellos).   Cada Convocatoria revelará el derecho de preferencia del FIDEICOMISARIO EN PRIMER LUGAR en los términos que aquí se establecen, salvo que este último expresamente y por escrito renuncie a él, a través de notificación por escrito al FIDUCIARIO.  Para fines del presente numeral 1 (B), el término "derecho de preferencia" significa que en cualquier momento antes de, o durante la subasta privada, el FIDEICOMISARIO EN PRIMER LUGAR (en forma directa, o a través de la(s) persona o personas que este último haya indicado) tendrá el derecho de adquirir de parte del FIDUCIARIO los BIENES DESIGNADOS (o parte de los mismos), a un precio ("EL PRECIO APLICABLE") que sea (i) equivalente al PRECIO BASE (o, en caso de que el FIDEICOMISARIO EN PRIMER LUGAR ejercite su derecho de preferencia para adquirir únicamente parte de los BIENES DESIGNADOS, un porcentaje del PRECIO BASE equivalente a la porción de los BIENES DESIGNADOS a ser adquiridos por el FIDEICOMISARIO EN PRIMER LUGAR), en caso de que dicho derecho sea ejercitado antes de la subasta respectiva; o (ii) por lo menos equivalente a la oferta más alta, en caso de existir, hecha por cualquier persona que participe en la subasta, en caso de que dicho derecho sea ejercitado durante la subasta respectiva, en cualquier caso, menos (y) cualquier cantidad, intereses, comisiones, contraprestaciones, impuesto sobre la renta, retenciones, Cuota Adicional (Additional Fee), impuestos sobre adquisición de bienes inmuebles o cualesquiera otros impuestos o cantidades adeudadas o pendientes de pago al FIDEICOMISARIO EN PRIMER LUGAR en relación con las OBLIGACIONES

35

CONFIDENTIAL

DANSKE_0016045

36

GARANTIZADAS y los DOCUMENTOS DE CRÉDITO; y (z) todos los gastos y costos en los que el FIDEICOMISARIO EN PRIMER LUGAR haya incurrido, y demás cantidades que se adeuden a este último en relación con el presente contrato y con la venta y distribución del PATRIMONIO FIDEICOMITIDO, en ambos casos, certificada por el FIDEICOMISARIO EN PRIMER LUGAR (dicha cantidad resultante, la "CANTIDAD PENDIENTE DE PAGO"). El derecho de preferencia conferido al FIDEICOMISARIO EN PRIMER LUGAR en términos del presente contrato podrá ser ejercitado por este último (en forma directa o a través de la(s) persona o personas que éste haya designado) en cualquier momento antes de o durante la subasta privada respectiva, mediante notificación por escrito al FIDUCIARIO ("NOTIFICACIÓN DE EJERCICIO") (con copia al FIDEICOMISARIO EN SEGUNDO LUGAR). En caso de que el FIDEICOMISARIO EN PRIMER LUGAR (en forma directa, o a través de la(s) persona o personas que este último haya designado) ejercite su derecho de preferencia mediante la entrega de la NOTIFICACIÓN DE EJERCICIO y (i) la CANTIDAD PENDIENTE DE PAGO sea superior al PRECIO APLICABLE, los BIENES DESIGNADOS correspondientes serán transmitidos al FIDEICOMISARIO EN PRIMER LUGAR (o a las personas que éste designe), sin que medie pago alguno por parte de este último; en el entendido, sin embargo, de que en caso de que los BIENES DESGINGADOS que se encuentren identificados en la NOTIFICACIÓN DE VENTA correspondan a la totalidad del PATRIMONIO FIDEICOMITIDO y que la CANTIDAD PENDIENTE DE PAGO respecto de la totalidad del PATRIMONIO FIDEICOMITIDO sea superior al PRECIO APLICABLE, sujeto a que el FIDUCIARIO reciba el PERMISO DE SRE, tal y como se define más adelante, y a solicitud del FIDEICOMISARIO EN PRIMER LUGAR, el FIDUCIARIO modificará el CONTRATO DE FIDEICOMISO a fin de remover al FIDEICOMISARIO EN SEGUNDO LUGAR como parte del mismo y de incluir las disposiciones que se prevén en la Cláusula DÉCIMA OCTAVA, en cuyo caso, el FIDEICOMISARIO EN PRIMER LUGAR se convertirá en el único fideicomisario del FIDEICOMISO y tendrá el derecho absoluto a instruir al FIDUCIARIO en términos de la legislación aplicable y del PERMISO SRE que se obtenga, en su caso. Independientemente de lo anterior, cualquier saldo existente de la CANTIDAD PENDIENTE DE PAGO continuará siendo exigible y pagadero de conformidad con el numeral 2 siguiente con los DOCUMENTOS DEL CRÉDITO; y (ii) si la CANTIDAD PENDIENTE DE PAGO no es superior al PRECIO APLICABLE, los BIENES DESIGNADOS que correspondan se transferirán al al FIDEICOMISARIO EN PRIMER LUGAR (o a la persona o personas designadas por este último) dejando de formar parte del PATRIMONIO FIDEICOMITIDO y, en consecuencia, de este FIDEICOMISO, en el entendido de que dicho FIDEICOMISARIO EN PRIMER LUGAR deberá entregar al FIDUCIARIO la diferencia entre el PRECIO APLICABLE y la CANTIDAD PENDIENTE DE PAGO, a fin que este último la aplique en términos de la Cláusula DÉCIMA SEGUNDA (a) (2) siguiente...........





36

DANSKE_0016046



IGNACIO RAMÍREZ 1930.
TELS. 122-91-20
122-97-17
125-24-40
FAX 1282568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

37

(c) Adicionalmente, la CONVOCATORIA deberá establecer que cualquier POSIBLE ADQUIRENTE deberá depositar ante el FIDUCIARIO una cantidad equivalente, por lo menos, al 10% (diez por ciento) del PRECIO BASE, a través de certificados de depósito emitidos por alguna institución de crédito autorizada para hacerlo, por lo menos 2 (dos) días hábiles antes de la fecha en que la subasta privada tenga lugar (el "DEPÓSITO"). Ninguna oferta será admitida ni considerada como válida salvo que el Depósito haya sido efectuado en los términos y dentro del plazo establecido anteriormente. El FIDUCIARIO efectuará la venta, mediante la enajenación de los BIENES DESIGNADOS al POSIBLE ADQUIRENTE (quien de entre los demás POSIBLES ADQUIRENTES haya efectuado la oferta más alta, la cual en cualquier caso, deberá ser igual o mayor que el PRECIO BASE (el "OFERENTE MÁS ALTO"), según lo certifique el FIDEICOMISARIO EN PRIMER LUGAR, sujeto al derecho de preferencia del FIDEICOMISARIO EN PRIMER LUGAR. ..................................................................................................

(d) El OFERENTE MÁS ALTO deberá pagar, de inmediato, mediante transferencia electrónica de fondos que se acrediten inmediatamente en la cuenta que le indique el FIDEICOMISARIO EN PRIMER LUGAR, el precio de su oferta. En caso de que la enajenación de los BIENES DESIGNADOS no se perfeccione por causas atribuibles al OFERENTE MÁS ALTO, este último perderá, en beneficio del FIDEICOMISO, el Depósito entregado al FIDUCIARIO. El presente inciso (D) deberá transcribirse en la CONVOCATORIA. ................................................................................................

(e) En caso de que el FIDUCIARIO no pueda vender los BIENES DESIGNADOS en la primera subasta, publicará una segunda CONVOCATORIA a fin de llevar a cabo una segunda subasta en la que la oferta mínima aceptable será el PRECIO BASE menos el 10% (diez por ciento). En caso de que la venta el FIDUCIARIO no perfeccione la venta durante la segunda subasta, el PRECIO BASE deberá ser reducido, en cada subasta subsiguiente, en un 10% (diez por ciento) respecto del PRECIO BASE inmediatamente anterior hasta que los BIENES DESIGNADOS se vendan; siempre y cuando dicho precio nunca sea menor al 50% (cincuenta por ciento) del PRECIO BASE original. La segunda o subsecuentes CONVOCATORIAS respecto de los BIENES DESIGNADOS estarán sujetas a las disposiciones de los incisos (B), (C), (D) y (E) del presente numeral 1. ........................................................................................................................

2. .....En cualquier caso, las partes del presente contrato expresamente acuerdan que los ingresos de la venta de LOS BIENES DESIGNADOS, serán aplicados en el siguiente orden, de conformidad con las instrucciones que por escrito otorgue el FIDEICOMISARIO EN PRIMER LUGAR, sin necesidad de ningún requerimiento judicial adicional, resolución judicial ni instrucción de ninguna naturaleza:................................

(a) Primero, al pago de cualesquiera impuestos, obligaciones, cargas, gravámenes o retenciones causadas o impuestas en relación con el presente CONTRATO DE FIDEICOMISO o con el procedimiento de ejecución del PATRIMONIO FIDEICOMITIDO, salvo por lo que se refiere al impuesto sobre adquisición de inmuebles, en caso de

37

CONFIDENTIAL

DANSKE_0016047

38

existir, que cualquier comprador (distinto al FIDEICOMISARIO EN PRIMER LUGAR o cualquier persona designada por este último para dichos efectos) deba pagar en términos de la legislación aplicable, respecto de los derechos fideicomisarios o de los BIENES DESIGNADOS, mismo que deberá ser pagado por dicho comprador de conformidad con la legislación aplicable;..........................................................................

(b) Segundo, el saldo, en caso de existir, se aplicará al pago de los costos y gastos en los que haya incurrido, así como las contraprestaciones y gastos por los servicios que haya prestado el FIDUCIARIO y las cantidades adeudadas a éste en relación con el presente CONTRATO DE FIDEICOMISO, o a aquellos costos o gastos cubiertos por el FIDUCIARIO; ...............................................................................................................

(c) Tercero, el saldo, en caso de existir, se aplicará al pago de los costos y gastos en los que se haya incurrido (incluyendo, sin limitación alguna las cuotas y comisiones, pero sin duplicar los costos y gastos señalados en el inciso (ii)  anterior) en relación con la venta o transferencia de otro tipo del PATRIMONIO FIDEICOMITIDO;..............................

(d) Cuarto, el saldo, en caso de existir, se entregará al FIDEICOMISARIO EN PRIMER LUGAR para el pago (en Dólares) de los costos y gastos (incluyendo, sin limitación alguna, cuotas, honorarios legales, comisiones a banqueros de inversión y demás comisiones) en los que haya incurrido el FIDEICOMISARIO EN PRIMER LUGAR y al pago de intereses moratorios, intereses ordinarios, deuda principal, Cuota Adicional y cualesquiera otras cantidades (en ese orden) que se adeuden al FIDEICOMISARIO EN PRIMER LUGAR en términos de las OBLIGACIONES GARANTIZADAS o cualesquiera otras cantidades que sean exigibles en términos de los DOCUMENTOS DE CRÉDITO que hayan sido certificadas por el FIEDICOMISARIO EN PRIMER LUGAR; y.....................

(e) Finalmente, el saldo, en caso de existir, se entregará al FIDEICOMISARIO EN SEGUNDO LUGAR. ........................................................................................................

3.El FIDEICOMISARIO EN SEGUNDO LUGAR en este acto conviene en cooperar totalmente con el FIDUCIARIO y el FIDEICOMISARIO EN PRIMER LUGAR para llevar a cabo ejecución y venta extrajudicial del PATRIMONIO FIDEICOMITIDO (o de parte del mismo) de conformidad con el procedimiento establecido en el presente documento. El FIDEICOMISARIO EN SEGUNDO LUGAR, adicionalmente acuerda llevar a cabo o causar que se lleven a cabo todas las acciones que sean necesarias o convenientes a fin de apresurar dicha venta o ventas de la totalidad o parte del PATRIMONIO FIDEICOMITIDO, tal y como se establece en el presente documento, y de celebrar y entregar los documentos correspondientes, así como a tomar aquellas otras acciones que el FIDUCIARIO (en términos de las instrucciones que por escrito le efectúe el FIDEICOMISARIO EN PRIMER LUGAR) y/o el FIDEICOMISARIO EN PRIMER LUGAR consideren necesarias o aconsejables a fin de que dicha venta se lleve a cabo de conformidad con la legislación aplicable.........................................................................

4.Debido a que parte de las OBLIGACIONES GARANTIZADAS consisten en obligaciones monetarias en Dólares, a fin de pagar dichas OBLIGACIONES





38

IGNACIO RAMIREZ 4330
TELS. 122-81-20
122-97-17
125-24-40
FAX 1252588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM. 7
LA PAZ, B.C.S.

39

GARANTIZADAS, (i) las utilidades de la venta extrajudicial del PATRIMONIO FIDEICOMITIDO o de parte del mismo que se reciban en Pesos, y/o (ii) todas las cantidades en Pesos depositadas en el FIDEICOMISO, serán (y) cambiadas a Dólares por parte del FIDUCIARIO usando la tasa de cambio ofrecida por el FIDUCIARIO al público, y dichas cantidades convertidas a Dólares serán aplicadas por el FIDUCIARIO, hasta la cantidad en Dólares que haya arrojado dicha conversión, al pago de las OBLIGACIONES GARANTIZADAS y demás obligaciones en Dólares, en caso de existir, en el orden establecido en el numeral 2 anterior. .....................

5 Todos y cada uno de los costos y gastos (incluyendo, sin limitación alguna cuotas y comisiones) en los que el FIDUCIARIO requiera incurrir en relación con la venta extrajudicial y distribución del PATRIMONIO FIDEICOMITIDO, tal y como se establece en la presente Cláusula DECIMA SEGUNDA serán pagados por adelantado por parte del FIDEICOMISARIO EN SEGUNDO LUGAR al FIDUCIARIO o, en la medida en que el FIDEICOMISARIO EN SEGUNDO LUGAR no lo haga, podrán ser pagados por adelantado por parte del FIDEICOMISARIO EN PRIMER LUGAR o este último podrá efectuar arreglos que resulten satisfactorios al FIDUCIARIO para el pago de dichos costos y gastos; en el entendido de que cualesquiera cantidades que el FIDEICOMISARIO EN PRIMER LUGAR pague por adelantado al FIDUCIARIO en relación con el presente numeral deberán, de la misma forma, estar garantizadas con el PATRIMONIO FIDEICOMITIDO de conformidad con el presente CONTRATO y, por lo tanto, formarán parte de las OBLIGACIONES GARANTIZADAS, para todos efectos legales a que haya lugar. .....................

De conformidad con el artículo 403 de la Ley General de Títulos y Operaciones de Crédito, las partes de este FIDEICOMISO, incluyendo al FIDUCIARIO, a DIAMANTE CABO, actuando como FIDEICOMITENTE y FIDEICOMISARIO EN SEGUNDO LUGAR, y el FIDEICOMISARIO EN PRIMER LUGAR en este acto reconocen y firman de conformidad el texto contenido en la presente Cláusula Décima Segunda (Cláusula Especial) adicionalmente a su firma al final del presente CONTRATO DE FIDEICOMISO, y confirman en este acto su consentimiento expreso e instrucción irrevocable al FIDUCIARIO para llevar a cabo el procedimiento para la venta extrajudicial y distribución del PATRIMONIO FIDEICOMITIDO en la forma establecida en la presente Cláusula Décima Segunda.....................

DIAMANTE CABO SAN LUCAS, S. DE RL. DE C.V., en su carácter de Fideicomitente ...

DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V., en su carácter de FIDEICOMISARIO EN SEGUNDO LUGAR.....................

LEHMAN BROTHERS HOLDINGS INC., en su carácter de FIDEICOMISARIO EN PRIMER LUGAR .....................

BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, en su carácter de FIDUCIARIO.....................

DÉCIMA TERCERA.- CESIONES.....................

CONFIDENTIAL

DANSKE_0016049

40

(a) El FIDEICOMISARIO EN PRIMER LUGAR podrá ceder o transferir, total o parcialmente, sus derechos derivados del presente contrato a cualquier tercero, ya sea persona física o sociedad, sin requerir el previo consentimiento de parte del FIDUCIARIO ni del FIDEICOMISARIO EN SEGUNDO LUGAR para hacerlo. El FIDEICOMISARIO EN PRIMER LUGAR conviene en notificar por escrito y lo antes posible al FIDUCIARIO y al FIDEICOMISARIO EN SEGUNDO LUGAR, respecto de cualquier cesión o transmisión, así como a proporcionarles el nombre completo y demás datos de dicho cesionario..........................................................................................

(b) Los derechos y obligaciones del FIDEICOMISARIO EN SEGUNDO LUGAR .............

(c) ya sea como FIDEICOMITENTE o como FIDEICOMISARIO EN SEGUNDO LUGAR) y del FIDUCIARIO que se deriven del presente CONTRATO no podrán cederse ni transferirse sin el previo consentimiento por escrito por parte del FIDEICOMISARIO EN PRIMER LUGAR. ........................................................................................

**DÉCIMA CUARTA.- MODIFICACIONES.** .....................................................

Salvo por lo expresamente estipulado en este FIDEICOMISO, el presente CONTRATO DE FIDEICOMISO no podrá modificarse, reformarse ni ser cambiado, salvo mediante escrito debidamente firmado por las partes en el que se exprese dicho propósito y celebrado por el FIDEICOMISARIO EN SEGUNDO LUGAR, el FIDUCIARIO, y el FIDEICOMISARIO EN PRIMER LUGAR. ..........................................................

**DÉCIMA QUINTA.- NOTIFICACIONES Y AVISOS.** ...........................................

Salvo por los avisos o notificaciones que requieran ser entregados ante Notario Público o Corredor Público autorizado en México, en términos de la cláusula DECIMA SEGUNDA, todos los demás avisos, notificaciones, demandas y solicitudes que se efectúen o que se requieran efectuar, en relación o en términos del presente CONTRATO DE FIDEICOMISO deberán hacerse por escrito. Se considerará que los avisos fueron debidamente efectuados en caso de que sean entregados: (a) personalmente con acuse de recibo; (b) a través de servicio de mensajería con acuse de recibo; (c) a través de facsímil seguido de la entrega personal o a través de mensajería con acuse de recibo. Todos los avisos deberán entregarse a las siguientes direcciones y números de facsímil, y surtirán efectos una vez que hayan sido recibidos o una vez que su recepción haya sido negada, tal y como se establezca en el acuse o en el recibo de dicho servicio de mensajería:...........................................................

**Al FIDEICOMITENTE Y FIDEICOMISARIO EN SEGUNDO LUGAR:** ...........................

Kenneth Jowdy...............................................................................................

Camino del Mar 323 ........................................................................................

Col. El Pedregal C.P. 23450...............................................................................

Cabo San Lucas, Los Cabos, BCS ......................................................................

Con copia por fax a:.........................................................................................

Bill Najam,...................................................................................................

2 Dogwood Drive,............................................................................................





40

CONFIDENTIAL

DANSKE_0016050

IGNACIO RAMIREZ 199?
TELS. 122-91-20
122-97-17
126-24-40
FAX 1282598

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

41

Danduby CT 06811 .............................................................

Fax: 203-205-0016 ..........................................................

Con copia por fax a: ........................................................

▇▇▇▇▇▇▇▇▇▇▇▇▇

Baker & Hostetler, Esq. ....................................................

666 Fifth Avenue ............................................................

New York, New York 10103 ..................................................

Al FIDUCIARIO: .............................................................

Héctor Loyo y/o Samantha Barquera ........................................

Paseo de las Palmas No 405 piso 14 .......................................

Lomas de Chapultepec, ....................................................

C.P. 11000, México D.F. ..................................................

Telefono 55409330 ........................................................

Fax: 52831620 ............................................................

AL FIDEICOMISARIO EN PRIMER LUGAR: .......................................

LEHMAN BROTHERS HOLDINGS INC. ............................................

Dirección: ...............................................................

399 Park Avenue ..........................................................

New York, NY 10022 .......................................................

At'n: Massod Bhatti ......................................................

Teléfono: 212-526-6220 ...................................................

Facsímile: 212-520-0130 ..................................................

HERRICK, FRINSTEIN LLP ...................................................

2 Park Avenue ............................................................

New York, NY 10016 .......................................................

At'n: Paul Shapses, Esq. .................................................

Facsímile: 212-545-3443 ..................................................

El FIDEICOMISARIO EN SEGUNDO LUGAR y el FIDEICOMISARIO EN PRIMER LUGAR (i) en este acto designan a las personas cuyos nombres y firmas aparecen en el documento adjunto al presente como Anexo "B" y Anexo "C", respectivamente, como personas autorizadas para girar instrucciones al FIDUCIARIO para todo lo relacionado con y, de conformidad con los términos establecidos en el presente CONTRATO, y se autoriza en este acto al FIDUCIARIO para actuar de conformidad con cualesquiera instrucciones que reciba de cualquiera de dichas personas de conformidad con los términos expresamente establecidos en el presente CONTRATO DE FIDEICOMISO, y (ii) en este acto liberan al FIDUCIARIO de cualquier responsabilidad que pudiese resultar de la transmisión de dichas instrucciones. Lo anterior, en el entendido de que el FIDUCIARIO no estará obligado a verificar la autenticidad de dichas instrucciones o comunicaciones, ni a verificar la identidad del emisor ni de la parte que confirme, por lo tanto, las partes expresamente aceptan en este acto, estar obligadas por los términos

41

42

de dichas instrucciones o comunicaciones que pudiesen enviarse en su nombre y que hayan sido aceptadas por el FIDUCIARIO, tal y como aquí se establece; considerando sin embargo, que el FIDUCIARIO deberá entregar al FIDEICOMISARIO EN PRIMER LUGAR, antes de tomar cualquier acción bajo este Contrato de Fideicomiso, todas las notificaciones recibidas del FIDEICOMISARIO EN SEGUNDO LUGAR............................

Independientemente de lo anterior, el FIDUCIARIO tendrá facultades discrecionales, en caso de sospecha o causa razonable, para actuar o dejar de actuar y/o para solicitar confirmación de cualquier instrucción que reciba de las partes, de conformidad con el presente CONTRATO, en el entendido de que el FIDUCIARIO deberá notificar por escrito tal circunstancia a la parte que haya enviado dicha instrucción y solicitar una confirmación de la misma.................................................................................

En caso de que alguna instrucción no se encuentre firmada y/o no pueda ser confirmada por el FIDUCIARIO, tal y como se contempla anteriormente, las partes en este acto expresamente instruyen a este último a no actuar en relación con dichas instrucciones...

- - - DÉCIMA SEXTA.- ANEXOS Y ENCABEZADOS. Todos los documentos que se adjuntan al presente contrato o a los que se haga referencia en el mismo, en este acto se incorporan a, y se considerarán como parte del presente CONTRATO DE FIDEICOMISO. Los encabezados del presente CONTRATO DE FIDEICOMISO existen únicamente con fines de conveniencia y de ninguna manera definirán, limitarán ni describirán el alcance ni intención (ni de ninguna otra forma afectarán la interpretación) de ninguna disposición del presente CONTRATO......................................................

- - - DÉCIMA SÉPTIMA.- SANEAMIENTO EN CASO DE EVICCIÓN..........................

(a) El FIDEICOMITENTE será y permanecerá siendo, sin limitación alguna, el único responsable frente al FIDUCIARIO, al FIDEICOMISARIO EN PRIMER LUGAR y frente a cualquier tercero que adquiera alguna participación en el PATRIMONIO FIDEICOMITIDO (o parte del mismo) en términos del procedimiento de venta extrajudicial y distribución del PATRIMONIO FIDEICOMITIDO establecido en la Cláusula Décima Segunda, del saneamiento para el caso de evicción respecto del PATRIMONIO FIDEICOMITIDO o de cualquier parte del mismo, en términos de la legislación Mexicana. ...............................................................................

(b) El FIDEICOMITENTE en este acto autoriza al FIDUCIARIO y al FIDEICOMISARIO EN PRIMER LUGAR para ceder o de cualquier otra forma transferir los derechos derivados de la presente Cláusula DÉCIMA SÉPTIMA a cualquier tercero que adquiera alguna participación en el PATRIMONIO FIDEICOMITIDO o cualquier parte del mismo en términos del procedimiento de venta extrajudicial y distribución del PATRIMONIO FIDEICOMITIDO establecido en la Cláusula Décima Segunda o en cualquier otro lado. ..

- - - DÉCIMA OCTAVA.- PERMISO ser....................................................................

De conformidad con las instrucciones que reciba del FIDEICOMISARIO EN PRIMER LUGAR, sin necesidad de obtener el consentimiento del FIDEICOMISARIO EN SEGUNDO LUGAR, y sin importar que se haya presentado algún incumplimiento en



42

DANSKE_0016052



IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
125-24-40.
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

43

términos de los DOCUMENTOS DE CRÉDITO, el FIDUCIARIO presentará ante la SRE, en nombre del FIDEICOMISO, una solicitud en términos de los artículos 11 y 12 de la LIE para que se autorice al FIDEICOMISARIO EN PRIMER LUGAR a utilizar y aprovechar el INMUEBLE (el "PERMISO SRE"). El FIDEICOMISARIO EN SEGUNDO LUGAR firmará todos los documentos que solicite el FIDUCIARIO para fines del PERMISO SRE y proporcionará, inmediatamente, toda la información que este último requiera para presentar dicha solicitud. El FIDEICOMISARIO EN SEGUNDO LUGAR cubrirá todos los costos relacionados con el PERMISO SRE, incluyendo honorarios legales tanto del FIDUCIARIO como del FIDEICOMISARIO EN SEGUNDO LUGAR. En este acto, las partes acuerdan que, inmediatamente después de que el FIDUCIARIO haya obtenido el PERMISO SRE, el presente CONTRATO DE FIDEICOMISO se modificará de la siguiente forma:..................................................................

a) El objeto del FIDEICOMISO incluirá el derecho del FIDEICOMISARIO EN PRIMER LUGAR de utilizar y desarrollar el INMUEBLE después de que se haya notificado alguna NOTIFICACIÓN DE INCUMPLIMIENTO en los términos establecidos en el presente instrumento, o de ser el único fideicomisario del FIDEICOMISO, tal y como se establece en la Cláusula DECIMO SEGUNDA anterior. ..............................

b) El Fideicomiso debidamente modificado incluirá las disposiciones que conforme a derecho correspondan respecto del PERMISO SRE.............................................

c) Todas las demás disposiciones que el FIDUCIARIO EN PRIMER LUGAR considere necesarias a fin de reflejar efectivamente su capacidad para utilizar y desarrollar el INMUEBLE después de que se haya entregado alguna NOTIFICACIÓN DE INCUMPLIMIENTO, en términos del presente documento, o para ser el único beneficiario del presente FIDEICOMISO, en términos de la Cláusula DÉCIMA SEGUNDA anterior; y cualesquiera de las condiciones establecidas por la SRE. .............

Los siguientes supuestos también serán considerados como incumplimiento de las OBLIGACIONES GARANTIZADAS y de los DOCUMENTOS DE CREDITO, salvo que el FIDEICOMISARIO EN PRIMER LUGAR renuncie expresamente y por escrito a considerarlos como eventos de incumplimiento (esto último, en los casos de los inciso (b) y (c) siguientes):..............................................................................

El incumplimiento por parte del FIDEICOMISARIO EN SEGUNDO LUGAR, de las obligaciones a su cargo en términos de la presente Cláusula; ...........................................

La falta de otorgamiento del PERMISO SER en caso de que éste sea requerido conforme a la LIE; y ...............................................................................

El incumplimiento en la obtención del PERMISO SRE dentro del plazo de 60 días contados a partir de la fecha en que el FIDEICOMISARIO EN PRIMER LUGAR haya instruido al FIDUCIARIO respecto de la presentación de la solicitud del PERMISO SRE correspondiente en nombre del FIDEICOMISO...................................................................

- - - **DÉCIMA NOVENA.- REGISTRO DEL FIDEICOMISO**.................................

43

DANSKE_0016053

44

Al FIDEICOMISARIO EN SEGUNDO LUGAR, a través de Notario Público o de Corredor Público, o a través de cualquier persona facultada para hacerlo, le estará confiada la presentación del presente CONTRATO DE FIDEICOMISO para su registro ante el Registro Público de la Propiedad y del Comercio, del municipio de [San José del Cabo, Baja California Sur, dentro de los 3 (tres) días hábiles contados a partir de la fecha de su firma, previo pago de los derechos correspondientes. ........................................

--- **VIGÉSIMA.- INDEPENDENCIA DE LAS CLAÚSULAS** ........................................

El presente CONTRATO podrá celebrarse en varios tantos y será considerado como original, en el entendido de que todos ellos constituirán un sólo documento. En caso de que alguna disposición del presente CONTRATO DE FIDEICOMISO sea considerada en ciertas circunstancias como ilegal o parcialmente inaplicable, dicha disposición será modificada solamente en el caso de que sea necesario a fin de que se vuelva válida o aplicable en virtud de las circunstancias, o será eliminada del presente CONTRATO DE FIDEICOMISO, según lo requieran las circunstancias, y el mismo será interpretado y celebrado como si dichas disposiciones hubiesen sido incluidas en el presente documento con el alcance y aplicación de la modificación o como si nunca hubiese sido incluida, según sea el caso. ........................................



--- **VIGÉSIMO PRIMERA. CONTRIBUCIONES ADICIONALES.** ........................................

De conformidad con las disposiciones del artículo 401 de la Ley de Títulos y Operaciones de Crédito, el valor de la pérdida, daño o de los riesgos respecto del PATRIMONIO FIDEICOMITIDO estará a cargo del FIDEICOMISARIO EN SEGUNDO LUGAR, quien deberá permitir a las demás partes revisarlo a fin de confirmar su estado general de conservación. ........................................

--- **VIGÉSIMO SEGUNDA.- LEGISLACIÓN APLICABLE.** ........................................

Para todo lo relacionado con la interpretación y cumplimiento del presente CONTRATO DE FIDEICOMISO, las partes expresamente se sujetan a las Leyes y Tribunales del Distrito Federal o del Estado de Baja California Sur en México, a la elección de la parte que inicie el procedimiento, y renuncian expresamente a cualquier otra jurisdicción que pudiera corresponderles, en razón de sus domicilios presentes o futuros, o por cualquier otra razón. ........................................

--- **VIGÉSIMO TERCERA. ASUNTOS LABORALES.** ........................................

Ni el FIDUCIARIO ni la FIDEICOMISARIO EN PRIMER LUGAR ni sus representantes, delegados fiduciarios, empleados apoderados y demás personal, tendrán, bajo ninguna circunstancia relación laboral alguna o responsabilidad con aquellas personas o entidades contratadas por el FIDEICOMISARIO EN SEGUNDO LUGAR. EL FIDEICOMISARIO EN SEGUNDO LUGAR conviene, sin limitación alguna, en indemnizar y sacar en paz y a salvo al FIDUCIARIO y al FIDEICOMISARIO EN PRIMER LUGAR y a sus respectivas subsidiarias, afiliadas y partes relacionadas, así como a sus respectivos funcionarios, consejeros, empleados, agentes o asesores, de cualesquiera reclamaciones, demandas, sanciones, procedimientos, multas, pasivos, acuerdos,



44

DANSKE_0016054



IGNACIO RAMIREZ
TELS. 122-91-2
122-97-1
125-24-40
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

45

daños, costos o gastos de cualquier naturaleza, que sean o no de su conocimiento, contingentes o de cualquier otra naturaleza (incluyendo, sin limitación alguna, costos y gastos legales razonables) que surjan de o en los que se incurran en relación con la presente Cláusula. ...............................................................................................................

— — — — — — — — **P E R S O N A L I D A D E S** ...............................................

— — — 1.- DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. ..............................

— — — El señor **KENNETH ABOUD JOWDY**, acredita su personalidad y la legal existencia de su representada la cual manifiesta que no le ha sido revocada, ni modificada, con escritura pública 64,865 sesenta y cuatro mil ochocientos sesenta y cinco, del volumen 1,025 mil veinticinco, de fecha veintitrés de febrero del año dos mil seis, e inscrita en el Registro Público de la Propiedad y del Comercio de San José del Cabo, bajo el Folio Mercantil Electrónico: 9065  4  nueve cero seis cinco  cuatro, RFC/No. DCS060223-D40, Primer Inscripción, Boleta de Pago No.: 275471 dos siete cinco cuatro siete uno, de fecha veintisiete de febrero del año dos mil seis, otorgada ante la de del Suscrito Notario  Adscrito a la Notaria Pública Número Siete, del Estado, en la cual se hace constar la CONSTITUCION de la Sociedad Mercantil denominada "DIAMANTE CABO SAN LUCAS", S. DE R.L. DE C.V., de la cual en lo conducente copio los siguiente: "…..PRIMERA.- La sociedad se denominará "DIAMANTE CABO SAN LUCAS"; ésta denominación irá seguida de las palabras SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE.- SEGUNDA.- La sociedad tendrá por objeto la realización de todo tipo de actividades relacionadas con el desarrollo inmobiliario dentro de los límites permitidos por la Ley de Inversión Extranjera, por lo que además de las actividades que se mencionan en este artículo, la sociedad desarrollará campos de golf privados de dieciocho hoyos, unidades habitacionales, casitas y demás infraestructura relacionada. En general la sociedad podrá realizar todo tipo de actividades relacionadas con lo anterior, por lo que enunciativa mas no limitativamente la sociedad podrá.- A).- Dentro de los limites permitidos por la Ley de Inversión Extranjera, realizar todo tipo de actividades relacionadas con el desarrollo inmobiliario con fines turísticos. B).- Dentro de los limites permitidos por la Ley de Inversión Extranjera, establecer, adquirir, construir, arrendar, operar y poseer en cualquier forma permitida por la Ley tiendas, almacenes, oficinas, establecimientos, bodegas y otros establecimientos necesarios o convenientes para los objetos de la sociedad.- C).- Adquirir o poseer por cualquier título, usar dar o tomar en arrendamiento, administrar, vender o disponer en cualquier forma, de todos los bienes muebles o inmuebles que fueren necesarios o convenientes para la realización de los objetos de la sociedad.- D).-  Supervisar, planear o contratar, directamente o a través de terceros, toda clase de construcciones, edificaciones y urbanizaciones, así como adquirir y enajenar por cualquier título materiales de construcción.- E).- Prestar y recibir toda clase de servicios técnicos, administrativos; de supervisión promoción y en general cualesquiera clase de servicios requeridos por negociaciones comerciales o industriales, en México o en el extranjero; F).- Promover, organizar, administrar y

45

CONFIDENTIAL

DANSKE_0016055

46

supervisar toda clase de sociedades mercantiles o civiles. G).- Adquirir acciones, participaciones, partes sociales o títulos y obligaciones de toda clase de empresas o sociedades y formar parte de ellas.- H).- Registrar, obtener, adquirir, usar o disponer de toda clase de marcas, nombres comerciales, certificados de inversión, patentes, derechos de autos, opciones y preferencias, procesos y concesiones o licencias, ya sea en México o en el extranjero.- I).- Obtener y otorgar prestamos con o sin garantía, emitir, aceptar, avalar, endosar, y en general suscribir todo título de créditos, así como garantizar en cualquier forma las obligaciones de terceros.- J).- En general la celebración de toda clase de actos y contratos que se relacionen directa o indirectamente con la sociedad o más fines entre los que se encuentran la adquisición por cualquier forma de bienes muebles o inmuebles propios para el desarrollo de su objeto social. La sociedad solo podrá realizar actividades propias de su objeto, sin que de ninguna manera pueda llevar a cabo actividades reservadas de manera exclusiva al Estado Mexicano. TERCERA.- El domicilio de la sociedad será: La Ciudad de Cabo San Lucas, Baja California Sur, sin perjuicio de establecer oficinas o sucursales en otras partes del Estado de la República o del Extranjero y señalar domicilios convencionales en los contratos que celebre. CUARTA.- La duración de la sociedad será de NOVENTA Y NUEVE AÑOS, que se contarán a partir de la fecha de firma de esta escritura. QUINTA.- CLAUSULA DE EXTRANJERIA:- La Sociedad será de Nacionalidad Mexicana, con cláusula de ADMISION DE EXTRANJEROS. Pudiendo participar en su Capital Social, Inversionistas Extranjeros o Sociedades sin Cláusula de Exclusión de Extranjeros; participación de Capital que será admitida en cualquier proporción.- "Todo extranjero que en el acto de la constitución o en cualquier tiempo ulterior, adquiera un interés o participación social en la sociedad, se considerará por ese simple hecho como mexicano, respecto de uno y otra, y se entenderá que conviene en no invocar la protección de su Gobierno, bajo la pena en caso de faltar a su convenio, de perder dicho interés o participación en beneficio de la Nación Mexicana". SEXTA.- El capital de la sociedad será variable, iniciándose con un mínimo sin derecho a retiro de: $ 10,000.00 (DIEZ MIL PESOS, 00/100 MONEDA NACIONAL) siendo el máximo ilimitado. SEPTIMA.- El capital social será integramente suscrito y pagado, y se encuentra representado en partes sociales de $ 500.00 ( quinientos pesos, 00/100 moneda nacional) cada una de ellas, las que siempre serán de dicha cantidad o de un múltiplo de la misma. OCTAVA.- Los socios fundadores aportan a la sociedad la cantidad de $ 500.00 (quinientos pesos, 00/100 moneda nacional), de la siguiente manera:................. El Gerente Administrador de la Sociedad manifiesta bajo protesta de decir verdad que en la Caja de Caudales se encuentra depositado integramente el importe del valor de las acciones.- NOVENA.- La sociedad será administrada por un GERENTE ADMINISTRADOR o un GERENTE GENERAL, el cual tendrá las mas amplias facultades de un apoderado GENERAL PARA PLEITOS Y COBRANZAS, ACTOS DE ADMINISTRACIÓN y ACTOS DE DOMINIO, con todas las facultades generales y las



46

CONFIDENTIAL

DANSKE_0016056



LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

47

especiales que requieran cláusula especial conforme a la Ley, en los términos de los TRES primeros párrafos del artículo (2,554) dos mil quinientos cincuenta y cuatro y las especiales del (2,587) dos mil quinientos ochenta y siete, ambos del Código Civil para el Distrito Federal y su correlativo el Artículos (2468) dos mil cuatrocientos sesenta y ocho del Código Civil para el Estado de Baja California Sur, y sus correlativos en las demás Entidades Federativas.- El apoderado podrá concurrir ante toda clase de Autoridades sean de la Federación, de los Estados, Municipios, Delegaciones y ya sean estas Legislativas, Ejecutivas, Judiciales, del Trabajo, Fiscales o de cualquiera otra naturaleza. Haciendo toda clase de gestiones y solicitudes cualesquiera que ellas sean; para presentar denuncias, querellas y acusaciones coadyuvar con el Agente del Ministerio Público y constituirse en parte civil, para desistirse de toda clase de acciones, procedimientos, incidentes, recursos, denuncias, querellas y acusaciones e incluso del juicio de amparo, para transigir y comprometer en árbitros y arbitradores; para absolver y articular posiciones, para recusar con causa o sin ella para recibir pagos y para cualesquiera otras sin reserva ni limitación alguna, pudiendo concurrir ante toda clase de personas físicas o morales, privadas u oficiales, haciendo toda clase de gestiones y solicitudes . Además del poder general para pleitos y cobranzas que se otorga, de acuerdo con los Artículos 689, 690, 692 y 695 de la Ley Federal del Trabajo, se designa al apoderado como representante legal de la empresa, con facultades para ocurrir en nombre de ésta a las Audiencias de Conciliación que se celebren ante la Junta Local de Conciliación, ante la Junta Federal de Conciliación, ante la Junta Especial que corresponda, bien sea de la Federal o de la Local de Conciliación y Arbitraje o ante cualesquiera autoridad del trabajo, con facultades para actos de administración en el área Laboral y para celebrar los convenios que puedan derivarse de ella. PODER PARA ACTOS DE ADMINISTRACIÓN, a fin de que el apoderado pueda celebrar o hacer celebrar, ejecutar o hacer ejecutar toda clase de hechos, actos, convenios y contratos de cualquiera naturaleza que ellos sean, otorgando toda clase de documentos privados e instrumentos públicos con facultades administrativas. PODER PARA SUSCRIBIR TITULOS DE CREDITO, a fin de que el apoderado pueda emitir, girar, suscribir, endosar, avalar o de cualquiera otra manera poner en circulación toda clase de títulos de crédito, en los términos del Artículo 9° Noveno de la Ley General de Títulos y Operaciones de Crédito.- PODER PARA EJERCER ACTOS DE DOMINIO, a fin de que el apoderado pueda enajenar, gravar, hipotecar o de cualquiera otra manera disponer de la posesión y dominio de bienes del mandante de cualquiera naturaleza que ellos sean, pudiendo firmar cuantos documentos privados o escrituras públicas en los términos, precios y demás condiciones que estime pertinentes el apoderado y en su caso negociar las cédulas recibir su importe y endosar o hacer efectivos los cheques representativos del pago.- FACULTADES PARA SUBSTITUIR EN TODO O EN PARTE EL PRESENTE MANDATO, reservándose el apoderado el ejercicio del mismo y poder nombrar apoderados, factores y empleados, fijándoles sus facultades, obligaciones,

47

48

remuneraciones y revocar las substituciones que hiciere. TRANSITORIAS: PRIMERA.-
Reunidos en primera Asamblea General de Accionistas, los socios, toman los siguientes
acuerdos: 1°.- La sociedad será administrada por un GRENTE ADMINISTRADOR.- 2°.-
Se designa como GERENTE ADMINISTRADOR al Señor KENNETH ABOUD JOWDY
quien en el cargo de sus funciones, tendrá las facultades que se establecen en la
Cláusula NOVENA de la presente escritura constitutiva, con la salvedad de que para el
desempeño de su actividad  deberá de obtener el permiso correspondiente que a su
juicio expida la Secretaria de Gobernación y de que en caso de violación al Reglamento
de la Ley General de Población se hará acreedor a las sanciones correspondientes.-
3°.- Se otorga al señor FERNANDO MANUEL GARCIA CAMPUZANO, un PODER
GENERAL PARA PLEITOS Y COBRANZAS, ACTOS DE ADMINISTRACION Y ACTOS
DE DOMINIO.....".................................................................................................................

- - -2.- **LEHMAN BROTHERS HOLDINGS INC.**, REPRESENTADA EN ESTE ACTO
POR EL SEÑOR ███████████████ **acredita**
**su personalidad** con la que comparece en este acto la cual manifiesta que no le ha
sido revocada ni modificada en forma alguna con el primer testimonio de la escritura
publica numero cinco mil ochocientos once, del libro noventa y cuatro, de fecha primero
de marzo del año dos mil seis, pasada antela fe del señor Licenciado Agustin Wallace
Hampton Gutierrez Katze, Notario Publico numero doscientos ocho del Distrito Federal,
en la cual consta la PROTOCOLIZACION DE PODER OTORGADO EN EL
EXTRANJERO, por el señor Masood Bhatti,  en su carácter de apoderado de la
empresa LEHMAN BROTHERS HOLDINGS, INC.,   a favor de los señores Roberto
Arena Reyes Retana, Alejandro Ortiz Prieto, ██████████
████████ y/o Marco Antonio Najera Martinez, otorgado ante Maribel Ruiz Notario
Publico del Estado de Nueva York, Estados Unidos de Norteamerica, el dia veintidos de
febrero del año dos mil seis, que junto con su traduccion al español y la apostilla a que
se refiere la convencion de la Haya del cinco de Octubre de mil novecientos sesenta y
uno...............................................................................................................................

- - -3.- **BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P.**
**MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA, EN SU CARÁCTER DE**
**FIDUCIARIO, REPRESENTADO EN ESTE ACTO POR EL SEÑOR HECTOR LOYO**
**URRETA** ........................................................................................................................

- - -El señor **HECTOR LOYO URRETA**, acredita su personalidad con la Escritura
pública número (50,242) cincuenta y dos mil doscientos cuarenta y dos, volumen (1,210)
mil doscientos diez, de fecha dieciocho de agosto del dos mil tres,  otorgada ante la fe
del licenciado ROBERTO NUÑEZ Y BANDERA, Notario Público numero Uno del Distrito
Federal en el cual se hace constar la Designación de Delegados Fiduciarios y
Otorgamiento de Poderes que hace BACNO J.P. MORGAN, SOCIEDAD ANÓNIA,
INSTITUCION DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, a favor
de los señores HECTOR LOYO URRETA Y GERMAN BRITO ALONSO, documento del



48

DANSKE_0016058

IGNACIO RAMIREZ
TELS. 122-9
122-5
125-4
FAX 125

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM. 7
LA PAZ, B.C.S.

49

COTEJADO

cual copio de sus partes lo conducente: *CLAUSULAS.- PRIMERA.- Se designan como Delegados Fiduciarios de BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, a los señores HECTOR LOYO URRETA y GERMAN BRITO ALONSO. SEGUNDA.- Por medio de este instrumento BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, representada por la Secretaria del Consejo de Administración, licenciada Carolina Machado Dufau, otorga a favor de los señores Héctor Loyo Urreta y Germán Brito Alonso, para que lo ejerciten conjunta o separadamente en su carácter de delegados fiduciarios, poder general con las facultades a que se refiere la Segunda Resolución de las Resoluciones de los Consejeros que se protocolizan, cuya acta ha sido transcrita en el inciso undécimo de los antecedentes de este instrumento y que se tienen por reproducidos como si se insertasen a la letra.* Documento que se encuentra inscrito en el Registro Público de Comercio de México, Distrito Federal, en el folio mercantil numero 195238, de fecha veintiocho de agosto del dos mil tres. Manifestando el licenciado HECTOR LOYO URRETA, que la personalidad con la que comparece no le ha sido revocada ni modificada en forma alguna. .................................................................

--- YO, EL NOTARIO, C E R T I F I C O: ...........................................................

- - - PRIMERO.- Que conozco a los comparecientes y los conceptúo con capacidad legal ...................................................................................................................

--- SEGUNDO.- Que por sus generales manifestaron ser mexicanos por nacimiento: El señor KENNETH ABOUD JOWDY, de 41 cuarenta y un años de edad, de nacionalidad estadounidense, originario de Connecticut, U.S.A., donde nació el dieciséis de julio de mil novecientos sesenta y cuatro, comerciante, soltero, con domicilio en Estados Unidos de Norteamérica, de paso por esta ciudad y acreditado su legal estancia en el País con el documento migratorio que se agrega por separado a la presente escritura: El señor ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ de 32 treinta y dos años de edad, de nacionalidad mexicana, originario de México, Distrito Federal, donde nació el seis de Diciembre de mil novecientos setenta y tres, licenciado en derecho, soltero, con domicilio en Homero numero 1554-1001 mil quinientos cincuenta y cuatro guión mil uno, colonia Roma de México, Distrito Federal y de paso en esta ciudad: El señor HECTOR LOYO URRETA, de 32 treinta y dos años de edad, de nacionalidad mexicana, nació en Jalapa, Veracruz el dos de noviembre de mil novecientos setenta y tres, casado, funcionario bancario, con domicilio en Palmas numero 405 cuatrocientos cinco, piso 14 catorce, colonia Lomas de Chapultepec, México, Distrito Federal, y de paso en esta ciudad: El señor FERNANDO MANUEL GARCIA CAMPUZANO, de nacionalidad mexicana, casado, Abogado, originario de Ensenada, Baja California Sur, donde nació el día doce de julio de mil novecientos sesenta y siete, con domicilio en Obregón mil doscientos ochenta y nueve, zona centro, Ensenada, Baja California, todos de paso por esta ciudad ............................................................................................................

50

- - - TERCERO.- Que respecto al pago del Impuesto Sobre la Renta y después de haber hecho las advertencias de Ley, manifestaron que se encuentran al corriente, sin acreditármelo ................................................................................................................

- - - CUARTO.- Que lo relacionado e inserto concuerda fielmente con sus originales que he tenido a la vista y devolví a los interesados................................................................

- - - QUINTO.- Advertidos los comparecientes de su derecho a leer o a que Yo, el Notario, les lea este instrumento, optaron por lo primero y realizado ello, manifestaron su conformidad, por lo que después de explicarles de su valor y fuerza legal, lo ratificaron y firmaron el día de su fecha. DOY FE................................................................

**KENNETH ABOUD JOWDY.-FIRMADO.-** ███████████████████████████
███████████ **FIRMADO.- HECTOR LOYO URRETA.- FIRMADO.-FERNANDO MANUEL GARCIA CAMPUZANO.- FIRMADO.** ................................................................
EN DIEZ DEL MES DE MARZO DEL AÑO DOS MIL SEIS, QUE SE FIRMO LA PRESENTE ACTA, LA AUTORIZO DEFINITIVAMENTE. DOY FE................................
LIC. JOSE ALBERTO CASTRO SALAZAR. FIRMADO. EL SELLO DE AUTORIZAR DEL NOTARIO................................................................................................................
- - - - - - - - - - - - ANEXO "A" SE AGREGA AL TESTIMONIO................................
- - - - - - - - - - - - - a n e x o "B"................................

10 de marzo de 2006 ................................................................................................
Banco J.P. Morgan, S.A., I.B.M.................................................................................
J.P. Morgan Grupo Financiero,................................................................................
Paseo de las Palmas No. 405, ................................................................................
Piso 14, Torre Óptima I ................................................................................................
Colonia Lomas de Chapultepec................................................................................
C.P. 11500, México, D.F ............................................................................................
Atención: División Fiduciaria ................................................................................
Re: Fideicomiso No. F/000321 ................................................................................

... El que suscribe Kenneth A. Jowdy, Gerente General de Diamante Cabo San Lucas, S. de R.L. de C.V. (la "Fideicomisaria en Segundo Lugar"), en relación con el Fideicomiso No. F/000321, mediante el cual Banco J.P. Morgan, S.A. Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria funge como Fiduciario (el "Fiduciario"), certifica que: (i) las personas cuyos nombres se listan a continuación (las Personas Autorizadas) se encuentran debidamente facultadas para indistintamente girar instrucciones en nombre y orden de la Fideicomisaria en Segundo Lugar de conformidad con los términos y condiciones del Contrato de Fideicomiso en referencia (i) vía Telefax/Facsímile; y/o (ii) por correo, mensajería o paquetería en carta original en papel membretado; (ii) la firma autógrafa que aparece en ésta certificación al lado de las Personas Autorizadas, es la firma con la que se ostentan; (iii) que las Personas Autorizadas están autorizadas para recibir llamadas telefónicas de confirmación de parte del Fiduciario para confirmar instrucciones, (iv) que el Fiduciario solamente deberá

50

CONFIDENTIAL

DANSKE_0016060

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

51

reconocer como válidas las instrucciones giradas por las Personas Autorizadas; y (v) que el Fiduciario quedará libre de cualquier responsabilidad siempre que siga conforme al Contrato de Fideicomiso cualquier instrucción girada por las Personas Autorizadas.

Nombre Firma Teléfono.................................................................................

Kenneth A. Jowdy ....................................................................................

Sin más por el momento, quedamos a sus órdenes. ...........................................

Atentamente, Por: Kenneth A. Jowdy. .............................................................

Cargo: Gerente General ..............................................................................

------------------------ Anexo "C" ---------------------------

10 de marzo de 2006 .................................................................................

Banco J.P. Morgan, S.A., I.B.M. ...................................................................

J.P. Morgan Grupo Financiero, ....................................................................

Paseo de las Palmas No. 405, .....................................................................

Piso 14, Torre Óptima I .............................................................................

Colonia Lomas de Chapultepec ....................................................................

C.P. 11500, México, D.F. ...........................................................................

Atención: División Fiduciaria ......................................................................

Re: .........................................................'Fideicomiso No. F/000321

El que suscribe ███████████████, representante de Lehman Brothers Holdings Inc. (la "Fideicomisaria en Primer Lugar"), en relación con el Fideicomiso No. F/000321, mediante el cual Banco J.P. Morgan, S.A. Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria funge como Fiduciario (el "Fiduciario"), certifica que: (i) las personas cuyos nombres se listan a continuación (las Personas Autorizadas) se encuentran debidamente facultadas para indistintamente girar instrucciones en nombre y orden de la Fideicomisaria en Primer Lugar de conformidad con los términos y condiciones del Contrato de Fideicomiso en referencia (i) vía Telefax/Facsímile; y/o (ii) por correo, mensajería o paquetería en carta original en papel membretado; (ii) la firma autógrafa que aparece en ésta certificación al lado de las Personas Autorizadas, es la firma con la que se ostentan; (iii) que las Personas Autorizadas están autorizadas para recibir llamadas telefónicas de confirmación de parte del Fiduciario para confirmar instrucciones, (iv) que el Fiduciario solamente deberá reconocer como válidas las instrucciones giradas por las Personas Autorizadas; y (v) que el Fiduciario quedará libre de cualquier responsabilidad siempre que siga conforme al Contrato de Fideicomiso cualquier instrucción girada por las Personas Autorizadas. ...

Nombre Firma Teléfono..............................................................................

Masood Bhatti  ......................................................................................

Sin más por el momento, quedamos a sus órdenes. ...........................................

Atentamente, ..........................................................................................

Por: Eduardo Pizarro Suárez Villalobos...........................................................

Cargo: Representante Legal. ........................................................................

51

CONFIDENTIAL

DANSKE_0016061

52

ES PRIMER TESTIMONIO EN SU ORDEN Y PRIMERO QUE SE EXPIDE PARA USO DE BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA, A TITULO DE FIDUCIARIO. VA VEINTISEIS HOJAS UTILES DEBIDAMENTE COTEJADAS, SELLADAS Y FIRMADAS............................................................................................................

LA PAZ, BAJA CALIFORNIA SUR, A DIEZ DIAS DES MES DE MARZO DEL AÑO DOS MIL SEIS. DOY FE ..................................................................................



52

CONFIDENTIAL

DANSKE_0016062