# EXHIBIT 12
# (Part 2 of 2)

- - - EN LA PAZ, BAJA CALIFORNIA SUR, MEXICO, A LOS **VEINTIDOS** DIAS DEL MES DE **MARZO** DEL AÑO DOS MIL SEIS, YO, EL **LIC. JOSE ALBERTO CASTRO SALAZAR**, NOTARIO ADSCRITO A LA NOTARIA NUMERO SIETE DEL ESTADO, CON EJERCICIO EN LOS MUNICIPIOS DE LA PAZ, LOS CABOS,   CUYO TITULAR ES EL **LICENCIADO HECTOR CASTRO CASTRO**, ACTUANDO DE CONFORMIDAD CON LO DISPUESTO POR EL ARTICULO (29) VEINTINUEVE DE LA LEY DEL NOTARIADO EN VIGOR, HAGO CONSTAR  Y  **C E R T I F I C O**: QUE LA PRESENTE ES COPIA FIEL Y EXACTA DE SU ORIGINAL,  LA  CUAL TUVE A LA VISTA, RECABANDOSE COPIA  DEL APENDICE AL QUE SE AGREGA CON LETRA "A" DE ESTA NOTARIA  A MI CARGO. DOY FE ...................................................

CONFIDENTIAL

DANSKE_0016063

Execution Copy

**DRAFT SUBJECT TO REVIEW FOR DISCUSSION PURPOSES ONLY. THE ACTUAL AGREEMENT HAS TO BE IN SPANISH, NOTARIZED AND REGISTERED.**

IRREVOCABLE GUARANTEE TRUST AGREEMENT WITH TRANSFER OF OWNERSHIP IDENTIFIED BY NUMBER F/00321 ("TRUST AGREEMENT" or "TRUST") EXECUTED BY AND AMONG DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V. ("DIAMANTE CABO"), REPRESENTED HEREIN BY KENNETH A. JOWDY (WHEN ACTING AS GRANTOR, THE "GRANTOR" AND WHEN ACTING AS BENEFICIARY OF THE TRUST, THE "SECOND PLACE BENEFICIARY", AS THE CONTEXT MAY REQUIRE); LEHMAN BROTHERS HOLDINGS, INC., REPRESENTED HEREIN BY ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ACTING AS FIRST PLACE BENEFICIARY (THE "FIRST PLACE BENEFICIARY"); AND BANCO J.P. MORGAN, S.A. INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, TRUST DEPARTMENT ACTING AS TRUSTEE, REPRESENTED HEREIN BY HECTOR LOYO UERETA (THE "TRUSTEE").

In this act Mr. Jowdy is assisted by Fernando Garcia as person of his trust as translator and Mr. Garcia accepts such appointment.

## BACKGROUND[1]

I. Diamante Cabo declares that:

---

[1] The Background translation is a summary of the actual Spanish document and is not a complete translation.

1

CONFIDENTIAL

DANSKE_0016064

a) By public deed number [ ] acquired from Alicia Ceseña Augnez the following tracts of land (herein after the "Tracts of Land")[**Notary inserted the legal description of the VIII Lots purchased by Diamante Cabo.**]

b) By public deed number [ ] acquired from Alicia Ceseña Augnez the following rights (hereinafter, the "Rights"):

b).1. Rights that Alicia Ceseña Augnez has under a trust agreement relating to the desalination plant created by Alicia Ceseña Augnez, Atilio Colli Villarino in favor of Organismo Operador Municipal de Agua Potable affecting Polygon III.

b).2. Rights that Alicia Ceseña Augnez and Atilio Colli Villarino have under a donation agreement with the municipality of Los Cabos affecting Polygon II.

b).3. Rights that Alicia Ceseña Augnez and Atilio Colli Villarino have under a voluntary easement affecting Polygon IV (the "Easement"). [**Notary inserted the legal description of the Easement**].

c) That the Tracts of Land and the Rights are free of liens, except for the Easement.

d) No property tax on the Tracts of Land is outstanding.

e) The notary hereby includes the appraisals to the Tracts of Land authorized by Los Cabos Surveys' Office.

f) that temporary filings relating to this transaction were made in the Public Registry.

II. The Trustee Declares that:

a. In compliance with resolution 1/2005 issued by the Mexican Federal Reserve (Banco de Mexico), the Trustee makes the parties aware of the

2

DANSKE_0016065

following sections which prohibit the Trustee from undertaking certain actions. **[Notary transcribes sections 382 and 394 of General Law of Credit Instruments and Operations; 106 and 118 of the Credit Institutions Law and resolution 1/2005 issued by the Mexican Federal Reserve (Banco de Mexico)]**

III. The parties declare that they have the legal authority to grant this instrument and that such authority has not been revoked nor limited.

Based on the foregoing, the parties make the following:

## DECLARATIONS

1. The FIRST PLACE BENEFICIARY has this day (the "CLOSING DATE") made a loan to DIAMANTE CABO in the principal amount of up to $125,000,000 (ONE HUNDRED TWENTY-FIVE MILLION) United States Dollars, with interest thereon (the "LOAN").

2. The LOAN is evidenced by a certain (i) loan agreement dated as of the CLOSING DATE between DIAMANTE CABO and the FIRST PLACE BENEFICIARY (THE "LOAN AGREEMENT"); (ii) promissory note dated as of the CLOSING DATE subscribed by DIAMANTE CABO the ("NOTE"); (iii) Assignment of Lease and Rents dated as of the CLOSING DATE between DIAMANTE CABO and the FIRST PLACE BENEFICIARY (the "ASSIGNMENT OF LEASES AND RENTS"); (iv) pledge agreement without transfer of possession dated as of the CLOSING DATE between DIAMANTE CABO and the FIRST PLACE BENEFICIARY (the "PLEDGE

3

DANSKE_0016066

AGREEMENT"); (v) recourse guaranty dated as of the CLOSING DATE between Kenneth A. Jowdy (the "GUARANTOR") and the FIRST PLACE BENEFICIARY ("RECOURSE GUARANTY"); (vi) environmental indemnity dated as of the CLOSING DATE among DIAMANTE CABO, GUARANTOR AND THE FIRST PLACE BENEFICIARY (the "ENVIRONMENTAL INDEMNITY"); (vii) pledge agreement dated as of the CLOSING DATE among the SECOND PLACE BENEFICIARY, GUARANTOR, Diamante Cabo San Lucas LLC ("U.S. LLC"), and the FIRST PLACE BENEFICIARY (the "MEXICAN MEMBERSHIP PLEDGE AGREEMENT"); (viii) pledge agreement dated as of the CLOSING DATE among GUARANTOR, U.S. LLC and the FIRST PLACE BENEFICIARY (the "MEMBERSHIP PLEDGE AGREEMENT SUBJECT TO U.S. LAW"); (ix) pledge agreement dated as of the CLOSING DATE among GUARANTOR, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings, LLC and CSL Properties 2006, LLC (collectively "U.S. LLC MEMBERS") and the FIRST PLACE BENEFICIARY (the "U.S. MEMBERSHIP PLEDGE AGREEMENT"); (x) omnibus assignment dated as of the CLOSING DATE between DIAMANTE CABO and the FIRST PLACE BENEFICIARY (the "OMNIBUS ASSIGNMENT"); (xi) Completion Guaranty by GUARANTOR in favor of the FIRST PLACE BENEFICIARY dated as of the Closing Date; (xii) Guaranty by the U.S. LLC MEMBERS, the GUARANTOR and the U.S. LLC to the FIRST PLACE BENEFICIARY dated as of the Closing Date. The documents listed above are collectively referred as the

4

"TRANSACTION DOCUMENTS", and the TRANSACTION DOCUMENTS collectively with this TRUST AGREEMENT are referred as the "LOAN DOCUMENTS".

3. DIAMANTE CABO pursuant to the TRANSACTION DOCUMENTS agreed to execute this TRUST AGREEMENT to guaranty DIAMANTE CABO's, the U.S. LLC MEMBERS, the U.S. LLC, and GUARANTOR's obligations under the TRANSACTION DOCUMENTS.

4.     DIAMANTE CABO hereby declares, represents and warrants that:

a)     It is a Limited Liability Company duly organized and existing under the laws of United Mexican States, with its principal place of business in   Calle Obregon 1289, 22800 Ensenada, Baja California Norte, Mexico.

b)     It is the owner of the Tracts of Land (and the Tracts of Land collectively with the Rights, the "REAL ESTATE PROPERTY");

c)     It has the corporate power and authority and the legal right to execute, deliver and perform its obligations hereunder, and to grant the security interest in the REAL ESTATE PROPERTY pursuant to this Trust Agreement and has taken all necessary legal and corporate actions to authorize its execution, delivery and performance, and to grant the security interest in the REAL ESTATE PROPERTY pursuant to this Trust Agreement;

5

DANSKE_0016068

d)   This Trust Agreement constitutes a legal, valid and binding obligation of DIAMANTE CABO enforceable in accordance with applicable law and its terms;

e)   The execution, delivery and performance of this Trust Agreement will not violate in any material respect any provision of any requirement of law, any provision of its organizational documents or contractual obligation of DIAMANTE CABO and will not result in the creation or imposition of any lien on any of the assets or revenues of DIAMANTE CABO except as contemplated hereby and except as expressly permitted by the TRANSACTION DOCUMENTS;

f)   As of the date hereof, there is no pending or, to the best of its knowledge after due inquiry, threatened action, claim, requirement or proceeding before any court, governmental agency or arbitrator that affects or could affect the legality, validity or enforceability of this Trust Agreement or its legal title to the REAL ESTATE PROPERTY;

g)   No consent or authorization of, request, or whatever other act, by a governmental authority or any other person is required for the execution, modification, termination, assignment, delivery, completion, validity of this Agreement or for the perfection and maintenance the first priority security interest created hereby;

h)   DIAMANTE CABO is the beneficial owner and owner of record and has good and indefeasible title to the REAL ESTATE PROPERTY, free of any and all encumbrances, liens, security

6

CONFIDENTIAL

DANSKE_0016069

interests, options or claims of any other person, other than the Easement;

i) The individual executing this Agreement on behalf of DIAMANTE CABO has all the necessary power, authority and corporate authorization to execute and deliver this Agreement on its behalf, and such powers, authority and corporate authorizations have not been revoked or limited in any manner;

j) It is DIAMANTE CABO's intention to affect in trust the REAL ESTATE PROPERTY in accordance with the provisions of this Agreement.

k) The bylaws of DIAMANTE CABO include the statutory provisions set forth in section 27 subsection I of the Mexican Constitution.

l) The REAL ESTATE PROPERTY will be destined, used and developed for non-residential purposes so long as it forms part of the Trust Estate and, therefore, the execution of this TRUST AGREEMENT shall not require the authorization of the Mexican Ministry of Foreign Affairs ("SRE") pursuant to section 11 and 12 of the FIL.

m) The REAL ESTATE PROPERTY is current in the payment of any property taxes, utilities or other governmental fees that may be charged to the REAL ESTATE PROPERTY or to the owners of the REAL ESTATE PROPERTY.

n) The REAL ESTATE PROPERTY is in compliance with all applicable environmental, health and safety laws and

7

CONFIDENTIAL

DANSKE_0016070

DIAMANTE CABO has no knowledge that any event has occurred or any circumstance or condition exists, that could be expected to constitute or result in a violation of any applicable environmental, health and safety Laws, (ii) the REAL ESTATE PROPERTY is not subject to any existing or, to the best of DIAMANTE CABO's knowledge, threatened action by or before any governmental authority under any applicable environmental, health and safety Laws, and, to the best of DIAMANTE CABO's knowledge, no basis exists for any such action.

5.   The FIRST PLACE BENEFICIARY hereby declares, represents and warrants that:

a)   It is a corporation duly incorporated and validly existing under the laws of the State of Delaware in the United States of America;

b)   Its representative has all necessary power and corporate authorization to execute and deliver this Trust Agreement on its behalf, and such powers and corporate authorizations have not been revoked or limited in any way;

c)   THE FIRST PLACE BENEFICIARY shall not have a right to use and enjoy (usar y aprovechar) the REAL ESTATE PROPERTY unless the TRUSTEE receives the SRE PERMIT as defined in Clause EIGHTEENTH below, provided however, that this

8

DANSKE_0016071

limitation shall not preclude or diminish in any way the rights of the FIRST PLACE BENEFICIARY under this TRUST AGREEMENT or the security interest granted herein.

6.    The TRUSTEE hereby declares, represents and warrants that:

a)    It is a Mexican Financial Institution duly incorporated and validly existing under the laws of Mexico;

b)    Its representative has all necessary power and corporate authorization to execute and deliver this Agreement on its behalf, and such powers and corporate authorizations have not been revoked or limited in any way.

## DEFINED TERMS

Capitalized terms not otherwise defined in this Trust Agreement will have the meanings ascribed to them in the Transaction Documents. In addition, the following terms shall have the following meanings:

"**SECURED OBLIGATIONS**":  Any and all present or future obligations of DIAMANTE CABO, the U.S. LLC, the U.S. LLC MEMBERS and Guarantor under the Transaction Documents, including but not limited the timely payment when due of interest, principal and the "ADDITIONAL FEE" (as defined in

9

DANSKE_0016072

the Loan Agreement), as amended, restated, modified or supplemented from time to time; and any and all present or future obligations of DIAMANTE CABO under the this Trust Agreement, as amended, restated, modified or supplemented from time to time.

## CLAUSES

### FIRST. - TRANSFER OF REAL ESTATE PROPERTY IN TRUST.

GRANTOR hereby irrevocably transfers title and effects a transfer of ownership in trust in favor of TRUSTEE, to the land constituting the REAL ESTATE PROPERTY free and clear of any levies and encumbrances (other than the Easement), with the area and borders transcribed above, which are hereby reproduced as if they were entirely inserted herein.

The GRANTOR hereby warrants title and right of possession (saneamiento en caso de evicción) of the REAL ESTATE PROPERTY.

Except for the right of Grantor to reacquire the REAL ESTATE PROPERTY (readquirir los bienes) as provided in Clause FOURTH below, Grantor, as grantor, reserves no right under this TRUST AGREEMENT or in any of the TRUST ESTATE (as defined below). The foregoing is without prejudice to the rights of the SECOND PLACE BENEFICIARY under this TRUST AGREEMENT.

### SECOND. - PARTIES AND TRUST ESTATE.

The parties of this TRUST are:

10

CONFIDENTIAL

DANSKE_0016073

(a)   GRANTOR: Diamante Cabo San Lucas S. de R.L. de C.V., and/or its permitted successors and permitted assigns (that hereinafter can be referred to as the "GRANTOR").

(b)   FIRST   PLACE   BENEFICIARY:   Lehman   Brothers Holdings, Inc., and/or its successors and assigns (hereinafter indistinctively   referred   to   as   the   "FIRST   PLACE BENEFICIARY").

(c)   SECOND PLACE BENEFICIARY: Diamante Cabo San Lucas S. de R.L. de C.V., and/or its permitted successors or assignees (that can be also hereinafter referred to as "SECOND PLACE BENEFICIARY").

(d)   TRUSTEE: BANCO J.P. MORGAN, S.A. INSTITUCION DE   BANCA   MULTIPLE,   J.P.   MORGAN   GRUPO FINANCIERO,   TRUST   DEPARTMENT   (hereinafter   the "TRUSTEE").

The estate of this TRUST will be the   REAL ESTATE PROPERTY, and all of its accessories, present and future, that by law or in fact are part of it, including without limitation any improvements, constructions, developments, fixtures, licenses, permits, rights and concessions, but excluding any part of the REAL ESTATE PROPERTY that is sold or transferred after the execution of this TRUST AGREEMENT in accordance with the terms   herein   established,   but   including   any   money   or consideration that may be received by the Trustee, if any, after such sales or transfers take place (hereinafter the "TRUST ESTATE").

11

CONFIDENTIAL

DANSKE_0016074

**THIRD. – APPOINTMENT OF TRUSTEE.**

The TRUSTEE hereby (i) accepts its appointment as TRUSTEE hereunder, and agrees to loyally and faithfully comply with its duties as TRUSTEE hereunder and with the purposes of the TRUST and all obligations assumed by the TRUSTEE in accordance herewith and applicable law; (ii) receives, subject to the terms of the TRUST AGREEMENT, the TRUST ESTATE; and (iii) acknowledges and accepts title to the TRUST ESTATE, and agrees to hold such title solely for the purposes of this TRUST. Subject to the terms of the TRUST AGREEMENT, the TRUSTEE is hereby authorized to take any and all actions that may be necessary to comply with the purposes of the TRUST. Furthermore, the TRUSTEE shall promptly comply with any and all the instructions given by the FIRST PLACE BENEFICIARY without any further notice to or authorization from the SECOND PLACE BENEFICIARY (except when the provisions hereof expressly require that notice be given to or authorization is obtained from the SECOND PLACE BENEFICIARY) when such instructions are expressly permitted herein in accordance with the express provisions of this TRUST AGREEMENT, and agrees not to perform or fail to perform any action which may impede or otherwise obstruct the fulfillment of the purposes of the TRUST.

**FOURTH. - PURPOSES OF THE TRUST.**

The purposes of the TRUST are as follows:

(a)     The TRUSTEE shall maintain the ownership and title of the REAL ESTATE PROPERTY and the TRUST ESTATE until the termination of the TRUST AGREEMENT in accordance with its terms.

12

CONFIDENTIAL

DANSKE_0016075

(b)    So long as the TRUSTEE has not received a written notice from the FIRST PLACE BENEFICIARY notifying the TRUSTEE of the existence of an event of default under the SECURED OBLIGATIONS ("NOTICE OF DEFAULT"), the TRUSTEE shall permit the SECOND PLACE BENEFICIARY to use and possess the REAL ESTATE PROPERTY for non-residential purposes. The use and possession provided herein shall permit the SECOND PLACE BENEFICIARY to develop the Real Estate Property in accordance with the LOAN DOCUMENTS (the "PROJECT").

(c)    So long as the TRUSTEE has not received a NOTICE OF DEFAULT, upon the written direction of both the FIRST PLACE BENEFICIARY and THE SECOND PLACE BENEFICIARY, the TRUSTEE shall transfer any part of the Trust Estate to the third-parties identified in such joint direction. Any part of the Trust Estate so transferred in terms of this paragraph shall no longer be considered part of the TRUST ESTATE.

(d)    The TRUSTEE shall maintain the TRUST ESTATE affected by this TRUST for the benefit of the FIRST PLACE BENEFICIARY in order to guarantee and secure the repayment and compliance, in time and form, of all and every one of the SECURED OBLIGATIONS undertaken by the SECOND PLACE BENEFICIARY, the GUARANTOR, the U.S. LLC and the the MEMBERS of the U.S. LLC under the LOAN DOCUMENTS.

(e)    After receiving a NOTICE OF DEFAULT from the FIRST PLACE BENEFICIARY, the TRUSTEE, at the direction of the FIRST PLACE BENEFICIARY and without the need to obtain the consent or approval of the SECOND PLACE BENEFICIARY ("ORDER TO LIQUIDATE"), shall simultaneously undertake any or all of the following actions: (i) revoke the rights of the SECOND PLACE BENEFICIARY to posses and use the REAL

13

DANSKE_0016076

ESTATE PROPERTY and to develop the Project by delivering the NOTICE OF DEFAULT to the SECOND PLACE BENEFICIARY; (ii) subject to the condition of obtaining the SRE PERMIT (as defined in Clause EIGHTEENTH) and that this TRUST AGREEMENT is amended as provided in such Clause, permit the FIRST PLACE BENEFICIARY to use and possess the TRUST ESTATE for non-residential purposes; and (iii) subject to the procedure set forth in Clause TWELFTH, transfer title and ownership or sell any and/or all of the properties and rights constituting the TRUST ESTATE or amend the Trust Agreement as provided herein. Upon receipt of the ORDER TO LIQUIDATE from the TRUSTEE, the SECOND PLACE BENEFICIARY shall deliver immediately the use and possession of the TRUST ESTATE back to the TRUSTEE or to such other person as instructed by the FIRST PLACE BENEFICIARY; and

(f)     After the TRUSTEE receives a written notice from the FIRST PLACE BENEFICIARY notifying the TRUSTEE that the SECOND PLACE BENEFICIARY, Guarantor, U.S. LLC and U.S. LLC MEMBERS have complied with each and all of the SECURED OBLIGATIONS ("NOTICE OF PAYMENT"), the TRUSTEE, pursuant to the instructions given to it in writing by SECOND PLACE BENEFICIARY, shall proceed to (i) transfer back the property and title of the TRUST ESTATE to DIAMANTE CABO and terminate this TRUST AGREEMENT or (ii) at the request of the SECOND PLACE BENEFICIARY, modify this TRUST as requested by the SECOND PLACE BENEFICIARY, including without limitation, the removal of the FIRST PLACE BENEFICIARY as party to this TRUST AGREEMENT.

(g)     That the Trustee, per the request of the FIRST PLACE BENEFICIARY, without further consent from the SECOND PLACE

14

BENEFICIARY, grant in favor of the FIRST PLACE BENEFICIARY a mortgage over the REAL ESTATE PROPERTY to secure the SECURED OBLIGATIONS.

## FIFTH. – COVENANTS.

The parties of this TRUST agree as follows:

(a)   The TRUSTEE grants to the SECOND PLACE BENEFICIARY the administration of the REAL ESTATE PROPERTY and the TRUSTEE shall designate the SECOND PLACE BENEFICIARY as depositor of the REAL ESTATE PROPERTY, granting to the SECOND PLACE BENEFICIARY the possession of the REAL ESTATE PROPERTY in trust, being empowered as administrator, by itself or through third parties, to use, benefit from the use and to carry out any modification, work, improvement, construction,  development, lease, administration and management activity on such REAL ESTATE PROPERTY, and to constitute the condominium or sub-condominium regimes or time shares that it consider appropriate, so long as such activities comply with the Clause Four subsection b. above and the LOAN DOCUMENTS.

(b)   The SECOND PLACE BENEFICIARY shall obtain all the necessary permits, licenses and concessions in order to carry out the acts referred to in paragraph (a) of this Clause, without the FIRST PLACE BENEFICIARY or the TRUSTEE being responsible for the possible violations of such permits, licenses and concessions or any applicable laws caused by the SECOND PLACE BENEFICIARY's use or possession of the TRUST ESTATE or related to the construction thereon, as well as for any other liability derived from the performance of the works, modifications, improvements or

15

CONFIDENTIAL

DANSKE_0016078

construction on the PROJECT, the SECOND PLACE BENEFICIARY being the only party liable therefor. The SECOND PLACE BENEFICIARY, shall assume on its account and at its expense, any of the fiscal, labor and payment obligations, in relation to and derived from the use and possession of the TRUST ESTATE, including without limitation, with respect to any construction, improvement and development on the REAL ESTATE PROPERTY.

(c) The TRUSTEE shall from time to time grant to the individuals identified by the SECOND PLACE BENEFICIARY, as provided in this subsection (c) any and all necessary powers of attorney for carrying out the purpose of the TRUST. After a NOTICE OF DEFAULT is delivered, upon instructions of the FIRST PLACE BENEFICIARY, the TRUSTEE, shall revoke all the powers identified by the FIRST PLACE BENEFICIARY and granted under this TRUST AGREEMENT and grant to the individuals identified by the FIRST PLACE BENEFICIARY any and all necessary powers of attorney for carrying out the purpose of the TRUST.

(d) The TRUSTEE shall not amend this TRUST except as instructed by the FIRST PLACE BENEFICIARY and the SECOND PLACE BENEFICIARY, acting jointly, provided that upon receipt of a NOTICE OF DEFAULT, the consent or agreement of the SECOND PLACE BENEFICIARY shall not be required to effect the amendments set forth in Clause TWELFTH below.

(e) Unless the purposes of this TRUST permit so, the TRUSTEE shall not (i) transfer the ownership or title or (ii) issue or grant any guaranty, mortgage, or pledge or (iii) create any other kind of real estate guaranty on any property in the TRUST ESTATE, nor on its rights derived in its favor from this TRUST, unless it obtains the FIRST PLACE BENEFICIARY's

16

previous written consent, (authorization may be granted or denied under the absolute discretion of the FIRST PLACE BENEFICIARY).

(f)     The SECOND PLACE BENEFICIARY shall be solely responsible in maintaining the TRUST ESTATE and shall be solely responsible in performing, at its own expense, all the necessary repairs, to pay any and all taxes, comply with and maintain all permits, licenses and concessions required and to comply with all the applicable laws and regulations, in order to maintain all the property integrating the TRUST ESTATE, in good condition and undertaking all necessary acts for the construction and operation of a tourist development, according to the provisions set forth in the Clause Fourth subsection (b) above, and the LOAN DOCUMENTS; provided;  however that, the REAL ESTATE PROPERTY shall not be destined or used for residential purpose in accordance with the LIE, as long as it forms part of the TRUST ESTATE.

(g)     The TRUSTEE shall have all rights and powers to comply with the purposes of this TRUST in accordance with the terms hereof and applicable law, including the power to perform acts of ownership.

(h)     The TRUSTEE shall protect all the property and rights included in the TRUST ESTATE through the agents mentioned in this Clause; provided; however, that in the event that an Emergency should occur which the Trustee has knowledge, the TRUSTEE shall immediately act and take all the necessary steps to protect the TRUST ESTATE, and hereby is granted all the necessary powers to appoint proxies, whose authorization shall be subject, time permitting, to the FIRST PLACE BENEFICIARY's ratification. For the purposes of this Section the term "Emergency" means any event or situation that jeopardizes the health and safety of any person, visitor or employee present at the TRUST ESTATE, or which may impose on the TRUSTEE or

17

CONFIDENTIAL

DANSKE_0016080

the FIRST PLACE BENEFICIARY and/or the SECOND PLACE BENEFICIARY, a penalty or criminal sanction.

(i)    Until the SECURED OBLIGATIONS are paid in full, this is an irrevocable TRUST and shall be in full force and effect from the date of its execution until its termination as provided herein. The TRUST shall remain in place for the time needed to comply with its purposes, and may not be revoked by Grantor. The Trust Agreement shall terminate for the causes set forth in Article three hundred and ninety-two of the General Law on Credit Instruments and Operations, excluding the cause of termination set forth in section sixth of said Article, since the GRANTOR does not reserve for itself the right to revoke this TRUST. Upon Termination of the TRUST, the Trustee shall deliver and transfer the TRUST ESTATE as follows: (i) prior to the payment in full of the SECURED OBLIGATIONS as evidenced in a certificate delivered to the TRUSTEE by the FIRST PLACE BENEFICIARY, to the FIRST PLACE BENEFICIARY or it assignee as security for the repayment of the SECURED OBLIGATIONS; (ii) after the repayment in full of the SECURED OBLIGATIONS as evidenced by a NOTICE OF PAYMENT, to the GRANTOR or it assignee, (iii) to the person designated in writing by both the FIRST PLACE BENEFICIARY and the SECOND PLACE BENEFICIARY; or (iv) as provided in Clause Twelfth below.

(j)    If the TRUSTEE receives any moneys during the term of the TRUST it shall promptly notify the FIRST PLACE BENEFICIARY and shall act upon the instructions of the FIRST PLACE BENEFICIARY.


**SIXTH. – STATUTORY PROVISION.**

18

DANSKE_0016081

In accordance with section XIX of Article 106 of the Credit Institutions Law, the TRUSTEE represents that, by this Clause  it has provided a clear and unequivocal written explanation to the parties hereto, of the legal meaning and consequences of this Clause, which is hereby transcribed for all pertinent purposes:

"ARTICLE 106.  Credit institutions shall not:

…

XIX.   When performing the transactions referred to in Section XV of Article 46 of this Law: **[this section will transcribe not only subsection (b), but the whole section 106. please let me know if you need an English translation.  The Spanish version will have the full text.]**

(b)   respond to the grantors, principals or agents, for any breach by the debtors, for loans granted thereto, or by the issuers, for securities acquired, unless such breach is attributable to the credit institutions pursuant to the last paragraph of article 391 of the General Law of Negotiable Instruments and Credit Transaction, or to guarantee the earning of returns on any funds whose investment has been entrusted to the credit institutions.

If upon termination of the TRUST AGREEMENT, mandate or agency established to grant loans, any such loans shall have not been repaid by the debtors, the credit institution shall transfer the credits to the grantor or the beneficiary, as the case may be, or to the representative or agent, and the credit institution shall refrain from repaying any outstanding amounts.

19

DANSKE_0016082

In the trust, mandate or agency agreements that provided in this section shall be inserted notoriously and a recital of the trustee indicating that the content of this section was undoubtedly disclosed to the persons from whom the assets or rights have been received for their affectation in trust.

Any agreement contrary to what is set forth in the preceding paragraphs shall not have legal validity".

**[THE TRUSTEE HAS ASKED TO INCLUDE AND WE WILL INCLUDE THE TEXT OF THE CIRCULAR NUMBER 1/2005 FROM THE BANK OF MEXICO (FEDERAL RESERVE), WHICH IS ALSO APPLICABLE. PLEASE LET ME KNOW IF YOU NEED A TRANSLATION. THE SPANISH VERSION WILL HAVE THE TRANSCRIPTION]**

**SEVENTH. – TAXES, COSTS AND EXPENSES.**

(a)    All taxes, costs, expenses, fees and commissions arising from the preparation, execution and registration of this TRUST AGREEMENT and in connection with any amendment hereof, as well as by any action, agreement, document, instrument or notice carried out, prepared, executed or notified pursuant to this TRUST AGREEMENT, including, without limitation, notary public's and registration costs and fees, the reasonable fees and disbursements of the legal advisors of the FIRST PLACE BENEFICIARY and the TRUSTEE, as well as any and all costs and expenses incurred by the FIRST PLACE BENEFICIARY and the TRUSTEE in the fulfillment of their respective obligations, in the exercise of their respective rights in accordance

20

CONFIDENTIAL

DANSKE_0016083

with this TRUST AGREEMENT and in any foreclosure hereunder, shall be fully and exclusively covered by the SECOND PLACE BENEFICIARY.

(b)     In the event that, for any reason, the FIRST PLACE BENEFICIARY pays, for the account of the SECOND PLACE BENEFICIARY, any such costs or expenses, the SECOND PLACE BENEFICIARY agrees to forthwith upon request reimburse FIRST PLACE BENEFICIARY any such costs or expenses.

(c)     In the event any tax authority notifies or otherwise requests from the TRUSTEE any information and/or clarification in connection with the activities of the TRUST created pursuant to this TRUST AGREEMENT that may be considered subject to any tax required to be withheld and paid by the TRUSTEE, as set forth in the requirement made by the authority, by virtue of this TRUST AGREEMENT, the SECOND PLACE BENEFICIARY shall, and hereby covenant and agrees to, defend and hold the TRUSTEE harmless against, as well as to provide to the TRUSTEE assistance and with sufficient funds for, the payment of any amounts relating to such taxes to which TRUSTEE may be required to pay in accordance with applicable law. The TRUSTEE shall not be liable for any action in connection with any such withholdings and payments and, to the extent the TRUSTEE is subject to any fine or is otherwise penalized in connection therewith, the SECOND PLACE BENEFICIARY hereby covenants and agrees to reimburse immediately any expense or cost incurred by the TRUSTEE in connection therewith; provided, however, that the foregoing shall not apply to any such expense or cost incurred due to the negligence, willful misconduct or bad faith of the TRUSTEE. In connection with the foregoing, the TRUSTEE shall have the right to retain legal and tax advisors, as Trustee may deemed advisable at its

21

DANSKE_0016084

sole discretion and to charge to the SECOND PLACE BENEFICIARY with the related reasonable fees thereof.

(d)     The parties agree that the transfer of the REAL ESTATE PROPERTY to the trustee pursuant to this agreement or any assignment agreement is not and should not be construed as a transfer (enajenación) in terms of section v, paragraph a), of article 14 of the federal tax code (código fiscal de la federación) of Mexico, nor cause any additional transfer tax (impuesto sobre adquisiciones de inmueble) since the GRANTOR as SECOND PLACE BENEFICIARY has the right to receive back (REVERSION) the REAL ESTATE PROPERTY after the termination of the TRUST provided that the SECURED OBLIGATIONS are paid in full as provided herein and in the LOAN DOCUMENTS.

**EIGHTH. - THE TRUSTEE's FEES.**

As consideration for its TRUSTEE services hereunder, the SECOND PLACE BENEFICIARY shall pay to the TRUSTEE, the fees set forth in the document attached hereto as Exhibit "A". The TRUSTEE's fees shall be paid in Dollars or in Pesos, at the rate of exchange prevailing in Mexico and published by Banco de México in the Diario Oficial de la Federación on the date when payment is made.

**NINTH. – TRUSTEE'S LIMITED LIABILITY.**

In order to induce TRUSTEE to enter into this AGREEMENT, the GRANTOR, the FIRST PLACE BENEFICIARY and SECOND PLACE BENEFICIARY expressly agree with the TRUSTEE as follows:

22

CONFIDENTIAL

DANSKE_0016085

(a)   TRUSTEE will only be obligated to act in good faith and in accordance with the express provisions set forth in this TRUST AGREEMENT and in accordance with the written instructions of the FIRST PLACE BENEFICIARY or, to the extent expressly provided herein, the SECOND PLACE BENEFICIARY, as the case may be, and so long as it continues to act in good faith and in accordance with the express provisions set forth in this TRUST AGREEMENT, will have no obligation whatsoever in verifying the authenticity of any such instructions or the signature of the person or persons executing any such instructions;

(b)   TRUSTEE will not be obligated to carry out a higher degree of care in the preservation of the TRUST ESTATE than the one which it accords its own property;

(c)   This AGREEMENT expressly provides all of the obligations of TRUSTEE.  TRUSTEE does not assume any implicit obligations hereunder or obligations derived directly or indirectly from any agreements of GRANTOR, the SECOND PLACE BENEFICIARY or the FIRST PLACE BENEFICIARY to which it is not a party, including but not limited to the Loan Documents;

(d)   The TRUSTEE shall be liable, only and exclusively, for the loss and damage caused directly by its negligence, willful misconduct or bad faith, in everything related to the fulfillment of its obligations under this AGREEMENT;

(e)   The SECOND PLACE BENEFICIARY agrees without limitation to defend, indemnify, and hold harmless TRUSTEE, its subsidiaries, affiliates and related companies, as well as their respective officers, directors, employees, agents and advisors, from any and all claims, demands, penalties, causes of action, fines, liabilities, settlements, damages, costs or expenses of

23

DANSKE_0016086

whatever kind and any nature, known or unknown, foreseen or unforeseen, contingent or otherwise (including, without limitation, reasonable attorneys' fees and disbursements) arising out of or incurred in connection with this TRUST AGREEMENT except for any liability arising by the negligence, willful misconduct or bad faith of the TRUSTEE;

(f)    The SECOND PLACE BENEFICIARY shall be liable for the payment of all taxes of the TRUST ESTATE and shall defend, indemnify, and hold harmless TRUSTEE from the payment of any amounts to which TRUSTEE may be bound by virtue of any such taxes of the TRUST ESTATE.   The liabilities of  the SECOND PLACE BENEFICIARY set forth in paragraph (e) above and in this paragraph (f) shall survive and remain in full force and effect even after the termination of this AGREEMENT or the resignation of TRUSTEE until the lapse of any applicable statute of limitations.

(g)    TRUSTEE will not be liable, in any case, for the validity, value or enforceability of the LOAN DOCUMENTS, or of any other agreements, documents, or instruments related thereto, whether directly or indirectly;

(h)    The GRANTOR, the  SECOND PLACE BENEFICIARY and the FIRST PLACE BENEFICIARY agree and acknowledge that TRUSTEE will have no liability (i) in the event the TRUST ESTATE or any portion thereof is expropriated, seized or confiscated; or (ii) for a default of its obligations hereunder due to causes or circumstance beyond its control;

(i)    The TRUSTEE will not be liable for acts or omissions of the GRANTOR, the SECOND PLACE BENEFICIARY or the FIRST PLACE BENEFICIARY or any third party that prevents or makes it difficult to achieve the purposes of the TRUST; and

24

CONFIDENTIAL

DANSKE_0016087

(j)    The GRANTOR, the  SECOND PLACE BENEFICIARY and the FIRST PLACE BENEFICIARY acknowledge that TRUSTEE does not know nor is required to know the content of the LOAN DOCUMENTS in order to perform its obligations hereunder.

(k)    No provision of this TRUST AGREEMENT shall relieve the TRUSTEE from liability for its own negligence, its own negligent failure to act, or its own willful misconduct.

(l)    The TRUSTEE acknowledges that it shall not sell or transfer any or all of the TRUST ESTATE except as expressly provided in the TRUST AGREEMENT or expressly permitted by the FIRST PLACE BENEFICIARY AND SECOND PLACE BENEFICIARY acting jointly. The TRUSTEE shall not be permitted to sell any portion of the TRUST ESTATE to obtain money to pay its fees or amounts owed to it without the consent of the FIRST PLACE BENEFICIARY and, prior to the TRUSTEE's receipt of a NOTICE OF DEFAULT, without the consent of the SECOND PLACE BENEFICIARY, and any right of the TRUSTEE to receive money under this TRUST AGREEMENT shall be subordinated, except as provided in Section twelfth below subsection 2.(b)., to the FIRST PLACE BENEFICIARY's right to be paid in full any amount owed to it under the LOAN DOCUMENTS.

(m)   The TRUSTEE shall act promptly upon instructions of the FIRST PLACE BENEFICIARY as provided in this TRUST AGREEMENT, including without limitation, any instruction given to the TRUSTEE by the FIRST PLACE BENEFICIARY in accordance with the terms of the TRUST AGREEMENT after the delivery of a NOTICE OF DEFAULT, without consulting or obtaining the consent of the SECOND PLACE BENEFICIARY. The TRUSTEE shall be liable for any damage caused to the

25

CONFIDENTIAL

DANSKE_0016088

FIRST PLACE BENEFICIARY for not complying properly with such instructions as provided in this Trust Agreement.

## TENTH. – RESIGNATION AND SUBSTITUTION OF TRUSTEE.

(a)     The TRUSTEE may be removed at any time by the FIRST PLACE BENEFICIARY and SECOND PLACE BENEFICIARY acting jointly, provided that the TRUSTEE is notified in writing of such removal with at least thirty (30) calendar days prior to the date on which its removal shall take effect, and provided further that within such thirty-calendar day term, a substitute TRUSTEE shall be appointed by the FIRST PLACE BENEFICIARY and SECOND PLACE BENEFICIARY and such substitute TRUSTEE shall accept its appointment to act as TRUSTEE hereunder; provided however that, after the delivery of a NOTICE OF DEFAULT, the consent of the SECOND PLACE BENEFICIARY shall not be required to remove and appoint a substitute TRUSTEE.

(b)     The TRUSTEE may only resign its appointment in the event referred to in Article 391 of the General Law of Credit Instruments and Operations, provided that the TRUSTEE shall give written notice to the FIRST PLACE BENEFICIARY and the SECOND PLACE BENEFICIARY of its intention to resign within at least sixty (60) calendar days prior such resignation and provided further that the TRUSTEE shall not be released as TRUSTEE hereunder until a substitute TRUSTEE shall have been appointed as provided in subsection (a) above and such substitute TRUSTEE shall have accepted such appointment in writing.

CONFIDENTIAL

DANSKE_0016089

(c)    Any substitute TRUSTEE shall have the same rights and obligations as the TRUSTEE hereunder and shall be deemed as the "TRUSTEE" for all purposes of this TRUST AGREEMENT.

(d)    If the TRUSTEE shall cease to act as TRUSTEE pursuant to this Clause TENTH, the TRUSTEE shall prepare account statements and all other information regarding the TRUST ESTATE and deliver it to the FIRST PLACE BENEFICIARY and the SECOND PLACE BENEFICIARY at least thirty (30) days prior to the date on which its removal or resignation shall take effect.

(e)    All costs and expenses relating to the removal and appointment of a substitute TRUSTEE shall be payable by the SECOND PLACE BENEFICIARY

## ELEVENTH. - FURTHER ASSURANCES; IRREVOCABLE POWER OF ATTORNEY IN FAVOR OF TRUSTEE.

(a)    The SECOND PLACE BENEFICIARY shall, at any time and from time to time, at its sole cost and expense, promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the FIRST PLACE BENEFICIARY and/or the TRUSTEE may request, in order to (i) perfect, protect and maintain any transfer made or purported to be made and/or security interest granted or purported to be granted in accordance with this TRUST AGREEMENT; (ii) permit the Trustee to grant in favor of the FIRST PLACE BENEFICIARY a mortgage in favor over the REAL ESTATE PROPERTY as provided in the LOAN DOCUMENTS and (iii) enable the FIRST PLACE BENEFICIARY and the TRUSTEE to exercise and enforce their rights and remedies

27

DANSKE_0016090

hereunder with respect to the TRUST ESTATE or any portion thereof, including to carry out or cause the taking of any actions and/or initiate all and any proceedings that are necessary or convenient in order for the TRUSTEE (pursuant to and in accordance with the written instructions of the FIRST PLACE BENEFICIARY) to carry out foreclosure and extrajudicial sale of the TRUST ESTATE (or any portion thereof) in accordance with the procedure set forth herein.

(b)    As a means to comply with the obligations of the SECOND PLACE BENEFICIARY referred to in paragraph (a) of this Clause, the SECOND PLACE BENEFICIARY hereby grants in favor of the TRUSTEE (to be exercised directly by the TRUSTEE and/or by delegation thereof to any of its fiduciary delegates or to any other individual indicated by the FIRST PLACE BENEFICIARY for such purpose) a special irrevocable power of attorney, as broad as permitted by applicable law, so that the TRUSTEE may, in the name and on behalf of the SECOND PLACE BENEFICIARY, execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the FIRST PLACE BENEFICIARY and/or the TRUSTEE may request, in order to (i) perfect, protect and maintain any transfer made or purported to be made and/or security interest granted or purported to be granted in accordance with this TRUST AGREEMENT; and (ii) enable the FIRST PLACE BENEFICIARY and the TRUSTEE to exercise and enforce their rights and remedies pursuant to this TRUST AGREEMENT and/or applicable law with respect to the TRUST ESTATE or any portion thereof, as well as to carry out or cause the taking of any actions and/or initiate all and any proceedings, judicial or extrajudicial, that are necessary or convenient so that the TRUSTEE may carry out the foreclosure and extrajudicial sale of the TRUST ESTATE (or any portion

28

CONFIDENTIAL

DANSKE_0016091

thereof) in accordance with the procedure set forth herein. In addition, and with respect to the procedure for the extrajudicial sale and distribution of the TRUST ESTATE as set forth in Clause TWELFTH the TRUSTEE will be empowered to make, on behalf of the GRANTOR and the SECOND PLACE BENEFICIARY (y) the same representations and warranties made by the GRANTOR and the SECOND PLACE BENEFICIARY with respect to the property and/or title to the TRUST ESTATE (or any portion thereof), as well as with respect to the liability of the corresponding GRANTOR or SECOND PLACE BENEFICIARY relating to warranty of title and right of possession (saneamiento para el caso de evicción) in accordance with Clause SEVENTEENTH; and (z) any other representations and warranties (other than those described in sub-item (y) above) made by the GRANTOR and SECOND PLACE BENEFICIARY with respect to the TRUST ESTATE (or any portion thereof) in accordance with this TRUST AGREEMENT, and the LOAN DOCUMENTS. The GRANTOR and the SECOND PLACE BENEFICIARY acknowledge and agree that the special irrevocable powers of attorney granted in favor of the TRUSTEE pursuant to this Clause are granted as a means to comply with the obligations specifically identified and assumed by the GRANTOR and the SECOND PLACE BENEFICIARY, and are therefore irrevocable in terms of article 2596 of the Federal Civil Code, and the corresponding provisions of the Civil Codes of the States of Mexico and the Federal District of Mexico.

## SPECIAL SECTION

### EXTRAJUDICIAL AND SALE AND DISTRIBUTION OF THE TRUST ESTATE

**TWELFTH. – EXTRAJUDICIAL AND SALE AND DISTRIBUTION OF THE TRUST ESTATE.**

29

DANSKE_0016092

Pursuant to article 83 of the Credit Institutions Law and article 403 of the General Law of Credit Instruments and Operations, the parties to this TRUST hereby expressly and irrevocably agree the following process of enforcement of the guaranty granted upon the TRUST ESTATE created under this TRUST AGREEMENT:

(a) The FIRST PLACE BENEFICIARY shall notify in writing to the TRUSTEE a DEFAULT NOTICE and a LIQUIDATION NOTICE.

(b) upon receipt by the TRUSTEE of NOTICE OF DEFAULT, followed by an ORDER TO LIQUIDATE, the TRUSTEE shall extra-judicially transfer for consideration, all or part of the assets and/or rights which compose the TRUST ESTATE (or any portion thereof), in accordance with the procedures of this Clause.

(c)    The TRUSTEE shall give notice (the "NOTICE OF SALE") to the SECOND PLACE BENEFICIARY (with a copy to the FIRST PLACE BENEFICIARY) indicating that it has received an ORDER TO LIQUIDATE (and attaching a copy of such NOTICE OF DEFAULT giving rise to the ORDER TO LIQUIDATE), as soon as possible, but in any event no later than the two business day immediately following the date on which the TRUSTEE receives the ORDER TO LIQUIDATE.

(d)    The SECOND PLACE BENEFICIARY shall have a period of 5 (five) business days (the "CURE PERIOD"), from the date the SECOND PLACE BENEFICIARY is deemed to receive the NOTICE OF SALE as provided in the notice section below, to (i) cure and/or deliver evidence of compliance of the SECURED OBLIGATIONS that caused the event of default described in the NOTICE OF SALE, and to provide indisputable written evidence to the

30

CONFIDENTIAL

DANSKE_0016093

FIRST PLACE BENEFICIARY (with a copy to the TRUSTEE) that the event of default has been cured within the time period required to do so and/or the obligations that caused such event of default have been fulfilled within the time period required to do so; and/or (ii) provide indisputable written evidence to the FIRST PLACE BENEFICIARY (with a copy to the TRUSTEE) of the term extension or novation of the SECURED OBLIGATIONS that were the subject matter of the event of default in question (such notice, a "CURE NOTICE"). If the FIRST PLACE BENEFICIARY disagrees with the indisputable written evidence, the FIRST PLACE BENEFICIARY shall notify the TRUSTEE and the TRUSTEE shall continue with the extrajudicial sale as instructed by the FIRST PLACE BENEFICIARY.

(e)     Each ORDER OF LIQUIDATION, NOTICE OF SALE, CURE NOTICE, SUSPENSION NOTICE (as defined below) and CONTINUATION NOTICE (as defined below) shall be delivered (i) to the parties with a Mexican address as set forth in Clause Fifteenth in writing to the appropriate parties, at the addresses set forth in Clause FIFTEENTH and in the presence of a Mexican notary public or Mexican corredor publico or by written acknowledgement of the party receiving the notice and (ii) to the parties without a Mexican address as set forth in Clause Fifteenth in accordance with Clause Fifteenth.

(f)     The FIRST PLACE BENEFICIARY will be entitled, at any time, by written notice to the TRUSTEE (each such notice, a "SUSPENSION NOTICE"), to instruct the TRUSTEE to suspend, in whole or in part, on the date and time the TRUSTEE receives such SUSPENSION NOTICE, the procedure for the extrajudicial sale and distribution of all or part of the TRUST ESTATE initiated pursuant to the corresponding ORDER OF

CONFIDENTIAL                                                                    DANSKE_0016094

LIQUIDATION, provided, however, that such suspension shall cease to be effective, in whole or in part, from the date the TRUSTEE receives from the FIRST PLACE BENEFICIARY one or more instructions in writing (each such notice, a "CONTINUATION NOTICE") instructing the TRUSTEE to continue, in whole or in part, with the suspended procedure for the extrajudicial sale and distribution of the TRUST ESTATE.

Once the TRUSTEE receives the corresponding CONTINUATION NOTICE, the TRUSTEE shall immediately continue with the procedure for the extrajudicial sale and distribution of all or part of the TRUST ESTATE in accordance with this Clause and the CONTINUATION NOTICE.

(g)    In the event the SECOND PLACE BENEFICIARY has not cured the event of default described in the corresponding NOTICE OF SALE, precisely within the Cure Period and in the manner described in paragraph (h) above, then the TRUSTEE shall, as instructed by the FIRST PLACE BENEFICIARY, proceed immediately with the extrajudicial sale for consideration of all or any portion of the assets and/or rights that compose the TRUST ESTATE, as specifically designated by the FIRST PLACE BENEFICIARY in the ORDER TO LIQUIDATE (hereinafter, any assets and/or rights so designated, the "DESIGNATED ASSETS"); in accordance with the following:

1.    With respect to the DESIGNATED ASSETS, the TRUSTEE shall, if so instructed by the FIRST PLACE BENEFICIARY in the corresponding ORDER OF LIQUIDATION, and acting based on the advise of counsel designated by the FIRST PLACE BENEFICIARY, carry out the following procedure:

(a)    The TRUSTEE shall obtain from an authorized credit institution of recognized standing in Mexico (other than the TRUSTEE or any Affiliate

32

CONFIDENTIAL

DANSKE_0016095

thereof), or from an authorized public broker (corredor público) standing in Mexico, indicated in writing by the FIRST PLACE BENEFICIARY, an appraisal of the DESIGNATED ASSETS which shall serve as the base price in connection with the sale thereof (the "BASE PRICE").

(b)     The FIRST PLACE BENEFICIARY shall, in its sole and absolute discretion, deliver to the TRUSTEE a written notice (the "NOTICE OF POTENTIAL BUYERS") containing a list with the names, domiciles, telephone and fax numbers of the persons identified by the FIRST PLACE BENEFICIARY as POTENTIAL BUYERS of the DESIGNATED ASSETS, which may include any affiliate of the FIRST PLACE BENEFICIARY (collectively, the "POTENTIAL BUYERS"). Notwithstanding anything in this Trust Agreement, the GRANTOR, the SECOND PLACE BENEFICIARY or any of its affiliates shall be permitted to act as POTENTIAL BUYERS. Within 5 (five) business days following receipt by the TRUSTEE of the NOTICE OF POTENTIAL BUYERS, but in any event within at least 15 (fifteen) business days before the scheduled date for the private auction, the TRUSTEE shall privately call (each, a "CALL") the POTENTIAL BUYERS for the sale in a private auction of the DESIGNATED ASSETS, using the form provided by the FIRST PLACE BENEFICIARY. The CALL shall indicate the location and time at which the auction will take place, the BASE PRICE, and shall provide that the auction is a result of the foreclosure procedure of the TRUST ESTATE under the terms of this TRUST AGREEMENT.

The parties hereby agree that the FIRST PLACE BENEFICIARY (directly or through the person or persons designated by the FIRST PLACE BENEFICIARY) shall at all time have a preferential right to acquire the DESIGNATED ASSETS (or any part thereof). Each Call shall disclose the

CONFIDENTIAL

DANSKE_0016096

FIRST PLACE BENEFICIARY'S preferential right in the terms set forth herein, unless the FIRST PLACE BENEFICIARY expressly waives such right, through written notice to the TRUSTEE. For the purposes of this numeral 1(B), the term "preferential right" means that at any time prior to or during the private auction, the FIRST PLACE BENEFICIARY (directly or through the person or persons designated by the FIRST PLACE BENEFICIARY) shall have the right to acquire from the TRUSTEE the DESIGNATED ASSETS (or any part thereof), at a price (the "APPLICABLE PRICE") which is equal to the higher of (i) the BASE PRICE (or, in case the FIRST PLACE BENEFICIARY exercises its preferential right to acquire only part of the DESIGNATED ASSETS, a percentage of the BASE PRICE equal to the part of the DESIGNATED ASSETS to be acquired by the FIRST PLACE BENEFICIARY), in case such right is exercised prior to the respective auction; or (ii) at least equal to the highest bid price offered, if any, by any participant in the auction, in case such right is exercised during the respective auction, in either case, minus (y) any principal amount, interest, commissions, fees, income taxes, withholdings, Additional Fee, transfer taxes or any other taxes or other amounts owed and unpaid to the FIRST PLACE BENEFICIARY in connection with the SECURED OBLIGATIONS and the LOAN DOCUMENTS; and (z) all costs and expenses incurred by, and other amounts owed to the FIRST PLACE BENEFICIARY in connection herewith and with the sale and distribution of the TRUST ESTATE in both cases as certified by the FIRST PLACE BENEFICIARY (such resulting amount, the "OUTSTANDING AMOUNT"). The preferential right conferred to the FIRST PLACE BENEFICIARY hereunder may be exercised by the FIRST PLACE BENEFICIARY (directly or through the person or persons designated by the FIRST PLACE BENEFICIARY) at any time prior to or

34

CONFIDENTIAL

DANSKE_0016097

during the corresponding private auction, by delivering a written notice (the "EXERCISE NOTICE") to the TRUSTEE (with a copy to the SECOND PLACE BENEFICIARY). In case the FIRST PLACE BENEFICIARY (directly or through the person or persons designated by the FIRST PLACE BENEFICIARY) exercises its preferential right by delivering the EXERCISE NOTICE, and (I) the OUTSTANDING AMOUNT exceeds the APPLICABLE PRICE, the corresponding DESIGNATED ASSETS shall be transferred out of the TRUST to the FIRST PLACE BENEFICIARY (or the person or persons designated by the FIRST PLACE BENEFICIARY), without any payment by the FIRST PLACE BENEFICIARY; provided; however, that, if the DESIGNATED ASSETS identified in the NOTICE OF SALE include all of the TRUST ESTATE and the OUTSTANDING AMOUNT of all of the TRUST ESTATE exceeds the APPLICABLE PRICE, subject to the TRUSTEE receiving the SRE PERMIT as defined below, at the request of the FIRST PLACE BENEFICIARY, the TRUSTEE shall amend the TRUST AGREEMENT to remove the SECOND PLACE BENEFICIARY as a party to this TRUST AGREEMENT and to include the provision set forth in Clause EIGHTEENTH and the FIRST PLACE BENEFICIARY shall remain the sole beneficiary under the TRUST and shall have the absolute right to direct the TRUSTEE in accordance with applicable law. Notwithstanding the foregoing, any remaining Outstanding Amount shall continue to be due and payable in accordance with numeral 2 below of this Clause and the LOAN DOCUMENTS; and (II) if the OUTSTANDING AMOUNT does not exceed the APPLICABLE PRICE, the corresponding DESIGNATED ASSETS shall be transferred to the FIRST PLACE BENEFICIARY (or the person or persons designated by the FIRST PLACE BENEFICIARY) and shall no longer form part of the TRUST ESTATE, and the FIRST PLACE BENEFICIARY shall deliver to the

35

DANSKE_0016098

TRUSTEE the positive difference between the APPLICABLE PRICE and the OUTSTANDING AMOUNT, to be applied by the TRUSTEE in accordance with Clause TWELFTH (e)(2) below.

(c)  In addition, the CALL shall provide that any interested POTENTIAL BUYER shall deposit with the TRUSTEE an amount at least equal to 10% (ten percent) of the BASE PRICE, in certificates of deposit issued by an authorized credit institution, at least 2 (two) business days prior to the date of the private auction (the "DEPOSIT"). No bid shall be admitted or considered valid unless the Deposit is made in the terms and within the period set forth above. The TRUSTEE shall close the sale, transferring the DESIGNATED ASSETS to the POTENTIAL BUYER (among the other POTENTIAL BUYERS who makes the highest bid, which shall in any case be equal to or greater than the BASE PRICE (the "HIGHEST BIDDER") as certified by the FIRST PLACE BENEFICIARY, subject to the FIRST PLACE BENEFICIARY's preferential right.

(d)  The HIGHEST BIDDER shall pay, in immediately available funds, the price of the highest bid when the transfer of title to DESIGNATED ASSETS is perfected in accordance with applicable law. In case the transfer of the DESIGNATED ASSETS is not consummated for causes attributable to the Highest Bidder, the Highest Bidder shall forfeit the Deposit delivered to the TRUSTEE for the benefit of the TRUST. This paragraph (D) shall be transcribed in the CALL.

(e)  In the event TRUSTEE is unable to sell the DESIGNATED ASSETS in the first auction, it shall publish a second CALL in order to hold a second auction in which the minimum acceptable bid shall be the BASE PRICE reduced by 10% (ten percent).  In the event the sale is not perfected by TRUSTEE in the second auction, the BASE PRICE shall be subsequently

36

DANSKE_0016099

reduced in each subsequent auction by 10% (ten percent) of the next preceding BASE PRICE until the DESIGNATED ASSETS are sold; provided, however, that such sale price shall never be less than 50% (fifty percent) of the original BASE PRICE. The second or subsequent CALLS for the DESIGNATED ASSETS shall be subject to the provisions of paragraphs (B), (C), (D) and (E) of this numeral 1.

2.     In any event, the parties hereto expressly agree that the proceeds of the sale of the DESIGNATED ASSETS or any portion thereof, shall be applied in the following order, in accordance with the FIRST PLACE BENEFICIARY'S written instructions, without the need for any further requirement, judicial resolution or instruction of any kind:

(a)     First, to the payment of any taxes, duties, levies, deductions or withholdings caused or levied in connection with this TRUST AGREEMENT or with the foreclosure procedure of the TRUST ESTATE, except for transfer taxes, if any, payable under applicable law by any purchaser (other than the FIRST PLACE BENEFICIARY or any Person designated by the FIRST PLACE BENEFICIARY for such purpose) of the beneficiary rights or the DESIGNATED ASSETS, which shall be paid by such purchaser in accordance with applicable law;

(b)     Second, the balance, if any, to the payment of all accrued but not paid costs and expenses incurred, and fees and commissions for services rendered, by TRUSTEE in connection with this TRUST AGREEMENT, or to those costs or expenses borne by TRUSTEE;

(c)     Third, the balance, if any, to the payment of costs and expenses (including, without limitation, fees and commissions, but without duplication with the costs and expenses described in item (ii) above) incurred in connection with the sale or other transfer of the TRUST ESTATE;

37

CONFIDENTIAL

(d)   Fourth, the balance, if any, to the FIRST PLACE BENEFICIARY, to the payment (in Dollars) of costs and expenses (including, without limitation, fees, attorneys fees, investment bankers fees and commissions) incurred by FIRST PLACE BENEFICIARY, and to the payment of default interest, ordinary interest, principal, ADDITIONAL FEE and any other amounts (in that order) owed to FIRST PLACE BENEFICIARY pursuant to the SECURED OBLIGATIONS or any other amounts due pursuant to the LOAN DOCUMENTS as certified by the FIRST PLACE BENEFICIARY; and

(e)   Lastly, the balance, if any, to the SECOND PLACE BENEFICIARY.

3.   The SECOND PLACE BENEFICIARY hereby agrees to cooperate fully with the TRUSTEE and the FIRST PLACE BENEFICIARY to carry out the foreclosure and extrajudicial sale of the TRUST ESTATE (or any portion thereof) in accordance with the procedure set forth herein. The SECOND PLACE BENEFICIARY, further agrees to do or cause to be done all such other acts as may be necessary or convenient to expedite such sale or sales of all or any portion of the TRUST ESTATE as contemplated herein, and to execute and deliver such documents and take such other action as the TRUSTEE (pursuant to the written instructions of the FIRST PLACE BENEFICIARY) and/or the FIRST PLACE BENEFICIARY deems necessary or advisable in order that any such sale is carried out in accordance with applicable law.

4.   Due to the fact that the SECURED OBLIGATIONS consist in part of monetary obligations denominated in Dollars, in order to pay such SECURED OBLIGATIONS, (i) the proceeds of the extrajudicial sale of the TRUST ESTATE or any portion thereof that are received in Pesos, and/or (ii) all amounts in Pesos deposited into the TRUST, will be (y) exchanged by

38

CONFIDENTIAL

DANSKE_0016101

TRUSTEE into Dollars using the exchange rate offered by the TRUSTEE to the public, and the currency so exchanged shall be applied by TRUSTEE, up to the resulting converted amount, to the payment of the SECURED OBLIGATIONS and other obligations denominated in Dollars, if any, in the order set forth in numeral 2 above.

5.     Any and all costs and expenses (including, without limitation, fees and commissions) required to be incurred by the TRUSTEE in connection with the extrajudicial sale and distribution of the TRUST ESTATE as set forth in this Clause TWELFTH shall be previously advanced by the SECOND PLACE BENEFICIARY to the TRUSTEE or, to the extent the SECOND PLACE BENEFICIARY fails to do so, may be advanced by the FIRST PLACE BENEFICIARY or the FIRST PLACE BENEFICIARY may provide arrangements satisfactory to TRUSTEE for the payment of all such costs and expenses; provided, however, that any amounts so advanced by the FIRST PLACE BENEFICIARY to the TRUSTEE in connection herewith shall also be secured by the TRUST ESTATE in accordance with this AGREEMENT, and therefore shall constitute, for all legal purposes, part of the SECURED OBLIGATIONS.

In accordance with article 403 of the General Law of Credit Instruments and Operations, the parties to the TRUST AGREEMENT, including the TRUSTEE, Diamante Cabo, acting as the GRANTOR and SECOND PLACE BENEFICIARY, and the FIRST PLACE BENEFICIARY, hereby acknowledge and sign the text contained in this Clause TWELFTH (Special Section) in addition to its execution signature at the end of this TRUST AGREEMENT, and hereby confirm its express consent and irrevocable instruction to the TRUSTEE to carry out the procedure for the extrajudicial

CONFIDENTIAL                                                                    DANSKE_0016102

sale and distribution of the TRUST ESTATE as set forth in this Clause TWELFTH.

Diamante Cabo San Lucas S. DE R.L. DE C.V., as Grantor

Signature: _____

Diamante Cabo San Lucas S. DE R.L. DE C.V., as SECOND PLACE BENEFICIARY

Signature: _____

By: _____

Title: _____

LEHMAN BROTHERS HOLDINGS, INC., as FIRST PLACE BENEFICIARY

Signature: _____

By: _____

Its: _____

40

CONFIDENTIAL

DANSKE_0016103

BANCO J.P. MORGAN, S.A., INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO TRUST DEPARTMENT, ACTING AS TRUSTEE.

Signature: _____

By:_____

Title:_____

**THIRTEENTH. - ASSIGNMENTS.**

(a)    The FIRST PLACE BENEFICIARY may assign or transfer, in whole or in part, its rights hereunder to any third party, individual or entity, without requiring the consent of the TRUSTEE, the GRANTOR or the SECOND PLACE BENEFICIARY to perform such assignment or transfer. The FIRST PLACE BENEFICIARY agrees to notify in writing any such assignment or transfer to the TRUSTEE and the SECOND PLACE BENEFICIARY as soon as practicable, as well as to provide to the TRUSTEE and the SECOND PLACE BENEFICIARY the complete name and contact information of such assignee or transferee.

(b)    The rights and obligations of the SECOND PLACE BENEFICIARY (either as GRANTOR or SECOND PLACE BENEFICIARY)and of the TRUSTEE arising from this AGREEMENT may not be assigned or transferred by any of them without the prior written consent of the FIRST PLACE BENEFICIARY.

41

DANSKE_0016104

**FOURTEENTH. - AMENDMENTS.**

This AGREEMENT may not be changed, amended or modified except in a writing expressly intended for such purpose and executed by the SECOND PLACE BENEFICIARY, the TRUSTEE, and the FIRST PLACE BENEFICIARY.

**FIFTEENTH. - NOTICES.**

Except for notices that require the formality to be delivered by Notary Public or Corredor Publico in Mexico in terms of clause twelfth,  all other notices, demands and requests given or required to be given by, pursuant to, or relating to, this AGREEMENT shall be in writing.  All notices shall be deemed to have been properly given if delivered:  (a) personally, return receipt requested; (b) by courier delivery, return receipt requested; or (c) by facsimile followed by courier or personal delivery, return receipt requested. All notices shall be served at the following addresses and facsimile numbers, and shall become effective upon receipt or refusal to accept delivery as indicated in the return receipt or in the receipt of such courier service:

To the GRANTOR and SECOND PLACE BENEFICIARY:

Kenneth A.  Jowdy

Camino del Mar 323

Col. El Pedregal C.P. 23450

Cabo San Lucas, Los Cabos, BCS.

CONFIDENTIAL

DANSKE_0016105

With a fax copy to:

Bill Najam

2 Dogwood Drive,

Danbury CT 06811

Fax: 203-205-0016

With a fax copy to:

████████████████

Baker & Hostetler, Esq.

666 Fifth Avenue

New York, New York 10103

Fax: 212-589-4201

To the TRUSTEE:

Paseo de las Plamas No. 405 Piso 14

Lomas de Chapultepec,

Mexico City 11000

Tel. 55409330

Fax: 52831620

43

To the FIRST PLACE BENEFICIARY:

**LEHMAN BROTHERS HOLDINGS INC.**

Address:

399 Park Avenue

New York, NY 10022

Attention:  Massod Bhatti

Telephone: 212-526-6220

Facsimile No.    212-520-0130


HERRICK, FRINSTEIN LLP

2 Park Avenue

New York, NY 10016

Attention:  Paul Shapses, Esq.

Facsimile No.: 212-545-3443


The    SECOND  PLACE  BENEFICIARY  and  the  FIRST  PLACE
BENEFICIARY (i) designate the individuals whose names and signatures
appear in the document attached hereto as Exhibit "B" and Exhibit "C",
respectively, as persons authorized to provide instructions to the TRUSTEE
for everything relating to, and in accordance with the terms set forth in this
AGREEMENT, and the TRUSTEE is hereby authorized to act in accordance
with any instructions so provided by any such individuals in accordance with

44

DANSKE_0016107

the terms expressly set forth in this TRUST AGREEMENT, and (ii) hereby release the TRUSTEE of any liability that may arise from the transmission of such instructions. The foregoing, in the understanding that the TRUSTEE shall not be obliged to verify the authenticity of such instructions or communications or to verify the identity of the sender or the confirmer, therefore the parties hereby expressly accept to be bound by the terms of any such instruction or communication that may be sent on its behalf and accepted by the TRUSTEE as provided herein; provided however, that the TRUSTEE shall deliver to the FIRST PLACE BENEFICIARY,  before undertaking any action under this Trust Agreement, any and all notices received from the SECOND PLACE BENEFICIARY.

Notwithstanding the foregoing, the TRUSTEE shall have discretionary power, in case of reasonable suspicion or cause, to act or refrain from acting and/or to request confirmation of any instructions received by the parties hereto in accordance with this AGREEMENT, on the understanding that the TRUSTEE shall forthwith notify in writing such circumstance to the party sending such instruction and request a confirmation thereof.

In the event any instructions are not signed and /or may not be confirmed by the TRUSTEE as contemplated above, the parties hereby expressly instruct the TRUSTEE not to act upon such instructions.

## SIXTEENTH. EXHIBITS AND CAPTIONS.

All documents attached hereto or to which reference is made herein are hereby incorporated by reference into, and shall be deemed a part of, this

45

DANSKE_0016108

TRUST AGREEMENT. The captions and headings contained in this TRUST AGREEMENT are for convenience only and shall in no way define, limit or describe the scope or intent (or otherwise affect the interpretation) of any provision of this AGREEMENT.

## SEVENTEENTH. - WARRANTY ON TITLE AND RIGHT OF POSSESSION (SANEAMIENTO EN CASO DE EVICCION)

(a)    The GRANTOR shall without limitation, be and remain solely liable and be responsible before the TRUSTEE, the FIRST PLACE BENEFICIARY and any third party that acquires an interest in the TRUST ESTATE (or any portion thereof) pursuant to the procedure for the extrajudicial sale and distribution of the TRUST ESTATE set forth in Clause Twelfth, for the warranty of title and right of possession (saneamiento para el caso de evicción) of the TRUST ESTATE or any portion thereof as provided for under Mexican law.

(b)    The GRANTOR hereby authorizes the TRUSTEE and the FIRST PLACE BENEFICIARY to assign or otherwise transfer the rights under this Clause SEVENTEENTH to any third party that acquires an interest in the TRUST ESTATE or any portion thereof pursuant to the procedure for the extrajudicial sale and distribution of the TRUST ESTATE set forth in Clause Twelfth or otherwise.

## EIGHTEENTH. – SRE PERMIT

At the direction of the FIRST PLACE BENEFICIARY, and without obtaining the consent of the SECOND PLACE BENEFICIARY, and regardless of whether an event of default has occurred under the LOAN

46

DANSKE_0016109

DOCUMENTS, the TRUSTEE shall file with the SRE on behalf of the TRUST a request for authorization pursuant to section 11 and 12 of the FIL to permit the FIRST PLACE BENEFICIARY to use and develop the REAL ESTATE PROPERTY (the "SRE PERMIT"). The SECOND PLACE BENEFICIARY shall execute all documents requested by the TRUSTEE for the SRE PERMIT and shall promptly provide all information needed by the TRUSTEE to make the required filing.    The SECOND PLACE BENEFICIARY shall pay for all costs associated with the SRE PERMIT, including reasonable attorneys cost of both the TRUSTEE and the FIRST PLACE BENEFICIARY. Promptly after the SRE PERMIT is obtained by the TRUSTEE, the parties hereby agree to modify this TRUST AGREEMENT as follows:

(a) The purpose of the TRUST shall include the right of the FIRST PLACE BENEFICIARY to use and develop the REAL ESTATE PROPERTY after a NOTICE OF DEFAULT is delivered as provided herein or to be the sole beneficiary of the Trust as provided in Clause TWELFTH above.

(b) The amended Trust shall include all statutory language in relation to the SRE PERMIT.

(c) All other provisions that the FIRST PLACE BENEFICIARY may reasonably deem necessary to properly reflect its ability to use and develop the REAL ESTATE PROPERTY after a NOTICE OF DEFAULT is delivered as provided herein or to be the sole beneficiary of the Trust as provided in Clause TWELFTH above; and

(d)  any of the conditions established by the SRE.

47

DANSKE_0016110

The following events shall also be considered events of default under the LOAN DOCUMENTS, unless they are expressly waived in writing by the FIRST PLACE BENEFICIARY in the events of paragraphs (b) and/or (c) below:

(a) The failure by the SECOND PLACE BENEFICIARY to comply with its obligations under this Clause;

(b) Denial of the SRE PERMIT by the SRE in case it is required pursuant to FIL; and

(c) The failure to obtain the SRE PERMIT within 60 days after the FIRST PLACE BENEFICIARY directs the TRUSTEE to cause the SRE PERMIT filing to be made on behalf of the TRUST.

**NINETEENTH. - REGISTRATION OF TRUST.**

The SECOND PLACE BENEFICIARY, through the Notary Public or the Public Broker or through any person empowered for this purpose, shall be entrusted to file this TRUST AGREEMENT for its record with the Public Registry of Property and Commerce, corresponding to the Municipality of San José del Cabo, Baja California Sur, within three (3) business days after the date of execution thereof, with the previous payment of the corresponding duties.

**TWENTIETH. - SEPARABILITY.**

This AGREEMENT may be executed in several copies and shall be considered as an original, provided that all of them will constitute the same

48

CONFIDENTIAL

DANSKE_0016111

and only instrument. Should any provision of this TRUST AGREEMENT is considered illegal or not wholly applicable, in certain circumstances, said provision shall be modified only in the event that it may be necessary in order to become valid, or applicable in view of the circumstances, or shall be deleted from this TRUST AGREEMENT, as required by the circumstances, and this TRUST AGREEMENT shall be interpreted and executed as if said provisions have been included in this instrument with such scope and modified application, or otherwise, as if it never had been included, as the case may be.

## TWENTY-FIRST. - SUPPLEMENTAL CONTRIBUTIONS.

Pursuant to the provisions of article 401 of the Law on Credit Instruments and Operations, the value of loss, damage or spoilage risks on the TRUST ESTATE, is at SECOND PLACE BENEFICIARY's expense, and must allow the other parties to inspect them in order to verify its general state of preservation.

## TWENTY-SECOND. - GOVERNING LAW.

For everything related to the interpretation and fulfillment of this TRUST AGREEMENT, the parties expressly submit themselves to the Laws and Courts of Mexico City, Federal District or Baja California Sur at the election of the party filing the suit, and the parties hereby expressly waive any other jurisdiction which may correspond by reason of their present or any future domiciles, or by any other reason.

## TWENTY-THIRD. –LABOR RELATIONS.

49

DANSKE_0016112

Neither the FIRST PLACE BENEFICIARY nor the TRUSTEE, nor their respective subsidiaries, affiliates and related companies, as well as their respective officers, directors, employees, agents and advisors shall have under any circumstance a labor relationship with the SECOND PLACE BENEFICIARY or any person hired directly or indirectly by the SECOND PLACE BENEFICIARY. The SECOND PLACE BENEFICIARY agrees and without limitation, to defend, indemnify, and hold harmless TRUSTEE and the FIRST PLACE BENEFICIARY, and their respective subsidiaries, affiliates and related companies, as well as their respective officers, directors, employees, agents and advisors, from any and all labor claims, demands, penalties, causes of action, fines, liabilities, settlements, damages, costs or expenses of whatever kind and any nature, known or unknown, foreseen or unforeseen, contingent or otherwise (including, without limitation, reasonable attorneys' fees and disbursements) arising out of or incurred in connection with this Clause.

----LEGAL AFFIDAVITS AND SIGNATURE REFERENCES[2]----

[INSERTED BY NOTARY PUBLIC]

---

[2] This section was not translated since it does not contain any rights or obligations.

50

CONFIDENTIAL

DANSKE_0016113

Exhibit "A"

[See Fee Proposal Attached][3]

---

[3] This document will be in English, as provided by JP Morgan, followed by official translation into Spanish.

51

DANSKE_0016114

Exhibit "B"[4]

9 de marzo de 2006

**Banco J.P. Morgan, S.A., I.B.M.**
**J.P. Morgan Grupo Financiero,**
**Paseo de las Palmas No. 405,**
**Piso 14, Torre Óptima I**
**Colonia Lomas de Chapultepec**

**C.P. 11500, México, D.F**

**Atención: División Fiduciaria**

Re:     Fideicomiso     No.
F/000321

El que suscribe Kenneth A. Jowdy, Gerente General de Diamante Cabo San Lucas, S. de R.L. de C.V. (la "Fideicomisaria en Segundo Lugar"), en relación con el Fideicomiso No. F/000321, mediante el cual Banco J.P. Morgan, S.A. Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria funge como Fiduciario (el "Fiduciario"), certifica que: (i) las personas cuyos nombres se listan a continuación (las Personas Autorizadas) se encuentran debidamente facultadas para indistintamente girar instrucciones en nombre y orden de la Fideicomisaria en Segundo Lugar de conformidad con los términos y condiciones del Contrato de Fideicomiso en referencia (i) vía Telefax/Facsímile; y/o (ii) por correo, mensajería o paquetería en carta

---

[4] The exhibits were provided by JPMCB. They basically identify and name the representative for each of the parties. Let me know if you need a translation.

52

CONFIDENTIAL                                                  DANSKE_0016115

Case 2:13-cr-00607-JFB-AYS   Document 851-3   Filed 06/20/20   Page 55 of 58 PageID #: 22364

original en papel membretado; (ii) la firma autógrafa que aparece en ésta certificación al lado de las Personas Autorizadas, es la firma con la que se ostentan; (iii) que las Personas Autorizadas están autorizadas para recibir llamadas telefónicas de confirmación de parte del Fiduciario para confirmar instrucciones, (iv) que el Fiduciario solamente deberá reconocer como válidas las instrucciones giradas por las Personas Autorizadas; y (v) que el Fiduciario quedará libre de cualquier responsabilidad siempre que siga conforme al Contrato de Fideicomiso cualquier instrucción girada por las Personas Autorizadas.

| Nombre | Firma | Teléfono |
|---|---|---|
| Kenneth A. Jowdy | | |

Sin más por el momento, quedamos a sus órdenes.

Atentamente,

_____

Por: Kenneth A. Jowdy

Cargo: Gerente General

53

CONFIDENTIAL

DANSKE_0016116

## Exhibit "C"

9 de marzo de 2006

**Banco J.P. Morgan, S.A., I.B.M.**

**J.P. Morgan Grupo Financiero,**

**Paseo de las Palmas No. 405,**

**Piso 14, Torre Óptima I**

**Colonia Lomas de Chapultepec**

**C.P. 11500, México, D.F**

**Atención: División Fiduciaria**

Re:   Fideicomiso   No.
F/000321

El que suscribe ███████████████ representate de Lehman Brothers Holdings, Inc. (la "Fideicomisaria en Primer Lugar"), en relación con el Fideicomiso No. F/000321, mediante el cual Banco J.P. Morgan, S.A. Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria funge como Fiduciario (el "Fiduciario"), certifica que: (i) la(s) persona(s) cuyos nombres se listan a continuación (las Personas Autorizadas) se encuentran debidamente facultadas para indistintamente girar instrucciones en nombre y orden de la Fideicomisaria en Primer Lugar de conformidad con los términos y condiciones del Contrato de Fideicomiso en

54

CONFIDENTIAL

DANSKE_0016117

referencia (i) vía Telefax/Facsímile; y/o (ii) por correo, mensajería o paquetería en carta original en papel membretado; (ii) la firma autógrafa que aparece en ésta certificación al lado de las Personas Autorizadas, es la firma con la que se ostentan; (iii) que las Personas Autorizadas están autorizadas para recibir llamadas telefónicas de confirmación de parte del Fiduciario para confirmar instrucciones, (iv) que el Fiduciario solamente deberá reconocer como válidas las instrucciones giradas por las Personas Autorizadas; y (v) que el Fiduciario quedará libre de cualquier responsabilidad siempre que siga conforme al Contrato de Fideicomiso cualquier instrucción girada por las Personas Autorizadas.

**Personas Autorizadas:**

| Nombre | Firma | Teléfono / E-Mail |
|---|---|---|
| Masood Bhatti | _____ | +(212) 526-6220 <br> mbhatti@lehman.com |

Sin más por el momento, quedamos a sus órdenes.

55

CONFIDENTIAL

DANSKE_0016118

Atentamente,

_____

Por: ████████████████████████████

Cargo: Representante Legal.

DALLAS 1619034v13

56

CONFIDENTIAL

DANSKE_0016119