# EXHIBIT 27

**LEHMAN BROTHERS BANKHAUS AG**
**LEHMAN BROTHERS INTERNATIONAL EUROPE**
**LEHMAN COMMERCIAL PAPER INC.**
**LEHMAN BROTHERS JAPAN INC.**
**LEHMAN BROTHERS HOLDINGS INC.**

March 17th, 2005

DANSKE BANK A/S, LONDON BRANCH
75 King William Street
London
EC4N 7DT, England
       Attention: <u>Carol Powell, Manager—Credit Documentation</u>

<u>Re: Committed Secured Revolving Repurchase Facility</u>

Ladies and Gentlemen:

      **I.** This letter agreement ("*Committed Repurchase Facility Agreement*") amends and restates the *Second Restated Facility Agreement* dated 20 November 2003 ("Existing Facility Agreement") by and among between **Danske Bank A/S, London Branch** ("Danske London") **Lehman Brothers Bankhaus AG** ("LBBAG") and **Lehman Brothers International (Europe)** ("LBIE"). This *Committed Repurchase Facility Agreement* shall be effective as of 17 March 2005 ("Effective Date").

      **II.** Danske London, LBBAG and LBIE agree to add:

    Lehman Commercial Paper Inc. ("LCPI") and

    Lehman Brothers Holdings Inc. ("LBHI")

as parties to this *Committed Repurchase Facility Agreement* and LCPI and LBHI agree to become parties to this *Committed Repurchase Facility Agreement* and to be bound by its terms. For purposes of all Transactions under this *Committed Repurchase Facility Agreement*, any of LBBAG, LBIE, LCPI and LBHI may be Seller, and Danske London will be Buyer.

      **III.** This *Committed Repurchase Facility Agreement* confirms the agreement of Danske London, LBBAG, LBIE, LCPI and LBHI to enter into repurchase transactions upon request by Seller from time to time subject to and upon the terms and conditions set forth herein and

- in the *Master Repurchase Agreement*, dated August 30, 1999, among Danske London, LBIE and LBBAG and others (as amended from time to time, the "Master Agreement"),
- the *Custodial Undertaking in Connection with Master Repurchase Agreement* (as amended from time to time, the "FI-Custodial Undertaking"), dated August 17, 1995, among Danske London, LBIE, LCPI and JPMorgan Chase Bank (formerly, The Chase Manhattan Bank) and others, and
- the *Custodial Undertaking in Connection with Master Repurchase Agreement* (as amended from time to time, the "WL-Custodial Undertaking"), dated August 30, 1999, among Danske London, LBIE, LBBAG and JPMorgan Chase Bank (formerly, The Chase Manhattan Bank) and others

(the Master Agreement, the FI-Custodial Undertaking, and the WL-Custodial Undertaking, collectively, the "Agreements").

Lehman $800m Facility Execution

IV. As from the Effective Date, all outstanding Transactions entered into by the parties pursuant to the Existing Facility Agreement shall continue and be governed by the terms of this *Committed Repurchase Facility Agreement*. For the avoidance of doubt, any change in economics arising from this *Committed Repurchase Facility Agreement* shall take effect on the Effective Date, provided, however, that for outstanding Transactions, the current Interest Period and the Pricing Rate, as provided in the Existing Facility Agreement, shall continue.

V. To the extent the terms of this *Committed Repurchase Facility Agreement* and the terms of the Agreements differ, the terms of this *Committed Repurchase Facility Agreement* shall control.

VI. All obligations of LBBAG, LBIE, and LCPI are guaranteed by LBHI in accordance with the guarantee dated 17 March 2005 and attached hereto as Schedule B.

VII. Capitalized terms not defined herein have the respective meanings given to them in the Agreements. The Facility Terms are as follows:

| FACILITY TERMS | |
|---|---|
| 1. **Maximum Quantity:** | The maximum aggregate Purchase Price outstanding at any one time shall be $800,000,000. |
| 2. **Seller:** | LBBAG, LBIE, LCPI or LBHI, as applicable. |
| 3. **Transactions; Minimum, Increases:** | The amount and term of each Transaction will be determined by Seller from time to time in its sole discretion. |
| 4. **Term of Transactions:** | Each Transaction under this *Committed Repurchase Facility Agreement* shall continue in existence until Notice of Termination is received from Buyer in accordance with Sections 5 and 6 below. |
| 5. **Termination and Buyer's Right to Terminate Facility Agreement or Transaction:** | (1) Buyer's Right to Terminate Facility in the Event of Seller Default: This *Committed Repurchase Facility Agreement* shall terminate ("Facility Termination Date") with respect to a Seller on the date on which an Event of Default has occurred and been declared in respect of such Seller pursuant to the Master Agreement. Following such occurrence and declaration of an Event of Default, all Transactions hereunder with respect to such Seller shall terminate in accordance with the Master Agreement.<br><br>For the avoidance of doubt, if an Event of Default occurs in respect one or more Sellers but not to all Sellers, this *Committed Repurchase Facility Agreement* shall terminate in respect of the defaulting Sellers and shall continue in full force and effect between Buyer and the non-defaulting Sellers, with no alteration of any terms hereof but for cessation of the defaulting Sellers as parties hereto. Termination with respect to a Seller shall not affect any liabilities of such terminated party owed to Buyer under this *Committed Repurchase Facility Agreement* prior to termination. |
| 6. **Maturity Dates** | The initial Maturity Date, in respect of the Facility, shall be the date falling fifteen-months after the Effective Date of this *Committed Repurchase Facility Agreement*. The Maturity Date shall automatically be extended by a period of three months at the end of each successive three-month anniversary of the Effective Date.<br><br>The Buyer may at any time give notice to the Sellers that the Maturity Date will be the date falling fifteen months from the date on which the Buyer gives notice to the Sellers of the date which will, from the date of that notification, be the Final Maturity Date. |
| 7. **Eligible Collateral:** | As set forth on Schedule A and marked-to-market in accordance with the FI-Custodial Undertaking, and the WL-Custodial |

Lehman $800m Facility Execution

CONFIDENTIAL                                                                                                    DANSKE_0015720

| FACILITY TERMS | |
|---|---|
| | Undertaking, as appropriate. |
| 8. Buyer's Margin Percentage: | As set forth on Schedule A. |
| 9. Pricing Rate and Expenses: | The Pricing Rate for any Transaction shall equal the per annum London Interbank Offered Rate ("LIBOR") corresponding to the Interest Period (as defined below) as calculated on the day that is two London Business Days prior to (1) the Purchase Date with respect to a new Transaction or (2) the expiration date of the elected Interest Period with respect to a continuing Transaction, plus 35 bps.<br><br>The Interest Period is defined as the term of the Transaction (as recorded in the initial confirmation in respect of such Transaction), and shall be a seven-day, fourteen day, or one, two, three, or six month period, or such other Interest Period as the Borrower and Bank agree. If upon the expiration of the time for notification of any new Interest Period, the Borrower has failed to elect a new Interest Period to be applicable to such Borrowing as provided above, then the Borrower shall be deemed to have elected an Interest Period of seven days for such Borrowing<br><br>In the event that Seller prepays a Transaction, in whole or in part, on a Business Day that is not the last day of the applicable Interest Period, Seller shall pay Buyer Breakage Costs (as defined below) in accordance with Section 17 herein.<br><br>Further, Seller shall pay to Buyer on demand by Buyer an amount equal to the cost of all reserves actually imposed on, or actually incurred by, Buyer in connection therewith, provided however, that Buyer shall provide documentation reasonably acceptable to LBBAG, LBIE, LCPI or LBHI (as the case may be) detailing the amount and nature of such imposed reserves and costs thereof. |
| 10. Interest Payments: | Interest accrued shall be due and payable on each of (i) the last day of each Interest Period or (ii) on the Repurchase Date of any Transaction hereunder, or (iii) the date on which a Seller makes a prepayment in accordance with Section 14 herein, or (iv) termination of this *Committed Repurchase Facility Agreement*, either by its terms or for any reason whatsoever. |
| 11. Facility Fee | LBBAG, LBIE, LCPI and LBHI shall pay Buyer a facility fee (the "Facility Fee") calculated on the undrawn portion of the Purchase Price of $800,000,000. The computation of the Facility Fee shall be made on the basis of a year of 360 days, at an interest rate equal to 15 bps. The Facility Fee shall be calculated by Danske London, with such calculation to be conclusive and binding on LBBAG, LBIE, LCPI and LBHI in the absence of manifest error. The Facility Fee shall be payable in arrears quarterly on the last day of each March, June, September and December, commencing 31 March 2005, as well as on the Final Maturity Date and any Facility Termination Date. |
| 12. Notice of Purchase: | Seller shall notify Buyer via telephone or by way of an electronic messaging system ("Notice of Purchase") not later than 12:00 P.M. (New York City time) two Business Days prior to the Purchase Date for a particular Transaction of its intent to enter into a transaction.<br><br>Each Transaction may be evidenced by a notice of purchase in substantially the form of Exhibit 1 hereto ("Notice of Purchase"), or, in the absence of such Notice of Purchase, a (i) Confirmation |

Lehman $800m Facility Execution

CONFIDENTIAL                                    DANSKE_0015721

| FACILITY TERMS ||
|---|---|
| | pursuant to the *Master Agreement* or (ii) an "information statement" in accordance with Section 6 or 8 as the case may be of the applicable *Custodial Undertaking*. |
| 13. Market Value: | As defined in the applicable Custodial Undertaking. |
| 14. Voluntary Prepayments by Seller: | Seller shall be allowed to prepay the Purchase Price in whole or in part at any given time of any Business Day. Seller shall notify Buyer of such election to prepay not later than 10:00 AM (New York City time) on the Business Day on which Seller intends to prepay. |
| 15. Custodian: | JPMorgan Chase Bank, New York, New York, or any successor thereto. |
| 16. Substitution: | Without limiting the rights of a Seller under the Master Agreement, at any time, from time to time, Seller shall have the unlimited right to substitute or withdraw Purchased Assets and substitute other Eligible Assets provided that the substituted Assets are Eligible Assets as set forth in Schedule A herein and/or as provided for in the Custodial Undertaking. |
| 17. Additional Terms: | Breakage Costs: The product of (i) the prepayment amount, (ii) the current Pricing Rate less the interpolated LIBOR with designated maturity equal to Breakage Days as determined on the prepayment date (if positive and if not positive then zero (0)), and (iii) Breakage Days divided by 360. The parties agree that if the current pricing rate is less than or equal to such interpolated LIBOR, there shall be no Breakage Costs.<br><br>Breakage Days: The actual number of days from and including the prepayment date to the Business Day prior to the next scheduled day when interest payment is due.<br><br>Intermediation by Lehman Brothers Inc. With respect to the execution of Transactions contemplated under this *Committed Repurchase Facility Agreement*, Lehman Brothers Inc. (an affiliate of LBBAG, LBIE, LCPI and LBHI) shall act as agent for LBBAG, LBIE, LCPI and LBHI. Such agency may take the form of communications with Buyer as well as the booking of Transactions. |
| 18. Assignability: | No party may assign this *Committed Repurchase Facility Agreement* without the written consent of all other parties. |
| 19. Governing Law: | State of New York, without giving effect to the conflict of law principles thereof. |
| 20. Modification: | Any of the terms of this *Committed Repurchase Facility Agreement* may be modified or supplemented by mutual agreement of the parties evidenced by a writing signed by the parties hereto. |
| 21. Usages: | "Business Day": as defined in the Custodial Undertaking. If any day upon which performance is due or action may be taken under this Letter Agreement is not a Business Day, then the immediately following Business Day shall be deemed the day upon which such performance is due or such action may be taken.<br><br>Regarding currency: All amounts stated are in U.S. Dollars. |
| 22. Information for Notices for Purposes of this Second Restated Facility Agreement | If to Danske London:<br><br>75 King William Street<br>London, EC4N 7DT<br>—For *Credit matters*: Simon Howarth or Carol Powell |

Lehman $800m Facility Execution

CONFIDENTIAL
DANSKE_0015722

| FACILITY TERMS | |
|---|---|
| | Tel: +44 207 410 8175<br>Fax: +44 20 7410 8001<br>—For *Administration matters*: Mark Brown<br>Tel: +44 207 410 8167<br>Fax: +44 44 20 7410 8002<br><br>If to LBBAG:<br>    c/o Lehman Brothers Inc.<br>    745 Seventh Avenue, Fl. 4<br>    New York City, NY 10019<br>    Attention: Henry C. Lee<br>    Tel: 212-526-7110<br><br>If to LBIE:<br>    c/o Lehman Brothers Inc.<br>    745 Seventh Avenue, Fl. 4<br>    New York City, NY 10019<br>    Attention: Henry C. Lee<br>    Tel: 212-526-7110<br><br>If to LCPI:<br>    c/o Lehman Brothers Inc.<br>    745 Seventh Avenue, Fl. 4<br>    New York City, NY 10019<br>    Attention: Henry C. Lee<br>    Tel: 212-526-7110<br><br>If to LBHI:<br>    c/o Lehman Brothers Inc.<br>    745 Seventh Avenue, Fl. 4<br>    New York City, NY 10019<br>    Attention: Henry C. Lee<br>    Tel: 212-526-7110 |

    This *Committed Repurchase Facility Agreement* may be executed in counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page of this *Committed Repurchase Facility Agreement* by facsimile or other electronic transmission shall be as effective as delivery of a mutually signed counterpart hereof.

[remainder of page intentionally left blank]

Lehman $800m Facility Execution

# CERTIFICATE OF INCUMBENCY AND SIGNATURE

I, Aaron Guth, a duly elected, qualified and acting Assistant Secretary of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby certify that the person listed below holds the office in the Corporation indicated opposite his name on the date hereof and that the signature appearing opposite his name is the specimen signature of such person:

| NAME | OFFICE | SIGNATURE |
|---|---|---|
| Oliver Budde | Vice President | *[signature]* Oliver Budde Vice President |

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of this Corporation this 23rd day of June, 2004.

*[signature]*
Name: Aaron Guth
Title: Assistant Secretary

648017.2

CONFIDENTIAL                                                                                             DANSKE_0015724

IN WITNESS WHEREOF, the parties have executed this *Second Restated Facility Agreement* on the respective dates specified below with effect from the date specified as the Effective Date on the first page.

Very truly yours,

**DANSKE BANK A/S, LONDON BRANCH**

By: _____  By: _____

Name: S. Howarth                     Name: Tata Rowan

Title: Senior Manager                Title: Manager

Date: _____  Date: _____

**LEHMAN BROTHERS BANKHAUS AG**

By: _____

Name: _____

Title: _____

Date: _____

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____

Name: _____

Title: _____

Date: _____

Lehman $800m Facility Execution

IN WITNESS WHEREOF, the parties have executed this *Second Restated Facility Agreement* on the respective dates specified below with effect from the date specified as the Effective Date on the first page.

Very truly yours,

**DANSKE BANK A/S, LONDON BRANCH**

By: _____   By: _____

Name: _____   Name: _____

Title: _____   Title: _____

Date: _____   Date: _____

**LEHMAN BROTHERS BANKHAUS AG**

By: _____*[signature]*_____ _____*[signature]*_____

Name: ___VIDALIE___ ___Bormann___

Title: ___Executive___ ___Director___

Date: ___30.03.2005___ ___29-3-2005___

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____

Name: _____

Title: _____

Date: _____

Lehman $800m Facility Execution.doc

CONFIDENTIAL

IN WITNESS WHEREOF, the parties have executed this *Second Restated Facility Agreement* on the respective dates specified below with effect from the date specified as the Effective Date on the first page.

Very truly yours,

**DANSKE BANK A/S, LONDON BRANCH**

By: _____      By: _____

Name: _____      Name: _____

Title: _____      Title: _____

Date: _____      Date: _____

**LEHMAN BROTHERS BANKHAUS AG**

By: _____

Name: _____

Title: _____

Date: _____

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____[signature]_____

Name: __ths G Rees_____

Title: __Authorised Signatory_____

Date: _____

Lehman $800m Facility Execution4.doc

CONFIDENTIAL                                                                                         DANSKE_0015727

IN WITNESS WHEREOF, the parties have executed this *Second Restated Facility Agreement* on the respective dates specified below with effect from the date specified as the Effective Date on the first page.

Very truly yours,

**DANSKE BANK A/S, LONDON BRANCH**

By: _____  By: _____

Name: _____  Name: _____

Title: _____  Title: _____

Date: _____  Date: _____

**LEHMAN BROTHERS BANKHAUS AG**

By: _____

Name: _____

Title: _____

Date: _____

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____[signature]_____

Name: _____Jane Burrows_____

Title: _____Authorised Signatory_____

Date: _____

Lehman $800m Facility Execution3.doc

CONFIDENTIAL                                                                              DANSKE_0015728

LEHMAN COMMERCIAL PAPER INC.

By: _____

Name: _____T. COURTNEY JENKINS_____

Title: _____VICE PRESIDENT_____

Date: _____

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name: _____

Title: _____

Date: _____

Lehman $800m Facility Execution1

CONFIDENTIAL

DANSKE_0015729

**LEHMAN COMMERCIAL PAPER INC.**

By: _____

Name: _____

Title: _____

Date: _____

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____[signature]_____

Name: NAHILL YOUNIS

Title: ASSISTANT TREASURER

Date: _____

Lehman $800m Facility Execution1

CONFIDENTIAL                                                                                                DANSKE_0015730

# EXHIBIT 1—
## Form of Notice of Purchase

To: _____
      Danske Bank A/S, London Branch

From: _____
      Lehman Brothers Bankhaus AG, Lehman Brothers International (Europe), Lehman Commercial Paper Inc., or Lehman Brothers Holdings Inc.

Date: _____, 200_

Subject: Notice of Repurchase Transaction [Number_____]

This communication serves as notice under that certain letter agreement dated [DATE], setting forth our agreement as to your commitment, as Buyer, to enter into repurchase transactions with us as Seller, in accordance with the terms thereof (the "*Committed Repurchase Facility Agreement*"). The purpose of this communication is to notify you of the terms and conditions of the above repurchase transaction to be entered into between us on the Purchase Date referred to below. Capitalized terms herein have the same meaning as set forth in the *Committed Repurchase Facility Agreement*.

This notice supplements and forms part of, and is subject to, the *Committed Repurchase Facility Agreement* (as the same may be amended from time to time). All provisions contained in the *Committed Repurchase Facility Agreement* govern this notice except as expressly modified below.

1. Purchase Date: _____

2. Repurchase Date: _____

3. Purchase Price: _____

4. Initial Interest Period (pursuant to section 8 of the *Committed Repurchase Facility Agreement*): _____

5. Additional Terms [if any:] _____

**Agreed to and Accepted by:**
**DANSKE BANK A/S, LONDON BRANCH**

By: _____    By: _____

Name: _____    Name: _____

Title: _____    Title: _____

Date: _____    Date: _____

Lehman $800m Facility Execution

CONFIDENTIAL                                                                                   DANSKE_0015731

## SCHEDULE A—
## Eligible Assets

| Collateral Type | Minimum Credit Rating | Single underlying obligor limit | Haircut (%) |
|---|---|---|---|
| Commercial Whole Loans | N/A | 40% | 115 |
| Residential Whole Loans | N/A | 40% | 105 |
| Asset Backed Securities | C-/Caa3/C | 20% | 115 |
| Corporate Bonds | C-/Caa3/C | 10% | 115 |
| MTN's | C-/Caa3/C | 10% | 115 |
| Auction Rate Notes | C-/Caa3/C | 10% | 115 |
| Municipal Securities | C-/Caa3/C | 10% | 115 |
| MBS Strips | C-/Caa3/C | 10% | 115 |
| Private Label MBS & CMO's | C-/Caa3/C | 10% | 115 |
| Funded High Yield Corporate Loans | * See below | 10% | 115 |
| Cash | N/A | N/A | 100 |

\* Acceptability to be at the Buyer's reasonable discretion, exercised in good faith, and pending amendment of the relevant custodial documents to accommodate such assets.

## SCHEDULE B—
### Guarantee of LBHI to Dankse London

(to come)

Lehman $800m Facility Execution

CONFIDENTIAL

DANSKE_0015733

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

To:    Danske Bank A/S, London Branch

As an inducement to you for, and in consideration of, your making or extending in your discretion one or more loans or advances or other credit facilities or financial accommodations (all of which are hereinafter referred to as the "Obligations") to Lehman Brothers Bankhaus AG ("LBBAG"), Lehman Brothers International (Europe) ("LBIE"), Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Japan Inc. ("LBJ") (hereinafter called the "Borrowers") pursuant to the letter agreement ("Committed Repurchase Facility Agreement") dated 17 March 2005 by and among Danske Bank A/S, London Branch ("Danske London") LBBAG, LBIE, LCPI, LBJ and Lehman Brothers Holdings Inc., which agreement amended and restated the Second Restated Facility Agreement dated 20 November 2003 ("Existing Facility Agreement") by and among Danske London, LBBAG and LBIE,, we do hereby absolutely and unconditionally guarantee to you, your successors, endorsees, and assigns, the payment by the Borrowers of their Obligations to you, your successors, endorsees, and assigns, now existing, or which hereafter may be contracted or existing, as the same shall respectively become due, whether at maturity, by declaration, demand, or otherwise, together with accrued interest and charges, and we agree to reimburse you for all expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment thereof.

This Guarantee is absolute and unconditional without limitation as to monetary amount or duration. We shall have no right of subrogation with respect to any payments we make under this Guarantee until all Obligations of the Borrowers to you are paid in full.

This Guarantee is a guarantee of payment, and not of collection, and you may exercise your rights hereunder against us without first having to take any action against the Borrowers, or any other guarantor. We agree that in the event the Obligations which are guaranteed hereunder are paid, our liability as guarantor shall continue and remain in full force and effect in the event that all or part of such payment is recovered from you as a preference or fraudulent transfer under the Federal Bankruptcy Code, or any similar applicable state or foreign law.

We hereby waive diligence, presentment, protest, demand of any kind in connection with the delivery, acceptance, performance, default or enforcement of this Guarantee.

This Guarantee shall be binding upon us, our successors and assigns.

This Guarantee will remain in full force and effect until the first to occur of (a) a notice by us to you that we are terminating the Guarantee or (b) the Obligations are no longer in existence. Termination of this Guarantee shall not effect our liability hereunder as to the obligations incurred or arising out of transactions entered into prior to the termination hereof.

CONFIDENTIAL

DANSKE_0015734

At such time as this Guarantee is delivered to you, this Guarantee shall entirely supersede and replace any other guarantee previously delivered by us or any of our affiliates to you with regard to the Obligations of the Borrowers, and no previously delivered guarantee with regard thereto shall be honored by us or any of our affiliates.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, I have hereunto set my hand on March 17, 2005.

LEHMAN BROTHERS HOLDINGS INC.

By: *(signature)*
Name: Oliver Budde
Title: Vice President

2

CONFIDENTIAL                                                      DANSKE_0015735