# EXHIBIT 30

# TRI-PARTY CUSTODY AGREEMENT

by and among

## DANSKE BANK A/S, LONDON BRANCH ("*Buyer*")

and

## LEHMAN COMMERCIAL PAPER INC. ("*Seller*")

and

## JPMORGAN CHASE BANK, N.A.
("*Master Custodian*" or "*Chase*")

Dated as of 21 April 2006

CONFIDENTIAL

DANSKE_0015839

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| Section 1. | Definitions | 1 |
| Section 2. | **Services of Master Custodian** | 5 |
| a. | Appointment of Master Custodian | 5 |
| b. | Acceptance of Master Custodian | 5 |
| c. | Scope of Master Custodian's Duties | 5 |
| d. | Sub-Custodians; Scope of Liability; Asset Custody | 5 |
| Section 3. | **Representations, Warranties and Agreements** | 6 |
| a. | Representations of Buyer, Seller and Master Custodian | 6 |
| b. | Further Representations and Covenants of Buyer and Seller | 7 |
| c. | Further Representations and Covenants of Master Custodian | 8 |
| d. | Continuing Agreement of All Parties | 9 |
| Section 4. | **Maintenance of Buyer's Master Custodial Account and Seller's Master Custodial Account** | 9 |
| a. | Buyer's Master Custodial Account and Seller's Master Custodial Account | 9 |
| b. | Transfer of Assets to Master Custodial Accounts | 9 |
| c. | Segregation of Assets | 9 |
| d. | No Lien or Pledge By Master Custodian | 10 |
| Section 5. | **Arrangements Prior to Repurchase Transaction; Receipt of Instructions; Payment of Moneys; Delivery of Assets** | 10 |
| a. | Seller's Instructions | 10 |
| b. | Buyer's Purchase Price | 10 |
| c. | Seller's Tender of Assets | 11 |
| d. | Cash Accounts | 11 |
| e. | Review of Sub-Custodian Data Files and Receipt of Trust Receipts By Master Custodian | 11 |
| f. | Single Trust Receipt | 14 |
| g. | Failure of Seller to Transmit Seller's Asset Composition Data File | 15 |
| h. | Failure of Seller to Transmit Seller's Repurchase Transaction Data File | 15 |
| Section 6. | **Effecting Transactions; Grant of Security Interest** | 15 |
| a. | Purchase Date | 15 |
| b. | Market Value of Assets | 16 |
| c. | Determination of Aggregate Market Value | 17 |
| d. | Payment of Purchase Price | 17 |
| e. | Repurchase Date | 17 |
| f. | Simultaneous Transactions | 18 |
| g. | Effect of Notice of Levy, etc. | 18 |
| h. | Ownership of Purchased Assets | 18 |
| i. | Deliveries by Master Custodian | 18 |
| j. | Seller's Grant of a Security Interest | 18 |

CONFIDENTIAL

DANSKE_0015840

Section 7.   Valuation and Substitution of Assets ................................................19
   a.   Margin Deficit................................................................................19
   b.   Margin Excess................................................................................19
   c.   Substitutions of Purchased Assets ..............................................20
   d.   Release of Mortgage Files for Servicing .....................................20

Section 8.   Master Custodian Statements ..........................................................21

Section 9.   Master Custodian Fee........................................................................21

Section 10.  No Guaranty by Master Custodian ..................................................21

Section 11.  Force Majeure ....................................................................................21

Section 12.  Concerning Master Custodian..........................................................22
   a.   Delay in Receiving Assets .............................................................22
   b.   Forgery; False Data.......................................................................22
   c.   No Duty of Inquiry........................................................................23
   d.   Price Data.......................................................................................23
   e.   Limitation of Liability..................................................................23

Section 13.  Indemnification ..................................................................................24

Section 14.  Continuing Disputes..........................................................................24

Section 15.  Form of Instructions .........................................................................25

Section 16.  Termination ........................................................................................25

Section 17.  Notice of Default; Control..................................................................25
   a.   Delivery of Notice of Default .......................................................25
   b.   Effect of Buyer's Notice of Default..............................................26
   c.   Control ............................................................................................26
   d.   Effect of Seller's Notice of Default..............................................27
   e.   Further Assurances.......................................................................27
   f.   Master Custodian's Knowledge ...................................................27

Section 18.  Miscellaneous......................................................................................27
   a.   Authorized Personnel....................................................................27
   b.   Funds Transfers.............................................................................28
   c.   Notices ............................................................................................28
   d.   Amendments ..................................................................................29
   e.   Binding Agreement........................................................................29
   f.   Examination of Master Custodian's Files; Examination of Sub-Custodian's Files..........................................................................29
   g.   Survival...........................................................................................29
   h.   Applicable Law; Jurisdiction .......................................................29
   i.   Headings and References...............................................................29

ii

CONFIDENTIAL
DANSKE_0015841

j.    Counterparts............................................................................30
k.    Time Zone...............................................................................30
l.    Application of UCC Article 8 ................................................30

## SCHEDULES

| SCHEDULE 1 | List of Additional Asset Types (Grade D Assets) |
| SCHEDULE 2 | Form of Master Custodian Data File |
| SCHEDULE 3 | Form of Seller's Repurchase Transaction Data File (Liability File) |
| SCHEDULE 4 | Form of Seller's Asset Composition Data File (Asset File) |
| SCHEDULE 5 | File Format for Spreads File |
| SCHEDULE 6 | Form of Detail Schedule for Buyer |
| SCHEDULE 7 | Assumed Prices for Commercial and Residential Mortgage Loans |
| SCHEDULE 8 | Form of Seller's Instructions to Master Custodian |
| SCHEDULE 9 | Form of Master Custodian's Notice to Buyer (Receipt of Seller's Instructions) |
| SCHEDULE 10 | Form of Seller's Pre-Allocation Schedule |

## EXHIBITS

| EXHIBIT A | *REDACTED* |
| EXHIBIT B | Form of Information as to Buyer |
| EXHIBIT C | Form of Seller Account Information |
| EXHIBIT D | Form of Tri-Party Sub-Custodial Agreement |
| EXHIBIT E | I/C/W Exhibit B, Signing Authority for Buyer |

iii

CONFIDENTIAL

This **TRI-PARTY CUSTODY AGREEMENT** is made and entered into as of the date written on the cover by and among Buyer, Master Custodian and Seller.

**WHEREAS,** Buyer and Seller have entered into the Master Repurchase Agreement and

**WHEREAS,** Buyer and Seller have agreed to enter into this Agreement to facilitate Repurchase Transactions pursuant to the Master Repurchase Agreement; and

**WHEREAS,** Master Custodian is willing, on a daily basis, to act as agent and bailee on behalf of Buyer or Seller, as their interests may appear, and to perform certain other duties more fully described herein.

**NOW, THEREFORE,** the parties hereby agree as follows:

Section 1.    <u>Definitions</u>

"<u>Aggregate Market Value</u>" means, with respect to each Repurchase Transaction, the aggregate Market Value of all Purchased Assets located in Buyer's Master Custodial Account as of the time of determination which have been allocated to such Repurchase Transaction pursuant to Sections 6(c) and 7(c) hereof.

"<u>Agreement</u>" means this Tri-Party Custody Agreement, as amended from time to time.

"<u>Asset</u>" or "<u>Assets</u>" means any Grade A Asset, Grade B Asset, Grade C Asset or Grade D Asset.

"<u>Authorized Person</u>" means a person described as provided in Section 18(a).

"<u>Business Day</u>" means any day on which all of Buyer, Seller and Master Custodian are open for business.

"<u>Buyer's Master Custodial Account</u>" means, collectively, the accounts maintained by Master Custodian for Assets held for the benefit of Buyer pursuant to Section 4(a) hereof.

"<u>Cash</u>" means U.S. Dollars in immediately available funds.

"<u>Commercial Mortgage Loan</u>" means any Mortgage Loan with respect to which the indebtedness of the borrower is evidenced by a mortgage note and secured by a lien on income generating real property used exclusively for commercial or mixed-commercial/residential purposes.

"<u>Event of Default</u>" means an "Event of Default" as defined in the Master Repurchase Agreement.

1

CONFIDENTIAL

DANSKE_0015843

"**FRBNY**" means The Federal Reserve Bank of New York, or any successor thereto.

"**Grade**" means, with respect to an Asset, either Grade A, Grade B, Grade C or Grade D.

"**Grade A Asset**" means Cash.

"**Grade B Asset**" means (a) a Trust Receipt evidencing the possession by a Sub-Custodian of one or more Residential Mortgage Loans, or, as the context shall require, one or more Residential Mortgage Loans held by a Sub-Custodian and evidenced by a Trust Receipt, and (b) in the event of a shortfall of the type of Assets enumerated in clause (a) of this definition, any Grade A Asset.

"**Grade C Asset**" means (a) a Trust Receipt, evidencing the possession by a Sub-Custodian of one or more Commercial Mortgage Loans or, as the context shall require, one or more Commercial Mortgage Loans held by a Sub-Custodian and evidenced by a Trust Receipt, and (b) in the event of a shortfall of the type of Assets enumerated in clause (a) of this definition, any Grade A Asset or Grade B Asset.

"**Grade D Asset**" means any Asset designated as such on a schedule in the form of Schedule 1 hereto, which Schedule 1 has been executed by each party hereto.

REDACTED

"**Market Value**" means, for each Purchased Asset, the price of such Purchased Asset as determined pursuant to the methodology set forth in Section 6(b) hereof.

"**Master Custodian**" means JPMorgan Chase Bank, N.A., its successors in interest or permitted assigns, or any successor Master Custodian pursuant to the terms hereof.

"**Master Custodian Data File**" means a data file in an electronic format in the form of Schedule 2 hereto, compiled by Master Custodian from data transmitted by one or more related Sub-Custodians.

"**Master Custodian Held Asset**" means (a) Cash held by Master Custodian from time to time for the account of Buyer or Seller, as the case may be, pursuant to the terms hereof, (b) Trust Receipts, and (c) any other Asset described as a Master Custodian Held Asset on Schedule 1 hereto from time to time.

"**Master Repurchase Agreement**" means the Master Repurchase Agreement, between Buyer and Seller, as supplemented and amended from time to time, a form of which has been provided to Master Custodian.

"**Mortgage Files**" means Mortgage Loans and all documentation related thereto, all of which shall be held from time to time by a Sub-Custodian pursuant to the terms of a Tri-

2

Party Sub-Custodial Agreement.  The term "Mortgage File" when used herein without further specification shall be deemed to refer both files relating to Commercial Mortgage Loans and files relating to Residential Mortgage Loans.

"**Mortgage Loan**" means any mortgage loan, the interest in which is evidenced by a Trust Receipt.  The term "Mortgage Loan" when used herein without further specification shall be deemed to refer to both Commercial Mortgage Loans and Residential Mortgage Loans.

"**Notice of Default**" means a written notice delivered by Seller to Master Custodian and Buyer or by Buyer to Master Custodian and Seller, as is more fully described in Section 17 hereof, which written notice identifies the defaulting party, the Repurchase Transaction, and the Event of Default.

"**Person**" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

"**Purchased Assets**" means Assets purchased by Buyer from Seller in a Repurchase Transaction and any Assets substituted therefor in accordance with the Master Repurchase Agreement.

"**Purchase Date**" means with respect to any Repurchase Transaction, the Business Day upon which Buyer purchases the related Assets from Seller.

"**Purchase Price**" means with respect to any Repurchase Transaction, the "Purchase Price" relating thereto as defined in the Master Repurchase Agreement.

"**Repurchase Date**" means with respect to any Repurchase Transaction, the earlier of (a) the Business Day upon which Seller is scheduled to repurchase the related Assets from Buyer, and (b) the Business Day upon which a Repurchase Date has been otherwise accelerated due to an Event of Default.

"**Repurchase Price**" means with respect to any Repurchase Transaction, the "Repurchase Price" as defined in the Master Repurchase Agreement.

"**Repurchase Transaction**" means any transaction between Buyer and Seller pursuant to the Master Repurchase Agreement.

## REDACTED

"**Residential Mortgage Loan**" means any Mortgage Loan with respect to which the indebtedness of the borrower is evidenced by a mortgage note and secured by a lien on real property constituting a one-to-four-family residence.

3

DANSKE_0015845

"**Seller's Asset Composition Data File**" means a data file in electronic format in the form of Schedule 4 hereto that is transmitted by or on behalf of Seller to Master Custodian pursuant to the terms of Section 5(e)(i) hereof.

"**Seller's Pre-Allocation Schedule**" means a data file in electronic format in the form of Schedule 10 hereto that is transmitted by or on behalf of Seller to Master Custodian pursuant to the terms of Section 5(e)(vi) hereof.

"**Seller's Repurchase Transaction Data File**" means a data file in electronic format in the form of Schedule 3 hereto that is transmitted by or on behalf of Seller to Master Custodian pursuant to the terms of Section 5(a) hereof.

"**Seller's Instructions**" means the instructions described in Section 5(a) as "Seller's Instructions", which shall be contained in a Seller's Repurchase Transaction Data File.

"**Seller's Master Custodial Account**" means, collectively, the accounts maintained by Master Custodian for Assets held by Master Custodian for the benefit of Seller.

"**Sub-Custodian**" means any entity reasonably acceptable to the Seller and the Master Custodian that has entered into a Tri-Party Sub-Custodial Agreement with Seller and Master Custodian.

"**Sub-Custodian Data File**" means a data file in electronic format in the form of Schedule 1 to the Tri-Party Sub-Custodial Agreement, transmitted to Master Custodian as provided pursuant to the terms of this Agreement and the relevant Tri-Party Sub-Custodial Agreement.

"**Tri-Party Sub-Custodial Agreement**" means an agreement among a Sub-Custodian, the Master Custodian and the Seller substantially in the form of Exhibit D hereto.

"**Trust Receipt**" means a receipt or certification executed by a duly authorized officer of the applicable Sub-Custodian, substantially in the form of Exhibit 1 to the applicable Tri-Party Sub-Custodial Agreement to which the related Sub-Custodian is a party, or in any other form subsequently agreed to in writing between the Seller and the Master Custodian.

"**Trust Receipt Delivery Date**" means, for each Sub-Custodian, the Purchase Date on which the initial Repurchase Transaction occurs with respect to which such Sub-Custodian is acting as sub-custodian pursuant to the related Tri-Party Sub-Custodial Agreement.

"**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of New York.

Any term not defined in this Agreement shall have the meaning set forth in the Master Repurchase Agreement or the Tri-Party Sub-Custodial Agreement, as the case may be.

4

DANSKE_0015846

Section 2.  **Services of Master Custodian**

a.  <u>Appointment of Master Custodian</u>.  Buyer hereby appoints Master Custodian as custodian to safekeep all Purchased Assets which are Master Custodian Held Assets at any time transferred or delivered to and held by Master Custodian for or on behalf of Buyer under this Agreement and as agent and bailee for Buyer for the purposes set forth in this Agreement.  Seller hereby appoints Master Custodian as custodian to safekeep all Master Custodian Held Assets at any time transferred or delivered to or held by Master Custodian for or on behalf of Seller under this Agreement and as agent and bailee for Seller for the purposes set forth in this Agreement.

b.  <u>Acceptance of Master Custodian</u>.  Master Custodian accepts the appointments and, subject to the terms and conditions of this Agreement, agrees to receive Purchased Assets which are Master Custodian Held Assets in the manner specified herein, for or on behalf of Buyer, to be held hereunder, and to hold, release, or otherwise dispose of such Purchased Assets which are Master Custodian Held Assets as hereinafter provided.  Master Custodian further agrees to receive Master Custodian Held Assets for or on behalf of Seller for transfer to Seller's Master Custodial Account to be delivered hereunder, and to hold, release, or otherwise dispose of such Master Custodian Held Assets as hereinafter provided.

c.  <u>Scope of Master Custodian's Duties</u>.  Master Custodian's duties hereunder shall continue until altered in writing by the parties hereto or until the termination of this Agreement.  Master Custodian undertakes to perform only those duties as are expressly set forth in this Agreement and in the Tri-Party Sub-Custodial Agreement and no additional covenant or obligation shall be implied in this Agreement against Master Custodian.  If a Repurchase Transaction shall not be completed for any reason whatsoever, Master Custodian's duties to Buyer and Seller shall be limited to holding Master Custodian Held Assets for the account of the party hereto owning such Assets prior to the contemplated but not completed Repurchase Transaction and following any other instructions received from Buyer and/or Seller as specifically provided for in this Agreement.

d.  <u>Sub-Custodians; Scope of Liability; Asset Custody</u>.  (i) Buyer and Seller acknowledge that the use of Sub-Custodians to hold and review the Mortgage Files is contemplated throughout the term of this Agreement.  Each Sub-Custodian shall be required to enter into a Tri-Party Sub-Custodial Agreement with respect to the transactions contemplated hereby and shall not be deemed to be the representative or agent of Master Custodian, <u>provided, however</u> that, subject to the provisions of Section 2(d)(ii) hereof, Sub-Custodian shall be deemed to be the agent and bailee of Master Custodian as provided pursuant to the terms of any Trust Receipt.  Master Custodian shall not be responsible for the knowledge of the contents of any separate custody agreement between any Sub-Custodian and Seller to which it is not a party, and the parties hereto agree that Master Custodian shall not in any respect be bound by, or responsible in respect of, any such separate custody agreement.

(ii)  Notwithstanding any provision of this Agreement or any Tri-Party Sub-Custodial Agreement to the contrary, in no event shall Master Custodian be obligated to perform the obligations or duties of any Sub-Custodian under any Tri-Party Sub-Custodial Agreement or other custody agreement, if any, in the event that such

5

  DANSKE_0015847

obligations or duties are not performed by said Sub-Custodian for any reason whatsoever. Further, except as specifically provided to the contrary in any Tri-Party Sub-Custodial Agreement, Master Custodian shall not be liable to any Person in any respect for any acts or omissions of any Sub-Custodian, including, but not limited to, (A) the failure of a Sub-Custodian to properly perform its duties under any Tri-Party Sub-Custodial Agreement or other custody agreement; (B) the failure of a Sub-Custodian to properly review, and/or certify as to the contents of any Mortgage Files in its custody; (C) any misstatement of fact or omission contained in any Trust Receipt delivered to Master Custodian or otherwise prepared in connection with a Repurchase Transaction; (D) the delivery or transmission by a Sub-Custodian of any other information or data to Master Custodian which is inaccurate, incomplete or misleading in any respect; (E) the failure by a Sub-Custodian to follow or comply with, as the case may be, any direction, authorization or instructions provided to it by any Person pursuant to the terms hereof or otherwise, or (F) the failure by a Sub-Custodian to deliver information regarding the Mortgage Files on a timely basis or its failure to perform any other act which would be required as a prerequisite to Master Custodian's being able to perform its obligations hereunder (including, but not limited to, its failure to deliver to the Master Custodian an original Trust Receipt as required pursuant to Section 5(e)(v) hereof).

(iii)   Master Custodian is not a party to any Master Repurchase Agreement. Master Custodian has not examined the Master Repurchase Agreement, has no responsibility for the content thereof and is not, and shall not be deemed to be, on notice as to any provision thereof. Master Custodian's obligations hereunder shall not be affected by, nor does Master Custodian assume any liability under, any Master Repurchase Agreement.

(iv)   Master Custodian shall not be liable for any act or omission of FRBNY in connection with the transactions contemplated hereby or by any Tri-Party Sub-Custodial Agreement.

Section 3.   **Representations, Warranties and Agreements**

Buyer, Seller and Master Custodian each represents and warrants to the others as of the date hereof, as of each Purchase Date and as of each Repurchase Date, the following:

a.   **Representations of Buyer, Seller and Master Custodian.**

(i)    It is duly organized and existing under the laws of the jurisdiction of its organization with full power and authority to execute and deliver this Agreement and to perform all of the duties and obligations to be performed by it hereunder.

(ii)   This Agreement and the performance of all transactions contemplated hereunder have been duly authorized, executed, and delivered by it in accordance with all requisite corporate action, and this Agreement

6

CONFIDENTIAL
DANSKE_0015848

constitutes its valid, legal and binding obligation enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, or similar laws, or by equitable principles relating to or limiting creditors' rights generally.

(iii)   The execution, delivery, and performance of this Agreement and the transactions contemplated hereunder will not violate any agreement by which it is bound or by which any of its assets are affected, or its charter, or by-laws, or any statute, regulation, rule, order or judgment applicable to it or its property.

b,   <u>Further Representations and Covenants of Buyer and Seller.</u>

(i)   Each has the power and authority to enter into the Repurchase Transactions and to deliver and transfer the Assets delivered or transferred hereunder.

(ii)   All Assets delivered or transferred by Seller to Master Custodian and all Assets delivered or transferred to Master Custodian by Buyer are delivered free, clear, and unencumbered by any lien, security interest charge, claim, or prior right of any third party, <u>provided, however,</u> the parties hereto agree and acknowledge that the Assets sold by Seller under the Master Repurchase Agreement or other financings may themselves be subject to a repurchase arrangement under which Seller purchased said Assets from a third party and are obligated to resell such Assets to such third party pursuant to such repurchase arrangement or other financing.

(iii)   In the event that with respect to any Repurchase Transaction Buyer checks the box on <u>Exhibit B</u> hereto indicating that it is acting on an agency basis and/or in a trust capacity only for the benefit of one or more of its customers, by checking such box Buyer shall be deemed to have represented, warranted and agreed that:

(a)   Buyer is executing this Agreement on behalf of its customers and Buyer will be effecting Repurchase Transactions hereunder on an agency basis and/or in a trust capacity only;

(b)   Master Custodian will not be required to recognize, follow, or observe the instructions of any such customer with respect to any Repurchase Transaction; and

(c)   If Buyer acts beyond the authority granted to it pursuant to an agreement between it and any such customer, or between it and any entity acting on behalf of such customer or otherwise, Buyer shall be liable for all such actions and related transactions as if it were the principal with respect thereto, provided that the same shall not limit in any manner the liability of such customer or any other party for such actions and related transactions.

7

DANSKE_0015849

(iv)    Buyer agrees to indemnify and hold Master Custodian and/or Seller harmless in the event that any customer of Buyer should make any claim against Master Custodian and/or Seller based upon or arising from a breach of any of the representations, warranties or agreements set forth in Section 3(b)(iii) above including, without limitation, a claim that any action taken by Master Custodian with respect to any transactions pursuant to an order, notice, instruction, or other communication from Buyer was unauthorized by such customer.

(v)    By checking the appropriate box on <u>Exhibit B</u> hereto indicating that it is acting as principal, or by checking no box, Buyer represents, warrants, and agrees that it is executing this Agreement solely on its own behalf, and it will be entering into Repurchase Transactions as principal.

(vi)    Seller is executing this Agreement solely on its own behalf, and it will be entering into any and all Repurchase Transactions as principal.

c.    <u>Further Representations and Covenants of Master Custodian</u>.

(i)    Master Custodian is a national banking association with its principal office at 270 Park Avenue, New York, New York 10017.

(ii)    Master Custodian will maintain Buyer's Master Custodial Account as a custody account and, as requested by Seller and Buyer, as a "securities account" as defined in Section 8-501 of Article 8 of the UCC in which a "financial asset" as defined in Section 8-102(a)(9)(iii) of the UCC, is being held, and shall administer Buyer's Master Custodial Account as a securities intermediary in the same manner it administers similar accounts established for the same purpose.    Master Custodian shall create and maintain the books and records created in connection with Buyer's Master Custodial Account in the State of New York.

(iii)    Master Custodian will maintain Seller's Master Custodial Account as a custody account and shall administer Seller's Master Custodial Account in the same manner it administers similar accounts established for the same purpose.    Master Custodian shall create and maintain the books and records created in connection with Seller's Master Custodial Account in the State of New York.

(iv)    Master Custodian shall maintain at all times during the existence of this Agreement and keep in full force and effect fidelity insurance, theft of documents insurance, forgery insurance and errors and omissions insurance. All such insurance shall be in amounts, with standard coverage and subject to deductibles, as is customary for insurance typically maintained by banks which act as Custodian and in amounts and with insurance companies reasonably acceptable to Buyer and Seller.

8

DANSKE_0015850

d.   Continuing Agreement of All Parties.   Each party shall promptly notify all other parties hereto in writing in the event that any of the representations made by such party hereunder shall be or become untrue or misleading in any material respect.

Section 4.   **Maintenance of Buyer's Master Custodial Account and Seller's Master Custodial Account**

a.   Buyer's Master Custodial Account and Seller's Master Custodial Account. Master Custodian shall maintain such records and establish such accounts as may be required from time to time to receive, hold and account for all Purchased Assets which are Master Custodian Held Assets to be held for and on behalf of Buyer pursuant to this Agreement. Master Custodian shall maintain such records and establish such accounts as may be required from time to time to receive, hold and account for all Assets which are Master Custodian Held Assets to be held for and on behalf of Seller pursuant to this Agreement.

b.   Transfer of Assets to Master Custodial Accounts. All Purchased Assets which are Master Custodian Held Assets shall be maintained by Master Custodian in Buyer's Master Custodial Account. All Assets of Seller which are Master Custodian Held Assets shall be maintained in Seller's Master Custodial Account. Master Custodian shall maintain Cash for Buyer's Master Custodial Account and Seller's Master Custodial Account in the State of New York.

c.   Segregation of Assets. (i) Master Custodian shall segregate and separately account on its books and records for all Purchased Assets which are Master Custodian Held Assets held for Buyer from assets it holds in its individual capacity, for Seller, or in any other trust or custodial capacity. Master Custodian shall maintain and safekeep Master Custodian Held Assets held for Buyer until, (A) it shall receive Buyer's instructions to deliver or transfer to Buyer or its designee such Purchased Assets which are Master Custodian Held Assets (or, with respect to Trust Receipts, has received a copy of Buyer's instructions requesting that the related Sub-Custodian be directed by Master Custodian to deliver or transfer to Buyer or Buyer's designee the Mortgage Files held by such Sub-Custodian evidenced by such Trust Receipt as well as original instructions to Master Custodian to return the related Trust Receipts to such Sub-Custodian for cancellation); (B) Seller shall substitute Assets as provided in Section 7(c) hereof; (C) Master Custodian shall deliver Purchased Assets which are Master Custodian Held Assets to Seller or its designee as provided in Section 6(e) or 7(c) (or, with respect to Trust Receipts, authorize the related Sub-Custodian to transfer such Trust Receipts into the name of Seller); or (D) this Agreement is terminated and Master Custodian has received disposition instructions.

(ii)   Master Custodian shall segregate and separately account on its books and records for all Assets which are Master Custodian Held Assets held for Seller from assets it holds in its individual capacity, for Buyer, or in any other trust or custodial capacity. Master Custodian shall maintain and safekeep Master Custodian Held Assets for Seller until (A) they are transferred into Buyer's Master Custodial Account pursuant to Section 6(a), (B) they are substituted pursuant to Section 7(c), or (C) it has received disposition instructions in connection with the termination of this Agreement in accordance with the provisions of Subsection 4(c)(i)(D).

9

DANSKE_0015851

d.   No Lien or Pledge By Master Custodian.   Neither Buyer's Master Custodial Account, including Purchased Assets therein which are Master Custodian Held Assets, nor Seller's Master Custodial Account, including Master Custodian Held Assets therein, shall be subject to any security interest, lien or right of setoff by Master Custodian or any third party claiming through Master Custodian.  Except as required by law or regulation, Master Custodian shall not pledge, encumber, hypothecate, transfer, dispose of, or otherwise grant any third party an interest in, any Assets held in Buyer's Master Custodial Account or Seller's Master Custodial Account pursuant to this Agreement.

Section 5.   **Arrangements Prior to Repurchase Transaction; Receipt of Instructions; Payment of Moneys; Delivery of Assets**

a.   Seller's Instructions.   Prior to 3:30 p.m. on any Business Day on which Seller and Buyer are to enter into one or more Repurchase Transactions, Seller shall deliver to Master Custodian by electronic means mutually agreed upon by Seller and Master Custodian and by facsimile pursuant to the terms of Section 18(c) hereof, a Seller's Repurchase Transaction Data File containing, among other things, for each Repurchase Transaction:

(i)   the Purchase Date and the Purchase Price;

(ii)   the Repurchase Date;

(iii)   the identity of Buyer; and

(iv)   instructions to Master Custodian to select Assets in Seller's Master Custodial Account to be transferred to Buyer's Master Custodial Account, such instructions to indicate what Grade(s) of Assets are eligible for transfer into Buyer's Master Custodial Account pursuant to the terms of the related Repurchase Transaction.

In the event that Seller does not deliver to Master Custodian a Seller's Repurchase Transaction Data File containing instructions identifying the Grade of Assets to be sold by Seller to Buyer (or if such instructions are not received by Master Custodian on a timely basis for any reason or lack the specificity necessary to enable Master Custodian to make such a transfer in accordance with such instructions), Master Custodian shall so notify the Seller and if the Seller is unable to rectify the problem in a reasonable period of time based upon the required daily schedule with respect to Repurchase Transactions set forth in this Agreement, the Master Custodian may reject the contents of such Seller's Repurchase Transaction Data File as not in compliance with the terms of this Agreement and in such event the Master Custodian shall act in accordance with the provisions of Section 5(g) hereof.  Nothing provided herein shall be deemed to be an amendment or waiver of the provisions of Sections 12(b) or 15 of this Agreement.

b.   Buyer's Purchase Price.   No later than 3:00 p.m. on each Purchase Date, Master Custodian shall have received from the Buyer or its designee, for credit to Buyer's Master Custodial Account, sufficient Cash such that the total Cash balance in Buyer's Master Custodial Account equals or exceeds the aggregate Purchase Price contained in Seller's Repurchase Transaction Data File with respect to such Repurchase Transaction.

10

CONFIDENTIAL

DANSKE_0015852

c.      Seller's Tender of Assets.  Prior to 3:30 p.m. on the Purchase Date, Master Custodian shall transfer into Seller's Master Custodial Account those Assets described in Seller's Repurchase Transaction Data File as provided in Section 5(a)(iv) or in the next succeeding paragraph of Section 5(a).

d.      Cash Accounts.  All payments of Cash to be credited to Buyer's Master Custodial Account shall be effected either by transfer from an account maintained by Seller at Master Custodian or by wire transfer through FRBNY to Buyer's Master Custodial Account designated in Exhibit B.

e.      Review of Sub-Custodian Data Files and Receipt of Trust Receipts By Master Custodian.

(i)     On each Business Day, Seller shall have, by 11:00 a.m. (A) reviewed those Sub-Custodian Data Files transmitted to Seller from one or more Sub-Custodians (which shall have been so transmitted to Seller no later than 6:00 p.m. on the immediately preceding Business Day pursuant to Section 3(c) of the Tri-Party Sub-Custodial Agreement), (B) transmitted the Seller's Asset Composition Data File to Master Custodian, and (C) informed the respective Sub-Custodian(s) of any discrepancies between data existing in the Sub-Custodian Data File and the Seller's Asset Composition Data File, and (D) transmitted to the Master Custodian, and pursuant to said Section 3(c) of the Tri-Party Sub-Custodial Agreement caused all applicable Sub-Custodian(s) to transmit to Master Custodian by electronic means mutually acceptable to Master Custodian and Seller, a final Sub-Custodian Data File containing data relating to the Mortgage Loans held by such Sub-Custodian(s).  Subject to the provisions of the last sentence of this clause (e)(i), in the event that the data for any Mortgage Loan contained in a Sub-Custodian Data File is substantially complete but is missing some items of requested information, and one or more missing items of requested information may be obtained by Master Custodian through review of Seller's Asset Composition Data File delivered on the same Business Day (or for such Business Day as provided in Section 5(g) hereof), Master Custodian shall reflect in its files the information regarding such Mortgage Loan obtained from Seller's Asset Composition Data File if no information is provided in the related Sub-Custodian Data File with respect to such characteristic.  In the event that such information is obtained from Seller's Asset Composition Data File and inserted into Master Custodian's files with respect to the relevant Mortgage Loan(s), Master Custodian (x) shall not be liable to any Person for any loss, cost or damage resulting from such insertion, and (y) shall be entitled to rely on the information set forth in Master Custodian's files with respect to the related Mortgage Loan(s) for the purposes of fulfilling each of its other obligations hereunder and shall not be liable to any Person in so relying thereon.  Notwithstanding any other provision of this Agreement, in the event that any Sub-Custodian Data File shall be transmitted to Master Custodian at any time which does not contain information which on its

11

DANSKE_0015853

face appears accurate with respect to (A) the mortgage loan number, (B) the original principal balance, (C) the interest rate, and (D) the maturity date, in each case of any Mortgage Loan for which the related Mortgage File has been reviewed by a Sub-Custodian, such Mortgage Loan shall not be eligible for transfer by the Master Custodian into Buyer's Master Custodial Account, provided, however, that in the event for any reason the information required with respect to items (C) or (D) has not been provided by the Sub-Custodian but has been included in Seller's Asset Composition Data File, Master Custodian may use this information provided by Seller for inclusion in its files with respect to the related Mortgage Loans without any further duty of inquiry and without any liability to any Person and if thereafter all of the information required by clauses (A),(B),(C) and (D) of this Section 3(d) is included in the Master Custodian's files with respect to the related Mortgage Loan, such Mortgage Loan will be eligible for transfer by the Master Custodian into Buyer's Master Custodial Account.

(ii)     In the event that notwithstanding the provisions of subsection 5(e)(i) above Master Custodian receives notice from Seller by electronic means mutually acceptable to Seller and Master Custodian that Seller believes that there are discrepancies or inaccuracies in the Sub-Custodian Data File, Seller may attempt to reconcile such possible discrepancies or inaccuracies prior to 3:00 p.m. on the related Purchase Date, and will provide definitive instructions to Master Custodian no later than 3:00 p.m. on such date with respect to the inclusion or exclusion for transfer of any Mortgage Loans which it has previously determined may be subject to discrepancies or inaccuracies.   Seller's determination of whether a discrepancy or inaccuracy exists in the Sub-Custodian's Data File shall be final and Master Custodian shall not be liable for any loss, cost, expense or liability resulting directly or indirectly from its making such a determination.

(iii)    In the event that on any proposed Purchase Date on which the relevant Sub-Custodian is open for business (which may be inferred by the Master Custodian if it has not received notice pursuant to Subsection 5(e)(iv) below) Master Custodian shall not have received one or more Sub-Custodian Data Files by 11:00 a.m., Master Custodian shall immediately inform Seller and await instructions from Seller regarding the Assets to be transferred in connection with such Repurchase Transaction. Upon receipt by Master Custodian of instructions substantially in the form of Schedule 8 hereto, Master Custodian shall promptly provide notice to the Buyer in the form of Schedule 9 hereto to the effect that Master Custodian has received instructions from the Seller, and pursuant to this Agreement shall, accept the transmission of a data file by Seller to Master Custodian in the same form as the Sub-Custodian's Data File ordinarily sent by such Sub-Custodian but by electronic means agreed upon between the Seller and the Master Custodian which may be different from the electronic means

12

DANSKE_0015854

ordinarily employed by Sub-Custodian for such purpose. In such event, upon receipt of such data file from the Seller, Master Custodian may rely upon the contents of such data file, including, but not limited to, the existence and completeness of the Mortgage Files evidenced thereby without further inquiry and in such event Master Custodian shall not be liable to any Person whatsoever in so relying thereon.

(iv) In the event that Master Custodian receives written notice from the Seller that one or more Sub-Custodians are not open for business on any Business Day, Master Custodian may rely upon the accuracy of the Sub-Custodian Data File from the previous Business Day on which such Sub-Custodian was open for business in determining Assets to be transferred to Buyer in connection with Repurchase Transactions occurring on such day and in such event Master Custodian shall not be liable to any Person whatsoever in so relying thereon; provided that if any Sub-Custodian is not open for business for more than two (2) consecutive Business Days, the Master Custodian shall promptly provide notice thereof to Buyer and Seller and request joint instructions executed by both Buyer and Seller with respect to further action regarding Assets appearing in such Sub-Custodian's most recently transmitted Sub-Custodian Data File and in the event Buyer and Seller cannot agree upon such instructions, the provisions of Section 14 hereof shall be applicable.

(v) Subject to the provisions of Section 5(f), prior to 3:30 p.m. on each Trust Receipt Delivery Date, Seller shall cause the respective Sub-Custodian, pursuant to Section 4 of the Tri-Party Sub-Custodial Agreement, to execute and deliver to the Master Custodian, each by facsimile (with paper copy to follow by overnight air courier, next day delivery, counterpart signature pages acceptable) a Trust Receipt. The information contained in the Sub-Custodian Data File transmitted to the Master Custodian on the Trust Receipt Delivery Date shall be deemed to constitute the schedule of Mortgage Loans referred to in such Trust Receipt. On each Business Day subsequent to the Trust Receipt Delivery Date, each Sub-Custodian Data File transmitted to the Master Custodian by such Sub-Custodian pursuant to Section 5(e)(i) shall be deemed to amend and restate the schedule of mortgage loans referred to in the Trust Receipt delivered to the Master Custodian on the Trust Receipt Delivery Date to take into account any substitutions of Assets which have occurred pursuant to Section 7(c). Upon receipt of a Notice of Default with respect to a Repurchase Transaction pursuant to Section 17 hereof from either the Buyer or Seller, the Master Custodian shall, at the request of the party sending such Notice of Default, convert the most recently received Sub-Custodian Data File to a paper copy and attach the same to the Trust Receipt.

(vi) Prior to 3:00 p.m. on any proposed Purchase Date, Seller shall have transmitted to Master Custodian in an electronic manner mutually acceptable to Seller and Master Custodian a Seller's Pre-Allocation

13

Schedule listing any Assets which Seller has requested be specifically allocated by Master Custodian for transfer from Seller's Master Custodial Account to Buyer's Master Custodial Account in connection with a particular Repurchase Transaction. By no later than 5:30 p.m. on any proposed Purchase Date, Master Custodian shall have reviewed the Seller's Pre-Allocation Schedule provided by Seller and compared it to the information provided in Seller's Instructions with respect to the particular Grade of Assets and other Asset criteria relating to the relevant Repurchase Transaction. If the Assets requested to be allocated to a particular Repurchase Transaction are acceptable for such pre-allocation based upon such review by the Master Custodian such Assets will be pre-allocated to the relevant Repurchase Transaction. If, however, for any reason the Assets requested to be allocated to a particular Repurchase Transaction are not acceptable for such pre-allocation based upon such review by the Master Custodian, the Master Custodian shall not pre-allocate such Assets to the relevant Repurchase Transaction and instead, without further notice to the Seller or other action of any kind, will make such Assets available for allocation to any other Repurchase Transaction on such day.

(vii)     Prior to 5:30 p.m. on any proposed Purchase Date, (A) Seller shall have transmitted to Master Custodian in an electronic manner mutually acceptable to Seller and Master Custodian a schedule of the Assets which have previously been transferred into Seller's Master Custodial Account which it recommends should be transferred into Buyer's Master Custodial Account in accordance with Section 6(a) hereof, and (B) Master Custodian shall have determined whether, based upon the information provided to it by Seller in the schedule provided pursuant to clause (A) of this Section 5(e)(vii) and based upon the Sub-Custodian Data Files, there are sufficient Assets contained in Seller's Master Custodial Account to transfer into Buyer's Master Custodial Account such that a Margin Deficit (as described in Section 7(a) hereof) shall not occur, and, in the event that Master Custodian believes there are insufficient assets located in Seller's Master Custodial Account to prevent a Margin Deficit from occurring, Master Custodian shall immediately so inform Seller in writing by facsimile or mutually pre-approved electronic means.

     f.    <u>Single Trust Receipt</u>. Any provision of this Agreement to the contrary notwithstanding, the Master Custodian shall hold only one Trust Receipt from each Sub-Custodian relating to all Mortgage Loans held by such Sub-Custodian for the benefit of the Master Custodian hereunder. The Master Custodian will mark its books to reflect that portion of the Assets relating to each Trust Receipt that have been transferred into Buyer's Master Custodial Account hereunder from time to time. The Master Custodian shall be under no obligation at any time to update, revise or amend any Trust Receipt received by it except to the extent specifically provided in Section 5(e)(v) hereof.

14

g.    <u>Failure of Seller to Transmit Seller's Asset Composition Data File</u>.   In the event that for any reason Master Custodian does not receive a Seller's Asset Composition Data File from the Seller which has been transmitted in the format required and by the time required for such electronic file pursuant to the provisions of this Agreement, Master Custodian shall so notify the Seller and if the Seller is unable to rectify the problem in a reasonable period of time based upon the required daily schedule with respect to Repurchase Transactions set forth in this Agreement, the Master Custodian may rely upon the accuracy of the Seller's Asset Composition Data File, as the case may be, from the previous Business Day on which Seller transmitted such electronic file in the format required and by the time required for such electronic file pursuant to the provisions of this Agreement in performing all tasks required of it hereunder in connection with Repurchase Transactions occurring on such day and in such event Master Custodian shall not be liable to any Person whatsoever in so relying thereon; <u>provided</u> that if the Master Custodian does not receive a Seller's Asset Composition Data File from the Seller which has been transmitted in the format required and by the time required for such electronic file pursuant to the provisions of this Agreement for more than two (2) consecutive Business Days, the Master Custodian shall promptly provide notice thereof to Buyer and Seller and request joint instructions executed by both Buyer and Seller with respect to further action regarding Assets appearing in such Seller's Asset Composition Data File and in the event Buyer and Seller cannot agree upon such instructions, the provisions of Section 14 hereof shall be applicable.   In the event that the Master Custodian shall be required to utilize the information set forth in a Seller's Asset Composition Data File from a prior Business Day, the Buyer and the Seller hereby irrevocably authorize the Master Custodian to make any manual adjustments to said data transmission as may be necessary (such as changing dates, etc.) to conform such transmissions to the requirements of its data processing systems or to properly identify such data in its books and records so long as such manual adjustments do not materially adversely affect the integrity of the information contained therein relating to the Assets, and the Master Custodian may evidence such manual adjustments by marking its internal books and records to reflect such adjustments upon their occurrence.   The Master Custodian shall not be liable to the Buyer, the Seller, any Sub-Custodian or any third-party resulting from its making such manual adjustments in accordance with the provisions of this Section.

h.    <u>Failure of Seller to Transmit Seller's Repurchase Transaction Data File</u>.   In the event that for any reason Master Custodian does not receive a Seller's Repurchase Transaction Data File from the Seller which has been transmitted in the format required and by the time required for such electronic file pursuant to the provisions of this Agreement, Master Custodian shall so notify the Seller and if the Seller is unable to rectify the problem in a reasonable period of time based upon the required daily schedule with respect to Repurchase Transactions set forth in this Agreement, Seller shall promptly (but in no event later than 4:00 p.m. New York time on the same Business Day) send to an Authorized Representative of the Master Custodian by facsimile transmission at the number listed in Section 18(c) hereof a copy of the Seller's Repurchase Transaction Data File for such Business Day and shall confirm the Master Custodian's receipt of such facsimile transmission telephonically.

Section 6.     <u>**Effecting Transactions; Grant of Security Interest**</u>

a.    <u>Purchase Date</u>.   Subject to the terms of this Agreement, and subject to time limitations imposed by the Federal Funds wire transfer system with respect to transfers to

15

DANSKE_0015857

parties outside of JPMorgan Chase Bank, N.A. in New York City (for which the Master Custodian shall not be liable), at or about 5:30 p.m. on the Purchase Date for any Repurchase Transaction, Master Custodian shall transfer to Seller Cash from Buyer's Master Custodial Account in an amount equal to the Purchase Price and shall transfer Assets from Seller's Master Custodial Account to Buyer's Master Custodial Account in accordance with Seller's Instructions contained in Seller's Repurchase Transaction Data File with respect to such Repurchase Transaction as provided in Section 5(a)(iv) hereof. Master Custodian shall examine all Trust Receipts on the related Trust Receipt Delivery Date to insure that (A) they are substantially in the form of Exhibit I to the Tri-Party Sub-Custodial Agreement or in another form subsequently agreed to in writing between the Buyer and Seller and consented to by the Master Custodian, such consent not to be unreasonably withheld, and (B) that they otherwise conform to all of Seller's Instructions, if any, contained in the related Seller's Repurchase Transaction Data File. In the event that any Trust Receipt is not in the proper form or does not conform to all of Seller's Instructions, if any, contained in the related Seller's Repurchase Transaction Data File, Master Custodian shall promptly notify Seller.

b.   Market Value of Assets.

(i)   Grade A Assets:  The Market Value of Grade A Assets shall be their face amount.

(ii)   Grade B Assets:  The Market Value of Residential Mortgage Loans (each of which shall be evidenced by Trust Receipts but treated as individual Mortgage Loans respectively for purposes of determination of Market Value) shall be determined by Master Custodian and shall be equal to the lesser of the outstanding balance or the face amount of the note relating to such Mortgage Loan multiplied by the price, as quoted by a recognized pricing service not earlier than the close of business on the immediately preceding Business Day, of a GNMA, FNMA or FHLMC security backed by Residential Mortgage Loans with (1) a coupon which most closely approximates, but does not exceed the coupon on the Asset to be priced, and (2) a maturity date within three months of, the weighted average maturity of such security.   If the pricing service fails to provide information on any day, Master Custodian shall use the "assumed price" of such Residential Mortgage Loan as provided herein in Schedule 7 attached hereto and which schedule shall be revised from time to time by means of distribution of a revised Schedule 7 which shall become effective when agreed to in writing by the Buyer and the Seller and receipt thereof acknowledged in writing by the Master Custodian.

(iii)   Grade C Assets:  In the event that the Buyer has indicated on Exhibit A hereto that it will accept Seller pricing of Grade C Assets by virtue of its having checked the box entitled "Agrees to Seller Pricing" therein, then upon the consent of the Master Custodian (such consent to be withheld only if the Master Custodian's computer and data processing systems have not yet been customized to perform Seller pricing in connection with this program), then the Market Value of Commercial Mortgage Loans (each of

16

which shall be evidenced by Trust Receipts but treated as individual Mortgage Loans respectively for purposes of determination of Market Value) shall be determined by Master Custodian and shall be equal to the price provided to Master Custodian by Seller not earlier than the close of business on the immediately preceding Business Day. If the Buyer has not indicated on Exhibit A hereto that it will accept Seller pricing of Grade C Assets by virtue of its having checked the box entitled "Agrees to Seller Pricing" therein, or the Seller fails to provide price information on any day, Master Custodian shall use the "assumed" price of such Commercial Mortgage Loan as provided herein in Schedule 7 attached hereto and which schedule shall be revised from time to time by means of distribution of a revised Schedule 7 which shall become effective when agreed to in writing by the Buyer and the Seller and receipt thereof acknowledged in writing by the Master Custodian.

(iv)   Grade D Assets:  The Market Value of each Grade D Asset shall be determined pursuant to a method agreed upon by each of the parties hereto and provided in an addendum to Schedule 1 hereto, executed by each of Buyer and Seller.

c.   Determination of Aggregate Market Value.  By no later than 5:30 p.m. on the Purchase Date for any Repurchase Transaction, Master Custodian shall determine the then Aggregate Market Value of all Assets to be transferred to Buyer's Master Custodial Account with respect to a Repurchase Transaction.   Master Custodian shall exclude from the determination of the Aggregate Market Value and return to Seller's Master Custodial Account any Mortgage Loans evidenced by a Trust Receipt which is not in the proper form or any Asset which does not conform to all of Seller's instructions, if any, contained in the related Seller's Repurchase Transaction Data File as provided in Section 5(a)(iv) hereof.

d.   Payment of Purchase Price.  Provided the Aggregate Market Value of all Purchased Assets to be transferred to Buyer's Master Custodial Account with respect to a Repurchase Transaction equals or exceeds the Required Amount with respect to such Repurchase Transaction as provided in the related Seller's Repurchase Transaction Date File, Master Custodian shall, upon telephonic instructions from the Seller followed on the same Business Day by written confirmation thereof by facsimile, transfer such Assets from Seller's Master Custodial Account to Buyer's Master Custodial Account and shall disburse from Buyer's Master Custodial Account Cash in an amount equal to the Purchase Price. All payments of Cash representing the Purchase Price to be credited to Seller's Master Custodial Account (or such other account which Seller shall direct in writing) shall be effected either by transfer from an account maintained by the paying party at Master Custodian or by wire transfer through FRBNY to Seller's Master Custodial Account (or such other account which Seller shall direct in writing).

e.   Repurchase Date.   On the Repurchase Date for any Repurchase Transaction, Buyer hereby instructs Master Custodian to tender to Seller the Purchased Assets held by Master Custodian in Buyer's Master Custodial Account with respect to such Repurchase Transaction and to transfer the Purchased Assets from Buyer's Master Custodial Account to Seller's Master Custodial Account.   Seller hereby instructs Master Custodian at the time

17

DANSKE_0015859

Purchased Assets are transferred to Seller's Master Custodial Account to make payment to Buyer of the Purchase Price by debiting Cash from Seller's Master Custodial Account and crediting Cash to Buyer's Master Custodial Account.

        f.    <u>Simultaneous Transactions</u>.  Buyer and Seller agree that transfers of Cash and Assets for the purpose of effecting Repurchase Transactions pursuant to the provisions of this Section 6 are intended to be, and shall be deemed to be, simultaneous.  During any period that Cash and Assets are held by or for Buyer or Seller and payment has not been made therefor, the receiving party shall be deemed to hold the Cash and Assets in trust for the delivering party and shall be obligated to return the Cash and Assets upon the delivering party's request.

        g.    <u>Effect of Notice of Levy, etc.</u>  Notwithstanding anything in this Agreement to the contrary, Master Custodian shall not be required to deliver or transfer Assets in contravention of any notice of levy, seizure or similar notice or order, or judgment, issued or directed by a governmental agency or court, or officer thereof, having jurisdiction over Master Custodian or its agents or affiliates, which on its face affects such Assets.  Master Custodian shall give Buyer and Seller prompt notice of any such notice or order.

        h.    <u>Ownership of Purchased Assets</u>.  Until the Repurchase Date, or until Master Custodian shall receive from Buyer a Notice of Default, notification, instruction or entitlement order under Section 17, Buyer hereby instructs Master Custodian to hold Purchased Assets in Buyer's Master Custodial Account and to refuse to act upon any instructions of Buyer or Seller to deliver Purchased Assets other than as expressly provided in this Agreement.  Buyer hereby covenants, for the exclusive benefit of Seller, that it shall not, prior to the occurrence of an Event of Default (upon which the provisions of said Section 17 shall be controlling) without the prior written consent of Seller, sell, transfer, assign, pledge, or otherwise utilize or transfer Purchased Assets held in Buyer's Master Custodial Account with respect to any Repurchase Transaction.  Further, Buyer hereby covenants, for the exclusive benefit of Seller, that Buyer will not instruct Master Custodian to deliver any Purchased Assets in Buyer's Master Custodian Account to any person other than Seller unless and until an Event of Default has occurred as to which Seller is the defaulting party.  Notwithstanding the foregoing, the foregoing covenants in the preceding two sentences are for the exclusive benefit of Seller only and they shall in no way be deemed to constitute a limitation on (i) Buyer's right at any time to provide notifications, instructions or entitlement orders to Master Custodian with respect to the transfer of Assets, or (ii) Master Custodian's obligation to act upon such notifications, instructions or entitlement orders of Buyer.  To the extent not otherwise inconsistent with the foregoing, Buyer shall be entitled to exercise all of the rights of a secured party under the UCC with respect to Purchased Assets held in Buyer's Master Custodial Account.

        i.    <u>Deliveries by Master Custodian</u>.  All deliveries permitted under this Agreement of Purchased Assets by Master Custodian to Buyer from Buyer's Master Custodial Account shall be made to Buyer by delivery in the manner requested by Buyer in writing.

        j.    <u>Seller's Grant of a Security Interest</u>.  In the event that the transactions evidenced by the Master Repurchase Agreement are characterized as a financing notwithstanding the stated intention of the parties thereto to effect a sale, Seller hereby grants to Buyer, in consideration of Buyer's performance of its obligations hereunder and under the Master

18

DANSKE_0015860

Repurchase Agreement, a first priority security interest in all of Seller's right, title and interest in and to the Assets relating to each Repurchase Transaction and Buyer's Master Custodial Account.

Section 7.    **Valuation and Substitution of Assets**

No later than 5:30 p.m. on each Business Day, Master Custodian shall determine the then current Aggregate Market Value (in the manner provided in Section 6(c)) of all Purchased Assets held in Buyer's Master Custodial Account with respect to all Repurchase Transactions then outstanding.

a.    Margin Deficit.   In the event that the aggregate Required Amount with respect to all outstanding Repurchase Transactions is greater than the Aggregate Market Value of all Purchased Assets held with respect to such Repurchase Transactions (a "Margin Deficit") Master Custodian shall so notify Seller at 5:30 p.m.  No later than 7:00 p.m. on the date of any such notice, Seller shall transfer to Master Custodian additional Cash such that, after transfer thereof to Buyer's Master Custodial Account, the then Aggregate Market Value of all Purchased Assets (including the recently transferred Assets) held with respect to outstanding Repurchase Transactions equals or exceeds an amount equal to the aggregate Required Amount with respect to all outstanding Repurchase Transactions.  If Seller fails to transfer an appropriate amount of additional Assets by 7:00 p.m. on the date of any such notice, Master Custodian shall promptly notify Buyer and Seller and await further instructions. Master Custodian shall incur no liability to any Person with respect to any Margin Deficit in acting in accordance with the provisions of this Section 7(a).

b.    Margin Excess.   In the event the then Aggregate Market Value of Purchased Assets held with respect to outstanding Repurchase Transactions shall exceed an amount equal to the aggregate Required Amount with respect to all outstanding Repurchase Transactions (a "Margin Excess"), Master Custodian shall, notify Seller and (i) upon instructions from Seller to be delivered by Seller to Master Custodian on the date of execution hereof and to be effective until Master Custodian has received a revocation thereof in writing from Seller, Master Custodian shall transfer Purchased Assets from Buyer's Master Custodial Account to Seller's Master Custodial Account having an Aggregate Market Value less than or equal to the Margin Excess, and (ii) in accordance with such transfers as provided for in clause (i) hereof, upon instructions from Seller to be delivered by Seller to all relevant Sub-Custodians pursuant to Section 9(b) of the applicable Tri-Party Sub-Custodial Agreement, Sub-Custodian shall transfer Mortgage Files relating to the Mortgage Loans described in such instructions as directed in such instructions as provided in Section 9(b) of the applicable Tri-Party Sub-Custodial Agreement and subsequent to such release from custody such Mortgage Loans shall not be included in any subsequent Sub-Custodian Data Files transmitted by such Sub-Custodian to the Master Custodian hereunder, provided that in any event, subsequent to such transfers any requirements set forth in Seller's Instructions shall continue to be met. Buyer hereby irrevocably authorizes Master Custodian and each Sub-Custodian (as a third-party beneficiary of this Agreement for the limited purposes set forth herein) to accept the written instructions of Seller identifying the specific Purchased Assets to be released in accordance herewith. Upon transfer from Buyer's Master Custodial Account, released Assets shall cease to be Purchased Assets for all purposes

19

DANSKE_0015861

hereunder and without further action the security interest granted by the Seller to the Buyer with respect to such Purchased Assets pursuant to Section 6(j) hereof shall be automatically released.

c.      Substitutions of Purchased Assets.   Except as otherwise provided in Section 17, Buyer hereby authorizes Master Custodian from time to time to release to Seller Purchased Assets held in Buyer's Master Custodial Account pursuant to a release request from Seller, provided, however, that Seller shall simultaneously deliver to Master Custodian for transfer to Buyer's Master Custodial Account additional Assets that are of the same or higher Class as, and have an Aggregate Market Value equal to or greater than the then Aggregate Market Value of Purchased Assets released hereunder. The transfer of Assets shall be effected in the manner set forth in Section 6(a) with the following exceptions: (i) Master Custodian shall calculate the Aggregate Market Value of the substitute Assets and determine that the Aggregate Market Value of the substitute Assets equals or exceeds the Aggregate Market Value of the Purchased Assets identified in Seller's release request; and (ii) Master Custodian shall transfer the identified Purchased Assets from Buyer's Master Custodial Account to Seller's Master Custodial Account and transfer the substitute Assets from Seller's Master Custodial Account to Buyer's Master Custodial Account, such transfer of released Purchased Assets and substitute Assets to be deemed to occur as provided in Section 6(f) and subject to the terms thereof. All substitute Assets received pursuant to this Section 7(c) shall be deemed to be Purchased Assets held by Master Custodian as of the Purchase Date of, and identified to, outstanding Repurchase Transactions as determined by Master Custodian. In connection with Master Custodian's performance of its duties under this Section 7(c), the parties hereto acknowledge that throughout each day during which Repurchase Transactions are outstanding, Master Custodian shall be entitled to, without specific instructions of any kind (other than Seller's Instructions), re-allocate Assets among Repurchase Transactions as many times as may be necessary in connection with the origination, rolling over and termination of various Repurchase Transactions and make appropriate substitutions from and into Buyer's Master Custodial Account in connection therewith, so long as such substitutions are made in accordance with this Section 7(c) and subject to the provisions of Section 17, and Master Custodian shall not be required to provide a statement or reconciliation of such Buyer's Master Custodial Accounts indicating such substitutions except as of the end of each such Business Day, such statement to be distributed pursuant to the provisions of Section 8 hereof.

d.      Release of Mortgage Files for Servicing.   Pursuant to Section 7 of each Tri-Party Sub-Custodial Agreement, each Sub-Custodian is permitted and authorized, from time to time and as appropriate for the foreclosure or servicing of any of the Mortgage Loans, upon receipt of a Request for Release of Documents and Receipt in the form of Exhibit 2 to each Tri-Party Sub-Custodial Agreement, to release or cause to be released to the Seller or the Seller's Authorized Representative the related Mortgage File or the documents of the related Mortgage File set forth in such Request for Release. All Mortgage Files or documents of Mortgage Files released by a Sub-Custodian to the Seller or, at the Seller's written direction, the Seller's Authorized Representative are required to be held by the Seller or the Seller's Authorized Representative, as applicable, in trust for the benefit of the Master Custodian or other related holder of a Trust Receipt. Pursuant to Section 8 of each Tri-Party Sub-Custodial Agreement, the Seller or the Seller's Authorized Representative may not request to have released to the Seller or the Seller's Authorized Representative in total active Mortgage Files or documents (including those requested) pertaining to Mortgage Loans at the time being held by the Sub-Custodian

20

under the related Tri-Party Sub-Custodial Agreement with outstanding principal balances representing more than five percent (5%) of the total aggregate outstanding principal balance of Mortgage Loans held by the Sub-Custodian pursuant to the terms thereof without the prior written consent of the Buyer.

### Section 8.    Master Custodian Statements

Master Custodian shall provide Seller with daily information statements reflecting the Cash and Assets in Seller's Master Custodial Account and shall provide Buyer and Seller with daily information statements reflecting the Cash and Purchased Assets in Buyer's Master Custodial Account. Such statements will be provided prior to 10:00 p.m. each evening and shall be in the form of Schedules 5 & 6 hereto entitled "Schedule 5 - File Format For Spreads File" and "Schedule 6 - Detail Schedule For Buyer", respectively. The File Format For Spreads File shall be electronically transmitted by Master Custodian to Seller by a method of transmission mutually acceptable to the sending and receiving parties. The Detail Schedule for Buyer shall be sent by Master Custodian to Buyer by facsimile transmission at the telecopy number provided in Exhibit B hereto. Buyer and Seller shall promptly review such statements and shall promptly advise Master Custodian of any error, omission, or inaccuracy in the information reported. Master Custodian shall undertake to correct any errors, failures or omissions that are reported to Master Custodian by Buyer or Seller. Any such corrections shall be reflected on subsequent information statements.

### Section 9.    Master Custodian Fee

Seller shall pay Master Custodian's fees and reimburse it for certain expenses in connection with the services provided pursuant to this Agreement as is more fully provided in that certain Engagement Letter between Seller and Master Custodian dated June 4, 1999.

### Section 10.    No Guaranty by Master Custodian

BUYER AND SELLER SPECIFICALLY ACKNOWLEDGE THAT MASTER CUSTODIAN IS NOT GUARANTEEING PERFORMANCE OF THE OBLIGATIONS OF BUYER OR SELLER HEREUNDER, UNDER THE MASTER REPURCHASE AGREEMENT, UNDER THE TRI-PARTY SUB-CUSTODIAL AGREEMENT OR WITH RESPECT TO ANY TRANSACTION OR ASSUMING ANY LIABILITY WITH RESPECT TO THE PERFORMANCE OF BUYER OR SELLER, NOR IS MASTER CUSTODIAN UNDERTAKING ANY CREDIT RISK ASSOCIATED WITH THE TRANSACTIONS, WHICH LIABILITIES ARE THE SOLE RESPONSIBILITY OF BUYER AND SELLER. FURTHER, EXCEPT AS MAY BE ARRANGED BY A SEPARATE AGREEMENT, MASTER CUSTODIAN IS UNDER NO OBLIGATION TO UNDERTAKE TO MAKE ANY CREDIT AVAILABLE TO EITHER BUYER OR SELLER TO ENABLE EITHER OF THEM TO COMPLETE TRANSACTIONS.

### Section 11.    Force Majeure

Master Custodian shall not be liable for any expense, loss, claim or damage (including counsel fees or expenses) suffered by Buyer, Seller, or any third party arising out of or caused by any delay in, or failure of, performance by Master Custodian, in whole or in part

21

(other than such as may arise from Master Custodian's gross negligence or willful misconduct), arising out of, or caused by, circumstances beyond Master Custodian's control, including without limitation: acts of God; interruption, delay in, or loss (partial or complete) of electrical power or external computer (hardware or software) or communications services; act of civil or military authority; sabotage; natural disaster, epidemic; war or other government action; civil disturbance; flood, earthquake, fire; other catastrophe; strike or other labor disturbance by employees of nonaffiliates; government, judicial, or self-regulatory organization order, rule, or regulation; riot; energy or natural resource difficulty or shortage; and inability to obtain materials, equipment or transportation, provided the Master Custodian has exercised such diligence as the circumstances may reasonably require, and provided that the Master Custodian has used due care and has exercised due diligence in anticipating such event to the extent reasonably foreseeable and has taken all reasonable actions as may be necessary to respond to, correct and circumvent the effects of such event on the Master Custodian's performance of its duties and responsibilities hereunder, but provided further that the proviso herein shall not be applicable to any events or consequences resulting from the problem commonly know as the "Y2K Problem", which relates to effect of the year 2000 upon any computer systems or equipment containing embedded microchips (including systems and equipment supplied by others with which such systems or equipment interface).

Section 12.   **Concerning Master Custodian**

a.   **Delay in Receiving Assets.** Master Custodian shall not be liable for any expense, loss, claim or damage (including counsel fees or expenses) which Buyer, Seller or any third party may suffer by reason of any delay Buyer, Seller or Master Custodian may experience in obtaining Assets from, or by reason of any action or omission to act on the part of, any Sub-Custodian, depository, clearing agent, transfer agent, third party, clearing corporation, or FRBNY securities wire transfer system, or in obtaining Cash from any bank, including FRBNY, clearing agent, or third party (other than such as may arise from Master Custodian's gross negligence or willful misconduct). Master Custodian shall promptly notify Seller and Buyer of any such delay. Master Custodian shall not be liable in any event for any act or omission of any Sub-Custodian or of any act or omission of any agent or representative selected with due care.

b.   **Forgery; False Data.** Master Custodian is entitled to act upon any data or instructions received from any Sub-Custodian by computer transmission or other electronic means whether or not authorized or correct if received by it in good faith and in accordance with the security procedures set forth in Section 30 of any Tri-Party Sub-Custodial Agreement. Subject to the foregoing, Master Custodian shall not be liable for any expense, loss, claim or damage (including counsel fees or expenses) which Buyer, Seller or any third party may suffer by reason of any signature by anyone who is not an Authorized Person on, or forgery or wrongful alteration of, instructions or any other written instrument or inaccuracy, incompleteness, or falsity of data transmitted by any Person by computer tape or terminal or other computer facilities or electronic means, if Master Custodian reasonably shall have believed that such instructions, instrument or data was for the account or benefit of Buyer or Seller or that the writing was signed by, or the data was transmitted by, an Authorized Person, or in the case of any Sub-Custodian, any purportedly authorized person.

22

DANSKE_0015864

c.   No Duty of Inquiry.   Notwithstanding anything to the contrary in this Agreement and without limiting the generality of the foregoing, Master Custodian shall be under no obligation to inquire into, and shall not be liable for:

(i)   the title, validity, or genuineness of any Asset;

(ii)   the legality or effectiveness of the purchase or delivery or transfer of any Asset or the propriety of the price by which the same is acquired or sold under a Repurchase Transaction;

(iii)   the due authority of any Authorized Person to act on behalf of Buyer or Seller with respect to Assets held in Buyer's Master Custodial Account or Assets held in Seller's Master Custodial Account, as applicable;

(iv)   the due authority of Buyer to purchase or hold any Purchased Asset delivered to Master Custodian pursuant to this Agreement;

(v)   the accuracy or completeness of any data or information with respect to Assets which has been provided to Master Custodian by Seller at any time pursuant to the terms of this Agreement (including, without limitation, for the failure by the Master Custodian to transfer Assets to the Buyer's Master Custodial Account in respect of any Repurchase Transactions which for any reason are excluded from the report sent by Seller to Master Custodian pursuant to Section 5(a) hereof);

(vi)   the collectibility, insurability, effectiveness, marketability or suitability of any of the collateral underlying an Asset; or

(vii)   the legal content of the provisions of any Trust Receipt or the legal adequacy thereof or of any purported transfer thereof.

d.   Price Data.   Master Custodian shall not be liable for any expense, loss, claim or damage (including counsel fees and expenses) (other than such as may arise solely from Master Custodian's gross negligence or willful misconduct) which Buyer, the Seller, or any third party may suffer by reason of any error by, or inaccuracy of, any price received from any recognized pricing source (including the Seller if the Buyer, Seller and Master Custodian have agreed at any time to permit Seller pricing) including any prices resulting from any formula used to obtain such prices except for the proper calculation of prices thereunder.   Master Custodian shall have no duty to inquire into the appropriateness or relative change of any price nor shall Master Custodian be required to determine volatility factors with respect to any price.

e.   Limitation of Liability.   Master Custodian shall perform its duties with reasonable care.   Master Custodian shall be liable to Buyer and Seller for loss of Assets resulting from Master Custodian's gross negligence or loss of the same by reason of robbery, burglary, or theft by it or its employees, agents or delegates.   Master Custodian shall not be liable to any Person for loss of Assets in the care and custody of a Sub-Custodian.   Notwithstanding any other provisions of this Agreement, Buyer and Seller agree that Master Custodian's liability under this Agreement shall be limited to direct damages resulting from Master Custodian's breach of this

23

DANSKE_0015865

Agreement. In no event shall Master Custodian be liable for special, consequential, or incidental damages incurred or suffered by Buyer, Seller, any Sub-Custodian or any other Person regardless of the form of action and even if such party is advised of the possibility of such damages.

Section 13.    **Indemnification**

Each of Buyer and Seller agrees, jointly and severally, to release, indemnify and hold harmless Master Custodian, its officers, directors, employees, agents and affiliated persons ("Indemnified Parties") for expenses, losses, claims, fines, penalties, or damages (including the reasonable fees of external legal counsel, accountants or auditors) (collectively, "Covered Costs") suffered by any Indemnified Party, if such Covered Costs (i) relate to those areas of liability from which Master Custodian has been expressly exculpated pursuant to the terms of this Agreement or any applicable Tri-Party Sub-Custodial Agreement, or (ii) result from any actual or alleged breach by the Seller, Buyer or Master Custodian of any provision of this Agreement, or any actual or alleged breach by the Seller, Master Custodian or any Sub-Custodian of any provision of any applicable Tri-Party Sub-Custodial Agreement, or failure in whole or in part, or delay in performing any duty or obligation hereunder or under any applicable Tri-Party Sub-Custodial Agreement, other than by reason of gross negligence or willful misconduct of Master Custodian or the Indemnified Party or for loss or theft as provided in Section 12(e) of this Agreement. Each of Buyer and Seller further agrees, jointly and severally, to indemnify and hold harmless the Indemnified Parties and to pay the reasonable costs and external counsel fees in connection with an Indemnified Party's defense of, or participation in, any action, claim, investigation, or administrative proceeding arising out of Master Custodian's performance of services under this Agreement or any applicable Tri-Party Sub-Custodial Agreement, other than by reason of gross negligence or willful misconduct of Master Custodian or of the Indemnified Party or for loss or theft as provided in Section 12(e) of this Agreement. Notwithstanding the foregoing, Buyer and Seller shall not be jointly and severally responsible for the reasonable counsel fees of more than one external counsel to the Indemnified Parties, regardless of the number of Indemnified Parties.

Section 14.    **Continuing Disputes**

With respect to Buyer's Account, the Assets at any time located in or to be transferred into Buyer's Account and any issues regarding the Buyer's right, title and interest into or under such account and Assets (including, without limitation, the transfer, sale or other liquidation of such Assets) or Seller's purported interest therein, notwithstanding anything to the contrary in this Agreement, in the event of any dispute between, conflicting claims by or conflicting instructions from Seller and Buyer with respect to such account or Assets, Master Custodian shall follow the instructions of Buyer and disregard the instructions of Seller. With respect to any other issues arising in connection with this Agreement, in the event of any dispute between or conflicting claims by Buyer and the Seller and any other person, Master Custodian shall promptly notify Seller and Buyer and shall either act on joint instructions or decline to comply with any and all claims, demands, or instructions with respect to such Assets so long as such dispute or conflict shall continue, and Master Custodian shall not be liable for failure to act or comply with such claims, demands, or instructions. With respect to issues covered by the immediately preceding sentence, Master Custodian shall be entitled to refuse to act or comply until either (i) such conflicting or adverse claims or demands shall have been determined in a

24

court of competent jurisdiction or settled by agreement between the conflicting parties and Master Custodian shall have received evidence satisfactory to it of the same, or (ii) Master Custodian shall have received security or an indemnity satisfactory to it and sufficient to hold it harmless from and against any and all losses or damages, including reasonable external counsel fees and expenses, which it may incur by reason of taking any action, except Master Custodian shall in all events accept Cash in substitution of any Purchased Assets pursuant to Section 7(c).

Section 15.      **Form of Instructions**

Notwithstanding that this Agreement may require written instructions, Master Custodian may in its discretion act on oral instructions of an Authorized Person if promptly confirmed in writing or on instructions received over any system whereby the receiver is able to verify by code or otherwise with reasonable certainty the identity of the sender of such communications. In such event, if subsequent written instructions differ in any respect from oral instructions, written instructions shall control. Failure to confirm in writing shall not affect the authority of any acts taken or omitted by Master Custodian pursuant to oral instructions. Instructions shall be effective from the time they are actually received by an Authorized Person of Master Custodian from an Authorized Person of the instructing party or from a person reasonably believed by Master Custodian to be an Authorized Person of the instructing party by telephone, by facsimile, or other facsimile machine, or any other means designated by Master Custodian.

Section 16.      **Termination**

Any of (x) Master Custodian, (y) Buyer or (z) Seller, may terminate this Agreement, without cause, by giving the other parties no less than ninety (90) days prior written notice specifying the date of such termination. Master Custodian shall deliver any Cash or Purchased Assets remaining in Buyer's Master Custodial Account on termination of this Agreement to a successor Master Custodian designated in written instructions from Buyer and Seller. If Buyer and Seller do not provide written instructions designating a successor Master Custodian prior to the termination date, Master Custodian shall (a) continue to hold Purchased Assets and Cash in Buyer's Master Custodial Account until the Repurchase Date with respect to each Repurchase Transaction then outstanding, or until it has received a Notice of Default, in connection therewith, and instructions in accordance with Section 17, or (b) in its sole discretion Master Custodian may deliver such Cash or Purchased Assets to Buyer or its designee.

Section 17.      **Notice of Default; Control**

a.      **Delivery of Notice of Default.** If the Seller shall declare an Event of Default, it shall deliver a Notice of Default to Master Custodian. Master Custodian shall notify the Buyer of the receipt of a Notice of Default and shall send a notice of such Event of Default to each Sub-Custodian holding Mortgage Loans for the benefit of Buyer as determined pursuant to the most recently delivered Sub-Custodian Data File as provided in Section 9(c) of the related Tri-Party Sub-Custodial Agreement, but shall have no further obligation or duty to inquire into the nature or validity of the Event of Default set forth in the Notice of Default.

25

CONFIDENTIAL

    **b.**    <u>Effect of Buyer's Notice of Default</u>. If Buyer shall declare an Event of Default, it shall deliver a Notice of Default to Master Custodian. Master Custodian shall notify the Seller of the receipt of a Notice of Default and shall send a notice of such Event of Default to each Sub-Custodian holding Mortgage Loans for the benefit of Buyer as determined pursuant to the most recently delivered Sub-Custodian Data File as provided in Section 9(c) of the related Tri-Party Sub-Custodial Agreement. At any time during which Master Custodian has received a Notice of Default from Buyer with respect to any Repurchase Transaction, Master Custodian shall:

        (i)    give notice to Seller of such Notice of Default and hold all Purchased Assets in Buyer's Master Custodial Account, or transfer the same in accordance with Buyer's instructions to Master Custodian; and

        (ii)    cease (A) transferring (x) Assets from Seller's Master Custodial Account to Buyer's Master Custodial Account and (y) Cash from Buyer's Master Custodial Account to Seller, in each case pursuant to the provisions of Section 6(a) hereof in connection with any new Repurchase Transactions; (B) determining the Aggregate Market Value of Purchased Assets pursuant to Section 6(e); (C) tendering the Purchased Assets pursuant to Section 6(e); or (D) releasing to Seller Purchased Assets pursuant to Sections 7(a) and 7(b), except Master Custodian shall in all events accept Cash in substitution of any Purchased Asset pursuant to Section 7(c).

    **c.**    <u>Control</u>. All property from time to time in Buyer's Master Custodian Account shall be owned and controlled solely by Buyer, and Bank shall follow only Buyer's instructions with respect to Buyer's Account. If requested in writing by Buyer, Master Custodian shall, notwithstanding anything to the contrary in this Agreement, comply with all notifications it receives originated by Buyer directing it to transfer or redeem any property in Buyer's Master Custodial Account and any other instructions or "entitlement orders" (as defined in Article 8 of the UCC) concerning Buyer's Master Custodial Account, in each case without further consent by Seller. Master Custodian shall have no duty to investigate or make any determination as to whether a default exists under the Master Repurchase Agreement and shall comply with any entitlement orders or other notifications or instructions from Buyer even if it believes that no such default exists, and Master Custodian shall have no liability to Seller or to any other Person for complying with orders from Buyer even if Seller notifies Master Custodian that Buyer has no right to give such instructions. Buyer hereby covenants, for the exclusive benefit of Seller, that Buyer will not instruct Master Custodian to deliver any Assets to any person other than Seller unless and until an Event of Default has occurred as to which Seller is the defaulting party. Notwithstanding the foregoing, the foregoing covenant is for the exclusive benefit of Seller only, and it shall in no way be deemed to constitute a limitation on (i) Buyer's right at any time to provide notifications, instructions or entitlement orders to Master Custodian with respect to the transfer of Assets, or (ii) Master Custodian's obligation to act upon such notifications, instructions or entitlement orders of Buyer. Nothing contained in this Section 17(c) is intended to, nor shall it be deemed to limit, modify or supersede in any respect the rights of the Seller provided in Section 17(d) hereof, it being agreed that Section 17(d) does not and shall not affect Buyer's control of the Buyer's Master Custodial Account

26

DANSKE_0015868

    d.    <u>Effect of Seller's Notice of Default</u>.  At any time Master Custodian has received a Notice of Default from Seller, with respect to any Repurchase Transaction, Master Custodian shall:

    (i)    give notice to Buyer of such Notice of Default and continue to hold all Purchased Assets then held in Seller's Master Custodial Account or transfer the some in accordance with Seller's Instructions to Master Custodian; and

    (ii)    cease:  (A) transferring (x) Assets from Seller's Master Custodial Account to Buyer's Master Custodial Account and (y) Cash from Buyer's Master Custodial Account to Seller, in each case pursuant to Section 6(a) in connection with any new Repurchase Transactions; (B) determining the Aggregate Market Value of Purchased Assets pursuant to Section 6(c); (C) tendering the Purchased Assets pursuant to Section 6(e), or (D) releasing to Seller Purchased Assets pursuant to Sections 7(c) and 7(d), except that Master Custodian shall in all events accept Cash in substitution of any Purchased Asset pursuant to Section 7(c).

    e.    <u>Further Assurances</u>.  In the event that Master Custodian receives a Notice of Default from Seller or any notification, instruction or entitlement order from Buyer as provided in clauses (b) and (c) above with respect to any Repurchase Transaction, Master Custodian shall continue to provide safekeeping services with respect to Purchased Assets and Cash held in Buyer's Master Custodial Account for a period not to exceed 90 days but shall not be required to provide additional services unless Seller gives Master Custodian adequate assurances that Seller shall pay Master Custodian's fees or Buyer undertakes in writing to pay Master Custodian's fees for such additional services.

    f.    <u>Master Custodian's Knowledge</u>.  Master Custodian shall not be deemed to have independent knowledge or notice of the existence of an Event of Default. Master Custodian shall be entitled to rely on Buyer's or Seller's written Notice of Default and shall have no duty to inquire into the nature or validity of an Event of Default.

Section 18.    <u>Miscellaneous</u>

    a.    <u>Authorized Personnel</u>.  <u>Exhibit B</u> contains the names, titles, and specimen signatures of those individuals authorized to act on behalf of Buyer for the purposes for which each is authorized.  Seller shall deliver to Master Custodian such information for Seller's Authorized Persons.  It is understood that certain designated persons may be Authorized Persons for limited purposes set forth in such lists.  Buyer and Seller each agree to furnish to Master Custodian a written notice in the event that any such authorized individual ceases to be authorized or in the event that other or additional authorized individuals are appointed and authorized.  Upon receipt and acknowledgment of a notice from Buyer or Seller that an individual is no longer an Authorized Person, Master Custodian shall cease accepting instructions from such person as soon as practicable thereafter.

27

      DANSKE_0015869

b.   Funds Transfers.

(i)   Account Identification.  In receiving funds transfers for Buyer, Master Custodian may rely solely on the account number or identifying number on the funds transfer in identifying the funds transfer as received for Buyer.  Master Custodian shall rely solely on the account number specified on Exhibit B in making a funds transfer to Buyer.  Similarly, when Buyer sends a payment order identifying an intermediary bank (a bank other than Master Custodian's or Buyer's originating bank) or a recipient bank for Master Custodian with an identifying number, Master Custodian does not have to determine if the identifying number corresponds to the bank name Buyer provides.

(ii)   Transfer Procedure.  Master Custodian will transfer all funds in Cash to Buyer and Seller as required herein pursuant to the wiring instructions provided on Exhibits B and C respectively, as such wiring instructions may be revised or superseded from time to time upon written notice to Master Custodian, such notice to be effective upon receipt by Master Custodian.  No confirmation of the receipt of funds sent pursuant to standing wire transfer instructions will be made by telephone or other method of communication.

c.   Notices.  Any notice authorized or required by this Agreement shall be sufficiently given if addressed to the receiving party and hand delivered or sent by mail, telecopy or other facsimile machine to the individuals at the addresses specified herein or to such other person or persons as the receiving party may from time to time designate to the other parties in writing.  Such notice shall be effective upon receipt or such later time as provided in this Agreement.

TO SELLER:      Lehman Commercial Paper Inc.
                745 Seventh Avenue
                New York, New York  10019
                Attention: Robert E. Guglielmo, Senior Vice President
                Transaction Management
                Telephone: (212) 526-7121
                Fax: (212) 526-7672

TO BUYER:       See Exhibit B.

TO MASTER
CUSTODIAN:      JPMorgan Chase Bank, N.A.
                4 New York Plaza, 13th Floor
                New York, New York  10004-2412
                Attention: Glenn Hett, Vice President
                Clearance & Collateral Management
                Telephone: (212) 623-1855
                Fax: (212) 623-2802

28

CONFIDENTIAL

DANSKE_0015870

d.   Amendments.  Except as otherwise expressly provided hereunder, this Agreement may not be amended or modified in any matter except by a written agreement executed by an Authorized Person of all the parties.  No waiver or acceptance of performance other than as provided herein on the part of any party shall constitute a waiver or acceptance of such performance in the future.

e.   Binding Agreement.  This agreement shall extend to and shall be binding upon the parties hereto, and their respective successors and assigns; provided, however, that this Agreement shall not be assigned by any party without the written consent of the other parties hereto, and any purported assignment in the absence of such consent shall be void.  In the event that any provision of this Agreement shall be inconsistent or conflict with any provision of the Repurchase Agreement, with respect to Transactions to be processed under this Agreement, the provisions of this Agreement shall control.

f.   Examination of Master Custodian's Files; Examination of Sub-Custodian's Files.  Upon reasonable prior notice to Master Custodian, Seller and Buyer, and their agents, accountants, attorneys and auditors, will be permitted during normal business hours to examine the books and records of Master Custodian relating to the Master Custodian Held Assets held from time to time in each of their respective accounts.  Upon the written request of Buyer, pursuant to Section 12(a) of the applicable Tri-Party Sub-Custodial Agreement, Buyer and its agents, accountants, attorneys and auditors shall have the right, upon three Business Days' prior notice, during normal business hours to examine the Mortgage Files and any other documents, records and papers in the possession of or under the control of any Sub-Custodian relating to any or all of the Mortgage Loans.  The Master Custodian shall not be responsible for any expenses in connection with such examinations.

g.   Survival.  All releases, exculpations and indemnifications provided in this Agreement shall survive the termination of this Agreement.

h.   Applicable Law; Jurisdiction.  This Agreement shall be construed in accordance with the laws of the State of New York applicable to agreements made to be performed in New York.  Each of the parties hereto irrevocably submits to the non-exclusive jurisdiction of any New York State court or Federal court located in the State and City of New York in any action or proceeding arising out of or relating to this Agreement, and each party irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State or Federal court.  The parties hereto irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to such party at its address specified in Section 18(o) hereof.  Each party agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

i.   Headings and References.  The headings and captions in this Agreement are for reference only and shall not affect the construction or interpretation of any of its provisions.  Except as expressly provided herein, all references to Sections, Subsections and Exhibits refer to Sections, Subsections and Exhibits of this Agreement unless otherwise specified to the contrary.

29

CONFIDENTIAL

DANSKE_0015871

j. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but such counterparts shall, together, constitute only one Agreement.

k. <u>Time Zone</u>.  All times referred to herein shall be New York City time on the applicable date.

l. <u>Application of UCC Article 8</u>.  The parties hereto acknowledge and agree that (i) the Mortgage Loans are not "securities" as defined in Section 8-102(a) of the UCC and (ii) all Assets held by Master Custodian in, or credited to, the Buyer's Master Custodial Account will be treated as "financial assets" (as defined in Section 8-102(a) of the UCC) under Article 8 of the UCC.

30

CONFIDENTIAL

DANSKE_0015872