# EXHIBIT 37

**Objection Date and Time: October 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :        **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**                    :        **08-13555 (JMP)**
                                                                    :
                                  **Debtors.**                      :        **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

## NOTICE OF MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT AND COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC. AND DANSKE BANK A/S, LONDON BRANCH

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI", and together

with LBHI and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession, the "Debtors"), for authorization and approval, pursuant to Section 105(a)

of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure to enter

into a settlement and compromise with Danske Bank A/S, London Branch ("Danske"), all as

more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases and (v) Venable LLP, 750 E. Pratt Street, Suite 900, Baltimore, Maryland 21202, Attn: Mitchell Kolkin, Esq. and Carollynn H.G. Callari, Esq., attorneys for Danske, so as to be so filed and received no later than **October 13, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "<u>Objection Deadline</u>").**

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 29, 2010
      New York, New York

          /s/ Jacqueline Marcus
          Jacqueline Marcus

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                             :
**In re**                                      :        **Chapter 11 Case No.**
                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                             :
                     **Debtors.**              :        **(Jointly Administered)**
                                             :
----------------------------------------------------------------x

### MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT AND COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC. AND DANSKE BANK A/S LONDON BRANCH

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc.

("LCPI" and, together with LBHI and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession, the "Debtors"), file this motion (the "Motion") and

respectfully represent:

### Background

1.       Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (collectively, the

"Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to section 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court [Docket No. 7531].

5.      On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 7572].  On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

6.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide

8.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

9.      Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, LBHI and LCPI request authorization to enter into, and approval of, a settlement agreement with Danske Bank A/S, London Branch ("Danske" and, together with LBHI and LCPI, the "Parties"), substantially in the form annexed hereto as Exhibit 1 (the "Settlement Agreement").[1]  LBHI and LCPI also seek authorization to take all steps necessary to consummate the transactions set forth in the Settlement Agreement.

**The Master Repurchase Agreement**

10.      LCPI and Danske and certain of their respective affiliates are parties to a Master Repurchase Agreement, dated August 30, 1999 (as amended from time to time, the "MRA").  In connection with the MRA, LCPI and Danske and certain of their respective

---

[1] Exhibit A to the Settlement Agreement, containing the list of the 1,440 Residential Mortgage Assets, is voluminous and therefore has been excluded from the Settlement Agreement annexed to this Motion.  A copy of the full form of Settlement Agreement, including Exhibit A has been provided to the Creditors' Committee prior to the filing of this Motion and is available to the Court upon request.

affiliates entered into (i) a Committed Repurchase Facility Agreement, dated as of March 23, 2007 (the "Residential Repurchase Facility") pursuant to which residential mortgage loans and REO properties (the "Residential Mortgage Assets") were sold to Danske, and (ii) a Committed Repurchase Facility Agreement, dated as of March 17, 2005 (the "Commercial Repurchase Facility"), pursuant to which commercial mortgage loans (the "Commercial Mortgage Assets" and, together with the Residential Mortgage Assets, the "Mortgage Assets") were sold to Danske.  Also in connection with the MRA, LCPI, Danske and The Bank of New York York ("BNY") (as successor to JPMorgan Chase Bank, N.A.) entered into the Tri-Party Custody Agreement, dated as of April 21, 2006 ( the "Custody Agreement").  LBHI issued a guarantee to Danske, dated March 17, 2005, guaranteeing certain of LCPI's obligations under the MRA with respect to the Commercial Mortgage Assets.   LBHI also issued a guarantee to Danske, dated March 19, 2007, guaranteeing certain of LCPI's obligations under the MRA with respect to the Residential Mortgage Assets.  A list of the Residential Mortgage Assets that were subject to the MRA on the Commencement Date is attached to the Settlement Agreement.

11.     Pursuant to the MRA, prior to the Commencement Date, LCPI sold, among other things, the Residential Mortgage Assets to Danske, subject to LCPI's obligation to repurchase such Residential Mortgage Assets at a future date.  Pursuant to the Custody Agreement, BNY was to hold the files (collectively, the "Collateral Files") for the benefit of Danske and LCPI.  BNY arranged for several sub-custodians to take custody of the Collateral Files.

12.     On September 23, 2008 (the "Default Date"), Danske sent a letter to LCPI declaring that an event of default had occurred under the MRA and the Custody Agreement as a result of LBHI's filing for chapter 11.  Pursuant to the MRA, Danske became entitled to LCPI's

ownership interest in the Residential Mortgage Assets.  Danske directed BNY to transfer the Collateral Files into Danske's account.  In accordance with this instruction, BNY issued written notices to the sub-custodians, instructing them to follow the instructions of Danske concerning the Residential Mortgage Assets and Collateral Files.

13.     Since the Default Date, Danske has asserted that LCPI is contractually obligated under the Custody Agreement to provide Danske with the documents relating to the title, ownership and enforcement of the Residential Mortgage Assets, and LBHI and LCPI have provided, or caused to be provided, to Danske all such documents requested by Danske which were in the possession of LBHI and/or LCPI.

14.     Since the Default Date, LBHI and LCPI on one hand, and Danske on the other hand, have disagreed regarding which party is entitled to certain of the benefits of (including the allocation of certain proceeds of the Residential Mortgage Loans under the MRA), and liable for the certain obligations under, the Residential Mortgage Assets.

15.     As a result of such dispute, and by agreement among the parties, the proceeds from the Residential Mortgage Assets have been deposited into an escrow account (the "Escrow Account") held by Aurora Loan Services, LLC ("Aurora") as escrow agent.  As of September 27, 2010 there was $34,925,249.99 in the Escrow Account.  Disbursements of the funds from the Escrow Account require either (i) joint direction from LBHI, LCPI and Danske to Aurora or (ii) an order from the Bankruptcy Court.  The Parties agreed that a certain portion of the funds in the Escrow Account indisputably belonged to Danske, and therefore on June 30, 2010, $15 million of the funds held in the Escrow Account were disbursed to Danske.

16.     The Parties did not dispute the ownership rights with respect to the Commercial Mortgage Assets.  Therefore, subsequent to the Commencement Date, LBHI and LCPI assigned, and Danske assumed, all but two of the Commercial Mortgage Assets.[2]

17.     Despite their disputes, the Parties have worked cooperatively to service and administer the subject loans in order to maximize the value thereof for the mutual benefit of the Parties.  Danske has filed a claim against each of LCPI and LBHI (Claim Nos. 19487 and 17247, respectively) asserting a deficiency claim pursuant to the MRA (collectively, the "Deficiency Claim").

**The Settlement Agreement**

18.     In order to resolve the disputes between the Parties regarding their respective rights to the Residential Mortgage Assets and proceeds thereof, and to avoid protracted, costly and uncertain litigation with respect thereto, the Parties intend to enter into the Settlement Agreement.  The salient terms of the Settlement Agreement are as follows:

- On the Assignment Date (as defined in the Settlement Agreement) LBHI, LCPI and Danske shall execute and deliver an assignment and assumption agreement (the "Assignment and Assumption Agreement") with respect to the Residential Mortgage Assets.  Upon the execution and delivery of the Assignment and Assumption Agreement, the Parties agree that (i) Danske is, and has been, the sole beneficial owner of the Residential Mortgage Assets since the Default Date, (ii) Danske shall have all of LBHI's and LCPI's respective right, title and interest as lender under the Residential Mortgage Assets as of the Default Date, and (iii) Danske shall have assumed all of LBHI's and LCPI's respective obligations as lender to any borrowers arising from the documents evidencing the Residential Mortgage Assets as of the Default Date and thereafter.

- Upon the execution and delivery of the Assignment and Assumption Agreement, LBHI and LCPI will execute and deliver to Danske (or its designee) any and all assignment and transfer instruments (including to the

---

[2] Although there is not a dispute regarding ownership, two of the Commercial Mortgage Assets were not assigned to Danske.

extent applicable, alonges and assignments of mortgages, or any other documents or instruments that may be required in the applicable local jurisdictions) further evidencing the transfer of the Residential Mortgage Assets to Danske (or its designee).  LBHI and LCPI shall take any and all actions that Danske shall reasonably request to further evidence or confirm the ownership interest of Danske (or its designee) in the Residential Mortgage Assets, including notifying borrowers, servicers or other parties.

- The Parties shall provide a joint direction to Aurora providing that the cash held in the Escrow Account shall be disbursed in the following manner: $1,197,112.26 to LCPI and $33,728,137.73 to Danske.  Any and all remaining funds in the Escrow Account shall be disbursed to Danske.

- Danske shall release LBHI and LCPI and each of their respective affiliates from any claims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs, and causes of action of whatever nature in connection with or relating to the Residential Mortgage Assets and the Commercial Mortgage Assets, other than the Deficiency Claim, including, without limitation (i) any delay in the execution of transfer documentation or instruments and (ii) any omissions or affirmative acts of any kind occurring on or after the Default Date by LBHI or LCPI or any of their respective affiliates in any capacity in connection with the ownership, administration or servicing of the Residential Mortgage Assets and the Commercial Mortgage Assets; provided however, nothing in the Settlement Agreement shall release, waive or limit the validity or effectiveness of any of the omnibus assignment and assumption agreements among LBHI, LCPI and Danske executed and delivered since the Default Date with respect to the Residential Mortgage Assets listed on Exhibit A or with respect to the Commercial Mortgage Assets listed on Exhibit C-1 to the Settlement Agreement.

- LBHI and LCPI shall release Danske in all respects from any claims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs, and causes of action of whatever nature in connection with or relating to the Residential Mortgage Assets and the Commercial Mortgage Assets, including, without limitation (i) any delay in the execution of transfer documentation or instruments and (ii) any omissions or affirmative acts of any kind occurring on or after the Default Date by Danske in any capacity in connection with the ownership, administration or servicing of the Residential Mortgage Assets and the Commercial Mortgage Assets.

- Nothing in the Settlement Agreement or this Motion shall be construed to be an assumption or an assumption and assignment of the MRA by LBHI or LCPI pursuant to section 365 of the Bankruptcy Code.

- Nothing in the Settlement Agreement or this Motion shall affect the Deficiency Claim.  Danske shall retain the right to assert any deficiency claim against LBHI or LCPI in respect of the MRA, and LBHI and LCPI reserve all

of their rights, positions and defenses against Danske with respect to such deficiency claims; provided, however, that Danske shall not assert or pursue any claims against LBHI or LCPI under the MRA other than claims 17247 and 19487 in the event the MRA is rejected.

- The Settlement Agreement will be effective upon the entry of the order requested by this Motion.

## The Settlement Agreement is Fair and Equitable and Falls Well Within the Range of Reasonableness and Should Be Approved

19. LBHI's and LCPI's entry into the Settlement Agreement is in their best interests and should be approved under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

20. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

21.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness."  *Nellis*, 165 B.R. at 123 (internal citations omitted).

22.     The Court may give weight to the informed judgment of the debtor that a compromise is fair and equitable.  *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness….  If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

23.     The settlement and compromise set forth in the Settlement Agreement satisfies the standard for approval.  Pursuant to the terms of the MRA, upon the occurrence of an event of default by LCPI, Danske is entitled to acquire sole ownership of the Residential Mortgage Assets.   The Settlement Agreement merely supplements the obligations of LCPI and LBHI to execute documentation assigning the Residential Mortgage Assets to Danske, as required by the MRA.  Inasmuch as some of the Residential Mortgage Assets have future funding obligations, Danske's assumption of all of the liabilities as owner of the Residential Mortgage Assets will reduce the liabilities of LBHI and LCPI.  Furthermore, LBHI and LCPI

will receive a release from Danske in all respects with respect to the Residential Mortgage Assets (other than the Deficiency Claim) and any actions that LBHI and LCPI took, or failed to take, with respect to the ownership and administration of the Residential Mortgage Assets.  LBHI and LCPI will also receive a potion of the cash held in the Escrow Account.  Accordingly, for little cost, LBHI and LCPI will obtain the benefits of the Settlement Agreement and reduce future claims against their estates.

24.     Pursuant to the terms of that certain master repurchase agreement, dated as of December 4, 1997 among LCPI, LBI and LBHI (as amended), LBHI sold to LCPI the Residential Mortgage Assets prior to LBHI's Commencement Date.  As a result, LBHI was no longer an owner of the Residential Mortgage Assets as of such date.  Additionally, after the Default Date and pursuant to the terms of the MRA, Danske became entitled to own the Residential Mortgage Assets prior to LCPI's Commencement Date.  Consequently, as of the commencement of LCPI's case, LCPI was no longer an owner of the Residential Mortgage Assets.  As evidenced by the terms of the MRA, the Residential Mortgage Assets are not and were not property of LBHI's estate or LCPI's estate.

25.     LCPI is evaluating the burdens and benefits of the MRA in the context of its numerous executory contracts.  Any actions taken by LBHI or LCPI with respect to the Residential Mortgage Assets or in connection with their entry into the Settlement Agreement do not constitute an assumption of the MRA under the Bankruptcy Code.

26.     The Court, therefore, may find that the Mortgage Loans are not and were not property of LBHI's estate or LCPI's estate, and that neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and assign the MRA pursuant to the

Bankruptcy Code, including section 365 thereof, in connection with the Settlement Agreement or any of the transactions contemplated thereby.

27.     Accordingly, the settlement falls well above the lowest point in the range of reasonableness and is within the Court's authority under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Approval of the Settlement Agreement is, therefore, in the best interests of LBHI's and LCPI's estates and creditors.

### Notice

28.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) attorneys for Danske; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

29.     No previous request for the relief sought herein has been made by LBHI

or LCPI to this or any other Court.

WHEREFORE LBHI and LCPI respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: September 29, 2010
       New York, New York

                                        /s/ Jacqueline Marcus
                                        Jacqueline Marcus

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**<u>Exhibit 1</u>**
**(Settlement Agreement)**

## SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into on this [_____] day of

[_____], 2010, among Danske Bank A/S, London Branch ("Danske"), Lehman

Commercial Paper Inc. ("LCPI"), and Lehman Brothers Holdings Inc. ("LBHI") (collectively,

the "Parties").

## RECITALS

A.      On September 15, 2008 (the "LBHI Petition Date"), LBHI commenced a

voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"),

in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court").

B.      On October 5, 2008, LCPI commenced a voluntary case under Chapter 11 of the

Bankruptcy Code in the Bankruptcy Court (the "LCPI Petition Date").

C.      LCPI, Danske and certain of their respective affiliates are parties to that certain

Master Repurchase Agreement dated as of August 30, 1999, as amended (the "MRA").  Pursuant

to the MRA, LCPI sold to Danske, upon the terms as set forth in the MRA, certain residential

mortgage loans and REO properties, which are listed on the attached Exhibit A (collectively, the

"Residential Mortgage Assets") and certain commercial mortgage loans, which are listed on the

attached Exhibit B (the "Commercial Mortgage Assets", and together with the Residential

Mortgage Assets, the "Mortgage Assets").  LBHI issued a guarantee to Danske, dated March 17,

2005, guaranteeing certain of LCPI's obligations under the MRA with respect to the Commercial

Mortgage Assets, and LBHI also issued a guarantee to Danske, dated March 19, 2007,

guaranteeing certain of LCPI's obligations under the MRA with respect to the Residential Mortgage Assets.  Pursuant to a Tri-Party Custody Agreement (the "Custody Agreement"), dated as of April 21, 2006, by and among Danske, LCPI and The Bank of New York, as Master Custodian ("BNY"), BNY was to hold the files (collectively, the "Collateral Files") relating to the Mortgage Assets for the benefit of Danske and LCPI. BNY arranged for several sub-custodians to take custody of the Collateral Files.

D.      Pursuant to the MRA, the Residential Mortgage Assets were sold to Danske in accordance with the terms and conditions set forth in that certain Committed Repurchase Facility Agreement dated as of March 23, 2007 and effective on March 30, 2007 (the "Residential Committed Repurchase Facility").

E.       Pursuant to the MRA, the Commercial Mortgage Assets were sold to Danske in accordance with the terms and conditions set forth in that certain Committed Repurchase Facility Agreement dated as of March 17, 2005 and effective on March 17, 2005 (the "Commercial Committed Repurchase Facility", and together with the Residential Committed Repurchase Facility, the "Committed Repurchase Facility").

F.      September 12, 2008 was the last rollover date (the "Last Rollover") on which Mortgage Assets were sold to Danske pursuant to the MRA.

G.      Pursuant to the MRA and the Committed Repurchase Facility, Danske transferred cash to LCPI on or prior to the Last Rollover in exchange for the purchase of the Mortgage Assets.

H.      Prior to the Last Rollover, (i) LBHI acquired Residential Mortgage Assets from its then-affiliate Lehman Brothers Bank, FSB and from unaffiliated third parties, (ii) LBHI sold

all of the Residential Mortgage Assets to LCPI pursuant to one or more repurchase transactions, and (iii) LCPI re-sold all of the Residential Mortgage Assets to Danske in a back-to-back repurchase transaction pursuant to the MRA and the Committed Repurchase Facility.

I.      On September 23, 2008 (the "Default Date"), Danske declared an Event of Default (as defined in the MRA) and notified LCPI in writing that it was in default under the MRA.  On the same day, Danske advised BNY, as the Master Custodian, that there had been an Event of Default and, in accordance with the Custody Agreement, Danske directed BNY to transfer the Collateral Files into the name of Danske.  In accordance with this instruction, BNY issued written notices to the sub-custodians, instructing them, *inter alia,* to follow the instructions of Danske concerning the Mortgage Assets and Collateral Files.

J.      Selling and assigning mortgage loans and REO properties similar to the Mortgage Assets were and are customary in the ordinary course of LCPI's and LBHI's business, both before and after the LCPI Petition Date and the LBHI Petition Date, respectively.

K.      Since the LCPI Petition Date, LBHI, LCPI and Danske have work cooperatively to service and administer the Mortgage Assets in order to maximize the value thereof for the mutual benefit of the parties.

L.      Since the LCPI Petition Date, either LCPI or LBHI, as assignor, and Danske as assignee, have entered into omnibus assignment and assumption agreements with respect to those Commercial Mortgage Assets set forth on Exhibit C-1 attached hereto confirming that (i) LCPI or LBHI, as applicable, has sold, and Danske has purchased, all of LCPI's or LBHI's, as applicable, right, title and interest with respect to such Commercial Mortgage Assets pursuant to the MRA, and (ii) LCPI or LBHI, as applicable, has assigned, and Danske has assumed, all of

LCPI's or LBHI's, as applicable, obligations as lender arising from the documents evidencing or securing such Mortgage Assets as of the Default Date and thereafter.

M.      LCPI, LBHI and Danske did not enter into assignment and assumption agreements with respect to those Commercial Mortgage Assets listed on Exhibit C-2, but instead entered into letter agreements whereby Danske sold and LBHI purchased such Commercial Mortgage Assets.

N.      To resolve any remaining issues regarding ownership of the Mortgage Assets, including proceeds thereof, and to avoid protracted, costly and uncertain litigation, the Parties agree that it is in their best interests to enter into this Agreement upon the terms and conditions herein.

Now, therefore, upon the foregoing recitals, which are incorporated as though fully set forth herein, it is hereby agreed, by and between LBHI  and LCPI (collectively referred to herein as the "Lehman Entities"), on the one hand, and Danske, on the other hand:

## OWNERSHIP OF THE MORTGAGE ASSETS

1.      On the Assignment Date (as defined in Paragraph 15), LCPI, LBHI and Danske shall execute and deliver an assignment and assumption agreement, as applicable, with respect to the Residential Mortgage Assets substantially in the form attached hereto as Exhibit D (the "Assignment and Assumption Agreement").  Upon the execution and delivery of the Assignment and Assumption Agreement with respect to the Residential Mortgage Assets, the Parties hereto agree that (i) Danske is, and has been, the sole beneficial owner of the Residential Mortgage Assets since the Default Date, (ii) Danske shall have all of LCPI's and LBHI's respective right, title and interest as lender under the Residential Mortgage Assets as of the Default Date, and (iii) Danske shall have assumed all of LCPI's and LBHI's respective obligations as lender to any

borrowers arising from the documents evidencing the Residential Mortgage Assets as of the Default Date and thereafter.

  2.  Upon the execution and delivery of the Assignment and Assumption Agreement with respect to the Residential Mortgage Assets, the Lehman Entities shall execute and deliver to Danske or its designee (at no cost or increased liability (beyond the obligations set forth herein) to the Lehman Entities other than de minimis costs to be incurred by the Lehman Entities in connection therewith, and which are customary in the ordinary course of the Lehman Entities' business) any and all assignment and transfer instruments (the form of which shall be reasonably acceptable to both Parties, and which shall include, without limitation, and to the extent applicable, alonges and assignments of mortgages, or any other documents or instruments that may be required in applicable local jurisdictions) further evidencing the transfer of the Residential Mortgage Assets as provided herein.  Further, upon the execution and delivery of the Assignment and Assumption Agreement, the Lehman Entities shall take any and all actions that Danske or its designee shall reasonably request (at Danske's sole cost and expense other than de minimis costs to be incurred by the Lehman Entities in connection therewith, and which are customary in the ordinary course of the Lehman Entities' business) to further evidence or confirm the ownership interest of Danske and/or its designee in the Residential Mortgage Assets, including, without limitation, (i) notifying each obligor on any Residential Mortgage Asset to make all payments thereon as directed by Danske or its designee, (ii) confirming to any lending agent, servicer (whether master or special) and any other similar agent with respect to any Residential Mortgage Asset that Danske or its designee is the owner of the Residential Mortgage Asset, (iii) joining with Danske and/or Cambridge Place Collateral Management LLC, in its capacity as asset manager for Danske or its designee ("Cambridge"),  in calls and other

communications with Aurora Loan Services LLC ("Aurora") and any sub-servicers and sub-custodians with respect to the Residential Mortgage Assets, and (iv) delivering, assigning or otherwise transferring to Danske or its designee any collateral held by the Lehman Entities (or any of its agents) securing the obligations of the obligors on the Residential Mortgage Assets. The Lehman Entities hereby authorize Danske or its designee to execute and file any assignments of existing Uniform Commercial Code financing statements naming Danske or its designee as a secured party, as may be necessary under applicable law to transfer the respective security interests held by Lehman Entities with respect to such Residential Mortgage Assets to Danske or its designee.

3.      Upon the execution and delivery of the Assignment and Assumption Agreement with respect to the Residential Mortgage Assets, the Lehman Entities shall take, at Danske's sole cost and expense other than de minimis costs to be incurred by the Lehman Entities in connection therewith, and which are customary in the ordinary course of the Lehman Entities' business, all commercially reasonable action to direct Aurora and any sub-servicers and sub-custodians to do the following: (i) confirm that Danske or its designee is the owner of the Residential Mortgage Assets; and (ii) allow Danske or its designee and/or Cambridge access to all servicing records relating to the Residential Mortgage Assets, including, without limitation, all agreements pursuant to which Aurora was engaged as the master servicer of the Residential Mortgage Assets and all agreements between Aurora and any sub-servicers and sub-custodians.

4.      If with respect to any Residential Mortgage Assets any servicer is unwilling as of the Assignment Date to enter into a reconstituted servicing agreement, an assignment, assumption and recognition agreement, or a servicing transfer agreement with Danske or its designee and Cambridge to replace the current servicing arrangements for the Residential

Mortgage Assets, the Lehman Entities shall, at no cost or liability to the Lehman Entities other than de minimis costs to be incurred by the Lehman Entities in connection therewith (which costs shall be reimbursed promptly upon written request), (i) enter into assignment and assumption agreements for certain servicing agreements, and/or (ii) deliver assignment and acknowledgment notices with respect to certain servicing agreements.

5.      The Parties acknowledge that they have been advised by Aurora that as of September 27, 2010, the sum of $34,925,249.99 was held by Aurora in the escrow account (the "Escrow Account") established by Aurora pursuant to that certain Escrow Agreement, dated as of March 1, 2010, by and among the LBHI, LCPI, Danske and Aurora (the "Escrow Agreement").  Pursuant to a joint written direction delivered by Danske and LBHI under the Escrow Agreement (a "Joint Direction"), $15,000,000.00 has heretofore been disbursed to Danske in connection with a partial release of the undisputed portion of the funds in the Escrow Account.  The Parties agree that the balance of funds in the Escrow Account shall be disbursed pursuant to a Joint Direction in the form attached hereto as Exhibit E as follows: (i) on the Effective Date, $1,197,112.26 shall be disbursed to LCPI and $33,728,137.73 shall be disbursed to Danske, and (ii) any and all remaining funds held in the Escrow Account at any time and from time to time shall be disbursed to Danske one week after the Assignment Date.

### BOOKS AND RECORDS FOR THE MORTGAGE ASSETS

6.      The Parties acknowledge that, on or prior to the date hereof, the Lehman Entities have provided, or have caused the servicers, agents and similar representatives of the Lehman Entities with respect to the Mortgage Assets to provide, Danske or its designee with copies of any and all records in the actual possession of the Lehman Entities in their offices located in the City of New York, New York, relating to the title, ownership, administration, or enforcement of

the Mortgage Assets (as well as all records with respect to the assets securing the Mortgage Assets, such as environmental and engineering reports), including without limitation, to the extent in the actual possession of the Lehman Entities in their offices located in the City of New York, New York, promissory notes, guarantees, mortgages, intercreditor agreements, and deeds of trust securing the obligations of the obligors under the Mortgage Assets, and such other mortgage loan documents that have been reasonably requested by Danske on or prior to the date hereof, but excluding any appraisals, valuations, and analyses work product, attorney work product and all other documents, materials or information created by or on behalf of any of the Lehman U.S. Entities or their employees, agents, representatives or counsel with respect thereto (collectively, "Mortgage Loan Related Documents").  From time to time after the Effective Date, in the event that Danske or its designee makes reasonable requests for additional Mortgage Loan Related Documents specifically identifying particular Mortgage Loan Related Documents which Danske or its designee has reason to believe are in the possession of the Lehman Entities in their offices located in the City of New York, New York, then, provided that the search for such specified additional Mortgage Loan Related Documents does not place an undue burden on the Lehman Entities, the Lehman Entities will make a good faith search of its New York City offices for such documents, and shall provide Danske or its designee with copies of any such additional Mortgage Loan Related Documents discovered as a result of such search. All such copies shall be provided at Danske's or its designee's sole, but reasonable, cost and expense.

7.     This Agreement shall have no effect on the proofs of claim numbered 17247 and 19487 that were filed by Danske in the United States Bankruptcy Court for the Southern District of New York on September 18, 2009, against LBHI and LCPI, respectively, or the Parties rights and defenses related thereto.

## RELEASES

8.        Except as to the acknowledgements, agreements and performance of the obligations set forth in this Agreement and the documents, instruments and agreements executed in connection herewith, Danske, for itself and its affiliates, and their successors and assigns, hereby expressly releases and waives, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured, priority, administrative or otherwise (together "Claims"), that Danske or any of its affiliates may have against any of the Lehman Entities and/or any of their  respective direct or indirect parents, subsidiaries and affiliates, or the respective officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, participants, successors or assigns of any and all of the foregoing, arising from, in connection with, or relating to the Mortgage Assets, including, without limitation (i) any delay in the execution and delivery of the alonges and other assignment and assumption documents; (ii) omissions of any kind occurring on or after the Default Date by the Lehman Entities or any of their affiliates, in the capacity as lender, or as agent, administrative agent, collateral agent, servicer, trustee, or in any other capacity on behalf or at the direction of the lenders under any of the Mortgage Assets, or in connection with the ownership, administration or servicing thereof; and (iii) affirmative acts occurring on or after the Default Date taken by the Lehman Entities or any of their affiliates in the capacity as lender, or as agent or in any other capacity under any of the Mortgage Assets or in connection with the ownership, administration or servicing thereof. The foregoing release shall not waive, diminish or in any way prejudice any rights of Danske, if any, with respect to any claims, rights, causes of action or defenses relating to or against any of

the Lehman Entities and/or any of their respective agents, representatives, affiliates, parents, subsidiaries, shareholders not specifically released under this Agreement, including but not limited to any claims that Danske may have under the MRA and the defense of the release given by the Lehman Entities under this Agreement; provided that Danske shall not assert or pursue any claims against LBHI or LCPI under the MRA other than claims 17247 and 19487 in the event that the MRA is rejected. Without limiting the foregoing, the Parties expressly acknowledge and agree that the foregoing release does not (i) release the Lehman Entities or any of their affiliates in their respective capacities as a borrower, a subordinated or mezzanine lender, or the holder of a direct or indirect interest in a borrower or a subordinated or mezzanine lender with respect to the Commercial Assets listed on Exhibit C-3, or (ii) release, waive or limit the validity or effectiveness of any of the omnibus assignment and assumption agreements among LBHI, LCPI and Danske executed and delivered since the Default Date with respect to the Residential Mortgage Assets listed on Exhibit A or with respect to the Commercial Mortgage Assets listed on Exhibit C-1.

9.     Except as to the acknowledgements, agreements and performance of the obligations set forth in this Agreement and the documents, instruments and agreements executed in connection herewith, each of the Lehman Entities, for itself, its estate and its affiliated debtors and debtors in possession and their estates, and their successors and assigns, hereby expressly waive and release, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured, priority, administrative or otherwise, that the Lehman Entities (or any of their affiliates) may have against Danske and/or any of its respective direct or indirect parents, subsidiaries and

affiliates, or the respective officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, participants, successors or assigns of any and all of the foregoing, arising from, in connection with, or relating to the Mortgage Assets on or after the Default Date, including without limitation (i) any delay in the execution and delivery of the alonges and other assignment and assumption documents; (ii) omissions of any kind occurring on or after the Default Date by Danske in the capacity as lender, or as agent or in any other capacity under any of the Mortgage Assets or in connection with the ownership, administration or servicing thereof; and (iii) affirmative acts occurring on or after the Default Date taken by Danske in the capacity as lender, or as agent or in any other capacity under any of the Mortgage Assets or in connection with the ownership, administration or servicing thereof.  The foregoing release shall not waive, diminish or in any way prejudice any rights of any of the Lehman Entities, if any, with respect to any claims, rights, causes of action or defenses relating to or against Danske not specifically released under this Agreement, including but not limited to any claims that the Lehman Entities may have under the MRA and the defense of the release given by the Lehman Entities under this Agreement.

10. To the extent that a borrower (or other party to the Mortgage Loan asserting a Claim) under the Mortgage Assets asserts a Claim based on an affirmative act or omission against either party in its capacity as lender, or as agent or in any other capacity under any of the Mortgage Assets, the parties shall cooperate with one another (at no cost or liability to the cooperating party unless reimbursed by the party requesting such cooperation) in the defense of such Claim to the extent practical and consistent with applicable fiduciary duties and rules of privilege.

11.     Nothing in this Agreement is or shall be construed to be an assumption or an assumption and assignment of the MRA by LBHI or LCPI pursuant to the Bankruptcy Code, including under section 365 thereof, or as modifying the classification or the level or priority of Claims under applicable bankruptcy and insolvency law, including, without limitation, the Bankruptcy Code, that either party may have against the other as such Claims (and their corresponding level and priority under such applicable law) existed immediately prior to the execution of this Agreement.

12.     Notwithstanding anything to the contrary contained herein, the release set forth in Paragraph 8 shall not waive, diminish, release in any way, or prejudice, any defenses or affirmative defenses (but not counterclaims) that Danske may have with respect to any claims, suits or causes of action brought by, through or on behalf of any of the Lehman Entities or any of their respective affiliates, or any of their respective successors or assigns.

13.     Notwithstanding anything to the contrary contained herein, the release set forth in Paragraph 9 shall not waive, diminish, release in any way, or prejudice, any defenses or affirmative defenses (but not counterclaims) that any of the Lehman Entities may have with respect to any claims, suits or causes of action brought by, through or on behalf of Danske, or any of its respective affiliates, or any of their respective successors or assigns.

14.     Nothing in this Agreement shall constitute a release or waiver of any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured, priority, administrative or otherwise, that any Lehman Entity (or any of its affiliates) may have against any other Lehman Entity.

## EFFECTIVE DATE AND ASSIGNMENT DATE

15.      This Agreement shall become effective (the "Effective Date") only upon entry of a final order by the Bankruptcy Court no longer subject to any appeal (a) finding (i) that the Mortgage Assets are not and were not property of LBHI's estate or LCPI's estate, (ii) that neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and assign the MRA pursuant to the Bankruptcy Code, including section 365 thereof, in connection herewith or any of the transactions contemplated hereby, and (iii) that Danske is the owner of the Mortgage Assets (other than those Commercial Mortgage Assets listed on Exhibit C-2), and (b) approving this Agreement (the "Final Order"); provided, however, that the Assignment and Assumption Agreement shall not be effective until the first day of the first calendar month following the Final Order (the "Assignment Date"). The Lehman Entities covenant that they will seek in good faith to promptly procure a Final Order in the Bankruptcy Court. The parties hereto acknowledge their common interest in procuring the Final Order and, subject to and consistent with that common interest, will provide each other with an advance copy of any motion seeking approval of this Agreement prior to its submission to the Bankruptcy Court and further agree not to file any such motion unless its contents shall be reasonably satisfactory to the other parties hereto. The Lehman Entities further covenant that they will oppose in good faith any objection made to any motion seeking approval of this Agreement.

## MISCELLANEOUS PROVISIONS

16.      Nothing contained herein is intended or should be construed as an admission as to the validity of any claim of or against any party, or as a waiver of the rights of any party to dispute any claim except as expressly waived herein.

17.     Each party hereto represents that it is duly authorized to execute this Agreement. Each party hereto agrees to take all actions, provide all consents, and execute all documents as are reasonably necessary to effectuate this Agreement. Entry of a Final Order by the Bankruptcy Court as set forth in Paragraph 15 hereof is a condition precedent to the effectiveness of this Agreement.

18.     This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

19.     The Bankruptcy Court shall have exclusive jurisdiction over this Agreement including, without limitation, the power to enforce the terms of this Agreement and enter such further orders as may be necessary and appropriate to carry out its terms.

20.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

21.     Any waiver, alteration, amendment or modification of this Agreement shall be valid only if made in writing and signed by the parties to this Agreement that are affected by such waiver, alteration, amendment or modification.

22.     All communications under this Agreement shall be in writing and shall be delivered by hand or facsimile or mailed by overnight courier or by registered or certified mail, postage prepaid, to the appropriate party at the address or facsimile number listed below (or at such other address or facsimile number as party may have been furnished to the other parties in writing). Any notice so addressed shall be deemed to be given: if delivered by hand or facsimile, on the date of such delivery, if a business day and delivered during regular business hours, otherwise the first business day thereafter; if mailed by courier, on the first business day

following the date of such mailing; and if mailed by registered or certified mail, on the third

business day after the date of such mailing:

If to LCPI or LBHI:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention:  Eli GlanzFacsimile: (646) 834-0874

with copies to:

Alvarez & Marsal North America, LLC
1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention:  Ron Dooley
Facsimile: (646) 834-0874

and:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, New York 10020
Attention: Joelle Halperin
Facsimile: (646) 834-0874

and:

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Attention: Richard A. Morrison
Facsimile: (305) 374-7159

If to Danske:

Danske Bank A/S, London Branch
75 King William Street
London EC4N 7DT
Attn: General Manager and Head of Legal and Compliance
Facsimile: +44 (0) 20 7410 8001

with a copy to:

> Venable LLP
> 750 E. Pratt Street, Suite 900
> Baltimore, Maryland 21202
> Attention: Mitchell Kolkin, Esq.
> Facsimile: (410) 244-7742

*[Signatures appear on the following page.]*

IN WITNESS WHEREOF, this Settlement Agreement has been executed by

the undersigned as of the date first written above.

<div style="margin-left: 50%;">

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York

By: _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York

By: _____
Name:
Title:

DANSKE BANK A/S, LONDON BRANCH

By: _____
Name:
Title:

By: _____
Name:
Title:

</div>

*Signature page to Settlement Agreement*

**EXHIBIT A**

**Residential Mortgage Assets**

US_ACTIVE:\43513063\01\58399.0008

**EXHIBIT B**

**Commercial Mortgage Assets**

**Cabo San Lucas:**

$125,000,000 loan from Lehman Brothers Holdings Inc. to Diamante Cabo San Lucas S. De R.L. De CV, a Mexican limited liability company, secured by, *inter alia*, an Irrevocable Guarantee Trust Agreement pertaining to real property located in Cabo San Lucas, Baja California Sur, Mexico, made for the funding of acquisition and pre-development costs.

**Knickerbocker Hotel:**

$290,000,000 loan from Lehman Brothers Holdings Inc. to Istithmar Six Times LLC, a Delaware limited liability company, secured by, *inter alia*, a Consolidated, Amended and Restated Mortgage and Security Agreement, dated as of February 9, 2007, recorded February 23, 2007 in the Office of the City Register of the City of New York under CRFN 2007000103704, pertaining to real property located at 1466 Broadway (a/k/a Six Times Square) in the City of New York, New York.

**10000 Santa Monica:**

$120,000,000 loan from Lehman ALI Inc., a Delaware corporation ("LALI"), to Suncal Century City LLC, a Delaware limited liability company ("Borrower"), secured by, *inter alia*, a Deed of Trust and Fixture Filing (with Assignment of Leases and Rents and Security Agreement) (Variable Rate), dated as of August 11, 2006, made by Borrower to Fidelity Title Insurance Company, as trustee, for the benefit of LALI, to secure the principal sum of $120,000,000 and recorded in the Recorder's Office of Los Angeles County, California on August 14, 2006 as Instrument No. 061797296, and assigned to Lehman Commercial Paper Inc., a New York corporation.

**Playa Pelicano:**

$33,000,000 loan to Playa Pelicano Holdings, SRL, a Costa Rican limited liability company ("Borrower") from Lehman Brothers Holdings Inc., a Delaware corporation, ("Lehman") evidenced by the Loan Agreement dated December 4, 2006 by and between Borrower and Lehman, as amended by that First Amendment to Loan Agreement and Other Loan Documents dated September 12, 2008.

**Rancho Mirage:**

Acquisition and development loan from Lehman Brothers Holdings Inc., a Delaware corporation, to GENLB–RANCHO, L.L.C., a Delaware limited liability company, in the maximum principal amount of $252,880,000.00, encumbering certain real property located in Rancho Mirage, Riverside County, California.

**1200 Main:**

Loan from Lehman Brothers Holdings Inc., a Delaware corporation, to LB 1200 Main LP, a Delaware limited partnership, in the maximum principal amount of $58,619,214.00, for the construction of a condominium project consisting of 290 residential units and 13,000 rentable square feet of commercial space, located in Dallas County, Texas.

**Snowmass:**

$520,394,080 loan to Base Village Owner LLC, a Delaware limited liability company ("Borrower"), from Hypo Real Estate Capital Corporation, a Delaware corporation, and Dekabank Deutsche Girozentrale, a bank organized under the laws of the Federal Republic of Germany, as co-agents ("Co-Agents"), Hypo Real Estate Capital Corporation, as administrative agent and lead arranger, and the lenders as may exist from time to time (the "Lenders"), evidenced by Loan and Security Agreement, dated March 1, 2007, by and among Borrower, Co-Agents and Lenders, as amended by that certain First Amendment to Loan and Security Agreement, dated as of November 30, 2007, by and between Borrower and Hypo Real Estate Capital Corporation, as Agent.

**1133 Westchester Mezz:**

Mezzanine Loan from Lehman Brothers Holdings Inc., a Delaware corporation, to 1133-399 Member, LLC and 1133-300 Member, LLC, each a Delaware limited liability company, in the maximum principal amount of $17,230,801.95, relating to the renovation of certain improvements located at 1133-300 and 1133-3999 Westchester Avenue, White Plains, Westchester County, New York, secured by, *inter alia*, the Pledge Agreements (as defined in the Loan Documents).

**Windsor Boulevard:**

$13,840,000 loan from Lehman Brothers Holdings Inc. to Cortez-WB, LLC, a Maryland limited liability company, secured by, *inter alia*, an Indemnity Deed of Trust and Security Agreement, dated as of June 26, 2007, from Preston Yucatan-WB, LLC, a Maryland limited liability company, to Mitchell G. Williams, as Trustee for the benefit of Lehman Brothers Holdings Inc., individually and as agent for one or more co-lenders, recorded June 27, 2007 in the Office of the Clerk of the Circuit Court of Baltimore County, Maryland, in Liber S.M. No. 25860, Page 567, and pertaining to real property located at 7205 Windsor Boulevard, Baltimore, Baltimore County, Maryland.

**Trois Bridges:**

That certain mezzanine loan in the aggregate principal amount of $321,984,921.90 made by LBHI to the Bridge A Mezzanine Borrower (as defined below) pursuant to the terms of that certain Amended and Restated Junior Mezzanine Loan Agreement, dated as of July 10, 2007, as amended by that certain Agreement dated as of March 19, 2008.

"Bridge A Mezzanine Borrower" shall mean, collectively, the following entities (each of which is a Delaware limited liability company):

| |
|---|
| Broadway Wall Junior Mezz LLC |
| Broadway Greensboro Junior Mezz LLC |
| Broadway Howard Street Junior Mezz LLC |
| Broadway Huntington Junior Mezz LLC |
| Broadway Legato Junior Mezz LLC |
| Broadway Wilshire Junior Mezz LLC |
| Broadway California Street Junior Mezz LLC |
| Broadway State Junior Mezz LLC |
| Broadway BCCC Junior Mezz LLC |
| Broadway Beale Junior Mezz LLC |
| Broadway Sansome Junior Mezz LLC |

**Riande:**

That certain mezzanine loan in the aggregate principal amount of $61,439,775 made by Lehman Brothers Holdings Inc. to 1825 Collins Avenue Holding, LLC pursuant to the terms of that certain Pre-Development and Construction Mezzanine A Loan Agreement, dated as of November 30, 2007.

**EXHIBIT C-1**
**Assigned Commercial Mortgage Assets**

**Cabo San Lucas:**

$125,000,000 loan from Lehman Brothers Holdings Inc. to Diamante Cabo San Lucas S. De R.L. De CV, a Mexican limited liability company, secured by, *inter alia*, an Irrevocable Guarantee Trust Agreement pertaining to real property located in Cabo San Lucas, Baja California Sur, Mexico, made for the funding of acquisition and pre-development costs.

**Knickerbocker Hotel:**

$290,000,000 loan from Lehman Brothers Holdings Inc. to Istithmar Six Times LLC, a Delaware limited liability company, secured by, *inter alia*, a Consolidated, Amended and Restated Mortgage and Security Agreement, dated as of February 9, 2007, recorded February 23, 2007 in the Office of the City Register of the City of New York under CRFN 2007000103704, pertaining to real property located at 1466 Broadway (a/k/a Six Times Square) in the City of New York, New York.

**10000 Santa Monica:**

$120,000,000 loan from Lehman ALI Inc., a Delaware corporation ("LALI"), to Suncal Century City LLC, a Delaware limited liability company ("Borrower"), secured by, *inter alia*, a Deed of Trust and Fixture Filing (with Assignment of Leases and Rents and Security Agreement) (Variable Rate), dated as of August 11, 2006, made by Borrower to Fidelity Title Insurance Company, as trustee, for the benefit of LALI, to secure the principal sum of $120,000,000 and recorded in the Recorder's Office of Los Angeles County, California on August 14, 2006 as Instrument No. 061797296, and assigned to Lehman Commercial Paper Inc., a New York corporation.

**Playa Pelicano:**

$33,000,000 loan to Playa Pelicano Holdings, SRL, a Costa Rican limited liability company ("Borrower") from Lehman Brothers Holdings Inc., a Delaware corporation, ("Lehman") evidenced by the Loan Agreement dated December 4, 2006 by and between Borrower and Lehman, as amended by that First Amendment to Loan Agreement and Other Loan Documents dated September 12, 2008.

**Rancho Mirage:**

Acquisition and development loan from Lehman Brothers Holdings Inc., a Delaware corporation, to GENLB–RANCHO, L.L.C., a Delaware limited liability company, in the maximum principal amount of $252,880,000.00, encumbering certain real property located in Rancho Mirage, Riverside County, California.

**1200 Main:**

Loan from Lehman Brothers Holdings Inc., a Delaware corporation, to LB 1200 Main LP, a Delaware limited partnership, in the maximum principal amount of $58,619,214.00, for the construction of a condominium project consisting of 290 residential units and 13,000 rentable square feet of commercial space, located in Dallas County, Texas.

**Snowmass:**

$520,394,080 loan to Base Village Owner LLC, a Delaware limited liability company ("Borrower"), from Hypo Real Estate Capital Corporation, a Delaware corporation, and Dekabank Deutsche Girozentrale, a bank organized under the laws of the Federal Republic of Germany, as co-agents ("Co-Agents"), Hypo Real Estate Capital Corporation, as administrative agent and lead arranger, and the lenders as may exist from time to time (the "Lenders"), evidenced by Loan and Security Agreement, dated March 1, 2007, by and among Borrower, Co-Agents and Lenders, as amended by that certain First Amendment to Loan and Security Agreement, dated as of November 30, 2007, by and between Borrower and Hypo Real Estate Capital Corporation, as Agent.

**1133 Westchester Mezz:**

Mezzanine Loan from Lehman Brothers Holdings Inc., a Delaware corporation, to 1133-399 Member, LLC and 1133-300 Member, LLC, each a Delaware limited liability company, in the maximum principal amount of $17,230,801.95, relating to the renovation of certain improvements located at 1133-300 and 1133-3999 Westchester Avenue, White Plains, Westchester County, New York, secured by, *inter alia*, the Pledge Agreements (as defined in the Loan Documents).

**Windsor Boulevard:**

$13,840,000 loan from Lehman Brothers Holdings Inc. to Cortez-WB, LLC, a Maryland limited liability company, secured by, *inter alia*, an Indemnity Deed of Trust and Security Agreement, dated as of June 26, 2007, from Preston Yucatan-WB, LLC, a Maryland limited liability company, to Mitchell G. Williams, as Trustee for the benefit of Lehman Brothers Holdings Inc., individually and as agent for one or more co-lenders, recorded June 27, 2007 in the Office of the Clerk of the Circuit Court of Baltimore County, Maryland, in Liber S.M. No. 25860, Page 567, and pertaining to real property located at 7205 Windsor Boulevard, Baltimore, Baltimore County, Maryland.

**EXHIBIT C-2**

**Commercial Mortgage Assets Subject to Letter Agreements**

**Trois Bridges:**

That certain mezzanine loan in the aggregate principal amount of $321,984,921.90 made by LBHI to the Bridge A Mezzanine Borrower (as defined below) pursuant to the terms of that certain Amended and Restated Junior Mezzanine Loan Agreement, dated as of July 10, 2007, as amended by that certain Agreement dated as of March 19, 2008.

"Bridge A Mezzanine Borrower" shall mean, collectively, the following entities (each of which is a Delaware limited liability company):

| |
|---|
| Broadway Wall Junior Mezz LLC |
| Broadway Greensboro Junior Mezz LLC |
| Broadway Howard Street Junior Mezz LLC |
| Broadway Huntington Junior Mezz LLC |
| Broadway Legato Junior Mezz LLC |
| Broadway Wilshire Junior Mezz LLC |
| Broadway California Street Junior Mezz LLC |
| Broadway State Junior Mezz LLC |
| Broadway BCCC Junior Mezz LLC |
| Broadway Beale Junior Mezz LLC |
| Broadway Sansome Junior Mezz LLC |

**Riande:**

That certain mezzanine loan in the aggregate principal amount of $61,439,775 made by Lehman Brothers Holdings Inc. to 1825 Collins Avenue Holding, LLC pursuant to the terms of that certain Pre-Development and Construction Mezzanine A Loan Agreement, dated as of November 30, 2007.

**EXHIBIT C-3**

**Commercial Mortgage Assets Where Lehman Entity Is A Borrower,
A Subordinated Or Mezzanine Lender, Or Has An Interest In
A Borrower Or A Subordinated Or Mezzanine Lender**

**Playa Pelicano:**

$33,000,000 loan to Playa Pelicano Holdings, SRL, a Costa Rican limited liability company ("Borrower") from Lehman Brothers Holdings Inc., a Delaware corporation, ("Lehman") evidenced by the Loan Agreement dated December 4, 2006 by and between Borrower and Lehman, as amended by that First Amendment to Loan Agreement and Other Loan Documents dated September 12, 2008.

**Windsor Boulevard:**

$13,840,000 loan from Lehman Brothers Holdings Inc. to Cortez-WB, LLC, a Maryland limited liability company, secured by, *inter alia*, an Indemnity Deed of Trust and Security Agreement, dated as of June 26, 2007, from Preston Yucatan-WB, LLC, a Maryland limited liability company, to Mitchell G. Williams, as Trustee for the benefit of Lehman Brothers Holdings Inc., individually and as agent for one or more co-lenders, recorded June 27, 2007 in the Office of the Clerk of the Circuit Court of Baltimore County, Maryland, in Liber S.M. No. 25860, Page 567, and pertaining to real property located at 7205 Windsor Boulevard, Baltimore, Baltimore County, Maryland.

**EXHIBIT D**

**Form of Assignment and Assumption Agreement**

## OMNIBUS ASSIGNMENT AND ASSUMPTION
### (Residential Mortgage Pool)

**LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation having an address at 1271 Avenue of the Americas, 46th Floor, New York, New York 10020 ("**LBHI**"), and **LEHMAN COMMERCIAL PAPER INC.**, a Delaware corporation having an address at 1271 Avenue of the Americas, 46th Floor, New York, New York 10020 ("**LCPI**," and collectively with LBHI, "**Assignor**"), hereby confirms that it has sold, transferred, assigned, delivered, set-over and conveyed to **DANSKE BANK A/S, LONDON BRANCH** ("**Assignee**"), having an address at 75 King William Street, London EC4N 7DT, and Assignee hereby confirms that it has purchased from Assignor, all of Assignor's rights, title and interest in and to each of the residential mortgage assets in the residential mortgage pool summarized on Exhibit A-1 attached hereto and made a part hereof and listed individually on Exhibit A-2 attached hereto and made a part hereof (collectively, the "**Residential Mortgage Pool**" and individually, the "**Residential Mortgage Assets**"), including, without limitation, (i) all of Assignor's rights with respect to the Residential Mortgage Assets arising under the documents and/or instruments set forth on Exhibit B attached hereto and made a part hereof (collectively, the "**Loan Documents**") and (ii) all cash and non-cash proceeds of the Residential Mortgage Assets, including, without limitation, the escrow funds identified on Exhibit C attached hereto and made part hereof; excluding, however, the Lehman Portion of such escrow funds, as specified in Exhibit C. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns to Assignee, and Assignee hereby assumes from Assignor, all of Assignor's obligations arising under the Loan Documents solely in connection with the Residential Mortgage Assets. Any capitalized terms not otherwise defined in this Assignment (as hereinafter defined) shall have the meanings ascribed to such terms in the Loan Documents.

This Omnibus Assignment and Assumption ("**Assignment**") is being made by Assignor without recourse to Assignor, and without any representations, warranties or covenants, express or implied, by Assignor of any kind whatsoever. Accordingly, without limiting the foregoing, Assignor (i) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with any of the Loan Documents, or the execution, legality, validity, enforceability, genuineness, sufficiency or value of any of the Loan Documents, or any other instrument or document furnished pursuant thereto; and (ii) makes no representation or warranty and assumes no responsibility with respect to the financial condition of any Borrower or any guarantor or any of their respective affiliates or the performance or observance by any Borrower or any guarantor of any of their respective obligations under the Loan Documents, or any other instrument or document furnished pursuant thereto.

Assignor hereby represents and warrants to Assignee that the signatory of this Assignment is duly authorized to execute and deliver this Assignment on behalf of Assignor.

Assignor hereby agrees to execute and deliver to Assignee such further and additional documents or instruments as may be reasonably necessary or appropriate to effectively transfer, convey and perfect to Assignee all of the rights and privileges contemplated hereby under and pursuant to the applicable laws of each jurisdiction having an interest in or authority over or with respect to any and all collateral for the Residential Mortgage Assets as well as such other instructions, notifications, authorizations, assignments, instruments and other documents as Assignee may reasonably request in confirmation of, and/or in furtherance of, the absolute assignment to Assignee made hereunder, including, without limitation, any documentation necessary to transfer the ownership of the Residential Mortgage Assets on the Mortgage Electronic Registration Systems ("MERS") national registry and to transfer the servicing rights associated with the Residential Mortgage Assets.

This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without regard to the principles of conflicts of laws.

This Assignment is subject to the entry of a final order by the United States Bankruptcy Court for the Southern District of New York authorizing and approving this Assignment. Assignee shall attach a copy of such order as Exhibit D hereto, promptly following its entry, as evidence of such approval. Notwithstanding such Court approval, this Assignment shall only become effective when such order has become final and is no longer subject to any appeal or stay.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

    IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment as of the ___ day of _____, 2010.

                **ASSIGNOR:**

                **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York

                By:_____
                Name:
                Title:

                **LEHMAN COMMERCIAL PAPER INC.**, a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York

                By:_____
                Name:
                Title:

               **ASSIGNEE:**

                DANSKE BANK A/S, LONDON BRANCH

                By:_____
                Name:
                Title:

*Signature Page to Omnibus Assignment and Assumption (Residential Mortgage Pool)*

**EXHIBIT A-1**

**SUMMARY OF THE RESIDENTIAL MORTGAGE POOL**

A portfolio of U.S. residential mortgage assets belonging to one of several loan types and serviced by various servicers as indicated in the following table.

| | |
|---|---|
| Reverse Mortgage | 784 |
| Conventional without PMI | 142 |
| Conventional with PMI | 34 |
| Pay Option ARM without PMI | 245 |
| Pay Option ARM with PMI | 28 |
| FHA/VA | 206 |

| | |
|---|---|
| Financial Freedom | 784 |
| Aurora | 176 |
| GMAC | 161 |
| Wells Fargo | 116 |
| IndyMac | 90 |
| Countrywide | 41 |
| Citi Mortgage | 28 |
| Midfirst | 19 |
| Washington Mutual | 9 |
| PHH | 5 |
| First Horizon | 3 |
| Everhome | 2 |
| Bank America | 1 |
| Colonial Savings | 1 |
| Ocwen | 1 |
| Suntrust | 1 |
| US Bank | 1 |

## EXHIBIT A-2

**INDIVIDUAL RESIDENTIAL MORTGAGE ASSETS**

**EXHIBIT B**

**LOAN DOCUMENTS**

1. For each Residential Mortgage Asset:

    A.    the mortgage note;

    B.    mortgage (together with all intervening assignments);

    C.    any guarantee executed in connection with the mortgage note;

    D.    the commitment for title insurance or mortgage title insurance policy or attorney's opinion of title and abstract of title;

    E.    any security agreement, chattel mortgage or equivalent document executed in connection with the mortgage;

    F.    any assumption, modification, consolidation or extension agreements;

    G.    any primary mortgage insurance certificate;

    H.    with respect to FHA loans, the original MIC;

    I.    with respect to VA loans, the original LGC;

    J.    any loan applications and supporting materials provided by a Borrower contained in the residential mortgage file for each Residential Mortgage Asset; and

    K.    any other documents evidencing or securing a Residential Mortgage Asset.

2. All servicing arrangements made by or for the benefit of Assignor with the following primary loan servicers, but only to the extent such arrangements relate to the Residential Mortgage Assets and have not been replaced or superseded by a reconstituted servicing agreement, assignment, an assumption and recognition agreement, or a servicing transfer agreement between such servicer and Assignee or its designee.

    Colonial Savings, F.A.
    Aurora Loan Services LLC
    PHH Mortgage Corporation
    Financial Freedom Acquisition LLC
    IndyMac Mortgage Services, a division of
    OneWest Bank, FSB
    GMAC Mortgage, LLC
    Midland Mortgage Co.
    CitiMortgage, Inc.
    Everhome Mortgage Company
    Ocwen Loan Servicing, LLC
    U.S. Bank Home Mortgage
    SunTrust Mortgage
    Wells Fargo Bank, N.A.
    JPMorgan Chase Bank, National Association
    BAC Home Loans Servicing, LP
    BAC Home Loans Servicing, LP fka Countrywide
    Home Loans Servicing, LP

3. Assignor has made no representation that any such items are in its possession but has agreed to make good faith efforts to locate such items as may exist and provide originals or copies (as available) to Assignee upon request.  For the purposes of this provision, Assignor shall be deemed to have exercised good faith efforts to locate such items if it has requested its servicer and relevant closing counsel to search their respective files and to provide materials in their actual possession.

**EXHIBIT C**

**ESCROW FUNDS**

All funds held by or for the account of Assignor with respect to the Residential Mortgage Assets, including, without limitation, debt service payments, payoff amounts, Insurance Proceeds, Liquidation Proceeds and other proceeds deposited from time to time into the custodial account established and maintained by Aurora Loan Services LLC pursuant to that certain Master Servicing Agreement between Lehman Capital, a division of Assignor, and Aurora Loan Services LLC (as successor to Aurora Loan Services Inc.)("**Aurora**"), dated as of February 1, 1999 (Residential Adjustable and Fixed Rate Mortgage Loans – Group No. MS-1999-ALS1), including all funds (other than the Lehman Portion (hereinafter defined)) transferred to, deposited in and/or held in the escrow account established by Aurora Loan Services LLC for the benefit of Assignor, Lehman Commercial Paper Inc. (LCPI") and Assignee in accordance with the terms of that certain Escrow Agreement, dated as of March 1, 2010, by and among Assignor, LCPI, Assignee, and Aurora; provided, however, that on or prior to the execution and delivery of this Assignment, Assignor, LCPI and Assignee have delivered joint written instructions directing Aurora to disburse $1,197,112.26 from such escrow account to LCPI, representing the "**Lehman Portion**" of such escrow funds contemplated by the Escrow Agreement.

C-1

**<u>EXHIBIT D</u>**

**COURT ORDER**

**EXHIBIT E**

**Form of Written Direction**

[dated as of the Effective Date]

**VIA ELECTRONIC MAIL**
Aurora Loan Services LLC
10350 Park Meadows Drive
Littleton, CO 8012
Attention: Ronn Pisapia, Esq. – Escrow Funds

      Re:     Escrow Account in the name of "Aurora Loan Services LLC, as escrow agent under escrow agreement dated as of March 1, 2010, for the benefit of Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc. and Danske Bank A/S, London Branch, as their respective interests may appear" (the "Escrow Account")

Dear Mr. Pisapia,

Pursuant to Section 4 of that certain Escrow Agreement, dated as of March 1, 2010, by and among Lehman Brothers Holdings Inc. (LBHI), Lehman Commercial Paper Inc. (LCPI), Danske Bank A/S, London Branch ("Danske"), and Aurora Loan Services LLC ("Aurora") (the "Escrow Agreement"), Aurora is hereby instructed as follows:

     1. $1,197,112.26 shall be disbursed from the Escrow Account to LCPI;

     2. $33,728,137.73 shall be disbursed from the Escrow Account to Danske;

     3. Any and all funds remaining in the Escrow Account at any time and from time to time after making the payments under the above instructions shall be disbursed to Danske one week after [*Assignment Date*]; and

     4. Promptly following the supplemental disbursement under Instruction 3 above, the Escrow Account shall be closed, and confirmation of such account closure shall be provided to LBHI, LCPI and Danske.

The Escrow Period (as defined in the Escrow Agreement) shall be deemed to end on the date that Aurora has complied with Instruction 4 above.

*[Signatures appear on the following page.]*

                    Sincerely,

*Signature Page to Omnibus Assignment and Assumption (Residential Mortgage Pool)*

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as debtor and
debtor in possession in its chapter 11 case in
the United States Bankruptcy Court for the
Southern District of New York


By: _____
Name:
Title:



LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as debtor and
debtor in possession in its chapter 11 case in
the United States Bankruptcy Court for the
Southern District of New York


By: _____
Name:
Title:



DANSKE BANK A/S, LONDON BRANCH


By: _____
Name:
Title:


By:_____
Name:
Title:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                              :
                      **Debtors.**            :        **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

<u>**ORDER PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE**
**9019(b) AUTHORIZING AND APPROVING A SETTLEMENT AND**
**COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN**
**COMMERCIAL PAPER INC. AND DANSKE BANK A/S, LONDON BRANCH**</u>

Upon the motion, dated September 29, 2010 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and Lehman Commercial Paper Inc. ("<u>LCPI</u>"), for an order, pursuant to

section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing and approving

a settlement on the terms set forth in a Settlement Agreement,[1] as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

procedures for these cases [Docket No. 9635]; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI and LCPI, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

FOUND AND DETERMINED that, based on factual and legal bases set forth in the Motion, the Residential Mortgage Assets are not and were not property of LBHI's estate or LCPI's estate; and it is further

FOUND AND DETERMINED that, based on factual and legal bases set forth in the Motion, neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and assign that certain MRA pursuant to the Bankruptcy Code, including section 365 thereof, in connection herewith or with the Settlement Agreement or any of the transactions contemplated thereby; and it is further

FOUND AND DETERMINED that, Danske is the owner of the Mortgage Assets (other than those Commercial Mortgage Assets listed on Exhibit C-2 to the Settlement Agreement); and it is further

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the settlement and compromise set forth in the Settlement Agreement is approved; and it is further

ORDERED that LCPI and LBHI are authorized to enter into the Settlement Agreement and to (or to direct a subsidiary to) execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate to consummate the transactions contemplated in the Settlement

Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that, pursuant to and to the extent provided by the terms of the

Settlement Agreement, Danske shall assume all of the obligations of LBHI and LCPI arising

from the documents evidencing and securing the Residential Mortgage Assets as of the Default

Date, and thereafter; and it is further

ORDERED that the Bankruptcy Court retains jurisdiction to enforce the

Settlement Agreement and any disputes arising thereunder.

Dated: October __, 2010
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE