# EXHIBIT 51
# (Part 1 of 2)

*Final*

# SECOND AMENDED AND RESTATED LOAN AGREEMENT

### for a loan in an amount up to

### $146,500,000.00

## MADE BY AND BETWEEN

### DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V.
### a Mexican limited liability company,
### as Borrower

### AND THE BORROWER PARTIES (defined herein)

### and

### DANSKE BANK A/S, LONDON BRANCH,
### the London Branch of a company incorporated in Denmark,

### as Lender

Dated as of April 26 , 2013

"Diamante Cabo San Lucas," Cabo San Lucas, Baja California Sur, Mexico

6408141-v15

CONFIDENTIAL

DANSKE_0011080

*Final*

# TABLE OF CONTENTS

ARTICLE I    INCORPORATION OF RECITALS AND EXHIBITS ........................................ 3

    Section 1.1   Incorporation of Recitals ................................................................. 3

    Section 1.2   Incorporation of Exhibits ................................................................ 3

ARTICLE II    DEFINITIONS ................................................................................................ 3

    Section 2.1   Defined Terms ................................................................................. 3

ARTICLE III    REPRESENTATIONS AND WARRANTIES ..................................................... 24

    Section 3.1   Representations and Warranties ..................................................... 24

    Section 3.2   Reaffirmation of Representations and Warranties ....................... 35

ARTICLE IV  LOAN AND LOAN DOCUMENTS ................................................................. 36

    Section 4.1   Agreement to Borrow and Lend ...................................................... 36

    Section 4.2   Loan Documents ............................................................................. 37

    Section 4.3   Term of the Loan ............................................................................ 37

    Section 4.4   Prepayments ................................................................................... 38

    Section 4.5   Late Charge ..................................................................................... 38

ARTICLE V    INTEREST; PROFIT PARTICIPATION FEE; ORDER OF PRIORITY ................................................................................................................. 39

    Section 5.1   Interest Rate - Facility A ................................................................ 39

    Section 5.2   Interest Rate - Facility B ................................................................ 39

    Section 5.3   Interest Rate – Facility C ............................................................... 40

    Section 5.4   Interest Rate – Facility D ............................................................... 41

    Section 5.5   Monthly Interest Reserve Deposit ................................................. 42

    Section 5.6   Resort Vertical Improvements Reserve Funding ......................... 42

    Section 5.7   Profit Participation Fee .................................................................. 43

    Section 5.8   Order of Priority ............................................................................ 43

i

6408141-v15

DANSKE_0011081

*Final*

ARTICLE VI  LOAN EXPENSE AND ADVANCES ................................................................ 44

    Section 6.1   Loan and Administration Expenses............................................................. 44

    Section 6.2   Brokerage Fees ................................................................................................ 44

    Section 6.3   Protective Advances ....................................................................................... 44

ARTICLE VII       CONDITIONS TO THE MAKING OF THE LOAN ............................ 45

    Section 7.1   Conditions Precedent....................................................................................... 45

ARTICLE VIII CONDITIONS PRECEDENT TO THE FIRST
DISBURSEMENT FOR CONSTRUCTION COSTS (FACILITY C AND
FACILITY D) ............................................................................................................................... 47

    Section 8.1   Facility C – Required Construction Documents ......................................... 47

    Section 8.2   Facility D – Construction Documents ........................................................... 48

ARTICLE X       BUDGET ............................................................................................................. 48

    Section 9.1   Construction Budget– Facility B (Non-Resort Time Share
and Whole Ownership) .................................................................................................... 48

    Section 9.2   Construction Budget – Facility C (Lagoon Improvements)........................ 49

    Section 9.3   Construction Budget – Facility D (Resort Vertical
Improvements)................................................................................................................... 50

    Section 9.4   Budget Approval Process ............................................................................... 51

ARTICLE X       SUFFICIENCY OF LOAN .............................................................................. 52

    Section 10.1   Facility B, Facility C and Facility D Loan In Balance............................. 52

ARTICLE XI       CONSTRUCTION PAYOUT REQUIREMENTS ......................................... 53

    Section 11.1   Documents to be Furnished for Each Disbursement................................ 53

    Section 11.2   Retainage ......................................................................................................... 56

    Section 11.3   Separate and Distinct Facility Draw Requests .......................................... 56

ARTICLE XIII       COVENANTS ................................................................................................. 57

    Section 13.1   Certain Covenants ......................................................................................... 57

    Section 13.2   Insurance ......................................................................................................... 61

6408141-v15

CONFIDENTIAL

DANSKE_0011082

*Final*

Section 13.3    Special Purpose Covenants .................................................................. 64

Section 13.4    Financial Covenants ........................................................................... 66

Section 13.5    Reporting Covenants ........................................................................... 66

Section 13.6    Appraisals, Title Reports and Environmental Reports........................... 69

Section 13.7    Payment Per Budget Covenants ........................................................... 69

Section 13.8    Sales Performance Covenants .............................................................. 70

Section 13.9    Sales Covenants................................................................................. 71

Section 13.10   Construction Covenants ...................................................................... 74

Section 13.11   Operational Covenants ....................................................................... 74

Section 13.12   Special Project Covenants .................................................................. 75

Section 13.13   Appointment of Lender's Consultant.................................................... 78

Section 13.14   Lender's Right of Entry and Inspection................................................ 79

Section 13.15   Default in Construction ...................................................................... 80

Section 13.16   Development and Management of the Project ....................................... 81

Section 13.17.  Central Cash Management.................................................................... 82

Section 13.18.  [Covenant Regarding Accounts ........................................................... 85

Section 13.19.  Covenant Regrding Payment of Lender's Expenses .............................. 85

ARTICLE XIV    CASUALTY AND CONDEMNATION................................................... 85

Section 14.1    Lender's Election to Apply Proceeds to the Debt................................... 85

Section 14.2    Borrower's Obligation to Rebuild........................................................ 86

ARTICLE XV     TRANSFERS................................................................................... 86

Section 15.1    Prohibition of Assignments and Transfers by Borrower........................ 86

Section 15.2    Prohibition of Transfers in Violation of ERISA .................................... 87

Section 15.3    Successors and Assigns ....................................................................... 87

ARTICLE XVI    SPECIAL PROVISIONS RE: PARTICULAR PHASES ............................. 87

6408141-v15

CONFIDENTIAL

DANSKE_0011083

*Final*

Section 16.1    Phases and Opportunity...................................................................... 87

Section 16.2    Opportunities upon Maturity or Sooner Prepayment ................................ 89

ARTICLE XVII    SERVICER ...................................................................................... 89

Section 17.1    Servicer................................................................................................ 89

ARTICLE XVIII    EVENTS OF DEFAULT................................................................. 89

Section 18.1    Events of Default................................................................................. 89

ARTICLE XIX    LENDER'S REMEDIES IN EVENT OF DEFAULT .................................. 91

Section 19.1    Remedies Conferred Upon Lender........................................................ 91

ARTICLES XX    GENERAL PROVISIONS.................................................................. 92

Section 20.1    Captions.............................................................................................. 92

Section 20.2    Modification, Waiver .......................................................................... 92

Section 20.3    Governing Law.................................................................................... 92

Section 20.4    Acquiescence Not to Constitute Waiver of Lender's
Requirements ...................................................................................... 93

Section 20.5    Disclaimer by Lender ......................................................................... 93

Section 20.6    Partial Invalidity; Severability ............................................................ 93

Section 20.7    Definitions Include Amendments......................................................... 93

Section 20.8    Execution in Counterparts .................................................................. 94

Section 20.9    Entire Agreement ................................................................................ 94

Section 20.10    Waiver of Damages ........................................................................... 94

Section 20.11    Jurisdiction ...................................................................................... 94

Section 20.12    Set-Offs ............................................................................................ 95

Section 20.13    Authorized Representative ................................................................ 95

Section 20.14    Non-Recourse Provisions .................................................................. 96

Section 20.15    Time is of the Essence........................................................................ 96

ARTICLE XXI    NOTICES ........................................................................................ 96

6408141-v15

*Final*

ARTICLE XXII   WAIVER OF JURY TRIAL .................................................................... 97

ARTICLE XXIII   GROSS-UP ........................................................................................ 98

    Section 23.1   Gross-Up ........................................................................................ 98

ARTICLE XXIV   SALE OF NOTE AND SECURITIZATION; ASSIGNMENT ................... 99

    Section 24.1   Cooperation ..................................................................................... 99

    Section 24.2   Intentionally Omitted ..................................................................... 99

    Section 24.3   Loan Components ............................................................................ 100

    Section 24.4   Costs ............................................................................................... 100

    Section 24.5   Conversion of Loan and Creation of Subordinate Debt ..................... 100

    Section 24.6   Securitization Indemnification ......................................................... 100

    Section 24.7   Rating Surveillance ......................................................................... 103

    Section 24.8   Assignment ..................................................................................... 103

6408141-v15

CONFIDENTIAL

DANSKE_0011085

*Final*

## AMENDED AND RESTATED

## LOAN AGREEMENT

Project commonly known as "Diamante Cabo San Lucas,"
Cabo San Lucas, Baja California Sur, Mexico

THIS SECOND AMENDED AND RESTATED LOAN AGREEMENT ("**Agreement**") is made as of April 26, 2013, between **DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V.**, a Mexican limited liability company with variable capital, having an address at Boulevard s/n, Col. Los Cangrejos, Carretera Cabo San Lucas a Todos Santos Km 6.8 Cabo San Lucas B.C.S., C.P. 23473 ("**Borrower**"), and Borrower Parties described on Schedule 1 (collectively with Borrower, "**Obligors**"), **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in Denmark ("**Lender**").

## RECITALS

A.      On March 10, 2006, Lehman Brothers Holdings Inc. ("**Lehman**") made a loan to Borrower in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**") to be used to fund certain acquisition and pre-development costs in connection with that certain resort project located in the City of Cabo San Lucas, Baja California Sur, Mexico.

B.      The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 2 ("**Original Loan Documents**").

C.      Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

D.      Lehman and Lender executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor of Lender was perfected in accordance with Mexican law.

E.      Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and, in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to the Amended Loan Documents listed on Schedule 3 (as reaffirmed, amended and/or amended and restated, "**2009 Amended Loan Documents**").

F.      Among the several modifications made pursuant to the 2009 Amended Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Borrower, as the borrower under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

6408141-v15

CONFIDENTIAL

DANSKE_0011086

*Final*

(i)      Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty-Seven and 83/100 Dollars ($109,138,327.83) ("**Facility A Note**"); and

(ii)      Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("**Facility B Note**").

G.      Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Amended Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Amended Loan Documents listed on <u>Schedule 4</u>, (as reaffirmed and amended, "**2010 Amended Loan Documents**," and together with the 2009 Amended Loan Documents, the "**Amended Loan Documents**"), which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

H.      Lender, Borrower and Guarantors agreed to extend the Maturity Date of the Loan to June 29, 2012 and modify certain applicable interest rates as more particularly set forth therein in that Extension Letter Agreement dated April 2, 2012 ("**First Extension Agreement**").

I.      By that letter agreement dated June 29, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from June 29, 2012 to September 28, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein (the "**Second Extension Agreement**").

J.      By that letter agreement dated September 28, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from September 28, 2012 to December 31, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein (the "**Third Extension Agreement**").

K.      By that letter agreement dated December 31, 2012, Lender and Obligors agreed to extend the Maturity Date of the Loan from December 31, 2012 to March 31, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein ("**Fourth Extension Agreement**").

L.      By that letter agreement dated February 15, 2013, Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter ("**2013 Additional Advance Agreement**").

M.      By that letter agreement dated March 29, 2013, Lender and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein ("**Fifth Extension Agreement**").

N.      Subject to the terms and conditions set forth in this Agreement, Lender, Borrower and Guarantors have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain

6408141-v15

CONFIDENTIAL

DANSKE_0011087

*Final*

costs and expenses of Lender; and (ii) splitting the indebtedness evidenced by Facility B Note into (y) Second Substitute Promissory Note (Facility B) dated as of even date herewith in the amount of Eighteen Million Dollars ("**Facility B Note**"); and (z) Promissory Note (Facility C) dated as of even date herewith, in the amount of $2,000,000 ("**Facility C Note**"); and (iii) advancing an additional loan in the amount of $3,000,000 pursuant to Promissory Note (Facility D) dated as of even date herewith in the principal amount of Three Million Dollars ($3,000,000) ("**Facility D Note**") all as more particularly set forth herein.  All such documents, amendments, reaffirmations and other instruments entered into in connection with this Agreement shall be referred to as the "**2013 Modification Documents**."

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## INCORPORATION OF RECITALS AND EXHIBITS

Section 1.1     Incorporation of Recitals.

The foregoing preambles and all other recitals set forth herein are made a part hereof by this reference.

Section 1.2     Incorporation of Exhibits.

The Exhibits and Schedules to this Agreement are incorporated in this Agreement and expressly made a part hereof by this reference.

## ARTICLE II
## DEFINITIONS

Section 2.1     Defined Terms.

The following terms as used herein shall have the following meanings:

2009 Loan Modification Documents: The loan documents dated March 9, 2009 and identified on the Schedule of 2009 Loan Modification Documents attached hereto as Schedule 3.

2010 Loan Modification Documents:  The loan documents dated January 20, 2010 and identified on the Schedule of 2010 Loan Modification Documents attached hereto as Schedule 4.

2012 and 2013 Extension Letters:  The extension letters dated April 2, 2012, June 29, 2012, September 28, 2012, December 31, 2012, and March 29, 2013 respectively, as more particularly described on the Schedule of Extension Letters attached hereto as Schedule 5.

2013 Additional Advance:  The Additional Advance Letter and Substitute Promissory Note B dated February 15, 2013 and more particularly described on Schedule 6 attached hereto.

2013 ALTA Survey:  the ALTA survey prepared by Acero Construcciones dated March 2013 and delivered to Lender.

6408141-v15

CONFIDENTIAL

DANSKE_0011088

*Final*

2013 Amended Loan Documents:  All of the loan documents listed on Schedule 7 attached hereto and incorporated herein.

2013 Environmental Report:  the report described on Schedule 8 attached hereto and incorporated herein.

2013 Operations Budget:  The budget describing all budgeted costs and expenses through March 31, 2014 related to the operations of the DRC, GVRC, BRC Golf Villas, and Dunes Golf Course, as shown on the budget attached hereto and incorporated herein as Schedule 9, as may be updated, amended or revised with Lender's prior written approval.

Accounts:  All of Borrower Parties income accounts and expense accounts as more particularly described on Schedule 10 attached hereto and incorporated herein.

Accounts Payable:  Individually, each account payable of the Borrower and, collectively, all accounts payable of the Borrower.

Accounts Receivable:  Individually, each account receivable of the Borrower and, collectively, all accounts receivable of the Borrower.

Actual Cash Receipts:  All deposits, cash, credit card payments, checks, wire or other proceeds received by Borrower or an Affiliate with respect to Product Sales.

Actual Construction Expenses:  The construction costs and expenses actually incurred by Borrower with respect to the Improvements permitted hereunder.

Actual Product Sales:  All Product Sales actually made by Borrower with respect to any Phase of the Project, which amount shall be evidenced by actual number of units or weeks sold and sales price for each such sale.

Actual Resort Product Sales: All Resort Product Sales actually made by Borrower with respect to the Resort Improvements.

Administrative Budget:  The budget describing the Administrative Costs of the Project attached hereto and incorporated herein as Schedule 11, as may be updated, amended or revised with Lender's prior written approval.

Administrative Costs: All costs and expenses related to administration of the Project including but not limited to accounting, Taxes, banking fees, development fees due Legacy, and such other costs and expenses as set forth in the Administrative Budget.

Affiliate:  With respect to a specified Person, any Person which, directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with such Person, including, without limitation, any general or limited partnership in which such Person is a partner.

Agreement:  This Second Amended and Restated Loan Agreement.

6408141-v15

CONFIDENTIAL                                                                                                    DANSKE_0011089

*Final*

Amended and Restated Trust Agreement:   The Amended and Restated Irrevocable Guaranty Trust Agreement dated as of March 9, 2009 among Borrower, Lender and Trustee.

Applicable Interest Rate:   Effective for the period of January 1, 2012 through the Maturity Date, the rate of interest that is two hundred (200) basis points in excess of the three-month LIBOR for U.S. Dollar deposit which appears on Reuters LIBOR 01 as of 11:00 a.m. London time on the first day of each Interest Period during the term of the Loan.   Once established, the Applicable Interest Rate shall remain fixed until the end of the then-applicable Interest Period.   The foregoing notwithstanding, if such rate is not available on Reuters or a successive service, Lender will determine a comparable rate in its sole but reasonable discretion. For purposes of clarification, Borrower and Lender acknowledge and agree that the three-month LIBOR for U.S. Dollar deposit effective on December 30, 2011 was used to establish the Applicable Interest Rate effective January 1, 2012.

Appraisal:   An appraisal of the Land and any improvements thereon, prepared at Borrower's expense, by an appraiser approved by Lender, and in form and content satisfactory to Lender.

Architect:   Edwardo Romo of Cesena Romo Asociados S.C., or such other architect in respect of the Project (or any Phase thereof), selected by Borrower and approved by Lender.

Arroyos:   the river bed areas shown on the Master Plan.

Assignment of Intellectual Property and Contract Assets:   The Assignment of Intellectual Property and Contract dated of even date herewith executed by Borrower for the benefit of Lender as first place beneficiary under the Trust.

Associated Person:  In relation to any company, a Person who performs or has performed services for or on that company's behalf.

Authorized Representative:   Kenneth A. Jowdy and/or William J. Najam, Jr.

Available Accounts Receivable:   The aggregate Accounts Receivable less fifty percent (50%) of the aggregate Accounts Receivable, such amount being an approximation of the Accounts Receivable reduced by the Working Capital Contribution and Commissions paid or otherwise due.

Balance:   As defined in Section 10.1 hereof.

Bankruptcy Code:   Title 11 of the United States Code, titled "Bankruptcy," as now or hereafter in effect, or any successor thereto or any other present or future bankruptcy or insolvency statute, or any bankruptcy or insolvency statute of the United Mexican States.

Banorte Accounts:   The income and operating/expense accounts of Borrower described on Schedule 12 attached hereto and incorporated herein.

Beach Estate Condominium Regime: The sub-condominium regime on which the Beach Estate Improvements are located (or will be located).

6408141-v15

CONFIDENTIAL                                                                                                   DANSKE_0011090

*Final*

Beach Estates Improvements:  The villas, beach club, and related infrastructure to be constructed pursuant to the Non-Resort Timeshare and Whole Ownership Budget and situated on the Beach Estate Parcel and more particularly shown on the Master Plan.

Beach Estates Interests:  Collectively, the time share membership interests in the BRC.

Beach Estate Lots:  Collectively, the 42 lots situated on the Beach Estate Parcel as more particularly shown on the Master Plan.

Beach Estates Parcel:   The parcel of real property on which the Beach Estate lots are situated as more particularly shown on Schedule 13 attached hereto and incorporated herein.

Borrower:  Diamante Cabo San Lucas S. DE R.L. DE C.V., a Mexican limited liability company.

Borrower Diamante Parties:  Diamante Member and Diamante Club, LLC, Diamante CSL, LLC and Diamante Life S. DE R.L. De C.V.

Borrower Parties:  Guarantor, Borrower, Borrower Diamante Parties and Jowdy Parties.

BRC:  The Beach Estate Residence Club.

Breakage Costs:   All costs and fees incurred by Lender in connection with any prepayment of the Loan (in whole or in part), which amounts shall be determined by Lender in its sole, but reasonable, discretion.

Bribery Act: collectively, the Bribery Act 2010, an Act of Parliament in the United Kingdom, and the Bribery Act enacted pursuant to the laws of Mexico.

Budgeted Construction Expenses:  All construction obligations of Borrower with respect to the Project as set forth on any of the Construction Budgets.

Budgeted Operating Expenses:  All of those budgeted operating expenses of Borrower with respect to the Project set forth on any of the Operating Budgets.

Budgeted Principal Paydown (Facility B):  The monthly amount due from Borrower to Lender as set forth on the Non-Resort Time Share and Whole Ownership Budget (or such other budge approved by Lender) to be applied towards the outstanding principal balance of Facility B in accordance with the Cash Management Order of Priority.

Budgeted Principal Paydown (Facility C):  The monthly amount due from Borrower to Lender set forth on the Consolidated Cash Flow Statement to be applied towards the outstanding principal balance of Facility C in accordance with the Cash Management Order of Priority.

Budgeted Principal Paydown (Facility D):  The monthly amount due from Borrower to Lender set forth on the Consolidated Cash Flow Statement to be applied towards the outstanding principal balance of Facility D in accordance with the Cash Management Order of Priority.

6408141-v15

CONFIDENTIAL

DANSKE_0011091

*Final*

Business Day:  Any day other than a Saturday, Sunday or day on which banks are required or authorized to be closed in New York, New York or Los Cabos, Mexico.

Cash Management Order of Priority:  As defined in Section 3.17(a).

Change Orders:  As defined in Section 13.1(c).

Clearing Account:  The account established by Lender from time to time for purposes of collecting amounts due from Borrower under this Agreement and the Amended Loan Documents.  Unless and until Lender advises Borrower that a different account has been established, for purposes of this Loan, Borrower shall direct any payments due Lender to the following account:  Wells Fargo Bank, Oakland, CA, ABA#121000248, Account #2000025192043, Credit TriMont Real Estate Advisors Inc. as Servicer.

Commissions: All amounts due and payable to Crystal Lagoons pursuant to the Crystal Lagoons Contract, Woods pursuant to the Woods Contract, and IronMan pursuant to the IronMan Contract.

Commissions Schedule (Accrued): The schedule of commissions owed Crystal Lagoons pursuant to the Crystal Lagoons Contract, Woods pursuant to the Woods Contract, and IronMan pursuant to the IronMan Contract.  Attached hereto as Schedule 14 is a schedule of such accrued commissions through February 28, 2013 which Borrower shall update and deliver to Lender from time to time as required in this Agreement.

Commissions Schedule (Paid):  The schedule of commissions paid to Crystal Lagoons pursuant to the Crystal Lagoons Contract and Woods pursuant to the Woods Contract, and IronMan pursuant to the IronMan Contract.  Attached hereto as Schedule 15 is a schedule of such accrued commissions through February 28, 2013, which Borrower shall update and deliver to Lender from time to time as required in this Agreement.

Common Areas:  the common elements and shared infrastructure within the Project as more particularly described on Schedule 16 attached hereto and incorporated herein.

Completion Date:  With respect to the Lagoon Improvements and Resort Vertical Improvements, the dates set forth in Section 13.10(c) and (d) hereof, and with respect to any other Improvement or Phase of the Project, the date of completion approved by or otherwise required by Lender in accordance with any Projected Schedule of Completion or as set forth in any Construction Budget.

Completion Date (Lagoon Improvements):  October 1, 2013.

Consolidated Cash Flow Statement:  The Consolidated Cash Flow Statement attached hereto as Schedule 17, as may be updated, amended with Lender's prior written approval.

Construction:  The construction of the Improvements in accordance with the Plans and Specifications.

-7-

6408141-v15

CONFIDENTIAL  DANSKE_0011092

*Final*

Construction and Project Agreements:   All Construction Contracts and Major Contracts pertaining to the Project.

Construction Budgets:   Collectively, the Lagoon Construction Budget, Resort Vertical Construction Budget, Future Resort Vertical Construction Budget, Non-Resort Time Share and Whole Ownership Budget and the Tiger Woods Golf Course Construction Budget.

Construction Contracts:   All contracts for the design, engineering and construction of the Improvements.

Construction Schedule:   A schedule, satisfactory to Lender, establishing a timetable for completion of the Construction with respect to each Phase of the Project, showing, on a monthly basis, the anticipated progress of the Construction with respect to each Phase of the Construction, and confirming that the Improvements (or any part thereof) can be completed on or before the applicable completion date.

Contractual Resort Construction Obligations: The obligations of Borrower to complete certain Improvements within the Resort pursuant to terms and conditions of any Resort Product Sales Agreement.

Control:   As such term is used with respect to any Person, including the correlative meanings of the terms "controlled by" and "under common control with", the possession, direct or indirect, of the power to direct or cause the direction of the management policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

Costs to Complete Commenced Vertical Construction:   The aggregate costs required to complete all commenced and on-going Resort Vertical Improvements,  Resort Future Vertical Improvements, and Non-Resort Improvements in accordance with the applicable Plans and Specifications as determined by Lender in its sole discretion.

Crystal Lagoons:   Crystal Lagoons Corporation LLC, a Delaware limited liability company.

Crystal Lagoons Contract:   the Technology Licensing Agreement by and between Crystal Lagoons and borrower dated April 16, 2012.

Danske Amended Loan Documents:   The 2009 Amended Loan Documents, 2010 Amended Loan Documents, 2012 and 2013 Extension Letters, 2013 Additional Advance Agreement, and 2013 Amended Loan Documents.

Danske Group:   As defined in Section 24.6(b).

Debt:   The outstanding principal balance of the Notes from time to time, together with all accrued and unpaid interest thereon, the Profit Participation Fee, the Non-Utilization Fee and all other sums now or hereafter due under the 2013 Amended Loan Documents.

6408141-v15

CONFIDENTIAL

DANSKE_0011093

*Final*

Default or default:  Any event, circumstance or condition, which, if it were to continue uncured, would, with notice or lapse of time or both, constitute an Event of Default.

Default Rate:  A rate per annum equal to twenty percent (20%), compounded monthly, but not in excess of the highest rate permitted by law.

Deposit Account Control Agreement:  The Deposit Account Control Agreement dated of even date herewith by and between Lender, Borrower and Depository Bank regarding the Wells Fargo Income Account.

Depositary Bank:  Wells Fargo Bank, N.A., Banorte, or such other depositary bank as Lender shall approve from time to time.

Development Fee:  The Budget Line Item for payment of a development fee to Borrower.

Diamante Club:  Diamante Club, LLC, a Delaware limited liability company.

Diamante CSL:  Diamante CSL, LLC, a Delaware limited liability company.

Diamante Life:  Diamante Life, DE R.L. DE C.V., a Mexican company.

Diamante Member:  Diamante Cabo San Lucas LLC, a Delaware limited liability company.

Diamante Member Parties:  Jowdy Parties and Investor Parties.

Disclosure Document:  As defined in Section 24.6(a).

Dollars or $:  United States dollars.

Donation Area Agreement:  The agreement by and between Borrower and the City of Los Cabos pursuant to which Borrower is obligated to pay certain amounts and perform certain utility work respect to the Project dated February 25, 2013.

DRC:  The Dunes Residence Club.

Dunes Residences Condominium:  the sub-condominium regime comprised of the Dunes Residences Improvements, as depicted on Schedule 18 attached hereto and incorporated herein.

Dunes Residences Improvements:  The clubhouse, restaurants, pool facilities, the Dunes Residences Condominium Units, the DRC Units, and all supporting infrastructure located on the Dunes Residences Condominium and more particularly shown on the Master Plan and all as more particularly described in the Dune Residences Condominium Plans and Specifications approved by Lender.

DRC Interests:  Collectively, the time share membership interests in the DRC Units.

Dunes Residences Plans and Specifications:  Plans and specifications for the Dunes Residences Improvements prepared by the Architect and approved by the Lender.

-9-

CONFIDENTIAL

DANSKE_0011094

*Final*

DRC Units:  The ten (10) residence club condominium units in which DRC Interests are sold located on the second (2nd) floor of the Dunes Residences Improvements.

Dunes Residences Condominium Units:  The ten (10) condominium units located on the third (3rd) floor of the Dunes Residences Condominium.

Dunes Golf Course:  The golf course and related golf facilities operating in the Project as more particularly shown on the Master Plan.

Dunes Golf Course Parcel:  The parcel of real property on which the Dunes Golf Course is located, as shown on Schedule 19 attached hereto and incorporated herein.

Effective Date:  The date of this Agreement.

Environmental Laws:  As defined in the Environmental Indemnity.

Environmental Proceedings:  Any environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to the Property.

ERISA:  The Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder from time to time.

Event of Default:  As such term is defined in Article XVIII.

Exchange Act:  As defined in Section 24.6(a).

Facility A Loan:  The term loan made by Lender to Borrower in the amount of $123,500,000.00 and evidenced by the Second Substitute Promissory Note (Facility A) dated as of the Effective Date.  The Facility A Loan is fully funded.

Facility A Note:  The Second Substitute Promissory Note (Facility A) in the principal amount of $123,500,000.00, dated as of the Effective Date, and executed by Borrower to the order of Lender.

Facility B Loan:  The revolving line of credit loan made by Lender to Borrower in the amount of $18,000,000.00 and evidenced by the Facility B Note.

Facility B Note:  The Third Substitute Promissory Note (Facility B) in the principal amount of $18,000,000.00, dated as of the Effective Date, and executed by Borrower to the order of Lender.

Facility C Loan:  The revolving line of credit loan made by Lender to Borrower in the amount of $2,000,000 and evidenced by the Facility C Note.

Facility C Maturity Date:  March 31, 2014.

Facility C Note:   the Promissory Note (Facility C) in the principal amount of $2,000,000.00 dated as of the date hereof, and executed by Borrower to the order of Lender.

6408141-v15

CONFIDENTIAL

DANSKE_0011095

*Final*

Facility D Loan:  The revolving line of credit loan made by Lender to Borrower in the amount of $3,000,000 and evidenced by the Facility D Note.

Facility D Maturity Date:  March 31, 2014.

Facility D Note:  The Promissory Note (Facility D) in the principal amount of $3,000,000.00 dated as of the date hereof and executed by Borrower payable to the order of Lender.

First Phase Bungalows:  The two (2) bungalows and related facilities depicted on the Master Plan and all as more particularly shown on the Resort Vertical Improvement Plans and Specifications approved by Lender.

Fitch:  Fitch, Inc.

Forty-Seven Unit Resort Time Share Building:  The 47-unit resort time share building and related facilities depicted on the Master Plan and all as more particularly shown on the Resort Future Vertical Improvement Plans and Specifications approved by Lender.

General Contract:  A contract between Borrower and General Contractor for the Construction of the Improvements (or any lesser portion thereof approved by Lender), in form and substance satisfactory to Lender.

General Contractor:  Cesena Romo Asociados S.C. or such other contractor(s) under the General Contract(s), selected by Borrower and approved by Lender.

Geotechnical Report:  The geo-technical report obtained by Borrower at the closing of the Original Loan, as updated pursuant to that Geotechnical Evaluation Report prepared by UCC Ingeniena Especiali-Zada S.de. R.L. de CV dated March 21, 2013 and subsequent updates prepared thereto by an environmental or geotechnical consultant, together with a letter of reliance obtained at Borrower's expense and addressed to Lender.

Golf Memberships: collectively, the membership interests transferred or sold with respect to the Dunes Golf Course and the TW Golf Course.

Golf Membership Contracts:  all contracts and agreements for the sale of Golf Memberships.

Golf Villa(s):  Whole Ownership golf villas or GVRC time share villas to be constructed on a Golf Villa Lots.

Golf Villas Condominium Regime:  The sub-condominium regime on which the Golf Villa Improvements are located (or will be located).

Golf Villas Improvements:  The Golf Villas and other infrastructure required for such development, construction and operation of the Golf Villa Improvements.

6408141-v15

CONFIDENTIAL                                                                                    DANSKE_0011096

*Final*

Golf Villa Lot(s):   Collectively, the 66 lots situated on the Golf Villas Condominium Parcel as more particularly shown on the Master Plan.

Golf Villas Condominium Parcel:   The parcel of real property on which the Golf Villa Lots are located, as shown on Schedule 20 attached hereto and incorporated herein.

Governmental Authority:   Any federal, state, county or municipal government having jurisdiction over the Property.

Guarantor:   Kenneth A. Jowdy.

GVRC:   The Golf Villa Residence Club.

GVRC Interest:   Collectively, the time share membership interests in the GVRC.

Hard Costs:   All costs for labor, materials or equipment supplied to or incorporated in the Project.

Hazardous Material:   Any hazardous or toxic material, substance or waste (including, without limitation, gasoline, petroleum, asbestos-containing materials and radioactive materials) which is regulated under Environmental Laws.

Health Club:   The 5,543 square foot building located upon the Resort Parcel more particularly shown on the Master Plan and all as more particularly described in the Health Plans and Specifications approved by Lender

Health Club Improvements:   The Health Club and all infrastructure required for such development, construction and operation of the Health Club.

Health Club Plans and Specifications:   the plans and specifications for the Health Club prepared by the Architect and approved by the Lender

Improvements:   Collectively, (i) engineering, electrical, transportation, mechanical and other infrastructure required for the development of the Project, including roads, a wastewater treatment plant and a desalination plant; (ii) Dunes Golf Course; (iii) Dunes Residences Improvements; (iv) Lagoon Improvements; (v) Resort Vertical Improvements; (vi) Resort Future Vertical Improvements; (vii) TW Golf Course; (viii) Non-Resort Improvements; (ix) Health Club; (x) Sunset Hill Estates Improvements; and (xi) Beach Estates Improvements, all as more particularly shown on the Master Plan and all as more particularly described in the Plans and Specifications approved by Lender.

Included Taxes:   As defined in Section 23.1.

Indemnified Party:   As defined in Section 13.1(1).

Insurance Premiums:   As defined in Section 13.2(b).

6408141-v15

CONFIDENTIAL

DANSKE_0011097

*Final*

Interest Period:  The three-month period commencing on January 1 and ending on the date that is three (3) calendar months thereafter, and each successive three (3) month period (which shall commence on the calendar date immediately following the end of the preceding Interest Period) during the term of the Facility A Loan or the Facility B Loan, the Facility C Loan and the Facility D Loan.  *By way of example only, the Interest Period commencing on January 1, 2013 will end on March 31, 2013 and the next Interest Period will commence on April 1, 2013 and continue through June 30, 2013.*

Interest Rate:  shall mean:  (i) with respect Facility A, for the period of time expiring December 31, 2011, the Original Interest Rate (Facility A), and for the period of time thereafter, the Applicable Interest Rate; and (ii) with respect to Facility B, for the period of time expiring December 31, 2011, the Original Interest Rate (Facility B), and for the period of time thereafter, the Applicable Interest Rate; and (iii) with respect to Facility C, the Applicable Interest Rate; and (iv) with respect to Facility D, the Applicable Interest Rate.

Interest Reserve Account:  Shall mean the blocked interest reserve account established by Lender as secured party.

Interest Reserve Funds:  Shall mean all funds transferred to or deposited into the Interest Reserve Account.

Internal Revenue Code:  The Internal Revenue Code of 1986, as amended from time to time.

Investor Parties:  Baja Ventures 2006, LLC and CSL Properties 2006, LLC.

IronMan Contract:  The agreement by and between Borrower and IronMan Marketing, S. De R. L. De C.V. dated August 2010.

IVA:  value added tax assessed under Mexican Laws.

IVA Position Statement:  Certified report from Borrower describing in reasonable detail (i) the amount of IVA tax collected; (ii) the amount of IVA tax paid; (iii) the amount of IVA tax credit available; and (iv) the IVA liability.

Jowdy Parties:  Guarantor, Diamante Properties, LLC, and KAJ Holdings, LLC.

Lagoon:  The 11 acre pool more particularly shown on the Master Plan and all as more particularly described in the Lagoon Plans and Specifications approved by Lender.

Lagoon Construction Budget:  The budget describing all costs and expenses related to the construction and completion of the Lagoon Improvements attached hereto and incorporated herein as Schedule 21, as may be updated, amended or revised with Lender's prior written approval.

6408141-v15

CONFIDENTIAL                                                                                      DANSKE_0011098

*Final*

Lagoon Improvements:  Collectively, the Lagoon together with all of the engineering, mechanical, electrical, and other infrastructure required for the development, construction and operation of the Lagoon.

Lagoon Plans and Specifications:  Plans and specifications for the Lagoon Improvements prepared by the Architect and approved by the Lender.

Lagoon Project Schedule:  The projected schedule of completion of the construction of the Lagoon Improvements in accordance with the Lagoon Plans and Specifications.

Land:  The parcel of land located in the City of Cabo San Lucas, Baja California Sur, Mexico and more particularly described on Schedule 22 annexed hereto.

Late Charge:  As such term is defined in Section 4.5.

Laws:  All federal, state and local laws, statutes, codes, ordinances, orders, rules and regulations of the United States of America, and the United Mexican States (including, without limitation, Environmental Laws).

Leases:  All leases, licenses and occupancy agreements affecting the Property or any part thereof now or hereafter existing.

Legacy:  collectively, Legacy Properties, LLC and its Affiliates.

Lehman:  Lehman Brothers Holdings Inc.

Lender:  Danske Bank A/S, London Branch.

Lender's Consultant:  Mike Delvin and Associates, Inc., or such other consultant retained by Lender, at Borrower's expense, to act as Lender's representative in respect of the Construction, as provided in this Agreement.

Lender Notice:  As defined in Section 5.3(d)(ii).

Liabilities:  As defined in Section 24.6(b).

LIBOR:  London interbank offered rate.

Loan:  Collectively, the Facility A Loan, Facility B Loan, Facility C Loan and Facility D Loan.

Loan-to-Value Ratio:  The ratio obtained by dividing the outstanding balance due on the Loan as determined by Lender (inclusive of the outstanding principal balance, interest, fees and costs incurred by Lender),  by the value of the Project as set forth in an Appraisal.

Major Contracts:  All Construction Contracts and other contracts pertaining to the operations, management, ownership, development and construction upon the Project which provide for an aggregate contract price equal to or greater than $100,000.

-14-

6408141-v15

*Final*

Mandate Agreements:  The Mandate Control Agreements dated of even date herewith by and between Lender, Borrower and Banorte regarding the Banorte Accounts.

Master Condominium Regime:  The condominium regime to which the Project is subject, which includes, *inter alia*, reciprocal easements, owner's association, covenants, architectural controls, maintenance obligations with respect to the Common Areas, and shared costs among the Sub-Condominium Regimes and adjacent condominium regimes.

Master Plan:  The master plan for the Project annexed hereto as Schedule 23.

Material Adverse Change or material adverse change:  If, in Lender's reasonable determination, the business prospects, operations or financial condition of a Person or property has changed in a manner which could impair the value of Lender's security for the Loan, prevent timely repayment of the Loan or otherwise prevent the applicable Person from timely performing any of its obligations under the 2013 Amended Loan Documents.

Maturity Date:  March 31, 2016.

Measured Period:  The trailing twelve (12) month period measured from the last day of the immediately preceding calendar month.

Monthly Interest Reserve Deposit:  An amount equal to $300,000, as may be adjusted by Lender in its reasonable discretion and with advance notice to Borrower.

Monthly Resort Vertical Improvement Reserve Deposit:  An amount equal to the line item denoted "construction reserve deposit" in the Consolidated Cash Flow Statement.

Moody's:  Moody's Investors Service, Inc.

Net Sales Proceeds:  All Sales Proceeds less Commissions less Working Capital Contribution, and less nominal closing costs of Borrower, as seller, as approved by Lender.

Non-Resort Improvements:  all Improvements located on Phases other than the Resort Parcel.

Non-Resort Timeshare and Whole Ownership Budget: The budget describing all costs and expenses related to the construction and completion of the Non-Resort Timeshare and Whole Ownership Improvements attached hereto and incorporated herein as Schedule 24, as may be updated, amended or revised with Lender's prior written approval.

Non-Resort Timeshare and Whole Ownership Improvements: the improvements described on the Non-Resort and Whole Ownership Improvements Budget.

Non-Resort Timeshare and Whole Ownership Plans and Specifications:  The plans and specifications for the Non-Resort Time Share and Whole Ownership Improvements.

-15-

6408141-v15

DANSKE_0011100

*Final*

Non-Utilization Fee:  A fee payable by Borrower to Lender equal to one percent (1%) of the average, undrawn daily balance of the Facility B Loan, Facility C Loan, and Facility D Loan during the term.

Notes:  Collectively, the Facility A Note, the Facility B Note, Facility C Note and Facility D Note.

OFAC:  Office of Foreign Asset Control of the Department of the Treasury of the United States of America.

Operations Budgets:  collectively, the 2013 Operations Budget, Administrative Budget, Non-Resort Timeshare and Whole Ownership Budget, and all Association Budgets, as may be updated and approved by Lender as set forth herein.

Opportunity:  As defined in Section 16.1.

Order of Priority:  As defined in Section 5.4.

Original Facility A Interest Rate:  The rate of interest that is three hundred (300) basis points in excess of the three-month LIBOR for U.S. Dollar deposits which appears on Reuters LIBOR 01 as of 11:00 a.m. London time on the first day of each Interest Period during the period of time expiring December 31, 2011.  Once established, the Original Facility A Interest Rate shall remain fixed until the end of each Interest Period occurring through December 31, 2011. The foregoing notwithstanding, if such rate is not available on Reuters or a successive service, Lender will determine a comparable rate in its sole but reasonable discretion.

Original Facility A Note:  The First Substitute Promissory Note (Original Facility A) in the original principal amount of $109,138,327.83, dated as of March 9, 2009, and executed by Borrower to the Order of Lender.

Original Facility B Interest Rate:  The rate of interest that is five hundred (500) basis points above the three-month LIBOR for U.S. Dollar deposits which appears on Reuters LIBOR 01 as of 11:00 a.m. London time on the first day of each Interest Period during period of time expiring December 31, 2011.  Once established, the Original Facility B Interest Rate shall remain fixed until the end of each Interest Period occurring through December 31, 2011.  The foregoing notwithstanding, if such rate is not available on Reuters or a successive service, Lender will determine a comparable rate in its sole but reasonable discretion.

Original Loan Documents:  The loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 2.

Payment Date:  The first Business Day of each calendar month.

Permit Schedule:  The list of all permits, entitlements and approvals required by all Laws and Government Authorities for the Project and all Phases thereof as set forth on Schedule 25.

Permits:  Any building permit, environmental permit, utility permit, zoning permit or other permit required in respect of the Property.

-16-

CONFIDENTIAL

DANSKE_0011101

*Final*

Permitted Exceptions:  The matters disclosed by the Title Policy issued to Lender on the date hereof.

Person:    Any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any U.S. or Mexican federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

Personal Property:  The personal property described on Schedule 26, together with all personal property, fixtures and equipment required or beneficial for the operation of the Land or the Improvements.

Phase(s):  The individual (or collective) reference to the portions of the Project shown on the Master Plan and identified as: (i) Future Development (209.4 acres), (ii) Hotel Site (65.46 acres), (iii) Ocean Vista Villas 1 (100 units), (iv) Ocean View Estates (86 lots), (v) Village Villas (100 units), (vi) Ocean Vista Villas 2 (100 units), (vii) Oasis Estates (40 lots), (viii) Golf Villas (66 units), (ix) Sunset Hill (78 lots), and (x) Beachfront (193.27 acres).  The forgoing number of units, lots and acreage per phase correspond to the current Master Plan and such number may be updated to the extent the Master Plan is updated or revised with Lender's prior written approval.

Plans and Specifications:  Collectively, the plans and specifications for the Improvements (or any part thereof), prepared by Architect and approved by Lender.

Pledge Agreement (Accounts):  the Pledge Agreement (Accounts - Mexican Law) dated as of the date hereof and executed by Borrower in favor of Lender.

Pledge and Security Agreement:  the Pledge and Security Agreement (Accounts) dated as of the date hereof and executed by Borrower in favor of Lender.

Pledge of Borrower Assets:  The pledge of all of Borrower's interests and rights in all assets owned by Borrower and not assigned to the Trust dated as of the date hereof from Borrower in favor of Lender, together with any future Pledge of Borrower Assets instrument executed by Borrower in favor of Lender from and after the date hereof.

Policy:  Insurance Policy or Policies as defined in Section 13.2(b).

Prepayment Fee:  An amount equal to one percent (1%) of the then-outstanding principal balance (including capitalized interest) of the Facility A Note.

Prior Budget Period:  The calendar month immediately preceding the month in which the applicable report described in Section 13.5(b) hereof is delivered.

Proceeding:  As defined in Section 20.11.

Proceeds:  As defined in Section 14.1.

Product:  Any and all golf memberships or privileges, time share, fractional membership, whole ownership, condominium, lot or other interest in any portion of the Project, including but

-17-

6408141-v15

CONFIDENTIAL

DANSKE_0011102

*Final*

not limited to Beach Estate Lots, BRC Interests, Golf Villas, Golf Villa Lots, GVRC Interests, Sunset Hill Lots, TRC Interests, Dunes Residences Condominium Units, DRC Interests, and Golf Memberships.

Product Sales:  All sales of interests in the Project, including but not limited to (i) time share interests in the DRC, BRC, GVRC, and TRC; (ii) lots in the Sunset Hill Parcel; (iii) lots in the Golf Villa Parcel; (iv) Golf Villas; (v) lots in the Beach Estate Parcel; (vi) Dunes Residences Condominium Units; and (vii) golf memberships at the Dunes Golf Course, and the TW Golf Course.

Product Sales Contracts: All contracts and agreements for the sale of Product.

Product Sales Receipts:  cash deposits and all other funds received in payment for a Product Sale.

Profit Participation Fee:  $50,000,000.00 USD.

Project:  The resort and residential development located on the Property consisting of residences, lots, two golf courses, timeshares, clubhouses, restaurants, Spa and Health Club, Lagoon and other amenities, all as more particularly shown on the Master Plan.

Project Schedule:  The projected schedule of completion for the Lagoon Improvements, Resort Vertical Improvements, Future Resort Vertical Improvements, and TW Golf Course Improvements as set forth in Schedule 27 attached hereto and incorporated herein.

Projected Cash Receipts: The estimated cash receipts from Product Sales for the applicable Projected Period.  For calendar year 2012 and each month thereof, the Projected Product Sales shall be deemed to be the Actual Product Sales for each month.

Projected Costs of Completion: With respect to any Improvements of the Project, the projected costs of completion as set forth on the applicable Construction Budget and Schedule.

Projected Operating Expenses:  The projected operating expenses to be incurred by Borrower during the Projected Period.

Projected Period:  The period of time shown or remaining on the Construction Budget or Operating Budget, or such other period of time as required by Lender.

Projected Product Sales:  The estimated schedule of Product Sales for the applicable Projected Period which amount shall be evidenced by projected number of units or weeks sold and projected sales price for each such sale.  For calendar year 2012 and each month thereof, the Projected Product Sales shall be deemed to be the Actual Product Sales for each month.

Projected Schedule of Completion:  With respect to any Improvements in the Project, the projected completion date for the applicable Improvements.

Property:  The Land and any improvements located thereon.

-18-

CONFIDENTIAL

*Final*

Provided Information:  As defined in Section 24.1.

Quarterly Interest Payments:  Collectively, all interest payments due with respect to Facility A, Facility B, Facility C and Facility D due and payable on a Quarterly Payment Date.

Quarterly Non-Utilization Payments:  Collectively, all payments due with respect to the Non-Utilization Fee accruing under Facility B, Facility C and Facility D due and payable on a Quarterly Payment Date.

Quarterly Payment Date: January 1, April 1, July 1, and October 1 in each calendar year.

Rating Agencies:  Each of S&P, Moody's and Fitch.

Registration Statement:  As defined in Section 24.6(b).

Related Parties:  As defined in Section 13.3(d).

Release Price:  As defined in Section 16.1.

Requisition:  A request for an advance of a portion of the Loan in the form required by Lender.

Resort:  the Lagoon, Resort Improvements, the Health Club and all other improvements developed, constructed and operated on the Resort Parcel.

Resort Condominium Regime:  The sub-condominium regime on which the Resort Improvements are located (or will be located).

Resort Future Vertical Construction Budget:  The budget describing all costs and expenses related to the construction of the Shell Building, and four (4) Two-Unit Buildings, attached hereto and incorporated herein as Schedule 28, as may be updated, amended or revised with Lender's prior written approval.

Resort Future Vertical Improvements:  The Shell Building, and four (4) Two-Unit Buildings and all related engineering, mechanical, and other infrastructure required for such development and construction.

Resort Future Vertical Improvements Plans and Specifications:  Plans and specifications for the Resort Future Vertical Improvements prepared by Architect and approved by Lender.

Resort Improvements:  The Lagoon, Resort Vertical Improvements, Resort Future Vertical Improvements, Health Club and all other improvements developed and constructed on the Resort Parcel.

Resort Parcel: The parcel of real property on which the Lagoon Improvements, Resort Vertical Improvements, Resort Future Vertical Improvements, the Spa, Health Club, and other Resort Improvements are located, as shown on Schedule 29 attached hereto and incorporated herein.

6408141-v15

CONFIDENTIAL

DANSKE_0011104

*Final*

Resort Product:   All timeshare membership interests or other interests or rights with respect to the TRC.

Resort Product Sales:  All sales of Resort Product in the TRC.

Resort Product Sales Contracts:  All contracts and agreements for the sale of Resort Product.

Resort Vertical Construction Budget:   The budget describing all costs and expenses related to the construction and completion of the Resort Vertical Improvements attached hereto and incorporated herein as Schedule 30, as may be updated, amended or revised with Lender's prior written approval.

Resort Vertical Improvements: Collectively, the Six Unit Building, one (1) Two-Unit Building, the First Phase Bungalows, Spa and all related engineering, mechanical, and other infrastructure required for such development and construction.

Resort Vertical Improvement Plans and Specifications:  Plans and specifications for the Resort Vertical Improvements prepared by the Architect and approved by the Lender.

Resort Vertical Improvements Reserve Account: The blocked construction reserve account established by Lender as secured party.

Resort Vertical Improvements Reserve Funds:  Collectively, all funds deposited into the Resort Vertical Improvements Reserve Account.

Sales Proceeds:  all proceeds from Product Sales.

S&P:  Standard & Poor's Ratings Group, a division of McGraw-Hill, Inc.

Schedule of Leased Equipment:  The schedule of lease equipment attached hereon and incorporated herein on Schedule 31.

Schedule of Leases:  The schedule of leases attached hereon and incorporated herein on Schedule 32.

Schedule of Operator Contracts:  The schedule of operator contracts attached hereon and incorporated herein on Schedule 33.

Schedule of Management Contracts:  The schedule of management contracts attached hereon and incorporated herein on Schedule 34.

Schedule of Product Sales Contracts:  The schedule of Sales Contracts attached hereon and incorporated herein on Schedule 35.

Schedule of Sales and Marketing Agreements: The schedule of Sales and Marketing Agreements attached hereon and incorporated herein on Schedule 36.

-20-

6408141-v15

CONFIDENTIAL                                                     DANSKE_0011105

*Final*

Schedule of Service Contracts: The schedule of service contracts attached hereon and incorporated herein on Schedule 37.

Schedule of Time Share Agreements: The schedule of Time Share Agreements attached hereon and incorporated herein on Schedule 38.

Schedule of Warranties and Guaranties: The schedule of warranties and guaranties attached hereon and incorporated herein on Schedule 39.

Second Amendment to Trust:  The Second Amendment to Amended and Restated Trust Agreement dated as of the Effective Date.

Securities:  As defined in Section 24.6(a).

Securities Act:  As defined in Section 24.6(a).

Securitization:  As defined in Section 24.1.

SEMARNAT:  As defined in Section 8.1(d).

Servicer:  As defined in Section 17.1.

Servicing Agreement:  As defined in Section 17.1.

Servicing Fees:  As defined in Section 17.1.

Shell Building:  The shell of the forty-seven (47) unit building in the Resort Phase of the Project as more particularly shown on the Master Plan.

Shell Building Improvements:   The Shell Building and all related engineering, mechanical, and all infrastructure required for such development and construction of the Shell Building.

Six Unit Building:  The six (6) unit building and related facilities depicted on the Master Plan and all as more particularly shown on the Resort Vertical Improvement Plans and Specifications approved by Lender.

Six Unit Building Improvements:  The six (6) unit building and all infrastructure required for such development, construction and operation of the Six Unit Building.

Soft Costs:   All costs, other than Hard Costs, to be incurred in respect of the Improvements, including, without limitation, architects' fees, engineers' fees, Taxes, Insurance Premiums and bond fees.

Spa: The 10,811 square foot building located upon the Resort Parcel more particularly shown on the Master Plan and all as more particularly described in the Spa Plans and Specifications approved by Lender.

-21-

CONFIDENTIAL

*Final*

Spa Improvements:  The Spa and all infrastructure required for such development, construction and operation of the Spa Improvements.

Spa Plans and Specifications:  Plans and specifications for the Spa prepared by the Architect and approved by the Lender.

SRE Permit:  As defined in Section 13.1(s).

Sub-Condominium Regimes:  each of the Golf Villas Condominium Regime, Sunset Hill Estates Condominium Regime, the Resort Condominium Regime and the Beach Estates Condominium Regime.

Subordinate Loan:  As defined in Section 24.5.

Sunset Hill Estates Condominium:  the sub-condominium regime on which the Sunset Hill Estates Improvements are located.

Sunset Hill Estates Lots:  Collectively, the 78 lots situated in the Sunset Hill Estates Condominium as more particularly shown on the Master Plan.

Sunset Hill Estates Parcel:  The parcel of real property on which the Sunset Hill Estates Lots encompassing the Sunset Hill Estates Condominium are located, as shown on Schedule 40 attached hereto and incorporated herein.

Taxes:  All real estate taxes and assessments and charges of every kind levied or assessed with respect to the Property.

Tenant:  A tenant or licensee under a Lease.

Termination of Assignment of Leases and Rents:  the Termination of Assignment of Leases and Rents dated as of the date hereof executed by Borrower in favor of Lender.

Termination of Pledge Agreement (Membership Interests in Borrower:  US):  the Termination of Pledge Agreement (Membership Interests in Borrower:  US) dated as of the date hereof executed by Borrower in favor of Lender.

Time Share Contract:  An agreement for the sale of any Time Share Product.

Time Share Product:  DRC Interests, BRC Interests, GVRC Interests and TRC Interests.

Time Share Sales:  Collectively, all sales of Time Share Product.

Title Insurer:  Stewart Title Guaranty de Mexico, S.A. de C.V., as agent for Stewart Title Guaranty Company, and Fidelity National Global Solutions, Inc., each as co-insurers of 50% of the liability under the Title Policy.

Title Policy:  An ALTA Mortgagee's Loan Title Insurance Policy or its equivalent, issued by Title Insurer, insuring Lender's interest as first-place beneficiary under the Second Amended

-22-

CONFIDENTIAL                                                                      DANSKE_0011107

*Final*

and Restated Trust Agreement, subject only to the Permitted Exceptions, and otherwise in form satisfactory to Lender.

Transfer:  Any sale, transfer, lease, conveyance, alienation, pledge, assignment, mortgage, encumbrance, hypothecation or other disposition of (i) all or any portion of the Land or any of the improvements thereon, (ii) all or any portion of Borrower's right, title and interest (legal or equitable) in and to the Land or any of the improvements thereon, or (iii) any interest in Borrower or any interest in any Person which directly or indirectly holds an interest in, or directly or indirectly controls, Borrower.

TRC: The Resort Club.

TRC Interests:  Collectively, the time share membership interests in the TRC.

Triggering Event:  Breach of any of the covenants set forth in Sections 13.7 and 13.8 hereof.

Triggering Event Period:  Any period of time after a Triggering Event occurs.

Trust:  The trust created by the Amended and Restated Trust Agreement.

Trustee:  The Bank of New York Mellon, S.A., Institución de Banca Múltiple.

TW Golf Course Construction Budget: The budget describing all costs and expenses related to the construction and completion of the TW Golf Course attached hereto and incorporated herein as Schedule 41, as may be updated, amended or revised with Lender's prior written approval.

TW Golf Course:  The golf course and related facilities operating upon the TW Golf Course Parcel.

TW Golf Course Improvements:  The golf course, club house and related facilities and supporting infrastructure for the development, construction and operation of the TW Golf Course as depicted on the Master Plan and all as more particularly described in the TW Woods Golf Course Plans and Specifications approved by Lender.

TW Golf Course Parcel:  The parcel of real property on which the TW Golf Course is located, as shown on Schedule 42 attached hereto and incorporated herein

TW Golf Course Plans and Specifications:  Plans and specifications for the TW Golf Course Improvements prepared by the Architect and approved by the Lender.

Two Unit Buildings:  The two (2) unit buildings located in the Resort phase of the Project as more particularly shown on the Master Plan.

Two Unit Building Improvements:  The Two Unit Buildings and all infrastructure required for such development, construction and operation of each of the Two Unit Buildings.

-23-

CONFIDENTIAL                                                                                    DANSKE_0011108

*Final*

UCC Financing Statements:   The financing statements required to be filed to perfect, continue, or correct the security interests conferred on Lender by the Reaffirmation of Pledge Agreements.

UCC Policy:   The policy of UCC title insurance, issued by UCC Title Insurer, insuring Lender's first-priority, perfected security interest in the collateral under the Reaffirmation of U.S. Pledge Agreements.

UCC Title Insurer:   Commonwealth Land Title Insurance Company.

Underwriter Group:   As defined in Section 24.6(b).

Waiver and Release Agreement:   The Waiver and Release Agreement by and among Borrower, Diamante Member, and Jowdy Parties in favor of Lender.

Water Treatment Agreements:   The agreements by and between Borrower and the City of Los Cabos as more particularly described on Schedule 43 attached hereto and incorporated herein.

Well Access Agreement:   The agreement by and between Borrower the City of Los Cabos, Mexico regarding access to certain wells located upon the Project.

Wells Fargo Income Account:   The income account of Borrower maintained at Wells Fargo Bank, N.A., described on Schedule 44 attached hereto and incorporated herein.

Whole Ownership Contract:   An agreement for the sale of a Golf Villa, Golf Villa Lot, Beach Estates Lot, Sunset Hill Estates Lot, or Dunes Residences Condominium Unit.

Whole Ownership Sale(s):   The sale (or sales) made pursuant to a Whole Ownership Contract(s).

Woods:   Tiger Woods Design, Inc.

Woods Contract:   The Golf Facility Design Agreement by and between Woods and Borrower dated April 13, 2012.

Working Capital Contribution:   an amount equal to ten percent (10%) of the Product Sales, which amount shall be used by Borrower in the day-to-day operations of the Project in accordance with the Operations Budget, including without limitation, amounts for the maintenance of change and petty cash funds, amounts for management and operating staff payroll, prepaid expenses, and inventories.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Section 3.1     Representations and Warranties.

-24-

6408141-v15

CONFIDENTIAL

DANSKE_0011109

*Final*

To induce Lender to execute this Agreement and to perform its obligations hereunder, Borrower and Borrower Parties hereby represent and warrant to Lender as follows:

(a)     Trustee has good and marketable legal title to the Property, subject only to the Permitted Exceptions. The Property is not subject to any easements, rights or way, or similar limitations of use of the Property except as disclosed in writing to Lender.  To Borrower's knowledge, there is no eminent domain or similar proceeding pending against the Property or any part thereof.

(b)     Except as set forth on Exhibit 3.1(b), no litigation or proceedings are pending or, to the best of Borrower's knowledge, threatened, against Borrower and any of the Borrower Parties, or the Property.  To the best of Borrower's knowledge, without inquiry, no litigation or proceedings are pending or threatened against Investor Parties, except that Borrower believes that there is a possibility that the Investor Parties could be joined into the litigation described in Exhibit 3.1(b).  There are no pending or, to Borrower's knowledge, threatened Environmental Proceedings in respect of the Property.

(c)     Borrower (i) is a limited liability company with variable capital (*sociedad de responsibilidad limitada de capital variable*), duly organized and validly existing under the laws of the United Mexican States, (ii) has full power and authority to execute, deliver and perform all 2013 Amended Loan Documents to which it is a party, and (iii) such execution, delivery and performance have been duly authorized by all requisite action on the part of Borrower.  Each of Borrower Diamante Parties (other than Guarantor) and Jowdy Parties, (x) is a limited liability company, duly organized and validly existing under the laws of the State of Delaware, except for Diamante Life which:  (i) is a limited liability company with variable capital (sociedad de responsibilidad limitada de capital variable), duly organized and validly existing under the laws of the United Mexican States, and each Borrower Diamante Party and Jowdy Party, (y) has full power and authority to execute, deliver and perform all 2013 Amended Loan Documents to which it is a party, and (z) such execution, delivery and performance have been duly authorized by all requisite action on the part of each of such Borrower Parties.

(d)     Neither Borrower, nor any of the Borrower Diamante Parties or Jowdy Parties is subject to any liens or judgments, other than, with respect to Borrower, liens for real estate taxes which are not yet due, and other than, with respect to Guarantor, such liens as are disclosed on the financial statements furnished to Lender in connection with its underwriting of the Loan which include the Murray Judgment.  To the best of Borrower's knowledge, without inquiry, none of the Investor Parties is subject to any liens or judgments.   "**Murray Judgment**" means that judgment in favor of Glen Murray in the original amount of $800,000 filed against Guarantor.

(e)     Each of Borrower, the Borrower Diamante Parties and the Jowdy Parties is in compliance with all Laws applicable to it and, other than with respect to Guarantor, has obtained all permits required for it to operate.

(f)     Neither Borrower nor any of the Borrower Diamante Parties or Jowdy Parties is involved in any dispute with any taxing authority.  Neither Borrower, Borrower

-25-

CONFIDENTIAL                                                                 DANSKE_0011110

Case 2:13-cr-00607-JFB-AYS   Document 855-1   Filed 06/20/20   Page 33 of 51 PageID #: 23003

*Final*

Diamante Parties, Payroll Companies, nor any of the Jowdy Parties is in default of any obligation to pay taxes to any taxing authority.  To the best of Borrower's knowledge, without inquiry, none of the Investor Parties is involved in any dispute with any taxing authority or is in default of any obligation to pay taxes to any taxing authority.

(g)     Borrower has never owned any property, or engaged in any business, other than the ownership of its interest in the Property.  None of the Borrower Diamante Parties or Jowdy Parties (other than Guarantor) has ever owned any property, other than its direct or indirect interest in Borrower, and neither has engaged in any business, other than business incidental to its direct or indirect ownership of an interest in Borrower.  To the best of Borrower's knowledge, without inquiry, none of the Investor Parties has ever owned any property, other than its indirect ownership interest in Borrower, and none has engaged in any business, other than business incidental to its direct or indirect ownership of an interest in Borrower.

(h)     No consent, approval or authorization of or declaration, registration or filing with any Governmental Authority or nongovernmental Person, including any creditor, partner, or member of Borrower, or any of the Borrower Diamante Parties or Jowdy Parties is required in connection with the execution, delivery and performance of this Agreement or any of the 2013 Amended Loan Documents, other than the registration of the Second Amendment to Trust Agreement in the Public Registry of Property and Commerce of Cabo San Lucas, notation in the corporate book of Borrower of the Reaffirmation of Pledge Agreement (Membership Interest in Borrower: Mexico), and the filing of the UCC Financing Statements in the Offices of the Delaware and Nevada Secretaries of State.

(i)     The execution, delivery and performance of this Agreement, the execution and payment of the Notes and the execution and delivery of the Second Amendment to Trust and the other security interests under the Original Loan Documents, 2009 Amended Loan Documents, 2010 Amended Loan Documents, 2012 and 2013 Extension Letters, 2013 Additional Advance Agreement, and the other 2013 Amended Loan Documents does not and will not constitute a breach or default under any other agreement to which Borrower, Diamante Member or any Borrower Party is a party or may be bound, or a violation of any law or court order which may affect the Property.

(j)     Except for the Event of Default expressly set forth in Section 2 of each of the 2012 and 2013 Extension Letters (which Borrower and Lender acknowledge and agree is hereby deemed waived and cured by the execution of this Agreement), there is no Default or Event of Default under this Agreement, the Original Loan Documents, or the other Danske Amended Loan Documents.

(k)     There are no pending or, to Borrower's knowledge, threatened condemnation or eminent domain proceedings in respect of the Land.

(l)     <u>Utilities and Access</u>.

-26-

6408141-v15

CONFIDENTIAL                                                                                                    DANSKE_0011111

*Final*

        i.      The Dunes Golf Course Parcel is fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection, and means of access between the Dunes Golf Course Parcel and public streets.

        ii.      The Dunes Residences Condominium, including each of the individual Dunes Residences Condominium Units therein, is fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection (or other form of civil protection), and means of access between the Dunes Residences Condominium and public streets.

        iii.      The Golf Villas Condominium Parcel, including each individual lot therein, is (or will be after Borrower's completion of budgeted infrastructure as set forth in the Construction Budgets) fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection, and means of access between the Golf Villa Parcel (and each individual lot located thereon) and public streets.

        iv.      The Sunset Hill Estates Parcel, including each individual lot therein, is (or will be after Borrower's completion of budgeted infrastructure as set forth in the Construction Budgets) fully and adequately serviced with water gas and electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection, and means of access between the Sunset Hill Estates Parcel (and each individual lot located thereon) and public streets.

        v.      The Beach Estates Parcel, including each individual lot therein, is (or will be after Borrower's completion of budgeted infrastructure as set forth in the Construction Budgets) fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection, and means of access between the Beach Estates Parcel (and each individual lot located thereon) and public streets.

        vi.      After completion of the Lagoon Improvements, the Lagoon will be fully and adequately serviced with water, electrical supply, storm, and sanitary sewerage facilities, other required public facilities, fire and police protection (or other form of civil protection), and a means of access from the Lagoon Parcel to the public streets.

        vii.      After completion of the TW Golf Course Improvements, the TW Golf Course Parcel will be fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection (or other form of civil protection), and means of access between the TW Golf Course Parcel and public streets.

        viii.      After completion of the Resort Vertical Improvements, Resort Vertical Improvements will be fully and adequately serviced with water, electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection (or other

6408141-v15

CONFIDENTIAL

DANSKE_0011112

*Final*

form of civil protection), and means of access between the Resort Vertical Improvements and public streets.

(m)  Borrower has dealt with no broker or finder in connection with this Agreement or the Loan.

(n)  To the best of Borrower's knowledge, all financial statements and other information previously furnished by Borrower, Borrower Diamante Parties, and any of the Jowdy Parties, in connection with the Loan are true, complete and correct in all material respects and fairly present the financial conditions of the subjects thereof as of the respective dates thereof and do not fail to state any material fact necessary to make such statements or information not misleading, and no Material Adverse Change with respect to Borrower, Borrower Diamante Parties, or any of the Jowdy Parties has occurred since the respective dates of such statements and information.  Neither Borrower, Borrower Diamante Parties, nor any of the Jowdy Parties has any material liability, contingent or otherwise, not disclosed in such financial statements.

(o)  <u>Budgets (Operating and Construction); Compensation Statement; Project Schedule</u>.

i.  The amounts set forth in the Lagoon Construction Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the completion of the Lagoon Improvements.

ii.  The amounts set forth in the Resort Vertical Construction Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the completion of the Resort Vertical Improvements.

iii.  The amounts set forth in the Resort Future Vertical Construction Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the Resort Future Vertical Improvements through March 31, 2014,  subject to the availability of funds to be applied to such costs and expenses in accordance with <u>Section 13.17</u> hereof.

iv.  The amounts set forth in the TW Golf Course Construction Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the completion of the TW Golf Course Improvements through March 31, 2014, subject to the availability of funds to be applied to such costs and expenses in accordance with <u>Section 13.17</u> hereof.

v.  The amounts set forth in the 2013 Operations Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower

6408141-v15

CONFIDENTIAL

DANSKE_0011113

*Final*

reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the operational costs associated with the Project and the date or dates for disbursements to pay all or any portion of each category of such costs and expenses of the Project.

      vi.    The amounts set forth in the Administrative Budget represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to the administrative costs of the Project and the date or dates for disbursements to pay all or any portion of each category of such costs and expenses of the Project.

      vii.    The amounts set forth in the Non-Resort Time Share and Whole Ownership Budget accurately represent a full and complete itemization by category of all costs, expenses and fees which Borrower reasonably expects to pay or reasonably anticipates becoming obligated to pay with respect to Non-Resort Time Share and Whole Ownership Costs and the date or dates for disbursements to pay all or any portion of each category of such costs and expenses of the Project.

      viii.    The Commission Statement sets forth accurately and fully all compensation, commission fees and other compensation which Borrower (including any Affiliate of Borrower) is obligated to pay from sales of the Project.

      ix.    The Lagoon Project Schedule sets forth accurately and fully the proposed progress of construction of the Lagoon Improvements to completion.

      x.    The Resort Vertical Project Schedule sets forth accurately and fully the proposed progress of construction of the Resort Vertical Improvements to completion.

      xi.    The Future Resort Vertical Project Schedule sets forth accurately and fully the proposed progress of construction of the Future Resort Vertical to completion of the designated phase(s) of such Future Resort Vertical Improvements.

      xii.    Subject to availability of funds to be applied to such costs and expenses in accordance with Section 13.17, the TW Golf Course Project Schedule sets forth accurately and fully the proposed progress of construction of the TW Golf Course Project to completion.

      (p)    Approvals.  The Permit Schedule is a true, accurate and complete list of all permits required with respect to the Project.  The Project is in compliance with all Permits and there are no violations of any such Permits.  With respect to each Phase of the Project:

      i.    Dunes Golf Parcel.  All certifications, permits, licenses, and approvals, including, without limitation, certificates of completion and occupancy permits, required for the legal use, occupancy and operation of the Dunes Golf Course as a private membership golf course have been obtained and are in full force and effect.  Borrower shall keep and maintain all licenses necessary for the operation of the Dunes Golf Course as a private-

-29-

6408141-v15

CONFIDENTIAL

DANSKE_0011114

*Final*

membership golf course.  The use being made of the Dunes Golf Parcel is in conformity with the certificate of occupancy issued for the Dunes Golf Course.

    ii. <u>Dunes Residences Condominium</u>. All certifications, permits, licenses, and approvals, including, without limitation, certificates of completion and occupancy permits, required for the legal use, occupancy and operation of the Dunes Residences Improvements as club, pool, restaurant, and time share facility have been obtained and are in full force and effect.  Borrower shall keep and maintain all licenses necessary for the operation of the Dunes Residences Improvements as a club, pool, restaurant, and time share facility.  The use being made of the Dunes Residences Improvements is in conformity with the certificate of occupancy issued for the Dunes Residences Improvements.

    iii. <u>Resort Improvements</u>. Neither the construction of any of the Resort Improvements nor the use thereof when completed will violate (i) any Laws or (ii) any restrictions of record or agreements affecting the Resort Parcel or other parts of the Project. Neither the zoning authorizations, approvals, or variances nor any other right to construct or to use the Resort Improvements is or will be to any extent dependent upon or related to any real estate other than the Land.  All approvals from any Governmental Authority required for the Resort Improvements in accordance with the Resort Plans and Specifications have been obtained, or will be obtained prior to the commencement of the construction of any Resort Improvements, and all Laws relating to the construction Resort Improvements and operation of the Resort Improvements have been complied with or will be complied with when any part of the Resort Improvements, is open for use.

    iv. <u>Non-Resort</u>. Neither the construction of the Non-Resort Improvements nor the use thereof when completed will violate (i) any Laws or (ii) any restrictions of record or agreements affecting the Non-Resort Parcel or other parts of the Project. Neither the zoning authorizations, approvals, or variances nor any other right to construct or to use the Non-Resort Improvements is or will be to any extent dependent upon or related to any real estate other than the Land.  All approvals from Governmental Authorities required for the Non-Resort Improvements in accordance with the Non-Resort Plans and Specifications have been obtained, or will be obtained prior to the commencement of Non-Resort Improvements, and all Laws relating to the construction of Non-Resort Improvements and operation of the Non-Resort Improvements have been complied with.

    v. <u>TW Golf Course</u>. Neither the construction of the TW Golf Course Improvements nor the use thereof when completed will violate (i) any Laws or (ii) any restrictions of record or agreements affecting the TW Golf Couse Parcel or other parts of the Project.  Neither the zoning authorizations, approvals, or variances nor any other right to construct or to use the TW Golf Course is or will be to any extent dependent upon or related to any real estate other than the Land.  All approvals from Governmental Authorities required for the TW Golf Course Improvements in accordance with the TW Golf Course Plans and Specifications have been obtained, or will be obtained prior to the commencement of construction of the TW Golf Course Improvements, and all Laws relating to the TW Golf Course Improvements and operation of the TW Golf course Improvements have been complied with.

6408141-v15

CONFIDENTIAL                            DANSKE_0011115

*Final*

(q)     Except as disclosed in the 2013 Environmental Report:  (i) the Property is free of Hazardous Material and is in compliance with all Laws; (ii) neither Borrower nor, to the best knowledge of Borrower, any other Person has ever caused or permitted any Hazardous Material to be placed, held, located or disposed of on, under, at or in a manner to affect the Property and the Property has never been used (whether by Borrower or, to the best knowledge of Borrower, any other Person) for any activities involving, directly or indirectly, the use, generation, treatment, storage, transportation, or disposal of any Hazardous Material; and (iii) there are no underground tanks, vessels, or similar facilities for the storage or containment of Hazardous Materials of any sort on, under or affecting the Property.

(r)     Each Project Phase Parcel is taxed separately without regard to any other property and for all purposes each Project Phase Parcel may be conveyed and otherwise dealt with as an independent parcel.  Each Golf Villa Lot, Sunset Hill Estates Lot, and Beach Estates Lot is taxed separately without regard to any other property, and for all purposes each Golf Villa Lot, Sunset Hill Estates Lot, and Beach Estates Lot may be conveyed and otherwise dealt with as an independent parcel.  Each Dunes Residences Condominium Unit will be taxed as a separate condominium unit and may be conveyed and otherwise dealt with as an independent unit within the Dunes Residences Improvements.

(s)     Except as set forth in the Schedule of Leases, there are no Leases, subleases or other arrangements for occupancy of space within the Property.

(t)     The Loan is not being made for the purpose of purchasing or carrying "margin stock" within the meaning of Regulation G, T, U or X issued by the Board of Governors of the Federal Reserve System, and Borrower agrees to execute all instruments necessary to comply with all the requirements of Regulation U of the Federal Reserve System.

(u)     Borrower is not a party in interest to any plan defined or regulated under ERISA, and the assets of Borrower are not "plan assets" of any employee benefit plan covered by ERISA or Section 4975 of the Internal Revenue Code.

(v)     Neither Borrower, nor any Borrower Party, nor, to the best of Borrower's knowledge, without inquiry, any Kenner Party, nor any Person holding a direct or indirect interest in any of them is (or will be) a person with whom Lender is restricted from doing business under OFAC (including Persons named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transactions or otherwise be associated with such Persons.  In addition, Borrower hereby agrees to provide Lender with any additional information that Lender deems reasonably necessary from time to time in order to ensure compliance with any and all laws to which Lender, Borrower, any Borrower Party, the Project, or the Property may be subject from time to time concerning money laundering and similar activities.

(w)     All of the Improvements lie wholly within the boundaries and building restriction lines of the Parcel on which they were built.  No Improvements on adjoining

-31-

CONFIDENTIAL

*Final*

properties encroach upon an adjacent Parcel.  No easements or other encumbrances upon the Property encroach upon any of the Improvements so as to affect the marketability or value of the Parcel.

(x)    <u>Warranties and Guaranties</u>.    Except with respect to (i) customary appliance and equipment warranties obtained in connection with the purchase of the Personal Property, and (ii) any warranties and guaranties arising from the Crystal Lagoons Contract, Borrower represents and warrants that there are no other warranties  and guaranties required or obtained with respect to the Project.

(y)    <u>Plans and Specifications</u>.  Borrower has delivered to Lender true, accurate and complete Plans and Specifications for all of the Project constructed or under development and construction.

(z)    <u>As-Built Plans</u>.  Borrower has delivered to Lender true, accurate and complete copies of all As-Built Plans for Improvements for which construction is complete.

(aa)    <u>Schedule of Management Contracts</u>.    The Schedule of Management Contracts is a true, accurate and complete list of all Management Contracts existing with respect to the ownership and operation of the Project.  Borrower has complied in all material respects with respect to each such Management Contract, and to Borrower's knowledge, there is no default therein. Borrower has delivered to Lender true, accurate and complete copies of all such agreements.

(bb)    <u>No Vendor Contracts; Leased Equipment; Operator Agreements</u>. Borrower represents and warrants that there are no vendor agreements or leased equipment agreement with respect to the Project.  Other than the Health Club Operations Agreement by and between Borrower and Mr. Modou Seye dated July 30, 2012, there are no operations agreement affecting the Project ("**Health Club Agreement**").    Borrower has complied in all material respects with respect to the Health Club Agreement, and to Borrower's knowledge, there is no default therein.  Borrower has delivered to Lender a true, accurate and complete copy of the Health Club Agreement.

(cc)    <u>Schedule of Service Contracts</u>.  The Schedule of Service Contracts is a true, accurate and complete list of all Service Contracts existing with respect to the ownership and operation of the Project.  Except with respect to the service agreement between Borrower and VWS Mexico, S.A. De C.V. and Veolia Water Systems Ingenieria, S.A. De C.V., subsidiaries of Veolia Water Systems Mexico, S.A., De C.V. ("**Veolia Agreement**"), Borrower has complied in all material respects with respect to each such Service Contract, and to Borrower's knowledge, there is no default therein.  Borrower has delivered to Lender true, accurate and complete copies of all such service contracts.  With respect to the Veolia Agreement, Borrower represents and warrants that (x) it has alleged an event of default under the Veolia Agreement based on Viola's alleged failure to maintain the desalination plant in good working order and repair; (y) it has delivered to Lender all material correspondence between Borrower and Viola regarding such alleged default thereunder; and (z)  to the best of Borrower's knowledge, any counter claim alleged by Viola under the Viola Agreement will not have a

-32-

6408141-v15

CONFIDENTIAL                                                                                    DANSKE_0011117

*Final*

material adverse effect on Borrower (including Borrower's ability to timely pay amounts due Lender as set forth herein) or the Project, nor shall claim have any effect on Lender's lien priority.  Borrower shall keep Lender reasonably informed of the status of any dispute arising under the Veolia Agreement.

(dd)　<u>Schedule of Sales Contracts</u>.  The Schedule of Sales Contracts is a true, accurate and complete list of all Sales Contracts entered into as of the date hereof, including information with respect to deposits received with respect to the Project. Borrower has complied or is in the process of complying in all material respects with respect to each such Sales Contract (including but not limited to Borrower's obligation to perform all construction, utility and other service obligations thereunder), and to Borrower's knowledge, there is no default therein.

(ee)　<u>Schedule of Time Share Sales Contracts; Golf Membership Agreements</u>. The Schedule of Time Share Sales Contracts is a true, accurate and complete list of time share contracts entered into as of the date hereof, including accurate and complete information regarding deposits received with respect to the Project. Borrower has complied in all material respects with respect to each such Time Share Contract, and, to Borrower's knowledge, there is no default therein. The Schedule of Golf Membership Contracts is a true, accurate and complete list of golf membership contracts with respect to the Dunes Golf Course and TW Golf Course entered into as of the date hereof, including accurate and complete information regarding membership deposits received with respect to the Project. Borrower has complied in all material respects with respect to each such Golf Membership Contract, and, to Borrower's knowledge, there is no default therein.  All membership dues and charges due under Golf Membership Agreement are paid to Diamante Club, LLC  or paid to Borrower directly and deposited into Wells Fargo Income Accounts pursuant to the Access Agreement (defined in <u>Section 13.12(f)</u> hereof).

(ff)　<u>Schedule of Sales and Marketing Agreements</u>.  The Schedule of Sales and Marketing Agreements is a true, accurate and complete list of all Sales and Marketing Agreements required with respect to the Project.  Borrower has delivered to Lender true, accurate and complete copies of all such agreements. Borrower has complied in all material respects with respect to each such Sales and Marketing Agreement, and, to Borrower's knowledge, there is no default therein.

(gg)　<u>No Default Under Agreements</u>.   All construction agreements, Product Sales Contracts, any other agreements with respect to any aspect of the Project are each in full force and effect and have not been modified, amended or supplemented in any respect.  With respect to the all such agreements, Borrower confirms that such Construction Agreements, Product Sales Contracts shall be of no force and effect on Lender if Lender exercises its rights under the collateral assignment of such agreements (including confirmation that Lender, as successor to the interest of "Owner" or "Developer" thereunder, shall have no liability whatsoever for any obligations that may have been incurred by Borrower pursuant to the terms of such agreement prior to the execution of the collateral assignment).  Borrower represents and warrants that there are no defaults under any of the provisions of such instruments, nor, to Borrower's knowledge, any fact or circumstance which, with the giving of notice or passage of

-33-

6408141-v15

*Final*

time, or both, could become a default thereunder, and all conditions to the continuing effectiveness of such instruments required to be satisfied as the date hereof have been satisfied.

(hh)   Except with respect to the Donation Area Agreement, the Water Treatment Agreements, and the Well Access Agreement, the Property is not part of any road and/or utility agreement with any owner of adjacent properties and/or with any governmental agency or public or private utility wherein (1) the Property is subject to payment of any fees in lieu of construction of off-site roads, upgrades to roads, intersection improvements, utility line extensions and/or the like, or (2) the owner of the Property is required to construct any off-site roads, upgrades to roads, intersection improvements, utility line extensions and/or the like.

(ii)   Except for the Arroyos, to the Borrower's knowledge, there are no wetland, floodplain, wildlife or resource protection areas on the Property.

(jj)   There are no attachments, executions, assignments for the benefit of creditors, bankruptcy proceedings or other debtor relief actions pending against Borrower or any Borrower Affiliation.

(kk)   There are no claims for payment of work, labor, or materials affecting the Property which are not or may become a lien prior to, or of equal priority with, the liens created by the Loan Documents.

(ll)   <u>Intellectual Property</u>.  All trademarks, trade names, and service marks, if any, necessary to the business of Borrower as currently conducted or as Borrower contemplates conducting its business are in good standing and not contested.  Borrower has not infringed, is not infringing, and has not received notice of infringement with respect to asserted trademarks, trade names, service marks, or other.  To Borrower's knowledge, there is no infringement by others of trademarks, trade names, and service marks of Borrower.

(mm)   <u>Use of Loan Proceeds</u>.  Proceeds of the Loan shall be used solely for the commercial purposes described in the Operating Budgets and Construction Budgets.

(oo)   <u>Anti-Corruption</u>.

(i)   Neither the Borrower nor any of its subsidiaries or Affiliates, or Person owning an interest in any Affiliate, has at any time, engaged in any activity, practice or conduct that would constitute an offence under the Bribery Act if such activity, practice or conduct had been undertaken by an organization which carries on business in the United Kingdom or Mexico.

(ii)   No Associated Person of the Borrower or any of its subsidiaries or Affiliates has bribed another person (within the meaning given in Section 7(3) of the Bribery Act) intending to obtain or retain business or an advantage in the conduct of the business for the Borrower and/or any of its subsidiaries or Affiliates.

-34-

6408141-v15

*Final*

(pp)    <u>Organizational Chart of Borrower and Affiliates</u>.   Attached hereto as <u>Exhibit 3.1(pp)</u> is a true, accurate and complete schedule of the organizational structure of Borrower, all Affiliates, and any Person having an interest in the Project.  All of the operations conducted on the Project and any part thereof and all business conducted therefrom is made through Borrower.  All sales proceeds, rents, profits, cash, and other income generated from the Project is directed to and deposited in either the Wells Fargo Income Accounts or Banorte Accounts and Borrower shall continue to direct and deposit all such amounts into the Wells Fargo Income Accounts or Banorte Accounts as applicable.

(qq)    <u>Acquired Time Shares</u>.   Attached hereto as <u>Exhibit 3.1(qq)</u> is a true, accurate and complete list of all time share and other interests acquired from buyers of Product ("**Acquired Time Share Interests**") and retained by Borrower.  Borrower represents and warrants that all other Acquired Time Share Interests and any obligations thereunder have been transferred to and assumed by International Travel Exchange and that Borrower has no obligations thereunder.  Borrower shall pay and perform all obligations as and when due under the Acquired Time Share Interests.

(rr)    SEMARNAT Approval.  Borrower represents and warrants that the Project, and all Phases thereof, has been approved by the Mexican Federal Ministry of the Environment and Natural Resources ("**SEMARNET**") and all other Governmental Authorities including without limitation, evidence that the Land has been rezoned from forestry and vegetation ("forestall") use to recreational tourist real estate use.

(ss)    <u>Arroyo Boundary Designation</u>.   Borrower covenants and agrees that it shall pursue the timely completion of the delineation process in good faith and with reasonable diligence if required by any federal agency. Borrower shall provide Lender timely status updates regarding any communication received or delivered with respect to the Arroyos.

(tt)    <u>Lagoon Permits</u>.   Borrower represents and warrants that it has applied for all requisite permits with respect to the construction of the Lagoon and satisfied all conditions to issuance of such permits.  Borrower covenants and agrees that it shall pursue the timely submission of all documentation required with respect to obtaining all permits for the Lagoon and shall deliver copies of the permits and corresponding communication to Lender within a reasonable period after Borrower's receipt thereof.

Section 3.2    <u>Reaffirmation of Representations and Warranties</u>.

Borrower agrees that all of the representations and warranties set forth in Section 3.1 and elsewhere in this Agreement are true as of the Effective Date and, except for matters which have been disclosed by Borrower and approved by Lender in writing, will be true at all times thereafter.  Lender shall be deemed to have approved changes to such representations and warranties occurring subsequent to the date hereof, if the same arise by reason of acts undertaken by Borrower in accordance with the terms hereof.  Each request for a disbursement under this Agreement shall constitute a reaffirmation of such representations and warranties, as deemed modified in accordance with the disclosures made and approved (or deemed approved) as

-35-

6408141-v15

CONFIDENTIAL

DANSKE_0011120

*Final*

aforesaid, as of the date of such request.  It shall be a condition precedent to the making of all advances (including the First Draw) under Facility B, Facility C, and Facility D that each of said representations and warranties is true and correct as of the date of such requested disbursement, except as aforesaid.

## ARTICLE IV
## LOAN AND LOAN DOCUMENTS

Section 4.1    <u>Agreement to Borrow and Lend</u>.

Subject to the terms, provisions and conditions of this Agreement, the Original Loan Documents and the Danske Amended Loan Documents, Borrower agrees to borrow from Lender and Lender agrees to lend to Borrower the Loan, for the purposes of and subject to all of the terms, provisions and conditions contained in this Agreement.

(a)    The Loan shall be made to Borrower on the terms and conditions hereinafter set forth.  The Loan will bear interest at the rate or rates, and will be repaid, as set forth in this Agreement and in the Notes.  Borrower shall use the proceeds of the Loan solely for the purposes specified herein.

(b)    The aggregate amount of the Loan shall not exceed (i) with respect to the Facility A Note, One Hundred Twenty-Three Million Five Hundred Thousand and 00/100 Dollars ($123,500,000.00); and (ii) with respect to the Facility B Note, Eighteen Million and 00/100 Dollars ($18,000,000); (iii) with respect to Facility C Note, Two Million Dollars ($2,000,000); and (iv) with respect to the Facility D Note, Three Million Dollars ($3,000,000). The Facility A Note, the Facility C Note, and the Facility D Note are each not revolving in nature, and any amounts repaid under each respective Note may not be subsequently readvanced. The Facility B Note is revolving in nature, and, subject to satisfaction of the conditions and requirements set forth herein, Borrower may obtain, repay and re-obtain disbursements under the Facility B Note.

(c)    Intentionally deleted.

(d)    Borrower authorizes Lender to disburse the Loan proceeds by crediting the Wells Fargo Income Account, <u>provided</u>, <u>however</u>, that Lender shall not be obligated to use such method.  At Lender's option, disbursements may be made by Lender into an escrow account with an escrow agent designated by Lender and subsequently disbursed by such escrow agent to Borrower.  If such option is exercised, Loan proceeds so disbursed shall be deemed to be disbursed to Borrower on the date of deposit into the escrow, and interest shall accrue thereon from that date, regardless of the date such proceeds are released to Borrower by Title Insurer.

(e)    Borrower and Lender acknowledge and agree that Borrower's total obligations to Lender as of the date hereof are as set forth in this Agreement and the Danske Amended Loan Documents.

-36-

CONFIDENTIAL

*Final*

(f)     The proceeds of the Facility C Loan shall be used solely for the construction and completion of the Lagoon Improvements in accordance with the Lagoon Construction Budget and for no other purpose.

(g)     The proceeds of the Facility D Loan shall be used solely for the construction and completion of the Resort Vertical Improvements in accordance with the Resort Vertical Construction Budget and for no other purpose.

Section 4.2     Loan Documents.

(a)     At the initial closing on March 10, 2006, Borrower and the Borrower Parties executed and delivered to Lender the Original Loan Documents.   At the first loan modification closing on March 9, 2009, Borrower and the Borrowing Parties executed and delivered the 2009 Loan Modification Documents.   At the second modification closing on January 20, 2010, Borrower and Borrowing Parties executed and delivered the 2010 Loan Modification Documents.   Pursuant to the 2012 and 2013 Extension Letters and the 2013 Additional Advance Agreement, certain other terms and conditions of the Original Loan Documents, 2009 Amendment Loan Documents, and 2010 Amended Loan Documents were amended.  Except for (i) this Agreement (which amends and restates the terms of the Amended and Restated Loan Agreement), (ii) the Second Amendment to Amended and Restated Trust Agreement (which amends the Amended and Restated Trust Agreement), and (iii) Facility B Note and Facility C Note (which are given in substitution of the Facility B Note), together with the Facility D Note, the other Original Loan Documents, as reaffirmed by the 2013 Amended Loan Documents, survive as binding and enforceable obligations on the parties named therein, and their permitted successors and assigns.   If there is any conflict among the terms and provisions of this Agreement and any prior loan agreement, the provisions of this Agreement shall govern and be binding upon the parties.

(b)     On the Effective Date, Borrower shall execute and deliver (and cause any party thereto other than Borrower or Lender to execute and deliver) to Lender and Trustee, as appropriate, the loan documents described on Exhibit 4.2(b) attached hereto and incorporated herein (in the presence, where required, of a Mexican notary).

Section 4.3     Term of the Loan.

(a)     Except as provided in sub-section (b) hereof with respect to Facility C and Facility D, all principal, interest, the Profit Participation Fee, the Non-Utilization Fee, and any other charges or sums due hereunder or under the 2013 Amended Loan Documents shall be payable in full on the Maturity Date.

(b)     With respect to Facility C, all principal, interest, Non-Utilization Fees, and any other charges or sums due hereunder or under any other 2013 Amended Loan Document with respect to Facility C shall be payable in full on the Facility C Maturity Date.  With respect to Facility D, all principal, interest, Non-Utilization Fees, and any other charges or sums due hereunder or under any other 2013 Amended Loan Document with respect to Facility D shall be payable in full on the Facility D Maturity Date.

6408141-v15

CONFIDENTIAL

DANSKE_0011122

*Final*

Section 4.4     Prepayments.

(a)     Subject to the provisions of Section 16.2 hereof, Borrower may prepay the Facility A Loan in whole or in part upon not less than three (3) Business Days' written notice to Lender and satisfaction of the following conditions:

(i)     If the prepayment shall be for the full amount of the Facility A Loan, Borrower shall pay: (1) the principal balance due under the Facility A Note, (2) all interest accrued on the Facility A Note through the date of prepayment, (3) the Profit Participation Fee (to the extent not yet paid), (4) the Prepayment Fee, and (5) any Breakage Costs.

(ii)     If the prepayment shall be for less than the full amount of the Facility A Loan, Borrower shall pay: (1) a portion of the principal balance due under the Facility A Note, (2) all interest accrued on the portion of the principal balance that Borrower has elected to prepay (with interest calculated through the date of prepayment), (3) the Prepayment Fee attributable to the portion of the principal balance that Borrower has elected to prepay, and (4) any Breakage Costs attributable to the portion of the principal balance that Borrower has elected to prepay.

(b)     Borrower may prepay the Facility B Loan in whole upon not less than three (3) Business Days' written notice to Lender and satisfaction of the following conditions:  If the prepayment shall be for the full amount of the Facility B Loan with the intention that the Facility B Loan shall be retired in full, Borrower shall pay: (1) the principal balance due under the Facility B Note, (2) all interest accrued on the Facility B Note through the date of prepayment, (3) the Non-Utilization Fee, and (4) any Breakage Costs.

(c)     Borrower may prepay the Facility C Loan in whole upon not less than three (3) Business Days' written notice to Lender and satisfaction of the following conditions:  If the prepayment shall be for the full amount of the Facility C Loan with the intention that the Facility C Loan shall be retired in full, Borrower shall pay: (1) the principal balance due under the Facility C Note, (2) all interest accrued on the Facility C Note through the date of prepayment, (3) the Non-Utilization Fee, and (4) any Breakage Costs.

(d)     Borrower may prepay the Facility D Loan in whole upon not less than three (3) Business Days' written notice to Lender and satisfaction of the following conditions:  If the prepayment shall be for the full amount of the Facility D Loan with the intention that the Facility D Loan shall be retired in full, Borrower shall pay: (1) the principal balance due under the Facility D Note, (2) all interest accrued on the Facility D Note through the date of prepayment, (3) the Non-Utilization Fee, and (4) any Breakage Costs.

Section 4.5     Late Charge.

Any amount due hereunder or under the other Original Loan Documents, Danske Amended Loan Documents, or 2013 Amended Loan Documents which remains unpaid more than ten (10) days after the date said amount was first due and payable shall incur a fee ("**Late**

6408141-v15

CONFIDENTIAL

DANSKE_0011123

*Final*

**Charge**") of five percent (5%) of said amount, which payment shall be in addition to all of Lender's other rights and remedies under the Danske Amended Loan Documents.

**ARTICLE V**
**INTEREST; NON-UTILIZATION FEE; PROFIT PARTICIPATION FEE;**
**MANDATORY PRINCIPAL PAYDOWNS; ORDER OF PRIORITY**

Section 5.1    Interest Rate and Non-Utilization Fee – Facility A.

(a)    Interest shall accrue on the Facility A Loan at the Original Facility A Interest Rate for the period commencing February 1, 2009 and ending December 31, 2011. Commencing January 1, 2012, interest shall accrue on the Facility A Loan at the Applicable Interest Rate.

(b)    Facility A Interest (Prior to January 1, 2012; On and after January 1, 2012).

(i)    For the period expiring December 31, 2011, interest calculated in arrears at the Original Facility A Interest Rate accrued and all such unpaid interest has been capitalized on each Payment Date, whereupon such capitalized interest has been added to the principal balance of the Facility A Note as of such Payment Date and thereafter such amount has accrued interest at the Original Facility A Interest Rate.

(ii)    2012 Facility A Interest.  For the period commencing January 1, 2012, interest calculated in arrears at the Applicable Interest Rate shall be payable on each Quarterly Payment Date.

(c)    All payments (whether of principal, interest or any other amount payable hereunder) shall be deemed credited to Borrower's account only if received by 2:00 p.m. (New York time) on a Business Day; otherwise, such payment shall be deemed received on the next Business Day.

(d)    Interest on the outstanding principal balance of the Facility A Loan shall be calculated by multiplying (i) the actual number of days elapsed in the Interest Period by (ii) a daily rate based on a three hundred sixty (360) day year and then multiplying the product by (iii) the outstanding principal balance of the Facility A Note.

(e)    The Facility A Loan shall bear interest at the Default Rate at any time during which an Event of Default exists.

Section 5.2    Interest Rate; Non-Utilization Fee; Budgeted Principal Paydown – Facility B.

(a)    Interest shall accrue on the Facility B Loan at the Original Facility B Interest Rate for the period commencing February 1, 2009 and ending December 31, 2011. Commencing January 1, 2012, interest shall accrue on the Facility B Loan at the Applicable Interest Rate.

-39-

6408141-v15

*Final*

(b)      Facility B Interest (Prior to January 1, 2012; On and after January 1, 2012).

(i)      For the period expiring December 31, 2011, interest calculated in arrears at the Original Facility B Interest Rate shall be payable on each Payment Date and, notwithstanding the foregoing, unless funds are available for payment of interest on any Payment Date, accrued and unpaid interest shall be capitalized on such Payment Date, whereupon such capitalized interest shall be added to the principal balance of the Facility B Note as of such Payment Date and thereafter such amount shall bear interest at the Facility B Interest Rate.

(ii)      2012 Facility B Interest.  For the period commencing January 1, 2012, interest calculated in arrears at the Applicable Interest Rate shall be payable with respect to Facility B on each Quarterly Payment Date.

(c)      All payments (whether of principal, interest or any other amount payable hereunder) shall be deemed credited to Borrower's account only if received by 2:00 p.m. (New York time) on a Business Day; otherwise, such payment shall be deemed received on the next Business Day.

(d)      Interest on the outstanding principal balance of the Facility B Loan shall be calculated by multiplying (i) the actual number of days elapsed in the Interest Period by (ii) a daily rate based on a three hundred sixty (360) day year and then multiplying the product by (iii) the outstanding principal balance of the Facility B Note.

(e)      The Facility B Note shall bear interest at the Default Rate at any time during which an Event of Default exists.

(f)      Budgeted Principal Paydown.  Borrower shall pay to Lender the Budgeted Principal Paydown (Facility B) on each Payment Date during a month in which such amount is shown as being paid by Borrower on the Non-Resort Time Share and Whole Ownership Budget or such other budget approved by Lender.

(g)      Non-Utilization Fee on Facility B Loan.  The Non-Utilization Fee shall accrue on the Facility B Loan with respect to any undrawn balance of the Loan outstanding from time to time.  The Non-Utilization Fee calculated in arrears shall be payable on each Quarterly Payment Date.

Section 5.3      Interest Rate; Non-Utilization Fee; Budgeted Principal Paydown – Facility C.

(a)      Interest shall accrue on the Facility C Loan at the Applicable Interest Rate.

(b)      Interest, calculated in arrears at the Applicable Interest Rate, shall be payable on each Quarterly Payment Date.

6408141-v15

CONFIDENTIAL                                                                                           DANSKE_0011125

*Final*

(c)     All payments (whether of principal, interest or any other amount payable hereunder) shall be deemed credited to Borrower's account only if received by 2:00 p.m. (New York time) on a Business Day; otherwise, such payment shall be deemed received on the next Business Day.

(d)     Interest on the outstanding principal balance of the Facility C Loan shall be calculated by multiplying (i) the actual number of days elapsed in the Interest Period by (ii) a daily rate based on a three hundred sixty (360) day year and then multiplying the product by (iii) the outstanding principal balance of the Facility C Note.

(e)     The Facility C Note shall bear interest at the Default Rate at any time during which an Event of Default exists.

(f)     <u>Budgeted Principal Paydown</u>.  Borrower shall pay to Lender the Budgeted Principal Paydown (Facility C) on each Payment Date during a month in which such amount is shown as being paid by Borrower on the Consolidated Cash Flow Statement or any other budget as approved by Lender.

(g)     <u>Non-Utilization Fee on Facility C Loan</u>.  The Non-Utilization Fee shall accrue on the Facility C Loan with respect to any undrawn balance of the Loan outstanding from time to time.  The Non-Utilization Fee calculated in arrears shall be payable on each Quarterly Payment Date.

Section 5.4     <u>Interest Rate; Non-Utilization Fee; Budgeted Principal Paydown -  Facility D</u>.

(a)     Interest shall accrue on the Facility D Loan at the Applicable Interest Rate.

(b)     Interest, calculated in arrears at the Facility D Interest Rate, shall be payable on each Quarterly Payment Date.

(c)     All payments (whether of principal, interest or any other amount payable hereunder) shall be deemed credited to Borrower's account only if received by 2:00 p.m. (New York time) on a Business Day; otherwise, such payment shall be deemed received on the next Business Day.

(d)     Interest on the outstanding principal balance of the Facility D Loan shall be calculated by multiplying (i) the actual number of days elapsed in the Interest Period by (ii) a daily rate based on a three hundred sixty (360) day year and then multiplying the product by (iii) the outstanding principal balance of the Facility D Note.

(e)     The Facility D Note shall bear interest at the Default Rate at any time during which an Event of Default exists.

-41-

6408141-v15

CONFIDENTIAL

DANSKE_0011126

*Final*

(f)     Budgeted Principal Paydown.  Borrower shall pay to Lender the Budgeted Principal Paydown (Facility D) on each Payment Date during a month in which such amount is shown as being paid by Borrower on the Consolidated Cash Flow Statement.

(g)     Non-Utilization Fee on Facility D Loan.  The Non-Utilization Fee shall accrue on the Facility D Loan with respect to any undrawn balance of the Loan outstanding from time to time.  The Non-Utilization Fee calculated in arrears shall be payable on each Quarterly Payment Date.

Section 5.5     Monthly Interest Reserve Deposit.

(a)     In addition to the payment obligations due from Borrower on each Quarterly Payment Date with respect to Facility A, Facility B, Facility C and Facility D, on each Monthly Payment Date Borrower shall deposit with Lender to be held in the Interest Reserve Account an amount equal to the Monthly Interest Reserve Deposit as additional security for the Loan.

(b)     Borrower hereby collaterally assigns, grants a security interest in and pledges to Lender, to the extent not prohibited by applicable law, a first-priority continuing security interest in the Interest Reserve Account and all cash, checks, drafts, securities, entitlements, certificates, instruments and other property, including without limitation all deposits and/or wire transfers from time to time deposited or held in or credited to or made to the Interest Reserve Account, including all interest accrued thereon.  Lender shall have all of the rights and remedies with respect to the Interest Reserve Account available to a secured party at law or in equity, including, without limitation, the rights and remedies of a secured party under the UCC, as if such rights and remedies were fully set forth herein.  The Interest Reserve Funds shall be used solely by Borrower for payment of the Quarterly Interest Payments and the Quarterly Non-Utilization Payments.

(c)     If there is any shortfall in funds available in the Interest Reserve Account to pay the Quarterly Interest Payment and Quarterly Non-Utilization Payment when due, then Borrower shall remit the difference to Lender on the applicable Payment Date.  Borrower's failure to make such payment shall be an Event of Default hereunder.  Lender may apply any funds in the Interest Reserve Account to the payment of the Quarterly Interest Payments or Quarterly Non-Utilization Payments due from Borrower.  If an Event of Default shall occur, Lender may apply the Interest Reserve Funds in its sole discretion.

Section 5.6     Resort Vertical Improvements Reserve Funding.

(a)     In addition to the payment obligations due from Borrower on each Payment Date and each Quarterly Payment Date as set forth above, Borrower shall deposit with Lender on each Payment Date to be held in the Resort Vertical Improvements Reserve Account an amount equal to the Monthly Resort Vertical Improvements Reserve Deposit.  Borrower hereby collaterally assigns, grants a security interest in and pledges to Lender, to the extent not prohibited by applicable law, a first-priority continuing security interest in the Resort Vertical Improvements Reserve Account, and all checks, drafts, securities, entitlements, certificates,

-42-

CONFIDENTIAL                                                                      DANSKE_0011127

*Final*

interests, and other property, including, without limitation, all deposits and/or wire transfers from time to time deposited  or held in or credited to or made to the Resort Vertical Improvements Reserve Account.  Lender shall have all rights and remedies with respect to the Resort Vertical Improvements Reserve Account available to a secured party at law or equity, including, without limitation, the rights and remedies of a secured party under the UCC, as if such rights were fully set forth herein.  Resort Vertical Improvements Reserve Funds shall be used by Borrower solely for payment of the Resort Vertical Improvements per draw requests approved by Lender in its sole discretion.

(b)     Disbursement from Resort Vertical Construction Reserve Account. Disbursements from the Resort Vertical Improvements Reserve Account shall occur no more frequently than once each calendar month, unless Lender approves in writing more frequent disbursements.  Borrower may request that Lender disburse funds from the Resort Vertical Improvements Reserve Account to pay for the costs of construction of the Resort Vertical Improvements as set forth on the Resort Vertical Improvements Budget, which amounts shall be disbursed subject to Borrower submitting a draw request as required in Articles 8, 10 and 11 herein.  Subject to Borrower satisfying the requirements and conditions in Articles 8, 10 and 11 hereof, Borrower shall be permitted to receive disbursements from the Resort Vertical Improvements Reserve Account to pay for the costs of construction of the Resort Vertical Improvements prior to Borrower drawing down funds from the Facility D Loan.

Section 5.7     Profit Participation Fee.  Borrower shall pay to Lender, in addition to interest and all other amounts due hereunder with respect to the Loan, the Profit Participation Fee.  The Profit Participation Fee shall be fully earned on the Effective Date, and shall be payable, subject to the Order of Priority, (i) on the Maturity Date, (ii) upon the earlier repayment of the Debt by acceleration or otherwise; or (iii) on such earlier date as Borrower shall elect.

Section 5.8     Order of Priority.  Except as set forth in Section 5.7 (with respect to the payment of the Profit Participation Fee) and except as set forth in Section 13.17 of this Agreement, all payments made by Borrower to Lender shall be applied in the following order of priority:  (i) first, to pay accrued, unpaid interest at the Default Rate (if any) in respect of the Loan, (ii) second, to pay other amounts (*e.g.*, protective advances, Breakage Fees, and the Profit Participation Fee, *pari passu*) due in respect of the Loan, (iii) third, to pay current interest in respect of each of the Facility A Note, Facility B Note, Facility C Note and Facility D Note on a *pari passu* basis, (iv) fourth, to pay the Non-Utilization Fee with respect to the Facility B Note, Facility C Note and Facility D Note on a *pari passu* basis, (v) fifth, to pay the outstanding principal balance of the Facility D Loan; (vi) sixth, to pay the outstanding principal balance of the Facility C Loan; (vii) seventh, to pay the outstanding principal balance of the Facility B Loan; (viii) eighth, to pay the outstanding principal balance of the Facility A Loan. Notwithstanding any provision hereof to the contrary, during the continuance of an Event of Default, Lender may apply any payments received in respect of the Debt in such order, manner and amount as Lender shall determine in its sole discretion.

**ARTICLE VI**

6408141-v15

CONFIDENTIAL

DANSKE_0011128

*Final*

# LOAN EXPENSE AND ADVANCES

Section 6.1     Loan and Administration Expenses.

Borrower shall reimburse Lender, from time to time upon five (5) Business Days' demand therefor, for reasonable, out-of-pocket expenses incurred by Lender in connection with the Loan, including all amounts payable pursuant to Sections 6.2 and 6.3 hereof and any and all other fees owing to Lender pursuant to the 2013 Amended Loan Documents, and also including, without limitation: (i) all recording, filing and registration fees, (ii) all fees of the Trustee under the Trust Agreement, (iii) mortgage or documentary taxes, (iv) insurance premiums, title insurance premiums and other charges of Title Insurer or UCC Title Insurer, (v) premiums and fees payable in connection with the UCC Policy and the Title Policy, (vi) survey fees and charges, (vii) cost of premiums on surety company bonds, (viii) appraisal fees, (ix) insurance consultant's fees, (x) Lender's Consultant's fees, (xi) environmental consultant's fees and (xii) travel-related expenses, and (xii) all costs and expenses (including due diligence-related expenses and legal fees) reasonably incurred by Lender in connection with the preparation, negotiation, execution and delivery of the 2013 Amended Loan Documents and the other closing deliveries.  Further, if any Default or Event of Default occurs or if the Loan is not paid in full when and as due, Borrower shall pay to Lender upon five (5) Business Days' demand therefor, all costs and expenses of Lender (including, without limitation, reasonable attorneys' fees and court costs) incurred in attempting to enforce payment of the Loan or to realize upon the security therefor.  Borrower agrees to pay Lender's fees and disbursements incurred in connection with title updates and title endorsements ordered by the Lender in connection with each disbursement of Loan proceeds.

Section 6.2     Brokerage Fees.

Borrower shall pay all brokerage, finder or similar fees or commissions payable in connection with the transactions contemplated hereby and shall indemnify and hold Lender harmless against all claims, liabilities, costs and expenses (including attorneys' fees and expenses) incurred in relation to any claim by any broker, finder or similar person; provided however, as an inducement to Borrower to make the foregoing undertaking, Lender represents to Borrower that Lender has not dealt with any broker, finder or similar person in connection with this Loan.

Section 6.3     Protective Advances.

If Borrower fails to perform any of Borrower's covenants, agreements or obligations contained in this Agreement or any of the other 2013 Amended Loan Documents (after the expiration of applicable grace periods, except in the event of an emergency or other exigent circumstances), Lender may (but shall not be required to) perform any of such covenants, agreements and obligations, and any amounts expended by Lender in so doing shall be added to the Debt and bear interest at the Default Rate.

6408141-v15

CONFIDENTIAL

DANSKE_0011129