# EXHIBIT 52

## NOTE SPLITTER AND MODIFICATION AGREEMENT

THIS NOTE SPLITTER AND MODIFICATION AGREEMENT ("**Agreement**") is made as of the 26 day of April, 2013, between **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in the Kingdom of Denmark, having an address at 75 King William Street, London EC4N 7DT (together with its successors and/or assigns, "**Lender**"), **DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV**, a Mexican limited liability company, having an address at c/o Kenneth Jowdy, Boulevard Diamante s/n Col. Los Cangrejos, Carretera Cabo San Lucas a Todos Santos Km.6.8, Cabo San Lucas B.C.S., C.P. 23473 ("**Borrower**"), **KENNETH A. JOWDY**, an individual, having an address at 11 Fairmount Drive, Danbury, CT 06810 ("**Jowdy**"), and **DIAMANTE CABO SAN LUCAS LLC**, a Delaware limited liability company, having an address at 131 Deer Hill Avenue, Suite B, Danbury, Connecticut 06811 ("**Diamante Member**"; Diamante Member and Jowdy are referred to herein individually as a "**Guarantor**" and collectively as "**Guarantors**").

RECITALS:

A.      Lender is the lawful owner and holder of that certain Promissory Note dated March 10, 2006, made by Borrower in favor of Lehman Brothers Holdings Inc. ("**Lehman**") ("**Note**"), which Note evidences a loan made by Lehman to Borrower in the principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**"), plus interest thereon and other costs as set forth in that certain Loan Agreement dated March 10, 2006 between Borrower and Lehman.

B.      The Original Loan was made to fund certain acquisition and pre-development costs in connection with the development of a resort project located in the City of Los Cabo, Baja California Sur, Mexico.

C.      The Original Loan is evidenced and secured by, among other things, the Note, the Loan Agreement and certain other loan documents dated March 10, 2006 and identified on the Schedule of Loan Documents attached hereto as **Exhibit A** and incorporated herein (collectively, "**Original Loan Documents**").

D.      Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman, all of Lehman's right, title and interest in the Loan and the Loan Documents.

E.      Lehman and Lender executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor of Lender was perfected in accordance with Mexican law.

F.      Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and, in connection therewith, reaffirmed, amended and/or

-1-

6570209-v4

DANSKE_0011683

amended and restated the Original Loan Documents pursuant to the Amended Loan Documents listed on **Exhibit B** (as reaffirmed, amended and/or amended and restated, "**2009 Amended Loan Documents**").

G.       Among the several modifications made pursuant to the 2009 Amended Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Borrower, as the borrower under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

(i)       Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty-Seven and 83/100 Dollars ($109,138,327.83) ("**Facility A Note**"); and

(ii)      Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00).

H.       Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Amended Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Amended Loan Documents listed on **Exhibit C**, (as reaffirmed and amended, "**2010 Amended Loan Documents**"), which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

I.        Lender, Borrower and Guarantors agreed to extend the Maturity Date of the Loan to June 29, 2012 and modify certain applicable interest rates as more particularly set forth therein in that Extension Letter Agreement dated April 2, 2012.

J.        By that letter agreement dated June 29, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from June 29, 2012 to September 28, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein.

K.       By that letter agreement dated September 28, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from September 28, 2012 to December 31, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein.

L.        By that letter agreement dated December 31, 2012, Lender and Obligors agreed to extend the Maturity Date of the Loan from December 31, 2012 to March 31, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein.

M.       By that letter agreement dated February 15, 2013, Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter.

6570209-v4

CONFIDENTIAL

DANSKE_0011684

N.      By that letter agreement dated March 29, 2013, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

O.      Subject to the terms and conditions set forth in that certain Second Amended and Restated Loan Agreement of even date herewith ("**Loan Agreement**"), Lender, Borrower and Guarantors have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Lender; (ii) splitting the indebtedness evidenced by the Facility B Note into (y) Third Substitute Promissory Note (Facility B) of even date herewith in the amount of $18,000,000; and (z) Promissory Note (Facility C) of even date herewith in the amount of $2,000,000; and (iii) advancing an additional $3,000,000 pursuant to Promissory Note (Facility D) of even date herewith ("**Facility D Note**"), all as more particularly set forth therein. All such documents, amendments, reaffirmations and other instruments entered into in connection with this Agreement shall be referred to as the "**2013 Modification Documents**" as listed on **Exhibit D**, and collectively with the Original Loan Documents, 2009 Amended Loan Documents, and 2010 Amended Loan Documents, the "**Loan Documents**."

O.      Lender, Borrower and Guarantors intend that these Recitals be a material part of this Agreement.

**NOW THEREFORE**, in consideration of the premises, the agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      On and after the date hereof, the principal indebtedness of Twenty Million and 00/100 Dollars ($20,000,000.00) evidenced by the Second Substitute Promissory Note (Facility B) shall be, and hereby is, severed into two portions as follows:

(a)      Third Substitute Promissory Note (Facility B) dated as of the date hereof in the amount of Eighteen Million and 00/100 Dollars ($18,000,000.00) ("**Note B**"), a form of which is attached hereto as **Exhibit E**; and

(b)      Promissory Note (Facility C) dated as of the date hereof in the amount of Two Million and 00/100 Dollars $2,000,000 ("**Note C**"), a form of which is attached hereto as **Exhibit F**.

2.      Note B and Note C will be executed and delivered simultaneously herewith, in complete substitution for the Second Substitute Promissory Note (Facility B). The indebtedness evidenced by Note B and the indebtedness evidenced by Note C constitute, in the aggregate, the same indebtedness evidenced by the Second Substitute Promissory Note (Facility B) and secured by the Loan Documents and do not create any new or further indebtedness.

3.      Nothing contained in this Agreement, Note B, Note C, or in any of the documents amending or reaffirming the Loan Agreement or the other Loan Documents shall be deemed to extinguish the indebtedness evidenced by the Second Substitute Promissory Note (Facility B),

-3-

6570209-v4

nor shall any of the terms of this Agreement, Note B, Note C, or in any of the documents amending or reaffirming the Loan Agreement or the other Loan Documents (collectively, "**Amended Loan Documents**") be deemed a novation of the indebtedness evidenced by the Second Substitute Promissory Note (Facility B) and secured by the Loan Documents.

4.      Borrower and Guarantors represent, warrant and covenant that:

(a)      there are no offsets, claims, counterclaims or defenses against the indebtedness evidenced and secured by the Second Substitute Promissory Note (Facility B), the Loan Agreement or the other Loan Documents;

(b)      upon execution and delivery of this Agreement, Note B, Note C, and the other Amended Loan Documents, there will be no offsets, claims, counterclaims or defenses against the indebtedness evidenced by Note B and Note C and secured by the Loan Documents, as amended and reaffirmed by the Amended Loan Documents;

(c)      the execution and delivery of this Agreement, Note B, Note C, and the other Amended Loan Documents shall not affect the rights and obligations of the parties under, or the validity of the Loan Documents, as amended and reaffirmed by the Amended Loan Documents.

(d)      Borrower has made all payments due and payable under the Note as of the date hereof; and

(e)      Borrower (and the undersigned representative of Borrower) has full power, authority and legal right to execute this Agreement and to keep and observe all of the terms of this Agreement on Borrower's part to be observed or performed.

5.      This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns.

6.      Capitalized terms not defined herein shall have the meaning set forth in the Loan Agreement.

7.      This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York.

8.      If any term, covenant or condition of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such provision.

9.      This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Agreement. The failure of any party hereto to execute this Agreement, or any counterpart hereof, shall not relieve the other signatories of their obligations hereunder.

-4-

6570209-v4

DANSKE_0011686

**[NO FURTHER TEXT ON THIS PAGE]**

6570209-v4

CONFIDENTIAL

DANSKE_0011687

*[Signature Page to Note Splitter and Modification Agreement]*

**IN WITNESS WHEREOF**, this Note Splitter and Modification Agreement has been duly executed by the parties hereto as of the date first above written.

**BORROWER:**

**DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV**, a Mexican limited liability company

By: _____
Name: Kenneth A. Jowdy
Title: General Administrator

CONFIDENTIAL

*[Signature Page to Note Splitter and Modification Agreement]*

**IN WITNESS WHEREOF**, this Note Splitter and Modification Agreement has been duly executed by the parties hereto as of the date first above written.

**GUARANTORS:**

**KENNETH A. JOWDY**

_____
Kenneth A. Jowdy, an individual

**DIAMANTE CABO SAN LUCAS, LLC,** a Delaware limited liability company

By: _____
Name:  Kenneth A. Jowdy
Title:  Managing Member

DANSKE_0011689

*[Signature Page to Note Splitter and Modification Agreement]*

**IN WITNESS WHEREOF**, this Note Splitter and Modification Agreement has been duly executed by the parties hereto as of the date first above written.

LENDER:

**DANSKE BANK A/S, LONDON BRANCH**

By: _____
Name: David Daniel
Title:  Authorised Signatory

By: _____
Name: Peter Hughes
Title: Authorised Signatory

DANSKE_0011690

## EXHIBIT A
## SCHEDULE OF ORIGINAL LOAN DOCUMENTS

(All dated as of March 10, 2006)

1. Loan Agreement by and between Borrower and Lehman

2. Letter Agreement dated May 23, 2006 between Lehman and Borrower modifying the Original Loan Agreement

3. Promissory Note in the principal amount of $125,000,000 by Borrower in favor of Lehman

4. Irrevocable Guarantee Trust Agreement by Borrower in favor of Lehman

5. Deed No. 65,011 (evidencing the conveyance of the Property to the Trust)

6. Assignment of Leases and Rents by Borrower to Lehman

7. Completion Guaranty by Kenneth Jowdy in favor of Lehman

8. Recourse Guaranty by Kenneth Jowdy in favor of Lehman

9. Payment Guaranty by Diamante Cabo San Lucas, Kenneth Jowdy, Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC in favor of Lehman

10. Pledge Agreement (Assets) by Borrower in favor of Lehman

11. Pledge Agreement (Membership Interests in Borrower: US) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

12. UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 11 above

13. Pledge Agreement (Membership Interests in Borrower: Mexico) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

6570209-v4

14. Pledge Agreement (Membership Interests in Diamante Cabo San Lucas) by Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC and Kenneth Jowdy in favor of Lehman

15. UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 14 above

16. Environmental Indemnity Agreement by Borrower and Kenneth Jowdy in favor of Lehman

17. Omnibus Assignment by Borrower to Lehman

6570209-v4

CONFIDENTIAL

DANSKE_0011692

## EXHIBIT B
## SCHEDULE OF 2009 AMENDED LOAN DOCUMENTS

1.   Amended and Restated Loan Agreement (Budget attached as Exhibit A)

2.   Spanish Translation of Amended and Restated Loan Agreement

3.   Note Splitter and Modification Agreement

4.   Substitute Promissory Note (Facility A) - $109,138,327.83

5.   Substitute Promissory Note (Facility B) - $16,000,000.00

6.   Amended and Restated Irrevocable Guaranty Trust Agreement (Mexican Law)

7.   English Translation of Amended and Restated Irrevocable Guaranty Trust Agreement

8.   Reaffirmation of Payment Guaranty

9.   Reaffirmation of Completion Guaranty

10.  Reaffirmation of Recourse Guaranty

11.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Borrower)

12.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

13.  Reaffirmation of Environmental Indemnity Agreement

14.  Reaffirmation of Omnibus Assignment

15.  Reaffirmation of Assignment of Leases and Rents

16.  Waiver of Claims and Release Agreement

17.  Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

18.  UCC-1 Financing Statements (Debtors: PF Ventures, LLC (Connecticut) and David Boyden (Utah))

    A.   PF Ventures – filed with the Connecticut Secretary of State as File Number 2683094

    B.   Boyden – filed with the Utah Department of Commerce as File Number 359857200902

6570209-v4

19.   UCC-3 Financing Statement Amendments (assigning UCC interests from Lehman Brothers Holdings Inc. to Lender)

    A.   Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007960-5)

    B.   Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007961-7)

    C.   Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

    D.   Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

    E.   Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

    F.   CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

    G.   KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

20.   UCC-3 Financing Statement Amendments (correcting debtor information and organizational identification numbers for the following debtors)

    A.   Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

    B.   Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

    C.   Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

    D.   CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

    E.   KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

21.   Amendment to Pledge Agreement (Partnership Interests in Borrower) (Mexican Law)

22.   Notice of Assignment of Bank Accounts in Favor of Trustee (Mexican Law)

23.   Notice of Assignment of (Performance) Bond in Favor of Trustee (Mexican Law)

6570209-v4

DANSKE_0011694

24. Notice of Assignment of (Construction and Service) Agreements in Favor of Trustee (Mexican Law)

6570209-v4

CONFIDENTIAL
DANSKE_0011695

## EXHIBIT C
## SCHEDULE OF 2010 AMENDED LOAN DOCUMENTS

1.  First Amendment to Amended and Restated Loan Agreement and Modification Agreement (Budget attached as Exhibit A)

2.  Spanish Translation of Amended First Amendment to Amended and Restated Loan Agreement and Modification Agreement

3.  First Amendment to Substitute Promissory Note (Facility B) - $20,000,000.00

4.  Confirmation of Payment Guaranty

5.  Confirmation of Completion Guaranty

6.  Confirmation of Recourse Guaranty

7.  Confirmation of Pledge and Security Agreement (Membership Interests in Borrower)

8.  Confirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

9.  Confirmation of Environmental Indemnity Agreement

10. Confirmation of Omnibus Assignment

11. Confirmation of Assignment of Leases and Rents

12. Annotation to Trust

6570209-v4

DANSKE_0011696

## EXHIBIT D
## SCHEDULE OF 2013 MODIFICATION DOCUMENTS

1.  Second Amended and Restated Loan Agreement by and between Borrower, Borrower Parties, and Lender.

2.  Second Amendment to Irrevocable Guaranty Trust Agreement (Spanish and English)

3.  Note Splitter and Modification Agreement between Borrower, Kenneth A. Jowdy, Diamante Member, and Lender.

4.  Second Substitute Promissory Note (Facility A) - $123,500,000.00

5.  Third Substitute Promissory Note (Facility B) - $18,000,000.00

6.  Promissory Note (Facility C) - $2,000,000.00

7.  Promissory Note (Facility D) - $3,000,000.00

8.  Assignment of Time Share Contracts (Mexico Law)

9.  Pledge of Accounts (Mexico Law)

10.  Termination of Assignment of Leases and Rents (US Law)

11.  Termination of U.S. Pledge and Security Agreement (Membership Interests in Borrower)

12.  Reaffirmation of Completion Guaranty

13.  Reaffirmation of Recourse Guaranty

14.  Reaffirmation of Payment Guaranty

15.  Reaffirmation of Pledge and Security Agreement (Assets) by Borrower (Mexican Law)

16.  Reaffirmation of Pledge Agreement (Membership Interests in Borrower - Mexico) by Diamante and Jowdy (Mexican Law)

17.  Reaffirmation of Pledge Agreement (Membership Interests in Diamante Member).

18.  Reaffirmation of Environmental Indemnity Agreement

19.  Reaffirmation of Omnibus Assignment

20.  Reaffirmation of Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

6570209-v4

DANSKE_0011697

21.   Payment Guaranty by Diamante Club, LLC, Jowdy, and Diamante Member

22.   Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante Club, LLC)

23.   Payment Guaranty by Diamante CSL, LLC, Jowdy, and Diamante Member

24.   Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante CSL, LLC)

25.   UCC-1 Financing Statements (Debtor: Diamante Club, LLC) filed with the Connecticut Secretary of State

26.   UCC-1 Financing Statements (Debtor: Diamante CSL, LLC) filed with the Connecticut Secretary of State

27.   UCC-3 Amendments (Nevada and DE)

28.   Deposit Account Control Agreement for Wells Fargo Income Account

29.   Mandate Agreements for four (4) Banorte Income Accounts

6570209-v4

                                                       DANSKE_0011698

## EXHIBIT E

**Form of Third Substitute Promissory Note (Facility B)**

**SEE ATTACHED**

6570209-v4

CONFIDENTIAL

DANSKE_0011699

## THIRD SUBSTITUTE PROMISSORY NOTE

### (FACILITY B)

$18,000,000.00

New York, New York
April ___, 2013

FOR VALUE RECEIVED, **DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV**, a Mexican limited liability company, with variable capital, having an address at c/o Kenneth A. Jowdy, Boulevard Diamante s/n Col. Los Cangrejos, Carretera Cabo San Lucas a Todos Santos Km.6.8, Cabo San Lucas B.C.S., C.P. 23473 ("**Borrower**"), hereby unconditionally promises to pay to the order of **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in the Kingdom of Denmark, having an address at 75 King William Street, London EC4N 7DT ("**Lender**"), as payee, at its office set forth above or at such other place as the holder hereof may from time to time designate in writing, the original principal sum of EIGHTEEN MILLION and 00/100 Dollars ($18,000,000.00), or so much thereof as is advanced and outstanding, together with such other sums as are set forth in this Third Substitute Promissory Note (Facility B) ("**Note**") and that certain Second Amended and Restated Loan Agreement of even dated herewith, including the amendments and modifications each of which is described further on Schedule A attached hereto and incorporated  (as so amended, "**Loan Agreement**").  All such payments shall be paid in lawful money of the United States of America and in accordance with the terms of this Note and Loan Agreement.  All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

### ARTICLE I

### PAYMENT TERMS

Borrower agrees to pay the principal sum of this Note, including any unpaid interest that is capitalized and added, from time to time, to the principal balance of this Note, together with (a) interest at the Interest Rate or, if applicable, the Default Rate, on the outstanding principal balance of this Note, (b) the Profit Participation Fee, (c) the Non-Utilization Fee, and (d) and all other amounts due hereunder and under the Loan Agreement, all in accordance with the terms of this Note and the Loan Agreement.  The outstanding principal balance of this Note may only be prepaid in accordance with the Loan Agreement.  The outstanding principal balance of this Note, accrued and unpaid interest thereon, the Profit Participation Fee, the Non-Utilization Fee, and all other amounts due hereunder and under the Loan Agreement and the other Loan Documents shall be due and payable on the Maturity Date or such other date specified for the payment thereof in the Loan Agreement.

Interest on the outstanding principal balance of this Note shall accrue at the Interest Rate and shall be calculated and payable as provided in the Loan Agreement.

6570605-v3

## ARTICLE II

### DEFAULT AND ACCELERATION

The Debt shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default which continues beyond applicable notice and grace periods.

## ARTICLE III

### DEFAULT INTEREST

Borrower hereby agrees that upon the occurrence and during the continuance of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at the Default Rate. The Default Rate shall be computed from the date on which an Event of Default shall have first occurred until the earlier of the date upon which the Event of Default is cured or waived or the date upon which the Debt is paid in full. Interest calculated at the Default Rate shall be added to the Debt, and shall be deemed secured by the Amended and Restated Trust Agreement and the other Loan Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date for the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender upon the occurrence and continuance of any Event of Default.

## ARTICLE IV

### LOAN DOCUMENTS

This Note is secured by the Amended and Restated Trust Agreement and the other Loan Documents each of which is described on Schedule A. All of the terms, covenants and conditions contained in the Loan Agreement, the Amended and Restated Trust Agreement, and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

## ARTICLE V

### SAVINGS CLAUSE

Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum legal rate, (b) in calculating whether any interest exceeds the maximum legal rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness with respect to the Loan to Borrower by Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the maximum legal rate, any such excess shall be deemed to have

-2-

CONFIDENTIAL

DANSKE_0011701

been applied to the outstanding principal amount of the Loan, with any excess refunded to Borrower. The foregoing provisions of this Article V notwithstanding, Borrower acknowledges and agrees that when accrued and unpaid interest is added to the principal balance of this Note such amount shall become part of the principal indebtedness and the payment thereof is a repayment of principal and not a payment of interest.

ARTICLE VI

**NO ORAL CHANGE**

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

ARTICLE VII

**WAIVERS**

Except as otherwise provided in the Loan Agreement, Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person who may become liable for the payment of all or any part of the Debt. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note. If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. If Borrower is a limited liability company, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the members thereof, and the term "Borrower," as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company shall not thereby be released from any liability hereunder. Nothing in this Article VII shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation, which may be set forth in the Loan Agreement or any of the other Loan Documents.

-3-

6570605-v3

Borrower hereby waives all claims, defenses or setoffs with respect to the negotiations of this Note or any of the Loan Documents.  Borrower represents, warrants and agrees that Lender has made no representations or commitments, oral or written, or undertaken any obligations other than as expressly set forth in this Note and the Loan Documents.

## ARTICLE VIII

### TRANSFER

Subject to and in accordance with the Loan Agreement, upon the transfer of this Note, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable Laws given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter arising after the date of transfer, provided that Lender shall retain all rights hereby given to it and obligations hereunder with respect to any liabilities and the collateral not so transferred.

## ARTICLE IX

### EXCULPATION

The Loan shall be non-recourse to Borrower and its members and their respective officers, directors, employees, members, partners and Affiliates (collectively, "**Exculpated Parties**"), and accordingly, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Note and the other Loan Documents by an action or proceeding wherein a money judgment shall be sought against Borrower or any of the other Exculpated Parties, except that Lender may bring a foreclosure action, an action for extrajudicial sale, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon this Note and the other Loan Documents, and the interests in the Project and any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents; provided, however, that, except as specifically provided in this Article IX, any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Project and in any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents.  By accepting this Note and the other Loan Documents, Lender agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower or the Exculpated Parties in any such action or proceeding, under, by reason of or in connection with this Note or the other Loan Documents.  The provisions of this Article IX shall not, however: (a) constitute a waiver, release or impairment of any obligation evidenced or secured by this Note or the other Loan Documents; (b) impair the right of Lender to name Borrower as a party defendant in any action or suit for extrajudicial sale under the Amended and Restated Trust Agreement; (c) affect the validity or enforceability of any guaranty or indemnity made in connection with this Note or the other Loan Documents against the party having made the same; (d) impair the right of Lender to obtain the appointment of a receiver; (e) impair the enforcement of the Reaffirmation of Assignment of Leases and Rents; (f) impair the right of Lender to bring suit with respect to fraud or intentional misrepresentation by Borrower

-4-

CONFIDENTIAL

DANSKE_0011703

or any other person or entity in connection with this Note or the other Loan Documents; or (g) affect the validity or enforceability of the Reaffirmation of Environmental Indemnity or limit the liability of Borrower or any other party thereunder.

Nothing in this Article IX shall be deemed to be a waiver of any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt in accordance with this Note and the other Loan Documents.

Notwithstanding the foregoing provisions of this Article IX or any other provision in the Loan Documents, Borrower shall be fully liable, and shall indemnify and defend Lender from and against any loss, cost, liability, judgment, claim, damage or expense sustained, suffered or incurred by Lender (including, without limitation, reasonable attorneys' fees) arising out of or attributable or relating to:

(i)      fraud or intentional misrepresentation by Borrower or the other Exculpated Parties in connection with the Loan;

(ii)      the gross negligence or willful misconduct of Borrower or any of the Exculpated Parties, or physical waste of the Project which is attributable to the acts or omissions of Borrower or any of the Exculpated Parties;

(iii)      the breach of provisions in the Loan Agreement concerning Environmental Laws and Hazardous Material, including any obligation to indemnify Lender with respect to such Environmental Laws or Hazardous Material;

(iv)      the removal or disposal of any portion of the Personal Property (other than fixtures, furniture and equipment in the ordinary course of business, or as otherwise permitted under the Loan Documents);

(v)      the misapplication or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Project; (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Project; or (C) during the continuance of an Event of Default, rents, issues, profits, proceeds, awards, settlements, accounts, or other amounts received by Borrower;

(vi)      any financial information concerning Borrower or any Borrower Principal (hereinafter defined) delivered to Lender by Borrower or such Borrower Principal proving to be fraudulent in any material respect or misrepresenting in any material respect the financial condition of Borrower or such Borrower Principal;

(vii)      costs incurred by Lender (including reasonable attorneys' fees) in connection with the collection or enforcement of the Debt;

(viii)      any security deposits collected with respect to the Project which are not delivered to Lender upon the extrajudicial sale of the Project or action in lieu thereof;

-5-

6570605-v3

(ix)     Borrower's failure to permit on-site inspections of the Project or to provide financial reports and information pertaining to the Project as required by the Loan Agreement, unless, in either case, such failure is a result of good faith error and is cured within five (5) days after notice is delivered to Borrower,

(x)     Borrower's failure to comply with the single-purpose entity provisions of the Loan Documents such that Lender suffers any material damage, liability or expense (including reasonable attorneys' fees and disbursements, whether or not litigation has commenced);

(xi)     Borrower's failure to maintain insurance in respect of Borrower or the Project in accordance with the terms of the Loan Agreement;

(xii)     the creation or imposition of any construction, mechanic's or materialman's liens or other encumbrances upon or with respect to the Land or the Project;

(xiii)    the failure to pay Taxes;

(xiv)     Borrower's failure to obtain Lender's written consent prior to entering into, modifying or amending any Lease, Construction Contract or any other contract where such consent is required pursuant to the Loan Documents; and

(xv)     Borrower's violation of Article XXII of the Loan Agreement.

For purposes of this Note, the term "**Borrower Principal**" shall mean Kenneth A. Jowdy.  The liabilities listed in clause (i) through (xv) of this Paragraph are collectively known as the "**Partial Recourse Obligations**".

Notwithstanding the provisions of the foregoing paragraph, the agreement of Lender not to pursue recourse liability as set forth in this Article IX SHALL BECOME NULL AND VOID and shall be of no further force or effect in the event of (1) Borrower's failure to obtain Lender's prior written consent to any subordinate financing in respect of the Project; (2) Borrower's failure to obtain Lender's prior written consent to any Transfer, to the extent such consent is required under the Loan Agreement; (3) the Project or any part thereof becoming an asset in (A) a voluntary bankruptcy or insolvency proceeding, or (B) an involuntary bankruptcy or insolvency proceeding where Lender reasonably determines that Borrower (including Borrower's employees, partners, directors or Affiliates) has colluded with any Persons to cause the filing of the same (other than an involuntary bankruptcy or insolvency proceeding commenced or approved in writing by Lender), or (4) any attempt by Borrower in bad faith to hinder or delay Lender in the enforcement of its rights under the Loan Documents.   The liabilities listed in clauses (1) through (4) of this Paragraph are collectively known as the "**Full Recourse Obligations**".  The Full Recourse Obligations and the Partial Recourse Obligations are collectively referred to as the "**Recourse Obligations**".

-6-

CONFIDENTIAL                                                                                      DANSKE_0011705

## ARTICLE X

## NOT A NOVATION

This Note shall not extinguish the obligations under the Promissory Note dated March 10, 2006 in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) given by Borrower to Lehman Brothers Holdings Inc., and subsequently assigned by Lehman Brothers Holdings Inc. to Lender, and the Substitute Promissory Note (Facility A) dated March 9, 2009 in the principal amount of $109,138,327.83 given by Borrower to Lender, and the Substitute Promissory Note (Facility B) dated March 9, 2009 in the principal amount of $16,000,000 given by Borrower to Lender ("**Substitute Promissory Note (Facility B)**") as modified by the First Amendment to Substitute Promissory Note (Facility B) dated January 29, 2010 which increased the principal balance amount of Substitute Promissory Note (Facility B) from $16,000,000 to $20,000,000, as modified by the Note Splitter and Modification Agreement of even date herewith which split Second Substitute Promissory Note (Facility B) into this Third Substitute Promissory Note (Facility B) and Promissory Note (Facility C), and shall not constitute a novation thereof.   The provisions of the preceding sentence notwithstanding, the parties agree that the payment obligations of Borrower to Lender described in this Note together with the payment obligations described in Promissory Note (Facility C) replace the payment obligations of Borrower to Lender in the Second Substitute Promissory Note (Facility B).

## ARTICLE XI

## GOVERNING LAW; SUBMISSION TO JURISDICTION

**THIS NOTE WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.   IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AND, BY ITS ACCEPTANCE HEREOF, LENDER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE AND THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

6570605-v3

CONFIDENTIAL

DANSKE_0011706

TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY, AT THE OPTION OF LENDER, BE INSTITUTED IN ANY FEDERAL OR STATE COURT SITTING IN NEW YORK COUNTY, NEW YORK, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING.

## ARTICLE XII

## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with the Loan Agreement.

## ARTICLE XIII

## TRIAL BY JURY

BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, LENDER EACH AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EITHER PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER.

## ARTICLE XIV

## MISCELLANEOUS

ALL PAYMENTS BY BORROWER HEREUNDER AND UNDER ANY OF THE OTHER LOAN DOCUMENTS SHALL BE MADE FREE AND CLEAR OF AND WITHOUT DEDUCTION FOR ANY PRESENT OR FUTURE TAXES, LEVIES, IMPOSTS, DEDUCTIONS, CHARGES OR WITHHOLDINGS, AND ANY LIABILITIES WITH RESPECT THERETO, <u>EXCLUDING</u>, IN THE CASE OF LENDER, TAXES IMPOSED ON ITS NET INCOME OR CAPITAL AND FRANCHISE TAXES IMPOSED ON IT BY THE JURISDICTION UNDER THE LAWS OF WHICH LENDER IS ORGANIZED OR ANY POLITICAL SUBDIVISION THEREOF (ALL SUCH NON-EXCLUDED TAXES, LEVIES, IMPOSTS, DEDUCTIONS, CHARGES WITHHOLDINGS AND LIABILITIES BEING HEREINAFTER REFERRED TO AS "**INCLUDED TAXES**"). IF BORROWER SHALL BE REQUIRED BY LAW TO DEDUCT ANY INCLUDED TAXES FROM OR IN RESPECT OF ANY SUM PAYABLE HEREUNDER, OR UNDER ANY ANCILLARY AGREEMENT, TO

-8-

6570605-v3

DANSKE_0011707

LENDER (I) THE SUM PAYABLE SHALL BE INCREASED AS MAY BE NECESSARY SO THAT AFTER MAKING ALL REQUIRED DEDUCTIONS (INCLUDING DEDUCTIONS APPLICABLE TO ADDITIONAL SUMS PAYABLE UNDER THIS SECTION) LENDER RECEIVES AN AMOUNT EQUAL TO THE SUM IT WOULD HAVE RECEIVED HAD NO SUCH DEDUCTIONS BEEN MADE, (II) BORROWER SHALL MAKE SUCH DEDUCTION, AND (III) BORROWER SHALL PAY THE FULL AMOUNT DEDUCTED TO THE RELEVANT TAXATION AUTHORITY OR OTHER AUTHORITY IN ACCORDANCE WITH APPLICABLE LAW. BORROWER WILL INDEMNIFY LENDER FOR THE FULL AMOUNT OF INCLUDED TAXES PAID BY LENDER, ANY LIABILITY (INCLUDING PENALTIES, INTEREST AND EXPENSES) ARISING THEREFROM OR WITH RESPECT THERETO, WHETHER OR NOT SUCH INCLUDED TAXES WERE CORRECTLY OR LEGALLY ASSERTED.  PAYMENT UNDER THIS INDEMNIFICATION SHALL BE MADE WITHIN 10 DAYS FROM THE DATE LENDER MAKES WRITTEN DEMAND THEREFOR.  A CERTIFICATE AS TO THE AMOUNT OF SUCH INCLUDED TAXES SHALL BE SUBMITTED TO BORROWER BY LENDER AND SHALL, IN THE ABSENCE OF MANIFEST ERROR, BE PRIMA FACIE EVIDENCE OF THE AMOUNT DUE BY BORROWER TO LENDER WITHIN 10 DAYS AFTER THE DATE OF ANY PAYMENT OF INCLUDED TAXES BY BORROWER TO THE APPROPRIATE TAXING AUTHORITY, BORROWER WILL FURNISH TO LENDER EVIDENCE OF PAYMENT THEREOF SATISFACTORY TO LENDER.  WITHOUT PREJUDICE TO THE SURVIVAL OF ANY OTHER AGREEMENT OF BORROWER HEREUNDER, THE AGREEMENTS AND OBLIGATIONS OF BORROWER HEREUNDER WILL SURVIVE REPAYMENT OF THE LOAN.

**TIME IS OF THE ESSENCE WITH RESPECT TO EACH PROVISION OF THIS NOTE.**

**[NO FURTHER TEXT ON THIS PAGE]**

6570605-v3

CONFIDENTIAL

DANSKE_0011708

IN WITNESS WHEREOF, Borrower has duly executed this Third Substitute Promissory Note (Facility B) as of the day and year first above written.

**BORROWER:**

DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV, a Mexican limited liability company with variable capital

By: _____
Name:  Kenneth A. Jowdy
Title:  General Administrator

-10-

DANSKE_0011709

## SCHEDULE A

## LOAN DOCUMENTS (DESCRIPTION)

Reference is made to that certain loan made by Lehman Brothers Holdings Inc. ("**Lehman**") to Diamante Cabo San Lucas S. De R. L. De C.V. a Mexican limited liability company ("**Borrower**") in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**") to be used to fund certain acquisition and pre-development costs in connection with that certain project located in the City of Cabo San Lucas, Baja California Sur, Mexico.

The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 1 ("**Original Loan Documents**"). Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

Lehman and Danske Bank A/S, London Branch, the London Branch of a company incorporated in Denmark ("**Lender**") executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor or Lender was perfected in accordance with Mexican law.

Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to certain Loan Documents listed on Schedule 2 (as reaffirmed, amended and/or amended and restated, "**2009 Loan Documents**").

Among the several modifications made pursuant to the 2009 Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Borrower, as the borrower under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:
    (i)    Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty Seven and 83/100 Dollars ($109,138,327.83); and

    (ii)   Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("**Facility B Note**").

Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Loan Documents listed on Schedule 3, (as reaffirmed and amended, "**2010 Loan Documents**") which amendments include, *inter alia,* increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated April 2, 2012.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated June 29, 2012.

-11-

6570605-v3

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated September 28, 2012.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated December 31, 2012.

Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter.

By that letter agreement dated March 29, 2013, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

Lender, Borrower and Guarantors have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Lender; (ii) splitting the indebtedness evidenced by Facility B Note into (y) Second Substitute Promissory Note (Facility B) of even date herewith in the amount of $18,000,000; and (z) Promissory Note (Facility C) of even date herewith in the amount of $2,000,000; and (iii) advancing an additional $3,000,000 pursuant to this Promissory Note (Facility D), all as more particularly set forth herein. All such documents, amendments, reaffirmations and other instruments entered into in connection with this Agreement shall be referred to as the "**2013 Modification Documents**" as listed on Schedule 4.

-12-

CONFIDENTIAL

DANSKE_0011711

## SCHEDULE 1

### ORIGINAL LOAN DOCUMENTS

### (All dated as of March 10, 2006 unless otherwise described)

1.    Loan Agreement by and between Borrower and Lehman

2.    Letter Agreement dated May 23, 2006 between Lehman and Borrower modifying the Original Loan Agreement

3.    Promissory Note in the principal amount of $125,000,000 by Borrower in favor of Lehman

4.    Irrevocable Guarantee Trust Agreement by Borrower in favor of Lehman

5.    Deed No. 65,011 (evidencing the conveyance of the Property to the Trust)

6.    Assignment of Leases and Rents by Borrower to Lehman

7.    Completion Guaranty by Jowdy in favor of Lehman

8.    Recourse Guaranty by Jowdy in favor of Lehman

9.    Payment Guaranty by Diamante Member, Jowdy and the Member Guarantors in favor of Lehman

10.   Pledge Agreement (Assets) by Borrower in favor of Lehman

11.   Pledge Agreement (Membership Interests in Borrower: US) by Diamante Member and Jowdy in favor of Lehman

12.   UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 11 above

13.   Pledge Agreement (Membership Interests in Borrower: Mexico) by Diamante Member and Jowdy in favor of Lehman

14.   Pledge Agreement (Membership Interests in Diamante Member) by Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC and Jowdy in favor of Lehman

-13-

CONFIDENTIAL

DANSKE_0011712

15.   UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 14 above

16.   Environmental Indemnity Agreement by Borrower and Jowdy in favor of Lehman

17.   Omnibus Assignment by Borrower to Lehman

-14-

6570605-v3

CONFIDENTIAL

## SCHEDULE 2

## 2009 LOAN DOCUMENTS

1.     Amended and Restated Loan Agreement (Budget attached as Exhibit A)

2.     Spanish Translation of Amended and Restated Loan Agreement

3.     Note Splitter and Modification Agreement

4.     Substitute Promissory Note (Facility A) - $109,138,327.83

5.     Substitute Promissory Note (Facility B) - $16,000,000.00

6.     Amended and Restated Irrevocable Guaranty Trust Agreement (Mexican Law)

7.     English Translation of Amended and Restated Irrevocable Guaranty Trust Agreement

8.     Reaffirmation of Payment Guaranty

9.     Reaffirmation of Completion Guaranty

10.    Reaffirmation of Recourse Guaranty

11.    Reaffirmation of Pledge and Security Agreement (Membership Interests in Borrower)

12.    Reaffirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

13.    Reaffirmation of Environmental Indemnity Agreement

14.    Reaffirmation of Omnibus Assignment

15.    Reaffirmation of Assignment of Leases and Rents

16.    Waiver of Claims and Release Agreement

17.    Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

18.    UCC-1 Financing Statements (Debtors: PF Ventures, LLC (Connecticut) and David Boyden (Utah))

      A.     PF Ventures – filed with the Connecticut Secretary of State as File Number 2683094

-15-

6570605-v3

       B.      Boyden – filed with the Utah Department of Commerce as File Number 359857200902

19.    UCC-3 Financing Statement Amendments (assigning UCC interests from Lehman Brothers Holdings Inc. to Lender)

       A.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007960-5)

       B.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007961-7)

       C.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

       D.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

       E.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

       F.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

       G.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

20.    UCC-3 Financing Statement Amendments (correcting debtor information and organizational identification numbers for the following debtors)

       A.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

       B.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

       C.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

       D.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

       E.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

21.    Amendment to Pledge Agreement (Partnership Interests in Borrower) (Mexican Law)

22.    Notice of Assignment of Bank Accounts in Favor of Trustee (Mexican Law)

23.    Notice of Assignment of (Performance) Bond in Favor of Trustee (Mexican Law)

-16-

6570605-v3

DANSKE_0011715

24.   Notice of Assignment of (Construction and Service) Agreements in Favor of Trustee (Mexican Law)

6570605-v3

CONFIDENTIAL    DANSKE_0011716

## SCHEDULE 3

### 2010 LOAN DOCUMENTS

1.   First Amendment to Amended and Restated Loan Agreement and Modification Agreement (Budget attached as Exhibit A)

2.   Spanish Translation of Amended First Amendment to Amended and Restated Loan Agreement and Modification Agreement

3.   First Amendment to Substitute Promissory Note (Facility B) - $20,000,000.00

4.   Confirmation of Payment Guaranty

5.   Confirmation of Completion Guaranty

6.   Confirmation of Recourse Guaranty

7.   Confirmation of Pledge and Security Agreement (Membership Interests in Borrower)

8.   Confirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

9.   Confirmation of Environmental Indemnity Agreement

10.  Confirmation of Omnibus Assignment

11.  Confirmation of Assignment of Leases and Rents

12.  Annotation to Trust

-18-

6570605-v3

CONFIDENTIAL                                                                        DANSKE_0011717

## SCHEDULE 4

### 2013 MODIFICATION DOCUMENTS

1.  Second Amended and Restated Loan Agreement by and between Borrower, Borrower Parties, and Lender.

2.  Second Amendment to Irrevocable Guaranty Trust Agreement (Spanish and English)

3.  Note Splitter and Modification Agreement between Borrower, Kenneth A. Jowdy, Diamante Member, and Lender.

4.  Second Substitute Promissory Note (Facility A) - $123,500,000.00

5.  Third Substitute Promissory Note (Facility B) - $18,000,000.00

6.  Promissory Note (Facility C) - $2,000,000.00

7.  Promissory Note (Facility D) - $3,000,000.00

8.  Assignment of Time Share Contracts (Mexico Law)

9.  Pledge of Accounts (Mexico Law)

10. Termination of Assignment of Leases and Rents (US Law)

11. Termination of U.S. Pledge and Security Agreement (Membership Interests in Borrower)

12. Reaffirmation of Completion Guaranty

13. Reaffirmation of Recourse Guaranty

14. Reaffirmation of Payment Guaranty

15. Reaffirmation of Pledge and Security Agreement (Assets) by Borrower (Mexican Law)

16. Reaffirmation of Pledge Agreement (Membership Interests in Borrower - Mexico) by Diamante and Jowdy (Mexican Law)

17. Reaffirmation of Pledge Agreement (Membership Interests in Diamante Member).

18. Reaffirmation of Environmental Indemnity Agreement

19. Reaffirmation of Omnibus Assignment

-19-

6570605-v3

DANSKE_0011718

20.  Reaffirmation of Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

21.  Payment Guaranty by Diamante Club, LLC, Jowdy, and Diamante Member

22.  Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante Club, LLC)

23.  Payment Guaranty by Diamante CSL, LLC, Jowdy, and Diamante Member

24.  Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante CSL, LLC)

25.  UCC-1 Financing Statements (Debtor: Diamante Club, LLC) filed with the Connecticut Secretary of State

26.  UCC-1 Financing Statements (Debtor: Diamante CSL, LLC) filed with the Connecticut Secretary of State

27.  UCC-3 Amendments (Nevada and DE)

28.  Deposit Account Control Agreement for Wells Fargo Income Account

29.  Mandate Agreements for four (4) Banorte Income Accounts

6570605-v3

CONFIDENTIAL                                                                                          DANSKE_0011719

## EXHIBIT F

**Form of Promissory Note (Facility C)**

**SEE ATTACHED**

CONFIDENTIAL

<u>PROMISSORY NOTE</u>

<u>(FACILITY C)</u>

$2,000,000.00

New York, New York
April ___, 2013


FOR VALUE RECEIVED, **DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV**, a Mexican limited liability company, with variable capital, having an address at c/o Kenneth Jowdy, Boulevard Diamante s/n Col. Los Cangrejos, Carretera Cabo San Lucas a Todos Santos Km.6.8, Cabo San Lucas B.C.S., C.P. 23473 ("**Borrower**"), hereby unconditionally promises to pay to the order of **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in the Kingdom of Denmark, having an address at 75 King William Street, London EC4N 7DT ("**Lender**"), as payee, at its office set forth above or at such other place as the holder hereof may from time to time designate in writing, the original principal sum of TWO MILLION and 00/100 Dollars ($2,000,000.00), or so much thereof as is advanced and outstanding, together with such other sums as are set forth in this Promissory Note (Facility C) ("**Note**") and that certain Second Amended and Restated Loan Agreement of even date herewith, including the amendments and modifications each of which is described further on Schedule A attached hereto and incorporated (as so amended, "**Loan Agreement**"). All such payments shall be paid in lawful money of the United States of America and in accordance with the terms of this Note and Loan Agreement. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

ARTICLE I

**PAYMENT TERMS**

Borrower agrees to pay the principal sum of this Note, including any unpaid interest that is capitalized and added, from time to time, to the principal balance of this Note, together with (a) interest at the Interest Rate or, if applicable, the Default Rate, on the outstanding principal balance of this Note, (b) the Profit Participation Fee, (c) the Non-Utilization Fee, and (d) and all other amounts due hereunder and under the Loan Agreement, all in accordance with the terms of this Note and the Loan Agreement. The outstanding principal balance of this Note may only be prepaid in accordance with the Loan Agreement. The outstanding principal balance of this Note, accrued and unpaid interest thereon, the Non-Utilization Fee, and all other amounts due hereunder and under the Loan Agreement and the other Loan Documents shall be due and payable on the Facility C Maturity Date or such other date specified for the payment thereof in the Loan Agreement.

Interest on the outstanding principal balance of this Note shall accrue at the Interest Rate and shall be calculated and payable as provided in the Loan Agreement.

6570797-v3

## ARTICLE II

### DEFAULT AND ACCELERATION

The Debt shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid on or prior to the date when due or if not paid on the Facility C Maturity Date or on the happening of any other Event of Default which continues beyond applicable notice and grace periods.

## ARTICLE III

### DEFAULT INTEREST

Borrower hereby agrees that upon the occurrence and during the continuance of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at the Default Rate. The Default Rate shall be computed from the date on which an Event of Default shall have first occurred until the earlier of the date upon which the Event of Default is cured or waived or the date upon which the Debt is paid in full. Interest calculated at the Default Rate shall be added to the Debt, and shall be deemed secured by the Amended and Restated Trust Agreement and the other Loan Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date for the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender upon the occurrence and continuance of any Event of Default.

## ARTICLE IV

### LOAN DOCUMENTS

This Note is secured by the Amended and Restated Trust Agreement and the other Loan Documents each of which is described on <u>Schedule A</u>. All of the terms, covenants and conditions contained in the Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

## ARTICLE V

### SAVINGS CLAUSE

Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum legal rate, (b) in calculating whether any interest exceeds the maximum legal rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness with respect to the Loan to Borrower by Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the maximum legal rate, any such excess shall be deemed to have been applied to the outstanding principal amount of the Loan, with any excess refunded to

-2-

6570797-v3

CONFIDENTIAL

DANSKE_0011722

Borrower.  The foregoing provisions of this Article V notwithstanding, Borrower acknowledges and agrees that when accrued and unpaid interest is added to the principal balance of this Note such amount shall become part of the principal indebtedness and the payment thereof is a repayment of principal and not a payment of interest.

ARTICLE VI

<strong>NO ORAL CHANGE</strong>

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

ARTICLE VII

<strong>WAIVERS</strong>

Except as otherwise provided in the Loan Agreement, Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person who may become liable for the payment of all or any part of the Debt.  No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note.  If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership shall not thereby be released from any liability.  If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder.  If Borrower is a limited liability company, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the members thereof, and the term "Borrower," as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company shall not thereby be released from any liability hereunder.  Nothing in this Article VII shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation, which may be set forth in the Loan Agreement or any of the other Loan Documents.

Borrower hereby waives all claims, defenses or setoffs with respect to the negotiations of this Note or any of the Loan Documents.  Borrower represents, warrants and

-3-

6570797-v3

agrees that Lender has made no representations or commitments, oral or written, or undertaken any obligations other than as expressly set forth in this Note and the Loan Documents.

## ARTICLE VIII

### TRANSFER

Subject to and in accordance with the Loan Agreement, upon the transfer of this Note, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable Laws given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter arising after the date of transfer, provided that Lender shall retain all rights hereby given to it and obligations hereunder with respect to any liabilities and the collateral not so transferred.

## ARTICLE IX

### EXCULPATION

The Loan shall be non-recourse to Borrower and its members and their respective officers, directors, employees, members, partners and Affiliates (collectively, "**Exculpated Parties**"), and accordingly, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Note and the other Loan Documents by an action or proceeding wherein a money judgment shall be sought against Borrower or any of the other Exculpated Parties, except that Lender may bring a foreclosure action, an action for extrajudicial sale, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon this Note and the other Loan Documents, and the interests in the Project and any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents; provided, however, that, except as specifically provided in this Article IX, any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Project and in any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents.  By accepting this Note and the other Loan Documents, Lender agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower or the Exculpated Parties in any such action or proceeding, under, by reason of or in connection with this Note or the other Loan Documents.  The provisions of this Article IX shall not, however: (a) constitute a waiver, release or impairment of any obligation evidenced or secured by this Note or the other Loan Documents; (b) impair the right of Lender to name Borrower as a party defendant in any action or suit for extrajudicial sale under the Amended and Restated Trust Agreement; (c) affect the validity or enforceability of any guaranty or indemnity made in connection with this Note or the other Loan Documents against the party having made the same; (d) impair the right of Lender to obtain the appointment of a receiver; (e) impair the enforcement of the Reaffirmation of Assignment of Leases and Rents; (f) impair the right of Lender to bring suit with respect to fraud or intentional misrepresentation by Borrower or any other person or entity in connection with this Note or the other Loan Documents; or (g)

-4-

CONFIDENTIAL

DANSKE_0011724

affect the validity or enforceability of the Reaffirmation of Environmental Indemnity or limit the liability of Borrower or any other party thereunder.

Nothing in this Article IX shall be deemed to be a waiver of any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt in accordance with this Note and the other Loan Documents.

Notwithstanding the foregoing provisions of this Article IX or any other provision in the Loan Documents, Borrower shall be fully liable, and shall indemnify and defend Lender from and against any loss, cost, liability, judgment, claim, damage or expense sustained, suffered or incurred by Lender (including, without limitation, reasonable attorneys' fees) arising out of or attributable or relating to:

(i)      fraud or intentional misrepresentation by Borrower or the other Exculpated Parties in connection with the Loan;

(ii)      the gross negligence or willful misconduct of Borrower or any of the Exculpated Parties, or physical waste of the Project which is attributable to the acts or omissions of Borrower or any of the Exculpated Parties;

(iii)      the breach of provisions in the Loan Agreement concerning Environmental Laws and Hazardous Material, including any obligation to indemnify Lender with respect to such Environmental Laws or Hazardous Material;

(iv)      the removal or disposal of any portion of the Personal Property (other than fixtures, furniture and equipment in the ordinary course of business, or as otherwise permitted under the Loan Documents);

(v)      the misapplication or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Project; (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Project; or (C) during the continuance of an Event of Default, rents, issues, profits, proceeds, awards, settlements, accounts, or other amounts received by Borrower;

(vi)      any financial information concerning Borrower or any Borrower Principal (hereinafter defined) delivered to Lender by Borrower or such Borrower Principal proving to be fraudulent in any material respect or misrepresenting in any material respect the financial condition of Borrower or such Borrower Principal;

(vii)      costs incurred by Lender (including reasonable attorneys' fees) in connection with the collection or enforcement of the Debt;

(viii)      any security deposits collected with respect to the Project which are not delivered to Lender upon the extrajudicial sale of the Project or action in lieu thereof;

-5-

6570797-v3

(ix)     Borrower's failure to permit on-site inspections of the Project or to provide financial reports and information pertaining to the Project as required by the Loan Agreement, unless, in either case, such failure is a result of good faith error and is cured within five (5) days after notice is delivered to Borrower,

(x)     Borrower's failure to comply with the single-purpose entity provisions of the Loan Documents such that Lender suffers any material damage, liability or expense (including reasonable attorneys' fees and disbursements, whether or not litigation has commenced);

(xi)     Borrower's failure to maintain insurance in respect of Borrower or the Project in accordance with the terms of the Loan Agreement;

(xii)     the creation or imposition of any construction, mechanic's or materialman's liens or other encumbrances upon or with respect to the Land or the Project;

(xiii)     the failure to pay Taxes;

(xiv)     Borrower's failure to obtain Lender's written consent prior to entering into, modifying or amending any Lease, Construction Contract or any other contract where such consent is required pursuant to the Loan Documents; and

(xv)     Borrower's violation of Article XXII of the Loan Agreement.

For purposes of this Note, the term "**Borrower Principal**" shall mean Kenneth A. Jowdy.  The liabilities listed in clause (i) through (xv) of this Paragraph are collectively known as the "**Partial Recourse Obligations**".

Notwithstanding the provisions of the foregoing paragraph, the agreement of Lender not to pursue recourse liability as set forth in this Article IX SHALL BECOME NULL AND VOID and shall be of no further force or effect in the event of (1) Borrower's failure to obtain Lender's prior written consent to any subordinate financing in respect of the Project; (2) Borrower's failure to obtain Lender's prior written consent to any Transfer, to the extent such consent is required under the Loan Agreement; (3) the Project or any part thereof becoming an asset in (A) a voluntary bankruptcy or insolvency proceeding, or (B) an involuntary bankruptcy or insolvency proceeding where Lender reasonably determines that Borrower (including Borrower's employees, partners, directors or Affiliates) has colluded with any Persons to cause the filing of the same (other than an involuntary bankruptcy or insolvency proceeding commenced or approved in writing by Lender), or (4) any attempt by Borrower in bad faith to hinder or delay Lender in the enforcement of its rights under the Loan Documents.  The liabilities listed in clauses (1) through (4) of this Paragraph are collectively known as the "**Full Recourse Obligations**".  The Full Recourse Obligations and the Partial Recourse Obligations are collectively referred to as the "**Recourse Obligations**".

-6-

CONFIDENTIAL

# ARTICLE X

## NOT A NOVATION

This Note shall not extinguish the obligations under the Promissory Note dated March 10, 2006 in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) given by Borrower to Lehman Brothers Holdings Inc., and subsequently assigned by Lehman Brothers Holdings Inc. to Lender, and the Substitute Promissory Note (Facility A) dated March 9, 2009 in the principal amount of $109,138,327.83 given by Borrower to Lender, and the Substitute Promissory Note (Facility B) dated March 9, 2009 in the principal amount of $16,000,000 given by Borrower to Lender ("**Substitute Promissory Note (Facility B)**") as modified by the First Amendment to Substitute Promissory Note (Facility B) dated January 29, 2010 which increased the principal balance amount of Substitute Promissory Note (Facility B) from $16,000,000 to $20,000,000, as modified by the Note Splitter and Modification Agreement of even date herewith which split Second Substitute Promissory Note (Facility B) into Third Substitute Promissory Note (Facility B) and this Promissory Note (Facility C), and shall not constitute a novation thereof.    The provisions of the preceding sentence notwithstanding, the parties agree that the payment obligations of Borrower to Lender described in this Note together with the payment obligations described in the Third Substitute Promissory Note (Facility B) replace the payment obligations of Borrower to Lender in the Second Substitute Promissory Note (Facility B).

# ARTICLE XI

## GOVERNING LAW; SUBMISSION TO JURISDICTION

**THIS NOTE WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.    IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AND, BY ITS ACCEPTANCE HEREOF, LENDER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE AND THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

6570797-v3

CONFIDENTIAL

DANSKE_0011727

**TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY, AT THE OPTION OF LENDER, BE INSTITUTED IN ANY FEDERAL OR STATE COURT SITTING IN NEW YORK COUNTY, NEW YORK, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING.**

ARTICLE XII

**NOTICES**

All notices or other written communications hereunder shall be delivered in accordance with the Loan Agreement.

ARTICLE XIII

**TRIAL BY JURY**

**BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, LENDER EACH AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EITHER PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER.**

ARTICLE XIV

**MISCELLANEOUS**

ALL PAYMENTS BY BORROWER HEREUNDER AND UNDER ANY OF THE OTHER LOAN DOCUMENTS SHALL BE MADE FREE AND CLEAR OF AND WITHOUT DEDUCTION FOR ANY PRESENT OR FUTURE TAXES, LEVIES, IMPOSTS, DEDUCTIONS, CHARGES OR WITHHOLDINGS, AND ANY LIABILITIES WITH RESPECT THERETO, <u>EXCLUDING</u>, IN THE CASE OF LENDER, TAXES IMPOSED ON ITS NET INCOME OR CAPITAL AND FRANCHISE TAXES IMPOSED ON IT BY THE JURISDICTION UNDER THE LAWS OF WHICH LENDER IS ORGANIZED OR ANY POLITICAL SUBDIVISION THEREOF (ALL SUCH NON-EXCLUDED TAXES, LEVIES, IMPOSTS, DEDUCTIONS, CHARGES WITHHOLDINGS AND LIABILITIES BEING HEREINAFTER REFERRED TO AS "**INCLUDED TAXES**"). IF BORROWER SHALL BE REQUIRED BY LAW TO DEDUCT ANY INCLUDED TAXES FROM OR IN RESPECT OF ANY SUM PAYABLE HEREUNDER, OR UNDER ANY ANCILLARY AGREEMENT, TO

-8-

6570797-v3

LENDER (I) THE SUM PAYABLE SHALL BE INCREASED AS MAY BE NECESSARY SO THAT AFTER MAKING ALL REQUIRED DEDUCTIONS (INCLUDING DEDUCTIONS APPLICABLE TO ADDITIONAL SUMS PAYABLE UNDER THIS SECTION) LENDER RECEIVES AN AMOUNT EQUAL TO THE SUM IT WOULD HAVE RECEIVED HAD NO SUCH DEDUCTIONS BEEN MADE, (II) BORROWER SHALL MAKE SUCH DEDUCTION, AND (III) BORROWER SHALL PAY THE FULL AMOUNT DEDUCTED TO THE RELEVANT TAXATION AUTHORITY OR OTHER AUTHORITY IN ACCORDANCE WITH APPLICABLE LAW. BORROWER WILL INDEMNIFY LENDER FOR THE FULL AMOUNT OF INCLUDED TAXES PAID BY LENDER, ANY LIABILITY (INCLUDING PENALTIES, INTEREST AND EXPENSES) ARISING THEREFROM OR WITH RESPECT THERETO, WHETHER OR NOT SUCH INCLUDED TAXES WERE CORRECTLY OR LEGALLY ASSERTED. PAYMENT UNDER THIS INDEMNIFICATION SHALL BE MADE WITHIN 10 DAYS FROM THE DATE LENDER MAKES WRITTEN DEMAND THEREFOR. A CERTIFICATE AS TO THE AMOUNT OF SUCH INCLUDED TAXES SHALL BE SUBMITTED TO BORROWER BY LENDER AND SHALL, IN THE ABSENCE OF MANIFEST ERROR, BE PRIMA FACIE EVIDENCE OF THE AMOUNT DUE BY BORROWER TO LENDER WITHIN 10 DAYS AFTER THE DATE OF ANY PAYMENT OF INCLUDED TAXES BY BORROWER TO THE APPROPRIATE TAXING AUTHORITY, BORROWER WILL FURNISH TO LENDER EVIDENCE OF PAYMENT THEREOF SATISFACTORY TO LENDER. WITHOUT PREJUDICE TO THE SURVIVAL OF ANY OTHER AGREEMENT OF BORROWER HEREUNDER, THE AGREEMENTS AND OBLIGATIONS OF BORROWER HEREUNDER WILL SURVIVE REPAYMENT OF THE LOAN.

**TIME IS OF THE ESSENCE WITH RESPECT TO EACH PROVISION OF THIS NOTE.**

**[NO FURTHER TEXT ON THIS PAGE]**

6570797-v3

CONFIDENTIAL                                                                                           DANSKE_0011729

IN WITNESS WHEREOF, Borrower has duly executed this Promissory Note (Facility C) as of the day and year first above written.

**BORROWER:**

DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV, a Mexican limited liability company with variable capital

By: _____

Name:  Kenneth A. Jowdy

Title:  General Administrator

-10-

## **SCHEDULE A**

## **LOAN DOCUMENTS (DESCRIPTION)**

Reference is made to that certain loan made by Lehman Brothers Holdings Inc. ("**Lehman**") to Diamante Cabo San Lucas S. De R. L. De C.V. a Mexican limited liability company ("**Borrower**") in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**") to be used to fund certain acquisition and pre-development costs in connection with that certain project located in the City of Cabo San Lucas, Baja California Sur, Mexico.

The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 1 ("**Original Loan Documents**"). Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

Lehman and Danske Bank A/S, London Branch, the London Branch of a company incorporated in Denmark ("**Lender**") executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor or Lender was perfected in accordance with Mexican law.

Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to certain Loan Documents listed on Schedule 2 (as reaffirmed, amended and/or amended and restated, "**2009 Loan Documents**").

Among the several modifications made pursuant to the 2009 Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Borrower, as the borrower under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

      (i)    Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty Seven and 83/100 Dollars ($109,138,327.83); and

      (ii)    Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("**Facility B Note**").

Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Loan Documents listed on Schedule 3, (as reaffirmed and amended, "**2010 Loan Documents**") which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated April 2, 2012.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated June 29, 2012.

6570797-v3

CONFIDENTIAL

DANSKE_0011731

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated September 28, 2012.

Lender, Borrower and Guarantors agreed to further modifications to the Loan pursuant to the Letter Agreement Regarding Extension of Maturity Date dated December 31, 2012.

Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter.

By that letter agreement dated March 29, 2013, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

Lender, Borrower and Guarantors have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Lender; (ii) splitting the indebtedness evidenced by Facility B Note into (y) Second Substitute Promissory Note (Facility B) of even date herewith in the amount of $18,000,000; and (z) Promissory Note (Facility C) of even date herewith in the amount of $2,000,000; and (iii) advancing an additional $3,000,000 pursuant to this Promissory Note (Facility D), all as more particularly set forth herein. All such documents, amendments, reaffirmations and other instruments entered into in connection with this Agreement shall be referred to as the "**2013 Modification Documents**" as listed on Schedule 4.

6570797-v3

CONFIDENTIAL

DANSKE_0011732

## SCHEDULE 1

### ORIGINAL LOAN DOCUMENTS

### (All dated as of March 10, 2006 unless otherwise described)

1.    Loan Agreement by and between Borrower and Lehman

2.    Letter Agreement dated May 23, 2006 between Lehman and Borrower modifying the Original Loan Agreement

3.    Promissory Note in the principal amount of $125,000,000 by Borrower in favor of Lehman

4.    Irrevocable Guarantee Trust Agreement by Borrower in favor of Lehman

5.    Deed No. 65,011 (evidencing the conveyance of the Property to the Trust)

6.    Assignment of Leases and Rents by Borrower to Lehman

7.    Completion Guaranty by Jowdy in favor of Lehman

8.    Recourse Guaranty by Jowdy in favor of Lehman

9.    Payment Guaranty by Diamante Member, Jowdy and the Member Guarantors in favor of Lehman

10.   Pledge Agreement (Assets) by Borrower in favor of Lehman

11.   Pledge Agreement (Membership Interests in Borrower: US) by Diamante Member and Jowdy in favor of Lehman

12.   UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 11 above

13.   Pledge Agreement (Membership Interests in Borrower: Mexico) by Diamante Member and Jowdy in favor of Lehman

14.   Pledge Agreement (Membership Interests in Diamante Member) by Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC and Jowdy in favor of Lehman

-13-

6570797-v3

15.    UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 14 above

16.    Environmental Indemnity Agreement by Borrower and Jowdy in favor of Lehman

17.    Omnibus Assignment by Borrower to Lehman

6570797-v3

CONFIDENTIAL

DANSKE_0011734

## SCHEDULE 2

## 2009 LOAN DOCUMENTS

1.   Amended and Restated Loan Agreement (Budget attached as Exhibit A)

2.   Spanish Translation of Amended and Restated Loan Agreement

3.   Note Splitter and Modification Agreement

4.   Substitute Promissory Note (Facility A) - $109,138,327.83

5.   Substitute Promissory Note (Facility B) - $16,000,000.00

6.   Amended and Restated Irrevocable Guaranty Trust Agreement (Mexican Law)

7.   English Translation of Amended and Restated Irrevocable Guaranty Trust Agreement

8.   Reaffirmation of Payment Guaranty

9.   Reaffirmation of Completion Guaranty

10.  Reaffirmation of Recourse Guaranty

11.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Borrower)

12.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

13.  Reaffirmation of Environmental Indemnity Agreement

14.  Reaffirmation of Omnibus Assignment

15.  Reaffirmation of Assignment of Leases and Rents

16.  Waiver of Claims and Release Agreement

17.  Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

18.  UCC-1 Financing Statements (Debtors: PF Ventures, LLC (Connecticut) and David Boyden (Utah))

     A.   PF Ventures – filed with the Connecticut Secretary of State as File Number 2683094

-15-

CONFIDENTIAL

DANSKE_0011735

      B.      Boyden – filed with the Utah Department of Commerce as File Number 359857200902

19.    UCC-3 Financing Statement Amendments (assigning UCC interests from Lehman Brothers Holdings Inc. to Lender)

      A.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007960-5)

      B.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007961-7)

      C.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

      D.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

      E.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

      F.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

      G.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

20.    UCC-3 Financing Statement Amendments (correcting debtor information and organizational identification numbers for the following debtors)

      A.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

      B.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

      C.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

      D.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

      E.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

21.    Amendment to Pledge Agreement (Partnership Interests in Borrower) (Mexican Law)

22.    Notice of Assignment of Bank Accounts in Favor of Trustee (Mexican Law)

23.    Notice of Assignment of (Performance) Bond in Favor of Trustee (Mexican Law)

-16-

6570797-v3

CONFIDENTIAL

DANSKE_0011736

24.    Notice of Assignment of (Construction and Service) Agreements in Favor of Trustee (Mexican Law)

6570797-v3

CONFIDENTIAL

DANSKE_0011737

## **SCHEDULE 3**

### **2010 LOAN DOCUMENTS**

1. First Amendment to Amended and Restated Loan Agreement and Modification Agreement (Budget attached as Exhibit A)

2. Spanish Translation of Amended First Amendment to Amended and Restated Loan Agreement and Modification Agreement

3. First Amendment to Substitute Promissory Note (Facility B) - $20,000,000.00

4. Confirmation of Payment Guaranty

5. Confirmation of Completion Guaranty

6. Confirmation of Recourse Guaranty

7. Confirmation of Pledge and Security Agreement (Membership Interests in Borrower)

8. Confirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

9. Confirmation of Environmental Indemnity Agreement

10. Confirmation of Omnibus Assignment

11. Confirmation of Assignment of Leases and Rents

12. Annotation to Trust

6570797-v3

CONFIDENTIAL                                                        DANSKE_0011738

## SCHEDULE 4
## 2013 Modification Documents

1.  Second Amended and Restated Loan Agreement by and between Borrower, Borrower Parties, and Lender.

2.  Second Amendment to Irrevocable Guaranty Trust Agreement (Spanish and English)

3.  Note Splitter and Modification Agreement between Borrower, Kenneth A. Jowdy, Diamante Member, and Lender.

4.  Second Substitute Promissory Note (Facility A) - $123,500,000.00

5.  Third Substitute Promissory Note (Facility B) - $18,000,000.00

6.  Promissory Note (Facility C) - $2,000,000.00

7.  Promissory Note (Facility D) - $3,000,000.00

8.  Pledgor in Possession Pledge (Mexico Law)

9.  Acknowledgement of Debt (Mexico Law)

10.  Termination of Assignment of Leases and Rents (US Law)

11.  Termination of U.S. Pledge and Security Agreement (Membership Interests in Borrower)

12.  Reaffirmation of Completion Guaranty

13.  Reaffirmation of Recourse Guaranty

14.  Reaffirmation of Payment Guaranty

15.  Reaffirmation of Pledge Agreement (Membership Interests in Diamante Member)

16.  Reaffirmation of Environmental Indemnity Agreement

17.  Reaffirmation of Omnibus Assignment

18.  Reaffirmation of Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

19.  Payment Guaranty by Diamante Club, LLC, Jowdy, and Diamante Member

20.  Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante Club, LLC)

CONFIDENTIAL

21. Payment Guaranty by Diamante CSL, LLC, Jowdy, and Diamante Member

22. Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante CSL, LLC)

23. UCC-1 Financing Statements (Debtor: Diamante Member) covering interests in Diamante Club, LLC and Diamante CSL, LLC

24. UCC-1 Financing Statements (Debtor: Kenneth A. Jowdy) covering interests in Diamante Club, LLC and Diamante CSL, LLC

25. UCC-3 Amendments

26. Deposit Account Control Agreement for Wells Fargo Income Account

27. Mandate Agreements for four (4) Banorte Income and Operating Accounts

CONFIDENTIAL