# EXHIBIT 59

# CONSOLIDATED, AMENDED AND RESTATED PROMISSORY NOTE

## (REPLACEMENT NOTE C)

$15,000,000 .                                                                 New York, New York
                                                                               April 29, 2014

**THIS CONSOLIDATED, AMENDED AND RESTATED PROMISSORY NOTE** (as the same may be further amended, restated, replaced, supplemented, renewed, extended, consolidated or otherwise modified from time to time, this "**Note**") is made as of April 29, 2014, effective as of April 30, 2014, by and between **DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V.**, a Mexican limited liability company with variable capital, having an address at Boulevard s/n, Col. Los Cangrejos, Carretera Cabo San Lucas a Todos Santos Km 6.8 Cabo San Lucas B.C.S., C.P. 23473 ("**Borrower**"), and **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in Denmark, having an address at 75 King William Street, London EC4N 7DT (together with its successors and/or assigns, "**Lender**").

## RECITALS

A.  On March 10, 2006, Lehman Brothers Holdings Inc. ("**Lehman**") made a loan to Borrower in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**") to be used to fund certain acquisition and pre-development costs in connection with that certain resort project located in the City of Cabo San Lucas, Baja California Sur, Mexico.

B.  The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 2 ("**Original Loan Documents**").

C.  Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

D.  Lehman and Lender executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor of Lender was perfected in accordance with Mexican law.

E.  Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and, in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to the Amended Loan Documents listed on Schedule 3 (as reaffirmed, amended and/or amended and restated, "**2009 Amended Loan Documents**").

F.  Among the several modifications made pursuant to the 2009 Amended Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Borrower, as the borrower

under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

(i) Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty-Seven and 83/100 Dollars ($109,138,327.83) ("**Facility A Note**"); and

(ii) Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("**Facility B Note**").

G. Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Amended Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Amended Loan Documents listed on Schedule 4, (as reaffirmed and amended, "**2010 Amended Loan Documents**," and together with the 2009 Amended Loan Documents, the "**Amended Loan Documents**"), which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

H. Lender, Borrower and Guarantors agreed to extend the Maturity Date of the Loan to June 29, 2012 and modify certain applicable interest rates as more particularly set forth therein in that Extension Letter Agreement dated April 2, 2012 ("**First Extension Agreement**").

I. By that letter agreement dated June 29, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from June 29, 2012 to September 28, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein (the "**Second Extension Agreement**").

J. By that letter agreement dated September 28, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from September 28, 2012 to December 31, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein (the "**Third Extension Agreement**").

K. By that letter agreement dated December 31, 2012, Lender and Obligors agreed to extend the Maturity Date of the Loan from December 31, 2012 to March 31, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein ("**Fourth Extension Agreement**").

L. By that letter agreement dated February 15, 2013, Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter ("**2013 Additional Advance Agreement**").

M. By that letter agreement dated March 29, 2013, Lender and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein ("**Fifth Extension Agreement**").

CONFIDENTIAL                                                                                                              DANSKE_0013059

N.       Pursuant to the terms and conditions of the 2013 Loan Modification Documents (defined hereinbelow), Lender, Borrower and Guarantors agreed to certain amendments, modifications and extensions, including but not limited to:(i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Lender; and (ii) splitting the indebtedness evidenced by Facility B Note into (y) Second Substitute Promissory Note (Facility B) dated as of April 30, 2013 in the amount of Eighteen Million Dollars ("**Facility B Note**"); and (z) Promissory Note (Facility C) dated as of April 30, 3013, in the amount of $2,000,000 ("**Facility C Note**"); and (iii) advancing an additional loan in the amount of $3,000,000 pursuant to Promissory Note (Facility D) dated as of April 30, 2013 in the principal amount of Three Million Dollars ($3,000,000) ("**Facility D Note**") all as more particularly set forth in the Second Amended and Restated Loan Agreement and the other 2013 Amended Loan Documents.

O.       Subject to the terms and conditions of the Third Amended and Restated Loan Agreement dated of even date herewith, Lender, Borrower and Guarantors agree to certain amendments, modifications and extensions to the 2013 Modification Documents, including but not limited to: (i) consolidating and replacing Facility C Note and Facility D Note with Replacement Facility C Note, and thereunder advancing an additional amount of $10,000,000, dated as of even date herewith, in the aggregate principal amount of $15,000,000 ("**Replacement Facility C Note**") all as more particularly set forth therein.

P.       There is now owing under the Facility C Note the unpaid principal sum of $2,000,000 and there is now owing under the Facility D Note the unpaid principal sum of $3,000,000, together with interest thereon.

Q.       In connection with the making of a loan of the additional amount of $10,000,000 by Lender to Borrower, Borrower has agreed to (i) continue its obligations under the Facility A Note, Facility B Note, Facility C Note and Facility D Note, and has requested that Lender consolidate the Facility C Note and Facility D Note and amend and restate the terms and provisions of the Facility C Note and Facility D Note into this Note.

R.       Pursuant to the public instrument No. 111, 339, dated April 23, 2014, authorized by Mr. Amando Mastachi Aguario, Notary Public No. 121, of Mexico, Federal District; The Bank of New York Mellon, S.A., Institución de Banca Múltiple, agreed to merge with CI Banco, S.A., Institución de Banca Múltiple, provided that The Bank of New York Mellon, S.A., Institución de Banca Múltiple survived as the merging company, and CI Banco, S.A., Institución de Banca Múltiple, as merged company, ceased to exist. Pursuant to this same instrument, the parties agreed to change the name of the surviving entity to "CI Banco, S.A., Institución de Banca Múltiple" which will be considered as trustee under that certain Amended and Restated Irrevocable Guaranty Trust Agreement dated as of March 9, 2009 among Borrower, Lender and Trustee, as amended from time to time.

S.       Borrower and Lender desire to consolidate, amend and restate the terms and conditions of the Facility C Note and Facility D Note in their entirety, and increase the aggregate principal balance thereof by $10,000,000, in the manner hereinafter set forth, and to replace the

3

CONFIDENTIAL                                                                                                                    DANSKE_0013060

Facility C Note and Facility D Note with this Note.

**NOW, THEREFORE**, by Borrower's execution and delivery, and Lender's acceptance of delivery from Borrower, of this Note, this Note is deemed to amend, modify, restate and consolidate the Facility C Note and Facility D Note and the Facility C Note and Facility D Note are hereby amended, modified and restated in their entirety, and consolidated, so that this Note shall hereafter constitute evidence of but one debt and the terms, covenants, agreements, rights, obligations and conditions contained in this Note shall supersede and control the terms, covenants, agreements, rights, obligations and conditions of the Facility C Note and Facility D Note as follows:

**FOR VALUE RECEIVED**, the undersigned, Borrower, as maker, hereby unconditionally promises to pay to the order of Lender, as lender, at the address listed above or at such other place as the holder hereof may from time to time designate in writing, the principal sum of **FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00)**, or so much thereof as is advanced pursuant to that certain Third Amended and Restated Loan Agreement dated the date hereof between Borrower and Lender (as the same may be amended, modified, supplemented, replaced or otherwise modified from time to time, the "**Loan Agreement**"), in lawful money of the United States of America, with interest thereon to be computed from the date of this Note at the Interest Rate (as defined in the Loan Agreement), and to be paid in accordance with the terms of this Note and the Loan Agreement. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

## PAYMENT TERMS

Borrower agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note and all other amounts due under the Loan Agreement and the other Danske Amended Loan Documents from time to time outstanding, at the rates and at the times specified in the Loan Agreement, and the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon and all other amounts due under the Loan Agreement and the other Danske Amended Loan Documents shall be due and payable on the Replacement Facility C Maturity Date.

## DEFAULT AND ACCELERATION

The Debt shall without notice become immediately due and payable at the option of Lender upon the happening of any Event of Default.

## LOAN DOCUMENTS

This Note is secured by the Trust Agreement and the other Danske Amended Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Trust Agreement and the other Danske Amended Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

4

7662111-v5

## SAVINGS CLAUSE

Notwithstanding anything to the contrary contained herein, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Lender shall never exceed the maximum legal rate, (b) in calculating whether any interest exceeds the maximum legal rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the maximum legal rate, any such excess shall be deemed to have been applied toward the payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower. The foregoing provisions notwithstanding, Borrower acknowledges and agrees that when accrued and unpaid interest is added to the principal balance of this Note such amount shall become part of the principal indebtedness and the payment thereof is a repayment of principal and not a payment of interest.

## NO ORAL CHANGE

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby jointly and severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Danske Amended Loan Documents made by agreement between Lender and any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower or any other Person who may become liable for the payment of all or any part of the Debt under this Note, the Loan Agreement or the other Danske Amended Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Danske Amended Loan Documents. If Borrower is a partnership or limited liability company, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the individuals or entities comprising the partnership or limited liability company, and the term "Borrower," as used herein, shall include any alternate or successor partnership or limited liability company, but any predecessor partnership or limited liability company and its partners or members shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and be applicable, notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower," as used herein, shall

5

7662111-v5

CONFIDENTIAL                                                                                                                                     DANSKE_0013062

include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. (Nothing in the foregoing two sentences shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation which may be set forth in the Loan Agreement, the Trust Agreement or any other Danske Amended Loan Document.)

### TRANSFER

Upon the transfer of this Note by Lender, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Danske Amended Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

### EXCULPATION

The Loan shall be non-recourse to Borrower and its members and their respective officers, directors, employees, members, partners and Affiliates (collectively, "**Exculpated Parties**"), and accordingly, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Note and the other Loan Documents by an action or proceeding wherein a money judgment shall be sought against Borrower or any of the other Exculpated Parties, except that Lender may bring a foreclosure action, an action for extrajudicial sale, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon this Note and the other Loan Documents, and the interests in the Project and any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents; provided, however, that, except as specifically provided in this Section, any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Project and in any other collateral given to Lender pursuant to the Amended and Restated Trust Agreement or any of the other Loan Documents. By accepting this Note and the other Loan Documents, Lender agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower or the Exculpated Parties in any such action or proceeding, under, by reason of or in connection with this Note or the other Loan Documents. The provisions of this Section shall not, however: (a) constitute a waiver, release or impairment of any obligation evidenced or secured by this Note or the other Loan Documents; (b) impair the right of Lender to name Borrower as a party defendant in any action or suit for extrajudicial sale under the Amended and Restated Trust Agreement; (c) affect the validity or enforceability of any guaranty or indemnity made in connection with this Note or the other Loan Documents against the party having made the same; (d) impair the right of Lender to obtain the appointment of a receiver; (e) impair the enforcement of the Reaffirmation of Assignment of Leases and Rents; (f) impair the right of Lender to bring suit with respect to fraud or intentional misrepresentation by Borrower or any other person or entity in connection with this Note or the other Loan Documents; or (g) affect the validity or enforceability of the Reaffirmation of Environmental Indemnity or limit the liability of Borrower or any other party thereunder.

CONFIDENTIAL                                                                                                  DANSKE_0013063

    Nothing in this Section shall be deemed to be a waiver of any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt in accordance with this Note and the other Loan Documents.

    Notwithstanding the foregoing provisions of this Section or any other provision in the Loan Documents, Borrower shall be fully liable, and shall indemnify and defend Lender from and against any loss, cost, liability, judgment, claim, damage or expense sustained, suffered or incurred by Lender (including, without limitation, reasonable attorneys' fees) arising out of or attributable or relating to:

    (i) fraud or intentional misrepresentation by Borrower or the other Exculpated Parties in connection with the Loan;

    (ii) the gross negligence or willful misconduct of Borrower or any of the Exculpated Parties, or physical waste of the Project which is attributable to the acts or omissions of Borrower or any of the Exculpated Parties;

    (iii) the breach of provisions in the Loan Agreement concerning Environmental Laws and Hazardous Material, including any obligation to indemnify Lender with respect to such Environmental Laws or Hazardous Material;

    (iv) the removal or disposal of any portion of the Personal Property (other than fixtures, furniture and equipment in the ordinary course of business, or as otherwise permitted under the Loan Documents);

    (v) the misapplication or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Project; (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Project; or (C) during the continuance of an Event of Default, rents, issues, profits, proceeds, awards, settlements, accounts, or other amounts received by Borrower;

    (vi) any financial information concerning Borrower or any Borrower Principal (hereinafter defined) delivered to Lender by Borrower or such Borrower Principal proving to be fraudulent in any material respect or misrepresenting in any material respect the financial condition of Borrower or such Borrower Principal;

    (vii) costs incurred by Lender (including reasonable attorneys' fees) in connection with the collection or enforcement of the Debt;

    (viii) any security deposits collected with respect to the Project which are not delivered to Lender upon the extrajudicial sale of the Project or action in lieu thereof;

    (ix) Borrower's failure to permit on-site inspections of the Project or to provide financial reports and information pertaining to the Project as required by the Loan Agreement, unless, in either case, such failure is a result of good faith error and is cured within five (5) days after notice is delivered to Borrower,

7662111-v5

CONFIDENTIAL DANSKE_0013064

    (x) Borrower's failure to comply with the single-purpose entity provisions of the Loan Documents such that Lender suffers any material damage, liability or expense (including reasonable attorneys' fees and disbursements, whether or not litigation has commenced);

    (xi) Borrower's failure to maintain insurance in respect of Borrower or the Project in accordance with the terms of the Loan Agreement;

    (xii) the creation or imposition of any construction, mechanic's or materialman's liens or other encumbrances upon or with respect to the Land or the Project;

    (xiii) the failure to pay Taxes;

    (xiv) Borrower's failure to obtain Lender's written consent prior to entering into, modifying or amending any Lease, Construction Contract or any other contract where such consent is required pursuant to the Loan Documents; and

    (xv) Borrower's violation of Article XXII of the Loan Agreement.

    For purposes of this Note, the term "**Borrower Principal**" shall mean Kenneth A. Jowdy. The liabilities listed in clause (i) through (xv) of this Paragraph are collectively known as the "**Partial Recourse Obligations**".

    Notwithstanding the provisions of the foregoing paragraph, the agreement of Lender not to pursue recourse liability as set forth in this Section SHALL BECOME NULL AND VOID and shall be of no further force or effect in the event of (1) Borrower's failure to obtain Lender's prior written consent to any subordinate financing in respect of the Project; (2) Borrower's failure to obtain Lender's prior written consent to any Transfer, to the extent such consent is required under the Loan Agreement; (3) the Project or any part thereof becoming an asset in (A) a voluntary bankruptcy or insolvency proceeding, or (B) an involuntary bankruptcy or insolvency proceeding where Lender reasonably determines that Borrower (including Borrower's employees, partners, directors or Affiliates) has colluded with any Persons to cause the filing of the same (other than an involuntary bankruptcy or insolvency proceeding commenced or approved in writing by Lender), or (4) any attempt by Borrower in bad faith to hinder or delay Lender in the enforcement of its rights under the Loan Documents. The liabilities listed in clauses (1) through (4) of this Paragraph are collectively known as the "**Full Recourse Obligations**". The Full Recourse Obligations and the Partial Recourse Obligations are collectively referred to as the "**Recourse Obligations**".

**GOVERNING LAW; JURISDICTION; SERVICE OF PROCESS**

    THIS NOTE WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION,

8

CONFIDENTIAL DANSKE_0013065

VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE AND THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.  BORROWER AGREES THAT SERVICE OF PROCESS UPON BORROWER AT THE ADDRESS FOR BORROWER SET FORTH HEREIN AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.  BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGE IN THE ADDRESS FOR BORROWER SET FORTH HEREIN, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE AN AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE AN AUTHORIZED AGENT IF BORROWER CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTION.

## WAIVER OF JURY TRIAL

BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST, WITH REGARD TO THIS NOTE, THE TRUST AGREEMENT OR THE OTHER DANSKE AMENDED LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND IS INTENDED TO

CONFIDENTIAL                                                                                                     DANSKE_0013066

ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

### SUCCESSORS AND ASSIGNS

This Note shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective successors and permitted assigns. Lender shall have the right to assign or transfer its rights under this Note in connection with any assignment of the Loan and the Danske Amended Loan Documents. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Note. Borrower shall not have the right to assign or transfer its rights or obligations under this Note without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

### NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Article XXI of the Loan Agreement.

### NO NOVATION

Borrower hereby ratifies and confirms its respective obligations under the Facility A Note, Facility B Note, Facility C Note and Facility D Note to and including the date hereof and agrees and acknowledges that (i) this Note amends, restates and replaces entirely the terms and provisions of the Facility C Note and Facility D Note as of the date hereof, and (ii) this Note has been executed and delivered in substitution of the Facility C Note and Facility D Note and not in payment, satisfaction or cancellation of the indebtedness evidenced by the Facility C Note and Facility D Note. Neither this Note nor anything contained herein shall be construed as a novation of Borrower's indebtedness evidenced by the Facility C Note and Facility D Note or the Facility A Note and Facility B Note.

[NO FURTHER TEXT ON THIS PAGE]

CONFIDENTIAL                                                                                                                        DANSKE_0013067

**IN WITNESS WHEREOF**, Borrower and Lender have duly executed this Note as of the day and year first above written.

**BORROWER:**

DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V., a Mexican limited liability company with variable capital

By: _____
Name:   Kenneth A. Jowdy
Title:   General Administrator

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

*CONSOLIDATED, AMENDED AND RESTATED PROMISSORY NOTE*

*(REPLACEMENT NOTE C)*

CONFIDENTIAL
DANSKE_0013068