# EXHIBIT 60

**AMENDMENT AND RESTATEMENT AGREEMENT** TO THE IRREVOCABLE GUARANTY TRUST AGREEMENT (AS HEREINAFTER DEFINED) IDENTIFIED WITH THE NUMBER F/00321 (THE "AMENDMENT AND RESTATEMENT AGREEMENT") DATED MARCH 6, 2009, ENTERED INTO BY AND AMONG DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. ("DIAMANTE CABO"), REPRESENTED HEREIN BY KENNETH ABOUD JOWDY ACTING AS SETTLOR AND BENEFICIARY IN SECOND PLACE (THE "SETTLOR" OR "BENEFICIARY IN SECOND PLACE", AS APPLICABLE) WHO HEREBY APPOINTS MR. FERNANDO GARCIA CAMPUZANO AS ITS AUTHORIZED TRANSLATOR, DANSKE BANK A/S, LONDON BRANCH, INCORPORATED IN THE KINGDOM OF DENMARK, REPRESENTED HEREIN BY GUSTAVO IGNACIO ALARCON CABALLERO, AS BENEFICIARY IN FIRST PLACE (THE "BENEFICIARY IN FIRST PLACE"), AND THE BANK OF NEW YORK MELLON, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE (AS UNIVERSAL AND FINAL ASSIGNEE OF BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA) AS TRUSTEE OF THE TRUST F/00321, REPRESENTED HEREIN BY ITS TRUSTEE DELEGATE ELIZABETH CID DEL PRADO GARCIA DE LEON (THE "TRUSTEE").

## R E C I T A L S

1.      On March 10, 2006, Lehman Brothers Holdings Inc. ("Lehman Brothers") granted Diamante Cabo a loan of up to $125,000,000.00 (One hundred and twenty five million dollars, legal currency of the United States of America) of principal; plus interest and commissions (the "Original Loan").

2.      In connection with the Original Loan, on March 10, 2006, the following documents were executed: **(i)** Original Loan Agreement by and between Diamante Cabo and Lehman Brothers (the "Original Loan Agreement"); **(ii)** Promissory Note executed by

JNN 291386 v3

Diamante Cabo (the "Promissory Note"); (iii) Assignment of Leases and Rents Agreement by and between Diamante Cabo and Lehman Brothers (the "Assignment of Leases and Rents");; (iv) Recourse Guaranty by Mr. Kenneth A. Jowdy (the "Guarantor") and Lehman Brothers, in effect as of March 10, 2006, (la "Recourse Guaranty"); (v) Indemnity Agreement by and between Diamante Cabo, the Guarantor and Lehman Brothers (the "Environmental Indemnity"); (vi) Pledge Agreement over partnership interests by and between Diamante Cabo, the Guarantor, Diamante Cabo San Lucas LLC ("U.S. LLC"), and Lehman Brothers (the "Pledge Agreement (Membership Interest in Settlor)"); (vii) Pledge Agreement over assets, by and between Lehman Brothers and Diamante Cabo (the "Pledge Agreement (Assets)"); (viii) Pledge Agreement by and between the Guarantor, U.S. LLC and Lehman Brothers (the "Pledge Agreement (Membership Interest in Borrower)"); (ix) Pledge Agreement by and between the Guarantor, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings, LLC and CSL Properties 2006, LLC (jointly, the "Members of the U.S. LLC") and Lehman Brothers (the "Pledge Agreement Over US Partnership Interests"); (x) Omnibus Assignment by and between Diamante Cabo and Lehman Brothers (the "Omnibus Assignment 2006"); (xi) Completion Guaranty, granted by the Guarantor in favor of Lehman Brothers; and (xii) Guaranty granted by the Members of the U.S. LLC, the Guarantor and the U.S. LLC in favor of Lehman Brothers. The aforementioned documents, as amended form time to time, are jointly referred to as the "2006 Transaction Documents".

3.    Likewise, on March 10, 2006, through public deed number 65,041 granted before the undersigned notary public, Diamante Cabo, as settlor and second beneficiary, Lehman Brothers, as first beneficiary, and Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria (currently The Bank of New York Mellon, S.A., Institución de Banca Múltiple universal and final assignee of such), as trustee, executed the Irrevocable Guaranty Trust Agreement identified with the number F/00321 (the "Trust") in order to secure compliance of obligations of Diamante Cabo, the Members of the U.S. LLC, la U.S. LLC and of the Guarantor under the 2006 Transaction Documents.

CONFIDENTIAL                                                        DANSKE_0012727

4.   On the date of execution of the Trust, Diamante Cabo contributed to the trust assets the following properties (hereinafter the "Properties"): *[DESCRIPTION OF THE PROPERTIES CONTRIBUTED TO THE TRUST]*

5.   Likewise, on the date of execution of the Trust, Diamante Cabo contributed to the trust assets the following rights (hereinafter the "Rights"): *[DESCRIPTION OF THE RIGHTS CONTRIBUTED TO THE TRUST]*

6.   Acquisition of the trustee's interests of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria:

a) Through public deed 59,516 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, were formalized certain spinoff resolutions adopted by the extraordinary shareholders meeting of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria, held on November 19, 2008, whereby it was resolved to spinoff such corporation by the creation of Vertrouwen Mexicana, S.A., initial universal assignee of certain assets, assuming such company all obligations derived therefrom.

b) Through public deed 59,517 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, as a consequence of the spinoff of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria, Vertrouwen Mexicana, S.A. was incorporated with an indefinite duration, a capital stock of $193,317,047 Pesos and the main purpose of receiving from Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, including but not limited to, certain accounts receivable, certain accounts to be collected, and capital and several assets deriving from order accounts belonging to trusts and mandates, all in accordance with article 27 of the Credit Institutions Law.

CONFIDENTIAL                                                                        DANSKE_0012728

c) Through public deed 59,521 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, The Bank of New York Mellon, S.A., Institución de Banca Múltiple (as the subsistent corporation), merged with Vertrouwen Mexicana, S.A. and acquired all its assets that Vertrouwen Mexicana, S.A. had received from Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria.

7.    On January 13, 2009, Lehman Brothers and the Beneficiary in First Place executed a certain global assignment of rights agreement ("Omnibus Assignment and Assumption 2009") through which Lehman Brothers assigned in favor of the Beneficiary in First Place all of its rights under the 2006 Transaction Documents and the latter accepted such assignment.

8. On March 6, 2009, the partners of the Settlor, through general partners meeting **(i)** approved the execution of the Amended and Restated Loan Documents; and **(ii)** amended and restated the by-laws of the Settlor, acknowledging the Beneficiary in First Place as creditor under the Amended and Restated Loan Documents.

9.    On March 5, 2009, Lehman Brothers and the Beneficiary in First Place executed certain assignment agreements through which the parties to same perfected the Omnibus Assignment and Assumption 2009 pursuant to Mexican law, the assignment of rights in favor of the Beneficiary in First Place under the Pledge Agreement (Membership Interest in Settlor), the Pledge Agreement (Assets) and the Trust.

10.    On this same date the Beneficiary in First Place and the Settlor executed a Termination Agreement to the Pledge Agreement (Assets), due to the fact that the assets subject matter of the pledge are hereby transferred to the Trust.

11.    On March 6, 2009, the Beneficiary in First Place and Diamante Cabo executed an amendment and restatement to the Loan Agreement (the "Amended and Restated Loan

CONFIDENTIAL                                             DANSKE_0012729

Agreement") and Diamante Cabo executed thereunder in favor of the Beneficiary in First Place two promissory notes (the "2009 Promissory Notes", and jointly with the Amended and Restated Loan Agreement 2009 and the 2006 Transaction Documents will be referred to as the "Transaction Documents", and the latter, jointly with this Trust, will be referred to as the "Amended and Restated Loan Documents".

## REPRESENTATIONS

1.     Diamante Cabo, hereby represents that:

a)     It is a limited liability company of variable capital duly formed pursuant to the laws of the United Mexican States, with headquarters at Alikan s/n, Colonia Ampliación Mariano Matamoros, CP 23460, Cabo San Lucas, Los Cabos, Baja California Sur, México.

b)     It contributed to the assets of the Trust the Properties described in Recital 4 and the Rights described in Recital 5 of this instrument (hereinafter the Properties and the Rights shall be jointly referred to for purposes of this Amendment and Restatement Agreement as the "Real Property").

c)     It has all the corporate and legal powers and authority to execute and comply with its obligations hereunder, as well as to grant the necessary guaranties, and has taken all legal and corporate actions necessary to authorize its execution and compliance in terms of this Amendment and Restatement Agreement.

d)     The Trust constitutes a legal, valid and binding obligation of Diamante Cabo, enforceable pursuant to the provisions of the applicable law.

e)     The execution and compliance of this Amendment Agreement does not imply any material breach of any provision or legal requirement, nor of any provision of its corporate documents, nor of any contractual obligation of Diamante Cabo and it will not result in the establishment or imposition of any lien over any of the assets or income of

CONFIDENTIAL                                                                DANSKE_0012730

Diamante Cabo, except for that established in this instrument and expressly permitted by the Transaction Documents.

f)    As of the date of execution of this Amendment and Restatement Agreement, and to the best of its knowledge, there is no, after carrying out the pertinent investigations, action, claim, suit, requirement or potential procedure pending or not resolution, before any court, governmental entity or arbitrator, that affects or may affect the legality, validity or enforceability of this Amendment and Restatement Agreement, the Trust or the Trustee's ownership of the Property.

g)    No consent, authorization, application or any other act on behalf of any governmental authority or any other person is required in order to execute, amend, terminate, assign, deliver, comply or enforce the Trust, nor to perfect or maintain the lien constituted thereby.

h)    The individual executing this Amendment and Restatement Agreement on behalf of Diamante Cabo has the powers and authority as well as the required corporate authorizations to do so, as evidenced through public deed number 78,881 granted before this Notary Public, which have not been revoked or limited in any manner whatsoever.

i)    The Charter and By-Laws of Diamante Cabo include the legal provisions of section I of article 27 of the Constitution of the United Mexican States.

j)    The purpose, use and enjoyment of the Real Property is for non-residential purposes, so long as it remains part of the Trust Assets and, hence, does not require a permit from the Ministry of Foreign Affairs (*Secretaría de Relaciones Exteriores*) ("SRE"), in terms of article 11 and 12 of the Foreign Investment Law (*Ley de Inversión Extranjera*) ("LIE").

k)    The Real Property is up to date in the payment of real estate taxes or any other governmental taxes and utilities to which the Real Property may be subject.

CONFIDENTIAL

l)    The Real Property complies with the applicable environmental, health and safety regulations, and Diamante Cabo has no knowledge of **(i)** the occurrence of any event or the existence of any circumstance or conditions that may constitute or result in a breach of environmental, health and safety norms, and **(ii)** the Real Property being subject to any existing action, or to the best of the knowledge of Diamante Cabo to any potential action, exercised by or before any governmental authority in terms of any environmental, health or safety law applicable thereto, nor is there any legal basis for such action.

m)    Appears to the execution of this Amendment and Restatement Agreement in order to amend and restate the clauses of the Trust in order for same to secure compliance with the obligations of Diamante Cabo, the Members of the U.S. LLC, the U.S. LLC and the Guarantor pursuant to the Transaction Documents.

n) The Trustee has clearly advised it of the contents and legal scope of Section XIX of Article 106 of the Credit Institutions Law, as well as of the regulations issued by the Bank of Mexico.

o) Hereby instructs the Trustee to execute this Amendment and Restatement Agreement in the terms hereof.

**2.**    The Beneficiary in First Place hereby represents that:

a)    It is the London branch of a corporation duly incorporated pursuant to the laws of the Kingdom of Denmark.

b)    Its legal representative has all the corporate and legal powers and authority to execute this Amendment Agreement, as evidenced through public deed number 102,866 dated February 23, 2009, granted before Mr. Francisco Javier Arce Gargollo, Notary Public

CONFIDENTIAL                                                                      DANSKE_0012732

No. 74 of the Federal District, which have not been revoked or limited in any manner whatsoever.

c)      The Trustee has unequivocally communicated to it the content and legal scope of section XIX of article 106 of the Credit Institutions Law (*Ley de Instituciones de Crédito*), as well as the legal provisions issued by the Central Mexican Bank (*Banco de México*).

d)      The Beneficiary in First Place will have no right over the use and enjoyment of the Real Property, unless the Trust receives the corresponding authorization from the Ministry of Foreign Affairs, in the understanding that such limitation will not be deemed an estoppel nor diminish in any manner the rights of the Beneficiary in First Place in terms of the Trust or the guaranty granted in same.

e)      Hereby instructs the Trustee to execute this Amendment and Restatement Agreement in the terms hereof.

3.      The TRUSTEE hereby represents that:

a)      It is a multiple banking institution, duly incorporated and authorized to act as such, pursuant to Mexican law.

b)      Its trustee delegate has all the corporate and legal powers and authority to execute this Amendment Agreement, as evidenced through public deed number 59,563 granted before Mr. Roberto Nuñez y Bandera, Notary Public No. 1 of the Federal District, which have not been revoked or limited in any manner whatsoever.

c)      It is the legitimate owner of the Real Property as trustee of the Trsut, which is free and clear of all liens (except for the rights in favor of Atilio Colli Villarino and Alicia Ceseña Agundez under the non exclusive, permanent and voluntary right of way easement (the "Easement"), which was formalized through public deed 62,902, volume 987, dated

CONFIDENTIAL                                                                            DANSKE_0012733

September 1, 2005, granted before this Notary Public, same that was recorded in the Public Registry of Property of Los Cabos under number 97 of the volume CCXXXI, of the first section and number 30 of the volume CCXXIII of the first section), encumbrances, guaranties, options or claims on behalf of any third party.

d)     Has all necessary governmental approvals and authorizations to act as a banking institution in Mexico and perform trust operations in accordance with the applicable Mexican laws and regulations, which are valid as of the date of this Amendment and Restatement Agreement.

e)     The execution and performance of this Amendment and Restatement Agreement does not constitute a breach to the by-laws of the Trustee or to any other agreement entered with any third person.

f)     The Trust constitutes a valid obligation of the Trustee which is enforceable against it in accordance with its terms.

g)     In accordance with Section XIX of Article 106 of the Credit Institutions Law, as well as of the regulations issued by the Bank of Mexico, the Trustee represents that it has clearly explained to the parties of this Amendment and Restatement Agreement the consequences of such provisions.

h)     Appears to the execution of this Amendment and Restatement Agreement in accordance with the instructions of Settlor and the Beneficiary in First Place.

**IN WITNESS WHEREOF**, the parties hereto hereby grant the following:

## C L A U S E S

**FIRST.**     The parties hereto agree to amend and restate all of the clauses of the Trust which are replaced and superseded in its entirety by the following clauses:

CONFIDENTIAL

DANSKE_0012734

**"Clause 1.     Definitions and Principles of Interpretation.**

(a)     Capitalized terms used herein and not otherwise defined elsewhere herein shall have the meanings respectively ascribed to them below:

"**Accounts Receivable**" means any and all rights of the Settlor to payment for disposition of assets and any part of the Trust Assets through lease, sale or services rendered, or use of the Trust Assets (as hereinafter defined), whether or not yet earned and all substitutions therefore and proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition thereof or substitution therefore.

"**Advisors**" has the meaning ascribed to such term in **Clause 10**.

"**Amended and Restated Loan Agreement**" means the amended and restated loan agreement executed on March 6, 2009 by and between Diamante Cabo and the Beneficiary in First Place, including without limitation, any amendment thereto.

"**Amended and Restated Loan Documents**" means the Amended and Restated Loan Agreement, the Promissory Note A, the Promissory Note B, the Assignment of Leases And Rents, the Pledge Agreement (Membership Interest in Settlor), the Pledge Agreement (Membership Interest in Borrower), the Pledge Agreement over US Partnership Interests, the Recourse Guaranty, the Environmental Indemnity, the Omnibus Assignment 2006, the Completion Guaranty and the Guaranty, as the same have been or may be amended form time to time.

"**Appraisal**" has the meaning ascribed to such term in **Clause 8(a)**.

"**Agent of the Collection Account**" means Trimont Real Estate Advisors, Inc. as loan agent in accordance with the agreement that regulates the Collection Account.

"**Assets**" means all and any assets that are property of the Settlor at the time of the execution hereof and all acquired thereafter, including without limitation contractual rights,

CONFIDENTIAL                                                                      DANSKE_0012735

intellectual property, movable assets, bank accounts, any accounts receivable, equipment and all earnings and proceeds derived form such assets or of similar nature.

"**Assignment of Leases and Rents**" means the assignment of lease and rents agreement as amended in the past or the future, executed on March 10, 2006 by and between Diamante Cabo and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Auction Notice**" has the meaning ascribed to such term in **Clause 10**.

"**Base Price**" has the meaning ascribed to such term in **Clause 10**.

"**Beneficiary in First Place**" means Danske Bank A/S, London Branch, the London branch of a company incorporated in the Kingdom of Denmark.

"**Beneficiary in Second Place**" means the Settlor in its capacity as beneficiary in second place hereunder.

"**Business Day**" means any day of the year, except Saturdays and Sundays and holidays pursuant to the Federal Labor Law (*Ley Federal del Trabajo*) and the calendar that the National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*) publishes annually, in which banking institutions in Mexico and in New York, New York, United States of America are open to the public to carry out banking operations.

"**Completion Guaranty**" means the Completion Guaranty as amended from time to time granted by the Guarantor in favor of Lehman Brothers on March 10, 2006, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Contractual Rights**" means all the rights (excluding the obligations), proceeds and benefits, whether tangible or intangible, derived form the agreements, contracts or instruments executed in the past or future by the Settlor with third parties in connection with the Project and/or the Trust Assets.

CONFIDENTIAL

DANSKE_0012736

**"Collection Account"** means the account in dollars of the United States of America that the Beneficiary in First place opens with, and operated by the Agent of the Collection Account.

**"Diamante Cabo"** means Diamante Cabo San Lucas, S. de R.L. de C.V.

**"Event of Default"** means an event of default with respect to, or breach of any of, the Secured Obligations or a breach of any of the terms and conditions established in this Trust or any other "Event of Default" as such term is defined in Section 18 of the Amended and Restated Loan Agreement, without limiting to any default in payment of capital and interest (as such interest may be capitalized).

**"Environmental Indemnity"** means the environmental liability and indemnity document executed on March 10, 2006 by and between Diamante Cabo, the Guarantor and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

**"Environmental Law"** means all federal, state and municipal laws and other statutes, regulations, decrees, rules, internal procedures, standards, Mexican Official Standards (*Normas Oficiales Mexicanas*), any obligations, permits, rulings, authorizations or concessions, issued by any government authority, in each case as public health, security and hygiene, contamination or protection of natural resources and the environment, pollution and contamination (prevention of pollution and contamination) of the air, water, soil, and subsoil (including the use, production, handling, transport, treatment, storage, distribution, labeling, cleaning of any hazard substance) in effect as of the date of this Trust. The term "Environmental Law" includes (but is not limited to) the Ecological Balance and Environment Protection Law (*Ley General del Equilibrio Ecológico y Protección al Ambiente*), the Law of National Waters (*Ley de Aguas Nacionales*), the Law for the Prevention of Residues (*Ley General para la Prevención y Gestión Integral de los Residuos*), the Environmental Protection and Preservation Law of the State of Baja California Sur (*Ley de Equilibrio Ecológico y Protección del Ambiente del Estado de Baja California Sur*),

CONFIDENTIAL

DANSKE_0012737

Mexican Official Standards: NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, NOM-138-SEMARNAT/SS-2003, and project of NOM-147-SEMARNAT/SSA1-2004 (including the internal parameters used by the Federal Agency for Environmental Protection (*Procuraduría Federal de Protección al Ambiente*) for contaminated soils and its remedies), Healthcare Law (*Ley General de Salud*), Federal Security Hygiene and Environment in Labor Regulation and Mexican Official Standard NOM-010-STPS-199, including their respective amendments.

"**Fractional Interest**" means **(i)** any part of the beneficiary rights arising from a Residential Unit Trust, which beneficiary rights, in terms of each Residential Unit Trust, are divided in a certain number of parts in order to represent the right to a certain part of the Unit contributed and which beneficiary rights afford the holder thereof the right to use the Unit for a certain period of weeks during a calendar year in terms of such instrument, the condominium documents for the Project and the corresponding beneficiary rights purchase and sale agreement, or **(ii)** any co-ownership in a Unit.

"**Guarantor**" means Mr. Kenneth A. Jowdy.

"**Guaranty**" means the guaranty granted by the Members of the US LLC, the Guarantor and the US LLC in favor of Lehman Brothers on March 10, 2006 as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Hazardous Substance**" means any hazard residue, toxic waste, hazardous materials, toxic substance, special residue, oil or any substance derived from oil, radioactive substances, solids, liquids or gas or any component of any substance or residue; or matters regulated under the Environmental Law including without limitation any residues, materials, or substances which are **(i)** designated or labeled as "hazardous materials" and/or "hazardous residues", in accordance with the Ecological Balance and Environment Protection Law (*Ley General del Equilibrio Ecológico y Protección al Ambiente*); **(ii)** listed as "hazardous" under Mexican Official Standards (*Normas Oficiales Mexicanas*): NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, and **(iii)** designated as "hazardous residues" under the Law

CONFIDENTIAL      DANSKE_0012738

for the Prevention of Residues (*Ley General para la Prevención y Gestión Integral de los Residuos*).

"**Improvements**" means constructions and any other structure or improvement located or to be located or built on the Real Property.

"**Information Memorandum**" has the meaning ascribed to such term in **Clause 10**.

"**Instruction to Sell**" has the meaning ascribed to such term in **Clause 10**.

"**Investment Instruction**" has the meaning ascribed to such term in **Clause 4(g)(1)**.

"**Lehman Brothers**" means Lehman Brothers Holdings Inc.

"**LGTOC**" means the General Law of Negotiable Instruments and Credit Transactions (*Ley General de Títulos y Operaciones de Crédito*).

"**Members of the US LLC**" means collectively, Baja Ventures 2006, LLC, Diamante Properties, LLC, KA Holdings, LLC and CSL Properties 2006, LLC.

"**Mexico**" means the United Mexican States.

"**Notice of Default**" means a notice delivered to the Settlor and Trustee by the Beneficiary in First Place, regarding the existence of an Event of Default and, if applicable, the cure period under the Amended and Restated Loan Documents.

"**Notice of Damaged Assets**" means the notice referred to in **Clause 7(b)(7)**, as the same shall be delivered according to the form attached hereto as **Exhibit B**.

"**Omnibus Assignment 2006**" means the omnibus assignment as amended in the past or the future, executed on March 10, 2006 by and between Diamante Cabo and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

CONFIDENTIAL                    DANSKE_0012739

"**Omnibus Assignment and Assumption 2009**" means the global assignment of rights agreement as amended in the past or the future, dated January 13, 2009, through which Lehman Brothers assigned in favor of the Beneficiary in First Place all its interests under the Loan Documents 2006 and the latter accepted such assignment.

"**Payment in Full Notice**" means the notice referred to in **Clause 12(a)**, as the same shall be delivered according to the form attached hereto as **Exhibit A**.

"**Pesos**" means the legal currency of the United Mexican States.

"**Permitted Investments**" means investments in fix-rate instruments or securities denominated in Pesos and/or Dollars issued or guaranteed by the Federal Government of Mexico or United States of America, as applicable.

"**Pledge Agreement (Membership Interest in Settlor)**" means the pledge agreement over partnership interests as amended from time to time executed on March 10, 2006 by and between Diamante Cabo, the Guarantor, the US LLC and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Pledge Agreement (Membership Interest in Borrower)**" means the pledge agreement as amended from time to time executed on March 10, 2006 by and between the Guarantor, the Members of the US LLC and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Project**" shall mean, including but not limited to, the development of the Real Property into a resort and residential development consisting of residences, two golf courses, a club house, restaurant, spa and fitness center and other amenities.

"**Promissory Note A**" means the promissory note executed on March 6, 2009 by Diamante Cabo in favor of the Beneficiary in First Place for a principal amount of US$109'138,327.83.

CONFIDENTIAL                                                                DANSKE_0012740

"**Promissory Note B**" means the promissory note executed on March 6, 2009 by Diamante Cabo in favor of the Beneficiary in First Place for a principal amount of US$16'000,000.00.

"**Public Registry**" means the Public Registry of Property and Commerce of San José del Cabo, Baja California Sur.

"**Regulation 1/2005**" shall mean circular 1/2005 (as amended or modified in the past or in the future), issued by Banco de México, which contains the Rules applicable to Credit Institutions, Brokerage Houses, Insurance Institutions, Financing Institutions, Limited Purpose Financial Companies and Financiera Rural that are involved in trust transactions are subject to.

"**Residential Unit Trust**" shall mean a trust to be formed under Mexican Law in order to contribute a Unit for the sale of Fractional Interests.

"**Real Property**" means the Real Property as defined in the Recitals and Representations sections of this instrument, which is part of the Trust Assets.

"**Recourse Guaranty**" means the recourse guaranty executed on March 10, 2006 by Guarantor and Lehman Brothers, in effect as of March 10, 2006, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in Fist Place.

"**Secured Obligations**" shall mean, as the context may require, each and every obligation, whether present or future, of Diamante Cabo, the US LLC, the Members of the US LLC and the Guarantor under the Amended and Restated Loan Documents, including, without limitation, the timely payment in full of any outstanding principal and interest and capitalizations thereof, if any, as well as the "Profit Participation Fee" and "Non-Utilization Fee", as such terms are defined in the Amended and Rested Loan Agreement, as well as each

CONFIDENTIAL                    DANSKE_0012741

and every present or future obligation of Diamante Cabo under this Trust and the Amended and Restated Loan Agreement, as the same may be amended or modified from time to time.

"**Settlor**" means Diamante Cabo San Lucas, S. de R.L. de C.V.

"**Transactions**" has the meaning ascribed to such term in **Clause 4(g)(6)**.

"**Trust**" means this Amended and Restated Irrevocable Guaranty Trust Agreement F/00321 and all its Exhibits, as the same has been and may modified from time to time.

"**Trusts Accounts**" means the bank accounts that the Settlor is hereby transmitting to the Trust which shall name the Trustee as the owner of such, and such bank accounts opened by the Trustee in accordance with the instructions of the Beneficiary in First Place.

"**Trust Assets**" has the meaning ascribed to such term in **Clause 5**.

"**Trustee**" means The Bank of New York Mellon, S.A., Institución de Banca Múltiple, as trustee under the Trust.

"**Unit**" means any lot, condominium and/or residential unit located at the Real Property subject to individual sale or transfer in accordance with the master condominium regime and property sub-regime to be created over the Real Property for purposes of the Project.

"**US LLC**" means Diamante Cabo San Lucas, LLC.

"**US Pledge Agreement**" means the pledge agreement as amended from time to time executed on March 10, 2006 by and between the Guarantor, the US LLC and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

**(b)** The following principles of interpretation shall apply for the purposes of this Trust:

CONFIDENTIAL

DANSKE_0012742

**(1)** When expressed in the singular form, the terms defined in the plural form shall have any individual meaning comprised to the plural form of such term and vice versa.

**(2)** Except as otherwise provided herein, all references in this Trust to Clauses, Exhibits or paragraphs shall be deemed made to Clauses, Exhibits and paragraphs of this Trust.

**(3)** The headings of Clauses of this Trust are included herein for convenience purposes only, and shall not affect the meaning or interpretation of any provision of this Trust in any manner whatsoever.

**(4)** Any reference herein to any person, whether or not identified by such term, shall be interpreted so as to include the successors and permitted assigns of such person.

**(5)** Any reference herein to a contract, agreement, covenant or document shall be interpreted to include any amendment and/or restatement to such contract, agreement, covenant or document.

**(6)** All Exhibits attached hereto shall be an integral part of this Trust.

**Clause 2.** <u>**Creation of Trust; Transfer of the Trust Assets.**</u>

**(a)** The parties hereto hereby ratify the creation of the Trust which constitutes an irrevocable guaranty trust with the Trustee in order to secure the complete payment and fulfillment of the Secured Obligations with the Trust Assets.

**(b)** The Trustee hereby confirms the acceptance of its appointment as trustee of the Trust, and its reception of the title (fiduciary ownership) of the Trust Assets including the Real Property, and agrees to act as provided in this Trust and applicable law in order to comply with the purposes of the Trust, including but not limited to the foreclosure proceeding established in **Clause 10**. This instrument constitutes evidence of the receipt by the Trustee of the Trust Assets.

CONFIDENTIAL

DANSKE_0012743

(c)     The Settlor and the Beneficiary in First Place hereby acknowledge and agree that transfer of title of Real Property and its Improvements in favor of the Trustee was perfected by means of the agreement that created the Trust formalized in by public deed number 65,041, volume 1,026, dated March 10, 2006, granted before the authority of Mr. José Alberto Castro Salazar, affiliated to Notary Public number 7 of the State, with authority in La Paz and Los Cabos and with residence in the State capital, which was duly recorded Public Registry of Property and Commerce on May 8, 2006 under docket 135, page 135, volume CCXLV, section I. The Settlor agrees to warrant title (*saneamiento para el caso de evicción*) to the Real Property, obligation which shall survive the expiration or early termination of the Trust.

(d)     The Settlor hereby transfers to the Trustee the ownership and title of all rights appurtenant or inherent to or arising from the Real Property, including but not limited to licenses, permits, rights, concessions, fixtures and Improvements of the Real Property. Also, the Settlor hereby transfers to the Trustee any and all Assets, Accounts Receivable, Contractual Rights and all rights, interests and benefits of Settlor under any insurance policies, all payments, monies, cash and all products and/or proceeds derived from or in connection with the Trust Assets, including, without limitation, all rights to receive all insurance proceeds and all amounts.

(e)     The irrevocable transfer of property and title to any rights hereby transferred to the Trust Assets, including without limitation, any Assets, Accounts Receivable, Contractual Rights and any rights of the Settlor under any of the agreements executed by the Settlor is perfected hereby.

(f)     The irrevocable transfer of the right, title and interest of the Settlor in any licenses and permits hereby transferred to the Trust Assets, to the extent permitted by applicable law, is hereby perfected. To the extent it is necessary to obtain any consent or approval from any governmental authorities necessary or appropriate in connection with the transfer to the Trustee of title to such licenses and permits and/or any rights of the Settlor thereunder, the Settlor shall obtain such consents and approvals.

CONFIDENTIAL                                                                          DANSKE_0012744

**(g)**     The irrevocable transfer of all rights, interests and benefits of Settlor under any insurance policies, all payments, monies, cash and all products and/or proceeds derived from or in connection with the Trust Assets, including, without limitation, all rights to receive all insurance proceeds and all amounts, are hereby perfected.

**(h)**     If any amounts are received by the Settlor with respect to any Assets, Contractual Rights, Accounts Receivable, rights, interests and benefits of the Settlor under any insurance policies, and any other payments, monies, cash, products, proceeds and/or insurance proceeds, such amounts shall be received by the Settlor as a depositary, free of charge, for the purposes of the Trust and shall be immediately deposited by the Settlor in the Collection Account. The irrevocable transfer of future Accounts Receivable and Contractual Rights in favor of the Trustee shall be perfected under this Trust, upon such future Accounts Receivable and Contractual Rights being created.

**(i)**     The Settlor agrees to, at its own cost, timely execute and sign all instruments and additional documents, and carry out all necessary additional actions according to applicable law or to the Amended and Restated Loan Agreement or any Amended and Restated Loan Document or that the Trustee or the Beneficiary in First Place reasonably request in writing, to perfect and defend the transfer of the Trust Assets or with the purpose of allowing the Beneficiary in First Place and the Trustee to exercise their rights and remedies under this Trust. The Settlor, within the 15 (fifteen) Business Days following the execution hereof, shall grant the irrevocable powers of attorney in the form attached as **Exhibit C**, pursuant to Article 2596 of the Federal Civil Code and its correlative articles in the other Civil Codes of the federal entities of Mexico, authorizing the Beneficiary in First Place to act in the Settlor's name and on its behalf in order to perform any acts described in this paragraph. The Beneficiary in First Place may request the Settlor to perform the acts described herein, but in the event that the Settlor fails to perform such actions in a term of 15 (fifteen) Business Days, without waiver to the Settlor's obligations, the Beneficiary in First Place shall be entitled but not obligated, to perform the tasks described in this paragraph.

**(j)**     With respect to any agreements authorizations, licenses or permits, in accordance with the terms of the Trust, that shall become part of the Trust Assets, the Settlor

CONFIDENTIAL                                                                              DANSKE_0012745

shall clarify in writing to the other party or the corresponding authority, as applicable, that **(i)** the rights arising therefrom are property of the Trustee as trustee under the Trust, **(ii)** any proceeds payable thereunder shall be deposited in the Collection Account.

**(k)** The Settlor shall notify the parties with whom it has entered into agreements that are being hereby transferred to the Trust Assets, in order to acknowledge the Trustee as the owner of such rights and agreements, such notice shall be made using the form attached hereto as **Exhibit D**. Some of the agreements that the Settlor hereby transfers to the Trust Assets are identified in **Exhibit E** hereto, provided that such agreements do not constitute all of the agreements transferred hereby to the Trust Assets.

**(l)** Likewise, the Settlor shall, within the next 10 (ten) Business Days following the execution hereof, notify the banks that maintain the accounts that the Settlor hereby transfers to the Trust Assets in order to acknowledge the Trustee as the owner of such accounts. The bank accounts hereby transferred by the Settlor to the Trustee are identified in **Exhibit F** hereto.

**(m)** In connection with the rights derived from the bonds or insurance policies that the Settlor hereby transferees to the Trust Assets, the Settlor shall, within the following 10 (ten) Business Days following the execution hereof, notify the insurance and bonding companies of such assignments in accordance with the form notice attached hereto as **Exhibit G**.

**Clause 3.**      **Parties to the Trust.**

**(a)** The following are parties to the Trust:

| | |
|---|---|
| **Settlor and Beneficiary in Second Place:** | Diamante Cabo San Lucas, S. de R.L. de C.V. |
| **Trustee:** | The Bank of New York Mellon, S.A., Institución de Banca Múltiple, División Fiduciaria (a Mexican Banking Institution) |

CONFIDENTIAL     DANSKE_0012746

**Beneficiary in First Place:** Danske Bank A/S, London Branch, the London Branch of a company incorporated in the Kingdom of Denmark and/or its authorized successors and assignees

(b) Subject to the conditions set forth herein, the Settlor, as Beneficiary in Second Place, shall have the right to the reversion of the remaining Trust Assets after payment in full of the Secured Obligations.

(c) The parties hereto represent that the transfer of the Trust Assets to the Trustee in the terms of the Trust does not constitute a sale of assets in terms of Article 14 V of the Federal Fiscal Code and does not generate any transfer tax.

(d) Pursuant to the terms of this Trust and of the Amended and Restated Loan Agreement, the successors, permitted assigns, substitute trustees or the parties that may replace the Trustee or the Beneficiary in First Place, as the case may be (or those that participate with them), shall be deemed as the "Trustee" and the "Beneficiary in First Place", respectively, for the purposes of this Trust.

**Clause 4.    Purposes of the Trust.**

The purposes of the Trust are the following:

(a) That the Trustee receive and retain ownership and title in the Trust Assets to secure the fulfillment of the Secured Obligations pursuant to the terms hereof.

(b) That cash and any and all payments derived from any Accounts Receivable and Contractual Rights shall be deposited in the Collection Account, in accordance with the Amended and Restated Loan Agreement and this Trust and that any rights and assets resulting from the Assets, Accounts Receivable and the Contractual Rights are transferred to the Trustee to form part of the Trust Assets.

(c) That as of the date hereof all rights, payments and assets that are part of the Trust Assets and that are received as consideration for any Trust Assets to any third parties,

CONFIDENTIAL                                                            DANSKE_0012747

or as indemnification for any damages, destruction, expropriation or losses to any such Trust Assets (including payments in connection with insurance policies), be applied in accordance with the terms of the Amended and Restated Loan Agreement and this Trust, and for any other purposes set forth in this Trust pursuant to the provisions hereof and the written instructions that the Trustee receives from the Beneficiary in First Place.

(d)    That the Trust Assets guarantee the Secured Obligations and for such purpose that the Trustee acts in accordance with the provisions of **Clause 10** and **Clause 11** regarding foreclosure on Trust Assets and application of proceeds in terms thereof (without prejudice to the applicability of other provisions of this Trust, as the case may be) in the Event of Default occurs.

(e)    Upon payment in full of the Secured Obligations and termination of the Amended and Restated Loan Agreement, and after the Beneficiary in First Place delivers to the Trustee a Payment in Full Notice and all payments to the Trustee have been satisfied pursuant to the terms hereof, the Trustee shall (i) revert title of the remaining Trust Assets to the Beneficiary in Second Place in the terms of the instructions that receives form the Settlor and, at the Settlor's expense, shall perform the actions so instructed in order for the Trust Assets to be reverted to the Settlor or the Settlor's designee as provided in this paragraph; or (ii) execute with the Settlor and the Beneficiary in First Place an amendment agreement to the Trust whereby the Beneficiary in First Place ceases to part of such agreement to the satisfaction of the Beneficiary in First Place.

(f)    That the Trustee maintain ownership of the Trust Assets, exercise the rights ancillary thereto and carry out all necessary acts for protection thereof, in accordance with the provisions hereof and applicable law and in accordance with the joint instructions received from the Settlor and the Beneficiary in First Place, provided that, the Trustee has not received a Notice of Default. In the event the Trustee has received a Notice of Default, the Trustee shall follow and comply only with the instructions given to it by the Beneficiary in First Place. In case the Trustee shall have actual knowledge of an emergency, the Trustee shall act in its own discretion using its best judgment, in which case the Trustee shall not be liable, except for its willful misconduct, negligence or bad faith determined by definitive resolution

CONFIDENTIAL                                                                      DANSKE_0012748

issued by a competent authority (it being understood that for purposes of this Trust, "actual knowledge" of the Trustee, means actual knowledge of the Trustee of information certain, received by officers with managerial oversight authority).

(g) If the Trust Assets or any portion thereof is cash:

(1) Any such cash shall be deposited by the Settlor into the Collection Account in order to be applied by the Agent of the Collection Account in the terms of the agreements that regulates the Collection Account and the Amended and Restated Loan Agreement. In the event such cash is received in any of the Trust Accounts, the Trustee, directly by written instruction from the Beneficiary in First Place or trough the Settlor in accordance with the powers of attorney granted by the Trustee for such purposes, shall deposit such amounts in the Collection Account in order to be applied by the Agent of the Collection Account in the terms of the agreements that regulates the Collection Account and the Amended and Restated Loan Agreement. In the event the Beneficiary in First Place has delivered to the Trustee a Notice of Default, all cash part of the Trust Assets shall be deposited by the Settlor or the Trustee, as applicable, in the Collection Account and the same will be applied and destined in accordance with the instructions of the Beneficiary in First Place. At no moment the Trustee shall have possession of any cash part of the Trust Assets unless otherwise instructed by the Beneficiary in First Place. If for any reason the Trustee receives cash that is part of the Trust Assets without being instructed by the Beneficiary in First Place, the Trustee shall deposit it into the Collection Account in accordance with the terms of this paragraph.

(2) If instructed by the Beneficiary in First Place, the Trustee shall invest such cash in Permitted Investments, in accordance with such instructions (said instruction hereinafter referred to as an "**Investment Instruction**"). The Trustee shall follow any Investment Instructions referred to in this paragraph (i) on the same day as received, if such day is a Business Day and provided the Investment Instruction in is possession of the Trustee before 11:00 a.m. (Mexico City time) and the funds relative to the corresponding investment are in a Trust Account, or (ii) on the next following Business Day, if such funds or such Investment Instruction is not in possession of the Trustee before 11:00 am (Mexico City

CONFIDENTIAL                                                                                    DANSKE_0012749

time), the day when received is not a Business Day; on the understanding that, even if funds are not in a Trust Account before 11:00 am (Mexico City time) on any given day, the Trustee shall nevertheless carry out its best efforts to fulfill Investment Instructions received later that day, if such day is a Business Day and the funds therefore are received by the Trustee before the end of such Business Day.

The Trustee shall be authorized, for purposes of fulfilling Investment Instructions, to open checking and investment accounts, in the name of the Trust in accordance with such Investment Instructions at the time and pursuant to the instructions received, over which the Trustee shall have, subject to the terms of this Trust and the contents of said Investment Instruction, the exclusive domain and control and the sole and only right to make withdrawals.

In carrying out Investment Instructions, the Trustee shall invest in Permitted Investments in financial instruments that have a term of maturity provided for in the Investment Instructions, (in any event not exceeding the maximum terms to maturity set forth in such Investment Instructions) and, as the case may be, subject to the ratings set forth in such Investment Instructions. If the Trustee does not receive an Investment Instruction as provided above or any cash amounts cannot be invested immediately on the same day of receipt of an Investment Instruction pursuant to the purposes of the Trust, any such cash amounts in the Trust Assets shall be invested in Permitted Investments.

(3)     In compliance with Regulation 1/2005, the Trustee has clearly and unmistakably explained to the parties of this Trust the contents of Article 5.4 of Regulation 1/2005 and the following preventive measures:

(i)     The Trustee may carry out the transactions provided in Article 5.4 of Regulation 1/2005, which means, operations with The Bank of New York Mellon, S.A., Institución de Banca Múltiple, acting in its own account, as long as such transactions are permitted by law and applicable regulations and preventive measures are provided to avoid conflicts of interest (the "**Transactions**").

CONFIDENTIAL                                                         DANSKE_0012750

(ii)    As long as the Trustee has not received written notice from the Beneficiary in First Place that an Event of Default has occurred, the Transactions shall be executed with prior express written approval, in each case, by the Settlor to the Trustee by any means which leaves documented proof, including electronic means. If an Event of Default occurs and is continuing (as so notified in writing by the Beneficiary in First Place to the Trustee), the Transactions shall be executed with prior express written approval, in each case, by the Beneficiary in First Place in the manner described above.

(iii)   During the execution of the Transactions, the rights and obligations of the Trustee acting in such capacity and on its own account shall not be terminated by offset (*confusión*).

(iv)    The department of The Bank of New York Mellon, S.A., Institución de Banca Múltiple, while acting on its own, and the trust division of Trustee, shall not be directly dependant between them.

(v)     In compliance with Section 3.2 of Regulation 1/2005, it is noted that funds received by the Trustee that are not immediately invested in according with the purpose of the Trust, shall be deposited in a credit institution at the latest on the next Business Day after received, while they are applied in accordance with the purpose of the Trust. If such deposit is made to open accounts of the credit institution acting as trustee, such deposit shall generate the highest return that such institution pays for operations with the same term and amount in the same dates on which the deposit is made.

(4)    In the Transactions referred to in the preceding paragraphs of this **Clause 4(g)**, the Trustee shall comply with the guidelines and policies that The Bank of New York Mellon, S.A., Institución de Banca Múltiple, applies in similar operations. The Trustee shall not be liable for reductions in the value of investments made in accordance with item **Clause 4(g)(2)**, whether on account of market fluctuations or otherwise, and with respect to any detriment in the value that investments made by the Trustee in accordance with the provisions of this clause could suffer, except for willful misconduct, negligence or bad faith determined by definitive resolution issued by a competent authority. The parties hereby

CONFIDENTIAL                                                                 DANSKE_0012751

expressly release the Trustee of any responsibility in connection with the acts carried out by the Trustee pursuant to section (e) of **Clause 4** as well as in connection with any loss that the value of the investments made by the Trustee may suffer pursuant to this **Clause 4(g)**, except in the case of willful misconduct, negligence or bad faith determined by definitive resolution issued by a competent authority.

(h)     That the Trustee enter into agreements and other instruments necessary, and carry out all relevant actions, to create and maintain the security interest created hereunder, and that the Trustee open any bank accounts pursuant to the written instructions of the Beneficiary in First Place with at least 5 (five) Business Days in advance.

(i)     That, prior to the delivery by the Beneficiary in First Place to the Trustee of a Notice of Default and provided the Beneficiary in First Place has approved and notified in writing to the Trustee such actions, the Trustee perform in connection with the Real Property and Improvements all valid legal acts that the Settlor may request expressly and in writing. Such acts shall **(1)** not affect the trust guaranty granted to the Beneficiary in First Place, **(2)** constitute permitted actions under the Trust and the Amended and Restated Loan Documents, **(3)** constitute mergers, land subdivisions, rights of way, condominium regimes, or acts that would limit the ownership of the Real Property without the prior written consent of the Trustee, which may only be given prior instruction of Beneficiary in First Place to that effect, and **(4)** not sell or encumber any part of the Trust Assets without the prior written consent of the Trustee, which may only be given prior instruction of Beneficiary in First Place to that effect. After delivery of a Notice of Default all acts described herein shall be carried out by the Trustee per express written instruction of the Beneficiary in First Place.

(j)     That upon written instructions solely from the Beneficiary in First Place to the Trustee, the Trustee **(1)** release any part of the Trust Assets in order for the Settlor to sell them to third parties, prior authorization by the Beneficiary in First Place of the document containing such sale, transfer and release, authorization that must be delivered within 3 (three) Business Days following the date on which the Beneficiary in First Place receives the document, as long as all the required documentation for such sale, transfer or release has been

CONFIDENTIAL                                                                    DANSKE_0012752

delivered, or **(2)** establish a Residential Unit Trust conveying a Unit forming part of the Trust Assets.

**(k)**     That the Trustee, in accordance with the joint written instructions given to that effect by the Beneficiary in First Place and the Settlor, grant a special power of attorney for the sale of the any part of the Trust Assets in the terms that the Settlor and the Beneficiary in First Place determine.

**(l)**     That the Settlor on behalf of the Trustee exercise all rights and permits forming part of the Trust Assets, provided that, the Beneficiary in First Place has not delivered a Notice of Default, and always in accordance with the terms of the Trust and authorized by the Beneficiary in First Place. Upon the delivery of a Notice of Default, the Trustee shall revoke the powers of attorney granted to the Settlor in accordance with the instructions of the Beneficiary in First Place and will exercise all of the rights and permits forming part of the Trust Assets as directed by the Beneficiary in First Place without the need for the Settlor's consent.

**(m)**     That the Trustee, previously approved by the Beneficiary in First Place, grant the powers of attorney required to the person or persons designated by the Settlor in writing to exercise such powers of attorney, in connection with the process for obtaining all the permits, licenses and/or required authorizations for the development of the Project. After a Notice of Default has been delivered, the Trustee shall revoke said powers of attorney as instructed by the Beneficiary in First Place without the need to obtain the consent of the Settlor.

**(n)**     That the Trustee carry out all acts that are entrusted to it pursuant to this Trust (including, without limitation, the execution of any instrument, performance of any legal act, the granting of mercantile commissions and the cancellation and extinction of the Trust), in accordance with this Trust, applicable law and the instructions of the Beneficiary in First Place or the Settlor, as applicable.

CONFIDENTIAL                                                    DANSKE_0012753

**Clause 5.** <u>Trust Assets.</u> The Trust Assets (the "**Trust Assets**") are all of the following assets and rights:

(a)     The Real Property (and Improvements), Accounts Receivable and Contractual Rights.

(b)     Any improvements or proceeds, whether pending or already obtained, resulting from any of the Trust Assets.

(c)     All rights and assets resulting from the transformation of any of the Trust Assets.

(d)     All proceeds and resources resulting from the sale, lease or transfer of any of the Trust Assets.

(e)     All rights, payments and assets that the Settlor receives or has a right to receive on and after the date hereof as consideration for the transfer to any third parties of title and property to any Trust Assets or as indemnification for any damages, destruction or losses to any such Trust Assets or with respect to any Accounts Receivable.

(f)     All cash and all assets, products and/or proceeds derived from or in connection with the Trust Assets, including without limitation, any and all amounts deposited in any bank accounts.

(g)     The cash amounts resulting from the foreclosure on the Trust Assets, as the case may be.

(h)     The right to receive any amount which is received as compensation for the expropriation of a Trust Asset.

(i)     Any rights, interest or earnings derived from any investment of the amounts which constitute the Trust Assets.

(j)     Any other asset or right acquired by the Trustee acting pursuant to the Trust.

CONFIDENTIAL                                                                                DANSKE_0012754

**(k)** The proceeds and products (*frutos*) of the Trust Assets.

**(l)** Any other right in favor of the Trustee as owner of the Trust Assets.

**(m)** All rights, proceeds, payments and assets that the Settlor receives or has a right to receive on and after the date hereof as a consequence of the use of any of the Trust Assets in their ordinary course of business pursuant to the terms and conditions hereof or as a consequence of the use by the Settlor in its ordinary course of business of any Accounts Receivable (or any assignment thereof).

The Trust Assets shall exclude: each and every one of the obligations derived from the agreements and contracts forming part of the Trust Assets.

**Clause 6.    Indivisibility of the Trust Assets.**

Notwithstanding any foreclosure procedure provisions set forth herein, so long as this Trust is in full force and effect, the Trust Assets may not be divided, given that the security interest created on the Trust Assets covers the Trust Assets as a whole, regardless of whether the Trust Assets are individualized, separated or divisible. Therefore, the Settlor expressly and irrevocably waives any right that it may have to request the reduction or division of the Trust Assets as a consequence of any partial payments made in connection with the Secured Obligations. The Trust Assets shall only be reduced or divided by a written instruction delivered to the Trustee signed by the Settlor and Beneficiary in First Place with respect to the matters set forth in this Trust and the Amended and Restated Loan Agreement.

For purposes of the provisions of the LGTOC, the parties agree that the property over the Trust Assets shall not be reverted to the Settlor in the event that their value increases during the duration of this Trust.

**Clause 7.    Possession and Use of the Trust Assets.**

**(a)** As long as no Event of Default occurs, the Trustee grants the possession of the Real Property to the Settlor, in the terms and for the effects of this Trust and the applicable Articles of the LGTOC. Following the occurrence and during the continuance of an Event of

CONFIDENTIAL                                                                                           DANSKE_0012755

Default (and expiration of any cure period), such possession shall be revoked. The Settlor agrees that its rights under the LGTOC, in connection to the Trust Assets which it has transferred to the Trustee, shall be limited to the following: **(1)** to the use of such Trust Assets for its own benefit, during its normal course of business; and **(2)** to sell or grant the use of appropriate Units at market prices. Except for any actions that the Settlor may carry out in the normal course of its business as approved by the Beneficiary in First Place, the Trust Assets shall not be combined, united or in any other way commingled with other assets, except through a written instruction delivered to the Trustee signed by the Settlor and the Beneficiary in First Place.

The rights granted to Settlor pursuant to paragraph (a) above, shall be deemed automatically revoked and will cease to have effect on the day the Beneficiary in First Place delivers to the Trustee and the Settlor a Notice of Default.

**(b)** The Settlor, in its capacity as depositary of the Trust Assets, which possession was granted pursuant to the terms of paragraph (a) above:

**(1)** shall maintain the Trust Assets as depositary and keep originals of the documents evidencing title and property of the Trust Assets, or copies certified by a notary public which shall have been delivered or shall be delivered to the Trustee according to this Trust.

**(2)** shall not use the Trust Assets for any purpose that has not been expressly authorized by this Trust or the Amended and Restated Loan Agreement;

**(3)** shall be responsible, pursuant to applicable law for any and all damages and detriments caused to any third party (including the Beneficiary in First Place and the Trustee) due to the possession and use of the Trust Assets;

**(4)** shall pay all necessary costs to repair, manage, and maintain the Trust Assets in good condition, subject to normal use and wear and tear;

CONFIDENTIAL                                    DANSKE_0012756

(5)     pursuant to the LGTOC, Settlor shall assume the risk of loss, damage or detriment of all of the Trust Assets;

(6)     within 5 (five) Business Days following the day the Settlor becomes aware of any damage to any Trust Assets, the Settlor shall submit to the Trustee and the Beneficiary in First Place a notice (the "**Notice of Damaged Assets**") in the form attached hereto as **Exhibit B**, providing information on any event the consequence of which is the damage or loss of Trust Assets or if the Trust Assets are at risk of suffering any damage, and shall take any necessary actions to prevent the detriment of the Trust Assets. The Trustee shall have no obligation to secure, and shall not be required to make demands for, the notice or other information provided for under this paragraph;

(7)     As long as no Notice of Default has been delivered to the Trustee, the Settlor under its responsibility and discretion shall allow third parties to have access to the Trust Assets, perform all the acts for the development of the Project; and

(8)     subject to the relevant provisions of the Amended and Restated Loan Agreement, shall obtain at its expense the insurance policies that cover the Trust Assets against all type of risks and all such other coverages and insurance policies required under the Amended and Restated Loan Agreement, and shall also deliver to the Trustee originals of all such insurance policies, duly endorsed in favor of the Trustee, designating the Beneficiary in First Place as preferred beneficiary or additional insured, as the case may be, acknowledging the assignment to the Trustee of all rights, interests and benefits of the Settlor before the insurance companies under any such insurance policies. On each maturity date of an insurance policy, the Settlor shall deliver to the Trustee the originals of the evidence of payment of the corresponding premiums. The Trustee shall have no obligation to secure, and shall not be required to make demands for, the notice or other information provided for under this paragraph.

(c)     Subject to reasonable safety requirements, to the provisions of the Amended and Restated Loan Agreement and to applicable law, the Settlor shall allow the employees, representatives, or agents of the Beneficiary in First Place to inspect the Trust Assets during

CONFIDENTIAL                                                                    DANSKE_0012757

reasonable periods within business hours, with previous written notice given with at least 5 (five) Business Days prior to the relevant day of inspection; *provided*, however, that such inspection shall not interfere unnecessarily with the personnel and the operations of the Settlor, as well as the development of the Project.

**(d)** The Settlor hereby agrees to be liable for title defects (including without limitation *saneamiento para el caso de evicción*) in respect of the Trust Assets, pursuant to applicable law. In the event any amount is paid to the Beneficiary in First Place for claims related with any title defect of the Trust Assets, such amount shall be considered for effects of calculating Settlor's responsibility in the terms of this paragraph. This responsibility is assumed by the Settlor before the Trustee, granting to the Trustee the right to compel the Settlor in such terms in accordance with written instructions received from the Beneficiary in First Place, before the person or persons to whom the Trustee shall transfer ownership and title of any Trust Assets. Without prejudice to the foregoing, any obligation of the Trustee before third parties (provided that such obligation may not foresee legal actions against the Trustee) arising from title defects with respect to the Trust Assets (including without limitation *saneamiento para el caso de evicción*) may be complied with exclusively by the Settlor within 7 (seven) Business Days following the Trustee's or the Beneficiary in First Place's written request to the Settlor, and in case of failure thereof, the Trustee, prior written instruction of the Beneficiary in First Place, may charge any such obligations to the existing Trust Assets. Upon any of the Trust Assets being transferred, the Trustee shall notify to the relevant acquirer or acquirers that all the obligations that could result form title defects shall be complied by the Settlor in terms of article 2123 and others related of the Federal Civil Code (*Código Civil Federal*).

**Clause 8.**     **Appraisal of the Trust Assets.**

**(a)** The parties hereby agree that the Beneficiary in First Place may, prior written notice delivered to the Trustee and the Settlor, request to perform an appraisal of the Trust Assets (the "**Appraisal**") in accordance with the relevant provisions of the Amended and Restated Loan Agreement or following the occurrence and during the continuance of an Event of Default.

JNN 291386 v2                                    33

**Clause 9.**     **Covenants.** (a) As long as this Trust is in full force and effect, the Settlor agrees as follows:

**(1)**     to carry out at its own cost and expense all actions necessary to maintain the security interest created hereunder valid and binding, and to enable the Trustee to carry out any and all actions provided in this Trust;

**(2)**     to transfer to the Trustee the property of any Trust Assets as it acquires, pursuant to this Trust; and

**(3)**     to comply with all the terms and conditions set forth hereby, in the Amended and Restated Loan Agreement and in the Amended and Restated Loan Documents.

**(b)**     The Trustee shall maintain the ownership and title of the Trust Assets pursuant to the provisions of this Trust and applicable law. Except as otherwise provided expressly herein, the Trustee shall act exclusively according to the written instructions from the Beneficiary in First Place and shall dismiss any instruction received from the Settlor. All instructions directed to the Trustee shall be made in writing and shall be delivered pursuant to the terms set forth in **Clause 20**.

**Clause 10.**     **Foreclosure Proceeding.**

The parties hereby agree to be bound by a special proceeding of foreclosure of the Trust, in the terms of the special section included in this **Clause 10(c)**. The parties agree that in case of any default of the Secured Obligations or the occurrence of an Event of Default, the Beneficiary in First Place may instruct the Trustee to proceed with the foreclosure and sale of the Trust Assets, according to the following procedure:

**(1)**     Upon the occurrence of an Event of Default and the expiration of any cure period, the Beneficiary in First Place may direct the Trustee to proceed with the sale of all or a part of the Trust Assets in order to pay for the Secured Obligations. In case the Trustee receives an instruction to sell (hereinafter, an "**Instruction to Sell**") from the Beneficiary in First Place, it shall proceed as set forth herein. The Instruction to Sell shall be

CONFIDENTIAL                                                                 DANSKE_0012759

signed by the Beneficiary in First Place and accompanied by a copy of the Trust certified by a notary public, shall specify a precise description of any past due and outstanding amount of the Secured Obligations, and shall include a copy of the notice through which the lender in the Amended and Restated Loan Agreement requests the payment of the corresponding Secured Obligations or state that the Settlor has not performed its obligations under the Amended and Restated Loan Agreement or the Trust or any of the Amended and Restated Loan Documents, as applicable. For purposes of this Trust, an Instruction to Sell shall enter into effect the Business Day following that in which the Trustee receives an Instruction to Sell according to this clause.

(2)     As soon as possible, but in no event later than 5 (five) Business Days following the date in which the Trustee receives the Instruction to Sell from the Beneficiary in First Place, the Trustee shall give written notice to the Settlor of the receipt of said Instruction to Sell pursuant to the terms set forth in **Clause 20** with a copy to the Beneficiary in First Place.

(3)     The Settlor shall have a term of 20 (twenty) Business Days from the date on which it receives a copy of the Instruction to Sell from the Trustee to oppose the sale of the Trust Assets. The Settlor may only oppose the sale if it provides the Trustee proof of **(i)** payment to the Beneficiary in First Place or any other means that evidence compliance of the Secured Obligations with respect to which the existence of an Event of Default was notified under the Amended and Restated Loan Agreement, **(ii)** the existence of a cure period, which has not elapsed, granted by the Beneficiary in First Place under the Amended and Restated Loan Agreement for the fulfillment of the Secured Obligations, or **(iii)** novation of the obligations under the Amended and Restated Loan Agreement, *provided*, however that such evidence is duly authorized in writing and executed by the Beneficiary in First Place. The Trustee shall be free to consult with the Beneficiary in First Place as to the accuracy of any document presented by the Settlor as proof under this paragraph.

(4)     In case the Settlor does not evidence, to the satisfaction of the Trustee, any of the events described in paragraph (3) above in the terms set forth and within the period of time mentioned in such paragraph, the Trustee, prior instruction from the Beneficiary in

CONFIDENTIAL                                                      DANSKE_0012760

First Place **(i)** shall deliver immediately to the Beneficiary in First Place, at the bank account the Beneficiary in First Place indicates, any cash amount part of the Trust Assets, that is in the Trust Accounts, for its application to the payment of the Secured Obligations, pursuant to the provisions of the Amended and Restated Loan Agreement and this Trust; and **(ii)** shall immediately proceed, through an Advisor (as such term is hereinafter defined) to sell the Trust Assets pursuant to this **Clause 10**; provided that the Beneficiary in First Place provides to the Trustee sufficient funds to cover any cost or expenses to be incurred in carrying out this foreclosure proceeding, including third party expenses for the execution, duties and any other obligation resulting from said proceeding. The Trustee must request the performance of an Appraisal of the Trust Assets pursuant to the terms of **Clause 8** to determine the value of the assets for purposes of the auction.

(5)     The sale shall be conducted by the Trustee through an auction process with the participation of a third party designated for such purpose by the Beneficiary in First Place, which shall take place in Mexico, Federal District or in San José del Cabo, Baja California Sur, as elected in writing by the Beneficiary in First Place. The Trustee shall announce the auction (hereinafter referred to as an **"Auction Notice"**) in any of the major newspapers of the domicile in which the Trust Assets are located or offered for sale and in the city of Mexico, Federal District. At the direction of the Beneficiary in First Place, the Trustee shall also conduct a study or investigation of potential buyers, and shall invite potential buyers to participate in the auction process. For purposes of this clause, the Trustee shall employ and pay third parties designated in writing by the Beneficiary in First Place (**"Advisors"**) whose reasonable fees and expenses shall be borne by the Trust Assets or the Settlor. To the extent the Beneficiary in First Place deems necessary, an Advisor shall be in charge of preparing and distributing at the Settlor's cost and as soon as is reasonably possible, a confidential information memorandum (the **"Information Memorandum"**) to be delivered to potential buyers that have demonstrated an interest in purchasing the Trust Assets. The Information Memorandum shall advise potential buyers on the amount (to be determined by the Advisors) they must submit to the Trustee by means of a certificate of deposit issued by a bank, in order to guarantee the seriousness of their offer, in case any such potential buyer decides to participate in such auction. Any Advisors shall be substituted by the Trustee at the

CONFIDENTIAL                                                                      DANSKE_0012761

written request of the Beneficiary in First Place. The Trustee shall notify the Beneficiary in First Place of any event or fact of which it has actual knowledge that could affect the foreclosure process so that the Trustee is in a position to act pursuant to the instructions received from the Beneficiary in First Place with respect thereto.

(6)     Upon distribution of the Information Memorandum among the potential bidders, or after the Advisors and/or the Trustee have distributed any additional information among the potential bidders, the Trustee shall inform such bidders and the Settlor, of the date, place and time set for the auction, as well as any applicable bid base price determined by the Appraisal or Appraisals at the request of the Beneficiary in the First Place (the "**Base Price**" ). Such information shall be included in the Auction Notice, which date shall not exceed 30 (thirty) calendar days as from the date on which, if applicable, the Advisors give notice to the Trustee that the distribution of the Information Memorandum has concluded.

(7)     The participating bidders shall deliver their bids in writing to the Trustee in a closed and sealed envelope within the date and time set forth in the Auction Notice, along with a certificate of deposit for the amount indicated in the Information Memorandum as guarantee of the seriousness of their offer.

(8)     The Trustee shall open the envelopes before a notary public acceptable to the Beneficiary in First Place, and the bidders or their representatives who wish to assist, on the date and time for the auction, and shall declare as winner whoever submits the highest bid (which shall be equal to or greater than the applicable Base Price, if any) and the best payment conditions at the Advisors' judgment, or if no Advisor has been hired, at the judgment of the Beneficiary in First Place (in which case, economic conditions shall be determined under economic criterion, procuring to obtain the maximum financial benefit derived from the sale or auction of the Trust Assets). As of the date the envelopes are opened, the Trustee shall diligently transfer the Trust Assets to the winning bidder.

(9)     The winning bidder shall pay the price offered according to the conditions and within the term of the winning bid.

CONFIDENTIAL                                                                      DANSKE_0012762

**(10)**     In the event the bidder that submitted the wining offer does not make the relevant payment within the agreed term, the deposit shall be retained by the Trustee in favor of the Beneficiary in First Place, who shall apply such amount according to the stipulations of this Trust, to the payment of the Secured Obligations in accordance with the terms agreed herein.

**(11)**     If the term referred to in paragraph (9) above has expired without the winning bidder having paid the purchase price offered, the Trustee, at the direction of the Beneficiary in First Place, shall notify the bidder that made the second best offer (within the following 3 (three) Business Days); if such bidder maintains its initial offer, a new term for payment of the purchase price shall be granted; if the second best bidder does not maintain its offer, at the direction of the Beneficiary in First Place, the Trustee and the Advisors may continue with the bidders who made the best offers in descending order, according to the foregoing procedure.

**(12)**     If it is not possible to carry out the sale to any of the bidders, a new auction shall take place pursuant to the aforementioned procedure and the Trust Assets will be sold to the highest bidder, provided that in such auction the will not have a starting or base price.

**(13)**     The Trustee shall, at the direction of the Beneficiary in First Place, accept offers for only a part of the Trust Assets and, in such case, the Beneficiary in First Place shall instruct the Trustee to perform new auctions to sell the remainder following the aforementioned procedure.

**(14)**     The parties hereby expressly and irrevocably acknowledge that the foreclosure of the guarantee created under this Trust may be by judicial or extrajudicial proceeding; and if the Beneficiary in First Place so decides to foreclose by extrajudicial proceeding, it shall be carried out pursuant to this **Clause 10**.

The Settlor hereby acknowledges and signs the text contained in this **Clause 10** (special section) below and at the end of this Trust, and hereby confirms its express consent

CONFIDENTIAL                                                                                     DANSKE_0012763

and irrevocable instruction to the Trustee to carry out the procedure for the extrajudicial foreclosure of the Trust Assets as set forth in this **Clause 10**.

The Settlor:

_____

By: Kenneth Aboud Jowdy

Title: General Manager

**Clause 11.** **Application of Proceeds from Foreclosure.**

(a)     The Trustee shall apply the proceeds resulting from the sale of the Trust Assets according to the instructions of the Beneficiary in First Place, observing the following order of application:

(1)     First, for payment of any amounts due to the Trustee according to this Trust;

(2)     Second, for the payment of any reasonable expenses incurred during the extrajudicial foreclosure and sale of the Trust Assets, including, without limitation, the cost of the Appraisal described in **Clause 8**, the costs resulting from the employment of third parties responsible for the foreclosure, rights and any other obligations resulting from the sale of the Trust Assets, in each case, any other expense related with the foreclosure process set forth in **Clause 10**, to the extent approved by the Beneficiary in First Place in writing prior to the hiring of such party;

(3)     Third, for the reimbursement of any reasonable expenses paid by the Beneficiary in First Place as a result or by virtue of the sale of the Trust Assets, or that the Settlor should have paid according to the provisions hereof;

(4)     Fourth, for the payment to the Beneficiary in First Place of any and all Secured Obligations (pursuant to the order established under the Amended and Restated Loan

CONFIDENTIAL                                                                                          DANSKE_0012764

Agreement), which amount may be deposited into the Collection Account at the election of the Beneficiary in First Place; and

(5)     Fifth, once the aforementioned items have been repaid, the remainder shall be reverted to the Settlor in its capacity as Beneficiary in Second Place or to the person the Settlor designates, according to the written instructions given for such purposes by the Settlor to the Trustee and according to **Clause 12** below.

(b)     Once the Trustee has sold all the Trust Assets, it shall deliver the funds of such sale and shall distribute the Trust Assets according to the terms provided in subparagraph (a) above, to the Beneficiary in First Place or its designee.

**Clause 12.     Reversion of the Trust Assets.**

(a)     Once each and every one of the Secured Obligations has been paid and complied with in full, the parties hereby agree that the Beneficiary in First Place shall deliver a notice to the Trustee (the **"Payment in Full Notice"**) according to the form attached hereto as **Exhibit A** by means of which the Beneficiary in First Place notifies the Trustee that the Settlor has complied with all the Secured Obligations and that no right or action exercisable against the Settlor for the protection of the Amended and Restated Loan Agreement exists. In the event that the Beneficiary in First Place does not deliver the Payment in Full Notice within 5 (five) Business Days following payment in full, the Settlor is hereby authorized to give notice to the Trustee thereof whereby it represents that all Secured Obligations have been complied with in full and all commitments to make Loans have terminated; provided that in all cases such notice shall be accompanied by written confirmation from the Beneficiary in First Place. In case such notice from the Settlor is received by the Trustee in the terms described above and accompanied by the written confirmation of the Beneficiary in First Place, the Trustee shall be authorized to proceed as described in this Clause as if a Payment in Full Notice had been delivered.

(b)     Within 5 (five) Business Days following the date on which the Trustee receives the Payment in Full Notice, **(i)** the property over the Trust Assets shall be reverted to the

CONFIDENTIAL                                                                                          DANSKE_0012765

Settlor or to the person the Settlor designates and the Trust shall be terminated; or **(ii)** the Trustee will execute with the Trustee and the Beneficiary in First Place an amendment agreement to the Trust whereby the Beneficiary in First Place will cease to be a part of it to its complete satisfaction.. In case of reversion of the Trust Assets, the Trustee agrees to execute and sign any agreements, documents and instruments, and shall perform any actions that the Settlor reasonably requests in writing (at Settlor's cost) in order to legally perfect said transfer, including without limitation the actions set forth in **Clauses 2 and 4**.

The parties expressly acknowledge that any taxes, levies and expenses that result from the actions described in the preceding paragraph shall at all times be borne by the Settlor.

**Clause 13.** <u>**Obligations and Limitation of Liability of the Trustee; Defense of the Trust Assets.**</u>

**(a)** The Trustee agrees to manage the Trust Assets, perform its obligations and exercise its rights pursuant to the provisions hereof according to Mexican law. The Trustee's obligations hereunder are limited to those expressly stated herein and shall be carried out by the Trustee in the terms set forth herein and pursuant to the instructions of the Beneficiary in First Place or the Settlor, as applicable.

**(b)** The parties hereto agree that neither the Trustee nor the Beneficiary in First Place shall be liable for any act or omission of the other parties or of any third party, including any Advisor that could result in the impossibility of complying with the purposes hereof.

**(c)** If the Trust Assets are insufficient to pay in full all the Secured Obligations, the Trustee shall bear no liability whatsoever to make contributions to the Trust, or to comply with the Secured Obligations.

**(d)** The Settlor shall be bound to notify immediately and in writing the Beneficiary in First Place of any event affecting the Trust Assets or the rights arising from this Trust, to the Settlor's knowledge.

CONFIDENTIAL

**(e)**     The Trustee shall inform the Settlor and the Beneficiary in First Place in writing of any threat to the Trust Assets or of any Event of Default of which it has knowledge; provided that the Trustee shall not have an obligation to investigate the existence of any such threat or Event of Default.

**(f)**     The Trustee shall grant in favor of the individuals or entities jointly designated in writing by the Settlor the powers of attorney necessary to defend the Trust Assets; provided that in case of an Event of Default (and the expiration of any cure period), such powers of attorney shall be granted solely upon the instructions of the Beneficiary in First Place. In case an attorney-in-fact has not been designated by the Settlor pursuant to the foregoing, and the lack of defense could affect the Trust Assets, the Trustee shall grant powers of attorney to the individuals as directed by the Beneficiary in First Place, who shall provide the appropriate instructions for the defense of the Trust Assets until the Settlor provides written instructions regarding such defense. The Trustee shall not be liable for the actions of such attorneys-in-fact, nor for payment of the corresponding costs and expenses, which shall be borne by the Settlor.

**(g)**     In case an urgent action, of which the Trustee has actual knowledge, is required for the protection and maintenance of the Trust Assets, the Trustee shall immediately notify the Beneficiary in First Place and Settlor and take any actions in accordance with this the instructions of the Beneficiary in First Place.

**(h)**     If the Trustee receives a judicial notice or otherwise, or a claim brought against the Trust or the Trust Assets, the Trustee shall send, on the day of its reception or at the latest on the next Business Day, a copy of such notice or claim to the Settlor and the Beneficiary in First Place pursuant to the terms set forth in **Clause 20** and shall send an additional copy via facsimile to the fax numbers indicated in **Clause 20** or via any other electronic means, on the same day it receives such notice or claim, unless received after 5:00 p.m. (Mexico City time) in which case any such notice shall be delivered on the following Business Day.

**(i)**     Notwithstanding any other terms and conditions hereof, the parties acknowledge that given the nature of some of the assets and rights which comprise the Trust

CONFIDENTIAL                                                                    DANSKE_0012767

Assets, some of such assets and rights may not be fully identified at the time a foreclosure procedure under **Clause 10** is expected to commence. In this respect, the Settlor agrees to deliver to the Trustee and the Beneficiary in First Place all the information and documentation which may be required (in addition to any other express requirement pursuant to this Trust), in order to fully identify in any moment any of such rights and assets, and in any case before the Trustee receives an Instruction to Sell. The Trustee shall not be responsible for any failure to comply with this obligation, except for its own negligence, willful misconduct or bad faith determined by definitive resolution issued by a competent authority. The Beneficiary in First Place shall provide the Trustee the information it has for the purposes described above, as the case may be. In the event that in the exercise of its duties under **Clause 10**, the Trustee is required by a judicial authority, a certified appraiser, Advisor or bidder to identify individually and separately the assets which comprise the Trust Assets, the Trustee is authorized to **(i)** provide the most updated information it has in connection to such assets or which it has received from the parties to this Trust, and **(ii)** notify in writing to the Beneficiary in First Place of such request within 3 (three) Business Days following the date on which such request had been communicated to the Trustee and to respond such request in the manner indicated in writing by the Beneficiary in First Place.

**Clause 14.** <u>**Mandatory Provisions Regarding Trustee Liability.**</u>

Pursuant to Article 106, XIX, of the Credit Institutions Law and the provisions of Regulation 1/2005, the Trustee represents that it has explained clearly and correctly to the parties hereto the terms, legal meaning and consequences of the following provisions, which are herein transcribed for any purpose required by law:

*"ARTICLE 106. It shall be prohibited to banking institutions:*

*XIX. In the performance of the transactions referred to in Section XV of Article 46 of this Law:*

*a) Derogated.*

CONFIDENTIAL                                                                              DANSKE_0012768

*b) To respond to the Settlor, principals or agents, of any breach by the debtors, for loans granted thereto, or on behalf of issuers, for securities acquired, unless it is due to their fault, as set forth in the last paragraph of article 391 of the General Law of Negotiable Instruments and Credit Transactions, or to guarantee obtaining certain returns in connection with funds, the investment of which is entrusted to credit institutions.*

*If upon termination of the trust agreement, mandate or agency established to grant loans, any such loans shall have not been repaid by the debtors, the institution shall transfer them to the settlor or the beneficiary, as the case may be, or to the representative or agent, and the credit institution shall refrain from repaying any outstanding amounts.*

*In any trust agreements, mandates or agencies, the prior paragraphs shall be inserted conspicuously as well as a representation from the institution to the effect that it has, clearly and correctly, made its meaning be known to the persons from whom it has received assets for their trust conveyance.*

*c) To act as trustees, attorneys-in-fact or agents in trusts, mandates or agencies, respectively, by means of which public resources are obtained directly or indirectly, through any act that creates a direct or contingent liability, except for trusts created by the Federal Government through the Ministry of Finance and Public Credit and trusts through which securities registered in the National Registry of Securities are issued pursuant to the Mexican Securities Market Law;*

*d) To carry out its obligations under trusts, mandates or agencies referred to in the second paragraph of article 88 of the Investment Trust Law;*

CONFIDENTIAL

DANSKE_0012769

*e) To participate in trusts, mandates and agencies for the avoidance of limitations and prohibitions of financial legal provisions;*

*f) To use funds or securities of trusts, mandates or agencies created for the granting of credits in which the trustee has the discretional authority to enter into transactions in which the debtors are or may be their trust delegates; proprietary and alternates members of the board of directors or management board, as applicable, whether on duty or not; the external auditors of the institution, the members of the technical committee of the applicable trust; the upward or downward bloodline relatives in first degree or the spouses of said individuals, the corporations on which said individuals or institutions have a majority on their shareholders meetings, and the individuals or entities determined by the Central Bank through the issuance of general rules, and*

*g) To manage rustic property, unless they have been appointed as administrators in order to distribute the estate amongst heirs, associates or creditors, or to pay an obligation or to guarantee its compliance thereto with the value of the property or its products, and subject to the fact that in no event their management of the property must exceed a two-year term, except for production and guaranty trusts.*

*Any agreement contrary to the provisions of the preceding sections shall be null and void."*

In addition, pursuant to the provisions set forth in section 5.5 of Regulation 1/2005, the relevant provisions of section 6 of such Regulation 1/2005 are hereby transcribed for all pertinent purposes:

*"6. PROHIBITIONS*

45

DANSKE_0012770

*6.1. In the execution of trust agreements, Trustees shall not be permitted to:*

*a) Charge to the Trust Assets prices different than those agreed at the time of arranging the corresponding transaction;*

*b) Guarantee the payment of revenues or prices on funds, the investment of which is entrusted to the trustee, and*

*c) Carry out transactions in terms and conditions that are against their internal policies and adequate financial practices.*

*6.2. The Trustee Institutions shall not carry out transactions with securities, negotiable instruments or any other financial instrument, that do not comply with the specifications agreed in the corresponding Trust Agreement.*

*6.3. Trustees shall not enter into any type of trust that they are not authorized to execute pursuant to the laws and regulations to which they are subject to.*

*6.4. Trustees shall not, in any event, cover, with charge to the Trust Assets, the payment of any sanction imposed to such Trustee Institutions by any authority.*

*(...)*

*6.6. Trustees shall observe the provisions of articles 106 section XIX of the Credit Institutions Law, 103 section IX of the Securities Market Law (Ley del Mercado de Valores), 62 section VI of the General Law of Insurance Mutual Funds Institutions and Companies (Ley General de Instituciones y Sociedades Mutualistas de Seguros), 60 section VI Bis of the Federal Law of Bond Institutions (Ley Federal de*

CONFIDENTIAL

DANSKE_0012771

*Instituciones de Fianzas), and 16 of the Administrative Law of Financiera Rural (Ley Orgánica de Financiera Rural) as applicable."*

**Clause 15.**    **Substitution of the Trustee.**

**(a)**    Subject to the provisions of paragraphs (d) and (e) below, the Trustee may terminate its participation as trustee as provided hereunder by delivery of a written notice to the Settlor and the Beneficiary in First Place at least 30 (thirty) calendar days in advance thereto. Subject to the provisions of paragraph (d) below, the designation of the Trustee may also be terminated by delivery of written notice by the Beneficiary in First Place at least thirty 30 (thirty) calendar days prior to termination.

**(b)**    If the Trustee ceases to act as trustee hereunder due to an early termination in accordance with paragraph (a) above, the Trustee shall prepare financial statements, balance sheets and statements of account related to the Trust Assets for the period comprised since the last statements was delivered to the parties up the date which the Trustee ceases to act as such under the Trust, which shall be delivered to the Beneficiary in First Place and the Settlor within 30 (thirty) calendar days following such termination. The Settlor and the Beneficiary in First Place shall have 15 (fifteen) Business Days as of the date of reception to examine and submit objections to such financial statements, balance sheets and statements of account, and if after such period no objection has been submitted, the financial statements, balance sheets and statements of account shall be deemed approved by the Settlor and the Beneficiary in First Place and the Trustee will be released of any responsibility under this Trust.

**(c)**    The Beneficiary in First Place shall be entitled to remove the Trustee and designate any successor Trustee, provided said successor has at least the same operative capacity and knowledge of the trust business in Mexico as the Trustee has.

**(d)**    The Trustee shall continue to act as trustee hereunder until a successor trustee has been designated and such designation has been accepted, on the understanding that the Beneficiary in First Place shall exercise all reasonable efforts to designate the successor trustee in a timely fashion.

CONFIDENTIAL                                                                          DANSKE_0012772

**(e)**     The successor trustee shall have the same rights and obligations of the Trustee hereunder and shall be deemed the "Trustee" for purposes hereof.

**Clause 16.     Trustee's Fees and Expenses.**

The Settlor agrees to pay to the Trustee or to its successor pursuant to the terms set forth in **Clause 15** the fees specified in **Exhibit H** as well as all other reasonable and documented costs and expenses incurred by the Trustee in connection with the performance of its obligations hereunder, including the enforcement of the guarantee hereunder. In case the Settlor fails to comply with any of its obligations to pay fees or expenses to the Trustee, the Trustee **(i)** may request that the Beneficiary in First Place pay such fees or expenses and the Beneficiary in First Place may effectuate such payment and shall, in such case, have the right to make the relevant claim against the Settlor for the amount of such payment plus interest according to the provisions of the Amended and Restated Loan Agreement and/or **(ii)** pay the respective reasonable fees and/or expenses at the expense of the Trust Assets .

Except as otherwise provided herein, any and all taxes, expenses, reasonable fees derived from the preparation, execution and registration of this Trust and any amendments hereto, any act, covenant, document, instrument or notice performed by and prepared, executed or notified in accordance with this Trust, including without limitation, reasonable notary public fees and expenses, governmental fees incurred by the Beneficiary in First Place and Trustee in performance with their respective rights and obligations and any execution of the Trust Assets in accordance with this Trust, shall be borne exclusively by the Settlor.

**Clause 17.     Taxes.**

Any and all taxes (including, without limitation, any income taxes, applied on a withholding or otherwise, sale taxes, value added taxes, ownership and title or possession taxes, and asset taxes), levies, duties, profit revenues or charges of any nature that are imposed on, or in connection with the Trust Assets, this Trust or in connection with the performance by the Trustee shall be borne by the Settlor, on the understating that the Trustee shall not be responsible for the calculation, withholding and payment of any taxes, levies,

CONFIDENTIAL                                                                    DANSKE_0012773

duties, profit revenues unless required by applicable law. Additionally, the Settlor and the Beneficiary in First Place hereby agree that the tax known as the Flat-Rate Business Tax (*Impuesto Empresarial a Tasa Única*) derived from the provisions of the Flat-Rate Business Tax Law, as the case may be, shall be paid and delivered by the Settlor, releasing the Trustee hereby from any liability or responsibility related to the tax foreseen in said Law or the law and/or tax that substitutes it.

If for any reason, any fiscal authority notifies the Trustee regarding any interpretation to the effect that the activities of this Trust are considered as taxable and therefore the Trustee had to retain and pay any taxes in accordance with this Trust or any act related thereto, and that the Settlor and/or the Beneficiary in First Place disregard the notice of said events and do not appoint representatives to defend the Trust Assets, the responsible party pursuant to the terms set forth in this Trust, agrees to hold the Trustee free and harmless and assist the Trustee and provide the Trustee, its shareholders, members of the board of directors, trust delegates, attorneys-in-fact, representatives, advisors and/or employees the necessary funds in order to comply with said requirements pursuant to applicable laws. The Trustee shall be released for any acts related to such withholdings and payments and in the event that the authority imposes fine or sanctions to the Trustee, the responsible party pursuant to this Trust agrees to immediately pay or reimburse any expense or payment made by the Trustee. The Trustee shall be at all time entitled to legal representation by its own counsel, advisors, and tax experts in relation to any fiscal obligations to be paid with the Trust Assets. Pursuant to the foregoing, the Settlor and/or the Beneficiary in First Place who is responsible for the non-compliance of the tax obligation agrees to indemnify and hold the Trustee, its shareholders, board members, trust delegates, attorneys-in-fact, representatives, advisors and/or employees of any responsibility and damage related to the payment of taxes (including reasonable market fees and expenses of tax experts and counsels) derived from the execution or fulfillment of this Trust.

The aforementioned provided, that neither the Settlor nor the Trustee shall be responsible of the payment of income tax or its equivalent, of the Beneficiary in First Place

CONFIDENTIAL

derived form the appropriation of the Real Estate, if applicable, in accordance with the terms of **Clause 10** hereof.

**Clause 18.** <u>Reports.</u>

(a) The Trustee hereby agrees to provide the Beneficiary in First Place and the Settlor a monthly balance statement regarding the Trust Assets and the investments made in connection therewith. Such balance statements shall be prepared by the Trustee based on the values of the Trust Assets specified according to **Clause 8** and shall be delivered to the Settlor and the Beneficiary in First Place within the first 10 (ten) Business Days of each following month, provided that that the first and last balance statement may refer to an irregular quarter. The Beneficiary in First Place and the Settlor shall have a period of 10 (ten) Business Days from the date of receipt of the relevant balance statements to review and approve such reports, on the understanding that failure to provide any comments to the Trustee within such time period shall mean that such balance statements have been approved by the Beneficiary in First Place and the Settlor.

(b) The Trustee agrees to provide the Beneficiary in First Place and the Settlor all information reasonably requested by them in writing with anticipation of 3 (three) Business Days in connection with this Trust and the Trust Assets that are specifically related to delivery of services hereunder.

**Clause 19.** <u>Term; Irrevocability.</u>

This Trust shall be irrevocable and shall remain in full force and effect during the term necessary to perfect the purposes herein provided, and may not be terminated until the Secured Obligations have been paid in full which shall be confirmed by the Beneficiary in First Place at the request of the Settlor or the Trustee.

**Clause 20.** <u>Notices.</u>

(a) In order to be valid, all notices and other communications in connection with this Trust shall be made in writing, in the Spanish and English languages (or accompanied by

CONFIDENTIAL                                                          DANSKE_0012775

a translation in English or Spanish language, as applicable, provided that, in case of controversy the Spanish version shall prevail), and shall be addressed to the domiciles indicated below, or to any other address or fax transmission number designated by the addressee thereof pursuant to the terms set forth in this Clause to the other parties. Such notices and communications shall be delivered personally or by private courier with acknowledged receipt or by fax transmission with a confirmatory copy delivered personally or by private courier with acknowledged receipt addressed as described above, following of the original, and shall be effective, if sent by personally when there is evidence that it was received in the corresponding domicile: if they are delivered by private courier with acknowledged receipt, when there is evidence of receipt in the corresponding domicile by messenger, when received, or if sent by fax, when transmitted and confirmation of transmission is received. The parties indicate the following as their domiciles:

The Trustee:

Paseo de la Reforma 115, piso 23

11000, Lomas de Chapultepec

Distrito Federal, México

Telephone: +52 55 50 63 39 00

Fax +52 55 50 63 39 39

Attention: Carlos López-Cedeño / Elizabeth Cid del Prado

To Settlor:

Calle Alikan S/N,

Col. Ampliación Mariano Matamoros, CP 23460

Cabo San Lucas, Los Cabos,

Baja California Sur, México

Telephone: +52 624 105 0062

Fax: +52 624 105 0061

Attention: William Najam / Fernando M García Campuzano

CONFIDENTIAL

DANSKE_0012776

Copy for:

Baker & Hostetler LLP

45 Rockefeller Plaza

New York, New York 10111

Fax: (212)-589-4291

Attention: Laurence Markowitz, Esq.


The Beneficiary in First Place:

75 King William Street,

Londres EC4N 7DT

Inglaterra

Telephone: +44 (0)20 7410 8312

Fax: +44 (0)20 7410 8005

Attention: Jovan Atkinson


Copy for:

Venable LLP

750 E. Pratt Street

Baltimore, Maryland 21202

Fax: (410) 224-7742

Attention: Mitchell Kolkin, Esq. y M. Jay Yurow, Esq.


Copy for:

Jáuregui, Navarrete y Nader, S.C.

Paseo de los Tamarindos 400-B, Pisos 7, 8 y 9

Bosques de las Lomas

05120 México, D.F.

Telephone: + 52 55 5276 4500

Fax: (52) (55) 5258-0601

Attention: Javier Arreola / Vanessa Franyutti

CONFIDENTIAL                                                                        DANSKE_0012777

**(b)** Any third party that in the future joins this Trust shall, at such time, provide its domicile and fax number in writing to the Trustee.

**(c)** The parties, being aware of the risks that may imply the issuance of instructions by electronic means, such as errors, security breach, and lack of confidentiality as well as the possibility of fraudulent acts, agree that the delivery of all communications related to this Trust shall be made pursuant to the terms set forth in section (a) above. According to the foregoing, the parties hereby authorize the Trustee to proceed with the instructions received by the means described herein and release the Trustee for said transmissions and agree to indemnify the Trustee in the terms set forth in the indemnification established herein.

The foregoing on the understanding that the Trustee shall not be under an obligation to verify the authenticity of said instructions or communications, but shall verify that the signatures contained therein are, in its opinion, similar to the ones of the signatories pursuant to this Trust. The Trustee shall have discretion, as long as it is due to a reasonable suspicion or motive to act or not and/or to request a confirmation from any transmission received pursuant to this Clause, on the understanding that the Trustee shall immediately notify the parties if the Trustee has decided to defer the fulfillment of the instructions, until it has received such confirmation.

The Trustee is duly authorized to act under the instructions transmitted in accordance with this Clause. In case the instructions on transfers of funds, when said instructions are given pursuant to the terms set forth in section (a) above, the Trust may confirm said instructions by telephone with the signatories appointed before the Trustee in the terms set forth in **Exhibit I**. Signatories and telephone numbers for confirmations may be modified by means of a written notice executed by the representative of the Settlor or Beneficiary in First Place, duly received and confirmed by the Trustee. The parties agree that this procedure is commercially reasonable.

Additionally, it is understood that in transfers of funds, the Trustee and the beneficiary bank may depend on the account numbers or any other similarly provided identification number to identify **(i)** the beneficiary, **(ii)** the beneficiary's bank or **(iii)** any other

CONFIDENTIAL                                                              DANSKE_0012778

intermediary bank. The Trustee shall use the funds of the Trust to comply with any payment order it should make pursuant to this Trust using said identification number, even when it results in payment to a person who is not a beneficiary, to a bank that is not the beneficiary's bank or to a bank that is not the appointed intermediary bank.

In case instructions are not signed as abovementioned and/or a confirmatory telephone call was not able to be made, the parties expressly and irrevocably instruct the Trustee not to execute the instructions. Any person that is party hereto shall deliver to the Trustee a list in the terms of **Exhibit I**, on the understanding that the parties may appoint from time to time new signatories, and in terms substantially similar to the instructions contained in **Exhibit I**.

### Clause 21. <u>Amendments.</u>

This Trust may only be modified through an instrument signed by the Settlor, the Trustee and the Beneficiary in First Place and ratified before a notary public.

### Clause 22. <u>Assignment.</u>

Neither the Trustee nor the Settlor may assign or transfer their rights or delegate their obligations under this Trust, except **(i)** with the prior written consent of the Beneficiary in First Place, and **(ii)** in those cases expressly provided herein. The Beneficiary in First Place may assign all or part of its rights resulting from this Trust, with a written notice of the assignment to the Trustee and the Settlor, without any additional formality except for the fulfillment of the requirements and guidelines regarding the "Know Your Customer" policy of the Trustee as of that date.

### Clause 23. <u>Indemnity.</u>

**(a)** The Settlor hereby agrees to **(i)** indemnify, hold the Trustee, its shareholders, members of the board of directors, trust delegates, attorneys-in-fact, officers and/or employees free and harmless from any liability arising out of or relating to the execution and fulfillment of the Trust, except in cases of willful misconduct, negligence or bad faith of the Trustee determined by definitive resolution issued by a competent authority, or failure by the

CONFIDENTIAL                DANSKE_0012779

Trustee to comply with its obligations hereunder, and (ii) defend (in which case the Trustee shall grant the individuals appointed by the Settlor the necessary or convenient powers of attorney for such purposes in accordance with applicable laws and the provisions hereof), hold the Trustee free and harmless and indemnify the Trustee as well as its subsidiaries, affiliates, trust delegates, employees and attorneys-in fact, with charge to the Trust Assets and /or with their own funds in the cases where applicable legal provisions do not permit to charge the Trust Assets, as well as in the case where the Trust Assets are not sufficient, from all and any liability, damage, obligation, lawsuit, judgment, settlement, requirement, costs and/or expenses of any kind, including reasonable and documented legal fees, against, imposed on, arising out of or relating to the execution of this Trust and the actions of the Trustee to comply with its obligations and the purposes set forth herein, including the foreclosure proceeding set forth herein, and to defend the Trust Assets, or for claims, penalties, fines and any other debt of any kind in connection with the Trust and the Trust Assets, before administrative, judicial or arbitral authorities or any other local, federal Mexican or foreign instance, except in the case of willful misconduct, negligence or bad faith of the Trustee determined by definitive resolution issued by a competent authority or any of its trust delegates, employees and attorneys-in fact, or failure by the Trustee to comply with its obligations hereunder.

(b)     The Settlor hereby agrees to pay in advance any expense or disbursement of any kind (including reasonable and documented lawyers fees and expenses) incurred by the Trustee and its representatives for any damage or loss of profit suffered due to, or related with, any claim, judgment, proceeding or lawsuit against the Trustee by any person in the United Mexican States or abroad, in connection with any action conducted to comply with the purposes set forth herein or the defense of the Trust Assets except in the case of willful misconduct, negligence or bad faith of the Trustee or its representatives determined by definitive resolution issued by a competent authority. The parties to the Trust hereby agree that in case the Settlor does not pay in advance to the Trustee the expenses and disbursements mentioned above as provided in this Clause or does not reimburse such expenses and disbursements within 3 (three) Business Days following the date on which the Trustee gives notice to them, the Trustee may collect any amount owed to it by charging the Trust Assets.

CONFIDENTIAL                                                                    DANSKE_0012780

(c)     The Trustee shall not be obligated to exercise any action according to this Trust that exposes it to responsibility of its officials or against its ownership and title, or that contravenes this Trust or applicable law.

(d)     The Trustee shall not have, in any case, authority or obligation to use its own assets for the purposes of this Trust and to comply with its obligations, nor to pay the expenses referred to in this Clause, but shall only and exclusively use the Trust Assets up to the value of such Trust Assets.

(e)     Notwithstanding any rights of the Trustee hereunder and subject to the terms and conditions hereof, the Trustee shall be liable for damages and loss of profits caused by its failure to comply with its obligations under this Trust.

(f)     The Settlor shall indemnify and hold the Trustee and the Beneficiary in First Place free and harmless in the event of any environmental contingency related to this Trust or any other document related hereto, provided that such contingency does not derive from the willful misconduct, negligence and bad faith of the Trustee determined by definitive resolution issued by a competent authority.

(g)     The Trustee shall not be liable for any acts or omissions of the Settlor and the Beneficiary in First Place that may impede the fulfillment of the purposes of the Trust.

(h)     To carry out the acts set forth in this Trust, the Trustee shall act at all times pursuant to the terms set forth herein and according to the terms set forth in the contracts and documents the Trustee enters into in the fulfillment of the purposes of this Trust. In view of the foregoing, the Trustee shall not be responsible for:

(i)     The acts performed in fulfillment of the terms set forth in this Trust;

(ii)    The acts performed in fulfillment of the terms set forth in the contracts and documents entered into pursuant to the terms set forth in this Trust;

(iii)   The acts performed in fulfillment of written instructions received pursuant to the terms set forth in this Trust;

CONFIDENTIAL                                                                    DANSKE_0012781

(iv)     Any delay or breach of any payment the Trustee should make, when said omission or delay are a direct consequence of the breach of legal or contractual obligations of third parties;

(v)     The safety and protection of the Real Property, the control of the access to same nor the acts carried out by the people that enter to the Real Property, except when the Trustee is in possession of the Real Property;

(vi)     The facts, acts and omissions of any party to this Trust (except for the Trustee) or third parties that impede or difficult the fulfillment of the purposes of this Trust.

(i)     Except for those provisions specifically set forth in this Trust, the Trustee shall not be under the obligation to confirm or verify the authenticity of any report or certificate delivered by any of the parties to the Trust to the Trustee pursuant to this Trust. The Trustee does not assume any responsibility regarding any representation made by the other parties of this Trust or in the documents related to the Trust.

(j)     In case of condemnations in trials followed in connection with the Trust Assets of the Trust or against the Trustee in such character, by any third party, the payment of the expenses and costs, shall be exclusively borne by the Settlor, with no responsibility to the Trustee, in case the Trust Assets are not sufficient to pay said expenses and costs.

**Clause 24.**     **Labor Matters.**

The Trustee, its representatives, trust delegates, employees, attorneys in fact and any other personnel, shall have no labor or employment relationship or any liability with the persons or entities contracted by the Settlor for the operation, administration or any other acts related to the Trust Assets. The Settlor assumes the obligation to hold the Trustee free and harmless from any claim that such persons or entities may file against the Trustee.

**Clause 25.**     **Governing Law, Interpretation and Jurisdiction.**

This Trust shall be governed by and construed in accordance with the laws of the United Mexican States. For the interpretation and enforcement of this Trust, in respect of any

CONFIDENTIAL                                                                                   DANSKE_0012782

action or legal proceeding hereunder, the parties hereto hereby expressly and irrevocably submit to the jurisdiction of the competent courts located in **(i)** Mexico, Federal District, **(ii)** the place where the Real Property is located, or **(iii)** the respondent's domicile, as elected by the plaintiff, and hereby expressly and irrevocably waive any other jurisdiction to which they may be entitled by reason of their present or future domicile or otherwise.

### Clause 26.    Severability.

If any provision of this Trust shall be held invalid or unenforceable, the remainder of this Trust shall remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

### Clause 27.    Exhibits.

The parties acknowledge that the following exhibits enclosed to this Trust are an integral part of the Trust."

**SECOND.**    The parties agree that this Amendment and Restatement Agreement does not constitute a novation of the provisions of the Trust, and with the exception of the amendments herby agreed, all the provisions of the Trust shall remain in full force and effect, and therefore, the parties hereby confirm and ratify in every aspect all the provisions of the Trust.

**THIRD.**    The Settlor shall pay the Trustee the amount of $5,000.00 (five thousand Dollars, legal currency of the United States of America) plus the applicable Value Added Tax, as its fees for the execution of this Amendment and Restatement Agreement.

**FOURTH.**    This Amendment and Restatement Agreement shall be governed and construed in accordance with Clause 25 of the Trust, the parties hereby expressly waiving any other jurisdiction to which they may be entitled for any reason whatsoever.

**IN  WITNESS  WHEREOF,** the parties hereto execute this Amendment and Restatement Agreement on this March 6, 2009.

CONFIDENTIAL                                                                                    DANSKE_0012783

**TESTIMONIO:** *PRIMERO DE LA ESCRITURA QUE CONTIENE CONVENIO MODIFICATORIO Y DE REEXPRESION, QUE CELEBRAN DE UNA PARTE DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. COMO FIDEICOMITENTE Y FIDEICOMISARIO EN SEGUNDO LUGAR, Y DE OTRA PARTE DANSKE BANKS A/S LONDON BRANCH COMO FIDEICOMISARIO EN PRIMER LUGAR.*

**Escritura Numero:** *78,862*

**Volumen:** *1292*

**Fecha:** *06/03/2009*

CONFIDENTIAL

DANSKE_0014041

IGNACIO RAMIREZ
TELS. 122-81-
122-97-
125-24-
FAX 12526

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

1

-------- VOLUMEN NUMERO MIL DOSCIENTOS NOVENTA Y DOS .........................

- ESCRITURA NÚMERO SETENTA Y OCHO MIL OCHOCIENTOS OCHENTA Y DOS

- - - En la Ciudad de La Paz, Baja California Sur, México, a seis día del mes de Marzo del año dos mil nueve, YO, Licenciado JOSE ALBERTO CASTRO SALAZAR, Notario Público adscrito a la Notaría Pública Número SIETE, del Estado y del Patrimonio Inmueble Federal, con ejercicio en los Municipios de La Paz, Los Cabos, y con Residencia en la Capital del Estado, cuyo titular es el licenciado HECTOR CASTRO CASTRO, actuando de conformidad con lo dispuesto por los artículos (61) sesenta y uno y (29) veintinueve de la Ley del Notariado en vigor, PROTOCOLIZO el acta levantada fuera de mi Notaría y en la cual consigné un CONVENIO MODIFICATORIO Y DE REEXPRESIÓN AL CONTRATO DE FIDEICOMISO TRASLATIVO DE DOMINIO E IRREVOCABLE DE GARANTÍA IDENTIFICADO CON EL NÚMERO F/00321 (EL "CONVENIO MODIFICATORIO Y DE RE-EXPRESIÓN") DE FECHA 6 DE MARZO DE 2009, QUE CELEBRAN DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. ("DIAMANTÉ CABO"), REPRESENTADO EN ESTE ACTO POR KENNETH ABOUD JOWDY, ACTUANDO COMO FIDEICOMITENTE Y FIDEICOMISARIO EN SEGUNDO LUGAR ("FIDEICOMITENTE" O "FIDEICOMISARIO EN SEGUNDO LUGAR", SEGÚN EL CONTEXTO), QUIEN EN ESTE ACTO DESIGNA COMO SU PERITO TRADUCTOR AL SEÑOR LICENCIADO FERNANDO MANUEL GARCIA CAMPUZANO; DANSKE BANK A/S, LONDON BRANCH, LA SUCURSAL DE LONDRES DE UNA SOCIEDAD CONSTITUIDA EN EL REINO DE DINAMARCA, REPRESENTADA EN ESTE ACTO POR GUSTAVO IGNACIO ALARCÓN CABALLERO, EN SU CARÁCTER DE FIDEICOMISARIO EN PRIMER LUGAR (EL "FIDEICOMISARIO EN PRIMER LUGAR"); Y THE BANK OF NEW YORK MELLON, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE (CAUSAHABIENTE UNIVERSAL FINAL DE BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA), EN SU CARÁCTER DE FIDUCIARIO DEL FIDEICOMISO F/00321, REPRESENTADO EN ESTE ACTO POR SU DELEGADA FIDUCIARIA ELIZABETH CID DEL PRADO GARCÍA DE LEÓN (EL "FIDUCIARIO"). .........................

- - - El referido documento lo dejo agregado al apéndice del volumen mil doscientos noventa y dos, de mi protocolo bajo la letra "A", en el legajo correspondiente a esta escritura, el acta en comento se encuentra debidamente firmada y sellada, misma que para FORMALIZAR se protocoliza. DOY FE .........................

AUTORIZO DEFINITIVAMENTE LA PRESENTE ACTA EN LA CIUDAD DE LA PAZ, BAJA CALIFORNIA SUR, EN LA MISMA FECHA DE SU OTORGAMIENTO, EN VIRTUD DE NO CAUSAR IMPUESTO ALGUNO. DOY FE .........................

LIC. JOSE ALBERTO CASTRO SALAZAR. FIRMADO. EL SELLO DE AUTORIZAR DE LA NOTARIA .........................

- - - ANEXO LETRA "A". EL ACTA QUE SE PROTOCOLIZA .........................

-------------------------- A N E X O   A ........................

1

CONFIDENTIAL

DANSKE_0014042

- - - En la Ciudad de La Paz, Baja California Sur, México, a los seis días del mes de Marzo del año dos mil nueve, YO, Licenciado JOSE ALBERTO CASTRO SALAZAR, Notario Público adscrito a la Notaría Pública Número SIETE del Estado y del Patrimonio Inmueble Federal, con ejercicio en los Municipios de La Paz y Los Cabos, y con Residencia en la Capital del Estado, cuyo titular es el licenciado HECTOR CASTRO CASTRO, actuando de conformidad con lo dispuesto por el artículo (29) veintinueve de la Ley del Notariado en vigor, HAGO CONSTAR; ...............................................................

CONVENIO MODIFICATORIO Y DE REEXPRESIÓN AL CONTRATO DE FIDEICOMISO TRASLATIVO DE DOMINIO E IRREVOCABLE DE GARANTÍA IDENTIFICADO CON EL NÚMERO F/00321 (EL "CONVENIO MODIFICATORIO Y DE RE-EXPRESIÓN") DE FECHA 6 DE MARZO DE 2009, QUE CELEBRAN DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. ("DIAMANTE CABO"), REPRESENTADA EN ESTE ACTO POR KENNETH ABOUD JOWDY, ACTUANDO COMO FIDEICOMITENTE Y FIDEICOMISARIO EN SEGUNDO LUGAR ("FIDEICOMITENTE" O "FIDEICOMISARIO EN SEGUNDO LUGAR", SEGÚN EL CONTEXTO), QUIEN EN ESTE ACTO DESIGNA COMO SU PERITO TRADUCTOR AL SEÑOR LICENCIADO FERNANDO MANUEL GARCIA CAMPUZANO; DANSKE BANK A/S, LONDON BRANCH, LA SUCURSAL DE LONDRES DE UNA SOCIEDAD CONSTITUIDA EN EL REINO DE DINAMARCA, REPRESENTADA EN ESTE ACTO POR GUSTAVO IGNACIO ALARCÓN CABALLERO, EN SU CARÁCTER DE FIDEICOMISARIO EN PRIMER LUGAR (EL "FIDEICOMISARIO EN PRIMER LUGAR"); Y THE BANK OF NEW YORK MELLON, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE (CAUSAHABIENTE UNIVERSAL FINAL DE BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA), EN SU CARÁCTER DE FIDUCIARIO DEL FIDEICOMISO F/00321, REPRESENTADO EN ESTE ACTO POR SU DELEGADA FIDUCIARIA ELIZABETH CID DEL PRADO GARCÍA DE LEÓN (EL "FIDUCIARIO"). ...............................................................

- - - - - - - - - - - - - - - - - - - - - -ANTECEDENTES.............................................

1. . Con fecha 10 de marzo de 2006 Lehman Brothers Holdings Inc. ("Lehman Brothers") otorgó a Diamante Cabo un crédito por la cantidad de hasta $125,000,000.00 (Ciento veinticinco millones de dólares de los Estados Unidos de América) de principal, más interés y comisiones (el "Crédito Original")...............................................................

2. En relación con el Crédito Original, el 10 de marzo de 2006 se celebraron los siguientes documentos: (i) Contrato de Crédito Original (*Loan Agreement*) celebrado entre Diamante Cabo y el Lehman Brothers (el "Contrato de Crédito Original"); (ii) Pagaré (*Promissory Note*) suscrito por Diamante Cabo (el "Pagaré"); (iii) Contrato de Cesión de Arrendamiento y Rentas (*Assignment of Leases and Rents*), entre Diamante Cabo y Lehman Brothers (la "Cesión de Rentas"); (iv) Garantía con Recurso (*Recourse Guaranty*) celebrada por el señor Kenneth A. Jowdy (el "Garante") y Lehman Brothers, con vigencia a partir del 10 de marzo de 2006 (la "Garantía con Recurso"); (v)

CONFIDENTIAL

DANSKE_0014043



IGNACIO RAMIREZ 18
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

3

**COTEJADO**

con vigencia a partir del 10 de marzo de 2006 (la "Garantía con Recurso"); (v) Documento de Responsabilidad e Indemnización Ambiental (*Indemnity Agreement*) celebrado entre Diamante Cabo, el Garante y Lehman Brothers (la "Indemnización Ambiental"); (vi) Contrato de Prenda sobre partes sociales (*Pledge Agreement*) celebrado entre Diamante Cabo, el Garante, Diamante Cabo San Lucas LLC ("U.S. LLC"), y Lehman Brothers (el "Contrato de Prenda (Partes Sociales del Fideicomitente)"); (vii) Contrato de Prenda sobre activos celebrado entre Lehman Brothers y Diamante Cabo (el "Contrato de Prenda (Activos)"); (viii) Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, U.S. LLC y Lehman Brothers (el "Contrato de Prenda (Partes Sociales del Acreditado)"); (ix) Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC y CSL Properties 2006, LLC (colectivamente, los "Miembros de la U.S. LLC") y Lehman Brothers (el "Contrato de Prenda Sobre Partes Sociales de E.U.A."); (x) Cesión Ómnibus (*Omnibus Assignment*) celebrada entre Diamante Cabo y Lehman Brothers (la "Cesión Ómnibus 2006"); y (xi) Documento de Cumplimiento de Garantía de Conclusión (*Completion Guaranty*), otorgado por el Garante a favor de Lehman Brothers; y (xii) Garantía (*Guaranty*) otorgada por los Miembros de la U.S. LLC, el Garante y la U.S. LLC a favor de Lehman Brothers . Los documentos que se mencionan anteriormente, según los mismos hayan sido modificados, se denominan conjuntamente como los "Documentos de la Operación 2006"..........................................

3. Asimismo, con fecha 10 de marzo de 2006 mediante escritura pública número 65,041 otorgada ante la fe del suscrito notario, inscrita en el Registro Publico de la Propiedad y del Comercio de San José del Cabo, Baja California Sur, bajo el número 135, foja 135, volumen CCXLV, de fecha 8 de mayo de 2006, Diamante Cabo, como fideicomitente y fideicomisario en segundo lugar, Lehman Brothers, como fideicomisario en primer lugar, y Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria (actualmente The Bank of New York Mellon, S.A., Institución de Banca Múltiple, causahabiente universal final de aquél), como fiduciario, celebraron el contrato de fideicomiso identificado con el número F/00321 (el "Fideicomiso") con el fin de garantizar el cumplimiento de las obligaciones de Diamante Cabo, los Miembros de la U.S. LLC, la U.S. LLC y del Garante bajo los Documentos de la Operación 2006.........

4. En la fecha de celebración del Fideicomiso, Diamante Cabo aportó al patrimonio del mismo los siguientes inmuebles (en lo sucesivo los "Predios"):...............................................

- - - a).- **LOTE I UNO:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0081 cuatro guión cero dos guión cero uno tres guión cero cero ocho uno, con una superficie de 5-92-68 has. (cinco hectáreas noventa y dos áreas y sesenta y ocho centiáreas) y las siguientes medidas y colindancias:......................
Del vértice G al vértice H hacia el Norte con una distancia de (191.89 m) ciento noventa y uno punto ochenta y nueve metros, y un ángulo de (115° 38' 05") ciento quince grados treinta y ocho minutos y cinco segundos, colindando con Lote (VII) siete...............................................

CONFIDENTIAL

DANSKE_0014044

Del vértice H al vértice I hacia el Norte con una distancia de (127.52 m) ciento veintisiete punto cincuenta y dos metros, y un ángulo de (120° 09' 21") ciento veinte grados, nueve minutos y veintiún segundos, colindando con Lote (VII) siete. ........................................

Del vértice I al vértice J hacia el Norte con una distancia de (31.50 m) treinta y uno punto cincuenta metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete. ........................................

Del vértice J al vértice A hacia el Norte con una distancia de (125.00 m) ciento veinticinco metros, y un ángulo de (107° 08' 24") ciento siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete. ........................................

Del vértice B al vértice C hacia el Sur con una distancia de (125.00 m) ciento veinticinco metros, y un ángulo de (287° 08' 24") doscientos ochenta y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres. ........................................

Del vértice C al vértice D hacia el Sur con una distancia de (31.50 m) treinta y uno punto cincuenta metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres. ........................................

Del vértice D al vértice E hacia el Sur con una distancia de (127.52 m) ciento veintisiete punto cincuenta y dos metros, y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con Lote (III) tres. ........................................

Del vértice E al vértice F hacia el Sur con una distancia de (191.88 m) ciento noventa y uno punto ochenta y ocho metros, y un ángulo de (295° 38' 05") doscientos noventa y cinco grados treinta y ocho minutos y cinco segundos, colindando con Lote (IV) cuatro....

Del vértice A al vértice B hacia el Este con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con propiedad del señor Francisco Arballo. Del vértice F al vértice G hacia el Oeste con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (II) dos........................................

- - - b). **LOTE II DOS:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0082 cuatro guión cero dos guión cero uno tres guión cero cero ocho dos, con una superficie de 5-94-86 has. (cinco hectáreas noventa y cuatro áreas y ochenta y seis centiáreas) y las siguientes medidas y colindancias:..........

Del vértice L al vértice M hacia el Norte con una distancia de (299.94 m) doscientos noventa y nueve punto noventa y cuatro metros, y un ángulo de (114° 38' 35") ciento catorce grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (VII) siete. ........................................

Del vértice F al vértice (D-5) "D" guión cinco hacia el Sur con una distancia de (116.98 m) ciento dieciséis punto noventa y ocho metros, y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (V) cinco........................................



CONFIDENTIAL

DANSKE_0014045



IGNACIO RAMIREZ 1990
TELS. 122-91-20
122-37-17
125-24-40
FAX 1252566

LIC. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

5

**COTEJADO**

Del vértice (D-5) "D" guión cinco al vértice K hacia el Sur con una distancia de (183.01 m) ciento ochenta y tres punto cero un metros, y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (VI) seis. ....................

Del vértice M al vértice G hacia el Este con una distancia de (65.00 m) sesenta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VII) siete. ....................

Del vértice G al vértice F hacia el Este con una distancia de (135.00 m) ciento treinta y cinco metros, y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno. ....................

Del vértice K al vértice L hacia el Oeste con una distancia de (200.00 m) doscientos metros, y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con propiedad del señor Atilio Colli. ....................

- - - c).- **LOTE III TRES** del predio conocido como **LA LAGUNA**, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0083 cuatro guión cero dos guión cero uno tres guión cero cero ocho tres, con una superficie de 11-34-41 has. (once hectáreas treinta y cuatro áreas y cuarenta y un centiáreas), y las siguientes medidas y colindancias: ....................

Del vértice (D-1) "D" guión uno al vértice D hacia el Norte con una distancia de (61.58 m) sesenta y uno punto cincuenta y ocho metros y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con el Lote (I) uno....

Del vértice D al vértice C hacia el Norte con una distancia de (31.50 m) treinta y uno punto cincuenta metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno....................

Del vértice C al vértice B hacia el Norte con una distancia de (125.00 m) ciento veinticinco metros y un ángulo de (287° 08' 24") doscientos ochenta y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (I) uno....................

Del vértice (V-1) V guión uno al vértice (V-2) V guión dos hacia el Sur con una distancia de (171.26 m) ciento setenta y uno punto veintiséis metros, colindando con el Océano Pacifico. ....................

Del vértice (V-2) V guión dos al vértice (D-2) D guión dos hacia el Sur con una distancia de (16.96 m) dieciséis punto noventa y seis metros, colindando con Océano Pacifico......

Del vértice (V-1) V guión uno al vértice B hacia el Este con una distancia de (617.87 m) seiscientos diecisiete punto ochenta y siete metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con propiedad de Francisco Arballo....................

Del vértice (D-1) D guión uno al vértice (D-2) D guión dos hacia el Oeste con una distancia de (628.56 m) seiscientos veintiocho punto cincuenta y seis metros y un

CONFIDENTIAL
DANSKE_0014046

ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (IV) cuatro.......................................................................

- - - d). **LOTE IV CUATRO:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0084 cuatro guión cero dos guión cero uno tres guión cero cero ocho cuatro, con una superficie de 11-62-60 has. (once hectáreas sesenta y dos áreas y sesenta centiáreas) y las siguientes medidas y colindancias:.......................................................................

Del vértice (D-1) D guión uno al vértice E hacia el Norte con una distancia de (65.93 m) sesenta y cinco punto noventa y tres metros y un ángulo de (300° 09' 21") trescientos grados, nueve minutos y veintiún segundos, colindando con Lote (I) uno..........................

Del vértice E al vértice (D-3) D guión tres hacia el Norte con una distancia de (122.10 m) ciento veintidós punto diez metros y un ángulo de (295° 38' 05") doscientos noventa y cinco grados, treinta y ocho minutos y cinco segundos, colindando con Lote (I) uno........

Del vértice (D-4) D guión cuatro al vértice (VZF-5) V,Z,F guión cinco hacia el Sur con una distancia de (4.95 m) cuatro punto noventa y cinco metros y un ángulo de (119° 55' 06") ciento diecinueve grados, cincuenta y cinco minutos y seis segundos, colindando con Océano Pacifico. .......................................................................

Del vértice (VZF-5) V,Z,F guión cinco al vértice (V-4) V guión cuatro hacia el Sur con una distancia de (60.27 m) sesenta punto veintisiete metros y un ángulo de (117° 07' 54") ciento diecisiete grados, siete minutos y cincuenta y cuatro segundos, colindando con Océano Pacifico. .......................................................................

Del vértice (V-4) V guión cuatro al vértice (V-3) V guión tres hacia el Sur con una distancia de (74.40 m) setenta y cuatro punto cuarenta metros y un ángulo de (117° 55' 10") ciento diecisiete grados, cincuenta y cinco minutos y diez segundos, colindando con Océano Pacifico.......................................................................

Del vértice (V-3) V guión tres al vértice (D-2) D guión dos hacia el Sur con una distancia de (48.86 m) cuarenta y ocho punto ochenta y seis metros y un ángulo de (119° 36' 06") ciento diecinueve grados, treinta y seis minutos y seis segundos, colindando con Océano Pacifico.......................................................................

Del vértice (D-2) D guión dos al vértice (D-1) D guión uno hacia el Este con una distancia de (628.56 m) seiscientos veintiocho punto cincuenta y seis metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (III) tres.......................................................................

Del vértice (D-3) D guión tres al vértice (D-4) D guión cuatro hacia el Oeste con una distancia de (625.87 m) seiscientos veinticinco punto ochenta y siete metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (V) cinco.......................................................................

- - - e).- **LOTE V CINCO:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California



CONFIDENTIAL

DANSKE_0014047



IGNACIO RAMIREZ 1960  
TELS. 122-91-05  
122-97-17  
125-24-40  
FAX 1252588

LIC. HECTOR CASTRO CASTRO  
TITULAR  
LIC. JOSE ALBERTO CASTRO SALAZAR.  
ADSCRITO  
NOTARIA PUBLICA NUM.7

LA PAZ, B.C.S.

7



Sur, identificada con clave catastral 4-02-013-0085 cuatro guión cero dos guión cero uno tres guión cero cero ocho cinco, con una superficie de 11-40-91 has. (once hectáreas cuarenta áreas y noventa y un centiáreas) y las siguientes medidas y colindancias:

Del vértice (D-3) D guión tres al vértice F hacia el Norte con una distancia de (69.78 m) sesenta y nueve punto setenta y ocho metros y un ángulo de (295° 38' 05") doscientos noventa y cinco grados treinta y ocho minutos y cinco segundos, colindando con Lote (II) dos. ............................

Del vértice F al vértice (D-5) D guión cinco hacia el Norte con una distancia de (116.98 m) ciento dieciséis punto noventa y ocho metros y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados, treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (II) dos. ............................

Del vértice (D-6) D guión seis al vértice (VZF-6) V,Z,F guión seis hacia el Sur con una distancia de (99.17 m) noventa y nueve punto diecisiete metros y un ángulo de (122° 53' 10") ciento veintidós grados, cincuenta y tres minutos y diez segundos, colindando con Océano Pacífico. ............................

Del vértice (VZF-6) V,Z,F guión seis al vértice (D-4) D guión cuatro hacia el Sur con una distancia de (91.81 m) noventa y uno punto ochenta y un metros y un ángulo de (119° 55' 07") ciento diecinueve grados cincuenta y cinco minutos y siete segundos, colindando con Océano Pacífico. ............................

Del vértice (D-4) D guión cuatro al vértice (D-3) D guión tres hacia el Este con una distancia de (625.87 m) seiscientos veinticinco punto ochenta y siete metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos y veinticuatro segundos, colindando con Lote (V) cinco. ............................

Del vértice (D-5) D guión cinco al vértice (D-6) D guión seis hacia el Oeste con una distancia de (604.23 m) seiscientos cuatro punto veintitrés metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con Lote (VI) seis. ............................

- - - f).- LOTE VI SEIS: del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, identificada con clave catastral 4-02-013-0086 cuatro guión cero dos guión cero uno tres guión cero cero ocho seis,  con una superficie de 11-03-90 has. (once hectáreas tres áreas y noventa centiáreas) y las siguientes medidas y colindancias: ......

Del vértice (D-5) D guión cinco al vértice K hacia el Norte con una distancia de (183.01 m) ciento ochenta y tres punto cero uno metros y un ángulo de (294° 38' 35") doscientos noventa y cuatro grados treinta y ocho minutos y treinta y cinco segundos, colindando con Lote (II) dos. ............................

Del vértice (D-7) D guión siete al vértice (VZF-9) V,Z,F guión nueve hacia el Sur con una distancia de (67.36 m) sesenta y siete punto treinta y seis metros y un ángulo de (269°

CONFIDENTIAL

DANSKE_0014048

51' 08") doscientos sesenta y nueve grados, cincuenta y un minutos, ocho segundos, colindando con Océano Pacifico...................................................................................................

Del vértice (VZF-9) V,Z,F guión nueve al vértice (VZF-8) V,Z,F guión ocho hacia el Sur con una distancia de (46.26 m) cuarenta y seis punto veintiséis metros y un ángulo de (114° 34' 05") ciento catorce grados treinta y cuatro minutos y cinco segundos, colindando con Océano Pacifico...................................................................................................

Del vértice (VZF-8) V,Z,F guión ocho al vértice (VZF-7) V,Z,F guión siete hacia el Sur con una distancia de (68.73 m.) sesenta y seis punto setenta y tres metros y un ángulo de (111° 07' 02") ciento once grados, siete minutos y dos segundos, colindando con Océano Pacifico...................................................................................................

Del vértice (VZF-7) V,Z,F guión siete al vértice (D-6) D guión seis hacia el Sur con una distancia de (1.77 m) uno punto setenta y siete metros y un ángulo de (122° 53' 15") ciento veintidós grados cincuenta y tres minutos y quince segundos, colindando con Océano Pacifico...................................................................................................

Del vértice (D-6) D guión seis al vértice (D-5) D guión cinco hacia el Este con una distancia de (604.23 m) seiscientos cuatro punto veintitrés metros y un ángulo de (17° 08' 24") diecisiete grados, ocho minutos veinticuatro segundos, colindando con Lote (V) cinco. ...................................................................................................

Del vértice K al vértice (D-7) D guión siete hacia el Oeste con una distancia de (613.71 m) seiscientos trece punto setenta y un metros y un ángulo de (197° 08' 24") ciento noventa y siete grados, ocho minutos y veinticuatro segundos, colindando con propiedad de Atilio Colli. ...................................................................................................

- - - g).- **LOTE VII SIETE:** del predio conocido como LA LAGUNA, en la porción conocida como Rancho El Cardonal, en Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con clave catastral 4-02-013-0087 (cuatro guión cero dos guión trece guión cero cero ochenta y siete) con una superficie con una superficie de 26-00-98 has. (veintiséis hectáreas cero áreas y noventa y ocho centiáreas) y las siguientes medidas y colindancias: ...................................................................................................

Del vértice noventa y seis al vértice sesenta hacia el Norte en una distancia de 87.67m ochenta y siete punto sesenta y siete metros en (117°15'23") ciento diecisiete grados quince minutos veintitrés segundos colindando con propiedad del señor Atilio Colli. ........

Del vértice sesenta al vértice sesenta y cuatro hacia el Norte en una distancia de 54.26m cincuenta y cuatro punto veintiséis metros en (113°29'56") ciento trece grados veintinueve minutos cincuenta y seis segundos colindando con propiedad del señor Atilio Colli. ...................................................................................................

Del vértice sesenta y cuatro al vértice R hacia el Norte en una distancia de 59.19m cincuenta y nueve punto diecinueve metros en (120°51'16") ciento veinte grados cincuenta y un minutos dieciséis segundos colindando con propiedad del señor Atilio Colli. ...................................................................................................

CONFIDENTIAL

DANSKE_0014049

IGNACIO RAMIREZ 1996<br>
TELS. 122-81-302<br>
122-97-40<br>
126-24-48<br>
FAX 1252698

C. HECTOR CASTRO CASTRO<br>
TITULAR<br>
LIC. JOSE ALBERTO CASTRO SALAZAR<br>
ADSCRITO<br>
NOTARIA PUBLICA NUM.7

9

Del vértice 64 al vértice sesenta y cinco hacia el Norte en una distancia de 75.37m setenta y cinco punto treinta y siete metros en (112°48'01") ciento doce grados cuarenta y ocho minutos un segundo colindando con propiedad del señor Atilio Colli. ....................

Del vértice sesenta y cinco al vértice sesenta y ocho hacia el Norte en una distancia de 57.64m cincuenta y siete punto sesenta y cuatro metros en (114°22'21") ciento catorce grados veintidós minutos veintiún segundos colindando con propiedad del señor Atilio Colli. ....................................................................................................................

Del vértice sesenta y ocho al vértice sesenta y nueve hacia el Norte en una distancia de 77.33m de setenta y siete punto treinta y tres metros en (127°28'03") ciento veintisiete grados veintiocho minutos tres segundos colindando con propiedad del señor Atilio Colli.

Del vértice sesenta y nueve al vértice setenta y tres hacia el Norte en una distancia de 40.74m de cuarenta punto setenta y cuatro metros en (115°39'35") ciento quince grados treinta y nueve minutos treinta y cinco segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice setenta y tres al vértice setenta y cuatro hacia el Norte en una distancia de 74.11m de setenta y cuatro punto once metros en (104°58'12") ciento cuatro grados cincuenta y ocho minutos doce segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice setenta y cuatro al vértice ochenta hacia el Norte en una distancia de 44.26m de cuarenta y cuatro punto veintiséis metros en (98° 31' 27") en noventa y ocho grados treinta y un minutos veintisiete segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice ochenta al vértice setenta y nueve hacia el Norte en una distancia de 34.90m de treinta y cuatro punto noventa metros en (128°42'46") ciento veintiocho grados cuarenta y dos minutos cuarenta y seis segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice setenta y nueve al vértice setenta y ocho hacia el Norte en una distancia de 46.34m de cuarenta y seis punto treinta y cuatro metros en (117°18'42") ciento dieciséis grados dieciocho minutos cuarenta y dos segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice setenta y ocho al vértice setenta y siete hacia el Norte en una distancia de 51.26m de cincuenta y uno punto veintiséis metros en (123°57'37") ciento veintitrés grados cincuenta y siete minutos treinta y siete segundos colindando con propiedad del señor Atilio Colli. ....................

Del vértice setenta y siete al vértice ochenta y tres hacia el Norte en una distancia de 44.09m de cuarenta y cuatro punto cero nueve metros en (110°40'31") en ciento diez grados cuarenta minutos treinta y un segundos colindando con propiedad del señor Atilio Colli. ....................

CONFIDENTIAL

DANSKE_0014050

 

Del vértice ciento diecisiete al vértice J hacia el Sur en una distancia de 127.83m de ciento veintisiete punto ochenta y tres metros en (287°08'24") doscientos ochenta y siete grados ocho minutos veinticuatro segundos colindando con Lote I. ...............

Del vértice J al vértice I hacia el Sur en una distancia de 31.50m de treinta y uno punto cincuenta metros en (17°08'36") diecisiete grados ocho minutos treinta y seis segundos colindando con Lote I. ...............

Del vértice I al vértice H hacia el Sur en una distancia de 127.50m ciento veintisiete punto cincuenta metros en (300°09'20") trescientos grados nueve minutos veinte segundos colindando con Lote I. ...............

Del vértice H al vértice G hacia el Sur en una distancia de 191.89m ciento noventa y uno punto ochenta y nueve metros en (295°38'05") doscientos noventa y cinco grados treinta y ocho minutos cinco segundos colindando con Lote I. ...............

Del vértice G al vértice M hacia el Sur en una distancia de 65.00m sesenta y cinco metros en (17°08'57") diecisiete grados ocho minutos cincuenta y siete segundos colindando con Lote II. ...............

Del vértice M al vértice L hacia el Sur en una distancia de 299.94m doscientos noventa y nueve punto noventa y cuatro metros en (294°39'15") doscientos noventa y cuatro grados treinta y nueve minutos quince segundos colindando con Lote II. ...............

Del vértice ochenta y tres al vértice ciento diecisiete hacia el Este en una distancia de 395.92m de trescientos noventa y cinco punto noventa y dos metros en (196°54'59") ciento noventa y seis grados cincuenta y cuatro minutos cincuenta y nueve segundos colindando con Propiedad de Francisco Arballo. ...............

Del vértice L al vértice noventa y seis hacia el Oeste en una distancia de 315.33m trescientos quince punto treinta y tres metros en (18°13'32") dieciocho grados trece minutos treinta y dos segundos colindando con propiedad del señor Atilio Colli. ...............

- - - h).- **POLÍGONO I del Predio LA LAGUNA**, (EL CARDONAL), en la delegación Municipal de Cabo San Lucas, Municipio de Los Cabos, Baja California Sur, con Clave Catastral 4-02-013-0001 CUATRO GUION CERO DOS GUION CERO UNO TRES GUION CERO CERO CERO UNO y con superficie de 528-88-49.427 Has. QUINIENTAS VEINTIOCHO HECTÁREAS OCHENTA Y OCHO AREAS CUARENTA Y NUEVE PUNTO CUATROCIENTOS VEINTISIETE CENTIAREAS, con las medidas y colindancias siguientes: ...............

AL NORTE: EN DOS TRAMOS, 2,299.705 M. DOS MIL DOSCIENTOS NOVENTA Y NUEVE METROS SETECIENTOS CINCO MILÍMETROS, con propiedad que es o fue del señor VICTOR HUGO CESEÑA, mas 139.771 M. CIENTO TREINTA Y NUEVE METROS SETECIENTOS SETENTA Y UN MILÍMETROS, con POLÍGONO III; ...............

AL SUR: EN TRES TRAMOS, 139.815 M. CIENTO TREINTA Y NUEVE METROS OCHOCIENTOS QUINCE MILÍMETROS, con POLÍGONO III; mas 1,605.070 M. UN MIL SEISCIENTOS CINCO METROS SETENTA MILÍMETROS, con ZONA FEDERAL

CONFIDENTIAL

DANSKE_0014051

IGNACIO RAMIREZ 19...
TELS. 122-81-20
122-97-17
125-24-40
FAX 1252568

HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

11

MARÍTIMA TERRESTRE DEL OCEANO PACÍFICO; mas 747.160 M. SETECIENTOS CUARENTA Y SIETE METROS CIENTO SESENTA MILÍMETROS, con LOTE VII; ........

AL ESTE: EN DOS TRAMOS, 1,714.370 M. UN MIL SETECIENTOS CATORCE METROS TRESCIENTOS SETENTA MILÍMETROS, con propiedad que es o fue del señor NESTOR HERRERA mas 1,129.040 M. UN MIL CIENTO VEINTINUEVE METROS CUARENTA MILÍMETROS, con LOTES II, VI y VII; .................................

AL OESTE: EN TRES TRAMOS, 1,995.580 M. UN MIL NOVECIENTOS NOVENTA Y CINCO METROS QUINIENTOS OCHENTA MILÍMETROS, con POLÍGONO II, mas 100.000 M. CIEN METROS, con POLÍGONO III, mas 374.414 M. TRESCIENTOS SETENTA Y CUATRO METROS CUATROCIENTOS CATORCE MILÍMETROS, con propiedad que es o fue del señor LUIS BULNES MOLLEDA. ............................................

5. Asimismo, en la fecha de celebración del Fideicomiso, Diamante Cabo aportó al patrimonio del mismo los siguientes derechos (en lo sucesivo los "Derechos"): ..............

- - - a).- Los derechos fideicomisarios y de cualquier naturaleza que, como Fideicomisario en Segundo Lugar "A", o por cualquier otro título posee y que de hecho y por derecho le correspondan en relación al Contrato de Fideicomiso Traslativo de Dominio con Cláusula de Reversión protocolizado mediante la escritura pública (62,902), sesenta y dos mil novecientos dos del volumen (987), novecientos ochenta y siete, de fecha primero de septiembre del año dos mil cinco, otorgada ante la fe del suscrito notario público, y cuyo primer testimonio quedó inscrito ante el Registro Público de la Propiedad del Municipio de Los Cabos, bajo el número 97 noventa y siete, del volumen CCXXXI, de la sección Primera, así como en el número 30 treinta, del volumen CCXXIII sección Primera, mediante el cual los señores ATILIO COLLI VILLARINO y ALICIA CESEÑA AGUNDEZ afectaron en fideicomiso con SCOTIABANK INVERLAT, SOCIEDAD ANÓNIMA, INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT, y designando al ORGANISMO OPERADOR MUNICIPAL DEL SISTEMA DE AGUA POTABLE, ALCANTARILLADO Y SANEAMIENTO DE LOS CABOS, BAJA CALIFORNIA SUR como fideicomisario en primer lugar, la propiedad del inmueble definido en dicha escritura como LA FRACCION CARDONAL (POLIGONO III), descrito en la declaración I.f) de dicho instrumento, cuyas superficies, medidas y colindancias se tienen aquí por reproducidas como si a la letra se insertasen. ..............

- - - b).- Los derechos establecidos a favor de los señores ATILIO COLLI VILLARINO y de la señora ALICIA CESEÑA AGUNDEZ en el CONTRATO DE DONACIÓN IRREVOCABLE DE LA FRACCIÓN DEFINIDA COMO VIALIDAD CARDONAL (POLÍGONO II), el cual fue protocolizado mediante la escritura pública mencionada en el Antecedente I.b).1. de este instrumento, mediante el cual los señores ATILIO COLLI VILLARINO y ALICIA CESEÑA AGUNDEZ donaron al HONORABLE NOVENO AYUNTAMIENTO DEL MUNICIPIO DE LOS CABOS BAJA CALIFORNIA SUR la propiedad del inmueble definido en dicha escritura como VIALIDAD CARDONAL

COTEJADO

CONFIDENTIAL

DANSKE_0014052

(POLÍGONO II) descrito en la declaración I.f) de dicho instrumento, cuyas superficies, medidas y colindancias se tienen aquí por reproducidas como si a la letra se insertasen. - - - c)- Los derechos establecidos a favor de los señores ATILIO COLLI VILLARINO y de la señora ALICIA CESEÑA AGUNDEZ en la constitución de la SERVIDUMBRE VOLUNTARIA DE PASO Y DE USO NO EXCLUSIVA Y A PERPETUIDAD (la "SERVIDUMBRE"), la cual fue protocolizada mediante la escritura pública mencionada en el Antecedente I.b).1. de este instrumento, mediante la cual los señores ATILIO COLLI VILLARINO y ALICIA CESEÑA AGUNDEZ constituyeron la referida servidumbre respecto de un área de terreno denominada en dicho instrumento meramente para efectos de identificación como POLÍGONO IV, que permanece como parte integrante del POLÍGONO I mencionado en el Antecedente I.a).8 de este instrumento, la cual cuenta con una superficie de 6,128.4514 seis mil ciento veintiocho metros punto cuatro mil catorce metros cuadrados, con las siguientes medidas y colindancias: ..................



AL NORTE: 10.2071 MTS CON POLÍGONO III, 239.694 MTS CON PROPIEDAD ATILIO COLLI .........................................................................................................

AL SUR: 10.00 MTS CON PROPIEDAD ATILIO COLLI, 90.00 MTS CON PROPIEDAD ATILIO COLLI, 10.00 MTS CON POLÍGONO II, 136.456 MTS CON PROPIEDAD ATILIO COLLI .......................................................................................................

AL ESTE: 165.366 MTS CON PROPIEDAD ATILIO COLLI, 110.00 MTS CON PROPIEDAD ATILIO COLLI, 100.00 MTS CON PROPIEDAD ATILIO COLLI ....................

AL OESTE: 100.00 MTS CON PROPIEDAD ATILIO COLLI, 100.00 MTS CON PROPIEDAD ATILIO COLLI; 174.174 MTS CON PROPIEDAD LUIS BULNES MOLLEDA. .....................................................................................................

6.- Adquisición del patrimonio Fiduciario de BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO: ....................................................................................................

a).- Por escritura numero cincuenta y nueve mil quinientos dieciséis, otorgada en Mexico, Distrito Federal, el diecinueve de noviembre de dos mil ocho, pasada ante la fe del señor Licenciado ROBERTO NUÑEZ Y BANDERA, Notario Publico Numero Uno, de Mexico, Distrito Federal, se protocolizaron los acuerdos de escisión tomados en la Asamblea General Extraordinaria de Accionistas de BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, celebrada el diecinueve de noviembre del dos mil ocho, en los que se resolvió escindir dicha sociedad como escindente que subsiste, constituyendo una sociedad como escindida a denominarse VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, que sería causahabiente inical, a titulo universal, del patrimonio que la sociedad le aporte en bloque, asumiendo las obligaciones que le sean transferidas por virtud de las escisión: ...................................................................................

b) Por escritura publica numero cincuenta y nueve mil quinientos dieicisiete, pasada ante la fe del señor Licenciado ROBERTO NUÑEZ Y BANDERA, Notario Publico

CONFIDENTIAL

DANSKE_0014053



IGNACIO RAMIREZ 19
TELS. 122-91-20
122-97-17
125-24-40
FAX 1252568

HECTOR CASTRO CASTRO
TITULAR
LIC. ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

13



**COTEJADO**

Numero Uno de México, Distrito Federal, por escisión de Banco JP Morgan, Sociedad Anonima Institución de Banca Multiple, JP Morgan Grupo Financiero se constituyo VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, con domicilio en la Ciudad de México, Distrito Federal, duración indefinida, capital de Ciento noventa y tres millones trescientos diecisiete mil cuarenta y siete pesos, Moneda Nacional, teniendo por objeto principal, recibir po parte de Banco J.P. Morgan, Sociedad Anonima, Institución de Banca Multiple Grupo Financiero, de manera enunciativa y no limitativa ciertas cuentas, por cobrar, ciertas cuentas por pagar y una porcion del capital contable de Banco J.P. Morgan, Sociedad Anonima, Institución de Banca Multiple Grupo Financiero, y diversos activos relfejados en cuentas de orden correspondientes a fideicomisos y mandatos, lo anterior en terminos del articulo vigesimo septimo de la Ley de Instituciones de Credito ..

c).- Por escritura numero cincuenta y nueve mil quinientos veintiuno, otorgada en México, Distrito Federal el diecinueve de noviembre del año dos mil ocho, pasada ante la fe del señor Licenciado ROBERTO NUÑEZ Y BANDERA, Notario Publico Numero Uno, de Mexico, Distrito Federal, THE BANK OF NEW YORK MELLON, SOCIEDAD ANONIMA INSTITUCION DE BANCA MULTIPLE como Sociedad Fusionante, se fusionó con VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, como Sociedad Fusionada, substiendo en consecuencia la primera, en dicha escritura consta que la sociedad Fusionante adquirió a titulo universal el patrimonio de la Fusionada, que a su vez estaba constituida por el patrimonio que habia recibido de Banco J.P. Morgan, Sociedad Anonima, Institución de Banca Multiple, J.P. Morgan Grupo Financiero ...........

7, Con fecha 13 de enero de 2009, Lehman Brothers y el Fideicomisario en Primer Lugar celebraron cierto contrato global de cesión de derechos (*Omnibus Assignment and Assumption*) (la "Cesión Ómnibus 2009") por virtud del cual Lehman Brothers cedió al Fideicomisario en Primer Lugar todos sus derechos bajo los Documentos de la Operación 2006 y éste último aceptó dicha cesión.................................................

8. Con fecha 6 de marzo de 2009, los socios del Fideicomitente mediante asamblea general socios (i) aprobaron la celebración de los Documentos Modificados del Crédito; y (ii) modificaron en su totalidad los estatutos sociales del Fideicomitente reconociendo al Fideicomisario en Primer Lugar como acreedor bajo los Documentos Modificados del Crédito. ................................................................

9. Con fecha 5 de marzo de 2009, Lehman Brothers y el Fideicomisario en Primer Lugar celebraron ciertos contratos de cesión por virtud de los cuales las partes de los mismos perfeccionaron la Cesión Ómnibus 2009 de conformidad con la legislación mexicana, la cesión de derechos a favor del Fideicomisario en Primer Lugar bajo el Contrato de Prenda (Partes Sociales del Fideicomitente), el Contrato de Prenda (Activos) y el Fideicomiso. ................................................................

10. Con esta misma fecha el Fideicomisario en Primer Lugar y el Fideicomitente celebraron un convenio de terminación al Contrato de Prenda (Activos), en virtud de que

13

CONFIDENTIAL

los activos materia de la prenda son aportados al patrimonio del Fideicomiso mediante el presente Convenio Modificatorio y de Re-expresión. ..............................................

11. El 6 de marzo de 2009 el Fideicomisario en Primer Lugar y Diamante Cabo celebraron un convenio modificatorio y de reexpresión al Contrato de Crédito por virtud del cual el Fideicomisario en Primer Lugar y Diamante Cabo modificaron los términos del Contrato de Crédito (el "Contrato de Crédito Modificado y Re-expresado") y Diamante Cabo suscribió a favor del Fideicomisario en Primer Lugar dos pagarés bajo el mismo (los "Pagarés 2009", y conjuntamente con el Modificatorio al Crédito 2009 y los Documentos de la Operación 2006 se les denominará los "Documentos de la Operación", y estos últimos, conjuntamente con el presente Convenio Modificatorio y de Re-expresión se denominan los "Documentos Modificados del Crédito")...........................

----------------------- DECLARACIONES .......................................................

1 Diamante Cabo declara que: ....................................................................

a) Es una sociedad de responsabilidad limitada de capital variable debidamente constituida de conformidad con las leyes de los Estados Unidos Mexicanos, con domicilio principal en Alikan s/n, Colonia Ampliación Mariano Matamoros, C.P. 23460 Cabo San Lucas, Municipio de los Cabos, Baja California Sur. .................................

b) Aportó al patrimonio del Fideicomiso los Predios descritos en el Antecedente 4 y los Derechos descritos en el Antecedente 5 de este instrumento (en lo sucesivo los Predios y los Derechos serán conjuntamente denominados para los efectos de este Convenio Modificatorio y de Re-expresión como el "Inmueble"). ...........................................

c) Cuenta con las facultades corporativas y legales para celebrar y cumplir con las obligaciones a su cargo establecidas en el presente instrumento, así como para otorgar las garantías necesarias, y que ha tomado todas las acciones jurídicas y corporativas necesarias a efecto de autorizar su celebración y cumplimiento en los términos del presente Convenio Modificatorio y de Re-expresión. .....................................................

d) El Fideicomiso constituye una obligación jurídica, válida y obligatoria a cargo de Cabo Diamante, ejecutable de conformidad con las disposiciones establecidas en la legislación aplicable. .....................................................................................

e) La celebración y cumplimiento del presente Convenio Modificatorio y de Re-expresión no implicará ninguna violación material de ninguna disposición ni requisito legal, ni de ninguna disposición establecida en sus documentos corporativos, ni de ninguna obligación contractual a cargo de Diamante Cabo y no tendrá como resultado la constitución ni la imposición de ningún gravamen sobre ninguno de los activos o ingresos de Diamante Cabo, salvo por lo establecido en el presente instrumento y lo expresamente permitido en los Documentos de la Operación. .........................................

f) A la fecha de celebración del presente Convenio Modificatorio y de Re-expresión, no existe, hasta donde es de su conocimiento, ninguna acción, reclamación, demanda, requerimiento ni procedimiento potencial ni pendiente de resolución, ante ningún tribunal, dependencia gubernamental o árbitro, que afecte o pudiese afectar la legalidad,

CONFIDENTIAL

DANSKE_0014055




IGNACIO RAMIREZ
TELS. 122-01-2
122-97-1
126-24-40
FAX 1262568

C. HECTOR CASTRO CASTRO
TITULAR
OSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

15

validez y ejecutabilidad del presente Convenio Modificatorio y de Re-expresión, el Fideicomiso o de la propiedad del Fiduciario sobre el Inmueble.........................................



g) Ningún consentimiento, autorización, solicitud ni cualquier otro acto por parte de alguna autoridad gubernamental o de cualquier otra persona o se requiere a efecto de celebrar, modificar, dar por terminado, ceder, entregar, cumplir, o hacer válido el Fideicomiso ni a efecto de perfeccionar ni mantener la garantía que se constituye en el mismo. ..........................................

h) La persona que celebra el presente Convenio Modificatorio y de Re-expresión en representación de Diamante Cabo cuenta con los poderes, las facultades y la autorización corporativa necesarios para hacerlo, según consta en la escritura pública número **setenta y ocho mil ochocientos ochenta y uno, del volumen numero mil doscientos noventa y uno, otorgada ante la fe del Suscrito Notario**, los cuales no le han sido revocados ni limitados en forma alguna. .........................................

i) Los estatutos sociales de Diamante Cabo incluyen las disposiciones legales establecidas en el artículo 27, fracción I, de la Constitución Política de los Estados Unidos Mexicanos. ..........................................

j) El destino, la utilización y el aprovechamiento del Inmueble es para fines no residenciales en tanto forme parte del Patrimonio Fideicomitido y, por lo tanto, no se requiere permiso de la Secretaría de Relaciones Exteriores ("SRE"), en términos de los artículos 11 y 12 de la Ley de Inversión Extranjera ("LIE"). ..........................................

k) El Inmueble se encuentra al corriente en el pago de cualesquiera impuestos predial o cualesquiera otras contribuciones gubernamentales y servicios a los que pudiese estar sujeto dicho Inmueble.........................................

l) El Inmueble cumple con la regulación aplicable en materia ambiental, de salud y seguridad, y Diamante Cabo no tiene conocimiento de que (i) haya ocurrido ningún evento ni exista circunstancia ni condición que pudiese constituir o resultar en una violación a las leyes ambientales, de salud y seguridad, y (ii) el Inmueble no está sujeto a ninguna acción existente ni, hasta donde es del conocimiento de Diamante Cabo, potencial, ejercida por o ante ninguna autoridad gubernamental, en términos de ninguna ley ambienta, de salud ni de seguridad aplicable, ni existe sustento legal alguno para dicha acción. ..........................................

m) Comparece a la celebración del presente Convenio Modificatorio y de Re-expresión a fin de modificar y re-expresar el clausulado del Fideicomiso para que éste garantice el cumplimiento de las obligaciones de Diamante Cabo, los Miembros de la U.S. LLC, la U.S. LLC y del Garante bajo los Documentos de la Operación.........................................

n) El Fiduciario le ha hecho saber de manera inequívoca el contenido y alcance legal del artículo 106, fracción XIX, de la Ley de Instituciones de Crédito, así como el contenido de las disposiciones legales emitidas por el Banco de México. ..........................................

o) En este acto instruye al Fiduciario a que comparezca a la celebración del presente Convenio Modificatorio y de Re-expresión, en los términos del mismo. ..........................................

CONFIDENTIAL

DANSKE_0014056

2 El Fideicomisario en Primer Lugar en este acto declara que:.........................................

a) Es la sucursal de Londres de una sociedad debidamente constituida de conformidad con las leyes del Reino de Dinamarca. ...............................................................

b) Su representante legal cuenta con todas las facultades y autorizaciones corporativas necesarias para celebrar el presente Convenio Modificatorio y de Re-expresión según consta en la escritura pública número 102,866 de fecha 23 de febrero de 2009, otorgada ante la fe del licenciado Francisco Javier Arce Gargollo, Notario Público número 74 con ejercicio en el Distrito Federal, mismos que no le han sido revocados ni limitados en forma alguna...............................................

c) El Fiduciario le ha hecho saber de manera inequívoca el contenido y alcance legal del artículo 106, fracción XIX, de la Ley de Instituciones de Crédito, así como el contenido de las disposiciones legales emitidas por el Banco de México. ....................................

d) El Fideicomisario en Primer Lugar no tendrá derecho a usar ni aprovechar el Inmueble, salvo que el Fideicomiso reciba el permiso correspondiente por parte de la Secretaría de Relaciones Exteriores, en el entendido de que dicha limitación no precluirá ni disminuirá en forma alguna los derechos del Fideicomisario en Primer Lugar en términos del Fideicomiso o de la garantía otorgada en el mismo:.................................

e) En este acto instruye al Fiduciario a que comparezca a la celebración del presente Convenio Modificatorio y de Re-expresión, en los términos del mismo. ........................

3 El Fiduciario en este acto declara que: ...................................................................

a) Es una institución de banca múltiple, debidamente constituida y autorizada para operar como tal, de conformidad con las leyes mexicanas....................................................

b) ..Su delegada fiduciaria cuenta con todas las facultades y autorizaciones corporativas necesarias para celebrar el presente Convenio Modificatorio y de Re-expresión según consta en la escritura pública número 59,563 otorgada ante la fe del licenciado Roberto Núñez y Bandera, Notario Público número 1 con ejercicio en el Distrito Federal, mismas que no le han sido revocadas ni limitadas en forma alguna. ...........................................

c) Es el legítimo propietario del Inmueble, en calidad de fiduciario del Fideicomiso, mismo que se encuentra libre de todo gravamen (con excepción de la los derechos establecidos a favor de los señores Atilo Colli Villarino y de la señora Alicia Ceseña Agundez en la constitución de la servidumbre voluntaria de paso y de uso no exclusiva y a perpetuidad (la "Servidumbre"), la cual fue protocolizada mediante la escritura pública (62,902), sesenta y dos mil novecientos dos del volumen (987), novecientos ochenta y siete, de fecha primero de septiembre del años dos mil cinco, otorgada ante la fe del suscrito notario público, y cuyo primer testimonio quedó inscrito ante el Registro Público de la Propiedad del Municipio de Los Cabos, bajo el número 97 (noventa y siete), del volumen CCXXXI, de la sección Primera, así como en el número 30 treinta, del volumen CCXXIII sección Primera ), carga, garantía, opción o reclamación por parte de cualquier tercero. .....................................................................................................................



16

CONFIDENTIAL

DANSKE_0014057

IGNACIO RAMIREZ 1930
TELS. 122-91-50
122-97-17
128-24440
FAX 1252588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

17

d) Cuenta con las autorizaciones gubernamentales necesarias para actuar como institución bancaria en México y llevar a cabo operaciones de fideicomiso de conformidad con la legislación y reglamentación mexicana aplicable, mismas que permanecen vigentes a la fecha de firma de este Convenio Modificatorio y de Re-expresión......................................................................................................

e) La celebración y cumplimiento de este Convenio Modificatorio y de Re-expresión no constituye incumplimiento a los estatutos del Fiduciario, ni a acuerdo alguno celebrado por el Fiduciario con terceras personas. .....................................................................

f) El Fideicomiso constituye obligaciones legales y válidas del Fiduciario, exigibles en su contra de acuerdo con sus términos..............................................................................

g) De acuerdo con lo dispuesto en la fracción XIX del artículo 106 de la Ley de Instituciones de Crédito, y las disposiciones emitidas por el Banco de México, la Fiduciaria declara haber explicado a las partes de este Convenio Modificatorio y de Re-expresión en forma inequívoca, el valor y consecuencias de dichas provisiones legales. .

h) Comparece a la celebración de este Convenio Modificatorio y de Re-expresión en cumplimiento de las instrucciones de Diamante Cabo y del Fideicomisario en Primer Lugar.............................................................................................................................

EN TESTIMONIO DE LO ANTERIOR, las partes acuerdan otorgar las siguientes:...........

- - - - - - - - - - - - - - - - - - - - - - - C L Á U S U L A S...................................

PRIMERA. Las partes acuerdan modificar y re-expresar completamente el clausulado del Fideicomiso para quedar en los términos de las siguientes cláusulas: ...............................

"Cláusula 1. Definiciones y Principios de Interpretación. ...............................................

(a) Los términos utilizados con mayúscula que no se definen en alguna otra parte del presente tendrán el significado que respectivamente se les atribuye a continuación:........

"Activos" significa todos y cualquiera de los activos que sean propiedad del Fideicomitente en la fecha de celebración del presente instrumento y todos los que adquiera posteriormente, incluyendo, en forma enunciativa mas no limitativa, los derechos contractuales y de propiedad intelectual, bienes muebles, cuentas bancaria, pagos de terceros de cualquier índole, equipos, y todas las ganancias, productos o frutos derivados de los mismos o de la misma naturaleza...............................................

"Agente de la Cuenta Concentradora" significa Trimont Real Estate Advisors, Inc. como agente de deuda de conformidad con el contrato que rige la Cuenta Concentradora........

"Asesores" tiene el significado que se le atribuye a dicho término en la Cláusula 10.........

"Avalúo" tiene el significado que se le atribuye a dicho término en la Cláusula 8(a). .........

"Aviso de Cumplimiento Total" significa el aviso a que se refiere la Cláusula 12(a), mismo que deberá entregarse conforme al formato que se adjunta como Anexo A. .........

"Aviso sobre Activos Dañados" significa el aviso a que se refiere la Cláusula 7(b)(7), mismo que deberá entregarse conforme al formato que se adjunta como Anexo B. .........

"Caso de Incumplimiento" significa una falta de cumplimiento de las Obligaciones Garantizadas, un incumplimiento de cualquiera de los términos y condiciones

17

CONFIDENTIAL

DANSKE_0014058

establecidos en este Fideicomiso o cualquier otro "Caso de Incumplimiento," (Event of Default) según dicho término se define en la Sección 18 del Contrato de Crédito Modificado y Re-expresado, incluyendo sin limitar a cualquier incumplimiento de pago de principal o de intereses (según los mismos hayan sido capitalizados). ..........................

"Cesión de Rentas" significa el contrato de cesión de arrendamiento y rentas (Assignment of Lease and Rents) según haya sido o sea modificado, celebrado el 10 de marzo de 2006, entre Diamante Cabo y Lehman Brothers, mismo que ha sido cedido por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ..................................

"Cesión Ómnibus 2006" significa la cesión ómnibus (Omnibus Assignment), según haya sido o sea modificada, celebrada el 10 de marzo de 2006 entre Diamante Cabo y Lehman Brothers, misma que ha sido cedida por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ..................................

"Cesión Ómnibus 2009" significa el contrato global de cesión de derechos (Omnibus Assignment and Assumption), según haya sido o sea modificada, de fecha 13 de enero de 2009, por virtud del cual Lehman Brothers cedió al Fideicomisario en Primer Lugar todos sus derechos en los Documentos del Crédito 2006 y éste último aceptó dicha cesión. ..................................

"Circular 1/2005" significa la circular 1/2005 (según haya sido o sea modificada o reformada), emitida por Banco de México, misma que contiene las Reglas aplicables a Instituciones de Crédito, Casas de Bolsa, Instituciones de Seguros, Instituciones de Fianzas, Sociedades Financieras de Objeto Limitado y la Financiera Rural, en las operaciones de fideicomiso. ..................................

"Contrato de Crédito Modificado y Re-expresado" significa el contrato de crédito modificado y re-expresado (Amended and Restated Loan Agreement), según el mismo haya sido o sea modificado, celebrado el 6 de marzo de 2009 entre Diamante Cabo y el Fideicomisario en Primer Lugar. ..................................

"Contrato de Prenda (Partes Sociales del Acreditado)" significa el contrato de prenda sobre partes sociales (Pledge Agreement), según haya sido o sea modificado, celebrado el 10 de marzo de 2006 entre el Garante, los Miembros de la U.S. LLC y Lehman Brothers, mismo que ha sido cedido por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ..................................

"Contrato de Prenda (Partes Sociales del Fideicomitente)" significa el contrato de prenda sobre partes sociales, según haya sido o sea modificado, celebrado el 10 de marzo de 2006 entre Diamante Cabo, el Garante, la U.S. LLC y Lehman Brothers, mismo que ha sido cedido por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ..................

"Contrato de Prenda Sujeto a la Legislación de E.U.A." significa el contrato de prenda (Pledge Agreement), según haya sido o sea modificado, celebrado el 10 de marzo de 2006, entre el Garante, U.S. LLC y Lehman Brothers, mismo que ha sido cedido por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ..................................

"Convocatoria" tiene el significado que se le atribuye a dicho término en la Cláusula 10.



CONFIDENTIAL

DANSKE_0014059

IGNACIO RAMIREZ
TELS. 122-91-
122-97-
126-24-
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

19



**COTEJADO**

"Cuenta Concentradora" significa la cuenta en dólares moneda de curso legal en los Estados Unidos de América que el Fideicomisario en Primer Lugar aperture con y operada por el Agente de la Cuenta Concentradora. ..................................................

"Cuentas del Fideicomiso" significa las cuentas que este acto transmite el Fideicomitente al patrimonio Fideicomitido, las cuales deberán señalar como titular de las mismas al Fiduciario, y aquellas que aperture el Fiduciario en cumplimiento de las instrucciones del Fideicomisario en Primer Lugar. .................................................

"Cuentas por Cobrar" significa todos y cada uno de los derechos del Fideicomitente a recibir el pago por disposición de los activos y cualquier parte del Patrimonio Fideicomitido, ya sea a través de venta, renta prestación de servicios o uso del Patrimonio Fideicomitido (según se define más adelante), que se hayan generado a la fecha de presente o se generen en el futuro, y todas las sustituciones y recursos derivados de ellos (sean en efectivo o no, sean muebles o inmuebles, tangibles o intangibles) recibidos con motivo de la venta, canje, enajenación de éstos o por su sustitución incluyendo. .................................................................................................

"Derechos Contractuales" significa todos los derechos (excluyendo las obligaciones) y beneficios, ya sen tangibles o intangibles, derivados de los contratos o instrumentos celebrados en el pasado o en el futuro por el Fideicomitente con terceros en relación con el Proyecto y/o el Patrimonio Fideicomitido..: ...........................................

"Día Hábil" significa cualquier día del año, excepto sábados, domingos y días festivos conforme a la Ley Federal del Trabajo y al calendario que anualmente publica la Comisión Nacional Bancaria y de Valores, en el cual instituciones bancarias en México y en Nueva York, Estados Unidos de América, estén abiertas al público para llevar a cabo operaciones bancarias. .................................................................

"Diamante Cabo" significa Diamante Cabo San Lucas, S. de R.L. de C.V. .......................

"Documento de Cumplimiento" significa la Garantía de Cumplimiento, según haya sido o sea modificado, otorgado por el Garante en favor de Lehman Brothers el 10 de marzo de 2006, misma que ha sido cedida en favor del Fideicomisario en Primer Lugar............

"Documentos Modificados del Crédito" significa el Contrato de Crédito Modificado y Re-expresado, el Pagaré A, el Pagaré B, la Cesión de Rentas, el Contrato de Prenda (Partes Sociales del Fideicomitente), el Contrato de Prenda (Partes Sociales del Acreditado), el Contrato de Prenda sobre Partes Sociales de E.U.A., la Garantía con Recurso, la Indemnización Ambiental, la Cesión Ómnibus 2006, el Documento de Cumplimiento y la Garantía, según los mismos hayan sido modificados o sean modificados en el en el futuro..................................................................................

"Fideicomitente" significa Diamante Cabo San Lucas, S. de R.L. de C.V. ......................

"Fideicomisario en Primer Lugar" significa Danske Bank A/S, London Branch, la sucursal de Londres de una sociedad constituida en el Reino de Dinamarca. ..............................

"Fideicomisario en Segundo Lugar" significa el Fideicomitente en su carácter de fideicomisario en segundo lugar bajo el presente. .................................................

CONFIDENTIAL

DANSKE_0014060

"Fideicomiso" significa este fideicomiso modificado y re-expresado irrevocable de garantía F/00321, según el mismo haya sido o sea modificado, incluyendo todos sus Anexos, e incluyendo cualquier modificación subsecuente al mismo. .............................

"Fideicomiso de Unidad Residencial" significa el fideicomiso a ser celebrado conforme a las leyes de México a efecto de aportar al mismo una Unidad para la venta de Participaciones Fraccionales. ...........................

"Fiduciario" significa The Bank of New York Mellon, S.A., Institución de Banca Múltiple, como fiduciario bajo el presente Fideicomiso. ...........................

"Garante" significa el señor Kenneth A. Jowdy. ...........................

"Garantía" significa la garantía (Guaranty), según haya sido o sea modificada, otorgada por los Miembros de la U.S. LLC, el Garante y la U.S. LLC en favor de Lehman Brothers el 10 de marzo de 2006, misma que ha sido cedida por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ...........................

"Garantía con Recurso" significa la garantía con recurso (Recourse Guaranty), según haya sido o sea modificada, celebrada el 10 de marzo de 2006 por el Garante y Lehman Brothers, con vigencia a partir del 10 de marzo de 2006, misma que ha sido cedida por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ...........................

"Indemnización Ambiental" significa el documento de responsabilidad e indemnización en materia ambiental, según haya sido o sea modificado, celebrado el 10 de marzo de 2006 entre Diamante Cabo, el Garante y Lehman Brothers, mismo que ha sido cedido por Lehman Brothers en favor del Fideicomisario en Primer Lugar. ...........................

"Inversiones Permitidas" significa inversiones realizadas en instituciones financieras autorizadas para ello, en instrumentos de tasa fija o valores con denominación en Pesos y/o Dólares de los Estados Unidos de América con vencimientos a la vista, emitidos o garantizados por el Gobierno Federal de México o por el Gobierno de los Estados Unidos de América, según corresponda. ...........................

"Inmueble" Significa los inmuebles como se definen en el apartado de declaraciones y antecedentes del presente instrumento, el cual forma parte del Patrimonio Fideicomitido.

"Instrucción de Ejecución" tiene el significado que se le atribuye a dicho término en la Cláusula 10. ...........................

"Instrucción de Inversión" tiene el significado que se le atribuye a dicho término en la Cláusula 4(g)(1). ...........................

"Lehman Brothers" significa Lehman Brothers Holdings, Inc. ...........................

"Legislación Ambiental" significa todas las leyes federales, estatales y locales y otras disposiciones estatutarias, regulaciones, acuerdos, reglamentos, decretos, órdenes, requerimientos, reglas, lineamientos, procedimientos internos, parámetros, criterios, estándares y normas oficiales mexicanas, así como cualesquier obligaciones contractuales y permisos, sentencias, laudos, licencias, autorizaciones o concesiones, emitidas o utilizadas por cualquier autoridad gubernamental, en cada caso en relación con salud pública, seguridad e higiene, contaminación o protección al medio ambiente o



CONFIDENTIAL

DANSKE_0014061

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252688

C. HECTOR CASTRO CASTRO
TITULAR
C. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM. 7

21

**COTEJADO**

a los recursos naturales en general, así como la contaminación (o prevención de la misma) de aire, agua, suelo y subsuelo (incluyendo todas aquellas relacionadas con el uso, producción, generación, manejo, transporte, tratamiento, almacenamiento, disposición, distribución, etiquetado, procesamiento, descarga, liberación, control, remediación o limpieza de cualquier Sustancia Peligrosa) en vigor a la fecha del presente Fideicomiso. El término "Legislación Ambiental" incluye (pero no se limita a) la Ley General del Equilibrio Ecológico y Protección al Ambiente, la Ley de Aguas Nacionales, la Ley General para la Prevención y Gestión Integral de los Residuos, la Ley de Equilibrio Ecológico y Protección del Ambiente del Estado de Baja California Sur, las Normas Oficiales Mexicanas: NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, NOM-138-SEMARNAT/SS-2003, y PROY-NOM-147-SEMARNAT/SSA1-2004 (así como los lineamientos internos utilizados por la Procuraduría Federal de Protección al Ambiente para suelos contaminados y su remediación), la Ley General de Salud, el Reglamento Federal de Seguridad, Higiene y Medio Ambiente en el Trabajo y la Norma Oficial Mexicana NOM-010-STPS-199, así como las modificaciones y reformas a las mismas. .......................................................

"LGTOC" significa la Ley General de Títulos y Operaciones de Crédito. .......................

"Mejoras" significa las construcciones y cualquier estructura que exista en el presente o que se edifique o construya sobre o en el Inmueble. ..................................................

"Memorándum de Información" tiene el significado que se le atribuye a dicho término en la Cláusula 10. .........................................................................................................

"México" significa los Estados Unidos Mexicanos. .......................................................

"Miembros de la U.S. LLC" significa colectivamente Baja Ventures 2006, LLC, Diamante Properties, LLC, KA Holdings LLC y CSL Properties 2006, LLC. ...............................

"Notificación de Incumplimiento" significa una notificación entregada al Fideicomitente y al Fiduciario por el Fideicomisario en Primer Lugar, respecto de la existencia de un Caso de Incumplimiento y, de ser aplicable, el periodo de cura bajo los Documentos Modificados del Crédito. ............................................................................................

"Obligaciones Garantizadas" significa, según el contexto lo requiera, todas y cada una de las obligaciones ya sean presentes o futuras a cargo de Diamante Cabo, de la U.S. LLC, de los Miembros de la U.S. LLC y del Garante al amparo de los Documentos Modificados del Crédito, incluyendo, sin limitación alguna, el pago oportuno de la cantidad adeudada del principal y, en su caso, de intereses y capitalizaciones de los mismos, así como de la "Cuota de Participación en Utilidades" (Profit Participation Fee) y la "Cuota de No Uso" (Non-Utilization Fee), según dichos términos se definen en el Contrato de Crédito Modificado y Re-expresado, según dichos documentos hayan sido o sean modificados; así como todas y cada una de las obligaciones presentes o futuras a cargo de Diamante Cabo en términos del presente Fideicomiso y el Contrato de Crédito Modificado y Re-expresado, con sus respectivas modificaciones y adiciones que ocurran de tiempo en tiempo. ....................................................................................................

CONFIDENTIAL
DANSKE_0014062

"Operaciones" tiene el significado que se le atribuye a dicho término en la Cláusula 4(g).

"Pagaré A" significa el pagaré emitido el 6 de marzo de 2009 por Diamante Cabo a favor del Fideicomisario en Primer Lugar por un monto principal equivalente a USD\$109,138,327.83 (Ciento nueve millones ciento treinta y ocho mil trescientos veintisiete dólares 83/100, Moneda en Curso Legal de los Estados Unidos de América).

"Pagaré B" significa el pagaré emitido el 6 de marzo de 2009 por Diamante Cabo a favor del Fideicomisario en Primer Lugar por un monto principal equivalente a USD\$16,000,000.00 (Dieciséis millones de dólares 00/100, Moneda en Curso Legal de los Estados Unidos de América). .................................................................................

"Participación Fraccional" significa (i) cualquier parte de los derechos fideicomisarios derivados de un Fideicomiso de Unidad Residencial, cuyos derechos fideicomisarios, en términos de dicho Fideicomiso de Unidad Residencial, se dividen en cierto número de partes a efecto de representar el derecho a una cierta parte de la Unidad aportada al patrimonio del mismo, cuyos derechos fideicomisarios otorgan al tenedor de los mismos el derecho de uso respecto a la Unidad por un periodo determinado de semanas durante un año calendario en términos de dicho instrumento, el reglamento de condominio que se constituya para el Proyecto y el correspondiente contrato de compraventa respecto de dichos derechos, o (ii) cualquier copropiedad en una Unidad.

"Patrimonio Fideicomitido" tiene el significado que se le atribuye a dicho término en la Cláusula 5. .......................................................................................................

"Pesos" significa moneda de curso legal en los Estados Unidos Mexicanos. .....................

"Precio Base" tiene el significado que se le atribuye a dicho término en la Cláusula 10. .....

"Proyecto" significa, de manera enunciativa mas no limitativa, el desarrollo inmobiliario del Inmueble para convertirlo en un desarrollo turístico (resort) y residencial, dos campos de golf, una casa club, restaurante, spa y gimnasio (fitness center) y salones de usos múltiples y demás servicios. ....................................................................................

"Registro Público" significa el Registro Público de la Propiedad y de Comercio de San José del Cabo, Municipio de Los Cabos, Baja California Sur. .......................................

"Sustancia Peligrosa" significa cualquier residuo peligroso, desecho tóxico, material peligroso, sustancia tóxica, residuo especial, petróleo o sustancia o residuo derivado del petróleo, sustancia o residuo radioactivo, ya sean sólidos, líquidos o gaseosos, o cualesquier componente de cualesquiera de las substancias o residuos mencionados, o cualesquiera otras substancias o materias reguladas bajo o definidas por la Legislación Ambiental incluyendo sin limitación cualesquiera residuos, materiales o substancias que sean (i) designados o etiquetados como "materiales peligrosos" y/o "residuos peligrosos" conforme a la Ley General del Equilibrio Ecológico y Protección al Ambiente; (ii) listados o caracterizados como "peligrosos" bajo las Normas Oficiales Mexicanas NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, y (iii) designados como "residuos peligrosos" bajo la Ley General para la Prevención y Gestión Integral de los Residuos. ...



CONFIDENTIAL

DANSKE_0014063






**COTEJADO**

"Unidad", significa cualquier lote, unidad condominal y/o residencial ubicada en el inmueble sujeta a venta o enajenación individual de conformidad con el régimen de propiedad en condominio maestro y sub-régimen de propiedad en condominio que se constituirá sobre el inmueble para los fines del Proyecto. ........................................

"U.S. LLC" significa Diamante Cabo San Lucas LLC. ............................................

(b)Los siguientes principios de interpretación serán aplicables para efectos del Fideicomiso:

(1) Los términos definidos en plural, cuando sean expresados en singular, tendrán el significado individual que se le atribuye a dicho término en plural y vice versa. ..............

(2) Salvo especificación en contrario en el presente, toda referencia en este Fideicomiso a Cláusulas, Anexos o párrafos, se entenderá que se hacen a Cláusulas, Anexos y párrafos de este Fideicomiso. ............................................

(3) Los encabezados de las Cláusulas de este Fideicomiso se incluyen para fines de conveniencia únicamente y no afectarán en forma alguna el significado o la interpretación de cualquier disposición de este Fideicomiso. ...................................

(4) Cualquier referencia a una persona, identificada bajo dicho término o no, se interpretará como que también incluye a los causahabientes y cesionarios permitidos de dicha persona. ............................................

(5) Cualquier referencia a un contrato, convenio, acuerdo o documento se interpretará como que también incluye cualquier modificación o reexpresión a dicho contrato, convenio, acuerdo o documento. ............................................

(6) Todos los Anexos del presente Fideicomiso forman parte integral del mismo. ..............

Cláusula 2. Constitución del Fideicomiso; Transmisión del Patrimonio Fideicomitido. .......

(a)Las partes en este acto ratifican la constitución del Fideicomiso irrevocable de garantía con el Fiduciario a fin de garantizar, con el Patrimonio Fideicomitido, el pago y cumplimiento total de las Obligaciones Garantizadas. ............................................

(b) El Fiduciario en este acto confirma la aceptación de su designación como Fiduciario del Fideicomiso así como la recepción de la titularidad (en propiedad fiduciaria) del Patrimonio Fideicomitido y conviene en actuar de la manera prevista en este Fideicomiso y la legislación aplicable para cumplir con los fines del mismo, incluyendo sin limitación, llevar a cabo el procedimiento de ejecución que se establece en la Cláusula 10. Este instrumento acredita la recepción por parte del Fiduciario del Patrimonio Fideicomitido. ............................................

(c) El Fideicomitente y el Fideicomisario en Primer Lugar en este acto reconocen y acuerdan que la transmisión de la propiedad del Inmueble y sus Mejoras a favor del Fiduciario se perfeccionó mediante el contrato que constituyó el Fideicomiso elevado a escritura pública número 65,041, volumen 1,026 de fecha 10 de marzo de 2006, otorgada ante la fe del licenciado José Alberto Castro Salazar, Notario Publico adscrito a la Notaria Publica numero siete, del estado y del patrimonio inmueble federal, con ejercicio en los municipios de La Paz y Los Cabos, y con residencia en la capital del estado e inscrita en el registro publico de la propiedad y comercio el 8 de mayo del

23

2006, número 135 foja 135 volumen CCXLV sección I. El Fideicomitente acuerda garantizar el saneamiento para el caso de evicción del Inmueble, en el entendido de que dicha obligación sobrevivirá la terminación anticipada del Fideicomiso............................

(d) El Fideicomitente en este acto transmite al Fiduciario la propiedad y titularidad de todos los derechos adheridos o inherentes al o derivados del Inmueble, incluyendo sin limitación licencias, permisos, derechos, concesiones, accesorios y Mejoras del Inmueble. Adicionalmente, el Fideicomitente en este acto transmite al Fiduciario todos y cada uno de los Activos, Cuentas por Cobrar, Derechos Contractuales así como todos los derechos, intereses y beneficios del Fideicomitente al amparo de cualesquiera pólizas de seguros, pagos, dinero, efectivo y todos los productos y frutos derivados de o relacionados con el Patrimonio Fideicomitido, incluyendo sin limitación, todos los derechos a recibir ingresos por seguros y todos los montos. ............................................

(e) La transmisión irrevocable de la propiedad y titularidad de los derechos que en este acto se aportan al Patrimonio Fideicomitido, incluyendo sin limitación, cualesquiera Activos, Cuentas por Cobrar, Derechos Contractuales y derechos del Fideicomitente bajo cualesquiera de los contratos celebrados por el Fideicomitente se perfecciona en este acto............................................................................................................................

(f) La transmisión irrevocable de los derechos, titularidad e intereses del Fideicomitente derivados de licencias y permisos que en este acto se aportan al Patrimonio Fideicomitido a favor del Fiduciario, en la medida permitida por las leyes aplicables, se perfecciona en este acto. En la medida que sea necesario obtener un consentimiento o autorización de cualquier autoridad gubernamental para la transmisión al Fiduciario de la titularidad de dichas licencias o permisos y/o cualquier derecho del Fideicomitente derivado de los mismos, el Fideicomitente se obliga a obtener dichos consentimientos o autorizaciones............................................................................................................

(g) La transmisión irrevocable de todos los derechos, intereses y beneficios del Fideicomitente al amparo de cualesquiera pólizas de seguro, pagos, dinero, efectivo así como todos los productos y /o frutos derivados de o relacionados con el Patrimonio Fideicomitido, incluyendo sin limitación, todos los derecho a recibir todos los ingresos derivados de seguros y cualesquiera montos, se perfeccionan en este acto. ....................

(h) En caso de que el Fideicomitente reciba cantidades derivadas de los Activos, Derechos Contractuales, Cuentas por Cobrar, derechos, intereses y beneficios del Fideicomitente bajo cualesquiera pólizas de seguro, y otros pagos, cantidades en efectivo y todos los productos y/o frutos derivados de, o en relación con, el Patrimonio Fideicomitido, dichas cantidades serán recibidas por el Fideicomitente como depositario, libres de cualquier cargo, para los fines del Fideicomiso y deberán ser inmediatamente depositadas en la Cuenta Concentradora. La transmisión irrevocable de Cuentas por Cobrar y de los Derechos Contractuales futuros a favor del Fiduciario se perfeccionará en los términos del presente Fideicomiso, una vez que dichas Cuentas por Cobrar y Derechos Contractuales se hayan generado. ...............................................

CONFIDENTIAL

DANSKE_0014065

IGNACIO RAMIREZ 1936
TELS. 122-91-20
122-97-72
126-24-62
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

25



(i) El Fideicomitente conviene en celebrar y firmar oportunamente y a su propio costo, todos los instrumentos y documentos adicionales y llevar a cabo todas las acciones adicionales necesarias conforme a las leyes aplicables o el Contrato de Crédito Modificado y Re-expresado o cualquier Documento del Crédito o que el Fiduciario o el Fideicomisario en Primer Lugar le solicite razonablemente por escrito, para perfeccionar y defender la transmisión del Patrimonio Fideicomitido o con la finalidad de permitir que el Fideicomisario en Primer Lugar y el Fiduciario puedan ejercer sus derechos y recursos bajo el presente Fideicomiso. El Fideicomitente, dentro de los 15 (quince) Días Hábiles siguientes a la fecha del presente instrumento, deberá otorgar los poderes irrevocables en el formato que se adjunta como Anexo C, de conformidad con el artículo 2596 del Código Civil Federal y sus correlativos en los códigos civiles de las entidades federativas de México, autorizando para tales efectos al Fideicomisario en Primer Lugar para actuar en nombre y representación del Fideicomitente a efecto de llevar a cabo las acciones descritas en este párrafo. En caso de que el Fideicomisario en Primer Lugar solicite al Fideicomitente que lleve a cabo las acciones antes descritas, y el Fideicomitente no lleve a cabo dichas acciones en el término de 15 (quince) Días Hábiles, sin eximir de responsabilidad al Fideicomitente, el Fideicomisario en Primer Lugar, ejerciendo su poder, tendrá el derecho de llevar a cabo las acciones descritas en este párrafo, sin estar obligado a ello...................................................................

(j) En relación con cualesquiera convenios, autorizaciones, licencias o permisos que, de conformidad con los términos del Fideicomiso, sean o lleguen a ser parte del Patrimonio Fideicomitido, el Fideicomitente especificará por escrito a la otra parte o a la autoridad correspondiente, según corresponda, que (i) los derechos derivados de los mismos son propiedad del Fiduciario en su carácter de fiduciario bajo el presente Fideicomiso; y (ii) los montos pagaderos bajo los mismos deberán ser depositados en la Cuenta Concentradora. ...................................................................

(k) El Fideicomitente se obliga a notificar a las partes con las que haya celebrado contratos o acuerdos que estén siendo transmitidos al Patrimonio Fideicomitido para que se reconozca al Fiduciario como titular de dichos derechos y contratos, dicha notificación se deberá hacer usando del formato de notificación adjunto al presente como Anexo D. Algunos de los contratos que el Fideicomitente aporta al Patrimonio del Fideicomiso se encuentran identificados en el Anexo E del presente instrumento, en el entendido que los mismos no constituyen la totalidad de los contratos aportados al Patrimonio del Fideicomiso. ...................................................................

(l) Asimismo, el Fideicomitente se obliga, dentro de los 10 (diez) Días Hábiles siguientes a la fecha del presente instrumento, a notificar a los bancos que mantienen las cuentas que el Fideicomitente aporta en este acto al Patrimonio del Fideicomiso para que se reconozca al Fiduciario como titular de las mismas. Las cuentas bancarias que el Fideicomitente en este acto transmite al Fiduciario se encuentran identificadas en el Anexo F del presente Fideicomiso...................................................................

CONFIDENTIAL

DANSKE_0014066

(m) En relación con los derechos derivados de las fianzas o seguros a favor del Fideicomitente que estén siendo aportados al Patrimonio del Fideicomiso, el Fideicomitente se obliga, dentro de los 10 (diez) Días Hábiles siguientes a la fecha del presente instrumento, a notificar a las compañías de seguros y afianzadoras correspondientes de dicha aportación de conformidad con el formato adjunto al presente como Anexo G. ...................................................................................................................

Cláusula 3. Partes del Contrato de Fideicomiso. ..............................................................

(a) Las siguientes son partes de este Fideicomiso: .......................................................

Fideicomitente y Fideicomisario en Segundo Lugar:    Diamante Cabo San Lucas, S. de R.L. de C.V.

Fiduciario:    The Bank of New York Mellon, S.A., Institución de Banca Múltiple, División Fiduciaria (una institución bancaria)



Fideicomisario en Primer Lugar:    Danske Bank A/S, London Branch, la sucursal de Londres de una sociedad constituida en el Reino de Dinamarca y/o sus sucesores o causahabientes autorizados

(b) Sujeto a las condiciones establecidas en el presente, el Fideicomitente como Fideicomisario en Segundo Lugar tendrá derecho a la reversión del Patrimonio Fideicomitido que resulte después del pago total de las Obligaciones Garantizadas. ........

(c) Las partes del presente declaran que la transmisión del Patrimonio Fideicomitido al Fiduciario en términos del Fideicomiso no constituye una enajenación de bienes en términos de la fracción V del Artículo 14 del Código Fiscal Federal y no genera impuesto por traslación de dominio. ...................................................................................................

(d) Los causahabientes, cesionarios permitidos, fiduciarios substitutos o las partes que sustituyan al Fiduciario o al Fideicomisario en Primer Lugar, según sea el caso (o aquellas que participen junto con ellos), de conformidad con los términos de este Fideicomiso y del Contrato de Crédito Modificado y Re-expresado, serán consideradas como el "Fiduciario" y el "Fideicomisario en Primer Lugar", respectivamente, para efectos del presente Fideicomiso. .................................................................................

Cláusula 4. Fines de este Fideicomiso. .............................................................................

Los fines del Fideicomiso que se constituye por medio del presente son los siguientes: ...

(a) Que el Fiduciario reciba y mantenga la propiedad y titularidad del Patrimonio Fideicomitido para garantizar el cumplimiento de las Obligaciones Garantizadas de conformidad con lo establecido en el presente. ........................................................

(b) Que el dinero en efectivo y todos y cada uno de los pagos que resulten de cualesquiera Activos, Cuentas por Cobrar y Derechos Contractuales, sean depositados en la Cuenta Concentradora de conformidad con lo establecido en el Contrato de

CONFIDENTIAL

DANSKE_0014067



IGNACIO RAMIREZ 19  
TELS. 122-91-20  
122-87-17  
125-24-40  
FAX 1252568

LIC. HECTOR CASTRO CASTRO  
TITULAR  
JOSE ALBERTO CASTRO SALAZAR  
ADSCRITO  
NOTARIA PUBLICA NUM.7

27



Crédito Modificado y Re-expresado y la parte de presente Fideicomiso, así como que cualesquiera derechos y activos derivados de los Activos, Cuentas por Cobrar y los Derechos Contractuales sean transferidos al Fiduciario para formar parte del Patrimonio Fideicomitido. ..................................................................................................................

(c) Que a partir de la fecha del presente, todos los derechos, pagos y bienes que son parte del Patrimonio Fideicomitido y que se reciban como contraprestación por la transmisión de la propiedad de cualquier parte del Patrimonio Fideicomitido en favor de cualquier tercero, o como indemnización por cualquier daño, expropiación o pérdida de dicho Patrimonio Fideicomitido (incluyendo pagos en relación con pólizas de seguro), sea aplicado de conformidad con los términos del Contrato de Crédito Modificado y Re-expresado y del presente Fideicomiso, y para cualquier otro propósito establecido en este Fideicomiso de conformidad con sus términos, de acuerdo con las instrucciones escritas que reciba el Fiduciario del Fideicomisario en Primer Lugar. ..............................

(d) Que el Patrimonio Fideicomitido garantice las Obligaciones Garantizadas y para tal propósito el Fiduciario actúe, en caso de ocurrir un Caso de Incumplimiento, de conformidad con las disposiciones contenidas en la Cláusula 10 y la Cláusula 11 relativas a la ejecución del Patrimonio Fideicomitido y la aplicación de los recursos provenientes de su venta (sin perjuicio de la aplicabilidad de otras disposiciones de este Fideicomiso, según sea el caso). ................................................................................

(e) Que el Fiduciario, una vez que las Obligaciones Garantizadas hayan sido satisfechas en su totalidad, el Contrato de Crédito Modificado y Re-expresado se haya dado por terminado, el Fideicomisario en Primer Lugar haya entregado al Fiduciario un Aviso de Cumplimiento Total y todos los pagos al Fiduciario hayan sido satisfechos en los términos del presente, (i) revierta el remanente del Patrimonio Fideicomitido al Fideicomisario en Segundo Lugar en los términos de las instrucciones por escrito reciba del Fideicomitente y con cargo a este último, lleve al cabo todas y cada una de las acciones que le sean instruidas con el propósito de que el Patrimonio Fideicomitido sea revertido al Fideicomitente o a la persona que éste designe de acuerdo con lo previsto en este párrafo; o (ii) celebre con el Fideicomitente y el Fideicomisario en Primer Lugar un convenio modificatorio al Fideicomiso por virtud del cual el Fideicomisario en Primer Lugar deje de ser parte del mismo a satisfacción de éste último. ....................................

(f) Que el Fiduciario conserve la propiedad del Patrimonio Fideicomitido, ejerza los derechos correspondientes al mismo y lleve a cabo los actos necesarios para la protección del mismo de acuerdo con las disposiciones establecidas en el presente, en la ley aplicable y de conformidad con las instrucciones escritas emitidas conjuntamente por el Fideicomitente y el Fideicomisario en Primer Lugar, siempre y cuando el Fiduciario no haya recibido una Notificación de Incumplimiento. En caso de que el Fiduciario haya recibido una Notificación de Incumplimiento, el Fiduciario seguirá y cumplirá únicamente las instrucciones que le dé el Fideicomisario en Primer Lugar. En caso de que el Fiduciario tenga conocimiento de una emergencia, el Fiduciario actuará a

CONFIDENTIAL

DANSKE_0014068



IGNACIO RAMIREZ 130
TELS. 122-91-20
122-97-17
128-24-40
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7



**COTEJADO**

cumplir con la Instrucción de Inversión que se reciba más tarde ese día, siempre que sea un Día Hábil y los fondos respectivos se reciban por el Fiduciario en el mismo Día Hábil. ...............................................................................................................................

El Fiduciario estará autorizado, con el propósito de cumplir una Instrucción de Inversión para que, en el momento y conforme las instrucciones que reciba, abra cuentas de cheques y de inversiones, a nombre del Fideicomiso, de conformidad con dicha Instrucción de Inversión; respecto de las cuales el Fiduciario tendrá, sujeto a los términos del presente Fideicomiso y al contenido de dicha Instrucción de Inversión, el derecho y control exclusivo de realizar disposiciones. ...............................................

En el cumplimiento de una Instrucción de Inversión, el Fiduciario deberá invertir en Inversiones Permitidas en los instrumentos financieros que tengan al plazo de vencimiento a que se refiera dicha Instrucción de Inversión, (en cualquier caso que no excedan del máximo plazo de vencimiento establecido en dicha Instrucción de Inversión) y, según sea el caso, sujeto a las calificaciones establecidas en dicha Instrucción de Inversión. Si el Fiduciario no recibe una Instrucción de Inversión según lo dispuesto anteriormente o cualesquiera montos en efectivo no pueden ser invertidos inmediatamente en el mismo día en que se haya recibido una Instrucción de Inversión de conformidad con los términos de este Fideicomiso, cualesquiera de dichos montos en efectivo del Patrimonio Fideicomitido deberán de ser invertidos en Inversiones Permitidas. ..............................................................................................................................

(3) En cumplimiento con la Circular 1/2005, el Fiduciario ha explicado en forma clara e inequívoca a las partes el contenido de la Regla 5.4 de la Circular 1/2005, así como las siguientes medidas preventivas: ..............................................................................................

(i) El Fiduciario podrá realizar las operaciones señaladas en la Regla 5.4 de la Circular 1/2005, es decir, operaciones con The Bank of New York Mellon, S.A., Institución de Banca Múltiple, cuando actúe por su propia cuenta, en la medida que dichas operaciones estén autorizadas por la ley y las disposiciones legales aplicables, y se adopten medidas preventivas para evitar conflictos de interés (las "Operaciones"). ..........

(ii) Siempre y cuando el Fiduciario no haya recibido una notificación por escrito del Fideicomisario en Primer Lugar en el sentido de que ha ocurrido un Caso de Incumplimiento, las Operaciones se llevarán a cabo previa autorización expresa por escrito, en cada caso, del Fideicomitente al Fiduciario por cualquier medio que deje evidencia documental, incluyendo medios electrónicos. Si un Caso de Incumplimiento ocurre y continúa (según se notifique por escrito del Fideicomisario en Primer Lugar al Fiduciario), las Operaciones se llevarán a cabo previa autorización expresa por escrito, en cada caso, del Fideicomisario en Primer Lugar en los términos antes señalados. ........

(iii) Durante la realización de las Operaciones, los derechos y obligaciones del Fiduciario actuando con dicho carácter y por su propia cuenta, no se extinguirán por confusión. ......

(iv) El departamento de The Bank of New York Mellon, S.A., Institución de Banca Múltiple,

CONFIDENTIAL

DANSKE_0014069

cuando actúe por su propia cuenta, y el departamento fiduciario del Fiduciario, no deberán ser dependientes directamente entre ellos.....................................................

(v) En cumplimiento a lo dispuesto en el numeral 3.2 de la Circular, se hace constar que los fondos que reciba el Fiduciario que no se inviertan de manera inmediata conforme a los fines del Fideicomiso, deberán ser depositados en una institución de crédito a más tardar el Día Hábil siguiente al que se reciban, en tanto se aplican a los fines del Fideicomiso. De realizarse el depósito en cuentas abiertas en la propia institución de crédito que actúa como Fiduciario, éste deberá devengar la tasa más alta que dicha institución pague por operaciones al mismo plazo y monto similar, en las mismas fechas en que se mantenga el depósito. .......................................................................................

(4) En las Operaciones a que se refieren los párrafos anteriores de la Cláusula 4(g)(3), el Fiduciario deberá observar los lineamientos y políticas que The Bank of New York Mellon, S.A., Institución de Banca Múltiple aplique en operaciones similares. El Fiduciario no será responsable por reducciones en el valor de las inversiones llevadas a cabo de conformidad con lo dispuesto en la Cláusula 4(g)(2), ya sean por cuenta de variaciones de mercado o por cualquier otra razón, y con relación a cualquier detrimento que puedan padecer el valor de las inversiones efectuadas por el Fiduciario de conformidad con lo dispuesto en esta cláusula, salvo en los casos de dolo, negligencia o mala fe, determinados en sentencia definitiva dictada por autoridad competente. Las partes en este acto liberan de manera expresa al Fiduciario de cualquier responsabilidad en relación a los actos que realice el Fiduciario de conformidad con lo dispuesto en el inciso (e) de la presente Cláusula 4 así como en relación a cualquier detrimento que pueda sufrir el valor de las inversiones que realice el Fiduciario de conformidad con lo dispuesto en esta Cláusula 4(g), salvo en los casos de dolo, negligencia o mala fe determinados en sentencia definitiva dictada por autoridad competente.....................................................................................................

(h) Que el Fiduciario celebre los contratos y otros instrumentos necesarios, y lleve a cabo los actos relevantes, para constituir y mantener la garantía contemplada bajo este Fideicomiso, y que el Fiduciario abra cualesquiera cuentas bancarias conforme a las instrucciones por escrito del Fideicomisario en Primer Lugar entregadas por lo menos 5 (cinco) Días Hábiles de anticipación. ..................................................................

(i) Que mientras que el Fideicomisario en Primer Lugar no haya entregado al Fiduciario una Notificación de Incumplimiento y siempre y cuando el Fideicomisario en Primer Lugar haya aprobado y hecho saber al Fiduciario por escrito la aprobación de dichos actos, éste último lleve a cabo en relación con el Inmueble y las Mejoras todos los actos jurídicos que el Fideicomitente le solicite expresamente por escrito. Dichos actos (1) no deberán afectar la garantía otorgada en favor del Fideicomisario en Primer Lugar, (2) constituirán acciones permitidas bajo el Fideicomiso y los Documentos Modificados del Crédito, (3) no deberán tratarse de fusiones, subdivisiones, otorgamiento de derechos de vía, constitución de regímenes de condominio o actos que limiten el dominio del

CONFIDENTIAL

DANSKE_0014070

IGNACIO RAMIREZ 1880
TELS. 122-91-20
122-97-17
125-24-40
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
C. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

31



**COTEJADO**

Inmueble, sin el previo consentimiento por escrito del Fiduciario, que únicamente será otorgado previa instrucción escrita del Fideicomisario en Primer Lugar, y (4) no deberán enajenar o gravar cualquier parte del Patrimonio Fideicomitido sin el consentimiento del Fiduciario, que únicamente será otorgado previa instrucción escrita del Fideicomisario en Primer Lugar. Una vez que haya sido entregada una Notificación de Incumplimiento todos los actos anteriormente descritos deberán llevarse a cabo por el Fiduciario según le instruya expresamente y por escrito el Fideicomisario en Primer Lugar.........................

(j) Que mediante la entrega de instrucciones por escrito únicamente del Fideicomisario en Primer Lugar al Fiduciario, el Fiduciario (1) libere cualquier parte del Patrimonio Fideicomitido a efecto de que el Fideicomitente esté en posibilidad de vender dicha parte a terceros, previa autorización del Fideicomisario en Primer Lugar del documento que contenga dicha venta, transmisión o liberación, autorización que deberá ser entregada dentro de los 3 (tres) Días Hábiles siguientes a la fecha en que el Fideicomisario en Primer Lugar reciba el documento, siempre y cuando se haya presentado toda la documentación necesaria para dicha venta, transmisión o liberación, o (2) constituya un Fideicomiso de Unidad Residencial aportando al patrimonio del mismo alguna Unidad que forme parte del Patrimonio Fideicomitido. .............................

(k).Que el Fiduciario otorgue a las personas que le indiquen conjuntamente por escrito el Fideicomitente y el Fideicomisario en Primer Lugar, un poder especial para la venta de cualquier parte del Patrimonio Fideicomitido en los términos que el Fideicomitente y el Fideicomisario en Primer Lugar señalen. ...............................

(l) Que el Fideicomitente en representación del Fiduciario ejerza todos los derechos y permisos que formen parte del Patrimonio Fideicomitido, siempre y cuando el Fideicomisario en Primer Lugar no haya entregado una Notificación de Incumplimiento, y actuando en todo momento de conformidad con los términos de este Fideicomiso y según le autorice el Fideicomisario en Primer Lugar. Una vez que haya sido entregada una Notificación de Incumplimiento, el Fiduciario revocará los poderes otorgados al Fideicomitente de conformidad con las instrucciones del Fideicomisario en Primer Lugar y ejercerá dichos derechos y permisos que formen parte del Patrimonio Fideicomitido según le instruya el Fideicomisario en Primer Lugar sin que sea necesario el consentimiento del Fideicomitente. ...............................

(l) Que el Fiduciario, previa aprobación del Fideicomisario en Primer Lugar, otorgue los poderes que se requieran a la persona o personas que designe el Fideicomitente por escrito para ejercer dichos poderes, en todo lo que se refiere a la tramitación de todos los permisos, licencias y autorizaciones necesarias y/o requeridas para el desarrollo del Proyecto. Una vez que haya sido entregada una Notificación de Incumplimiento, el Fiduciario revocará dichos poderes según le instruya el Fideicomisario en Primer Lugar sin que sea necesario el consentimiento del Fideicomitente. ...............................

(m) Que el Fiduciario lleve a cabo todos los actos que se le encomiendan bajo el presente Fideicomiso (incluyendo, sin limitación, la celebración de cualquier

CONFIDENTIAL

DANSKE_0014071

instrument, el cumplimiento de cualquier acto jurídico, el otorgamiento de comisiones mercantiles y la cancelación y extinción del presente Fideicomiso), de conformidad con lo dispuesto en este Fideicomiso, la ley aplicable y las instrucciones del Fideicomitente y/o el Fideicomisario en Primer Lugar, según sea el caso...............................................

Cláusula 5.Patrimonio Fideicomitido. ......................................................................

El Patrimonio Fideicomitido (el "Patrimonio Fideicomitido") estará integrado por todos y cada uno de los siguientes bienes y derechos: ...................................................

(a) El Inmueble y sus Mejoras, Activos, Cuentas por Cobrar y Derechos Contractuales.

(b) Cualesquiera mejoras o productos, ya sea que se encuentren pendientes o que se hayan obtenido y que resulten de cualquier bien del Patrimonio Fideicomitido.................

(c) Todos los derechos y activos que resulten de la transformación de cualquier bien del Patrimonio Fideicomitido...................................................................................

(d)Todos los productos y recursos que resulten de la venta, arrendamiento o transmission de cualquier bien del Patrimonio Fideicomitido. ....................................................



(e) Todos los derechos, pagos y bienes que el Fideicomitente reciba o tenga derecho a recibir a la fecha del presente o posteriormente como contraprestación por la transmisión a terceros de la titularidad y propiedad sobre cualquier bien del Patrimonio Fideicomitido o como indemnización por cualesquiera daños, destrucción o pérdidas en relación a dicho Patrimonio Fideicomitido o en relación a cualquier Cuenta por Cobrar.....

(f)Todo el efectivo y todos los activos, productos y/o ingresos derivados de o relacionados con el Patrimonio Fideicomitido, incluyendo sin limitación, todos y cualesquiera montos depositados en cualesquiera cuentas bancarias...............................................

(g) Las cantidades en efectivo que resulten de la ejecución del Patrimonio Fideicomitido, según corresponda. ......................................................................................

(h) El derecho de recibir cualquier cantidad que sea recibida como indemnización por la expropiación del Patrimonio Fideicomitido. .............................................................

(i) Cualquier derecho, interés o utilidad derivada de la inversión de las cantidades que constituyen el Patrimonio Fideicomitido. ...................................................................

(j) Cualquier otro activo o derecho adquirido por el Fiduciario actuando de conformidad con el presente Fideicomiso. .............................................................................

(k) Los frutos y productos del Patrimonio Fideicomitido. ..........................................

(l) Cualquier otro derecho a favor del Fiduciario como propietario del Patrimonio Fideicomitido...............................................................................................

(m) Todos los derechos, productos, pagos y activos que el Fideicomitente reciba o tenga derecho a recibir en esta fecha o posteriormente como consecuencia del uso del Patrimonio Fideicomitido en el curso ordinario de sus negocios de conformidad con los términos y condiciones aquí establecidos o como consecuencia del ejercicio por el Fideicomitente de cualesquiera Cuentas por Cobrar en el curso ordinario de sus negocios (o cualquier cesión de las mismas).........................................................

CONFIDENTIAL

DANSKE_0014072

IGNACIO RAMIREZ
TELS. 122-91-20
122-97-17
125-24-40
FAX 1252868

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

33

**COTEJADO**

El Patrimonio Fideicomitido no incluirá todas y cada una de las obligaciones derivadas de los convenios y contratos que forman parte del Patrimonio Fideicomitido. ...........................

Cláusula 6. Indivisibilidad del Patrimonio Fideicomitido. .............................................

Sin perjuicio de las disposiciones relativas al procedimiento de ejecución aquí contenidas, siempre y cuando el presente Fideicomiso se encuentre en plena vigencia, el Patrimonio Fideicomitido no podrá dividirse en tanto que la garantía que se constituye sobre el Patrimonio Fideicomitido abarca el Patrimonio Fideicomitido como un todo, independientemente de que el Patrimonio Fideicomitido sea individualizado, separado o sea divisible. Por lo tanto, el Fideicomitente renuncia expresa e irrevocablemente a cualquier derecho que pudiera tener para requerir la reducción o división del Patrimonio Fideicomitido como consecuencia de cualesquiera pagos parciales efectuados en relación con las Obligaciones Garantizadas. El Patrimonio Fideicomitido únicamente podrá reducirse o dividirse mediante instrucción por escrito entregada al Fiduciario firmada por el Fideicomitente y el Fideicomisario en Primer Lugar en relación con los asuntos establecidos en este Fideicomiso y el Contrato de Crédito Modificado y Re-expresado. ...........................

Para efectos de lo dispuesto en la LGTOC, las partes acuerdan que la propiedad del Patrimonio Fideicomitido no se revertirá al Fideicomitente en caso de que su valor se incremente durante la vigencia del presente Fideicomiso. ...................................

Cláusula 7. Posesión y Uso del Patrimonio Fideicomitido. ...............................................

(a) Siempre y cuando no haya ocurrido un Caso de Incumplimiento, el Fiduciario otorga la posesión del Inmueble al Fideicomitente, en los términos y para los efectos del presente y de los artículos aplicables de la LGTOC. A partir de que ocurra y durante la existencia de un Caso de Incumplimiento (y la expiración de cualquier periodo de cura), dicha posesión será revocada. El Fideicomitente conviene que sus derechos previstos en la LGTOC respecto del Patrimonio Fideicomitido que ha transmitido al Fiduciario, se limitarán a lo siguiente: (1) a la utilización del Patrimonio Fideicomitido para beneficio propio en el curso normal de sus negocios; y (2) a vender u otorgar el uso apropiado de las Unidades a precios de mercado. Salvo por los actos que lleve a cabo el Fideicomitente en el curso ordinario de sus negocios, previa aprobación del Fideicomisario en Primer Lugar, el Patrimonio Fideicomitido no podrá combinarse, unirse ni de cualquier otro modo mezclarse con otros bienes, salvo instrucción por escrito entregada al Fiduciario firmada por el Fideicomitente y el Fideicomisario en Primer Lugar. ...................................

Los derechos otorgados al Fideicomitente en los términos del párrafo (a) anterior, serán automáticamente revocados y dejarán de surtir efectos el día en que el Fideicomisario en Primer Lugar entregue al Fiduciario y al Fideicomitente una Notificación de Incumplimiento. ...................................

(b) El Fideicomitente, en su carácter de depositario del Patrimonio Fideicomitido, cuya posesión le es otorgada en términos del inciso (a) anterior: ...................................

CONFIDENTIAL

DANSKE_0014073

(1) deberá mantener el Patrimonio Fideicomitido como depositario, guardar ejemplares originales de los documentos que evidencien el título y la propiedad del Patrimonio Fideicomitido, de los cuales copias certificadas por notario público han sido entregadas o deberán entregarse al Fiduciario en los términos del presente Fideicomiso...................

(2) se abstendrá de usar el Patrimonio Fideicomitido para cualquier propósito que no haya sido expresamente autorizado por este Fideicomiso o el Contrato de Crédito Modificado y Re-expresado; ......................................................................................................

(3) será responsable, de conformidad con la ley aplicable, de todos y cada uno de los daños y perjuicios causados a cualquier tercero (incluyendo el Fideicomisario en Primer Lugar y el Fiduciario) debido a la posesión y uso del Patrimonio Fideicomitido; ...............

(4) deberá pagar a su costa todos los gastos necesarios para reparar, administrar y mantener el Patrimonio Fideicomitido en buenas condiciones, sujeto al uso y desgaste normales; ....................................................................................................................

(5) conforme a la LGTOC, el Fideicomitente asume el riesgo de pérdida, daño o detrimento de la totalidad del Patrimonio Fideicomitido; ................................................................

(6) dentro de los 5 (cinco) Días Hábiles siguientes a la fecha en que el Fideicomitente tenga conocimiento de cualquier daño al Patrimonio Fideicomitido, el Fideicomitente deberá entregar al Fiduciario y al Fideicomisario en Primer Lugar un aviso (un "Aviso sobre Daños a Bienes") conforme al formato que se adjunta como Anexo B, proporcionando información sobre cualquier evento cuya consecuencia sea el daño o menoscabo del Patrimonio Fideicomitido o si el Patrimonio Fideicomitido está en riesgo de sufrir algún daño, y deberá tomar todas las acciones necesarias para prevenir el detrimento del Patrimonio Fideicomitido. El Fiduciario no tendrá obligación alguna de obtener, y no estará obligado a exigir la entrega de los avisos u otra información a que se refiere el presente párrafo; ................................................................................

(7) Siempre y cuando una Notificación de Incumplimiento no haya sido entregada al Fiduciario, el Fideicomitente bajo su responsabilidad y discreción permitirá que terceros tengan acceso al Patrimonio Fideicomitido, llevará a cabo todos los actos para el desarrollo del Proyecto; y...............................................................................................

(8) sujeto a las disposiciones correspondientes del Contrato de Crédito Modificado y Re-expresado, contratará a su costa las pólizas de seguro que cubran el Patrimonio Fideicomitido en contra de todo tipo de riesgos y todas aquellas coberturas y pólizas de seguro requeridas bajo el Contrato de Crédito Modificado y Re-expresado, y deberá entregar además al Fiduciario los originales de dichas pólizas, debidamente endosadas a favor del Fiduciario, en las que se designe al Fideicomisario en Primer Lugar como beneficiario preferente o asegurado adicional, según sea el caso, reconociendo la cesión al Fiduciario de todos los derechos, intereses y beneficios del Fideicomitente ante las compañías aseguradoras bajo dichas pólizas. En cada fecha de vencimiento de una póliza de seguro, el Fideicomitente deberá entregar al Fiduciario los originales que evidencien el pago de las primas correspondientes. El Fiduciario no tendrá obligación

CONFIDENTIAL

DANSKE_0014074



IGNACIO RAMIREZ 18  
TELS. 122-91-20  
122-97-17  
125-24-40  
FAX 1252688

LIC. HECTOR CASTRO CASTRO  
TITULAR  
LIC. JOSE ALBERTO CASTRO SALAZAR  
ADSCRITO  
NOTARIA PÚBLICA NUM.7

35



**COTEJADO**

alguna de obtener, y no estará obligado a exigir la entrega de los avisos u otra información a que se refiere el presente párrafo.............................................................

(c) Sujeto a requerimientos razonables de seguridad, a las disposiciones del Contrato de Crédito Modificado y Re-expresado y a la ley aplicable, el Fideicomitente permitirá que los empleados, representantes o agentes del Fideicomisario en Primer Lugar inspeccionen el Patrimonio Fideicomitido durante periodos razonables y horas hábiles, previo aviso por escrito entregado por lo menos 5 (cinco) Días Hábiles antes del día correspondiente a la inspección, en el entendido que, dicha inspección no deberá interferir de manera innecesaria con el personal y las operaciones del Fideicomitente, así como con el desarrollo del Proyecto. .......................................................................

(d) El Fideicomitente en este acto se obliga a responder por cualquier defecto en la titularidad del Patrimonio Fideicomitido (incluyendo sin limitación, el saneamiento para el caso de evicción) en los términos de ley. En caso que le sea pagado al Fideicomisario en Primer Lugar alguna cantidad por reclamaciones relacionadas con cualquier defecto en la titularidad del Patrimonio Fideicomitido, dicha cantidad será computada para efectos de calcular la responsabilidad del Fideicomitente en los términos del presente párrafo. Dicha responsabilidad es asumida por el Fideicomitente ante el Fiduciario, facultando al Fiduciario para obligar al Fideicomitente en tales términos de conformidad con las instrucciones por escrito que reciba del Fideicomisario en Primer Lugar, ante la persona o las personas que el Fiduciario pueda llegar a transferir la propiedad y titularidad de cualquier parte del Patrimonio Fideicomitido. Sin perjuicio de lo anterior, cualquier obligación del Fiduciario ante terceros (siempre y cuando dicha obligación no contemple acciones legales en contra del Fiduciario) que se derive de defectos en la titularidad y propiedad del Patrimonio Fideicomitido (incluyendo sin limitación, el saneamiento para el caso de evicción) deberá ser cumplida exclusivamente por el Fideicomitente dentro de los 7 (siete) Días Hábiles siguientes al requerimiento por escrito que haga el Fiduciario o el Fideicomisario en Primer Lugar al Fideicomitente, y a falta del pago correspondiente, el Fiduciario, previa instrucción escrita del Fideicomisario en Primer Lugar, podrá cubrir dichas obligaciones con cargo al Patrimonio Fideicomitido, hasta donde el mismo alcance. Al ser enajenados cualesquiera de los bienes del Patrimonio Fideicomitido, el Fiduciario informará al adquirente o adquirentes correspondientes que todas las obligaciones que por concepto de defectos en la propiedad o en la titularidad del patrimonio adquirido que pudieran llegar a suscitarse serán cumplidas por el Fideicomitente en los términos del artículo 2123 y demás relativos del Código Civil Federal. ...............................................................................

Cláusula 8. Valuación del Patrimonio Fideicomitido. ..........................................................

Las partes en este acto convienen que el Fideicomisario en Primer Lugar podrá, previo aviso por escrito que deberá entregar al Fiduciario y al Fideicomitente, solicitar que se realice un avalúo del Patrimonio Fideicomitido (el "Avalúo") de conformidad con las

CONFIDENTIAL

DANSKE_0014075

disposiciones relevantes del Contrato de Crédito Modificado y Re-expresado o ocurra y continúe en existencia un Caso de Incumplimiento. ........................................

Cláusula 9.Obligaciones de Hacer. (a) Mientras este Fideicomiso permanezca en vigor, el l Fideicomitente se obliga a: ........................................

1 llevar a cabo a su costa las acciones necesarias para mantener vigente la garantía constituida conforme al presente, surtiendo plenamente sus efectos y permitiendo al Fiduciario llevar a cabo todas y cada una de las acciones establecidas en el presente Fideicomiso;........................................

2 transmitir al Fiduciario la propiedad de cualquier parte del Patrimonio Fideicomitido que adquiera, de conformidad con este Fideicomiso; y........................................

3.cumplir con los términos y condiciones que se establecen en el presente, en el Contrato de Crédito Modificado y Re-expresado y en los Documentos Modificados del Crédito. ...

(b) El Fiduciario se obliga a mantener la propiedad del Patrimonio Fideicomitido de conformidad con las disposiciones del presente Fideicomiso y la ley aplicable. Salvo por las excepciones previstas en forma expresa en el presente, el Fiduciario actuará exclusivamente conforme a las instrucciones escritas del Fideicomisario en Primer Lugar y hará caso omiso de cualesquiera instrucciones recibidas del Fideicomitente. Todas las instrucciones dirigidas al Fiduciario se harán por escrito y serán entregadas de conformidad con lo señalado en la Cláusula 20. ........................................

Cláusula 10. Procedimiento de Ejecución -- Cláusula Especial. ........................................

Las partes en este acto convienen en obligarse bajo un procedimiento especial de ejecución del presente Fideicomiso, en los términos de la sección especial, contenida en esta Cláusula 10(c). Las partes acuerdan que al ocurrir un Caso de Incumplimiento, el Fideicomisario en Primer Lugar podrá instruir al Fiduciario para que proceda a la ejecución y venta del Patrimonio Fideicomitido, de acuerdo con el siguiente procedimiento: ... ........................................

(1) A partir de que acontezca un Caso de Incumplimiento y concluya cualquier periodo de cura, el Fideicomisario en Primer Lugar podrá instruir al Fiduciario a realizar la venta de la totalidad o una parte del Patrimonio Fideicomitido con el objeto de pagar las Obligaciones Garantizadas. En caso de que el Fiduciario reciba una instrucción de ejecución (en adelante, una "Instrucción de Ejecución") del Fideicomisario en Primer Lugar, procederá conforme a lo dispuesto a continuación. La Instrucción de Ejecución deberá estar firmada por el Fideicomisario en Primer Lugar y acompañada por una copia del Fideicomiso certificada por notario público, deberá especificar el monto vencido y no pagado de las Obligaciones Garantizadas, e incluirá una copia de la notificación a través de la cual el acreditante bajo el Contrato de Crédito Modificado y Re-expresado haya requerido el pago de las Obligaciones Garantizadas correspondientes, o la especificación de que el Fideicomitente no ha cumplido con sus obligaciones bajo el Contrato de Crédito Modificado y Re-expresado o el Fideicomiso o cualesquiera de los Documentos Modificados del Crédito, según corresponda. Para

CONFIDENTIAL

DANSKE_0014076



IGNACIO RAMIREZ  1830
TELS. 122-9
122-97
126-24-
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

37

**COTEJADO**

efectos de este Fideicomiso, se entiende que una Instrucción de Ejecución entra en vigor el Día Hábil siguiente a aquél en que el Fiduciario haya recibido la Instrucción de Ejecución en cuestión conforme a la presente cláusula...............................................

(2) Tan pronto como sea posible pero en ningún caso después de los 5 (cinco) Días Hábiles siguientes a la fecha en que haya recibido la Instrucción de Ejecución del Fideicomisario en Primer Lugar, el Fiduciario notificará por escrito y de conformidad con lo establecido en la Cláusula 20 al Fideicomitente de la recepción de dicha Instrucción de Ejecución, con copia para el Fideicomisario en Primer Lugar..................................

(3) El Fideicomitente tendrá un plazo de 20 (veinte) Días Hábiles a partir de la fecha en la que reciba la copia de la Instrucción de Ejecución del Fiduciario para oponerse a la venta del Patrimonio Fideicomitido. El Fideicomitente únicamente podrá oponerse a la venta si exhibe al Fiduciario un comprobante de (i) pago que acredite el cumplimiento de las Obligaciones Garantizadas respecto de las cuales el Fideicomisario en Primer Lugar haya notificado la existencia de un Caso de Incumplimiento, (ii) la existencia de un periodo de cura que no haya transcurrido, otorgado por el Fideicomisario en Primer Lugar bajo el Contrato de Crédito Modificado y Re-expresado para el cumplimiento de las Obligaciones Garantizadas, o (iii) novación de las obligaciones bajo el Contrato de Crédito Modificado y Re-expresado, en el entendido que dicho comprobante deberá estar debidamente autorizado por escrito y firmado por el Fideicomisario en Primer Lugar, quedando en libertad el Fiduciario para consultar con el Fideicomisario en Primer Lugar respecto de la veracidad de cualquier documento presentado por el Fideicomitente como comprobante bajo el presente párrafo. ...........................................

(4) En caso de que el Fideicomitente no acredite o demuestre a satisfacción del Fiduciario cualquiera de los eventos descritos en el inciso (3) anterior conforme a lo previsto y dentro del plazo mencionado en dicho inciso, el Fiduciario, previa instrucción del Fideicomisario en Primer Lugar (i) deberá entregar inmediatamente al Fideicomisario en Primer Lugar a la cuenta que éste le indique, cualquier cantidad en efectivo que forme parte del Patrimonio Fideicomitido que se encuentre depositada en las Cuentas del Fideicomiso, para su aplicación al pago de las Obligaciones Garantizadas, conforme a las disposiciones del Contrato de Crédito Modificado y Re-expresado y este Fideicomiso; y (ii) deberá inmediatamente proceder, por medio de un Asesor (según dicho término se define más adelante) a la venta del Patrimonio Fideicomitido de conformidad con esta Cláusula 10, siempre y cuando el Fideicomisario en Primer Lugar le proporcione al Fiduciario fondos suficientes para cubrir cualquier costo o gasto que se incurra por virtud de este procedimiento de ejecución, incluyéndose gastos de terceros encargados de la ejecución, derechos y cualesquiera otras obligaciones resultantes de dicho procedimiento. El Fideicomisario en Primer Lugar podrá solicitar la elaboración de un Avalúo del Patrimonio Fideicomitido en los términos de la Cláusula 8 para determinar el valor de los activos para efectos de la subasta...............................................

CONFIDENTIAL

DANSKE_0014077

(5) La venta la realizará el Fiduciario a través de un proceso de subasta con la intervención de una tercera persona designada para tales efectos por el Fideicomisario en Primer Lugar, la cual se llevará a cabo en México, Distrito Federal o en San José del Cabo, Baja California Sur, según lo determine por escrito el Fideicomisario en Primer Lugar. El Fiduciario anunciará la subasta (en lo sucesivo denominada la "Convocatoria") en alguno de los periódicos de mayor circulación del lugar en donde se ubique o se haya ofrecido en venta el Patrimonio Fideicomitido así como en un periódico de mayor circulación de México, Distrito Federal. Por instrucción del Fideicomisario en Primer Lugar, el Fiduciario deberá también llevar a cabo un estudio o investigación de compradores potenciales, e invitará a compradores potenciales para que participen en la subasta. Para efectos de esta cláusula, el Fiduciario contratará y pagará a terceros que designe por escrito el Fideicomisario en Primer Lugar ("Asesores") cuyos honorarios y gastos razonables serán cubiertos por el Fideicomitente o con cargo al Patrimonio Fideicomitido. En la medida que el Fideicomisario en Primer Lugar lo considere necesario, un Asesor estará a cargo de preparar y distribuir a costa del Fideicomitente y tan pronto le sea posible, un memorándum de información confidencial (el "Memorándum de Información") a ser entregado a compradores potenciales que hayan demostrado un interés en adquirir el Patrimonio Fideicomitido. El Memorándum de Información proporcionará información a los compradores potenciales sobre el monto (a ser determinado por los Asesores) que deberán presentar al Fiduciario mediante certificado de depósito emitido por una institución de crédito para garantizar la seriedad de su oferta, en caso de que optara por participar en la subasta. El Fiduciario deberá sustituir a los Asesores cuando así se lo notifique por escrito el Fideicomisario en Primer Lugar. El Fiduciario deberá notificar al Fideicomisario en Primer Lugar sobre cualquier acto o hecho del cual tenga conocimiento que pudiere afectar el proceso de ejecución para que el Fiduciario esté en posición de actuar conforme a las instrucciones que reciba del propio Fideicomisario en Primer Lugar. .................................................

(6) Una vez que el Memorándum de Información haya sido distribuido a los postores potenciales, o después de que los Asesores y/o el Fiduciario hayan distribuido cualquier información adicional a los postores potenciales, el Fiduciario deberá informar a dichos postores y al Fideicomitente sobre la fecha, lugar y hora designada para llevar a cabo la subasta, así como el precio base que determinen los Asesores a solicitud del Fideicomisario en Primer Lugar (el "Precio Base"). Dicha información deberá aparecer en la Convocatoria, cuya fecha no deberá exceder de 30 (treinta) días naturales contados a partir de la fecha en la que, de ser el caso, los Asesores hayan notificado al Fiduciario que la distribución del Memorándum de Información ha concluido. ....................

(7) Los postores participantes deberán entregar al Fiduciario sus posturas por escrito en un sobre cerrado y sellado dentro de la fecha y hora establecidas en la Convocatoria, junto con un certificado de depósito por el monto señalado en el Memorándum de Información para garantizar la seriedad de su oferta. .................................................



CONFIDENTIAL

DANSKE_0014078



**COTEJADO**

(8) El día y hora de la subasta el Fiduciario abrirá los sobres en presencia de un notario público aceptable para el Fideicomisario en Primer Lugar y los postores o sus representantes que deseen asistir, y señalará como ganador a quien presente la oferta más alta (que deberá ser igual o mayor al Precio Base aplicable, si lo hubiere) y las mejores condiciones económicas de pago a juicio de los Asesores, o en caso de que no hayan sido contratado Asesores, a juicio del Fideicomisario en Primer Lugar (en cuyo caso las condiciones económicas serán determinadas bajo criterios económicos, procurando obtener el beneficio financiero máximo derivado de la venta o subasta del Patrimonio Fideicomitido). A partir de la fecha en que los sobres hayan sido abiertos, el Fiduciario deberá proceder diligentemente a la enajenación del Patrimonio Fideicomitido al postor ganador. ........................................................................................................

(9) El postor ganador deberá pagar el precio ofertado de acuerdo con las condiciones y dentro del plazo establecido en su oferta. ..................................................................

(10) En caso de que el postor ganador no realice el pago correspondiente dentro del plazo convenido, el depósito será retenido por el Fiduciario en favor del Fideicomisario en Primer Lugar, quien lo aplicará según lo dispuesto en el presente Fideicomiso al pago de las Obligaciones Garantizadas de conformidad con los términos aquí convenidos. ......................................................................................................................

(11) Una vez que haya transcurrido el plazo a que se hace referencia en el Inciso (9) anterior sin que el precio de compra haya sido pagado por el postor ganador, el Fiduciario, según le instruya el Fideicomisario en Primer Lugar, notificará al postor que haya hecho la segunda mejor oferta (dentro de los 3 (tres) Días Hábiles siguientes); si dicho postor mantiene su postura inicial, se le otorgará un nuevo plazo para el pago del precio de compra; si dicho postor no mantiene su postura inicial, el Fiduciario y los Asesores, según les instruya el Fideicomisario en Primer Lugar, podrán continuar con los postores que hayan hecho las mejores ofertas en orden descendente, siguiendo el procedimiento anterior.................................................................................................

(12) Si no fuere posible realizar la venta a ninguno de los postores, se llevará a cabo una nueva subasta siguiendo el procedimiento antes señalado, y el Patrimonio Fideicomitido deberá de ser vendido al mejor postor, en el entendido de que en dicha subasta no habrá un precio base o precio de salida. ...................................................................................

(13) El Fiduciario deberá, según le instruya el Fideicomisario en Primer Lugar, aceptar ofertas por sólo una parte del Patrimonio Fideicomitido y, en dicho caso, el Fideicomisario en Primer Lugar deberá instruir al Fiduciario que lleve a cabo subastas nuevas para vender el remanente siguiendo el procedimiento antes señalado. ...............

(14) Las partes en este acto expresa e irrevocablemente reconocen que el proceso de ejecución de la garantía constituida bajo el presente Fideicomiso podrá realizarse, a elección del Fideicomisario en Primer Lugar, por la vía judicial o extrajudicial y, que en caso de que el Fideicomisario en Primer Lugar opte por la vía extrajudicial, el

CONFIDENTIAL

DANSKE_0014079

procedimiento de ejecución se llevará a cabo conforme a lo convenido en la presente Cláusula 10. ...............

El Fideicomitente en este acto reconoce y suscribe el texto de esta Cláusula 10 (sección especial) firmando a continuación y al final del presente Fideicomiso, y en este acto confirma su consentimiento expreso e instrucción irrevocable al Fiduciario para llevar a cabo el procedimiento de venta extrajudicial del Patrimonio Fideicomitido según lo establecido en esta Cláusula 10. ...............

El Fideicomitente: ...............

FIRMADO ...............

**Por; KENNETH ABOUD JOWDY** ...............

Cargo: Gerente General. ...............

Cláusula 11. Aplicación de los Recursos por Ejecución. ...............

(a)El Fiduciario aplicará los recursos que resulten de la venta del Patrimonio Fideicomitido conforme a las instrucciones del Fideicomisario en Primer Lugar, respetando el siguiente orden de aplicación: ...............

(1) Primero, al pago de cualesquiera cantidades adeudadas al Fiduciario conforme al presente Fideicomiso; ...............

(2) Segundo, al pago de cualesquiera gastos razonables incurridos durante el procedimiento de ejecución extrajudicial y venta del Patrimonio Fideicomitido, incluyendo sin limitación, el costo del Avalúo descrito en la Cláusula 8, los costos derivados de la contratación de terceros encargados del procedimiento de ejecución, derechos y cualesquiera otras obligaciones que resulten de la venta del Patrimonio Fideicomitido, en cada caso, cualquier otro gasto relacionado con el procedimiento de ejecución establecido en la Cláusula 10, en la medida en que el Fideicomisario en Primer Lugar haya aprobado por escrito la contratación de dicha persona; ...............

(3) Tercero, al reembolso de cualesquiera gastos y pagos razonables realizados por el Fideicomisario en Primer Lugar como resultado de o en virtud de la venta del Patrimonio Fideicomitido o que el Fideicomitente debió pagar conforme a las disposiciones del presente Fideicomiso; ...............

(4)Cuarto, al pago a favor del Fideicomisario en Primer Lugar de todas y cada una de las Obligaciones Garantizadas (conforme al orden establecido en el Contrato de Crédito Modificado y Re-expresado), pudiendo esta cantidad ser depositada en la Cuenta Concentradora, a elección del Fideicomisario en Primer Lugar; y ...............

(5) Quinto, una vez que los conceptos anteriores hayan sido pagados, el remanente deberá ser revertido al Fideicomitente en su carácter de Fideicomisario en Segundo Lugar o a quien éste designe, conforme a las instrucciones escritas entregadas por el Fideicomitente al Fiduciario para tal efecto y de conformidad con la Cláusula 12. ...............

(b) Una vez que el Fiduciario haya vendido el Patrimonio Fideicomitido, entregará el producto de dicha venta y distribuirá el Patrimonio Fideicomitido conforme a los términos

CONFIDENTIAL

DANSKE_0014080




IGNACIO RAMIREZ 1938
TELS. 122-91-2
122-97-
125-24-40.
FAX 122258

establecidas en el inciso (a) anterior al Fideicomisario en Primer Lugar o a quien éste designe. ...................................................

Cláusula 12. Reversión del Patrimonio Fideicomitido. ...................................................

(a) Una vez que todas y cada una de las Obligaciones Garantizadas hayan sido pagadas y cumplidas en su totalidad, las partes convienen en que el Fideicomisario en Primer Lugar entregará un aviso al Fiduciario (el "Aviso de Cumplimiento Total") conforme al formato como Anexo A mediante el cual el Fideicomisario en Primer Lugar le notifica al Fiduciario que el Fideicomitente ha cumplido con todas las Obligaciones Garantizadas y que no existe derecho o acción alguna que hacer valer en contra del Fideicomitente para la protección del Contrato de Crédito Modificado y Re-expresado. En caso de que el Fideicomisario en Primer Lugar no entregue el Aviso de Cumplimiento Total dentro de un plazo de 5 (cinco) Días Hábiles siguientes a la fecha en que se haya hecho el pago total, se autoriza en este acto al Fideicomitente para que entregue al Fiduciario una notificación en la que declare que todas las Obligaciones Garantizadas han sido cumplidas en su totalidad y que todas las obligaciones para realizar Préstamos han terminado; en el entendido que en todo caso dicha notificación deberá acompañarse por una confirmación por escrito del Fideicomisario en Primer Lugar. En caso de que el Fiduciario reciba del Fideicomitente dicha notificación en los términos antes señalados y acompañada por la confirmación por escrito del Fideicomisario en Primer Lugar, el Fiduciario estará autorizado para proceder en los términos descritos en esta Cláusula como si el Aviso de Cumplimiento Total hubiera sido entregado. ...................................................

(b) Dentro de los 5 (cinco) Días Hábiles siguientes a la fecha en la que el Fiduciario reciba el Aviso de Cumplimiento Total, (i) el Patrimonio Fideicomitido será revertido al Fideicomitente o a quien éste designe y el Fideicomiso se dará por terminado; o (ii) el Fideicomitente celebrará con el Fiduciario y el Fideicomisario en Primer Lugar un convenio modificatorio al Fideicomiso por virtud del cual el Fideicomisario en Primer Lugar dejará de ser parte del mismo a satisfacción de éste último. En caso de la reversión del Patrimonio Fideicomitido, el Fiduciario acuerda celebrar y firmar cualesquiera convenios, documentos e instrumentos y llevar a cabo cualesquiera actos que el Fideicomitente le solicite razonablemente por escrito (con cargo al Fideicomitente) para perfeccionar legalmente dicha transmisión, incluyendo sin limitación los actos descritos en la Cláusulas 2 y 4. ...................................................

Las partes expresamente convienen y reconocen que cualesquiera impuestos, cargas y gastos que se generen en virtud de los actos descritos en el párrafo anterior serán en todo momento a cargo del Fideicomitente. ...................................................

Cláusula 13. Obligaciones y Límite de Responsabilidad del Fiduciario; Defensa del Patrimonio Fideicomitido. ...................................................

(a) El Fiduciario conviene en administrar el Patrimonio Fideicomitido, cumplir con sus obligaciones y ejercer sus derechos conforme a lo dispuesto en el presente Fideicomiso



41

CONFIDENTIAL

DANSKE_0014081

y conforme a la legislación mexicana. Las obligaciones del Fiduciario bajo el presente Fideicomiso se limitan a aquéllas expresamente establecidas en el presente y se llevarán a cabo por el Fiduciario en los términos aquí establecidos y de conformidad con las instrucciones del Fideicomisario en Primer Lugar o del Fideicomitente, según corresponda.................................................................................................................

(b) Las partes del presente acuerdan que ni el Fiduciario ni el Fideicomisario en Primer Lugar serán responsables de ningún acto u omisión de las demás partes o de cualquier tercero, incluyendo cualquier Asesor, que pudiera resultar en una imposibilidad de cumplir con los fines del presente Fideicomiso. ..........................................................

(c) Si el Patrimonio Fideicomitido fuere insuficiente para pagar la totalidad de las Obligaciones Garantizadas, el Fiduciario no tendrá responsabilidad alguna de hacer aportaciones al Fideicomiso, o de cumplir con las Obligaciones Garantizadas. ...............

(d) El Fideicomitente tendrá la obligación de notificar inmediatamente y por escrito al Fideicomisario en Primer Lugar sobre cualquier suceso que, hasta donde sea de su conocimiento, afecte el Patrimonio Fideicomitido o los derechos derivados del presente Fideicomiso.................................................................................................................



(e) El Fiduciario deberá informar por escrito al Fideicomitente y al Fideicomisario en Primer Lugar sobre cualquier situación que amenace la existencia del Patrimonio Fideicomitido o sobre cualquier Caso de Incumplimiento del cual tuviera conocimiento; en el entendido que el Fiduciario no tendrá obligación de investigar la existencia de dicha amenaza o Caso de Incumplimiento.........................................................................

(f) El Fiduciario se obliga a otorgar en favor de los individuos o entidades designadas por escrito por el Fideicomitente los poderes necesarios para defender el Patrimonio Fideicomitido; en el entendido que en caso de existir un Caso de Incumplimiento (y una vez transcurrido cualquier periodo de cura), dichos poderes serán otorgados únicamente por instrucciones del Fideicomisario en Primer Lugar. En caso de que un apoderado no haya sido nombrado por el Fideicomitente de conformidad con lo anterior y la falta de defensa pudiera afectar el Patrimonio Fideicomitido, el Fiduciario otorgará poderes a los individuos según le instruya el Fideicomisario en Primer Lugar, quien deberá proporcionar las instrucciones correspondientes para la defensa del Patrimonio Fideicomitido hasta que el Fideicomitente sea quien proporcione dichas instrucciones por escrito. El Fiduciario no será responsable por los actos de dichos apoderados, ni por el pago de los costos y gastos respectivos, mismos que deberán ser cubiertos por el Fideicomitente. ......................................................................................................

(g) En caso de que el Fiduciario tenga conocimiento de alguna acción urgente necesaria para la protección y el mantenimiento del Patrimonio Fideicomitido, el Fiduciario lo deberá notificar inmediatamente al Fideicomisario en Primer Lugar y al Fideicomitente y tomar cualesquiera acciones de conformidad con las instrucciones del Fideicomisario en Primer Lugar. ...................................................................................................

(h) ..... Si el Fiduciario recibe una notificación judicial o de otra naturaleza o una demanda

CONFIDENTIAL

DANSKE_0014082

XIX. En la realización de las operaciones a que se refiere la fracción XV del artículo 46 de esta Ley: ...............................................................................................................................

a) Derogado...........................................................................................................................

b) Responder a las Fideicomitentes, mandantes o comitentes, del incumplimiento de los deudores, por los créditos que se otorguen o de los emisores, por los valores que se adquieran, salvo que sea por su culpa, según lo dispuesto en la parte final del artículo 391 de la Ley General de Títulos y Operaciones de Crédito, o garantizar la percepción de rendimientos por los fondos cuya inversión se les encomiende. ...............................

Si al término del fideicomiso, mandato o comisión constituidos para el otorgamiento de créditos, éstos no hubieren sido liquidados por los deudores, la Institución deberá transferirlos al fideicomitente o fideicomisario, según sea el caso, o al mandante o comitente, absteniéndose de cubrir su importe. ...............................................................

En los contratos de fideicomiso, mandato o comisión se insertará en forma notoria lo dispuesto en este inciso y una declaración de la fiduciaria en el sentido de que hizo saber inequívocamente su contenido a las personas de quienes haya recibido bienes o derechos para su afectación fiduciaria. .................................................................................

c) Actuar como fiduciarias, mandatarias o comisionistas en fideicomisos, mandatos o comisiones, respectivamente, a través de los cuales se capten, directa o indirectamente, recursos del público, mediante cualquier acto causante de pasivo directo o contingente, excepto tratándose de fideicomisos constituidos por el Gobierno Federal a través de la Secretaría de Hacienda y Crédito Público, y de fideicomisos a través de los cuales se emitan valores que se inscriban en el Registro Nacional de Valores de conformidad con lo previsto en la Ley del Mercado de Valores; ...........................................................

d) Desempeñar los fideicomisos, mandatos o comisiones a que se refiere el segundo párrafo del artículo 88 de la Ley de Sociedades de Inversión; .........................................

e) Actuar en fideicomisos, mandatos o comisiones a través de los cuales se evadan limitaciones o prohibiciones contenidas en las leyes financieras; ...................................

f) Utilizar fondos o valores de los fideicomisos, mandatos o comisiones destinados al otorgamiento de créditos, en que la fiduciaria tenga la facultad discrecional, en el otorgamiento de los mismos para realizar operaciones en virtud de las cuales resulten o puedan resultar deudores sus delegados fiduciarios; los miembros del consejo de administración o consejo directivo, según corresponda, tanto propietarios como suplentes, estén o no en funciones; los empleados y funcionarios de la institución; los comisarios propietarios o suplentes, estén o no en funciones; los auditores externos de la Institución; los miembros del comité técnico del fideicomiso respectivo; los ascendientes o descendientes en primer grado o cónyuges de las personas citadas, las sociedades en cuyas asambleas tengan mayoría dichas personas o las mismas instituciones, asimismo aquellas personas que el Banco de México determine mediante disposiciones de carácter general, y ...............................................................................



CONFIDENTIAL

DANSKE_0014084

IGNACIO RAMIREZ 1030
TELS. 122-91-20
122-87-17
125-24-40
FAX 1252568

LIC. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7
LA PAZ, B.C.S.

45





**COTEJADO**

g) Administrar fincas rústicas, a menos que hayan recibido la administración para distribuir el patrimonio entre herederos, legatarios, asociados o acreedores, o para pagar una obligación o para garantizar su cumplimiento con el valor de la misma finca o de sus productos, y sin que en estos casos la administración exceda del plazo de dos años, salvo los casos de fideicomisos a la producción o fideicomisos de garantía. ..........
Cualquier pacto contrario a lo dispuesto en los incisos anteriores, será nulo."

Asimismo, de conformidad con lo establecido en la Regla 5.5 de la Circular 1/2005, las disposiciones aplicables de la Regla 6 de dicha Circular 1/2005 se transcriben a continuación, para los efectos legales a que haya lugar: ..............................................

"6. PROHIBICIONES. ...................................................................................................

6.1. En la celebración de Fideicomisos, las Instituciones Fiduciarias tendrán prohibido lo siguiente: .....................................................................................................................

a) Cargar al patrimonio fideicomitido precios distintos a los pactados al concertar la operación de que se trate; .....................................................................................

b) Garantizar la percepción de rendimientos o precios por los fondos cuya inversión se les encomiende, y ......................................................................................................

c) Realizar operaciones en condiciones y términos contrarios a sus políticas internas y a las sanas prácticas financieras. ..............................................................................

6.2. Las Instituciones Fiduciarias no podrán celebrar operaciones con valores, títulos de crédito o cualquier otro instrumento financiero, que no cumplan con las especificaciones que se hayan pactado en el Contrato de Fideicomiso correspondiente. .............................

6.3. Las Instituciones Fiduciarias no podrán llevar a cabo los tipos de Fideicomiso que no estén autorizadas a celebrar de conformidad con las leyes y disposiciones que las regulan. .......................................................................................................................

6.4. En ningún caso las Instituciones Fiduciarias podrán cubrir con cargo al patrimonio fideicomitido el pago de cualquier sanción que les sea impuesta a dichas Instituciones por alguna autoridad. ...........................................................................................

6.5. Las Instituciones Fiduciarias deberán observar lo dispuesto en los artículos 106 fracción XIX de la Ley de Instituciones de Crédito, 103 fracción IX de la Ley del Mercado de Valores, 62 fracción VI de la Ley General de Instituciones y Sociedades Mutualistas de Seguros, 60 fracción VI Bis de la Ley Federal de Instituciones de Fianzas y 16 de la Ley Orgánica de la Financiera Rural, según corresponda a cada Institución." ..................

Cláusula 15. Sustitución del Fiduciario. ......................................................................

(a) Sujeto a lo señalado en los incisos (d) y (e) siguientes, el Fiduciario podrá dar por terminada su participación como fiduciario conforme al presente mediante aviso por escrito al Fideicomitente y al Fideicomisario en Primer Lugar con por lo menos 30 (treinta) días naturales de anticipación. Sujeto a lo señalado en el inciso (d) siguiente, el nombramiento del Fiduciario también podrá darse por terminado mediante aviso por escrito del Fideicomisario en Primer Lugar con por lo menos 30 (treinta) días naturales de anticipación a la fecha en que deba tener lugar dicha terminación. ................................

CONFIDENTIAL

DANSKE_0014085

(b) Si el Fiduciario dejare de actuar como fiduciario conforme al presente debido a una terminación anticipada de conformidad con el inciso (a) anterior, el Fiduciario deberá preparar estados financieros, balances y estados de cuenta relacionados con el Patrimonio Fideicomitido por el periodo comprendido desde el último estado de cuenta entregado a las partes, hasta la fecha en que el Fiduciario deje de actuar como tal, mismos que deberán entregarse al Fideicomisario en Primer Lugar y al Fideicomitente dentro de los 30 (treinta) días naturales siguientes a dicha terminación. El Fideicomitente y el Fideicomisario en Primer Lugar tendrán 15 (quince) Días Hábiles contados a partir de la recepción para examinar y objetar dichos estados financieros, balances y estados de cuenta, en el entendido que si al término de dicho plazo no existiera objeción alguna, los estados financieros, balances y estados de cuenta se tendrán por aprobados por el Fideicomitente y el Fideicomisario en Primer Lugar y quedará liberado el Fiduciario de cualquier responsabilidad por sus actos bajo el presente Fideicomiso.

(c) El Fideicomisario en Primer Lugar tendrá el derecho a remover el Fiduciario y de designar cualquier Fiduciario sucesor, siempre y cuando dicho Fiduciario sucesor cuente con al menos la misma capacidad operativa y conocimiento del negocio fiduciario en México que el Fiduciario. ...............................................................

(d) El Fiduciario continuará actuando como fiduciario bajo el presente hasta que un fiduciario sustituto haya sido designado y dicha designación haya sido aceptada, en el entendido que el Fideicomisario en Primer Lugar deberá realizar todos los esfuerzos razonables para designar al fiduciario sustituto oportunamente. ........................................

(e)El fiduciario sustituto tendrá los mismos derechos y obligaciones que el Fiduciario bajo el presente Fideicomiso y será el "Fiduciario" para todos los efectos bajo el mismo. ........

Cláusula 16.Honorarios del Fiduciario y Gastos...............................................................

El Fideicomitente conviene en pagar al Fiduciario o a quien lo sustituya de conformidad con los términos de la Cláusula 15 los honorarios que se señalan en el Anexo H así como los demás costos y gastos razonables y documentados en que incurra el Fiduciario en relación con el cumplimiento de sus obligaciones bajo el presente, incluyendo la ejecución de la garantía bajo el presente Fideicomiso. En caso de que el Fideicomitente incumpla con cualesquiera de sus obligaciones de pago de honorarios o gastos al Fiduciario, el Fiduciario (i) podrá solicitar que dichos honorarios y gastos sean cubiertos por el Fideicomisario en Primer Lugar, quien podrá efectuar dicho pago y tendrá en tal caso el derecho de demandar contra el Fideicomitente el monto de dicho pago más intereses según lo dispuesto en el Contrato de Crédito Modificado y Re-expresado, y/o (ii) cubrir los honorarios y/o gastos razonables en cuestión con cargo al Patrimonio Fideicomitido........................................................................................

Salvo que se establezca lo contrario en el presente Fideicomiso, todos los impuestos, gastos, honorarios razonables y comisiones derivados de la elaboración y registro de este Fideicomiso y cualquier modificación al mismo, así como por cualquier acto,



CONFIDENTIAL

DANSKE_0014086

IGNACIO RAMIREZ
TELS. 122-91-20
122-97-17
125-24-40
FAX 1252588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

47

**COTEJADO**

convenio, documento, instrumento o notificación llevado a cabo, elaborado, celebrado o notificado de conformidad con el presente Fideicomiso, incluyendo sin limitación, honorarios y gastos razonables de notario y pago de derechos en que incurran el Fideicomisario en Primer Lugar y el Fiduciario en el cumplimiento de sus derechos y obligaciones respectivos y cualquier ejecución del Patrimonio Fideicomitido de conformidad con el presente Fideicomiso, serán a cargo y cubiertos total y exclusivamente por el Fideicomitente. ......................................................

Cláusula 17. Impuestos. ......................................................

Cualesquiera y todos los impuestos (incluyendo, sin limitación, cualesquiera impuestos sobre la renta que sean aplicados mediante retención o de cualquier otra manera, impuestos por venta, impuestos al valor agregado, predial e impuesto al activo), contribuciones, derechos, aprovechamientos, o determinaciones, de cualquier naturaleza, que sean impuestos al o con relación a el Patrimonio del Fideicomiso, este Fideicomiso o en relación con el cumplimiento de los fines de este Fideicomiso por parte del Fiduciario serán pagados por el Fideicomitente, en el entendido que, el Fiduciario no será responsable por el cálculo, retención y pago de cualesquiera impuestos, contribuciones, derechos, aprovechamientos o determinaciones salvo que así lo requiera la legislación aplicable. Así mismo, el Fideicomitente y el Fideicomisario en Primer Lugar en este acto convienen que el impuesto conocido como el Impuesto Empresarial a Tasa Única, derivado de las disposiciones de la Ley del Impuesto Empresarial a Tasa Única, de ser el caso, será cubierto y enterado por el Fideicomitente, liberando en este acto al Fiduciario de cualquier responsabilidad u obligación relacionada con el impuesto previsto por dicha Ley o la ley y/o impuesto que en determinado momento los sustituya. ......................................................

Si por cualquier razón el Fiduciario fuera notificado por cualquier autoridad en materia fiscal acerca de cualquier interpretación en el sentido de que las actividades materia del presente Fideicomiso fueran consideradas gravadas y consecuentemente el Fiduciario tuviera que retener y pagar cualesquiera impuestos conforme al presente Fideicomiso o cualesquier acto relacionado con el mismo y que el Fideicomitente y/o el Fideicomisario en Primer Lugar hagan caso omiso a la notificación que debe hacer el Fiduciario de dichos acontecimientos y no nombren representantes para que defiendan el Patrimonio del Fideicomiso, la parte responsable de acuerdo a lo pactado en este Fideicomiso se obliga a indemnizar, sacar y mantener en paz y a salvo y a asistir y proveer de los fondos necesarios al Fiduciario, sus accionistas, consejeros, delegados fiduciarios, apoderados, representantes, asesores y/o empleados para hacer frente a dichas consecuencias de acuerdo con la legislación aplicable. El Fiduciario no tendrá responsabilidad alguna por sus acciones en relación con tales retenciones y pagos y si fuere multado o de cualquier forma sancionado, la parte responsable de acuerdo a lo pactado en este Fideicomiso se obliga a resarcir de manera inmediata cualquier gasto o erogación que el Fiduciario realice en este sentido. El Fiduciario tendrá en todo

CONFIDENTIAL

DANSKE_0014087

momento el derecho de hacerse representar, con cargo al Patrimonio del Fideicomiso, por sus propios abogados, consejeros y fiscalistas con relación a cualesquiera obligaciones fiscales que resultaren a su cargo. De acuerdo con lo anterior, el Fideicomitente y/o el Fideicomisario en Primer Lugar que sea responsable de la omisión fiscal se obliga a indemnizar, defender, mantener y sacar en paz y a salvo al Fiduciario, sus accionistas, consejeros, delegados fiduciarios, apoderados, representantes, asesores y/o empleados de cualesquiera responsabilidades y daños relacionados con el pago de impuestos (incluyendo honorarios y gastos de asesores fiscales y de abogados, razonables y en precios de mercado) que deriven de la celebración o cumplimiento del presente Fideicomiso...........................................................................

Lo anterior, en el entendido que ni el Fideicomitente ni el Fiduciario serán responsables del pago del impuesto sobre la renta (o equivalente) que se genere al Fideicomisario en Primer Lugar en caso que se adjudique la propiedad del Patrimonio Fideicomitido de conformidad con los términos del la Cláusula 10 del presente instrumento.........................

Cláusula 18. Informes. ...................................................................................................

(a) El Fiduciario en este acto conviene en proporcionar al Fideicomisario en Primer Lugar y al Fideicomitente un estado de cuenta mensual en relación con el Patrimonio Fideicomitido y las inversiones efectuadas en relación con el mismo. El Fiduciario preparará dichos estados de cuenta con base en los valores del Patrimonio Fideicomitido especificados de conformidad con la Cláusula 8 y los entregará al Fideicomitente y al Fideicomisario en Primer Lugar dentro de los primeros 10 (diez) Días Hábiles del mes inmediato siguiente, en el entendido que el primer y el último estado de cuenta podrá referirse a un período irregular. El Fideicomisario en Primer Lugar y el Fideicomitente tendrán un plazo de 10 (diez) Días Hábiles contados a partir de la fecha de recepción del estado de cuenta correspondiente para revisarlo y aprobarlo, en el entendido que si no hubieren proporcionado comentarios al Fiduciario dentro de dicho plazo, se entenderá que el estado de cuenta correspondiente ha sido aprobado por el Fideicomisario en Primer Lugar y el Fideicomitente. ...........................................

(b) El Fiduciario conviene en proporcionar al Fideicomisario en Primer Lugar y al Fideicomitente toda la información que razonablemente soliciten por escrito con por lo menos 3 (tres) Días Hábiles de anticipación en relación con el Fideicomiso y el Patrimonio Fideicomitido que esté específicamente relacionada con sus servicios bajo el presente. ....................................................................................................................

Cláusula 19. Duración; Irrevocabilidad. ......................................................................

Este Fideicomiso será irrevocable y permanecerá en vigor por el plazo que sea necesario para cumplir con los fines aquí establecidos, y no podrá darse por terminado sino hasta que las Obligaciones Garantizadas hayan sido cubiertas en su totalidad, lo cual será confirmado por el Fideicomisario en Primer Lugar a solicitud del Fideicomitente o del Fiduciario. .............................................................................

Cláusula 20. Notificaciones. .........................................................................................



CONFIDENTIAL

DANSKE_0014088



LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

IGNACIO RAMIREZ
TELS 122-01-43
172-91-17
129-22-22
FAX (212)568-2

49





**COTEJADO**

(a) Todas las notificaciones y demás avisos en relación con este Fideicomiso se harán, para ser considerados como válidos, por escrito, en idioma español e inglés (o acompañadas por una traducción al inglés o al español, según corresponda, en el entendido que en caso de controversia la versión en español será la que prevalecerá), y dirigida a los domicilios que se indican a continuación o a cualquier otro domicilio o número de fax que señale el destinatario de la misma mediante notificación conforme a lo estipulado en la presente Cláusula a las demás partes. Dichas notificaciones y avisos se entregarán personalmente o por transmisión facsímile dirigidas de la manera antes descrita, seguidas de ejemplar original, y surtirán sus efectos, si son entregadas por mensajero cuando se reciban, o si son enviadas por fax cuando se transmitan y una confirmación de dicha transmisión sea recibida. Las partes señalan como sus domicilios los siguientes: .........................................................................................

EL FIDUCIARIO: ...........................................................................................

Paseo de la Reforma 115, piso 23 ....................................................................

11000, Lomas de Chapultepec ........................................................................

Distrito Federal, México ...................................................................................

Teléfono: +52 55 50 63 39 00 ..........................................................................

Fax +52 55 50 63 39 39 ...................................................................................

Atención: Carlos López-Cedeño / Elizabeth Cid del Prado .................................

EL FIDEICOMITENTE: ....................................................................................

Calle Alikan S/N, ...........................................................................................

Col. Ampliación Mariano Matamoros, CP 23460 ...............................................

Cabo San Lucas, Los Cabos, ..........................................................................

Baja California Sur, México ..............................................................................

Teléfono: +52 624 105 0062 ............................................................................

Fax: +52 624 105 0061 ...................................................................................

Atención: William Najam / Fernando M García Campuzano .................................

Con copia para: .............................................................................................

Baker & Hostetler LLP .....................................................................................

45 Rockefeller Plaza .......................................................................................

New York, New York 10111 .............................................................................

Fax: (212)-589-4291 .......................................................................................

Atención: Laurence Markowitz, Esq ..................................................................

EL FIDEICOMISARIO EN PRIMER LUGAR: .....................................................

75 King William Street, ....................................................................................

Londres EC4N 7DT .........................................................................................

Inglaterra .......................................................................................................

Teléfono: +44 (0)20 7410 8312 .......................................................................

Fax: +44 (0)20 7410 8005 ...............................................................................

Atención: Jovan Atkinson .................................................................................

CONFIDENTIAL

DANSKE_0014089

Con copia para: ..................................................................................................

Venable LLP ......................................................................................................

750 E. Pratt Street ............................................................................................

Baltimore, Maryland 21202 ...........................................................................

Fax: (410) 224-7742 .......................................................................................

Attención: Mitchell Kolkin, Esq. y M. Jay Yurow, Esq ................................

Con copia para: ..................................................................................................

Jáuregui, Navarrete y Nader, S.C. ...............................................................

Paseo de los Tamarindos 400-B, Pisos 7, 8 y 9 ..........................................

Bosques de las Lomas ....................................................................................

05120 México, D.F. ..........................................................................................

Teléfono + 52 55 5276 4500 ..........................................................................

Fax: (52) (55) 5258-0601 ...............................................................................

Atención: Javier Arreola / Vanessa Franyutti ...............................................

(b) Cualquier tercero que en el futuro se adhiera a este Fideicomiso deberá proporcionar al Fiduciario su domicilio y número de fax por escrito. .................................................

(c) Las partes, conscientes de los riesgos que acarrean la emisión de instrucciones por medios electrónicos, tales como errores, falta de seguridad y confidencialidad así como la posibilidad de actos fraudulentos, convienen que el envío de todas las comunicaciones relacionadas con este Fideicomiso deberá efectuarse como se especifica en el inciso (a) anterior. En virtud de lo anterior, las partes en este acto autorizan al Fiduciario para que proceda de conformidad con las instrucciones que reciba a través de los medios aquí descritos, motivo por el cual las partes liberan al Fiduciario de cualquier responsabilidad derivada de dichas transmisiones y se comprometen a indemnizarlo en los términos de la indemnización establecida en el presente Fideicomiso. ........................................................................................................

Lo anterior en el entendido de que el Fiduciario no estará obligado a verificar la autenticidad de dichas instrucciones o comunicaciones, pero sí de verificar que las firmas que se contengan en dichos documentos tengan, a su juicio, similitud con quienes están autorizados a firmar conforme a este Fideicomiso. El Fiduciario tendrá discrecionalidad, siempre y cuando sea con motivo o sospecha razonable, para actuar o no y/o para solicitar confirmación de cualquier transmisión recibida conforme a la presente Cláusula, en el entendido que, el Fiduciario notificará a las partes inmediatamente, si éste ha decidido diferir el llevar a cabo las instrucciones, hasta que haya recibido confirmación. .........................................................................................

El Fiduciario está autorizado para actuar de acuerdo a las instrucciones transmitidas de conformidad con la presente Cláusula. En el caso específico de instrucciones sobre transferencias de fondos, cuando se den dichas instrucciones conforme a lo previsto en el inciso (a) anterior, el Fiduciario podrá confirmar dichas instrucciones telefónicamente con las personas autorizadas, que designen frente al Fiduciario en términos del Anexo I.

CONFIDENTIAL

DANSKE_0014090

IGNACIO RAMIREZ ...
TELS. 122-91-2...
122-97-17...
125-24-40...
FAX 1252868

C. HECTOR CASTRO CASTRO
TITULAR
C. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

51



**COTEJADO**

Las personas y números de teléfono para confirmaciones telefónicas podrán ser modificadas sólo por escrito firmado por el representante legal del Fideicomitente o del Fideicomisario en Primer Lugar, debidamente recibido y confirmado por el Fiduciario. Las partes acuerdan que este procedimiento es comercialmente razonable. ...................

Asimismo, se entiende que, en las transferencias de fondos, el Fiduciario y el banco del beneficiario podrán depender de los números de cuenta, o cualesquier otro número de identificación similar que se le proporcione, para identificar a (i) el beneficiario, (ii) el banco del beneficiario o (iii) cualquier banco intermediario. El Fiduciario utilizará los fondos del Fideicomiso para cumplir con cualesquier orden de pago que deba realizar de conformidad con el presente Fideicomiso utilizando dicho número identificador, aún cuando esto resulte en que se pague a una persona distinta al beneficiario, a un banco distinto al banco del beneficiario, o a un banco distinto del banco intermediario, que se haya designado. ...................

En caso de que las instrucciones no sean firmadas como se menciona con anterioridad y/o no se haya podido realizar una llamada de confirmación al respecto las partes expresa e irrevocablemente instruyen al Fiduciario a no ejecutar las instrucciones...........

Cualquier persona que sea parte de este Fideicomiso deberá entregar al Fiduciario una lista en los términos del Anexo I; en el entendido que las partes podrán designar de tiempo en tiempo nuevos firmantes en términos sustancialmente similares a las instrucciones contenidas en el Anexo I. ...................

Cláusula 21. Modificaciones. ...................

Este Fideicomiso sólo podrá ser modificado mediante instrumento firmado por el Fideicomitente, el Fiduciario y el Fideicomisario en Primer Lugar y ratificado ante notario público...................

Cláusula 22. Cesión. ...................

Ni el Fiduciario ni el Fideicomitente podrán ceder o transferir sus derechos o delegar sus obligaciones conforme a este Fideicomiso, salvo (i) que cuenten con el consentimiento previo y por escrito del Fideicomisario en Primer Lugar, y (ii) en los casos expresamente previstos en el presente. El Fideicomisario en Primer Lugar podrá ceder o transferir la totalidad o una parte de sus derechos derivados del presente Fideicomiso, bastando para ello que le notifique al Fiduciario y al Fideicomitente por escrito dicha cesión, sin más formalidades que cumplir con los requisitos y lineamientos relativos a la política "Conozca a su Cliente" del Fiduciario en esa fecha...................

Cláusula 23. Indemnización. ...................

(a) El Fideicomitente en este acto se obliga a (i) indemnizar, defender y sacar en paz y a salvo al Fiduciario, sus accionistas, consejeros, delegados fiduciarios, apoderados, funcionarios y/o empleados de cualquier responsabilidad derivada de o relacionada con la celebración y el cumplimiento del Fideicomiso, salvo en casos de dolo, negligencia o mala fe del Fiduciario determinada en sentencia definitiva dictada por autoridad competente, o el incumplimiento del Fiduciario con sus obligaciones bajo el presente, y

CONFIDENTIAL

DANSKE_0014091

(ii) defender (en cuyo caso el Fiduciario deberá otorgar a las personas señaladas por el Fideicomitente los poderes necesarios o convenientes para dichos propósitos de conformidad con la legislación aplicable y las disposiciones aquí establecidas), sacar en paz y a salvo e indemnizar al Fiduciario, sus subsidiarias, afiliadas, delegados fiduciarios, empleados, apoderados, con cargo al Patrimonio Fideicomitido y/o con sus propios fondos en los casos en que las disposiciones legales aplicables no permitan el cargo al Patrimonio Fideicomitido, así como en los casos en que el Patrimonio Fideicomitido no sea suficiente, de toda y cualquier responsabilidad, daño, obligación, demanda, sentencia, convenio, requerimiento, costo y/o gasto de cualquier tipo, incluyendo honorarios legales razonables y documentados, contra, impuestos sobre o derivados de o relacionados con la celebración de este Fideicomiso y los actos del Fiduciario para cumplir con sus obligaciones y los fines aquí establecidos, incluyendo el procedimiento de ejecución que se señala en el presente, y a defender el Patrimonio Fideicomitido, o por requerimientos, sanciones, multas y cualquier otro tipo de adeudo en relación con el Fideicomiso y el Patrimonio Fideicomitido, ante autoridades administrativas, judiciales o arbitrales o cualquier otra instancia, local, federal mexicana o extranjera, salvo en el caso de dolo, negligencia o mala fe del Fiduciario determinada en sentencia definitiva dictada por autoridad competente o cualesquiera de sus delegados fiduciarios, empleados y apoderados, o el incumplimiento del Fiduciario a sus obligaciones bajo el presente Fideicomiso. .......................................................................

(b) El Fideicomitente en este acto se obliga a pagar por adelantado cualquier gasto o erogación de cualquier tipo (incluyendo honorarios y gastos legales razonables y documentados) en que incurra el Fiduciario y sus representantes por cualquier daño o perjuicio sufrido como consecuencia de o relacionado con cualquier demanda, sentencia, procedimiento o juicio seguido en contra del Fiduciario por cualquier persona en México o en el extranjero, en relación con cualquier acto llevado a cabo para cumplir con los fines aquí establecidos o con la defensa del Patrimonio Fideicomitido salvo en caso de dolo, negligencia o mala fe del Fiduciario o sus representantes determinada en sentencia definitiva dictada por autoridad competente. Las partes de este Fideicomiso convienen que en caso de que el Fideicomitente no pague por adelantado al Fiduciario los gastos y erogaciones antes mencionados según se dispone en esta Cláusula o no reembolsa dichos gastos y erogaciones dentro de los 3 (tres) Días Hábiles siguientes a la fecha en la que el Fiduciario se lo notifica, el Fiduciario podrá cobrar cualquier cantidad adeudada al Fiduciario mediante el cargo al Patrimonio Fideicomitido. ...............

(c) El Fiduciario no estará obligado a llevar a cabo cualquier acción bajo el presente Fideicomiso que lo exponga a responsabilidad de sus funcionarios o en contra de su patrimonio, o que contravenga este Fideicomiso o la legislación aplicable. ......................

(d) El Fiduciario en ningún caso tendrá la facultad o la obligación de utilizar sus propios bienes para fines del presente Fideicomiso y para cumplir con sus obligaciones, ni de

CONFIDENTIAL

DANSKE_0014092

IGNACIO RAMÍREZ
TELS. 122-31-20
122-01-17
125-24-60
FAX 1252560

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

53





**COTEJADO**

pagar los gastos a que se refiere la presente Cláusula, sino única y exclusivamente el Patrimonio del Fideicomiso y hasta donde éste alcance..........................................

(e)Sin perjuicio de cualquier derecho que el Fiduciario tenga bajo el presente Fideicomiso y sujeto a los términos y condiciones del mismo, el Fiduciario será responsable por daños y perjuicios causados por el incumplimiento de sus obligaciones bajo el presente Fideicomiso..........................................

(f) El Fideicomitente deberá indemnizar y sacar en paz y a salvo al Fideicomisario en Primer Lugar y al Fiduciario en relación con cualquier contingencia ambiental relacionada con el Fideicomiso o cualquier otro documento relacionado con el mismo, siempre y cuando dicha contingencia no se derive del dolo, negligencia o mala fe del Fiduciario, determinada en sentencia definitiva dictada por autoridad competente...........

(g) El Fiduciario no será responsable por actos u omisiones del Fideicomitente y el Fideicomisario en Primer Lugar que impidan el cumplimiento de los fines del Fideicomiso..........................................

(h) Para la realización de los actos previstos en el presente Fideicomiso, el Fiduciario en todo momento actuará conforme a lo establecido en el mismo y conforme a lo establecido en los contratos y documentos que suscriba en cumplimiento de los fines del presente Fideicomiso. En virtud de lo anterior, el Fiduciario no será responsable por :

(i) Los actos que realice en cumplimiento con lo establecido en el presente Fideicomiso;

(ii) Los actos que realice en cumplimiento con lo establecido en los contratos y documentos que suscriba conforme a lo previsto en este Fideicomiso;..........................

(iii) Los actos que realice en cumplimiento con lo establecido en las instrucciones que reciba por escrito de conformidad con lo establecido en este Fideicomiso;.....................

(iv) Cualquier mora o incumplimiento de cualquier pago que deba realizar el Fiduciario, cuando la omisión o retraso de dicho pago sean consecuencia directa del incumplimiento de obligaciones legales o contractuales de terceros; .........................

(v) La seguridad y resguardo del Inmueble, el control del acceso al mismo ni los actos que dentro del Inmueble realicen las personas que ingresen a éste, salvo que el Fiduciario esté en posesión del Inmueble;..........................................

(vi) Los hechos, actos y omisiones de cualquiera de las partes del presente Fideicomiso (excepto el Fiduciario) o de terceros que impidan o dificulten el cumplimiento de los Fines de este Fideicomiso..........................................

(i) Salvo aquellas disposiciones establecidas específicamente en este Fideicomiso, el Fiduciario no tendrá obligación de confirmar o verificar la autenticidad de cualquier reporte o certificado que entregue cualquiera de las partes del Fideicomiso al Fiduciario de conformidad con este Fideicomiso. El Fiduciario no asume responsabilidad respecto a cualesquier declaración hecha por las demás partes en el presente Fideicomiso o en los documentos relacionados con el mismo. ..........................................

(j) En el caso de condenas en cualquier juicio que se haya seguido en relación con el Patrimonio del Fideicomiso o contra el Fiduciario en tal carácter, por cualquier tercero, el

CONFIDENTIAL

DANSKE_0014093

pago de gastos y costas que en su caso se haya determinado, serán a cargo exclusivamente por parte del Fideicomitente, sin responsabilidad para el Fiduciario, en caso de que el Patrimonio del Fideicomiso no alcance a cubrir dichos gastos y costas.....

Cláusula 24. Asuntos Laborales..............................................................

El Fiduciario, sus representantes, delegados fiduciarios, empleados, apoderados y demás personal, no tendrán relación laboral o de empleados o cualquier responsabilidad con las personas o entidades con las que contrate el Fideicomitente para la operación, administración u otros actos relacionados con el Patrimonio Fideicomitido. El Fideicomitente asume la obligación de indemnizar y sacar en paz y a salvo al Fiduciario de cualquier demanda que dichas personas o entidades puedan entablar en contra del Fiduciario. ...............

Cláusula 25. Legislación Aplicable, Interpretación y Jurisdicción. ......................

Este Fideicomiso se regirá de conformidad con las leyes de los Estados Unidos Mexicanos. Para la interpretación y cumplimiento de este Fideicomiso, las partes se someten de manera expresa e irrevocable a la jurisdicción y competencia de los tribunales competentes ubicados en (i) México, Distrito Federal, (ii) el lugar de ubicación del Inmueble, o (iii) el domicilio del demandado, a elección del actor, y renuncian expresa e irrevocablemente a cualquier otra jurisdicción que por razón de su domicilio presente o futuro o por cualquier otro motivo pudiera corresponderles. ......................

Cláusula 26. Independencia de Disposiciones. ...........................................

Si alguna disposición de este Fideicomiso fuera considerada nula o inexigible, la parte restante de este Fideicomiso permanecerá en pleno vigor y efectos. Si alguna disposición es considerada nula o inexigible con respecto a circunstancias particulares, dicha disposición continuará en pleno vigor y efectos en cualquier otra circunstancia. ......

Cláusula 27. Anexos. ...............................................................................

Las partes reconocen que a continuación se enlistan los anexos que se adjunta al presente Fideicomiso, los cuales forman parte integrante del mismo. ...................

SEGUNDA. Las partes acuerdan que este Convenio Modificatorio y de Re-expresión no constituye una novación de las disposiciones del Fideicomiso, y con excepción de las modificaciones aquí acordadas, todas las disposiciones del Fideicomiso permanecerán en vigor, por lo cual, las partes en este acto confirman y ratifican en cada aspecto todas las disposiciones del Fideicomiso. .................................................................

TERCERA. El Fideicomitente se obliga a pagar al Fiduciario la cantidad de $5,000.00 (CINCO MIL DOLARES MONEDA DEL CURSO LEGAL DE LOS ESTADOS UNIDOS DE AMERICA), más el impuesto al valor agregado correspondiente, por concepto de honorarios fiduciarios por el presente Convenio Modificatorio y de Re-expresión.

CUARTA. Este Convenio Modificatorio y de Re-expresión se regirá e interpretará de conformidad con la Cláusula 25 del Fideicomiso. Las partes expresamente renuncian a cualquier jurisdicción que pudiere corresponderles por cualquier motivo. ......................

CONFIDENTIAL

DANSKE_0014094



IGNACIO RAMIREZ LEDO
TELS. 122-91-2
122-97-1
126-24-4
FAX 1262668

C. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7



**COTEJADO**

EN TESTIMONIO DE LO ANTERIOR, las partes celebran este Convenio Modificatorio y de Re-expresión el 6 de marzo de 2009...........................................................

--- 1.- **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.** ....................................

--- El señor **KENNETH ABOUD JOWDY**, acredita su personalidad y la legal existencia de su representada la cual manifiesta que no le ha sido revocada, ni modificada, con escritura pública 64,865 sesenta y cuatro mil ochocientos sesenta y cinco, del volumen 1,025 mil veinticinco, de fecha veintitrés de febrero del año dos mil seis, e inscrita en el Registro Público de la Propiedad y del Comercio de San José del Cabo, bajo el Folio Mercantil Electrónico: 9065 4 nueve cero seis cinco cuatro, RFC/No. **DCS060223-D40**, Primer Inscripción, Boleta de Pago No.: 275471 dos siete cinco, cuatro siete uno, de fecha veintisiete de febrero del año dos mil seis, otorgada ante la del Suscrito Notario Adscrito a la Notaría Pública Número Siete, del Estado, en la cual se hace constar la CONSTITUCION de la Sociedad Mercantil denominada "DIAMANTE CABO SAN LUCAS", S. DE R.L. DE C.V., de la cual en lo conducente copio lo siguiente: ".....PRIMERA.- La sociedad se denominará "DIAMANTE CABO SAN LUCAS"; ésta denominación irá seguida de las palabras SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE.- SEGUNDA.- La sociedad tendrá por objeto la realización de todo tipo de actividades relacionadas con el desarrollo inmobiliario dentro de los límites permitidos por la Ley de Inversión Extranjera, por lo que además de las actividades que se mencionan en este artículo, la sociedad desarrollará campos de golf privados de dieciocho hoyos, unidades habitacionales, casitas y demás infraestructura relacionada. En general la sociedad podrá realizar todo tipo de actividades relacionadas con lo anterior, por lo que enunciativa mas no limitativamente la sociedad podrá.- A).- Dentro de los límites permitidos por la Ley de Inversión Extranjera, realizar todo tipo de actividades relacionadas con el desarrollo inmobiliario con fines turísticos. B).- Dentro de los límites permitidos por la Ley de Inversión Extranjera, establecer, adquirir, construir, arrendar, operar y poseer en cualquier forma permitida por la Ley tiendas, almacenes, oficinas, establecimientos, bodegas y otros establecimientos necesarios o convenientes para los objetos de la sociedad.- C).- Adquirir o poseer por cualquier título, usar dar o tomar en arrendamiento, administrar, vender o disponer en cualquier forma, de todos los bienes muebles o inmuebles que fueren necesarios o convenientes para la realización de los objetos de la sociedad.- D).- Supervisar, planear o contratar, directamente o a través de terceros, toda clase de construcciones, edificaciones y urbanizaciones, así como adquirir y enajenar por cualquier título materiales de construcción.- E).- Prestar y recibir toda clase de servicios técnicos, administrativos; de supervisión promoción y en general cualesquiera clase de servicios requeridos por negociaciones comerciales o industriales, en México o en el extranjero; F).- Promover, organizar, administrar y supervisar toda clase de sociedades mercantiles o civiles. G).- Adquirir acciones, participaciones, partes sociales o títulos y obligaciones de toda clase de empresas o sociedades y formar parte de ellas.- H).- Registrar, obtener, adquirir, usar o disponer de

CONFIDENTIAL

DANSKE_0014095

toda clase de marcas, nombres comerciales, certificados de inversión, patentes, derechos de autos, opciones y preferencias, procesos y concesiones o licencias, ya sea en México o en el extranjero.- I).- Obtener y otorgar prestamos con o sin garantía, emitir, aceptar, avalar, endosar, y en general suscribir todo titulo de créditos, así como garantizar en cualquier forma las obligaciones de terceros.- J).- En general la celebración de toda clase de actos y contratos que se relacionen directa o indirectamente con la sociedad o más fines entre los que se encuentran la adquisición por cualquier forma de bienes muebles o inmuebles propios para el desarrollo de su objeto social. La sociedad solo podrá realizar actividades propias de su objeto, sin que de ninguna manera pueda llevar a cabo actividades reservadas de manera exclusiva al Estado Mexicano. TERCERA.- El domicilio de la sociedad será: La Ciudad de Cabo San Lucas, Baja California Sur, sin perjuicio de establecer oficinas o sucursales en otras partes del Estado de la República o del Extranjero y señalar domicilios convencionales en los contratos que celebre. CUARTA.- La duración de la sociedad será de NOVENTA Y NUEVE AÑOS, que se contarán a partir de la fecha de firma de esta escritura. QUINTA.- CLAUSULA DE EXTRANJERIA:- La Sociedad será de Nacionalidad Mexicana, con cláusula de ADMISION DE EXTRANJEROS. Pudiendo participar en su Capital Social, Inversionistas Extranjeros o Sociedades sin Cláusula de Exclusión de Extranjeros; participación de Capital que será admitida en cualquier proporción.- "Todo extranjero que en el acto de la constitución o en cualquier tiempo ulterior, adquiera un interés o participación social en la sociedad, se considerará por ese simple hecho como mexicano, respecto de uno y otra, y se entenderá que conviene en no invocar la protección de su Gobierno, bajo la pena en caso de faltar a su convenio, de perder dicho interés o participación en beneficio de la Nación Mexicana". SEXTA.- El capital de la sociedad será variable, iniciándose con un mínimo sin derecho a retiro de: $ 10,000.00 (DIEZ MIL PESOS, 00/100 MONEDA NACIONAL) siendo el máximo ilimitado. SEPTIMA.- El capital social será integramente suscrito y pagado, y se encuentra representado en partes sociales de $ 500.00 ( quinientos pesos, 00/100 moneda nacional) cada una de ellas, las que siempre serán de dicha cantidad o de un múltiplo de la misma. OCTAVA.- Los socios fundadores aportan a la sociedad la cantidad de $ 500.00 (quinientos pesos, 00/100 moneda nacional), de la siguiente manera:.................. El Gerente Administrador de la Sociedad manifiesta bajo protesta de decir verdad que en la Caja de Caudales se encuentra depositado integramente el importe del valor de las acciones.- NOVENA.- La sociedad será administrada por un GERENTE ADMINISTRADOR o un GERENTE GENERAL, el cual tendrá las mas amplias facultades de un apoderado GENERAL PARA PLEITOS Y COBRANZAS, ACTOS DE ADMINISTRACIÓN y ACTOS DE DOMINIO, con todas las facultades generales y las especiales que requieran cláusula especial conforme a la Ley, en los términos de los TRES primeros párrafos del artículo (2,554) dos mil quinientos cincuenta y cuatro y las especiales del (2,587) dos mil quinientos ochenta y siete, ambos del Código Civil para el

CONFIDENTIAL

DANSKE_0014096

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-87-17
125-24-40
FAX 1252568



LIC. HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM. 7

57



**COTEJADO**

Distrito Federal y su correlativo el Artículo (2468) dos mil cuatrocientos sesenta y ocho del Código Civil para el Estado de Baja California Sur, y sus correlativos en las demás Entidades Federativas.- El apoderado podrá concurrir ante toda clase de Autoridades sean de la Federación, de los Estados, Municipios, Delegaciones y ya sean estas Legislativas, Ejecutivas, Judiciales, del Trabajo, Fiscales o de cualquiera otra naturaleza. Haciendo toda clase de gestiones y solicitudes cualesquiera que ellas sean; para presentar denuncias, querellas y acusaciones coadyuvar con el Agente del Ministerio Público y constituirse en parte civil, para desistirse de toda clase de acciones, procedimientos, incidentes, recursos, denuncias, querellas y acusaciones e incluso del juicio de amparo, para transigir y comprometer en árbitros y arbitradores; para absolver y articular posiciones, para recusar con causa o sin ella para recibir pagos y para cualesquiera otras sin reserva ni limitación alguna, pudiendo concurrir ante toda clase de personas físicas o morales, privadas u oficiales, haciendo toda clase de gestiones y solicitudes . Además del poder general para pleitos y cobranzas que se otorga, de acuerdo con los Artículos 689, 690, 692 y 695 de la Ley Federal del Trabajo, se designa al apoderado como representante legal de la empresa, con facultades para ocurrir en nombre de ésta a las Audiencias de Conciliación que se celebren ante la Junta Local de Conciliación, ante la Junta Federal de Conciliación, ante la Junta Especial que corresponda, bien sea de la Federal o de la Local de Conciliación y Arbitraje o ante cualesquiera autoridad del trabajo, con facultades para actos de administración en el área Laboral y para celebrar los convenios que puedan derivarse de ella. PODER PARA ACTOS DE ADMINISTRACIÓN, a fin de que el apoderado pueda celebrar o hacer celebrar, ejecutar o hacer ejecutar toda clase de hechos, actos, convenios y contratos de cualquiera naturaleza que ellos sean, otorgando toda clase de documentos privados e instrumentos públicos con facultades administrativas. PODER PARA SUSCRIBIR TITULOS DE CREDITO, a fin de que el apoderado pueda emitir, girar, suscribir, endosar, avalar o de cualquiera otra manera poner en circulación toda clase de títulos de crédito, en los términos del Artículo 9° Noveno de la Ley General de Títulos y Operaciones de Crédito.- PODER PARA EJERCER ACTOS DE DOMINIO, a fin de que el apoderado pueda enajenar, gravar, hipotecar o de cualquiera otra manera disponer de la posesión y dominio de bienes del mandante de cualquiera naturaleza que ellos sean, pudiendo firmar cuantos documentos privados o escrituras públicas en los términos, precios y demás condiciones que estime pertinentes el apoderado y en su caso negociar las cédulas recibir su importe y endosar o hacer efectivos los cheques representativos del pago.- FACULTADES PARA SUBSTITUIR EN TODO O EN PARTE EL PRESENTE MANDATO, reservándose el apoderado el ejercicio del mismo y poder nombrar apoderados, factores y empleados, fijándoles sus facultades, obligaciones, remuneraciones y revocar las substituciones que hiciere. TRANSITORIAS: PRIMERA.- Reunidos en primera Asamblea General de Accionistas, los socios, toman los siguientes acuerdos: 1°.- La sociedad será administrada por un GRENTE ADMINISTRADOR.- 2°.-

CONFIDENTIAL

DANSKE_0014097

Se designa como GERENTE ADMINISTRADOR al Señor KENNETH ABOUD JOWDY quien en el cargo de sus funciones, tendrá las facultades que se establecen en la Cláusula NOVENA de la presente escritura constitutiva, con la salvedad de que para el desempeño de su actividad deberá de obtener el permiso correspondiente que a su juicio expida la Secretaria de Gobernación y de que en caso de violación al Reglamento de la Ley General de Población se hará acreedor a las sanciones correspondientes.-

3°.- Se otorga al señor FERNANDO MANUEL GARCIA CAMPUZANO, un PODER GENERAL PARA PLEITOS Y COBRANZAS, ACTOS DE ADMINISTRACION Y ACTOS DE DOMINIO...." ..................................................................................................

- - - Mediante escritura publica numero setenta y ocho mil ochocientos ochenta y uno, del volumen mil doscientos noventa y uno, de fecha seis de marzo del año dos mil nueve, otorgada ante la fe del Suscrito Notario, en la cual consta LA PROTOCOLIZACION, del Acta de Asamblea General de la sociedad Mercantil denominada **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, de la cual en lo conducente copio lo siguiente:** "... PRIMERA.- A solicitud del señor **FERNANDO MANUEL GARCÍA CAMPUZANO,** se da por PROTOCOLIZADA el Acta de Asamblea de la Sociedad Mercantil denominada **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** celebrada el día seis de Marzo de dos mil nueve, y formalizados los acuerdos en la misma tomados, - SEGUNDA.- **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** acepta y aprueba la cesión de derechos contenida en el Contrato Global de Cesión celebrado entre Lehman Brothers y Danske Bank, en el cual Lehman Brothers, en su carácter de Cedente, transmitió la totalidad de sus derechos, obligaciones y garantías bajo los Documentos del Crédito (*Loan Documents*) a favor de Danske Bank; y así mismo la Sociedad celebre todos los instrumentos o contratos necesarios para perfeccionar la cesión de derechos contenida en el Contrato Global de Cesión.- TERCERA.- **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** reforma totalmente sus estatutos sociales en los términos que mas adelante se mencionan.- CUARTA.- **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** ratifica el nombramiento del Sr. Kenneth Aboud Jowdy como Gerente General de la Sociedad, con todas las obligaciones y derechos que conlleven el desempeño de dicho cargo.- QUINTA.- **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** ratifica en todas y cada una de sus partes, los poderes conferidos al Sr. Fernando Manuel García Campuzano en el acta de asamblea general de socios de fecha 8 de marzo de 2006, la cual quedó debidamente protocolizada, mediante el acta número 65,011 del volumen 1,026 de fecha 9 de marzo del año 2006, ante la fe del Lic. José Alberto Castro Salazar, Notario Público Adscrito a la Notaría Pública Número 7 de la Ciudad de La Paz, Baja California Sur.- SEXTA.- **"DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD**



CONFIDENTIAL

DANSKE_0014098

HECTOR CASTRO CASTRO
TITULAR
JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7



**LIMITADA DE CAPITAL VARIABLE**, aprueba y confirma los términos del contrato de cesión de derechos por virtud del cual Lehman Brothers cedió a Danske Bank la totalidad de sus derechos y obligaciones bajo el Contrato de Prenda sobre Partes Sociales; así mismo acepta a Danske Bank como el nuevo acreedor prendario bajo el Contrato de Prenda sobre Partes Sociales.- **SÉPTIMA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** aprueba por por parte de Diamante Cabo San Lucas, LLC, a través de su representante legal, y Kenneth Aboud Jowdy de un contrato de cesión de derechos por virtud del cual Lehman Brothers cedió a Danske Bank la totalidad de sus derechos y obligaciones bajo el Contrato de Prenda sobre Partes Sociales, aceptando a Danske Bank como nuevo acreedor prendario.- **OCTAVA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** aprobó las siguientes resoluciones:- 1) Otorgar a Danske Bank todos los derechos que se establece en el mencionado Contrato de Prenda sobre Partes Sociales.- 2) De conformidad con lo establecido en el Contrato de Prenda correspondiente, Diamante Cabo San Lucas, LLC no deberá ceder, vender, prendar o disponer de forma alguna su parte social sin la autorización previa y por escrito de Danske Bank.- 3) De conformidad con lo establecido en el Contrato de Prenda sobre Partes Sociales, la Sociedad no deberá ceder, vender, prendar o disponer de forma alguna de las partes sociales que representan el capital social de la misma, sin la autorización previa y por escrito de Danske Bank. - 4) La Sociedad no deberá permitir que, en el ejercicio del voto que corresponde a las partes sociales, se contravenga lo establecido en el Contrato de Prenda sobre Partes Sociales. **NOVENA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** aprueba celebrar el Convenio de Terminación al Contrato de Prenda (Activos), toda vez que serán aportados al patrimonio del Fideicomiso. **DÉCIMA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** aprobó las siguientes resoluciones: i) El aceptar como socio de la Sociedad, sin necesidad de consentimiento adicional al aquí otorgado, a Danske Bank o a cualquier otro posible acreedor prendario de las partes sociales otorgadas en prenda por Diamante Cabo San Lucas, LLC y el Sr. Kenneth Aboud Jowdy en favor de Danske Bank, en caso de cesión, compra, ejecución forzosa o remate judicial de las mencionadas partes sociales. ii) En caso de cesión, compra, ejecución forzosa o remate judicial de la parte social propiedad de Diamante Cabo San Lucas, LLC en favor de Danske Bank, o del tenedor de la parte social en su momento, el Sr. Kenneth Aboud Jowdy, en su calidad de socio de la Sociedad, en este acto renuncia tanto al derecho del tanto que le asiste de conformidad con el artículo 66 de la Ley General de Sociedades Mercantiles y de lo estipulado en los estatutos sociales, como a cualquier derecho que pueda tener para adquirir en todo o en parte la parte social del socio contrario mediante cualquier otra vía.- iii) Por virtud de lo anterior, el Sr. Kenneth Aboud Jowdy renuncia tanto al derecho del tanto que le confiere el

CONFIDENTIAL

DANSKE_0014099

artículo 66 de la Ley General de Sociedades Mercantiles y los estatutos sociales, como a cualquier derecho que pueda tener para adquirir en todo o en parte la parte social del socio contrario mediante cualquier otra vía, otorgando en este mismo acto su consentimiento para que, en su caso, se lleve a cabo la cesión, compra, ejecución forzosa o remate judicial de la parte social de Diamante Cabo San Lucas, LLC otorgada en prenda en favor de Danske Bank.- iv) En caso de compra, ejecución forzosa o remate judicial de la parte social propiedad del Sr. Kenneth Aboud Jowdy en favor de Danske Bank, o del tenedor de la parte social en su momento, Diamante Cabo San Lucas, LLC, en su calidad de socio de la Sociedad, en este acto renuncia tanto al derecho del tanto que le asiste de conformidad con el artículo 66 de la Ley General de Sociedades Mercantiles y de lo estipulado en los estatutos sociales, como a cualquier derecho que pueda tener para adquirir en todo o en parte la parte social del socio contrario mediante cualquier otra vía. - v) Por virtud de lo anterior, Diamante Cabo San Lucas, LLC renuncia tanto al derecho del tanto que le confiere el artículo 66 de la Ley General de Sociedades Mercantiles y los estatutos sociales, como a cualquier derecho que pueda tener para adquirir en todo o en parte la parte social del socio contrario mediante cualquier otra vía, otorgando en este mismo acto su consentimiento para que, en su caso, se lleve a cabo la cesión, compra, ejecución forzosa o remate judicial de la parte social del Sr. Kenneth Aboud Jowdy otorgada en prenda en favor de Danske Bank. - vi) En caso de compra, ejecución forzosa o remate judicial de las partes sociales otorgadas en prenda por Diamante Cabo San Lucas, LLC y el Sr. Kenneth Aboud Jowdy en favor de Danske Bank, de conformidad con las resoluciones anteriores, el capital social de la Sociedad quedaría integrado de la siguiente forma:...............................

| Socios | Partes Sociales | Valor |
|---|---|---|
| Danske Bank A/S, London Branch, o un nuevo adquiriente. | 1 | $9,900.00 |
| Danske Bank A/S, London Branch, o un nuevo adquiriente. | 1 | $100.00 |
| Total | 2 | $10,000.00 |

DÉCIMA PRIMERA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, dio instrucciones al Secretario a fin de llevar a cabo las anotaciones de las prendas otorgadas en favor de Danske Bank como cesionario de Lehman Brothers, en el libro especial de socios, así mismo instruyó al Secretario para que proporcione a Danske Bank, una copia de las anotaciones antes mencionadas firmadas por el Secretario de la Sociedad o el Gerente Único y llevar a cabo las anotaciones de las prendas otorgadas a favor de Danske Bank, en el libro especial de socios y a su vez, sea proporcionada una copia de la misma debidamente firmada a Danske Bank.- DÉCIMA SEGUNDA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, aprueba la Cesión a Danske Bank de todos y cada uno de los documentos de Operación 2006, en virtud de estar ajustado a los intereses de la propia sociedad y los cuales se enlistan a continuación:. - (i) Contrato de Crédito Original (*Loan Agreement*) celebrado entre Diamante Cabo y el Lehman Brothers (el "Contrato de Crédito Original")

CONFIDENTIAL

DANSKE_0014100



IGNACIO RAMIREZ  
TELS. 122-91-  
122-97-  
126-24-40  
FAX 1262588

LIC. HECTOR CASTRO CASTRO  
TITULAR  
LIC. JOSE ALBERTO CASTRO SALAZAR  
ADSCRITO  
NOTARIA PUBLICA NUM.7

61



**COTEJADO**

- - - (ii) Pagaré (*Promissory Note*) suscrito por Diamante Cabo (el "Pagaré"); - (iii) Contrato de Cesión de Arrendamiento y Rentas (*Assignment of Leases and Rents*), entre Diamante Cabo y Lehman Brothers (la "Cesión de Rentas"); - (iv) Garantía con Recurso (*Recourse Guaranty*) celebrada por el señor Kenneth A. Jowdy (el "Garante") y Lehman Brothers, con vigencia a partir del 10 de marzo de 2006 (la "Garantía con Recurso"); - (v) Documento de Responsabilidad e Indemnización Ambiental (*Indemnity Agreement*) celebrado entre Diamante Cabo, el Garante y Lehman Brothers (la "Indemnización Ambiental"); - (vi) Contrato de Prenda sobre partes sociales (*Pledge Agreement*) celebrado entre Diamante Cabo, el Garante, Diamante Cabo San Lucas LLC ("U.S. LLC"), y Lehman Brothers (el "Contrato de Prenda (Partes Sociales del Fideicomitente)");- (vii) Contrato de Prenda sobre activos celebrado entre Lehman Brothers y Diamante Cabo (el "Contrato de Prenda (Activos)"); - (viii) Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, U.S. LLC y Lehman Brothers (el "Contrato de Prenda (Partes Sociales del Acreditado)");- (ix) Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC y CSL Properties 2006, LLC (colectivamente, los "Miembros de la U.S. LLC") y Lehman Brothers (el "Contrato de Prenda Sobre Partes Sociales de E.U.A."); - (x) Cesión Ómnibus (*Omnibus Assignment*) celebrada entre Diamante Cabo y Lehman Brothers (la "Cesión Ómnibus 2006"); y- (xi) Documento de Cumplimiento de Garantía de Conclusión (*Completion Guaranty*), otorgado por el Garante a favor de Lehman Brothers; y (xii) Garantía (*Guaranty*) otorgada por los Miembros de la U.S. LLC, el Garante y la U.S. LLC a favor de Lehman Brothers.- **DÉCIMA TERCERA.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, acepta y aprueba la celebración de los siguientes documentos: - (I) Convenio Modificatorio y de Re-expresión al Contrato de Fideicomiso - (ii) Contrato de Crédito Modificado y Re-expresado a ser celebrado entre Diamante Cabo y Danske Bank. - (iii) Los dos pagarés (Pagaré A, el Pagaré B) bajo el Contrato de Crédito Modificado y Re-expresado ("Pagarés 2009");- (iv) Contrato de Cesión de Arrendamiento y Rentas (*Assignment of Leases and Rents*), entre Diamante Cabo y Lehman Brothers (la "Cesión de Rentas");...

- (v) Contrato de Cesión de Garantía con Recurso (*Recourse Guaranty*) celebrada por el señor Kenneth A. Jowdy (el "Garante") y Lehman Brothers, con vigencia a partir del 10 de marzo de 2006 (la "Garantía con Recurso");- (vi) Contrato de Cesión de Documento de Responsabilidad e Indemnización Ambiental (*Indemnity Agreement*) celebrado entre Diamante Cabo, el Garante y Lehman Brothers (la "Indemnización Ambiental"); - (vii) Contrato de Cesión de Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, U.S. LLC y Lehman Brothers (el "Contrato de Prenda (Partes Sociales del Acreditado)"); - (viii) Contrato de Cesión de Contrato de Prenda (*Pledge Agreement*) celebrado entre el Garante, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC y CSL Properties 2006, LLC (colectivamente, los "Miembros de la U.S.

CONFIDENTIAL

DANSKE_0014101

LLC") y Lehman Brothers (el "Contrato de Prenda Sobre Partes Sociales de E.U.A."); (ix) Contrato de Cesión de Cesión Ómnibus (*Omnibus Assignment*) celebrada entre Diamante Cabo y Lehman Brothers (la "Cesión Ómnibus 2006"); y- (x) Contrato de Cesión de Documento de Cumplimiento de Garantía de Conclusión (*Completion Guaranty*), otorgado por el Garante a favor de Lehman Brothers; y (xii) Garantía (*Guaranty*) otorgada por los Miembros de la U.S. LLC, el Garante y la U.S. LLC a favor de Lehman Brothers. ...................................................................................................

- - -2.- **DANSKE BANK A/S, LONDON BRANCH**, LA SUCURSAL DE LONDRES DE UNA SOCIEDAD CONSTITUIDA EN EL REINO DE DINAMARCA, EN SU CARÁCTER DE FIDEICOMISARIO EN PRIMER LUGAR, REPRESENTADA EN ESTE ACTO POR **GUSTAVO IGNACIO ALARCON CABALLERO**: ..........................................

- - - Mediante escritura publica cinco dos mil ochocientos sesenta y seis, libro numero dos mil dieciséis, de fecha veintitrés de febrero del año dos mil nueve, pasada antela fe del señor Licenciado F. JAVIER ARCE GARGOLLO, Notario Publico Numero Setenta y Cuatro con ejercicio en México, Distrito Federal, en la cual consta LA PROTOCOLIZACION DE DOCUMENTO OTORGADO EN EL EXTRANJERO, del cual con lo conducente copio lo siguiente: "..... CLAUSULAS.- PRIMERA. Queda protocolizado, en términos de los Articulo Ciento treinta y nueve y ciento cuarenta d ela Ley del Notariado para el Distrito Federal, el documentación relacionado en el antevente Unico, de este instrumento.- SEGUNDA.- como consecuencia de los anterior, queda formalizado el PODER ESPECIAL otorgaro por DANSKE BANK A/S, SOCURSAL EN LONDRES, a favor de los señores JAVIER ARREOLA ESPINOSA, VANESSA E. FRAYUTTI JOHNSTONE, GUSTAVO IGNACIO ALARCON CABALLERO, REICARGO GARCIA DE LA ROSA Y CARLOS ANTONIO HASSEY ARTIGAS, para que lo ejerzan, conjunta o separadamente, en los terminos y con la suma de facultades que en se mencionan en el documento que se protocoliza y de cuya traducción al idioma castellano, copio en lo conducente como sigue: PRIMERA,. Otorgar un Poder Especial en los terminos del Articulo 2553 del Codigo Civil Federal y del articulo correlativos del Codigo Civil de cada entidad federativa de los estados Unidos Mexicanos y del Distrito Federal, y del Articulo 9 de la Ley General de Titulos y Operaciones de Credito de los Estados Unidos Mexicanos, a favor de los Licenciado Javier Arreola Espinosa, Vanesa E. Franyutti Johnstone, Gustavo Ignacio Alarcón Caballero, Ricardo Garcia de la Rosa y Carlos Antonio ACEI Artigas, para que lo ejerzan conjunta o separadamente a nombre y en representación del Banco, con todas las facultades generales y especiales que procedan conforme a la Ley, y para que, de la manera que juzguen mas conveniente a beneficio del banco, celebren todos los actos juridicos y contratos, lleven a cabo promociones y reconocimientos y den los avisos necesarios para modificar los instrumentos de garantia (collateral instruments) que Lehman Brothers Holdings Inc, cedio a favor de Danske Bank relacionados con el contrato de crédito (Loan Agreement) celebraro el 10 de marzo de 2006 por Diamante Cabo San Lucas, S. de R.L de C.V., y

CONFIDENTIAL

DANSKE_0014102



IGNACIO RAMIREZ
TELS. 122-91-20
122-97-17
125-24-40
FAX 1252588

HECTOR CASTRO CASTRO
TITULAR
C. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

63



Lehman Brothers Holdings Inc. Este poder podran ejercerlo los apoderados antes mencionados desde la fecha en que se otorga hasta el 13 de marzo de 2009.................

- - - 3.- **THE BANK OF NEW YORK MELLON, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE** (CAUSAHABIENTE UNIVERSAL FINAL DE BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA), EN SU CARÁCTER DE FIDUCIARIO DEL FIDEICOMISO F/00321, REPRESENTADO EN ESTE ACTO POR SU DELEGADA FIDUCIARIA ELIZABETH CID DEL PRADO GARCÍA DE LEÓN.................................................................



- - - Mediante Instrumento numero cincuenta y nueve mil quinientos sesenta y tres, del volumen un mil cuatrocientos treinta y cinco, de fecha veintisiete de noviembre del año dos mil ocho, pasada ante la fe del señor Licenciado Roberto Nuñez y Bandera, Notario Publico Numero Uno, de Mexico, en la cual consta DESINGACION DE DELEGADOS FIDUCIARIOS Y OTORGAMIENTO DE FACULTADES, que hace THE BANK OF NEW YORK MELLON, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, a favor de los señores ELIZABETH CID DEL PRADO GARCIA DE LEON, CARLOS MANUEL LOPEZ CEDEÑO, ROSA ADRIANA LOPEZ JAIMES FIGUEROA, MARIA DEL CARMEN MOZAS GOMEZ, CRISTINA REUS MEDINA, GABRIELA ALEXANDRA NASSAU RAMOS y MONICA JIMENEZ LABORA, de la cuen en lo conducente copio lo siguiente;"....ACTA DE RESOLUCIONES UNANIMES TOMADAS DE SESION DEL CONSEJO DE ADMINISTRACION DE: The Bank of New Cork Mellon, S.A., Institución de Banca Multiple: ....RESOLUCION.- Designación de Delegados Fiduciarios y otorgamiento de Poderes.- El consejo manifieta la conveniencia de designar como Delegados Fiduciarios a los señores Elizabeth Cid del Prado Garcia de Leon, Carlos Manuel Lopez Cedeño, Rosa Adriana Lopez, Jaime Figueroa, Maria del Carmen Mozas Gomez, Cristina Reus Medina, Gabriela Alexandra Nassau y Monica Jiménez Labora Sarabia, de conformidad con los articulos 80 en relación con la fracción XV del 46, 90 y demas relativos y aplicables de la Ley de Institución de Credito asi como la conveniencia de otorgada los podres y facultades necesarios para el ejercicio de su cargo.- Los señores consejeros aprobaron por unanimidad lo siguiente: Con fundamento en lo establecido en los articulos 80 en relacion con la fracción XV del 46, 90 y demás relativos y aplicables de la Ley de Instituciones de Credito se otorga a favor de Elizabeth Cid del Prado Garcia de Leon, Carlos Manuel Lopez Cedeño, Rosa Adriana Lopez Jaimes Figueroa, Maria del Carmen Mozas Gomez, Cristina Reus Medina, Gabriela Alexandra Nassau Ramos y Monica Jiménez Labora SAraiba, para que de manera individual y en el ejercicio de su cargo como Delegados Fiduciarios (i) celebren y practiquen todas las operaciones de fideicomiso, celebren los contratos de fideicomiso correspondiente y en general en forma enunciativa mas no limitativa, (ii) Celebren los mandatos, comisiones, contratos de depósitos, contratos de resprestacion común, asi como cualesquier otro contrato o convenio y suscriben cualquier instrumento o titulo de credito relativo a comisiones, mandatos o representaciones común en que funjan en su

CONFIDENTIAL

DANSKE_0014103

calidad de Delegados Fiduciarios, para ser ejercitado dela forma en que se indica e independientemente de los poderes a ellos conferidos para otros fines de la Sociedad,. Los poderes que se les otorgan a las personas mencionadas, exclusivamente en su calidad de Delegados Fiduciarios y para ser ejercitados individualmente son: 1.- Poder General para Pleitos y Cobranzas, con todas las facultades mas amplias que en derecho proceda en los terminos de la fracción I del artículo 2554 dos mil quinientos cincuenta y cuatro del Codigo Civil para el Distrito Federal y sus correlativos con los demás Estados de la Republica y del Codigo Civil Federal y con todas las facultades generales y aun las especiales que conforme a la ley requieran poder o clausula especial, incluyendo las mencionadas en el artículo 2574.2582,2587 y 2593 del Citado Codigo Civil para el Distrito Federal..... 2.- Poder general para actos de administacion, con las facultades más amplias que en derecho proceda en los terminos del segundo parrafo del articulo dos mil quinientos cincuenta y cuatro del Codigo Civil APRA el Distrito Federal y sus correlativos de los estados de la Republica y del Codigo Civil Federal.- 3.- Poder general para girar, aceptar, suscribir, librar, endosar y avalar toda clase de titulos y operaciones de credito, de conformidad con lo dispuesto por los artículos noveno de la ley General de Titulos y Operaciones de Credito, tercer parrafo del 90 de la Ley de Instituciones de Credito y 2554 del Codigo Civil Federal y del Codigo Civil para el Distrito Federal y sus correlativos de los Estados de la Republica.- 5.- Facultad para abrir y cerar cuentas bancarias, librar en las mismas y designar personas que libren contra ellas.- 6.- Poder general para pleitos y cobranzas, actos de administración en materia labora, en los términos del dispuesto por los artículos 11,692, fraccion I, y III 695, 876, fraccion I y demás correlativos de la Ley Federal del Trabajo.... 7.- Facultades para otorgar poderes. Los apoderados tendran facultades amplisimas para otorgar poderes generales o especiales, para ser ejercitados, conjunta, separada o individualmente, y para revocar unos y otros en todo o en parte, facultades que se limitan a los podres que en este acto se les otorgan, Asi mismo tambien se les otorgan facultades para sustituir y/o delegar sus poderes, total o parcialmente, reservandose para el su ejercicio, solo en cuanto a las facultades y poderes referidos se les hubieren otorgado.- En ningun caso los apoderados tendran facultades para nombrar Delegado Fiduciario ni sustituir, ceder ni delegar su nombramiento en pesona alguna.- ...............



- - - Yo, el Suscrito Notario doy fe tener a la vista los citados documento en copias envio al apéndice de este instrumento, marcado con la letra correspondiente.................

--- **YO, EL NOTARIO, C E R T I F I C O:** ................................................................

- - - **PRIMERO.-** Que conozco a los comparecientes y los conceptúo con capacidad legal ..............................................................................................................

- - - **SEGUNDO.-** Que por sus generales manifestaron ser mexicanos por nacimiento: El señor **KENNETH ABOUD JOWDY**, de 41 cuarenta y un años de edad, de nacionalidad estadounidense, originario de Connecticut, U.S.A., donde nació el dieciséis de julio de mil novecientos sesenta y cuatro, comerciante, soltero, con domicilio en Estados Unidos

CONFIDENTIAL

DANSKE_0014104



IGNACIO RAMIREZ
TELS. 122-01-
122-07-1
125-24-40
FAX 1252588

LIC. HECTOR CASTRO CASTRO
TITULAR
LIC. JOSE ALBERTO CASTRO SALAZAR
ADSCRITO
NOTARIA PUBLICA NUM.7

65



**COTEJADO**

de Norteamérica, de paso por esta ciudad y acreditando su legal estancia en el País con el documento migratorio que se agrega por separado a la presente escritura:; el señor **GUSTAVO IGNACIO ALARCÓN CABALLERO**, originario del Distrito Federal, donde nació el día veintinueve de noviembre de mil novecientos setenta y siete, soltero, abogado, y con domicilio en Paseo de los Tamarindos 400-B, Piso 9, Colonia Bosques de La Lomas, Delegación Cuajimalpa, Código Postal 05120, México, Distrito Federal, y de paso en esta Ciudad: la señora **ELIZABETH CID DEL PRADO GARCÍA DE LEÓN**, originaria del Distrito Federal, donde nació el día dieciocho de enero de mil novecientos setenta y nueve, soltera, abogada, y con domicilio en Paseo de la Reforma 115, Piso 23, 11000, Lomas de Chapultepec, México, Distrito Federal, y de paso en esta Ciudad; el señor **FERNANDO MANUEL GARCIA CAMPUZANO**, de Nacionalidad mexicana por nacimiento, originario de Ensenada, Baja California, lugar donde nació el día doce de Julio de mil novecientos sesenta y siete, casado, Abogado, con domicilio en Obregón número mil doscientos ochenta y nueve, Z.C. Ensenada, Baja California, y de paso por esta ciudad, y se identifica con credencial de elector, con clave de elector número "GRCMFR67071202H200"..............................................................................

- - - **TERCERO.-** Que respecto al pago del Impuesto Sobre la Renta y después de haber hecho las advertencias de Ley, manifestaron que se encuentran al corriente, sin acreditármelo ...........................................................................................................

- - - **CUARTO.-** Que lo relacionado e inserto concuerda fielmente con sus originales que he tenido a la vista y devolví a los interesados...............................................................

- - - **QUINTO.-** Advertidos los comparecientes de su derecho a leer o a que Yo, el Notario, les lea este instrumento, optaron por lo primero y realizado ello, manifestaron su conformidad, por lo que después de explicarles de su valor y fuerza legal, lo ratificaron y firmaron el día de su fecha. DOY FE..................................................................

**KENNETH ABOUD JOWDY.- FIRMADO.- GUSTAVO IGNACIO ALARCÓN CABALLERO.- FIRMADO.- ELIZABETH CID DEL PRADO GARCÍA DE LEÓN.- FIRMADO.- FERNANDO MANUEL GARCIA CAMPUZANO.- FIRMADO.....................**

LIC. JOSE ALBERTO CASTRO SALAZAR. FIRMADO. EL SELLO DE AUTORIZAR........ EN SEIS DIAS DEL MES DE MARZO DEL AÑO DOS MIL NUEVE, QUE SE FIRMO LA PRESENTE ACTA, LA AUTORIZO DEFINITIVAMENTE. DOY FE .................................

ES SEGUNDO TESTIMONIO EN SU ORDEN Y PRIMERO QUE SE EXPIDE PARA USO DE LA SOCIEDAD MERCANTIL **DIAMANTE CABO SAN LUCAS, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** A TITULO DE FIDEICOMISARIO. VA EN TREINTA Y TRES HOJAS UTILES DEBIDAMENTE COTEJADAS, SELLADAS Y FIRMADAS.................................................................

LA PAZ, BAJA CALIFORNIA SUR, A SEIS DE MARZO DEL AÑO DOS MIL NUEVE. DOY FE ...................................................................................................................





65

SE HIZO ANOTACION MARGINAL BAJO EL No. 185 EN LA
FOJA 135 DEL VOLUMEN CCXLV SECCION I DE FECHA
8 DE Mayo DE 2006
SAN JOSE DEL CABO, B.C.S.A 13 DE Abril DE 20 09

EL DIRECTOR DEL REGISTRO PUBLICO

LIC. JORGE JOEL COTA RUIZ

66

CONFIDENTIAL

DANSKE_0014106