# EXHIBIT 61

# UNOFFICIAL ENGLISH TRANSLATION OF SECOND AMENDMENT TO TRUST AGREEMENT

## BACKGROUND

**1.** On March 10, 2006, LEHMAN BROTHERS HOLDINGS INC. ("LEHMAN BROTHERS") granted DIAMANTE CABO a loan for a principal amount of up to $125,000,000.00 (One hundred and twenty five million dollars, legal currency of the United States of America); subject to the corresponding interest (the "LOAN").

**2.** The LOAN incorporates the following Documents: **(i)** Loan Agreement executed on March 10, 2006, by and between DIAMANTE CABO and LEHMAN BROTHERS (the "LOAN AGREEMENT"); **(ii)** Promissory Note executed on March 10, 2006, by DIAMANTE CABO (the "PROMISSORY NOTE"); **(iii)** Recourse Guaranty executed on March 10, 2006, by Mr. Kenneth A. Jowdy (the "GARANTOR") and LEHMAN BROTHERS, in effect as of March 10, 2006, (the "RECOURSE GUARANTY"); **(iv)** Indemnity Agreement executed on March 10, 2006, by and between DIAMANTE CABO, the GARANTOR and LEHMAN BROTHERS (the "ENVIRONMENTAL INDEMNITY"); **(v)** Pledge Agreement over partnership interests executed on March 10, 2006, by and between DIAMANTE CABO, the GARANTOR, DIAMANTE CABO SAN LUCAS LLC ("U.S. LLC"), and LEHMAN BROTHERS (the "PLEDGE AGREEMENT OVER MEXICAN PARTNERSHIP INTERESTS"); **(vi)** Pledge Agreement over assets executed on March 10, 2006, by and between LEHMAN BROTHERS and DIAMANTE CABO (the "PLEDGE AGREEMENT OVER ASSETS"); **(vii)** Pledge Agreement executed on March 10, 2006, by and between the GARANTOR, Baja Ventures 2006, LLC, Diamante Properties, LLC, KA Holdings LLC and CSL Properties 2006, LLC (jointly, the "MEMBERS OF THE U.S. LLC") and LEHMAN BROTHERS (the "PLEDGE AGREEMENT OVER US PARTNERSHIP INTERESTS"); **(viii)** Omnibus Assignment executed on March 10, 2006, by and between DIAMANTE CABO and LEHMAN BROTHERS (the "OMNIBUS ASSIGNMENT"); **(ix)** Completion Guaranty, granted by the GARANTOR on March 10, 2006 in favor of LEHMAN BROTHERS, and **(x)** Guaranty granted by the MEMBERS OF THE U.S. LLC, the GARANTOR and the U.S. LLC in favor of LEHMAN BROTHERS on March 10, 2006. The aforementioned documents, as amended form time to time, are jointly referred to as the "2006 TRANSACTION DOCUMENTS".

**3.** Likewise, on March 10, 2006, through public deed number 65,041 granted before the undersigned notary public, DIAMANTE CABO, as settlor and second beneficiary, LEHMAN BROTHERS, as first beneficiary, and BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA, as trustee, executed the TRUST AGREEMENT in order to secure the obligations of DIAMANTE CABO, the MEMBERS OF THE U.S. LLC, la U.S. LLC and of the GUARANTOR under the 2006 TRANSACTION DOCUMENTS.

4. On the date of execution of the TRUST, DIAMANTE CABO contributed to the trust assets the following properties (hereinafter the "Properties"): *[INSERT THE DESCRIPTION OF THE PROPERTIES CONTRIBUTED TO THE TRUST ASSETS]*

5. Likewise, on the date of execution of the DIAMANTE CABO trust, it contributed to the trust assets the following rights (hereinafter the "Rights"): *[INSERT DESCRIPTION OF THE RIGHTS TO BE CONTRIBUTED TO THE TRUST ASSETS]*

6. *[INSERT RECITALS FOR THE TRUSTEE SUBSTITUTION OF BONY]*

7. On January 13, 2009, LEHMAN BROTHERS and the FIRST BENEFICIARY executed a certain global assignment of rights agreement ("OMNIBUS ASSIGNMENT AND ASSUMPTION") through which LEHMAN BROTHERS assigned in favor of the FIRST BENEFICIARY all of its interests under the 2006 TRANSACTION DOCUMENTS and the latter accepted such assignment.

8. On March 5, 2009, LEHMAN BROTHERS and the FIRST BENEFICIARY executed certain assignment agreements through which the parties to same perfected, pursuant to Mexican law and the OMNIBUS ASSIGNMENT, the assignment of rights in favor of the FIRST BENEFICIARY under the PLEDGE AGREEMENT OVER MEXICAN PARTNERSHIP INTERESTS, the PLEDGE AGREEMENT OVER ASSETS and the TRUST AGREEMENT.

9. On March 5, 2009, the FIRST BENEFICIARY and the Settlor executed a termination agreement to the PLEDGE AGREEMENT OVER ASSETS considering that the assets were contributed to the TRUST AGREEMENT.

10. On March 6, 2009, the FIRST BENEFICIARY and DIAMANTE CABO executed an amendment and restatement agreement to the LOAN AGREEMENT (the "FIRST AMENDED AND RESTATED LOAN AGREEMENT") and also, amended and reaffirmed the 2006 Transaction Documents (the "AMENDED 2009 TRANSACTION DOCUMENTS").

11. By means of the public deed number 81,161, dated as of December 27, 2009, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7 of the State, the FIRST BENEFICIARY, DIAMANTE CABO AND THE TRUSTEE executed an amendment and restatement to the TRUST AGREEMENT (the "AMENDED AND RESTATED TRUST AGREEMENT").

12. By means of the public deed number 81,161, dated as of December 27, 2009, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7 of the State, DIAMANTE CABO on behalf of the TRUSTEE, requested de the re-lotification and notarization of the lots of land which form the property "El Cardonal", "La

Laguna", and "Zona Costa Pacífico" as follows: [*INSERT DESCRIPTION OF THE POLYGONS*].

**13.** The FIRST BENEFICIARY and the SETTLOR agreed to re-affirm and amend the AMENDED 2009 TRANSACTION DOCUMENTS, in order to, among other things, increase the principal amount of that certain promissory note issued as part of the AMENDED 2009 TRANSACTION DOCUMENTS.

**14.** By means of the public deed number 82,871, dated as of May 18, 2010, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7 of the State, DIAMANTE CABO on behalf of the TRUSTEE requested the formation of the master condominium "Diamante Cabo San Lucas" (the "MASTER CONDOMINIUM"), formed by 6 private units described as follows: [*INSERT DESCRIPTION OF THE MASTER CONDOMINIUM UNITS*]

**15.** By means of the public deed number 82,876, dated as of April 18, 2010, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7 of the State, DIAMANTE CABO on behalf of the TRUSTEE, requested the formation of the sub-regime of the condominium property 1 "Golf Villas" of the MASTER CONDOMINIUM described as follows: [*INSERT THE DESCRIPTION OF THE SUB-REGIME OF THE CONDOMINIUM PROPERTY*]

**16.** By means of the public deed number 82,876, dated as of June 29, 2010, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7 of the State, DIAMANTE CABO on behalf of the TRUSTEE, requested the formation of the sub-regime of the condominium property 2 "Sunset Hill" of the MASTER CONDOMINIUM described as follows: [*INSERT THE DESCRIPTION OF THE SUB-REGIME OF THE CONDOMINIUM PROPERTY*]

**17.** By means of the public deed number 84,644, dated as of December 16, 2010, in the City of La Paz, Baja California Sur, granted before Mr. Jose Alberto Castro Salazar, Notary Public number 7, the TRUSTEE and the FIRST BENEFICIARY executed a unilateral declaration in order to form a time share regime on the following properties: [*INSERT DESCRIPTION OF THE PROPERTIES*].

**18.** By means of the public deed number 3,016, dated as of June 22, 2011, in the City of La Paz, Baja California Sur, granted before Mr. Karim Francisco Martinez Lizarraga, Notary Public number 22 of the State, DIAMANTE CABO on behalf of the TRUSTEE, requested the formation of the regime of the condominium property 6 "Beach Estates" of the MASTER CONDOMINIUM described as follows: [*INSERT THE DESCRIPTION OF THE SUB-REGIME OF THE CONDOMINIUM PROPERTY*]

**19.** By means of the public deed number 61,581, dated as of December 16, 2011, in the City of La Paz, Baja California Sur, granted before Mr. Antonio Aguilar Mondragon Salazar, Notary Public number 1, the TRUSTEE and the FIRST BENEFICIARY executed the unilateral statement in order to allocate under a time share regime the properties described as follows: [*INSERT DESCRIPTION OF THE PROPERTIES*].

**20.** [*Easements*]

**21.** On April [*], 2013, the FIRST BENEFICIARY, the TRUSTEE, and DIAMANTE CABO executed a second amendment to the LOAN AGREEMENT which modified the terms of the LOAN AGREEMENT and reaffirm the warranties and representations under the AMENDED 2010 TRANSACTION DOCUMENTS (the "SECOND AMENDED AND RESTATED LOAN AGREEMENT").

**22.** On April [*], 2013, Diamante Cabo entered into a pledge agreement for the purpose of affecting all rights and assets that are not part of the TRUST ESTATE.

## REPRESENTATIONS

**1.** DIAMANTE CABO, hereby represents, manifests and warrants that:

**a)** It is a limited liability company of variable capital duly formed pursuant to the laws of the United Mexican States, with headquarters at Calle Obregón No. 1,289, 22800, Ensenada, Baja California Norte, México.

**b)** It contributed to the assets of the TRUST the Properties described in Recital [*] and the Rights described in Recital [*] of this instrument (hereinafter the Properties and the Rights shall be jointly referred to for purposes of this TRUST as the "PROPERTY").

**c)** It has all the corporate and legal powers and authority to execute and comply with its obligations hereunder, as well as to grant the necessary guaranties, and has taken all legal and corporate actions necessary to authorize its execution and compliance in terms of this AGREEMENT.

**d)** The TRUST constitutes a legal, valid and binding obligation of CABO DIAMANTE, enforceable pursuant to the provisions of the applicable law.

**e)** The execution and compliance of this AGREEMENT does not imply any material breach of any provision or legal requirement, nor of any provision of its corporate documents, nor of any contractual obligation of DIAMANTE CABO and it will not result in the establishment or imposition of any lien over any of the assets or income of DIAMANTE CABO, except for that established in this instrument.

**f)** As of the date of execution of this AGREEMENT, and to the best of its knowledge, there is no, after carrying out the pertinent investigations, action, claim, suit, requirement or potential procedure pending or not resolution, before any court, governmental entity or arbitrator, which affects or may affect the legality, validity or enforceability of this AGREEMENT, the TRUST or the TRUSTEE's ownership of the PROPERTY except for the actions and judicial procedures that have been informed to the FIRST BENEFICIARY at this date.

**g)** No consent, authorization, application or any other act on behalf of any governmental authority or any other person is required in order to execute, amend, terminate, assign, deliver, comply or enforce the TRUST, nor to perfect or maintain the lien constituted thereby.

**h)** The individual executing this AGREEMENT on behalf of DIAMANTE CABO has the powers and authority as well as the required corporate authorizations to do so, as evidenced through public deed number [_____] granted before Mr. [_____], Notary Public No. [___] of [_____], which have not been revoked or limited in any manner whatsoever.

**i)** The Charter and By-Laws of DIAMANTE CABO include the legal provisions of section I of article 27 of the Constitution of the United Mexican States.

**j)** The purpose, use and enjoyment of the PROPERTY is for non-residential purposes, so long as it remains part of the TRUST ASSETS and, hence, does not require a permit from the Ministry of Foreign Affairs (*Secretaría de Relaciones Exteriores*) ("SRE"), in terms of article 11 and 12 of the Foreign Investment Law (*Ley de Inversión Extranjera*) ("LIE").

**k)** The PROPERTY is up to date in the payment of real estate taxes or any other governmental taxes and utilities to which the PROPERTY may be subject.

**l)** The PROPERTY complies with all environmental, health and safety norms applicable, and DIAMANTE CABO has no knowledge of **(i)** the occurrence of any event or the existence of any circumstance or conditions that may constitute or result in a breach of environmental, health and safety norms, and **(ii)** the PROPERTY being subject to any existing action, or to the best of the knowledge of DIAMANTE CABO to any potential action, exercised by or before any governmental authority in terms of any environmental, health or safety law applicable thereto, nor is there any legal basis for such action.

**m)** Appears to the execution of this agreement in order to amend the clauses of the TRUST in order for same to secure compliance with the

obligations of DIAMANTE CABO, pursuant to the Time Share Agreements (as defined below) that are held with the Time Share Buyers (as defined below).

    **2.**    The FIRST BENEFICIARY hereby represents, manifests and warrants that:

    **a)** It is a bank duly incorporated pursuant to the laws of Denmark.

    **b)** Its legal representative has all the corporate and legal powers and authority to execute this AGREEMENT, as evidenced through public deed number [_____] granted before Mr. [_____], Notary Public No. [___] of [_____], which have not been revoked or limited in any manner whatsoever.

    **c)** The TRUSTEE has unequivocally communicated to it the content and legal scope of section XIX of article 106 of the Credit Institutions Law (*Ley de Instituciones de Crédito*), as well as the legal provisions issued by the Central Mexican Bank (*Banco de México*).

    **d)** The FIRST BENEFICIARY will have no right over the use and enjoyment of the PROPERTY unless the proceeding of foreclosure is carried out in terms of the TRUST AGREEMENT, in the understanding that, in case the proceeding of foreclosure is carried out, the TRUST will have to receive an authorization from the Ministry of Foreign Affairs, considering that such limitation will not be deemed an estoppel nor diminish in any manner the rights of the FIRST BENEFICIARY in terms of the TRUST or the guaranty granted in same.

    **3.**    The TRUSTEE hereby represents, manifests and warrants that:

    **a)** It is a multiple banking institution, duly incorporated and authorized to act as such, pursuant to Mexican law.

    **b)** Its trustee delegate has all the corporate and legal powers and authority to execute this AGREEMENT, as evidenced through public deed number [_____] granted before Mr. [_____], Notary Public No. [___] of [_____], which have not been revoked or limited in any manner whatsoever.

    **c)** It is the legitimate owner of the PROPERTY, which is free and clear of all liens, (except for the EASEMENT), encumbrances, guaranties, options or claims on behalf of any third party.

    **4.**    DIAMANTE CABO, the FIRST BENEFICIARY and the TRUSTEE hereby represent, manifest and warrant that:

CONFIDENTIAL

     **a)** All the recitals stated hereby are true and correct and all the obligations that the parties are subject to are valid and enforceable.

As a result of the foregoing recitals and representations, the parties grant this instrument and agree to be bound pursuant to the following:

### CLAUSES

     **FIRST.** **TERMS AND DEFINITIONS**. The capitalized terms that are not defined hereby shall have the meaning ascribed in the TRUST AGREEMENT.

     **SECOND.** **AMENDMENTS TO THE TRUST AGREEMENT**. **(a)** The parties, by means of this AGREEMENT, agree to add the following definitions to the Clause First of the TRUST AGREEMENT as follows:

     "**BUILDING**": means every building built over the PROPERTY and which is part of the development [Diamante Cabo San Lucas].

     "**CONSTRUCTIONS**": means all the constructions and improvements which are carried out in terms of Clause [*] hereby.

     "**LOCAL CIVIL LAW**": means the Civil Code of Baja California Sur.

     "**OFFICIAL MEXICAN REGULATION**": means the official regulation number "NOM-029-SCFRI-2010".

     "**MAINTENANCE SERVICES**" means the services that are provided to the TIMESHARE BUYERS consisting of: **(i)** the provision of public services such as water, electricity, and gas **(ii)** maintenance, repair, renewal and replacement of equipment and furniture of the TIMESHARE UNITS; **(iii)** the payment of local and federal contributions, including property tax payments; **(iv)** water supply services, electricity, security, administration, general maintenance and repair of recreational areas that the TIMESHARE BUYERS have access to.

     "**TIMESHARE SELLER**": means DIAMANTE CABO in terms of the TIME SHARE AGREEMENT executed with each TIME SHARE BUYER.

     "**TIMESHARE BUYER**": means every person or entity who have held or hold a TIMESHARE AGREEMENT in order to provide TIMESHARE SERVICES.

     "**TIMESHARE AFFECTATION OF PROPERTY**": means the property regime of the BUILDINGS as well as any other recreational areas built over the BUILDINGS, in order to provide the TIMESHARE SERVICES, which are subject to the execution of a unilateral declaration according to the LOCAL CIVIL LAW.

**"TIMESHARE AGREEMENT"**: means the agreement entered by and between the TIMESHARE BUYER and DIAMANTE CABO, for the purpose of providing TIMESHARE SERVICES with respect to a specific TIMESHARE UNIT including its furniture and equipment, during a calendar year, as well as any other agreement that is concluded in the future resulting from a marketing scheme used by the DIAMANTE CABO accordingly.

**"TIMESHARE SERVICES"**: means the services that are to be provided to the TIMESHARE BUYERS in order to use the TIMESHARE UNIT which include accommodation in the modality of time-sharing or similar programs to be provided, directly or indirectly by DIAMANTE CABO, with respect with the TIMESHARE UNITS or with any unit located within the PROPERTY which the DIAMANTE CABO, directly or indirectly provide accommodation to the TIME SHARE BUYERS.

**"TIMESHARE UNIT"**: means any room, suite, department or any similar unit located within the BUILDING, which forms part of the TRUST ESTATE and on which the TIMESHARE SERVICES are provided pursuant to the unilateral declaration executed for such purpose.

**"TIMESHARE RULES"**: means the internal rules and regulations in order to establish certain obligations for the TIME SHARE BUYERS in order to use the TIME SHARE SERVICES.

**(b)** The parties agree to add the following sections to the Clause Fourth (Purpose of the Trust) of the TRUST AGREEMENT as follows:

*(l)*...

*(m)*...

**(n)** That the TRUSTEE and DIAMANTE CABO, prior authorization from the FIRST BENEFICIARY, form, from time, a timeshare regime over the TIMESHARE UNITS which are part of the PROPERTY pursuant to LOCAL CIVIL LAW, leaving DIAMANTE CABO bound to require any license, permit or authorization with the corresponding authorities in order to perform the TIME SHARE AFFECTATION OF PROPERTY. The terms and conditions of each BUILDING which is affected to a timeshare service, shall comply with all the regulations and applicable law.

**(o)** That the TRUSTEE, during the term of the TRUST AGREEMENT, allow Diamante Cabo to have the operation, administration, maintenance, and commercialization of the TIMESHARE UNITS, considering that during the time that the TIMESHARE UNITS are subject to a timeshare regime in accordance with LOCAL CIVIL LAW, all costs and expenses shall be borne by DIAMANTE CABO as it is established in the TIMESHARE AGREEMENT.

CONFIDENTIAL
DANSKE_0010539

**(p)** *DIAMANTE CABO shall perform any act that may be necessary to provide the TIME SHARE SERVICES, including any authorization or license that must be required with any governmental authority or the affectation of the PROPERTY to the time share regime. Notwithstanding the above, DIAMANTE CABO shall have a prior authorization from the FIRST BENEFICIARY for: (i) begin the sale and the performance of the TIMESHARE SERVICES as well as the Constructions in order to adequate any part of the Property for the TIMESHARE SERVICES, and (ii) perform any construction that may require substantial modification than those Constructions previously authorized for the timeshare services.*

**(q)** *During the term of the unilateral declaration, allow the TIMESHARE BUYERS to use the facilities of the PROPERTY in terms of the corresponding TIMESHARE AGREEMENT.*

**(r)** *DIAMANTE CABO or any of its affiliates or subsidiaries thereof, shall transfer all profits, interests and returns arising from the TIMESHARE AGREEEMENTS to the TRUST ACCOUNTS, or to any account that the FIRST BENEFICIARY sets for such purpose.*

**(s)** *That the TRUSTEE, in case of a default under the TRUST AGREEMENT and with respect to any account where there is an irrevocable instruction, instruct that any payment or fund that has been transferred to those accounts, be transferred directly to the account that the FIRST BENEFICIARY assigns for such purpose.*

**(t)** *Assign all the rights (not obligations) arising from the TIMESHARE AGREEMENTS that the TIMESHARE SELLER execute with each of the TIMESHARE BUYERS from time to time.*

**(c)** The parties agree to add the following sections to the Clause Fifth (Trust Estate) of the TRUST AGREEMENT as follows:

**(m)**…

**(n)**…

**(o)** *The buildings, renovations, adaptations and/or improvements that are to be made in the future to the PROPERTY or to the TIME SHARE UNITS that are affected, as the case may be, to the TRUST ESTATE.*

**(p)** *Any kind of profit, including without limitation, any payment made by the TIMESHARE BUYERS with respect to the TIMESHARE SERVICES and MAINTENANCE SERVICES.*

**(q)** *Any right or asset that is provided by the SETTLOR in the future with respect with any payment received for rendering services or for the sale of any unit within the PROPERTY.*

CONFIDENTIAL                                                                                                        DANSKE_0010540

**(d)** The parties agree to add the following Clause Twenty Eighth (Administration rights of the Trust Estate; Administration of the Time Share Services) of the TRUST AGREEMENT as follows:

**CLAUSE TWENTY EIGHTH. ADMINISTRATION RIGHTS OF THE TRUST ESTATE; ADMINISTRATION OF THE TIME SHARE SERVICES.**

*DIAMANTE CABO, with respect to the TIMESHARE SERVICES, shall pay all fees, costs and expenses arising from such services, provided that, unless there exists an instruction from the FIRT BENEFICIARY or there is an event of default in terms of the TRUST AGREEMENT (in which case all rights are of the FIRST BENEFICIARY), DIAMANTE CABO: **(i)** will be responsible for the sale and commercialization of the TIMESHARE SERVICES; **(ii)** will determine the prices and sale politics of the TIMESHARE SERVICES in the PROPERTY, complying in every moment with the applicable law; **(iii)** will be the only party responsible to determine and modify the terms and conditions of the TIMESHARE SERVICES; **(iv)** will manage, obtain and comply with every provision and authorization required for the affectation of the TIMESHARE UNITS under a timeshare regime and also for the commercialization, operation and administration of the TIMESHARE UNITS; **(v)** will make the corresponding payments of any kind, including duties, taxes and contributions, as well as any payment related with insurance policies of the PROPERTY, the TIMESHARE UNITS or any other asset which is located within the PROPERTY; **(vi)** in case a TIMESHARE UNIT suffers any damage that is covered by an insurance policy, DIAMANTE CABO shall perform any action necessary to claim the corresponding policy from the insurance company and deliver these to the TRUSTEE, who will apply such resources according the instructions made in writing from the FIRST BENEFICIARY; **(vii)** protect and ensure the rights of the TIMESHARE BUYERS for the event of an execution of the Trust Estate in terms of the TRUST AGREEMENT; **(viii)** will make all the necessary actions in order to continue providing the TIMESHARE SERVICES.*

**(e)** The parties agree to add the following Clause [*] (Constructions) of the TRUST AGREEMENT as follows:

**CLAUSE [*]. CONSTRUCTIONS.** *All works and constructions that are made to the TIMESHARE UNITS, the PROPERTY, or the BUILDINGS, will be supervised and managed by DIAMANTE CABO. DIAMANTE CABO shall have the obligation, in case of default under the TRUST AGREEMENT, to assign its rights related with any and all of the construction agreements in favor of the TRUSTEE, being the TRUSTEE empowered to make all decisions as it may deem necessary for the execution of such agreements.*

**(f)** The parties agree to add the following Clause [*] (Condominium Meetings; Voting Rights) of the TRUST AGREEMENT as follows:

**CLAUSE [*]. CONDOMINIUM MEETINGS; VOTING RIGHTS.** In any condominium meeting held in the Master Condominium or in any regime or sub-regime of the condominium units within the PROPERTY, the TRUSTEE shall have the right to vote every decision of the corresponding agenda without having an instruction of DIAMANTE CABO for such purposes. In case there exists an event of default in terms of the TRUST AGREEMENT, the FIRST BENEFICIARY shall be empowered to vote in any meeting held within the PROPERTY.

**(g)** The parties agree to add the following Clause [*] (Pledge Agreement) of the TRUST AGREEMENT as follows:

**CLAUSE [*]. PLEDGE AGREEMENT.** Notwithstanding the obligation of DIAMANTE CABO to affect all rights and assets to the TRUST ESTATE, it is hereby agreed that all the rights and assets that are not part of the TRUST ESTATE, shall be affected by the pledge agreement entered by Diamante Cabo, as it is described in the recital [*] of this Agreement.

**SECOND. DOMICILES.** For any notice or communication related with this AGREEMENT, the parties hereby designate the domiciles established in the TRUST AGREEMENTY.

**THIRD. NO NOVATION.** The execution of this Agreement hereunder does not constitute a novation, amendment, payment, satisfaction or extinction of the obligations under the TRUST AGREEMENT.

**FOURTH. GOVERNING LAW AND JURISDICTION.** This Agreement shall be construed in accordance with and governed by the laws of Mexico. For everything pertaining to this Agreement, the parties hereto irrevocably submit to the jurisdiction of the competent courts located in [*], [*], and of their respective domiciles and hereby expressly and irrevocably waive the right to any other jurisdiction they may respectively be entitled to.