# EXHIBIT 76

# PLEDGE AND SECURITY AGREEMENT

**PLEDGE AND SECURITY AGREEMENT** (the "Agreement"), dated as of April 26, 2013, made by **DIAMANTE CABO SAN LUCAS LLC**, a Delaware limited liability company ("Diamante Pledgor"), and **KENNETH A. JOWDY**, an individual ("Jowdy Pledgor"; together with Diamante Pledgor, collectively, the "Pledgors" and individually, a "Pledgor"), in favor of **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in the Kingdom of Denmark ("Lender").

## RECITALS

A.     Pledgors are members of, and owners of 100% of the beneficial interests in, Diamante Club, LLC a Delaware limited liability company (the "Company").

B.     Pursuant to that certain Loan Agreement dated March 10, 2006 between Diamante Cabo San Lucas S. De R.L. De CV, a Mexican limited liability company with variable capital ("Borrower") and Lehman Brothers Holdings Inc. ("Lehman") (together with all amendments supplements and restatements, the "Loan Agreement"), Lehman made a loan to Borrower in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) (the "Original Loan").  Capitalized terms used herein and not otherwise defined shall have those meanings given to them in the Loan Agreement;

C.     The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as Schedule 1 ("Original Loan Documents").

D.     Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Lender, as assignee, Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

E.     Lehman and Lender executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Borrower: Mexico) and the Pledge Agreement (Assets) in favor of Lender was perfected in accordance with Mexican law.

F.     Lender, Borrower and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and, in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to the Amended Loan Documents listed on Schedule 2 (as reaffirmed, amended and/or amended and restated, "2009 Amended Loan Documents").

G.     Among the several modifications made pursuant to the 2009 Amended Loan Documents, Lender, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("Original Note"), and Borrower, as the borrower

6571778-v3

DANSKE_0011741

under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

        (i)    Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty-Seven and 83/100 Dollars ($109,138,327.83) ("<u>Facility A Note</u>"); and

        (ii)    Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("<u>Facility B Note</u>").

H.    Lender, Borrower and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Amended Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Amended Loan Documents listed on <u>Schedule 3</u>, (as reaffirmed and amended, "<u>2010 Amended Loan Documents</u>," and together with the 2009 Amended Loan Documents, the "<u>Amended Loan Documents</u>"), which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

I.    Lender, Borrower and Guarantors agreed to extend the Maturity Date of the Loan to June 29, 2012 and modify certain applicable interest rates as more particularly set forth therein in that Extension Letter Agreement dated April 2, 2012.

J.    By that letter agreement dated June 29, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from June 29, 2012 to September 28, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein.

K.    By that letter agreement dated September 28, 2012, by and between Lender and Obligors, Lender agreed to extend the Maturity Date of the Loan from September 28, 2012 to December 31, 2012 and provided for certain other obligations of Borrower as more particularly set forth therein.

L.    By that letter agreement dated December 31, 2012, Lender and Obligors agreed to extend the Maturity Date of the Loan from December 31, 2012 to March 31, 2013 and provide for certain other obligations of Borrower, all as more particularly set forth therein.

M.    By that letter agreement dated February 15, 2013, Lender and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter.

N.    By that letter agreement dated March 29, 2013, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

O.    Subject to the terms and conditions set forth in that certain Second Amended and Restated Loan Agreement of even date herewith ("<u>Loan Agreement</u>"), Lender and Borrower

6571778-v3

CONFIDENTIAL

DANSKE_0011742

have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Lender; (ii) splitting the indebtedness evidenced by Facility B Note into (y) Third Substitute Promissory Note (Facility B) of even date herewith in the amount of $18,000,000 ("Third Facility B Note"); and (z) Promissory Note (Facility C) of even date herewith in the amount of $2,000,000 ("Facility C Note"); and (iii) advancing an additional $3,000,000 pursuant to Promissory Note (Facility D) of even date herewith ("Facility D Note", and together with the Facility A Note, Third Facility B Note, and Facility C Note, the "Note"), all as more particularly set forth in the Loan Agreement.  All such documents, amendments, reaffirmations and other instruments entered into in connection with such Agreement shall be referred to as the "2013 Modification Documents" as listed on Schedule 4, and together with the Amended Loan Documents, the "Loan Documents."

P.      Simultaneously with the execution and delivery hereof, the Pledgors (hereinafter defined) have executed and delivered that certain Payment Guaranty (the "Guaranty") for the benefit of Lender, guarantying the payment in full of the Guaranteed Obligations (as defined in the Guaranty).

Q.      As a condition precedent to Lender's advancing an additional $3,000,000 pursuant to the Facility D Note and entering into the 2013 Modification Documents, and in order to secure the Guaranteed Obligations, Lender has further required that Pledgors execute and deliver this Agreement to Lender.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to make the Loan, Pledgors hereby agree with Lender as follows:

1.      **Defined Terms**.  As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"Agreement" has the meaning ascribed to such term in the introductory paragraph, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"Borrower" has the meaning ascribed to such term in the Recitals.

"Code" means the Uniform Commercial Codes from time to time in effect in the State of New York or, as the context may require, the State of Delaware, or, as the context may require, the State of Connecticut, or, as the context may require, in effect in the State or States in which any Collateral is "located" for purposes of the Code.

"Collateral" means the Pledged Collateral and all Proceeds thereof.

"Diamante Pledgor" has the meaning ascribed to such term in the introductory paragraph.

"Guaranteed Obligations" has the meaning ascribed to such term in the Recitals.

-3-

CONFIDENTIAL

DANSKE_0011743

"Guaranty" has the meaning ascribed to such term in the Recitals.

"Jowdy Pledgor" has the meaning ascribed to such term in the introductory paragraph.

"Lender" has the meaning ascribed to such term in the introductory paragraph.

"Lien" means any mortgage, deed of trust, pledge, security interest, hypothecation, assignment, encumbrance, lien (statutory or other), or preference, priority, or other security agreement or preferential arrangement, charge, or encumbrance of any kind or nature whatsoever, including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction to evidence any of the foregoing.

"Loan" has the meaning ascribed to such term in the Recitals.

"Loan Agreement" has the meaning ascribed to such term in the Recitals.

"Loan Documents" has the meaning ascribed to such term in the Recitals.

"Note" has the meaning ascribed to such term in the Recitals.

"Pledged Collateral" has the meaning ascribed to such term in Section 2 hereof.

"Pledged Company Interests" means all of Pledgors' right, title and interest in the Company, together with any and all membership certificates evidencing ownership of such interests, and all claims, powers, privileges, benefits, remedies, voting rights, options or rights of any nature whatsoever which currently exist or may be issued or granted by the Company to Pledgors while this Agreement is in effect.

"Pledgor" or "Pledgors" has the meaning ascribed to such term in the introductory paragraph.

"Proceeds" means all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code, and, in any event, shall include, without limitation, all dividends or other income from the Pledged Company Interests, collections thereon or distributions with respect thereto.

2.    **Pledge; Grant of Security Interest.** Pledgors hereby pledge and grant to Lender, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations, a first priority security interest in all of Pledgor's right, title and interest to the following (collectively, the "Pledged Collateral"):

(i)    all Pledged Company Interests;

(ii)    all securities, security certificates, moneys or property representing the Pledged Company Interests, or representing dividends or interest on any of the Pledged

-4-

CONFIDENTIAL

DANSKE_0011744

Company Interests, or representing a distribution in respect of the Pledged Company Interests, or resulting from a split-up, revision, reclassification or other like change of the Pledged Company Interests or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Company Interests;

(iii)     all right, title and interest of Pledgors in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Company Interests and any other Collateral;

(iv)     all "accounts", "general intangibles", "instruments" and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

(v)     all Proceeds of any of the foregoing property of Pledgors (including, without limitation, any proceeds of insurance thereon, all "accounts", "general intangibles", "instruments" and "investment property", in each case as defined in the Code, constituting or relating to the foregoing).

3.     **Intentionally Deleted.**

4.     **Representations and Warranties.**     Pledgors hereby represent and warrant as of the date hereof that:

(a)     as of the date hereof, each Pledgor owns the Pledged Company Interests set forth opposite its name on Schedule 4 hereto;

(b)     no authorization, consent of or notice to any other Person (including, without limitation, any member, partner or creditor of either Pledgor or the Company) that has not been obtained is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement including, without limitation, the assignment and transfer by the Pledgors of any of the Collateral to Lender or, to each Pledgor's knowledge, the subsequent transfer thereof by Lender pursuant to the terms hereof;

(c)     the Pledged Company Interests constitute all the issued and outstanding membership interests in the Company;

(d)     Pledgors are the record and beneficial owners of, and have good title to, the Pledged Company Interests free of any and all Liens or options in favor of, or claims of, any other Person, except the Lien created by this Agreement, and the Pledged Company Interests have not previously been assigned, sold, transferred, pledged or encumbered (except pursuant to this Agreement);

(e)     upon delivery to Lender of this Agreement and upon the filing of the Form UCC-1 financing statements referred to in Section 12 hereof with the Delaware and Connecticut Secretaries of State, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Collateral, enforceable as such against all creditors of Pledgors and any

-5-

CONFIDENTIAL     DANSKE_0011745

Persons purporting to purchase any Pledged Company Interests and related proceeds from Pledgors, free from any adverse claim;

(f)     the principal place of business and chief executive office of Diamante Pledgor is, and for the period since Diamante Pledgor's formation has been, located at 131 Deer Hill Avenue, Suite B, Danbury, Connecticut 06811;

(g)     the exact names of Pledgors are, and at all times have been, as set forth in the introductory paragraph of this Agreement;

(h)     Diamante Pledgor is, and at all times has been, organized exclusively under the laws of the State of Delaware;

(i)     Jowdy Pledgor is a resident of the State of Connecticut; and

(j)     there currently exist no certificates, instruments or writings representing the Pledged Company Interests other than the certificates delivered to Lender.

5.     **Covenants.**  Pledgors covenant and agree with Lender that, from and after the date of this Agreement until the Guaranteed Obligations (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) are paid in full:

(a)     If a Pledgor shall, as a result of its ownership of Pledged Company Interests, become entitled to receive or shall receive any membership certificate (including, without limitation, any certificate representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any Pledged Company Interests, or otherwise in respect thereof, such Pledgor shall accept the same as Lender's agent, hold the same in trust for Lender and deliver the same forthwith to Lender in the exact form received, duly endorsed by the Pledgor to Lender, if required, together with an undated membership interest power covering such certificate duly executed in blank, to be held by Lender hereunder as additional security for the Guaranteed Obligations.  Any sums paid upon or in respect of the Pledged Company Interests upon the liquidation or dissolution of the Company shall be paid over to Lender to be held by it hereunder as additional security for the Guaranteed Obligations, and distributed in accordance with the provisions of the Loan Agreement, and in case any distribution of capital shall be made on or in respect of the Pledged Company Interests or any property shall be distributed upon or with respect to the Pledged Company Interests pursuant to the recapitalization or reclassification of the capital of the Company or pursuant to the reorganization thereof, the property so distributed shall be delivered to Lender to be held by it, subject to the terms hereof, as additional security for the Guaranteed Obligations and distributed in accordance with the provisions of the Loan Agreement.  If any sums of money or property so paid or distributed in respect of the Pledged Company Interests shall be received by a Pledgor, such Pledgor shall deliver the same forthwith to Lender and, until such money or property is paid or delivered to Lender, hold such money or property in trust for Lender, segregated from other funds of such Pledgor, as additional security for the Guaranteed Obligations.

CONFIDENTIAL

(b)      Without the prior written consent of Lender, Pledgors shall not, directly or indirectly (i) vote to enable, or take any other action to permit, the Company to issue any additional membership interests or to issue any other securities convertible into or granting the right to purchase or exchange for any membership interests in the Company, or (ii) except as permitted by the Loan Agreement, sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral, or (iii) create, incur, authorize or permit to exist any Lien or option in favor of or any claim of any Person with respect to any of the Collateral, or any interest therein, except for the Lien provided for by this Agreement.

(c)      At any time and from time to time, upon the written reasonable request of Lender, and at the sole expense of Pledgors, Pledgors shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such further actions as Lender may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted, including without limitation filing UCC financing or continuation statements, provided that the amount of the Guaranteed Obligations or the obligations of Pledgors hereunder shall not be increased, nor Pledgors' rights under the Loan Documents decreased, thereby. Pledgors hereby authorize Lender to file any such financing statement or continuation statement without the signature of Pledgors to the extent permitted by law. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral pursuant to this Agreement.

(d)      Pledgors will not create, incur or permit to exist, will defend the Pledged Company Interests against, and will take all such other action as is necessary to remove, any Lien or claim on or to the Pledged Company Interests, other than the Liens created hereby, and will defend the right, title and interest of Lender in, to and under the Pledged Company Interests against the claims and demands of all Persons whomsoever.

(e)      Pledgors will furnish to Lender from time to time statements and schedules further identifying and describing the Pledged Company Interests and such other reports in connection with the Pledged Company Interests as Lender may reasonably request, all in reasonable detail.

(f)      Diamante Pledgor will not, unless (i) it shall have given thirty (30) days' prior written notice to such effect to Lender and (ii) all action reasonably necessary or advisable, in Lender's reasonable opinion, to protect and perfect the Liens and security interests intended to be created hereunder with respect to the Pledged Company Interests shall have been taken, (A) change the location of its chief executive office or principal place of business from that specified in Section 4(f), or (B) change its name, identity or structure, or (C) reorganize or reincorporate under the laws of another jurisdiction.

(g)      Pledgors shall take and shall cause the Company to take any and all actions either necessary or reasonably requested by Lender to ensure compliance with the Loan Agreement, this Agreement, and the other Loan Documents.

-7-

CONFIDENTIAL                                                                              DANSKE_0011747

6.      **Intentionally Deleted.**

7.      **Cash Dividends; Voting Rights.**  Unless and until an Event of Default shall have occurred and be continuing, but subject to the terms of the Loan Documents, Pledgors shall be permitted to receive all membership interest distributions or cash dividends paid in the normal course of business of the Company and to exercise all voting and membership interests with respect to the Pledged Company Interests, provided that no vote shall be cast or right exercised or other action taken which would impair the Collateral or which would be inconsistent with or result in any violation of any provision of the Loan Agreement, the Note, this Agreement or any other Loan Documents, without Lender's approval.

8.      **Rights of Lender.**

(a)      If an Event of Default shall occur and be continuing, Lender shall have the right to receive any and all income, cash dividends, distributions, proceeds or other property received or paid in respect of the Pledged Company Interests and the other Collateral and make application thereof to the Guaranteed Obligations, in such order as Lender, in its sole discretion, may elect, in accordance with the Loan Documents.  If an Event of Default shall exist, then all such Pledged Company Interests at Lender's option, shall be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and membership and other rights pertaining to the Pledged Company Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Pledged Company Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Company Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of the Company or upon the exercise by Pledgors or Lender of any right, privilege or option pertaining to such Pledged Company Interests, and in connection therewith, the right to deposit and deliver any and all of the Pledged Company Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b)      The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Pledgors or against any other Person which may be or become liable in respect of all or any part of the Guaranteed Obligations or against any other security therefor, guarantee thereof or right of offset with respect thereto.  Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgors or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c)      Upon satisfaction in full of the Guaranteed Obligations and payment of all amounts owed on the Note, Lender's rights under this Agreement shall terminate and Lender shall execute and deliver to Pledgors UCC-3 termination statements or similar documents and

-8-

CONFIDENTIAL

DANSKE_0011748

agreements to terminate all of Lender's rights under this Agreement and all other Loan Documents and deliver any certificates evidencing the Pledged Company Interests to Pledgors.

(d)     Pledgors also authorizes Lender, at any time and from time to time, to execute, in connection with the sale provided for in Sections 9 or 10 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

(e)     The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers. Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or Lenders shall be responsible to Pledgors for any act or failure to act hereunder, except for its or their gross negligence or willful misconduct.

(f)     If Pledgors fail to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of Lender incurred in connection with such performance or compliance, together with interest at the Default Rate if such expenses are not paid on demand, shall be payable by Pledgors to Lender on demand and shall constitute obligations secured hereby.

## 9.    Remedies.

(a)     If an Event of Default shall occur and be continuing, Lender may exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Guaranteed Obligations:

(i)     all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral as if Lender were the sole and absolute owner thereof (and Pledgors agree to take all such action as may be appropriate to give effect to such right);

(ii)     Lender may make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, any of the Collateral; and

(iii)     Lender in its discretion may, in its name or in the name of Pledgors or otherwise, demand, sue for, collect, direct payment of or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

(b)     Without limiting the generality of the foregoing, if an Event of Default shall exist, Lender, without demand of performance or other demand, presentment, protest,

-9-

CONFIDENTIAL                                                                                                 DANSKE_0011749

advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby or by any of the other Loan Documents) to or upon Pledgors, the Company, Borrower or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Lender or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk. Lender shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further notice. Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgors, which right or equity of redemption is, to the extent permitted by law, hereby waived or released. Lender shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Lender hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Guaranteed Obligations, in such order as Lender may elect, and only after such application and after the payment by Lender of any other amount required by any provision of law, including, without limitation, Sections 9-610 and 9-615 of the Code, need Lender account for the surplus, if any, to Pledgors. To the extent permitted by applicable law, Pledgors waive all claims, damages and demands they may acquire against Lender arising out of the exercise by Lender of any of its rights hereunder, except for any claims, damages and demands they may have against Lender arising from the willful misconduct or gross negligence of Lender or its affiliates, or any agents or employees of the foregoing. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition.

(c)     The rights, powers, privileges and remedies of Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender at law or in equity. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender hereunder.

**10.     Private Sales.**

(a)     Pledgors recognize that Lender may be unable to effect a public sale of any or all of the Pledged Company Interests, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws or otherwise, and may, if an Event of Default exists, be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire

-10-

CONFIDENTIAL

such securities for their own account for investment and not with a view to the distribution or resale thereof.  Pledgors acknowledge and agree that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale.  Lender shall be under no obligation to delay a sale of any of the Pledged Company Interests for the period of time necessary to permit the Company or Pledgors to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if the Company or Pledgors would agree to do so.

(b)     Pledgors further shall use their reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Pledged Company Interests pursuant to this Section 10 valid and binding and in compliance with any and all other requirements of applicable law.  Pledgors further agree that a breach of any of the covenants contained in this Section 10 will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 10 shall be specifically enforceable against Pledgors, and Pledgors hereby waive and agree not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred or exists under the Loan Agreement.

(c)     The Code states that Lender is able to purchase the Pledged Company Interests only if they are sold at a public sale. Lender has advised Pledgor that SEC staff personnel have issued various No-Action Letters describing procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the Code, yet not public for purposes of Section 4(2) of the Securities Act of 1933.  The Code permits Pledgors to agree on the standards for determining whether Lender has complied with its obligations under Article 9.  Pursuant to the Code, Pledgors specifically agree (x) that they shall not raise any objection to Lender's purchase of the Pledged Company Interests (through bidding on the obligations or otherwise) and (y) that a foreclosure sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the Code; (ii) will be considered commercially reasonable notwithstanding that Lender has not registered or sought to register the Pledged Company Interests under the Securities Laws, even if Pledgors or the Company agree to pay all costs of the registration process; and (iii) shall be considered to be commercially reasonable notwithstanding that Lender purchases the Pledged Company Interests at such a sale.

(d)     Pledgors agree that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Pledged Company Interests sold by Lender pursuant to this Agreement.  Lender, may, in its sole discretion, among other things, accept the first offer received, or decide to approach or not to approach any potential purchasers. Without in any way limiting Lender's right to conduct a foreclosure sale in any manner which is considered commercially reasonable, Pledgors hereby agree that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives, to the extent permitted by law, any right to contest any such sale:

(i)     Lender conducts the foreclosure sale in the State of New York,

-11-

CONFIDENTIAL

DANSKE_0011751

(ii)     The foreclosure sale is conducted in accordance with the laws of the State of New York,

(iii)     Not more than ten (10) business days before, and not less than five (5) business days in advance of the foreclosure sale, Lender notifies Pledgors at the address set forth herein of the time and place of such foreclosure sale,

(iv)     The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court located in New York City or such other New York State Court having jurisdiction over the Collateral on any Business Day between the hours of 9 a.m. and 5 p.m.,

(v)     The notice of the date, time and location of the foreclosure sale is published in the <u>New York Times</u> or <u>The Wall Street Journal</u> (or if the <u>New York Times</u> and <u>The Wall Street Journal</u> are no longer published, such other newspaper widely circulated in New York, New York) for seven (7) consecutive days prior to the date of the foreclosure sale, and

(vi)     Lender sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices located in the States of Delaware and Connecticut conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(e)     Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market.  The Company hereby waives, to the extent permitted by law, any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Guaranteed Obligations, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

**11.     Limitation on Duties Regarding Collateral.**  Lender's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Code or otherwise, shall be to deal with it in the same manner as Lender deals with similar securities and property for its own account.  Neither Lender nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgors or otherwise.

**12.     Financing Statements; Other Documents.**  Pledgors hereby authorize Lender to file UCC-1 financing statements with respect to the Collateral.  Pledgors agree to deliver any other document or instrument which Lender may reasonably request with respect to the Collateral for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted.

6571778-v3

CONFIDENTIAL

DANSKE_0011752

**13.**     **Attorney-in-Fact.**  Without limiting any rights or powers granted by this Agreement to Lender, while an Event of Default exists, Lender is hereby appointed, which appointment as attorney-in-fact is irrevocable and coupled with an interest, the attorney-in-fact of Pledgors for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof including, without limitation:

(a)     to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)     to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (a) above;

(c)     to file any claims or take any action or institute any proceedings that the Lender may reasonably deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Lender with respect to any of the Collateral; and

(d)     to execute, in connection with the sale provided for in Section 9 or 10, any endorsement, assignments, or other instruments of conveyance or transfer with respect to the Collateral.

If so requested by Lender, Pledgors shall ratify and confirm any such sale or transfer provided for in Section 9 or 10 by executing and delivering to Lender, at Pledgors' expense, all proper deeds, bills of sale, instruments of assignment, conveyance of transfer and releases as may be reasonably designated in any such request.

**14.**     **Intentionally Deleted.**

**15.**     **Miscellaneous.**

(a)     <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)     <u>Headings</u>.  The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

(c)     <u>No Waiver; Cumulative Remedies</u>.  Lender shall not by any act (except by a written instrument pursuant to Section 15(d)), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.  No failure to exercise, nor any delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or

6571778-v3

CONFIDENTIAL

DANSKE_0011753

privilege.  A waiver by Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have on any future occasion.  The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)     Waivers and Amendments; Successors and Assigns.  None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought.  This Agreement shall be binding upon and shall inure to the benefit of Pledgors and the respective permitted successors and assigns of Pledgors and shall be binding upon and inure to the benefit of Lender and its successors and assigns; provided Pledgors shall not have any right to assign their rights hereunder, and any attempted assignment by Pledgors shall be null and void.  The rights of Lender under this Agreement shall automatically be transferred to any permitted transferee to which Lender transfers the Note and Loan Agreement.

(e)     Notices.  Notices given hereunder to be effective shall be in writing addressed or transmitted to any party hereto at the address or facsimile number of such party set forth below, and shall be deemed to have been duly given or made in accordance with the terms and provisions of the Loan Agreement.

| | |
|---|---|
| To Pledgors: | Diamante Cabo San Lucas, LLC<br>131 Deer Hill Avenue, Suite B<br>Danbury, Connecticut  06811 |
| | and |
| | Kenneth A. Jowdy<br>11 Fairmount Drive<br>Danbury, CT 06810 |
| With a copy to: | Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Attn:  Laurence Markowitz, Esq. |
| To Lender: | Danske Bank A/S London Branch<br>London Branch<br>75 King William Street<br>London EC4N 7DT<br>Attn:  Mr. Jovan Atkinson<br>Telecopy:  +44 207 410 8001 |
| And with a copy to: | Venable LLP<br>750 E. Pratt Street<br>Baltimore, Maryland  21202<br>Attention:  Kelly Shubic Weiner, Esq. |

-14-

6571778-v3

Telecopy:  (410) 224-7742

(f)     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law principles.

(g)     Submission to Jurisdiction.  The provisions of Section 20.11 of the Loan Agreement are hereby incorporated herein by reference, except that all references to "Borrower" therein shall be deemed to be to "Pledgors".

(h)     Agents.  Lender may employ agents and attorneys-in-fact in connection herewith and shall not be responsible for their actions except for the gross negligence or willful misconduct of any such agents or attorneys-in-fact.

(i)     Irrevocable Authorization and Instruction to the Company.  Pledgors hereby authorize and instruct the Company and any servicer of the Loan to comply with any instruction received by any such Person from Lender in writing that (i) states that an Event of Default has occurred and is continuing and (ii) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from Pledgors, and Pledgors agree that the Company and any servicer shall be fully protected in so complying.

(j)     Counterparts.  This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

(k)     **WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION. PLEDGORS AND LENDER EACH HEREBY AGREES TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGORS AND LENDER.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  PLEDGORS AND LENDER EACH ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO EACH PARTY TO ENTER INTO A BUSINESS RELATIONSHIP WITH THE OTHER PARTY.  EACH PARTY REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

-15-

6571778-v3

                                                                 DANSKE_0011755

(l)    <u>Acknowledgment and Consent</u>.   Pledgors shall cause the Company to execute and deliver to Lender an Acknowledgment and Consent with respect to this Agreement in the form of <u>Exhibit A</u> in connection with the execution and delivery of this Agreement.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]

6571778-v3

CONFIDENTIAL                                                                                                 DANSKE_0011756

*[Signature Page to Pledge and Security Agreement]*

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

**PLEDGORS:**

DIAMANTE CABO SAN LUCAS, LLC,
a Delaware limited liability company

By: _____
Name: Kenneth A. Jowdy
Title: Managing Member


_____
Kenneth A. Jowdy, individually

DANSKE_0011757

**Schedule 1**
**Original Loan Documents**

(All dated as of March 10, 2006)

1. Loan Agreement by and between Borrower and Lehman

2. Letter Agreement dated May 23, 2006 between Lehman and Borrower modifying the Original Loan Agreement

3. Promissory Note in the principal amount of $125,000,000 by Borrower in favor of Lehman

4. Irrevocable Guarantee Trust Agreement by Borrower in favor of Lehman

5. Deed No. 65,011 (evidencing the conveyance of the Property to the Trust)

6. Assignment of Leases and Rents by Borrower to Lehman

7. Completion Guaranty by Kenneth Jowdy in favor of Lehman

8. Recourse Guaranty by Kenneth Jowdy in favor of Lehman

9. Payment Guaranty by Diamante Cabo San Lucas, Kenneth Jowdy, Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC in favor of Lehman

10. Pledge Agreement (Assets) by Borrower in favor of Lehman

11. Pledge Agreement (Membership Interests in Borrower: US) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

12. UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 11 above

13. Pledge Agreement (Membership Interests in Borrower: Mexico) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

14. Pledge Agreement (Membership Interests in Diamante Cabo San Lucas) by Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC and Kenneth Jowdy in favor of Lehman

-18-

CONFIDENTIAL   DANSKE_0011758

15.     UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 14 above

16.     Environmental Indemnity Agreement by Borrower and Kenneth Jowdy in favor of Lehman

17.     Omnibus Assignment by Borrower to Lehman

-19-

CONFIDENTIAL                                                                                                   DANSKE_0011759

## Schedule 2
## 2009 Amended Loan Documents

1.   Amended and Restated Loan Agreement (Budget attached as Exhibit A)

2.   Spanish Translation of Amended and Restated Loan Agreement

3.   Note Splitter and Modification Agreement

4.   Substitute Promissory Note (Facility A) - $109,138,327.83

5.   Substitute Promissory Note (Facility B) - $16,000,000.00

6.   Amended and Restated Irrevocable Guaranty Trust Agreement (Mexican Law)

7.   English Translation of Amended and Restated Irrevocable Guaranty Trust Agreement

8.   Reaffirmation of Payment Guaranty

9.   Reaffirmation of Completion Guaranty

10.  Reaffirmation of Recourse Guaranty

11.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Borrower)

12.  Reaffirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

13.  Reaffirmation of Environmental Indemnity Agreement

14.  Reaffirmation of Omnibus Assignment

15.  Reaffirmation of Assignment of Leases and Rents

16.  Waiver of Claims and Release Agreement

17.  Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

18.  UCC-1 Financing Statements (Debtors: PF Ventures, LLC (Connecticut) and David Boyden (Utah))

     A.   PF Ventures – filed with the Connecticut Secretary of State as File Number 2683094

6571778-v3

CONFIDENTIAL                                                   DANSKE_0011760

B.    Boyden – filed with the Utah Department of Commerce as File Number 359857200902

19.    UCC-3 Financing Statement Amendments (assigning UCC interests from Lehman Brothers Holdings Inc. to Lender)

A.    Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007960-5)

B.    Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007961-7)

C.    Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

D.    Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

E.    Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

F.    CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

G.    KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

20.    UCC-3 Financing Statement Amendments (correcting debtor information and organizational identification numbers for the following debtors)

A.    Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

B.    Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

C.    Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

D.    CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

E.    KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

21.    Amendment to Pledge Agreement (Partnership Interests in Borrower) (Mexican Law)

22.    Notice of Assignment of Bank Accounts in Favor of Trustee (Mexican Law)

23.    Notice of Assignment of (Performance) Bond in Favor of Trustee (Mexican Law)

-21-

6571778-v3

24.   Notice of Assignment of (Construction and Service) Agreements in Favor of Trustee (Mexican Law)

6571778-v3

CONFIDENTIAL

DANSKE_0011762

## Schedule 3
## 2010 Amended Loan Documents

1.  First Amendment to Amended and Restated Loan Agreement and Modification Agreement (Budget attached as Exhibit A)

2.  Spanish Translation of Amended First Amendment to Amended and Restated Loan Agreement and Modification Agreement

3.  First Amendment to Substitute Promissory Note (Facility B) - $20,000,000.00

4.  Confirmation of Payment Guaranty

5.  Confirmation of Completion Guaranty

6.  Confirmation of Recourse Guaranty

7.  Confirmation of Pledge and Security Agreement (Membership Interests in Borrower)

8.  Confirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

9.  Confirmation of Environmental Indemnity Agreement

10. Confirmation of Omnibus Assignment

11. Confirmation of Assignment of Leases and Rents

12. Annotation to Trust

6571778-v3

CONFIDENTIAL                                                                    DANSKE_0011763

## SCHEDULE 4
### 2013 Modification Documents

1.  Second Amended and Restated Loan Agreement by and between Borrower, Borrower Parties, and Lender.

2.  Second Amendment to Irrevocable Guaranty Trust Agreement (Spanish and English)

3.  Note Splitter and Modification Agreement between Borrower, Kenneth A. Jowdy, Diamante Member, and Lender.

4.  Second Substitute Promissory Note (Facility A) - $123,500,000.00

5.  Third Substitute Promissory Note (Facility B) - $18,000,000.00

6.  Promissory Note (Facility C) - $2,000,000.00

7.  Promissory Note (Facility D) - $3,000,000.00

8.  Pledgor in Possession Pledge (Mexico Law)

9.  Acknowledgement of Debt (Mexico Law)

10. Termination of Assignment of Leases and Rents (US Law)

11. Termination of U.S. Pledge and Security Agreement (Membership Interests in Borrower)

12. Reaffirmation of Completion Guaranty

13. Reaffirmation of Recourse Guaranty

14. Reaffirmation of Payment Guaranty

15. Reaffirmation of Pledge Agreement (Membership Interests in Diamante Member)

16. Reaffirmation of Environmental Indemnity Agreement

17. Reaffirmation of Omnibus Assignment

18. Reaffirmation of Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

19. Payment Guaranty by Diamante Club, LLC, Jowdy, and Diamante Member

20. Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante Club, LLC)

CONFIDENTIAL

21.     Payment Guaranty by Diamante CSL, LLC, Jowdy, and Diamante Member

22.     Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante CSL, LLC)

23.     UCC-1 Financing Statements (Debtor: Diamante Member) covering interests in Diamante Club, LLC and Diamante CSL, LLC

24.     UCC-1 Financing Statements (Debtor: Kenneth A. Jowdy) covering interests in Diamante Club, LLC and Diamante CSL, LLC

25.     UCC-3 Amendments

26.     Deposit Account Control Agreement for Wells Fargo Income Account

27.     Mandate Agreements for four (4) Banorte Income and Operating Accounts

DANSKE_0011765

## Schedule 5
## Description of Pledged Company Interests

| Issuer | Owner | Class of Membership Interest | Percentage of Membership Interests |
| --- | --- | --- | --- |
| Diamante Club | Diamante Cabo San Lucas LLC | Membership Interest | 99.9% |
| Diamante Club | Kenneth A. Jowdy | Membership Interest | .1% |

-26-

6571778-v3

## EXHIBIT A

FORM OF ACKNOWLEDGMENT AND CONSENT

Diamante Club, LLC hereby acknowledges receipt of a copy of the foregoing Pledge and Security Agreement and agrees that the Pledgors are bound thereby. Diamante Club, LLC agrees to notify Lender promptly in writing of the occurrence of any of the events described in Section 5(a) of said Pledge Agreement.

Dated: April _____, 2013

**BY:**

DIAMANTE CLUB, LLC a Delaware limited liability company

By: _____
Name: Kenneth A. Jowdy
Title: Managing Member

-27-

6571778-v3

CONFIDENTIAL

DANSKE_0011767