# EXHIBIT 78

## PLEDGE AND SECURITY AGREEMENT
### (US Accounts)

**THIS PLEDGE AND SECURITY AGREEMENT** (this "**Security Agreement**") is made as of this 2̲6̲ day of April, 2013, by **DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV**, a Mexican limited liability company, with variable capital ("**Pledgor**"), in favor of **DANSKE BANK A/S, LONDON BRANCH**, the London Branch of a company incorporated in the Kingdom of Denmark ("**Secured Party**"), whose address is 75 King William Street, London EC4N 7DT.

### Recitals

A.     On March 10, 2006, Lehman Brothers Holdings Inc. ("**Lehman**") made a loan to Pledgor in the original principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) ("**Original Loan**") to be used to fund certain acquisition and pre-development costs in connection with that certain resort project located in the City of Cabo San Lucas, Baja California Sur, Mexico.

B.     The Original Loan is evidenced and secured by loan documents dated March 10, 2006 and identified on the Schedule of Original Loan Documents attached hereto as <u>Exhibit A</u> ("**Original Loan Documents**").

C.     Pursuant to that certain Omnibus Assignment and Assumption dated January 13, 2009 by and between Lehman, as assignor, and Secured Party, as assignee, Lehman assigned to Secured Party, and Secured Party assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents.

D.     Lehman and Secured Party executed certain assignment agreements dated February 27, 2009 whereby the assignment of Lehman's rights under the Original Trust Agreement, the Pledge Agreement (Membership Interests in Pledgor: Mexico) and the Pledge Agreement (Assets) in favor of Secured Party was perfected in accordance with Mexican law.

E.     Secured Party, Pledgor and Guarantors agreed to modify certain terms and conditions of the Original Loan Documents and, in connection therewith, reaffirmed, amended and/or amended and restated the Original Loan Documents pursuant to the Amended Loan Documents listed on <u>Exhibit B</u> (as reaffirmed, amended and/or amended and restated, "**2009 Amended Loan Documents**").

F.     Among the several modifications made pursuant to the 2009 Amended Loan Documents, Secured Party, as the holder of that certain Promissory Note dated March 10, 2006 in the original principal amount of $125,000,000.00 ("**Original Note**"), and Pledgor, as the borrower under the Original Note, agreed to split the indebtedness evidenced by the Original Note into two (2) separate obligations of indebtedness as evidenced by:

6651035-v2

                                                                                   DANSKE_0011813

    (i)    Substitute Promissory Note (Facility A) dated as of March 6, 2009 in the amount of One Hundred Nine Million One Hundred Thirty-Eight Thousand Three Hundred Twenty-Seven and 83/100 Dollars ($109,138,327.83) ("**Facility A Note**"); and

    (ii)    Substitute Promissory Note (Facility B) dated as of March 6, 2009 in the amount of Sixteen Million and 00/100 Dollars ($16,000,000.00) ("**Facility B Note**").

    G.    Secured Party, Pledgor and Guarantors agreed to further modifications of certain terms and conditions of the Original Loan Documents and 2009 Amended Loan Documents, and in connection therewith reaffirmed and amended certain of the Original Loan Documents and 2009 Amended Loan Documents listed on <u>Exhibit C</u>, (as reaffirmed and amended, "**2010 Amended Loan Documents**," and together with the 2009 Amended Loan Documents, the "**Amended Loan Documents**"), which amendments include, *inter alia*, increasing the principal balance available under Facility B Note from $16,000,000 to $20,000,000.

    H.    Secured Party, Pledgor and Guarantors agreed to extend the Maturity Date of the Loan to June 29, 2012 and modify certain applicable interest rates as more particularly set forth therein in that Extension Letter Agreement dated April 2, 2012.

    I.    By that letter agreement dated June 29, 2012, by and between Secured Party and Obligors, Secured Party agreed to extend the Maturity Date of the Loan from June 29, 2012 to September 28, 2012 and provided for certain other obligations of Pledgor as more particularly set forth therein.

    J.    By that letter agreement dated September 28, 2012, by and between Secured Party and Obligors, Secured Party agreed to extend the Maturity Date of the Loan from September 28, 2012 to December 31, 2012 and provided for certain other obligations of Pledgor as more particularly set forth therein.

    K.    By that letter agreement dated December 31, 2012, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from December 31, 2012 to March 31, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

    L.    By that letter agreement dated February 15, 2013, Secured Party and Obligors agreed to advance up to $2,000,000 under Facility B in accordance with the terms and conditions set forth in that 2013 Additional Advance Letter.

    M.    By that letter agreement dated March 29, 2013, Secured Party and Obligors agreed to extend the Maturity Date of the Loan from March 31, 2013 to April 15, 2013 and provide for certain other obligations of Pledgor, all as more particularly set forth therein.

    N.    Subject to the terms and conditions set forth in that certain Second Amended and Restated Loan Agreement of even date herewith ("<u>Loan Agreement</u>"), Secured Party, Pledgor and Guarantors have agreed to certain amendments, modifications and extensions, including but not limited to: (i) increasing the principal indebtedness of Facility A Note to $123,500,000 to reflect the capitalization of all accrued interest thereon and on Facility B, together with certain costs and expenses of Secured Party; and (ii) splitting the indebtedness evidenced by Facility B

CONFIDENTIAL

Note into (y) Second Substitute Promissory Note (Facility B) of even date herewith in the amount of Eighteen Million Dollars; and (z) Promissory Note (Facility C) of even date herewith, in the amount of $2,000,000; and (iii) advancing an additional loan in the amount of $3,000,000 pursuant to Promissory Note (Facility D) of even date herewith in the principal amount of Three Million Dollars ($3,000,000), all as more particularly set forth herein. All such documents, amendments, reaffirmations and other instruments entered into in connection with this Agreement shall be referred to as the "**2013 Modification Documents**" as listed on <u>Exhibit D</u>, and together with the Amended Loan Documents, the "**Loan Documents**." All such amounts advanced pursuant to the Loan Documents shall be referred to as the "**Loan**."

O.     As one of the conditions to making the Loan, Secured Party is requiring Pledgor to grant a continuing, first priority, exclusive security interest in the Accounts (hereinafter defined) and all of Pledgor's rights represented by the Accounts, to the Secured Party to secure the repayment and performance of the indebtedness, liabilities and obligations of Pledgor to the Secured Party under the Loan Documents.

**NOW, THEREFORE**, for and in consideration of the Loan, Secured Party's reliance hereon and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, and in order to secure the prompt payment and performance of all obligations of the Pledgor to Secured Party under the terms of the Loan Documents, and the performance by the Pledgor of all of the terms, conditions, and provisions of this Security Agreement (collectively hereinafter the "<u>Obligations</u>"), Pledgor and Secured Party hereby agree as follows:

1.     **Security Interest.**  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor pledges, assigns and grants to Secured Party a first priority security interest and lien in the Collateral (hereinafter defined) to secure the payment and the performance of the Obligations.

2.     **Collateral.**  The security interest is granted in the following property (the "<u>Collateral</u>"):

A.     **Bank Accounts:** The bank accounts, as more specifically described on <u>Schedule I</u> attached and incorporated herein by reference, including al similar deposit accounts owned by Pledgor and all replacements and substitutes therefor, and all proceeds thereof, (the "<u>Accounts</u>"), held by Wells Fargo Bank, N.A. ("<u>Depository</u>"), with all property now or hereafter held in the Accounts, specifically including but not limited to all deposit accounts and cash and proceeds thereof.

B.     **Proceeds.**  All additions, substitutes and replacements for and proceeds of the collateral described in Paragraph 2A above (including all income and benefits resulting from any of the above, including interest). Subject to the limitations on value described in Paragraph 7A herein, any cash proceeds shall be held in trust for Secured Party and upon request shall be delivered immediately to Secured Party.

Pledgor may provide additional collateral from time to time hereunder as additional security for the Obligations, and may from time to time with the prior written consent of Secured

6651035-v2

Party, which consent shall not be unreasonably withheld, sell or otherwise dispose of any Collateral provided that Pledgor provides Secured Party with substitute collateral.  At the time of each addition or substitution of Collateral, the accounts added or substituted shall be identified on a Pledge Certificate, substantially in the form of Schedule II attached hereto (the "Pledge Certificate"), and delivered to Secured Party.  Subject to the limitations on value described in Paragraph 7A herein, all such additional and/or substituted Collateral and all proceeds thereof shall be Collateral for purposes of this Security Agreement, and shall secure the Obligations in the same manner as the Collateral for which it is added to and/or substituted.

3.     **Pledgor's Warranties.**  The Pledgor hereby represents and warrants to Secured Party as follows:

A.     **Financing Statements.**  No financing statement covering the Collateral is or will be on file in any public office, except the financing statements filed by Secured Party pursuant to this Security Agreement, and no security interest, other than as herein created, has attached or been perfected in the Collateral or any part thereof.

B.     **Ownership.**  The Pledgor owns the Collateral free from any setoff, claim, restriction, lien, security interest or encumbrance except liens for taxes not yet due and payable and the security interest hereunder.

C.     **Power and Authority.**  Pledgor has full power and authority to make this Security Agreement, and all necessary consents and approvals of any persons, entities, governmental or regulatory authorities and securities exchanges have been obtained to effectuate the validity of this Security Agreement.  Pledgor acknowledges that Pledgor will benefit from Secured Party making the Loan to Pledgor and further acknowledges that but for Pledgor's execution and delivery of this Security Agreement, Secured Party would not make the Loan to Pledgor.

4.     **Pledgor's Covenants.**   Until full payment and performance of all of the Obligations, unless Secured Party otherwise consents in writing:

A.     **Obligation and This Security Agreement.**  Pledgor shall perform all of its agreements herein and in any other agreements between it and Secured Party.

B.     **Ownership of Collateral.**  Pledgor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Secured Party.  Pledgor shall keep the Collateral free from all liens and security interests except those for taxes not yet due and payable and the security interest hereby created.

C.     **Secured Party's Costs.**  The Pledgor shall pay all reasonable costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Security Agreement, and preserve, defend, enforce and collect the Collateral, including but not limited to taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales. Whether the Collateral is or is not in Secured Party's possession, and without any obligation to do so and without waiving a Pledgor's default for failure to make any such payment, Secured

6651035-v2

Party at its option may pay any such reasonable costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Obligations and bear interest at the rate applicable to the Obligations. The Pledgor agrees to reimburse Secured Party on demand for any costs so incurred.

       **D.   Information and Inspection.** Pledgor shall (i) promptly furnish Secured Party any information with respect to the Collateral requested by Secured Party; (ii) allow Secured Party or its representatives to inspect and copy, or furnish Secured Party or its representatives with copies of all records relating to the Collateral; (iii) promptly furnish Secured Party or its representatives with any other information Secured Party may reasonably request; and (iv) insure that Secured Party has all electronic access to the Accounts for purposes of monitoring its collateral.

       **E.   Additional Documents.** The Pledgor shall sign and deliver any documents furnished by Secured Party which are necessary or desirable in the sole, but reasonable, judgment of Secured Party to obtain, maintain and perfect the security interest hereunder and to enable Secured Party to comply with any federal or state law in order to obtain or perfect Secured Party's interest in the Collateral or to obtain proceeds of the Collateral.

       **F.   Notice of Changes.** Pledgor shall notify Secured Party immediately of (i) any material change in the Collateral, (ii) a change in a Pledgor's residence or location, and (iii) a change in any matter warranted or represented by a Pledgor in this Security Agreement, or in any agreements, documents or instruments furnished to Secured Party pursuant to this Security Agreement.

       **G.   Possession of Collateral.** Pledgor shall deliver a copy of this Security Agreement (or other notice acceptable to Secured Party) to the Depository, or any other person in possession of any of the Collateral or on whose books the interest of the Pledgor in the Collateral appears, and such delivery shall constitute notice to such person of Secured Party's security interest in the Collateral and shall constitute Pledgors' instruction to such person to note Secured Party's security interest on their books and records, or deliver to Secured Party certificates or other evidence of the Collateral promptly upon Secured Party's request. Additionally Pledgor acknowledges and agrees that no later than thirty (30) days after the date hereof, Pledgor shall execute and deliver that certain Control Agreement in the form attached hereto as <u>Exhibit 4(G)</u> ("<u>Control Agreement</u>") to perfect the interest of Secured Party in the Accounts noted as "Income Accounts" on Schedule I attached hereto. No later than five (5) business days after receipt of notice from Secure Party or its representative requiring delivery of Control Agreements with respect to any other Accounts (operating or otherwise), Pledgor shall sign and deliver a Control Agreement in the form required by Secured Party to perfect the Secured Party's security interest therein. Pledgor shall deliver all investment securities and other instruments and documents which are a part of the Collateral and in Pledgor's possession to Secured Party immediately, or if hereafter acquired, immediately following acquisition, in a form suitable for transfer by delivery or accompanied by duly executed instruments of transfer or assignment in blank in form and substance satisfactory to Secured Party in its sole discretion.

6651035-v2

**H.   Power of Attorney.**  Pledgor hereby appoints Secured Party and any officer thereof as Pledgor's attorney-in-fact with full power in Pledgor's name and on Pledgor's behalf to do every act which Pledgor is obligated to do or may be required to do hereunder; however, nothing in this paragraph shall be construed to obligate Secured Party to take any action hereunder nor shall Secured Party be liable to Pledgor for failure to take any action hereunder.  This appointment shall be deemed a power coupled with an interest and shall not be terminable as long as any Obligations are outstanding.  Without limiting the generality of the foregoing, Secured Party shall have the right and power to receive, indorse and collect all checks and other orders for the payment of money made payable to Pledgor representing any dividend, interest payment or other distribution payable in respect of the Collateral or any part thereof.

**I.   Other Parties and Other Collateral.**  No renewal or extensions of or any other indulgence with respect to the Obligations or any part thereof, no modification of the document(s) evidencing the Obligations, no release of any security, no release of any person (including any maker, indorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Security Agreement shall in any manner impair or affect the rights of Secured Party under any law, hereunder, or under any other agreement pertaining to the Collateral.  Secured Party need not file suit or assert a claim for personal judgment against any person for any part of the Obligations or seek to realize upon any other security for the Obligations, before foreclosing or otherwise realizing upon the Collateral.  Pledgor waives any right that can be waived to the benefit of or to require or control application of any other security or proceeds thereof, and agrees that Secured Party shall have no duty or obligation to Pledgor to apply to the Obligations any such other security or proceeds thereof.

**J.   Waivers by Pledgor.**  Pledgor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any event of default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations and any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its discretion, without notice to the Pledgor.  Pledgor waives any right to require that any action be brought against any other person or to require that resort be had to any other security or to any balance of any deposit account.  Pledgor further waives any right of subrogation or to enforce any right of action against any other pledgor until the Obligations are paid in full.

**5.   Maintenance of Collateral.**  In the event Pledgor fails to comply with the terms hereof, Secured Party may, without any further notice of any kind, exercise any of its rights and remedies herein, in the Loan Documents, at law or in equity, at Secured Party's option.  If an Event of Default exists hereunder and the Collateral is declining in value or threatens to decline rapidly in value, Secured Party shall have no obligation to notify the Pledgor of the failure to maintain Collateral value required in the Loan Documents or to provide Pledgor with an opportunity to cure such noncompliance, and in such case the Pledgor agrees that Secured Party

6651035-v2

may immediately, at Secured Party's sole option, sell all or any part of the Collateral and apply the proceeds of such Collateral to the Obligations.

**6.**     **Rights and Powers of Secured Party.**

      **A.**     **General.** Secured Party, after an Event of Default (as such term is defined in the Loan Documents), without liability to the Pledgor, may:  take control of proceeds; release the Collateral in its possession to Pledgor, temporarily or otherwise; require additional Collateral; reject as unsatisfactory any property hereafter offered by the Pledgor as Collateral; take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Obligations and exercise all other rights which an owner of such Collateral may exercise, except the right to vote or dispose of the Collateral before an Event of Default; and at any time transfer any of the Collateral or evidence thereof into its own name or that of its nominee. Secured Party shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Secured Party, its officers, agents or employees, except for its or their own willful misconduct or gross negligence.  The foregoing rights and powers of Secured Party will be in addition to, and not a limitation upon, any rights and powers of Secured Party given by law, elsewhere in this Security Agreement, in the Loan Documents, or otherwise.

      **B.**     **Convertible Collateral.**  Secured Party may present for conversion any Collateral which is convertible into any other instrument or investment security or a combination thereof with cash, but Secured Party shall not have any duty to present for conversion any Collateral unless it shall have received from Pledgor detailed written instructions to that effect at a time reasonably far in advance of the final conversion date to make such conversion possible.

**7.**     **Default.**

      **A.**     **Event of Default.**  An event of default ("Event of Default") shall occur, until cured by Pledgor to the satisfaction of Secured Party or waived by Secured Party in writing, if any obligor on all or part of the Obligations shall fail to timely and properly pay or observe, keep or perform any term, covenant, agreement or condition in this Security Agreement, the Loan Documents (subject to all applicable notice, grace and cure periods set forth in the Loan Documents) or in any other agreement between Pledgor and Secured Party or between Secured Party or any other obligor on the Obligations, including but not limited to any other note or instrument, loan agreement, security agreement, or other agreement or instrument concerning the Obligations; or (b) if Pledgor shall fail to timely and properly perform any term, covenant, agreement or condition in this Security Agreement.

      **B.**     **Rights and Remedies.**  If any Event of Default shall occur, then, in each and every such case, Secured Party may, without (a) presentment, demand, or protest, (b) notice of default, dishonor, demand, non-payment, or protest, (c) notice of intent to accelerate all or any part of the Obligations, (d) notice of acceleration of all or any part of the Obligations, or (e) notice of any other kind, all of which the Pledgors hereby expressly waive (except for any notice required under this Security Agreement, the Loan Agreement or which may not be waived under

6651035-v2

applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Secured Party's option:

      **i.**      **Acceleration.** The Obligations shall, at Secured Party's option, become immediately due and payable, and the obligation, if any, of Secured Party to permit further borrowings under the Obligations shall at Secured Party's option immediately cease and terminate.

      **ii.**      **Liquidation of Collateral.** Sell, or instruct any Broker to sell, all or any part of the Collateral in a public or private sale, direct Brokers to liquidate all or any part of any Account and deliver all proceeds thereof to Secured Party, and apply all proceeds to the payment of any or all of the Obligations in such order and manner as Secured Party shall, in its discretion, choose.

      **iii.**      **Uniform Commercial Code.** All of the rights, powers and remedies of a secured creditor under the Uniform Commercial Code ("UCC") as adopted in the State of Maryland.

      **iv.**      **Right of Set Off.** Without notice or demand to the Pledgor, set off and apply against the Obligations any and all deposits (general or special, time or demand, provisional or final) and any other indebtedness, at any time held or owing by Secured Party or by any of Secured Party's affiliates or correspondents to or for the credit of the account of Pledgor.

Pledgor specifically understands and agrees that any sale by Secured Party of all or part of the Collateral pursuant to the terms of this Security Agreement may be effected by Secured Party at times and in manners which could result in the proceeds of such sale being significantly and materially less than might have been received if such sale had occurred at a different time or in a different manner, and Pledgor hereby releases Secured Party and its officers, agents and representatives from and against any and all losses, costs, damages and liabilities arising out of or related to the timing or manner of any such sale.

If, in the reasonable opinion of Secured Party, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Secured Party may offer and sell such Collateral in a transaction exempt from registration under federal or state securities law, and any such sale made in good faith by Secured Party shall be deemed "commercially reasonable."

**8.**      **General.**

      **A.**      **Parties Bound.** Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Obligations or the Collateral, Secured Party thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Secured Party shall retain all rights and powers hereby given with respect to any of the Obligations or the Collateral

6651035-v2

not so assigned or transferred. All representations, warranties and agreements of Pledgor shall be binding upon the successors and assigns of the Pledgor.

**B.** **Waiver.** No delay of Secured Party in exercising any power or right shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Secured Party of any right hereunder or of any default by Pledgor shall be binding upon Secured Party unless in writing, and no failure by Secured Party to exercise any power or right hereunder or waiver of any default by Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default. Each right, power and remedy of Secured Party as provided for herein or in any of the loan documents related to the Obligations, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy. The exercise or commencement of the exercise by Secured Party of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Secured Party of any or all other such rights, powers or remedies.

**C.** **Agreement Continuing.** This Security Agreement shall constitute a continuing agreement with respect to any renewals, future advances or modifications to the obligations. Provisions of this Security Agreement, unless by their terms exclusive, shall be in addition to other agreements between the parties. Time is of the essence of this Security Agreement.

**D.** **Termination.** This Security Agreement shall automatically terminate upon the payment in full of the Obligations to Secured Party.

**E.** **Notice.** Notice shall be deemed reasonable if delivered in accordance with the provisions of the Loan Agreement.

**F.** **Modifications.** No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by the Pledgor and Secured Party. The provisions of this Security Agreement shall not be modified or limited by course of conduct or usage of trade.

**G.** **Partial Invalidity.** The unenforceability or invalidity of any provision of this Security Agreement shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Security Agreement to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

**H.** **Applicable Law and Venue.** This Security Agreement shall be construed in accordance with the laws of the State of New York. Wherever possible each provision of this Security Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or

6651035-v2

CONFIDENTIAL

invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Security Agreement.

**I.      Authorization of Financing Statements.**   To the extent permitted by applicable law, Pledgor authorizes Secured Party to file financing statements in the appropriate records without signature of Pledgor to perfect the security interest herein granted.

**J.      Controlling Document.**   To the extent that this Security Agreement conflicts with or is in any way incompatible with the Loan Agreement, the provisions of the Loan Agreement shall control.

**K.      NOTICE OF FINAL AGREEMENT.   THIS SECURITY AGREEMENT AND ANY OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES WITH REGARD TO THE MATTERS HEREIN DESCRIBED AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

6651035-v2

IN WITNESS WHEREOF, Pledgor has executed this Pledge and Security Agreement as of the day and year first written above.

**PLEDGOR:**

DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV, a Mexican limited liability company with variable capital

By: _____
Name: Kenneth A. Jowdy
Title: General Administrator

[Signature Page to Pledge and Security Agreement]

CONFIDENTIAL

DANSKE_0011823

## SCHEDULE I
## DESCRIPTION OF COLLATERAL

**Pledgor has and does hereby grant Secured Party a security interest in and to the following accounts and all property now or hereafter held therein and all proceeds thereof.**

### [TO INCLUDE THE FOLLOWING ACCOUNTS:  PLEASE PROVIDE FULL ACCOUNT INFORMATION]

4660 – Main Checking Account - USD
2732 – Sales Account - USD
3448 – Holding accounts for Commission and Closing accounts - USD
9858 – Money Market Account - USD
1791 – Holding account for TWD and Crystal Lagoon payments – USD
3331 – Closing Costs Account – USD
4993 – Expense account – USD (Wells Fargo)

| Account Number | Location |
|---|---|
|  |  |
|  |  |

6651035-v2

DANSKE_0011824

## SCHEDULE II

## PLEDGE CERTIFICATE

Reference is hereby made to that certain Pledge and Security Agreement dated as of April ___, 2013 ("Security Agreement"), by DIAMANTE CABO SAN LUCAS S. DE R.L. DE CV, a Mexican limited liability company, with variable capital ("Pledgor"), in favor of DANSKE BANK A/S, LONDON BRANCH, the London Branch of a company incorporated in the Kingdom of Denmark ("Secured Party").   This Pledge Certificate is delivered pursuant to Section 2 of the Security Agreement.   All capitalized terms used and not otherwise defined herein shall have their respective meanings as set forth in the Security Agreement.

The Pledgor hereby certifies that concurrently with the delivery of this Pledge Certificate,

[  ] The Pledgor is delivering to Secured Party the following items of Collateral as additional Collateral for the Obligations (collectively, the "Additional Collateral"):

_____

_____

_____

[  ] The Pledgor is selling or otherwise disposing of the following items of Collateral:

_____

_____

_____, and the Pledgor is delivering to Secured Party the following items of Collateral being substituted therefor:

_____

_____

_____ (collectively, the "Substituted Collateral").

The Pledgor hereby acknowledges that Pledgor has granted to Secured Party a security interest in the Additional Collateral and/or Substituted Collateral pursuant to the Security Agreement to secure the Obligations and that the Collateral covered by the Security Agreement includes, without limitation, the Substituted Collateral and Additional Collateral.  The Pledgor hereby represents and warrants that all of the representations and warranties contained in the Security Agreement are true and correct in all material respects, including with respect to the Additional Collateral and Substituted Collateral, on the date hereof as though made as of the date hereof.

EXECUTED this _____ day of _____, _____.

_____

6651035-v2

## EXHIBIT 4(G)
## Form of Control Agreement

**See attached**

6651035-v2

**EXHIBIT A**
**Original Loan Documents**

(All dated as of March 10, 2006)

1.  Loan Agreement by and between Borrower and Lehman

2.  Letter Agreement dated May 23, 2006 between Lehman and Borrower modifying the Original Loan Agreement

3.  Promissory Note in the principal amount of $125,000,000 by Borrower in favor of Lehman

4.  Irrevocable Guarantee Trust Agreement by Borrower in favor of Lehman

5.  Deed No. 65,011 (evidencing the conveyance of the Property to the Trust)

6.  Assignment of Leases and Rents by Borrower to Lehman

7.  Completion Guaranty by Kenneth Jowdy in favor of Lehman

8.  Recourse Guaranty by Kenneth Jowdy in favor of Lehman

9.  Payment Guaranty by Diamante Cabo San Lucas, Kenneth Jowdy, Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC in favor of Lehman

10. Pledge Agreement (Assets) by Borrower in favor of Lehman

11. Pledge Agreement (Membership Interests in Borrower: US) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

12. UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 11 above

13. Pledge Agreement (Membership Interests in Borrower: Mexico) by Diamante Cabo San Lucas and Kenneth Jowdy in favor of Lehman

14. Pledge Agreement (Membership Interests in Diamante Cabo San Lucas) by Diamante Properties LLC, Baja Ventures 2006, LLC, CSL Properties 2006, LLC and KAJ Holdings, LLC and Kenneth Jowdy in favor of Lehman

15. UCC-1 Financing Statements (Delaware and Nevada) with respect to Item 14 above

6651035-v2

DANSKE_0011827

16.  Environmental Indemnity Agreement by Borrower and Kenneth Jowdy in favor of Lehman

17.  Omnibus Assignment by Borrower to Lehman

6651035-v2

DANSKE_0011828

## EXHIBIT B
## 2009 Amended Loan Documents

1.    Amended and Restated Loan Agreement (Budget attached as Exhibit A)

2.    Spanish Translation of Amended and Restated Loan Agreement

3.    Note Splitter and Modification Agreement

4.    Substitute Promissory Note (Facility A) - $109,138,327.83

5.    Substitute Promissory Note (Facility B) - $16,000,000.00

6.    Amended and Restated Irrevocable Guaranty Trust Agreement (Mexican Law)

7.    English Translation of Amended and Restated Irrevocable Guaranty Trust Agreement

8.    Reaffirmation of Payment Guaranty

9.    Reaffirmation of Completion Guaranty

10.   Reaffirmation of Recourse Guaranty

11.   Reaffirmation of Pledge and Security Agreement (Membership Interests in Borrower)

12.   Reaffirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

13.   Reaffirmation of Environmental Indemnity Agreement

14.   Reaffirmation of Omnibus Assignment

15.   Reaffirmation of Assignment of Leases and Rents

16.   Waiver of Claims and Release Agreement

17.   Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

18.   UCC-1 Financing Statements (Debtors: PF Ventures, LLC (Connecticut) and David Boyden (Utah))

      A.    PF Ventures – filed with the Connecticut Secretary of State as File Number 2683094

6651035-v2

      B.      Boyden – filed with the Utah Department of Commerce as File Number 359857200902

19.    UCC-3 Financing Statement Amendments (assigning UCC interests from Lehman Brothers Holdings Inc. to Lender)

      A.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007960-5)

      B.      Jowdy - filed with the Nevada Secretary of State (with respect to original financing statement 2006007961-7)

      C.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

      D.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

      E.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

      F.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

      G.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

20.    UCC-3 Financing Statement Amendments (correcting debtor information and organizational identification numbers for the following debtors)

      A.      Diamante Member - filed with the Delaware Secretary of State (with respect to original financing statement 60840082)

      B.      Diamante Properties - filed with the Delaware Secretary of State (with respect to original financing statement 60839803)

      C.      Baja - filed with the Delaware Secretary of State (with respect to original financing statement 60839738)

      D.      CSL - filed with the Delaware Secretary of State (with respect to original financing statement 60839902)

      E.      KAJ - filed with the Delaware Secretary of State (with respect to original financing statement 60839977)

21.    Amendment to Pledge Agreement (Partnership Interests in Borrower) (Mexican Law)

22.    Notice of Assignment of Bank Accounts in Favor of Trustee (Mexican Law)

23.    Notice of Assignment of (Performance) Bond in Favor of Trustee (Mexican Law)

6651035-v2

DANSKE_0011830

24.     Notice of Assignment of (Construction and Service) Agreements in Favor of Trustee (Mexican Law)

CONFIDENTIAL DANSKE_0011831

# EXHIBIT C
## 2010 Amended Loan Documents

1.  First Amendment to Amended and Restated Loan Agreement and Modification Agreement (Budget attached as Exhibit A)

2.  Spanish Translation of Amended First Amendment to Amended and Restated Loan Agreement and Modification Agreement

3.  First Amendment to Substitute Promissory Note (Facility B) - $20,000,000.00

4.  Confirmation of Payment Guaranty

5.  Confirmation of Completion Guaranty

6.  Confirmation of Recourse Guaranty

7.  Confirmation of Pledge and Security Agreement (Membership Interests in Borrower)

8.  Confirmation of Pledge and Security Agreement (Membership Interests in Diamante Member)

9.  Confirmation of Environmental Indemnity Agreement

10. Confirmation of Omnibus Assignment

11. Confirmation of Assignment of Leases and Rents

12. Annotation to Trust

6651035-v2

CONFIDENTIAL

DANSKE_0011832

## EXHIBIT D
## 2013 Modification Documents

1.  Second Amended and Restated Loan Agreement by and between Borrower, Borrower Parties, and Lender.

2.  Second Amendment to Irrevocable Guaranty Trust Agreement (Spanish and English)

3.  Note Splitter and Modification Agreement between Borrower, Kenneth A. Jowdy, Diamante Member, and Lender.

4.  Second Substitute Promissory Note (Facility A) - $123,500,000.00

5.  Third Substitute Promissory Note (Facility B) - $18,000,000.00

6.  Promissory Note (Facility C) - $2,000,000.00

7.  Promissory Note (Facility D) - $3,000,000.00

8.  Pledgor in Possession Pledge (Mexico Law)

9.  Acknowledgement of Debt (Mexico Law)

10. Termination of Assignment of Leases and Rents (US Law)

11. Termination of U.S. Pledge and Security Agreement (Membership Interests in Borrower)

12. Reaffirmation of Completion Guaranty

13. Reaffirmation of Recourse Guaranty

14. Reaffirmation of Payment Guaranty

15. Reaffirmation of Pledge Agreement (Membership Interests in Diamante Member)

16. Reaffirmation of Environmental Indemnity Agreement

17. Reaffirmation of Omnibus Assignment

18. Reaffirmation of Pledge and Security Agreement of PF Ventures, LLC (Membership Interests in Diamante Member)

19. Payment Guaranty by Diamante Club, LLC, Jowdy, and Diamante Member

20. Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante Club, LLC)

DANSKE_0011833

21.    Payment Guaranty by Diamante CSL, LLC, Jowdy, and Diamante Member

22.    Pledge and Security Agreement by Jowdy and Diamante Member (Membership Interests in Diamante CSL, LLC)

23.    UCC-1 Financing Statements (Debtor: Diamante Member) covering interests in Diamante Club, LLC and Diamante CSL, LLC

24.    UCC-1 Financing Statements (Debtor: Kenneth A. Jowdy) covering interests in Diamante Club, LLC and Diamante CSL, LLC

25.    UCC-3 Amendments

26.    Deposit Account Control Agreement for Wells Fargo Income Account

27.    Mandate Agreements for four (4) Banorte Income and Operating Accounts

DANSKE_0011834