UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Little Isle IV, LLC, a )  Delaware Limited Liability )  Company; Ula Makika, LLC, a )  Delaware Limited Liability )  Company; and Philip Kenner, )  )  Plaintiffs, )  )  vs. )  )  Kenneth A. Jowdy, et al., )  )  Defendant. )  ) | NO. CV-09-142-PHX-SRB |

VIDEOTAPED DEPOSITION OF ROBERT GAUDET

Phoenix, Arizona
July 2, 2009

9:05 a.m.

**CONFIDENTIAL TREATMENT REQUESTED**

**PK_SEC_000645**

Prepared by:

Jill Marnell, RPR

Arizona Certified Reporter

No. 50021

2

1              INDEX

2  WITNESS                                   PAGE

3  ROBERT GAUDET

4      Examination by Mr. Lake              5

5      Examination by Mr. Harper            124

6

7              INDEX TO EXHIBITS

8
   No.     Description                      Page

9

   1       Document titled "Revolving Line of    9
10         Credit Loans 2-7-2004"

11  2      Color laser photograph            48

12  3      Calendar for November and December 2004   57

13  4      Agenda for the 2nd Annual Diamante Cup   59
           2004

14

FBI surveillance photo in 2009 of Kenner and Gaudet giving criminal testimony in front of the Cabo san Lucas courthouse with the investors attorneys...

13   A.   I don't recall.  I don't recall specifically.

14   Q.   Okay.  Do you remember whether someone gave you a

15   phone call or sent you a letter or an e-mail or --

16   A.   Hmm.  It may -- If you can ask that question

17   again, as we go forward I'll continue to try and recall.

18   I just don't recall my initial awareness.

19        MR. LAKE:  Okay.  Can you mark this as

20   Exhibit 1, please.

21        (Deposition Exhibit No. 1 was marked for

22   identification by the court reporter.)

23   Q.   BY MR. LAKE:  Mr. Gaudet, I'm showing you what's

24   been marked as Exhibit 1.

25   A.   Okay.

                                10
1   Q.   By the way, how do you pronounce your last name?

2   A.   Gaudet is good.

3   Q.   Gaudet?

4   A.   Yes.

5   Q.   Kind of like the Australian good day, sir?

6   A.   Usually brings a smile to my face.

7   Q.   Okay.  This document that's marked as Exhibit 1

8   is titled at the top:  Revolving Line of Credit Loans,

9   12/7/04.

CONFIDENTIAL TREATMENT REQUESTED                                PK_SEC_000655

10       Have you ever seen this document before?

11   A.   Before?

12   Q.   Before now.

13   A.   Before now, yes.

14   Q.   Okay.  I'm going to -- this obviously is the --

15   Do you understand this to be the document whose

16   authenticity has been requested in this lawsuit?

17   A.   Who?  Or --

18   Q.   Do you understand that this document is one of

19   the documents that is central to the lawsuit involving

20   Mr. Jowdy and Mr. Kenner?

21   A.   Yes.

22   Q.   Okay.  I'm going to refer to this as the loan

23   agreement document or the contract or the written

24   contract.  So if I say any of those terms, will you

25   understand that to mean this document?

                                11
1    A.   Yes.

2    Q.   Okay.  What is the first time that you -- Well,

3    let me have you take a look at the second page of the

4    document.  Does that appear to be your signature there

5    under the line that says "Witness"?

6    A.   Yes.

7  Q.  All right.  I want you to take a minute to think

8  about this question before you answer it and then provide

9  your sworn testimony for the Court.

10     Did you sign this document in December 2004?

11  A.  Yes.

12  Q.  Do you have a clear recollection of having done

13  that?

14  A.  I have a fairly clear recollection, yes.

15  Q.  Did you see Ken Jowdy sign this document in 2004?

16  A.  I recall a document with his name on it and a

17  line, and I recall a document with a line that I was

18  requested to witness.

19  Q.  So do you mean to say that you don't know whether

20  it was this same document that you saw him sign?

21  A.  I assume.

22  Q.  You assume -- I'm not sure I understand what you

23  mean.

24  A.  I assume it was the same document, yes.

25  Q.  Well, what is that assumption based on?

12

1  A.  The line that I'm looking at, the signature that

2  I'm looking at.

3  Q.  Okay.  But what you're saying, then, I think, if

9  A.  Just, again, anything that I could recall related

10 to my signature.

11  Q.  When is the first time that you spoke with

12 Mr. Harper?

13  A.  Hmm.  I don't recall.

14  Q.  Do you believe it was in 2009?

15  A.  I do believe.

16  Q.  Have you spoken with John Kaiser or his attorneys

17 about this litigation?

18  A.  John Kaiser, yes.  Attorneys, I don't know if

19 he's -- who his attorneys are.

20  Q.  Okay.  When did you speak with John Kaiser about

21 this litigation?

22  A.  Couple months ago.

23  Q.  Were those conversations in person or on the

24 telephone?

25  A.  One was in person.

19

1  Q.  Where did that take place?

2  A.  That was here in Arizona.

3  Q.  Was that in Mr. Harper's office also?

4  A.  No.

5  Q.  Where was it?

CONFIDENTIAL TREATMENT REQUESTED

21

1  Q.  Did Mr. Kenner ask you or John Kaiser to -- to

2  speak with each other --

3  A.  No.

4  Q.  -- about the litigation?

5      During this meeting with Mr. Kaiser, did

6  you -- did you discuss at all the loan -- this loan

7  agreement document, Exhibit 1?

8  A.  He asked me if I could recall anything, yes.

9  Q.  Why did he bring up that topic?

10     MR. HARPER:  Object to form.

11     MR. AUGUSTINE:  Object to form.

12     If you know.

13 Q.  BY MR. LAKE:  If you know.  Did he say?

14 A.  Repeat the question.

15 Q.  Do you know why Mr. Kaiser brought up this topic

16 of the loan agreement document while you were having

17 dinner?

18 A.  No.

19 Q.  What did he ask you?

20 A.  What did he ask me.  I just recall things being

21 very general.  Nothing very -- nothing pointed, nothing

22 specific.

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000668

23   Q.   Tell me everything you remember about what you

24   said in this discussion about the loan agreement document.

25   A.   With John Kaiser?

22

1   Q.   With John Kaiser, right.

2   A.   I don't recall.

3   Q.   The only thing you recall is that he mentioned

4   the existence of this document?

5   A.   Yes.

6   Q.   Did he ask you if you remembered signing it?

7   A.   Yes.

8   Q.   And what did you tell him?

9   A.   I told him what I mentioned to you earlier, that

10   I recall signing as a witness to a document.

11   Q.   Did you tell him that you didn't remember exactly

12   what the -- which document it was or what the document

13   was?

14   A.   Yes, correct.

15   Q.   Did he mention that he had any involvement with

16   the creation of this loan agreement document?

17   A.   Yes.

18   Q.   What did he tell you?

19   A.   He told me it was a document that he needed

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000669

20   for -- it was a document he had for the Hawaii entity, for

21   the Hawaii company.

22      Q.   Did he have a copy of the document there at the

23   dinner?

24      A.   No.

25      Q.   Did you know what document he was talking about?

                                23

1    A.   He had referred to it as a loan document.

2           Could you repeat that question so I can just

3    be accurate for you?

4    Q.   Yeah.  I just -- I just wanted to know if you

5    knew what he -- what document he was talking about in the

6    conversation.

7    A.   Yes.

8    Q.   What document did you understand him to be

9    talking about?

10   A.   I got this document or I received this document

11   through two different persons.  One was Tom Harvey and one

12   was Fernando Garcia.

13   Q.   When you say this document, you mean this

14   Exhibit 1?

15   A.   Exhibit 1, yes.

16   Q.   Okay.  And you believe you received it before

8    A.   No.

9    Q.   Who first brought up the topic of the loan

10   document during this meeting?

11   A.   John.

12   Q.   And he asked your recollection, I think you said,

13   about the circumstances of the document.

14        Was there any other discussion about the

15   document?

16   A.   Hmm.  Other than anything that I could recall

17   related, I believe that was the extent of it.

18   Q.   When Mr. Harvey and Mr. Garcia e-mailed you this

19   document, is that the first time you had seen it since --

20   I mean, is that the first time you had seen it since --

21   If it was the same document that was signed in 2004, would

22   that have been the first time you had seen it since then?

23   A.   Yes.

24   Q.   Was there any other discussion that you had with

25   Mr. Kaiser during that meeting about the lawsuit that you

                                27

1    can remember?

2    A.   Again, I don't know if there was a lawsuit in

3    place.

4    Q.   Uh-huh.

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000674

5   A.   That I can't make comment to.

6   Q.   Did Mr. Kaiser indicate that he had been involved

7 in the creation or the preparation of this document?

8   A.   I don't recall.

9   Q.   Did he say that he had been -- that he had kept

10  the document in his possession or in his files?

11  A.   Yes.

12  Q.   What do you remember him saying about that?

13  A.   He said he wished he would have brought a copy

14  with him.  And I said not to worry, because I've got a

15  copy which I received, again, from Harvey and -- and

16  Garcia, and that all I know is my signature is on it.

17  That's my signature.

18  Q.   Have you ever spoken with Tim Gaarn about this

19  document or about this lawsuit?

20  A.   No.

21  Q.   Do you know who Tim Gaarn is?

22  A.   I've heard the name before, yes.

23  Q.   Have you ever met him?

24  A.   I have not met him.

25  Q.   Have you ever spoken to him?

28

1   A.   I have spoken to him.

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000675