

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

June 22, 2020

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

    Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

    Per the Court's instruction at the June 10, 2020 conference, we write on behalf of Danske Bank A/S London Branch ("Danske") in connection with the government's First Set of Requests for Production of Documents to Danske, served on June 17, 2020. Astoundingly, the government, yet again, ignores this Court's instructions to move expeditiously in this matter and instead served a formal document request on Danske seeking 56 separate categories of documents, the majority of which are irrelevant to determining Danske's claim. Further, for the document requests that seek relevant information, Danske has already produced the majority, if not all, of those documents.

    The government's document requests confirm that the government's intent is to harass Danske and prolong these proceedings in order to extract and wrest any remaining value in the Resort Property from Danske, an innocent third-party lienholder who has advanced millions of dollars in support of the Resort Property. This is nothing more than a shake down by the government. The government's behavior in this matter is contrary to Congressional intent under 21 USC § 853(n) that innocent lienholders should be protected and is contrary to the Department of Justice's own guidance that espouses reaching settlements with "innocent third parties holding perfected liens or mortgages against property that is subject to federal forfeiture." What is more astounding, is that while the government seeks, at any cost, to squeeze Danske, it blatantly ignores the financial realities that the Resort Property simply does not have time to waste and that forcing Danske to expend its resources to litigate these irrelevant, over broad and unduly burdensome requests will adversely affect any future settlement amount.

    As set forth below and in the attachments to this letter, Danske has produced documents that are relevant in determining Danske's claim and will produce specific additional documents. Danske respectfully requests that the Court strike the government's remaining document requests. In light of the exigencies Danske has previously expressed and the Court has recognized, the

The Honorable Joseph F. Bianco
June 22, 2020
Page 2

government's clearly objectionable requests can be dealt with swiftly by the Court. To the extent the government seeks to prolong and delay determination of Danske's claim pending further briefing on its Requests, we urge the Court to deny any such request. Lastly, to the extent the government files a letter defending seeking production of documents responsive to its Requests, we ask the Court to treat that letter as a motion to compel subject to costs under Fed. R. Civ. P. 37(a)(5)(B).

\*     \*     \*     \*     \*     \*

At the June 10, 2020 conference, the Court ordered the government to provide to Danske a "list of whatever remaining documents they think they would need" by June 17, 2020. June 10, 2020 Hr'g Tr. at 14:24-15:4.

On June 17, 2020, the government served the "United States'[s] First Requests for Production of Documents Pursuant to Rule 34" (each a "Request" and collectively, the "Requests"), attached hereto as **Exhibit 1**. The majority of the Requests seek documents and information that is immaterial to the only relevant issue before the Court—determination of Danske's interest as a bona fide purchaser. It bears noting that during the June 10 hearing, the government represented to the Court that it "would still like to engage in settlement discussions." June 10, 2020 Hr'g Tr. at 7:13-14. Notwithstanding this representation, the government has made no effort since that hearing to continue settlement discussions with Danske.

1. **The government is seeking production of documents of no relevance to establishing that Danske is a bona fide purchaser for value.**

Set forth below are some examples of the Requests the government seeks from Danske that are simply irrelevant in determining Danske's claim:

- Any and all servicing agreements with third party Trimont Real Estate Advisors, Inc., Michael Devlin, and any other third-party utilized by Danske or the Borrower to provide services regarding the DCSL resort loan; and any and all correspondence, reports and documents prepared according to such servicing agreements (Request No. 17) and all status reports by Mr. Devlin (Request No. 20);

- All construction documents identified in the Loan Agreements under Article VIII, Section 8.1, Replacement Facility C - Required Construction Documents, and under Article IX, Section 9.2, Construction Budget-Replacement Facility C, for each disbursement and/or loan advance from Facility C (Request No. 18);

- All reports furnished by the Borrower to Danske pursuant to the Loan Agreements, Section 13.5, Reporting Covenants, including, but not limited to: Section 13.5(a), Weekly Reports; Section 13.5(b), Monthly Reports; Section 13.5(c), Quarterly Reports; and Section 13.5(d), Annual Reports (Request No. 19);

The Honorable Joseph F. Bianco
June 22, 2020
Page 3

- Wire transfer documentation to support the transfers from Trimont to the Borrower for the 45 loan advance wire transfers, totaling $53,476,556, from Facility C to Trimont Real Estate Advisors Inc. (Request No. 25);

- Bank statements for other bank accounts identified that funds from Facility A, B and C may have been indirectly transferred to (Request No. 26);

- Any and all documentation identifying the procedures, policies, and practices of Danske, and its officers, employees or owners, for receiving, soliciting, preparing, reviewing, approving or denying loans or client relationships (Request No. 29);

- The Bylaws and Operating Agreement for DCSL Mexico and any documents confirming the change of trustee in or about 2014, all translated into English (Request No. 35);

- The most recent financial information for DCSL Mexico, including financial statements and tax returns (Request No. 37);

- Identify: (a) any and all Danske employees or contractors who visited the DCSL resort; (b) the date(s) of any visit; (c) the purpose of the visit(s); (d) the lodging used by the employee(s)/contractor(s) during the visit(s); (d) any gifts or benefits conferred, directly or indirectly, on a Danske employee/contractor by Jowdy and/or any employee or contractor of the DCSL resort; and (e) any gifts or benefits conferred, directly or indirectly, on Jowdy and/or any employee or contractor of the DCSL resort by a Danske employee/contractor (Request No. 44);

- Any and all documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability or inability to meet its loan obligations to Danske and/or Lehman (Request No. 46);

- Any and all documentation and agreements (whether in draft or executed), and correspondence between, Danske and Jowdy and/or the Borrower, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL resort and/or Equity Interests; (b) any Lehman or Danske employee's future ownership interest(s), direct or indirect, in the DCSL resort and/or Equity Interests; (c) potential purchasers of the DCSL resort and/or the DCSL resort loan; (d) foreclosure or forfeiture on the DCSL resort loan in Mexico or in the United States; (e) bankruptcy or insolvency proceedings concerning the DCSL resort or the Equity Interests in either Mexico or the United States; and (f) Jowdy's direct or indirect management of the DCSL resort during and/or after the instant criminal case (Request No. 48);

- Any and all documentation and correspondence related to insurance coverage or attempted insurance coverage of the DCSL resort or DCSL resort loan, of which

The Honorable Joseph F. Bianco
June 22, 2020
Page 4

> Danske is a policy holder or beneficiary, or otherwise has an interest therefrom (Request No. 52);

- Any and all documentation and correspondence related to a potential or contemplated sale or auction of the DCSL resort by Danske (Request No. 55); and

- Any and all documentation and correspondence related to Danske's transfers of its, actual or potential, interests in the DCSL resort (Request No. 56).

The Requests above have no relevance to determining Danske's claim. For instance, servicer agreements and all communications with those third-party servicers as well as Mr. Devlin's status reports on the development are irrelevant to Danske's claim. Similarly, all construction documents required under the Facility C agreement and all monthly, quarterly, and annual reports by the borrower sent to Danske are also irrelevant.[1] The government also seeks all wire transfer information from third party servicer Trimont to the borrower, which is again irrelevant to showing that Danske advanced funds to the borrower. Is the government claiming that Trimont, a third-party servicer, who received funds from Danske and then transferred those funds to the borrower, somehow diverted those funds? Additionally, documents related to a contemplated sale or auction of the Resort Property or of Danske's interest are not probative in determining whether Danske has a secured and protected interest in this forfeiture proceeding. Further, bank statements of third parties who received funds "indirectly", for whom Danske does not have control, are also irrelevant in establishing Danske's claim as a bona fide purchaser. Similarly, information regarding who at Danske has visited the Resort Property and the purpose of those visits is, again, irrelevant to determining Danske's claim.

In addition, the government apparently seeks documents that go to whether Danske had knowledge of the potential forfeiture in this matter. These requests include:

- Any and all documents or communications made at any time between you and any other person, including, but not limited to, Jowdy, concerning the purchase and acquisition of the DCSL resort loan from Lehman (Request No. 6);

- Any and all documentation identifying the procedures, policies, and practices of Danske, and its officers, employees or owners, for inquiring into an investment's connection to actual or potential criminal activity and/or misconduct, and/or actual or potential mismanagement (Request No. 30);

- Any and all notes, correspondence, and documentation pertaining to Danske's inquiry into the involvement or connection to actual or potential criminal activity

---

[1] Additionally, particularly troubling about this request is the fact that the government has had access to all of those monthly, quarterly and annual reports and it is our understanding have received such reports from the borrower directly. Given that the government has had access to this information and has been provided such information is further support for the fact that the it is purely meant to harass Danske to expend resources to comb its records and produce records the government either has or had access to.

The Honorable Joseph F. Bianco
June 22, 2020
Page 5

    and/or misconduct, and/or actual or potential mismanagement by the Defendants, Jowdy, and/or the DCSL resort (Request No. 31);

- Any and all notes, correspondence, and documentation pertaining to media inquiries to Danske and/or its employees about the involvement or connection to actual or potential criminal activity and/or misconduct, and/or actual or potential mismanagement by the Defendants, Jowdy, and/or the DCSL resort, including support for Peter Hughes of Danske's statement to Fortune magazine in 2012 that "If there had been mismanagement, I think it would have turned up in the due diligence we've conducted on the project over the past three years . . .we found no evidence that Jowdy was stealing money, and we're satisfied with the job he's doing" (Request No. 32);

- Any and all documents or information available to or within the knowledge of Danske and and/or any such company's officers, employees, owners, concerning the conduct or assets of Jowdy, his associates, relatives, representatives, and related entities (Request No. 33);

- Any and all documentation regarding the due diligence performed by Danske regarding the (a) acquisition of the DCSL resort loan; and (b) entering into loan agreements and/or modifications with the Borrower, including deliverables, obligations, and the satisfaction of conditions by DCSL Mexico as required under all extensions, modifications, facility increases, advances and amendments to the Loan Documents (Request No. 40);

- Any and all documents and correspondence pertaining to Danske's: (a) knowledge of accusations by any individuals or entities concerning theft or misconduct by the Defendants, Jowdy, and/or the DCSL resort, including, but not limited to, accusations contained in civil complaints filed by Joe Juneau, Owen Nolan, Philip Kenner, Ethan Moreau, Sergei Gonchar, Glenn Murray, Little Isle IV, and Josef Stumpel; and (b) response(s) to such accusations (Request No. 43); and

- Any and all documentation and agreements regarding, and correspondence between, Danske and Jowdy, the Borrower, and/or the Trustee, regarding the potential or actual forfeiture of the DCSL resort (Request No. 47).

    As set forth in Danske's summary judgment motion and in the Declaration of David Daniel, Danske had no knowledge of the potential forfeiture of the Resort Property at the time it acquired its interest or at the time it entered into additional modifications and amendments establishing facilities A, B, and C. *See* Motion for Summary Judgment, ECF No. 848 at 12-13, 21-22. As a matter of law, there is absolutely no basis to argue that Danske somehow could have known that the Resort Property or the equity interests in Baja Ventures 2006, LLC, Diamante Properties, LLC, CSL Properties 2006, LLC, and KAJ Holdings, LLC were subject to forfeiture when Danske acquired its interest or advanced later funds prior to August 2015, which is when the government for the ***first time identified the Resort Property as subject to forfeiture***. What is required to

The Honorable Joseph F. Bianco
June 22, 2020
Page 6

challenge a bona fide purchaser's status on the basis of knowledge of forfeitability is actual knowledge of forfeiture. *See United States v. Watts*, 786 F.3d 152, 172-74 (2d Cir. 2015); *United States v. Rodriguez-Perez*, No. S38 10CR 905-LTS, 2019 WL 188400, at *6-7 (S.D.N.Y. Jan. 11, 2019). Here, it is indisputable that there could not have been any such knowledge until August 2015 when the government filed its bill of particulars listing the Equity Interests and then the Resort Property as subject to forfeiture.

Further, the government's request is troubling and confirms that these requests are meant to harass Danske because not once in these long proceedings has the government ever challenged Danske's interest on the basis that somehow Danske was aware of potential forfeiture when it acquired its interest. In fact, the government has never requested any of the documents it seeks now as to this issue, even though Danske has been in potential settlement discussions and has also engaged in communications regarding the Resort Property for years with the government. It is also troubling that the government would sit back and allow Danske to continue to extend millions in funds under Facility C while the criminal and forfeiture proceedings have proceeded if the government had any basis to challenge Danske's claim as a bona fide purchaser.

Finally, in several of the government's requests (Request Nos. 2(c), 7, 8, 9), the government seeks valuations and appraisals of the Resort Property. Valuations or appraisals of the Resort Property have nothing to do with Danske's acquisition of its interest in the Resort Property, which Danske acquired under the $800 million Repo Agreement and Lehman's subsequent default and are also irrelevant to amounts Danske advanced thereafter.

### 2. The government's Requests are overbroad, unduly burdensome, and seek documents that are not within Danske's custody, control, or possession.

The majority of the government's Requests are also overbroad and unduly burdensome. As an initial matter, the relevant time period defined in the Request is from **January 1, 2006**, unless otherwise stated, and to the extent the requests concerns "the source and/or acquisition of an interest in the DCSL resort . . . ***there is no limitation on the relevant time period***." Requests at pgs. 5-6. Other than evidence of advances made, documents dated after April 2014 have no bearing on whether Danske maintains perfected security interests. Further, the government's over broad time frame without limitation in any of the requests is unduly burdensome, and, as set forth above and in the attached spreadsheet, are irrelevant. Additionally, in many of the requests the government seeks "any and all documents" concerning a particular category. Such requests seeking "any and all documents" are over broad. *See, e.g.*, *Rodriguez v. NNR Global Logistics USA Inc.*, CV 14-1766 (JFB) (AKT), 2016 U.S. Dist. LEXIS 46093 (E.D.N.Y. Mar. 31, 2016) ("While the number of the defendants' employees is relevant, the request for 'any and all' documents concerning that subject is inherently overbroad."); *see Mamakos v. United Airlines, Inc.*, No. CV 14-7294 (JFB) (AKT), 2018 U.S. Dist. LEXIS 168803, at *13 (E.D.N.Y. Sept. 28, 2018) ("The Court further notes that requests using the overbroad language '*any and all*' when posing a *document request* or interrogatory are not permissible."); *Henry v. Morgan's Hotel, Grp., Inc.*, 15-CV-1789 (ER)(JLC), 2016 U.S. Dist. LEXIS 8406, at *6-7 (S.D.N.Y. Jan. 25, 2016) (granting motion to quash subpoena where requests sought "[a]ll documents and communications"; "Blanket requests of this kind are plainly overbroad and impermissible").

The Honorable Joseph F. Bianco
June 22, 2020
Page 7

Additionally, the specific requests themselves are also over broad and unduly burdensome. For example, in Request 1, the government seeks "any and all documents concerning your interest in the DCSL resort, including, but not limited to, any documents in which you indicated your ownership of the DCSL resort (e.g., any financial disclosure forms whether audited or unaudited), shareholder reports or tax returns); any documents concerning your payment of any taxes or other expenses for the loan associated with the DCSL resort; and any documents reflecting any losses claimed for the loan associated with the DCSL resort." This request is over broad and unduly burdensome. It effectively seeks every document from when Danske first acquired its interest under the Repo Agreement that mentions the DCSL Resort. Such documents are simply irrelevant to determining Danske's claim. What is relevant are the underlying documents that have been produced, *i.e.,* the loan agreements, documents related to perfecting the lien, and documents supporting the advances made under those documents.

The government also seeks production of "any and all Repo confirmation statements between Danske and Lehman." Ex. 1, Request No. 13. This Request is over broad and unduly burdensome, as well as irrelevant, because it asks Danske to produce any and every confirmation relating to any purchase of any lien, even residential liens that were subject to another Repo Agreement between Lehman and Danske; what's more, the Request imposes a burden by forcing Danske to search its archives for these irrelevant documents. Is the government seriously contesting that Danske advanced funds under that Repo Agreement to Lehman when the Lehman bankruptcy court approved of Danske's claim? Dkt. No. 848-1, ¶ 63 (citing November 18, 2011 Order, No. 22238, *In re Lehman Bros. Inc.*, Case No. 08-13555(JMP) (Bankr. S.D.N.Y.) (November 2011 Order approving settlement between Danske and Lehman and allowing Danske a deficiency claim of $580 million).

The government also asks for all bank statements of certain Danske accounts in Request 23 that in addition to being irrelevant is over broad and unduly burdensome. Specifically, two of the listed accounts in Request 23 are general Danske account numbers that include thousands (if not more) transactions that are completely unrelated, and thus irrelevant, to the Resort Property, a fact that counsel for Danske had already told the government in our prior communications. Danske has provided the government all wire transfer information regarding specific transfers the government requested. There is absolutely nothing else that is required to show that Danske advanced funds to the borrower.

In a retread of an issue previously raised by the government—and Danske believed, resolved—in October 2019, the government also requests that Danske "[i]dentify any and all Danske and/or Lehman employees, past or present, who currently hold or have held an interest, directly or indirectly, in the DCSL resort." (Request No. 41). In October 2019, Danske provided to the government the declarations of two key Danske employees, David Daniel and Peter Hughes (who has since retired), who have had significant involvement with overseeing the Resort Property since late 2008. Those declarations set forth that neither they nor their families or relatives had such an interest. The government's latest demand that Danske identify anyone who has ever worked at Danske—or any past or present *Lehman* employee—who might have held any interest in the resort seeks information that Danske does not possess and is vastly over broad and burdensome and completely irrelevant to the issue before the Court. Danske currently has 22,000

The Honorable Joseph F. Bianco
June 22, 2020
Page 8

employees worldwide (and obviously many previous employees). How does the government justify imposing the expense of time and hours Danske might expend in attempting to determine whether its thousands of current and former employees (as well as employees of Lehman) have or hold an interest in the DCSL resort when that issue has no bearing on whether Danske is a bona fide purchaser?

The government's Requests are not only over broad and unduly burdensome, they also seek documents that are not within Danske's custody, possession, and control. For instance, the government seeks production of, for the period 2006 to the present, "any and all appraisals or valuations of the DCSL resort loan, including, but not limited to, all appraisals or valuations conducted during the course of the Lehman Bankruptcy by CB Richard Ellis and Clayton IPS, and all documentation used to prepare such appraisals or valuations." Ex. 1, Request No. 7. These documents are not in Danske's custody or control because it is Danske's understanding that these entities were hired by Lehman Commercial Paper, Inc.

Finally, the Requests purport to require Danske to produce any document that is produced in Spanish to be translated by Danske. Requests page 10. Not only are some of the documents that the government seeks to be translated irrelevant (*e.g.*, March 2013 Environmental Report from Request No. 51), but the government cannot require Danske to expend funds to translate documents. *Cf. United States v. Ahmed*, 12-CR-661 (SLT) (S-2), 2015 U.S. Dist. LEXIS 46895, at *6 (E.D.N.Y. Apr. 9, 2015) (denying defendants' motion to compel the government to provide an English translation of a Swedish website where the government did not have a translation in its possession and defendants could seek their own translation).

### 3. **Danske has already produced thousands of pages of documents that are responsive to the Requests and, but for those identified in the attached Spreadsheet, all other Requests should be Stricken**

Danske has produced to the government thousands of pages of documents since 2015. These documents include, among other things, loan agreements and amendments thereto, trust agreements, UCC financing statements, a trust receipt showing that Danske held title to the senior secured lien in the Resort Property as of September 12, 2008, calculations supporting the Profit Participation Fee ("PPF"), documents relevant to the claim Danske filed in Lehman's bankruptcy, and wire transfer confirmations. Danske has also produced additional documents in support of its summary judgment motion, this includes 94 separate exhibits. As set forth in the attached spreadsheet,[2] subject to its objections, Danske will produce the following additional documents:

---

[2] Exhibit 2 sets forth each Request, whether Danske has already produced documents previously that are called for in the request, the date of production and bates number. In addition to the objections raised above, the spreadsheet lists out objections to each of the remaining requests.

The Honorable Joseph F. Bianco
June 22, 2020
Page 9

- ❖ Under Request Nos. 7 and 8, a 2009 Jones Lang LaSalle appraisal of the Resort Property created during the pendency of the Lehman bankruptcy, which Danske intends to produce by June 26, 2020.

- ❖ Under Request Nos. 21 and 53, a spreadsheet calculating the accrual of default interest and providing certain historical LIBOR data from January 2017 to the present, which Danske intends to produce by June 26, 2020.

- ❖ Under Request Nos. 1, 3-5, UCC continuation statements, if any, that have not been previously produced with respect to Danske's secured interests in PF Ventures, LLC, Diamante Properties, LLC, KAJ Holdings, LLC, CSL Properties 2006, LLC, Baja Ventures 2006, LLC, and Diamante Cabo San Lucas, LLC. Danske intends to produce as soon as practicable.

- ❖ Under Request No. 23, all statements for the Interest Reserve, Tax Reserve, Ocean Club Reserve, and Commission Reserve in Danske's possession, custody, or control, which Danske intends to produce by June 24, 2020.

- ❖ Under Request No. 27, all Trimont statements in Danske's custody, control, or possession, if any, that the government identifies as "missing" as soon as practicable.[3]

- ❖ Under Request No. 51, English language translations of the trust agreements, if any, that Danske has in its custody, control, or possession, and that do not reflect material subject to the attorney client privilege. Danske intends to produce as soon as practicable.

- ❖ Under Request No. 54, any wire transfer confirmations in Danske's custody, possession, and control, if any, that the government identifies as missing from the more than 70 confirmations Danske has already provided. To the extent that the government identifies such specific confirmations, Danske will endeavor to produce such documents as soon as practicable.

\*    \*    \*    \*    \*    \*

As set forth above, Danske respectfully requests that the Court strike the government's remaining requests. In light of the exigencies Danske has previously expressed and the Court has recognized, the government's clearly objectionable requests can be dealt with swiftly by the Court. To the extent the government seeks to prolong and delay determination of Danske's claim pending further briefing on its Requests, we urge the Court to deny any such request. Lastly, to the extent the government files a letter defending seeking production of documents responsive to its Request,

---

[3] Danske is in the process of gathering these documents, as well as others that it intends to produce, and, unless otherwise stated, will endeavor to produce them as soon as the documents are gathered, reviewed and processed for production. We expect that this process should not take more than one week from today's date. To the extent it does, we will so apprise the government.

The Honorable Joseph F. Bianco
June 22, 2020
Page 10

we ask the Court to treat that letter as a motion to compel subject to costs under Fed. R. Civ. P. 37(a)(5)(B).

    We thank the Court for its attention to this matter.

                                          Respectfully,

                                          George Kostolampros
                                          Doreen S. Martin
                                          Xochitl S. Strohbehn

cc:     All parties of record via ECF
         Thomas McC. Souther, Esq. and Kevin P. Mulry, Esq. (by email)