June 16, 2020

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

**Re: <u>Ongoing Submissions Continue To Contradict The Government's Case</u>…**
**(Kaiser, Juneau, Nolan…)**

Your Honor,

It has been over 1800 days since trial.   As the Court knows, it feels as if four-score and seven-years ago, the government took the prosecutorial position that "*Kenner stole the Hawaii money and used it to buy his equity in the Cabo resort property*". They re-verified their "theories" throughout their two summations (*Tr.5996, 5721, 5722-23, 5744-45, 5990, 5991-92, 5707-5709*).   As examples, they surmised:

[*Tr.5721* – Michiewicz summation]:
>"And what do you find out [about the Jowdy loan]? You find out, what did <u>that 5 million </u>or however much more or less that netted out to be, <u>what did it buy Mr. Kenner?</u> <u>It bought him a 39 percent interest in Ken Jowdy's Cabo San Lucas</u>. Didn't buy the players a 39 percent interest. <u>Him</u>. To this day, right now, <u>he is a partner in that resort</u>. <u>That's where the money went</u>. <u>That's what it bought him. And on the backs, on the portfolios, of the hockey players.</u>"

- **We know this is wholly false and prejudicial…**

And – [*Tr.5990* – Komatireddy rebuttal summation]:
>"…you know what, <u>Baja Development Corporation</u>, on that chart, but there is some sort of misconduct; you don't know what the money was for. <u>You know exactly what the money was for</u>. In fact, Mr. LaRusso, when the first witness got on the stand, one of his first exhibits he entered into evidence was a record of the Baja Development Corporation. Those records are in evidence. <u>Mr. Kenner told you that he used that money to get his piece in the Mexico investment with Ken Jowdy. You know exactly what that's for. That's in evidence.</u>"

- **We know this is wholly false and prejudicial (and it was not in evidence)…**

And – [*Tr.5996* – Komatireddy rebuttal summation]:

1

> *"He [Kenner] used it for personal use to get an interest in that resort in Cabo."*

- **We know this is wholly false and prejudicial...**

...and more and more.   Yet – the Court is 100% aware by the **government's-own** post-trial submissions that it is not true (*government-forfeiture-44* and *government-forfeiture-36*).   There "fund tracing" <u>verified</u> that 100% of the actual Hawaii-loan funds went to Jowdy, pursuant to the loan agreement Jowdy and his counsel turned over to the FBI in 2010 (*3500-KJ-2 at 24-25*).   Jowdy <u>confessed</u> to the FBI that the loans '*from PK, Little Isle 4, and Ula Makika*' were **real** during the same proffer (*Id. at 11-14*).   In addition, Jowdy's December 2010 Nevada defense counsel authenticated the loan agreement during their trial defense thru signature witness, Robert Gaudet (*Ex. X at 2-4*), while defending another $791,000-loan Jowdy stole from Glen Murray. It should be emphasized that the FBI interviewed Gaudet nearly a dozen times pretrial and <u>never</u> documented a single question to him about the authenticity of his signature on the *crucial* loan agreement.   It is unexplainable to not ask (or moreover not document the exculpatory response), because **they knew the truth** (previously thru Jowdy and his counsel, *supra*).

What possibly could the government believe five years later (in 2015) when they referred to the Hawaii-loan agreement as "*bogus*" (*Tr.5708 (2x), 5709*), "*phony*" (*Tr.4597, 4598*) and "*supposed*" (*Tr.5707-5708*) – and proffered that the loan agreement was a "*Kenner cover-up story*"? ==The government knew at all times that their position was false and misleading==.

*Full Authorization for "use of funds"...*
The Court has been provided <u>all</u> of the signed authorizations from the Northern Trust subpoena (*Ex. U*) *authorizing* Kenner to transfer the LOC funds to Little Isle 4, LLC for use under Little Isle 4's control (*solely governed by its operating agreement: Ex. V[1]*); re-verified, *infra*, thru Northern Trust Banker, Aaron Mascarella who

---

[1] Page 1 of the Little Isle 4 By Laws (*Ex. V*) verifies:
*Article II. Purpose*

> *Little Isle IV, LLC is an organized group of investors established to <u>invest in a **series of opportunities**</u> review[ed] by the Managing Member [Kenner] and deemed in the best interest of the partnership at all times.*
>
> *At the sole discretion of the Managing Member, Little Isle 4, ==may participate as a lender== if deemed by the Managing Member to be in the best interest of the LLC.*
>
> *The Managing Member, <u>at their sole discretion</u>, can engage in outside ventures deemed to be in the best interest of the LLC, <u>including but not limited to other Private Equity Funds and **Lending Opportunities**</u>.*

2

managed the accounts.  Contemporaneous with each investor's *granting of Authorization* (thru a signed *Authorization* letter to the bank), they signed Northern Trust Bank's "*Extension of Credit*" documents that verified the funds were for "*investments*" (not untouched collateral or otherwise) (*Ex. T*).  As an example, Mike Peca *verified thru testimony* about his *Letter of Authorization*: "*It was prepared for me, I read it, and signed it.*" (*Peca March 29, 2011 SDNY Grand Jury: Tr.38-39*) during his 2011 Grand Jury testimony (*Ex. S at 1-2: 3500-MP-5*), the same day Darryl Sydor *verified thru testimony* to the Grand Jury that his funds were all deposited into the Little Isle 4 capital account and loaned to Jowdy as expected (*Sydor March 29, 2011 SDNY Grand Jury: Tr.25-26; 3500-DS-2*), and Turner Stevenson *verified thru testimony* that it was a "*group*" decision *(Stevenson March 29, 2011 SDNY Grand Jury: Tr.17-18; 3500-TS-1)*.  There was no hint of equivocation in the SDNY Grand Jury, a year *after* Jowdy's documented *confessions*, *yet somehow* the FBI agent convinced "someone" that people were unaware of the wholly authorized transactions and it amounted to criminal activity.  *It is baffling at a minimum*.

*John Kaiser cover-up…*
The Court also knows that John Kaiser *verified thru testimony* the loans to the FBI in October 2010, describing five **specific** meetings he independently had with Jowdy about the potential loans from the Hawaii partners (*Ex. Y at 2, 3, 10*)[2]; including one that the FBI 'raw notes' confirmed he "*discussed =*" with "*PK = Brian Berard*" afterwards (offering Kaiser's 3rd party verifications of the meetings) (*Id. at 3*). Kaiser explained to the FBI – **5 years before trial** -- that there "*= was agreement to borrow $ from Hawaii -*" (*Id. at 3*).  Kaiser *testified* he received the signed-loan agreement at his home (*Tr.1127*), identical to Glen Murray's trial verification (*Tr.3608*).  During a July 2, 2009 Arizona deposition, signature-witness Robert Gaudet, *verified thru testimony* that: *"…it was a document that he [Kaiser] needed for – it was a document he had for the Hawaii entity, for the Hawaii company." (Ex. I at 6-7)*.  The Court is aware that Kaiser *verified thru testimony* during his voluntary 2009

---

Page 2 of the Little Isle 4 By Laws (*Ex. V*) verifies (for employees and consultants):
*Section 5.   The Managing Member [Kenner], at their sole discretion, **can compensate any and all members and non-members for their roles in the LLC**, including but not exclusive to the Managing Member.*

[2] It should be emphasized that Kaiser *flatly denied* ever telling the FBI about the critical five loan-disclosure meetings with Jowdy during trial (*Tr.1120-22*). FBI agent Galioto was at the October 19, 2010 FBI proffer and sat silently in the courtroom during Kaiser's known perjury. As a cover-up, during rebuttal summation, AUSA Komatireddy explained to the court that the Kaiser 'raw notes' could have been taken "*before*" the meeting (*Tr.5991-92*). *Was she seriously upholding prosecutorial integrity*?

3

arbitration testimony (*Ex. Z*) that **he** raised funds from his friends & family, pursuant to this "*collateral*" agreement with Jowdy (*Id. at 2*), as part of the loans to Jowdy (*Id. at 2, 5, 6*); continuing that: "*a big thing it was 15 percent interest rate*" (*Id. at 2*).   The Court is aware that the government tried to help Kaiser back-peddle out of his 2009 exculpatory testimony by soliciting an indecipherable "word vomit" from Kaiser (*Ex. X at 4: Tr. 1106-1108*).   Kaiser tried to explain that he did not know about "anything" to do with the "Hawaii to Jowdy" loans until "after" his 2009 arbitration testimony.   <u>Kaiser's **perjury** is verified</u> by his-own 2015 testimony (*Tr.983*).   Kaiser testified about the details of a meeting in which he "*confronted*" Kenner with Hawaii COO Chris Manfredi in summer 2006 that allegedly addressed **the** "stolen" money by Kenner, which was sent to Mexico "*unknown to Kaiser*". <u>Kaiser's own testimony refutes the timeline</u> thru his cover-up-"word vomit" and the government's complicit help.   *It is unexplainable*.

*Further exposure of Kaiser cover-up lies…*
The alleged summer 2006 "*confront*[ation]" meeting further conflicts with the Hawaii attorney's February 2006 "*update[s]*" (*Ex. W*) -- **four months before the alleged confrontation**.   Kaiser *verified thru testimony* the "*updates*" to the FBI in 2010 (*Ex. Y at 3*).   The FBI showed Kaiser the series of "*update*" emails during his October 19, 2010 proffer.   Kaiser *verified thru testimony* receiving "*updates*" "*many times*" (*Id. at 3*).   These "*updates*" included the entire 26+ person Hawaii partners.

Kaiser's "*updates*" verification to the FBI in 2010 specifically *verified*:
   (1) **The Jowdy loans and Mexico collateral**;
   (2) The multiple Kaiser-Jowdy meetings about the loans;
   (3) The Hawaii-Jowdy lending agreement;
   (4) The named-involvement in the conference calls by **Owen Nolan**, **Mike Peca**, and **Bryan Berard**;
   (5) The difference between the loans and equity contributions in the different Hawaii and Mexico projects;
   (6) Signed Little Isle 4 operating agreements;
   (7) **A February 2006 updated Hawaii-Jowdy loan calculation spreadsheet**;
   (8) Manfredi, Kaiser and property manager Hawkins involvement in the various conference calls; and
   (9) The Sugar Mill 501(c)(3) "*give back*" program with the local Hawaii government; amongst other "*updates*".

- These "*updates*" to all of the Hawaii members **and future Hawaii Managing Member, John Kaiser**, (coupled with his previous 2009 testimony under oath) leaves no question that *nothing concealed* at any time from Kaiser or the Hawaii

4

partners (under his management); despite Kaiser's selective memory 10-years after-the-fact.

*Nolan's counsel's letter, CTE, "investments", and the "Jowdy agreement"...*
During a June 10, 2020 status conference, new-counsel for Owen Nolan *verified* that *there is a settlement agreement* between Nolan and Jowdy.   This agreement was **denied to exist** by the government "*after talking with Nolan's and Jowdy's counsels*".   Clearly, the government *lied* to the Court by claiming it did not exist thru carefully parsed words in their written submission (*ECF No. 780 at 6*).   Kenner proved its existence during the January 22, 2020 hearing (*at Hearing Tr.6-7*) by reading the legal settlement document acknowledgment to the Court, already in evidence.

- How can the government un-ring yet another evidentiary *faux pas*[3] that it needs to avoid – because "*facts are a stubborn thing*" (John Adams) and the government does not want to discuss the exculpatory evidence they have managed to hide and mislead the Court for nearly a decade?

On or about June 8, 2020, counsel for Owen Nolan wrote the Court.   Counsel verified that Nolan is upset about the potential "*$1,656,357*" restitution of funds.[4]   Counsel argues: "*That number only includes the money Mr. Nolan contributed to the various property and development projects at the heart of this matter*".   **Nolan is *only* an investor in the Hawaii project, as charged in the instant case**.   Kenner agrees with Nolan's counsel that Nolan did contribute those funds to the "*various property and development projects at the heart of this matter".*   In a moment of clarity (11-years after his arbitration denials), Nolan thru counsel acknowledges that he

---

[3] During the government's forfeiture hearings in 2016, the government admitted (as a subset of their *Brady* violations):
(1) *Government-forfeiture-44* (confirming the loans to Jowdy were real);
(2) *Government-forfeiture-36* (confirming that Kenner did not use any funds from Hawaii to '*buy his equity in anything Mexico or otherwise*'); and
(3) *The Arizona Attorney Tom Baker disclosures* (confirming approximately 20 Hawaii partners signed off on the 2008-09 Arizona lawsuit versus Jowdy to recover the same Jowdy-loans the government claimed in 2015: "*no one knows about*" "*because they are fake*".
   - They are unrecoverable frauds on the court under any "*level playing field*".

[4] This net total for Nolan was a result of the Northern Trust settlement with Nolan of approximately $500,000 (*Tr.2074*) from his original $2,300,000 Hawaii investment.   The net total does *not* include the $592,878 that Nolan *also* received from interest payments during the collateralized investment strategy from 2003 thru 2009 – or his $3,250,000 settlement offset in 2009 with Jowdy (for every entity of Jowdy's, known or unknown, that received funds from Nolan, directly or indirectly).
- $2,088,324 in total interest was paid to all of the LOC investors (including Norstrom, Gonchar, and Murray who were removed from the superseding indictment 2 weeks prior to trial – based on their defiance to participate in the government's theories of prosecution – verified by their exculpatory submissions pre-trial).

5

"*contributed*" the funds to the Hawaii project (as he always knew), but he believes that Kenner "*stole*" them.  This "*stolen*" mis-representation of the *crucial* facts is directly traceable to a decade of FBI agent Galioto and Jowdy's cabal (including Kaiser and Berard after 2011) alleging "to all investors" that Jowdy <u>never received</u>:
- (1) The original Diamante del Mar capital contributions;
- (2) The 2004-06 Hawaii loans (*Ex. W*); or
- (3) The 2005-06 Diamante-Cabo capital contributions.

- Empirical evidence, in the government's possession, verifies Jowdy received all of them, **but as U.S. Citizen or resident, you are obliged to believe 100% of what the FBI tells you**.[5]

The government's entire Nolan case was based on the fact that he did "*not have memory*" (*Tr.2065-66*) that he made these investments.  This reverts to Kenner's post-trial submissions about the Nolan, Berard, Sydor and others CTE[6] lawsuits (in 2014, pretrial) versus the National Hockey League ("NHL") for **brain damage (specifically including "memory loss")**.  Counsel contradicts this – and verifies the underlying funds as the "*investments*" Nolan <u>signed</u> (*and dated: "10/29/04"*) for with his **1-page** 2004 *Extension of Credit* (*Ex. T at 3*), confirming "*$2,200,000*" – "*Investment in Little Isle IV LLC*".   Then, Nolan <u>signed</u> his contemporaneous **1-page** *Letter of Authorization* to authorize the transfer of funds to Little Isle 4 (*Ex. U at 4*). Nolan also produced the original **1-page** <u>signed</u> *Letter of Authorization* during his 2009 arbitration production (*Bates stamp: Nolan 0649; labeled as "EXH_NO_38"*). When asked in 2009 about Exhibit 38 (*Ex. H*), there was no representation that Nolan did not sign it (only arguing suitability standards for the investment):

> "*Q. By the time this note -- when this letter, Exhibit 38, was <u>signed</u> in October 2004, that was after the lockout had begun; is that right?*
> *A [Nolan]: I believe so.*"

---

[5] Kristen Peca during her 2012 FBI recordings of Kenner explained to Kenner: "*I guess – I mean Michael was the one who agreed to all of that stuff because I really do not understand it.   That is the business between you two – not me.   If the bank accounts show Jowdy got the money from Hawaii – well – then why are the FBI guys saying you stole it all…I just don't understand…why would they lie if you did not take the money?*"

[6] The primary symptoms of **Chronic Traumatic Encephalopathy** ("CTE") have been described by neurological experts (including Dr. Ann McKee) at Boston University's Neurological Center as:
*CTE, a catastrophic disease first associated with boxers long ago, results when a toxic protein, Tau, accumulates in the brain, kills brain cells, and leads to symptoms such as <u>cognitive dysfunction</u>, <u>memory loss</u>, sleeplessness, depression, diminished impulse control, episodes of anger, and <u>dementia</u>, among others. Until recently, CTE could only be confirmed through an autopsy. **Tau proteins are released whenever a concussion occurs**.*

6

In fact -- Nolan's arbitration attorney further verified in 2009 Nolan's signing of the *Letter of Authorization* when questioned by an arbitration judge:

> *"MR. MEEKS [Nolan's arbitration attorney]: He admits that's his signature. His testimony is he wasn't aware.*
> *ARBITRATOR MEYERSON: So somebody signs a statement that says, **Please grant Philip Kenner access to a line of credit for direct deposit into Little Isle IV**. Doesn't somebody have to take responsibility for that?"* [7]

- *ECF No. 786* hi-lighted Kenner's multiple previous requests to the Court to follow-up on the CTE Requests for Admissions, or in the alternative, open additional discovery to explore the extent of the newly-discovered CTE litigation admissions of **brain damage** by Berard, Nolan, and others in 2014 and prior.

Nolan's counsel continues with another falsity to this Court, perhaps knowingly. Counsel stated: "*Mr. Nolan was forced to sell his home to repay Northern Trust Bank after Mr. Kenner had fraudulently opened a line of credit in Mr. Nolan's name and used it for his personal benefit.*"

Counsel's representations misstate every reality in evidence. **First** -- the Northern Trust Bank LOC was collateralized. Nolan *received* the "overage" of his Northern Trust collateral account after the LOC was "closed" (approximately $500,000) (just like every other LOC investor agreed to with Northern Trust Bankers Mascarella and Brill on independent phone calls).[8] Thus, Nolan had no further financial obligation with Northern Trust Bank contrary to counsel's misleading representations.

---

[7] See *Horvath v. Banco Comercial Portugues, S.A. and Millennium BCP Bank, N.A.*, 461 Fed. Appx. 61; 2012 U.S. App. LEXIS 3012:

- In *Horvath*, **the investor argued that the terms and conditions were *written in Portuguese*, which he did not understand, but the Court of Appeals found that the investor was charged with knowing and understanding the contents of the documents that he signed**.

The Court opined "If the signer can read the instrument, not to have read it is gross negligence; if he cannot read it, not to procure it to be read is equally negligent; in either case the writing binds him. Parties are bound by documents expressly incorporated by reference into agreements to which they manifest their assent."

[8] Peca verified his independent and required call with Northern Trust bankers on April 1, 2009:

| 7415 | +17163743234 Michael Peca* | 4/1/2009 10:38:15 PM(UTC+0) | Sent | [Kenner]: **A Northern trust person will Call you to confirm your transfer to Schwab. Please acknowledge.** |
|---|---|---|---|---|

7

**Second** – counsel ignores that *Nolan **signed** over 20 documents* with Northern Trust Bank; ***including the specific LOC documents to OPEN the LOC initially***:
- (1) His **1-page** 2004 *Extension of Credit* (*Ex. T at 3: dated by Nolan "10/29/04"*),
- (2) His **1-page** 2004 *Letter of Authorization* (*Ex. U at 4*),
- (3) His initial **1-page** 2004 *Disbursement Request & Authorization* (*Ex. Q: fully undisbursed*),
- (4) His **1-page** 2005 *Disbursement Request & Authorization* one year later (*Ex. P: fully disbursed*); and
- (5) His 2004 (8-page) *Control Agreement* (*countersigned by Greg Cygan and Edward Wilson*), and
- (6) His 2004 (11-page) *Master Note* (*as "BORROWER" directly above his signature*).

**Third** -- Counsel ignores that Nolan's wife (Diana, a.k.a. *Sweet Pea*), their personal assistant (Myrick), and their private Banker (Kim Crane, from Wells Fargo Bank) all *independently* handled Nolan's LOC payments and discussions, independent from Kenner's involvement (*Ex. M*) (*Ex. N*) (*Ex. O*); **making all concealment impossible**.

**Fourth** -- counsel ignores that Nolan's Northern Trust Banker, Aaron Mascarella, confirmed that he spoke independently with Nolan on several occasions between 2003 and 2006 during Mascarella's March 9, 2009 deposition (under the questions from Nolan's 2009 arbitration counsel).  Mascarella *verified thru testimony*, amongst other exculpatory verifications:

[Mascarella March 9, 2009 deposition -- *at Tr.23*]:

| | | | | |
|---|---|---|---|---|
| 63255 | +17163743234 Michael Peca* | 4/1/2009 10:44:43 PM(UTC+0) | Read | [Michael Peca]: **Got it. Call already done**. Was this the plan b/c it makes sense to pay the line off or b/c the the loan defaulted? Honestly |

Sydor verified his pending independent call with Mascarella ("*erin someone*") on April 1, 2009:

| | | | | |
|---|---|---|---|---|
| 63116 | +19725230505 Darryl Sydor* | 4/1/2009 8:48:29 PM(UTC+0) | Read | [Sydor]: **Hey someone from northern trust called with someone from schwabb. And want to do a conference call in a hour with erin someone** |
| 74409 | +19725230505 Darryl Sydor* | 4/1/2009 10:04:40 PM(UTC+0) | Sent | [Kenner]: **Call me after u speak to them** |

8

> *Q.    Okay.  Now, with regard to the line of credit account, <u>who was authorized to make transfers out of that line of credit</u>?*
> *A [Mascarella]: Owen **and Phil.***
>
> *Q.    Was there <u>any limitation on Mr. Kenner's ability to transfer money out of the account</u>?*
> *A [Mascarella]: No.  It was -- Yes.  I'm sorry.  It was -- The proceeds were only to go to Little Isle Ventures, Little Isle IV, I think, if I remember correctly.  He signed -- <mark>**<u>Owen Nolan signed a bank authorization</u> or an authorization letter to the bank authorizing Phil Kenner to transfer money from the line of credit into the Little Isle IV account**</mark>.*

[Mascarella March 9, 2009 deposition -- *at Tr.24*]:
> *Q:    During the time period from -- From the time you opened the Nolan account until the end of 2006, <u>did you have conversations with Mr. Nolan concerning the line of credit</u>?*
> *A [Mascarella]: Conversations -- **I spoke to Owen infrequently**.  I've only had brief conversations with him.  And my guess is that **<u>it was only relating to the payments, that the payments were being made or not being made</u>**.  There was a few times when the payments were slow, that **we sent out default letters**, which probably -- You know, I can't remember every conversation I had with him but I assume he might have responded to one of those default letters.*

**FIFTH** -- counsel ignores that with Nolan's arbitration counsel **aware** of the Northern Trust Banker's verifications, he allowed Nolan eight-weeks later, to falsely testify during the arbitration that he had no knowledge of his Line of Credit:
> *Q. Did he [Kenner] discuss with you securing a line of credit for the Hawaii investment?*
> *A [Nolan]: No.*

- This testimony was 15-months after the 5-day text and phone communication between Kenner and Nolan to facilitate his 4th signing of the renewal package for his Northern Trust LOC.  Per Northern Trust Banker Mascarella's 2009 deposition (*supra*), Nolan had been in ***independent*** communication with him, thus, if Nolan in December 2007 (*infra*) was unaware of the LOC (he previously spoke to Mascarella about in 2003-06), *nothing* prohibited Nolan from contacting Northern Trust independently and inquiring about the LOC his CTE (or other intentions) allowed him to forget by May 2009 (and continue thru 2015).

9

**SIXTH** -- further hi-lighting the perjury or CTE symptoms of Nolan as far back as 2009, counsel ignores that Nolan and Kenner had a December 2007 text communication before Nolan re-signed his 4th LOC renewal for Northern Trust Bank (*Ex. L*).  Kenner hi-lighted:  *[Kenner]:* "*I need to send you via FEDEX LOC docs from Northern Trust that MUST be signed and returned by the end of the year. Where are you the day after XMAS??*" -- and "*The papers are for your Line of Credit at Northern Trust. The Bank sent them to me for the renewal of the LOC on friday and said they MUST be signed and returned by end of year. Its not just you. All of the guys have to do it. I don't make these rules. Where can I send them for next Wednesday or thurday fedex delivery?? PK*"

The communication included verification of two independent phone calls between Nolan and Kenner about the LOC.  Following the second phone call, Nolan used Kenner's FedEx account to send his signed renewal package to the bank on December 31, 2007 (*Id. at 3*).

- Please note that 15 months later (May 2009), Nolan testified during the arbitration that Kenner *never* discussed the LOC with him.  His attorney sat silent.

**SEVENTH** -- Nolan had possession of his 2006 Little Isle 4 k-1 tax document, which verified his "*$2,300,000*" contribution and his "*$761,458*" payment from the Lehman Brothers 2006 JV (*Ex. K: mailed to Nolan's home residence*) that he signed off (*Ex. G at 8.*)[9]   Nolan 'bates stamped' it for his 2009 arbitration evidence (Bates stamp: NOLAN0005044).  <u>The government misrepresented</u> the document as not being in Nolan's possession (*Tr.2145-46 [Michiewicz]: "So the only place we know it lives is in the defendant's own home and records. We have no information that this information ever either got to Mr. Nolan or was filed with his return to the IRS.*").  Nolan <u>verified thru testimony</u> that his wife handled the tax paperwork and business (*Tr.2112-13*).

**And EIGHTH** – counsel mis-states: "*Mr. Kenner clearly carried out a scheme to defraud Mr. Nolan…by gaining their trust and persuading them to <u>invest</u> in various development projects and then <u>stole</u> their money.*"   Counsel ignores the government's post-trial evidence (*government-forfeiture-44*) confirmed that Jowdy received 100% of the loans that Nolan is noted participating in via conference calls in real time (*Ex. W at 1*); and *did not steal* any of it (*government-forfeiture-36*) to purchase anything,

---

[9] *Noting Nolan's <u>signature</u> and <u>handwriting</u> matches the recent updated 'victim statement' he printed, signed and dated; ECF No. 843-1 at 2*).  The signature and handwritten date match Nolan's 2004 *Extension of Credit* for his Hawaii "*investment*" thru Northern Trust's LOC (*Ex. T at 3*); which counsel <u>verified</u> Mr. Nolan "<u>contributed</u> to the various property and development projects at the heart of the matter" (*ECF No. 843 at 1*).

10

despite the government's constant haranguing thru its 2019 sentencing misrepresentations, which contradicted their-own forfeiture evidence submissions (*ECF No. 765 at 8: "Kenner used approximately $2.4 million to buy a personal stake in property in Mexico"*).

- It will remain untrue and prejudicial regardless of how many times the government repeats this falsity.
- The Court should note that the FBI coerced Nolan, the Pecas, and others (thru the help of John Kaiser and Bryan Berard) that the funds Kenner "*stole*" by <u>*not giving the Hawaii-Jowdy loans to Jowdy*</u> were in Kenner's "*frozen bank accounts*" and they would receive them once Kenner was convicted.   Owen Nolan's private assistant (who was handling the Nolan LOC payments in 2006 with Nolan's wife: *Ex.M, Ex.N, Ex.O*) emailed Kenner's pre-teenage son post-trial and demanded:
  
  *"They want to know where their fucking money is!"*

==The source of the "stolen" funds lie…==

The FBI agent <u>*lied*</u> to the investors and – *to this day* – refuses to explain that Jowdy received *all the loan money* just as Kristen Peca (and all Hawaii partners) expected him to (*government-forfeiture-44*) (*Ex. Z*) (*ECF No. 668: Appendix at 445-450, et.al.*); *infra*.

This is the same coercive language and promises made by FBI agent Galioto to Michael and Kristen Peca before Kristen Peca's 2012 FBI recordings of Kenner, identifying one source of the misleading "*stolen*" coercion:

> ==*Kristen Peca – Matt [Galioto] told Michael and I that you stole all of the Hawai'i money and never gave it – the loan money -- to…uhhhh…Jowdy.*==
> 
> *Kenner – Kristen – I have all of the bank records that prove the money went to Jowdy and his accounts at all times.  I told you that already. You told me that you saw the bank records after I sent them to Michael.  You know -- the attorneys who sued Jowdy for the money in Mexico and Arizona and California used them to confirm the loans before we sued?*
> 
> *Kristen Peca – but – I don't understand why he would say it.*

==These are the same recordings that *Kristen Peca admitted she did not know her husband had a LOC at Northern Trust Bank*== – thru 2012 (the date of the FBI call).

> **[Kristen Peca]** – *Well, I was referencing the earlier stuff that you said, <u>I don't remember a large amount being distributed back to our account</u> and the timing of the years of the loan, the line of credit, <u>that happened when we were in Ohio [2008 & 2009]?   I don't understand how it could have been open for 5 years before that?</u>  Because we had a bond account going?   ==Do you mean the Hawai'i; you had a line of credit, **but not for us**==?*

11

> **[Kenner]** – *No, no, you guys had lines of credit for 5 years at Northern Trust.*
>
> **[Kristen Peca]** – *for 5 years?*
>
> **[Kenner]** – *for 5 years!   When you were in OHIO, that's when the thing [LOC] closed.*

*Kristen Peca's complicity with FBI agent Galioto…*
Clearly, Kristen Peca's entire testimony about the LOC "set-up" conversation in 2005 begging Kenner not to move her bonds because they were her "*baby*" (*Tr.696-700*) was a fraud on the Court.   **Noting** for the Court that despite Michael Peca's verification (*Tr.384*), along with his complicit wife (*Tr.699*), that they *finally* agreed to move their bonds, **NO BONDS WERE EVER MOVED** (*Ex. J at 2, 3, 7*).   Next, Kristen Peca's testimony about receiving the March 2009 default letter (*GX-717*) (by signing for it, a.k.a. FedEx delivery per the actual default letter) while in Ohio and waiting for her husband to come home from practice that day to find her "*in shock*" (*Tr.710-13*) was a fraud, for two reasons.

> *One*, the letter was mailed via FedEx to their New York address thus it could not have been signed for in Ohio in March 2009, and
> *Two*, if she went thru this traumatic experience about her "*baby*", how did she not know about the LOC at all during her 2012 FBI recordings with Kenner?

It was a completely fabricated scenario to include a person who: (i) was *never* Kenner's client, (ii) had her husband's investments and business transactions hidden from her **at Michael Peca's request,**[10] and (iii) had met Kenner face-to-face less than 10 times during the 15 years Kenner was Peca's Business Manager.

---

[10] Michael Peca concealing his business from his unknowing wife:

| | | | | |
|---|---|---|---|---|
| 62116 | +17163743234 Michael Peca* | 2/1/2009 9:07:32 PM(UTC+0) | Sent | [Kenner]: ***I'm on the phone with our Atty about your insurance now***. Enjoy the game. Speak later. |
| 52887 | +17163743234 Michael Peca* | 2/2/2009 8:07:47 PM(UTC+0) | Read | [Michael Peca]: **Have an idea. Agaist my better judgement and my wife is not to know.** Call me |
| 52888 | +17163743234 Michael Peca* | 2/2/2009 8:16:16 PM(UTC+0) | Read | [Michael Peca]: Can u talk now |
| 52889 | +17163743234 Michael Peca* | 2/2/2009 8:27:44 PM(UTC+0) | Read | [Michael Peca]: **Just get me a general letter saying the matter is concluded without mention of the payment**. |

12

*Juneau's sentencing letter to this Court hi-lights his severe CTE symptoms (resulting in similar confabulation by Nolan, Berard, Sydor, Rucchin, etcetera)…*

- Juneau <u>*verified thru testimony*</u> that he received 100% return of capital in the EDNY matters rendering his testimony thru the government as vindictive and without value (*Tr.231-32*).  **Juneau had no loss**.

**FIRST** – In his sentencing letter, Juneau alleges that he signed up for a RCA (Royal Compensation Agreement) Trust with Kenner during the pendency of his NHL career while playing in Canada.  **It is incorrect**.  Juneau had an *independent* trustee from his accounting office that managed the RCA tax filings in the USA and Canada.  Kenner had no involvement or 'control' of the RCA program (successfully utilized by hundreds of pro athletes and business executives).   In addition, Juneau lost no money while 50% of the potential tax savings remained in an interest bearing account for years before it was returned to him.   His own decision, post career, was the downfall of the RCA plan he created with his personal tax advisor.
- The conflation of any Kenner responsibility is irresponsible and prejudicial.

**SECOND** – Juneau conflated a $1.5 million loan-investment he undertook with the sole assistance of his French-Canadian investment advisor[11] with a 3rd party private equity company in the software development business in or about 2004.  Kenner terminated their business management relationship, *because* Juneau refused to pay his service fees in April 2003.   Juneau makes the outrageous claim that he believes Kenner used his money (in 2004 or so) to buy his Arizona residence.   Kenner's home was purchased in 1999 – **five years ahead of Juneau's confabulated storyline**.
- *It is simply more confabulated nonsense*.

**THIRD** -- Ultimately, Juneau – *like Nolan* – cut their 2009 settlement "deals" with Jowdy for *all* Hawaii-Mexico funds Jowdy received directly or indirectly, personally or thru any Jowdy-corporate entity.  They each independently *bargained for* and *received* an incremental 1% equity stake in the Diamante Cabo san Lucas project in exchange for "no further actions" versus Jowdy or any Jowdy related entity (which

---

[11] Juneau <u>*verified thru testimony*</u> during the Nolan arbitration in 2009 that his French-Canadian advisor had "not returned" a single dollar of his multi-million dollar offshore investment in the Bahamas from 1996, losing all of it (confirmed 13-years after the original Juneau transfer of funds) (*Tr.233*).   This is Juneau's "trusted" advisor who worked with the FBI and Juneau to support Juneau's losses, and sat thru his 2015 testimony.   The Court discovered thru testimony that Juneau had been repaid by all private deals, here, years before Juneau actually sued Kenner and the independent private companies for repayment.   Juneau dropped his cookie-cut lawsuit with Kenner after the Kenner defeat of the Nolan "theft" claims in 2009 (both represented by the same attorneys working hand-in-hand with Jowdy).

13

included all entities that Jowdy received Hawaii-loan funds from).   This "1% deal" had a value of approximately $3,250,000 in 2009 ($450 million Cabo property appraisal and $125 million MAXIMUM loan in February 2009 thru Lehman Brothers).   They have been fully compensated.   Neither Juneau or Nolan knew that their attorney was working hand-in-hand with Jowdy and his attorneys versus Kenner by 2009 to "pass blame" for the Jowdy-documented thefts (*from the Hawaii loans and ten million-plus more: ECF No. 667*); continuing thru the government's trial graft of "*bogus*" (*Tr.5708 (2x), 5709*), "*phony*" (*Tr.4597, 4598*) and "*supposed*" (*Tr.5707-5708*) agreements – including the AUSA's false-proffer that the loan agreement was a "*Kenner cover-up story*"?

- **The government knew at all times that their position was false**.

Juneau's angst has no place in this courtroom, which has been inundated by foundationless innuendo for seven years (and six-years of slander prior to that to distort the empirical facts in all related matters, **once Kenner whistle-blew on Jowdy's schemes**).   Juneau's current statements are supported by nothing more than mis-representations of facts in evidence.   In contrast to his revisionary history, the Court and the government know that Juneau was *begging* Kenner to handle his business again in 2005 when he emailed Kenner (*Ex. F: 3500-JJ-6, thus known to the FBI investigation*):

[From Juneau to Kenner – May 18, 2005]:
> "*Phil. Like I told you a few times already.   I'm not very comfortable with this situation.  **It has nothing to do with you but everything to do with the way I am**.   ...I just want to have it [Juneau's money] invested in BONDS with Northern Trust and **under your management***."

- Kenner turned him down, again.

The same email string confirms that Kenner affirmed in 2005 that: "*Hawai'I.  Your loan is well.*" (*Id. at 2*).   In May 2005...one year before Juneau testified he found out about his loan (LOC) (*Tr.139*) – he was obviously aware (like all of the investors empirical evidence verifies).

*Conclusion...*
Your Honor, the more the individuals involved in the various investments speak directly to the Court (post-trial), the more it is obvious that they have been misled about the validity of the Jowdy loans, who has them, **who doesn't have them**, the reality of why there was a conviction, and what they were told to "mis-remember".

14

Even repeated turncoat and trial perjurer, John Kaiser <u>verified</u> to the Court in February 2019 that the pretrial Galioto *misrepresentations* about the Hawaii loans (*government-forfeiture-44: Hawaii-Jowdy loan verification* -- and *3500-KJ-2 at 1, 12-14: Jowdy's 2010 confessions to Galioto*) Galioto always knew Jowdy received (*ECF No. 628 at 1*) were false, stating:

> "*Jowdy would like the court to think that Kenner stole $7 million from the hockey players and others…*"

After seven years of morass since Kenner's arrest and detainment, the lion's share of the investors are still being misled that Kenner "*stole*" their money.  These are not Kenner's pleas for leniency, but moreover are the words of the alleged victims, themselves, that have been manipulated ad nauseum into believing that money they knowingly invested and verified (prior to trial) and loans they participated in thru "*group*" discussions and multiple "*updates*" are not what they knew they were.

Nolan's personal assistant's brusque statement tells the Court all it needs to know about the misleading storylines (for a myriad of previously argued "protectionism"):

> *[Myrick]: "They want to know where their fucking money is!"*

Why wouldn't the FBI and the government just come clean and show them **who** really has the money?   They know the investors would revolt (with the exception of Berard and Kaiser due to their multiple title frauds on Kenner).   The investors who have communicated with Kenner post-trial have verified and re-verified the government "storyline" that Kenner stole all of it for his "*personal benefit*"[12]; which the Court knows thru empirical and exculpatory documents **is not true**.

The FBI agent convinced the investor's Florida attorney, Steve Main, post-trial that Jowdy had been thoroughly investigated and Kenner "stole" the money.  Thus, without any personal knowledge and solely relying on the integrity of Agent Galioto, without any foundation – investor attorney Steve Main declared February 20, 2017:

> "*Finally for those of you who are convinced that Jowdy is guilty of some crime… I simply note that the circumstances surrounding the Diamante del Mar project and the Cabo project and the relationship between Kenner and Jowdy has been exhaustively investigated over several years by the FBI, SEC and the U.S. Attorney of the EDNY.*"

None of this amounts to a verdict of confidence and a resolution thru sentencing, money judgment, and forfeiture that satisfies the two-decades of torture Kenner and

---

[12] *ECF No. 843 at 2*: Nolan's attorney's mis-representation of facts that do not exist.

15

his investors have been thru with full transparency before Galioto's intervention, carrying the "*above reproach*" belief in the Federal Bureau of Investigations.   The Court's role is to protect the rights of a defendant, who is faced with the monumental opponent of the most powerful nation in the history of the World and its premier law enforcement agency.   *Berger*[13] hi-lights the deficient position of the sole defendant and the government's burden to act with integrity.   ***It has clearly failed, here.***

Sincerely,

Phil Kenner, Pro Se

Dated: June 16, 2020

---

[13] It is their responsibility under *Berger v. United States*, 295 U.S. 78, 55 S. Ct 629, 79 L. Ed 2d 1314 (1935), as the Supreme Court noted in 1935:

> *"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all, and whose interest, therefore, in a criminal prosecution is <u>not</u> that it shall win a case, but that <u>justice shall be done</u>.   As such, he is in a peculiar and very definite sense the servant of the law.   He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, <u>he is not at liberty to strike foul ones</u>.   It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction, as it is to use every legitimate means to bring about a just one."*