WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                                  :

| | |
|---|---|
| In re | : Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : 08-13555 (JMP) |
| Debtors. | : (Jointly Administered) |

----------------------------------------------------------------------x

**DECLARATION OF DANIEL EHRMANN**
**IN SUPPORT OF DEBTORS' MOTION PURSUANT**
**TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT**
**AND COMPROMISE WITH DANSKE BANK A/S LONDON BRANCH**

Pursuant to 28 U.S.C. § 1746, I, Daniel Ehrmann, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the *Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of a Settlement and Compromise with Danske Bank A/S London Branch* (the "Motion"),[1] dated October 26, 2011, ECF No. 21298.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

3.        I am Managing Director with Alvarez & Marsal North America, LLC.  I was assigned to the Lehman matter in September 2008.  I am a co-head of the derivatives group for the Debtors.  In that capacity, I am responsible for and manage all derivatives-related matters of the Debtors.  I have knowledge of, or have worked with or overseen Lehman employees who have knowledge of, the discussions related to the transactions discussed in the Motion and in this Declaration.  It is in my business judgment that the relief requested in the Motion is in the best interests of the Debtors and their estates.

4.        Pursuant to the MRA dated August 30, 1999, LCPI sold and agreed to repurchase a number of commercial and residential loans to and from Danske.  LBHI guaranteed certain of LCPI's obligations to Danske under the MRA and under a committed repurchase facility agreement, dated March 17, 2005, pursuant to the Guarantees.  On September 23, 2008, prior to LCPI's Commencement Date, Danske declared an "Event of Default" under the MRA.

5.        Danske filed the Deficiency Claims in the amount of $699,657,333.82 against each of LCPI and LBHI to recover amounts allegedly owing to Danske under the MRA and the related Guarantees, respectively.  Danske and the Debtors have been involved in ongoing disputes regarding the Deficiency Claims.  Commencing in December 2008, over the course of several months, LCPI assigned to Danske all of the Loans that had been sold to Danske under the MRA as of the Commencement Date, with one exception.  LCPI and Danske then proceeded to negotiate Danske's deficiency claim under the MRA after giving credit to LCPI for the value of the Loans that were so assigned to Danske.  After some initial discussions, LCPI and Danske reached an impasse as to the calculation of the deficiency claim as a result of a dispute in the value of the assigned Loans.  Another effort to resolve the deficiency claims a year later also resulted in an impasse over values.  Earlier this year, LCPI engaged CB Richard Ellis, a real

estate and commercial loan appraiser, and Clayton IPS, a valuation firm specializing in the valuation of residential mortgage pools, to value the Loans as of September, 2008. Upon receipt of the final appraisals, LCPI and Danske exchanged valuations on the assigned Loans and underlying real estate projects and proceeded to engage in negotiations regarding the calculation of a deficiency claim based on the parties respective valuations. These negotiations led the parties to seek non-binding mediation, resulting in the settlement embodied in the Settlement Agreement, which is a result of extensive, arms'-length and good-faith negotiations.

6.  In order to resolve the disputes between the Parties regarding the Deficiency Claims and certain other disputes relating to Danske's claims against the Debtors, and to avoid protracted, costly, and uncertain litigation, the Parties have entered into the Settlement Agreement. The Settlement Agreement principally provides for (i) the reduction and allowance of the LCPI Claim as a non-priority, general unsecured claim in a fixed, liquidated amount equal to $580,000,000.00, and classification and treatment of the LCPI Claim as an allowed claim in LCPI Class 4A under the Plan; (ii) waiver and release with prejudice of the Additional Claims, which were filed in the aggregate amount of not less than $39,798,205.22; (iii) other than the Allowed LCPI Claim and the Excluded Danske Claims, the expungement, extinguishment, disallowance and release of all other claims (as defined in section 101(5) of the Bankruptcy Code) asserted or held by Danske against LCPI; (iv) the reduction and allowance of the LBHI Claim as a non-priority, general unsecured claim against LBHI in a fixed, liquidated amount equal to $580,000,000.00, and classification and treatment of the LBHI Claim as an allowed claim in LBHI Class 5 under the Plan; (v) other than the Allowed LBHI Claim and the Excluded Danske Claims, the expungement, extinguishment, disallowance and release of all other claims (as defined in section 101(5) of the Bankruptcy Code) asserted or held by Danske

against LBHI; (vi) Danske's assignment, transfer, conveyance and delivery of the Playa Pelicano Loan, a secured loan in the original principal amount of $33,000,000 made by LBHI to Playa Pelicano Holdings, SRL, free and clear of any liens, claims, set-off rights, or participations to LCPI or its designee; and (vii) mutual releases.

7. In connection with the Settlement Agreement, Danske has executed an agreement to support the Plan, pursuant to which, among other things, Danske has agreed, subject to the requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order, to vote, in a timely fashion, to accept the Plan with respect to the Allowed LCPI Claim, the Allowed LBHI Claim, all of its remaining claims, with a couple of exceptions noted in the Settlement Agreement, and any claims that may be acquired and controlled by Danske in the future.

8. The Lehman Parties' entry into the Settlement Agreement is in their best interests. The Lehman Parties may have substantial liabilities arising out of the Deficiency Claims, and the Settlement Agreement obviates costly and protracted litigation with Danske, which would require significant expenditures of both time and resources by the Lehman Parties and their professionals.

9. Under the Settlement Agreement, the amount of each Allowed Claim is significantly below the amounts asserted by Danske, especially in light of Danske's assertion that the magnitude of its claims actually exceeds the amounts set forth in the Deficiency Claims. When considered in light of the other benefits of the Settlement Agreement, including the transfer of the Playa Pelicano Loan and the releases, and based upon the Debtors' analysis of the loan attributes, property information, loan performance and collateral values with respect to the

Loans, the amount of the Deficiency Claims to be allowed pursuant to the Settlement Agreement is reasonable.

I declare under penalty of perjury under the laws of the Unites States that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of October 2011.

/s/ Daniel Ehrmann