UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

7/10/2020 3:24 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

-----------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 13-cr-00607-JFB
                             :
    - versus -               : U.S. Courthouse
                             : Central Islip, New York
                             :
PHILLIP A. KENNER, et al.,   : July 8, 2020
                Defendants   : 2:38 PM
-----------------------------X


TRANSCRIPT OF CRIMINAL CAUSE
FOR TELEPHONE STATUS CONFERENCE
BEFORE THE HONORABLE VISITING JUDGE JOSEPH F. BIANCO


**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government**:          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                        BY:      **Saritha Komatireddy, Esq.**
                                 **Matthew Haggans, Esq.**
                                 **Diane Leonardo-Beckmann, Esq.**
                                 **Madeline O'Connor, Esq.**
                                 Assistant U.S. Attorney
                                 100 Federal Plaza
                                 Central Islip, NY 11722

**For Defendant Constantine**:   **Sanford Talkin, Esq.**
                                 **Noam Greenspan, Esq.**
                                 Talkin, Muccigrosso
                                 & Roberts LLP
                                 40 Exchange Place, 18th Fl.
                                 New York, NY 10005

**For Defendant Kenner**:        **Phillip Kenner, pro se**
                                 No. 07480-408
                                 MDC Brooklyn
                                 Metropolitan Detention Ctr
                                 P.O. Box 329001
                                 Brooklyn, NY 11232

**For Defendant Kenner
(Stand-By)**:                    **Matthew W. Brissenden, Esq.**
                                 Stephen Scaring PC
                                 666 Old Country Road
                                 Suite 501
                                 Garden City, NY 11530

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


**APPEARANCES (Cont'd)**:

**For Interested Parties**:

**Thomas McC. Souther:**          **Kevin P. Mulry, Esq.**
                                  Farrell Fritz, P.C.
                                  1320 RXR Plaza
                                  Uniondale, NY  11556

**Danske Bank:**                  **George Kostolampros, Esq.**
                                  **Kelly S. Weiner, Esq.**
                                  **Xochitl S. Strohbehn, Esq.**
                                  Venable, LLP
                                  1290 Avenue of the Americas
                                  New York, NY 10104

**Property Owners:**              **Marc Wolinsky, Esq.**
                                  Wachtell Lipton Rosen & Katz
                                  51 W. 52nd Street
                                  New York, NY 10019

**Owen Nolan:**                   **Seetha Ramachandran, Esq.**
                                  Proskauer Rose, LLP
                                  Eleven Times Square
                                  New York, NY 10036


**Transcription Service**:        **Transcriptions Plus II, Inc.**
                                  61 Beatrice Avenue
                                  West Islip, New York 11795
                                  laferrara44@gmail.com

3

Proceedings

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

1          THE CLERK:  Calling 13-cr-607, <u>United States of</u>
2   <u>America v. Phillip A. Kenner and Tommy C. Constantine</u>.
3          Counsel, please state your appearances for the
4   record.
5          THE COURT:  Actually, you know what?  Hold on a
6   second.  Why don't we do it this way, just so it's more
7   organized.  I'll just call off who I think is on the
8   line, and just confirm that you're on the line.
9          Mr. Kenner, are you on the line?
10         DEFENDANT KENNER:  Yes, sir.
11         THE COURT:  Mr. Brissenden?
12         MR. BRISSENDEN:  Good afternoon, your Honor.
13         THE COURT:  Good afternoon.
14         Mr. Constantine?
15         DEFENDANT CONSTANTINE:  Yes, your Honor, I'm
16   here.
17         THE COURT:  Mr. Talkin?
18         MR. TALKIN:  Yes, good afternoon, your Honor.
19         THE COURT:  Good afternoon.
20         And then for the government, we have Ms.
21   Leonardo-Beckmann, Mr. Haggans, Ms. O'Connor, and
22   Ms. Komatireddy?
23         UNIDENTIFIED SPEAKER:  We are all on, your

4

Proceedings

1    Honor.

2              Good afternoon.

3              THE COURT:  Good afternoon.  And Mr. McSouther,

4    and Mr. Mulry?

5              MR. SOUTHER:  Yes, good afternoon --

6              MR. MULRY:  Good afternoon, your Honor.  Mr.

7    Souther is on the line.

8              THE COURT:  Good afternoon, to both of you.

9              Mr. Kostolampros, Ms. Weiner, and Ms. Strohbehn

10   for the bank?

11             MR. KOSTOLAMPROS:  Yes, your Honor.  Yes, your

12   Honor, we are on the line.  Good afternoon.

13             THE COURT:  All right, good afternoon.

14             Mr. Wolinsky, are you on the line?

15             MR. WOLINSKY:  Yes, I am.  Good afternoon, your

16   Honor.

17             THE COURT:  Good afternoon.

18             And I don't know if Ms. Ramachandran is on the

19   line.

20             MS. RAMACHANDRAN:  I am, your Honor.

21             THE COURT:  Oh, great.

22             MS. RAMACHANDRAN:  Good afternoon.

23             THE COURT:  Good afternoon.  All right.

24             So I've got a number of things I wanted to go

25   through today.  I'm going to start with the forfeiture

5

Proceedings

1    issues because some people may not want to continue to be
2    on the call once we get through those issues.
3           So I did obviously receive the various
4    submissions related to the discovery with respect to the
5    government, and the bank regarding the forfeiture issues,
6    forfeiture motion.  I did -- this is what I -- I'm going
7    to tell you what my general approach is going to be and
8    then obviously, I'll let each side have an opportunity to
9    be heard because I have reviewed all the submissions.
10          The bottom line is that I do think that the
11   government's requests are overbroad, burdensome, and
12   potentially irrelevant in many respects but I'm also not
13   able to determine -- obviously, there's a lot of
14   documents, there's a lot of issues, I cannot determine
15   that nothing that the government asked for would be
16   warranted for purposes of the discovery, and as
17   indicated, they have a forensic accountant who they're
18   working with who is obviously guiding them in terms of
19   what he or she believes or some of the additional
20   documents that the government would need in connection
21   with the summary judgment motion by the bank.
22          So this is the way I think we should proceed to
23   obviously do this in the most expeditious manner, and
24   given my concern that a lot of what the government asks
25   for may be unnecessary.

6

Proceedings

1          I'm going to try to resolve a couple of things

2   that I see, just based upon the back and forth in the

3   letters, but the general -- what I'm going to direct the

4   government do is to respond to the summary judgment

5   motion on the merits, and to the extent -- I would just

6   note obviously by the fact that the government put in

7   this single-spaced multi-page letter on these various

8   issues, with a lot of arguments in there, it seems to me

9   to prove to some extent, that the government, based upon

10  the documentation that I've gotten so far is able to make

11  some of the arguments that it wishes to make in

12  connection with the bank's motions, and the requirements

13  that the bank must (indiscernible), but in any event, to

14  the extent that the government believes that they are

15  entitled to additional documents in order to properly

16  respond to the motion, then this is akin to a summary

17  judgment -- you know, the rules for summary judgment --

18  you know, the rules for summary judgment under the civil

19  procedure rules, the government could put in a

20  declaration under 56(d) from the forensic accountant or

21  from someone, you know, it doesn't matter who necessarily

22  it's from, but it has to be detailed with respect to why,

23  you know, a particular document or category of documents

24  is material to their ability to respond to the bank's

25  motion.

7

Proceedings

1        But the government should assume, based upon
2   the -- it should -- I don't want the -- that's not going
3   to be the government's only response to the motion.  The
4   government should respond on the merits based upon all
5   the documentation that they've gotten so far with the
6   assumption that they're not going to get any additional
7   discovery, but to make a request for additional discovery
8   in that format.
9        You know, having saving that, Mr. Kostolampros,
10  I just want to highlight, and I'm going to go through
11  this with you briefly in a moment, but the bank -- to the
12  extent that the bank, you know, is not voluntarily
13  producing certain things that the government has asked
14  for, and I know, obviously -- I'm not suggesting you
15  produce everything that they're asking for but the bank
16  is running the risk that once I get the government's
17  motion, if they do put in on those 56(d) declarations,
18  that if I believe they are entitled to additional
19  documentation, the bank runs the risk of slowing this
20  down because then I'm going to direct that you provide
21  those documents, and then the government may be able to
22  supplement through opposition, and that's just going to
23  slow things down, which I know is not what you want.
24        So I'm going to suggest to you, and I'm going
25  to just give you a few examples in a moment, that to the

8

Proceedings

1   extent that there are narrow requests that the government

2   is making, that the bank can produce easily, even if you

3   believe -- a lot of these, I know in your letters to me

4   you argue that it's irrelevant as a matter of law, it's

5   not going to matter, it's not the standard, I would

6   suggest to you that -- again, assuming that it's not

7   something very broad, that it would cost a lot of time

8   and money for the bank to produce, that even if you

9   believe that it's not relevant, or going to be relevant,

10  and I know you understand this because you produced a lot

11  of documents already, I would suggest that you just

12  produce it to avoid this potential delay down the line.

13  Right?  Do you understand what I'm saying Mr.

14  Kostolampros?

15          MR. KOSTOLAMPROS:  I do, your Honor, and you

16  should know, look, we made the offer to the government

17  months ago when we learned that they did have an expert,

18  is look our people are available to speak to their

19  experts, if they have any questions about any particular

20  transfers, any particular issue, and we're happy to walk

21  them through that -- those issues, and give them any

22  supporting documents.  So that offer remains standing.

23          THE COURT:  Okay.  Well, I would suggest the

24  government take you up on that offer, but I'm just going

25  to give you an example.  For example, on page 9 of the

Proceedings

1   government's response, on the July 3rd letter, they give

2   a list -- and again, I assume this is from the

3   accountant, of certain things that they would the

4   documentation.

5           And now it appears to me based upon reaching

6   the chart and your letter from June, that you are going

7   to give them some -- all of these Trimont (ph.) records

8   that they're seeking.  So maybe you already are going to

9   do some of these things, but that would be an example --

10   it seems like most of the things on that list would not

11   be, other than potentially the last thing, would not be

12   something that would be like thousands and thousands of

13   pages of documents.

14           So to the extent that they're accountant seeks

15   things, and I would charge the government either orally

16   with the government, or in a format similar to page 9, to

17   more narrowly identify specific things that the

18   accountant is concerned about, or believes that there's

19   some gap in the documentation because those are the ones

20   that I think are most likely, potentially create a

21   problem for the bank in a motion, if it turns out to be

22   something that's material.

23           And then on this broader issue with respect to

24   the government requesting very broad categories of

25   documents with respect to whether or not the bank had

10

Proceedings

1   notice that the property was subject to forfeiture, I'll

2   just state two things on that.

3          The first is, you know, I think the

4   government's argument with respect to that is fairly

5   weak, and the government could prepare its motion and Mr.

6   Kostolampros can tell me if I'm wrong on this, but the

7   government has this chart of all the publicly available

8   information that was out there about issues related to

9   the civil litigation, or other issues related to the

10   property that I think Mr. Kostolampros' argument is that,

11   assuming the bank was aware of every single one of those

12   things, it would be not be sufficient to put them on

13   notice that this property was going to be subject to

14   criminal forfeiture at that point in time.

15          So to that extent, that's -- there wouldn't

16   need to be any discovery on who knew which one of those

17   things on that chart because I think the bank's prepared

18   to take the position that even if the bank knew

19   everything on that chart, that it's not enough.  Is that

20   accurate, Mr. Kostolampros?

21          MR. KOSTOLAMPROS:  That is accurate, your

22   Honor.

23          THE COURT:  So the government should brief it

24   that way.  It should brief that assuming the bank knew

25   every single one of the publicly available things, you

Proceedings

1   know, to the extent the government is saying well, wait a

2   second, we want to -- beyond the publicly available

3   things, we want to go through every email the bank has,

4   about what they might've been known to them independent

5   of that, that I believe is a fishing expedition.  I'm not

6   going to tell the bank to produce -- you know, to go

7   through every document that could've ever existed

8   regarding anything that they were aware of publicly or

9   otherwise because there's no basis, mind you, to believe

10  that.

11          But again, this is another example, Mr.

12  Kostolampros -- there is a reference, I forget the

13  individual's name, the Fortune -- there's a Fortune

14  Magazine article?

15          MR. KOSTOLAMPROS:  Yes, Mr. Hughes (ph.).

16          THE COURT:  Right, so if -- and you know, I was

17  never a corporate lawyer, so maybe I don't understand

18  exactly what documents would be in this category but I

19  would assume that there's a pretty narrow category of due

20  diligence, reports, or documents that would exist for

21  2009 to 2014 time frame, at the time of the additional

22  loans, that could be made reference to, essentially our

23  due diligences would've picked up if there are any

24  problems.  So that would be, to me, something that the

25  bank, unless I'm missing something, should just produce

12

Proceedings

1   to the government.  If in fact, there was due diligence

2   done during that period that didn't reveal anything, you

3   know, in terms of something the bank -- would be a red

4   flag to the bank, I don't understand why the bank

5   wouldn't -- you know, I'm not asking you to search every

6   email in the bank's system, but I assume in a corporate

7   setting like that, there's going to be summary reports

8   that were generated regarding to whatever investigation

9   was done with respect to the resort before the additional

10  monies were lent, or am I missing something?

11         MR. KOSTOLAMPROS:  Yeah, your Honor, because

12  there's going to be emails that would be sort of

13  (indiscernible) in the due diligence category of when the

14  loan was acquired, and then afterward.

15         You know, like to separate sort of a due

16  diligence file, like let's say they have -- I'm

17  forgetting -- I'm blanking on what these are called,

18  these diligent rooms, right, you know, frankly I'm not --

19  I'll have to go back and look and see if there was a

20  diligence room that applied here, but you know, going

21  forward, I mean, the issue is where do you draw the line?

22  I mean, there are going to be emails going back to 2008,

23  2009, and throughout the time period, but where do you

24  draw the line on what is diligence, and what isn't.

25         Frankly, all of that is part of the diligence,

13

Proceedings

1   I would think, and in initially acquiring the loan, and

2   then later, you know, the various modifications.

3           THE COURT:  Well, maybe -- again, I would

4   assume that it wouldn't just be in the form of email,

5   that there's be some summary report that put together in

6   one document or, you know, this is everything that we've

7   learned from our investigation of the resort, that you

8   wouldn't have to search individual email accounts for

9   something like that, but if I'm wrong about that, then I

10  stand corrected on that.

11          I just assumed that --

12          MR. KOSTOLAMPROS:  Well, what we --

13          THE COURT:  -- there would be a summary

14  document that would try to compile -- that's what I --

15  that's where I draw the line is that if there's a summary

16  document that the bank utilized in making the final

17  decision, that's the type of thing that the government --

18  the bank should just produce.

19          Again, I'm not suggesting that necessarily

20  anything that was in there would necessarily meet the

21  standard under the law but I don't want to have a

22  situation where the government in opposition is saying,

23  you know, we didn't get any window into that at all.  Do

24  you understand?

25          MR. KOSTOLAMPROS:  Okay.  All right, I

14

Proceedings

1   understand.  I understand.  Let me go back and check and

2   see if there are, but my understanding is there isn't

3   anything that's a summary document.

4          THE COURT:  Okay.

5          MR. KOSTOLAMPROS:  But one other thing I wanted

6   to raise, your Honor, before you move on, and you did

7   talk about page 9 in the listing there.  One of the

8   issues there is, you know, they've asked for Trimont

9   records -- in particular two things, Trimont summary

10  reports, and invoices, and we provided everything that we

11  have in our records today.

12          To the extent something is missing, we just

13  haven't been able to locate it.  Remember, this goes back

14  to 2009, and we've provided everything that we've gotten

15  -- that we have to them.

16          They've also questioned picking $3 million in

17  advances.  Now they acknowledge that we provide wire

18  transfer information showing wire transfers from the bank

19  to Trimont, the third-party servicer, and now what

20  they're asking for is wire information from Trimont to

21  the borrower.

22          Now we don't have that but we do have Trimont

23  records that say look, this is how much the borrower now

24  owes.  So I don't know why we need to provide anything

25  else.  I mean, we've shown that we sent the money to --

15

Proceedings

1    that Danske sent the money to Trimont, and Trimont then

2    listed it out to the borrower, $53 million worth of

3    advances.

4              THE COURT:  Look again, I'm not going to go

5    through each one of these things.

6              MR. KOSTOLAMPROS:  Right.

7              THE COURT:  You know, you're entitled to make

8    the motion, and your argument is we've provided them

9    enough documents already for them to adequately respond

10   to this.  All I'm suggesting to you is I'm not denying

11   the motion for any additional discovery, I'm just going

12   to tell them they should make it part of their opposition

13   in the form of Rule 56(d) but I'm also telling you that

14   you should try to do your best at this juncture in the

15   next week or so, to the extent it's practical, and you

16   don't think -- you believe it's, you know, a total fixing

17   expedition to try to provide them with whatever narrow

18   additional categories of documents you haven't already

19   provided them with, all right?

20             MR. KOSTOLAMPROS:  Yep, yep.

21             THE COURT:  All right.  I don't know if the

22   government -- does the government have anything they want

23   to add on that?

24             UNIDENTIFIED SPEAKER:  Your Honor, the only

25   thing the government would like to address is that in

16

Proceedings

1   light of your Honor's instruction that in responding to

2   the bank's motion to summary judgment, the government

3   should assume it won't receive additional discovery.  The

4   government would respectfully request permission to

5   cross-move for summary judgment.

6            THE COURT:  That's fine.  You could do that as

7   well, but it's going to be at the same time.  You could

8   file your opposition, and cross-move simultaneously,

9   okay?

10           UNIDENTIFIED SPEAKER:  Yes, your Honor.  Thank

11   you.

12           THE COURT:  All right.  So I'm just going to

13   give you, and especially in light of that, I was going to

14   extend -- I think -- I forgot what date I gave you

15   initially, but the documents that you said you were going

16   to provide in a week or so, I think it was in your June

17   22nd letter, have those documents been provided to the

18   government, or are you still getting those together?

19           MR. KOSTOLAMPROS:  Your Honor, we provided

20   everything but two items, which we plan on getting to

21   them by the end of this week.

22           THE COURT:  Okay.

23           MR. KOSTOLAMPROS:  One is whatever English

24   translations of the trust agreement that we have, that we

25   haven't already produced, and then information related to

17

Proceedings

1   a transfer of October 24th, 2018, I believe, and we'll

2   provide that to them by the end of this week.

3          THE COURT:  All right.

4          MR. KOSTOLAMPROS:  But everything else has been

5   given to the government.

6          THE COURT:  All right.  And again, I'm

7   assuming, I'm hoping and maybe I'll be pleasantly

8   surprised that both sides will try to -- you know, again,

9   especially if the accountant wants to speak directly to

10  counsel regarding some of the things that are still

11  outstanding, I would -- you know, rather than wait for

12  that declaration, essentially the government should

13  highlight what would be in that declaration, not with

14  those broad categories that are in the chart, but more

15  narrowly targeted requests than the ones that are on page

16  9.  I'd suggest that take place over the next week or so.

17          But I'll give the government 45 days from today

18  which -- what's that, August 23rd?

19          UNIDENTIFIED SPEAKER:  Your Honor, I believe

20  that's Sunday.

21          THE COURT:  So that's the 24th?

22          UNIDENTIFIED SPEAKER:  Yes, your Honor, thanks.

23          THE COURT:  And then so Mr. Kostolampros, it

24  would be I guess your reply, and your opposition to their

25  cross-motion, so how much time do you want for that?

Proceedings

1           MR. KOSTOLAMPROS:  Your Honor --

2           THE COURT:  I know it's hard to say without

3  having it.

4           MR. KOSTOLAMPROS:  Right.

5           THE COURT:  But, you know --

6           MR. KOSTOLAMPROS:  And frankly, we're --

7           THE COURT:  You could always ask for more time

8  if you need it.

9           MR. KOSTOLAMPROS:  Yeah, look, I mean first of

10  all, I'd would just like to sort of address giving the

11  government 45 days from today, I mean look, they've had a

12  summary judgment motion, and I think we should stick with

13  the same calendar 45 days from the date that we filed it.

14  I mean, there's nothing new here.

15          The government has already raised its

16  arguments, and I think pushing this back just keeps

17  constantly pressing up to, you know, the issues that

18  we're facing.  I mean the resort still faces a lot of

19  uncertainty.  As we understand it, the resort has enough

20  cash to get it through the end of August, and is trying

21  to get to stretch that amount, but I think that pushing

22  this off -- and there's really no basis to push it off

23  because the Court -- the government has already raised

24  its arguments.  I think we all know what they're going to

25  argue.

19

Proceedings

1           THE COURT:  What was the -- I don't remember,
2    what was the date that I initially set?
3           MR. KOSTOLAMPROS:  It was 45 days after the --
4    Danske filed its summary judgment motion.
5           UNIDENTIFIED SPEAKER:  Your Honor, the date
6    originally was August 10th, so it's a mere two weeks
7    more.
8           THE COURT:  Yeah, I mean I'll make it August
9    17th.  I'll split the difference, okay --
10          MR. KOSTOLAMPROS:  Okay.
11          THE COURT:  -- with the government.  So August
12   17th, when you can put in your opposition to their motion
13   and your reply.
14          MR. KOSTOLAMPROS:  I would say I'd give us 30
15   days for that.
16          THE COURT:  All right.
17          MR. KOSTOLAMPROS:  And we needed more time,
18   we'll go back to your Honor -- come back to your Honor.
19          THE COURT:  Yep, yep.  So September 17th.  And
20   then I'll give the government till September 30th for the
21   reply on your cross-motion.  And then I'm not going to
22   set it now but I'm going to tell you what's going to
23   happen.  We'll have -- I guess I'll consider it an oral
24   argument in early October, you know, I would say within a
25   week or so of the 30th, but I'll ask any questions that I

20

Proceedings

1  have based upon the submissions, and you know, my plan

2  would be to rule shortly thereafter.

3          All right?  I know -- now Mr. and Mrs. Nolan, I

4  saw put in their claim, so how does the government want

5  to handle that?

6          UNIDENTIFIED SPEAKER:  Your Honor, we haven't

7  even looked at it.  I believe it's filed today.  So we'll

8  have --

9          THE COURT:  All right.  So if you want to look

10 at it, and then obviously have a discussion with counsel

11 regarding how you want to proceed with respect to that

12 because I want to try to keep these on the same track to

13 the extent possible, so Ms. Ramachandran, do you have any

14 proposal with respect to that?  Do you want to speak to

15 the government and put in a letter?

16         MS. RAMACHANDRAN:  I'll speak to the government

17 after this call and put in a letter.

18         THE COURT:  All right.  I did want to note that

19 for Mr. Kenner through Mr. Brissenden had made a renewed

20 request for this, and I think I mentioned in the last

21 conference about whether or not there was any type of

22 settlement agreement that was reached where there might

23 be an offset, and the government did put in a letter

24 addressing your letter, but the government basically says

25 in that letter, we don't know anything about a

21

Proceedings

1    settlement, and basically to ask you about it.

2             So again, I'm just requesting that at some

3    point you'll have to advise the Court, not just for

4    purpose -- obviously, I'm ruling to restitution, on the

5    issue of restitution, whether or not Mr. Kenner --

6    whether it should be an offset based upon a settlement

7    that was reached, okay?

8             MS. RAMACHANDRAN:  So I don't -- yes, your

9    Honor, just to tell your Honor where we are on that issue

10   now, I can certainly put this in writing, I'm not aware

11   of any settlement agreement.  There is an assignment

12   agreement which we appended to our petition which shows

13   Mr. Nolan's interest in the Diamante properties.  That's

14   not a settlement agreement.

15            I don't think that any -- even if there were a

16   settlement agreement, or even any other type of repayment

17   from an insurer or something like that, my understanding

18   of the law is that that is not an offset to restitution

19   that the defendant pays, it could potentially be an

20   offset to restitution owed to a victim, but it shouldn't

21   affect Mr. Kenner's restitution.

22            THE COURT:  Well --

23            MR. RAMACHANDRAN:  And I don't think it affects

24   Mr. Nolan's restitution here.

25            THE COURT:  Okay.  Well, we could address that.

Proceedings

1   You know, I'm not suggesting you're necessarily going to

2   have to disclose it.  We'd have to figure out whether or

3   not it would be the base of an offset, and first we would

4   have to figure out whether it exists or not.

5          So but Mr. Kenner, I don't know if you saw what

6   she's referring to, you're not referring to an

7   assignment, you think it is an actual settlement?

8          DEFENDANT KENNER:  Well, it's part and parcel

9   to the settlement agreement that the (indiscernible)

10  acknowledge in the 2017 agreement, I think (audio

11  interference) is that there was a previous settlement,

12  assignment, however you want to parse the words,

13  agreement with Nolan, Gino (ph.) and Moreau (ph.) back in

14  2009.

15         THE COURT:  Okay, so --

16         DEFENDANT KENNER:  So (indiscernible) the

17  agreement wasn't out of the goodness of Mr. Jowdy's

18  heart, it was an assignment agreement as part of a

19  settlement negotiation with them when they all decided to

20  work together with Jowdy (indiscernible) Investment

21  Group.

22         THE COURT:  All right, so I think Ms.

23  Ramachandran, it does sound like that's what he's

24  referring to, so if your belief is that any such

25  assignemtn would not legally be the basis for any type of

Proceedings

1    offset for Mr. Kenner's restitution, then you should

2    probably put in a letter on that --

3              MS. RAMACHANDRAN:  Okay.

4              THE COURT:  -- so I could determine whether or

5    not there needs to be a further disclosure.

6              MS. RAMACHANDRAN:  Okay, and I want to go back

7    and check, and make sure I'm right about the fact that no

8    settlement agreement exists.  I don't think there is one,

9    so --

10             THE COURT:  All right, but his point is that

11   whether you call it a settlement or an assignment, that

12   essentially that was functioning -- some type of

13   settlement, that I don't -- I didn't focus on that but

14   that's what it is -- that's what he is suggesting.

15             DEFENDANT KENNER:  Your Honor, this is Mr.

16   Kenner.

17             What I'm aware of is, and this came out during

18   the arbitration, the pendency of the '09 arbitration was

19   that the Nolan party had settled with Mr. Jowdy's parties

20   for any and all related matters for funds that Jowdy that

21   had received, directly or indirectly, and as a result, he

22   was transferred or assigned, or settled on a one percent

23   equity stake in the Cabo San Lucas project, which at the

24   time of settlement had a net-net value of about $3.25

25   million based on third-party appraisals, and third-party

24

Proceedings

1    lending at the time.

2           THE COURT:  All right.  So Ms. Ramachandran, if

3    you should just maybe two weeks from today, just put in a

4    letter to me, just tell me what your position is with

5    respect to that, okay?

6           MS. RAMACHANDRAN:  Okay, okay, will do.

7           THE COURT:  All right, are there any other --

8    anyone want to raise any other issues with respect to

9    forfeiture because I was then going to move onto some

10   sentencing issues.

11          MR. KOSTOLAMPROS:  Your Honor, this is Mr.

12   Kostolampros again.

13          I'd just like to raise one point.  The

14   government in its letter again says that Danske abandoned

15   settlement discussions.  We have not.  We haven't heard

16   from the government, and our last offer remains

17   outstanding.  So I just wanted to set the record straight

18   of that.  We just simply haven't heard from the

19   government -- the government at all.

20          THE COURT:  All right.  I don't -- again,

21   there's nobody more in favor of the parties trying to

22   resolve this for everyone's sake, but is there a reason

23   the government has not responded to that offer?  Why is

24   the government not engaged in any dialogue at this point

25   on that?

25

Proceedings

1      UNIDENTIFIED SPEAKER:  Your Honor, as the

2  government mentioned in its letter, the biggest bar to a

3  settlement was the bank's refusal to provide the proof of

4  its claim, and the government's not in a position to

5  settle with the bank without seeing adequate proof of the

6  claims.

7      THE COURT:  All right.  Mr. Kostolampros,

8  you've got to work with them to the extent you can, okay?

9  I'm not a magician.  All right?

10     MR. KOSTOLAMPROS:  And neither are we, so --

11     THE COURT:  All right.

12     MR. KOSTOLAMPROS:  -- I think we're at

13  (indiscernible) there, so --

14     THE COURT:  All right.

15     MR. KOSTOLAMPROS:  Thank you, your Honor.

16     THE COURT:  All right, so I just want to move

17  to sentencing, and I just want to discuss the ability to

18  go forward as it relates to Mr. Kenner, and being in

19  court for sentencing as I preferred.

20     So Mr. Kenner, I did speak to the marshals, and

21  there has not been any defendant that they were aware of,

22  who has been transported from the jail to report in-

23  person court appearance as of yet.  The only people that

24  have been (indiscernible) under arrest, or already being

25  in the building being processed and went into a

26

Proceedings

1    courtroom, and then were brought to the jail following

2    their arrest.

3           But the bottom line is I told them that I want

4    to try to get this done soon, and they said that they

5    would be able to transport you.  It's not going to be

6    able to happen on the date I set.  We're going to give a

7    little bit more time to deal with the logistics of that.

8           The one thing I wanted you to be aware of and

9    maybe you know this already, but the protocol right now,

10   and I don't know that this is going to change anytime in

11   the near future, is that anybody -- any inmate coming to

12   the jail from the outside when they return, will go into,

13   you know, I guess it's a single cell for 14 days,

14   isolation, to make sure that they're not bringing the

15   virus into the jail.  So I didn't want you to be

16   surprised by that, or be upset about that, but that's

17   what would happen following the sentencing.  You'd be

18   brought to some unit in the jail where they would be put

19   you in a single cell.

20          So unless you tell me you don't want that, my

21   plan would be -- I'm not going to set the date today,

22   because I have to try to figure out, you know, the

23   marshal's and the Court, what a good day to be in August

24   for you to do that, but -- consistent with everybody's

25   schedule, but I just wanted to get the okay from you

Proceedings

1  before arranging that.

2           DEFENDANT KENNER:  Your Honor, I am frankly,

3  based on the conditions report that I had forwarded

4  along, I'm really not interested in a 14-day quarantine

5  after the return from Court, so if your Honor would just

6  consider that with respect to what you're trying to

7  accomplish, I would appreciate that.

8           THE COURT:  All right.  Well --

9           MR. TALKIN:  And, your Honor, this is Sam

10 Talkin.

11          There's another little wrinkle to that.  You

12 know, Mr. Constantine lives in Arizona, and I believe

13 he's required to quarantine himself right now if he comes

14 here from there.

15          THE COURT:  Right, yeah, I thought about that.

16 My plan was to de-couple their sentencings.

17          MR. TALKIN:  Oh, okay, got it.  Thanks.  I

18 didn't know that.

19          THE COURT:  Yeah.  You know, I was trying to do

20 them one after the other, but if Mr. Kenner wanted to go

21 forward, then my plan was to put Mr. Constantine's off,

22 but -- well, Mr. Kenner, the only -- I understand that,

23 and the issue with respect to that is, and I'm trying to,

24 you know, look into the future a little bit, I don't see

25 that policy changing anytime soon.  I would assume that's

28

Proceedings

1  going to be the policy for a long time, until the virus

2  subsides in some way. So that creates a bigger problem.

3          If you're telling me I don't want to come to

4  the courtroom if I'm going to have to quarantine for 14

5  days, I mean, we could be talking months, and months, and

6  months then. So I have to think about that because my

7  only other option would be to do the video sentencing,

8  which as I told you previously, I'm not -- you know, I

9  would like to avoid.

10         I don't think -- what's your concern about the

11  -- just because you would be in a different area? I

12  don't understand exactly what your concern is about --

13  I'm going to have to look into what the conditions of

14  confinement would be upon your return but --

15         DEFENDANT KENNER: Yeah, I'm familiar with what

16  they'll be, and you know, relative to what the measures

17  that are already being implemented on it (indiscernible)

18  basis, I would just prefer not to have that.

19         THE COURT: All right. Also, I just wanted the

20  government to be aware, Mr. Kenner did send me an ex-

21  parte letter about the jail, and his situation at the

22  jail in terms of his conditions of confinement. He asked

23  me not to file it publicly or to share the details of it,

24  so -- but Mr. Kenner, you know, because we've confronted

25  this issue in the past, if that's your position and it's

29

Proceedings

1   hard for me to address anything that you have in letter

2   because it's not something I can do without sharing with

3   the government, have them a chance to respond to what

4   you're concerned about, so you understand that, right?

5           DEFENDANT KENNER:  Well, your Honor, why don't

6   you go ahead and just release it to them then.

7           THE COURT:  Okay.  All right.

8           DEFENDANT KENNER:  More (indiscernible) --

9           THE COURT:  Let me just say, I will release it

10  but just let me ask you generally that, I mean, do you

11  have any medical issue that you want me to have them --

12  you know, I'll make sure that you get additional medical

13  attention if there's some ongoing issue.

14          DEFENDANT KENNER:  No, no, I'm okay.

15          THE COURT:  All right.  All right.  So I will

16  unseal that letter, and the government will get a chance

17  to respond to it.  Does the government want to weigh in

18  on the issue regarding the sentencing, and the form of

19  the sentencing?

20          MS. KOMATIREDDY:  Your Honor, this is AUSA

21  Komatireddy.

22          I would only note that the (audio interference)

23  to be in touch of the victims, and they do prefer an in-

24  person sentence.  I just wanted you to be aware of that.

25  I know that's not (audio interference).

30

Proceedings

1      THE COURT:  Yeah, my plan was to do it in the

2  ceremonial courtroom, which would leave a lot of space

3  for victims or anyone else who wanted to be in-person, in

4  addition to obviously, Mr. Kenner, and Mr. Brissenden,

5  but, you know, I'm going to have to -- I didn't get into

6  the details of what would happen when Mr. Kenner

7  returned.  I'm going to look into that a little bit more.

8          Again, my instincts are that that is not going

9  to change in the near future, but let me look into that a

10  little bit more.  Again, I'm not going to set a date for

11  today, but I'll either deal with that through some type

12  of order, or we'll have another conference call to

13  discuss it further, but in terms of Mr. Talkin, in terms

14  of your client, obviously I know the situation in

15  Arizona, and because he's out on bail --

16      MR. TALKIN:  Right.

17      THE COURT:  -- that situation is a little bit

18  different.

19      MR. TALKIN:  Yeah, we'll work with the Court

20  and the government, and figure out to how to do this with

21  him.

22      THE COURT:  All right.

23      MR. TALKIN:  It's a lot easier.

24      THE COURT:  And if I do de-couple them, you

25  know, he can still listen in on the phone, and to what

31

Proceedings

1  the victims are saying, so that if they don't want to

2  come --

3            MR. TALKIN:  They'll --

4            THE COURT:  -- to sentencing too, he'll have

5  heard what they said, and can respond to it at his

6  sentencing.

7            MR. TALKIN:  Correct.  And I'll probably --

8  I'll make a live appearance, and I'll have him appear by

9  phone, if that's the best way to do it.

10           THE COURT:  Okay.  All right.

11           Then the two other issues -- and Mr. Kenner,

12  you did put in a stay for the forfeiture proceeding.  The

13  government responded.  I did want to give you a chance to

14  reply.  I didn't see it come up on the docket.  I don't

15  know, did you plan on putting something in in writing on

16  that?

17           DEFENDANT KENNER:  Yes, I would, as soon as I

18  get the reply from the government.

19           THE COURT:  I'm sorry, say that again.

20           DEFENDANT KENNER:  As soon as I receive the

21  reply from the government, I will expeditiously prepare

22  one.

23           THE COURT:  Oh, you didn't -- Mr. Brissenden,

24  did you see that on ECF?

25           MR. BRISSENDEN:  I did, your Honor.  I

32

Proceedings

1   forwarded a copy to Mr. Kenner.  I don't know if --

2          THE COURT:  All right.

3          MR. BRISSENDEN:  -- you know, it's obviously

4   difficult to get anything through to the MDC.

5          THE COURT:  All right.  If you could just

6   coordinate with Mr. Kenner to make sure he gets that, and

7   I'll wait for your reply to come in before I rule on

8   that, Mr. Kenner.

9          And then on the -- I would -- someone doesn't

10  have their phone on mute --

11          UNIDENTIFIED SPEAKER:  (Indiscernible).

12          THE COURT:  The only other issue I had was the

13  Brady motion that -- the supplemental motion Mr. Talkin

14  filed with the government.  Can the government put in a

15  written response to that?

16          MS. KOMATIREDDY:  We have not yet put in a

17  response, your Honor, (audio interference).  I just want

18  to see if there's any further guidance from the Court on

19  (audio interference).

20          THE COURT:  Yeah, I mean, I just -- again, the

21  government -- they now have this report from this expert

22  suggesting that this forensic report suggests that what

23  they're saying is correct, that there was a failure for

24  him to get certain documents.  I know the government has

25  other arguments, but I do want the government to just

33

Proceedings

1   respond to that, whatever they agree that that does

2   demonstrate that, or they think there's something faulty

3   about that report.  Okay?

4           MS. KOMATIREDDY:  Yes, your Honor.

5           THE COURT:  All right.  Given that someone

6   doesn't realize they don't have their phone on mute, I

7   think we should finish up the call.

8           Is there anything else that needs to be

9   addressed today?  I had one other thing, there are these

10  affidavits of loss that came in.  I just want to make

11  sure that Mr. Kenner and Mr. Talking are getting those

12  affidavits so that they can respond to them.

13          And also, I know the government put in a

14  revised restitution chart for the Court, but I don't know

15  whether -- I'm (indiscernible) those affidavits to see

16  whether or not they alter what the government submitted.

17  Are they consistent with the prior chart or Ms.

18  Komatireddy, does the government need to incorporate

19  those?

20          MS. KOMATIREDDY:  Your Honor, what we did --

21  and I'm glad that we're taking a moment to discuss this,

22  is we provided the Court with the numbers of loss in

23  connection with the trial.  Now there's --

24          THE COURT:  Okay.

25          MS. KOMATIREDDY:  -- (audio interference)

34

Proceedings

1  victims have submitted various affidavits that have to do

2  either with victims who did not testify at trial, but has

3  claimed in relation to the three objects that were proven

4  at trial, or alternatively, victims that did testify at

5  trial but have claims related to other objects or other

6  instances of fraud --

7        THE COURT:  Right.

8        MS. KOMATIREDDY:  -- in relation to Mr. Kenner.

9  We are seeking guidance from the Court on -- you know,

10  under the law --

11        THE COURT:  Right.

12        MS. KOMATIREDDY:  -- as we've noted, and in our

13  sentencing memorandum, the Court can take -- can simply

14  take the affidavits of loss on their face, or the Court

15  can entertain challenges to them, and litigation over

16  them, and we're seeking guidance from the Court

17  (indiscernible) later -- I mean, if I could take the

18  affidavits of loss on their face, in which case we will

19  provide the revised chart and it would include those

20  numbers, or whether -- you know, I imagine Mr. Kenner

21  would want to challenge some of those numbers, whether we

22  could speak -- have a proceeding in that respect.

23        THE COURT:  All right.  Well, why don't I have

24  Mr. Kenner and Mr. Talkin, this goes to Mr. Constantine

25  as well, to get a chance to review those affidavits, and

35

Proceedings

1   if you want to respond to them, I think that's the first
2   step.
3           All right, Mr. Kenner, I don't know - you
4   probably haven't seen those, those just came in.  Do you
5   know what I'm referring to Mr. Kenner?
6           DEFENDANT KENNER:  I do not, your Honor.
7           THE COURT:  I don't have the names of who
8   submitted them, but there was four or five affidavits of
9   loss that came in.
10          MR. BRISSENDEN:  Your Honor, I spoke to (audio
11  interference) and he's indicated that (audio
12  interference) is mailing out a copy.  I'm separately
13  mailing out a copy today, so hopefully Mr. Kenner should
14  have one --
15          THE COURT:  Okay.
16          MR. BRISSENDEN:  -- in prison.
17          THE COURT:  All right.  As I said, we have some
18  time on the restitution issues.  So I'll just wait for
19  Mr. Kenner's response on that.
20          DEFENDANT KENNER:  All right, your Honor.
21          THE COURT:  All right.  Any other issues anyone
22  wants to raise with the Court today?
23          MR. TALKIN:  No, not from Constantine.  Thank
24  you, your Honor.
25          THE COURT:  All right, Mr. Kenner?

Proceedings

1            DEFENDANT KENNER:  No, your Honor.

2            THE COURT:  All right.  The government?

3            MS. KOMATIREDDY:  Not from the government, your

4    Honor.

5            THE COURT:  All right.  Thank you everybody.

6    Take care.

7            IN UNISON:  Thank you.

8                (Matter Concluded)

9                    -o0o-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **10th** day of **July**, 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.

38