# EXHIBIT D

## PROMISE TO CONSTITUTE A TRUST AGREEMENT
## CASITA LOT PHASE 2 #25

THIS CONTRACT, A "PROMISE TO CONSTITUTE A TRUST AGREEMENT" (HEREINAFTER REFERRED TO AS THE **"AGREEMENT AND/OR CONTRACT"**) IS ENTERED INTO BY AND BETWEEN DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. (HEREINAFTER REFERRED TO AS **"DIAMANTE"** AND/OR **"SELLER"**), REPRESENTED HEREIN BY MR. KENNETH A. JOWDY OR MR. TAFFY JOWDY IN THEIR CAPACITY AS ATTORNEYS IN FACT, AND GREGORY ALAN CARRAFIELLO AND ANA ALEJANDRA GUTIERREZ FLORES (HEREINAFTER REFERRED TO AS THE **"PURCHASERS"**), IN ACCORDANCE WITH THE FOLLOWING ANTECEDENTS, DECLARATIONS AND CLAUSES:

### BACKGROUND

I.    Constitution of the Trading Company called Diamante Cabo San Lucas by means of deed number 64,865 [sixty-four thousand eight hundred sixty-five] volume 1,025 [one thousand twenty-five] duly executed before Mr. José Alberto Castro Salazar, Notary Public Number 7 [Seven] in the Municipality of Los Cabos, Baja California Sur, Mexico, Public Assigned to Number 7 [Seven] of the State and Federal Heritage Property with exercise in the municipalities of La Paz and Los Cabos and living in the state Capital, it is duly registered in the Public Registry of Commerce of San Jose del Cabo, under the 9065 Electronic Mercantile Folio (nine zero six five).

II.   By means of Public instrument number 65,036, volume 1,026, dated March 10, [Ten] 2006, [Two thousand and six] duly executed before Mr. Jose Alberto Castro Salazar, Notary Public number 7 [Seven], in the Municipality of Los Cabos, Baja California Sur, Mexico, under number 58, First section, volume CCXLII dated on April 18 [Eighteen], 2006, [Two thousand and six] **DIAMANTE** acquired eight (8) lots of the real property known as LA LAGUNA, of the portion known as Rancho El Cardonal, Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, Mexico ("Real Properties").

III.  By means of official deed number 65,041 dated March 10 [Ten] 2006 [Two thousand and six] duly executed before Mr. José Alberto Castro Salazar, Notary Public, Notary Assigned to Number 7 [Seven] of the State and Federal Heritage Property with exercise in the municipalities of La Paz and Los Cabos, and registered at the Public Registry of Property and Commerce of San Jose del Cabo as number 135 [One hundred thirty-five], foja 135 [One hundred thirty-five] CCXLV volume, of May 8 [Eight] 2006 [Two thousand and six] in which consists IRREVOCABLE TRUST AGREEMENT transferring ownership WARRANTY F/00321 identified by the number entered into between (i) DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V. as (Fideicomitente) and Beneficiary in Second Place, (ii) DANSKE BANK A/S, LONDON BRANCH, INCORPORATED IN THE KINGDOM OF DENMARK, as successor to Lehman Brothers Holdings Inc. as

Initials: _aagf_ _____ _____                                    1 of 23

Beneficiary in First Place, and (iii) CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE (before THE BANK OF THE NEW YORK MELLON CORPORATION,   MULTIPLE BANKING INSTITUTION successor UNIVERSAL BANK FINAL JP MORGAN , SOCIETY ANOMINA, MULTIPLE BANKING INSTITUTION, FINANCIAL GROUP JP MORGAN, TRUSTEE DIVISION ) as Trustee.

IV.   By means of official deed number 78,882 [seventy-eight thousand, eight hundred eighty-two], volume 1,292 [one thousand, two hundred ninety-two] dated March 6 [Six] 2009 [Two thousand, nine] duly executed before Mr. José Alberto Castro of Salazar, Notary Public, Notary Assigned to the number 7 [Seven] of the Federal Property and Heritage, exercise in the municipalities of La Paz and Los Cabos and living in the state capital, owned Héctor Castro Castro duly registered with the Public Registry of Property and Commerce of the Municipality of Los Cabos with number 135 [One hundred thirty-five] hander 135 [one hundred thirty-five] CCXLV volume [Two hundred forty-five Roman] of   April 13 [Thirteen] 2009 [Two thousand, nine], entered into an AGREEMENT AMENDMENT AND RESTATEMENT TO THE TRUST AGREEMENT AND IRREVOCABLE TRUST transferring ownership WARRANTY F/00321 identified by the number which was attended by (i) Settlor and Trustee Diamante as second beneficiary; (ii) Danske Bank A / S, London Branch, London Branch of a company incorporated in the Kingdom of Denmark as Trustee in the first place replacing Lehman Brothers Holdings, Inc. as first place beneficiary, and (iii) CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE (before THE BANK OF THE NEW YORK MELLON CORPORATION,   MULTIPLE BANKING INSTITUTION successor UNIVERSAL BANK FINAL JP MORGAN , SOCIETY ANOMINA, MULTIPLE BANKING INSTITUTION, FINANCIAL GROUP JP MORGAN , TRUSTEE DIVISION) as Trustee of the Trust referred to with number F/00321 [hereinafter the "Agreement Amending the Trust"].

V.   RELOTIFICACION/003/PU/2007, issued by the Direction of General Planning, Urban Development and Ecology of the Municipality of Los Cabos, Baja California Sur, Mexico the subdivision "*relotificación*" of the Real Properties was authorized as follows (i) lot 1 with a surface of 193-31-10.247 hectares ("Lot 1"), (ii) lot 2 with a surface of 84-72-79.408 hectares ("Lot 2"), (iii) lot 3 with a surface of 175-64-83.912 hectares    ("Lot 3"), (iv) lot 4 with a surface of 115-47-94.117 hectares; (v) lot 5 with a surface of 5-83-59.077 hectares; and (vi) lot 6 with a surface of   28-98-10.86, as evidence in Public Deed Number 81,161 Volume 1341 dated October 26, 2009, duly executed before Mr. Jose Alberto Castro Salazar, Notary Public number 7 for the Municipality of Los Cabos, Baja California Sur, Mexico, and duly recorded under marginal note number 135, First section, volume CCXLV dated May 8, 2006, on November 5, 2009.

VI.   By means of official deed number 82,871 [eighty-two thousand eight hundred seventy-one] of 1,376 volumes in 1376, dated May 18 [Eighteen] 2010, [Two Thousand Ten], duly executed before of Mr. Jose Alberto Salazar Castro Notary Public Notary attached to the Post No. 7 [seven], the State and Federal Heritage Property, practicing in the State of Baja California Sur, and registered in the Public Registry of Property and Commerce of San Jose del Cabo, Baja California Sur, under the number 127 percent twenty-seven, 127 hander one hundred twenty-seven, volume CDXXXVIII, of Section One of this twentieth day and one (21st) of May, 2010 [Two Thousand and Ten], held CONSTITUTION OF CONDOMINIUM PROPERTY REGIME OF MASTER called "DIAMANTE CABO SAN LUCAS" Premises located in the La Laguna, Rancho El

Initials: _aaG0_____

Cardonal, Polígono 03, located in Cabo San Lucas, Baja California Sur, you 175-64-83.912 surface with cadastral number 4-02-013-0083 key that performs CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE (before THE BANK OF THE NEW YORK MELLON CORPORATION, MULTIPLE BANKING INSTITUTION successor UNIVERSAL BANK FINAL JP MORGAN , SOCIETY ANOMINA, MULTIPLE BANKING INSTITUTION, FINANCIAL GROUP JP MORGAN , TRUST DIVISION) IN THE NATURE OF THE TRUST F/00321, REPRESENTED BY ITS DIAMANTE SOCIETY SPECIAL AGENT CABO SAN LUCAS, LIMITED LIABILITY COMPANY CAPITAL VARIABLE who appeared THROUGH HIS GUARDIAN Mr. Fernando Manuel GARCÍA CAMPUZANO with the appearance of the company named DIAMANTE CABO SAN LUCAS, LIMITED LIABILITY COMPANY CAPITAL VARIABLE. Within the MASTER CONDOMINIUM called "DIAMANTE CABO SAN LUCAS", there is the SUB- CONDOMINIUM REGIME 4 "THE ESTATES" identified key 402093001001-004001 cadastral code, with a total area of 423,328.758 m2.

VII.   By means of official deed number 91,326 [ninety-one thousand, three hundred twenty-six], volume 1,536 [one thousand, five hundred thirty-six] dated 26 [Twenty-six] April 2013 [Two thousand, thirteen] duly executed before Mr. José Alberto Castro of Salazar, Notary Public, Notary Assigned to the number 7 [seven] of the Federal Property and Heritage, exercise in the municipalities of La Paz and Los Cabos and living in the state capital, owned Héctor Castro Castro duly registered with the Public Registry of Property and Commerce of the Municipality of Los Cabos executed a **SECOND AGREEMENT AMENDMENT** TO THE IRREVOCABLE TRUST AGREEMENT F/00321 AND AGREEMENT AMENDMENT AND RESTATEMENT TO THE TRUST AGREEMENT AND IRREVOCABLE TRUST which entered into (i) Settlor and Trustee DIAMANTE as second beneficiary; (ii) DANSKE BANK A / S, LONDON BRANCH, LONDON BRANCH OF A COMPANY INCORPORATED IN THE KINGDOM OF DENMARK as Trustee in the first place replacing Lehman Brothers Holdings, Inc. as first place beneficiary, and (iii) CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE (before THE BANK OF THE NEW YORK MELLON CORPORATION, MULTIPLE BANKING INSTITUTION successor UNIVERSAL BANK FINAL JP MORGAN , SOCIETY ANOMINA, MULTIPLE BANKING INSTITUTION, FINANCIAL GROUP JP MORGAN , TRUSTEE DIVISION) as Trustee of the Trust referred to with number F/00321 (hereinafter the "Second Agreement Amending the Trust"].

VIII.   By means of official deed 111,339 [One hundred eleven thousand, three hundred and thirty nine] dated April 23 [Twenty three], 2014 [Two thousand fourteen], duly executed before of Mr. Armando Mastachi Aguario, public notary number 21 [Twenty one] of Mexico, Federal District The merge between THE BANK OF NEW YORK MELLON, S.A. INSTITUCION DE BANCA MULTIPLE as the fused corporation and CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE as the merging corporation, and the change of name as agreed in proceedings of General special meetings of shareholders.

## DECLARATIONS

## I. DIAMANTE THROUGH ITS LEGAL REPRESENTATIVES DECLARES:

A. That **DIAMANTE** is a duly incorporated and validly existing company pursuant to the laws of the United Mexican States ("Mexico"), as evidenced in public instrument number 64,862, Volume 1,025, dated on February 23, 2006, duly recorded in the Public Registry of Property and Commerce of San Jose del Cabo, Municipality of Los Cabos, Baja California Sur, Mexico, under electronic number 9065.

B. That Mr. Kenneth A. Jowdy has authority to execute this Contract, as evidenced in public instrument 65,011 Volume 1,026 dated March 9, 2006 duly recorded in the Public Registry of Property and Commerce of San Jose del Cabo, Municipality of Los Cabos, Baja California Sur, Mexico, under electronic number 9065, of April 5, 2006, and that as of this date, said authority has not been modified, revoked or diminished in any way whatsoever.

C. That Mr. Taffy Jowdy has the authority to execute this Contract, as evidenced in public instrument number 11,562 Volume 475 dated March 28, 2014, granted before Fernando Gonzalez Rubio public notary 14 of Los Cabos, Baja California Sur, Mexico, duly recorded in the Public Registry of Property and Commerce of San Jose del Cabo, Municipality of Los Cabos, Baja California Sur, Mexico on June 10, 2014 under electronic number 9065*4, and that as of this date, said authority has not been modified, revoked or diminished in any way whatsoever.

D. That **DIAMANTE** has formalized a master condominium regime that is located within Lot 3 and that said master condominium regime has been named "**DIAMANTE** Development Condominium" (hereinafter referred to as the "<u>Master Condominium</u>") whereby the location, metes, bounds and legal description of the **Master Condominium** are more particularly described in **Exhibit I**.

E. That **DIAMANTE** is in the process of incorporating as a sub-condominium regime THE ESTATES within a section of the **Master Condominium**, to be known as the "**Casitas Condominium**" and which will include private areas for common use and private units for special use.

F. That within or adjacent to the **Master Condominium** there are several private property sections ("<u>Master Sections</u>"), and that, in the sole and exclusive discretion of **DIAMANTE**, these Master Sections, or any of them, may be incorporated into one or more sub-condominium regimes in one or more phases from time to time, for residential uses and/or to provide hotel or other commercial uses and services.

G. That the construction within the **Casitas Condominium** as well as in the **Master Condominium** will be carried out from time to time in one or more phases.

H. That the **Casitas Condominium** will have its own Casitas regulations (herein referred to as "Casitas Regulations" or "<u>Casitas Rules and Regulations</u>") and at the same time the Casitas will always be subject to the regulations of the **Master Condominium** (herein "Master Regulations" or "Master Rules and Regulations"). The initial draft of the Casitas Rules and Regulations may be amended from time to time, in the sole discretion of **DIAMANTE,** until the Rules and Regulations for the **Casitas** is duly formalized and filed with the Public Registry of Property and Commerce of Los Cabos, Baja California Sur.

Initials: _aaco_ ___ _____                                                    4 of 23

I. That the **Casitas Condominium** includes approximately Sixty-three (63) Casitas for residential use. Within the documents of the **Master Condominium** and the **Casitas Condominiums**, as well as in the present Contract, the Casita Lot located within the **Casitas Condominium** to be purchased hereunder shall be known as a **"Casita Lot Phase 2 Lot No. 25" or the "Lot"**. The Lot shall be treated as one single Lot for purposes of HOA fees and any other charges assessed on a per unit basis.

J. That **Casita Lot Phase 2 No. 25**, the **Casita** Lot that is the subject of this Contract consists of total surface of 960.13 m2 (Nine Hundred and Sixty point Thirteen square meters). The location, metes, bounds and the legal description of **Casita Lot Phase 2 No. 25** are set forth in **Exhibit "II"** which are attached hereto.

K. That **DIAMANTE** has obligated itself by participating in the execution of a trust agreement by means of which the **Casita** and the corresponding rights of co-ownership with respect to the common areas of the **Casitas Condominium** and the **Master Condominium** have been transferred, subject to and in accordance with the terms of this Contract.

L. That the PURCHASERS and DIAMANTE agree that **Casita Lot Phase 2 No. 25** has been destined exclusively for construction of a single-family residence and is part of **Casitas Condominium** and is subject to the **Casitas Rules and Regulations** and the **Master Rules and Regulations**.

## II. THE PURCHASER DECLARES:

A. That one of the **PURCHASERS** is a US Citizen and both of the PURCHASERS have the legal authority and economic capacity to enter into and be bound by the terms and conditions of this Agreement and that **PURCHASERS'** interest in the **Casita** will be as a beneficiary through a Fideicomiso Trust as herein defined.

B. That **PURCHASERS** recognize and state that **PURCHASERS** are aware that the **Master Condominium** and the **Casitas Condominium** will be administered, maintained and operated by an administrator designated exclusively by **DIAMANTE** for the first ten (10) years of operation.

C. That the duties and responsibilities of the administrator of the **Master Condominium** and of the **Casitas Condominium** (herein the "**Administrator**") have been established pursuant to the **Casitas Rules and Regulations** and **Master Rules and Regulations**.

D. That **PURCHASERS** know the location, plans and specific characteristics of the **Casita Lot** and agrees and hereby acknowledge that the **Casita Lot** and the **PURCHASERS** will be subject to the **Casitas Rules and Regulations** and the **Master Rules and Regulations**, as amended from time to time.

Initials: _aaₒᵟ_____ _____

E.  That **PURCHASERS** know the amounts of the Deposits (as defined herein), the Purchase Price, and the other conditions as established in this Contract.

F.  That **PURCHASERS** are qualified financially and have the economic capacity to perform the obligations undertaken pursuant to this Contract and the Mexican Trust (as defined herein). The **PURCHASERS** hereby certify that **PURCHASERS** are individuals whose net worth (i.e., the excess of total assets at fair market value, including home and personal property, over liabilities), or joint net worth with his or her spouse, exceeds One Million Dollars, currency of the United States of America ($1,000,000.00USD).

G.  That **PURCHASERS** are obligated to enter into a Mexican Trust Agreement also known as a Fideicomiso (as defined herein) or to formalize a Mexican Title with **DIAMANTE** in order to acquire the **Lot** according to Mexican law.

In consideration of the foregoing Antecedents and Declarations, the parties agree to the following:

## C L A U S E S

**First.   Purpose of the Contract**

1.1  <u>Conditions of Trust.</u> Subject to the terms and conditions of this Contract, **DIAMANTE** hereby promises to execute either a Mexican Title or a Mexican Trust contract (hereinafter **"Trust"**) with a Mexican multiple banking institution appointed by **PURCHASERS** with the purposes established in section 3.4, whereby **DIAMANTE** will transfer the beneficial rights of the **Casita Lot,** that by fact and by law corresponds to it and whereby the **PURCHASERS** or whomever they appoint prior to closing, will be designated as the beneficiary.  The **Trust** or the Mexican Title will be formalized through a public instrument duly executed before a Mexican notary public designated by **PURCHASERS** on the closing date which closing date the parties hereto agree shall in no event be more than forty-five (45) business days of the last to occur when the **Casitas Condominium** infrastructure has been substantially completed and functional to allow access to and use of the **Casita Lot** ("Infrastructure Completion. Additionally, and as a condition to transfer the **"Lot"** and create the **Trust** or the **Mexican Title**, the **PURCHASERS** must have delivered to **DIAMANTE** (as defined herein) the entire balance of the **Deposits** (as defined herein) at least forty-five (45) business days prior to the Closing Date (as defined herein).

1.2  <u>Condominium Regime.</u> The incorporation of the **Casitas Condominium Regime** as set forth in this Contract will be formalized by **DIAMANTE** prior to Closing.

1.3  <u>Infrastructure Completion Date.</u> The completion of sufficient infrastructure to allow use and occupancy of the **Lot** (**"the Infrastructure Completion Date"**) will take place on or before February 1. 2020.  However, the **PURCHASERS** hereby grant a three (3) month grace period to **DIAMANTE** after such date to comply with the obligations described herein.  For purposes of this Contract, the condition of "Infrastructure Completion" will be considered satisfied when **DIAMANTE** receives a letter ("avance de obra") from the licensed professional "*Director*

Initials: _aab_ _____      6 of 23

*Responsable de Obra*" who is responsible for verifying Infrastructure Completion by informing **DIAMANTE** that such event has taken place.

## Second.  Liens and Title Review

2.1   <u>Title Condition</u>.  **DIAMANTE** warrants that on the Closing Date title to the **Lot** will be conveyed free and clear of all liens and encumbrances, any debt arising from public utility services, taxes and assessments as of the Closing Date and previous years.  **DIAMANTE** further warrants all payments of real estate taxes and other public fiscal liabilities relative to the **Lot** will be current as of the Closing Date.  Likewise, **DIAMANTE** promises and hereby obligates itself that on the date of transfer of the **Lot**, neither the **Lot** nor the co-ownership rights relating to the common areas that might correspond to the **Lot** in connection with the **Master Condominium**, will be subject to any mortgage or any other guarantee lien.

2.2   <u>Construction Loan</u>.  **DIAMANTE** may subject the **Lot, Casitas** Condominium and the **Master Condominium** to a guaranty trust and/or mortgage (the "<u>Master Guaranty</u>") securing a construction loan for the **Casitas** Condominium and/or the **Master Condominium** (the "<u>Construction Loan</u>").  Provided, however that the **Lot** will be released from the lien of the Master Guaranty prior to Closing Date, or simultaneously with the transfer and formalization of the Trust.  **DIAMANTE** reserves the right to assign this Contract as collateral for the Construction Loan.  Any such assignment will provide that, if **DIAMANTE** defaults under the Construction Loan, the lender on the Construction Loan ("<u>Lender</u>") will be entitled, but not obligated, to expressly assume in writing **DIAMANTE'S** obligations hereunder.   In the absence of such assumption by **Lender**, **PURCHASERS** will be entitled to the repayment of all Deposits made and any other funds delivered by **PURCHASERS**, upon which return this Contract will be cancelled. The **Lender** will not be deemed to have assumed any obligations hereunder unless and until the **Lender** notifies **PURCHASERS** in writing of such assumption.   If the **Lender** assumes **DIAMANTE'S** rights, **PURCHASERS** will make all payments and render all acts as and performances as and when required by **PURCHASERS** under the terms of this Contract directly to **Lender,** or to its nominee as **Lender** may direct.  By signing below, **PURCHASERS** consent to the assignment of this Contract for the purposes described in this Section.

## Third.  Essential elements of the Property Title to be created

**PURCHASERS** hereby agree to formalize a **Property Title**, either a Mexican Title or a **Trust**, with the understanding that said **Property Title** will include the following basic elements:

3.1   <u>The Parties.</u>  The parties of the **Property Title** will be the following:

a)   **The Grantor: Diamante Cabo San Lucas, S. de R.L. de C.V.,** which is known in this Contract as **DIAMANTE; pursuant to the terms of Mexican Guaranty Trust Number F/00321** with the BANK OF NEW YORK MELLON, S.A. INSTITUCION DE BANCA MULTIPLE as the fused corporation and CI BANCO, S.A., INSTITUCION DE BANCA MULTIPLE as the merging corporation, acting as trustee.

Initials: _aa6o_ ___ ___

b) **The Trustee (in case of a Trust):** The Mexican multiple banking institution appointed by **DIAMANTE** in the **Trust,** subject to **PURCHASERS'** prior review and approval.

c) **The Beneficiary:** The **PURCHASERS** or whomever he appoints before closing.

3.2   <u>Purchase Price.</u> For the transfer of the **Lot, PURCHASERS** shall, pursuant to the terms of the Addendum attached hereto, pay to **DIAMANTE** the sum of <u>$225,000.00</u> USD (TWO HUNDRED AND TWENTY-FIVE THOUSAND AND 00/100 DOLLARS CURRENCY OF THE UNITED STATES OF AMERICA) (the "<u>Purchase Price</u>"), which Purchase Price shall include the **Lot** as well as the co-ownership rights with respect of the common areas of the **Casitas Condominium** and the **Master Condominium** are included in said Purchase Price in accordance with the corresponding undivided co-ownership percentage established in the **Casitas Rules and Regulations** and **the Master Rules and Regulations**, as they may be amended from time to time. PURCHASERS agree that PURCHASERS shall be solely responsible for all costs and expenses related to the construction of a home on the Lot, including but not limited to all materials and labor.

3.3   <u>Asset/Patrimony of the Trust.</u> The asset/patrimony of the **Trust** shall be the **Lot,** the corresponding co-ownership rights over the common areas of the **Casitas Condominium** and the **Master Condominium,** any improvements, attachments or adherences to them (hereinafter the "<u>Trust Asset</u>").

3.4   <u>Purposes of the Property Title.</u> The basic objectives of the **Property Title** will be for: **(i)** the acquisition by the **PURCHASERS** of the **Lot** for the maximum term established under Mexican Law, and any renewal of such term; **(ii)** the Trustee to own the **Trust Asset** in the **Trust,** in order to allow the **PURCHASERS** to use and enjoy the **Trust Asset** exclusively for residential uses or purposes under the terms and conditions of the **Casitas Rules and Regulations**); **(iii)** the **Trustee,** in accordance with the instructions delivered by the **PURCHASERS** to lease or grant the legal use of the **Trust Asset** to third parties up to the maximum term permitted under the **Casitas Rules and Regulations** or by law, with the **PURCHASERS** being entitled to receive the amount of the consideration paid under any such lease; **(iv)** the Trustee, pursuant to the instructions delivered by the **PURCHASERS,** to transfer to third parties that have the legal capacity to acquire same, all or part of the **Trust Asset** with the **PURCHASERS** being entitled to receive the net amount of the consideration paid for the **Trust Asset; (v)** the **Trustee,** in accordance with the instructions delivered by the **PURCHASERS,** to mortgage or encumber the **Trust Asset,** in any manner whatsoever, for the purpose of guaranteeing any obligations acquired by **PURCHASERS;** and **(vi)** the **Trustee,** after the expiration of the **Trust's** term, and in accordance with the written instructions delivered by the **PURCHASERS** to: (a) renew the foreign affairs permit to extend the **Trust** term, or (b) transfer the **Trust Asset** to any other purchaser or person designated by the **PURCHASERS,** provided, however, that any such other purchaser or person designated by **PURCHASERS** are legally entitled to acquire same and the consideration paid at the time of such sale shall be delivered to **PURCHASERS.**

3.5   <u>Commitments of PURCHASERS.</u> **PURCHASERS** will always be obligated and agrees to comply with each, and all provisions and obligations established in the **Casitas Rules and Regulations** and the **Master Rules and Regulations**, including paying proportional ordinary and extraordinary fees

Initials: _____

8 of 23

and other charges relating to the **Lot and** the common areas of the **Casitas Condominium** and the **Master Condominium**.

3.6 **DIAMANTE Warranty.** At Closing, **DIAMANTE** will warrant to **PURCHASERS** the beneficial title rights of the **Casita Lot** in accordance with Mexican law.

3.7 **Taxes, Fees and Expenses.** The parties expressly agree that all taxes, acquisition taxes, public registry filing fee, notary public fees, appraisal fees, **Trustee** fees, foreign affairs **Trust** permit fees, governmental authorization fees, governmental filing fees and any other expenses that originate due to the formalization and recording of the **Trust** and or this Promise to Constitute a Trust Agreement as well as the fees originated due to the transfer of the **Lot** will be at the exclusive expense of the **PURCHASERS**, except for the income tax due up to the Closing Date which shall be the **SELLER'S** obligation. All of **PURCHASERS'** closing costs shall be paid by **PURCHASERS** to **PURCHASERS'** closing agent at the time of the payment of the **Final Deposit** paid by **PURCHASER** pursuant to the addendum attached hereto and incorporated herein by reference (the "**ADDENDUM**").

3.8 **Domiciles.** The parties establish as their mailing address for any notification relating to this Promise Agreement and the **Trust** the following:

> **DIAMANTE**
> Diamante Cabo San Lucas, S. de R.L. de C.V.
> Boulevard Diamante Sin Numero,
> Col. Los Cangrejos 1, C.P. 23473,
> Cabo San Lucas, Baja California Sur, C.P., Mexico

> **PURCHASERS:**
> Gregory Alan Carrafiello
> Ana Alejandra Gutierrez Flores
> Blvd. Marina S/N Plaza Nautica Condo 107
> Col. Centro
> Cabo San Lucas B.C.S. 23450
> Mexico

3.9 **Laws and Courts.** For all matters relating to this Contract or regarding the intent, interpretation and compliance with the **Trust**, the parties expressly submit themselves to the laws in force and to the jurisdiction of the courts of San Jose del Cabo, Municipality of Los Cabos, Baja California Sur, Mexico, waiving hereby any other jurisdiction that could correspond to them as a result of their present or future domicile, or for any other reason.

3.10 **Other Clauses.** The parties may agree to other clauses in the **Trust,** respecting at all times the content of this Contract.  Otherwise, the **Trust** will only be granted with the clauses contained in this Contract and those clauses required by the **Trustee** which do not contravene this Contract. The parties will submit at all times to the applicable legal provisions that in each case may apply to the **Trust**.

Initials: _aa6o_____ _____

**Fourth.** Deposit

4.1   The **PURCHASERS** agree to pay the deposits required to be paid pursuant to the terms of the **Addendum,** which deposits are or may become non- refundable **Deposits** toward the payment of the Purchase Price in order to guarantee the performance and prompt fulfillment of this Contract. If **PURCHASERS** are in default and **SELLER** is not in default of the terms hereof, then in that event, **SELLER** is hereby entitled to retain any non-refundable **Deposits** without the need for further authorization from the **PURCHASERS.**

4.2   At the time of payment of the **Final Deposit, PURCHASERS** shall deposit **PURCHASERS'** closing costs and fees with **PURCHASERS' Closing Agent** pursuant to the terms of Section 3.7 and Section 5.2 hereof.

4.3   For purposes of this Contract, the Reservation Deposit, if any, and any Deposits paid pursuant to the terms of the **ADDENDUM** will jointly be referred as the "Deposits".

**Fifth.**   Payment of the Purchase Price and Closing Costs

5.1   Purchase Price.  In connection with the transfer, closing and formalization of the **Trust, SELLER** will apply the **Deposits** to the Purchase Price, provided that the **Deposits** are paid in full and in a timely manner by **PURCHASERS.**

5.2   Closing Costs.  At the time of paying the **Final Deposit,** the **PURCHASERS** are obligated and agree to pay the costs associated with the transfer and formalization of the **Trust,** which costs include without limitation the cost of recording the **Trust, Trustee's** fees, permit fees, notary fees, public registry fee, escrow fee, value added taxes, acquisition taxes, appraisal fees, costs of public certificates, prorated dues and assessments related to the **Casita** (including property taxes and maintenance fees), and such other taxes, costs and fees as are typical in a Mexican real property transaction (see **Exhibit "III").   SELLER** warrants that as of the Closing Date there will be no unpaid real estate taxes, maintenance fees, utility service bills or assessments levied against the **Casita** for periods accruing prior to Closing Date.

5.3   Condominium Assets. **PURCHASERS** understand and agree to be responsible, following the date of closing for **PURCHASERS'** share of any and all costs and expenses relating to the **Lot,** including taxes assessed against the Lot, and the **Casita to be constructed thereon at the PURCHASERS' sole cost and expense,** as well as **PURCHASERS'** share of common area expenses regarding the **Casitas Condominium** and the **Master Condominium.**

5.4   Additional Documents. On, before or after the Closing Date, **PURCHASERS** further agree to execute any additional documents and agreements identified in this Contract and/or any other documents needed or otherwise required by **SELLER** in order to effectuate the intent of this Contract.

Initials: aa60 _____   _____

**Sixth.  Representations and Understandings of PURCHASERS**

Intending for **DIAMANTE** to rely thereon as a material consideration for **DIAMANTE'S** obligations and performance hereunder, **PURCHASERS** hereby represent, warrant and covenant as follows:

6.1   **PURCHASERS** represent and warrant that **PURCHASERS** were in Mexican territory when **PURCHASERS** were informed of the **Casitas Condominium** and/or the **Master Condominium** and when **PURCHASERS'** acquisition of the **Lot** was proposed to **PURCHASERS**, and that by **PURCHASERS'** execution hereof, and any communication made after the date of execution hereof will be deemed subsequent to such transaction.

6.2   **PURCHASERS** represent and warrant that **PURCHASERS** are purchasing the **Lot** for the personal use of **PURCHASERS** and **PURCHASERS'** family members and guests only, to hold for an indefinite time, and with the expectation that **PURCHASERS** may receive assistance from **DIAMANTE** in the rental of accommodations or in the resale of the **Casita constructed by PURCHASERS on the Lot**.  **DIAMANTE** or its designees may at its option, retain the exclusive right to manage the rental of the accommodations or the resale of the **Casita constructed by PURCHASERS on the Lot** without any representation made by **DIAMANTE** as to its ability to rent or sell the **Casita**.  **PURCHASERS** acknowledge that purchase and use of the **Casita** for commercial purposes is expressly prohibited, including but not limited to time share and/or club residential and/or fractional ownership, unless the Lot was purchased pursuant to such ownership at the time of Closing.

6.3   **PURCHASERS** represent and warrant that neither **DIAMANTE** nor any of its agents or employees has made any representations upon which **PURCHASERS** have relied concerning the investment value, the possibility or probability of profit or loss, or the tax consequences that may result from the purchase or ownership of the **Lot**.  **PURCHASERS** represent and warrant that **DIAMANTE** has advised **PURCHASERS** to consult with legal and tax other advisors of **PURCHASERS'** own choosing, including without limitation Mexican legal counsel, regarding the legal and tax and implications of **PURCHASERS'** planned acquisition of the **Lot**, and that **PURCHASERS** are proceeding with this Contract either after having received the advice of such advisors or having chosen not to consult with such advisors in **PURCHASERS'** sole and absolute discretion.

6.4   **PURCHASERS** hereby covenant to defend and indemnify **DIAMANTE** against any and all claims of advisors, real estate brokers or salesmen arising from the acts of **PURCHASERS** or **PURCHASERS'** representatives, other than the claims of brokers or salesmen contracted by **DIAMANTE**.  If **PURCHASERS** are comprised of two or more parties, they will be jointly and severally being obligated under this contract and all other agreement and documents referred to herein, including without limitation the Casitas Rules and Regulations and the Master Condominium Rules and Regulations. All references herein to **PURCHASERS** will include, jointly and severally, any and all persons executing this Contract as **PURCHASERS**, notwithstanding that such references to **PURCHASERS** are in the singular.   In case **PURCHASERS** is composed of two or more parties, **PURCHASERS** hereby agree to designate

Initials: _aa6 0_____  _____                                    11 of 23

one such party to represent **PURCHASERS'** interest regarding the **Casitas Condominium** and the **Master Condominium**.

**Seventh.** <u>Default</u>

7.1  <u>SELLER´S Default</u>. In the event that **SELLER** defaults as a result of its failure to transfer the Lot to **PURCHASERS** pursuant to the provisions hereof, the **Deposits** paid hereunder are refundable and upon the request of **PURCHASERS,** with notice in writing to **SELLER**, the **SELLER** shall return said Deposits to **PURCHASERS** within fifteen (15) calendar days of the receipt of said notice from **PURCHASERS**.

7.2  **PURCHASERS'** Default. Upon **PURCHASERS'** default as the result of the breach of any material term or condition of this Contract, including but not limited to **PURCHASERS'** failure to pay in full and on time the Deposits to **SELLER**, **SELLER** may declare this Contract rescinded without the need of a judicial resolution or declaration and retain or collect a contractual penalty in the amount of the non-refundable deposits, as well as any amounts that may be due as fees and expenses as set forth in sections 7.1 and 7.2 hereof, with no liability attributable to **SELLER** or further commitment whatsoever by **SELLER** to **PURCHASERS**.  For such effect, **SELLER**, may apply and/or offset the Deposit(s) as the case may be, and any other payment received by **SELLER**, if any, as partial or total payment for such penalty, and **SELLER** will be authorized to dispose of the Lot as deemed convenient to **SELLER** with no liability or further commitment whatsoever to **PURCHASERS, except SELLER shall reimburse by PURCHASERS for PURCHASERS' costs and expenses of construction of a Casita on the Lot at the time of the sale by SELLER of the Lot and Casita, and** the balance of Deposits, if any, shall be returned to the **PURCHASERS**.

7.3  <u>Late Interest</u>. If **PURCHASERS** fail to deliver any of the **Deposits** in full when due, they shall bear interest at a monthly rate of two percent (2%), starting from such due date and lasting so long as such payment remains outstanding and unpaid.  However, **SELLER,** at its sole option, may exercise its cancellation rights as provided in section 7.1 above.

**Eighth.** <u>DIAMANTE´S Right of First Refusal Before Resale</u>.

From the closing Date and until 100% of the Master Condominium has been sold to unaffiliated third-party Purchaser, **PURCHASERS** are required to offer the Lot and any Casita constructed thereon by PURCHASERS to **DIAMANTE** upon the same terms and conditions as offered by or to a third party. This restriction shall not apply to transfers, assignment or sales to members of **PURCHASERS'** immediate family or other entities in which **PURCHASERS** have a controlling interest, such as affiliates or subsidiaries. Further, this restriction shall not apply to the mortgage, collateral grant, pledge, hypothecation, collateral assignment of the Casita for the purpose of securing purchase money financing and shall not apply to any subsequent transfer by foreclosure, by similar proceeding or by deed in lieu of same. **PURCHASERS** must notify **DIAMANTE** in writing no less than thirty (30) calendar days in advance of any proposed closing date, of **PURCHASERS'** intention to sell the Lot with the Casita and must include a copy of the fully executed contract or a copy of the contract to be executed by **PURCHASERS**. **DIAMANTE** shall notify **PURCHASERS** within ten (10) calendar days of receipt of such notice and written contract whether **DIAMANTE** wishes to exercise its right of first refusal. If **DIAMANTE** elects to exercise its right of first refusal, **DIAMANTE'S** purchase

Initials: _aaGd_____  _____

of **PURCHASERS'** Casita shall be closed no later than thirty (30) calendar days from the date that **DIAMANTE´S** response is mailed to **PURCHASERS**, unless both parties agree to another closing date. If the sale of the Casita fails to close, through no fault of **DIAMANTE**, this restriction shall continue and be binding on **PURCHASERS**, pursuant to this Contract. If **DIAMANTE** fails to timely notify **PURCHASERS** of its election to exercise its right to purchase, **PURCHASERS** may consummate its sale with the third party. This provision shall survive closing and shall bind any of **PURCHASERS'** immediate family or related entities to whom title is transferred.

**Ninth. <u>Assignment</u>**

**PURCHASERS** may not assign or transfer any rights acquired by means of this Contract, without prior written authorization from **SELLER**, which **SELLER** may grant or withhold in its reasonable discretion. The foregoing notwithstanding, **SELLER** shall not withhold its consent if the proposed assignment is to a person related to **PURCHASERS** or to an entity in which **PURCHASERS** have a controlling interest. In addition, **PURCHASERS** must specify the name, nationality, domicile and occupation of the assignee, in order to enable **SELLER** to evaluate assignee's credit capacity. In the event that **SELLER** authorizes the assignment or transfer, **PURCHASERS** agree to pay any applicable taxes, including real estate acquisition taxes, and any other federal, state or municipal fees as the same may be incurred and the assignee must agree in writing to assume each and all of the obligations contracted to by **PURCHASERS** in this Contract.

**Tenth. <u>Domiciles</u>**

The parties establish as their domiciles for any notification relating to this Contract as the following:

**DIAMANTE (SELLER):**
Diamante Cabo San Lucas, S. de RL. De C.V.
Boulevard Diamante Sin Numero,
Col. Los Cangrejos 1, C.P. 23473,
Cabo San Lucas, Baja California Sur, C.P., Mexico
kj@legacyproperties.com cc bn@legacyproperties.com

**PURCHASERS:**
Gregory Alan Carrafiello
Ana Alejandra Gutierrez Flores
Blvd. Marina S/N Plaza Nautica Condo 107
Col. Centro
Cabo San Lucas B.C.S. 23450
Mexico
greg.carrafiello@gmail.com

**Eleventh. <u>Notifications</u>**

Unless otherwise stated herein, all notices and other communications required or permitted under this Contract will be in writing and will be deemed to have been duly given (i) when delivered personally, or (ii) when sent, if by email transmitted on a business day prior to 5:00 p.m. local time at the place of

receipt, or on the following business day if sent after 5:00 p.m. local time at the place of receipt, with written confirmation of transmittal, or (iii) two days following delivery to a courier service if sent by next day delivery via a recognized international courier service, such as DHL. All such notices or communications will be addressed to the parties at their addresses set forth above, or at such other address as may be specified by notice given in accordance with the provisions of this Clause.

## Twelfth. Validate Consent

The parties declare that there exists no deceit, mistake, or any other vice in this Contract that might invalidate same and that the Purchase Price assigned to the Casita is fair and legitimate and therefore, the parties waive any annulment action together with the respective term to exercise same.

## Thirteenth. Entire Contract

This Contract, including its exhibits and any Addendum attached hereto, contains the entire understanding between the parties with respect to their desired obligations, and consequently, supersedes any other previous contract, oral understandings or written agreement. Any exhibits or addendum attached hereto are incorporated in full. This present Contract may only be amended by means of a written document signed by both parties, and without the foregoing, any modification will have no effect.

## Fourteenth. Laws, Courts and Mediation.

For all matters relating to the intent, interpretation and compliance of this Contract, the parties expressly submit themselves to the laws in force and to the jurisdiction of the courts of San Jose del Cabo, Municipality of Los Cabos, Baja California Sur, Mexico, waiving hereby any other jurisdiction that could correspond to them due to their present or future domicile, or for any other reason.

Before going to any judicial authority in accordance with this section, the Parties agree that if there are any differences between them according the interpretation, fulfillment and execution of this Agreement, they will start, within thirty (30) calendar days following the disagreements, a Mediation Procedure in which a legal representative of **SELLER** and the **PURCHASERS** will jointly participate. In accordance with this procedure the following conditions will have to be observed:

a. A legal representative of **SELLER** and the **PURCHASERS** will have ten (10) calendar days to settle and resolve the disagreement from the date set for the initial meeting between the parties.

b. In case the Parties do not enter into an agreement settling the difference or differences within the term before established, the Parties will be able to extend, the term only once, for ten (10) more calendar days.

If the difference or dispute is not settled between the parties in said period of time, they will expressly submit themselves to the laws in force and to the jurisdiction of the courts of San Jose del Cabo, as stated herein in paragraph one (1) of this recital.

Initials: _aa6o_     _____   _____

**Fifteenth. <u>Language</u>**

The parties to this Contract expressly acknowledge that this Contract is executed simultaneously with Spanish and English versions; nevertheless, in case of any doubt, contradiction or controversy, the Spanish version will prevail.

**Sixteenth. <u>Counterpart Execution</u>**

This Contract may be executed in two or more counterparts, each of which shall be deemed an original and all of which when taken together will constitute one and the same instrument. Copies of signatures of any party to this Contract delivered by facsimile or electronically shall be considered originals for all purposes hereunder.

**Seventeenth. <u>Confidentiality</u>**

Any and all proprietary information disclosed to either party by the other party in connection with the negotiation, execution or performance of this Agreement or the management, operation or dissolution of all information shall be deemed and treated by **DIAMANTE** and the **PURCHASERS** as confidential and shall not be disclosed to any third party without the prior written consent of the non-disclosing party; provided, however, that the foregoing restriction shall not apply to the extent, but only to the extent, that any information (a) becomes generally available to the public through no fault of the receiving party; (b) is or has been disclosed to the receiving party, directly or indirectly, by a person, firm or entity having no obligation to the disclosing party; or (c) is required to be disclosed under any applicable law, rule, regulation or governmental order.

**Eighteenth. <u>Freely Negotiated</u>**

This Contract is signed on the dates shown below by **PURCHASERS** and by **SELLER** in Los Cabos, Baja California Sur, Mexico, and both parties hereby represent that each and all of the terms and conditions of this Contract were freely negotiated and agreed, through the mutual consent of said parties, without there having existed any unilateral imposition of any of the provisions set forth in this Contract by any of the parties.

[See next page for signatures]

Initials: _aa6ༀ_____   _____

The parties, aware of the extent, content and legal force of this Contract, and its attached **ADDENDUM** and Exhibits, sign same in three copies, on September _6_, 2019.

**DIAMANTE (SELLER)**
Diamante Cabo San Lucas, S. de R.L. de C.V.


_____

By: KENNETH A. JOWDY
or TAFFY JOWDY
SELLER'S Legal Representative

**PURCHASERS**


_____

By: Gregory Alan Carraffello


_____

By: Ana Alejandra Gutierrez Flores
PURCHASERS' Legal Representatives


**WITNESS**



_____

Name:

**WITNESS**



_____

Name:

16 of 23

# Exhibit "I"

Exhibit "II"

CASITAS FASE 1

CASITAS FASE 2



# MEDIDAS Y COLINDANCIAS

AL NORTE: 24.003 METROS CON VIALIDAD

AL ESTE: 42.673 METROS CON LOTE 26

AL SUR: 22.00 METROS CON POLIGONO 3 CONDOMINIO 3

AL OESTE: 42.673 METROS CON LOTE 26

## CUADRO DE CONSTRUCCION LOTE 25

| LADO EST | PV | DISTANCIA | RUMBO | COORDENADA NORTE | COORDENADA ESTE | DESCRIPCION |
|---|---|---|---|---|---|---|
| 14 | 15 | 24.003 | S69° 36' 50.00"E | 2.552.650.020 | 604.607.527 | V-14 |
| 15 | 16 | 42.673 | S0° 00' 00.00"E | 2.552.607.347 | 604.607.527 | V-15 |
| 16 | 17 | 24.003 | N69° 36' 48.89"W | 2.552.615.708 | 604.585.028 | V-16 |
| 17 | 14 | 42.673 | N0° 00' 01.79"W | 2.552.658.381 | 604.585.027 | V-17 |

SUPERFICIE = 960.134 m2

23

24

EASEMENT

S0° 00' 00.00"E

24.003

S69° 36' 50.00"E

25
LOTE 25
SUP=960.13 m2

N0° 00' 01.79"W

N69° 36' 48.89"W

24.003

42.673

14.

15

17

16

### REFERENCIA

DIAMANTE
CSL, BCS

PLANO:

CUADRO DE
CONSTRUCCION
LOTE 25 CASITAS

DIAMANTE
CABO SAN LUCAS

Diamante S de RL de CV

DIAMANTE CABO SAN LUCAS

Exhibit "III"

## Closing Cost Estimate for Residential Trust formalization
## Greg Carrafiello
### Casita #25

Date: September  2019

| Amount used for this Estimate - Purchase Price | Transaction |
|---|---|
| | $  225,000.00 |
| **ISABI (Acquisition Tax)** | **Amounts in USD** |
| *   1    Tax To be Paid | $            4,837.50 |
| **Permits & Registration** | |
| **Foreign Affairs of Mexico** | |
| 2    Trust Application and Permit Fee | $            1,300.00 |
| 3    Foreign Investment Registry Fee | $               400.00 |
| **Public Registry of Property** | |
| 4    Property Title Registration Fees | $               864.25 |
| **Certificates & Appraisals** | |
| 5    Certificate - No Liens and Preventive Notice | $               100.00 |
| 6    Certificate - Property Tax | $                 30.00 |
| 7    Appraisal Professional Service fee | $               754.00 |
| 8    Governmental Fee of Appraisal Authorization | $               258.00 |
| **Fiduciary Institution (Bank) Fees** | |
| 9    Acceptance Of Transaction ( Including IVA Tax 16%) | $               580.00 |
| 10    Annual Fee - First Year in Advance (Including IVA Tax 16%) | $               580.00 |
| **Legal and transaction fees** | |
| 11    Public Notary and Legal Fees ( Including IVA Tax 16%) | $            3,889.00 |
| 12    Processing Fees (Including IVA Tax 16%) | $            2,900.00 |
| 13    Costs Administration Fees & Other Minors | $               750.00 |
| **TOTAL CLOSING COST** | **$         17,242.75** |
| **Title Insurance IF REQUESTED** | |
| 1    Alta Survey Performance and Title Insurance Processing Cost | $               575.00 |
| 2    Fidelity National Title Insurance Co. | $            1,004.85 |
| **GRAND TOTAL** | **$         18,822.60** |

| | |
|---|---|
| Initial Closing Cost Deposit | $9,231.85 |
| Closing Cost Balance to be paid to PUBLIC NOTARY prior Closing | $9,590.75 |

### Approval by Client

The above is an estimation of costs given in good faith and it is based on legal indexes established by the different governmental authorities, likewise fair market rates from Fiduciary, Notary, and other third parties involved in the process. In order to guarantee you a good care of your money, this firm will keep a record for all the expenses done, backed up with the respective receipts from all these parties, and will provide an extensive accounting at the end of the process. - Notary Public and Legal Fees, cover any service required by Client for purpose of advise and guidance in regards to best option to take title to the property, considering fiscal-estate planning aspects among others on both sides of the border based on the Clients intention to the same. - Processing Fees, cover any performance and processing of the title as described in the flow chart annexed  in the introduction package, likewise coordination of title insurance commitment and policy issuance and premium payment before FNF Title International Holding Company, a subsidiary of Fidelity National Financial, Inc. ("FNF Title"). FNT Title logistics do not require for an individual title report, per unit, separate estimation for such concept would be issued if required. - The title process requires by law a special appraisal for tax purposes, which does not consider market or commercial factors but only preestablished property values  by the city. Professional Service and Governmental authorization fees refer to the same concept and are required to process and obtain the appraisal. - Costs administration Fees and Miscellaneous cover general bank wire and checks commissions incurred  by the respective payments for title costs, likewise general translations of foreign documents required for the transaction and a translation of the main parts of the Client's  title - This govermental fee is actually calculated 2% of the total purchase price, however we have calculated it at 2.1% in order to cover any