# MATTHEW W. BRISSENDEN, P.C.
### ATTORNEY AT LAW

666 Old Country Road, Suite 501            516-683-8500, Fax: 516-683-8410
Garden City, New York 11530                 matthew.w.brissenden@gmail.com

July 29, 2020

**Via ECF**

The Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza, Room 1040
Central Islip, New York 11722

          Re:     *United States v. Kenner*, 13-CR-607

Dear Judge Bianco,

     This office has been appointed as standby counsel to assist Phillip Kenner in his capacity as a *pro se* litigant. Mr. Kenner has asked me to relay his response to the July 24, 2020 letter filed by counsel for Owen Nolan (Docket Entry 887).

     As the Court is aware, on July 8th, counsel for Mr. Nolan filed a Verified Petition asserting a third-party interest in Diamante Cabo San Lucas. *See* Docket Entry 874. Attached as Exhibit A to that Petition was an "Assignment and Assumption Agreement," purporting to relay a 1% stake in the resort property, in exchange for $10 consideration.

     Mr. Kenner has repeatedly asserted that Messrs. Nolan and Juneau obtained a 1% interest in the resort property through settlement agreements with Kenneth Jowdy. *See* Docket Entries 766, 787, 790 at p. 15. Mr. Kenner's understanding in this regard is not speculative. It is based, among other things, upon the attached 2017 settlement agreement between Jowdy and 17 other, former Kenner clients – including Bryan Berard, Mattias Norstrom, and Michael Pecca. That agreement states, in pertinent part:

> WHEREAS, Plaintiff's Counsel and the Parties have been made aware that Ethan Moreau, Owen Nolan, and Joe Juneau (all of whom were also Kenner Clients) . . . entered into prior separate settlement agreements with Jowdy and/or Jowdy-related entities as the result of other litigation, which prior agreements will be unaffected by this Settlement Agreement . . .

*See* January 2017 Settlement Agreement, attached hereto as Exhibit A.

The Government had previously denied knowledge of such agreements, based upon their discussions with Nolan's counsel. *See* Docket Entry 781 at p. 3. However, the Assignment and Assumption Agreement recently produced by Nolan's counsel appears to be related to precisely such a settlement.

At the past two telephonic court conferences, this Court asked Nolan's counsel about the existence of a settlement agreement between Nolan and Jowdy. It was our expectation that, in response to such inquiries, the Court would be provided with some meaningful explanation as to the circumstances surrounding Nolan's Assignment and Assumption Agreement – whereby Mr. Nolan somehow acquired a 1% stake in a multimillion-dollar resort, in exchange for ten dollars.

But no such explanation is forthcoming in counsel's letter of July 24th. Instead – and without any explanation – counsel baldly asserts that the Assignment and Assumption Agreement "was not a settlement agreement in any event," while arguing that the burden is on Mr. Kenner to prove otherwise. Counsel then quickly goes on to argue that – "even if the assignment transaction were a settlement, Mr. Kenner is not entitled to any restitution credit . . ." *See* Letter from Proskauer Rose, LLP at pp. 1-2.

Contrary to counsel's contention, Mr. Kenner's assertion is not a "baseless accusation." It is founded upon information contained in Exhibit A – the 2017 settlement agreement, subscribed to by Mr. Jowdy himself, documenting the existence of such a prior settlement. It is also self-evident – based upon the face of the Assignment and Assumption Agreement – that Nolan's counsel is not providing this Court with the full story surrounding the execution of that document.

Finally, contrary to counsel's contention, such settlement agreements are not irrelevant to Mr. Kenner's restitution obligation. Counsel argues that Mr. Kenner would not, in any event, be entitled to any offset until Mr. Nolan exchanges his ownership interest for cash compensation. *Id*. at p. 2. According to Counsel for Nolan, this is the rule promulgated by *United States v. Yalincak*, 853 F.3d 629 (2d Cir. 2017) and *United States v. McGinn*, 787 F.3d 116 (2d Cir. 2015).

Counsel is wrong. Both *Yalincak* and *McGinn* hold that a defendant is not entitled to credit for funds collected by a court-appointed receiver in federal bankruptcy proceedings, until such funds are actually distributed to the victims of the defendant's crime. This is an obvious result; until such funds are actually distributed, the victim has received nothing. In the meantime, such funds may instead be dispersed to cover any number of administrative expenses. As the Second Circuit explained:

> Amounts recovered by a bankruptcy trustee for the benefit of the bankruptcy estate, and consumed in the administration of the estate or distributed to non-victim creditors, plainly are not "recovered ... by the victim[s]" of a crime; only amounts actually distributed to the victim creditors fit that description.

*United States v. Yalincak*, 853 F.3d 629, 635 (2d Cir. 2017).

2

By way of contrast, Mr. Nolan has a *present* one percent interest in the resort property; indeed, he has held such interest since 2011. There is nothing in the law which holds that a restitution offset may only take the form of cash. To the contrary, 18 U.S.C.A. § 3664 expressly envisions that restitution may be satisfied by "an in-kind payment" in the form of property or even services. *See* 18 U.S.C.A. § 3664(f)(4). The Second Circuit has held that, where a fraud victim acquires an interest in real property as a result of such fraud, the restitution offset should be calculated based upon the fair market value of such property on the date of its acquisition, *not* its ultimate sale price. *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006).

Because Mr. Nolan's interest in the resort property provides a legal basis to offset restitution, the Court should inquire further as to the circumstances surrounding Mr. Nolan's Assignment and Assumption Agreement – especially since he is relying upon such instrument to assert his third-party claim against the resort. Indeed, in the absence of some additional, as-of-yet undisclosed consideration, it seems questionable whether $10 would constitute sufficient consideration under the law. "While fair consideration does not require dollar-for-dollar equivalence, fair consideration cannot be disproportionately small compared to the value of the transferred property." *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 611 (S.D.N.Y. 2018) (internal citations omitted) (finding that $10 consideration was insufficient to sustain transfer of one-third interest in condominium); *see also United States v. Sweeny*, 418 F. Supp. 2d 492, 497 (S.D.N.Y. 2006) ("Adequate and full consideration requires consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired.").

Finally, to the extent that the Government is aware of any similar assignment agreements we request that they be disclosed prior to sentencing. In addition, Mr. Kenner respectfully renews his request to issue a subpoena to Mr. Jowdy for a full disclosure of any similar agreements.

Thank you for your consideration.

Respectfully submitted,

/s/

Matthew W. Brissenden

cc:  All Counsel (*via* ECF)
     Phillip Kenner

3