*Jowdy -- KSI loan fraud*

On February 21, 2006 – Jowdy and his brother-in-law (*Diamanté CFO – William Najam*) completed a $3mm hard-money loan on the Diamanté del Mar property – unknown to Kenner and the Kenner investors.

This loan collateralized the **_allegedly_** investor "**_cash-owned_**" $68.9mm Diamanté del Mar property (*appraised by KPMG in April 2005 – 10 months before the loan*).   The appraisal is in EDNY evidence (*see TIMELINE 018 -- DDM 68.9mm Appraisal 4-1-05*).

- Please note that the "**_cash-owned_**" and 100% securitized position on the DDM property was the **_sole reason_** at Kenner and the Kenner investors agreed to –
  - Advance the 2004 Hawai'i loan,
  - Continue investing with Jowdy in Cabo san Lucas (*in 2005*) -- as well as
  - Purchase the Falcon 10 airplane (*in 2004 – which was another fraud by Jowdy – ignored by FBI Agent Galioto*).

Despite Jowdy's default on the KSI loan and entire $10mm plus **_cash loss_** to Kenner and the Kenner investors – Jowdy is currently (*December 2016*) attempting to settle with the defrauded DDM investors (*with FBI Agent Galioto pushing the settlement*)...

- At the November 29, 2016 status conference – the government (*separate from Galioto's personal efforts on behalf of Jowdy*) claimed they were not happy with the agreements (*strongly favoring Jowdy after they referred to him as a "co-conspirator" in their November 2016 forfeiture hearing summation*).

Jowdy, Najam, Jowdy's father and their cousin (*Edward Essa*) looted approximately $1mm of the net $2.1mm from the KSI-DDM loan for their own personal benefits and to the detriment of Kenner and the Kenner investors in the DDM project (*proof – below*).   The remainder of the funds were only partially used for the DDM project – but certainly not necessary to create the fully leveraged debt on the property.

- **_To the contrary_** – Jowdy and Najam utilized the loan proceeds to carry personal expenses and ongoing obligations of their own – **_IMMEDIATELY_** – despite the KSI loan agreement terms and conditions.

The loan also highlighted the fact that Jowdy and Najam had been defrauding the DDM investors from day 1 with the actual ownership diversion of the underlying property – with the help of Jowdy's NY attorney, **Tom Harvey – who was 100% complicit since 2002**.

- No documents were ever presented to Kenner and the Kenner investors showing that the DDM, LLC was the owner of the first México property -- as Jowdy and his attorneys confirmed since 2002.   Nonetheless – the February 21, 2006 loan agreement confirmed that two México entities – unrelated to Kenner and his investors – were the **REAL owners of the DDM investments** –

**_February and March 2006 –_**

All of the following thefts by Jowdy and frauds that Kenner explained to Galioto (*in June 2009*) -- occurred at the same time as the commencement of the $125mm Lehman Brothers loan for the Cabo project – thus Jowdy had unabated access to all of the development funds, salary, expenses, etcetera that he would ever need.

1

*Jowdy -- KSI loan fraud*

***Instead*** – Jowdy decided to defraud the DDM investors, stop making repair and loan payments on the Falcon 10 (*and the other unknown plane Jowdy fraudulently added to the plane loan – secured by Kenner and Gonchar*), completed his $430,000 cash theft from the plane loan, and STOP paying back any of the personal loans to Kenner and the Kenner investors – and add the unnecessary $3mm KSI hard-money loan against $68.9mm of collateral.

> ➤ **100% of this deception and fraud was 100% premeditated to cause immediate and ever-lasting harm on Kenner and the Kenner investors.**



Two (2) Real DDM owners – with LOR as the leasehold owner on the remaining 2000 acres...

LOAN AND SECURITY AGREEMENT

Between

DIAMANTE DEL MAR, LLC,

as Borrower,

and

KSI CAPITAL CORP.,

as Lender

and

KENNETH A. JOWDY,

DESAROLLADORA DDM S. DE R.L. DE C.V.

and

INMOBILIARIA DDM S. DE R.L. DE C.V.

(collectively, as Guarantors)

and

LOR MANAGEMENT S.A. DE C.V.

$3,000,000 LOAN FACILITY

CLOSING DATE: FEBRUARY 21, 2006

101248529.1

10205

*Jowdy -- KSI loan fraud*

Neither Kenner nor his investors ever had any interest in the three (3) Jowdy controlled México entities (*highlighted above*) – thus confirming the underlying frauds on the investors from day 1 (*notwithstanding the prior Jowdy diversions from the Baja Development Corp and DDM accounts for Jowdy and his family's personal benefits for years*)…

- Please note that Jowdy received over $9mm (***See Government forfeiture-1***) not counting the KSI loan proceeds – and paid approximate $3mm for the land – thus burning thru another $8-9mm which have gone unaccounted for from 2002 thru present – *with the protection of FBI Agent Galioto and a myriad of Cabo-budget-theft-paid legal maneuvers in every jurisdiction Jowdy was sued by Kenner and Kenner investors.*

In **September 2002**, Jowdy's attorney Tom Harvey sent Nolan and the other Jowdy investors in DDM (*México*) a letter ***(See TIMELINE 020 -- Harvey fraud letter 2002 to Nolan)*** confirming their investment with Jowdy and the promise to **transfer shares** from Jowdy's México company LOR (*which allegedly held title on the DDM property*) to Baja Development Corporate (*later discovered as Jowdy's 100% owned money-laundering LLC – also ignored by Galioto and the prosecution*).

**THIS NEVER HAPPENED** (*see KSI loan information above*) – thus -- making **Tom Harvey complicit** in the Jowdy frauds on the DDM investors – ***since 2002*** -- and equally concerned about Kenner's legal pursuits starting in 2007 of Jowdy and his cabal (*ironically led by Harvey and his intimidator tactics – continuing thru Harvey's side-by-side prosecutorial efforts with AUSA Michiewicz throughout the Kenner trial in 2015*).

- The title of the Diamanté del Mar property and subsequent underlying ownership was NEVER in an entity that was owned by anyone other than Jowdy.  Harvey was 100% **AWARE** of this issue (since his 2002 fraud letter), thus, his aggressive behavior for anyone against Jowdy that would have exposed his complicit acts escalated for mutual protection thru Kenner's Indictment and trial.

- *AMAZINGLY -- None of this thru Jowdy and Harvey actions should overlook the fact that Jowdy at all times since inception of Baja Development Corp has been the sole and 100% owner of Baja Development Corp.*

  - *The alleged transfer (which also did not happen) would have been from one México entity owned by Jowdy (99%) and his México attorney (Garcia-1%) to a USA LLC that Jowdy owned 100% --* <u>*thus more frauds and distractions…*</u>

*See TIMELINE 020 -- Harvey fraud letter 2002 to Nolan*

3

*Jowdy -- KSI loan fraud*

**HARVEY & HACKETT**
ATTORNEYS AT LAW
295 MADISON AVENUE 44TH FLOOR
NEW YORK, NEW YORK 10017

(212) 972-9935

JOHN J. HACKETT
THOMAS HARVEY

EARL S. WARD
OF COUNSEL

> If this lien was filed by Jowdy (and co.) -- the February 2006 $3mm KSI loan would have been in 3rd position behind these BDC liens and the Hawaii 2004 collateral agreement -- but neither of them mattered to Jowdy and Harvey (while perpetrating their frauds on Kenner and Kenner's investors)

VIA FIRST CLASS
MAIL & FACSIMILE

September 9, 2002

Mr. Owen Nolan
5655 Silver Creek Valley Road
No. 264
San Jose, Ca. 95138

Dear Mr. Nolan:

Pursuant to Ken Jowdy's and Phil Kenner's instructions, I have enclosed a promissory note from Baja Development Corporation made payable to you in the amount of $500,000. Baja Development Corporation shall undertake to secure the enclosed promissory note by filing a lien in your favor against the approximately 10,000 acres located in El Rosario, Baja California, Mexico, currently controlled through long-term leases by LOR Management S.A. de C.V. The shares of LOR Management S.A. de C.V. shall be transferred to Baja Development Corporation.

KPMG Peat Marwick has previously appraised the aforementioned leasehold interests at more than $10 million dollars. Please note that Baja Development Corporation will be securing two (2) additional promissory notes, each in the amount of $500,000, by filing liens in favor of two (2) other individuals.

Baja Development Corporation is presently retaining corporate counsel to perform due diligence and draft a private placement memorandum to solicit investments in Baja Development Corporation in connection with the development of (2) golf courses. Corporate counsel for Baja Development Corporation shall contact you with respect to further securitizing the $500,000 note, awarding you a membership in an anticipated golf club that will operate on the premises, and providing you with a prime building lot with an ocean view.

> Liens for Khristich and Woolley also never occured...

> This fraud included Harvey's promises in September 2002 to transfer shares from Jowdy's 99% owned LOR Management (in Mexico) to Jowdy's 100% owned BDC (with liens)...none of which ever occurred or would have benefited Kenner and the Kenner investors - simply a diversion.

---

o  (*From above*) – "***The shares of LOR Management SA de CV shall be transferred to Baja Development Corp.***"



> o  **Please note that at all times -- Baja Development Corp has never been owned by anyone other than Jowdy 100%, and**
>
> o  **Also – at all times -- LOR Management has ONLY been owned by Jowdy (99%) & by Jowdy's Mexican attorney, Fernando Garcia (1%)...SIMPLY MORE FRAUD with HARVEY COMPLICIT...and IGNORED by Galioto and Michiewicz while working hand-in-hand to indict, then convict Kenner – deflecting attention away from Harvey and Jowdy and the fifteen (15) plus years of DCSL and DDM budget looting, loan**

looting (*Diamanté Air, DDM and DCSL*), UNPAID personal loans (*of nearly $10mm*), embezzlements, Racketeering (*with Lehman – on Cabo, Texas, Tennessee and Hawai'i*), etcetera.

Years later -- when the Constantine and Jowdy negotiations were entered into by Tom Harvey -- *Harvey realized his exposure* -- and made the 2007 __*BRIBE*__ to Kenner of 20% of the Texas $100,000,000 new project deal with Bhatti and Lehman Brothers.  Harvey ultimately threatened Kenner with FBI-led jail time in the 2009 EXTORTION email to Kenner's attorney Paul Augustine (*see TIMELINE 007 -- Harvey EXTORTION threat to Kenner (thru Augustine)*) – when Kenner repeatedly refused the Jowdy and Harvey __*BRIBES*__.

*See Jowdy January 6, 2010 deposition (California) --*

7        Q.  WELL, JUST THE ORIGINAL DIAMANTE
8    MEMBERS, WERE YOU GOING TO INVOLVE THEM, GIVE
9    THEM, LIKE, A RIGHT OF FIRST REFUSAL IN THESE
10   OTHER PROPERTIES?
11       A.  WELL, I'M -- I KNOW I TALKED TO
12   MR. KENNER ABOUT A TRIP TO COSTA RICA.  I THINK I
13   EVEN ASKED HIM IF HE WANTED TO GO.  HE SAID HE
14   DIDN'T.
15           AND WHEN THE BOOT RANCH DEAL CAME
16   UP, I THINK I OFFERED 20 PERCENT TO MR. KENNER OF
17   THAT DEAL.

20% BRIBE

In the government's Rule 16 production (*from Jowdy's attorneys*) – all of the fraudulent loan agreements with KSI Capital are in folder –

*10205-10848 DDM-KSI Loan Closing Documents 2-21-06*

In 2009 – at the Nolan arbitration – Jowdy even lied about the 2006 KSI loan to the arbitration panel – as follows –

*Jowdy's 2009 arbitration testimony --*

*Jowdy -- KSI loan fraud*

```
24              ARBITRATOR CAMPBELL:  On the Northern Baja
25      project, that's the one with the airstrip and the water
                                                              349

 1      well.  Is there anything else there?
 2              THE WITNESS:  No.  There's some houses that
 3      people have lived there that we bought out.  Maybe three
 4      residences of different --
 5              ARBITRATOR CAMPBELL:  And that project is sort of
 6      dead in the water right now?
 7              THE WITNESS:  I would like to just say it's idle.
 8              ARBITRATOR CAMPBELL:  There's no loan on it.
 9      There's no development loan on it?
10              THE WITNESS:  No.
```

- ***This testimony is 3 years after the February 2006 KSI loan and full Jowdy and Najam loan proceed embezzlements.***

➢ ***Jowdy had NO PROBLEM lying to the 3-judge arbitration panel.***

Jowdy knowingly defrauded the KSI loan in a few ways (*from the KSI loan documents*) –

> (f)     Borrower is engaged in the operation of its business and the limited liability company has not been created as a vehicle to obtain the Loan. The proceeds of the Loan will be used by Borrower for the purposes set forth in Paragraph 6(n) in connection with the operation of Borrower's business, <u>and the proceeds of the Loan will not be paid over or diverted by Borrower to any member, manager, officer, director, mortgagee, shareholder of Borrower, any Guarantors or any other, person.</u>  Baja Management, LLC, a New York limited liability company ("Baja"), is the sole managing member of Borrower and Kenneth A. Jowdy is the sole managing member of Baja.

#2689191 (145427.006)
KSI Capital Corp.
Diamante Del Mar, LLC
Loan and Security Agreement

10219

6

*Jowdy -- KSI loan fraud*

> (n)   Proceeds from the Loan shall be used to assist Borrower in developing the Real Property Collateral and making additional improvements to and upon the Usufruct Property,   and to pay the fees and expenses required to be paid to or on behalf of Lender in connection with the Loan, to pay on behalf of the Corporate Guarantors, the premiums of the mortgagee title insurance policy required by Lender, and to pay closing costs and expenses of the Borrower related to the Mortgaged Property, including, but not limited to, attorneys' fees, notario fees, recording fees, and all other relevant transaction fees, charges and disbursements.

Jowdy never disclosed the 2004 Hawai'i loan to KSI (*or the Harvey represented investor liens – commencing in 2002 per Harvey's letters*).  KSI noted the Jowdy disclosure fraud (*re – the Hawai'i loan once they discovered it thru Jowdy's own Nevada case admissions*) in their New Jersey lawsuit PLEADINGS versus Jowdy years later with Jowdy in perpetual default on this loan –

> (o)   Borrower is not in violation of or in default under (nor on the Closing Date is there any waiver in effect which, if not in effect, would result in a violation or default under) any provision of Borrower's certificate of formation, operating agreement, or under any provision of any agreement, indenture, evidence of indebtedness, loan or financing agreement, certificate, lease or other instrument to which it is a party, or by which it is bound, or of any law, governmental order, rule or regulation, in any such case under this subparagraph (o) so as to affect adversely in any material manner its business, assets or financial conditions:

> (p)   All statements, representations and warranties made by Borrower or any other person in this Agreement, any other Loan Document and any other agreement, document, certificate or instrument previously furnished or to be furnished by said person to Lender under this Agreement or in connection with the Loan: (i) are and shall be true, correct and complete in all material respects at the time they were made and, in the case of those made prior to the Closing Date, on and as of the Closing Date, (ii) do not and shall not contain any untrue statement of a material fact at the time made, and (iii) do not and shall not omit to state a material fact at the time made necessary in order to make the information contained herein or therein not misleading or incomplete. Borrower understands that all such statements, representations and warranties shall be deemed to have been relied upon by Lender as a material inducement to provide the Loan.

> #2689191 (145427.006)
> KSI Capital Corp.
> Diamante Del Mar, LLC
> Loan and Security Agreement
>
> 12
>
> 10220

The KSI loan paperwork confirms that Jowdy's entities (*without the other investors*) was the real owners of the properties at Diamanté del Mar –



> (t)   The Corporate Guarantors are the sole and lawful owners of the Mortgaged Property.

> #2689191 (145427.006)
> KSI Capital Corp.
> Diamante Del Mar, LLC
> Loan and Security Agreement
>
> 10222

Jowdy failed to alert KSI of the 2004 Hawai'i loan (*or the liens Harvey allegedly placed on the DDM property as security starting in 2002*) –

> 9.   Negative Covenants of Borrower and Guarantors.  To induce Lender to make the Loan pursuant to this Agreement, Borrower and Guarantors, as applicable, hereby covenant and agree that so long as the Loan shall remain outstanding, Borrower, Guarantors and/or LOR, as the case may be, shall not:

> (i)   Create, incur, suffer to exist any indebtedness, except (i) indebtedness in respect of the Loan; and (ii) indebtedness, if any, outstanding as of the date of this Agreement and shown on the financial statements previously delivered to Lender.

The final KSI closing statement from February 21, 2006 confirmed a $2.126mm net loan amount on document --

*10847-10848 tab35*

| Balance to Borrower | $2,126,732.43 | |
|---|---|---|
| Totals: | $3,000,000.00 | $3,000,000.00 |

10847

The Diamanté del Mar bank account at Hudson United Bank (*under Jowdy, Najam and Taffy Jowdy Sr. (Jowdy's father – TLJ Management) control*) received the funds and Jowdy drained them within 60 days as follows -

*Jowdy -- KSI loan fraud*



**DEPOSIT (CREDIT) from KSI loan (***same as loan agreements***) to Jowdy and Najam-controlled DDM account –**

| 02-22 ' Wire Transfer-IN | WILENTZ GOLDMAN & SPITZER | 2,126,732.43 |
| 20060222B1B7SM1F000259 | | |

Jowdy debits immediately to himself and other family members ***OVER $900,000*** from KSI loan – (*ONLY PARTIAL AND TRACEABLE DEBITS*) --

**DEBITS to Jowdy's LOR Management (***México account***) – $537,000 --**

| 02-21 ' Wire Transfer Debit | LOR | 15,000.00 |
| 20060221B1B7202F000087 | | |

| 02-24 ' Wire Transfer Debit | LOR | 35,000.00 |
| 20060224B1B7202F000129 | | |

| 03-07 ' Wire Transfer Debit | | 10,000.00 |
| | | 50,000.00 |
| 20060307B1B7202F000155 | LOR | |
| 03-08 ' Wire Transfer Debit | LOR | 407,002.53 |
| 20060308B1B7202F000030 | | |
| 03-08 ' Preauthorized Wd | | |

*Jowdy -- KSI loan fraud*



**To Jowdy Money Market Account –**

| 02-24 | Debit Memo | 500,000.00 |
|-------|-----------|-----------|

**DEBITS to Baja Management (#5296) -- for Jowdy and Najam – $141,000**

| 02-27 | Debit Memo | BM 547 100,000.00 |
|-------|-----------|-----------|
| 02-27 | Debit Memo | 40,000.00 |

**From DDM to Baja Management account -- $100,000**

| CREDITS | | Additions |
|---------|---|-----------|
| Date | Description | |
| 02-27 | ' Credit Memo | DDM 100,000.00 |

**Subsequent $100,000 payment to Najam (*signed by Najam himself after the transfer*) --**

*Jowdy -- KSI loan fraud*



**From DDM to Baja Management account --**



**Subsequent $50,000 payment to Najam (*signed by Najam himself*) --**





**DEBITS to Jowdy's TLJ Management (#5079) – to Jowdy's father – Taffy L Jowdy –
$20,000**

