Nov 16 05 10:58a        Kenneth Jowdy                          702-222-9281              p 1

> The FALSE Operating Agmt was faxed two days AFTER the loan docs were signed by Jowdy...

# DIAMANTE AIR, A LIMITED LIABILITY COMPANY OPERATING AGREEMENT

==================================================================

## ARTICLE I

### FORMATION

*Section 1. Name.* The name of the Company is the Diamante Air, LLC.

*Section 2. Business.* This Company is to be formed to engage in any lawful act, business or activity for which the Company may be formed including borrowing or investing on behalf of the Company.

*Section 3. Term.* The term of this Company shall be in perpetuity.

*Section 4. Registered agent.* The Company's registered agent for service shall be Capital Services, Inc., whose address is 615 South Dupont Highway, City of Dover, State of Delaware.

*Section 5. Fiscal year.* The fiscal year of the Company shall be the calendar year.

## ARTICLE II

### MANAGING MEMBER & OPERATIONS MANAGER

*Section 1. Managing Member.* There shall be two (2) Managing Members who shall be GuideDog, LLC, with Phil Kenner as its sole member, and Ken Jowdy.

*Section 2. Term of Office.* The Managing Members shall hold office in perpetuity.

> Unknown to Kenner -- Jowdy added himself as a Managing Member of Diamante Air two (2) days after Jowdy signed the loans for the bank and they discovered the inappropriate loan signor...

## ARTICLE III

### INDEMNIFICATION

*Section 1. Third party actions.* The Company shall indemnify any Managing Member, member, or attorney, who is or was a party, or who is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, including all appeals, by reason of the fact that he or she is or was a Member, Managing Member or employee of the Company, or is or was serving at the request of the Company as a director, trustee, officer or employee of another limited liability company, corporation, partnership, joint venture, trust or other enterprise, against any and all expenses (including reasonable attorneys' fees), judgments, decrees, fines, penalties and amounts paid in settlement, which were actually and reasonably incurred by him or her in connection with such action, suit or proceeding, if he or she acted in good faith and in a manner which he or she reasonably believed to be in, or at least not opposed to, the best interests of the Company, and, with respect to any criminal action or proceeding, he or she had no reasonable cause to believe his or her conduct was unlawful. The termination of any action, suit or proceeding by judgment,

CONFIDENTIAL

- 1 -

BNK-SOURCE-00001645

order, settlement, conviction, or plea of *nolo contendere* or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in, or at least not opposed to, the best interests of the company. This indemnification provision shall also cover the LLC's attorney, who shall be treated as a LLC member for indemnification purposes.

*Section 2. Derivative actions.* The Company shall indemnify any Member who is or was a party, or who is threatened to be made a party, to any threatened, pending or completed action or suit, including all appeals, by or on behalf of the Company in order to procure a judgment in its favor by reason of the fact that he or she is or was a Member of the Company or is or was serving at the request of the Company as its Manager, against any and all expenses (including reasonable attorneys' fees) which were actually and reasonably incurred by him or her in connection with the defense or settlement of such action or suit, so long as he or she acted in good faith and in a manner which he or she reasonably believed to be in, or at least not opposed to, the best interests of the Company; except that no indemnification shall be made with respect to any claim, issue or matter as to which such person shall have been finally adjudged to be liable for negligence or misconduct in the performance of his or her duty to the Company unless, and only to the extent that, the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability and in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnification for such expenses as the court shall deem proper. This indemnification provision shall also serve to cover the LLC's attorney, who shall be treated as a LLC member for indemnification purposes.

**ARTICLE IV**

**DIVIDEND RIGHTS/LIQUIDATION RIGHTS/VOTING**

*Section1. Dividend Rights/Liquidation Rights.* The following percentages indicate dividend and liquidation rights, all proportional to ownership interest. All ownership interest[s] are subject to common principles of dilution, except if expressly noted otherwise:

> *Ken Jowdy*......................................................*30.0%*
>
> *GuideDog, LLC*...........................................*30.0%*
>
> *Sergei Gonchar*...........................................*10.0%*
>
> *Darryl Sydor*................................................*10.0%*
>
> *Jozef Stumpel*.............................................*10.0%*
>
> *Mattias Norstrom*........................................*10.0%*

CONFIDENTIAL

BNK-SOURCE-00001646

## VOTING RIGHTS

*Section1. Voting Rights.* The following percentages indicate voting rights.

Ken Jowdy..................................................40.0%

GuideDog, LLC.........................................40.0%

Sergei Gonchar.........................................5.0%

Darryl Sydor.............................................5.0%

Jozef Stumpel...........................................5.0%

Mattias Norstrom.....................................5.0%

## ARTICLE V

## RESTRICTIONS ON MEMBER'S TRANSFERABILITY

*Section 1. New members.* A new Member may be admitted into the Company only if: (i) all the Managing Member[s] approve of such admission; and (ii) said new Member executes such instruments as the other Members determine are necessary or desirable to effect such admission and to confirm the agreement of the person or entity being admitted to be bound by all of the covenants, terms and conditions of this Agreement then in effect. Said new Member shall receive a capital interest and an interest in the net profits and net losses and cash flow of the Company in an amount to be determined by all the other Members at the time of said admission.

*Section 2. Restrictions on transfer and encumbrance; right of first refusal.* Except as otherwise specifically permitted pursuant to the further provisions of this Agreement, each of the Members agrees that he or she will not, without the prior written consent of the Managing Member, transfer, assign, sell, give, pledge, hypothecate or otherwise encumber his or her interest in the Company ("Interest"), and any attempt to do any of the foregoing without such prior written consent shall be null and void and of no effect.

In the event of a proposed sale or other disposition for value to an outside party of all or any portion of his or her Interest by any Member (the "Seller"), whether voluntary or involuntary, advance written notice thereof shall be given by certified mail, return receipt requested, to the Company, specifying the name of the prospective purchaser or transferee, the extent of the interest proposed to be sold or otherwise disposed of (the "Offered Interest"), and the price and all other terms and conditions of the proposed transaction.

For a period of twenty (20) days after its receipt of such said notice, the Company shall have the first right and option to purchase the entire Offered Interest on the same terms as are set forth in the notice. The Company may purchase the Offered Interest utilizing such assets, lines of credit or other

CONFIDENTIAL

BNK-SOURCE-00001647

sources of funds as may be obtained for such purpose. Thereafter, the Offered Interest so purchased by the Company shall be retired; and all further allocations and distributions of the Company to the Members shall be in the proportion which the interest of each remaining Member bears to the interests of all remaining Members after retirement of the Offered Interest.

In the event the Company shall not elect to purchase the Offered Interest, the Seller shall have the right, for an additional period of thirty (30) days (not exceeding a total of sixty (60) days from the date of the Seller's notice to the Company), to sell or otherwise dispose of the Offered Interest to the proposed purchaser or transferee (the "Purchaser") upon the same terms and conditions and for the same price as were set forth in the Seller's notice to the Company. If such transaction with the Member is not consummated within the maximum sixty (60) day period specified above, the Company's right to purchase the Offered Interest shall once again be reinstated as set forth herein, and the Seller shall not have the right to sell the Offered Interest to a Purchaser until the Seller has once again complied with all provisions of this Article VIII, Section 3.

*Section 4. Death of a member; waiver of statutory appraisal.* Upon the death of a Member, an appraisal of the Company assets and the right of the deceased Member's estate to receive a cash amount equal to the value of the deceased Member's interest in the Company (pursuant to the laws of the State of Delaware as now in effect or as subsequently amended) is hereby waived.

*Section 5. Cash flow distribution.* Following the death of a Member, the estate of the deceased Member shall be entitled to receive the deceased Member's proportionate share of the cash flow of the Company for that part of the Company's fiscal year that elapsed prior to the deceased Member's death.

## ARTICLE VI

## [Intentionally Omitted]

## ARTICLE VII

## DISSOLUTION AND TERMINATION

*Section 1. Termination of the company.* The Company shall be terminated and dissolved upon the vote of all holding an interest in the Company;

Upon the termination of the Company as herein provided, a full and general accounting shall be taken of the Company's business, and the affairs of the Company shall be wound up. Any net profits or net losses earned or incurred since the previous accounting shall be allocated among the Members. The Members shall wind up and liquidate the Company by selling the Company's assets and distributing the net proceeds therefrom, in cash, after the payment of all Company liabilities (including expenses and fees incurred in

CONFIDENTIAL

- 4 -

BNK-SOURCE-00001648

connection with the sale of assets and liquidation), to the Members in proportion to the positive balances in their capital accounts.

The LLC shall not be automatically terminated upon the death, retirement or resignation of a Member.

*Section 2. Continuing governance.* In the event of a dissolution of the Company, the business affairs of the Company shall continue to be governed by the terms of this Agreement during the winding up of the Company's business and affairs.

IN WITNESS WHEREOF, the Member hereto has executed this Operating Agreement on this 14th day of November 2005

By: _____ Diamante An, LLC
Managing Member/Ken Jowdy

Signed as a fraud on the Kenner investors...

CONFIDENTIAL

- 5 -

BNK-SOURCE-00001649