1 | Kevin R. Harper, State Bar No. 019118
**HARPER LAW PLC**
2 | One North Central Avenue, Suite 1130
Phoenix, Arizona 85004
3 | Tel. 602.256.6400
Fax 602.256.6418
4 | krh@harperlawarizona.com

5 | *Attorney for Plaintiffs*

6 | MARICOPA COUNTY SUPERIOR COURT

7 | STATE OF ARIZONA

8 | LITTLE ISLE IV, LLC, a Delaware Limited
9 | Liability Company; ULA MAKIKA, LLC, a
Delaware Limited Liability Company; and
10 | PHILIP A. KENNER,

No. **CV 2008-026850**

11 | Plaintiffs,

**COMPLAINT**

12 | vs.

(Jury Trial Demanded)

13 | KENNETH A. JOWDY; JOHN AND JANE
DOES I-X; and BLACK AND WHITE
14 | COMPANIES I-X,

15 | Defendants.

16 |     Plaintiffs Little Isle IV, LLC ("Little Isle IV"), Ula Makika, LLC ("Ula Makika"), and

17 | Philip Kenner, by and through undersigned counsel, for their Complaint against Defendant

18 | Kenneth Jowdy, allege as follows:

19 |                   PARTIES AND JURISDICTION

20 |     1.    Plaintiff Little Isle IV, LLC is a Delaware Corporation authorized to conduct

21 | business and conducting business in Arizona.

22 |     2.    Plaintiff Ula Makika, LLC is a Delaware Corporation authorized to conduct

23 | business and conducting business in Arizona.

24 |     3.    Plaintiff Phillip Kenner is, and at all times material hereto was, a resident of the

25 | State of Arizona.

26 |

COPY
OCT 29 2008
DEPUTY CLERK

4.     Plaintiff Phillip Kenner is the managing member of Plaintiffs Little Isle IV, LLC and Ula Makika, LLC

5.     Upon information and belief, Defendant Kenneth Jowdy is a part-time resident of the States of Connecticut and Nevada, and the country of Mexico.

6.     The true identities of Defendants John and Jane Does I-X and Black and White Companies I-X are unknown to Plaintiff at the present time, but may have been joint tortfeasors and/or otherwise legally responsible in some manner for the events and actions that are the subject of this Complaint and contributed to Plaintiff's injuries and damages.  Plaintiff will seek leave to amend to show the true names, capacities, and/or relationships when they have been ascertained.

7.     Some of the events alleged in this Complaint occurred in Arizona.  Defendant is or was present in Arizona, doing business in Arizona, and/or caused events to occur in Arizona out of which Plaintiffs' cause of action arises.   The amount in controversy exceeds the minimal jurisdictional amount.

8.     Jurisdiction and venue are proper in this Court.

GENERAL ALLEGATIONS

9.     Defendant and Plaintiff Philip Kenner have had a personal and business relationship for several years.  As a result of that relationship, Kenner came to trust and rely upon Jowdy.

10.     Beginning in or about October 2004, Jowdy approached Kenner requesting that Kenner provide funds to help finance various personal and/or business ventures Jowdy was involved in.

11.     Although specific terms, including repayment terms, were not always discussed, Jowdy represented that all the loans would be repaid in a reasonable period of time with a general understanding that amounts would be payable within months, not years.

2

PKHOME-00012837

12.     On the occasion of each loan, Jowdy further promised to repay not only the principle, but an additional amount as interest or profit.  The amount of such return was not specified on most occasions.

13.     On the occasion of each loan request, Defendant instructed Plaintiff Kenner where to deliver the funds.  Except for the case payments directly from Kenner to Jowdy, the payments were made via wire transactions from one of the Plaintiff entities to a recipient named by Jowdy.

14.     Upon information and belief, some of the wire recipients were creditors to whom Jowdy owed money.

15.     Upon information and belief, other wire recipients, including but not limited to Baja Development Corp., Diamante Del Mar, LLC, and Propriedades DDM, are business entities managed and/or controlled by Jowdy.

16.     Upon information and belief, Jowdy has commingled and intermingled funds and other assets of such entities with his personal funds and assets for his own convenience and to evade payment of the companies' obligations.

17.     Upon information and belief, Defendant has and continues to divert funds and other assets of such companies to non-corporate uses.

18.     Upon information and belief, said corporate entities have ignored corporate and other formalities under the leadership of Defendant.

19.     Upon information and belief, said corporate entities have been at all relevant times substantially undercapitalized, without sufficient assets, and unable to perform their obligations, including their obligations to Plaintiffs.

20.     Upon information and belief, Defendant treated the assets of said corporate entities as his own.

3

PKHOME-00012838

21.    Upon information and belief, Defendant diverted assets from said corporate entities to himself and/or other entities to the detriment of creditors, including Plaintiffs.

22.    Upon information and belief, Defendant contracted with Plaintiff via said corporate entities with the intent to avoid personal liability for his wrongful acts.

23.    Upon information and belief, Defendant in bad faith dominated and controlled said corporate entities with regard to the acts alleged herein as his alter ego or business conduit, sharing a unity of interest and ownership.

24.    The corporate veil, or other protections against liability normally associated with business and corporate entities, must be disregarded in order to avoid sanctioning a fraud against Plaintiffs or otherwise promoting an injustice or inequity, and Defendant must be held personally liable for damages suffered by Plaintiff.

25.    As detailed below, approximately $8,000,000 was paid by Plaintiffs to Defendant, his creditors and/or companies controlled by Defendant between October 2004 and the present date.

26.    During the course of these transactions, Defendant did make limited payments to Plaintiffs in order to further earn Plaintiffs' trust and convince Plaintiffs to provide additional funds.

27.    Defendant promised to repay Plaintiffs for any and all amounts advanced.

28.    Despite Plaintiffs demands, Defendant has failed to repay any of the amounts loaned to him.

29.    Plaintiffs have been damaged as a direct and proximate result of Defendant's actions and/or omissions in an amount to be proven at trial.

30.    Plaintiffs are entitled to their attorneys' fees pursuant to A.R.S. § 12-341.01.

4

PKHOME-00012839

**The Little Isle IV Transactions**

31.   On or about October 29, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $15,000.

32.   On or about November 1, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Aero Lease of Long Beach for the benefit of Defendant in the amount of $26,469.

33.   On or about November 1, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Bruce D. Greenberg, Inc. for the benefit of Defendant in the amount of $11,000.

34.   On or about November 2, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $250,000.

35.   On or about November 3, 2004 Baja Development Corp. made a payment to Little Isle IV for the benefit of Defendant in the amount of $52,469.

36.   On or about November 24, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Casa de Caza for the benefit of Defendant in the amount of $14,500.

37.   On or about November 30, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $100,000.

38.   On or about December 22, 2004, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Casa de Caza for the benefit of Defendant in the amount of $15,500.

5

PKHOME-00012840

39.    On or about January 7, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Startime Management Group for the benefit of Defendant in the amount of $30,000.

40.    On or about January 7, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Jim Sheppard and Rodney Dalton for the benefit of Defendant in the amount of $750,000.

41.    On or about January 10, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Startime Management Group for the benefit of Defendant in the amount of $30,000.

42.    On or about January 12, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $20,000.

43.    On or about January 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $100,000.

44.    On or about January 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $250,000.

45.    On or about February 1, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $20,000.

46.    On or about February 7, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $300,000

6

PKHOME-00012841

47.     On or about February 25, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Jim Sheppard and Rodney Dalton for the benefit of Defendant in the amount of $100,000.

48.     On or about March 14, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $100,000.

49.     On or about March 15, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $75,000.

50.     On or about March 28, 2005 Diamante Del Mar, LLC made a payment to Plaintiff Little Isle IV for the benefit of Defendant in the amount of $50,000.

51.     On or about April 12, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $240,000.

52.     On or about April 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Insured Aircraft Title Service, Inc. for the benefit of Defendant in the amount of $200,000.

53.     On or about April 21, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Insured Aircraft Title Service, Inc. for the benefit of Defendant in the amount of $800,000.

54.     On or about April 26, 2005 Insured Aircraft Title Service, Inc. made a payment to Plaintiff Little Isle IV for the benefit of Defendant in the amount of $200,000.

55.     On or about April 26, 2005 Insured Aircraft Title Service, Inc. made a payment to Plaintiff Little Isle IV for the benefit of Defendant in the amount of $800,000.

7

PKHOME-00012842

56.   On or about April 26, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Mount Zion Commercial Services for the benefit of Defendant in the amount of $175,000.

57.   On or about April 27, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Mount Zion Commercial Services for the benefit of Defendant in the amount of $87,500.

58.   On or about May 4, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $75,000.

59.   On or about May 4, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Atillio Colli Villarino for the benefit of Defendant in the amount of $350,000.

60.   On or about May 17, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Atillio Colli Villarino for the benefit of Defendant in the amount of $350,000.

61.   On or about May 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $45,000.

62.   On or about June 2, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Metro Jet, LLC for the benefit of Defendant in the amount of $30,000.

63.   On or about June 23, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Startime Management Group for the benefit of Defendant in the amount of $40,000.

8

PKHOME-00012843

64. On or about June 27, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to LOR Management S.A. de C.V. for the benefit of Defendant in the amount of $40,000.

65. On or about July 19, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $15,000.

66. On or about July 19, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Little Isle IV made a payment to Propiedades DDM S. de R.L. de C.V. for the benefit of Defendant in the amount of $1,500,000.

67. From October 2004 through July 2005 Plaintiff Little Isle IV made a total of $6,154,969 in payments to Defendant, Defendant's creditors, and/or to Defendant's business ventures and received $1,102,469 in repayment.

### The Ula Makika Transactions

68. On or about May 17, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Atillio Colli Villarino for the benefit of Defendant in the amount of $325,000.

69. On or about May 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Atillio Colli Villarino for the benefit of Defendant in the amount of $225,000.

70. On or about June 5, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Insured Aircraft Title Service, Inc. for the benefit of Defendant in the amount of $390,000.

71. On or about June 3, 2005 Propiedades DDM S. de R.L. de C.V. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $400,000.

9

72.    On or about July 19, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $50,000.

73.    On or about July 19, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $50,000.

74.    On or about July 26, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $95,000.

75.    On or about August 8, 2005 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $100,000.

76.    On or about August 18, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Propiedades DDM S. de R.L. de C.V. for the benefit of Defendant in the amount of $40,000.

77.    On or about August 26, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Propiedades DDM S. de R.L. de C.V. for the benefit of Defendant in the amount of $25,000.

78.    On or about August 26, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $110,000.

79.    In or about August 2005 Mark Thalmann made payment to Ula Makika for the benefit of Defendant for the benefit of Defendant in the amount of $223,000.

80.    On or about September 12, 2005 Mark Thalmann made a payment to Ula Makika for the benefit of Defendant in the amount of $25,000.

10

PKHOME-00012845

81.     On or about September 15, 2005 Baja Development Corp. made a payment to Ula Makika for the benefit of Defendant in the amount of $25,000.

82.     On or about September 23, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to LOR Management S.A. de C.V. for the benefit of Defendant in the amount of $40,000.

83.     On or about September 23, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $50,000.

84.     On or about November 8, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $15,000.

85.     On or about November 15, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Diamante Del Mar, LLC for the benefit of Defendant in the amount of $40,000.

86.     On or about November 21, 2005 Diamante Del Mar, LLC made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $40,000.

87.     On or about December 9, 2005, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Diamante Air, LLC for the benefit of Defendant in the amount of $10,000.

88.     On or about February 3, 2006, at Defendant's request and subject to Defendant's promise of repayment, Plaintiff Ula Makika made a payment to Baja Development Corp. for the benefit of Defendant in the amount of $20,000.

89.     On or about February 14, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $50,000.

11

PKHOME-00012846

90.    On or about February 24, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $50,000.

91.    On or about March 2, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $70,000.

92.    On or about March 13, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $20,000.

93.    On or about March 14, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $30,000.

94.    On or about March 24, 2006 Baja Development Corp. made a payment to Plaintiff Ula Makika for the benefit of Defendant in the amount of $90,000.

95.    From May 2005 through February 2006 Plaintiff Ula Makika made a total of $1,485,000 in payments to Defendant, Defendant's creditors, and/or to Defendant's business ventures and received $1,123,000 in repayment.

**The Philip Kenner Transactions**

96.    In or about October 2002, Jowdy promised to pay Kenner $500,000 as an incentive for Kenner to leave his current employer and undertake various investment and business opportunities together with Jowdy.

97.    Kenner accepted Jowdy's offer, left his employment, and suffered significant losses as a result, but Jowdy has failed and refused to remit the promised payment.

98.    From October 2004 to the present, Plaintiff Phillip Kenner has loaned Defendant approximately $400,000 in various cash payments.

99.    Despite Plaintiff Kenner's demands, Defendant has failed to pay any of the amounts owed to Kenner.

12

PKHOME-00012847

## COUNT ONE
### (Breach of Contract)

100.    Plaintiffs incorporate all foregoing allegations as if fully set forth herein.

101.    One or more valid contracts existed between Plaintiffs and Defendant.

102.    Defendant breached the terms of the contracts with Plaintiffs by failing and refusing to pay amounts owed in a reasonable and timely manner.

103.    Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of the contracts.

104.    Plaintiffs have sustained damages in an amount to be proven at trial.

105.    During the course of the parties' relationship Jowdy deliberately prevented Plaintiffs, by his statements and actions, from discovering the Defendant's contractual breaches.

106.    Because of Plaintiffs' reasonable reliance upon Defendant's representations and actions, Plaintiffs did not discover the contractual breaches until after November 2006.

## COUNT TWO
### (Negligent and Intentional Misrepresentation)

107.    Plaintiffs incorporate all foregoing allegations as if fully set forth herein.

108.    Defendant made the statements, misrepresentations, and omissions set forth above to Plaintiffs with the intent that they rely upon them and Plaintiffs did so rely.  Plaintiffs would not have consummated the transactions but for the misrepresentations and omissions.

109.    Defendant either knew that his representations were false or consciously and willfully disregarded that the representations were false.  Alternatively, Defendant failed to exercise reasonable care and competence in communicating accurate or truthful statements to Plaintiffs.

110.    The representations were material to Plaintiffs, who relied upon them to their detriment.   Such reliance was reasonable and justified.   Plaintiffs did not know the

13

PKHOME-00012848

1  representations were false and relied upon Defendant to make accurate representations and
2  disclosures, as required by Arizona law.

3        111.    Plaintiffs have been consequently and proximately injured as a result of the
4  misrepresentations and omissions in an amount to be proven at trial.

5        112.    To the extent Defendant's actions are shown to be intentional, they were carried
6  out intentionally, maliciously, and with a conscious disregard for the interests of Plaintiffs, and
7  specifically to obtain a pecuniary gain and, as such, have exposed Defendant to liability for
8  exemplary and punitive damages.

9        113.    During the course of the parties' relationship Jowdy deliberately prevented
10 Plaintiffs, by his statements and actions, from discovering the fraudulent nature of Defendant's
11 representations.

12       114.    Because of Plaintiffs' reasonable reliance upon Defendant's representations and
13 actions, Plaintiffs did not discover the fraudulent nature of those representations until after
14 November 2006.

15                          **COUNT THREE**
16                     **(Breach of Fiduciary Duty)**

17       115.    Plaintiffs incorporate all foregoing allegations as if fully set forth herein.

18       116.    Defendant had a duty to act for the benefit of Plaintiffs, particularly with regard to
19 the use and management of the funds paid to and/or on behalf of Defendant, which funds
20 Defendant promised to repay in a timely manner.

21       117.    Defendant breached his duty by failing to repay Plaintiffs the money invested in
22 Defendant's business ventures.

23       118.    Plaintiffs have sustained damages in an amount to be proven at trial.

                            **PRAYER FOR RELIEF**
24

25 WHEREFORE, Plaintiff demands and prays for judgment as follows:

26       (A)    Awarding judgment in Plaintiffs' favor and against Defendant;

                                  14

(B)     Awarding Plaintiffs all of their damages as proven at trial, including but not limited to contract damages, compensatory damages, as well as punitive or exemplary damages as may be appropriate;

(C)     Awarding Plaintiffs their costs of suit and reasonable attorneys' fees pursuant to the terms of the contracts and A.R.S. § 12-341.01;

(D)     Awarding Plaintiffs such further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 28 day of October, 2008.

HARPER LAW PLC

By
Kevin R. Harper
*Attorney for Plaintiff*

15

PKHOME-00012850