SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Kenneth A. Jowdy, an individual; and DOES 1 through 100, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Greg deVries, Jason Woolley, Chris Simon, Mattias Norstrom, Vladimir Tsyplakov, Jay McKee, Raymond Murray, Glen Murray, Bryan Berard, Darryl Sydor, Dimitri Khristich, Sergei Gonchar, (cont. addit party attach)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 18 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
AMBER LaFLEUR-CLAYTON

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court-Central District
111 N. Hill St.
Los Angeles, CA 90012

**CASE NUMBER:** *(Número del Caso):* BC416081

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ronald Richards & Associates, A.P.C. Ronald Richards, Esq. #176246
P.O. Box 11480, Beverly Hills, CA 90213, Office: 310-556-1001 Fax: 310-277-3325

DATE: JOHN A. CLARKE, CLERK Clerk, by _____ AMBER LaFLEUR-CLAYTON , Deputy
*(Fecha)*                        *(Secretario)*                                 *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
JUN 18 2009

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: de Vries et. al. vs. Jowdy, et. al. | CASE NUMBER | SUM-200(A) |
|---|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[✓] Plaintiff　　[ ] Defendant　　[ ] Cross-Complainant　　[ ] Cross-Defendant

1. Jozef Stumpel   2. Michael Peca

as individuals

Page ____ of ____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

1  Ronald Richards, Esq. (SBN 176246)
   THE LAW OFFICES OF
2  RONALD RICHARDS & ASSOCIATES, A.P.C.
   P. O. Box 11480
3  Beverly Hills, California 90213
   Telephone (310) 556-1001
4  Facsimile (310) 277-3325

5
6  Attorneys for Plaintiffs

7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES- CENTRAL DISTRICT

10 Greg deVries, Jason Woolley, Chris Simon,          CASE NO.   BC416081
11 Mattias Norstrom, Vladimir Tsyplakov, Jay
   McKee, Raymond Murray, Glen Murray,
12 Bryan Berard, Darryl Sydor, Dimitri                COMPLAINT FOR DAMAGES
   Khristich, Sergei Gonchar, Michael Peca,
13 Jozef Stumpel
                                                     (1) BREACH OF FIDUCIARY DUTY
14 as individuals;                                   (2) FRAUD
                                                     (3) CONSTRUCTIVE TRUST
15      Plaintiff,                                   (4) UNJUST ENRICHMENT
                                                     (5) ACCOUNTING
16
        vs.
17
                                                     DEMAND FOR JURY TRIAL
18 Kenneth A. Jowdy, an individual; and DOES
   1 through 100, inclusive,
19
        Defendants.
20

21      Plaintiffs complain and allege as follows:

22 1.   Plaintiffs Greg deVries, Jason Woolley, Chris Simon, Mattias Norstrom, Vladimir

23      Tsyplakov, Jay McKee, Raymond Murray, Glen Murray, Bryan Berard, Darryl Sydor,

24      Dimitri Khristich, Sergei Gonchar, Michael Peca and Jozef Stumpel ("Plaintiffs") are,

25      and at all times mentioned in this complaint individuals resided throughout the United

26      States and Canada. They all transacted business and were solicited by the defendant who

27      operated his real estate investment business in Los Angeles County in the State of

28

                                                 1

1 California.

2. Plaintiffs is informed and believes, and thereon alleges, Defendant KENNETH A. JOWDY ("JOWDY") is, and at all times mentioned in this complaint was, an individual operating investment businesses in Los Angeles County in the State of California. Specifically, JOWDY solicited professional hockey players and baseball players to invest in land deals and then failed to execute even the most fundamental elements of a business or development plan. JOWDY used the Southern California region as one of his hubs of business operations.

3. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and on that basis allege, that DOES 1 through 100, inclusive, are responsible in some manner for the damages suffered by Plaintiffs alleged herein.

4. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each defendant herein conspired together, aided and/or abetted, operated and acted as the agent partner, joint venturer, associate and/or representatives of each other (i.e. the other defendants), and in doing he acts herein alleged, acted within the course and scope of their authority as agents and/or representative, and with the knowledge, approval, permission and consent of the other defendants.

5. JOWDY operated businesses at the following addresses in the Southern California area: 420 21st Street, Manhattan Beach, CA 90266; 5541 La Jolla Mesa Drive, La Jolla, CA 92037; 3333 East Spring Street, Long Beach, CA 90806.

6. The Plaintiffs, all professional hockey players who were players in good standing in the

COMPLAINT FOR DAMAGES 2

1　　　National Hockey League and invested various amounts with JOWDY, controlled entities

2　　　that held ownership in U.S. LLCs, which held ownership in another U.S. LLC, which

3　　　held ownership in a Mexican corporation, which owns beach front property in Cabo San

4　　　Lucas, Mexico.

5　7.　Specifically, Plaintiffs Jason Woolley and Dimitri Khristich invested in Baja

6　　　Management, LLC, which owns 10% of Diamante Del Mar, LLC, which owns the

7　　　property. The remaining twelve (12) Plaintiffs invested directly in Diamante Del Mar,

8　　　LLC, which owns the property. The Plaintiffs invested as follows:

| | | |
|---|---|---|
| A. | $500,000 | Dimitri Khristich |
| B. | $500,000 | Vladimir Tsyplakov |
| C. | $500,000 | Bryan Berard |
| D. | $500,000 | Michael Peca |
| E. | $500,000 | Chris Simon |
| F. | $250,000 | Jason Woolley |
| G. | $500,000 | Ethan Moreau[1] |
| H. | $500,000 | Greg deVries |
| I. | $500,000 | Jozef Stumpel |
| J. | $500,000 | Sergei Gonchar |
| K. | $500,000 | Owen Nolan[2] |
| L. | $500,000 | Mattias Norstrom |
| M. | $500,000 | Darryl Sydor |
| N. | $500,000 | Raymond Murray |

---

[1] Not a named plaintiff.

[2] Not a named plaintiff.

COMPLAINT FOR DAMAGES　　　　　　3

|   |   |    |                          |
|---|---|----|--------------------------|
| 1 |   | O. | $500,000 Glen Murray     |
| 2 |   | P. | $500,000 Jay McKee       |
| 3 |   | Q. | $500,000 Joe Juneau[3]   |

8. To manage these investments, JOWDY was a paid three hundred fifty thousand dollar yearly salary ($350,000.00), plus all travel and entertainment expenses, to be the steward of the Plaintiffs' capital. Plaintiffs allege JOWDY completely mismanaged the project from day one. He acted as the sole developer as well as the sole manager of the investment entity, but over a three (3) year period he did not produce even the most fundamental elements of a master plan development such as engineering drawings or preliminary utility infrastructure. Nevertheless, he and his employees, whom consisted primarily of childhood friends with no development experience whatsoever, spent over ten million dollars ($10,000,000.00) over said seven (7) year period. The sole element of construction that JOWDY did facilitate, almost immediately after acquiring the property and some initial investor capital, was a 6000 ft. concrete runway which was built and used for the express purpose of landing the Diamante branded airplanes on the property to impress potential investors in order to convince them to invest money in the project. Other than the runway, no further development whatsoever has taken place since 2003.

9. JOWDY promised the Plaintiffs, and other investors, that two (2)18 hole golf courses would be built on the property and that each investor would be a Founding Member of the Diamante Del Mar Golf Club and Resort. Additionally, JOWDY promised each Founding Member an interest in the form of a fractional ownership in the Private Residence Club, as well as a six figure credit towards a Home Site Lot in the Diamante Del Mar Resort, upon which each Founding Member may build a home. To date, none of

---

[3] Not a named plaintiff.

COMPLAINT FOR DAMAGES

1  these elements of the project have even begun to be developed, even though they were
2  expressly promised. JOWDY has since effectively abandoned this project to the prejudice
3  of the Plaintiffs and has moved on to raising new investment capital for several other
4  similar, but unrelated projects, in the U.S. and Mexico through his parent golf
5  development company Legacy Properties.

10. Several years after Plaintiffs invested in the project, JOWDY acquired a three million dollar ($3,000,000.00) loan from a high interest/fee "hard money" lender and used the property as collateral without the knowledge or consent of the investors. Moreover, the three million dollars ($3,000,000) has not been invested in the property and the location and utilization of these proceeds is still unknown. The property remains encumbered by said loan.

11. Bill Najam (a non-practicing attorney), who is JOWDY'S brother in law, was also paid a salary in excess of one hundred fifty thousand dollars ($150,000.00) per year plus all travel and entertainment expenses. His role in the company and his related business activities have yet to be identified. Mr. Najam spent no more than a couple of weeks (collectively) on property over the last seven (7) years. Mr. Najam, was in charge of the corporate governance and while under JOWDY's direction and control, received over eight million dollars ($8,000,000.00) from a LLC in Hawaii. Mr. Najam failed to properly account for those funds and has placed the JOWDY investors in a vulnerable and compromised position.

[annotation: Hawaii loans...]

12. Ken Ayers (the sole Project Construction Manager), was paid a salary, in excess of one hundred fifty thousand dollars ($150,000.00) per year yet spent a grand total of less than ten (10) days on property (collectively) over a seven (7) year period. At one point late last year, he asked a fellow employee how to dial Mexico from his office in CA. He was

COMPLAINT FOR DAMAGES    5

|  |  |
|---|---|
| 1 | also employed full-time by the Bridges in Rancho Santa Fe, CA during his entire tenure |
| 2 | at Diamante Del Mar and continues to be employed by the Bridges and most likely by |
| 3 | Diamante and Legacy Properties (JOWDY's Parent Company) simultaneously. |
| 13. | JOWDY frequently spent hundreds of thousands of dollars from the company's accounts, as well as used company resources such as private jets which were purchased with investors' money, (some of whom are Plaintiffs in this case) to entertain JOWDY's close personal friends; Roger Clemens, Reggie Jackson, Joe Morgan, and Pete Rose (to name a few), under the guise that these individuals would eventually purchase real estate in the development. However, Clemens and even his wife were vocal and adamant that they would never purchase property in the development. When asked about their interest in the project, other professional athlete/friends of JOWDY's who JOWDY entertained in a similar extravagant fashion, stated openly that they were not buyers either. Nevertheless, they all continued to accept gratuitous extravagant private air travel, five star hotel accommodations, luxury home rentals, unlimited food and beverage expenses, golf tournaments and lavish parties, several times per year over a three year period, all orchestrated by JOWDY and paid for using the Plaintiffs' investment capital. |
| 14. | JOWDY was solely responsible for inviting these individuals and was also responsible for arranging for various female porn stars, escorts, strippers, party girls and other women to attend these functions, again all paid for by the company. Clemens in particular, was a regular participant in these activities and Adrian Moore (one of the female attendees who was close to Clemens) was later hired by JOWDY, and employed by Diamante, as JOWDY's personal assistant as a personal favor to Clemens. |
| 15. | JOWDY and childhood friend Mark Thalman, who was represented as being a pilot and a self proclaimed aviation expert, purchased three (3) Airplanes using the Plaintiffs' |

COMPLAINT FOR DAMAGES                           6

business manager Philip A. Kenner's and various National Hockey League Players' (Kenner's clients) money through an entity named Diamante Air, LLC. JOWDY and Thalman misappropriated and/or lost over two million dollars ($2,000,000.00) of investors' money through this entity and through the misuse of the airplanes. JOWDY and Thalman have since defaulted on the two loans for the airplanes, which were guaranteed by Phil Kenner and Plaintiff Sergei Gonchar. The airplanes have since been repossessed by 1st Source Bank. Until recently when Kenner and Gonchar reached a settlement at their considerable expense, Kenner and Gonchar were defending a lawsuit filed by the bank for their personal guarantee as a result of JOWDY's and Thalman's negligent management of this entity. JOWDY and Thalman were the managing members of this entity and Kenner and his clients (including some of the Plaintiffs) are filing a lawsuit against JOWDY and Thalman regarding this entity. As a result of Kenner making Jowdy and Thalmann aware of the imminent filing of a complaint, JOWDY has produced a document with only his signature on it, and now suggests that Kenner is also a Managing Member of this entity and is therefore also responsible for its demise.

16. JOWDY constantly used the airplanes to fly himself and various friend/employees, as well as several of the aforementioned professional athletes and female companions to Cabo San Lucas Mexico, El Rosario Mexico, Palm Springs, CA, La Jolla, CA, New York City, NY, and Las Vegas, NV (several times per year for approximately three years) under the guise of company business.

17. JOWDY is the sole managing member of the Diamante Del Mar project. JOWDY is also the sole managing member of the Diamante Cabo San Lucas project in which several of the Plaintiffs have also invested and are filing a similar lawsuit against JOWDY related to this entity. Criminal fraud charges have also been brought against JOWDY and an

COMPLAINT FOR DAMAGES     7

arrest warrant for JOWDY has been issued in Mexico with respect to the Diamante Cabo San Lucas project.

18.  JOWDY received funds from various entities. He made no investigation as to the source of those funds or if the sender was authorized to send the funds. He deposited those funds in his personal accounts, accounts of other entities that were not owned by the Plaintiffs, and completely failed to account for these deposits on the books and records of any of his entities. JOWDY has abandoned his role to such a degree that he is not entitled to any corporate safeguards and the fiction created by him of a corporate structure is nothing more than a sham to hide the funds in various entities and individual accounts so they can't be traced by Plaintiffs.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Defendants JOWDY and DOES 1 to 100)**

Plaintiffs incorporate and reallege herein paragraphs 1 through 18 above, as if set forth in full.

19.  JOWDY owed Plaintiffs fiduciary duties resulting from the position of trust and owed them a duty to make true and accurate statements to them.

20.  JOWDY owed Plaintiffs fiduciary duties resulting from the position of trust and owed them a duty to make true and accurate statements to them. JOWDY breached that duty by providing misleading, untrue, and inaccurate accounting of the proceeds received, the direction of the development, the time period in which he would complete the project. When in reality, JOWDY had no intention of performing any of his obligations as the sole manager of the project. He lulled the Plaintiffs into not demanding their money back and into believing he was effectively managing the project. It was not until he testified

COMPLAINT FOR DAMAGES                    8

under oath in an arbitration entitled <u>Nolan vs. Kenner</u>, Case No. 76 148 Y 00223 08 DEAR on May 27, 2009, did Plaintiffs fully became aware through their agent the extent of JOWDY's ethical and legal lapses as to their capital. They discovered that their capital accounts were ZERO. They discovered the project was going nowhere. They discovered that JOWDY had spent eight million dollars ($8,000,000.00) of borrowed money from a Delaware LLC, named Little Isle IV, without any accounting by Bill Najam who testified in said arbitration that he was the custodian of records. They discovered that after repeated requests, they would not be provided copies of the books and records to which they were entitled. The only way to view the books and records was to travel to Connecticut even though JOWDY operated out of California when he sold these investments. They discovered that JOWDY had commingled funds in non-corporate accounts, had no intention of going back to develop the project, had aggressively leveraged and encumbered the property with debt., and had run out of money. At no time did they receive warning that JOWDY had spent all of their capital on exorbitant salaries, private parties, junkets, and worthless promotional events. JOWDY instead took all of that corporate opportunity and used it to promote other projects in the United States that were not funded by the Plaintiffs.

## SECOND CAUSE OF ACTION

## FRAUD

### (Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in paragraphs 1 through 20 above.

21.　JOWDY owed Plaintiffs fiduciary duties resulting from the position of trust and owed them a duty to make true and accurate statements to them.

COMPLAINT FOR DAMAGES　　　　　　9

22. As more fully set forth above, JOWDY intentionally made the following material misrepresentations and omissions of material fact to Plaintiffs and/or their agents:

1. The project would be completed within three years.
2. The Plaintiffs' investment capital was secure.
3. The Plaintiffs would see a return of capital within four years.
4. The Plaintiffs would receive monthly written updates.
5. JOWDY would personally manage the project and be a competent guardian of the Plaintiffs' capital.
6. JOWDY would follow appropriate corporate governance.
7. JOWDY would make his decisions based upon the business judgment rule and not upon nepotism, favoritism, or other decisions which benefitted himself or his friends and family.

23. All of these representations were false, they all were made to the Plaintiffs' detriment, Plaintiffs relied on these statements, and Plaintiffs suffered general, special, and exemplary damages as a result. JOWDY's conduct was willful, wanton, and showed a reckless disregard for the truth warranting punitive damages according to proof.

### THIRD CAUSE OF ACTION

### CONSTRUCTIVE TRUST AND APPOINTMENT OF RECEIVER

(Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in Paragraphs 1 through 23 above.

24. As a result of the conduct described above concerning all defendants and the resulting conversion of Plaintiffs' assets, a constructive trust is required to be imposed on all monies or assets which Defendants have in their possession, custody or control to ensure

COMPLAINT FOR DAMAGES 10

that monies rightfully belonging to plaintiffs are not dissipated.

25. In addition, in light of the theft of funds and commingling of assets, the Court should order that all of Defendants' property and holdings be identified to an independent receiver who can take over and manage the assets pending disposition of this litigation.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

**(Against Defendants JOWDY and DOES 1 to 100)**

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in Paragraphs 1 through 25 above.

26. As a result of the conduct described above and the resulting conversion of Plaintiffs' assets, JOWDY should be ordered to disgorge all ill gotten gains resulting from the above conduct.

## FIFTH CAUSE OF ACTION

## ACCOUNTING

**(Against Defendants JOWDY and DOES 1 to 100)**

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in Paragraphs 1 through 26 above.

27. The Plaintiffs are spread out throughout North America and Europe. They are requesting the Court order an immediate accounting prior to trial in this matter setting forth the expenditures authorized by JOWDY.

WHEREFORE, Plaintiffs demands judgment against Defendants for the following:

**ON THE FIRST AND SECOND CAUSES OF ACTION:**

1. For general damages in the amount of fifteen million dollars ($15,000,000);

2. For punitive damages according to proof;

COMPLAINT FOR DAMAGES                    11

**ON THE THIRD CAUSE OF ACTION:**

3.　For an imposition of a constructive trust and appointment of a receiver;

**ON THE FOURTH CAUSE OF ACTION:**

4.　For a disgorgement of all proceeds given to Defendants by Plaintiffs;

**ON THE FIFTH CAUSE OF ACTION:**

5.　For an accounting of all proceeds invested.

**ON ALL CAUSES OF ACTION:**

6.　For costs of suit

7.　Prejudgment interest;

8.　For any such further relief as this Court may deem just and proper in light of the circumstances.

Dated: June 18, 2009

　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　Law Offices of Ronald Richards & Associates, A.P.C.

　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　RONALD RICHARDS, Esq.
　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES　　　12

BC416081

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE**
Case Number _____

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Aurelio Munoz | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Conrad Aragon | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Mary Thornton House | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Helen I. Bendix | 18 | 308 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Judith C. Chirlin | 19 | 311 | Hon. John P. Shook | 53 | 513 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Jane L. Johnson | 56 | 514 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. James R. Dunn | 26 | 316 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. David L. Minning | 61 | 632 |
| Hon. John A. Kronstadt | 30 | 400 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Mark Mooney | 68 | 617 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Edward A. Ferns | 69 | 621 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Carl J. West* | 311 | CCW |
| Hon. Ann I. Jones | 40 | 414 | Other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

*Class Actions
All class actions are initially assigned to Judge Carl J. West in Department 311 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for pretrial purposes and for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk
                                                                              By _____, Deputy Clerk

LACIV CCH 190 (Rev. 01/09)          **NOTICE OF CASE ASSIGNMENT –**          Page 1 of 2
LASC Approved 05-06                  **UNLIMITED CIVIL CASE**



*from the*
## LOS ANGELES SUPERIOR COURT
### ADR DEPARTMENT

If you have a general jurisdiction case involving one of these subject matter areas:

- commercial
- employment
- medical malpractice
- legal malpractice
- real estate
- trade secrets
- unfair competition
- at judges' discretion

## *Your case may be eligible for the court's pilot Neutral Evaluation (NE) program.*

- **NE can reduce litigation time and costs and promote settlement.**
- NE is an informal process that offers a non-binding evaluation by an experienced neutral lawyer with expertise in the subject matter of the case. After counsel present their claims and defenses, the neutral evaluates the case based on the law and the evidence.
- **NE is voluntary and confidential.**
- The benefits of NE include helping to clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions and, if requested by the parties, assist in settlement.
- **The first three (3) hours of the NE session are free of charge.**

For additional NE information, visit the Court's web site at www.lasuperiorcourt.org/adr

RFV 06/27/07

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate**
    Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May Not Be Appropriate**
    Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate**
    Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May Not Be Appropriate**
    If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate**
    Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May Not Be Appropriate**
    Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 08/08)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 2
LASC Approval 10-03

# LOS ANGELES COUNTY
# DISPUTE RESOLUTION PROGRAMS ACT (DRPA) CONTRACTORS

The following organizations provide mediation services under contract with the Los Angeles County Department of Community & Senior Services. Services are provided to parties in any civil case filed in the Los Angeles County Superior Court. Services are not provided under this program to family, probate, traffic, criminal, appellate, mental health, unlawful detainer/eviction or juvenile court cases.

**Asian-Pacific American Dispute Resolution Center**
**(213) 250-8190**
(Spanish & Asian languages capability)

**California Academy of Mediation Professionals**
**(818) 377-7250**

**Center for Conflict Resolution**
**(818) 380-1840**

**Inland Valleys Justice Center**
**(909) 397-5780**
(Spanish language capability)

**Office of the Los Angeles City Attorney Dispute Resolution Program**
**(213) 485-8324**
(Spanish language capability)

**Los Angeles County Bar Association Dispute Resolution Services**
**toll free number 1-877-4Resolve (737-6583) or (213) 896-6533**
(Spanish language capability)

**Los Angeles County Department of Consumer Affairs**
**(213) 974-0825**
(Spanish language capability)

**The Loyola Law School Center for Conflict Resolution**
**(213) 736-1145**
(Spanish language capability)

**Martin Luther King Legacy Association Dispute Resolution Center**
**(323) 290-4132**
(Spanish language capability)

**City of Norwalk**
**(562) 929-5603**

> DRPA Contractors do not provide legal advice or assistance, including help with responding to summonses. Accessing these services does not negate any responsibility you have to respond to a summons or appear at any set court date. See the reverse side of this sheet for information on the mediation process and obtaining legal advice.

**THIS IS A TWO-SIDED DOCUMENT.**

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

- ☐ Mediation
- ☐ Non-Binding Arbitration
- ☐ Binding Arbitration
- ☐ Early Neutral Evaluation
- ☐ Settlement Conference
- ☐ Other ADR Process (describe): _____

Dated: _____

| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Additional signature(s) on reverse

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 1 of 2