August 18, 2020

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

**Re: <u>Recent witness impact statements</u> (Rizzi)**

Your Honor,

Kenner is not aware of ever speaking with or meeting Mr. Rizzi—a lifelong acquaintance of John Kaiser (identical to someone named Theodore Hughes).

*Case law regarding evidentiary hearings…*
Although, "the district courts have significant latitude in fashioning procedures to resolve sentencing disputes"; *United States v. Sabhnani*, 599 F.3d 215, 258 (2d Cir 2010)—it appears obvious, with the mounting volume of post-trial witness and government reformative admissions—the exculpatory and empirical evidence that exculpates Kenner's integrity <u>*requires*</u> an evidentiary hearing; wholly affecting sentencing for named <u>*and*</u> unnamed people in the superseding indictment (*ECF No. 214*). The Court's "discretion is not limitless: the Due Process Clause requires that the defendant have 'an adequate opportunity to present his position.'" *Id.* at 258 (quoting *United States v. Maurer*, 226 F.3d 151-152 (2d Cir 2000). *See United States v. Simmons*, 544 Fed. Appx. 21 (2d Cir 2015).

The testimony at trial by John Kaiser made it clear that Kaiser—not Kenner—solicited the Eufora investment money from Rizzi for Rizzi's December 2009 investment in Eufora (now represented as $67,000) (*Tr.1058-59*):

> *Q As a result of that -- well, how much did you invest in Eufora yourself?*
>
> *A [John Kaiser]: Well, the 200,000 that was sent, wasn't -- it was sent from me, but the investment was all me. <u>It was three other individuals.</u>*

The investment was "*all me*" (Kaiser referring to himself)—but immediately explains it was actually "*three other individuals*". As the Court is aware—the government alleged in their unsupported forfeiture request that Kaiser was due the $200,000—until Kenner exposed the truth during oral arguments with Kaiser in the Courtroom alongside people he robbed—yet again. It was only at that time—that

1

the government realized another Kaiser lie had led them to other people Kaiser 'took' the money from—claiming it as his own thru documented graft and under oath mis-representations.

- Perhaps—as a typical double-talk by Kaiser to re-write his jaded history fo friends & family thefts—he was unsure how to answer the fact that he—again—had no money in the investment deals, but moreover received the funds from his friends & family and tried to claim them for himself.   This is similar to his *word vomit* when trying to re-explain how after his "*confront[ation]*" testimony of a fabricated 2006 event with Kenner (*Tr.983*)—he forgot that—and then was unable to remember he "*did not trust Kenner*" until after his exculpatory 2009 Nolan arbitration testimony (*Tr.1107-08*)—3 years later?  **Noting**: even after Kaiser's post-arbitration epiphany—he continued to invest with Kenner in various multi-million dollar projects without explanation.  3-4 years after he and Manfredi allegedly "*confronted*" Kenner—it is highly unlikely he *just remembered* 'Kenner…bad'.

Kenner is not mentioned in a single FBI proffer, filed lawsuit, or other email about having 'knowledge of'—or 'involvement in' Kaiser's solicitation related to Rizzi's Eufora investment.   In addition—there is no evidence that Kenner had any communication with the other two people Kaiser testified about, *supra*, regarding Eufora during their December 2009 investments.    It is believed thru review of court records that Ethel Kaiser and Theodore Hughes were the other two Eufora investors in December 2009—whom Kaiser independently solicited—in addition to Kaiser's *contemporaneous* and *independent* solicitation of Nick Privitello.[1]   The 2012 EDNY lawsuit versus Constantine named the four of them as Plaintiffs.   As usual, there is no evidence to the contrary.  None was presented at trial.  None exists today.

In fact—when Rizzi sued Constantine in the EDNY Case 2:11-cv-02692-SJF-GRB)—Constantine signed a declaration in the EDNY and verified (*Ex. A: Document 11-3*):

> [Constantine]: "*During all negotiations prior to the Plaintiffs transmitting their money, I dealt exclusively with John Kaiser.*"

---

[1] **Noting**: Kenner was found ***not guilty*** of the two charges—Counts 5 & 6—related to Privitello's Eufora investment—due to an utter lack of empirical evidence.  The government ignored the exculpatory evidence in their pretrial possession to tie Kenner to well-known and litigated Constantine issues—wholly unrelated to Kenner (in fact—with Kenner assisting the opposition parties at all times).

NY attorney Michael Stolper filed the EDNY 2012 lawsuit versus Constantine.  This is clear in the Central Islip docket (EDNY)—and known at all times to the criminal prosecutors, *here*.

Yet—in an effort to make Kenner complicit for more Constantine activity that the investors—and the government—knew Kenner was not involved (no different than the GSF allegations)—the government mis-represented this lawsuit during their summation (*Tr.5970*—*rebuttal summation*)—again prejudicing Kenner:

> [Komatireddy]: "Mr. Kenner argues that he had nothing to do with Counts Five and Six. He argues that he had nothing to do with the Privitello investment from Eufora. And his argument is, well, if Kenner had some to do with Privitello, Privitello would have sued Kenner in some lawsuit that happened a year later with a different lawyer and a different group of investors."

This was the **same group of investors** who sued Constantine in 2010 in Arizona and with the **same attorney**.   The result was another premeditated prejudice of known falsities.

Notwithstanding—this 2012 NY lawsuit versus Constantine was filed in the same Courthouse as the criminal indictment (Central Islip, NY).  Thus—it is inexcusable to have prejudiced Kenner—remaining 'unfixable' in front of the jury as a result of Komatireddy's rebuttal summation vouching.

> "[t]he improvisatory nature of a rebuttal summation is no license for improper vouching, referencing facts not in the record, or appealing to extraneous 'consequences' of a verdict."   *United States v. Friedman*, 909 F.2d 705, 710 (2d Cir 1990).

The improper bolstering on this issue mirrored far greater malfeasances—such as:
1) Komatireddy's fraud on the Court that John Kaiser's testimony was "*consistent*" with the 3500 FBI notes *(Tr.5992)*: *"And it's just as plausible for Mr. Kaiser's testimony was consistent with those notes. You can't conclude they were inconsistent."* –and
2) Kenner was "*broke*" *(Tr.5982)*: *"Kenner is broke. He is entirely living off of his clients' money. He's entirely living off of his fraud."*—and
3) Kenner stole money from the Hawaii partners to buy his interest in the Cabo resort project *(Tr.5996)*: *"He used it for personal use to get an interest in that resort in Cabo."*—and

3

4) More emphatically, the government claimed: "*Kenner told you*" he stole the money and used it for personal gain (*never for personal gain…nor did Kenner ever testify to that or stealing anything*) *(Tr.5990)*:*"Mr. Kenner told you that he used that money to get his piece in the Mexico investment with Ken Jowdy. You know exactly what that's for. That's in evidence."*

- **None of that was in evidence…**
- **None of that was true—but…**
- **100% of it was premeditated and prejudicial.**

In December 2010—the record (supported by all empirical evidence) is actually clear that Kenner was not in communication with Constantine at that specific time—*because*—at that exact time—Kenner had confronted Constantine about his use of GSF funds and the lack of funding available to pursue the Mexico litigation.  Michael Peca testified about this exact issue to this Court—further distancing Kenner from any Global Settlement Fund control or participation (*Tr.539-40: ironically during Constantine's attorney's cross-examination of Peca, vindicating Kenner*):

> *Q. At the time of the meeting, and thereafter, were you able to form an opinion as to who was in charge of the Global Settlement Fund around the time you first became aware of it and agreed to participate?*
>
> *A [Michael Peca]: Well, around the time from inception, our belief is it was going to the attorney Ron Richards account, that he would kind of oversee given it was a legal fund. But I do remember a conversation that I had with Phil regarding litigation in Mexico and he said he couldn't do it because he didn't have money and **I remember calling Tommy to ask him why we couldn't use money from the global settlement for Phil and the answer was Mexico was too much of a crap shot and unpredictable legally. So there's no money to go towards the Mexican part of it**.*
>
> *Q. So from your perspective, who would you say was the one that was primarily responsible, if more than one, answer that as well.*
>
> *A [Michael Peca]: **From my understanding Tommy was in charge of Global Settlement Fund**.*
>
> *Q. And what was Phil Kenner's participation in that, as you recall?*
>
> *A [Michael Peca]: **He didn't seem to have one**.*

4

*No uncharged conduct…*

During the July 2, 2019 hearing, the Court denied any *Fatico* hearing, while verifying that it was only considering charged conduct in its guideline calculations—while regurgitating the government's previous representations (*Tr.33*):

> *[Judge Bianco]: "I just want to make clear that I think I've said this before, but it is in the court's view and its consistent with the government's letter to the court, you know, two years ago that we're not – that the government is not seeking to hold the defendants accountable for any uncharged frauds.  The scope of sentencing relates only to the frauds that were proved at trial…"*

There cannot be an assumed loss based on the prosecutorial themes of concealment in any element of the alleged case to Rizzi.  He was not named as a victim—perhaps because the government knew it was another solo act of business between a 3rd party and Constantine that Kenner had no involvement in.   If not concurred by the Court, Kenner respectfully requests an evidentiary hearing to present this and the remainder of exculpatory evidence to support this pattern of facts.

To recapitulate—Kenner requests an evidentiary hearing in the interest of justice for the incrementally alleged victims; **specifically, any person not named in the superseding indictment**.   Kenner possesses—from the government's Rule 16 and forfeiture productions—a myriad of corroborating cross-exculpatory empirical evidence in Kenner's defense, exposing no possible 'concealment' at any time—or involvement with this individual.

Sincerely,

Phil Kenner, Pro Se litigant

Submitted August 18, 2020