**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Kenneth A. Jowdy, an individual; and DOES 1 through 100, inclusive.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 18 2009

John A. Clarke, Executive Officer
By _____
AEI LaFLEUR-CLAYTON

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Tyson Nash, Greg deVriesTurner Stevenson, Mattias Norstrom, Vladimir Tsyplakov, Bryan Berard, Steve Rucchin, Brian Campbell, Darryl Sydor, Dimitri Khristich, Sergei Gonchar, Michael Peca, Jere Lehtinen (cont.)

*Baja Ventures member signed on for DCSL litigation*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court-Central District<br>111 N. Hill St.<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**BC416082** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ronald Richards & Associates, A.P.C. Ronald Richards, Esq. #176246
P.O. Box 11480, Beverly Hills, CA 90213, Office: 310-556-1001 Fax: 310-277-3325

| DATE:<br>*(Fecha)* | Clerk, by | AMBER LaFLEUR-CLAYTON | , Deputy |
|---|---|---|---|
| JOHN A. CLARKE, CLERK | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons. (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

JUN 18 2009

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)　　　☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)　☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. / www.USCourtForms.com |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER. |
|---|---|
| Nash et. al. vs. Jowdy, et. al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

1. Jozef Stumpel

as individuals

Baja Ventures member signed on for DCSL litigation

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Page 1 of 1

American LegalNet, Inc.
www.FormsWorkflow.com

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000545

1   Ronald Richards, Esq. (SBN 176246)
    **THE LAW OFFICES OF**
2   **RONALD RICHARDS & ASSOCIATES, A.P.C.**
    P. O. Box 11480
3   Beverly Hills, California 90213
    Telephone (310) 556-1001
4   Facsimile (310) 277-3325

5   Attorneys for Plaintiffs

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF LOS ANGELES- CENTRAL DISTRICT

10                                           BC 416082

11  Tyson Nash, Greg deVries,                 CASE NO.
    Turner Stevenson, Mattias Norstrom,
12  Vladimir Tsyplakov, Bryan Berard, Steve
    Rucchin, Brian Campbell, Darryl Sydor,    **COMPLAINT FOR DAMAGES**
13  Dimitri Khristich, Sergei Gonchar, Michael
    Peca, Jere Lehtinen, Jozef Stumpel
14                                            **(1) BREACH OF FIDUCIARY DUTY**
    as individuals;                           **(2) FRAUD**
15                                            **(3) CONSTRUCTIVE TRUST**
         Plaintiff,                           **(4) UNJUST ENRICHMENT**
16                                            **(5) ACCOUNTING**

17       vs.

18                                            **DEMAND FOR JURY TRIAL**
    Kenneth A. Jowdy, an individual; and DOES
19  1 through 100, inclusive,

20       Defendants.

21       Plaintiffs complain and allege as follows:

22  1.   Plaintiffs Greg deVries, Tyson Nash, Mattias Norstrom, Vladimir Tsyplakov, Brian

23       Campbell,  Bryan Berard, Steve Rucchin, Darryl Sydor, Dimitri Khristich, Sergei

24       Gonchar, Michael Peca, Jere Lehtinen, Turner Stevenson, Jozef Stumpel, ("Plaintiffs")

25       are, and at all times mentioned in this complaint, individuals resided throughout the

26       United States and Canada. They all transacted business and were solicited by the

27

28       defendant who operated his real estate investment business in Los Angeles County in the

                                            1

1     State of California.

2   2.   Plaintiffs are informed and believe, and thereon allege, Defendant KENNETH A.

3        JOWDY ("Defendant JOWDY") is, and at all times mentioned in this complaint was, an

4        individual operating investment businesses in Los Angeles County in the State of

5        California. Specifically, JOWDY solicited professional hockey players and baseball

6        players to invest in land deals and then failed to execute even the most fundamental

7        elements of a business or development plan. JOWDY used the Southern California

8        region as one of his hubs of business operations.

9

10  3.   Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as

11       DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious

12       names. Plaintiffs will amend this Complaint to allege their true names and capacities

13       when the same have been ascertained. Plaintiffs are informed and believe, and on that

14       basis, allege that DOES 1 through 100, inclusive, are responsible in some manner for the

15       damages suffered by Plaintiffs alleged herein.

16

17  4.   Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein,

18       each defendant herein conspired together, aided and/or abetted, operated and acted as the

19       agent partner, joint venturer, associate and/or representatives of each other (i.e. the other

20       defendants), and in doing the acts herein alleged, acted within the course and scope of

21       their authority as agents and/or representative, and with the knowledge, approval,

22       permission and consent of the other defendants.

23

24  5.   JOWDY operated businesses at the following addresses in the Southern California area:

25       420 21st Street, Manhattan Beach, CA 90266; 5541 La Jolla Mesa Drive, La Jolla, CA

26       92037; 3333 East Spring Street, Long Beach, CA 90806.

27

28  6.   The Plaintiffs, all professional hockey players who were players in good standing in the

COMPLAINT FOR DAMAGES          2

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000547

1    National Hockey League and invested various amounts with JOWDY, controlled entities

2    that held ownership in U.S. LLCs, which held ownership in another U.S. LLC, which

3    held ownership in a Mexican corporation, which owns beach front property in Cabo San

4

5    Lucas, Mexico.

6   7.   Specifically, two of the Plaintiffs (Jozef Stumpel and Jere Lehtinen) invested in Baja

7    Ventures 2006, LLC, which owns 38% of Diamante Cabo San Lucas, LLC, which owns

8    99% of the Mexican corporation Diamante Cabo San Lucas S.De. R.L.De. C.V. The

9    remaining twelve (12) Plaintiffs invested in CSL Properties 2006, LLC, which owns 8%

10    of Diamante Cabo San Lucas, LLC, which owns 99% of the Mexican corporation

11

12    Diamante Cabo San Lucas S.De. R.L.De. C.V.) The remaining 1% of Diamante Cabo

13    San Lucas S.De. R.L.De. C.V. is owned by JOWDY personally. The Plaintiffs invested

14    as follows:

15        A.    $250,000 Dimitri Khristich 12.5% of the LLC.

16        B.    $250,000 Vladimir Tsyplakov 12.5% of the LLC.

17        C.    $200,000 Bryan Berard 10% of the LLC.

18

19        D.    $200,000 Michael Peca 10% of the LLC.

20        E.    $100,000 Tyson Nash 5% of the LLC.

21        F.    $200,000 Turner Stevenson 10% of the LLC.

22        G.    $100,000 Ethan Moreau 5% of the LLC.[1]

23        H.    $100,000 Steve Rucchin 5% of the LLC.

24        I.    $100,000 Greg deVries 5% of the LLC.

25        J.    $100,000 Brian Campbell 5% of the LLC.

26

27

28    [1] Not a named plaintiff.

COMPLAINT FOR DAMAGES

1    K.    $100,000 Sergei Gonchar 5% of the LLC

2    L.    $100,000 Owen Nolan 5% of the LLC.[2]

3    M.    $100,000 Mattias Norstrom 5% of the LLC.

4    N.    $100,000 Darryl Sydor 5% of the LLC.    ⟶ Baja Ventures
5                                                    2006, LLC

6    O.    Jozef Stumpel 5% of the LLC.

7    P.    Jere Lehtinen 5% of the LLC.

8  8.   To manage these investments, JOWDY was paid a four hundred eighty thousand dollar

9    yearly salary ($480,000.00), plus all travel and entertainment expenses to be the steward

10   of the Plaintiffs' capital. Plaintiffs allege JOWDY completely mismanaged the project

11   from day one. He acted as the sole developer as well as the sole manager of the

12   investment entity, but over a three (3) year period he did not produce even the most

13   fundamental elements of a master plan development such as engineering drawings or

14   preliminary utility infrastructure. Nevertheless, he and his employees, whom consisted

15   primarily of childhood friends with no development experience whatsoever, spent over

16   thirty-five million dollars ($35,000,000.00) over a three (3) year period. One example is

17   when JOWDY hired a childhood friend in 2008, who was a professional chef and was

18   hired by JOWDY as the Food and Beverage Director, when there was not even a vertical

19   structure on the property other than the construction trailer. JOWDY spent an average of

20   2-3 days per month on property over the last three years.  There are further examples of

21   mismanagement, breach of fiduciary duty, nepotism, and fraud on the investors.

22  9.   Bill Najam (a non-practicing attorney) who is JOWDY'S Brother in Law, was also paid a

23   five hundred thousand dollar ($500,000.00) yearly salary plus all travel and

---

[2] Not a named plaintiff.

entertainment expenses. His role in the company and his related business activities have yet to be identified. Mr. Najam spent no more than a couple of months (collectively) on property over the last three years. Mr. Najam was in charge of the corporate governance and while under JOWDY's direction and control, received over eight million dollars ($8,000,000.00) from a LLC in Hawaii. Mr. Najam failed to properly account for those funds and has placed the JOWDY investors in a vulnerable and compromised position.

10. Ken Ayers (the sole Project Construction Manager), was paid a four hundred thousand dollar ($400,000.00) yearly salary plus all travel and entertainment expenses, yet spent a grand total of less than twenty (20) days on property (collectively) over a three (3) year period. At one point late last year, he asked a fellow employee how to dial Mexico from his office in CA. He was also employed full-time by the Bridges in Rancho Santa Fe, CA during his entire tenure at Diamante Cabo San Lucas and continues to be employed by the Bridges and most likely by Diamante and Legacy Properties (JOWDY's Parent Company) simultaneously.

11. Brian MacNamee, who was Roger Clemens' friend, trainer, and who was also accused of supplying Clemens and others with steroids (which are readily available over the counter in Mexico), was hired by JOWDY and employed by Diamante Cabo San Lucas as a favor to Clemens. MacNamee was hired as the Fitness Center Manager before there was even a dirt road accessing the property. He currently owns a fifty thousand dollar ($50,000.00) Hummer which has been allowed to remain parked on the property for more than a year per JOWDY'S specific instructions.

12. JOWDY frequently spent hundreds of thousands of dollars from the company's accounts, as well as used company resources such as private jets which were purchased with investors' money. (some of who are plaintiffs in this case) to entertain JOWDY's close

COMPLAINT FOR DAMAGES          5
CONFIDENTIAL TREATMENT REQUESTED          PK_SEC_000550

1    personal friends; Roger Clemens, Reggie Jackson, Joe Morgan and Pete Rose (to name a

2    few), under the guise that these individuals would eventually purchase real estate in the

3    development. However, Clemens and even his wife were vocal and adamant that they

4    would never purchase property in the development. When asked about their interest in

5    the project, other professional athlete/friends of JOWDY's, who JOWDY entertained in a

6    similar extravagant fashion stated openly that they were not buyers either. Nevertheless,

7    JOWDY continued to provide, and these individuals all continued to accept, gratuitous

8    extravagant private air travel, five star hotel accommodations, luxury home rentals,

9    unlimited food and beverage expenses, golf tournaments and lavish parties, several times

10   per year over a three year period, all orchestrated by JOWDY and paid for using the

11   Plaintiffs' investment capital.

12

13

14   13.  JOWDY was solely responsible for inviting these individuals and was also responsible

15   for arranging for various female porn stars, escorts, strippers, party girls and other

16   women to attend these functions, again all paid for by the company. Clemens in

17   particular, was a regular participant in these activities and Adrian Moore (one of the

18   female attendees who was close to Clemens) was later hired by JOWDY, and employed

19   by Diamante, as JOWDY's personal assistant as a personal favor to Clemens.

20

21   14.  JOWDY and childhood friend Mark Thalman , who was represented as being a pilot and

22   a self proclaimed aviation expert, purchased three (3) Airplanes using the Plaintiffs'

23   business manager Philip A. Kenner's and various National Hockey League Players'

24   (Kenner's clients) money through an entity named Diamante Air, LLC. JOWDY and

25   Thalman misappropriated and/or lost over two million dollars ($2,000,000.00) of

26   investors' money through this entity and through the misuse of the airplanes. JOWDY

27   and Thalman have since defaulted on the two loans for the airplanes, which were

28

COMPLAINT FOR DAMAGES    6
CONFIDENTIAL TREATMENT REQUESTED                    PK_SEC_000551

1    guaranteed by Phil Kenner and Plaintiff Sergei Gonchar. The airplanes have since been

2    repossessed by 1st Source Bank. Until recently, when Kenner and Gonchar reached a

3    settlement at their considerable expense, Kenner and Gonchar were defending a lawsuit

4    filed by the bank for their personal guarantee as a result of JOWDY and Thalman's

5

6    negligent management of this entity. JOWDY and Thalman were the managing members

7    of this entity and Kenner and his clients including some of the Plaintiffs are filing a

8    lawsuit against JOWDY and Thalman regarding this entity. As a result of Kenner making

9    JOWDY and Thalman aware of the imminent filing of a complaint, JOWDY has

10   produced a document with only his signature on it, and now suggests that Kenner is also

11

12   a Managing Member of this entity and is therefore also responsible for its demise.

13   15.   JOWDY constantly used the airplanes to fly himself and various friend/employees, as

14   well as several of the aforementioned professional athletes and female companions, to

15   Cabo San Lucas Mexico, El Rosario Mexico, Palm Springs, CA, La Jolla, CA, New York

16   City, NY and Las Vegas, NV (several times per year for approximately three years)

17   under the guise of company business.

18

19   16.   JOWDY is the sole managing member of the Diamante Cabo San Lucas project. JOWDY

20   has contributed zero capital of his own into the project, yet he was successful in

21   manipulating a forty percent (40%) interest in the project. He borrowed one hundred

22   percent (100%) of the capital invested into the project on his behalf personally, directly

23   and indirectly from Kenner and various Hockey Players who are Kenner's clients.and

24   who are now suing JOWDY for non-payment in multiple U.S. jurisdictions. These loans

25   are in excess of eight million dollars ($8,000,000.00). Criminal fraud charges have also

26   been brought against JOWDY and an arrest warrant has been issued for JOWDY in

27   Mexico as a result. Furthermore, JOWDY is facing several labor disputes in Mexico

28

COMPLAINT FOR DAMAGES                          7

1    which have been filed by former employees of the Diamante project who have placed

2    labor liens on the property in excess of two million five hundred thousand dollars

3    ($2,500,000.00).

4    17.   JOWDY has defaulted on various vendor, sub-contractor, supplier and joint venture

5          partner agreements, including but not limited to an agreement between the company

6          owned by Phil Mickelson, which was contracted to design one of the golf courses on the

7          Diamante Cabo San Lucas property. JOWDY entered into an agreement then used the

8          Mickelson name to promote and lend credibility to the project for the purposes of luring

9          in investors and buyers of property within the development. JOWDY has breached the

10         agreement with Mickelson's company, and as a result of JOWDY's actions, Diamante

11         Cabo San Lucas currently owes a substantial amount of money to Mickelson's company.

12    18.  JOWDY falsified his financial statements as part of his loan application to Lehman and

13         acquired the loan from then Lehman employee; Masood Bhatti. Bhatti was responsible

14         for submitting JOWDY's loan application to Lehman, performing all of the necessary

15         due diligence and facilitating JOWDY's loan with Lehman for the Diamante Cabo San

16         Lucas project. Bhatti has since become a close personal friend of JOWDY's and is now

17         working closely with JOWDY to raise additional capital for the project. It is further

18         alleged that Masood Bhatti actually has a secret equity interest in the Cabo project which

19         we believe he was given by JOWDY, as a result of Bhatti approving the questionable

20         loan to JOWDY for Diamante. Bhatti's interest in the project is through an entity named

21         Somerset Trust which is owned by his god-daughter. The source of the funds for the

22         capital contribution reflected in the shareholder's agreement validating Somerset's

23         interest in the project has been untraceable to date. While Lehman held the note and

24         Bhatti managed the relationship between Diamante and Lehman. JOWDY allowed the

COMPLAINT FOR DAMAGES                          8

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000553

1  loan to go into default. When the plaintiffs' appointed agent met with Bhatti, in an effort
2  to remedy the problems and protect their investment, Bhatti single-handedly interfered
3  and hindered said effort.

4  
5  19.  Due to the Lehman meltdown, a European bank by the name of Danske Bank has
6  acquired the Diamante loan. As a result of JOWDY's misleading representations to the
7  bank, with respect to the plaintiffs and their agents, the bank has isolated itself to dealing
8  with only JOWDY and has refused to communicate with the Plaintiffs or their agents
9  about significant developments of Diamante, in spite of the Plaintiffs' LLCs being co-
10  guarantors for the loan and the Plaintiffs being the only true equity investors. The
11  Plaintiffs and their agents have also been restricted by JOWDY from physically
12  accessing the property which they own.
13  

14                               **FIRST CAUSE OF ACTION**

15                               **BREACH OF FIDUCIARY DUTY**

16                        **(Against Defendants JOWDY and DOES 1 to 100)**

17  Plaintiffs incorporate and reallege herein paragraphs 1 through 19 above, as if set forth in
18  full.
19  
20  20.  JOWDY owed Plaintiffs fiduciary duties resulting from the position of trust and owed
21  them a duty to make true and accurate statements to them. JOWDY breached that duty by
22  providing misleading, untrue, and inaccurate accounting of the proceeds received, the
23  direction of the development, the time period in which he would complete the project.
24  When in reality, JOWDY had no intention of performing any of his obligations as the
25  sole manager of the project. He lulled the Plaintiffs into not demanding their money back
26  and into believing he was effectively managing the project. It was not until he testified
27  under oath in an arbitration entitled Nolan vs. Kenner, Case No. 76 148 Y 00223 08
28  

COMPLAINT FOR DAMAGES                      9

DEAR on May 27, 2009, did Plaintiffs fully became aware through their agent the extent of JOWDY's ethical and legal lapses as to their capital. They discovered that their capital accounts were ZERO. They discovered the project was going nowhere. They discovered that JOWDY had spent eight million dollars ($8,000,000.00) of borrowed money from a Delaware LLC, named Little Isle IV, without any accounting by Bill Najam who testified in said arbitration that he was the custodian of records. They discovered that after repeated requests, they would not be provided copies of the books and records to which they were entitled. The only way to view the books and records was to travel to Connecticut even though JOWDY operated out of California when he sold these investments. They discovered that JOWDY had commingled funds in non-corporate accounts, had no intention of allowing competent and capable professionals to intervene, and had run out of money. At no time did they receive warning that JOWDY had spent all of their capital on exorbitant salaries, private parties, junkets, and worthless promotional events. JOWDY instead took all of that corporate opportunity and used it to promote other projects in the United States that were not funded by the Plaintiffs.

## SECOND CAUSE OF ACTION

### FRAUD

### (Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in paragraphs 1 through 20 above.

21. JOWDY owed Plaintiffs fiduciary duties resulting from the position of trust and owed them a duty to make true and accurate statements to them.

22. As more fully set forth above, JOWDY intentionally made the following material misrepresentations and omissions of material fact to Plaintiffs and/or their agents:

COMPLAINT FOR DAMAGES

1.   The project would be completed within three years.

2.   The Plaintiffs' investment capital was secure.

3.   The Plaintiffs would see a return of capital within four years.

4.   The Plaintiffs would receive monthly written updates.

5.   JOWDY would personally manage the project and be a competent guardian of the Plaintiffs' capital.

6.   JOWDY would follow appropriate corporate governance.

7.   JOWDY would make his decisions based upon the business judgment rule and not upon nepotism, favoritism, or other decisions which benefitted himself or his friends and family.

23.   All of these representations were false, they all were made to the Plaintiffs' detriment, Plaintiffs' relied on these statements, and Plaintiffs suffered general, special, and exemplary damages as a result. JOWDY's conduct was willful, wanton, and showed a reckless disregard for the truth warranting punitive damages according to proof.

### THIRD CAUSE OF ACTION

### CONSTRUCTIVE TRUST AND APPOINTMENT OF RECEIVER

#### (Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporate by this reference as though set forth in full at this point, each of the allegations contained in Paragraphs 1 through 23 above.

24.   As a result of the conduct described above concerning all defendants and the resulting conversion of Plaintiff's assets, a constructive trust is required to be imposed on all monies or assets which Defendants have in their possession, custody or control to ensure that monies rightfully belonging to Plaintiffs are not dissipated.

25.   In addition, in light of the theft of funds and commingling of assets, the Court should

COMPLAINT FOR DAMAGES         11

CONFIDENTIAL TREATMENT REQUESTED          PK_SEC_000556

order that all of Defendants' property and holdings be identified to an independent

receiver who can take over and manage the assets pending disposition of this litigation.

### FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporate by this reference as though set forth in full at this point,

each of the allegations contained in Paragraphs 1 through 25 above.

26.    As a result of the conduct described above and the resulting conversion of Plaintiff's

assets, JOWDY should be ordered to disgorge all ill gotten gains resulting from the

above conduct.

### FIFTH CAUSE OF ACTION

### ACCOUNTING

### (Against Defendants JOWDY and DOES 1 to 100)

Plaintiffs hereby incorporates by this reference as though set forth in full at this point, each of

the allegations contained in Paragraphs 1 through 26 above.---

27.    The Plaintiffs are spread out throughout North America and Europe. They are requesting

the Court order an immediate accounting prior to trial in this matter setting forth the

expenditures authorized by JOWDY.

**WHEREFORE,** Plaintiffs demands judgment against Defendants for the following:

**ON THE FIRST AND SECOND CAUSES OF ACTION:**

1.    For general damages in the amount of twenty-five million dollars ($25,000,000);

2.    For punitive damages according to proof;

**ON THE THIRD CAUSE OF ACTION:**

3.    For an imposition of a constructive trust and appointment of a receiver;

**CONFIDENTIAL TREATMENT REQUESTED**                    **PK_SEC_000557**

**ON THE FOURTH CAUSE OF ACTION:**

4.    For a disgorgement of all proceeds given to Defendants by Plaintiffs;

**ON THE FIFTH CAUSE OF ACTION:**

5.    For an accounting of all proceeds invested.

**ON ALL CAUSES OF ACTION:**

6.    For costs of suit

7.    Prejudgment interest;

8.    For any such further relief as this Court may deem just and proper in light of the circumstances.

Dated: June 18, 2009

Respectfully submitted,

Law Offices of Ronald Richards & Associates, A.P.C.

By: _____

RONALD RICHARDS, Esq.
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000558

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

**BC 416082**

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Aurelio Munoz | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Conrad Aragon | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Mary Thornton House | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Helen I. Bendix | 18 | 308 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Judith C. Chirlin | 19 | 311 | Hon. John P. Shook | 53 | 513 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Jane L. Johnson | 56 | 514 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. David L. Minning | 61 | 632 | |
| Hon. John A. Kronstadt | 30 | 400 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Edward A. Ferns | 69 | 621 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | Hon. Carl J. West* | 311 | CCW | |
| Hon. Ann I. Jones | 40 | 414 | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

*Class Actions

All class actions are initially assigned to Judge Carl J. West in Department 311 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for pretrial purposes and for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev. 01/09)
LASC Approved 06-08

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 1 of 2

CONFIDENTIAL TREATMENT REQUESTED

PK_SEC_000559