August 20, 2020

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

**Re: <u>Recent witness impact statements</u> (Campbell)**

Your Honor,

Brian Campbell invested in the Hawaii project and contributed to Constantine's GSF. There is nothing in the record—or in possession of the government—that would purport Campbell is a victim of any transaction that he did not willingly participate in with full unfettered knowledge at all times—and personal sign off.   As such—Kenner is requesting an evidentiary hearing with the Court if the government continues to present Campbell as a victim, *here*, including his contributions to Hawaii and Constantine's GSF.

The government lacks representations at trial that the Hawaii project's alleged scheme reached any investor other than those named in the superseding indictment (*ECF No. 214*); notwithstanding the transactions alleged by the government as unauthorized were *authorized* by the corporate By Laws (*Ex. AA*)—and cannot be subject to a passive-investor's recollection over a decade-and-a-half after the *authorized* events and individual signoffs (a surreal prosecutorial standard, if allowed).

*No uncharged conduct…*
During the July 2, 2019 hearing, the Court denied any *Fatico* hearing, while verifying that it was only considering charged conduct in its guideline calculations—while regurgitating the government's previous representations (*Tr.33*):
> *[Judge Bianco]: "I just want to make clear that I think I've said this before, but it is in the court's view and its consistent with the government's letter to the court, you know, two years ago that we're not – <u>that the government is not seeking to hold the defendants accountable for any uncharged frauds.</u>   The scope of sentencing relates only to the frauds that were proved at trial…"*

The February 2020 ruling by the Court (re: forfeiture and loss) and the follow-up 'affidavits of loss' by un-named victims, *supra*, raises more issues that can only be

explained by CTE[1] symptoms (a.k.a. memory loss) or undue influence by the prosecution members (almost 6-years post-trial).   The government has attempted to re-convince investors who were 'in the know' about their personal transactions that their recollections of the truths were wrong—despite now being represented as Jowdy-frauds by the government in their July 2020 submission.   In contrast—they have doubled-down on the falsity that '*Kenner stole all of their Hawaii and Mexico investment-loan money*' (amongst other previously documented mis-representations) to whomever they could contact 5+ years after trial, requesting statements from non-victims (exculpatory evidence, *infra*).

- This filing complements similar mis-representations and reformative representations by Juneau, Nolan, and Kaiser (addressed in Kenner's June 16, 2020 submission to the Court).

To address the issues—Kenner requests an evidentiary hearing; wholly effecting sentencing, forfeiture, and restitution calculations.

*Case law regarding evidentiary hearings…*
Although, "the district courts have significant latitude in fashioning procedures to resolve sentencing disputes"; *United States v. Sabhnani*, 599 F.3d 215, 258 (2d Cir 2010)—it appears obvious, with the mounting volume of post-trial witness and government reformative admissions—the exculpatory and empirical evidence that exculpates Kenner's integrity <u>requires</u> an evidentiary hearing; wholly affecting sentencing for named <u>and</u> unnamed people in the superseding indictment (ECF No. 214).   The Court's "discretion is not limitless: the Due Process Clause requires that the defendant have 'an adequate opportunity to present his position.'" *Id.* at 258 (quoting *United States v. Maurer*, 226 F.3d 151-152 (2d Cir 2000).  *See United States v. Simmons*, 544 Fed. Appx. 21 (2d Cir 2015).

The Court requires that "the standard of proof at sentencing is a preponderance of the evidence" to accept the government's position of loss (related to actual victims

---

[1] **Chronic Traumatic Encephalopathy** ("CTE") -- The primary symptoms of **CTE** have been described by neurological experts (including Dr. Ann McKee) at Boston University's Neurological Center as:
> *CTE, a catastrophic disease first associated with boxers long ago, results when a toxic protein, Tau, accumulates in the brain, kills brain cells, and leads to symptoms such as <u>cognitive dysfunction</u>, **memory loss**, sleeplessness, depression, diminished impulse control, episodes of anger, and <u>dementia</u>, among others. Until recently, CTE could only be confirmed through an autopsy. **Tau proteins are released whenever a concussion occurs**.*

in the first instance, sentencing enhancements, and restitution under MVRA); *United States v. Gaskin*, 364 F.3d 438, 464 (2d Cir 2004) (citations omitted).

- The inclusion of un-named victims from the superseding indictment—post-trial only—requires judicial review with nothing but exculpatory evidence in the government's possession; **none opposing** (i.e. Norstrom, Rem Murray, et.al. — under separate submissions).
    - An unsubstantiated "victim impact statement" does not constitute evidence to satisfy the 'preponderance standard'. The "right to confront" clause of one's victims guarantees that.

**Noting**: Campbell, deVries, Norstrom, Gonchar, Murray and several other investors were removed as victims two weeks before trial by the government and FBI's choice and cannot be assumed to have been confronted as victims (with Kenner's trial counsel leaving a multitude of exculpatory evidence at the defense table for Murray and Gonchar—*unused*—since there was no need to impeach as one would an alleged victim[2]); *See Hughey*.[3]

"A sentencing conducted on the basis of unreliable or false information violates the due process clause just as much as a sentencing conducted without a sufficient hearing."; *United States v. Fell*, No. 5:01-cr-12-01, 2018 U.S. Dist. LEXIS 229652 (D. Vt. Mar. 16, 2018). The U.S.S.G. acknowledges that "[a]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues." U.S. Sentencing Guidelines Manual § 6A1.3 cmt. (2014). The decision to hold or not hold a *Fatico*[4] hearing turns largely on whether the contested information is relevant to the trial court's potential sentence; *See Id.* § 6A1.3 cmt. (2014). If the sentencing court does not plan to take the contested information into account, it need not grant a *Fatico* hearing to resolve the factual dispute. Here, it is critical.

---

[2] This "non-victim" position was trial counsel's attempted sedation to Kenner as to why FBI notes, signed documents, personal legal filings, etcetera—all exculpating any Kenner concealment—were <u>not</u> presented during testimony of Murray and Gonchar.

[3] Since the Supreme Court decided *Hughey* almost 30 years ago, prosecutorial decisions to frame indictments with a "view to success at trial rather than to a victim's interest in full compensation" are made with a full understanding of the potential consequences; See *Hughey v. United States*, 495 U.S. 411, 421 (1990). In concert, the Tenth Circuit opined— "**There are tradeoffs in such decisions**"; *United States v. Mendenhall*, Case No. 19-7006 (10th Circuit December 23, 2019).

[4] *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir 1979), *cert. denied*, 444 U.S. 1073 (1980).

*Every transaction was signed off for authorization as expected*...
- *Case law (knowledge of signed documents and their respective contents)...*

A party to an agreement is "charged with knowledge of the contents of the [] contract and [is] bound by the clear and unambiguous terms of the same." *Johnson v. Hardware Mut. Cas. Co*., 108 Vt. 269, 187 A. 788, 794 (Vt. 1936) (alterations in original).  **In a statement stunningly apposite today—as it was nearly a century and a half ago—the Supreme Court opined**:

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L. Ed. 203 (1875) (*Hetchkop v. Woodlawn at Grassmere, Inc*., 116 F.3d 28, 34 (2d Cir 1997) (holding persons have a "basic responsibility…to review a document before signing it."). See also *Horvath v. Banco Comercial Portugues, S.A. and Millennium BCP Bank, N.A.*, 461 Fed. Appx. 61; 2012 U.S. App. LEXIS 3012

- In *Horvath*, **the investor argued that the terms and conditions were <u>written in Portuguese</u>, which he did not understand, but the court of appeals found that the investor was charged with knowing and understanding the contents of the documents that he signed**.

   The Court opined "==If the signer can read the instrument, not to have read it is gross negligence; if he cannot read it, not to procure it to be read is equally negligent; in either case the writing binds him.  Parties are bound by documents expressly incorporated by reference into agreements to which they manifest their assent.=="


*GSF...*
Campbell contributed to Constantine's GSF.   Kenner never had control of the GSF funds or the decisions (*Ex. EE at 15*).

Campbell <u>*signed*</u>  (electronically) his "*Acknowledged and Approved. Thanks Phil. Talk when you get back.  Brian Campbell*" on July 21, 2009 once his funds were verified as received by Constantine.   The 'use of funds' by Constantine had zero influence or input from Kenner as Michael Peca <u>*verified thru testimony*</u> at trial much to Peca and Kenner's chagrin (*Tr.539-540*):
>  Q. And what was Phil Kenner's participation in that, as you recall?
>  A [Michael Peca]: <u>He didn't seem to have one.</u>

*Hawaii…*
Campbell invested $100,000 in the project.  He failed to mention this in his 'affidavit of loss'.   Campbell received a $42,553 payment (of his $100,000 investment) after signing off on the 2006 joint venture agreement (*Ex. HH at 12*).   The language of the JV disclosure specifies in paragraph 1: "*I am asking for your acknowledgement of, and consent to, these transactions, as they will change your investment…*".   Campbell offered no opposition—*signed, printed his name, and faxed it to Kenner from his brother's fax machine; "Darryl Campbell…519-936-xxxx"*.

Campbell was a recipient of the various "*update*" letters from the Hawaii attorneys (*Ex. V*)—which verified the Jowdy loans and confirmed they: (1) received the loan calculation update sheet as of February 2009, and (2) received a copy of the Jowdy-loan agreement—as *attachments*.

Campbell participated as a plaintiff in the Arizona litigation versus Jowdy and <u>signed</u>, <u>initialed</u>, and <u>dated</u> his attorney's disclosure letter (*Ex. N at 17-24*).   The Arizona complaint versus Jowdy specifically identified (*Id. at 17; page 1 of the disclosure*):

> "*the gist of the lawsuit is to recover certain monies loaned to Mr. Jowdy from Mr. Kenner, Little Isle 4 and Ula Makika LLC.   Mr. Kenner estimates the total amount of monies loaned to Mr. Jowdy which have not been repaid to be approximately $5,000,000.   This is the estimated principle only, exclusive of accrued interest.   In summary, Mr. Jowdy denies that the monies were loans but rather characterizes them as investments.*"

Campbell participated in the 2009 California litigation versus Jowdy to recover, in part, the Hawaii-loans (*Ex. M*).   Campbell was listed as a $100,000 investor in the litigation versus Jowdy (*Id. at 5; like Norstrom and deVries at 5-6*).

The DCSL complaint versus Jowdy specifically identified (*Id. at 7*):
> "*Mr. Najam was in charge of the corporate governance and while under Jowdy's direction and control, received over eight million dollars ($8,000,000) from a LLC in Hawaii.  Mr. Najam failed to properly account for those funds and has placed the Jowdy investors in a vulnerable and compromised position.*"

There is not a single element of the various investments or contributions related to Campbell, *here*, that contrarian evidence could assume he was not 100% aware of what occurred at all times—while *independently* represented by counsel.

*Eufora…*
Although Campbell was not a 2008 (Constantine) or 2008-09 (Gaarn) purchaser of private stock in Eufora, Campbell participated in the full investigation by Giuliani's team of Constantine, the 2008-09 transactions, and the unfettered full history of Eufora.   Campbell <u>signed</u> the July 16, 2010, attorney Stolper, disclosure letter of full transparency (*Ex. R at 9* [total listing of 29 interested parties]—and *at 13* [signed independently by Campbell]) to protect his prior Eufora investment.

Campbell filed a ProSe adverse proceeding versus Constantine in 2013 to confirm that even his prior transactions were being guaranteed by Constantine as transferred—despite Constantine's bankruptcy (mis)representations (*Ex. BB*).

Campbell failed to recall in his 'affidavit of loss' his participation in Eufora or the Hawaii project; **hi-lighting the CTE issues abound that also require a specific hearing**.

*Conclusion…*
The government removed Brian Campbell on the eve of trial from their superseding indictment *for a reason; see Hughey*.   There cannot be an assumed loss based on the prosecutorial themes of concealment in any element of the alleged case to Campbell—with only contrarian exculpatory evidence available.   If not concurred by the Court, Kenner respectfully requests an evidentiary hearing to present this and the remainder of exculpatory evidence.

To recapitulate—Kenner requests an evidentiary hearing in the interest of justice for the incrementally alleged victims; **specifically, any person not named in the superseding indictment**.   Kenner possesses—from the government's Rule 16 and forfeiture productions—a myriad of corroborating cross-exculpatory empirical evidence in Kenner's defense, exposing no possible 'concealment' at any time.  The incremental submissions also **hi-light the CTE issues that debunk the government's entire case.**

**These CTE issues, alone, require a specific hearing—as previously requested by Kenner.**

Sincerely, Phil Kenner, Pro Se litigant
Submitted August 20, 2020