THE LAW OFFICES OF
## RONALD RICHARDS & ASSOCIATES
A Professional Corporation
Tel: (310) 556-1001
Fax: (310) 277-3325

**\*Admitted in the following Courts:\***
All Fed. and State Cts. in California
2nd, 9th & 11th Circuit, C.O.A's,
ED of Michigan, D of Colorado, W.D. of Tenn.,
The United States Supreme Court (U.S.S.C.)

**Mailing Address:**
P.O. Box 11480
Beverly Hills, CA 90213

**Email:** RON@RONALDRICHARDS.COM
**Web:** www.RONALDRICHARDS.COM

**European Office:**
Oliver Löwell
Rechtsanwälte
Frankfurt, Germany

May 3, 2012

**SENT VIA FEDERAL EXPRESS:**

David E. Sermos, Investigator
Office of the Chief Trial Counsel
The State Bar of California
1149 S. Hill Street
Los Angeles, California 90015

    Re: Complainants: Jay McKee, Michael & Kristin Peca & Mattias Norstrom
        Case Nos.: 12-O-11089, 12-O-11120 and 12-O-11170

Dear Mr. Sermos,

This letter is in response to your investigation letter of March 26, 2012, relating to the above-referenced complainants and case numbers. I am deeply appreciative of your willingness to provide me with a generous extension of time within which to provide this response.

In considering the complaints in this matter and this response to those complaints, it is important to understand that the complainants have mistakenly (either intentionally or otherwise) combined separate and distinct matters into one transaction. This response and the supporting documents will clearly demonstrate the complainants' error.

The complaints by Ms. Peca and by Messrs. Peca, McKee and Norstrom represent an unfortunate attempt by them to use the State Bar complaint process as a vehicle to seek the return of funds that were properly transmitted to my former client, Tommy Constantine, on behalf of the complainants. At the time the funds were wired to my client trust account, none of the complainants were my clients. The funds that were transmitted to my client trust account were continuing capital contributions to various limited partnership agreements in which each of the complainants had an interest, as well as capital to fund various projects between the complainants, Philip Kenner and Mr. Constantine. I never met any of the complainants, never spoke to them on the telephone and never had their e-mail addresses. The complainants are seeking to impose a duty or obligation on me where none existed.

DS-00000277

Mr. Peca and Mr. Norstrom paid attorney fees to my firm for new legal services that I provided to them well after the wired funds had been disbursed. (See Exhibit's N & O.) Neither Mr. Peca nor Mr. Norstrom mentioned anything about the wired funds until January 2012. The third complainant, Mr. McKee, had a series of communications with me that continued for years and he never referenced or suggested that I had done anything inappropriate with the funds that he wired to my client trust account in May 2009. Instead, he made numerous inquiries about other legal issues without mentioning or indicating that he had any concerns about my handling of the monies that he wired to my client trust account previously. (See Exhibit M.)

Prior to May 2009, I represented Tommy Constantine ("Constantine") in a civil action in federal court in Los Angeles. I was successful in getting the action dismissed. Because of that success, Constantine asked me to continue serving as his attorney. I later represented Philip Kenner ("Kenner") in an arbitration in Arizona. However, in February 2010, Constantine and Kenner had a dispute over various business investments and I withdrew from my representation of either of them in light of the conflict of interest that had developed.

Kenner was the business manager for the complainants. Kenner and his clients had joint investments with Constantine at the time, consisting of membership interests in various limited liability companies. I was not involved in these investments nor did I represent or incorporate any of the entities, which were incorporated in Arizona. These limited liability corporations (LLCs), or the vendors affiliated with the LLCs, were the entities that received all of the funds that were wired into my client trust account, as explained more fully below. One of these investments included a golf course and resort in Cabo San Lucas, which was operated by Kenneth A. Jowdy ("Jowdy").

In May 2009, after meeting with Constantine and Kenner, each of the complainants wired funds to my client trust account at their (i.e., Constantine's and Kenner's) direction. The wire transfers were not based upon any meeting or communication between me and the complainants. I was informed by Constantine to expect the wire transfers so that my office could track the complainants' respective capital contributions. Once the funds were received into my client trust account, Constantine was going to direct me to wire the funds, at his discretion, to the various accounts that would benefit himself, the complainants and Kenner. It was apparent to me that each of the individuals involved in these transactions (including the complainants, Constantine, Kenner) all understood that Constantine was handling the transactions for their mutual benefit.

I was not acting as an attorney or an advisor to any of the complainants and did not provide the complainants with any investment advice regarding their LLC contributions. The complainants alone decided to make a business decision and to provide additional capital to keep the various investments alive, to engage in a public relations campaign against Jowdy and to make contributions to various other jointly-held investments. After receiving the various wire transfers from the complainants, pursuant to instructions from my client (Constantine), I immediately forwarded the full amount of the wire transfers to him. As previously indicated, I had no attorney-client relationship with any of the complainants at this time.

On May 24, 2009, I received representation letters from the three complainants, who were being represented by an attorney in Idaho in connection with the arbitration that I had handled for Kenner in Arizona, as well as the litigation that arose from their companies in that location. (See Exhibit P.) Copies of the authorization letters are attached in Exhibit P. In an e-mail from Constantine to me and to three attorneys, the complainants are identified as clients of Kenner and investors in a company called Eufora. (See Exhibit P.) This e-mail was consistent with my understanding.

In May 2009, each of the complainants authorized Constantine, in his unbridled discretion, to further capitalize their various investments. These funds were to be used by Constantine for a variety of capital requirements.

DS-00000278

The initial authorizations that Constantine received from each of the complainants are attached in Exhibit L. The areas covered by the authorizations included legal fees, public relations agency fees, other protective advances and settlement costs. In addition, I was told that Constantine represented to the complainants that a transfer of membership agreements for acquisition of additional interests in Eufora, LLC, as well as new LLC and operating agreements reflecting the ownership interest in the Avalon Airpark Real Estate Project, the Falcon 10 aircraft, and the two Palms Place condominium units, would be provided. I was never a party or advisor to any of those transactions and I never received any funds or compensation from any of those transactions.

At no time did any of the complainants ask me, nor did I provide any unsolicited assessment, regarding their decision to give Constantine discretion to manage a global settlement fund. That was an agreement that the complainants made with Constantine, not with me. I would have provided documentation regarding money they were wiring to Constantine through my client trust account if I had been requested to do so. I was to forward the funds upon Constantine's instructions to be used at his discretion. At that time, it was apparent to me that the complainants had agreed to deploy their capital in the various investments in which they already had an ownership interest. I was subsequently provided with the complainant's acknowledgement and approval of Constantine's use of the funds.

Attached is a profit and loss statement provided by Constantine showing the breakdown and allocation of the complainants' funds. (Exhibit Q.) Constantine also provided his books and records showing that the deposits were credited the same day the funds were wired by the complainants to my client trust account. (Exhibit Q.) Constantine credited the funds immediately upon their receipt into my client trust account because, at that point, the funds were under Constantine's control and were no longer under the control of the complainants. As previously indicated, I did not have any relationship whatsoever with the complainants when they wired the funds and my only obligation was to wire those funds as instructed by my client (Constantine). Attached are copies of Constantine's journal entries showing the three deposits on his books and records. (Exhibit Q.) Constantine concluded that it would be more efficient to give instructions to me on where the funds should be wired rather than to have me wire the funds to him (Constantine) and then wire them again to the intended recipient. Moreover, Constantine felt that this procedure would avoid having to wait for the several days that it sometimes took for banks to post and credit wired funds. I simply followed Constantine's instructions with respect to the wiring of the funds.

In June 2009, with the approval of Kenner and his clients (i.e., the complainants), Constantine decided to hire a number of attorneys for various legal actions. Constantine retained me at this time to file an action against Jowdy. The nineteen (19) plaintiffs in this action included complainants McKee, Peca and Norstrom. Because the plaintiffs to the proposed lawsuit were individuals rather than corporate entities, I sent conflict waivers to the complainants (and others) because I was also representing Constantine and Kenner at the time in other actions. Each of complainants executed and returned a copy of the waiver, as requested. Copies of these waivers are attached as Exhibit K. It was Constantine and Kenner who retained my services for this lawsuit, not the complainants. I obtained separate authorizations to file the lawsuit for the complainants. (See Exhibit J.)

The funds that had previously been wired to my client trust account were not my legal fees in the Jowdy case. Only Constantine had the discretion to pay my legal fees. As is common practice, the complainants relied on their business manager (Kenner) and Constantine to retain me. At no time did the complainants ever suggest, either orally or in writing, that the previously-wired funds were for me to monitor or that they were to be used exclusively for the payment of legal fees. The amounts wired by the complainants were far in excess of what I charged for one civil action. It was obvious to me at all times that the funds were capital calls to keep the complainants' existing business operations afloat and there was no suggestion whatsoever by anyone that I was to retain those funds to litigate the Jowdy matter.

3

The civil action that I initiated against Jowdy was subsequently dismissed without prejudice in February 2010, when it became apparent after two full days of Jowdy's deposition and an all-day mediation session with Jowdy, that he had no reachable assets in the United States.

In August 2010, complainant McKee asked me if he still had funds in my client trust account. I told McKee that I had disbursed all of the funds pursuant to Constantine's instructions. There is no dispute that I tendered all of the funds to my client (Constantine) pursuant to an arrangement that the complainants made directly with Constantine. Neither Constantine nor the complainants used an attorney with respect to their business transaction. I had nothing to do with the complainants' choice to provide Constantine the additional capital they wired to him through the use of my client trust account.

On September 28, 2010, complainant McKee asked me for an update on the civil action against Jowdy. I told Mr. McKee that a new action could be filed against him at anyplace and at anytime because the original action was dismissed without prejudice. I told Mr. McKee that I had not received instructions to file any new action. Complainant McKee never followed up with any further questions or mentioned any monies he thought should be in my client trust account. A copy of the e-mail string is attached as Exhibit M.

I provided evidence to the complainants that the funds were disbursed to various attorneys and entities at Constantine's direction. There is no factual dispute from anyone that Constantine received all the funds that were wired to him through my client trust account pursuant to the arrangements Constantine had made with the complainants.

The contention that the complainants never authorized the release of the funds to Constantine is false and is contradicted by the subsequent conduct of the complainants.

On September 28, 2010, after I responded to the update request by complainant McKee, informing him that no one had authorized me to file a new civil action against Jowdy, Mr. McKee responded by saying "thanks for the update, much appreciated." He made no reference to the wired funds. A copy of this e-mail string is attached as Exhibit M.

On November 12, 2010, complainant Norstrom sought my advice regarding a collateral grand jury matter. I corresponded back and forth with Mr. Norstrom and there was no mention of his funds. A copy of those e-mails are attached Exhibit O.

On January 14, 2011, I obtained a judgment against Jowdy in Nevada for close to one million dollars and entered that judgment in Los Angeles for over one million dollars. On January 24, 2011, complainant McKee asked for my assistance in getting a K-1 from certain property in Mexico in which he had invested and, additionally, asked for contact information for Jowdy or his attorneys. I told Mr. McKee that I would obtain and provide him with Jowdy's e-mail address. There was no reference by Mr. McKee to any funds in my client trust account. (See Exhibit M)

On March 24, 2011, complainant Michael Peca retained me to provide additional legal services to him in the Southern District of New York. I flew to New York, met with complainant Peca for eight hours and then represented him for a full day the following day before the grand jury in federal court. As consideration for these legal services, complainant Peca wired $8,000 to me from his wife Kristin's account. A copy of the wire receipt is attached as Exhibit I.

4

On May 10, 2011, complainant Norstrom wrote to me about retaining my law firm to file a SLAPP motion regarding a complaint filed against him by Jowdy. After Mr. Norstrom and I talked about the matter on May 10, 2011, Norstrom retained me to file the SLAPP motion and provided me with his American Express card for the payment of my legal fees. I immediately gave *ex parte* notice of the SLAPP motion on May 12, 2012 and Jowdy thereafter dismissed the complaint against Norstrom. The complaint was never re-filed and the statute of limitations has now expired. A copy of Mr. Norstrom's e-mail paying for and requesting additional legal services is attached as Exhibit O. At no time did Mr. Norstrom claim or insinuate that I was holding funds belonging to him in my client trust account.

In January 2012, I started to receive what appeared to be obvious form letters from the complainants, asking me for an accounting of funds sent to my office prior to having any attorney-client relationship. Apparently, the complainants had a disagreement with Constantine regarding the success or failure of the various investments that they jointly owned with Constantine. Mr. Kenner also informed me that the complainants are trying to blame others for some of the accounting issues they are having with Constantine.

I responded to and spoke with two of the three complainants. I was confused about the complainants' position because it was completely inconsistent with the facts and with what had transpired. As previously indicated, I actually obtained a million dollar judgment against Jowdy in a subsequent proceeding for one of the plaintiffs in the original lawsuit. A copy of the abstracted judgment is attached as Exhibit W. It is still outstanding as of the date of this letter.

If I had been hired to act as an escrow or to monitor a settlement between Constantine and the complainants, I would have done so. The complainants did not condition the transmittal of the wired funds in any manner nor did they reference any obligations that they believed I had with respect to those funds in any e-mail or communication with me. My role regarding these funds was simply to forward them to my client (Constantine) pursuant to his request. At the time the funds were wired to my client trust account, I did not owe any duty to the complainants and their subsequent conflict waiver clearly outlined that they waived any conflict of interest or fiduciary duty concerns relating to Kenner and Constantine. Absent the waiver and the written authorization to file the action, I would have declined the representation.

Attached is a declaration prepared and executed by Philip Kenner, who was the complainants' business manager. (See Exhibit V.) Mr. Kenner's declaration fully supports and reinforces my position in this matter. While you should carefully consider Mr. Kenner's declaration in its entirety, I direct your specific attention to paragraphs 9 through 12 and 18 of Mr. Kenner's declaration, which discusses the mutual knowledge and agreement of the complainants, Kenner and Constantine regarding the intended use of the funds that the complainants wired to my client trust account.

I hope that this letter and the attached documents adequately respond to the issues raised by your inquiry letter. Based upon this information, I respectfully request that this matter be closed forthwith. If you have any questions, I would be happy to respond to them.

DS-00000281

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

LAW OFFICES OF
RONALD RICHARDS & ASSOCIATES, APC

RONALD RICHARDS, Esq.

6

DS-00000282