SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| Standard Advisors, LLC and Philip A. Kenner, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs | ) Case No. BC396805<br>) |
| Kristine Myrick, an individual and DOES 1-25, inclusive, | )<br>)<br>) |
| Defendant. | )<br>) |
| Kristine Myrick, an individual, | )<br>) |
| Cross-Complainant, | )<br>) |
| vs | )<br>) |
| Standard Advisors, LLC and Philip A. Kenner, an individual and DOES 1-10, inclusive, | )<br>)<br>)<br>) |
| Cross-Defendants. | )<br>) |

DEPOSITION OF AARON MASCARELLA

Scottsdale, Arizona
March 9, 2009
10:05 a.m

Reported By:   Joanne Williams, RPR, CSR
               Arizona Certified Reporter No. 50253

25  kind of in transitioning at this time.  Diana -- her

22

1   only -- Owen was the principal owner of all the accounts.
2   And there was a -- It started off with an investment
3   management account and then a line of credit secured by
4   that investment account.  And then they -- Phil then
5   brought them to us for financing a lot that they were
6   purchasing in San Jose.  And that lot was the first that
7   we had any business with Diana.
8        Q.    Okay.
9        A.    Since then, in the last month or so, Owen has
10  requested that Diana be added to the investment
11  management account.  And subsequently now we're going to
12  change the line of credit to reflect her as an owner.
13       Q.    Okay.  Now, with regard to the line of credit
14  account, who was authorized to make transfers out of that
15  line of credit?
16       A.    Owen and Phil.
17       Q.    Was there any limitation on Mr. Kenner's
18  ability to transfer money out of the account?
19       A.    No.  It was -- Yes.  I'm sorry.  It was --
20  The proceeds were only to go to Little Isle Ventures,
21  Little Isle IV, I think, if I remember correctly.  He

22  signed -- Owen Nolan signed a bank authorization or an
23  authorization letter to the bank authorizing Phil Kenner
24  to transfer money from the line of credit into the Little
25  Isle IV account.

23

1   Q.   Okay.  And were statements from the Nolans'
2   account during the period from 2003 through -- or 2004
3   through 2007, were all those statements sent to Mr. Nolan
4   or were they sent to Mr. Kenner?
5   A.   I'm sure we started off sending them to --
6        MS. MEACHAM:  Lacks foundation.
7        THE WITNESS:  We would have sent them to
8   Phil for sure because he was making the payments.  And
9   he -- What's the right word I'm looking for?  He directed
10  us to send those statements directly to Phil.  And we
11  would have sent payments -- or statements to Owen Nolan
12  also based on the address that we had on file.  And being
13  a hockey player, he would move around quite a bit.  I
14  wasn't sure of his schedule.  So we would send statements
15  to the best address that we had.  And assuming that they
16  didn't come back, we assumed that they were -- it was
17  reasonable to expect they were getting there, to Owen
18  personally.
19  BY MR. MEEKS:

20    Q.    During the time period from -- From the time
21  you opened the Nolan account until the end of 2006, did
22  you have conversations with Mr. Nolan concerning the line
23  of credit?
24    A.    Conversations -- I spoke to Owen
25  infrequently.  I've only had brief conversations with

24

1  him.  And my guess is that it was only relating to the
2  payments, that the payments were being made or not being
3  made.  There was a few times when the payments were slow,
4  that we sent out default letters, which probably -- You
5  know, I can't remember every conversation I had with him
6  but I assume he might have responded to one of those
7  default letters.
8           MR. KING:  Only if you know.
9           THE WITNESS:  Okay.
10  BY MR. MEEKS:
11    Q.    Who was the person you primarily dealt with
12  with regard to the line of credit for the Nolans?
13    A.    Phil Kenner.
14    Q.    What did Mr. Kenner tell you, if anything,
15  regarding the Nolans' line of credit?
16    A.    What's the question?