UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-                                        **UNITED STATES' LOCAL**
                                                          **RULE 56.1 STATEMENT**
                                                          13-607 (S-2)(JFB)

PHILLIP A. KENNER
    also known as
      "Philip A. Kenner" and

TOMMY C. CONSTANTINE,

              Defendants
----------------------------------------------------------x

       Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, the UNITED STATES OF AMERICA, by its attorney, SETH D. DuCHARME, Acting United States Attorney for the Eastern District of New York, Madeline O'Connor and Diane C. Leonardo, Assistant United States Attorneys, of counsel, submits the following:

    A.  **The Relevant Criminal Proceedings**

       1.       On July 9, 2015, defendant Phillip A. Kenner, also known as "Philip A. Kenner" ("Kenner"), was convicted after a jury trial of the offenses charged in Counts One through Four, Seven and Nine of the above-captioned Superseding Indictment, charging violations of 18 U.S.C. §§ 1343, 1349, and 1956(h). CR-13-607(S-2), Docket Entry ("DE") 324. On July 9, 2015, defendant Tommy C. Constantine ("Constantine") was convicted after a jury trial of the offenses charged in Counts One through Six and Count 9 of the above-captioned Superseding Indictment, charging violations of 18 U.S.C. §§ 1343, 1349, and 1956(h). *Id.*

1

2.      The Indictment filed on October 29, 2013 included forfeiture allegations, which provided notice that, upon the conviction of Kenner or Constantine of any of the wire fraud and conspiracy to commit wire fraud offenses charged in the Indictment, the government would seek forfeiture in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 § U.S.C. 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of such offenses or a conspiracy to commit such offenses.  DE 1 at ¶ 52.  The Indictment also provided notice that, upon the conviction of Kenner or Constantine of the money laundering conspiracy offense charged in the Indictment, the government would seek forfeiture in accordance with 18 U.S.C. § 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property. *Id.* at ¶ 55.

3.      In addition, the forfeiture allegations sought the forfeiture of specific assets and properties, as well as the imposition of a forfeiture money judgment.  *Id.* at ¶¶ 53, 56.

4.      The first Superseding Indictment, filed on February 26, 2015, contained the same forfeiture allegations.  DE 172 at ¶¶ 31, 32, 34, 35.

5.      The second Superseding Indictment, filed on April 22, 2015, contained the same forfeiture allegations.  DE 214 at ¶¶ 31, 32, 34, 35.

6.      On April 22, 2015, the government filed a Bill of Particulars, which provided notice that the government would be seeking forfeiture of the following additional properties: a) all right, title and interest in Baja Ventures 2006, LLC, and all proceeds traceable thereto ("Baja Ventures"); and b) all right, title and interest in Diamante Properties, LLC, and all proceeds traceable thereto ("Diamante Properties").  DE 208.

2

7. On August 20, 2015, the government filed another Bill of Particulars, which again provided notice that the government would be seeking forfeiture of Baja Ventures and Diamante Properties, and also provided notice that the government would be seeking forfeiture of the following additional properties: a) all right, title and interest, directly or indirectly, in KAJ Holdings, LLC, and all proceeds traceable thereto ("KAJ Holdings"); b) all right, title and interest, directly or indirectly, in CSL Properties 2006, LLC, and all proceeds traceable thereto ("CSL Properties"); c) all right, title and interest, directly or indirectly, in Somerset, LLC, and all proceeds traceable thereto ("Somerset"); d) all right, title and interest, directly or indirectly, in the real property and premises known as Diamante Cabo San Lucas located at Boulevard Diamante s/n, Los Cangrejos, Caho San Lucas, B.C.S. Mexico 23473, and all proceeds traceable thereto (the "DCSL Resort"); and e) all right, title and interest, directly or indirectly, in real property and premises located at, Mosquito Rojo, Block 17 Lot 30, Cerrada Del Mar No. 148, Fracc. El Pedregal, Caba San Lucas, B.C.S. Mexico 23453 in the name of Phillip Kenner, and all proceeds traceable thereto. DE 328.

8. Following the convictions of Kenner and Constantine (collectively, the "Defendants"), the government moved for the forfeiture of specific assets and the entry of forfeiture money judgments against the Defendants. DE 401.

9. On March 10, 2020 the Court determined that, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 982(b), and 28 U.S.C. § 2461(c), the Defendants must forfeit all right, title and interest in, *inter alia*, the following: a) the DCSL Resort; b) Baja Ventures 2006, excluding all liabilities; c) KAJ Holdings, excluding all liabilities; d) CSL Properties, excluding all liabilities; e) Diamante Properties, excluding all liabilities; f) Somerset, excluding all liabilities; g) the real property and premises located at 95-4928 Hawaii Belt Road, Naalehu,

Hawaii, parcel number 3-9-5-014-046, and all proceeds traceable thereto; and h) one 1976 Falcon 10 airplane, Aircraft Serial Number: 69, Engine Type: Garrett TFE731-2, Serial Numbers P73202, P73222 and FAA Registration Mark N530TC, and all proceeds traceable thereto, as property, real or personal, constituting or derived from proceeds obtained directly or indirectly as result of the Defendants' violations of 18 U.S.C. §§ 1343 and 1349; property, real or personal, involved in the Defendants' violation of 18 U.S.C. § 1956(h), or any property traceable to such property; and/or substitute assets, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1). *See* DE 819, 825, 826.

10. The Court also entered forfeiture money judgments against each defendant. *Id.*

**B. Danske's Petition**

11. On June 20, 2020, Danske filed a Verified Petition of Danske Bank A/S London Branch to Adjudicate Interest in Property Pursuant to 21 U.S.C. § 853(n) (the "Petition"). *See* Declaration of George Kostolampros in Support of Interested Party Danske Bank A/S London Branch's Motion for Summary Judgment, dated June 19, 2020 ("Kostolampros Decl."), Exhibit 3.

12. The Petition asserts that Danske has an interest in the DCSL Resort, Baja Ventures, Diamante Properties, CSL Properties, and KAJ Holdings. *Id.* at ¶ 1.

13. Danske first claims a $125 million loan from Lehman Brothers Holdings Inc. ("Lehman") to the DCSL Resort (the "Initial Loan"). *Id.* at pp. 4-7.

14. According to Danske, at the time Danske acquired the Initial Loan from Lehman "[i]n early 2009, the Borrower owed Lehman $107,538,327.83 in principal and $49,132,479 in unpaid accrued interest." *Id.* at p. 8.

4

15. Danske also alleges it made subsequent loans to the DCSL Resort (the "Additional Loans"). *Id.* at pp. 9-12.

16. Danske's total claim of $197.1 million consists of the combined total of the Initial Loan and Additional Loans, and the associated interest, unspecified miscellaneous fees and expenses to which Danske claims it is entitled. *Id.* at p. 3.

C. **Documents Submitted by Danske**

17. Danske produced an unauthenticated[1] copy of a loan agreement (the "2006 Loan Agreement"), which Lehman Brothers ("Lehman") purportedly entered into with a limited liability corporation known as Diamante Cabo San Lucas S. De.R.L. De C.V. ("Diamante"), on or about March 10, 2006. *See* Declaration of George Kostolampros, dated June 19, 2020, Exhibit 4; DE 850-4 at p. 2.

18. The "Borrower Parties" are described in the unauthenticated copy of the 2006 Loan Agreement as being: Kenneth A. Jowdy ("Jowdy"), as the Guarantor; Diamante Member (*i.e.*, Diamante Cabo San Lucas, LLC); Baja Ventures; Diamante Properties; CSL Properties; and KAJ Holdings. *Id.* at p. 8.

19. The unauthenticated copy of the 2006 Loan Agreement between Lehman and Diamante describes, in Spanish, the property to be developed. *Id.* at p. 67. There is no certified English translation of the property description. *Id.*

20. According to the unauthenticated copy of the 2006 Loan Agreement, the Borrower was required to produce construction documents, including, but not limited to, construction

---

[1] As discussed in the government's memorandum of law in support of summary judgment, most of the documents submitted by Danske in support of its motion for summary judgment are not authenticated and are not admissible. *See* Fed. R. Evid. 803, 901.

contracts, financial statements, permits, plans and specifications, and a construction schedule, prior to the first distribution of the loan. *Id.* at pp. 26-27.

21. According to the unauthenticated copy of the 2006 Loan Agreement, the Borrower was also required to produce certain documents, including, but not limited to, an A1A form of cost certification executed by the General Contractor, invoices, contracts, paid receipts or proof of payment, and copies of all construction contracts for each disbursement. *Id.* at p. 30.

22. An unauthenticated copy of a trust agreement proffered by Danske is written in Spanish and does not contain a certified English translation. *See* Kostolampros Decl., Exhibit 12, DE851-2.

23. An unauthenticated copy of registration of a 2006 Trust Agreement with the Public Registry proffered by Danske is written in Spanish and does not contain a certified English translation. *See* Kostolampros Decl., Exhibit 13, DE851-4.

24. An unauthenticated copy of a 2006 Trust Agreement Notary Plus Public Registration filing proffered by Danske is written in Spanish and does not contain a certified English translation. *See* Kostolampros Decl., Exhibit 14, DE851-5.

25. An unauthenticated copy of a Master Repurchase Agreement ("MRA") between the Cayman Islands branch of Danske and Lehman Brothers International, proffered by Danske, does not contain any reference to a loan to Diamante or the Borrower. *See* Kostolampros Decl., Exhibit 26, DE 852-6.

26. The unauthenticated copy of the MRA contains definitions for the "purchase date," "purchase price," and "repurchase price" for the purchase of securities. *Id.* at pp. 3-4.

27. The unauthenticated copy of the MRA expressly provides that "a written confirmation of each Transaction" would be entered into by Lehman and Danske, which would

6

"set forth (i) the Purchase Date, (ii) the Purchase Price, (iii) the Repurchase Date . . . ., (iv) the Pricing Rate or Repurchase Price applicable to the Transaction, and (v) any additional terms or conditions of the Transaction not inconsistent with [the] Agreement." *Id.* at p. 4.

28. An unauthenticated copy of a 2005 Committed Repurchase Agreement between Danske and Lehman, proffered by Danske, does not contain any reference to a loan to Diamante or the Borrower. *See* Kostolampros Decl., Exhibit 27, DE852-7.

29. An unauthenticated copy of a Tri-Party Custody agreement, dated April 21, 2006, between Danske, Lehman and JPMorgan Chase (the "Tri-Party Custody Agreement"), proffered by Danske, is not executed. *See* Kostolampros Decl., Exhibit 30, DE852-10.

30. The unauthenticated copy of the Tri-Party Custody Agreement defined a "Grade A Asset" as "Cash." *Id.* at p. 7.

31. The unauthenticated copy of the Tri-Party Custody Agreement defines "Mortgage Files" as "Mortgage Loans and all documentation related thereto . . . which shall be held . . . by a Sub-Custodian." *Id.* at pp. 7-8.

32. The unauthenticated copy of the Tri-Party Custody Agreement explicitly references a "Seller's Repurchase Transaction Data File" that would "contain[], among other things, for each Repurchase Transaction: (i) the Purchase Date and Purchase Price; (ii) the Repurchase Date; (iii) the identity of the Buyer; and (iv) instructions to Master Custodian …." *Id.* at p. 15.

33. An unauthenticated copy of a trust receipt proffered by Danske does not identify the loan to Diamante by name or the borrower by name. *See* Kostolampros Decl., Exhibit 32.

34. An unauthenticated copy of a 2009 Amended and Restated Loan Agreement proffered by Danske is signed by David Daniels as a representative of Danske Bank. *See* Kostolampros Decl., Exhibit 40, DE 853-10 at p. 69.

35. The unauthenticated copy of the 2009 Amended and Restated Loan Agreement defines the "Kenner Parties" as Baja Ventures 2006, LLC and CSL Properties 2006, LLC. *Id.* at p. 14.

36. In the unauthenticated copy of the 2009 Amended and Restated Loan Agreement, Jowdy represents that he believes "there is a possibility that the Kenner Parties could be joined into the litigation described in Exhibit 3.1(b)." *Id.* at p. 20.

37. The litigation referenced in Exhibit 3.1(b) of the unauthenticated copy of the 2009 Amended and Restated Loan Agreement is described as *Little Isle IV, LLC v. Kenneth A. Jowdy*, CV-09-142 (Dist. Ct. Az.). *Id.* at p. 90.

38. An unauthenticated copy of a Second Amended and Restated Loan Agreement, proffered by Danske, defines "Investor Parties" as Baja Ventures 2006, LLC and CSL Properties 2006, LLC. *See* Kostolampros Decl., Exhibit 51, DE 855-1 at p. 20.

39. In the unauthenticated copy of the Second Amended and Restated Loan Agreement, Jowdy represents that he believes "there is a possibility that the Investor Parties could be joined into the litigation described in Exhibit 3.1(b)." *Id.* at p.32.

40. Exhibit 3.1(b) is not attached to the unauthenticated copy of the Second Amended and Restated Loan Agreement. *Id.*

41. The unauthenticated copy of the Second Amended and Restated Loan Agreement is signed by David Daniels and Peter Hughes, as representatives of Danske Bank. *Id.* at p. 62.

**D. The Relevant Lehman Bankruptcy Proceedings**

42. Danske filed a proof of claim in the Lehman bankruptcy. *See* 08-13555 (Bank. S.D.N.Y.) at Claim Number 19487.

43. A value was assigned to the Initial Loan in the Lehman bankruptcy proceedings. *See* Declaration of Madeline O'Connor, dated September 9, 2020 ("O'Connor Decl.") at Exhibit GX-2 and GX-3.

44. In the Lehman bankruptcy proceedings, Danske "unconditionally and irrevocably" sold, transferred and assigned" its $580 million deficiency judgment to Goldman Sachs "for value received." *See* O'Connor Decl. at Exhibit GX-4.

Dated: Central Islip, New York
September 9, 2020

                                Respectfully submitted,

                                SETH D. DuCHARME
                                Acting United States Attorney


                      By:    /s/Madeline O'Connor
                                Madeline O'Connor
                                Diane C. Leonardo
                                Assistant United States Attorneys