UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -against-

PHILIP A. KENNER
  also known as
  "Phillip A. Kenner" and
TOMMY CONSTANTINE,

              Defendants.

**UNITED STATES' RESPONSE  TO DANSKE BANK A/S LONDON BRANCH'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

13-CR-607 (S-2)(JFB)

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the

Southern and Eastern Districts of New York ("Local Rule 56.1"), the United States of America (the

"United States" or the "government"), by its attorney, SETH D. DuCHARME, Acting United States

Attorney for the Eastern District of New York, Madeline O'Connor and Diane C. Leonardo, Assistant

United States Attorneys, of counsel, submits the following in response to Danske Bank A/S London

Branch's ("Danske") Revised Statement Pursuant to Local Rule 56.1, dated June 30, 2020:

<u>**GENERAL OBJECTIONS**</u>

Danske repeatedly fails to cite to facts that would be admissible in evidence at the trial of this

matter, as required by Rules 56(c) and (e) of the Federal Rules of Civil Procedure ("Rule 56") and

Local Civil Rule 56.1 to support certain of its statements of uncontroverted material facts; thus,

Danske's inadmissible statements and reliance on unauthenticated documents should be rejected as

insufficient to establish the absence of a genuine issue of material fact.  To the extent that Danske's

statements may be offered as evidence in support of its case-in-chief, the statements should be rejected

1

as inadmissible, because they consist of hearsay, unauthenticated documents, unsupported allegations, speculation, or legal conclusions, rather than facts, as required by Rules 56(c) and (e), Local Civil Rule 56.1 and Federal Rules of Evidence 803 and 901.

1.     Danske is a London, UK based branch of Danske Bank A/S. Declaration of George Kostolampros ("Kostolampros Decl."), Ex. 1 (Financial Conduct Authority Webpage).

**GOVERNMENT'S RESPONSE:**

This statement is not material to the Court's determination of the claims asserted in Danske's Verified Petition to Adjudicate Property pursuant to 21 U.S.C. 853 (n), dated May 6 2020 (the "Petition").

2.     On March 16, 2020, the Court entered a Preliminary Order of Forfeiture (the "Preliminary Order"). Kostolampros Decl., Ex. 2 (Dkt. Nos. 825, 826, March 16, 2020 Preliminary Order of Forfeiture). In its Preliminary Order, the Court ordered the forfeiture of (1) Diamante Cabo San Lucas, Cabo San Lucas, Mexico at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico (the "Resort Property"), and (2) shares in Baja Ventures 2006, LLC, Diamante Properties, LLC, CSL Properties 2006, LLC, and KAJ Holdings, LLC (collectively, the shares in these entities are the "Equity Interests"). *Id.* at Dkt. No. 825 ¶ A (1)-(4), (6).

**GOVERNMENT'S RESPONSE:**

The government does not dispute that the above properties were ordered forfeited in two separate Preliminary Orders of Forfeiture.  *See* 13-CR-607 (S-2), Docket Entry ("DE") 825 and 826. However, in addition to the above described specific assets to be forfeited, the Court also ordered the forfeiture of additional specific assets and the entry of forfeiture money judgments against Defendants Phillip Kenner ("Kenner") and Tommy Constantine ("Constantine").  The government respectfully

refers the Court to the Preliminary Orders of Forfeiture for the complete and accurate contents. *See* 13-CR-607 (S-2), Docket Entry ("DE") 825 and 826.

> 3.   On May 6, 2020, Danske filed its Petition seeking adjudication of its (1) senior secured lien in the Resort Property, and (2) senior secured interests in in the Equity Interests. Kostolampros Decl., Ex. 3 (Dkt. No. 836, Danske Ancillary Hearing Petition).

**GOVERNMENT'S RESPONSE:**

The government does not dispute that the Petition was filed.  However, Danske's Petition was filed prematurely and prior to publication of notice of the forfeiture.  *See* Transcript of Proceeding, dated June 10, 2020.  The date of the filing of the Petition is not material to the Court's determination of the claims asserted in the Petition.

> 4.   In its Petition, Danske requests that the Court grant it relief consisting of amending the Court's initial orders of forfeiture, to: "(a) recognize Danske's first priority lien on the Resort Property and perfected senior security interests in the Equity Interests, (b) recognize the terms of the Third Amended and Restated Loan Agreement (as amended), including Danske's entitlement to all default interest amounts accumulated and to foreclose on the Resort Property in addition to all other contractual entitlements specified therein, and (c) to such other and further relief, either at law or in equity, to which Danske is entitled." *Id.* at ¶ 45.

**GOVERNMENT'S RESPONSE:**

The above statement is Danske's request for relief which is not material to the Court's determination of the validity of Danske's Petition.

> 5.   In March 2006, Lehman Brothers Holdings Inc. ("Lehman") extended to Diamante Cabo San Lucas S. De R.L. De C.V., a Mexican limited liability company (the "Borrower" or

3

"<u>Diamante</u>") a loan in an amount of up to \$125 million (the "<u>2006 Loan  Agreement</u>").

Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553).

**GOVERNMENT'S RESPONSE**:

The government disputes the authenticity and admissibility of Exhibit 4 because it has not been

properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, Danske's citation to Exhibit 4,

consisting of 89 pages, "generally" is not a short and concise statement of fact, supported by a

reference to admissible evidence as required by Local Rule 56.1. Further, although Exhibit 4 purports

to describe the loan, the portion of the document that contains the description of the land and property

is written in Spanish, a description for which Danske failed to provide an English translation.

Accordingly, the document is not admissible to establish an undisputed, material fact as to those

portions of the document written in Spanish, including the description of the land and property.  *See*

Kostolampros Decl., Exhibit 4 with attached Exhibit A; *see* Fed. R. Evid. 901; *see M & Z Trading*

*Corp. v. Hecny Group*, 41 Fed. Appx. 141, 143 (9th Cir. 2002) ("Rule 901 of the Federal Rules of

Evidence requires all evidence to be authenticated prior to admission. Fed. R. Ev. 901. Without

providing any affidavits or testimony regarding the competency of the translators for the translations it

submitted, [plaintiff] failed to satisfy the accuracy and reliability requirements of Rule 901.").  In

addition, Exhibit 4 does not include documents referred to therein. *See for e.g.*, Exhibit 4 at § 4.2.

6.    Diamante borrowed money from Lehman in order to acquire the land and develop the

property located at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico into a resort that

would include infrastructure to support development and use of the property and any improvements,

the "Dunes" golf course, and various homes. *See id.* at §§ 2.1 (defining Improvements), 13.1(b),

Art. XVI).

**GOVERNMENT'S RESPONSE:**

4

*See* Response #5.

7.    The property purchased by Diamante was a 1,510-acre site in Cabo San Lucas, Mexico. Kostolampros Decl., Ex. 5 (DANSKE_0016257 at DANSKE_0016259). The property consisted of vacant land located four miles west of downtown Cabo San Lucas with 1.5 miles of beach frontage along the Pacific Ocean. *Id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses #5 and #6.

8.    Under the development plan presented to Lehman, Diamante's "master plan" included the development of "211 private, oceanfront and ocean view residential home sites, 185 villas (full and/or fractional ownership), two championship golf courses, two clubhouses, a beach club with a restaurant and guest accommodations, community center with a spa, fitness center, tennis, pool, retail, restaurant(s) and other commercial services." *Id.* The plan also provided for "65 beachfront acres and 235 upland acres of excess land for future development. *Id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses ## 5 through 7.

9.    The 2006 Loan Agreement and certain related documents, including the promissory note, executed therewith established the structure of the original loan and the rights granted to the then-lender, Lehman. *See generally* Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of Exhibit 4 because it has not

been properly authenticated by Danske.  See Fed. R. Evid. 803.  Further, Danske's citation to Kostolampros Decl., Exhibit 4, consisting of 89 pages, "generally" is not a short and concise statement of fact, supported by a reference to admissible evidence as required by Local Rule 56.1. The promissory note, as referenced above, is not part of Exhibit 4.  In addition, Exhibit 4 does not include documents referred to therein. *See* Exhibit 4 at § 4.2.

> 10.  The 2006 Loan Agreement recited that as security for the loan given, the Borrower had on the date of the agreement, "conveyed all of its right, title, and interest in the" land to Banco

J.M. Morgan, S.A. as trustee for a trust (the "<u>Trust</u>") governed by a trust agreement between Lehman, the Borrower, and Banco J.P. Morgan, S.A. *Id.* at Recital B. As set forth more fully below, Lehman perfected a secured interest in the Resort Property pursuant to the 2006 Loan Agreement and 2006 Trust Agreement.

**GOVERNMENT'S RESPONSE:**

*See* Responses ##5 through 9.

> 11.  The 2006 Loan Agreement created security interests in the LLCs that own, directly or indirectly, the Borrower in Lehman's favor. *See* Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at §§ 2.1 (defining UCC Financing Statements and Pledge Agreements)), Ex. 6 (Pledge Agreement of Diamante Cabo San Lucas, LLC, Kenneth A. Jowdy, Diamante Cabo San Lucas S. De R.L. De C.V., and Lehman, DANSKE_0016321 at Clause 1 ("Pledgors hereby pledge the Membership Interests. This Pledge includes any increases in the value of the Membership Interests because of increases I [sic] the capital stock of Issuer Company."), Clause 2 ("The pledge constituted under the terms of the

clause First secures the payment and fulfillment of all and each one of the

Guaranteed Obligations of Issuer Company, U.S. LLC Members and Pledgors, as

well as the payment of the costs and fees incurred by Pledgee in enforcing this

Agreement and the Transaction Documents. This pledge is a continuous pledge

and its security shall be extended to any rights or assets received by Pledgors as

record holder of the Membership Interests.")), Ex. 7 (Pledge and Security

Agreement of Diamante Cabo San Lucas, LLC, Kenneth A. Jowdy, and Lehman,

DANSKE_0016294 at § 2 ("Pledgors hereby pledge and grant to Lender, as

collateral security for the prompt and complete payment and performance when

due . . . of the Guaranteed Obligations, a first priority security interest in all of

Pledgors's right, title and interest to the following . . . : all Pledged Company

Interests.").

**GOVERNMENT'S RESPONSE:**

*See* Responses #5-#10.  In addition, this statement is a conclusion of law.  Further, Exhibit 4

and Exhibit 6 do not include the documents referenced therein.

12. The 2006 Loan Agreement also entitled Lehman to interest at a rate of

fifteen (15) percent per annum compounded on a monthly basis. *See*

Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at Recital

B, §§ 2.1 (defining Additional Fee, Interest, and Order of Priority), 5.1(e)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #5 through #11.

13.    The 2006 Loan Agreement granted Lehman the rights to (a) first payment priority,

(b) full repayment of the principal balance and interest, including interest accrued on the principal balance, (c) payment of deferred interest (interest unpaid as of the payment date under the loan agreement for which payment is deferred), (d) upon an event of default, payment of default interest, with default interest added to the principal balance, (e) recover all of its costs and expenses incurred in connection with the loan, (f) declare an event of default and to thereafter exercise certain remedies, and (g) payment of an Additional Fee (as defined therein). *Id.* at §§ 2.1 (defining Additional Fee, Default Rate, Interest, and Order of Priority), 5.1(a) & (b) & (e), 5.2, 6.1, 19.1).

**GOVERNMENT'S RESPONSE:**

See Responses #5 through #12.

14. The 2006 Loan Agreement granted Lehman certain rights in the event of default, including the right to: (a) withhold further loan disbursements and terminate Lehman's obligations to make further disbursements; (b) declare the loan to be immediately due and payable; (c) exercise all rights set forth under the initial irrevocable guaranty trust agreement between Diamante,

Lehman, and the Bank of New York Mellon, S.A.; (d) charge default interest, and (e) pursue any other remedy permitted under the 2006 Loan Agreement or by law. *Id.* at §§ 5.1(e), 19.1.

**GOVERNMENT'S RESPONSE:**

See Responses #5 through #13.

15. The 2006 Loan Agreement provided that Lehman was entitled to charge default interest at a rate of twenty (20) percent per annum. *Id.* at §§ 2.1 (defining Default Rate), 5.1(e).

**GOVERNMENT'S RESPONSE:**

See Responses #5 through #14.

8

16. The 2006 Loan Agreement entitled Lehman to reimbursement of expenses incurred in connection with the loan. *Id.* at § 6.1.

**GOVERNMENT'S RESPONSE:**

*See* Responses #5 through #15.

17. Under the 2006 Loan Agreement, Lehman was granted security interests in all of the rights, title, and interests (direct or indirect) in the Borrower, including all securities or other property representing the Equity Interests, all accounts or other property relating to the Equity Interests, and all Proceeds arising from the Equity Interests. *See* Kostolampros Decl., Ex. 8 (2006 Pledge and Security Agreement Made By Equity Interest Pledgors in Favor of Lehman, DANSKE_0010741 at § 2 (granting Lehman a first priority security interest in the "Pledged Collateral," which included "all of Pledgors' right, title and interest to . . . (i) all Pledged Company Interests," which was defined to include "all of Pledgors' right, title and interest in . . . [Diamante Cabo San Lucas, LLC]" (the managing member of Diamante Cabo San Lucas S. De R.L. De C.V.),

(ii) "all securities, security certificates, moneys or property representing the Pledged Company Interests," (iii) "all right, title and interest of Pledgors in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Company Interest and any other Collateral," (iv) "all 'accounts', 'general intangibles', 'instruments' and 'investment property' . . . relating to the foregoing," and (v) "all Proceeds of any of the foregoing property of Pledgors")), Ex. 9 (2006 Pledge and Security Agreement Made by Pledgors Diamante Cabo San Lucas, LLC and Kenneth A. Jowdy in Favor of Lehman, DANSKE_0010724 at § 2 (granting Lehman a first priority security interest in the "Pledged Collateral," which included "all of Pledgor's right, title and interest to . . .

(i) all Pledged Company interests," which was defined to include "all of Pledgors' right, title and interest in the [Diamante Cabo San Lucas S. De R.L. De C.V.]," (ii) "all securities, security certificates, moneys or property representing the Pledged Company Interests,"), (iii) "all right, title and interest of Pledgors in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Company Interests and any other Collateral," (iv) "all 'accounts', 'general intangibles', 'instruments' and 'investment property' . . . relating to the foregoing," and (v) "all Proceeds of any of the foregoing property of Pledgors.")).

**GOVERNMENT'S RESPONSE**:

*See* Responses #5-#16.  In addition, this statement is a conclusion of law.

18.    Between April 2006 and January 2009, Lehman advanced Borrower $107,538,327.83 to acquire and develop the Resort Property. Kostolampros Decl., Ex. 10 (Diamante Facility A Balance Sheet, DANSKE_0015604 at DANSKE_0015614).

**GOVERNMENT'S RESPONSE:**

This exhibit does not constitute admissible evidence.  Danske failed to authenticate the purported business records of Trimont.  See Fed R. Evid. 803.  Further, the referenced records appear to be internal Trimont records and do not show that funds were advanced to Diamante.

19. As explained above, Lehman received a lien secured by the Resort Property pursuant to the 2006 Loan Agreement. *See* Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at Recital B, § 3.1(i)).

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, 19.

20. The 2006 Loan Agreement provides that Mexican law governs the "creation, perfection, priority, enforcement and foreclosure" of liens and secured interests against or in the Resort Property created pursuant thereto. *Id.* at § 20.3.

**GOVERNMENT'S RESPONSE:**

*See* Responses to # 5 through 11, #17 and #19.

21. In general, under Mexican law, interests in real property are perfected by, in pertinent part, executing a public deed before a notary, and registering that deed with the public property registry. *See* Kostolampros Decl., Ex. 11 (Declaration of Raul Humberto Zepeda Ruiz).

**GOVERNMENT'S RESPONSE:**

This statement is a conclusion of law.

22. In accordance with Mexican law and the terms of an initial irrevocable guaranty trust agreement dated March 10, 2006 (the "2006 Trust Agreement") between Diamante, Lehman

11

(now-Danske), and Banco J.P. Morgan, S.A. Institucion de Banca, J.P.Morgan Grupo Financiero, Trust Department, a Mexican guaranty trust numbered F/00321 (the "Trust") was created. Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at DANSKE_0010558), Ex. 12 (2006 Trust Agreement, DANSKE_0016011).

**GOVERNMENT'S RESPONSE:**

See Responses to #5 through #17, #19 through #20.  In addition, this statement is a conclusion of law.

23.  Pursuant to the Trust Agreement, the Resort Property (as of 2006) was owned by the Trust for Lehman's benefit, as first beneficiary, and that Lehman held a perfected secured senior lien in the Resort Property which was executed before a notary public in Mexico and recorded in the Public Registry of Property ("PRP") of the jurisdiction in which the real estate assets is located. Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at DANSKE_0010599), Ex. 12 (2006 Trust Agreement, DANSKE_0016011), Ex. 13 (2006 Registration With Public Registry, DANSKE_0016375), Ex. 14 (2006 Notary Plus Public Registration, DANSKE_0016343).

**GOVERNMENT'S RESPONSE:**

See Responses to #5 through #17, #19 through #20; #22.  In addition, this statement is a conclusion of law.

24.  The original Trust Agreement provided that the Borrower is the second-place beneficiary of the Trust and would only become first beneficiary upon fully repaying Lehman. Id.

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, #19 through #20, #22 through #23.

25.     When Lehman entered into the loan agreement with the Borrower, a Delaware limited liability company named Diamante Cabo San Lucas LLC ("Diamante Member") and Kenneth A. Jowdy owned the membership interests in the Borrower. *See* Kostolampros Decl., Ex. 4 (2006 Loan Agreement, DANSKE_0010553 at § 2.1 (defining Pledge Agreement (Membership Interests in Borrower: US), Pledge Agreement (Membership Interests in Borrower: Mexico)), Ex. 6 (Pledge Agreement of Diamante Cabo San Lucas, LLC, Kenneth A. Jowdy, Diamante Cabo San Lucas S. De R.L. De C.V., and Lehman, DANSKE_0016321), Ex. 7 (Pledge and Security Agreement of Diamante Cabo San Lucas, LLC, Kenneth A. Jowdy, and Lehman, DANSKE_0016294).

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, #19 through #20; #21 through #24.  In addition, this statement is a conclusion of law.

26.  Four LLC entities, Baja Ventures 2006, LLC, CSL Properties 2006, LLC, Diamante Properties, LLC, and KAJ Holdings, LLC, owned membership interests in the Borrower's manager, Diamante Member. *See* Kostolampros Decl., Ex. 4 at § 2.1 (defining Pledge Agreement (Membership Interests in Diamante Member)).

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, #19 through #20; #22 through #25.

27. As security for the loan extended by Lehman to the Borrower, the Borrower granted Lehman security interests in, in pertinent part, Baja Ventures 2006, LLC, CSL Properties 2006, LLC, Diamante Properties, LLC, and KAJ

Holdings, LLC, the Borrower, and Diamante Member. *Id.* at § 2.1 (defining Pledge Agreement (Membership Interests in Diamante Member), Pledge Agreement (Membership Interests in Borrower: US), Pledge Agreement (Membership Interests in Borrower: Mexico)).

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, #19 through #20; #22 through #26.  In addition, this statement is a conclusion of law.

28.  The 2006 Loan Agreement granted to Lehman security interests in the Equity Interests. *Id.* at § 2.1 (defining UCC Financing Statements and Pledge Agreements)).

**GOVERNMENT'S RESPONSE:**

*See* Responses to #5 through #17, #19 through #20; #22 through #27.

29.  In 2006, Lehman perfected its security interests in the Equity Interests by filing UCC financing statements. Kostolampros Decl., Ex. 15 (Lehman 2006 Delaware UCC Financing Statement for Diamante Cabo San Lucas, LLC, DANSKE_0016444), Ex. 16 (Lehman 2006 Delaware UCC Financing Statement for Diamante Cabo San Lucas LLC, DANSKE_0016317), Ex. 17 (Lehman 2006 Delaware UCC Financing Statement for KAJ Holdings, LLC, DANSKE_0016124), Ex. 18 (Lehman 2006 Delaware UCC Financing Statement for KAJ Holdings, LLC, DANSKE_0016122), Ex. 19 (Lehman 2006 Delaware UCC Financing Statement for CSL Properties 2006, LLC, DANSKE_0016253), Ex. 20 (Lehman 2006 Delaware UCC Financing Statement for Diamante Properties, LLC, DANSKE_0016120), Ex. 21 (Lehman 2006 Delaware UCC

Financing Statement for Diamante Properties, LLC, DANSKE_0016319), Ex. 22 (Lehman 2006 Delaware UCC Financing Statement for Baja Venture 2006, LLC,

DANSKE_0016255), Ex. 23 (Lehman 2006 Delaware UCC Financing Statement for Baja Ventures 2006, LLC, DANSKE_0016315), Ex. 24 (Lehman 2006 Nevada UCC Financing Statement for Kenneth A. Jowdy, DANSKE_0016313), Ex. 25 (Lehman 2006 Nevada (Clark County) UCC Financing Statement for Kenneth A. Jowdy, DANSKE_0016446).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibits because they have not been properly authenticated by Danske.  In addition, the above statement is a conclusion of law.

30.     Danske purchased Lehman's interests in the Resort Property and the Equity Interests pursuant to the terms of a 1999 Master Repurchase Agreement (the "MRA"), as amended, and a 2005 Committed Repurchase Facility Agreement (together with the MRA, the "Repo Agreements"). Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762), Ex. 27 (2005 Committed Repurchase Facility Agreement, DANSKE_0015719). The Repo Agreements are governed by the laws of the State of New York. Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762 at ¶ 16), Ex. 27 (2005 Committed Repurchase Facility Agreement, DANSKE_0015719 at DANSKE_0015722).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibits because they have not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the

government disputes this statement because Exhibits 26 and 27 do not refer to the purchase of the Resort Property or the Equity interests.  The record is devoid of any exhibits or documents showing the purchase price, date and amount of purchase and date of repurchase, as required under the MRA.

31.     At the time the parties entered into the Repo Agreements, Danske and Lehman were also parties, along with J.P. Morgan Chase, to a tri-party custody agreement that governed the treatment of assets purchased pursuant to the Repo Agreements. Kostolampros Decl., Ex. 27 (2005 Committed Repurchase Facility Agreement, DANSKE_0015719).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibits because they have not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.

32.     Prior to amendment, the MRA was between Den Danske Bank Aktieselskab, Cayman Islands Branch as "Buyer" and Lehman Brothers International (Europe) as "Seller." Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762 at DANSKE_0015762). On March 9, 2001, the MRA was amended to add "Lehman Brothers Inc., Lehman Commercial Paper Inc. and Danske Bank A/S,  London Branch"  as parties to the MRA.  Kostolampros Decl.,Ex.  28 (2001Amendment to MRA, DANSKE_0015780). On March 31, 2005, the MRA was amended again to add "Lehman Brothers Holdings, Inc." as a party. Kostolampros Decl., Ex. 29 (2005 Amendment to MRA, DANSKE_0015784).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibits because they have not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any

agreements or statements regarding the Resort Loan being a part of the MRA.

33.     The MRA provided that "[f]rom time to time the parties [ ] may enter into transactions in which one party ('Seller') agrees to transfer to the other ('Buyer') securities or other assets ('Securities') against the transfer of funds by Buyer, with the simultaneous agreement by Buyer to transfer to Seller such Securities at a date certain or on demand, against the transfer of funds by Seller." Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762, ¶ 1).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

34.     The MRA defined "Purchase Date" as "the date on which Purchased Securities are to be transferred by Seller to Buyer," defined "Purchase Price" in pertinent part as "on the Purchase Date, the price at which Purchased Securities are transferred by Seller to Buyer . . . ," and defined "Purchase Securities" in pertinent part as "the Securities transferred by Seller to Buyer in a Transaction hereunder, and any new Securities substituted therefor in accordance with Paragraph 9 hereof." *Id.* ¶ 2(n), (o), (p).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

35.     The MRA made clear that, on the date of purchase, the "Purchased Securities shall be transferred to Buyer or its agent against the transfer of the Purchase Price to an account of

Seller." *Id.* ¶ 3(a).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA..

36.     The MRA defined "Act of Insolvency" in pertinent part as "with respect to any party, (i) the commencement by such party as debtor of any case or proceeding under any bankruptcy, insolvency . . . ." *Id.* ¶ 2(a).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA..

37.     Under the MRA, the transactions completed thereunder were intended to be "sales and purchases and not loans." *Id.* ¶ 6.

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

38.     The MRA provided that "[a]ll of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date and, unless otherwise agreed by Buyer and Seller, nothing in

this Agreement shall preclude Buyer from engaging in repurchase transactions with the Purchased Securities or otherwise selling, transferring, pledging or hypothecating the Purchased Securities, but no such transaction shall relieve Buyer of its obligations to transfer Purchased Securities to Seller pursuant to Paragraph 3, 4, or 11 hereof, or of Buyer's obligation to credit or pay Income to, or apply Income to the obligations of, Seller pursuant to Paragraph 5 hereof." *Id.* ¶ 8.

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

39.     Under the MRA, the Seller was permitted to substitute other securities for the Purchased Securities so long as the substitute securities had a "Market Value at least equal to the Market Value of the Purchased Securities for which they are substituted." *See* Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762, ¶9(b)).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

40.     The MRA provided that "all Transactions hereunder constitute a single business and contractual relationship," and "that a default in the performance of any such obligation[ ] [under each Transaction] shall constitute a default . . . in respect of all Transactions hereunder." *Id.* ¶ 12. Under the MRA, both Buyer and Seller were "entitled to set off claims and apply property

held by them in respect of any Transaction hereunder and . . . that payments, deliveries and other transfers made by either of them in respect to any Transaction shall be deemed to have been made in consideration of payments, deliveries and other transfers in respect of any other Transactions hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted." *Id.*

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

41.     Under the MRA, events of default included, in pertinent part, "(ii) Seller fails to repurchase or Buyer fails to transfer the Purchased Securities upon the applicable Repurchase Date, . . . (v) an Act of Insolvency occurs with respect to Seller or Buyer . . . ." *Id.* ¶ 11.

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA

42.     Under the MRA, upon the occurrence of an event of default, "[t]he nondefaulting party may, at its option (which option shall be deemed to have been exercised immediately upon the occurrence of an Act of Insolvency), declare an Event of Default to have occurred hereunder and, upon the exercise or deemed exercise of such option, the Repurchase Date for each Transaction hereunder shall, if it has not already occurred, be deemed to immediately occur . . . ."

*Id.* ¶ 11(a).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

43. The MRA provided for remedies in the event that an Event of Default occurred and the non-defaulting party exercised its option to declare an Event of Default: "In all Transactions in which the defaulting party is acting as Seller . . . (i) the defaulting party's obligations in such Transactions to repurchase all Purchased Securities, at the Repurchase Price therefor on the Repurchase Date determined in accordance with subparagraph (a) of this Paragraph, shall thereupon become immediately due and payable, (ii) all Income paid after such exercise or deemed exercise shall be retained by the nondefaulting party and applied to the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder, and (iii) the defaulting party shall immediately deliver to the non-defaulting party any Purchased Securities subject to such Transactions then in the defaulting party's possession or control." Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762, ¶ 11(b)).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

44. Under the MRA, "[i]f the nondefaulting party exercises or is deemed to have

exercised the option referred to in subparagraph (a) of this Paragraph, the nondefaulting party, without prior notice to the defaulting party, may: as to Transactions in which the defaulting party is acting as Seller, . . . or (B) in its sole discretion elect, in lieu of selling all or a portion of such Purchased Securities, to give the defaulting party credit for such Purchased Securities in an amount equal to the price therefor on such date, obtained from a generally recognized source or the most recent closing bid quotation from such a source, against the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder; . . . ." *Id.* ¶ 11(d)(i).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the MRA does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the MRA.

45.    On March 17, 2005, Danske and Lehman Brothers Bankhaus AG, Lehman Brothers International Europe, Lehman Commercial Paper Inc., and Lehman Brothers Holdings Inc. executed a letter agreement, the "Committed Repurchase Facility Agreement." Kostolampros Decl., Ex. 27 (2005 Committed Repurchase Facility Agreement, DANSKE_0015719 at DANSKE_0015719).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the above exhibit does not reference the Resort Loan.

46.    This 2005 letter agreement amended a 2003 letter facility agreement by amending the terms governing repurchase transactions and adding Lehman Brothers Commercial Paper Inc.

and Lehman Brothers Holdings Inc. as parties. *Id.* The 2005 letter agreement established certain terms for repurchases completed thereunder (the "Commercial Repos"). *Id.* at DANSKE_0015720-22.

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the above exhibit does not reference the Resort Loan.

47.    The 2005 letter agreement provided that the following terms were applicable to the Commercial Repos: (1) maximum purchase price of $800 million, (2) Seller to be defined as Lehman or one of its affiliates, and (3) the 2005 letter agreement and transactions thereunder would terminate the day an event of default occurred and seller was notified of such default with such terminations occurring as provided in the MRA. *Id.* at DANSKE_0015720.


**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske. *See* Fed. R. Evid. 803. In addition, the above exhibit does not reference the Resort Loan.

48.    On April 21, 2006, Danske (as Buyer), Lehman (as Seller), and JPMorgan Chase Bank N.A. ("Chase") executed a tri-party custodian agreement (the "Custody Agreement") pursuant to which Chase was custodian. Kostolampros Decl., Ex. 30 (2006 Tri-Party Custody Agreement, DANSKE_0015839). The purpose of the Custody Agreement was to "facilitate Repurchase Transactions pursuant to the Master Repurchase Agreement." *Id.* at DANSKE_0015843. The Custody Agreement stated that it was to be construed in accordance with

the laws of the State of New York. *Id*. at § 18(h).

**GOVERNMENT'S RESPONSE:**

The government disputes the authenticity and admissibility of the above exhibit because it has not been properly authenticated by Danske.  *See* Fed. R. Evid. 803.  In addition, the government disputes that a tri-party custodian agreement ("Custody Agreement") was executed.  Exhibit 30 does not contain any signature pages and is accordingly, unexecuted.  In addition, the Custody Agreement does not contain any provisions regarding the Resort Loan and Danske did not produce any agreements or statements regarding the Resort Loan being a part of the Custody Agreement.

49.     On September 15, 2006, this agreement was amended to replace Chase as custodian with The Bank of New York Company, Inc. ("BNY").  Kostolampros Decl., Ex. 31 (DANSKE_0015875).  Subsequently, LaSalle Bank, N.A. was appointed as sub-custodian. *See* Kostolampros Decl., Ex. 32 (DANSKE_0015981).

**GOVERNMENT'S RESPONSE:**

*See* Response #48.

50.     The Custody Agreement incorporated the MRA's definition of "Event of Default." Kostolampros Decl., Ex. 30 (2006 Tri-Party Custody Agreement, DANSKE_0015839 at DANSKE_0015843).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #49.

51.     The Custody Agreement defined "Master Custodian Held Asset" as "(a) Cash held by Master Custodian from time to time for the account of Buyer or Seller, as the case may be, pursuant to the terms hereof, (b) Trust Receipts, and (c) any other Asset described as a Master Custodian Held Asset on Schedule I hereto from time to time." *Id.* at DANSKE_0015844. It defined "Purchased Assets" as "[a]ssets purchased by Buyer from Seller in a Repurchase Transaction and any Assets substituted therefor in accordance with the Master Repurchase Agreement," "Purchase Price" as "with respect to any Repurchase Transaction, the 'Purchase Price' relating thereto as defined in the Master Repurchase Agreement," and "Purchase Date" as "with respect to any Repurchase Transaction, the Business Day upon which Buyer purchases the related Assets from Seller." *Id.* at DANSKE_0015845. The Custody Agreement also defined "Trust Receipt" as "a receipt or certification executed by a duly authorized officer of the applicable Sub-Custodian, substantially in the form of <u>Exhibit 1</u> to the applicable Tri-Party Sub-Custodial Agreement to which the related Sub-Custodian is a party, or in any other form subsequently agreed to in writing between the Seller and the Master Custodian." *Id.* at DANSKE_0015846. The Custody Agreement defined "Trust Receipt Delivery Date" as, "for each Sub-Custodian, the Purchase Date on which the initial Repurchase Transaction occurs with respect to which such Sub-

Custodian is acting as sub-custodian pursuant to the related Tri-Party Sub-Custodial Agreement." *Id.* at DANSKE_0015846.

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #50.

 52. Under the Custody Agreement, Chase (or a sub-custodian) was to "safekeep all Purchased Assets which are Master Custodian Held Assets at any time transferred or delivered to and held by Master Custodian for or on behalf of Buyer under this Agreement and as agent and bailee for Buyer for the purposes set forth in this Agreement. Seller hereby appoints Master Custodian as custodian to safekeep all Master Custodian Hold Assets at any time transferred or delivered to or held by Master Custodian for or on behalf of Seller under this Agreement and as agent and bailee for Seller for the purposes set forth in this Agreement. *Id.* at DANSKE_0015847.

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #52.

 53. Under the Custody Agreement, "Buyer [Danske] and Seller [Lehman] agree that transfers of Cash and Assets for the purpose of effecting Repurchase Transactions pursuant to the provisions of this Section 6 are intended to be, and shall be deemed to be, simultaneous." Kostolampros Decl., Ex. 30 (2006 Tri-Party Custody Agreement, DANSKE_0015839 at § 6(f)).

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53.

 54. The Custody Agreement provided that "[a]ll Purchased Assets which are Master Custodian Held Assets shall be maintained by Master Custodian in Buyer's Master Custodial Account. *Id.* § 4(b). The Custody Agreement provided that the market value of "Grade A" assets, i.e., commercial loans, "shall be their face amount." *Id.* § 6(b)(i).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53.  Further, the government disputes that the unexecuted Custody Agreement contains the above provision.  The Custody agreement defines "Grade A Asset" as "Cash," not commercial loans.  *See* Kostolampros Decl., Exhibit 30 at Section 1, Danske 15844.

55.     Under the Custody Agreement, "[a]ll property from time to time in Buyer's Master Custodian Account shall be owned and controlled solely by Buyer, and Bank shall follow only Buyer's instructions with respect to Buyer's Account. . . ." *Id.* § 17(c).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53.

56.     The repurchase transactions completed pursuant to the Commercial Repo were governed by the Repo Agreements and the custody of assets subject to such repurchase agreements were governed by the Custody Agreement. Kostolampros Decl., Ex. 27 (2005 Committed Repurchase Facility Agreement, DANSKE_0015719)

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55.

57.     Lehman filed for bankruptcy on September 15, 2008. Dkt. No. 1, No. 08-13555(JMP) (Bankr. S.D.N.Y.).

**GOVERNMENT'S RESPONSE:**

The government does not dispute this statement.

58.     Under the Repo Agreements, a bankruptcy filing constituted an event of default. Kostolampros Decl., Ex. 26 (MRA, DANSKE_0015762, ¶¶ 2(a), 11. *See also* ¶ 41, *supra*.

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56.

59.     On September 15, 2008, the same day Lehman filed for bankruptcy, Danske notified Lehman that it had defaulted under the Repo Agreements. Kostolampros Decl., Ex. 33 (September 15, 2008 Notice of Default, DANSKE_0016311). As of that date, the Repo Agreements entitled Danske to retain, as full or partial satisfaction of amounts owed to Danske by Lehman, Lehman's interests in the Resort Property and Equity Interests, *see* ¶ 44 *supra*. A trust receipt dated September 15, 2008 provided to Danske by BNY recited that Lehman's senior secured interest in the Resort Property, valued at $107 million, was held as of September 12, 2008 in Danske's account at LaSalle Bank. *See* Kostolampros Decl., Ex. 32 (DANSKE_0015981 at DANSKE_0016009).

**GOVERNMENT'S RESPONSE:**

The government disputes this statement.  In addition to not being a short and concise statement as required by Local Rule 56.1, the Repo Agreements do not contain any information about the Resort Loan and Danske has not produce any agreements or statements regarding the Resort Loan being a part of the Repo Agreements, the Commercial Repo Agreements or the unexecuted Custody Agreement.  Further, Exhibit 32, the purported "trust receipt," does not identify the Resort Loan or the amount owed.  In addition, Exhibit 32 constitutes inadmissible hearsay.  Danske failed to authenticate the purported business records of the custodian.  *See* Fed R. Evid. 803.  Further, the referenced records appear to be internal records of the custodian and do not show that funds were advanced to Diamante.

60.     On September 23, 2008, Danske sent Lehman an additional notice of default due to Lehman's failure to pay amounts owed to Danske. Kostolampros Decl., Ex. 34 (September 23,

2008 Notice of Default, DANSKE_0015881). *See* ¶ 41, *supra*. As a result of this default, Danske was entitled to retain, as full or partial satisfaction of amounts owed to Danske by Lehman, Lehman's interests in the Resort Property and Equity Interests, *see* ¶ 44, *supra*.

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53, #55 through #58.

 61. On January 13, 2009, Danske and Lehman executed an Omnibus Assignment and Assumption Agreement. Kostolampros Decl., Ex. 35 (January 2009 Omnibus Assignment and Assumption Agreement, DANSKE_0012223). This agreement confirmed that Danske "purchased from Assignor [Lehman], all of Assignor's rights, title and interest with respect to the loan identified on [e]xhibit A attached hereto and made a part hereof (the 'Loan') including, without limitation, all of Assignor's rights arising under the documents and/or instruments set forth on [e]xhibit B attached hereto and made a part hereof (collectively, the 'Loan Documents'). For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns to Assignee, and Assignee hereby assumes from Assignor, all of Assignor's obligations as Lender arising under the Loan Documents." *Id.* The agreement stated that it was to be governed by and construed in accordance with the laws of the State of New York. *Id.* at DANSKE_0012224.

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53, #55 through #56, #58, #60. In addition, Danske failed to produce any document that establishes the "good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."

 62. Even after Danske entered into the Assignment and Assumption Agreement and Danske elected to retain certain properties covered by the Repurchase Agreement between Lehman and Danske, Lehman still owed Danske hundreds of millions of dollars, i.e., Danske provided more

value to Lehman than it received back. *See* Kostolampros Decl., Ex. 96 (DANSKE_0015740 at DANSKE_0015752). Danske filed a proof of claim (Claim No. 19487) in the Lehman bankruptcy proceeding in which Danske sought to recover $699,657,333.82 owed in connection with the Commercial Repo and $300,000,000 of residential repurchase transactions completed under a separate repurchase agreement between Danske and Lehman. *Id.* at DANSKE_0015746, DANSKE_0015752. Danske's claim amount was the net aggregate amount Lehman owed to Danske after Danske credited Lehman's account to reflect the value of collateral that Danske purchased and elected to retain. *See id.* at DANSKE_0015746, DANSKE_0015752. In filing this claim, Danske stated that it had funded $800,587,599.42 under the Commercial Repo and had, by accepting 11 liens (including the Resort Property lien), received partial payment of $248,191,560. *Id.* at DANSKE_0015752.

**GOVERNMENT'S RESPONSE:**

     *See* Responses #48 through #53, #55 through #56; #58, #60 through # 61.  In addition to not being a short and concise statement as required by Local Rule 56.1, as discussed above, the Commercial Repo loan does not include the Resort Loan. Further, the document relied upon by Danske is merely its proof of claim. Danske has not produced any documents that "reflect the value of collateral that Danske purchased and elected to retain" or the "Danske provided more value to Lehman than it received back."

     63.    On September 29, 2010, Lehman filed a motion for approval of a compromise and settlement between Lehman and Danske. Kostolampros Decl., Ex. 37 (Dkt. No. 11681, No. 08-133555(JMP) (Bankr. S.D.N.Y.). In that motion, Lehman told the Bankruptcy Court that the parties "did not dispute ownership rights with respect to the Commercial Mortgage Assets" and that following Lehman's bankruptcy filing, Lehman had assigned and Danske had assumed all,

but two of the secured liens Lehman had included in the pool pursuant to the repurchase transactions under the Commercial Repo. *Id.*, ¶ 16. On October 26, 2011, Lehman filed a motion seeking approval of a settlement between Danske and Lehman pursuant to which the parties had agreed in pertinent part that Danske's allowed claim would total $580 million. Kostolampros Decl., Ex. 38 (Dkt. No. 21298, No. 08-133555(JMP) (Bankr. S.D.N.Y. at ¶ 18). On November 18, 2011, the Bankruptcy Court approved this settlement agreement and stated that Danske's allowed claim was $580 million. Kostolampros Decl., Ex. 39 (Dkt. No. 22338, No. 08-13555(JMP) (Bankr. S.D.N.Y.)).

**GOVERNMENT'S RESPONSE:**

The above statement is not a short and concise statement as required by Local Rule 56.1. However,   the government does not dispute that above documents were filed in the bankruptcy proceeding.

64.    On March 6, 2009, following Danske's assumption of Lehman's interests in the Resort Property and Equity Interests, Danske and the Borrower entered into an Amended and Restated Loan Agreement, which modified the structure of the original loan by splitting it into the Facility A Promissory Note ("Facility A") and Facility B Promissory Note ("Facility B").    *See* Kostolampros Decl., Ex. 40 (DANSKE_0013865 at Recital F). The Amended and Restated Loan Agreement did not alter the security interest granted to Lehman under the Original Loan Documents. *See id.* § 4.2(a).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through 61.

65.    Facility A represented the principal amount of $109,138,327.83 under the original loan (the amount then advanced), which was comprised of the $107,538,327.83 loaned by Lehman

and the $1.6 million Danske loaned to the Borrower in early 2009. *See* Kostolampros Decl., Ex. 41 (DANSKE_0014021), Ex. 42 (Trimont Loan Notices, DANSKE_0015590 at DANSKE_015590). By March 1, 2009, accrued unpaid interest totaled approximately $49,132,479. Kostolampros Decl., Ex. 42 (Trimont Loan Notices, DANSKE_0015590 at DANSKE_015594), 10 (Diamante Facility A Balance Sheet, DANSKE_0015604 at DANSKE_0015614).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64.  In addition, Exhibit 41 is a substitute promissory note.  Danske did not produce any documents that reflect what the amount Lehman loaned to the Borrower.

66.   Facility B was established as a revolving line of credit of up to $16 million, which represented the remaining amount of the original Promissory Note left to fund. *See* Kostolampros Decl., Ex. 44 (DANSKE_0014031).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #65.

67.   Between March 10, 2006 to March 1, 2009, unpaid accrued interest owed by Borrower under the loan totaled $49,132,479. Kostolampros Decl., Ex. 42 (Trimont Loan Notices, DANSKE_0015590 at DANSKE_015594).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #66.

68.   Pursuant to the Amended and Restated Loan Agreement, the then-approximately $49 million in unpaid accrued interest was recharacterized as a Profit Participation Fee ("PPF") of at least $45 million, calculated to be the greater of $45 million or "thirty percent (30%) of the

amount that is equal to <u>the difference between</u>: (x) the Current Value . . . ., <u>less</u> (y) the amount that is <u>the lesser of</u> (1) the outstanding principal balance of the Loan, or (2) the original face amount of the Notes (i.e., $125,138,327.83)." *See* Kostolampros Decl., Ex. 40 (DANSKE_0013865 at § 5.3(a)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #67.

69.     The Amended and Restated Loan Agreement (and related documents) entitled Danske to the same rights that Lehman had under the Original Loan Documents and reaffirmed the same payment, completion, and recourse guaranties made to Lehman in favor of Danske. *See id.* at Recitals (C), (D), § 4.2(a).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #68.

70.     The Amended and Restated Loan Agreement (and related documents) maintained Danske's entitlement to its perfected secured senior lien in the Resort Property and the perfected senior interests in the Equity Interests. *Id.* at Recital C ("Lehman assigned to Lender, and Lender assumed from Lehman all of Lehman's right, title and interest in the Original Loan and the Original Loan Documents"). The Amended and Restated Loan Agreement also reaffirmed the same payment, completion, and recourse guaranties made to Lehman in favor of Danske. *Id.* at DANSKE_0013878, DANSKE_0013880 (defining "Payment Guaranty" as "[t]he Payment Guaranty dated March 10, 2006 and executed by the Borrower Parties in favor of Lehman"), DANSKE_0013873, DANSKE_0013880 (defining "Completion Guaranty" as "[t]he Completion Guaranty dated March 10, 2006 and executed by Guarantor in favor of Lender"),

DANSKE_0013880-81 (defining "Recourse Guaranty" as "[t]he Recourse Guaranty dated March 10, 2006 and executed by Guarantor in favor of Lehman"). In addition, as security for the advances being made, PF Ventures LLC granted Danske a "first priority security interest in all of Pledgor's right, title and interest" in the Borrower's managing member. Kostolampros Decl.,  Ex. 95 (March 6, 2009 Pledge and Security Agreement by Pledgor PF Ventures, LLC, PF Ventures Pledge, DANSKE_0015243).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #69.

71.    The Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the State of New York. Kostolampros Decl., Ex. 40 (DANSKE_0013865 at § 20.3).

 **GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #70.

72.    By December 31, 2009, Danske had advanced the full $16 million available under Facility B. *See* Kostolampros Decl., Ex. 45 (DANSKE_0015502 at DANSKE_0015514).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #71.

73.    On January 20, 2010, Danske and Diamante agreed to a loan modification to increase the principal balance available under the Facility B Note from $16 million to $20 million. *See* Kostolampros Decl., Ex. 46 (DANSKE_0010809).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #72.

74.     The First Amendment to the Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the state of New York. *Id*. at § 12.5 (defining "Governing Law" consistent with the Amended and Restated Loan Agreement).

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #73.

75.     After the First Amendment to Amended and Restated Loan Agreement was executed, the perfected security interests granted first to Lehman under the 2006 Loan Documents and assigned to Danske in the Assignment and Assumption Agreement remained in-force and perfected. *See* Kostolampros Decl., Ex. 46 (DANSKE_0010809 at § 5.4). The Borrower's and Guarantor's obligations under the Amended Loan Documents "remain[ed] valid and enforceable obligations" under the First Amendment to Amended & Restated Loan Agreement. *See Id.* The First Amendment to the Amended & Restated Loan Agreement was not a novation of the Amended & Restated Loan document and its related documents. *See id*. ("this Modification Agreement and the other documents executed in connection herewith shall not be construed as a novation of any of the Amended Loan Documents").

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #74.

76.     The First Amendment to Amended & Restated Loan Agreement entitled Danske to full repayment of the principal balance on Facility A in the amount of $109,138,327.83 and Facility B in the amount of $20,000,000 on or before March 31, 2012 (see *id.* at Recitals F, G, §§ 2.1, 3.3(a) & (c) (replacing § 4.3(a) of Amended & Restated Loan Agreement, and listing obligations to be payable in full by the Maturity Date as defined in the Amended & Restated Loan Agreement

as March 31, 2012), and reaffirmed a number of other rights granted under the Amended and Restated Loan Agreement, including the right to: (a) principal and interest, including payment of interest accrued on the principal balance; (b) payment of the PPF as calculated in the Amended and Restated Loan Agreement; (c) if the borrower defaulted, payment of default interest in the amount of 20% with accrued default interest added to the principal balance owed to Danske; (d) first payment priority on all amounts owed and due; and (e) all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the loan. *See id.* at §§ 2.1, 3.3, 3.4, 3.5, 3.6, 6).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #75 In addition, Danske has failed to produce any documents reflecting the calculation of the PPF.

77.     Between March 2012 and March 2013, Danske entered into several letter agreements extending the maturity date of Facilities A and B. *See* Kostolampros Decl., Ex. 47 (DANSKE_0010886), Ex. 48 (DANSKE_0010899), Ex. 49 (DANSKE_0010870), Ex. 50 (DANSKE_0010850).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #76.

78.     These extensions did not modify the security interests that Danske acquired.  Before and after the extensions, Danske continued to have perfected secured liens against the Resort Property and Equity Interests. *See* Kostolampros Decl., Ex. 47 (DANSKE_0010886), Ex. 48 (DANSKE_0010899), Ex. 49 (DANSKE_0010870), Ex. 51 (DANSKE_0010850) (confirming that the Loan Documents secure Borrower's obligations to Danske pursuant to the Notes, the Trust and the other Loan Documents with first lien priority).

36

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #77.

79.     By May 2013, Facility A had a principal balance of $123,427,361.29.   *See* Kostolampros Decl., Ex. 43 (DANSKE_0015604 at DANSKE_0015609 (showing this balance on May 9, 2013)). By the beginning of May 2013, Facility B had a principal balance of approximately $21,242,353.47. *See* Kostolampros Decl., Ex. 45 (DANSKE_0015502 at DANSKE_0015507 (showing this balance on May 1, 2013)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #78. In addition, the government disputes this statement because Exhibit 43 is a UCC filing statement that does not reflect a dollar figure.

80.     On April 26, 2013, Danske and Diamante executed the Second Amended and Restated Loan Agreement and related documents.  *See* Kostolampros Decl., Ex. 51  (DANSKE _0011080), Ex.  52  (DANSKE_0011683), Ex.  53  (DANSKE_0011865), Ex.  54 (DANSKE_0012068), Ex. 55 (DANSKE_0012098), Ex. 56(DANSKE_0012118).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #79.

81.     The Second Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the State of New York. *See* Kostolampros Decl., Ex. 51 (DANSKE_0011080 at § 20.3).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #80.

82.     Except for the modifications expressly included in the Second Amended and Restated Loan Agreement, the Original Loan Documents, as reaffirmed by the 2013 Amended Loan Documents, remained binding and enforceable obligations on the parties. *See* Kostolampros Decl., Ex. 51 (DANSKE_0011080 at § 4.2(a) ("Except for this Agreement [(and related documents)], the other Original Loan Documents, as reaffirmed by the 2013 Amended Loan Documents, survive as binding and enforceable obligations on the parties named therein, and their permitted successors and assigns.")).

**GOVERNMENT'S RESPONSE:**

   *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #81.

83.     After the Second Amended and Restated Loan Agreement was executed, the perfected security interests granted first to Lehman under the 2006 Loan Documents and assigned to Danske in the Assignment and Assumption Agreement remained in-force and perfected. *See id.* The Second Amended and Restated Loan Agreement was not a novation of the prior loan agreements. *Id.* ("Except for this Agreement [(and related documents)], the other Original Loan Documents, as reaffirmed by the 2013 Amended Loan Documents, survive as binding and enforceable obligations on the parties named therein, and their permitted successors   and assigns.")).

**GOVERNMENT'S RESPONSE:**

   *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #82.

84.     In material part, the Second Amended and Restated Loan Agreement modified the loan by:

        a.   Increasing the principal amount of Facility A from $109,138,327.83 to $123,500,000 to reflect the capitalization of all unpaid interest that had accrued on Facility A and Facility B from February 2009 through December 2011, *see* Kostolampros Decl., Ex. 57

(DANSKE_0015736);

   b. Splitting Facility B into two facilities: (i) Replacement Facility B in the amount of $18 million ("Facility B") and (ii) Creating a new Facility C in the amount of $2 million as evidenced by the Facility C Promissory Note ("Facility C") with a maturity date of March 31, 2014;

   c. Creating a new Facility D in the principal amount of $3 million as evidenced by the Facility D Promissory Note with a maturity date of March 31, 2014 ("Facility D");

   d. Increasing the PPF from an approximate $45 million to a definitive $50 million to account for additional unpaid interest; and

   e. Extending the maturity date for Facilities A and B to March 31, 2016. *See* Kostolampros Decl., Ex. 51 (DANSKE _0011080 at Recital N, § 2.1 (defining Profit Participation Fee as $50,000,000 USD), Article V (including Danske's rights to interest and PPF)).

**GOVERNMENT'S RESPONSE:**

 *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #83. Further, Danske failed to produce any documents calculating the PPF.

 85. The Second Amended & Restated Loan Agreement reaffirmed a number of certain rights in Danske's favor including: (a) principal and interest, including payment of interest accrued on the principal balance; (b) payment of the PPF; (c) if the borrower defaulted, payment of default interest in the amount of 20% with accrued default interest added to the principal balance owed to Danske; (d) first payment priority on all amounts owed and due; (e) all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the loan; and (f) the security interests in the Resort Property and Equity Interests granted in Danske's favor. *Id.* § 4.2(a) (reaffirming rights and obligations under the Original Loan Documents, as reaffirmed

and amended by the 2013 Amended Loan Documents, unless specifically modified), Article 5 (Interest; Profit Participation Fee; Order of Priority), Article 6 (Loan Expense and Advances)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #84. Further, Danske failed to produce any documents reflecting the calculation of the PPF.

86. The purpose of the 2013 modification and advancement of new money was to finance further development of the Resort Property, including advancing construction of the Lagoon and the Tiger Woods El Cardonal golf course. *See id.* at DANSKE_0011103.

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #85.

87. On April 29, 2014, Danske and Diamante executed the Third Amended and Restated Loan Agreement, which, among other things, modified the loan structure by consolidating and replacing then-Facility C and then-Facility D into a replacement Facility C revolving line of credit. *See* Kostolampros Decl., Ex. 58 (DANSKE_0012231), Ex. 59 (DANSKE_0013058). Replacement Facility C increased the Borrower's available line of credit by $10,000,000 such that the aggregate available principal amount that could be drawn and redrawn on Facility C equaled $15,000,000. *See* Kostolampros Decl., Ex. 58 (DANSKE_0012231), Ex. 59 (DANSKE_0013058).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #86.

88. The Third Amended and Restated Loan Agreement also extended the maturity date for the Facility C Note to March 31, 2015. *See* Kostolampros Decl., Ex. 58 (DANSKE_0012231 at DANSKE_0012257).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #87.

89.     The primary purpose of this modification and advancing of new money was to continue development, including completing construction of the Tiger Woods El Cardonal golf course and the Lagoon. *See id.* at DANSKE_0012255 (defining Project Construction Budget).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #88.

90.     After the Third Amended and Restated Loan Agreement was executed, the perfected security interests granted first to Lehman under the 2006 Loan Documents and assigned to Danske in the Assignment and Assumption Agreement remained in-force and perfected. *See id*. § 4.2(a). Danske's security interest in the Equity Interests was, and remains, senior in position to any interests held by other equity holders. *Id*. at § 13.17(e) ("To secure the full and punctual payment and performance of all of the Debt, Borrower hereby sells, assigns, conveys, pledges and transfers to lender and grants to Lender a first and continuing Lien on and security interest in and to, all of Borrower's rights, title and interest . . . ."); *see also* Kostolampros Decl., Ex. 60 (DANSKE_0012726 at Clause 11(a)(5) (providing that once the Beneficiary in First Place is paid any and all secured obligations under the Loan Agreement, the remaining assets under the Trust shall be reverted to the Borrower (which is owned by the LLCs in which equity holders, including Danske, hold shares), Beneficiary in Second-Place. or to the person whom the Beneficiary in Second Place designates), Ex. 61 (DANSKE_0010532 at DANSKE_0010542 (while not including the defined term, the second amended trust agreement contains a "no novation" clause, providing that "[t]he execution of this Agreement hereunder does not constitute a novation, amendment, payment, satisfaction or extinction of the obligations under the TRUST AGREEMENT")).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #89. Further, the government the government disputes the statement that Danske hold shares in the LLCs.  Dankse does not allege that in its petition that it is a shareholder and has not produced any evidence that its holds shares in the LLCs.

91.     The Third Amended & Restated Loan Agreement was not a novation of the prior loan agreements. *See* Kostolampros Decl., Ex. 58 (DANSKE_0012231 at DANSKE_0012275 ("Except for this Agreement [(and related documents)], the other Original Loan Documents, as reaffirmed by the 2014 Amended Loan Documents, survive as binding and enforceable obligations on the parties named therein, and their permitted successors and assigns.")).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #90.

92.     The Third Amended and Restated Loan Agreement entitled Danske to a number of rights, including the right to: (i) full repayment of the principal balance on Facilities A and B  on or before March 31, 2016, and on Facility C on or before March 31, 2015; (ii) full repayment of principal and interest, including payment of interest accrued on the principal balance; (iii) payment of the PPF in the amount of $50 million; (iv) if the Borrower defaulted, payment of default interest at a rate of 20% with accrued default interest added to the principal balance owed to Danske; (v) exercise remedies in the event of a Borrower default; (vi) first payment priority on all amounts owed and due; and (vii) all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the loan.  *See id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #91.

42

93.     The Third Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the State of New York.     *See id.* at § 20.3. It also provides that Mexican law governs the "creation, perfection, priority, enforcement and foreclosure" of liens and secured interests against or in the Resort Property created pursuant thereto. *Id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #92.

94.     In October 2014, Danske and Diamante modified the terms of the loans by extending the maturity date for Facilities A and B to October 30, 2024 and extending the maturity date for replacement Facility C to October 31, 2017. *See* Kostolampros Decl., Ex. 62 (DANSKE_0013826 at § 3.1(a)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #93.

95.     After the First Amendment to the Third Amended and Restated Loan Agreement was executed, the perfected security interests granted first to Lehman under the 2006 Loan Documents and assigned to Danske in the Assignment and Assumption Agreement remained in-force and perfected. *See id.* § 6.4 ("Borrower Parties' obligations under the Loan Documents, as amended and modified hereby, remain valid and enforceable obligations, and the execution and delivery of this Agreement and the other documents executed in connection herewith shall not be construed as a novation of any of the Loan Documents.")). The First Amendment to the Third Amended and Restated Loan Agreement was not a novation of the prior loan agreements. *See id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #94.

96.     The First Amendment to the Third Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the state of New York. *Id*. at § 10.5 (defining "Governing Law" consistent with the Loan Agreement).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #95.

97.     In early September 2018, Danske and Diamante modified and amended the terms of the Third Amended and Restated Loan Agreement retroactive to November 1, 2017 by, among other things, extending the maturity date for Facility C from October 31, 2017 to December 31, 2018 and extending the due date for certain scheduled amortization payments on Facility A. *See* Kostolampros Decl., Ex. 63 (DANSKE_0011031).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #96.

98.     After the Second Amendment to the Third Amended and Restated Loan Agreement was executed, the perfected security interests granted first to Lehman under the 2006 Loan Documents and assigned to Danske in the Assignment and Assumption Agreement remained in-force and perfected.  *See id.* § 5.4.

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #97.

99.     The Second Amendment to the Third Amended and Restated Loan Agreement was not a novation of the prior loan agreements. *See id.* ("Obligors' obligations under the Loan Documents, as amended and modified hereby, remain valid and enforceable obligations, and the execution and delivery of the Agreement and the other documents executed in connection herewith shall not be construed as a novation of any of the Loan Documents.")).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #98.

100.    The Second Amendment to the Third Amended and Restated Loan Agreement stated that it should be governed by and construed in accordance with the laws of the state of New York.  *Id*. at § 9.5 (defining "Governing Law" consistent with the Loan Agreement).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #99.

101.    At the same time Diamante and Danske executed the Amended and Restated Loan Agreement in March 2009, Danske and the Borrower executed an amended Trust Agreement that acknowledged Danske as "Beneficiary in First Place," as creditor under the Amended and Restated Loan Documents. *See* Kostolampros Decl., Ex. 60 (DANSKE_0014041 at DANSKE_0014106, DANSKE_0012726).  Under the amended Trust Agreement, Danske assumed Lehman's perfected priority security interest in the Resort Property and the Equity Interests and it took actions to ensure that Danske's interests remain perfected. *See id.* at DANSKE_0014041 at DANSKE_0014106; *see also id.* at Clauses 2(c) ("The Settlor and the Beneficiary in First Place hereby acknowledge and agree that transfer of title of Real Property and its Improvements in favor of the Trustee was perfected by means of the agreement that created the Trust . . . ."),  2(e) ( "The irrevocable transfer of property and title to any rights hereby transferred to the Trust Assets . . . is perfected hereby.")).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #100.

102.    Danske and the Borrower executed the Second Amended Trust Agreement on April 30, 2013. Kostolampros Decl., Ex. 64 (DANSKE_0012138). Pursuant to Mexican law, and the Second Amended Trust Agreement, Danske's security interest in the Resort Property and the

Equity Interests remained perfected. *See* Kostolampros Decl., Ex. 61 (DANSKE_0010532 (reflecting no amendment of the 2009 Trust Agreement affecting or modifying in any respect Danske's interests); Ex. 70 (2014 Results of Lien Search, DANSKE_0016126).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #101.

> 103.   The Trust Agreement was amended again on May 13, 2014, but Danske's perfected secured interests as first-place beneficiary were not altered by the amendment. *See* Ex. 70 (2014 Results of Lien Search, DANSKE_0016126).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #102.

> 104.   Danske has been and is now the first-place beneficiary of the Trust since the Trust Agreement was amended in 2009. *See* Kostolampros Decl., Ex. 60 (DANSKE_0012726 at Clause 3(a) (defining Danske as Beneficiary in First Place), Ex. 61 (DANSKE_0010532 at DANSKE_0010542 (while not including the defined term, the second amended trust agreement contains a "no novation" clause, providing that "[t]he execution of this Agreement hereunder does not constitute a novation, amendment, payment, satisfaction or extinction of the obligations under the TRUST AGREEMENT")).

**GOVERNMENT'S RESPONSE:**

> *See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #103.

> 105.   The Borrower remains the second-place beneficiary. *Id.* The Trust Agreement provides that the Borrower, as second-place beneficiary, will realize its interest in the Resort Property after it fully satisfies its obligations to the first-place beneficiary. Kostolampros Decl., Ex. 60 (DANSKE_0012726 at Clause 11(a)(5) (providing that once the Beneficiary in First Place

is paid any and all secured obligations under the Loan Agreement, the remaining assets under the Trust shall be reverted to the Beneficiary in Second Place or to the person whom the Beneficiary in Second Place designates)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through      #104.

106.    In 2009, the pledge agreements creating security interests in the LLCs that were executed in Lehman's favor in 2006 were reaffirmed in Danske's favor. *See* Kostolampros Decl., Ex. 65 (DANSKE_0014190), Ex. 66 (DANSKE_0014196), Ex. 67 (DANSKE_0014224). Thereafter, Danske filed replacement UCC financing statements to ensure that the security interests it received from Lehman remained perfected. Kostolampros Decl., Ex. 68 (DANSKE_0015269), Ex. 69 (DANSKE_0013228). At the same time, Danske filed a UCC financing statement for the pledge of interests in PF Ventures, LLC. Kostolampros Decl., Ex. 36 (DANSKE_0015263). Danske has, as necessary, filed subsequent UCC financing statements  to ensure these interests remain perfected. Kostolampros Decl., Ex. 70 (DANSKE_0016126), Ex. 71 (DANSKE_0011928), Ex. 72 (DANSKE_0013430).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #105.

107.    The pledge agreements creating security interests in the LLCs in favor of Danske were also reaffirmed when subsequent loan amendments were made in 2013 and 2014. *See* Kostolampros Decl., Ex. 73 (DANSKE_0010945), Ex. 74 (DANSKE_0011611), Ex. 75 (DANSKE_0011624), Ex. 76 (DANSKE_0011741), Ex. 77 (DANSKE_0011786), Ex. 78 (DANSKE_0011813), Ex. 79 (DANSKE_0012931), Ex. 80 (DANSKE_0013769), Ex. 81 (DANSKE_0012720), Ex. 82 (DANSKE_0012796), Ex. 83 (DANSKE_0013734).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #106.

108.    On October 29, 2013, the government filed an indictment against Phillip A. Kenner and Tommy C. Constantine (the "<u>Defendants</u>") in the above-captioned case. Kostolampros Decl., Ex. 84 (Dkt. No. 1, October 2013 Indictment). The indictment charged the Defendants with one count each of conspiracy to commit wire fraud, seven counts each of wire fraud, and one count each of money laundering conspiracy. *Id.*

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.

109.    The October 2013 indictment did not include the Resort Property or Equity Interests as among the property subject to forfeiture. *Id.*

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.  However, the indictment included forfeiture allegations.

110.    On April 22, 2015, a superseding indictment was filed. Kostolampros Decl., Ex. 85 (Dkt. No. 214, Superseding Indictment).

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.

111.    The superseding indictment charged Defendants with one count each of conspiracy to commit wire fraud, seven counts each of wire fraud, and one count each of money laundering conspiracy. *Id.*

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.

112.    The superseding indictment also did not include the Resort Property or Equity Interests among the property subject to forfeiture. *Id.*

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.  However, the superseding indictment included forfeiture allegations.

113.    On April 22, 2015, the Government filed a Bill of Particulars in the criminal matter against Defendants identifying for the first time Diamante Properties, LLC and Baja Ventures 2006, LLC as assets over which the government was seeking forfeiture. *Compare* Kostolampros Decl., Ex. 84 (Dkt. No. 1, October 2013 Indictment) *with* Kostolampros Decl., Ex. 86 (Dkt. No. 208, April 2015 Bill of Particulars).

**GOVERNMENT'S RESPONSE:**

The government does not dispute that a Bill of Particulars was filed.

**114.**    On July 9, 2015, the Defendants were convicted by a jury verdict of conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering. Kostolampros Decl., Ex. 87 (Dkt. No. 324, Jury Verdict).

**GOVERNMENT'S RESPONSE:**

The government does not dispute the above statement.

115.    On August 20, 2015, the Government filed another Bill of Particulars identifying the Resort Property, Baja Ventures 2006, LLC, KAJ Holdings, LLC, CSL Properties 2006, LLC, and Diamante Properties, LLC, Baja Ventures 2006, LLC as property over which the government was seeking forfeiture. Kostolampros Decl., Ex. 88 (Dkt. No. 328, August 2015 Bill of Particulars). This was the first time the Government identified the Resort Property, KAJ Holdings, LLC and CSL

Properties 2006, LLC, as being subject to forfeiture.

**GOVERNMENT'S RESPONSE:**

The government does not dispute that a second Bill of Particulars was filed.

116.    As set forth in the Declaration of David Daniel, August 2015 is the earliest that Danske knew that Baja Ventures, LLC and Diamante Properties, LLC, the Resort Property, KAJ Holdings, LLC, and CSL Properties 2006, LLC could be subject to forfeiture. *See* Kostolampros Decl., Ex. 89 (Declaration of David Daniel ¶ 7).

**GOVERNMENT'S RESPONSE:**

The government disputes this statement. *See* Declaration of Madeline O'Connor, dated September 9, 2020, Exhibit 20, Chart of News Articles.

117.    On January 14, 2020, Danske issued a notice of default to Borrower. Kostolampros Decl., Ex. 90 (January 2020 Notice of Default, DANSKE_0015713). Borrower had defaulted under the loan documents by, among other things, failing to make certain principal and interest payments when due. *Id.* at DANSKE_0015714. Under the Third Amended and Restated Loan Agreement, upon this event of default, default interest began accruing. Kostolampros Decl., Ex. 58 (DANSKE_0012231 at DANSKE_0012276-79).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107.

118.    As of May 31, 2020, Danske's lien totals $199.98 million (USD) inclusive of default interest and unpaid costs and fees to which Danske is contractually entitled. This total is comprised of:  Facility A, with a principal balance of $96.4 million;

Facility B, with a principal balance of $18 million;

Facility C, with a principal balance of $14.1 million;

Unpaid PPF of $50 million; and

Unpaid interest and unpaid fees of $21.5 million.

*See* Kostolampros Decl., Ex. 91 (March 31, 2020 Danske Statement for Facility C, DANSKE_0016565), Ex. 92 (DANSKE_0015673), Ex. 93 (DANSKE_0015515).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107, #117.  In addition, the government disputes this statement. *See* Declaration of Kellie Fedkenheuer at ¶¶ 34 through 37, ¶¶ 43 through #46.

119.    The approximately $21.5 million of unpaid interest and fees as of May 31, 2020 includes $19.3 million in unpaid interest due on Facilities A, B, and C, an unpaid lenders fee of more than $1,360,805, and an unpaid modification fee of $875,000 are amounts to which Danske is entitled pursuant to the Third Amended and Restated Loan Agreement.  *See* Kostolampros Decl., Ex. 58, (DANSKE_0012231 at §§ 5.1(e), 5.2(e), 5.3 (e), 6.1).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107; #117 through #118.  Further, the government disputes this statement. *See* Declaration of Kellie Fedkenheuer at ¶ 16.

120.    To date, Danske has advanced at least $100 million of value in loan advances to Borrower. See Kostolampros Decl., Ex. 94 (Set of Wire Confirmations Documenting Loan Advances). *See also* Kostolampros Decl., Ex. 97 (2016 Trimont Facility C Balance Sheet, DANSKE_0015670); Ex. 98 (January 29, 2010 Danske Bank Funding Memo, DANSKE_0015956); Ex. 10 (Trimont Diamante Facility A Balance Sheet, DANSKE_0015604); Ex. 45 (Trimont Facility B Balance Sheet, DANSKE_0015502); Ex. 92 (Danske February 28,

2020 Statement, DANSKE_0015673); Ex. 93 (Danske February 28, 2020 Statement, DANSKE_0015515).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107; #117 through #119.

121.    On March 13, 2020, the Borrower deposited approximately $900,000 of certain timeshare deposits into a Facility C reserve. Kostolampros Decl., Ex. 91 (March 31, 2020 Danske Statement for Facility C, DANSKE_0016565). These funds have, for now, been applied to Facility C, and have reduced its principal balance, as of May 31, 2020, to $14.1 million. *Id.*

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107; #117 through #120.  Further, the government disputes this statement. *See* Declaration of Kellie Fedkenheuer at ¶ 37.

122.    Interest continues to accrue and add to the principal balance every month at a rate equal to 20% per annum, compounded monthly. *See* Kostolampros Decl., Ex. 58 (DANSKE_0012231 at DANSKE_0012245 (defining "Default Rate" in the Third Amended and Restated Loan Agreement)).

**GOVERNMENT'S RESPONSE:**

*See* Responses #48 through #53, #55 through #56; #58; #60 through #61; #64 through #107; #117 through #121.

Dated: Central Islip, New York
    September 9, 2020                        Respectfully Submitted,
                                             SETH D. DuCHARME

ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

By: /s/Madeline O'Connor
   Madeline O'Connor
   Diane C. Leonardo
   Assistant United States Attorneys