A6031
90069

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 27 2010

John A. Clarke, Executive Officer/Clerk

By _____ Deputy
AMBER LAFLEUR-CLAYTON

1   CALDWELL LESLIE & PROCTOR, PC
    ROBYN C. CROWTHER, State Bar No. 193840
2   MICHAEL D. ROTH, State Bar No. 217464
    ARWEN R. JOHNSON, State Bar No. 247583
3   1000 Wilshire Boulevard, Suite 600
    Los Angeles, California 90017-2463
4   Telephone: (213) 629-9040
    Facsimile: (213) 629-9022
5
    Attorneys for Plaintiff KENNETH A. JOWDY
6
                    D24  Robert HESS
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11   KENNETH A. JOWDY, an individual,          Case No.    BC436632

12                 Plaintiff,

13         v.                                  COMPLAINT FOR:

14   BRYAN BERARD, SERGEI GONCHAR,             (1) MALICIOUS PROSECUTION
     JERE LEHTINEN, GLEN MURRAY,
15   MATTIAS NORSTROM, JOZEF STUMPEL,          (2) INTENTIONAL INTERFERENCE
     JASON WOOLLEY, PHILIP KENNER,             WITH CONTRACT
16   TOMMY CONSTANTINE, and RONALD
     RICHARDS, as individuals; THE LAW
17   OFFICES OF RONALD RICHARDS AND
     ASSOCIATES, a California professional
18   corporation; DOES 1 through 20, inclusive;

19                 Defendants.

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

CITY/CASE: BC436632 LEA/DEPH:
RECEIPT #: CCH503057014
DATE PAID: 04/27/10   08:48:51 AM
PAYMENT: $355.00
RECEIVED:
        CHECK:
        CASH:   355.00
        CHANGE:
        CARD:           0310

## NATURE AND SUMMARY OF THE ACTION

1.      This is a malicious prosecution and tortious interference action against several former and current professional hockey players, their unlicensed financial advisor, Philip Kenner ("Kenner"), their attorney, Ronald Richards ("Richards"), and Tommy Constantine, a convicted drug dealer formerly known as Tommy Hormorvitis ("Constantine") (collectively, "Defendants"). Together, Defendants implemented a coordinated scheme to knowingly disseminate false information about Plaintiff Kenneth A. Jowdy ("Jowdy") in the hope of forcing Jowdy from his controlling interest in lucrative real estate development projects and then acquiring Jowdy's equity interests in those projects at a fraction of their true value. Whenever possible, Defendants cloaked their statements in documents filed with various courts, hoping that legal doctrines such as the "Litigation Privilege" would shield them from liability from their intentionally defamatory statements. Defendants circulated their false claims to the press and to the business community where the projects are located in the hope of damaging Jowdy's reputation as the developer of the projects to scare potential investors away from the projects as long as Jowdy was involved. While not entirely successful, Defendants did damage Jowdy's reputation, perhaps irreparably, and have caused him to lose millions of dollars in the value of his equity interests in the projects that may never be reclaimed.

2.      Worse, Defendants never had probable cause for any of the claims alleged in their lawsuit, either at the time the lawsuit was filed or as it progressed. Jowdy is informed and believes, and on that basis alleges, that Defendants nevertheless pursued frivolous claims against him in an attempt to force him to transfer some or all of his equity and to relinquish control in the real estate projects to them in exchange for a dismissal of the lawsuit. When the Defendants who were parties to the underlying action were actually ordered by the Court to appear for depositions and testify about their allegations under oath, they refused to appear and elected to dismiss their lawsuit instead. Defendants then falsely told the press and others that they had been forced to appear for their depositions during the Olympics against their will. To the contrary, Defendants themselves selected the dates for the depositions, which dates they proposed months after their depositions were requested and noticed and from a 30-day period when Jowdy offered to take the

CALDWELL
LESLIE &
PROCTOR

-1-

depositions.  Only two of the Defendants whose depositions were scheduled actually played in the Olympics at all, and this claim was fabricated to cover up Defendants' unwillingness to testify under oath about the false claims they asserted against Jowdy.

3.      As a result of Defendants' false accusations and unlawful interference, Jowdy has suffered significant damages, including but not limited to attorneys' fees, costs of suit, emotional distress, injury to reputation, loss of time, and losses to his businesses.  Jowdy therefore brings this action against Defendants to recover for the injuries they caused him by litigating their baseless claims.

**PARTIES**

4.      Plaintiff Kenneth A. Jowdy is, and at all times relevant herein was, an individual who resides in Las Vegas, Nevada.

5.      Defendant Ronald Richards is, and at all times relevant herein was, an individual who resides in Los Angeles, California.

6.      Jowdy is informed and believes, and on that basis alleges, that Defendant Bryan Berard is, and at all times relevant herein was, an individual who resides in Providence, Rhode Island.

7.      Jowdy is informed and believes, and on that basis alleges, that Defendant Sergei Gonchar is, and at all times relevant herein was, an individual who resides in Pittsburgh, Pennsylvania.

8.      Jowdy is informed and believes, and on that basis alleges, that Defendant Jere Lehtinen is, and at all times relevant herein was, an individual who resides in Finland.

9.      Jowdy is informed and believes, and on that basis alleges, that Defendant Glen Murray is, and at all times relevant herein was, an individual who resides in Manhattan Beach, California.

10.     Jowdy is informed and believes, and on that basis alleges, that Defendant Mattias Norstrom is, and at all times relevant herein was, an individual who resides in Stockholm, Sweden.

CALDWELL
LESLIE &
PROCTOR

-2-

11.     Jowdy is informed and believes, and on that basis alleges, that Defendant Jozef Stumpel is, and at all times relevant herein was, an individual who resides in Astana, Kazakhstan.

12.     Jowdy is informed and believes, and on that basis alleges, that Defendant Jason Woolley is, and at all times relevant herein was, an individual who resides in Detroit, Michigan.

13.     Defendant Philip Kenner is, and at all times relevant herein was, an individual who resides in Arizona.

14.     Jowdy is informed and believes, and on that basis alleges, that Defendant Tommy Constantine is, and at all times relevant herein was, an individual who resides in Scottsdale, Arizona.

15.     Defendant The Law Offices of Ronald Richards and Associates ("The Law Offices of Ronald Richards") is, and at all times relevant herein was, a California professional corporation with its principal place of business in Beverly Hills, California.

16.     Jowdy is currently unaware of the true names or capacities of the persons or entities sued as DOES 1 through 20 ("Doe Defendants"), and therefore sues the Doe Defendants by fictitious names. Jowdy will amend this Complaint to set forth the true names and capacities of the Doe Defendants when they have been ascertained. Jowdy is informed and believes, and on that basis alleges, that each of the Doe Defendants are in some manner legally responsible for the damages alleged below. Jowdy is informed and believes and on that basis alleges that each of the Defendants named herein, including the Doe Defendants, acted jointly, in concert, and with knowledge of the actions of each of the other Defendants; acted as the agent or servant of each and every one of the other Defendants with respect to the actions complained of herein; acted at all times within the course and scope of said agency; and that each is equally liable for the acts alleged below.

## JURISDICTION

17.     This Court has jurisdiction over this entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000.

18.     Venue is properly laid in this County pursuant to Code of Civil Procedure section 395. Venue is also properly laid in this County because it is the County in which several of

CALDWELL
LESLIE &
PROCTOR

-3-

1  Defendants filed the suit against Jowdy that forms the basis of the First Cause of Action for

2  Malicious Prosecution.

**GENERAL ALLEGATIONS**

**At the Direction of Their "Business Manager," Philip Kenner, the Hockey Players Invest in**

**Entities that Own an Interest in Property in Baja California**

6    19.    In 1998, businessman and golf enthusiast Kenneth Jowdy envisioned bringing a

7  world-class golf resort to a property located in Baja California (the "El Rosario property") and

8  began taking steps to bring that vision to life.

9    20.    Between 1998 and 2002, Jowdy negotiated a lease with an option to purchase

10  portions of the El Rosario property.  He established a company, Baja Development Corporation

11  ("BDC"), to invest in the El Rosario project, and a Mexican company, LOR Management, LLC, to

12  hold the leasehold interests in the El Rosario property as required by Mexican property laws.

13  Jowdy also developed relationships with master planners, landscape architects, golf course

14  designers and others with the goal of eventually building a golf resort on the El Rosario property.

15    21.    In or around July or August 2002, Jowdy was introduced to Philip Kenner, a former

16  minor league hockey player who had established a business as a financial advisor with clients who

17  were largely current and retired players in the National Hockey League.  Jowdy described his

18  plans for the El Rosario property as well as other projects to Kenner, and Kenner told Jowdy that

19  he believed he could help raise money for the El Rosario project.  Jowdy told Kenner that if he

20  helped raise money for the El Rosario project as well as the others, Jowdy would give Kenner an

21  interest in the property.

22    22.    Jowdy and Kenner met one more time on or about Friday, August 2, 2002 to

23  discuss plans for the development of the El Rosario project.  At that time, Kenner had not seen any

24  of the projects, including the El Rosario property and had not asked for any information about any

25  project, but understood that the projects were in the earliest phases of development.  For his part,

26  Jowdy had neither met nor spoken to any of the hockey players who are parties to this Action that

27  Kenner claimed to represent.

28

CALDWELL
LESLIE &
PROCTOR

-4-

23.     Three days later – or around Monday, August 5, 2002 – Kenner's hockey player clients began wiring various amounts of money to BDC for various projects including El Rosario. Shortly thereafter, Jowdy provided promissory notes to the players showing their contribution, and promptly contacted a corporate securities lawyer for advice.  Various additional steps were taken to properly document the hockey players' investments, including preparing an Offering Memorandum and Subscription Agreement for the investments.

24.     A new entity named Diamante Del Mar, LLC ("DDM") was created to hold and manage the future investments in El Rosario.  Various documents were prepared to provide to early investors in the project.  A variety of these documents, including an Offering Memorandum that was provided to Kenner and many of his hockey player clients, specifically laid out the speculative nature of the El Rosario project, the fact that it was Jowdy's first real estate development project, and that no promises could be made that investments in the project would be returned at all, or that they would be returned within any specific period of time.  Subscription Agreements that were prepared contemplated that investors would acknowledge review and receipt of the Offering Memorandum, guarantee that they were qualified for these speculative and unregistered investments, represent that any investment in the El Rosario project was made based solely on the statements in the Offering Memorandum and the Subscription Agreement and not on any other document or oral comment, and agree to personally indemnify DDM and its managing member, Jowdy, if they ever filed an action based on any representations about the El Rosario project other than what appeared in the Offering Memorandum or the Subscription Agreement.

25.     After these documents were prepared, Kenner continued to solicit investments from his hockey player clients for the El Rosario project, and by March 2005, hockey players Bryan Berard, Sergei Gonchar, Glen Murray, Mattias Norstrom, Jozef Stumpel and Jason Woolley had all wired various amounts to either BDC or DDM for the El Rosario project.  Each of these hockey players signed a Subscription Agreement.

### Kenner and Jowdy Raise Funds for the El Rosario Project

26.     From about 2002 to early 2005, Jowdy and Kenner worked to procure funding for the development of the El Rosario project.  They hoped to have a Founders Offering that would

CALDWELL
LESLIE &
PROCTOR

1    generate $50 million – separate and apart from the investments that Kenner's clients had made – to

2    get the project under way.  At Kenner's suggestion, they paid a company referred by hockey

3    player Jason Woolley to develop a brochure for potential founding members, and created a video

4    for the founding members showing what they hoped the El Rosario project would become.  Jowdy

5    also pursued various institutional sources of funding and arranged for DDM to close on the sale of

6    the three primary parcels in the El Rosario property by March 2003.

7             27.     Despite these efforts, however, Jowdy and Kenner had difficulty generating interest

8    from new investors, and therefore decided to establish a similar project in Cabo San Lucas (the

9    "Cabo project") and to use the Cabo project to generate increased interest in the El Rosario

10   project.

11   **At Kenner's Direction, the Hockey Players Invest in Another Entity that Owns an Interest in**

12                              **Property in Cabo San Lucas, Mexico**

13            28.     In or around 2005, Jowdy and Kenner began looking for possible investment sites

14   in Cabo San Lucas, and eventually located a suitable property for the Cabo project (the "Cabo

15   property").  Jowdy negotiated a purchase agreement with the owner and, as required by Mexican

16   property laws, used a Mexican company, Propriedades DDM, to hold the interest in the Cabo

17   property.

18            29.     The purchase price of the Cabo property was $72,825,823.  Jowdy and Kenner

19   agreed that Kenner would contribute the money for the due diligence and the down payment on

20   the Cabo property, and that Jowdy would be responsible for securing financing for the remainder

21   of the acquisition cost and the development of the Cabo project.  It was later agreed that the Cabo

22   property would be owned by Diamante Cabo San Lucas S. De RL De C.V., a new single purpose

23   entity, which would in turn be 99% owned by an entity called Diamante Cabo San Lucas, LLC

24   ("DCSL").

25            30.     Originally, Jowdy and Kenner were to be the sole members of DCSL.  Each of

26   them decided, however, to hold their half-interest in DCSL through another corporate entity.

27   Jowdy formed KAJ Holdings, LLC to hold his interest in DCSL, and Kenner formed Baja

28

CALDWELL
LESLIE &
PROCTOR

1   Ventures 2006, LLC to hold his interest in DCSL.  In exchange for his equity in KAJ Holdings,

2   LLC, Jowdy contributed the interest to which he was entitled in the Cabo project.

3        31.    Jowdy is the sole and managing member of KAJ Holdings, LLC and Kenner is the

4   sole and managing member of Baja Ventures 2006, LLC.

5        32.    Although Kenner agreed to provide the down payment on the Cabo property in

6   return for his interest in DCSL, it became apparent that Kenner did not have the money to do so.

7   Jowdy is informed and believes, and on that basis alleges, that Kenner initially "borrowed" $2.5

8   million from two hockey player clients – Jere Lehtinen and Jozef Stumpel – to purchase his equity

9   interest.

10       33.    Jowdy is informed and believes, and on that basis alleges, that when the

11  "borrowed" and other funds proved insufficient, Kenner began soliciting his hockey player clients

12  for the additional funds for the down payment.

13       34.    Kenner decided to give the hockey players who contributed to the down payment a

14  portion of Kenner's own equity in the project.  Kenner made these hockey player clients, including

15  Bryan Berard, Sergei Gonchar and Mattias Norstrom, members of a new entity, CSL Properties

16  2006, LLC, and arranged it so 8% of the equity Kenner held in DCSL through Baja Ventures

17  2006, LLC would be held by CSL Properties 2006, LLC.

18       35.    Kenner is the sole managing member of CSL Properties 2006, LLC.  Jowdy is not a

19  member of that entity.  Jowdy never solicited any investments from Kenner's hockey player

20  clients with respect to the Cabo project, was not aware of any investment discussions, and never

21  communicated with them about the Cabo project before they agreed to give Kenner money for that

22  project.

23  **Kenner and His Affiliate, Tommy Constantine, Create Problems for the Projects in an**

24  **Attempt to Take Over**

25       36.    By 2006, Jowdy was able to secure a $125,000,000 loan from Lehman Brothers

26  Holdings Inc. ("Lehman Bros.") to purchase the Cabo property and to develop the project.  It was

27  agreed that the first step of the project would be to build the golf course, which would serve as an

28  attraction for potential home purchasers and/or a hotel developer for additional sites on the

CALDWELL
LESLIE &
PROCTOR

property.  Kenner and Jowdy were both paid salaries from DCSL for their work in developing the Cabo project.

37.    Since the Cabo property was purchased in 2006, Jowdy has been working continuously to arrange for the development of a world class golf resort on the property.  The golf course on the Cabo property was opened in or around October 2009 to rave reviews (including being featured on the cover of *Links* magazine), and DCSL is actively attempting to sell home sites and other properties within the Cabo project.

38.    However, by or around 2007, disagreements had arisen between Jowdy and Kenner concerning the development of the Cabo project.  Ultimately, an affiliate of Kenner's – Tommy Constantine – attempted to insert himself into Jowdy and Kenner's relationship and negotiate a deal between Jowdy and Kenner whereby Jowdy would give up some of his equity in the Cabo project if a new joint partner could be found.  Constantine also proposed that he himself should become a co-managing member of DCSL with Jowdy, and Jowdy is informed and believes, and on that basis alleges, that Constantine intended to acquire some or all of Jowdy's equity in the Cabo project for himself in exchange for no payment whatsoever.

39.    Constantine told Jowdy that unless he acquiesced to these demands, Kenner would sue Jowdy and claim that he had stolen funds relating to the projects, publish embarrassing information about Jowdy's friends and potential investors, and contact Lehman Bros. to claim that Jowdy had mismanaged the Cabo project.  When it became clear that the disagreements between Jowdy and Kenner could not be resolved, Jowdy terminated Kenner's employment with DCSL in or around May of 2008.

40.    Jowdy later learned that all along Constantine had been spreading negative information about Jowdy, namely that Constantine had contacted Lehman Bros. and made false and extremely disparaging comments about Jowdy's performance and conduct as the manager of the Cabo project, including that Jowdy had wasted the funds Lehman Bros. had disbursed to the Cabo project and that Jowdy was incapable of completing the project.

41.    Shortly thereafter Lehman Bros. went bankrupt in September 2008, thus eliminating the funding of the loan to DCSL.  In February 2009, a creditor of Lehman Bros. – a

CALDWELL
LESLIE &
PROCTOR

-8-

1   European bank – acquired the note held on the Cabo property by Lehman Bros., and Jowdy was

2   able to restructure the note to provide the additional funding for the project.

3   **Kenner Hires Attorney Ronald Richards and Convinces the Hockey Players to File a**

4   **Baseless Lawsuit Against Jowdy**

5     42. At or around the same time, several of Kenner's hockey player clients began filing

6   lawsuits and other proceedings against Kenner in connection with his management of their funds.

7   For example, Owen Nolan commenced an arbitration against Kenner in Arizona (the "Nolan

8   arbitration") which ultimately led to a multi-million dollar award in Nolan's favor, and Joe Juneau

9   and Ethan Moreau later filed actions in federal court in California.  Each of these lawsuits alleged,

10  among other things, that Kenner had induced his clients – based upon his fraudulent

11  misrepresentations – to invest in projects, including the El Rosario and Cabo projects, that were

12  not viable.

13    43. Kenner, for his part, attempted to bring a lawsuit on behalf of certain of his entities

14  against Jowdy in Arizona.  That lawsuit, however, was eventually dismissed with prejudice after

15  questions about the veracity of documents Kenner had submitted to the Court were raised (a loan

16  agreement purportedly signed by Jowdy), and the lawyers representing Kenner's entities withdrew

17  from the lawsuit.

18    44. In or around 2008, Kenner hired attorney Ronald Richards of The Law of Offices

19  of Ronald Richards to defend him in the lawsuits brought by his former clients, including the

20  Nolan arbitration.  Richards had previously represented Constantine in cases filed by other hockey

21  players against Kenner and Constantine.  Kenner's defenses in the Nolan arbitration (among

22  others) included that all risks of the El Rosario and Cabo projects had been adequately disclosed to

23  his clients, that his clients understood the speculative nature of the investments, and that the

24  projects were viable even if not currently liquid.  These defenses were supported by testimony that

25  was elicited by Richards from, among others, Jason Woolley and Brian Berard.

26    45. Jowdy also testified at the Nolan arbitration as a third-party witness, which took

27  place in May 2009.  In response to questions by Richards, Jowdy explained the viability of the El

28  Rosario and Cabo projects, their substantial (but challenging to quantify) value, and his own best

CALDWELL
LESLIE &
PROCTOR

1  efforts to develop the properties and generate returns on the investment that he and others had

2  made in the projects.

3      46.    Jowdy is informed and believes, and on that basis alleges, that as the lawsuits

4  against Kenner progressed, Kenner became increasingly concerned that his other hockey player

5  clients would also begin to pursue claims against him based on his management of their funds;

6  that Kenner was aware the Cabo project had received additional funding; that in or around 2009,

7  Kenner approached certain of his former hockey player clients, including Berard, Gonchar,

8  Lehtinen, Murray, Norstrom, Stumpel and Woolley and encouraged them to seek recompense

9  elsewhere – namely, from Jowdy – and try to force Jowdy to give them increased equity in the El

10 Rosario and Cabo projects.

11     47.    Accordingly, on or about June 18, 2009, Richards – while still employed as

12 Kenner's attorney in actions brought by some of Kenner's hockey player clients – filed two

13 virtually identical lawsuits on behalf of certain hockey players, stating claims against Jowdy based

14 on false assertions regarding Jowdy's management of the El Rosario and Cabo properties:  (1) *de*

15 *Vries, et al. v. Jowdy*, Los Angeles Superior Court Case No. BC 416081 (relating to the El Rosario

16 property) and (2) *Nash, et al. v. Jowdy*, Los Angeles Superior Court Case No. BC 416082 (relating

17 to the Cabo property).

18     48.    The plaintiffs named in the *de Vries* action were Greg de Vries, Jason Woolley,

19 Chris Simon, Mattias Norstrom, Vladimir Tsyplakov, Jay McKee, Raymond Murray, Glen

20 Murray, Bryan Berard, Darryl Sydor, Dimitri Khristich, Sergei Gonchar, Michael Peca, and Jozef

21 Stumpel – hockey players clients of Kenner's who had allegedly invested funds in the El Rosario

22 project at his direction.  The plaintiffs named in the *Nash* were Tyson Nash, Greg de Vries, Turner

23 Stevenson, Mattias Norstrom, Vladimir Tsyplakov, Bryan Berard, Steve Rucchin, Brian

24 Campbell, Darryl Sydor, Dimitri Khristich, Sergei Gonchar, Michael Peca, Jere Lehtinen and

25 Jozef Stumpel – hockey players clients of Kenner's who had allegedly invested funds in the Cabo

26 project at his direction (together, the *de Vries* and *Nash* plaintiffs are referred to as the "Hockey

27 Players").

28

CALDWELL
LESLIE &
PROCTOR

49.     Both the *de Vries* and *Nash* complaints alleged the following causes of action against Jowdy in his personal capacity:  (1) breach of fiduciary duty, (2) fraud, (3) constructive trust and appointment of receiver, (4) unjust enrichment and (5) accounting.  Both complaints further alleged that the Hockey Players had invested in limited liability companies, that those LLCS invested in other limited liability companies, and that those LLCs were shareholders of Mexican corporations that own property in Mexico.

50.     Both complaints failed, however, to reveal critical information that *completely negated* the Hockey Players' causes of action:

a.     That it was Kenner, not Jowdy, who had solicited the Hockey Players' investments in the projects;

b.     That Jowdy had never made any representations to the Hockey Players about the projects before they had wired the investments;

c.     That the Hockey Players who had invested in the El Rosario property had all signed Subscription Agreements in which they acknowledged that any investment in the El Rosario project was made based solely on the statements in the Offering Memorandum and the Subscription Agreement and not on any other document or oral comment;

d.     That the Hockey Players who had invested in the Cabo property were all members of CSL Properties 2006, LLC, an entity of which Kenner was the managing member and which Jowdy had no affiliation with;

e.     That certain of the Hockey Players – for example, Lehtinen and Stumpel – had not even invested in the Cabo property; and

f.     That Jowdy had never promised the Hockey Players any return on their investments.

51.     Both complaints also made numerous additional false and salacious allegations – some of which were later withdrawn – that, among other things, Jowdy arranged for porn stars, strippers, escorts and party girls to attend functions at the projects' expense, that an arrest warrant had been issued for Jowdy in Mexico, that labor disputes in Mexico had led to liens of $2.5 million against the properties, and that Jowdy had falsified financial statements.

CALDWELL
LESLIE &
PROCTOR

-11-

52.     Jowdy is informed and believes, and on that basis alleges, the following: that at or around the time the *de Vries* and *Nash* complaints were filed, Ronald Richards and several of the Hockey Players – including Berard, Gonchar, Lehtinen, Glen Murray, Norstrom, Stumpel and Woolley – knew that the allegations contained in the complaints were false and that the claims asserted against Jowdy were baseless; that at the time the *de Vries* and *Nash* complaints were filed, many of the Hockey Players had not even seen copies of the complaints and did not know that Richards was filing these lawsuits on their behalf and at Kenner's direction; and that at the time the *de Vries* and *Nash* complaints were filed, and as they continued to be litigated, the Hockey Players received their information about the lawsuits (if any) primarily through Kenner.

53.     Nevertheless, immediately after the *de Vries* and *Nash* actions were filed, Richards issued press releases and went on television to announce the filing of the lawsuits and to claim that Jowdy had "squandered" $25 million of the Hockey Players' money.  Then, on July 2, 2009, Richards filed another baseless lawsuit against Jowdy – this time on behalf of Kenner – in Los Angeles Superior Court, alleging that settlement emails sent by Jowdy's attorney constituted extortion. *Kenner v. Jowdy et al.*, Los Angeles Superior Court No. BC 417057.  Richards also propounded discovery on Jowdy in the *de Vries* and *Nash* actions that had no bearing on the issues – for example, requesting that Jowdy turn over his dependents' laundry receipts – and was demanded solely for the improper purpose of harassing Jowdy.

54.     Jowdy is informed and believes, and on that basis alleges, that Richards committed each of the above-described acts at Kenner's direction.

55.     Jowdy is also informed and believes, and on that basis alleges, that in or around this same period, Constantine furthered his and Kenner's scheme of spreading negative information about Jowdy by contacting the European bank that had acquired the note on the Cabo property to make additional disparaging remarks about Jowdy.

**The Court Sustains Jowdy's Demurrer to the First Amended Complaint and Orders the**
**Hockey Players to Bring Their Lawsuit Derivatively**

56.     Because the Hockey Players invested in business entities – not with Jowdy personally – Jowdy filed demurrers to both the *de Vries* and *Nash* complaints on July 20, 2009 on

CALDWELL
LESLIE &
PROCTOR

-12-

1  the grounds that they were derivative actions that the Hockey Players lacked standing to bring.

2  Jowdy's demurrers also pointed out the numerous other fatal defects in the *de Vries* and *Nash*

3  complaints – including that the Hockey Players had completely failed to identify a single

4  representation that Jowdy had made to them about their investments in the El Rosario and Cabo

5  projects. Jowdy also filed a special motion to strike in the *Kenner* action on the grounds that

6  Kenner's entire lawsuit was barred by California's anti-SLAPP statute, Cal. Civ. Proc. Code §

7  425.16.

8      57.    While the demurrers to the original *de Vries* and *Nash* actions were pending, the

9  Court consolidated the two cases and ordered the Hockey Players to file a single, amended

10 pleading that consolidated the allegations of those two complaints. The Court also deemed the *de*

11 *Vries*, *Nash* and *Kenner* actions related and set the hearing date for demurrer and the anti-SLAPP

12 motion for November 23, 2009.

13     58.    On October 16, 2009 – nearly two weeks after the deadline established by the Court

14 – the Hockey Players filed a First Amended Complaint ("FAC") against Jowdy, combining their

15 allegations about the El Rosario and Cabo projects and asserting nearly all of the same claims.

16 However, in a blatant attempt to plead around the derivative nature of the action, the Hockey

17 Players alleged a **second** set of false facts in their FAC: that they had invested with Jowdy

18 "individually" and "personally." At other points, the Hockey Players also falsely alleged that

19 Jowdy owed them "fiduciary duties resulting from his responsibilities as managing officer" in

20 LLCs in which they invested – even though Richards, Kenner and the Hockey Players all knew

21 that Jowdy was *not* the managing member of those entities.

22     59.    Thus, the FAC pled two contradictory and false factual scenarios: (1) that the

23 Hockey Players had invested in LLCs in which Jowdy was the managing member, and (2) that the

24 Hockey Players had invested with Jowdy "individually." As a result, the FAC was untruthful,

25 internally inconsistent, and inconsistent with the Hockey Players' earlier pleadings. It also

26 continued to falsely allege that Jowdy had made representations to the Hockey Players about the

27 development of the El Rosario and Cabo properties, without providing a single example of a

28 specific representation that Jowdy made.

CALDWELL
LESLIE &
PROCTOR

60.     Accordingly, on October 28, 2009, Jowdy filed a demurrer to the FAC on the grounds that the Hockey Players still had not brought their action derivatively and still had not stated an actionable claim against him in his individual capacity.  In their opposition, the Hockey Players offered a **third** set of false facts, now claiming that Jowdy was their financial advisor and that they had given him money in that capacity.  Plaintiffs also attempted to backpedal on their prior allegations, going so far as to claim that they had never invested in any LLCs.

61.     At the hearing on November 23, 2009, the Court sustained Jowdy's demurrer to the FAC.  The Court ruled that the Hockey Players claims were all derivative and had been improperly pled.  The Court further noted that the Hockey Players were judicially estopped from pleading inconsistent facts and that their "stream-of-consciousness" allegations were incomprehensible.  The Court therefore dismissed the FAC, but granted the Hockey Players one final chance to amend their claims for breach of fiduciary duty, fraud, intentional misrepresentation and an accounting – providing that the Hockey Players "were able to plead suitable derivative claims and fraud with specificity."  The Court also granted Jowdy's anti-SLAPP motion in the *Kenner* action and entered final judgment against Kenner.

**The Hockey Players Fail to File a Derivative Complaint and Refuse to Appear for Deposition**

62.     On December 7, 2009, the Hockey Players filed their Second Amended Complaint ("SAC") against Jowdy.  Despite the Court's order that the SAC be brought derivatively or not at all, the Hockey Players failed yet again to state derivative claims against Jowdy.  Rather, they pled a **fourth** set of facts:  that the Hockey Players had "loaned" their investments to Jowdy, as well as a **fifth** set of facts:  that the Hockey Players were "joint venturers" with Jowdy.  They also falsely claimed that the brochure and video that had been prepared for the Founders' Offering for the El Rosario project contained representations made by Jowdy – even though the Hockey Players had all signed the Subscription Agreement, and the video and brochure were not prepared for the Hockey Players.  While the Hockey Players also made vague allegations about their supposed losses, they conceded that as of 2008, the Cabo property had been valued at $450 million.

63.     Accordingly, on January 11, 2010, Jowdy filed a demurrer to the SAC and noticed it for hearing on February 18, 2010.  Because the Court had already ruled that the SAC was the

CALDWELL
LESLIE &
PROCTOR

-14-

1  Hockey Players' last chance to attempt to bring their claims against him, Jowdy requested that the
2  demurrer to the SAC be sustained in its entirety without leave to amend.

3      64.    During the same time period, Jowdy also requested that Richards provide dates on
4  which the Hockey Players could be deposed so that Jowdy could challenge the veracity of their
5  allegations.  Despite Jowdy's repeated requests for a deposition schedule, however, Richards and
6  his colleagues refused to provide Jowdy with any dates or locations for the Hockey Players'
7  depositions.  Therefore, on December 24, 2009, Jowdy noticed the depositions of the Hockey
8  Players for consecutive dates in Los Angeles beginning on January 12, 2010.

9      65.    There was no communication about the depositions until the first Hockey Player
10 failed to appear for his noticed deposition on January 12, 2010.  When Richards continued to
11 refuse to produce the Hockey Players for their depositions, Jowdy applied *ex parte* for a
12 deposition schedule.

13     66.    During an *ex parte* hearing held on January 25, 2010, the Court ordered that
14 Richards provide dates on which the Hockey Players could come to Los Angeles to be deposed
15 between the date of the proceeding and February 26, 2010.  After purportedly speaking with a
16 representative of the Hockey Players, an associate from Richards' office represented that the
17 Hockey Players would appear for their depositions in Los Angeles between February 16, 2010 and
18 February 26, 2010.

19     67.    Thus, on January 25, 2010, the Court ordered each of the Hockey Players to appear
20 for deposition in Los Angeles on one of the following dates:  February 16, 17, 18, 19, 22, 23, 24,
21 25 or 26, 2010.  The Court ordered that the Hockey Players' depositions would take place from
22 9:00 a.m. to 12:00 p.m. or 1:00 p.m. to 4:00 p.m.  The Court further ordered that the Hockey
23 Players were to provide Jowdy with a schedule stating which of them would appear on which date
24 and time by no later than February 11, 2010.

25 **The Hockey Players Violate the Court's Order to Appear for Deposition and Then**
26 **Voluntarily Dismiss the Lawsuit**

27     68.    By February 11, 2010, Jowdy had still not received a schedule indicating which
28 Hockey Player would be appearing on which dates and times for their Court-ordered depositions.

CALDWELL
LESLIE &
PROCTOR

-15-

1  Jowdy therefore again asked Richards for a deposition schedule.  In response, Richards' office

2  represented that the Hockey Players were booking their flights that day, but still did not provide

3  Jowdy with the required deposition schedule.  Indeed, Richards' office did not provide Jowdy with

4  a deposition schedule until after the close of business on Friday, February 12, 2010 (a court

5  holiday).  At that time, Richards gave no indication whatsoever that the depositions would not go

6  forward as ordered.

7       69.    The first deposition was scheduled to occur on the next court day, 9:00 a.m. on

8  February 16, 2010.  Despite the Court's order, no Hockey Player appeared to be deposed.  Instead,

9  an associate from The Law Offices of Ronald Richards appeared at the deposition to make a

10  record of the non-appearance, but refused to state whether or not the Hockey Players would be

11  appearing for depositions later that week.  Although Jowdy made numerous attempts to contact

12  Richards to determine whether any of the other Hockey Players would be appearing for their

13  Court-ordered depositions that week, Richards and his colleagues ignored Jowdy's inquiries.

14       70.    It was not until Thursday, February 18, 2010 – the day that Jowdy's demurrer to the

15  SAC had been noticed for hearing – that Jowdy was informed by reading an online news story that

16  Richards had apparently filed a dismissal of the Hockey Players' action earlier that week, and had

17  been representing to the press that the Hockey Players had not appeared for their Court-ordered

18  depositions because the dates conflicted with the 2010 Olympics.  This online news story failed to

19  reveal that sixteen of the nineteen players were not competing in the 2010 Olympics and that the

20  dates for their depositions had been selected by Richards' office.  It also failed to reveal that less

21  than one week earlier, Richards' office had represented that the Hockey Players would be

22  appearing for their depositions.

23       71.    On February 19, 2010, Richards finally served Jowdy with a copy of a voluntary

24  dismissal of the lawsuit that had been stamped "received" by the clerk's office on February 16,

25  2010.  That dismissal was later deemed filed as of February 19, 2010.

26       72.    As a result of the false and disparaging accusations made in and in furtherance of

27  these lawsuits, Jowdy has suffered significant damages, including but not limited to attorneys'

28  fees, costs of suit, emotional distress, injury to reputation, loss of time, and losses to his

CALDWELL
LESLIE &
PROCTOR

-16-

1   businesses.  While the Cabo project survived the Lehman Bros. bankruptcy and is poised for

2   success, the baseless claims asserted by Defendants were widely reported and caused significant

3   interference with the projects' future prospects and Jowdy's equity interest in the Cabo property.

**FIRST CAUSE OF ACTION**

**(Malicious Prosecution Against Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel, Woolley, Kenner, Richards, The Law Offices of Ronald Richards and Associates and DOES 1-20)**

8   73.   Jowdy re-alleges and incorporates by reference each and every allegation contained

9   in paragraphs 1 through 72, inclusive.

10  74.   On June 18, 2009, Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel,

11  Woolley, Kenner, Richards and The Law Offices of Ronald Richards initiated the *de Vries* and

12  *Nash* actions against Jowdy in the Superior Court of the State of California, Los Angeles County.

13  The *de Vries* and *Nash* actions were later consolidated by the Court.  They alleged claims against

14  Jowdy for (1) breach of fiduciary duty, (2) fraud, (3) intentional misrepresentation, (4)

15  constructive trust and appointment of receiver, (5) unjust enrichment and (6) accounting, and

16  sought over $15 million in damages from Jowdy.

17  75.   On or about February 16, 2010, Berard, Gonchar, Lehtinen, Murray, Norstrom,

18  Stumpel, Woolley, Kenner, Richards and The Law Offices of Ronald Richards voluntarily

19  dismissed the consolidated *de Vries* and *Nash* actions against Jowdy.

20  76.   Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel, Woolley, Kenner,

21  Richards and The Law Offices of Ronald Richards acted without probable cause in bringing the *de*

22  *Vries* and *Nash* actions against Jowdy in that they did not honestly and reasonably believe there

23  were grounds for their claims at the time the actions were filed or as the actions progressed.

24  77.   Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel, Woolley, Kenner,

25  Richards and The Law Offices of Ronald Richards acted maliciously in bringing the *de Vries* and

26  *Nash* actions against Jowdy in that these actions were brought for the improper purpose of forcing

27  him to give up equity in the El Rosario and Cabo projects and with a desire to annoy and wrong

28  Jowdy.

CALDWELL
LESLIE &
PROCTOR

-17-

78.   Jowdy has suffered actual and consequential damages as a direct and proximate result of Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel, Woolley, Kenner, Richards and The Law Offices of Ronald Richards bringing the *de Vries* and *Nash* actions against him, including but not limited to attorneys' fees, costs of suit, emotional distress, injury to reputation, loss of time, and losses to his businesses.

79.   Jowdy is informed and believes, and on that basis alleges, that Berard, Gonchar, Lehtinen, Murray, Norstrom, Stumpel, Woolley, Kenner, Richards and The Law Offices of Ronald Richards' acts were willful, wanton, malicious and oppressive in that they filed the *de Vries* and *Nash* actions in bad faith to vex, annoy and wrong Jowdy and with a conscious disregard for Jowdy's rights.  Their acts therefore warrant the imposition of punitive or exemplary damages under Cal. Civ. Code § 3294.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Contract Against Kenner, Constantine and DOES 1-20)

80.   Jowdy re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 79, inclusive.

81.   On or about September 2006, Jowdy entered into a written contract with KAJ Holdings, LLC to hold his interest in DCSL, which, in turn, owns 99% of the Mexican corporation that owns the Cabo property.

82.   Jowdy is informed and believes, and on that basis alleges, that Kenner committed a series of acts designed to interfere with Jowdy's ability to realize the benefits of his purchase of equity in KAJ Holdings, LLC, including, but not limited to, filing a series of baseless lawsuits and false documents against Jowdy, and inducing his Hockey Player clients to do the same.

83.   Jowdy is informed and believes, and on that basis alleges, that Constantine also committed a series of acts designed to interfere with Jowdy's ability to realize the benefits of his purchase of equity in KAJ Holdings, LLC, including, but not limited to, making disparaging and false statements to Lehman Bros. and the European bank that later acquired the note on the Cabo property regarding Jowdy's management abilities and conduct.

CALDWELL
LESLIE &
PROCTOR

-18-

84.     Jowdy is informed and believes, and on that basis alleges, that Kenner and Constantine knew of Jowdy's interest in the Cabo property when they committed the foregoing acts of interference.

85.     Jowdy is informed and believes, and on that basis alleges, that the foregoing acts interfered with Jowdy's contract with KAJ Holdings, LLC, by, among other things, causing a loss in value to Jowdy's equity interest in the Cabo property.

86.     Jowdy has suffered actual and consequential damages as a direct and proximate result of Kenner and Constantine's intentional interference with his contract with KAJ Holdings, LLC, including but not limited to emotional distress and losses in value to his equity interest in the Cabo Property.

87.     Jowdy is informed and believes, and on that basis alleges, that Kenner and Constantine's acts were willful, wanton, malicious and oppressive in that they were committed for the purpose of attempting to force Jowdy to transfer some or all of his equity in DCSL and to relinquish control in the real estate projects to them in a conscious disregard for Jowdy's rights. Their acts therefore warrant the imposition of punitive or exemplary damages under Cal. Civ. Code § 3294.

///
///
///
///
///
///
///
///
///
///
///
///

CALDWELL
LESLIE &
PROCTOR

-19-

## PRAYER FOR RELIEF

WHEREFORE, Jowdy hereby prays that judgment be awarded in his favor and against all Defendants as follows:

1.  For actual and consequential damages according to proof, but in any event no less than $5 million;

2.  For punitive damages;

3.  For all fees and costs of suit to which he is entitled by law; and

4.  For such other and further relief as the Court deems appropriate and proper.

DATED: April 26, 2010                    Respectfully submitted,

                                         CALDWELL LESLIE & PROCTOR, PC
                                         ROBYN C. CROWTHER
                                         MICHAEL D. ROTH
                                         ARWEN R. JOHNSON


                                    By   _Robyn C. Crowther_ AJ
                                         ROBYN C. CROWTHER
                                         Attorneys for Plaintiff KENNETH A. JOWDY

CALDWELL
LESLIE &
PROCTOR

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robyn C. Crowther, SBN 193840<br>Michael D. Roth, SBN 217464<br>CALDWELL LESLIE & PROCTOR, PC<br>1000 Wilshire Boulevard, Suite 600<br>Los Angeles, CA 90017<br>TELEPHONE NO.: (213) 629-9040   FAX NO.: (213) 629-9022<br>ATTORNEY FOR *(Name):* Plaintiff | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>APR 27 2010<br><br>John A. Clarke, Executive Officer/Clerk<br>By_____ Deputy<br>AMBER LAFLEUR-CLAYTON |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME: Jowdy v. Berard, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: BC436632 |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) □ Limited (Amount demanded is $25,000 or less) | □ Counter   □ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one box** below for the case type that best describes this case:

**Auto Tort**
- □ Auto (22)
- □ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- □ Asbestos (04)
- □ Product liability (24)
- □ Medical malpractice (45)
- □ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- □ Business tort/unfair business practice (07)
- □ Civil rights (08)
- □ Defamation (13)
- □ Fraud (16)
- □ Intellectual property (19)
- □ Professional negligence (25)
- [X] Other non-PI/PD/WD tort (35)

**Employment**
- □ Wrongful termination (36)
- □ Other employment (15)

**Contract**
- □ Breach of contract/warranty (06)
- □ Rule 3.740 collections (09)
- □ Other collections (09)
- □ Insurance coverage (18)
- [X] Other contract (37)

**Real Property**
- □ Eminent domain/Inverse condemnation (14)
- □ Wrongful eviction (33)
- □ Other real property (26)

**Unlawful Detainer**
- □ Commercial (31)
- □ Residential (32)
- □ Drugs (38)

**Judicial Review**
- □ Asset forfeiture (05)
- □ Petition re: arbitration award (11)
- □ Writ of mandate (02)
- □ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- □ Antitrust/Trade regulation (03)
- □ Construction defect (10)
- □ Mass tort (40)
- □ Securities litigation (28)
- □ Environmental/Toxic tort (30)
- □ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- □ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- □ RICO (27)
- □ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- □ Partnership and corporate governance (21)
- □ Other petition *(not specified above)* (43)

2. This case □ is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. □ Large number of separately represented parties   d. □ Large number of witnesses
   b. □ Extensive motion practice raising difficult or novel   e. □ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. □ Substantial amount of documentary evidence   f. □ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. □ nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action *(specify):* 2

5. This case □ is [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 26, 2010

Robyn C. Crowther, SBN 193840
(TYPE OR PRINT NAME)                                         ► *Robyn C. Crowther* AJ
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                        **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check *one* box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability (*not asbestos or
    toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice—
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract (*not unlawful detainer
        or wrongful eviction*)
    Contract/Warranty Breach—Seller
        Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (*non-
        domestic relations*)
    Sister State Judgment
    Administrative Agency Award
        (*not unpaid taxes*)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
        harassment*)
    Mechanics Lien
    Other Commercial Complaint
        Case (*non-tort/non-complex*)
    Other Civil Complaint
        (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim
    Other Civil Petition

BC436632

| SHORT TITLE:  Jowdy v. Berard, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 7 [ ] HOURS/ [X] DAYS

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (See Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Auto Tort | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Medical Malpractice (45) | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |

| LACIV 109 (Rev. 01/07)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC, rule 2.0<br>Page 1 of 4<br>LA-4B1 |
|---|---|---|

| SHORT TITLE: Jowdy v. Berard, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover<br>Sheet Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ | A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ | A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☒ | A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ | A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ | A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ | A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ | A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ | A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ | A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ | A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ | A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ | A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ | A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ | A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☒ | A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ | A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ | A7300  Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ | A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ | A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ | A6032  Quiet Title | 2. ,6. |
| | | ☐ | A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer - Commercial (31) | ☐ | A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Residential (32) | ☐ | A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Drugs (38) | ☐ | A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ | A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ | A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

SHORT TITLE: Jowdy v. Berard, et al.

CASE NUMBER

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Judicial Review (Cont'd.) | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: Jowdy v. Berard, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: 9255 Doheny Road, Suite 602 |
|---|---|
| ☐1. ☒2. ☒3. ☐4. ☒5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: West Hollywood | STATE: CA | ZIP CODE: 90069 | |
|---|---|---|---|

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Los Angeles</u> <u>Superior Court</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>April 26, 2010</u>

*Robyn C. Crowther* AJ

(SIGNATURE OF ATTORNEY/FILING PARTY)
Robyn C. Crowther, SBN 193840

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.