# EXHIBIT 2

Case 2:15-cv-07116-JFB-SIL Document 94-26 Filed 10/02/17 Page 2 of 14 PageID #: 30063

Case 5:16-cr-00264-DNH Document 24 Filed 09/27/17 Page 1 of 12





**Continental Trust**
CORPORATION LIMITED

September 26, 2017

United States District Court Clerk's Office
U.S. District Court, Northern District of New York
U.S. Courthouse and Federal Building
100 South Clinton Street
Syracuse, New York 13261

TO WHOM IT MAY CONCERN:

**Re: United States of America v. Christopher Swartz, Criminal No.:5:16-cr-00264 (DNH)**

In respect of the above matter, Continental Trust Corporation Limited ("CTCL") hereby submits a total claim in the amount of USD 409,000.00 plus accrued interest.

Enclosed please find documentary evidence of the above noted indebtedness. On May 18, 2015, Focus Franchising Inc. issued a promissory note to Stilton Management Limited ("SML") in the amount of USD 109,000.00. This promissory note was assigned by SML to CTCL by way of an assignment dated November 2, 2015.

Also enclosed please find a second promissory note dated January 27, 2014 in the amount of USD 300,000.00 issued to CTCL by Focus Franchising Inc.

The principal amount of USD 409,000.00 is still outstanding and owing to CTCL and CTCL has not received any interest owing pursuant to the promissory notes.

Please note that CTCL was only made aware of its right to put forward its claim 2 weeks ago. CTCL has never received any formal notification from the United States Department of Justice.

Any assistance in collecting this outstanding debt would be most appreciated.

Thank you.

Yours sincerely,

Colin G. Hames
Director

CC: Richard S. Hartunian, United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261
ATTN: Tamara B. Thomson, Assistant U.S. Attorney

5th Floor, Richmond House, 12 Par-la-Ville Road • P.O. Box HM 646, Hamilton HM CX, Bermuda
Tel (441) 405-8100 • Fax (441) 405-8107

*Licensed to conduct Trust Business by the Bermuda Monetary Authority*

## FOCUS FRANCHISING, INC.
## CONVERTIBLE PROMISSORY NOTE

$109,000.00                                                                May 18, 2015

FOR VALUE RECEIVED, FOCUS FRANCHISING, INC., a Florida corporation, its assigns and successors (the "Company"), hereby promises to pay to the order of CONTINENTAL TRUST CORPORATION LIMITED, (the "Holder"), whose principal address is 5th Floor, Richmond House, 12 Par-la-Ville Road, Hamilton HM08, Bermuda, in immediately available funds, the total principal sum of One Hundred Nine Thousand Dollars ($109,000.00). The principal hereof and any unpaid accrued interest thereon shall be due and payable on or before 5:00 p.m., Eastern Standard Time, on November 30, 2015 (unless such payment date is accelerated as provided in Section 8 hereof). Payment of all amounts due hereunder shall be made at the address of the Holder provided hereinbefore. Interest shall accrue at the rate of twelve percent (12%) per annum on this Note from the Funding Date (as defined below) and shall continue to accrue until all unpaid principal and interest is paid in full.

1. **REPAYMENT OF THE LOAN.** The loan shall be amortized over six (6) months and payable as follows: Interest only payments at a rate of 12% per annum shall be paid on the 19th day of August and November of this year until November 30, 2015, at which time the then principal and all outstanding interest owed thereon shall become due and payable in full.

2. **PREPAYMENT.** The Company may, at its option, at any time and from time to time, prepay all or any part of the principal balance of this Note, without penalty or premium, provided that concurrently with each such prepayment the Company shall pay accrued interest on the principal, if any, so prepaid to the date of such prepayment.

3. **CONVERSION.** The Holder is entitled, at its option, at any time beginning on the date hereof, and in whole or in part, to convert the outstanding principal amount of this Note, or any portion of the principal amount hereof, and any accrued interest, into shares of the common stock of the Company. Any amounts Holder elects to convert will be converted into common stock at a conversion price which is the lower of (i) $0.50 or (ii) fifty percent (50%) of the three (3) day average closing bid price immediately prior to the delivery of a notice of conversion to the Company (the "Conversion Price").

4. **CONVERSION LIMITATION.** Notwithstanding Section 3 above, the Holder may not convert any outstanding amounts due under this Note if at the time of such conversion the amount of common stock issued for the conversion, when added to other shares of Company common stock owned by the Holder or which can be acquired by Holder upon exercise or conversion of any other instrument, would cause the Holder to own more than nine and nine-tenths percent (9.9%) of the Company's outstanding common stock.

5. **CONVERSION PRICE ADJUSTMENTS.** In the event the Company should at any time after the date hereof do either of the following: i) fix a record date for the

1

effectuation of a split or subdivision of the outstanding common stock of the Company, or ii) grant the holders of the Company's common stock a dividend or other distribution payable in additional shares of common stock without the payment of any consideration by such holder for the additional shares of common stock ("Stock Adjustment"), then, as of the record date (or the date of such Stock Adjustment if no record date is fixed), the conversion price of this Note shall be appropriately adjusted so that the number of shares of common stock issuable upon conversion of this Note shall be adjusted in proportion to such change in the number of outstanding shares in order to insure such Stock Adjustment does not decrease the conversion value of this Note.

6. **RESERVATION AND LISTING OF SECURITIES.** The Company shall at all times reserve and keep available out of its authorized shares of common stock, solely for the purpose of issuance upon the conversion of this Note, such number of shares of common stock as would be necessary to convert the entire amount due and owing under the terms of this Note if Holder elected to convert said amount under Section 2 hereof.

7. **DEFAULT** The occurrence of any one of the following events shall constitute an Event of Default:

   (a) The non-payment, when due, of any principal or interest pursuant to this Note;

   (b) The material breach of any representation or warranty in this Note. In the event the Holder becomes aware of a breach of this Section 8(b), the Holder shall notify the Company in writing of such breach and the Company shall have twenty business days after notice to cure such breach;

   (c) The breach of any covenant or undertaking, not otherwise provided for in this Section 8;

   (d) The commencement by the Company of any voluntary proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, receivership, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or the adjudication of the Company as insolvent or bankrupt by a decree of a court of competent jurisdiction; or the petition or application by the Company for, acquiescence in, or consent by the Company to, the appointment of any receiver or trustee for the Company or for all or a substantial part of the property of the Company; or the assignment by the Company for the benefit of creditors; or the written admission of the Company of its inability to pay its debts as they mature; or

   (e) The commencement against the Company of any proceeding relating to the Company under any bankruptcy, reorganization, arrangement, insolvency, adjustment of debt, receivership, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, provided, however, that the commencement of such a proceeding

shall not constitute an Event of Default unless the Company consents to the same or admits in writing the material allegations of same, or said proceeding shall remain undismissed for 20 days; or the issuance of any order, judgment or decree for the appointment of a receiver or trustee for the Company or for all or a substantial part of the property of the Company, which order, judgment or decree remains undismissed for 20 days; or a warrant of attachment, execution, or similar process shall be issued against any substantial part of the property of the Company.

Upon the occurrence of any Default or Event of Default, the Holder, may, by written notice to the Company, declare all or any portion of the unpaid principal amount due to Holder, together with all accrued interest thereon, immediately due and payable, in which event it shall immediately be and become due and payable, provided that upon the occurrence of an Event of Default as set forth in paragraph (d) or paragraph (e) hereof, all or any portion of the unpaid principal amount due to Holder, together with all accrued interest thereon, shall immediately become due and payable without any such notice.

8. *NOTICES.* Notices to be given hereunder shall be in writing and shall be deemed to have been sufficiently given if delivered personally or sent by the then current email address, overnight courier, or by facsimile transmission. Notice shall be deemed to have been received on the date and time of personal or overnight delivery or facsimile transmission, if received during normal business hours of the recipient; if not, then on the next business day.

Notices to the Company shall be sent to:  Focus Franchising, Inc.
531 Washington Street
Ste 4124
Watertown, NY 13601

Notices to the Holder shall be sent to:  Continental Trust Corp.
Ltd. 5th Floor, Richmond
House, 12 Par-la-Ville
Road, Hamilton HM08
Bermuda

9. *REPRESENTATIONS AND WARRANTIES.* The Company hereby makes the following representations and warranties to the Holder:

(a) Organization, Good Standing and Power. The Company is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Florida and has the requisite corporate power to own, lease and operate its properties and assets and to conduct its business as it is now being conducted.

3

(b) **Authorization; Enforcement.** The Company has the requisite corporate power and authority to enter into and perform this Note and to issue and sell this Note. The execution, delivery and performance of this Note by the Company, and the consummation by it of the Transactions contemplated hereby, have been duly and validly authorized by all necessary corporate action. This Note when executed and delivered, will constitute a valid and binding obligation of the Company enforceable against the Company in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, liquidation, conservatorship, receivership or similar laws relating to, or affecting generally the enforcement of creditor's rights and remedies or by other equitable principles of general application.

(c) **Disclosure.** Neither this Note nor any other document, certificate or instrument furnished to the Holder by or on behalf of the Company in connection with the transactions contemplated by this Note contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made herein or therein, in the light of the circumstances under which they were made herein or therein, not misleading.

11. **CONSENT TO JURISDICTION AND SERVICE OF PROCESS.** The Company consents to the jurisdiction of the courts of the State of Florida and of any state and federal court located in the County of Seminole, Florida.

12. **GOVERNING LAW.** THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY THEREIN, WITHOUT GIVING EFFECT TO THE RULES OR PRINCIPLES OF CONFLICTS OF LAW.

13. **CONFORMITY WITH LAW.** It is the intention of the Company and of the Holder to conform strictly to applicable usury and similar laws. Accordingly, notwithstanding anything to the contrary in this Note, it is agreed that the aggregate of all charges which constitute interest under applicable usury and similar laws that are contracted for, chargeable or receivable under or in respect of this Note, shall under no circumstances exceed the maximum amount of interest permitted by such laws, and any excess, whether occasioned by acceleration or maturity of this Note or otherwise, shall be canceled automatically, and if theretofore paid, shall be either refunded to the Company or credited on the principal amount of this Note.

14. **COLLATERAL.** The Lender will be secured by the rebate income derived from the vendors listed on Attachment "A". These vendors pay quarterly in arrears and will be held and directed to the lender upon receipt. All proceeds from these vendors will be forwarded to the lender until this Note is paid in full.

IN WITNESS WHEREOF, the Company has signed and sealed this Note and delivered it as of May 18, 2015.

"Company"                                          "Holder"

FOCUS FRANCHISING, INC.                            CONTINENTAL TRUST CORP LTD.

By: _____                        By: _____
           President                                          Attorney-in-Fact
                                                              DIRECTOR

4

## FOCUS FRANCHISING, INC.
## CONVERTIBLE PROMISSORY NOTE

$300,000.00                                              January 27, 2014

FOR VALUE RECEIVED, FOCUS FRANCHISING, INC., a Florida corporation, its assigns and successors (the "Company"), hereby promises to pay to the order of STILTON MANAGEMENT LTD., (the "Holder"), whose principal address is Henville Building, Prince Charles Street, Charlestown, Nevis, West Indies, in immediately available funds, the total principal sum of Three Hundred Thousand Dollars ($300,000.00). The principal hereof and any unpaid accrued interest thereon shall be due and payable on or before 5:00 p.m., Eastern Standard Time, on January 27, 2016 (unless such payment date is accelerated as provided in Section 8 hereof). Payment of all amounts due hereunder shall be made at the address of the Holder provided hereinbefore. Interest shall accrue at the rate of ten percent (10%) per annum on this Note from the Funding Date (as defined below) and shall continue to accrue until all unpaid principal and interest is paid in full.

1. **REPAYMENT OF THE LOAN.** The loan shall be amortized over five (5) years and payable as follows: Interest only payments at a rate of 10% per annum shall be paid quarterly on the 1st days of May and August, and November of each year until January 27, 2017, at which time the then principal and all outstanding interest owed thereon shall become due and payable in full.

2. **PREPAYMENT.** The Company may, at its option, at any time and from time to time, prepay all or any part of the principal balance of this Note, without penalty or premium, provided that concurrently with each such prepayment the Company shall pay accrued interest on the principal, if any, so prepaid to the date of such prepayment.

3. **CONVERSION.** The Holder is entitled, at its option, at any time beginning on the date hereof, and in whole or in part, to convert the outstanding principal amount of this Note, or any portion of the principal amount hereof, and any accrued interest, into shares of the common stock of the Company. Any amounts Holder elects to convert will be converted into common stock at a conversion price which is the lower of (i) $0.50 or (ii) fifty percent (50%) of the three (3) day average closing bid price immediately prior to the delivery of a notice of conversion to the Company (the "Conversion Price").

4. **CONVERSION LIMITATION.** Notwithstanding Section 3 above, the Holder may not convert any outstanding amounts due under this Note if at the time of such conversion the amount of common stock issued for the conversion, when added to other shares of Company common stock owned by the Holder or which can be acquired by Holder upon exercise or conversion of any other instrument, would cause the Holder to own more than nine and nine-tenths percent (9.9%) of the Company's outstanding common stock.

5. **CONVERSION PRICE ADJUSTMENTS.** In the event the Company should at any time after the date hereof do either of the following: i) fix a record date for the

1

effectuation of a split or subdivision of the outstanding common stock of the Company, or ii) grant the holders of the Company's common stock a dividend or other distribution payable in additional shares of common stock without the payment of any consideration by such holder for the additional shares of common stock ("Stock Adjustment"), then, as of the record date (or the date of such Stock Adjustment if no record date is fixed), the conversion price of this Note shall be appropriately adjusted so that the number of shares of common stock issuable upon conversion of this Note shall be adjusted in proportion to such change in the number of outstanding shares in order to insure such Stock Adjustment does not decrease the conversion value of this Note.

6. **RESERVATION AND LISTING OF SECURITIES.** The Company shall at all times reserve and keep available out of its authorized shares of common stock, solely for the purpose of issuance upon the conversion of this Note, such number of shares of common stock as would be necessary to convert the entire amount due and owing under the terms of this Note if Holder elected to convert said amount under Section 2 hereof.

7. **DEFAULT.** The occurrence of any one of the following events shall constitute an Event of Default:

(a) The non-payment, when due, of any principal or interest pursuant to this Note;

(b) The material breach of any representation or warranty in this Note. In the event the Holder becomes aware of a breach of this Section 8(b), the Holder shall notify the Company in writing of such breach and the Company shall have twenty business days after notice to cure such breach;

(c) The breach of any covenant or undertaking, not otherwise provided for in this Section 8;

(d) The commencement by the Company of any voluntary proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, receivership, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or the adjudication of the Company as insolvent or bankrupt by a decree of a court of competent jurisdiction; or the petition or application by the Company for, acquiescence in, or consent by the Company to, the appointment of any receiver or trustee for the Company or for all or a substantial part of the property of the Company; or the assignment by the Company for the benefit of creditors; or the written admission of the Company of its inability to pay its debts as they mature; or

(e) The commencement against the Company of any proceeding relating to the Company under any bankruptcy, reorganization, arrangement, insolvency, adjustment of debt, receivership, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, provided, however, that the commencement of such a proceeding

2

shall not constitute an Event of Default unless the Company consents to the same or admits in writing the material allegations of same, or said proceeding shall remain undismissed for 20 days; or the issuance of any order, judgment or decree for the appointment of a receiver or trustee for the Company or for all or a substantial part of the property of the Company, which order, judgment or decree remains undismissed for 20 days; or a warrant of attachment, execution, or similar process shall be issued against any substantial part of the property of the Company.

Upon the occurrence of any Default or Event of Default, the Holder, may, by written notice to the Company, declare all or any portion of the unpaid principal amount due to Holder, together with all accrued interest thereon, immediately due and payable, in which event it shall immediately be and become due and payable, provided that upon the occurrence of an Event of Default as set forth in paragraph (d) or paragraph (e) hereof, all or any portion of the unpaid principal amount due to Holder, together with all accrued interest thereon, shall immediately become due and payable without any such notice.

8. *NOTICES.* Notices to be given hereunder shall be in writing and shall be deemed to have been sufficiently given if delivered personally or sent by the then current email address, overnight courier, or by facsimile transmission. Notice shall be deemed to have been received on the date and time of personal or overnight delivery or facsimile transmission, if received during normal business hours of the recipient; if not, then on the next business day.

Notices to the Company shall be sent to: Focus Franchising, Inc.
PO Box
Watertown, NY 13601
Attn: President

Notices to the Holder shall be sent to: Stilton Management Ltd.
Henville Building,
Prince Charles Street
Charlestown, Nevis, W I

9. REPRESENTATIONS AND WARRANTIES. The Company hereby makes the following representations and warranties to the Holder:

(a) <u>Organization, Good Standing and Power</u>. The Company is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Florida and has the requisite corporate power to own, lease and operate its properties and assets and to conduct its business as it is now being conducted.

3

(b) *Authorization; Enforcement.* The Company has the requisite corporate power and authority to enter into and perform this Note and to issue and sell this Note. The execution, delivery and performance of this Note by the Company, and the consummation by it of the Transactions contemplated hereby, have been duly and validly authorized by all necessary corporate action. This Note when executed and delivered, will constitute a valid and binding obligation of the Company enforceable against the Company in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, liquidation, conservatorship, receivership or similar laws relating to, or affecting generally the enforcement of creditor's rights and remedies or by other equitable principles of general application.

(c) *Disclosure.* Neither this Note nor any other document, certificate or instrument furnished to the Holder by or on behalf of the Company in connection with the transactions contemplated by this Note contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made herein or therein, in the light of the circumstances under which they were made herein or therein, not misleading.

11. *CONSENT TO JURISDICTION AND SERVICE OF PROCESS.* The Company consents to the jurisdiction of the courts of the State of Florida and of any state and federal court located in the County of Seminole, Florida.

12. *GOVERNING LAW.* THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY THEREIN, WITHOUT GIVING EFFECT TO THE RULES OR PRINCIPLES OF CONFLICTS OF LAW.

13. *CONFORMITY WITH LAW.* It is the intention of the Company and of the Holder to conform strictly to applicable usury and similar laws. Accordingly, notwithstanding anything to the contrary in this Note, it is agreed that the aggregate of all charges which constitute interest under applicable usury and similar laws that are contracted for, chargeable or receivable under or in respect of this Note, shall under no circumstances exceed the maximum amount of interest permitted by such laws, and any excess, whether occasioned by acceleration or maturity of this Note or otherwise, shall be canceled automatically, and if theretofore paid, shall be either refunded to the Company or credited on the principal amount of this Note.

------THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK------

IN WITNESS WHEREOF, the Company has signed and sealed this Note and delivered it as of January 27, 2014.

"Company"                                    "Holder"

FOCUS FRANCHISING, INC.                      STILTON MANAGEMENT LTD

By:_____                 By:_____
                    President                                   Attorney-in-Fact

5

## ASSIGNMENT OF CONVERTIBLE PROMISSORY NOTE

FOR GOOD AND VALUABLE CONSIDERATION the receipt and sufficiency of which is hereby acknowledged we, STILTON MANAGEMENT LTD. hereby assign all our right title and interest in and to the Convertible Promissory Note annexed hereto (made in our favour on January 27, 2014, in the sum of USD 300,000.00 by FOCUS FRANCHISING, INC.) to CONTINENTAL TRUST CORPORATION LIMITED.

Dated this 2 day of ~~October~~ November, 2015

**STILTON MANAGEMENT LTD.**

per: _____
Authorized Signatory

_____
Witness


