# EXHIBIT 7



**DATE OF TRANSLATION:**      2-Oct-20

**ELECTRONIC FILE NAME:**      Exhibit 60

**SOURCE LANGUAGE:**      Spanish
**TARGET LANGUAGE:**      English (United States)
**TRANSPERFECT JOB ID:**      US0799868

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TCert v. 2.0

# MSJ EXHIBIT 60

*TRANSLATION FOR INFORMATION PURPOSES*
*JNN DRAFT*
*02/04/2009*

**AMENDMENT AND RESTATEMENT AGREEMENT** TO THE IRREVOCABLE GUARANTY TRUST AGREEMENT (AS HEREINAFTER DEFINED) IDENTIFIED WITH THE NUMBER F/00321 (THE "AMENDMENT AND RESTATEMENT AGREEMENT") DATED MARCH 6, 2009, ENTERED INTO BY AND AMONG DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V. ("DIAMANTE CABO"), REPRESENTED HEREIN BY KENNETH ABOUD JOWDY ACTING AS SETTLOR AND BENEFICIARY IN SECOND PLACE (THE "SETTLOR" OR "BENEFICIARY IN SECOND PLACE", AS APPLICABLE) WHO HEREBY APPOINTS MR. FERNANDO GARCIA CAMPUZANO AS ITS AUTHORIZED TRANSLATOR, DANSKE BANK A/S, LONDON BRANCH, INCORPORATED IN THE KINGDOM OF DENMARK, REPRESENTED HEREIN BY GUSTAVO IGNACIO ALARCON CABALLERO, AS BENEFICIARY IN FIRST PLACE (THE "BENEFICIARY IN FIRST PLACE"), AND THE BANK OF NEW YORK MELLON, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE (AS UNIVERSAL AND FINAL ASSIGNEE OF BANCO J.P. MORGAN, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISIÓN FIDUCIARIA) AS TRUSTEE OF THE TRUST F/00321, REPRESENTED HEREIN BY ITS TRUSTEE DELEGATE ELIZABETH CID DEL PRADO GARCIA DE LEON (THE "TRUSTEE").

## R E C I T A L S

1.      On March 10, 2006, Lehman Brothers Holdings Inc. ("Lehman Brothers") granted Diamante Cabo a loan of up to $125,000,000.00 (One hundred and twenty five million dollars, legal currency of the United States of America) of principal; plus interest and commissions (the "Original Loan").

2.      In connection with the Original Loan, on March 10, 2006, the following documents were executed: **(i)** Original Loan Agreement by and between Diamante Cabo and Lehman Brothers (the "Original Loan Agreement"); **(ii)** Promissory Note executed by

CONFIDENTIAL

Diamante Cabo (the "Promissory Note"); (iii) Assignment of Leases and Rents Agreement by and between Diamante Cabo and Lehman Brothers (the "Assignment of Leases and Rents");; (iv) Recourse Guaranty by Mr. Kenneth A. Jowdy (the "Guarantor") and Lehman Brothers, in effect as of March 10, 2006, (la "Recourse Guaranty"); (v) Indemnity Agreement by and between Diamante Cabo, the Guarantor and Lehman Brothers (the "Environmental Indemnity"); (vi) Pledge Agreement over partnership interests by and between Diamante Cabo, the Guarantor, Diamante Cabo San Lucas LLC ("U.S. LLC"), and Lehman Brothers (the "Pledge Agreement (Membership Interest in Settlor)"); (vii) Pledge Agreement over assets, by and between Lehman Brothers and Diamante Cabo (the "Pledge Agreement (Assets)"); (viii) Pledge Agreement by and between the Guarantor, U.S. LLC and Lehman Brothers (the "Pledge Agreement (Membership Interest in Borrower)"); (ix) Pledge Agreement by and between the Guarantor, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings, LLC and CSL Properties 2006, LLC (jointly, the "Members of the U.S. LLC") and Lehman Brothers (the "Pledge Agreement Over US Partnership Interests"); (x) Omnibus Assignment by and between Diamante Cabo and Lehman Brothers (the "Omnibus Assignment 2006"); (xi) Completion Guaranty, granted by the Guarantor in favor of Lehman Brothers; and (xii) Guaranty granted by the Members of the U.S. LLC, the Guarantor and the U.S. LLC in favor of Lehman Brothers. The aforementioned documents, as amended form time to time, are jointly referred to as the "2006 Transaction Documents".

3.      Likewise, on March 10, 2006, through public deed number 65,041 granted before the undersigned notary public, Diamante Cabo, as settlor and second beneficiary, Lehman Brothers, as first beneficiary, and Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria (currently The Bank of New York Mellon, S.A., Institución de Banca Múltiple universal and final assignee of such), as trustee, executed the Irrevocable Guaranty Trust Agreement identified with the number F/00321 (the "Trust") in order to secure compliance of obligations of Diamante Cabo, the Members of the U.S. LLC, la U.S. LLC and of the Guarantor under the 2006 Transaction Documents.

CONFIDENTIAL                                                                    DANSKE_0012727

4.     On the date of execution of the Trust, Diamante Cabo contributed to the trust assets the following properties (hereinafter the "Properties"): *[DESCRIPTION OF THE PROPERTIES CONTRIBUTED TO THE TRUST]*

5.     Likewise, on the date of execution of the Trust, Diamante Cabo contributed to the trust assets the following rights (hereinafter the "Rights"): *[DESCRIPTION OF THE RIGHTS CONTRIBUTED TO THE TRUST]*

6.     Acquisition of the trustee's interests of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria:

a) Through public deed 59,516 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, were formalized certain spinoff resolutions adopted by the extraordinary shareholders meeting of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria, held on November 19, 2008, whereby it was resolved to spinoff such corporation by the creation of Vertrouwen Mexicana, S.A., initial universal assignee of certain assets, assuming such company all obligations derived therefrom.

b) Through public deed 59,517 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, as a consequence of the spinoff of Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria, Vertrouwen Mexicana, S.A. was incorporated with an indefinite duration, a capital stock of $193,317,047 Pesos and the main purpose of receiving from Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, including but not limited to, certain accounts receivable, certain accounts to be collected, and capital and several assets deriving from order accounts belonging to trusts and mandates, all in accordance with article 27 of the Credit Institutions Law.

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012728

c) Through public deed 59,521 granted on November 19, 2008 in Mexico Federal District before Mr. Roberto Nuñez y Bandera Notary Public number 1, of Mexico Federal District, The Bank of New York Mellon, S.A., Institución de Banca Múltiple (as the subsistent corporation), merged with Vertrouwen Mexicana, S.A. and acquired all its assets that Vertrouwen Mexicana, S.A. had received from Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria.

7.     On January 13, 2009, Lehman Brothers and the Beneficiary in First Place executed a certain global assignment of rights agreement ("Omnibus Assignment and Assumption 2009") through which Lehman Brothers assigned in favor of the Beneficiary in First Place all of its rights under the 2006 Transaction Documents and the latter accepted such assignment.

8. On March 6, 2009, the partners of the Settlor, through general partners meeting **(i)** approved the execution of the Amended and Restated Loan Documents; and **(ii)** amended and restated the by-laws of the Settlor, acknowledging the Beneficiary in First Place as creditor under the Amended and Restated Loan Documents.

9.     On March 5, 2009, Lehman Brothers and the Beneficiary in First Place executed certain assignment agreements through which the parties to same perfected the Omnibus Assignment and Assumption 2009 pursuant to Mexican law, the assignment of rights in favor of the Beneficiary in First Place under the Pledge Agreement (Membership Interest in Settlor), the Pledge Agreement (Assets) and the Trust.

10.     On this same date the Beneficiary in First Place and the Settlor executed a Termination Agreement to the Pledge Agreement (Assets), due to the fact that the assets subject matter of the pledge are hereby transferred to the Trust.

11.     On March 6, 2009, the Beneficiary in First Place and Diamante Cabo executed an amendment and restatement to the Loan Agreement (the "Amended and Restated Loan

JNN 291386 v2                                    4

Agreement") and Diamante Cabo executed thereunder in favor of the Beneficiary in First Place two promissory notes (the "2009 Promissory Notes", and jointly with the Amended and Restated Loan Agreement 2009 and the 2006 Transaction Documents will be referred to as the "Transaction Documents", and the latter, jointly with this Trust, will be referred to as the "Amended and Restated Loan Documents".

## REPRESENTATIONS

1.      Diamante Cabo, hereby represents that:

a)      It is a limited liability company of variable capital duly formed pursuant to the laws of the United Mexican States, with headquarters at Alikan s/n, Colonia Ampliación Mariano Matamoros, CP 23460, Cabo San Lucas, Los Cabos, Baja California Sur, México.

b)      It contributed to the assets of the Trust the Properties described in Recital 4 and the Rights described in Recital 5 of this instrument (hereinafter the Properties and the Rights shall be jointly referred to for purposes of this Amendment and Restatement Agreement as the "Real Property").

c)      It has all the corporate and legal powers and authority to execute and comply with its obligations hereunder, as well as to grant the necessary guaranties, and has taken all legal and corporate actions necessary to authorize its execution and compliance in terms of this Amendment and Restatement Agreement.

d)      The Trust constitutes a legal, valid and binding obligation of Diamante Cabo, enforceable pursuant to the provisions of the applicable law.

e)      The execution and compliance of this Amendment Agreement does not imply any material breach of any provision or legal requirement, nor of any provision of its corporate documents, nor of any contractual obligation of Diamante Cabo and it will not result in the establishment or imposition of any lien over any of the assets or income of

JNN 291386 v2                                      5

DANSKE_0012730

Diamante Cabo, except for that established in this instrument and expressly permitted by the Transaction Documents.

f)      As of the date of execution of this Amendment and Restatement Agreement, and to the best of its knowledge, there is no, after carrying out the pertinent investigations, action, claim, suit, requirement or potential procedure pending or not resolution, before any court, governmental entity or arbitrator, that affects or may affect the legality, validity or enforceability of this Amendment and Restatement Agreement, the Trust or the Trustee's ownership of the Property.

g)      No consent, authorization, application or any other act on behalf of any governmental authority or any other person is required in order to execute, amend, terminate, assign, deliver, comply or enforce the Trust, nor to perfect or maintain the lien constituted thereby.

h)      The individual executing this Amendment and Restatement Agreement on behalf of Diamante Cabo has the powers and authority as well as the required corporate authorizations to do so, as evidenced through public deed number 78,881 granted before this Notary Public, which have not been revoked or limited in any manner whatsoever.

i)      The Charter and By-Laws of Diamante Cabo include the legal provisions of section I of article 27 of the Constitution of the United Mexican States.

j)      The purpose, use and enjoyment of the Real Property is for non-residential purposes, so long as it remains part of the Trust Assets and, hence, does not require a permit from the Ministry of Foreign Affairs (*Secretaría de Relaciones Exteriores*) ("SRE"), in terms of article 11 and 12 of the Foreign Investment Law (*Ley de Inversión Extranjera*) ("LIE").

k)      The Real Property is up to date in the payment of real estate taxes or any other governmental taxes and utilities to which the Real Property may be subject.

CONFIDENTIAL                                                                 DANSKE_0012731

l)     The Real Property complies with the applicable environmental, health and safety regulations, and Diamante Cabo has no knowledge of **(i)** the occurrence of any event or the existence of any circumstance or conditions that may constitute or result in a breach of environmental, health and safety norms, and **(ii)** the Real Property being subject to any existing action, or to the best of the knowledge of Diamante Cabo to any potential action, exercised by or before any governmental authority in terms of any environmental, health or safety law applicable thereto, nor is there any legal basis for such action.

m)     Appears to the execution of this Amendment and Restatement Agreement in order to amend and restate the clauses of the Trust in order for same to secure compliance with the obligations of Diamante Cabo, the Members of the U.S. LLC, the U.S. LLC and the Guarantor pursuant to the Transaction Documents.

n) The Trustee has clearly advised it of the contents and legal scope of Section XIX of Article 106 of the Credit Institutions Law, as well as of the regulations issued by the Bank of Mexico.

o) Hereby instructs the Trustee to execute this Amendment and Restatement Agreement in the terms hereof.

**2.**     The Beneficiary in First Place hereby represents that:

a)     It is the London branch of a corporation duly incorporated pursuant to the laws of the Kingdom of Denmark.

b)     Its legal representative has all the corporate and legal powers and authority to execute this Amendment Agreement, as evidenced through public deed number 102,866 dated February 23, 2009, granted before Mr. Francisco Javier Arce Gargollo, Notary Public

JNN 291386 v2

7

CONFIDENTIAL                                                                           DANSKE_0012732

No. 74 of the Federal District, which have not been revoked or limited in any manner whatsoever.

c)      The Trustee has unequivocally communicated to it the content and legal scope of section XIX of article 106 of the Credit Institutions Law (*Ley de Instituciones de Crédito*), as well as the legal provisions issued by the Central Mexican Bank (*Banco de México*).

d)      The Beneficiary in First Place will have no right over the use and enjoyment of the Real Property, unless the Trust receives the corresponding authorization from the Ministry of Foreign Affairs, in the understanding that such limitation will not be deemed an estoppel nor diminish in any manner the rights of the Beneficiary in First Place in terms of the Trust or the guaranty granted in same.

e)      Hereby instructs the Trustee to execute this Amendment and Restatement Agreement in the terms hereof.

3.      The TRUSTEE hereby represents that:

a)      It is a multiple banking institution, duly incorporated and authorized to act as such, pursuant to Mexican law.

b)      Its trustee delegate has all the corporate and legal powers and authority to execute this Amendment Agreement, as evidenced through public deed number 59,563 granted before Mr. Roberto Nuñez y Bandera, Notary Public No. 1 of the Federal District, which have not been revoked or limited in any manner whatsoever.

c)      It is the legitimate owner of the Real Property as trustee of the Trsut, which is free and clear of all liens (except for the rights in favor of Atilio Colli Villarino and Alicia Ceseña Agundez under the non exclusive, permanent and voluntary right of way easement (the "Easement"), which was formalized through public deed 62,902, volume 987, dated

CONFIDENTIAL                                                      DANSKE_0012733

September 1, 2005, granted before this Notary Public, same that was recorded in the Public Registry of Property of Los Cabos under number 97 of the volume CCXXXI, of the first section and number 30 of the volume CCXXIII of the first section), encumbrances, guaranties, options or claims on behalf of any third party.

    d)    Has all necessary governmental approvals and authorizations to act as a banking institution in Mexico and perform trust operations in accordance with the applicable Mexican laws and regulations, which are valid as of the date of this Amendment and Restatement Agreement.

    e)    The execution and performance of this Amendment and Restatement Agreement does not constitute a breach to the by-laws of the Trustee or to any other agreement entered with any third person.

    f)    The Trust constitutes a valid obligation of the Trustee which is enforceable against it in accordance with its terms.

    g)    In accordance with Section XIX of Article 106 of the Credit Institutions Law, as well as of the regulations issued by the Bank of Mexico, the Trustee represents that it has clearly explained to the parties of this Amendment and Restatement Agreement the consequences of such provisions.

    h)    Appears to the execution of this Amendment and Restatement Agreement in accordance with the instructions of Settlor and the Beneficiary in First Place.

**IN WITNESS WHEREOF**, the parties hereto hereby grant the following:

## C L A U S E S

**FIRST.**    The parties hereto agree to amend and restate all of the clauses of the Trust which are replaced and superseded in its entirety by the following clauses:

JNN 291386 v2

9

DANSKE_0012734

**"Clause 1.     Definitions and Principles of Interpretation.**

**(a)**     Capitalized terms used herein and not otherwise defined elsewhere herein shall have the meanings respectively ascribed to them below:

**"Accounts Receivable"** means any and all rights of the Settlor to payment for disposition of assets and any part of the Trust Assets through lease, sale or services rendered, or use of the Trust Assets (as hereinafter defined), whether or not yet earned and all substitutions therefore and proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition thereof or substitution therefore.

**"Advisors"** has the meaning ascribed to such term in **Clause 10.**

**"Amended and Restated Loan Agreement"** means the amended and restated loan agreement executed on March 6, 2009 by and between Diamante Cabo and the Beneficiary in First Place, including without limitation, any amendment thereto.

**"Amended and Restated Loan Documents"** means the Amended and Restated Loan Agreement, the Promissory Note A, the Promissory Note B, the Assignment of Leases And Rents, the Pledge Agreement (Membership Interest in Settlor), the Pledge Agreement (Membership Interest in Borrower), the Pledge Agreement over US Partnership Interests, the Recourse Guaranty, the Environmental Indemnity, the Omnibus Assignment 2006, the Completion Guaranty and the Guaranty, as the same have been or may be amended form time to time.

**"Appraisal"** has the meaning ascribed to such term in **Clause 8(a).**

**"Agent of the Collection Account"** means Trimont Real Estate Advisors, Inc. as loan agent in accordance with the agreement that regulates the Collection Account.

**"Assets"** means all and any assets that are property of the Settlor at the time of the execution hereof and all acquired thereafter, including without limitation contractual rights,

CONFIDENTIAL

DANSKE_0012735

intellectual property, movable assets, bank accounts, any accounts receivable, equipment and all earnings and proceeds derived form such assets or of similar nature.

"**Assignment of Leases and Rents**" means the assignment of lease and rents agreement as amended in the past or the future, executed on March 10, 2006 by and between Diamante Cabo and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Auction Notice**" has the meaning ascribed to such term in **Clause 10**.

"**Base Price**" has the meaning ascribed to such term in **Clause 10**.

"**Beneficiary in First Place**" means Danske Bank A/S, London Branch, the London branch of a company incorporated in the Kingdom of Denmark.

"**Beneficiary in Second Place**" means the Settlor in its capacity as beneficiary in second place hereunder.

"**Business Day**" means any day of the year, except Saturdays and Sundays and holidays pursuant to the Federal Labor Law (*Ley Federal del Trabajo*) and the calendar that the National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*) publishes annually, in which banking institutions in Mexico and in New York, New York, United States of America are open to the public to carry out banking operations.

"**Completion Guaranty**" means the Completion Guaranty as amended from time to time granted by the Guarantor in favor of Lehman Brothers on March 10, 2006, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Contractual Rights**" means all the rights (excluding the obligations), proceeds and benefits, whether tangible or intangible, derived form the agreements, contracts or instruments executed in the past or future by the Settlor with third parties in connection with the Project and/or the Trust Assets.

CONFIDENTIAL

DANSKE_0012736

"**Collection Account**" means the account in dollars of the United States of America that the Beneficiary in First place opens with, and operated by the Agent of the Collection Account.

"**Diamante Cabo**" means Diamante Cabo San Lucas, S. de R.L. de C.V.

"**Event of Default**" means an event of default with respect to, or breach of any of, the Secured Obligations or a breach of any of the terms and conditions established in this Trust or any other "Event of Default" as such term is defined in Section 18 of the Amended and Restated Loan Agreement, without limiting to any default in payment of capital and interest (as such interest may be capitalized).

"**Environmental Indemnity**" means the environmental liability and indemnity document executed on March 10, 2006 by and between Diamante Cabo, the Guarantor and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Environmental Law**" means all federal, state and municipal laws and other statutes, regulations, decrees, rules, internal procedures, standards, Mexican Official Standards (*Normas Oficiales Mexicanas*), any obligations, permits, rulings, authorizations or concessions, issued by any government authority, in each case as public health, security and hygiene, contamination or protection of natural resources and the environment, pollution and contamination (prevention of pollution and contamination) of the air, water, soil, and subsoil (including the use, production, handling, transport, treatment, storage, distribution, labeling, cleaning of any hazard substance) in effect as of the date of this Trust. The term "Environmental Law" includes (but is not limited to) the Ecological Balance and Environment Protection Law (*Ley General del Equilibrio Ecológico y Protección al Ambiente*), the Law of National Waters (*Ley de Aguas Nacionales*), the Law for the Prevention of Residues (*Ley General para la Prevención y Gestión Integral de los Residuos*), the Environmental Protection and Preservation Law of the State of Baja California Sur (*Ley de Equilibrio Ecológico y Protección del Ambiente del Estado de Baja California Sur*),

CONFIDENTIAL                                                                 DANSKE_0012737

Mexican Official Standards: NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, NOM-138-SEMARNAT/SS-2003, and project of NOM-147-SEMARNAT/SSA1-2004 (including the internal parameters used by the Federal Agency for Environmental Protection (*Procuraduría Federal de Protección al Ambiente*) for contaminated soils and its remedies), Healthcare Law (*Ley General de Salud*), Federal Security Hygiene and Environment in Labor Regulation and Mexican Official Standard NOM-010-STPS-199, including their respective amendments.

"**Fractional Interest**" means **(i)** any part of the beneficiary rights arising from a Residential Unit Trust, which beneficiary rights, in terms of each Residential Unit Trust, are divided in a certain number of parts in order to represent the right to a certain part of the Unit contributed and which beneficiary rights afford the holder thereof the right to use the Unit for a certain period of weeks during a calendar year in terms of such instrument, the condominium documents for the Project and the corresponding beneficiary rights purchase and sale agreement, or **(ii)** any co-ownership in a Unit.

"**Guarantor**" means Mr. Kenneth A. Jowdy.

"**Guaranty**" means the guaranty granted by the Members of the US LLC, the Guarantor and the US LLC in favor of Lehman Brothers on March 10, 2006 as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Hazardous Substance**" means any hazard residue, toxic waste, hazardous materials, toxic substance, special residue, oil or any substance derived from oil, radioactive substances, solids, liquids or gas or any component of any substance or residue; or matters regulated under the Environmental Law including without limitation any residues, materials, or substances which are **(i)** designated or labeled as "hazardous materials" and/or "hazardous residues", in accordance with the Ecological Balance and Environment Protection Law (*Ley General del Equilibrio Ecológico y Protección al Ambiente*); **(ii)** listed as "hazardous" under Mexican Official Standards (*Normas Oficiales Mexicanas*): NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, and **(iii)** designated as "hazardous residues" under the Law

CONFIDENTIAL

DANSKE_0012738

for the Prevention of Residues (*Ley General para la Prevención y Gestión Integral de los Residuos*).

"**Improvements**" means constructions and any other structure or improvement located or to be located or built on the Real Property.

"**Information Memorandum**" has the meaning ascribed to such term in **Clause 10**.

"**Instruction to Sell**" has the meaning ascribed to such term in **Clause 10**.

"**Investment Instruction**" has the meaning ascribed to such term in **Clause 4(g)(1)**.

"**Lehman Brothers**" means Lehman Brothers Holdings Inc.

"**LGTOC**" means the General Law of Negotiable Instruments and Credit Transactions (*Ley General de Títulos y Operaciones de Crédito*).

"**Members of the US LLC**" means collectively, Baja Ventures 2006, LLC, Diamante Properties, LLC, KA Holdings, LLC and CSL Properties 2006, LLC.

"**Mexico**" means the United Mexican States.

"**Notice of Default**" means a notice delivered to the Settlor and Trustee by the Beneficiary in First Place, regarding the existence of an Event of Default and, if applicable, the cure period under the Amended and Restated Loan Documents.

"**Notice of Damaged Assets**" means the notice referred to in **Clause 7(b)(7)**, as the same shall be delivered according to the form attached hereto as **Exhibit B**.

"**Omnibus Assignment 2006**" means the omnibus assignment as amended in the past or the future, executed on March 10, 2006 by and between Diamante Cabo and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

JNN 291386 v2

14

CONFIDENTIAL

DANSKE_0012739

"**Omnibus Assignment and Assumption 2009**" means the global assignment of rights agreement as amended in the past or the future, dated January 13, 2009, through which Lehman Brothers assigned in favor of the Beneficiary in First Place all its interests under the Loan Documents 2006 and the latter accepted such assignment.

"**Payment in Full Notice**" means the notice referred to in **Clause 12(a)**, as the same shall be delivered according to the form attached hereto as **Exhibit A**.

"**Pesos**" means the legal currency of the United Mexican States.

"**Permitted Investments**" means investments in fix-rate instruments or securities denominated in Pesos and/or Dollars issued or guaranteed by the Federal Government of Mexico or United States of America, as applicable.

"**Pledge Agreement (Membership Interest in Settlor)**" means the pledge agreement over partnership interests as amended from time to time executed on March 10, 2006 by and between Diamante Cabo, the Guarantor, the US LLC and Lehman Brothers, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Pledge Agreement (Membership Interest in Borrower)**" means the pledge agreement as amended from time to time executed on March 10, 2006 by and between the Guarantor, the Members of the US LLC and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

"**Project**" shall mean, including but not limited to, the development of the Real Property into a resort and residential development consisting of residences, two golf courses, a club house, restaurant, spa and fitness center and other amenities.

"**Promissory Note A**" means the promissory note executed on March 6, 2009 by Diamante Cabo in favor of the Beneficiary in First Place for a principal amount of US$109'138,327.83.

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012740

"**Promissory Note B**" means the promissory note executed on March 6, 2009 by Diamante Cabo in favor of the Beneficiary in First Place for a principal amount of US$16'000,000.00.

"**Public Registry**" means the Public Registry of Property and Commerce of San José del Cabo, Baja California Sur.

"**Regulation 1/2005**" shall mean circular 1/2005 (as amended or modified in the past or in the future), issued by Banco de México, which contains the Rules applicable to Credit Institutions, Brokerage Houses, Insurance Institutions, Financing Institutions, Limited Purpose Financial Companies and Financiera Rural that are involved in trust transactions are subject to.

"**Residential Unit Trust**" shall mean a trust to be formed under Mexican Law in order to contribute a Unit for the sale of Fractional Interests.

"**Real Property**" means the Real Property as defined in the Recitals and Representations sections of this instrument, which is part of the Trust Assets.

"**Recourse Guaranty**" means the recourse guaranty executed on March 10, 2006 by Guarantor and Lehman Brothers, in effect as of March 10, 2006, as the same has been assigned by Lehman Brothers in favor of the Beneficiary in Fist Place.

"**Secured Obligations**" shall mean, as the context may require, each and every obligation, whether present or future, of Diamante Cabo, the US LLC, the Members of the US LLC and the Guarantor under the Amended and Restated Loan Documents, including, without limitation, the timely payment in full of any outstanding principal and interest and capitalizations thereof, if any, as well as the "Profit Participation Fee" and "Non-Utilization Fee", as such terms are defined in the Amended and Rested Loan Agreement, as well as each

JNN 291386 v2

16

DANSKE_0012741

and every present or future obligation of Diamante Cabo under this Trust and the Amended and Restated Loan Agreement, as the same may be amended or modified from time to time.

"**Settlor**" means Diamante Cabo San Lucas, S. de R.L. de C.V.

"**Transactions**" has the meaning ascribed to such term in **Clause 4(g)(6)**.

"**Trust**" means this Amended and Restated Irrevocable Guaranty Trust Agreement F/00321 and all its Exhibits, as the same has been and may modified from time to time.

"**Trusts Accounts**" means the bank accounts that the Settlor is hereby transmitting to the Trust which shall name the Trustee as the owner of such, and such bank accounts opened by the Trustee in accordance with the instructions of the Beneficiary in First Place.

"**Trust Assets**" has the meaning ascribed to such term in **Clause 5**.

"**Trustee**" means The Bank of New York Mellon, S.A., Institución de Banca Múltiple, as trustee under the Trust.

"**Unit**" means any lot, condominium and/or residential unit located at the Real Property subject to individual sale or transfer in accordance with the master condominium regime and property sub-regime to be created over the Real Property for purposes of the Project.

"**US LLC**" means Diamante Cabo San Lucas, LLC.

"**US Pledge Agreement**" means the pledge agreement as amended from time to time executed on March 10, 2006 by and between the Guarantor, the US LLC and Lehman Brothers as the same has been assigned by Lehman Brothers in favor of the Beneficiary in First Place.

**(b)**　　The following principles of interpretation shall apply for the purposes of this Trust:

JNN 291386 v2

17

DANSKE_0012742

(1)   When expressed in the singular form, the terms defined in the plural form shall have any individual meaning comprised to the plural form of such term and vice versa.

(2)   Except as otherwise provided herein, all references in this Trust to Clauses, Exhibits or paragraphs shall be deemed made to Clauses, Exhibits and paragraphs of this Trust.

(3)   The headings of Clauses of this Trust are included herein for convenience purposes only, and shall not affect the meaning or interpretation of any provision of this Trust in any manner whatsoever.

(4)   Any reference herein to any person, whether or not identified by such term, shall be interpreted so as to include the successors and permitted assigns of such person.

(5)   Any reference herein to a contract, agreement, covenant or document shall be interpreted to include any amendment and/or restatement to such contract, agreement, covenant or document.

(6)   All Exhibits attached hereto shall be an integral part of this Trust.

**Clause 2.     Creation of Trust; Transfer of the Trust Assets.**

(a)   The parties hereto hereby ratify the creation of the Trust which constitutes an irrevocable guaranty trust with the Trustee in order to secure the complete payment and fulfillment of the Secured Obligations with the Trust Assets.

(b)   The Trustee hereby confirms the acceptance of its appointment as trustee of the Trust, and its reception of the title (fiduciary ownership) of the Trust Assets including the Real Property, and agrees to act as provided in this Trust and applicable law in order to comply with the purposes of the Trust, including but not limited to the foreclosure proceeding established in **Clause 10**. This instrument constitutes evidence of the receipt by the Trustee of the Trust Assets.

JNN 291386 v2

18

DANSKE_0012743

(c)      The Settlor and the Beneficiary in First Place hereby acknowledge and agree that transfer of title of Real Property and its Improvements in favor of the Trustee was perfected by means of the agreement that created the Trust formalized in by public deed number 65,041, volume 1,026, dated March 10, 2006, granted before the authority of Mr. José Alberto Castro Salazar, affiliated to Notary Public number 7 of the State, with authority in La Paz and Los Cabos and with residence in the State capital, which was duly recorded Public Registry of Property and Commerce on May 8, 2006 under docket 135, page 135, volume CCXLV, section I.  The Settlor agrees to warrant title (*saneamiento para el caso de evicción*) to the Real Property, obligation which shall survive the expiration or early termination of the Trust.

(d)      The Settlor hereby transfers to the Trustee the ownership and title of all rights appurtenant or inherent to or arising from the Real Property, including but not limited to licenses, permits, rights, concessions, fixtures and Improvements of the Real Property. Also, the Settlor hereby transfers to the Trustee any and all Assets, Accounts Receivable, Contractual Rights and all rights, interests and benefits of Settlor under any insurance policies, all payments, monies, cash and all products and/or proceeds derived from or in connection with the Trust Assets, including, without limitation, all rights to receive all insurance proceeds and all amounts.

(e)      The irrevocable transfer of property and title to any rights hereby transferred to the Trust Assets, including without limitation, any Assets, Accounts Receivable, Contractual Rights and any rights of the Settlor under any of the agreements executed by the Settlor is perfected hereby.

(f)      The irrevocable transfer of the right, title and interest of the Settlor in any licenses and permits hereby transferred to the Trust Assets, to the extent permitted by applicable law, is hereby perfected. To the extent it is necessary to obtain any consent or approval from any governmental authorities necessary or appropriate in connection with the transfer to the Trustee of title to such licenses and permits and/or any rights of the Settlor thereunder, the Settlor shall obtain such consents and approvals.

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012744

**(g)**     The irrevocable transfer of all rights, interests and benefits of Settlor under any insurance policies, all payments, monies, cash and all products and/or proceeds derived from or in connection with the Trust Assets, including, without limitation, all rights to receive all insurance proceeds and all amounts, are hereby perfected.

**(h)**     If any amounts are received by the Settlor with respect to any Assets, Contractual Rights, Accounts Receivable, rights, interests and benefits of the Settlor under any insurance policies, and any other payments, monies, cash, products, proceeds and/or insurance proceeds, such amounts shall be received by the Settlor as a depositary, free of charge, for the purposes of the Trust and shall be immediately deposited by the Settlor in the Collection Account. The irrevocable transfer of future Accounts Receivable and Contractual Rights in favor of the Trustee shall be perfected under this Trust, upon such future Accounts Receivable and Contractual Rights being created.

**(i)**     The Settlor agrees to, at its own cost, timely execute and sign all instruments and additional documents, and carry out all necessary additional actions according to applicable law or to the Amended and Restated Loan Agreement or any Amended and Restated Loan Document or that the Trustee or the Beneficiary in First Place reasonably request in writing, to perfect and defend the transfer of the Trust Assets or with the purpose of allowing the Beneficiary in First Place and the Trustee to exercise their rights and remedies under this Trust. The Settlor, within the 15 (fifteen) Business Days following the execution hereof, shall grant the irrevocable powers of attorney in the form attached as **Exhibit C**, pursuant to Article 2596 of the Federal Civil Code and its correlative articles in the other Civil Codes of the federal entities of Mexico, authorizing the Beneficiary in First Place to act in the Settlor's name and on its behalf in order to perform any acts described in this paragraph. The Beneficiary in First Place may request the Settlor to perform the acts described herein, but in the event that the Settlor fails to perform such actions in a term of 15 (fifteen) Business Days, without waiver to the Settlor's obligations, the Beneficiary in First Place shall be entitled but not obligated, to perform the tasks described in this paragraph.

**(j)**     With respect to any agreements authorizations, licenses or permits, in accordance with the terms of the Trust, that shall become part of the Trust Assets, the Settlor

CONFIDENTIAL                                                                                    DANSKE_0012745

shall clarify in writing to the other party or the corresponding authority, as applicable, that **(i)** the rights arising therefrom are property of the Trustee as trustee under the Trust, **(ii)** any proceeds payable thereunder shall be deposited in the Collection Account.

**(k)**     The Settlor shall notify the parties with whom it has entered into agreements that are being hereby transferred to the Trust Assets, in order to acknowledge the Trustee as the owner of such rights and agreements, such notice shall be made using the form attached hereto as **Exhibit D**. Some of the agreements that the Settlor hereby transfers to the Trust Assets are identified in **Exhibit E** hereto, provided that such agreements do not constitute all of the agreements transferred hereby to the Trust Assets.

**(l)**     Likewise, the Settlor shall, within the next 10 (ten) Business Days following the execution hereof, notify the banks that maintain the accounts that the Settlor hereby transfers to the Trust Assets in order to acknowledge the Trustee as the owner of such accounts. The bank accounts hereby transferred by the Settlor to the Trustee are identified in **Exhibit F** hereto.

**(m)**     In connection with the rights derived from the bonds or insurance policies that the Settlor hereby transferees to the Trust Assets, the Settlor shall, within the following 10 (ten) Business Days following the execution hereof, notify the insurance and bonding companies of such assignments in accordance with the form notice attached hereto as **Exhibit G**.

**Clause 3.**     **Parties to the Trust.**

**(a)**     The following are parties to the Trust:

**Settlor and Beneficiary in Second Place:** Diamante Cabo San Lucas, S. de R.L. de C.V.

**Trustee:**     The Bank of New York Mellon, S.A., Institución de Banca Múltiple, División Fiduciaria (a Mexican Banking Institution)

CONFIDENTIAL                                                                        DANSKE_0012746

**Beneficiary in First Place:** Danske Bank A/S, London Branch, the London Branch of a company incorporated in the Kingdom of Denmark and/or its authorized successors and assignees

**(b)** Subject to the conditions set forth herein, the Settlor, as Beneficiary in Second Place, shall have the right to the reversion of the remaining Trust Assets after payment in full of the Secured Obligations.

**(c)** The parties hereto represent that the transfer of the Trust Assets to the Trustee in the terms of the Trust does not constitute a sale of assets in terms of Article 14 V of the Federal Fiscal Code and does not generate any transfer tax.

**(d)** Pursuant to the terms of this Trust and of the Amended and Restated Loan Agreement, the successors, permitted assigns, substitute trustees or the parties that may replace the Trustee or the Beneficiary in First Place, as the case may be (or those that participate with them), shall be deemed as the "Trustee" and the "Beneficiary in First Place", respectively, for the purposes of this Trust.

**Clause 4.** **Purposes of the Trust.**

The purposes of the Trust are the following:

**(a)** That the Trustee receive and retain ownership and title in the Trust Assets to secure the fulfillment of the Secured Obligations pursuant to the terms hereof.

**(b)** That cash and any and all payments derived from any Accounts Receivable and Contractual Rights shall be deposited in the Collection Account, in accordance with the Amended and Restated Loan Agreement and this Trust and that any rights and assets resulting from the Assets, Accounts Receivable and the Contractual Rights are transferred to the Trustee to form part of the Trust Assets.

**(c)** That as of the date hereof all rights, payments and assets that are part of the Trust Assets and that are received as consideration for any Trust Assets to any third parties,

CONFIDENTIAL

DANSKE_0012747

or as indemnification for any damages, destruction, expropriation or losses to any such Trust Assets (including payments in connection with insurance policies), be applied in accordance with the terms of the Amended and Restated Loan Agreement and this Trust, and for any other purposes set forth in this Trust pursuant to the provisions hereof and the written instructions that the Trustee receives from the Beneficiary in First Place.

(d) That the Trust Assets guarantee the Secured Obligations and for such purpose that the Trustee acts in accordance with the provisions of **Clause 10** and **Clause 11** regarding foreclosure on Trust Assets and application of proceeds in terms thereof (without prejudice to the applicability of other provisions of this Trust, as the case may be) in the Event of Default occurs.

(e) Upon payment in full of the Secured Obligations and termination of the Amended and Restated Loan Agreement, and after the Beneficiary in First Place delivers to the Trustee a Payment in Full Notice and all payments to the Trustee have been satisfied pursuant to the terms hereof, the Trustee shall (i) revert title of the remaining Trust Assets to the Beneficiary in Second Place in the terms of the instructions that receives form the Settlor and, at the Settlor's expense, shall perform the actions so instructed in order for the Trust Assets to be reverted to the Settlor or the Settlor's designee as provided in this paragraph; or (ii) execute with the Settlor and the Beneficiary in First Place an amendment agreement to the Trust whereby the Beneficiary in First Place ceases to part of such agreement to the satisfaction of the Beneficiary in First Place.

(f) That the Trustee maintain ownership of the Trust Assets, exercise the rights ancillary thereto and carry out all necessary acts for protection thereof, in accordance with the provisions hereof and applicable law and in accordance with the joint instructions received from the Settlor and the Beneficiary in First Place, provided that, the Trustee has not received a Notice of Default. In the event the Trustee has received a Notice of Default, the Trustee shall follow and comply only with the instructions given to it by the Beneficiary in First Place. In case the Trustee shall have actual knowledge of an emergency, the Trustee shall act in its own discretion using its best judgment, in which case the Trustee shall not be liable, except for its willful misconduct, negligence or bad faith determined by definitive resolution

JNN 291386 v2                                             23

issued by a competent authority (it being understood that for purposes of this Trust, "actual knowledge" of the Trustee, means actual knowledge of the Trustee of information certain, received by officers with managerial oversight authority).

(g)    If the Trust Assets or any portion thereof is cash:

(1)    Any such cash shall be deposited by the Settlor into the Collection Account in order to be applied by the Agent of the Collection Account in the terms of the agreements that regulates the Collection Account and the Amended and Restated Loan Agreement. In the event such cash is received in any of the Trust Accounts, the Trustee, directly by written instruction from the Beneficiary in First Place or trough the Settlor in accordance with the powers of attorney granted by the Trustee for such purposes, shall deposit such amounts in the Collection Account in order to be applied by the Agent of the Collection Account in the terms of the agreements that regulates the Collection Account and the Amended and Restated Loan Agreement. In the event the Beneficiary in First Place  has delivered to the Trustee a Notice of Default, all cash part of the Trust Assets shall be deposited by the Settlor or the Trustee, as applicable, in the Collection Account and the same will be applied and destined in accordance with the instructions of the Beneficiary in First Place. At no moment the Trustee shall have possession of any cash part of the Trust Assets unless otherwise instructed by the Beneficiary in First Place. If for any reason the Trustee receives cash that is part of the Trust Assets without being instructed by the Beneficiary in First Place, the Trustee shall deposit it into the Collection Account in accordance with the terms of this paragraph.

(2)    If instructed by the Beneficiary in First Place, the Trustee shall invest such cash in Permitted Investments, in accordance with such instructions (said instruction hereinafter referred to as an "**Investment Instruction**"). The Trustee shall follow any Investment Instructions referred to in this paragraph (i) on the same day as received, if such day is a Business Day and provided the Investment Instruction in is possession of the Trustee before 11:00 a.m. (Mexico City time) and the funds relative to the corresponding investment are in a Trust Account, or (ii) on the next following Business Day, if such funds or such Investment Instruction is not in possession of the Trustee before 11:00 am (Mexico City

CONFIDENTIAL                                                    DANSKE_0012749

time), the day when received is not a Business Day; on the understanding that, even if funds are not in a Trust Account before 11:00 am (Mexico City time) on any given day, the Trustee shall nevertheless carry out its best efforts to fulfill Investment Instructions received later that day, if such day is a Business Day and the funds therefore are received by the Trustee before the end of such Business Day.

The Trustee shall be authorized, for purposes of fulfilling Investment Instructions, to open checking and investment accounts, in the name of the Trust in accordance with such Investment Instructions at the time and pursuant to the instructions received, over which the Trustee shall have, subject to the terms of this Trust and the contents of said Investment Instruction, the exclusive domain and control and the sole and only right to make withdrawals.

In carrying out Investment Instructions, the Trustee shall invest in Permitted Investments in financial instruments that have a term of maturity provided for in the Investment Instructions, (in any event not exceeding the maximum terms to maturity set forth in such Investment Instructions) and, as the case may be, subject to the ratings set forth in such Investment Instructions. If the Trustee does not receive an Investment Instruction as provided above or any cash amounts cannot be invested immediately on the same day of receipt of an Investment Instruction pursuant to the purposes of the Trust, any such cash amounts in the Trust Assets shall be invested in Permitted Investments.

(3)     In compliance with Regulation 1/2005, the Trustee has clearly and unmistakably explained to the parties of this Trust the contents of Article 5.4 of Regulation 1/2005 and the following preventive measures:

(i)     The Trustee may carry out the transactions provided in Article 5.4 of Regulation 1/2005, which means, operations with The Bank of New York Mellon, S.A., Institución de Banca Múltiple, acting in its own account, as long as such transactions are permitted by law and applicable regulations and preventive measures are provided to avoid conflicts of interest (the "**Transactions**").

JNN 291386 v2

25

DANSKE_0012750

(ii)     As long as the Trustee has not received written notice from the Beneficiary in First Place that an Event of Default has occurred, the Transactions shall be executed with prior express written approval, in each case, by the Settlor to the Trustee by any means which leaves documented proof, including electronic means. If an Event of Default occurs and is continuing (as so notified in writing by the Beneficiary in First Place to the Trustee), the Transactions shall be executed with prior express written approval, in each case, by the Beneficiary in First Place in the manner described above.

(iii)     During the execution of the Transactions, the rights and obligations of the Trustee acting in such capacity and on its own account shall not be terminated by offset (*confusión*).

(iv)     The department of The Bank of New York Mellon, S.A., Institución de Banca Múltiple, while acting on its own, and the trust division of Trustee, shall not be directly dependant between them.

(v)     In compliance with Section 3.2 of Regulation 1/2005, it is noted that funds received by the Trustee that are not immediately invested in according with the purpose of the Trust, shall be deposited in a credit institution at the latest on the next Business Day after received, while they are applied in accordance with the purpose of the Trust. If such deposit is made to open accounts of the credit institution acting as trustee, such deposit shall generate the highest return that such institution pays for operations with the same term and amount in the same dates on which the deposit is made.

(4)     In the Transactions referred to in the preceding paragraphs of this **Clause 4(g)**, the Trustee shall comply with the guidelines and policies that The Bank of New York Mellon, S.A., Institución de Banca Múltiple, applies in similar operations. The Trustee shall not be liable for reductions in the value of investments made in accordance with item **Clause 4(g)(2)**, whether on account of market fluctuations or otherwise, and with respect to any detriment in the value that investments made by the Trustee in accordance with the provisions of this clause could suffer, except for willful misconduct, negligence or bad faith determined by definitive resolution issued by a competent authority. The parties hereby

JNN 291386 v2

26

DANSKE_0012751

expressly release the Trustee of any responsibility in connection with the acts carried out by the Trustee pursuant to section (e) of **Clause 4** as well as in connection with any loss that the value of the investments made by the Trustee may suffer pursuant to this **Clause 4(g)**, except in the case of willful misconduct, negligence or bad faith determined by definitive resolution issued by a competent authority.

(h)     That the Trustee enter into agreements and other instruments necessary, and carry out all relevant actions, to create and maintain the security interest created hereunder, and that the Trustee open any bank accounts pursuant to the written instructions of the Beneficiary in First Place with at least 5 (five) Business Days in advance.

(i)     That, prior to the delivery by the Beneficiary in First Place to the Trustee of a Notice of Default and provided the Beneficiary in First Place has approved and notified in writing to the Trustee such actions, the Trustee perform in connection with the Real Property and Improvements all valid legal acts that the Settlor may request expressly and in writing. Such acts shall **(1)** not affect the trust guaranty granted to the Beneficiary in First Place, **(2)** constitute permitted actions under the Trust and the Amended and Restated Loan Documents, **(3)** constitute mergers, land subdivisions, rights of way, condominium regimes, or acts that would limit the ownership of the Real Property without the prior written consent of the Trustee, which may only be given prior instruction of Beneficiary in First Place to that effect, and **(4)** not sell or encumber any part of the Trust Assets without the prior written consent of the Trustee, which may only be given prior instruction of Beneficiary in First Place to that effect. After delivery of a Notice of Default all acts described herein shall be carried out by the Trustee per express written instruction of the Beneficiary in First Place.

(j)     That upon written instructions solely from the Beneficiary in First Place to the Trustee, the Trustee **(1)** release any part of the Trust Assets in order for the Settlor to sell them to third parties, prior authorization by the Beneficiary in First Place of the document containing such sale, transfer and release, authorization that must be delivered within 3 (three) Business Days following the date on which the Beneficiary in First Place receives the document, as long as all the required documentation for such sale, transfer or release has been

JNN 291386 v2                                          27

delivered, or **(2)** establish a Residential Unit Trust conveying a Unit forming part of the Trust Assets.

**(k)**     That the Trustee, in accordance with the joint written instructions given to that effect by the Beneficiary in First Place and the Settlor, grant a special power of attorney for the sale of the any part of the Trust Assets in the terms that the Settlor and the Beneficiary in First Place determine.

**(l)**     That the Settlor on behalf of the Trustee exercise all rights and permits forming part of the Trust Assets, provided that, the Beneficiary in First Place has not delivered a Notice of Default, and always in accordance with the terms of the Trust and authorized by the Beneficiary in First Place. Upon the delivery of a Notice of Default, the Trustee shall revoke the powers of attorney granted to the Settlor in accordance with the instructions of the Beneficiary in First Place and will exercise all of the rights and permits forming part of the Trust Assets as directed by the Beneficiary in First Place without the need for the Settlor's consent.

**(m)**     That the Trustee, previously approved by the Beneficiary in First Place, grant the powers of attorney required to the person or persons designated by the Settlor in writing to exercise such powers of attorney, in connection with the process for obtaining all the permits, licenses and/or required authorizations for the development of the Project. After a Notice of Default has been delivered, the Trustee shall revoke said powers of attorney as instructed by the Beneficiary in First Place without the need to obtain the consent of the Settlor.

**(n)**     That the Trustee carry out all acts that are entrusted to it pursuant to this Trust (including, without limitation, the execution of any instrument, performance of any legal act, the granting of mercantile commissions and the cancellation and extinction of the Trust), in accordance with this Trust, applicable law and the instructions of the Beneficiary in First Place or the Settlor, as applicable.

CONFIDENTIAL                                                                        DANSKE_0012753

**Clause 5.** __Trust Assets__. The Trust Assets (the "**Trust Assets**") are all of the following assets and rights:

**(a)** The Real Property (and Improvements), Accounts Receivable and Contractual Rights.

**(b)** Any improvements or proceeds, whether pending or already obtained, resulting from any of the Trust Assets.

**(c)** All rights and assets resulting from the transformation of any of the Trust Assets.

**(d)** All proceeds and resources resulting from the sale, lease or transfer of any of the Trust Assets.

**(e)** All rights, payments and assets that the Settlor receives or has a right to receive on and after the date hereof as consideration for the transfer to any third parties of title and property to any Trust Assets or as indemnification for any damages, destruction or losses to any such Trust Assets or with respect to any Accounts Receivable.

**(f)** All cash and all assets, products and/or proceeds derived from or in connection with the Trust Assets, including without limitation, any and all amounts deposited in any bank accounts.

**(g)** The cash amounts resulting from the foreclosure on the Trust Assets, as the case may be.

**(h)** The right to receive any amount which is received as compensation for the expropriation of a Trust Asset.

**(i)** Any rights, interest or earnings derived from any investment of the amounts which constitute the Trust Assets.

**(j)** Any other asset or right acquired by the Trustee acting pursuant to the Trust.

JNN 291386 v2                                     29

**(k)**     The proceeds and products (*frutos*) of the Trust Assets.

**(l)**     Any other right in favor of the Trustee as owner of the Trust Assets.

**(m)**     All rights, proceeds, payments and assets that the Settlor receives or has a right to receive on and after the date hereof as a consequence of the use of any of the Trust Assets in their ordinary course of business pursuant to the terms and conditions hereof or as a consequence of the use by the Settlor in its ordinary course of business of any Accounts Receivable (or any assignment thereof).

The Trust Assets shall exclude: each and every one of the obligations derived from the agreements and contracts forming part of the Trust Assets.

**Clause 6.        Indivisibility of the Trust Assets.**

Notwithstanding any foreclosure procedure provisions set forth herein, so long as this Trust is in full force and effect, the Trust Assets may not be divided, given that the security interest created on the Trust Assets covers the Trust Assets as a whole, regardless of whether the Trust Assets are individualized, separated or divisible. Therefore, the Settlor expressly and irrevocably waives any right that it may have to request the reduction or division of the Trust Assets as a consequence of any partial payments made in connection with the Secured Obligations. The Trust Assets shall only be reduced or divided by a written instruction delivered to the Trustee signed by the Settlor and Beneficiary in First Place with respect to the matters set forth in this Trust and the Amended and Restated Loan Agreement.

For purposes of the provisions of the LGTOC, the parties agree that the property over the Trust Assets shall not be reverted to the Settlor in the event that their value increases during the duration of this Trust.

**Clause 7.        Possession and Use of the Trust Assets.**

**(a)**     As long as no Event of Default occurs, the Trustee grants the possession of the Real Property to the Settlor, in the terms and for the effects of this Trust and the applicable Articles of the LGTOC. Following the occurrence and during the continuance of an Event of

CONFIDENTIAL

DANSKE_0012755

Default (and expiration of any cure period), such possession shall be revoked. The Settlor agrees that its rights under the LGTOC, in connection to the Trust Assets which it has transferred to the Trustee, shall be limited to the following: **(1)** to the use of such Trust Assets for its own benefit, during its normal course of business; and **(2)** to sell or grant the use of appropriate Units at market prices. Except for any actions that the Settlor may carry out in the normal course of its business as approved by the Beneficiary in First Place, the Trust Assets shall not be combined, united or in any other way commingled with other assets, except through a written instruction delivered to the Trustee signed by the Settlor and the Beneficiary in First Place.

The rights granted to Settlor pursuant to paragraph (a) above, shall be deemed automatically revoked and will cease to have effect on the day the Beneficiary in First Place delivers to the Trustee and the Settlor a Notice of Default.

**(b)**     The Settlor, in its capacity as depository of the Trust Assets, which possession was granted pursuant to the terms of paragraph (a) above:

**(1)**     shall maintain the Trust Assets as depositary and keep originals of the documents evidencing title and property of the Trust Assets, or copies certified by a notary public which shall have been delivered or shall be delivered to the Trustee according to this Trust.

**(2)**     shall not use the Trust Assets for any purpose that has not been expressly authorized by this Trust or the Amended and Restated Loan Agreement;

**(3)**     shall be responsible, pursuant to applicable law for any and all damages and detriments caused to any third party (including the Beneficiary in First Place and the Trustee) due to the possession and use of the Trust Assets;

**(4)**     shall pay all necessary costs to repair, manage, and maintain the Trust Assets in good condition, subject to normal use and wear and tear;

JNN 291386 v2

31

    **(5)**    pursuant to the LGTOC, Settlor shall assume the risk of loss, damage or detriment of all of the Trust Assets;

    **(6)**    within 5 (five) Business Days following the day the Settlor becomes aware of any damage to any Trust Assets, the Settlor shall submit to the Trustee and the Beneficiary in First Place a notice (the "**Notice of Damaged Assets**") in the form attached hereto as **Exhibit B**, providing information on any event the consequence of which is the damage or loss of Trust Assets or if the Trust Assets are at risk of suffering any damage, and shall take any necessary actions to prevent the detriment of the Trust Assets. The Trustee shall have no obligation to secure, and shall not be required to make demands for, the notice or other information provided for under this paragraph;

    **(7)**    As long as no Notice of Default has been delivered to the Trustee, the Settlor under its responsibility and discretion shall allow third parties to have access to the Trust Assets, perform all the acts for the development of the Project; and

    **(8)**    subject to the relevant provisions of the Amended and Restated Loan Agreement, shall obtain at its expense the insurance policies that cover the Trust Assets against all type of risks and all such other coverages and insurance policies required under the Amended and Restated Loan Agreement, and shall also deliver to the Trustee originals of all such insurance policies, duly endorsed in favor of the Trustee, designating the Beneficiary in First Place as preferred beneficiary or additional insured, as the case may be, acknowledging the assignment to the Trustee of all rights, interests and benefits of the Settlor before the insurance companies under any such insurance policies. On each maturity date of an insurance policy, the Settlor shall deliver to the Trustee the originals of the evidence of payment of the corresponding premiums. The Trustee shall have no obligation to secure, and shall not be required to make demands for, the notice or other information provided for under this paragraph.

    **(c)**    Subject to reasonable safety requirements, to the provisions of the Amended and Restated Loan Agreement and to applicable law, the Settlor shall allow the employees, representatives, or agents of the Beneficiary in First Place to inspect the Trust Assets during

CONFIDENTIAL

DANSKE_0012757

reasonable periods within business hours, with previous written notice given with at least 5 (five) Business Days prior to the relevant day of inspection; *provided*, however, that such inspection shall not interfere unnecessarily with the personnel and the operations of the Settlor, as well as the development of the Project.

(d)     The Settlor hereby agrees to be liable for title defects (including without limitation *saneamiento para el caso de evicción*) in respect of the Trust Assets, pursuant to applicable law. In the event any amount is paid to the Beneficiary in First Place for claims related with any title defect of the Trust Assets, such amount shall be considered for effects of calculating Settlor's responsibility in the terms of this paragraph. This responsibility is assumed by the Settlor before the Trustee, granting to the Trustee the right to compel the Settlor in such terms in accordance with written instructions received from the Beneficiary in First Place, before the person or persons to whom the Trustee shall transfer ownership and title of any Trust Assets. Without prejudice to the foregoing, any obligation of the Trustee before third parties (provided that such obligation may not foresee legal actions against the Trustee) arising from title defects with respect to the Trust Assets (including without limitation *saneamiento para el caso de evicción*) may be complied with exclusively by the Settlor within 7 (seven) Business Days following the Trustee's or the Beneficiary in First Place's written request to the Settlor, and in case of failure thereof, the Trustee, prior written instruction of the Beneficiary in First Place, may charge any such obligations to the existing Trust Assets. Upon any of the Trust Assets being transferred, the Trustee shall notify to the relevant acquirer or acquirers that all the obligations that could result form title defects shall be complied by the Settlor in terms of article 2123 and others related of the Federal Civil Code (*Código Civil Federal*).

### Clause 8.     Appraisal of the Trust Assets.

(a)     The parties hereby agree that the Beneficiary in First Place may, prior written notice delivered to the Trustee and the Settlor, request to perform an appraisal of the Trust Assets (the "**Appraisal**") in accordance with the relevant provisions of the Amended and Restated Loan Agreement or following the occurrence and during the continuance of an Event of Default.

JNN 291386 v2

33

**Clause 9.      Covenants.** (a) As long as this Trust is in full force and effect, the Settlor agrees as follows:

**(1)**      to carry out at its own cost and expense all actions necessary to maintain the security interest created hereunder valid and binding, and to enable the Trustee to carry out any and all actions provided in this Trust;

**(2)**      to transfer to the Trustee the property of any Trust Assets as it acquires, pursuant to this Trust; and

**(3)**      to comply with all the terms and conditions set forth hereby, in the Amended and Restated Loan Agreement and in the Amended and Restated Loan Documents.

**(b)**      The Trustee shall maintain the ownership and title of the Trust Assets pursuant to the provisions of this Trust and applicable law. Except as otherwise provided expressly herein, the Trustee shall act exclusively according to the written instructions from the Beneficiary in First Place and shall dismiss any instruction received from the Settlor. All instructions directed to the Trustee shall be made in writing and shall be delivered pursuant to the terms set forth in **Clause 20**.

**Clause 10.      Foreclosure Proceeding.**

The parties hereby agree to be bound by a special proceeding of foreclosure of the Trust, in the terms of the special section included in this **Clause 10(c)**. The parties agree that in case of any default of the Secured Obligations or the occurrence of an Event of Default, the Beneficiary in First Place may instruct the Trustee to proceed with the foreclosure and sale of the Trust Assets, according to the following procedure:

**(1)**      Upon the occurrence of an Event of Default and the expiration of any cure period, the Beneficiary in First Place may direct the Trustee to proceed with the sale of all or a part of the Trust Assets in order to pay for the Secured Obligations. In case the Trustee receives an instruction to sell (hereinafter, an **"Instruction to Sell"**) from the Beneficiary in First Place, it shall proceed as set forth herein. The Instruction to Sell shall be

CONFIDENTIAL                                                                          DANSKE_0012759

signed by the Beneficiary in First Place and accompanied by a copy of the Trust certified by a notary public, shall specify a precise description of any past due and outstanding amount of the Secured Obligations, and shall include a copy of the notice through which the lender in the Amended and Restated Loan Agreement requests the payment of the corresponding Secured Obligations or state that the Settlor has not performed its obligations under the Amended and Restated Loan Agreement or the Trust or any of the Amended and Restated Loan Documents, as applicable. For purposes of this Trust, an Instruction to Sell shall enter into effect the Business Day following that in which the Trustee receives an Instruction to Sell according to this clause.

(2)      As soon as possible, but in no event later than 5 (five) Business Days following the date in which the Trustee receives the Instruction to Sell from the Beneficiary in First Place, the Trustee shall give written notice to the Settlor of the receipt of said Instruction to Sell pursuant to the terms set forth in **Clause 20** with a copy to the Beneficiary in First Place.

(3)      The Settlor shall have a term of 20 (twenty) Business Days from the date on which it receives a copy of the Instruction to Sell from the Trustee to oppose the sale of the Trust Assets. The Settlor may only oppose the sale if it provides the Trustee proof of **(i)** payment to the Beneficiary in First Place or any other means that evidence compliance of the Secured Obligations with respect to which the existence of an Event of Default was notified under the Amended and Restated Loan Agreement, **(ii)** the existence of a cure period, which has not elapsed, granted by the Beneficiary in First Place under the Amended and Restated Loan Agreement for the fulfillment of the Secured Obligations, or **(iii)** novation of the obligations under the Amended and Restated Loan Agreement, *provided*, however that such evidence is duly authorized in writing and executed by the Beneficiary in First Place. The Trustee shall be free to consult with the Beneficiary in First Place as to the accuracy of any document presented by the Settlor as proof under this paragraph.

(4)      In case the Settlor does not evidence, to the satisfaction of the Trustee, any of the events described in paragraph (3) above in the terms set forth and within the period of time mentioned in such paragraph, the Trustee, prior instruction from the Beneficiary in

JNN 291386 v2                                          35

First Place **(i)** shall deliver immediately to the Beneficiary in First Place, at the bank account the Beneficiary in First Place indicates, any cash amount part of the Trust Assets, that is in the Trust Accounts, for its application to the payment of the Secured Obligations, pursuant to the provisions of the Amended and Restated Loan Agreement and this Trust; and **(ii)** shall immediately proceed, through an Advisor (as such term is hereinafter defined) to sell the Trust Assets pursuant to this **Clause 10**; provided that the Beneficiary in First Place provides to the Trustee sufficient funds to cover any cost or expenses to be incurred in carrying out this foreclosure proceeding, including third party expenses for the execution, duties and any other obligation resulting from said proceeding. The Trustee must request the performance of an Appraisal of the Trust Assets pursuant to the terms of **Clause 8** to determine the value of the assets for purposes of the auction.

**(5)** The sale shall be conducted by the Trustee through an auction process with the participation of a third party designated for such purpose by the Beneficiary in First Place, which shall take place in Mexico, Federal District or in San José del Cabo, Baja California Sur, as elected in writing by the Beneficiary in First Place. The Trustee shall announce the auction (hereinafter referred to as an **"Auction Notice"**) in any of the major newspapers of the domicile in which the Trust Assets are located or offered for sale and in the city of Mexico, Federal District. At the direction of the Beneficiary in First Place, the Trustee shall also conduct a study or investigation of potential buyers, and shall invite potential buyers to participate in the auction process. For purposes of this clause, the Trustee shall employ and pay third parties designated in writing by the Beneficiary in First Place (**"Advisors"**) whose reasonable fees and expenses shall be borne by the Trust Assets or the Settlor. To the extent the Beneficiary in First Place deems necessary, an Advisor shall be in charge of preparing and distributing at the Settlor's cost and as soon as is reasonably possible, a confidential information memorandum (the **"Information Memorandum"**) to be delivered to potential buyers that have demonstrated an interest in purchasing the Trust Assets. The Information Memorandum shall advise potential buyers on the amount (to be determined by the Advisors) they must submit to the Trustee by means of a certificate of deposit issued by a bank, in order to guarantee the seriousness of their offer, in case any such potential buyer decides to participate in such auction. Any Advisors shall be substituted by the Trustee at the

JNN 291386 v2

36

CONFIDENTIAL

DANSKE_0012761

written request of the Beneficiary in First Place. The Trustee shall notify the Beneficiary in First Place of any event or fact of which it has actual knowledge that could affect the foreclosure process so that the Trustee is in a position to act pursuant to the instructions received from the Beneficiary in First Place with respect thereto.

(6)     Upon distribution of the Information Memorandum among the potential bidders, or after the Advisors and/or the Trustee have distributed any additional information among the potential bidders, the Trustee shall inform such bidders and the Settlor, of the date, place and time set for the auction, as well as any applicable bid base price determined by the Appraisal or Appraisals at the request of the Beneficiary in the First Place (the "**Base Price**"). Such information shall be included in the Auction Notice, which date shall not exceed 30 (thirty) calendar days as from the date on which, if applicable, the Advisors give notice to the Trustee that the distribution of the Information Memorandum has concluded.

(7)     The participating bidders shall deliver their bids in writing to the Trustee in a closed and sealed envelope within the date and time set forth in the Auction Notice, along with a certificate of deposit for the amount indicated in the Information Memorandum as guarantee of the seriousness of their offer.

(8)     The Trustee shall open the envelopes before a notary public acceptable to the Beneficiary in First Place, and the bidders or their representatives who wish to assist, on the date and time for the auction, and shall declare as winner whoever submits the highest bid (which shall be equal to or greater than the applicable Base Price, if any) and the best payment conditions at the Advisors' judgment, or if no Advisor has been hired, at the judgment of the Beneficiary in First Place (in which case, economic conditions shall be determined under economic criterion, procuring to obtain the maximum financial benefit derived from the sale or auction of the Trust Assets). As of the date the envelopes are opened, the Trustee shall diligently transfer the Trust Assets to the winning bidder.

(9)     The winning bidder shall pay the price offered according to the conditions and within the term of the winning bid.

JNN 291386 v2

37

DANSKE_0012762

**(10)**     In the event the bidder that submitted the wining offer does not make the relevant payment within the agreed term, the deposit shall be retained by the Trustee in favor of the Beneficiary in First Place, who shall apply such amount according to the stipulations of this Trust, to the payment of the Secured Obligations in accordance with the terms agreed herein.

**(11)**     If the term referred to in paragraph (9) above has expired without the winning bidder having paid the purchase price offered, the Trustee, at the direction of the Beneficiary in First Place, shall notify the bidder that made the second best offer (within the following 3 (three) Business Days); if such bidder maintains its initial offer, a new term for payment of the purchase price shall be granted; if the second best bidder does not maintain its offer, at the direction of the Beneficiary in First Place, the Trustee and the Advisors may continue with the bidders who made the best offers in descending order, according to the foregoing procedure.

**(12)**     If it is not possible to carry out the sale to any of the bidders, a new auction shall take place pursuant to the aforementioned procedure and the Trust Assets will be sold to the highest bidder, provided that in such auction the will not have a starting or base price.

**(13)**     The Trustee shall, at the direction of the Beneficiary in First Place, accept offers for only a part of the Trust Assets and, in such case, the Beneficiary in First Place shall instruct the Trustee to perform new auctions to sell the remainder following the aforementioned procedure.

**(14)**     The parties hereby expressly and irrevocably acknowledge that the foreclosure of the guarantee created under this Trust may be by judicial or extrajudicial proceeding; and if the Beneficiary in First Place so decides to foreclose by extrajudicial proceeding, it shall be carried out pursuant to this **Clause 10**.

The Settlor hereby acknowledges and signs the text contained in this **Clause 10** (special section) below and at the end of this Trust, and hereby confirms its express consent

CONFIDENTIAL      DANSKE_0012763

and irrevocable instruction to the Trustee to carry out the procedure for the extrajudicial foreclosure of the Trust Assets as set forth in this **Clause 10**.

The Settlor:

_____

By: Kenneth Aboud Jowdy

Title: General Manager

**Clause 11.**   **Application of Proceeds from Foreclosure.**

(a)   The Trustee shall apply the proceeds resulting from the sale of the Trust Assets according to the instructions of the Beneficiary in First Place, observing the following order of application:

(1)   First, for payment of any amounts due to the Trustee according to this Trust;

(2)   Second, for the payment of any reasonable expenses incurred during the extrajudicial foreclosure and sale of the Trust Assets, including, without limitation, the cost of the Appraisal described in **Clause 8**, the costs resulting from the employment of third parties responsible for the foreclosure, rights and any other obligations resulting from the sale of the Trust Assets, in each case, any other expense related with the foreclosure process set forth in **Clause 10**, to the extent approved by the Beneficiary in First Place in writing prior to the hiring of such party;

(3)   Third, for the reimbursement of any reasonable expenses paid by the Beneficiary in First Place as a result or by virtue of the sale of the Trust Assets, or that the Settlor should have paid according to the provisions hereof;

(4)   Fourth, for the payment to the Beneficiary in First Place of any and all Secured Obligations (pursuant to the order established under the Amended and Restated Loan

JNN 291386 v2                                      39

CONFIDENTIAL                                      DANSKE_0012764

Agreement), which amount may be deposited into the Collection Account at the election of the Beneficiary in First Place; and

(5)     Fifth, once the aforementioned items have been repaid, the remainder shall be reverted to the Settlor in its capacity as Beneficiary in Second Place or to the person the Settlor designates, according to the written instructions given for such purposes by the Settlor to the Trustee and according to **Clause 12** below.

(b)     Once the Trustee has sold all the Trust Assets, it shall deliver the funds of such sale and shall distribute the Trust Assets according to the terms provided in subparagraph (a) above, to the Beneficiary in First Place or its designee.

**Clause 12.     <u>Reversion of the Trust Assets</u>.**

(a)     Once each and every one of the Secured Obligations has been paid and complied with in full, the parties hereby agree that the Beneficiary in First Place shall deliver a notice to the Trustee (the **"Payment in Full Notice"**) according to the form attached hereto as **<u>Exhibit A</u>** by means of which the Beneficiary in First Place notifies the Trustee that the Settlor has complied with all the Secured Obligations and that no right or action exercisable against the Settlor for the protection of the Amended and Restated Loan Agreement exists. In the event that the Beneficiary in First Place does not deliver the Payment in Full Notice within 5 (five) Business Days following payment in full, the Settlor is hereby authorized to give notice to the Trustee thereof whereby it represents that all Secured Obligations have been complied with in full and all commitments to make Loans have terminated; provided that in all cases such notice shall be accompanied by written confirmation from the Beneficiary in First Place. In case such notice from the Settlor is received by the Trustee in the terms described above and accompanied by the written confirmation of the Beneficiary in First Place, the Trustee shall be authorized to proceed as described in this Clause as if a Payment in Full Notice had been delivered.

(b)     Within 5 (five) Business Days following the date on which the Trustee receives the Payment in Full Notice, **(i)** the property over the Trust Assets shall be reverted to the

CONFIDENTIAL                                                                 DANSKE_0012765

Settlor or to the person the Settlor designates and the Trust shall be terminated; or **(ii)** the Trustee will execute with the Trustee and the Beneficiary in First Place an amendment agreement to the Trust whereby the Beneficiary in First Place will cease to be a part of it to its complete satisfaction.. In case of reversion of the Trust Assets, the Trustee agrees to execute and sign any agreements, documents and instruments, and shall perform any actions that the Settlor reasonably requests in writing (at Settlor's cost) in order to legally perfect said transfer, including without limitation the actions set forth in **Clauses 2 and 4**.

The parties expressly acknowledge that any taxes, levies and expenses that result from the actions described in the preceding paragraph shall at all times be borne by the Settlor.

**Clause 13.**     **Obligations and Limitation of Liability of the Trustee; Defense of the Trust Assets.**

**(a)**     The Trustee agrees to manage the Trust Assets, perform its obligations and exercise its rights pursuant to the provisions hereof according to Mexican law. The Trustee's obligations hereunder are limited to those expressly stated herein and shall be carried out by the Trustee in the terms set forth herein and pursuant to the instructions of the Beneficiary in First Place or the Settlor, as applicable.

**(b)**     The parties hereto agree that neither the Trustee nor the Beneficiary in First Place shall be liable for any act or omission of the other parties or of any third party, including any Advisor that could result in the impossibility of complying with the purposes hereof.

**(c)**     If the Trust Assets are insufficient to pay in full all the Secured Obligations, the Trustee shall bear no liability whatsoever to make contributions to the Trust, or to comply with the Secured Obligations.

**(d)**     The Settlor shall be bound to notify immediately and in writing the Beneficiary in First Place of any event affecting the Trust Assets or the rights arising from this Trust, to the Settlor's knowledge.

JNN 291386 v2                                  41

CONFIDENTIAL                                                                          DANSKE_0012766

(e)     The Trustee shall inform the Settlor and the Beneficiary in First Place in writing of any threat to the Trust Assets or of any Event of Default of which it has knowledge; provided that the Trustee shall not have an obligation to investigate the existence of any such threat or Event of Default.

(f)     The Trustee shall grant in favor of the individuals or entities jointly designated in writing by the Settlor the powers of attorney necessary to defend the Trust Assets; provided that in case of an Event of Default (and the expiration of any cure period), such powers of attorney shall be granted solely upon the instructions of the Beneficiary in First Place. In case an attorney-in-fact has not been designated by the Settlor pursuant to the foregoing, and the lack of defense could affect the Trust Assets, the Trustee shall grant powers of attorney to the individuals as directed by the Beneficiary in First Place, who shall provide the appropriate instructions for the defense of the Trust Assets until the Settlor provides written instructions regarding such defense. The Trustee shall not be liable for the actions of such attorneys-in-fact, nor for payment of the corresponding costs and expenses, which shall be borne by the Settlor.

(g)     In case an urgent action, of which the Trustee has actual knowledge, is required for the protection and maintenance of the Trust Assets, the Trustee shall immediately notify the Beneficiary in First Place and Settlor and take any actions in accordance with this the instructions of the Beneficiary in First Place.

(h)     If the Trustee receives a judicial notice or otherwise, or a claim brought against the Trust or the Trust Assets, the Trustee shall send, on the day of its reception or at the latest on the next Business Day, a copy of such notice or claim to the Settlor and the Beneficiary in First Place pursuant to the terms set forth in **Clause 20** and shall send an additional copy via facsimile to the fax numbers indicated in **Clause 20** or via any other electronic means, on the same day it receives such notice or claim, unless received after 5:00 p.m. (Mexico City time) in which case any such notice shall be delivered on the following Business Day.

(i)     Notwithstanding any other terms and conditions hereof, the parties acknowledge that given the nature of some of the assets and rights which comprise the Trust

CONFIDENTIAL                                                      DANSKE_0012767

Assets, some of such assets and rights may not be fully identified at the time a foreclosure procedure under **Clause 10** is expected to commence. In this respect, the Settlor agrees to deliver to the Trustee and the Beneficiary in First Place all the information and documentation which may be required (in addition to any other express requirement pursuant to this Trust), in order to fully identify in any moment any of such rights and assets, and in any case before the Trustee receives an Instruction to Sell. The Trustee shall not be responsible for any failure to comply with this obligation, except for its own negligence, willful misconduct or bad faith determined by definitive resolution issued by a competent authority. The Beneficiary in First Place shall provide the Trustee the information it has for the purposes described above, as the case may be. In the event that in the exercise of its duties under **Clause 10**, the Trustee is required by a judicial authority, a certified appraiser, Advisor or bidder to identify individually and separately the assets which comprise the Trust Assets, the Trustee is authorized to **(i)** provide the most updated information it has in connection to such assets or which it has received from the parties to this Trust, and **(ii)** notify in writing to the Beneficiary in First Place of such request within 3 (three) Business Days following the date on which such request had been communicated to the Trustee and to respond such request in the manner indicated in writing by the Beneficiary in First Place.

**Clause 14.     Mandatory Provisions Regarding Trustee Liability.**

Pursuant to Article 106, XIX, of the Credit Institutions Law and the provisions of Regulation 1/2005, the Trustee represents that it has explained clearly and correctly to the parties hereto the terms, legal meaning and consequences of the following provisions, which are herein transcribed for any purpose required by law:

*"ARTICLE 106. It shall be prohibited to banking institutions:*

*XIX. In the performance of the transactions referred to in Section XV of Article 46 of this Law:*

*a) Derogated.*

CONFIDENTIAL                                                         DANSKE_0012768

b) To respond to the Settlor, principals or agents, of any breach by the debtors, for loans granted thereto, or on behalf of issuers, for securities acquired, unless it is due to their fault, as set forth in the last paragraph of article 391 of the General Law of Negotiable Instruments and Credit Transactions, or to guarantee obtaining certain returns in connection with funds, the investment of which is entrusted to credit institutions.

If upon termination of the trust agreement, mandate or agency established to grant loans, any such loans shall have not been repaid by the debtors, the institution shall transfer them to the settlor or the beneficiary, as the case may be, or to the representative or agent, and the credit institution shall refrain from repaying any outstanding amounts.

In any trust agreements, mandates or agencies, the prior paragraphs shall be inserted conspicuously as well as a representation from the institution to the effect that it has, clearly and correctly, made its meaning be known to the persons from whom it has received assets for their trust conveyance.

c) To act as trustees, attorneys-in-fact or agents in trusts, mandates or agencies, respectively, by means of which public resources are obtained directly or indirectly, through any act that creates a direct or contingent liability, except for trusts created by the Federal Government through the Ministry of Finance and Public Credit and trusts through which securities registered in the National Registry of Securities are issued pursuant to the Mexican Securities Market Law;

d) To carry out its obligations under trusts, mandates or agencies referred to in the second paragraph of article 88 of the Investment Trust Law;

CONFIDENTIAL                                                    DANSKE_0012769

*e) To participate in trusts, mandates and agencies for the avoidance of limitations and prohibitions of financial legal provisions;*

*f) To use funds or securities of trusts, mandates or agencies created for the granting of credits in which the trustee has the discretional authority to enter into transactions in which the debtors are or may be their trust delegates; proprietary and alternates members of the board of directors or management board, as applicable, whether on duty or not; the external auditors of the institution, the members of the technical committee of the applicable trust; the upward or downward bloodline relatives in first degree or the spouses of said individuals, the corporations on which said individuals or institutions have a majority on their shareholders meetings, and the individuals or entities determined by the Central Bank through the issuance of general rules, and*

*g) To manage rustic property, unless they have been appointed as administrators in order to distribute the estate amongst heirs, associates or creditors, or to pay an obligation or to guarantee its compliance thereto with the value of the property or its products, and subject to the fact that in no event their management of the property must exceed a two-year term, except for production and guaranty trusts.*

*Any agreement contrary to the provisions of the preceding sections shall be null and void."*

In addition, pursuant to the provisions set forth in section 5.5 of Regulation 1/2005, the relevant provisions of section 6 of such Regulation 1/2005 are hereby transcribed for all pertinent purposes:

*"6. PROHIBITIONS*

JNN 291386 v2

45

CONFIDENTIAL

DANSKE_0012770

*6.1. In the execution of trust agreements, Trustees shall not be permitted to:*

*a) Charge to the Trust Assets prices different than those agreed at the time of arranging the corresponding transaction;*

*b) Guarantee the payment of revenues or prices on funds, the investment of which is entrusted to the trustee, and*

*c) Carry out transactions in terms and conditions that are against their internal policies and adequate financial practices.*

*6.2. The Trustee Institutions shall not carry out transactions with securities, negotiable instruments or any other financial instrument, that do not comply with the specifications agreed in the corresponding Trust Agreement.*

*6.3. Trustees shall not enter into any type of trust that they are not authorized to execute pursuant to the laws and regulations to which they are subject to.*

*6.4. Trustees shall not, in any event, cover, with charge to the Trust Assets, the payment of any sanction imposed to such Trustee Institutions by any authority.*

*(...)*

*6.6. Trustees shall observe the provisions of articles 106 section XIX of the Credit Institutions Law, 103 section IX of the Securities Market Law (Ley del Mercado de Valores), 62 section VI of the General Law of Insurance Mutual Funds Institutions and Companies (Ley General de Instituciones y Sociedades Mutualistas de Seguros), 60 section VI Bis of the Federal Law of Bond Institutions (Ley Federal de*

CONFIDENTIAL                                                   DANSKE_0012771

*Instituciones de Fianzas), and 16 of the Administrative Law of Financiera Rural (Ley Orgánica de Financiera Rural) as applicable."*

## Clause 15.  Substitution of the Trustee.

**(a)**    Subject to the provisions of paragraphs (d) and (e) below, the Trustee may terminate its participation as trustee as provided hereunder by delivery of a written notice to the Settlor and the Beneficiary in First Place at least 30 (thirty) calendar days in advance thereto. Subject to the provisions of paragraph (d) below, the designation of the Trustee may also be terminated by delivery of written notice by the Beneficiary in First Place at least thirty 30 (thirty) calendar days prior to termination.

**(b)**    If the Trustee ceases to act as trustee hereunder due to an early termination in accordance with paragraph (a) above, the Trustee shall prepare financial statements, balance sheets and statements of account related to the Trust Assets for the period comprised since the last statements was delivered to the parties up the date which the Trustee ceases to act as such under the Trust, which shall be delivered to the Beneficiary in First Place and the Settlor within 30 (thirty) calendar days following such termination. The Settlor and the Beneficiary in First Place shall have 15 (fifteen) Business Days as of the date of reception to examine and submit objections to such financial statements, balance sheets and statements of account, and if after such period no objection has been submitted, the financial statements, balance sheets and statements of account shall be deemed approved by the Settlor and the Beneficiary in First Place and the Trustee will be released of any responsibility under this Trust.

**(c)**    The Beneficiary in First Place shall be entitled to remove the Trustee and designate any successor Trustee, provided said successor has at least the same operative capacity and knowledge of the trust business in Mexico as the Trustee has.

**(d)**    The Trustee shall continue to act as trustee hereunder until a successor trustee has been designated and such designation has been accepted, on the understanding that the Beneficiary in First Place shall exercise all reasonable efforts to designate the successor trustee in a timely fashion.

CONFIDENTIAL                                                      DANSKE_0012772

(e)     The successor trustee shall have the same rights and obligations of the Trustee hereunder and shall be deemed the "Trustee" for purposes hereof.

**Clause 16.     <u>Trustee's Fees and Expenses</u>.**

The Settlor agrees to pay to the Trustee or to its successor pursuant to the terms set forth in **Clause 15** the fees specified in **Exhibit H** as well as all other reasonable and documented costs and expenses incurred by the Trustee in connection with the performance of its obligations hereunder, including the enforcement of the guarantee hereunder. In case the Settlor fails to comply with any of its obligations to pay fees or expenses to the Trustee, the Trustee **(i)** may request that the Beneficiary in First Place pay such fees or expenses and the Beneficiary in First Place may effectuate such payment and shall, in such case, have the right to make the relevant claim against the Settlor for the amount of such payment plus interest according to the provisions of the Amended and Restated Loan Agreement and/or **(ii)** pay the respective reasonable fees and/or expenses at the expense of the Trust Assets .

Except as otherwise provided herein, any and all taxes, expenses, reasonable fees derived from the preparation, execution and registration of this Trust and any amendments hereto, any act, covenant, document, instrument or notice performed by and prepared, executed or notified in accordance with this Trust, including without limitation, reasonable notary public fees and expenses, governmental fees incurred by the Beneficiary in First Place and Trustee in performance with their respective rights and obligations and any execution of the Trust Assets in accordance with this Trust, shall be borne exclusively by the Settlor.

**Clause 17.     <u>Taxes</u>.**

Any and all taxes (including, without limitation, any income taxes, applied on a withholding or otherwise, sale taxes, value added taxes, ownership and title or possession taxes, and asset taxes), levies, duties, profit revenues or charges of any nature that are imposed on, or in connection with the Trust Assets, this Trust or in connection with the performance by the Trustee shall be borne by the Settlor, on the understating that the Trustee shall not be responsible for the calculation, withholding and payment of any taxes, levies,

JNN 291386 v2                                        48

duties, profit revenues unless required by applicable law. Additionally, the Settlor and the Beneficiary in First Place hereby agree that the tax known as the Flat-Rate Business Tax (*Impuesto Empresarial a Tasa Única*) derived from the provisions of the Flat-Rate Business Tax Law, as the case may be, shall be paid and delivered by the Settlor, releasing the Trustee hereby from any liability or responsibility related to the tax foreseen in said Law or the law and/or tax that substitutes it.

If for any reason, any fiscal authority notifies the Trustee regarding any interpretation to the effect that the activities of this Trust are considered as taxable and therefore the Trustee had to retain and pay any taxes in accordance with this Trust or any act related thereto, and that the Settlor and/or the Beneficiary in First Place disregard the notice of said events and do not appoint representatives to defend the Trust Assets, the responsible party pursuant to the terms set forth in this Trust, agrees to hold the Trustee free and harmless and assist the Trustee and provide the Trustee, its shareholders, members of the board of directors, trust delegates, attorneys-in-fact, representatives, advisors and/or employees the necessary funds in order to comply with said requirements pursuant to applicable laws. The Trustee shall be released for any acts related to such withholdings and payments and in the event that the authority imposes fine or sanctions to the Trustee, the responsible party pursuant to this Trust agrees to immediately pay or reimburse any expense or payment made by the Trustee. The Trustee shall be at all time entitled to legal representation by its own counsel, advisors, and tax experts in relation to any fiscal obligations to be paid with the Trust Assets. Pursuant to the foregoing, the Settlor and/or the Beneficiary in First Place who is responsible for the non-compliance of the tax obligation agrees to indemnify and hold the Trustee, its shareholders, board members, trust delegates, attorneys-in-fact, representatives, advisors and/or employees of any responsibility and damage related to the payment of taxes (including reasonable market fees and expenses of tax experts and counsels) derived from the execution or fulfillment of this Trust.

The aforementioned provided, that neither the Settlor nor the Trustee shall be responsible of the payment of income tax or its equivalent, of the Beneficiary in First Place

49

derived form the appropriation of the Real Estate, if applicable, in accordance with the terms of **Clause 10** hereof.

**Clause 18.** <u>Reports.</u>

**(a)** The Trustee hereby agrees to provide the Beneficiary in First Place and the Settlor a monthly balance statement regarding the Trust Assets and the investments made in connection therewith. Such balance statements shall be prepared by the Trustee based on the values of the Trust Assets specified according to **Clause 8** and shall be delivered to the Settlor and the Beneficiary in First Place within the first 10 (ten) Business Days of each following month, provided that that the first and last balance statement may refer to an irregular quarter. The Beneficiary in First Place and the Settlor shall have a period of 10 (ten) Business Days from the date of receipt of the relevant balance statements to review and approve such reports, on the understanding that failure to provide any comments to the Trustee within such time period shall mean that such balance statements have been approved by the Beneficiary in First Place and the Settlor.

**(b)** The Trustee agrees to provide the Beneficiary in First Place and the Settlor all information reasonably requested by them in writing with anticipation of 3 (three) Business Days in connection with this Trust and the Trust Assets that are specifically related to delivery of services hereunder.

**Clause 19.** <u>Term; Irrevocability.</u>

This Trust shall be irrevocable and shall remain in full force and effect during the term necessary to perfect the purposes herein provided, and may not be terminated until the Secured Obligations have been paid in full which shall be confirmed by the Beneficiary in First Place at the request of the Settlor or the Trustee.

**Clause 20.** <u>Notices.</u>

**(a)** In order to be valid, all notices and other communications in connection with this Trust shall be made in writing, in the Spanish and English languages (or accompanied by

CONFIDENTIAL DANSKE_0012775

a translation in English or Spanish language, as applicable, provided that, in case of controversy the Spanish version shall prevail), and shall be addressed to the domiciles indicated below, or to any other address or fax transmission number designated by the addressee thereof pursuant to the terms set forth in this Clause to the other parties. Such notices and communications shall be delivered personally or by private courier with acknowledged receipt or by fax transmission with a confirmatory copy delivered personally or by private courier with acknowledged receipt addressed as described above, following of the original, and shall be effective, if sent by personally when there is evidence that it was received in the corresponding domicile: if they are delivered by private courier with acknowledged receipt, when there is evidence of receipt in the corresponding domicile by messenger, when received, or if sent by fax, when transmitted and confirmation of transmission is received. The parties indicate the following as their domiciles:

The Trustee:

Paseo de la Reforma 115, piso 23

11000, Lomas de Chapultepec

Distrito Federal, México

Telephone: +52 55 50 63 39 00

Fax +52 55 50 63 39 39

Attention: Carlos López-Cedeño / Elizabeth Cid del Prado

To Settlor:

Calle Alikan S/N,

Col. Ampliación Mariano Matamoros, CP 23460

Cabo San Lucas, Los Cabos,

Baja California Sur, México

Telephone: +52 624 105 0062

Fax: +52 624 105 0061

Attention: William Najam / Fernando M García Campuzano

JNN 291386 v2                                         51

Copy for:

Baker & Hostetler LLP

45 Rockefeller Plaza

New York, New York  10111

Fax: (212)-589-4291

Attention: Laurence Markowitz, Esq.


The Beneficiary in First Place:

75 King William Street,

Londres EC4N 7DT

Inglaterra

Telephone: +44 (0)20 7410 8312

Fax: +44 (0)20 7410 8005

Attention: Jovan Atkinson


Copy for:

Venable LLP

750 E. Pratt Street

Baltimore, Maryland  21202

Fax:  (410) 224-7742

Attention:  Mitchell Kolkin, Esq. y M. Jay Yurow, Esq.


Copy for:

Jáuregui, Navarrete y Nader, S.C.

Paseo de los Tamarindos 400-B, Pisos 7, 8 y 9

Bosques de las Lomas

05120 México, D.F.

Telephone: + 52 55 5276 4500

Fax: (52) (55) 5258-0601

Attention: Javier Arreola / Vanessa Franyutti

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012777

(b)      Any third party that in the future joins this Trust shall, at such time, provide its domicile and fax number in writing to the Trustee.

(c)      The parties, being aware of the risks that may imply the issuance of instructions by electronic means, such as errors, security breach, and lack of confidentiality as well as the possibility of fraudulent acts, agree that the delivery of all communications related to this Trust shall be made pursuant to the terms set forth in section (a) above. According to the foregoing, the parties hereby authorize the Trustee to proceed with the instructions received by the means described herein and release the Trustee for said transmissions and agree to indemnify the Trustee in the terms set forth in the indemnification established herein.

The foregoing on the understanding that the Trustee shall not be under an obligation to verify the authenticity of said instructions or communications, but shall verify that the signatures contained therein are, in its opinion, similar to the ones of the signatories pursuant to this Trust. The Trustee shall have discretion, as long as it is due to a reasonable suspicion or motive to act or not and/or to request a confirmation from any transmission received pursuant to this Clause, on the understanding that the Trustee shall immediately notify the parties if the Trustee has decided to defer the fulfillment of the instructions, until it has received such confirmation.

The Trustee is duly authorized to act under the instructions transmitted in accordance with this Clause. In case the instructions on transfers of funds, when said instructions are given pursuant to the terms set forth in section (a) above, the Trust may confirm said instructions by telephone with the signatories appointed before the Trustee in the terms set forth in **Exhibit I**. Signatories and telephone numbers for confirmations may be modified by means of a written notice executed by the representative of the Settlor or Beneficiary in First Place, duly received and confirmed by the Trustee. The parties agree that this procedure is commercially reasonable.

Additionally, it is understood that in transfers of funds, the Trustee and the beneficiary bank may depend on the account numbers or any other similarly provided identification number to identify **(i)** the beneficiary, **(ii)** the beneficiary's bank or **(iii)** any other

JNN 291386 v2

53

intermediary bank. The Trustee shall use the funds of the Trust to comply with any payment order it should make pursuant to this Trust using said identification number, even when it results in payment to a person who is not a beneficiary, to a bank that is not the beneficiary's bank or to a bank that is not the appointed intermediary bank.

In case instructions are not signed as abovementioned and/or a confirmatory telephone call was not able to be made, the parties expressly and irrevocably instruct the Trustee not to execute the instructions. Any person that is party hereto shall deliver to the Trustee a list in the terms of **Exhibit I**, on the understanding that the parties may appoint from time to time new signatories, and in terms substantially similar to the instructions contained in **Exhibit I**.

### Clause 21.    Amendments.

This Trust may only be modified through an instrument signed by the Settlor, the Trustee and the Beneficiary in First Place and ratified before a notary public.

### Clause 22.    Assignment.

Neither the Trustee nor the Settlor may assign or transfer their rights or delegate their obligations under this Trust, except **(i)** with the prior written consent of the Beneficiary in First Place, and **(ii)** in those cases expressly provided herein. The Beneficiary in First Place may assign all or part of its rights resulting from this Trust, with a written notice of the assignment to the Trustee and the Settlor, without any additional formality except for the fulfillment of the requirements and guidelines regarding the "Know Your Customer" policy of the Trustee as of that date.

### Clause 23.    Indemnity.

**(a)**    The Settlor hereby agrees to **(i)** indemnify, hold the Trustee, its shareholders, members of the board of directors, trust delegates, attorneys-in-fact, officers and/or employees free and harmless from any liability arising out of or relating to the execution and fulfillment of the Trust, except in cases of willful misconduct, negligence or bad faith of the Trustee determined by definitive resolution issued by a competent authority, or failure by the

CONFIDENTIAL                                                                    DANSKE_0012779

Trustee to comply with its obligations hereunder, and (ii) defend (in which case the Trustee shall grant the individuals appointed by the Settlor the necessary or convenient powers of attorney for such purposes in accordance with applicable laws and the provisions hereof), hold the Trustee free and harmless and indemnify the Trustee as well as its subsidiaries, affiliates, trust delegates, employees and attorneys-in fact, with charge to the Trust Assets and /or with their own funds in the cases where applicable legal provisions do not permit to charge the Trust Assets, as well as in the case where the Trust Assets are not sufficient, from all and any liability, damage, obligation, lawsuit, judgment, settlement, requirement, costs and/or expenses of any kind, including reasonable and documented legal fees, against, imposed on, arising out of or relating to the execution of this Trust and the actions of the Trustee to comply with its obligations and the purposes set forth herein, including the foreclosure proceeding set forth herein, and to defend the Trust Assets, or for claims, penalties, fines and any other debt of any kind in connection with the Trust and the Trust Assets, before administrative, judicial or arbitral authorities or any other local, federal Mexican or foreign instance, except in the case of willful misconduct, negligence or bad faith of the Trustee determined by definitive resolution issued by a competent authority or any of its trust delegates, employees and attorneys-in fact, or failure by the Trustee to comply with its obligations hereunder.

(b)     The Settlor hereby agrees to pay in advance any expense or disbursement of any kind (including reasonable and documented lawyers fees and expenses) incurred by the Trustee and its representatives for any damage or loss of profit suffered due to, or related with, any claim, judgment, proceeding or lawsuit against the Trustee by any person in the United Mexican States or abroad, in connection with any action conducted to comply with the purposes set forth herein or the defense of the Trust Assets except in the case of willful misconduct, negligence or bad faith of the Trustee or its representatives determined by definitive resolution issued by a competent authority. The parties to the Trust hereby agree that in case the Settlor does not pay in advance to the Trustee the expenses and disbursements mentioned above as provided in this Clause or does not reimburse such expenses and disbursements within 3 (three) Business Days following the date on which the Trustee gives notice to them, the Trustee may collect any amount owed to it by charging the Trust Assets.

JNN 291386 v2                                        55

(c)     The Trustee shall not be obligated to exercise any action according to this Trust that exposes it to responsibility of its officials or against its ownership and title, or that contravenes this Trust or applicable law.

(d)     The Trustee shall not have, in any case, authority or obligation to use its own assets for the purposes of this Trust and to comply with its obligations, nor to pay the expenses referred to in this Clause, but shall only and exclusively use the Trust Assets up to the value of such Trust Assets.

(e)     Notwithstanding any rights of the Trustee hereunder and subject to the terms and conditions hereof, the Trustee shall be liable for damages and loss of profits caused by its failure to comply with its obligations under this Trust.

(f)     The Settlor shall indemnify and hold the Trustee and the Beneficiary in First Place free and harmless in the event of any environmental contingency related to this Trust or any other document related hereto, provided that such contingency does not derive from the willful misconduct, negligence and bad faith of the Trustee determined by definitive resolution issued by a competent authority.

(g)     The Trustee shall not be liable for any acts or omissions of the Settlor and the Beneficiary in First Place that may impede the fulfillment of the purposes of the Trust.

(h)     To carry out the acts set forth in this Trust, the Trustee shall act at all times pursuant to the terms set forth herein and according to the terms set forth in the contracts and documents the Trustee enters into in the fulfillment of the purposes of this Trust. In view of the foregoing, the Trustee shall not be responsible for:

(i)     The acts performed in fulfillment of the terms set forth in this Trust;

(ii)     The acts performed in fulfillment of the terms set forth in the contracts and documents entered into pursuant to the terms set forth in this Trust;

(iii)     The acts performed in fulfillment of written instructions received pursuant to the terms set forth in this Trust;

CONFIDENTIAL                                                                                          DANSKE_0012781

**(iv)**    Any delay or breach of any payment the Trustee should make, when said omission or delay are a direct consequence of the breach of legal or contractual obligations of third parties;

**(v)**    The safety and protection of the Real Property, the control of the access to same nor the acts carried out by the people that enter to the Real Property, except when the Trustee is in possession of the Real Property;

**(vi)**    The facts, acts and omissions of any party to this Trust (except for the Trustee) or third parties that impede or difficult the fulfillment of the purposes of this Trust.

**(i)**    Except for those provisions specifically set forth in this Trust, the Trustee shall not be under the obligation to confirm or verify the authenticity of any report or certificate delivered by any of the parties to the Trust to the Trustee pursuant to this Trust. The Trustee does not assume any responsibility regarding any representation made by the other parties of this Trust or in the documents related to the Trust.

**(j)**    In case of condemnations in trials followed in connection with the Trust Assets of the Trust or against the Trustee in such character, by any third party, the payment of the expenses and costs, shall be exclusively borne by the Settlor, with no responsibility to the Trustee, in case the Trust Assets are not sufficient to pay said expenses and costs.

**Clause 24.    <u>Labor Matters.</u>**

The Trustee, its representatives, trust delegates, employees, attorneys in fact and any other personnel, shall have no labor or employment relationship or any liability with the persons or entities contracted by the Settlor for the operation, administration or any other acts related to the Trust Assets. The Settlor assumes the obligation to hold the Trustee free and harmless from any claim that such persons or entities may file against the Trustee.

**Clause 25.    <u>Governing Law, Interpretation and Jurisdiction.</u>**

This Trust shall be governed by and construed in accordance with the laws of the United Mexican States. For the interpretation and enforcement of this Trust, in respect of any

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012782

action or legal proceeding hereunder, the parties hereto hereby expressly and irrevocably submit to the jurisdiction of the competent courts located in **(i)** Mexico, Federal District, **(ii)** the place where the Real Property is located, or **(iii)** the respondent's domicile, as elected by the plaintiff, and hereby expressly and irrevocably waive any other jurisdiction to which they may be entitled by reason of their present or future domicile or otherwise.

**Clause 26.** **Severability.**

If any provision of this Trust shall be held invalid or unenforceable, the remainder of this Trust shall remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

**Clause 27.** **Exhibits.**

The parties acknowledge that the following exhibits enclosed to this Trust are an integral part of the Trust."

**SECOND.** The parties agree that this Amendment and Restatement Agreement does not constitute a novation of the provisions of the Trust, and with the exception of the amendments herby agreed, all the provisions of the Trust shall remain in full force and effect, and therefore, the parties hereby confirm and ratify in every aspect all the provisions of the Trust.

**THIRD.** The Settlor shall pay the Trustee the amount of $5,000.00 (five thousand Dollars, legal currency of the United States of America) plus the applicable Value Added Tax, as its fees for the execution of this Amendment and Restatement Agreement.

**FOURTH.** This Amendment and Restatement Agreement shall be governed and construed in accordance with Clause 25 of the Trust, the parties hereby expressly waiving any other jurisdiction to which they may be entitled for any reason whatsoever.

**IN WITNESS WHEREOF**, the parties hereto execute this Amendment and Restatement Agreement on this March 6, 2009.

JNN 291386 v2

CONFIDENTIAL

DANSKE_0012783

**CERTIFIED COPY:**   *FIRST OF THE DEED CONTAINING THE AMENDMENT AND RESTATEMENT AGREEMENT, WHICH IS ENTERED INTO, ON THE ONE HAND, BY DIAMANTE CABO SAN LUCAS, S. DE R.L DE C.V. AS TRUSTOR AND SECONDARY TRUST BENEFICIARY, AND ON THE OTHER HAND, DANSKE BANKS A/S LONDON BRANCH AS PRIMARY TRUST BENEFICIARY.*

**Deed Number:**   *78,882*

**Volume:**   *1292*

**Date:**   *06/03/2009*

CONFIDENTIAL

DANSKE_0014041

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

1

**VERIFIED**
[signature]

-------------------- **VOLUME NUMBER ONE THOUSAND TWO HUNDRED NINETY-TWO**..........

**- DEED NUMBER SEVENTY-EIGHT THOUSAND EIGHT HUNDRED EIGHTY-TWO**

--- In the City of La Paz, Baja California Sur, Mexico, on the sixth day of March of the year two thousand and nine, I, Mr. JOSE ALBERTO CASTRO SALAZAR, Notary Public attached to Notary Public Office Number SEVEN, of the State and of the Federal Real Estate, with office in the Municipalities of La Paz, Los Cabos, and with Residence in the State Capital, whose head is Mr. HECTOR CASTRO CASTRO, acting in accordance with the provisions of articles (61) sixty-one and (29) twenty-nine of the Notary Law in force, **ENTERED IN THE NOTARIAL RECORDS** the deed drawn up outside of my Notary Office, and in which I consigned an **AMENDMENT AND RESTATEMENT AGREEMENT** TO THE GUARANTEE IRREVOCABLE TRUST AGREEMENT TRANSFERRING TITLE OF OWNERSHIP IDENTIFIED WITH THE NUMBER F/00321 (THE "AMENDMENT AND RESTATEMENT AGREEMENT") DATED MARCH 6, 2009, ENTERED INTO BY **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.** ("DIAMANTÉ CABO"), REPRESENTED IN THIS ACT BY **KENNETH ABOUD JOWDY**, ACTING AS TRUSTOR AND SECONDARY TRUST BENEFICIARY ("TRUSTOR" OR "SECONDARY TRUST BENEFICIARY," DEPENDING ON THE CONTEXT), WHO IN THIS ACT APPOINTS AS ITS CERTIFIED TRANSLATOR MR. **FERNANDO MANUEL GARCIA CAMPUZANO; DANSKE BANK A/S, LONDON BRANCH, THE LONDON BRANCH OF A COMPANY CONSTITUTED IN THE KINGDOM OF DENMARK**, REPRESENTED IN THIS ACT BY **GUSTAVO IGNACIO ALARCÓN CABALLERO**, IN ITS CAPACITY AS PRIMARY TRUST BENEFICIARY (THE "PRIMARY TRUST BENEFICIARY"); AND THE BANK OF NEW YORK MELLON, S.A., MULTIPLE BANKING INSTITUTION (UNIVERSAL AND FINAL LEGAL ASSIGNEE OF BANCO J.P. MORGAN, S.A., MULTIPLE BANKING INSTITUTION, J.P. MORGAN FINANCIAL GROUP, TRUST DIVISION) IN ITS CAPACITY OF TRUSTEE OF TRUST F/00321, REPRESENTED IN THIS ACT BY ITS DELEGATE TRUSTEE **ELIZABETH CID DEL PRADO GARCÍA DE LEÓN** (THE "TRUSTEE")...............................................

--- The aforementioned document is added to the annex of volume one thousand two hundred and ninety-two, of my notarial records under the letter "A," in the file corresponding to this deed, the document in question is duly signed and sealed, which is entered into the notarial records for FORMALIZATION purposes. I ATTEST...............................................

I DEFINITIVELY AUTHORIZE THIS DOCUMENT IN THE CITY OF LA PAZ, BAJA CALIFORNIA SUR, ON THE SAME DATE IT IS GRANTED BECAUSE NO TAX IS DUE THEREON. I ATTEST...............................................

MR. JOSE ALBERTO CASTRO SALAZAR. SIGNED. NOTARY'S AUTHORIZING SEAL.......

--- ANNEX LETTER "A". THE DOCUMENT BEING NOTARIZED...............................................

----------------------------------------------------- **ANNEX A** ...............................................

1

DANSKE_0014042

2

--- In the City of La Paz, Baja California Sur, Mexico, on the sixth day of March of the year two thousand and nine, I, Mr. JOSE ALBERTO CASTRO SALAZAR, Notary Public attached to Notary Public Office Number SEVEN, of the State and of the Federal Real Estate, with office in the Municipalities of La Paz, Los Cabos, and with Residence in the State Capital, whose head is Mr. HECTOR CASTRO CASTRO, acting in accordance with the provisions of article (29) twenty-nine of the Notary Law in force, **ATTEST**;....................................................

**AMENDMENT AND RESTATEMENT AGREEMENT** TO THE GUARANTEE IRREVOCABLE TRUST AGREEMENT TRANSFERRING TITLE OF OWNERSHIP IDENTIFIED WITH THE NUMBER F/00321 (THE "AMENDMENT AND RESTATEMENT AGREEMENT") DATED MARCH 6, 2009 CONCLUDED BETWEEN **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.** ("DIAMANTE CABO"), REPRESENTED IN THIS ACT BY **KENNETH ABOUD JOWDY**, ACTING AS TRUSTOR AND SECONDARY TRUST BENEFICIARY ("TRUSTOR" OR "SECONDARY TRUST BENEFICIARY," DEPENDING ON THE CONTEXT), WHO IN THIS ACT APPOINTS MR. **FERNANDO MANUEL GARCIA CAMPUZANO AS HIS EXPERT TRANSLATOR; DANSKE BANK A/S, LONDON BRANCH, THE LONDON BRANCH OF A COMPANY CONSTITUTED IN THE KINGDOM OF DENMARK**, REPRESENTED IN THIS ACT BY **GUSTAVO IGNACIO ALARCÓN CABALLERO**, IN HIS CAPACITY AS PRIMARY TRUST BENEFICIARY (THE "PRIMARY TRUST BENEFICIARY"); AND THE BANK OF NEW YORK MELLON, S.A., MULTIPLE BANKING INSTITUTION (UNIVERSAL AND FINAL LEGAL ASSIGNEE OF BANCO J.P. MORGAN, S.A., MULTIPLE BANKING INSTITUTION, J.P. MORGAN FINANCIAL GROUP, TRUST DIVISION) IN ITS CAPACITY OF TRUSTEE OF TRUST F/00321, REPRESENTED IN THIS ACT BY ITS DELEGATE TRUSTEE **ELIZABETH CID DEL PRADO GARCÍA DE LEÓN0** (THE "TRUSTEE")...........................................
------------------------------------------- -**BACKGROUND**...........................................

1.  . On March 10, 2006, Lehman Brothers Holdings Inc. ("Lehman Brothers") granted Diamante Cabo a loan in the amount of up to $125,000,000.00 (One hundred and twenty-five million United States Dollars) in principal, plus interest and commissions (the "Original Credit").......

2.   In relation to the Original Credit, on March 10, 2006 the following documents were signed: (i) Original Loan Agreement *(Loan Agreement)* entered into between Diamante Cabo and Lehman Brothers (the "Original Loan Agreement"); (ii) Promissory note *(Promissory Note)* signed by Diamante Cabo (the "Promissory Note"); (iii) Agreement for the Assignment of Leases and Rents *Assignment of Leases and Rents*, between Diamante Cabo and Lehman Brothers (the "Assignment of Rents"); (iv) a *(Recourse Guarantee)* concluded by Mr. Kenneth A. Jowdy (the "Guarantor") and Lehman Brothers, effective as of March 10, 2006 (the "Recourse Guarantee"); (v) effective as of March 10, 2006 (the "Recourse Guarantee"); (v) Environmental Liability and Indemnity Document *(Indemnity Agreement)* entered into between Diamante Cabo, the Guarantor, and Lehman Brothers (the "Environmental Indemnity"); (vi) Pledge Agreement on equity interests *(Pledge Agreement)* entered into between Diamante Cabo, the Guarantor, Diamante Cabo San Lucas LLC ("U.S. LLC"), and Lehman Brothers (the

[seal:] [illegible]

2

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

3

**[seal:] [illegible]
VERIFIED**

"Pledge Agreement (Corporate Shares of the Trustor)"); (vii) Pledge Agreement on assets entered into between Lehman Brothers and Diamante Cabo (the "Pledge Agreement (Assets)"); (viii) Pledge Agreement entered into between the Guarantor, U.S. LLC, and Lehman Brothers (the "Pledge Agreement (Corporate Shares of the Borrower)"); (ix) Pledge Agreement (*Pledge Agreement*) entered into between the Guarantor, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC, and CSL Properties 2006, LLC (collectively, the "Members of the U.S. LLC") and Lehman Brothers (the "Pledge Agreement on US Corporate Shares"); (x) Omnibus Assignment (*Omnibus Assignment*) entered into between Diamante Cabo and Lehman Brothers (the "2006 Omnibus Assignment"); and (xi) Completion Guarantee Performance Document (*Completion Guarantee*), granted by the Guarantor in favor of Lehman Brothers; and (xii) Guarantee (*Guarantee*) granted by the Members of the U.S. LLC, the Guarantor, and the U.S. LLC in favor of Lehman Brothers. The documents mentioned above, as they have been amended, are jointly known as the "2006 Transaction Documents."

3.   Likewise, dated March 10, 2006, by means of public deed number 65,041 granted before the undersigned notary, registered in the Public Registry of Property and Commerce of San José del Cabo, Baja California Sur, under number 135, page 135, volume CCXLV, dated May 8, 2006, Diamante Cabo, as trustor and secondary trust beneficiary, Lehman Brothers, as primary trust beneficiary, and Banco JP, Morgan, S.A., Multiple Banking Institution, J.P. Morgan Financial Group, Trust Division (currently The Bank of New York Melton, S.A., Multiple Banking Institution, universal and final legal assignee of the former), as trustee, entered into the trust agreement identified with number F/00321 (the "Trust") in order to ensure compliance with the obligations of Diamante Cabo, the Members of the U.S. LLC, the U.S. LLC, and the Guarantor under the 2006 Transaction Documents.

4.   On the date of execution of the Trust, Diamante Cabo contributed the following properties to its assets (hereinafter the "Premises"):

--- a).-  PLOT 1 ONE: on the property known as LA LAGUNA, in the portion known as Rancho El Cardonal in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, with cadastral key 4-02-013-0081 four dash zero two dash zero one three dash zero zero eight one, with an area of 5-92-68 hectares. (five hectares ninety-two ares and sixty-eight centiares) and the following measurements and boundaries:

From vertex G to vertex H towards the North for a distance of (191.89 m) one hundred ninety-one point eighty-nine meters, and an angle of (115º 38' 05") one hundred fifteen degrees, thirty-eight minutes, and five seconds, adjacent to Plot (VII) seven.

CONFIDENTIAL

DANSKE_0014044

From vertex H to vertex I towards the North for a distance of (127.52 m) one hundred twenty-seven point fifty-two meters, and an angle of (120º 09' 21") one hundred twenty degrees, nine minutes, and twenty-one seconds, adjacent to Plot (VII) seven.......................

From vertex I to vertex J towards the North for a distance of (31.50 m) thirty-one point fifty meters, and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (VII) seven.........................................................

From vertex J to vertex A towards the North for a distance of (125.00 m) one hundred twenty-five meters, and an angle of (107º 08' 24") one hundred seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (VII) seven.........................................................

From vertex B to vortex C towards the South for a distance of (125.00 m) one hundred twenty-five meters, and an angle of (287º 08' 24") two hundred eighty-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (III) three............................................

From vertex C to vertex D towards the South for a distance of (31.50 m) thirty-one point fifty meters, and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (III) three.............................................................................

From vertex D to vertex E towards the South for a distance of (127.52 m) one hundred twenty-seven point fifty-two meters, and an angle of (300º 09' 21") three hundred degrees, nine minutes, and twenty-one seconds, adjacent to Plot (III) three......................................

From vertex E to vortex F towards the South for a distance of (191.88 m) one hundred ninety-one point eighty-eight meters, and an angle of (295º 38' 05") two hundred ninety-five degrees, thirty-eight minutes, and five seconds, adjacent to Plot (IV) four............................

From vertex A to vertex B towards the East for a distance of (135.00 m) one hundred thirty-five meters, and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to the property of Mr. Francisco Arballo. From vertex F to vertex G towards the West for a distance of (135.00 m) one hundred thirty-five meters, and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (II) two.

--- b). **PLOT II TWO:** of the property known as LA LAGUNA in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, with cadastral key 4-02-013-0082 four dash zero two dash zero one three dash zero zero eight two, with an area of 5-94-86 hectares. (eleven hectares, forty ares, and ninety-one centiares) and the following measurements and boundaries:.....................................................................

From vertex L to vertex M towards the North for a distance of (299.94 m) two hundred ninety-nine point ninety-four meters [sic], and an angle of (114º 38' 35") one hundred fourteen degrees, thirty-eight minutes, and thirty-five seconds, adjacent to Plot (VII) seven................

From vertex F to vertex (D-5) "D" dash five towards the South for a distance of (116.98 m) one hundred sixteen point ninety-eight meters, and an angle of (294º 38' 35") two hundred ninety-four degrees, thirty-eight minutes, and thirty-five seconds, adjacent to Plot (V) five. ......

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014045

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

5

[seal:] [illegible]
**VERIFIED**
[signature]

From vertex (D5) "D" five to vertex K towards the South for a distance of (183.01 m) one hundred eighty-three point zero one meters, and an angle of (294º 38' 35") two hundred ninety-four degrees, thirty-eight minutes, and thirty-five seconds, adjacent to Plot (VI) six.

From vertex M to vertex G towards the East for a distance of (65.00 m) sixty-five meters, and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (VII ) seven.——————————————————————————

From vertex G to vertex F towards the East for a distance of (135.00 m) one hundred thirty-five meters, and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (I) one.——————————————————————

From vertex K to vertex L towards the West for a distance of (200.00 m) two hundred meters, and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to the property of Mr. Afilio Colli.————————————————————————

--- c).- **PLOT III THREE** of the property known as LA LAGUNA, in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, identified with cadastral key 4-02-013-0083 four dash zero two dash zero one three dash zero zero eight three, with an area of 11-34-41 hectares. (eleven hectares, thirty-four ares, and forty-one centiares) and the following measurements and boundaries:————————————————

From vertex (D-1) "D" dash one to vertex D towards the North for a distance of (61.58 m) sixty-one point fifty-eight meters and an angle of (300º 09' 21") three hundred degrees, nine minutes, and twenty-one seconds, adjacent to Plot (I) one.—————————————————

From vertex D to vertex C towards the South for a distance of (31.50 m) thirty-one point fifty meters, and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (I) one.————————————————————————

From vertex C to vertex B towards the North for a distance of (125.00 m) one hundred twenty-five meters and an angle of (287º 08' 24") two hundred eighty-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (I) one.———————————————

From vertex (V-1) V dash one to vertex (V-2) V dash two towards the South for a distance of (171.26 m) for seventy-one point twenty-six meters, adjacent to the Pacific Ocean.——————

From vertex (V-2) V dash one to vertex (D-2) V dash two towards the South for a distance of (16.96 m) sixteen point ninety-six meters, adjacent to the Pacific Ocean.————————————

From vertex (V-1) V dash one to vertex B to the East for a distance of (617.87 m) six hundred seventeen point eighty-seven meters and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to the property of Francisco Arballo.——————

From vertex (D-1) D dash one to vertex (D-2) D dash two towards the West for a distance of (628.56 m) six hundred twenty-eight point fifty-six meters) and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (IV) four.————————————————————————————————————

CONFIDENTIAL

DANSKE_00!Syntax Error, +

6

--- **d). PLOT IV FOUR:** of the property known as LA LAGUNA in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, with cadastral key 4-02-013-0084 four dash zero two dash zero one three dash zero zero eight four, with an area of 11-62-60 hectares. (eleven hectares, sixty-two ares, and sixty centiares) and the following measurements and boundaries:

From vortex (D-1) D dash one to vortex E towards the North for a distance of (65.93 m) sixty-five point ninety-three meters and an angle of (300º 09' 21") three hundred degrees, nine minutes, and twenty-one seconds, adjacent to Plot (I) one.

From vertex E to vertex (D-3) D dash three towards the North for a distance of (122.10 m) one hundred twenty two point ten meters and an angle of (295º 38' 05") two hundred ninety five [degrees], thirty-eight minutes, and five seconds, adjacent to Plot (I) one.

From vertex (D-4) D dash four to vertex (VZF-5) V, Z, F dash five towards the South for a distance of (4.95 m) four point ninety-five meters and an angle of (119º 55' 06") one hundred nineteen degrees, fifty-five minutes, and six seconds, adjacent to the Pacific Ocean.

From vertex (VZF-5) V, Z, F dash five to vertex (V-4) V dash four towards the South for a distance of (60.27 m) sixty point twenty-seven meters and an angle of (117º 07' 54") one hundred and seventeen degrees, seven minutes, and fifty-four seconds, adjacent to the Pacific Ocean.

From the vortex (V-4) V dash four to the vertex (V-3) V dash three towards the South for a distance of (74.40 m) seventy-four point forty meters and an angle of (117º 55' 10') one hundred and seventeen degrees, fifty-five minutes, and ten seconds, adjacent to the Pacific Ocean.

From the vertex (V-3) V dash three to the vertex (D-2) D dash two towards the South for a distance of (48.86 m) forty-eight point eighty-six meters and an angle of (119º 36' 06") one hundred nineteen degrees, thirty-six minutes, and six seconds, adjacent to the Pacific Ocean.

From vertex (D-2) D dash two to vertex (D-1) D dash one towards the East for a distance of (628.56 m) six hundred twenty-eight point fifty-six meters and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (III) three.

From vertex (D-3) D dash three to vertex (D-4) D dash four towards the West for a distance of (625.87 m) six hundred twenty-five point eighty-seven meters) and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (V) five.

--- **e).- PLOT V FIVE:** of the property known as LA LAGUNA, in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, identified with cadastral key 4-02-013-0085 four dash zero two dash zero one three dash zero zero eight five, with an area of 11-40-91 hectares. (eleven hectares, forty ares, and ninety-one centiares) and the following measurements and boundaries:

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014047

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

7



[seal:] [illegible]
**VERIFIED**
[signature]

From vertex (D-3) D dash three to vertex F towards the North for a distance of (69.78 m) sixty-nine point seventy-eight meters and an angle of (295º 38' 05") two hundred ninety-five degrees, thirty-eight minutes, and five seconds, adjacent to Plot (II) two.

From vertex F to vertex (D-5) D dash five towards the North for a distance of (116.98 m) one hundred sixteen point ninety-eight meters and an angle of (294º 38' 35") two hundred ninety-four degrees, thirty-eight minutes, and thirty-five seconds, adjacent to Plot (II) two.

From vertex (D-6) D dash six to vertex (VZF-6) V, Z, F dash six towards the South for a distance of (99.17 m) ninety-nine point seventeen meters and an angle of (122º 53' 10") one hundred twenty-two degrees, fifty-three minutes, and ten seconds, adjacent to the Pacific Ocean.

From vertex (VZF-6) V, Z, F dash six to vertex (D-4) D dash four towards the South for a distance of (91.81 m) ninety-one point eighty-one meters and an angle of (119º 55' 07") one hundred nineteen degrees, fifty-five minutes, and seven seconds, adjacent to the Pacific Ocean.

From vertex (D-4) D dash four to vertex (D-3) D dash three towards the East for a distance of (625.87 m) six hundred twenty-five point eighty-seven meters and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (V) five.

From vertex (D-5) D dash five to vertex (D-6) D dash six towards the West for a distance of (604.23 m) six hundred four point twenty three meters and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot (VI) six.

--- f).- **PLOT VI SIX:** of the property known as LA LAGUNA, in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, identified with cadastral key 4-02-013-0086 four dash zero two dash zero one three dash zero zero eight six, with an area of 11-03-00 hectares. (eleven hectares three ares and ninety centiares) and the following measurements and boundaries:

From vertex (D-5) D dash five to vertex K towards the South for a distance of (183.01 m) one hundred eighty-three point zero one meters, and an angle of (294º 38' 35") two hundred ninety-four degrees, thirty-eight minutes, and thirty-five seconds, adjacent to Plot (II) two.

From vertex (D-7) D dash seven to vertex (VZF-9) V, Z, F dash nine towards the South for a distance of (67.36 m) sixty-seven point thirty-six meters and an angle of (269º 51' 08") two hundred sixty-nine degrees, fifty-one minutes, eight seconds, adjacent to the Pacific Ocean.

CONFIDENTIAL

DANSKE_0014048

8

From vertex (VZF-9) V, Z, F dash nine to vertex (VZF-8) V, Z, F dash eight towards the South for a distance of (46.26 m) forty-six point twenty-six meters and an angle of (114º 34' 05") one hundred fourteen degrees, thirty-four minutes, and five seconds, adjacent to the Pacific Ocean. From vertex (VZF-8) V, Z, F dash eight to vertex (VZF-7) V, Z, F dash seven towards the South for a distance of (66.73 m.) sixty-six point seventy-three meters and an angle of (111º 07' 02") one hundred eleven degrees, seven minutes, and two seconds, adjacent to the Pacific Ocean. From vertex (VZF-7) V, Z, F dash seven to vertex (D6) D dash six towards the South for a distance of (1.77 m) one point seventy-seven meters and an angle of (122º 53' 15") one hundred twenty two degrees, fifty-three minutes, and fifteen seconds, adjacent to the Pacific Ocean.

From vertex (D-6) D dash six to vertex (D-5) D dash five towards the East for a distance of (604.23 m) six hundred four point twenty-three meters and an angle of (17º 08' 24") seventeen degrees, eight minutes, and twenty-four seconds, adjacent to Plot (V) five.

From vertex K to vertex (D-7) D dash seven towards the West for a distance of (613.71 m) six hundred thirteen point seventy-one meters and an angle of (197º 08' 24") one hundred ninety-seven degrees, eight minutes, and twenty-four seconds, adjacent to the property of Atillo Colli.

--- **g).- PLOT VII SEVEN:** of the property known as LA LAGUNA, in the portion known as Rancho El Cardonal, in Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, with cadastral key 4-02-013-0087 (four dash zero two dash zero one three dash zero zero eighty-seven) with an area with an area [sic] of 26-00-98 hectares. (twenty-six hectares, zero ares, and ninety-eight centiares) and the following measurements and boundaries:

From vertex ninety-six to vertex sixty towards the North for a distance of 87.67m eighty-seven point sixty-seven meters at (117º 15' 23") one hundred seventeen degrees, fifteen minutes, and twenty-three seconds, adjacent to the property of Mr. Atillo Colli.

From vertex sixty to vertex sixty-four towards the North for a distance of 54.26m fifty-four point twenty-six meters at (113º 29' 56") one hundred thirteen degrees, twenty-nine minutes, and fifty-six seconds, adjacent to the property of Mr. Atillo Colli.

From vertex sixty-four to vertex R towards the North for a distance of 59.19m fifty-nine point nineteen meters at (120º 51' 16") one hundred twenty degrees, fifty-one minutes, and sixteen seconds, adjacent to the property of Mr. Atillo Colli.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014049

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

9

From vertex R sixty-five towards the North for a distance of 75.37m seventy-five point thirty-seven meters at (112º 48' 01") one hundred twelve degrees, forty-eight minutes, and one second, adjacent to the property of Mr. Atillo Colli.

From vertex sixty-five to vertex sixty-eight towards the North for a distance of 57.64m fifty-seven point sixty-four meters at (114º 22' 21") one hundred fourteen degrees, twenty-two minutes, and twenty-one seconds, adjacent to the property of Mr. Atilio Colli.

From vertex sixty-eight to vertex sixty-nine towards the North in a distance of 77.33m seventy-seven point thirty-three meters in (127° 28' 03") one hundred twenty-seven degrees, twenty-eight minutes, and three seconds, adjacent to the property of Mr. Atilio Colli.

From vertex sixty-nine to vertex seventy-three towards the North for a distance of 40.74m forty point seventy-four meters at (115º 39' 35") one hundred fifteen degrees, thirty-nine minutes, and thirty-five seconds, adjacent to the property of Mr. Atillo Colli.

From vertex seventy-three to vertex seventy-four towards the North for a distance of 74.11m seventy-four point eleven meters at (104º 58' 12") one hundred four degrees, fifty-eight minutes, and twelve seconds, adjacent to the property of Mr. Atilio Colli.

From vertex seventy-four to vertex eighty towards the North for a distance of 44.26m forty-four point twenty-six meters (98º 31' 27") at ninety-eight degrees, thirty-one minutes, and twenty-seven seconds, adjacent to the property of Mr. Atilio Colli.

From vertex eighty to vertex seventy-nine towards the North for a distance of 34.90m thirty-four point ninety meters at (128º 42' 46") one hundred twenty-eight degrees, forty-two minutes, and forty-six seconds, adjacent to the property of Mr. Atilio Colli.

From vertex seventy-nine to vertex seventy-eight towards the North at a distance of 46.34m forty-six point thirty-four meters at (117º 18' 42") one hundred seventeen degrees, eighteen minutes, and forty-two seconds, adjacent to the property of Mr. Atilio Colli.

From vertex seventy-eight to vertex seventy-seven towards the North for a distance of 51.26m fifty-one point twenty-six meters, at (123º 57' 37") one hundred twenty-three degrees, fifty-seven minutes, and thirty-seven seconds, adjacent to the property of Mr. Atilio Colli.

From vertex seventy-seven to vertex eighty-three towards the North for a distance of 44.09m forty-four point [zero] nine meters (110º 40' 31") at one hundred ten degrees, forty minutes, and thirty-one seconds, adjacent to the property of Mr. Atillo Colli.

[seal] [illegible] **VERIFIED** [signature]

CONFIDENTIAL

DANSKE_0014050

From vertex one hundred and seventeen to vertex J towards the South for a distance of 127.83m one hundred twenty-seven point eighty-three meters at (287º 08' 24") two hundred eighty-seven degrees, eight minutes, and twenty-four seconds, adjacent to Plot I.

From vertex J to vertex I towards the South for a distance of 31.50m thirty-one point fifty meters at (17º 08' 36") seventeen degrees, eight minutes, and thirty-six seconds, adjacent to Plot I.

From vertex I to vertex H towards the South for a distance of 127.50m one hundred twenty-seven point fifty meters at (300º 09' 20") three hundred degrees, nine minutes, and twenty seconds, adjacent to Plot I.

From vertex H to vertex G towards the South for a distance of 191.89m one hundred ninety-one point eighty-nine meters at (295º 38' 05") two hundred ninety-five degrees, thirty-eight minutes, and five seconds, adjacent to Plot I.

From vertex G to vertex M towards the South for a distance of 65.00m sixty-five meters at (17º 08' 57") seventeen degrees, eight minutes, and fifty-seven seconds, adjacent to Plot II.

From vertex M to vertex L towards the South for a distance of 299.94m two hundred ninety-nine point ninety-four meters at (294º 39' 15") two hundred ninety-four degrees, thirty-nine minutes, and fifteen seconds, adjacent to Plot II.

From vertex eighty-three to vertex one hundred and seventeen towards the East for a distance of 395.92m three hundred ninety-five point ninety-two meters at (198º 54' 59") one hundred ninety-six degrees, fifty-four minutes, and fifty-nine seconds, adjacent to the Property of Francisco Arballo.

From vertex L to vertex ninety-six towards the West for a distance of 315.33m three hundred fifteen point thirty-three meters at (18º 13' 32") eighteen degrees, thirteen minutes, and thirty-two seconds, adjacent to the property of Mr. Atillo Colli.

--- h).- POLYGON I of plot LA LAGUNA,(EL CARDONAL), in the Municipal delegation of Cabo San Lucas, Municipality of Los Cabos, Baja California Sur, with Cadastral key 4-02-013-0001 FOUR DASH ZERO TWO DASH ZERO ONE THREE DASH ZERO ZERO ZERO ONE, and with an area of 528-88-49.427 Hectares FIVE HUNDRED AND TWENTY-EIGHT HECTARES EIGHTY-EIGHT ARES FORTY-NINE POINT FOUR HUNDRED AND TWENTY-SEVEN CENTIARES, with the following measurements and boundaries:

TO THE NORTH: IN TWO STRETCHES, 2,299.705 M. TWO THOUSAND TWO HUNDRED AND NINETY-NINE METERS SEVEN HUNDRED AND FIVE MILLIMETERS, owned or that was owned by Mr. VICTOR HUGO CESEÑA, plus 139.771 M. ONE HUNDRED AND THIRTY-NINE METERS SEVEN HUNDRED AND SEVENTY-ONE MILLIMETERS, with POLYGON III;

TO THE SOUTH: IN THREE SECTIONS, 139,815 M. ONE HUNDRED AND THIRTY NINE POINT EIGHT HUNDRED FIFTEEN METERS, with POLYGON III; plus 1,605,070 M. ONE THOUSAND SIX HUNDRED FIVE POINT SEVENTY METERS, with THE LAND MARITIME FEDERAL ZONE OF THE PACIFI OCEAN; plus 747.160 M SEVEN HUNDRED FORTY-SEVEN POINT ONE HUNDRED SIXTY METERS, with PLOT VII:

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014051

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

11

[seal] [illegible]
**VERIFIED**
[signature]

TO THE EAST: IN TWO SECTIONS, 1,714.370 M. ONE THOUSAND SEVEN HUNDRED FOURTEEN METERS THREE HUNDRED SEVENTY MILLIMETERS, with the property that belongs or belonged to Mr. NESTOR HERRERA, plus 1,129.040 M. ONE THOUSAND ONE HUNDRED TWENTY-NINE METERS FORTY MILLIMETERS, with PLOTS II, VI, and VII; ....
TO THE WEST: IN THREE SECTIONS, 1,995.580 M. ONE THOUSAND NINE HUNDRED NINETY-FIVE METERS FIVE HUNDRED EIGHTY MILLIMETERS, with POLYGON II, plus 100,000 M. ONE HUNDRED METERS, with POLYGON III, plus 374,414 M. THREE HUNDRED SEVENTY-FOUR METERS, FOUR HUNDRED FOURTEEN MILLIMETERS, with the property that belongs or belonged to Mr. LUIS BULNES MOHEDA.------------------------

5.   Likewise, on the date of execution of the Trust, Diamante Cabo contributed the following rights to its assets (hereinafter "Rights"):--------------------------------------------------

--- **a).-**The trustee rights and of any kind that, as Secondary Trust Beneficiary "A", or by any other title it holds and that in fact and by law correspond to it in relation to the Trust Agreement Transferring Title of Ownership with a Reversion Clause entered into the notarial records by means of the public deed (62,902), sixty-two thousand nine hundred two of volume (987) nine hundred and eighty-seven, dated September 1 of the year two thousand five, granted before the undersigned notary public, and whose first testimony was registered with the Public Registry of Property of the Municipality of Los Cabos, under number 97 ninety-seven, of volume CCXXXI, of section One, as well as number 30 thirty, of volume CCXXIII section One, through which Mr.. ATILIO COLLI VILLARINO and Ms. ALICIA CESEÑA AGUNDEZ entered into the trust with SCOTIABANK INVERLAT, SOCIEDAD ANÓNIMA, MULTIPLE BANKING INSTITUTION, SCOTIABANK INVERLAT FINANCIAL GROUP, and designating the MUNICIPAL OPERATING AGENCY OF THE DRINKING WATER, SEWER, AND SANITATION SYSTEM OF LOS CABOS, BAJA CALIFORNIA SUR as primary trust beneficiary, the ownership of the property defined in said deed as THE CARDONAL FRACTION (POLYGON III) described in statement I.f) of said instrument, whose areas, measurements, and boundaries are hereby reproduced as if they were inserted verbatim.------

--- **b).-**The rights established in favor of Mr. ATILIO COLLI VILLARINO and Ms. ALICIA CESEÑA AGUNDEZ in the IRREVOCABLE DONATION AGREEMENT OF THE SECTION DEFINED AS VIALIDAD CARDONAL (POLYGON II), which was entered into the notarial records through the public deed mentioned in Recital I.b).1. of this Instrument, by means of which the Mr. ATILIO COLLI VILLARINO and Ms. ALICIA CESEÑA AGUNDEZ donated to the HONORABLE NINTH CITY COUNCIL OF THE MUNICIPALITY OF LOS CABOS, BAJA CALIFORNIA SUR, the ownership of the property defined in said deed as VIALIDAD CARDONAL (POLYGON II) described in declaration I.f) of said instrument, whose areas, measurements, and boundaries are here reproduced as if they were inserted verbatim.--------

11

12

**--- c) -**The rights established in favor of Mr. ATILIO COLLI VILLARINO and Ms. ALICIA CESEÑA AGUNDEZ in the constitution of the VOLUNTARY EASEMENT AND NON-EXCLUSIVE USE AND PERPETUITY (the "EASEMENT"), which was entered into the notarial records through the public deed mentioned in Recital I.b).1. of this instrument, by which Mr. ATILIO COLLI VILLARINO and Ms. ALICIA CESEÑA AGUNDEZ constituted the aforementioned easement with respect to an area of land named in said instrument merely for identification purposes as POLYGON IV, which remains as an integral part of POLYGON I mentioned in the Recital I.a).8 of this instrument, which has an area of 6,128.4514 six thousand one hundred twenty-eight point four thousand fourteen [sic] square meters, with the following measurements and boundaries: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

TO THE NORTH: 10.2071 M WITH POLYGON III, 239.694 M WITH ATILIO COLLI'S PROPERTY. ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

TO THE SOUTH: 10.00 M WITH ATILIO COLLI'S PROPERTY, 90.00 M WITH ATILIO COLLI'S PROPERTY, 10.00 M WITH POLYGON LI, 136.456 M WITH ATILIO COLLI'S PROPERTY. ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

TO THE EAST: 165.366 M WITH ATILIO COLLI'S PROPERTY, 110.00 M WITH ATILIO COLLI'S PROPERTY, 100.00 M WITH ATILIO COLLI'S PROPERTY. ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

TO THE WEST: 100.00 M WITH ATILIO COLLI'S PROPERTY, 100.00 M WITH ATILIO COLLI'S PROPERTY; 174,174 M WITH LUIS BULNES MOLLEDA'S PROPERTY. ⋯⋯⋯⋯⋯⋯

6.- Acquisition of the Trust Assets of BANCO J.P. MORGAN, SOCIEDAD ANONIMA, MULTIPLE BANKING INSTITUTION, J.P. MORGAN FINANCIAL GROUP: ⋯⋯⋯⋯⋯⋯⋯⋯

a)  .- By deed number fifty-nine thousand five hundred and sixteen, granted in Mexico City, on November nineteen, two thousand and eight, granted before Mr. ROBERTO NUÑEZ Y BANDERA, Public Notary Number One, of Mexico City, there were entered into the notarial records the split agreements taken at the Extraordinary General Shareholders' Meeting of BANCO J.P. MORGAN, SOCIEDAD ANONIMA, MULTIPLE BANKING INSTITUTION, J.P. MORGAN FINANCIAL GROUP, held on November nineteen, two thousand and eight, in which it was resolved to split said company as a subsisting splitter, constituting a spin-off company called VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, which would be the initial legal assignee, by universal title, of the assets that the company contributes as a whole, assuming the obligations that are transferred to it by virtue of the division: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

b)  By public deed number fifty-nine thousand five hundred seventeen, granted before Mr. ROBERTO NUÑEZ Y BANDERA, Notary Public Number One, of Mexico City, by the splitting of Banco J.P. Morgan, Sociedad Anónima, Multiple Banking Institution, J.P. Morgan Financial Group there was constituted VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, with domicile in Mexico City, of an indefinite duration, with a capital of one hundred ninety-three million three hundred seventeen thousand forty-seven pesos, National Currency, having as its main purpose receiving from Banco J.P. Morgan, Sociedad Anónima, Multiple Banking Institution, Financial Group, in an enunciative manner but not limited to certain accounts receivable, certain accounts payable, and a portion of the stockholders' equity of Banco J.P.

[seal:] [illegible]

12

DANSKE_0014053

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

13

**VERIFIED** [seal] [illegible] [signature]

Morgan, Sociedad Anónima, Multiple Banking Institution, Financial Group, and various assets listed in memorandum accounts corresponding to trusts and mandates, the foregoing under the terms of the twenty-seventh article of the Law of Credit Institutions.

c)   .- By deed number fifty-nine thousand five hundred twenty-one, executed in Mexico City on November nineteenth of the year two thousand eight, granted before Mr. ROBERTO NUÑEZ Y BANDERA, Notary Public Number One, of Mexico City, THE BANK OF NEW YORK MELLON, SOCIEDAD ANONIMA, MULTIPLE BANKING INSTITUTION, as Merging Company, merged with VERTROUWEN MEXICANA, SOCIEDAD ANONIMA, as Merged Company, consequently substituting the first one; in said deed, it is stated that the Merging company universally acquired the Assets of the Merged Company, which in turn consisted of assets received from Banco J.P. Morgan, Sociedad Anónima, Multiple Banking Institution, J.P. Morgan Financial Group.

7.   On January 13, 2009, Lehman Brothers and the Primary Trust Beneficiary entered into a certain global agreement for the assignment of rights (*Omnibus Assignment and Assumption*) (the "2009 Omnibus Assignment") by virtue of the which Lehman Brothers assigned to the Primary Trust Beneficiary all its rights under the 2008 Transaction Documents and the latter accepted said assignment.

8.   On March 6, 2009, the partners of the Trustor through a general shareholders' meeting (i) approved the execution of the Amended Credit Documents; and (ii) amended in their entirety the bylaws of the Trustor, recognizing the Primary Trust Beneficiary as creditor under the Amended Credit Documents.

9.   On March 5, 2009, Lehman Brothers and the Primary Trust Beneficiary entered into certain assignment contracts by virtue of which the parties thereof formalized the 2009 Omnibus Assignment in accordance with Mexican law, the assignment of rights in favor of the Primary Trust Beneficiary under the Pledge Agreement (Corporate Shares of the Trustor), the Pledge Agreement (Assets), and the Trust.

10. On this same date, the Primary Trust Beneficiary and the Trustor entered into an agreement to terminate the Pledge Agreement (Assets); by virtue of the fact that the assets that are the subject of the pledge are contributed to the Trust's assets by means of this Amendment and Restatement Agreement.

13

14

11. On March 6, 2009, the Primary Trust Beneficiary and Diamante Cabo entered into an amendment and restatement agreement to the Credit Agreement by virtue of which the Primary Trust Beneficiary and Diamante Cabo amended the terms of the Credit Agreement (the "Amended and Restated Credit Agreement"), and Diamante Cabo signed two promissory notes in favor of the Primary Trust Beneficiary (the "2009 Promissory Notes," and together with the 2009 Credit Modification and the 2006 Transaction Documents, will be called the "Transaction Documents", and the latter, together with this Amendment and Restatement Agreement, are called the "Amended Credit Documents").

----------------------------------------------------- **STATEMENTS**

1    Diamante Cabo declares that:

a)   It is a limited liability company with variable capital duly constituted in accordance with the laws of the United Mexican States, with its main address at Alikan s/n, Colonia Ampliación Mariano Matamoros, C.P. 23460 Cabo San Lucas, Municipality of Los Cabos, Baja California Sur.

b)   It contributed to the Trust's assets the Premises described in Recital 4 and the Rights described in Recital 5 of this instrument (hereinafter the Premises and the Rights will be jointly named, for the purposes of this Amendment and Restatement Agreement, the "Property").

c)   It has the corporate and legal powers to enter into and comply with the obligations under its responsibility established in this instrument, as well as to grant the necessary guarantees, and that it has taken all the necessary legal and corporate actions in order to authorize their conclusion and fulfillment under the terms of this Amendment and Restatement Agreement.

d)   The Trust constitutes a legal, valid, and mandatory obligation for Cabo Diamante, enforceable in accordance with the provisions established in the applicable legislation.

e)   The conclusion and fulfillment of this Amendment and Restatement Agreement will not imply any material violation of any provision or legal requirement, nor of any provision established in its corporate documents, nor of any contractual obligation that is the responsibility of Diamante Cabo, and will not result in the constitution or imposition of any encumbrance on any of the assets or income of Diamante Cabo, except for what is established in this instrument and as expressly permitted in the Transaction Documents.

f)    As of the date of execution of this Amendment and Restatement Agreement, there is, to the best of its knowledge, no action, claim, demand, requirement, or potential procedure, or pending resolution, before any court, government agency, or arbitrator, that affects or could affect the legality, validity, and enforceability of this Amendment and Restatement Agreement, the Trust, or the ownership of the Trustee on the Property.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014055

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

15



**[seal] [illegible] VERIFIED [signature]**

g)  No consent, authorization, request, or any other act on the part of any governmental authority or of any other person is required for the purpose of entering into, modifying, terminating, assigning, delivering, fulfilling, or making valid the Trust, nor for the purpose of perfecting or maintaining the guarantee that is constituted in it.

h)  The person who enters into this Amendment and Restatement Agreement on behalf of Diamante Cabo has the powers, faculties, and corporate authorization necessary to do so, as stated in public deed number **seventy-eight thousand eight hundred and eighty-one, of volume number one thousand two hundred and ninety-one, granted before the Undersigned Notary**, which have not been revoked or limited in any way.

i)  Diamante Cabo's corporate bylaws include the legal provisions established in article 27, section I, of the Political Constitution of the United Mexican States.

j)  The destination, use, and utilization of the Property is for non-residential purposes, as long as it is part of the Trust Assets and, therefore, no permission is required from the Secretariat of Foreign Affairs ("SRE" [Secretaría de Relaciones Exteriores]), under the terms of articles 11 and 12 of the Foreign Investment Law ("LIE" [Ley de inversión Extranjera]).

k)  The Property is up to date in the payment of any property taxes or any other government contributions and services to which said Property may be subject.

l)  The Property complies with the applicable regulations on environmental, health, and safety matters, and Diamante Cabo is not aware that (i) any event has occurred or that there is a circumstance or condition that could constitute or result in a violation of environmental, health, and safety laws, and (ii) the Property is not subject to any existing action or, as far as Diamante Cabo knows, potential action, exercised by or before any government authority, under the terms of any environmental, health, or safety law applicable, nor is there any legal basis for such action.

m)  It appears at the conclusion of this Amendment and Restatement Agreement in order to amend and restate the clauses of the Trust, so that it guarantees the fulfillment of the obligations of Diamante Cabo, the Members of the U.S. LLC, the U.S. LLC, and of the Guarantor under the Transaction Documents.

n)  The Trustee has made it unequivocally aware of the content and legal scope of article 106, section XIX, of the Credit Institutions Law, as well as the content of the legal provisions issued by the Bank of Mexico.

o)  In this act, it instructs the Trustee to appear at the conclusion of this Amendment and Restatement Agreement, under the terms of the same.

15

CONFIDENTIAL

DANSKE_0014056

16

2   The Primary Trust Beneficiary hereby declares that:

a)   It is the London branch of a company duly incorporated under the laws of the Kingdom of Denmark.

b)   Its legal representative has all the powers and corporate authorizations necessary to enter into this Amendment and Restatement Agreement, as stated in public deed number 102,866 dated February 23, 2009, granted before Mr. Francisco Javier Arce Gargollo, Notary Public number 74 with office in Mexico City, which have not been revoked or limited in any way.

c)   The Trustee has made it unequivocally aware of the content and legal scope of article 106, section XIX, of the Credit Institutions Law, as well as the content of the legal provisions issued by the Bank of Mexico.

d)   The Primary Trust Beneficiary will not have the right to use or take advantage of the Property, unless the Trust receives the corresponding permission from the Secretary of Foreign Affairs, with the understanding that said limitation will not preclude or diminish in any way the rights of the Primary Trust Beneficiary under the terms of the Trust or the guarantee granted therein.

e)   In this act, it instructs the Trustee to appear at the conclusion of this Amendment and Restatement Agreement, under the terms thereof:

3   The Trustee in this act declares that:

a)   It is a multiple banking institution, duly constituted and authorized to operate as such, in accordance with Mexican laws.

b)   ..Its delegate trustee has all the powers and corporate authorizations necessary to enter into this Amendment and Restatement Agreement as stated in the public deed number 59,563 granted before Mr. Roberto Núñez y Bandera, Public Notary number 1 with office in Mexico City, which have not been revoked or limited in any way.

c)   It is the legitimate owner of the Property, as trustee of the Trust, which is free of all encumbrances (with the exception of the rights established in favor of Mr. Atilio Colli Villarino and Ms. Alicia Ceseña Agundez in the constitution of the voluntary easement and non-exclusive use and perpetuity (the "easement"), which was entered into the notarial records by the public deed (62,902) sixty-two thousand nine hundred two, of volume (987) nine hundred eighty-seven, dated September first of the year two thousand five, granted before the undersigned notary public, and whose first testimony was registered before the Public Registry of Property of the Municipality of Los Cabos, under number 97 (ninety-seven) of volume CCXXXI, of section One, as well as in number 30 thirty, of volume CCXXIII section One, as well as any charges, guarantees, options, or claims by any third party.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014057

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

17

**[seal] [illegible] VERIFIED [signature]**

d)  It has the necessary governmental authorizations to act as a banking institution in Mexico and to carry out trust transactions in accordance with the applicable Mexican legislation and regulations, which remain in force as of the date of signing of this Amendment and Restatement Agreement.

e)  The conclusion and fulfillment of this Amendment and Restatement Agreement does not constitute a breach of the Trustee's corporate bylaws; nor to any agreement entered into by the Trustee with third parties.

f)  The Trust constitutes legal and valid obligations of the Trustee, enforceable against it in accordance with its terms.

g)  In accordance with the provisions of section XIX of article 106 of the Credit Institutions Law, and the provisions issued by the Bank of Mexico, the Trustee declares that it has explained to the parties to this Amendment and Restatement Agreement, in an unequivocal manner, about the value and consequences of said legal provisions.

h)  It appears at the conclusion of this Amendment and Restatement Agreement in compliance with the instructions of Diamante Cabo and the Primary Trust Beneficiary.

IN WITNESS WHEREOF, the parties agree to grant the following:

-------------------------------------------CLAUSES

FIRST. The parties agree to completely modify and restate fully the clauses of the Trust to be under the terms of the following clauses:

"Clause 1. Definitions and Principles of Interpretation.

(a)  Capitalized terms that are not defined elsewhere herein shall have the meanings that are respectively attributed below:

"Assets" means all and any of the assets that are owned by the Trustor on the date of execution of this instrument, and all those that it subsequently acquires, including, but not limited to, contractual and intellectual property rights, personal property, bank accounts, third-party payments of any kind, equipment, and all earnings, products, or income derived from them or of the same nature.

"Agent of the Concentration Account" means Trimont Real Estate Advisors, Inc. as debt agent pursuant to the agreement governing the Concentration Account.

"Advisors" has the meaning attributed to said term in Clause 10.

"Appraisal" has the meaning attributed to said term in Clause 8(a).

"Notice of Full Compliance" means the notice referred to in Clause 12(a), which must be delivered in accordance with the form attached as Annex A.

"Notice of Damaged Assets" means the notice referred to in Clause 7(b)(7), which must be delivered in accordance with the form attached as Annex B.

"Event of Default" means a failure to comply with the Guaranteed Obligations, a breach of any of the terms and conditions established in this Trust or any other "Event of Default," as said term is defined in Section 18 of the Amended and Restated Credit Agreement, including without limitation, any breach of payment of principal or interest (as they have been capitalized).

17

DANSKE_0014058

"Assignment of Rents" means the Agreement for the Assignment of Lease and Rents, as it has been or is amended, entered into on March 10, 2006, between Diamante Cabo and Lehman Brothers, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"2006 Omnibus Assignment" means the omnibus assignment (Omnibus Assignment), as it has been or is amended, held on March 10, 2006 between Diamante Cabo and Lehman Brothers, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"2009 Omnibus Assignment" means the global Agreement for the assignment of rights (Omnibus Assignment and Assumption), as it has been or is amended, dated January 13, 2009, by virtue of which Lehman Brothers assigned to the Primary Trust Beneficiary all its rights in the 2006 Credit Documents, and the latter accepted said assignment.

"Circular 1/2005" means circular 1/2005 (as it has been or is amended or amended), issued by the Bank of Mexico, which contains the Rules applicable to Credit Institutions, Brokerage Houses, Insurance Institutions, Bond Institutions, Financial Companies of Limited Object and Rural Financial Institutions, in trust transactions.

"Amended and Restated Loan Agreement" means the Amended and Restated loan agreement, as it has been or is amended, entered into on March 6, 2009 between Diamante Cabo and the Primary Trust Beneficiary.

"Pledge Agreement (Corporate Shares of the Borrower)" means the Pledge Agreement, as amended or amended, entered into on March 10, 2006 between the Guarantor, the U.S. LLC Members, and Lehman Brothers, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Pledge Agreement (Corporate Shares of the Trustor)" means the pledge Agreement on Corporate Shares, as it has been or is amended, entered into on March 10, 2006 between Diamante Cabo, the Guarantor, the U.S. LLC, and Lehman Brothers, as it has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Pledge Agreement Subject to US Legislation" means the Pledge Agreement, as amended or amended, entered into on March 10, 2006, between the Guarantor, U.S. LLC, and Lehman Brothers, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Call" has the meaning attributed to said term in Clause 10.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014059

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

19

[seal:] [illegible] **VERIFIED** [signature]

"Concentration Account" means the account in dollars, legal tender in the United States of America, that the Primary Trust Beneficiary opens with and is operated by the Agent of the Concentration Account.

"Trust Accounts" means the accounts that, [in] this act, the Trustor transmits to the Trust Assets, which must appoint the Trustee as the holder thereof, and those that the Trustee opens in compliance with the instructions of the Primary Trust Beneficiary.

"Accounts Receivable" means each and every one of the rights of the Trustor to receive payment for the disposal of the assets and any part of the Trust Assets, whether through sale, lease, provision of services, or use of the Trust Assets (as provided defined below), that have been generated to this date or that will be generated in the future, and all substitutions and resources derived from them (whether cash or not, movable or immovable, tangible or intangible) received on the occasion of the sale, exchange, disposal thereof, or their replacement, including [sic].

"Contractual Rights" means all rights (excluding obligations) and benefits, whether tangible or intangible, derived from contracts or Instruments entered into in the past or in the future by the Trustor with third parties in relation to the Project and/or the Trust Assets.

"Business Day" means any day of the year, except Saturdays, Sundays and holidays in accordance with the Federal Labor Law and the calendar published annually by the National Banking and Securities Commission, on which banking institutions in Mexico and New York, United States of America, are open to the public for banking transactions.

"Diamante Cabo" means Diamante Cabo San Lucas, S. de R.L. de C.V.

"Performance Document" means the Performance Bond, as it is or could be amended, granted by the Guarantor in favor of Lehman Brothers on March 10, 2006, which has been assigned in favor of the Primary Trust Beneficiary.

"Amended Credit Documents" means the Amended and Restated Credit Agreement, Promissory Note A, Promissory Note B, Assignment of Rents, Pledge Agreement (Corporate Shares of the Trustor), Pledge Agreement (Corporate Shares of the Borrower), the Pledge Agreement on US Corporate Shares, the Recourse Guarantee, the Environmental Indemnification, the 2006 Omnibus Assignment, the Performance Document and the Guarantee, as they have been amended or will be amended in the future.

"Trustor" means Diamante Cabo San Lucas, S. de R.L. de C.V.

"Primary Trust Beneficiary" means Danske Bank A/S, London Branch, the London branch of a company incorporated in the Kingdom of Denmark.

"Secondary Trust Beneficiary" means the Trustor in its capacity as Secondary Trust Beneficiary hereunder.

CONFIDENTIAL

DANSKE_0014060

"Trust" means this Amended and Restated Guarantee irrevocable trust F/00321, as it has been or will be amended, including all its Annexes, and including any subsequent modifications thereto.

"Residential Unit Trust" means the trust to be entered into pursuant to the laws of Mexico in order to contribute to it a Unit for the sale of Fractional Shares.

"Trustee" means The Bank of New York Mellon, S.A., Multiple Banking Institution, as trustee under this Trust.

"Guarantor" means Mr. Kenneth A. Jowdy.

"Guarantee" means the guarantee, as it has been or is amended, granted by the Members of the U.S. LLC, the Guarantor, and the U.S. LLC in favor of Lehman Brothers on March 10, 2006, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Recourse Guarantee" means the recourse guarantee, as it has been or will be amended, executed on March 10, 2006 by the Guarantor and Lehman Brothers, effective as of March 10, 2006, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Environmental Indemnification" means the document of responsibility and indemnification in environmental matters, as it has been or will be amended, entered into on March 10, 2006 between Diamante Cabo, the Guarantor, and Lehman Brothers, which has been assigned by Lehman Brothers in favor of the Primary Trust Beneficiary.

"Permitted Investments" means investments made in financial institutions authorized to do so, in fixed rate instruments or securities with denomination in Pesos and/or Dollars of the United States of America with maturities at sight, issued or guaranteed by the Federal Government of Mexico or by the Government of the United States of America, as appropriate.

"Property" means the Property as defined in the declarations and background section of this Instrument, which is part of the Trust Assets.

"Execution Instruction" has the meaning attributed to said term in Clause 10.

"Investment Instruction" has the meaning attributed to said term in Clause 4(g)(1).

"Lehman Brothers" means Lehman Brothers Holdings, Inc.

"Environmental Legislation" means all federal, state, and local laws and other statutory provisions, regulations, agreements, provisions, decrees, orders, requirements, rules, guidelines, internal procedures, parameters, criteria, standards, and official Mexican norms, as well as any contractual obligations and permits, judgments, awards, licenses, authorizations, or concessions, issued or used by any government authority, in each case in relation to public health, safety and hygiene, pollution or protection of the environment or natural resources in general, as well as the contamination (or prevention thereof) of the air, water, soil, and subsoil (including all those related to the use, production, generation, handling, transport, treatment, storage, disposal, distribution, labeling, processing, discharge, release, control, remediation, or cleanup of any Hazardous Substances) in force at the date of this Trust. The term "Environmental Legislation" includes (but is not limited to) the General Law of Ecological Balance and Environmental Protection, the National Water Law, the General Law for the

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014061

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

21



[seal:] [illegible] **VERIFIED** [signature]

Prevention and Integral Management of Waste, the <u>Law of Ecological Balance and Environmental Protection of the State of Baja California Sur</u>, the Official Mexican Standards: NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, NOM-138-SEMARNAT/SS-2003, and PROY-NOM-147-SEMARNAT/SSA1-2004 (as well as the internal guidelines used by the Federal Prosecutor's Office for the Protection of the Environment for contaminated soils and their remediation, the General Health Law, the Federal Regulation of Safety, Hygiene, and Environment at Work, and the Official Mexican Standard NOM-010-STPS-199, as well as the modifications and reforms to the same.

"LGTOC" means the Ley General de Títulos y Operaciones de Crédito [General Law on Securities and Credit Transactions.]

"Improvements" means the buildings and any structure that exists in the present or that is built or constructed on or in the Property.

"Information Memorandum" has the meaning attributed to said term in Clause 10.

"Mexico" means the United Mexican States.

"Members of the U.S. LLC" collectively means Baja Ventures 2006, LLC, Diamante Properties, LLC, KA Holdings LLC, and CSL Properties 2006, LLC.

"Notice of Default" means a notice delivered to the Trustor and the Trustee by the Primary Trust Beneficiary, regarding the existence of an Event of Default and, if applicable, the remediation period under the Amended Credit Documents.

"Guaranteed Obligations" means, as the context requires, each and every one of the obligations, whether present or future, by Diamante Cabo, the U.S. LLC, the Members of the U.S. LLC, and the Guarantor under the Amended Credit Documents, including, without limitation, the timely payment of the principal amount owed and, where appropriate, of the interest and capitalization thereof, as well as the "Profit Participation Fee" and the "Non-Utilization Fee," as said terms are defined in the Amended and Restated Credit Agreement, depending on whether said documents have been or are amended, as well as each and every one of the obligations present or future projects in charge of Diamante Cabo under the terms of this Trust and the Amended and Restated Credit Agreement, with their respective modifications and additions that occur from time to time.

CONFIDENTIAL

DANSKE_0014062

"Transactions" has the meaning attributed to said term in Clause 4(g). "Promissory note A" means the promissory note issued on March 6, 2009 by Diamante Cabo in favor of the Primary Trust Beneficiary for a principal amount equivalent to USD $109,138,327.83 (One hundred nine million one hundred thirty-eight thousand three hundred twenty-seven dollars 83/100, Currency in Legal Tender of the United States of America). "Promissory note B" means the promissory note issued on March 6, 2009 by Diamante Cabo in favor of the Primary Trust Beneficiary for a principal amount equivalent to USD $16,000,000.00 (Sixteen million dollars 00/100, United States Legal Tender Currency of America).

"Fractional Participation" means (i) any part of the trustee rights derived from a Residential Unit Trust, whose trustee rights, under the terms of said Residential Unit Trust, are divided into a certain number of parts in order to represent the right to a certain part of the Unit contributed to its assets, whose trustee rights grant the holder thereof the right to use the Unit for a specified period of weeks during a calendar year under the terms of said instrument, the regulations of condominium that is constituted for the Project, and the corresponding agreement of sale regarding said rights, or (ii) any co-ownership in a Unit. "Trust Assets" has the meaning attributed to said term in Clause 5.

"Pesos" means legal tender in the United Mexican States.

"Base Price" has the meaning attributed to said term in Clause 10.

"Project" means, but is not limited to, the real estate development of the Property to turn it into a tourist (resort) and residential development, two golf courses, a clubhouse, restaurant, spa and gym (fitness center) and meeting rooms for multiple uses and other services.

"Public Registry" means the Public Registry of Property and Commerce of San José del Cabo, Municipality of Los Cabos, Baja California Sur.

"Hazardous Substance" means any hazardous waste, toxic waste, hazardous material, toxic substance, special waste, petroleum, or petroleum-derived substance or waste, radioactive substance or waste, whether solid, liquid, or gaseous, or any component of any of the substances or wastes mentioned, or any other substances or materials regulated under or defined by Environmental Legislation, including, without limitation, any wastes, materials, or substances that are (i) designated or labeled as "hazardous materials" and/or "hazardous waste" in accordance with the General Law of Ecological Balance and Environmental Protection; (ii) listed or characterized as "hazardous" under the Official Mexican Standards NOM-052-SEMARNAT-2005, NOM-053-SEMARNAT-1993, and (iii) designated as "hazardous waste" under the General Law for the Prevention and Comprehensive Management of Waste.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014063

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

23

[seal] [illegible]

**VERIFIED**

[signature]

"Unit" means any lot, condominium, and/or residential unit located on the Property subject to individual sale or disposal in accordance with the master condominium property regime and condominium property sub-regime that will be constituted on the property for the purposes of the Project.

"U.S. LLC" means Diamante Cabo San Lucas LLC.

(b) The following principles of interpretation will be applicable for the purposes of the Trust:

(1) The terms defined in the plural, when expressed in the singular, will have the individual meaning attributed to said term in the plural and vice versa.

(2) Unless otherwise specified herein, any reference in this Trust to Clauses, Annexes, or paragraphs, shall be understood to be made to Clauses, Annexes, and paragraphs of this Trust.

(3) The headings of the Clauses of this Trust are included for convenience purposes only and will not affect in any way the meaning or interpretation of any provision of this Trust.

(4) Any reference to a person, whether or not identified under said term, shall be construed as also including the successors and permitted legal assignees of said person.

(5) Any reference to an agreement, contract, convention, or document shall be construed as also including any modification or restatement of said agreement, contract, convention, or document.

(6) All the Annexes to this Trust are an integral part thereof.

Clause 2. Constitution of the Trust; Transfer of the Trust Assets.

(a) The parties in this act ratify the constitution of the irrevocable guarantee Trust with the Trustee in order to guarantee, with the Trust Assets, the payment and total fulfillment of the Guaranteed Obligations.

(b) The Trustee in this act confirms the acceptance of its appointment as Trustee of the Trust, as well as the receipt of the ownership (in trust property) of the Trust Assets, and agrees to act in the manner provided in this Trust and the applicable legislation to comply with the purposes of the same, including without limitation, to carry out the execution procedure established in Clause 10. This instrument certifies the receipt by the Trustee of the Trust Assets.

(c) The Trustor and the Primary Trust Beneficiary hereby acknowledge and agree that the transfer of the ownership of the Property and its Improvements in favor of the Trustee was formalized by means of the Agreement that constituted the Trust, recorded as public deed number 65,041, volume 1,026 dated 10 of March 2006, granted before Mr. José Alberto Castro Salazar, Public Notary attached to the Notary Public Office number seven, of the state and of the federal real estate, with office in the municipalities of La Paz and Los Cabos, and residing in the state capital and registered in the public registry of property and commerce on May 8, 2006, number 135, page 135, volume CCXLV, section I. The Trustor agrees to guarantee its disencumbrance in the event of eviction of the Property, with the understanding that such obligation will survive the early termination of the Trust.

CONFIDENTIAL

DANSKE_0014064

24

(d)  The Trustor in this act transmits to the Trustee the ownership and property of all rights attached or inherent to or derived from the Property, including without limitation licenses, permits, rights, concessions, accessories, and Property Improvements. In addition, the Trustor in this act transmits to the Trustee each and every one of the Assets, Accounts Receivable, Contractual Rights, as well as all the rights, interests, and benefits of the Trustor under any insurance policies, payments, money, cash, and all products and income derived from or related to the Trust Assets, including without limitation, all rights to receive insurance income and all amounts.

(e)  The irrevocable transfer of the holding and ownership of the rights that in this act are contributed to the Trust Assets, including without limitation, any Assets, Accounts Receivable, Contractual Rights, and rights of the Trustor under any of the contracts entered into by the Trustor is formalized in this act.

(f)  The irrevocable transfer of the rights, ownership, and interests of the Trustor derived from licenses and permits that in this act are contributed to the Trust Assets in favor of the Trustee, to the extent permitted by the applicable laws, is formalized in this act. Insofar as it is necessary to obtain a consent or authorization from any governmental authority for the transfer to the Trustee of the ownership of said licenses or permits and/or any right of the Trustor derived from them, the Trustor undertakes to obtain said consents or authorizations.

(g)  The irrevocable transfer of all the rights, interests, and benefits of the Trustor under any insurance policies, payments, money, cash, as well as all products and/or income derived from or related to the Trust Assets, including without limitation, all rights to receive all income derived from insurance and any amounts, are formalized in this act.

(h)  In the event that the Trustor receives amounts derived from the Assets, Contractual Rights, Accounts Receivable, rights, Interests, and benefits of the Trustor under any insurance policies, and other payments, amounts in cash, and all products and/or income derived from, or in relation to, the Trust Assets, said amounts will be received by the Trustor as depositary, free of any charge, for the purposes of the Trust and must be immediately deposited in the Concentration Account. The irrevocable transfer of Accounts Receivable and future Contractual Rights in favor of the Trustee will be formalized under the terms of this Trust, once said Accounts Receivable and Contractual Rights have been generated.

[seal:] [illegible]

24

CONFIDENTIAL

DANSKE_0014065

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

25



(i)  The Trustor agrees from time to time and at its own cost, to all the additional instruments and documents and to carry out all the necessary additional actions in accordance with the applicable laws or the Amended and Restated Credit Agreement or any Credit Document, or those that the Trustee or the Primary Trust Beneficiary reasonably requests in writing, to formalize and defend the transfer of the Trust Assets or in order to allow the Primary Trust Beneficiary and the Trustee to exercise its rights and resources under this Trust. The Trustor, within 15 (fifteen) Business Days following the date of this Instrument, must grant the irrevocable powers in the form attached as Annex C, in accordance with article 2596 of the Federal Civil Code and the equivalent articles in the Civil Codes of the states of Mexico, authorizing for such purposes the Primary Trust Beneficiary to act on behalf of the Trustor in order to carry out the actions described in this paragraph. In the event that the Primary Trust Beneficiary requests the Trustor to carry out the actions described above, and the Trustor does not carry out said actions within 15 (fifteen) Business Days, without exempting the Trustor from liability, and the Primary Trust Beneficiary, exercising its power, will have the right to carry out the actions described in this paragraph, without being obliged to do so.

(j)  ..In relation to any conventions, authorizations, licenses, or permits that, in accordance with the terms of the Trust, are or become part of the Trust Assets, the Trustor shall specify in writing to the other party or to the corresponding authority, as appropriate, that (i) the rights derived from them are the property of the Trustee in its capacity as trustee under this Trust; and (ii) the amounts payable under them must be deposited in the Concentration Account.

(k)  The Trustor undertakes to notify the parties with whom it has entered into contracts or agreements that are being transmitted to the Trust Assets so that the Trustee is recognized as the holder of said rights and contracts; said notification must be made using the notification form attached to the present as Annex D. Some of the contracts that the Trustor contributes to the Trust Assets are identified in Annex E of this instrument, with the understanding that they do not constitute all of the contracts contributed to the Trust Assets.

(l)  Likewise, the Trustor undertakes, within 10 (ten) Business Days following the date of this Instrument, to notify the banks that maintain the accounts that the Trustor contributes in this act to the Trust Assets, so that the Trustee be recognized as the holder thereof. The bank accounts that the Trustor in this act transmits to the Trustee are identified in Annex F of this Trust.

CONFIDENTIAL

DANSKE_0014066

(m) In relation to the rights derived from the bonds or insurance in favor of the Trustor that are being contributed to the Trust Assets, the Trustor undertakes, within 10 (ten) Business Days following the date of this Instrument, to notify the corresponding insurance and bond companies of said contribution in accordance with the form attached hereto as Annex G.

Clause 3. Parties to the Trust Agreement.

(a) The following are parties to this Trust:

| | |
|---|---|
| Trustor and Secondary Trust Beneficiary: | Diamante Cabo San Lucas, S. de R.L. de C.V. |
| Trustee: | The Bank of New York Mellon, S.A., Multiple Banking Institution, Trust Division (a banking Institution) |
| Primary Trust Beneficiary: | Danske Bank A/S, London Branch, the London branch of a company incorporated in the Kingdom of Denmark and/or its successors or authorized legal assignees |

[seal:] [illegible]

(a) Subject to the conditions established herein, the Trustor, as Secondary Trust Beneficiary, will be entitled to the reversal of the Trust Assets resulting after the full payment of the Guaranteed Obligations.

(b) The parties hereto declare that the transfer of the Trust Assets to the Trustee under the terms of the Trust does not constitute an alienation of assets under the terms of section V of Article 14 of the Federal Tax Code, and does not generate a transfer of ownership tax.

(c) The legal assignees, permitted assignees, substitute trustees, or the parties that substitute the Trustee or the Primary Trust Beneficiary, as the case may be (or those who participate together with them), in accordance with the terms of this Trust and the Amended and Restated Credit Agreement, will be considered as the "Trustee" and the "Primary Trust Beneficiary," respectively, for the purposes of this Trust.

Clause 4. Purposes of this Trust.

The purposes of the Trust that is hereby constituted are the following:

(a) That the Trustee receives and maintains the holding and ownership of the Trust Assets to ensure compliance with the Guaranteed Obligations in accordance with the provisions herein.

(b) That the cash and each and every one of the payments resulting from any Assets, Accounts Receivable, and Contractual Rights be deposited in the Concentration Account in accordance with the provisions of the Amended and Restated Credit Agreement and in this Trust, as well as that any rights and assets derived from the Assets, Accounts Receivable, and Contractual Rights be transferred to the Trustee to form part of the Trust Assets.

CONFIDENTIAL

DANSKE_0014067

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

27

(c) That, as of the date hereof, all rights, payments, and assets that are part of the Trust Assets and that are received as consideration for the transfer of ownership of any part of the Trust Assets in favor of any third party, or as compensation for any damage, expropriation, or loss of said Trust Assets (including payments in relation to insurance policies), be applied in accordance with the terms of the Amended and Restated Credit Agreement and of this Trust, and for any other purpose established in this Trust in accordance with its terms, in accordance with the written instructions received by the Trustee from the Primary Trust Beneficiary.

(d) That the Trust Assets guarantees the Guaranteed Obligations and, for this purpose, that the Trustee acts, in the Event of Default, in accordance with the provisions contained in Clause 10 and Clause 11 relating to the execution of the Trust Assets and the application of the resources from their sale (without prejudice to the applicability of other provisions of this Trust, as the case may be).

(e) That the Trustee -once the Guaranteed Obligations have been fully satisfied, the Amended and Restated Credit Agreement has been terminated, the Primary Trust Beneficiary has delivered to the Trustee a Notice of Full Compliance, and all payments to the Trustee have been satisfied under the terms herein- (I) reverse the remainder of the Trust Assets to the Secondary Trust Beneficiary under the terms of the written instructions received from the Trustor and, at the expense of the latter, carry out each and every one of the actions that are instructed with the purpose that the Trust Assets revert to the Trustor or the person appointed by it in accordance with the provisions of this paragraph; or (II) enter into an agreement modifying the Trust with the Trustor and the Primary Trust Beneficiary by virtue of which the Primary Trust Beneficiary ceases to be part of it to the satisfaction of the latter.

(f) That the Trustee retain ownership of the Trust Assets, exercise the rights corresponding thereto, and carry out the necessary acts for its protection, in accordance with the provisions set forth herein, in the applicable law, and in accordance with the written instructions issued jointly by the Trustor and the Primary Trust Beneficiary, provided the Trustee has not received a Notice of Default. In the event that the Trustee has received a Notice of Default, the Trustee will follow and comply only with the instructions given to it by the Primary Trust Beneficiary. If the Trustee is aware of an emergency, the Trustee will act to comply with the Investment instruction received later that day, provided it is a Business Day and the respective funds are received by the Trustee on the same Business Day.

[seal:] [illegible]
**VERIFIED**
[signature]

CONFIDENTIAL

DANSKE_0014068

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

29

[seal:] [illegible]
**VERIFIED**
[signature]

The Trustee will be authorized for the purpose of complying with an investment Instruction so that, at the time and in accordance with the instructions it receives, it open checking and investment accounts in the name of the Trust, in accordance with said Investment Instruction, with respect to which the Trustee will have, subject to the terms of this Trust and the content of said Investment Instruction, the right and exclusive control to make dispositions.

In the fulfillment of an Investment Instruction, the Trustee must Invest in Permitted Investments in financial instruments that have the maturity term to which said Investment Instruction refers, (in any case that they do not exceed the maximum maturity term established in said Investment Instruction) and, as the case may be, subject to the qualifications established in said Investment Instruction. If the Trustee does not receive an Investment Instruction as provided above or any cash amounts cannot be invested immediately on the same day that an Investment Instruction is received in accordance with the terms of this Trust, any such amounts in Cash from the Trust Assets must be invested in Permitted Investments.

(3) In compliance with Circular 1/2005, the Trustee has clearly and unequivocally explained to the parties the content of Rule 5.4 of Circular 1/2005, as well as the following preventive measures:

(i) The Trustee may carry out the transactions indicated in Rule 5.4 of Circular 1/2005, that is, transactions with The Bank of New York Mellon, S.A., a Multiple Banking institution, when acting on its own account, to the extent that said transactions are authorized by law and by the applicable legal provisions, and preventive measures are adopted to avoid conflicts of interest (the "Transactions").

(ii) As long as the Trustee has not received a written notification from the Primary Trust Beneficiary in the sense that an Event of Default has occurred, the Transactions will be carried out with prior express written authorization, in each case, from the Trustor to the Trustee by any means that leaves documentary evidence, including electronic means. If an Event of Default occurs and continues (as notified in writing by the Primary Trust Beneficiary to the Trustee), the Transactions will be carried out with the express authorization in writing, in each case, of the Primary Trust Beneficiary under the terms indicated above.

(iii) During the performance of the Transactions, the rights and obligations of the Trustee, acting in that capacity and on its own account, will not be extinguished due to confusion.

(iv) The department of The Bank of New York Mellon, S.A., Multiple Banking Institution, when acting on its own behalf, and the fiduciary department of the Trustee, should not be directly dependent on each other.

CONFIDENTIAL

DANSKE_0014069

30

(v)  In compliance with the provisions of number 3.2 of the Circular, it is stated that the funds received by the Trustee that are not invested immediately in accordance with the purposes of the Trust, must be deposited in a credit institution in excess no later than the Business Day after they are received, as they apply for the purposes of the Trust. If the deposit is made in accounts opened in the credit institution that acts as Trustee, it must accrue the highest rate that said institution pays for transactions at the same term and similar amount, on the same dates that the deposit is maintained.

(4)  In the Transactions referred to in the previous paragraphs of Clause 4(g)(3), the Trustee must observe the guidelines and policies that The Bank of New York Mellon, SA, Multiple Banking Institution, applies in similar transactions. The Trustee will not be responsible for reductions in the value of the investments carried out in accordance with the provisions of Clause 4(g)(2), whether due to market variations or for any other reason, and in relation to any detriment that the value of the investments made by the Trustee may suffer in accordance with the provisions of this clause, except in cases of fraud, negligence, or bad faith, determined in a final judgment issued by a competent authority. The parties in this act expressly release the Trustee from any liability in relation to the acts performed by the Trustee in accordance with the provisions of Subsection (e) of this Clause 4, as well as in relation to any detriment that may be suffered by value of the investments made by the Trustee in accordance with the provisions of this Clause 4(g), except in cases of fraud, negligence, or bad faith, determined in a final judgment issued by a competent authority.

(h)  That the Trustee enter into the contracts and other necessary Instruments, and carry out the relevant acts, to establish and maintain the guarantee contemplated under this Trust, and that the Trustee open any bank accounts in accordance with the written instructions of the Primary Trust Beneficiary delivered at least 5 (five) Business Days in advance.

(i)  That while the Primary Trust Beneficiary has not delivered to the Trustee a Notice of Default, and provided that the Primary Trust Beneficiary has approved and made known to the Trustee in writing the approval of said acts, the latter carries out in relation to the Property and the Improvements, all legal acts that the Trustor expressly requests in writing. Said acts (1) shall not affect the guarantee granted in favor of the Primary Trust Beneficiary, (2) shall constitute actions permitted under the Trust and the Amended Credit Documents, (3) shall not be about mergers, subdivisions, the granting of rights of way, the constitution of condominium regimes, or acts that limit the ownership of the Property, without the prior written consent of the Trustee, which will only be granted with the prior written instructions from the Primary Trust Beneficiary, and (4) must not alienate or encumber any part of the Trust Assets without the consent of the Trustee, which will only be granted with the prior written Instructions of the Primary Trust Beneficiary. Once a Notice of Default has been delivered, all the acts described above must be carried out by the Trustee as expressly instructed in writing by the Primary Trust Beneficiary.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014070

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

31



[seal:] [illegible] **VERIFIED** [signature]

(j)   That, by the delivery of written instructions solely from the Primary Trust Beneficiary to the Trustee, the Trustee (1) release any part of the Trust Assets so that the Trustor is able to sell said part to third parties, with the prior authorization of the Primary Trust Beneficiary of the document that contains said sale, transmission, or release, and this authorization must be delivered within 3 (three) Business Days following the date on which the Primary Trust Beneficiary receives the document, provided that all the necessary documentation for said sale, transmission, or release has been submitted, or (2) constitutes a Residential Unit Trust contributing to its assets some Unit that is part of the Trust Assets.

(k)  That the Trustee grant the persons who are jointly indicated in writing by the Trustor and the Primary Trust Beneficiary, a special power of attorney for the sale of any part of the Trust Assets under the terms that the Trustor and the Primary Trust Beneficiary indicate.

(l)   That the Trustor, on behalf of the Trustee, exercise all the rights and permissions that are part of the Trust Assets, as long as the Primary Trust Beneficiary has not delivered a Notice of Default, and acting at all times in accordance with the terms of this Trust and as authorized by the Primary Trust Beneficiary. Once a Notice of Default has been delivered, the Trustee will revoke the powers granted to the Trustor in accordance with the instructions of the Primary Trust Beneficiary and will exercise such rights and permissions that are part of the Trust Assets as instructed by the Primary Trust Beneficiary without the consent of the Trustor being necessary.

(l)   That the Trustee, with the prior approval of the Primary Trust Beneficiary, grant the powers that are required to the person or persons designated by the Trustor in writing to exercise said powers, in everything that refers to the processing of all permits, licenses, and authorizations necessary and/or required for the development of the Project. Once a Notice of Default has been delivered, the Trustee will revoke such powers as instructed by the Primary Trust Beneficiary without the need for the consent of the Trustor.

31

DANSKE_0014071

32

(m) That the Trustee carry out all the acts entrusted to him under this Trust (including, without limitation, the execution of any instrument, the fulfillment of any legal act, the granting of commercial commissions, and the cancellation and termination of this Trust), in accordance with the provisions of this Trust, the applicable law, and the instructions of the Trustor and/or the Primary Trust Beneficiary, as the case may be.

Clause 5. Trust Assets.

The Trust Assets (the "Trust Assets") will be made up of each and every one of the following assets and rights:

(a)  The Property and its Improvements, Assets, Accounts Receivable, and Contractual Rights.

(b)  Any improvements or products, whether they are pending or that have been obtained and that result from any asset of the Trust Assets.

(c)  All the rights and assets that result from the transformation of any property of the Trust Assets.

(d)  All products and resources resulting from the sale, lease, or transmission of any asset of the Trust Assets.

(e)  All rights, payments, and assets that the Trustor receives or has the right to receive, as of the date hereof or later, as consideration for the transfer to third parties of the ownership and property over any asset of the Trust Assets, or as compensation for any damage, destruction, or losses in relation to said Trust Assets or in relation to any Account Receivable.

(f)  All cash and all assets, products, and/or income derived from or related to the Trust Assets, including without limitation, all and any amounts deposited in any bank accounts.

(g)  The cash amounts resulting from the execution of the Trust Assets, as appropriate.

(h)  The right to receive any amount that is received as compensation for the expropriation of the Trust Assets.

(i)  Any right, interest, or profit derived from the Investment of the amounts that constitute the Trust Assets.

(j)  Any other asset or right acquired by the Trustee acting in accordance with this Trust.

(k)  The income and products of the Trust Assets.

(l)  Any other right in favor of the Trustee as owner of the Trust Assets.

(m) All rights, products, payments, and assets that the Trustor receives or is entitled to receive, on this date or later, as a consequence of the use of the Trust Assets in the ordinary course of its business and in accordance with the terms and conditions established herein, or as a consequence of the exercise by the Trustor of any Accounts Receivable in the ordinary course of their business (or any assignment thereof).

[seal:] [illegible]

32

DANSKE_0014072

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

33

The Trust Assets will not include each and every one of the obligations derived from the agreements and contracts that are part of the Trust Assets.

Clause 6. Indivisibility of Trust Assets:

Without prejudice to the provisions relating to the execution procedure contained herein, as long as this Trust is in full force, the Trust Assets may not be divided insofar as the guarantee that is constituted on the Trust Assets covers the Trust Assets as a whole, regardless of whether the Trust Assets are individualized, separated, or divisible. Therefore, the Trustor expressly and irrevocably waives any right that it may have to require the reduction or division of the Trust Assets as a result of any partial payments made in relation to the Guaranteed Obligations. The Trust Assets may only be reduced or divided by means of a written instruction delivered to the Trustee signed by the Trustor and the Primary Trust Beneficiary in relation to the matters established in this Trust and the Amended and Restated Credit Agreement.

For the purposes of the provisions of the LGTOC, the parties agree that the ownership of the Trust Assets will not revert to the Trustor in the event that their value increases during the term of this Trust.

Clause 7. Possession and Use of Trust Assets.

(a)  As long as there has not been an Event of Default, the Trustee grants possession of the Property to the Trustor, under the terms and for the purposes of the present and the applicable articles of the LGTOC. As of the occurrence and during the existence of an Event of Default (and the expiration of any period of cure), said possession will be revoked. The Trustor agrees that its rights provided for in the LGTOC with respect to the Trust Assets that it has transmitted to the Trustee, will be limited to the following: (1) to the use of the Trust Assets for their own benefit in the normal course of their business; and (2) to sell or grant the appropriate use of the Units at market prices. Except for the acts carried out by the Trustor in the ordinary course of business, with the prior approval of the Primary Trust Beneficiary, the Trust Assets may not be combined, joined, or in any other way mixed with other assets, except for a written instruction delivered to the Trustee signed by the Trustor and the Primary Trust Beneficiary.

The rights granted to the Trustor under the terms of paragraph (a) above will be automatically revoked and will cease to take effect on the day that the Primary Trust Beneficiary delivers a Notice of Default to the Trustee and the Trustor.

(b)  The Trustor, in its capacity as depositary of the Trust Assets, whose possession is granted to it under the terms of subsection (a) above:

CONFIDENTIAL

DANSKE_0014073

[seal] [illegible] **VERIFIED** [signature]

(1)  must maintain the Trust Assets as depositary, keep original copies of the documents that evidence the title and ownership of the Trust Assets, of which copies certified by public notary have been delivered or must be delivered to the Trustee under the terms of this Trust.

(2)  will refrain from using the Trust Assets for any purpose that has not been expressly authorized by this Trust or the Amended and Restated Credit Agreement;

(3)  will be responsible, in accordance with applicable law, for each and every one of the damages caused to any third party (including the Primary Trust Beneficiary and the Trustee) due to the possession and use of the Trust Assets;

(4)  must pay, at its own expense, all the expenses necessary to repair, manage, and maintain the Trust Assets in good condition, subject to normal wear and tear;

(5)  pursuant to the LGTOC, the Trustor assumes the risk of loss, damage, or detriment to the entire Trust Assets;

(6)  within 5 (five) Business Days following the date on which the Trustor becomes aware of any damage to the Trust Assets, the Trustor shall deliver to the Trustee and the Primary Trust Beneficiary a notice (a "Notice of Damages to the Assets") in accordance with the form attached as Annex B, providing information on any event whose consequence is the damage or impairment of the Trust Assets, or if the Trust Assets are at risk of suffering any damage, and must take all necessary actions to prevent the detriment of the Trust Assets. The Trustee will not have any obligation to obtain, and will not be obliged to demand, the delivery of the notices or other information referred to in this paragraph;

(7)  As long as a Notice of Default has not been delivered to the Trustee, the Trustor, under its responsibility and at its discretion, will allow third parties to have access to the Trust Assets, will carry out all acts for the development of the Project; and

(8)  subject to the corresponding provisions of the Amended and Restated Credit Agreement, it will take out, at its own expense, the insurance policies that cover the Trust Assets against all types of risks and all the coverage and insurance policies required under the Amended and Restated Credit Agreement, and must also deliver to the Trustee the originals of said policies, duly endorsed in favor of the Trustee, in which the Primary Trust Beneficiary is assigned as the preferred beneficiary or additional insured, as the case may be, acknowledging the assignment to the Trustee of all the rights, interests, and benefits of the Trustor before the insurance companies under said policies. On each expiration date of an insurance policy, the Trustor must deliver to the Trustee the originals evidencing the payment of the corresponding premiums. The Trustee will have no obligation to obtain, and will not be obliged to demand, delivery of the notices or other information referred to in this paragraph.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014074

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

35

[seal:] [illegible]
**VERIFIED**
[signature]

(c)  Subject to reasonable security requirements, the provisions of the Amended and Restated Credit Agreement and the applicable law, the Trustor will allow the employees, representatives, or agents of the Primary Trust Beneficiary to inspect the Trust Assets during reasonable periods and business hours, with a prior written notice delivered at least 5 (five) Business Days before the day corresponding to the inspection, with the understanding that said inspection shall not unnecessarily interfere with the Trustor's personnel and operations, or with the development of the Project.

(d)  The Trustor in this act undertakes to respond for any defect in the ownership of the Trust Assets (including without limitation, the disencumbrance in the event of eviction) under the terms of law. In the event that any amount is paid to the Primary Trust Beneficiary for claims related to any defect in the ownership of the Trust Assets, said amount will be computed for the purposes of calculating the Trustor's responsibility under the terms of this paragraph. Said responsibility is assumed by the Trustor before the Trustee, empowering the Trustee to bind the Trustor, in such terms, in accordance with the written instructions received from the Primary Trust Beneficiary, before the person or persons to which the Trustee may transfer the ownership and property of any part of the Trust Assets. Notwithstanding the foregoing, any obligation of the Trustee vis-à-vis third parties (as long as said obligation does not include legal actions against the Trustee) arising from defects in the ownership and property of the Trust Assets (including without limitation, the disencumbrance in the case eviction) must be fulfilled exclusively by the Trustor within 7 (seven) Business Days following the written request made by the Trustee or the Primary Trust Beneficiary to the Trustor, and, in the absence of the corresponding payment, the Trustee, with the prior written instruction from the Primary Trust Beneficiary, may cover said obligations against the Trust Assets, to the extent possible. When any of the assets of the Trust Assets are disposed of, the Trustee will inform the corresponding acquirer or acquirers that all obligations arising from defects in property or ownership of the acquired assets that may arise will be fulfilled by the Trustor under the terms of article 2123 and other relative terms of the Federal Civil Code.

Clause 8. Appraisal of the Trust Assets.

The parties in this act agree that the Primary Trust Beneficiary may, with the prior written notice that must be delivered to the Trustee and the Trustor, request that an appraisal of the Trust Assets (the "Appraisal") be carried out in accordance with the relevant provisions of the Amended and Restated Credit Agreement or an Event of Default occurs and continues to exist.

CONFIDENTIAL

DANSKE_0014075

36

Clause 9. Obligations to Act. (a) While this Trust remains in force, the Trustor agrees to:

1    carry out, at its own expense, the necessary actions to keep the guarantee constituted in accordance herewith in force, fully taking effect and allowing the Trustee to carry out each and every one of the actions established in this Trust;

2    transfer to the Trustee the ownership of any part of the Trust Assets that it acquires, in accordance with this Trust; and

3    comply with the terms and conditions established herein, in the Amended and Restated Credit Agreement, and in the Amended Credit Documents.

(b)  The Trustee agrees to maintain ownership of the Trust Assets in accordance with the provisions of this Trust and the applicable law. Except for the exceptions expressly provided herein, the Trustee will act exclusively in accordance with the written Instructions of the Primary Trust Beneficiary and will disregard any instructions received from the Trustor. All instructions addressed to the Trustee will be in writing and delivered in accordance with the provisions of Clause 20.

Clause 10. Execution Procedure - Special Clause.

The parties in this act agree to be bound under a special procedure for the execution of this Trust, under the terms of the special section, contained in this Clause 10(c). The parties agree that when an Event of Default occurs, the Primary Trust Beneficiary may instruct the Trustee to proceed with the execution and sale of the Trust Assets, in accordance with the following procedure:

(1)  As of the occurrence of an Event of Default and the conclusion of any remediation period, the Primary Trust Beneficiary may instruct the Trustee to carry out the sale of all or part of the Trust Assets in order to pay the Guaranteed Obligations. In the event that the Trustee receives an execution instruction (hereinafter, an "Execution Instruction") from the Primary Trust Beneficiary, it will proceed in accordance with the provisions set forth below. The Execution Instruction must be signed by the Primary Trust Beneficiary and accompanied by a copy of the Trust, certified by a notary public, and it must specify the amount due and not paid of the Guaranteed Obligations, and will include a copy of the notification through which the creditor, under the Amended and Restated Credit Agreement, has required the payment of the corresponding Guaranteed Obligations, or the specification that the Trustor has not fulfilled its obligations under the Amended and Restated Credit Agreement, or the Trust, or any of the Amended Credit Documents, as appropriate. For the purposes of this Trust, it is understood that an Execution Instruction enters into force on the Business Day following that on which the Trustee has received the Execution Instruction in question in accordance with this clause.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014076

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

37

[seal:] [illegible]
**VERIFIED**
[signature]

(2) As soon as possible, but in no case after the 5 (five) Business Days following the date on which it has received the Execution Instruction from the Primary Trust Beneficiary, the Trustee will notify in writing and in accordance with the provisions of Clause 20 to the Trustor of the receipt of said Execution Instruction, with a copy for the Primary Trust Beneficiary.

(3) The Trustor will have a term of 20 (twenty) Business Days from the date on which it receives the copy of the Execution Instruction from the Trustee to oppose the sale of the Trust Assets. The Trustor may only oppose the sale if it exhibits to the Trustee a proof of (i) payment that certifies the fulfillment of the Guaranteed Obligations with respect to which the Primary Trust Beneficiary has notified the existence of an Event of Default, (ii) the existence of a remediation period that has not elapsed, granted by the Primary Trust Beneficiary under the Amended and Restated Credit Agreement, for the fulfillment of the Guaranteed Obligations, or (iii) the novation of the obligations under the Amended and Restated Credit Agreement, with the understanding that said proof must be duly authorized in writing and signed by the Primary Trust Beneficiary, the Trustee being free to consult with the Primary Trust Beneficiary regarding the veracity of any document presented by the Trustor as proof under this paragraph.

(4) In the event that the Trustor does not accredit or demonstrate to the satisfaction of the Trustee any of the events described in subsection (3) above in accordance with the provisions and within the term mentioned in said subsection, the Trustee, upon instruction from the Primary Trust Beneficiary (i) must immediately deliver to the Primary Trust Beneficiary to the account indicated by it, any cash amount that forms part of the Trust Assets that is deposited in the Trust Accounts, for application to the payment of the Guaranteed Obligations, in accordance with the provisions of the Amended and Restated Credit Agreement and this Trust; and (ii) must immediately proceed, through an Advisor (as said term is defined below), to sell the Trust Assets in accordance with this Clause 10, provided that the Primary Trust Beneficiary provides the Trustee with sufficient funds to cover any cost or expense incurred by virtue of this execution procedure, including expenses of third parties in charge of the execution, rights, and any other obligations resulting from said procedure. The Primary Trust Beneficiary may request the preparation of an Appraisal of the Trust Assets under the terms of Clause 8 to determine the value of the assets for the purposes of the auction.

37

DANSKE_0014077

38

(5)  The sale will be made by the Trustee through an auction process with the intervention of a third person designated for such purposes by the Primary Trust Beneficiary, which will take place in Mexico City or in San José del Cabo, Baja California Sur, as determined in writing by the Primary Trust Beneficiary. The Trustee will announce the auction (hereinafter referred to as the "Call") in one of the newspapers with the highest circulation of the place where the Trust Assets are located or have been offered for sale, as well as in a newspaper with the largest circulation in Mexico City. Upon the instruction of the Primary Trust Beneficiary, the Trustee shall also carry out a study or investigation of potential buyers, and shall invite potential buyers to participate in the auction. For the purposes of this clause, the Trustee will contract and pay third parties, designated in writing by the Primary Trust Beneficiary ("Advisors"), whose fees and reasonable expenses will be covered by the Trustor or charged to the Trust Assets. To the extent that the Primary Trust Beneficiary deems it necessary, an Advisor will be in charge of preparing and distributing, at the expense of the Trustor and as soon as possible, a memorandum of confidential information (the "Information Memorandum") to be delivered to potential buyers who have demonstrated an interest in acquiring the Trust Assets. The Information Memorandum will provide information to potential buyers about the amount (to be determined by the Advisors) that they must present to the Trustee by means of a certificate of deposit issued by a credit institution to guarantee the seriousness of their offer, should they choose to participate in the auction. The Trustee shall substitute the Advisors when so notified in writing by the Primary Trust Beneficiary. The Trustee must notify the Primary Trust Beneficiary of any act or fact of which it is aware that could affect the execution process, in such a way that the Trustee is in a position to act in accordance with the instructions received from the Primary Trust Beneficiary.................................................................................

(6)  Once the Information Memorandum has been distributed to potential bidders, or after the Advisors and/or the Trustee have distributed any additional information to potential bidders, the Trustee shall inform those bidders and the Trustor about the date, place, and time designated to carry out the auction, as well as the base price determined by the Advisors at the request of the Primary Trust Beneficiary (the "Base Price"). Said information must appear in the Call, the date of which must not exceed 30 (thirty) calendar days from the date on which, if applicable, the Advisors have notified the Trustee that the distribution of the Information Memorandum has concluded.................................................................................

(7)  Participating bidders must deliver to the Trustee their bids in writing in a closed and sealed envelope within the date and time established in the Call, together with a certificate of deposit for the amount indicated in the Information Memorandum to guarantee the seriousness of their offer.................................................................................

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014078

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

39



[seal:] [illegible]
**VERIFIED**
[signature]

(8)  On the day and time of the auction, the Trustee [illegible] the envelopes in the presence of a notary public acceptable to the Primary Trust Beneficiary and the bidders or their representatives who wish to attend, and will designate as the winner whoever presents the bid highest (which must be equal to or greater than the applicable Base Price, if any) and the best economic payment conditions in the opinion of the Advisors, or in the event that Advisors have not been hired, in the opinion of the Primary Trust Beneficiary (in which case the economic conditions will be determined under economic criteria, seeking to obtain the maximum financial benefit derived from the sale or auction of the Trust Assets). As of the date the envelopes have been opened, the Trustee shall diligently proceed to the sale of the Trust Assets to the winning bidder.................................................................................

(9)  The winning bidder must pay the price offered in accordance with the conditions and within the term established in its offer...............................................................

(10)  In the event that the winning bidder does not make the corresponding payment within the agreed term, the deposit will be retained by the Trustee in favor of the Primary Trust Beneficiary, who will apply it according to the provisions of this Trust to the payment of the Guaranteed Obligations in accordance with the terms agreed upon here..........................

(11)  Once the term referred to in subsection (9) above has elapsed without the purchase price having been paid by the winning bidder, the Trustee, as instructed by the Primary Trust Beneficiary, will notify the bidder that has made the second best offer (within the next 3 (three) Business Days. If said bidder maintains its Initial position, it will be granted a new term for the payment of the purchase price. If said bidder does not maintain its initial position, the Trustee and the Advisors, as instructed by the Primary Trust Beneficiary, may continue with the bidders who have made the best offers in descending order, following the previous procedure...........

(12)  If it is not possible to carry out the sale to any of the bidders, a new auction will be carried out following the aforementioned procedure, and the Trust Assets must be sold to the highest bidder, with the understanding that there will be no base price or starting price in said auction.

(13)  The Trustee must, as instructed by the Primary Trust Beneficiary, accept offers for only a part of the Trust Assets and, in such case, the Primary Trust Beneficiary must instruct the Trustee to carry out new auctions to sell the remainder following the procedure mentioned above. .................................................................................

(14)  The parties in this act expressly and Irrevocably acknowledge that the execution process of the guarantee constituted under this Trust may be carried out, at the election of the Primary Trust Beneficiary, by judicial or extrajudicial means and, in the event that the Primary Trust Beneficiary chooses the extrajudicial route, the execution procedure will be carried out in accordance with what is agreed upon herein.................................................................

CONFIDENTIAL

DANSKE_0014079

Clause 10.

The Trustor in this act acknowledges and subscribes the text of this Clause 10 (special section) signing below and at the end of this Trust, and in this act confirms its express consent and irrevocable instruction to the Trustee to carry out the extrajudicial sale procedure of the Trust Assets as established in this Clause 10.

The Trustor:

SIGNED

**By: KENNETH ABOUD JOWDY**

Position: Chief Executive Officer

Clause 11. Application of Resources by Execution.

(a) The Trustee will apply the resources resulting from the sale of the Trust Assets in accordance with the Instructions of the Primary Trust Beneficiary, respecting the following order of application:

(1) First, to the payment of any amounts owed to the Trustee pursuant to this Trust;

(2) Second, to the payment of any reasonable expenses incurred during the extrajudicial execution procedure and sale of the Trust Assets, including without limitation, the cost of the Appraisal described in Clause 8, the costs derived from the hiring of third parties in charge of the execution procedure, rights, and any other obligations resulting from the sale of the Trust Assets, in each case, any other expense related to the execution procedure established in Clause 10, to the extent that the Primary Trust Beneficiary has approved in writing the hiring of said person;

(3) Third, to the reimbursement of any reasonable expenses and payments made by the Primary Trust Beneficiary as a result of or by virtue of the sale of the Trust Assets or that the Trustor had to pay in accordance with the provisions of this Trust;

(4) Fourth, to the payment in favor of the Primary Trust Beneficiary of each and every one of the Guaranteed Obligations (according to the order established in the Amended and Restated Credit Agreement), this amount being able to be deposited in the Concentration Account, at the discretion of the Primary Trust Beneficiary; and

(5) Fifth, once the previous concepts have been paid, the remainder must revert to the Trustor in his capacity as Secondary Trust Beneficiary or to the person it appoints, in accordance with the written instructions delivered by the Trustor to the Trustee for that purpose and in accordance with Clause 12.

(b) Once the Trustee has sold the Trust Assets, it will deliver the proceeds of said sale and distribute the Trust Assets in accordance with the terms established in [illegible] (a) above to the Primary Trust Beneficiary or to the person it appoints.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014080

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

41

[seal:] [illegible]
**VERIFIED**
[signature]

Clause 12. Reversal of Trust Assets.

(a)  Once each and every one of the Guaranteed Obligations has been paid and fulfilled in full, the parties agree that the Primary Trust Beneficiary will deliver a notice to the Trustee (the "Notice of Full Compliance") in accordance with the form which is attached as Annex A, whereby the Primary Trust Beneficiary notifies the Trustee that the Trustor has complied with all the Guaranteed Obligations and that there is no right or action to enforce against the Trustor for the protection of the Amended and Restated Credit Agreement. In the event that the Primary Trust Beneficiary does not deliver the Notice of Full Compliance within a period of 5 (five) Business Days following the date on which the full payment has been made, the Trustor is hereby authorized to deliver to the Trustee a notification stating that all the Guaranteed Obligations have been fully met and that all the obligations to make Loans have ended, with the understanding that, in any case, said notification must be accompanied by a written confirmation from the Primary Trust Beneficiary. In the event that the Trustee receives from the Trustor said notification under the terms indicated above and accompanied by the written confirmation of the Primary Trust Beneficiary, the Trustee will be authorized to proceed under the terms described in this Clause as if the Notice of Full Compliance had been delivered.

(b)  Within 5 (five) Business Days following the date on which the Trustee receives the Notice of Full Compliance, (i) the Trust Assets will revert to the Trustor or its designee, and the Trust will be terminated; or (ii) the Trustor will enter into an amendment agreement to the Trust with the Trustee and the Primary Trust Beneficiary, by virtue of which the Primary Trust Beneficiary will cease to be part of the same to the satisfaction of the latter. In the event of the reversal of the Trust Assets, the Trustee agrees to enter into and sign any agreements, documents, and instruments and carry out any acts that the Trustor reasonably requests in writing (at the expense of the Trustor) to legally formalize said transfer, including, without limitation, the acts described in Clauses 2 and 4.

The parties expressly agree and acknowledge that any taxes, charges, and expenses that are generated by virtue of the acts described in the previous paragraph will at all times be the responsibility of the Trustor.

Clause 13. Obligations and Limit of Liability of the Trustee; Defense of Trust Assets.

(a)  The Trustee agrees to manage the Trust Assets, comply with its obligations, and exercise its rights in accordance with the provisions of this Trust and in accordance with Mexican law. The obligations of the Trustee under this Trust are limited to those expressly established herein and shall be carried out by the Trustee under the terms established herein and in accordance with the instructions of the Primary Trust Beneficiary or the Trustor, as applicable.

CONFIDENTIAL

DANSKE_0014081

42

(b)  The parties hereto agree that neither the Trustee nor the Primary Trust Beneficiary will be liable for any act or omission of the other parties or of any third party, including any Advisor that could result in an inability to fulfill the purposes of this Trust.

(c)  If the Trust Assets are insufficient to pay all the Guaranteed Obligations, the Trustee will not have any responsibility to make contributions to the Trust, or to comply with the Guaranteed Obligations.

(d)  The Trustor shall have the obligation to immediately notify the Primary Trust Beneficiary in writing of any event that, to the best of its knowledge, affects the Trust Assets or the rights derived from this Trust.

(e)  The Trustee must inform the Trustor and the Primary Trust Beneficiary in writing about any situation that threatens the existence of the Trust Assets or about any Event of Default of which it becomes aware, with the understanding that the Trustee will have no obligation to investigate the existence of said threat or case of non-compliance.

(f)  The Trustee undertakes to grant in favor of the individuals or entities designated in writing by the Trustor the powers necessary to defend the Trust Assets, with the understanding that, in case of an Event of Default (and once any remediation period has elapsed), said powers will be granted solely by instructions of the Primary Trust Beneficiary. In the event that a proxy has not been appointed by the Trustor in accordance with the above and the lack of defense could affect the Trust Assets, the Trustee will grant powers to the individuals as instructed by the Primary Trust Beneficiary, who must provide the Instructions corresponding to the defense of the Trust Assets until the Trustor provides said instructions in writing. The Trustee will not be responsible for the acts of said proxies, nor for the payment of the respective costs and expenses, which must be covered by the Trustor.

(g)  In the event that the Trustee becomes aware of any urgent action that is necessary for the protection and maintenance of the Trust Assets, the Trustee must immediately notify the Primary Trust Beneficiary and the Trustor and take any actions in accordance with the instructions of the Primary Trust Beneficiary.

(h)  …If the Trustee receives a judicial or other notification or a lawsuit filed against the Trust or the Trust Assets, the Trustee will send, the same day it receives said notification or claim, or at the latest on the following Business Day, a copy of the same to the Trustor and the Primary Trust Beneficiary in accordance with the provisions of Clause 20, and will also send another copy by fax to the numbers indicated in Clause 20 or through any other electronic means, except when such notification or claim is received after 5:00 p.m. (Mexico City time), in which case said copy must be delivered on the following Business Day.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014082

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

43

[seal:] [illegible] **VERIFIED** [signature]

(i)   Notwithstanding the other terms and conditions set forth herein, the parties acknowledge that, in view of the nature of some of the assets and rights that make up the Trust Assets, some of said assets and rights may not be fully identified at the time that it is intended to initiate the execution procedure provided for in Clause 10. In this regard, the Trustor undertakes to provide the Trustee and the Primary Trust Beneficiary with all the information and documentation that is necessary (in addition to that expressly provided in this Trust) in order to be able to fully identify any of said rights and assets at any time, and in any case prior to the Trustee receiving an Execution Instruction. The Trustee will not be responsible for the lack of compliance with this obligation, except for its own negligence, fraud, or bad faith determined in a final judgment issued by a competent authority. The Primary Trust Beneficiary must provide the Trustee with the Information it has for the purposes described above, as the case may be. In the event that, in the exercise of its obligations under Clause 10, the Trustee is required by a judicial authority, a certified appraiser, an Advisor, or bidder to individually and separately identify the assets that make up the Trust Assets, the Trustee shall be authorized to (i) provide the most up-to-date Information that it has in relation to said assets or that it has received from the parties of this Trust, and (ii) notify the Primary Trust Beneficiary in writing of said requirement within 3 (three) Days Business days following the date on which said request had been communicated to the Trustee and to respond to said request in the manner in which the Primary Trust Beneficiary instructed in writing. .................................................................................................

Clause 14. Mandatory Legal Provisions in Relation to the Responsibility of the Trustee. .........

In accordance with article 106, section XIX, of the Credit Institutions Law and the provisions of Circular 1/2005, the Trustee declares that it has clearly and unequivocally explained to the parties hereto the meaning and legal consequences of the following provisions, which are transcribed in this act for the relevant purposes: ...................................................................

"ARTICLE 106. Credit Institutions will be prohibited from: ..............................................

CONFIDENTIAL

DANSKE_0014083

XIX. In carrying out the transactions referred to in Article 46 (XV) of that Law:

a)   Repealed

b)   Responding to the Trustors, mandators, or principals, due to a breach by the debtors, for the credits that are granted or by the issuers, for the securities that are acquired, unless it is their fault, as provided in the final part of article 391 of the General Law on Securities and Credit Transactions, or guarantee the perception of returns for the funds whose Investment is entrusted to them.

If, at the end of the trust, mandate, or commission constituted for the granting of credits, these have not been liquidated by the debtors, the institution must transfer them to the trustor or trust beneficiary, as the case may be, or to the mandator or principal, refraining from covering their amount.

In the trust, mandate, or commission agreements, the provisions of this subsection and a statement from the trustee will be clearly inserted in the sense that its content is made unequivocally known to the persons from whom it has received assets or rights for its fiduciary affectation.

c)   Acting as trustees, grantors or commissioners in trusts, mandates or commissions, respectively, through which resources of the public are captured, directly or indirectly, through any act causing direct or contingent liabilities, except in the case of trusts constituted by the Federal Government through the Ministry of Finance and Public Credit, and trusts through which securities are issued that are registered in the National Register of Securities in accordance with the provisions of the Securities Market Act;

d)   Perform the trusts, mandates or commissions referred to in the second paragraph of article 88 of the Investment Companies Act;

e)   Act in trusts, mandates or commissions through which limitations or prohibitions contained in financial laws are evaded;

f)    Using funds or securities of the trusts, mandates, or commissions intended to the granting of credits, in which the trustee has the discretionary power, in the granting of the same to carry out transactions by virtue of which their delegate trustees are or may be debtors; the members of the board of directors or management, as appropriate, both main directors and deputies, whether or not they are in office; the employees and officials of the institution; proprietary or alternate commissioners, whether or not they are in office; the external auditors of the institution; the members of the technical committee of the respective trust; the ascendants or descendants in the first degree or spouses of the aforementioned persons, the companies on whose boards said persons or the same institutions have a majority, as well as those persons that the Bank of Mexico determines through general provisions, and

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014084

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

45



[seal:] [illegible]
**VERIFIED**
[signature]

g) They administer rural [illegible], unless they have received the administration to distribute assets among heirs, legatees, associates, or creditors, or to pay an obligation or to guarantee their compliance with the value of the property or its products, and without in these cases the administration exceeding the term of two years, except in the case of production trusts or guarantee trusts.

Any agreement contrary to the provisions of the preceding paragraphs will be void."

Likewise, in accordance with the provisions of Rule 5.5 of Circular 1/2005, the applicable provisions of Rule 8 of said Circular 1/2005 are transcribed below, for the legal purposes that may arise:

"6. PROHIBITIONS.

6.1. In the conclusion of Trusts, Trust Institutions will be prohibited from the following:

a) Charging the trust assets prices other than those agreed upon when entering into the transaction in question;

b) Ensuring the earning of yields or prices for funds whose investment is entrusted to them, and

c) Conducting operations under conditions and terms contrary to their internal policies and sound financial practices.

6.2. The Trust Institutions may not carry out transactions with securities, credit instruments, or any other financial instrument that do not comply with the specifications that have been agreed upon in the corresponding Trust Agreement.

6.3. Trust Institutions may not carry out the types of Trust that they are not authorized to enter into in accordance with the laws and provisions that regulate them.

6.4. In no case may the Trust Institutions cover the payment of any sanction imposed on said Institutions by any authority against the trust assets.

6.5. Trust Institutions must observe the provisions of articles 106 section XIX of the Credit Institutions Law, 103 section IX of the Law on Securities Market, 62 section VI of the General Law of Mutual Insurance Institutions and Companies, 60 section VI Bis of the Federal Law on Bond Institutions, and 16 of the Organic Law of Rural Financial Institutions, as applicable to each Institution."

Clause 15. Substitution of the Trustee.

a) Subject to the provisions of subsections (d) and (e) below, the Trustee may terminate its participation as trustee pursuant to this document by means of a written notice to the Trustor and the Primary Trust Beneficiary with at least 30 (thirty) calendar days in advance. Subject to the provisions of subsection (d) below, the appointment of the Trustee may also be terminated by written notice from the Primary Trust Beneficiary at least 30 (thirty) calendar days prior to the date on which said termination should take place.

45

DANSKE_0014085

46

b)  If the Trustee ceases to act as trustee hereunder due to an early termination in accordance with subsection (a) above, the Trustee shall prepare financial statements, balance sheets, and account statements related to the Trust Assets for the period comprised from the last account statement delivered to the parties, until the date on which the Trustee ceases to act as such, which must be delivered to the Primary Trust Beneficiary and to the Trustor within 30 (thirty) calendar days following said termination. The Trustor and the Primary Trust Beneficiary will have 15 (fifteen) Business Days counted from receipt to examine and object to said financial statements, balance sheets, and account statements, with the understanding that if at the end of said period there is no objection, the financial statements, balances, and account statements will be considered approved by the Trustor and the Primary Trust Beneficiary, and the Trustee will be released from any liability for its acts under this Trust.

c)  The Primary Trust Beneficiary shall have the right to remove the Trustee and to appoint any successor Trustee, as long as said successor Trustee has at least the same operational capacity and knowledge of the trust business in Mexico as the Trustee.

d)  The Trustee will continue to act as trustee hereunder until a substitute trustee has been appointed and said appointment has been accepted, provided that the Primary Trust Beneficiary shall make all reasonable efforts to appoint the substitute trustee in a timely manner.

e)  The substitute trustee will have the same rights and obligations as the Trustee under this Trust and will be the "Trustee" for all purposes under it.

Clause 16. Trustee Fees and Expenses.

The Trustor agrees to pay the Trustee or whoever replaces it in accordance with the terms of Clause 15, the fees set forth in Annex H, as well as other reasonable and documented costs and expenses incurred by the Trustee in relation to the fulfillment of its obligations under the present, including the execution of the guarantee under this Trust. In the event that the Trustor fails to comply with any of its obligations to pay fees or expenses to the Trustee, the Trustee (i) may request that said fees and expenses be covered by the Primary Trust Beneficiary, who may make said payment and who will have, in such case, the right to demand against the Trustor the amount of said payment plus interest as provided in the Amended and Restated Credit Agreement, and/or (ii) to cover the fees and/or reasonable expenses in question charged to the Trust Assets.

Unless otherwise established in this Trust, all taxes, expenses, reasonable fees, and commissions derived from the preparation and registration of this Trust and any modification to it, as well as for any act, agreement, document, instrument, or notification carried out, prepared, executed, or notified in accordance with this Trust, including without limitation, reasonable notary fees and expenses and the payment of rights incurred by the Primary Trust Beneficiary and the Trustee, in the fulfillment of its respective rights and obligations and any execution of the Trust Assets in accordance with this Trust, will be fully and exclusively paid for and covered by the Trustor.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014086

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

47

**[seal:] [illegible] VERIFIED [signature]**

Clause 17. Taxes.

Any and all taxes (including, without limitation, any income taxes that are applied through withholding or in any other way, sales taxes, value added taxes, property and asset taxes), contributions, duties, uses, or determinations of any kind, that are imposed on or in relation to the Trust Assets, this Trust, or in relation to the fulfillment of the purposes of this Trust by the Trustee will be paid by the Trustor, with the understanding that the Trustee will not be responsible for the calculation, withholding, and payment of any taxes, contributions, rights, benefits, or determinations except, as required by applicable legislation. Likewise, the Trustor and the Primary Trust Beneficiary hereby agree that the tax known as the Flat Rate Business Tax, derived from the provisions of the Flat Rate Business Tax Law, if applicable, will be covered and reported by the Trustor, thereby releasing the Trustee from any liability or obligation related to the Tax provided for by said Law or the law and/or tax that substitutes them at a given time.

If, for any reason, the Trustee were to be notified by any authority in tax matters about any interpretation in the sense that the activities subject to this Trust were considered taxed and, consequently, the Trustee had to withhold and pay any taxes pursuant to this Trust or any act related thereto, and the Trustor and/or the Primary Trust Beneficiary disregard the notification that the Trustee must make of said events and do not appoint representatives to defend the Trust Assets, the party responsible for the agreement to what is agreed in this Trust undertakes to Indemnify, remove and hold harmless and to assist and provide the necessary funds to the Trustee, its shareholders, directors, delegate trustees, proxies, representatives, advisers, and/or employees to face such consequences in accordance with the applicable legislation. The Trustee will not have any responsibility for its actions in relation to such withholdings and payments and if it is fined or otherwise sanctioned; the responsible party, in accordance with what is agreed in this Trust, undertakes to immediately compensate any expenses or costs that the Trustee makes in this regard. The Trustee shall at all times have the right to be represented, at the expense of the Trust Assets, by its own lawyers, advisers, and tax experts in relation to any tax obligations arising out of its position. In accordance with the foregoing, the Trustor and/or the Primary Trust Beneficiary who is responsible for the tax omission undertakes to indemnify, defend, and hold harmless the Trustee, its shareholders, directors, delegate trustees, proxies, representatives, advisers, and/or employees in relation to any responsibilities and damages related to the payment of taxes (including fees and expenses of tax advisers and lawyers, that are reasonable and at market prices) that result from the conclusion or fulfillment of this Trust.

47

DANSKE_0014087

48

The foregoing, with the understanding that neither the Trustor nor the Trustee will be responsible for the payment of the income tax (or its equivalent) generated to the Primary Trust Beneficiary in the event that the ownership of the Trust Assets is awarded in accordance with the terms of the Clause 10 of this instrument.

Clause 18. Reports.

(a)  The Trustee hereby agrees to provide the Primary Trust Beneficiary and the Trustor with a monthly account statement in relation to the Trust Assets and the investments made in relation to it. The Trustee will prepare such account statements based on the values of the Trust Assets specified in accordance with Clause 8 and will deliver them to the Trustor and the Primary Trust Beneficiary within the first 10 (ten) Business Days of the immediately following month, it being understood that the first and the last account statement may refer to an irregular period. The Primary Trust Beneficiary and the Trustor will have a period of 10 (ten) Business Days from the date of receipt of the corresponding account statement to review and approve it, with the understanding that, if they have not provided comments to the Trustee within said term, it will be understood that the corresponding account statement has been approved by the Primary Trust Beneficiary and the Trustor.

(b)  The Trustee agrees to provide the Primary Trust Beneficiary and the Trustor with all the information they reasonably request in writing at least 3 (three) Business Days in advance in relation to the Trust and the Trust Assets that is specifically related to their services provided hereunder.

Clause 19. Term; Irrevocability.

This Trust will be irrevocable and will remain in force for the period that is necessary to fulfill the purposes established herein, and may not be terminated until the Guaranteed Obligations have been fully covered, which will be confirmed by the Primary Trust Beneficiary at the request of the Trustor or the Trustee.

Clause 20. Notifications.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014088

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

49

[seal:] [illegible]
**VERIFIED**
[signature]

(a)  To be considered valid, all notifications and other notices in relation to this Trust will be made in writing, in Spanish and English (or accompanied by a translation into English or Spanish, as appropriate, on the understanding that, in case of dispute, the Spanish version will prevail), and addressed to the addresses indicated below or to any other address or fax number indicated by the recipient of the same by notification in accordance with the provisions of this Clause to the other parties. Said notifications and notices will be delivered personally or by fax transmission and addressed in the manner described above, followed by an original copy, and will take effect when received, if they are delivered by courier, or when transmitted and a confirmation of said transmission is received, if they are sent by fax. The parties indicate as their addresses the following: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

THE TRUSTEE: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Paseo de la Reforma 115, piso 23 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

11000, Lomas de Chapultepec ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Distrito Federal, México ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Telephone: +52 55 50 63 39 00 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax +52 55 50 63 39 39 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: Carlos López-Cedeño/Elizabeth Cid del Prado ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

THE TRUSTOR: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Calle Alikan S/N, ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Col. Ampliación Mariano Matamoros, CP 23460 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Cabo San Lucas, Los Cabos, ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Baja California Sur, México ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Telephone: +52 624 105 0062 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax: +52 624 105 0061 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: William Najam/Fernando M García Campuzano ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

With copy for: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Baker & Hostetler LLP ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

45 Rockefeller Plaza ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

New York, New York 10111 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax: (212)-580-4291 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: Laurence Markowitz, Esq. ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

THE PRIMARY TRUST BENEFICIARY: ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

75 King William Street ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

London EC4N 7DT ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

England ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Telephone: +44 (0)20 7410 8312 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax: +44 (0)20 7410 8005 ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: Jovan Atkinson ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

CONFIDENTIAL

DANSKE_0014089

With copy for:⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Venable LLP⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

750 E. Pratt Street⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Baltimore, Maryland 21202⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax: (410)224-7742⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: Mitchell Kolkin, Esq. y M. Jay Yurow, Esq⋯⋯⋯⋯⋯⋯⋯⋯

With copy for:⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Jáuregul, Navarrete y Nader, S.C⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Paseo de los Tamarindos 400-B, Pisos 7,8 y 9⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Bosques de las Lomas⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

05120 México, D.F⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Phone + 52 55 5276 4500⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Fax: (52) (55) 5258-0601⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

Attention: Javier Arreola/Vanessa Franyutti⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

(b)  Any third party that adheres to this Trust in the future must provide the Trustee with their address and fax number in writing.⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

(c)  The parties, aware of the risks involved in issuing Instructions by electronic means, such as errors, lack of security and confidentiality, as well as the possibility of fraudulent acts, agree that the sending of all communications related to this Trust must be carried out as specified in subsection (a) above. By virtue of the above, the parties in this act authorize the Trustee to proceed in accordance with the Instructions received through the means described herein, for which reason the parties release the Trustee from any liability derived from said transmissions and undertake to indemnify it under the terms of the indemnity established in this Trust.⋯⋯⋯⋯

The foregoing with the understanding that the Trustee shall not be obliged to verify the authenticity of said instructions or communications, but to verify that the signatures contained in said documents are, in its opinion, similar to those who are authorized to sign pursuant to this Trust. The Trustee will have discretion, as long as it is with reason or reasonable suspicion, to act or not and/or to request confirmation of any transmission received in accordance with this Clause, with the understanding that the Trustee will notify the parties immediately, if it had decided to defer, to carry out the instructions until it has received confirmation.⋯⋯⋯⋯⋯⋯

The Trustee is authorized to act in accordance with the Instructions transmitted in accordance with this Clause. In the specific case of instructions on fund transfers, when said Instructions are given in accordance with the provisions of subsection (a) above, the Trustee may confirm said instructions by telephone with the authorized persons, who are appointed vis-à-vis the Trustee under the terms of Annex I. The persons and telephone numbers for telephone confirmations may be amended only in writing, signed by the legal representative of the Trustor or the Primary Trust Beneficiary, duly received, and confirmed by the Trustee. The parties agree that this procedure is commercially reasonable.⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014090

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
FAX 1252588

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

51

[seal:] [illegible]
**VERIFIED**
[signature]

Likewise, it is understood that, in fund transfers, the Trustee and the beneficiary's bank may depend on the account numbers, or any other similar identification number provided, to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) any intermediary bank. The Trustee will use the funds of the Trust to fulfill any payment order that must be made pursuant to this Trust using said identifier number, even if this results in the payment to a person other than the beneficiary, to a bank other than the beneficiary's bank, or to a bank other than the intermediary bank, that has been designated.

In the event that the instructions are not signed as mentioned above and/or a confirmation call could not be made in this regard, the parties expressly and irrevocably instruct the Trustee not to execute the instructions.

Any person who is part of this Trust must deliver to the Trustee a list under the terms of Annex I; with the understanding that the parties may appoint new signatories from time to time under terms substantially similar to the Instructions contained in Annex I.

Clause 21. Amendments.

This Trust may only be amended by means of an instrument signed by the Trustor, the Trustee, and the Primary Trust Beneficiary, and ratified before a notary public.

Clause 22. Assignment.

Neither the Trustee nor the Trustor may assign or transfer their rights or delegate their obligations under this Trust, except if (i) they have the prior written consent of the Primary Trust Beneficiary, and (ii) where applicable expressly provided for herein. The Primary Trust Beneficiary may assign or transfer all or part of its rights derived from this Trust, it being sufficient for this to notify the Trustee and the Trustor in writing of said assignment, without further formalities than complying with the relative requirements and guidelines to the Trustee's "Know Your Customer" policy on that date.

Clause 23. Indemnity.

(a) The Trustor in this act undertakes to (i) indemnify, defend, and hold harmless the Trustee, its shareholders, directors, delegate trustees, proxies, officers, and/or employees of any liability derived from or related to the conclusion and the compliance of the Trust, except in cases of fraud, negligence, or bad faith of the Trustee determined in a final judgment issued by competent authority, or the failure of the Trustee to fulfill its obligations hereunder, and (ii) defend (in which case the Trustee must grant to the persons indicated by the Trustor the necessary or appropriate powers for said purposes in accordance with the applicable legislation and the provisions established herein), to hold harmless and indemnify the Trustee, its subsidiaries, affiliates, delegate trustees, employees, proxies, charged to the Trust Assets and/or with its own funds in cases where the applicable legal provisions do not allow the charge to the Trust Assets, as well as in cases where the Trust Assets is not sufficient, against all and any liability, damage, obligation, demand, judgment, agreement, requirement, cost, and/or expense of any kind, including reasonable and documented legal fees, against [sic], taxes on or derived from or related to the conclusion of this Trust and the acts of the Trustee to fulfill its obligations and the purposes established herein, including the execution procedure indicated

CONFIDENTIAL

DANSKE_0014091

herein, and to defend the Trust Assets, or due to requirements, sanctions, fines, and any other type of debt in relation to the Trust and the Trust Assets, before administrative, judicial, or arbitration authorities or any other instance, whether it is local, federal, Mexican, or foreign, except in the case of fraud, negligence, or bad faith of the Trustee determined in a final judgment issued by the competent authority or any of its delegate trustees, employees, and proxies, or the failure of the Trustee to comply with its obligations under this Trust.

(b)  The Trustor in this act agrees to pay in advance any expense or expenditure of any kind (including reasonable and documented legal fees and expenses) incurred by the Trustee and its representatives for any damage or loss suffered as a consequence of or related to with any lawsuit, judgment, procedure, or ruling followed against the Trustee by any person in Mexico or abroad, in relation to any act carried out to comply with the purposes established herein or with the defense of the Trust Assets, except in the case of fraud, negligence, or bad faith of the Trustee or its representatives determined in a final judgment issued by the competent authority. The parties to this Trust agree that, in the event that the Trustor does not pay in advance to the Trustee the aforementioned expenses and costs as provided in this Clause, or fails to reimburse said expenses and costs within 3 (three) Business Days following the date on which the Trustee notifies it, the Trustee may collect any amount owed to the Trustee through a charge to the Trust Assets.

(c)  The Trustee shall not be obliged to carry out any action under this Trust that engages the responsibility of its officers or against its assets, or that contravenes this Trust or the applicable legislation.

(d)  The Trustee will in no case have the power or obligation to use its own assets for the purposes of this Trust and to fulfill its obligations, nor to pay the expenses referred to in this Clause, but solely and exclusively the Trust Assets and to the extent that they can cover them.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014092

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

53

[seal:] [illegible]
**VERIFIED**
[signature]

(e)  Without prejudice to any right that the Trustee has under this Trust and subject to the terms and conditions thereof, the Trustee will be responsible for damages caused by the breach of its obligations under this Trust.

(f)  The Trustor shall Indemnify and hold the Primary Trust Beneficiary and the Trustee harmless in relation to any environmental contingency related to the Trust or any other document related to it, as long as said contingency is not derived from fraud, negligence, or bad faith of the Trustee, determined in a final judgment issued by the competent authority.

(g)  The Trustee will not be responsible for acts or omissions of the Trustor and the Primary Trust Beneficiary that prevent the fulfillment of the purposes of the Trust.

(h)  In order to carry out the acts provided for in this Trust, the Trustee will at all times act in accordance with what is established therein and in accordance with the provisions of the contracts and documents that it subscribes in compliance with the purposes of this Trust. By virtue of the foregoing, the Trustee will not be responsible for:

(i)  The acts carried out in compliance with the provisions of this Trust;

(ii)  The acts that it carries out in compliance with the provisions of the contracts and documents that it subscribes in accordance with the provisions of this Trust;

(iii)  The acts carried out in compliance with the provisions of the instructions received in writing in accordance with the provisions of this Trust;

(iv)  Any delay or breach of any payment that the Trustee must make, when the omission or delay of said payment is a direct consequence of the breach of legal or contractual obligations of third parties;

(v)  The security and protection of the Property, the control of access to the same, nor the acts that the people who enter the property perform within the property, unless the Trustee is in possession of the property;

(vi)  The facts, acts, and omissions of any of the parties of this Trust (except the Trustee) or of third parties that prevent or hinder the fulfillment of the Purposes of this Trust.

(i)  Except for those provisions specifically established in this Trust, the Trustee shall have no obligation to confirm or verify the authenticity of any report or certificate delivered by any of the parties to the Trust to the Trustee pursuant to this Trust. The Trustee does not assume responsibility with respect to any statement made by the other parties in this Trust or in the documents related to it.

(j)  In the case of convictions in any lawsuit that has been pursued in relation to the Trust Assets or against the Trustee in that capacity, by any third party, the payment of expenses and costs that have been determined as applicable, will be borne exclusively by the Trustor, without liability for the Trustee, in the event that the Trust Assets is unable to cover such expenses and costs.

CONFIDENTIAL

DANSKE_0014093

54

Clause 24. Labor Matters.

The Trustee, its representatives, delegate trustees, employees, proxies, and other personnel, will not have a labor or employee relationship or any responsibility with the persons or entities with whom the Trustor contracts for the transaction, administration, or other acts related to the Trust Assets. The Trustor assumes the obligation to indemnify and safely remove the Trustee from any lawsuit that said persons or entities may bring against the Trustee.

Clause 25. Applicable Legislation, Interpretation, and Jurisdiction.

This Trust will be governed in accordance with the laws of the United Mexican States. For the interpretation and fulfillment of this Trust, the parties expressly and irrevocably submit to the jurisdiction and competence of the competent courts located in (i) Mexico City, (ii) the location of the Property, or (iii) the domicile of the defendant, at the option of the plaintiff, and they expressly and irrevocably renounce any other jurisdiction that may correspond to them by reason of their present or future domicile or for any other reason.

Clause 26. Independence of Provisions.

If any provision of this Trust is considered null or unenforceable, the remaining part of this Trust will remain in full force and effect. If any provision is considered null or unenforceable with respect to particular circumstances, said provision will continue in full force and effect in any other circumstance.

Clause 27. Annexes.

The parties acknowledge that the annexes attached to this Trust are listed below, all of which form an integral part thereof.

SECOND. The parties agree that this Amendment and Restatement Agreement does not constitute a novation of the provisions of the Trust, and, with the exception of the modifications agreed upon herein, all the provisions of the Trust shall remain in force. Therefore, the parties in this act confirm and they ratify in every aspect all the provisions of the Trust.

THIRD. The Trustor undertakes to pay the Trustee the amount of $5,000.00 (FIVE THOUSAND DOLLARS CURRENCY OF THE LEGAL TENDER OF THE UNITED STATES OF AMERICA), plus the corresponding value added tax, for the concept of trustee fees for this Amendment and Restatement Agreement.

FOURTH. This Amendment and Restatement Agreement shall be governed and Interpreted in accordance with Clause 25 of the Trust. The parties expressly waive any jurisdiction that may correspond to them for any reason.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014094

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

55



[seal] [illegible] **VERIFIED** [signature]

IN WITNESS WHEREOF, the parties enter into this Amendment and Restatement Agreement on March 6, 2009.............................................................................................

--- 1.- **DIAMANTE CABO SAN LUCAS, S. DE R.L. DE C.V.**..........................................

--- Mr. **KENNETH ABOUD JOWDY**, accredits his legal personality and the legal existence of his principal, which he states that has not been revoked or amended, with public deed 64,865 sixty-four thousand eight hundred sixty-five, of volume 1,025 one thousand twenty-five, dated February twenty-three of the year two thousand six, and registered in the Public Registry of Property and Commerce of San José del Cabo, under the Electronic Mercantile Folio: 9065 4 nine zero six five four, **RFC [Registro Federal de Contribuyentes (Federal Taxpayer Register Number] /No. DCS060223-D40**, First Entry, Payment Slip No.: 275471 two seven five four seven one, dated February twenty-seven of the year two thousand six, granted before the Undersigned Notary Attached to the Notary Public Office Number Seven, of the State, in which the INCORPORATION of the Commercial Company called "DIAMANTE CABO SAN LUCAS," S. DE R.L. DE C.V. is recorded, the relevant parts of which I copy as follows: ".....FIRST.- The company will be called "DIAMANTE CABO SAN LUCAS"; This name will be followed by the words SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE [Variable Capital Limited Liability Company].- SECOND.- The purpose of the company is to carry out all kinds of activities related to Real Estate development within the limits allowed by the Foreign Investment Law, and therefore, in addition to the activities mentioned in this article, the company will develop private 18-hole golf courses, housing units, small housing units, and other related infrastructure. In general, the company may carry out all kinds of activities related to the above, for which reason, in an enunciative but not limited manner, the company may.- A).- Within the limits allowed by the Foreign Investment Law, carry out all kinds of activities related to Real Estate development for tourism purposes. B).- Within the limits allowed by the Foreign Investment Law, establish, acquire, build, lease, operate, and possess in any way allowed by the Law stores, warehouses, offices, establishments, storage units, and other establishments necessary or appropriate for the purposes of the company.- C).- Acquire or possess by any title, use, give, or take in lease, manage, sell, or dispose in any way, of all movable or immovable property that is necessary or appropriate for the realization of the purposes of the company - D).- Supervise, plan, or contract, directly or through third parties, all kinds of constructions, buildings, and developments, as well as acquire and dispose of construction materials by any title.- E).- Provide and receive all kinds of technical, administrative services; of supervision, promotion and, in general, any kind of services required by commercial or industrial negotiations, in Mexico or abroad; F).- Promote, organize, administer, and supervise all kinds of commercial or civil companies. G).- Acquire shares, participations, corporate shares or securities and obligations of all kinds of companies or businesses, and become part of them - H).- Register, obtain, acquire, use, or dispose of all kinds of brands, trade names, investment certificates, patents, copyrights, options and preferences, processes, and concessions or licenses, either in Mexico or abroad.- I).- Obtain and grant loans with or without guarantee, issue, accept, guarantee, endorse, and, in general,

CONFIDENTIAL

DANSKE_0014095

subscribe all credit titles, as well as guarantee in any way the obligations of third parties.- J).- In general, the conclusion of all kinds of acts and contracts that are directly or indirectly related to the company or other purposes, including the acquisition by any form of personal or real property for the development of its corporate purpose. The company will only be able to carry out activities related to its object, without in any way being able to carry out activities reserved exclusively to the Mexican State. THIRD.- The company's domicile shall be: The City of Cabo San Lucas, Baja California Sur, without prejudice to establishing offices or branches in other parts of the State of the Republic or abroad, and indicate conventional addresses in the agreements that it enters into. FOURTH- The duration of the company shall be NINETY-NINE YEARS, which shall be counted from the date of signature of this deed. FIFTH.- FOREIGNER STATUS CLAUSE: - The Company will be of Mexican Nationality, with a FOREIGNERS 'ADMISSION clause. Being able to participate in its Capital Stock, Foreign Investors or Companies without a Foreigners Exclusion Clause; Capital participation that will be admitted in any proportion.- "Any foreigner who, in the act of incorporation or at any later time, acquires an interest or social holding in the company, will be considered by that simple fact as Mexican, with respect to one and another, and it will be understood that it agrees not to invoke the protection of its Government, under penalty of breaching its agreement, of losing said interest or holding in favor of the Mexican Nation." SIXTH.- The capital of the company will be variable, starting with a minimum without the right to withdraw of: $10,000.00 (TEN THOUSAND PESOS, 00/100 NATIONAL CURRENCY), with this maximum being unlimited. SEVENTH.- The share capital will be fully subscribed and paid, and is represented in equity interest portions of $500.00 (five hundred pesos, 00/100 national currency) each of which will always be of that amount or a multiple thereof. EIGHTH.- The founding partners contribute to the company the amount of $500.00 (five hundred pesos, 00/100 national currency), as follows: The Manager of the Company declares under oath that the amount of the value of the shares is fully deposited in the Safe Deposit.- NINTH.- The company will be managed by a MANAGER or a GENERAL MANAGER, which will have the broadest powers of a GENERAL POWER OF ATTORNEY FOR LAWSUITS AND COLLECTIONS, ACTS OF ADMINISTRATION and ACTS OF OWNERSHIP, with all the general and special powers that require a special clause according to the Law, under the terms of the first THREE paragraphs of the Article (2,554) two thousand five hundred fifty-four, and the special ones of (2,587) two thousand five hundred eighty-seven, both of the Civil Code for Mexico City and its equivalent, or two thousand four hundred and sixty-eight of the Civil Code for the State of Baja California Sur, and its equivalent in the other States.-

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014096

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR
CASTRO CASTRO
NOTARY PUBLIC
OFFICE No. 7 LA PAZ,
B.C.S. UNITED
MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]
57

[seal:] [illegible]
**VERIFIED**
[signature]

The proxy may appear before all kinds of Authorities of the Federation, the States, Municipalities, Delegations, whether they are Legislative, Executive, Judicial, Labor, Fiscal, or of any other kind. Carrying out all kinds of procedures and requests, whatever they are; file complaints, claims, and accusations, assist the Agent of the Public Prosecutor's Office, and become a civil party, to desist from all kinds of actions, procedures, incidents, appeals, complaints, claims, and accusations, and even from amparo proceedings, to compromise and settle in arbitration; to absolve and form positions, to recuse with or without cause to receive payments, and for any others without reservation or limitation, being able to appear before all kinds of natural or legal persons, private or official, carrying out all kinds of formalities and making requests. In addition to the general power of attorney for lawsuits and collections that is granted, in accordance with Articles 689, 690, 692, and 695 of the Federal Labor Law, the proxy is appointed as the legal representative of the company, with powers to take attend on its behalf the Conciliation Hearings that are held before the Local Conciliation Board, before the Federal Conciliation Board, before the corresponding Special Board, either of the Federal or the Local Conciliation and Arbitration Board, or before any labor authority, with powers for acts of administration in the Labor area and to enter into agreements that may arise from it. POWER FOR ACTS OF ADMINISTRATION, so that the proxy can conclude or have concluded, execute or have execute all kinds of facts, acts, agreements, and contracts of whatever nature they may be, granting all kinds of private documents and public instruments with administrative powers. POWER TO SUBSCRIBE CREDIT SECURITIES, so that the proxy can issue, draw, subscribe, endorse, guarantee, or in any other way put into circulation all kinds of credit instruments, under the terms of Article 9 Nine of the General Law on Securities and Credit Transactions.- POWER TO EXERCISE ACTS OF OWNERSHIP, so that the proxy can alienate, encumber, mortgage, or in any other way dispose of the possession and control of assets of the principal of any type they may be, being able to sign as many private documents or public deeds under the terms, prices, and other conditions that the proxy deems pertinent and, where appropriate, negotiate the certificates, receive their amount, and endorse or cash the checks representing the payment.- POWERS TO SUBSTITUTE ALL OR IN PART THE PRESENT MANDATE, the proxy reserving the exercise of the same and being able to appoint proxies, agents, and employees, setting their powers, obligations, remuneration, and revoke the substitutions it makes. TRANSITIONAL: FIRST.- Meeting at the first General Shareholders' Meeting, the partners make the following resolutions: 1.- The company will be managed by a MANAGER.- 2.- Mr. KENNETH ABOUD JOWDY is appointed as MANAGER, who in the position of his functions, will have the powers that are established in Clause NINE of this deed of incorporation, with the exception that, for the performance of his activity, he must obtain the corresponding permit issued in their opinion by the Secretariat of the Interior and that in case of the violation of the Regulations of the General Population Law, he will receive the corresponding sanctions. - 3.- Mr. FERNANDO MANUEL GARCIA CAMPUZANO is granted a GENERAL POWER OF ATTORNEY FOR LAWSUITS AND COLLECTIONS, ADMINISTRATIVE ACTS AND ACTS OF OWNERSHIP….".............................................

CONFIDENTIAL

DANSKE_0014097

58

--- By means of a public deed number seventy-eight thousand eight hundred eighty-one, of volume one thousand two hundred ninety-one, dated March 6 of the year two thousand nine, granted before the Undersigned Notary, which contains THE NOTARIAL RECORDING of the Minutes of the General Assembly of the Commercial Company called **"DIAMANTE CABO SAN LUCAS"**, **SOCIEDAD DE RESPONSABILIDAD LIMITADA DE VARIABLE CAPITAL, of which I copy the relevant parts as follows: "…FIRST.-** At the request of Mr. **FERNANDO MANUEL GARCÍA CAMPUZANO,** the Minutes of the Meeting of the Commercial Company called **"DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** held on March six, two thousand and nine, is deemed to be ENETRED INTO THE NOTARIAL RECORDS, and the agreements taken therein were formalized.   -**SECOND.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** accepts and approves the assignment of rights contained in the Global Assignment Agreement entered into between Lehman Brothers and Danske Bank, in which Lehman Brothers, in its capacity as Assignor, transferred all of its rights, obligations, and guarantees under the *Loan Documents* in favor of Danske Bank. Likewise, the Company enters into all the instruments or contracts necessary to formalize the assignment of rights contained in the Global Assignment Agreement.- **THIRD.- " DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** completely reforms its corporate bylaws under the terms mentioned below.-**FOURTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, ratifies the appointment of Mr. Kenneth Aboud Jowdy as General Manager of the Company, with all the obligations and rights that the performance of said position entails.- **FIFTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** ratifies in each and every one of its parts, the powers conferred on Mr. Fernando Manuel García Campuzano in the minutes of the general meeting of shareholders dated March 8, 2006, which was duly entered into the notarial records, by means of minutes number 65,011 of volume 1,026 dated March 9, 2006, before Mr. José Alberto Castro Salazar; Notary Public Attached to Notary Public Office Number 7 of the City of La Paz, Baja California Sur.- **SIX.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE** approves and confirms the terms of the Agreement of the assignment of rights by virtue of which Lehman Brothers assigned to Danske Bank all of its rights and obligations under the Pledge Agreement on Corporate Shares; it also accepts Danske Bank as the new pledgee under the Pledge Agreement on Corporate Shares.-

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014098

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

59

[seal:] [illegible]
**VERIFIED**
[signature]

**SEVENTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** approved by Diamante Cabo San Lucas, LLC, through its legal representative, and Kenneth Aboud Jowdy, a rights assignment agreement by virtue of which Lehman Brothers assigned to Danske Bank all of its rights and obligations under the Pledge Agreement on Corporate Shares, accepting Danske Bank as the new pledgee.- **EIGHTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE** approved the following resolutions: - 1) Grant Danske Bank all the rights established in the aforementioned Pledge Agreement on Corporate Shares.- 2) In accordance with the provisions of the corresponding Pledge Agreement, Diamante Cabo San Lucas, LLC shall not assign, sell, pledge, or dispose of its corporate share in any way without the prior written authorization of Danske Bank.- 3) In accordance with the provisions of the Pledge Agreement on Corporate Shares, the Company must not assign, sell, pledge, or otherwise dispose of the shares that represent the capital stock of the Company, without the prior written authorization of Danske Bank. - 4) The Company must not allow that, in the exercise of the vote that corresponds to the shareholders, the provisions of the Pledge Agreement on Shareholders are violated. **NINTH.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** approves the conclusion of the Termination Agreement for the Pledge Agreement (Assets), since they will be contributed to the Trust's assets. **TENTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** approved the following resolutions: i) Accepting as a partner of the Company, without the need for additional consent to that granted herein, Danske Bank or any other possible pledgee of the shares pledged by Diamante Cabo San Lucas, LLC and Mr. Kenneth Aboud Jowdy in favor of Danske Bank, in the event of assignment, purchase, forced execution, or judicial auction of the aforementioned shares. ii) In the event of the transfer, purchase, forced execution, or judicial auction of the corporate shares owned by Diamante Cabo San Lucas, LLC in favor of Danske Bank, or the holder of the corporate share at the time, Mr. Kenneth Aboud Jowdy, in his capacity as a partner of the Company, in this act renounces both the right granted to him in accordance with article 66 of the General Law of Commercial Companies and the provisions of the corporate bylaws, as well as any right that he may have to acquire in whole or in part the corporate share of the opposing partner by any other means.- iii) By virtue of the foregoing, Mr. Kenneth Aboud Jowdy renounces both the right that is conferred on him by article 66 of the General Law of Commercial Companies and the bylaws, as well as any right that he may have to acquire in all or part the corporate shares of the opposing partner by any other means, granting in this same act his consent so that, where appropriate, the assignment, purchase, forced execution, or judicial auction of the corporate share of Diamante Cabo San Lucas, LLC granted in pledge in favor of Danske Bank, be carried out.-

CONFIDENTIAL

DANSKE_0014099

60

iv) In case of the purchase, forced execution, or judicial auction of the corporate share owned by Mr. Kenneth Aboud Jowdy in favor of Danske Bank, or the holder of the corporate share at the time, Diamante Cabo San Lucas, LLC, in its capacity as partner of the Company, in this act waives both the right granted to it in accordance with article 66 of the General Law of Commercial Companies and the provisions of the corporate bylaws, as well as any right that it may have to acquire in whole or in part the corporate share of the opposing partner by any other means. - v) By virtue of the above, Diamante Cabo San Lucas, LLC waives both the right conferred on it by article 66 of the General Law of Commercial Companies and the bylaws, as well as any right that it may have to acquire in all or in part the corporate share of the opposing partner through any other means, granting in this same act its consent so that, where appropriate, the transfer, purchase, forced execution, or judicial auction of the corporate share of Mr. Kenneth Aboud Jowdy pledged in favor of Danske Bank is carried out. - vi) In the event of the purchase, forced execution, or judicial auction of the shares pledged by Diamante Cabo San Lucas, LLC and Mr. Kenneth Aboud Jowdy in favor of Danske Bank, in accordance with the previous resolutions, the capital stock of the Company would be integrated as follows:

[seal:] [illegible]

| Partners | Shares | Value |
|---|---|---|
| Danske Bank A/S, London Branch, or a new acquirer. | 1 | $9,900.00 |
| Danske Bank A/S, London Branch, or a new acquirer. | 1 | $100.00 |
| **Total** | 2 | $10,000.00 |

**ELEVENTH.- " DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE** instructed the Secretary to carry out the annotations of the pledges granted in favor of Danske Bank as assignee of Lehman Brothers, in the special book of partners. Likewise, it instructed the Secretary to provide Danske Bank with a copy of the aforementioned annotations, signed by the Secretary of the Company or the Sole Manager, and to carry out the annotations of the pledges granted in favor of Danske Bank in the special book of partners and, in turn, to provide to Danske Bank a copy of it, duly signed.-**TWELFTH.- "DIAMANTE CABO SAN LUCAS", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** approves the Assignment to Danske Bank of each and every one of the 2006 Transaction Documents, by virtue of being adjusted to the interests of the company itself and which are listed below: - (i) Original Credit Agreement (*Loan Agreement*) entered into between Diamante Cabo and Lehman Brothers (the "Original Credit Agreement")

CONFIDENTIAL

DANSKE_0014100

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

[stamp:] [illegible]

61



[seal] [illegible] **VERIFIED** [signature]

--- (ii) *Promissory Note* [illegible] Diamante Cabo (the "Promissory Note"); - (iii) *Assignment of Leases and Rents*, between Diamante Cabo and Lehman Brothers (the "Assignment of Rents"); - (iv) *Recourse Guarantee* executed by Mr. Kenneth A. Jowdy (the "Guarantor") and Lehman Brothers, effective as of March 10, 2006 (the "Recourse Guarantee"); - (v) Environmental Liability and Indemnity Document (*Indemnity Agreement*) entered into between Diamante Cabo, the Guarantor, and Lehman Brothers (the" Environmental Indemnity"); - (vi) Pledge Agreement on Corporate Shares (*Pledge Agreement*) entered into between Diamante Cabo, the Guarantor, Diamante Cabo San Lucas LLC ("U.S. LLC"), and Lehman Brothers (the "Pledge Agreement (Corporate Shares of the Trustor)"); - (vii) Pledge Agreement on assets entered into between Lehman Brothers and Diamante Cabo (the" Pledge Agreement (Assets)"); - (viii) a *Pledge Agreement* entered into between the Guarantor, U.S. LLC and Lehman Brothers (the "Pledge Agreement (Corporate Shares of the Borrower)"); - (ix) Pledge Agreement (*Pledge Agreement*) entered into between the Guarantor, Baja Ventures 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC, and CSL Properties 2006, LLC (collectively, the "U.S. LLC Members") and Lehman Brothers (the "Pledge Agreement on US Corporate Shares"); - (x) an *Omnibus Assignment* entered into between Diamante Cabo and Lehman Brothers (the "2006 Omnibus Assignment"); and- (xi) Completion Guarantee Performance Document (*Completion Guarantee*), granted by the Guarantor in favor of Lehman Brothers, and (xii) a *Guarantee* granted by the Members of the U.S. LLC, the Guarantor, and the U.S. LLC in favor of Lehman Brothers. -**THIRTEENTH.- "DIAMANTE CABO SAN LUCAS," SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** accepts and approves the execution of the following documents: - (i) Amendment and Restatement Agreement to the Trust Agreement - (ii) Amended and Restated Credit Agreement to be entered into between Diamante Cabo and Danske Bank. - (iii) The two promissory notes (Promissory Note A, Promissory Note B) under the Amended and Restated Credit Agreement ("2009 Promissory Notes"); - (iv) *Assignment of Leases and Rents*, between Diamante Cabo and Lehman Brothers (the "Assignment of Rents"); .................................. - (v) Assignment Agreement with Recourse Guarantee (*Recourse Guarantee*) signed by Mr. Kenneth A. Jowdy (the "Guarantor") and Lehman Brothers, effective as of March 10 of 2006 (the "Recourse Guarantee"); - (vi) Agreement for the Assignment of the Environmental Indemnity Liability Document (*Indemnity Agreement*) entered into between Diamante Cabo, the Guarantor, and Lehman Brothers (the "Environmental Indemnity "); - (vii) Pledge Agreement Assignment (*Pledge Agreement*) entered into between the Guarantor, U.S. LLC, and Lehman Brothers (the "Pledge Agreement (Corporate Shares of the Borrower)"), - (viii) Pledge Agreement Assignment (*Pledge Agreement*) entered into between the Guarantor, Baja Ventares 2006, LLC, Diamante Properties, LLC, KAJ Holdings LLC, and CSL Properties 2006, LLC (collectively, the "Members of the U.S. LLC ") and Lehman Brothers (the "Pledge Agreement of US Corporate Shares");

CONFIDENTIAL

DANSKE_0014101

62

(ix) Omnibus Assignment Agreement (*Omnibus Assignment*) entered into between Diamante Cabo and Lehman Brothers (the "2006 Omnibus Assignment"); and- (x) Agreement for the Assignment of the Completion Guarantee Performance Document (*Completion Guarantee*), granted by the Guarantor in favor of Lehman Brothers; and (xii) *Guarantee* granted by the Members of the U.S. LLC, the Guarantor, and the U.S. LLC in favor of Lehman Brothers.

**--- 2.- DANSKE BANK A/S, LONDON BRANCH,** THE LONDON BRANCH OF A COMPANY CONSTITUTED IN THE KINGDOM OF DENMARK, IN ITS CAPACITY AS PRIMARY TRUST BENEFICIARY, REPRESENTED IN THIS ACT BY **GUSTAVO IGNACIO ALARCON CABALLERO:**

--- By public deed five two thousand eight hundred sixty-six, book number two thousand sixteen, dated February twenty-three of the year two thousand nine, granted before Mr. F. JAVIER ARCE GARGOLLO, Notary Public Number Seventy-Four with office in Mexico City, which includes THE NOTARIAL RECORDING OF A DOCUMENT GRANTED ABROAD, of which I copy the relevant parts as follows: "…CLAUSES.- FIRST. Under the terms of Articles One hundred thirty-nine and one hundred and forty of the Notary Law for Mexico City, the documentation related to the Sole Recital of this instrument is entered into the notarial records.- SECOND.- As a consequence of the foregoing, the SPECIAL POWER OF ATTORNEY granted by DANSKE BANK A/S, LONDON BRANCH, in favor of JAVIER ARREOLA ESPINOSA, VANESSA E. FRAYUTTI JOHNSTONE, GUSTAVO IGNACIO ALARCON CABALLERO, RICARDO GARCIA DE LA ROSA, AND CARLOS ANTONIO HASSEY ARTIGAS is formalized, to be exercised jointly or separately, under the terms and with the sum of powers that are mentioned in the document that is entered into the notarial records and whose translation into the Spanish language I copy as follows: FIRST. Grant a Special Power of Attorney under the terms of Article 2553 of the Federal Civil Code and the equivalent article of the Civil Code of each state of the United Mexican States and Mexico City, and of Article 9 of the General Law of Securities and Credit Transactions of the United Mexican States, in favor of Mr. Javier Arreola Espinosa, Ms. Vanesa E. Franyutti Johnstone, Mr. Gustavo Ignacio Alarcón Caballero, Mr. Ricardo García de la Rosa, and Mr. Carlos Antonio ACEI Artigas, to exercise it jointly or separately in the name and on behalf of the Bank, with all the general and special powers applicable in accordance with the Law, and so that, in the manner that they deem most appropriate for the benefit of the bank, they conclude all the legal acts and agreements, carry out applications and acknowledgments, and give the notices necessary to modify the collateral instruments that Lehman Brothers Holdings Inc, assigned in favor of Danske Bank in relation to the loan agreement (Loan Agreement) executed on March 10, 2006 by Diamante Cabo San Lucas, S. de RL de CV, and Lehman Brothers Holding inc. This power may be exercised by the aforementioned proxies from the date it is granted until March 13, 2009.

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014102

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO
NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7
LA PAZ, B.C.S.

[stamp:] [illegible]

63

[seal:] [illegible] **VERIFIED** [signature]

--- 3.- **THE BANK OF NEW YORK MELLON, S.A., MÚLTIPLE BANKING INSITUTION** (UNIVERSAL AND FINAL LEGAL ASSIGNEE OF BANCO J.P. MORGAN, SA, MULTIPLE BANKING INSTITUTION, J.P. MORGAN FINANCIAL GROUP, TRUST DIVISIÓN) IN ITS CAPACITY OF TRUSTEE OF TRUST F/00321, REPRESENTED IN THIS ACT BY ITS DELEGATE TRUSTEE **ELIZABETH CID DEL PRADO GARCÍA DE LEÓN.** _____

--- By means of Instrument number fifty-nine thousand five hundred sixty-three, of volume one thousand four hundred thirty-five, dated November twenty-seven of the year two thousand eight, granted before Mr. Roberto Nuñez y Bandera, Notary Public Number One, of Mexico City, in which there is recorded the DESINGATION OF DELEGATE TRUSTEES AND THE GRANTING OF POWERS, made by THE BANK OF NEW YORK MELLON, SOCIEDAD ANONIMA, MULTIPLE BANKING INSTITUTION, in favor of Ms. ELIZABETH CID DEL PRADO GARCIA DE LEON, Mr. CARLOS MANUEL LOPEZ CEDEÑO, Ms. ROSA ADRIANA LOPEZ, Mr. JAIME FIGUEROA, Ms. MARIA DEL CARMEN MOZAS GOMEZ, Ms. CRISTINA REUS MEDINA, Ms. GABRIELA ALEXANDRA NASSAU RAMOS, and Ms. MONICA JIMENEZ LABORA, of which I copy the relevant parts, as follows; ....UNANIMOUS RESOLUTIONS MINUTES TAKEN OUT OF SESSION OF THE BOARD OF DIRECTORS OF: The Bank of New Cork Mellon, SA, Multiple Banking Institution: ....RESOLUTION.- Appointment of Delegate Trustees and granting of Powers of Attorney.- The board expresses the appropriateness of appointing as Delegate Trustees Ms. Elizabeth Cid del Prado García de León, Mr. Carlos Manuel Lopez Cedeño, Ms. Rosa Adriana Lopez, Mr. Jaime Figueroa, Ms. María del Garmen Mozas Gomez, Ms. Cristina Reus Medina, Ms. Gabriela Alexandra Nassau, and Ms. Monica Jiménez Labora Sarabia, in accordance with article 80 in relation to section XV of 46, 90 and other the related and applicable articles of the Credit Institution Law, as well as the convenience of granting the powers and authorizations necessary for the exercise of their position.- The directors unanimously approved the following: Based on the provisions of article 80 in relation to section XV of 46, 90 and the other relative and applicable articles of the Law of Credit Institutions, it is granted in favor of Elizabeth Cid del Prado García de Leon, Carlos Manuel Lopez Cedeño, Rosa Adriana Lopez, Jaime Figueroa, María del Carmen Mozas Gomez, Cristina Reus Medina, Gabriela Alexandra Nassau Ramos, and Monica Jiménez Labora Saraiba, so that individually and in the exercise of their position as Delegate Trustees (i) they conclude and practice all trust transactions, enter into the corresponding trust agreements and, in general, in an enunciative but non-limiting manner, (ii) Enter into mandates, commissions, deposit agreements, joint representation agreements, as well as any other contract or agreement and sign any credit instrument or title related to commissions, mandates, or common representations in which they function in their capacity as Delegate Trustees, to be exercised in the form in which it is indicated and independently of the powers conferred on them for other purposes of the Company.

CONFIDENTIAL

DANSKE_0014103

64

The powers granted to the aforementioned persons, exclusively in their capacity as Delegate Trustees and to be exercised individually are: 1.- General Power of Attorney for Lawsuits and Collections, with all the broader powers that are applicable in law under the terms of section I of article 2554 two thousand five hundred fifty-four of the Civil Code for Mexico City and its equivalent articles in the other States of the Republic and the Federal Civil Code, and with all the general and even special powers that, according to the law, require a power of attorney or a special clause, including those mentioned in article 2574, 2582, 2587, and 2593 of the aforementioned Civil Code for Mexico City... 2.- General power of attorney for acts of administration, with the broader powers that are applicable in law under the terms of the second paragraph of article two thousand five hundred and fifty-four of the Civil Code for Mexico City and its equivalent in the states of the Republic and of the Federal Civil Code.- 3.- General power of attorney to draw, accept, subscribe, issue, endorse, and guarantee all kinds of credit transactions and titles, in accordance with the provisions of article nine of the General Law of Credit Titles and Transactions, third paragraph of 90 of the Law of Credit Institutions and 2554 of the Federal Civil Code and the Civil Code for Mexico City and its equivalent articles in the States of the Republic.- 5.- Power to open and close bank accounts, draw on them, and appoint persons who draw against them.- 6.- General power of attorney for lawsuits and collections, administrative acts in labor matters, under the terms of the provisions of articles 11,692, section No. I, and III 695, 876, section I and other correlative articles of the Federal Labor Law... 7.- Powers to grant powers of attorney. The proxies will have very broad powers to grant general or special powers of attorney, to be exercised, jointly, separately, or individually, and to revoke both in whole or in part, powers that are limited to the powers of attorney that are granted to them in this act. Likewise, they are also granted powers to substitute and/or delegate their powers of attorney, totally or partially, reserving their exercise for themselves, only under the terms of the aforementioned powers and powers of attorney they have been granted.- In no case will the proxies have powers to appoint Delegate Trustee or substitute, assign, or delegate their appointment to any person...............................................

--- I, the Undersigned Notary, attest to having the aforementioned document before me and I attach the copies thereof to the annex of this Instrument, marked with the corresponding letter:

**--- I, THE NOTARY, CERTIFY:** ...................................................................................

**--- FIRST.-** That I know the appearing parties and I consider them to have legal capacity.........

**--- SECOND.-** That, by their general information, they declared to be Mexican by birth: Mr. **KENNETH ABOUD JOWDY**, 41, forty-one years old, citizen of the United States, originally from Connecticut, USA, where he was born on July sixteen, nineteen sixty-four, a merchant, single, domiciled in the United States of America, being temporarily in this city and proving his legal stay in the country with the immigration document that is added separately to this deed; Mr. **GUSTAVO IGNACIO ALARCÓN CABALLERO, originally from Mexico City, where he was born on November twenty-nine, nineteen seventy-seven, single, a lawyer, and residing at Paseo de los Tamarindos 400-B, Piso 9, Colonia Bosques de La Lomas, Delegacion Cuajimalpa, Codigo Postal 05120, México, Distrito Federal, and being**

[seal:] [illegible]

CONFIDENTIAL

DANSKE_0014104

IGNACIO RAMIREZ 1930
TELS. 122-91-20
122-97-17
126-24-40
**FAX 1252588**

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

MR. HECTOR CASTRO CASTRO
HOLDER
MR. JOSE ALBERTO CASTRO SALAZAR
ASSIGNED
NOTARY OFFICE No.7

LA PAZ, B.C.S.

65

[seal:] [illegible] **VERIFIED** [signature]

temporarily in this City: Ms. **ELIZABETH CID DEL PRADO GARCÍA DE LEÓN**, originally from Mexico City, where she was born on January eighteen, nineteen seventy-nine, single, a lawyer, and domiciled at Paseo de la Reforma 115, Piso 23, 11000, Lomas de Chapultepec, México, Distrito Federal, and being temporarily in this City; Mr. **FERNANDO MANUEL GARCIA CAMPUZANO**, of Mexican nationality by birth, originally from Ensenada, Baja California, where he was born on July twelve, nineteen sixty-seven, married, a lawyer, domiciled at Obregón número mil doscientos ochenta y nueve, Z.C. Ensenada, Baja California, and being temporarily in this city, and identified with a voter ID, with voter code number "GRCMFR87071202H200." ........................................................................

--- **THIRD.-** That, regarding the payment of Income Tax, and after having made the warnings required by the Law, they will state that they are up to date [with their tax obligations], without demonstrating this to me. ........................................................................

--- **FOURTH.-** That what is related and inserted is a true reflection of the originals that I have seen and returned to the interested parties. ........................................................................

--- **FIFTH.-** The appearing parties being advised of their right to read or to have me, the Notary, read this instrument, they opted for the first option and, after doing so, they expressed their agreement, so that, after explaining its value and legal force, they ratified and signed it on this day. I ATTEST. ........................................................................

**KENNETH ABOUD JOWDY.- SIGNED.- GUSTAVO IGNACIO ALARCÓN CABALLERO.- SIGNED.- ELIZABETH CID DEL PRADO GARCÍA DE LEÓN.- SIGNED.- FERNANDO MANUEL GARCIA CAMPUZANO.- SIGNED.** ........................................................................

MR. JOSE ALBERTO CASTRO SALAZAR. SIGNED. THE AUTHORIZING SEAL ...............

ON THE SIXTH DAY OF THE MONTH OF MARCH OF THE YEAR TWO THOUSAND NINE, WHEN THE PRESENT DEED WAS SIGNED, I DEFINITELY AUTHORIZE IT. I ATTEST ......

IT IS THE SECOND TESTIMONY IN ITS ORDER AND THE FIRST ONE ISSUED FOR USE BY THE COMMERCIAL COMPANY **DIAMANTE CABO SAN LUCAS, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** IN ITS CAPACITY AS TRUST BENEFICIARY. IT IS CONTAINED ON THIRTY-THREE USEFUL SHEETS, PROPERLY COMPARED, SEALED, AND SIGNED ........................................................................

LA PAZ, BAJA CALIFORNIA SUR, ON MARCH SIX OF THE YEAR TWO THOUSAND NINE. I ATTEST ........................................................................

[signature]

[stamp:] [illegible]

[seal:] MR. HECTOR CASTRO CASTRO NOTARY PUBLIC OFFICE No. 7 LA PAZ, B.C.S. UNITED MEXICAN STATES

CONFIDENTIAL

DANSKE_00!Syntax Error, +

66

[stamp:] MARGINAL NOTE MADE UNDER NO. [hw:] *135* ON

SHEET [hw:] *135* OF VOLUME [hw:] *CCXLV* SECTION I DATE

[hw:] *8TH* OF [hw:]*May* OF THE YEAR [hw:] *2006*

SAN JOSE DEL CABO, B.C.S.A. [hw:] *13TH* OF [hw:] *April* OF THE YEAR 20 [hw:] *09*

THE DIRECTOR OF THE PUBLIC REGISTRY

[signature]

MR. JORGE JOEL COTA RUIZ

CONFIDENTIAL

DANSKE_0014106



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Exhibit 60**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Jacqueline Yorke
(Currently situated in the County of New York)

Sworn to before me remotely this
October 9, 2020

Signature, Notary Public
(Currently situated in the County of New York)

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

Stamp, Notary Public