**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>PHILIP A. KENNER, *et al.*,<br><br>Defendants. | Criminal Docket No. 13-0607 (JFB)<br><br>**DECLARATION OF JOVAN ATKINSON IN SUPPORT OF DANSKE BANK A/S LONDON BRANCH'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to 28 U.S.C. § 1746, I, Jovan Atkinson, declare as follows:

1. I am an employee of Danske Bank A/S London Branch ("Danske") and have been employed by Danske since 2006. I am currently Head of Legal at Danske, a position I have held since 2007.

2. I submit this declaration in support of Danske's reply brief in further support of Danske's motion for summary judgment. Specifically, this declaration is submitted to certify to the Court, in response to the government's opposition, that **Exhibits 26-34 and 38** to the Declaration of George Kostolampros (referred to herein as "MSJ Ex.") that was submitted in support of Danske's motion for summary judgment are true and correct copies of what they purport to be and are the business records of Danske. I also submit this Declaration to address certain statements made by the Government in response to Danske's summary judgment motion.

  **A. Danske Business Records Submitted in Support of Danske's Summary Judgment Motion**

  3. I am authorized to make this Declaration and am familiar with the manner in which Danske's records are created and maintained by virtue of my duties and responsibilities at Danske.

  4. In 2008 through 2009, in my capacity as Head of Legal at Danske, I was one of Danske's employees principally responsible for managing issues that arose from or related to the default of Lehman Brothers Holdings Inc. ("Lehman") and its affiliates (including Lehman Commercial Paper Inc.) under the repurchase agreements that Danske entered into with Lehman, including Lehman's default on a repurchase agreement that involved the purchase and sale of liens against commercial real estate (the "Commercial Repo"). The Commercial Repo is the repurchase agreement pursuant to which Danske purchased from Lehman securities consisting of whole mortgage loans secured by commercial real estate. The pool of collateral Danske purchased under the Commercial Repo included the senior lien that is secured by the resort property, known as Diamante Cabo San Lucas (the "Resort Property"), located at Cabo San Lucas, Mexico at Diamante Boulevard 23473 Cabo San Lucas B.C.S. Mexico.

  5. I have personal knowledge of the facts and circumstances set forth herein and, at the time, had custody and/or access to the records relating to Danske's books, records, and files that pertain to the Commercial Repo, including the 1999 Master Repurchase Agreement (the "MRA") and all subsequent amendments and modifications thereto, as well as the 2005 Committed Repurchase Facility Agreement (individually, the "Facility Agreement" and, together with the MRA, the "Repo Agreements").

  6. Each of the Exhibits referred to herein was made and/or maintained in the regular course and scope of Danske's business and was created at the time of or within a reasonable amount of time after the act, transaction, occurrence, or event to which they relate. While I was

not involved in the drafting of the Exhibits (with the exception of Exhibits 33, 34, and 96 and Reply Exhibits 19-22 in which I had some input), I have reviewed all of these documents. I also provided input with respect to the drafting of certain of the Exhibits, including Exhibits 33, 34, and 96.

      7.    The following documents were submitted as part of Danske's Motion for Summary Judgment:

    a.    A true and correct copy of the 1999 Master Repurchase Agreement was submitted as **MSJ Ex. 26** (Dkt. No. 852-6);

    b.    A true and correct copy of the 2005 Committed Repurchase Facility Agreement was submitted as **MSJ. Ex. 27** (Dkt. No. 852-7);

    c.    A true and correct copy of the 2001 Amendment to the MRA was submitted as **MSJ. Ex. 28** (Dkt. No. 852-8);

    d.    A true and correct copy of the 2005 Amendment to the MRA was submitted as **MSJ. Ex. 29** (Dkt. No. 852-9);

    e.    A true and correct copy of the 2006 Tri-Party Custody Agreement was submitted as **MSJ. Ex. 30** (Dkt. No. 852-10);

    f.    A true and correct copy of the September 15, 2006 Letter Agreement replacing JPMorgan Chase & Co. with The Bank of New York Company, Inc. ("BNY") as Master Custodian was submitted as **MSJ. Ex. 31** (Dkt. No. 853-1);

    g.    A true and correct copy of the September 15, 2008 Letter from Master Custodian Bank of New York to Sub-Custodian LaSalle Bank, N/A ("LaSalle") noticing Lehman's Event of Default under a tri-party custody agreement between Danske, Lehman, and BNY as custodian (the "Tri-Party Custody Agreement"), including an attachment setting forth the mortgage loans in the Master Custodial Account on the event of default was submitted as **MSJ. Ex. 32** (Dkt. No. 853-2). Danske received a copy of this letter upon Lehman's default. This document was integrated and incorporated into Danske's own records at or near the time the letter was sent;

    h.    A true and correct copy of Danske's September 15, 2008 Notice of Default Letter to Lehman was submitted as **MSJ. Ex. 33** (Dkt. No. 853-3);

    i.    A true and correct copy of the September 23, 2008 Notice of Default Letter to Lehman was submitted as **MSJ. Ex. 34** (Dkt. No. 853-4); and

    j.       A true and correct copy of Danske's September 18, 2009 Proofs of Claim filed in Lehman's bankruptcy proceeding (No. 08-13555(JMP) (Bankr. S.D.N.Y.)) was submitted as **MSJ. Ex. 96** (Dkt. No. 861-6) to the Kostolampros Declaration.

8.       Additionally, submitted with this Declaration are the following documents:

    a.       True and correct copies of the September 25, 2009[1] Assignment of Claim to Goldman Sachs (DANSKE_0017045), September 27, 2012 Assignment of Claim to Goldman Sachs (DANSKE_0017070), the September 11, 2012 Trade Confirmation (DANSKE_0017126), the September 27, 2009 and September 25, 2009 Purchase Price Letters setting forth the amount Goldman Sachs paid and the rate of pay for a portion of Danske's claim (DANSKE_0017129 & DANSKE_0017890) are attached hereto as **Atkinson Exhibit 1**.

**B.**       **The Commercial Repo**

9.       As Head of Legal at Danske, I have personal experience overseeing compliance and reviewing repurchase agreements between Danske and other financial entities. As a result of this experience, I understand how repurchase agreements operate in the financial industry.

10.       I also have specific knowledge of how the Commercial Repo operated and knowledge concerning Lehman's default under the Repo Agreements and with regard to the claim Danske filed in Lehman's bankruptcy.

11.       As I noted above (¶ 4), under the Commercial Repo, Lehman sold Danske and Danske purchased from Lehman for approximately $800 million a certain pool of assets, which consisted of secured interests in commercial properties. Each sale and purchase completed under the Repo Agreements rolled, or turned over, every week. To be more specific, each pool of assets was purchased by Danske and then repurchased by Lehman approximately every seven days. The

---

[1] It is a typographical error that the date is September 25, 2009; it should be September 25, 2012.

4

assets purchased pursuant to the Repo Agreements were held for Danske's benefit in an account at LaSalle, as set forth under the terms of the Tri-Party Custody Agreement. At the time of Lehman's default under the Repo Agreements, LaSalle was sub-custodian for BNY.

12. There was no requirement or expectation that the collateral that was purchased pursuant to the Repo Agreements had to be dated contemporaneously with the dates of the Repo Agreements. The Repo Agreements allowed for subsequent loans to be added to the pool of assets under the Commercial Repo or to replace certain loans that were initially included in the pool of assets under the Commercial Repo. *See* **MSJ. Ex. 26** (MRA, DANSKE_0015762 at ¶ 1); *id.* at ¶ 9(b) (permitting Lehman to substitute other securities for the Purchased Securities so long as the substitute securities had a "Market Value at least equal to the Market Value of the Purchased Securities for which they are substituted").

13. Lehman defaulted under the Repo Agreements on September 15, 2008, when it filed for bankruptcy, and on September 23, 2008. **MSJ. Ex. 26** (MRA, DANSKE_0015762 at ¶ 11). As soon as Lehman defaulted under the Repo Agreements, all of Lehman's title and interest transferred to Danske, *id.* ¶ 11(b), and Danske was entitled to terminate the existing Commercial Repo trades, *id.* ¶ 11(a). Lehman's default also entitled Danske to seek repayment (in full or in part) of the amount Lehman owed Danske in connection with the then-open trade under the Commercial Repo, *id.* ¶ 11(d). The MRA allowed Danske to seek repayment by either selling the collateral in the pool out on the market (provided such sales were commercially reasonable) or retaining any or all of the assets within the collateral pool as partial or full repayment of the amount Lehman owed Danske in connection with the open trade under the Commercial Repo. *Id.* (MRA, DANSKE_0015762 at ¶ 11(d)(i)).

14. Prior to Lehman's bankruptcy in September 2008, Lehman's lien, as evidenced by the 2006 loan agreement between Lehman and borrower Diamante Cabo San Lucas, S. De R.L. De C.V. (the "DCSL Loan") was among the pool of commercial loans held for Danske's benefit by LaSalle Bank as required by the Repo Agreements and the Tri-Party Custody Agreement. **MSJ. Ex. 32** (September 15, 2008 Letter from Master Custodian to LaSalle Bank); **MSJ. Ex. 96** (September 18, 2009 Proofs of Claim filed by Danske in Lehman's bankruptcy proceeding (No. 08-13555(JMP) (Bankr. S.D.N.Y.)).

15. I have reviewed the September 15, 2008 letter sent to Danske by Bank of New York, and reviewed it at the time, and can confirm that Lehman's lien against the Resort Property was included on the schedule and is identified on that schedule by loan number WD91. **MSJ. Ex. 32** (September 15, 2008 Letter from Master Custodian Bank of New York to LaSalle Bank). This numbering is also reflected in the Deal Status Report for the Cabo San Lucas Land, which I understand was prepared around the time of the January 13, 2009 Assignment and Assumption Agreement. GX-7. As reflected in the September 15, 2008 Bank of New York letter to LaSalle (**MSJ. Ex. 32**) the face value of the DCSL loan was $107,529,665,05. Lehman never disputed—to Danske or, to my knowledge, to the Bankruptcy Court—that the amount of face value of the loan was different from what LaSalle Bank represented.

16. When Lehman defaulted and filed for bankruptcy, the financial markets were in great distress in no small part because of the significant problems in the mortgage lending markets. There was no liquid market for selling the mortgage assets Danske had purchased from Lehman under the Commercial Repo. If Danske had tried to sell those assets in September 2008, it was reasonable to believe at the time that Danske would have received very minimal value and Lehman would have, as a result, owed Danske the full amount of $800,587,599.42 or something likely

6

close to that full amount.  In an effort to recover as much of the money it had paid to Lehman as possible, Danske therefore elected to retain almost all of the liens that comprised the collateral pool.

17. In September 2009, Danske filed a claim in Lehman's bankruptcy in an effort to recover as much of the value Lehman owed Danske as possible.  Danske engaged a consultant, Jones Lang Lasalle ("JLL"), to assist Danske in calculating what Lehman owed to Danske.  As part of that work, JLL estimated a value for the lien secured by the Resort Property as of September 23, 2008—the date upon which Lehman defaulted by failing to make a payment then due and owing.  *See* **MSJ. Ex. 96** (September 18, 2009 Proofs of Claim filed by Danske in Lehman's bankruptcy proceeding (No. 08-13555(JMP) (Bankr. S.D.N.Y.)).  At no time did Danske view its right to repayment on the lien against the Resort Property as less than the face value of the loan.

18. I participated in the process by which Danske negotiated a settlement with Lehman regarding, among other things, amounts still owed under the Repo Agreements, taking into account the then-value of the underlying collateral pool.  The values of the collateral pool that the parties agreed upon were based on valuations that expected defaults on some or all of these properties, not the amount that Danske purchased the right to recover.  To my knowledge, neither Danske nor Lehman ever took the position during these negotiations that Danske would accept full repayment on the lien against the Resort Property for anything less than full value.  Danske's and Lehman's understanding was that Danske had already paid for these assets and that Danske was entitled to full payment under the various loans, including amounts owed by DCSL.

19. After Lehman and Danske reached agreement on a settlement, Lehman obtained approval from the bankruptcy court.  The bankruptcy court found that Danske was entitled to recover $580 million, **MSJ. Ex. 39** (November 18, 2011 Bankruptcy Court Order (Dkt. No. 22338,

7

No. 08-13555(JMP) (Bankr. S.D.N.Y.)), which consisted of amounts Lehman owed to Danske under the Commercial Repo and a separate repurchase agreement that concerned the purchase and sale of residential mortgage assets.

20.     Subsequent to the bankruptcy court approving the parties' settlement, Danske sold its allowed claim to Goldman Sachs.  I understand that the government has stated that Danske received a profit from this sale.  Govt. Brf. at 45.  That is incorrect.  Danske sold its $580 million claim to Goldman Sachs for approximately $226 million.  *See* **Atkinson Exhibit 1**.  Ultimately, Danske lost more than $300 million on its repurchase transactions with Lehman.

**[SIGNATURE PAGE FOLLOWS ON NEXT PAGE]**

In accordance with 28 U.S.C. § 1746 and Local Rule 1.9, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of October at London, United Kingdom.

Jovan Atkinson
Head of Legal
Danske Bank A/S London Branch