UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA


- against -                                                    DECLARATION OF
                                                              KELLIE FEDKENHEUER
PHILLIP A. KENNER,
         also known as,
              "Philip A. Kenner," and                         13-CR-607 (S-2)(JFB)
TOMMY C. CONSTANTINE,
         also known as
              "Tommy C. Hormovitis,"

              Defendants.
– – – – – – – – – – – – – – – – X


1. I, Kellie Fedkenheuer, hereby declare, pursuant to 28 U.S. Code (U.S.C.) § 1746, under penalty of perjury, the following:

2. As set forth in my prior Declaration dated September 9, 2020 ("September 9, 2020 Declaration"), I am a Partner at Cotton & Company LLP (Cotton & Company), a CPA firm located in Alexandria, Virginia. I am a certified public accountant ("CPA") and a certified fraud examiner ("CFE"), and I am certified in financial forensics ("CFF"). I have been involved in analyzing and reviewing documents for numerous financial investigations.

3. This Supplemental Declaration is respectfully submitted in response to certain statements made in Danske's Reply in Support of Danske Bank A/S London Branch's ("Danske") Motion for Summary Judgment and Opposition to the Government's Counter Motion for Summary Judgment ("Danske's Reply"), dated October 9, 2020, as well as statements made in David Daniel's Supplemental Declaration ("Daniel Supplemental Declaration"), dated October 9, 2020.

4. My conclusions in this Supplemental Declaration, along with the conclusions in my September 9, 2020 Declaration, do not include an evaluation of Danske's entitlement to the amounts included

1

in its claim, as that is the responsibility of the trier of fact to ultimately conclude. Instead, my conclusions are limited to addressing the methodology that Danske used to quantify its claim and reviewing the documentation that Danske provided to determine whether Danske adequately supported the claim amounts and whether the claim amounts were allocable to the construction and development of the Diamante Cabo San Lucas ("DCSL") resort.

5. As outlined in my Curriculum Vitae, Attachment 1, I have vast experience in claims analysis, including evaluating claims prepared by an entity and preparing claims on behalf of an entity related to a specific issue or allegation. I have analyzed and prepared claims resulting from various types of projects in multiple industries, including, but not limited to, construction, defense, transportation, and healthcare. Although the claims I have analyzed have resulted from a variety of issues, allegations, and project types, I use a consistent methodology in analyzing each claim. I first identify the methodology that the claimant used to calculate the claim amount, then review the supporting documentation that the claimant provided to determine if the claim amount was allocable to the relevant issues or allegations.

6. Attachment 2 identifies the documentation that I reviewed and relied upon in preparing my September 9, 2020 Declaration, as well as the documentation that was subsequently provided by Danske.

7. Based on my review of Danske's Reply, the Daniel Supplemental Declaration, and the documents provided subsequent to my September 9, 2020 Declaration, I determined that: 1) Danske has not addressed all of the inconsistencies that I identified in my September 9, 2020 Declaration; 2) the inconsistencies that Danske raised in its Reply were not completely explained by Danske; and 3) Danske still has not provided all of the documentation necessary to support its claim, as outlined throughout this Supplemental Declaration.

2

**DANSKE HAS NOT PROVIDED A COMPLETE SET OF FACILITY A, B, AND C LOAN STATEMENTS FOR 2020**

8. As stated in my September 9, 2020 Declaration, Danske did not provide any loan statements dated after February 28, 2020, for Facilities A and B. In response, Danske provided only the September 2020 loan statements for Facilities A and B. I reviewed these statements and determined that the loan balance as of September 30, 2020, was $96,400,000 for Facility A and $18,000,000 for Facility B. However, Danske only provided the September 2020 loan statements for these facilities; it did not provide the loan statements for March through August 2020. The March through August loan statements may have included additional loan activity that is not apparent on the September 2020 loan statement (e.g., additional draws, accrual of interest, payments toward principal, interest and fees).

9. In addition, my September 9, 2020 Declaration noted that Danske did not provide loan statements for periods of time after 2019 for Facility C. Danske noted that **MSJ Ex. 91** included the Facility C loan statement dated March 31, 2020, and stated, "This exhibit not only showed the Facility C balance as of March 31, 2020, it also provided the back-up for the alleged $900,000 that Fedkenheuer claimed was unsupported." Danske Reply at p. 17. Although this exhibit enabled me to verify that Danske had applied a payment of $900,000 to Facility C on March 13, 2020, **MSJ Ex. 91** did not include documentation to support the $900,000 in timeshare deposits received by DCSL. The Danske Verified Petition filed on May 6, 2020, stated, "On March 13, 2020, the Borrower deposited **approximately** $900,000 of **certain** timeshare deposits into a Facility C reserve" [Emphasis added], implying that the total amount of timeshare deposits that DCSL received was not a precise $900,000. Without documentation to support the timeshare deposits, I was unable to determine the exact amount of timeshare

3

deposits that DCSL received and used to make additional payments toward the Facility A, B, and C loan accounts. The amount of time

10. Although Danske provided September 2020 loan statements for Facilities A and B, it did not provide one for Facility C. Instead, it provided a copy of "Danske's Statement of Account for Facility C, dated September 30, 2020" (Daniel Supplemental Declaration, Exhibit 3), which appears to be a summary of the loan account, rather than a loan statement. This document indicates that the last loan statement was Loan Statement No. 29, dated March 31, 2020; however; it is unclear why Danske would not have any loan statements for Facility C following Loan Statement No. 29. Danske did not have any loan activity related to Facilities A and B in September 2020; however, it still generated loan statements for that period. Danske therefore could have had additional loan activity in Facility C from April through September 2020, including additional draws or payments toward the principal balance. However, without the loan statements for this period, I was unable to determine if there was any additional loan activity.

**DANSKE DID NOT ADDRESS SUBSTANTIAL INCONSISTENCIES BETWEEN DANSKE AND TRIMONT'S DOCUMENTATION**

11. As stated in my September 9, 2020 Declaration, I was unable to reconcile the activity in the Danske Loan Statements to the activity in the documentation provided by Danske's third-party loan servicer, Trimont Real Estate Advisors, Inc. ("Trimont"). In addition, I identified differences between the Trimont Summary Statements and the Trimont Invoices. My September 9, 2020 Declaration identified transactions that: a) were in the Danske Loan Statements but not in the Trimont Invoices; b) were in the Trimont Invoices but not in the Danske Loan Statements; c) were in the Trimont Summary Statements but not in the Trimont Invoices; and d) were accounted for differently by Danske and Trimont. However, Danske did not address all of these inconsistencies, as outlined below. Therefore, because Danske still has not fully explained

4

the inconsistencies and has not provided a complete set of Trimont Invoices, I was unable to rely on the documentation that Danske provided to support its claim.

a. ***Danske Loan Statements and Trimont Invoices do not reconcile because the Danske Loan Statements are only internal records.*** My September 9, 2020 Declaration noted that the Danske Loan Statements and the Trimont Invoices should include the same loan activity. However, Danske noted that its Loan Statements are "internal records of Danske only" and, "Some of the transactions booked on Danske's internal loan statements are internal transfers between Danske's own accounts that would not have been included on Trimont's statements."  Daniel Supplemental Declaration at ¶15. However, Danske did not explain all of the inconsistencies between the Danske and Trimont documentation, as outlined in Sections 11.b. through 11.e of my Supplemental Declaration. Because Trimont identified a number of advances and payments that Danske did not include in its loan statements, and Danske only provided its internal records which did not include all of the loan activity, I would need to review a complete set of the Trimont Invoices to be able to determine if Danske's adequately supported its claim.

Additionally, Trimont stopped servicing the loan in December 2016, and WC Asset Management took over. Government Document Request No. 17 requested that Danske provide "(a) any and all servicing agreements with Trimont Real Estate Advisors, Inc., Michael Devlin, and any other third-party utilized by Danske or the Borrower to provide services regarding the DCSL resort loan; and (b) any and all correspondence, reports and documents prepared according to such servicing agreements…." *See* Government Exhibit ("GX") 19. However, Danske has not provided any financial records from WC

Asset Management that would identify the loan activity on Facility A, B and C when WC Asset Management began servicing the loan.

b. ***Danske Claimed that the Danske Loan Statements included internal transfers and bookings that Trimont would not have recorded; however, it did not explain the other transactions that were included in the Danske Loan Statements but not in Trimont's records.*** In Table 5 of my September 9, 2020 Declaration, I identified transactions that were included in the Danske Loan Statements but not in the Trimont Invoices. Danske explained that these inconsistencies generally occurred because of internal transfers, bookings, and reversals that Trimont would not have included in its invoices. However, it did not provide an explanation of the other inconsistencies I identified that do not appear to be the result of internal Danske transactions, as detailed below.

| Table A | | | | | | |
|---|---|---|---|---|---|---|
| Facility | Account Number | Entry Date | Value Date | Transaction Description | Amount | Note |
| A | 90003664 | 11/19/08 | 11/19/08 | OUTWARD 4022-83245122794 | $20,015 | |
| A | 90003664 | 01/20/09 | 11/19/08 | CHARGES RETURN | (15) | i |
| A | 90003664 | 02/25/09 | 02/25/09 | LEGAL FEE CABO | (20,000) | |
| A | 90003664 | 04/29/13 | 04/29/13 | INTERNAL TRANSFER | 72,639 | ii |
| A | 90003664 | 06/24/15 | 06/25/15 | VALUE ADJUST 3825-0040186408* | 24,999,992 | iii |
| A | 90003664 | 06/24/15 | 06/25/15 | PAYMENT 3825-0040186408* | (24,999,992) | iii |
| B | 90003761 | 09/13/11 | 09/12/11 | TRIMONT REAL ESTATE | (649,942) | |
| C | 36030240 | 01/03/14 | 01/02/14 | TRIMONT REAL ESTATE ADVISORS INC | (11,479) | i |
| C | 36030240 | 07/05/16 | 06/30/16 | CABO SALE PROCEEDS | (14,770) | |

i. Danske did not provide an explanation as to why outward transactions consisting of $20,015 in legal fees, $661,441 in fees that Danske paid to Trimont, and $14,770 in sales proceeds would have been included in the Danske Loan Statements but not in the Trimont Invoices.

ii. Danske agreed that the Danske Loan Statements and the Trimont Invoices did not reconcile for Facility A due to an internal transfer of $72,639 that Danske recorded

in its Loan Statements. However, Danske did not provide an explanation regarding the purpose of the internal transfer or to whom Danske transferred the funds.

iii. Danske attempted to explain the value adjustment and payment of $24,999,992 that I identified in Table 5 of my September 9, 2020 Declaration (Danske Reply at p. 19); however, the transaction that Danske reconciled to the Trimont Invoices was not one of the transactions included in my table. Danske Loan Statement No. 13 contained three transactions related to this amount, as shown in the table below; however, Table 5 of my September 9, 2020 Declaration only included the transactions that I was **unable** to reconcile to the Trimont Invoices.

| Table B | | | | |
|---|---|---|---|---|
| Entry Date | Value Date | Transaction Description | Reference Number | Amount |
| 06/24/15 | 06/24/15 | VALUE ADJUSTMENT 3825-0040186408 | 3825-0040186408 | $25,000,000 |
| 06/24/15 | 06/25/15 | VALUE ADJUSTMENT 3825-0040186408 | 3825-0040186408 | ($24,999,992) |
| 06/24/15 | 06/25/15 | PAYMENT 3825-0040186408 | 3825-0040186408 | $24,999,992 |

Danske incorrectly identified the transaction that reconciles to the Trimont Invoices. Specifically, Danske states that it reconciled the transaction labeled "PAYMENT 3825-0040186408"," with a value date of June 25, 2015, to the correlating transaction in the Trimont Invoices. Danske Reply at p. 19. However, while I agree that one of the transactions in Table B reconciles to the Trimont Invoices, it is actually the transaction labeled "VALUE ADJUSTMENT 3825-0040186408", with a value date of June 24, 2015, which is supported by the matching transaction amount and value date in Trimont Invoice No. 138177. Table 5 of my September 9, 2020 Declaration only included the two additional transactions in Table B as these were the two transactions in Danske Loan Statement No. 13 that are not in the Trimont Invoices.

7

In addition to Danske's incorrect reconciliation, Danske's explanation for these transactions is not consistent with the explanation provided in the Daniel Declaration, which states that the "…two entries of just under $25 million… were internal Danske bookings that had no effect on the principal balance owed." Daniel Supplemental Declaration at ¶ 15b.  As stated in my September 9, 2020 Declaration, while these transactions do not impact the principal balance, they represent an example of inconsistent reporting of the loan activity for which Danske has not explained.

c. ***Danske did not address the substantial number of transactions that were in the Trimont Invoices but were not in the Danske Loan Statements.*** Danske acknowledged that I had identified transactions that were in the Trimont Invoices but not in the Danske Loan Statements; however, it did not attempt to explain these transactions, which included $25,572,508 in advances and $23,493,848 in payments related to Facility B. I have summarized these transactions in Attachment 3. In my September 9, 2020 Declaration, I provided specific examples of instances in which the Danske Loan Statements did not report any loan activity. For example, Danske Loan Statement No. 15 for Facility B, which covered the period from December 31, 2011, through December 31, 2012, only identified a principal balance of $18,000,000 and did not report any transactions during that period (see Attachment 4). However, the Trimont Invoices showed 52 transactions during this period, including $12,449,440 in advances and $9,382,994 in principal payments.[1] The table below compares the number of transactions reported for Facility B in the Danske Loan Statements to the number of

---

[1] The $12,449,440 in advances and $9,382,994 in principal payments represent the 2012 transactions reported in the Trimont Invoices (see Attachment 3).

8

transactions reported in the Trimont Invoices. As the table illustrates, beginning in July 2010, the activity reported in the Trimont Invoices substantially exceeds the activity reported in the Danske Loan Statements.

| Table C | | | | |
|---|---|---|---|---|
| Danske Statement Number | Statement Date | Period Covered by Statement | Number of Transactions | |
| | | | Danske Loan Statements | Trimont Invoices |
| 1 | 03/31/09 | 03/09/09 to 03/31/09 | 1 | 0 |
| 2 | 06/30/09 | 04/01/09 to 06/30/09 | 4 | 5 |
| 3 | 09/30/09 | 07/01/09 to 09/30/09 | 5 | 5 |
| 4 | 11/30/09 | 10/01/09 to 11/30/09 | 4 | 3 |
| 5 | 12/31/09 | 12/01/09 to 12/31/09 | 3 | 3 |
| 6 | 01/29/10 | 01/01/10 to 01/29/10 | 4 | 3 |
| 7 | 02/26/10 | 01/30/10 to 02/26/10 | 1 | 1 |
| 8 | 03/31/10 | 02/27/10 to 03/31/10 | 1 | 3 |
| 9 | 05/31/10 | 04/01/10 to 05/31/10 | 1 | 1 |
| 10 | 06/30/10 | 06/01/10 to 06/30/10 | 1 | 1* |
| 11 | 12/31/10 | 07/10/10 to 12/31/10 | 0 | 25* |
| 12 | 06/30/11 | 01/01/11 to 06/30/11 | 1 | 30 |
| 13 | 09/30/11 | 07/01/11 to 09/30/11 | 2 | 20* |
| 14 | 12/31/11 | 10/01/11 to 12/31/11 | 0 | 7 |
| 15 | 12/31/12 | 12/30/11 to 12/31/12 | 0 | 52* |
| 16 | 03/29/13 | 01/01/13 to 03/29/13 | 1 | 24 |
| 17 | 06/28/13 | 03/30/13 to 06/28/13 | 2 | 17 |
| 18 | 12/31/13 | 06/29/13 to 12/31/13 | 2 | 24 |
| 19 | 03/31/14 | 01/01/14 to 03/31/14 | 0 | 0* |
| 20 | 12/31/14 | 04/01/14 to 12/31/14 | 0 | 38 |
| 21 | 09/30/15 | 01/01/15 to 09/30/15 | 2 | 14* |
| 22 | 12/31/15 | 10/01/15 to 12/31/15 | 2 | 0* |
| 23 | 06/30/16 | 01/01/16 to 06/30/16 | 2 | 41 |
| 24 | 09/30/16 | 07/01/16 to 09/30/16 | 2 | 17 |
| 25 | 12/31/16 | 10/01/16 to 12/31/16 | 2 | 0* |
| *Because Danske did not provide all of the Trimont Invoices for this period, the number of transactions reported in the Trimont Invoices may be understated. | | | | |

Danske did not attempt to explain why the Trimont Invoices would identify hundreds of transactions that were not included in the Danske Loan Statements.

d. ***Danske only provided a generic explanation regarding Danske and Trimont's different accounting methodologies and did not address any of the examples identified in my September 9, 2020 Declaration.*** In my September 9, 2020 Declaration, I noted

that Danske and Trimont accounted for certain transactions differently and provided specific examples of those differences. Danske only provided a generic explanation regarding the difference in accounting methodologies, stating that the Trimont Invoices and Danske Loan Statements were not intended to report the same transactions, and it did not explain any of the inconsistent examples that I identified. Specifically, Danske did not attempt to address why it did not account for $13,860,658 of capitalized interest related to Facility A until April 29, 2013 through an internal transfer, even though DCSL failed to make the interest payments beginning in March 2009, and Trimont began accounting for capitalized interest on a monthly basis in March 2009. Further, my September 9, 2020 Declaration noted that Trimont and Danske used different methodologies for reporting the consolidation of Facilities D and C. Danske Loan Statement No. 5 accounted for the consolidation by reporting a $3,000,000 transaction in the Facility C loan account on April 30, 2014, with the description "Closing facility D." Trimont accounted for the consolidation by closing the previous loan accounts for Facilities C (Loan Identifier No. 1133621) and D (Loan Identifier No. 1133631) and setting up a new loan account (Loan Identifier No. 1133641), then reporting a $5,000,000 transaction in the new loan account on May 5, 2014. Danske did not attempt to explain this difference in methodology other than to state that the Danske and Trimont statements were not meant to report in the same way. Daniel Supplemental Declaration at ¶ 15. In addition, Danske did not provide either the Danske Loan Statements for Facility D or the wire transfer documentation or bank statements to support that DCSL received the advances from Facility D.

e. ***Danske did not explain why the Trimont Invoices did not include the same loan activity as the Trimont Summary Statements.*** As stated in my September 9, 2020

10

Declaration, I identified differences between the loan activity identified in the Trimont Invoices and the loan activity identified in the Trimont Summary Statements, which are intended to provide a consolidated schedule of the loan activity for each facility. In particular, I reconciled the transactions recorded in the Trimont Invoices for Facility B to the transactions recorded in the Trimont Summary Statement for Facility B and noted a discrepancy of more than 200 transactions between the two sources during the period from 2009 to 2016. In addition, in my September 9, 2020 Declaration I identified two advances totaling $1,753,649 that were included in the Trimont Summary Statement but not in the Trimont Invoices. Danske did not address why the Trimont Summary Statements would report different loan account activity than the Trimont Invoices did; instead, it simply noted that the two examples included in my September 9, 2020 Declaration represented advances to DCSL. I agree that the two examples included in my September 9, 2020 Declaration represented advances to DCSL; however, this does not explain why the Trimont Invoices did not include these amounts.

### DANSKE DID NOT SUPPORT THE ALLEGATION THAT THE $887,387 DIFFERENCE BETWEEN THE AMOUNT FUNDED TO DCSL AND THE AMOUNT OF DANSKE'S CLAIM IS DUE TO AMOUNTS TRANSFERRED TO INTEREST RESERVE ACCOUNTS

12. As I noted in my September 9, 2020 Declaration, Danske's claim included $53,476,556 for amounts advanced to DCSL; however, the DCSL bank statements only identified $52,589,169 in deposits, resulting in a difference of $887,387, as summarized below.

| Table D | | | | | |
|---|---|---|---|---|---|
| | Danske Loan Statements | | DCSL Bank Statements | | |
| Facility | Date | Amount | Date | Amount | Difference |
| A | 01/14/09 | $1,600,015 | 01/14/09 | $1,591,188 | $8,827 |
| B | 12/18/09 | 250,387 | 12/22/09 | 216,845 | 33,542 |
| C | 12/30/14 | 1,587,637 | 12/30/14 | 1,587,619 | 18 |
| C | 01/13/15 | 910,934 | 01/13/15 | 905,934 | 5,000 |

| Table D | | | | | |
|---|---|---|---|---|---|
| | **Danske Loan Statements** | | **DCSL Bank Statements** | | |
| **Facility** | **Date** | **Amount** | **Date** | **Amount** | **Difference** |
| C | 11/06/15 | 1,394,488 | 11/06/15 | 974,488 | 420,000 |
| C | 01/06/16 | 1,402,000 | 01/06/16 | 982,000 | 420,000 |
| | | **$7,145,461** | | **$6,258,074** | **$887,387** |

13. The Danske Loan Statements included two advance amounts of $1,394,488 and $1,402,000, dated November 6, 2015, and January 6, 2016, respectively. Danske stated that these amounts each included $420,000 that Trimont did not wire to DCSL, but instead held in an interest reserve account. However, because Danske has not provided documentation to support this assertion, I have not been able to validate the $840,000 included in Danske's claim was wired by Trimont to an interest reserve account, or that those funds were subsequently used to make interest payments towards the facility loan accounts.

14. Danske did not address the remaining difference of $47,387[2], and stated that the amount is "immaterial." Danske Reply at p. 18.

## DANSKE DID NOT PRODUCE INVOICES TO SUPPORT $6,297,406 OF THE AMOUNT LEHMAN BROTHERS FUNDED TO DCSL

15. As stated in my September 9, 2020 Declaration, Danske provided certain Trimont Invoices for the period of time that Lehman Brothers held the loan. The last Trimont Invoice issued during this period, dated December 18, 2008, identified a principal balance of $107,538,328; however, because Danske did not provide certain Trimont Invoices, I was unable to determine if this balance was supported by transactions included in the Trimont Invoices. The Trimont Invoices that Danske did provide during the period that Lehman Brothers held the loan included

---

[2] In Danske's Reply, it miscalculated the remaining "immaterial" inconsistency. Danske Reply at p. 18. The remaining difference is $47,387 ($887,387 - $420,000 - $420,000), not $37,387.

transactions of $101,240,922, therefore I was unable to validate $6,297,406 that was funded by Lehman Brothers through the Trimont Invoices.

16. Danske stated that I failed to review the September 15, 2008 letter from the Bank of New York that states that Lehman Brothers advanced $107,529,665, and that I ignored that the Bankruptcy Court recognized the extent of Danske's claim. Danske Reply at p. 18. My September 9, 2020 Declaration did not opine on the purchase value of the loan, but instead only noted that I was not able to validate $6,297,406 that was allegedly advanced by Lehman Brothers, as Danske did not provide a complete set of Trimont Invoices, which Trimont claims to no longer have in its possession. *See* Declaration of Jennifer Britt at ¶ 2.

## DANSKE DID NOT ACKNOWLEDGE THAT THE $3,020,424 IN INTEREST PAYMENTS NOT INCLUDED IN ITS LOAN STATEMENTS WOULD IMPACT ITS CLAIM FOR UNPAID INTEREST

17. As stated in my September 9, 2020 Declaration, the Trimont Invoices included $3,020,424 in payments for Facility C that Danske did not include in its Loan Statements, as shown in the table below.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Table E** | | | | | | |
| **Facility** | **Invoice Number** | **Loan Number** | **Transaction Date** | **Description** | **Transaction Value** | **Bates Number** |
| C | 47670 | 1133621 | 07/01/13 | Payment Received | $4,578 | DANSKE_0015460 |
| C | 63784 | 1133641 | 07/01/14 | Payment Received | 568,750 | DANSKE_0015392 |
| C | 95577 | 1133641 | 10/01/14 | Payment Received | 454,167 | DANSKE_0015396 |
| C | 104895 | 1133641 | 01/02/15 | Payment Received | 470,073 | DANSKE_0015399 |
| C | 138300 | 1133641 | 04/07/15 | Payment Received | 157,709 | DANSKE_0016761 |
| C | 190981 | 1133641 | 01/07/16 | Payment Received | 385,842 | DANSKE_0015602 |
| C | 197519 | 1133641 | 04/01/16 | Payment Received | 498,144 | DANSKE_0015644 |
| C | 197519 | 1133641 | 07/01/16 | Payment Received | 481,161 | DANSKE_0015467-68 |
| | | | | **Total Payments Received:** | **$3,020,424** | |

18. Danske claimed that these payments were interest payments and do not impact the principal balance. I agree that interest payments would not impact the principal balance; however, Danske's failure to recognize $3,020,424 in interest payments would impact its claim for unpaid

13

interest. Danske's claim includes an unpaid accrued interest balance of $7,671,811, which

appears to be overstated, as the Danske Loan Statements do not include interest payments of

$3,020,424. Further, this argument does not explain why Danske would not have included these

interest payments in its Loan Statements when it did include previous interest payments. The

table below summarizes the interest payments that were reported in the Danske Loan

Statements for Facility C.

| Table F[3] | | | | | |
|---|---|---|---|---|---|
| Facility | Account Number | Danske Statement Number | Date | Transaction Description | Amount |
| C | 36030240 | 4 | 01/02/14 | TRIMONT REAL ESTATE ADVISORS INC | $11,479 |
| C | 36030240 | 6 | 07/03/14 | TRIMONT REAL ESTATE ADVISORS INC | $1,365,289 |
| C | 36030240 | 7 | 10/01/14 | CABO SAN LUCAS | $1,260,796 |
| C | 36030240 | 8 | 12/30/14 | REVERSE ENTRY | $1,381,919 |
| C | 36030240 | 9 | 04/07/15 | 1ST QUARTER INTEREST | $1,164,798 |
| C | 36030240 | 12 | 01/20/16 | CABO INTEREST | $1,148,509 |
| C | 36030240 | 16 | 02/23/17 | DIAMANTE CABO | $593,154 |
| C | 36030240 | 21 | 01/26/18 | DIAMANTE CABO SAN LUCAS | $449,282 |
| C | 36030240 | 21 | 02/02/18 | DIAMANTE CABO | $658,895 |
| C | 36030240 | 21 | 03/09/18 | DIAMANTE CABO | $738,075 |
| C | 36030240 | 21 | 03/16/18 | DIAMANTE CABO | $537,884 |
| C | 36030240 | 22 | 04/02/18 | DIAMANTE CABO | $357,156 |
| C | 36030240 | 22 | 04/06/18 | DIAMANTE CABO SAN LUCAS | $1,189,489 |

### DANSKE STILL HAS NOT SUPPORTED OVER $90 MILLION IN ADVANCES

19. As stated in my September 9, 2020 Declaration, after Danske took over the loan, it advanced

DCSL $1,600,015 through Facility A, $19,141,342 through Facility B, and $77,494,995 through

---

[3] While the transaction descriptions do not always specifically identify these transactions as interest payments, I was able to determine that the identified transactions were for interest payments based on the corresponding interest accrual reflecting the same amount in the Danske Loan Statements.

Facility C, for a total of $98,236,352.[4] Article XI, Section 11.1 of the *Second Amended and Restated Loan Agreement* identified documents that DCSL must provide to support that it had already **incurred** and **paid** the construction and development costs for which it was requesting reimbursement. Specifically Article XI, Section 11.1 requires DCSL to provide "invoices, contracts or other information as Lender may require to evidence that Borrower has incurred **all costs** covered by the request for disbursement" and "paid receipts or other proof of payment…of **all Construction costs** covered by the prior disbursement of the loan". [Emphasis Added] Document Request No. 28 requested that, for each disbursement and/or loan advance, Danske provide "complete draw request packages, containing all documents identified in Section 11.1, Documents to be Furnished for Each Disbursement, of the loan agreements as a condition precedent to the disbursement of funds from the loan facilities." *See* GX-19.

20. Danske claims that providing the required documentation for each advance would result in "hundreds of thousands of pages of documents" and refused to provide these documents. Daniel Supplemental Declaration at ¶ 17. Instead, Danske notes that it hired M. Delvin & Associates, Inc. ("MD&A") to compile and review the underlying documents supporting each draw request. Danske claims that MD&A "reviewed all draw requests, compared the draw requests to invoices, contracts or other information on costs incurred and then recommend whether such advances should be approved in whole or with some changes based on my assessment of whether the work in fact had been performed." Delvin Declaration at ¶ 4. However, according to the MD&A December Draw and Operational Costs Review, dated December 31, 2015,

---

[4] Facilities B and C were revolving accounts that had credit limits of $18,000,000 and $15,000,000, respectively. As a result, although Danske advanced DCSL $96,636,337 through Facilities B and C over the course of the loan, it never advanced more than this credit limit, or $33,000,000, at one time. Once DCSL reached the credit limit, it would have to pay down the principal balance to obtain additional credit before it could continue drawing down funds.

MD&A only "reviewed a sampling of the invoices for items contained in the draws." Delvin Declaration, Exhibit 2. The MD&A report did not disclose the sampling methodology that was used, which would include the size of the sample, or how many invoices were actually reviewed. Therefore, while Danske claims that MD&A reviewed all draw requests, it is clear that MD&A **did not** review all invoices.

21. Further, Danske has provided neither a complete set of draw requests nor a complete set of the reports that MD&A provided to Danske related to those reviews. Danske has only provided one draw request package for a funding request of $1,750,000 on November 6, 2015.[5] While the funding memos generally describe what the funding request is for, it does not include invoices, checks, or other documentation to support that that the amounts included in the fund request were incurred and paid.

22. I am therefore still unable to validate that the $98,236,352 of funding that Danske advanced to DCSL was related to the development and construction of DCSL.

### DANSKE STATED THAT THE DOCUMENT I RELIED UPON FOR THE PROFIT PARTICIPATION FEE WAS INCORRECT; HOWEVER, DANSKE SPECIFICALLY PROVIDED THIS DOCUMENT

23. Danske claims I relied upon the wrong document with regard to the profit participation fee ("PPF"). Danske Reply at p. 20. However, Danske provided this document on August 6, 2020, in response to the Government's Document Request No. 22, which requested that Danske provide "any and all documents showing the calculation and valuation for Danske's claimed profit participation fee under the Loan Agreements." *See* GX-19. I therefore relied upon this document to determine if the PPF claim of $50,000,000 was supported. As stated in my

---

[5] Danske also provided a funding memo for a funding request of $1,429,343 on January 29, 2010, but did not provide the entire draw package.

September 9, 2020 Declaration, the document that Danske provided calculated a PPF of $45,000,000, rather than the claimed PPF of $50,000,000.

24. My September 9, 2020 Declaration did not opine on Danske's entitlement to the PPF or interpret the terms of the loan agreements; it used the loan agreement solely to determine whether the loan agreement identified Danske's claimed PPF amount of $50,000,000 and if so, what criteria the loan agreement included for the calculation of the PPF. As stated in my September 9, 2020 Declaration, both the *Second Amended and Restated Loan Agreement*, dated April 26, 2013, and DCSL's consolidated financial statements for the years ending December 31, 2015 and 2016, identified a PPF of $50,000,000.[6] The *Amended and Restated Loan Agreement* dated March 6, 2009, Section 5.3, *Profit Participation Fee*, originally established the PPF and identified the formula for determining the amount of the PPF; the *Second Amended and Restated Loan Agreement* removed the reference to a formula. Danske claims that "the $5 million increase in the PPF was part of the consideration for the additional funding and extension of maturity dates as part of the modification reflected in the Second Amended and Restated Loan Agreement. The increase in the PPF reflected Danske's view of how the risk profile of the DCSL Loan had changed as a result of Danske advancing additional funding." Daniel Supplemental Declaration at ¶ 19. However, Danske has not provided any documentation to support that argument, or to explain why the *Second Amended and Restated Loan Agreement* removed the formula for calculating the PPF.

---

[6] Danske has not provided financial statements for DCSL for the years ending December 31, 2017, through December 31, 2019. The Government submitted Document Request No. 37 to request that Danske provide "the most recent financial information for DCSL Mexico, including financial statements and tax returns." Without this information, I was unable to determine if the parties have made any other modifications to the PPF since 2016.

### Danske Acknowledged That Facility B was Paid Down with Facility C Funding and Alleged That Facility C Funds Were Used to Avoid Defaulting on the Facility A and B Loans

25. As stated in my September 9, 2020 Declaration, Danske used Facility C funds to pay down the Facility B balance of $696,281. Therefore, although Danske made a payment toward the Facility B balance, the overall principal balance of the loan facilities did not decrease. Danske agreed that the overall balance did not decrease, but asserts that these transactions "…occurred when new Facility C was extended and funding advanced under Facility B, which was specific to the purpose of new Facility C, was redirected to utilization under Facility C." Daniel Supplemental Declaration at ¶ 21. Further, Daniel stated that Danske used Facility C funds to make interest payments on Facilities A and B to prevent the Facility A and B loans from defaulting and triggering the 20 percent interest rate. *Id.* at ¶ 21. However, Danske did not provide any documentation to support this allegation, and I was unable to identify these interest payments during my review of the Danske facility loan statements and the interest reserve accounts. Additionally, Danske's acknowledgement that it used funds from other facilities to make interest payments on other facilities to prevent default, confirms that DCSL was not paying down the loan accounts, and was moving funds around to avoid further capitalization of interest.

### Danske Confirmed that the Principal Balance for Facilities A, B, and C Did Not Decrease Over Time

26. As stated in my September 9, 2020 Declaration, although DCSL made payments toward the facility loan accounts, the payments did not substantially decrease the principal balances over time.

27. Attachment 5 of my September 9, 2020 Declaration provided a breakdown of Danske's claim

for Facilities A, B, and C, summarized as follows:

| Table G | | | |
|---|---|---|---|
| **Claim Elements** | **Facility A (Note A)** | **Facility B (Note B)** | **Facility C (Note C)** |
| Unpaid Principal | $82,338,371 | $16,462,951 | $3,180,111 |
| Unpaid Capitalized Interest | 13,860,658 | - | - |
| Unpaid Accrued Interest | - | - | 7,671,811 |
| Unpaid Fees | 200,971 | 1,537,049 | 3,248,078 |
| **Total Claim Amount** | **$96,400,000** | **$18,000,000** | **$14,100,000** |

a.  DCSL paid approximately $26,800,000 toward the principal balance of Facility A over

the loan period. However, only $1,800,000 of this amount related to ordinary loan

payments; the remaining $25,000,000 was a one-time payment resulting from the sale of

property for the Hard Rock Hotel (the KTRC sale). As a result, 93 percent of DCSL's

payments toward Facility A were not ordinary payments. Further, because DCSL did not

make the required interest payments, unpaid accrued interest of $13,860,658 was

capitalized (*i.e.,* compounded), which increased the principal balance. Danske's claim

therefore currently includes $96,400,000 for Facility A, which is only $11,138,328 less

than the amount of the loan when Danske originally took it over from Lehman Brothers

in 2009.

b.  DCSL made a total of $14,364,984 in payments toward the Facility B loan, but

approximately 81 percent of this amount, or $11,686,579, related to accrued interest.

DCSL only paid $2,678,391 toward the principal balance.

c.  DCSL made $74,314,884 in payments toward the Facility C principal balance over the

course of the loan, of which $16,374,513, or 22 percent, related to the KTRC sale

19

($15,000,000), the Cabo sale ($474,513),[7] and timeshare deposits made in March 2020 ($900,000).[8] The majority of the payments that did not relate to sales proceeds occurred shortly before Danske advanced additional funds to DCSL, in order to generate sufficient credit to permit an additional draw on the account.[9]

28. Danske claims "that Danske anticipated material debt amortization by way of bulk large parcel/property sales, like the sale made to KTRC." Daniel Supplemental Declaration at ¶ 22. Danske intended to use the proceeds from these sales to pay down the Facility A and B loans. However, the anticipated debt amortization through the sale of these parcels was hindered, stating, "The protective order in this matter had a significant impact on the ability to sell any large undeveloped parcel properties on the Resort Property without a significant discount because of the pending forfeiture proceeding." *Id* at ¶ 22. Danske has not provided any documentation to support this allegation. Additionally, although the loan documents refer to repayment using sales proceeds, the documents do not indicate that the Danske's repayment of the Facility A and B loans is **solely** contingent on the sale of these land parcels.

---

[7] Danske Loan Statement No. 14 for Facility C reported two payments in the Facility C loan account ($14,770 on June 30, 2016, and $459,743 on August 4, 2016) with the description "Cabo Sale Proceeds." Danske has not provided any additional information or documentation regarding these sales.

[8] The Danske Verified Petition filed on May 6, 2020, states, "On March 13, 2020, the Borrower deposited approximately $900,000 of certain timeshare deposits into a Facility C reserve. These ring-fenced funds have, for now, been applied to Facility C, and have reduced its principal balance, as of April 30, 2020, to $14.1 million."

[9] According to the loan documents, in addition to the interest charged on the unpaid balances of the loan facilities, Danske could also assess a non-utilization fee on the undrawn balances of Facilities B, C, and D. This fee ranged from 1 to 6 percent of the average daily undrawn balances of those facilities. Although Danske could charge DCSL either an interest fee or a non-utilization fee, the non-utilization fee would have been lower, as the rates were lower than the interest rate applicable to the loan accounts.

29. Danske asserted that the Facility C balance decreased because "the borrower did pay down the amounts owed on that facility, but were allowed to re-access funds because it was a revolving account." Daniel Supplemental Declaration at ¶ 22.  However, Danske's justification supports my opinion that the balance for Facility C did not truly decrease because, although DCSL made payments on the Facility C loan, as it withdrew the funds immediately or soon after a payment. Danske also confirmed that the balances of the loan facilities had not changed, stating, "The most recent bank statements make clear that the facility balances have not changed." Danske Reply at p. 17.

30. Finally, as stated in my September 9, 2020 Declaration, I noted that a large percentage of the loan advances from Facility C were round-dollar amounts that exceeded $1,000,000. Specifically, Facility C included $71,957,605 in outward transactions, of which $62,482,000, or approximately 87 percent, consisted of round-dollar amounts, as summarized below.

| Table H | | | | | | |
|---|---|---|---|---|---|---|
| | Round-Dollar Transactions | | Total Transactions | | Round-Dollar Transactions as a % of Total Transactions | |
| Year | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| 2013 | - | - | 3 | $1,303,719 | - | - |
| 2014 | 5 | $10,000,000 | 6 | 11,587,637 | 10.64% | 86.30% |
| 2015 | 7 | 11,250,000 | 10 | 14,461,257 | 14.89% | 77.79% |
| 2016 | 4 | 5,902,000 | 4 | 5,902,000 | 8.51% | 100.00% |
| 2017 | 1 | 1,450,000 | 2 | 2,881,894 | 2.13% | 50.31% |
| 2018 | 15 | 24,305,000 | 16 | 26,246,098 | 31.91% | 92.60% |
| 2019 | 9 | 9,575,000 | 9 | 9,575,000 | 19.15% | 100.00% |
| **Total** | **41** | **$62,482,000** | **47** | **$71,957,605** | **87.23%** | **86.83%** |

31. In response, Danske claimed that "Although the overall figure was a round number, there were specific amounts broken out that were not round dollar amounts" but only provided one example. Danske provided a funding memo dated November 6, 2015 and claimed that the "funding request shows that the actual amounts advanced were not all round numbers, but collectively added up to a round number. *Id*. ($48,000 + $307,511.55 + $1,394,488.45 =

$1,750,000).” See Daniel Supplemental Declaration, Exhibit 4. However, the example provided is **not** an example of a round dollar transaction that I identified in the Danske Loan Statements, but instead, each of the amounts included in the draw request were different transactions within Facility C as shown below.[10]

| Foreign Currency Account - Statement of Account No. 11 IBAN: GB59 DABA 3012 8136 0302 40 Period this statement relates to: 01.10.2015 to 31.12.2015 | | | | |
|---|---|---|---|---|
| Entry date | Value date | | Credited + Debited - | Credit balance + Debit balance - |
| | | Balance as at 30.09.2015 | | 6,984,102.84 - |
| 02.10 | 02.10 | Outward 4022-52754633438 | 1,750,000.00 - | 8,734,102.84 - |
| 06.11 | 06.11 | PROFESSIONAL FEES | 48,000.00 - | 8,782,102.84 - |
| 06.11 | 06.11 | TFR TO Diamante Cabo San Lucas Tax Reserv | 307,511.55 - | 9,089,614.39 - |
| 06.11 | 06.11 | Outward 4022-53105862840 | 1,394,488.45 - | 10,484,102.84 - |
| 10.12 | 10.12 | Outward 3826-53447096398 | 1,250,000.00 - | 11,734,102.84 - |

32. Further, the Funding Memo dated November 6, 2015 states that the $1,750,000 funding request would be released as three separate payments, as shown below.

| Payment Details: (Bank and a/c details) | USD 1,750,000.00 to be released as three separate payments: |
|---|---|
| | **Payment One:**          USD 48,000.00 Transfer to 4036991065 (Professional Fees) |
| | **Payment One:**          USD 307,511.55 Transfer to 4036 301281 36030321   (TAX RESERVE) |
| | **Payment Two:**          USD 1,394,488.45 BANK          Wells Fargo Bank, N.A.                        Oakland, CA ABA#          121000248 CREDIT          TriMont Real Estate Advisors, Inc Clearing Account ACCOUNT#          2000025192043 REFERENCE          1133641 |

33. Therefore, based on the funding memo that Danske provided, it appears that when there are multiple amounts requested in a funding memo, Danske would release the amounts through separate payments, and Danske’s Loan Statements would account for each amount separately.

---

[10] While the funding memo notes that the funding amount is $1,750,000, it also notes that the amount will be released in three payments ($48,000 for professional fees, $307,511.55 to be transferred to the Tax Reserve account, and $1,394,488.45 to Trimont’s clearing account).

Based on this methodology, the round dollar amounts I identified in the Danske Loan Statements may only be for one transaction, and not multiple transactions that equal a round dollar amount. Danske did not provide a funding memo to support any of the round dollar amounts that I identified in my September 9, 2020 Declaration. Therefore, without the funding memos for each round dollar amount, I was unable to determine if the round amount was based on one amount requested by DCSL or multiple amounts that totaled a round dollar amount.

34. While Danske previously explained that the round dollar advances are the result of numerous transactions that total to a round amount, it goes on to explain the round dollar amounts are the result of insufficient funding. Danske claims, "In some instances, the numbers were round numbers because the Borrower's advance request was more than available credit in Facility C. In those cases, Danske advanced a rounded amount only up to the credit available under Facility C." Daniel Supplemental Declaration at ¶ 23. However, Danske did not provide any examples to support this statement. I therefore reviewed each round-dollar transaction in Facility C and determined the available balance before and after the transaction in an attempt to identify examples to support Danske's statement. However, as shown in the table below, the majority of the round-dollar transactions did not result from capping caused by an insufficient available balance.

| Table I | | | | | |
|---|---|---|---|---|---|
| Danske Loan Statement Number | Date | Amount | Credit Limit | Loan Balance After Advance | Available Balance |
| 5 | 05/06/14 | $2,000,000 | $15,000,000 | $7,000,000 | $8,000,000 |
| 5 | 06/26/14 | 2,000,000 | 15,000,000 | 9,000,000 | 6,000,000 |
| 6 | 07/23/14 | 2,000,000 | 15,000,000 | 11,000,000 | 4,000,000 |
| 6 | 08/21/14 | 2,000,000 | 15,000,000 | 13,000,000 | 2,000,000 |
| 7 | 10/07/14 | 2,000,000 | 15,000,000 | 15,000,000 | - |
| 8 | 03/04/15 | 2,000,000 | 15,000,000 | 6,786,324 | 8,213,676 |
| 9 | 04/02/15 | 1,750,000 | 15,000,000 | 4,660,849 | 10,339,151 |
| 10 | 07/03/15 | 1,500,000 | 15,000,000 | 5,732,185 | 9,267,815 |
| 10 | 08/04/15 | 1,250,000 | 15,000,000 | 5,893,997 | 9,106,003 |
| 10 | 09/15/15 | 1,750,000 | 15,000,000 | 6,984,103 | 8,015,897 |

| Danske Loan Statement Number | Date | Amount | Credit Limit | Loan Balance After Advance | Available Balance |
|---|---|---|---|---|---|
| 11 | 10/02/15 | 1,750,000 | 15,000,000 | 8,734,103 | 6,265,897 |
| 11 | 12/10/15 | 1,250,000 | 15,000,000 | 11,734,103 | 3,265,897 |
| 12 | 01/06/16 | 1,402,000 | 15,000,000 | 13,234,103 | 1,765,897 |
| 14 | 07/26/16 | 1,500,000 | 15,000,000 | 13,640,426 | 1,359,574 |
| 15 | 10/13/16 | 1,500,000 | 15,000,000 | 13,768,146 | 1,231,854 |
| 15 | 12/28/16 | 1,500,000 | 15,000,000 | 14,599,640 | 400,360 |
| 17 | 05/12/17 | 1,450,000 | 15,000,000 | 14,254,730 | 745,270 |
| 21 | 02/12/18 | 950,000 | 15,000,000 | 12,461,200 | 2,538,800 |
| 21 | 02/23/18 | 2,000,000 | 15,000,000 | 13,772,104 | 1,227,896 |
| 21 | 03/27/18 | 1,750,000 | 15,000,000 | 13,634,847 | 1,365,153 |
| 22 | 04/12/18 | 2,500,000 | 15,000,000 | 14,803,209 | 196,791 |
| 22 | 05/04/18 | 1,750,000 | 15,000,000 | 14,941,088 | 58,912 |
| 22 | 05/30/18 | 1,800,000 | 15,000,000 | 14,958,247 | 41,753 |
| 22 | 06/22/18 | 2,100,000 | 15,000,000 | 14,909,279 | 90,721 |
| 23 | 07/31/18 | 800,000 | 15,000,000 | 14,936,135 | 63,865 |
| 23 | 08/24/18 | 550,000 | 15,000,000 | 14,384,866 | 615,134 |
| 23 | 09/06/18 | 1,200,000 | 15,000,000 | 14,893,397 | 106,603 |
| 23 | 09/13/18 | 1,850,000 | 15,000,000 | 14,951,953 | 48,047 |
| 23 | 09/28/18 | 1,905,000 | 15,000,000 | 14,911,249 | 88,751 |
| 24 | 10/10/18 | 900,000 | 15,000,000 | 14,975,742 | 24,258 |
| 24 | 11/30/18 | 2,000,000 | 15,000,000 | 14,666,367 | 333,633 |
| 24 | 12/19/18 | 2,250,000 | 15,000,000 | 14,941,584 | 58,416 |
| 25 | 01/25/19 | 1,300,000 | 15,000,000 | 14,896,106 | 103,894 |
| 25 | 02/22/19 | 475,000 | 15,000,000 | 14,163,252 | 836,748 |
| 25 | 03/14/19 | 650,000 | 15,000,000 | 13,789,520 | 1,210,480 |
| 26 | 04/17/19 | 1,500,000 | 15,000,000 | 13,814,406 | 1,185,594 |
| 26 | 05/10/19 | 1,500,000 | 15,000,000 | 14,415,250 | 584,750 |
| 26 | 05/24/19 | 1,800,000 | 15,000,000 | 14,371,630 | 628,370 |
| 27 | 07/03/19 | 550,000 | 15,000,000 | 14,260,110 | 739,890 |
| 27 | 07/12/19 | 800,000 | 15,000,000 | 14,179,677 | 820,323 |
| 28 | 11/05/19 | 1,000,000 | 15,000,000 | 15,000,000 | - |
| | **Total** | **$62,482,000** | | | |

### DANSKE'S RATIONALE FOR THE VARIOUS ADDRESSES ON THE DANSKE LOAN STATEMENTS AND TRIMONT STATEMENTS IS ILLOGICAL AND UNSUPPORTED

35. As stated in my September 9, 2020 Declaration, Danske addressed its Loan Statements for Facilities A, B, and C in care of (c/o) Danske, and the mailing address used appears to be for a Danske-owned location, rather than for DCSL. In response, Danske claims that, although

24

Trimont was servicing the loan, Danske created the statements for its own internal use and therefore addressed the statements as such. Danske claimed that "When Trimont no longer acted as servicer, Danske did not change the address on the statements because there was no need to change it." Daniel Supplemental Declaration at ¶ 24. However, as shown in the table below, the addresses on the Danske Loan Statements changed several times throughout the life of the loans.

| Table J | | |
|---|---|---|
| **Facility** | **Loan Statement No.** | **Addressed To** |
| A | 1 | DIAMANTE CABO SAN LUCAS, **REFER TO CAD NO KYC** C/O DANSKE BANK, ATTN: CREDIT, SHB, 75 KING WILLIAM STREET, LONDON, LONDON, EC4N 7DT, STORBRITANNIEN |
| | 2-4 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, ATTN: CREDIT, SHB, 75 KING WILLIAM STREET, LONDON, LONDON, EC4N 7DT, STORBRITANNIEN |
| | 5-6 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, ATTN: D. DANIEL, 75 KING WILLIAM STREET, LONDON, EC4N 7DT, STORBRITANNIEN |
| | 7 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, USA |
| | 8-23 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, USA |
| | 24-52 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, MEXICO |
| B | 1-10 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, ATTN: CREDIT, SHB, 75 KING WILLIAM STREET, LONDON, LONDON, EC4N 7DT, STORBRITANNIEN |
| | 11-14 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, ATTN: D. DANIEL, 75 KING WILLIAM STREET, LONDON, EC4N 7DT, STORBRITANNIEN |
| | 15 | CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, USA |
| | 16-30 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, USA |
| | 31-59 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT LONDON, MEXICO |
| C | 1-19 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, USA |
| | 20-28 | DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V., C/O DANSKE BANK, KING WILLIAM STREET, 75 EC4N 7DT, LONDON, MEXICO |

36. Danske claims that the borrower also received Danske's Loan Statements despite the Loan Statements allegedly being internal documents because the borrower was always aware of the balances on each loan facility. Danske further stated that it disclosed these balances through various means, including statements sent through email, funding memoranda that accompanied draws from the Facility C loan, and quarterly interest rate spreadsheets that provided the quarterly LIBOR rates for Facilities A and B. Daniel Supplemental Declaration at ¶ 24. However, Danske has not provided a complete set of the documents (e.g., statement transmittal emails, Facility C funding memoranda) to support the assertion that "at no time did the Borrower lack knowledge of what it owed." Danske Reply at p. 21.

### DANSKE'S CLAIM INCLUDES FEES OF AT LEAST $7,094,438

37. As stated in my September 9, 2020 Declaration, Danske's claim includes $7,094,438 in fees. This amount includes modification fees of at least $3,588,638 and additional fees of $3,505,800, as summarized below.

| Table K | | |
| --- | --- | --- |
| **Modification Fees** | | |
| **Agreement Date** | **Agreement** | **Amount** |
| March 6, 2009 | Amended and Restated Loan Agreement | $578,005[11] |
| January 28, 2010 | First Amendment to the Amended and Restated Loan Agreement | 1,419,343[12] |
| April 26, 2013 | Second Amended and Restated Loan Agreement | 501,014[13] |

---

[11] Danske did not specifically identify this amount as a transaction in its Loan Statements; however, the Borrower Closing Statement between DCSL and the Stewart Title Guaranty Company International Group (Stewart Title) included closing costs of $578,005. I was therefore unable to validate that Danske incurred these costs and that it included the amount in its claim.

[12] The *First Amendment to the Amended and Restated Loan Agreement* stated that the loan accounts would incur modification fees but did not identify the amount of the fees. However, the Facility B loan account included closing costs of $1,419,343 paid to Fidelity National Title on January 29, 2010.

[13] The *Second Amended and Restated Loan Agreement* identified closing costs of $428,375. Danske included this amount in its Loan Statements for Facility A, as well as another $72,639 for costs related to the execution of the agreement.

| Table K | | |
|---|---|---|
| **Modification Fees** | | |
| **Agreement Date** | **Agreement** | **Amount** |
| April 29, 2014 | Third Amended and Restated Loan Agreement | 215,276[14] |
| October 30, 2014 | First Amendment to the Third Amended and Restated Loan Agreement | Unknown[15] |
| September 8, 2018 | Second Amendment to Third Amended and Restated Loan Agreement | 875,000 |
| | **Total** | **$3,588,638** |

| | | **Additional Unsupported Fees** | | | |
|---|---|---|---|---|---|
| **Facility** | **Loan Number** | **Loan Statement No.** | **Date** | **Transaction Description** | **Transaction Value** |
| A | 90003664 | 1 | 11/19/08 | OUTWARD 4022-83245122794 | $20,015 |
| A | 90003664 | 23 | 09/13/17 | DIAMANTE COST REIMB | 59,993 |
| A | 90003664 | 25 | 11/07/17 | DIAMANTE-REIMB FEE | 59,993 |
| B | 90003761 | 2 | 04/27/09 | VALUATION FEE & LEGAL CHG CHEESWRIGHTS | 20,535 |
| B | 90003761 | 4 | 11/06/09 | TRAVEL COSTS | 18,702 |
| B | 90003761 | 5 | 12/18/09 | OUTWARD 4022-93517677258 | 68,484 |
| B | 90003761 | 6 | 01/29/10 | TRANSFER INTERNAL | 10,000 |
| C | 36030240 | 7 | 12/30/14 | RECOVERABLE EXPENSES | 1,381,919 |
| C | 36030240 | 19 | 09/13/17 | WIRING FEE REIMB | 7 |
| C | 36030240 | 20 | 12/29/17 | DIAMANTE PROF FEES | 120,000 |
| C | 36030240 | 23 | 09/28/18 | DIAMANTE - CABO FEES | 100,000 |
| C | 36030240 | 21 | 02/28/18 | DIAMANTE - PROF FEES | 100,000 |
| C | 36030240 | 22 | 04/30/18 | DIAMANTE COSTS | 100,000 |
| C | 36030240 | 23 | 07/31/18 | DIAMANTE FEE | 100,000 |
| C | 36030240 | 23 | 08/29/18 | DIAMANTE FEE PYT | 100,000 |
| C | 36030240 | 22 | 06/29/18 | DIAMANTE FEES | 100,000 |
| C | 36030240 | 24 | 11/01/18 | DIAMANTE FEES | 100,000 |
| C | 36030240 | 22 | 05/30/18 | DIAMANTE PROF FEE | 100,000 |
| C | 36030240 | 21 | 01/31/18 | PROFESSIONAL FEE CHG | 100,000 |
| C | 36030240 | 21 | 03/29/18 | PROFESSIONAL FEE CHG | 100,000 |
| C | 36030240 | 12 | 01/06/16 | TFR TO PROFESSIONAL FEES | 98,000 |
| C | 36030240 | 19 | 09/13/17 | DIAMANTE FEE REIMB | 60,000 |
| C | 36030240 | 25 | 03/28/18 | DIAMANTE FEE | 50,000 |
| C | 36030240 | 26 | 06/27/19 | DIAMANTE FEE | 50,000 |
| C | 36030240 | 27 | 08/02/19 | DIAMANTE FEE | 50,000 |
| C | 36030240 | 24 | 11/29/18 | DIAMANTE FEES | 50,000 |

[14] Danske did not specifically identify this amount as a transaction in its loan statements; however, Trimont identified it as a modification fee in the Trimont Settlement Statement (DANSKE_0013513 through DANSKE_0013514). I was therefore unable to validate that Danske included the amount in its claim. It is possible that Danske included the amount as an outward transaction but did not provide any identifying information with the transaction.

[15] The *First Amendment to the Third Amended and Restated Loan Agreement*, dated October 30, 2014, also stated that the loan accounts would incur modification fees as a result of the amendment but did not identify the amount of the fees. I was unable to identify these costs in the Facility A, B, or C loan statements.

| Table K | | | | | |
|---|---|---|---|---|---|
| **Modification Fees** | | | | | |
| **Agreement** | **Date** | | | **Agreement** | **Amount** |
| C | 36030240 | 25 | 02/27/19 | DIAMANTE FEES | 50,000 |
| C | 36030240 | 26 | 04/30/19 | DIAMANTE FEES | 50,000 |
| C | 36030240 | 24 | 12/27/18 | DIAMANTE PROF FEES | 50,000 |
| C | 36030240 | 26 | 06/04/19 | DIAMANTE PROF FEES | 50,000 |
| C | 36030240 | 27 | 08/30/19 | DIAMANTE FEE | 50,000 |
| C | 36030240 | 25 | 02/01/19 | PROFESSIONAL FEES | 50,000 |
| C | 36030240 | 11 | 11/06/15 | PROFESSIONAL FEES | 48,000 |
| C | 36030240 | 28 | 11/04/19 | DIAMANTE PROFESSIONAL FEES | 40,152 |
| | | | | **Total** | **$3,505,800** |

38. My September 9, 2020 Declaration did not opine on whether Danske is entitled to the fees; it only accumulated the amount of fees that Danske included in its claim and evaluated the documentation that Danske provided to support the claimed fees.

39. As stated in my September 9, 2020 Declaration, Danske had not provided support for the $3,505,800 of miscellaneous fees that it included in its claim. Danske continues to refuse to provide this information, as it believes the amount to be "[im]material."  Danske Reply at p. 22.

40. In fact, Danske acknowledges that it is in possession of documents that would support all of the fees, but that "[t]o produce documents relating to every fee charged by Danske over a nearly 12-year period would entail gathering and producing thousands of pages of documents." Daniel Supplemental Declaration at ¶ 25.

41. Lastly, Danske also alleged that it never charged DCSL the $875,000 modification fee identified in the *Second Amendment to the Third Amended and Restated Loan Agreement*. In fact, Danske's claim included this amount in its claim amount. See Danske's Motion for Summary Judgment filed June 19, 2020 at p. 14.

**DANSKE DID NOT ADDRESS THE $50 MILLION THAT WAS FUNDED AFTER THE GOVERNMENT FILED THE BILL OF PARTICULARS**

42. As stated in my September 9, 2020 Declaration, Danske allegedly funded $50,749,480 in advances on the Facility C loan account, after the Government filed a Bill of Particulars (BoP), which provided notice that the Government would be seeking forfeiture of DCSL, among other assets related to the Kenner matter. The table below accumulates the advances Danske made to DCSL subsequent to the date of the BoP.

| Facility | Loan Number | Statement Number | Entry Date | Value Date | Transaction Description | Amount |
|---|---|---|---|---|---|---|
| | | | | | Table L | |
| C | 36030240 | 10 | 09/15/15 | 09/15/15 | OUTWARD 4022-52583918698 | $1,750,000 |
| C | 36030240 | 11 | 10/02/15 | 10/02/15 | OUTWARD 4022-52754633438 | 1,750,000 |
| C | 36030240 | 11 | 11/06/15 | 11/06/15 | OUTWARD 4022-53105862840 | 1,394,488 |
| C | 36030240 | 11 | 12/10/15 | 12/10/15 | OUTWARD 3826-53447096398 | 1,250,000 |
| C | 36030240 | 12 | 01/06/16 | 01/06/16 | OUTWARD 4022-60068010908 | 1,402,000 |
| C | 36030240 | 14 | 07/26/16 | 07/26/16 | OUTWARD 4022-62085531840 | 1,500,000 |
| C | 36030240 | 15 | 10/13/16 | 10/13/16 | OUTWARD 4022-62878535812 | 1,500,000 |
| C | 36030240 | 15 | 12/28/16 | 12/28/16 | OUTWARD 4022-63631625114 | 1,500,000 |
| C | 36030240 | 16 | 03/17/17 | 03/17/17 | OUTWARD 4022-70764778798 | 1,431,894 |
| C | 36030240 | 17 | 05/12/17 | 05/12/17 | OUTWARD 4022-71327433154 | 1,450,000 |
| C | 36030240 | 21 | 02/12/18 | 02/12/18 | OUTWARD 4022-80431628978 | 950,000 |
| C | 36030240 | 21 | 02/23/18 | 02/23/18 | OUTWARD 4022-80542422980 | 2,000,000 |
| C | 36030240 | 21 | 03/27/18 | 03/27/18 | OUTWARD 4022-80864099028 | 1,750,000 |
| C | 36030240 | 22 | 04/12/18 | 04/12/18 | OUTWARD 4022-81024789440 | 2,500,000 |
| C | 36030240 | 22 | 05/04/18 | 05/04/18 | OUTWARD 4022-81246121754 | 1,750,000 |
| C | 36030240 | 22 | 05/30/18 | 05/30/18 | OUTWARD 4022-81507516988 | 1,800,000 |
| C | 36030240 | 22 | 06/22/18 | 06/22/18 | OUTWARD 4022-81738787708 | 2,100,000 |
| C | 36030240 | 23 | 07/31/18 | 07/31/18 | OUTWARD 4022-82120916452 | 800,000 |
| C | 36030240 | 23 | 08/24/18 | 08/24/18 | OUTWARD 4022-82362133682 | 550,000 |
| C | 36030240 | 23 | 09/06/18 | 09/06/18 | OUTWARD 4022-82492825476 | 1,200,000 |
| C | 36030240 | 23 | 09/13/18 | 09/13/18 | OUTWARD 4022-82563109794 | 1,850,000 |
| C | 36030240 | 23 | 09/28/18 | 09/28/18 | OUTWARD 4022-82714119646 | 1,905,000 |
| C | 36030240 | 24 | 10/10/18 | 10/10/18 | OUTWARD 4022-82834633272 | 900,000 |
| C | 36030240 | 24 | 11/16/18 | 11/16/18 | OUTWARD 4022-83206788520 | 1,941,098 |
| C | 36030240 | 24 | 11/30/18 | 11/30/18 | OUTWARD 4022-83347713714 | 2,000,000 |
| C | 36030240 | 24 | 12/19/18 | 12/19/18 | OUTWARD 4022-83538891662 | 2,250,000 |
| C | 36030240 | 25 | 01/25/19 | 01/25/19 | OUTWARD 4022-90250851766 | 1,300,000 |
| C | 36030240 | 25 | 02/22/19 | 02/22/19 | OUTWARD 3826-90532477592 | 475,000 |
| C | 36030240 | 25 | 03/14/19 | 03/14/19 | OUTWARD 4022-90733552344 | 650,000 |
| C | 36030240 | 26 | 04/17/19 | 04/17/19 | OUTWARD 4022-91075749852 | 1,500,000 |
| C | 36030240 | 26 | 05/10/19 | 05/10/19 | OUTWARD 3826-91307068190 | 1,500,000 |
| C | 36030240 | 26 | 05/24/19 | 05/24/19 | OUTWARD 4022-91448050600 | 1,800,000 |

| Table L | | | | | | |
|---|---|---|---|---|---|---|
| Facility | Loan Number | Statement Number | Entry Date | Value Date | Transaction Description | Amount |
| C | 36030240 | 27 | 07/03/19 | 07/03/19 | OUTWARD 4022-91840475862 | 550,000 |
| C | 36030240 | 27 | 07/12/19 | 07/12/19 | OUTWARD 4022-91930981954 | 800,000 |
| C | 36030240 | 28 | 11/05/19 | 11/05/19 | OUTWARD 4022-93098099318 | 1,000,000 |
| | | | | | Total | $50,749,480 |

### Danske Focused on the Alleged Concessions That Danske Made and Did Not Acknowledge the Profit that Danske Will Make Related to the DCSL Loan

43. Danske claims that it gave up its alleged right to the additional fee of $125,000,000, reduced the $49,000,000 to the amount calculated by the formula in the 2009 *Amended and Restated Loan Agreement*, which capped the amount at $45,000,000, and revised the interest rates applied to the loan facilities. Daniel Supplemental Declaration at ¶ 20. However, Danske's claim that the unpaid accrued interest was capped at $45,000,000 is not supported by the criteria included in the *Amended and Restated Loan Agreement*, dated March 6, 2009, which calculates the PPF as the **greater** of $45,000,000 or the amount calculated through the formula prescribed in the provision. It states:

> (a) *Borrower shall pay to Lender, in addition to interest and all other amounts due hereunder, the Profit Participation Fee. The Profit Participation Fee shall be fully earned on the Effective Date, and shall be payable, subject to the Order of Priority, (i) on the Maturity Date, (ii) the earlier repayment of the Debt by acceleration or otherwise; or (iii) such earlier date as Borrower shall elect. For purposes of this Agreement and the Notes, "Profit Participation Fee" shall mean* **the greater of (i) $45,000,000, or (ii) thirty percent (30%) of the amount that is equal to the difference between: (x) the Current Value as determined in accordance with Section 5.3(d) below, less (y) the amount that**

30

*is the lesser of (1) the outstanding principal balance of the Loan, or (2) the*

*original face amount of the Notes (i.e., $125,138,327.83).* [Emphasis added]

Therefore, the formula could calculate an amount that is greater than $45,000,000, which does

not support Danske's claim that the unpaid accrued interest was capped at $45,000,000.

44. Additionally, Danske does not account for the fact that the PPF was increased to $50,000,000

through the *Second Amended and Restated Loan Agreement* dated April 26, 2013, which was

$1,000,000 greater than the $49,000,000 of unpaid accrued interest as of March 2009.

45. Further, Danske did not evaluate the financial position it is currently in by taking over the

Lehman Brothers loan or the financial position it will be in if awarded the full claim amount. I

calculated the amount that Danske has funded, and provided documentation to support, to

DCSL, as compared to the amount it has received from DCSL. Danske has again increased its

claim in its Reply, and now claims $210,885,989[16] which includes an outstanding balance of

$101,981,433 for Facilities, A, B, and C. Danske based this amount on the total funds that

Lehman Brothers and Danske loaned to DCSL, or $205,774,680, and the payments that DCSL

made. However, although DCSL received a total of $205,774,680 in advances over the course

of the loan, $107,538,328 of this amount was funded by Lehman Brothers, rather than by

Danske. Danske has not provided documentation to support the amount it paid Lehman

Brothers, specific to this loan, and I was unable to fully validate the loan balance of

$107,538,328 through the Trimont Invoices as Trimont cannot provide all Trimont Invoices.

Specifically, Danske has only provided sufficient documentation to support $98,236,352 of the

funds that it advanced to DCSL after acquiring the loan from Leman Brothers (including

---

[16] Danske's claim has increased to $210,885,989 related to Interest and Fees since my September 9, 2020 Declaration.

$1,600,015 related to Facility A, $19,141,342 related to Facility B, and $77,494,995 related to Facility C).[17] Further, 98 percent of the total funds that Danske advanced, or $96,636,337, related to Facilities B and C, which were revolving accounts with credit limits of $18,000,000[18] and $15,000,000, respectively. As a result, although Danske advanced DCSL a total of $96,636,337 through Facilities B and C over the course of the loan, Danske was not able to advance DCSL more than $33,000,000 at one time through these revolving accounts. As a result, at any given time, Danske could not have a total unpaid balance of more than $34,600,015 related to Facilities A, B, and C ($33,000,000 plus the $1,600,015 that Danske advanced through Facility A).

46. As I noted in my September 9, 2020 Declaration, Danske has funded $98,236,352 through Facilities A, B, and C since it took over the loan, but DCSL has made $103,793,247 in principal payments to Danske. DCSL has therefore already paid Danske $5,556,895 more than the amount that Danske has advanced to DCSL, as shown in the table below.

| Table M | | | | |
|---|---|---|---|---|
| Description | Facility A | Facility B | Facility C | Total |
| Funds Danske Advanced to DCSL | $1,600,015 | $19,141,342 | $77,494,995 | $98,236,352 |
| Principal Payments Received | (26,799,972) | (2,678,391) | (74,314,884) | (103,793,247) |
| **Amount Paid in Excess of Funds Advanced and Supported by Danske**[19] | **($25,199,957)** | **$16,462,951** | **$3,180,111** | **($5,556,895)** |

---

[17] This amount only includes advances that Danske made to DCSL and does not include interest or fees.

[18] The Facility B loan revolving line of credit was initially established at $16,000,000, but was increased to $20,000,000 under the *First Amendment to the Amended and Restated Loan Agreement*, dated January 28, 2010. The *Second Amended and Restated Loan Agreement*, dated April 26, 2013, subsequently split the Facility B loan into two facilities: a replacement Facility B revolving loan of $18,000,000 and a new Facility C loan of $2,000,000.

[19] This calculation only accounts for advances that Danske made to DCSL and DCSL's principal payments. It does not account for capitalized interest, accrued interest, or fees.

47. If Danske is awarded the full amount of its claim, or $210,885,989, in addition to the
$103,793,247 in principal payments it has already received from DCSL, Danske will recover
$216,442,884, or 220 percent more than the amount that it has **supported** having **advanced** to
DCSL, as shown below.

| Table N | |
|---|---|
| **Description** | **Amount** |
| Principal Payments Received from DCSL | $103,793,247 |
| Claim Amount | 210,885,989 |
| **Total** | **$314,679,236** |
| Less: Funds That Danske Supported Having Advanced | (98,236,352) |
| **Amount Paid in Excess of Funds That Danske Supported Having Advanced** | **$216,442,884** |

Kellie Fedkenheuer, CPA/CFF, CFE
Cotton & Company LLP

Dated: October 23, 2020

33

## AFFIDAVIT ATTACHMENTS

**ATTACHMENT 1:** KELLIE FEDKENHEUER'S CURRICULUM VITAE

**ATTACHMENT 2:** DOCUMENTS RELIED UPON

**ATTACHMENT 3:** FACILITY B LOAN ADVANCES AND PRINCIPAL PAYMENTS INCLUDED IN THE TRIMONT

INVOICES BUT NOT IN THE DANSKE STATEMENTS

**ATTACHMENT 4:** DANSKE LOAN STATEMENT NO. 15 FOR FACILITY B

**ATTACHMENT 5:** SUMMARY OF DANSKE'S CLAIM OF $210,885,989

Cotton&
Company

ATTACHMENT 1

KELLIE FEDKENHEUER
*CPA/CFF, CFE*
**Partner**

*Years Experience*
Cotton & Company     10
(2010 – Present)

*Education*
B.B.A., Accounting Major,
Computer IS Minor, James Madison
University, Harrisonburg, Virginia,
May 2010

*Certification*
CPA: Virginia, 2011 (#39007)
CFE: 2015 (#636538)
CFF: 2018

*Affiliations*
VSCPA (Virginia Society of
Certified Public Accountants)
*2018 Top 5 CPAs Under 35
recipient*
AICPA (American Institute of
Certified Public Accountants)
ACFE (Association of Certified
Fraud Examiners)

*CPE*
2019:     38.0
2018:     58.5
2017:     39.5

*Security Clearance*
DSS Top Secret: June 18, 2019

Ms. Fedkenheuer has audit and accounting experience gained since 2010 with Cotton & Company LLP. She leads a number of the firm's litigation support and consulting engagements. Her professional experience is summarized below.

**FORENSIC ACCOUNTING AND LITIGATION SUPPORT SERVICES**

**Forensic Accounting Investigations.** Cotton & Company assists the Office of Inspector General, the United States Attorney's Offices, and other entities with criminal investigations by estimating damages related to fraud allegations. Ms. Fedkenheuer has participated in the following engagements:

- ***USAID OIG.*** Cotton & Company is currently retained by the USAID OIG to assist with an ongoing investigation related to a freight shipping company that was retained by USAID to deliver to food aid to various countries. Cotton & Company is estimating USAID's damages related to inflated rates invoiced by the carrier resulting from the carrier reporting costs to the government that were unrelated to food aid. Ms. Fedkenheuer has assisted with the review of costs reported by the carrier to the government in order to determine damages.

- ***U.S Attorneys' Office Eastern District of Pennsylvania.*** Cotton & Company is currently retained by the U.S Attorneys' Office (Eastern District of Pennsylvania) to assist with an ongoing investigation related to the overruns by a prime contractor on a contract to provide installation, procurement and engineering services on naval vessels. Ms. Fedkenheuer is leading the engagement to identify potential damages related to the allegations.

- ***Non-Profit Religious Organization.*** Cotton & Company was engaged by a non-profit religious organization to calculate the entity's damages resulting from an employee that was being investigated for the misappropriation of assets at one of the entity's locations. Ms. Fedkenheuer assisted with the development of a work plan to determine the extent of damages, performed activities and analyses to calculate damages, and assisted with the preparation of an expert report summarizing the results of Cotton & Company's evaluation. Cotton & Company presented the calculation

of damages to the State's Attorney's Office in order to assist the prosecution of the defendant. Cotton & Company also assisted the entity with assessing potential misappropriation of assets at a second location.

- *United States of America v. Derish Wolff.* Ms. Fedkenheuer provided analysis regarding accounting adjustments that a contractor made to its home office indirect cost that significantly impacted its indirect cost rates applied to projects related to reconstruction efforts in Iraq and Afghanistan. Cotton & Company provided an expert report and was prepared to provide testimony, but the case settled prior to the start of the trial.

**Litigation Support for U.S. Department of Justice (DOJ), Civil and Criminal Division.** Cotton & Company assists DOJ in resolving litigation disputes before the U.S. Federal Claims Court and other adjudicators. Ms. Fedkenheuer has participated in the following engagements:

- *San Carlos Irrigation Drainage District v. United States.* Cotton & Company is currently assisting DOJ with its evaluation of claims submitted by the San Carlos Irrigation Drainage District (SCIDD) against the San Carlos Irrigation Project (SCIP) for alleged overcharges, unauthorized charges for Operation & Maintenance (O&M) expenditures and unreasonable arbitrary estimated O&M expenditures that are included in the Districts water rate. Ms. Fedkenheuer is leading the engagement to evaluate the alleged damages to ensure the expenditures were incurred and appropriately allocated to the O&M rate.

- *Alcan Forest Products.* Cotton & Company was retained by DOJ to evaluate claims submitted by Alcan Forest Products, LP (Alcan) against the United States Forest Service (USFS), a branch of the Department of Agriculture, for damages resulting from the suspension of two timber sale contracts. Alcan's claim was made up of numerous claim elements, including lost profits, subcontractor costs, idle labor and equipment costs, relocation costs, and travel costs. Ms. Fedkenheuer led the engagement, which included assisting DOJ with discovery requests, analyzing Alcan's claim calculations and determining if the amounts were reasonable, allowable and allocable to the government suspension, preparing an expert report, assisting DOJ with depositions of fact and 30 (b) (6) witnesses, and assisting with settlement negotiations at mediation.

- *Shoshone-Bannock Tribes of the Forth Hall Reservation.* Cotton & Company assisted the Department of Justice (DOJ) with analyzing and evaluating the Shoshone-Bannock Tribes of the Forth Hall Reservation (Shoshone-Bannock) claim for unpaid pre-award and start-up costs. Ms. Fedkenheuer managed the engagement which reviewed Shoshone-Bannock's claim for unpaid pre-award and start-up costs, and assisted DOJ with settlement negotiations.

- *Navajo Health Foundation – Sage Memorial Hospital.* Cotton & Company assisted DOJ with the evaluation of claims submitted by Navajo Health Foundation – Sage Memorial Hospital (Sage Memorial Hospital) against the Department of Health and Human Services (HHS) for unpaid contract support costs. Ms. Fedkenheuer managed the analysis and assisted with the development of expert opinions and reports. In addition, Ms. Fedkenheuer assisted DOJ with deposition support by preparing for, reviewing, and attending depositions and assisted DOJ with settlement negotiations.

- *United States v. Ramah Navajo Chapter, et al.* Numerous American Indian tribes and tribal organizations brought suit against the Secretary of the Interior, seeking to collect contract support costs for activities that had to be carried on by a tribal organization as contractor to ensure compliance under the Indian Self-Determination and Education Assistance Act (ISDA). Ms.

Fedkenheuer assisted in calculating the total contract support cost that the Bureau of Indian Affairs (BIA) owed to tribes as a result of this lawsuit and assisted with settlement negotiations.

- **Meridian Engineering.** Ms. Fedkenheuer assisted with an engagement to provide expert reports on the reasonableness of claimed costs related to a channel construction project.

- **Always at Market.** Ms. Fedkenheuer assisted in providing analysis and expert opinions regarding a contractor's lost profits calculation submitted as a breach of contract claim.

- **Alutiiq International Corporation**. Ms. Fedkenheuer managed an engagement to provide analysis and expert reports on the reasonableness of claimed termination costs. Ms. Fedkenheuer performed claim analyses of varying forms, reviewed GSA audit reports, provided support for and attended depositions, and provided Federal Acquisition Regulation (FAR)/Termination for Convenience of the Government (T4C) research to DOJ.

- **Kellogg, Brown & Root.** Ms. Fedkenheuer assisted in the preparation of expert reports regarding a $42 million claim for costs initially determined to be unreasonable, incurred by a subcontractor to provide dining facility services in Iraq. Ms. Fedkenheuer assisted in determining if the contractor met its burden of establishing that the costs claimed were reasonable and allowable.

  Cotton & Company also provided an expert report involving a separate Request for Equitable Adjustment for $50 million in costs allegedly incurred by a subcontractor that provided living containers in Iraq. Ms. Fedkenheuer managed the engagement when Cotton & Company issued supplemental opinions in 2017. Cotton & Company provided hearing preparation support and expert witness testimony at the Armed Services Board of Contract Appeals hearing. The Judge ruled in favor of the U.S. government.

**Litigation Support for Other Federal, State, or Municipal Projects.** Cotton & Company has evaluated costs and entity procurement functions on various public projects. Many projects involve large construction contractors' claims for damages or other complaints. Ms. Fedkenheuer has participated in the following engagements:

- **Rutgers University.** Cotton & Company is currently assisting Rutgers University with a claim that resulted from the termination of the prime contractor on a construction contract at the university. Due to the termination of the contract, the surety was required to find a replacement contractor to complete the work. The surety has filed a claim against Rutgers University related the costs it incurred outside of the contract value. Ms. Fedkenheuer is assisting with the evaluation of the surety's claim to determine if the claim amount is reasonable, allowable and allocable to the project.

- **NVS Technologies, Inc.** Cotton & Company was retained by the Department of Homeland Security (DHS) to review claims submitted by NVS Technologies, Inc. resulting from the termination of NVS's research and development contract. NVS submitted claims against DHS related to the termination of the contract, and alleged bad faith on behalf of DHS. Ms. Fedkenheuer provided testimony at the Civilian Board of Contract Appeals (CBCA) regarding one of NVS's claims related to the bad faith allegations.

- **Virginia Department of Transportation (VDOT), Change Order Review.** Cotton & Company is currently retained by VDOT to review a change order that was awarded to a contractor on a road construction project. Ms. Fedkenheuer is reviewing the change order to ensure that the amount awarded was reasonable and properly awarded.

- ***Virginia Department of Transportation (VDOT), Work Order Reviews.*** Cotton & Company is currently retained by VDOT to review work orders that were awarded to contractors on various construction projects. Ms. Fedkenheuer is reviewing the work order requests submitted by contractors, as well as the amounts awarded by VDOT, to ensure that the amounts awarded were reasonable, allowable and allocable project costs that the contractors incurred, were not duplicative of the original scope of work, and were in compliance with the Federal Acquisition Regulation and the contract.

- ***Virginia Department of Transportation (VDOT), Claim Analysis.*** Cotton & Company is currently retained by VDOT to review a construction contractor's costs incurred under various work orders regarding the development of a beneficial transportation system in the Hampton Roads area of Virginia. The project was impacted by a 591-day delay period; as a result, the contractor requested additional funds resulting from the delay, as well as remobilization and escalation costs that allegedly resulted from the delay.

  Ms. Fedkenheuer reviewed the contractor's claimed costs under each work order to determine if the costs were reasonable, allocable, and allowable. Ms. Fedkenheuer provided her written findings to VDOT and assisted is currently supporting VDOT with the settlement of this claim.

- ***General Logistics Group, LTD.*** Ms. Fedkenheuer managed an engagement to assist the Army Contracting Command in analyzing a claim for customs taxes incurred to supply and furnish petroleum oil, and lubrication supplies to Afghanistan National Security Forces sites throughout the Government of the Islamic Republic of Afghanistan. Cotton & Company provided an expert report summarizing its opinions and provided expert witness testimony at the Armed Services Board of Contract Appeals hearing.

- ***Zalzar FZE.*** Cotton & Company assisted the Armed Services Board of Contract Appeals with the assessment of five claims that Zalzar FZE submitted against AAFES related to the termination of Zalzar's manpower services to AAFES facilities located on military installations in the Middle East. Ms. Fedkenheuer managed the analysis and assisted with the development of the expert opinions, as well as producing an expert report. In addition, Ms. Fedkenheuer provided support for opposing depositions and cross-examinations at the hearing.

- ***NASA Kennedy Space Center Vehicle Assembly Building.*** Cotton & Company assisted NASA in assessing change orders submitted by Hensel Phelps and its subcontractors to NASA for delays and inefficiencies related to the Vehicle Assembly Building construction project. Ms. Fedkenheuer led the review and analysis of the subcontractor claims and assisted NASA with settlement negotiations. NASA was unable to settle the change orders, which resulted in Hensel Phelps submitting a Request for Equitable Adjustment.

- ***Miami-Dade Airport Construction.*** Ms. Fedkenheuer assisted the airport in calculating and supporting its claims against an operations and maintenance contractor. She accumulated allowable and recoverable damages incurred by the airport.

**Commercial Litigation Support and Consulting Engagements.** Cotton & Company assists contractors with claim preparation and other support surrounding termination and equitable adjustment claims against the government. Ms. Fedkenheuer has participated in the following engagements:

- ***Charlotte Apartment Building Construction Dispute.*** Ms. Fedkenheuer is currently leading an engagement to evaluate various claims submitted by an Owner against the general contractor and multiple subcontractors, resulting from the construction of an apartment complex in Charlotte,

38

North Carolina. The claims submitted include lost profits, impaired value, carrying costs, lost returns, executive and project team time, legal expenses, reputational remediation expenses, and design professional expenses. Ms. Fedkenheuer has been designated as the expert on behalf of the architect and numerous subcontractors, to opine on the alleged damages.

- *Philadelphia Condo Building Construction Dispute.* Ms. Fedkenheuer lead an engagement to assist a construction contractor with evaluating claims submitted by the Owner related to alleged defective work on the construction of a luxury condo building in Philadelphia, PA. Ms. Fedkenheuer validated the contractor's GMP contract value and verified that the construction costs invoiced to the Owner were supported by accounting records and are reasonable, allowable and allocable to the project. Ms. Fedkenheuer assisted the contractor with settlement negotiations.

- *Alstom Transportation Inc.* Cotton & Company is currently assisting Alstom Transportation Inc. (Alstom) with claims related to its Acela Trainset Service Contract with the National Railroad Passenger Corporation. Ms. Fedkenheuer is leading the engagement that is currently assisting Alstom with settlement negotiations with Amtrak.

- *Toll Brothers.* Cotton & Company assisted Toll Brothers, a home construction company, in validating legal fees and other costs billed as a result of a settlement with more than 60 homeowners. Ms. Fedkenheuer managed the review of the legal fees, as well as other reimbursable costs incurred by the homeowners, and provided support at the arbitration hearing for one of the homeowners.

- *Midasco, LLC.* Cotton & Company performed an analysis of a claim submitted by the general contractor for the Silver Line project, Capital Rail Constructors (CRC), against Midasco LLC, a subcontractor on the project, for replacement costs it incurred after Midasco left the project. Ms. Fedkenheuer led the analysis of the claim by ensuring that the claimed replacement costs were reasonable, allowable and allocable to the project, were not duplicative of other costs, and were actually incurred by CRC. Cotton & Company provided an expert report with opinions and conclusions regarding the replacement costs and provided deposition testimony.

- *Miami Beach Hotel Lost Profits Claim.* Ms. Fedkenheuer managed the analysis and rebuttal of a lost profits analysis that was used to calculate damages resulting from extended renovations of a hotel in Miami Beach, Florida. Ms. Fedkenheuer reviewed financial statements, history and forecast reports, profit and loss reports, and other supporting documentation to determine the reasonableness of the hotel's lost profit calculation using AICPA guidelines.

  In addition, plaintiffs in this matter performed a reconciliation regarding the contract balances for each defendant. Cotton & Company was retained to rebut the reconciliation for one of the co-defendants in this matter. Ms. Fedkenheuer prepared an expert report and provided deposition testimony for this portion of the matter.

  Cotton & Company provided pre-trial support and was prepared to testify at trial; however, the case settled prior to the start of trial.

- *Ralph Puig Architect, LLC.* Ms. Fedkenheuer assisted with the calculation of lost profits related to a delay in construction of two car dealerships. Ms. Fedkenheuer reviewed financial statements, job costs, and supporting documentation to determine the lost profits using AICPA guidelines.

- *New York City Water Pollution Control Plant Construction.* The City of New York (City) contracted with a joint venture to furnish equipment and provide materials required for a water pollution control plant upgrade. The joint venture submitted a total cost claim in excess of $129

million asserting breach of contract, unreasonable delay, and interference and disruption of work. Cotton & Company was retained by the City of New York to provide damages analysis related to the claim. Ms. Fedkenheuer reviewed the claimed costs to determine the amount that was reasonable, allowable, and allocable to the project, and assisted the City with settlement negotiations.

- *Lifestar Response.* Ms. Fedkenheuer assisted with the preparation of a lost profits calculation for an ambulatory company who was damaged as a result of employees forming another ambulatory company, which breached the non-compete clause in the employment agreement.

- *Fyfe Co., LLC.* Ms. Fedkenheuer assisted with the calculation of lost profits related to a breach of a Private Label Agreement.

- *DEH Services, LLC.* Cotton & Company assisted DEH Services, LLC (DEH) in supporting costs incurred on a contract to provide fabrication services on a crane project. Ms. Fedkenheuer provided assistance in determining how invoices were prepared, determining what documentation was provided to support invoiced amounts, testing invoiced costs to supporting documentation, validating claimed labor and material costs, and determining the unpaid contract balance.

- *Eden Roc Hotel.* Cotton & Company assisted the hotel owner of Eden Roc LLP, who was in arbitration with the contractor Hensel Phelps Construction Co. The contractor claimed a lien on the hotel for construction costs incurred for the renovation and expansion of the hotel. Ms. Fedkenheuer assisted in providing analysis on the construction costs and preparing expert reports.

## FINANCIAL CONSULTING ENGAGEMENTS

**Virginia Department of Transportation, Assurance and Compliance Office.** Ms. Fedkenheuer participated on an engagement to conduct a review of audits over consulting engineering firms' indirect cost rates. The audits were performed by CPA firms in accordance with the American Association of State Highway and Transportation (AASHTO) *Uniform Audit and Accounting Guide for Audits of Architecture and Engineering Consulting Firms.* The Cotton & Company team reviewed the CPA firms' workpapers to ensure that they were in compliance with Generally Accepted Government Auditing Standards (GAGAS), Generally Accepted Auditing Standards (GAAS), Federal Acquisition Regulation (FAR) Part 31, AASHTO guidance, and other interpretive guidance. The team also determined whether the recommended indirect cost rates are in accordance with FAR.

## FINANCIAL AND PERFORMANCE AUDITS

**Smithsonian Institution Libraries (SIL).** Ms. Fedkenheuer managed a review of funds received and expenditures incurred by SIL on a grant from the Charities Aid Foundation (CAF). Ms. Fedkenheuer confirmed the receipt of CAF contributions and reviewed grant expenditures to evaluate whether the expenses appeared to have been incurred in accordance with the purpose of the grant awards, as well as with the charitable aims and objectives of SIL.

**Smithsonian National Museum of Natural History (NMNH).** Ms. Fedkenheuer managed a review of funds received and expenditures incurred by NMNH on a grant from the Charities Aid Foundation (CAF). Ms. Fedkenheuer confirmed the receipt of CAF contributions and reviewed grant expenditures to evaluate whether the expenses appeared to have been incurred in accordance with the purpose of the grant awards, as well as with the charitable aims and objectives of NMNH.

**Corporation for National and Community Service (CNCS), Office of Inspector General.** Ms. Fedkenheuer participated on an agreed-upon procedures review of federal assistance funds awarded by CNCS to an AmeriCorps grantee. She performed testing for allowability of expenses under CNCS programs and reviewed member files for eligibility.

## Testimony Under Oath

| | |
|---|---|
| 2018 | Hearing Testimony: NVS Technologies, Inc. v. Department of Homeland Security. **Civilian Board of Contract Appeals**. [Case No.: 4775] (At issue: Lost profits resulting from a contract termination.) |
| 2017 | Deposition Testimony: New National, LLC v. Reliance Construction Company, LLC, et al. **Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida**. [Case No.: 2015-006120-CA-01] (At issue: Contract Value and Payment Amounts related to the renovation of a Miami Beach hotel.) |

## Public Speaking Engagements

| Date | Topic | Audience |
|---|---|---|
| 2020 | The False Claims Act | Private Transportation Industry Professionals |
| 2019 | Virginia-Specific Ethics Course 2019 | General Dynamics |
| 2019 | Virginia-Specific Ethics Course 2019 | Grant Thornton (two separate sessions) |
| 2019 | Virginia CPA Ethics: 2018 Required Course | Virginia Society of CPAs |
| 2018 | Virginia CPA Ethics: 2018 Required Course | Virginia Society of CPAs (two separate sessions) |
| 2018 | Virginia CPA Ethics: 2018 Required Course | VSCPA's Knowledge Now Conference (two separate sessions) |
| 2018 | Virginia CPA Ethics: 2018 Required Course | General Dynamics |
| 2018 | Virginia CPA Ethics: 2018 Required Course | Capital One Financial Corporation |
| 2018 | Virginia CPA Ethics: 2018 Required Course | Financial Planning Association, Financial Planning Forum |
| 2018 | Virginia CPA Ethics: 2018 Required Course | VSCPA Professional Issues Updates Conference |
| 2018 | Virginia CPA Ethics: 2018 Required Course | Grant Thornton (four separate sessions) |
| 2017 | Virginia CPA Ethics: 2017 Required Course | VSCPA's Knowledge Now Conference |
| 2017 | Virginia CPA Ethics: 2017 Required Course | Grant Thornton (five separate sessions) |
| 2016 | Litigation 101 | Cotton & Company LLP |
| 2016 | CPA Ethics: 2016 Required Course | National Rural Utilities Cooperative Finance Corporation |
| 2016 | CPA Ethics: 2016 Required Course | Capital One Financial Corporation |
| 2016 | CPA Ethics: 2016 Required Course | Cotton & Company LLP |
| 2016 | CPA Ethics: 2016 Required Course | Grant Thornton LLP |
| 2015 | CPA Ethics: 2015 Required Course | Capital One Financial Corporation |
| 2015 | Professionalism & Communication | Cotton & Company LLP |
| 2014 | Federal Contract Auditing | Department of Labor, Office of Inspectors General |
| 2014 | Ethics 2014 - Your License Depends on It! | Capital One Financial Corporation |
| 2014 | Ethics 2014 - Your License Depends on It! | AOL |

| Date | Topic | Audience |
|------|-------|----------|
| 2014 | Ethics 2014 - Your License Depends on It! | Raffa, P.C. |
| 2014 | Ethics 2014 - Your License Depends on It! | Homes, Lowry, Horn & Johnson, Ltd. |
| 2014 | Ethics 2014 - Your License Depends on It! | Tate & Tryon |
| 2014 | Ethics 2014 - Your License Depends on It! | National Rural Utilities Cooperative Finance Corporation |
| 2014 | Ethics 2014 - Your License Depends on It! | NII Holdings, Inc. |
| 2013 | Using Your Expert Like an Expert | Virginia Society of CPAs Fraud Conference |

## ATTACHMENT 2: DOCUMENTS RELIED UPON

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| 1 | BILL OF PARTICULARS FILED AUGUST 20, 2015 | CASE NO. 2:13-CR-00607-JFB, DOCUMENT NO. 328 |
| 2 | DCSL PARTIES' LETTER RESPONSE TO GOVERNMENT'S REQUEST FOR PRELIMINARY ORDERS OF FORFEITURE FILED JANUARY 30, 2019 | CASE NO. 2:13-CR-00607-JFB-AYS, DOCUMENT NO. 611 |
| 3 | EXHIBIT A, JOWDY AFFIDAVIT, TO DCSL PARTIES' LETTER RESPONSE TO GOVERNMENT'S REQUEST FOR PRELIMINARY ORDERS OF FORFEITURE FILED JANUARY 30, 2019 | CASE NO. CASE 2:13-CR-00607-JFB-AYS, DOCUMENT NO. 611-1 |
| 4 | VERIFIED PETITION OF DANSKE BANK FILED MAY 6, 2020 | CASE NO. 2:13-CR-00607-JFB-AYS, DOCUMENT NO.'S 835 AND 835-1 |
| 5 | UNITED STATES' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO CLAIMANT, DATED JUNE 17, 2020 | |
| 6 | MOTION FOR SUMMARY JUDGEMENT, AND SUPPORTING DOCUMENTS AND EXHIBITS, FILED JUNE 19, 2020 | CASE NO. 2:13-CR-00607-JFB-AYS, DOCUMENT NO. 848 |
| 7 | DANSKE'S OBJECTION TO GOVERNMENT'S DISCOVERY DEMANDS LETTER AND EXHIBITS FILED JUNE 22, 2020 | CASE NO. 2:13-CR-00607-JFB-AYS, DOCUMENT NO.'S 863, 863-1 AND 863-2 |
| 8 | GOVERNMENT'S RESPONSE TO DANSKE'S DISCOVERY OBJECTIONS AND EXHIBITS, FILED JULY 3, 2020 | |
| 9 | DANSKE'S RESPONSE TO GOVERNMENT'S DISCOVERY DEMAND LETTER, FILED JULY 6, 2020 | CASE NO. 2:13-CR-00607-JFB-AYS, DOCUMENT NO. 872 |
| 10 | DANSKE BANK COUNTER SETTLEMENT PROPOSAL EMAIL DATED MARCH 30, 2020 | |
| 11 | DANSKE'S CLAIM AND CURRENT SETTLEMENT PROPOSAL LETTER AND EXHIBITS DATED APRIL 15, 2020 | |
| 12 | DANSKE BANK PRODUCTION LETTER AND INDEX OF DANSKE BANK PRODUCTION DATED JULY 2, 2020 | |
| 13 | DANSKE BANK PRODUCTION LETTER AND INDEX OF DANSKE BANK PRODUCTION DATED AUGUST 6, 2020 | |
| 14 | DANSKE BANK INDEX OF WIRE TRANSFERS TO TRIMONT IDENTIFIED BY GOVERNMENT DATED AUGUST 6, 2020 | |
| 15 | LOAN AGREEMENT DATED MARCH 10, 2006 | DANSKE_0010553 TO DANSKE_0010641 |
| 16 | PROMISSORY NOTE DATED MARCH 10, 2006 | DANSKE_0010658 TO DANSKE_0010666 |
| 17 | EXECUTED FUNDING MEMO DATED FEBRUARY 19, 2009 | DANSKE_0010807 TO DANSKE_0010808 |
| 18 | AMENDED AND RESTATED LOAN AGREEMENT DATED MARCH 6, 2009 | DANSKE_0013639 TO DANSKE_0013727 |
| 19 | NOTE SPLITTER AND MODIFICATION AGREEMENT DATED MARCH 6, 2009 | DANSKE_0013739 TO DANSKE_0013768 |

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| 20 | SUBSTITUTE PROMISSORY NOTE FOR FACILITY A DATED MARCH 6, 2009 | DANSKE_0013779 TO DANSKE_0013788 |
| 21 | SUBSTITUTE PROMISSORY NOTE FOR FACILITY B DATED MARCH 6, 2009 | DANSKE_0013795 TO DANSKE_0013804 |
| 22 | VENABLE CLOSING INSTRUCTION LETTER DATED MARCH 6, 2009 | DANSKE_0014600 TO DANSKE_0014682 |
| 23 | BORROWER CLOSING STATEMENT | DANSKE_0013615 TO DANSKE_0013616 |
| 24 | TERM SHEET DATED JANUARY 30, 2009 | DANSKE_0013621 TO DANSKE_0013638 |
| 25 | TERM SHEET COMPARISON FOR LOAN ASSUMPTION BETWEEN DIAMANTE CABO SAN LUCAS S. DE. R.L. DE C.V. AND DANSKE | DANSKE_0017141 TO DANSKE_0017143 |
| 26 | EXECUTED NON-BINDING TERM SHEET DATED DECEMBER 30, 2008 | DANSKE_0010783 TO DANSKE_0010799 |
| 27 | DISCUSSION PROPOSALS FOR THE DCSL RESORT PROPERTY PROFIT PARTICIPATION FEE | DANSKE_0017827 |
| 28 | FIRST AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT AND MODIFICATION AGREEMENT DATED JANUARY 28, 2010 | DANSKE_0010809 TO DANSKE_0010839 |
| 29 | SECOND AMENDED AND RESTATED LOAN AGREEMENT DATED APRIL 26, 2013 | DANSKE_0011080 TO DANSKE_0011546 |
| 30 | NOTE SPLITTER AND MODIFICATION AGREEMENT DATED APRIL 26, 2013 | DANSKE_0011683 TO DANSKE_0011740 |
| 31 | SECOND SUBSTITUTE PROMISSORY NOTE FOR FACILITY A DATED APRIL 26, 2013 | DANSKE_0011865 TO DANSKE_0011884 |
| 32 | THIRD SUBSTITUTE PROMISSORY NOTE FOR FACILITY B DATED APRIL 26, 2013 | DANSKE_0012068 TO DANSKE_0012087 |
| 33 | PROMISSORY NOTE FOR FACILITY C DATED APRIL 26, 2013 | DANSKE_0012098 TO DANSKE_0012117 |
| 34 | PROMISSORY NOTE FOR FACILITY D DATED APRIL 26, 2013 | DANSKE_0012118 TO DANSKE_0012137 |
| 35 | DISBURSEMENT STATEMENT PREPARED BY FNF TITLE INTERNATIONAL HOLDING COMPANY DATED APRIL 26, 2013 | DANSKE_0011963 TO DANSKE_0011969 |
| 36 | DISBURSEMENT STATEMENT RELATING TO APRIL 2013 LOAN MODIFICATION CLOSING [NATIVE FILE] | DANSKE_0017136 |
| 37 | DANSKE BANK FUNDING MEMO DATED APRIL 29, 2013 | DANSKE_0015736 TO DANSKE_0015738 |
| 38 | MANDATE AGREEMENT FOR FOUR BANORTE ACCOUNTS DATED MAY 29, 2013 | DANSKE_0010547 TO DANSKE_0010550 |
| 39 | DEPOSIT ACCOUNT CONTROL AGREEMENT DATED NOVEMBER 1, 2013 | DANSKE_0010934 TO DANSKE_0010944 |
| 40 | THIRD AMENDED AND RESTATED LOAN AGREEMENT DATED APRIL 29, 2014 | DANSKE_0012231 TO DANSKE_0012345 |

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| 41 | CONSOLIDATED, AMENDED, AND RESTATED PROMISSORY NOTE (REPLACEMENT NOTE C) DATED APRIL 29, 2014 | DANSKE_0013058 TO DANSKE_0013068 |
| 42 | SETTLEMENT STATEMENT DATED APRIL 25, 2014 | DANSKE_0013513 TO DANSKE_0013514 |
| 43 | CLOSING LETTER FROM VENABLE LLP DATED APRIL 28, 2014 | DANSKE_0013501 TO DANSKE_0013502 |
| 44 | FIRST AMENDMENT TO THIRD AMENDED AND RESTATED LOAN AGREEMENT AND MODIFICATION AGREEMENT DATED OCTOBER 30, 2014 | DANSKE_0013826 TO DANSKE_0013864 |
| 45 | SECOND AMENDMENT TO THIRD AMENDED AND RESTATED LOAN AGREEMENT AND MODIFICATION AGREEMENT DATED SEPTEMBER 8, 2018 | DANSKE_0011031 TO DANSKE_0011067 |
| 46 | SECOND LETTER EXTENSION AGREEMENT FOR EXTENSION OF MATURITY DATE, DATED JUNE 29, 2012 | DANSKE_0010886 TO DANSKE_0010898 |
| 47 | THIRD LETTER EXTENSION AGREEMENT FOR EXTENSION OF MATURITY DATE, DATED SEPTEMBER 28, 2012 | DANSKE_0010899 TO DANSKE_0010913 |
| 48 | FOURTH LETTER EXTENSION AGREEMENT FOR EXTENSION OF MATURITY DATE, DATED DECEMBER 31, 2012 | DANSKE_0010870 TO DANSKE_0010885 |
| 49 | FIFTH LETTER EXTENSION AGREEMENT FOR EXTENSION OF MATURITY DATE, DATED MARCH 31, 2013 | DANSKE_0010850 TO DANSKE_0010869 |
| 50 | DANSKE BANK STATEMENTS FOR FACILITY A (STATEMENT OF ACCOUNT NO.'S 1-52) | DANSKE_0015363 TO DANSKE_0015382; DANSKE_0015673 TO DANSKE_0015706 |
| 51 | TRIMONT SUMMARY STATEMENT FOR FACILITY A | DANSKE_0015604 TO DANSKE_0015618 |
| 52 | TRIMONT ACCOUNT INVOICES FOR FACILITY A | DANSKE_0015385; DANSKE_0015389; DANSKE_0015394 TO DANSKE_0015395; DANSKE_0015397 TO DANSKE_0015398; DANSKE_0015420; DANSKE_0015422; DANSKE_0015424; DANSKE_0015426; DANSKE_0015451; DANSKE_0015456 TO DANSKE_0015457; DANSKE_0015463; DANSKE_0015495; DANSKE_0015497; DANSKE_0015500; DANSKE_0015584; DANSKE_0015586 TO DANSKE_0015587; |

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| | | DANSKE_0015590; DANSKE_0015592; DANSKE_0015594; DANSKE_0015596; DANSKE_0015598; DANSKE_0015600; DANSKE_0015603; DANSKE_0016758; DANSKE_0016762 TO DANSKE_0016769; DANSKE_0016771 TO DANSKE_0016772; DANSKE_0016774; DANSKE_0016777 TO DANSKE_0016778; DANSKE_0016780 TO DANSKE_0016781; DANSKE_0016783; DANSKE_0016785 TO DANSKE_0016786; DANSKE_0016788; DANSKE_0016790 TO DANSKE_0016794; DANSKE_0016796 |
| 53 | DANSKE BANK STATEMENTS FOR FACILITY B (STATEMENT OF ACCOUNT NO.'S 1-59) | DANSKE_0015322 TO DANSKE_0015346; DANSKE_0015515 TO DANSKE_0015548 |
| 54 | TRIMONT SUMMARY STATEMENT FOR FACILITY B | DANSKE_0015502 TO DANSKE_0015514 |
| 55 | TRIMONT ACCOUNT INVOICES FOR FACILITY B | DANSKE_0015383 TO DANSKE_0015384; DANSKE_0015386 TO DANSKE_0015387; DANSKE_0015390 TO DANSKE_0015391; DANSKE_0015393; DANSKE_0015423; DANSKE_0015425; DANSKE_0015427; DANSKE_0015449 TO DANSKE_0015450; DANSKE_0015454 TO DANSKE_0015455; DANSKE_0015458 TO DANSKE_0015459; |

46

| | Document Description | Bates No. |
|---|---|---|
| | | DANSKE_0015465 to DANSKE_0015466; DANSKE_0015496; DANSKE_0015498 to DANSKE_0015499; DANSKE_0015501; DANSKE_0015579 to DANSKE_0015583; DANSKE_0015585; DANSKE_0015588 to DANSKE_0015589; DANSKE_0015597; DANSKE_0015599; DANSKE_0015601; DANSKE_0016744; DANSKE_0016759 to DANSKE_0016760 |
| 56 | Danske Bank Statements for Facility C (Statement of Account No.'s 1-28) | DANSKE_0015347 to DANSKE_0015362; DANSKE_0015549 to DANSKE_0015578 |
| 57 | Trimont Summary Statement for Facility C | DANSKE_0015670 to DANSKE_0015672 |
| 58 | Trimont Account Invoices for Facility C | DANSKE_0015388; DANSKE_0015392; DANSKE_0015396; DANSKE_0015399; DANSKE_0015453; DANSKE_0015460; DANSKE_0015464; DANSKE_0015467 to DANSKE_0015468; DANSKE_0015602; DANSKE_0015644; DANSKE_0016761 |
| 59 | Trimont Account Invoices for Facility D | DANSKE_0015452; DANSKE_0015461 to DANSKE_0015462; |
| 60 | Danske Bank Statements for Tax Reserve Account (Statement of Account No.'s 1-35) | DANSKE_0016566 to DANSKE_0016575 |
| 61 | Danske Bank Statements for Interest Reserve Account (Statement of Account No.'s 1-10) | DANSKE_0016576 to DANSKE_0016612 |
| 62 | Danske Bank Statements for Oceans Club (OCR) Reserve Account (Statement of Account No.'s 1-6) | DANSKE_0016613 to DANSKE_0016618 |
| 63 | Danske Bank Statements for Commission Reserve Account (Statement of Account No.'s 1-3) | DANSKE_0016619 to DANSKE_0016621 |

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| 64 | DANSKE BANK DECLARATION OF DEFAULT AND FORBEARANCE LETTER TO BORROWER DATED JANUARY 14, 2020 | DANSKE_0015713 TO DANSKE_0015718 |
| 65 | DEFAULT INTEREST STATEMENT FOR DIAMANTE LOAN FACILITIES DATED APRIL 13, 2020 | DANSKE_0015739 |
| 66 | DANSKE BANK WIRE TRANSFER CONFIRMATIONS FROM FACILITY A, B & C | DANSKE_0015707 TO DANSKE_0015712; DANSKE_0015883 TO DANSKE_0015955; DANSKE_0016888 |
| 67 | EXHIBITS A-K TO DANSKE'S DOCUMENT PRODUCTION DATED JUNE 8, 2020, CONTAINING DOCUMENTATION RELATED TO $14.8M IN INTERNAL TRANSFERS | DANSKE_0015736 TO DANSKE_0015980 |
| 68 | WACHOVIA STATEMENTS FOR DIAMANTE CABO SAN LUCAS S. DE. R.L. DE. C.V. ACCOUNT ENDING 4660 [REDACTED] | DANSKE_0017828 TO DANSKE_0017866 |
| 69 | BANORTE STATEMENTS FOR DIAMANTE CABO SAN LUCAS S. DE. R.L. DE. C.V. ACCOUNT ENDING 8946 [REDACTED] | DANSKE_0017867 TO DANSKE_0017870 |
| 70 | DIAMANTE CABO SAN LUCAS, LLC AND SUBSIDIARIES CONSOLIDATED FINANCIAL STATEMENTS FOR DECEMBER 31, 2016 AND 2015 | DANSKE_0015619 TO DANSKE_0015643 |
| 71 | DIAMANTE CABO SAN LUCAS, LLC AND SUBSIDIARIES CONSOLIDATED FINANCIAL STATEMENTS FOR DECEMBER 31, 2014 AND 2013 | DANSKE_0015645 TO DANSKE_0015669 |
| 72 | DIAMANTE CABO SAN LUCAS, LLC AND SUBSIDIARIES CONSOLIDATED FINANCIAL STATEMENTS FOR DECEMBER 31, 2013 AND 2012 | DANSKE_0015428 TO DANSKE_0015448 |
| 73 | DIAMANTE CABO SAN LUCAS, LLC AND SUBSIDIARIES CONSOLIDATED FINANCIAL STATEMENTS FOR DECEMBER 31, 2015 AND 2014 | DANSKE_0015469 TO DANSKE_0015494 |
| 74 | DIAMANTE CABO SAN LUCAS, LLC AND SUBSIDIARIES CONSOLIDATED FINANCIAL STATEMENTS FOR DECEMBER 31, 2012 AND 2011 | DANSKE_0015400 TO DANSKE_0015419 |
| 75 | DIAMANTE CABO SAN LUCAS S. DE R.L. DE C.V. OFFICERS CERTIFICATE AND EXHIBIT A, *ORGANIZATIONAL CHART*, TO OFFICERS CERTIFICATE DATED SEPTEMBER 8, 2018 | DANSKE_0011015 TO DANSKE_0011030 |
| 76 | SERVICING AND ASSET MANAGEMENT AGREEMENT AND EXHIBITS BETWEEN TRIMONT AND DANSKE BANK, DATED JUNE 11, 2009 | DANSKE_0016798 TO DANSKE_0016827 |
| 77 | DANSKE BANK'S CLAIM AND NOTICE OF DEFAULT AGAINST LEHMAN BROTHERS DATED SEPTEMBER 23, 2008 | DANSKE_0015740 TO DANSKE_0015882 |
| 78 | PROOF OF CLAIM OF DANSKE BANK A/S, LONDON BRANCH FILED SEPTEMBER 18, 2009 | |
| 79 | MONTEVERDE INC. SUMMARY APPRAISAL REPORT OF DCSL RESORT PROPERTY DATED FEBRUARY 8, 2008 | DANSKE_0017200 TO DANSKE_0017467 |

| | DOCUMENT DESCRIPTION | BATES NO. |
|---|---|---|
| 80 | LETTER FROM MONTEVERDE INC. TO DANSKE REGARDING VALUATION SERVICES AGREEMENT DATED NOVEMBER 12, 2008 | DANSKE_0017196 TO DANSKE_0017199 |
| 81 | LEHMAN AND DANSKE LOAN VALUE COMPARISONS FOR LOANS SUBJECT TO THE MRA DATED SEPTEMBER 23, 2008 | DANSKE_0017822 |
| 82 | COMMITTED REPURCHASE FACILITY AGREEMENT BETWEEN DANSKE BANK A/S AND LEHMAN BROTHERS DATED MARCH 17, 2005 | DANSKE_0015719 TO DANSKE_0015735 |
| 83 | SUMMARY APPRAISAL REPORT PREPARED BY BRUCE D GREENBERG, INC. DATED NOVEMBER 12, 2008 | DCSL04176 TO DCSL04528 |
| 84 | 2009 VALUATION SUMMARY REPORT PREPARED BY JONES LANG LASALLE | DANSKE_0016673 TO DANSKE_0016722 |
| 85 | VALUATION REPORT PREPARED BY CBRE, INC. DATED JANUARY 16, 2020 | |
| 86 | DCSL INTEREST ROLLOVER SPREADSHEET PREPARED BY DANSKE | DANSKE_0016723 |
| | SUPPLEMENTAL DOCUMENTS RELIED UPON | |
| 87 | DECLARATION OF KELLIE FEDKENHEUER DATED SEPTEMBER 9, 2020 | |
| 88 | REPLY IN SUPPORT OF DANSKE BANK A/S LONDON BRANCH'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO THE GOVERNMENT'S COUNTER MOTION FOR SUMMARY JUDGMENT FILED OCTOBER 9, 2020 | CASE 2:13-CR-00607-JFB-AYS, DOCUMENT 923 |
| 89 | SUPPLEMENTAL DECLARATION OF DAVID DANIEL AND EXHIBITS DATED OCTOBER 9, 2020 | CASE 2:13-CR-00607-JFB-AYS, DOCUMENT 925 |
| 90 | DECLARATION OF JOVAN ATKINSON AND EXHIBITS DATED OCTOBER 9, 2020 | CASE 2:13-CR-00607-JFB-AYS, DOCUMENT 928 |
| 91 | DECLARATION OF MICHAEL DELVIN AND EXHIBITS DATED OCTOBER 7, 2020 | CASE 2:13-CR-00607-JFB-AYS DOCUMENT 926 |
| 92 | DECLARATION OF XOCHITL S. STROHBEHN AND EXHIBITS DATED OCTOBER 9, 2020 | CASE 2:13-CR-00607-JFB-AYS, DOCUMENT 924 |
| 93 | DECLARATION OF JENNIFER BRITT AND EXHIBITS DATED OCTOBER 6, 2020 | CASE 2:13-CR-00607-JFB-AYS, DOCUMENT 927 |

**ATTACHMENT 3: FACILITY B LOAN ADVANCES AND PRINCIPAL PAYMENTS INCLUDED IN THE TRIMONT INVOICES BUT NOT THE DANSKE STATEMENTS**

| Facility | Loan Number | Transaction Date | Description | Transaction Value | Bates Number |
|---|---|---|---|---|---|
| B | 1133611 | 09/02/10 | Advance | $27,500 | DANSKE_0015588-89 |
| B | 1133611 | 09/16/10 | Advance | 27,500 | DANSKE_0015588-89 |
| B | 1133611 | 09/28/10 | Advance | 7,500 | DANSKE_0015588-89 |
| B | 1133611 | 10/08/10 | Advance | 80,000 | DANSKE_0015588-89 |
| B | 1133611 | 10/16/10 | Advance | 169,985 | DANSKE_0015588-89 |
| B | 1133611 | 10/25/10 | Advance | 1,210,000 | DANSKE_0015588-89 |
| B | 1133611 | 11/17/10 | Advance | 163,533 | DANSKE_0015588-89 |
| B | 1133611 | 11/22/10 | Advance | 45,000 | DANSKE_0015588-89 |
| B | 1133611 | 12/14/10 | Advance | 390,000 | DANSKE_0016744 |
| B | 1133611 | 12/28/10 | Advance | 459,400 | DANSKE_0016744 |
| B | 1133611 | 01/26/11 | Advance | 305,000 | DANSKE_0016744 |
| B | 1133611 | 02/11/11 | Advance | 288,712 | DANSKE_0016744 |
| B | 1133611 | 02/23/11 | Advance | 479,374 | DANSKE_0016744 |
| B | 1133611 | 03/16/11 | Advance | 302,000 | DANSKE_0015423 |
| B | 1133611 | 03/24/11 | Advance | 349,450 | DANSKE_0015423 |
| B | 1133611 | 04/13/11 | Advance | 265,000 | DANSKE_0015423 |
| B | 1133611 | 04/28/11 | Advance | 250,000 | DANSKE_0015423 |
| B | 1133611 | 05/03/11 | Advance | 109,400 | DANSKE_0015423 |
| B | 1133611 | 05/09/11 | Advance | 266,615 | DANSKE_0015423 |
| B | 1133611 | 05/11/11 | Advance | 271,000 | DANSKE_0015423 |
| B | 1133611 | 05/26/11 | Advance | 675,000 | DANSKE_0015423 |
| B | 1133611 | 06/06/11 | Advance | 309,906 | DANSKE_0015425 |
| B | 1133611 | 06/14/11 | Advance | 137,541 | DANSKE_0015425 |
| B | 1133611 | 06/27/11 | Advance | 515,000 | DANSKE_0015425 |
| B | 1133611 | 07/08/11 | Advance | 495,627 | DANSKE_0015425 |
| B | 1133611 | 07/14/11 | Advance | 199,970 | DANSKE_0015425 |
| B | 1133611 | 07/21/11 | Advance | 100,000 | DANSKE_0015425 |
| B | 1133611 | 07/27/11 | Advance | 705,570 | DANSKE_0015425 |
| B | 1133611 | 08/05/11 | Advance | 110,684 | DANSKE_0015425 |
| B | 1133611 | 08/12/11 | Advance | 88,000 | DANSKE_0015425 |
| B | 1133611 | 09/07/11 | Advance | 800,399 | DANSKE_0015427 |
| B | 1133611 | 10/19/11 | Advance | 729,082 | DANSKE_0015427 |
| B | 1133611 | 10/20/11 | Advance | 492,662 | DANSKE_0015427 |
| B | 1133611 | 11/16/11 | Advance | 171,815 | DANSKE_0015427 |
| B | 1133611 | 01/03/12 | Advance | 752,487 | DANSKE_0015496 |
| B | 1133611 | 01/20/12 | Advance | 524,970 | DANSKE_0015496 |
| B | 1133611 | 01/30/12 | Advance | 172,085 | DANSKE_0015496 |
| B | 1133611 | 02/10/12 | Advance | 815,000 | DANSKE_0015496 |
| B | 1133611 | 06/29/12 | Advance | 839,825 | DANSKE_0015498-99 |
| B | 1133611 | 07/05/12 | Advance | 412,010 | DANSKE_0015498-99 |
| B | 1133611 | 07/11/12 | Advance | 400,000 | DANSKE_0015498-99 |
| B | 1133611 | 07/11/12 | Advance | 1,249,891 | DANSKE_0015498-99 |
| B | 1133611 | 08/01/12 | Advance | 400,000 | DANSKE_0015498-99 |

| Facility | Loan Number | Transaction Date | Description | Transaction Value | Bates Number |
|---|---|---|---|---|---|
| B | 1133611 | 08/03/12 | Advance | 1,680,696 | DANSKE_0015498-99 |
| B | 1133611 | 08/14/12 | Advance | 859,000 | DANSKE_0015498-99 |
| B | 1133611 | 09/04/12 | Advance | 1,350,000 | DANSKE_0015498-99 |
| B | 1133611 | 09/13/12 | Advance | 1,568,520 | DANSKE_0015498-99 |
| B | 1133611 | 10/01/12 | Advance | 802,182 | DANSKE_0015501 |
| B | 1133611 | 10/04/12 | Advance | 340,000 | DANSKE_0015501 |
| B | 1133611 | 11/01/12 | Advance | 50,000 | DANSKE_0015501 |
| B | 1133611 | 12/03/12 | Advance | 50,000 | DANSKE_0015501 |
| B | 1133611 | 12/12/12 | Advance | 159,024 | DANSKE_0015501 |
| B | 1133611 | 12/28/12 | Advance | 23,750 | DANSKE_0015449-50 |
| B | 1133611 | 01/02/13 | Advance | 350,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/03/13 | Advance | 50,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/10/13 | Advance | 738,238 | DANSKE_0015449-50 |
| B | 1133611 | 01/31/13 | Advance | 350,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/31/13 | Advance | 50,000 | DANSKE_0015449-50 |
| B | 1133611 | 03/01/13 | Advance | 50,000 | DANSKE_0015449-50 |
| B | 1133611 | 03/04/13 | Advance | 186,605 | DANSKE_0015449-50 |
| B | 1133611 | 04/01/13 | Advance | 300,000 | DANSKE_0015454-55 |
| B | 1133611 | 04/01/13 | Advance | 50,000 | DANSKE_0015454-55 |
| | | | **Total Advances** | **$25,572,508** | |
| B | 1133611 | 06/20/11 | Principal Payment | $515,000 | DANSKE_0015425 |
| B | 1133611 | 06/20/11 | Principal Payment | 1,000,000 | DANSKE_0015425 |
| B | 1133611 | 07/08/11 | Principal Payment | 199,970 | DANSKE_0015425 |
| B | 1133611 | 07/20/11 | Principal Payment | 50,000 | DANSKE_0015425 |
| B | 1133611 | 07/21/11 | Principal Payment | 549,970 | DANSKE_0015425 |
| B | 1133611 | 07/21/11 | Principal Payment | 50,000 | DANSKE_0015425 |
| B | 1133611 | 07/22/11 | Principal Payment | 88,000 | DANSKE_0015425 |
| B | 1133611 | 07/25/11 | Principal Payment | 155,600 | DANSKE_0015425 |
| B | 1133611 | 08/24/11 | Principal Payment | 1,500,000 | DANSKE_0015425 |
| B | 1133611 | 08/24/11 | Principal Payment | 1,500,000 | DANSKE_0015427 |
| B | 1133611 | 09/07/11 | Principal Payment | 800,399 | DANSKE_0015427 |
| B | 1133611 | 09/08/11 | Principal Payment | 780,550 | DANSKE_0015427 |
| B | 1133611 | 10/11/11 | Principal Payment | 868,474 | DANSKE_0015427 |
| B | 1133611 | 10/11/11 | Principal Payment | 160,000 | DANSKE_0015427 |
| B | 1133611 | 10/13/11 | Principal Payment | 70,000 | DANSKE_0015427 |
| B | 1133611 | 11/17/11 | Principal Payment | 1,500,000 | DANSKE_0015427 |
| B | 1133611 | 01/13/12 | Principal Payment | 524,970 | DANSKE_0015496 |
| B | 1133611 | 02/07/12 | Principal Payment | 600,000 | DANSKE_0015496 |
| B | 1133611 | 02/09/12 | Principal Payment | 215,000 | DANSKE_0015496 |
| B | 1133611 | 02/16/12 | Principal Payment | 1,000,000 | DANSKE_0015496 |
| B | 1133611 | 03/01/12 | Principal Payment | 1,460,000 | DANSKE_0015496 |
| B | 1133611 | 06/28/12 | Principal Payment | 100,000 | DANSKE_0015498-99 |
| B | 1133611 | 07/11/12 | Principal Payment | 200,000 | DANSKE_0015498-99 |
| B | 1133611 | 07/31/12 | Principal Payment | 1,500,000 | DANSKE_0015498-99 |
| B | 1133611 | 08/09/12 | Principal Payment | 659,000 | DANSKE_0015498-99 |
| B | 1133611 | 08/30/12 | Principal Payment | 350,000 | DANSKE_0015498-99 |
| B | 1133611 | 09/11/12 | Principal Payment | 1,275,000 | DANSKE_0015498-99 |

| Facility | Loan Number | Transaction Date | Description | Transaction Value | Bates Number |
|---|---|---|---|---|---|
| B | 1133611 | 09/28/12 | Principal Payment | 940,000 | DANSKE_0015501 |
| B | 1133611 | 11/30/12 | Principal Payment | 50,000 | DANSKE_0015501 |
| B | 1133611 | 12/11/12 | Principal Payment | 159,024 | DANSKE_0015501 |
| B | 1133611 | 12/31/12 | Principal Payment | 350,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/02/13 | Principal Payment | 50,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/07/13 | Principal Payment | 740,000 | DANSKE_0015449-50 |
| B | 1133611 | 01/18/13 | Principal Payment | 36,819 | DANSKE_0015449-50 |
| B | 1133611 | 01/30/13 | Principal Payment | 400,000 | DANSKE_0015449-50 |
| B | 1133611 | 02/13/13 | Principal Payment | 200,000 | DANSKE_0015449-50 |
| B | 1133611 | 03/29/13 | Principal Payment | 350,000 | DANSKE_0015454-55 |
| B | 1133611 | 04/26/13 | Principal Payment | 2,546,072 | DANSKE_0015454-55 |
| | | | **Total Principal Payments** | **$23,493,848** | |

## ATTACHMENT 4: DANSKE LOAN STATEMENT NO. 15 FOR FACILITY B

**Danske** Bank

4036

CABO SAN LUCAS S. DE. R.L. DE C.V.
C/O DANSKE BANK
KING WILLIAM STREET, 75
EC4N 7DT, LONDON
USA

Danske Bank
DBM London Institutional Clients U
75 King William Street
London EC4N 7DT
Telephone +44 0207-410 8000
SWIFT-BIC: DABAGB2L
www.danskebank.com/ci

S

31 December 2012

Sort Code 301281
Account 90003761
Account Currency USD

**Foreign Currency Account - Statement of Account No. 15**
**IBAN: GB21 DABA 3012 8190 0037 61**
**Period this statement relates to: 31.12.2011 to 31.12.2012**

| Entry date | Value date | | Credited + Debited - | Credit balance + Debit balance - |
|---|---|---|---|---|
| | | Balance as at 30.12.2011 | | 18, 000, 000. 00 - |

Balance as at 31. 12. 2012          :     18, 000, 000. 00 -

The following conditions apply on the date of this statement.

Credit interest                  :     0. 000% per annum

If a currency ceases to be convertible and/or transferable, and consequently cannot be traded freely in the international foreign exchange market, deposits in that currency will no longer be at your disposal unless previously agreed with the bank. Under such circumstances, credits granted in that currency are at your disposal only according to arrangement with the bank.

Regulated by the Financial Services Authority Limited for the conduct of investment business in the UK Member of the London Stock Exchange

Registered Branch in England and Wales Company No.FC011846 Branch No.BR000080

Danske Bank A/S Incorporated in Denmark CVR No.61 12 62 28 - Copenhagen

DANSKE_0015332

53

### ATTACHMENT 5: SUMMARY OF DANSKE'S CLAIM OF $210,885,989

| Description | Facility A | | | Facility B | | | Facility C | | | Total | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Amount | Paid | Balance | Amount | Paid | Balance | Amount | Paid | Balance | Amount | Paid | Balance |
| Principal | $109,138,343 | ($26,799,972) | $82,338,371 | $19,141,342 | ($2,678,391) | $16,462,951 | $77,494,995 | ($74,314,884) | $3,180,111 | $205,774,680 | ($103,793,247) | $101,981,433 |
| Capitalized Interest | 13,860,658 | - | 13,860,658 | - | - | - | - | - | - | 13,860,658 | - | 13,860,658 |
| Accrued Interest | 1,690,048 | (1,690,048) | - | 11,686,579 | (11,686,579) | - | 18,528,536 | (10,856,725) | 7,671,811 | 31,905,163 | (24,233,352) | 7,671,811 |
| Fees | 641,015 | (440,044) | 200,971 | 1,537,063 | (14) | 1,537,049 | 3,248,078 | - | 3,248,078 | 5,426,156 | (440,058) | 4,986,098 |
| **Facilities A, B, and C Claim** | **$125,330,064** | **($28,930,064)** | **$96,400,000** | **$32,364,984** | **($14,364,984)** | **$18,000,000** | **$99,271,609** | **($85,171,609)** | **$14,100,000** | **$256,966,657** | **($128,466,657)** | **$128,500,000** |
| Profit Participation Fee | | | | | | | | | | | | 50,000,000 |
| Interest and Fees | | | | | | | | | | | | 32,385,989 |
| **Total Claim** | | | | | | | | | | | | **$210,885,989** |