

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

October 28, 2020

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

  Re:  **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

  We write on behalf of Danske Bank A/S London Branch ("Danske") to address two points raised in the government's reply brief in advance of the hearing later today. The government submitted the Affidavit of Matthew Galioto and addresses a statement made in the Supplemental Declaration of David Daniel. Mr. Galioto attests that Mr. Daniel's statement that "during a meeting on November 25, 2015, the government commented that Danske would of course keep lending in order to protect its interest" is false. The government also challenges the veracity of Mr. Daniel's statement and statements in Danske's brief. *See* Government Reply at 11, 12. Mr. Galioto's and the government's recollection are incorrect as Mr. Galioto attests that the "only meeting that Mr. Daniel personally attended was a meeting held on November 18, 2015." Mr. Daniel, however, attended two meetings with the government—one on November 18, 2015 and a second one on September 14, 2017. If Mr. Galioto and the government cannot recall that Mr. Daniel attended a meeting with the government in 2017, it calls into question their recollection of what was actually said in the first meeting, almost two years earlier, in 2015.

  The fact of the matter is that the government has always expressed incredulity that Danske would stop funding the Resort Property because the government's tactics and position made it so that Danske simply had no other choice to continue funding. The government does not dispute that it advised Danske that it could not enforce its foreclosure remedy under the loan agreement. Also, as we have advised the Court before, prior to the Court's forfeiture order, the government consistently advised Danske that it was premature to discuss Danske's claim until the Court issued a preliminary order of forfeiture. Therefore, Danske's choice was either to advance the needed capital pursuant to the terms of Facility C or starve the Resort Property of needed capital—which would have led to the Resort Property's demise and the loss of value, which could arguably be a

violation of the protective order. Post-Conviction Protective Order, Dkt. No. 33 at 4 (Restraining all persons including financial institutions "from attempting or completing any action that would affect the availability or value of said Subject Property, including but not limited to selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, or in any way diminishing the value of, all or any part of their interest, direct or indirect, in the Subject Property"). Especially, given that under Facility C, Danske was required to fund unless there was an event of default. Kostolampros Decl. Ex. 58 (Third Amended & Restated Loan Agreement) at §§ 4.1 ("Lender agrees to lend to Borrower the Loan, for the purposes of and subject to all of the terms, provisions, and conditions contained in this Agreement."), 7.1(a) ("Lender's obligation to fund the Replacement Facility C draw requests and thereafter to make any further disbursements of Replacement Facility C, is conditioned upon Borrower's satisfaction of the following conditions precedent in form and substance satisfactory to Lender. (a) There shall exist no Default or Event of Default.").

Second, the government argues and cites to mostly inapplicable cases that Danske did not provide "valuable consideration." Government Reply at 8. The government also argues that Danske misses the point as to its judicial estoppel argument claiming that by choosing a distressed value in assessing the amounts still owed to it by Lehman in the bankruptcy proceeding, Danske cannot now reverse course and claim the full $157 million on the initial Lehman loan. *See* Government Reply at 10. The court's decision in *In re Dreier*, 951 F.Supp.2d 582 (S.D.N.Y. 2013) is instructive on both points. There, a Victim Group challenged the claim of a petitioner arguing that $1.65 million was not adequate consideration for an interest in artwork valued at $33 million. *Id.* at 590. The Court held the following—

> The Second Circuit has held that the question of whether a petitioner is a bona fide purchaser for value . . . . is a question appropriately determined under state law . . . and under here-relevant New York law, "a person gives value for rights if the person acquires them . . . in return for any consideration sufficient to support a simple contract," *N.Y. U.C.C.* § 1-201(44) . . . .
>
> The Victim Group also objects that Dreier's $1.65 million fee is grossly inadequate "value" for the $33 million of Artwork Heathfield now seeks to recover. But the Victim Group cites no authority for the proposition that the "value" required to be given under Section 853(n)(6) must be equivalent, fair, proportional, or the like. In fact, "[i]t is an elementary and oft quoted principle" of contract law that courts "will not inquire into the adequacy of consideration as long as the consideration is otherwise valid or sufficient to support a promise." 3 Williston on Contracts § 7:21 (4th ed.). Moreover, even assuming that fair consideration were required, Elliott did not, as the Victim Group suggests, promise to pay Dreier $1.65 million for $33 million in artwork -- rather, it promised to pay $1.65 million for a security interest in $33 million in artwork. Receipt of that security interest, moreover, was highly contingent, since the security interest stood as a third-level backstop behind notes issued by a large real estate company and a personal guarantee by its wealthy principal. "It is well established . . . that a contingent [interest] cannot be valued at its potential face amount; rather, 'it is necessary to discount it by the probability that the contingency will occur and the [interest] become real.'" *In re Chase &*

*Sanborn Corp.*, 904 F.2d 588, 595 (11th Cir. 1990) (quoting *In re Xonics Photochemical Inc.*, 841 F.2d 198, 200 (7th Cir. 1988) (Posner, J.)).

*Id.* Such is the case here. Danske purchased the DCSL loan secured by the underlying property—a fact evidenced by the terms of the MRA, the Bank of New York trust receipt, and by the settlement agreement and order as to Danske's deficiency claim in the bankruptcy proceeding. Danske simply would never have paid for the secured interest in the DCSL loan if its claim were limited to the amount Danske valued the DCSL loan in the Lehman bankruptcy. The government's argument would essentially make every secured interest by a lender like Danske in a forfeiture proceeding limited to what the lender valued the loan at the time it acquired its interest (or at any time) and that is simply not the law.

We thank the Court for its consideration of this submission.

Respectfully,

*/s/ George Kostolampros*

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn

cc: All parties of record via ECF