Michael K. Jeanes, Clerk of Court
\*\*\* Electronically Filed \*\*\*
07/24/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                 07/22/2015

                                                                   CLERK OF THE COURT
HONORABLE JOHN R. HANNAH JR                                             W. Tenoever
                                                                          Deputy


PHILIP A KENNER

v.

JOHN KAISER, et al.                                   MELISSA S LAVONIER



                                                      THOMAS M BAKER



### UNDER ADVISEMENT RULING

      This matter originated when Philip A. Kenner, Trust Beneficiary of The Shangri-La Trust 1999, filed a pro se complaint on September 5, 2012, against John Kaiser, Trustee of The Shangri-La Trust 1999; John Kaiser, a married man; Elizabeth Kaiser, a married woman; and, John and Jane Does I-VII. Plaintiff Kenner alleged that he had a certain undivided equitable interest in the property at issue and was entitled to receive monies from the sale of the property.

      Defendants John Kaiser, Trustee of The Shangri-La Trust 1999; John Kaiser; and, Elizabeth Kaiser filed their answer to Plaintiff's Complaint on October 23, 2012. The Defendants denied the allegations within Plaintiff's complaint and did not file a counterclaim nor seek any other affirmative relief.

      On or about September 7, 2012, Plaintiff Philip Kenner filed a <u>lis pendens</u> on the real property located at 8224 North Golf Drive, Paradise Valley, Arizona 85253 (generally referred to herein simply as "the property") with the Maricopa County Recorder's Office (see electronic court records (ECR) of the Superior Court, County of Maricopa, filing date April 10, 2013 (part 5 of 7)). As a result of Plaintiff Kenner's filing of this <u>lis pendens</u>, John R. Kaiser and Bryan Berard filed a pleading entitled "Special Action Counterclaim" wherein they claimed Plaintiff Kenner wrongfully filed the <u>lis pendens</u>, sought a court order to have the <u>lis pendens</u> released,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                                   07/22/2015

and, sought a preliminary injunction against Plaintiff Kenner from recording any "further liens or encumbrances against the real property". No other claims or relief were pled (ECR 4/10/2013, part 1 of 7).

On April 12, 2013, the law firm of Rowley Chapman & Barney, LTD entered its appearance on behalf of Plaintiff Kenner (ECR 4/12/13). An evidentiary hearing was set for April 18, 2013 on the Defendants' Application for Preliminary Injunction (ECR 4/15/2013). On the date and time set for the evidentiary hearing, the parties entered into a stipulation wherein Plaintiff Kenner would release the lis pendens and the proceeds from the sale of the house would be held in a trust account established by the Defendants'/Special Action Counterclaimants' attorney and would not be released without consent of all parties or orders from the Court (ECR 4/24/13).

On May 30, 2013, Plaintiff Kenner filed a Motion to Amend his complaint seeking to add Bryan Berard as a party defendant, as well as to add and/or modify various causes of action against the Defendants (ECR 5/30/2013). The Honorable Alfred M. Fenzel granted Plaintiff Kenner's Motion to Amend by ruling dated August 27, 2013. Plaintiff Kenner's amended complaint was formally filed on August 30, 2013 (ECR).

On September 13, 2013, the Interveners filed their Motion to Intervene (ECR). Plaintiff Kenner filed a Notice of Joinder on October 8, 2013 (ECR). The Defendants objected to the Interveners' Motion to Intervene (ECR 9/26/13). On October 2, 2014, Interveners filed their Reply to Defendants' Response to Motion to Intervene and at the same time, attached a copy of the Interveners' Proposed First Amended Complaint for the Court's consideration. The Court granted the Interveners' Motion to Intervene by minute entry ruling filed December 19, 2013 (ECR). On January 21, 2014, prior to the Interveners formally filing their First Amended Complaint, Defendants/Counterclaimants filed an answer to the Interveners' First Amended Complaint (ECR). Defendants/Counterclaimants did not assert any claims against the Interveners nor did they cross-claim against Philip Kenner. Interveners formally filed their First Amended Complaint on May 23, 2014. By agreement of the parties, the Defendants/Counterclaimants previously filed answer on January 21, 2014 did not need to be refiled.

On June 12, 2014, Plaintiff Philip Kenner and Defendants John Kaiser, Trustee of the Shangri-La Trust 1999, John Kaiser, Elizabeth Kaiser and Bryan Berard stipulated to dismissing with prejudice all claims against one another. The stipulation states that "The Kaiser Defendants shall not use Plaintiff's agreement to dismiss his complaint with prejudice as a defense of collateral estoppel or res judicata as to the Interveners' action" (ECR).

Numerous motions and pleadings have been filed and briefed throughout these proceedings. This matter was set for a jury trial during a telephonic status conference held on

Docket Code 926                                   Form V000A                                      Page 2

*Kenner was forced to DISMISS the AZ case versus Berard and Kaiser due to Kenner's EDNY incarceration -- specifically at the hands of Galioto, Berard and Kaiser (see NY Daily News article -- Nov. 13, 2013)*

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                                         07/22/2015

December 1, 2015. Subsequently, the Parties waived the jury and proceeded to try the matter to the Court beginning on May 26, 2015 and concluding on May 28, 2015. The Court now makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. Philip Kenner and John Kaiser had known each other for a long time and engaged over the years in a number of business transactions.

2. In 2006-2007 Philip Kenner and John Kaiser purchased a residential property located in Hermosa Beach, California with the intent to renovate the property and to sell it for a profit. Kenner and Kaiser formed a partnership to accomplish the purchase, renovations and sale of the property. No written partnership agreement was created. Kenner obtained a mortgage for the Hermosa Beach property in his name, and he and Kaiser made the monthly payments and renovations to the property. Kenner and Kaiser agreed that they would split the profits 50/50 from the sale of the property. Upon selling the property in 2007, both Kenner and Kaiser netted a profit of approximately 1.5 million dollars.

3. Shortly after completion of the Hermosa Beach property, Kenner and Kaiser decided to purchase another residential property, renovate it and split the profits as they had done in Hermosa Beach, California. Kenner located a distressed property in Paradise Valley, Arizona, specifically, 8224 North Golf Drive, Paradise Valley, Arizona 85253.  Kenner and Kaiser agreed that this property would be their next project. Kenner and Kaiser agreed to the same terms of purchasing the property, renovating the property and splitting the profits 50/50 upon its sale. No written partnership agreement existed.

4. Kenner approached Bryan Berard, an individual he had known for a number of years, regarding this venture. Berard is a former National Hockey league player and Philip Kenner was his former financial advisor. Kenner and Berard reached an agreement wherein Berard would take out a mortgage on the property and in return receive $100,000.00 upon the sale of the property. Kenner and Berard did not have a written agreement.

5. An escrow account for the property was opened in Arizona by First American Title Insurance Company. Kenner deposited $590,000.00 into the escrow account as evidenced by the First American Title Insurance Company records (exhibit 39) and the First American Title Insurance Company wiring instruction records (exhibit 40).

6. Title to the property was initially taken by "Bryan Berard, a single man and Philip A. Kenner, an unmarried man, the grantee" (exhibit 25).  A Deed of Trust was completed and recorded with the Maricopa County Recorder's Office stating that the "'Borrower' is Bryan

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                      07/22/2015

Berard, a single person and Philip A. Kenner, an unmarried man" (exhibit 26). Both the Acceptance of Joint Tenancy (exhibit 25) and the Deed of Trust (exhibit 26) were signed by Kenner. Kenner signed Berard's name "by Philip A. Kenner as attorney in fact."

    7. Though the record owners of the property were Kenner and Berard, the true beneficial owners were Kenner and Kaiser. The property was the only significant asset of their partnership.

    8. In 2008, Kaiser approached Kenner and stated that he wanted Kenner to put the property in his (Kaiser's) name because Kenner was being sued by various National Hockey League players. Kaiser stated he wanted to protect his interest in the property. On or about September 23, 2008, the Shangri-La Trust 1999 Revocable Trust Agreement was executed by and between Kenner, Berard and Kaiser (exhibit 38). Kaiser was designated as the trustee of the trust and its sole initial beneficiary.

    9. Kaiser denies signing the Shangri-La Trust 1999 Revocable Trust Agreement, but the document was notarized by a local Maricopa County Notary Public (exhibit 38). Kaiser did not subpoena the notary or obtain his notary records. Kaiser admits that he subsequently executed documents as the trustee of the Shangri-La Trust 1999. In addition, he was aware of other documents that purportedly had been signed by him in that capacity. He did not object when he became aware of those documents, or say or do anything that suggested the documents were fraudulent or unauthorized.

[Margin annotation: Kaiser claimed that his signature was forged on the Trust doc until he was confronted by subsequent docs with his signature as Trustee...]

    10. On October 3, 2008 and October 10, 2008, a Quit Claim deed was executed by Berard and Kenner conveying the property to Kaiser as trustee and beneficiary of the Shangri-La Trust 1999 (exhibit 27). Berard admits to signing this Quit Claim deed and conveying his entire interest to John R. Kaiser, Trustee of the Shangri-La Trust 1999. Following this conveyance, Kaiser "as trustee and beneficiary" was holding the property on behalf of the partnership of himself and Kenner. Kenner and Kaiser continued to be the beneficial owners of the property.

    11. Renovations continued on the property in 2008 and 2009, when Kenner contacted Berard and requested a $50,000.00 loan in order to continue with the renovations. Berard testified that Kenner told him the monies were needed to continue with the renovations at the property. On August 26, 2009, Berard wire transferred $50,000.00 to a Bank of America bank account designated by Kenner and controlled by Kenner (exhibit 10, on page 2 of 6, for the statement period 08/22/09 – 09/22/09). No promissory note or other documentation was created or exists in reference to this loan.

    12. At all times relevant to this case, Kenner lived within the Phoenix Metro area. Kaiser and Berard lived out-of-state.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                          07/22/2015

      13. Kenner approached Intervener Tyson Nash in August or September of 2009 and requested to borrow $100,000.00 for the purpose of continuing with the renovations at the property. Nash is also a former player in the National Hockey League and Philip Kenner was also his former financial advisor. Nash knew Berard from his hockey career. Nash visited the property and saw the renovations that were on-going. Nash met Kaiser at the property at which time Kaiser shook his hand and thanked him for the loan. The Court found Nash's testimony to be credible.

      14. Nash received a Promissory Note documenting the $100,000.00 loan and the terms of repayment (exhibit 7). The Promissory Note contains the following language:

> Tyson and Kathy Nash – ". . . the principal sum of $100,000.00 within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. Interest will be paid at an annual rate of 15% paid in full per the terms of the note. . . . The entire outstanding principal balance of this Note shall be due and payable in full within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. . . . This Note is secured by 8224 North Golf Drive, Paradise Valley, AZ, as described. The principle [sic] and interest due on the loan will be payable immediately following the repayment of the first loan on the property due to the mortgage bank."

      15. Nash provided banking records showing that on September 10, 2009, $100,000.00 was wire transferred from his Charles Schwab Family Trust account to the same Bank of America account that Berard had wire transferred his $50,000.00 to on August 26, 2009 (exhibit 9, at page 7 and exhibit 10, on page 2 of 6, for the statement period 08/22/09 – 09/22/09 and exhibit 11).

      16. Kaiser admits to signing the Nash Promissory Note in his capacity as the Trustee of the Shangri-La Trust 1999. This Promissory Note, as well as all of the others, mistakenly refers to the "Shangri-La Trust 2002." Kaiser testified that he was the trustee of the Shangri-La Trust 1999 and not the Shangri-La Trust 2002. No evidence was presented that a Shangri-La Trust 2002 ever existed. The Court finds that the reference to "Shangri-La Trust 2002" was simply an error in drafting the Promissory Notes and that the Parties' intent was for the Notes to state 'Shangri-La Trust 1999."

      17. Kenner also approached intervener Darryl Sydor in September of 2009 and requested to borrow $100,000.00 for the purpose of continuing with the renovations at the property. Sydor is also a former player in the National Hockey League and Philip Kenner was also his former financial advisor. Sydor knew Berard from his hockey career, as well as the other Interveners.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                                           07/22/2015

   18. Sydor received a Promissory Note documenting the $100,000.00 loan and the terms of repayment (exhibit 15). The Promissory Note contains the following language:

> Darryl Sydor – ". . . the principal sum of $100,000.00 within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. Interest will be paid at an annual rate of 15% paid in full per the terms of the note. . . . The entire outstanding principal balance of this Note shall be due and payable in full within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. . . . This Note is secured by 8224 North Golf Drive, Paradise Valley, AZ, as described. The principle [sic] and interest due on the loan will be payable immediately following the repayment of the first loan on the property due to the mortgage bank."

   19. Sydor provided an excerpt of his and his wife's Bank of America statement for the period of 11/18/09-12/18/09 (exhibits 16 and 17). These bank records show that on December 2, 2009, Sydor wire transferred $100,000.00. Sydor testified that this transfer was to an account designated by Kenner and for the purpose of continuing with the renovations at the property.

   20. Kaiser denies signing the Sydor Promissory Note. However, Sydor provided an email dated November 23, 2009, from Kenner to Sydor with a copy sent to Kaiser (exhibit 61). Kaiser admitted that his email address was correctly shown on the email and he testified that Kenner would routinely forward emails to him (Kaiser deposition transcript read in court, exhibit 45, at page 112, lines 21-24; page 113, lines 5- page 114, line 1).

[Annotation: Kaiser claimed the Sydor Promissory Note was a forgery...]

   21. Exhibit 61 states the following:

   Darryl:
   Please keep the attached note for your files during the sale of the Shangri-La home in AZ.
   Please note that the original note was signed on Oct 5, 2009, but the actual transaction occurred today, November 23, 2009. If you would like a new note to reflect that actual start date, I will get one from John. Otherwise, please accept this email as an acceptable change for the Promissory Note beginning date.
   Thanks. Phil

   22. Attached to exhibit 61 is a fully executed copy of the Sydor Promissory Note (exhibit 15) bearing John R. Kaiser's signature. Kaiser took no action in response to receiving exhibit 61. This leads the Court to conclude that Kaiser either was untruthful in his denial that he signed the Sydor note or authorized Kenner to sign on his behalf.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                              07/22/2015

23. Kenner also approached intervener William Ranford in May of 2010 and requested to borrow $100,000.00 for the purpose of continuing with the renovations at the property. Ranford is also a former player in the National Hockey League and Philip Kenner was also his former financial advisor. Ranford knew Berard from his hockey career, as well as the other Interveners.

24. Ranford received a Promissory Note documenting the $100,000.00 loan and the terms of repayment (exhibit 12). The Promissory Note contains the following language:

> William Ranford – ". . . the principal sum of $100,000.00 within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. Interest will be paid at an annual rate of 15% paid in full per the terms of the note. . . . The entire outstanding principal balance of this Note shall be due and payable in full within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. . . . This Note is secured by 8224 North Golf Drive, Paradise Valley, AZ, as described. The principle [sic] and interest due on the loan will be payable immediately following the repayment of the first loan on the property due to the mortgage bank."

25. Kaiser denied that he signed the promissory note to intervener Ranford, implying that he was a victim of fraud by Kenner. He testified that he signed a different note to Ranford, at Kenner's request, but that Kenner later told him the transaction had never been funded because Ranford backed out.

26. The Court generally did not find Kaiser's testimony credible. Some of the reasons are stated elsewhere in these Findings. In addition, Kaiser's testimony in general was frequently self-contradictory and self-serving, his demeanor at times suggested a lack of veracity, and he had an obvious motive for denying responsibility for the loans.

27. The Court finds it more likely than not that either Kaiser was untruthful in his denial that he signed the Ranford note, or Kaiser authorized Kenner to sign the Ranford note. In any event, it appeared to Ranford that Kenner was carrying on the partnership business in the ordinary course on behalf of himself and Kaiser. In his dealings with Ranford, Kenner specifically described his arrangement with Kaiser as a "partnership." If Kenner in fact had no authority to act on behalf of the partnership in his dealings with Ranford, Ranford did not know or have reason to know that.

28. Ranford testified that the amount he loaned, in response to Kenner's request for renovation monies, was actually $130,000.00. Ranford provided his Charles Schwab banking records (exhibit 13) showing that two wire transfers were made on May 19, 2010. The first wire transfer was in the amount of $100,000.00. The second wire transfer was in the amount of

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                  07/22/2015


$30,000.00. Ranford could not recall whether he requested or received a second promissory note for the additional $30,000 that he loaned to Kenner and Kaiser. Nevertheless, the timing and circumstances of the transaction indicate that the additional $30,000 was loaned on the same terms as set forth in the $100,000 promissory note (exhibit 12).

29. Intervener Dimitri Khristich was not present at the time of trial. The Parties agreed to submit his deposition to the Court in lieu of his trial testimony. The Court also received into evidence exhibit 18, which is a Promissory Note bearing the signature of John R. Kaiser in the amount of $30,000.00. The Promissory Note contains the following language:

> Dimitri Khristich – ". . . the principal sum of $30,000.00 within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. Interest will be paid at an annual rate of 10% paid in full per the terms of the note. . . . The entire outstanding principal balance of this Note shall be due and payable in full within 7 days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ. . . . This Note is secured by 8224 North Golf Drive, Paradise Valley, AZ, as described. The principle [sic] and interest due on the loan will be payable immediately following the repayment of the first loan on the property due to the mortgage bank."

The date of the Khristich Promissory Note is April 2010.

30. Khristich provided Charles Schwab banking records for the period of April 1, 2010 through April 30, 2010, showing that on April 20, 2010, a wire transfer occurred in the amount of $30,000.00 (exhibit 19).

31. Bank of America records of Kenner show that on April 20, 2010, $30,000.00 was received in the same bank account controlled by Kenner and utilized by Berard and Nash (exhibit 20 and exhibit 10, at page 2 of 5; for the statement period 03/24/10 – 04/22/10 and exhibit 11).

32. Kaiser denied that he signed the promissory note to intervener Khristich, implying that he was a victim of fraud by Kenner.

33. The Court finds it more likely than not that either Kaiser was untruthful in his denial that he signed the Khristich note, or Kaiser authorized Kenner to sign the Khristich note. In any event, it appeared to Khristich that Kenner was carrying on the partnership business in the ordinary course on behalf of himself and Kaiser. If Kenner in fact had no authority to act on behalf of the partnership in his dealings with Khristich, Khristich did not know or have reason to know that.

Case 2:13-cr-00607-JFB-AYS   Document 959-31   Filed 11/24/20   32205

[Annotation: Berard could not produce bank records or otherwise to substantiate a $160,000 investment/loan for the project...]

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                    07/22/2015

34. Berard testified that in the early part of 2010, Kenner made a second request for an additional $160,000.00 in order to continue with the renovations at the property. Berard could not provide a specific date for this second loan, nor did he provide any documentation. No promissory note or other documentation was created or exists in reference to this loan.

35. The time period for the Interveners' loans and the stated purpose for those loans are consistent with loan requests described by Berard. Berard testified that in both August of 2009 and again in the early part of 2010, Kenner was soliciting monies for the continuation of the renovations so the property could be listed and sold.

36. The property was originally listed for sale with MLS in 2010 (exhibit 41). The sale price is listed as $5,900,000.00. The original purchase price was $1,650,000.00 (exhibit 39). The property was relisted several times over the years until it eventually sold on June 10, 2013 (exhibit 36) for a purchase price believed to be a little over $2,000,000.00 (exhibit 41).

37. In January of 2011, a notice of trustee sale was recorded with the Maricopa County Recorder's Office stating that the loan on the property at 8224 North Golf Drive was in default and that a trustee sale would occur on April 25, 2011 (exhibit 28).

38. Berard and Kaiser both testified that their friendship with Kenner began to seriously deteriorate in the latter half of 2010 and as a result of receiving notice of the trustee sale.

39. At some point after receiving the notice of trustee sale, Kaiser and Berard agreed to become 50/50 partners and to essentially cut Kenner out of the property. Beginning in 2011, Berard made loan payments and paid taxes on the property in order to keep it from being foreclosed, thereby preserving the opportunity to sell the property and to recoup some of his and Kaiser's money. Kaiser may have made some payments as well.

40. On March 9, 2012, Kaiser as Trustee of the Shangri-La Trust 1999 executed a Joint Tenancy Deed and conveyed the property to "John R. Kaiser, a married man, as his sole and separate property and Bryan Berard, an unmarried man" (exhibit 29). 40. On June 10, 2013, John R. Kaiser, Trustee of the Shangri-La Trust 1999, executed a Special Warranty Deed wherein he once again conveyed the property to "John R. Kaiser, a married man as his sole and separate property and Bryan Berard, an unmarried man as joint tenants w/ the right of survivorship" (exhibit 35).

[Annotation: Fraudulent conveyance of title cutting Kenner's equity out of the property...]

41. Berard testified that the purpose of the conveyance of the property was to enable him to obtain insurance. The Court finds, however, that the conveyance was intended, in substantial part at least, to protect the property and its proceeds from Kenner's creditors generally and the creditors of the Kenner/Kaiser partnership specifically. Kaiser knew that Kenner had been

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                                 07/22/2015

obtaining funds for the renovation of the property by borrowing money in return for notes secured by the property. Kaiser had actual knowledge of the notes held by interveners Nash and Sydor, at least. Several weeks before the conveyance, Nash had threatened to sue Kaiser on Nash's note (exhibit 22). Neither Kaiser nor Berard made any attempt to notify the Interveners that the property had been conveyed. The conveyance was by Kaiser as Trustee of the Trust to himself and Berard for no consideration.

42. On or about September 5, 2012, Kenner filed his pro se complaint in this matter. Two days later on September 7, 2012, Kenner records a lis pendens on the property. Various pleadings followed as set forth above in the Procedural History.

43. The Warranty Deed conveying the property from Kaiser and Berard to the third-party purchaser is dated June 10, 2013. By agreement of the parties, the sale proceeds are being held in an escrow account pending further orders of his Court.

44. None of the Interveners' Promissory Notes have been repaid to date. Interveners Nash previously settled their claim with the Defendants and were not parties in this matter at the time of trial.

45. Berard testified as follows:

Q. (By Mr. Baker): Tell me why you believe each of my clients is not entitled to monies that are being held in escrow right now?
A. (By Mr. Berard): Phil Kenner misused their funds.
Q. Is that it?
A. That's it.
Q. No other reason?
A. Phil Kenner misused their funds.

(Exhibit 47 [Deposition of Bryan Berard, at page 152, lines 12-19])

## CONCLUSIONS OF LAW

46. When Sydor, Ranford and Khristich made the loans evidenced by the promissory notes, Kenner and Kaiser were partners in the business of buying, renovating and re-selling for profit the real property located at 8224 North Golf Drive, Paradise Valley, Arizona 85253. A.R.S. § 29-1012(A).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                              07/22/2015

47. Kenner and Kaiser were both agents of the partnership for purposes of the partnership's business. Each one's acts, including the execution of the notes in the ordinary course of the partnership business, bound the partnership. A.R.S § 29-1021.

48. Kenner had actual and/or apparent authority to solicit monies from the Interveners during the time frame of August 2009 through May 2010, to fund ongoing renovations on the property. Kenner also had actual and/or apparent authority to incur obligations on behalf of the partnership of himself and Kaiser. He also had actual and/or apparent authority to give the Interveners a security interest in the property, even though the property was held in the name of Kaiser "as trustee and beneficiary" of the "Shangri-La Trust 1999."

49. Kaiser and Berard ratified allegedly forged signatures by their signing of subsequent documents which relied upon the allegedly forged documents. Kaiser alleges that his signature was forged to exhibit 38, the Shangri-La Trust 1999. However, Kaiser then executed a number of recorded documents as the Trustee of the Shangri-La Trust 1999. Kaiser could not have done this without the Shangri-La Trust 1999 agreement and his appointment as the Trustee. Berard testified that his signature on the Power of Attorney – Special (exhibit 25) and Deed of Trust (exhibit 26) were forged. However, Berard signed a number of recorded documents as a grantor, including the Quit Claim Deed transferring the property to John R. Kaiser, Trustee of the Shangri-La Trust 1999 (exhibit 27).

50. Sydor, Ranford and Khristich had valid and enforceable promissory notes for the amounts and on the terms set forth within their respective notes. Each note was "secured by 8224 North Golf Drive, Paradise Valley, AZ as described. The principal and interest due on the loan" was "payable immediately following the repayment of the first loan on the property due to the mortgage bank" "within seven (7) days of the sale of the house located at 8224 North Golf Drive, Paradise Valley, AZ." Though Ranford did not produce a promissory note for the additional $30,000 that he loaned, that loan was made on the same terms as the loan evidenced by his promissory note, including interest rate, repayment term and security for the repayment obligation.

51. Because Kenner received the funds from Sydor, Ranford and Khristich while acting with actual or apparent authority of the partnership, the partnership is liable for the obligations to Sydor, Ranford and Khristich even if Kenner misappropriated the money. A.R.S. § 29-1025(B).

52. Kaiser is jointly and severally liable, with Kenner, for all obligations of the partnership. A.R.S. § 29-1026

53. The Shangri-La Trust 1999 Revocable Trust Agreement creates a revocable trust, with John Kaiser as Trustee. Pursuant to Arizona law, "[d]uring the lifetime of the settlor, the

[Annotation: Berard claimed FORGERY -- with Lanie Donlan as the signed witness -- echoing the Kaiser fraudulent claims in the AZ case and the EDNY...]

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576                                                               07/22/2015

property of a revocable trust is subject to claims of the settlor's creditors." A.R.S. § 14–10505. "It is ... universally recognized that one cannot settle upon himself a spendthrift or other protective trust." Arizona Bank v. Morris, 6 Ariz. App. 566, 569, 435 P.2d 73, 76 (1967); see also Restatement (Second) of Trusts § 156(1) (1957) ("Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his ... creditors can reach his interest.")

In this case, there is no distinction between John Kaiser and his trust. A revocable trust has no distinction when the settlor and the Trustee are one and the same. In Cadle Co. II. v. Harvey, 83 Cal.App.4th 927, 932, 100 Cal.Rptr.2d 150 (2000), the California appellate court applied the same statutory protection to a revocable trust's settlor as to the Trustee. There is no legal distinction for a creditor's purpose. Cadle was approved by Arizona in Parkway Bank and Trust Co. v. Zivkovic, 232 Ariz. 286, 304 P.3d 1109, ¶17 and n.4 (App. 2013). Arizona has codified this proposition in A.R.S. § 14-10505.

54. The nomenclature of the "Shangri-La Trust 2002" on the Interveners' Promissory Notes was a mistake and should have read "Shangri-La Trust 1999." Interveners are entitled to reform the Promissory Notes to remove the reference to the Shangri-La Trust 2002 and replace such language, in its place and stead, with Shangri-La Trust 1999 (count 3 of Interveners' Complaint).

55. Kaiser and Kenner breached the express written terms of the Interveners' Promissory Notes, and the terms of the additional $30,000 loan from Ranford, by failing to pay the Interveners in full after the first loan on the property was paid, within seven days of the sale of the property.

56. Interveners Sydor and Khristich are entitled to judgment against Kaiser in the amount of the face value of their individual Promissory Notes, with interest accruing at the rate set forth in their individual Promissory Notes from June 17, 2013. Intervener Ranford is entitled to judgment against Kaiser in the amount of the face value of his individual Promissory Note plus $30,000.00, with interest accruing at the rate set forth in his individual Promissory Note from June 17, 2013.

57. The March 9, 2012, conveyance of the property by John R. Kaiser as Trustee of the Shangri-La Trust 1999 to "John R. Kaiser, a married man, as his sole and separate property and Bryan Berard, an unmarried man" (exhibit 29) was a fraudulent transfer. A.R.S. §44-1004(A). The Interveners are therefore entitled to avoid the transfer or obligation to the extent necessary to satisfy their claims, and to enforce the claim against the proceeds of the sale of the property without regard to any interest that Kaiser or Berard may have acquired as a result of the conveyance.

Docket Code 926                              Form V000A                                Page 12

[Annotation: This is the same CRIME that Kenner sued Kaiser & Berard for in Sag Harbor (2013) after the same theft of the Kenner-controlled LLC by fabricated & FORGED docs...]

[Annotation: Kaiser & Berard were GUILTY of a fraudulent transfer (THEFT) of the title away from Kenner -- but no criminal FRAUD charges by Galioto...]

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-055576 07/22/2015

58. Kaiser breached the covenant of good faith and fair dealing by transferring the real property from the Shangri-La Trust 1999 to himself and Berard without notice to the Interveners, without consideration, and without protecting the Interveners' rights pursuant to the Promissory Notes.

59. The Interveners are not entitled to a judgment against Berard for breach of contract or breach of the duty of good faith and fair dealing. Berard was not a partner in the business relating to the Golf Drive property; and the Interveners did not have a contractual relationship with Berard. Their remedy runs against Berard only to the extent that their claims to the proceeds of the sale of the property have priority over Berard's ownership interest and any claims that Berard may have as a creditor of Kaiser and Kenner.

60. The defendants are not entitled to equitable remedies based on unjust enrichment, "implied contract" or promissory estoppel, because they have an adequate remedy at law. In addition, it is not clear how much of the Interveners' money actually went to fund the property renovations as opposed to having been stolen by Kenner.

61. Count 7 of the Interveners' Complaint is moot due to the Defendants/Respondents admission that John R. Kaiser signed the Promissory Notes as Trustee of the Shangri-La Trust 1999 and that the Shangri-La Trust 2002 never existed. The Defendants/Respondents are not using the Shangri-La Trust 2002 language as a defense in this matter.

62. The monies presently being held in an escrow account by the Defendants' law firm are proceeds from the sale of the property. The Interveners' claims to those funds have priority over those of the Defendants/Respondents and/or any other creditors who failed to appear in these proceedings.

63. Interveners are entitled to an award of costs pursuant to A.R.S. section 12-341 and reasonable attorneys' fees pursuant to A.R.S. section 12-341.01.

**ORDERS**

IT IS ORDERED that, not more than twenty days from the date on which the Clerk transmits this Order to the parties, Interveners shall file a proposed form of judgment consistent with the foregoing findings of fact and conclusions of law, and an application for attorneys' fees and costs as appropriate. Defendants shall have fifteen days from that filing in which to file written objections to the proposed form of judgment and a written response to the application for fees and costs. The matter will then be under advisement.

FILED: Exhibit Worksheet