**PHILIP A. KENNER**
10705 East Cactus Road
Scottsdale, Arizona 85259

August 1, 2006

Mr. John Kaiser  Mr. Christopher A. Manfredi
7 Holly Lane  3 Barker Drive
Setauket, NY 11733  Stony Brook, New York 11790

Gentlemen:

As you know, I have sent a nearly identical version of this letter to the investors in Little Isle IV, LLC to tell them about the very positive developments concerning our Hawaiian real estate investments. I think that it is appropriate that I make the same disclosures to you, even though you are both intimately aware of these developments, having taken leading roles in their progress, and that I also ask for your acknowledgement of, and consent to, these transactions.

As you may know, Little Isle IV and companies controlled by each of us have interests in five Delaware and Hawaii entities (the "Holding Companies") that own (or in the case of the Moaula parcel, have the right to acquire) the following parcels of real estate in Hawaii (the "Parcels"):

| Parcel and Acreage | Holding Company | Company's Percentage |
|---|---|---|
| Little Honu'apo (258) | Big Isle IV Ventures, LLC | 29.9% |
| Honu'apo (1,500) | Big Isle V Ventures, LLC | 50.0% |
| Waikapuna (2,015) | Ka'u Holding, LLC | 35.0% |
| Moaula (1,855) | Moaula Farm and Ranch, Company, LLC | 4.9% |
| Church (215) | Big Isle IV Ventures, LLC | 29.9% |

One other 10-acre parcel, known as the Sugar Mill parcel, is owned by the Honu'apo Historical Society ("HHS"), a Hawaii nonprofit corporation that I organized to hold, environmentally remediate, and then develop, that parcel.

The total investment to date by all of us in the Parcels is approximately $8 million. These funds have been spent on land acquisition costs, related due diligence, legal and title expenses, and environmental and other pre-development costs.

A great deal of work needs to be done in order to develop the Parcels and realize their potential as sites for resort, condominium and other residential developments. These activities will require significant new financing and real estate development expertise.

ED-00003140

Accordingly, we have reached an agreement with a developer, Windwalker Real Estate (Windwalker") and a lender, Lehman Brothers Holdings Inc. ("Lehman"), for the continued development of the Parcels and the financing of its pre-development phase.

You are familiar with Lehman and its reputation and you now know that Windwalker and its principal, Alan J. Worden, have a proven track record of resort and condominium development in Bermuda and Nantucket, Massachusetts. Windwalker's participation in the Joint Venture is a key factor in Lehman's agreement to provide financing for the development of the Parcels.

We are actively moving to consummate this transaction and expect to do so later this month. In brief, the transaction will include (i) the formation of a joint venture between Windwalker, on the one hand, and all of the current investors in the Parcels on the other (the "Joint Venture"), which will own and develop the Parcels, and (ii) a credit facility to be provided by Lehman to the Joint Venture in an initial amount of $50 million, with the possibility of subsequent additional financing. The major steps and features of the transaction are as follows:

*Formation of Na'alehu Ventures 2006, LLC*

- As a first step, all of the other entities with interests in the Holding Companies will pool them in a single new entity called Na'alehu Ventures 2006, LLC, a new Delaware limited liability company ("Na'alehu"). Thus, Little Isle IV will contribute all of its interest in each of the Holding Companies to Na'alehu and, at the same time, entities owned by each of you, Paniolo Nui, LLC and Maka Koa, LLC, and by me (Hawaii Ventures 2006, LLC) will also contribute all of our respective interests in the Holding Companies to Na'alehu. We will also take steps to first split the interests currently held by Moana View Estates, LLC and Paniolo Nui, LLC between you.

- I will contribute to Na'alehu options that I own on certain small parcels adjacent to the Waikapuna Parcel (the "Waikapuna Options") to complete the pooling. Na'alehu will also, in due course, enter into an agreement with HHS to acquire the Sugar Mill parcel (the "Sugar Mill Contract").

- JN Development, LLC, a company owned by Ken Jowdy and Bill Najam ("JND"), who are principals in the Cabo San Lucas project, will also become a member of Na'alehu, contributing a nominal amount of cash. Ken and Bill were instrumental in obtaining Lehman's loan commitment and Bill is actively involved in bringing this transaction to completion. I expect both of them to provide valuable services going forward as advisors with regard to the development of the Parcels and our relationship with Windwalker.

- Accordingly, all of the ownership of each Holding Company and, therefore, of each Parcel, will have been "rolled-up" into Na'alehu. You will still own your respective interests in Paniolo Nui and Maka Koa, but now those companies will hold interests in Na'alehu, rather than in each of the Holding Companies. The equity ownership of Na'alehu (the "Percentages") will be as follows:

-

|  |  |
|---|---|
| Little Isle IV | 27.86% |
| Hawaii Ventures 2006 | 48.03% |
| Paniolo Nui | 9.50% |
| Maka Koa | 9.50% |
| JND | 5.00% |
| Managing Member | 0.10% |

I calculated these percentages, in part on the basis of negotiations with you, to reflect on a combined basis the current respective interests of all of these parties in the Parcels and the Waikapuna Options, while allowing for 5% dilution in favor of JND to reflect its current and anticipated contribution of services.

- Na'alehu Management, LLC, of which I am the sole owner, will serve as Managing Member of Na'alehu, with complete control over the management of Na'alehu's business and affairs, just as I now serve as Managing Member of each of the Holding Companies.

- A copy of the proposed Limited Liability Company Agreement for Na'alehu is attached for your reference. It is expected that this is essentially the final form of this agreement that will be executed at the closing of the Joint Venture transactions.

*Formation of the Joint Venture*

- Immediately after the formation of Na'alehu, the Joint Venture will be formed as a Delaware limited liability company named WWK Hawaii Holdings, LLC. Na'alehu will own 50% of the Joint Venture in return for its contribution of the Parcels and the Waikapuna Options to the Joint Venture. Na'alehu will contribute no cash to the Joint Venture. Windwalker Hawaii, LLC ("Windwalker Hawaii") will own the remaining 50% of the Joint Venture and will contribute $250,000 of cash to the Joint Venture, as well as Windwalker's real estate development expertise and its relationship with Lehman.

- The Sugar Mill parcel will be acquired by Na'alehu shortly after the formation of the Joint Venture. Na'alehu will remediate certain environmental conditions relating to oil and chemical contaminants generated by the sugar mill formerly located on the parcel  Once those problems are addressed, the Joint Venture will have the option to acquire the Sugar Mill parcel from Na'alehu, in which case it will reimburse the related acquisition and remediation costs. If the Joint Venture decides not to acquire the Sugar Mill parcel, Na'alehu will be free to deal with it as it wishes.

- Windwalker Hawaii will have control over the management of the Joint Venture and the development of the Parcels and the marketing of lots, subject only to the obligation to consult with me on all development matters and the requirement that it in good faith seek my agreement before engaging in certain major transactions. If we cannot reach agreement on a major transaction, however, Windwalker will have the right to proceed as it deems best.

ED-00003142

- During most of the period of the development of the Parcels, both Windwalker and Na'alehu and their respective affiliates may not engage in competitive real estate development activities in Hawaii.

- The Joint Venture Agreement contains customary rights of first refusal in favor of both Na'alehu and Windwalker regarding potential transfers of the other's interest in the Joint Venture, as well as buy-sell provisions entitling either party to buy out the other at fair market value after five years in the case of a dispute or otherwise.

- Windwalker is currently negotiating with Chris and me as to our on-going work in the development of the Parcels and our respective compensation for that work. I expect that Chris will be retained by Windwalker as a salaried project manager and that I will be retained as a consultant for a monthly fee. We have not yet reached agreement on our compensation, but it is intended that it will be comparable to that paid to independent third parties for comparable services in arms'-length transactions.

- The Joint Venture Agreement also provides that the Joint Venture will distribute a 100 acre parcel to each of Na'alehu and Windwalker out of the Waikapuna Parcel. Na'alehu will the have the right to dispose of such parcel as it wishes, so long as such disposition does not adversely affect the development of the Parcels.

- A copy of the current draft of the proposed Limited Liability Company Operating Agreement for the Joint Venture is attached for your reference. It is expected that this is very close to the final form of this agreement that will be executed at the closing of the Joint Venture transactions.

*Lehman Financing and Transaction Economics*

- Lehman will provide $25 million of loan financing on the date of formation of the Joint Venture and will establish a credit line of an additional $25 million for future developmental expenses of the Joint Venture. Actual construction on the Parcels will require additional financing at some point in the future. Lehman's loans will be secured by a first mortgage on the Parcels and any income generated by the Parcels.

- The financing will provide an immediate payout of an aggregate of $7 million dollars for the benefit of Na'alehu's Members. This money will used to pay off substantially all currently outstanding pre-development expenses relating to the Parcels, including approximately $725,000 of accrued development fees payable to each of you and me, to establish reserves for the acquisition and remediation costs related to the Sugar Mill parcel and interest and other anticipated expenses and to return approximately 60% of the capital invested to date by everyone connected with this project, including each of you and me, on a *pro rata* basis.

- The remainder of the initial $25 million loan will be used to acquire the Moaula Parcel, to retire an aggregate of approximately $10.6 million of debt owed to third parties now encumbering the Honu'apo and Waikapuna Parcels, to refinance the $600,000 of borrowings from Lehman used to acquire the Church Parcel earlier this

ED-00003143

year, to pay for the legal and title expenses of the formation of the Joint Venture and the Lehman financing and as working capital for initial development expenses.

- Of the $25 million credit line, a total of $4 million is ear-marked for distribution to Na'alehu on the Joint Venture's completion of certain pre-development "milestones" over the next 12 to 18 months. I expect that each of these milestones, including obtaining certain governmental approvals for subdivision of one of the Parcels and the sale of home lots in certain specified amounts will be achieved. Approximately $1.5 million of the $4 million will be used to return the approximately 40% balance of everyone's investment in this project. The remainder will be used to pay any expenses, with the balance to be distributed to the members of Na'alehu, including the Company, in accordance with their Percentages.

- The Joint Venture Agreement does not require Windwalker or Na'alehu to make additional contributions to the Joint Venture. If Windwalker determines that additional working capital is required for development of the Parcels, both Na'alehu and Windwalker will have the right to contribute 50% of the working capital. If they elect not to do so, the Joint Venture may take in "New Members" to invest the needed funds on commercial terms that may include customary priorities on cash distributions for the amounts contributed by the New Members. This would dilute Na'alehu's equity interest in the Joint Venture. Should Na'alehu decide to contribute further capital at that time, it will entail all of us investing sufficient new funds for this purpose or, since no one will be required to do so, bringing in capital from other sources, which will dilute our interests in Na'alehu.

- Following the milestone distributions to Na'alehu, the Joint Venture Agreement provides that any net cash flow of the Joint Venture from operations or sales of the Parcels, after provision for repayment of the Lehman loan and expenses, will be distributed in the following manner:

    - *First,* to the New Members to the extent the terms of their admission to the Joint Venture calls for a priority preferred return and return of capital;

    - *Second,* 100% to Na'alehu until it receives distributions totaling an additional $4 million;

    - *Third,* 100% to Windwalker Hawaii and/or Na'alehu until each of them has received distributions equal to 100% of any additional contributions made by them, plus a preferred return thereon equal to 1,200 basis points over LIBOR or the maximum rate permissible under applicable law, whichever is less;

    - *Fourth,* 100% to Windwalker Hawaii until it receives distributions totaling $25 million;

    - *Fifth,* 75% to Windwalker Hawaii and 25% to Na'alehu until Windwalker Hawaii has received distributions totaling an additional $25 million; and

ED-00003144

- *Thereafter,* to the members of the Joint Venture in accordance with their percentages. If Windwalker and Na'alehu are the only members at that time, these distributions will be made on a 50/50% basis.

Any such distributions received by Na'alehu, net of any Na'alehu expenses, will be distributed to the Members of Na'alehu in accordance with their Percentages.

There can be no assurance, of course, that the development of the Parcels will be successful and, accordingly, that there will be cash to distribute to Na'alehu in the amounts contemplated above or at all. Real estate development is by it nature highly speculative and is subject to numerous risks construction, environmental, regulatory, financing, marketing and local and macro economic risks, among others. I should also note that our respective interests in the Parcels will be diluted by 50% in favor of Windwalker in return for its expertise, assumption of the work and risk of development and its relationship with Lehman.

I believe that the proposed transaction offers the opportunity to greatly enhance the likelihood and potential amount of the return on your time and money investments in the Company, even factoring in such dilution, for the following reasons, among others:

1. Lehman will provide necessary financing for the next phase of the Parcels' development that might not otherwise be available from other sources on similar terms or at all;

2. Investors in the Company will receive back approximately 60% of their investments to date immediately, with a very good expectation of the return of the balance of their investments within 12 to 18 months;

3. The further development of the Parcels will be managed by a highly professional and experienced real estate developer, thus enhancing the opportunity for success beyond what could be achieved by us alone; and

4. The risks attendant on your investments should be greatly reduced by the return of your capital, professional management and the assumption of most of the future development risk by Windwalker.

I will be happy to discuss any aspect of these transaction with you at your convenience, answer any questions you may have and provide any additional documentation for the transactions that you request. I am requesting that you indicate your acknowledgement of and consent to the transactions described above as soon as possible, as the closing of the transactions is expected to occur this month. You may do so by printing out, signing and dating the attached response form, which includes certain representations and warranties, and returning it to me by e mail or overnight courier, as you prefer.

Very truly yours,

Philip A. Kenner

ED-00003145

**RESPONSE FORM**

I acknowledge receipt of the letter of July 21, 2006 of Philip A. Kenner (the "Letter") to John Kaiser and Christopher A. Manfredi regarding proposed joint venture and financing transactions involving my investments in Hawaiian real estate (the "Transactions"). *I have signed and dated this Response Form where indicated below to indicate that I consent to the transactions described in the Letter and to make the following representations and warranties to Na'alehu Ventures 2006, LLC (Na'alehu") and Mr. Kenner*:

1. I have received, carefully read and understood the Letter, including the copies of the proposed Limited Liability Company Agreement for Na'alehu and the proposed Limited Liability Company Operating Agreement for WWK Hawaii Holdings, LLC (the "Joint Venture"). I have relied on no representation or warranty by any party with respect to this transaction other than as set forth in the Letter.

2. I have been provided with the opportunity to discuss any of my questions about the Transactions, Na'alehu and the Joint Venture with Philip A. Kenner and representatives of the Joint Venture, as well as access to all information about them that I have requested. I confirm that, in making my decision to consent to the Transactions, I have relied, as to legal, tax and all other matters, on independent investigations made by me and my advisors, if any, and that I have investigated the Transactions to the full extent I have deemed advisable.

3. I understand that my interest in Na'alehu and my indirect interest in the Joint Venture have not and will not be registered under the Securities Act of 1933 (the "Act") or any state securities law in reliance on exemptions from such registration. I understand that no federal or state agency has reviewed or made any recommendation or endorsement with respect to the Transactions.

4. I will be acquiring my interest in Na'alehu solely for my own account, for investment and not with a view to, or for resale in connection with, any distribution. I understand that my interest in Na'alehu and my indirect interest in the Joint Venture will be illiquid and may not be sold, transferred or otherwise disposed of except with the consent of Mr. Kenner, which may be withheld in his reasonable discretion.

5. I understand that my investment in Na'alehu and the Joint Venture is speculative and is subject to certain risks, including those disclosed in the Letter, and may remain so for an indefinite period.

6. I am an "accredited investor", as defined in Rule 501(a) of Regulation D under the Act because I am an individual (i) whose net worth (*i.e.*, the excess of total assets at fair market value, including home and personal property, over total liabilities) or joint net worth with my spouse, exceeds $1 million and/or (ii) who had an income (that is, adjusted gross income, as reported for federal income tax purposes) in excess of $200,000 in each of the two most recent years or joint income with my spouse in excess of $300,000 in each of those years and who reasonably expects to reach the same income level in the current year.

I CONSENT TO THE TRANSACTIONS
as of August 1, 2006.

_____          _____
Signature                                                     Print Name: John R. Kaiser

-7-

ED-00003146