CLERK

8:48 am, Nov 25, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 13-CR-00607(JFB)
                              *
                              *    Long Island Federal
     v.                       *     Courthouse
                              *    814 Federal Plaza
PHILLIP A. KENNER, et al.,    *    Central Islip, NY  11222
                              *
               Defendants.    *    November 23, 2020
                              *

* * * * * * * * * * * * * * * *

                TRANSCRIPT OF CRIMINAL CAUSE FOR
                 MOTION HEARING/ORAL ARGUMENT
              BEFORE VISITING JUDGE JOSEPH F. BIANCO


APPEARANCES:

For the Plaintiff:              MADELINE M. O'CONNOR, ESQ.
                               DIANE C. LEONARDO, ESQ.
                               U.S. Attorney's Office EDNY
                               610 Federal Plaza, 5th Floor
                               Central Islip, NY 11722


For the Defendant,             MATTHEW W. BRISSENDEN, ESQ.
 Phillip A. Kenner:            Matthew W. Brissenden PC
                               666 Old Country Road, Suite 501
                               Garden City, NY 11530-2004


For the Defendant,             SANFORD TALKIN, ESQ.
 Tommy C. Constantine:         Talkin, Muccigrosso & Roberts LLP
                               40 Exchange Place
                               18th Floor
                               New York, NY 10005


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES (Cont'd):

For the Interested Party,       GEORGE KOSTOLAMPROS, ESQ.
 Danske Bank:                   XOCHITL S. STROHBEHN, ESQ.
                                DOREEN MARTIN, ESQ.
                                KELLY WEINER, ESQ.
                                Venable LLP
                                1270 Avenue of the Americas
                                New York, NY  10020
```

3

1           (Proceedings commenced at 11:13 a.m.)

2                THE CLERK:  Calling Criminal Case 13-CR-607, United

3     States of America v. Kenner and others.

4           Counsel, please state your appearances for the record.

5                MS. O'CONNOR:  Assistant U.S. Attorney, Madeline

6     O'Connor for the United States.  Also appearing for the United

7     States is Assistant U.S. Attorney, Diane Leonardo.

8                Good morning, Your Honor.

9                THE COURT:  Good morning.

10               MR. KOSTOLAMPROS:  Good morning, Your Honor.  This

11    is George Kostolampros representing Danske Bank, and I'm here

12    with my colleagues, Doreen Martin, Xochitl Strohbehn, and

13    Kelly Weiner.

14               THE COURT:  Good morning.

15               MR. KOSTOLAMPROS:  Good morning.

16               MR. BRISSENDEN:  Good morning, Your Honor.  Matt

17    Brissenden, stand-by counsel for Mr. Kenner.  Obviously

18    (indiscernible) this morning.

19               THE COURT:  Good morning, Mr. Brissenden.

20               MR. TALKIN:  Good morning, Your Honor.  This is Sam

21    Talkin for Mr. Constantine, who is not on the phone.

22               THE COURT:  All right.  Good morning, Mr. Talkin.

23               MR. CONSTANTINE:  And, Your Honor, I'm also on the

24    call.  This is Tommy Constantine.

25               THE COURT:  Oh, good morning, Mr. Constantine.

4

1          All right.  I think we also have a number of other,

2     I think, interested parties who are listening in today.  As

3     you -- as I think the lawyers know, the purpose of today's

4     call is to issue a law ruling that details regarding the

5     Court's reasoning.

6          I may also issue a written opinion to follow, but

7     obviously given the time pressures and issues that we all know

8     exist with respect to this forfeiture proceeding, I thought it

9     would be in everybody's interest for the Court to resolve as

10    many issues as it can resolve now and then address the

11    outstanding issues, and then follow it up if necessary with a

12    written opinion down the line.

13         First -- so, I just -- everyone bear with me.  It

14    could take about 20 or 30 minutes for the Court to place its

15    ruling on the record, and then obviously I'll answer any

16    questions that anybody has regarding the ruling.

17         The first big -- the government moved to strike the

18    bank's October 28th surreply.  I deny that request.  I think

19    given the ongoing issues that were being briefed, it was

20    helpful to the Court to receive that and I did consider it.

21    I'll give the bottom line and that'll go through the reasons.

22         The court is granting summary judgment to the bank

23    with the exception of two issues which I think remain

24    outstanding, and I'll discuss with the parties how I wish to

25    proceed with respect to that, obviously considering

5

1          suggestions they have.

2                    The first issue remains the amount of the claims

3          that are linked to the initial loan.  There's been a back and

4          forth in the declarations about what the exact amount is.  I

5          think the Court has to obviously address that issue.

6                    And the other issue which the government has raised,

7          which I'm going to give them some, if they wish, some limited

8          additional discovery on, although I'll explain what my

9          concerns are with respect to their argument -- the issue is

10         whether or not -- whether the entire amount of the additional

11         loans that the bank made, whether or not they were bona fide

12         purchaser for value, or at some point that it seemed to

13         becoming an ongoing transaction, and included with that is

14         what happened after the 2015 protective order, when obviously

15         it was -- the bank knew that the government was seeking for

16         the forfeit the resort.  So those are the two issues I'll

17         address at the conclusion of my ruling.

18                   First, I note that the government pointed out that

19         there are numerous third-party petitions that have been

20         asserted to the forfeitable property, and the Court obviously

21         must weigh all those interests before determining priority of

22         the claims, and that government suggests that the Court should

23         hold off on its decision with respect to the bank.

24                   Although the Court has considered and is continuing

25         to consider their interest, I agree with the bank that they

6

1   are differently situated. Nothing in their claims affects the

2   Court's need to determine whether many years ago the bank

3   secured a superior legal interest.  None of those petitions

4   are asserting a claim that's superior to the bank's, because

5   the other petitions assert interest that are in the -- the

6   bank referred to it out of money equity interest and none

7   assert a secured lien in the resort property.

8          So I believe the Court can proceed with this ruling

9   while it continues to consider their petitions, and as the

10  bank notes, if I have any concerns regarding that, I can await

11  amending the preliminary order of forfeiture until I decide

12  the validity of those other claims.

13         With respect to the standard the Court is applying

14  here, I won't repeat it.  I'll give a summary of it, but I

15  adopt --  Judge Koeltl did an excellent job of thoroughly

16  setting out the standard in a case called *U.S. v. King*, 2012,

17  Westlaw, 226-1117, Southern District of New York, June 18 of

18  2012.  I adopt it in its entirety.  I just summarize it for

19  purposes of framing the Court's oral decision today.

20         Obviously, the criminal forfeiture proceedings are

21  governed by Section 853 of Title 21 and Federal Rule of

22  Criminal Procedure 32.2.  Following a conviction, the Court

23  must determine what property is subject to forfeiture under

24  the applicable statute, and to the preliminary order

25  forfeiture, which the Court has done here, that sets forth the

1    amount of any money judgment threatening to forfeiture of

2    specific property, and that's all set forth in Criminal Rule

3    of Procedure 32.2(b)(1)(A) and (b)(2)(A).

4              This preliminary order of forfeiture is entered

5    without regard to any third-party interest in the property.

6    The determination of whether a third party has such an

7    interest is deferred until the ancillary proceeding under the

8    rule, and an ancillary proceeding provides an exclusive means

9    by which a third-party can claim an interest in the property

10   subject to forfeiture.

11             The Second Circuit has discussed this in *DSI*

12   *Associates, LLC v. United States*, 496 F3d 175, Second Circuit

13   2007, and the third party obviously has to assert an interest

14   in a petition that the Court can adjudicate the validity of

15   under section 853(n)(2).

16             The petitioner must first establish standing to

17   challenge the forfeiture order by demonstrating a legal

18   interest in the forfeited property under 853(n)(2).

19             The petitioner must prove its entitlement to relief

20   by establishing through a preponderance of the evidence, one

21   of two superior claims to that property under 853(n)(6).

22   (n)(6)(A) is not applicable here.

23             We are all focused on (n)(b)(B), where the

24   petitioner must demonstrate that it is a bona fide purchaser

25   for value of the right and title of interest to the property

1    and was at the time of the purchase redeemed without cause to

2    believe that the property was subject to the forfeiture.

3              The Second Circuit has discussed this in the *United*

4    *States v. Watts*, among other cases, 786 F.3d 152, at page 160,

5    Second Circuit, 2015.

6              If the petitioner meets that burden, the forfeiture

7    order must be amended to exempt for third-party interest.

8    Conversely, if the petitioner cannot show that the condition

9    applies then obviously there is -- cannot -- they cannot

10   demonstrate a valid interest in the property subject to

11   forfeiture.  Once this ancillary proceeding concludes, the

12   Court enters its final order forfeiture which is final then,

13   with respect to all third parties.

14             With respect to the standard on summary judgment

15   motion, the law is clear that the Court, under rule

16   32(c)(1)(B) can dispose of third-party petitions without a

17   hearing by allowing the parties to file motions for summary

18   judgment and obtain rules that are applicable in several cases

19   -- generally are applicable in this context.  The Second

20   Circuit made that clear in a case called *Pacheco*, 393 F.3d at

21   pages 351 and 52.

22             In this case, obviously, the government has first

23   requested additional discovery before the summary judgment

24   motions were decided, and I'll address that in a moment, some

25   of which I'm granting.  But both sides have filed cross-

1    motions for summary judgment.

2            New York law determines the respective interests

3    held by the petitioner and the defendant and federal law

4    determines whether the petitioner's interest satisfies the

5    requirement for Section 853(n)(6).

6            Moving to the elements of 853(n)(6)(B), as I noted

7    earlier.  If the -- it provides that a person or an entity who

8    acquired an interest in the forfeited property after the

9    government's interest vested may nevertheless prevail in the

10   ancillary proceeding, or that the bona fide purchaser of

11   value.  The defense consists of the following three elements.

12           One, the claimant has a legal interest in the

13   forfeited property.  Two, the interest was acquired as a bona

14   fide purchaser for value.  And three, the interest was

15   acquired at a time when the claimant was reasonably without

16   cause to believe that the property was subject to forfeiture.

17           This is discussed in detail in a case the Second

18   Circuit has pointed favorably to, *United States v. Kinley,* 507

19   F.3d, 1125.  I think there's 1130 and 31 Eighth Circuit, 2007.

20           The Court concludes that Danske Bank is entitled to

21   summary judgment with respect to this defense, except for the

22   two outstanding factual issues that I have identified.  This

23   is the basis for the Court's ruling.

24           First, with respect to the legal interest in the

25   forfeited property, and upon the issue of whether it was

10

1   acquired as a bona fide purchaser for value, in terms of the

2   evidence that the bank has submitted, it establishes that the

3   bank and Lehman entered into a master repurchase agreement in

4   1999 and committed repurchase facility agreement in 2005.

5            Under the 2005 agreement, the bank gave

6   approximately $800 million to purchase commercial mortgage

7   loans from Lehman that Lehman agreed to repurchase at a later

8   date.

9            The bank obtained title to a pool of collateral

10  consisting of liens secured by commercial real estate upon

11  purchase through -- though Lehman retained the right to

12  receive the income.

13           With respect to the property at issue here -- and

14  I'll come back to this, the nature of the collateral rolling

15  over every seven days -- but moving to the basis for the Court

16  concluding that the bank does have a legal interest, the

17  perspective -- and it was for value under that agreement and

18  the money that was paid pursuant to that agreement.

19           On September 15th of 2008, Lehman filed for

20  bankruptcy and defaulted under the MRA.  That same day, the

21  Bank of New York as custodian, sent a letter detailing the

22  collateral that the bank had purchased under the repo

23  agreements that was held for the bank's benefit.  That's

24  Exhibit 32 of the bank's summary judgment motion.

25           The DCSL loan was among the collateral on page 30 of

1    31.  Because of Lehman default, the bank was entitled to

2    retain some or all the assets in the collateral pool and use

3    the value of that collateral to offset the amount that Lehman

4    owed under the repo agreement.

5         The bank elected to retain Lehman's interest in the

6    resort property and equity interests.  In January of 2009,

7    banks and Lehman executed the omnibus assignment and

8    assumption agreement which confirmed that the bank had

9    acquired all of Lehman's protected senior interest in the

10   resort property as first place beneficiary under the Mexican

11   Trust agreement and equity interest for, quote, "good and

12   valuable consideration," end of quote.

13        The Court believes that this establishes that they

14   have this legal interest in the property, that they were a

15   bonafide purchaser for value with respect to that.  Any

16   question regarding that in the Court's view, although I don't

17   believe there is any based upon that documentation, is

18   completely dispelled by what occurred in the bankruptcy

19   proceedings in September, 2009.

20        The bank filed a claim in Lehman's bankruptcy to

21   recover the amount Lehman owed.  The bank, after the bank set

22   off the amount owed by the value of the pool of collateral

23   consisting of Lehman's secured by the commercial real estate,

24   that bank had retained and a settlement was reached in which

25   the bank perfected its interest in resort property and the

1    equity interests.

2              This was recognized by the bankruptcy court and

3    discussed in the papers and was discussed at oral argument.

4    The bankruptcy court recognized the bank's prior purchase of

5    Lehman's interest in the resort property.

6              The bankruptcy court recognized that the bank is the

7    owner of the mortgage assets, including the BS DCSL loan.

8    That was in, I believe, in an October 25, 2010 order.  And the

9    Tremont records, which I find to be properly authenticated, at

10   a minimum show that Lehman owned at least $100 million to DCSL

11   pursuant to the arrangement.

12             The Court views all of this evidence as

13   uncontroverted that the bank purchased the loans secured by

14   the underlying property as evidenced by the terms of the MRA,

15   the money paid out under the MRA, the Bank of New York trust

16   receipts, and by the settlement agreement and order that the

17   bank -- the bank's deficiency claim in the bankruptcy

18   proceedings.

19             Although the government attempts to dispute that and

20   seeks additional discovery and documents with respect to that,

21   it's the Court's view that no amount of discovery will change

22   those facts.

23             The government's key argument is that the failure to

24   know the date and the amount of the transaction for that

25   particular loan creates a material issue of fact.

13

1      Their view is that you need to have a document that
2      the bank purchased the initial loan on a particular day for a
3      particular amount of consideration in order for the Court to
4      be able to decide this issue.
5      I disagree.  I think the other documents and the
6      decision of the bankruptcy courts unequivocally demonstrate
7      that the bank received an interest in the loan, and in the
8      property for consideration.
9      This is, I think, highlighted as I mentioned a
10     moment ago, and the bank points out in its documents, that
11     they've got their lack of documentation of a particular day is
12     by virtue of the nature of the arrangement, that the
13     collateral constantly being transferred, the collateral pool
14     rolled over ever week, the government takes that fact and says
15     well, it could be that they didn't have this property, but the
16     other documents unequivocally refute that.
17     Both -- the Court did not believe any additional
18     discovery is needed on this and the bank is entitled to
19     summary judgment on this issue in its favor.
20     By September 12th of 2008, Lehman perfected senior
21     liens against a resort property, was one of the assets held by
22     the bank, and without question the bank acquired perfected
23     secured senior interest in the resort property and equity
24     interest no later than January of 2009.
25     For the same reason, the Court rejects the

1    government's argument that the bank has failed to satisfy the

2    pleading requirements of 853(n) because they don't have an

3    exact -- you know, for how much.  I don't believe they need to

4    plead that or to prove it for the reasons I've already

5    indicated.

6            Similarly, the government argues that even if the

7    bank proves it gave value for the initial loan in its

8    transactions with Lehman, which the Court finds to be the case

9    based upon uncontroverted evidence, and assuming arguendo, if

10   I were to find that it was -- that this should be considered a

11   bona fide purchaser for value with respect to that, which

12   again the Court finds to be the case, the government argues

13   under the principle of judicial estoppel, the bank's claim to

14   the initial loan must be limited to the value that the bank

15   attributed to the initial loan when it settled with Lehman in

16   the bankruptcy proceeding.

17           The Court disagrees.  The bank purchased the loan

18   secured by the underlying property, as evidenced as I said, by

19   the -- by the documentation that I've already gone through.

20           I agree with the bank that it was not paying for a

21   secured interest in the loan where the claim was limited to

22   the amount against valued for DCSL loan in the Lehman

23   bankruptcy.

24           I further agree with the bank that the government's

25   argument would make every secured interest by a lender like a

1    bank in a forfeiture proceeding, limited to what the lender

2    valued the loan at the time it acquired its interest.

3         I see no basis for that in the law; no basis for

4    estoppel to apply in this manner for such a settlement with

5    respect to a claim in bankruptcy.  I believe that the analysis

6    that the bank supplied in the *Dryer* case is persuasive to me

7    in this type of situation, F9 51, F.Supp 2d, 582, Southern

8    District of New York, 2013.

9         With regard to the area of factual dispute that I

10   think remains, and I think the parties are aware of this from

11   the papers, there is a factual dispute regarding the amount of

12   that claim.

13        The bank asserts that in early 2009 borrower owed

14   Lehman $107,538,327.83 in principal, and over $49 million in

15   unpaid accrued interest.  The government notes that the

16   Tremont records only establish that Lehman loan, and owes

17   $100,240,922 to the resort that remained a factual issue that

18   the Court needs to resolve, obviously, before completing --

19   ability to address the bank's summary judgment motion.  I'll

20   discuss that with the parties at the -- at the end.

21        Moving to the additional loans and these same

22   elements with respect to the additional loans.  First, the

23   government argues that because the bank has not proven that it

24   acquired a valid interest in the initial loan I necessarily

25   found that the bank has not proven the required valid interest

1    in the additional loans, which were merely funds loaned under

2    modifications to the initial loan agreement.

3          Obviously, because I've disagreed with the

4    government's analysis regarding the validity of the interest

5    in the initial loan, I concluded that the argument has no

6    weight and that the bank does have a valid interest in the

7    additional loans by virtue of an interest in the initial loan,

8    and I don't think there's any argument that the money, the $98

9    million, was advanced to the resort under the additional loans

10   and that the -- I believe the bank has a valid interest, and

11   certainly as the bonafide purchaser for value, at least to

12   some extent, with respect to that $98 million.

13         The only remaining issues that are -- as it relates

14   to that, is the issue raised by the government that are at

15   some point, that the bank seems to become a bonafide purchaser

16   of value with respect to the additional loans.  The

17   government's argument in essence is that the bank was not a

18   bona fide purchaser of value of the additional loans because

19   the additional loans were not innocent arm's length

20   transactions.

21         The government argues that the bank and Mr. Jowdy

22   had some arrangement through which Jowdy would permit the bank

23   to systematically deplete the equity in the resort, the

24   modified loan agreement would subsequently increase the

25   resort's debt without the bank having to advance any new

1    funds, while the bank in return made no effort determine that

2    the loan funds were being used for their intended purpose for

3    the benefit of -- that would be, obviously, for the benefit of

4    the resort and not for Mr. Jowdy personally, or for other

5    entities controlled by Mr. Jowdy, and that they also promised

6    to pay a substantial sum upon the sale of the resort through a

7    foreclosure, or actually the bank recovers investment through

8    a forfeiture sale.

9         Before deciding that issue, I'll say a couple of

10   things.  First of all, the bank obviously has responded in

11   great detail to that, including declarations from Mr. Daniel

12   and Mr. Devlin, and they have pointed out, among other things,

13   and I have gone back and looked at the fact that with respect

14   to the arrangements Mr. Jowdy and his interest and what he --

15   interests he would get upon any forfeiture or sale, Mr.

16   Kostolampros pointed that out in Government Exhibit 20, an

17   August 23rd, 2018 letter.

18        The bank explained in great detail what it planned

19   to do with the facility B, and also attached a proposed

20   agreement including their arrangement with Mr. Jowdy, and the

21   bank points out that the government expressed no concern, and

22   obviously the government, in the supplemental phase, can -- I

23   don't think to this date the government has pointed the Court

24   to anything suggesting that when they saw this, they objected

25   to this as not being a arm's length transaction.

18

```
1              They've attached no declaration from any industry

2      experts that suggest that what the bank was doing here would

3      be indicative of a lack of an ongoing transaction by a bank in

4      this type of situation.

5              The bank points out that if it did not fund the

6      facility C, that -- and the resort went under, they could

7      potentially be viewed as a -- in violation of the Court's

8      protective order, and the government never suggested that they

9      should stop their funding.

10             So these are all the issues that I see in the

11     papers, but I'm going to give the government some limited --

12     and I emphasize limited -- additional discovery on this issue.

13             For example, if they wish to, by doing some type of

14     video deposition of Mr. Devlin through reviewed -- by way of

15     his declarations, that he reviewed and conducted diligence in

16     every (indiscernible) request, that would be potentially

17     something the government could do before the Court addressed

18     this issue.

19             The Court also -- this issue regarding -- it's the

20     bank's position, and it seems to be borne out by the

21     documentation, that all the money advanced, the $50 million

22     advanced after the Court issued -- I mean, excuse me, after

23     the government filed its bill of particulars regarding the

24     resorts was pursuant to agreements that have already been

25     entered into prior to that date under the new facility C in
```

1    April 2014.

2          So it's not clear to me what would be the basis,

3    other than this issue regarding the lack of an ongoing

4    transaction, of not allowing the additional 50 -- $50 million

5    to also be the subject and the superior interest by the bank.

6          But in any event, the Court is willing to allow some

7    limited additional discovery on that issue.

8          The final element, whether or not the interest was

9    required at a time when the claimant was reasonably without

10   cause to believe that the property was subject to forfeiture,

11   obviously, we're talking about here the loan extension, the

12   modifications between 2009 to 2014 following the assignment of

13   the initial loan.  And in 2009, the government again seeks

14   additional discovery on this, but I'm denying any additional

15   discovery on this.

16         First I note the bank, pursuant to this back and

17   forth regarding the limited discovery that's already been

18   provided, they provided what they say are the existing due

19   diligence reports as it relates to their investigation of the

20   resort and any issues regarding the resort while it was

21   extending the loans and the modifications for the loan.

22         They represented to the Court that no such other due

23   diligence report exist.  They've obviously submitted, as I

24   noted, the affidavit of Mr. Daniels with respect to this

25   issue.

20

1          The government does not allege that the bank had any

2     direct knowledge from Mr. Kenner or Mr. Constantine, or anyone

3     else that I'm aware of, regarding fraud when they, you know,

4     acquired the interest or expended the loans and the

5     modifications to that.

6          What the government relies on here are various

7     allegations in civil lawsuits dating back to 2008.  Mr.

8     Genow's (ph) lawsuits alleging that Jowdy and defendants

9     misappropriated or averted funds loaned by Genow for the

10    resort, and they noted Jowdy walks in in 2010 against several

11    victims.

12         Where paragraph 32 refers to Kenner borrowing $2.5

13    million from hockey player clients, and then they note overall

14    of approximately two dozen news articles and press releases

15    between 2008 and 2013 regarding the lawsuits and alleged

16    fraudulent conduct, and they note in one of the loan

17    agreements signed by Mr. Daniels and Mr. Nunez gives some

18    notation of the possibility that there could be Kenner parties

19    who join in litigation.

20         I conclude no discovery is needed on this issue

21    because I am assuming the bank knew about all these

22    allegations in these civil lawsuits and press releases and

23    newspaper articles at the time of the relevant events

24    regarding them acquiring their interests, and I find that this

25    is insufficient to meet the standard as a matter of law.

21

1              I note, first of all, the Jowdy complainant wasn't

2      the hockey player clients who agreed to give Kenner their

3      money for the project and got an interest in CSL properties,

4      and that it focused on false allegations of fraud against

5      Jowdy.  It's, you know, in terms of putting someone on notice,

6      I don't think it does a lot.

7              But in any event, with respect to Mr. Genow's

8      lawsuit and the other allegations, I find that there be no

9      reason to believe that this farm resort in Mexico would be

10     someday subject to forfeiture by the United States Government,

11     based upon all those allegations.

12             I highlight that the government did not even know in

13     2013 at the time of the indictment, even with all the civil

14     lawsuit allegations, even with the law -- resort -- the

15     resources of law enforcement, and what I would imagine to have

16     been a thorough grand jury investigation, the government in

17     2013 did not even identify the property as subject to

18     forfeiture in the indictment.

19             I think it's quite logical to say, if the government

20     did not realize that at that time, how could the bank at -- I

21     should note, at the low standard that would be required for

22     them to put that in an indictment, how could the bank

23     reasonably know that it would -- in fact, one could argue that

24     it concluded -- it could reasonably allow a bank or some other

25     third party looking at the indictment to conclude the

22

1    opposite, that the fact the government didn't put that in

2    there in 2013 may suggest otherwise with respect to its

3    forfeitability.

4            The bill of particulars with the notice about the

5    resort was not filed until April 2015, and so I find in that

6    period prior to 2015 that this standard cannot possibly be

7    met, which is consistent with the case law that was cited in

8    the papers, *United States v. Watts*, which I've referred to

9    earlier, 786 F.3d 152, Second Circuit, 2015.

10           In that case the court, Second Circuit, concluded

11   that the third party lacked reasonable cause after the court –

12   – even though the government had identified it as subject to

13   forfeiture where the Court found no probable cause to restrain

14   the funds at a *Monsanto* hearing.

15           As I noted, we're even further removed from that

16   because here, even in 2013, the government unsealed the

17   indictment charging fraud with forfeiture.

18           The bank would have no reasonable cause to believe

19   that the resort, at that point, is subject to forfeiture given

20   its absence from the indictment or other indications from the

21   government that it was being contemplated.

22           To the extent the government cites other cases, this

23   case is clearly distinguishable from all those cases,

24   including *United States v. Rodriguez*, Southern District of New

25   York, 2019, where an assignment of a mortgage had constructive

1        notice, where the assignment occurred after, and I emphasize

2        after, the government filed a notice of pendency to identify

3        the entire parcel of property as subject to forfeiture.

4                The *Sabatino* case in Southern District of Florida

5        involved a porn broker purchasing luxury (indiscernible) all

6        sorts of warning flags that those items were stolen.  That

7        clearly is not analogous to this fact pattern.

8                And the *U.S. v. BCCI Holdings* case, the District of

9        Columbia in 1997, where there are an incredible number of not

10       only newspaper articles that indicated fraud, but there's a

11       guilty plea to money laundering by BCCI, which was enough, the

12       Court concluded, to put American Express Bank on notice.

13               None of those cases apply here, and in fact, the

14       cases that say it's not enough are more consistent with the

15       fact pattern here.

16               *United States v. Petters*, District of Minnesota,

17       2013, where a court conclude that newspapers were not enough

18       to put a third party on notice.  Generalized knowledge of

19       fraud is not enough.

20               And in *United States v. Cox*, Western District of

21       North Carolina, 2007, the fact that the government --

22       knowledge of a government investigation is also not enough.

23               So that's the Court's conclusion with respect to

24       that issue.  I think the bank is entitled to summary judgment

25       on that.  Again, with a caveat regarding this bona fide

1    purchaser of value issued with respect to the additional loans

2    and the time period after the bill of particulars was filed.

3              All right.  So that's the ruling of the Court.

4              Let me just ask the government or the bank if you

5    have any questions regarding the scope of the Court's ruling.

6              The government have any questions?

7              MS. O'CONNOR:  Yes, Your Honor.

8               Could you just clarify in terms of the $50 million

9    you were discussing, what you meant (indiscernible) permitted

10   to discuss?

11             THE COURT:  I didn't hear what -- just repeat that

12   again.

13             MS. O'CONNOR:  Sorry.  I said, could you just

14   clarify for the government what -- the authority we have to

15   conduct discovery regarding 50 million?

16             THE COURT:  Yeah, the -- well, I guess it

17   (indiscernible) the 50 million.  The government has put this

18   theory out there that the bank was not a bona fide purchaser

19   of value because of the nature that essentially it was

20   extending money to the bank, running up the debt, letting Mr.

21   Jowdy do -- spend the money without due diligence as to

22   whether or not it was going into their resort.

23             They've obviously put in a lot of documentation

24   already.  The government -- if you said the government wants

25   every receipt, that's not happening.

1          I don't think in this context, requiring the bank to

2     produce every single receipt for every expense on that resort

3     for years and years and years is necessary to confirm whether

4     or not, in fact, this is an issue in this case.

5          But I'm suggesting that -- and again, if the

6     government wants to propose to the Court some other way of

7     doing this, my -- just reading through the papers, and the

8     bank has said they already made Mr. Devlin available formally

9     to the government, but that the government wanted to take some

10    video deposition of Mr. Devlin, or informally, I'll leave it

11    up to the government, to test the declaration as to what

12    diligence he was providing with respect to the money being

13    given to the resort over the years, I would allow something

14    along those lines.

15         It seems to me -- I went through -- you know, and

16    this is a difficult thing, obviously, for me to do because of

17    the incredible amount of details that went back and forth, but

18    I did look at your expert (indiscernible) declarations,

19    supplemental declaration.

20         It seems to me the bank has responded, and most of

21    the things that she thought were missing or something amiss, I

22    guess is the best way of putting it, but if there is some

23    limited category of documents or gaps in the documentation,

24    the government still wants it with respect to these additional

25    loans.  I'd be willing to consider it, but I emphasize,

1    limited.

2            And with respect to the $50 million after the

3    protective order, I don't know what additional -- you know, I

4    have to be (indiscernible), you know, Agent Galioto wrote in

5    his supplemental declaration that, you know, he told the bank

6    -- it's in paragraph 6 -- that we did not view the bank as a

7    bona fide purchaser for value for the money it loaned after

8    the bill of particulars was filed.

9            You know, I'm having a hard time understanding that

10   whole dynamic, because obviously this was happening while

11   everybody was before the Court and I mean, I'm a little

12   confused as to how the government is arguing -- if in fact all

13   this money was extended pursuant to agreements prior to these

14   bill of particulars, if in fact the court entered a protective

15   order trying to preserve the value of the property, and if the

16   government never -- the bank suggested, and I don't think the

17   government has ever disputed that the government wanted the

18   bank to continue to fund the property.

19           To the extent the bank suggested they're going to

20   foreclose on the property, the government was suggesting that

21   that would be an inappropriate thing to do; that it could

22   destroy the value, the forfeiture value of the property, for

23   the bank to foreclose on it.

24           So I guess my answer to your question -- I'm not

25   sure what, you know, discovery I would allow on that issue.  I

1    don't, you know -- I don't -- I'm not even sure of any

2    disputes between what was said at those meetings is going to

3    be material in light of what's undisputed about those

4    meetings, but I'm giving you my -- I'm opening my mind to you

5    and you can suggest to me some category of limited discovery

6    on that if you want to.  Okay?

7             MS. O'CONNOR:  Thank you.

8             THE COURT:  All right.  Does the bank have any --

9    Mr. Kostolampros, do you have any questions about the Court's

10   ruling or what I'm asking the parties to do?

11            MR. KOSTOLAMPROS:  Yes, Your Honor.  We have a

12   couple of questions.

13            I think it would help the parties to move on, you

14   know, from here, considering their options if we -- I'm a

15   little bit unclear on the exact amounts that the Court is sort

16   of recognizing here.  And if you bear with me, I'd like to

17   just go through our claim, you know, the various parts.

18            And one is the facility A, which principal balance

19   is 96.4, and this arises from the Lehman interest that Danske

20   purchased.

21            And if I have the Court correct, I think your -- you

22   set aside at least some portion of that for potential

23   discovery as to the dispute raised by the government's

24   consultant as to -- I think it was a little over $6 million of

25   that original 106 or $7 million interest.  So I wanted to be

28

1    clear on that.

2            And then secondly, facility B, which is an

3    additional $18 million, that was extended in March of 2009 and

4    remains not -- unpaid.  So that's an additional 18 million.

5            And then as you recall, there is a $50 million

6    profit participation fee, and the government, from my

7    understanding of its consultant's declaration, is challenging

8    $5 million of that 50 million.

9            So obviously, if you were to add the 96.4 million

10   that we have outstanding, minus the 60, then the 18 and the

11   50, you get -- you get Danske's claim well into over $100

12   million at this point.  And I think it would be helpful for us

13   going forward to understand if I have that right, or if I'm

14   missing something there.

15           THE COURT:  Well, I was trying to do that on my own

16   and is has been difficult, frankly, for me to try to figure

17   out what -- based upon my rulings, what amount would not be

18   disputed at this point, and what would be remaining.

19           And you know, I would -- my preference would be for

20   you to -- and I, you know, hesitate to even say this given how

21   unsuccessful efforts have been you and the government to have

22   a dialog about it.

23           But I'm hoping -- my goal today was to rule on what

24   I can rule on, and then try to figure out how much of the bank

25   claim that takes out of the equation and what's remaining.

29

1          So I'm willing to give you an answer on that, but I

2     would rather you set out what you believe, based upon my

3     rulings, would be the minimum amount the bank would be

4     entitled to at this point, and see what's left and whether or

5     not the government agrees with that.

6          Again, based upon my rulings.  I understand the

7     government objects to my rulings, but what I'm going to ask

8     the government to do is, based upon my rulings and what I'm

9     saying remains to be at issue, what portion of the bank's

10    claim is now not in dispute anymore.

11         Does that make sense?  And I'm hoping that -- to get

12    that fairly quickly, along with whatever the government is

13    proposing by way of limited additional discovery.  All right?

14         I emphasize, limited, I don't know how many times,

15    but also in terms of time I'm expecting this back in -- fairly

16    quickly.

17         Obviously, I know next week is Thanksgiving, but --

18    I mean, this week is Thanksgiving, but you know, I don't

19    anticipate a lot of time going by and I don't also anticipate

20    -- I anticipate they would just be following whatever

21    additional discovery there was, supplemental letters to the

22    Court indicating what did or did not come out in that

23    additional discovery, and then I anticipate making an oral

24    ruling resolving the additional issues, and also then

25    obviously figuring out what the exact amounts would be.  Okay?

1          MR. KOSTOLAMPROS:  Sure, Your Honor.  If I may?

2    We'd be prepared to file that letter as quickly as possible,

3    frankly.

4          So the other additional thing that I think is

5    important is, where do we go from here, right?  I understand

6    the government may have an opportunity and may want to take

7    discovery, but at a certain point if our claim is recognized

8    up to a certain point as we've said, we don't think there's

9    value above a certain amount.

10         And frankly, the Danske would seriously consider,

11   you know, withdrawing those amounts if there's a dispute over

12   them, and we'd have to consider that.

13         But that leads to the next question of what do we do

14   next here.  And I would suggest, Your Honor, at least we'd be

15   prepared to present in that letter, along with, you know, the

16   amounts that we think are at issue here, where the -- what the

17   bank's intention is and the bank is considering all options.

18         Obviously, number one, we'd like to see the

19   government just walk away from the property.  But if not,

20   again, at a certain point we would suggest that the bank would

21   have the only interest here, given the value, and would seek

22   the Court's permission to foreclose on the property since it's

23   not getting paid any interest.  You know, even our prior

24   discussions with the -- with the government.

25         So I guess the only thing that I'm suggesting, Your

1    Honor, is that if the parties can be prepared and present to

2    the Court the next steps.  Obviously, the government will want

3    additional discovery but you know, from there, what happens

4    with the property?

5              Right now, this property is not paying its bills.

6    And, you know, the bank's -- the bank's lien -- and I think in

7    any other instance there would be a sale at this point, and

8    there would have been a sale before.  And the government

9    hasn't foreclosed anything at this point.

10             THE COURT:  Well, again, I hear what you're saying

11   and we understood at the time of the initial preliminary

12   order, the hope would be some type of interlocutory sale that

13   would take place.

14             I don't have an answer to your question.  I think

15   it's a good idea that you propose what you -- the way you

16   were, you know -- which, from the bank's view should be -- how

17   it should proceed, and the government -- my hope, to the

18   extent that the lack of a court ruling with respect to the

19   bank's interest was holding up the government's ability to try

20   to agree to anything with the bank.  I'm hoping that this

21   provides with that clarity, but I guess we'll find out.  Okay?

22             MR. KOSTOLAMPROS:  Sure, Your Honor.

23             THE COURT:  All right.  So do you -- when do you

24   want to put that letter in and, again, if you want to have the

25   dialog before you put that letter in with the government,

1    that's fine, but I'm going to have them, the government, put

2    in a letter following yours indicating what portion of the

3    letter they agree with is undisputed at this point and

4    proposing whatever limited additional discovery they think is

5    consistent with my ruling.  Okay?

6              MR. KOSTOLAMPROS:  Sure, Your Honor.  I think we'd

7    be prepared to file this letter by the latest, a week from

8    today.  And frankly, we might do it even earlier.  So --

9              THE COURT:  All right.  That's fine.  So a week from

10   today you'll file that letter and I'll give the government a

11   week to respond.  All right?

12             And when I say respond, the government's letter

13   should indicate what they believe -- again, based upon my

14   rulings, what amount the bank -- is no longer in dispute with

15   respect to their superior interest, what amounts remain

16   disputed, and what specific discovery is the government

17   proposing with respect to the disputes that I've raised and

18   anything the bank puts in, in proposed -- in terms of moving

19   forward, the government can respond to as well if they have a

20   different view.

21             But I anticipate, then, having a conference call

22   later that week.  We can probably even just set it right now,

23   where you know, we'll see where we stand on the numbers, and

24   we have a limited discovery the government seeks.  I'll rule

25   on whether I think it's appropriate or not, and then we'll

1        take it from there.  All right?

2                    But the bottom line is, I anticipate this will be

3        resolved in weeks, not months.  I'm looking at weeks.  Okay?

4                    MR. KOSTOLAMPROS:  We hope so as well, Your Honor.

5                    THE COURT:  All right.  I'm doing the best I can, I

6        can tell you that.  So your letter will come in by November

7        30th, the government's letter by December 7th, and then we'll

8        have a phone conference on December 10th at 2:00 p.m.  Does

9        that work for everybody?

10                   MR. KOSTOLAMPROS:  That works for me.

11                   THE COURT:  Is that okay for the government?

12                   MS. O'CONNOR:  One moment, Your Honor.

13           (Pause)

14                   MS. O'CONNOR:  Yes, Your Honor.  I think you have

15       the restitutions scheduled the same day.

16                   THE COURT:  On December 10th?  At what time?  I

17       don't see that on my calendar, but there's --

18                   MS. O'CONNOR:  No, I -- Your Honor, it's November

19       30th.  Fine for the government.

20                   THE COURT:  All right.  All right.  And obviously,

21       if anything comes up between now and then you can write a

22       letter to the Court, but I'm hoping we'll have much more

23       clarity by that date.  All right?

24                   MR. KOSTOLAMPROS:  Yes.  Thank you, Your Honor.

25                   THE COURT:  All right.  Thank you, everybody.  Have

1     a good day.

2          (Proceedings concluded at 11:59 a.m.)

3          I, CHRISTINE FIORE, court-approved transcriber and

4     certified electronic reporter and transcriber, certify that

5     the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9          *Christine Fiore*

10    _____          November 24, 2020

11         Christine Fiore, CERT

12              Transcriber

13

14

15

16

17

18

19

20

21

22

23

24

25