

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros
T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

November 30, 2020

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

    Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

Per the Court's instructions at the November 23, 2020 hearing in the above-referenced matter, we write on behalf of Danske Bank A/S London Branch ("Danske") to set forth the following: (1) the specific amounts of Danske's claim that the Court recognized based upon its oral ruling granting Danske's summary judgment motion and (2) proposed next steps including allowing Danske to exercise remedies, including but not limited to foreclosing on the Resort Property, and effectuating a sale.

    **1. Danske's Recognized Claim Pursuant to the Court's Order Amounts to $188.39 Million.**

On November 23, 2020, the Court granted Danske's motion for summary judgment in support of Danske's petition asserting a claim as a first-priority lienholder of the Resort Property located in Cabo San Lucas, Mexico. Except for two limited issues, the Court found that Danske was a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B) for both Danske's initial purchase of Lehman Brothers Holdings Inc.'s ("Lehman") perfected senior lien secured by the Resort Property and for subsequent amounts loaned by Danske secured by the Resort Property. 11/23/2020 Hearing Tr. at 4-5, 11, 14, 16. The Court also found that Danske's claim is superior to any other claimant. *Id.* at 6.

As part of its ruling, the Court recognized that the Trimont records reflect that, as of January 2009, "Lehman [loaned] at least $100 million to DCSL pursuant" to the loan agreement. *Id.* at 12, 15. The Court further recognized that Danske is a bona fide purchaser as to at least some portion of the $98 million advanced by Danske after it purchased and assumed the lien from Lehman. *Id.*

Case 2:13-cr-00607-JFB-AYS   Document 962   Filed 11/30/20   Page 2 of 6 PageID #: 32339



600 MASSACHUSETTS AVE., NW  WASHINGTON, DC 20001
T 202.344.4000  F 202.344.8300  www.Venable.com

The Honorable Joseph F. Bianco
November 30, 2020
Page 2

at 16. The Court also held that there were two limited areas of dispute, set forth briefly below, as to which the government was permitted to conduct limited discovery. 11/23/2020 Hearing Tr. at 4-5; *id.* at 15.

The first issue concerns Danske's claim relating to the $107 million of the Lehman loan that Danske purchased and which ultimately became part of Facility A. *Id.* at 15. The government's only dispute as to the specific amount of Danske's Facility A claim is $6 million of that $107 million claim. Specifically, the Government's consultant claimed in her declaration that the Trimont invoices supported a balance of $101,240,922 but that Danske did not provide documentation to support the remaining amount of $6,297,406. *See* Fedkenheuer Declaration, Dkt. 911 at ¶ 12. Contrary to the Government's consultant's assertion, Danske produced Bank of New York's September 2008 letter listing the loan and its value of $107,529,665.05. *See* Danske MSJ Ex. 32 (September 15, 2008 Bank of New York Letter) at DANSKE_0016009 (Dkt. No. 853-2); Danske MSJ Ex. 10 (Trimont Summary Statement – Facility A) at DANSKE_0015613 (Dkt. No. 850-10); *see also* DANSKE_0016724 (12/18/08 Facility A Invoice, produced to government on 7/2/20). Notwithstanding the foregoing, the Court's oral ruling makes clear that the only amount at issue as to Danske's Facility A claim of $96.4 million, Danske MSJ Ex. 92 (Danske Loan Statement – Facility A) (Dkt. No. 861-2), is $6,297,406. Thus, there is no issue as to the remaining $90,102,594 of Danske's Facility A claim and therefore, under the Court's oral ruling on summary judgment, this amount is recognized.

The second issue for which the Court allowed limited discovery relates to amounts advanced by Danske to the borrower after the August 22, 2015 bill of particulars. 11/23/2020 Hearing Tr. at 18, 22. The Court made clear that the government is not entitled to every single receipt on every expense but could seek a video deposition of Michael Delvin to test Mr. Delvin's declaration as to what kind of diligence he was providing with respect to amounts advanced by Danske to the borrower after the bill of particulars was filed. *Id.* at 24-25. In discussing the amounts advanced by Danske after the bill of particulars was filed, the Court referenced those amounts as $50 million and stated "it's not clear to me what would be the basis, other than lack of an ongoing transaction, of not allowing the additional 50 - - $50 million to also be the subject and the superior interest of the bank." *Id.* at 19. To be clear, all of the approximately $50 million loaned after the filing of the bill of particulars was advanced under the revolving $15 million Facility C.[1] Danske's claim as to Facility C is not $50 million but $14.1 million, representing the amounts still owed under Facility C. As of the date of the August 22, 2015 bill of particulars, Facility C was already drawn at $5,234,184.84 (*see* Danske MSJ Ex. 97 (Trimont Summary

---

[1] The maximum that could be loaned under Facility C at any given time was $15 million. Thus, under revolving Facility C, Danske provided funding, the borrower would pay certain amounts owed under Facility C, thereby reducing the outstanding amount, and then the borrower would also obtain additional advances as needed.



The Honorable Joseph F. Bianco
November 30, 2020
Page 3

Statement – Facility C) at DANSKE_0015671 (Dkt. No. 861-7)). Accordingly, the specific amounts advanced under Facility C after the August 22, 2015 bill of particulars total $8.8 million. This $8.8 million is, therefore, the only amount at issue under Facility C.

The remaining amounts of Danske's claim are the following: $18 million of Facility B, $50 million Profit Participation Fee, and $30 million in unpaid interest. Each is addressed below:

- Amounts advanced under Facility B were loaned in March 2009 and, based on the Court's ruling, there is no factual issue in dispute as to those amounts because the Court has found Danske was a bona fide purchaser for value for all amounts advanced before the August 2015 bill of particulars. Facility B has a balance of $18 million. *See* Danske MSJ Ex. 93 (Danske Loan Statement – Facility B) (Dkt. No. 861-3).

- The $50 million profit participation fee is set forth in the Third Amended and Restated Loan Agreement (Danske MSJ Ex. 58 §§ 2.1 (DANSKE_0012255), 5.7 (DANSKE_0012279) (Dkt. Nos. 856-3, 856-4)) entered into on April 29, 2014, almost fourteen months before the August 2015 bill of particulars was filed. As set forth in Danske's filings, the PPF stems from the $45 million of unpaid interest owed on the original Lehman loan. Danske MSJ Ex. 40 (DANSKE_0013865 § 5.3(a)) (Dkt. No. 853-10); *see also* Danske MSJ Ex. 42 (Trimont Loan Notices) at DANSKE_0015594 (Dkt. No. 854-2). The government's consultant questioned $5 million of the $50 million PPF but acknowledged that there is support for $45 million of the PPF. *See* Fedkenheuer Declaration, Dkt 911, ¶ 30. Accordingly, there is no dispute as to Danske's entitlement under the loan agreements as to at least $45 million of the $50 million PPF.

- As set forth in Danske's filings, Danske is entitled to interest due under the loan agreements and those amounts continue to grow under the default interest rate. *See* Danske MSJ (Dkt. No. 848) at 6; Danske Reply (Dkt. No. 923) at 31; Supplemental Decl. of D. Daniel ¶ 29; *see also* Daniel Ex. 5 (Dkt. No. 925-5). Other than its challenge to Danske as a bona fide purchaser for value, the government raised no factual dispute as to the rate or amount of unpaid interest due under the loan agreements. Taking into account the disputed amounts of $6.2 million as to Facility A (evidence of which Danske provided to the government in March and July 2020) and the $8.8 million as to Facility C, outstanding interest on the remaining amounts recognized by the Court equals $30,057,459.81.

In sum, set forth below is a schedule setting forth the amounts of Danske's claim as of November 30, 2020 that we believe, based upon the Court's oral ruling, are recognized:



The Honorable Joseph F. Bianco
November 30, 2020
Page 4

| Specific Claim (with submitted claim amount) | Amount Of Danske's Claim Recognized by Court's 11/23/2020 Oral Ruling |
|---|---|
| Facility A ($96.4 million) | $90,102,594.00 |
| Facility B ($18 million) | $18,000,000.00 |
| Facility C ($14.1 million) | $5,234,184.84 |
| PPF ($50 million) | $45,000,000.00 |
| Unpaid Interest (as of November 30, 2020, approx. $35 million) | $30,057,459.81 |
| **TOTAL ($213.5 million)** | $188,394,238.65 |

We respectfully submit a proposed order setting forth these amounts. Such an order will clarify the amounts recognized per the Court's oral ruling and will assist the parties as they consider their options going forward.

2. **Proposed Next Steps for the Court's Consideration—Remove the Property From the Preliminary Order of Forfeiture or Allow Danske to Foreclose or Exercise Other Remedies**

As we mentioned at the November 23 Hearing, given the Court's recognition of Danske's claim and recognition that Danske has priority over any other claimant, we believe the Government should agree to amend the Preliminary Order of Forfeiture to remove the Resort Property from the Forfeitable Assets listed therein. There is simply no justification for the government to seek forfeiture of the Resort Property when there is no value above Danske's claim. As we have cited before, the Department of Justice's own Asset Forfeiture Manual sets forth that net equity thresholds in pursuing forfeiture of residential/commercial property should be 20% of appraised value. *See* DOJ Asset Forfeiture Manual at 72.

To the extent the Government refuses to amend the Preliminary Order of Forfeiture, we respectfully request that the Court allow Danske to foreclose on the Resort Property in Mexico. It has been 8 months since the Court entered the Preliminary Order of Forfeiture in which the Court specifically allowed for an interlocutory sale of the Resort Property. In those 8 months, Danske has not been paid any principal and interest due to it under the loan agreements. Additionally, other than challenging every aspect of Danske's claim, the government has done nothing to move forward with an interlocutory sale and, importantly, has not even shown that it can effectuate a sale of property that is located in Mexico.

Given these issues, Danske, who has the only recoverable interest here, and is the only interested party who could effectuate a foreclosure and sale in Mexico, should be allowed to do



The Honorable Joseph F. Bianco
November 30, 2020
Page 5

so. In *U.S. v. Power Company, Inc.*, 06-cr-186, 2010 WL 5387618 (D. Nev. Dec. 22, 2010), a lienholder sought approval to foreclose. There, although the court recognized that the lienholder was barred under 18 U.S.C. 1963(i) from initiating foreclosure, the Court found that the government had a reasonable amount of time to sell the property but had not and it did not appear that the government would be able to sell the property in the foreseeable future. *Id.* at 5-6. The Court imposed a deadline for the parties to agree upon a process to sell the property or submit alternative proposals. *Id.* Similarly, here, the government has had more than enough time to effectuate an interlocutory sale but has not and has failed to demonstrate that it is even able to effectuate a sale.

Allowing Danske to foreclose and effectuate a sale, as well as any other remedies it is entitled to under the loan agreements, is in the best interest of all interested parties. Danske could effectuate a foreclosure and sale within four months (provided that the foreclosure is uncontested in Mexico), thus providing clarity and stability to the Resort and the Resort homeowners, as well as to equity holders and victims of Defendants' crimes. If the proceeds of the sale of the Resort Property amount to more than Danske's claim, those amounts can be set aside in escrow to be distributed pursuant to Court order. Allowing Danske to foreclose on the property and effectuate a sale would also be consistent with DOJ's own guidance. Specifically, prosecutors are instructed to consider alternatives to forfeiture when there is negative net equity value and disposition problems and these alternatives can include releasing the property to a lienholder. DOJ Asset Forfeiture Manual at 27.

In closing, the time has come to end the government's steadfast and blind refusal to acknowledge the obvious—that Danske's legitimate claim is greater than any sale could bring. The government's tactic of challenging all of Danske's claim has been and remains contrary to law. In challenging every aspect of Danske's claim, the government clearly has paid no attention to the fact the government's position "must be 'more than merely undeserving of sanctions for frivolousness,' . . . and must instead have a '"reasonable basis both in law and fact,' . . . and must be "substantially justified." *U.S. v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009) (recognizing that claimants in forfeiture proceeding can seek attorney's fees against the government under the Equal Access to Justice Act). The government's stubborn and unjustified refusal to acknowledge Danske's legitimate claim and the real value of the Resort Property has led to the contrary result it seeks—it has harmed the value of the Resort Property and caused further direct harm to victims in that the government could have entered a settlement with Danske that would have guaranteed millions for the benefit of victims. Further, it has depleted the recovery prospects of Danske, as well as victims. By refusing to even discuss a settlement initially, then refusing to recognize Danske as having an interest and ultimately challenging (and continuing to challenge) Danske's claim, the government has forced Danske to expend millions of dollars. Those monies could have been better spent in a settlement to provide to victims and thus calls into question the government's rationale here—ultimately whose interest is the government protecting when victims are left worse



The Honorable Joseph F. Bianco
November 30, 2020
Page 6

off than they otherwise would have been if the government had accepted Danske's prior offers of settlement that would have provided victims with guaranteed sums up-front and the potential for additional amounts after payment of Danske's significantly reduced claim?

    We thank the Court for its attention to this matter.

                                              Respectfully,

                                              /s/ George Kostolampros

                                              George Kostolampros
                                              Doreen S. Martin
                                              Xochitl S. Strohbehn

cc:      All parties of record via ECF