

George Kostolampros
T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

December 9, 2020

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

    Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

    We write on behalf of Danske Bank A/S London Branch ("Danske") to briefly respond to certain points made in the government's December 7, 2020 letter. In its letter the Government overreaches yet again and we are hopeful that this response will help the Court in advance of the hearing scheduled for December 10.

    **1. There Is No Dispute as to Amounts Advanced Prior to the Government's August 22, 2015 Bill of Particulars.**

    The government acknowledges that the "Court granted Danske summary judgment as to $101,240,922 of the $107,538,238 Initial Loan." 12/7/20 Gov't Letter at 3; 11/30/20 Danske Letter at 2. Without any basis the government argues for the first time that Danske is not entitled to $13.8 million in unpaid interest that was capitalized from February 2009 through December 2011, Dkt. No. 848-1 ¶ 84(b).[1] As set forth in Danske's summary judgment papers, the

---

[1] Astonishingly, the government also claims that $1.6 million of Danske's Facility A claim was not recognized by the Court because those amounts were advanced by Danske after acquiring the loan. Actually, that amount was advanced on January 14, 2009—the day after Danske and Lehman Brothers executed the Omnibus Assignment and Assumption Agreement on January 13, 2009. The government also challenges for the first time approximately $200,971 in modification and closing fees. There is absolutely no basis in challenging those amounts, which were not even challenged by the government's own consultant.

government cannot re-write the underlying agreements. Danske is entitled to be paid interest and was and is entitled under the loan documents to capitalize such interest.

And while the government argues that the Court did not grant Danske summary judgment as to the $45 million PPF—which was agreed to in early 2009 (more than six years before the August 22, 2015 Bill of Particulars was filed)—the fact is that the Court granted summary judgment to Danske on its claim except with respect to two narrow categories: (1) establishing support for $6 million in principal related to the initial loan, 11/23/20 Tr. at 12, 15, and (2) whether Danske is a bona fide purchaser as to the amounts of Danske's claim that was advanced after August 22, 2015.[2] *Id.* at 18, 22. Accordingly, because the Court granted Danske's motion for summary judgment except for these two issues, it necessarily follows that the Court has recognized Danske's claim as to the PPF. In fact, the government's own consultant acknowledged there was a basis for $45 million of the PPF. Fedkenheuer Decl. ¶ 30 (Dkt. No. 911). Further, the government in its own letter only requests discovery as to the $5 million increase in the PPF from $45 million to $50 million. Accordingly, at the very least there is no dispute as to $45 million of the PPF.

Similarly, the government erroneously claims that the Court did not recognize the $18 million owed under Facility B, all of which was advanced by February 2010, years prior to the August 22, 2015 Bill of Particulars. Based upon the Court's oral ruling, the amounts owed and recognized are the following: $90.1 million in Facility A, $18 million in Facility B and $45 million in the PPF. Not even taking into account Facility C or unpaid default interest, Danske's recognized claim is no lower than $153.1 million. Adding the amounts owed under Facility C that were advanced prior to the August 22, 2015 Bill of Particulars and outstanding interest due on all facilities, Danske's recognized claim is $188.39 million.[3]

## 2. **The Government's Discovery Requests Are Consistent with its Pattern of Overreaching.**

In its November 23, 2020 ruling, the Court was clear: Danske is a bona fide purchaser as to amounts advanced prior to 2015. 11/23/20 Tr. at 23:25-24:2 ("Again, with a caveat regarding this bona fide purchaser of value issued with respect to the additional loans and the time period *after the bill of particulars was filed*" (emphasis added)); *see id.* at 16:3-12 (I concluded . . . that the bank does have a valid interest in the additional loans by virtue of an interest in the initial loan

---

[2]   The government argues that Danske has not loaned "new money" to the Resort Property since April 29, 2014—calling into question their incongruent and incorrect insistence that Danske is not a bona fide purchaser as to funds advanced under Facility C.

[3]   In yet another overreaching and unsupported argument, the government argues that should the Court determine that Danske was not entitled to amounts repaid to pay down additional loans, those amounts should be applied to Facility A. The government offers no legal basis for such a theory. A finding that Danske was not a bona fide purchaser as to amounts advanced post-Bill of Particulars that remain outstanding does not mean that the government can somehow claw back amounts that were repaid. It bears noting that those repayments were for amounts that Danske advanced and was owed.

2

and I don't think there's any argument that the money, the $98 million was advanced to the resort under the additional loans and . . . I believe the bank has a valid interest, and *certainly as the bona fide purchase for value*, at least to some extent, *with respect to that $98 million*." (emphases added)). Ignoring the Court's ruling, the government repeatedly argues that Danske is not a bona fide purchaser for value as to Additional Loans. *See, e.g.*, 12/7/20 Letter at 1, 2, 4, 5. The government's refusal to acknowledge what the Court actually ruled is emblematic of the government's broader conduct and its persistent habit of making misstatements that may serve its narrative, but are far from true.[4]

Based on its purposeful misreading of the Court's oral ruling, the government seeks production of "complete draw request packages," 12/7/20 Letter at 8-9, for 20 sample draws, 8 of which were requested and drawn prior to August 22, 2015 when the August 22, 2015 Bill of Particulars identifying the Resort Property was filed. As Danske has previously explained, these complete draw request packages consist of many thousands of pages. The government also lists 26 additional discovery requests—many of which come directly from their prior requests. In re-serving certain of the broad requests it initially served on June 17, 2020, the government simply ignores the Court's express admonition that the Court would only allow certain limited discovery. 11/23/20 Tr. at 24:24-25.

### 3. **Assuming the Court Confirms Recognition of Danske's Claim as set Forth in Danske's November 30, 2020 Letter, Discovery as to The Remaining Outstanding Claim Will Be Moot.**

Pursuant to the Court's oral ruling, a total of $15.097 million remains at issue. This amount consists of $6.297 million as to Facility A and $8.8 million advanced under Facility C after the August 22, 2015 Bill of Particulars was filed. Danske has long argued to the government that the

---

[4] The government writes that Danske "raised the subject of a foreclosure only in 2020," Letter at 14. That is not only demonstrably false, it ignores that the government *itself* addressed the possibility of foreclosure in a letter submitted on September 27, 2019 in which the government expressed the concern that, if the preliminary orders of forfeiture were limited to the equity interests, Danske could "potentially defeat the forfeiture by foreclosing on the note." *See* Dkt. No. 724 at 2; Dkt. No. 722 at 5; *see* Dkt. No. 728 at 4. As Danske made clear in previous letters to this Court (Dkt. Nos. 423, 616) and has made clear to the government over the years (*see* Reply at 28-29 (Dkt. No. 923)), foreclosure has always been an option Danske sought to pursue in the event of an uncured default—assuming, of course, that Danske was able to obtain Court permission to foreclose. Another blatant misstatement is the government's argument that Danske entered into a side agreement with Jowdy "*without waiting* for the government to provide its consent to, or comments . . . ." As set forth in Danske's letter to the government attaching the draft agreement, the government recognized "it is instrumental to keep the current development team in place for a number of reasons." *See* Supplemental Declaration of David Daniel ¶ 28; GX-20. Danske then followed up with an email over two weeks after its initial email requesting any comments or questions from the government. In that email, Danske's counsel noted that the government had not responded to Danske's letter with any comments or objections so Danske went ahead and executed the document but "[t]hat being said, however, we are willing to address any questions so please let us know as they arise." *See* 9/10/2018 email attached hereto as Exhibit 1. The government, however, never raised any objection or question until it did so before this Court.

3

value of the Resort Property is significantly less than Danske's claim. Now, in its letter, the government finally agrees and admits that to be the case. It is Danske's view that the value of the Resort Property is significantly less than Danske's recognized claim. As such, there is absolutely no rational basis for Danske to continue to spend significant funds in discovery to assert an interest in the $15.097 million in dispute when there is absolutely no prospect for recovery of that amount.[5] Accordingly, assuming the Court recognizes Danske's claim as set forth in Danske's November 30 letter, Danske will withdraw its claim to the $6.297 million of principal as to Facility A and the $ 8.8 million advanced under Facility C.[6] Thus, there would be no remaining factual dispute.

We thank the Court for its attention to these issues.

Respectfully,

/s/ George Kostolampros

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn

cc: All parties of record via ECF

---

[5] The government seeks a settlement conference before Magistrate Shields after discovery is completed. Danske does not agree to such a mediation, which it attempted previously with no movement by the government. In fact, the government would not even concede that Danske was entitled to any claim. Given the government's intransigence for the five years in which Danske has sought a resolution, and its continued refusal to recognize Danske's rightful claim, it is Danske's view that such mediation will not lead to a resolution.

[6] Danske is also willing to withdraw its claim to the $5 million increase in the PPF, to the extent the Court finds that the $5 million remains at issue.

4