

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

January 15, 2021

Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

        Re:     <u>United States v. Kenner and Constantine</u>
                    No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

      The government respectfully submits this letter pursuant to the Court's directive on December 10, 2020 to address: 1) the amount of Danske Bank A/S London Branch's ("Danske") claim for which the Court granted Danske summary judgment in the Court's November 23, 2020 oral ruling (the "Oral Ruling") and, relatedly, the Government's position as to whether it will continue to pursue forfeiture of the amount of Danske's claim that remains in dispute; 2) the legal basis for forfeiting the funds paid to Danske in non-arms' length transactions, or, alternatively, applying those forfeitable funds to reduce the amount of Danske's claim for which Danske was granted summary judgment; and 3) the government's position regarding third-party claimants Owen Nolan and CSL Properties' legal argument that their claim is superior to Danske's claim under a constructive trust theory.  In addition, as discussed below, Danske's assertions in its December 21, 2020 letter must be rejected as they, *inter alia*, improperly attempt to reargue issues decided by the Court in the Oral Ruling, and seek to avoid discovery ordered by the Court in the Oral Ruling.

    I.      <u>The Amount of Danske's Claim For Which Danske was Granted Summary Judgment</u>
            <u>and, Relatedly, the Government's Position as to Whether it Will Continue to Pursue</u>
            <u>Forfeiture of the Amount of Danske's Claim that Remains in Dispute</u>

      In the Oral Ruling, the Court divided Danske's claim into two parts, namely, the "Initial Loan" and the "Additional Loans."  These two parts were originally defined by the government in its motion papers as: 1) the $107,538,327.83 in principal that *Lehman* purportedly advanced to the DCSL Resort *prior* to Danske's acquisition of the Initial Loan, plus the $49,132,479 in unpaid interest that was due to *Lehman prior* to Danske's acquisition of the Initial Loan (*i.e.*, the "Initial Loan"); and 2) the funds advanced by *Danske*, and interest and fees accrued by *Danske*, *after* Danske acquired the Initial Loan from Lehman (*i.e.*, the "Additional Loans").  *See, e.g.*, Government's Motion for Summary Judgment, Docket Entry ("DE") 912, at ECF p. 44 n.12

("Danske . . . asserts in its Petition that it is entitled to approximately $157 million for the Initial Loan, . . . which includes principal and interest.").  Indeed, the Oral Ruling demonstrates that the Court understood and adopted the distinction between the Initial Loan and Additional Loans made by the government when defining the two parts.  *See, e.g.*, Transcript of Oral Ruling at p. 15-16 ("The bank asserts that in early 2009 borrower owed Lehman $107,538,327.83 in principal, and over $49 million in unpaid accrued interest.  The government notes that the [Trimont] records only establish that Lehman loan, and owes $101,240,922 to the resort that remained a factual issue that the Court needs to resolve, obviously, before completing -- ability to address the bank's summary judgment motion.  I'll discuss that with the parties at the -- at the end.  *Moving to the additional loans* . . . I don't think there's any argument that the money, the $98 million [*i.e.*, the funds advanced by Danske after it acquired the Initial Loan], was advanced to the resort under the additional loans . . . .").

For the first time, and in a blatant attempt to avoid discovery regarding the legitimacy of the Additional Loans, Danske seeks to redefine the government's definition of the "Initial Loan" to encompass funds that were advanced by *Danske after* it acquired the Initial Loan from Lehman, as well as interest, fees and expenses that *Danske* charged *after* it acquired the Initial Loan. Specifically, Danske argues that the funds it advanced, and interest and fees it accrued, after it acquired the Initial Loan, should now be considered part of the Initial Loan because Danske was allegedly "obligated" to lend the funds, and allegedly "entitled to" collect the interest under, the Initial Loan agreement.  Danske's December 21, 2020 letter, DE 975 at ECF p. 2.  Similarly, Danske argues for the first time that the Additional Loans should be limited to only those funds advanced *beyond* "Lehman['s] *obligation* of $125 million."  *Id.* at ECF p. 3 (emphasis added). However, as discussed above, the distinction the government made when identifying the claim amounts pertaining to the Initial Loan and Additional Loans, and which the Court recognized, was not based on "obligations," but rather on *which lender* advanced the funds.  That is to say, the "Initial Loan" claim amount represents the funds advanced, and interest charged, by Lehman, whereas the "Additional Loans" claim amount represents the funds advanced, and interest and fees charged, by Danske.  Indeed, Danske's prior filings demonstrate that Danske understood this distinction.  *See, e.g.*, Danske's reply memorandum of law, DE 923, at ECF p. 18 ("The government contends that these loans were not new loans, but rather modifications and amendments of the loan Lehman extended to the Borrower and therefore, that Danske must establish it acquired a legal interest *in the initial loan* to establish a legal interest in the *subsequent funds Danske advanced*.") (emphasis added); Danske's November 30, 2020 letter, DE 962, at ECF p. 2 (stating that "[t]he first issue [of fact] concerns Danske's claim relating to the $107 million of the Lehman loan [*i.e.*, the Initial Loan] that Danske purchased and which ultimately became part of Facility A.").

Danske's misguided attempt to broaden the definition of "Initial Loan" to include principal and interest in excess of the approximately $157 million that the DCSL Resort allegedly owed Lehman at the time Danske acquired the Initial Loan fails for another reason: once Danske modified and/or amended the Initial Loan agreement, Danske's obligations and entitlements were governed by the terms of the *new* loan agreements.  Indeed, in the course of modifying and/or amending each loan agreement, Danske and the DCSL Resort renegotiated the terms of the Initial Loan, including terms affecting Danske's obligation to advance funds, and entitlement to accrue

any principal, interest or fees, under each new agreement.[1]  Therefore, any funds advanced and interest and fees charged after the Initial Loan agreement was modified/amended must be considered part of the Additional Loans.

Significantly, Danske's attempt to characterize the principal, interest (including $13,860,658 in capitalized interest) and fees that *it* accrued as undisputed -- under the guise that they are part of, or authorized by, the Initial Loan -- is nothing more than an attempt to avoid the Court-ordered discovery relating to Danske's transactions with the DCSL Resort and its accrual of interest and fees.  The Court expressly authorized discovery regarding the Additional Loans, and "the bank and Mr. Jowdy['s] . . . arrangement through which Jowdy would permit the bank to systematically deplete the equity in the resort . . . [and] increase the resort's debt," because the Court found that there is an issue of fact as to whether Danske is a bona fide purchaser for value for *its* transactions with the DCSL Resort.  November 23, 2020 Oral Ruling Transcript at pp. 16-17.  As the government previously explained in its December 7, 2020 letter to the Court, Danske had no obligation to continue lending to the DCSL Resort because the DCSL Resort has been in default since the time Danske acquired the Initial Loan from Lehman in 2009.[2]  The loan agreements expressly provided that Danske could withhold further disbursements of funds upon the occurrence of a default.  *See* Government's December 7, 2020 letter to Court, DE 966, at ECF pp. 13-14.  Thus, Danske's calculated decision not to foreclose despite the DCSL Resort's failure to reduce the debt during the entire 11-year period that Danske held the note, and the resulting accrual of hundreds of millions in debt that has essentially consumed the entire equity in the DCSL Resort, while Danske promised to pay Kenneth Jowdy as much as $10.5 million upon a sale of the DCSL Resort, is precisely the type of non-arms' length conduct as to which the Court held the government may obtain discovery.[3]

_____

[1] In fact, Danske acknowledges that all of the $98 million in funds it purportedly loaned was pursuant to modified and/or amended loan agreements except for $1,600,000 that was purportedly advanced by Danske on January 14, 2009.  Danske's December 21, 2020 letter, DE 975 at ECF p. 2.  As discussed herein, this amount was advanced by Danske, not Lehman, and therefore is part of the Additional Loan claim amount that is subject to the Court-ordered discovery.

[2] Parenthetically, it is entirely possible that Danske's records intentionally did not reflect the capitalization of interest until April 2013 to conceal the fact that the DCSL Resort had been in default.

[3] Section 3 of Danske's December 21, 2020 letter, DE 975 at ECF pp. 7-9, must be disregarded in its entirety as an impermissible attempt to reargue the summary judgment motions.  The Court held in the Oral Ruling that the government is entitled to conduct discovery pertaining to: 1) the amount of the Initial Loan; 2) whether Danske is a bona fide purchaser for value as to all of the Additional Loans; and 3) for other categories of documents or gaps in the documentation for the Additional Loans that the government still seeks.  *See* November 23, 2020 Oral Ruling Transcript at pp. 15-16, 18, 25.  The arguments in Section 3 of Danske's December 21, 2020 letter, under the heading, "Danske Respectfully Submits that Discovery Is not Warranted," DE 975 at ECF pp. 7-9, are tantamount to an untimely motion for reconsideration or reargument for which Danske has neither sought nor obtained permission from the Court.  In any event, Danske's arguments are unpersuasive.  Here, too, Danske attempts to redefine the Initial

For these reasons, and as discussed in the government's letter filed on December 7, 2020, DE 966, the Court granted Danske summary judgment as to, at most, $101,240,922 of the Initial Loan. Moreover, because the DCSL Resort made $26,799,972 in loan repayments toward the principal balance of the Initial Loan, the amount for which Danske is entitled to summary judgment pursuant to the Oral Ruling should be at most $74,440,950 (*i.e.*, $101,240,922 minus the $26,799,972 Danske has already received in repayment). In addition, although the Court did not grant summary judgment with respect to, and did not even address, the $50 million in unpaid interest (later characterized by Danske as the Profit Participation Fee ("PPF")) that the DCSL Resort purportedly owed Lehman at the time Danske acquired the Initial Loan, assuming for argument sake that $45 million of that amount were undisputed, Danske's total undisputed claim would be, at most, $119,440,950 (*i.e.*, $74,440,950 + $45,000,000).[4] Lastly, as discussed in the government's December 7, 2020 letter, *see* DE 966 at ECF p. 2, and as addressed more fully below, should the Court find that Danske's claim must be reduced by some or all of the $99,978,307[5] paid by the DCSL Resort to Danske in conjunction with Additional Loan transactions that were not at arms' length, Danske's claim would be reduced to as little as approximately $19,462,643.[6] Since there are factual issues regarding the amount of Danske's claim, the government is entitled to discovery and entitled to litigate these issues in an ancillary proceeding. Even if the Court were

---

Loan and Additional Loans so as to avoid discovery on the non-arms' length Additional Loan transactions. In addition, Danske argues that the Court should essentially reverse its decision -- which allowed the government to conduct discovery on the Additional Loans -- because Danske allegedly "gave value" for the Additional Loans and "was reasonably without knowledge of forfeiture." DE 975 at ECF p. 8. However, Danske fails to recognize, among other things, that the "bona fide" element of its bona fide purchaser for value defense remains at issue. Indeed, as discussed, the Court held that an issue of fact remains as to whether Danske systematically depleted the equity in the DCSL Resort through its modified and/or amended loan agreements, and, therefore, did not engage in arms' length transactions. *See* November 23, 2020 Oral Ruling Transcript at pp. 16-17.

[4] Danske concedes that at least $5 million of the PPF remains in dispute. *See* Danske November 30, 2020 letter, DE 962, at ECF p. 3.

[5] The government's December 7, 2020 letter identified $76,993,275 in loan repayments towards the Additional Loans. *See* DE 966 at ECF p. 2. This sum amounted entirely of principal repayments applied to Facilities B and C. *Id*. In addition, Danske received $22,565,018 in interest repayments related to additional loans funded through Facilities A, B and C, and $420,014 in closing costs and fees related to the modified/amended loan agreements. Accordingly, the total amount Danske received in repayment for the Additional Loans is $99,978,307.

[6] Should the Court find that Danske is not entitled to the interest it accrued on the Initial Loan *after* acquisition of the Initial Loan, the amount for which Danske is entitled to summary judgment pursuant to the Oral Ruling should be further reduced by $1,668,334 because the DCSL Resort made $1,668,334 in repayments towards the interest that accrued on the Initial Loan after Danske acquired the Initial Loan.

to accept Danske's misleading and inaccurate assertion that the undisputed portion of its claim amounts to $176.27 million, the government would continue to pursue forfeiture of the DCSL Resort.

Danske argues that it should now be permitted to foreclose on the DCSL Resort -- something it could have done at any point after it acquired the loan in 2009 up until when the government filed the bill of particulars in the forfeiture action, and, which, if Danske had foreclosed, would have left the majority of the equity in the DCSL Resort -- because the value of the DCSL Resort continues to diminish. *See* DE 975 at ECF p. 9.  Danske conveniently ignores the fact that its exorbitant and unsupported claim is what negatively impacts the value of the DCSL Resort.  To be sure, if the Court finds that the Additional Loan transactions were not at arms' length and that Danske is not entitled to keep the funds repaid to it for those transactions, then the DCSL Resort would retain significant value.

Danske additionally argues that it should be permitted to foreclose because the "Court ha[s] no jurisdiction over the [Mexican] trust" and "the government cannot sell the Resort Property." DE 975 at ECF p. 10.  Contrary to Danske's contentions, the Court *has* jurisdiction to order the forfeiture of the DCSL Resort under 21 U.S.C. 853(l) regardless of the trust (that was served with notice of the forfeiture and failed to file a petition), and the government *can* sell the forfeited Resort Property through an interlocutory sale, or, alternatively, upon entry of a final order of forfeiture with assistance from the Mexican government.  Likewise, Danske's contention that "the Resort Property would remain encumbered by Danske's senior secured lien, which would make a sale highly unlikely unless Danske was willing to waive the remaining amounts owed under its recognized claim," *id.*, runs afoul of basic principles of forfeiture law.  Once a court orders the forfeiture of property in a final order of forfeiture, the government will own clear title to that property, with the exception of only those interests the court determines to be valid.  *See* Fed. R. Crim. P. 32.2(c); *United States v. Coffman*, 612 F. App'x 278, 285 (6th Cir. May 11, 2015) ("After the commission of the criminal acts, title to forfeitable property, by operation of the relation-back clause, actually belongs to the government. . . In fact, the statute provides only two exceptions to this relation-back principle: if, at an ancillary proceeding, the petitioner shows that his interest in the property was superior to the defendant's (now government's) interest or that he was a bona fide purchaser for value." (citations and internal quotation marks omitted)); *In re Am. Basketball League, Inc.*, 317 B.R. 121, 128 (N.D. Cal. Bankr. 2004) ("These ancillary proceedings, similar to quiet title proceedings, adjudicated the validity of the claimed interests and extinguished interests that were not pursued. The final order of forfeiture, then, necessarily determined all third party claims to the proceeds and awarded clear title to the United States."); *United States v. BCCI Holdings (Luxembourg), S.A.*, 69 F. Supp. 2d 36, 37 (D.D.C. 1999) (entering final order of forfeiture that, *inter alia*, "declare[d] that the United States ha[d] clear title to all property forfeited during th[e] proceeding").  Thus, once the Court issues a final order of forfeiture forfeiting the DCSL Resort, any of Danske's claimed interest in the DCSL Resort that has not been recognized by the Court will be extinguished.  Notably, the only case relied upon by Danske to support its flagrantly false assertion is *Berkshire Bank v. Tedeschi*, 2013 U.S. Dist. LEXIS 43214 (N.D.N.Y. Mar. 27, 2013), which was an action filed by a bank to recover the balance due on promissory notes, *not* a forfeiture action.  Danske's arguments are a mere attempt to avoid having to meet its legal burden of proving that it is a bona fide purchaser for value for its claimed interest in the DCSL Resort.

II.     The Legal Basis for Forfeiting the Funds Paid to Danske in Non-Arms' Length
        Transactions, or, Alternatively, Applying Those Forfeitable Funds to Reduce the
        Amount of Danske's Claim for Which Danske was Granted Summary Judgment

        The law is well settled, and the forfeiture statutes expressly provide, that the government
may forfeit any property that is derived from the proceeds of defendants' wire fraud and wire
fraud conspiracy, and any property that is traceable to property involved in defendants' money
laundering conspiracy (*i.e.*, property traceable to the facilitating property). *See* 18 U.S.C. §
981(a)(1)(C) (requiring forfeiture of any "property, real or personal, which constitutes or is
derived from proceeds" traceable to defendants' violations of 18 U.S.C. §§ 1343 and 1349); 18
U.S.C. § 982(a)(1) (requiring forfeiture of any "property, real or personal, involved in" the
defendants' violations of 18 U.S.C. § 1956(h), "or any property traceable to such property");
*United States v. Nicolo*, 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009) (stating that forfeitable
property includes property that "is 'derived from' proceeds of the offense," and " 'traceable to'
property that was involved in the offense." (citation omitted)); *United States v. Eleven Vehicles*,
836 F. Supp. 1147, 1154-55 (E.D. Pa. 1993) (holding that the government "is entitled to the
forfeiture of . . . properties . . . [that] are the proceeds of property used to facilitate the violation
of  18 U.S.C. §§ 1956 or 1957."); *see also United States v. One 1980 Rolls Royce*, 905 F.2d 89,
91 (5th Cir. 1990) (noting "that any profits, appreciation, or income from drug money proceeds
is forfeitable"); *United States v. Moses,* 2010 WL 3521725, at *7 (D. Vt. Sept. 7, 2010) ("[A]ny
profits or appreciation in value from drug proceeds is forfeitable."); *United States v. Vogel,* 2010
WL 547344, at *4 (E.D. Tex. Feb. 10, 2010) ("[T]he government may seize all property from
illegal drug-trafficking activity including any investment returns, appreciation, and interest that
are traceable to that property.").  In accordance with well-settled law, the Court ordered the
forfeiture of the DCSL Resort, and all proceeds traceable thereto, in the Preliminary Orders of
Forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 982(a)(1).  *See* DE 825; DE
826.

        The purported loan repayments at issue -- *i.e.*, the funds paid to Danske as repayments for
funds Danske purportedly advanced to the DCSL Resort under the Additional Loans -- are funds
generated by the forfeitable DCSL Resort.  Thus, these funds constitute both property "derived
from" the proceeds traced to the forfeitable DCSL Resort, as well as proceeds "traceable to" the
DCSL Resort, which was involved in defendants' money laundering conspiracy.[7]  Contrary to
Danske's contention that the government seeks to "claw-back" these funds, DE 975 at ECF p. 6,
these funds are forfeitable property in the first instance.  As such, the only way Danske can
defeat the forfeiture of the loan repayment funds is to demonstrate that it is a bona fide purchaser
for value for those funds.  *See United States v. Nichols*, 841 F.2d 1485, 1488-89 (10th Cir. 1988)
(explaining that "[a]ny [forfeitable] property that is subsequently transferred to a person other
than the defendant . . . shall be ordered forfeited to the United States, unless the transferee

---

[7] Even if the Court had not ordered the forfeiture of the property derived from the
proceeds traced to the DCSL Resort and/or proceeds traceable to the DCSL Resort, the law
permits the government to seek the forfeiture of newly discovered forfeitable property at any
time.  *See* Fed. R. Crim. P. 32.2(e)(1)(A).  Here, the government did not learn of the existence of
the purported loan repayments and the fact that they are forfeitable until Danske's recent
productions of financial documentation.

establishes . . . that he is a bona fide purchaser for value of such property who at the time  . . . was reasonably without cause to believe that the property was subject to forfeiture" (citations omitted)).  Should the Court finds that Danske is not a bona fide purchaser for value for the Additional Loans because Danske and the DCSL Resort did not engage in arms' length transactions, then the loan repayment funds are forfeitable property that Danske must forfeit to the government, or, alternatively, apply as an offset to any claim amount for which the Court finds Danske is a bona fide purchaser for value.  *See United States v. McHan*, 345 F3d 262, 277-78 (4th Cir. 2003) (affirming forfeiture of property claimed by "petitioners [who] were not 'bona fide purchasers for value,' " because they acquired the forfeitable property through "no[n] arm's-length transactions"); *Nichols*, 841 F.2d at 1493 (noting that one of the purposes of the forfeiture provisions is "to permit the voiding of certain pre-conviction transfers  . . . that were not arms' length transactions." (quoting S. Rep. at 200–01, U.S. Code Cong. & Admin. News 1984, pp. 3383–84) (internal quotation marks omitted)).

Moreover, as discussed more fully in the government's letter filed on December 7, 2020, DE 966 at ECF pp. 13-14, Danske's conduct of allowing the DCSL Resort to pay down the revolver and then re-borrow the same funds, while Danske amassed interest on the unpaid principals of Facility A and Facility B, rather than applying the loan repayments to pay down the principals of Facility A and Facility B, violated the Protective Order by allowing the debt to consume the equity in the DCSL Resort, and, thus, decrease the value of the DCSL Resort. Consequently, Danske should not be permitted to retain the funds it acquired in violation of the Protective Order.

It is worth noting that if Danske's claim with respect to Additional Loans fails, Danske's claim would be reduced to approximately $19,462,643 and the government will be able to immediately proceed with an interlocutory sale because the only other third-party petition the government intends to challenge is Jowdy's, but that petition pertains to a house on the DCSL Resort and litigation of that petition would not affect a sale of the DCSL Resort.

III.   The Government's Position Regarding Third Party Claimants Owen Nolan and CSL Properties' Legal Argument That Their Claims Are Superior to Danske's Claim Under a Constructive Trust Theory

The government takes no position regarding the third party claimants' legal argument that

their claims are superior to Danske's claim under a constructive trust theory.

Thank you for Your Honor's consideration of this submission.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:     /s/ Madeline O'Connor
        Madeline O'Connor
        Diane C. Leonardo
        Assistant U.S. Attorneys
        (631) 715-7870
        (631) 715-7854

cc:  Philip Kenner, by mail
     All counsel of record by ECF