Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

January 20, 2021

Seetha Ramachandran
Partner
d +1.212.969.3455
f 212.969.2900
sramachandran@proskauer.com
www.proskauer.com

By ECF

The Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

      Re:    *United States v. Philip A. Kenner & Tommy C. Constantine*
              Criminal Docket No. 13-607 (JFB) (E.D.N.Y.)

Dear Judge Bianco:

      Proskauer Rose LLP represents Owen Nolan, a victim of Philip A. Kenner's fraud and an interested third party to forfeiture in the above-referenced matter. Hill, Rugh, Keller & Main, P.L., joint signatories to this letter-brief, is counsel for CSL Properties 2006, LLC ("CSL", and with Mr. Nolan, "Petitioners"). Petitioners respectfully submit this letter-brief to explain why Petitioners hold a constructive trust that gives their third-party claims priority over those asserted by Danske Bank A/S London Branch ("Danske").[1]

      I.      Background

      CSL is a Delaware limited-liability company comprised of fourteen individual members, including Mr. Nolan, who are former clients and, undisputedly, victims of Mr. Kenner's fraud.[2] CSL is one of four companies that together hold a 95% Class A membership interest in Diamante Cabo San Lucas, LLC ("DCSL"). CSL holds an 8% equity interest in DCSL.[3] The other

---

[1] The letter-brief was initially due by January 15, 2021, but, following Mr. Nolan's request, the Court extended that deadline to January 20, 2020.

[2] A copy of the Amended & Restated Limited Liability Company Agreement of CSL is attached hereto as Exhibit A.

[3] *See* Limited Liability Company Agreement of DCSL, attached hereto as Exhibit B, at 31.

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 2

companies holding equity in DCSL are Baja Ventures 2006, LLC (39% interest), KAJ Holdings, LLC (35% interest), and Diamante Properties, LLC (13% interest).[4]

DCSL owns 99% of the equity in a Mexican limited liability corporation registered as Diamanté Cabo San Lucas S. de R. L. de C. V.  In turn, this corporation holds legal title to an approximate 1,500-acre parcel of real estate located in the Mexican state of Baja California Sur named Diamante Cabo San Lucas ("the Diamante Property").  DCSL is, in essence, the U.S.-based, principal owner of the Diamante Property.  The Diamante Property was included in the Court's March 2020 Preliminary Order of Forfeiture.  Dkt. No. 825 at 1–2.

As explained in the Government's submissions to the Court (and as demonstrated at trial), Mr. Kenner and Kenneth Jowdy signed a contract to buy DCSL in January 2005 for approximately $65 million.  To obtain financing from Lehman Brothers, Mr. Kenner and Mr. Jowdy were required to make a 10% down payment of approximately $7 million, plus approximately $500,000 in fees incurred due to a delay in closing that resulted from their struggle in raising the down payment.  *See* Dkt. No. 401 at 21–22 (citing Forfeiture Exhibits 36, 81, and 102).  The down payment had to be paid before Lehman Brothers would agree to fund the project.  *Id.*  (citation omitted).

There is no evidence that Mr. Kenner and Mr. Jowdy contributed any of their own money to fund the purchase.  *See id.* at 20–27.  Rather, they raised the money from various victim-investors, including the individuals who now comprise CSL.  As the Government has noted, "[b]ut for the stolen and laundered funds that were used by defendants to fund the down payment for the purchase of DCSL, there would not have been any purchase of DCSL."  *Id.* at 22.  Mr. Kenner and Mr. Jowdy proceeded to create various corporate entities to facilitate the purchase of DCSL (Baja Ventures 2006, LLC; KAJ Holdings, LLC; and Diamante Properties, LLC), and they assigned ownership percentages and control rights to these entities as they pleased, without regard to the monies contributed, taking the lion's share of the equity for themselves.

For example, contemporaneous with the formation of CSL in or around February of 2006, Mr. Kenner formed another Delaware limited liability company, Baja Ventures, 2006, LLC ("Baja Ventures"), and made himself the sole owner and Managing Member.  Baja Ventures purportedly made a capital contribution to DCSL totaling $2,500,000 and, in exchange for that contribution, inexplicably received a 39% equity interest in DCSL.[5]  By contrast, CSL made a capital contribution of $2,300,000 to DCSL and was allocated a mere 8% equity interest

---

[4] *Id.*  The remaining 5% equity interest in DCSL is held by five different individuals or entities, with each owning a 1% stake.

[5] A copy of the Limited Liability Company Agreement of Baja Ventures is attached hereto as Exhibit C; *see* Articles II and IV, and Schedule A.  *See also* Exhibit B at 31.

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 3

in return for that contribution.[6] The members of CSL who contributed to the down payment for the Diamante Property were never told that they would have so little equity in the property. Simply put, Mr. Kenner used the money to further his fraud and unjustly enrich himself at their expense.

Although Mr. Kenner did not give himself an equity interest in CSL, he appointed himself as CSL's original and sole "Managing Member." *See* Exhibit A at Article IV. In that regard, Mr. Kenner vested himself with "complete, unrestricted authority and right to act on behalf of [CSL] in connection with any matter" while the "other Members [of CSL] . . . ha[d] no part in the management of the Company." *Id.* Mr. Kenner, thus, owed CSL fiduciary duties as the company's sole Managing Member, including a duty to act in good faith and in the best interests of the company and its members, and a duty of loyalty not to obtain or procure a personal benefit at the expense of the company and its members. Mr. Kenner was formally removed as the Managing Member of CSL following his conviction on July 9, 2015.

Petitioners now ask the Court to recognize a constructive trust in favor of CSL. Clearly, CSL's interest should exceed the 8% that Mr. Kenner, as part of his scheme to defraud, arbitrarily chose to assign it. Given that CSL contributed at least $2.3 million of the total $7 million down payment, the Court should recognize, at the very least, an interest of at least approximately 32.9% for CSL.

    II.    <u>Argument</u>

        a.  <u>Constructive Trust</u>

A constructive trust is an equitable remedy that is crafted by a court for the purpose of preventing one party from being unjustly enriched at the expense of another party. *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993). Under the theory of constructive trust, legal title is not dispositive of ownership interest because "[w]here one party has acquired the legal right to property to which another has the better right, a court of equity will convert that person into a trustee of the true owner, and compel him or her to convey the legal title." *Id*. at 653; *see also In re Flanagan*, 503 F.3d 171, 183 (2d Cir. 2007) ("[T]he beneficiary of a constructive trust receives complete title to the asset."). The imposition of a constructive trust is predicated on a finding of fraudulent, unfair, or unconscionable conduct. *Hogg*, 622 A.2d at 652. The intentions

---

[6] Exhibit B at 31. Although the Agreement for DCSL indicates that the capital contribution received from CSL was $2 million, it has been subsequently established (and acknowledged by both the Government and the developer of the Diamante Property, Mr. Jowdy) that the total amount of capital contributed by CSL through its individual members for the acquisition of the Diamante Property was actually $2,300,000.

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 4

of the parties at the time of the transaction are immaterial because "[a] constructive trust is not designed to effectuate the presumed intent of the parties, but to redress a wrong." *Id.*

"State law determines a petitioner's legal interest in the property at issue." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). "With respect to constructive trusts, 'the law of the situs of the property' governs such claims." *Moses v. Apple Hosp. Reit Inc.,* No. 14-cv-3131, 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015). However, where, as here, "'property was in the form of shares,' the law of the state of incorporation applies." *Id.* Both CSL and DCSL are incorporated in Delaware, and thus Delaware law applies.

Courts in Delaware analyze the same elements for a constructive trust as they do for an unjust enrichment claim. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 661 (Bankr. D. Del. 2012). To prevail on a claim for unjust enrichment or imposition of a constructive trust, a claimant must show that: "(i) there was an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law." *Id.*

Here, given Mr. Kenner's patent self-dealing and unfair and unconscionable conduct, equity warrants the recognition of a constructive trust held by CSL. As explained, Mr. Kenner served as the sole Managing Member of CSL at all times material to Petitioners' claims. In that capacity, he owed CSL and its individual members, including Mr. Nolan, a fiduciary duty of loyalty not to obtain or procure a personal benefit at the expense of the company and its members. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012) (under Delaware law, "[m]anagers and managing members owe default fiduciary duties"). He likewise owed a fiduciary duty to act in good faith and in the best interests of the company and its members at all times.

Mr. Kenner blatantly breached those duties by negotiating or otherwise consenting or agreeing to a proposal under which CSL was arbitrarily allocated an 8% equity interest in DCSL in exchange for a capital contribution of $2,300,000, while Mr. Kenner's company, Baja Ventures, was arbitrarily allocated an equity interest in DCSL almost five times greater—39%—in exchange for a comparable, capital contribution of $2,500,000. Moreover, in light of the multi-million dollar fraud that Mr. Kenner perpetrated against the individual members of CSL, including Mr. Nolan, and the absence of any other legitimate source of wealth, Mr. Kenner's purported capital contribution of $2,500,000 was clearly derived from the fraud proceeds. There is no evidence that Mr. Kenner or Mr. Jowdy contributed any of their own money to the down payment.

Given the arbitrary and grossly disparate allocation of equity assigned to Baja Ventures and CSL, despite comparable capital contributions being attributed to each company, it is clear

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 5

that Mr. Kenner breached well-established fiduciary duties that he owed to CSL and engaged in blatant self-dealing and other fraudulent, unfair, or unconscionable conduct which caused him to be unjustly enriched at the direct expense of CSL and its individual members.

Accordingly, in order to redress this wrong and achieve equity under these patently unfair circumstances, the Court should find a constructive trust in Petitioners' favor, reflecting at least a 32.9% interest (approximately) in DCSL.

### b. The Petitioners' Legal Interest is Superior to Danske's Interest – Not the Other Way Around

Danske has repeatedly argued that its lien on the Diamante Property is superior to any interest asserted by equity holders—such as Petitioners—and that the purported value of its interest (which, it asserts, includes interest and other fees, not simply the principal) exceeds the equity in the property. *See* Dkt. No. 848 at 3. Thus, despite the fact that Danske acquired its interest *after* Mr. Kenner's commission of his crimes, and *after* Petitioners acquired their equity interest, Danske has maintained that it should prevail over all other claimants as a matter of law. Danske is wrong.

21 U.S.C. § 853(n)(6)(A) protects parties who have "a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid . . . because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." Thus, to prevail under § 853(n)(6)(A), a claimant's legal right, title, or interest in the forfeited property must either be "vested" in the petitioner, or be "superior" to any right, title or interest of the defendant.

The nature of the property right and whether a claimant has a "legal interest" is determined by reference to the law of the state giving rise to the property interest asserted. *United States v. Lee*, 232 F.3d 556, 560 (7th Cir. 2000). However, the "effect of that property interest—i.e., whether it satisfies the requirements of the federal forfeiture statute—is necessarily a matter of federal law." *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006). The term "legal interest in the property" encompasses "all legally protected rights, claims, titles, or shares in real or personal property." *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987). Here, Petitioners hold a constructive trust, which the Second Circuit has repeatedly recognized qualifies as a "legal interest" for the purposes of § 853(n)(6)(A). *See, e.g.*, *Willis Mgmt.*, 652 F.3d at 245; *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992).

As holders of a constructive trust, Petitioners are not general creditors who typically fall behind a senior secured lender in a forfeiture proceeding. Nor are they mere "equity holders"

Proskauer»

The Honorable Joseph F. Bianco
January 20, 2021
Page 6

that Danske can claim are subordinate to its lien. Rather, as a number of appellate courts, including the Second Circuit, "have found[,] a constructive trust constitutes a 'superior' interest" under 21 U.S.C. § 853(n)(6)(A). *United States v. Lesak*, No. 07-cr-396, 2009 WL 1788411, at *6 (S.D.N.Y. June 23, 2009) (citing *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001); *United States, v. Campos*, 859 F.2d 1233, 1238–39 (6th Cir. 1988)); *see also Fed. Ins. Co. v. United States*, 882 F.3d 348, 371 (2d Cir. 2018); *Willis Mgmt.*, 652 F.3d at 245; *United States v. Salti*, 579 F.3d 656, 670 (6th Cir. 2009); *United States v. Shefton*, 548 F.3d 1360, 1366 (11th Cir. 2008); *United States v. Marx*, 844 F.2d 1303, 1308 (7th Cir. 1988).

That superior legal interest vested in Petitioners at the time Mr. Kenner committed his crimes and unjustly enriched himself at the direct expense of CSL and its individual members. *See Willis Mgmt.*, 652 F.3d at 244 ("Although a constructive trust is a judicially recognized remedy, it arises when the underlying equities exist, not when it is announced." (citation omitted)). Specifically, Petitioners' interest vested in or around February 2006 when Mr. Kenner, as CSL's Managing Member, perpetrated his multi-million dollar fraud scheme by negotiating and consenting to the arbitrary and grossly disparate allocation of equity assigned to Baja Ventures and CSL, and by assigning himself an equity interest through Baja Ventures based on a purported capital contribution of $2,500,000 that was clearly derived from the proceeds of Mr. Kenner's fraud. Petitioners' legal interest is thus superior to Danske's claim because it vested *before* Danske acquired its interest as a secured lender in 2009. *See* Dkt. No. 874 at 2. Accordingly, Petitioners are entitled to recovery under 21 U.S.C. § 853(n)(6)(A).

*Lesak* is instructive in this regard. There, the U.S. District Court for the Southern District of New York imposed a constructive trust in a forfeiture case involving a securities fraud. *See* 2009 WL 1788411, at *5. The court explained that "despite the fact that a constructive trust is an equitable remedy, it nonetheless qualifies as a 'legal right' in property under § 853(n)(6)(A)." *Id.* The court then held that the constructive trust constituted a "superior" interest, thus conferring standing in a forfeiture proceeding on the victim of the fraud, notwithstanding a claim by a bank that held a secured lien on the property. *Id.* at *6. The Second Circuit's *Willis* likewise explained that a constructive trust "qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of . . . § 853(n)(6)(A)." 652 F.3d at 242. The defendant in *Willis* was convicted of embezzling funds from his employer, which he subsequently used to build one home and, through a mortgage on that home, obtain a line of credit to purchase a second property. *Id.* at 238–39. Although the defendant's employer could claim no "vested" or "superior" interest in those properties at the time of the defendant's offense, the Court held that the employer might still be entitled to both homes under § 853(n)(6)(A) if the defendant's embezzlement of the employer's funds gave rise to a constructive trust in favor of the employer. *Id.* at 245. Further, the Court explained that, pursuant to § 853(n)(6)(A), "if a constructive trust properly should be imposed on particular

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 7

property that was in the possession of the defendant, it was never truly the defendant's property and is not subject to forfeiture to the United States in the first instance." *Id.* at 246.

In short, if the Court finds a constructive trust in Petitioners' favor, Danske's interest would not take precedence over that of Petitioners. At minimum, it would mean that Danske is not entitled to a summary judgment on its claim. As a matter of law, however, Petitioners' constructive trust would be superior to Danske's interest and entitle Petitioners to relief from the Court's Preliminary Order of Forfeiture, based on that superior interest, under 21 U.S.C. § 853(n)(6)(A).

In any event, Danske's claim fails because Danske is unable to prove that, at the time it acquired its interest, it lacked knowledge that the Diamante Property was subject to forfeiture. *See* 21 U.S.C. § 853(n)(6)(B) (permitting relief only when "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section"). While the Court has already indicated that it believes that Danske is likely entitled to relief under § 853(n)(6)(B), Petitioners hereby adopt the arguments the Government made in its submissions on this issue and preserve them for appeal. Plainly, any suggestion that Danske has clean hands misapprehends the facts. Danske is a beneficiary of its own opportunistic scheme to bury the Diamante Property in debt. Danske was well aware that the resort would not be able to pay the bank back because the property repeatedly defaulted on its obligations in light of the rapidly growing interest. Danske knowingly allowed the resort's debt to accrue to a point where, conveniently for Danske and its forfeiture claim, it now consumes the entire resort. And it is undisputed that in modifying the initial loan to the Diamante Property, Danske did not actually loan any new funds; rather, after charging the property millions of dollars in loan-modification fees, Danske simply allowed the property to continue to pay down the loans and then withdraw the same funds all the while millions of dollars in interest continued to accrue. All of this is particularly egregious because, as the Government correctly argues in its summary-judgment submissions, Danske made its calculated investment decision—and allowed astronomical interest payments to accrue—during a time period when it should have been well aware that the property was subject to forfeiture. *See* Dkt. No. 912. But it is doubly unfair to the victims of Mr. Kenner's fraud who had an interest in the property. While Danske is a sophisticated commercial actor that chose to extend a loan to a distressed property, and presumably had access to all the due diligence that would have revealed the circumstances in which the resort was acquired, the victims of Mr. Kenner's fraud had no such opportunity. Now, they stand to lose any hope of recovery because, unbeknownst to them, Mr. Kenner and Mr. Jowdy slapped a mortgage on a property that was not funded by them in the first place.

**Proskauer»**

The Honorable Joseph F. Bianco
January 20, 2021
Page 8

### III.     Conclusion

Petitioners submit that they have affirmatively established that they hold a constructive trust, and that their interest is superior to that of Danske.  But for the purposes of Petitioners' instant opposition to Danske's motion for summary judgment, it is sufficient that Petitioners establish, as they have, that there are disputed material facts that preclude the grant of Danske's summary-judgment motion.  Any such disputed facts concerning whether a constructive trust exists and its effect on Danske's claim should properly be resolved at an ancillary hearing, the purpose of which is to allow third parties—who are not permitted to intervene in a criminal case—the opportunity to assert and prove an interest in the property that the Government has forfeited from Mr. Kenner.  *See* 21 U.S.C. § 853(n).  Danske's motion for summary judgment should be denied.

Finally, Petitioners note that the parties are still in the process of exploring a potential negotiated resolution of these ancillary proceedings.  The parties have engaged in productive discussions over the past three weeks.  We sincerely hope a negotiated resolution is within reach, but we anticipate that it will take additional time to reach an agreement.  However, we believe that our efforts to reach a global resolution are futile if the Court intends to promptly—perhaps as soon as on January 29—issue an order granting Danske's summary-judgment motion before a settlement is reached.  Such an order would eliminate any incentive for Danske to be present at the negotiating table because it would obliterate the Petitioners' ability to recover any money.

Respectfully submitted,

*/s/ Seetha Ramachandran*
SEETHA RAMACHANDRAN
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3455
sramachandran@proskauer.com

*Counsel for Owen Nolan*

*/s/ Steven R. Main*
CHRISTOPHER T. HILL
STEVEN R. MAIN
HILL, RUGH, KELLER & MAIN, P.L.
390 N. Orange Avenue, Suite 1610

**Proskauer»**

**Proskauer**

The Honorable Joseph F. Bianco
January 20, 2021
Page 9

                                               Orlando, FL 32802
                                               (407) 926-7460
                                               chill@hrkmlaw.com
                                               smain@hrkmlaw.com
                                               filings@hrkmlaw.com

                                               *Counsel for CSL Properties 2006, LLC*

cc:       All parties of record (via ECF)