# EXHIBIT C

## LIMITED LIABILITY COMPANY AGREEMENT

## OF

## BAJA VENTURES 2006, LLC

AGREEMENT, dated as of March 2, 2006, among each of the members who has executed the signature page hereof (a "Member").

## WITNESSETH:

WHEREAS, Baja Ventures 2006, LLC (the "Company") was formed on February 23, 2006, by the filing of a Certificate of Formation with the Secretary of State of the State of Delaware;

WHEREAS, on the date hereof, Philip A. Kenner is the sole Member of the Company, although additional members may be admitted in the future; and

WHEREAS, the sole Member wishes to provide for the operation and management of the Company as set forth below;

NOW, THEREFORE, in consideration of the mutual agreements set forth below, it is agreed as follows:

## ARTICLE I

## FORMATION, NAME, PURPOSE, TERM AND TAX MATTERS

Section 1.1  *Formation, Name and Office.*

(a)  The Company was formed on February 23, 2006 as a limited liability company pursuant to the Delaware Limited Liability Company Act (as it may be amended from time to time, the "Act"). The name of the Company shall be "Baja Ventures 2006, LLC" unless changed by the Managing Member, in his sole discretion.

(b)  The Company shall have its office at 10705 East Cactus Road, Scottsdale, AZ 85259, and may change such office, or open such other places of business at such locations, as the Managing Member may from time to time determine or as the business and affairs of the Company may require.

Section 1.2  *Purpose.* The Company may engage in any lawful business of every kind and character for which a limited liability company may be organized under the Act or any successor statute. The Company shall have all of the powers provided for a limited liability company under the Act.

Section 1.3  *Term.* The term of the Company commenced on the date the Company was formed and shall continue until December 31, 2099 or until earlier terminated as provided in Article V.

Section 1.4   *Tax Matters.*

(a)   As long as Philip A. Kenner is a Member, he shall serve as the Company's "Tax Matters Partner" for purposes of the Internal Revenue Code. If he ceases to be a Member, the then Members shall appoint a new Tax Matters Partner.

(b)   The fiscal year of the Company shall be the calendar year.

## ARTICLE II

## CAPITAL CONTRIBUTIONS

Capital contributions shall be made in cash or property and in the amounts set forth on Schedule A to this Agreement.

## ARTICLE III

## DISTRIBUTIONS; PROFITS AND LOSSES

All distributions shall be made to the Members in accordance with the Percentage Interests, as set forth on Schedule A, which may be amended from time to time.

## ARTICLE IV

## MANAGEMENT

Section 4.1   *Managing Member.* As long as Philip A. Kenner is a Member, he shall serve as the Company's Managing Member. The Company shall be managed and operated exclusively by the Managing Member. The other Members shall have no part in the management of the Company. The Managing Member shall have complete, unrestricted authority and right to act on behalf of the Company in connection with any matter, including, without limitation, (i) to invest, reinvest, trade and dispose of all of the Company's cash, securities and other assets, (ii) to acquire, develop, manage, lease, dispose and otherwise deal with real and personal property of any kind, (iii) to effect borrowings on behalf of the Company, (iv) to open, maintain and close bank, brokerage and custodial accounts and, generally, to arrange for the transfer and custody of investments and other assets of the Company, (v) to execute any agreement, contract, certificate or instrument that the Managing Member deems necessary or desirable in connection with the conduct of the Company's business or affairs, (vi) to incur expenditures for the conduct of the Company's business, (vii) to institute and defend litigation, arbitrations, investigations and proceedings of any kind on behalf of the Company, (viii) to appoint one or more other persons as officers of the Company, with such titles, powers and responsibilities as the Managing Member may determine, and (ix) generally, to engage in any kind of activity necessary or desirable to achieve the purposes of the Company and as may be lawfully carried on or performed by a Company under the laws of each jurisdiction in which the Company is then doing business.

Section 4.2   *Reliance on Authority.* Any party dealing with the Company shall be entitled to rely conclusively on the power and authority of the Managing Member as set forth

NEWYORK.497719.1

herein. Further, any party dealing with the Company or the Managing Member may rely on a certificate signed by the Managing Member, as to (a) the identity of the Managing Member, any other Member or any officer of the Company, (b) the existence or nonexistence of any fact which constitutes a condition precedent to acts by the Managing Member or any agent or employee of the Company or which are in any other manner pertinent to the affairs of the Company, (c) the authority of the Managing Member or any officer, agent or employee of the Company to execute and deliver any instrument or document of the Company, (d) any act or failure to act by the Company or (e) as to any other matter whatsoever involving the Company.

Section 4.3  *Meetings.* No meetings of the Members shall be required, but may be called by the Managing Member or a majority in interest of the Members (determined with reference to Percentage Interests for all purpose of this Agreement) in their discretion.

## ARTICLE V

## TERMINATION

Section 5.1  *Events of Termination.* The Company shall be dissolved and its affairs wound up in the event that:

(a) the term of the Company expires;

(b) the Members agree to terminate the Company; or

(c) the complete withdrawal from the Company, death, permanent disability, bankruptcy or adjudication of incompetence by a court of competent jurisdiction of the Managing Member, unless a successor Managing Member is appointed by the vote of a majority in interest of the Members within 90 days following such event.

Section 5.2  *Voluntary Withdrawal Prohibited.* No Member shall have the right to withdraw from the Company, nor shall any Member have the right to withdraw any part of his, her or its contributions to the capital of the Company, except in accordance with the provisions of this Agreement.

Section 5.3  *Winding Up.* On dissolution of the Company, the Company shall wind up its affairs promptly in accordance with the directions of the Managing Member or a person designated by the Managing Member or a majority in interest of the Members as a "Liquidator". The assets of the Company shall be sold within a reasonable period of time to the extent necessary to pay or provide for the debts and liabilities of the Company and the expenses of dissolution and liquidation, and may be sold to the extent deemed commercially feasible by the Managing Member or Liquidator and all assets of the Company shall be applied and distributed as provided in Section 5.4.

Section 5.4  *Distributions.* The proceeds of any dissolution of the Company shall be distributed in the following order of priority (to the extent that such order of priority is consistent with the laws of the State of Delaware):

(a) first, to the payment of the debts and liabilities of the Company and the expenses of dissolution and liquidation;

(b) then, to the establishment of any reserves which the Managing Member or Liquidator deems reasonably necessary for the payment of such other debts and liabilities of the Company (contingent or otherwise) as are specified by the Managing Member or Liquidator, and such reserves shall be held by a bank or trust company selected by the Liquidator, as escrow holder, to be disbursed as directed by the Managing Member or Liquidator in payment of any such specified debts and liabilities or, at the expiration of such period as the Managing Member or Liquidator may deem advisable, to be distributed in the manner hereinafter provided; and

(c) then, to the Members as set forth in Article III.

Section 5.5  *Statements on Winding Up.*  On termination of the Company, a statement shall be prepared by the Company's independent public accountants, which shall set forth the assets and liabilities of the Company as of the date of termination.

## ARTICLE VI

## INTERESTS

A Member's interest in the Company shall be personal property for all purposes. All property owned by the Company shall be deemed to be owned by the Company as an entity, and no Member shall be deemed to own any such property or any portion thereof.

## ARTICLE VII

## REPORTS

The Managing Member shall have the authority, responsibility and obligation to cause to be prepared, with the assistance of the Company's accountants, any reports or returns required to be filed for and on behalf of the Company. All charges of the Company's accountants shall be borne by the Company.

## ARTICLE VIII

## OTHER INTERESTS OF THE PARTNERS

Any Member, as well as any of his, her or its respective affiliates and partners, may engage in and possess an interest in other business ventures of every nature and description, whether or not in competition with or of a similar nature to the business of the Company, independently or with others, and neither the Company nor the other Members shall have any rights in and to such independent ventures or the profits, losses, income or distributions relating thereto. Each Member shall promptly notify the other Members in writing should any conflict of interest arise.

NEWYORK.497719.1

# ARTICLE IX

## MISCELLANEOUS

Section 9.1  *Liability.*

(a) The Members agree that the Company extends, and is limited, to only the rights and obligations provided in this Agreement, and nothing herein shall be construed to constitute any Member as the agent or partner of any other Member in the conduct of his, her or its respective businesses or activities.

(b) No Member shall be liable to the Company or to any other Member for any act or omission of such Member, except to the extent that such act or omission results from his, her or its gross negligence, willful misconduct or fraud.

Section 9.2  *Indemnification.*

(a) Each Member shall indemnify and hold the Managing Member and all of the other Members and, where applicable, the Company's officers, directors and shareholders, harmless from and against all claims, demands, losses or damages, including, without limitation, reasonable attorneys' fees (collectively, "Losses") which shall or may arise by reason of the indemnifying party's breach (directly or by agents or other representatives) of a provision of this Agreement or of any action outside the scope of this Agreement.

(b) The Managing Member and each other Member shall be indemnified and held harmless by the Company from and against any Losses incurred by the Managing Member or such Member by reason of any act or omission performed or omitted by him, her or it, except to the extent that such act or omission is contrary to this Agreement or results from the Managing Member's or such Member's gross negligence or fraud.

(c) Each party to be indemnified under Section 9.2(a) or 9.2(b) shall give each indemnifying party notice of any claim, demand, loss or damage subject to indemnification within thirty days after he, she or it has received actual notice thereof, and the indemnifying party shall be entitled to participate in or direct the defense of any action or proceeding involving such claim, demand, loss or damage; *provided, however,* that he, she or it employs counsel reasonably satisfactory to the indemnified party. An indemnifying party shall not be liable to an indemnified party in respect of settlements effected by the indemnified party without the written consent of the indemnifying party.

Section 9.3  *Further Assurances.* Each Member agrees to execute such further instruments and documents, and to take such further actions, as may be necessary in order to implement the intent and purposes of the provisions of this Agreement.

Section 9.4  *Integration.* This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and no alteration or modification hereof shall be binding unless in writing and signed by each Member.

Section 9.5    *Benefits and Obligations.* Except as otherwise specifically provided herein, this Agreement shall be binding upon and shall inure to the benefit of each Member and his, her o its successors and assigns, and no other person shall have any legal or equitable right, remedy or claim under or in respect of this Agreement.

Section 9.6    *Severability.* If any provision of this Agreement or portion thereof, or the application thereof to any person or circumstance, is held to be invalid or unenforceable, then the remainder of this Agreement, or the application of the provision or portion thereof to other persons or circumstances, shall not be affected thereby; *provided, however,* that if any provision or portion thereof, or its application, is held to be invalid or unenforceable, then a suitable or equitable provision shall be substituted therefor in order to carry out, so far as may be valid or enforceable, the intent and purpose of the invalid or unenforceable provision or portion thereof.

Section 9.7    *Enforcement of Provisions.* The failure to enforce any provision of this Agreement or to require performance by a Member of any provision hereof shall in no way be construed to be a waiver of such provision or to affect either the validity of this Agreement, or any part hereof, or the right of any Member thereafter to enforce each and every provision in accordance with the terms of this Agreement.

Section 9.8    *Applicable Law.* This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware applicable to agreements made and fully to be performed therein by residents thereof, and specifically, the Act.

Section 9.9    *Construction and Counterparts.* The headings in this Agreement are solely for convenience of reference and shall not affect its interpretation. As used herein, the singular includes the plural and the masculine, feminine and neuter genders each include the others. This Agreement may be executed in counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, each Member has caused this Agreement to be executed as of the day and year first above written.

_____
PHILIP A. KENNER

## SCHEDULE A

## CAPITAL CONTRIBUTIONS

| Name of Member | Capital Contribution | Percentage Interest |
|---|---|---|
| Philip A. Kenner | $2,500,000 | 100% |

NEWYORK 497719.1