

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000  F 202.344.8300  www.Venable.com

George Kostolampros

**T 202.344.4426**
**F 202.344.8300**
gkostolampros@venable.com

January 22, 2021

<u>**VIA ECF**</u>

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

Re:    <u>**United States of America v. Kenner, Cr. No. 13-607 (JFB)**</u>

Dear Judge Bianco,

        As directed by the Court during the December 10, 2020 hearing, we write on behalf Danske Bank A/S London Branch ("Danske") in reply to the government's January 15, 2021 letter.  As set forth more fully below, the government's letter makes clear that the Court should recognize Danske's undisputed claim at $176.3 million or, at a minimum, $164.2 million.

        First, the government offered no case law supporting its theory of clawback and set-off. During the December 10 hearing, the government was instructed to provide the Court with legal authority supporting the government's attempt to clawback—and then reapply to other loans— principal payments.  Notwithstanding the Court's clear directive, the government has provided no such authority.  This is not at all surprising because, as Danske advised the Court, there is no support for this theory.  Instead, the government goes for the Hail Mary by shifting positions to now argue that any and all amounts paid to Danske are "forfeitable property."  But this argument has no basis in law—first because the government has *never* argued once that principal payments to third-party Danske are forfeitable, and second because the principal payments made to Danske are the fruit of legitimate activities that are not subject to forfeiture.  Instead, the government devotes much of its letter arguing that Danske seeks to re-define the Initial Loan.  The government's arguments are incorrect.  The Initial Loan speaks for itself through the underlying documents which unequivocally set forth that the Initial Loan was for a loan up to $125 million. The government even acknowledged and argued in its summary judgment briefing that these additional "loans" were modifications and amendments of the original loan agreement.

        Second, the government also refuses to take a position on the other claimants' petitions even though doing so would streamline these proceedings and reduce the delay of reaching a resolution.



The Honorable Joseph F. Bianco
January 22, 2021
Page 2

Finally, the Court should order that any sale of the Resort Property be effectuated through the foreclosure process because this is the most expeditious method for conducting such a sale. Every step of that foreclosure process would be subject to this Court's approval—assuming the government still believes there is any equity value above Danske's recognized claim to justify moving forward with forfeiture of the Resort Property. To the extent a sale in a foreclosure process nets any equity, the equity would be placed in escrow for the Court to distribute.

1)  **As Set Forth in Danske's December 21, 2020 Letter, Danske's Claim Can Be Recognized at $176.3 Million or, at a Minimum $164.2 Million, Based on the Court's Prior Ruling that Danske Is A Bona Fide Purchaser as to the Initial Loan.**

    a)  **The Government Has Provided No Legal Authority Supporting its Clawback/Set-off Theory and No Detail Supporting its Claim that Certain Documentation Supporting Amounts Initially Advanced Are Deficient.**

As counsel for Danske pointed out at the December 10 hearing and in its December 21, 2020 letter to the Court, the government's theory of set-off is unsupported by any case law. During the December 10 hearing, the Court asked the government if the government had briefed this issue "anywhere in the summary judgment papers," Dec. 10, 2020 Hearing Tr. at 11:9-15, and the government admitted that this issue had not been "briefed [] in terms of any applicable case law . . . ." *Id.* at 11:9-18. The Court directed that the government provide the Court with "clawback research" on January 15, 2021. *Id.* at 28:9-12. Notwithstanding that request, the government's letter ***does not cite a single case*** supporting the clawback/set-off theory the government asks the Court to apply.

In place of offering the Court case law justifying its clawback/set-off theory, the government instead recites basic principles of forfeiture law,[1] in order to assert, for the first time,

---

[1]    *See United States v. Eleven Vehicles*, 836 F. Supp. 1147, 1154-55 (E.D. Pa. 1993) (addressing whether a defendant's property was used to "facilitate" a crime and therefore should be subject to forfeiture); *United States v. Nicolo*, 597 F. Supp. 2d 342 (W.D.N.Y. 2009) (evaluating whether defendant's property was forfeitable and concluding that the sole real property in question was not forfeitable because the defendant's criminal activities were "merely 'incidental or fortuitous'" to the real property); *United States v. Moses*, No. 1:05–CR–133, 2010 WL 3521725 (D. Vt. Sept. 7, 2010) (evaluating whether property was forfeitable and finding that the property transferred to defendant's father for no consideration was not a bona fide purchase for value); *United States v. Vogel*, No. 4:08cr224, 2010 WL 547344 (E.D. Tex. Feb. 10, 2010) (evaluating whether a defendant's property should be partially released to pay attorneys' fees); *United States v. One 1980 Rolls Royce, Vin. No. SRL 39955*, 905 F.2d 89 (5th Cir. 1990) (holding that property cannot be forfeited to the extent that a claimant can establish that certain portions were purchased with legitimate funds).



The Honorable Joseph F. Bianco
January 22, 2021
Page 3

that principal payments made to Danske to reduce the principal balances of Facilities B and C are "forfeitable property."[2]   This is yet another outlandish and meritless argument raised by the government.  The government has never alleged *once*—either at any time in the over seven years since this criminal proceeding began or in the more than five years since the protective order was issued—that principal payments made to Danske are forfeitable property.  Clearly, the Danske should be the government is only making the argument now because it can find no support for its clawback and set-off theory.  The government's failure to cite any case law supporting its theory reveals that there is simply no basis in law to apply the government's theory of set-off.[3]

Strikingly, the government goes on to reassert its baseless argument that by allowing the DCSL resort to pay down the revolver and then re-borrow the same funds violated the Protective Order.  The Court issued the Protective Order on August 21, 2015—in the almost five and a half years since then, the government never came to Danske or the Court to state that Danske should stop funding because it would violate the Protective Order.  Quite the contrary, the government agreed that day-to-day sales, which the government knew generated funds used to pay down the loans, should continue after the Protective Order was entered.  Moreover, as the Court itself recognized when it issued its oral ruling, Danske raised that by not funding the revolver "they could be potentially viewed as . . . in violation of the Court's protective order, and the government never suggested that they should stop their funding."  Nov. 23, 2020 Hearing Tr. at 18:6-9.

---

[2]   The cases cited by the government also do not support their argument that such a theory applies here.  *See United States v. McHan*, 345 F.3d 262 (4th Cir. 2003) (affirming the district court's finding that the wife and children of the defendant were not bona fide purchasers where the record evidence reflected that agreements to transfer property were nothing more than an attempt by the defendant to "avoid forfeiture"); *United States v. Nichols*, 841 F.2d 1485 (10th Cir. 1988) (affirming that the criminal forfeiture provisions do not exclude from forfeiture assets transferred to an attorney to pay attorney's fees).

[3]   Apart from the fact that the government has never previously raised its newly-minted contention that all principal (or interest) payments to Danske are forfeitable, the government's theory is also legally unsupportable.  As case law (including cases cited by the government) makes clear, legitimately sourced monies belonging to third parties are not forfeitable.  *See, e.g.*, *One 1980 Rolls Royce, Vin. No. SRL 39955*, 905 F.2d at 90-91; *Eleven Vehicles*, 836 F. Supp. at 1154.  This case law makes clear that the clawback and set-off theory advocated by the government is not only legally unsupported, it is prohibited.



The Honorable Joseph F. Bianco
January 22, 2021
Page 4

b) **Contrary to the Government's Arguments, $1.6 Million Advanced by Danske When it Acquired the Lehman Loan and $16 Million of Facility B Derives from Danske's Obligations under the Initial Loan Agreement.**

As Danske set forth in its December 21, 2020 letter, the amounts owed to Danske under Facility A and $16 million of Facility B reflect principal advances that the lender was obligated to make under the original Lehman Loan agreement.  *See* Dec. 21, 2020 Danske Letter at 2.  The government argues that Danske has changed positions as to what constitutes an additional advance made by Danske or what constitutes part of the loan Danske purchased from Lehman.  That is incorrect.  *See* Statement of Facts ¶ 5 ("In March 2006, . . . [Lehman] extended . . . a loan in an amount up to $125 million (the "2006 Loan Agreement"), ¶ 61 (stating that under the Assignment and Acquisition Agreement, Danske assumed all of Lehman's "obligations as Lender arising under the Loan Agreements"); ¶ 69 ("The Amended and Restated Loan Agreement . . . entitled Danske to the same rights that Lehman had . . . .").  Even the government in its summary judgment opposition described Danske's claim as "[f]irst, Danske claims a $125 million loan from . . . [Lehman] . . . to the DCSL Resort."  Gov't Opp'n at 5.

In its January 15, 2020 Letter, the government goes on to argue that "once Danske modified and/or amended the Initial Loan agreement, Danske's obligations and entitlements were governed by the terms of the *new* loan agreements."  Gov't Letter at 2 (emphasis in original).  But this theory is directly contrary to the government's own argument in its opposition to Danske's summary judgment motion where the government took the position that "the Additional Loans were not funds loaned under new loan agreements, but rather were additional funds loaned under modifications or amendments to the Initial Loan agreement."  Gov't Opp'n at 26.  The fact of the matter is that the underlying documents unequivocally show that Danske was obligated to fund up to $125 million.  Dec. 21, 2020 Danske Letter at 1 (citing MSJ Ex. 4 (Dkt. No. 850-4) at DANSKE_0010558).  Danske advanced the full $125 million as reflected under Facility A and B.

At the December 10, 2020 hearing, the Court also directed the government to explain why documentation for the $1.6 million January 14 draw or the $200,000 of closing fees is "somehow insufficient."  Dec. 10, 2020 Hearing Tr. at 28:14-19.  The government provided no such explanation.  Instead the government acknowledged that the $1.6 million draw was advanced under the original loan agreement with Lehman, the government simply argued that because this was an "Additional Loan" it was thus subject to the Court-Ordered discovery.  Again, the government conflates an "Additional Loan" with an additional advance.  This $1.6 million was not an Additional Loan—rather, it was an additional advance under the original Lehman Loan agreement.  The government has simply offered no basis or rationale—other than speculation—challenging these amounts and, thus the Court should recognize them as part of Danske's claim.



The Honorable Joseph F. Bianco
January 22, 2021
Page 5

    c) **The Court Can Recognize Danske's Claim at $176.3 Million, or, at a Minimum, at $164.2 Million.**

      As set forth in Danske's December 21, 2020 letter, the amounts owed under Facility A and B that arise from that $125 million obligation under the original Lehman Loan is currently $106.1 million and, given that the Court has found that Danske is a bona fide purchaser for value of the Initial Loan, this amount should be recognized by the Court. Taking into account the $45 million PPF and approximately $25 million in interest that is not in dispute, Danske's undisputed claim is $176.3 million.[4] Dec. 21, 2020 Danske Letter at 3-6.

      Even if the Court were not to include the amounts that the government describes as "Additional Loans" (i.e., amounts advanced by Danske after it acquired the Lehman loan) and only recognize the amounts described by the government as the "Initial Loan", the Court can recognize Danske's claim at $164.2 million ($96,400,000 currently owed under Facility A, $45 million for the PPF, and $22.8 million for default interest owed on Facility A).

2)     **Contrary to the Court's Direction and the Government's Statement to the Court, the Government Refuses to Take a Position on the Other Petitions that Have Been Filed.**

      At the December 10 Hearing, the Court asked the government to provide its position on the other petitioners' claims in this proceeding. The government responded that it would "address that in writing." Dec. 10, 2020 Hearing Tr. at 17. However, in its January 15 letter, the government

---

[4]     In its letter the government also offers a litany of factually unsupported and contradicted arguments. Danske has addressed all of them previously but will summarily address them below. **First**, the DCSL Resort has not been in default since 2009. It strains credulity that Danske would have agreed to accept, as partial payment for the amount Lehman owed Danske, Lehman's interest in the Resort Property knowing the loan was in default and yet continued to fund millions of dollars. **Second**, the government is wrong in asserting that the Borrower failed "to reduce the debt during the entire 11-year period that Danske held the note" which the government contends resulted in "accrual of hundreds of millions in debt that has essentially consumed the entire equity in the DCSL Resort . . . ." The government itself has admitted that the Borrower made principal payments—these payments reduced the principal balances of Facility A, Facility B, and Facility C. **Third**, the accrual of interest did not reflect a default under the loan agreements. MSJ Ex. 40 (2009 Amended and Restated Loan Agreement, Dkt. No. 853-10) at §§ 5.1(b), 5.2 (b), DANSKE_0013890-91. Further, Danske's willingness to accrue (and not capitalize) the interest made the loan cheaper for the Borrower and, therefore, allowed the Borrower the opportunity to begin generating revenue to pay the accrued interest without interest compounding on interest. **Finally,** the government knew of Danske's agreement with Mr. Jowdy at the time it was proposed and had *no* comments. And, in any event, this arrangement is customary in the broker-lender relationship and would result in *Danske, not the Borrower* paying any commission amount to Jowdy out of the proceeds received by Danske.



The Honorable Joseph F. Bianco
January 22, 2021
Page 6

now states that it "takes no position regarding the third party claimants' legal argument that their claims are superior to Danske's claim under a constructive trust."  But, the government was to address the government's position on whether the other claimants have an interest that will be recognized by the government.  The government's refusal to address whether these petitions are properly before this Court—or are somehow entitled to priority treatment—over the past six months is inexplicable.  Given the government's efforts to delay resolution of this matter, it is difficult not to conclude that the government is using these petitions—which, as will be set forth in Danske's forthcoming letter response to CSL Properties 2006 LLC's ("CSL") and Owen Nolan's letter, should be dismissed for lack of standing—as a tool to obtain leverage against Danske, the only legitimate third party interest, by preventing an expeditious resolution.

Danske will address the arguments raised in the January 20, 2021 letter filed by CSL and Mr. Nolan in greater detail in a separate letter to the Court, but notes here that the other claimants in this action, including CSL and Mr. Nolan, have no standing to pursue a claim in this forfeiture proceeding under 21 U.S.C.§ 853.  Specifically, in June and July 2020, five other parties filed petitions asserting claims to unsecured equity interests that represent nothing more than second-place, indirect ownership claims to the Resort Property.  The five at-issue petitions assert interests in the LLC entities that, in turn, hold an interest in the Diamante LLC that owns the Borrower entity, DCSL.  *See* Dkt. Nos. 874 (petition of Owen Nolan), 880 (petition of CSL Properties 2006, LLC), 881 (petition of Patricia Formisano), 884 (petition of Anthony Miranda), 885 (petition of Robert Burdick).  While Danske appreciates that some of the petitioners may be victims of the defendants' criminal conduct, it cannot ignore—and the government should not have avoided providing the Court with its position—that these petitioners do not have standing as a matter of law.  Indeed, this district has recognized that "shareholder claimants are neither owners nor lienholders with respect to corporate assets, they have no standing in this forfeiture proceeding." *United States v. New Silver Palace Restaurant, Inc.*, 810 F. Supp. 440, 442 (E.D.N.Y. 1992); *id.* at 443 ("[W]hile shareholders hold equitable title to corporate assets, they may not file a notice of claim.  A shareholder may only recover decreases in stock value attributable to mismanagement or the loss of corporate assets if the corporation brings a direct action against the wrongdoer or if the shareholder brings a derivative action on behalf of the corporation."); *see also United States v. Petters*, 857 F. Supp. 2d 841, 845 (D. Minn. 2012) (holding that a holder of membership interests in an LLC that owned a forfeited lodge did not have standing to litigate an interest in the lodge and reciting principle that the entity was "one level too far removed from the [Resort] to have an assertable legal interest [ ].").

The CSL petition also asserts that CSL ought to be given a constructive trust over *equity* shares granted to defendant Kenner—not to the underlying Resort Property. Dkt. No. 880.  "Under New York law, a bona fide purchaser of property for value in good faith takes free of a constructive trust." *Fairfield Financial Mortg. Group, Inc. v. LucaEyeglasses*, 584 F. Supp. 2d 479 (E.D.N.Y. 2008); *see also U.S. v. Rivieccio*, 661 F. Supp. 281 (E.D.N.Y. 1987) ("'A bona fide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust . . . .'"); *Simonds v. Simonds*, 45 N.Y.2d 189, 408 N.Y.S.2d 359 (1978) ("A bona fide



The Honorable Joseph F. Bianco
January 22, 2021
Page 7

purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust . . . ."); *see also Istel v. Istel*, 684 N.Y.S.2d 620 ([2d Dep't] 1999); *Leicht v. Carretta*, 88 N.Y.S.2d 71 (Suffolk Cty. 2009).  Accordingly, as a bona fide purchaser for value and secured lender, Danske stands above any other petitioner's interest.

**3)  To the Extent the Government Continues to Seek Forfeiture of the Resort Property, the Court Should Afford No Credence to the Government's Effort to Further Delay a Sale <u>of the Property or to Delay Determination of Danske's Undisputed Claim Amount.</u>**

      The government provides nothing in its letter setting forth whether it will continue to seek forfeiture to the extent the Court recognizes Danske's claim to a certain amount.  Nor does it set forth if it will move forward with an interlocutory sale.  As the Court asked at the December 10, 2020 hearing, and Danske continues to ask, "Why hasn't the government at all pursued the idea of an interlocutory sale?  That was discussed over a year ago."  Dec. 10, 2020 Hearing Tr. at 18:6-8.  It is now over 40 days since that hearing and the Government still has not pursued an interlocutory sale.  As with the government's refusal to address the other petitioners' claims, the government's failure to move forward with an interlocutory sale given the financial situation of the Resort Property—i.e., its need for liquidity and inability to pay interest on Danske's loans—is simply incomprehensible and inexcusable.

      It is clear that the government has simply no ability (or desire) to move forward with an interlocutory sale.  Thus, Danske is prepared to submit to the Court its own motion for an interlocutory sale.  Danske believes that any sale is likely to be quicker and more efficient if it is effectuated through the foreclosure process.  Any such sale can proceed with this Court's oversight pursuant to Rule G of the Supplemental Rules of Civil Procedure, which provides that an interlocutory sale must be conducted "by a United States agency that has authority to sell the property, by the agency's contractor, or *by any person the court designates*."  Rule G (7)(b)(ii).  The time for delay has ended.  The faster a sale process is begun, the faster the process to preserving value can begin.

      Furthermore, there is no reason to delay a determination of the amount of Danske's undisputed claim now that it is clear there is no support to the government's theory of set-off.  In the letter submitted jointly by CSL and Mr. Nolan, they argue that the Court should not promptly issue an order on Danske's summary judgment motion before a settlement is reached.  They go on to argue that the Court should delay because a determination could "obliterate" their chance to recovery.  The Court, however, has already granted Danske's summary judgment motion as to the Initial Loan.  *See* Nov. 23, 2020 Oral Ruling ("The Court is granting summary judgment to the bank with the exception of two issues . . .").  Furthermore, there is no guarantee that a settlement will be reached, and it is thus imperative to move quickly because of the financial realities mentioned above.  Finally, the notion that the Court should delay ruling on Danske's legitimate claim in order to avoid recognizing Danske's legitimate claim would simply be unjust and improper under the law.  *See United States v. Egan,* 811 F. Supp. 2d 829, 840 (S.D.N.Y.2011)



The Honorable Joseph F. Bianco
January 22, 2021
Page 8

(rejecting argument that government could use forfeited property belonging to a third party "in order to aid in the compensation of other victims because to do so would be more 'fair' . . .").

      We thank the Court for its time and attention to this matter.


Respectfully,


/s/ George Kostolampros

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn


cc:    All parties of record via ECF