# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,              :

                -against-                       :

ERIC LESAK,                            :

                            Defendant.  :
-----------------------------------------------------------X

07 Crim. 00396 (LAK) (DF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

In this criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n), which was referred to me by the Honorable Lewis A. Kaplan (Dkt. 29), third-party claimant Emigrant Mortgage Company, Inc. ("Emigrant") and third-party claimant Robert S. McCoy, Jr. ("McCoy") have separately petitioned the Court to assert their respective interests in certain real property subject to a preliminary order of forfeiture. Now before the Court is a motion by Emigrant for summary judgment. (Dkt. 31.) For the reasons set forth below, I recommend that the Emigrant's motion for summary judgment be granted.

## BACKGROUND[1]

### A.  Defendant's Fraud

Between 1999 and 2005, defendant Erik Lesak ("Defendant") sold various securities by means of false and misleading representations, regarding, *inter alia*, the financial condition of

---

[1] The undisputed facts set forth herein are taken from the Emigrant's Rule 56.1 statement, McCoy's response and, where appropriate, evidence and declarations submitted by the parties in connection with this motion. (*See, e.g.*, Claimant Emigrant Mortgage Company's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated Jan. 19, 2011 (Dkt. 33) ("Emigrant Stmt."); Declaration of James A. Raborn, dated Jan. 14, 2011 (Dkt. 31) ("Raborn Decl."); Claimant Robert S. McCoy, Jr.'s Counter-Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated Feb. 25, 2011 (Dkt. 36) ("McCoy Resp."); Declaration of Robert S. McCoy, Jr., dated Feb. 24, 2011 (Dkt. 37) ("McCoy Decl.").) To the extent the parties dispute particular facts, the Court has attempted to ascertain whether the evidentiary record reveals any actual conflict.

the companies involved in the sales and the compensation Defendant would receive as a result of the sales. (*See* Information, dated May 8, 2007 (Dkt. 2), ¶ 6.) During that time, Defendant held himself out as a securities dealer, even though he had lost his license with the National Association of Securities Dealers in or about 2001. (*Id.*, ¶ 2.)

In a declaration, McCoy states that he was a victim of Defendant's fraud. (McCoy Decl., ¶ 3.) In particular, he contends that Defendant induced him to transfer approximately 7 million dollars to Defendant by representing that the money would be used to purchase securities on McCoy's behalf. (*Id.*) According to McCoy, the Federal Bureau of Investigation ("FBI"), in its investigation of Defendant, found that Defendant never invested approximately 5 million dollars of McCoy's funds, and that, though the remaining 2 million dollars were used to purchase securities, those securities were being manipulated by Defendant and were ultimately sold at a substantial loss. (*Id.*) McCoy claims that Defendant never repaid any of the money. (*See id.*)

### B. The Property

On February 11, 2004, Defendant's wife, Tara Lesak, acquired property located at 216 Mill Road, Manorville, New York (the "Property"), for $620,000. (Emigrant Stmt., ¶ 5; McCoy Resp., ¶ 5.) The purchase price was funded, in part, by a $265,000 purchase money mortgage from Berkshire Mortgage Group Inc., which immediately assigned the mortgage to New Century Home Mortgage Corporation ("New Century"). (Emigrant Stmt., ¶¶ 6-7; McCoy Resp., ¶¶ 6-7.) McCoy contends that the remainder of the purchase price and the closing costs were paid for with funds directly traceable to the money that Defendant fraudulently obtained from McCoy. (*See* McCoy Decl., ¶ 5.)

2

Tara Lesak defaulted on the mortgage with New Century, and, on September 3, 2004, New Century instituted foreclosure proceedings. (Emigrant Stmt., ¶ 8; McCoy Resp., ¶ 8.) In February 2005, Americana Mortgage Group ("Americana"), a mortgage broker, submitted a residential loan application, including a credit report and an appraisal of the Property, to Emigrant on behalf of Tara Lesak. (Raborn Decl., Exs. C, E, G, H.) According to the credit report, 12 of Tara Lesak's 13 reported accounts were delinquent and she had three judgment against her, including one in the New York City Criminal Court. (Raborn Decl., Ex. G; *see also* Raborn Decl., Ex. C.) Emigrant did not independently verify Tara Lesak's ability to repay a refinanced mortgage. (Raborn Decl., Ex. I.) Instead, as set forth in a letter dated March 21, 2005 from Emigrant to Tara Lesak, Emigrant calculated the "annual regular and dependable income" she would need to be able to meet the financial obligations of a refinanced mortgage and informed her that, by signing the letter, she would be representing that she could be reasonably expected to meet this annual income requirement. (*Id.*) Tara Lesak appears to have signed the letter on March 24, 2008. (*Id.*)

On April 8, 2005, Tara Lesak and Emigrant executed a mortgage (the "Mortgage"), secured by a lien on the Property, for the principal sum of $350,000, of which $284,619.64 was apparently paid to New Century to satisfy the original mortgage and $12,588.38 was paid in cash to Tara Lesak. (*See* Emigrant Stmt., ¶¶ 9-10; McCoy Resp., ¶¶ 9-10; *see also* Raborn Decl., Exs. C-D.)[2] The Mortgage was subject to a high interest rate (11 percent, adjustable to a maximum of 17 percent). (*See* Raborn Decl., Ex. D, at Adjustable Rate Rider.) As part of the

---

[2] Although, as McCoy notes, Emigrant has not submitted evidence of payment to New Century, there is nothing to suggest that Emigrant failed to payoff the mortgage with New Century. In any event, McCoy has not challenged Emigrant's motion for summary judgment on that basis.

transaction, Americana was paid $10,500 in mortgage broker fees. (*See* Raborn Decl., Ex. C.) James A. Raborn, Esq., First Vice President, and Director of the Foreclosure and Real Estate Owned Department at Emigrant, states that, at the time the Mortgage closed, Emigrant had no knowledge of Defendant's fraud or of McCoy's claim that the Property had been purchased, in part, with funds fraudulently obtained from him by Defendant. (Raborn Decl., ¶¶ 1, 9.)

Following the refinance with Emigrant, the foreclosure proceedings brought by New Century were terminated and, on April 28, 2005, the Mortgage was recorded with the Suffolk County Clerk. (*See* Emigrant Stmt., ¶ 9; McCoy Resp., ¶ 9.) Shortly thereafter, on June 1, 2005, Tara Lesak defaulted on her obligations under the Mortgage. (*See* Emigrant Stmt., ¶¶ 11-12; McCoy Resp., ¶¶ 11-12.) On October 25, 2005, following service of a notice of default, Emigrant commenced a foreclosure action in New York Supreme Court. (*See* Emigrant Stmt., ¶¶ 11-12; McCoy Resp., ¶¶ 11-12.)

### C. Criminal Proceedings

On May 25, 2006, an indictment was filed in the Middle District of Florida, charging Defendant with four counts of wire fraud and ordering Defendant to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), "all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of [the charged] violations, including but not limited to . . . [the Property]." (*See* Emigrant Stmt., ¶ 14 (quoting the Florida Indictment); McCoy Resp., ¶ 14 (same); *see also* Order of Forfeiture, dated Aug. 30, 2007 (Dkt. 4) ("Order of Forfeiture"), at 1-4 (same).) On August 5, 2006, the Government recorded a Notice of *Lis Pendens* as to the Property with the Suffolk County Clerk and, as a result, Emigrant's foreclosure action was placed on hold. (*See* Emigrant Stmt., ¶ 15; McCoy Resp., ¶ 15.) The criminal case was eventually transferred to the Southern District of New York,

4

and an information was filed by the Government, charging Defendant with one count of conspiracy to commit securities fraud and two counts of securities fraud. (Information, dated May 8, 2007 (Dkt. 2)). Defendant pleaded guilty to the Florida Indictment and the Information and admitted the forfeiture allegations therein, including allegations specifically directed to forfeiture of the Property. (Order of Forfeiture, at 2-3.)

On August 30, 2007, the Court (Lynch, J.) entered an preliminary order of forfeiture as to the Property. (*See id.*) On October 16, 2007, Emigrant filed a petition, pursuant to Section 853(n), for determination of its interest in the Property (Dkt. 5); on November 13, 2007, McCoy also filed a Section 853(n) petition for determination of his interest in the Property (Dkt. 6). Emigrant then moved to dismiss McCoy's petition, arguing that, as a victim, McCoy was a general creditor of Defendant's and, thus, lacked standing to contest the preliminary forfeiture order. The Court denied Emigrant's motion to dismiss, explaining that, if McCoy could prove (as he alleged in his petition) that his stolen funds were traceable directly to the Property, he would have standing to contest the forfeiture of the Property as the beneficiary of a constructive trust. (*See* Opinion and Order, June 23, 2009 (Dkt. 21) ("6/23/09 Opinion and Order").)

In October 2009, the case was transferred to the Honorable Lewis A. Kaplan (Dkt. 26) and, in October 2010, the forfeiture proceedings were referred to me for a report and recommendation (Dkt. 29). Following the completion of discovery, Emigrant moved for summary judgment, and McCoy opposed. The Government, which filed no written papers in connection with Emigrant's summary judgment motion, has stated that "its role in this action is essentially that of an interpleader." (6/23/09 Opinion and Order, at 5.)

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

Following an entry of forfeiture to the Government in a criminal proceeding, "[a]ny person, other than the defendant, asserting a legal interest in [the] property . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). Pursuant to Section 853(n),

> if, after a hearing, the court determines that the petitioner has established by a preponderance of the evidence that —
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).

Section 853(n) proceedings are governed by Rule 32.2(c) of the Federal Rules of Criminal Procedure, which provides that, following any discovery allowed by the court, "a party may move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B). Under Rule 56(c), a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

6

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Accordingly, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Nonetheless, opposition to summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make such a showing, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), but, rather, must present "significant probative evidence tending to support the [pleadings]." *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, at *9 (S.D.N.Y. Mar. 25, 2002) (citing *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290 (1968)). "If the evidence is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

In sum, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried" on the evidence presented. *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995). Where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate. *See Liberty Lobby*, 477 U.S. at 248.

## II. EMIGRANT'S MOTION FOR SUMMARY JUDGMENT

In moving for summary judgment, Emigrant argues that there is no genuine issue of dispute fact that it is a bona fide purchaser for value with respect to its mortgage lien against the Property and that, as a bona fide purchaser, Emigrant possesses a superior interest to McCoy in the Property. (*See* Memorandum of Law, dated Jan. 19, 2011 (Dkt. 32) ("Emigrant Mem.").)[3] McCoy apparently concedes that a bona fide purchaser for value would have an interest in the Property superior to his own, but contends (1) that there are factual disputes as to whether Emigrant qualifies as a bona fide purchaser, as it should have conducted further inquiry in light of evidence indicating that Tara Lesak would not be able to satisfy her obligations under the Mortgage; and (2) Emigrant should be "equitably estop[ped]" from claiming priority as a bona fide purchaser because of its allegedly predatory lending practices. (*See* Memorandum of Law in Opposition to Third Party Claimant Emigrant Mortgage Company's Motion for Summary Judgment, dated Feb. 26, 2011 (Dkt. 34) ("McCoy Opp.").)[4] The Court addresses each in turn.

### A. Bona Fide Purchaser for Value

As set forth above, Section 853(n) provides for relief from an order of criminal forfeiture to a bona fide purchaser for value, who, at the time of purchase, was reasonably without cause to

---

[3] The parties agree that the amount of Emigrant's claim is more than current appraised value of the Property. (McCoy Opp., at 3.)

[4] McCoy, who is currently residing at the Property, has argued over the course of these proceedings that he has an equitable lien arising from money he has spent protecting and safeguarding the Property. (*See* 6/23/09 Opinion and Order, at 10 n.6.) McCoy appears to concede that, to the extent Emigrant is entitled to priority as a bona fide purchaser, Emigrant's interest would be superior to any such an equitable lien. (*See* McCoy Opp., at 1 (arguing that granting Emigrant status as a bona fide purchaser would "create an unjust enrichment conferring the benefit of [McCoy's] repair, maintenance and safeguarding of the [Property] to [Emigrant]").)

8

believe that the property was subject to forfeiture. Section 853 does not define the term "bona fide purchaser for value"; instead, courts look to the state law pertaining to the subject property. *See Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004). Under New York law, where the Property is located (*see* Emigrant Mem., at 8 (applying New York law); McCoy Opp., at 5 (same)), to qualify as a bona fide purchaser for value, a party must have paid valuable consideration, in good faith and with no knowledge of any outstanding lien or prior fraud. *Commandment Keepers Ethiopian Hebrew Congregation of Living God v. 31 Mount Morris Park, LLC*, 908 N.Y.S.2d 1 (1st Dep't 2010); *Pacheco*, 393 F.3d at 353 (quoting *Jenkins v. Stephenson*, 745 N.Y.S.2d 30, 32 (2d Dep't 2002)).

Here, McCoy does not dispute that Emigrant gave valuable consideration, by paying off the mortgage with New Century. Nor has McCoy argued that Emigrant entered into the Mortgage in bad faith.[5] The only potentially disputed issue is whether Emigrant had knowledge of any outstanding lien or prior fraud.

"[W]here a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a bona fide purchaser." *Maiorano v. Garson*, 886 N.Y.S.2d 190 (2d Dep't 2009) (quoting *Williamson v Brown*, 15 N.Y. 354, 362 (1857)). A purchaser, however, is only "chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed."

---

[5] Indeed, the Court is not aware of any authority providing that entering into a high-interest-rate mortgage with a high-risk individual (*see infra* at 10-11) is, itself, sufficient to negate good faith.

9

*Anderson v. Blood*, 152 N.Y. 285 (1897); *see also Miner v. Edwards*, 634 N.Y.S.2d 306, 307 (4th Dep't 1995).

Here, McCoy argues that, at the time the Mortgage was entered, Emigrant had sufficient evidence of Tara Lesak's financial problems, including her failure to make any payment on the original mortgage with New Century and the delinquencies and judgments reflected on her credit report (*see supra* at 3), to put Emigrant on "notice that further inquiry [was] needed." (McCoy Opp., at 7.) Emigrant cannot be charged with knowledge of a competing, existing interest in the Property, however, as McCoy has not submitted any evidence suggesting that, even if Emigrant had conducted a further investigation, it would have learned of Defendant's criminal securities scheme, the Government's interest in the property arising from Defendant's criminal acts, or the alleged constructive trust in favor of McCoy. Indeed, Defendant was indicted more than one year *after* Emigrant and Tara Lesak executed the Mortgage.

Accordingly, McCoy has failed to submit sufficient evidence to raise an issue of fact with respect to whether Emigrant should be considered a bona fide purchaser for value of the Property.

B. **Equitable Considerations**

McCoy also argues that Emigrant should be "equitably estop[ped]" from claiming priority over him, in light of Emigrant's supposedly predatory lending practices. (McCoy Opp., at 8.) In support of his theory, McCoy notes that the terms of Section 853 must be "liberally construed to effectuate [Section 853's] remedial purposes," 21 U.S.C. § 853(o). Yet Section 853(j) grants priority to a bona fide purchaser for value and, as explained above, Emigrant qualifies as a bona fide purchaser under applicable New York law. Moreover, while, from the record before the Court, it appears (1) that Emigrant may have had reason to believe

10

that Tara Lesak would not be able to meet her obligations under the Mortgage, (2) that, nevertheless, Emigrant failed to investigate further, and (3) that the interest rate and other terms of the Mortgage were unfavorable to Tara Lesak, nothing in the Mortgage appears to violate then-applicable law. McCoy has not cited any authority for departing from the ordinary determination of priority, provided for under Section 853, based on the allegedly "predatory" – but apparently legal – lending practices of a bona fide purchaser.

Accordingly, I recommend that summary judgment be granted in favor of Emigrant.[6]

## CONCLUSION

For the foregoing reasons, I recommend that Emigrant's motion (Dkt. 74) for summary judgment be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Amended Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A Kaplan, United States Courthouse, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1310, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND

---

[6] As noted above (*see supra* at n.4), McCoy argues that such an outcome would result in Emigrant being unjustly enriched by McCoy's services in having maintained the Property for a period of time. Nothing herein should be construed as addressing the merits of any unjust enrichment claim that McCoy may, at some point, seek to advance against Emigrant in an appropriate forum. The only matter now before this Court is the disposition of the Property that is the subject of the Court's preliminary forfeiture order.

WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       August 12, 2011

                                  Respectfully submitted,

                                  _/s/ Debra Freeman_
                                  DEBRA FREEMAN
                                  United States Magistrate Judge

Copies to:

Hon. Lewis A. Kaplan, U.S.D.J.

All parties (via ECF)

12