Mattias Nor...

*Known and in the government's possession for years before the trial...*

*Faxed from Sweden in 2009*

Government Exhibit
3500 - MN - 2
13-CR-607(JFB)
exhibitindexes.com #489

## AMERICAN ARBITRATION ASSOCIATION

DIANA NOLAN, an individual, and
OWEN NOLAN, an individual,

    Claimants,

vs.

PHIL KENNER, and individual;
STANDARD ADVISORS, INC., a
Delaware Corporation and STANDARD
ADVISORS, LLC, a Delaware Limited
Liability Company,

    Respondents.

NO. 76 148 Y 00223 08 DEAR

**AFFIDAVIT OF Mattias Norstrom**

I, Mattias Norstrom, being duly sworn upon oath, depose and say:

1. I am over the age of 18 and otherwise competent to execute this affidavit.

2. The contents of this affidavit are based upon my own personal knowledge.

3. I have information in the above-captioned matter and have personal knowledge of the statements contained in this declaration.

4. I have been a professional hockey player for over 15 years. I either personally know, or know of, the following individuals; Owen Nolan, Ethan Moreau, Joe Juneau, Dan Boyle and Brad Lukowich. All of these individuals are also professional hockey players.

5. My home is in Sweden. I have known Phil Kenner for over 10 years. I met him while he was representing other friends of mine who were being assisted by him. At that time, Kenner was acting as a family advisor and these friends had expressed their high level of satisfaction with his service and commitment to their families. I subsequently worked with Kenner in a similar capacity and have experienced the same

high levels of satisfaction with his service and commitments to my family. On many occasions, Phil has flown all over the world to visit me on short notice upon my request.

6. In 2003, I decided to join Phil Kenner at his new Family Office practice at Standard Advisors after he had left his former employer, Assante Global Advisors. I was aware that Phil actually sued Assante Global Advisors in California Federal Court shortly after his departure. I was aware of Phil's status as a licensed advisor when he established Standard Advisors in 2003 and I was also aware that approximately one year later, Phil Kenner gave up his licensed status. I neither had any concerns about this issue then, nor do I feel that it this issue has negatively impacted his ability to act as my Family Advisor now.

7. I am aware that Owen Nolan is suing Phil Kenner and his company, Standard Advisors, in Arizona and is alleging several improprieties by Phil Kenner related to certain investments that I am part of, such as; the Hawaii Investment Group, Diamante Del Mar (managed by Ken Jowdy), Diamante Cabo San Lucas (managed by Ken Jowdy), Eufora, LLC (managed by Tommy Constantine) and the Avalon Airpark Project (managed by Tommy Constantine). I believe that Phil Kenner holds my investments in his companies with the highest level of integrity. Phil Kenner has always made himself available to my family and I and has always addressed any and all of my inquires. As a professional hockey player, not a full time businessman, it is important to me and my family to have access, often face-to-face, with the people who are directly and indirectly involved in my business affairs. To date, I have never seen any indications of any improprieties or wrongdoings by Phil Kenner, his company Standard Advisors, and/or his advice for my family's best interest.

8. **DIAMANTE AIR, LLC;** I am currently at odds with Ken Jowdy as a result of his gross mismanagement of an investment that I have made in his airplane company, Diamante Air, LLC. Ken Jowdy and Mark Thalmann, his childhood friend, acting as the Managers of this company, operated a Falcon 10 airplane and a Metroliner

III. In the fall of 2008, Ken Jowdy and Mark Thalmann stopped making the monthly loan payments on the two (2) airplane loans under Diamante Air, LLC that they had been making since 2005. Phil Kenner notified me that Jowdy and Thalmann had failed to properly manage and maintain the business and had allowed our investment to become virtually worthless. As a result, this left Phil and one of our other partners, Sergei Gonchar, with over $1,000,000 in personally guaranteed debt with the lender for these airplanes. Phil, as well as all of our other partners and I were led to believe by Jowdy, and Thalmann, that the loans for these planes were being paid down aggressively based on the representation that Jowdy's extensive usage of the planes, was generating charter revenue for the business. In fact, Jowdy and Thalmann did not reduce the loan obligation as represented in spite of their extensive use of the airplanes. After numerous requests, neither Phil, our attorney, Paul Augustine, or myself have been able to obtain the bank records, financial reports or tax records from Jowdy or Thalmann to review the status of our investment and where it all went wrong.

9. **HAWAII INVESTMENT GROUP;** I have been an investor in the Hawaii Investment Group since about 2004. I wired $100,000 to Northern Trust Bank for my equity stake in the Hawaii Investment Group through Little Isle IV, LLC and for the express purpose of making funds available to Phil Kenner, which were to be used at his discretion. I was aware that my funds would be used to make distributions for the company, including but not limited to; Land Acquisition, Travel & Entertainment expenses, Legal Fees, Planning Fees, Payroll, Permitting fees, Loans to outside entities and **distributions to other members that would satisfy their monthly Line of Credit payments to Northern Trust Bank.** I also understood Phil was the sole signatory on the Little Isle IV, LLC bank account. I have never had any reservations or issues regarding the use of these funds. Phil Kenner has always disclosed the complete and detailed use of these funds with me from time to time and per my every request. We discussed in detail the risks associated with the Hawaii Investment Group and I elected to invest

[Handwritten annotation: THUS -- no ponzi issues -- as represented by the government during the EDNY trial...]

accordingly. Phil also discussed in detail, the merits of the Joint Venture agreement with WWK Hawaii Holdings, LLC prior to me personally signing the Acknowledgement and Acceptance letter Phil provided to me through our attorneys, Larry Markowitz and William Najam in July of 2006, which was prior to my agreement of the Joint Venture. I understand the global markets have caused many issues with the Joint Venture's ability to sell or liquidate the land holdings, but I am confident that the ~$100,000,000 of land that Phil Kenner was instrumental in acquiring on behalf of the Joint Venture, is more that sufficient to ensure a positive investment result as originally contemplated prior to my involvement. From day one, I have also been made aware of Phil Kenner's significant interest in the Hawaii Investment Group in consideration of his ongoing capital contributions, day-to-day management, personal loan guarantees (including securing the Waikapuna loan with his Arizona residence at the time), his environmental guarantee on behalf of the Joint Venture (so none of the other members would be liable), as well as other contributions.

10. **DIAMANTE CABO SAN LUCAS;** I have been involved in real estate investment projects in Mexico since approximately 2003, specifically, Diamante Del Mar and Diamante Cabo San Lucas. I was aware that Phil Kenner has had an ownership interest in the two Mexico projects operated by Ken Jowdy prior to my making an investment into each respective project. I am aware that Phil Kenner and Tommy Constantine had been working diligently over the last two years to resolve certain partnership issues between Ken Jowdy and our investor group, which were related to our investment in Diamante Cabo San Lucas. I understand that approximately eighteen (18) months ago, Tommy Constantine negotiated a global settlement with Ken Jowdy, with the assistance of Jowdy's brother-in-law, William Najam, to a) relieve Ken Jowdy of the $10m+ in personal debt, b) his management control of the project, and c) any additional personal financial obligations he had to our Hawaiian Investment Group, Glen Murray, Bob Gaudet, myself and others. I was also aware that Ken Jowdy presented the

settlement agreement to Masood Bhatti at Lehman Brothers in New York, who at that time was a Senior VP and was acting on behalf of the lender for the Cabo project. Subsequently, after Jowdy met with his brother in law William Najam and Masood Bhatti, Jowdy decided that he would not follow though with the agreement that he had made and elected to renig on the settlement that Tommy Constantine and Ken Jowdy had negotiated over a six (6) month period of daily negotiations. Furthermore, in spite of being a significant investor and shareholder of Diamante Cabo San Lucas, per an email recently written by Jowdy and sent to Phil Kenner, I as well as other investors, have been prohibited from entering the property. Among other extravagant expenditures and instances of corporate waste, I am aware that Ken Jowdy has utilized various resources of the Diamante Cabo San Lucas project, including the use of personnel who were on the Cabo payroll and other financial resources to pay for several private jet flights around the country. I am also aware that the individual in charge of the Lehman Brothers loan to Jowdy and Diamante Cabo San Lucas, Masood Bhatti, also acquired a secret equity interest in the Diamante Cabo San Lucas project through an entity owned by his Goddaughter named Somerset Properties, LLC. This was unknown to Phil Kenner or myself prior until recently.

11. **DIAMANTE DEL MAR;** I am an investor in Diamante Del Mar (DDM), in El Rosario, Mexico, which Ken Jowdy also acts as the sole Managing Member. I invested $500,000 in the project and have not received a single communication in several years, from Ken Jowdy, William Najam or others representing the project regarding the status or development of the project. I also hold a $250,000 Promissory Note from Ken Jowdy and Diamante Del Mar that has not been paid by Ken Jowdy even though the note matured several months ago. I am aware that the project has not been proceeding with any development in the last three (3) plus years. This is primarily due to the fact that Ken Jowdy has focused his efforts on two unrelated projects, which Phil Kenner and the rest of our investors in Diamante Del Mar and Diamante Cabo San Lucas are not involved.

12. **EUFORA, LLC:** I have been an investor in a few LLCs that have a direct investment in Eufora's Pre-paid card business. From day one, I have been aware of the risks associated with a start up company in the payment card industry. I understood that at the time of my first investment in the LLC which held our interest in Tommy Constantine's Eufora, LLC, Phil Kenner was a shareholder in the company. Phil Kenner disclosed his investment in Eufora, LLC prior to my making my investment.

13. I have always been made aware by Phil Kenner that I am able to request outside assistance from attorneys, accountants, or other professionals to audit the strategies that Phil Kenner has assisted in implementing. I have always had direct access to third party advisors involved with the planning decisions for my family, whether I have included Phil Kenner or not in those conversations. Through conversations with other clients of Phil Kenner's over the years, I am aware that this is his common approach with his Family Office clients.

Further Affiant Sayeth Not.

Executed on this 30th day of May, 2009.

_____
Mattias Norstrom