

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

April 27, 2021

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

      Re:    **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

      We write on behalf of Danske Bank A/S London Branch ("Danske") in advance of the April 28, 2021 conference to respectfully put before the Court the issues that Danske would like to discuss with the Court now that settlement discussions with the government have terminated.

      **1.   Determining the Amount of Danske's Claim As a BFP.**

      The Court granted Danske's motion for summary judgment and found that Danske is a bona fide purchaser for value as to the initial loan purchased from Lehman.[1]  11/23/20 Tr. at 10. As to the additional loans Danske advanced after it acquired Lehman's interest, the Court found that Danske has a valid interest in those additional loans, advanced those funds and has an interest subject to limited discovery regarding due diligence conducted by Michael Devlin in order to determine whether there is any setoff that would apply.  11/23/20 Tr. at 12-16; 12/10/20 Tr. at 5-7.  As we have previously argued, there is no basis for such set-off as the Court has determined that Danske had no notice of forfeiture and that Danske gave value.  Nevertheless, the Court held that it would allow limited discovery on that issue.  Danske is prepared to proceed immediately and expeditiously to litigate the full amount of its claim.  To that end, Danske is ready to proceed with the limited discovery the Court agreed to allow the government.  11/23/20 Tr. at 24; *id.* at 25-26 ("I emphasize limited.")

      In addition to the limited discovery the Court has stated it would allow for the government, Danske intends to seek limited discovery from the government that bears on the government's

---

[1] This includes the $45 million of the $50 million PPF as the government has acknowledge that it is challenging only $5 million of the $50 million PPF.  11/23/20 Tr. at 10 ("So with regards to PPF, I believe the $45 million, I don't believe the $45 million, I don't believe that would be contested.  We are contesting the $5 million." ).



knowledge of Danske's additional loans, the amounts repaid to Danske, how the borrower was using those funds and any allegations that Danske and the borrower were purportedly colluding to deplete equity in the resort. These issues are directly relevant in determining equitable estoppel and go to the credibility of the government's underlying allegations.

## 2. The Government Must Present to the Court a Plan for an Interlocutory Sale on an Expedited Basis.

During the December 10, 2020 hearing, the government represented to the Court that it had taken the steps necessary to effectuate an interlocutory sale in Mexico. 12/10/20 Tr. at 34. Now that a consensual resolution is off the table, the time is now for the government to proceed as swiftly as possible to complete an interlocutory sale. As we have stated from the beginning of these proceedings, it is our view that the U.S. government cannot effectuate a sale of property in Mexico. Rather, the only way for the U.S. government to effectuate an interlocutory sale of the Resort Property is through Mexican authorities. This process, assuming Mexican authorities would agree to do so, will undoubtedly take years. The Resort Property, however, does not have years to wait. The government must present to the Court its plan for effectuating a sale and how long that process will take.

Given that the government apparently has no intent from withdrawing the Resort Property from forfeiture regardless of the amount of Danske's recognized claim, moving swiftly to sell the Resort Property is in all parties' interests. The Borrower has been in default of its loan obligations due Danske since September 30, 2019. Notwithstanding that and without waiving the default or its right to exercise its remedies, Danske has continued to support the Resort Property by permitting the Borrower to continue selling collateral, including parcels of real property and time share interests, without requiring that the proceeds (or some portion thereof) be paid to Danske or otherwise protected in escrow. Rather, the Borrower has used the sale proceeds to continue financing its on-going operations and construction at the Resort Property, which is a primary reason the Resort Property is able to continue as a going concern. In light of the ongoing default and the failure to reach a consensual resolution, Danske has an obligation to its shareholders to condition release of collateral on securing sales proceeds in escrow. Danske, therefore, can no longer sign instruction letters that allow for sales of parcels of property and it will not agree to release any of the collateral until the sales proceeds are deposited in escrow and held for the potential benefit of Danske subject to final determination of its claim.



### 3. Danske's Ability to Sell its Claim in this Forfeiture Proceeding and its Underlying Note.

Given that Danske was not able to reach a settlement with the government and it is not at all clear that the government would withdraw the property from forfeiture even if the Court recognized Danske's claim up to over $200 million (or even less), it may take years for Danske to recover. As it is now, and since September 2019, Danske has not been paid what it is owed on its loans and as such is considering all options in order to effectuate an exit. One such avenue is for Danske to sell its interest and note to a buyer willing to purchase it (and given these proceedings, at a significant discount). In this regard, Danske has been approached by an interested buyer, Silverpeak, an alternative investment management firm, and SEC registered investment advisor, with expertise in three target asset classes: real estate, energy, and credit (additional information can be found at www.Silverpeak.com). In order for Danske to sell its interest and note, however, any buyer would want the assurance that the new noteholder/assignee stands in Danske's position in this proceeding.[2] Additionally, Silverpeak has indicated a preliminary interest in permitting the Borrower to continue selling parcels of real property and time share interests in order to support the operations and construction of the Resort Property. Thus, we request to discuss this issue with the Court at the next hearing. The sale of Danske's interest and note may ultimately avoid further litigating Danske's interest because the purchaser of Danske's interest may be interested in entering into a settlement agreement with the government.

We thank the Court for its time and attention to this matter.

Respectfully,

/s/ George Kostolampros

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn

cc: All parties of record via ECF

---

[2] As the Court is aware, Danske's motion for summary judgment, which the Court granted subject to determination of the amount of Danske's claim, asked that the Court "grant this Motion, recognize Danske (*and its successors and assigns*) as a bona fide purchaser for value of senior secured interests in the Equity Interests and Resort Property, including Danske's right to default interest, and amend the Preliminary Order to reflect Danske's senior secured interests with the amount of Danske's claim to be calculated (inclusive of default interest) at the time of amendment." Danske June 19, 2020 Motion for Summary Judgment, p. 24 (emphasis added).