

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

May 21, 2021

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

  Re: **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

  In accordance with the Court's order during the April 28, 2021 conference, we write on behalf of Danske Bank A/S London Branch ("Danske") to update the Court as to Danske's efforts to sell its note and to detail Danske's request for discovery. Danske received the government's letter and will respond more fully to the government's May 20, 2021 letter, but, given the statements in the government's letter, is compelled to briefly respond now to the government's letter before addressing the issues below.

  As an initial matter, the government's discovery requests are broad, burdensome, duplicative and far beyond the "spot check" the Court indicated would be permissible. Indeed, many of the requests are identical to the requests the government proposed in December—reflecting that the government made little to no effort to abide by the Court's admonition that discovery requests were to be tailored.

  In addition, the government's "plan" to conduct a sale relies on the Court ordering non-parties, Ken Jowdy and DCSL Mexico, to engage a sales agent in Mexico and ordering Danske to issue instructions to facilitate the sale. There is no authority for such an order or for the government's broad assertion of power. Instead, it is reflective of the fact that—contrary to the government's representations to the Court since 2019[1]—the government cannot effectuate a sale

---

[1]  *See, e.g.*, 7/22/2019 Tr. at 9:24-14:25 (in response to the Court's questioning as to the length of time it would take to complete an interlocutory sale and the potential for harm to third-parties, the government stated that it had spoken with the "international asset forfeiture division" within the US Marshalls and DOJ as to a sale of the Resort Property and it was not their "intention to have it go on for years"); 10/11/2019 Tr. at 50:3-10 (responding to Mr. Wolinksy's concerns that the government cannot effectuate a sale in Mexico, the government responded, "yes, the Trust might not be here but the property is subject to Your Honor's jurisdiction and once the Government gets a final order of forfeiture it serves it on the Mexican Government who then executes it on behalf of the United States. That's



The Honorable Joseph F. Bianco
May 21, 2021
Page 2

on its own and in fact has no plan as to how to effectuate a sale of the Resort Property other than to force the Borrower and Danske to effectuate the sale.  The government points to no authority as to how this Court could force third-party claimants and non-claimants, including the Borrower (a Mexican entity), to sell a property in Mexico as part of this forfeiture proceeding.

## 1. Danske Should Be Permitted to Sell its Note.

As it explained during the April 28, 2021 conference, Danske is contemplating selling its note, interest, and claim to Silverpeak Real Estate Partners, LP, an alternative investment management firm, and SEC registered investment advisor.  Danske presented the government with the key terms relevant to this proceeding that would be included in an ultimate sale agreement.  Those terms are attached to this letter as Exhibit 1.  Danske should be permitted to move forward with this note sale as soon as practicable.

Allowing Danske to proceed with a sale of its note allows Danske, a third-party that has been deemed a bona fide purchaser at least as to a significant portion of its note, to limit the ongoing harm to Danske's (and its shareholders') interests.  At the same time, the note sale will not change the status quo with respect to this forfeiture proceeding.  During the April 28, 2021 conference, the government expressed concern that Danske would "become a non-party" no longer subject to the Court's jurisdiction.  4/28/21 Conf. Tr. at 9:17-10:1.  The key terms provided to the government since the conference address those concerns and make clear that a note sale will cause no prejudice to the government or any of the victims.  Under the terms provided to the government, Danske will remain subject to the Court's jurisdiction with respect to this forfeiture proceeding.  Further, if it purchases Danske's note, Silverpeak can acquire only what New York law allows— which is only the rights and interests Danske now has, nothing more and nothing less.  *See, e.g.*, *United States v. Watts*, 786 F.3d 152, 167 n.7 (2d Cir. 2015) (recognizing that "[w]hen a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had") (internal citation omitted); *Dewees Mellor, Inc. v. Weise*, No. 91 CV 2518 (EKR), 1993 U.S. Dist. LEXIS 19299, at *3 (E.D.N.Y. Dec. 29, 1993) ("It is well established that an assignee will step into the shoes of the assignor, acquiring exactly what the prior mortgage holder had").

In a call with the government, in which Silverpeak's counsel as well as counsel for Owen Nolan and CSL Properties participated, the government would not agree to the proposed note sale.  Instead the government insisted, among other things, on knowing the price Danske is willing to accept for its note—an issue of no relevance to this proceeding—and to see the full sale agreement between Silverpeak and Danske.  We advised the government that a sale agreement has not been

---

the procedure. However, we're hoping to avoid that by entering into some of agreement for an interlocutory sale. But there is certainly a means, and Your Honor does have jurisdiction"); 12/10/20 Tr. at 32:24-34:2 (in response to questions as to the steps the government had made to be able to sell the property, the government stated ""Your Honor, we, the United States can assure the Court that we have taken those steps.").



The Honorable Joseph F. Bianco
May 21, 2021
Page 3

drafted and would not be drafted until we obtained an agreement from the government and/or an order from the Court recognizing that if Danske sold its interest, the new noteholder stands in Danske's position. It simply makes no sense for the parties to expend additional funds to draft a sale agreement to convey Danske's note and claim to Silverpeak if such a sale would not be recognized.

The government is unwilling to recognize Danske's claim and is unwilling to allow Danske to sell its note interest, thus compelling Danske to remain as noteholder. This simply is improper and has no basis in law. The government's initial retort was that it could not agree to recognizing that the new noteholder would stand in Danske's position if the government was prejudiced by the sale because Danske may argue that it no longer is subject to the jurisdiction of the court. Danske, however, agrees that it will continue to be subject to the Court's jurisdiction in this proceeding. In our discussion with the government, the government then took the position that it must know the consideration that Silverpeak would pay Danske for its interest in order to assess whether Silverpeak is a bona fide purchaser for value. But, the determination of whether Silverpeak is a bona fide purchaser for value under the forfeiture laws is not applicable. Silverpeak will be purchasing Danske's note and, relatedly, Danske's claim, for which Danske has already been deemed a bona fide purchaser, in this proceeding. Under New York law, Silverpeak is not required to reestablish that it is a bona fide purchaser as to Danske's claim. Indeed, "[a]fter property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser and is entitled to the same protection as the bona fide purchaser, irrespective of notice." *See, e.g.*, *Galin v. Hamada*, 2016 WL 2733132, at *2 (S.D.N.Y. May 10, 2016) (quoting *Goodwin v. Harrison*, 98 S.E.2d 255, 258 (S.C. 1957)) (denying defendant purchaser's motion to dismiss because material issues of fact existed as to whether prior purchasers were bona fide purchasers, but stating that, if the prior purchaser was deemed to be a bona fide purchaser, the defendant would stand in shoes of prior purchaser as a bona fide purchaser).

To the extent Danske is not permitted to sell its note and interest to Silverpeak and Silverpeak would not be recognized as Danske's assignee in this forfeiture proceeding, Danske has advised that it can no longer allow the sale proceeds of real property parcels and time share interests to continue to finance the Borrower's on-going operations and construction at the Resort Property. Silverpeak, however, has indicated that, should it purchase the Note, it may well be interested in continuing to allow such proceeds to fund the continued operations and construction at the Resort Property.

## 2. Danske's Requests as to Limited Discovery.

During the April 28, 2021 conference, the Court stated that Danske could submit a letter outlining the limited discovery Danske would like to request from the government. 4/28/21 Conf. Tr. at 39:7-23. As Danske has made clear previously, it wishes to move this proceeding along expeditiously and has no interest in engaging an inappropriate fishing expedition. To that end, it has tailored the below requests to be limited and narrow while allowing Danske to obtain



The Honorable Joseph F. Bianco
May 21, 2021
Page 4

information it needs to defend itself from the government's outrageous and false allegations as to Danske's lending practices with respect to the Resort Property.  To the extent Danske is not able to sell its note and must litigate the amount of its claim, Danske requests that the government produce Special Agent Galioto for a limited deposition and produce documents in response to the Requests for Production (attached as Exhibit 2).  In short, Danske seeks documents and testimony, exclusive of the documents Danske or the Borrower have provided to the government, concerning:

- The government's knowledge of Danske's loans with respect to the Resort Property.

- The bases for the government's claims as to the Borrower's use or misuse of funding advanced by Danske.

- The bases for statements or allegations made by or to the government regarding the operation of the Resort Property, Danske's agreement to extend the maturity of the loans, the Borrower's paydown of principal, and purported agreements between Danske and Mr. Jowdy.

- Any claims or petitions provided to the government asserting a direct or indirect interest in the Resort Property along with any agreements between the government and such claimants or petitioners.

- The bases for the government's statements as to the value of the Resort Property including but not limited to appraisals or valuations provided to or procured by the government.

Danske needs this discovery to understand the bases for and to respond to the government's incorrect contentions that Danske somehow engaged in improper lending practices, that the Resort Property has value far in excess of Danske's claim, and to show that the government should be estopped from challenging Danske's claim.

We thank the Court for its time and attention to this matter.

Respectfully,

/s/ George Kostolampros

George Kostolampros
Doreen S. Martin



The Honorable Joseph F. Bianco
May 21, 2021
Page 5

                                                      Xochitl S. Strohbehn

cc:      All parties of record via ECF