Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 1

## **APPENDIX A**

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
| 1. | Trimont Invoices to support the transactions of $6,297,406 included in the Initial Loan of $107,538,328. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous requests in response to which Danske has previously produced documents. *See, e.g.*, DANSKE_0016724 (12/18/08 Facility A Invoice); MSJ Ex. 10 at DANSKE_0015614 (Dkt. No. 850-10). |
| 2. | Complete draw request packages for the sample of 20 draw requests identified in Table 1 [] containing the documents required to be provided as identified in Section 11.1 of the loan agreements, entitled "Documents to be Furnished for Each Disbursement," which should include, but is not limited to: (a) All invoices, contracts or other information that support that the DCSL Resort incurred all costs included in the draw request; (b) Paid receipts or other proof of payment of all construction and development costs; (c) Complete funding memos for the disbursements; (d) Any and all correspondence, status reports and documents prepared according to such servicing agreements for the draw requests; (e) All required construction documents as identified in the Loan | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." As Danske has previously explained, each draw package consists of thousands of pages; producing 20 complete draw packages may result in a production of no less than 40,000-50,000 pages.<br><br>Subject to and without waiving the foregoing objections, Danske proposes to produce: (1) 1 complete draw package for each year from 2009 to 2019; and (2) funding memoranda for those sample draws. |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 2

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  | Agreements under Article VIII, Section 8.1, Replacement Facility C - Required Construction Documents, and under Article IX, Section 9.2, Construction Budget-Replacement Facility C, for each disbursement and/or loan advance; and (f) M. Delvin & Associates reports and supporting work papers pertaining to the disbursements. |  |
| 3. | Documentation and correspondence pertaining to any agreements and/or proposed agreements in which Danske would be conferring a, direct or indirect, personal or financial benefit on Kenneth Jowdy ("Jowdy"), individually, or seeking to confer a, direct or indirect, personal or financial benefit on Jowdy, individually, including, but not limited to, any agreements between Danske and Jowdy/the Borrower in which Danske agreed to pay Jowdy for Jowdy's services from Danske's own funds, and Danske's proposed settlement agreements that would permit Jowdy to purchase the DCSL Resort in a forfeiture related sale. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." The request is also over broad because it would literally call for production of every communication between the Borrower and the lender because, as one example, the loan agreements between the Borrower and lender would likely fall within the overly broad language of conferring a direct or indirect benefit to the Borrower, of which Mr. Jowdy is General Administrator.<br><br>Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 3

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
| 4. | Documentation addressing the loan repayments and allocation of funds to the different loan facilities. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also vague because the government does not define what is meant by "allocation of funds" and fails to define any timeframe for such loan repayments or "allocation of funds." Moreover, this request is duplicative of documents Danske has already produced to the government the documentation that is in Danske's possession, custody, and control, which the government's own expert apparently relied on, quote and referenced in her expert report. *See, e.g.*, Dkt. No. 911 (Decl. of Kellie Fedkenheuer); Dkt. 850-10 (Trimont Summary Statement, Facility A); Dkt. 854-5 (Trimont Summary Statement, Facility B); Dkt. 861-7 (Trimont Summary Statement, Facility C); Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. 861-3 (Danske Loan Statement, Facility B). |
| 5. | Documentation identifying the procedures, policies, and practices of Danske, and its officers, employees or owners, for receiving, soliciting, preparing, reviewing, approving or denying loans or client relationships. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." As written, it seeks any and all procedures, policies, and practices of Danske—as well as any of its officers, employees, or shareholders, individuals numbering in at least the thousands of people—concerning receipt, solicitation, preparation, review, approval, or denial of any or all loans or client relationships. This request is also vague and ambiguous because the terms "procedures, policies, and practices" and "client relationships" are susceptible to multiple meanings. |
| 6. | Documentation or information available to or within the knowledge of Danske | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 4

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  | concerning the conduct or assets of Jowdy, his associates, relatives, representatives, and related entities. | procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." Further, by seeking documents concerning the conduct or assets of any of Jowdy's "associates, relatives, representatives, and related entities," the government seeks a potentially vast number of documents and information of no discernible relevance. The term "conduct or assets" is also susceptible to many meanings, including conduct of no relevance to this forfeiture proceeding. |
| 7. | Documentation pertaining to any agreements and guarantees between Danske and any and all Jowdy related entities, including, but not limited to, Legacy Cabo, LLC, Legacy Properties, LLC, KAJ Holdings LLC and Silverpeak. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the needs of this case in that, as written, it could require Danske to search for, review and produce every document that potentially pertains to the underlying loan agreements—which essentially would call for every document and communication.<br><br>Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. Furthermore, Danske represents that it has no agreements and guarantees with Silverpeak and no guarantees with Legacy Cabo, LLC or Legacy Properties, LLC. |
| 8. | Documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and |

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  | or inability to meet its loan obligations to Danske and/or Lehman. | duplicative because it seeks correspondence and documents between Lehman and the Borrower or Jowdy, and therefore, as written, seeks production of documents that may stretch to 2006. Further, this request is duplicative of the government's request for documents pertaining to notices of default or calculation of default interest.<br><br>Subject to and without waiving the foregoing objections, Danske again represents that the Borrower was not in default of its obligation to pay debt service to Danske until September 2019. Prior to September 2019, Danske worked with the Borrower—in an effort to keep the Resort Property alive and in recognition that Danske would not be permitted to foreclose or otherwise take actions that would violate the protective order—to provide loan modifications, such as extensions of maturity dates and amortized principal paydowns to allow time for the Borrower to repay the significant principal payments coming due in support of the Project. Without Danske's agreements to such loan modifications, the Borrower would have defaulted before 2019 on its debt service obligations, which would have likely resulted in an earlier loss of value at the Resort Property. |
| 9. | Documentation, agreements, and correspondence between, Danske and Jowdy and/or the Borrower and/or the Trustee, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL Resort and/or Equity Interests; (b) foreclosure or forfeiture on the DCSL Resort loan in Mexico or in the United States; (c) bankruptcy or insolvency proceedings concerning the DCSL Resort or the Equity Interests in either Mexico | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the issues as to which the Court has permitted discovery in that it seeks documents as to a vast array of issues, including Jowdy's ongoing management of the Resort Property and correspondence, if any, as to any foreclosure of the Resort Property or this forfeiture proceeding. Further, this request is duplicative of documents that have already been |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 6

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  | or the United States; and (d) Jowdy's direct or indirect management of the DCSL Resort during and/or after the instant criminal case. | requested and produced. *See, e.g.*, DANSKE_0013220 (Dkt. No. 43) (KAJ Holdings Pledge Agreement). |
| 10. | Documentation regarding the due diligence performed by Danske regarding the entering into loan agreements and/or modifications with the Borrower, including deliverables, obligations, and the satisfaction of conditions by DCSL Mexico as required under all extensions, modifications, facility increases, advances and amendments to the Loan Documents. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous government requests and of other requests included here, including but not limited to the government's demand for draw packages. To the extent that this request demands all documentation reflecting "satisfaction of conditions" that were "required," it is also overbroad and disproportionate to the needs of this case. Further, this request is vague and ambiguous because the terms "deliverables, obligations, and satisfaction of conditions" are susceptible to multiple meanings.<br><br>Danske has already produced the diligence materials in its possession. *See* 10/28/20 at 22:2-13. |
| 11. | Danske's internal correspondence and documents regarding its decision to continue lending, documentation regarding the DCSL Resort's defaults, and documentation regarding Danske's decisions pertaining to foreclosure. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the issues before the Court because it seeks any correspondence or document that could possibly touch on defaults by the Borrower or Danske's decision to continue lending to the Borrower at any time, which would effectively call for production of every communication relating to every draw request. Further, this request appears to rest on the |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 7

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  |  | incorrect assumption (which Danske has repeatedly corrected) that the Borrower defaulted multiple times or was in default prior to the forfeiture. |
| 12. | Danske's non-privileged settlement proposals, settlement materials, notes of meetings with the government, and emails regarding its bona fide purchaser for value status. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." |
| 13. | Documentation showing the amount and calculation of Danske's claimed default interest. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of requests in response to which Danske has already produced information. *See* Dkt. No. 975 at 14-18.<br><br>Subject to and without waiving the foregoing objections, Danske will produce an updated calculation. |
| 14. | Notices of default of the DCSL Resort loan, and any and all documentation that notices of default were sent to the Borrower and/or Trustee of the Mexican trust. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." Moreover, it is duplicative of documents in the government's possession as Danske has already produced all documents responsive to this request. *See* Dkt. No. 860-10 (January 14, 2020 Notice of Default). |
| 15. | Documentation or an explanation for why Danske did not account for capitalized interest until April 2013 even though interest began accruing in March | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." Further, this request rests on the false |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 8

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
| | 2009 after the DCSL Resort first failed to make required interest payments. | assumption that Danske "did not account for capitalized interest until April 2013." To the extent the government is insinuating that the Borrower defaulted as a result of failing to pay interest, that is incorrect as Danske has repeatedly stated. *See* Dkt. No. 975 at 2, 4, Appendix A. |
| 16. | Loan statements for Facilities A and B dating after February 28, 2020, and Facility C loan statements dating after January 1, 2020, to support Danske's claim for costs incurred after those respective dates. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." Further this request is duplicative of other requests in response to which Danske has produced documents. *See, e.g.*, Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. 861-3 (Danske Loan Statement, Facility B).<br><br>Subject to and without waiving the foregoing objections, Danske will produce updated statements for these facilities. |
| 17. | Documentation or an explanation as to why $3,020,424 of interest payments included in Trimont's Invoices were not included in Danske's bank statements. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." |
| 18. | Documentation or explanation for the notable inconsistencies between the various Trimont documents provided by Danske, as well as the discrepancies between the Danske loan statements and the Trimont Invoices. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also vague and ambiguous because the phrase "notable inconsistencies" and term "discrepancies" are subject to multiple meanings. Moreover, by demanding documentation or an explanation for the notable inconsistencies between the various Trimont documents," the request asks Danske for information that is not within |

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  |  | Danske's possession, custody or control. Further, this request is duplicative in that it seeks information that has already been provided to the government at least once. Finally, this request rests on the inaccurate factual assertion that there are material "discrepancies" between Trimont's statements and Danske's records.<br><br>Danske has already explained that, given the significant passage of time since Trimont ceased being the loan servicer on December 31, 2016, many of the documents appear to no longer be within Danske's possession. Supplemental Decl. of David Daniel, ¶ 14 (Dkt. No. 925). Similarly, some of the invoices or documents may simply never have been provided to Danske. *Id.* Moreover, Mr. Daniel has already explained many of the purported "inconsistencies." *See, e.g., id.* at ¶ 15. |
| 19. | Documentation for the at least $6,516,433 in claimed miscellaneous fees and closings costs. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous requests and materials that Danske has already produced. Danske points to previously produced documents supporting at least some of these costs. *See, e.g.*, Dkt. No. 975 at 4 n.3; DANSKE_0017136; DANSKE_0000232; DANSKE_0015956. |
| 20. | All reports furnished by the Borrower to Danske pursuant to the Loan Agreements, Section 13.5, Reporting Covenants, including, but not limited to: Section 13.5(a) Weekly Reports, Section 13.5(b) Monthly Reports, Section 13.5(c) | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of the government's request for draw packages. |

Appendix A
The Honorable Joseph F. Bianco
June 2, 2021
Page 10

| No. | Government Request | Danske's Objections and Response |
|---|---|---|
|  | Quarterly Reports, and Section 13.5(d) Annual Reports. |  |
| 21. | Documentation to support Danske's assertion that the increase in the PPF reflected Danske's view of how the risk profile of the DCSL Loan had changed as a result of Danske advancing additional funding. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  This request is duplicative of other information Danske has already provided explaining how the risk profile of the loan to the Borrower changed.  Supplemental Decl. of David Daniel, ¶ 19 (Dkt. No. 925). |