**Marc Wolinsky**
**Diamante Doce, LLC**
**Beach Estate 12**
**Diamante Resort**
**Cabo San Lucas, Mexico**

**(212) 403-1226**

June 3, 2021

**Via ECF**

The Honorable Joseph F. Bianco
United States Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York  11722

Re:   United States of America v. Kenner, Cr. No. 13-607 (JFB)

**"I really fear that we are going off on a fool's errand here."**
**April 28, 2021 Tr. at 33.**

Dear Judge Bianco:

At the last conference, the Court directed the government to provide a plan of forfeiture for the Diamante Resort that would effect a forced sale of the property.  As I predicted, the plan that the government has proposed is "dead on arrival."  Tr. at 34.  While the Court hoped that by forcing the government "to put down on paper what its plan would look like" in order to allow a path forward to be revealed, the opposite has happened.  After almost six years of litigation, the government has finally admitted that this Court does not have the practical ability to force a sale of the Resort.  As the government now admits:  "Mexico, as a sovereign nation, is not under the jurisdiction of this Court.  Likewise, the United States Marshals Service has no jurisdiction to conduct operations in a foreign country."

In order to overcome these hurdles, the government's plan requires the Court to order Danske Bank, the First Place Beneficiary of the Mexican Trust holding the property, and Ken Jowdy on behalf of DCSL Mexico, the Second Place Beneficiary, to conduct the sale on the

Hon. Joseph F. Bianco
June 3, 2021
Page 2

government's behalf. Both Danske and DCSL Mexico have understandably taken the position that the Court does not have authority to compel them to take these actions and, in any event, that they will not consent to an order requiring them to do so. And without that consent, there is no practical ability for the Court to force a sale.

While the government, in a footnote, suggests that a sale could be effected with the assistance of the Mexican government through the Mutual Legal Assistance Treaty ("MLAT"), it admits that pursuing this course "would prolong the sale process." That assertion itself is debatable. Article 11 of the MLAT provides that Mexico and the United States are required to assist each other in the "immobilizing, securing and forfeiture of the proceeds, fruits and instrumentalities" of a crime "to the extent permitted by their respective laws." The advice that I have received from Mexican counsel is that an action to obtain forfeiture of real estate held in trust for third parties, like Danske Bank and DCSL Mexico, would be treated as an *in rem* action under Mexican law. Counsel has further advised that under Article 571, Section II of the Mexico's Federal Civil Procedural Code, and Article 588, Section II of the Code of Civil Procedures for the State of Baja California Sur, foreign judgments related to *in rem* rights are not enforceable and that, as a result, it is likely that a Mexican Court would not assist in enforcing a judgment that forces the First and Second Place Beneficiaries to relinquish their rights in the Resort.

These concerns about the ability of a United States court to effect the forfeiture of real estate located in Mexico were raised with the Court long ago, both by Danske Bank and myself.

Hon. Joseph F. Bianco
June 3, 2021
Page 3

The Court properly took those concerns seriously and pushed the government for answers. But it is now apparent that the answers that the Court was given by the government were not candid.

At the July 2, 2019 conference, the Court raised the concern that the sale process could go on for years and that, in the interim, the value of the Resort could be damaged and innocent third parties could be harmed. In response, the government's lawyers stated vaguely that they had "discussed the issue" with Department of Justice specialists and the U.S. Marshal and assured the Court that "It's not our intention to have it go on for years . . . ." Tr. at 15. At the October 11, 2019 conference, when the issue was raised again, I argued to the Court that because the Trust is located in Mexico, and because the Trustee was not subject to the jurisdiction of the Court, the Court did not have the power to effect a forced sale. Tr. at 46-50. The government's response was that "once the Government gets a final order of forfeiture it serves it on the Mexican Government who then executes it on behalf of the United States." Tr. at 50. The government did not say then what it is saying now: easier said than done.

Now, as we approach the second anniversary of the July 9, 2019 conference, the government is no closer to forcing a sale than it was two years ago. Its tactic, instead, has been to abuse the legal process to attempt to beat Danske Bank into submission. I do not use the word "abuse" lightly. At the last conference, the Court was clear that it would permit the government to obtain "limited" discovery of Danske. The government's letter request of May 20, 2021 is anything but. And now, having gotten Danske Bank to the point of "crying uncle," the government is attempting to throw roadblocks in the way of Danske Bank's sale of its note. But the note is not subject to the Court's *in rem* jurisdiction and is not subject to forfeiture. There is

no legal basis or authority for the government's overreaching position. Its threat to litigate whether the purchaser of the note can succeed to Danske Bank's rights is a hold up, plain and simple.

Back on August 21, 2015, when the government first sought and obtained its Post-Conviction Protective Order on an *ex parte* basis, the government represented to the Court in its supporting application that "this Court has jurisdiction to enter the requested Order 'without regard to the location of any property which may be subject to forfeiture'" under 21 U.S.C. § 853(l). Dkt. 330 at 28. That representation was disingenuous at best. The Court had the statutory jurisdiction to enter the order. But it never had the unilateral power to force a sale of Mexican real estate held in a Mexican trust by a Mexican bank.

In short, as I feared, the government's latest letter reveals that the Court has been led on a "fool's errand" by the government for almost six years based on the premise that the government could force a sale of the property upon entry of a final order of forfeiture and that, in light of that power, Danske should agree now to an interlocutory sale. Over those six years, the homeowners' interests have been damaged, the victims have not seen a penny and the government has frittered away countless settlement opportunities. And under the government's "plan" there is no end in sight. The Court, therefore, should bring this to an end.

To be clear, the ad hoc homeowners group has never been in favor of a sale of the property, interlocutory or otherwise. If the Court could order one, it would only put a further cloud on the Resort while the sale process proceeds. During that time, if the government has its way in blocking a sale to Silverpeak, either legally or through litigation threats, Danske Bank

Hon. Joseph F. Bianco
June 3, 2021
Page 5

will refuse to permit property sales proceeds to be used to allow the Resort to tread water. The value of the property will diminish in the meantime. And in light of the size of Danske Bank's claim, growing every day at the default rate of interest, the prospect of any sales proceeds being available for the victims is unrealistic.

But the government's letter makes clear that a forced sale is not practical. I submit it is not even achievable. In any circumstance, however, it should not be pursued. Pursuing a sale will harm innocent third parties with no promise at all of a recovery for the victims. It should be abandoned. The Preliminary Orders of Forfeiture providing for the sale of real property in Mexico should be vacated, as should the Protective Order restraining parties from exercising their legal rights with respect to that property. That is not to say that the victims will have no recourse. The United States-based LLC interests and LLCs that were the instrumentalities of Mr. Kenner's fraud are subject to the Court's jurisdiction. They represent the equity in the project. They remain available for a Court-supervised sale of those interests.

Respectfully submitted,

Marc Wolinsky