FILED
CLERK
9:24 am, Jun 07, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,  . Criminal No. 13-cr-00607-JFB-AYS-1
                        .
         Vs.          . 100 Federal Plaza
                        . Central Islip, NY 11722
PHILLIP A. KENNER,      .
TOMMY C. CONSTANTINE    . DATE August 28, 2020
. . . . . . . . . . . . .

TRANSCRIPT OF VIRTUAL STATUS CONFERENCE
BEFORE HONORABLE JOSEPH F. BIANCO
UNITED STATES VISITING JUDGE

APPEARANCES:

For the Government:        UNITED STATES ATTORNEYS OFFICE
                        EASTERN DISTRICT OF NEW YORK
                        BY:  MATTHEW HAGGANS, ESQ.
                            DIANE LEONARDO, ESQ.
                            MADELINE O'CONNOR, ESQ.
                        271 Cadman Plaza East
                        Brooklyn, NY 11201

For Defendant Kenner:      PHILLIP A. KENNER, Pro se
                        Metropolitan Detention Center
                        Brooklyn, NJ 11232

                        MATTHEW W. BRISSENDEN, ESQ.
                        (Standby counsel)
                        666 Old Country Road, Suite 501
                        Garden City, NY 11530

For Defendant Constantine:  TALKIN MUCCIGROSSO & ROBERTS
                        BY: SANFORD TALKIN, ESQ.
                        40 Exchange Place, 18th Floor
                        New York, NY 10005

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044     Fax No. 732-865-7179**
**800 603-6212**
www.tgribbentranscription.com

```
ADDITIONAL APPEARANCES:

For Danske Bank:          VENABLE LLP
                          BY:  GEORGE KOSTOLAMPROS, ESQ.
                               XOCHITL STROHBEHN, ESQ.
                          1290 Avenue of the Americas
                          20th Floor
                          New York, NY 10104


For Diamante:             FREEH SPORKIN & SULLIVAN
and Jowdy:                BY:  THOMAS SOUTHER, ESQ.
                          350 5th Ave, Suite 6903
                          New York, NY 10118
```

1          THE COURT: This is Judge Bianco, you can call the

2   case.

3          THE CLERK: Thank you, Judge.  Criminal all is for a

4   status conference in 13-cr-607, the United States of America

5   against Philip Kenner and Tommy Constantine.  Counsel, please

6   state your appearances, starting with the Government.

7          MR. HAGGANS:  Good morning, Your Honor, this is

8   Matthew Haggans for the United States.  I'm joined on the line

9   by AUSA Diane Leonardo and Madeline O'Connor.  AUSA Komatireddy

10  is not able to join today and sends her regrets. I also believe

11  that on the line are Special Agents Matt Galliodo (phonetic)

12  and Josh Wayne.

13         THE COURT: Good morning to all of you.

14         THE CLERK: For Mr. Kenner.

15         MR. TALKIN:  Good morning, Your Honor, Sam Talkin for

16  Tommy Constantine.

17         THE COURT: Good morning, Mr. Talkin, Mr. Constantine,

18  are you there?

19         DEFENDANT CONSTANTINE:   Yes, Your Honor, I'm here.

20         DEFENDANT KENNER: Good morning, Your Honor, Mr.

21  Kenner.

22         THE COURT: Good morning, Mr. Kenner.

23         MR. BRISSENDEN: Good morning, Your Honor, Matt

24  Brissenden, standby counsel for Mr. Kenner.

25         THE COURT: Yes, good morning, Mr. Brissenden.  And I

4

1    think even though my intention was to discuss the sentencing

2    date today, I do think we have some of the parties with respect

3    to the forfeiture.  If counsel for Danske Bank on the line?

4             MR. KOSTOLAMPROS:  Yes, Your Honor, this is George

5    Kostolampros of Venable, I'm here with my colleague Xochitil

6    Strohbehn as well.

7             THE COURT: All right, good morning to both of you.

8    And Mr. Souther, you're on the line as well?

9             MR. SOUTHER:  Yes, Your Honor, Thomas Souther on the

10   line.

11            THE COURT: Okay.  Good morning.  So as I noted in the

12   electronic scheduling, my intention today is to discuss the

13   sentencing dates, although I guess if there was something with

14   respect to the forfeiture that needed to be addressed I could,

15   I'm happy to address that too.  But I know the briefing is

16   ongoing.

17            With respect to the sentencing date, when I scheduled

18   this I was initially thinking at this point that I was going to

19   decouple the sentencing to Mr. Kenner and Mr. Constantine, so

20   this was to set Mr. Kenner's sentencing date in September.  And

21   but I do want to discuss with you, Mr. Talkin, with regard to

22   Mr. Constantine, I noticed this week that the restriction for

23   Arizona has been lifted coming into New York.  So I don't think

24   you have to quarantine for 14 days.  So I wanted to discuss his

25   sentencing date as well.

1           I will note, since our last conference, Mr. Kenner, I

2  have received a series of letters from you, August 5th August

3  11th, and August 12th, relating to the various witness impact

4  statements that have been coming.  And your ongoing disputes

5  with respect to their evidence and your ongoing request for a

6  Fatico Hearing with respect to the loss amount.

7           I'm denying your request for a Fatico Hearing for all

8  the reasons that I've previously stated.  But obviously all of

9  your objections with regard to that are preserved for the

10 record.

11          With respect to the sentencing date, as you know I

12 had initially wanted to go forward in August.  I don't think

13 there have been any in custody sentencings in this building

14 since March.   But given the age of this case, I did want to go

15 forward in August.  Mr. Kenner did raise his objection or

16 concern I guess, that he did not want to be quarantined for 14

17 days upon his reentry into the jail after the sentencing.  But

18 Mr. Kenner, my view is, and I think I expressed this, I said I

19 would think about it more.  But I was also waiting, although I

20 was going to push forward in August, absent that concern by

21 you, the courthouse now has been configured for screening of

22 people coming into the building.  So the courthouse, people get

23 a temperature check, so the courthouse is accessible now to the

24 public for these types of proceedings, with additional

25 measures, which may be more comfortable.

1    So Mr. Kenner, notwithstanding, I understand

2   obviously it's not great to have to get quarantined for 14 days

3   when you return, but I believe the sentence needs to be in

4   person. The courthouse is equipped to do it.  The Marshals are

5   equipped to bring you here.  And that restriction, I don't

6   believe is going to change for a long time.  I think for many

7   months that's going to be the policy of the NBC, and I assume

8   all the Federal Jails.

9    So you know, it's not something that's going to

10  change. So I need we need to proceed, and my intention is to

11  proceed in this September, on a date that's convenient to

12  everybody involved.

13   I don't know, Mr. Kenner, I don't know if you want to

14  say anything in response to that, I'm happy to listen to you.

15   DEFENDANT KENNER: Sure, I'm just going to make sure

16  that the Court was aware that the CDC guidelines have recently

17  stated that temperature, onsite temperature taking doesn't

18  produce any results relative to spread of COVID.  And just my

19  ongoing concern is just being in the COVID death category where

20  92 percent of the COVID deaths in America have been people in

21  my age category and up.  I just want to make sure the Court is

22  aware of that.

23   THE COURT: Yes, look, I understand temperature checks

24  aren't perfect. But we're doing everything that we can, it's an

25  additional measure, and my intention is to use the ceremonial

1  courtroom, which I don't think you've ever been in, but it's a

2  gigantic courtroom.  Everybody will be spread out wearing

3  masks.  And even Mr. Brissenden, to the extent you wanted to

4  consult with him, my understanding is that we can equip -- we

5  can give you like hand held radios or something, I don't know

6  exactly what it is.   But you don't have to be whispering in

7  his ear, that you'll be able to communicate with him during the

8  proceeding by way of these, this radio equipment.

9          So you know, in the courtroom there's going to be

10  nobody near you.  And everybody will be wearing masks.  So you

11  know, I obviously understand there's some risk, but I think the

12  risk is you know, minimized to the greatest extent by all these

13  measures that will be taken.  And I have to consider obviously

14  the need to have you sentenced.  It's in your interest to get

15  sentenced too so that to the extent want to appeal you can

16  appeal.  Keeping this on hold indefinitely, if I thought that

17  the situation would change in a week or two, I certainly would

18  be willing to put it off for some brief period of time, as I

19  have been.  But you know, we tried to do this in March, we're

20  now in September.  And I don't believe the situation is going

21  to change dramatically in the coming months in terms of the

22  measures that will need to be taken and the risks that are

23  inherent, I guess, for everybody, so --

24          DEFENDANT KENNER: If I could, Your Honor, just to

25  suggest.  At NBC they have been preparing for in person legal

1   visits and family visits over the last few weeks.  So I believe

2   that at least to the VOP and their actions, they suspect that

3   there are going to be some lessening of the constraints on

4   people and it must be following some version of the science

5   that the VOP has continued to suggest that is driving their

6   decisions.

7          So you know, again, Your Honor is in control of the

8   destiny of sentencing dates. If an October date perhaps gives

9   just a small percentage better chance that the conditions

10  continue to improve, I would appreciate your consideration.

11         THE COURT: I thought about that, but my concern is

12  the situation could get worse too.  I could put it off to

13  October, the numbers in New York could go up.  They're

14  extremely low right now.  So I don't think -- you're going to

15  have to be quarantined I think when you go back to the jail

16  whether we have this in September or October. So to the extent

17  that's your concern, I don't think that's going to change.

18  Whatever they're doing with visits, I assume the visits are

19  going to be, you know, with no contact -- with glass so that, I

20  guess a different scenario than people going out to courtrooms

21  and things like that.

22         So my intention is to try to do this -- I want to

23  give you a couple -- that's why I'm having this call now, I

24  want to give you a couple of weeks to mentally prepare and to

25  do whatever else you want to prepare for the sentencing,

1  although it's obvious you've been preparing in some ways for

2  years.   So I wanted to give you some leeway.   But my intention

3  is to try to do this, as I said, in September, consistent with

4  everybody's schedule.

5        Before I hear from Mr. Talkin, Mr. Kenner, is there

6  anything else you want to add?

7        DEFENDANT KENNER: I would just again just request

8  this is late in September or early October as we could push if

9  it works with the Court.   Thank you, Your Honor.

10        THE COURT: All right.   We'll see what works for

11  everybody.   So Mr. Talkin, what's your client -- is there

12  anything preventing your client from being able to go forward

13  at some point in September?

14        MR. TALKIN: I don't think so.   I didn't know that

15  about Arizona.   But that was the only hangup.   So as long as

16  that remains the case, no.

17        The one thing that I just, there was a letter from

18  some victims or a victim.   We're concerned about Tommy

19  Constantine not hearing, and the Court not hearing what they

20  had to say about him because they didn't want to come twice.

21  But we had already agreed to the accommodation that no matter

22  when, if they were on separate dates, that Mr. Constantine

23  would dial in and be able to hear and obviously the Court would

24  be able to hear what the victims had to say a Mr. Kenner's

25  sentencing so that it would be equally applicable to Mr.

1 Constantine, to the extent that they are talking about him. So

2 I think that issue is easily resolvable as far as picking

3 dates.

4          THE COURT: Yes, I'll speak to the Government about

5 that. Because again, before I saw the restriction got lifted,

6 and I think it only happened a few days ago -- or actually I

7 heard it on the radio.  I didn't actually check the New York

8 State website.  But I assume it's correct.  If Mr. Constantine

9 has different information then he can let me know.  But I was

10 thinking of potentially still separating their sentencings,

11 with that agreement with respect to him listening to the

12 victims.

13          But let me hear from the Government on terms of the

14 date and that particular issue.  Mr. Haggans.

15          MR. HAGGANS: Thank you, Your Honor.  So I would note,

16 I just did a quick check on the New York State website, and it

17 does appear that Arizona was removed on August 25th, so that

18 information appears accurate.

19          If Mr. Constantine is going to be present in person

20 for sentencing in any event, the Government's preference would

21 be, especially if we're in the ceremonial courtroom, where

22 social distancing measures can be maximized, the Government's

23 preference would be to conduct those proceedings at the same

24 time or in sequence, so that the victims can attend and speak

25 to the Court if they choose to speak to the Court, as to both

1  defendants.

2          THE COURT: The only additional concern I have with

3  respect to that is, you know, in this letter which I didn't

4  mention, but I did receive, and obviously I'm considering, nine

5  people I guess signed the letter.  I have concern, I don't know

6  whether anyone is going to come to the sentencing on behalf of

7  Mr. Constantine and/or Mr. Kenner, you know, in person.  I

8  don't know whether there's going to be some reporters there.

9  So there is some concern that if we have all the victims there,

10  and Mr. Kenner and Mr. Constantine, and Mr. Talkin, at some

11  point even in the ceremonial courtroom, it would create issues.

12          I did check, we can do a feed to another courtroom,

13  like an overflow courtroom.  But that's just another thing that

14  was going through my mind.  I guess I can ask Mr. Kenner or Mr.

15  Constantine, if they expect to have people who want to attend

16  in person and support of them at the sentencing.  Mr. Talkin,

17  do you know does Mr. Constantine intend on having other people

18  there other than himself?

19          MR. TALKIN: He does, yes.  Several, we hope.  Now

20  that the, I mean we weren't aware of the travel restriction,

21  that was our biggest impediment.  But yes, he does.

22          THE COURT: Mr. Kenner, do you currently expect people

23  to be in person in support of you?

24          DEFENDANT KENNER: I haven't decided Your Honor, based

25  on their safety and health issues.

1           THE COURT: Yes.  So anyway, again I'm trying to weigh

2   all these things.  But I don't want to get in a situation where

3   because we're doing them in tandem, you know, and I don't want

4   to tell Mr. Constantine's people, like oh we have too many

5   people in the courtroom, you have to go into the overflow room

6   during Mr. Kenner's portion.  It's a lot of victims are

7   speaking.  So I don't know.  I have to think about that a

8   little bit, I guess.

9           But in terms of the date, does the Government have

10  any, is there any unavailability in mid to late September?

11          MR. HAGGANS: Yes, Your Honor, there are some dates

12  that we would prefer to avoid.

13          THE COURT: Okay.

14          MR. HAGGANS: And I can provide that list now.

15          THE COURT: Yes.  Does this include the victims or

16  this is just the Government's dates?

17          MR. HAGGANS: This is inclusive of the victim

18  information that we have, as well as the Government counsels'

19  schedule.

20          THE COURT: All right.  So these are the bad dates?

21          MR. HAGGANS: These are bad dates, yes, Your Honor.

22          THE COURT: Okay, go ahead.

23          MR. HAGGANS: So 8th and 9th of September.  14th to

24  17th September.

25          THE COURT: All right.

13

MR. HAGGANS: 22nd and 23rd September.  And then the week of September 28th to October 2nd, that's the last week of September.

THE COURT: All right, give me one second.  Mr. Talkin --

MR. TALKIN: I have issues on certain dates, I'm just trying to match.  The other issue I have is that Brady issue is still out there.  I can't, I haven't received a reply or response from the Government, that the Court asked for on our last conference.  So I don't know how you want to factor that into the scheduling either.

THE COURT: Why don't you give your availability dates, and then I'll ask Mr. Haggans about that.

MR. TALKIN: 21, I'm just excluding their dates as well.  21 works.  Week of the 28th is out.  So that the week before that, 21 works.  23 does not work for them.

THE COURT: I think -- hold on one second.

MR. TALKIN: That's probably a holiday that's why it works.  Is that why there's a hole in my calendar?

THE COURT: I think we need to do, if we need the ceremonial courtroom, I think it has to be on a Monday or a Friday.

MR. TALKIN: The 21 is a Monday.

THE COURT: Hold on one second.  How about the -- let me ask Mr. Haggans, how about the issue regarding the

1   additional emails.  I think Ms. Komatireddy had indicated on

2   our last conference that, I had asked her to put in a letter

3   about whether or not, in light of the forensic analysis that

4   was done, whether the Government believed that that

5   conclusively established that there were some emails missing.

6        MR. HAGGANS: Yes, Your Honor. I know she had been

7   planning to address that issue.  Perhaps we could set a date,

8   say two weeks from today, and we'll address it in writing by

9   that date.  So that would be September 11th.

10        THE COURT: All right.  Just give me one second, I'm

11  just checking my calendar.  So I think what I'm going to do is,

12  essentially, I think I'm going to -- unless Mr. Constantine

13  wants to go forward, and it sounds like he prefers not to go

14  forward on the same day as Mr. Kenner, I think that's my

15  preference now as well, for the reasons I've indicated.  And

16  also there's this additional submission, although I'm not sure

17  that that ultimately would be, make it untenable.  But so Mr.

18  Talkin, your preference is to have Mr. Constantine on the phone

19  for Mr. Kenner's, hear the victims, and then schedule it for

20  another -- still, I still intend on doing it relatively soon,

21  maybe in October.

22        MR. TALKIN: That's fine, Your Honor.  And I will

23  personally appear on the date, he'll be on the phone because of

24  traveling from Arizona.

25        THE COURT: All right, so the two dates I'm looking at

1  for Mr. Kenner as the 18th Friday the 18th, or Friday the 25th,

2  does anybody have any preference as to either -- the 18th, Rash

3  Hashanah I guess starts at sundown, but it would be in the

4  morning, like at 11 a.m.

5          MR. TALKIN:  Your Honor, I apologize, but I'm not

6  available on the 25th.

7          MR. HAGGANS: The 18th works for the Government, Your

8  Honor.

9          THE COURT: So why don't we --

10          MR. TALKIN: I have to be in court at 10:30 on the

11  18th.

12          THE COURT: 10:30 where?

13          MR. TALKIN: I can go it by phone, so --

14          THE COURT: Okay, can we start it --

15          MR. TALKIN:   -- city I can 00

16          THE COURT: 11 a.m. then on the 18th?

17          DEFENDANT KENNER:  And Your Honor, it is Rash

18  Hashanah that evening.  So I would appreciate if you would

19  consider that on my behalf.

20          THE COURT: I don't -- you'd be back to the jail, if

21  we had the sentencing at 11, you'd be back to the jail, the

22  Marshals, you're going to be the only person in the building, I

23  would think.  I could double check with the Marshals, but as

24  long as you're back by sundown, that's okay, right?

25          DEFENDANT KENNER: It is.  But I'm not supposed to be

16

1  going through any movement or activity at that point as well,

2  so.

3           THE COURT: At sundown you're talking about, right?

4           DEFENDANT KENNER: That's correct, Your Honor.

5           MR. TALKIN:  Your Honor, is there any way we could

6  this on the 21st, the following Monday?  I'm just worrying

7  about that court appearance going long, and I don't want to

8  hold everything up.

9           MR. HAGGANS: 21st is okay with the Government, Your

10  Honor.

11          THE COURT: It doesn't work for me.

12          MR. TALKIN: And it has to be a Friday or a Monday,

13  right?

14          THE COURT: Well I'd have to double check that.  But I

15  know for certain if we do it on a Monday or a Friday --

16          MR. TALKIN: I can do it on the 17th, after 11:30, any

17  time after 11:30 on the 17th.  Is that one of their bad -- oh,

18  that's one of their bad days, I apologize.

19          MR. HAGGANS: It is, sorry.

20          MR. TALKIN: I can do the 16th.

21          THE COURT: No the 14th through the -- hold on one

22  second.  We're trying to make a call -- well actually hold on

23  one second.

24                    (Court and Clerk confer)

25          MR. TALKIN: They said 14 through 17 is bad, I

1  apologize.

2  MR. HAGGANS: Your Honor, is the first Monday of

3  October available?

4  MR. TALKIN: Or September 28th?

5  THE COURT: October 5th.

6  MR. TALKIN: October 5th is -- it's fine for me, I'll

7  try to move something, I have a Queens appearance that I'll try

8  to move back, if that works for everybody.

9  MR. HAGGANS: That should work for the Government,

10  Your Honor.

11  THE COURT: All right, and Mr. Kenner's preference

12  anyway, to give a little more time what the situation is.  So

13  All right, so we'll schedule it for October 5th at 11 a.m.

14  MR. TALKIN: Okay.

15  THE COURT: This will be for Mr. Kenner.  Obviously

16  Mr. Haggans, to the extent that one or more of the victims for

17  whatever reason do not want to appear in person, I would

18  certainly allow them to speak by telephone.  I do have to check

19  the ceremonial, to make sure the ceremonial courtroom can do

20  that. But we're going to go forward.  If for some reason we

21  have to use a different courtroom, I'll use whatever courtroom

22  I can.  But my hope is that we can use that one.

23  In advance of that date, I'd like you to let me know

24  who exactly wants to speak and whether they're going to be in

25  person or on the phone, just so I have a list.

1          MR. HAGGANS: Understood, Your Honor, we will do so.

2          THE COURT: And then you'll submit that letter on

3  September 11th for, with respect to the emails (inaudible-

4  background speaking) Someone doesn't have their phone on mute,

5  I don't know who that is.  But -- I guess they don't know they

6  don't have it on mute.  All right.  But so then --

7          MR. TALKIN: Your Honor, if there's any response one

8  week is plenty, on the --

9          THE COURT: All right.

10          MR. TALKIN: I can't imagine it will be too lengthy so

11  that's fine.  The 18th then --

12          THE COURT: So then with respect to Mr. Constantine,

13  you know, I'm willing to schedule him for later in October, you

14  want to schedule that now or --

15          MR. TALKIN: Yes, that's up to you, Your Honor, I can

16  do that.

17          MR. HAGGANS: Your Honor, the ceremonial courtroom is

18  only available Mondays and Fridays.  If that's --

19          THE COURT: That's my current understanding.

20          MR. HAGGANS: If that's true, is there a possibility

21  perhaps to do it, do that proceeding in the afternoon of Monday

22  the 5th.  It seems unlikely that there will be other in person

23  proceedings scheduled in the ceremonial courtroom that day.

24  Just a guess, given the frequency of in person proceedings

25  right now.  And it would allow for separate proceedings, but

1  would perhaps obviate the potential overcrowding concern that

2  Your Honor noted earlier.

3      THE COURT: If Mr. Constantine would go in the

4  afternoon, you mean?

5      MR. HAGGANS: Yes, Your Honor.

6      THE COURT: That's okay with me. How do you feel about

7  that, Mr. Talkin, Mr. Constantine.  In other words it wouldn't

8  be in tandem, we could do one at 11 and one at maybe 2.

9      MR. TALKIN: I guess my only concern is that, I'm just

10  trying to create as much space as possible for the people I'm

11  flying in between the COVID, you know, the more time the

12  better.  But your point about it could get better or worse, we

13  don't know.  I mean I probably would prefer a separate day.

14  Maybe the following Monday, the 12th.

15      MR. HAGGANS: That would be Columbus Day I believe.

16      THE COURT: How about the 19th?  The 19th at 11?

17      MR. TALKIN: That's fine for me as well.

18      MR. HAGGANS: I am unfortunately scheduled to begin a

19  trial in Brooklyn that day, Your Honor.  But I anticipate that

20  AUSA Komatireddy would be able to attend that day.

21      THE COURT: I could give you Friday the 16th.  Is that

22  better?

23      MR. TALKIN: That's fine for me as well.

24      MR. HAGGANS: That works as of now, Your Honor.

25      THE COURT: All right, so say October 16th at 11 a.m.

1    for Mr. Constantine.  And Mr. Kenner, I'm not sure I need to

2    say this, but I just want to make sure, because people are

3    going to flying in and things like that.  If you -- and again

4    I've had no issues with you at all in terms of coming to court,

5    and things like that. But I just want you to be aware that if

6    you for whatever reason did not come on that date, you know,

7    refuse to come, I would issue a force order telling the

8    Marshals to bring you anyway.  So you know, I hope that we

9    don't have issues like that.  I've had that with other

10   defendants.  But you know, you have to come.

11          Obviously if there was some issue where you were sick

12   or something like that, it would be different.  But assuming

13   there are no issues like that, you know, I expect you to come,

14   notwithstanding your concerns, okay?

15          DEFENDANT KENNER: Yes, and Your Honor, I just ask

16   that, I'm assuming that's a generic statement that you would

17   make to all defendants, not something that was raised

18   unbeknownst to me about that date?

19          THE COURT: No, no, I'm just saying that because you

20   had indicated you know, that you didn't really want to come and

21   you consider it a risk.  So it just occurred to me in my head,

22   and I have all these people coming in to be here.  And I

23   wouldn't want a situation where victims are flying in,

24   everybody is coming in and then the Marshals tell me that you

25   refuse to come, because that would not be a good situation.  So

21

1  nobody has raised that with me, nobody -- it just went through

2  my head based upon what we're discussing here and what you had

3  said.  But again I don't expect that from you because you've

4  been very professional and compliant with all the rules and

5  procedures.  So I'm just, just saying that as a general

6  precaution, okay?

7  　　　　　DEFENDANT KENNER: Okay, I think that's (inaudible-

8  static) who is traveling in that day that would like to have

9  their peace said.  Thank you, Your Honor.

10  　　　　　THE COURT: All right.

11  　　　　　MR. HAGGANS: Your Honor, I'm sorry to interject

12  again, this is Matthew Haggans for the Government.  I know Your

13  Honor is aware that the Government has previously expressed its

14  concerns about Mr. Constantine's continued release on bail.

15  The Government doesn't have any information, any new

16  information on that issue. However, on October 5th when Your

17  Honor imposes sentence upon Mr. Kenner, Mr. Constantine will

18  then have new information.

19  　　　　　And so I just raise for the Court's attention whether

20  it, if the dates work either way, whether it makes sense for

21  Mr. Constantine to be sentenced first, and Mr. Kenner second,

22  if --

23  　　　　　THE COURT: My intention is not to remand Mr.

24  Constantine at his sentencing.  I was going to allow him to

25  surrender.  So to the extent that the Government is concerned

1  was going to ask for a remand of Mr. Constantine at his

2  sentencing, that request is going to be denied.   I don't

3  believe, even though Mr. Constantine is going to hear Mr.

4  Kenner's sentence, again, for all the reasons I've previously

5  stated, I don't believe Mr. Constantine, I believe the

6  circumstances have changed such that he should be remanded.

7  He's been a liberty for I don't know how many years.  You know,

8  there's been no issues with respect to any concerns I have that

9  is going to flee.  Were he to flee, and he would have to leave

10  the United States, he has a life -- how many children does he

11  have, Mr. Talkin?

12        MR. TALKIN: Two, Your Honor.

13        THE COURT: He has two young children.  He would,

14  obviously unless they're fleeing with him, he would never be

15  able to come back into the United States to see his family. So

16  I don't view him as a flight risk such that he should be

17  remanded at his sentencing.  Especially obviously given the

18  continuing bail, conditions of his bail and the forfeiture that

19  would occur where he would do so.  I just, I could be wrong.

20  But I think, I don't think it's an issue.  Okay?

21        MR. HAGGANS: Understood, Your Honor, thank you.

22        THE COURT: All right.  Is there any other issues with

23  respect to the sentencing dates before I just see if there's

24  any other issues?  All right.  So is there anything else we

25  need to discuss today.  And Mr. Brissenden, I'm sorry, you've

1 been very quiet.  I assume those dates, that date is okay with

2 you?

3          MR. BRISSENDEN: Yes, Your Honor, I realize I'm in

4 somewhat the least important part of this puzzle, but those

5 dates are fine.

6          THE COURT: Okay. You're not the least important part.

7 You're his standby counsel, and I obviously want you to be

8 there.  As I said, my understanding is that you'll have some

9 kind of device that will allow you to speak to him during the

10 sentencing, even though you'll be socially distanced.  All

11 right?

12          MR. BRISSENDEN: Understood.

13          THE COURT: All right, any other issue the Government

14 wanted to raise --

15          MR. HAGGANS: The Government has nothing --

16          THE COURT:  -- today.

17          MR. HAGGANS:  I'm sorry, Your Honor, the Government

18 has nothing further.

19          THE COURT: All right.  Do any of the parties with

20 respect to the forfeiture have any issues they need to raise

21 today?

22          MR. KOSTOLAMPROS: Your Honor, this is George

23 Kostolampros, representing Danske, we have nothing further

24 today.

25          THE COURT: All right, thanks. Mr. Souther, anything

24

1  from you?

2           MR. SOUTHER: This is Tom Souther, Your Honor, I don't
3  have anything to raise today, thank you.

4           THE COURT: All right.  Mr. Kenner, do you have
5  anything else?

6           DEFENDANT KENNER: The only other thing I think that I
7  can think of, Your Honor, is there was still a request for an
8  evidentiary hearing with respect to the Chronic Traumatic
9  Encephalopathy discovery, that Mr. Berard (phonetic) and others
10 were part a brain damage lawsuit prior to the trial.  I had
11 made some submissions on that.

12          THE COURT: Yes, I saw those.  I guess I didn't
13 specify when I said I'm denying your request for a evidentiary
14 hearing.  I was including that issue as well. I don't believe
15 an evidentiary issue on that is warranted either.

16          All right. Anything else, Mr. Kenner?

17          DEFENDANT KENNER: No, sir, Your Honor.

18          THE COURT: All right. Mr. Talkin?

19          MR. TALKIN: No, thank you, Your Honor.

20          THE COURT: All right, thank you very much everybody,
21 I appreciate it.  Have a good day.

22                        *  *  *  *  *

23

24

25

1            **C E R T I F I C A T I O N**

2            I, **PATRICIA POOLE**, court approved transcriber,

3    certify that the foregoing is a correct transcript from the

4    official electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7    /S/ PATRICIA POOLE

8    TRACY GRIBBEN TRANSCRIPTION, LLC     DATE: June 6, 2021

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25