Exhibit 1
June 14, 2021
Page 1

## SUMMARY OF OUTCOME OF THE JUNE 7 & JUNE 14, 2021 MEET & CONFERS
## HELD BY THE GOVERNMENT AND DANSKE

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| 1. | Trimont Invoices to support the transactions of $6,297,406 included in the Initial Loan of $107,538,328. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous requests in response to which Danske has previously produced documents. *See, e.g.*, DANSKE_0016724 (12/18/08 Facility A Invoice); MSJ Ex. 10 at DANSKE_0015614 (Dkt. No. 850-10). | Danske represented that it has produced all documents that are, without being unduly burdensome, within its records and stands on those documents. |
| 2. | Complete draw request packages for the sample of 20 draw requests identified in Table 1 [] containing the documents required to be provided as identified in Section 11.1 of the loan agreements, entitled "Documents to be Furnished for Each Disbursement," which should include, but is not limited to: (a) All invoices, contracts or other information that support that the DCSL Resort incurred all costs included in the draw | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." As Danske has previously explained, each draw package consists of thousands of pages; producing 20 complete draw packages may result in a production of no less than 40,000-50,000 pages.<br><br>Subject to and without waiving the foregoing objections, Danske proposes to produce: (1) 1 complete draw package for each year from 2009 to 2019; and (2) funding memoranda for those sample draws. | Danske will produce 10 draw packages of the government's choice along with 10 funding memoranda. The government also requested 20 Delvin reports (exclusive of the 3 that Danske has already produced) and will identify which reports it wants. Danske will evaluate the burden of locating the 20 reports once the government provides its listing of dates. |

**Exhibit 1**
**June 14, 2021**
**Page 2**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | request; (b) Paid receipts or other proof of payment of all construction and development costs; (c) Complete funding memos for the disbursements; (d) Any and all correspondence, status reports and documents prepared according to such servicing agreements for the draw requests; (e) All required construction documents as identified in the Loan Agreements under Article VIII, Section 8.1, Replacement Facility C - Required Construction Documents, and under Article IX, Section 9.2, Construction Budget- Replacement Facility C, for each disbursement and/or loan advance; and (f) M. Delvin & Associates reports and supporting work papers pertaining to the disbursements. | | |
| 3. | Documentation and correspondence pertaining to any agreements and/or proposed agreements in which | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going | Danske will provide a representation that there are no such agreements other than the commission agreement, which the government |

Exhibit 1
June 14, 2021
Page 3

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
|  | Danske would be conferring a, direct or indirect, personal or financial benefit on Kenneth Jowdy ("Jowdy"), individually, or seeking to confer a, direct or indirect, personal or financial benefit on Jowdy, individually, including, but not limited to, any agreements between Danske and Jowdy/the Borrower in which Danske agreed to pay Jowdy for Jowdy's services from Danske's own funds, and Danske's proposed settlement agreements that would permit Jowdy to purchase the DCSL Resort in a forfeiture related sale. | for . . . legitimate expenditures for the resort." The request is also over broad because it would literally call for production of every communication between the Borrower and the lender because, as one example, the loan agreements between the Borrower and lender would likely fall within the overly broad language of conferring a direct or indirect benefit to the Borrower, of which Mr. Jowdy is General Administrator.<br><br>Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. | has. The government requested any and all communications between Danske regarding the commission agreement. Danske's position is that any communications are irrelevant and unduly burdensome. Searching Danske's records of any and all communication would require Danske to gather data and would also need to comply with U.K and E.U. privacy laws. |
| 4. | Documentation addressing the loan repayments and allocation of funds to the different loan facilities. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also vague because the government does not define what is meant by "allocation of funds" and fails to define any timeframe for such loan repayments or "allocation of funds." Moreover, this request is duplicative of documents Danske has | Danske represented that it produced documentation setting forth the allocation of funds received for payments of principal and interest on the various loans. The government represented it would go back to its expert to ascertain any specific additional documents it requires. Once the government provides any |

**Exhibit 1**
**June 14, 2021**
**Page 4**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | | already produced to the government the documentation that is in Danske's possession, custody, and control, which the government's own expert apparently relied on, quote and referenced in her expert report. *See, e.g.*, Dkt. No. 911 (Decl. of Kellie Fedkenheuer); Dkt. 850-10 (Trimont Summary Statement, Facility A); Dkt. 854-5 (Trimont Summary Statement, Facility B); Dkt. 861-7 (Trimont Summary Statement, Facility C); Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. 861-3 (Danske Loan Statement, Facility B). | such list, Danske will review and consider the request. |
| 5. | Documentation identifying the procedures, policies, and practices of Danske, and its officers, employees or owners, for receiving, soliciting, preparing, reviewing, approving or denying loans or client relationships. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." As written, it seeks any and all procedures, policies, and practices of Danske—as well as any of its officers, employees, or shareholders, individuals numbering in at least the thousands of people—concerning receipt, solicitation, preparation, review, approval, or denial of any or all loans or client relationships. This request is also vague and ambiguous because the terms "procedures, policies, and practices" and "client relationships" are susceptible to multiple meanings. | Danske agreed to inquire further as to any relevant policies as to the Resort Property. To the extent Danske is unable to find such a policy, Danske will generally explain the policy that applied to this loan. |

**Exhibit 1**
**June 14, 2021**
**Page 5**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| 6. | Documentation or information available to or within the knowledge of Danske concerning the conduct or assets of Jowdy, his associates, relatives, representatives, and related entities. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." Further, by seeking documents concerning the conduct or assets of any of Jowdy's "associates, relatives, representatives, and related entities," the government seeks a potentially vast number of documents and information of no discernible relevance. The term "conduct or assets" is also susceptible to many meanings, including conduct of no relevance to this forfeiture proceeding. | This request has been withdrawn by the government. |
| 7. | Documentation pertaining to any agreements and guarantees between Danske and any and all Jowdy related entities, including, but not limited to, Legacy Cabo, LLC, Legacy Properties, LLC, KAJ Holdings LLC and Silverpeak. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the needs of this case in that, as written, it could require Danske to search for, review and produce every document that potentially pertains to the underlying loan agreements—which essentially would call for every document and communication.<br><br>Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of | Danske will provide a representation that there are no such agreements other than the commission agreement, which the government has. There are no agreements/guarantees with Legacy Properties, LLC, or Silverpeak. Danske otherwise stands on its objections.. |

Exhibit 1
June 14, 2021
Page 6

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | | Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. Furthermore, Danske represents that it has no agreements and guarantees with Silverpeak and no guarantees with Legacy Cabo, LLC or Legacy Properties, LLC. | |
| 8. | Documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability or inability to meet its loan obligations to Danske and/or Lehman. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and duplicative because it seeks correspondence and documents between Lehman and the Borrower or Jowdy, and therefore, as written, seeks production of documents that may stretch to 2006. Further, this request is duplicative of the government's request for documents pertaining to notices of default or calculation of default interest.<br><br>Subject to and without waiving the foregoing objections, Danske again represents that the Borrower was not in default of its obligation to pay debt service to Danske until September 2019. Prior to September 2019, Danske worked with the Borrower—in an effort to keep the Resort Property alive and in recognition that Danske would not be permitted to foreclose or otherwise take actions that | Danske stands on its objections and also represents that it has produced the only notice of default (dated January 2020) that exists. |

Exhibit 1
June 14, 2021
Page 7

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
|  |  | would violate the protective order—to provide loan modifications, such as extensions of maturity dates and amortized principal paydowns to allow time for the Borrower to repay the significant principal payments coming due in support of the Project. Without Danske's agreements to such loan modifications, the Borrower would have defaulted before 2019 on its debt service obligations, which would have likely resulted in an earlier loss of value at the Resort Property. |  |
| 9. | Documentation, agreements, and correspondence between, Danske and Jowdy and/or the Borrower and/or the Trustee, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL Resort and/or Equity Interests; (b) foreclosure or forfeiture on the DCSL Resort loan in Mexico or in the United States; (c) bankruptcy or insolvency proceedings concerning the DCSL Resort or the Equity Interests in either Mexico or the United States; and (d) Jowdy's direct or indirect management of the DCSL | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the issues as to which the Court has permitted discovery in that it seeks documents as to a vast array of issues, including Jowdy's ongoing management of the Resort Property and correspondence, if any, as to any foreclosure of the Resort Property or this forfeiture proceeding. Further, this request is duplicative of documents that have already been requested and produced. *See, e.g.*, DANSKE_0013220 (Dkt. No. 43) (KAJ Holdings Pledge Agreement). | Danske represented that the only agreements it has entered into involving Mr. Jowdy are the underlying loan agreements in which Mr. Jowdy is a member of the borrower and manager as well as the commission agreement. Further, that any communications regarding foreclosed would be related to either communications regarding this proceeding, including communications with the government whereby foreclosure would be part of an agreed to interlocutory sale.<br><br>The government represented that its request is limited to Jowdy's direct future ownership interest in the Resort Property, meaning not as a |

**Exhibit 1**
**June 14, 2021**
**Page 8**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | Resort during and/or after the instant criminal case. | | member of the borrower. Danske has provided the government with all agreements between Danske and Mr. Jowdy.<br><br>Danske stands on its objections. |
| 10 | Documentation regarding the due diligence performed by Danske regarding the entering into loan agreements and/or modifications with the Borrower, including deliverables, obligations, and the satisfaction of conditions by DCSL Mexico as required under all extensions, modifications, facility increases, advances and amendments to the Loan Documents. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous government requests and of other requests included here, including but not limited to the government's demand for draw packages. To the extent that this request demands all documentation reflecting "satisfaction of conditions" that were "required," it is also overbroad and disproportionate to the needs of this case. Further, this request is vague and ambiguous because the terms "deliverables, obligations, and satisfaction of conditions" are susceptible to multiple meanings.<br><br>Danske has already produced the diligence materials in its possession. *See* 10/28/20 at 22:2-13. | Danske will investigate whether there are additional diligence checklists/summaries for the loan modifications. |
| 11 | Danske's internal correspondence and documents regarding its decision to | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's | Danske stands on its objections. Communications regarding Danske's decision to continue |

**Exhibit 1**
**June 14, 2021**
**Page 9**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | continue lending, documentation regarding the DCSL Resort's defaults, and documentation regarding Danske's decisions pertaining to foreclosure. | procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the issues before the Court because it seeks any correspondence or document that could possibly touch on defaults by the Borrower or Danske's decision to continue lending to the Borrower at any time, which would effectively call for production of every communication relating to every draw request. Further, this request appears to rest on the incorrect assumption (which Danske has repeatedly corrected) that the Borrower defaulted multiple times or was in default prior to the forfeiture. | lending would call for Danske to gather and run searches through every communication, including email regarding the Resort Property. |
| 12 | Danske's non-privileged settlement proposals, settlement materials, notes of meetings with the government, and emails regarding its bona fide purchaser for value status. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." | Danske does not possess such information and otherwise stands on its objections. The government has indicated that it will provide additional detail to the extent it has it. |
| 13 | Documentation showing the amount and calculation of Danske's claimed default interest. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of requests in response to which Danske has already produced information. *See* Dkt. No. 975 at 14-18. | Danske will provide an updated calculation. |

**Exhibit 1**
**June 14, 2021**
**Page 10**

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | | Subject to and without waiving the foregoing objections, Danske will produce an updated calculation. | |
| 14 | Notices of default of the DCSL Resort loan, and any and all documentation that notices of default were sent to the Borrower and/or Trustee of the Mexican trust. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." Moreover, it is duplicative of documents in the government's possession as Danske has already produced all documents responsive to this request. *See* Dkt. No. 860-10 (January 14, 2020 Notice of Default). | Danske has produced the only notice of default that exists. Danske otherwise stands on its objections. |
| 15 | Documentation or an explanation for why Danske did not account for capitalized interest until April 2013 even though interest began accruing in March 2009 after the DCSL Resort first failed to make required interest payments. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." Further, this request rests on the false assumption that Danske "did not account for capitalized interest until April 2013." To the extent the government is insinuating that the Borrower defaulted as a result of failing to pay interest, that is incorrect as Danske has repeatedly stated. *See* Dkt. No. 975 at 2, 4, Appendix A. | As discussed during the parties' meet and confer, Danske will explain the process by which accrued interest would be capitalized, provide a citation to the specific provision of the loan agreement(s) allowing for such a process, and why this information was not reflected on Danske's loan statements. |
| 16 | Loan statements for Facilities A and B dating after February 28, 2020, and Facility C loan | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's | Danske will produce updated loan statements. |

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
|  | statements dating after January 1, 2020, to support Danske's claim for costs incurred after those respective dates. | procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  Further this request is duplicative of other requests in response to which Danske has produced documents.  *See, e.g.*, Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. 861-3 (Danske Loan Statement, Facility B). <br><br> Subject to and without waiving the foregoing objections, Danske will produce updated statements for these facilities. |  |
| 17 | Documentation or an explanation as to why $3,020,424 of interest payments included in Trimont's Invoices were not included in Danske's bank statements. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." | Danske will explain the difference between Trimont's invoices and Danske's loan statements. |
| 18 | Documentation or explanation for the notable inconsistencies between the various Trimont documents provided by Danske, as well as the discrepancies between the Danske loan statements and the Trimont Invoices. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  This request is also vague and ambiguous because the phrase "notable inconsistencies" and term "discrepancies" are subject to multiple meanings. Moreover, by demanding documentation or an explanation for the notable inconsistencies between | Danske will explain the difference between Trimont's invoices and Danske's loan statements in a letter. |

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
|  |  | the various Trimont documents," the request asks Danske for information that is not within Danske's possession, custody or control. Further, this request is duplicative in that it seeks information that has already been provided to the government at least once. Finally, this request rests on the inaccurate factual assertion that there are material "discrepancies" between Trimont's statements and Danske's records.<br><br>Danske has already explained that, given the significant passage of time since Trimont ceased being the loan servicer on December 31, 2016, many of the documents appear to no longer be within Danske's possession. Supplemental Decl. of David Daniel, ¶ 14 (Dkt. No. 925). Similarly, some of the invoices or documents may simply never have been provided to Danske. *Id.* Moreover, Mr. Daniel has already explained many of the purported "inconsistencies." *See, e.g., id.* at ¶ 15. |  |
| 19 | Documentation for the at least $6,516,433 in claimed miscellaneous fees and closings costs. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous requests and materials that Danske has already produced. Danske points to previously produced documents supporting at least some of these costs. *See, e.g.,* | The government will ask its consultant what is needed to document these fees, i.e., whether a spreadsheet would suffice or other information is needed. Once the government has that information, Danske will evaluate whether it can agree to provide the information requested. |

| No. | Government Request | Danske's Objections and Response | Outcome of Meet & Confers |
|---|---|---|---|
| | | Dkt. No. 975 at 4 n.3; DANSKE_0017136; DANSKE_0000232; DANSKE_0015956. | |
| 20 | All reports furnished by the Borrower to Danske pursuant to the Loan Agreements, Section 13.5, Reporting Covenants, including, but not limited to: Section 13.5(a) Weekly Reports, Section 13.5(b) Monthly Reports, Section 13.5(c) Quarterly Reports, and Section 13.5(d) Annual Reports. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of the government's request for draw packages. | Danske stands on its objections. The parties have agreed to leave this request open and to revisit after the government has had an opportunity to review the documents Danske produces in response to Request No. 2. |
| 21 | Documentation to support Danske's assertion that the increase in the PPF reflected Danske's view of how the risk profile of the DCSL Loan had changed as a result of Danske advancing additional funding. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is duplicative of other information Danske has already provided explaining how the risk profile of the loan to the Borrower changed. Supplemental Decl. of David Daniel, ¶ 19 (Dkt. No. 925). | Danske will provide the government with an explanation of why an increase in lending increased the risk profile of the loan such that Danske sought an increase of $5 million to PPF. |