**SUMMARY OF OUTCOME OF THE JUNE 7 & JUNE 14, 2021 MEET & CONFERS**
**HELD BY THE GOVERNMENT AND DANSKE**

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| 1. | Trimont Invoices to support the transactions of $6,297,406 included in the Initial Loan of $107,538,328. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort."  This request is also duplicative of previous requests in response to which Danske has previously produced documents.  *See, e.g.*, DANSKE_0016724 (12/18/08 Facility A Invoice); MSJ Ex. 10 at DANSKE_0015614 (Dkt. No. 850-10). | Danske represented that it has produced all documents that are, without being unduly burdensome, within its records and stands on those documents. | Danske has the burden of proof.  If it is willing to rely solely on the documentation it has produced, if any, then the Court will determine whether Danske has produced documents sufficient to meet its burden of proof as to this claimed amount. |
| 2. | Complete draw request packages for the sample of 20 draw requests identified in Table 1 [] containing the documents required to be provided as identified in Section 11.1 of the loan agreements, entitled "Documents to be | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort."  As Danske has previously explained, each draw package consists of thousands of pages; producing 20 complete draw | Danske will produce 10 draw packages of the government's choice along with 10 funding memoranda.  The government also requested 20 Delvin reports (exclusive of the 3 that Danske has already produced) and will identify which reports it wants. | Danske indicated that it would produce 10 draw packages of the government's choice along with 10 funding memoranda and 10 Delvin reports.  Danske further indicated that it would consider producing an additional 10 Delvin reports.  Danske's letter |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Furnished for Each Disbursement," which should include, but is not limited to: (a) All invoices, contracts or other information that support that the DCSL Resort incurred all costs included in the draw request; (b) Paid receipts or other proof of payment of all construction and development costs; (c) Complete funding memos for the disbursements; (d) Any and all correspondence, status reports and documents prepared according to such servicing agreements for the draw requests; (e) All required construction documents as identified in the Loan Agreements under | packages may result in a production of no less than 40,000-50,000 pages.<br><br>Subject to and without waiving the foregoing objections, Danske proposes to produce: (1) 1 complete draw package for each year from 2009 to 2019; and (2) funding memoranda for those sample draws. | Danske will evaluate the burden of locating the 20 reports once the government provides its listing of dates. | accurately represents what was agreed upon by Danske and the government regarding the Delvin reports. *See* Danske's letter, DE 1065, at p. 1 ("In response to Request No. 2, Danske will produce 10 sample draw packages, 10 Delvin reports (in addition to the 3 Danske has already produced), and 10 funding memoranda. Danske will also consider, depending on the burden, whether it can produce 10 additional Delvin reports."). |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Article VIII, Section 8.1, Replacement Facility C - Required Construction Documents, and under Article IX, Section 9.2, Construction Budget-Replacement Facility C, for each disbursement and/or loan advance; and (f) M. Delvin & Associates reports and supporting work papers pertaining to the disbursements. | | | |
| 3. | Documentation and correspondence pertaining to any agreements and/or proposed agreements in which Danske would be conferring a, direct or indirect, personal or financial benefit on Kenneth Jowdy ("Jowdy"), individually, or seeking | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." The request is also over broad because it would literally call for production of every communication between the Borrower and the lender because, as one example, the loan agreements | Danske will provide a representation that there are no such agreements other than the commission agreement, which the government has. The government requested any and all communications between Danske regarding the commission agreement. Danske's position is that any communications are | The government disputes Danske's premise that the commission agreement is the only responsive document. The government is aware of at least one additional proposed agreement in which Danske sought to confer a substantial financial benefit on Legacy Properties, LLC, |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | to confer a, direct or indirect, personal or financial benefit on Jowdy, individually, including, but not limited to, any agreements between Danske and Jowdy/the Borrower in which Danske agreed to pay Jowdy for Jowdy's services from Danske's own funds, and Danske's proposed settlement agreements that would permit Jowdy to purchase the DCSL Resort in a forfeiture related sale. | between the Borrower and lender would likely fall within the overly broad language of conferring a direct or indirect benefit to the Borrower, of which Mr. Jowdy is General Administrator.<br><br>Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. | irrelevant and unduly burdensome. Searching Danske's records of any and all communication would require Danske to gather data and would also need to comply with U.K and E.U. privacy laws. | which is wholly owned by Jowdy.<br><br>The government disagrees with Danske's contention that producing communications limited to these agreements is unduly burdensome and irrelevant. The discovery the government seeks is relevant to whether Danske and Jowdy engaged in an arm's length relationship. In addition, Danske has not identified which purported U.K. and E.U. privacy laws would affect Danske's collection of data or prevent Danske from complying with its discovery obligations in this matter. To the extent there are valid privacy laws, the parties may enter into a confidentiality agreement. |
| 4. | Documentation addressing the loan | This request is overly broad and irrelevant to the limited issues of | Danske represented that it produced documentation | The government agrees with Danske's |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | repayments and allocation of funds to the different loan facilities. | discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also vague because the government does not define what is meant by "allocation of funds" and fails to define any timeframe for such loan repayments or "allocation of funds." Moreover, this request is duplicative of documents Danske has already produced to the government the documentation that is in Danske's possession, custody, and control, which the government's own expert apparently relied on, quote and referenced in her expert report. *See, e.g.*, Dkt. No. 911 (Decl. of Kellie Fedkenheuer); Dkt. 850-10 (Trimont Summary Statement, Facility A); Dkt. 854-5 (Trimont Summary Statement, Facility B); Dkt. 861-7 (Trimont Summary Statement, Facility C); Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. | setting forth the allocation of funds received for payments of principal and interest on the various loans. The government represented it would go back to its expert to ascertain any specific additional documents it requires. Once the government provides any such list, Danske will review and consider the request. | representation regarding the outcome of the meet and confers as to this discovery request. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | 861-3 (Danske Loan Statement, Facility B). | | |
| 5. | Documentation identifying the procedures, policies, and practices of Danske, and its officers, employees or owners, for receiving, soliciting, preparing, reviewing, approving or denying loans or client relationships. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." As written, it seeks any and all procedures, policies, and practices of Danske—as well as any of its officers, employees, or shareholders, individuals numbering in at least the thousands of people—concerning receipt, solicitation, preparation, review, approval, or denial of any or all loans or client relationships. This request is also vague and ambiguous because the terms "procedures, policies, and practices" and "client relationships" are susceptible to multiple meanings. | Danske agreed to inquire further as to any relevant policies as to the Resort Property. To the extent Danske is unable to find such a policy, Danske will generally explain the policy that applied to this loan. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 6. | Documentation or information available to or within the knowledge of Danske concerning the conduct | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money | This request has been withdrawn by the government. | The government agrees with Danske's representation regarding the outcome of the meet and |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | or assets of Jowdy, his associates, relatives, representatives, and related entities. | was going for . . . legitimate expenditures for the resort." Further, by seeking documents concerning the conduct or assets of any of Jowdy's "associates, relatives, representatives, and related entities," the government seeks a potentially vast number of documents and information of no discernible relevance. The term "conduct or assets" is also susceptible to many meanings, including conduct of no relevance to this forfeiture proceeding. | | confers as to this discovery request. |
| 7. | Documentation pertaining to any agreements and guarantees between Danske and any and all Jowdy-related entities, including, but not limited to, Legacy Cabo, LLC, Legacy Properties, LLC, KAJ Holdings LLC and Silverpeak. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and disproportionate to the needs of this case in that, as written, it could require Danske to search for, review and produce every document that potentially pertains to the underlying loan agreements—which essentially | Danske will provide a representation that there are no such agreements other than the commission agreement, which the government has. There are no agreements/guarantees with Legacy Properties, LLC, or Silverpeak. Danske otherwise stands on its objections. | Subsequent to Danske's filing of its June 14, 2021 letter, the government determined that Danske was mistaken because there was at least one additional agreement between Danske and a Jowdy-related entity, i.e., a 2014 Subordination Agreement with Legacy Properties. The government emailed Danske on June 25, 2021 regarding the agreement and is awaiting a response. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | would call for every document and communication. Subject to and without waiving the foregoing objections, Danske represents that the only agreements that Danske has entered into with Jowdy and/or the Borrower are the underlying agreements that are the subject and basis of Danske's claim and the commission agreement dated August 2018 which Danske provided to the government prior to its execution, Dkt. No. 908-12 (GX-20), and the government raised no objections to. Furthermore, Danske represents that it has no agreements and guarantees with Silverpeak and no guarantees with Legacy Cabo, LLC or Legacy Properties, LLC. | | Nonetheless, Danske's failure to recall or mention the 2014 Subordination Agreement demonstrates the need for Danske to engage in a thorough search for the requested documents. *See* government's position as to Request No. 3. |
| 8. | Documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability or inability to meet its loan obligations to | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also overly broad and | Danske stands on its objections and also represents that it has produced the only notice of default (dated January 2020) that exists. | This discovery directly relates to the issues of whether Danske engaged in arm's length transactions with Jowdy and the DCSL Resort and whether Danske is a bona fide purchaser for |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Danske and/or Lehman. | duplicative because it seeks correspondence and documents between Lehman and the Borrower or Jowdy, and therefore, as written, seeks production of documents that may stretch to 2006.  Further, this request is duplicative of the government's request for documents pertaining to notices of default or calculation of default interest.

Subject to and without waiving the foregoing objections, Danske again represents that the Borrower was not in default of its obligation to pay debt service to Danske until September 2019.  Prior to September 2019, Danske worked with the Borrower—in an effort to keep the Resort Property alive and in recognition that Danske would not be permitted to foreclose or otherwise take actions that would violate the protective order—to provide loan modifications, such as extensions of maturity dates and amortized principal paydowns to allow time for the Borrower to repay the significant principal payments coming due in support of the Project.  Without | | value for the additional loans.

The government disputes Danske's premise that the Borrower was not in default prior to September 2019.  The records Danske previously produced demonstrate that the Borrower was in default at the time Danske acquired the loan from Lehman.  *See* Credit Application attached hereto as Exhibit A-1 (discussing DCSL Resort's default and Danske's option of foreclosing).  Furthermore, the Borrower continued to default on the loan by failing to make required interest payments. The loan documents impose a number of requirements upon the Borrower -- including, but not limited to, the Borrower's obligation to make interest payments -- and provide |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | Danske's agreements to such loan modifications, the Borrower would have defaulted before 2019 on its debt service obligations, which would have likely resulted in an earlier loss of value at the Resort Property. | | that the Borrower's violation of any of these requirements constitutes a default.  It is undisputed that from 2009 through 2012, the Borrower failed to make required interest payments totaling at least $13 million, and Danske capitalized the interest.  Thus, the Borrower's failure to make each required interest payment was an event of default that occurred prior to September 2019.  Further, Danske's records contain no indication that the DCSL Resort cured any of the defaults.

Notably, Danske's claim also includes $6,516,433 in closing costs, modification fees, and other miscellaneous fees charged by Danske for entering into the Additional Loan agreements with the |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|-----|--------------------|----------------------------------|------------------------------------------------------------------------|----------------------------------------------------|
|     |                    |                                  |                                                                        | Borrower, which fees Danske seeks for extending the maturity date(s) on a loan that had been in default since Danske acquired it. |
|     |                    |                                  |                                                                        | Further, Danske had no obligation to continue lending funds to the Borrower because the loan agreements expressly provided that Danske could withhold further disbursements of funds upon the occurrence of a default. |
|     |                    |                                  |                                                                        | Thus, this discovery is relevant to whether Danske had a non-arm's length relationship in which Jowdy would permit Danske to systematically deplete the equity in the DCSL Resort through modified loan agreements that increased the DCSL Resort's debt without |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | | | Danske having to advance any new funds, while Danske in return: (1) made no effort to determine that the loan funds were being used for their intended purpose for the benefit of the DCSL Resort and not for Jowdy personally, or for other entities controlled by Jowdy; (2) did not seek foreclosure or require the Borrower to pay down the principal and interest on the debt rather than re-borrow on the revolving loan; and (3) promised to pay a substantial sum to Jowdy upon the sale of the DCSL Resort through the commission agreement and/or other agreements. |
| 9. | Documentation, agreements, and correspondence between, Danske and Jowdy and/or the Borrower and/or the | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate | Danske represented that the only agreements it has entered into involving Mr. Jowdy are the underlying loan agreements in which Mr. Jowdy is a member of | This discovery request seeks particularized and limited information, and thus is not overly broad or unduly burdensome. The government seeks |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Trustee, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL Resort and/or Equity Interests; (b) foreclosure or forfeiture on the DCSL Resort loan in Mexico or in the United States; (c) bankruptcy or insolvency proceedings concerning the DCSL Resort or the Equity Interests in either Mexico or the United States; and (d) Jowdy's direct or indirect management of the DCSL Resort during and/or after the instant criminal case. | expenditures for the resort." This request is also overly broad and disproportionate to the issues as to which the Court has permitted discovery in that it seeks documents as to a vast array of issues, including Jowdy's ongoing management of the Resort Property and correspondence, if any, as to any foreclosure of the Resort Property or this forfeiture proceeding. Further, this request is duplicative of documents that have already been requested and produced. *See, e.g.*, DANSKE_0013220 (Dkt. No. 43) (KAJ Holdings Pledge Agreement). | the borrower and manager as well as the commission agreement. Further, that any communications regarding foreclosed would be related to either communications regarding this proceeding, including communications with the government whereby foreclosure would be part of an agreed to interlocutory sale.<br><br>The government represented that its request is limited to Jowdy's direct future ownership interest in the Resort Property, meaning not as a member of the borrower. Danske has provided the government with all agreements between Danske and Mr. Jowdy.<br><br>Danske stands on its objections. | information about whether Danske and Jowdy were in a non-arm's length relationship, i.e., information about Jowdy's *future* ownership and/or equity interest in the DCSL Resort, rather than present ownership and/or equity interest. The government's sub-requests seek information about *foreclosure*, *forfeiture*, *bankruptcy*, and *insolvency*, which will yield information about whether Danske and Jowdy had an arrangement in which Danske allowed the loan balance, including interest, to increase, while Jowdy rarely made payments to reduce the balance of the debt, to the detriment of the DCSL Resort. *See* government's position as to Request No. 8. Danske itself indicated that it had |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | | | been considering pursuing foreclosure and forced bankruptcy proceedings. *See* Government's Letter filed June 7, 2021, DE 1058, at pp. 3-6; *see also* Credit Application attached hereto as Exhibit A-1 (discussing DCSL Resort's default and option of foreclosing). The discovery the government seeks regarding Jowdy's management of the DCSL Resort during or after the criminal case will reveal the nature of Danske's relationship with Jowdy and whether Danske maintained an arm's length relationship with Jowdy. |
| 10 | Documentation regarding the due diligence performed by Danske regarding the entering into loan agreements and/or modifications with the | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This | Danske will investigate whether there are additional diligence checklists/ summaries for the loan modifications. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Borrower, including deliverables, obligations, and the satisfaction of conditions by DCSL Mexico as required under all extensions, modifications, facility increases, advances and amendments to the Loan Documents. | request is also duplicative of previous government requests and of other requests included here, including but not limited to the government's demand for draw packages.  To the extent that this request demands all documentation reflecting "satisfaction of conditions" that were "required," it is also overbroad and disproportionate to the needs of this case.  Further, this request is vague and ambiguous because the terms "deliverables, obligations, and satisfaction of conditions" are susceptible to multiple meanings.<br><br>Danske has already produced the diligence materials in its possession.  *See* 10/28/20 at 22:2-13. | | |
| 11 | Danske's internal correspondence and documents regarding its decision to continue lending, documentation regarding the DCSL Resort's defaults, and documentation regarding Danske's | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  This request is also overly broad and disproportionate to the issues before | Danske stands on its objections.  Communications regarding Danske's decision to continue lending would call for Danske to gather and run searches through every communication, including | The government incorporates by reference its position regarding Request 8. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | decisions pertaining to foreclosure. | the Court because it seeks any correspondence or document that could possibly touch on defaults by the Borrower or Danske's decision to continue lending to the Borrower at any time, which would effectively call for production of every communication relating to every draw request.  Further, this request appears to rest on the incorrect assumption (which Danske has repeatedly corrected) that the Borrower defaulted multiple times or was in default prior to the forfeiture. | email regarding the Resort Property. | |
| 12 | Danske's non-privileged settlement proposals, settlement materials, notes of meetings with the government, and emails regarding its bona fide purchaser for value status. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." | Danske does not possess such information and otherwise stands on its objections.  The government has indicated that it will provide additional detail to the extent it has it. | Should the Court deny Danske's anticipated motion for reconsideration of the Court's prior decision denying Danske discovery concerning equitable estoppel, then the government will withdraw this request. |
| 13 | Documentation showing the amount and calculation of | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money | Danske will provide an updated calculation. | The government agrees with Danske's representation regarding the outcome of the meet and |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | Danske's claimed default interest. | was going for . . . legitimate expenditures for the resort." This request is also duplicative of requests in response to which Danske has already produced information. *See* Dkt. No. 975 at 14-18.<br><br>Subject to and without waiving the foregoing objections, Danske will produce an updated calculation. | | confers as to this discovery request. |
| 14 | Notices of default of the DCSL Resort loan, and any and all documentation that notices of default were sent to the Borrower and/or Trustee of the Mexican trust. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures to "to make sure the money was going for . . . legitimate expenditures for the resort." Moreover, it is duplicative of documents in the government's possession as Danske has already produced all documents responsive to this request. *See* Dkt. No. 860-10 (January 14, 2020 Notice of Default). | Danske has produced the only notice of default that exists. Danske otherwise stands on its objections. | The government incorporates by reference its position regarding Request 8. |
| 15 | Documentation or an explanation for why Danske did not account for capitalized interest | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's | As discussed during the parties' meet and confer, Danske will explain the process by which accrued | The government agrees with Danske's representation regarding the outcome of the meet and |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | until April 2013 even though interest began accruing in March 2009 after the DCSL Resort first failed to make required interest payments. | procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  Further, this request rests on the false assumption that Danske "did not account for capitalized interest until April 2013."  To the extent the government is insinuating that the Borrower defaulted as a result of failing to pay interest, that is incorrect as Danske has repeatedly stated.  *See* Dkt. No. 975 at 2, 4, Appendix A. | interest would be capitalized, provide a citation to the specific provision of the loan agreement(s) allowing for such a process, and why this information was not reflected on Danske's loan statements. | confers as to this discovery request. |
| 16 | Loan statements for Facilities A and B dating after February 28, 2020, and Facility C loan statements dating after January 1, 2020, to support Danske's claim for costs incurred after those respective dates. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort."  Further this request is duplicative of other requests in response to which Danske has produced documents.  *See, e.g.*, Dkt. No. 861-1 (Danske Loan Statement, Facility C); Dkt. No. 861-2 (Danske Loan Statement, Facility A); Dkt. No. 861-3 (Danske Loan Statement, Facility B). | Danske will produce updated loan statements. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | | Subject to and without waiving the foregoing objections, Danske will produce updated statements for these facilities. | | |
| 17 | Documentation or an explanation as to why $3,020,424 of interest payments included in Trimont's Invoices were not included in Danske's bank statements. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." | Danske will explain the difference between Trimont's invoices and Danske's loan statements. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 18 | Documentation or explanation for the notable inconsistencies between the various Trimont documents provided by Danske, as well as the discrepancies between the Danske loan statements and the Trimont Invoices. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also vague and ambiguous because the phrase "notable inconsistencies" and term "discrepancies" are subject to multiple meanings. Moreover, by demanding documentation or an explanation for the notable inconsistencies between the various Trimont documents," the | Danske will explain the difference between Trimont's invoices and Danske's loan statements in a letter. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |

19

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|-----|--------------------|--------------------------------|-----------------------------------------------------------------------|----------------------------------------------------|
|     |                    | request asks Danske for information that is not within Danske's possession, custody or control. Further, this request is duplicative in that it seeks information that has already been provided to the government at least once. Finally, this request rests on the inaccurate factual assertion that there are material "discrepancies" between Trimont's statements and Danske's records. <br><br> Danske has already explained that, given the significant passage of time since Trimont ceased being the loan servicer on December 31, 2016, many of the documents appear to no longer be within Danske's possession. Supplemental Decl. of David Daniel, ¶ 14 (Dkt. No. 925). Similarly, some of the invoices or documents may simply never have been provided to Danske. *Id.* Moreover, Mr. Daniel has already explained many of the purported "inconsistencies." *See, e.g.*, *id.* at ¶ 15. |  |  |
| 19  | Documentation for the at least $6,516,433 in | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow | The government will ask its consultant what is needed to document these fees, i.e., | The government agrees with Danske's representation regarding the |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | claimed miscellaneous fees and closings costs. | as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of previous requests and materials that Danske has already produced.  Danske points to previously produced documents supporting at least some of these costs. *See, e.g.*, Dkt. No. 975 at 4 n.3; DANSKE_0017136; DANSKE_0000232; DANSKE_0015956. | whether a spreadsheet would suffice or other information is needed. Once the government has that information, Danske will evaluate whether it can agree to provide the information requested. | outcome of the meet and confers as to this discovery request. |
| 20 | All reports furnished by the Borrower to Danske pursuant to the Loan Agreements, Section 13.5, Reporting Covenants, including, but not limited to: Section 13.5(a) Weekly Reports, Section 13.5(b) Monthly Reports, Section 13.5(c) Quarterly Reports, and Section | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is also duplicative of the government's request for draw packages. | Danske stands on its objections.  The parties have agreed to leave this request open and to revisit after the government has had an opportunity to review the documents Danske produces in response to Request No. 2. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |

| No. | Government Request | Danske's Objections and Response | Danske's Position (June 14, 2021 letter) re: Outcome of Meet & Confers | Government's Position re: Outcome of Meet & Confers |
|---|---|---|---|---|
| | 13.5(d) Annual Reports. | | | |
| 21 | Documentation to support Danske's assertion that the increase in the PPF reflected Danske's view of how the risk profile of the DCSL Loan had changed as a result of Danske advancing additional funding. | This request is overly broad and irrelevant to the limited issues of discovery the Court held it would allow as a "spot check" regarding Danske's procedures "to make sure the money was going for . . . legitimate expenditures for the resort." This request is duplicative of other information Danske has already provided explaining how the risk profile of the loan to the Borrower changed. Supplemental Decl. of David Daniel, ¶ 19 (Dkt. No. 925). | Danske will provide the government with an explanation of why an increase in lending increased the risk profile of the loan such that Danske sought an increase of $5 million to PPF. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |