FILED
CLERK

9:38 am, Jul 01, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,　　: 13-cr-00607-JFB
　　　　　　　　　　　　　　　　:
　　- versus -　　　　　　　　 : U.S. Courthouse
　　　　　　　　　　　　　　　　: Central Islip, New York
　　　　　　　　　　　　　　　　:
KENNER, et al.,　　　　　　　 : June 28, 2021
　　　　　　　　Defendants　　 : 12:09 PM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
(RESTITUTION)
BEFORE THE HONORABLE VISITING JOSEPH F. BIANCO


**A　P　P　E　A　R　A　N　C　E　S:**
**(VIA TELEPHONE)**

<u>**For the Government**</u>:　　**Jacquelyn M. Kasulis, Esq.**
　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　BY:　**Matthew Haggans, Esq.**
　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　100 Federal Plaza
　　　　　　　　　　　　　Central Islip, NY 11722


<u>**For the Defendant**</u>:　　**Philip Kenner, pro se**
　　　　　　　　　　　　　No. 07480-408
　　　　　　　　　　　　　MDC Brooklyn
　　　　　　　　　　　　　Metropolitan Detention Center
　　　　　　　　　　　　　P.O. Box 329001
　　　　　　　　　　　　　Brooklyn, NY 11232



<u>**Transcription Service**</u>:　**Transcriptions Plus II, Inc.**
　　　　　　　　　　　　　61 Beatrice Avenue
　　　　　　　　　　　　　West Islip, New York 11795
　　　　　　　　　　　　　rltranscriptions2@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for Sentencing, 13-
2   cr-607, USA v. Phillip Kenner.
3          Counsel, please state your appearances,
4   starting with the government.
5          MR. HAGGANS:  Good afternoon, your Honor.
6          This is Matthew Haggans for the United States
7   today.  Just for the Court's information, I think there
8   may be some additional members of the prosecution team
9   who will be listening today and there are also, I think,
10  a number of interns from our office who also be listening
11  to today's proceeding.
12         THE COURT:  All right.  Good afternoon, Mr.
13  Haggans.
14         THE DEFENDANT:  Good afternoon, your Honor.
15         THE COURT:  Good afternoon.
16         THE COURT:  Good afternoon, Mr. Kenner.
17         MR. BRISSENDEN:  Good afternoon, your Honor.
18         Matthew Brissenden, standby counsel for Mr.
19  Kenner.
20         THE COURT:  Okay.  Good afternoon, Mr.
21  Brissenden.
22         So as you know, the Court scheduled this
23  follow-up conference with respect to the restitution
24  issue.  First, I just want to cover the fact that we're
25  proceeding by audio.  I did receive a letter from Mr.

3

Proceedings

1  Brissenden indicating that Mr. Kenner wanted to proceed

2  by audio rather than into come into court in person or to

3  proceed by way of video which I understand would have

4  taken another several weeks in order to find an open time

5  slot in the jail.

6          We did have it on for a video conference.  I

7  think it was the day of Judge Katzmann's memorial if my

8  memory is correct, so I apologize having to cancel that

9  at the last minute but in any event, Mr. Kenner, I just

10 want to confirm that you are agreeable to proceed by way

11 of audio today.

12         THE DEFENDANT:  Yes, sir, thank you for asking.

13         THE COURT:  All right.  And the government

14 consents as well?

15         MR. HAGGANS:  Yes, the government consents,

16 your Honor.  This is Matthew Haggans speaking.  And just

17 for purposes of the record, I would note it's the

18 government's understanding that part of the defendant's

19 objection to proceeding in person was that he would have

20 been required to quarantine upon return to MDC,

21 notwithstanding his vaccination status and it was his, as

22 I understand it, it was the defendant's preference to not

23 have to go through that kind of quarantine procedure.

24         The last time I checked with MDC, they do

25 continue to require vaccination regardless of -- excuse

4

Proceedings

1    me, to require quarantine regardless of vaccination, if

2    an inmate leaves the facility and so with that

3    supplement, the government has no objection to proceeding

4    by phone today.

5            THE COURT:  Yeah, thank you for putting that on

6    the record.  That's my understanding too.  I have to say

7    it's very frustrating for the Court because like Mr.

8    Kenner, many defendants don't want to be transported for

9    a conference and then have to quarantine for 14 days,

10   even if they've had their vaccination.

11           But let me just confirm with Mr. Kenner that

12   that is accurate.  That you did not want to come in

13   person, Mr. Kenner, in part because of the quarantine

14   issue?

15           THE DEFENDANT:  Yeah, the 21-day quarantine is

16   -- was the issue, your Honor.

17           THE COURT:  It's 21?  I thought it was 14.

18   It's 21 days?

19           THE DEFENDANT:  Your Honor, it's 14 days after

20   the first testing day and the first testing day is

21   anywhere between realistically the third and the seventh

22   day in quarantine.

23           THE COURT:  All right.  So -- yeah, for the

24   record, under the CARES Act, obviously the chief judge

25   has continued to allow conferences to take place by audio

5

Proceedings

1   or video and given the situation as we have described

2   where Mr. Kenner, to come in person, would have to

3   quarantine for 21 days, I'm not going to subject him to

4   that unless it's his desire to do so.

5          Video conferencing is obviously the next best

6   option but it is not reasonably available at this time

7   only by way of -- it would be  delay and this has gone

8   on, obviously for many months and my hope is to allow --

9   is to complete the restitution portion so that Mr. Kenner

10  can move forward with respect to his appeal and also to

11  be designated.

12         So I find that the restitution cannot be

13  further delayed without serious harm to the interest of

14  justice for those reasons.  I do think, unfortunately,

15  based upon what I've read, the parties can obviously

16  address these issues.  We may need one more conference in

17  order to resolve some of these outstanding issues

18  including the most recent letters that the government has

19  submitted that I don't know that Mr. Kenner has had a --

20  I know (indiscernible) writing and respond to but I do

21  want to discuss.

22         So just way by background, the Court did ask

23  following that conference that we had in April on

24  restitution, to have the government submit a letter

25  addressing some of the issues that Mr. Kenner had raised

6

Proceedings

1  during that conference including among other things,

2  potential offsets based upon settlements that the victims

3  had reached and also he raised issues regarding Mr.

4  Pivitello (ph.) and Mr. Stephenson (ph.) and there was

5  some other issue as well.

6       So the government did submit a letter on April

7  16th that did contain its response including offsets of

8  certain loss amounts based upon monies that had been

9  recovered.  Mr. Kenner put in a substantial response to

10  that on April 30th.  It was filed May 7th, it was dated

11  April 30th.  I have reviewed that as well.  So I have a

12  couple of questions based upon that back and forth.  And

13  then I did want to address the June 10th and the June

14  27th letters from the government regarding some

15  additional victims who want to be included in the

16  restitution amount.

17       First, I just want to make -- Mr. Kenner, you

18  did obviously raise a number of issues in your response,

19  some of them relitigating issues that you raised with the

20  Court previously regarding your belief regarding perjury

21  and other issues at the trial but one thing that you did

22  have in there that I just wanted to make sure you

23  understood is that you made reference to the fact that

24  certain victims weren't named as victims in the

25  indictment and/or did not testify at the trial.  I just

7

Proceedings

1   want to make sure you understand, as a matter of law it

2   is not required -- a court, obviously if the burden of

3   proof has been met by a preponderance of the evidence,

4   can include victims who did not testify at the trial in

5   the restitution amount and also they don't have to all be

6   named in the indictment.  As you know, the conspiracy

7   count was a very broad count that you were convicted of

8   and therefore, the Court has the discretion, assuming the

9   government meets its burden of proof and including those

10  amounts, notwithstanding the fact that there was not

11  trial testimony by that person and/or they were not

12  identified in the indictment but with respect to the

13  offset, I'm going to ask Mr. Haggans that Mr. Kenner does

14  raise in his opposition to your letter that he would like

15  the Court to have an in camera -- there is two issues

16  about the offsets as it relates to Northern Trust

17  settlements.  One issue is whether or not he requests

18  that the Court can review in camera, the settlement

19  agreements to ensure that the amounts that were

20  articulated at the trial or at the hearing, I don't

21  remember if it was at the -- I think it was at the trial,

22  are consistent with the actual dollar amounts.

23          He also raises a legal issue which I don't

24  think the government has ever addressed.  I think it

25  relates to Mr. Berard (ph.), that Mr. Berard gave a net

8

Proceedings

1    amount that he received $300,000 from Northern Trust, net

2    the attorney's fees and other costs that he expended in

3    obtaining that money and Mr. Kenner's position is that

4    that is not -- the offset should be against the gross

5    amount and not the net amount of the settlement.

6           But let me just confirm, Mr. Haggans, did the

7    government have the actual documents or the government

8    was basing that upon the testimony in the record?

9           MR. HAGGANS:  I would have to go -- this is

10   Matthew Haggans speaking, I would have to go back and

11   check my recollection sitting here today is that the

12   agent who assisted in putting together these figures

13   would've been going back to the Northern Trust documents

14   to confirm those offsets.

15          I can't think from what other source they

16   would've come but I'd have to go back to the documents

17   themselves and obviously, I don't -- as the Court knows,

18   restitution is not required to be calculated with

19   exactitude, it's a reasonable approximation is

20   sufficient.  So I think given the longevity of the

21   proceeding, I think the record is adequate for the Court

22   to impose restitution with the records it has but if the

23   Court wishes for us to collect and produce the Northern

24   Trust documents, I will have to look back at where they

25   are.  I'm sure they're saved electronically.

9

Proceedings

1

2      THE COURT:  Yeah.

3      MR. HAGGANS:  I'd have to look back.

4      THE COURT:  When you say the Northern Trust

5   documents, I'm not -- I mean, there's a lot of Northern

6   Trust documents.  I'm just referring to the settlement

7   agreements that were just -- I'm talking about three

8   documents, I think.

9      MR. HAGGANS:  I'm sorry.  I'm sorry, your

10  Honor.  That's what I am referencing.

11     THE COURT:  Okay.  Yeah, so I don't think it's

12  an unreasonable request for Mr. Kenner to have the court

13  review the settlement agreements that were reached with

14  Northern Trust by the Pekas (ph.), Mr. Berard, and Mr.

15  Nolan (ph.) but what's your view on the issue of gross

16  versus net.  And we're not talking -- when you say a

17  "reasonable estimate", I think we're talking about -- I

18  know we're not talking about like a few thousand dollars,

19  I think Mr. Berard, I think it was hundreds of thousands

20  of dollars difference between the gross and the net

21  amount.

22          So unless Mr. Berard wants to forego, he's okay

23  with the lower amount, then the government should brief

24  to the Court whether or not as a matter of -- you know,

25  I'm not talking about like an extensive brief but what's

10

Proceedings

1  the legal authority for subtracting out expenditures that

2  the victim makes in recovering the loss amount.

3       MR. HAGGANS:  Certainly, your Honor.  On the

4  first point, the Northern Trust settlement agreements, if

5  the government has them, we will produce them.  I believe

6  that we do but I just -- I don't know that for a fact but

7  if we have them, we'll produce them, if we don't, we will

8  update the Court.

9       Regarding the --

10       THE COURT:  Well, on that issue, I would ask

11  the victims that -- contact the victims and let them know

12  that I would like to review them in camera.  Okay.

13       MR. HAGGANS:  Understood, your Honor.

14       THE COURT:  All right.

15       MR. HAGGANS:  With regard to the issue of

16  costs, fees, et cetera, as a credit against restitution,

17  I have not -- candidly, I have not researched that issue.

18  My suspicion is that reasonable costs and fees incurred

19  in recovering funds that were lost due to criminal

20  conduct would be compensable in restitution but I have

21  not researched the issue.

22       THE COURT:  All right.  So you can put that in

23  a letter to me and we'll figure out a date in a minute.

24  The other issue -- well, let's see, the more recent

25  letters, Mr. -- I just want to make sure, Mr. Kenner,

11

Proceedings

1  that you -- I assume you've seen at least the June 10th

2  letter, I don't know about the June 27th letter.  Have

3  you seen both of those letters, Mr. Kenner?

4  THE DEFENDANT:  Your Honor, I was notified that

5  the -- there was a June 10 ECF 1063.

6  THE COURT:  Right.

7  THE DEFENDANT:  And maybe you could just

8  briefly tell me what it was.  I couldn't locate that in

9  the materials that I have received.

10  THE COURT:  It's the letter from Mr. Maine

11  (ph.) regarding Brian Kendell (ph.), Greg Devries (ph.),

12  Mateas Nordstrom (ph.) and Raymond Murray (ph.), were

13  meant to be included in the restitution order.  It

14  attaches documents including their affidavits of loss.

15  THE DEFENDANT:  If they are what I believe I

16  was briefed on, your Honor, it would be with respect to

17  their global settlement contributions.

18  THE COURT:  Right.  Right.

19  THE DEFENDANT:  Okay.  So we can proceed --

20  THE COURT:  All right.  And then the 27th --

21  THE DEFENDANT:  -- (indiscernible).

22  THE COURT:  Have you seen the one on the 27th,

23  ECF 1074?  It's a chart from Government Exhibit Chart 15

24  regarding Mr. Devries?

25  THE DEFENDANT:  I don't think I've ever seen

12

Proceedings

1   Chart Number 15.  I know there was some question at trial

2   whether or not charts were going to come in and you know,

3   most of the government exhibits, I had not been forwarded

4   either at trial or --

5          THE COURT:  All right.

6          THE DEFENDANT:  -- post-trial.

7          THE COURT:  The government's (indiscernible)?

8          MR. BRISSENDEN:  Oh, your Honor, this is Matt

9   Brissenden, I was just going to say I attempted to

10  provide a summary of that filing from last night to Mr.

11  Kenner this morning but I am not certain he would've even

12  obtained the summary.  I know he certainly hasn't seen

13  the document itself.

14         THE COURT:  All right.  Well, let me just ask

15  Mr. Haggans because I guess, Mr. Haggans, the bottom line

16  on these is I rely on the government obviously to

17  identify who they believe are the victims who should be

18  part of a restitution order and then to bring before the

19  Court, the evidence in the record that would support it.

20  So you know, the government is just forwarding this

21  information to the Court but what's the government's view

22  regarding these individuals and whether or not there is

23  evidence in the record to support the amounts that

24  they're claiming.  I went back and I looked at the

25  government's and obviously, we've had revisions to the

13

Proceedings

1    chart for restitution purposes but I went back to

2    December 27th, 2019 chart and I didn't see their names on

3    that chart, so this proceeding was going on -- too long

4    for me to remember whether or not they were part of the

5    amount at some point or proposed to be part of the amount

6    and they were removed or why they're not on there.  So

7    what's the government's position?

8              MR. HAGGANS:  Certainly, your Honor.  So the

9    government's position is in large part driven by the

10   Court's rulings as to what the Court believes is

11   compensable in restitution based upon the trial testimony

12   and the forfeiture proceedings and based upon those

13   rulings, the government has set out at ECF 1024, the

14   chart of what it believes adheres to those rulings as to

15   what is compensable.

16             That said, the victims of criminal conduct

17   under the mandatory victim restitution act, they have a

18   right to here of sentencing proceedings, a right to hear

19   of restitution proceedings as part of sentencing,

20   notwithstanding whether or not they may end up recovering

21   in restitution and so the government has been trying to

22   strike a balance between submitting what it believes

23   adheres to the  Court's rulings as to what restitution

24   should reflect while also giving the victim's individuals

25   who believe they've been otherwise victimized by either

14

Proceedings

1   Mr. Kenner or Mr. Constantine, the ability to put papers

2   before the Court, for the Court's consideration and that

3   is reflected in many of the affidavits of loss that the

4   Court has received, I believe as to this most recent

5   supplement filed yesterday and the government had only

6   received that request over the weekend or perhaps late on

7   Friday for Mr. Devries but as to Mr. Devries, I believe

8   he had also submitted an affidavit of loss for the Court

9   to consider.  The government's position is reflected in

10  ECF 1024, however.

11          THE COURT:  All right.  When you say based upon

12  the Court's ruling, I just want to make clear that I did

13  make certain rulings, both with respect to Mr. Kenner and

14  Mr. Constantine that effected both the loss amounts for

15  sentencing purposes and the restitution amount but what

16  they're arguing here is that they were part -- they put

17  money into the global settlement fund and in the most

18  recent submission, they're also pointing out that Mr.

19  Devries with $100,000 into Euphora (ph.) that then went

20  to Mr. Barn (ph.) and then to certain expenses and other

21  -- that's what the chart obviously is trying to

22  demonstrate to the Court.

23          So I don't believe I made any rulings with

24  respect to either of those things, whether it be GSF

25  (ph.) or Euphora that would place them outside -- you

15

Proceedings

1   know, those are within the scope of the offenses of

2   conviction and as long as there is proof in the record to

3   support those particular amounts, then I don't see how

4   they're differently situated than the other people who

5   are recovering.  So that's the issue.

6           I haven't gone back through the record

7   obviously and I -- again, I rely on the government, if

8   the government is saying there's not evidence in the

9   record to support what they're asking for in terms of the

10  fund and the money going into the fund or there's some

11  other issue with respect to what they're claiming, that's

12  one thing but I haven't heard that and I was looking back

13  through the various filings trying to figure out if

14  again, they were at some point removed from the list

15  because of an issue like that but have you looked into

16  that or no?

17          MR. HAGGANS:  In response to these most recent

18  supplements from Mr. Maine and Mr. Devries, no, no, I

19  have not your Honor, in light of the fact that the

20  government is going to be briefing on a couple of

21  additional issues, the government's happy to reconsider

22  those submissions and state a revision to its position,

23  if necessary.

24          THE COURT:  All right.  Thank you.  That's I

25  think is what needs to be done because I want to be able

16

Proceedings

1   to address what they're saying and I am not in a position

2   to do that right now but Mr. Kenner, do you want to

3   address that?

4           THE DEFENDANT:  Your Honor, I would suggest in

5   the larger scope, you know, it is six years since trial

6   and probably four to five years since forfeiture and

7   restitution issues had been addressed initially by the

8   Court, so I am kind of surprised on the eve of this

9   hearing which is the second restitution hearing, that

10  some of these issues had been raised.

11          Now notwithstanding the timing issue, your

12  Honor and I hope you can hear me clearly, there was

13  trouble with the phone earlier.

14          THE COURT:  Yes, I can hear you.

15          THE DEFENDANT:  All right.  Thank you, your

16  Honor.  The government with respect to these issues, this

17  is not a -- these were not case elements or alleged

18  scheme elements similar to the United States v. Kalish,

19  which was a simple mass fraud based on documented

20  mailings to a mass marketing group of people.  These were

21  individual conversations between Mr. Constantine and a

22  number of these contributors to Constantine's global

23  settlement fund.

24          As example, I think if I remember correctly off

25  the record, Mr. Rouchin (ph.) had testified somewhere

17

Proceedings

1   around the transcript, page 2,750, maybe 2,751, that he

2   expected on his contribution to the global settlement

3   fund to go to Mr. Richards for attorney's fees and when

4   you look at, I believe it was Government Exhibit 767, if

5   I remember correctly, when his May 26th contribution was

6   made for $50,000, that next day or excuse me, that same

7   day, $50,000 was sent to Mr. Richards by Mr. Rouchin and

8   then subsequently, $95,000 was sent to Mr. Richards'

9   account for fees.

10          So Mr. Rouchin as far as what he testified to

11  at trial, which I guess would be the basis of a Fatico

12  hearing, individual by individual, said he expected his

13  50-grand to go to Mr. Richards and the money tracing

14  actually represented that.

15          So in the same context that any other

16  contributor to Mr. Constantine's global settlement fund,

17  you know, has some argument for loss, I would ask that

18  the Court, you know, reflect that the acknowledgment and

19  acceptance agreements that the individuals had signed

20  with Mr. Constantine plus the follow-up emails they had

21  received and interacted with Mr. Constantine, are

22  reflected in the actual transactions Mr. Constantine

23  utilized the funds for that I believe Mr. Richards said

24  he only took instructions from Mr. Constantine on those.

25  I believe the transcript started at page 3,805,

18

Proceedings

1  continuing for about 11 page to 3,816, if I remember

2  correctly.

3          So you know, in assuming the government --

4          THE COURT:  Well, let me just interrupt you.

5  I'll give you a chance to -- I just want to address what

6  you said and this might be helpful to Mr. Haggans.  It

7  may be that the reason they are not included is because

8  they did not testify at the trial and therefore, the

9  government did not believe they were in a position to

10  meet the standard that would be necessary to show that

11  they were defrauded in the same way the victims who

12  testified at the trial, in my view, were defrauded.

13          So that may be the reason why they -- you know,

14  obviously the other individuals who are listed testified

15  at the trial, I think in large part, maybe there's one

16  who did not but so that may be the answer to the question

17  I asked to the government and I understand what you're

18  saying, if in fact, they did wish to be included, there

19  might be additional fact-finding which the Court for the

20  reasons that Mr. Haggans and you just indicated, is not

21  inclined to do at this point.

22          To the extent that the record is not sufficient

23  to support them being included either as to the fact that

24  they were defrauded or as to the amount, it's not my

25  inclination at this point to reopen for some type of

19

Proceedings

1    restitution hearing because of how many years has gone

2    by.  All right.  But we'll see what the government says,

3    if -- that may be the answer to the question, okay?

4              THE DEFENDANT:  And your Honor, can I assume

5    I'll have an opportunity to at least reply to the

6    government's position?  Ultimately, under I think it was

7    a Supreme Court ruling, QE v. United States 495 U.S. 411

8    at 413, they --

9              THE COURT:  Yeah, I will --

10             THE DEFENDANT:  -- had to (indiscernible) --

11             THE COURT:  I will give you a chance.  Again, I

12   don't expect this -- I'm not looking for voluminous

13   briefing from the government, I'm just asking them

14   essentially to remind me of why these individuals are not

15   included and then I'll give you a chance to respond.  I

16   don't think this is going to delay the proceeding much

17   further because it's going to take a little bit of time

18   to submit those Northern Trust settlement agreements to

19   the Court and have me review them, so I am thinking a

20   couple of weeks, not a couple of months, all right?

21             THE DEFENDANT:  And that's a couple of weeks

22   for the government to submit their settlement versus net

23   recovery issues plus the additional MVRA victim analysis

24   based on the most recent submissions to the Court; is

25   that correct?

20

Proceedings

1          THE COURT:  Yeah, my goal is to have them do it

2     in may be two weeks, give you two weeks to respond and my

3     goal is to have one final proceeding in late July,

4     hopefully we can do it by way of video if we get the

5     request into the jail now and that will be it, all right?

6               On your compassionate release motion, my

7     intention is not to -- I'm going to receive that on the

8     papers and then I am going to issue an order.  I didn't

9     plan on ruling on that today or at this next proceeding

10    in a few weeks, okay?

11          THE DEFENDANT:  So if you could just restate

12    that for clarity, your Honor, the phone connection was

13    just a little weak.

14          THE COURT:  I said I'm not -- with respect to

15    your motion for compassionate relief, I think that all

16    the papers have been submitted and it was not my

17    intention to rule on that either today or at the

18    proceeding in a couple of weeks.  My intention was to

19    address that in writing in a written order.

20          THE DEFENDANT:  Okay.  And does your Honor have

21    any time frame on that actual review?

22          THE COURT:  I can't give you a --

23          THE DEFENDANT:  Just out of curiosity, your

24    Honor.

25          THE COURT:  -- (indiscernible).

21

Proceedings

1          THE DEFENDANT:  That's it.

2          THE COURT:  And my hope would be that it would

3    be shortly after we finish the restitution piece.

4          THE DEFENDANT:  Thank you.  Thank you, your

5    Honor.

6          THE COURT:  All right.  So does the government

7    have other issues that it wanted to address with the

8    Court?  And obviously, I will rule on the other

9    outstanding matters that Mr. Kenner raised that the

10   government responded to.  I was going to do it piecemeal.

11   I was going to place all the rulings on the record at one

12   time.

13         MR. HAGGANS:  Understood, your Honor.  So just

14   for purposes of the record, I think I'll restate what the

15   government thinks remains active.  So restitution

16   obviously, the government will update on I think it's

17   three separate issues, the Northern Trust settlements,

18   the compensability of costs and fees with specific

19   applicability to Mr. Berard and to the collectively, the

20   submissions by Mr. Maine on behalf of a number of people

21   and Mr. Devries on his own behalf and whether those are

22   compensable, all under the bucket of restitution and I

23   think the date the Court's looking for is -- two weeks

24   from today is the 12th. I have another filing due that

25   day, if I could just request the 13th.

Transcriptions Plus II, Inc.

Proceedings

1          THE COURT:  Sure.

2          MR. HAGGANS:  That's all right?  Okay.

3          THE COURT:  Yes.  And what's your understanding

4    of how long the jail -- if you put in a request now for

5    like late July --

6          MR. HAGGANS:  Yeah, I was trying to find the

7    last update I got.  My sense is it's booked at least a

8    month out.  So I would benefit, if the Court would give

9    me sort of a handful of alternative dates and then we can

10   pick one and I'll fire back to the Court's deputy to

11   confirm one of those dates.

12         THE COURT:  All right.  Hold on.

13         MR. HAGGANS:  Perhaps the week of the 26th or

14   the week of the 2nd of August.

15         THE COURT:  Well, let me just make sure Mr.

16   Kenner -- Mr. Kenner, if you get the government's

17   submission on July 13, how long do you think you need to

18   respond?

19         THE DEFENDANT:  Your Honor, I will get back as

20   fast as I am allowed (indiscernible) time.

21         THE COURT:  Well, why don't we do this?  My

22   hope would be that -- you know, if they come back and

23   they say -- again, if they come back and say the reason

24   these individuals weren't included is because they didn't

25   testify at trial and we didn't think it could be

Proceedings

 1    established without such testimony or an additional

 2    hearing, then obviously they're not going to be a lot for

 3    you to respond to.

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  So why don't we set a date that --

 6    you can always ask me for more time if you need it but I

 7    am trying to avoid, again this is, I think, part of your

 8    interest to try to resolve this as soon as possible,

 9    so --

10              THE DEFENDANT:  Yes.

11              THE COURT:  -- you can always ask for more time

12    okay?

13              THE DEFENDANT:  Yeah, that's great, your Honor

14    and if the government could just expedite the delivery.

15    I know they do accept FedEx or U.S. Postal, I'm not sure

16    what the government uses, get that reply to me, so I can

17    work on it.  I'll have it back out immediately.

18              THE COURT:  All right.  So why don't we say

19    July 13th -- why don't you try for July 23rd?

20              THE DEFENDANT:  Great.  No problem.

21              THE COURT:  Yes, let me know if there's a

22    problem and Mr. Haggans, if you could try to get it for

23    the week of the 26th or the week of the 2nd.  Court's --

24    let me just check -- hold on.  Yeah, we have matters on

25    both of those weeks but just you know, check with my

Proceedings

1    chambers just to make sure that there's not something we

2    can't move.  We'll move other matters if we need to if

3    there's only one slot available for either of those

4    weeks, okay?

5              MR. HAGGANS:  And this would be -- yes, your

6    Honor, this would be via VTC, not audio?

7              THE COURT:  Right.  Exactly.

8              MR. HAGGANS:  With audio is the much less

9    preferred backup, I suppose.

10             THE COURT:  Yeah, much less preferred

11   because --

12             MR. HAGGANS:  Okay.

13             THE COURT:  -- you know, I think it's under the

14   statute, it says not reasonably available.  It is

15   reasonably available, this issue of timing, all right?

16             MR. HAGGANS:  Understood, your Honor.

17             THE DEFENDANT:  Your Honor, with respect to

18   logistics, I'm fine either way, so as not to delay the

19   proceeding any longer.

20             THE COURT:  Okay.  That's good to know and if

21   you can't get one for one of those two weeks, we'll do

22   the audio, okay?

23             THE DEFENDANT:  That is fine with me, your

24   Honor.

25             THE COURT:  All right.  And Mr. Brissenden,

25

Proceedings

1  obviously we'll work around your schedule too just to

2  make sure you're available.

3  THE DEFENDANT:  Mr. Brissenden (indiscernible).

4  MR. BRISSENDEN:  Of course, your Honor.  Thank

5  you.

6  THE COURT:  All right.  Mr. Kenner, are there

7  any other issues you want to address today?

8  THE DEFENDANT:  Just quickly, your Honor, if I

9  could.  First, I was alerted that there was a third-party

10  claim that was sent into the Central Islip courthouse on

11  October 2nd of 2020, delivered FedEx and it was signed by

12  an R. Deanna, D-E-A-N-N-A and I was told that that was

13  not docketed as a third-party claim and I didn't know how

14  perhaps the Court assist in tracking down who R. Deanna

15  was who signed for an international priority delivery on

16  October 2nd of 2020, a third-party ancillary claim to the

17  forfeiture.

18  THE COURT:  Well, let me -- it is something the

19  government put on -- is that part of the submission it

20  made a few weeks ago where they filed third-party

21  petitions?  Is that what you're basing this on?

22  THE DEFENDANT:  Yes, the person's name was not

23  indicated in any filing that I've seen and so I had asked

24  for confirmation of the FedEx delivery and I received the

25  shipping confirmation slip from Federal Express which

26

Proceedings

1    showed the --

2            THE COURT:  Why -- how does that concern you?

3    Your forfeiture is done, so I am not sure what your

4    interest is in terms of the timing of the third-party

5    claimant at this point.  Your forfeiture is over.

6            THE DEFENDANT:  That's fine, your Honor.  I

7    accept that and we can move on.

8            The second point then is I will just ask that I

9    was alerted that Mr. Kaiser had represented a collateral

10   agreement for a third-party claim against the property

11   which would be in fact the contemporaneous offset for the

12   million dollars that the government still has in chart on

13   page 2, 3 and 4 of document 1024.  So it seems to have

14   some contradiction in Mr. Kaiser having a collateralized

15   offset 15 years ago for something he claims is -- the

16   government still has on as a $1.08 million restitution

17   issue.  So maybe I could just address that when I follow-

18   up with the other (indiscernible) --

19           THE COURT:  Yeah, you could put that in your

20   letter. I can't say that I am familiar with -- that was

21   in his petition, the third-party petition?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Yes.

24           THE DEFENDANT:  I was just -- no, I haven't

25   seen the exact paperwork but I was just alerted by

27

Proceedings

1   someone --

2           THE COURT:  All right.

3           THE DEFENDANT:  -- that had actually been

4   submitted.  And then I had asked as part of a submission,

5   ECF !026, if the government could produce the letter that

6   the FBI told the Pekas they found on my laptop with

7   respect to an IRS audit that seemed to be haunting the

8   Pekas for -- I think Ms. Peka said for a decade now.  I

9   had asked that that letter could actually be produced.

10          THE COURT:  Yes, your request to the Court

11  contained a letter with a request like that but I just

12  want to emphasize, there's no ongoing discovery with

13  respect to the case as a whole.  Other than the

14  restitution piece, any issues you have with respect to

15  the Pekas, you know, the proof at trial, those are going

16  to be obviously the subject of an appeal.  The Court is

17  not continuing to order discovery by the government of

18  things unrelated to restitution at this point, all right?

19          THE DEFENDANT:  And your Honor, again just

20  because I am an autodidact and not a trained professional

21  in this, my question then I guess finally would be does

22  that also relate to the Pekas talking about a murder

23  phone call that would fall under Giglio material or Mr.

24  Kaiser's 2012 statements that he made during the 10/28/20

25  hearing on pages 47 to 50 where he had alerted the

28

Proceedings

1    government before my indictment and before my trial that

2    he had been recording Mr. Jawdi (ph.) who had been

3    stealing money and that contradicted his main trial

4    testimony, both Giglio issues that were never turned over

5    and I think it's --

6            THE COURT:  Yes, well first of all, I don't --

7    again, I was at the sentencing.  I didn't hear anything

8    Ms. Peka said that created a Giglio issue.  I said with

9    respect to those allegations though, she's making for

10   sentencing that I wasn't considering them in sentencing

11   you but I don't know what that has to do with you

12   defrauding the Pekas and I don't know -- I don't remember

13   exactly what you're referring to with respect to Mr.

14   Kaiser that there were recordings.

15           THE DEFENDANT:  Mr. Kaiser had espoused on the

16   ten -- the October 28, 2020 hearing post-sentencing at

17   transcript pages 47 to 50, that in 2012, he told the

18   government that Jawdi was robbing everybody and he had

19   made recordings of Mr. Jawdi and his accountants and

20   others and has affirmed that he had made these

21   representations to the government and to the FBI pre-

22   indictment (audio interference) trial and those Giglio

23   comments never seemed to find their way to us in Jenks or

24   Brady materials and I think under United  States v.

25   Rodriguez, 496 F.3d 221 at 226, the Second Circuit in

29

Proceedings

1  2006 suggested otherwise, that the government, even if

2  the statements were undocumented by them or unrecorded by

3  them, they were still exculpatory to the allegations that

4  the government raised early in their opening remarks, I

5  think at transcript page 31.  So I was wondering what my

6  recourse is for those Giglio statements by Mr. Kaiser.

7          THE COURT:  Mr. Haggans, do you know what he is

8  referring to with respect to the recordings?

9          MR. HAGGANS:  I do not, your Honor, candidly.

10          THE COURT:  All right.  Well, your recourse,

11  Mr. Kenner, if you believe something came out at the

12  sentencing that indicates the government did not comply

13  with its Giglio obligations, you can obviously raise that

14  on appeal.  It's on the record, whatever was said was

15  said.  You can raise it on appeal.  Obviously, Mr.

16  Haggans, if you want to respond to that in  your

17  supplemental submissions just so the record is clear as

18  to whether or not there is or is not an issue with

19  respect to those recordings, you may do so, all right?

20          MR. HAGGANS:  Understood, your Honor.  Thank

21  you.

22          THE COURT:  All right.  Thank you very much.

23  So Mr. Haggans, you'll obviously let everybody know.

24  You'll submit a letter confirming the date and the time,

25  so that Mr. Kenner and everybody knows once you talk to

30

Proceedings

1    the jail?

2            MR. HAGGANS:  For the VTC, the week of the 26th

3    or the 2nd, yes, I will.

4            THE COURT:  All right.  Great.  All right.

5    Thank you very much, everybody.  Have a good day.

6            MR. HAGGANS:  Thank you, your Honor.

7            MR. BRISSENDEN:  Thank you, your Honor.

8                        (Matter Concluded)

9                            -o0o-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

# C E R T I F I C A T E

        I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

        I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

        IN WITNESS WHEREOF, I hereunto set my hand this **30th** day of **June** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.