FILED
CLERK

2:51 pm, Jul 26, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X  **Docket#**
UNITED STATES OF AMERICA,      : 13-cr-00607-JFB
                               :
   - versus -                  : U.S. Courthouse
                               : Central Islip, New York
                               :
PHILLIP A. KENNER, et al.,     : July 22, 2021
              Defendants       : 3:20 PM
------------------------------X


TRANSCRIPT OF CRIMINAL CAUSE
FOR TELEPHONE STATUS CONFERENCE
BEFORE THE HONORABLE VISITING JUDGE JOSEPH F. BIANCO


A   P   P   E   A   R   A   N   C   E   S:

**For the Government**:          **Jacquelyn M. Kasulis, Esq.**
                               United States Attorney

                        BY:    **Diane C. Leonardo, Esq.**
                               **Madeline O'Connor, Esq.**
                               Assistant U.S. Attorney
                               100 Federal Plaza
                               Central Islip, NY 11722

**For Interested Parties**:

**Diamonte & Jowdy:**            **Kevin P. Mulry, Esq.**
                               Farrell Fritz, P.C.
                               1320 RXR Plaza
                               Uniondale, NY  11556


**Danske Bank:**                 **George Kostolampros, Esq.**
                               **Kelly S. Weiner, Esq.**
                               **Xochitl S. Strohbehn, Esq.**
                               **Doreen S. Martin, Esq.**
                               Venable, LLP
                               1290 Avenue of the Americas
                               New York, NY 10104


**For CSL Properties:**          **Christopher P. Hill, Esq.**
                               Paul Hastings
                               200 Park Avenue
                               New York, NY 10166

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**APPEARANCES (Cont'd):**

For Owen Nolan:                    **Seetha Ramachandran, Esq.**
                                   Proskauer Rose, LLP
                                   Eleven Times Square
                                   New York, NY 10036

For Property Owners:               **Barry C. Skovgaard, Esq.**
                                   800 6TH Avenue
                                   New York, NY 10001

**Transcription Service:**         **Transcriptions Plus II, Inc.**
                                   61 Beatrice Avenue
                                   West Islip, New York 11795
                                   laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

3

                          Proceedings

1              THE CLERK:  Calling 13-cr-607, United States of
2    America v. Phillip Kenner and Tommy Constantine.
3              Counsel, please state your appearances for the
4    record.
5              MS. O'CONNOR:  Madeline O'Connor and Diane
6    Leonardo for the United States.
7              Good afternoon, your Honor.
8              THE COURT:  Good afternoon.
9              MR. KOSTOLAMPROS:  George Kostolampros and with
10   me are Doreen Martin, Xochitl Strohbehn and Kelly Weiner
11   of Venable representing Danske.
12             Good afternoon, your Honor.
13             THE COURT:  Good afternoon.
14             MR. SKOVGAARD:  Barry Skovgaard here on behalf
15   of the Diamante Hoomeowners.
16             MR. MULRY:  Kevin Mulry from Farrell Fritz
17   representing Ken Jowdy and DCSL parties.
18             Good afternoon, your Honor.
19             THE COURT:  Good afternoon.
20             MS. RAMACHANDRAN:  Seetha Ramachandran on
21   behalf of Owen Nolan.
22             Good afternoon, your Honor.
23             THE COURT:  Good afternoon.
24             MR. HILL:  Good afternoon, Judge.
25             Chris Hill representing CSL Properties.

4

Proceedings

1         THE COURT:  Good afternoon.  All right.  I
2    think that's everybody.
3         So as you know, I scheduled this as a general
4    status conference to find out where things stood with
5    respect to any ongoing discussion.  I also am prepared to
6    move forward with respect to the discoveries that's
7    outstanding which the Court has received letters from --
8    as directed from both the government and from Danske
9    Bank.  Actually, the bank's letter came in first on June
10   14th, the government's response on June 29th and I did
11   receive a July 21st letter from Mr. Kostolampros updating
12   the Court which was helpful, and there is Ms.
13   Ramachandran's letter to strike certain third-party
14   claims which will be discussed as well.
15        But before I address those things which are on
16   my agenda, let me just see, I will just ask Mr.
17   Kostolampros, is there anything more you have to report
18   beyond what was in your July 21st letter with respect to
19   the discussion between the parties?
20        MR. KOSTOLAMPROS:  No, your Honor, nothing else
21   on our end.
22        THE COURT:  All right.  Does the government
23   have anything else to report on that?
24        MS. O'CONNOR:  Yes, your Honor.  I understand
25   the government has had two meet and confers, the results

5

Proceedings

1   which were addressed the letters you  just mentioned but

2   subsequent to those filings, there had been follow-up

3   emails between Danske and the government, requests --

4   discovery requests that had not yet been resolved.  The

5   fact is we've sent a follow-up email as recently as

6   yesterday afternoon.

7           So as it stands, there are a few remaining

8   discovery requests that are disputed or require

9   clarification.  We suggest that because some of the

10  remaining issues might be resolved without court

11  involvement, other than addressing the remaining issues

12  now, that the government could respond to Danske's email

13  of yesterday to gain the clarification it needs and we

14  could file a letter with the Court to address the arrears

15  that (indiscernible) that and perhaps it would be the

16  best use of (indiscernible).

17          However, we are prepared to address these

18  (indiscernible) issues now (indiscernible).

19          THE COURT:  All right.  No, I mean obviously if

20  there's ongoing dialogue to resolve them, I think that's

21  better than the Court addressing them today but are you

22  talking about the government's requests, as well as the

23  bank's request for (indiscernible) equitable estoppel or

24  only the government's request?

25          MS. O'CONNOR:  Only the government's.

6

Proceedings

1      THE COURT:  All right.  Because there is this
2  ongoing dispute about discovery with respect to equitable
3  estoppel, right?
4      MS. O'CONNOR:  True.
5      MR. KOSTOLAMPROS:  Well, your Honor -- your
6  Honor, this is George Kostolampros again.
7      I think our discovery requests go beyond just
8  equitable estoppel.  It goes to the basis of the
9  government's claims --
10      THE COURT:  Right.
11      MR. KOSTOLAMPROS:  -- that these transactions
12  weren't on time.
13      THE COURT:  I know.
14      MR. KOSTOLAMPROS:  I just want to clarify that.
15      THE COURT:  Yes, I understand that.  I didn't
16  classify that way but --
17      MR. KOSTOLAMPROS:  Okay.
18      THE COURT:  -- so what do you think about
19  holding off then on the outstanding disputes then for the
20  government's request, Mr. Kostolampros?  Do you think it
21  might be helpful to narrow them further for the Court?
22      MR. KOSTOLAMPROS:  I think that's helpful
23  actually, your Honor.  We're fine with that.
24      THE COURT:  Okay.  All right.  And then let me
25  just ask the government, the bank did make reference to

7

Proceedings

1   discussions with Silver Peak.  Does the government want

2   to update the Court?  Are those discussions ongoing?

3   What's the status of those discussions?

4           MS. O'CONNOR:  Yes, your Honor, this is

5   (indiscernible).

6           Silver Peak (indiscernible) another --

7           THE COURT:  I'm having trouble hearing you, Ms.

8   O'Connor.  I don't know if you're on speaker or --

9           MS. O'CONNOR:  I'm sorry, your Honor, is this

10  better?

11          THE COURT:  Yes.

12          MS. O'CONNOR:  Yes.  So the government is

13  engaging in ongoing discussions with Silver Peak and in

14  fact, another potential investor.

15          THE COURT:  All right.  Well, I encourage

16  obviously, as I said, those discussions to continue and

17  hopefully move along as quickly as possible under the

18  circumstances but again, I'm prepared to move forward on

19  what we can today.

20          So before I hear from all the other interested

21  parties, let me just resolve my -- state my views with

22  respect to the discovery that the bank is requesting.  I

23  don't -- and this may be why, Mr. Kostolampros, I framed

24  it the way I did, I don't believe that the bank's request

25  with regard to understanding the government's grounds for

8

Proceedings

1   its claim warrant any direction from the Court of

2   discovery by the government.

3          The government has made very clear that it's

4   theory, it's allegations as it relates to the bank's

5   conduct on the issue of being a bona fide approach to the

6   value, whether it's at arm's length transaction, it's

7   based upon the documents that they have reviewed or what

8   they view as the lack of documentation and I think they

9   spelled out their position pretty clearly through their

10  papers, as well as the declarations that they have filed

11  as to why they have taken this position.

12         So I don't think there's any discovery that

13  would be warranted on that -- under those types of

14  circumstances.  I would just say to the government,

15  obviously, if the government did have in its possession

16  other documents from third parties that it is going to

17  try to utilize to demonstrate their position with respect

18  to this, then those should be produced but based upon the

19  government's response in the papers, it's my

20  understanding the government is not relying on any other

21  documents -- it doesn't intend on relying on any other

22  documents outside of the record that we have before us

23  right now.  Is that accurate, Ms. O'Connor?

24         MS. O'CONNOR:  That's accurate as of now, your

25  Honor.  Yes.

9

Proceedings

1        THE COURT:  All right.  Well, if that should
2 ever change, obviously the government would need to
3 produce any document that it is going to try to utilize
4 to, you know, further support the position that it's
5 taking here.  All right, Mr. Kostolampros, is that -- the
6 Court's ruling on that clear?

7        MR. KOSTOLAMPROS:  Yeah, that is, your Honor
8 and that's -- you know, that's fine with us obviously, as
9 long as the government's limited to, you know, those
10 documents unless, you know, if it gets any additional
11 documents that it plans on using, then we would expect
12 discovery as you suggest (indiscernible).

13        One other thing though is the appraisal that --

14        THE COURT:  Yeah, I'm going to address that.

15        MR. KOSTOLAMPROS:  -- the government has --
16 what's that?

17        THE COURT:  I'm going to address that.

18        MR. KOSTOLAMPROS:  Okay.  Thank you.

19        THE COURT:  I'll give the government a chance
20 to put something in writing on this but it is my view
21 that I don't see any reason why the bank should not get
22 that appraisal --

23        MR. KOSTOLAMPROS:  Right.

24        THE COURT:  -- certainly at this point in time
25 given where this litigation is.  The bank has articulated

10

Proceedings

1  the potential relevance, which is depending on what that

2  appraisal may be, that it may show that whatever the

3  government is saying the bank engaged into deplete the

4  asset, did not in fact happen and I don't see any

5  countervailing reason why the bank -- any harm to the

6  government in disclosing at this juncture.

7       I think -- when was that appraisal done?  I'm

8  sorry, two years ago, right?  Ms. O'Connor, do you know

9  when that appraisal was done?

10      MS. O'CONNOR:  I believe it was in the end of

11 2019 or early '20?

12      MR. KOSTOLAMPROS:  January of 2020.

13      THE COURT:  All right.  So it's a year-and-a-

14 half old.  It's obviously outdated.  It was before the

15 pandemic.  So it's basically an appraisal that was frozen

16 in time as of that date.  So I don't see -- I can't see

17 any reason -- any harm as I said, to the government, in

18 disclosing that and then the bank may have some ability

19 to try to utilize that in responding to the government's

20 position regarding the depletion of the asset as a result

21 of the bank's conduct.

22      But if the government, you know, wants to

23 explain to me what I am missing, I'm happy to give you a

24 chance to put in a letter in the next couple of days, all

25 right?

11

Proceedings

1          MS. O'CONNOR:  Yes, your Honor.

2          THE COURT:  All right.  So the government

3     should either produce that in a week or send me a letter

4     within a week or today explaining why they think it

5     should not be produced but I think that's going to be an

6     uphill battle.

7               The only other thing I will say with respect to

8     the equitable estoppel because I did -- even though I am

9     denying the bank's request for the documents as it

10    relates to the basis for the government's claim, based

11    upon the discussion that we had now, this was not part of

12    the bank's enumerated request for documents but I did go

13    back in the briefing with the summary judgment motion

14    with respect to the equitable estoppel issue, the only

15    potential discovery and again, I am not encouraging the

16    bank to make this request but I am just saying, I didn't

17    want it to appear that I was foreclosing this, there was

18    this whole issue about what was said at this November

19    18th, 2015 meeting by the government and whether or not

20    some representation was made that the bank needed to

21    continue funding the resort the variations on what was

22    said or how it was said or whether it was said at all but

23    that to me would be the only potential issue, I think for

24    the government -- for the bank to be able to utilize

25    something like that, it would have to be along the lines

12

Proceedings

1  of what I was just suggesting, whether the government

2  makes some representation telling the bank that you need

3  to continue funding this resort to try to make some type

4  of equitable estoppel argument.

5          So there were declarations, I think Mr. Daniel

6  (ph.) put in a declaration, I think agent -- one of the

7  agents put in a declaration in response that had, you

8  know, a different variation of what was said at the

9  meeting.  So to me that's the only factual dispute, I

10  guess, that could potentially be the subject of

11  discovery.

12          I'm not encouraging that and I would say to the

13  bank, if the bank made any requests on that, the

14  government I think could make a request back to the bank

15  for, I don't know, notes related to the meeting or

16  whatever else might fall into the same category.  If I

17  was going to give that to the bank, it would have to be a

18  reciprocal obligation for the bank then to produce to the

19  government the same category of discovery but anyway, I

20  just wanted to put that aside.

21          I don't know, Mr. Kostolampros, if you want to

22  speak to that issue.  It wasn't really framed in your

23  request but it did come across my mind.

24          MR. KOSTOLAMPROS:  It wasn't, your Honor but I

25  appreciate that and that's something that we can discuss

13

Proceedings

1    with the government.  It does come up because the
2    government has referenced a notice of default of a letter
3    in 2015 and that default didn't relate to any failure to
4    pay any principal or interest, it related to a covenant
5    breach but you know, that was raised recently by the
6    government and, you know, it -- one of the issues that we
7    had is according - you know, based on our recollection of
8    that meeting, the government made clear that Danske could
9    -- if Danske foreclosed on the property, the government
10   would view that as violative of the protective order.

11          So it's something that we would -- we
12   definitely want to consider but I think that's probably
13   best for us to have a meet and confer with the government
14   and obviously if we were going to insist on that kind of
15   production from them, they would probably get that same
16   production from us, to the extent we have any notes of
17   those meetings.

18          THE COURT:  All right.  Yeah, and I don't --
19   I'm not sure what the government's position on that
20   particular point -- I don't remember whether they
21   disputed the idea that you could not foreclose without
22   being in violation of the protective order but in any
23   event, I think that was a different issue.

24          But anyway, discuss with the government if you
25   want to come back to the Court with some type of a

14

Proceedings

1  request in that area, obviously I'll consider it, all

2  right?

3          MR. KOSTOLAMPROS:  Okay.

4          THE COURT:  All right.

5          MR. KOSTOLAMPROS:  Okay.  Thank you, your

6  Honor.

7          THE COURT:  All right.  And then so I think

8  that resolves the bank's -- at least currently, the

9  bank's request for discovery.  I guess this sort of --

10  I'll hear from everybody else and then we could discuss

11  dates to get back to me on the remaining issues with

12  respect to the government's request.

13          The only thing I would add on this issue of --

14  I think I had asked the bank at the last conference to

15  give me, as a result of this back and forth, that I

16  expect it to happen and I'm pleased to see has made

17  progress on the discovery, when the discovery might be

18  complete.  I saw the bank is going to produce some

19  documents (indiscernible) have agreed to produce by

20  August 9th and then there was a reference to Mr. Delvin's

21  (ph.) deposition taking place in late September.

22          I did say the government is entitled to taking

23  Jowdy's deposition (indiscernible) reference to that

24  (indiscernible) deal with the bank directly but I do want

25  to set a date by which this is all going to be complete

15

Proceedings

1   and then we could have supplemental briefing based upon

2   any additional discovery, starting with (indiscernible)

3   forward.

4           So Mr. Kostolampros, has there been some

5   discussion of that?

6           MR. KOSTOLAMPROS:  Your Honor, we have -- what

7   you've seen in the letter is what we've discussed with

8   the government.  We have spoken with Mr. Delvin.  It

9   looks like he's probably -- he's going to be available

10  the first week of October.  I haven't yet spoken to the

11  government about it.  We just spoke with Mr. Delvin this

12  morning but we have not spoken with Mr. Jowdy, so I don't

13  know maybe perhaps his counsel could speak to when he

14  could be available but, you know, for us, we intend to

15  produce the majority of the documents on August 2nd.  We

16  just left a little room for another week because there

17  are basically 11,000 pages of documents and a lot of

18  these documents are invoices, so it just takes a little

19  while to get through that.

20          So that's why we believe we will be able to

21  produce all of the documents by August 9th.  So that's

22  our expectation of this.

23          THE COURT:  Ms. O'Connor, what -- does the

24  government's view on when all of this could be completed?

25          MS. O'CONNOR:  Well, your Honor, we think it

16

Proceedings

1    depends on whether Danske is able to meet the August 9th

2    deadline and whether we resolve (indiscernible) as to any

3    discovery issues but I hope to be done by that

4    (indiscernible).

5                THE COURT:  All right.  Well, I assume the rest

6    of the discovery issues are either going to be resolved

7    or they're going to be decided by me in the next, you

8    know, couple of weeks by mid-August and then have you had

9    any discussions with Mr. Jowdy's counsel about his

10   deposition or you haven't had that discussion?

11               MS. O'CONNOR:  We haven't had those discussions

12   as of yet.

13               THE COURT:  All right.

14               MR. MULRY:  Your Honor, this is Kevin Mulry for

15   Mr. Jowdy.

16               We're certainly willing to work with the

17   government and the parties to schedule a deposition.  I

18   think our concern will be that your Honor has previously

19   indicated that the scope of the deposition would be

20   limited with respect to topics but we're willing to

21   discuss that with the government and the other parties,

22   that as well as schedules.

23               THE COURT:  Yeah, why don't you do that and

24   hopefully report back to me maybe by the end of next

25   week, as to the timing of that deposition, if there are

17

Proceedings

1    any disputes about the scope, I'm happy to address them.

2    Obviously, (indiscernible) what I said earlier, is to

3    help the parties move discussions.  This should be about

4    his management of the resort and interactions with the

5    bank as it relates to the managing of the resort.  This

6    would not be an opportunity to go back through his whole

7    relationship, you know, with Mr. Kenner.  This is not

8    where this case is at at this point.  So hopefully that

9    will help both sides figure out, you know, where the line

10   might be.

11           All right, so based upon what I am hearing, I

12   am hoping that -- I would say by -- the Delvin deposition

13   is going to take place in early October.  I don't see any

14   reason why Mr. Jowdy's deposition can't be completed by

15   around the same time and then we would have the

16   supplemental briefing take place starting shortly

17   thereafter.

18           So again, I would -- I don't want to set

19   arbitrary dates and unrealistic dates but we are at a

20   point where the parties should be proposing a date by

21   which all discovery is to be complete and then you can

22   propose to me sort of an expedited briefing schedule on

23   supplemental submissions.  All right?

24           MS. O'CONNOR:  Yes, your Honor.

25           THE COURT:  All right.

18

Proceedings

1          MR. KOSTOLAMPROS:  Yes.

2          THE COURT:  So let me -- before I hear from

3    everybody else, Ms. Ramachandran had put in this letter

4    regarding a motion to strike certain submissions as both

5    late and incomplete.  So I do want to hear what the

6    government's position is with respect to that.

7          I don't know if, Ms. O'Connor, if you want to

8    respond briefly now or if you just want to put in a

9    letter on that?  How do you want to handle that?

10         MS. O'CONNOR:  Yes, your Honor, given that it

11   was just filed yesterday, we would like an opportunity

12   (indiscernible).

13         THE COURT:  All right.  So let's set a date for

14   that.  Ms. Ramachandran, since I'm talking about your

15   letter, do you want to add anything on that or any other

16   issues we've discussed, go ahead.

17         MS. RAMACHANDRAN:  One thing I forgot to note

18   in my letter is that Mr. Berard (ph.), Mr. Pecca (ph.)

19   and Mr. Nash (ph.) are members of DSL.  So I now CSL has

20   made a valid claim here.

21         THE COURT:  Well, that's a good point.  Are

22   these subsumed within that claim or is it something

23   different?

24         MS. RAMACHANDRAN:  I'm not sure actually.  I

25   mean it's -- I think they're defective to this petition

Proceedings

19

1    but certainly I think the claim of DSL which was timely

2    filed is, you know, valid.

3              THE COURT:  No, their interests, I think is

4    through CSL, right?  There's not some other independent

5    interest they're claiming, right?

6              MS. O'CONNOR:  That's how I understood them,

7    yes --

8              THE COURT:  All right.

9              MS. O'CONNOR:  -- is through CSL.

10             THE COURT:  All right.  Well, maybe it's moot

11   then.  Mr. O'Connor, I don't know, do you want to address

12   that in the letter as well?

13             MR. HILL:  Judge, this is Chris Hill for CSL

14   Properties.  We've been -- we have a number of the

15   members who have independent claims that they've

16   submitted, so we have CSL, we've submitted our claim,

17   that's our true agenda but we are aware of and have at

18   least given to -- limited guidance to some of the other

19   members who have also submitted independent claims and to

20   my understanding, those claims are independent.  They

21   would not necessarily flow through CSL.

22             THE COURT:  They're claiming they had some

23   other interest independent of the interest they had

24   through CSL; is that what you're saying?

25             MR. HILL:  That is my understanding, your

20

Proceedings

1    Honor.

2              THE COURT:  All right.  Okay.  Thank you,

3    that's helpful.  But anyway, Ms. O'Connor obviously, the

4    government needs to look at this issue as well.  All

5    right.

6              MS. O'CONNOR:  Your --

7              THE COURT:  So before we -- yes?

8              MS. O'CONNOR:  I'm sorry, your Honor.

9              THE COURT:  It's okay.

10             MS. O'CONNOR:  We were going to comment that

11   yes, there are certain petitions that are -- as stated,

12   interests that are covered by the CSL position and there

13   are petitions separate and apart from the interests

14   asserted by DSL but it would -- we believe the proper

15   avenue to address striking of the motions through formal

16   motions that are noted, so the parties at issue should be

17   noted and served with the motion to have an opportunity

18   to respond.

19             THE COURT:  They're all pro se.  Are any of

20   them represented by counsel or they're all pro se

21   filings?

22             MS. O'CONNOR:  I believe they're all pro se,

23   your Honor.

24             THE COURT:  Ms. Ramachandran, I think -- did

25   you serve -- other than filing it on ECF, you didn't

21

Proceedings

1    serve that letter on anybody, right?

2                MS. RAMACHANDRAN:  No, I just filed it on ECF.

3    I can go ahead and do that if I have contact information

4    for those petitioners (indiscernible).

5                THE COURT:  Yeah, I don't know that they're

6    following, like, ECF, that they're going to see anything

7    that's filed there.  So again, I would talk to the

8    government.  I would send them a copy of your -- I'll

9    treat that as a letter motion and we'll issue an order

10   setting a date for them to respond (indiscernible) and

11   then your letter then and the Court's order.  How's that?

12               MS. O'CONNOR:  That's fine, your Honor.  I'll

13   do that.

14               THE COURT:  All right.  So you can wait for our

15   order before you serve it.

16               MS. O'CONNOR:  Okay.

17               THE COURT:  All right.  Are there any other

18   counsel have anything they want to add before I set dates

19   for the things that we've discussed?

20               MR. SKOVGAARD:  Yes.  Barry Skovgaard on behalf

21   of the home owners, your Honor.

22               THE COURT:  Yes.

23               MR. SKOVGAARD:  It's a little surprising to us

24   at this juncture that we're still in the discovery

25   process here but to the extent that the government is

22

Proceedings

1   going to consider trying to force a forfeiture of the

2   property, we have great concerns over that and the timing

3   that will be involved in that and the ability of the

4   government to actually effectuate that in Mexico.

5             The government has not explained to you or to

6   us how they think they can effectuate a forfeiture of the

7   sale of the property in Mexico and should the government

8   wish to continue down that road, we would ask you under

9   the Federal Rules of Civil Procedure and the Federal

10  Rules of Criminal Procedure to schedule a hearing and to

11  receive evidence from us and from the government on the

12  efficacy of effecting a forfeiture of the sale of the

13  property in a foreign country.

14            We have counsel in Mexico.  We do not believe

15  that the government can do that and moreover, even if the

16  government were able to do that, we are told that the

17  process would take several, if not many years.

18            So we would like your Honor to schedule a

19  hearing.  We now have discovery going on through October.

20  Schedule a hearing, take evidence on the issue of whether

21  or not the government can, in fact, effectuate a

22  forfeiture of the sale of the property in Mexico.

23            THE COURT:  Well, I know you're new to the

24  discussions.  I think obviously, there's been discussions

25  for many months and there's been a back and forth on

23

Proceedings

1  that.  Most recently, the government indicated that they

2  have had other instances where they've been able to

3  forfeit --

4          MR. SKOVGAARD:  They had one instance where

5  they've done that but it was with the consent of the

6  other parties.  They do not have the consent of Danske

7  here and we would like a hearing to discuss whether or

8  not that is proper and to take evidence on that if that's

9  appropriate.

10          THE COURT:  All right.  Well, the proper way,

11  if you want to make any type of application like that,

12  you would have to do it in a formal motion.

13          MR. SKOVGAARD:  Okay.

14          THE COURT:  You would have to obviously explain

15  why you would have legal standing to make that type of a

16  request for a hearing at this juncture where the Court

17  has, you know, made some determinations with regard to

18  the legal forfeiture of the property.  I think you're

19  making a practical argument, not a legal argument but --

20          MR. SKOVGAARD:  Okay.

21          THE COURT:  -- you know, I am willing to look

22  at it but you have to do it, you know, formally and the

23  government will respond, okay?

24          MR. SKOVGAARD:  Thank you, your Honor.

25          THE COURT:  All right.  Anybody else?  Okay.

Proceedings

1          So Ms. O'Connor and Mr. Kostolampros, what's --

2     let me ask the government first, what do you think is a

3     reasonable date to get back to me on any remaining

4     discovery issues that the Court needs to resolve?

5          MS. O'CONNOR:  Your Honor, how is August 9th

6     for the Court for the outstanding discovery issues?

7          THE COURT:  Mr. Kostolampros does that sound

8     okay to you?

9          MR. KOSTOLAMPROS:  That's fine with us, your

10    Honor.

11         THE COURT:  All right.  So I'll make the

12    government put in the letter on August 9th that just

13    tells me what's left.  I mean, obviously you could tell

14    me how the other ones have been resolved and let me know

15    what other additional things the bank may have agreed to

16    produce and then whatever else is unresolved, the chart

17    was very helpful to me, so in a similar format if the

18    government could just update that chart and just tell me

19    whatever the categories there's still a dispute about.

20    Okay?

21         MS. O'CONNOR:  Yes, your Honor.

22         THE COURT:  And then we'll have a conference

23    call to address that.

24         And then the government, as I said, within a

25    week from today will let me know with regard to the

25

Proceedings

1    appraisal and Ms. Ramachandran's motion, I will issue an

2    order that sets a date for them to respond and so let me

3    just say -- I want the government to state its position.

4    Ms. O'Connor, is August 9th good to get that letter in?

5              MS. O'CONNOR:  Yes, at that time we can address

6    our position.

7              THE COURT:  All right.  So August 9th, the

8    government is going to put in a letter as to whether or

9    not they believe there's some defect with respect to

10   those petitions.  Actually, do you know what I am going

11   to do?  I think I am going to wait until the government

12   states its position and then I will issue the order and

13   so that the claimants can see both the motion and the

14   government's position to respond to both, all right?

15             MS. O'CONNOR:  Your Honor, we previously stated

16   to the Court that we were not going to take a position

17   with regard to the remaining motion -- decisions and we

18   anticipate that would be our position when we file our

19   letter on August 9th.  We don't expect that to change.

20             THE COURT:  All right.  So the government has

21   no -- you don't know whether I should strike those

22   petitions as late, the government has no interest in

23   that?

24             MS. O'CONNOR:  Well, your Honor, I think the

25   (indiscernible) government's view is that they will not

26

Proceedings

1   (indiscernible) one way or another.

2           THE COURT:  All right.   Okay.  So then I will

3   issue the order, Ms. Ramachandran and I'll set a date for

4   you to reply to anything they submit, okay?

5           Anything else?  All right.  Thank you,

6   everybody.  Have a good day.

7           MR. KOSTOLAMPROS:  Thank you, your Honor.

8                   (Matter Concluded)

9                       -o0o-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

**C  E  R  T  I  F  I  C  A  T  E**

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **July** 2021.

*Linda Ferrara*

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.