**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW

The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810        Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
Attorneys for Defendants Constantine, D'Ambrosio and the Edrozos

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
Two Renaissance Square
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
Co-Counsel for Defendants

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| AZ EUFORA PARTNERS I, LLC, a Delaware limited liability company, THEODORE R. HUGHES and ROBERT J. RIZZI, derivatively on behalf of and for the benefit of EUFORA, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TOMMY CONSTANTINE, an individual, MARK D'AMBROSIO, an individual, MIA EDROZO and MANNY EDROZO, husband and wife, BRENT NERGUIZIAN and JACQUELINE NERGUIZIAN, husband and wife, and EUFORA CAPITAL III, LLC, a Delaware limited liability company, | Case No. CV2010-028333<br><br>**AMENDED ANSWER AND COUNTERCLAIM**<br><br>**(Assigned to the Honorable J. Richard Gama)** |

PK-000139667

PK-000139667

|  |  |
|---|---|
| **Defendants.** | |
| **TOMMY CONSTANTINE,** an individual, **MARK D' AMBROSIO,** an individual, **MIA EDROZO** and **MANNY EDROZO,** husband and wife. | **Case No. CV2010-028333** |
| **Counterclaimant,** | |
| v. | |
| **AZ EUFORA PARTNERS I, LLC,** a Delaware limited liability company, **STANDARD VENTURES, LLC,** a New Jersey limited liability company, **GUIDE DOG, LLC,** a Delaware limited liability company, **PHILIP A. KENNER,** an individual, **MICHAEL STOLPER,** an individual, **CARLTON R. GENTRY,** an individual, **JOHN R. KAISER,** an individual, **TIMOTHY R. GAARN, , ERIC HATZIMEMOS,** an individual, **THEODORE R. HUGHES,** an individual, **ROBERT J. RIZZI,** an individual, **BRYAN BERARD,** an individual, **DOES 1-50,** | |
| **Counterdefendants.** | |

Defendants Tommy Constantine, Mark D'Ambrosio, Mia Edrozo and Manny Edrozo ("Defendants"), by and through undersigned counsel, and for their First Amended Answer to Plaintiffs' Complaint and Counterclaim, do hereby admit, deny and affirmatively allege as follows:

## ANSWER

1.      Defendants deny that Plaintiffs are members of Eufora, LLC ("Eufora").

2.      Defendants deny the allegations contained therein.  Defendants affirmatively allege that Plaintiff has no standing to bring such claims either as a derivative action or on

PK-000139668

PK-000139668

behalf of purported non-members without including those persons or entities as parties. Defendants question the authority of Plaintiff AZ Eufora Partners I, LLC ("AZ Eufora") to bring this suit, and as to whether it was, and is, a limited liability company in good standing under Delaware law.  Defendants allege on information and belief that AZ Eufora is nothing but a shell set up to commit fraud by its managers or members, that it would be manifestly unjust to recognize its independent existence since it conducts no business, that it has no legitimate business purpose, that it was undercapitalized at its formation, and that it is a sham.

3.       Defendants deny the allegations contained therein.  Defendants move to strike the scandalous reference to Constantine's conviction, which is over seventeen years old, for a crime committed over twenty years ago, and to sanction Plaintiffs for even alleging it, as this was information known to them anyway and never hidden.

4.       Defendants deny any "misdeeds" and the remainder of the allegations contained therein.  In fact, the alleged two "whistleblowers", who were in fact terminated for cause, had access to the books and records as do the Plaintiffs, who were in conspiracy with them to file this wrongful derivative action.

5.       Defendants deny the allegations contained therein.

6.       Defendants deny the allegations contained therein.  Defendants affirmatively allege that Eufora cannot remove the managers pursuant to Article 6.1(b).

7.       Defendants deny the allegations contained therein.  Upon information and belief, Defendants allege the various hockey players who purport to be members of AZ Eufora directly invested in Eufora.

3

PK-000139669
PK-000139669

8.    Defendants deny the allegations contained therein, and are without sufficient information as to what Plaintiffs mean by saying Hughes is an "investor" in Eufora.

9.    Defendants deny the allegations contained therein, and are without sufficient information as to what Plaintiffs mean by saying Rizzi is an "investor" in Eufora.

10.    Defendants deny the allegations as stated therein.  Defendants move to strike the scandalous, irrelevant allegations therein.

11.    Defendants deny the allegations as to DishZero as contained therein.

12.    Defendants deny the allegations as stated therein.

13.    Defendants deny the allegations as stated therein.

14.    Defendants deny the allegations except as to the formation of Eufora III as an LLC.

15.    Defendants deny the allegations contained therein.

16.    Defendants deny the allegations contained therein.

17.    Defendants deny the allegations contained therein.

18.    Defendants admit only the allegations concerning the competitive advantage of the patents.

19.    Defendants deny the allegations contained therein.

20.    Defendants deny the allegations contained therein.  Defendants affirmatively allege that with any startup business that there are challenges and that capital is always needed to grow the business.

21.    Defendants admit only that a loan was obtained from Neptune for the company.

PK-000139670
PK-000139670

22.    Defendants admit only that Nerguizian made the loan through Neptune and incurred fees which were paid by the company as part of the loan requirements.

23.    Defendants admit that Nerguizian demanded the fee as part of the terms to make the loan and that it was agreed to as a condition of the loan.

24.    Defendants deny the allegations contained therein.

25.    Defendants deny the allegations contained therein.

26.    Defendants admit only that various sums were, over time, loaned and/or invested by Defendant Constantine into the company with some sums withdrawn on his behalf as pay for his services and as repayment for money deposited with the company.  Defendants affirmatively allege that monies withdrawn as value loads on prepaid cards helped earn revenue for the company when those prepaid cards were used to purchase goods or cashed.

27.    See ¶ 26, above.

28.    Defendants deny the allegations contained therein.

29.    Defendants deny the allegations contained therein.

30.    Defendants admit the company was in default of the Neptune loans.

31.    Defendants deny the allegations contained therein.  Defendants affirmatively allege that Eufora III was formed, with full disclosure, to purchase the Nerguizian loan on more favorable terms.

32.    See ¶ 31, above.  Defendants deny the allegations contained therein.

33.    Defendants deny the allegations contained therein.

34.    Defendants deny the allegations contained therein.

PK-000139671
PK-000139671

35.   Defendants deny the allegations contained therein.

36.   Defendants deny the allegations contained therein.

37.   Defendants deny the allegations contained therein.

38.   Defendants deny the allegations contained therein.

39.   Defendants deny the allegations contained therein.

40.   Defendants deny the allegations contained therein.

41.   Defendants deny the allegations contained therein.

42.   Defendants deny the allegations contained therein.

43.   Defendants deny the allegations contained therein.

44.   Defendants deny the allegations contained therein.

45.   Defendants deny the allegations contained therein.

46.   Defendants deny the allegations contained therein.

47.   Defendants deny the allegations contained therein.

48.   Defendants deny the allegations contained therein.

49.   Defendants deny the allegations contained therein.

50.   Defendants deny the allegations contained therein.

51.   Defendants incorporate their responses to paragraphs 1 through 50, above.

52.   Defendants deny the allegations contained therein.

53.   Defendants deny the allegations contained therein.

54.   Defendants deny the allegations contained therein.

55.   Defendants deny the allegations contained therein.

PK-000139672

PK-000139672

56. Defendants deny the allegations contained therein.

57. Defendants incorporate their responses to paragraphs 1 through 56, above.

58. Defendants deny the allegations contained therein.

59. Defendants deny the allegations contained therein.

60. Defendants deny the allegations contained therein.

61. Defendants incorporate their responses to paragraphs 1 through 60, above.

62. Defendants deny the allegations contained therein.

63. Defendants deny the allegations contained therein.

64. Defendants deny the allegations contained therein.

65. Defendants deny the allegations contained therein.

66. Defendants incorporate their responses to paragraphs 1 through 65, above.

67. Defendants deny the allegations contained therein.

68. Defendants incorporate their responses to paragraphs 1 through 67, above.

69. Defendants object to the allegations as calling for legal conclusions. Defendants affirmatively allege that Plaintiffs are not parties to that Operating Agreement and are not members, as alleged hereinabove at ¶¶ 2, 8 and 9.

70. Defendants admit that Plaintiffs sought to inspect Eufora's books and records.

71. Defendants deny the allegations contained therein.

72. Defendants deny the allegations contained therein.

73. Defendants deny the allegations contained therein.

74. Defendants incorporate their responses to paragraphs 1 through 73, above.

PK-000139673
PK-000139673

75.   Defendants deny the allegations as stated therein.

76.   Defendants deny the allegations contained therein.

77.   Defendants deny the allegations contained therein.

78.   Defendants incorporate their responses to paragraphs 1 through 77, above.

79.   Defendants deny the allegations contained therein.

80.   Defendants deny the allegations contained therein.

81.   Defendants incorporate their responses to paragraphs 1 through 80, above.

82.   Defendants deny the allegations contained therein.

83.   Defendants deny the allegations contained therein.

84.   Defendants incorporate their responses to paragraphs 1 through 83, above.

85.   Defendants object to the allegations as calling for legal conclusions and failing to state any fact.  Defendants deny the allegations contained therein.

86.   Defendants object to the allegations as calling for legal conclusions and failing to state any fact.  Defendants deny the allegations contained therein.

87.   Defendants deny the allegations contained therein.

88.   Defendants deny the allegations contained therein.  Defendants deny that Plaintiffs are entitled to any of the relief they seek in the Complaint.

WHEREFORE, having responded to the Complaint, Defendants respectfully request that:

1.   Plaintiffs take nothing by their Complaint;

2.   The Complaint be dismissed, with prejudice; and,

8

PK-000139674

PK-000139674

3.     Defendants be awarded their attorneys' fees and costs in having to defend this matter pursuant to A.R.S. §§ 12-341, 12-341.01 and 12-349.

## AFFIRMATIVE DEFENSES

As and for their affirmative defenses herein, Defendants affirmatively allege that one or more of the following affirmative defenses may apply:  failure to state a claim for which relief can be granted, the defenses stated under Rule 12(b)(6), Ariz.R.Civ.P., lack of standing, accord and satisfaction, arbitration clause, estoppel, failure of consideration, failure of condition precedent, failure to meet the requirements of A.R.S. §§ 29-831 and 29-832, unclean hands, fraud, illegality, unenforceable contract, laches, license, payment, release, res judicata, collateral estoppel, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense as may be revealed through discovery.

## COUNTERCLAIM

Defendants/Counterclaimants Tommy Constantine ("Constantine"), Mark D'Ambrosio ("D'Ambrosio"), Mia and Manny Edrozo ("the Edrozos"), (collectively "Counterclaimants"), by and through undersigned counsel, and for their Counterclaim, do hereby allege as follows:

## INTRODUCTION

This case is about a conspiracy among Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper and Berard ("Co-Conspirators") to take away Eufora's most valuable assets to have for themselves–patents.  Eufora uses processes, patented by Constantine, to issue prepaid cards that are used to build or rebuild the cardholders' credit scores.  The Co-Conspirators want to obtain

9

PK-000139675
PK-000139675

the rights to use Constantine's patents and license them to financial institutions for profit by succeeding to or usurping Eufora's rights.

Gentry and Gaarn, neither of whom has ever invested in Eufora, were officers and Board Managers of Eufora.  Kenner, has never invested in Eufora but procured investors for Eufora through his clients.  Kaiser invested with Kenner but has never invested in Eufora.  Hatzimemos and Stolper joined the conspiracy in order to get a share of Eufora's assets once taken from it or once the company was taken from its rightful owners.  The conspiracy involves breaches of fiduciary duties, interference with contractual and prospective economic relationships, defamation and false light torts, fraud, abuse of process and unfair competition, committed with the goal of obtaining control of Eufora's assets.

The company had pledged its assets to a lender, Neptune Company Asset Holdings, LLC, which is owned by Brent Nerguizian, under terms Gentry negotiated on behalf of Eufora. Gentry and Gaarn helped cause the company to be in default of that loan.  Gentry and Gaarn interfered with Eufora's relationship with Bancorp, causing Eufora to lose its only source at that time of issuing prepaid cards.  The Co-Conspirators also tried to negotiate to secretly purchase the defaulted Nerguizian loan, thereby seeking to obtain Eufora's assets by foreclosure.  They lied to Nerguizian about Constantine and Eufora in hopes of coaxing him to sell the loan.  When Constantine managed to get a replacement lender under better terms, the Co-Conspirators interfered with that relationship, jeopardizing the company's reorganization plan.  They threatened the lender with litigation and made it impossible for Eufora to carry out its plan to reorganize for the benefit of all its investors.

10

PK-000139676
PK-000139676

The present litigation is part of their plan to destroy Constantine personally, at a time when they thought he would be financially unable to defend himself.   They are using the litigation to make false and defamatory accusations against Constantine, hoping to destroy his credibility and remove him from management of Eufora, and eventually take his majority interest in it.

## PARTIES

1.      AZ Eufora Partners I, LLC ("AZ Eufora Partners"), is a Delaware limited liability company.

2.      Standard Ventures, LLC ("Standard Ventures"), is upon information and belief, a New Jersey limited liability company, and is a purported Member of Eufora.

3.      Guide Dog, LLC ("Guide Dog"), is a Delaware limited liability company, and a former Member of Eufora.

4.      Bryan Berard ("Berard") is an individual and resident of New York.  Berard has conducted transactions within the State of Arizona, County of Maricopa, and is subject to personal jurisdiction in the Maricopa County Superior Court.

5.      Philip A. Kenner ("Kenner") is an individual and resident of Nevada.  Kenner has conducted transactions within the State of Arizona, County of Maricopa, and is subject to personal jurisdiction in the Maricopa County Superior Court.

6.      Michael Stolper ("Stolper") is an individual and a resident of the State of New York.  Stolper has had personal contacts within the State of Arizona, County of Maricopa, and is subject to personal jurisdiction in the Maricopa County Superior Court.

11

7.     Carlton R. Gentry ("Gentry") is an individual and a resident of Canada.  Gentry was the President and CEO of Eufora, and a Board Manager of Eufora, and is subject to personal jurisdiction in the Maricopa County Superior Court.

8.     John R. Kaiser ("Kaiser") is an individual and a resident of the State of New York. Kaiser entered into consulting agreements with Constantine Management Group, LTD ("CMG") in Scottsdale, Arizona, in 2004 and 2005, to raise money for Little Isle IV, LLC, of which Kaiser was a Member.  Kaiser is subject to personal jurisdiction in the Maricopa County Superior Court.

9.     Timothy R. Gaarn ("Gaarn") is an individual and resident of the State of New Jersey.  Gaarn was a Board Manager of Eufora, and is subject to personal jurisdiction in the Maricopa County Superior Court.

10.     Eric Hatzimemos ("Hatzimemos") is an individual and resident of the State of New York.  Hatzimemos was asked by Gaarn to "investigate" Eufora and Constantine, and engaged Stolper to assist him.  Hatzimemos is subject to personal jurisdiction in the Maricopa County Superior Court.

11.     Theodore Hughes ("Hughes") is an individual and a resident of the State of New York.  Hughes claims to be a Member of Eufora, and is a named Plaintiff in this action.

12.     Robert J. Rizzi ("Rizzi") is an individual and a resident of the State of New York. Rizzi claims to be a Member of Eufora, and is a named Plaintiff in this action.

PK-000139678
PK-000139678

## GENERAL ALLEGATIONS

13.     Eufora was formed in 2001 by Constantine, D'Ambrosio, Matt Cottrell and C9 Consulting, LLC.  In 2002, Eric S. Edenholm and LMJ Management, LLC invested in and became Members of Eufora.

14.     AZ Eufora Partners, Standard Ventures and Gentry entered into Eufora's Amended and Restated Operating Agreement on February 23, 2009 ("Amended Operating Agreement"), signing as purported Members of Eufora.

15.     The current Members of Eufora, according to Schedule A of the Amended Operating Agreement, are Mark D'Ambrosio, Carlton R. Gentry, Tommy Constantine, C9 Consulting, LLC, Michael Andretti, Mia Edrozo, Standard Ventures and AZ Eufora Partners.

16.     Eufora's primary business is the issuance of credit cards and prepaid cards.

17.     Eufora utilizes certain patents, owned by Constantine, one of which allows Eufora's prepaid cardholders to build or rebuild their personal credit scores with the major reporting agencies ("Patents").

18.     Eufora has had to raise capital from time to time since its inception as a startup company.

## MEMBERSHIP INTERESTS AND TRANSFERS

19.     Kenner received and continues to receive fees from a group of hockey players to identify, procure and manage their various investments, including but not limited to their investments in Eufora.

13

PK-000139679
PK-000139679

20.     Kenner also took millions of dollars from the hockey players to invest in two golf course developments in Mexico and other real estate ventures with Mr. Ken Jowdy ("Jowdy").

21.     Upon information and belief, Kenner secretly skimmed $250,000 of the money he invested on behalf of his clients into one of Jowdy's Mexico developments in order to invest in Eufora on behalf of himself and Jowdy.

22.     On or about August 16 to 20, 2002, Kenner purchased a 5% interest in Eufora in the name of LMJ Management, Jowdy's company.

23.     On April 30, 2003, LMJ Management then transferred that interest to PKJ Management, which upon information and belief, was co-owned by Kenner and Jowdy.

24.     PKJ Management later transferred the interest to GDM 33, LLC which ultimately became Guide Dog, LLC ("Guide Dog"). Guide Dog is wholly owned and controlled by Kenner and is the primary entity used by Kenner to identify, procure and manage the hockey players' various investments.  Prior to Guide Dog being used in this capacity, Kenner used another of his wholly owned and controlled entities named Standard Advisors, LLC ("Standard Advisors").

25.     Upon information and belief, in a subsequent transaction, an existing Member of Eufora sold his 10% interest in the company to Kenner's clients through Kenner's solicitation of such clients in his role as their advisor.  In fact, the hockey players received only an 8.4% interest, while Kenner secretly skimmed the remaining 1.5% for himself in the name of Guide Dog, as well as a 0.1% interest for Gaarn, in the name of Standard Ventures.  Upon information and belief, Standard Ventures was formed by Kenner and Gaarn, and was the sister company for Standard Advisors, Kenner's previous investment management company.

14

PK-000139680
PK-000139680

26.     Gaarn became a *de facto* Manager of AZ Eufora Partners at the time Standard Ventures received his 0.1 % interest in Eufora.

27.     In another similar, subsequent transaction, Kenner's clients purchased an additional 5% interest in Eufora from another existing Member of Eufora, but only 4.2% of the 5% interest actually went to the hockey players, while Guide Dog again secretly received the remaining 0.8%, unbeknownst to Kenner's hockey player clients who paid for 100% of such interests.

28.     Upon information and belief, Kenner, Gentry and Gaarn later conspired together to (a) fraudulently convey all of the interests held by Guide Dog to Standard Ventures, and (b) subsequently sell those interests back to some of the same hockey players that had unknowingly funded their purchase in the first place.

29.     Gaarn took and held Guide Dog's interest in Eufora via Standard Ventures and acted as a "straw man" on behalf of Kenner.

30.     Gentry, who at the time was acting as the President and CEO of Eufora and was one its five Board Managers, was paid by Kenner to secretly facilitate this fraudulent conveyance to Gaarn, who was also a *de facto* Board Manager of Eufora as well as the *de facto* Manager of AZ Eufora Partners.

31.     These membership transfers were all done to hide Kenner's secret interests in Eufora from various third parties (certain former hockey player clients of Kenner's) who were suing Kenner in 2008 and 2009 for this specific allegation among others.

PK-000139681
PK-000139681

32.     Guide Dog transferred its interest in Eufora to Standard Ventures in late 2008 in the midst of these lawsuits and their related discovery periods.

33.     Gentry, who was aiding and abetting Kenner and Gaarn, altered Eufora's books and records to make it appear as though the transactions took place three years earlier, in 2005, through Gentry's and Kenner's creation of several fictitious supporting documents.  Gentry also directed Eufora's accountant to amend tax returns for 2005 and each subsequent year exclusively to legitimize the fraudulent transactions.  The purpose was to hide the time-sensitive transactions between Kenner and Guide Dog on the one hand and Gaarn and Standard Ventures on the other, from Kenner's litigation opponents in 2008, so Kenner could testify under oath that he held no such secret interest in Eufora.

34.     When these facts were discovered, as well as other inappropriate activities conducted by Gentry and Gaarn, Gentry was terminated as an employee of Eufora and both Gaarn and Gentry were terminated as Board Managers.  They were not terminated because of their so-called "whistleblowing" activities regarding the false allegations made against Constantine and others.

35.     Gentry became the President and CEO of Eufora in May of 2008 and acted as the *de facto* CFO, and became a Board Manager in February of 2009.

36.     As part of his participation in the scheme, Gentry helped Kenner fraudulently sell his interest, which was then being held by Standard Ventures, back to some of the hockey players who had originally funded that investment.

PK-000139682
PK-000139682

37.   In early 2009, after the lawsuits against Kenner had ended, Gentry arranged for Eufora to take in $700,000 of new money from the hockey players, who thought they were buying new interests in Eufora.

38.   Kenner solicited the new investment money from his existing clients who already held an interest in Eufora, claiming that Eufora's patents had finally been issued and the company was now very valuable and on the verge of being profitable.

39.   Upon information and belief, he advised his clients that they should increase their current interest in Eufora and "double down".  Kenner and Gentry used Eufora's bank account as the clearing account to receive this new investment money so it did not appear to Kenner's clients as though an existing Member was selling its interest.

40.   Gentry had Eufora receive the $700,000, then immediately pay it back out to Gaarn's personal bank account.

41.   Upon information and belief, these funds ultimately ended up, in whole or in part, in the hands of Kenner, one of his entities, or yet another close associate of Kenner's acting as a straw man.

42.   The original $250,000 taken from the hockey players' investment in the Mexico real estate project funded the 5% stake owned by LMJ, then PKJ, then Guide Dog, then Standard Ventures, as well as the subsequent additional interests secretly skimmed and amassed by Kenner, which were then bought back by the hockey players for $700,000.

43.   One of the three plaintiffs against Kenner in the 2008-2009 litigation, former hockey player and Kenner client Owen Nolan ("Nolan"), was awarded a $2.8 million judgment.

PK-000139683
PK-000139683

Gentry and Gaarn ultimately helped Kenner circumvent a judgment and garnishment of Kenner's income, and helped hide these assets from court ordered debtor's exams.

44.   Upon information and belief, because Nolan has been unable to collect any money with respect to the $2.8 million judgment, the remaining two plaintiffs against Kenner, hockey players Joe Juneau and Ethan Moreau, have dismissed their lawsuits.

45.   Kaiser, also a co-conspirator along with Kenner, Gaarn and Gentry, previously invested millions of dollars in various failed real estate deals with Kenner and other investments/entities not related to Eufora.

46.   Upon information and belief, when it became evident that these investments had failed, Kenner told Kaiser he would receive an interest in Eufora in consideration of those failed investments.

47.   When Kenner no longer had his own interests to convey to Kaiser, both Kenner and Kaiser, with the assistance of Gentry and Gaarn, conspired to attempt to extort a 20% interest from Constantine.

48.   When that effort failed, they instead focused on a hostile takeover of the entire company through manipulation of the hockey player investors.

## THE NERGUIZIAN LOAN

49.   Nerguizian, through Neptune Company Asset Holdings, LLC, provided a loan for up to $5 million, and ultimately loaned Eufora approximately $2.5 million on or about February 23, 2009 ("Nerguizian Loan"), through Eufora Capital II, LLC ("Eufora Capital II").   The

18

PK-000139684
PK-000139684

Nerguizian Loan to Eufora Capital II was secured by the assets of Eufora.    Gentry and Nerguizian served as the only two managers of Eufora Capital II.

50.    Nerguizian demanded a $500,000 fee to make the Nerguizian Loan because Gentry, who negotiated the loan with Nerguizian, put him in the position to make such a demand.

51.    Gentry repeatedly took advances on the Nerguizian Loan during the negotiation process.  The primary motivation of Gentry to accept such advances was to pay his own salary and travel expenses.

52.    As the company was having problems with its vendors, and in fact had lost its single largest source of business during Nerguizian's due diligence process, Nerguizian perceived a much greater risk factor.

53.    After continuous, multiple-month-long delays due to Nerguizian's growing concern and more comprehensive analysis, he asked for the $500,000 fee as a contingency to the loan commitment.

54.    Gentry had no leverage to counter Nerguizian's increasingly aggressive loan terms because the company was not in a position to pay back Nerguizian for the advances already made.

55.    Constantine had very little involvement in these loan negotiations, and in fact he was livid when he found out the position in which Gentry had put the company.

PK-000139685

PK-000139685

56.    Eufora defaulted multiple times on the Nerguizian Loan as a result of Gentry's actions or lack thereof, who was Eufora's then acting President and CEO and the Manager of Eufora Capital II.

57.    After Gentry's failures, in August of 2009, Constantine regained control of the company through a unanimous vote of the Board of Managers, which included Gentry and Gaarn.   Constantine subsequently formulated and successfully implemented a plan to:   a) convince Nerguizian to provide Eufora with a forbearance, and b) improve the terms of the Nerguizian Loan on behalf of Eufora and all of its Members (the "Plan").   The Plan included forming Eufora Capital III, LLC ("Eufora Capital III") to become the new lender, with full disclosure to Eufora's Board of Managers and Members.

58.    Constantine planned to involve, among others, Ethel Kaiser, Nicholas L. Privitello ("Privitello"), Rizzi and Hughes in the Plan, including facilitating a new investment into Eufora Capital III to acquire the Nerguizian Loan.   However, as a result of Kaiser's and his associates' actions, their collective threats of litigation, and more importantly their alignment with Kenner, Gentry, Gaarn, Stolper and Hatzimemos, the majority Member of Eufora Capital III did not want Kaiser and his associates as business partners.   Therefore, at the request of the majority Member of Eufora Capital III, Constantine offered to return 100% of Ethel Kaiser's, Privitello's, Rizzi's and Hughes' investment funds prior to this lawsuit being filed.

59.    Neither of Kaiser's associates who invested in this Plan, particularly Plaintiffs Rizzi and Hughes, accepted the offer of a 100% return of their investment.   In fact, they did not even acknowledge or respond to Constantine's offer.

PK-000139686
PK-000139686

60. Defendants hereby tender again the immediate return of Plaintiffs Rizzi's and Hughes' investments in full, as well as Privitello's and Ethel Kaiser's investments.

61. Upon information and belief, Kenner, Kaiser, Gentry, Gaarn, Hatzimemos and Stolper advised Rizzi and Hughes to not accept return of their investments in order to use them and the hockey players to threaten and maintain this lawsuit, to extort from Constantine his interest in Eufora and control of the company.

62. Plaintiffs Rizzi and Hughes are not Members of Eufora, nor are Ethel Kaiser or Privitello. It was intended by Constantine for these individuals to participate in the loan purchase as Members of Eufora Capital III and then the successor entity to Eufora, as reflected in the Plan.

**THE BANCORP RELATIONSHIP**

63. After Gentry was removed as President and CEO of Eufora, Gentry and Gaarn nevertheless continued to secretly act on behalf of the company without Constantine's knowledge or consent.

64. Eufora had a relationship with Bancorp, whereby Bancorp issued tens of thousands of Eufora prepaid cards. Bancorp charged Eufora monthly program fees on those cards that grew to an aggregate total of $250,000–$300,000 in just a few months under Gentry's failed business plan, further burying the company in debt.

65. Constantine raised capital and managed to reduce the Bancorp debt to approximately $160,000. At that time, Gentry and Gaarn, without Constantine's knowledge or

PK-000139687
PK-000139687

consent, began to negotiate with Bancorp to try to buy more time to pay down the outstanding debt and avoid termination of the relationship, undermining Constantine's existing efforts.

66.    Gentry and Gaarn made promises to Bancorp on behalf of Eufora that they could not and did not keep.  They also made promises to Constantine, once he found out about their secret dealings, that they would raise capital and make the promised payments to Bancorp.  In fact, at one point they advised Constantine and asked that he advise Bancorp that payment in full had been made, when in fact they knew that it had not.  Constantine relied on his co-Board Managers' assurances with respect to their seemingly cooperative efforts.

67.    Gentry and Gaarn failed to raise the needed capital and failed to pay Bancorp in spite of their assurances to the contrary to both Bancorp and Constantine.  When Constantine attempted to re-engage Bancorp to give Eufora additional time to pay, Bancorp refused. Bancorp ultimately terminated the relationship with Eufora due to the hollow promises made by Gentry and Gaarn on behalf of the company and their failures to make payments, causing Eufora to lose it sole prepaid card issuer.

68.    Gentry was terminated as President and CEO in August of 2009.  On July 12, 2010, Gentry and Gaarn were removed as Board Managers for their many transgressions.

### THE NERGUIZIAN RELATIONSHIP

69.    After being removed as President and CEO, Gentry continued to access the company's bank accounts and accounting system, without the company's knowledge or consent.

70.    Before Gentry was alleviated of his responsibilities as President and CEO, while he was still a Board Manager of Eufora and a manager of Eufora Capital II, Gentry began to

PK-000139688
PK-000139688

secretly communicate with Nerguizian regarding the Nerguizian Loan, and regarding Eufora's financial condition and prospects for future business.

71.     While Constantine had been keeping Nerguizian informed of the company's financial condition, Gentry was telling Nerguizian things were better than Nerguizian believed. Gentry was attempting to convince Nerguizian to foreclose on the Nerguizian Loan, which compromised each and every member of Eufora, only to position himself as a person Nerguizian should hire to continue to operate the business post-foreclosure.

72.     Gentry's actions were interfering with Constantine's efforts to implement his Plan, which included arranging for the purchase of the Nerguizian Loan on behalf of Eufora's Members and restructuring Eufora for the benefit of all its investors.

73.     Upon information and belief, Nerguizian began to distrust Constantine based solely on misinformation provided by Gentry, and considered halting negotiations, which would have severely compromised Eufora's future.

74.     Gentry was telling Nerguizian that lucrative licensing deals were on the horizon, and that Nerguizian should foreclose on the Nerguizian Loan in order to take full advantage of his rights and remedies, one of which entitled Nerguizian to 40% of the gross revenue generated by any commercial relationship which originated while the loan was outstanding.   This is a provision which Constantine had successfully removed from the equation on behalf of the company through the implementation of the Plan.

75.     In reality, although the opportunities existed, Eufora was not yet in an optimum position to capitalize on these new licensing opportunities.

PK-000139689
PK-000139689

76.     Gentry's efforts to convince Nerguizian to take a firmer position with regard to the Nerguizian Loan and its default rights and remedies were making it difficult for Constantine to negotiate with Nerguizian and implement the Plan for Eufora to succeed.

<u>**HOSTILE TAKEOVER ATTEMPT**</u>

77.     Gentry's interference with Eufora's relationship with Nerguizian was a precursor to his and his Co-Conspirators' efforts to purchase the Nerguizian Loan, then assist the others to extort Constantine for his interest, and ultimately to attempt a hostile takeover.

78.     Gentry, Gaarn, Kenner and Kaiser brought on Hatzimemos and Stolper, who collectively tried first to do what they accuse Constantine of doing.  Specifically, they tried to secretly buy the Nerguizian Loan, which was in default, so that they could foreclose and take control of the company and exclude its other Members.

79.     Upon information and belief, Gentry and Gaarn asked Nerguizian to execute a non-disclosure agreement while both Gentry and Gaarn were acting as Board Managers of Eufora, and while Gentry was still an officer of the company, in order to secretly negotiate with Nerguizian to purchase the Nerguizian Loan.

80.     While claiming they were trying to acquire the loan for the alleged Members of AZ Eufora Partners, they in fact intended to purchase the loan on behalf of themselves (Gentry, Gaarn, Kenner, Kaiser, Stolper and Hatzimemos), then foreclose on the loan and push everyone else out.

24

PK-000139690
PK-000139690

81.     Gentry, Gaarn, Kaiser, Kenner, Hatzimemos and Stolper admittedly tried to negotiate in confidence with Nerguizian to do the transaction without Constantine's and the other Eufora Members' knowledge.

82.     Constantine inadvertently found out about the plot.  After the failed attempt by Gentry, Gaarn, Kaiser, Kenner, Hatzimemos and Stolper to secretly buy the loan from Nerguizian, they began threatening Constantine and Nerguizian with litigation.

83.     Simultaneously, Kaiser attempted to extort a 20% interest, and ultimately settled on a 12% interest and one board seat, from Constantine by suggesting there would be no lawsuit if Constantine complied.

84.     Rizzi, a New York police officer, even threatened criminal action if Constantine did not "come to New York and do the right thing", which is to say that Constantine needed to come and meet with Gentry, Gaarn, Hatzimemos, Kaiser, Kenner and Stolper to turn over control of the company and his interests voluntarily.

85.     However, Constantine and Nerguizian had already entered into an agreement with another outside investor who had purchased the Nerguizian Loan in cooperation with Eufora, through Eufora Capital III.

86.     Stolper then complained to Constantine's attorney, Lee Weinberg, that Constantine should have allowed the Nerguizian Loan to be purchased by Eufora's Members, namely the alleged Members of AZ Eufora Partners, as opposed to outsiders, so as to allow them the opportunity to reap in the benefits of owning an additional interest in the company.

PK-000139691
PK-000139691

87.     Constantine called Stolper's bluff.  As part of the Plan, he offered to provide them with the exact same deal that was afforded Eufora Capital III.  Specifically, he would allow them to match the investment and would provide the same interest and managerial control that Eufora Capital III had agreed to invest and receive.  Specifically, for approximately $3 million dollars, they would receive an approximate 12% interest in the company through a newly organized successor entity, and one board seat.

88.     But that is not what Gentry, Gaarn, Kaiser, Kenner, Hatzimemos and Stolper really wanted.  They wanted the entire company for themselves.  It is no coincidence that some of these individuals, who allege themselves to be Members of Eufora, are not plaintiffs in this lawsuit.  Upon information and belief, this is also the very reason why Plaintiffs Rizzi and Hughes have refused to accept a 100% return of their investment and why the alleged Members of AZ Eufora have been manipulated by these individuals into filing this lawsuit.

89.     This is not Kenner's first attempt at a hostile takeover through manipulating his hockey player clients.  In 2009-2010, Kenner arranged for his hockey player clients to file two high-profile lawsuits in California Federal Court against Jowdy alleging mismanagement, breach of fiduciary duty, unjust enrichment etc., with respect to two Mexico real estate projects.

90.     Kenner, although a significant shareholder in both projects and the catalyst for the hockey players' investment, was not a plaintiff. Both cases were ultimately voluntarily dismissed by the plaintiffs and the result is a lawsuit filed by Jowdy against each of the hockey players, Kenner and their Los Angeles attorney for abuse of process and malicious prosecution.

PK-000139692
PK-000139692

91.     Jowdy's claims are essentially that Kenner threatened litigation unless Jowdy relinquished his interest in and control of the projects to Kenner, and when Jowdy ultimately refused, Kenner manipulated his clients into suing him.

92.     On or about July 8, 2010, Stolper created and distributed a "Written Consent of the Members of AZ Eufora Partners I, LLC" ("Consent").

93.     Stolper has misrepresented that the Consent was an agreement to hire Stolper as counsel for AZ Eufora Partners and the individual Members, granting him authority not contained in the document.

94.     Upon information and belief, Stolper originally proposed that he simply "investigate" the activities of Eufora and Constantine, because Kenner advised him that it would be unlikely that the hockey players would fund and participate in another costly lawsuit similar to the failed Jowdy lawsuits.

95.     Upon information and belief, Stolper and Hatzimemos' efforts to assist Kenner, Kaiser, Gentry and Gaarn in validating their false allegations against Constantine, et al., while simultaneously masking their and their Co-Conspirators' true motives and activities, included both Stolper and Hatzimemos making repeated representations to Kenner's hockey player clients, as well as Plaintiffs Rizzi and Hughes, that Stolper and Hatzimemos had an association with and were previously employed by former New York City Mayor Rudolph Giuliani's administration and his New York firm, Giuliani Partners, LLC.  In fact, Hatzimemos is the founder of his own start-up crisis management firm named Hatzimemos Partners, while Stolper,

PK-000139693
PK-000139693

an associate of Hatzimemos', is the Executive Vice President and General Counsel for Atlantic Development, LLC, who is "moonlighting" to aid and abet his Co-Conspirators.

96.     It was primarily this kind of false credibility that has been facilitated by Stolper and Hatzimemos, which turned Kenner's clients from a group that was otherwise growing increasingly concerned about all of the representations being made by Kenner, to Kenner, Kaiser, Gentry and Gaarn successfully convincing Kenner's clients, the alleged Members of AZ Eufora, as well as Plaintiffs Rizzi and Hughes, to file this lawsuit

97.     The individuals listed in the Consent agreed only to allow Stolper and Hatzimemos to investigate.  However, when several of the alleged Members of AZ Eufora Partners who originally executed the Consent determined that Hatzimemos' and Stolper's intent was actually to facilitate the filing of a lawsuit in order to acquire an interest in the company for themselves, they refused to participate in the lawsuit that has ensued.  At this point, it is still unclear which of the alleged Members of AZ Eufora Partners actually consented to the filing of the lawsuit, or if AZ Eufora Partners is even a legitimate entity.

98.     Kenner, who formed AZ Eufora Partners on behalf of his hockey player clients to facilitate their investments in Eufora, with Gaarn as its *de facto* Manager, has never provided these individuals with an operating agreement for AZ Eufora Partners.

99.     Upon information and belief, since 2002, neither Kenner nor Gaarn have held any board meetings with respect to AZ Eufora Partners, produced any meeting minutes, opened any bank accounts, or even maintained the LLC with the state of Delaware, until of course just days before the filing of this lawsuit.

PK-000139694
PK-000139694

100.    Kenner, Gaarn, Gentry, Stolper and Berard scrambled to reinstate the LLC with the State of Delaware, and began to produce the necessary documentation to attempt to legitimize the entity and its investment in Eufora.

101.    Each of the alleged members of AZ Eufora Partners deposited their investment funds directly into Eufora's account.  Upon information and belief, Kenner and Gaarn have also never filed a corporate tax return for AZ Eufora Partners, or distributed K1s to any of the AZ Eufora Partners Members.

102.    Upon information and belief, AZ Eufora Partners is nothing more than a shell, the alleged members of which have never received any documentation to support their investment whatsoever.

103.    Stolper and Hatzimemos expect to be paid a 6% interest in Eufora if they are able to use the court system to extract the interests in Eufora of Constantine and the other Members.

## EUFORA CAPITAL III RELATIONSHIP

104.    Eufora Capital III was intended to be the new vessel by which the loan was to be converted to equity in the successor entity (Eufora, LLC a Delaware limited liability company ("Eufora DE"), so all the rightful owners could continue and prosper in their investment in Eufora ("the Plan").

105.    Constantine disclosed this specific Plan to all of the Members of Eufora, as well as many of the alleged Members of AZ Eufora Partners, as early as October of 2009.  In fact, Gentry was instrumental in facilitating certain elements of the Plan such as the formation of Eufora Capital III and Eufora DE.

PK-000139695
PK-000139695

106.   Gentry was also charged with the duty of facilitating the creation of the loan purchase agreement, which was to be used by Eufora Capital III to acquire the Nerguizian Loan on behalf of Eufora, its Members and the investors in the Plan.

107.   The threats of litigation and extortion attempts by Kaiser and Stolper jeopardized the reorganization Plan.  In order avoid litigation, and to make the deal with Eufora Capital III happen, Constantine gave up significant portions of his own interest in Eufora, which he believed was for the greater good of the company.  Specifically, Constantine agreed as part of the Plan to provide Kaiser and his Co-Conspirators with their inexplicable and unwarranted 12% interest and one board seat, for which Kaiser and the others were extorting Constantine.

108.   On August 6, 2010, Stolper sent an e-mail to an unknown list of recipients, accusing Constantine of wrongdoing and defalcations in his position as an officer of Eufora.

109.   Stolper demanded as part of his plan to obtain the Nerguizian Loan that Constantine "dilute his controlling membership interest and relinquish day-to-day control of Eufora".

110.   Stolper repeatedly threatened litigation against Constantine, including in an August 17, 2010 e-mail to Lee Weinberg, an attorney hired by Constantine to first help Constantine facilitate the Plan and then to deal with Stolper's threats and demands against Constantine.

111.   Stolper continuously interfered with Eufora's business.  He contacted counsel for Nerguizian, forcing Weinberg to spend a great deal of time and money doing damage control on behalf of Constantine, rather than moving forward with Constantine's Plan.

PK-000139696
PK-000139696

112.    Stolper's actions clearly put into jeopardy Eufora's relationship with its new lender, Eufora Capital III, as well as its future CEO, Don Berman ("Berman"), and the various business opportunities he brought with him.

113.    For example, as a result of the actions of Stolper, Eufora missed a critical deadline with respect to the Plan and Eufora's obligation to Eufora Capital III.  Had Stolper not interfered with the company's activities this deadline would have otherwise easily been met and the result would have been a successful one for Eufora and its Members.  Instead, Eufora was forced to execute an amendment to the original terms of the Plan which included an extension of time to close.  As consideration for such extension, Eufora Capital III demanded and was provided with $500,000 in warrants at the expense of Eufora and its Members.  Furthermore, as a result of the ongoing interference of Stolper and his Co-Conspirators, Eufora has now missed the new deadline, putting the company back into a state of instability with its lender and making its future uncertain at best.

114.    Eufora Capital III, which is nothing more than a bona fide investor and lender that participated in a legitimate arm's length transaction with Eufora and Nerguizian, has been named as a co-defendant in this lawsuit, causing a transaction which would have significantly benefited all of Eufora's Members to be in jeopardy.

115.    Stolper also contacted Berman and tainted the future relationship between Eufora and Berman.  In fact, Stolper forwarded Berman a very damaging New York newspaper article which was the result of the lawsuit which Stolper's Co-Conspirators have filed.  The article

31

PK-000139697
PK-000139697

articulated publicly the knowingly false allegations made against Constantine, as well as certain defamatory statements made in the affidavits of Kaiser and Stolper.

116.   In addition to forwarding the article to Berman, Stolper communicated to Berman that he personally engineered the lawsuit against Constantine.

117.   The majority Members of Eufora and Eufora Capital III believe Berman is a highly capable and reputable individual whose participation would be very beneficial to the company.   Berman had already formally agreed to become CEO of Eufora DE prior to the lawsuit and had already facilitated a number of high level introductions between Eufora and several potential corporate partners who wish to license Eufora's patents, which would make the company instantly profitable.

118.   As a result of Stolper's actions, which include making false and very damaging statements about Berman in his affidavit, as well the negative publicity which was at the very least promoted by Stolper and his Co-Conspirators, Berman's role within the company and the potential partnerships which he had facilitated are now unlikely to come to fruition.

## **CONFIDENTIAL FACSIMILES**

119.   As part of Gentry's efforts to commit fraud and conspire with others to attempt a hostile takeover of the company, he secretly contacted and directed Eufora's fax-to-e-mail vendor (Grasshopper) to send blind copy emails of the faxes sent to Constantine's and Mia Edrozo's personal fax lines to his e-mail address.

32

PK-000139698
PK-000139698

120.    From approximately February of 2009 until he was terminated, Gentry therefore secretly intercepted all communications sent to those fax lines, including documents not related to Eufora business.

121.    Upon information and belief, Gentry forwarded the secretly intercepted faxes to Stolper and others, which they then collectively used to first attempt to convince Nerguizian to align himself with them, and then attempt a hostile takeover of the company by communicating with Constantine and third parties without revealing their possession of the faxes.

## **IMPROPER DERIVATIVE ACTION**

122.    Stolper's stated purpose in this lawsuit is to wrest control over Eufora from Constantine, which is the purpose of Gentry, Gaarn, Kenner and Kaiser as well as Co-Conspirators.

123.    In drafting the Complaint and Application for [Injunctive Relief], Kaiser and Stolper have made intentionally false and misleading statements in order to induce the Court to take away Constantine's control.

124.    For example, without any factual basis whatsoever, the Complaint and Stolper's Affidavit claim that Constantine took hundreds of thousands of dollars out of the company on prepaid cards.   They intentionally omitted reference to the corresponding deposits made by Constantine, in excess of the amounts withdrawn, which were made for the purpose of funding those withdrawals.

33

PK-000139699
PK-000139699

125.   The personal spending of Constantine conducted via Eufora prepaid cards actually produced revenue for the company, as fees were charged to persons and companies using those cards.

126.   The Complaint and the Stolper Affidavit claim, without any factual basis, that the $500,000 fee taken by Nerguizian was consideration for and acted as repayment of loans made by Nerguizian to Constantine.  Nowhere does either document state that Constantine borrowed other unrelated amounts of money, they simply try to correlate two unrelated transactions to make a knowingly false allegation.

127.   The Complaint, the Kaiser and Stolper Affidavits and the motions filed each state, unnecessarily, that Constantine has had a prior felony conviction, which dates back over 17 years, for conduct dating back over 21 years.

128.   The Stolper Affidavit falsely accuses Constantine of misdirecting $105,350 to AZ Avalon Partners, LLC, who is *Eufora's landlord.*

## COUNT I – BREACH OF CONTRACT
**(As to Counterdefendants AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry)**

129.   Counterclaimants hereby reallege and incorporate all of the above paragraphs as though fully restated herein.

130.   Guide Dog breached Eufora's first operating agreement, as described hereinabove.

131.   AZ Eufora Partners, Standard Ventures and Gentry breached the Amended Operating Agreement, as described hereinabove.

PK-000139700
PK-000139700

132.    AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry caused damages to Constantine, D'Ambrosio and the Edrozos in an amount to be proven at trial.

## COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(As to Counterdefendants AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry)**

133.    Counterclaimants hereby reallege and incorporate all of the above paragraphs as though fully restated herein.

134.    In Arizona, in every contract there is a covenant of good faith and fair dealing.

135.    AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry breached the covenant of good faith and fair dealing, based upon the allegations stated hereinabove.

136.    AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry caused damages to Constantine, D'Ambrosio and the Edrozos in an amount to be proven at trial.

## COUNT III – FRAUDULENT INDUCEMENT TO CONTRACT
**(As to Counterdefendants, AZ Eufora Partners, Standard Ventures, Guide Dog and Gentry)**

137.    Counterclaimants hereby reallege and incorporate all of the above paragraphs as though fully restated herein.

138.    Kenner and Gaarn misrepresented their respective membership interests in Eufora, as described hereinabove, including but not limited to, by failing to disclose the fraudulent manner in which they obtained their membership interests, at the time the parties entered into the Amended Operating Agreement.

139.    Counterclaimants reasonably relied upon the misrepresentations of Kenner, Gaarn and Gentry in entering into the Amended Operating Agreement.

PK-000139701
PK-000139701

140.   Due to the fraudulent misrepresentations of Kenner, Gaarn and Gentry, Constantine, D'Ambrosio and the Edrozos have the right to rescind the contract as to the various entities represented by Kenner, Gaarn and Gentry as being Members.

141.   Constantine, D'Ambrosio and the Edrozos have been damaged in an amount to be proven at trial as a result of entering into and performing under the Amended Operating Agreement based upon the fraudulent misrepresentations of Kenner, Gaarn and Gentry.

## COUNT IV – BREACH OF FIDUCIARY DUTIES
**(As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos and Stolper)**

142.   Counterclaimants hereby reallege and incorporate all of the above paragraphs as though fully restated herein.

143.   The Co-Conspirators conspired to breach fiduciary duties, as described hereinabove, and in the process used Eufora to commit tax fraud, fraudulent conveyances, common law fraud, extortion and other illegal conduct.

144.   The Co-Conspirators caused harm to Counterclaimants in an amount to be proven at trial.

145.   Due to the disruptive and illegal conduct of Gentry, Gaarn, Kenner, Kaiser, Stolper and Hatzimemos, Constantine was forced to provide Eufora Capital III with $500,000 in warrants in the company to help bring the Plan to fruition, the market value of which will be proven at trial.

146.   Kenner, Kaiser, Gentry, Gaarn, Stolper, Hatzimemos, Rizzi and Hughes caused Counterclaimants to incur legal fees in an amount to be proven at trial, to defend the illegal derivative action filed by Gentry's and Gaarn's Co-Conspirators.

36

PK-000139702
PK-000139702

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos and Stolper)

147.    Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

148.    As described hereinabove, the Co-Conspirators tortiously interfered with contractual relations.

149.    The tortious interference caused damages to the Counterclaimants in an amount to be proven at trial.

## COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS/ECONOMIC ADVANTAGES
### (As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos and Stolper)

150.    Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

151.    As described hereinabove, the Co-Conspirators tortiously interfered with prospective business relations and prospective economic advantages of the Counterclaimants.

152.    The tortious interference caused damages to the Counterclaimants in an amount to be proven at trial.

## COUNT VII – DEFAMATION
### (As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper and Berard)

153.    Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

154.    As described hereinabove, the Co-Conspirators defamed Counterclaimants.

PK-000139703
PK-000139703

155. False statements about a person's fitness to perform their job duties are defamatory *per se*, and damages are presumed.

### COUNT VIII – ABUSE OF PROCESS
**(As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper, Hughes, Rizzi and Berard)**

156. Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

157. The Co-Conspirators filed this action for improper, ulterior motives.

158. This litigation was brought as a leveraging tool for negotiations and/or attempts at extortion.

159. Soon after the Complaint was filed, Rizzi, Hughes, and AZ Eufora Partners, under the direction of Kenner and Stolper, illegally issued subpoenas to Alliance Bank, Bank of America, Bank of Arizona and Johnson Bank, seeking financial information about Eufora, Eufora Capital III, Constantine, and other non-parties.

160. The subpoenas were not served upon Counterclaimants, who had no notice of them until after the banks had already responded and provided documents.

161. Rizzi, Hughes, Kenner and Stolper used the improperly filed civil action as a tool to get information they could not otherwise get by threatening Constantine.

162. Counterclaimants have been damaged, in an amount to be proven at trial, as a result of having to defend the frivolous lawsuit, and as a result of private financial information being illegally obtained by Rizzi, Hughes, Kenner and Stolper.

PK-000139704
PK-000139704

## IX – CONSPIRACY; AIDING AND ABETTING
**(As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper, Hughes, Rizzi and Berard)**

163.    Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

164.    Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper and Berard have committed tortious acts in concert with and as part of a common design with each other, as stated hereinabove.

165.    Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper and Berard were each aware and knew that the acts being committed by the others constituted a breach of duty to others, and each gave substantial assistance or encouragement to the other to so conduct themselves.

166.    Gentry, Gaarn, Kenner, Kaiser, Hatzimemos Stolper and Berard each breached duties to Counterclaimants, whether as fiduciaries or at common law, while giving substantial assistance to the others in accomplishing tortious results.

167.    Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper and Berard have caused damages to Counterclaimants as a result of the conspiracy, in an amount to be proven at trial.

## X – DECLARATORY JUDGMENT/RELIEF
**(As to Counterdefendants Gentry, Gaarn, Kenner, Kaiser, Hatzimemos, Stolper, Hughes Rizzi and Berard)**

168.    Counterclaimants hereby reallege and incorporate the above paragraphs as though fully restated herein.

169.    Several parties claim to have interests in Eufora, and the parties disagree as to the proper division of those interests among each other.

PK-000139705
PK-000139705

170.   This Court may declare the respective rights of the parties under the Amended Operating Agreement or other contract or statute, pursuant to A.R.S. §§ 12-1831 and 12-1832.

171.   Counterclaimants request that the Court determine the respective rights and interests of the Counterdefendants as they pertain to their membership interests in Eufora.

WHEREFORE, Counterclaimants, pray for judgment in favor of Counterclaimants as follows:

A.   For damages in an amount to be proven at trial.

B.   For punitive damages.

C.   For reasonable attorneys' fees and costs pursuant to Article 12 of the Amended Operating Agreement, and A.R.S. §§ 12-341.01, 12-341 and 12-349.

D.   For pre- and post-judgment interest.

E.   For declaratory judgment as prayed for herein.

F.   For such other and further relief as this Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 24th day of November, 2010.

**WILENCHIK & BARTNESS, P.C.**

   /s/   Dennis I. Wilenchik
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendants Constantine, D'Ambrosio and the Edrozos*

PK-000139706
PK-000139706

1   ORIGINAL Electronically filed this
    24th day of November, 2010 using
2   the Courts E-Filing Online website

3   COPY Electronically transmitted and
4   faxed this 24th day of November, 2010 to the
    Honorable J. Richard Gama
5   Maricopa County Superior Court
    101/201 West Jefferson Street – CCB 701
6   Phoenix, Arizona  85004
7   per the Courts E-Filing Online website

8   COPY E-Mailed this 24th day and to be Mailed the 29th
    day of November, 2010, to:
9

10  Daniel E. Durchslag, Esq.
    Julia A. Guinae, Esq.
11  Cohen Kennedy Dowd & Quigley
    The Camelback Esplanade 1
12  2425 E. Camelback Road, Suite 1100
    Phoenix, Arizona 85016
13  ddurchslag@ckdqlaw.com
    *Attorneys for Plaintiffs*
14

15  J. Grant Woods, Esq.
    Grant Woods Law
16  Two Renaissance Square
    40 N. Central Avenue, Suite 2250
17  Phoenix, AZ  85004
18  gw@grantwoodspc.net
    *Co-Counsel for Defendants*
19  *Constantine, D'Ambrosio and Edrozos*

20  James M. Mack, Esq.
    James M. Mack, PLC
21  40 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004-4436
22  jmack1@cox.net
23  *Attorney for Defendant Eufora Capital III, LLC*

24
    /s/ K. Hicks
25  _____

41

PK-000139707

PK-000139707