38

1

William Ranford
2   *10705 East Cactus Road, Scottsdale, AZ 85259*
*Telephone    (310) 210-2713*
3   *Plaintiff in Pro per*
*Email:BRanford@LAKings.com*
4

FILED

2013 MAR 21  PM 1: 22

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF ARIZONA

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

6

In re: Tommy Constantine,

7

Debtor.

8

9

10   William Ranford
                                        Plaintiffs.
11

*vs.*
12

Tommy Constantine.
13                                      Respondents.

14

15

16

17

18

19

20

) Case No.: 2:12 -bk - 04842 - EwH
)
)
) **COMPLAINT    TO    DETERMINE**
) **DISCHARGABILITY    OF    DEBTS**
) **PERSUANT TO 11 U.S.C. §523 (a) (6),**
) **SECURITIES   AND   COMMODITIES**
) **FRAUD  PERSUANT TO 18 U.S.C. §**
) **1348,    FRAUDULENT    TRANSFERS**
) **AND OBLIGATIONS PERSUANT TO**
) **11    USC    §    548,    FRAUD    OR**
) **DEFALCATION  WHILE  ACTING  IN**
) **A FIDUCIARY CAPACITY 11 U.S.C.**
) **§523 (a) (4),**
**(Jury Trial Demanded)**

13-AP-334

Plaintiff,    William    Ranford    ("Ranford")    files    this    Complaint    against

21   Defendant/Debtor Tommy Constantine ("Debtor") and alleges:

22

1.  This is an action to determine the dischargeability of a debt and to recover
23

Securities    purchased    and    not    delivered    by    Constantine,    Constantine
24

25   Management Group ("CMG"), and/or a Constantine controlled entities from

26   Debtor prior to the filing of the Debtor's bankruptcy pursuant to 11 U.S.C.

§523 (a) (6), and Bankruptcy Rule 7001.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 (b).

3. This matter is a core proceeding under 18 U.S.C. §157 (b) (2) (l).

4. The Defendant is a Debtor before the Court, having commenced a Chapter 11 case on March 11, 2012, by the filing of a Voluntary Petition for Relief under Chapter 11 case on March 12, 2012, Title XI, United States Code.

5. Ranford is not listed as a creditor or claim holder on Constantine's schedule F directly, although Plaintiff believes he is indirectly listed through Constantine's listing of the "Global Settlement Fund"; a non-legal entity which Constantine solicited protective advancement funds in 2009 from Plaintiff and up to as many as twelve (12) or more additional individuals.

6. In EXHIBIT 1, page 5, Constantine lists:

> "The Debtor has the right buy back the outstanding balance, currently $9,643,056.19, the then 50% interest he had in Eufora LLC that he transferred to the 2002 Trust, Sue Ellen Ferguson, Trustee, in **April 2003**. (The interest has been diluted since the transfer).

7. Ranford believes this alleged April 2003 transfer NEVER HAPPENED and is part of Constantine's attempted Fraudulent Conveyance of his remaining Eufora equity to circumvent the completion of the transfer to Ranford as well as defrauding the Courts and depriving other creditors of a fair representation of Constantine's true holdings while seeking bankruptcy protection. Ranford

alleges that Sue Ellen Ferguson, Trustee of the 2002 Trust is a nominee owner for Constantine.

8. In EXHIBIT 2 [Constantine's June 30, 2011 declaration in the NY Case: CV11-2692-SJF-WDW], Constantine declares in paragraph 3,

> "**At all times** to the events alleged in the Complaint, I (Constantine) was a **member** of Eufora L.L.C., an Arizona Limited Liability Company ("Eufora AZ")…"

9. In paragraph 6, Constantine goes further to clarify that his Member status is delineated from his Manager and Officer status by stating,

> "All my (Constantine) conduct in this transaction was solely and exclusively as a **member**, manager and officer of Eufora."

10. In paragraph 10, Constantine goes further to confirm his status in the company as a Member by stating,

> "Acting solely as a **member**, manager and officer of Eufora, I formulated an informal reorganization plan"…

11. In paragraph 24, Constantine reiterates,

> "Acting solely as a **member**, manager and officer of Eufora, I (Constantine) began seeking capital investment"…

12. In paragraphs 43 & 44, Constantine clarifies any issue for the NY Case of whether or not he was an "investor" by stating as part of his efforts to avoid litigation for his alleged wrongdoings and restructure the company for the benefit of the shareholders,

> 43. "In an effort to avoid litigation being threatened by Plaintiffs

through their counsel Michael Stolper, I (Constantine) offered to alter the original reorganization plan **to be the only investor to take a loss**"

44. "Accordingly, **I was sacrificing a significant portion of my equity in Eufora AZ** to prevent the dilution of every other investor's equity and even agreed to step down as the CEO to appease my accusers."

13. In a letter from Constantine's Attorney to a group of Eufora investors on July 14, 2010 (EXHIBIT 3), his attorney represents the following:

Any adjustment necessary to facilitate the most favorable scenario for the members of the AZ Eufora Partners entities will come directly from the ownership interests that today belong to Tommy Constantine.

14. There are an overwhelming amount of inaccuracies and controverting evidence to show Constantine never relinquished the shares he is now attempting to fraudulently convey outside of his bankruptcy proceeding in order to avoid transfer or losses in the sale of his assets through Chapter 11, or a subsequent Chapter 7. These sales to Ranford are now subject to securities issues related to a fraudulent sale and/or transfer of stock Constantine may or may not have owned **PERSUANT TO 18 U.S.C. § 1348, SECURITIES AND COMMODITIES FRAUD**, although Constantine received 100% of the proceeds directly to CMG or the direct benefit of the transfers to a Trust fund at Constantine's direction and in Constantine's control to his Attorney, Ronald Richards.

## COUNT ONE

### Objection to Dischargeability of Debt

### 11 (USC §523(a)(6))

15. Ranford realleges and incorporates by reference paragraphs 1 through 14 of this Complaint as though fully set forth herein.

16. Under Constantine's fraudulent claim that he was not a shareholder of Eufora since his alleged pledged transfer to Sue Ellen Ferguson, Trustee, 2002 Trust in April 2003, upon information and belief Ranford believes Constantine personally sold shares in Eufora as follows:

- Sergei Gonchar on 2-29-2008 - $100,000
- Mattias Norstrom on 3-19-2008 - $100,000
- Michael Peca on 4-07-2008 - $100,000
- Tyson Nash on 4-24-2008 - $100,000
- Greg deVries on 6-02-2008 - $75,000
- Darryl Sydor on 7-07-2008 - $50,000
- **William Ranford on 7-07-2008 - $200,000**
- Glen Murray on 7-21-2008 - $50,000
- Vitali Yachmenev on 8-08-2008 - $25,000
- **TOTAL - $800,000**

17. Upon information and belief, all of the proceeds from these transactions (sale of Eufora LLC stock held by Constantine) ended up in the bank account for CMG, Constantine's 100%, personally controlled entity or alter ego.

18. As of the date of this adverse Complaint, Ranford has not received the shares

promised by Constantine. **On 07-21-2008, Ranford transferred $200,000** to Constantine.   To the best of Ranford's knowledge, only Tyson Nash has received a transfer document from Constantine for the shares purchased in 2008.   In fact, Constantine signed the paperwork supporting the 2008 transaction in late 2012 (post bankruptcy filing) after constant harassment by Nash.

19. The paperwork in EXHIBIT 4 states:

### TRANSFER OF MEMBERSHIP INTEREST OF EUFORA, LLC, AN ARIZONA LIMITED LIABILITY COMPANY

The undersigned, Constantine Management Group, Ltd., for valuable consideration, the receipt of which is hereby acknowledged, hereby transfers and conveys to Tyson S. & Kathy J. Nash Living Trust, .5% of Transferors right, title, and interest in EUFORA LLC, an Arizona Limited Liability Company to.

Dated this 24th day of *April 2008*.

Constantine Management Group, Ltd.

/s/
Name: Tommy Constantine
Title: Manager

20. Constantine was ultimately sued for failure to transfer his equity, Securities Fraud amongst other Frauds in:

- Arizona (SUPERIOR COURT OF THE STATE OF ARIZONA - Case No. CV2010-028333 - Dismissed without Prejudice, under appeal for

fee judgment & leave to amend, and suspended due to Constantine's Chapter 11 filing), and

- New York (United States District Court, Eastern District of New York Case: CV11-2692 - suspended due to Constantine's Chapter 11 filing).

21. Upon information and belief, Ranford believes that Constantine continues to make public representations about the status of his Eufora stock (prior April 2003 transfer to the 2002 Trust, Sue Ellen Ferguson, Trustee, notwithstanding) based on information and belief that Constantine plans to "retain or regain" the equity immediately after the bankruptcy process is complete. Ranford understands that Constantine has represented in the last twelve (12) months that Eufora is *still* on the brink of unparalleled successes in the near future and his bankruptcy needs to complete its process in order to allow Constantine to fulfill the destiny of the company without the scrutiny of Constantine's dealings prior to the filing of his bankruptcy petition.

## COUNT TWO
### Securities and Commodities Fraud
### 18 USC § 1348, and
### Fraudulent transfers and obligations
### 11 USC § 548

22. Ranford restates and incorporates by reference paragraphs 1 through 21 of this Complaint as though fully set forth herein.

## EUFORA, LLC

23. Constantine has failed to complete the transfer of Eufora shares that he agreed to sell to Ranford in 2008.

24. Based on the solicitation of the "Global Settlement Funds" by Constantine related to "protective advances" for Constantine controlled entities, Constantine promised to transfer shares in a number of entities, Eufora, LLC, AZ Avalon Partners, LLC, AZ Falcon Partners, LLC and an entity Constantine was establishing to share ownership in two (2) real estate condos Constantine had purchased at the PalmsPlace Hotel in Las Vegas, Nevada. None of the shares have been transferred to Ranford now three (3) years later, although Constantine received $300,000 from Ranford in 2009 when solicited. Constantine constructed an oral agreement with Ranford during Ranford's solicitation. On May 18, 2009, Constantine sent the following similar message to Ranford's friend, Mattias Norstrom for his $250,000 contribution, confirming the oral solicitation and the pending transfer of shares/equity in the Constantine held &/or controlled entities:

> From: Tommy Constantine <tommy@eufora.com>
> Subject:    Global Settlement
> Date:  May 18, 2009 10:51:19 AM MST
> To:     mattiasnorstrom@mac.com
> Cc:     phil kenner kenner33@gmail.com
>
> Matti:
>
> You will be receiving a Transfer of Membership Agreement for your increased interest in Eufora, LLC from our CEO (C.R. Gentry) later this week or next week at the latest. We just have to wait for the other side to sign the Transfer docs as part of the settlement, which is supposed to be in the next few days. In the meantime, this email shall serve as written confirmation that you will be receiving 1/10th of the interest that we acquire from

Nolan, Juneau and Moreau with respect to Eufora. Specifically, you will be receiving an additional .364% which is 1/10 of the 3.64% interest that they currently own or owned. The attached excel spread sheet shows your current ownership interest and the interest that we are acquiring from the three of them as part of the settlement. The dollar amounts on the right are the current value of those interest at the $20M valuation (for the whole company). Again, your interest is 1/10 of that and will be added to the 1.70% you already own.

Additionally, Juneau and Nolan owned 10% each (20% total) of the Avalon Airpark project. We are buying out their 20%, so you will also receive 1/10th of this interest (2%). It is currently valued at $3.3M and the office space is currently being rented by Eufora. You will also be receiving an LLC and operating agreement reflecting your new proportionate share of ownership of this building.

Frankly, although this one is more of a luxury than an investment, you will also own 1/10th of 20% (2%) of the Falcon 10 airplane. It is worth approximately $1M but will be very difficult if not impossible to sell. In any case, this will not cost you guys anything going forward. Ultimately you guys should take advantage of the fact that we now all own an airplane together and when it's geographically feasible, you guys should use it to make owing a piece of it worthwhile. Just let me know whenever you want to use it. You just have to pay for the hourly costs for fuel and the daily costs for the pilots and landing fees. As a previous investor in the airplanes, you, Phil and all of the original Diamante Air investors will also be seeking damages from Jowdy for the initial money invested in the airplanes.

Finally, as Phil and I stated, I also settled the Palms condo issue with Moreau as part of this global settlement transaction. Moreau had absolutely no right to sue me for the Palms units and I would have crushed him in that lawsuit because we had a signed agreement when he bought it. Nevertheless, since we got that issue resolved as part of the settlement as well, I have elected to share in the ownership of those units and the equity that exists in them with all of the great partners that have stepped up and helped us fix this problem with all these problem individuals. Specifically, these Palms units are a one bedroom and an adjacent studio on the 31st floor with a strip view. They are worth approximately $1.5M today and were worth $1.8-$2M some time ago. I believe they will recover in the future and be worth more than they are today. In any case, you will also be receiving an LLC and operating agreement reflecting your new proportionate ownership of these units. Although Juneau, Nolan and Moreau did not own any interest in these units, to keep things simple, I will just match what we are doing in the Avalon project so you will also receive 1/10th of a 20% interest in these (2%).

Please do not hesitate to call me if you have any questions and please just to follow the program in terms of documentation.

TC

(602) 363-5676

25. Constantine now purports his fraud upon the bankruptcy court, his creditors and Ranford by suggesting that Constantine has not owned or been in control

of his stock in Eufora, LLC since his alleged conveyance of it in April 2003 nine (9) years prior to the filing of his bankruptcy petition.    All of Constantine's actions, communications and representations for the last decade provide undeniable and controverting evidence that Constantine is attempting to fraudulently convey his Eufora, LLC holdings by scheme (in concert with Sue Ellen Ferguson) to defraud the bankruptcy court, his creditors and Ranford.

## COUNT THREE

## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY 11 U.S.C. §523 (a) (4),

26. Ranford restates and incorporates by reference paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. Ranford claims under Section 523(a)(4) Constantine waives his rights to discharge of the debt since his frauds arose from fraud or defalcation by one acting in a fiduciary capacity, and since the debt arose from embezzlement or larceny.

28. In 2010, Ranford received the "Use of Funds" from the $300,000 contribution Ranford made to Constantine's "Global Settlement Fund".   At no time during Constantine's solicitation for the "protective advances" which Constantine requested directly from Ranford did Constantine disclose he was using any portion of Ranford's funds for Constantine's benefit (outside the scope of his controlled entities that he promised additional shares/equity, notwithstanding legal fees that would be used related to subject matter that directly would

effect Ranford).      Instead, upon information and belief, Constantine transferred funds from his attorney, Ronald Richards' Trust Account, to the following unauthorized "Use of Funds":

JB AZ Consulting, LLC - $384,000

29. As a result of Constantine's unauthorized transfers, Ranford has suffered the use of his personal funds/assets totaling approximately $300,000 for approximately three (3) years.

30. Constantine breached this duty by his actions or inactions set forth above.

31. As a direct and proximate result of Constantine's breach, Ranford suffered and continues to suffer harm in an amount to be proven at trial

**WHEREFORE**, the Plaintiff demands that judgment be entered in its favor and against Defendant as follows:

32. Confirmation of Eufora equity to be transferred to Ranford from Constantine &/or Eufora, LLC for the March 19, 2008 purchase, whichever the court deems to be in control of Ranford's equity.

33. Confirmation of Eufora LLC, AZ Avalon Partners, LLC, AZ Falcon Partners, LLC equity and the legal documents related to the two (2) PalmsPlace units (entity unknown to Plaintiff) to be transferred to Ranford from Constantine for the 2009 contribution to Constantine's solicited "Global Settlement Fund" deposit for "protective advancements", whomever is deemed by the court to

be in control of Ranford's equity.

34. Complete repayment of the unauthorized transfer(s), considering Ranford has suffered the use of his personal funds/assets totaling approximately $300,000 for approximately three (3) years including any prejudgment interest allowable by the court for damages and any post judgment interest allowed until the fraudulent debt is repaid to the satisfaction of the court.

35. Compensatory damages in an amount to be proven at trial, together with pre-judgment and post-judgment interest at the highest lawful rate.

36. Consequential damages to be determined at trial.

37. Punitive damages to be determined at trial.

38. Attorneys' fees, costs of suit, interest and such other relief as the Court deems fair and equitable.

39. An accounting of any and all profits earned by Defendant, or those acting in concert with Defendant, from Plaintiff.

40. That the Plaintiff be awarded such other and further relief as the Court may deem just and admirable.

1

2      DATED this 20 day of March, 2013.

3                                        William Ranford

4                                        *William Pfl*

5                                        _____
                                         William Ranford
6                                        *Plaintiff in Pro per*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 1



B6B (Official Form 6B) (12/07) - Cont.

In re     **TOMMY CONSTANTINE**                                                Case No.   **2:12-bk-04842-EWH**
                                              Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | PP31B, LLC, a Delaware limited liability company. Company intended to hold ownership of a studio condominium at Palms Place.  Lender required LLC to assign purchase rights to Debtor prior to closing of financing.  Unit was subsequently defaulted and sold at foreclosure. | - | 0.00 |
| | | TCR, LLC, an Arizona limited liability company, dissolved.  In the business of a racing team.  No assets.  Not doing business. | - | 0.00 |
| | | Private LLC, an Arizona limited liability corporation.  100% owned by Debtor.  No assets. No longer operating. | - | 0.00 |
| | | E C Ventures LLC, an Arizona limited liability corporation.  Debtor owns 50%.  No assets.  No longer doing business. | - | 0.00 |
| | | Team ELR LLC., an Arizona limited liability corporation.  Debtor owns 50%.  No assets.  No longer doing business. | - | 0.00 |
| | | Areo Marketing Group LTD, an Illionis corporation (dissolved).  100% owned by Debtor.  No assets. No longer doing business. | - | 0.00 |
| | | Motorsports Marketing, LTD, an Illinois coporation (dissolved).  100% owned by Debtor.  No assets. No longer doing business. | - | 0.00 |
| | | Avalon Aviation Center Condominium Association, Inc., an Arizona corporation (dissolved).  No Assets. No longer doing business. | - | 0.00 |
| | | The Debtor has the right buy back for the outsanding balance, currently of $9,643,056.19,  the (then 50%) interest he had in Eufora LLC that he transferred to the 2002 Trust, Sue Ellen Ferguson, Trustee, in April 2003.  (The interest has been diluted since the transfer). | - | Unknown |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |

Sub-Total >     0.00
(Total of this page)

Best Case Bankruptcy

Case 2:12-bk-04842-EWH     Doc 26  Filed 04/05/12  Entered 04/05/12 16:56:03     Desc
Main Document       Page 5 of 40

Case 2:12-bk-00334-EWH     Doc 1   Filed 03/21/13   Entered 03/21/13 13:24:49     Desc
Complaint  Page 5 of 8

# EXHIBIT 2



Case 2:13-cr-00607-JFB-AYS   Document 1092-38   Filed 07/27/21   Page 17 of 38 PageID #:
Case 2:11-cv-02692-SJF-GRB   Document 11-33 Filed 06/30/11   Page 1 of 10 PageID #: 211
35853

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810     Facsimile:  602-606-2811

Dennis I. Wilenchik, Arizona #005350
Samuel Doncaster, Arizona # 028541
admin@wb-law.com
*Attorney for Defendant*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THEODORE R. HUGHES, ETHEL KAISER, NICK PRIVITELLO, ROBERT J. RIZZI,<br><br>Plaintiffs,<br><br>v.<br><br>TOMMY CONSTANTINE,<br><br>Defendant. | CASE NO. CV11-2692-SJF-WDW<br><br>DECLARATION OF TOMMY CONSTANTINE IN SUPPORT OF THE RESPONSE AND OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION |

Defendant Tommy Constantine, being duly sworn, upon oath, deposes, and says as follows:

1. I am the Defendant in the above captioned lawsuit.

2. I am a resident of Scottsdale, Arizona.

3. At all times relevant to the events alleged in the complaint, I was a member of Eufora L.L.C., an Arizona Limited Liability Company ("Eufora AZ").  During or around August 2009, I became the Chief Executive Officer of Eufora AZ.

4. Eufora L.L.C. is a business offering prepaid credit cards to consumers. These prepaid cards are unique because they report to the major credit bureaus, which helps consumers improve their credit scores and eventually qualify for ordinary credit cards.

5. Eufora has a series of business method patents on this unique business model.

6. All my conduct in this transaction was solely and exclusively as a member, manager, and officer of Eufora.

7. Prior to the events alleged in the complaint, Eufora was financed by a loan from the Neptune Company, which was negotiated between Neptune and Carlton R. (C.R.) Gentry, who was Eufora's acting CEO at the time the loan originated.

8. The loan included many onerous terms and conditions, including warrant rights, an 18% interest rate and a permanent right to receive forty-percent of the gross revenue of Eufora L.L.C for any commercial relationships which originated during the time the loan is outstanding.

9. Although I did not know it at the time, the loan also included a prohibition of the issue or transfer of new shares in Eufora AZ.

**The Eufora Reorganization Plan**

10. Acting solely as a member, manager, and officer of Eufora AZ, I formulated an informal reorganization plan to free Eufora AZ from Neptune's onerous terms and conditions.

11. The plan involved obtaining additional capital investment, forming two new entities, purchasing the loan and all of Neptune's rights, relinquishing such rights in exchange for

WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

1  equity as part of the reorganization plan and merging these entities  into one successor

2  entity, thus freeing Eufora AZ of these onerous loan terms.

3

4     12. In spite of the malicious acts of the Plaintiffs and their co-conspirators to later disrupt

5  this plan, the plan was successfully executed for the benefit of Eufora and all of its

6  shareholders.

7     13. Exhibit G is a true and correct copy of a letter sent to each and every Plaintiff

8

9  describing the reorganization and the reasons for it.

10     14. Pursuant to the plan, one of the two new entities, Eufora Capital III, LLC ("Eufora

11  Capital III") would purchase the loan and relinq uish the onerous terms.

12     15. Eufora, L.L.C. a Delaware LLC, ("Eufora DE") would become the final successor

13

14  entity in which new investors (in Eufora Capital III) and old invevstors in Eufora AZ would

15  share in the benefits of the new Eufora business through a roll up of all the related entities

16  into Eufora DE.

17     16. Exhibit E is a true and correct copy of an email dated 12/17/09, which I received

18  from C.R. Gentry, confirming the formation of Eufora DE.

19

20     17. Exhibit F is a true and correct copy of an email between C.R. Gentry and Brent

21  Nerguzian (Neptune's principal) describing Gentry's involvement setting up Eufora Capital

22  III in September 2009.

23

24     18. Both of these entities were formed for the express purpose of executing the plan.

25     19. Both of these entities were formed long before any allegations of impropriety took

26  place.

27

WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

20. After the merger, shareholders in Eufora Capital III would receive class A shares with preferred distributions.

21. Then, investors in Eufora AZ would exchange their shares in Eufora AZ for class B shares in Eufora DE.

22. It was intended that the Plaintiffs would receive class A shares of Eufora DE for their participation in the reorganization plan.

23. Eufora DE would then be the sole beneficial owner of  Eufora AZ and all of its assets, and would completely control it.

**The Plaintiffs Become Involved in the Plan**

24. Acting solely as a member, manager, and officer of Eufora, I began seeking capital investment for Eufora Capital III and the reorganization plan.

25. I approached Phil Kenner, a fellow Arizona resident, with information about the reorganization plan for Eufora. Kenner introduced me to John Kaiser, also an Arizona resident, with whom I shared the same information. Both Kenner and Kaiser were well aware of the plan and all of its elements.

26. Upon information and belief, John Kaiser later passed that information on to some or all of the Plaintiffs in this lawsuit.

27. I never authorized or requested that Kaiser forward, retransmit, or in any way pass on any of the information I gave him.  I became aware of it after the fact.

28. I never knew any of the Plaintiffs were investors until after their money was transmitted.

29. During all negotiations prior to the Plaintiffs transmitting their money, I dealt exclusively with John Kaiser.

30. I believed John Kaiser was negotiating his own personal investment on his own behalf.

31. Kaiser, without my knowledge, consent, or assistance, persuaded the Plaintiffs to attempt to invest in the reorganization plan for Eufora. Exhibit N is a true and correct copy of an email Kaiser sent, indicating he understood that Eufora was being reorganized during the negotiation.

32. On behalf of Eufora AZ, C.R. Gentry conditionally agreed to accept the Plaintiffs investment, subject to the resolution of due diligence and a vote by the Eufora board.

33. Exhibit L is a true and correct copy of the email from C.R. Gentry to Kaiser explaining that Plaintiffs' participation in Eufora was conditional.

34. Plaintiff Privitello contacted me requesting wiring instructions for the investment.

35. At that time, I believed the investment I had negotiated with Kaiser was his personal investment.

36. When I asked Kaiser why Privitello was involved in Kaiser's investment, Kaiser told me that Privitello owed Kaiser money and was transmitting the funds directly into the investment as a way of paying him back.

37. Per the instructions of Kenner and Kaiser, I instructed Privitello to wire the investment funds to Ron Richards, a California attorney working in Beverly Hills who represented Phil Kenner.

38. Upon information and belief, Kaiser instructed the other Plaintiffs to wire money to Richards' account as well.

**The Plaintiffs Balked at the Plan**

39. The Plaintiffs began making false accusations and threatening litigation during the summer of 2010.

40. Santo Volpe, who controls a group of multi-million dollar investors in Eufora Capital III, wrote me a letter in June 2010 expressing concern about the plaintiffs' litigiousness, asking me to remove them from the contemplated transaction, and threatening to unwind the deal if I did not.

41. Exhibit H is a true and correct copy of Volpe's letter.

42. I then began contacting Plaintiffs and offering them their money back.

43. In an effort to avoid the litigation being threatened by Plaintiffs through their counsel Michael Stolper, I offered to alter the original reorganization plan to be the only investor to take a loss.

44. Accordingly, I was sacrificing a significant portion of my equity in Eufora AZ to prevent the dilution of every other investor's equity and even agreed to step down as the CEO to appease my accusers.

45. I did so for the greater good of the company and its shareholders and to avoid an action that I believed would ultimately irreparably damage the company.

46. After the plan had been executed, I planned to pursue every available legal remedy.

47. I agreed to give Volpe additional consideration in exchange for his agreement to give us more time to execute the plan and conclude the transaction.

WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

48. Plaintiffs were provided with the documents necessary to become members of Eufora DE.

49. Plaintiffs did not execute those documents.

50. Before any lawsuits were filed by the Plaintiffs in Arizona, I repeatedly attempted to return 100% of their money.

51. Finally, during the August 2010 Eufora Board of Managers meeting, which several of the Plaintiffs attended, I offered them their choice of participation in Eufora DE, in accordance with the plan, or full restitution of their money.

52. Plaintiffs still did not execute documents to become members of Eufora DE.

53. They also did not accept the return of their money.

54. I telephoned Rizzi for wiring instructions, but never received a response.

55. No Plaintiff has returned my phone calls or provided me with wiring instructions to return their money.

56. Because no one was returning any of my calls, I phoned and emailed attorney Ron Richards several times to attempt to return the money to his account, which is the account from which the funds were sent.

57. Richards never returned my calls or email.

**The Arizona Litigation**

58. Plaintiffs joined others in filing a derivative action against me in the Arizona Superior Court.

59. The superior court issued a final judgment dismissing the Plaintiffs' suit.

60. Exhibit M is a true and correct copy of that order.

61. Exhibit J is a true and correct copy of an online news article describing the dismissal.

62. I filed an answer and counterclaim specifically stating that each plaintiff named in this lawsuit could still have his or her money back.

63. Exhibit I is a true and correct copy of my amended answer and counterclaim.

64. No Plaintiff has indicated a willingness to accept payment.

**The Other Entities Mentioned in the Request for Injunction**

*AZ Avalon Partners, L.L.C.*

65. None of any Plaintiff's money was ever invested in AZ Avalon Partners, L.L.C.

66. When Plaintiffs wired their initial money for the proposed Eufora investment, they wired their money into attorney Ron Richards account.

67. $155,000.00 of the $400,000.00, which Plaintiffs collectively were to have invested was inadvertently wired by Richards' office to the bank account of AZ Avalon Partners, LLC.

68. I discovered the error and immediately requested redirection of $150,000.00 to Bancorp, the issuing bank of the Eufora credit card, an account payable, and $5,000 to Eufora's operating account.

69. Exhibit A is a true and correct copy of a December 8 email I sent immediately upon discovering the error.

70. Exhibit B is a true and correct copy of an email sent to the intended recipient, Bancorp Bank, providing the federal reference number for the wire and was advising that the funds were redirected to the proper intended recipient.

Case 2:13-cr-00607-JFB-AYS    Document 1092-38    Filed 07/27/21    Page 25 of 38 PageID #:
Case 2:11-cv-02692-SJF-GRB    Document 31-1    Filed 06/30/11    Page 9 of 10 PageID #: 219
35881

*AZ Falcon Partners, L.L.C.*

71. No Plaintiff has had any contact with AZ Falcon Partners, L.L.C.

72. This entity is an aviation management company that operates jets, which I manage.

73. Plaintiffs allegation at ¶ 16 of the Kaiser affidavit, which references the $155,000 wire transfer to AZ Falcon Partners, is erroneous.

74. None of the Plaintiffs' money was ever sent to AZ Falcon Partners.

75. It is simply a reference to the mistaken wire transfer to AZ Avalon Partners, which was immediately corrected.

*Set Jet, L.L.C.*

76. Plaintiffs have never had any contact with Set Jet L.L.C.

77. Set Jet has no assets and is a shell formed to do aviation business in the future.

78. It was not formed until June, 2010, long after any of the events alleged in the complaint.

79. No funds of any Plaintiff have anything to do with this entity.

80. Exhibit C is a true and correct copy of Set Jet's certificate of formation.

*Falcon 20 Partners, L.L.C.*

81. Plaintiffs have never had any contact with Falcon 20 Partners, L.L.C.

82. Falcon 20 Partners was formed on November 1, 2010, long after any of the events involving Plaintiffs.

83. It is a holding company formed to provide aircraft ownership and management services and has nothing to do with Plaintiffs or their money.

84. Exhibit D is a true and correct copy of the Falcon 20's certificate of formation.

1

I have read the foregoing document and swear, on penalty of perjury and upon

2

personal knowledge that all of the foregoing statements are true, except those statements

3

made upon information and belief.  As to statements made upon information and belief, I

4

believe them to be true.

5

6

7

8

_____

Tommy Constantine

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

10

# EXHIBIT 3



# WEINBERG GONSER LLP

HELM WEINBERG
310.697.8958, x 201 direct
lena@weinberggonser.com

July 14, 2010

Investors in or Members of Eufora, LLC, an Arizona limited liability company ("Eufora, LLC")

Investors in or Members of AZ Eufora Partners I, LLC, AZ Eufora Partners II, LLC,
AZ Eufora Partners III, LLC, and AZ Eufora Partners IV, LLC (each a Delaware
limited liability company, and collectively the "AZ Eufora Partner entities")

Subject: Plan for Eufora, LLC; Change in Board of Managers at Eufora, LLC

I am sending this letter to you on behalf of our client, Tommy Constantine, acting CEO and
one of the Managers of Eufora, LLC, an Arizona limited liability company ("Eufora, LLC").

**You are receiving this letter because Eufora, LLC has identified you as a beneficial owner
of a membership interest in Eufora, LLC (directly or via your membership in one of the AZ
Eufora Partner entities, or both).**

Our client, Mr. Constantine, wants to share a plan of reorganization for Eufora, LLC (the
"Plan") that has been in the works since late 2009. Mr. Constantine has pursued the Plan on
behalf of Eufora, LLC and its beneficial owners (including those who may have beneficial
interests in Eufora, LLC via one or more of the AZ Eufora Partner entities). Mr. Constantine
retained WEINBERG GONSER LLP to review and refine existing Plan documents and to
produce a full set of formal documentation (the "Plan Documents") that will reflect the key
deal points of the Plan set forth below.

This firm is now working to produce and deliver such Plan Documents, which we anticipate
will be delivered on or before July 22, 2010 to all members of Eufora, LLC and all members
of the AZ Eufora Partner entities of whom we are aware and for whom we have email
contact information.[1]

Mr. Constantine also wants to share with you some changes at Eufora, LLC at the Board level
and the reasons for those changes.

*The Loan Purchase and the Plan for Eufora*

As you may be aware, Eufora, LLC, under the leadership of its then-acting CEO and
President, Carlton R. "C.R." Gentry, negotiated and entered into a loan and related security
and control agreements (the "Loan") with Neptune Company Asset Holdings, LLC
("Neptune") in early 2009. The entity that controlled the Loan was Eufora Capital II, LLC,
which has a 2-Manager Board: One Manager, who was solely to represent Eufora, LLC's
interests, was Mr. Gentry; the other Manager was the owner of Neptune, who was solely to
manage Neptune's interests. No other individual or entity had any control over the Loan.
During Mr. Gentry's approximately 16-month-long tenure as the CEO and President of
Eufora, LLC and the sole representative of Eufora, LLC with respect to the Loan, Mr. Gentry,

The Century Plaza Towers ▪ 2029 Century Park East ▪ Suite 900 ▪ Los Angeles, California 90067
310.697.8958 Main ▪ 310.697.8956 Fax ▪ www.WEINBERGGONSER.com

Case 2:13-ap-00334-EWH   Doc 1   Filed 03/21/13   Entered 03/21/13 13:24:49   Desc
Complaint   Page 28 of 38

Investors in or Members of Eufora, LLC, an Arizona limited liability company
Investors in or Members of the AZ Eufora Partner entities
July 14, 2009

without prior approval, set his own part-time work schedule and significant compensation package (including $340,000 in cash and a self-directed grant of a 2.5% ownership interest in Eufora, LLC with no capital contribution whatsoever). As you may also be aware, Eufora, LLC (also during Mr. Gentry's tenure as CEO and President of Eufora, LLC and as Eufora, LLC's sole representative with respect to the Loan) defaulted under many provisions of the Loan agreements. Since the occurrence of such events of default (and until very recently), Neptune has been in a very strong position under the Loan agreements to take actions that could be highly unfavorable to the existing beneficial owners of Eufora, LLC, including Neptune's ability to exercise its rights and remedies under the Loan agreements and take over the business of Eufora, LLC and all of Eufora, LLC's assets.

Fortunately, Mr. Constantine was able to intervene and negotiate with Neptune and achieve forbearance and a grace period from Neptune under the Loan agreements for over six months. During this time, in order to keep Neptune from taking possession of the company and its assets, Mr. Constantine was also able to find a buyer for the Loan that met all of Eufora, LLC's requirements while also meeting Neptune's requirements. Such buyer is working diligently with Eufora, LLC and its management team to implement the Plan -- a plan that Mr. Constantine, as well as the majority of the members of Eufora, LLC believes is in the best interest of Eufora, LLC and beneficial to all relevant parties.

The buyer of the Loan is Eufora Capital III, LLC, which is managed by Dominic Volpe (the "Loan Purchaser"). One of the many benefits of the Loan Purchaser's deal with Neptune for Eufora, LLC and its investors is that the Loan Purchaser has agreed (for a limited time and subject to the reorganization of Eufora, LLC) to convert the Loan into a lower priority Class A (equity) ownership interest in the reorganized Eufora entity ("New Eufora"). New Eufora has already been formed as a Delaware limited liability company for this specific purpose and will, as a result of the reorganization under the Plan, be the beneficial owner of all of the business of Eufora, LLC and all of its assets. All participants in the Plan will own their interests in and through New Eufora.

Under the terms of the Plan, New Eufora will emerge debt-free. Moreover, it will have a new, yet highly capable and experienced, management team in place to take the company's business to the next level, along with capital reserves that the Loan Purchaser and such management team believes will be more than sufficient to achieve success. Below are some of the key "deal points" that will be reflected in the Plan Documents (and some background with respect thereto):

1. Each identified member of the AZ Eufora Partner entities who made a cash investment for a beneficial interest in Eufora, LLC via such entities will be offered the option to exchange all relevant AZ Eufora Partner entity ownership interests for New Eufora ownership interests in the form of Class B units. Such Class B units in New Eufora will provide such AZ Eufora Partner entity members a direct ownership interest in New Eufora that is equal to or greater than such investor's current indirect

Page 2

Investors in or Members of Eufora, LLC, an Arizona limited liability company
Investors in or Members of the AZ Eufora Partner entities
July 14, 2009

beneficial ownership interest in Eufora, LLC. Please note that such beneficial interest percentages will not be reduced by the significant dilution effect that will occur as a result of the Loan Purchaser's contributions to New Eufora.

2. As many of you know, there has been significant confusion (and there have been several different calculations and scenarios that have surfaced) relative to the beneficial interest percentages in Eufora, LLC identified as being held by members of the AZ Eufora Partner entities. This is due to a lack of documentation and accounting for more than five years with respect to the AZ Eufora Partner entities, as well as more recent transactions with respect to Eufora, LLC interests that took place between Standard Ventures on the one hand and other members and managers of the various AZ Eufora Partner entities on the other. In order to provide maximum value under the Plan to identified members of the AZ Eufora Partner entities, the percentages in New Eufora that will be provided to each of the identified members of the AZ Eufora Partner entities will be derived from all the available data and will be resolved to equal the highest membership interest percentage scenario/calculation discussed. In other words, members of AZ Eufora Partner entities will receive the greatest membership interest percentage discussed under the various scenarios in addition to avoiding any dilution of their ownership interests in the transactions relating to the creation of New Eufora. Any adjustments necessary to facilitate this most favorable scenario for members of the AZ Eufora Partner entities will come directly from the ownership interests that today belong to Tommy Constantine. As a result, in nearly all cases, identified members of the AZ Eufora Partner entities will obtain a higher percentage ownership than they would have possessed under almost any scenario if the Loan were not purchased by the Loan Purchaser and the transactions leading to Eufora's re-organization under the Plan and New Eufora did not take place.

3. Members of the AZ Eufora Partner entities will not be required to contribute any additional capital to facilitate the transactions leading to Eufora's re-organization and New Eufora under the Plan or to obtain a direct and undiluted ownership interest in New Eufora.

4. The Loan Purchaser will contribute to New Eufora its rights under the Loan, including the primary Loan obligation (which is currently accruing interest at the default rate of 18% per year). The Loan Purchaser will also contribute new cash to New Eufora such that such Loan rights and such new cash will have an aggregate value of approximately $3,000,000. In exchange for such contributions, the Loan Purchaser will receive approximately 12% of New Eufora's ownership interests in the form of Class A units. As noted in item 1 above, the Loan Purchaser's 12% ownership interest will not dilute the ownership interests of those who invested cash in Eufora, LLC. Such Class A units will have a preference on distributions from New Eufora until the approximately $3,000,000 in capital contributed to New Eufora is returned to the Loan Purchaser (after which point all distributions will be shared *pro rata* by all

Page 3

Investors in or Members of Eufora, LLC, an Arizona limited liability company
Investors in or Members of the AZ Eufora Partner entities
July 14, 2009

members of New Eufora in both Class A and Class B). The Loan Purchaser, however, will not be paid any interest on its $3,000,000 preference. In other words, the Loan Purchaser gets the first $3,000,000 out before distributions are made to all investors, but with no interest and with no deadline.

5. Under the Plan, part of the cash contributed by the Loan Purchaser to New Eufora will be used to pay off all of Eufora, LLC's short-term debt and all of Eufora, LLC's outstanding trade payables. The remaining portion of the cash, which will be contributed by the Loan Purchaser to New Eufora, will provide working capital reserves for operation of the company's business that both the Loan Purchaser and the new management team believe will be more than sufficient to achieve success.

6. As you may be aware, one of the more notable provisions in the Loan agreement negotiated by Mr. Gentry on behalf of Eufora, LLC that negatively affected the company was that Neptune received Eufora, LLC warrants that gave Neptune the option to purchase up to 10% of Eufora, LLC for $2,000,000 at any time over the next 5 years. Under the Plan that Mr. Constantine has achieved, all the warrants previously held by Neptune (that, if exercised, would have diluted all members of Eufora, LLC by up to 10% each, while potentially making Neptune millions of dollars) are no longer valid. Instead, under the Plan, such Neptune warrants will be converted into a 1% ownership interest in New Eufora for Neptune in the form of Class B units. Such 1% interest will also come exclusively and directly from the ownership interests that today belong to Tommy Constantine.

7. Another of the more notable provisions of the Loan agreements that Mr. Gentry negotiated on behalf of Eufora, LLC that negatively affected the company was that Neptune was promised a "revenue share" entitling Neptune to 40% of the gross revenue generated by Eufora, LLC from any commercial relationship (including licensing deals) that was "initiated" while the Loan was outstanding. Because every pending licensing opportunity that Eufora, LLC has before it was initiated while the Loan was outstanding, in the absence of Mr. Constantine's implementation of the Plan, Neptune would have been entitled to 40% of the gross revenue from each and every licensing opportunity of Eufora, LLC for the life of each such deal. As a result of Mr. Constantine's implementation of the Plan and the re-negotiation of the terms of the Loan, this "revenue share" provision of the Loan has been waived by the Loan Purchaser.

8. Subject to formalizing the agreed-upon terms of his engagement (and subject to implementation of the Plan), Don Berman, the CEO of CardWorks and owner of Merrick Bank, has agreed to become the CEO of New Eufora and to head up New Eufora's day-to-day operations. As a part of his duties, Mr. Berman will be following up with and solidifying specific licensing opportunities for the company that he and Mr. Constantine have originated.

Investors in or Members of Eufora, LLC, an Arizona limited liability company
Investors in or Members of the AZ Eufora Partner entities
July 14, 2009

9. Under the Plan, Tommy Constantine will step down and will not have any
operational or managerial connection to the company.

10. The intellectual property used in the business of Eufora, LLC (including, without
limitation, the Eufora trademarks, the "Referral Patent," the "Credit Builder Parent
Patent," and the "Credit Builder Continuation Patent (the filing process of which has
been maintained in good standing and, as of June 30, 2010, was verbally approved
by the Patent Examiner)) is all intact and will be available exclusively for use by New
Eufora as the sole licensor.

*Changes Necessitated at the Board of Managers of Eufora*

The Loan Purchaser's diligence process with respect to Eufora, LLC surfaced a number of
issues. Among the unresolved issues highlighted as a matter of great concern were the
number of actions of Tim Gaarn and Carlton R. "C.R." Gentry (members of Eufora, LLC's
Board of Managers) with respect to the movement of monies and securities of, by and
between Eufora, LLC, Standard Ventures and the AZ Eufora Partner entities and members
thereof. Fortunately, the Loan Purchaser proceeded with the transaction despite such
concerns, but now, in light of the unfortunate litigation threat letter circulated by Michael
Stolper, Esq. on behalf of Mr. Gaarn, the Loan Purchaser has urged in a letter to Tommy
Constantine (as acting CEO and a member of Eufora, LLC) that the members of Eufora, LLC
take immediate steps to limit the adverse effect that these activities and threats by Mr. Gaarn
and Mr. Gentry might have on the Plan and its implementation. The Loan Purchaser made it
especially clear that should such threats and extreme dissension continue, the Loan
Purchaser "will not be keen to participate in the proposed plan" and that the Loan Purchaser
"will take on a very different role in [its] current capacity" (meaning, as the owner of the
Loan, which is able to take over Eufora, LLC and do what it wishes with the business and
assets).

Since my client and the majority of the members of Eufora, LLC believe that the participation
of the Loan Purchaser in the Plan (and the full implementation of the Plan) is critical to the
success of Eufora, LLC and its business, an Approval of the Members' was sought and
granted on July 12, 2010 that (a) removed both Mr. Gaarn and Mr. Gentry from the Board of
Managers of Eufora, LLC effective immediately, and (b) replaced Mr. Gaarn and Mr. Gentry
on the Board of Managers with Dominic Volpe (Manager of the Loan Purchaser) and Dan
Kennedy of C9 Consulting, LLC (one of Eufora, LLC's founders), all pursuant to Sections 5.3
and 6.1(b) of the 2009 Eufora, LLC Operating Agreement. The majority of the members of
Eufora, LLC also agreed that they will look most favorably upon the inclusion of a duly
elected/named representative of the AZ Eufora Partner entities (or their successor) to the
Board of Managers of New Eufora following a review by counsel and by such members of
proper documentation relating to the AZ Eufora Partner entities and their organization and
management that confirms the identity of all members and of their properly elected/named

Page 5

Investors in or Members of Eufora, LLC, an Arizona limited liability company
Investors in or Members of the AZ Eufora Partner entities
July 14, 2009

manager. On behalf of Mr. Constantine, please find attached as Annex A to this letter a copy of the written consent of members of Eufora, LLC that constituted such Approval of the Members.

Thank you for reviewing the foregoing and the attached. As noted above, we anticipate distributing Plan Documents on or before July 22nd. Please address any questions regarding the Plan or any of the foregoing directly to our client, Tommy Constantine on (602) 363-5676, or by email at tommy@eufora.com. If you are represented by counsel, you may direct such counsel to contact the undersigned.

Very truly yours,

Lee M. Weinberg
for WEINBERG GONSER LLP

(attachments)

---

[1] Please note that we are not in possession of sufficient information to determine who is actually a member of an AZ Eufora Partner entity, nor are we in possession of (a) any LLC operating agreement signed by all the purported members of any of the AZ Eufora Partner entities, or (b) any evidence of how and when any managers of any such entities (Phil Kenner, Tim Gaarn, etc.) were named or removed pursuant to an action of the members of any of the AZ Eufora Partner entities. Moreover, we have been informed that there was a "roll up" of each of the AZ Eufora Partner entities into AZ Eufora Partners I, LLC, but we have no documentary evidence of that set of transactions or how and when exactly they were accomplished. To add to the confusion, we have been informed that Eufora, LLC has never received any funds from any AZ Eufora Partner entity in exchange for the interests held by such entity; rather, WEINBERG GONSER LLP has learned that the members of such entities delivered payment directly to Eufora, LLC, whereupon the interests of the applicable AZ Eufora Partner entities in Eufora, LLC were increased. This would suggest that perhaps such members of AZ Eufora Partner entities should have become members of Eufora, LLC directly. Therefore, such investors will be invited to own their interests in New Eufora directly under the Plan.

[2] This letter and Annex A are formal notice to all Eufora, LLC members of actions taken by members of Eufora, LLC holding well over the required 50% necessary to authorize or take such actions on behalf of Eufora, LLC without a meeting and without notice ("Approval of the Members") in accordance with Sections 5.3 and 6.1(b) of Eufora, LLC's Amended and Restated Operating Agreement dated as of February 23, 2009 (the "2009 Eufora, LLC Operating Agreement").

Page 6

*ANNEXA*

## ACTION BY WRITTEN CONSENT
## OF THE MEMBERS OF EUFORA, LLC
### an Arizona limited liability company

### dated as of July 12, 2010

The undersigned, each constituting a member of Eufora, LLC, an Arizona limited liability company (the "Company"), and together constituting members of the Company holding at least 50% of the membership interests in the Company, by consent in writing pursuant to the authority contained in Section 29-683 of the Arizona Revised Statutes and Section 5.3 of the Company's Amended and Restated Operating Agreement dated as of February 23, 2009 (the Operating Agreement"), without the formality of convening a meeting, do hereby adopt, approve and consent to the resolutions and actions of the Company set forth below:

## Removal and Replacement of Managers on the Company's Board of Managers

**WHEREAS**, there is significant confusion regarding (i) the corporate nature and authority of the entities known as AZ Eufora Partners I, LLC, AZ Eufora Partners II, LLC, AZ Eufora Partners III, LLC and AZ Eufora Partners IV, LLC (together, the "AZ Eufora Partner entities"), and (ii) the identity and authority of the purported representatives thereof;

**WHEREAS**, the Company is not in possession of documentary evidence to clarify the foregoing;

**WHEREAS**, there have been recent events and actions involving the Company and the AZ Eufora Partner entities, and by, between and among the AZ Eufora Partner entities and purported members of the AZ Eufora Partner entities (including threats of litigation and other actions against the Company, members of the Company, and against parties identified to us as members of the AZ Eufora Partner entities ,in each case by parties that may not have authority to represent any of the AZ Eufora Partner entities or their members);

**WHEREAS**, some of such events and actions were and are being performed with the knowledge of (and in some cases in the name of) Tim Gaarn and Carlton R. "C.R." Gentry at the same time as each of them sits on the Company's Board of Managers;

**WHEREAS**, the undersigned members of the Company deem (i) such confusion regarding the nature and authority of those purporting to speak on behalf of investors, and (ii) the aforementioned events and actions to be especially harmful to the business, member relationships and contractual relationships of the Company as well as to the interests of its investors (including those investors purportedly owning interests in the Company via the AZ Eufora Partner entities);

**WHEREAS**, Mr. Gaarn and Mr. Gentry have little or no ownership interest in the Company or, to the knowledge of the undersigned, in any of the AZ Eufora Partner entities;

**WHEREAS**, the concern of the Company and the undersigned is for those parties who <u>do</u> have ownership interests in the Company (including those purportedly owning interests in the Company via the AZ Eufora Partner entities);

**WHEREAS**, the undersigned members of the Company, after due consideration of all available facts, deem it to be in the best interests of the Company to remove Tim Gaarn and Carlton R. "C.R." Gentry from the Company's Board of Managers, effective immediately;

**WHEREAS**, the undersigned members of the Company, after due consideration, wish to replace promptly the foregoing removed members of the Company's Board of Managers with the following new managers: Dominic Volpe and William Daniel Kennedy;

**WHEREAS**, Section 5.3 of the Operating Agreement provides that the written consent of the holders of a majority of the membership interests in the Company ("Approval of the Members" as defined in Section 1.1 of the Operating Agreement) is required for the Company and its members to take action without notice and without a meeting; and

**WHEREAS**, the undersigned members of the Company hold at least a majority of the membership interests in the Company;

**NOW, THEREFORE, BE IT RESOLVED**, that each of the undersigned members of the Company hereby consents to and approves, ratifies, and confirms the immediate removal of Carlton R. "C.R." Gentry and Tim Gaarn from the Company's Board of Managers, and the immediate addition of Dominic Volpe and William Daniel Kennedy to the Company's Board of Managers in their stead;

**FURTHER RESOLVED**, that the undersigned members of the Company hereby agree that, following a review by counsel and by the undersigned of proper documentation relating to the AZ Eufora Partner entities and their organization and management that confirms the identity of all members and of their properly elected/named manager, the undersigned members will look most favorably upon the inclusion of a duly elected/named representative of the AZ Eufora Partner entities (or their successor) to the Board of Managers of Eufora, LLC or its successor;

**FURTHER RESOLVED**, that in addition to and without limiting the foregoing, the appropriate officers and managers of the Company be, and each of them hereby is, authorized to take, or cause to be taken, all such further reasonable and necessary actions, and to execute and deliver, or cause to be delivered, for and in the name and on behalf of the Company, all such further reasonable and necessary instruments and documents as such persons may deem appropriate in order to effect the intent of the foregoing resolutions;

**FURTHER RESOLVED**, that all actions heretofore taken by the officers and agents of the Company in connection with the foregoing recitals and resolutions be, and hereby are, approved, ratified, and confirmed as the acts and deeds of the Company; and

**FURTHER RESOLVED**, that this written consent may be executed in one or more counterparts, all of which together shall be deemed to be one and the same instrument.

**WHEREFORE**, in confirmation of all of the foregoing, the below members of the Company have set forth their signatures to this Action by Written Consent of the Members of Eufora, LLC, an Arizona limited liability company, effective as of the date first above written.


**Tommy Constantine**


**Mark D'Ambrosio**

C9 Consulting, LLC

By: _____
William Daniel Kennedy, authorized signatory

**Mia Edrozo**

The foregoing members of the Company hold and possess in the aggregate a majority of the membership interests of the Company as of the date hereof.

**WHEREAS**, Section 5.3 of the Operating Agreement provides that the written consent of the holders of a majority of the membership interests in the Company ("Approval of the Members" as defined in Section 1.1 of the Operating Agreement) is required for the Company and its members to take action without notice and without a meeting; and

**WHEREAS**, the undersigned members of the Company hold at least a majority of the membership interests in the Company;

**NOW, THEREFORE, BE IT RESOLVED**, that each of the undersigned members of the Company hereby consents to and approves, ratifies, and confirms the immediate removal of Carlton R. "C.R." Gentry and Tim Gaarn from the Company's Board of Managers, and the immediate addition of Dominic Volpe and William Daniel Kennedy to the Company's Board of Managers in their stead;

**FURTHER RESOLVED**, that the undersigned members of the Company hereby agree that, following a review by counsel and by the undersigned of proper documentation relating to the AZ Eufora Partner entities and their organization and management that confirms the identity of all members and of their properly elected/named manager, the undersigned members will look most favorably upon the inclusion of a duly elected/named representative of the AZ Eufora Partner entities (or their successor) to the Board of Managers of Eufora, LLC or its successor;

**FURTHER RESOLVED**, that in addition to and without limiting the foregoing, the appropriate officers and managers of the Company be, and each of them hereby is, authorized to take, or cause to be taken, all such further reasonable and necessary actions, and to execute and deliver, or cause to be delivered, for and in the name and on behalf of the Company, all such further reasonable and necessary instruments and documents as such persons may deem appropriate in order to effect the intent of the foregoing resolutions;

**FURTHER RESOLVED**, that all actions heretofore taken by the officers and agents of the Company in connection with the foregoing recitals and resolutions be, and hereby are, approved, ratified, and confirmed as the acts and deeds of the Company; and

**FURTHER RESOLVED**, that this written consent may be executed in one or more counterparts, all of which together shall be deemed to be one and the same instrument.

**WHEREFORE**, in confirmation of all of the foregoing, the below members of the Company have set forth their signatures to this Action by Written Consent of the Members of Eufora, LLC, an Arizona limited liability company, effective as of the date first above written.


**Tommy Constantine**


**C9 Consulting, LLC**

**Mark D'Ambrosio**

By: _____
         William Daniel Kennedy, authorized signatory

**Mia Edrozo**

The foregoing members of the Company hold and possess in the aggregate a majority of the membership interests of the Company as of the date hereof.

# EXHIBIT 4



# TRANSFER OF MEMBERSHIP INTEREST

## OF

## EUFORA, L.L.C.,

## AN ARIZONA LIMITED LIABILITY COMPANY

The undersigned, Constantine Management Group, Ltd, for valuable consideration, the receipt of which is hereby acknowledged, hereby transfers and conveys to Tyson S. & Kathleen J. Nash Living Trust, .5 % of Transferors right, title, and interest in Eufora, L.L.C., an Arizona limited liability company to.

Dated this 24ᵗʰ day of April, 20 08 .

Constantine Management Group, Ltd.

Name: Tommy Constantine

Title; Manager