

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO
*610 Federal Plaza*
*Central Islip, New York 11722*

July 29, 2021

Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

      Re:    <u>United States v. Kenner and Constantine</u>
              No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

      In accordance with the Court's directive on July 22, 2021, the government respectfully submits this written objection to the unsealing and production of the government's 2020 appraisal of the DCSL Resort. For the reasons discussed herein, the government objects to the unsealing and production of the appraisal because it constitutes privileged work product that was prepared to inform the government's decision whether to pursue forfeiture of the DCSL Resort, and has no relevance to any of the issues in the ancillary proceeding currently before the Court.

      The government's appraisal should not be unsealed because "only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds," and the government's appraisal does not constitute a judicial document. *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017). "In this Circuit, to qualify as a 'judicial document' subject to a presumptive right of public access, 'the item filed must be relevant to the performance of the *judicial* function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (emphasis added). Here, the government's appraisal of the DCSL Resort is not a judicial document because it is not relevant to *the Court's* performance of its function or useful in the judicial process. Before the government obtained its appraisal, the Court performed its mandatory duty of ordering the forfeiture of the DCSL Resort upon finding that the DCSL Resort has the requisite nexus to the defendants' crimes. *See United States v. Kenner*, 443 F. Supp. 3d 354, 362 (March 10, 2020). The appraisal, which is government proprietary work product prepared to inform the *government's* decision whether to pursue forfeiture of the DCSL Resort, has no bearing on *the Court's* determination in the ancillary proceeding as to whether the preliminary order of forfeiture should be amended to recognize any legitimate third-party interests. In the ancillary proceeding, the Court must determine whether any of the third-party petitioners have established standing under 21 U.S.C. § 853(n)(2) by establishing a legal interest in the forfeitable property;

have established Article III standing; have complied with 21 U.S.C. § 853(n)(3)'s pleading requirements; and have established a superior legal interest under 21 U.S.C. § 853(n)(6). *See* Government's Memorandum of Law in Support of its Motion for Summary Judgment, DE 912, at pp. 25-27; *see also United States v. Bailey*, 926 F. Supp. 2d 739, 759-60 (W.D.N.C. 2013). The government's appraisal of the DCSL Resort in no way assists or is relevant to the Court's determination of these issues. As the Court acknowledged, the Court did not make any determination based upon the government's appraisal. *See* Transcript of January 29, 2021 Court Conference at p. 31.

Danske's demand for production of the government's appraisal should be denied because the appraisal is not relevant to the issue of whether Danske is a bona fide purchaser for value that was reasonably without cause to be believe that the DCSL Resort is subject to forfeiture. Danske contends, in support of its demand for production of the appraisal, that if "the government's appraisal valued the Resort Property above Danske's loan," it would contradict the government's assertion "that Danske's millions of dollars in additional loans . . . deplete[d] equity value." Danske July 21, 2021 letter to Court, Docket Entry ("DE") 1085, at p. 2. However, Danske's argument is unavailing. The government's assertion pertains to the period of time from 2009, when Danske obtained the loan, up until 2015, when the government commenced the forfeiture proceeding. By contrast, the government's appraisal values the property as of 2020, five years thereafter. Specifically, the government asserts that the DCSL Resort had a sizable value when Danske acquired the loan in 2009, and throughout the course of its lending relationship until the commencement of the forfeiture proceeding, which is why Danske continued its lending relationship with the DCSL Resort despite the Resort's apparent inability to pay down the overall debt. To be sure, Danske wanted the debt to increase exponentially and consume the equity in the very valuable property so that Danske could receive a windfall in the end. *See*, *e.g.*, Government's Memorandum of Law in Support of Its Motion for Summary Judgment and in Opposition to Danske's Motion for Summary Judgment, DE 912, at p. 46-47 ("Indeed, Danske established what was essentially a subprime mortgage with the DCSL Resort that would inure to Danske's benefit upon the DCSL Resort's inevitable default on the loan, or, as it turned out, the forfeiture of the DCSL Resort. . . Danske's continued 'lending' of money to the DCSL Resort despite the numerous red flags, and charging exorbitant interest, fees, and penalties, destroyed the value of the victims' ownership interest in the DCSL Resort while Danske stood to heavily profit."); *id.* n.19 (quoting U.S. Senator Christopher Dodd (D-Connecticut), Chairman of the Senate Committee on Banking, Housing, and Urban Affairs, as stating at a March 22, 2007 Committee hearing on "Mortgage Market Turmoil: Causes and Consequences" that "The subprime market has been dominated in recent years by hybrid ARMs, loans with fixed rates for 2 years that adjust upwards every 6 months thereafter. These adjustments are so steep that many borrowers cannot afford to make the payments and are forced to refinance, at great cost, sell the house, or default on the loan. No loan should force a borrower into this kind of devil's dilemma. *These loans are made on the basis of the value of the property, not the ability of the borrower to repay.* This is the fundamental definition of predatory lending.") (emphasis added).

In other words, the government asserts, if Danske had foreclosed at the time it acquired the loan from Lehman, or at any point *prior to the commencement of the forfeiture proceeding*, there would have been substantial equity in the DCSL Resort, but Danske intentionally chose to allow its debt to rapidly accrue and consume the equity. *See, e.g.*, Government's December 7,

2020 Letter to Court, DE 966, at p. 14 ("Indeed, the government questions why Danske did not pursue a foreclosure action years prior to the filing of the Bill of Particulars, and raised the subject of a foreclosure only in 2020, especially considering that the DCSL Resort has been in default since Danske acquired the loan in 2009. As mentioned, Danske has not loaned any new money to the DCSL Resort since April 2014, but rather for the past 6 years has allowed the DCSL Resort to pay down the Facility C revolving loan and then re-borrow the same funds. If Danske had foreclosed in 2009, or even in 2014 -- when it stopped lending new money -- instead of allowing the DCSL Resort to repeatedly borrow on the revolving loan instead of applying the funds to pay down the principal and interest on Facilities A and B, then the principal and interest owed to Danske would have been substantially less and there would have been equity remaining in the DCSL Resort.").

Thus, any relevant appraisals -- *i.e.*, the appraisals that shed light on the issue of whether Danske is a bona fide purchaser for value that was reasonably without cause to be believe that the DCSL Resort is subject to forfeiture -- are the appraisals that presumably were (and still ought to be) in Danske's possession when it made its repeated decisions to continue the lending relationship with the DCSL Resort and enter into the additional loans rather than foreclose. Indeed, throughout the course of this litigation, the government has relied on certain appraisals Danske obtained during Danske's lengthy lending relationship prior to the commencement of the forfeiture proceeding, *i.e.*, 2009 through 2015. For example, in the government's December 7, 2020 letter to the Court, the government pointed out that "the appraisal Danske obtained in 2014 indicates that if Danske had foreclosed in 2014 after if it stopped lending new money, Danske would have fully recovered on its debt, which at that time was $146,500,000, and there would have been between $135.5 million and $244.5 million in equity remaining in the property." *See id.* It is indisputable that the government's 2020 appraisal -- which Danske has never seen -- had no bearing on Danske's decisions over the course of the lending relationship.

To the extent Danske is curious about the Resort's current value, Danske should obtain its own appraisal. As the Court acknowledged during the conference held on July 22, 2021, the government's appraisal is now more than one year old and thus would not provide evidence of the current value of the Resort.[1] *See* Transcript of July 22, 2021 Conference at p. 10. Significantly, under the loan agreements, Danske is entitled to obtain annual appraisals of the DCSL Resort, and even more frequent appraisals upon an Event of Default -- which Events of Default, as the government has argued, occurred throughout the course of the loan -- with the expense for such appraisals being reimbursed by the DCSL Resort. Presumably, therefore, Danske should have its own appraisals upon which to rely. If, however, Danske did not regularly obtain appraisals of the DCSL Resort as contemplated by the loan agreements, that would provide further support for the government's argument that Danske did not perform its due diligence and was not engaging in arm's length transactions with Ken Jowdy and the DCSL Resort.

---

[1] Notably, the United States paid a significant sum for the appraisal and should not be required to confer a benefit on Danske by giving Danske the report for free. In addition, the government's appraisal is copyrighted by the appraiser and, by the appraisal's own terms, may only be used by the intended recipients, *i.e.*, the United States Marshals Office, the United States Department of Justice, and Colliers International, which is a government contractor.

      In the event the Court were to determine that the government must disclose its appraisal, the government requests that such disclosure be done subject to a confidentiality order limiting the production of the appraisal to only Danske for the limited purpose of defending its claim, and requiring, *inter alia*, Danske to file any appraisal-related information under seal.

      Respectfully submitted,

      JACQUELYN M. KASULIS
      Acting United States Attorney

By:   /s/ Madeline O'Connor
      Madeline O'Connor
      Diane C. Leonardo
      Assistant U.S. Attorneys
      (631) 715-7870
      (631) 715-7854

cc:  All counsel of record by ECF