| No. | Government Request | Status as of August 9, 2021 | Danske's Position (June 14, 2021 letter, DE 1065 & DE 1065-1) | Government's Position as of August 9, 2021 |
|---|---|---|---|---|
| 1. | Trimont Invoices to support the transactions of $6,297,406 included in the Initial Loan of $107,538,328. | Danske stands on what it produced. | Danske represented that it has produced all documents that are, without being unduly burdensome, within its records and stands on those documents. | Danske has the burden of proof. If it is willing to rely solely on the documentation it has produced, if any, then the Court will determine whether Danske has produced documents sufficient to meet its burden of proof as to this claimed amount. |
| 2. | Complete draw request packages for the sample of 20 draw requests identified in Table 1 [] containing the documents required to be provided as identified in Section 11.1 of the loan agreements, entitled "Documents to be Furnished for Each Disbursement," which should include, but is not limited to:  (a) All invoices, contracts or other information that support that the DCSL Resort incurred all costs included in the draw | Danske will produce responsive records/documents by August 9th. | Danske will produce 10 draw packages of the government's choice along with 10 funding memoranda.  The government also requested 20 Delvin reports (exclusive of the 3 that Danske has already produced) and will identify which reports it wants.  Danske will evaluate the burden of locating the 20 reports once the government provides its listing of dates. | Danske indicated that it would produce 10 draw packages of the government's choice along with 10 funding memoranda and 10 Delvin reports. Danske further indicated that it would consider producing an additional 10 Delvin reports.  Danske's June 14, 2021 letter, DE 1065, accurately represents what was agreed upon by Danske and the government regarding the Delvin reports.  *See* Danske's letter, DE 1065, at p. 1 ("In response to Request No. 2, Danske will produce 10 sample draw packages, 10 Delvin reports (in addition to the 3 Danske has already produced), and 10 funding |

1

| | | | | |
|---|---|---|---|---|
| | request; (b) Paid receipts or other proof of payment of all construction and development costs; (c) Complete funding memos for the disbursements; (d) Any and all correspondence, status reports and documents prepared according to such servicing agreements for the draw requests; (e) All required construction documents as identified in the Loan Agreements under Article VIII, Section 8.1, Replacement Facility C - Required Construction Documents, and under Article IX, Section 9.2, Construction Budget- Replacement Facility C, for each disbursement and/or loan advance; and (f) M. Delvin & Associates reports and supporting work papers pertaining to the disbursements. | | | memoranda. Danske will also consider, depending on the burden, whether it can produce 10 additional Delvin reports."). |
| 3. | Documentation and correspondence pertaining to any agreements and/or | **Disputed**: Danske will provide a representation that there are no such | Danske will provide a representation that there are no such agreements | The government disputes Danske's premise that the commission agreement is the only |

2

| | | | |
|---|---|---|---|
| | proposed agreements in which Danske would be conferring a, direct or indirect, personal or financial benefit on Kenneth Jowdy ("Jowdy"), individually, or seeking to confer a, direct or indirect, personal or financial benefit on Jowdy, individually, including, but not limited to, any agreements between Danske and Jowdy/the Borrower in which Danske agreed to pay Jowdy for Jowdy's services from Danske's own funds, and Danske's proposed settlement agreements that would permit Jowdy to purchase the DCSL Resort in a forfeiture related sale. | agreements other than the commission agreement, which the government has, but otherwise objects to the document request. | other than the commission agreement, which the government has. The government requested any and all communications between Danske regarding the commission agreement. Danske's position is that any communications are irrelevant and unduly burdensome. Searching Danske's records of any and all communication would require Danske to gather data and would also need to comply with U.K and E.U. privacy laws. | responsive document. The government is aware of and brought to Danske's attention at least one additional proposed agreement in which Danske sought to confer a substantial financial benefit on Legacy Properties, LLC, which is wholly owned by Jowdy.<br><br>The government disagrees with Danske's contention that producing communications limited to these agreements is unduly burdensome and irrelevant.<br><br>Counsel for Danske asked the government to provide a list of dates when the government may have met with Venable and been presented with proposals in which Jowdy would purchase or otherwise benefit from a sale of the Resort Property. The government provided Danske with the list of dates on June 25, 2021. In response, Danske told the government on July 21, 2021 that they will not search the dates provided for documents because the government provided dates for "all" of the meetings between the government and Danske. However, the list of dates, *i.e.*, |

| | | | | |
|---|---|---|---|---|
| | | | | October-December 2015; April 2016; December 2016; June 2017; and September-October 2017, is not so sizeable that it would be unduly burdensome for Danske to conduct a search based on those dates.<br><br>In addition, Danske has not identified which purported U.K. and E.U. privacy laws would affect Danske's collection of data or prevent Danske from complying with its discovery obligations in this matter. To the extent there are valid privacy laws, the parties may enter into a confidentiality agreement.<br><br>The discovery the government seeks is relevant to whether Danske and Jowdy engaged in an arm's length relationship. |
| 4. | Documentation addressing the loan repayments and allocation of funds to the different loan facilities. | Danske stands on what it produced. | Danske represented that it produced documentation setting forth the allocation of funds received for payments of principal and interest on the various loans. The government represented it would go | During the June 14th meet and confer phone call, the government told Danske that its expert would need documentation showing which loan facility each payment was intended to pay down and how much of each payment amount was meant for payment of |

| | | | back to its expert to ascertain any specific additional documents it requires. Once the government provides any such list, Danske will review and consider the request. | principal, interest, and fees. The government's expert suggested that something like a loan payment stub would provide the requested information. While the Trimont Summary Statements for each loan facility show how the loan payments were allocated, the Trimont Summaries do not cover the entire loan period. Additionally, the Trimont Summary Statements do not reconcile with the Trimont Account Statements or the Danske Statements, which causes the government's expert to question their credibility. The issues and discrepancies regarding Danske's and Trimont's records are detailed in the government consultant's original and supplemental affidavits. *See* Declaration of Kellie Fedkenheuer, DE 911, at pp. 2-12; Declaration of Kellie Fedkenheuer, DE 937-1, at pp. 4-11.<br><br>Danske stated that it will not be providing any other documentation in response to this request. |
|---|---|---|---|---|
| 5. | Documentation identifying the procedures, | Danske will produce by August 12th an explanation | Danske agreed to inquire further as to any relevant | The government agrees with Danske's representation regarding |

| | | | | |
|---|---|---|---|---|
| | policies, and practices of Danske, and its officers, employees or owners, for receiving, soliciting, preparing, reviewing, approving or denying loans or client relationships. | of the policy that applied to the loan. | policies as to the Resort Property. To the extent Danske is unable to find such a policy, Danske will generally explain the policy that applied to this loan. | the outcome of the meet and confers as to this discovery request. |
| 6. | Documentation or information available to or within the knowledge of Danske concerning the conduct or assets of Jowdy, his associates, relatives, representatives, and related entities. | Request withdrawn. | This request has been withdrawn by the government. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 7. | Documentation pertaining to any agreements and guarantees between Danske and any and all Jowdy-related entities, including, but not limited to, Legacy Cabo, LLC, Legacy Properties, LLC, KAJ Holdings LLC and Silverpeak. | **Disputed**: Danske will produce by August 12th a representation regarding what agreements, if any, Danske has/had with Jowdy-related entities. However, if there are agreements between Danske and a Jowdy-related entity other than the commission agreement, and the 2014 Subordination Agreement to which the government directed Danske's attention, then the government wants | Danske will provide a representation that there are no such agreements other than the commission agreement, which the government has. There are no agreements/guarantees with Legacy Properties, LLC, or Silverpeak. Danske otherwise stands on its objections. | Subsequent to Danske's filing of its June 14, 2021 letter, the government determined that Danske was mistaken because there was at least one additional agreement between Danske and a Jowdy-related entity, i.e., a 2014 Subordination Agreement with Legacy Properties.

Danske's failure to recall or mention the 2014 Subordination Agreement demonstrates the need for Danske to engage in a thorough search for and production of the requested |

| | | | | |
|---|---|---|---|---|
| | | Danske to identify and produce such other agreements. | | documents. The discovery the government seeks is relevant to whether Danske and Jowdy engaged in an arm's length relationship. |
| 8. | Documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability or inability to meet its loan obligations to Danske and/or Lehman. | **Disputed**: Danske will provide by August 12th an explanation of the process by which accrued interest would be capitalized, a citation to the specific provision of the loan agreement(s) allowing for such a process, and an explanation for why this information was not reflected on Danske's loan statements, but objects to producing the requested documentation. | Danske stands on its objections and also represents that it has produced the only notice of default (dated January 2020) that exists. | This discovery directly relates to the issues of whether Danske engaged in arm's length transactions with Jowdy and the DCSL Resort and whether Danske is a bona fide purchaser for value for the additional loans.<br><br>The government disputes Danske's premise that the Borrower was not in default prior to September 2019. The records Danske previously produced demonstrate that the Borrower was in default at the time Danske acquired the loan from Lehman. *See* Credit Application attached under seal as Exhibit A-1 to Government's June 29, 2021 Letter to Court, DE 1075-1 (discussing DCSL Resort's default and Danske's option of foreclosing in 2009 or at some point in the future). Furthermore, the Borrower continued to default on the loan by failing to make required interest payments. The loan documents impose a number |

| | | | | of requirements upon the Borrower -- including, but not limited to, the Borrower's obligation to make interest payments -- and provide that the Borrower's violation of any of these requirements constitutes a default. It is undisputed that from 2009 through 2012, the Borrower failed to make required interest payments totaling at least $13 million, and Danske capitalized the interest. Thus, the Borrower's failure to make each required interest payment was an event of default that occurred prior to September 2019. Further, Danske's records contain no indication that the DCSL Resort cured any of the defaults. Notably, Danske's claim also includes $6,516,433 in closing costs, modification fees, and other miscellaneous fees charged by Danske for entering into the Additional Loan agreements with the Borrower, which fees Danske seeks for extending the maturity date(s) on a loan that had been in default since Danske acquired it. Further, Danske had no obligation to continue lending funds to the |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | Borrower because the loan agreements expressly provided that Danske could withhold further disbursements of funds upon the occurrence of a default.<br><br>Thus, this discovery is relevant to whether Danske had a non-arm's length relationship in which Jowdy would permit Danske to systematically deplete the equity in the DCSL Resort through modified loan agreements that increased the DCSL Resort's debt without Danske having to advance any new funds, while Danske in return: (1) made no effort to determine that the loan funds were being used for their intended purpose for the benefit of the DCSL Resort and not for Jowdy personally, or for other entities controlled by Jowdy; (2) did not seek foreclosure or require the Borrower to pay down the principal and interest on the debt rather than re-borrow on the revolving loan; and (3) promised to pay a substantial sum to Jowdy upon the sale of the DCSL Resort through the commission agreement and/or other agreements. |

| | | | | |
|---|---|---|---|---|
| 9. | Documentation, agreements, and correspondence between, Danske and Jowdy and/or the Borrower and/or the Trustee, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL Resort and/or Equity Interests; (b) foreclosure or forfeiture on the DCSL Resort loan in Mexico or in the United States; (c) bankruptcy or insolvency proceedings concerning the DCSL Resort or the Equity Interests in either Mexico or the United States; and (d) Jowdy's direct or indirect management of the DCSL Resort during and/or after the instant criminal case. | **Disputed**: Danske objects to producing the requested documentation. | Danske represented that the only agreements it has entered into involving Mr. Jowdy are the underlying loan agreements in which Mr. Jowdy is a member of the borrower and manager as well as the commission agreement. Further, that any communications regarding foreclosed would be related to either communications regarding this proceeding, including communications with the government whereby foreclosure would be part of an agreed to interlocutory sale.<br><br>The government represented that its request is limited to Jowdy's direct future ownership interest in the Resort Property, meaning not as a member of the borrower. Danske has provided the government with all agreements between Danske and Mr. Jowdy. | This discovery request seeks particularized and limited information, and thus is not overly broad or unduly burdensome. The government seeks information about whether Danske and Jowdy were in a non-arm's length relationship, *i.e.*, information about Jowdy's future ownership and/or equity interest in the DCSL Resort, rather than present ownership and/or equity interest. The government's sub-requests seek information about foreclosure, forfeiture, bankruptcy, and insolvency, which will yield information about whether Danske and Jowdy had an arrangement in which Danske allowed the loan balance, including interest, to increase, while Jowdy rarely made payments to reduce the balance of the debt, to the detriment of the DCSL Resort. *See* government's position as to Request No. 8. Danske itself indicated that it had been considering pursuing foreclosure and forced bankruptcy proceedings. *See* Government's Letter filed June 7, 2021, DE 1058, at pp. 3-6; *see also* Credit Application attached under seal as Exhibit A-1 to Government's June |

| | | | Danske stands on its objections. | 29, 2021 Letter to Court, DE 1075-1 (discussing DCSL Resort's default and option of foreclosing in 2009 or at some point in the future). |
|---|---|---|---|---|
| | | | | In a June 25, 2021 email to Danske, the government brought to Danske's attention the 2009 credit application that reflects a default by the borrower in 2009 and discusses the possibility of Danske pursuing foreclosure in 2009. The 2009 credit application also discusses the possibility of Danske pursuing a foreclosure in the future. In addition, the government brought to Danske's attention a November 2, 2015 letter Danske sent Ken Jowdy notifying him that the Borrower was in breach of a sales performance covenant, namely, that the Actual Product Sales for September 30, 2015 failed to exceed 85% of the Projected Product Sales for that period, and stating that failure to cure the breach within 30 days would be deemed an Event of Default under the Loan. Per the government's consultants, the financial records do not indicate that the breach was |

11

| | | | | |
|---|---|---|---|---|
| | | | | cured, and, thus, the Borrower defaulted on the Loan. The government provided these examples to demonstrate that there were at least two occasions when Danske acknowledged that Jowdy/the Borrower was not performing to the standards required by the loan, that the loan was in default and/or that Danske had considered pursuing a foreclosure outside of the forfeiture proceeding. These are the types of documents that the government seeks in discovery because they are relevant to Danske's decision making when entering into the additional loan agreements with the Resort.<br><br>The discovery the government seeks regarding Jowdy's management of the DCSL Resort during or after the criminal case will reveal the nature of Danske's relationship with Jowdy and whether Danske maintained an arm's length relationship with Jowdy. |
| 10. | Documentation regarding the due diligence performed by Danske regarding the entering into | Danske will produce responsive | Danske will investigate whether there are additional diligence | The government agrees with Danske's representation regarding the outcome of the meet and |

| | | | | |
|---|---|---|---|---|
| | loan agreements and/or modifications with the Borrower, including deliverables, obligations, and the satisfaction of conditions by DCSL Mexico as required under all extensions, modifications, facility increases, advances and amendments to the Loan Documents. | records/documents by August 9th. | checklists/ summaries for the loan modifications. | confers as to this discovery request. |
| 11. | Danske's internal correspondence and documents regarding its decision to continue lending, documentation regarding the DCSL Resort's defaults, and documentation regarding Danske's decisions pertaining to foreclosure. | **Disputed:** Danske will produce by August 12th a statement regarding when interest was paid across all three facilities, but objects to producing the requested documentation. | Danske stands on its objections. Communications regarding Danske's decision to continue lending would call for Danske to gather and run searches through every communication, including email regarding the Resort Property. | The government incorporates by reference its position regarding Requests 8 and 9. |
| 12. | Danske's non-privileged settlement proposals, settlement materials, notes of meetings with the government, and emails | Withdrawn unless Danske seeks discovery on the issue of equitable estoppel. | Danske does not possess such information and otherwise stands on its objections. The government has indicated that it will provide | |

| # | Request | Danske Response | Danske Further Response | Government Position |
|---|---|---|---|---|
| | regarding its bona fide purchaser for value status. | | additional detail to the extent it has it. | |
| 13. | Documentation showing the amount and calculation of Danske's claimed default interest. | Danske will produce responsive records/documents by August 9th. | Danske will provide an updated calculation. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 14. | Notices of default of the DCSL Resort loan, and any and all documentation that notices of default were sent to the Borrower and/or Trustee of the Mexican trust. | **Disputed:** Danske objects to producing the requested documentation. | Danske has produced the only notice of default that exists. Danske otherwise stands on its objections. | The government incorporates by reference its position regarding Requests 8 and 9. |
| 15. | Documentation or an explanation for why Danske did not account for capitalized interest until April 2013 even though interest began accruing in March 2009 after the DCSL Resort first failed to make required interest payments. | Danske will provide by August 12th an explanation of the process by which accrued interest would be capitalized, a citation to the specific provision of the loan agreement(s) allowing for such a process, and an explanation for why this information was not reflected on Danske's loan statements. | As discussed during the parties' meet and confer, Danske will explain the process by which accrued interest would be capitalized, provide a citation to the specific provision of the loan agreement(s) allowing for such a process, and why this information was not reflected on Danske's loan statements. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 16. | Loan statements for Facilities A and B dating after February 28, 2020, | Danske will produce responsive | Danske will produce updated loan statements. | The government agrees with Danske's representation regarding the outcome of the meet and |

| | | | | |
|---|---|---|---|---|
| | and Facility C loan statements dating after January 1, 2020, to support Danske's claim for costs incurred after those respective dates. | records/documents by August 9th. | | confers as to this discovery request. |
| 17. | Documentation or an explanation as to why $3,020,424 of interest payments included in Trimont's Invoices were not included in Danske's bank statements. | Danske will provide by August 12th an explanation for the differences between Trimont's invoices and Danske's loan statements. | Danske will explain the difference between Trimont's invoices and Danske's loan statements. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 18. | Documentation or explanation for the notable inconsistencies between the various Trimont documents provided by Danske, as well as the discrepancies between the Danske loan statements and the Trimont Invoices. | Danske will provide by August 12th an explanation for the differences between Trimont's invoices and Danske's loan statements. | Danske will explain the difference between Trimont's invoices and Danske's loan statements in a letter. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 19. | Documentation for the at least $6,516,433 in claimed miscellaneous fees and closings costs. | Danske will produce by August 9th a spreadsheet listing the fees charged. Since it is unclear to the government whether the spreadsheet will provide a sufficient explanation for the charges, the government reserves its | The government will ask its consultant what is needed to document these fees, *i.e.*, whether a spreadsheet would suffice or other information is needed. Once the government has that information, Danske will | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |

15

| | | right to revisit this discovery request, if necessary. | evaluate whether it can agree to provide the information requested. | |
|---|---|---|---|---|
| 20. | All reports furnished by the Borrower to Danske pursuant to the Loan Agreements, Section 13.5, Reporting Covenants, including, but not limited to: Section 13.5(a) Weekly Reports, Section 13.5(b) Monthly Reports, Section 13.5(c) Quarterly Reports, and Section 13.5(d) Annual Reports. | Agreed to revisit at a later date. | Danske stands on its objections. The parties have agreed to leave this request open and to revisit after the government has had an opportunity to review the documents Danske produces in response to Request No. 2. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |
| 21. | Documentation to support Danske's assertion that the increase in the PPF reflected Danske's view of how the risk profile of the DCSL Loan had changed as a result of Danske advancing additional funding. | Danske will provide by August 12th an explanation for why an increase in lending increased the risk profile of the loan such that Danske sought an increase of $5 million to PPF. | Danske will provide the government with an explanation of why an increase in lending increased the risk profile of the loan such that Danske sought an increase of $5 million to PPF. | The government agrees with Danske's representation regarding the outcome of the meet and confers as to this discovery request. |