# EXHIBIT A



VENABLE LLP

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
**T** 202.344.4000   **F** 202.344.8300   www.Venable.com

George Kostolampros

**T** 202.344.4426
**F** 202.344.8300
gkostolampros@venable.com

August 6, 2021

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

Re:   **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

We write in response to the government's July 29, 2021 letter wherein the government refuses to produce its commissioned 2020 appraisal of the Resort Property and also propose a schedule for completing discovery and supplemental submissions for Danske's motion for summary judgment.

1. **The Government's Baseless Refusal to Produce its Appraisal that Likely Shows that Danske's Lending Contributed Significant Value to the Resort Property and the Government's Consistent Misrepresentation and Misunderstanding of Commercial Realities.**

The government's letter is filled with falsities regarding Danske's additional loans—which the government's own consultant recognized amounted to Danske advancing nearly $100 million. The government's letter is yet another example of the government either purposefully misrepresenting the facts and/or simply not understanding them at all.

To begin with, the government claims that the 2020 appraisal is not relevant to the value of the Resort Property because the government's assertions regarding Danske's additional loans only relate to 2009 to 2015. The government goes on to claim that Danske has not loaned any new monies since April 2014. **To be clear, while Danske last agreed to advance additional funds under revolving replacement Facility C in April 2014, Danske advanced at least $60 million from Facility C from 2014 through 2019. During a November 2015 meeting, the government warned Danske that if it were to exercise its remedy of foreclosure, the government would consider that a violation of the protective order. Following that warning, Danske had no choice but to continue funding to avoid being accused of exercising a remedy (cessation of**



The Honorable Joseph F. Bianco
August 6, 2021
Page 2

**funding) that would have a similar effect of foreclosure.**  The government makes its outrageous and misleading claim while ignoring that each time Danske allowed Facility C to revolve—i.e., be withdrawn—these were **new monies Danske advanced**.  These new sums of money ensured the continued development of the Resort Property—and the continued enhancement of value that, Danske expects, is reflected in the government's appraisal.  The government's own consultant found that Danske advanced the following additional monies under the two then-revolving loan facilities that total the following—

| Facility B | Facility C | Total |
|---|---|---|
| $19,141, 342 | $77,494,995 | $96,636,337 advanced by Danske |

Of the $96.6 million that the government's consultant determined Danske advanced, the borrower repaid principal in the following amounts as to each of those two loan facilities—

| Description | Facility B | Facility C | Total |
|---|---|---|---|
| Principal Repaid | $2,678,391 | $74,314,884 | $76,993,275 Principal Repaid to Danske |

The government's own consultant's conclusions show that Danske advanced nearly $100 million of its own funds for the development of the Resort Property and the Borrower repaid the majority of those amounts—nearly $77 million.[1]  The government claims that these repayments should have been used to pay down Facility A, but even if those amounts went to repay Facility A, the effect would have been that the Borrower would not have had access to the then-revolving credit facilities as to finance the development of the Resort Property and simply would never have been able to make those repayments.  Specifically, the principal payments made under Facilities B and C were made using proceeds from sales generated by the development financed by the revolving facilities.  In 2009, when Danske acquired the Lehman loan, the Resort Property was not generating any revenue because the land had not yet been developed or improved to the point to produce sales.  For instance, there was no lagoon and there were zero timeshares or private home built or available to be sold.  It was only with the amounts Danske loaned that those resort improvements and others were built (and revenue was generated) that made the Resort Property what it is today.

The government's outrageous and baseless claim that Danske chose to loan additional funds in 2009, instead of foreclosing on the property, so that Danske could deplete the equity makes no practical sense.  The government offers no facts that could support such an outrageous

---

[1]  Danske disputes the government's consultant's numbers, and Danske's inclusion of these numbers in this letter should not be interpreted as reflecting that Danske agrees with or concedes that these numbers or the government's consultant's methodology are correct.



The Honorable Joseph F. Bianco
August 6, 2021
Page 3

assertion. What is clear is the government does not understand the commercial real estate market. The absurdity of the government's argument is perhaps best epitomized by the government's resort to quoting Senator Christopher Dodd's statement in 2007 regarding predatory lending relating to *residential mortgages*. March 22, 2007 Senate Committee on Banking, Housing, and Urban Affairs, S. Hr'g 110-909, Mortgage Market Turmoil: Causes and Conditions (addressing subprime lending to, among others, elderly and low-income people, loosening lending standards, and use of adjusted rate mortgages for housing). The era of these predatory lending practices in the residential real estate market predates Danske's involvement with the Resort Property, and in all events have no applicability to the commercial real estate market notwithstanding the government's refusal to recognize that simple fact. The government does not understand, and apparently does not want to understand, that without Danske funding the Resort Property since 2009, the Resort Property would have gone bankrupt leaving no equity value. The government's contention that Danske could have foreclosed when it initially acquired the Lehman loan based on internal appraisals of the property can only be ascribed to a complete failure to either understand or accept basic facts. Appraisals of property are based on assumptions—and they do not necessarily equate to what the property could actually sell for given the then market for similar properties and whether those assumptions are applicable. The government blindly ignores that in 2008, when Danske acquired the loan—which was when Lehman went bankrupt—the real estate market worldwide had imploded.

The government asserts that, if Danske had foreclosed on the Resort Property in 2009 or "at any time prior to the commencement of the forfeiture proceeding," the Resort Property would have fetched well in excess of what Danske was then owed. Specifically, that means the government is asserting that in 2009 there would have been a buyer that would have paid far more than $107 million (plus the exit fee that Lehman had been owed) in a foreclosure sale for a piece of dirt in the desert that had 9 holes of an unfinished golf course on it and no other improvements that would generate any revenue. This is consistent with the preposterous and misguided arguments the Government has made through this entire proceeding. The government offers zero evidence that a foreclosure sale would have resulted in a buyer paying that amount for the undeveloped property. Moreover, the Government turns a blind eye to the fact that in that exact time frame, economies all over the world were suffering a severe financial crisis—what would come to be known as the Global Financial Crisis—and capital markets were virtually frozen. A foreclosure sale during the financial crisis and its aftermath would have yielded *significantly less* than what was owed. As just one example, in early 2009—right around the time Danske formalized its relationship with the Borrower—a bankruptcy sale of a resort property in Port St. Lucie yielded only $10.9 million, almost $40 million less than just the cost of building the clubhouse at the resort. Geraldine Fabrikant, *It's Tee Time. Where is Everybody?*, May 23, 2009 N.Y. Times, *available at* https://www.nytimes.com/2009/05/24/business/24golf.html?ref=golf (describing additional resorts that filed for bankruptcy during the period of distress); *see also* Toby Tobin, *Ginn's Tesoro Club Chapter 7 Bankruptcy Sale Closes*, March 31, 2009 GoToby.com, *available at* http://www.gotoby.com/news/article/659/Ginn's-Tesoro-Club-Chapter-7-Bankruptcy-Sale-Closes.



The Honorable Joseph F. Bianco
August 6, 2021
Page 4

The government also contends that if Danske had foreclosed in 2014, Danske would have recovered the full amount then owed to it (an amount in excess of $145 million) and such foreclosure sale would have yielded up to an additional $244.5 million in sales proceeds payable to the Borrower. This assertion is just as misguided and baseless as its claim that the Resort Property would have yielded sufficient proceeds to pay the entire debt in 2009 during the midst of the once-in-a-generation Global Financial Crisis. The government offers no evidence or reasoning for why a buyer would pay $389.5 million for the Resort Property at a foreclosure sale other than pointing to an appraisal that generated a value that *did not* assume a distressed sale, which is what a foreclosure sale is.

It is striking the government continues to guard its 2020 appraisal and refuses to produce it to Danske and other relevant parties in this proceeding. What is in the appraisal that the government does not want to share with Danske and others? The government's refusal to be transparent is especially striking because Danske has previously provided the government with its own appraisals of the Resort Property. Contrary to the government's argument, the value of the Resort Property as set forth in the government's 2020 appraisal goes to the heart of the government's claims. If the government's appraisal shows a value of $200 million—or above— that is evidence directly contradicting the government's baseless claims regarding Danske's lending.

In sum, there is absolutely no reason why the appraisal should not be produced. The government's arguments are meritless and the appraisal should be produced. Danske will agree to keep it confidential and, to the extent Danske uses any portion of the appraisal, it will do so under seal.

## 2. **Proposed Scheduling Order Completing Discovery By October 8, 2021 and Supplemental Submissions Later in October.**

We have informed the government that Mr. Delvin is available for a deposition on the first week of October 2021 and we understand Mr. Jowdy is also available that week for a deposition. The government, however, has informed counsel for Mr. Jowdy that it seeks to take Mr. Jowdy's deposition several weeks after Mr. Delvin's deposition. There is no reason Mr. Jowdy's deposition should not take place the same week as Mr. Delvin's—just as the Court recognized during the last hearing. July 22, 2021 Hr'g Tr. At 17 ("I don't see any reason why Mr. Jowdy's deposition can't be completed by around the same time [as the Delvin deposition in early October]"). Thus, we propose that the Court set the following schedule—

- Mr. Jowdy's and Mr. Delvin's depositions to be completed by October 8, 2021;

- Supplemental summary judgment submissions due on or before October 22, 2021;



The Honorable Joseph F. Bianco
August 6, 2021
Page 5

- Replies to the Supplemental summary judgment submissions due on or before October 29, 2021; and

- Court Hearing on the Supplemental summary judgment submissions on November 9, 2021.

* * * * *

We thank the Court for its time and attention to this matter.


Respectfully,


/s/ George Kostolampros
George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn


cc:    All parties of record via ECF