FILED
CLERK

8:49 am, Sep 07, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,      *      Case No. 13-CR-607(JFB)
                               *
                               *      Long Island Federal
                               *       Courthouse
                               *      814 Federal Plaza
        v.                     *      Central Islip, NY  11222
                               *
PHILLIP A. KENNER,             *      August 13, 2021
                               *
              Defendant.       *
                               *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

    TRANSCRIPT OF CIVIL CAUSE FOR SENTENCING AND RESTITUTIONS
          BEFORE VISITING JUDGE JOSEPH F. BIANCO

APPEARANCES:

For the Government:            MATTHEW HAGGANS, ESQ.
                               United States Attorney's
                                Office
                               Eastern District of New York
                               610 Federal Plaza, 5th Floor
                               Central Islip, NY  11722

For the Defendants:            MATTHEW W. BRISSENDEN, ESQ.
                               Matthew W. Birssenden PC
                               666 Old Country Road, St 501
                               Garden City, NY  11530-2004

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 9:13 a.m.)

2          THE CLERK:  Criminal cause for sentencing and

3     restitutions in 13-CR-607, The United States of America against

4     Phillip Kenner.

5          Counsel, please state your appearances for the

6     record, starting with the government.

7          MR. HAGGANS:  Good morning, Your Honor.  Matthew

8     Haggans for the United States.

9          THE COURT:  Good morning, Mr. Haggans.

10          MR. KENNER:  Good morning, Your Honor.  It's Phil

11     Kenner here, and standby counsel, Matthew Brissenden, has

12     joined us.

13          THE COURT:  Yes.  Good morning, Mr. Kenner and Good

14     morning Mr. Brissenden.

15          MR. BRISSENDEN:  Good morning, Your Honor.

16          THE COURT:  The purpose of this conference when I

17     initially set it was I had realized after I imposed the

18     restitution that when I pronounced the restitution order and

19     listed all the amounts and the individuals, that although I had

20     ruled that Mr. Rizzy and Mr. Hughes should receive restitution

21     in the amounts of $66,666.67, I had failed to put that ruling

22     when I -- in the order, oral order, when I went through all the

23     individuals.  So that's why I set this up.

24          And then the government did submit a letter also

25     advising the Court that the math on the total amount was

3

1    incorrect for the reasons that Mr. Haggans explained in the

2    letter.

3            So the purpose is to simply correct what was a

4    clerical error and a mathematical error on my part, and a

5    mathematical error on the government's part as to the total

6    amount.  You know, there's no substantive changes that the

7    court is making at this juncture.

8            I did receive, Mr. Kenner, your two submissions since

9    our last conference.  I did want to speak to two things in your

10   submissions, including the one from yesterday.  I don't want

11   you to think that the Court is blaming you for what happened

12   last week with respect to the mix up, with respect to the

13   conference and whether it was audio or video.

14           I read your recitation of the events and your

15   interactions with everyone at the MDC, and you know, I accept -

16   - I accept that.  I don't want you to think that I was mad at

17   you or that somehow I'm blaming you for what happened there.

18   There clearly was a miscommunication in arranging it and I'm

19   not blaming that miscommunication on you in any way, and I'm

20   sorry that you got sort of the runaround last Friday.

21           But in any event, there was no harm.  We're here

22   today.  It's actually better because that was going to be on

23   audio and now we're on video.  So I'm just going to confirm,

24   Mr. Kenner, that you're agreeable to proceed by way of video

25   today?

4

1        MR. KENNER:  Yes, Your Honor.  Thank you for checking

2   with me and for the dissertation about the -- my submission.

3        THE COURT:  Yeah.  And the other thing is -- you

4   mention this in both submissions, and I said at the time that

5   it wasn't a criticism.

6        I just want to emphasize to you, when I told you that

7   -- to try to focus as it related to potential down the line

8   making a motion for some type of offset.  That's not a

9   criticism of your submission.

10       I believe I've complimented you many times on, you

11  know, the thoroughness of your submissions and the hard work

12  that you put in, into them.  So I don't want you to -- that --

13  it was just simply my effort to remind you that at this point,

14  I've already sentenced you.  The only thing on the table that

15  relates to you before your case goes up on appeal is

16  restitution.

17       And so, when you submit these things and got talking

18  about other things, those aren't before me now.  You know, this

19  was the last piece before you can appeal your case, but I

20  didn't -- I don't want you to think that that was, you know,

21  unfair criticism in any way.  I was just sort of reminding you

22  what stage we're at at this point in the case.  Okay?

23       MR. KENNER:  I appreciate -- I appreciate the clarity

24  on that (indiscernible), Your Honor.

25       THE COURT:  All right.  So let me just formally -- if

5

1     anyone -- the government wants to add anything before I

2     formally do what I intended to do, and then I'll see if there's

3     any outstanding issues, Mr. Haggans.

4                MR. HAGGANS:  No, Your Honor.  And just for the

5     record, the government is also amenable to proceed by video

6     conference today.

7                THE COURT:  Yeah, I'm sorry.  I should have asked you

8     too.

9                All right.  So with respect to the -- my clerical

10    error -- and I also, I didn't want to -- Mr. Kenner, did

11    (indiscernible) submissions as you did when I made these

12    rulings with respect to Mr. Cribitello (ph) and Mr. Hughes and

13    Mr. Rizzy, you know, objected to that -- on a various grounds,

14    and I just wanted to -- I did go back again and look at the

15    records to make sure that I wasn't misremembering or

16    mischaracterizing what the evidence was.  So I do want to just

17    explain that very briefly.

18              But let me just formally deal with the clerical error

19    and mathematical error.

20              So the Court, in its ruling, stated Mr. Hughes,

21    Theodore Hughes, and Robert Rizzy are entitled to 66 -- hold on

22    one second.  $66,666.67 in restitution.

23              Each -- the Court made that clear in its rulings.  I

24    hereby modify my oral pronouncement of the restitution order to

25    conform with my rulings.  I'm not going to repeat all the other

6

1    amounts.  Obviously, all the other amounts and names remain the

2    same.

3            I do want to note, when I looked at the transcript,

4    it was indicating inaudible for John Kaiser, I believe.  The

5    transcript said inaudible for the amount, but I just clarify

6    again that I stated at that time, and I state again, that the

7    amount for John Kaiser is $1,080,000, which does include some

8    interest that had been agreed upon between him and Mr. Kenner,

9    which I found credible and I'll address interest overall in a

10   moment.  So I just wanted to make that clear as well.

11           And the total amount is -- as indicated in the

12   government's letter, and I checked the math, $16,223,121.82 is

13   the total amount of the restitution order.  The court already

14   set the schedule of the restitution payments and that continues

15   to be the same.

16           So what I'm going to ask the government to do is to

17   just submit this chart as modified -- you know, this chart as a

18   separate document so that I can attach it.  I'd rather not

19   attach a letter to the judgment.  There better be just a chart.

20   But I did want to just -- these don't relate to the amounts,

21   but I just wanted -- I noticed it says Hawaii for Kaiser,

22   Hughes, and Rizzy.

23           Mr. Haggans.

24           MR. HAGGANS:  Yes.

25           THE COURT:  It says Eufora.

7

1          MR. HAGGANS:  I'm sorry.  I look -- if Your Honor

2     will just give me one moment?

3          THE COURT:  You don't really have to put the schemes

4     in the restitution order, but this is the way the chart is so

5     it's fine, but I just want to make sure it's accurate.

6          (Pause)

7          MR. HAGGANS:  I think Your Honor is correct that

8     those should specify Eufora.

9          THE COURT:  Yes.  And also Turner Stevenson.  It says

10    GSF, GSF twice.  One of those should be Hawaii.  The amounts

11    are correct, but --

12         MR. HAGGANS:  Yes, Your Honor.  I apologize.

13         THE COURT:  All right.  Those are the only --

14         MR. HAGGANS:  And shall I correct those in the -- I

15    guess the Court would probably prefer a Word version or an

16    Excel version of this chart.

17         THE COURT:  I don't think it matters, but it could be

18    a PDF, it could be anything, because I think we're just going

19    to attach it to the judgment as a rider, so I'm just going to

20    print it out and attach it.  But if you could make those

21    changes and then submit it just as a chart.  Okay?

22         MR. HAGGANS:  I will -- I will do so, Your Honor.

23         THE COURT:  On ECF, obviously.  I will also note, Mr.

24    Brissenden, if you could file Mr. Kenner's submission from

25    yesterday.  I understand why you emailed it because of the time

1    constraints, but if you could file that on ECF on his behalf?

2         And Mr. Kenner requested that certain -- a certain

3    portion of it be put under seal, and I'm going to grant that.

4    Just let me explain why.  It relates to allegations that he's

5    making with respect to conduct in Mexico and other places that

6    he doesn't want to be public, and it doesn't effect -- again,

7    it's not material to what the Court is considering now and I

8    want to honor his concern, so I'm going to let that part be

9    under seal.

10        But as I warned you -- not warned you.  Mr. Kenner,

11   as I noted previously, to the extent something goes under seal

12   and the government doesn't see it, the government has to be

13   able to respond to anything that the Court is going to

14   consider.  But because, again, I don't think it's relevant to

15   what the Court is doing now, I'm going to just put it under

16   seal because I don't want you to worry about it.  Okay?

17             MR. BRISSENDEN:  Your Honor, to be clear, I did file

18   the entire submission under seal as opposed to trying to just

19   file the one exhibit under seal, so it has been filed under

20   seal, and I also emailed a full copy of it to the government.

21             If the Court would like me to refile it with only a

22   certain portion under seal, I can certainly do that.  Just for

23   the sake of simplicity, I filed the entire document and all of

24   it --

25             THE COURT:  Oh, okay.

9

1          MR. BRISSENDEN:  -- under seal.

2          THE COURT:  Oh, that's fine.  Yeah, I would like you

3     to file the portion that Mr. Kenner wanted to be public,

4     publically, and just the remainder under seal.  And I'm glad

5     that the whole thing went over to the government.  That's

6     helpful.

7          All right.  I didn't realize that.  I thought it was

8     ex-parte and under seal, but it's helpful the government saw it

9     at least.  Okay?

10          Okay?  Mr. Kenner, is that okay with you?

11          MR. KENNER:  Yes, and there were -- and I think Mr.

12     Brissenden knew there were two exhibits.

13          THE COURT:  Right.  Two text messages, right?

14          MR. KENNER:  Yes.  One was, I believe, in bubble

15     format --

16          THE COURT:  Right.

17          MR. KENNER:  -- and one was a reprint of a forward --

18          THE COURT:  Right.  I saw that.  I think they were

19     partially redacted, though, just -- right?  Or the whole -- it

20     was the whole thing or -- you want the whole thing under seal?

21          MR. KENNER:  Those two exhibits under seal, and then

22     just the highlighted portion at the very end --

23          THE COURT:  Right.

24          MR. KENNER:  -- Your Honor.

25          THE COURT:  Okay.  That's fine.

10

1          MR. BRISSENDEN:  I can do that.

2          THE COURT:  All right.  And then, I do want to make

3    clear -- I don't know if I made it clear two weeks ago, but I'm

4    not imposing any interest with respect to the restitution

5    order, other than the interest that's already included in the

6    restitution amount that's by agreement -- because that's

7    discretionary on the Court's part, and given obviously the

8    large amount of the restitution order, forfeiture order and Mr.

9    Kenner's current financial circumstances, I don't think

10   interest on top of that is warranted.

11          I would also note, to the extent that the Court --

12   the amount -- some of the amounts have -- the court -- for

13   restitution purposes weren't part of the sentencing loss

14   calculation, I just want to make clear that my view is -- first

15   of all, none of this would have affected the sentence in any

16   way, in any manner, but to the extent that the Court realizes

17   that there should be restitution to certain victims, I don't

18   think the law precludes a court from, you know, recognizing

19   those restitution amounts, even though they were not part of

20   the guidelines loss calculation.  I just wanted to make that

21   clear.  All right?

22          I'd also -- some of these things were not brought to

23   my attention during Mr. Constantine's sentencing, but -- to the

24   extent they related to him.  But again, I don't think that

25   precludes the Court from doing what I think is warranted based

11

1     upon credible evidence by a preponderance standard in the

2     record at this juncture.

3          The two issues that I want to just cite to the record

4     on that Mr. Kenner (indiscernible) but I just wanted to --

5     these are ones I went back and double checked.  His position

6     was that Mr. Kaiser never testified as to some separate

7     investment that he made in Eufora beyond the money that was

8     invested on behalf of the Kaiser, Hughes, and Rizzy.

9          So I went back to the trial testimony, again which

10    I'm crediting over Mr. Kenner's objection, but the -- on page

11    1050, it's abundantly clear he's talking about two different

12    investments.  And on pages 1015 and 1016 of the transcript of

13    the -- he's talking about how at the end of 2007, he was asked

14    how much he invested in Eufora.  He said, I believe a couple

15    hundred thousand dollars.  He later said 275, but for the

16    benefit of the doubt I guess is the 200,000 as opposed to 275.

17         But he was asked where did that come from, and he

18    said it was money from a bill that he -- that he had recently

19    done for Mr. Kenner that was owed to him from Hermosa Beach.

20         On transcript page 1058 to 1060, actually that was

21    again discussed and the -- during Mr. Laruso's cross, pages

22    1238 to 1239, he again said it was money that Mr. Kenner owed

23    him.  It was not wired, unlike the later money.  And page 1240

24    again, he made clear that this was different from the -- in

25    2009, that the money that Mr. Hughes, Mr. Rizzy, and Mr. Kaiser

12

1    invested through Mr. Kaiser, was in a different time frame, in

2    a different way.  So I do believe that that is supported by the

3    credible evidence in the record.  And understanding, obviously

4    Mr. Kenner disagrees.

5          Similarly, with respect to Mr. Privatello (ph), and

6    again -- just to go back to the -- Mr. Kenner made the point in

7    his submission that he didn't deal personally -- he didn't deal

8    personally with them, but the law is clear, he was part of a

9    conspiracy to defraud, which I conclude and the jury concluded

10   that Mr. Kenner was.

11         The fact that he did not personally deal with a

12   particular victim does not mean that they cannot be included as

13   part of the, you know, the reasonably foreseeable conduct of

14   co-conspirators in the scheme for purposes of liability, for

15   purposes of sentencing, and for purposes of restitution.  So I

16   don't think that that's a bar to restitution.  I know that's

17   not a bar to restitution, and I believe the evidence supports

18   that he was in this conspiracy with Mr. Constantine.

19         And that is similar to Mr. Privatello.  Mr.

20   Privatello did say -- and this is at pages 1429 through 1432 --

21   that Mr. Kenner told him about Eufora and the patents, told him

22   about Constantine.  And then I think this was (indiscernible)

23   at page 12 -- 1488.  He said what Mr. Kenner told him was

24   validation that it was a good company, that the patent

25   (indiscernible).

13

1          So again, even though he was acquitted, with respect

2     to the particular transactions, I believe Mr. Kenner was in the

3     conspiracy with Mr. Constantine long before that.  As I noted

4     last week, or two weeks ago, Mr. Garn (ph) -- his conduct with

5     respect to Mr. Garn and diverting money for his own purposes

6     from Eufora for long before that.

7          So he knew when he was steering people to Mr.

8     Constantine that there was fraud going on with respect to

9     Eufora.  So therefore, I believe, like Mr. Constantine, he's

10    responsible for restitution to Mr. Privatello jointly and

11    separately.

12         So again -- and again, Mr. Kenner obviously disputes

13    that and that is preserved for purposes of appeal.

14         Excuse me one second.  I just have my list here.  I

15    don't think I have anything else that I didn't cover.  I'll

16    again just advise you this -- I do want to address the

17    compassionate release in a moment once I finish with the

18    sentencing, but again, Mr. Kenner, just in an abundance of

19    caution, I'm going to advise you of your right to appeal again.

20         You have a statutory right to appeal your conviction

21    and sentence.  If you're not able to pay the cost of appeal,

22    you can apply for leave to appeal in forma pauperis.  If you

23    cannot afford an attorney and you want an attorney, one will be

24    appointed to represent you and the notice of appeal must be

25    filed within 14 days of the judgment or conviction.  It might

1    take a couple weeks for me to do the judgment, to file it, but

2    you have 14 days from the filing of that judgment.

3           And Mr. Brissenden might want to complement in his

4    assistance to you as you requested it -- will assist you in

5    that regard because that's obviously difficult to do when

6    you're incarcerated.

7           All right.  Before I -- before I get to the

8    compassionate release, is there anything the government -- is

9    there anything else I need to add from the government's

10   standpoint?

11          MR. HAGGANS:  Nothing to add, Your Honor.  Just two

12   items I would like to clarify on the record with the Court's

13   permission.

14          The first, with the Court's ruling on interest, I

15   just want -- I want to make -- my understanding, the Court is

16   not imposing prejudgment interest except to the extent as one

17   of the award amounts already recited and the Court is not

18   imposing any post-judgment interest.

19          THE COURT:  Yes.  Yes.

20          MR. HAGGANS:  Okay.

21          THE COURT:  And also I should note, in not doing

22   that, the -- you know, obviously this -- another reason this

23   proceeding has gone on for so long and it's just an

24   extraordinary matter of interest then I don't want, you know,

25   Mr. Kenner to have to bear that just because the proceeding

1    ended up taking so long for various reasons that were out of

2    his control.  All right?

3            MR. HAGGANS:  Understood.  Understood, Your Honor.

4    The only other matter --

5            THE COURT:  But that (indiscernible) recharacterize

6    my ruling, is the bottom line.

7            MR. HAGGANS:  Okay.  The only other matter I just

8    wanted to note, the government did receive that submission that

9    was discussed earlier with -- thanks to Mr. Brissenden, which

10   it appears Mr. Kenner prepared on his computer, and the

11   government did have an opportunity to review that.  I had it at

12   today's proceeding.

13           THE COURT:  Great.

14           MR. HAGGANS:  Thank you.

15           THE COURT:  And also, Mr. Kenner, you did get the

16   government's letter, right, of August 4th, obviously?

17           MR. KENNER:  Yes.

18           THE COURT:  With the chart?

19           MR. KENNER:  Yes.

20           THE COURT:  I know -- I know you didn't have it last

21   week, but that was another good reason why I think we were --

22   we put it off.

23           That was you, Mr. Brissenden, huh?

24           MR. BRISSENDEN:  It was me.  I'm sorry.

25   (Indiscernible) my phone.

16

1          THE COURT:  That's fine.  I just saw Mr. Haggans --

2     your phone almost came out of the -- his hand, but that's okay.

3     These things happen.

4          All right.  Mr. Kenner, is there anything else before

5     I address the compassionate release briefly that you want to

6     address with the Court?

7          MR. KENNER:  No, thank you, Your Honor.

8          THE COURT:  All right.  And on the compassionate

9     release, I'm going to just briefly orally rule on it because

10    I'm not sure -- as I think I indicated, it's not sure to --

11    clear me jurisdictionally as to notice of appeal were filed and

12    I hadn't ruled on it, you know, what -- what parameters I would

13    have for making such rulings.

14          I think that the best thing to do is to orally rule

15    on it briefly here, and I'll issue a written order

16    memorializing it.  But I'm denying the motion for compassionate

17    release.  My brief reasons are as follows.

18          First, I don't believe that Mr. Kenner has

19    demonstrated extraordinary circumstances warranting his release

20    under the compassionate release statute.  He essentially, if I

21    were to broadly categorize them, puts them into two categories.

22          One is the conditions and treatment at the MDC, which

23    he categorizes in his motion and in numerous submissions to the

24    Court prior to that, including his solitary confinement for a

25    period of time.

1        The other reason relates to his views regarding the

2   trial and the evidence and problems with the government's

3   evidence and exculpatory material with respect to the

4   government's evidence.

5        Dealing with the first category, and again, I've been

6   in -- finding that these are not extraordinary circumstances

7   warranting his release, I understand the conditions that have

8   plagued the MDC over time, including electricity outage, but I

9   do not believe that they rise to the level of extraordinary and

10  compelling circumstances warranting Mr. Kenner's release.

11       Nor do the COVID issues as they currently stand,

12  warrant such a finding by the Court.  Similarly, the -- to the

13  extent Mr. Kenner is arguing for his compassionate release

14  based upon the sufficiency of the government's evidence *and/or*

15  alleged reporting violations or new evidence, again, I deny his

16  motion for a new trial.

17       I don't believe that anything he has submitted has

18  altered -- I know that it has not altered the Court's

19  conclusions with regard to his, you know, his motion for a new

20  trial that was filed several years ago.

21       You know, the government argues that that's not

22  really even a grounds for compassionate release, but even --

23  I'll assume arguendo that it could be a grounds for

24  compassionate release, and I don't believe it provides a basis.

25  I don't believe it's meritorious.

18

1          The Court, in any event, as the government pointed

2     out in its opposition, even if there were extraordinary

3     circumstances of some type, I don't believe the other 3553A

4     factors would warrant Mr. Kenner's release.  I only sentenced

5     him six months ago.

6          I balanced all the factors in great detail, and a

7     release now would not adequately address the various factors

8     that the Court pointed to in imposing the sentence and the

9     length of the sentence, including the harm done, the nature of

10    the crime, the need for a deterrent.  I won't repeat all of

11    them, but those factors all remain six months later, and he

12    obviously has substantial amount of time left to serve on the

13    sentence.

14         So even if there were extraordinary circumstances, I

15    don't believe release would be warranted because of the other

16    sentencing factors that the Court alluded to or described,

17    which all continue to apply today.

18         So that's the reasons for the Court's denial.  With

19    respect to the conditions in the MDC, my hope, Mr. Kenner,

20    obviously is that once the judgment is in, you'll be designated

21    to another facility where hopefully you won't have some of the

22    problems that you've been having over the many years at the

23    MDC.  But actually, I don't -- I have a copy of the transcript,

24    but I didn't go back and check.  Did -- was there a

25    recommendation or a request as to designation?

19

1      I don't know.  Mr. Kenner, did you make a request?

2          MR. KENNER:  I did not, Your Honor.

3          THE COURT:  Do you want to do that?  I'm happy to put

4   in a recommendation for either a geographical area of the

5   country or a particular facility.  They're not necessarily

6   going to honor it, but I guess it can't hurt.

7          MR. KENNER:  Your Honor, if I do, I'll write to you.

8   I'll send a letter.

9          THE COURT:  All right.  Yeah, you can put that in a

10  letter.  As I said, I think the judgment -- I usually would put

11  it in the judgment, so I think the judgment's probably going to

12  take at least two weeks to -- so you have about two weeks to --

13  you can talk to Mr. Brissenden.  Based upon his representation

14  of other clients, he may have some thoughts, you know, about

15  where you might want to request consistent -- you know, some

16  (indiscernible) want to be in a certain location for family

17  visits.

18          So you can consider those things, and if you want me

19  to make a recommendation, I'm willing to do that.  My view is,

20  obviously, my view is defendants have to serve the time, but it

21  doesn't really matter to me where they sever it, although it's

22  up to the Bureau of Prisons ultimately, consistent with their

23  security classifications and other issues, to do what they're

24  going to do.  All right?

25          MR. BRISSENDEN:  Thank you for that, Your Honor.  If

20

1     I could just ask, perhaps just to make two points on the

2     compassionate release ruling --

3               THE COURT:  Sure.

4               MR. BRISSENDEN:  -- just so it's on the record?

5               THE COURT:  Yes.

6               MR. BRISSENDEN:  A portion of the submission, the

7     original submission, I think it was ECF 1006, was really asking

8     for some consideration post October 5 sentencing date for the

9     141 days of solitary -- straight solitary confinement because I

10    thought that it would be unusual that the Court would have

11    expected such an extended period of time under those draconian

12    circumstances.

13              That's what I was looking primarily for, and I think

14    I addressed that early on in the motion, as opposed to a full

15    compassionate release.

16              And I think I even suggest that I wasn't necessarily

17    seeking a full compassionate release to the street like many

18    have receive -- over 2,000 have received in the system so far.

19    But really, just consideration for the first 141 days of being

20    in solitary confinement is not foreseeable by the Court when

21    you grant -- when you levied the first sentence.

22              And then second, just a technical matter.  Just

23    wanted to make sure that it was on the record that that first

24    sentencing was actually 10 months ago, not six months ago.  The

25    October date.  So, I know time seems to just flip away, but --

1              THE COURT:  Yeah.

2              MR. BRISSENDEN:  -- and I'm sure it was just an

3      inadvertent statement.  I just wanted to put it on the record,

4      it was actually 10 months ago that --

5              THE COURT:  All right.

6              MR. BRISSENDEN:  -- that (indiscernible).

7              THE COURT:  Yeah, thank you for clarifying that.  And

8      on the first point, I would just say, just so you don't -- you

9      know, obviously I'm not projecting exactly what's going to

10     happen to a defendant at the time of sentencing in terms of

11     whether they're going to be in solitary confinement or not, but

12     I can tell you that even if I knew that at the time of the

13     sentencing, I would not have lowered your sentence any further

14     because I did -- as the government noted and you know, I did

15     include that in my decision in terms of what the amount should

16     be, and, you know, essentially lowered the sentence because of

17     what you have faced in the MDC and I don't -- I wouldn't have

18     lowered it further based upon -- and again, I'm not belittling

19     or discounting what solitary confinement is like, but that

20     reduction was not intended to be like a one-for-one, you know,

21     every day, working out what the conditions might be, an overall

22     reduction just based upon conditions generally, and I don't --

23     again, it has to be balanced against the other factors, so I

24     don't want you to think I would have reduced it further if I

25     had known that.  All right?

1            MR. BRISSENDEN:  All right.

2            THE COURT:  I understand your point.  All right.

3   Anything else, Mr. Kenner?

4            MR. KENNER:  No, Your Honor.

5            THE COURT:  All right.

6            MR. KENNER:  Other than I'd just like to thank the

7   Court for, again, having a video conference and making it

8   possible so we could continue to push this to the conclusion.

9            THE COURT:  Sure.  And I'm glad it was video.  As

10  I've told you, I prefer -- well, I prefer in-person, but I

11  understand why you don't want that.  I'm fine with that.  Video

12  is much better than audio.  So it was good to complete the case

13  in this manner.

14            All right.  Thank you very much, everybody.  Have a

15  good day.

16            MR. HAGGANS:  Thank you.

17       (Proceedings concluded at 9:42 a.m.)

18

19

20

21

22

23

24            I, CHRISTINE FIORE, court-approved transcriber and

25  certified electronic reporter and transcriber, certify that the

23

1    foregoing is a correct transcript from the official electronic

2    sound recording of the proceedings in the above-entitled

3    matter.

4

5

6    _____      _____      September

7    6,    *Christine Fiore*    2021

8         Christine Fiore

9           Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24