October 5, 2021

The Honorable Judge Bianco
U.S. District Court – EDNY
100 Federal Plaza
Central Islip, NY 11722

Re: **Motion to alter the Northern Trust settlement amounts**

Your Honor:

Following the last restitution video conference, the court offered Kenner to re-submit evidence regarding restitution calculations (specifically for Nolan, Berard, and Peca) related to independent Northern Trust legal settlements; effecting the net investment amounts that were a starting point for gross investments in the Hawaii project.

A second issue – related to John Kaiser's *non-investment* in Eufora is also addressed, *infra*.

Kaiser's Eufora tomfoolery:
All previous empirical-records, submitted to the court, confirmed **Kaiser was never owed money** – as he testified – from either of his California (*Tr.1042*) or Hawaii (*Tr.1413-14*) real estate transactions.  Kaiser's allowed perjury was the proffered basis for Counts 2-3-4 (*Tr.1020-21*) – and Kaiser's host of fabricated testimonies about a phantom Eufora transaction (of some meandering amount, determined perhaps via *catch-as-catch-can* logic -- *infra*).

Not only was Kaiser fully repaid expeditiously form both real estate transactions (per Rule 16 production records) – but in 5,000-plus texts between Kenner and Kaiser between 2007 and 2013 (in Rule 16 production); Kaiser *never once* asked Kenner for *any* investment funds back.   It is simply not believable for someone who testified Kenner "*ruined*" his life (*Tr.1089*)—with the known falsity regurgitated by the prosecution during summation (*Tr.5753*).   The facts (vis-à-vis empirical Rule 16 records) proved unequivocally the opposite (totaling millions of theft by Kaiser and Berard *from Kenner*):

(1) Kaiser and Berard robbed Arizona's Arizona real estate project thru fraudulent documents they jointly submitted to Maricopa County, Arizona.   An Arizona 2015 civil proceeding ruled their transaction, stealing the property from Kenner,

1

was a "*fraudulent transfer*" of title (*ECF No. 901-43, ¶57*), while contemporaneously being caught *with Lanie Donlan* for lying about more forgeries in the Arizona transactions to support over $500,000 of additional funds they endeavored to steal from 5 signed Promissory note lenders -- Interveners: Ranford, Sydor, Khristich, Nash and Lehtinen.

Kaiser and Berard lost on all counts at the 2015 trial – even attempting to blame *all* their forgeries/thefts on Kenner.   Galioto was alerted to Kaiser and Berard's attempted thefts in 2014 by Arizona attorney Baker (*ECF No. 901-2*: the exposé email concealed by Galioto – a.k.a. another *Brady* violation).   Galioto turned a blind eye to three of his star-witnesses' criminality.   Galioto needed Donlan, Kaiser, and Berard in the EDNY – even after re-confirming the forgery hoaxes with Donlan in 2014: the triumvirate's complicit Arizona forgery lies (*ECF No. 901-4*).   Their assistance to Galioto allowed them to *steal over one million dollars from Kenner* due to Kenner's EDNY detention: forced to drop the ProSe Arizona case versus Berard and Kaiser; and concurrently

(2) Kaiser and Berard robbed Kenner's real estate LLC (LedBetter) in Sag Harbor, NY by <u>fabricating</u> and <u>forging</u> a LedBetter operating agreement.  The government was aware of it pretrial (*ECF No. 901-26*); opposite the real agreement they admitted during trial (*GX-703*: intro'd *at Tr.672*) – allowing them to steal more and more from Kenner unchecked.

Both of Kenner's ProSe lawsuits versus Berard and Kaiser (re: Arizona and Sag Harbor properties) were forced into termination with Kenner's timely 2013 EDNY detention, and them as the government's two confidential informants (as identified during bail hearings).

Despite the egregious thefts from Kenner (under Galioto's prevue), and with government/Kaiser integrity in tatters, the court ordered Kaiser a $200,000 Eufora investor for restitution based on his ambiguous but telling testimony (*Tr.1015*):

>   *Q. When did you agree to invest in Eufora?*
>
>   *A [Kaiser]: At that time period, the end of '07.*
>
>   *Q. Do you remember how much you invested in Eufora?*
>
>   *A [Kaiser]: I believe it was a couple hundred thousand dollars.*

The court should recall that at side bar – AUSA Michiewicz vouched Kaiser was unaware until *after-the-fact*, in contrast to Kaiser's alleged "*agree[ment]*" to invest in Eufora, *supra* (because it was fabricated and they couldn't get all their lies straight: a mounting Herculean task).   Note – Kaiser had already testified to his contradicting version of the Eufora investment fabrication 20-minutes earlier – before Michiewicz dumped (*Tr.1052*):

> [MR. MISKIEWICZ]: "*I expect that the witness will say that, subsequently, whenever the topic of additional funding came up, one of the things that Mr. Kenner told him was that he had invested in his behalf approximately 200 -- over $200,000, I think $275,000 in Eufora; and that was in or about 2007. That predated Mr. Kaiser's knowing wire transfer, which happened later in 2008.*"

Later in cross-examination – Kaiser claimed his California investment-plus-profit was "*approximately $3 million*" (*Tr.1238*) – instead of the reality (**totaling $1,896,750**).   The actual amount was **repaid in full** by May 2008.    Stipulated banking records in evidence confirmed it. [1]

The repayments to Kaiser included $1,165,000 repaid via direct transfers in the first 5-weeks – post-California closing. [2]   The transfers were obviously a lot more than

---

[1] Kenner's Rule 33 (*ECF No. 416 – exhibit R33 B*: submitted on disc by counsel Pittell 11-28-2016) contained the accounting of Kaiser's full $1,896,750 California repayments (and then future loans to Kaiser) -- as well as every Rule 16 generated bank records that corroborated

[2] Transfers totaling $665,000 were wired by Kenner to Kaiser from Kenner's personal Wells Fargo account (in Rule 16 production)…after the 11-2-2007 sale of the Hermosa Beach, CA home.  All at Kaiser's instructions.   The following funds were deposited into Kaiser's Wells Fargo bank account: #5333 55 ~~xxxx~~ (in Rule 16 production):

- 11-2-07 from Kenner personal - **$100,000 Wells Fargo**
- 11-5-07 from Kenner personal - **$100,000 Wells Fargo**
- 11-5-07 from Kenner personal (to AMAZON TIMBER FRAMES for Kaiser) - **$40,000**
- 11-9-07 from Kenner personal - **$100,000 Wells Fargo**
- 11-21-07 from Kenner personal - **$100,000**
- 12-4-07 from Kenner personal (to Dain Rauscher account per Kaiser)- **$110,000**
- 1-7-08 from Kenner personal - **$15,000**
- 1-14-08 from Kenner personal - **$1,100**
- 1-15-08 from Kenner personal - **98,900**; and…

On 12-7-2007 -- another $500,000 was transferred per Kaiser's request to his Mexico investment partner, Robert Gaudet Kaiser's Mexico Frailes-investment – **totaling $1,165,000** – far exceeding "*$300,000*"; all within 5-weeks.

"*$300,000*" for starters (*Tr.1020* [AUSA]; *Tr.1042*[Kaiser]) – and the government knew it. They let Kaiser perjure himself again, as follows:

> *Q. I believe you testified Mr. Kenner owed you some money, approximately $275,000, and you were told that that money was being invested in Eufora; is that correct?*
>
> *A [Kaiser]: No. I said he owed me approximately $3 million and that he was investing $275,000.*
>
> *Q. In Eufora?*
>
> *A [Kaiser]: That's correct.*
>
> *Q. And when were you told that your $275,000 was going to be invested in Eufora?*
>
> ***A [Kaiser]: After it was invested.***

Kaiser actually changed his Eufora investment amount two times – with varying incredibleness; neither equaling the $200,000 the government claimed Kaiser invested somehow (perhaps via magic). Even the court followed Michiewicz' mis-representation as fact; while educing an objectionable response from Kenner's trial counsel and co-defendant's counsel at side bar (*Tr.1053-54*):

> THE COURT: *I think the way to handle this is I think it's okay for him to establish -- I don't think your client is disputing that $275,000 went into Eufora on Mr. Kaiser's behalf, or is he disputing that?*
>
> MR. HALEY: *Oh, I think we are disputing that.*
>
> MR. LaRUSSO: *We are as well, Judge. To let you know that.*

Still, the government continued and ignored it to continue the ruse that Kaiser was owed any money. Kaiser subsequently lied about his friends & family (Privitello, Rizzi, Hughes, Ethel Kaiser) Eufora investment funds being partially his in 2009 (*Tr.1057*). It was conveniently overlooked as well – while Kaiser confessed to the truth (a.k.a. his original perjury) minutes later (*Tr.1058-59*).

4

With the court strung along by the ever-changing buffoonery, Kaiser then alleged $275,000 was contributed for him (*Tr.1057-58*):

> *Q How much was supposedly sent in your name?*
>
> *A [Kaiser]: Approximately $275,000.*

6-years later, the court was steadfast that there was another $200,000 contributed for Kaiser – per some iteration of his testimony – but clearly never substantiated.

Up the Eufora ante…*still* unchecked:
Because the stories diverge routinely from every truth, Kaiser and the government thought another grander representation might help their co-misconduct along. Thus – they allowed Kaiser's Eufora investment to increase 8-fold without blinking an eye (*Tr.1250*):

> *Q. Do you recall in that meeting, sometime in the middle of 2009, that you presented proof of your over $2 million investment in Eufora; is that correct?*
>
> *A [Kaiser]: Yes.*

Both "*$275,000*" and "*$2 million*" were testified by Kaiser and supported by the government to claim he was a victim (despite knowing the truths) – and opposite their actual thievery that every banking record and various "*fraudulent transfer[s]*" of title prove he (and Berard) are (*ECF No. 901-43*) (*ECF No. 901-26*). The court should not forget that although Kaiser testified he sold his Long Island home in 2005 and repaid his friends & family (from the Hawaii money: *Tr.980, 1215*), Kaiser actually verified thru text in July 2011 to Kenner (6-years later) that it was all a lie (*ECF No. 901-43*); identifying his massive friends & family debt just prior to joining Jowdy in Mexico to save his proverbial tochas:

| 12672 | +16312350308 **John Kaiser*** | 7/22/2011 2:17:04 PM(UTC+0) | Read | [Kaiser]: Yes and that is ~~nit~~ [sic] [not] the only money that is owed out, that I have been working everyday to pay back everyone |
| 12674 | +16312350308 **John Kaiser*** | 7/22/2011 2:57:35 PM(UTC+0) | Read | [Kaiser]: 5k month for back taxes on the sale of 87 laurel made 250 k, **100k went to u** [to Kenner for loan repayments], 150 vin [Tesoriero] owes, 3300 a month goes towards cards from Pv [Arizona] Reno, was paying my mother [Ethel], $ 2500 a month for the 1 mil…took from her, left her with no money to live, now paying her $1500 a month, Took 380k from brother Keith, left him |

5



|  |  |  |  | w/shit, we where supposed to send him back money after sale of [Kenner's] little house in mex, u sent me 4k for him, i send him $500 a monyh to live on . . And 4k to 6k to Pv a month . Should I continue ????? It's a fucking joke. And please don't tell me about Mex I am not one of the hockey guys [3] |

The government had constructive possession of Kenner's texts for 2-years pretrial and worked hand-in-hand with Kaiser for 4-years.  None of this is unknown to the government.   It was simply ignored to create turmoil and chaos surrounding Kaiser who had the most to lose (if his friends & family discovered his thefts) and gain (a.k.a. millions of dollars he stole from Kenner if Kenner was indicted first and convicted later).

    Note: In July 2011, Kaiser verified, "*100k went to u*".

How does reality match Kaiser's testimony that he was owed millions by Kenner in 2011 (after 7-years, if you follow Kaiser's timelines) – but Kaiser sent Kenner "*100k*"?    It defies logic and reality – and the banking records of who owed whom money.

The Kaiser Hawaii perjury (to substantiate Counts-2-3-4 [*Tr.1020-21*]—and Kaiser's fabricated Eufora testimony) continued:
Kenner proved with unchallengeable empirical-records in the government's possession since pretrial that Kaiser's "*back pay*" and "*expenses*" testimony was a lie (*Tr.1413-14*).  Kaiser's testimony about his $1 million Hawaii investment being *un-repaid* would fall flat on its proverbial face if the court would simply effectuate two routine items (both of which Kenner previously requested):

---

[3] In July 2011—Kaiser cries: "*And please don't tell me about Mex I am not one of the hockey guys*"; because he had no investment or interest in the Mexico projects.  But—by 2014 (after helping Galioto indict Kenner)—Kaiser and Jowdy, then, produced a few *new* agreements alleging Kaiser owned the largest share of the Cabo Mexico resort since 2006 (*ECF No. 1070-2*) – but suspiciously Kaiser did not tell anyone until after Kenner's arrest – **9-years after they were allegedly signed**.
    Note: Kaiser never participated in the repeated litigation related to the Jowdy Mexico-frauds in the USA or Mexico—because Kaiser never had any standing (perhaps until he helped Galioto and Jowdy's cabal arrest Kenner).

(1) Subpoena Kaiser's 2006 and 2007 IRS tax records to substantiate whether or not Kaiser's "*back pay*" story of *"$195,000"* matches his tax records; [4] and

(2) Demand that Kaiser produce <u>*any*</u> expense records for his alleged $600,000-plus in "*expenses*" he testified he was re-paid as part of the verified August 2006 $816,000 cash transfers, directly to Kaiser's accounts (*ECF No. 1036-22*).  The bank and tax records prove:

   a. There were **zero** Kaiser "*expenses*" due in 2006 -- thus Kaiser's $600,000-plus "*expenses*" testimony was so outrageous that allowing it to stand unchallenged is equally complicit with the Galioto/Kaiser cover-ups; and

   b. The government and Kaiser overlook other comically contrasting testimony that when Kaiser was asked about contributing to the Jowdy loan in 2005 (via Hawaii capital contributions), Kaiser testified he did not have the million, so he went to his friends & family.  The Hawaii bank records prove none of the funds came from Kaiser, personally (despite lying that "*$180,000*" did: *Tr.977*).  Northern Trust bank records in evidence verify that none originated from John Kaiser—because:

      o  $700,000 came from Ethel Kaiser—and

      o  $300,000 from Vincent Tesoriero and Tesoriero's parents (*ECF No. 1036-20*).

*Realistically*: How could it be possible that Kaiser was without money in 2005 – but somehow paid over $600,000 in "*expenses*" during the subsequent calendar year (thru August 2006)?

Peeling back any layer of the government/Kaiser onion reveals egregious perjury from their star witness – debunking all of his alleged loss amounts in Hawaii and Eufora.

As a side note – the court knows that as to materiality, Kenner is entitled to a new trial

---

[4] Kenner knows Kaiser's testimony was perjured – because Kenner possessed Kaiser's 2006 and 2007 tax records after assisting Kaiser with a loan modification for Kaiser's Long Island home.

7

> "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Cromitie*, 727 F.3d at 221-22 (quoting *Agurs*, 427 U.S. at 103) [5]

And…
> "Indeed, if it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'" *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir 1991) (quoting *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir 1975)).

Furthermore the Second Circuit has clearly directed that
> "[D]etermining that a new trial was necessary, because lies of his key witness who 'tied all the pieces together' even as to matters affecting only his credibility, could have caused the jury to reject his entire testimony and eliminate the foundation for conviction."; *United States v. Wallach*, 935 F.2d 445, 457-8 (2d Cir 1991).

At a minimum -- the court should rectify the mis-representation of Kaiser's $200,000 Eufora restitution loss – since there is zero testimony supporting it – albeit mixed-up with *other* amounts the government and Kaiser struggled to keep their lies coordinated like drunken Rockets.   Secondly – an IRS subpoena and expense demands should be ordered in the interest of justice.


Nolan/Peca/Berard Northern Trust settlements:
Effecting Nolan's guideline loss calculations (likewise Berard and Peca), government exhibit (*GX-2133*; intro'd at *Tr.413*) verified Nolan's <u>net</u> settlement resulted in a collateral seizure of: **$1,702,942.08**

Nolan's NY attorney, former U.S. Attorney Ramchorkin, misled the court—and the government played along during the June 30, 2021 restitution hearing (perhaps both out of unchecked habit).  The June 2021 mis-representations led the court to reverse previous government concessions for the same independent offset settlement amounts—and its previous adoption by the court (*ECF No. 1024*).  Nolan's attorney knew the truth, yet immediately agreed with the court once the

---

[5] *United States v. Cromitie*, 727 F.3d 194, 221-22 (2nd Cir 2013) (quoting *United States v. Agurs*, 427 U.S. 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976))

8

delineation of gross investment *versus* net loss was juxtaposed, in error thru government double-talk.

Similar condoned graft:

*Jowdy-Nolan 'settlement' agreement…*
The June 2021 restitution falsehood to the court was commensurate with previous joint mis-representations amongst the government and Nolan's counsel; denying there was a settlement agreement with Jowdy. Kenner flushed out the lie with empirical records that were in government possession (from Rule 16 production). Kenner presented it to the court for corroboration of the truth; simply highlighting a submission by Nolan's counsel…of the exact settlement agreement they denied existed vis-à-vis joint communication (*ECF No. 874-1*).   No consequence for the blatant lie occurred; offering substantiation of double-standards.

Recall, the government originally posited in graft for both parties (*ECF No. 781 at 3*):

> [AUSA Komatireddy]: "*Based upon discussions with Nolan's counsel and counsel for the DCSL parties, it is the government's understanding that no settlement matching Kenner's description exists in 2008 [or] 2009*" (*Tr. 56, I. 17*), "*or at any other time*".

In restitution -- after following the government and Ramchorkin's complicit June 2021 dishonesties – the court applied the mis-represented logic to the Berard (*Tr.3042*) and Peca (*Tr.506*) settlements – despite each of them positively verified thru testimony at trial their respective recovery amounts.   Kenner explained the difference in detail during the June 2021; delineating that Nolan's LOC was still active (at time of settlement) – thus Northern Trust reduced the amount of settlement from its original gross investment amount (per *GX-2133*).

Nolan gross: $2,199,796.02

Nolan settlement: $495,968.67

**Nolan net LOC seizure: $1,702,942.08**

Contrariwise – Berard (*ECF No. 668 at 361-363*) and Peca (*Id. at 67-68*) had agreed to their LOC seizures during oral phone confirmations with Northern Trust bank on

9

April 1, 2009 – after specific text communication with Kenner (a.k.a. fully transparent).

Kenner outlined this previously for the court (*6-30-2021, Restitution H'rg Tr.13-14*).

Contrasting Nolan's situation, Berard and Peca received wire transfers from Northern Trust Bank for the agreed upon settlement amounts – because neither of them had open Northern Trust bank accounts since on or about June 2009.  Simple questioning of Berard and Peca would reveal the government cover-up.  Alternatively – if the government wants to posit under MVRA that the witnesses do not have to participate in the proceedings, the court could issue a subpoena to Northern Trust bank for the two settlement transfer amounts.  **Kenner will be correct again**.   The court should identify the Nolan graft and extend courtesy to determine the proper amounts; as testified by Berard and Peca (also effecting guideline loss calculations).

Note -- The government had to ignore their-own witnesses testimony to deduce their erroneous position.   Kenner was simply agreeing with witness testimony and Rule 16 evidence.   Additionally – the Northern Trust transfer records would corroborate Kenner's position and the Berard/Peca testimonies.   The court should also observe that the Northern Trust settlements are disconnected with any transactions that their LOC clients and Kenner arranged thru fully signed authorizations (*ECF No. 902-3*).

The net amounts should be reinstated to avoid double collection, prohibited by MVRA statute (*ECF No. 1024*).

> Furthermore -- MVRA provides redress to the victims of fraud, but it does not supply a windfall for those who independently enter into a risky financial enterprise thru no fault of fraudsters.  As the Second Circuit clarified in *Archer*, "[i]f a person gives the defendant his money to bet, knowing that the bet might lose, his later loss, for purpose of restitution, is, in this fundamental sense, caused not by the defendant accepting his money but by the outcome of the bet." *United States v. Archer*, 671 F.3d 149, 169 n.13 (2nd Cir 2011).
>
> Nolan and all LOC named persons in the superseding indictment (*ECF No. 214*) were identified by nearly 20 signed documents – per person – from 2003-2009 in the Northern Trust subpoena (*Kenner trial exhibit 210*; intro'd at *Tr.4205-06*) – granting:

10

(1) <u>Signed authorization</u> to access the LOC funds (verified by all at trial (*Tr.387* [*GX2142*] and prior [*ECF No. 112-3 at 38*]) (i.e. Peca);

(2) <u>Disbursement Request & Authorizations</u> annually to identify the amount of their LOCs that had been distributed thru signature date (yet—feigned ignorance by Peca [*Tr.429-430*] without the impeaching Northern Trust evidence available in the courtroom [*ECF No. 668 at 108*]); and all after authorizing their…

(3) <u>Extension of Credit</u> for their "*$1,775,000 – increase to loan used for speculative real estate investments*" (*ECF No. 1036-4 at 5*) (I.e. Peca)

No further authorization was required.  As the court was made aware, the Hawaii By-Laws authorized the specific Jowdy loans (*Tr.4458-59*) (*Kenner trial exhibit 217* intro'd at *Tr.4458,4525; ECF 959-37*) – and Hawaii inside counsel's "*update[s]*" (*ECF No. 959-5; ECF No. 959-6; ECF No. 959-7*) were cross-verified by Hawaii Managing-Member Kaiser to former FBI agent Galioto on October 19, 2010 (*ECF No. 1036-2 at 3: 3500-JK-1-r*).  The "*update[s]*" had been identified by the court as well-documented and known to all Hawaii-Mexico investors (simply ignored by the government to re-frame the ever-changing prosecutorial-fabrications) (*10-5-2020, Sentencing H'rg Tr.57*):

> [Sentencing-court]: "*This has all been in front of me for years…You want to continually read these documents to me that I know, that you have put before me for many years.*"

Note -- Nolan's specific testimony (corroborated by Berard and Peca; independently at trial) eliminates more government *BS* proffer during rebuttal summation that Kenner was "*insane*" (*Tr.5998-99*) to suggest anyone would make a voluntary seizure phone call – prejudicing the proceedings.

Additionally (contradicting their theories), the government also ignored that each LOC client (minus Nolan who kept his account open past April 2009) was required to sign 3-4 independent bank transfer statements with Northern Trust prior to releasing the net of seizure, remaining funds from their collateral accounts (*ECF No. 668 at 331-335* [Rucchin]—and *ECF No. 573 at 193-199* [Sydor/Rucchin]).   Thus – it was logistically impossible for any of them to not know the finite details of their transactions (*Tr.2729-30* [Rucchin]; *Tr.2166-67, 2191* [Sydor]) – &/or to have

11

approved each of them independent of Kenner (regardless of memory loss: "*ridiculous*" or not).

The government failed to argue against mounting irrefutable evidence that debunked their fabricated prosecutorial-theories and resulting restitution.  They simply relied on a tainted verdict that has been repeatedly debunked ad nauseum (Generally see *ECF No. 1006*; specifically *at 25-34* [subset])

The settlements and amounts were unambiguous.

Nolan on direct-examination (*Tr.2074*):

> *Q Was there a settlement eventually with Northern Trust?*
> 
> ***A [Nolan]: Yes.***
> 
> *Q Do you know what was the result of the settlement with Northern Trust?*
> 
> ***A [Nolan]: They gave us 500,000 for settlement, Northern Trust.***
> 
> *Q So they settled with you in the amount of $500,000 and that was applied towards a balance of $2,199,796.02?*
> 
> ***A [Nolan]: Yes, that's correct***

Nolan reiterated his Northern Trust settlement amount during cross-examination (*Tr.2079-80*):

> *THE COURT: Why don't you admit it as Kenner Exhibit 4.* [also GX-2133] *(Whereupon, Defendant's Kenner Exhibit 4 was received in evidence.)*
> 
> *Q As you look at this document, we see 2/13/2012, a special payment 1,702,942.08. Do you see that figure?*
> 
> *A [Nolan]: Yes.*
> 
> *Q And then we see another special adjustment, says special adjustment decrease $495,968.67, do you see that?*
> 
> *A [Nolan]: Yes.*

12

> *Q Do you know the source of this special payment of 1,702,942.08?*
>
> *A [Nolan]: No.*
>
> *Q Are you certain, sir, that Northern Trust did not resolve a dispute with you by making payment as relates to your account to more than $500,000. Do you understand my question?*
>
> *A [Nolan]: Can you repeat it?*
>
> *Q Sure. Are you certain that the resolution that you had with Northern Trust in connection with your account, if that resolution involved only the payment of one adjustment of $500,000 or did it involve a greater adjustment, greater payment, as relates to your Northern Trust account?*
>
> **A [Nolan]: Our settlement was for 500,000.**

Conclusion:

Kenner requested that the court identify the gross settlement amounts for Peca and Berard – based on their admissions of the Northern Trust distributions (opposite Nolan's simple seizure reduction amount) (*ECF No. 1026 at 10-12*).   The request was substantiated by Peca's 2021 victim impact statement that – for the first time – identified receiving their $500,000 Northern Trust settlement net of 35% legal contingency fees.   Kristen Peca wrote to the court in her victim impact statement:

> [Kristen Peca]: "*We reached a confidential settlement, but then had approx. 35% taken out in legal fees*"

The Berard and Peca verified settlements were reversed based on prosecutorial and Nolan's attorney complicit graft – while already verified thru testimony and submissions to this court – by Peca and Berard.  No contrarian evidence was ever presented.  They should be reversed.

Ironically, Jowdy's cabal attorney's received the 35% contingency fees (of at least $400,000) with Galioto's urging to the Northern Trust legal team.   Jowdy's attorneys were same persons who deceived the Hawaii investors with Jowdy—and complicitly stole some portion of the Hawaii investment funds; *infra*.  Galioto further enhanced two-decades of Jowdy's plundering criminality, perhaps for a portion of

13

the 35% fee for his role in strong-arming Northern Trust (but only for those who were cooperating with him versus Kenner).

Galioto had already hidden exculpatory records, covering-up Jowdy's theft of the original Hawaii-loans, known to all and signed-off, as (*ECF No. 1006-1/ECF No. 1006-2*) (*ECF 668 at 117-118, f. 62*):

> "*the gist of the lawsuit is to recover certain monies loaned to Mr. Jowdy from Mr. Kenner, Little Isle 4 and Ula Makika LLC.   Mr. Kenner estimates the total amount of monies loaned to Mr. Jowdy which have not been repaid to be approximately $5,000,000.   This is the estimated principle only, exclusive of accrued interest.  In summary, Mr. Jowdy denies that the monies were loans but rather characterizes them as investments*."

Recall that Kristen Peca exposed Galioto's coercion in her surreptitious 2012-FBI recordings (*ECF No. 788 at 11, f.10—et.al.*):

> [Kristen Peca]: **Matt [Galioto] told Michael and I that you stole all of the Hawaii money and never gave it – the loan money -- to...uhhhh...Jowdy**.
>
> [Kenner]: *Kristen – I have all of the bank records that prove the money went to Jowdy and his accounts at all times.  I told you that already. You told me that you saw the bank records after I sent them to Michael.  You know -- the attorneys who sued Jowdy for the money in Mexico and Arizona and California used them to confirm the loans before we sued?*
>
> [Kristen Peca]: *but – I don't understand why he would say it.*

The court needs no more than one guess as to why...[6]

The court acknowledged the government cover-up from trial and announced it deftly in 2019 (7-years after Kristen Peca's exposé; contradicting government theories), positing (*7-2-2019, H'rg Tr.21*):

---

[6] Lost in the never-ending government morass is that Kristen Peca was not concerned about the actual Jowdy loan – simply concerned that Kenner "*stole all of the Hawaii money and never gave it – the loan money -- to...uhhhh...Jowdy*" – despite it never happened.

14

> [Court]: "...*you know, Mr. Kenner has been pointing out for years and its obvious from the trial that the money – that money went to Mr. Jowdy and his entities*".

The Jowdy loans the District Court addressed have been <u>*at all times*</u>:

(1) Titled to the Hawaii partners (*ECF No. 719 at 24-25: 3500-KJ-2*);

(2) Confessed to by Jowdy to Galioto during Jowdy's March 2010 FBI proffer (*Id. at 11-14*); and

(3) Sued for by over 90% of the Hawaii partners since 2008.

> Note – the Arizona Attorney Baker disclosures were withheld by government in pre-trial (a.k.a. *Brady* issue: *ECF No. 1006-1/ECF No. 1006-2*) to obfuscate the implicit signed-off knowledge of 19 Hawaii-Mexico investors.

Although there is irrefutable pre-trial testimony from <u>*all*</u> involved parties involving the authenticity of the loans (specifically including Jowdy-himself to Galioto in FBI proffer), the government <u>*ignored*</u> all of it and berated Kenner throughout trial claiming Kenner's in-trial testimony of the loans to Jowdy was…"*bogus*" (*Tr.5708 (2x), 5709*), "*phony*" (*Tr.4597, 4598*) and "*supposed*" (*Tr.5707-5708*).

Fortuitously post-trial (comfortably not jeopardizing their tainted conviction with the court) – IRS agent Wayne admitted government-forfeiture-44 (*ECF No. 862-36*)—**verifying the government lied**.

They framed their stolen Hawaii loan narrative at trial (*3-9-2016, Forfeiture H'rg Tr.13-14*) – just like to the Pecas (*supra*) – and embellished it unchecked 5 times during summations including (*Tr.5721*—et.al.):

> [Michiewicz]: *"And what do you find out [about the Jowdy loan]? You find out, what did <u>that 5 million</u> or however much more or less that netted out to be, what did it buy Mr. Kenner? <u>It bought him a 39 percent interest in Ken Jowdy's Cabo San Lucas.</u> Didn't buy the players a 39 percent interest. <u>Him.</u> And if you read it, you will see that Ken Jowdy, himself, is only a 40 percent shareholder in the parent company. Can't get too much closer to being equal partners. To this day, right now, he is a partner in that resort. <u>That's where the money went.</u> <u>That's what it bought him</u>. <u>And on the backs</u>, <u>on the portfolios</u>, <u>of the hockey players</u>."*

15

The government, Galioto, and Wayne knew it was all a lie – but remained unchecked.

As a reminder, IRS Agent Wayne also testified he knew the "stole[n]" Hawaii loan tenders were a lie during trial (*3-9-2016, Forfeiture H'rg Tr.44-45*) (*ECF 1006 at 21-22*):

> *Q: Would you kindly take a look at Page 2 of **Kenner Exhibit F-2**?   The third paragraph.   Does that refresh your recollection as to what Mr. Jowdy told you as to how Philip Kenner acquired his 39 percent interest in Diamante Cabo san Lucas?*
>
> *A [Wayne]: Yes.*
>
> *Q: What is your recollection of that, sir?*
>
> *A [Wayne]: <mark>That Kenner borrowed the money from Jozef Stumpel and Jerry Linton</mark> [sic].*

The court said nothing about the government re-vouching for their fraud –even  3-years later – falsely submitting in their 11-1-2019 sentencing memo (*ECF No. 765 at 8*).   They re-fabricated:

> *"Kenner used approximately $2.4 million to buy a personal stake in property in Mexico."*

Following the government's umpteenth mis-representation -- Kenner's transparency mitigation was acknowledged and ignored sentencing day when the court opined (*10-5-2020, Sentencing H'rg Tr.57*):

> [Sentencing-court]: "*This has all been in front of me for years...You want to continually read these documents to me that I know, that you have put before me for many years.*" [7]

---

[7] The district court acknowledged the transparent knowledge of every Hawaii-Mexico investor who received "*update*" emails (*ECF No. 959-5*; *ECF No. 959-6; ECF No. 959-7*) that Galioto verified with Kaiser during Kaiser's 10-19-2010 FBI-proffer (*ECF No. 1036-2 at 3*) – but allowed the lynchpin government theory that no one knew *what the h\*ll* was going on with their money in a passive-equity investment that followed the authorized Corporate By-Laws, religiously (*Kenner trial exhibit 217*: intro'd at *Tr.4458,4525*; *ECF 959-37*).

16

The court left the restitution errors open for this re-consideration submission. Similar to 10th Circuit Appellate Judge O'Brien's conscientious opinion in the long-overdue *Evans* reversal, opining:

> [Judge O'Brien]: "*The result here may not be heralded as a model of perfect justice, but it will stand as a conscientious application of the law*."; See *United States v. Evans*, 677 Fed. Appx. 469; 2017 U.S. App. LEXIS 1942 (10th Cir 2017) (*Evans II*)

This court should fix the obvious and recalculate restitution -- and the underlying guideline loss calculations in a first step towards justice.


Respectfully submitted,



Phil Kenner, ProSe


---

Clearly – all they had to do was read what was put before them when they signed-off; opposite Kaiser (*Tr.1164*), Berard (*Tr.3157*), Sydor (*Tr.2193*) and others admitted willful blindness to material matters.

17