Case 2:13-cr-00607-JFB-AYS Document 1181 Filed 09/14/23 Page 1 of 13 PageID #: 37149

MANDATE

MANDATE ISSUED ON 09/13/2023

21-2289
*United States v. Kenner*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of July, two thousand twenty-three.

PRESENT: Denny Chin,
Steven J. Menashi,
*Circuit Judges*,
Eric R. Komitee,
*District Judge.*[*]

_____

UNITED STATES OF AMERICA,

    *Appellee*,

v.                                                No. 21-2289

PHILLIP A. KENNER,

    *Defendant-Appellant*.[†]

_____

_____

[*] Judge Eric R. Komitee of the United States District Court for the Eastern District of New York, sitting by designation.

[†] The Clerk of Court is directed to amend the case caption as set forth above.

| | |
|---|---|
| *For Defendant-Appellant*: | MATTHEW W. BRISSENDEN, Law Office of Matthew W. Brissenden, P.C., Garden City, NY. |
| *For Appellee*: | J. MATTHEW HAGGANS, Assistant United States Attorney (Saritha Komatireddy, Assistant United States Attorney, *on the brief*), for Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Bianco, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Phillip Kenner was a financial advisor to professional hockey players and other high-net-worth clients. In the early 2000s, Kenner and associates invested his clients' money and diverted substantial portions of the money for unauthorized purposes. Kenner also persuaded his clients to fund litigation to recover some of the lost money, and he diverted money from that fund too. The government indicted Kenner and a co-defendant on nine counts, including wire fraud and conspiracy to commit money laundering. After a trial, a jury convicted Kenner on six counts.

Kenner now appeals his conviction. He makes five arguments. First, he contends that the district court erred when charging the jury concerning the credibility of interested witnesses. Second, he argues that the government violated his right to due process by allowing a witness to give perjurious testimony. Third, he claims that the government made an inappropriate remark in its summation. Fourth, he suggests that the purported errors at trial, taken together, prejudiced

him. Fifth, he argues that the district court improperly calculated his sentence under the Sentencing Guidelines and erred in calculating the amount of restitution that it ordered him to pay. We affirm the judgment of the district court. We assume the parties' familiarity with the underlying facts and procedural history.

# I

Kenner's first argument is that the district court erred when it charged the jury concerning the credibility of interested witnesses. "A party who objects to any portion of the instructions ... must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). If a party fails to make such an objection, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Kenner concedes that he "did not object to the lower court's instructions concerning the evaluation of testimony from 'interested' witnesses. As such, the instruction is evaluated under the 'plain error' standard." Appellant's Br. 35. Kenner contends that the interested-witness charge was a plain error that prejudiced the outcome of the case and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

The Supreme Court has explained that "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal quotation marks omitted). After satisfying itself of those first three requirements, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (internal quotation marks omitted).

The district court gave the following charge before the jury retired to deliberate:

> In evaluating credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in

3

> some way from the outcome of this case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.
>
> This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness' interest has affected or colored his or her testimony.

App'x 831. After giving this charge, the district court further instructed the jury as follows:

> I am now going to give you an instruction regarding the defendant Kenner's testimony. The defendant in a criminal case never has any duty to testify or come forward with any evidence. This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.
>
> In this case, one of the defendants, Mr. Kenner, did testify and he was subject to cross-examination like any other witness. You should examine and evaluate his testimony just as you would the testimony of any other witness.

*Id.* at 836.

Analogizing this case to *United States v. Solano*, 966 F.3d 184 (2d Cir. 2020), Kenner argues that this instruction constituted reversible error. In *Solano*, we vacated a conviction based on a jury charge about interested witnesses. The district court in that case instructed the jury in the following way:

4

> In evaluating the credibility of the witnesses, you should take into account evidence that the witness who testified may benefit in some way in the outcome of the case. Such an interest in the outcome creates a motive on the part of the witness to testify falsely, may sway the witness to testify in a way that advances his own interest. Therefore, if you find that any witness [whose] testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.
>
> Now, this is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. There are many people who no matter what their interest in the outcome of a case may be would not testify falsely. It is for you to decide based on your own perceptions and common sense to what extent, if at all, the witness's interest has affected or colored his or her testimony.

*Id.* at 192 (quoting the trial transcript) (emphasis and alterations omitted). The district court in *Solano* also told the jury that "[t]he defendant was not obligated to call witnesses on his behalf, nor was he obligated to testify on his behalf. But he was permitted to do so. In this case the defendant decided to testify." *Id.* at 193 (alteration omitted). Still, the district court clarified, "[i]t is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the prosecution throughout the entire trial and never shifts to the defendant. The defendant is never required to prove that he is innocent." *Id.*

The defendant in *Solano* "had not objected to the trial court's jury charge on assessment of the credibility of persons who testified at trial." *Id.* at 193. We therefore reviewed the charge under the plain-error standard, as we do here. Nevertheless, we vacated the defendant's conviction after we determined that the jury charge constituted plain error that affected the defendant's substantial rights.

5

The first two parts of the plain-error test led to the conclusion in *Solano* that the jury charge in that case constituted an error that was plain. Such a charge, we said, eroded the presumption of innocence to which defendants are entitled in our system of criminal justice. *See id.* at 195. Because the defendant has the greatest interest in the outcome of the case, such a charge suggests to the jury that this interest creates a motive to testify falsely. *See id.* The charge in *Solano* was therefore erroneous. And because "the language used by the trial court [there was] virtually identical to that found erroneous in" a prior summary order—*United States v. Munoz*, 765 F. App'x 547 (2d Cir. 2019)—we determined that the error was plain. *Solano*, 966 F.3d at 197.

We then considered whether the error prejudiced the defendant in *Solano* and seriously affected the fairness, integrity, or public reputation of judicial proceedings. It did. In *Solano*, the jury convicted the defendant of conspiracy to distribute and possess with intent to distribute cocaine. The case turned on the defendant's credibility in testifying that he did not know that a container held cocaine and that he never made certain statements to officers. *See id.* at 198. Because "[t]his was ... a credibility case," "we conclude[d] that there [was] a reasonable probability that the motive-to-testify-falsely error prejudicially affected [the defendant's] substantial rights"—an error that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 198-200.

In light of *Munoz* and *Solano*, we conclude that the interested-witness charge in this case constituted an error that was plain. The charge was substantially similar to the charge we held to be erroneous in *Solano*. In fact, the instruction to the jury to "examine and evaluate [Kenner's] testimony just as you would the testimony of any other witness" explicitly suggested the applicability to Kenner of the interested-witness charge—making the *Solano* problem worse. The fact that *Munoz* and *Solano* were decided after Kenner's trial does not make the error less plain; "it is enough that an error be plain at the time of appellate consideration" to satisfy the second prong of the plain-error test. *Henderson v. United States*, 568 U.S. 266, 279 (2013) (internal quotation marks omitted).

6

But we conclude that the error did not affect Kenner's substantial rights. Unlike in *Solano*, we are not confronted here with a pure "credibility case." The government called 39 witnesses—many of them clients of Kenner who testified that they did not authorize Kenner to use their funds for a loan that was the central object of one of the fraudulent schemes. The government also introduced a variety of exhibits that corroborated this testimony and demonstrated other fraud. And the government presented overwhelming evidence of Kenner's involvement in other fraudulent schemes. The case did not rise or fall—as *Solano* did—exclusively on Kenner's credibility. Rather, the jury had a substantial body of testimonial and documentary evidence before it. For this reason, we decline to disturb Kenner's conviction on account of the erroneous jury charge because the error did not seriously affect the fairness and integrity or public reputation of the proceedings. *See, e.g., United States v. Weintraub*, 273 F.3d 139, 145 (2d Cir. 2001).

## II

Kenner makes several arguments about purported prosecutorial misconduct at the trial. First, he argues that the government deprived him of due process when it allowed a witness—John Kaiser—to provide testimony that the government knew was perjurious. Second, Kenner argues that the government made improper comments at summation. Third, Kenner argues that the problems at the trial, considered as a whole, prejudiced him. We address each point in turn.

### A

The Due Process Clause prohibits a prosecutor from allowing false testimony "to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The government 'may not knowingly use false evidence, including false testimony, to obtain a tainted conviction.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (quoting *Napue*, 360 U.S. at 269)). "Where the prosecution knew or should have known of the perjury, a new trial is warranted if there is any reasonable likelihood that the false testimony could have affected the judgment of

7

the jury." *United States v. Wong*, 78 F.3d 73, 81 (2d Cir. 1996) (internal quotation marks omitted).[1]

Kenner claims that the government knowingly permitted Kaiser—a key witness and one of Kenner's business partners—to give false testimony at the trial. Kaiser testified that he was unaware of Kenner's business dealings with a developer named Kenneth Jowdy, and his testimony supported the conclusion that Kenner's transactions with Jowdy were unauthorized. However, an investigator's handwritten notes from Kaiser's FBI interview appear to contradict Kaiser's testimony by indicating that Kaiser described having met Jowdy to discuss those transactions before the transactions occurred. Kenner argues that this discrepancy proves that the government knowingly allowed Kaiser to commit perjury. We disagree.

At trial, the government stipulated to the admission of the notes into evidence. Kaiser denied that he told investigators about advance meetings with Jowdy, and his denial was subject to cross-examination. Whether Kaiser was credible in denying that his testimony contradicted earlier statements was a question for the jury. Aside from the handwritten notes, which are not incontrovertible evidence of Kaiser's earlier statements, Kenner identifies no other evidence that the government knew or should have known that Kaiser was testifying falsely. Kenner did not seek corroborating testimony from the FBI agent who conducted the interview or the investigator who took the notes, relying instead on cross-examination of Kaiser. Under these circumstances, the record does not establish that Kaiser committed perjury, let alone that the government knew or should have known that he did so.

---

[1] "However, where the government was unaware of the perjury at the time of trial, a new trial is warranted only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Wong*, 78 F.3d at 81 (internal quotation marks and alterations omitted).

B

"The government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000). But "[a] prosecutor's misrepresentation of testimony may require reversal because of the inevitable prejudice to the defendant." *United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973). Still, we have said that "a defendant asserting that a prosecutor's remarks warrant a new trial faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (internal quotation marks omitted). "Such cases are rare." *United States v. Ballard*, 727 F. App'x 6, 9 (2d Cir. 2018) (internal quotation marks omitted); *see also United States v. Whitten*, 610 F.3d 168, 202 (2d Cir. 2010) ("We will reverse on the ground of prosecutorial misconduct only if that misconduct caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotation marks omitted).

Kenner points to a remark that the government made at the summation: "Mr. Kenner told you that he used that money to get his piece in the Mexico investment with Ken Jowdy. You know exactly what that's for. That's in evidence." App'x 824. Here, "that money" refers to a loan that Kenner made to Jowdy with client money. According to Kenner, the government's remark told the jury that he admitted to doing something that he maintains he did not do: divert client funds to buy a personal stake in a Jowdy project in Mexico. Kenner argues that the remark prejudiced him so egregiously as to warrant a new trial. We disagree.

Even assuming that the government's remark constituted a misrepresentation of Kenner's testimony, such a misrepresentation did not substantially prejudice Kenner. The district court instructed the jury that "the statements that the attorneys make[], both in their opening statements and in their summations, are not evidence." Gov't App'x 169. And the remark did not implicate the government's core theory: that diverting funds *to* Jowdy—no matter

9

what those funds were ultimately used to do—constituted an unauthorized use of client money. Several witnesses testified to that diversion. Under these circumstances, the remark at summation does not require a new trial.

C

We have held that when various errors together work a "cumulative prejudice" on a defendant, reversal is warranted. *United States v. Certified Env't Servs.*, 753 F.3d 72, 95 (2d Cir. 2014). In *Certified Environmental Services*, we explained that while "we would hesitate to vacate and remand [the] case for a new trial based on any one of the errors ... in isolation, or perhaps even any one category of those errors," after "considering the record *as a whole*, we [were] compelled to conclude a new trial is warranted." *Id.* at 96 (emphasis added).

Kenner suggests that even if the errors in isolation do not warrant reversal, the cumulative prejudice requires a new trial. In addition to the jury charge, the perjury issue, and the summation remark, Kenner points to an exchange during his testimony in which the government accused him of lying. The district judge sustained an objection to this line of questioning and told the prosecution— outside the presence of the jury—that questions beginning with "aren't you lying or isn't it a fact you stole" constitute "argumentative questions." App'x 719. He warned the government that he did not "want any more of those." *Id.*

As we have previously explained, "[t]he facts of *Certified Environmental Services* were particularly egregious, including references by the prosecutor to the potential consequences of the verdict." *United States v. Mendlowitz*, No. 21-2049, 2023 WL 2317172, at *7 (2d Cir. March 2, 2023). "The lesson of *Certified Environmental Services* is that in certain cases, when several evidentiary errors combine with various examples of prosecutorial misconduct to render a trial unfair, a new trial is warranted." *Id.* Kenner has not met this high bar. Even taken together, the issues discussed above did not prejudice the proceedings, given the evidence against Kenner. And we determine that the district court prevented the

10

government's argumentative line of questioning from creating undue prejudice by sustaining Kenner's objection.

### III

Last, Kenner argues that the district court erred in both its calculation of his offense level under the Sentencing Guidelines and its calculation of restitution. Kenner contends that the district court improperly used gross investment amounts to determine its Guidelines loss calculation and its order of restitution. We address each issue.

### A

In cases involving fraud, the U.S. Sentencing Guidelines provide for increases to the offense level based on the amount of loss. If the district court determines that the loss amount is more than $9.5 million but less than $25 million, the Guidelines provide that the district court should add 20 levels to the total offense level. U.S.S.G. § 2B1.1(b)(1). That is what the district court did in this case, determining that the proper loss calculation was over $14 million.

"In calculating the amount of loss under the Guidelines, a sentencing court 'need only make a reasonable estimate of the loss.'" *United States v. Rigas*, 583 F.3d 108, 120 (2d Cir. 2009) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)). We will affirm the district court's calculation as long as we are satisfied that the loss amount exceeds the relevant minimum for the offense level enhancement. *See id.* at 112, 120 (upholding an offense level enhancement of 26 levels for losses exceeding $100 million because "regardless of the precise amount of the loss attributable to the [defendants'] fraud, that figure easily exceeds $100 million").

Kenner contends that he made a variety of legitimate expenditures with client funds—such as the purchase of thousands of acres of property in Hawaii. In Kenner's telling, the crash of the real estate market and the collapse of Lehman Brothers (which was financing the Hawaii project) were the actual causes of many of the losses of client funds. Yet Kenner fails to identify improperly calculated

losses that would reduce the loss amount by the over $4 million it would take to place his Guidelines calculation in a lower category.

**B**

"[R]estitution may be imposed only for losses arising from the specific conduct that is the basis of the offense of conviction." *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (internal quotation marks omitted). "We review a district court's restitution order for abuse of discretion, which we will identify only if the order 'rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions.'" *United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015) (quoting *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015)). Applying these principles, we have upheld a restitution order that was based on a finding that a defendant "directly and proximately harmed … investors by using false and fraudulent statements to induce them to make an investment that was ultimately much riskier and worth less because of the fraudulent nature of the scheme." *United States v. Quatrella*, 722 F. App'x 64, 69-70 (2d Cir. 2018) (internal quotation marks omitted).

Kenner takes issue with the district court's calculation of restitution, which totaled $16,223,121.82. Kenner argues that the restitution award should be reduced by the amount of legitimate expenditures because "there was uncontested evidence that much of the investors' money was used in precisely the manner promised." Appellant's Br. 58. Kenner blames outside forces—such as the economic downturn of the late 2000s—for the collapse of the Hawaii project and the investors' loss of funds. He also points to certain funds that went to finance litigation. He claims that *Quatrella* is inapposite because this case does not have an element of fraudulent inducement; Kenner notes that "[t]he investors in this case were [his] clients for many years before the alleged fraud began" and "[t]here was no evidence that they invested with him based upon material misrepresentations." Reply Br. 22. We disagree.

That the victims had been Kenner's clients before the purported fraudulent inducement does not mean that Kenner did not induce them to invest in the schemes at issue in this case. The district court determined that Kenner had not "met [his] burden to show that with respect to those losses that the money was utilized … in the fashion that was agreed to by the victims." App'x 1237-38; *cf. United States v. Stitsky*, 536 F. App'x 98, 112 (2d Cir. 2013) ("[I]nvestors would not have been exposed to such risks had defendants not fraudulently induced them to invest in the first instance."). Lending to Jowdy, who failed to make payments on the revolving line of credit, exposed the clients to a risk that ultimately had a drastic impact on the Hawaii scheme's continued viability. *See* Appellant's Br. 6-7 ("By 2007, the real-estate market had begun its dramatic collapse, an unforeseen development which had a cascading series of effects on both the Hawaiian and Mexican developments. To begin with, Kenneth Jowdy ceased making payments on the revolving line of credit."). Moreover, the purported need for Kenner's clients to invest in the litigation fund was caused in the first place by Kenner's diversion of money to Jowdy. We conclude that the district court did not abuse its discretion in its order of restitution.

\* \* \*

We have considered Kenner's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



13

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit